UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
(at Boston)

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | Master File No. 1:13-MD-2419-FDS<br>MDL Docket No. 2419<br>This Document Relates To:<br>*Shaffer v. Cadden*, 1:13-cv-10226-FDS<br>*Schroder v. New England Compounding Pharmacy, Inc.*, 1:13-cv-10227-FDS<br>*Adams v. Cadden, et al.*, 1:13-cv-10229-FDS |

**MEMORANDUM IN SUPPORT OF MOTIONS TO WITHDRAW REFERENCE OR, IN THE ALTERNATIVE, MEMORANDUM IN SUPPORT OF MOTION TO JOIN <u>MOTIONS TO WITHDRAW REFERENCE</u>**

Pursuant to 28 U.S.C. § 157(b)(5), GDC Properties Management, LLC ("GDC"), respectfully requests that the Court: (1) grant the motions to withdraw reference from the bankruptcy court (the "Motions to Withdraw") filed by Ameridose LLC in the above-captioned cases (the "Adversary Proceedings");[1] and (2) order that the exemplar "Notice of Removal and Transfer Pursuant to 28 U.S.C. § 157(B)(5)," attached as Exhibit 1, be used to effect removal and transfer to this Court of all future-filed cases involving claims of personal injury tort and wrongful death ("PITWD") arising from the alleged contamination of injectable products at the New England Compounding Pharmacy, Inc., facility in Framingham, Massachusetts that are filed in state court.[2]

**I.     BACKGROUND**

On December 21, 2012, New England Compounding Pharmacy, Inc. d/b/a New England Compounding Center ("NECC") commenced a case under Chapter 11, Title 11 of the United

---

[1] Ameridose also filed a motion to withdraw reference in the case of *Cary v. New England Compounding Pharmacy, Inc.*, D. Mass. Case No. 1:13-cv-10228-FDS, a case to which GDC is not a party.

[2] This process is necessary only for cases filed in state courts because, as explained below, similar cases filed in federal court are likely to be transferred to this Court through the Judicial Panel on Multidistrict Litigation ("JPML").

States Code in the United States Bankruptcy Court for the District of Massachusetts, Case No. 12-19882.

NECC and other entities, including in some instances GDC, are parties to hundreds of cases pending in both federal and state courts around the country involving PITWD claims arising from the alleged contamination of injectable products at NECC's compounding facility. The Adversary Proceedings and the *Cary* case, which were removed from the Superior Court of Middlesex County, Massachusetts on January 18, 2013, are just four of those cases.[3] The Adversary Proceedings and the *Cary* case all are currently pending before this Court. Additionally, on February 14, 2013, the JPML created MDL 2419 and ordered the consolidation of four other cases into that MDL, which also is pending before this Court.[4] Further, the JPML recognized that, as of February 14, 2013, over 120 additional cases could be subject to transfer to MDL 2419 as tag-along actions, and conditionally transferred 98 cases as part of CTO-1, filed with this Court on February 22, 2013. (MDL Doc. No. 9).[5]

On February 5, 2013, before the JPML created MDL 2419, Ameridose filed the Motions to Withdraw in the Adversary Proceedings (and in the *Cary* case), arguing that this Court "has jurisdiction…under 28 U.S.C. § 157(b)(5), 28 U.S.C. § 157(d), and 28 U.S.C. § 1334(b)."[6] On February 18, 2013, plaintiffs filed a consolidated response to the Motions to Withdraw.[7] As explained below, 28 U.S.C. § 157(b)(5) and the case law interpreting that statute provide

---

[3] D. Mass. Bank. Dkt. Case No. 12-19882, Doc. Nos. 70, 71, 72, 73.

[4] D. Mass. Dkt. No. 1:13-md-02419-FDS, Doc. No. 2.

[5] *Id*.

[6] D. Mass. Case No. 1:13-cv-10226-FDS (*Shaffer*), Doc. No. 1, ¶ 2; D. Mass. Case No. 1:13-cv-10227-FDS (*Schroder*), Doc. No. 1, ¶ 2; D. Mass. Case No. 1:13-cv-10228-FDS (*Cary*), Doc. No. 1, ¶ 2; D. Mass. Case No. 1:13-cv-10229-FDS (*Adams*), Doc. No. 1, ¶ 2.

[7] D. Mass. Case No. 1:13-cv-10226-FDS (*Shaffer*), Doc. No. 11; D. Mass. Case No. 1:13-cv-10227-FDS (*Schroder*), Doc. No. 11; D. Mass. Case No. 1:13-cv-10228-FDS (*Cary*), Doc. No. 11; D. Mass. Case No. 1:13-cv-10229-FDS (*Adams*), Doc. No. 11.

additional grounds to grant Ameridose's motions to withdraw and provide a framework for PITWD cases filed in state courts around the country to be transferred to this Court.

## II. ANALYSIS

### A. THIS COURT SHOULD GRANT THE MOTIONS TO WITHDRAW BASED ON THE AUTHORITY PROVIDED BY 28 U.S.C. § 175(B)(5)

Section 175(b)(5) provides as follows:

> The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

28 U.S.C. § 157(b)(5).

The statute provides for transfer of cases "to one of two venues: (1) the district where the bankruptcy is pending; or (2) the district where the claim arose." *In re Pan Am Corp.*, 16 F.3d 513, 516 (2d Cir. 1994) (citation omitted); *see also In re Dow Corning Corp.*, 86 F.3d 482, 496 (6th Cir. 1996) (recognizing that even non-debtor is permitted to file motion under § 157(b)(5)). Here, because NECC's bankruptcy case is pending in the Bankruptcy Court for the District of Massachusetts, this Court qualifies as a potential transferee court as the "district court in which the bankruptcy case is pending."

Motions to transfer are properly raised in "the district court in the district where the bankruptcy is proceeding," which, again, in this case is this Court. *In re Pan Am Corp.*, 16 F.3d at 516; *see also In re Dow Corning Corp.*, 86 F.3d at 496. Congress intended 28 U.S.C. § 157 to operate to centralize the administration of cases related to bankruptcies. *See In re Pan Am Corp.*, 950 F.2d 839, 845 (2d Cir. 1991) (citing *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1011 (4th Cir. 1986) ("[T]he manifest purpose of section 157(b)(5) [is] 'to centralize the administration of the estate and to eliminate the multiplicity of forums for the adjudication of parts of a bankruptcy case.'" (quoting 130 Cong. Rec. H7492 (June 29, 1984)).

3

Transfer is appropriate here. The Adversary Proceedings (and the *Cary* case) are PITWD claims related to NECC's bankruptcy case. In a letter filed with the Court, plaintiffs' counsel stated that "close coordination, cooperation and communication between this Court's MDL and the Chapter 11 case is required…." [MDL Doc. No. 17, at p. 3] While the MDL and the bankruptcy cases are, admittedly, related, only the district court can finally adjudicate these cases, and allowing potentially conflicting discovery and pretrial schedules (one by the bankruptcy court for the non-withdrawn actions, one by this Court and still others by state courts) is not in the parties' best interests or in the interest of conserving judicial resources or the bankruptcy estate's resources.

The Adversary Proceedings and the *Cary* case, and additional cases that are anticipated to be filed in courts around the country in the future, involve (or will involve) direct claims against property of the bankruptcy estate. One of the Adversary Proceeding cases (*Schroder*) and the *Cary* case name NECC as a defendant, and other cases name co-defendants (including GDC) whom NECC has a duty to defend and indemnify. As the JPML already determined, the cases all present a number of common issues that will benefit from transfer. Further, while plaintiffs' counsel agreed that some mechanism would be required for "coordinating the MDL proceeding with the cases pending in the various state courts to reduce duplication, exchange information and share resources" [MDL Doc. No. 17, at p. 4], the best way to accomplish those goals is to centralize all cases directly in this Court. It is beyond dispute that centralizing the cases by ordering them heard in this Court will result in the most efficient administration of the claims, and will assist in an orderly resolution of all claims. This is particularly true in this instance, where the MDL, which necessarily addresses overlapping legal and factual issues, already has been centralized in this Court.

B.   **SECTION 175(B)(5) PROVIDES A MECHANISM TO TRANSFER STATE COURT CASES TO THIS COURT**

Other district courts have utilized 28 U.S.C. § 157(b)(5) to provide a framework for having both state- and federal-court PITWD cases that are related to bankruptcy proceedings transferred to a single federal district court. *See In re Twin Labs. Inc.*, 300 B.R. 836 (S.D.N.Y. 2003); *In re Metabolife Int'l, Inc.*, S.D. Cal. Case No. 3:05-cv-01802, Doc. No. 29 (S.D. Cal. Nov. 3, 2005) (attached as Exhibit 2). In *Twin Laboratories*, for example, the debtors had Chapter 11 proceedings pending before the bankruptcy court for the Southern District of New York when they moved under section 175(b)(5) to have 35 state-court cases transferred to the Southern District of New York.

Ultimately, the court agreed that those 35 state cases should be transferred, though the court recognized some authority suggesting it should conduct a "permissive abstention" analysis to determine whether it should instead decline to transfer the cases. The court explained that while district courts "deciding whether…to abstain in a bankruptcy context have frequently invoked a 12-factor test, that test must here be applied with caution, taking account of the strong legislative presumption favoring transfer under § 157(b)(5)." *In re Twin Labs. Inc.*, 300 B.R. at 841 (citation omitted). In fact, "in this context, perhaps even more than elsewhere, federal courts have a 'virtually unflagging obligation...to exercise the jurisdiction given them.'" *Id*. (quoting *Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800, 817 (1976)).

Out of an abundance of caution, the court considered the 12 factors in deciding whether to grant the motion under section 175(b)(5) or to abstain from accepting the cases, holding that even under the 12-factor analysis transfer was appropriate. The relevant factors are as follows:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in state court or other

5

> nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden [on] the court's docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

*Id*. The court granted the § 175(b)(5) motion, finding that, on the whole, the factors favored transfer rather than abstention. *See id*.

The same result is warranted here. For the reasons the court articulated in *Twin Laboratories*, "the majority of [the] factors – such as the first, third, fourth, fifth, eight, eleventh, and…twelfth – favor transfer." *Id*. The seventh factor is largely irrelevant in this context. *See id*.

"[O]nly the second factor – the predominance of state law issues over bankruptcy issues – clearly favors abstention." *Id*. Regardless, that factor deserves less weight than the others because "none of the state law issues here involved are difficult, unsettled, or unfamiliar to a federal court that, thanks to diversity jurisdiction, has its share of state-law personal injury cases." *Id*. Further, it would be inappropriate for "the predominance of state law issues be given decisive effect in analyzing transfer under § 157(b)(5), for the very subject matter of that section – personal injury claims – is almost always governed by state law, and yet Congress, in enacting § 157(b)(5), singled out such claims as the very ones it wanted transferred." *Id*. Here, the factor deserves even less weight because the JPML already has tasked this Court with addressing many of those same state-law issues in the MDL proceedings.

The Southern District of California reached the same conclusion in *In re Metabolife*, expressly addressing the state-court cases that had been filed nationwide. There, the debtor filed a petition under section 157(b)(5) seeking "an order determining that personal injury tort and

6

wrongful death…claims, which cannot be tried in a bankruptcy court, shall be heard in this district court ***rather than in state and federal courts throughout the country***." (*Id*. at p. 1 (emphasis added).) The court concluded that it was "in the best interests of all involved parties to grant the…motion under § 157(b)(5)," explaining that the "case demonstrates the need to centralize the administration of all PITWD claims against the bankruptcy estate in a single district court." (*Id*. at p. 6.) The court specifically addressed over 70 PITWD "cases pending…in the state and federal courts in Virginia, Texas, Pennsylvania, Minnesota, Maryland, Washington, Missouri, Massachusetts, Florida, New Jersey, Ohio, Oklahoma, Georgia, Illinois, Arkansas, Louisiana, Kansas, Connecticut, Utah, Mississippi, Arizona, North Carolina, Alabama, and Nevada," and held that "transfer of these cases under § 157(b)(5) will promote the efficient administration of the bankruptcy estate by eliminating the need for [the debtors] to litigate these claims throughout the country." (*Id*. at p. 8.)

Again, the same result is warranted here. The Adversary Proceedings (and the *Cary* case) belong in this Court, as Ameridose argued in its Motions to Withdraw. They do not belong in different state and federal courts spread throughout the country. Likewise, for the same reasons the courts in *Twin Laboratories* and *Metabolife* recognized, it is appropriate for this Court to accept transfer of cases filed in state courts around the country when those cases meet the criteria of 28 U.S.C. § 157(b)(5). And the Court can accomplish that result by ordering that the exemplar "Notice of Removal and Transfer Pursuant to 28 U.S.C. § 157(B)(5)," attached as Exhibit 1, be used to effect removal and transfer to this Court of all future-filed state-court cases involving PITWD claims arising from the alleged contamination of injectable products at the NECC facility.

7

### III. CONCLUSION

For the foregoing reasons, GDC Properties Management, LLC, respectfully requests that the Court: (1) grant Ameridose's motions to withdraw reference from the bankruptcy court in the above-captioned cases; and (2) order that the exemplar "Notice of Removal and Transfer Pursuant to 28 U.S.C. § 157(B)(5)," be used to effect removal and transfer to this Court of all future-filed state-court cases involving claims of personal injury tort and wrongful death arising from the alleged contamination of injectable products at the NECC facility.

Respectfully submitted,

*/s/ Joseph P. Thomas*
Joseph P. Thomas (OH #0040379)
Ulmer & Berne LLP
600 Vine Street, Suite 2800
Cincinnati, OH 45202
Tel: (513) 698-5000
Fax: (513) 698-5001
E-mail: jthomas@ulmer.com

Joshua A. Klarfeld (OH #0079833)
Ulmer & Berne LLP
1660 W.2nd Street, Suite 1100
Cleveland, OH 44113
Tel: (216) 583-7000
Fax: (216) 583-7001
E-mail: jklarfeld@ulmer.com

Robert A. Curley, Jr. (BBO #109180)
Curley & Curley, P.C.
27 School Street, 6th Floor
Boston, MA 02108
Tel: (617) 523-2990
E-mail: rac@curleylaw.com

**Attorneys for Defendant**
**GDC Properties, LLC**

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing has been filed with the Clerk of the Court on March 3, 2013 using the CM/ECF system which sent notification of this filing to all ECF registered counsel of record via e-mail generated by the Court's ECF system.

> */s/ Joseph P. Thomas*
> Joseph P. Thomas