Franklin Levy (BBO# 297720)
Ryan Ciporkin (BBO# 667479)
Michele A. Hunton (BBO# 667766)
LAWSON & WEITZEN, LLP
88 Black Falcon Ave, Suite 345
Boston, MA 02210
(617) 439-4990

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | MDL No. 1:13-md-02419 |
| | Hon. F. Dennis Saylor, IV |
| **This Document Relates To:** | |
| *Baer, et. al. v. New England Compounding Pharmacy, Inc., et. al.*, No. 13-cv-10361-FDS | |

## MEMORANDUM IN SUPPORT OF ALAUNUS PHARMACEUTICAL, LLC'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

Defendant, Alaunus Pharmaceutical LLC ("Alaunus"), by and through its counsel, hereby submits this memorandum of law in support of its Motion to Dismiss the First Amended Complaint ("FAC") filed by Plaintiffs Maryann and Darrel Baer.  For the reasons set forth herein, the Court should dismiss Plaintiffs' FAC, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief may be granted against Alaunus.

### I.    INTRODUCTION

The methylprednisolone acetate ("MPA") product, around which this litigation revolves, is an injectable steroid often used for pain management, is only available to licensed healthcare providers, and was compounded and distributed by New England Compounding Pharmacy, Inc. d/b/a New England Compounding Center ("NECC") in Framingham, Massachusetts.    On September 26, 2012, NECC initiated a nationwide recall of the MPA product after the Food and Drug Administration ("FDA") and the U.S. Centers for Disease Control and Prevention ("CDC") investigated multiple state reports of fungal meningitis among patients whom received an epidural steroid injection from one of three lots of MPA compounded in 2012 at NECC.  NECC voluntarily

ceased operations, surrendered its license to the Massachusetts Board of Registration in Pharmacy on October 3, 2012, and subsequently initiated a voluntary recall of all its products.  On December 21, 2012, NECC filed for bankruptcy.

On December 7, 2012, Plaintiffs Maryann Baer and Darrell Baer, wife and husband (collectively the "Plaintiffs" or the "Baers"), filed the original complaint that commenced this products liability action against  NECC, Alaunus, Ameridose, LLC ("Ameridose"), Gregory Conigliaro ("Conigliaro"), and Barry Cadden and Lisa Cadden (collectively the "Caddens") arising out of alleged injuries suffered by Mrs. Baer from an injection of MPA that Plaintiffs suspect was contaminated with a fungal agent and which they believe was manufactured and/or distributed by NECC (the "Original Complaint"). *See Baer v. New England Compounding Pharmacy, Inc., et. al.,* District of Massachusetts Civ. No. 13-10361-FDS [Doc No. 1].  Plaintiffs' Original Complaint asserted seven (7) causes of action collectively against the Defendants: Count I – Strict Liability - Defective Design or Manufacture; Count II – Strict Liability - Failure to Warn; Count III – Negligence; Count IV – Breach of Warranties; Count V – Punitive Damages; Count VI – Alter-Ego, Joint Venture Liability; and, Count VII – Loss of Consortium.  *Id.*, generally.  The primary claims belong to Mrs. Baer; Mr. Baer is named as a consortium plaintiff only.

On January 3, 2013, this case was removed to the U.S. District Court for the Northern District of Indiana by some of the co-defendants.  Alaunus filed a Motion to Dismiss the Original Complaint on February 6, 2013 [Doc Nos. 18 and 19].  In response to Alaunus' Motion to Dismiss, Plaintiffs filed their FAC on February 21, 2013 [Doc No. 20].  Like the Original Complaint, the FAC asserts four (4) counts collectively against the Defendants including: Count I – Alter Ego/ Joint Venture Liability; Count II – Strict Liability – Defective Manufacture; Count III – Negligence; and, Count IV – Loss of Consortium.  Unlike the Original Complaint, however, the FAC does <u>not</u> assert claims for strict liability based on an alleged defective design, strict liability based on an

alleged failure to warn, breach of express and implied warranties, or punitive damages.  No objection having been filed by the Plaintiffs, this case was transferred to the District of Massachusetts for consolidation with the other related actions in MDL No. 2419 pursuant to Conditional Transfer Order No. 1 issued by the Joint Panel on Multi-District Litigation on February 25, 2013 [Doc Nos. 21 and 22].

Plaintiffs' FAC fails to cure the deficiencies in the Original Complaint and should be dismissed for substantially the same reasons asserted in Alaunus' initial Motion to Dismiss. Plaintiffs do not plead sufficient facts to show that Alaunus is vicariously liable for NECC's alleged tortious conduct under an alter-ego or joint venture liability theory. The FAC impermissibly "lumps" NECC, Ameridose, and Alaunus together and therefore does not provide those defendants with notice as to the specific basis of liability asserted against each individual defendant.  Any claim by the Plaintiffs against Alaunus under Indiana's Product Liability Act ("IPLA") fails because they have not shown that Alaunus is a "manufacturer" or "seller" of the MPA product as defined under the IPLA, or had any involvement whatsoever in that products' compounding, distribution, or marketing. The common law claims for strict liability, negligence, and loss of consortium are subsumed under the IPLA, and may not be sustained as separate actions against an alleged "manufacturer" or "seller."   For these reasons, the FAC should be dismissed, pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim against Alaunus.

## II.     FACTUAL ALLEGATIONS IN THE COMPLAINT

Plaintiffs' FAC asserts that NECC was a compounding pharmacy engaged in the business of mixing, producing, packaging, marketing, distributing and selling the pharmaceutical known as methylprednisolone acetate ("MPA") for use in steroid injections.  *FAC* at ¶ 5.  The FAC asserts that numerous doses of MPA were contaminated with a fungal agent during NECC's production of the compound as a result of the alleged "failure to properly sterilize and test products prior to

distribution to medical providers," and that the contaminated vials of MPA were distributed to healthcare providers in Indiana.  *Id.* at ¶¶ 6 – 7, and 12.  The FAC asserts that NECC recalled its products, and thereafter ceased its operations.  *Id.* at ¶ 8.

The FAC asserts that Mrs. Baer, a 72 year-old woman who was suffering from hip and back pain, received various steroid injections from Dr. David Beatty at OSMC Outpatient Surgery Center in Elkhart, Indiana on June 1, 2012, June 25, 2012, and July 9, 2012.  *Id.* at ¶¶ 20 - 23.   The FAC asserts that the steroid injection that was administered by Dr. Beatty to Mrs. Baer on July 9, 2012 was from a lot of vials that was manufactured and distributed by NECC, and that the injection was contaminated.  *Id.* at ¶¶ 24 - 25, 29.  The FAC further asserts that an MRI revealed "a marked edema [swelling] in the marrow of the right femoral head of her hip and other damage to her hip" which prompted another physician at OSMC to recommend hip replacement for Mrs. Baer which was scheduled for October 23, 2012.  *Id.* at ¶¶ 27- 28.  Significantly, the Plaintiffs do not claim that Mrs. Baer contracted spinal meningitis or any other disease from the steroid injections.  *Id.*, generally.  Rather, Plaintiffs claim that Mrs. Baer has suffered mental and physical pain and suffering because the allegedly contaminated steroid injection purportedly delayed her hip replacement surgery.  *Id.* at ¶¶ 30 - 31.

### III.    STANDARD OF REVIEW

For a complaint to survive dismissal under Federal Rule of Civil Procedure 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  To have facial plausibility, the complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009). Although the plausibility standard is not akin to a probability requirement, Plaintiffs' factual allegations must show that the claim for relief is more than "speculative" or

merely "conceivable" in order to show that the claim is "plausible on its face." *Twombly*, 550 U.S. at 555, 570 (holding that "[b]ecause the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed").  The First Circuit[1] has ruled that "if the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 632 F.3d 762, 771 (1st Cir. 2011).

While all *well-pled* facts contained in the complaint should be accepted by the court as true on a 12(b)(6) motion to dismiss, "a plaintiff's obligation to provide the 'grounds' of [her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 129 S. Ct. at 1949; *Twombly*, 127 S.Ct. at 1965. The Court should not credit "conclusory assertions, subjective characterizations, or outright vituperation" on a 12(b)(6) motion. *Barrington Cove Ltd. Partnership v. Rhode Island Housing and Mortg. Finance Corp.*, 246 F.3d 1 (1st Cir. 2001).  Naked assertions devoid of further factual enhancement in the complaint should not be deemed as true by the court. *Maldonado v. Fontanes*, 568 F.3d 263, 266 (1st Cir. 2009).

The First Circuit has interpreted *Twombly* and *Iqbal* as requiring a two-pronged approach after the Court takes note of the elements of the claim. *Grajales v. Puerto Rico Ports Authority*, 682 F.3d 40, 44 (2012), citing *Iqbal*, 556 U.S. at 678 - 679.  To determine the sufficiency of a complaint under *Twombly* and *Iqbal*, the court should first "tak[e] note of the elements a plaintiff must plead to state a claim." *Iqbal*, 129 S.Ct. at 1947, 1950.  Next, "the court must separate the complaint's

---

[1] When a diversity action is transferred pursuant to 28 U.S.C. § 1407, the transferee court is obligated to apply federal procedural law as interpreted by the United States Court of Appeals for the First Circuit, the circuit in which this transferee court sits. *See In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1178 (D.C. Cir. 1987), aff'd, 490 U.S. 122 (1989). *See also In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 368 n.8 (3d Cir. 1993) (assuming without deciding that the law of the § 1407 transferee district controls federal questions); *In re Auto. Refinishing Paint*, 229 F.R.D. 482, 486-87 (E.D. Pa. 2005) (applying transferee court's interpretation of federal law).

factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." *Grajales*, 682 F.3d at 44, citing *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir.2012). Finally, the court must determine whether the factual content set forth in the complaint permits "the reasonable inference that the defendant is liable for the misconduct alleged." *Grajales*, 682 F.3d at 44 (internal quotation marks omitted), citing *Sepúlveda-Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 29 (1st Cir.2010) (Souter, J.) ("The make-or-break standard ... is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief"). Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint should be dismissed because it has alleged—but it has not "shown"— "that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1950.[2]

## IV.   ARGUMENT

The FAC should be dismissed because it: (1) contains nothing but conclusory assertions of liability against Alaunus which should be ignored by the Court; and, (2) Plaintiffs have not plead facts sufficient to support the causes of action alleged.

### 1.   The FAC contains nothing but conclusory assertions of liability against Alaunus which should be ignored by the Court.

The FAC does not contain any factual allegations supporting the conclusion that Alaunus was merely an alter-ego of NECC or was involved in a joint venture with NECC. The pleading impermissibly "lumps" all of the defendants together and does not contain an adequate factual basis to distinguish the conduct of Alaunus from that of the other co-defendants. Whereas the FAC contains nothing but "naked" assertions of liability against Alaunus, such assertions should not be deemed as true by the Court and the claims against Alaunus should be dismissed pursuant to

---

[2] There is no question that *Twombly* and *Iqbal* apply to product liability cases. *See, e.g., Lewis v. Abbot Laboratories*, No. 08 Civ. 7480, 2009 WL 2231701 (S.D.N.Y. July 24, 2009) (Depakote); *Frey v. Novartis Pharmaceuticals Corp.*, No. C-1-07-317, 2009 U.S. Dist. Lexis (S.D. Ohio July 23, 2009) (Trileptal). Further, MDL courts have had no problem applying *Twombly* and *Iqbal*. *See, e.g., In re Guidant Corp., Implantable Defibrillators*, MDL No. 05-1708, 2009 WL 1921902 (D. Minn. July 1, 2009); *In re Bausch & Lomb Inc.*, MDL No. 1785, 2007 WL 3046682 (D. S.C. 2007).

Fed.R.Civ.P. 12(b)(6).

  a. **The FAC does not contain any factual allegations supporting the assertion that Alaunus was engaged in the manufacture, sale, or distribution of pharmaceuticals.**

The statement in the FAC that Alaunus is similar to NECC and Ameridose because they were all "engaged in the manufacture, sale or distribution of medications or other pharmaceuticals," *Pls.' First Amend. Compl.* at ¶ 39, is not a "fact" which must be taken as true by the Court on a 12(b)(6) motion.

Various circuits have proposed tests for distinguishing "facts" from "conclusions" for pleading purposes.  For example, in *The Dartmouth Review v. Dartmouth College*, the First Circuit stated that:

> "Most often, facts are susceptible to objective verification. Conclusions, on the other hand, are empirically unverifiable in the usual case. They represent the pleader's reactions to, sometimes called 'inferences from,' the underlying facts. It is only when such conclusions are logically compelled, or at least supported, by the stated facts, that is, when the suggested inference rises to what experience indicates is an acceptable level of probability, that 'conclusions' become 'facts' for pleading purposes."

889 F.2d 13, 16 (1st Cir. 1989).  Similarly, the Third Circuit distinguishes "facts" from "conclusions" by determining whether the statement is a pure question of fact (in which case the allegation must be accepted as true) or a pure question of law or a mixed question of fact and law (in which case the court should not accept the statement as true on a 12(b)(6) motion).  *See Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 399 F.3d 248, 269 (3rd Cir. 2005).  A mixed question of fact and law can only be answered by both determining the facts of a case and determining what the relevant law means.  *Id.*

Applying these tests for distinguishing "facts" from "conclusions," the courts have repeatedly held that allegations involving terms that a plaintiff must prove to sustain a cause of action and which are defined by statute or common law present mixed questions of fact and law and are therefore conclusory unless supported by independent factual allegations from which an

inference may be drawn to support the stated conclusion.  *See e.g. Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) ("the words 'hostile work environment' are not talismanic, for they are but a legal conclusion; it is the alleged facts supporting those words, construed liberally, which are the proper focus at the motion to dismiss stage").[3]

Similar to these kinds of assertions, the assertion that Alaunus was "engaged in the manufacture, sale or distribution of medications or other pharmaceuticals" is not a "fact" which must be deemed as true on a 12(b)(6) motion.  The question of whether Alaunus may be held liable to the Plaintiffs depends, in part, on whether the FAC asserts sufficient facts to *show* that it is a "manufacturer" or "seller," terms that have a specific meaning under the Indiana Product Liability Act.  *See* Ind. Code § 34-6-2-77 (stating that a "manufacturer" is "a person or an entity that designs, assembles, fabricates, produces, constructs, or otherwise prepares a product or a component part of a product before the sale of the product to a user or consumer"); Ind. Code § 34-6-2-136 (stating that a "seller" is defined as "a person engaged in the business of selling or leasing a product for resale, use, or consumption").  Thus, the question of whether Alaunus is a "manufacturer" or "seller" within the meaning of the IPLA is a mixed question of fact and law because it depends on an analysis of the relevant facts under the statutory definition of those terms to determine whether Alaunus qualifies as a party that may be held liable under the statute. *See Ohio State Bd. of Pharmacy v. Poppe*, 48 Ohio App.3d 222, 549 N.E.2d 541 (Ohio App. 1988) (stating that "naturally, in order to determine whether a person qualifies as a 'wholesale distributor of dangerous

---

[3] *See also Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 683 (9th Cir. 2009) (holding allegation that Wal-Mart exercised "control" over day-to-day employment so as to constitute a joint employer was conclusory); *Holmes v. Poskanzer*, 342 F. App'x 651, 653 (2nd Cir. 2009) (holding that allegation that defendants were not "impartial" was conclusory and, without facts to support actual bias or conflict of interest, could not state due process claim); *TV Communications Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1026 (10th Cir. 1992) (stating that "while TVCN uses antitrust language in its complaint, such as 'price fixing,' 'group boycott' and 'exclusionary measures,' it fails to elaborate on these allegations" and that "the use of antitrust 'buzz words' does not supply the factual circumstances necessary to support TVCN's conclusory allegations"); *Claudio v. Sawyer*, 675 F. Supp. 2d 403, 407–10 (S.D.N.Y. 2009) (holding allegation that off-duty officer was "acting under color of law" was conclusory in the absence of factual showing that officer was acting in capacity as police officer); *Delgado-O'Neil v. City of Minneapolis*, No. 08-4924 (MJD/JJK), 2010 WL 330322, at *10–11 (D. Minn. Jan. 20, 2010) (finding allegation that defendant took several adverse employment actions "in retaliation" for plaintiff's protected conduct were conclusory).

drugs,' the definition of that term must be consulted" under applicable state statute).

In short, the statement that Alaunus was "engaged in the manufacture, sale or distribution of medications or other pharmaceuticals" merely parrots back the definition of statutory terms under the IPLA.  The FAC does not contain any independent ***factual allegations*** to support the conclusion that Alaunus was a "manufacturer" or "seller" of MPA.  Consequently, such statement is merely a "naked" assertion which should not be taken as true on a 12(b)(6) motion.  *See Iqbal*, 129 S.Ct. at 1944 (finding that Iqbal's allegations that Ashcroft had served as the "principal architect" of a policy and that Mueller was "instrumental in adopting and executing" a policy subjecting Iqbal to harsh conditions of confinement on account of his race, religious, and national origin were conclusory assertions that need not be accepted as true on a 12(b)(6) motion); *In re Fosamax Products Liability Litigation*, 2010 WL 1654156 (S.D.N.Y. April 9, 2010) (allegation that "Defendants, either directly or through [their] agents, apparent agents, servants, or employees, at all relevant times, designed, tested, developed, manufactured, labeled, marketed, distributed and sold Fosamax and Boniva" was conclusory since the complaint did not provide any specifics to support such a conclusion).[4]

### b.    There is No Basis to Impose Alter-Ego Liability Against Alaunus.

Although the Court should apply Indiana's substantive product liability laws, the Court should apply Massachusetts' law of corporate disregard.[5]  "Under Massachusetts common law,

---

[4] Even if this Court were to find that the statement in the FAC that Alaunus was "engaged in the manufacture, sale or distribution of medications or other pharmaceuticals" is a "factual" allegation for pleading purposes (which it is not), the Court should still refuse to accept the statement as true because of the threadbare nature of the statement.  *See Peñalbert-Rosa v. Fortuño-Burset*, 631 F.3d 592, 595 (1st Cir. 2011) (stating that "some allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross the line between the conclusory to the factual"); *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) ("[a] plaintiff is not entitled to `proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action").

[5] Most district courts sitting in diversity apply the law of the state of incorporation for veil piercing and alter-ego claims.  *See Judson Atkinson Candies, Inc. v. Latini–Hohberger Dhimantec*, 529 F.3d 371, 378 (7th Cir.2008) (applying Illinois law); *Patin v. Thoroughbred Power Boats, Inc.*, 294 F.3d 640, 647 (5th Cir.2002); *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2nd Cir.1995).  Whereas NECC, Ameridose, MSM and Alaunus are organized under Massachusetts law and have their principal places of business in this state, Massachusetts law of corporate disregard controls regardless of whether

disregarding the corporate form is permissible only in rare situations." *United Elec., Radio and Mach. Workers v. 163 Pleasant St. Corp. (Pleasant St. I)*, 960 F.2d 1080, 1091 (1st Cir.1992) (citing *Pepsi-Cola Metro. Bottling Co. v. Checkers, Inc.*, 754 F.2d 10, 15-16 (1st Cir.1985)). In fact, "Massachusetts has been somewhat more `strict' than other jurisdictions in respecting the separate entities of different corporations." *Birbara v. Locke*, 99 F.3d 1233, 1238 (1st Cir.1996) (quoting the seminal case, *My Bread Baking Co. v. Cumberland Farms, Inc.*, 353 Mass. 614, 233 N.E.2d 748, 752 (1968)) (holding that the presumption of corporate separateness may be overcome only "in rare particular situations in order to prevent gross inequity").[6]

   In support of the alter-ego liability claim, Plaintiffs assert that: (1) NECC, Ameridose, and Alaunus have common founders, ownership, control, and management, *Pls.' First Amend. Compl.* at ¶¶ 33 - 37; (2) that NECC and Alaunus have maintained a principal place of business in the same commercial office building, *id.* at ¶ 38; and, (3) that the business purposes of NECC, Ameridose, and Alaunus were similar in that each entity was "engaged in the manufacture, sale or distribution of medications or other pharmaceuticals," *id.* at ¶ 39.   As established above, the statement that Alaunus was "engaged in the manufacture, sale or distribution of medications or other pharmaceuticals" is merely a conclusory assertion masquerading as a factual allegation which should be ignored by the Court.  The remaining allegations in the FAC that NECC, Ameridose, and Alaunus have common founders, ownership, control, and management, that NECC and Alaunus

---

this Court follows the state of incorporation rule or applies a more functional state rules.  *See Las Vegas Sands Corp. v. Ace Gaming, LLC,* 713 F.Supp.2d 427 (D. N.J. 2010) (applying New Jersey choice of law principles and holding that plaintiff's veil piercing and alter-ego law claims were governed by New Jersey law, notwithstanding that plaintiffs were Nevada corporations, because the entity whose veil plaintiff sought to pierce was incorporated under New Jersey law and the ultimate target of the veil piercing claim had a principal place of business in New Jersey).

[6] In determining whether circumstances warrant the use of this "rare" measure, the Court should undertake an inquiry into the actual nature of the corporate interrelationship to evaluate whether the "Pepsi-Cola factors" militate in favor of disregarding the corporate form. These factors are: (1) common ownership; (2) pervasive control; (3) confused intermingling of business assets; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporation's funds by dominant shareholder; (10) nonfunctioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; and (12) use of the corporation in promoting fraud.  *Attorney Gen. v. M.C.K., Inc.*, 432 Mass. 546, 736 N.E.2d 373, 380 n. 19 (2000) (citing *Pepsi-Cola*, 754 F.2d at 14-16).

have maintained a principal place of business in the same commercial office building are insufficient to support an inference that Alaunus is merely an alter-ego of NECC.  *See Evans v. Multicon Constr. Corp.*, 30 Mass.App.Ct. 728, 574 N.E.2d 395, 398-400, rev. denied, 410 Mass. 1104, 577 N.E.2d 309 (1991) (refusing to disregard the corporate form where the only four *My Bread* factors weighed in favor of piercing included common ownership, sharing of officers and employees, exertion of pervasive control, and the shareholders' use of the corporations in aid of the transactions in which they had an interest).[7] Consequently, this Court should ignore the conclusory, formulaic assertions of liability in Count I of the FAC, and refuse to hold Alaunus liable under an alter-ego theory. *See Resolution Trust Corp. v. Driscoll*, 985 F.2d 44, 48 (1st Cir. 1993) (affirming dismissal of claims against corporate defendant because naked assertion of alter ego liability was not supported by sufficient factual allegations).[8]

> c.    **There is No Basis to Impose Joint Venture Liability Against Alaunus.**

The joint venture claim fails for substantially the same reasons that the alter ego claim fails. Again, the statement that Alaunus was engaged in the manufacture, sale, or distribution of

---

[7] Courts in other jurisdictions widely follow the same rule that common ownership and management are not enough to warrant the disregard of the corporate form.  *See United States v. Bestfoods*, 524 U.S. 51, 69 (1998) (overlap in directors or officers among affiliated corporate entities is not unusual, and is widely held to be insufficient to establish alter ego liability alone); *Am. Protein Corp. v. AB Volvo*, 844 F.2d 56, 57 (2d Cir. 1988) (overlap in directors or officers among affiliated corporate entities is not unusual, and is widely held to be insufficient to establish alter ego liability alone); *Steven v. Roscoe Turner Aeronautical*, 324 F.2d 157, 161 (7th Cir. 1963) ("[w]hile stock control and common directors and officers are generally prerequisites for application of the instrumentality rule, yet, they are not sufficient by themselves to bring the rule into operation"); *Akzona, Inc. v. E.I. Du Pont de Nemours & Co.*, 607 F. Supp. 227, 237 (D. Del. 1984) (holding that overlapping directors was insufficient to pierce veil).

[8] *See also De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996) (granting 12(b)(6) motion to dismiss since complaint was "devoid of any specific facts or circumstances supporting" liability of an individual on a veil piercing theory); *In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d. 385, 426 (S.D.N.Y. 2003)("purely conclusory allegations cannot suffice to state a claim based on veil piercing or alter-ego liability, even under the liberal notice pleading standard"); *Lovely Peoples Fashion, Inc. v. Magna Fabrics, Inc.*, 95 CIV. 8450 AGS, 1996 WL 732634, *5 (S.D.N.Y. Dec. 19, 1996) (granting motion to dismiss against individual shareholders for failure to "state some basis in fact for piercing the corporate veil" where complaint's sole allegation was that shareholders "control and operate the [corporation] as their alter egos for the benefit of themselves and their families"); *Chen v. Century Buffet and Restaurant*, 2011 U.S. Dist. Lexis 43102 (D. N.J. 2011) (granting 12(b)(6) motion to dismiss under *Twombly* for failure to plead sufficient facts to support an alter ego theory of liability); *Centrifugal Air Pumps Australia v. TCS Obsolete, LLC*, 610-CV-820-ORL-31DAB, 2010 WL 3584948 at *2 (M.D. Fla. Sept. 9, 2010) (plaintiff's failure to plead facts in support of its conclusory veil piercing allegations required dismissal of individual LLC members from action); *Norfolk Southern Railway Co. v. Trinity Industries, Inc.*, 2009 WL 362437, at *8 (N.D. Tex. Feb. 13, 2009) (granting Rule 12(b)(6) motion for failure to plead sufficient facts to pierce corporate veil).

pharmaceutical products is a conclusory assertion that should be ignored by the Court.  The remaining factual allegations that purportedly support the joint venture claim - that there was common ownership, control, and management between NECC, Ameridose, and Alaunus - are insufficient to show the existence of a joint venture.  *See Payton v. Abbott Labs*, 512 F. Supp. 1031 (D. Mass. 1981) (stating that the elements of joint venture liability include: an agreement among the parties to associate themselves in a business activity; the sharing in the profits and losses of the venture; joint control of the objectives of the undertaking and of the means of achieving those objectives; and, a contribution to the assets of the venture).  Given that the factual allegations in the FAC do not support a plausible inference that "NECC, Ameridose, and Alaunus were operated as a joint venture and/or in concert with each other," the claim for joint venture liability should be dismissed.  *See DM Research v. College of American Pathologists*, 170 F. 3d 53, 55 (1st Cir. 1999) (recognizing that terms like "conspiracy" or "agreement" are conclusory unless supported by independent factual allegations in the complaint); *Holmes v. Runyan & Assoc.*, Civil Action No. 2:09-0679, 2009 U.S. Dist. LEXIS 117233 (S.D. W. Va. Dec. 15, 2009) (dismissing joint venture claim as implausible).

### d.    The FAC impermissibly "lumps" NECC, Ameridose, and Alaunus together as one entity.

The pleading rules have eschewed the "lumping" of defendants together.  A complaint fails to meet the minimum standard of pleading under Fed.R.Civ.P. 8(a) where the complaint does not contain an adequate factual basis to distinguish the conduct of particular defendants. *See Bagheri v. Galligan*, 160 Fed. Appx. 4, 5, 2005 WL 3536555 (1st Cir. 2005) (upholding district court's dismissal of action where the original complaint did not "state clearly which defendant or defendants committed each of the alleged wrongful acts"); *Tolbert v. Clarke*, Civ. Action No. 10-11643, 2011 WL 797372 (D. Mass. 2011) (Zobel, J.) ("lumping" of all of the defendants together is impermissible when it cannot be reasonably inferred that all of the defendants were involved, or it is otherwise not clear to which defendant or defendants the plaintiff is referring).

Here, the FAC impermissibly "lumps" NECC, Ameridose, and Alaunus together. Ostensibly, Plaintiffs refer to NECC, Ameridose, and Alaunus collectively as "Defendants" in paragraphs 48 - 60 of the pleading on the alleged basis that they are all alter-egos of one another and/or that they were all involved in a joint enterprise.  As set forth above, however, the FAC offers nothing but conclusory assertions in support of those theories of liability.  Given that the pleading does not warrant the treatment of the corporate defendants as one entity under an alter-ego or joint venture theory, the pleading impermissibly "lumps" Alaunus together with the other co-defendants. Therefore, all counts of the FAC should be dismissed as to Alaunus under *Twombly-Iqbal* because the allegations in the pleading do not provide notice to Alaunus of the factual basis of the liability asserted and therefore falls short of the pleading standards of Rule 8(a).  *See Bagheri*, 160 Fed. Appx. at 5; *Tolbert*, 2011 WL 797372 (D. Mass. 2011) (Zobel, J.).[9]  *See also Gomez v. Pfizer, Inc.*, 675 F. Supp.2d 1159 (S.D. Fla. Dec. 21, 2009) (dismissing negligence claim against manufacturer in product liability action due to failure to plead individualized allegations against defendants).

**2.**   **The FAC does not contain sufficient allegations to show that Alaunus is liable for the conduct alleged.**

Turning to the causes of action asserted in the FAC, the Plaintiff woefully fails to show that Alaunus is liable for any illegal conduct under Indiana law.

**a.**   **The Plaintiffs' Claims Are Governed by Indiana Law.**

Applying the choice of law rules articulated by the Indiana courts,[10] this Court should apply

---

[9] *See also Atuahene v. City of Hartford*, 10 Fed. Appx. 33, 34 (2d Cir.2001) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [plaintiff]'s complaint failed to satisfy [the] minimum standard" of pleading under Fed.R.Civ.P. 8(a)"); *Goren v. New Vision Intern., Inc.*, 156 F.3d 721, 730 (7th Cir.1998) (affirming dismissal of complaint where complaint treated defendants as one, "lumping" them together); *Vanzandt v. OK Dep't Human Serv's.*, 276 Fed. Appx. 843 (10th Cir. 2008) ("To carry their burden, plaintiffs under the *Twombly* standard must do more than generally use the collective term 'defendants.' . . . This is because the purposes of plausibility, notice, and gatekeeping are best served by requiring plaintiffs to directly link an actual individual with the alleged improper conduct").

[10] When a diversity action is transferred pursuant to 28 U.S.C. § 1407, the transferee court is obligated to apply the state substantive law as determined by the choice of law analysis required by the state in which the action was originally filed. *See Ferens v. John Deere Co.*, 494 U.S. 516, 524-32 (1990) (evaluating applicable law after change of venue

Indiana's substantive product liability law to the question as to whether Alaunus may be held liable to the Plaintiffs.

As a threshold matter, there is a true conflict of law between the substantive product liability laws of Massachusetts and Indiana. While the law in Massachusetts permits product liability actions based on theories of common law negligence, breach of express and implied warranty, and other theories, the law in Indiana does not. The Indiana Products Liability Act governs **all** product liability actions brought by a user or consumer[11] against a manufacturer or seller[12] for physical harm caused by a product, **regardless of the substantive legal theory of theories upon which the action has been brought**. Ind. Code § 34-20-1-1 (emphasis added); *Stegemoller v. ACandS, Inc.*, 767 N.E.2d 974, 976 (Ind. 2002). *See Conley v. Lift-All Co*., 2005 U.S. Dist. LEXIS 15468, 12-13 (S.D. Ind. July 25, 2005) ("[t]he IPLA effectively supplants [] common law claims because all [] claims are brought by a user or consumer against a manufacturer for physical harm caused by a product. Plaintiff's common law claims will therefore be treated as merged into the IPLA claims"); *Campbell v. Supervalu, Inc*., 565 F.Supp.2d 969, 976 (N.D. Ind. 2008) (holding that a plaintiff's "attempt to cast [defendant]'s action as one of 'simple negligence,' and therefore somehow falling outside the reach of the Indiana Product Liability Act, clearly fails").[13] To the extent that Indiana law applies, Plaintiff's common law claims of strict liability (Count II), negligence (Count III), and loss of consortium (Count IV) are all pre-empted or subsumed by the IPLA as a matter of law. *See*

---

under 28 U.S.C. § 1404(a) and holding that transferee forum was required to apply law of transferor court, regardless of which party initiated transfer). Since this action was originally filed in Indiana, this Court should apply Indiana's choice of law rules.

[11] The IPLA defines a user or consumer, in relevant part, as "a purchaser, or any individual who uses or consumes the product." Ind. Code § 34-6-2-29.

[12] A manufacturer is defined as "a person or an entity that designs, assembles, fabricates, produces, constructs, or otherwise prepares a product or a component part of a product before the sale of the product to a user or consumer." Ind. Code § 34-6-2-77. A seller is defined as "a person engaged in the business of selling or leasing a product for resale, use, or consumption." Ind. Code § 34-6-2-136.

[13] *See also Cincinnati Ins. Cos v. Hamilton Beach/Proctor-Silex, Inc*., 2006 U.S. Dist. LEXIS 9807, at *2 (N.D. Ind. Feb. 7, 2006); *Ryan v. Philip Morris USA, Inc*., 2006 U.S. Dist. LEXIS 9077, at *9 (N.D. Ind. Feb. 22, 2006).

*American Intern. Ins. Co. v. Gastite*, 2009 WL 1383277, *2 (S.D. Ind. 2009); *Ganahl v. Stryker Corp.*, No. 1:10-cv-1518-JMS-TAB, 2011 WL 693331, at *3 (S.D. Ind. Feb. 15, 2011) (plaintiff's common law negligence and strict product liability claims arising out of personal injuries suffered from use of medical device were subsumed by IPLA).[14]   In short, there is a true conflict of laws because, on the one hand, Plaintiffs may bring actions for negligence, breach of express and implied warranties, and other common law causes of action (but not strict product liability) if Massachusetts law applies and, on the other hand, the exclusive cause of action available to the Plaintiff is a claim under the IPLA if Indiana law applies.

There is no question that the substantive product liability law of Indiana governs this dispute.  If there is a conflict that is "important enough to affect the outcome of the litigation" (as in this case), the presumption is that the traditional *lex loci delicti* rule—the place of the wrong—will apply. *Simon v. United States*, 805 N.E.2d 798, 805 (Ind. 2004).  Under this rule, the trial court applies the substantive law of "the state where the last event necessary to make an actor liable for the alleged wrong takes place." *Id.*  The presumption may only be overcome if the trial court is persuaded that "the place of the tort 'bears little connection' to this legal action." *Id.*

The place where the injury occurred is Indiana because that is where Mrs. Baer resided, received her medical treatment, and was allegedly exposed to contaminated MPA.  *See id.; see also Cohen v. McDonnell Douglas Corp.*, 389 Mass. 327, 334 (1983) (injury occurs for purposes of choice of law analysis "where the last event necessary to make an actor liable for an alleged tort takes place").  Accordingly, there is a presumption that Indiana's product liability laws apply unless Indiana bears little connection to this action.

---

[14] Unlike the Original Complaint, the FAC does not contain any claims for breach of express or implied warranty.  Even if it did, any such claims would be supplanted by the IPLA and would fail for lack of privity and causation for the same reasons set forth in the memorandum in support of Alaunus' Motion to Dismiss the Original Complaint.  *See Alaunus' Memo. in Support of Mot. to Dismiss*, pp. 19 - 20 [Doc. No. 19].

The presumption that the place of the injury applies is not overcome in this case.  The place of the alleged tort – Indiana – has a strong connection to this legal action because the FAC asserts that contaminated MPA was distributed to medical providers in Indiana, that the product was administered to Mrs. Baer in Indiana, and that the product caused injury to her in that state, and the lawsuit was commenced by the Plaintiffs in Indiana.[15]  While Massachusetts has an interest in regulating businesses that operate within its borders, it is significant that none of the allegedly contaminated lots of MPA were distributed in Massachusetts, there are no reported MPA-related meningitis cases in Massachusetts, and there are no claimants in this MDL who are residents of Massachusetts.  Under these circumstances, Massachusetts' interest in regulating businesses to deter the distribution of unsafe products within its borders is outweighed by Indiana's interests in providing its residents with pharmaceutical products by creating more predictable standards of care for drug companies that would encourage the companies to market their products in those states. *See Alli v. Eli Lilly & Co.*, 854 N.E.2d 372, 379 (Ind. Ct. App. 2006) (in products liability action brought in Indiana state court by widow, who was a Michigan resident, on behalf of decedent, who was a resident of Michigan and received medical treatment and suffered injury in that state, against a manufacturer based in Indiana,  Indiana's Court of Appeals held that Michigan law – the law of the place of the injury – applies under Indiana's choice of law rules noting that the place of injury is insignificant only in rare tort cases).

### b.    The Complaint Fails to State a Viable Claim under the IPLA.

When Indiana Code sections 34-20-1-1 and 34-20-2-1 are read together, there are five (5) unmistakable threshold requirements for IPLA liability: (i) a claimant who is a user or consumer and is also in the class of persons that the seller should reasonably foresee as being subject to the

---

[15] That Massachusetts was selected as the forum for this MDL does not affect a forum change for choice of law purposes.  *See*, e.g., *In re Guidant Corp. Implantable Defibrillators Prods. Liability Litigation*, 489 F. Supp. 2d 932, 935 (D. Minn. 2007) (explaining that absent a stipulation between the parties, the filing of a master complaint does not make the MDL court the controlling forum for choice of law purposes or alter which state's laws govern plaintiffs' claims); *In re Propulsid Prod. Liab. Litig.*, 208 F.R.D. 133, 141-42 (E.D. La. 2002) (same).

harm caused; (ii) a defendant that is a manufacturer or a seller engaged in the business of selling a product; (iii) physical harm caused by a product; (iv) a product that is in a defective condition unreasonably dangerous to a user or consumer or to his property; and (v) a product that reached the user or consumer without substantial alteration in its condition.  *See* Ind. Code 34-20-1-1; 34-20-1-2. *Bourne v. Marty Gilman, Inc.*, 452 F.3d 632, 635 (7th Cir.2006); *Williams v. REP Corp.*, 302 F.3d 660 (7th Cir. 2002). "[A] plaintiff can satisfy the second element-that the product was defective-by showing one of the following: a design defect, a manufacturing defect, or a failure to warn." *Ritchie v. Glidden Co.*, 242 F.3d 713, 720 (7th Cir.2001); *Natural Gas Odorizing, Inc. v. Downs*, 685 N.E.2d 155, 161 (Ind.Ct.App.1997).  Plaintiff's Complaint falls short of satisfying any of these elements.[16]

<b>i.      <u>Alaunus is Not a "Manufacturer" or "Seller" of MPA.</u></b>

As established above, the allegations that Alaunus was "engaged in the manufacture, sale or distribution of medications or other pharmaceuticals" and that Alaunus was the alter-ego of NECC or part of a joint venture with NECC are nothing but conclusory assertions which should be ignored by the Court.  Putting aside those assertions, the FAC fails to *show* that Alaunus is a "manufacturer" or "seller" of any product, let alone MPA, and therefore does not state a plausible claim against Alaunus under the IPLA. *See Williams v. REP Corp.*, 302 F.3d 660, 666 (7th Cir. 2002) (defendant that did not sell, lease or otherwise put into the stream of commerce the machine that caused plaintiff's injury could not be held liable under the IPLA); *Chappey v. Ineos USA L.L.C.*, No. 2:08-CV-271, 2009 U.S. Dist. LEXIS 24807 (N.D. Ind. Mar. 23, 2009) (dismissing IPLA claim

---

[16] While the Original Complaint contained claims of design and warning defects, the product liability claims in the FAC are solely based upon an alleged manufacturing defect.  In its memorandum of law in support of its Motion to Dismiss the Original Complaint, Alaunus extensively briefed an argument that the Original Complaint fails to show that there was any manufacturing defect in the MPA product that was allegedly used by Mrs. Baer, particularly because the purported symptoms that she experienced are wholly consistent with known adverse reactions associated with the use of *non-contaminated* methylprednisolone acetate compounded by a brand-name manufacturer.  *See Alaunus' Memo. in Support of Mot. to Dismiss*, pp. 13 - 15 [Doc. No. 19].  Alaunus also briefed the argument that the pleading failed to sufficiently plead a warning or design defect claim.  *Id.*, pp. 15 - 19.  For the sake of economy, Alaunus incorporates by reference the defect argument asserted on pages 13 - 19 of the memorandum in support of its initial Motion to Dismiss the Original Complaint rather than restating the same argument in this memorandum.

concluding that the plaintiff had "not alleged that [defendant] was a manufacturer or a seller of any product" and that she likewise had "failed to specifically identify a product").

#### ii.   Product Identification/ Causation

Like Massachusetts law, Indiana law requires a plaintiff to identify the defendant as the manufacturer or seller of a product in order to state a claim under the IPLA. *See Schork v. Baxter Healthcare Corp.,* No. 4:10-cv-00005-RLY-WGH, 2011 WL 4402602 (S.D. Ind. Sept. 22, 2011); *Mathers v. Midland-Ross Corp.*, 532 N.E.2d 46, 48-49 (Mass. 1989) (stating that Massachusetts law requires that a plaintiff suing a manufacturer in a product-liability action be able to prove that his or her injury can be traced to that specific manufacturer); *Carrier v. Riddell, Inc.*, 721 F.2d 867, 869-870 (1st Cir.1983) (applying Massachusetts law) (same).

The FAC does not plead any factual allegations whatsoever showing that Alaunus manufactured or sold any MPA product and that Plaintiffs were injured by that product. None of the allegations in the pleading that relate to the identification of the manufacturer and distributor of the MPA product that was consumed by Mrs. Baer point to Alaunus.  Given that there are no ***factual allegations*** in the FAC that supports the Plaintiffs' statement that the product that allegedly injured Mrs. Baer was distributed by Alaunus, dismissal is appropriate under *Twombly-Iqbal* because it permits nothing more than a mere *possibility* that she was harmed by a product that was allegedly manufactured or distributed by Alaunus.  *See Patterson v. Novartis Pharmaceuticals Corp.,* 451 Fed. Appx. 495 (6th Cir. Aug. 23, 2011) (affirming dismissal for failure to state a claim because Massachusetts law requires that a plaintiff suing a manufacturer in a product-liability action be able to prove that his or her injury can be traced to that specific manufacturer and the factual allegations in the complaint only permitted the Court to infer the possibility that the plaintiff received infusions of the name-brand drug, Aredia, manufactured by Novartis, as opposed to the generic equivalent

manufactured by some other manufacturer).[17]   Significantly, MDL Courts have not hesitated to dismiss actions where the plaintiffs' complaints failed to allege sufficient facts to show that the defendant was the manufacturer or distributor of the alleged defective product that caused injury to the plaintiffs.  *See In Re Darvocet, Darvon and Propoxyphene Products Liability Litigation*, E.D.KY. Civ. No.  11-MD-2226 (July 31, 2012); *In re Fosamax Products Liability Litigation*, S.D.N.Y. Civ. No. 06-MD-1789, 2010 WL 1654156 (April 9, 2010).

> ### c. Mr. Baer Is Not Entitled To Any Recovery For Loss Of Consortium Since His Claim Is Derived From His Spouse's Failed Claims.

A cause of action is derivative if it may be brought only where a separate, related claim is actionable.  *Durham v. U-Haul Int'l*,745 N.E.2d 755, 764 (Ind. 2001). The derivative claimant must prove all the elements of the related tort in order to recover.  *Mayhue v. Sparkman*,653 N.E.2d 1384, 1386 (Ind.1995).  A spouses' claim for loss of consortium is derivative, Ind.Code § 34-18-2-22, because it "derives its viability from the validity of the claim of the injured spouse against the wrongdoer."  *Nelson v. Denkins*, 598 N.E.2d 558, 563 (Ind. Ct.App.1992).  For the reasons previously stated, Mrs. Baer has no right to any recovery under any of the theories asserted in the FAC.  Given that the pleading fails to state a claim as to Mrs. Baer, the loss of consortium claim by Mr. Baer fails as a matter of law since it is derivative of his spouse's failed claims against Alaunus.[18]

---

[17] *See also Peterson v. Breg,* 2010 U.S. Dist. Lexis 48985 (D. Ariz. April 29, 2010) (dismissing complaint that failed to identify which manufacturers' products were actually used despite initially naming defendant as manufacturer of pain pump used in surgery); *Johnson v. Moog, Inc.*, 2011 WL 719600 (E.D. Tex. Feb. 22, 2011) (all claims in medical device case dismissed because the pleading asserted only that unknown "defendants" committed actions and failed to state sufficient facts to identify defective product); *Henderson v. Sun Pharmaceuticals Industries, Ltd.*, 809 F. Supp.2d 1373 (N.D. Ga. Aug. 22, 2011) (all claims  dismissed due, in relevant part, to failure to allege sufficient factual allegations to identify the defendant that manufactured the product); *Singleton v. Eli Lilly Co.*, 2011 WL 2621067 (E.D. Cal. June 29, 2011) (all claims in prescription drug case dismissed due to failure to allege sufficient factual allegations to identify the product's manufacturer); *McFarland v. APP Pharmaceuticals, LLC*, 2011 WL 2413797 (W.D. Wash. June 13, 2011) (all claims in prescription drug/medical device case dismissed due to failure to identify the product's manufacturer).

[18] Unlike the Original Complaint, the FAC does not assert any claim for punitive damages.  Even if it did, any such claim would fail because it is derivative of the failed tort claims against Alaunus.  *See Alaunus' Memo. in Support of Mot. to Dismiss*, p. 10 [Doc. No. 19].

## V.  <u>CONCLUSION</u>

Plaintiffs' FAC fails to cure the deficiencies in the Original Complaint and should be dismissed for substantially the same reasons asserted in Alaunus' initial Motion to Dismiss. Plaintiffs do not plead sufficient facts to show that Alaunus is vicariously liable for NECC's alleged tortious conduct under an alter-ego or joint venture liability theory. The FAC impermissibly "lumps" NECC, Ameridose, and Alaunus together and therefore does not provide those defendants with notice as to the specific basis of liability asserted against each individual defendant.  Any claim by the Plaintiffs against Alaunus under the IPLA fails because they have not shown that Alaunus is a "manufacturer" or "seller" of the MPA product as defined under the IPLA, or had any involvement whatsoever in that products' compounding, distribution, or marketing. The common law claims for strict liability, negligence, and loss of consortium are subsumed under the IPLA, and may not be sustained as separate actions against an alleged "manufacturer" or "seller."  For these reasons, the FAC should be dismissed with prejudice,[19] pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief may be granted against Alaunus.

---

[19] This Court should not grant leave to the Plaintiffs to amend their pleading as they have already amended their complaint once, as of right, in response to Alaunus' Motion to Dismiss the Original Complaint and the Plaintiffs' failure to cure the deficiencies in their pleading in response to that Motion to Dismiss shows that any further proposed amendment will be futile.  Moreover, Plaintiffs are not entitled to conduct any discovery to cure the defects in their pleading given that Plaintiffs' claims against Alaunus are baseless and that discovery in this case will be massive. *See Twombly*, 127 S. Ct. at 1966 (rejecting arguments that a plaintiff should be permitted to proceed with discovery and that case management techniques may be used to weed out baseless claims and ruling that one of the main goals of the plausibility standard is the avoidance of unnecessary discovery and discovery would be massive since the Plaintiff represents a putative class of at least 90 percent of all subscribers to local telephone or high-speed Internet service in the continental United States in an action against America's largest telecommunications firms); *Dura Pharmaceuticals, Inc. v. Broudo*, 125 S.Ct. 1627 (2005) ("something beyond the mere possibility of loss causation must be alleged, lest a plaintiff with `a largely groundless claim' be allowed to `take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value").

Respectfully Submitted,
Alaunus Pharmaceutical, LLC,
By its Attorney,

Dated:   March 6, 2013

*/s/ Ryan Ciporkin*
_____
Franklin Levy (BBO# 297720)
Ryan Ciporkin (BBO# 667479)
Michele A. Hunton (BBO# 667766)
Lawson & Weitzen, LLP
88 Black Falcon Ave, Suite 345
Boston, MA 02210
Tel: (617) 439-4990
flevy@lawson-weitzen.com
rciporkin@lawson-weitzen.com
mhunton@lawson-weitzen.com

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a copy of the foregoing has been filed with the Clerk of the Court on March 6, 2013 using the CM/ECF system which sent notification of this filing to all ECF registered counsel of record via e-mail generated by the Court's ECF system.

*/s/ Ryan Ciporkin*
_____
Franklin Levy (BBO# 297720)
Ryan Ciporkin (BBO #667479)
Michele A. Hunton (BBO# 667766)
Lawson & Weitzen, LLP
88 Black Falcon Ave, Suite 345
Boston, MA 02210
Tel: (617) 439-4990
flevy@lawson-weitzen.com
rciporkin@lawson-weitzen.com
mhunton@lawson-weitzen.com