## **EXHIBIT C**

*In re TL Administration Corporation*,
First Amended Plan of Reorganization and Confirmation Order

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

In re                               :

                               :     04 MD 1598 (JSR)

EPHEDRA PRODUCTS LIABILITY     :

LITIGATION.                     :

-------------------------------------------------------------------x

PERTAINS TO ALL CASES

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

In re                               :

                               :     Chapter 11 Case No.

TL ADMINISTRATION CORPORATION,   :

et al. (f/k/a TWINLAB CORPORATION, et al.), :     03-15564 (RDD)

                               :

                               :     (Jointly Administered)

                   Debtors.    :

-------------------------------------------------------------------x

## FIRST AMENDED JOINT PLAN OF LIQUIDATION OF
## TL ADMINISTRATION CORPORATION (F/K/A TWINLAB CORPORATION),
## TL ADMINISTRATION, INC. (F/K/A TWIN LABORATORIES INC.), AND
## TL ADMINISTRATION (UK) LTD. (F/K/A TWIN LABORATORIES (UK) LTD.)
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

WEIL, GOTSHAL & MANGES LLP
  Attorneys for Debtors
  and Debtors in Possession
767 Fifth Avenue
New York, New York  10153
(212) 310-8000

Dated:  May 25, 2005

# TABLE OF CONTENTS

Page

SECTION 1  DEFINITIONS AND INTERPRETATION..................................................1

1.1  2002-2004 Ephedra PI Claim ...............................................................1

1.2  2002-2004 Ephedra PI Settlement Agreement .....................................1

1.3  Administrative Expense Claim ..............................................................2

1.4  Aggregate Allowed Consumer Class Action Claims ............................2

1.5  Aggregate Third Party Settlement Amount ...........................................2

1.6  AISLIC....................................................................................................2

1.7  Allowed..................................................................................................2

1.8  Amended Complaint ..............................................................................2

1.9  Available Cash.......................................................................................2

1.10  Avoidance Actions ................................................................................2

1.11  Bankruptcy Code...................................................................................2

1.12  Bankruptcy Court ..................................................................................3

1.13  Bankruptcy Rule s ..................................................................................3

1.14  Blechman Agreement .............................................................................3

1.15  Blechmans .............................................................................................3

1.16  Business Day ..........................................................................................3

1.17  CPLR......................................................................................................3

1.18  Cash........................................................................................................3

1.19  Causes of Action ...................................................................................3

1.20  Chapter 11 Cases...................................................................................3

1.21  Claim .....................................................................................................3

1.22  Class .......................................................................................................4

1.23  Class 4 Distribution ..............................................................................4

1.24  Collateral................................................................................................4

1.25  Commencement Date .............................................................................4

1.26  Confirmation Date.................................................................................4

1.27  Confirmation Hearing ...........................................................................4

1.28  Confirmation Order ...............................................................................4

1.29  Consumer Class Action Claim ..............................................................4

1.30  Creditor .................................................................................................4

1.31  Creditors Committee..............................................................................4

1.32  Debtors or Debtors in Possession.........................................................4

1.33  Declaratory Judgment Complaint .........................................................4

1.34  Disbursing Agent ..................................................................................4

# TABLE OF CONTENTS
## (continued)

Page

| | | |
|---|---|---|
| 1.35 | Disclosure Statement | 4 |
| 1.36 | Disclosure Statement Hearing | 5 |
| 1.37 | Disclosure Statement Order | 5 |
| 1.38 | Disputed | 5 |
| 1.39 | Distribution Record Date | 5 |
| 1.40 | District Court | 5 |
| 1.41 | Effective Date | 5 |
| 1.42 | Entity | 5 |
| 1.43 | Ephedra Claimants Committee | 5 |
| 1.44 | Ephedra Indemnification Claim | 6 |
| 1.45 | Ephedra Insurance Policies | 6 |
| 1.46 | Ephedra Personal Injury Claim | 6 |
| 1.47 | Ephedra Personal Injury Trust | 6 |
| 1.48 | Ephedra Personal Injury Trust Agreement | 6 |
| 1.49 | Ephedra Personal Injury Trustee | 6 |
| 1.50 | Equity Interest | 6 |
| 1.51 | Estates | 6 |
| 1.52 | Final Order | 7 |
| 1.53 | GNC | 7 |
| 1.54 | General Unsecured Claim | 7 |
| 1.55 | Holdings | 7 |
| 1.56 | Ideasphere | 7 |
| 1.57 | Ideasphere Agreement | 7 |
| 1.58 | Impaired | 7 |
| 1.59 | Indenture | 7 |
| 1.60 | Indenture Trustee | 7 |
| 1.61 | Initial Cash | 7 |
| 1.62 | Non-Ephedra Claims | 8 |
| 1.63 | Objection Deadline | 8 |
| 1.64 | Other Participating Ephedra Claims | 8 |
| 1.65 | Person | 8 |
| 1.66 | Plan | 8 |
| 1.67 | Plan Administrator | 8 |
| 1.68 | Pre-2002 Ephedra PI Claim | 8 |

**TABLE OF CONTENTS**
(continued)

| | | Page |
|---|---|---|
| 1.69 | Priority Non-Tax Claim | 8 |
| 1.70 | Priority Tax Claim | 8 |
| 1.71 | Pro Rata Share | 8 |
| 1.72 | Punitive Damages | 8 |
| 1.73 | Punitive Damage Claim | 9 |
| 1.74 | Released Parties | 9 |
| 1.75 | Schedules | 9 |
| 1.76 | Secured Claim | 9 |
| 1.77 | Settlement Escrow Agent | 9 |
| 1.78 | Settling Third Party | 9 |
| 1.79 | Tax Code | 9 |
| 1.80 | Third Party Settlement Amount | 9 |
| 1.81 | Treasury Regulations | 9 |
| 1.82 | U.S. Trustee | 9 |
| 1.83 | Voting Procedures Order | 9 |
| SECTION 2 | ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS | 10 |
| 2.1 | Administrative Expense Claims | 10 |
| 2.2 | Priority Tax Claims | 10 |
| SECTION 3 | CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS | 10 |
| 3.1 | Classification of Claims and Equity Interests | 10 |
| 3.2 | Bifurcation of Claims Asserting Punitive Damages | 11 |
| SECTION 4 | TREATMENT OF CLAIMS AND EQUITY INTERESTS | 11 |
| 4.1 | Class 1 –Secured Claims | 11 |
| 4.2 | Class 2 - Priority Non-Tax Claims | 12 |
| 4.3 | Class 3 – Pre-2002 Ephedra PI Claims | 12 |
| 4.4 | Class 4 – 2002-2004 Ephedra PI Claims | 13 |
| 4.5 | Class 5 – General Unsecured Claims | 13 |
| 4.6 | Class 6 – Punitive Damage Claims | 14 |
| 4.7 | Class 7 – Equity Interests | 14 |
| SECTION 5 | THE EPHEDRA PERSONAL INJURY TRUST | 14 |
| 5.1 | Responsibilities of the Ephedra Personal Injury Trust | 14 |
| 5.2 | Resolution of Minors' Claims by the Ephedra Personal Injury Trust | 14 |
| 5.3 | Transfer of Property to the Ephedra Personal Injury Trust | 15 |

# TABLE OF CONTENTS
## (continued)

Page

| | | |
|---|---|---|
| 5.4 | Tax Treatment of Ephedra Personal Injury Trust | 15 |
| 5.5 | Appointment of Ephedra Personal Injury Trustee | 15 |
| SECTION 6 | PROVISIONS GOVERNING DISTRIBUTIONS | 16 |
| 6.1 | Distribution Record Date | 16 |
| 6.2 | Delivery of Distributions and Undeliverable Distributions | 16 |
| 6.3 | Surrender of Instruments | 16 |
| 6.4 | Setoffs | 17 |
| 6.5 | Transactions on Business Days | 17 |
| 6.6 | Allocation of Plan Distribution Between Principal and Interest | 17 |
| 6.7 | Withholding and Reporting Requirements | 17 |
| SECTION 7 | MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN | 17 |
| 7.1 | Deemed Consolidation of Debtors for Plan Purposes Only | 17 |
| 7.2 | The Plan Administrator | 18 |
| 7.3 | Directors/Officers/Assets of the Debtors on the Effective Date | 18 |
| 7.4 | Duties and Powers of the Plan Administrator | 19 |
| 7.5 | Method of Distributions Under the Plan | 21 |
| 7.6 | Procedures for Treating Disputed Claims | 22 |
| 7.7 | Closing of the Chapter 11 Cases | 23 |
| 7.8 | Cancellation of Existing Securities and Agreements | 23 |
| 7.9 | Dissolution | 24 |
| 7.10 | Books and Records | 24 |
| 7.11 | Corporate Action | 24 |
| 7.12 | Effectuating Documents and Further Transactions | 24 |
| SECTION 8 | EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 25 |
| 8.1 | Executory Contracts and Unexpired Leases | 25 |
| 8.2 | Approval of Rejection of Executory Contracts and Unexpired Leases | 25 |
| 8.3 | Rejection Claims | 25 |
| SECTION 9 | EFFECTIVENESS OF THE PLAN | 25 |
| 9.1 | Condition Precedent to Confirmation of Plan | 25 |
| 9.2 | Conditions Precedent to Effective Date | 25 |
| 9.3 | Satisfaction of Conditions | 26 |
| 9.4 | Effect of Nonoccurrence of Conditions to Consummation | 26 |
| 9.5 | Waiver of Conditions | 27 |

**TABLE OF CONTENTS**
**(continued)**

                                                                                              Page

SECTION 10    EFFECT OF CONFIRMATION ................................................................ 27

    10.1    Vesting of Assets ....................................................................................... 27

    10.2    Binding Effect ............................................................................................. 27

    10.3    Retention of Causes of Action ................................................................... 27

    10.4    Exculpations and Limitation of Liability ................................................... 28

    10.5    Releases ...................................................................................................... 28

    10.6    Injunction ................................................................................................... 29

    10.7    United States Exception ............................................................................. 30

    10.8    Terms of Pre-Plan Injunction and Stays ................................................... 31

SECTION 11    RETENTION OF JURISDICTION ........................................................... 31

    11.1    Jurisdiction of Bankruptcy Court ............................................................... 31

SECTION 12    MISCELLANEOUS PROVISIONS ......................................................... 32

    12.1    Dissolution of Creditors Committee and Ephedra Claimants Committee ......... 32

    12.2    Substantial Consummation ......................................................................... 33

    12.3    Payment of Statutory Fees ......................................................................... 33

    12.4    Effectuating Documents and Further Transactions ................................... 33

    12.5    Exemption from Transfer Taxes ................................................................. 33

    12.6    Post-Confirmation Date Fees and Expenses of Professionals .................... 33

    12.7    Elimination of Vacant Classes ................................................................... 33

    12.8    Nonconsensual Confirmation ..................................................................... 34

    12.9    Modification of Plan ................................................................................... 34

    12.10   Revocation or Withdrawal of Plan ............................................................. 34

    12.11   Courts of Competent Jurisdiction ............................................................... 34

    12.12   Severability ................................................................................................. 34

    12.13   Governing Law ........................................................................................... 35

    12.14   Exhibits ....................................................................................................... 35

    12.15   Successors and Assigns ............................................................................... 35

    12.16   Time ............................................................................................................ 35

    12.17   Notices ........................................................................................................ 35

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
In re                                   :

                                  :     04 MD 1598 (JSR)

EPHEDRA PRODUCTS LIABILITY    :

LITIGATION.                       :

-------------------------------------------------------------------x
PERTAINS TO ALL CASES

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
In re                                   :

                                  :     Chapter 11 Case No.

TL ADMINISTRATION CORPORATION,  :

et al. (f/k/a TWINLAB CORPORATION, et al.),  :     03-15564 (RDD)

                                  :

                                  :     (Jointly Administered)

                Debtors.     :

-------------------------------------------------------------------x

## FIRST AMENDED JOINT PLAN OF LIQUIDATION OF
## TL ADMINISTRATION CORPORATION (F/K/A TWINLAB CORPORATION),
## TL ADMINISTRATION, INC. (F/K/A TWIN LABORATORIES INC.), AND
## TL ADMINISTRATION (UK) LTD. (F/K/A TWIN LABORATORIES (UK) LTD.)
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

       TL Administration Corporation (f/k/a Twinlab Corporation), TL Administration Inc. (f/k/a Twin Laboratories, Inc.), and TL Administration (UK) Ltd. (f/k/a Twin Laboratories (UK) Ltd.), the above-captioned debtors and debtors in possession, propose the following chapter 11 plan of liquidation pursuant to section 1121(a) of title 11 of the United States Code:

### SECTION 1

### DEFINITIONS AND INTERPRETATION

**DEFINITIONS.**  The following terms used herein shall have the respective meanings defined below (such meanings to be equally applicable to both the singular and plural):

     **1.1**       **2002-2004 Ephedra PI Claim**  means any Ephedra Personal Injury Claim that is not a Pre-2002 Ephedra PI Claim.

     **1.2**       **2002-2004 Ephedra PI Settlement Agreement**  means that certain agreement by and among the holders of 2002-2004 Ephedra PI Claims, the holders of Other Participating Ephedra Claims, the Settling Third Parties, and the Debtors, substantially in the form of the agreement attached hereto as Exhibit A.

**1.3**     **Administrative Expense Claim** means any right to payment constituting a cost or expense of administration of any of the Chapter 11 Cases allowed under sections 503(b), 507(a)(1), and 1114(e) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the Debtors' estates, any actual and necessary costs and expenses of operating the Debtors' businesses, any indebtedness or obligations incurred or assumed by the Debtors, as debtors in possession, during the Chapter 11 Cases, including, without limitation, for the acquisition or lease of property or an interest in property or the rendition of services, any allowances of compensation and reimbursement of expenses to the extent allowed by Final Order under sections 330 or 503 of the Bankruptcy Code, and any fees or charges assessed against the estates of the Debtors under section 1930 of chapter 123 of title 28 of the United States Code.

**1.4**     **Aggregate Allowed Consumer Class Action Claims** means the aggregate Allowed value, if any, of the Consumer Class Action Claims where the Allowed value of each such Claim is determined by estimation by (i) the Debtors following a settlement agreement with the applicable claimant(s) or (ii) the Bankruptcy Court pursuant to section 502(c) of the Bankruptcy Code.

**1.5**     **Aggregate Third Party Settlement Amount** means the sum of all Third Party Settlement Amounts.

**1.6**     **AISLIC** means American International Specialty Lines Insurance Company.

**1.7**     **Allowed** means, with reference to any Claim, (i) any Claim against any Debtor which has been listed by such Debtor in the Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim has been filed, (ii) any timely filed Claim as to which no objection to allowance has been interposed in accordance with Section 7.6(a) hereof or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective holder, (iii) any Claim expressly allowed by a Final Order or hereunder, or (iv) any 2002-2004 Ephedra PI Claim or Other Participating Ephedra Claim finally resolved in accordance with the procedures of the Ephedra Personal Injury Trust Agreement.

**1.8**     **Amended Complaint** means the amended complaint filed by the Creditors Committee and Indenture Trustee on May 7, 2004 in the Bankruptcy Court, Adversary Proceeding No. 04-02334(CB).

**1.9**     **Available Cash** means the Initial Cash minus the Class 4 Distribution.

**1.10**     **Avoidance Actions** means any actions that may be commenced, before or after the Effective Date, pursuant to sections 544, 545, 547, 548, or 549 of the Bankruptcy Code that existed or may have existed against vendors, suppliers, or customers of the Debtors.

**1.11**     **Bankruptcy Code** means title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Cases.

**1.12** **Bankruptcy Court** means the United States District Court for the Southern District of New York, having jurisdiction over the Chapter 11 Cases and, to the extent of any reference made under section 157 of title 28 of the United States Code, the bankruptcy court unit of such District Court having jurisdiction over the Chapter 11 Cases under section 151 of title 28 of the United States Code.

**1.13** **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time, applicable to the Chapter 11 Cases, and any Local Rules of the Bankruptcy Court.

**1.14** **Blechman Agreement** means that certain Stipulation and Agreement Regarding Compromise and Settlement of Adversary Proceeding, dated as of November 12, 2004, by and among the Debtors, the Creditors Committee, the Blechmans, John Danhakl, Jonathan Sokoloff, Leonard Schutzman, William Westerfield, U.S. Bank National Association as Indenture Trustee, and National Union Fire Insurance Company of Pittsburgh.

**1.15** **Blechmans** means Brian Blechman, Dean Blechman, Neil Blechman, Steve Blechman, Ross Blechman, Robin Blechman, Sharon Blechman, Helena Blechman, Linda Blechman, and Elyse Blechman.

**1.16** **Business Day** means any day other than a Saturday, a Sunday, or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

**1.17** **CPLR** means the Civil Practice Law and Rules of New York.

**1.18** **Cash** means legal tender of the United States of America.

**1.19** **Causes of Action** means any and all actions, causes of action, liabilities, obligations, rights, suits, damages, judgments, claims, and demands whatsoever, whether known or unknown, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Commencement Date or during the course of the Chapter 11 Cases, including through the Effective Date, but not including the Avoidance Actions.

**1.20** **Chapter 11 Cases** means the jointly administered cases under chapter 11 of the Bankruptcy Code commenced by the Debtors on September 4, 2003 in the Bankruptcy Court and styled *In re TL Administration Corporation (f/k/a Twinlab Corporation), et al.,* Ch. 11 Case No. 03-15564 (RDD) (Jointly Administered), which represents the following three cases: *In re TL Administration Corporation (f/k/a Twinlab Corporation)*, Ch. 11 Case No. 03-15564 (RDD); *In re TL Administration, Inc. (f/k/a Twin Laboratories, Inc.)*, Ch. 11 Case No. 03-15566 (RDD); and *In re TL Administration (UK) Ltd. (f/k/a Twin Laboratories (UK) Ltd.)*, Ch. 11 Case No. 03-15563 (RDD).

**1.21** **Claim** has the meaning set forth in section 101 of the Bankruptcy Code.

**1.22**     **Class** means any group of Claims or Equity Interests classified by the Plan pursuant to section 1122(a)(1) of the Bankruptcy Code.

**1.23**     **Class 4 Distribution** means $3,550,000.

**1.24**     **Collateral** means any property or interest in property of the estate of any Debtor subject to a lien, charge, or other encumbrance to secure the payment or performance of a Claim, which lien, charge, or other encumbrance is not subject to avoidance under the Bankruptcy Code.

**1.25**     **Commencement Date** means September 4, 2003.

**1.26**     **Confirmation Date** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

**1.27**     **Confirmation Hearing** means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of the Plan.

**1.28**     **Confirmation Order** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

**1.29**     **Consumer Class Action Claim** means any General Unsecured Claim listed in Exhibit B hereto.

**1.30**     **Creditor** means any Entity that holds a Claim against a Debtor or Debtors (whether or not such Entity has asserted a Claim against any Debtors).

**1.31**     **Creditors Committee** means the official committee of unsecured creditors appointed by the U.S. Trustee in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code.

**1.32**     **Debtors or Debtors in Possession** means TL Administration Corporation (f/k/a Twinlab Corporation), TL Administration Inc. (f/k/a Twin Laboratories, Inc.) and TL Administration (UK) Ltd. (f/k/a Twin Laboratories (UK) Ltd.).

**1.33**     **Declaratory Judgment Complaint** means the complaint seeking declaratory judgment filed by the Blechmans on February 6, 2004 in the Bankruptcy Court, Adversary Proceeding No. 04-02323 (CB).

**1.34**     **Disbursing Agent** means any Entity in its capacity as a disbursing agent under Section 7.5(a) of the Plan.

**1.35**     **Disclosure Statement** means the disclosure statement relating to the Plan, including, without limitation, all exhibits thereto, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

**1.36** **Disclosure Statement Hearing** means the hearing held by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code to consider approval of the Disclosure Statement.

**1.37** **Disclosure Statement Order** means the order of the Bankruptcy Court entered pursuant to section 1125 of the Bankruptcy Code approving the Disclosure Statement.

**1.38** **Disputed** means, with respect to any Claim which has not been Allowed pursuant to the Plan or a Final Order:

(a) if no proof of claim has been filed by the applicable deadline: (i) a Claim that has been or hereafter is listed on the Schedules as disputed, contingent, or unliquidated; or (ii) a Claim that has been or hereafter is listed on the Schedules as other than disputed, contingent, or unliquidated, but as to which the Debtors or any other party in interest has interposed an objection or request for estimation which has not been withdrawn or determined by a Final Order;

(b) if a proof of claim or request for payment of an Administrative Expense Claim has been filed by the applicable deadline: (i) a Claim for which no corresponding Claim has been or hereafter is listed on the Schedules; (ii) a Claim for which a corresponding Claim has been or hereafter is listed on the Schedules as other than disputed, contingent, or unliquidated, but the nature or amount of the Claim as asserted in the proof of claim varies from the nature and amount of such Claim as listed on the Schedules; (iii) a Claim for which a corresponding Claim has been or hereafter is listed on the Schedules as disputed, contingent, or unliquidated; or (iv) a Claim for which a timely objection or request for estimation is interposed by the Debtors or other party in interest which has not been withdrawn or determined by a Final Order.

Without limiting the foregoing and for the avoidance of any doubt, any Ephedra Personal Injury Claim that has not been Allowed prior to the Effective Date pursuant to an order of the District Court is a Disputed Claim.

**1.39** **Distribution Record Date** means the Confirmation Date.

**1.40** **District Court** means the United States District Court for the Southern District of New York.

**1.41** **Effective Date** means the date on which the Plan shall become effective, after the conditions to effectiveness of the Plan set forth in Section 9 hereof have been satisfied or waived.

**1.42** **Entity** means an individual, corporation, partnership, limited liability company, association, joint stock company, joint venture, estate, trust, unincorporated organization, or government or any political subdivision thereof, or other person or entity.

**1.43** **Ephedra Claimants Committee** means the official committee of ephedra claimants appointed by the U.S. Trustee in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code.

**1.44      Ephedra Indemnification Claim** means any Claim against any of the Debtors, that is not a Punitive Damages Claim, that is (i) held by an Entity (or any assignee or transferee of such Entity) who has been, is, or may be a defendant or otherwise liable party in a Cause of Action seeking damages for wrongful death or personal injury (whether physical, emotional, or otherwise) to the extent caused or allegedly caused, directly or indirectly, by the ingestion of ephedra or ephedra-containing products and (ii) on account of alleged liability of one or more of the Debtors for reimbursement, indemnification, subrogation, or contribution of all or any portion of (x) any damages such Entity has paid or may pay to one or more plaintiffs or other claimants in such Cause of Action and/or (y) any expenses, including attorney fees in connection with such Causes of Action.

**1.45      Ephedra Insurance Policies** means any and all policies of insurance in which the Debtors are or may be covered in respect of the 2002-2004 Ephedra PI Claims, to the full remaining extent of such coverage; provided, however, that the Ephedra Insurance Policies shall not include policies written by AISLIC.

**1.46      Ephedra Personal Injury Claim** means (i) any Claim against any of the Debtors that is not a Punitive Damage Claim, which arises out of events which occurred, in whole or in part, prior to the Commencement Date, and alleges wrongful death or personal injury (whether physical, emotional, or otherwise) to the extent caused or allegedly caused, directly or indirectly, by the ingestion of ephedra or ephedra-containing products designed, manufactured, fabricated, sold, supplied, produced, or distributed by one or more of the Debtors, including, without limitation, any Claim for compensatory damages and actual pecuniary loss, and (ii) any Ephedra Indemnification Claim.  Without limitation of the foregoing, Ephedra Personal Injury Claims shall include all (i) Pre-2002 Ephedra PI Claims and (ii) 2002-2004 Ephedra PI Claims.

**1.47      Ephedra Personal Injury Trust** means the trust established pursuant to the Ephedra Personal Injury Trust Agreement.

**1.48      Ephedra Personal Injury Trust Agreement** means the Ephedra Personal Injury Trust Agreement executed by the Debtors, the Settlement Escrow Agent, and the Ephedra Personal Injury Trustee, substantially in the form of the agreement attached hereto as Exhibit C.

**1.49      Ephedra Personal Injury Trustee** means the person confirmed by the Bankruptcy Court to serve as trustee of the  Ephedra Personal Injury Trust, pursuant to the terms of the Ephedra Personal Injury Trust Agreement, or as subsequently may be appointed pursuant to the terms of the Ephedra Personal Injury Trust Agreement.

**1.50      Equity Interest** means the interest of any holder of an equity security of Holdings represented by any issued and outstanding shares of common or preferred stock or other instrument evidencing a present ownership interest in Holdings, whether or not transferable, or any option, warrant, or right, contractual or otherwise, to acquire any such interest.

**1.51      Estates** means the three estates of the Debtors created pursuant to section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

**1.52** **Final Order** means an order or judgment of the Bankruptcy Court entered by the Clerk of the Bankruptcy Court on the docket in the Chapter 11 Cases which has not been reversed, vacated, or stayed and as to which (i) the time to appeal, petition for *certiorari*, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceeding for a new trial, reargument, or rehearing shall then be pending, or (ii) if an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari*, or move for a new trial, reargument, or rehearing shall have expired.

**1.53** **GNC** means GNC Oldco, Inc. (f/k/a General Nutrition Companies, Inc.) and its affiliates and assigns, and their insurer, Zurich American Insurance Company.

**1.54** **General Unsecured Claim** means any Claim against any of the Debtors that is not an Administrative Expense Claim, Priority Tax Claim, Priority Non-Tax Claim, Secured Claim, Ephedra Personal Injury Claim, or Punitive Damage Claim.

**1.55** **Holdings** means TL Administration Corporation (f/k/a Twinlab Corporation).

**1.56** **Ideasphere** means, collectively, Ideasphere, Inc. and Twinlab Corporation (f/k/a TL Acquisition Corp).

**1.57** **Ideasphere Agreement** means that certain Asset Purchase Agreement between Ideasphere and the Debtors, dated as of September 3, 2003, as amended by (i) that certain Amendment No. 1, dated December 5, 2003, (ii) that certain Amendment No. 2, dated December 19, 2003, and (iii) that certain Amendment No. 3, dated December 19, 2003.

**1.58** **Impaired** means any Class that is impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.59** **Indenture** means that certain Indenture, dated as of May 7, 1996, between Holdings and US Bank Corporate Trust Services, as trustee, as such Indenture may have been amended or modified, pursuant to which $100,000,000 in principal amount of 10-1/4% Senior Subordinated Notes due May 2006 were issued and under which $39,915,000 principal amount of such notes remains outstanding.

**1.60** **Indenture Trustee** means the trustee under the Indenture, and any successors or predecessors thereto.

**1.61** **Initial Cash** means, as of the Effective Date, all Cash and Cash equivalents (not including restricted cash or the Aggregate Third Party Settlement Amount) of the Debtors, less the amount of Cash estimated and retained by the Debtors to fund adequately the administration of the Plan and the Chapter 11 Cases on and after the Effective Date and the payment of Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, and, if applicable, Secured Claims.

**1.62**     **Non-Ephedra Claims** means any Claim that is not an Ephedra Personal Injury Claim.

**1.63**     **Objection Deadline** means the date set forth in the order of the Bankruptcy Court by which a holder of a Claim or a holder of an Equity Interest or other party in interest may file an objection to confirmation of the Plan.

**1.64**     **Other Participating Ephedra Claims** means, in connection with the lawsuits listed in Exhibit D, the claims against the Settling Third Parties seeking damages for wrongful death or personal injury (whether physical, emotional, or otherwise) to the extent caused or allegedly caused, directly or indirectly, by the ingestion of ephedra or ephedra-containing products designed, manufactured, fabricated, sold, supplied, produced, or distributed by one or more of the Debtors.

**1.65**     **Person** has the meaning set forth in section 101(41) of the Bankruptcy Code.

**1.66**     **Plan** means this first amended chapter 11 joint plan of liquidation, dated May 25, 2005, including the exhibits hereto, as the same may be amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

**1.67**     **Plan Administrator** means the person or entity charged with administering the Plan, initially selected by the Debtors and named in the Confirmation Order, and any successor thereto appointed in accordance with section 7.2 hereof.

**1.68**     **Pre-2002 Ephedra PI Claim** means any Ephedra Personal Injury Claim listed in Exhibit E hereto and any Ephedra Indemnification Claim in connection with a Pre-2002 Ephedra PI Claim.

**1.69**     **Priority Non-Tax Claim** means any Claim, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment as specified in section 507(a)(3), (4), (5), (6), (7), or (9) of the Bankruptcy Code.

**1.70**     **Priority Tax Claim** means any Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**1.71**     **Pro Rata Share** means a proportionate share, so that the ratio of the consideration distributed on account of an Allowed Claim in a Class to the amount of such Allowed Claim is the same as the ratio of the consideration distributed on account of all Allowed Claims in such Class to the amount of all Allowed Claims in such Class.

**1.72**     **Punitive Damages** mean any fine, penalty, forfeiture, attorneys' fees (to the extent such attorneys' fees are punitive in nature), or for multiple, exemplary, or punitive damages, to the extent that such fine, penalty, forfeiture, attorneys' fees, or damages is not for compensatory damages or actual pecuniary loss.

**1.73**     **Punitive Damage Claim** means, to the maximum extent permitted by law, any Claim against any of the Debtors, whether secured or unsecured, for Punitive Damages or for reimbursement, indemnification, subrogation, or contribution of Punitive Damages.

**1.74**     **Released Parties** means the Settling Third Parties and any current or former employee, agent, representative, officer, director, member, partner, manager, accountant, attorney, financial advisor, other professional, successor, and assign of any Settling Third Party, and any Entity claimed to be liable derivatively through any of the foregoing.

**1.75**     **Schedules** mean the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules as such schedules and statements have been or may be supplemented or amended through the Confirmation Date.

**1.76**     **Secured Claim** means a Claim (i) secured by Collateral, to the extent of the value of such Collateral (a) as set forth in the Plan, (b) as agreed to by the holder of such Claim and the Debtors, or (c) as determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code, or (ii) secured by the amount of any rights of setoff of the holder thereof under section 553 of the Bankruptcy Code.

**1.77**     **Settlement Escrow Agent** means the escrow agent appointed pursuant to the 2002-2004 Ephedra PI Settlement Agreement.

**1.78**     **Settling Third Party** means each of AISLIC and the Entities listed on Exhibit F hereto, each of which is a party to the 2002-2004 Ephedra PI Settlement Agreement pursuant to which such Entity agreed to pay a Third Party Settlement Amount.

**1.79**     **Tax Code** means title 26 of the United States Code, as amended from time to time.

**1.80**     **Third Party Settlement Amount** means the amount pursuant to the 2002-2004 Ephedra PI Settlement Agreement that a Settling Third Party agrees to pay to the Settlement Escrow Agent for distribution to the Ephedra Personal Injury Trust in accordance with the Plan.

**1.81**     **Treasury Regulations** means regulations (including temporary and proposed) promulgated under the Tax Code by the United States Treasury Department, as amended from time to time.

**1.82**     **U.S. Trustee** means the Office of the United States Trustee for the Southern District of New York.

**1.83**     **Voting Procedures Order** means an order of the Bankruptcy Court approving procedures relating to the solicitation and tabulation of votes with respect to the Plan, which order may be included and be a part of the Disclosure Statement Order.

**INTERPRETATION; APPLICATION OF DEFINITIONS AND RULES OF CONSTRUCTION**

The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained therein. Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, the feminine, and the neuter. A term used herein that is not defined herein shall have the meaning assigned to that term in the Bankruptcy Code. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the Plan. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.

## SECTION 2

### ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

**2.1** **Administrative Expense Claims.** Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a different treatment, on the later of the Effective Date and the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is reasonably practicable, the Debtors shall pay to each holder of an Allowed Administrative Expense Claim, in full satisfaction of such Claim, an amount in Cash equal to the Allowed amount of such Claim.

**2.2** **Priority Tax Claims.** Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, on the later of the Effective Date and the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon thereafter as is reasonably practicable, the Debtors shall pay to each holder of an Allowed Priority Tax Claim, in full satisfaction of such Claim, an amount in Cash equal to the Allowed amount of such Claim.

## SECTION 3

### CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

**3.1** **Classification of Claims and Equity Interests.** Claims, other than Administrative Expense Claims and Priority Tax Claims, and Equity Interests are classified for all purposes, including voting (unless otherwise specified), confirmation, and distribution pursuant to the Plan, as follows:

| Class | Designation | Status | Entitled to Vote |
|-------|-------------|--------|------------------|
| Class 1 | Secured Claims | Unimpaired | No |
| Class 2 | Priority Non-Tax Claims | Unimpaired | No |
| Class 3 | Pre-2002 Ephedra PI Claims | Unimpaired | No |
| Class 4 | 2002-2004 Ephedra PI Claims | Impaired | Yes |
| Class 5 | General Unsecured Claims | Impaired | Yes |
| Class 6 | Punitive Damage Claims | Impaired | No |
| Class 7 | Equity Interests | Impaired | No |

**3.2** **Bifurcation of Claims Asserting Punitive Damages.** Any Claim, including without limitation Pre-2002 Ephedra PI Claims, 2002-2004 Ephedra PI Claims, and Ephedra Indemnification Claims which asserts, alleges, or includes a claim for Punitive Damages or seeks reimbursement, indemnification, subrogation, or contribution of Punitive Damages shall be bifurcated into two Claims, a Claim for the amount asserted or alleged exclusive of Punitive Damages and a Punitive Damage Claim for the amount asserted or alleged as Punitive Damages (or for reimbursement, indemnification, subrogation, or contribution of Punitive Damages), whether or not asserted or alleged in a fixed or unfixed amount.

**SECTION 4**

**TREATMENT OF CLAIMS AND EQUITY INTERESTS**

**4.1** **Class 1 – Secured Claims.**

(a) **Distributions.** Except to the extent that the holder of an Allowed Secured Claim agrees to less favorable treatment or that such Allowed Secured Claim has previously been satisfied by the Debtors, on the later of the Effective Date or the date such Secured Claim becomes an Allowed Secured Claim, or as soon thereafter as is reasonably practicable, each holder of an Allowed Secured Claim shall receive, at the option of the Debtors, and in full satisfaction of such Claim, either (i) Cash in an amount equal to one hundred percent (100%) of the unpaid amount of such Allowed Secured Claim, (ii) the proceeds of the sale or disposition of the Collateral securing such Allowed Secured Claim to the extent of the value of the holder's secured interest in the Allowed Secured Claim, net of the costs of disposition of such Collateral, (iii) the Collateral securing such Allowed Secured Claim, (iv) treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of such Allowed Secured Claim is entitled, or (v) such other distribution and/or treatment as necessary to satisfy the requirements of the Bankruptcy Code for classifying a Class of secured Claims as unimpaired. In the event the Debtors treat a Claim under clause (i) or (ii) of this Section, the liens securing such Secured Claim shall be deemed released.

(b) **Impairment and Voting.** Class 1 is unimpaired by the Plan. Each holder of a Secured Claim in Class 1 is not entitled to vote to accept or reject the Plan and shall be conclusively deemed to have accepted the Plan.

### 4.2 Class 2 - Priority Non-Tax Claims.

(a) **Distributions.** Except to the extent that a holder of an Allowed Priority Non-Tax Claim agrees to a different treatment of such Claim, on the later of the Effective Date and the date such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, or as soon thereafter as is reasonably practicable, each holder of an Allowed Priority Non-Tax Claim shall receive, in full satisfaction of such Claim, an amount in Cash equal to the Allowed amount of such Priority Non-Tax Claim.

(b) **Impairment and Voting.** Class 2 is unimpaired by the Plan. Each holder of a Priority Non-Tax Claim in Class 2 is not entitled to vote to accept or reject the Plan and shall be conclusively deemed to have accepted the Plan.

### 4.3 Class 3 – Pre-2002 Ephedra PI Claims.

(a) **Distributions.** Subject to subsection (b) below, each Pre-2002 Ephedra PI Claim shall be satisfied in full in the ordinary course of business from the proceeds of the Debtors' applicable insurance policy or policies, as the case may be, at such time as such Pre-2002 Ephedra PI Claim becomes an Allowed Claim.

(b) **Liquidation of Pre-2002 Ephedra PI Claims.** All Pre-2002 Ephedra PI Claims are Disputed Claims and shall be determined, resolved, or adjudicated, as the case may be, in a manner as if the Chapter 11 Cases had not been commenced and shall survive the Effective Date as if the Chapter 11 Cases had not been commenced. Upon the determination, resolution or adjudication of any such Claim as provided herein, such Claim shall be deemed to be an Allowed Pre-2002 Ephedra PI Claim, in the amount or in the manner determined by a Final Order or by a binding award, agreement or settlement; provided, however, that in addition to the Debtors' preservation of all rights and defenses respecting any Pre-2002 Ephedra PI Claim that exist under applicable non-bankruptcy law, (i) any rejection, avoidance, recovery, or other power or defense available to the Debtors under sections 365, 510 (except subordination), 542, 543, 544, 545, 547, 548, 549, 550, 533 or 724 of the Bankruptcy Code is preserved, and (ii) the Debtors may object under section 502 of the Bankruptcy Code to any Pre-2002 Ephedra PI Claim on the ground that (A) such Pre-2002 Ephedra PI Claim was not timely asserted in the Chapter 11 Cases, (B) such Pre-2002 Ephedra PI Claim is subject to any power or defense reserved in clause (i) of this sentence and/or is disallowable under section 502(d) of the Bankruptcy Code, or (C) such Pre-2002 Ephedra PI Claim is disallowable under section 502(e) of the Bankruptcy Code, to the extent that such section is relied on to ensure that there is no duplication in the Claim of an allegedly subrogated claim, on the one hand, and the underlying claimant whose Claim allegedly gave rise to the subrogated claim, on the other. Subject to the foregoing, all Pre-2002 Ephedra PI Claims shall be determined and liquidated under applicable non-bankruptcy law in the administrative or judicial tribunal in which they are pending as of the Effective Date, or if no such action is pending on the Effective Date, in any administrative or

judicial tribunal of appropriate jurisdiction.  To effectuate the foregoing, the entry of the Confirmation Order shall, effective as of the Effective Date, constitute a modification of any stay or injunction under the Bankruptcy Code that would otherwise preclude the determination, resolution or adjudication of any Pre-2002 Ephedra PI Claim.  Nothing contained in this Section will constitute or be deemed to constitute a waiver or release of any (i) claim, right or Cause of Action that the Debtors may have against any Entity in connection with or arising out of any Pre-2002 Ephedra PI Claim, including, but not limited to, any rights under section 157(b) of title 28, United States Code, or (ii) defense in any action or proceeding in any administrative or judicial tribunal, including, but not limited to, with respect to the jurisdiction of such administrative or judicial tribunal, except a defense to a Claim that was timely asserted in the Chapter 11 Cases and that constitutes a Pre-2002 Ephedra PI Claim where such defense is based on the discharge of section 1141(d) of the Bankruptcy Code or any release, discharge, or injunction contained in this Plan or the Confirmation Order.  Further, nothing contained in this Section or in the Plan shall affect the rights of any Settling Third Party to coverage under the Debtors' applicable insurance policy or policies with respect to the Pre-2002 Ephedra PI Claims.

(c)     **Impairment and Voting.**  Class 3 is unimpaired by the Plan.  Each holder of a Pre-2002 Ephedra PI Claim in Class 3 is not entitled to vote to accept or reject the Plan and shall be conclusively deemed to have accepted the Plan.

**4.4      Class 4 – 2002-2004 Ephedra PI Claims.**

(a)     **Distributions.**  All 2002-2004 Ephedra PI Claims shall be determined and paid pursuant to the terms, provisions, and procedures of the Ephedra Personal Injury Trust and the Ephedra Personal Injury Trust Agreement.  The Ephedra Personal Injury Trust shall be funded in accordance with the provisions of section 5.3 of the Plan.

All 2002-2004 Ephedra PI Claims are Disputed Claims.  The Ephedra Personal Injury Trust shall assume full responsibility for determining the Allowed amount of all 2002-2004 Ephedra PI Claims pursuant to the Ephedra Personal Injury Trust Agreement (incorporated herein and made a part hereof), and for making payments on account of 2002-2004 Ephedra PI Claims that become Allowed 2002-2004 Ephedra PI Claims under the conditions set forth in the Ephedra Personal Injury Trust Agreement.  Distributions to holders of 2002-2004 Ephedra PI Claims are limited to such payments by the Ephedra Personal Injury Trust.

(b)     **Impairment and Voting.**  Class 4 is impaired by the Plan.  Each holder of a 2002-2004 Ephedra PI Claim is entitled to vote to accept or reject the Plan to the extent and in the manner provided in the Voting Procedures Order or in any other order or orders of the Bankruptcy Court temporarily allowing one or more 2002-2004 Ephedra PI Claims for voting purposes pursuant to Bankruptcy Rule 3018(a).

**4.5      Class 5 – General Unsecured Claims.**

(a)     **Distributions.**  On the Effective Date, or as soon thereafter as is reasonably practicable, each holder of an Allowed General Unsecured Claim shall receive its Pro Rata Share of Available Cash until such Claim has been paid or otherwise satisfied in full.

(b)  **Impairment and Voting**.  Class 5 is impaired by the Plan.  To the extent and in the manner provided in the Voting Procedures Order, each holder of a General Unsecured Claim is entitled to vote to accept or reject the Plan.

4.6      **Class 6 – Punitive Damage Claims**.

(a)  **Distributions**.  Each holder of a Punitive Damage Claim shall (i) be subordinated in full to the Claims in Class 1, Class 2, Class 3, Class 4, and Class 5 and (ii) receive no distribution under the Plan.

(b)  **Impairment and Voting**.  Class 6 is impaired by the Plan.  Holders of Punitive Damage Claims are not entitled to vote on the Plan and shall be conclusively deemed to have rejected the Plan.

4.7      **Class 7 – Equity Interests**.

(a)  **Distributions**.  On the Effective Date, or as soon thereafter as is reasonably practicable, all Equity Interests shall be canceled, at which time one new share of Holdings common stock shall be issued to the Plan Administrator who shall hold such share as custodian for the benefit of holders of Equity Interests consistent with their former economic entitlement.  Such holders' beneficial interests in such share of new common stock shall be noncertified and nontransferable.

(b)  **Impairment and Voting**.  Class 7 is impaired by the Plan.  Holders of Class 7 Equity Interests are not entitled to vote and shall be conclusively deemed to have rejected the Plan.

**SECTION 5**

**THE EPHEDRA PERSONAL INJURY TRUST**

5.1      **Responsibilities of the Ephedra Personal Injury Trust**.  The Ephedra Personal Injury Trust will assume full responsibility for determining the Allowed amount of all 2002-2004 Ephedra PI Claims and Other Participating Ephedra Claims pursuant to the Ephedra Personal Injury Trust Agreement (incorporated herein and made a part hereof), for making payments on account of 2002-2004 Ephedra PI Claims and Other Participating Ephedra Claims that become Allowed Claims under the conditions set forth in the Ephedra Personal Injury Trust Agreement, for fulfilling its other obligations under the Ephedra Personal Injury Trust Agreement, and for paying its own costs and expenses, all as set forth more fully hereon and in the Ephedra Personal Injury Trust Agreement.

5.2      **Resolution of Minors' Claims by the Ephedra Personal Injury Trust**.  In connection with any 2002-2004 Ephedra PI Claim or Other Participating Ephedra Claim in which the plaintiff is a minor, the proposed distribution to the plaintiff shall be submitted to the District Court for approval in accordance with Rule 83.2 of the Local Civil Rules of the Southern and Eastern Districts of New York and Rule 1208 of the CPLR.  The parent, guardian, guardian ad litem, adult spouse, next friend, or other representative of the minor shall move for approval

of the proposed distribution and shall file, with such motion (a) an affidavit of the representative that complies in all respects with the requirements set forth in CPLR 1208(a); (b) an affidavit of the minor's or the representative's attorney, which complies in all respects with the requirements set forth in CPLR 1208(b); and (c) a copy of relevant medical or hospital records, as required by CPLR 1208(c). The District Court shall hold a hearing on the motion, and the movant, the minor plaintiff, and the attorney shall attend such hearing. The District Court shall determine whether the proposed distribution is in the minor plaintiff's best interests and, if the proposed distribution is approved, that determination shall be embodied in an order which shall have the effect of a judgment. Upon approval of the proposed distribution to a minor plaintiff, the District Court shall authorize payment to the minor's counsel of fees and disbursements to be paid from the distribution and further shall order that the remainder of the distribution be distributed in a manner that will best protect the interest of the minor.

**5.3** **Transfer of Property to the Ephedra Personal Injury Trust.** On the Effective Date, or as soon thereafter as is reasonably practicable, the Debtors will, in full satisfaction and discharge of all Claims in Class 4 (i.e. 2002-2004 Ephedra PI Claims), cause the following to occur: (a) the execution and delivery by the Debtors and the Ephedra Personal Injury Trustee of the Ephedra Personal Injury Trust Agreement, thereby establishing the Ephedra Personal Injury Trust; (b) the payment by the Debtors to the Ephedra Personal Injury Trust of the amount of the Class 4 Distribution; (c) the payment by the Settlement Escrow Agent to the Ephedra Personal Injury Trust of the Aggregate Third Party Settlement Amount; and (d) the transfers with respect to any Ephedra Insurance Policies as provided directly below.

On the Effective Date, or as soon thereafter as is reasonably practicable, the Debtors will transfer, assign, and deliver to the Ephedra Personal Injury Trust, for the benefit of the Ephedra Personal Injury Trust as an insured party thereunder, any of the Ephedra Insurance Policies which are assignable without cancellation or reduction of coverage and which the Debtors elect to so transfer, assign, and deliver; and in respect of such Ephedra Insurance Policies which the Debtors do not elect to so transfer, assign, and deliver, the Debtors will take all such actions as are necessary or desirable to enable the Ephedra Personal Injury Trust, at its expense, to obtain and enjoy the benefits of coverage thereunder, including, without limitation, pursuit in the name of the Debtors (subject to control by, and at the expense of, the Ephedra Personal Injury Trust) of all claims under the Ephedra Insurance Policies and assignment by the Debtors to the Ephedra Personal Injury Trust of all recoveries thereunder.

**5.4** **Tax Treatment of Ephedra Personal Injury Trust.** Subject to a determination by the Internal Revenue Service or a court of competent jurisdiction to the contrary, the Ephedra Personal Injury Trust shall be treated as a "qualified settlement fund" within the meaning of Treasury Regulation section 1.468B-1, and all parties (including the Debtors, the Ephedra Personal Injury Trustee and the holders of 2002-2004 Ephedra PI Claims) shall report consistent therewith.

**5.5** **Appointment of Ephedra Personal Injury Trustee.** Prior to the Effective Date, the Ephedra Claimants Committee shall appoint the individual to serve as the Ephedra Personal Injury Trustee for the Ephedra Personal Injury Trust; provided that no individual shall be appointed as the Ephedra Personal Injury Trustee if such individual would be treated as, or

would cause the Ephedra Personal Injury Trust to be treated as, a "related person" (within the meaning of Treasury Regulation section 1.468B-1(d)(2)) to any of the Debtors.

## SECTION 6

## PROVISIONS GOVERNING DISTRIBUTIONS

**6.1** **Distribution Record Date.** Subject to section 6.3 of the Plan, (i) as of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Equity Interests as maintained by the Debtors, or their claims agent, shall be deemed closed, and there shall be no further changes in the record holders of any of the Claims or Equity Interests; (ii) the Debtors and the Ephedra Personal Injury Trustee, as the case may be, shall have no obligation to recognize any transfer of Claims or Equity Interests entered on the docket of the Bankruptcy Court on or after the Distribution Record Date; and (iii) the Debtors and the Ephedra Personal Injury Trustee, as the case may be, shall be entitled to recognize and deal for all purposes hereunder only with those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable. Distributions to holders of General Unsecured Claims under the Indenture will be made pursuant to the surrender of securities as described in section 6.3 of the Plan.

**6.2** **Delivery of Distributions and Undeliverable Distributions.** Subject to Bankruptcy Rule 9010, all distributions to any holder of an Allowed Claim shall be made at the address of such holder as set forth on the Schedules filed with the Bankruptcy Court or on the books and records of the Debtors or their agents or in a letter of transmittal unless the Debtors and/or the Ephedra Personal Injury Trustee, as the case may be, have been notified in writing of a change of address, including, without limitation, by the filing of a proof of claim by such holder that contains an address for such holder different from the address reflected on such Schedules for such holder. Any distribution to be made to a holder of a General Unsecured Claim under the Indenture shall be made to the Indenture Trustee to assert its charging lien against such distributions. Any distribution to the Indenture Trustee shall be deemed a distribution to the respective holder of a General Unsecured Claim under the Indenture. In the event that any distribution to any holder is returned as undeliverable, no further distributions to such holder shall be made unless and until the Debtors or the Ephedra Personal Injury Trustee, as the case may be, are notified of such holder's then-current address, at which time all missed distributions shall be made to such holder, without interest. All demands for undeliverable distributions shall be made on or before ninety (90) days after the date such undeliverable distribution was initially made. Thereafter, in accordance with section 347(b) of the Bankruptcy Code, the amount represented by such undeliverable distribution shall irrevocably revert to the Debtors or the Ephedra Personal Injury Trust, as the case may be, and any Claim in respect of such undeliverable distribution shall be discharged and forever barred from assertion against the Ephedra Personal Injury Trust, the Debtors, and their property.

**6.3** **Surrender of Instruments.** As a condition to receiving any distribution under the Plan, each holder of a note under the Indenture must surrender such note held by it to the Indenture Trustee or its designee. Any holder of such note that fails to (i) surrender such note, or (ii) execute and deliver an affidavit of loss and/or indemnity reasonably satisfactory to

the Indenture Trustee and furnish a bond in form, substance, and amount reasonably satisfactory to the Indenture Trustee before the first anniversary of the Effective Date shall be deemed to have forfeited all rights and Claims and may not participate in any distribution under the Plan. Any distribution so forfeited shall become property of the Debtors.

6.4     **Setoffs**.  The Debtors may, but shall not be required to, set off against any Claim (for purposes of determining the Allowed amount of such Claim on which distribution shall be made), any claims of any nature whatsoever that the Debtors may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any such claim the Debtors may have against the holder of such Claim.

6.5     **Transactions on Business Days**.  If the Effective Date or any other date on which a transaction may occur under the Plan shall occur on a day that is not a Business Day, the transactions contemplated by the Plan to occur on such day shall instead occur on the next succeeding Business Day but shall be deemed to have been completed as of the required date.

6.6     **Allocation of Plan Distribution Between Principal and Interest**.  All distributions in respect of any Allowed Claim shall be allocated first to the principal amount of such Allowed Claim, as determined for federal income tax purposes, and thereafter, to the remaining portion of such Claim comprising interest, if any (but solely to the extent that interest is an allowable portion of such Allowed Claim).

6.7     **Withholding and Reporting Requirements**.  The Plan Administrator shall comply with all applicable withholding and reporting requirements imposed by any federal, state, local, or foreign tax authority, and all distributions under the Plan shall be subject to any such withholding and reporting requirements.  Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such distribution.

## SECTION 7

## MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN

7.1     **Deemed Consolidation of Debtors for Plan Purposes Only**.  On the Effective Date, the Debtors shall be deemed consolidated for voting and distribution purposes under the Plan.  Accordingly, for such purposes: (i) all guaranties of any Debtor of the payment, performance, or collection of obligations of another Debtor shall be eliminated and canceled, (ii) any obligation of any Debtor and all guaranties thereof executed by one or more of the other Debtors shall be treated as a single obligation, and such guaranties shall be deemed a single Claim against the deemed consolidated Debtors, (iii) all joint obligations of two or more Debtors and all multiple Claims against such entities on account of such joint obligations shall be treated and allowed only as a single Claim against the deemed consolidated Debtors, (iv) all Claims between or among the Debtors shall be canceled, and (v) each Claim filed in the Chapter 11 Case of any Debtor shall be deemed filed against the deemed consolidated Debtors and a single

obligation of the deemed consolidated Debtors on and after the Effective Date. Such deemed consolidation, however, shall not affect the legal and organizational structure of the Debtors and each of TL Administration Inc. and TL Administration (UK) ltd. shall be governed by their respective certificate of incorporation and by-laws.

### 7.2 The Plan Administrator.

       (a)      The Confirmation Order shall name the Plan Administrator to implement, or cause to be implemented, the terms of the Plan with respect to the consolidated Debtors.

       (b)      The Plan Administrator shall be designated by the Debtors in consultation with the Creditors Committee.

       (c)      The salient terms of the Plan Administrator's employment, including the Plan Administrator's duties and compensation (which compensation shall be negotiated by the Plan Administrator, the Debtors, and the Creditors Committee), to the extent not set forth in the Plan, shall be set forth in the Confirmation Order. The Plan Administrator shall be entitled to reasonable compensation in an amount consistent with that of similar functionaries in similar types of bankruptcy proceedings.

       (d)      The Plan Administrator shall have no liability to the Debtors, their creditors, or their equity holders. The Debtors shall indemnify and hold harmless the Plan Administrator for any losses incurred in its capacity as such, except to the extent such losses were the result of such person's gross negligence or willful misconduct.

       (e)      In the event the Plan Administrator dies, is terminated, or resigns for any reason, the U.S. Trustee shall designate a successor. The Plan Administrator shall be required to disclose its connections, if any, with the Debtors, their creditors, any other party in interest, and the U.S. Trustee.

### 7.3 Directors/Officers/Assets of the Debtors on the Effective Date.

       (a)      On the Effective Date, the authority, power and incumbency of the persons then acting as directors and officers of the Debtors shall be terminated and such directors and officers shall be deemed to have resigned or to have been removed without cause.

       (b)      On the Effective Date, the Plan Administrator shall be appointed as and become, and shall succeed to such powers as would have been applicable to Holding's officers and directors. In addition, the Plan Administrator shall be appointed as the initial director and officer of TL Administration Inc. and TL Administration (UK) Ltd., to serve in accordance with the respective certificates of incorporation and by-laws of such companies.

       (c)      Notwithstanding anything to the contrary herein, all assets of the Debtors shall remain assets of the respective Debtor until they are transferred or distributed, or caused to be transferred or distributed, by the Plan Administrator pursuant to the terms of this Plan.

(d)     After the Effective Date, the Plan Administrator may decide, in its sole discretion, to maintain, or cause to be maintained, any or all of the Debtors as corporations in good standing until such time as all aspects of the Plan (other than those aspects that are the responsibility of the Ephedra Personal Injury Trust) have been completed (provided, however, that the Debtors shall conduct no business except as necessary or appropriate to implement the Plan) or, at such time as the Plan Administrator considers appropriate and consistent with the implementation of the Plan, may dissolve, or cause to be dissolved, the Debtors and complete the winding up of the Debtors in accordance with applicable law.  In connection with the liquidation of the Debtors, the Plan Administrator may transfer, or caused to be transferred, all assets of the Debtors to a trust or other entity created to make distributions in accordance with the Plan to holders of Allowed Claims and the Ephedra Personal Injury Trust.  The Plan Administrator may act as trustee of such a trust if and as permitted by law or in the capacity of management of any other entity created to make such distributions.  As soon as practicable after all aspects of the Plan (other than those aspects that are the responsibility of the Ephedra Personal Injury Trust) have been completed, the Debtors shall be dissolved and wound up in accordance with applicable law.

(e)     As of the Effective Date, the certificate of incorporation and by-laws of each of the Debtors shall be amended to the extent necessary to carry out the provisions of the Plan.  The amended certificates and by-laws, if any, of each of the Debtors shall be included in the Plan Supplement.

**7.4     Duties and Powers of the Plan Administrator.**  The Plan Administrator, together with its representatives and professionals, shall administer, or cause to be administered, the Plan.  The duties and powers of the Plan Administrator shall include all powers necessary to implement the Plan and administrate and liquidate, or cause to be administered and liquidated, the assets of the Debtors, including, without limitation, the duties and powers listed herein.

(a)     **Authority.**  The Plan Administrator may exercise all power and authority that may be or could have been exercised, commence all proceedings that may be or could have been commenced and take all actions that may be or could have been taken by an officer, director, or shareholder of Holdings with like effect as if authorized, exercised, and taken by unanimous action of such officers and directors, without shareholder approval, including, without limitation, amendment of the certificate of incorporation and by-laws of Holdings and the dissolution of Holdings.

(b)     **Claims.**  The Plan Administrator may object to, seek to subordinate, compromise, or settle any or all Claims against the Debtors except such Claims that are the responsibility of the Ephedra Personal Injury Trust; provided, however, that the Creditors Committee shall have the exclusive right to continue to litigate, compromise, or settle any litigation commenced by the Creditors Committee on behalf of the Debtors prior to the Effective Date.

(c)     **Liquidation of Assets.**  The Plan Administrator shall, or shall cause the appropriate Debtor to, in an expeditious but orderly manner, liquidate and convert to cash the assets of the consolidated Debtors, make timely distributions, and not unduly prolong the

duration of the Debtors. In so doing, the Plan Administrator shall exercise its reasonable business judgment in liquidating the assets of the consolidated Debtors to maximize recoveries. The liquidation of such assets may be accomplished through the sale of the assets (in whole or in combination, and including the sale of any Causes of Action, other than Causes of Action released under the Plan), through the prosecution, compromise and settlement, abandonment, or dismissal of any or all claims or Causes of Action (other than Causes of Action released under the Plan), or otherwise.

(d) **Abandoning Assets.** The Plan Administrator may, or may cause the appropriate Debtor to, abandon in any commercially reasonably manner, including abandonment or donation to a charitable organization of its choice, any assets, if it concludes that they are of no benefit to the Estates.

(e) **Causes of Action.** The Plan Administrator may pursue, or cause to be pursued, Causes of Action (other than Causes of Action released under the Plan) of the consolidated Debtors. The Plan Administrator shall have discretion to elect whether or not to pursue any and all such Causes of Action and whether and when to compromise, settle, abandon, dismiss, or otherwise dispose of any such Causes of Action, as the Plan Administrator may determine is in the best interests of the holders of Claims against the Debtors, and the Plan Administrator shall have no liability to any of the Debtors, their Estates, their creditors, the Creditors Committee or its members, the Ephedra Claimants Committee or its members, or any other party for the outcome of its decisions in this regard.

(f) **Retention of Professionals.** The Plan Administrator may retain professionals to assist it in performing its duties hereunder.

(g) **Books and Records.** The Plan Administrator shall maintain the Debtors' books and records, maintain accounts, make distributions, and take other actions consistent with the Plan and the implementation hereof.

(h) **Agreements.** The Plan Administrator may, or may cause the appropriate Debtor to, enter into any agreement or execute any document required by or consistent with the Plan and perform all of obligations of the respective Debtors thereunder.

(i) **Investment Power.** The right and power of the Plan Administrator to invest, or cause to be invested, any of the Debtors' Cash, including cash proceeds from the liquidation of any assets and the realization or disposition of any Causes of Action, and any income earned by the Debtors shall be limited to the right and power to invest such Cash in United States Treasury Bills, interest-bearing certificates of deposit, tax exempt securities having at the time of acquisition an investment grade credit rating as assigned by a nationally recognized credit rating service or investments permitted by section 345 of the Bankruptcy Code or otherwise authorized by the Bankruptcy Court, using prudent efforts to enhance the rates of interest earned on such Cash without inordinate credit risk or interest rate risk; provided, however, that the Plan Administrator may expend the Cash of the consolidated Debtors to effectuate the provisions of the Plan.

(j)      **Tax Obligations.**  The Plan Administrator shall have the powers of administration regarding all of the tax obligations of the Debtors, including filing of returns.  The Plan Administrator shall (i) endeavor to complete and file, within ninety (90) days after the dissolution of the Debtors, the Debtors final federal, state and local tax returns, (ii) request, if necessary, an expedited determination of any unpaid tax liability of the Debtors or their Estates under Bankruptcy Code section 505(b) for all taxable periods of the consolidated Debtors ending after the Commencement Date through the dissolution of the Debtors as determined under applicable tax laws and (iii) represent the interest and account of the Debtors or their Estates before any taxing authority in all matters including, without limitation, any action, suit, proceeding or audit.

(k)      **Reporting Duties.**  The Plan Administrator shall be responsible for filing informational returns on behalf of the Debtors and paying any tax liability of the Debtors.  The Plan Administrator shall file (or cause to be filed) any other statements, returns or disclosures relating to the Debtors that are required by any governmental unit or applicable law.

(l)      **Reasonable Fees and Expenses.**  The Plan Administrator may incur any reasonable and necessary expenses in connection with the performance of its duties under the Plan.

(m)      **Other Actions.**  The Plan Administrator may take all other actions not inconsistent with the provisions of the Plan which the Plan Administrator deems reasonably necessary or desirable with respect to administering the Plan.

**7.5      Method of Distributions Under the Plan.**

(a)      **Disbursing Agent.**  All distributions under the Plan to the Ephedra Personal Injury Trust and holders of Allowed Non-Ephedra Claims against the Debtors shall be made in accordance with the terms of the Plan and to the extent provided by the Plan by the Plan Administrator as Disbursing Agent or such other Entity designated by the Plan Administrator as Disbursing Agent.  A Disbursing Agent shall not be required to provide any bond, surety, or other security for the performance of its duties, unless otherwise ordered by the Bankruptcy Court; and, in the event that a Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond, surety, or other security shall be borne by the Debtors.

(b)      **Effective Date Payments and Transfers.**  On the Effective Date, or, as soon thereafter as reasonably practicable, the Plan Administrator shall (i) remit, to each holder of an Allowed Non-Ephedra Claim (as of the Distribution Record Date) against the Debtors, the distribution provided for such Claim under the Plan and (ii) pay and transfer to the Ephedra Personal Injury Trust (or cause the Settlement Escrow Agent to pay and transfer to the Ephedra Personal Injury Trust) the Cash and assets to be paid and transferred to the Ephedra Personal Injury Trust pursuant to section 5.3 of the Plan.

(c)      **Distribution of Cash.**  At the option of the Plan Administrator or the Ephedra Personal Injury Trustee, as the case may be, any Cash payment to be made hereunder may be by check or wire transfer or as otherwise required or provided in applicable agreements.

(d) **Retention of Cash.** In making the distributions under the Plan, the Debtors shall, at all times, retain sufficient Cash and/or beneficial assets as reasonably necessary to (i) satisfy Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, and, if applicable, Secured Claims, to the extent such claims are not paid on or prior to the Effective Date, (ii) meet the reasonably necessary administrative expenses of the Debtors after the Effective Date, including contingent liabilities and the cost of continuation of litigation commenced by the Creditors Committee on behalf of the Debtors prior to the Effective Date, (iii) pay reasonable administrative expenses of the Estate that have not been paid (including the Debtors' professional fees and expenses and the fees of the U.S. Trustee) or have not been Allowed as of the Effective Date but which are subsequently Allowed, (iv) satisfy all Disputed Claims (including, without limitation and as applicable, Consumer Class Action Claims, but not including Disputed Ephedra Personal Injury Claims) estimated by the Bankruptcy Court pursuant to section 502(c) of the Bankruptcy Code in the amount so estimated, (v) satisfy all Disputed Claims (but not including Disputed Ephedra Personal Injury Claims or Disputed Claims estimated by the Bankruptcy Court pursuant to section 502(c) of the Bankruptcy Code) in the event that all such Claims were to become Allowed Claims, (vi) satisfy other liabilities incurred by the Debtors in accordance with the Plan, and (vii) otherwise perform the functions and take the actions provided for or permitted herein or in any other agreement executed by the Plan Administrator pursuant to the Plan. The amounts retained pursuant to this paragraph shall not be segregated from the other assets of the Debtors.

(e) **Final Distributions and Transfers.** As soon as reasonably practicable after the resolution of all Disputed Non-Ephedra Claims and after all assets of the consolidated Debtors have been liquidated and the resolution of all Causes of Action, the Plan Administrator shall (x) to the extent not paid, pay all Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, and wind down costs and expenses including the fees of the U.S. Trustee; (y) to the extent the Debtors have remaining Cash after the payments made in accordance with (x) above, distribute to each holder of an Allowed General Unsecured Claim its Pro Rata share of such remaining Cash; but in no event shall the amount of such distribution, when added to the amount of prior distributions received by such holder, exceed the amount of such Allowed Claim; and (z) complete the wind up of the affairs of the Debtors (or the successor to the Debtors).

**7.6** **Procedures for Treating Disputed Claims.**

(a) **Objections.** Any objections to Non-Ephedra Claims shall be served and filed on or before the later of (a) 120 days after the Effective Date and (b) such later date as may be fixed by the Bankruptcy Court.

(b) **No Distributions Pending Allowance.** Notwithstanding any other provision hereof, if any portion of a Non-Ephedra Claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

(c) **Estimation of Claims.** The Plan Administrator may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Non-Ephedra

Claim including, without limitation, any Consumer Class Action Claim, pursuant to section 502(c) of the Bankruptcy Code or otherwise regardless of whether the Debtors previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain exclusive jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Non-Ephedra Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Plan Administrator may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another. Non-Ephedra Claims may be estimated and subsequently disallowed, reduced, compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

(d) **Resolution of Disputed Claims.**

(i) Within sixty (60) days of a Disputed Non-Ephedra Claim becoming an Allowed Claim, the Plan Administrator shall remit to the holder of such Allowed Claim Cash equal to the amount such holder would have received as of that date under the Plan if the Allowed portion of the Disputed Claim had been an Allowed Claim as of the Effective Date.

(ii) To the extent that a Disputed Non-Ephedra Claim is not Allowed or becomes an Allowed Claim in an amount less than the amount of the Disputed Claim set forth in the proof of claim, or as previously estimated by the Bankruptcy Court, the excess of the amount of Cash that would have been distributed to the holder of the Disputed Claim if the Claim had been Allowed in full over the amount of Cash actually distributed on account of such Disputed Claim shall be Available Cash.

(iii) Holders of Disputed Non-Ephedra Claims shall not be entitled to interest if such Disputed Claim becomes an Allowed Claim except to the extent such holder is entitled to interest under the Plan as a holder of an Allowed Claim.

7.7 **Closing of the Chapter 11 Cases.** When all Disputed Non-Ephedra Claims filed against the Debtors have become Allowed Claims or have been disallowed by Final Order and all remaining assets of the consolidated Debtors have been liquidated and converted into Cash or abandoned and such Cash has been distributed in accordance with the Plan, the Plan Administrator shall seek authority from the Bankruptcy Court to close the Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules.

7.8 **Cancellation of Existing Securities and Agreements.** Except for purposes of evidencing a right to distributions under the Plan or otherwise provided hereunder, on the Effective Date all the agreements and other documents evidencing the Claims or rights of any holder of a Claim against the Debtors, including the Indenture and any notes evidencing such

Claims shall be canceled; provided, however, that the Indenture shall continue in effect solely for the purposes of (i) allowing the Indenture Trustee to make any distributions on account of Allowed General Unsecured Claims of noteholders under the Indenture pursuant to the Plan and to perform such other necessary administrative functions with respect thereto, and (ii) permitting the Indenture Trustee to maintain any rights or liens they may have for fees, costs, and expenses under the Indenture.

**7.9** **Dissolution.** Within thirty (30) days after completion of the acts required by the Plan, or as soon thereafter as is practicable, each Debtor shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of each Debtor; provided, however, that each Debtor shall file with the office of the Secretary of State or other appropriate office for the state of its organization a certificate of cancellation or dissolution.

**7.10** **Books and Records.** The Plan Administrator shall have the responsibility of storing and maintaining the Debtors' books and records until one year after the date the Debtors are dissolved in accordance with Section 7.9 hereof, after which time such books and records may be abandoned or destroyed without further Bankruptcy Court order. For purposes of this Section, books and records include computer generated or computer maintained books and records and computer data, as well as electronically generated or maintained books and records or data, along with books and records of the Debtors maintained by or in possession of third parties and all of the claims and rights of the Debtors in and to their books and records, wherever located.

**7.11** **Corporate Action.** Upon the Effective Date, the Debtors shall perform each of the actions and effect each of the transfers required by the terms of the Plan, in the time period allocated therefor, and all matters provided for under the Plan that would otherwise require approval of the stockholders, partners, members, directors, or comparable governing bodies of the Debtors shall be deemed to have occurred and shall be in effect from and after the Effective Date pursuant to the applicable general corporation law (or other applicable governing law) of the states in which the Debtors are incorporated or organized, without any requirement of further action by the stockholders, members, or directors (or other governing body) of the Debtors. Each of the Debtors shall be authorized and directed, following the completion of all disbursements, other transfers, and other actions required of the Debtors by the Plan, to file its certificate of cancellation or dissolution as contemplated by Section 7.9 hereof. The filing of such certificates of cancellation, dissolution, or merger shall be authorized and approved in all respects without further action under applicable law, regulation, order, or rule, including, without express or implied limitation, any action by the stockholders, members, or directors (or other governing body) of the Debtors.

**7.12** **Effectuating Documents and Further Transactions.** Each of the officers of each of the Debtors is authorized and directed to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

## SECTION 8

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**8.1      Executory Contracts and Unexpired Leases**.  On the Effective Date, all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed rejected as of the Effective Date, except for an executory contract or unexpired lease that (i) has been assumed or rejected pursuant to Final Order of the Bankruptcy Court entered prior to the Effective Date or (ii) is the subject of a separate motion to assume or reject filed under section 365 of the Bankruptcy Code by the Debtors prior to the Effective Date.

**8.2      Approval of Rejection of Executory Contracts and Unexpired Leases**. Entry of the Confirmation Order shall constitute the approval, pursuant to section 365(a) of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases rejected as of the Effective Date pursuant to the Plan.

**8.3      Rejection Claims**.  In the event that the rejection of an executory contract or unexpired lease by any of the Debtors pursuant to the Plan results in damages to the other party or parties to such contract or lease, a Claim for such damages, if not heretofore evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Debtors, or any property to be distributed under the Plan unless a proof of claim is filed with the Bankruptcy Court and served upon the Plan Administrator on or before the date that is thirty (30) days after the Confirmation Date.

## SECTION 9

## EFFECTIVENESS OF THE PLAN

**9.1      Condition Precedent to Confirmation of Plan**.  The following is a condition precedent to the confirmation of the Plan:

(a)      The Bankruptcy Court shall have entered a Confirmation Order in form and substance satisfactory to the Debtors.

(b)      (i) The Aggregate Allowed Consumer Class Action Claims shall be no greater than such amount that will yield an aggregate distribution to all such class claimants of $350,000 including attorney fees or (ii) the aggregate Allowed amount of Class 5 Claims (General Unsecured Claims) shall be no greater than $68,300,000.

(c)      The Bankruptcy Court shall have entered a Confirmation Order confirming the Plan which includes the Plan Release and Injunction in Favor of Settling Third Parties as provided in paragraph 4 of the 2002-2004 Ephedra PI Settlement Agreement.

**9.2      Conditions Precedent to Effective Date**.  The following are conditions precedent to the Effective Date of the Plan:

(a)      No stay of the Confirmation Order shall then be in effect;

(b)     The Ephedra Personal Injury Trust Agreement shall have been executed and made effective;

(c)     The Settlement Escrow Agent shall have paid to the Ephedra Personal Injury Trust the Third Party Settlement Amounts aggregating the Aggregate Third Party Settlement Amount;

(d)     The Debtors shall have paid to the Ephedra Personal Injury Trust the amount of the Class 4 Distribution; and

(e)     The Debtors shall have sufficient available Cash and/or beneficial assets to pay the sum of (i) satisfying Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, and Secured Claims, if applicable and to the extent such claims have not been paid, (ii) the reasonably necessary administrative expenses of the Debtors after the Effective Date, including contingent liabilities and the cost of continuation of litigation commenced by the Creditors Committee on behalf of the Debtors prior to the Effective Date, (iii) the reasonable administrative expenses of the Estate that have not been paid (including the Debtors' professional fees and expenses and the fees of the U.S. Trustee), (iv) satisfying all Disputed Claims (including, without limitation and as applicable, Consumer Class Action Claims, but not including Disputed Ephedra Personal Injury Claims) estimated by the Bankruptcy Court pursuant to section 502(c) of the Bankruptcy Code in the amount so estimated, (v) satisfying all Disputed Claims (but not including Disputed Ephedra Personal Injury Claims or Disputed Claims estimated by the Bankruptcy Court pursuant to section 502(c) of the Bankruptcy Code) in the event that all such Claims were to become Allowed Claims, (vi) other liabilities incurred by the Debtors in accordance with the Plan, and (vii) the amount required to otherwise perform the functions and take the actions provided for or permitted herein or in any other agreement executed by the Plan Administrator pursuant to the Plan.

**9.3     Satisfaction of Conditions.**  Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.  If the Debtors decide, after consultation with the Creditors Committee and the Ephedra Claimants Committee, that one of the conditions precedent set forth in Section 9.2 hereof cannot be satisfied and the occurrence of such condition is not waived or cannot be waived, then the Debtors shall file a notice of the failure of the Effective Date with the Bankruptcy Court.

**9.4     Effect of Nonoccurrence of Conditions to Consummation.**  If each of the conditions to consummation and the occurrence of the Effective Date has not been satisfied or duly waived on or before the first Business Day that is one hundred twenty (120) days after the Confirmation Date, or such later date as shall be agreed by the Debtors and the Ephedra Claimants Committee, or by order of the Bankruptcy Court, the Confirmation Order may be vacated by the Bankruptcy Court.  If the Confirmation Order is vacated pursuant to this Section, the Plan shall be null and void in all respects, and nothing contained in the Plan shall constitute a waiver or release of any Claims against any of the Debtors.

**9.5**     **Waiver of Conditions.**  The Debtors and the Ephedra Claimants Committee may together (but not individually) waive by a writing signed by an authorized representative of the respective party and subsequently filed with the Bankruptcy Court, one or more of the conditions precedent set forth in Section 9.1 and Section 9.2 hereof, other than the conditions set forth in Sections 9.1(a), 9.1(c), 9.2(a), 9.2(b), and 9.2(e) hereof.  The Debtors and the Settling Third Parties may together (but not individually) waive by writing signed by an authorized representative of the respective party and subsequently filed with the Bankruptcy Court the condition set forth in Section 9.1(c) hereto.

**SECTION 10**

**EFFECT OF CONFIRMATION**

**10.1**     **Vesting of Assets.**

(a)     As of the Effective Date, the property of the Estates shall vest in the Debtors or such other entity as provided in the Plan.

(b)     From and after the Effective Date, the Plan Administrator and the Ephedra Personal Injury Trustee may dispose of, or cause to be disposed of, the assets of the Debtors and the Ephedra Personal Injury Trust respectively, free of any restrictions of the Bankruptcy Code, but in accordance with the provisions of the Plan and the Ephedra Personal Injury Trust Agreement.

(c)     As of the Effective Date, all assets of the Debtors and the Ephedra Personal Injury Trust shall be free and clear of all Claims, except as provided in the Plan or the Confirmation Order.

**10.2**     **Binding Effect.**  Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against, or Equity Interest in, the Debtors and their respective successors and assigns, whether or not the Claim or Equity Interest of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

**10.3**     **Retention of Causes of Action.**  Except as otherwise provided in the Plan, on and after the Effective Date, the Debtors will have the exclusive right to enforce any and all Causes of Action against any person.  The Debtors may pursue, abandon, settle, or release any or all Causes of Action (other than Causes of Action released under the Plan), as it deems appropriate, without the need to obtain approval or any other or further relief from the Bankruptcy Court.  The Plan Administrator may pursue, abandon, settle, or release any or all such Causes of Action as it deems appropriate, without the need to obtain approval or any other or further relief from the Bankruptcy Court.  The Debtors may, in their sole discretion, offset any such claim held against a person against any payment due such person under the Plan; provided, however, that any claims of the Debtors arising before the Commencement Date shall first be offset against Claims against the Debtors arising before the Commencement Date.

**10.4**     **Exculpations and Limitation of Liability.**  Notwithstanding anything to the contrary contained herein, as of the Effective Date, none of (i) the Debtors and the Debtors' officers, directors, and employees, (ii) the Creditors Committee, (iii) the Ephedra Claimants Committee, and (iv) the members, representatives, accountants, financial advisors, investment bankers, consultants, and attorneys of the Entities described in (i) through (iii) of this paragraph shall have or incur any  liability to any person for any act taken or omission, after the Commencement Date, in connection with or related to the Chapter 11 Cases or the operations of the Debtors' businesses during the Chapter 11 Cases, including but not limited to (i) formulating, preparing, disseminating, implementing, confirming, consummating or administering the Plan (including soliciting acceptances or rejections thereof); (ii) the Disclosure Statement or any contract, instrument, release or other agreement or document entered into or any action taken or omitted to be taken in connection with the Plan or the Disclosure Statement; or (iii) any distributions made pursuant to the Plan, except for acts constituting willful misconduct or gross negligence.

**10.5**     **Releases.**

     (a)     ***Releases of the Settling Third Parties.***  **In consideration of the 2002-2004 Ephedra PI Settlement Agreement and the Third Party Settlement Amounts, on the Effective Date, and except for the obligations arising under or in connection with this Plan, the Debtors, the Creditors Committee, the Ephedra Claimants Committee, and all Creditors, for themselves, their successors and assigns, and the Estates, shall fully, finally, and irrevocably release and forever discharge the Released Parties of and from any and all past, present, and future claims, rights, actions, demands, injuries, damages, compensation, or Causes of Action of whatsoever kind or nature, arising out of or otherwise relating to the manufacture, marketing, sale, distribution, fabrication, advertising, supply, production, use, or ingestion of ephedra or ephedra-containing products designed, manufactured, fabricated, sold, supplied, produced, or distributed by one or more of the Debtors, whether foreseen or unforeseen, known or unknown, contingent or actual, liquidated or unliquidated, whether in tort or contract, whether statutory or at common law (including, without limitation, claims under section 506(c) of the Bankruptcy Code) which they have or may have as of the Confirmation Date, arising from the beginning of the world up to the Confirmation Date, provided, however, that such release does not include claims against the Settling Third Parties in connection with the Pre-2002 Ephedra PI Claims; provided, further, that such release does limit the liability of GNC in each of the Pre-2002 Ephedra PI Claims to the proceeds of the Debtors' applicable insurance policy or policies and further limits the recovery of any holder of a Pre-2002 Ephedra PI Claim solely to such insurance proceeds in connection with any claim against GNC.**

     (b)     ***Releases of the Blechmans.***  **In consideration of the Blechman Agreement, on the Effective Date, and except for the obligations arising under or in connection with this Plan, the Debtors, the Creditors Committee, the Ephedra Claimants Committee, and all Creditors, for themselves, their successors and assigns, the Estates, and any person claiming by, through, or under any of the foregoing shall fully, finally, and irrevocably release and forever discharge the Blechmans of and from any and all claims, rights, actions, demands, injuries, damages, compensation, or Causes of Action of every**

kind and nature, whether foreseen or unforeseen, known or unknown, contingent or actual, liquidated or unliquidated, whether in tort or contract, whether statutory or at common law (including, without limitation, claims under section 506(c) of the Bankruptcy Code and any and all claims of creditors or shareholders of the Debtors) (i) asserted or that might have been asserted in the Amended Complaint or the Declaratory Judgment Complaint, (ii) arising out of or related to the facts and circumstances alleged in the Amended Complaint or Declaratory Judgment Complaint, (iii) arising from all alleged acts or omissions of every kind, nature, and description by any of the Blechmans arising out of their management of the Debtors or related to any of the Debtors, and (iv) based on allegations of product liability, personal injury (whether physical, emotional, or otherwise), wrongful death, or other statutory claims relating to products manufactured, fabricated, supplied, advertised, marketed, distributed, and/or sold by the Debtors) which they have or may have as of the Confirmation Date relating to the Debtors, arising from the beginning of the world up to the Confirmation Date.

        (c)    *Releases by the Settling Third Parties and the Blechmans*.  For good and valuable consideration, on the Effective Date, and except for the obligations arising under or in connection with this Plan, the Blechmans and the Released Parties, for themselves, their successors and assigns, and any person claiming by, through, or under any of the foregoing shall fully, finally, and irrevocably release and forever discharge the Debtors and the Estates of and from any and all claims, rights, actions, demands, injuries, damages, compensation, or Causes of Action which they have or may have as of the Confirmation Date relating to the Debtors, arising from the beginning of the world up to the Confirmation Date; provided, however, that such release does not include release of Ephedra Indemnification Claims in connection with Pre-2002 Ephedra PI Claims, which claims will be treated in accordance with section 4.3 of the Plan.

### 10.6    Injunction.

        (a)    **All Entities who have held, hold, or may hold Claims against or Equity Interests in any or all of the Debtors and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, are permanently enjoined, on and after the Effective Date, with respect to all Claims against, and Equity Interests in, any of the Debtors from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any Cause of Action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtors, the Estates, the Plan Administrator, Ephedra Personal Injury Trust, the Ephedra Personal Injury Trustee, Ideasphere, the Released Parties, the Blechmans, or the property of any of the foregoing, (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtors, the Estates, the Plan Administrator, the Ephedra Personal Injury Trust, the Ephedra Personal Injury Trustee, Ideasphere, the Released Parties, the Blechmans, or the property of any of the foregoing, (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors, the Estates, the Plan Administrator, the Ephedra Personal Injury Trust, the Ephedra Personal Injury Trustee, Ideasphere, the**

Released Parties, the Blechmans, or against the property or interests in property of the Debtors, (iv) asserting any right of setoff, directly or indirectly, against any obligation due the Debtors, the Estates, the Plan Administrator, the Ephedra Personal Injury Trust, the Ephedra Personal Injury Trustee, Ideasphere, the Released Parties, the Blechmans, or any of the property of the foregoing, except as contemplated or allowed by the Plan; (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; (vi) commencing, continuing or asserting in any manner any Cause of Action or other proceeding of any kind with respect to any Claims and Causes of Action which are extinguished or released pursuant to the Plan, and (vii) taking any actions to interfere with the implementation or consummation of the Plan. Notwithstanding the foregoing, nothing contained in this paragraph shall prohibit holders of Pre-2002 Ephedra PI Claims from prosecuting such claims in accordance with section 4.3 of the Plan.

(b)     All persons are permanently enjoined, on and after the Effective Date, from asserting any Claim (x) which is released by such person under the Plan or (y) for which the party against whom such Claim is being asserted has received exculpation under the Plan, including:  (i) commencing, conducting, or continuing in any manner, directly or indirectly, any Cause of Action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) on account of such Claim, (ii) enforcing, levying attaching (including, without limitation, any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order on account of such Claim, (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind on account of such Claim (iv) asserting any right of setoff, directly or indirectly, against any obligation on account of such claim (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; (vi) commencing, continuing or asserting in any manner any Cause of Action or other proceeding of any kind with respect to any such Claim, and (vii) taking any actions to interfere with the implementation or consummation of the Plan.

10.7     <u>United States Exception</u>.  Notwithstanding any provision of the Plan or any document or order associated therewith, nothing shall be deemed to waive, release, discharge, affect, or terminate any liability of, debt of, or Claim against the Debtors or any non-Debtor in connection with any criminal action or proceeding or civil forfeiture action or proceeding , or any action pursuant to the United States' police and regulatory power concerning conduct at any time by the Debtors (or its agents or former employees) and nothing herein shall release the Debtors or any non-Debtor from the criminal laws or civil forfeiture laws of the United States; <u>provided</u> <u>that</u>, except in connection with a properly filed proof of claim and to the extent that the Claim evidenced thereby is treated in accordance with the Plan, the foregoing provision does not permit the United States, any state of the United States, or any of their respective police or regulatory agencies to obtain any monetary recovery from or forfeit any assets of the Debtors or their property or interest in property with respect to any such Claim or other debt or liability that is discharged or any Equity Interest or other right of equity interest that is terminated or cancelled pursuant to the Plan, including, without limitation, any monetary claim, forfeiture, or penalty in furtherance of a police or regulatory power.

**10.8** **Terms of Pre-Plan Injunction and Stays.**

(a)     Unless otherwise provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in such applicable order.

(b)     Unless otherwise ordered by the Bankruptcy Court, on and after the Confirmation Date, any "fifty percent shareholder" within the meaning of section 382(g)(4)(D) of the Tax Code shall be enjoined from claiming a worthless stock deduction with respect to any Equity Interest held by such shareholder for any taxable year of such shareholder ending prior to the Effective Date.

## SECTION 11

## RETENTION OF JURISDICTION

**11.1** **Jurisdiction of Bankruptcy Court.**  The Bankruptcy Court shall retain jurisdiction of all matters arising under, arising out of, or related to the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a)     To hear and determine motions for the assumption, assumption and assignment, or rejection of executory contracts or unexpired leases and the allowance of Claims resulting therefrom;

(b)     To determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date, including, without limitation, any proceeding to recover a Cause of Action or Avoidance Action;

(c)     To ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

(d)     Except as to the 2002-2004 Ephedra PI Claims but subject to sections 5.3 or 11.1(i) herein, to consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim;

(e)     To enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(f)     To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any person with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(g)     To hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, the Disclosure Statement, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(h)     To hear and determine all applications under sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Confirmation Date;

(i)     To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Ephedra Personal Injury Trust, the Ephedra Personal Injury Trust Agreement, the Confirmation Order, any transactions or payments contemplated by any of the foregoing, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(j)     To take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following consummation;

(k)     To recover all assets of the Debtors and property of the Estates, wherever located;

(l)     To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(m)     To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including, without limitation, matters with respect to any taxes payable by a trust established in furtherance of the Plan);

(n)     To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code; and

(o)     To enter a final decree closing the Chapter 11 Cases.

## SECTION 12

## MISCELLANEOUS PROVISIONS

**12.1     Dissolution of Creditors Committee and Ephedra Claimants Committee.** The Creditors Committee and the Ephedra Claimants Committee shall dissolve on the Effective Date, or as soon thereafter as is reasonably practicable to permit the (i) Creditors Committee and the Ephedra Claimants Committee and their respective professionals the right to pursue, review, and object to any applications for compensation and reimbursement of expenses filed in accordance with Section 11.1(h) hereof and (ii) Creditors Committee the right to continue to

pursue, or compromise and settle, any litigation commenced by the Creditors Committee on behalf of the Debtors prior to the Effective Date.

**12.2     Substantial Consummation.**  On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

**12.3     Payment of Statutory Fees.**  On the Effective Date, and thereafter as may be required, the Debtors shall pay all fees payable pursuant to section 1930 of chapter 123 of title 28 of the United States Code.  Notwithstanding the deemed substantive consolidation of the Debtors for purposes of the Plan, each Debtor's calculation of and liability for quarterly fees shall remain unaffected, and each Debtor shall continue to pay all quarterly fees pursuant to section 1930 of chapter 123 of title 28 of the United States Code that become due after the Effective Date and, with respect to each Debtor, on or before the date that the Chapter 11 Case concerning such Debtor is (i) closed, (ii) dismissed, or (iii) converted to a case under Chapter 7 of the Bankruptcy Code.

**12.4     Effectuating Documents and Further Transactions.**  Denis O'Connor, Operating Officer of Holdings, and an officer of each of the Debtors, is authorized and directed to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be reasonably necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**12.5     Exemption from Transfer Taxes.**  Pursuant to section 1146(c) of the Bankruptcy Code, the assignment or surrender of any lease or sublease, or the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition of assets contemplated by the Plan (including transfers of assets to and by the Ephedra Personal Injury Trust and transfers and assignments of assets to Ideasphere pursuant to the Ideasphere Agreement) shall not be subject to any stamp, real estate transfer, mortgage recording, sales, use, or other similar tax.

**12.6     Post-Confirmation Date Fees and Expenses of Professionals.**  The Debtors shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses, incurred after the Confirmation Date, of the professional persons employed by the Debtors, the Ephedra Claimants Committee, and the Creditors Committee in connection with the implementation and consummation of the Plan, the claims reconciliation process, and any other matters as to which such professionals may be engaged.  The fees and expenses of such professionals shall be paid within ten (10) Business Days after submission of a detailed invoice therefor.  If the Plan Administrator disputes the reasonableness of any such invoice, the Plan Administrator shall timely pay the undisputed portion of such invoice, and the Plan Administrator or the affected professional may submit such dispute to the Bankruptcy Court for a determination of the reasonableness of such invoice.

**12.7     Elimination of Vacant Classes.**  Any Class that is not occupied as of the commencement of the Confirmation Hearing by an Allowed Claim or a Claim temporarily

allowed under Bankruptcy Rule 3018 or as to which no vote is cast shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

**12.8** **Nonconsensual Confirmation.** If any Impaired Class entitled to vote shall not accept the Plan by the requisite statutory majorities provided in section 1126(c) of the Bankruptcy Code, the Debtors reserve the right to request the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code.

**12.9** **Modification of Plan.** Upon reasonable notice to the Creditors Committee and the Ephedra Claimants Committee, the Plan may be amended, modified, or supplemented by the Debtors in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as the Bankruptcy Court may otherwise direct. In addition, after the Confirmation Date, so long as such action does not materially adversely affect the treatment of holders of Claims or Equity Interests under the Plan, the Debtors may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan. Prior to the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan without further order or approval of the Bankruptcy Court, *provided* that such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims or Equity Interests. Notwithstanding the foregoing, without the consent of the Settling Third Parties, the Plan may not be amended pursuant to this paragraph if after such amendment, the Plan would not include the Plan Release and Injunction in Favor of Settling Third Parties as provided in paragraph 4 of the 2002-2004 Ephedra PI Settlement Agreement.

**12.10** **Revocation or Withdrawal of Plan.** The Debtors reserve the right to revoke or withdraw the Plan at any time prior to the Confirmation Date. If the Debtors take such action, the Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claim by or against the Debtors or any other person or to prejudice in any manner the rights of the Debtors or any other person in any further proceedings involving the Debtors.

**12.11** **Courts of Competent Jurisdiction.** If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal, or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

**12.12** **Severability.** If, prior to the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any

such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**12.13    Governing Law.** Except to the extent the Bankruptcy Code or other federal law is applicable, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflicts of law thereof.

**12.14    Exhibits.** The exhibits to the Plan are incorporated into and are a part of the Plan as if set forth in full herein.

**12.15    Successors and Assigns.** All the rights, benefits, and obligations of any person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and/or assigns of such person.

**12.16    Time.** In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

**12.17    Notices.** All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to the Debtors, to:

TL Administration Corporation
c/o AlixPartners
9 West 57th Street, Suite 3420
New York, New York  10019
Attn:  Denis O'Connor
Telephone:  (646) 746-2465
Telecopier:  (646) 746-2490

-and-

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York  10153
Attn:   Michael P. Kessler, Esq.
Telephone:  (212) 310-8000
Telecopier:  (212) 310-8007

Dated:  New York, New York
        May 25, 2005

          Respectfully submitted,

          TL ADMINISTRATION CORPORATION (F/K/A TWINLAB CORPORATION)


            By:    /s/ Denis O'Connor
                   Name:  Denis O'Connor
                   Title:   Vice President


          TL ADMINISTRATION INC. (F/K/A TWIN LABORATORIES INC.)

            By:    /s/ Denis O'Connor
                   Name:  Denis O'Connor
                   Title:   Vice President


          TL ADMINISTRATION (UK) LTD. (F/K/A TWIN LABORATORIES (UK) LTD.)


            By:    /s/ Denis O'Connor
                   Name:  Denis O'Connor
                   Title:   Vice President

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x

In re                                                             :

                                                                  : **04 MD 1598 (JSR)**

**EPHEDRA PRODUCTS LIABILITY**                                    :
**LITIGATION.**                                                   :

------------------------------------------------------------------x

PERTAINS TO ALL CASES

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x

In re                                                             :

                                                                  : **Chapter 11 Case No.**

**TL ADMINISTRATION CORPORATION,**                               :
<u>et al.</u> (f/k/a TWINLAB CORPORATION, <u>et al.</u>),        : **03-15564 (RDD)**

                                                                  :

                                                                  : **(Jointly Administered)**

                                        Debtors.                  :

------------------------------------------------------------------x

**ORDER CONFIRMING FIRST AMENDED JOINT PLAN**
**OF LIQUIDATION OF TL ADMINISTRATION CORPORATION**
**(F/K/A TWINLAB CORPORATION), TL ADMINISTRATION, INC.**
**(F/K/A TWIN LABORATORIES INC.), AND TL ADMINISTRATION (UK) LTD.**
**(F/K/A TWIN LABORATORIES (UK) LTD.)**
<u>**UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**</u>

The First Amended Joint Plan of Liquidation of TL Administration Corporation

(f/k/a Twinlab Corporation), TL Administration, Inc. (f/k/a Twin Laboratories Inc.), and TL

Administration (UK) Ltd. (f/k/a Twin Laboratories (UK) Ltd.) Under Chapter 11 of the

Bankruptcy Code, dated May 25, 2005 (collectively, and as may be modified and amended, the

"<u>Plan</u>")[1] and the First Amended Disclosure Statement thereto (the "<u>Disclosure Statement</u>")

having been filed with the Court (defined herein) by TL Administration Corporation (f/k/a

Twinlab Corporation) ("<u>Holdings</u>"), TL Administration Inc. (f/k/a Twin Laboratories, Inc.)

---

[1] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to such terms in the Plan. A copy of the Plan is attached hereto as Exhibit "A."

("Laboratories") and TL Administration (UK) Ltd. (f/k/a Twin Laboratories (UK) Ltd.) ("TL UK" and collectively with Holdings and Laboratories, the "Debtors"), as debtors and debtors in possession, and as proponents of the Plan within the meaning of section 1129 of title 11 of the United States Code (the "Bankruptcy Code"); and the Court having entered, after due notice and a hearing, an Order, dated June 3, 2005, (i) Approving First Amended Disclosure Statement, (ii) Fixing a Record Date, (iii) Approving Solicitation Packages and Procedures for Distribution Thereof, (iv) Approving Forms of Ballots and Procedures for Voting on the Debtors' First Amended Joint Plan of Liquidation, (v) Scheduling a Hearing and Establishing Notice and Objection Procedures in Respect of Confirmation of the Debtors' First Amended Joint Plan of Liquidation, and (vi) Authorizing the Retention of Bankruptcy Services, LLC and Financial Balloting Group LLC as Voting and Tabulation Agents (the "Disclosure Statement Order"); and the Disclosure Statement and Plan having been distributed to holders of Claims against and Equity Interests in the Debtors and other parties in interest as provided in the Disclosure Statement Order; and due notice of the Plan and the Confirmation Hearing having been provided to holders of Claims against and Equity Interests in the Debtors and other parties in interest in accordance with the Disclosure Statement Order, the Bankruptcy Code, and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), as established by the affidavits of service, mailing, and/or publication filed with the Court (the "Notice Affidavits"),[2] and such notice being sufficient under the circumstances and no further notice being required; and after full

---

[2] The Notice Affidavits include the following:  (i) Affidavit of Mailing of Rachel Brown, dated May 3, 2005 (District Court MDL Docket No. 1516); (ii) Affidavit of Kathy Gerber, dated June 15, 2005 (District Court MDL Docket No. 1645); (iii) Certification of Publication, dated June 14, 2005(District Court MDL Docket No. 1665); (iv) the affidavits filed by the Debtors' Court-appointed voting and tabulation agents, Bankruptcy Services LLC ("BSI") and Financial Balloting Group LLC ("FBG"), dated July 15, 2005 (as amended July 18, 2005) (the "Voting Affidavits") (District Court MDL Docket Nos. 1762 and 1763).

consideration of (i) the Debtors' memorandum of law in support of confirmation of the Plan,

dated July 19, 2005 (the "Confirmation Memorandum"), (ii) the declarations in support of

confirmation of the Plan, sworn to by (a) Denis O'Connor (the "O'Connor Declaration"), and (b)

Rex A. Littrell (the "Littrell Declaration"), (iii) the Voting Affidavits regarding the solicitation of

votes and methodology applied to the tabulation of the voting results with respect to the Plan,

and the results of the tabulation of votes, (iv) the limited objection filed by the Ephedra Official

Committee of Ephedra Claimants (the "Ephedra Claimants Committee"), and the joinders thereto

filed by (a) the Plaintiffs' Coordinating Counsel appointed in the above-captioned Multi District

Litigation, (b) Sallie Cooper, (c) Timothy and Sharon Sallis, (d) Joseph Michalowski, (e)

Beverly A. Greenberg, (f) Jason Vickrey, and (g) Kenneth and Patricia Lowen, and (h) the "Barr

Class" (collectively, the "Limited Objections"), (v) the objection filed by Clarence Lackowski

and Christine Felts (the "Lackowski and Felts Objection"); (vi) the objection filed by the "Cirak

Class" (the "Cirak Objection"), and the joinder thereto filed by the "Barr Class" (the "Barr

Objection" and together with the Lackowski and Felts Objection and the Cirak Objection, the

"Consumer Class Action Objections," (vii) the limited oral objection made at the Confirmation

Hearing (as defined below) by the Indenture Trustee (together with the Limited Objections and

the Consumer Class Objections, the "Objections"),  and (viii) the Debtors' responses to the

Objections contained in the Confirmation Memorandum; and the hearing to consider

confirmation of the Plan having been held before the Court on July 21, 2005 (the "Confirmation

Hearing"); and the Court having considered the evidence adduced at the Confirmation Hearing,

including the testimony of Messrs. O'Connor and Littrell, and Ms. Sullivan and Gerber, through

their declarations, which were admitted into evidence, and the exhibits admitted into evidence,

the arguments, representations, and agreements of counsel on the record; and all Objections

having been withdrawn, resolved, granted, or otherwise overruled as set forth herein; and upon all of the proceedings had before the Court and upon the arguments of counsel and all of the evidence adduced at the Confirmation Hearing; and the Court having determined based upon all of the foregoing that the Plan should be confirmed, as reflected by the Court's rulings made herein and at the Confirmation Hearing; and after due deliberation and sufficient cause appearing therefor, the Court hereby FINDS, DETERMINES, AND CONCLUDES that:

> A.     <u>Findings and Conclusions</u>.  The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

> B.     <u>Jurisdiction, Core Proceeding, Venue</u>.  The Court has jurisdiction over the Debtors' chapter 11 cases, the Confirmation Hearing, the relief requested therein, including confirmation of the Plan, and the Objections, in accordance with 28 U.S.C. §§ 157(b) and 1334 and the Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for the Southern District of New York (the "<u>District Court</u>"), dated July 19, 1984 (Ward, Acting C.J.).  Consideration of the Confirmation Memorandum, the relief requested therein, and the Objections thereto is a core proceeding pursuant to 28 U.S.C. § 157(b).  By Order dated March 22, 2005 (the "<u>Reference Order</u>" as amended by the District Court's Status Order (Including Case Management Order No. 12) dated April 15, 2005 and Status Order (Including Case Management Order No. 13) dated May 10, 2005), the District Court withdrew the bankruptcy reference with respect to the Debtors' chapter 11 cases from the United States Bankruptcy Court

for the Southern District of New York (the "<u>Bankruptcy Court</u>" and together with the District Court, the "<u>Court</u>") and assumed direct jurisdiction over all aspects of the Debtors' chapter 11 cases, except those specifically reserved to the Bankruptcy Court as set forth in the Reference Order and such additional referrals as the District Court may order in the future. The Reference Order provided that the District Court and the Bankruptcy Court "shall jointly retain jurisdiction over, and jointly hear…all hearings on the approval of a disclosure statement and confirmation of a chapter 11 plan of liquidation." Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

      C.    <u>Commencement of the Chapter 11 Cases</u>.  On September 4, 2003 (the "<u>Commencement Date</u>"), each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code in the Bankruptcy Court (Case Nos. 03-15564 (Holdings), 03-15566 (Laboratories), and 03-15563 (TL (UK))).  The Debtors' chapter 11 cases were consolidated for procedural purposes only and have been jointly administered pursuant to an order of the Bankruptcy Court dated September 4, 2004.  The Debtors continue to manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee has been appointed in these cases.

      D.    <u>Judicial Notice</u>.  The Court takes judicial notice of the dockets of the Debtors' chapter 11 cases and related and adversary proceedings maintained by the Clerk of the Bankruptcy Court, including, without limitation, all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the hearings held before the Bankruptcy Court during the pendency of the chapter 11 cases.  Further, the Court takes judicial notice of the dockets of the cases in the above-captioned Multi District Litigation maintained by the Clerk of the District Court, including, without limitation, all pleadings and

other documents filed, all orders entered, and all evidence and arguments made, proffered, or

adduced at the hearings held before the District Court during the pendency of the chapter 11

cases.

   E. <u>Burden of Proof.</u> The Debtors have the burden of proving the elements of

sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.

   F. <u>Solicitation and Notice</u>. On June 3, 2005, the Court entered the Disclosure

Statement Order, which, among other things, approved the Disclosure Statement, finding that it

contained "adequate information" within the meaning of section 1125 of the Bankruptcy Code,

and established procedures for the Debtors' solicitation of votes on the Plan. The Disclosure

Statement, the Plan, the ballots, the notice of the Confirmation Hearing, and the Disclosure

Statement Order (as applicable, the "<u>Solicitation Materials</u>") were served in compliance with the

Bankruptcy Rules and the Disclosure Statement Order. As described in the Notice Affidavits

(i) the service of the Solicitation Materials was adequate and sufficient under the circumstances

of these Chapter 11 Cases and (ii) adequate and sufficient notice of the Confirmation Hearing,

and other requirements, deadlines, hearings, and matters described in the Disclosure Statement

Order was timely provided in compliance with the Bankruptcy Rules, the Disclosure Statement

Order, and due process to all parties in interest including.

   G. <u>Voting</u>. Votes on the Plan were solicited after disclosure to holders of

Claims against and Equity Interests in the Debtors of "adequate information" as defined in

section 1125 of the Bankruptcy Code. As evidenced by the Voting Affidavits, votes to accept or

reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent

with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, and the Local

Bankruptcy Rules for the Southern District of New York (the "<u>Local Rules</u>").

       **H.**    <u>Conditions Precedent to Confirmation</u>.  As established by, among other things, the O'Connor Declaration, the Debtors have satisfied all conditions precedent to confirmation set forth in section 9.1(b) of the Plan.

       **I.**    <u>Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>. The Plan complies with the requirements of Bankruptcy Code sections 1122 and 1123 as well as other applicable provisions of the Bankruptcy Code.

       **J.**    <u>Proper Classification (11 U.S.C. §§ 1122)</u>.  In accordance with Bankruptcy Code section 1122, the Plan provides for the separate classification of Claims against and Equity Interests in the Debtors based upon differences in the legal nature and/or priority of such Claims and Equity Interests.  Section 3 of the Plan provides for the following six (6) Classes of Claims and one (1) Class of Equity Interests:  Class 1 (Secured Claims), Class 2 (Priority Non-Tax Claims), Class 3 (Pre-2002 Ephedra PI Claims), Class 4 (2002-2004 Ephedra PI Claims), Class 5 (General Unsecured Claims), Class 6 (Punitive Damage Claims), and Class 7 (Equity Interests).  Each of the Claims or Equity Interests in each particular Class is substantially similar to the other Claims or Equity Interests in such Class.

       **K.**    <u>Designation of Classes of Claims and Equity Interests 11 U.S.C. § 1123(a)(1))</u>.  Section 2 of the Plan provides for the treatment of Administrative Expense Claims and Priority Tax Claims and Section 3 of the Plan designates Classes of Claims and Classes of Equity Interests as required by Bankruptcy Code section 1123(a)(1).

       **L.**    <u>Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2))</u>.  As required by Bankruptcy Code section 1123(a)(2), Section 4 of the Plan specifies that Class 1 (Secured Claims), Class 2 (Priority Non-Tax Claims), and Class 3 (Pre-2002 Ephedra PI Claims) are unimpaired under the Plan.

M.      <u>Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))</u>.  As

required by Bankruptcy Code section 1123(a)(3), Section 4 of the Plan specifies the treatment of

the Claims in Class 4 (2002-2004 Ephedra PI Claims), Class 5 (General Unsecured Claims), and

Class 6 (Punitive Damage Claims), and the Equity Interests in Class 7 (Equity Interests), each of

which is impaired under the Plan.

N.      <u>No Discrimination (11 U.S.C. § 1123(a)(4))</u>.  Section 4 of the Plan

provides that the treatment of each Claim or Equity Interest in each particular Class is the same

as the treatment of each other Claim or Equity Interest in such Class, as required by Bankruptcy

Code section 1123(a)(4).

O.      <u>Implementation of the Plan (11 U.S.C. § 1123(a)(5))</u>.  As required by

Bankruptcy Code section 1123(a)(5), the Plan provides adequate means for the Plan's

implementation.  Sections 5, 6, 7, 8 and various other provisions of the Plan set forth the means

for implementation of the Plan, including the transfer of property to the Ephedra Personal Injury

Trust, the appointment of an Ephedra Personal Injury Trustee, the appointment of a Plan

Administrator, the methods for distribution to be made under the Plan for payment of claims and

the rejection of executory contracts and unexpired leases.

P.      <u>Non-Voting Equity Securities / Allocation of Voting Power (11 U.S.C. §
1123(a)(6))</u>.  Bankruptcy Code section 1123(a)(6) is inapplicable to the Plan because the Plan is

a liquidating plan that provides for the dissolution of the Debtors and no distributions to Equity

Interests and no distribution of new equity to any party in interest, except to the Plan

Administrator and solely for purposes of winding down and liquidating the Debtors.

Q.      <u>Designation of Directors and Officers (11 U.S.C. § 1123(a)(7))</u>.  Sections

7.2 and 7.3 of the Plan provide for the appointment on the Effective Date of the Plan

Administrator as the sole officer and director to serve the Debtors post-confirmation.  This appointment meets the requirements of Bankruptcy Code section 1123(a)(7), is consistent with the interests of creditors and with public policy, and was approved by the Creditors Committee.

R.  Additional Plan Provisions (11 U.S.C. § 1123(b)).  The additional provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b) of the Bankruptcy Code.

S.  Impairment/Unimpairment of Classes of Claims or Equity Interests (§ 1123(b)(1)).  As permitted under section 1123(b)(1) of the Bankruptcy Code, Sections 3 and 4 of the Plan render Class 1 (Secured Claims), Class 2 (Priority Non-Tax Claims), and Class 3 (Pre-2002 Ephedra PI Claims) unimpaired, and Class 4 (2002-2004 Ephedra PI Claims), Class 5 (General Unsecured Claims), Class 6 (Punitive Damage Claims), and Class 7 (Equity Interests) impaired.

T.  Assumption and Rejection of Executory Contracts (11 U.S.C. § 1123(b)(2)).  As permitted under section 1123(b)(2) of the Bankruptcy Code, Section 8 of the Plan provides for the rejection of executory contracts and unexpired leases of the Debtors not previously assumed or rejected under section 365 of the Bankruptcy Code.

U.  Settlement or Adjustment of Claims and Provisions Not Inconsistent with the Bankruptcy Code (11 U.S.C. §§ 1123(b)(3)(A) and 1123(b)(6)).  As contemplated by sections 1123(b)(3)(A) and 1123(b)(6), the Plan incorporates the compromise and settlement of the 2002-2004 Ephedra PI Claims and Other Participating Ephedra Claims through the 2002-2004 Ephedra PI Settlement Agreement and certain releases and injunctions related and necessary thereto.

V.    <u>Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>.

Each of the Debtors is an eligible debtor under section 109 of the Bankruptcy Code. The

Debtors have complied with the applicable provisions of the Bankruptcy Code, including the

provisions of sections 1125 and 1126 of the Bankruptcy Code, and except as otherwise provided

or permitted by orders of the Court. The Debtors have complied with the applicable provisions

of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Court's Local Rules in

transmitting the Plan, the Disclosure Statement, the Ballots, and related documents and notices

and in soliciting and tabulating the votes on the Plan.

W.    <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>. The Debtors have

proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying

section 1129(a)(3) of the Bankruptcy Code. No objections have been filed to the Plan on the

grounds of lack of good faith. Pursuant to Bankruptcy Rule 3020(b)(2), the Court may therefore

determine that the Plan has been proposed in good faith and not by any means forbidden by law

without receiving evidence on such issues. The Debtors' good faith is evident, however, from

the facts and record of these chapter 11 cases, the Disclosure Statement, and the record of the

Confirmation Hearing and other proceedings held in the Debtors' chapter 11 cases and the Multi

District Litigation. The Plan provides for the liquidation of the Debtors, with distribution to

creditors in accordance with the priorities afforded under the Bankruptcy Code. The Plan is the

culmination of extensive good faith, arms-length negotiations among the Debtors, the Creditors

Committee and the Ephedra Claimants Committee, among others. The Plan incorporates the

2002-2004 Ephedra PI Settlement Agreement, which itself was negotiated in accordance with the

directives of the Court and is supported by the Debtors, their insurers, the Creditors Committee,

the Ephedra Claimants Committee, the Settling Third Parties, and the individual holders of 2002-

2004 Ephedra PI Claims and Other Participating Ephedra Claims. The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' estates for distribution to their creditors.

      X.    <u>Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>. Any payment made or to be made by the Debtors for services or for costs and expenses in connection with their chapter 11 cases, or in connection with the Plan and incident to their chapter 11 cases, has been approved by, or is subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

      Y.    <u>Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))</u>. The Debtors have satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code. On July 15, the Debtors filed a notice disclosing the identity of Denis O'Connor as the Plan Administrator and also describing his compensation to be earned as Plan Administrator.

      Z.    <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>. Section 1129(a)(6) of the Bankruptcy Code is inapplicable to the Plan. The Debtors are liquidating and no governmental regulatory commission will have jurisdiction over the rates of the Debtors.

      AA.    <u>Best Interest of Creditors (11 U.S.C. § 1129(a)(7))</u>. The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. The updated liquidation analysis attached to the O'Connor Declaration and supported by the O'Connor Declaration, and other evidence proffered or adduced at the Confirmation Hearing, (i) is persuasive and credible, (ii) has not been controverted by other evidence, and (iii) establishes that each holder of an impaired Claim or Equity Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Equity Interest, property of a value, as of the Effective Date, that is not less than

the amount that such holder would receive or retain if the applicable Debtor were liquidated under chapter 7 of the Bankruptcy Code on such date.

BB.   Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).  Class 1 (Secured Claims), Class 2 (Priority Non-Tax Claims), and Class 3 (Pre-2002 Ephedra PI Claims) are Classes of unimpaired Claims that are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Class 4 (2002-2004 Ephedra PI Claims) (unanimously) and Class 5 (General Unsecured Claims) (by a substantial majority) have voted to accept the Plan in accordance with sections 1126(b) and (c) of the Bankruptcy Code.  Class 6 (Punitive Damage Claims) and Class 7 (Equity Interests) are impaired by the Plan and are not entitled to receive or retain any property under the Plan and, therefore, are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Although section 1129(a)(8) is not satisfied with respect to the deemed rejection of Class 6 and Class 7, the Plan may nevertheless be confirmed because the Plan satisfies section 1129(b) of the Bankruptcy Code with respect to Class 6 and Class 7.

CC.   Treatment of Administrative Expense Claims, Tax Claims, and Other Priority Claims (11 U.S.C. § 1129(a)(9)).  The Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.  In accordance with section 1129(a)(9)(A), the Plan provides that, on the Effective Date, the Debtors shall pay each holder of an Allowed Administrative Expense Claim an amount in Cash equal to the Allowed amount of such Claim.  In accordance with section 1129(a)(9)(B), the Plan provides that each holder of an Allowed Priority Non-Tax Claim shall be paid an amount in Cash equal to the Allowed amount of such Priority Non-Tax Claim.  In accordance with section 1129(a)(9)(C), the Plan provides that each holder of an Allowed Priority Tax Claim shall be paid an amount in Cash equal to the amount of such Claim.

All Allowed Priority Tax Claims not due and payable on or before the Effective Date shall be paid in the ordinary course of business as such obligations become due.

DD.    Acceptance By Impaired Class of Claims (11 U.S.C. § 1129(a)(10)).  As set forth in the Voting Affidavits, at least one Class of impaired claims against each Debtor has accepted the Plan, determined without including any acceptance of the Plan by insiders, thereby satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code.  Specifically, both Classes of impaired Claims entitled to vote on the Plan (Class 4 and Class 5) have voted to accept the Plan by the requisite majorities mandated under section 1126 of the Bankruptcy Code, determined without including any acceptance of the Plan by any insider.  The evidence set forth in the Voting Affidavits (i) is persuasive and credible, (ii) has not been controverted by other evidence, and (iii) establishes the voting results with respect to the Plan.

EE.    Feasibility (11 U.S.C. § 1129(a)(11)).  Because the Plan provides for the liquidation of the Debtors, the Plan is feasible if the Debtors will be able to satisfy the conditions precedent to the Effective Date (as defined in the Plan) and otherwise have sufficient funds to meet their post-Confirmation Date obligations to pay for the costs of administering and fully consummating the Plan and closing the chapter 11 cases.  The evidence set forth in the O'Connor Declaration and otherwise proffered or adduced at the Confirmation Hearing (i) is persuasive and credible, (ii) has not been controverted by other evidence, and (iii) establishes that the Plan is feasible and that the Debtors will have sufficient funds to meet their post-confirmation date obligations, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

FF.    Payment of Fees (11 U.S.C. § 1129(a)(12)).  In accordance with sections 507 and 1129(a)(12) of the Bankruptcy Code, the Plan provides that all fees due and payable

pursuant to section 1930 of chapter 123 of title 28 of the United States Code have been or will

be paid on the Effective Date or as soon thereafter as is practicable.

GG.     Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)).  The Debtors

do not have obligations to provide retiree benefits.  Accordingly, the Bankruptcy Code section

1129(a)(13) is inapplicable to the Plan.

HH.     Subordination of Punitive Damage Claims (11 U.S.C §§ 726(a)(4),

1129(a)(7), and 105(a)).  Punitive Damage Claims are properly subordinated by the Plan based

on (i) the interplay between sections 724(a)(4) and 1129(a)(7) of the Bankruptcy Code, and/or

(ii) the equitable powers provided under section 105(a) of the Bankruptcy Code.  The Debtors'

estates are not sufficient to pay all unsecured claims in full.  Under a chapter 7 liquidation, no

Punitive Damage Claims would be payable out of the Debtors' estates.  Assuming section

726(a)(4) applies in analyzing the best interests test, the Plan would not pass the best interests

test if it did not separately classify and subordinate Punitive Damage Claims or if it proposed to

pay any Punitive Damages to creditors (absent unanimous consent by all voting creditors).  In

addition, Punitive Damage Claims serve neither a deterrent nor a punishment purpose in the

Debtors' cases.  The Debtors ceased operating their businesses upon the closing of the sale of

substantially all of the their assets in December 2003 and are now liquidating.  Moreover,

distributions on account of Punitive Damage Claims would visit a hardship on creditors for

wrongs attributed to others and would be inequitable.  Furthermore, no objections were filed with

respect to the separate classification and subordination of Punitive Damage Claims.

II.      No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b)).

Class 6 and Class 7 are deemed to have rejected the Plan.  Based upon the pleadings submitted

and the evidence proffered, adduced, and/or presented by the Debtors at or before the

Confirmation Hearing, the Plan does not discriminate unfairly and is fair and equitable with

respect to Class 6 (Punitive Damage Claims) and Class 7 (Equity Interests), as required by

sections 1129(b)(1) and (b)(2) of the Bankruptcy Code.  The Plan does not discriminate against

Class 6 because (i) Class 6 is comprised of Claims dissimilar to the Claims and Equity Interests

in all other Classes and (ii) taking into account the particular facts and circumstances of the case,

there is a reasonable basis for disparate treatment.  See paragraph HH above.  Class 7 is the only

Class consisting of Equity Interests under the Plan.  Accordingly, the Plan does not discriminate

unfairly as between any similarly situated holders of equity interests in the Debtors.  Equity

Interests in Class 7 are not entitled to receive a distribution under the Plan.  Therefore, no Claims

or Equity Interests junior to Class 6 Claims will receive property under the Plan and the Plan

satisfies the absolute priority rule with respect to Class 6 pursuant to section 1129(b)(2)(B) of the

Bankruptcy Code.  There are no Classes junior to Class 7, and creditors in the Classes senior to

Class 7 will not be paid in full.  The Plan therefore satisfies the absolute priority rule of section

1129(b)(2)(C) of the Bankruptcy Code with respect to Class 7.

   JJ. Approval of the 2002-2004 Ephedra PI Settlement Agreement

(Bankruptcy Rule 9019(a), 11 U.S.C. § 1123(b)(6)).  The evidence and arguments made,

proffered, or adduced at the hearings held before the Court during the pendency of the chapter 11

cases, including the Disclosure Statement, the O'Connor Declaration, and the Littrell

Declaration, and representations of counsel, demonstrate that (i) the Debtors' exercised their

sound business judgment in entering into the 2002-2004 Ephedra PI Settlement Agreement,

which was the result of arms length, good faith and arduous multi-party Court-ordered

mediation, (ii) the 2002-2004 Ephedra PI Settlement Agreement is fair and equitable, reasonable,

and in the best interests of the Debtors' estates, and (iii) clearly falls above the lowest range of

reasonableness.  The evidence and arguments are persuasive and credible and have not been

controverted by other evidence.  The Ephedra PI Settlement Agreement was negotiated in good

faith, at arms length, in accordance with the directives of the Court, and is supported by the

Debtors, their insurers, the Creditors Committee, the Ephedra Claimants Committee, the Settling

Third Parties, and the individual holders of 2002-2004 Ephedra PI Claims and Other

Participating Ephedra Claims.  The 2002-2004 Ephedra PI Settlement Agreement will allow the

Debtors to fairly and efficiently liquidate their estates by resolving their largest outstanding

contingencies.  The establishment of the Ephedra Personal Injury Trust and the channeling of

Class 4 Claims to the Ephedra Personal Injury Trust is a valid plan mechanism for resolving

unliquidated claims to the substantial benefit of all impaired Claims.  Accordingly, the Court

approves the 2002-2004 Ephedra PI Settlement Agreement

        KK.  Plan Releases and Injunctions (Bankruptcy Rule 9019(a), 11 U.S.C. §§

1123(b)(3)(A) and 1123(b)(6)).  The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and

157(a) to approve the releases and injunctions set forth in Sections 10.5 and 10.6 of the Plan.

Additionally, the Court has jurisdiction over each of the parties in the Multi District Litigation.

The evidence and arguments made, proffered, or adduced at the hearings held before the Court

during the pendency of the chapter 11 cases, including the Disclosure Statement, the O'Connor

Declaration, and the Littrell Declaration, demonstrates that the incorporation of the releases in

Section 10.5 of the Plan (as modified by this Confirmation Order), including of the Released

Parties pursuant to Section 10.5(a) of the Plan, was (i) fair and equitable, reasonable, and in the

best interests of the Debtors' estates and creditors, and (ii) supported by special circumstances

justifying such unusual relief.  The release of the Released Parties pursuant to Section 10.5(a) of

the Plan was in consideration for the 2002-2004 Ephedra PI Settlement Agreement and Third

Party Settlement Amounts, which form the basis for, and constitute the primary source for the funding of, the Plan.  Section 105(a) of the Bankruptcy Code permits the issuance of injunctions and approval of the releases set forth in Sections 10.5 (as modified by this Confirmation Order) and 10.6 of the Plan if, as has been established here, such provisions are essential to the formulation and implementation of the Plan, are made in return for substantial consideration channeled to a settlement fund, and therefore, confer a material benefit on the Debtors' estates and creditors.  The third-party release and injunction provisions of the Plan (as modified by this Confirmation Order) approved by this Confirmation Order are consistent with sections 105, 1123, and 1129 of the Bankruptcy Code. They were negotiated at arms length during Court-ordered mediation of the central issues in these chapter 11 cases, and are the quid pro quo for a settlement fund that materially benefits all unsecured creditors of the estate, without which it is unlikely that any chapter 11 plan would be confirmed.

LL.     Notwithstanding the Court's denial of the Debtors' request for approval of the release of the Blechmans contained in Section 10.5(b) of the Plan and related injunctive relief, for the reasons stated in the Court's bench ruling, including that the proposed release of the Blechmans was not, unlike the release and injunction for the benefit of the Released Parties, necessary to the formulation  and implementation of the Plan, the Debtors and the Creditors Committee have complied with their obligations under the Blechman Agreement with respect thereto.

MM.     Satisfaction of Confirmation Requirements.  Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

NN.    <u>Retention of Jurisdiction</u>.  The Court may properly, and upon the Effective

Date shall, retain jurisdiction over the matters set forth in Section 11 of the Plan and section 1142

of the Bankruptcy Code.

ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED AND DECREED

THAT:

1.    <u>Solicitation and Notice</u>.  Notice of the Confirmation Hearing complied

with the terms of the Disclosure Statement Order, was appropriate and satisfactory based upon

the circumstances of the Debtors' Chapter 11 Cases, and was in compliance with the provisions

of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.  The solicitation of votes on

the Plan complied with the solicitation procedures in the Disclosure Statement Order, was

appropriate and satisfactory based upon the circumstances of the Debtors' Chapter 11 Cases, and

complied with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local

Rules.

2.    <u>Confirmation</u>.  The Plan and each of its provisions (except as modified by

this Confirmation Order) are hereby confirmed under section 1129 of the Bankruptcy Code.  The

terms of the Plan (except as modified by this Confirmation Order) and the exhibits thereto,

including the 2002-2004 Ephedra PI Settlement Agreement, are incorporated by reference into

and are an integral part of the Plan and this Confirmation Order.

3.    <u>Binding Effect</u>. Except as otherwise provided in section 1141(d)(3) of the

Bankruptcy Code, on or after entry of this Confirmation Order and subject to the occurrence of

the Effective Date, the provisions of the Plan shall bind any holder of a Claim against or Equity

Interest in the Debtors and their respective successors and assigns, whether or not such Claim or

Equity Interest of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

4. _Plan Settlements_. To the extent that the Plan provides for the compromise or settlement of Claims and controversies resolved pursuant to the Plan, this Confirmation Order shall constitute an order under Bankruptcy Rule 9019 approving such compromise. The 2002-2004 Ephedra PI Settlement Agreement is hereby approved in its entirety.

5. _Dismissal of Cases_. On the date this Confirmation Order becomes a Final Order, each of the cases subject to the 2002-2004 Ephedra PI Settlement Agreement (listed on Exhibit "B" attached hereto) shall be dismissed with prejudice; provided, however, that such dismissals shall not include the dismissal of claims against Metabolife International, Inc. In accordance with paragraph 5 of the 2002-2004 Ephedra PI Settlement Agreement, as soon as is practicable, counsel for the Plaintiffs (as that term is defined in the 2002-2004 Ephedra PI Settlement Agreement) shall serve upon the Special Master the confidential breakdown of the settlement amount to be paid to each individual plaintiff and the amount to be paid in fees and disbursements to the plaintiff's individual counsel and to coordinating counsel.

6. _Exculpations and Limitation of Liability_. As of the Effective Date, none of (i) the Debtors and the Debtors' officers, directors, and employees, (ii) the Creditors Committee, (iii) the Ephedra Claimants Committee, and (iv) the members, ad hoc members, representatives, accountants, financial advisors, investment bankers, consultants, and attorneys of the Entities described in (i) through (iii) of this paragraph shall have or incur any liability to any person for any act taken or omission in such capacity, after the Commencement Date, in connection with or related to the Chapter 11 Cases or the operations of the Debtors' businesses during the Chapter 11 Cases, including but not limited to (i) formulating, preparing,

disseminating, implementing, confirming, consummating or administrating the Plan (including

soliciting acceptances or rejections thereof); (ii) the Disclosure Statement or any contract,

instrument, release or other agreement or document entered into or any action taken or omitted to

be taken in connection with the Plan or the Disclosure Statement; or (iii) any distributions made

pursuant to the Plan. Nothing in the foregoing or Section 10.4 of the Plan shall (i) be construed

to release or exculpate any non-Debtor from fraud, gross negligence, willful misconduct,

malpractice, criminal conduct, unauthorized use of confidential information that causes damages,

or ultra vires acts, or (ii) limit the liability of the professionals of the Debtors to their clients

pursuant to DR 6-102 of the Code of Professional Responsibility.

   7. <u>Releases of the Released Parties</u>. Pursuant to Section 10.5(a) of the Plan,

on the Effective Date, and except for the obligations arising under or in connection with the Plan,

the Debtors, the Creditors Committee, the Ephedra Claimants Committee, and all Creditors, for

themselves, their successors and assigns, and the Estates, shall fully, finally, and irrevocably

release and forever discharge the Released Parties of and from any and all past, present, and

future claims, rights, actions, demands, injuries, damages, compensation, or Causes of Action of

whatsoever kind or nature, arising out of or otherwise relating to the manufacture, marketing,

sale, distribution, fabrication, advertising, supply, production, use, or ingestion of ephedra or

ephedra-containing products designed, manufactured, fabricated, sold, supplied, produced, or

distributed by one or more of the Debtors, whether foreseen or unforeseen, known or unknown,

contingent or actual, liquidated or unliquidated, whether in tort or contract, whether statutory or

at common law (including, without limitation, claims under section 506(c) of the Bankruptcy

Code) which they have or may have as of the Confirmation Date, arising from the beginning of

the world up to the Confirmation Date, <u>provided</u>, <u>however</u>, that such release does not include

claims against the Settling Third Parties in connection with the Pre-2002 Ephedra PI Claims; provided, further, that such release does limit the liability of GNC in each of the Pre-2002 Ephedra PI Claims to the proceeds of the Debtors' applicable insurance policy or policies and further limits the recovery of any holder of a Pre-2002 Ephedra PI Claim solely to such insurance proceeds in connection with any claim against GNC; provided, further, however, that the foregoing limitations contained herein and in Section 10.5(a) of the Plan in connection with the Pre-2002 Ephedra PI Claims and on the recovery of any holder of a Pre-2002 Ephedra PI Claim against GNC shall not apply to, encompass, preclude, or limit the liability of GNC for or to any claim for Punitive Damages asserted in or by the Pre-2002 Ephedra PI Claims against GNC.

8.    Releases by the Released Parties.  Pursuant to Section 10.5(c) of the Plan, on the Effective Date, and except for the obligations arising under or in connection with this Plan, the Released Parties, for themselves, their successors and assigns, and any person claiming by, through, or under any of the foregoing shall fully, finally, and irrevocably release and forever discharge the Debtors and the Estates of and from any and all claims, rights, actions, demands, injuries, damages, compensation, or Causes of Action which they have or may have as of the Confirmation Date relating to the Debtors, arising from the beginning of the world up to the Confirmation Date; provided, however, that such release does not include release of Ephedra Indemnification Claims in connection with Pre-2002 Ephedra PI Claims, which claims will be treated in accordance with section 4.3 of the Plan.

9.    Injunction.  Pursuant to Section 10.6(a) of the Plan, all Entities who have held, hold, or may hold Claims against or Equity Interests in any or all of the Debtors and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, are permanently enjoined, on and after the Effective Date, with respect to

all Claims against, and Equity Interests in, any of the Debtors from (i) commencing, conducting,

or continuing in any manner, directly or indirectly, any Cause of Action or other proceeding of

any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or

other forum) against or affecting the Debtors, the Estates, the Plan Administrator, Ephedra

Personal Injury Trust, the Ephedra Personal Injury Trustee, Ideasphere, the Released Parties, or

the property of any of the foregoing, (ii) enforcing, levying, attaching (including, without

limitation, any prejudgment attachment), collecting, or otherwise recovering by any manner or

means, whether directly or indirectly, any judgment, award, decree, or order against the Debtors,

the Estates, the Plan Administrator, the Ephedra Personal Injury Trust, the Ephedra Personal

Injury Trustee, Ideasphere, the Released Parties, or the property of any of the foregoing, (iii)

creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any

encumbrance of any kind against the Debtors, the Estates, the Plan Administrator, the Ephedra

Personal Injury Trust, the Ephedra Personal Injury Trustee, Ideasphere, the Released Parties, or

against the property or interests in property of the Debtors, (iv) asserting any right of setoff,

directly or indirectly, against any obligation due the Debtors, the Estates, the Plan Administrator,

the Ephedra Personal Injury Trust, the Ephedra Personal Injury Trustee, Ideasphere, the Released

Parties, or any of the property of the foregoing, except as contemplated or allowed by the Plan;

(v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or

comply with the provisions of the Plan; (vi) commencing, continuing or asserting in any manner

any Cause of Action or other proceeding of any kind with respect to any Claims and Causes of

Action which are extinguished or released pursuant to the Plan, and (vii) taking any actions to

interfere with the implementation or consummation of the Plan.  Notwithstanding the foregoing,

nothing contained in this paragraph shall prohibit holders of Pre-2002 Ephedra PI Claims from

prosecuting such claims in accordance with section 4.3 of the Plan. Nothing contained in this Confirmation Order or the Plan shall affect, impair, or modify the coverage obligations of any of the Debtors' insurers other than the obligations of AISLIC in connection with the 2002-2004 Ephedra PI Claims which are released in accordance with the terms of the Plan, the 2002-2004 Ephedra PI Settlement Agreement, and this Confirmation Order.

   10. Pursuant to Section 10.6(b) of the Plan, all persons are permanently enjoined, on and after the Effective Date, from asserting any Claim (x) which is released by such person under the Plan (as modified by this Confirmation Order) or (y) for which the party against whom such Claim is being asserted has received exculpation under the Plan, including: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any Cause of Action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) on account of such Claim, (ii) enforcing, levying attaching (including, without limitation, any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order on account of such Claim, (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind on account of such Claim (iv) asserting any right of setoff, directly or indirectly, against any obligation on account of such claim (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; (vi) commencing, continuing or asserting in any manner any Cause of Action or other proceeding of any kind with respect to any such Claim, and (vii) taking any actions to interfere with the implementation or consummation of the Plan.

   11. <u>Terms of Pre-Plan Injunctions and Stays</u>. Pursuant to Section 10.8 of the Plan, unless otherwise provided in the Plan, the Confirmation Order, or a separate order of the

Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Cases

under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the

Confirmation Date, shall remain in full force and effect until the later of the Effective Date and

the date indicated in such applicable order. Unless otherwise ordered by the Bankruptcy Court,

on and after the Confirmation Date, any "fifty percent shareholder" within the meaning of

section 382(g)(4)(D) of the Tax Code shall be enjoined from claiming a worthless stock

deduction with respect to any Equity Interest held by such shareholder for any taxable year of

such shareholder ending prior to the Effective Date.

      12.    <u>Deemed Consolidation for Plan Purposes</u>. Pursuant to Section 7.1 of the

Plan, on the Effective Date, (i) all guaranties of any Debtor of the payment, performance, or

collection of obligations of another Debtor shall be eliminated and canceled, (ii) any obligation

of any Debtor and all guaranties thereof executed by one or more of the other Debtors shall be

treated as a single obligation, and such guaranties shall be deemed a single Claim against the

deemed consolidated Debtors, (iii) all joint obligations of two or more Debtors and all multiple

Claims against such entities on account of such joint obligations shall be treated and allowed

only as a single Claim against the deemed consolidated Debtors, (iv) all Claims between or

among the Debtors shall be canceled, and (v) each Claim filed in the Chapter 11 Case of any

Debtor shall be deemed filed against the deemed consolidated Debtors and a single obligation of

the deemed consolidated Debtors on and after the Effective Date. Such deemed consolidation,

however, shall not affect the legal and organizational structure of the Debtors and each of TL

Administration Corporation, TL Administration Inc., and TL Administration (UK) ltd. shall be

governed by their respective certificate of incorporation and by-laws.

13. <u>Plan Administrator</u>. Pursuant to Section 7.2 of the Plan, Denis O'Connor, the Debtors' current Operating Officer and a Managing Director at AlixPartners, LLC, the Debtors current financial advisors, is hereby appointed to serve without bond as the Plan Administrator to implement or cause to be implemented the terms of the Plan with respect to the consolidated Debtors; <u>provided</u> that Mr. O'Connor's performance in making Plan distributions is covered by insurance of AlixPartners, LLC. The Plan Administrator shall be compensated according to terms substantially similar to the terms approved by orders of the Bankruptcy Court dated September 4, 2003, and July 14, 2004, for the retention of the Debtors' financial advisors, FTI Consulting, LLC and AlixPartners, LLC, respectively (i.e., at the normal hourly billing rates and disbursement charges billed to his other clients in the ordinary course).

14. <u>Corporate Action</u>. Upon the Effective Date, the Debtors shall perform each of the actions and effect each of the transfers required by the terms of the Plan, in the time period allocated therefor, and all matters provided for under the Plan that would otherwise require approval of the stockholders, partners, members, directors, or comparable governing bodies of the Debtors shall be deemed to have occurred and shall be in effect from and after the Effective Date pursuant to the applicable general corporation law (or other applicable governing law) of the states in which the Debtors are incorporated or organized, without any requirement of further action by the stockholders, members, or directors (or other governing body) of the Debtors. Each of the Debtors shall be authorized and directed, following the completion of all disbursements, other transfers, and other actions required of the Debtors by the Plan, to file its certificate of cancellation or dissolution as contemplated by Section 7.9 of the Plan. The filing of such certificates of cancellation, dissolution, or merger shall be authorized and approved in all respects without further action under applicable law, regulation, order, or rule, including, without

express or implied limitation, any action by the stockholders, members, or directors (or other governing body) of the Debtors.

        15.    <u>Effectuating Documents and Further Transactions</u>. Each of the officers of each of the Debtors is authorized and directed to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

        16.    <u>Vesting of Assets (11 U.S.C. § 1141(b), (c))</u>. Pursuant to Section 10.1 of the Plan, as of the Effective Date, and pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of the Debtors' estates shall vest in the Debtors or such other entity as provided in the Plan, free and clear of all Claims, liens, encumbrances, charges, and other interests, except as provided in the Plan or in this Confirmation Order. From and after the Effective Date, the Plan Administrator and the Ephedra Personal Injury Trustee may dispose of, or cause to be disposed of, the assets of the Debtors and the Ephedra Personal Injury Trustee, free of any restrictions of the Bankruptcy Code, but in accordance with the provisions of the Plan and the Ephedra Personal Injury Trust Agreement.

        17.    <u>Effective Date Payments and Transfers</u>. On the Effective Date, or, as soon thereafter as reasonably practicable, the Plan Administrator shall (i) remit, to each holder of an Allowed Non-Ephedra Claim (as of the Distribution Record Date) against the Debtors, the distribution provided for such Claim under the Plan and (ii) pay and transfer to the Ephedra Personal Injury Trust (or cause the Settlement Escrow Agent to pay and transfer to the Ephedra Personal Injury Trust) the Cash and assets to be paid and transferred to the Ephedra Personal Injury Trust pursuant to section 5.3 of the Plan.

18.     <u>The Objections</u>.  Having examined the proposed third-party releases of the Blechmans contained in the Plan and having considered the Cirak Objection and the argument of counsel for Lackowski and Felts,  (i) the releases and injunctions in favor of the Blechmans contained in the Plan are not approved; (ii) Section 10.5(b) of the Plan shall be void and without effect;  (iii) the injunctions provided for in Section 10.6 of the Plan in favor of the Blechmans are void and without effect; and (iv)  insofar as the Cirak Objection and argument of other counsel sought disapproval of the proposed third-party releases in favor of the Blechmans in the Plan, such objection is granted.  The remainder of the Cirak Objection and all other Objections, responses to, and statements and comments in opposition to the Plan, other than those withdrawn with prejudice in their entirety prior to the Confirmation Hearing or otherwise resolved, shall be, and hereby are, overruled for the reasons stated on the record.

19.     <u>Retention of Causes of Action</u>.  Pursuant to Section 10.3 of the Plan and except as otherwise provided in the Plan (including section 12.1 of the Plan), on and after the Effective Date, the Debtors will have the exclusive right to enforce any and all Causes of Action against any person.  The Debtors may pursue, abandon, settle, or release any or all Causes of Action (other than Causes of Action released under the Plan), as they deem appropriate, without the need to obtain approval or any other or further relief from the Bankruptcy Court.  The Plan Administrator may pursue, abandon, settle, or release any or all such Causes of Action as it deems appropriate, without the need to obtain approval or any other or further relief from the Bankruptcy Court.  The Debtors may, in their sole discretion, offset any such claim held against a person against any payment due such person under the Plan; <u>provided</u>, <u>however</u>, that any claims of the Debtors arising before the Commencement Date shall first be offset against Claims against the Debtors arising before the Commencement Date.

20. <u>Objections to Claims</u>. Pursuant to Section 7.6 of the Plan, any objections to Non-Ephedra Claims shall be served and filed on or before the later of (a) 120 days after the Effective Date and (b) such later date as may be fixed by the Court. If any portion of a Non-Ephedra Claim is a Disputed Claim, no payment or distribution provided under the Plan shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim. Pursuant to Section 5.1 of the Plan, 2002-2004 Ephedra PI Claims and Other Participating Ephedra Claims shall be resolved in accordance with the terms of the Ephedra PI Trust Agreement and the Ephedra PI Claims Resolution Facility.

21. <u>Estimation of Claims</u>. The Plan Administrator may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Non-Ephedra Claim including, without limitation, any Consumer Class Action Claim, pursuant to section 502(c) of the Bankruptcy Code or otherwise regardless of whether the Debtors previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain exclusive jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Non-Ephedra Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Plan Administrator may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another. Non-Ephedra Claims may be estimated and subsequently disallowed, reduced,

compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

22.    <u>Resolution of Disputed Claims</u>.  Within sixty (60) days of a Disputed Non-Ephedra Claim becoming an Allowed Claim, the Plan Administrator shall remit to the holder of such Allowed Claim Cash equal to the amount such holder would have received as of that date under the Plan if the Allowed portion of the Disputed Claim had been an Allowed Claim as of the Effective Date.  To the extent that a Disputed Non-Ephedra Claim is not Allowed or becomes an Allowed Claim in an amount less than the amount of the Disputed Claim set forth in the proof of claim, or as previously estimated by the Bankruptcy Court, the excess of the amount of Cash that would have been distributed to the holder of the Disputed Claim if the Claim had been Allowed in full over the amount of Cash actually distributed on account of such Disputed Claim shall be Available Cash.  Holders of Disputed Non-Ephedra Claims shall not be entitled to interest if such Disputed Claim becomes an Allowed Claim except to the extent such holder is entitled to interest under the Plan as a holder of an Allowed Claim.

23.    <u>Executory Contracts and Unexpired Leases</u>.  On the Effective Date, all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed rejected as of the Effective Date, except for an executory contract or unexpired lease that (i) has been assumed or rejected pursuant to Final Order of the Bankruptcy Court entered prior to the Effective Date or (ii) is the subject of a separate motion to assume or reject filed under section 365 of the Bankruptcy Code by the Debtors prior to the Effective Date.

24.    <u>Rejection Claims Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan</u>.  In the event that the rejection of an executory contract or unexpired lease by any of the Debtors pursuant to the Plan results in damages to the other party

or parties to such contract or lease, a Claim for such damages, if not heretofore evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Debtors, or any property to be distributed under the Plan unless a proof of claim is filed with the Bankruptcy Court and served upon the Plan Administrator on or before the date that is thirty (30) days after notice of the Confirmation Date and such bar date has been provided to the holder of such Claim.

25.     <u>Exemption from Transfer Taxes</u>.  Pursuant to section 1146(c) of the Bankruptcy Code, the assignment or surrender of any lease or sublease, or the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition of assets contemplated by the Plan (including transfers of assets to and by the Ephedra Personal Injury Trust and transfers and assignments of assets to Ideasphere pursuant to the Purchase Agreement) shall not be subject to any stamp, real estate transfer, mortgage recording, sales, use, or other similar tax.

26.     <u>Retention of Jurisdiction</u>.  The Court may properly, and upon the Effective Date shall, retain jurisdiction over the matters arising under, arising out of, or related to the Debtors' chapter 11 cases and the Plan, as set forth in Section 11 of the Plan and pursuant to sections 105(a) and 1142 of the Bankruptcy Code.

27.     <u>Dissolution of Creditors Committee and Ephedra Claimants Committee</u>. Pursuant to Section 12.1 of the Plan, the Creditors Committee and the Ephedra Claimants Committee shall dissolve on the Effective Date, or as soon thereafter as is reasonably practicable to permit the (i) Creditors Committee and the Ephedra Claimants Committee and their respective professionals the right to pursue, review, and object to any applications for compensation and reimbursement of expenses filed in accordance with Section 11.1(h) of the Plan and (ii) Creditors

Committee the right to continue to pursue, or compromise and settle, any litigation commenced by the Creditors Committee on behalf of the Debtors prior to the Effective Date.

28.     <u>Substantial Consummation</u>.  On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

29.     <u>Payment of Statutory Fees</u>.  All fees due and payable pursuant to section 1930 of chapter 123 of title 28 of the United States Code have been or will be paid on the Effective Date or as soon thereafter as is practicable.

30.     <u>Governmental Approvals Not Required</u>.  This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in or contemplated by the Plan, the Disclosure Statement, and any documents, instruments, or agreements, and any amendments or modifications thereto.

31.     <u>Final Fee Applications</u>.  Any and all entities seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date, including any such applications under sections 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code, (i) shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is ninety (90) days after the Effective Date and (ii) shall be paid in full in such amounts as are allowed by this Court (A) five (5) Business Days after the date upon which the order relating to any such Administrative Expense Claim is entered or (B) upon such other terms as may be mutually agreed upon between the holder of such

an Administrative Expense Claims and the Debtors, or, if on or after the Effective Date, the Plan Administrator.

32. <u>Post-Confirmation Date Fees and Expenses of Professionals</u>. The Debtors shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses, incurred after the Confirmation Date, of the professional persons employed by the Debtors, the Ephedra Claimants Committee, and the Creditors Committee in connection with the implementation and consummation of the Plan, the claims reconciliation process, and any other matters as to which such professionals may be engaged. The fees and expenses of such professionals shall be paid within ten (10) Business Days after submission of a detailed invoice therefor. If the Plan Administrator disputes the reasonableness of any such invoice, the Plan Administrator shall timely pay the undisputed portion of such invoice, and the Plan Administrator or the affected professional may submit such dispute to the Bankruptcy Court for a determination of the reasonableness of such invoice.

33. <u>Modification of Plan</u>. Upon reasonable notice to the Creditors Committee and the Ephedra Claimants Committee, the Plan may be amended, modified, or supplemented by the Debtors in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as the Court may otherwise direct. In addition, after the Confirmation Date, so long as such action does not materially adversely affect the treatment of holders of Claims or Equity Interests under the Plan, the Debtors may institute proceedings in the Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan. Prior to the Effective Date, the Debtors may make appropriate technical adjustments and modifications to

the Plan without further order or approval of the Bankruptcy Court, provided that such technical

adjustments and modifications do not adversely affect in a material way the treatment of holders

of Claims or Equity Interests.  Notwithstanding the foregoing, without the consent of the Settling

Third Parties, the Plan may not be amended pursuant to this paragraph if after such amendment,

the Plan would not include the Plan Release and Injunction in Favor of Settling Third Parties as

provided in paragraph 4 of the 2002-2004 Ephedra PI Settlement Agreement.

34.    Severability.  Each term and provision of the Plan, as it may have been

altered or interpreted by the Court, is valid and enforceable pursuant to its terms.

35.    Notice of Entry of Confirmation Order.  On or before the date that is ten

(10) days after entry of this Confirmation Order, the Debtors shall serve by first class mail a

notice of the entry of this Confirmation Order, in substantially the form annexed hereto as

Exhibit "C" (the "Confirmation Notice"), to each of the following at their respective addresses

last known to the Debtors: (i) the Office of the United States Trustee for the Southern District of

New York, (ii) the attorneys for the Creditors' Committee, (iii) the attorneys for the Ephedra

Claimants Committee, (iv) all parties entitled to notice pursuant to the Bankruptcy Court's order

dated September 12, 2003 establishing certain notice procedures in these chapter 11 cases, (v)

the Plaintiffs' Coordinating Counsel listed in the District Court's CMO No. 1, (vi) the

Defendants' Coordinating Counsel listed in the District Court's CMO No. 1, (vii) the Securities

and Exchange Commission and the District Director of the Internal Revenue Service for the

Southern District of New York, (viii) all persons or entities listed in the Debtors' schedules of

assets and liabilities, or any amendments thereto, (ix) any other known holders of Claims against

or Equity Interests in the Debtors, and (x) parties to executory contracts or unexpired leases

rejected pursuant to the Plan.  Such service shall constitute good and sufficient notice pursuant to

Bankruptcy Rule 2002(f)(7) and 2002(i)-(l) of the confirmation of the Plan and entry of this Confirmation Order. The Debtors shall also cause the Confirmation Notice to be published as promptly as practicable after the Effective Date once in each of <u>The Wall Street Journal</u> (National Edition) and <u>The New York Times</u> (National Edition).

36. <u>Conditions to Effective Dates</u>. The Plan shall not become effective unless and until the conditions set forth in Section 9.2 of the Plan have been satisfied or waived pursuant to Section 9.5 of the Plan.

37. <u>Governing Law.</u> Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York without giving effect to the principles of conflict of laws thereof.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

38. <u>Conflicts Between Confirmation Order and Plan</u>. The failure to specifically include any particular provision of the Plan in this Confirmation Order will not diminish the effectiveness of such provision, it being the intent of this Court that the Plan is confirmed in its entirety and incorporated herein by this reference. To the extent of any inconsistency between the provisions of the Plan and this Confirmation Order, the terms and conditions contained in this Confirmation Order shall govern. The provisions of this Confirmation Order are integrated with each other and are nonseverable and mutually dependent unless expressly stated by further order of this Court.

Dated:  New York, New York
        July 26, 2005

                                    /s/ JED S. RAKOFF
                                    _____
                                    THE HONORABLE JED S. RAKOFF
                                    UNITED STATES DISTRICT COURT
                                    SOUTHERN DISTRICT OF NEW YORK


                                    /s/ ROBERT D. DRAIN
                                    _____
                                    THE HONORABLE ROBERT D. DRAIN
                                    UNITED STATES BANKRUPTCY COURT
                                    SOUTHERN DISTRICT OF NEW YORK