1

```
 1                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MASSACHUSETTS
 2


 3

     MICHELE ERKAN, on behalf of   herself,   )
 4   her minor child, and all others
     similarly situated,                       )
 5
                          Plaintiff,           )   Civil Action
 6   vs.                                            No. 12-12052-FDS
                                               )
 7   NEW ENGLAND COMPOUNDING
     PHARMACY, INC., d/b/a NEW ENGLAND          )
 8   COMPOUNDING CENTER, et al.,
                          Defendants.           )
 9   _____


10


11                                             )

     IN RE:  NEW ENGLAND COMPOUNDING
12   PHARMACY, INC. PRODUCTS                    )   Civil Action
     LIABILITY LITIGATION                           No. 13-02419-FDS
13                                             )


14   _____          )


15
                          STATUS CONFERENCE
16


17           BEFORE:  THE HONORABLE F. DENNIS SAYLOR, IV


18


19        John Joseph Moakley United States Courthouse
                      Courtroom No. 2
20                    One Courthouse Way
                      Boston, MA 02210
21
                      March 12, 2013
22                      3:00 p.m.


23           Valerie A. O'Hara, FCRR, RPR
                  Official Court Reporter
24     John Joseph Moakley United States Courthouse
                One Courthouse Way, Room 3204
25                    Boston, MA 02210
                E-mail: vaohara@gmail.com
```

1   APPEARANCES:

2   For The Plaintiffs:

3      Hagens, Berman, Sobol, Shapiro LLP, by THOMAS M. SOBOL, ESQ. and KRISTEN JOHNSON PARKER, ATTORNEY,

4   55 Cambridge Parkway, Suite 301, Cambridge, Massachusetts 02142;

5

6      Ellis & Rapacki LLP, by FREDRIC L. ELLIS, ESQ., 85 Merrimac Street, Suite 500, Boston, Massachusetts 02114;

7      Robinson & Cole, LLP, KIMBERLY A. DOUGHERTY, ATTORNEY, One Boston Place, Suite 2500, Boston,

8   Massachusetts  02108;

9      Andrews Thornton, by ANNE ANDREWS, ATTORNEY, ESQ., 2 Corporate Park, Suite 110, Irvine, California 92606;

10

11      Brown Rudnick, by DAVID J. MOLTON, ESQ., Seven Times Square, New York, New York 10036;

12   For the Defendants:

13      Harris Beach PLLC, by FREDERICK H. FERN, ESQ., 100 Wall Street, New York, New York  10005;

14

15      Hinshaw & Culbertson LLP, by DANIEL E. TRANEN, ESQ., 28 State Street, 24th Floor, Boston, Massachusetts  02109;

16      Tucker & Ellis LLP, by MATTHEW P. MORIARTY, ESQ., 1150 Huntington Building, 925 Euclid Avenue, Cleveland,

17   Ohio  44115-1414;

18      Donoghue, Barrett & Singal, P.C., by MICHELLE R. PEIRCE, ATTORNEY, ESQ., One Beacon Street, Boston,

19   Massachusetts  02108-3106;

20      Michaels, Ward & Rabinovitz LLP, by DAN RABINOVITZ, ESQ., One Beacon Street, Boston, Massachusetts  02108;

21

22      Todd & Weld LLP, by HEIDI A. NADEL, ESQ., 28 State Street, 31st Floor, Boston, Massachusetts 02109;

23      Duane Morris LLP by MICHAEL R. GOTTFRIED, ESQ., 100 High Street, Suite 2400, Boston, Massachusetts

24   02110-1724;

25      Lawson & Weitzen, LLP, by RYAN A. CIPORKIN, ESQ., 88 Black Falcon Avenue, Boston, Massachusetts  02210;

```
 1     APPEARANCES (CONTINUED):
       ALSO PRESENT:
 2
                  Michael Corey, Esq.
 3                Michael D. Galligan, Esq.
                  Joseph Thomas, Esq.
 4                Charles Kaplan, Esq.

 5     VIA PHONE FOR The PLAINTIFFS:
       Colin Jones
 6     Bill Leader
       Phil Bean
 7     Steven Resnick
       Mary Gidaro
 8     J. Stephen King
       Mark Dancer
 9     Daniel Myers
       Frank Federico
10     Chris Cain
       Melvin Wright
11     Robert Jenner
       Patrick Fennell
12     Harry Roth
       Patrick Carter
13     Ed Jazlowiecki
       Marc Lipton
14     Alyson Oliver
       Will Riley
15     Robert Sickels
       Marnie McGoldrick
16     David Gibson
       Elizabeth Cabraser
17     Nolan Nicely, Jr.
       David Holub
18     Robert Randall
       Patrick Montoya
19     Stephanie Arndt
       Yvonne Flaherty
20     Douglas Mulvaney
       Rebecca Blair
21     Terry Dawes
       Douglas Small
22     Mitchell Toups
       William Riley
23     Sharon Houston
       Daniel Clayton
24     Nolan Nicely
       Bryan Bleichner
25     David Rashid
       Ryan Osterholm
```

PROCEEDINGS

1

2          THE CLERK:  Good afternoon.  Court is now in session

3     in the matter of in re:  New England Compounding Pharmacy,

4     Incorporated products liability litigation, MDL 13-MD-02419.

5     Counsel for the plaintiffs, please note your appearance for the

6     record.

7          MS. PARKER:  Good afternoon, your Honor,

8     Kristen Johnson Parker, liaison counsel for the plaintiffs,

9     also counsel for plaintiffs Eric and Cole.

03:06PM 10          MR. SOBOL:  Good afternoon, your Honor, Tom Sobol for

11    plaintiffs, Erkan and Cole.

12          MR. ELLIS:  Fredric Ellis for various clients.

13          MS. DOUGHERTY:  Good afternoon, your Honor,

14    Kim Dougherty for plaintiffs, Green and Smith and other

15    plaintiffs.

16          THE COURT:  All right.

17          THE CLERK:  Counsel for NECP, please note your

18    appearance for the record.

19          MR. FERN:  Good afternoon, your Honor, Frederick Fern

03:07PM 20    from Harris Beach on behalf of NECC.

21          MR. TRANEN:  Daniel Tranen from Hinshaw & Culbertson

22    for NECP.

23          THE CLERK:  And for Ameridose.

24          MR. MORIARTY:  Matthew Moriarty from Tucker & Ellis.

25          THE CLERK:  And defense.

1          MR. RABINOVITZ:  Dan Rabinovitz on behalf of MSM.

2     Good afternoon, your Honor.

3          MR. GOTTFRIED:  Your Honor, Michael Gottfried for

4     Paul Moore of the chapter trustee.

5          MR. MOLTON:  Your Honor, David Molton for the official

6     creditors' committee of NECP.

7          MR. GALLIGAN:  Your Honor, Mike Galligan from

8     Tennessee, plaintiffs' counsel and on the creditors' committee.

9          MS. ANDREWS:  Good afternoon, your Honor, Anne Andrews

02:07PM 10     on behalf of plaintiff Goodman and for the creditors'

11     committee.

12          MR. COREY:  Good afternoon, your Honor, Michael Corey

13     on behalf of the creditors' committee.

14          MR. CIPORKIN:  Good afternoon, your Honor,

15     Ryan Ciporkin on behalf of Alaunus Pharmaceutical.

16          MS. NADEL:  Good afternoon, your Honor, Heidi Nadel

17     from Todd & Weld.  I represent Doug and Carla Conigliaro, and

18     I'm interim liaison counsel for the individual defendants.

19          MS. PEIRCE:  Your Honor, Michelle Peirce.  I don't

02:07PM 20     have a formal appearance in at this point.  I'm anticipating.

21          MR. KAPLAN:  Charles Kaplan, good afternoon, your

22     Honor.

23          THE COURT:  All right.  I'm not going to have everyone

24     on the phone, I think we have at least 30 lawyers on the phone,

25     introduce themselves.  We did have a sign-in sheet.  I would

1   like to move as briskly as we could through this agenda.  I

2   apologize, I know it's hard to bring everyone together.  In

3   addition to presiding over a trial, I'm in the midst of a

4   difficult sentencing.  I have about 30 victims of a massive

5   financial fraud who are here from Vermont, and I'm midstream in

6   a sentencing, so I'd like to be completed by four so we can

7   accomplish that.

8          I'm going to follow the agenda that was circulated

9   beginning with an update on the proceedings in the bankruptcy

03:09PM 10  court.  I'm not sure who to start with, but I think it rather

11  makes sense to start with the trustee, and then I'll hear from

12  counsel for plaintiffs.  Mr. Gottfried.

13         MR. GOTTFRIED:  Thank you, your Honor.  The status of

14  the bankruptcy is that since Judge Boroff granted the

15  attachments, the trustees have all filed answers which are now

16  filed in the bankruptcy court.  Mr. Moore has commenced a

17  series of meetings with the various constituencies and is

18  working towards trying to develop a consensus of a cost

19  effective and fair way forward.  He held several meetings today

03:10PM 20  with respect to that goal.  The answer dates have been extended

21  through I believe it's March 25th.

22         THE COURT:  Who wants to take the lead for the

23  plaintiffs on this issue?  Ms. Parker.

24         MS. PARKER:  I'll do that, thank you.  Since our last

25  status conference, as Mr. Gottfried referenced, the proofs of

1    attachment have been filed in the adversary proceeding pending

2    in the bankruptcy court.  Other than that, there have been no

3    significant developments in the bankruptcy court dockets.  I

4    will note that the trustee has arranged multiple meetings with

5    the creditors' committee as well as other parties that are

6    interested in order to hear from those parties and also to

7    understand their input on how things may best move forward

8    there.  Thank you.

9         THE COURT:  All right.  Does anyone want to speak on

03:10PM 10    behalf of the creditors' committee?

11         MS. ANDREWS:  Yes, your Honor.  This is Anne Andrews,

12    and to my right, Mr. Coan.  We're coshares of the creditors'

13    committee, and our counsel representing the committee is

14    David Molton who will update the Court.

15         MR. MOLTON:  Your Honor, good afternoon, David Molton

16    for the creditors' committee.  I don't have much more to add

17    other than the fact that the committee with the trustee are

18    moving forward with discussions as to procedures, protocols,

19    case management proposals that might expedite the process of

03:11PM 20    getting towards a consensual resolution of matters.

21         Needless to say, that's going to involve the input of

22    the plaintiff's committee as well as any defendants' liaison,

23    and we're looking forward to progressing towards the creation

24    of a permanent PSE and defendant's committee possibly in order

25    to aid us with those discussions so that we can come back to

1    your Honor with some proposals.

2         THE COURT:  All right.  Does anyone else want to be

3    heard on the status of bankruptcy proceedings?  All right.

4    Status of docket, I'm not sure.  Ms. Parker, let me hear from

5    you first.

6         MS. PARKER:  Yes, your Honor, the MDL has so far

7    issued three conditional transfer orders.  Those address, I

8    believe, about 150 cases.  Those are all in various states of

9    making their way to this Court, but that is the universe of

03:12PM 10   cases in front of your Honor.

11        THE COURT:  All right.  Anything else on that topic?

12   All right.  Establishing a plaintiffs' leadership structure, I

13   guess I've read the proposals.  I don't think they're terribly

14   different.  I need to draw something of a balance here, as

15   someone pointed out.

16        I think maybe the letter signed by Mr. Sobol, this is

17   not the typical mass tort case in which there's likely to be a

18   gigantic pot of money at the end of the day, or perhaps be more

19   accurate, there's not likely to be money sufficient to all of

03:13PM 20   the potential claims, but it has otherwise the features of a

21   mass tort case.  It has all the complications that such a case

22   is likely to involve and maybe then some.

23        I have a proposal for a five-person plaintiffs'

24   steering committee and a nine-person steering committee,

25   otherwise they're substantially identical, I think.  Both

1    propose a lead or liaison counsel, a federal, state liaison and

2    various other members who have different constituencies or

3    otherwise fairly represent some group of the plaintiffs, and I

4    think both proposals suggest that whether we need subcommittees

5    and further structure is an issue that can be decided down the

6    road, and there's attention there, I guess, between having

7    things streamlined, keeping costs down, trying to be efficient,

8    the more people we add, the less efficient things get, and then

9    some of the interests on the other side of the house including,

03:14PM 10    I suppose, financing the litigation to the extent that it has

11    to be financed and making sure that everyone who needs to has a

12    seat at the table.

13         For want of a better plan, I'm going to steer a middle

14    path, and I'm going to have a seven-person plaintiffs' steering

15    committee.  I do think it makes sense to have certainly at the

16    beginning an early liaison counsel, but I think someone needs

17    to be at least the first person I look to for a response and

18    the first person that other attorneys can contact.

19         I think it makes sense, putting to one side, whether

03:15PM 20    all of these cases wind up getting consolidated to have a state

21    liaison or a liaison to the state litigation, and it's not

22    clear to me otherwise how this ought to be structured.  I want

23    another round of proposals.  We do have this odd situation in

24    which there appear to be no or at least none that I'm aware of

25    Massachusetts-based plaintiffs.

1          The litigation is concentrated in certain states, at

2     least the last set of numbers I looked at, I think Michigan had

3     the highest number of cases followed by Tennessee and Indiana,

4     and I think Virginia, New Jersey, Florida, some other states

5     had a more on the order of two or three or four dozen.

6          And obviously geographic representation is an issue

7     but not the only issue, and I think it makes sense for a

8     variety of reasons to have at least at the beginning stage of

9     this to have a local Massachusetts lawyer to serve as liaison

03:16PM 10    counsel subject to revision as we go forward.

11          So what I think I would like to do, and I want to hear

12     from counsel as to where we go next, would be to entertain

13     proposals as to how that would be staffed.  I don't think we

14     ought to wait terribly long on this issue.  Perhaps we've

15     already waited too long, but I think my vision here is to

16     provide some period of time in which parties submit proposals.

17          I don't expect that everyone will agree, but to the

18     extent that people can form coalitions, so to speak, I think it

19     would be helpful and at least give me comfort that this process

03:17PM 20    will be manageable.

21          So with that as a lead, Ms. Parker, let me hear your

22     reaction to that.  Again, the idea is a seven-person steering

23     committee.  Go ahead.

24          MS. PARKER:  Thank you, your Honor.  We would request

25     that the Court give us seven days to make those submissions.

We agree that it should be done quickly.  The plaintiffs will certainly speak and attempt to reach a consensus.  In the event that that is not possible, we'll submit multiple proposals to your Honor.

THE COURT:  I think Mr. Ellis, you signed the other principal letter.  Do you want to be heard on this topic?

MR. ELLIS:  Judge, that sounds fine, I think that seven days would be good.

THE COURT:  Anyone else on the plaintiffs' side of the house want to address this issue?  All right.  Anyone else in the courtroom, either trustee, creditors' committee, defendants, anyone want to address this further?  All right.  I don't propose to do anything particularly radical, threatening.  We do need a leadership structure in place, and we do need to move quickly.

What I'll direct then is that further proposals for specific membership or roles on the committee be submitted by close of business on Tuesday, March 19th, 2013.  I won't put any page limit on it except I ask you to be merciful, so to speak, to the district judge.

I don't know whether I'll need anything further.  I'll have to see what you propose, but to jump ahead of myself, I'd like to reconvene if we could in about three weeks or so.  Obviously I'd try to make the decision quickly.  I don't know that I need a formal beauty contest or anything of that nature,

1    but I'll just see what the proposals are.  Next on the agenda

2    are -- I'm sorry, yes, Mr. Sobol.

3         MR. SOBOL:  It occurred to me, your Honor, when you

4    were indicating the time frame that when folks make the

5    proposal or proposals, it probably makes sense to have a

6    proposed order which identifies the suggested powers of the PSE

7    because if you enter an order choosing either one or whatever,

8    people will then know what they're allowed to do or not do

9    because there are some things that people actually want to move

03:19PM 10   forward with.

11        THE COURT:  I agree that makes sense.  I should also

12   emphasize while I'm putting this in place, I'm doing it

13   somewhat blindly.  I don't know how this is going to progress.

14   I don't know what the lead issues are going to be.  You know,

15   it could be that Tennessee law winds up being the most

16   important issue in this case.  This is all subject to revision

17   and refinement as we go forward.  I need to put something in

18   place here, and it needs to be in the form of a formal order

19   that lays out lines of authority, you know, just so we can

03:20PM 20   manage this process as well as we possibly can.

21        I don't know that I need to change anything on the

22   defense side of the house.  I guess Ms. Nadel, or Ms. Peirce,

23   do you have a view as to the individuals whether we need

24   anything different than what we have now?

25        MS. PURSE:  I don't.  I think Ms. Nadel --

1          THE COURT:  Let me ask people to remain seated and

2    speak into the mic. because we have so many people on the

3    phone.

4          MR. NADEL:  Your Honor, I don't think so.  I think if

5    individual counsel want to appear.  They've been coming as

6    well, and we've been coordinating closely.  Unless they have a

7    preference, I'm fine.

8          THE COURT:  All right.  I'll leave that in place.  I

9    may change the term "interim" to "liaison counsel."  At some

03:21PM 10    point you're not interim anymore, but we'll take that a step at

11    a time as well.

12          All right.  The fourth thing on the agenda is

13    coordination with other courts.  What is meant by that,

14    Ms. Parker?

15          MS. PARKER:  Your Honor, I believe your comments

16    earlier indicating that you are likely to appoint a federal,

17    state or state court liaison counsel will address that general

18    topic.

19          THE COURT:  All right.  As I think you know, we have a

03:21PM 20    motion from the trustee that I think would bring everything

21    here, heaven help me, so there may be nothing to coordinate, I

22    don't know.  I don't know how this is going to play out.  I

23    have to coordinate with myself, I guess, but if this doesn't

24    proceed down that path, and I express no opinion at this point,

25    we will have, of course, not only Massachusetts state cases but

1   state cases in other jurisdictions, and certainly a large

2   degree of coordination would be useful, not merely with the

3   lawyers, but with the presiding judges as well which tees up

4   the trustee's motion, and let me jump to my landing point on

5   that, which is I've read it, and I'm speaking of the March 10th

6   motion from the trustee to I guess transfer everything here as

7   related under the related to jurisdiction rubric of Section I

8   think it's 157(b)(5) of the bankruptcy code.

9            My immediate issue is I'd like to have this briefed,

03:22PM 10  and it's not clear to me how I would have it briefed.  Should I

11   allow opposing parties to intervene for purposes of opposing

12   it?  Mr. Gottfried, what do you think makes sense here?

13            MR. GOTTFRIED:  We wanted to discuss this with you.

14            THE COURT:  This is your chance.

15            MR. GOTTFRIED:  I think our thinking was once you

16   established a briefing schedule, we would serve a notice of

17   motion on all of the parties that are identified in our

18   Exhibit A to the proposed order, which would allow them to

19   access the papers on a website.  Obviously we want to have

03:23PM 20  mailing and copying costs be at a minimum to conserve the

21   assets of the estate.  There's some additional cases that we've

22   become aware of even since we filed on Sunday.

23            We'll need to amend list so the Court has the full

24   list as of today, but our thought would be you establish a

25   briefing schedule, we would serve notice of motion on the

1    various parties, they'd have that briefing schedule, they'd be

2    on notice if they objected to appear in front of you and file

3    their position.

4         THE COURT:  And presumably they'd be allowed to

5    intervene.  In other words, let's take a pain clinic in

6    Roanoke, Virginia, for example.  Presumably that party could

7    intervene for the purposes of addressing that motion.

8         MR. GOTTFRIED:  That would make sense for the trustee,

9    your Honor.

03:24PM 10       THE COURT:  I'm making this up here.  What do you

11   think is a reasonable briefing schedule given what's at stake

12   here?  Is 30 days too long?  Are you thinking shorter? Longer?

13   What's your general?

14        MR. GOTTFRIED:  I don't have an issue with 30 days at

15   all.  I think it may make some sense to have your leadership

16   structure for the plaintiffs group in place.  Maybe there can

17   be some benefits if that's the case, and we have people to talk

18   to in addition to the creditors' committee who obviously we are

19   talking to, so I'd be fine with 30 days, your Honor.

03:24PM 20       THE COURT:  Who wants to be heard on the plaintiffs'

21   side of the house here?  Ms. Parker.

22        MS. PARKER:  Thank you, your Honor.

23        THE COURT:  I recognize this was filed I think on

24   Sunday.  I read it last night somewhat at high speed, so I'm

25   not fully informed on the issues obviously.  Ms. Parker.

1          MS. PARKER:  We would agree that the plaintiffs'

2     leadership structure should be imposed so that leadership

3     structure can undertake a reasoned consideration of the motion.

4     It raises a number of issues.  We want to give it some serious

5     thought.  There's a question of notice.  We appreciate that the

6     trustee intends to provide notice to those actions that are

7     listed on his schedules and may amend those schedules.

8          There's another issue, your Honor, which is there are

9     some plaintiffs who have not yet filed but intend to file cases

03:25PM 10     in state courts across the country.  To the extent possible, we

11     would hope that a PSE could reach out and attempt to provide

12     notice to those parties as well.

13          THE COURT:  There's also this issue of do I have

14     related to jurisdiction over a state court claim that has not

15     even been filed yet.  Exactly how does this work mechanically

16     even if I decide it's a good idea?  It's just not clear to me

17     how that's going to happen.

18          MS. PARKER:  It's not clear to me either, your Honor,

19     and that's one of the reasons that I think we're eager to have

03:26PM 20     a plaintiffs' structure in place that can delve into that and

21     think about those issues and reach some conclusions.  We would

22     also say that in terms of process, 30 days would be great if we

23     have a plaintiffs' steering committee picked fairly quickly

24     within that time period.

25          THE COURT:  So thirty days meaning thirty days from

1    March 10th, I guess, takes us to April 9th.  Is that the kind

2    of time frame we're talking about, or is it 30 days from the

3    time I have a plaintiffs' structure in place?

4              MS. PARKER:  I think we'd ask for another week, your

5    Honor.  That's a little aggressive.

6              THE COURT:  Why don't we do this, and I'd be prepared

7    to move this deadline, just to have a working framework.  I'm

8    going to direct first that the bankruptcy trustee submit a

9    proposed form of order on the issues of notice to effective

03:26PM 10   parties and the briefing schedule.  Mr. Gottfried, how quickly

11   do you think you could get that on file?

12             MR. GOTTFRIED:  By the end of the week, if that's okay

13   with the Court.

14             THE COURT:  All right.  By March 15th, then I will set

15   a deadline subject to modification of April 16th for briefs in

16   opposition to or otherwise responsive to the trustee's motion

17   to transfer, and I will attempt to be reasonable as this plays

18   out to make sure that all the effective parties have an

19   adequate opportunity to weigh in on the subject, but at least

03:27PM 20   we'll have a deadline to work with.

21             MR. GOTTFRIED:  Your Honor, one other issue.  I don't

22   want to jump ahead on the agenda, but it would be the trustee's

23   view that the Ameridose motion and the GDC motion probably

24   should be heard with the trustee's motion, and a consolidated

25   briefing schedule makes some sense.

1      THE COURT:  I think that's right.  I think they are

2 intertwined inexplicably.  Counsel for Ameridose and GDC, do

3 you want to be heard on that?  Mr. Moriarty.

4      MR. MORIARTY:  The only thing I would add, your Honor,

5 is that the brief in opposition to remand, which is item 5E on

6 the agenda, we've already opposed it.  I think we filed it

7 today in the individual cases to which those applied.

8      Section 157 is discussed in our opposition to remand

9 in addition to the original reasons for the removal in

03:28PM 10 New Jersey of fraudulent joinder, so I don't know if the

11 trustee wants to bind that one in together because there are

12 two independent reasons for those motions to remand to be

13 denied.

14      THE COURT:  Well, I suppose, again, they're all

15 intertwined.  I mean, I think I've already remanded a couple of

16 your cases, Mr. Ellis, earlier on back when I only had 12

17 cases.  Those long ago days of yesteryear, but, again, all of

18 that would be mooted.  If I did this, I assume, then the remand

19 isn't an issue; if I don't do it, then, you know, if I don't

03:29PM 20 have subject matter jurisdiction, it's got to go back to state

21 court, so I suppose that all of the issues are intertwined and

22 ought to be taken up at the same time.

23      A motion to remand, for example, on lack of diversity

24 or fraudulent joinder it seems to me probably can be put on

25 hold while we sort out the 157 issues, and if I decide not to

        1    bring everything here, then we could take those issues up.

        2              MR. GOTTFRIED:  Your Honor -- sorry.

        3              MS. PARKER:  So --

        4              THE COURT:  Go ahead.

        5              MR. GOTTFRIED:  On behalf of GDC --

        6              THE COURT:  Yes.

        7              MR. GOTTFRIED:  -- and I just in response to the

        8    Court's question agree that our motion can be handled in

        9    conjunction with the trustees.

03:30PM 10              THE COURT:  Okay.  Thank you.  I'm sorry, who started

       11    to speak, Ms. Parker?

       12              MS. PARKER:  Thank you.  I had a point of

       13    clarification, your Honor.

       14              THE COURT:  Yes.

       15              MS. PARKER:  I have spoken with counsel for plaintiffs

       16    who have cases pending in state courts elsewhere.  They have

       17    asked whether your Honor will permit them to be heard in

       18    response to the trustee's motion and has specifically asked the

       19    procedural question of whether or not they would need to retain

03:30PM 20    local counsel in order to do so given that they are not a party

       21    to a proceeding currently before this Court.

       22              THE COURT:  I would hope not, but I'm shooting from

       23    the hip here.  I've never had this situation.

       24              MR. SOBOL:  If I may --

       25              THE COURT:  Mr. Sobol.

1          MR. SOBOL:  -- you could enter an order that would

2    permit a lawyer in good standing in a state jurisdiction for

3    the purposes of the case.

4          THE COURT:  To appear for the purpose of addressing

5    this particular issue?

6          MR. SOBOL:  Right, yes, have a standing order to that

7    effect.

8          THE COURT:  All right.  I think that makes sense.  Let

9    me put on I guess you're still interim liaison counsel,

03:31PM 10  Ms. Parker.  Why don't you submit a proposed draft of such an

11   order also by Friday of this week so that I have that in place

12   as well, I may or may not enter it, but so that is on the

13   agenda as well.

14         MS. PARKER:  Yes, your Honor, thank you.

15         THE COURT:  I'm sorry, counsel.

16         MS. DOUGHERTY:  Yes.

17         THE COURT:  You're Ms. Dougherty; is that right?

18         MS. DOUGHERTY:  Ms. Dougherty, thank you.  Working

19   with some of the folks who are involved in cases brought in the

03:31PM 20  other states involving clinics and hospitals, one of the things

21   that they do have concern about is that the hospitals and

22   clinics themselves also receive notice and that it's not just

23   plaintiffs' counsel getting notice but allowing the defendants

24   that are hospitals and clinics that remain in those cases the

25   opportunity to also weigh in on whether or not the case should

1    be transferred so in fact the notice can also be provided to

2    those hospitals and clinics.

3         THE COURT:  Are they represented by counsel?  I'm not

4    following, in other words, if they're represented by counsel,

5    isn't counsel obligated to work through counsel, not contact

6    the client directly?

7         MS. DOUGHERTY:  Yes.  There are also notice of claims

8    that have been made that in fact certain cases where they may

9    not have counsel yet.  Perhaps Mr. Galligan can answer that

03:32PM 10    question more specifically, but the notice itself, we just

11    wanted to make sure is not just plaintiffs' lawyers but also to

12    the defense lawyers.

13         THE COURT:  Of course, it would be to any affected

14    party.  I didn't mean to -- if I said plaintiffs, I misspoke,

15    it would be any affected party as well.

16         MS. DOUGHERTY:  Mr. Galligan can answer your question,

17    I presume, on whether or not the cases involving notices of

18    claims actually have a lawyer representing them for the

19    defendant.  I'm not sure of that.

03:32PM 20         THE COURT:  Well, I guess as a general proposition

21    that notice to an effective party ought to go to the attorney

22    if there's an attorney of record.  If there isn't an attorney

23    of record, I suppose a notice of claim in the bankrupt

24    proceeding that was not done with the lawyer, then I guess it

25    goes to the party filing the notice of claim.

1        I can't imagine we're going to do this without some

2   imperfections in the process, but the notice ought to be

3   reasonably designed to reach all the affected parties and

4   Mr. Gottfried should at least give some thought about how we

5   would go about doing that.

6        MR. GALLIGAN:  I'm Mr. Galligan from Tennessee that

7   was referred to.

8        THE COURT:  Yes.

9        MR. GALLIGAN:  I can't say that I know about every

03:33PM 10  potential defendant, I'm a plaintiffs' lawyer here, but in

11  Tennessee, where I'm from, virtually all of the potential

12  defendants have attorneys and have them for this case and have

13  had them from the very beginning.

14       THE COURT:  I mean, again, if the wrinkle is --

15       MR. GALLIGAN:  If somebody needs -- if you need who

16  they are, I can provide that for them.

17       THE COURT:  Okay.  The wrinkle, of course, is we've

18  got litigation in, you know, a couple dozen states.  People may

19  have joined some local, you know, sales distributor, I just

03:34PM 20  don't even know what these cases look like or why they're not

21  diverse, for that matter.  I guess by definition, there's

22  someone local involved, so we'll handle it as best we can.

23       MS. ANDREWS:  Your Honor --

24       THE COURT:  Yes.

25       MS. ANDREWS:  -- this is Anne Andrews.  The creditor's

1   committee will be having national meetings, we will, obviously,

2   the committee will be deliberating this and taking the position

3   formally, but in our leadership structure in Tennessee and all

4   across the country and in our national trial association, we

5   have a very good handle on who the counsel are that will be

6   affected by this motion, and what we would propose within our

7   committee structure is to take that opportunity to use the

8   website that's currently in progress, that we can post it on

9   the official website for the creditors' committee and in places

03:34PM 10   where we can direct many interested parties to this notice,

11   though it's not formal, it should be helpful.

12       THE COURT:  Thank you.  I appreciate that.  Having

13   said that, we do need to turn a square corner, and these things

14   have to be my Court Order, you know, to make the form of notice

15   official.  I can't rely just on good intentions.  Yes.

16       MR. THOMAS:  Can I just make a brief comment?

17       THE COURT:  Yes, and identify yourself for the people

18   on the phone.

19       MR. THOMAS:  Joe Thomas for GDC.

03:35PM 20       THE COURT:  Yes.

21       MR. THOMAS:  Very briefly, with regard to the issue

22   about individuals who are claimants.  I was in the position in

23   the Twin Labs litigation of being the person who moved in this

24   instance for the 157(b)(5) transfers, and all we did with

25   regard to claimants is we waited until a subsequent time when

1    there were additional lawsuits, and we simply filed a

2    supplemental motion, and eventually all of counsel in the

3    litigation were counsel to those parties, and we were able to

4    do that very expeditiously in the future so that for the

5    initial moving parties, we could simply do it without regard to

6    the claimants because they would have their opportunity to be

7    heard when the supplemental motions are filed at a later date,

8    with regard to the transfer hearing in the individual cases,

9    and it happens pretty quickly and becomes fairly automatic

03:36PM 10    after a period of time.

11          THE COURT:  I think that was their complaint, it

12    becomes automatic after awhile, and the time to oppose it is

13    now.  Whatever I do, I'm not going to revisit this endlessly.

14          MR. MOLTON:  Your Honor, David Molton for the

15    creditors' committee.

16          THE COURT:  Yes.

17          MR. MOLTON:  I just wanted to join Mr. Thomas, we were

18    both in Twin together, and what happened there was there was an

19    initial transfer motion, and there's other people in this room

03:36PM 20    also who were involved in the federal bankruptcies where this

21    was utilized, and there were supplemental motions as cases were

22    filed, so that issue becomes dealt with by his supplemental

23    notice or motion practice when new cases are filed, so the

24    issue of unfiled cases really isn't one that I don't think is

25    dealt with by or need to be addressed in this plan, the first

1    motion.

2         MR. THOMAS:  And I wasn't suggesting that you don't

3    have an opportunity to be heard, I mean, the same process

4    occurs, it's just simply there are less and less of them as

5    time goes on here.

6         THE COURT:  Okay.  All right.  Item Number 6, master

7    complaint.  Certainly I think it's desirable at some stage of

8    the proceeding to have master complaints in other centralized

9    pleadings.  Ms. Parker, do you have a specific proposal or is

03:37PM 10   this --

11         MS. PARKER:  No, your Honor, I would say that item 6,

12   7 and 8 reference things that may need to be done in the

13   relatively near short term, although some of them will be

14   significantly impacted by both the trustee's motion but also a

15   discussion of whether or not discovery will move forward or be

16   stayed.  We did just sort of want to flag those for the Court's

17   attention.

18         THE COURT:  Okay.  I agree.  Some of these may occur

19   faster than others, but I think they're all things that I may

03:37PM 20   need to pay attention to up front and seguing into a point 9.

21   I guess one of the things I've been saying all along, and I'll

22   continue to say it is there are certain things that no matter

23   what proceeding we're in, whether it's, you know, a jury trial,

24   bankruptcy court, some kind of fund with the special master,

25   we're going to need medical records, product I.D. records to be

1    collected and to have all the releases and so forth, and I

2    don't have any discovery orders in place I don't think, and I

3    think we're a ways from being there, but I do expect that

4    people will get their ducks in line, so to speak, because I

5    always have concerns that some of this evidence becomes harder

6    to find the longer we wait, and it's clearly going to be

7    relevant no matter how these claims are resolved.

8            All right.  Anything on 6, 7, 8, do any of the

9    defendants want to be heard on any of those issues at this

03:39PM 10    point?  Mr. Fern.

11            MR. FERN:  Judge, the only item after 6, 7 and 8, I

12    agree that at some point we will get to a master complaint with

13    a master answer and the like.  That should probably await until

14    a plaintiffs' steering committee is in place, we can negotiate

15    with a smaller group and do it more effectively.

16            THE COURT:  Okay.  Yes, sir.

17            MR. CIPORKIN:  Good afternoon, your Honor, Ryan

18    Ciporkin for Alaunus Pharmaceutical.  I just wanted to join

19    Mr. Fern in his comment in terms of waiting on the master

03:39PM 20    complaint.  As your Honor is aware, Alaunus has filed motions

21    to dismiss in many of the cases, and depending on the result of

22    that motion, Alaunus may or may not be a party to the master

23    complaint.

24            THE COURT:  I certainly understand that.  You know,

25    I'm judging nothing here before its time, but it's my

1   experience that there tend to be peripheral defendants in these

2   types of cases, some of whom are eliminated in 12(b)(6) and

3   others on summary judgment, and certainly it's expensive to

4   keep a party in who ought not to be in, but I don't know that

5   I'm prepared to address those issues just yet either.

6           The status of the various Alaunus motions to dismiss,

7   I know you filed some of them, I think have we just extended

8   the time for response, or remind me where those stand.  I have

9   a stack of them.

03:40PM 10          MR. CIPORKIN:  Your Honor, there was actually I

11  believe that Alaunus has been named in 30 something lawsuits so

12  far, and Alaunus has filed motions to dismiss in each of the

13  one 15 Indiana cases.  Those were all filed before the transfer

14  to Massachusetts as well as the 15 cases in New Jersey.

15  Alaunus filed a consolidated motion to dismiss for all 15 of

16  those cases before the transfer.  Your Honor just allowed a

17  reply brief on the New Jersey motion to dismiss, which I filed

18  in all the individual cases this afternoon.

19          There's I think three cases in Massachusetts that have

03:41PM 20  named Alaunus and Alaunus has also filed motions to dismiss

21  there.  There's one case coming from Maryland where a motion to

22  dismiss will be filed and a few that are coming over from

23  Virginia where motions may be filed in that, but all of them

24  have been filed except for maybe three or four.

25          THE COURT:  All right.  Again, this is something that

1    it may be that the filing of a master complaint may supersede

2    all of this.  A master complaint is in the nature of an amended

3    complaint.

4         I'm not prepared to address this issue just yet,

5    although I do think it ought to be toward the top of the

6    agenda.  Again, it's something I ought to take up relatively

7    quickly, and I don't want anyone to be prejudiced certainly in

8    the short term, and if people want reasonable extensions of

9    time to respond, I'd be prepared to give them.

03:42PM  10        MS. PARKER:  Your Honor, if I may, I believe at the

11   last status conference, you indefinitely extended the time to

12   respond by Alaunus.

13        THE COURT:  All right.  If I didn't do it before, I'm

14   doing it now.  "Indefinite" is a word I don't like to use on

15   things like that, but until the next status conference, and we

16   can renew it each conference until I say otherwise.

17        MR. CIPORKIN:  Okay.  So the deadlines to respond to

18   all the motions to dismiss are extended until the next --

19        THE COURT:  Until at least the next status conference,

03:42PM  20   and remind if I need to keep rolling them over.  If we have a

21   master claim that names Alaunus, we go down one path; if you're

22   not in the master complaint -- it needs to be addressed up

23   front.  I'm not sure at this point that it's a sensible

24   expenditure of my time to work my way through each one of

25   these, a Maryland complaint, an Indiana complaint, a New Jersey

1    complaint and so forth in the short term.  I just want to see

2    how this develops a little bit, then we'll take up the issue.

3              MR. CIPORKIN:  I did have a few more comments about

4    the master complaint.  If your Honor wanted to hear them now, I

5    can address them.

6              THE COURT:  Why don't you hum me a few bars.

7              MR. CIPORKIN:  Well, your Honor, I've looked into the

8    issue with the master complaint, and the majority of courts

9    permit motion practice directed to the master complaint.  There

03:43PM 10    are a minority of jurisdictions out there who have taken the

11    position that a master complaint is merely an administrative

12    tool and that the plaintiffs individually don't adopt the

13    master complaint as their personal complaint and so courts in

14    those minority of jurisdictions have denied motions to dismiss

15    that are directed at the master complaint, and so I just wanted

16    to point that issue out to the Court that if your Honor intends

17    to have a master complaint in place that it would be sensible

18    to allow the plaintiffs and the defendants some feedback on

19    that issue because my position at least would be that the

03:44PM 20    plaintiffs should consent to having the master complaint as

21    being their working -- their personal complaint and also that

22    any master complaint that's filed is without prejudice to the

23    defendants to engage in motion practice with regard to the

24    master complaint.

25              THE COURT:  All right.  I'll confess then, I haven't

1    thought through the issues very carefully.  I guess I'm more

2    familiar with what you call the majority rule, but one way or

3    another, I'll, you know, I'm going to give -- I want to

4    administer this case sensibly in the short term, long term as

5    well, and also give Alaunis a fair opportunity to get out of

6    the litigation whether by 12(b)(6), Rule 56 or if it's not

7    appropriate to keep them in, and I'd like to have some

8    administratively workable way of doing that that's fair to both

9    sides to tee up the issues, and it's not the first thing on my

03:45PM 10    agenda, it's not the last thing, by any means, but right now I

11    think we need to get some other things in place before I can

12    take it up.

13           MR. CIPORKIN:  Thank you, your Honor.

14           THE COURT:  All right.  Anything else that we ought to

15    talk about while we have you here other than the date of the

16    next status conference?  Ms. Parker.  Mr. Ellis.

17           MR. ELLIS:  A quick question, can we go back to the

18    motions to withdraw the reference?

19           THE COURT:  Yes.

03:45PM 20           MR. ELLIS:  Those motions were filed in my cases.

21           THE COURT:  Yes.

22           MR. ELLIS:  And as you noted, they got interdrawn into

23    this motion to transfer all the cases basically.

24           THE COURT:  Yes.

25           MR. ELLIS:  So the motions are basically morphed from

1    a motion to withdraw the reference into basically a 157(b).

2         THE COURT:  I don't think if it's morphed, but they

3    interact with one another.

4         MR. ELLIS:  Can we do just one response on April 16th

5    to those motions, too?

6         THE COURT:  I don't see any reason why not.  Does

7    Ameridose or GDC have a different view?  We can, I suppose.

8    Mr. Moriarty.

9         MR. MORIARTY:  Well, it's already been fully briefed,

03:46PM 10   but I have no objection if Mr. Ellis sees some issue come up in

11   the trustee's subsequent work or some of the individual lawyers

12   who may file briefs that if he needs leave to file something,

13   we can work that out.

14        THE COURT:  Okay.

15        MR. MORIARTY:  I would assume it would go the other

16   way.

17        THE COURT:  Mr., I'm sorry, it's Thomas?

18        MR. THOMAS:  No objection.

19        MR. ELLIS:  Thank you.

03:46PM 20   THE COURT:  Anything from the defendants further that

21   you want to take up?  Okay.  How about -- Mr. Thomas.

22        MR. THOMAS:  Just a point of clarity on the issue of

23   answers.  Are answers stayed for all parties?

24        THE COURT:  Is there any reason not to stay all

25   answers or responsive like Rule 12 pleadings at this stage of

1    the game?  Does anyone see a reason to do things differently?

2    I'm not hearing any response.  Why don't we say that, again,

3    until the next status conference because I don't want to do

4    anything permanent here for fear of creating some unforeseen

5    consequence.  It will be the year 2022, and someone will say do

6    you remember back, you know, you stayed this indefinitely, so

7    let's say that answers and other responsive pleadings in

8    response to a complaint are stayed until the next status

9    conference with the expectation that I'll keep renewing that

03:48PM 10    until we're ready to face the issue head on.

11                 MR. THOMAS:  Thank you.

12                 THE COURT:  All right.  "In the year 2025, if man is

13    still alive, we'll get to the end of this."  The older people

14    are chuckling; the younger people don't know what I'm talking

15    about.

16                 MR. MORIARTY:  You're scaring us, Judge.

17                 THE COURT:  Mr. Gottfried, anything from the

18    Chapter 11 trustee?

19                 MR. GOTTFRIED:  No, I just want to confirm consistent

03:48PM 20    with your prior order that discovery is also stayed until the

21    next status conference?

22                 MR. MOLTON:  Yes.

23                 MR. GOTTFRIED:  Thank you.

24                 MR. MOLTON:  Judge, David Molton for the creditors'

25    committee.

1          THE COURT:  Yes.

2          MR. MOLTON:  One of the things that we're discussing

3     with the trustee as well as in the committee and starting some

4     discussions with some of the defendants about, and hopefully

5     that will gain momentum, is coming up with a case management

6     order that will deal with a lot of these issues, and very

7     similar to one that was appended to the transfer motion, the

8     Twin case management order dealing with the uninsured cases

9     that deals with some other things, too, but that answers some

03:49PM 10     of the questions on how to deal with this while giving the

11     parties an opportunity if they can to seek to come to terms

12     with your Honor's guidance and direction to a possibly global

13     resolution for the benefit of the victims and the creditors,

14     and that's something that will be happening over the next

15     month, and we will be able to report to you more next month on

16     it.

17          THE COURT:  All right.  Let me say I welcome proposals

18     for case management orders on issues large and small.  One of

19     my fears with so many moving parts here is that I'm simply not

03:49PM 20     going to address something that's going to create confusion and

21     expense, if not something worse, so if parties have any

22     reasonable proposals on further case management orders of any

23     kind, I'm happy to entertain them.

24          Obviously to the extent that they're agreed upon or

25     joint or negotiated, so much the better, but it doesn't have to

1    be the global resolution at this point.  It can be something

2    as, you know, minor as what, you know, the caption ought to

3    look like or anything like that.  I'm happy to entertain that.

4         All right.  Anyone else in the courtroom wish to be

5    heard?  All right.  I'm reluctant to open it up to anyone on

6    the phone for fear that we'll talk over each other and won't be

7    able to hear you.  Is there anyone on the phone that feels they

8    need to say something?  Speak now or hold your peace.  All

9    right.  I hear nothing.

03:50PM 10        All right.  Peter, let me look at the calendar.  The

11   first clearly obvious time that I have for the next status

12   conference is Thursday, April 11th at 2:30.  That's longer

13   than -- I wanted to make this about three weeks.  Is that too

14   far out?  I'm in Washington the week of March 25th, and I'm

15   booked pretty solid the week of April 1st.  I do have a jury

16   trial that --

17        MS. ANDREWS:  Your Honor, earlier in the week, is that

18   possible?  There's a national meeting where many of the

19   plaintiffs' counsel and the creditors' committee will be

03:52PM 20   meeting on the 11th through the 14th.  Is the 10th available by

21   any chance?

22        MR. MORIARTY:  While you're pondering that, your

23   Honor, I know you're not going to be able to accommodate every

24   lawyer, but I have a vacation that I cannot change that week.

25        THE COURT:  I'm not going to be able to accommodate

1    every lawyer.  As some of you know, I am perfectly content to

2    have junior people, if that's the right word, cover hearings.

3    I won't be upset if the senior lawyer isn't present.  Of

4    course, whoever covering needs to be up to speed, but why don't

5    we do this.  I can do it on -- I have a revocation here.  Why

6    don't we try to move that, assuming I can move this revocation

7    hearing to the next day, why don't we say we will meet at 2:00.

8    I'm going to be on trial possibly to one, and I've got another

9    commitment at 3:30, so between 2:00 and 3:30 on April 10th.

03:53PM 10         MS. ANDREWS:  Sounds good, your Honor, thank you.

11         THE COURT:  For further status.  And, again, hopefully

12   some of these strands will begin to sort themselves out between

13   now and then.  Thank you for helping me work through this

14   agenda.  Anything further?  Thank you, all, and I'll see you in

15   about four weeks or so.

16         MS. PARKER:  Thank you, your Honor.

17         (Whereupon, the hearing was adjourned at 3:53 p.m.)

18

19

20

21

22

23

24

25

1                         C E R T I F I C A T E

2

3     UNITED STATES DISTRICT COURT )

4     DISTRICT OF MASSACHUSETTS ) ss.

5     CITY OF BOSTON )

6

7

8             I do hereby certify that the foregoing transcript,

9     Pages 1 through 36 inclusive, was recorded by me

10    stenographically at the time and place aforesaid in Civil

11    Action Nos. 12-12052-FDS and No. 12-12066-FDS, ERKAN, COLE, et

12    al. vs. NEW ENGLAND COMPOUNDING.

13    PHARMACY, INC., d/b/a NEW ENGLAND COMPOUNDING CENTER, et al.

14    and thereafter by me reduced to typewriting and is a true and

15    accurate record of the proceedings.

16            Dated this March 14, 2013.

17

18                         s/s Valerie A. O'Hara

19            _____

20               VALERIE A. O'HARA

21               OFFICIAL COURT REPORTER

22

23

24

25