

T 617.482.3700     F 617.482.3003

Thomas M. Sobol
**HAGENS BERMAN SOBOL SHAPIRO LLP**
55 CAMBRIDGE PARKWAY, SUITE 301
CAMBRIDGE, MA  02142
www.hbsslaw.com
**Direct (617) 482-3700**
tom@hbsslaw.com

March 19, 2013

*Via ECF*
Honorable F. Dennis Saylor, IV
United States District Court
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 2300
Boston, Massachusetts 02210

      RE:    *In Re: New England Compounding Pharmacy, Inc.*
              MDL 2419; C.A. No.: 13-md-2419-FDS

Dear Judge Saylor:

      This letter responds to this Court's March 12, 2013 request that plaintiffs' counsel submit proposals either outlining suggested plaintiffs' steering committee slates or expressing interest in membership or specific roles on the plaintiffs' steering committee in *In Re New England Compounding Company Products Liability Litigation*, MDL No. 2419.

      There are many, highly qualified plaintiffs' counsel; many of them wish to put their hat in the ring.  Presenting a single slate was impracticable, and so multiple proposed slates or individual applications may be received.  Having so many qualified persons vying for a PSC position bodes well for the victims.  To avoid a marketing title, the slate proposed here is called simply "the slate."

**The Proposed Slate**

      We propose that the Court appoint the following seven firms, through the attorneys identified below, to serve on the plaintiffs' steering committee.  A proposed order identifying the slate and describing their powers and responsibilities is attached as Exhibit A.  A map showing the number of victims represented by the proposed PSC, grouped by state, is attached as Exhibit B.

March 19, 2013
Page 2

*Lead and Liaison Counsel*

Thomas M. Sobol
(with Kristen Johnson Parker as his alternate)
HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Phone: (617) 482-3700
Fax: (617) 482-3003
tom@hbsslaw.com
kristenjp@hbsslaw.com

*Federal/State Liaison*

Mark P. Chalos
(with Elizabeth J. Cabraser as his alternate)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
150 Fourth Avenue, North
Suite 1650
Nashville, TN 37219
Phone: (615) 313.9000
Fax: (615) 313.9965
mchalos@lchb.com
ecabraser@lchb.com

*Other Members of the Plaintiffs' Steering Committee*

Marc E. Lipton
LIPTON LAW
18930 W. 10 Mile Road
Southfield, MI 48075
Phone: (248) 557-1688
Fax: (248) 557-6344
marc@liptonlawcenter.com

Kim Dougherty
JANET, JENNER & SUGGS, LLC
75 Arlington St.
Suite 500
Boston, MA 02116
Phone: (617) 933-1265
kdougherty@myadvocates.com

March 19, 2013
Page 3

Patrick T. Fennell
CRANDALL & KATT
366 Elm Avenue, S.W.
Roanoke, Virginia 24016
Phone:  (540) 342-2000
Fax: (540) 400-0616
pfennell@crandalllaw.com

J. Gerard Stranch, IV
BRANSTETTER, STRANCH &
JENNINGS PLLC
227 Second Avenue North
Nashville, TN  37201
Phone: (615) 254-8801
Fax: (615) 255-5419
gerards@branstetterlaw.com

Mark Zamora
ZAMORA FIRM
6 Concourse Parkway, 22nd Floor
Atlanta, GA 30328
Phone: (404) 451-7781
Fax: (404) 506-9223
mark@markzamora.com

To support this proposal, we first set out the legal standard for this Court's
consideration.  We then describe the individuals' and firms' qualifications, our general
philosophy for this unique case, and why we believe it is in the best interests of all
victims that this slate be designated to lead plaintiff interests in this important MDL.

**Legal Standard and Considerations**

According to the Manual for Complex Litigation, "[f]ew decisions by the court in
complex litigation are as difficult and sensitive as the appointment of designated
counsel."[1]  The Manual describes the role of liaison counsel as an administrative one,
charging them with responsibility for communications between the court and other
counsel, convening meetings of counsel, and advising parties of developments in the
case.[2]  Lead counsel is charged with formulating (in consultation with other counsel) and
presenting positions on substantive and procedural issues.[3]  Steering committees are most

---

[1] MANUAL FOR COMPLEX LITIGATION at §10.224 (Court's responsibilities re role of counsel) (West, 2012).

[2] *Id.* at §10.221 (Organizational Structures).

[3] *Id.*

March 19, 2013
Page 4

commonly needed when group members' interests and positions are sufficiently dissimilar to justify giving them representations in decision making.[4]  And lead counsel may task other committees with preparing briefs or conducting discovery, but should try to avoid unnecessary duplication of efforts and control fees and expenses.[5]

The Manual identifies several factors the court should assess, including:

- The attorneys' resources, commitment, and qualifications to accomplish the assigned tasks;

- Whether designated counsel fairly represent the various interests in the litigation – where diverse interests exist among the parties, the court may designate a committee of counsel representing different interests;

- Whether there are clear and satisfactory guidelines for compensation and reimbursement, and whether the arrangements for coordination among counsel are fair, reasonable, and efficient;[6]

Given the realities of this case, the Court should also consider:

- How the proposed leadership slate intends to accomplish the goal of getting the most recovery for the victims with the least expense and the shortest amount of time?

- Does the proposed leadership team have a plan to effectively and efficiently empower all plaintiffs' counsel who are interested in tackling the real work of this MDL?

- Does counsel have a view as to how to manage the relationships between this district court, the state courts, and the bankruptcy court?

- How does a potential leadership slate propose to be compensated for their efforts?  Are they contemplating that all plaintiffs who eventually recover will pay a common benefit fee?  Might they contemplate reductions in contingency fees down the line?

---

[4] *Id.*

[5] *Id.*

[6] *Id.*

March 19, 2013
Page 5

- Does the proposed leadership slate represent clients with geographic diversity and clients with varying injuries from the different recalled products?

## Our Qualifications

The following briefly describes each attorney's qualifications and experience with the NECP litigation, as well as their firm's relevant experience. Additional information about each attorney and firm are set out in the attached declarations, Exhibits C - I. We realize the descriptions are immodest.[7]

*Thomas M. Sobol – Lead/Liaison.* Thomas M. Sobol is the managing partner of the Boston office of Hagens Berman Sobol Shapiro LLP. Practicing in Massachusetts and nationwide for over 30 years, Mr. Sobol has recovered over $14 billion for his individual and institutional clients. He was lead outside counsel and Special Assistant Attorney General for the Commonwealth in the largest single civil recovery in Massachusetts's history, $8.3 billion for the state. He and his firm have repeatedly taken on the pharmaceutical industry, challenging fraudulent industry-wide price setting for prescription pharmaceuticals in *In re Average Wholesale Price Litig.* MDL No. 1456 (D. Mass., Chief Judge Saris, multiple multi-million dollar recoveries) and filed and obtaining sweeping industry reform in *New England Carpenters Health Benefits Fund et al v. First DataBank, Inc. and McKesson Corp.*, 05-cv-11148 (D. Mass., Chief Judge Saris, $350 million recovery). He has been appointed to leadership positions by justices of this Court in numerous pharmaceutical MDLs, including *In Re Relafen Antitrust Litig.* No. 1:01-cv-12239 (D. Mass., Judge Young, $75 million recovery), *In re Nexium (Esomeprezole) Antitrust Litig.,* MDL No. 2409 (D. Mass., Judge Young, pending), *In re Lupron Marketing and Sales Practices Litig.,* No. 01-cv-10816 (D. Mass., Judge Stearns, $150 million recovery) and *In re Prograf Antitrust Litig.*, MDL No. 2242 (Judge Zobel; pending). Mr. Sobol spent the first 17 years of his litigation practice at Brown Rudnick LLP, handling numerous complex civil and criminal matters in state and federal court, gaining wide experience in the broad range of legal topics at issue here, including the intersection of civil and criminal proceedings, bankruptcy matters and trial, insurance coverage, and the need for an open mind. Mr. Sobol has been court-appointed lead

---

[7] Accomplished Boston trial lawyers Max Stern once observed that, having done some research, he learned he had accomplished many times something that apparently no other lawyers of any stripe in the country had ever achieved. Having gone on the Internet and viewed other lawyers' websites, he learned that he was the only trial lawyer in the country who had ever lost a case.

March 19, 2013
Page 6

counsel in numerous matters and is regularly named lead or co-lead counsel in pharmaceutical MDLs.

Kristen Johnson Parker, who will from time to time act as Mr. Sobol's alternate, was crucial to achieving a $150 million settlement in *In re Flonase Antitrust Litig.*, leading two evidentiary hearings and presenting the testimony of former FDA commissioner David A. Kessler.  Ms. Parker was an integral part of the trial team in *In re Neurontin Marketing and Sales Practices Litigation* (tried before Judge Saris), where the jury returned a RICO verdict of $142 million (after automatic trebling) following a four-and-a-half week trial.  She currently plays a critical role in several other complex and major federal litigations, including *In re Nexium*, (pending before Judge Young), *In re Effexor*, and *In re Lipitor*.[8]

Mr. Sobol and Ms. Parker have the backing of their firm, HBSS.  HBSS is a national leader in the plaintiffs' practice.  Here, HBSS drafted and filed the first complaint against NECP in federal court in Massachusetts, filed the first response to the MDL petition, asked the JPML to expedite the motion and hear it at the earliest opportunity (citing a looming threat of bankruptcy), and argued for transfer of all federal actions against NECP to the District of Massachusetts.  HBSS also briefed, argued, and won the first motion seeking a preliminary injunction and attachment against NECP and its principals early on.  This Court preliminarily enjoined the debtor from paying dividends, paying bonuses to officers or employees, or making any extraordinary transfers of cash or assets outside of the ordinary course of business – to the benefit of all plaintiffs.  Judge Saylor also granted a $5 million attachment on the physical property of NECP, held jointly by plaintiffs' Erkan and Cole.[9]  HBSS, through Ms. Parker, currently serves as interim liaison counsel in this matter since last year and, through Mr. Sobol, as a member of the creditors' committee (by proxy).

*Mark P. Chalos – Federal/State Liaison.*   Mark P. Chalos is a partner in the Nashville, Tennessee office of the national law firm Lieff, Cabraser, Heimann and Bernstein (LCHB). Mr. Chalos currently serves as Co-Lead MDL Counsel in *In re Whirlpool Front Loading Washer Products Liability Litigation*, MDL 2001 (N.D. Ohio)

---

[8] *In re Flonase Antitrust Litig.*, 08-cv-3149 (E.D. Pa.); *In re Nexium Antitrust Litig.*, MDL No. 2409 (D. Mass.) (Young, J.); *In re Effexor XR Antitrust Litig.*, 11-cv-05479 (D.N.J.); *In re Lipitor Antitrust Litig.*, MDL No. 2332 (D.N.J.); *In re Neurontin Marketing and Sales Practices Litigation*, MDL No. 1629 (D. Mass.) (Saris, J.).

[9] *Erkan v. New England Compounding Pharmacy, Inc.*, 12-cv-12052, Dkt. no. 38 (D. Mass. Nov. 21, 2012).

March 19, 2013
Page 7

and on the Plaintiffs Steering Committee, Co-Chair Plaintiffs Expert Committee, *In re Navistar Diesel Engine Product Liability Litigation*, MDL No. 2223 (N.D. Ill).  He has also served in various leadership roles in a number of other federal and state centralized litigations and has tried cases in federal and state courts.

Elizabeth Cabraser is a founding partner of LCHB and will be substantially involved in this MDL. Ms. Cabraser's first MDL was in 1980 and she has since served as lead counsel, as class counsel, and on plaintiffs' executive committees in approximately 50 MDLs and coordinated or consolidated proceedings.[10]  Wendy Fleishman, an LCHB partner in its New York office, is expected to serve in this MDL in a leadership capacity on the Law and Briefing Committee.  Ms. Fleishman has extensive experience in leadership roles in many MDLs.

LCHB represents numerous clients impacted by the deadly meningitis outbreak,[11] including Tennessee residents who have been exposed, sickened, and/or died.  Mark Chalos has organized and led, through the state trial lawyer organization, a group of leading Tennessee lawyers handling meningitis cases.  He has made educational presentations on the meningitis outbreak at meetings of national and state trial lawyer groups.  In addition to participating in the plaintiffs' team investigating the NECP facility, LCHB has also been among the primary firms conducting the ongoing factual

---

[10] These include lead, liaison, or PSC roles in the following cases:  *In re Cordis Pacemaker Product Liability Litigation*, MDL No. 850 (S.D. Ohio); *In re Silicone Gel Breast Implants Products Liability Litigation*, MDL No. 926 (N.D. Ala.); *In re the Exxon Valdez*, Case No. A89-095 Civil (Consolidated) (D. Alaska); *In re Copley Pharmaceutical, Inc. "Albuterol" Products Liability Litigation*, MDL No. 1013 (D. Wyo.); *Castano v. American Tobacco*, No. 94-1044 (E.D. La.); *In re Diet Drugs Products Liability Litigation*, MDL No. 1203 (E.D. Pa.); *In re Bridgestone/Firestone Tires Products Liability Litigation*, MDL No. 1371 (S.D. Ind*.); In re: Zonolite Attic Insulation Litigation*, MDL No. 1376 (D. Mass.); *In re Tri-State Crematory Litigation*, MDL No. 1467 (N.D. Ga.); *In re Bextra/Celebrex Products Liability Litigation*, MDL No. 1699 (N.D.Ca.); *In re Vioxx Products Liability Litigation*, MDL No. 1657 (E.D.La.); *In re Guidant Defibrillators Products Liability Litigation*, MDL No. 1708 (D. Minn.); *In re Neurontin Marketing and Sales Practices Litigation*, No. 04-CV-10739-PBS (D. Mass.); *In Re DeepWater Horizon Oil Spill Litigation*, MDL 2179 (ED LA); *In re Chase "Check Loan" Contract Litigation*, MDL 2032 (N.D. CA); *In re Bank of New York Mellon Corp. Foreign Exchange Transaction Litigation*, MDL 2335 (S.D.N.Y.) and *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, And Products Liability Litigation*, MDL 2151 (C.D. Ca.). Ms. Cabraser's experience includes the negotiation, approval and implementation of class action and non-class aggregate settlements, including those involving limited fund and multiple jurisdiction scenarios, in mass accident, mass injury, financial, and consumer litigations.

[11] LCHB is counsel in the following cases in this MDL:  *Wray v. NECP*, case no. 1:13-cv-10450-FDS (Tennessee residents) and *McDow v. NECP, et al*, case no. 1:12-cv-12112-FDS (Illinois and New York residents making individual and nationwide class allegations).

March 19, 2013
Page 8

investigation into the role of Tennessee clinics in causing or contributing to the outbreak, including by obtaining documents from state government investigators and information from a variety of other sources.  LCHB has also identified and engaged leading national experts on some of the key scientific, medical, and regulatory issues in these cases.

LCHB is able to devote the necessary resources to prosecute this litigation.  LCHB is an AV-rated 60-lawyer firm with a support staff of over 200, including investigators, statisticians, accountants and litigation support specialists.  LCHB maintains offices in San Francisco, New York, and Nashville that will provide a depth of resources always available, across the country, in support of this litigation.  The American Lawyer recently called LCHB "one of the nation's premier plaintiff firms."  Every year since 2003, The National Law Journal has selected LCHB as one of the top plaintiffs' law firms in the nation.  LCHB is comprised of several key litigation practice groups, including personal injury torts, securities and financial fraud; antitrust; and class action consumer claims. For the past 32 years, Lieff Cabraser has represented plaintiffs exclusively, with consistent success, in an array of substantive areas, serving in leadership roles in class actions, mass torts, and other complex cases, in federal and state courts across the county. The firm's leadership in tort, consumer, investment and human rights litigation has generated verdicts and settlements of over $62 billion, including Tobacco litigation for California cities and counties ($12.5 billion) and the Commonwealth of Massachusetts ($7.9 billion); reparations to Holocaust victims and their survivors ($6.2 billion recovered from Nazi collaborators); $4.2 billion in recoveries for women injured by defective silicone gel breast implants; over $1.3 billion to homeowners across America to repair and replace defective pipes and exterior siding; $1.225 billion in the National Gas Antitrust cases; over $1 billion to victims of failed implants in the Sulzer Hip and Knee Implants Litigation, MDL No. 1401 (N.D. Ohio); and over $700 million to uninsured Californians overcharged for healthcare by major private hospitals.

*Marc E. Lipton.*  Marc Lipton, based outside Detroit, Michigan, is managing partner of Lipton Law, a seven-attorney firm with a 40-year history of representing individuals in personal injury litigation. Mr. Lipton joined the firm following his graduation from Harvard Law School (J.D., 1990). Mr. Lipton focuses his practice on complex catastrophic and wrongful death cases, including product liability and medical malpractice cases involving difficult issues of medical causation. He has been admitted to practice *pro hac vice* across the country, including Ohio, Iowa, Florida, South Carolina, Tennessee and California. Mr. Lipton is the current President of the Michigan Association for Justice, the State's 1600 member organization of Plaintiff's personal injury attorneys.

March 19, 2013
Page 9

Mr. Lipton currently represents nearly 70 victims of the fungal meningitis outbreak, as much as any other law office in the State, covering all four Michigan clinics that received the contaminated product from NECP. (He also represents the sole victim from Idaho, as well as a client from Ohio).  Mr. Lipton's firm has been involved in the NECP litigation from its inception.  *Bansale v. NECP* was the first case against NECP filed in Michigan, and is one of the original cases consolidated by the JPML into this MDL, upon Bansale's motion to create one mass tort action.  As one of the first filers, Lipton participated in the early stages of the litigation, including contributing to the inspection of the premises ordered by this Court, participating in conference calls to discuss strategy, and evaluating documents produced prior to the Bankruptcy petition. He has lectured both nationally and in Michigan on this matter.  After NECP filed its Bankruptcy petition, the US District Attorney appointed Mr. Lipton as Brenda Bansale's representative to the Unsecured Creditors Committee.

Mr. Lipton's request for a position on the PSC is supported by most of the major Michigan Law firms, representing the majority of victims of this disaster in the State. This includes the Fieger Law firm (also a member of the Unsecured Creditors Committee and with over 70 clients), Sommers Schwartz, PC (a major Plaintiff's personal injury firm with mass tort experience of its own and with more than 20 clients in Michigan and Ohio); and other firms representing many more.[12]

Finally, Mr. Lipton brings the capacity to perform all necessary work as part of a PSC.  In addition to the resources of his firm, he shares a co-counsel arrangement with the Miller Law Firm, one of Michigan's top class action firms.  Its founding member, Powell Miller (Georgetown Univ, B.A., 1983; Wayne State Law School, J.D., 1986), has extensive experience in complex class action and mass tort litigation.  For the past several years, Mr. Miller has served as Co-Chair of the American Bar Association MDL and Class Procedures Subcommittee.  His firm has 26 attorneys, and was selected by the State of Michigan to act as co-lead counsel in the *In re AIG 2008 Securities Litigation* (SD New York) (Case No. 08-cv-04772).  Miller Law has significant experience supporting complex document and deposition-laden discovery, and has more than adequate capacity to effectively assist in this case.

---

[12] Letters in support are attached to Lipton's Declaration in Support, Exhibit E.

March 19, 2013
Page 10

*Kim Dougherty.* Kim Dougherty is a trial attorney in the law firm of Janet, Jenner & Suggs, LLC (JJS) and heads the firm's office located in Boston. JJS has successfully represented catastrophically injured people for over 30 years. Ms. Dougherty has nearly 10 years of experience representing consumers nation-wide against the manufacturers of dangerous pharmaceuticals and defective medical devices. She has tried multiple cases to verdict and she and her firm have resolved numerous mass tort litigations resulting in multi-million dollar settlements for their injured clients. Ms. Dougherty's firm represents over 70 individuals sickened or that have died as a result of this tragedy, spanning nearly every one of the 20 state affected. Ms. Dougherty has taken an active role in this litigation, including drafting pleadings and arguing multiple issues related to preservation orders and inspection of NECP's facility. Along with co-counsel Mark Zamora, she took a lead role in drafting and negotiating a protocol for the inspection with NECP and the government and engaging and preparing multiple experts for the inspection. She also managed the inspection on three of the four days. She and Mr. Zamora continue to have the primary role of working with the liability experts on their findings and reports.

Ms. Dougherty serves on the Executive Committee and Plaintiffs' Steering Committee (PSC) for Boston Scientific Transvaginal Mesh (TVM) cases in Middlesex County, Massachusetts. She was selected as Co-Liaison/Lead Counsel for litigation against the Patient Education Monograph Defendants. She serves on the Board of Massachusetts Academy of Trial Attorneys and Co-Chair of its Women's Caucus. She is also the incoming Vice President of Operations of the Massachusetts Women's Bar Association. She has been honored as NTLA's Top 40 Under 40 and been repeatedly named a Rising Star by Super Lawyers. Ms. Dougherty has repeatedly written and lectured to a national audience on mass tort litigation, including NECP, transvaginal mesh and generic drug litigation.

Members of her firm also have significant experience serving in leadership positions in many mass tort litigations, including: *In re Toning Shoes Product Liability Litigation* (MDL 161) (Co-Lead Counsel); *In Re Prempro Products Liability Litigation* (MDL 1507) (PSC); *In Re Latex Glove Product Liability Litigation* (MDL 1148) (PSC); Co-Lead Counsel of litigation involving infusion pain pump cases across the country (where no MDL exists); and Co-Lead Counsel in several class actions, including multiple against Maryland's leading health maintenance organizations. She and members of her firm have also taken active roles in the discovery, expert and science committees for litigations involving Pain Pump, Rezulin, Baycol, Yaz/Yasmin, Prempro, Reglan, TVM and other mass tort litigation. Ms. Dougherty and JSS are committed to zealously

March 19, 2013
Page 11

representing their clients who have suffered as a result of this unnecessary tragedy and
have the experience, energy and resources needed to effectuate a positive resolution.

  *Patrick T. Fennell.*  Patrick T. Fennell is licensed to practice law in Virginia and
West Virginia, and is lead counsel in Crandall & Katt's Mass Tort Litigation Group.  Mr.
Fennell specializes in representing injured persons in claims involving negligence,
wrongful death, pharmaceutical products liability, medical malpractice, mass tort and
other complex theories of liability.  He has tried hundreds of cases in Virginia's state
courts and in U.S. District and Bankruptcy Courts, and has won numerous multi-million
dollar verdicts.  Mr. Fennell currently represents 40 individuals who have been injured by
contaminated injections produced by New England Compounding Pharmacy, and has
participated with other plaintiffs' counsel in planning conferences aimed at obtaining the
best results for all plaintiffs.  Mr. Fennell has retained the services of, and engaged in
extensive consultation with, three highly qualified experts in the fields of compounding
pharmacy and pharmacological treatment of fungal infections, in order to aggressively
identify and pursue alternative theories of liability against NECP and other defendants.

  Daniel L. Crandall, who has been practicing law in the Commonwealth of Virginia
for over 30 years, established the law firm Crandall & Katt.  Crandall & Katt is one of the
leading personal injury firms in Virginia.  Its eight attorneys and over 40 staff personnel
have decades of experience representing thousands of injured individuals and people
grieving the death of a loved one.  Crandall & Katt's Mass Tort Litigation Group is
currently representing hundreds of plaintiffs in claims involving defective hip and knee
implants, defective transvaginal mesh implants, and unreasonably dangerous drugs
including Accutane, Actos, several of the latest generation contraception medications,
and several SSRI's.

  *J. Gerard Stranch, IV.*  Gerard Stranch is a senior partner at the law firm of
Branstetter, Stranch, and Jennings located in Nashville, Tennessee.  He is the head of the
Firm's Class Action, Complex Litigation and Mass Tort Practice Group, and is currently
the General Counsel for the Tennessee Democratic Party.  Additionally, he is an adjunct
professor at the Vanderbilt University School of Law.  He is a graduate of the Vanderbilt
University School of Law.  Mr. Stranch currently represents over 60 individuals who
have been injured by contaminated products manufactured by the NECP, and has
participated with other counsel in planning conferences and has performed significant
factual investigations into all of the relevant dispensaries in Tennessee, which helped
significantly in planning the inspection of the NECP facility in December of 2012.  Mr.
Stranch has also spoken at a conference attended by numerous members of the plaintiffs'

bar related to the status of the meningitis litigation in the state of Tennessee and provided updates on Tennessee law that would affect the filing of these cases for those victims located in the state of Tennessee.

Cecil Branstetter established the law firm of Branstetter, Stranch, and Jennings in 1952. President Obama nominated the firm's former managing partner, Jane Branstetter Stranch, to the United States Court of Appeals for the 6th Circuit, where she now serves as a judge following her recent confirmation by the United States Senate. The firm has significant experience over a diverse practice base including areas of complex litigation involving antirust, securities and derivative litigation, and mass torts. Its most recent mass tort experience involves individual plaintiffs injured by transvaginal mesh patches. These cases have been consolidated into six MDLs, five now pending before the Chief Judge in the Southern District of West Virginia, and one pending in the Middle District of Georgia.

*Mark Zamora.* Mark Zamora is an attorney from Atlanta, Georgia. The son of Cuban immigrants, he has practiced law for more than fifteen years in Georgia and Florida. Mr. Zamora has been admitted to practice law pro hac vice in the State Courts of Philadelphia and California; he is admitted to practice pro hac in the Eastern District of Kentucky, the Northern District of California, and the Eastern District of Pennsylvania, among others.

He has direct and relevant experience in litigation involving Defendants with limited funds to compensate injured victims. Mr. Zamora served a lead trial counsel in a consolidated state court litigation involving a recalled dietary supplement, in *Gurley Adv. Total Body Essential Nutrition, Inc. et. al.* from 2008 until 2012. He and his firm directed and conducted more than sixty depositions, prepared and served all master discovery upon multiple defendants, coordinated all status conferences during the four year period that the litigation was active, served as liaison counsel regarding cases filed by other attorneys, and served as trial counsel in two jury trials. . Thereafter, he coordinated global resolution of all cases as to all Defendants, took the lead in negotiating the terms of settlement.

Mr. Zamora currently serves on the Plaintiffs' Steering Committee in the *In Re: Hydroxycut Litigation*, an MDL pending in San Diego, California. The Hydroxycut litigation is also one with limited insurance coverage, multiple defendants, and more than 500 consumers alleging severe injuries. He is the chair of that litigation's Discovery Committee. During the course of the litigation, Mr. Zamora took the lead in preparing

March 19, 2013
Page 13

and service all master discovery as to all Defendants, and he was the lead examiner in significant depositions in the matter.  The litigation is in its final stages, with Court approval of settlement underway, and Mr. Zamora has a lead role in all aspects of the settlement.

Mr. Zamora is lead counsel with Kim Dougherty in the *Chad Green* case before this Court.  Mr. Zamora has taken a lead role in the filed papers regarding the inspection request granted by Magistrate Boal, and in the retention of all experts hired for the inspection.  He has also worked with other counsel to prepare experts fact-findings in the pending litigation.

## Some General Remarks

We believe the slate meets the challenges of this case, a litigation that has features of both a bankruptcy and a mass tort MDL.

The slate is geographically diverse.  The committee includes attorneys who represent dozens of clients in nearly every one of the 23 states that received contaminated vials of NECP-compounded solutions (with a focus on victims from some of the most ravaged states, including Michigan, Tennessee, Indiana, Virginia, New Jersey, Florida, and Maryland) who have suffered catastrophic injuries and died from those steroid, cardiaplegia, and ophthalmic solutions.[13]

The slate has a lead counsel from Massachusetts with a solid MDL record, and has a second PSC member from Massachusetts to provide the ability to be on the ground here, without needing to incur travel expenses and the like.

The slate members have already demonstrated their pro-active contributions. They filed the first case in this Court, realized the need to MDL treatment here and filed that application, sought and obtained the first provisional relief, conducted the on-sight inspections, have developed liability and science issues, and have already provided fact and documentary information to the debtor's trustee.

---

[13] *See* Exhibit 1, showing the number of clients the proposed leadership represents in each of the states that received the recalled vials of contaminated NECP products.

March 19, 2013
Page 14

The slate has the necessary, renaissance background.  This case involves the intersections of mass torts, bankruptcy, parallel criminal investigations and proceedings, insurance and equitable allocation laws.  Each slate member adds to the team's group ability to handle these inter-disciplinary matters, and itself is steered by lead-liaison counsel knowledgeable in these areas.

The slate can coordinate with the creditors' committee, as two PSC members (Mr. Sobol and Mr. Lipton) serve, through proxy, on that nine-member committee.  Communications between the creditor and steering committees would therefore be seamless.

The slate enjoys wide support from the plaintiffs' bar.  Each of the firms that appear on this letter represents victims of this tragedy and back this proposed slate.

The slate is not exclusive.  We intend, in an efficient way, to enfranchise all qualified firms to work with us where appropriate regardless whether they have joined this slate or made some other proposal.

The slate is prepared to make real, hard, choices to reign in costs.

Shooting stars will not distract us.  We will pursue claims against all defendants in a reasoned, methodical, and diligent way – always with an eye towards the bottom line.

The slate recognizes that the notoriety of the case, and its complex nature (involving defendants that may be liable to some, but not all, claimants) requires sensitivity to process and the need to ensure the reality and appearance of fair process.  The slate is not trying to gain "control" of this litigation in order to push an agenda.  We want to hear from everyone, and have very open minds about what is the most prudent course for this litigation to take.

The slate will continue to work collaboratively with the creditors' committee and the debtor's trustee to move the bankruptcy and the MDL forward synchronously and successfully.

The slate has a plan to create working groups for the efficient tackling all aspects of litigation when, as *but only if, needed*.  It seeks to enfranchise plaintiffs' counsel, so that the work (and risk) can be shared.  It also imposes a strong leadership structure to oversee and lead this litigation to the best, possible conclusion.

March 19, 2013
Page 15

## The Slate's Philosophy

The proposed Plaintiffs' Steering Committee's overall objective is to get the most recovery for the victims with the least expense and in the shortest amount of time. The slate believes it is critical to understand that this may well be a very limited fund situation and that this is the last case that should suffer from over-lawyering. But this MDL does need an efficient and effective team that understands the slim resources available and presents a plan to harness those resources in an efficient manner.

The team proposes that plaintiffs' organize themselves into the eleven "working groups."

(i)      *Michigan specific defendants group.* This group would be charged with handling all matters relating to developing, understanding and litigating cases against defendants that are specific to Michigan (the clinics and physicians). They would be required to develop the facts, the law, the claims, the defenses; to learn and understand the insurance coverage for those defendants, and to assess other recoverable assets (if any); to obtain and review and summarize the evidence; to conduct discovery (when necessary and if required) against those defendants; to write and argue the motions; to make recommendations regarding the appropriate locus for litigation and/or trials; to submit periodic reports to the PSC (and possibly the trustee and/or the creditors' committee). These activities would be in aid of either litigation or negotiations (at times to aid others, *e.g.*, the trustee, in his negotiations).

(ii)     *Tennessee specific defendants group.* Same above, but for Tennessee specific defendants.

(iii)    *Indiana specific defendants group.* Same.

(iv)     *Virginia specific defendants group.* Same.

(v)      *New Jersey specific defendants group.* Same.

(vi)     *Florida specific defendants group.* Same.

(vii)    *Other state specific group.* Same responsibilities, but for all of the remaining states.

March 19, 2013
Page 16

(viii)   *NECP-related defendants group.*  Same responsibilities, but for NECP and its principles, and the related NECP entities (Ameridose, Medical Systems Management, GDC, Alaunus).

(ix)   *National defendants group.*  Same responsibilities, but for the non-NECP related defendants that are not state specific (*e.g.*, cleaners, testers, clean room designers and installers, and the like).

(x)   *Science group.*  Handle generic causation issues and the like, when, as and if needed.

(xi)   *Law and Briefing.*  Handles all general, non-case specific legal research and briefing, *e.g.*, the response to the trustee's transfer motion, CMO matters, etc.

We have shared this vision with all plaintiffs' counsel and received both favorable feedback and numerous volunteers.  The proposed PSC presented here is drawn from those who wished to work in, or chair, these working groups.[14]

You might be wondering, "Eleven working groups?  Aren't these the same people who advocated a smaller PSC?"  Some of us are, indeed.  But by definition, these working groups will tackle the real work of this MDL (as your Honor alluded to during the last status conference) *only when, as and if needed*.  It both avoids duplication and insures that state-specific work is handled by lawyers admitted, and qualified, to render those state-specific legal services.  These groups are intended to establish responsibility for the handling of most of the liability litigation and evidential support for the case by those lawyers most qualified to do so.  These groups are necessary, regardless of whether their members or chairs are given official, titled, positions or also occupy a seat on the PSC.  The work would thus flow from these groups *up* to the PSC.  Not from the PSC down.

Some of these groups have a relatively simple job; in some states, it may not take long to choose a simple course of little action.  In other states, and for other groups, the

---

[14] This proposal is completely agnostic at to whatever venue decision emerges from debtor trustee's motion to transfer cases to the MDL.  In other words, this structure works well regardless whether (i) all cases of any kind are sent to the federal district court and litigated there, or (ii) many cases stay in state court.  The proposal is also agnostic as to what the negotiating posture or CMO will provide.  In other words, it works regardless whether the status of things is that cases are stayed (while undergoing a period of negotiation for early resolution to put money into a pot) or if litigation is moving forward (or both, depending on the kind of case).  Work proceeds, or does not proceed, depending on the procedural posture, but the folks for each group are available as needed.

March 19, 2013
Page 17

work may be quite large.  We keep costs down by having clear areas of responsibility and individual accountability.  There may be times when there is little (or nothing) being done by any group.  For example, if the Court orders a hiatus on litigation, the efforts of each group may be "simply" getting packages in to the PSC (and/or creditors' committee, or trustee) that summarize the plaintiffs' position with respect to certain defendants.  At other times, it may be "Katy bar the door!," as litigation discovery leading to trial must be conducted by the chairs for a group.

The proposed seven member PSC is drawn from those who have expressed a desire to chair these 11 working groups.  Some chairs may be on the PSC; some will not.  As with many MDLs, lawyers who are and are not on the PSC often work for the common benefit; that would be the case here.  But the work will be done in a balkanized way by defined groups, with no duplication, and only when, as and if needed.  Many plaintiffs' counsel will have an opportunity to contribute and share the risks and rewards among the plaintiffs' bar.

The steering committee will steer.  It will ensure the groups are moving forward.  Members will fill in where needed and will work collaboratively with (or in) the working groups.  It will help formulate final settlement recommendations (after input from others) for the PSC (which ensures some uniformity across payers), interface with the bankruptcy court, and work to set up a matrix for allocation decisions.  And, perhaps most importantly, it will maintain a budget.

**The Slate's Challenge:  Limiting Fees and Expenses**

While this litigation has many features of a traditional mass tort MDL, this MDL also differs from other MDLs in material respects. Here, unlike in many MDLs, a key alleged wrongdoer, NECP, has sought bankruptcy protection. In the bankruptcy proceedings, the trustee and its counsel, the creditors committee and its counsel, and related financial advisors and other experts engaged by the trustee and/or creditors committee will continue to work to maximize the funds in the bankruptcy estate.  Despite the best efforts of these actors, however, it is expected that the bankruptcy estate will be insufficient to compensate fully the harmed persons and their families for their losses. There are also a variety of potentially liable alleged wrong-doers across the nation, some of which are related to NECP through common ownership and some have no or limited connections to NECP.

March 19, 2013
Page 18

The proposed leadership, although hopeful and determined,  recognizes that given the likely potential for a limited fund expected to be available to compensate victims for the harm they suffered, along with the transactional costs associated with the efforts to maximize the bankruptcy estate, this MDL must be prosecuted in an efficient and strictly cost-effective manner.  To effectuate these principles, the proposed leadership will enforce rules, including: (1) all common benefit work must be expressly approved by Lead/Liaison Counsel in advance; (2) all common benefit work must be conducted as efficiently as possible, with no duplicative work to be authorized; (3) all expenses must be pre-approved by Lead/Liaison Counsel; (4) counsel who intend to seek reimbursement for common benefit time or expenses must submit detailed time and expense records monthly to Lead/Liaison Counsel.

The team is committed to financing the litigation. We recognize that there is no guarantee that lawyers participating in common benefit work in the MDL will be paid at usual rates or percentages.  The need for creative approaches to limit professional fees is a must.

Our team believes that its primary responsibility is to the victims; we set forth this proposal with that belief sharply in mind.

Respectfully submitted,


  _/s/Thomas M. Sobol_____
Thomas M. Sobol
Kristen Johnson Parker
HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Phone: (617) 482-3700
Fax: (617) 482-3003
tom@hbsslaw.com
kristenjp@hbsslaw.com

*Proposed Lead and Liaison Counsel*

March 19, 2013
Page 19

Elizabeth J. Cabraser
Wendy R. Fleishman
Mark P. Chalos
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111
Phone: (415) 956-1000
Fax: (415) 956-1008
ecabraser@lchb.com

*Proposed Federal/State Liaison*

Marc E. Lipton
LIPTON LAW
18930 W. 10 Mile Road
Southfield, MI 48075
Phone: (248) 557-1688
Fax: (248) 557-6344
marc@liptonlawcenter.com

Kim Dougherty
JANET, JENNER & SUGGS, LLC
75 Arlington St.
Suite 500
Boston, MA 02116
Phone: (617) 933-1265
kdougherty@myadvocates.com

Patrick T. Fennell
CRANDALL & KATT
366 Elm Avenue, S.W.
Roanoke, Virginia 24016
Phone:  (540) 342-2000
pfennell@crandalllaw.com

J. Gerard Stranch, IV

March 19, 2013
Page 20

Benjamin A. Gastel
BRANSETTER, STRANCH &
JENNINGS PLLC
227 Second Avenue North
Nashville, TN  37201
Phone: (615) 254-8801
Fax: (615) 255-5419
gerards@branstetterlaw.com

Mark Zamora
ZAMORA FIRM
6 Concourse Parkway, 22nd Floor
Atlanta, GA 30328
Phone: (404) 451-7781
Fax: (404) 506-9223
mark@markzamora.com

*Proposed Plaintiffs' Steering Committee
Members*

Marilyn T. McGoldrick, Esq.
THORNTON & NAUMES LLP
100 Summer St., 30th Flr.
Boston, MA. 02110
Phone: (617) 720-1333
Fax: (617) 720-2445
mmcgoldrick@tenlaw.com

Peter J. Flowers
MEYERS & FLOWERS, LLC
3 North Second St.
Suite 300
St. Charles, IL 60174
Phone: (630) 232-6333
Fax: (630) 845-8982
pjf@meyers-flowers.com

March 19, 2013
Page 21

Douglass A. Kreis
AYLSTOCK, WITKIN, KREIS &
OVERHOLTZ PLLC
17 East Main Street, 2nd Floor
Pensacola, FL 32502
Phone: (850) 916-7450
Fax: (850) 916-7449
dkreis@awkolaw.com

Michael S. Appel
SUGARMAN, ROGERS, BARSHAK &
COHEN, P.C.
101 Merrimac Street
Boston, MA 02114
Phone: (617) 227-3030
Fax: (617) 523-4001
appel@srbc.com

Willard J. Moody, Jr.
THE3 MOODY LAW FIRM
500 Crawford Street, Suite 200
Portsmouth, VA 23704
Phone: (757) 393-4093
Fax: (757) 393-7257
will@moodyrrlaw.com

Colin Jones
SALVI, SCHOSTOK & PRITCHARD
P.C.
22 West Washington Street, Suite 1600
Chicago, IL 60602
Phone: (312) 372-1227
Fax: (312) 372-3720
cjones@salvilaw.com

Daniel L.  Clayton
Randall L. Kinnard

March 19, 2013
Page 22

KINNARD, CLAYTON, AND
BEVERIDGE
127 Woodmont Boulevard
Nashville, TN 37205
Phone: (615) 686-2501
Fax: (615) 297-150

Douglas K. Sheff
Frank J. Federico, Jr.
SHEFF LAW
10 Tremont Street,
The Daniel Webster Suite, 7th Floor
Boston, MA 02108
Phone: (617) 227-7000
Fax: (617) 227-8833
dsheff@shefflaw.com
ffederico@shefflaw.com

Michael R. Hugo
LAW OFFICES OF HUGO &
ASSOCIATES
1 Catherine Road
Framingham, MA 01701
Phone: (617) 448-4888
Fax: (617) 607-9655
mike@hugo-law.com

Robert Sickels,
SOMMERS SCHWARTZ, PC
One Towne Square
Suite 1700
Southfield, MI 48076
Phone: (248) 355-0300
Fax: (248) 746-4001
rsickels@sommerspc.com

E. Powell Miller
Marc L. Newman

March 19, 2013
Page 23

THE MILLER LAW FIRM, P.C.
950 West University Drive, Suite 300
Rochester, MI  48307
Phone: (248) 841-2200
epm@millerlawpc.com

Timothy P. Smith
SMITH & JOHNSON, ATTORNEYS
PROFESSIONAL CORPORATION
603 Bay Street, P.O. Box 705
Traverse City, MI 49685
Phone: (231) 946-0700
tsmith@smith-johnson.com

Ronald Rodriguez
THE LAW OFFICES OF RONALD
RODRIGUEZ, P.C.
915 Victoria Street
Laredo, TX 78040
Phone: (956) 796-1000
Fax: (956) 796-1002
ron@ronaldrodriguez.com

Yvonne M. Flaherty
LOCKRIDGE GRINDAL NAUEN
P.L.L.P.
Suite 2200
100 Washington Avenue South
Minneapolis, MN 55401-2159
Phone: (612) 339-6900
ymflaherty@locklaw.com

Steward J. Eisenberg
EISENBERG, ROTHWEILER,
WINKLER, EISENBERG & JECK
1634 Spruce St.
Philadelphia, Pennsylvania 19103
866-569-3400

March 19, 2013
Page 24

stewart@erlegal.com

Jeff S. Gibson
COHEN & MALAD LLP
One Indiana Square
Suite 1400
Indianapolis, IN 46204
Phone: (317) 636-2495
jgibson@cohenandmalad.com

Susan M. Bourque
PARKER SCHEER LLP
1 Constitution Center
Boston, MA 02129
(617) 886-0500
smb@parkerscheer.com

James C. Moon
MELAND RUSSIN & BUDWICK, P.A.
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, FL 33131
 (305) 358-6363
jmoon@melandrussin.com

Kent M. Barker
Peter G. Webb
WINER & BENNETT, LLP
111 Concord St.
P.O. Box 488
Nashua, NH 03061
Phone: (603) 882-5157
Fax: (603) 882-2694
kbarker@winerbennett.com
pwebb@winerbennett.com

Konstantine Kyros
KYROS LAW OFFICES

March 19, 2013
Page 25


17 Miles Rd.
Hingham, MA 02043
Phone: (800) 934-2921
kon@kyroslaw.com

William N. Riley
PRICE WAICUKAUSKI & RILEY, LLC
Hammond Block Building
301 Massachusetts Avenue
Indianapolis, Indiana  46204
Phone: (317) 633-8787
Fax (317) 633-8797

Ervin A. Gonzalez, Esquire
COLSON, HICKS, EIDSON
255 Alhambra Circle, Penthouse
Coral Gables, Fl 33134


Cc:     Frederic Fern, Interim liaison counsel for NECP (via email)
        Matthew Moriarty, Interim liaison counsel for Ameridose (via email)
        Heidi Nadel, Interim liaison counsel for the individual defendants (via email)
        Paul D. Moore, Chapter 11 Trustee
        Bill Baldiga, Counsel for the creditors' committee
        All Counsel (via ECF)

Attachment(s)

March 19, 2013
Page 26

## <u>CERTIFICATE OF SERVICE</u>

I, Thomas M. Sobol, hereby certify that I caused a copy of the Letter from Thomas M. Sobol and Others Proposing Slate for Plaintiffs' Steering Committee to be filed electronically via the Court's electronic filing system. Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system, and notice of these filings will be sent to these parties by operation of the Court's electronic filing system.

Dated: March 19, 2013

*/s/ Thomas M. Sobol*
Thomas M. Sobol, BBO No. 471770
