# EXHIBIT F

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                         )
IN RE: NEW ENGLAND COMPOUNDING    ) 1:13-md-02419-FDS
PHARMACY, INC. PRODUCTS LIABILITY )
LITIGATION                                          )
                                                         )
                                                         )
_____)

**APPLICATION AND DECLARATION OF KIMBERLY A. DOUGHERTY
FOR APPOINTMENT TO PLAINTIFFS' STEERING COMMITTEE**

I respectfully submit the following Application and Declaration for Appointment to the Plaintiffs' Steering Committee:

**I.      INTRODUCTION**

1.      I am a trial attorney in the law firm of Janet, Jenner & Suggs, LLC (JJS) and head the firm's office located in Boston, Massachusetts.[1] JJS has successfully represented catastrophically injured people nationwide for over 30 years.[2] I have nearly 10 years of experience representing consumers nationally against the manufacturers of dangerous pharmaceuticals and defective medical devices. I have tried multiple cases to verdict and along with others in my firm, I have resolved numerous mass tort litigations resulting in multi-million dollar settlements for our injured clients.

2.      My firm represents over 70 individuals sickened or that have died as a result of this tragedy, spanning nearly every one of the 23 states that received the recalled vials of NECP's contaminated products. Specifically, we represent catastrophically injured clients, or the families of loved ones who have passed, in the following states:

   a. California
   b. Florida

---

[1] *See* My firm biography at http://myadvocates.com/our-attorneys/attorney-bios/kimberly-dougherty.
[2] *See* www.myadvocates.com.

1

   c. Georgia
   d. Illinois
   e. Indiana
   f. Maryland
   g. Michigan
   h. Minnesota
   i. North Carolina
   j. New Hampshire
   k. Nevada
   l. New York
   m. Ohio
   n. Pennsylvania
   o. Rhode Island
   p. South Carolina
   q. Tennessee
   r. Texas
   s. Virginia

  3. My firm also serves as local counsel to many other out-of-state lawyers who also represent clients nationwide.

  4. My firm's clients are representative of *all* victims who have suffered nationwide. While most victims were catastrophically injured, the types of injuries vary and were caused by one of the three recalled products – steroid, cardiaplegia and ophthalmic solutions. Proving causation for all types of injuries from all NECP products is of great importance to our clients and others nationwide. Our firm has a strong interest in ensuring that all injured people receive appropriate compensation, no matter which product caused them harm or what type of harm they suffered.

  5. My firm has been involved in this litigation since its inception, filing our first case (with co-counsel Mark Zamora) just 4 weeks after the nationwide recall. I attended hearings at the Massachusetts State Housing and read the testimony of several representatives from the Department of Public Health. I have also personally spoken with the Interim Commissioner of

the Department of Public Health regarding this tragedy. Other members of my firm had involvement in the Congressional Hearings in Washington, DC. I have also read the legislation proposed by Senator Markey to strengthen the regulation of compounding pharmacies.

6. Currently, I represent the following plaintiffs with case filed in front of this Honorable Court: Plaintiffs Warren and Karen Smith, Docket No. 13-cv-10559; Plaintiff Chad Green, Docket No. 12-cv-12121 (along with co-counsel Mark Zamora from Georgia), Plaintiffs Jona and Cary Angst Docket No. 13-cv-10565 (along with co-counsel Alyson Oliver from Michigan). I also represent Donna Montee, whose case is currently in Middlesex Superior Court, Massachusetts, Docket No. MICV2012-4861 (along with co-counsel Colin Jones from Illinois).

7. I have taken a very active role in *In Re: New England Compounding Pharmacy* ("NECP") litigation, including drafting pleadings and arguing multiple issues related to preservation orders and inspection of NECP's facility. Specifically, I briefed and argued in front of this Honorable Court on November 28, 2012, seeking adoption of the Honorable Judge Dennis Curren's Massachusetts state court preservation order and order of inspection of NECP's facility.

8. On December 4, 2012, I also briefed and filed Plaintiff Green's Memorandum in Support of Inspection, with assistance of co-counsel, Mark Zamora. I argued the issue of inspection on December 6, 2012 in front of Magistrate Boal and was successful in obtaining an order for a four day inspection of NECP's facility.

9. After the inspection was granted, in a matter of days, I took a lead role, along with co-counsel Mark Zamora, in drafting a protocol for the inspection with our experts. Concurrently, Attorney Zamora and I researched, interviewed and engaged multiple nationally recognized experts, including a forensic building expert, two clean room experts, a field hygienist and two laboratory hygienists, three HVAC specialists, and other assisting team

3

members. We also took the lead negotiating with NECP, the government and GDC properties (the building owner) regarding the protocol for the inspection. Throughout this process we conferred with other plaintiffs lawyers regarding the selection of experts and the protocol.

10. During the four days of the inspection, I personally managed the inspection on for three of the four days. This entailed being the point person for the dozens of plaintiffs visiting the facility and for all defense counsel and the government. It also involved negotiating sampling, destructive testing, removal of bulk samples, and other issues as they arose with the government, NECP and GDC Properties. I was also involved, along with other plaintiffs' lawyers, with providing NECP and GDC Properties notice of destructive testing and daily proposed plans for the next day's action items.

11. During and after the inspection, I participated in conference calls with lawyers from across the country and informed them of our findings during the inspection.

12. Both Mr. Zamora and I continue to have the primary role of working with the liability experts on their findings and reports.

13. My firm has contributed both time and financially to the undertaking of the inspection and payment of experts. We are dedicated to continue contributing both time and money to obtain a positive resolution for all clients nationwide.

14. Throughout this process, I have worked amicably and collaboratively with other Plaintiffs' counsel and would like to continue to do the same as a member of the Plaintiffs' Steering Committee.

15. Counsel for other Plaintiffs in this litigation across the country have expressed their support and approval of me serving on the Plaintiffs' Steering Committee. In addition to the other proposed slate members and lawyers who are signatories to the proposed slate, my

application has the personal, individual support of many lawyers collectively representing hundreds of clients nationwide, including:

- Willard Moody, Moody Law (VA)
- Yvonne Flaherty, Lockridge Grindal Nauen (MN)
- Colin Jones, Salvi Law (IL)
- Stewart Eisenberg, Eisenberg Rothweiler (PA)
- Pete Flowers, Myers & Flowers, LLC (IL)
- Douglass Kreis, Aylstock, Witkin, Kreis & Overholtz (FL)
- Jeff Gibson and Ned Mulligan, Cohen & Malad (IN)
- Elizabeth Kaveny, Burke Wise Morrissey Kaveny (MN)
- Randy Kinnard, Kinnard, Clayton & Beveridge (TN)
- Shawn Raiter, Larson King (MN)
- Michael Fay, Fay & Associates, LLC (MN)
- Marnie McGoldrick, Thornton & Naumes (MA)
- Douglas Sheff and Frank Federico, Sheff Law Offices (MA)
- Susan Bourque, Parker Scheer (MA)
- Michael Hugo, Hugo LawOffices (MA)
- Michael Appel and Anthony Agudelo, Sugarman Rogers Barshak & Cohen (MA)

Notably, each lawyer that I contacted, agreed to support my application, no one declined.

16. I have personal experience serving in leadership roles in other mass tort litigations. Currently, I serve on the Executive Committee and Plaintiffs' Steering Committee for *In re Specially Assigned Mesh Implant Cases*, Master Docket 11-3750M (Middlesex Superior Court, Massachusetts).

17. In 2010 I was appointed as one of three Plaintiffs' Liaison/Lead Counsel for *In re Reglan/Metoclopramide*, Master Docket No. 1997 (Court of Common Pleas of Philadelphia County, Pennsylvania) as liaison for Plaintiffs' involved in litigation against the Patient Education Monograph Defendants. The cases are currently stayed pending appeal.

18. I am a Board of Governor of Massachusetts Academy of Trial Attorneys (MATA) and Co-Chair of its Women's Caucus and have been for several years. I am also incoming Vice President of Operations of the Massachusetts Women's Bar Association (WBA) and have been a Board member since 2009.

19. Recently I was selected by National Trial Lawyer's as a member of Top 40 Under 40. According to its website: "Membership into The National Trial Lawyers: Top 40 under 40 is by invitation only and is extended exclusively to those trial lawyers practicing civil plaintiff and/or criminal defense law. Invitees must exemplify superior qualifications, trial results, and leadership as a young lawyer under the age of 40. Selection is based on a thorough multi-phase process which includes peer nominations combined with third-party research." *See* http://thenationaltriallawyers.org/ntl-groups/top-40-under-40/.

20. I have been repeatedly named a *New England Rising Star* in Product Liability Litigation by Super Lawyers® since 2009. I was also honored as a Rising Star by Massachusetts Lawyers Weekly in 2008.

21. On multiple occasions, I have written and lectured on mass tort litigation. I have lectured specifically on this litigation to lawyers nationwide through an American Association for Justice seminar and a Harris Martin Conference in Orlando, Florida prior to the JPML hearing (which I also attended). I also have served on a panel at a Mass Torts Made Perfect (MTMP) conference to a national audience of plaintiffs' lawyers regarding transvaginal mesh. I have been invited back to lecture again at the MTMP conference in April regarding transvaginal mesh. I have also presented on local Massachusetts bar panels regarding state specific laws and other issue. This summer I will be a panelist on the WBA/MATA Trials Facing Women Litigators and Tips for Success program. I have written articles for local publications and co-

authored *Knock Down Generic Drug Makers' Defenses*, published in Trial Magazine (June, 2010), a national publication.

22. Members of my firm also have significant experience serving in leadership positions in mass tort litigations. For example, Robert Jenner currently serve as Co-Lead Counsel of *In re Toning Shoes Product Liability Litigation* (MDL 161); and have formerly served on the Plaintiff's Steering Committee on the hormone therapy MDL (*In Re Prempro Products Liability Litigation,* MDL No. 4:03-CV-1507); and the latex glove toxic tort litigation (*In Re Latex Glove Product Liability Litigation,* MDL No. 1148). In addition, Attorney Jenner currently serves as Co-Leader of a consortium of medical device attorneys (50 plus law firms) prosecuting infusion pain pump cases across the country (where no MDL exists). Attorney Jenner has also served as Co-Lead Counsel in several class actions. From 1998 through 2008, for example, he served as Co-Lead Counsel in multiple class actions against Maryland's leading health maintenance organizations.

23. I and members of my firm have also taken active roles in the discovery committees, and expert and science committees for mass tort litigations involving Pain Pump, Rezulin, Baycol, Yaz/Yasmin, Hormone Replacement Therapy, Phenylpropanolamine, Reglan, Transvaginal Mesh, and other pharmaceutical and medical device litigation matters.

24. Attorneys of Janet, Jenner & Suggs, LLC also have been honored as *Best Lawyers in America*®, selected state *Super Lawyers*® and given the highest rating for ethical and professional conduct by *Martindale-Hubbell*.

25. I and my firm are committed to zealously representing clients nationwide who have suffered as a result of this unnecessary tragedy and have the experience, energy and resources needed to effectuate a positive resolution.

## II.     CRITERIA FOR INTERIM CO-LIAISON COUNSEL APPOINTMENT

**(1) <u>Willingness and ability to commit to serving as interim co-liaison counsel</u>.**

a.      I am a trial attorney in the law firm's Mass Tort Division.  The firm's Mass Tort Division has approximately 25 people dedicated to mass torts, generally. My firm just hired another lawyer to work in our Boston office to assist specifically with this litigation and others. The lawyers and staff have both time and resources to devote to the litigation involving *In Re: New England Compounding Pharmacy Cases* ("Meningitis Litigation").

b.      The Meningitis Litigation is one of the firm's principal litigations. My law firm has shown its willingness to serve by taking the lead early in this litigation, as described above, and by financially contributing to funding the inspection and expert fees.

c.      My firm represents over 70 people who have suffered catastrophic injuries or died as a result of receiving contaminated vials of NECP's products. The firm also serves as local counsel to several other firms that have filed and will be filing cases on behalf of their injured clients in Massachusetts.

d.      My firm is committed to the Meningitis Litigation and is fully staffed to take on the needs to support my role as co-liaison counsel.  Currently, I am only active in a leadership role in one other mass tort litigation (*In re Specially Assigned Mesh Implant Cases*).  Both I and my firm are dedicated to zealously representing our clients in this litigation. I am willing and able to commit to serving on the Plaintiffs' Steering Committee.

**(2) <u>Ability to work cooperatively with others</u>.**

a.      As has been the case over the last several months of this litigation, I have worked cooperatively with all Plaintiffs' counsel and Defense Counsel. I have coordinated calls with the Plaintiffs' lawyers and our experts on the inspection issue. I drafted initial pleadings related to

the preservation orders and inspection of NECP's premises and argued a motion to adopt the state court orders. I have also drafted the Memorandum in Support to Inspect NECP's Facility and consulted with all Plaintiffs on the topic. I worked collaboratively with other firms, seeking feedback on the potential experts and the protocol for the inspection. I also conferred with defense counsel and the government on the topic of inspection.

   b.  As set forth above, lawyers for other Plaintiffs in this litigation have expressed their support and approval of me serving on the Plaintiffs' Steering Committee.

   c.  I have also worked cooperatively in the dozens of other litigations that I have been involved in, including the current mass tort litigation involving transvaginal mesh in which I am also part of the Bellwether Selection team, working with co-counsel to select and prepare cases for trial.

**(3) Access to sufficient resources to advance the litigation in a timely manner.**

   a.  Janet, Jenner & Suggs, LLC has 24 attorneys, including four additional attorneys who are Of Counsel. JJS has offices in Baltimore, Maryland; Columbia, South Carolina; Ashville, North Carolina; New York City and Boston, Massachusetts. The firm has had significant success not only in mass torts, but also in the areas of medical malpractice, environmental torts and business litigation. In its 2013 law firm rankings, *U.S. New & World Report* elevated JJ&S from "Tier One" status in the Baltimore Metropolitan area to "Tier One" status *nationally* in mass torts, class actions, medical malpractice, personal injury, and product liability litigation.

   b.  I and my firm represent that JJS has sufficient resources to advance any amount of resources necessary to serve on the Plaintiffs' Steering Committee, whether it be financial, staff or lawyer resources.

c. I am available for an interview at the pleasure of the Court should the Court determine that interviews are necessary.

RESPECTFULLY SUBMITTED this 19th day of March, 2013.

/s/ Kimberly A. Dougherty

Kimberly A. Dougherty, Esquire
BBO# 658014
Janet, Jenner & Suggs, LLC
75 Arlington St., Suite 500
Boston, MA 02116
(617) 933-1265
kdougherty@myadvocates.com
www.myadvocates.com