# EXHIBIT I

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

|  |  |
|---|---|
| | ) |
| **IN RE: NEW ENGLAND COMPOUNDING** | ) **1:13-md-02419-FDS** |
| **PHARMACY, INC. PRODUCTS LIABILITY** | ) |
| **LITIGATION** | ) |
| | ) |
| | ) |
| _____ | ) |

## DECLARATION OF MARK ZAMORA
## FOR APPOINTMENT TO PLAINTIFFS' STEERING COMMITTEE

I respectfully submit the following Declaration for Appointment to the Plaintiffs'

Steering Committee:

### I.      INTRODUCTION

1.      I represent Plaintiff Chad Green, 1:12-cv-12121-FDS, before this Court,

and have been admitted to practice *pro hac vice*.[1]   The case was filed in Massachusetts

State Court, and was removed to this Court on November 14, 2012. The case was

consolidated with other cases prior to the establishment of the Multi District Litigation

("MDL") now before this Court.  My firm and I also represent injured consumers in these

states: Tennessee (10), Kentucky (5), Florida (4), Alabama (1), Mississippi (1), North

Carolina (2), Indiana (1), Ohio (1) and New Jersey (1). As of the date of this submission,

I have not filed a lawsuit in any other Court.

2.      I am the son of two immigrants who fled Fidel Castro's Cuba in the early

1960's. I am the first person in my family to graduate from college in the United States,

and I fluently read and speak Spanish.

---

[1] Kim Dougherty is co-counsel and has played a key role in this litigation.

I am a trial attorney and principal of my law firm, and am licensed to practice in Florida and Georgia. My main office is located in Atlanta, Georgia. I am *of counsel* to Bunch and James, whose offices are located in Florence, Alabama. For more than fifteen years I have worked for consumers in cases involving pharmaceutical products, recalled dietary supplements, and products that are not regulated by the Food and Drug Administration.   I have been admitted to practice *pro hac vice.*

3.      I have taken an active role in this litigation from the onset.  In the *Green* case, my co-counsel and I collaborated on the preparation, negotiation, and submission of the current Orders regarding preservation. In addition, in the *Green* case I had a lead role (along with Kim Dougherty) in preparing Plaintiff's Motion to Inspect NECC's facility, preparing and filing the related Memorandum, and in working with retained forensics building expert Tom Irmiter on the submission of his Affidavit in Support of the inspection.

 After the Motion was granted by Order dated December 6, 2012, Ms. Dougherty and I conducted a national search for those experts who would be retained to assist. In the span of less than two weeks, we engaged multiple experts with substantial experience. In addition to Mr. Irmiter, I led the efforts to interview and retain two clean room experts, one field hygienist, two laboratory hygienists, and HVAC specialists.  These experts toured the NECC facility during a four day inspection that occurred in December of 2012.   I played a key role in recruiting and convincing attorneys across the country to assist in paying a fair share of all inspection expenses. In the three months since the inspection was held, Ms. Dougherty and I have been charged with taking the lead role with each expert in the preparation of all findings and reports on this issue.

Throughout this process, I have worked amicably and collaboratively with other Plaintiffs' counsel across the country.

4.     I have direct and recent relevant experience in litigation involving Defendants with limited financial resources to right the wrongs of injured consumers. Since 2009, I have served on the Plaintiffs' Steering Committee in the MDL known as *In Re Hydroxycut Marketing and Sales Practices Litigation*, (3:09-md-02087-BTM-KSC), and I am chair of the litigation's Discovery Committee. That case involved products where – as here - there was little to no regulatory FDA oversight.  I have led all aspects of discovery involving fourteen defendants in that case, where the primary parties (Iovate Health Sciences, Inc. and related entities) had previously filed Bankruptcy (in 2005) after a product recall. I was also responsible for negotiating the Plaintiff's Fact Sheet, the preservation order relating to all documents produced in discovery, and for establishing the online method for document review. The Hydroxycut litigation is approaching its conclusion, as there is a settlement involving more than 600 consumers in the final stages of negotiation.

5.     I have also served as lead counsel in Georgia State Court in a consolidated action known as *Gurley adv. Total Body Essential Nutrition, Inc*. involving Defendants with limited funds. From 2008 until 2012, my firm and I oversaw and directed all discovery and served as lead examiners in more than sixty depositions.  In that case, my firm and I argued for and had granted motions to inspect multiple facilities where the recalled products were made; drafted, negotiated and argued the terms of the Order relating to document production; and prepared and argued multiple *Daubert* Motions

relating to every expert retained by each party.  At each hearing held during the pendency of that litigation I was selected to inform the Court of the progress of all cases, and reported on all developments.

My firm and I litigated the *Gurley* case to a significant jury verdict, and I negotiated a settlement thereafter with a party that only had limited resources but (as here) had closed its doors early in the litigation.  My firm and I then negotiated a resolution with every other Defendant involved in the consolidated action.  There were approximately 300 injured consumers in that litigation. My recent direct experience and leadership will add value to this MDL.

6.      Counsel for other Plaintiffs in this litigation have expressed their support and approval of my serving on the PSC, including Tom Sobol, Kim Dougherty, Michael Coren, and Michael Hugo.

7.      I and members of my firm have also taken active roles in other complex litigation matters. For example, my firm serves on the PSC involving Darvocet, serving as chair of the science committee in that matter.

## II. CRITERIA FOR APPOINTMENT

**(1)      Willingness and ability to commit to serve**.

a.      My law firm has shown its willingness to serve by taking the lead early in this litigation. From the initial Complaint with filings related to preservation orders, to inspection request, to the continued investigation by retained experts, we are committed to serving those injured in this national tragedy, doing so knowing the financial and labor commitment involved.

b.      This action is a primary focus of my firm. The firm represents people from nine states who have suffered catastrophic injuries as a result of receiving contaminated vials of NECC's products.  Many of our clients have been diagnosed with fungal meningitis.

c.      The firm is committed to this matter and is fully staffed to take on the labor and financial needs that would support my involvement. Currently, I am active in a mass tort litigation that is winding down (Hydroxycut), and another that is not time intensive (Darvocet).

**(2)     Ability to work cooperatively with others**.

a.      As has been the case over the last several months in this litigation, I have worked cooperatively with all Plaintiffs' counsel. I have worked with Plaintiffs' lawyers on the inspection issue as well as issues relating to formation of the MDL.

b.      As set forth above, lawyers involved in this litigation have expressed their support and approval of my application.

**(3)     Access to sufficient resources to timely advance the litigation.**

a.      With our resources, we have more than six lawyers and thirty staffers ready and able to proceed on this important matter.

b.      I suggest several courses of action to advance this litigation in its early stages.  Having spent more than 100 hours on all issues relating to the inspection of the NECC facility, it is clear that additional parties played a role in allowing this national tragedy to happen, and they must be brought into this case now.

Once the PSC is appointed, it would presumably take action to include Liberty Industries, Inc. ("Liberty") as a party. Liberty is based in Connecticut, and was hired to

build the clean rooms in the NECC facility by one or more of the Defendants currently before this Court.  Liberty negligently designed and constructed the clean rooms used to produce the recalled products.   The construction of any clean room requires compliance with United States Pharmacopeia ("USP") standards.  Liberty's work failed to meet many of the substantive requirements of USP standards, including <USP> 797.

The company with whom NECC contracted to keep the clean rooms sterile and "clean" will be brought before this Court as a party. UniFirst Corporation, a Massachusetts based company, failed to meet its obligations to provide services consistent with known industry standards.

Analytical Research Laboratories ("ARL") is already a party before this Court. ARL is the company responsible for the sterility testing of NECC products, including the recalled products.

c.      Advancement of the litigation: The PSC's early work should focus on concise master discovery to not only the currently named parties, but to those identified above.

RESPECTFULLY SUBMITTED this 19th day of March, 2013.

FOR PLAINTIFF CHAD GREEN


By: /s/_____
        O. MARK ZAMORA
        6 CONCOURSE PARKWAY
        22nd FLOOR
        ATLANTA, GA 30328
        T: 404-451-7781
        F:  404-506-9223