```
 1                  UNITED STATES DISTRICT COURT
                    DISTRICT OF MASSACHUSETTS
 2


 3
     IN RE:  NEW ENGLAND            )  MDL NO. 13-2419-FDS
 4   COMPOUNDING                    )
     PHARMACY CASES LITIGATION      )
 5                                  )
                                    )
 6                                  )
                                    )
 7                                  )


 8


 9    BEFORE:  THE HONORABLE F. DENNIS SAYLOR, IV


10


11                      STATUS CONFERENCE


12


13


14        John Joseph Moakley United States Courthouse
                    Courtroom No. 2
15                 One Courthouse Way
                    Boston, MA 02210
16


17                    April 10, 2013
                        2:00 p.m.
18


19


20


21


22


23            Valerie A. O'Hara, FCRR, RPR
                  Official Court Reporter
24    John Joseph Moakley United States Courthouse
              One Courthouse Way, Room 3204
25                 Boston, MA 02210
              E-mail: vaohara@gmail.com
```

1    APPEARANCES:

2    For The Plaintiffs:

3        Hagens, Berman, Sobol, Shapiro LLP, by THOMAS M.
     SOBOL, ESQ. and KRISTEN JOHNSON PARKER, ATTORNEY,
4    55 Cambridge Parkway, Suite 301, Cambridge,
     Massachusetts
5    02142;

6        Ellis & Rapacki LLP, by FREDRIC L. ELLIS, ESQ.,
     85 Merrimac Street, Suite 500, Boston, Massachusetts
7    02114;

8        Crandell & Katt, by PATRICK T. FENNELL, ESQ.,
     366 Elm Avenue S.W., Roanoke, Virginia  24016;
9
         Andrews Thornton, by ANNE ANDREWS, ATTORNEY, ESQ.,
10   2 Corporate Park, Suite 110, Irvine, California 92606;

11       Brown Rudnick, by DAVID J. MOLTON, ESQ., Seven Times
     Square, New York, New York 10036;
12
         Lieff, Cabraser, Heimann & Bernstein, LLP, by MARK P.
13   CHALOS, ESQ., One Nashville Place, 150 Fourth Avenue,
     North, Suite 1650, Nashville, Tennessee  37219-2423;
14
         Sugarman, Rogers, Barshak & Cohen, P.C., by ANTHONY
15   V. AGUDELO, ESQ., 101 Merrimac Street, 9th Floor,
     Boston, Massachusetts  02114;
16
         Law Office of Hugo & Associates, MICHAEL R. HUGO,
17   ESQ., 1 Catherine Road, Framingham, Massachusetts
     01701;
18
         Colling, Gilbert, Wright & Carter, by MELVIN B.
19   WRIGHT, B.C.S., 801 N. Orange Avenue, Suite 830,
     Orlando, Florida  32801;
20
     For the Defendants:
21
         Harris Beach PLLC, by FREDERICK H. FERN, ESQ.,
22   100 Wall Street, New York, New York  10005;

23       Hinshaw & Culbertson LLP, by DANIEL E. TRANEN, ESQ.,
     28 State Street, 24th Floor, Boston, Massachusetts
24   02109;

25

```
 1   APPEARANCES (CONTINUED):

 2   For the Defendants:

 3       Tucker, Ellis & West LLP, by RICHARD A. DEAN, ESQ.,
     1150 Huntington Building, 925 Euclid Avenue, Cleveland,
 4   Ohio  44115-1414;

 5       Michaels, Ward & Rabinovitz LLP, by DAN RABINOVITZ,
     ESQ., One Beacon Street, Boston, Massachusetts  02108;
 6
         Todd & Weld LLP, by HEIDI A. NADEL, ESQ.,
 7   28 State Street, 31st Floor, Boston, Massachusetts
     02109;
 8
         Duane Morris LLP by MICHAEL R. GOTTFRIED,
 9   ESQ., 100 High Street, Suite 2400, Boston, Massachusetts
     02110-1724;
10
         Law Offices of Jay J. Blumberg, by  JAY J. BLUMBERG,
11   ESQ., 158 Delaware Street, P.O. Box 68
     Woodbury, New Jersey  08096;
12
         Lawson & Weitzen, LLP, by RYAN A. CIPORKIN, ESQ. and
13   FRANKLIN LEVY, ESQ., 88 Black Falcon Avenue, Boston,
     Massachusetts  02210;
14
         Tucker, Saltzman & Dyer, LLP, by SCOTT J. TUCKER,
15   ESQ., 100 Franklin Street, Suite 801,
     Boston, Massachusetts  02110;
16
         Ulmer & Berne, by JOSEPH P. THOMAS, ESQ., 600 Vine
17   Street, Suite 2800  Cincinnati, Ohio  45202;

18       Ulmer & Berne, by JOSHUA A. KLARFELD, ESQ.,
     1660 W. 2nd Street, Suite 1100, Cleveland,, Ohio  44113;
19
     ALSO PRESENT:
20
     Callan Stein
21   Mark Lipton

22

23

24

25
```

```
 1   APPEARANCES (CONTINUED):

 2   VIA PHONE:

 3   Elizabeth Cabraser
     J. Gerard Stranch
 4   Kim Dougherty
     Mark Zamora
 5   Colin Jones
     Alyson Oliver
 6   Elisha Hawk
     Mary Gidaro
 7   Douglas Mulvaney
     H. David Gibson
 8   Sharon Houston
     William Riley
 9   Rebecca Blair
     Timothy Housholder
10   Harry Herzog
     Sean Roth
11   Frank Federico
     Ed Jazlowiecki
12   Shannon Carey
     Robert Randall
13   Nolan Nicely
     Michael Coren
14   Harry Roth
     Chris Cain
15   Terry Dawes
     Richard Golomb
16   J. Stephen King
     Elliot Olsen
17   Bryan Bleichner
     Caia Johnson
18   Scott Sexton

19

20

21

22

23

24

25
```

```
 1                    PROCEEDINGS

 2              THE CLERK:  All rise.  Court is now in

 3    session in re:  New England Compounding Pharmacy cases.

 4    This is MDL No. 13-md-02419, Honorable F. Dennis Saylor

 5    presiding.  Counsel, please note your appearances for

 6    the record.

 7              MS. PARKER:  Good afternoon, your Honor,

 8    Kristen Johnson Parker, lead counsel for the plaintiffs.

 9              THE COURT:  Good afternoon.

10              MR. SOBOL:  Good afternoon, your Honor,

11    Tom Sobol for the PSC.

12              THE COURT:  Good afternoon.

13              MR. CHALOS:  Mark Chalos, your Honor,

14    federal state liaison for the plaintiffs.

15              MR. FENNELL:  Good afternoon, your Honor,

16    Patrick Fennell, plaintiffs' steering committee.

17              MR. LIPTON:  Good afternoon, your Honor,

18    Mark Lipton, plaintiffs' steering committee.

19              MR. FERN:  Your Honor, Frederick Fern from

20    Harris, Beach on behalf of NECC.

21              THE COURT:  Good afternoon.  I don't know if

22    Harris, Beach is a place where you can lie out in the

23    sun, but it looks like that's where you've been.

24              MR. FERN:  There's no sunshine in my office.

25              THE COURT:  Well, you've been somewhere else
```

02:00PM (line 10)

02:01PM (line 20)

then.  Good afternoon.

1

          MR. TRANEN:  Good afternoon, Daniel Tranen
and Sean Culbertson for NECC.

          MR. RABINOVITZ:  Good afternoon, your Honor,
Dan Rabinovitz on behalf of Medical Sales Management,
Inc.

          MS. NADEL:  Good afternoon, your Honor,
Heidi Nadel.  I am co-counsel with Mr. Fern's office for
Doug and Carla Conigliaro.

02:01PM           MR. DEAN:  Good afternoon.  My name is
Richard Dean.  I'm counsel for Ameridose.

          MR. GOTTFRIED:  Michael Gottfried, counsel
for trustee, Paul Moore.

          MR. STEIN:  Callan Stein for Barry Cadden
and Lisa Cadden.

          MR. ELLIS:  Rick Ellis for various
plaintiffs.

          MS. ANDREWS:  Anne Andrews, co-chair of the
creditors' committee.

02:01PM           MR. MOLTON:  Good afternoon, your Honor,
David Molton of Brown, Rudnick, counsel to the
creditors' committee.

          MR. THOMAS:  Your Honor, Joe Thomas for GDC.

          MR. TUCKER:  Scott Tucker for Ameridose,
your Honor.

1              MR. CIPORKIN:  Ryan Ciporkin for Alaunus

2    Pharmaceutical.

3              MR. LEVY:  And Franklin Levy for Alaunus,

4    your Honor.

5              MR. HUGO:  Michael Hugo for Chad Green,

6    plaintiff, and on the telephone, I have Rob Jenner and I

7    believe Mark Zamora and Kim Dougherty.

8              THE COURT:  I'm not asking the people on the

9    telephone to identify themselves.  Good afternoon.  I

02:02PM   10   want to begin by apologizing.  I'm farther behind than I

11   expected to be.  There's a reason for it, but it's not a

12   particularly good one, it's just the press of other

13   business, but, in any event, here we are.

14              I have issued an order appointing steering

15   committee lead counsel and federal state liaison

16   counsel.  I'm going to follow that up shortly with

17   another order governing the question of the funding of

18   costs.

19              I wanted to give that some separate thought

02:03PM   20   and didn't want to hold up the whole appointment for

21   that, and I'm also going to issue a short order

22   concerning participation by telephone, the thrust of

23   which will be that anyone who wants to participate by

24   telephone and wants to be heard will have to give

25   advance notice.

1                I also expect, have not yet done so but

2     expect to issue the procedural order concerning the

3     Chapter 11 trustees' transfer motion.  My original plan

4     was to set a deadline of April 16th, and because some

5     time has past, I would expect to give some additional

6     time there, perhaps till April 30th or so for people to

7     respond to that.

8                That also, I think, would cover the GDC

9     motion to withdraw the reference and perhaps the

02:04PM   10     Ameridose motion as well.  There are some other issues,

11     including a motion from various plaintiffs in Roanoke,

12     Virginia concerning mandatory abstention that may

13     present some different issues, but I will get that

14     procedural order out, and I would expect no later than

15     tomorrow.

16                With that, let's talk about where we are and

17     what we have to do.

18                MS. PARKER:  Your Honor, if I may.

19                THE COURT:  Yes.

02:04PM   20                MR. FERN:  Judge, just a point of

21     information regarding that April 30th date --

22                THE COURT:  Yes.

23                MR. FERN:  -- is it the Court's intention to

24     gather all of those motions with the same return date of

25     April 30th?

1          THE COURT:  That was the plan.  Originally I

2    said April 16th, and it's the Chapter 11 trustees'

3    motion, which is the principal issue, but there are ones

4    that are related, overlapping, intertwined, motions to

5    withdraw the reference.  Motions to remand I think

6    probably just need to be put on hold.  There are motions

7    to remand I think for lack of subject matter

8    jurisdiction, and if I'm going to take in all the state

9    cases, I think they get mooted, although there may be an

02:05PM  10   issue there I'm missing.

11          MR. FERN:  So given the stay, Judge, the

12   April 30th date would be for briefing completion?

13          THE COURT:  Filing oppositions and then

14   perhaps a reply brief, and then we can set it for

15   argument.  I don't know how this is going to play out.

16   I mean, so far the only wrinkle that I didn't expect, I

17   guess, is this issue of the Roanke plaintiffs.  I mean,

18   I suppose I should have seen it coming, but having read

19   the brief, it puts it in a factual context now that I

02:05PM  20   understand it a little better.  I'm sorry, Ms. Parker.

21          MS. PARKER:  Thank you, your Honor.

22   Plaintiffs have spoken with the trustee before this

23   hearing, and we had contemplated asking your Honor to

24   give us an extension until April 2d to file replies.

25          THE COURT:  May 2d.

1          MS. PARKER:  I apologize, May 2d, your

2     Honor, to file responses to the trustees' motion.

3          THE COURT:  Why don't we call it May 2d.  I

4     don't have any particular issue with the extra three

5     days.

6          MS. PARKER:  Thank you.

7          THE COURT:  May 2d it will be.  We had also

8     agreed on a date for the trustees --

9          THE COURT:  The time machine idea is great

02:06PM  10     if you have one.

11          MS. PARKER:  I'll work on that.

12          THE COURT:  But go on.

13          MS. PARKER:  We had also agreed with the

14     trustee on a proposed date for the trustee to file a

15     reply.  That date would be May 13th.

16          THE COURT:  All right.  May 13th for any

17     reply.  That would be any reply memo, not just the

18     trustee.  In other words, the Ameridose-GDC motions, any

19     reply brief would also be due May 13th.

02:06PM  20          MS. PARKER:  Mr. Sobol is reminding me that

21     those deadlines, your Honor, assume that there's no

22     issue with having notice sent quickly by the trustee.

23          THE COURT:  I'm assuming all of that.  If

24     someone says they didn't have notice, we'll just have to

25     take that up in due course.  I'm not sure how to handle

1     that.  I need to issue the order.  The notice needs to

2     go out.  I mean, I would be surprised in the modern

3     world with ECF and electronic filing if people genuinely

4     didn't have notice of what was going on, but if

5     something comes up, I'll hear what people have to say

6     and respond accordingly.

7                    MS. PARKER:  Thank you.

8                    THE COURT:  Ms. Parker, while I'm on the

9     subject, and I don't know if anyone is present in person

02:07PM  10   or on the phone concerning these Roanoke cases, but do

11    I -- how do you propose that I handle that?  This is the

12    motion for mandatory abstention on the grounds that

13    essentially the only federal issue is the possibility of

14    a claim for contribution and that there are state court

15    claims against state court defendants that are, at least

16    according to the file, proceeding toward trial in

17    Virginia?

18                    MS. PARKER:  We would suggest, your Honor,

19    that any oppositions to that motion be filed to track

02:08PM  20   the deadline we've imposed for oppositions or responses

21    to the trustees' motion, so that is to say also May 2d.

22    We would also suggest then if the Roanke plaintiffs

23    wanted to file a reply that that date would likewise be

24    May 13th.  We think these raise not necessarily

25    identical but similar issues, and, therefore, a

```
 1    consolidated, rather, overlapping briefing schedule is

 2    appropriate.

 3             THE COURT:  All right.  Is anyone from the

 4    Gentry, Locke Firm available who wants to respond to

 5    that?

 6             MR. SEXTON:  Yes, your Honor, this is

 7    Scott Sexton.  We have no objection to that proposed

 8    briefing schedule on that.

 9             THE COURT:  All right.

10             MR. SEXTON:  There is a complicating issue

11    that has arisen in our cases in Roanke.  On Friday, a

12    series of motions to transfer to Federal Court were

13    filed and are being filed in all of those cases and

14    apparently with the knowledge of the trustee because

15    tag-along motions have been filed almost immediately,

16    and it seems as though there's an effort to

17    short-circuit or circumvent your motion that you have

18    before you with the transfer and our motion for

19    abstention because now we have a Federal Judge in

20    Roanke, Virginia who has cases that involve state court

21    parties and don't have anything to do with NECC as a

22    party, and he has those cases, they're being

23    transferred, I mean, many cases transferred before him,

24    and we are in a position of having to deal with that

25    here locally as well.  It's a disappointing turn of
```

1     events for us, but I wanted to bring it to your

2     attention.

3               THE COURT:  All right.  Who --

4     Mr. Gottfried, you represent a trustee?

5               MR. GOTTFRIED:  I am.

6               THE COURT:  Do you want to respond to that?

7     I'm sorry, Mr. Fern.

8               MR. FERN:  Your Honor, honestly I was not

9     aware of what the complaint just was by the counsel from

02:10PM  10   the Gentry, Locke Firm in Roanke.  There were some

11    motions filed that removed the cases, and now we are

12    moving pursuant -- we filed a tag-along action to have

13    them sent here.

14              THE COURT:  All right.  Let's not -- I can't

15    sort this out right now.  I mean, I can, of course,

16    always transfer something back if for some reason I

17    don't properly have it.  Why don't we just let that play

18    out in due course.  If necessary, I can, if anyone

19    thinks it would be helpful for me to get on the phone

02:11PM  20   and coordinate either with a Federal or State Judge in

21    Virginia, I'm happy to do that, but in the short run

22    anyway, I'm just going to let it play out through the

23    motion practice.

24              Why don't -- let me put that discussion on

25    pause, and I think I'd like to get an update on the

1    bankruptcy proceeding and where things are generally.

2    Who wants to take the lead on that, Mr. Gottfried?

3              MR. GOTTFRIED:  I can give you that update,

4    your Honor.

5              THE COURT:  All right.

6              MR. GOTTFRIED:  I think two principal things

7    are going on currently in the bankruptcy, then there's

8    obviously some subsidiary events.  I think the most

9    important event is that Mr. Moore is continuing his

02:11PM   10   dialogue with the defendants in the avoidance action.

11   He believes that they're continuing to make some, you

12   know, incremental progress.

13             What he has done is he has been giving them

14   extensions of between two and three weeks to respond to

15   the complaints so long as they're making progress, and

16   at this point he continues to believe that they are, so

17   that process is ongoing.

18             The trustee, now that he is in place, is

19   also in the process of pursuing accounts receivable that

02:12PM   20   are due NECC, and he's also filed motions to put, you

21   know, appropriate people in place to assist him with the

22   case, and that's largely where we are in the bankruptcy

23   right now, your Honor.

24             THE COURT:  All right.  Anything you want to

25   add to that, anyone, either on creditors' committee --

1   yes, I'm sorry.

2          MR. MOLTON:  Thank you, your Honor.

3          THE COURT:  I'm sorry, you're Mr. Molton?

4          MR. MOLTON:  Mr. Molton, your Honor, from

5   Brown, Rudnick.  Mr. Gottfried just gave his report, but

6   last week, there was a hearing in front of Judge Boroff,

7   among other things, that happened at that hearing is

8   that Judge Boroff did grant the trustees' motion, which

9   was supported by the creditors' committee, to extend out

02:13PM   10   the removal deadlines pursuant to Section 1452 of

11   Title 28, and those have been extended for an interim

12   period of a number of months subject to further

13   extension.

14          I do note, your Honor, that I don't believe,

15   and Mr. Gottfried will tell me if I'm wrong, but I don't

16   believe there were any objections to that motion

17   whatsoever.

18          Second, your Honor, the committees filed a

19   motion, as required to do pursuant to the bankruptcy

02:13PM   20   law, the code, to establish a creditors' committee, a

21   victim's website, and that's coming in front of

22   Judge Boroff again on the 17th of this month, where, if

23   all goes well, the Judge will enter an order that

24   establishes that website, which will provide information

25   as to the bankruptcy and other related issues to

1    creditors of NECP, including tort claimants, as well as

2    trade creditors or other creditors.

3              I do want to note, your Honor, that the

4    trustee and the committee are working very hard on

5    orders that will be establishing bar dates, some of

6    which may come in front of your Honor, and those orders

7    may impact and have case management implications in this

8    court, the MDL as well as have implications in the

9    bankruptcy as well.

02:14PM  10              THE COURT:  Explain that to me.

11              MR. MOLTON:   Judge, what we're doing is

12   setting forth a bar date procedure, and part of that

13   will require claims to be filed either in the bankruptcy

14   court or by way of plenary action in this court,

15   depending on certain circumstances.

16              The trustee and the committee have liaised

17   on that over the last couple of weeks.  I know that

18   other people are getting involved in taking a look at

19   that as well, and that's one component of that order,

02:15PM  20   your Honor, that will establish filing procedures both

21   with respect to meeting a bar date in the bankruptcy

22   court, which may involve filing of actions in this court

23   as well that for certain actions will be sufficient to

24   meet the bar date.

25              We're not yet ready to bring that to your

```
 1   Honor, but I do want to let your Honor know of it.  Part
 2   of that order also may have case management procedures
 3   in it, and I do note that your Honor is aware of some of
 4   the case management orders that were entered in other
 5   cases including I know in the trustees' motion, he
 6   submitted to you the Ephedra case management order that
 7   has within it mediation requirements and other various
 8   provisions that seek to progress and implement possible
 9   resolutions of matters in an expeditious manner, but
10   that's ongoing, your Honor, and that's not yet ready to
11   be brought out in front of this Court, but hopefully
12   soon.
13             THE COURT:  Okay.  Anything else in terms of
14   an update on the Chapter 11 proceeding?
15             MR. MOLTON:  Judge, that's it from our side.
16             THE COURT:  All right.  In no particular
17   order, the question or the questions on my mind is what
18   makes sense to tackle next?  I have these Alaunus
19   motions to dismiss, I have a number of matters that are
20   somewhat suspended in mid-air, but are we going to
21   develop, for example, a master complaint and a master
22   answer?  Should that be put on a -- should that be made
23   a priority?  Is there anything with regard to discovery
24   that makes sense for me to address now?
25             Ms. Parker, what's your view?  What do you
```

1    think I should do next?

2            MS. PARKER:  I have to tell you, your Honor,

3    no Judge has ever asked me that directly before.

4            THE COURT:  I wouldn't say I would agree

5    with you, I am just asking for your opinion.

6            MS. PARKER:  I appreciate that.  Since the

7    PSC is newly appointed, your Honor, we would appreciate

8    a short period of time to consider, to meet, to discuss

9    amongst ourselves also with the trustee and report back

02:17PM  10    to your Honor how we think we should move forward.

11            Among the things that we will be discussing

12    certainly are the idea of a master complaint and perhaps

13    master answer and certainly discovery.  As to the

14    Alaunus motion to dismiss, I believe that the Court's

15    remarks at the last status conference had rolled over

16    that deadline until at least today to respond to those

17    motions.

18            THE COURT:  It's something of a placeholder,

19    in other words, if I wanted to decide today, I could set

02:18PM  20    a briefing for a response to that and just take it up,

21    it's not in every case, or I could await the development

22    of a master complaint.  I'm not sure it makes sense to

23    wait or not, I'm not sure what the most economical thing

24    to do is.

25            If there are parties in the case that don't

1    belong, we could get rid of them.  On the other hand, if

2    it's a Rule 8 issue, if it's just a pleading issue, I

3    haven't really gained much of anything if I'm dismissing

4    a small number of individual complaints with a master

5    complaint that names Alaunus to follow, so that's why

6    I'm teeing it up.

7              MS. PARKER:  Our suggestion, your Honor,

8    would be that you continue the deadline to respond to

9    those motions to dismiss, at least until the PSC is able

02:18PM    10    to formulate a suggestion as to whether we move forward

11    with the master complaint.

12              As you've recognized today and I think we've

13    discussed last time, if there is a master complaint

14    naming Alaunus, we may wind up litigating this all over

15    again, so while we have no interest in stalling that

16    procedure, we would ask for a little bit of time.

17              THE COURT:  All right.  Again, this is easy

18    for me to say and may be difficult in practice, but in

19    every large litigation I've ever been involved in, there

02:19PM    20    are what I'll call peripheral parties, some of whom

21    belong in the case and some of whom don't, and I think

22    it would be desirable to sort that out sooner rather

23    than later to the extent that we can fairly under the

24    rules of procedure, but I guess I'm inclined to follow

25    your suggestion, at least put that on pause for now.

1          Who represents Alaunus again?

2          MR. LEVY:  Franklin Levy, your Honor, and

3    Ryan Ciporkin.  That's fine with us, we filed our

4    motions, and we're just awaiting the decision.  I think

5    a response has been filed as well.

6          MR. CIPORKIN:  Responses have been filed in

7    three cases.  There's a number of them that no

8    opposition has been filed.

9          THE COURT:  I think I suspended filing of

02:20PM  10    oppositions I think until today, and I expect to roll

11    that over.

12          MR. LEVY:  We'll just sit and wait.

13          THE COURT:  All right.  That applies as

14    well, there are complaints obviously that have not been

15    responded to.  I'm going to extend that deadline as

16    well, and what I'm thinking of in terms of discovery, I

17    guess, is, again, I would like to accomplish anything

18    that can be accomplished in short term that we know will

19    not be wasteful activity, for example, the collection of

02:20PM  20    plaintiffs' medical records, medical authorizations,

21    product I.D. information.

22          It seems to me no matter what form this case

23    takes going forward, that information will be relevant

24    and useful.  I don't see any real reason for delaying

25    that terribly long.  What is plaintiff's view on that?

1   And I understand the PSC has just been appointed and you

2   may not have had a chance to discuss it.

3              MS. PARKER:  On a voluntary basis, your

4   Honor, the plaintiffs have undertaken the process of

5   collecting medical records and product I.D. records.

6   We've been doing that without a Court Order in place but

7   as a matter of course.

8              We also had early on in this litigation,

9   before NECC filed for bankruptcy, had begun the process

02:21PM   10   of negotiating with the defendants on how we might go

11   about that process including what the particular

12   releases would be.  I think we're ready to continue

13   those discussions with the defendants, and we will

14   continue working on that.

15              THE COURT:  Okay.  Yes, I'm sorry, did you

16   want to --

17              MR. FERN:  No.

18              THE COURT:  Did you want to say something,

19   Mr. Molton?

02:21PM   20              MR. MOLTON:  Yes, I'm sorry, your Honor, I

21   do want to note, your Honor, that one of the things

22   relating to the bar date and the claims filing procedure

23   is that part of that may be and probably will be an

24   information sheet that will assist all the parties to

25   this MDL as well as the bankruptcy in understanding each

1  plaintiff's claim.  They'll be confidentiality aspects

2  to that as well, but also in conjunction with that and

3  as part of the contemplated bar date and claims order,

4  your Honor, would also be a requirement to serve a

5  medical release, basically have each plaintiff who's

6  filing a claim submit a medical release form that

7  complies with law.

8          So, these are things also that are pertinent

9  to the bankruptcy claims filing that may be part of

02:22PM  10  again, you know, a coordinated order between you and

11  Judge Boroff.

12          MS. ANDREWS:  Your Honor, I'd just like to

13  add to those comments.  Part of the hard work of the

14  creditors' committee, and it's made up of nine tort

15  claim representatives has been to actively work with the

16  trustee and with other parties to bring this information

17  sheet into the claims process.

18          The challenge of a creditor group in a case

19  like this, particularly a case with this amount of

02:23PM  20  injuries and an ongoing type of medical injury, is to

21  get its arms around the creditors, the creditor group,

22  the size and number of them, the types of damages they

23  have so that the process of dealing with those claims,

24  including allowance of claims and disallowance of claims

25  and the interplay between this court and the bankruptcy

1    court, can be very well handled and managed with an

2    information process that Mr. Molton and Mr. Gottfried

3    and the trustee have been working on and the creditor's

4    committee fully supports.

5                THE COURT:  Okay.  Anyone else want to weigh

6    in on any issues relating to discovery?  I guess what I

7    would propose is rolling over the stay of discovery in

8    this litigation for the time being as these issues

9    continue to develop and unfold.

02:24PM  10                Does anyone want to be heard on that?  All

11   right, hearing nothing --

12               MR. FERN:  Judge, no objection there, in

13   speaking to the trustee before appearing in court this

14   morning, this afternoon, the trustee also agrees with

15   the continuation of the discovery stay.  I assume

16   Ameridose also joins in that.

17               MR. DEAN:  Yes.

18               THE COURT:  Okay.  Backing up a little bit,

19   as I indicated, I'm going to issue an MDL order

02:24PM  20   concerning funding of costs on the plaintiff's side of

21   the house.  That gave me some pause just because

22   I -- well, I'm not entirely confident as to whether this

23   is the approach that ought to be taken because it's in

24   part a Court Order addressing things that might

25   otherwise be covered by a private agreement.

1          I'm going to issue an order in substantially

2     the form that was suggested to me.  If for some reason a

3     dispute arises or people think that somehow as a result

4     they're not treated fairly, it is by no means carved in

5     stone, and I will be prepared to either modify the order

6     or take up issues that are within my authority and

7     jurisdiction, but I am convinced that issuing an order

8     of that nature is necessary under the circumstances.

9          Is there anything else on any topic that

02:25PM   10     anyone wants to take up?  Let me start with the

11     plaintiffs, Mr. Sobol or Ms. Parker?

12          MR. SOBOL:  May I address the Court standing

13     up?  Your Honor, I break out in hives sitting down

14     addressing the Court.

15          THE COURT:  The only reason I'm having

16     people sit down, so the people on the phone can hear

17     you, as long as you're loud enough that the mic. will

18     pick up.

19          MR. SOBOL:  The only thing I wanted to

02:26PM   20     address with your Honor, and there's nothing that you

21     need to act on, but I just wanted to make it clear at

22     this very early stage of the PSC that although there was

23     a difference of opinion among the applicants for the

24     plaintiffs' steering committee position, it's the

25     intention of the PSC that you have put in place to work

1    and to strive to have the greatest participation

2    possible by all the other lawyers that are out there.

3            In particular, there are eight members of

4    the creditors' committee that have been doing very

5    significant, very serious work, and we're going to not

6    have any duplication, and we're going to not recreate

7    any new wheels with them, they've been doing a fantastic

8    job.

9            There are other lawyers that are out there

02:26PM   10    as well, including Mr. Ellis, who I have known and

11    worked with for 30 years, so and I know that's a little

12    bit of a grand-standing thing, but I just want to --

13    because there's some people that are on the phone, and

14    we're getting going right now, and I haven't gotten my

15    e-mail out to everybody, and I want this Court to know,

16    too, that from the plaintiff's point of view, it's going

17    to be many hands makes light work, and it's not going to

18    just be from the PSC.

19            THE COURT:  I'll echo that thought.  First

02:27PM   20    off, that's what I hope and expect will happen.  Second,

21    I found the decision unusually difficult because both

22    sets of lawyers were well qualified, extremely well

23    qualified, and I have particular -- I don't know the

24    out-of-state lawyers, but certainly I know Mr. Ellis

25    well enough by experience and reputation to have a very

1    high opinion of him, and I was concerned about, you

2    know, to what extend there should or should not be an

3    overlap of the creditors' committee, but I do appreciate

4    the remarks you've made, and I hope it goes forward as

5    you indicated.

6              All right.  Anything else from the

7    plaintiffs?  All right, nothing.  Anything any defense

8    counsel wants to take up?

9              MR. DEAN:  Your Honor, Richard Dean.  You

02:28PM  10    made brief reference to it, but we do need to have an

11    agreed date by which answers are due because you

12    continued the answer date to complaints to today's

13    hearing.

14              THE COURT:  Yes.

15              MR. DEAN:  We need to know what that is.

16              THE COURT:  Yes, what I'm going to do is set

17    another status conference date.  I'm going to roll that

18    over because I expect it's going to be folded into a

19    master complaint and that we won't have to go through

02:28PM  20    this exercise, but, in the meantime, I'm just going to

21    keep extending it for want of a better idea.

22              Peter, let me look at the calendar.  I might

23    as well try to set that date right now.  In terms of the

24    next conference, I have the afternoon of Monday, May 6th

25    is available.  Again, I know it's going to be impossible

1  to have everyone agree on a date.  I have some time in

2  the prior week, but it's more crowded or I can go later

3  into that week.  Does anyone have a preference?  I think

4  Monday, May 6th works best for me.

5           MR. SOBOL:  If I may, your Honor?

6           THE COURT:  Yes.

7           MR. SOBOL:  That date is fine from the PSC's

8  point of view.  I just want to remark, although I'm not

9  trying to change the date, that the briefing is going to

02:30PM  10  be completed on May 13th for the other procedural

11  matters that are important, and I don't know if the

12  Court intends to have an argument, but you might

13  consider having the status conference and argument on

14  the same date, if that's your prerogative.

15           THE COURT:  All right.  We could do that on

16  Wednesday, May 15th.  That's perfectly sensible to me,

17  and we can have argument that day, 2:00, Wednesday,

18  May 15th.

19           MS. PARKER:  That's fine for the plaintiffs,

02:30PM  20  your Honor.

21           MR. FERN:  Judge, I apologize, May 15th is

22  the National Drug and Device meeting by the Defense

23  Research Institute, and I know Mr. Dean will be

24  attending, as will I.

25           THE COURT:  Where is that going to be?

```
 1              MR. FERN:  In New York City.

 2              THE COURT:  Not Las Vegas?

 3              MR. FERN:  New York City on Seventh Avenue,

 4    Judge.

 5              THE COURT:  How about the --

 6              MR. SOBOL:  The 16th?

 7              MR. FERN:  Monday, Tuesday would be fine, if

 8    the Court's schedule can accommodate us.

 9              THE COURT:  Monday, the 13th is the day the

10    reply briefs are due.  How about Tuesday, the 14th, at

11    2:00?

12              MS. PARKER:  That's fine, your Honor.

13              THE COURT:  And Mr. Gottfried, does that

14    work for you?

15              MR. GOTTFRIED:  The 14th is fine at 2:00,

16    thank you, your Honor.

17              THE COURT:  Why don't we do that.  It will

18    be a further status conference.  I'll also hear argument

19    on Chapter 11 trustees' motion and related motions, and

20    I will extend the time in which parties may respond to

21    motions to dismiss by Alaunus and the time in which

22    parties should respond to any pending complaint to

23    May 14th, and I'll stay discovery till May 14th as well.

24              Does that cover everything?  Have I

25    forgotten to extend anything?
```

02:31PM (line 10)

02:31PM (line 20)

1          MS. PARKER:  I believe that's everything,

2    your Honor.

3          THE COURT:  Again, I will try to get that

4    procedural order concerning the Chapter 11 motion,

5    Chapter 11 trustee as a motion out tomorrow as well as

6    the remaining procedural orders governing the PSC.

7          I notice, by the way, as a procedural

8    matter, things are still being docketed both with the

9    MDL number and the Erkan number, 12052.  My

02:33PM   10    understanding is that everything relating to all cases

11    was going to be in the MDL docket, which is creating

12    some confusion on my part.  I don't know if that was

13    intentional or not, but unless anyone thinks that's a

14    bad idea, if it's an Erkan-related motion, it needs to

15    be on the Erkan docket, but if it relates to all

16    actions, it needs to be on the MDL docket to make sure I

17    see it and I don't have to keep checking back and forth.

18          Does anyone have an issue with that?  I

19    think it's probably just people are using an old caption

02:33PM   20    or something or filing on CM-ECF in the wrong place, and

21    I'm easily confused anyway, and this is not helping.

22          All right.  Pending further order then, if

23    it's a document that relates to all cases, it will be

24    filed in the MDL docket so I can at least look at it and

25    see what's going on, hopefully.

1           All right.  Anyone else want to be heard on

2    any topic at all?  Yes, sir.

3           MR. MOLTON:  Your Honor, David Molton again.

4    This is out of my bailiwick, and I didn't have an

5    opportunity to talk with the other parties, but one of

6    our members passed up and asked me to raise this issue,

7    and I'm certainly not an expert on it, but apparently

8    with respect to a number of the cases that are pending

9    in front of your Honor and especially cases that are

02:34PM  10    being transferred in, what I've been told is that under

11    various local laws, there may be certain filing

12    deadlines in addition to the filing of the complaint

13    such as certificates of merit and other state

14    law-related guidelines or deadlines, and what our

15    committee member asked me to do is to raise this issue

16    with your Honor and see whether, you know, what your

17    Honor's view is with respect to the cases in front of

18    your Honor, at least for the time being for those cases

19    for which there are these state law extra filing

02:34PM  20    deadlines, as I would call them.

21           I'm staying those or holding those over so

22    that that can be dealt with in a more fulsome matter at

23    the next status conference.

24           THE COURT:  I guess the first question is,

25    as an Erie issue there, does this apply in Federal Court

1    at all?  I don't know what a certificate of merit is.  I

2    don't know how they apply or not.  I will freely grant

3    extensions if this is something that needs to be done,

4    but I guess I'd be surprised -- if it's a state law

5    procedural issue, I'd be surprised if it applied in

6    Federal Court.

7              If it's a local rule of let's say the

8    District of Minnesota or The Middle District of

9    Tennessee, I would assume, without having given it very

02:35PM 10   much thought, that our law rules now take over because

11   the case is pending in front of me and would supersede

12   that, and if I need to issue any orders or grant relief

13   to work this through, I'm happy to do that.

14             It's kind of an abstract question without

15   knowing.

16             MR. MOLTON:  From my end, too, I'm sorry.

17             THE COURT:  No, that's fine.

18             MS. ANDREWS:  Your Honor --

19             THE COURT:  Yes.

02:35PM 20        MS. ANDREWS:  -- this is Anne Andrews,

21   excuse me.  My committee colleague indicates that it is

22   a substantive issue, it would be subject to the Erie

23   doctrine, and if perhaps by letter, brief or some other

24   method we could bring that issue before the Court, it is

25   a very big issue limiting in some states where they've

1    been removed or transferred here, and we're going to

2    need some guidance at some level, and Mr. Wright is in

3    the court, and it is of greatest concern to him, if

4    you'd like him to address it with you briefly.

5                  THE COURT:  Mr. Wright.  I'm sorry, where

6    are you from?

7                  MR. WRIGHT:  I'm from Florida, your Honor, I

8    didn't sign in, but in Florida actions against

9    healthcare providers, for example, would have to go

02:36PM  10   through a presuit screening and investigation procedure,

11   and I think it's true in a number of states under the

12   state's substantive law.

13                 THE COURT:  Would that apply to a

14   compounding pharmacy as well as direct provider?

15                 MR. WRIGHT:  It would not apply to the

16   compounding pharmacy, but it would apply to the clinics

17   that distributed the product who would be brought in a

18   joint action.

19                 THE COURT:  All right.

02:37PM  20                 MR. SOBOL:  I'll suggest, your Honor, that

21   we can work with Mr. Wright to prepare a proposed order,

22   obviously run it by the defendants as well.

23                 THE COURT:  The one thing that Ms. Andrews

24   referenced, a letter brief.  If you're asking me to do

25   anything, call it a motion and check the right box

1   because otherwise it disappears in cyberspace.  I look

2   on the system for pending motions, and if it doesn't

3   have that signal, I may not see it for some time.

4            MR. WRIGHT:  Absolutely, absolutely.

5            THE COURT:  Okay.  Anything else on that

6   topic?  Yes, sir.

7            MR. BLUMBERG:  Your Honor, this is

8   Jay Blumberg.  I represent a number of defendants from

9   New Jersey, and it was on that very issue.  In

02:37PM 10   New Jersey, the substantive law is that there needs to

11   be an affidavit of merit filed within 120 days of the

12   answer being filed.

13            THE COURT:  Again, in an action against a

14   healthcare provider, is that the idea?

15            MR. BLUMBERG:  Yes, and I represent both the

16   physician as well as the surgical center in about 15 of

17   these cases, and I didn't want to run afoul of your

18   Honor's rulings as to whether these are appropriate

19   motions to bring or not given the status of what the

02:38PM 20   Court has done.

21            THE COURT:  Well, again, you'll just have to

22   tee that up.  Certainly in Massachusetts you can't bring

23   a medical malpractice action without it run through a

24   tribunal or posting a bond.  I mean, my experience is

25   most states have something like this, but how it applies

```
 1   in this case, I'll just have to take up on a one-by-one
 2   basis, and if what you need is an extension of time,
 3   I'll give that out freely, and if you need something
 4   else, I'll take it a step at a time.  I don't know what
 5   to tell you.
 6            MR. BLUMBERG:  Well, it's not me that would
 7   need the extension, it would be the plaintiff who has to
 8   file the affidavit of merit within 120 days.  I haven't
 9   seen an affidavit of merit at this point in time, and I
10   would file the appropriate motion within that time.
11   That may tee it up for your Honor so that you may decide
12   it at that point.
13            THE COURT:  All right.  And I don't know if
14   other states have this requirement.  In Massachusetts,
15   it takes time, you know, it goes through a tribunal, and
16   it takes awhile to get through it, and sometimes actions
17   are stayed pending that, and sometimes they go on
18   against other defendants.  Just present this issue to
19   me, if there's something I need to decide, and I will do
20   my best to decide it.  I don't know what else to say at
21   this point.
22            MR. BLUMBERG:  As long as I'm not running
23   afoul of your Honor's ruling, I have no problem doing
24   that.
25            THE COURT:  No.
```

02:39PM (line 10)
02:39PM (line 20)

1          MR. BLUMBERG:  And just so the Court's

2    aware, the claim against the physicians is not in

3    products liability but in negligence.

4          THE COURT:  Yes.  All right.  One more thing

5    on the list to do.  Anyone else want to raise any other

6    issues?  All right, thank you, all.

7          MR. FERN:  Judge, I'm sure your courtroom

8    deputy and your office has the entire list of cases

9    together, but in order to assist, if that hasn't been

02:40PM  10    done, I have two lists here, if I can approach, one with

11    all of the actions that have been transferred to your

12    Honor's court together with the CTO number which

13    transferred them.

14          THE COURT:  All right.

15          MR. FERN:  I also have another list of cases

16    that are not in the MDL either because NECC is not a

17    party, we have no standing to remove, or they were

18    subject to a CTO and there's a motion to vacate that's

19    pending so the transfer has not taken place.

02:40PM  20          THE COURT:  Okay.  Pending before the

21    judicial?

22          MR. FERN:  And if the Court would like, I

23    can make a call and have them sent electronically within

24    a half an hour.

25          THE COURT:  You can just hand those up.

1    Pending before the JPML, in other words, someone has

2    objected to the CTO?

3              MR. FERN:  Yes.

4              THE COURT:  All right.  Anyone else?  Unless

5    there's anything further, thank you, and I'll see you

6    next month.

7              MS. PARKER:  Thank you, your Honor.

8              (Whereupon, the hearing was adjourned at

9    2:41 p.m.)

02:41PM   10         C E R T I F I C A T E

11    UNITED STATES DISTRICT COURT )

12    DISTRICT OF MASSACHUSETTS ) ss.

13    CITY OF BOSTON )

14         I do hereby certify that the foregoing

15    transcript, Pages 1 through 36 inclusive, was recorded

16    by me stenographically at the time and place aforesaid

17    in MDL No. 13-2419-FDS, IN RE:  NEW ENGLAND COMPOUNDING

18    PHARMACY CASES LITIGATION and thereafter by me reduced

19    to typewriting and is a true and accurate record of the

20    proceedings.

21         Dated this 25th day of April, 2013.

22              s/s Valerie A. O'Hara

23              _____

24              VALERIE A. O'HARA

25              OFFICIAL COURT REPORTER