# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | MDL No. 2419<br>Master Dkt.: 1:13-md-02419-FDS |
| THIS DOCUMENT RELATES TO:<br><br>All Actions | |

**PLAINTIFFS' STEERING COMMITTEE'S MEMORANDUM IN SUPPORT OF**
**<u>MOTION TO PARTIALLY LIFT DISCOVERY STAY</u>**

**INTRODUCTION**

The Plaintiffs' Steering Committee requests this Court to partially lift the discovery stay to permit plaintiffs to take discovery of persons or entities – other than New England Compounding Company Pharmacy, Inc. ("NECP") and those persons and entities employed by, or, directly or indirectly, affiliated with NECP – who may have some responsibility for the tort plaintiffs' injuries.

At the last status conference, this Court asked whether it was time to lift the discovery stay. The Plaintiffs' Steering Committee has determined that partially lifting the stay is appropriate. Discovery stays are always disfavored. Permitting discovery from defendants (and potential defendants) other than NECP affiliated entities will permit the Plaintiffs' Steering Committee to evaluate plaintiffs' claims and facilitate drafting a master complaint.

Through no fault of anyone, the period of early bankruptcy proceedings and the organization of plaintiffs' counsel has required all parties to await the development of the factual record (which enables the filing of a master complaint, the assertion of defenses, and the expeditious prosecution of claims). The Plaintiffs' Steering Committee is now ready to begin the real work of this MDL – efficiently developing facts and the legal claims and defenses of current and prospective parties to achieve the just adjudication of claims.

The Plaintiffs' Steering Committee will propose a more comprehensive case management order in the near future. The Plaintiffs' Steering Committee has filed its motion for partial relief from the discovery stay so that oppositions will be due before the next status conference (May 14, 2013). The Plaintiffs' Steering Committee requests the Court enter an order permitting discovery of persons and entities unaffiliated with NECP.

## PROCEDURAL HISTORY

On November 2, 2012, the first civil action alleging injuries caused by New England Compounding Pharmacy, Inc. was filed in the District of Massachusetts. Other actions soon followed.

On December 21, 2012, New England Compounding Pharmacy, Inc. filed for bankruptcy. The bankruptcy filing triggered an automatic stay of actions against NECP or property of its estate.

On February 12, 2013, the Judicial Panel on Multidistrict Litigation created an MDL and transferred all actions pending in Federal Court against NECP to this district for coordinated pretrial proceedings before this Court.

All discovery in all MDL actions have been functionally stayed since December 2012. The Court formalized the stay of discovery during subsequent status conferences. *See*, *e.g.*, March 12, 2013 Docket Entry, extending discovery stay until next status conference, Dkt. No. 84.

At the last status conference, the Court asked whether discovery should be reopened. The newly appointed Plaintiffs' Steering Committee asked for a short period of time to respond to the Court's question. This motion reflects the Plaintiffs' Steering Committee's reasoned consideration of how now best to proceed with initial discovery.

## ARGUMENT

**A.     The Plaintiffs' Steering Committee is NOT seeking discovery from NECP or affiliated entities.**

The Plaintiffs' Steering Committee does not – right now – intend to pursue formal discovery against NECP, its principals, or those persons and entities employed by, or, directly or indirectly, affiliated with NECP. This motion does *not* seek permission to take formal discovery

2

from New England Compounding Pharmacy, Inc., Carla R. Conigliaro, Barry J. Cadden, Lisa M. Conigliaro Cadden, Gregory A. Conigliaro, Douglas Conigliaro, Glenn Chin, or any of NECP's former employees, Medical Sales Management, Inc., Alaunus Pharmaceuticals, LLC, Ameridose, LLC, GDC Properties Management LLC, GDC Holdings, Inc., or any other entity owned or operated by any of the foregoing.[1]

The Chapter 11 Trustee has established a protocol for settlement discussions with most, if not all, of the NECP-affiliated defendants. The Plaintiffs' Steering Committee – including Lead Counsel – accepts the Trustee's judgment that initiating settlement discussions in the bankruptcy is now appropriate. If and when it is appropriate to conduct settlement discussions on behalf of all or a group of plaintiffs, the Plaintiffs' Steering Committee will coordinate those efforts with the Trustee and others.[2]

Depending upon how the settlement discussions proceed, the Plaintiffs' Steering Committee may, later, undertake discovery against some or all NECP-affiliated entities for the purpose of establishing their liability. If and when the Plaintiffs' Steering Committee determines that discovery of the NECP-affiliated entities or individuals is appropriate, they will discuss the

---

[1] For a helpful discussion about resolving mass tort claims in a bankruptcy context, *see* Douglas G. Smith, "Resolution of Mass Tort Claims in the Bankruptcy System," 41 *University of California, Davis* 1613 (2008); S. Elizabeth Gibson, "Judicial Management of Mass Tort Bankruptcy Cases," Federal Judicial Center (2005).

[2] MDL Order No. 2: Order Appointing Lead Counsel, Federal-State Liaison Counsel, and Plaintiffs' Steering Committee dated April 9, 2013 in *In Re: New England Compounding Pharmacy, Inc. Products Liability Litigation* [Dkt. No. 82]. The order provides for the involvement of Lead Counsel "in any class or group settlement discussions, whether with a single defendant or multiple defendants, whether taking place in the MDL or the bankruptcy." (Order at §7). The order also provides that the Plaintiffs' Steering Committee shall have authority "to negotiate and propose settlement of cases on behalf of plaintiffs or plaintiff groups, including exploring and, where appropriate, pursuing all settlement options concerning any claim or portion thereof of any case filed in this litigation." (Order at §8(D)(1)).

contours of any contemplated discovery with the Trustee and ask the Court(s) for appropriate relief.

**B.    The Plaintiffs' Steering Committee seeks leave to take discovery from other potentially liable entities.**

In the past six months, NECP filed for bankruptcy, the Judicial Panel on Multidistrict Litigation created an MDL and transferred all actions against NECP to this district, and this Court has put in place a plaintiffs' leadership structure to govern tort plaintiffs' claims. Discovery – against all defendants – has been effectively stayed in the pending federal cases since December 21, 2012.  In the meantime, the CDC reports that the death toll has climbed to 54, with 733 instances of fungal infections linked to NECP steroid injections.[3]

Now that the groundwork has been laid, it is time to get going.  While progress has been made with respect to NECP and affiliated entities through the Trustee's work on the bankruptcy side, it is the Plaintiffs' Steering Committee's understanding that little progress has been made with respect to developing a tactical record with respect to entities or individuals who may have played a role in the outbreak but are not directly affiliated with NECP.  The only way to advance these claims, and ultimately reach a recovery, against those entities is to permit discovery.

**1.    Discovery stays are disfavored.**

The First Circuit has cautioned that a stay cannot be cavalierly dispensed:  there must be good cause for its issuance; it must be reasonable in duration; and the Court must ensure that competing equities are weighed and balanced.  *Marquis v. Federal Deposit Ins. Corp.*, 965 F.2d 1148, 1155 (1st Cir. 1992).  It is well-settled that staying discovery is "disfavored because discovery stays may interfere with judicial efficiency and cause unnecessary litigation in the

---

[3] http://www.cdc.gov/hai/outbreaks/meningitis-map-large.html.

future." *O'neal v. NCO Fin. Sys., Inc.*, Case No. 06cv16, 2006 U.S. Dist. LEXIS 83505, *5 (S.D. Cal November 16, 2006) (citing *Feldman v. Flood*, 176 F.R.D. 651, 652 (M.D. Fla. 1997). Stays should only be granted when a party seeking the stay meets the "heavy burden of making a 'strong showing' why discovery should be denied… [by showing] a particular or specific need for the stay, as opposed to making stereotyped or conclusory statements," *Skellerup v. City of Los Angeles*, 163 F.R.D. 598, 600 (C.D. Cal. 1995), and where "justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Qwest Communs. Corp. v. Herakles, LLC*, Case No 2:07-cv-00393 2007 U.S. Dist. LEXIS 57757 (E.D. Cal. August 8, 2007).

**2.     Permitting targeted discovery of non-NECP defendants now is appropriate.**

The Plaintiffs' Steering Committee seeks leave to conduct discovery against unaffiliated, non-NECP entities and individuals, including vendors, clinics, medical service providers, and distributors not directly affiliated with NECP that had some role in providing patients with the NECP pharmaceuticals believed to have caused the tort plaintiffs' injuries.

The Plaintiffs' Steering Committee considered whether to simultaneously seek relief from the bankruptcy court, but determined that the automatic stay does not apply to entities unaffiliated with the debtor. The Plaintiffs' Steering Committee thus concluded that no relief from the bankruptcy stay was required.

Plaintiffs intend to take discovery of the following entities (without limitation):

- Pain clinics, hospitals, and other healthcare providers who purchased NECP's methyl prednisolone acetate, cardioplegic solution, or ophthalmic solution;
- Vendors and contractors who worked on or were responsible for the conditions of the NECP facility;

5

- Vendors who conducted sterility or other testing of NECP's products or equipment used to make the products; and

- Suppliers who provided the raw materials used to create methyl prednisolone acetate, cardioplegic solution, or ophthalmic solution.

From the clinics and healthcare providers, the Plaintiffs' Steering Committee intends to seek, in part, information about their purchases from NECP; the patients who received NECP products during the twelve months before the recall; the physicians who dispensed NECP's products; the processes for storing and dispensing NECP's products on site; the volume of products that were purchased and dispensed; whether their purchases were in compliance with state laws requiring individual prescriptions for each patient; their knowledge of the risks of compounded products;  and what marketing entities (if any) they interacted with relative to NECP's products.

From the contractors, the Plaintiffs' Steering Committee intends to seek, in part, information about repairs undertaken by those contractors at the NECP facility (including but not limited to repairs or changes made to the roof, façade, and clean rooms); their representations to NECP about the work that was done; and the conditions of the facility both before and after the repairs.

For the vendors who conducted sterility or other testing, the Plaintiffs' Steering Committee intends to seek, in part, information about all sterility test results for methyl prednisolone acetate, cardioplegic solution, and ophthalmic solution ("NECP products") conducted in the past two years; test results for equipment used in the manufacture of the contaminated products; how often testing was done; the vendors' procedures for dealing with

negative test results; and identification of individuals involved in conducting sterility and other testing of NECP's products, equipment, or facilities.

For the suppliers of ingredients used to manufacture the contaminated products, the Plaintiffs' Steering Committee intends to seek, in part, information about the ingredients provided by each vendor; each vendors' representations about sterility of various ingredients; and whether vendors ever reported sterility problems to NECP or others.

This list is not intended to be comprehensive; rather, it is an effort to identify for the Court the types of information we intend to obtain as a result of partially lifting the discovery stay. All of this information will be helpful in evaluating the plaintiffs' claims and drafting a master complaint (at an appropriate time).

This discovery will also aid the Trustee in his settlement discussions on the bankruptcy side. The Trustee agrees with the Plaintiffs' Steering Committee that this targeted discovery of non-NECP affiliated entities is timely and appropriate.

At this time, there is no reason to continue the discovery stay as it relates to entities unaffiliated with the Debtor.

## CONCLUSION

Accordingly, based on the above, Plaintiffs, through the Plaintiffs' Steering Committee, respectfully request the Court lift the discovery stay for the limited purpose of allowing Plaintiffs to obtain discovery from clinics, medical service providers, and distributors unaffiliated with NECP but nevertheless may have had some role in providing subject NECP pharmaceuticals to patients.

Dated:  April 29, 2013

*/s/ Thomas M. Sobol*
Thomas M. Sobol
Kristen Johnson Parker
HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Phone: (617) 482-3700
Fax: (617) 482-3003
tom@hbsslaw.com
kristenjp@hbsslaw.com

*Plaintiffs' Lead Counsel*

Elizabeth J. Cabraser
Mark P. Chalos
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111
Phone: (415) 956-1000
Fax: (415) 956-1008
ecabraser@lchb.com
mchalos@lchb.com

*Federal/State Liaison*

Marc E. Lipton
LIPTON LAW
18930 W. 10 Mile Road
Southfield, MI 48075
Phone: (248) 557-1688
Fax: (248) 557-6344
marc@liptonlawcenter.com

Kim Dougherty
JANET, JENNER & SUGGS, LLC
75 Arlington St.
Suite 500
Boston, MA 02116
Phone: (617) 933-1265
kdougherty@myadvocates.com

Patrick T. Fennell

CRANDALL & KATT
366 Elm Avenue, S.W.
Roanoke, Virginia 24016
Phone:  (540) 342-2000
pfennell@crandalllaw.com

J. Gerard Stranch, IV
Benjamin A. Gastel
BRANSETTER, STRANCH & JENNINGS PLLC
227 Second Avenue North
Nashville, TN  37201
Phone: (615) 254-8801
Fax: (615) 255-5419
gerards@branstetterlaw.com

Mark Zamora
ZAMORA FIRM
6 Concourse Parkway, 22nd Floor
Atlanta, GA 30328
Phone: (404) 451-7781
Fax: (404) 506-9223
mark@markzamora.com

*Plaintiffs' Steering Committee*

**CERTIFICATE OF SERVICE**

I, Thomas M. Sobol, hereby certify that I caused a copy of the foregoing to be filed electronically via the Court's electronic filing system. Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system, and notice of these filings will be sent to these parties by operation of the Court's electronic filing system.

Dated: April 29, 2013

*/s/ Thomas M. Sobol*
Thomas M. Sobol, BBO # 471770