UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates To:<br><br>All Cases | MDL No. 1:13-md-02419<br><br>Hon. F. Dennis Saylor, IV |

**OPPOSITION TO TRUSTEE'S MOTION TO TRANSFER FILED ON BEHALF OF VIRGINIA PLAINTIFFS IN CASES NOT NAMING NECC AS A DEFENDANT**

The Trustee for the Estate of New England Compounding Pharmacy, Inc. ("NECC" or the "Debtor") has moved to transfer numerous personal injury cases pending in various courts to the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. §§ 157(b)(5) and 1334(b). Exhibit A4 of the Trustee's motion identifies "Cases Naming Non-Debtor Defendants Only." The majority of these cases were filed in Roanoke, Virginia, against Insight Health Corp., Insight Health Services Corp., Image Guided Pain Management, P.C., John Mathis, M.D., and Robert O'Brien, M.D., (the "Insight Defendants"), and include cases brought by the following plaintiffs represented by the Frith & Ellerman Law Firm: Chance Everett Baker; Patrick Johnston; and, Ferman Wertz (the "Roanoke Frith & Ellerman Plaintiffs").

The Roanoke Frith & Ellerman Plaintiffs appear specially, by counsel, to oppose the Trustee's motion to transfer on the following grounds: (a) the "related to" jurisdiction

1

under 28 U.S.C. § 1334(b) does not extend to these non-debtor cases because the Insight Defendants are unaffiliated with the debtor and the only possible connection is a potential, unliquidated claim for contribution; (b) the Court should nonetheless abstain from exercising jurisdiction under 28 U.S.C. § 1334(c)(1) because these non-debtor cases involve unique and novel Virginia state-law theories of recovery.[1]

For the reasons set forth below, the Roanoke Frith & Ellerman Plaintiffs respectfully request that the Court deny the Trustee's motion to transfer its cases.

## Background

The Roanoke Frith & Ellerman Plaintiffs filed complaints in Virginia state court against the Insight Defendants after they received a contaminated steroid injection at the Insight Defendants' clinic and medical practice. The contaminated steroid injection was a drug called methylprednisolone acetate ("MPA") that had been sold to the Insight Defendants by NECC or a related distributor.[2] The Insight Defendants negligently and fraudulently administered MPA to each of the plaintiffs. Several months before their complaints were filed, NECC filed for bankruptcy protection in the United States District Court for the District of Massachusetts. The Roanoke Frith & Ellerman Plaintiffs had not yet completed its investigation in these cases prior to the bankruptcy filing, but nonetheless, they are not creditors of NECC nor have they filed a proof of claim against

---

[1] The Roanoke Frith & Ellerman Plaintiffs join the Roanoke Gentry Locke Plaintiffs in opposing the Trustee's motion and moving the Court to abstain from exercising "related to" jurisdiction in non-debtor cases for the reasons stated in the Roanoke Gentry Locke Plaintiffs' memorandum of law filed on March 19, 2013 in Case No. 1:12-cv-12052-FDS.

[2] The plaintiffs initially named Alaunus Pharmaceutical, LLC, as a defendant. The cases were removed to federal court. On April 29, 2013, the plaintiffs submitted a Notice of Voluntary Dismissal in the United States District Court for the Western District of Virginia, effectively removing Alaunus from each case. The remaining state law claims are exclusively focused on the Insight defendants, who are unaffiliated, non-debtor parties.

NECC at this time. Their claims against the Insight Defendants are based on different facts and arise <u>solely</u> from the activities of the unaffiliated non-debtor parties.

Each complaint has asserted the following theories of recovery under Virginia law: negligence, negligence *per se*, fraud, breach of express warranty, and breach of implied warranty. The negligence claim is based on the Insight Defendants' failure to exercise reasonable care in treating the plaintiffs for back pain and is governed by Virginia common law and the Virginia Medical Malpractice Act, Va. Code § 8.01-581.1, *et seq.* The negligence *per se* claims are based on a violation of the Virginia Drug Control Act. When a Virginia statute is adopted for public safety and the plaintiff is a member of the class of persons intended to be protected, and a violation of the statute causes injury, the plaintiff may recover damages without proof of actual negligence.

The claims against the Insight Defendants for fraud, breach of implied warranty, and breach of express warranty are based on allegations that the Insight Defendants deceived each plaintiff regarding the quality, identity and source of the MPA injected into their bodies. For example, the Insight Defendants told each plaintiff they were injected with Depo-Medrol, a brand name, trademarked drug made by Pfizer, Inc., which they billed to each insurer and wrote in the medical charts. Instead, the Insight Defendants had injected the plaintiffs with MPA, not Depo-Medrol. This pattern of practice may have been motivated by the Insight Defendants' desire to actively conceal the true source of the compounding medication it selected for its patients from the discerning scrutiny of health insurers and primary care doctors.

Under Virginia law, a plaintiff asserting a cause of action for actual fraud bears the burden of proving by clear and convincing evidence (a) a false representation, (b) of

a material fact, (c) made intentionally and knowingly, (d) with intent to mislead, (e) reliance by the party misled, and (f) resulting damage to the party misled. Evaluation Research Corp. v. Alequin, 247 Va. 143, 148 (1994) (citing Bryant v. Peckinpaugh, 241 Va. 172, 175 (1991)). Whether a claim for active fraud to a third party (the health insurer or the primary care doctor) may be asserted by the intended beneficiary (the patient-plaintiff) is a complicated, unsettled area of Virginia law. By bringing their claims in Virginia courts, the Roanoke Frith & Ellerman Plaintiffs have chosen a forum best suited to address these distinct, unique areas of state law against the non-debtor defendants.

**Statement of Relevant Facts**

The state-court complaints involve a common set of factual allegations against the Insight Defendants, except for individual details concerning medical treatment and damages. Rather than append all of the complaints to this brief, Chance Everett Baker's complaint is provided as representative of the allegations (attached as Exhibit A).

On September 12, 2012, the Insight Defendants injected Mr. Baker with MPA at Insight's Roanoke facility under the false pretense that it was another drug called Depo-Medrol. Exhibit A at 5-6, ¶¶32-34. Depo-Medrol is a drug made by Pfizer, Inc., to treat allergies and inflammation. Id. at 5-6, ¶¶32-34. When the Insight Defendants injected Mr. Baker with MPA, purported to be Depo-Medrol, he expected to receive medication to relieve back pain. Id. at 3, ¶10. Months earlier, the Insight Defendants had ordered batches of MPA for the Roanoke facility from NECC or a related distributor. Id. at 4, ¶19. The Insight Defendants knew that NECC products manufactured after May 2012 could be contaminated. Id. at 21, ¶26. Despite this knowledge, the Insight Defendants injected Mr. Baker with MPA and mislead him and his insurer to believe it was Depo-Medrol. Id.

4

at 6, ¶¶37-39. Both Mr. Baker's bill for services and his medical records from the Insight Defendants identified the drug as Depo-Medrol, not MPA. Id. at 6, ¶¶37-39.

On October 4, 2012, the Insight Defendants called Mr. Baker at home to advise that he had received contaminated MPA. Id. at 6, ¶41. Several days later, he began experiencing symptoms consistent with fungal meningitis, including nausea and severe headaches. Id. at 6, ¶42. He went to Carilion Roanoke Memorial Hospital, where he was diagnosed with fungal meningitis and began receiving in-hospital treatment. Id. at 7, ¶¶44-46. During his hospitalization, he experienced the debilitating side effects of treating meningitis. He suffered from uncontrollable shaking, swelling, and elevated heart rate. He lost control of his bowel movements and required a catheter.

Throughout this experience, he worried that his wife, who was several months' pregnant with their child, had somehow contracted the infection or their newborn might be harmed. As a proximate result of the defendants' fraud and negligence, Mr. Baker incurred significant medical expenses and suffered extraordinary physical pain and suffering, loss of enjoyment of life, and other injuries and damages. Id. at 13.

## Argument

**A.   The "related to" jurisdiction under 28 U.S.C. § 1334(b) does not extend to the Roanoke Cases against the Insight Defendants.**

The Court has original but not exclusive jurisdiction over civil proceedings that are "related to" the bankruptcy case. 28 U.S.C. § 1334(b) ("[t]he district courts shall have original but not exclusive jurisdiction of all civil proceedings … related to cases under title 11."). Such claims are "related to" the bankruptcy case if "the outcome of that proceeding could conceivably have any effect on the estate being administered in

bankruptcy." Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984). In other words, "the outcome [of the proceeding] could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and [could] in any way impact[] upon the handling and administration of the bankrupt estate." Id.

Under the Pacor test, the proximity of the relationship between the debtor and non-debtor defendants controls whether "related to" jurisdiction applies. Claims against parties closely affiliated with the debtor, such as officers, directors, and shareholders, are likely related to the debtor's bankruptcy case because of joint insurance coverage. See, e.g., Lindsey v. O'Brien, Tanski, Tanzer & Young Health Care Providers (In re Dow Corning Corp.), 86 F.3d 482, 490–94 (6th Cir. 1996); A.H. Robins v. Piccinin, 788 F.2d 994, 1007 (4th Cir. 1986) (affirming the district court's exercise of bankruptcy jurisdiction to stay mass tort actions against officers, directors, and employees of the debtor).

In this case, the Insight Defendants are unaffiliated, non-debtor parties, whose liability under Virginia law is independent of the NECC bankruptcy proceedings. They and NECC share no common ownership structure; they share no employees; and, they share no assets. Under these circumstances, courts have consistently and persuasively held that mass tort claims against unaffiliated non-debtor defendants are not related to the bankruptcy case under 28 U.S.C. § 1334(b). See, e.g., In re Federal-Mogul Global, Inc., 300 F.3d 368 (3d Cir. 2002); Pacor, Inc., 743 F.2d at 994; GAF Corp. v. Johns-Manville Corp. (In re Johns Manville Corp.), 26 B.R. 405 (Bankr. S.D.N.Y. 1983).

In Pacor, the plaintiff brought suit against the Philadelphia Asbestos Co. ("Pacor") for work-related exposure to asbestos. 743 F.2d at 986. Pacor filed a third-party complaint, alleging that the Johns-Manville Corporation was the original provider of the

6

asbestos. Id. Johns-Manville filed for Chapter 11 bankruptcy protection, and Pacor sought transfer to the district court in the bankruptcy forum. Id. The district court held that the original suit against Pacor was not "related to" the bankruptcy proceedings under 28 U.S.C. § 1471(b) (the predecessor statute to 28 U.S.C. § 1334(b)). Id. On appeal, the Third Circuit agreed with the plaintiff and held the original suit was unrelated to the Title 11 proceedings. Id. at 994. "For subject matter jurisdiction to exist, therefore, there must be some nexus between the 'related' civil proceeding and the title 11 case." Id. at 994 (citing In re Hall, 30 B.R. 799, 802 (M.D.Tenn.1983); 1 COLLIER ON BANKRUPTCY ¶ 3.01, at 3-48 to 3-49 (15th ed. 1982)).

As Pacor emphasized, "the mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of section 1471(b)." Id. In these cases, the only issue of fact that remotely overlaps with the NECC proceedings concerns the distribution of contaminated MPA to Virginia, and that issue is unlikely to be litigated to any significant degree in the bankruptcy forum because no party, including NECC or the Insight Defendants, will deny that the contaminated MPA caused the meningitis that infected the Roanoke Frith & Ellerman Plaintiffs.[3] Thus, the Trustee's call to consolidate "[e]xpert discovery, general medical causation and other scientific matters" has little bearing on the outcome of the non-debtor cases against the Insight Defendants, which will involve an entirely different set of facts and proof at trial.

---

[3] "Much of the work of developing and pursuing claims against some non-NECC defendants can and should be done by lawyers in states, such as Tennessee and Michigan, where the claims are clustered in state court proceedings…[t]his case has relatively little need to delve into science with experts to prove a drug is less effective than promised, or show the mechanism of the action for causing deaths… ." Thomas M. Sobol, Letter to the United States District Court for the District of Massachusetts, C.A. No.: 13-md-2419-FDS, February 27, 2013.

7

The salient issues in the Roanoke cases are similar to Pacor. The claims arise under facts that are distinct from the bankruptcy proceedings. Indeed, a transfer to the bankruptcy forum would frustrate the discovery process and increase the costs to the efficient resolution of the Insight claims. The witnesses in the Roanoke cases – the medical providers and their employees – are located hundreds of miles from Framingham, Massachusetts. As Attorney Sobol noted in his letter to the Court, the local attorneys are best positioned to fairly and expeditiously obtain discovery in claims against the non-debtor defendants. Further, the Insight Defendants are independently liable for committing actual fraud, and not merely because they were participants in the chain of distribution. The identity of the underlying drug was ancillary to the Insight Defendants' fraudulent conduct, which under Virginia law, is a separate claim. The Roanoke cases are different from the NECC proceedings because they involve conduct separate and apart from the products liability claims: the misuse, misidentification, and misrepresentation of the drug the Insight Defendants injected into the plaintiffs.

If the Roanoke Frith & Ellerman Plaintiffs obtain a judgment, the Pacor case recognized that distributors may find it difficult to seek recovery from the manufacturer of a defective product that declares bankruptcy. 743 F.2d at 996. But as the Third Circuit stated, "[m]iddlemen always face the possibility…that attempts to recoup such losses from their manufacturers or suppliers will be hindered, or even unsuccessful, and there is never a guarantee that the original manufacturers will not be judgment proof or found not susceptible to process." Id. Just as Pacor could not shield itself from the full measure of its liability by tagging along in Manville's bankruptcy, the Insight Defendants should not be permitted to escape judgment in the NECC proceedings.

**B.     The Insight Defendants' potential, unliquidated claim for contribution against NECC is insufficient to confer "related to" jurisdiction.**

The Insight Defendants' assertion of a potential, unliquidated claim for contribution in the event that the Roanoke Frith & Ellerman Plaintiffs obtain a judgment is insufficient to confer "related to" jurisdiction under 28 U.S.C. § 1334(b).

The Pacor case expressly held that Pacor's third-party complaint against Johns-Manville for contribution or indemnity was patently insufficient to confer jurisdiction. Id. at 995 ("At best, it is a mere precursor to the potential third party claim for indemnification by Pacor against Manville."). The Third Circuit persuasively held that a claim for contribution of indemnity had no effect on the bankruptcy estate because the outcome of the plaintiff's non-debtor case against Pacor was pending and uncertain. Id. Of course, if Pacor later brought a third party claim, the outcome in the plaintiff's non-debtor case would in no way bind the bankruptcy estate because "Manville is not a party to the Higgins-Pacor action" and the debtor would still be able to relitigate any issue and adopt any position in a subsequent claim and without prejudice. Id. Simply put, "the bankruptcy estate could not be affected in any way until the Pacor-Manville third party action is actually brought and tried." Id.

The same result should follow in this case. The Insight Defendants may have a potential, unliquidated claim for contribution against NECC or its distributors, but such claim does not accrue unless the Roanoke Frith & Ellerman Plaintiffs obtain a judgment. Only then would the Insight Defendants be able to bring such a claim under Virginia law, and even in those circumstances, the debtor would not be precluded from raising any defense it may have to the contribution or indemnity claims; indeed, the outcome of the

trial would have no effect on the bankruptcy estate because it would be entitled to the same defenses whether or not the claim is asserted now or a later date. Until such time, the remote possibility of such a claim is insufficient to confer jurisdiction.

The Court's "related to" jurisdiction does not stretch to cover every conceivable claim tangentially related to contaminated MPA; rather, there must be some proximate connection between the debtor and non-debtor cases. In this case, the claims against the Insight Defendants are separate and distinct from the NECC products liability claims. The Insight Defendants were not mere participants in the chain of distribution; rather, they misrepresented the identity of the product they injected into the plaintiffs. As unaffiliated, non-debtor defendants, their independently tortious conduct should be litigated in Roanoke courts.

**C.     The Roanoke cases are subject to abstention under 28 U.S.C. § 1334(c)(1).**

Even if the Court concludes the plaintiff's claims are related to the bankruptcy case, the Roanoke cases are subject to abstention under 28 U.S.C. § 1334(c)(1).

A district court may abstain from exercising jurisdiction over civil proceedings related to the bankruptcy case "in the interest of justice, or in the interest of comity with State courts or respect for State law." Id. In addition to these three criteria, the First Circuit has held that additional factors may weigh in favor of abstention: (a) the extent to which state law issues predominate over bankruptcy issues; (b) the presence of a related proceeding commenced in state court or other non-bankruptcy court; and, (c) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties. In re Middlesex Power Equipment & Marine, Inc., 292 F. 3d 61, 69-70 (1st Cir. 2002) (citing Christensen v. Tucson Estates, Inc. (In re

10

Tucson Estates, Inc.), 912 F.2d 1162, 1166-67 (9th Cir.1990) (quoting Republic Reader's Serv., Inc. v. Magazine Serv. Bureau, Inc. (In re Republic Reader's Serv., Inc.), 81 B.R. 422, 429 (Bankr.S.D.Tex.1987)) (internal quotations omitted) (adopting a twelve-factor test to ascertain whether permissive abstention is appropriate in any given case); see also In re Chicago, Milwaukee, St. Paul & Pac. R.R. Co., 6 F.3d 1184, 1189 (7th Cir.1993)).

Applying the factors from the Middlesex Power decision, the Roanoke Frith & Ellerman Plaintiffs urge the Court to abstain from exercising jurisdiction over the Virginia non-debtor cases pursuant to 28 U.S.C. § 1334(c)(1):

1. Virginia state law predominates over the claims, and in the allegations against the Insight Defendants of actual fraud, involve novel legal theories under state law. The remote possibility of a claim of contribution or indemnity in the bankruptcy proceedings would not even arise until these difficult Virginia law issues are addressed, an eventuality that is best served by keeping the Roanoke cases in Virginia courts where these issues can be litigated.

2. The Trustee admits that the primary purpose of its transfer motion is to consolidate claims against NECC, not the Insight Defendants, arising from the injection of MPA. See Trustee's Motion, p. 2. ("These personal injury and wrongful death claims represent the vast majority of claims against the Debtor's estate."). If the primary goal of the transfer is to consolidate all of the mass tort cases pending against the debtor, there may be no need to incur

11

the trouble and expense involved in physically transferring dozens of unrelated cases from Roanoke to the bankruptcy district.

The circumstances in this case regarding claims against non-debtor parties is similar to the Middlesex Power case and the First Circuit's affirmance of the district court's decision to abstain should be followed.

In Middlesex Power, the trustee for the Middlesex Power Equipment & Marine, Inc. ("Middlesex Power") auctioned the debtor's real estate in Tyngsborough to New England Power & Marine, Inc. ("NEPM"). 292 F. 3d at 64. NEPM failed to pay property taxes, and the town of Tyngsborough brought suit in Massachusetts state court. Id. NEPM moved the bankruptcy court to reopen the estate, which was denied, and on appeal the district court abstained to exercise jurisdiction. Id. at 65.

The First Circuit affirmed the district court's decision to abstain. Id. at 68. It was immaterial whether the proceeding was "related to" or "arising in" a case under Title 11; either way, the district court could choose to abstain. 28 U.S.C. § 1334(c)(1) ("[n]othing in this section prevents a district court…from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11"). The First Circuit held that courts have broad discretion to decline from hearing "state law claims whenever appropriate 'in the interest of justice, or in the interest of comity with State courts or respect for State law.'" Id. at 69. Since the case against the non-debtor was unrelated to the bankruptcy proceedings, and indeed governed by state law, the First Circuit affirmed the district court's decision to abstain. Id.

In seeking to transfer cases against the non-debtor defendants, the Trustee's reliance on the Sixth Circuit's in the Dow Corning case is misplaced. The Sixth Circuit

12

did hold under the unique facts in that case that claims against other breast implant manufacturers fell within related-to jurisdiction, because the prosecution of such claims could lead to claims for contribution or indemnity against the debtor. Lindsey, 86 F.3d at 494. But even in that case, the district court abstained from exercising its jurisdiction to transfer the litigation against the other breast implant manufacturers, and the Sixth Circuit denied those parties' petitions for mandamus. In re Dow Corning Corp., No. 95-CV-72397-DT, 1996 WL 511646, at *4 (E.D. Mich. July 30, 1996); Lindsey v. Dow Chem. Corp. (In re Dow Corning Corp.), 113 F.3d 565, 572 (6th Cir. 1997). Thus, there has been no case in which the bankruptcy of one defendant has been used to achieve a global resolution of a mass tort litigation against an entire industry. GAF Corp., 26 B.R. 405, 409 (rejecting non-debtor codefendants' proposal for "an industry-wide solution of the entire asbestos health-related problem," despite finding it "tempting"); see also In re Federal-Mogul Global, Inc., 300 F.3d 368 (3d Cir. 2002).

## Conclusion

The fact that the Insight Defendants fraudulently and negligently prescribed MPA, as opposed to any other drug, does not automatically remove every case involving MPA to the NECC bankruptcy forum. The claims against the Insight Defendants will involve different evidence, different witnesses, and different theories of recovery. It's not MPA that will be on trial in Roanoke; it's Insight's utterly shocking conduct in ordering a drug, misrepresenting the identity of that drug to its patients, and failing to exercise reasonable care in the selection of a safe product. The Insight claims are predicated on negligence, not products liability, and require separate discovery, separate proof, and separate pretrial hearings.

13

For the foregoing reasons, the Roanoke Frith & Ellerman Plaintiffs respectfully request that the Trustee's motion to transfer the Roanoke non-debtor cases be denied.

                                      Respectfully submitted,

                                      ROANOKE FRITH & ELLERMAN PLAINTIFFS

                                      /s/ Robert E. Dean, II
                                      _____
                                      By Counsel

T. Daniel Frith, III, Esquire (VSB #22065)
Lauren M. Ellerman, Esquire (VSB #68464)
Robert E. Dean, II, Esquire (VSB #80288)
FRITH & ELLERMAN LAW FIRM, PC
P. O. Box 8248
Roanoke, VA 24014
Telephone: (540) 985-0098
Facsimile: (540) 985-9198
Email: rdean@frithlawfirm.com

*Counsel for Roanoke Frith & Ellerman Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 2nd day of May 2013, a true and exact copy of the foregoing was filed with this Court's CM/ECF filing system, thereby providing electronic notice to those counsel of record listed below who are registered users of the system. The undersigned also certifies that on this 2nd day of May 2013, a true and exact copy of the foregoing was mailed to the following counsel of record:

Christopher E. Hassell, Esq.
Bonner Kiernan Trebach & Crociata
1233 20th Street, NW, 8th Floor
Washington, DC 20036

*Counsel for Insight Health Corp., Insight Health Services Corp., and Insight Health Services Holding Corp.*

Nancy F. Reynolds, Esq.
LECLAIRRYAN
1800 Wells Fargo Tower, Drawer 1200
Roanoke, VA 24006

*Counsel for Robert O'Brien, MD, John M. Mathis, MD, and Image Guided Pain Management, PC*

/s/ Robert E. Dean, II
_____