# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | MDL No. 2419<br>Master Dkt.: 1:13-md-02419-FDS |
| THIS DOCUMENT RELATES TO:<br><br>All Actions | |

## PLAINTIFFS' STEERING COMMITTEE'S RESPONSE
## TO THE CHAPTER 11 TRUSTEE'S MOTION TO TRANSFER

## TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................................1

II.   FACTUAL BACKGROUND ................................................................................3

III.  ARGUMENT ........................................................................................................5

      A.    Jurisdiction ................................................................................................5

      B.    Abstention ...............................................................................................10

            1.    Mandatory Abstention ...................................................................10

            2.    Discretionary Abstention ..............................................................12

      C.    Transfer under 28 U.S.C. §157. ..............................................................15

            1.    Section 157(b)(4)(b)'s exception to mandatory abstention
                  does not apply here. .....................................................................15

            2.    Section 157(b)(5) is akin to a venue provision; it does not
                  appear to create jurisdiction where none existed. .......................17

      D.    Other Tools ..............................................................................................18

IV.   CONCLUSION ...................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*A.H. Robbins Co. v. Piccinin,*
  788 F.2d 994 (4th Cir. 1986), *cert. denied*, 479 U.S. 876 (1986)........................................7, 17

*Arnold v. Garlock, Inc.,*
  278 F.3d 426, *reh'g denied*, 288 F.3d 234 (5th Cir. 2002)......................................................9

*Cambridge Place Inv. Mgmt. v. Morgan Stanley & Co.,*
  2010 U.S. Dist. LEXIS 142954 (D. Mass. Dec. 28, 2010).......................................................5

*Celotex Corp. v. Edwards,*
  514 U.S. 300 (1995)................................................................................................................7

*Haber v. Massey,*
  2012 U.S. Dist. LEXIS 156764 (D. Mass. Jul 27, 2012).........................................................12

*In re Chicago, M. & St. P. & Pac. R.R.,*
  6 F.3d 1184 (7th Cir. 1993).....................................................................................................12

*In re Combustion Eng'g,*
  391 F.3d 190 (3d Cir. 2004).....................................................................................................9

*In re Dow Corning Corp.,*
  113 F.3d 565 (6th Cir. 1997)....................................................................................................7

*In re Dow Corning Corp.,*
  86 F.3d 482 (6th Cir. 1996)................................................................................................7, 8

*In re Federal-Mogul Global, Inc.,*
  300 F.3d 368 (3d Cir. 2002)..................................................................................................8, 9

*In re Middlesex Power Equip. & Marine, Inc.,*
  292 F.3d 61 (1st Cir. 2002).....................................................................................................12

*In re S.E. Hornsby & Sons Sand & Gravel Co.,*
  45 B.R. 988 (Bankr. M.D. La. 1985)........................................................................................11

*In re Santa Clara County Care Consortium,*
  223 B.R. 40 (B.A.P. 1st Cir. Mass. 1998)..............................................................................5, 9

*In re W.R. Grace & Co.,*
  591 F.3d 164 (3d Cir. 2009)..................................................................................................6, 9

*Marks v. Outboard Marine Corp.,*
  974 F. Supp. 406 (D.N.J. 1997)..............................................................................................17

*PACOR, Inc. v. Higgins*,
  743 F.2d 984 (3d Cir. 1984)................................................................6, 7, 8

*Podkolzin v. Amboy Bus Co.*,
  402 B.R. 539 (E.D.N.Y. 2009) ...............................................................11

*Stoe v. Flaherty*,
  436 F.3d 209 (3d Cir. Pa. 2006)...............................................................11

*Twinlabs Personal Injury Cases*,
  2004 WL 435083 (S.D.N.Y. March 8, 2004 .......................................................7

*Work/Family Directions v. Children's Discovery Ctrs. (In re Santa Clara County
  Consortium)*,
  223 B.R. 40 (B.A.P. 1st Cir. 1998) .............................................................9

**FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

11 U.S.C. 105(a) ..........................................................................18

28 U.S.C. § 157(b)(2) - § 157(b)(5)........................................... passim

28 U.S.C. § 1334(a) - § 1334(c)............................................... passim

**OTHER AUTHORITIES**

http://www.cdc.gov/hai/outbreaks/meningitis.html..............................................3

## I.      INTRODUCTION

Jurisdiction, abstention, and transfer are separate but related concepts.  To resolve the Chapter 11 Trustee's motion to transfer,[1] this Court will need to consider whether it has jurisdiction, whether the Court should or must abstain from exercising that jurisdiction, and whether transfer is appropriate.  These are difficult questions on which reasonable minds can disagree, and should be assessed on a case-by-case basis.

The Plaintiffs' Steering Committee generally agrees with the Trustee's position.  The Court has jurisdiction over most of the cases identified in the schedules attached to the Trustee's motion, should not abstain, and should transfer these cases to this district.  Doing so will greatly aid the efficient administration of the case, enable global settlement discussions, and lead to a better and more timely result for the parties.  The unique circumstances of this case warrant exercising jurisdiction over cases naming New England Compounding Pharmacy, Inc. ("NECP") and persons and entities directly affiliated with NECP as defendants.  Thus, the Plaintiffs' Steering Committee agrees with the Trustee that transfer should apply to (1) lawsuits pending in federal courts that have not yet been transferred to the MDL, (2) lawsuits pending in state courts that are in the process of being removed to federal courts, and (3) lawsuits pending in state courts that name NECP or affiliated entities as defendants.  Some of these actions will be addressed by the Judicial Panel on Multidistrict Litigation.  For the rest, the Court appears to have "related to" jurisdiction, neither mandatory nor discretionary abstention are warranted, and the transfer provision of 28 U.S.C. §157(b)(5) seems to apply.

---

[1] Chapter 11 Trustee's Motion to Transfer Personal Injury Tort and Wrongful Death Cases to this Court Pursuant to 28 U.S.C. §§157(b)(5) and 1334, Dkt. No. 37; Memorandum of Law in Support of Chapter 11 Trustee's Motion to Transfer Personal Injury Tort and Wrongful Death Cases to this Court Pursuant to 28 U.S.C. §§157(b)(5) and 1334, Dkt. No. 38 ("Tr. Mem.").

The Plaintiffs' Steering Committee respectfully parts company with the Trustee's motion for one, narrow subset of cases – 14 of the 19 cases set out in the Trustee's Second Amended Schedule A4 – namely, state court lawsuits against unaffiliated, non-debtor defendants (only) where the sole articulated basis for "related to" jurisdiction is a potential – but as yet unasserted – indemnification or contribution claims against NECP (referred to in this motion as the "state court, unaffiliated, non-debtor only, unasserted contribution claim cases").[2]  These cases are identified in Exhibit 1.[3]  As to this subset of cases, the Plaintiffs' Steering Committee believes that, on the current factual record, the Court should deny the motion *without prejudice*.

Congress and the courts have recognized that there are limits on "related to" jurisdiction. Congress has also mandated that courts abstain from exercising "related to" jurisdiction in some circumstances and permitted abstention in others.  On the current record and as applied to the state court, unaffiliated, non-debtor only, unasserted contribution claim cases, the Plaintiffs' Steering Committee is constrained to conclude that a substantial question exists as to whether this Court has jurisdiction, or should exercise it, or should transfer.  On balance, the Plaintiffs' Steering Committee wishes to avoid the need for appellate proceedings (time and cost, after all) that an improperly transferred party might bring.  When the record is more fully developed, and if the facts change, the Court can revisit whether to transfer these cases.

We appreciate that the Trustee's motion is an attempt to thwart state court defendants' efforts to "get the jump" on other claimants (Tr. Mem. at 17).  But whether borne from such a motivation or only having this practical impact does not change the jurisdictional analysis.  And

---

[2] The Judicial Panel on Multidistrict Litigation will decide whether to transfer federal court actions that do not name NECP or an affiliated entity to this district.  The Plaintiffs' Steering Committee does not object to the motions to withdraw the reference filed by Ameridose and GDC Holdings and will separately file responses to those motions.

[3] The list of cases identified in Exhibit A is culled from the Trustee's Second Amended Schedule of Pending Actions, Dkt. No. 92.  The 14 cases from schedule A4 to which we refer are the 11 Roanoke, VA cases and the 3 Tennessee cases.

the Trustee, the Plaintiffs' Steering Committee, and the Court may have other tools by which to

protect the assets of the debtor and these proceedings without resorting to pulling state cases

against non-debtors (only) into the federal courts under the auspices of "related to" jurisdiction

where such jurisdiction may not exist.

Again, the Plaintiffs' Steering Committee supports the Trustee's Motion to Transfer with

only this one, small, exception.

## II.        FACTUAL BACKGROUND

The Center for Disease Control reports 53 deaths and 733 incidents of fungal infection

across 20 states related to contaminated NECP products since October 2012.[4]

On November 2, 2012, the first civil action alleging injuries caused by New England

Compounding Pharmacy, Inc. was filed in the District of Massachusetts.[5]  Other actions soon

followed.

On December 21, 2012, New England Compounding Pharmacy, Inc. filed for

bankruptcy.[6]  The bankruptcy filing triggered an automatic stay of actions against NECP or

property of its estate.

On February 12, 2013, the Judicial Panel on Multidistrict Litigation created an MDL and

transferred all actions pending in Federal Court against NECP to this district for coordinated

pretrial proceedings before this Court.[7]

On March 10, 2013, the Chapter 11 Trustee filed its Motion and Memorandum in Support

of Transfer of Personal Injury Tort and Wrongful Death Cases to this Court Pursuant to 28

---

[4] http://www.cdc.gov/hai/outbreaks/meningitis.html.

[5] *Erkan v. New England Compounding Pharmacy, Inc. et al*, 1:12-cv-12052-FDS (D. Mass. Nov. 2, 2012) (*Erkan* Dkt.).

[6] NECP Notice of Stay by Reason of Bankruptcy, *Erkan* Dkt. No. 133 (Dec. 24, 2012).

[7] Transfer Order, *In re: New England Compounding Pharmacy, Inc. Products Liability Litigation*, MDL No. 2419, Dkt. No. 119 (J.P.M.L. Feb. 12, 2013).

U.S.C. §§157(b)(5) and 1334.[8]  In support, the Trustee attached four schedules.  Schedule A1 identified federal cases not in the NECP MDL; Schedule A2 identified state court cases where removal was pending; Schedule A3 identified state court cases that had not been removed; and Schedule A4 identified cases naming non-debtor defendants only.

On March 15, 2013, the Chapter 11 Trustee filed its Notice of Filing of Amended Schedule of Pending Actions in connection with its Transfer Motion.[9]  On April 16, 2013, the Chapter 11 Trustee filed Notice of Filing of Second Amended Schedule of Pending Actions in connection with his Transfer Motion.[10]

The attached Exhibit 1 reflects the list of cases that do not name NECP or NECP-related entities based on the Trustee's Second Amended Schedule of Pending Actions Exhibit A4, *Id.*

The Plaintiffs' Steering Committee represents plaintiffs whose cases are currently part of the MDL proceedings.  We have considered the Trustee's motion to transfer from their perspective.  We have also reached out to and spoken with counsel for plaintiffs in state cases that would be transferred into the MDL if the Trustee's motion were granted.  Many plaintiffs expressed a desire to have a clear path to trial, regardless of where their cases wound up.  The Plaintiffs' Steering Committee will be mindful of, and we urge the Court to be mindful of, the need for a clear path to trial as this MDL moves forward.

While we do not pretend that there is a uniform consensus among all plaintiffs, our recommendation has been informed by our discussions and, in particular, the concerns expressed by many lawyers with cases pending in state courts.

---

[8] Dkts. Nos. 37-38 ("Tr. Motion" and "Tr. Mem.").  At the April 10, 2013 status conference, the Court extended the deadline to respond to the Trustee's Transfer Motion until May 2.  Dkt. No. 84.

[9] Dkt. No. 57.

[10] Dkt. No. 92.

# III.    ARGUMENT

## A.    Jurisdiction

Congress set out district court's jurisdiction over Chapter 11 bankruptcy cases in 28 U.S.C. §1334.  Section 1334(a) provides that district courts have original and exclusive jurisdiction of all Chapter 11 cases.  Section 1334(b) provides that district courts have original but not exclusive jurisdiction or civil proceedings "arising in" or "related to" Chapter 11 cases.

There is an open question as to whether this Court would have "related to" jurisdiction over state court, unaffiliated, non-debtor only, unasserted contribution claim cases.

Courts have almost uniformly held that state court proceedings among unaffiliated, non-debtor entities are generally outside the scope of "related to" jurisdiction, even if the non-debtor alleges some form of contribution/indemnity against the debtor.  Most cases reject the argument that potential indemnity or contribution claims create "related to" jurisdiction over tort claims.  When any potential impact on the bankruptcy estate would require a separate lawsuit to establish a contribution/indemnity right there is likely no conceivable effect on the bankruptcy estate.

The First Circuit has not addressed the issue on analogous facts.  Although, a bankruptcy appellate panel has sided with those courts who found "an insufficient nexus" to confer "related to" subject matter jurisdiction in state court actions involving non-debtor parties and possible contribution claims.[11]  And at least one other court in this district has agreed.[12]

---

[11] *In re Santa Clara County Care Consortium*, 223 B.R. 40 (B.A.P. 1st Cir. Mass. 1998).  The BAP noted that evaluating "related to" jurisdiction is rarely an easy task.  *Id.* at 48 ("[T]he determination of whether a removed state court proceeding is sufficiently related to a debtor's bankruptcy to confer subject matter jurisdiction is complicated by what appears to be contradictory opinions.").

[12] *See Cambridge Place Inv. Mgmt. v. Morgan Stanley & Co.,* No. 10-11376-NMG, 2010 U.S. Dist. LEXIS 142954, at *16-18 (D. Mass. Dec. 28, 2010) (noting principle that "[w]here the right to indemnification is contingent on a factual finding in the action not involving the bankruptcy debtor and requires the commencement of another lawsuit to establish that right, there is no effect on the bankrupt estate");

The Third Circuit Court of Appeals set forth the test for "related to" jurisdiction in *PACOR, Inc. v. Higgins*.[13]  Higgins, an individual suffering from an asbestos-related disease, filed a state court action against PACOR.  PACOR brought suit against Johns-Manville, the manufacturer of the asbestos product, who then filed for bankruptcy.  PACOR sought to have the entire controversy removed (to federal bankruptcy court) and transferred (to federal district court, where other cases were pending against Johns-Manville).  The district court determined that Higgins' suit against PACOR was not "related to" the Manville bankruptcy proceedings and remanded it back to the state court.

On appeal, the Third Circuit agreed, noting the statutory and constitutional limits on the powers of bankruptcy courts.  For there to be subject matter jurisdiction, there must be "some form of nexus between the 'related' civil proceeding and the title 11 case."[14]  The Third Circuit defined the test for evaluating such nexus as "whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."[15]

Applying that test, Higgins' personal injury suit against PACOR was *not* "related to" the Manville bankruptcy case, as there was no nexus between it and the bankruptcy estate.

> At best, it is a mere precursor to the potential third party claim for indemnification by Pacor against Manville.  Yet the outcome of the [original] action would in no way bind Manville…. [A]ny judgment received by the [original plaintiff] could not itself result in even a contingent claim against Manville, since Pacor would still be obligated to bring an entirely separate proceeding to receive indemnification…. [T]here would be no automatic creation of liability against Manville on account of a judgment against Pacor…. All issues regarding Manville's possible liability would be resolved in the subsequent third party interpleader action…. There would therefore be no effect on the administration of the

---

[13] 743 F.2d 984 (3d Cir. 1984).

[14] *PACOR*, 743 F.2d at 994 (citation omitted).

[15] *Id.*  "Despite that sweeping language, the facts of [PACOR] demonstrated a crucial limit on the legitimate exercise of subject matter jurisdiction."  *In re W.R. Grace & Co.*, 591 F.3d 164, 171 (3d Cir. 2009).

estate, until such time as Pacor may choose to pursue its third party claim.[16]

The *PACOR* test has been adopted by a majority of courts throughout the country;[17] and in *Celotex*, the Supreme Court has commented favorably on the *PACOR* decision and its discussion of the scope of Section 1334(b).[18]

*Dow Corning* and *Twin Labs*, cited by the Trustee, appear to be outliers.[19]  In *Dow Corning*, the Sixth Circuit applied the *PACOR* test to a unique set of circumstances.[20]  Facing massive liability for personal injury claims relating to its silicone breast implants, Dow filed for bankruptcy.  In addition to the claims against Dow, tens of thousands of claims were filed against related non-debtor entities, including Dow Chemical and Corning Incorporated (Dow's two shareholders).[21]  These shareholders filed thousands of crossclaims for indemnity and contribution against Dow.[22]

The Sixth Circuit focused on the "degree of identity" between the debtor and non-debtors.[23]  Since Dow and the various non-debtors were closely related with respect to the

---

[16] *PACOR*, 743 F.2d at 995-96.

[17] *See In re Dow Corning Corp.*, 86 F.3d 482, 489 (6th Cir. 1996) (*PACOR* test for determining "related to" jurisdiction has been adopted by First, Sixth, Eighth, Ninth, Tenth and Eleventh Circuits; Second and Seventh Circuits have adopted a slightly different test).

[18] *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995).

[19] *Twinlabs Personal Injury Cases*, 2004 WL 435083 (S.D.N.Y. March 8, 2004), a one-page decision that addresses "related to" jurisdiction in a single paragraph, cites only *Dow Corning* in support of its conclusion that it had "related to" jurisdiction based on theoretical contribution and indemnity claims in one personal injury case that either named, or had named, the debtor as a defendant.

[20] *Dow Corning*, 86 F.3d at 487 ("Realizing that we cannot satisfy all competing interests perfectly, our primary goal is to establish a mechanism for resolving the claims at issue in the most fair and equitable manner possible.").

[21] Claims brought against the shareholders were "merely duplicates" of those brought against Dow Corning itself; neither of the shareholders had ever manufactured an implant and they were named solely due to their corporate relationship with Dow Corning.  *See In re Dow Corning Corp.*, 113 F.3d 565, 570 (6th Cir. 1997).

[22] *Dow Corning*, 86 F.3d at 490, n.10.  Other non-debtor entities argued that, although not yet filed, they held contingent claims for contribution and indemnity against Dow Corning.  *Id.*

[23] *Id.* at 492-93 (citing *A.H. Robbins Co. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986), *cert. denied*, 479 U.S. 876 (1986)).  A.H. Robbins was a mass tort case involving the Dalkon Shield, and the cited decision discussed the propriety of extending the stay under Section 362(a)(1) to claims against non-debtors.  The Fourth Circuit held such

---

litigation – and contribution and indemnity claims had already been asserted – it was not

necessary for the non-debtors to first prevail on those claims before finding it was "conceivable"

that they would impact the bankruptcy estate.  The sheer magnitude of the claims was enough to

conclude that they were likely to affect the size of the estate, as well as Dow's ability to proceed

with its reorganization.  The court also highlighted

> a qualitative difference between the single suit involved in *Pacor*
> and the overwhelming number of cases asserted against Dow
> Corning and the non-debtor defendants in this case.  A single
> possible claim for indemnification or contribution simply does not
> represent the same kind of threat to a debtor's reorganization plan
> as that posed by the thousands of potential indemnification claims
> at issue here.[24]

The Third Circuit has, on multiple occasions since *Dow Corning* was decided, affirmed

its decision in *PACOR*, reinforcing that the touchstone of determining "related to" jurisdiction

requires an assessment of whether another lawsuit would be necessary before the bankruptcy

estate would be impacted.

In 2002 the Third Circuit reiterated that *PACOR* established the proper test for "related to"

jurisdiction.[25]  *Federal Mogul* involved tens of thousands of lawsuits brought by plaintiffs

exposed to asbestos-containing friction brake products.  These cases were pending against

multiple defendants when Federal Mogul filed for bankruptcy.[26]  Defendants claiming

indemnification or contribution rights against the debtor sought to remove their cases to federal

courts on the basis of "related to" jurisdiction.  The district court rejected their attempts, citing

---

an extension was warranted where there is a close relationship between the debtor and third-party, as would be the case if the third party was entitled to absolute indemnity from the debtor.

[24] *Id.* at 494.  *But see, In re Federal-Mogul Global, Inc.*, 300 F.3d 368, 383 (3d Cir. 2002) (citing district court's decision "regard[ing] with misgiving the proposition that mere numbers of claims should prevail over articulable principles when it comes to defining federal subject matter jurisdiction").

[25] *In re Federal-Mogul Global, Inc.*, 300 F.3d 368 (3d Cir. 2002).

[26] *Id.* at 372-73.

*PACOR*.  The Third Circuit affirmed, noting that "*PACOR* clearly remains good law [and] the Supreme Court has endorsed the core of [that] opinion…."[27]  The Third Circuit rejected defendants' reliance upon *Dow Corning*, noting "with misgiving the proposition that mere numbers of claims should prevail over articulable principles when it comes to defining subject matter jurisdiction."[28]

Since *Federal Mogul*, the Third Circuit has repeatedly addressed attempts by unaffiliated, non-debtor entities to use potential contribution/indemnity claims against the debtor as a means of bringing personal injury actions in which the debtor was not a party before the federal courts. On each occasion the Third Circuit found no "related to" jurisdiction.[29]

Here, there are a variety of claims being asserted in the 14 cases at issue.  Some, such as those alleging medical malpractice and false labeling/fraud, seem to bear no relation to the debtor.  Others, such as those involving products liability claims, arguably bear some (although it is not clear how much) relation to the debtor.  The prudent course of action with respect to these actions is to deny, without prejudice, the motion to transfer with respect to the 14 state court, unaffiliated, non-debtor only, unasserted contribution claim cases identified in Exhibit 1.

---

[27] *Id.* at 381.

[28] *Id.* at 383 (quoting the district court decision).  The *Federal Mogul* court also cited to a Fifth Circuit decision, *Arnold v. Garlock, Inc.*, 278 F.3d 426, *reh'g denied*, 288 F.3d 234 (5th Cir. 2002), which had distinguished *Dow Corning* and limited it to situations where there was a "unity of identity" between the debtor and non-debtor.

[29] *In re W.R. Grace & Co.*, 591 F.3d 164, 169 (3d Cir. 2009) (before there could be any impact on the bankruptcy estate, there would first have to be a finding in the state court action and then a separate suit to pursue a claim for indemnification; thus, no "related to" jurisdiction); *In re Combustion Eng'g*, 391 F.3d 190, 231-32 (3d Cir. 2004) ("[A]ny indemnification claims against Combustion Engineering… would require the intervention of another lawsuit to affect the bankruptcy estate, and thus cannot provide a basis for 'related to' jurisdiction."); *Work/Family Directions v. Children's Discovery Ctrs. (In re Santa Clara County Care Consortium)*, 223 B.R. 40, 49 (B.A.P. 1st Cir. 1998) (finding an insufficient nexus to confer "related to" jurisdiction on over state court actions involving non-debtor parties that may result in contribution/substitution of creditors but would not change the classification of a claim as it relates to the debtor).

**B.      Abstention**

In 28 U.S.C. §1334, the same section that describes the district court's jurisdiction over bankruptcy cases, Congress identifies when a district court must or should abstain from exercising jurisdiction in cases "arising in" or "related to" Chapter 11 cases.  Section 1334(c)(2) identifies when the district court *must* abstain from exercising jurisdiction.  Section 1334(c)(1) confirms that a district court has discretion to abstain from exercising jurisdiction even when abstention is not mandated.

A court must decide whether to abstain from exercising jurisdiction on a case-by-case basis.

**1.      Mandatory Abstention**

Section 1334(c)(2) provides that,

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

That is, §1334(c)(2) provides that a district court must abstain from hearing a case that is related to a Chapter 11 case – but could not otherwise be filed in or removed to federal district court – if the filed action can be timely adjudicated in a state court.

The state court, unaffiliated, non-debtor only, unasserted contribution claim cases (including those addressed by the Roanoke plaintiffs in their motion for abstention[30]) do *not* name NECP or any persons or entities directly affiliated with NECP as a defendant.  The plaintiff(s) resides in the same state as the defendant(s).  On this record there appears no basis for

---

[30] Motion for Mandatory Abstention Under 28 U.S.C. §1334(c)(2) on behalf of Roanoke, Virginia State Court Plaintiffs in Cases Not Naming NECC As a Defendant, Dkt. No. 209.

federal jurisdiction other than, arguably, "related to" jurisdiction arising from the fact that a party may, later, make a claim for contribution or indemnity from NECP.  These cases could not have been otherwise filed or removed to federal court.

The key, then, is whether these claims will be timely adjudicated in state court.  So what does "timely adjudicated" mean?  One court suggests that matters are timely adjudicated when the length of the proceedings would be about the same in a state or federal court.[31]  Another found that a matter was not timely adjudicated when a state law dispute had made "absolutely no progress" since it was filed over a year earlier.[32]  The Third Circuit has noted that "timeliness in this context must be determined with respect to needs of the title 11 case and not solely by reference to the relative alacrity with which the state and federal court can be expected to proceed."[33]

If the Roanoke plaintiffs (and the Davidson County, Tennessee plaintiffs identified on Exhibit 1) can have their claims tried promptly, then the district court must abstain from exercising its "related to" jurisdiction.  The Roanoke plaintiffs maintain that they will be able to have their day in court soon. And the Trustee has not raised the issue of timely adjudication.

Coupling the potential for dubious "related to" jurisdiction with the potential for mandatory abstention if timely pursued, the Plaintiffs' Steering Committee believes the more judicious course is to deny *without prejudice* transfer as to the 14 state court actions.  If the Plaintiffs' Steering Committee or the Trustee determine that these actions are not being timely adjudicated (particularly with respect to what is happening in the bankruptcy and MDL), a party

---

[31] *Podkolzin v. Amboy Bus Co.*, 402 B.R. 539 (E.D.N.Y. 2009).

[32] *In re S.E. Hornsby & Sons Sand & Gravel Co.*, 45 B.R. 988 (Bankr. M.D. La. 1985).

[33] *Stoe v. Flaherty*, 436 F.3d 209 (3d Cir. Pa. 2006).

may move this Court to revisit its decision to abstain from exercising jurisdiction over this small

segment of cases.

### 2. Discretionary Abstention

Section 1334(c)(1) provides that,

> Except with respect to a case under chapter 15 of title 11, nothing
> in this section prevents a district court in the interest of justice, or
> in the interest of comity with State courts or respect for state law,
> from abstaining from hearing a particular proceeding arising under
> title 11 or arising in or related to a case under title 11.

That is, §1334(c)(1) provides that, when abstention is not mandatory, a district court has

discretion to abstain from exercising jurisdiction over proceedings that are "related to" a Chapter

11 case – in the interest of justice, comity with state courts, or respect for state law. As one court

in this district put it, the question of abstention boils down to whether, on balance, justice is

better served by this Court or another court deciding the matter in question.[34]

Courts have articulated twelve factors relevant to evaluating whether a court should

abstain from exercising "related to" jurisdiction.[35] Courts should apply these factors flexibly; no

one factor is determinative.[36] We identify all, and address some, of these factors below.

*Efficiency.* Courts consider the effect or lack thereof on the efficient administration of

the estate if a Court recommends abstention. At this time, the Plaintiffs' Steering Committee

agrees with the Trustee that it would – all things being equal – be more efficient to have these 14

cases in the MDL. Many of the defendants in these state court, unaffiliated, non-debtor only,

unasserted contribution claim cases are also defendants in cases pending in the MDL. Having

---

[34] *Haber v. Massey*, 2012 U.S. Dist. LEXIS 156764, at *21(D. Mass. Jul 27, 2012).

[35] The First Circuit has expressly mentioned at least three factors that other courts have considered, namely (1) the extent to which state law issues predominate over bankruptcy issue, (2) the presence of a related proceeding commenced in state court or other non-bankruptcy court, and (3) the likelihood that he commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties. *See In re Middlesex Power Equip. & Marine, Inc.*, 292 F.3d 61, 69 (1st Cir. 2002).

[36] *See, e.g., In re Chicago, M. & St. P. & Pac. R.R.*, 6 F.3d 1184, 1189 (7th Cir. 1993).

state court cases proceed separately will involve some duplication of efforts between attorneys here and attorneys there.  But, again, on the current record we believe that the Court should decline to exercise jurisdiction over those state court cases.

*Predominance of State Law Issues.*  Courts consider the extent to which state law issues predominate over bankruptcy issues.  State court cases asserting state causes of action against in state defendants unaffiliated with NECP (that do not currently involve contribution or indemnity claims against NECP) will involve state law issues.  The bankruptcy issues of potential contribution or indemnity claims are, by definition, not yet asserted.  If and when jurisdiction is exercised over these cases, the relative importance of federal bankruptcy law and federal proceedings will weigh against abstention.

*Unsettled Law.*  Courts consider the difficulty or unsettled nature of the applicable law. The Plaintiffs' Steering Committee understands that some state cases against unaffiliated defendants may address issues of first impression relating to some product liability statutes, particularly in Tennessee.  Respect for state law may counsel for allowing these matters to be addressed by the courts of the states that have passed these laws.

*Related proceedings.*  Courts consider the presence of a related proceeding commenced in state court or other non-bankruptcy court.  There are multiple state court, unaffiliated, non-debtor only, unasserted contribution claim civil actions pending in Tennessee; those actions have been handled in a coordinated manner.  There are also multiple Virginia state court, unaffiliated, non-debtor only, unasserted contribution claim cases.

*Jurisdictional basis.*  Courts consider the jurisdictional basis, if any, other than 28 U.S.C. §1334.  As discussed above, for the subset of cases that the Plaintiffs' Steering Committee

recommends this Court carve out, there may not, currently, be an alternative basis for federal court jurisdiction.

*Degree of relatedness.*  Courts consider the degree of relatedness or remoteness of the proceeding to the main bankruptcy case.  Because these matters do not name any defendants that are affiliated with NECP, and there are no asserted contribution or indemnification claims against NECP, they are remote and not closely related to the main bankruptcy case.

*Substance of a "core" proceeding.*  Courts consider the substance rather than form of an asserted "core" proceeding.  "Core proceedings" are addressed in the next section.

*Feasibility of severing state law claims from core bankruptcy matters.* Courts consider the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered into state court.  At this stage, the cases for which the Plaintiffs' Steering Committee recommends abstention may be easily severed.

*Docket.*  Courts consider the burden of the docket.  This factor appears to be neutral.

*Forum shopping.*  Courts consider the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties.  We see no inappropriate forum shopping here by either the state court plaintiffs or the Trustee.

*Right to jury trial.*  Courts consider the existence of a right to a jury trial.  Tort claimants either have, or don't have, a right to a jury trial under the applicable state laws.  That right will be unaffected by the location of the trial (whether in state court or in this Court).

*Presence of non-debtor parties.*  Courts consider the presence in the proceeding of non-debtor parties.  The cases for which the Plaintiffs' Steering Committee recommends abstention involve only non-debtor parties.

On the whole, these factors may suggest that, for now – even if not required to do so – the Court should either decline to decide (or exercise its discretion and abstain from) exercising jurisdiction over state court lawsuits against unaffiliated, non-debtor defendants (only) where the defendants may have – but have not yet asserted – indemnification or contribution claims against NECP (the state court, unaffiliated, non-debtor only, unasserted contribution claim cases).

If at some point NECP or an affiliated entity becomes a defendant in these 14 cases, or the cases are dragging along, then the Court may reconsider whether to exercise jurisdiction over these 14 cases. Those circumstances may compel the Court to decline to abstain in the interests of efficiency (and in accordance with the other factors identified above).

**C.     Transfer under 28 U.S.C. §157.**

**1.     Section 157(b)(4)(b)'s exception to mandatory abstention does not apply here.**

Part I of Title 28 addresses organization of the courts, including the Supreme Court, Courts of Appeal, District Courts, Court of Federal Claims, Court of International Trade, and Bankruptcy Judges (28 U.S.C. §§1-482). These provisions, broadly speaking, describe the organization of each of the federal courts and some of the procedures followed in those courts.

28 U.S.C. §151-§159 addresses bankruptcy judges. Section 157, titled "Procedures," provides that district courts may refer proceedings "arising in" or "related to" a Chapter 11 case to a bankruptcy judge. 157(b)(1) provides that bankruptcy judges may hear "core proceedings" arising under Chapter 11.

Section 157(b)(2) identifies examples of "core proceedings" but makes clear that the list is not exhaustive.[37]   The only relevant example of a "core proceeding" is 157(b)(2)(B):

> [A]llowance or disallowance of claims against the estate or
> exemptions from property of the estate, and estimation of claims or

---

[37] *See* 28 U.S.C. §157(b)(2)(A-P).

> interests for the purposes of confirming a plan under chapter 11,
> 12, or 13 of title 11 *but not liquidation or estimation of contingent*
> *or unliquidated personal injury tort or wrongful death claims*
> *against the estate for purposes of distribution in a case under title*
> *11.* (Emphasis added.)

Embedded in this example of a core proceeding is the only example of a "non-core" proceeding given: "liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution" is not a core proceeding.

Section 157(b)(4) provides that,

> Non-core proceedings under section 157(b)(2)(B) shall not be
> subject to the mandatory abstention provisions of section
> 1334(c)(2).

Reading §157(b)(4) and §157(b)(2)(B) together teaches that district courts are not required to abstain from exercising jurisdiction over proceedings "involving liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution." But what does this phrase mean?

The emphasis might be placed on two different features of this description of non-core proceedings. One reading is that district courts are not required to abstain in actions involving personal injury claims *against the estate*. Here, the state court, unaffiliated, non-debtor only, unasserted contribution claim cases do not include claims against NECP. Another reading is that district courts are not required to abstain in actions involving estimation of personal injury claims *for purposes of distribution*. Here (again) the state court, unaffiliated, non-debtor only, unasserted contribution claim cases do not involve any liquidated or estimation of personal injury claims for purposes of distribution. Neither reading takes the state court, unaffiliated, non-debtor only, unasserted contribution claim cases outside of the reach of the mandatory abstention doctrine.

16

Taking §1334 and §157 together leads to a two part conclusion: (i) a district court must abstain from hearing cases that are related to a Chapter 11 case – but could not have been otherwise filed in or removed to federal district court – if a filed action can be timely adjudicated in a state court but (ii) need not abstain when the proceedings are for liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution.  And so it appears that §157(b)(4) does not take the state court, unaffiliated, non-debtor only, unasserted contribution claim cases outside the ambit of mandatory abstention.

    **2.**    **Section 157(b)(5) is akin to a venue provision; it does not appear to create jurisdiction where none existed.**

Section 157(b)(5) provides that,

> The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending or in the district court in the district in which the claims arose, as determined by the district court in which the bankruptcy case is pending.[38]

That is, §157(b)(5) provides that only the district court can try personal injury tort and wrongful death claims against the debtor.  Though 157(b)(5) does not explicitly say the district court must try only "personal injury tort and wrongful death claims *against the debtor*," this may be implied by its context – including the other provisions of 157 just discussed.  Courts hold that §157(b)(5) applies only to tort claims against the debtor:  "Section 157(b)(5) was drafted to cover the procedure in connection with a special group of cases, to wit, personal injury tort claims against a debtor in Chapter 11 proceedings wherever pending."[39]

---

[38] We leave issues specific to the MDL context, such as so-called *Lexecon* waivers, for another day.  For purposes of this motion, the distinction is whether actions are adjudicated by district courts or state courts, not the MDL court or another district court.

[39] *A.H. Robins Co. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986).  *See also Marks v. Outboard Marine Corp.*, 974 F. Supp. 406 (D.N.J. 1997) ("By its plain language, [section 157(b)(5)] confers on district court judges who have

In contrast, 157(c)(1) permits a bankruptcy judge to hear non-core proceedings that are related to the Chapter 11 case.  The general contemplated division of labor (absent a withdrawal of reference in appropriate circumstances), then, is that the district court addresses the substance of the tort claims while the bankruptcy court addresses liquidation or estimation of the tort claimants damages against the estate for purposes of distribution.

157(b)(5) cannot properly be read as increasing the jurisdiction of the federal courts to extent to matters where no jurisdiction otherwise exists.  157(b)(5) is a description of the division of labor between the district court and bankruptcy court, based on their respective mandates fields of expertise.  The bankruptcy court handles bankruptcy matters; the district court handles tort claims.  But – as always – neither the district court nor the bankruptcy court can hear tort claims over which it has no jurisdiction.

## D.     Other Tools

The Plaintiffs' Steering Committee recognizes that there are a variety of tools available that may be used to protect the interests of the estate and settling parties before the district court that do not require transfer of state cases into the federal system.  We do not pretend that the following is by any means an exhaustive or definitive list.

In at least six of the 14 cases identified in Exhibit 1, the same plaintiffs have separately sued NECP or an entity or person affiliated with NECP (*e.g.*, Barry Cadden, Ameridose, LLC etc.).  In those circumstances, NECP may be able to assert – in that action or a separate action – claims for contribution or indemnification against those unaffiliated defendants.  This Court would have jurisdiction over the Trustee's action and the unaffiliated defendants, and would be able to protect its jurisdiction.

---

jurisdiction over a bankruptcy case the authority to transfer the venue of related  tort cases *involving the debtor*." ) (emphasis added).

NECP may have other, independent, claims for contribution against unaffiliated defendants for declaratory or other relief.  Injunctive relief under 11 U.S.C. 105(a) may be available, if appropriately shaped.  And in the context of confirmation of a plan, channeling injunctions and other powers of the Court may be used to protect both the debtor and the claimants in the MDL.

We identify these tools not as a basis for denying the Trustee's ability to seek efficient and orderly administration of the estate, but rather as an acknowledgement that the Plaintiffs' Steering Committee shares the same goal and is thinking about these important issues.

## IV.    CONCLUSION

Jurisdiction, abstention, and transfer are matters on which reasonable minds can disagree. The Plaintiffs' Steering Committee asks the Court to grant the Trustee's Motion for Transfer in large part.  But we urge this Court to deny, without prejudice, the Trustee's Motion with respect to the 14 state court, unaffiliated, non-debtor only, unasserted contribution claim cases identified in Exhibit 1 and to refrain from deciding, now, whether it has "related to" jurisdiction over these actions and/or whether abstention is warranted.

Dated:  May 2, 2013

*/s/ Thomas M. Sobol*
Thomas M. Sobol
Kristen Johnson Parker
HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Phone: (617) 482-3700
Fax: (617) 482-3003
tom@hbsslaw.com
kristenjp@hbsslaw.com

*Plaintiffs' Lead Counsel*

Elizabeth J. Cabraser
Mark P. Chalos
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111
Phone: (415) 956-1000
Fax: (415) 956-1008
ecabraser@lchb.com
mchalos@lchb.com

*Federal/State Liaison*

Marc E. Lipton
LIPTON LAW
18930 W. 10 Mile Road
Southfield, MI 48075
Phone: (248) 557-1688
Fax: (248) 557-6344
marc@liptonlawcenter.com

Kim Dougherty
JANET, JENNER & SUGGS, LLC
75 Arlington St.
Suite 500
Boston, MA 02116
Phone: (617) 933-1265
kdougherty@myadvocates.com

Patrick T. Fennell
CRANDALL & KATT
366 Elm Avenue, S.W.
Roanoke, Virginia 24016
Phone:  (540) 342-2000
pfennell@crandalllaw.com

J. Gerard Stranch, IV
Benjamin A. Gastel
BRANSETTER, STRANCH & JENNINGS
PLLC
227 Second Avenue North
Nashville, TN  37201
Phone: (615) 254-8801
Fax: (615) 255-5419
gerards@branstetterlaw.com

Mark Zamora
ZAMORA FIRM
6 Concourse Parkway, 22nd Floor
Atlanta, GA 30328
Phone: (404) 451-7781
Fax: (404) 506-9223
mark@markzamora.com

*Plaintiffs' Steering Committee*

<u>**CERTIFICATE OF SERVICE**</u>

I, Thomas M. Sobol, hereby certify that I caused a copy of the foregoing to be filed electronically via the Court's electronic filing system. Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system, and notice of these filings will be sent to these parties by operation of the Court's electronic filing system.

Dated: May 2, 2013

*/s/ Thomas M. Sobol*
Thomas M. Sobol, BBO # 471770