UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| | ) | |
| IN RE: NEW ENGLAND COMPOUNDING | ) | MDL No.: 1:13-md-2419-FDS |
| PHARMACY, INC. PRODUCTS LIABILITY | ) | |
| LITIGATION | ) | |
| | ) | Leave to file granted May 2, 2013 |
| This Document Relates to: | ) | (ECF #107) |
| All Cases | ) | |
| | ) | |

**MEMORANDUM OF LAW OF CHAPTER 11 TRUSTEE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR MANDATORY ABSTENTION**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

PRELIMINARY STATEMENT ......................................................................................... 2

ARGUMENT ...................................................................................................................... 6

    A. "Related to" Jurisdiction is Appropriate ..................................................................6

        1.  Adjudication of the Roanoke Plaintiffs Claims Will Impact the
           Estate ...............................................................................................................9

    B.  The Roanoke Cases are Not Subject to the Mandatory Abstention
       Provisions of 28 U.S.C. §1334 ............................................................................... 15

    C.  Transfer of These Cases Is Required Under a Permissive Abstention
       Analysis ................................................................................................................... 16

        1.  Transfer Will Facilitate Orderly Administration of the Debtor's
           Estate (Factor 1) ........................................................................................... 17

        2.  The Presence of State Law Issues Does Not Require Abstention
           (Factors 2 and 3) .......................................................................................... 19

        3.  The State Court Proceedings Are Appropriately Removed To
           Federal Court (Factors 4 and 5) ................................................................... 19

        4.  Abstention is Inappropriate Because the Pending Actions are
           Integrally Related to the Bankruptcy Case (Factors 6, 7 and 8) ................... 20

        5.  There Will be Virtually No Impact on the Court's Docket (Factor
           9) ................................................................................................................... 21

        6.  There Is No Evidence of Forum Shopping In Connection With
           This Matter (Factor 10) ................................................................................. 21

        7.  The Plaintiffs' Jury Trial Right Does Not Require Abstention
           (Factor 11) ..................................................................................................... 22

        8.  The Presence of Non-Debtor Defendants Does Not Weigh In Favor
           of Abstention (Factor 12) ............................................................................. 22

CONCLUSION .................................................................................................................. 23

# TABLE OF AUTHORITIES

Page

**Cases**

*A.H. Robins Co. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986) ............................................. 20

*Beck v. Victor Equipment Co.*, 277 B.R. 179 (S.D.N.Y. 2002) ............................... 16, 18

*Berry v. Pharmacia Corp.,* 316 B.R. 883 (S.D. Miss. 2004)..................................... 16

*Colorado River Water Conservation Dist. v. United States*,
   424 U.S. 800 (1976)............................................................................................ 17

*In re APCO Liquidating Trust*, 370 B.R. 625 (Bankr. D. Del. 2007).......................... 11

*In re Dow Corning Corp.*, 86 F.3d 482 (6th Cir. 1996)....................................... passim

*In re Drexel Burnham Lambert Group, Inc.*,
   148 B.R. 983 (Bankr. S.D.N.Y. 1992)................................................................ 11

*In re Marcus Hook Development Park, Inc.*,
   943 F.2d 261 (3d Cir. 1991).............................................................................. 10

*In re Pan Am. Corp.*, No. M 47 (CSH),
   1993 WL 59381 (S.D.N.Y. 1993)...................................................................... 17

*In re Pan American Corp.*, 950 F.2d 839 (2d Cir. 1991)........................................... 15

*In re Petroleum Tank Lines, Inc.*,
   10 B.R. 286 (Bankr. W.D.N.Y. 1981) .......................................................... 17, 23

*In re Salem Mortgage Co.*, 783 F.2d 626 (6th Cir. 1986)........................................ 10

*In re Steven P.* Nelson, D.C., P.A.,
   140 B.R. 814 (Bankr. M.D. Fla. 1992) ............................................................ 23

*In re Twin Laboratories, Inc.*, 300 B.R. 836 (S.D.N.Y. 2003) .................. 15, 16, 19, 20

*In re Twinlabs Personal Injury Cases*, No. 03 Civ. 9169,
   2004 WL 435083 (S.D.N.Y. Mar. 8, 2004) .................................................. 15, 22

*Pacor, Inc. v. Higgins*, 743 F.2d 984 (3rd Cir. 1984)..................................... 11, 13, 14

*Podkolzin v. Amboy Bus Co.*, 402 B.R. 539 (E.D.N.Y. 2009).................................. 15

**Statutes**

28 U.S.C. §157(b)(2) ................................................................................................ 20

28 U.S.C. §157(b)(4) ............................................................................................ 15, 16

28 U.S.C. §157(b)(5) ...................................................................................... passim

28 U.S.C. §1334 ....................................................................................................... 20

28 U.S.C. §1334(b) ........................................................................................ 6, 12, 19

28 U.S.C. §1334(c)(2) ............................................................................................. 15

28 U.S.C. §1407 ......................................................................................................... 3

28 U.S.C. §1408 ....................................................................................................... 21

28 U.S.C. §1452 ....................................................................................................... 19

28 U.S.C. §1452(a) .................................................................................................. 19

Virginia Code §8.01-249 ....................................................................................... 11

Virginia Code §8.01-249(5) ................................................................................... 11

Virginia Code §8.01-281 ....................................................................................... 11

Virginia Code §8.01-281(A) .................................................................................. 11

Virginia Code §54.1-3400 ........................................................................................ 7

Virginia Code §54.1-3410.2(H)(2) .......................................................................... 7

Virginia Code §54.1-3435.01(A) .......................................................................... 7, 8

**INTRODUCTION**

This memorandum is respectfully submitted by Paul D. Moore, the Chapter 11 Trustee for the Estate of New England Compounding Pharmacy, Inc. ("NECC" or the "Debtor") in opposition to the motion of certain plaintiffs represented by Gentry Locke Rakes & Moore of Roanoke, Virginia ("Roanoke Plaintiffs") requesting that the Court abstain from exercising jurisdiction over twenty actions that the Roanoke Plaintiffs are prosecuting in Roanoke courts against non-debtor defendants.

As amply described in the Trustee's Motion to Transfer (Doc. No. 38), the facts before this Court mandate that all such cases be transferred to this District, the District where the NECC bankruptcy case is proceeding and where the estate will be administered.  Failure to transfer all matters will jeopardize the single best opportunity to develop a consensual chapter 11 plan that will maximize the recovery of all creditors, including all personal injury claimants.

## PRELIMINARY STATEMENT

The Trustee seeks to resolve all personal injury claims allegedly arising from products prepared by NECC in the context of a consensual chapter 11 plan.  As part of that effort, potentially liable parties will contribute to a common fund.  To ensure the finality which will induce such contributions, the Trustee contemplates a chapter 11 plan that will provide appropriate releases to potentially liable parties who make substantial contributions.  Personal injury claimants will assert claims against this fund, without the need for time consuming and costly state court litigation.  The process will only succeed to the extent of the participation of the primary parties in interest (*i.e.*, the Debtor; and non-debtor parties, including, among others, insiders, retailers, suppliers, healthcare providers, distributors and parties against whom NECC may have claims).

The Roanoke Plaintiffs' pursuit of their state court actions undermines this process. Litigating in state court requires non-debtor parties to expend considerable funds and resources. The expenditure of such funds will discourage non-debtor parties from participating in a global settlement pursued by the Trustee and thereby undermine the congressional policies that underlie 28 U.S.C. §157(b)(5).  Moreover, funds which are so expended may ultimately form the basis of additional indemnification, contribution and/or administrative expense claims against NECC. Finally, if the Roanoke Plaintiffs are permitted to proceed, other plaintiffs will race to pursue actions against non-debtors thereby multiplying the negative effect of the Roanoke Plaintiffs' actions.

The Trustee recognizes that all claimants face numerous challenges and burdens, both medical and legal.  Counsel  for the Roanoke Plaintiffs, and some healthcare providers, have sought to represent what appear to be the interests of their own particular clients.  Yet, each fails

2

to recognize that the unique complexities of the situation will demand creative (but proven) solutions. To a certain extent, individual prerogatives (such as choice of forum) will necessarily yield to Congress's mandate for centralization via §157(b)(5), for it is through this process alone that claimants can be compensated on a fair and equitable basis.

All who have been touched by the situation have become linked. Not, however, through uniformity in their claims. Rather, each is linked simply in the fact of their association with NECC, however distant or unwitting that association may have been.

The common hub from which all claims emanate is the series of facts concerning the alleged contamination. In ordering transfer pursuant to 28 U.S.C. §1407, the Judicial Panel on Multidistrict Litigation ("JPML") recognized this reality and found that the transferred actions shared this common factual nexus:

> All actions share factual questions relating to injuries arising from the alleged contamination of the injectable steroid methyl-prednisolone acetate at the New England Compounding Pharmacy facility in Framingham, Massachusetts, which allegedly resulted in a multistate outbreak of hundreds of cases of fungal meningitis and other infections.

MDL No. 2419 Transfer Order, Feb. 12, 2013. Notably, despite the panoply of parties before it, the JPML did not restrict transfer to claims made against any NECC or any other particular party or group.

Regardless of whom plaintiffs choose to sue and under what theory, it is the allegedly contaminated pharmaceuticals prepared at that facility from which all such claims issue and upon which the litigation will focus. All claims "arising" from alleged contamination at the Framingham facility are indeed related and must be jointly administered.

The Roanoke Plaintiffs themselves initially focused on this reality. For example, in a letter dated October 9, 2012, weeks before the initial complaint was filed, counsel advised NECC

of the Wingate plaintiff's claims and requested preservation of at least thirteen categories of records, beginning with "[a]ll documents related to the medication" at issue.  (A true copy of this letter is annexed as Ex. A.)  Clearly, plaintiffs anticipated that proving their claims would require extensive discovery from NECC.

When the Wingate plaintiff commenced litigation, she filed in federal court and named NECC alone.  However, almost immediately following NECC's December 21 bankruptcy filing, plaintiff reversed course and committed to resisting federal jurisdiction.  Along with other Roanoke Plaintiffs, Wingate commenced parallel state court actions naming healthcare providers and other non-debtors only.  As a result, although all of these non-debtor defendants have ripe claims against the estate, certain of them are not presently before this Court.

The factual averments of the "separate" state court pleadings are essentially identical to the originals filed in federal court.  While the actual causes of action against the healthcare providers may be different from those against NECC under Virginia state law, they are nonetheless supported by the very same factual averments focused on NECC's misfeasance. As the Roanoke Plaintiffs themselves acknowledge in a footnote in their brief (p. 4, n.2), NECC's omission as a named defendant has more to do with manipulating the procedural record than complying with the stay.  The Roanoke Plaintiffs seek to narrow any opportunities for federal jurisdiction, as they acknowledge and, indeed, continuously emphasize throughout their brief (pp. 17, 22).

The Roanoke Plaintiffs attempt to distinguish the types of state law claims asserted against NECC, the related individuals and the healthcare provider defendants.  However styled or whatever the source of the particular claim  –  be it tort, statute, contract, equity or common

law – all paths necessarily lead to and cross at the Framingham facility.  At the heart of every claim lies the question of what did, and did not, occur when the compounds at issue were prepared.

Management of discovery is the essence of MDL pretrial coordination and perhaps the most critical function of this Court.  Abstaining in light of this reality would negate the purpose for which this MDL was formed.  Moreover, permitting parties to drop out and seek their own paths is anathema to the goal of effective, efficient coordination and will only hinder the Trustee in the "orderly administration of the Debtor's estate, the conservation of its assets, and the fair and equitable treatment of all creditors."  Mem. of Law in Supp. of Chapter 11 Trustee's Mot. to Transfer at 17 [Doc. No. 38].  While the allegations against each identified defendant may differ, and in some cases may even be unique, each defendant represents a crucial component, appropriately responsible in its own way and to whatever extent.  While the precise measure of that responsibility cannot yet be known, the merits of the inclusion of each will quickly emerge.

Every participant must travel through the administration process with the whole, just as every component of a bicycle must bear its own proportionate share of the overall burden of carrying the rider.  Omitting parts from a bicycle at the start may be the surest way to imperil the journey.  A bicycle's wheels may have many spokes, each seemingly redundant or duplicative of the next.  Loosening or removing spokes may have little apparent effect on the wheel, or on the larger contraption, but the inevitable result is imbalance.  However slight at first, the imbalance compounds and ultimately the wheel is distorted.  And it may never recover its original shape.  Once the wheel is turning, however, spokes are impossible to replace without significant delay.

Without question, NECC and its actions are the hub to which the wheel's spokes must remain firmly attached.  This Court's assertion of "related to" jurisdiction over the state court claims of the Roanoke Plaintiffs is necessary and proper, and the matters should be transferred pursuant to 28 U.S.C. §157(b)(5).

## ARGUMENT

### A.   "Related to" Jurisdiction is Appropriate

It is well settled that "related to" jurisdiction under 28 U.S.C. § 1334(b) can be extended to lawsuits between non-debtors.  However, the Roanoke Plaintiffs seek to avoid this Court's jurisdiction over claims that are clearly related to the NECC bankruptcy.  Boiled down to its essence, the Roanoke Plaintiffs assert that "related to" jurisdiction does not apply to the Roanoke state court cases because the claims of the non-debtor defendants are merely "potential" or "future" claims.   This characterization, however, misrepresents applicable law and mischaracterizes the facts before this Court.  The contribution and indemnity claims of the non-debtor defendant Insight Health Corp. ("Insight") are far from being merely hypothetical, possible or potential.  To the contrary, this non-debtor defendant has not only evinced a clear and definite intent to assert claims against NECC, it has already taken affirmatively pursued such claims, and would have already filed claims had a claims bar date been established in NECC's bankruptcy case.  The procedural history of the *Wingate* matter is instructive.

On or about November 20, 2012, plaintiff Sharon Wingate filed an action in the United States District Court for the Western District of Virginia, naming NECC as a defendant.  (A copy of the Federal Court Complaint filed by plaintiff against NECC in the Western District of Virginia is annexed hereto as Ex. B).  Plaintiff's Federal Court Complaint seeks recovery for injuries and wrongful death suffered by plaintiff's decedent secondary to receiving an injection

of allegedly tainted methylprednisolone compounded by NECC, and contains extensive factual allegations which purport to describe malfeasance by NECC.  Specifically, plaintiff's Federal Court Complaint assails NECC for, among other things, acting as a wholesale distributor without properly registering to act in such capacity as required by Virginia Code § 54.1-3435.01(A); failing to be accredited by the Pharmacy Compounding Accreditation Board (PCAB); engaging in the large-scale production of a commercially available drug in violation of Virginia Code § 54.1-3410.2(H)(2); compounding "inordinate amounts" of drug products that are essentially copies of commercially available drug products in violation of Virginia Code § 54.1-3410.2(H)(2); failing to ensure compliance with USP-NF standards; failing to adhere to proper quality control standards; manufacturing products under unsanitary and unsterile conditions, and violations of the Virginia Drug Control Act (Virginia Code §§ 54.1-3400 et seq.); and manufacturing an adulterated drug. *See*, Plaintiff's Federal Court Complaint at ¶¶ 26 - 27, 29, 30, 32 - 34, 53 – 62.  Plaintiff's Federal Court Complaint also alleges that the NECC pharmacy was housed in an aged building surrounded by a waste recycling center and, in support of this allegation, plaintiff annexed to her Federal Court Complaint a copy of a photograph of the purported waste recycling center.  *See* Federal Court Complaint at Ex. B.

On December 27, 2012, plaintiff filed her State Court Complaint. (A copy of plaintiff's State Court Complaint is annexed hereto as Ex. C).  Plaintiff's State Court Complaint names Insight Health Corp., John M. Mathis, M.D., Robert F. O'Brien, M.D., and Image Guided Pain Management, P.C., as defendants.  While the State Court Complaint does not name NECC as a defendant, it is largely premised on the same allegations levied against NECC in the Federal Court Complaint.  Indeed, Plaintiff's State Court Complaint is replete with allegations of the

purported malfeasance of NECC and repeats, almost verbatim, the above-described allegations contained in the Federal Court Complaint, including NECC's alleged failure to comply with USP-NF standards, failure to maintain accreditation with the PCAB, NECC's production of inordinate amounts of drug products, engaging in the large-scale production of drugs, NECC's alleged acting as a wholesale distributor of drugs without registering to act in such capacity as required by Virginia Code § 54.1-3435.01(A); producing drugs under unsanitary conditions, violations, and NECC's alleged manufacture of drugs in aged building surrounded by a waste recycling center.  *See, e.g*., Plaintiff's State Court Complaint, at ¶¶ 65-79, 81-84, 87, 89, 95, 101-106, 113-114; 119. Plaintiff's State Court Complaint even contains a copy of the same photograph of the neighboring recycling center.  *See* Plaintiff's State Court Complaint at Ex. C.

On January 24, 2013, non-debtor defendant Insight demurred to all counts of plaintiff's State Court Complaint on the grounds that plaintiff "omitted" NECC, a necessary and indispensable party, from the action, and as a result "*complete relief cannot be accorded among those already parties.*"  Va. Sup. Ct. R. 3:12.  *See* Demurrer of Insight, annexed hereto as Exhibit D. (emphasis added).[1]  On the same date, Insight filed a motion seeking an extension of time to join NECC as a necessary and indispensable party to the state court litigation. (A copy of Insight's Motion for Extension of Time to Join NECC with Certificate of Service, annexed hereto as Exhibit E).  Thereafter, on February 11, 2013, Insight moved for an extension of time to "file a third-party complaint to join NECC to this action." (A copy of Insight's February 11,

---

[1] On February 28, 2013, the State Court heard argument on Insight's Demurrer.  However, as of this writing, Insight's Demurrer has not yet been ruled upon by the State Court. Moreover, on or about February 7, 2013, non-debtor defendants Image Guided Pain Management, P.C., John M. Mathis, M.D., and Robert F. O'Brien M.D. also filed a demurrer citing plaintiff's failure to join NECC, a necessary and indispensable party without whom complete relief cannot be accorded.

2013 Motion For Extension of Time to File Third-Party Complaint and Certificate of Service are collectively annexed hereto as Exhibit F).[2]

### 1. <u>Adjudication of the Roanoke Plaintiffs Claims Will Impact the Estate</u>

Potential contribution and indemnity claims far less definite than those asserted by the non-debtors here have been found sufficient to warrant the exercise of "related to" jurisdiction. Most notably, such jurisdiction has been approved in the case of *In re Dow Corning Corp*., 86 F.3d 482 (6th Cir. 1996) ("*Dow I*"), which the Roanoke Plaintiffs largely ignore in their "substantial" analysis of the applicable case law.   It is unsurprising that plaintiffs chose to sidestep any substantive discussion of *Dow I* as the rationale and holding of that case squarely support the exercise of jurisdiction by this Court over the Roanoke cases.

*Dow I*, like the instant matter, involved nationwide mass tort litigation. In *Dow I*, plaintiffs sued for personal injuries allegedly caused by silicone breast implants manufactured by Dow Corning.  Plaintiffs sued Dow Corning as well as other breast implant manufacturers, including Minnesota Mining and Manufacturing Co. (3M), Baxter Healthcare Corp. and Baxter International Inc., and Bristol-Myers Squibb Co. and Medical Engineering.  During the litigation, Dow Corning filed a petition for reorganization under Chapter 11 of the Bankruptcy Code, and thereafter, moved pursuant to 28 U.S.C. §157(b)(5), to transfer all pending personal injury cases to the Eastern District of Michigan, where the bankruptcy proceeding was pending.  The solvent manufacturer defendants similarly moved for transfer, arguing that lawsuits against them were related to the bankruptcy because any judgments rendered against them might generate claims for contribution or indemnification which would impact the assets of the bankrupt estate of Dow

---

[2] Insight filed demurrers and motions identical to those described above in all of the Roanoke cases. Notably, even though NECC is not a named defendant in the cases, Insight nonetheless directly served NECC and its Virginia counsel with copies of its motions, thereby further evidencing intent to pursue claims directly against NECC.

Corning.  The district court denied their motions, holding that none of the claims against the non-debtor defendants were "related to" the Dow Corning bankruptcy.  In reaching its decision, the district court held that there would be no ripe claim for indemnification until such time as a judgment was rendered against the non-debtor defendants thereby requiring them to commence separate proceedings against Dow Corning.  The district court also noted that there was no contractual or other "automatic" basis for indemnification between the non-debtor defendants and Dow Corning.

The Sixth Circuit reversed and found that "related to" jurisdiction existed over the non-debtor defendants' potential but as yet unasserted claims for contribution and indemnification against Dow Corning.  The court held that these potential claims for contribution and indemnity could conceivably have an effect on the bankruptcy proceedings.  *Dow Corning*, 86 F.3d at 494. The court considered that the non-debtor defendants had "asserted repeatedly … that they intend[ed] to file claims for contribution and indemnity against Dow Corning," and that Dow Corning might have claims against the non-debtors for contribution and indemnification under joint tortfeasor laws.  *Id*.  More importantly, the court found that more definite bases for indemnification, such as the existence of contractual indemnity, were not required.  In this regard, the Court noted that " 'automatic' liability is not necessarily a prerequisite for a finding of 'related to' jurisdiction."  *Dow Corning*, 86 F.3d at 491.  Rather, "[a] key word in [the] test is 'conceivable.' Certainty, or even likelihood, is not a requirement.  Bankruptcy jurisdiction will exist so long as it is possible that a proceeding may impact on 'the debtor's rights, liabilities, options or freedom of action' or the 'handling and administration of the bankrupt estate.'" *Id.,* (citing *In re Marcus Hook Development Park, Inc.*, 943 F.2d 261, 264 (3d Cir. 1991)); *see also In re Salem Mortgage Co*., 783 F.2d 626, 634 (6th Cir. 1986).

Relying substantially upon *Pacor, Inc. v. Higgins*, 743 F.2d 984, 995 (3rd Cir. 1984), the Roanoke Plaintiffs question this Court's "related to" jurisdiction by asserting that any contribution or indemnity claims are only potential, future claims, while *Pacor* requires that the contribution or indemnity claim must be "more than a precursor."   However, healthcare providers and other non-debtors do have currently ripe claims against the NECC estate.

Courts have indeed held that a contribution claim is no longer contingent when a creditor seeking the contribution actually spends money.  *See In re Drexel Burnham Lambert Group, Inc.*, 148 B.R. 983 (Bankr. S.D.N.Y. 1992) (key inquiry in determining whether a contribution claim is contingent is whether the co-liable party has actually paid money); *In re APCO Liquidating Trust*, 370 B.R. 625 (Bankr. D. Del. 2007) (same).  Virginia law, however, expressly permits such claims to be asserted contemporaneously along with the underlying claims.  In fact, Virginia Code §8.01-249 clearly states that contribution and indemnification claims may be asserted even though they may not have technically yet accrued.  *See* Virginia Code §8.01-249(5).  Tellingly, the Roanoke Plaintiffs' fail to cite this portion of the statute.

Moreover, Virginia Code §8.01-281 provides that any defendant may assert contribution and indemnification as a cross claim or third-party claim.  Significantly, the statute specifically states that "***it shall be no defense thereto that the party*** asserting such claim, counterclaim, cross-claim, or third-party claim ***has made no payment or otherwise discharged any claim*** as to him arising out of the transaction or occurrence."  *See* Virginia Code §8.01-281(A) (emphasis added).  In other words, healthcare providers have an absolute right to assert contribution and indemnification claims, now, even though the claims have not yet technically "accrued" for limitations purposes.  They are clearly ripe, active, and will certainly have an effect on the Debtor's estate.  To argue otherwise ignores both reality and applicable Virginia law.  Litigation

11

against the healthcare providers necessarily impacts the estate, and therefore, must be transferred as "related to" the bankruptcy proceeding.

As a non-debtor defendant in the Roanoke cases, Insight Imaging holds claims against NECC that are more than hypothetical. Insight has affirmatively sought leave to implead NECC. Moreover, on April 4, Insight removed the *Wingate* case to the United States District Court for the Western District of Virginia, asserting the existence of "related to" jurisdiction pursuant to 28 U.S.C. §1334(b). *See* Notice of Removal annexed hereto as Ex. G. Insight explained the need for NECC to be joined as an indispensable party, noting that the core of the plaintiffs' state court allegations arise from the alleged acts or omissions of NECC, and further clarified that in addition to the aforementioned claims for contribution and/or indemnity, Insight would also maintain direct causes of action against NECC. *See* Notice of Removal, at ¶¶ 6, 19. Insight confirmed that it intends to file a proof of claim against NECC and would have done so had a claims deadline been established in NECC's bankruptcy case. *See* Notice of Removal, at ¶ 20. Thus the contribution and indemnity claims of the non-debtor defendants in the Roanoke Plaintiffs' state court actions do not require any payment by the non-debtor defendants in order to be characterized as noncontingent.

As noted above, the indemnification and contribution claims of Insight are indeed ripe and not merely "potential." However, the result would be the same even if Insight's claims were deemed otherwise. Indeed, the *Dow I* Court rejected the opposite position:

> We find that it is not necessary for the appellees first to prevail on their claims against the nondebtor defendants, and for those companies to establish joint and several liability on Dow Corning's part, before the civil actions pending against the nondebtors may be viewed as conceivably impacting Dow Corning's bankruptcy proceedings. The claims currently pending against the nondebtors give rise to contingent claims against Dow Corning which unquestionably could ripen into fixed claims. The potential for

> Dow Corning's being held liable to the nondebtors in claims for contribution and indemnification, or vice versa, suffices to establish a conceivable impact on the estate in bankruptcy.

*Dow Corning*, 86 F.3d at 494.

Following this rationale, this Court should not hesitate to exercise "related to" jurisdiction over the Roanoke cases. As set forth above, Virginia law expressly provides for the assertion of indemnification and contribution claims by way of third-party action even if such claims have not yet technically accrued. Further, non-debtor defendant Insight has not only expressed the intent to pursue claims for contribution and indemnification against NECC – which standing alone would suffice to invoke "related to" jurisdiction under *Dow I* – it has taken the additional significant steps of filing pleadings citing the need for NECC to be joined as a "necessary and indispensable party," petitioning for leave to pursue claims against NECC and arguing that "complete relief" can be accorded among the parties. As such, it is likely, if not inevitable, that the actions against non-debtors will impact NECC's rights, liabilities and options and the administration of NECC's estate. This is particularly true in the context of mass tort litigation, where a debtor inevitably faces a deluge of claims from plaintiffs as well as contribution/indemnity claims from solvent third parties. As noted in *Dow I*, "[c]laims for indemnification and contribution, whether asserted against or by [the debtor], obviously would affect the size of the estate and the length of time the bankruptcy proceedings will be pending, as well as [the debtor's] ability to resolve its liabilities and proceed with reorganization." *Dow Corning*, 86 F.3d at 494.

Even if the Court finds that *Pacor's* requirements are not satisfied here, *Pacor* is not dispositive and may be distinguished on the facts. *Pacor* involved a single, "one-off" lawsuit against a single non-debtor defendant, and accordingly did not present the overarching policy

concerns attendant to mass tort litigation involving a bankrupt defendant.  Indeed, by extending "related to" jurisdiction to non-debtor defendants, the *Dow I* Court recognized that "there is a qualitative difference between the single suit involved in *Pacor* and the overwhelming number of cases asserted against Dow Corning and the non debtor defendants in this case.  A single possible claim for indemnification or contribution simply does not represent the same kind of threat to a debtor's reorganization plan as that posed by the thousands of potential indemnification claims at issue here."  *Dow Corning*, 86 F.3d at 494.

A similar situation confronts this Court.  At present, there are nearly 200 active lawsuits and over 300 asserted injury claims.  Forty-four of the cases currently pending against NECC also name healthcare providers as co-defendants.  There are also approximately 20 cases in Roanoke which do not name NECC, but only name healthcare providers.  A handful are pending in other jurisdictions.  Each of these cases gives rise to claims for contribution and indemnity against NECC.  The number of contribution and/or indemnification claims that will inevitably be filed against NECC by non-debtor healthcare providers and distributors could render the protections afforded by Chapter 11 reorganization futile.  Moreover, these potential claims will harm all other claimants, since there is a finite pool of available insurance assets.  The Roanoke Plaintiffs seek an unfair advantage by pressing their cases ahead in state courts and by seeking early judgments or settlements.

The Roanoke Plaintiffs stress that they "intentionally brought and filed [state-court claims against non-debtor parties] separately from those against the debtor."  (Brief in Support at 17).  "While a plaintiff may be 'master of his complaint' in some contexts, palpably specious 'artful pleading'…cannot serve to overcome (or leave to state courts to effectuate) the very strong federal policy of § 157(b)(5) favoring transfer to federal court of personal injury actions

14

related to a bankruptcy." *In re Twin Laboratories, Inc*., 300 B.R. 836, 842 n.3 (S.D.N.Y. 2003) (TwinLabs I).  Such *intentional* maneuvering is an end run around this Court's jurisdiction and, if permitted, would elevate form over substance.  A cursory review of the *Wingate* state court reveals the claims are largely premised on factual allegations made against NECC in parallel federal court actions.  Accordingly, defense of Insight in the Roanoke state court cases "will invariably involve the Debtor, and some or all of the issues in the already-transferred suits," thereby justifying the exercise of "related to" jurisdiction and transfer pursuant to 28 U.S.C. § 157(b)(5).  *In re Twinlabs Personal Injury Cases*, No. 03 Civ. 9169, 2004 WL 435083 (S.D.N.Y. Mar. 8, 2004) (Twinlabs II).

It is irrelevant how the Roanoke Plaintiffs couch their claims in the Roanoke state court cases; what is relevant is whether those claims could conceivably have an effect on the bankruptcy proceedings. Indeed, 28 U.S.C. § 157(b)(5), by its very terms, does not qualify or limit its reach to only personal injury tort and wrongful death claims against the estate.  Contrary to the Roanoke Plaintiffs' assertions, there is no statutory interpretation required to conclude that § 157(b)(5) provides for the transfer of personal injury tort claims against non-debtor defendants where such claims are "related to" the bankruptcy proceeding. *See, e.g*., *Dow Corning*, 86 F.3d at 497 (6th Cir. 1996).

## B. <u>The Roanoke Cases are Not Subject to the Mandatory Abstention Provisions of 28 U.S.C. §1334</u>

The Roanoke Plaintiffs ask this Court to abstain from hearing the state court claims pursuant to the mandatory abstention provisions of 28 U.S.C. §1334(c)(2).  However, mandatory abstention does not apply to the liquidation of personal injury claims, like those of the Roanoke Plaintiffs. 28 U.S.C. § 157(b)(4); *In re Pan American Corp*., 950 F.2d 839 (2d Cir. 1991); *Dow Corning*, 86 F.3d at 497; *Podkolzin v. Amboy Bus Co*., 402 B.R. 539 (E.D.N.Y. 2009);

15

*Beck v. Victor Equipment Co*., 277 B.R. 179, 180 (S.D.N.Y. 2002) (noting that mandatory abstention does not apply to personal injury tort claims as many result in "unpredictable and substantial verdicts that are often produced in personal injury tort and wrongful death claims [which] could have potentially deleterious effects on a debtor's estate").   Given the strong presumption in favor of the transfer of personal injury cases, the automatic exemption from mandatory abstention to personal injury claims has been extended to claims involving non-debtors.  *Berry v. Pharmacia Corp.,* 316 B.R. 883 (S.D. Miss. 2004).   Indeed, limiting application of the exemption to mandatory abstention to only those personal injury cases brought against the estate would undermine the purposes of 28 U.S.C. §§ 157(b)(4) and (5), which is "to centralize the administration of the estate and to eliminate the 'multiplicity of forums for the adjudication of parts of a bankruptcy case.'"   *Berry*, 316 B.R. at 889 (citations omitted).  Accordingly, the exemption from mandatory abstention can and should be applied to the Roanoke cases.

**C.  Transfer of These Cases Is Required Under a Permissive Abstention Analysis**

It is questionable whether permissive abstention is ever appropriate in connection with a §157(b)(5) transfer.  Rather, this Court must defer "to the seemingly mandatory language of §157(b)(5) and its obvious purpose of giving particular priority to the centralization of bankruptcy-related personal injury claims in a single forum. . . ."  *In re Twin Labs.*, 300 B.R. at 840-41.  Courts consider a number of factors in exercising their discretion to abstain from transfer, which are discussed in turn below, and it is well recognized that they should weigh these factors "with caution, taking account of the strong legislative presumption favoring transfer under § 157(b)(5): for in this context, perhaps even more than elsewhere, federal courts have a 'virtually unflagging obligation … to exercise the jurisdiction given them.'"  *In re Twin Labs.*,

300 B.R. at 841 (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).

1. **Transfer Will Facilitate Orderly Administration of the Debtor's Estate (Factor 1)**

Permissive abstention "must not … be employed in a manner that contravenes the purposes underlying the bankruptcy code namely" to centralize the administration of the bankruptcy estate, and eliminate the multiplicity of forums for adjudication of parts of a bankruptcy case." *In re Pan Am. Corp.*, No. M 47 (CSH), 1993 WL 59381, at *3 (S.D.N.Y. 1993). Centralizing personal injury and wrongful death claims will contribute to a reasonable plan of reorganization and more fairly resolve outstanding claims. *Dow Corning*, 86 F.3d at 496; *In re Petroleum Tank Lines, Inc.*, 10 B.R. 286, 288 (Bankr. W.D.N.Y. 1981) ("[N]egotiation of any reorganization or liquidation plan will be greatly facilitated if [the] cases are before a single Court."). This includes the cases brought by the Roanoke Plaintiffs.

Although the actions for which the Roanoke Plaintiffs are seeking abstention do not name NECC as a defendant, the outcome of the proceedings will undoubtedly have an effect on the estate being administered in bankruptcy. Specifically, the non-debtor defendants' claims for contribution and indemnification against NECC are not just theoretical. As discussed above, Virginia healthcare providers have the current statutory right to assert such claims.

Furthermore, the facts and circumstances alleged by the various Roanoke Plaintiffs involve the same alleged conduct by the Debtor, its past and present employees and officers and its affiliates, and third parties that contracted with the Debtor. Accordingly, transfer to and coordination of these claims in this District would permit the Court to manage the adjudication of overlapping factual and legal issues. While true that the Roanoke Plaintiffs did not identify NECC as a defendant in the cases at issue in their abstention motion, the vast majority of the

allegations in their respective state complaints relates to the alleged malfeasance of the Debtor. Indeed, the Roanoke Plaintiffs or non-debtor defendants do not waive their claims against the Debtor. The state court maneuverings are admittedly intended to avoid the equitable bankruptcy process. Transfer of the Roanoke state court claims will benefit the Debtor and all creditors by permitting coordination of discovery, and evidentiary issues and a determination of threshold issues in a consistent matter, for claims which are fundamentally identical, thereby saving costs and maximizing the return to all creditors on a comprehensive and equitable basis.

Additionally, centralization would eliminate the possibilities of (i) inconsistent rulings on scientific or factual issues; and (ii) the negative impact that rulings in one case can have on later tried cases against the Debtor in terms of both case valuation and possible preclusive effect on the litigation. *See, e.g., Beck*, 277 B.R. 179 at 180 - 181 (S.D.N.Y. 2002) (noting that Congress has recognized that "the unpredictable and substantial verdicts that are often produced in personal injury tort and wrongful death claims could have potentially deleterious effects on the debtor's estate - particularly when, because of the automatic stay provisions of the Bankruptcy Code, a debtor-defendant may not have participated in the underlying trial …"). By deciding such issues on a centralized basis in this District, the limited Estate assets can be conserved and protected. The hollow argument that these issues will never get litigated, is not a sufficient reason to isolate these cases from the pack.

Finally, because the Debtor has limited insurance coverage available, centralization of all Pending Actions, including those filed by the Roanoke Plaintiffs, will assure that similarly situated creditors are treated fairly and equitably, as dictated by bankruptcy law. Indeed, while some of the Roanoke Plaintiffs allege grave injuries, even death, many other Plaintiffs in

numerous jurisdictions allege similar injuries and all should be subject to the same comprehensive process.

### 2. The Presence of State Law Issues Does Not Require Abstention (Factors 2 and 3)

This Court is empowered to interpret and apply state law to substantive legal issues. The Virginia state law issues which may present here are not difficult, unsettled, or unfamiliar to this Court from state law personal injury cases. *In re Twin Labs.*, 300 B.R. at 841. The predominance of state law issues cannot be given decisive effect in analyzing transfer under §157(b)(5), for the very subject matter of that section – personal injury claims – is "almost always governed by state law," and yet Congress, in enacting §157(b)(5), singled out such claims as "the very ones it wanted transferred." *Id.*

### 3. The State Court Proceedings Are Appropriately Removed To Federal Court (Factors 4 and 5)

The Roanoke Plaintiffs allege personal injuries secondary to their exposure to methylprednisolone acetate prepared by NECC, the same allegations that form the bases for MDL No. 2419 and that lead to NECC's Chapter 11 filing. It is beyond dispute, that this Court has "related to" jurisdiction pursuant to 28 U.S.C. §1334(b). Furthermore, the Court has jurisdiction over these claims pursuant to 28 U.S.C. §157(b)(5) and 28 U.S.C. §1452.

Section 157 provides that "[t]he district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending." 28 U.S.C. §157(b)(5). Pursuant to §1452, "[a] party may remove any claim or cause of action in a civil action … to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. § 1452(a). Thus, as set forth above, the state

court actions are "related to" the Bankruptcy Case and the Bankruptcy Court has jurisdiction over the state court actions under 28 U.S.C. §§ 1334 and 157(b)(2).

### 4. Abstention is Inappropriate Because the Pending Actions are Integrally Related to the Bankruptcy Case (Factors 6, 7 and 8)

Personal injury and wrongful death claims related to exposure to the allegedly contaminated methylprednisolone acetate represent the majority of claims against the estate and the resolution of those claims is crucial to the reorganization. *See, e.g.*, *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 994 (4th Cir. 1986); *Dow Corning*, 86 F.3d at 482. This Court has an overarching view of the Debtor's case and all aspects of the case, including claims for contribution, should be before it.

It is disingenuous for the Roanoke Plaintiffs to contend that their cases will not impact the estate. NECC filed for Chapter 11 bankruptcy protection, because of the claims and potential claims against it related to the allegedly contaminated compound. The physicians, health care clinics and other affiliated corporations are being sued because of the same underlying facts. These non-debtors will undoubtedly seek contribution from NECC for any judgments against them. Indeed, non-debtor Insight Imaging has already argued that the Roanoke Plaintiffs failed to join NECC as a necessary and indispensable party in these actions.

As Plaintiffs' brief points out, some of the Roanoke Plaintiffs initially filed separate complaints against NECC in federal court. While the causes of action may be couched in different language, all share factual questions relating to injuries arising from the alleged contamination of steroid compounded and the alleged malfeasance of NECC. As Judge Rakoff noted in *In re Twin Labs Inc.*, "palpably specious 'artful pleading' of the kind presented [here] cannot serve to overcome (or leave to state courts to effectuate) the very strong federal policy of §157(b)(5) favoring transfer to federal court of personal injury actions related to a bankruptcy." 300 B.R. at 842.

**5.   There Will be Virtually No Impact on the Court's Docket (Factor 9)**

The Roanoke Plaintiffs gloss over this factor because they are well aware that the impact on the docket of transferring these 11 cases to the District Court will be negligible. Nevertheless, the debtor respectfully suggests that any impact caused by the transfers does not warrant abstention where, as here, transfer is otherwise appropriate and would significantly aid in the coordinated administration of the estate.

**6.   There Is No Evidence of Forum Shopping In Connection With This Matter (Factor 10)**

The Trustee's § 157(b)(5) motion cannot be viewed as forum shopping because a change of venue was expressly contemplated and mandated by Congress in this section.  Additionally, the Debtor is not seeking to transfer select cases pending in certain forums, but is moving for the transfer of all of the personal injury and wrongful death claims against it. Under the circumstances, every indication is that the Debtor seeks to centralize these actions, not attempt to obtain a more favorable forum for any individual cases.  Finally, the Debtor was confronted with an urgent need to file their bankruptcy petition because of the numerous lawsuits and claims filed against it and its limited resources.  Having no choice but to file for protection under Chapter 11, the Debtor filed its petition in the District of Massachusetts, which is the only district in which this bankruptcy proceeding could have been filed.  28 U.S.C. §1408.  Under these circumstances, there is simply no evidence that the filing and forum of the Debtor's bankruptcy case or its 157(b)(5) motion is an attempt at forum shopping.  This stands in stark contrast to the actions of the Roanoke Plaintiffs who have pursued every procedural option in their effort to deprive this Court of jurisdiction.

**7.   The Plaintiffs' Jury Trial Right Does Not Require Abstention (Factor 11)**

The Trustee does not challenge the Roanoke Plaintiffs' right to a jury trial.   What is challenged, however, is that these Plaintiffs are not entitled to a different process from all other claimants.   If the movants try their cases against the non-debtors in Virginia, the parties will undoubtedly seek indemnity and contribution following any judgment against them. This will necessarily impact the already limited resources NECC has available, and runs counter to the equitable principles of bankruptcy.   *In re Twinlabs Personal Injury Cases*, 2004 WL 435083 at *1.

**8.   The Presence of Non-Debtor Defendants Does Not Weigh In Favor of Abstention (Factor 12)**

These non-debtors are potentially liable to the Plaintiffs based on their purchase, distribution and administration of the compounded pharmaceutical that is central to every other action against the Debtor.   The healthcare providers and pain management clinics may assert contribution and indemnification claims against NECC, on the ground that their liability is directly attributable to NECC, and NECC's estate likewise may assert claims against them for contribution or indemnity.   This will have a significant impact on the estate.   As noted above, one of the defendants in the Roanoke cases has already stated its intention to assert claims against the debtor and has filed demurrers based in part on these plaintiffs' failure to join NECC as a necessary and indispensable party.

22

## CONCLUSION

Courts have uniformly observed that the transfer and centralization of related claims against non-debtors aid in the negotiation of a plan.  *See, e.g.*, *Dow Corning*, 86 F.3d at 496 (centralization increases the odds of developing a reasonable plan); *In re Petroleum Tank Lines*, 10 B.R. at 288 (negotiation of a plan will be greatly facilitated if the cases are before a single court.).  There is no question that bringing all these non-debtors before this Court will enhance the administration of the Estate by bringing all parties with alleged liability based on the Debtors' product before this Court.   Such centralization will aid in the negotiation of a Chapter 11 plan because all potentially liable parties will be before this Court.  By contrast, allowing cases against non-debtors to proceed in a different forum will diminish their ability to contribute and willingness to participate in a plan.  *See e.g., In re Steven P*. Nelson, D.C., P.A., 140 B.R. 814, 817 (Bankr. M.D. Fla. 1992).

For all the foregoing reasons, the Trustee respectfully requests that this Court enter an Order transferring All Pending Actions to this Court for further proceedings, and denying the motion of the Roanoke Plaintiffs.

Respectfully Submitted,

Dated: May 2, 2013                                        HARRIS BEACH PLLC

                              By:       /s/ Frederick H. Fern
                                         Frederick H. Fern
                                         100 Wall Street, 23rd Floor
                                         New York, New York 10005
                                         (P) 212-687-0100
                                         (F) 212-687-0659
                                         (E) hbnecc@harrisbeach.com

                                         *Proposed Counsel for Paul D. Moore,*
                                         *Chapter 11 Trustee of New England*
                                         *Compounding Pharmacy, Inc. d/b/a New*
                                         *England Compounding Center*

### CERTIFICATE OF SERVICE

I, Frederick H. Fern, hereby certify that on the 2nd day of May, 2013, the documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Frederick H. Fern
Frederick H. Fern