# EXHIBIT A

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MASSACHUSETTS
# EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>NEW ENGLAND COMPOUNDING PHARMACY, INC.,<br><br>    Debtor. | Chapter 11<br><br>Case No. 12-19882-HJB |
| PAUL D. MOORE, in his capacity as Chapter 11 Trustee for the Debtor,<br><br>    Plaintiff,<br><br>    v.<br><br>BARRY CADDEN, LISA CONIGLIARO CADDEN, GREGORY CONIGLIARO, CARLA CONIGLIARO,<br><br>    Defendants,<br><br>AMERIDOSE, LLC, GDC PROPERTIES MANAGEMENT, LLC, and MEDICAL SALES MANAGEMENT, INC.,<br><br>    Reach and Apply Defendants,<br><br>BANK OF AMERICA, N.A., MIDDLESEX SAVINGS BANK, MERRILL LYNCH, PIERCE, FENNER & SMITH INC., and CHARLES SCHWAB & CO.,<br><br>    Trustee Process Defendants. | Adv. Pro. No. 13-01040-HJB |

**STATEMENT OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN SUPPORT OF THE JOINT MOTION FOR APPROVAL AND ENTRY OF AGREED-UPON ORDER ESTABLISHING PROCOTOL FOR <u>SETTLEMENT NEGOTIATIONS AND COMMUNICATIONS</u>**

The Official Committee of Unsecured Creditors (the "Official Committee") of New England Compounding Pharmacy, Inc. d/b/a New England Compounding Center ("NECP" or the "Debtor") in the above-captioned Chapter 11 case (the "Chapter 11 Case"), by and through its undersigned counsel, Brown Rudnick LLP ("Brown Rudnick"), respectfully submits this statement (the "Statement") in support of the *Joint Motion of Plaintiff Paul D. Moore, as Trustee of the Chapter 11 Estate of New England Compounding Pharmacy, Inc., Defendants, Barry Cadden, Lisa Conigliaro Cadden, Gregory Conigliaro, Carla Conigliaro and Reach-and-Apply Defendants, Ameridose LLC, GDC Properties Management, LLC and Medical Sales Management* (together, the "Defendants") *for Approval and Entry of Agreed-Upon Order Establishing Protocol for Settlement Negotiations and Communications* (the "Motion") [Adv. Pro. No. 13-01040, Dkt. No. 89]. In support of this Statement, the Official Committee respectfully states as follows:

## STATEMENT

1. The Official Committee is the official representative of all unsecured creditors in this case, including the several hundreds of victims that have suffered death or other grievous injury as a result of NECP's prepetition conduct. Those victims, who hold tort based claims against the Debtor, comprise the overwhelming percentage of NECP's debt in this Chapter 11 Case. The Official Committee submits this Statement to support the Trustee's Motion to establish a protocol that will enable the Trustee to commence a mediation effort with the Debtors' insiders and affiliated companies. The Official Committee sees this protocol as an important step in reaching a settlement with these Defendants and ultimately achieving a negotiated resolution in this case in which

2

NECP's principals and other persons and entities liable to the Debtor's estate contribute significant sums for distribution to creditors pursuant to a Chapter 11 plan. A crucial, next step of this process of resolving claims against these Defendants will be to ensure that any settlement with the insider and affiliate Defendants would be widely acceptable to the body of unsecured creditors whose support would, as a matter of law, be needed to confirm the contemplated Chapter 11 plan that embodies that settlement.

**The Adversary Proceeding**

2. As the Court well knows, in January 2013, the Official Committee commenced Adversary Proceeding No. 13-01040 (the "Adversary Proceeding") against Defendants Barry Cadden, Lisa Conigliaro Cadden, Gregory Conigliaro, Carla Conigliaro, Ameridose LLC, GDC Properties Management, LLC, and Medical Sales Management, Inc. Through the Adversary Proceeding, the Official Committee was able to quickly obtain prejudgment relief against the Defendants, including prejudgment liens on the Defendants' cash and other tangible assets valued in the range of $30 million, and further orders enjoining the Defendants from transferring assets other than as necessary for ordinary living or legal-representation expenses. As the Trustee describes, the Adversary Proceeding set the platform for the Trustee's Motion and the continuing settlement efforts with the Defendants.

3. After achieving these results, and upon the appointment of Paul D. Moore as chapter 11 trustee (the "Trustee"), the Official Committee was pleased to transfer responsibility for the further prosecution of the Adversary Proceeding to the Trustee and turned to the furtherance of its other statutory duties in the Chapter 11 Case.

3

**The Official Committee's Continuing Activities**

4.      The Official Committee fully appreciates that cases dominated by wrongful death and other serious tort claims are difficult, logistically, legally and (especially here) emotionally for all involved.  In other challenging tort claim dominated Chapter 11 cases, member representatives of the Official Committee (i.e., counsel for members) and Official Committee counsel have had great success in formulating, negotiating and confirming Chapter 11 plans providing substantial recoveries (aggregating several hundreds of millions of dollars) to creditors in an efficient and cost-effective manner and, significantly, in a much shorter time-frame than would have been achieved after considerable discovery and often piecemeal litigation among the multitude of parties implicated in the tortious conduct or participating in the process of allocating recovery proceeds.  Those matters include TL Admin. Corp. et al. f/k/a TwinLab Corp., et al. [Case No. 03-15564, Bankr. S.D.N.Y., Drain, J. (reference partially withdrawn to S.D.N.Y., Rakoff, J)], In re N.V.E., Inc. [Case No. 05-35692, Bankr. D.N.J., Winfield, J.], In re Muscletech Research & Dev., Inc. [Case No. 06-cv-00538, S.D.N.Y., Rakoff, J.], In re MII Liquidation Inc. [05-06040, Bankr. S.D. Cal., Hargrove, J.], and In re Quigley Co. [Case No. 04-15739, Bankr. S.D.N.Y., Bernstein, J.]).  The model that enabled these successes required potentially liable third parties (including debtor insiders and affiliates, relevant and applicable insurers and other parties who were alleged to have tort liability to the tort claimants) to contribute funds to a plan trust for the benefit of tort victims and other creditors; in return, those third parties were provided plan releases and injunctions, thereby minimizing legal expense and delay and maximizing the amounts available to claimants for fair and equitable allocation and prompt distribution.

5. The Official Committee is pleased that the Trustee, as he describes in his Motion (see Motion, ¶ 20), has embraced and described to the Court the model that has had such success in other cases. The member representatives of the Official Committee and Official Committee counsel have worked hard to bring their experience and previous successes to bear in this case. Indeed, immediately upon the Trustee's appointment, counsel for the Official Committee shared with him the relevant analyses, documents and related information regarding these prior cases, and have worked diligently, economically and cooperatively with the Trustee to build and implement this architecture. The Official Committee has continued to work closely with the Trustee to lay the groundwork for the successful use of this model, including providing both public and proprietary material to the Trustee for the Trustee's use in his efforts to centralize the proceedings against the Debtor in the multidistrict litigation (the "MDL Proceeding") currently proceeding before Judge Saylor in the District Court for the District of Massachusetts (see, e.g., Exhibits B and C to the *Chapter 11 Trustee's Motion to Transfer Personal Injury Tort and Wrongful Death Cases to this Court Pursuant to 28 U.S.C. §§157(b)(5) and 1334* (the "Transfer Motion") [MDL Proceeding, Case No. 13-02419, Dkt. No. 38 (D. Mass.)]).

6. The Official Committee has also drafted and negotiated with the Trustee a Common Interest, Privilege and Confidentiality Agreement (the "Common Interest Agreement"), allowing the Official Committee to, among other things, avoid the expense of engaging in a separate financial advisor for the Official Committee, as the Common Interest Agreement permits the Official Committee access the financial advisor retained by the Trustee, if and as needed.

7. Finally, the Official Committee, upon request of the Trustee, has taken the principal role in drafting, and has been working closely with the Trustee to formulate, a draft claims procedure order that the parties anticipate would be entered both in the MDL Proceeding and incorporated into a bar date order in this Chapter 11 Case. The Official Committee has exchanged several drafts of this proposed order with the Trustee, and it has also commenced circulating drafts to the Defendants in the Adversary Proceeding, members of Plaintiffs' Steering Committee (the "PSC") in the MDL Proceeding, and counsel for other parties in the MDL Proceeding whose participation in this process will be important to achieving success in this case. In this and all other respects, the Trustee and the Official Committee have been able to work together efficiently and without duplication of effort, and they will continue to do so.

**Non-Debtor Releases and Plan of Reorganization**

8. In their present Motion, the Trustee and Defendants recognize and state that any settlement with the Defendants, as proposed in the Motion, will require this Court's approval of third party, non-debtor releases and related injunctions as part of a Chapter 11 plan. By providing contributing Defendants with finality as to their NECP-related conduct, these releases and injunctions will be essential to incent the Defendants to make substantial contributions, in amounts acceptable to the creditors, to a plan trust for the benefit of all creditors. See Motion, ¶ 20 ("In broad terms, the Trustee envisions a chapter 11 plan whereby potentially liable parties, including the allegedly culpable insiders of the Debtor, would contribute funds in amounts to be negotiated into a common fund. To ensure finality, and to induce potentially liable parties to contribute to the fund, the Trustee contemplates the chapter 11 plan would provide third party releases

to those potentially liable parties who make the substantial contributions the Trustee envisions will be required by such parties.").

9. Any such release (and related injunctions) as part of a Chapter 11 plan will require significant, if not overwhelming, support from the tort claimants. See 11 U.S.C. § 1126; Monarch Life Ins. Co. v. Ropes & Gray, 65 F.3d 973, 980 (1st Cir. 1995) (noting that in evaluating whether a non-debtor injunction or release is appropriate, courts take into consideration, among other things, whether "the creditors have overwhelmingly approved the plan, with the injunction"); Class Five Nev. Claimants v. Dow Corning Corp. (In re Dow Corning Corp.), 280 F.3d 648, 658 (6th Cir. 2002) (factors to consider when enjoining a non-consenting creditor's claims against a non-debtor include that "[t]he impacted class, or classes, has overwhelmingly voted to accept the plan."); see also Behrmann v. Nat'l Heritage Found., Inc., 663 F.3d 704, 711-13 (4th Cir. 2011) (same). Procuring creditor support for such a plan is critical and requires constructive outreach principally to tort claimants and their counsel, many if not most of whom have little or no experience in Bankruptcy Courts or with bankruptcy issues. Accordingly, for the last several months the Official Committee has, among other things, been working hard through its Official Committee member representatives and with other leading representatives of tort claimants around the country to educate claimants and their counsel about, and build support for, the model proposed by the Trustee in the Motion. Indeed, the Official Committee has held open fora for counsel representing NECP tort claimants at national conferences for plaintiffs' attorneys, and it plans on holding similar fora on a regular basis.

7

10. Given the substantial experience of representatives of the Official Committee in achieving successful plans in other mass tort Chapter 11 cases and the Official Committee's role as representative of the very creditors whose support will be essential to success in this case, the Official Committee has accepted as its charge and objective that it will continue to work closely and cost-effectively with the Trustee to achieve the confirmation of a Chapter 11 plan with an effective date of December 2013 that provides for distributions to tort victims and other creditors from an aggregate contributions to the plan exceeding $100 million. The Official Committee is already well underway in liaising with other parties in that regard and believes that these goals are aggressive but realistic.

**Conclusion**

11. The Official Committee fully supports the Motion before this Court, and appreciates the clarity that the Trustee's motion brings to the multi-step process for resolving the Adversary Proceeding and obtaining a settlement with the Defendants that is acceptable and supported by the creditors. The first step in that process was the Official Committee's commencement of the Adversary Proceeding and its success in tying up tens of millions of dollars in assets within the first week of the Committee's appointment. The second step, as described in the Motion, is the Trustee's commencement of a mediation effort with the Debtors' insiders and affiliated companies (see Motion, Exhibit A, pp. 6-7). The Official Committee fully supports the Trustee's role in this regard, as it formalizes the role that the Trustee has effectively played with success over the last 10 weeks since his appointment. The final and crucial third step of the process will be to ensure that any settlement would be widely acceptable to the body

of unsecured creditors, thereby providing the support that, as a matter of law, is required to confirm a contemplated Chapter 11 plan that embodies that settlement. The Official Committee believes that its work done to date to prepare the tort victims for such a resolution, and the work to be done going forward as negotiations continue, make such support realistic and achievable if the terms of settlement are fair given the harm caused and resources available for distribution to creditors. The Official Committee looks forward to working with the Trustee and the PSC to build that support as soon as possible and, together with contributions by other parties, provide a timely and fair resolution of this case for creditors in this calendar year.

12. The Official Committee believes that the Motion provides the proper mechanism for implementing the next important step in the multistep process necessary to attempt to resolve the Adversary Proceeding and the Chapter 11 Case in an efficient manner. Accordingly, the Official Committee supports the Trustee's Motion in its entirety.

Dated: April 16, 2013
    Boston, Massachusetts

        **BROWN RUDNICK LLP**

        By: <u>/s/ William R. Baldiga</u>
        William R. Baldiga, Esq. (BBO #542125)
        Rebecca L. Fordon, Esq. (BBO #664578)
        One Financial Center
        Boston, Massachusetts 02111
        Telephone: (617) 856-8200
        Facsimile: (617) 856-8201
        wbaldiga@brownrudnick.com
        rfordon@brownrudnick.com

        and

        David J. Molton, Esq. (admitted *pro hac vice*)
        Seven Times Square
        New York, New York 10036
        Telephone: (212) 209-4800
        Facsimile: (212) 209-4801
        dmolton@brownrudnick.com

        *Counsel to the Official Committee of Unsecured Creditors of New England Compounding Pharmacy, Inc.*

61144235

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing document was served upon the parties listed on the attached Service List, by first class mail, postage prepaid, on this 16th day of April, 2013.

Carol S. Ennis, Paralegal
BROWN RUDNICK LLP
One Financial Center
Boston, Massachusetts  02111
617-856-8200

Leon R. Barson, Esq.
Pepper Hamilton LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA  19103-2799

Todd A. Feinsmith, Esq.
Pepper Hamilton LLP
19th Floor, High Street Tower
125 High Street
Boston, MA  02110-2736

Jennifer L. Hertz, Esq.
U.S. Department of Justice
Office of the U.S. Trustee
5 Post Office Square, Suite 1000
Boston, MA  02109

Harold B. Murphy, Esq.
Murphy & King
One Beacon Street, 21st Floor
Boston, MA  02108

Middlesex Savings Bank
Attn:  Legal Department
36 Summer Street, SS2-2
Natick, MA  01760

Merrill Lynch, Pierce Fenner & Smith, Inc.
c/o CT Corporation
155 Federal Street
Boston, MA  02110

Jennifer L. Mikels
Duane Morris LLP
100 High Street, Suite 2400
Boston, MA  02110-1724

Heidi A. Nadel, Esq.
David E. Meier, esq.
Todd & Weld LLP
28 State Street
Boston, MA  02109

Daniel Rabinovitz, Esq.
Michaels, Ward & Rabinovitz, LLP
One Beacon Street, 2nd Floor
Boston, MA  02108

Christopher J. Panos, Esq.
Craig and Macauley Professional Corporation
600 Atlantic Avenue
Federal Reserve Plaza
Boston, MA  02210

Paul D. Moore, Esq.
Duane Morris LLP
100 High Street, Suite 2400
Boston, MA  02110-1724

Charles Schwab & Co., Inc.
c/o CT Corporation
155 Federal Street
Boston, MA 02110

Frederic L. Ellis
Ellis & Rapacki LLP
85 Merrimac Street, Suite 500
Boston, MA  02114

Michael R. Gottfried, Esq.
Duane Morris LLP
100 High Street, Suite 2400
Boston, MA  02110-1724

Bruce A. Singal, Esq.
Michelle R. Peirce, Esq.
Donoghue Barrett & Singal, P.C.
One Beacon Street, Suite 1320
Boston, MA  02108

Andrew C. Gately,. Esq.
Gately Law Firm, LLC
316 Franklin Street
Newton, MA 02458

John J. Monaghan, Esq.
Holland & Knight
10 St. James Avenue, 11th Floor
Boston, MA  02116

Paul Saltzman, Esq.
201 Devonshire Street, #801
Boston, MA  02110-1418

Bank of America
100 Federal Street
Boston, MA  02110
Attn: Myisha R. Houlder, Assistant Manager

Charles R. Bennett, Jr.
Murphy & King
Professional Corporation
One Beacon Street
Boston, MA  02108

60987648v1