UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br>    All Cases | MDL No.: 1:13-md-2419-FDS |
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY CASES<br><br>This Document Relates to:<br>    All Cases | Master Docket No. 12-12052-FDS |

**PARTY-IN-INTEREST TRACY MACCOUX'S MEMORANDUM IN OPPOSITION TO TRUSTEE'S MOTION TO TRANSFER PERSONAL INJURY CASES**

### INTRODUCTION

Tracy Maccoux is a party-in-interest to the Trustee's Motion to transfer all "related" personal injury tort and wrongful death cases to this Court pursuant to 28 U.S.C. § 157(b)(5). Ms. Maccoux has commenced legal action against a sole defendant (a medical clinic) in Minnesota state court. Given the remoteness of the existing parties to New England Compounding Center (NECC), and the lack of any parties with a direct affiliation with NECC, this Court should abstain from exercising jurisdiction under 28 U.S.C. § 157(b)(5).

### FACTS

Tracy Maccoux has commenced a personal injury action against Medical Advanced Pain Specialists, P.A. ("MAPS") in Minnesota state court. (See Affidavit of Elliot L. Olsen, Exhibit A, Complaint.) The Complaint alleges that physicians at MAPS injected tainted NECC steroids into her spine on July 31 and August 10, 2012. Ms. Maccoux subsequently developed fungal meningitis. She was hospitalized for an extended period of time and has been taking antifungal

medications. Her care is complicated by the fact that she suffers from Complex Regional Pain Syndrome, a chronic pain condition that typically affects the extremities.

Ms. Maccoux has asserted four counts against MAPS. She has asserted a count for general negligence against MAPS for its failure to investigate and evaluate NECC to ensure that it was purchasing a quality product. The Complaint further alleges a claim for breach of implied warranty arguing that the steroids sold by MAPS would not "pass without objection in the trade" and "were not fit for the ordinary purposes for which they were intended." A third count alleges failure to obtain informed consent.. A fourth count asserts negligence per se in that MAPS failed to comply with Minn. Stat. § 151.46 which provides that it is unlawful for any person to knowingly purchase or receive a prescription drug from a source that is not licensed as a drug manufacturer or a drug wholesaler. NECC not licensed in Minnesota as a manufacturer or wholesaler.

MAPS has responded with a motion under Rule 12 of the Minnesota Rules of Civil Procedure alleging that the claims for breach of warranty and negligence per se, "fail to state a claim upon which relief can be granted." (Exhibit B Olsen Affidavit.) A hearing is set for June 5, 2013. Because the Rule 12 motion seeks to dismiss only two of the counts, at least two claims will go forward regardless of the outcome of the Rule 12 motion. To date, MAPS has not sought to defend this matter by alleging that it has claims for contribution and/or indemnity against NECC that must be adjudicated.

## DISCUSSION

As currently configured, the Maccoux lawsuit involves two Minnesota residents and has no direct connection to the NECC bankruptcy. As such, this Court should abstain from exercising jurisdiction over this particular case. As the federal courts have recognized, despite the seemingly mandatory language of 28 U.S.C. § 157(b)(5), it must be read in tandem with 28 U.S.C. § 1334(c)(1). That provision allows a court the discretion abstaining from a largely state court proceeding. In re Pan American Corp., 950 F.2d 839, 845 (2nd Cir. 1991). Thus, a

motion under section 157(b)(5) requires an abstention analysis. Id. at 844. In deciding whether or not to abstain in a bankruptcy context, the federal courts have typically invoked a 12-factor test as referenced by the Trustee. See e.g., In re WorldCom, Inc. Securities Litigation, 293 B.R. 308, 332 (S.D.N.Y. 2003). It is typical that not all 12 factors will apply to a particular proceeding. In this case, this Court should consider factors 1-3, 6, 11, and 12.

A.  Factors 1 and 6.

Under these factors, this Court should consider the effect of abstention on the efficient administration of the bankruptcy estate and the degree of relatedness of the state court proceeding to the main bankruptcy case. Under its current posture, this state court case would have no affect whatsoever on the bankruptcy estate. To date, MAPS has indicated no intent to argue that its claims for contribution or indemnity are hampered by the bankruptcy of NECC. Moreover, there is no guarantee that MAPS will ever assert such an argument. Even if MAPS were to simply make those arguments in the state court case, there would still be no effect on the bankruptcy estate. If would be up to the state court to determine what effect, if any, such arguments have upon the case.

Unless and until MAPS seeks to invoke the jurisdiction and assistance of the bankruptcy court by filing a notice of claim on issues of contribution and indemnity, Factors 1 and 6 weigh entirely in favor of abstention. MAPS may make the rational decision that its litigation fund is best used in defense or settlement of Ms. Maccoux's claim rather than chasing contribution and indemnity money in a bankruptcy proceeding with limited available funds.

Even if MAPS does assert a claim in this bankruptcy proceeding, it would not seriously affect the efficient administration of the bankruptcy estate. This court has numerous players to deal with and the addition of MAPS would affect the complexity of this matter in a *de minimis* fashion, at best.

B.  Factors 2 and 3.

These factors concern the extent to which state law issues predominate over bankruptcy issues and the difficulty of applying state law. Here, Ms. Maccoux has alleged garden-variety complaints of negligence, breach of warranty, and lack of informed consent. She has also alleged, however, a claim of negligence per se involving application of Minn. Stat. § 151.46 and its related provisions. This statute represents Minnesota's unique attempts to regulate the sale of drugs within the state. While the Minnesota law may not be particularly difficult to interpret, it is an issue unique to Minnesota which is best addressed by the Minnesota courts.

C.   Factor 11.

Under the United States Constitution and under the Minnesota Constitution, Ms. Maccoux is guaranteed a trial by jury. Transferring her state case to a mass tort proceeding in Massachusetts would deny her right to a trial by jury of her peers. Moreover, given the multitude of issues involved in this district court, moving Ms. Maccoux's case here may have the effect, unintended or not, of denying her a right to trial by jury.

D.   Factor 12.

This factor examines the presence of non-debtor parties. As discussed above, the Maccoux case involves only non-debtor parties, in this case, a pain clinic. With two Minnesota residents as the sole parties, this case is a unique and discrete Minnesota case and should remain that way under Factor 12. The Trustee has relied heavily on In re Twin Laboratories, Inc., 300 B.R. 836 (S.D.N.Y. 2003). This case involved 35 lawsuits where the debtor was a party to each of them. This case is thus distinguishable.[1]

Abstention is clearly appropriate in this case and Judge Ponsor of the United States District Court for the District of Massachusetts recently ruled that abstention was warranted in a personal injury case. In Haber v. Massey, 2012 WL 5398567 (Nov. 1, 2012), a pedestrian brought a personal injury action after being struck by a truck while crossing a street. She sued

---

[1] Ms. Maccoux is aware that In re TwinLabs Personal Injury Cases, 2004 W.L. 435083 (March 8, 2004) (TwinLabs II) involved an additional case where the debtor had been improperly joined and thus was not a party.

4

in state court against the truck driver and his employer. The truck driver subsequently filed a petition for bankruptcy. The defendants then removed the action to federal court and the plaintiff moved to remand.

The plaintiff in Massey argued that her state court action was not related to the driver's bankruptcy because of the extensive insurance coverage available both to the employer and the driver and thus, the debtor would have no personal exposure. Ultimately, Judge Ponsor decided to abstain. After finding that no evidence of forum-shopping existed, Judge Ponsor went on to determine that issues of state law clearly predominated over bankruptcy issues and that the plaintiff's action did not raise any bankruptcy-related issues. Moreover, he found that the state has a "recognized interest in resolving cases under its own statutes."

The case at hand is similar to Massey in that state law issues predominate over bankruptcy-related issues. As in Massey, Minnesota has a "recognized interest" in resolving cases under its own statutes.

## CONCLUSION

Based upon the foregoing, Tracy Maccoux, as a Party-in-Interest, hereby requests that this Court deny the Trustee's Motion with respect to her Minnesota state law case and thus abstain from exercising jurisdiction.

Dated: 5/2/13                           Respectfully submitted,

PritzkerOlsen, P.A.

By: _____
Elliot L. Olsen (MN #203750)
Ryan M. Osterholm (MN #0390152)
Attorneys for Party-in-Interest Tracy Maccoux
Suite 2950 Plaza Seven
45 South 7th Street
Minneapolis, MN 55402-1652
(612) 338-0202