# EXHIBIT 2

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | )  Master File No. 1:13-MF-2419-FDS<br>)  MDL Docket No. 2419<br>)<br>)  This Document Relates to:<br>)<br>)  *Andre Gould and Meredith Gould v. New*<br>)  *England Compounding Pharmacy Inc., et*<br>)  *al.:* 1:13CV10444.<br>)<br>)  *Jenna A Letizia and Paul Letizia v. New*<br>)  *England Compounding Pharmacy, Inc., et*<br>)  *al.:* 1:13CV10442. |

## DEFENDANT AMERIDOSE, LLC'S BRIEF OPPOSING PLAINTIFFS' MOTIONS TO REMAND

The Motions for Remand filed by Plaintiffs in the above-referenced actions should be denied as there are several bases for federal jurisdiction.    In particular, 28 U.S.C. §1334(b) and 28 U.S.C.§157(b)(5) compel this Court to exercise "related to" jurisdiction over Plaintiffs' personal injury tort claims irrespective of the diversity of the parties.  Not only do these statutes compel the exercise of "related to" jurisdiction, but they enable a more complete coordination and consolidation of these proceedings in the MDL.  This, in turn, will help the Court and all interested parties preserve the pool of assets that otherwise would be depleted by Defendant's need to litigate Plaintiffs' cases, and similar cases, in multiple forums.  This Court and the Interim Plaintiffs' Liaison Counsel previously recognized that preserving assets is an issue important to all parties so as to assure, as much as possible, the equitable distribution of settlement proceeds.  (Transcript from 2/15/13 Status Conference at 8:2-9:3; 13:15-20, 44:12-16, relevant pages attached as Exhibit 1).  Thus, federal court jurisdiction benefits all parties.

Separate and apart from the Court's "related to" jurisdiction, federal jurisdiction is proper because there is no colorable basis for Plaintiffs' product liability claims against the non-diverse healthcare providers. Plaintiffs fraudulently joined these claims solely to avoid federal jurisdiction. As a result, there is complete diversity over the properly joined defendants and the amount in controversy exceeds $75,000 exclusive of interest and costs.

This Court can and should perfect its diversity jurisdiction by severing Plaintiffs' remaining negligence (i.e., medical malpractice) claims against the non-diverse healthcare providers because those claims focus on different conduct, by different parties, at different times, and in different locations than Plaintiffs' product liability claims against Ameridose. Severing Plaintiffs' negligence claims against the non-diverse healthcare providers and allowing Plaintiffs' product liability claims against Ameridose to proceed in the MDL will accomplish the goals of judicial economy and consistency while at the same time preserving judicial resources.

Ameridose has briefed the legal bases for each of these arguments in its Brief in Opposition to the Motion to Remand filed by Plaintiffs Greta Normand and Drew Normand in *Greta Normand and Drew Normand v. New England Compounding Pharmacy, Inc., et al.*: 13-cv-10447-FDS. In addition, Ameridose, the Chapter 11 Trustee, and Defendant GDC Properties Management, LLC have previously briefed the implications of 28 U.S.C. §1334(b) and 28 U.S.C.§157(b)(5). (*See* Defendant Ameridose LLC's Memorandum in Support of Its Motion to Withdraw the Reference, Case 1:13-cv-10226-FDS, Doc. 2); Chapter 11 Trustee's Motion to Transfer Personal Injury Tort and Wrongful Death Cases to This Court (ECF # 37); GDC Properties Management's Motion To Withdraw the Reference of Certain of the Adversary Proceedings (ECF # 30).) All of these arguments apply with equal force to the within action, and thus, in the interest of preserving judicial resources, Ameridose will not submit another brief. Instead, Ameridose attaches the *Normand* Brief and the Memorandum in Support of Its Motion to

Withdraw the Reference as Exhibits 2 and 3, respectively, and incorporates by reference the arguments contained therein in support of this brief.[1]

For the foregoing reasons, Defendant Ameridose, LLC, respectfully requests that this Court deny the Motions to Remand The Case To The Superior Court of New Jersey, Law Division/Cumberland County filed by Plaintiffs Andre Gould and Meredith Gould and Jenna A. Letizia and Paul Letizia, and instead, retain jurisdiction over Plaintiffs' Complaints.


By: /s/ Matthew P. Moriarty _____
    *Attorneys for Defendant Ameridose, LLC*
    Matthew Moriarty (OH 0028389)
    Tucker Ellis LLP
    925 Euclid Avenue
    Suite 1150
    Cleveland, OH 44115-1414
    216.592.5000

    and

    /s/ Scott J. Tucker _____
    Scott J. Tucker (BBO # 503940)
    Tucker, Saltzman & Dyer, LLP
    100 Franklin Street
    Boston, MA 02110
    Tel:    617.557.9696
    Fax:    617.227.9191
    E-mail: tucker@tsd-lawfirm.com
            mantalos@tsd-lawfirm.com

---

[1] Ameridose, LLC withdraws its assertion that the non-diverse defendants were not served before it filed its Notice for Removal.

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing has been filed with the Clerk of the Court on May 3, 2013 using the ECF system that sent notification of this filing to all ECF-registered counsel of record via e-mail generated by the Court's ECF system.


/s/ Matthew P. Moriarty
*Attorney for Defendant Ameridose, LLC*

013260.000001/1685338.1

# EXHIBIT 1

to Defendant Ameridose, LLC's Brief Opposing
Plaintiffs' Motions to Remand

```
 1                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MASSACHUSETTS
 2

 3

 4                                  )
    MICHELE ERKAN, on behalf of     )
 5  herself, her minor child,       )
    and all others similarly        )
 6  situated,                       )  No. 12-12052-FDS
                                    )
 7                      Plaintiff,  )
    vs.                             )
 8                                  )
    NEW ENGLAND COMPOUNDING
 9  PHARMACY, INC., d/b/a NEW
    ENGLAND COMPOUNDING CENTER,
10  et al.,
                        Defendants.
11

12

     BEFORE:  THE HONORABLE F. DENNIS SAYLOR, IV
13

14

                         STATUS CONFERENCE
15

16

17
               John Joseph Moakley United States Courthouse
18                        Courtroom No. 2
                          One Courthouse Way
19                        Boston, MA 02210

20
                          February 15, 2013
21                        10:00 a.m.

22

23                       Valerie A. O'Hara
                        Official Court Reporter
24       John Joseph Moakley United States Courthouse
             One Courthouse Way, Room 3204
25                    Boston, MA 02210
                 E-mail: vaohara@gmail.com
```

1   the defendants is in bankruptcy at this stage.

2         At the risk of stating the obvious and

3   getting perhaps way ahead of myself, I want to begin

4   talking immediately about where I think this thing is

5   likely to go.  I don't have really hardly any facts at

6   all, and it's always dangerous to make a decision or to

7   begin even trying to make a decision without facts, but

8   it does look to me like we have a relatively small pool

9   of assets here or a defined pool.

10  10:05AM       We look like we're going to have a large

11  pool of claims, and my guess is that those claims are

12  going to greatly exceed the available assets, I'm

13  assuming, you know, liability here, I'm assuming it

14  away, causation and product identification.

15        There may be lots of issues here, but

16  assuming there is liability, I think, again, there's a

17  limited pool, and I think we need to be talking about

18  and thinking about from the beginning a procedure

19  perhaps through the bankruptcy court, perhaps not, where

20  10:05AM  there is a fund that could be administered to handle the

21  claims for people that want to go down that path to try

22  to reach the most equitable possible distribution of

23  whatever assets are available.

24        I'm very conscious that whatever we do in

25  litigation will diminish the insurance assets anyway and

1    perhaps all of the available assets, and, of course,

2    everyone has a right to whatever due process the law

3    allows.  I'm sure there are individual claims and

4    defenses and wrinkles that need to be thought through,

5    but, again, I think this is something we need to be

6    addressing from the beginning.

7              And, of course, also to state the obvious,

8    it is important to me to manage the case that we have

9    procedures and protocols in place so that I can imagine

10:06AM  10   the litigation.  To the extent there is litigation, I

11   have appointed interim liaison counsel for the

12   Massachusetts cases or the first dozen or so, and I need

13   to set in motion a process for appointment of lead

14   counsel.

15             We may at some point get to having

16   committees and so forth, but I think I want to start

17   with the relatively, relatively simple issue of

18   appointing lead counsel, and I don't propose to do

19   anything at this conference other than have a discussion

10:07AM  20   again about where we are and to set some initial

21   deadlines for achieving some of these things.

22             I welcome the lawyers who are appearing by

23   telephone, I've seen some of you, some of you I have

24   not, but welcome.  I hope you can hear me, and I'm going

25   to ask everyone who's in the courtroom who speaks to

1    creditors' committee to file its complaint, and the

2    creditors' committee successfully briefed and argued

3    motions for injunctive relief and attachments, so on

4    January 28th, the bankruptcy court ordered the

5    following:  Ameridose, GDC and Medical Sales Management

6    are restrained from paying Barry, Lisa, Greg or Carla up

7    to $21.1 million.  The property of the individuals is

8    attached up to $21.1 million.  The individuals are

9    restrained from spending any assets other than as

10   necessary for ordinary living or legal expenses, which

11   the Court noted did not include February break trips to

12   Aspen and an attachment of trustee process attached bank

13   accounts up to $21.1 million.  So that's where are,

14   your Honor.

15            In terms of where we go from here, I think

16   that everyone on the plaintiffs' side agrees with the

17   observation that you made earlier, which is that the

18   goal here should be to minimize expenses so as to not

19   further deplete the pot while also securing a rapid

20   recovery for a relatively well-known class of victims.

21            As I mentioned earlier, there are some

22   strategic decisions to be made here in terms of which

23   claims against particular groups of defendants proceed

24   in which venue.  We think that the Court ought to focus

25   on appointing lead counsel or plaintiff leadership

1    lingering in the air and that we're starting to touch on

2    is where do we go from here, and I'll just note the

3    bankruptcy court has one model, and that model involves

4    expenses being incurred by the creditors' committee, the

5    trustee, respective counsel, financial advisors.  That

6    model can reduce available assets and the value of the

7    estate in principal.  The MDL has a different model, one

8    based on at least the plaintiffs' lawyers working on

9    contingency who are only paid if there is a recovery.

10:54AM  10         There are efficiencies associated with each

11   model, and we believe that we can work together to come

12   up with the most efficient resolution here.  The overall

13   notion, of course, should be to coordinate the

14   litigation and to take the steps necessary, whether here

15   or there, to foster an early fund for all claimants that

16   can be equitably distributed, and we're counting, your

17   Honor, on yourself working with Judge Boroff as well as

18   counsel in the two camps working together and hand in

19   hand with the trustee.  So far that has been a very

10:55AM  20   efficient and effective process, and we hope that it

21   will continue once the counsel is appointed.

22         THE COURT:  Thank you.  And, again, just one

23   of the odd wrinkles in this is I would imagine in the

24   normal case you would have a secured creditor or one or

25   more secured creditors who, you know, would have a first

# EXHIBIT 2

## to Defendant Ameridose, LLC's Brief Opposing Plaintiffs' Motions to Remand

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) ) ) ) ) | Master File No. 1:13-MF-2419-FDS MDL Docket No. 2419 This Document Relates to: *Greta Normand and Drew Normand v. New England Compounding Pharmacy, Inc., et al.:* 13-cv-10447-FDS |

## DEFENDANT AMERIDOSE, LLC'S BRIEF OPPOSING PLAINTIFFS' MOTION TO REMAND[1]

### I.    PRELIMINARY STATEMENT

This Court has jurisdiction over Plaintiffs' personal injury tort claims for two reasons.  First, by filing a voluntary petition for Bankruptcy in the United States Bankruptcy Court for the District of Massachusetts, New England Compounding Pharmacy, Inc. d/b/a New England Compounding Center triggered operation of the jurisdictional provisions of the United States Judiciary and Judicial Procedures Code related to bankruptcy, including among other provisions 28 U.S.C. §1334(b) and 28 U.S.C.§157(b)(5).  These statutes compel this Court to exercise "related to" jurisdiction over Plaintiffs' personal injury tort claims irrespective of the diversity of the parties.  Removal, therefore, was proper.

Removal was also proper because there is complete diversity over the properly joined defendants and the amount in controversy exceeds $75,000 exclusive of interest and costs.  More specifically, there is no colorable basis for Plaintiffs' product liability claims against the non-diverse healthcare providers.  Plaintiffs have fraudulently joined these claims solely to avoid federal jurisdiction.

---

[1] Ameridose, LLC withdraws its assertion that the non-diverse defendants were not served before it filed its Notice for Removal.

Finally, this Court can and should perfect its diversity jurisdiction by severing Plaintiffs' remaining negligence (i.e., medical malpractice) claims against the non-diverse healthcare providers because those claims focus on different conduct, by different parties, at different times, and in different locations than Plaintiffs' product liability claims against Ameridose. Severing Plaintiffs' negligence claims against the non-diverse healthcare providers and allowing Plaintiffs' product liability claims against Ameridose to proceed in the MDL will also accomplish the goals of judicial economy and consistency while at the same time preserving judicial resources.

In light of the foregoing, and as explained more fully below, Ameridose, LLC respectfully requests that this Court deny Plaintiffs' Motion to Remand The Case To The Superior Court of New Jersey, Law Division/Cumberland County.

## II.   STATEMENT OF FACTS

### A.   PLAINTIFFS' CLAIMS

Plaintiffs Greta Normand and Drew Normand filed their initial Complaint on November 1, 2012, in the Superior Court of New Jersey, Cumberland County, Law Division.  Plaintiff Greta Normand alleges personal injury as a result of being injected with contaminated methylprednisolone acetate ("MPA") that subsequently was recalled by defendant New England Compounding Pharmacy, Inc. d/b/a New England Compounding Center ("NECC").  Plaintiff Drew Normand asserts a claim for Loss of Consortium (Count V).  On November 29, 2012, Plaintiffs filed an Amended Complaint adding Ameridose and Alaunus Pharmaceutical, LLC as defendants on the ground that they allegedly share the same owners as NECC.

While there is common ownership between Ameridose and NECC, the two companies are legally separate entities and produced separate sets of products at different physical facilities. Ameridose never manufactured, compounded, distributed or sold MPA.  Nonetheless, as to NECC,

2

013260.000001 1641532.1

Ameridose, and Alaunus, Plaintiffs assert claims for Violations of the New Jersey Product Liability Act

(Count I), Negligence (Count II), and Breach of Express Warranty (Count IV). (*See* Pl.'s Am. Compl.).

Plaintiffs also sued several non-diverse defendants – Kimberley Yvette Smith, M.D. ("Dr.

Smith"), Premier Orthopaedic and Sports Medicine Associates of Southern New Jersey, LLC also

trading as Premier Orthopaedic Associates ("Premier Orthopaedics"), South Jersey Healthcare ("South

Jersey") and South Jersey Regional Medical Center ("SJRMC") (collectively referred to as the

"Healthcare Defendants"). As against the Healthcare Defendants, Plaintiffs allege Violations of the

New Jersey Product Liability Act (Count I) and Negligence (Count III). As against Dr. Smith, Plaintiffs

allege only Negligence (Count III).[2]

## B. NECC FILES BANKRUPTCY AND AMERIDOSE REMOVES PLAINTIFFS' AMENDED COMPLAINT TO THE UNITED STATES DISTRICT COURT, DISTRICT OF NEW JERSEY AND THE JPML CREATES THE MDL.

NECC filed a voluntary petition for relief under Chapter 11 of the U.S. Bankruptcy Code on

December 21, 2012 in the United States Bankruptcy Court for the District of Massachusetts (Eastern

Division) No. 12-19882-HJB, which automatically stayed all proceedings against NECC. Proceedings as

to Ameridose were not stayed. With the consent of Alaunus, Ameridose timely removed Plaintiffs'

Amended Complaint on January 15, 2013, on the grounds that this Court has diversity jurisdiction under

28 U.S.C. § 1332. (*Id.* at ¶¶ 13-17.) At the time of removal, the Judicial Panel on Multi-District

Litigation ("JPML") had not determined whether there would be an MDL, or of course, in what district

an MDL would be venued.

In its removal petition, Ameridose asserted that Plaintiffs fraudulently joined medical

malpractice and product liability claims against the non-diverse defendants solely to defeat diversity

---

[2] Plaintiff also sued several "John Doe" Corporations and Physicians. "For purposes of removal ... the citizenship of parties sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(a).

jurisdiction. (*Id.* at ¶¶ 14, 15). In the absence of fraudulently joined claims, the two pillars of diversity jurisdiction – (1) complete diversity of citizenship between Plaintiffs and NECC, Ameridose and Alaunus;[3] and (2) an amount in controversy exceeding $75,000 – are satisfied. (*Id.* at ¶¶ 24). Ameridose also requested that the Court sever the non-diverse parties. After Ameridose removed the case, the JPML, on February 12, 2013, created MDL 2419 for coordinated and consolidated proceedings pursuant to 28 U.S.C 1407.[4] The JPML assigned the case to the United States District Court, District Massachusetts, the same district as the NECC bankruptcy case.

The JPML created the MDL because more than 100 cases have been filed that allege personal injury related to the receipt of contaminated MPA, and these cases involve common questions of fact. Since February 22, 2013, more than 100 tag-along actions, including this action, have been transferred to the MDL.[5]

Plaintiffs filed a motion to remand in the United States District Court for the District of New Jersey on February 14, 2013.[6] The motion should be denied. There are now two strong bases for federal jurisdiction in this District. The creation of an MDL and its assignment to this District permit the clear exercise of federal jurisdiction over this type of personal injury tort case. Moreover, the original grounds for removal remain: the Plaintiffs fraudulently joined local health care providers in

---

[3] Plaintiffs allege that NECC is and was, at all relevant times, incorporated under the law of, and authorized to conduct business in the Commonwealth of Massachusetts. (Pl. Am. Compl. ¶3). Ameridose is a Massachusetts Limited Liability Company with a principal place of business located at 205 Flanders Road, Westborough, MA 01581. (De.'s Answer to Pl.'s Am. Compl. ¶ 5). Plaintiff also has alleged that Alaunus is a Commonwealth of Massachusetts corporation, with its principle place of business in the Commonwealth of Massachusetts. (Pl.s' Am. Compl. ¶ 7).

[4] Conditional Transfer Order 1, Case MDL No. 2419, Document 120, filed 02/14/13 (Attached as Ex. 1).

[5] Order transferring Plaintiffs' action to the MDL. Case 1:13-cv-00291-RMB-JS, Document 22, filed 2/28/13 (Attached as Ex. 2).

[6] Plaintiffs opposing transfer to the MDL were to have filed their briefs by February 21, 2013. See, Notice of Filing of CTO and Publication of Briefing Schedule, *In Re New England Compounding Pharmacy Inc.,* Case Number: MDL 2419, Doc. 121; *Normand, et al. v. New England Compounding Pharmacy, Inc., et. al.,* Case Number: NJ/1:13 – cv – 00291, Doc. No. 2. Plaintiffs herein did not file any brief opposing transfer.

4

order to defeat federal jurisdiction, and those defendants are ignored for the purposes of the diversity

analysis.  Finally, this Court has inherent power to sever non-diverse defendants and retain jurisdiction

over this case.

## III.   **ARGUMENT**

### A. **The United States District Court for the District of Massachusetts has "related to" jurisdiction under 28 U.S.C. §157(b)(5) and 28 U.S.C. §1334(b).**

Plaintiffs in more than one hundred civil actions have alleged personal injury or wrongful death

as a result of exposure to allegedly contaminated MPA.  The sheer number of civil actions against

NECC prompted it to file its voluntary petition for bankruptcy relief currently pending in the United

States Bankruptcy Court for the District of Massachusetts.[7]  Once NECC filed for bankruptcy, all

actions against it were stayed.  11 U.S.C. §362.  NECC's bankruptcy petition triggered application of a

number of important jurisdictional provisions of the U.S. Code related to bankruptcy cases, including

those provisions that relate to the hundreds of personal injury actions and wrongful death claims filed

against NECC (like this one) that have the potential to affect the outcome of the bankruptcy case.  The

bankruptcy court does not have jurisdiction to try personal injury and wrongful death cases, but this

Court does.  And since it already is presiding over the MDL, it should exercise "related to" jurisdiction

under  28 U.S.C. §1334(b).

### 1. **28 USC §1334(b) confers jurisdiction to district courts for all civil proceedings related to bankruptcy actions arising under Title 11.**

28 U.S.C.§1334(b) provides in relevant part that, "The district courts shall have original but not

exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under

title 11." "Related to" proceedings are those that potentially have some effect on the bankruptcy estate.

*In re Middlesex Power Equip. & Marine, Inc.*, 292 F.3d 61, 68 (1st Cir. 2002); *White v. Kubotek*, 2012

---

[7] *See, In re New England Compounding Pharmacy, Inc.*, Case No. 12-19882.

013260.000001 1641532.1

W.L. 47533310 (D. Mass. 2012).  Litigation of personal injury tort cases, especially without the participation of the Debtor (who is alleged to have manufactured the products causing the injuries) can produce deleterious effects on the bankruptcy estate, such as "unpredictable and substantial verdicts" that erode the debtor's assets.  *Beck v. Victor Equip. Co.*, Inc., 277 B.R. 179, 180-81 (S.D.N.Y. 2002). Accordingly, these cases are subject to the District Court's "related to" jurisdiction.

It is not only the potential for "unpredictable and substantial verdicts" that creates the potential to effect the Debtor's estate.  It is also the expense of the litigation itself, the risk that important details get missed in a perfect storm of litigation in multiple venues, the impact of collateral estoppel issues, and a host of other risks of multiple trials proceeding in disparate forums that could sharply impact the recovery for other plaintiffs and diminish the Debtor's estate.  These factors all lead to the inescapable conclusion that litigation of these cases could substantially impact the bankruptcy case, and confirm the court's "related to" jurisdiction.

### 2. Personal injury claims are subject to unique considerations in bankruptcy cases.

28 U.S.C. §157(b)(5) provides the procedural framework to transfer both state and federal personal injury cases to a single venue, the District Court.  The statute provides:

> The district court *shall* order that personal injury tort and wrongful death claims *shall* be tried in the district court in which the bankruptcy case is pending, or in the district court in which the claim arose, as determined by the district court in which the bankruptcy case is pending. (Emphasis added).

Congress used mandatory language in 28 U.S.C. §157(b)(5) to dictate that personal injury and wrongful death claims should be transferred to the district court in the district in which the bankruptcy case is pending or the district court in which the claim arose.  Courts analyzing the disposition of personal injury and wrongful death claims have found, however, that motions under section 157(b)(5) implicate an abstention analysis under 28 U.S.C §1334(c).  In other words, the Bankruptcy Code "allows abstention for personal injury cases," and only "where abstention does not occur" will the requirement

6

for adjudication in a district court take effect. *In re Pan American Corp.* 950 F.2d 839, 844 (2nd Cir. 1991); *In re Twin Laboratories, Inc.,* 300 B.R. 836, 841 (S.D.N.Y. 2003). Yet, these same courts have consistently found that transfer to the district court should be the rule and abstention the exception. *In re Pan American Corp.* 950 F.2d. at 45; *In re Twin Laboratories, Inc.,* 300 B.R at 841; *Beck,* 277 B.R. at 181 (["E]ven discretionary remand in such circumstances should be rarely invoked, since it would seem to undercut the statutory purpose of § 157(b)[(5)]"). Indeed, the Second Circuit, in *Pan American,* declared that decisions to "abstain and have the claim liquidated in state court contravene the legislative history" of § 157(b)(5). *In re Pan American Corp.,* 950 F.2d at 845, citing 1 L. King, Collier on Bankruptcy ¶ 3.01[3][b], at 3—82 (15th ed. 1991) *and citing* R. Aaron, Bankruptcy Law Fundamentals § 3.03 [2], at 3—42 (1991) ("[t]he apparent intent [of §157(b)(4)][8] is that these personal injury claims *should not* be returned to the state courts for trial") (emphasis added).

### 3. The power to centralize personal injury and wrongful death actions under §157(b)(5) preserves the bankruptcy estate and eliminates the multiplicity of forums.

28 U.S.C. §157(b)(5) "expressly confers on the district court sitting in bankruptcy and having jurisdiction of the bankruptcy proceedings the power to fix the venue of any tort case against the debtor pending in other districts. As the Second Circuit explained in *In re Pan American,*

> The manifest purpose of section 157(b)(5) was to centralize the administration of the estate and to eliminate the multiplicity of forums for the adjudication of parts of a bankruptcy case. This is consistent with Congress' desire to eliminate the confusion, delay and inefficiencies associated with the Bankruptcy Act's limited jurisdictional scheme.

*In re Pan American Corp.,* 950 F.2d at 844-45 (internal citations omitted). The Fourth Circuit, after analyzing the special nature of personal injury tort and wrongful death cases and the district court's power to centralize personal injury torts cases to eliminate a multiplicity of forums, concluded that:

---

[8] Section 157(b)(4) excepts non-core proceedings from the mandatory abstention provisions of section 1334(c)(2).

013260.000001 1641532.1

> The purpose of [section 157(b)(5)] was, as Congressman Kastenmeier declared, *to centralize the administration of the estate and to eliminate the 'multiplicity of forums for the adjudication of parts of a bankruptcy case.'*

*A.H. Robins Co., Inc. v. Piccinin,* 788 F.2d 994, 1011 (4th Cir. 1986) (*citing to* 130 Cong. Rec. H 7492, June 29, 1984, *reprinted in* 1984 U.S. Code Cong. & Admn. News at 579) (emphasis added). The law, therefore, is clear. This Court, as the district court having jurisdiction over NECC's bankruptcy proceeding, is encouraged and incentivized to fix the venue of all personal injury tort claims "related to" the bankruptcy in the MDL.

In this case, the litigation of a multiplicity of cases similar to Plaintiffs' in different forums, under different pre-trial schedules, with separate discovery timetables, would consume an unfair amount of the limited assets available to creditors, nearly all of whom are plaintiffs in personal injury tort or wrongful death cases. Like *Pan Am, A.H. Robbins,* and *Twin Laboratories,* this case requires the centralization of non-core proceedings in the District Court. The danger of not doing so can have deleterious effects on the bankruptcy estate, particularly when, because of the automatic stay provisions of the Bankruptcy Code, NECC may not participate in the underlying trial. *Beck v. Victor Equipment Co., Inc.,* 277 B.R. 179 (S.D.N.Y. 2002). Thus, if this bankruptcy case is to produce any reasonable recovery for aggrieved plaintiffs, it will be because litigation procedures and expenses are controlled by centralizing and consolidating the litigation cases. Doing so will keep the focus on creating a pool of assets to compensate plaintiffs, with a minimum of litigation procedure. Centralizing the non-core cases in this Court will meaningfully streamline discovery and pre-trial procedures, and will allow this Court and the Bankruptcy Court to keep the focus on procedures to compensate plaintiffs under a bankruptcy reorganization plan.

The Chapter 11 Trustee for NECC's Bankruptcy apparently agrees with Ameridose that the personal injury and wrongful death claims should be centralized in the MDL as it recently asked this

8

Court to transfer approximately 55 federal and state "Pending Actions," "which are at the very heart of the Debtor's bankruptcy case," to the MDL.[9]

### B. Removal to federal court was proper because the product liability claims against the non-diverse healthcare providers are fraudulently joined.

Joinder of non-diverse defendants solely for the purpose of defeating diversity jurisdiction does not divest a federal court of jurisdiction. Plaintiffs do not dispute this rule. It is also undisputed that the addition of non-diverse defendants is deemed fraudulent "if there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment." *In re Briscoe,* 448 F.3d 201, 216 (3rd Cir. 2006). Thus, all parties agree that when a district court determines that joinder is fraudulent, it can "disregard for jurisdictional purposes the citizenship of the non-diverse defendants, assume jurisdiction over a case, dismiss the non-diverse defendants, and thereby retain jurisdiction." *Id.* at 216.

Here, there is no colorable basis for Plaintiffs' product liability claims against the non-diverse Healthcare Defendants. Under the New Jersey Product Liability Act ("NJPLA"), product liability claims may be brought only against "manufacturers" and "product sellers" of products. N.J. Stat. § 2A:58C-2 ("A **manufacturer** or **seller** of a product shall be liable in a product liability action...") (emphasis and edit supplied); *Worrell v. Elliott & Frantz,* 799 F.Supp.2d 343, 350 (D.N.J. 2011) (to plead a prima facie cause of action under NJPLA, a plaintiff must show that the defendant was a "manufacturer" or a "product seller.")

As demonstrated in detail below, the allegations within the four corners of Plaintiffs' Amended Complaint demonstrate that the Healthcare Defendants do not, under any circumstances, fall within the NJPLA's clear and unambiguous definition of "manufacturer" or "product seller." Well-established

---

[9] See, p. 2 of Memorandum of Law in Support of Chapter 11 Trustee's Motion to Transfer Personal Injury Tort and Wrongful Death Cases to this Court pursuant to 28 U.S.C. §§ 157(b)(5) and 1334 filed on March 10, 2013 in *Erkan v. New England Compounding Pharmacy, Inc., et al.,* Case No. 1:12 – cv – 12052-FDS, Doc. No. 201.

case law further demonstrates that the Healthcare Defendants cannot, under any circumstances, be considered "manufacturers" or "product sellers." Contrary to Plaintiffs' contention, discovery is not needed or warranted to address this issue. (*See,* Pl. Brief in Support of Mot. to Remand at 15.) When Plaintiffs' product liability claims against the Healthcare Defendants are judged by the appropriate standard, it is evident that they have been fraudulently joined.

1.   **Based on the Allegations in Plaintiffs' Amended Complaint, the Healthcare Defendants Are Not "Manufacturers" or "Product Sellers" Under the NJPLA.**

The NJPLA defines "manufacturer" as follows:

(1)   Any person who designs, formulates, produces, creates, makes, packages, labels or constructs any product or component of a product;

(2)   A product seller with respect to a given product to the extent the product seller designs, formulates, produces, creates, makes, packages, labels or constructs the product before its sale;

(3)   Any product seller not described in paragraph (2) which holds itself out as a manufacturer to the user of the product; or

(4)   A Unites States domestic sales subsidiary of a foreign manufacturer if the foreign manufacturer has a controlling interest in the domestic sales subsidiary.

N.J. Stat. § 2A:58C-8. "Product sellers" include persons who, in the course of business "conducted for that purpose," sell, distribute, blend, package, label, or market products. *Id.* Importantly, N.J. Stat. § 2A:58C-8 specifically exempts from the definition of a "product seller" "provider[s] of professional services in any case in which the sale or use of a product is incidental to the transaction and the essence of the transaction is the furnishing of judgment, skill or services." N.J. Stat. § 2A:58C-8.

Plaintiffs' Amended Complaint does not allege any facts that would bring the Health Care Defendants within the definition of "manufacturer" or "product seller." There is no allegation that any of the Healthcare Defendants played any role in the design, formulation, creation, packaging or construction of MPA. Indeed, Plaintiffs did not allege that a sale of the MPA even occurred. Rather,

10

Plaintiffs alleged only that Dr. Smith "administered" MPA that was manufactured, compounded or sold by "Defendants, NECC"[10]to Plaintiff Diane E. Tisa at Surgical Center. (Am. Compl., ¶¶ 27, 29). Further, Plaintiffs describe Premier Orthopeadics, South Jersey and SJRMC as "corporations," "hospitals," "medical institutions" and "medical facilities," each of which held "itself and its agents out" as "skillful and qualified to attend, care for and treat and render medical care and services to patients." (*Id.* at ¶¶ 11-16.)

### 2. New Jersey Case Law Further Demonstrates Healthcare Defendants Do Not Fall Within the NJPLA.

Consistent with the unambiguous definitions of "manufacturer" and "product seller" in the NJPLA, New Jersey courts have consistently held that medical professionals cannot be strictly liable for allegedly defective medications. In *Magrine v. Krasnica,* 94 N.J. Super 228, 227 A.2d 539 (Cty. Ct. 1967), *aff'd* 100 N.J. Super 223, 241 A.2d 637 (App. Div. 1968)), for example, the plaintiff was injured when the hypodermic needle being used by his dentist broke. The *Magrine* Court refused to apply strict liability to the dentist stating that such a theory was not applicable because the essence of the relationship with his patient was the furnishing of professional skill and services. *Id.* at 241. The New Jersey Supreme Court agreed with this reasoning in *Newmark v. Gimbel's Inc.,* 54 N.J. 585, 596-598, 258 A.2d 697 (1969). In explaining why strict liability could be imposed on a hairdresser but not a physician, the Court explained that "[t]he use of instruments, or the administration of medicines or the providing of medicines for the patient's home consumption cannot give the ministrations the cast of a commercial transaction." *Id.* It further held that liability of the "professional man" "must be tested by principles of negligence, i.e., lack of due care and not by application of the doctrine of strict liability in tort." *Id.*; *see also, Baptista v. Saint Barnabas Medical Center,* 109 N.J.Super. 217, 262 A.2d 902 (App.

---

[10] Defined by Plaintiffs to include only NECC, Ameridose and Alaunus(Am. Compl. ¶10).

11

Div. 1970) (hospital not strictly liable for blood transfusion reaction that caused decedent's death); *Brody v. Overlook Hosp.,* 66 N.J. 448, 332 A.2d 596 (1975) (hospital not strictly liable for decedent's development of hepatitis following transfusion of tainted blood).

The Supreme Court of New Jersey further noted that strong public policy weighs against the application of strict liability to claims against healthcare providers because:

> [T]he nature of the services, the utility of and the need for them, involving as they do, the health and even survival of many people, are so important to the general welfare as to outweigh in the policy scale any need for the imposition on dentists and doctors of the rules of strict liability in tort.

*Feldman,* 97 N.J. at 443 (citing *Newmark,* 54 N.J. at 587).

Since Dr. Smith, a physician, cannot be liable to Plaintiffs under the NJPLA, then there is no colorable basis for her alleged employers, Premier Orthopaedics, South Jersey and SJRMC, to be liable, either.

### 3. Plaintiffs Cannot Rely on the "Need" for Discovery to Circumvent Their Failure to Plead the Facts Necessary to Bring the Healthcare Defendants Within the NJPLA.

It is undisputed that the district court's jurisdiction is to be judged from the four corners of the complaint. *See Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1985) ("The defendant's right to remove is to be determined according to the plaintiffs' pleading *at the time of* the petition for removal . . . ."). (emphasis added). Even Plaintiffs cite *Abels* for this proposition. (*See* Pl.'s Mot. to Remand at ¶ 25.) Plaintiffs do not argue that the allegations in their Amended Complaint, as drafted, bring the Healthcare Defendants within the NJPLA's definition of "manufacturer" or "product seller." Indeed, they cannot. Plaintiffs failed to allege that Premier Orthopaedics, South Jersey and SJRMC held themselves out as product manufacturers and sellers whose "agents and employees" manufactured or sold prescription medications, including MPA. Plaintiffs failed to identify, either as a fictitious defendant or a specifically named individual, any agent or employee of Premier or Surgical

12

Center who engaged in the manufacture or compounding of MPA. Notice pleading aside, there are no factual allegations in Plaintiffs' Amended Complaint that support the conclusory assertions in paragraphs 41-45 that any of these institutions (which can act only through individuals) are or were "manufacturers" or "sellers" of MPA as those terms are defined by the NJPLA. Thus, no colorable products claim can be made.

Plaintiffs improperly seek to circumvent their pleading deficiencies and the well-established rule of law by arguing that discovery is needed to determine whether the Healthcare Defendants are "manufacturers" or "product sellers" under the NJPLA. (Pl.'s Mot. to Remand at ¶24.) More specifically, when making this argument in response to Ameridose's Brief in Opposition to Plaintiff's Motion to Remand in related cases, the same attorneys representing Plaintiffs here argued that discovery was needed to determine whether the same Healthcare Defendants participated in the design, manufacture, and sale of MPA by writing prescriptions for MPA tailored specifically to each individual patient. (*See* Pl.'s Reply Memo. in Supp. of Mot. to Remand at pp. 4-5., filed in *Brian T. Pennington v. NECC, et al.*, United States District Court for the District of New Jersey, Case No. 1:12-cv-07179, ECF No.27.)[11] Remanding a case to state court or delaying a ruling on a motion to remand so that discovery can be conducted is inconsistent with the "four corners" rule set forth in *Abels*. This is not a situation, such as Federal Rule 56(d), where the rules are designed to help ensure that the court make a decision based on a developed record. Issues of removal and remand are controlled by the four corners of the complaint.

Moreover, the specific fact to which Plaintiffs claim they need discovery (whether the Healthcare Defendants wrote prescriptions for the MPA tailored specifically to Plaintiff Diane Tisa) is a fact that

---

[11] *See also* Pl.'s Reply Memo. in Supp. of Mot. to Remand at pp. 4-5., filed in *Christopher M. Hannah v. NECC, et al.*, United States District Court for the District of New Jersey, Case No. 1:12-cv-07180, ECF No. 28; Pls.' Reply Memo. in Supp. of Mot. to Remand at pp. 4-5., filed in *Jennifer L. Marko, et al. v. NECC, et al.*, United States District Court for the District of New Jersey, Case No. 1:12-cv-07176, ECF No. 23.

has been available to Plaintiffs since the day of his injection and long before Plaintiffs filed their Amended Complaint. If Plaintiffs intended to pursue the Healthcare Defendants under the NJPLA, it was incumbent upon them to conduct a thorough pre-claim investigation and allege facts necessary to identify the Healthcare Defendants as "product sellers" or "manufacturers" at the time they filed their Amended Complaint. They cannot, at the first sign of being hailed into a court in which they do not want to prosecute their claims, suddenly assert a need for discovery on these issues.

Accordingly, both the unambiguous language of the NJPLA and the well-established New Jersey case law dictate that Plaintiffs have not asserted a colorable product liability claim against the Healthcare Defendants under N.J. Stat. § 2A:58C 1-8, which provides the sole authority for prosecuting product liability claims in New Jersey. *See Worrell,* 799 F. Supp.2d at 350 ("If a claim falls within the scope of the [NJ]PLA, the sole method to prosecute the claim is under the act."). Plaintiffs' claims against the Healthcare Defendants are solely based upon Dr. Smith's transactions with Plaintiff Greta Normand, and the essence of these transactions was the delivery of medical care and services based upon professional judgment – not the manufacture, design, production or sale of a drug. This Court is within its authority, therefore, to find that Plaintiffs have fraudulently joined these claims against the Healthcare Defendants.

### C. This Court Should Exercise Its Authority to Perfect Diversity Jurisdiction By Severing the Medical Malpractice Claims Against the Healthcare Defendants.

Plaintiffs' heavy reliance on their remaining negligence (medical malpractice) claims against the Healthcare Defendants and Dr. Smith similarly fails to divest this Court of jurisdiction. "Rule 21 invests district courts with authority to dismiss a dispensable party whose presence spoils statutory diversity jurisdiction." *Newman-Green, Inc. v. Alfonzo-Larrain,* 490 U.S. 826, 832-33 (1989). Specifically, Rule 21 provides:

14

Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

Fed. R. Civ. P. 21.

Not only does Rule 21 give district courts the power to sever dispensable parties, but district courts are given "broad discretion" to do so. *Lopez v. City of Irvington*, 2008 WL 565776, *2 (D.N.J.). Severing a party is not limited to circumstances where the party is improperly joined under Rule 20. "[T]he Rule may be invoked to prevent prejudice or promote judicial efficiency." *Picozzi v. Connor*, 2012 WL 2839820, *5 (D.N.J.). District courts may also properly sever a claim to protect a defendant's procedural rights. *Sporia v. Pennsylvania Greyhound Lines, Inc.*, 143 F.2d 105, 107 (3rd Cir. 1944).

### 1. Severing Plaintiffs' Negligence Claims Against the Healthcare Defendants is Proper.

When determining whether to sever claims against a party, district courts are to consider the following factors:

(1) Whether the issues sought to be tried separately are significantly different from one another, (2) whether the separable issues require the testimony of different witnesses and different documentary proof, (3) whether the party opposing the severance will be prejudiced if it is granted, and (4) whether the party requesting severance will be prejudiced if it is not granted.

*Picozzi*, 2012 WL 2839820 at *5 (citing *German v. Federal Home Loan Mortgage Corp.*, 896 F. Supp. 1385, 1400 (S.D.N.Y 1995)).

Here, Plaintiffs' medical malpractice claims against Dr. Smith and the Healthcare Defendants focus on *different* conduct, by *different* parties, at *different* times, and in *different* locations than Plaintiffs' product liability claims against NECC (and Ameridose). For example, Plaintiffs' claims against Ameridose involve underlying issues that allege manufacture of MPA (which Ameridose never manufactured), compliance with federal "good manufacturing practices," and the adequacy of the warnings provided with MPA. To the contrary, Plaintiffs' claims against the Healthcare Defendants

15

involve issues relating to the Healthcare Defendants' conduct in the administration of MPA. (*See* Pl.'s

Mot. to Remand at ¶¶32-35) (arguing that Healthcare Defendants failed to obtain an individualized

prescription for Plaintiff and should have known that the MPA was contaminated due to "visible black

particulate matter"). Thus, Plaintiffs' product liability claims focus on conduct at the manufacturing

plant, while Plaintiffs' medical malpractice claims focus on Dr. Smith and the Healthcare Defendants'

conduct at the point of administration.

Similarly, Plaintiffs' claims against Ameridose will require the testimony of numerous

individuals involved in the design, formulation, and manufacture of MPA, as well the FDA's inspection

of the NECC and Ameridose facilities. These witnesses will in all likelihood be corporate

representatives and employees of the manufacturing facilities, none of which are in New Jersey. These

claims will also be based on documents from the facilities relating to the manufacturing process for the

batches of MPA subject to the recall. In contrast, Plaintiffs' negligence claims against Dr. Smith and the

Healthcare Defendants will require testimony from Plaintiffs, Dr. Smith, and employees of the other

Healthcare Defendants. Discovery of these claims can be completed through depositions of a small

number of New Jersey witnesses. As a result, Plaintiffs' product liability claims require different

witnesses and documentary proof than their negligence claims against the Healthcare Defendants.

Other district courts have severed medical malpractice claims from product liability claims under

similar circumstances. In *Joseph v. Baxter Int'l, Inc.*, 614 F. Supp. 2d 868 (N.D. Ohio 2009), for

example, the plaintiff asserted product liability claims against a pharmaceutical company (Baxter) and

claims for medical negligence against healthcare providers. *Id.* at 872. The court concluded that

malpractice claims were independent from the product liability claims, and that "the resolution of a

claim against [the health care provider] would not necessarily resolve the Josephs' claim against Baxter."

*Id.* "Medical malpractice allegations," the court explained, "differ from the Josephs' products liability

16

claim which focuses on Baxter's conduct in designing, manufacturing, labeling, and recalling tainted Heparin." *Id.* For that reason, the court concluded, "the Healthcare Defendants do not meet any of the elements required to be deemed necessary." *Id.*; *see also, Temple v. Synthes Corp., Ltd.*, 498 U.S. 5, 111 (1990) (physician tortfeasor does not need to be joined in a product liability action); *Hughes v. Sears, Roebuck and Co.*, 2009 WL 2877424 (N.D.W.Va., 2009) (district court severed plaintiff's product liability claims from medical negligence claims finding that the two claims were not part of the same transaction or occurrence); *Phillips v. Knoll Pharm. Co.*, No. 03-8044, slip op. at 2-3 (N.D. Ohio, September 4, 2003) (dropping physician defendants under Rule 21 to perfect diversity jurisdiction).

### 2. Severing Plaintiffs' Claims Against the Healthcare Defendants Will Not Unfairly Prejudice Plaintiffs.

*Joseph* disposes of any argument that severance will unfairly prejudice Plaintiffs. As the court explained in *Joseph*, a plaintiff's ability to proceed with his claims against healthcare provider defendants in state court is an "adequate remedy," and while "fighting on two fronts will no doubt be inconvenient," the need to maintain two lawsuits is not "unfairly or unduly prejudicial." *Joseph*, 614 F. Supp. 2d at 873.

To the contrary, Plaintiffs stand to benefit from maintaining this case in federal court. As previously mentioned, the JPML has consolidated nearly 100 similar cases, each of which arises from the plaintiff's alleged receipt of contaminated MPA, in an MDL. As the *Joseph* Court explained, "plaintiffs will benefit from the MDL process: they will not bear the burden of having to engage on their own, and at their sole expense, in discovery." *Id.* Indeed, Plaintiffs' counsel may not need to even attend the MDL proceedings. Moreover, any inconvenience to Plaintiffs is substantially outweighed by the possible prejudice to Ameridose should Plaintiffs' claims against the malpractice defendants *not* be severed, since "if remand were found in these circumstances to be necessary, [Ameridose] would potentially be fighting many more than just two fronts." *Id.* In other words, remanding this case will

17

provide yet another court, discovery schedule, set of local procedures, and possibly inconsistent rulings that Ameridose will be forced to juggle while also defending the cases in the MDL.[12]

Understanding and appreciating the benefits of maintaining their claims in federal court, plaintiffs in other MPA cases recently requested that the Judicial Panel on Multidistrict Litigation "sever the claims against the physicians and hospitals . . . for interests of judicial economy and efficiency." (Memo. of Law of Pls. Raymond McDow and Roseanne Brooks at p. 13, ECF No. 62-1, attached as Exhibit A). These plaintiffs recognized that:

> The claims against each of the hospitals and clinics are *different* from the claims against the NECC Defendants. The claims against local clinics, hospitals and doctors raise individualized fact questions that are *distinct* from the common fact questions relating to the NECC Defendants' conduct . . . . "

(*Id.* at pp. 12-13) (emphasis added).   As such, severing Plaintiffs' claims against the Healthcare Defendants will not unfairly prejudice Plaintiffs.

---

[12] Plaintiff Ronald Tisa's claim for loss of consortium is derivative of the negligence claim and, for the same reasons as set forth above, should be severed.

18

## IV.    CONCLUSION

For the reasons set forth above, Defendant Ameridose, LLC respectfully requests that this Court

deny Plaintiffs', Greta Normand and Drew Normand, Motion to Remand The Case To The Superior

Court of New Jersey, Law Division/Cumberland County, and instead, retain jurisdiction over Plaintiffs'

Amended Complaint.


By: /s/ Matthew P. Moriarty _____
     *Attorneys for Defendant Ameridose, LLC*
     Matthew Moriarty (OH 0028389)
     Tucker Ellis LLP
     925 Euclid Avenue
     Suite 1150
     Cleveland, OH 44115-1414
     216.592.5000


     and

     /s/ Scott J. Tucker _____
     Scott J. Tucker (BBO # 503940)
     Matthew E. Mantalos (BBO #669404)
     Tucker, Saltzman & Dyer, LLP
     100 Franklin Street
     Boston, MA 02110
     Tel:    617.557.9696
     Fax:    617.227.9191
     E-mail: tucker@tsd-lawfirm.com
             mantalos@tsd-lawfirm.com

013260.000001 1641532.1

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing has been filed with the Clerk of the Court on March 11, 2013 using the ECF system that sent notification of this filing to all ECF-registered counsel of record via e-mail generated by the Court's ECF system.

/s/ Matthew P. Moriarty
*Attorney for Defendant Ameridose, LLC*

20

013260.000001 1641532.1

# EXHIBIT 3

to Defendant Ameridose, LLC's Brief Opposing
Plaintiffs' Motions to Remand

Case 1:13-md-02419-RWZ   Document 131-2   Filed 05/03/13   Page 34 of 38
Memorandum of Law in Support of Ameridose~~LLCs Motion for Withdrawal of Refere   Page 1 of 5
Case 1:13-cv-10226-FDS   Document 2   Filed 02/05/13   Page 1 of 5

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| In re: ) | |
| ) | |
| NEW ENGLAND COMPOUNDING ) | Case No. 12-19882 |
| PHARMACY, INC., ) | (Chapter 11) |
| ) | |
| _____Debtor._____ ) | |
| ) | |
| ) | |
| LEONARD SHAFFER and ) | |
| KAREN SHAFFER ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | ADVERSARY NO. 13-01023 |
| BARRY J. CADDEN, GREGORY ) | |
| CONIGLIARO, LISA C. CADDEN, ) | |
| GLENN A. CHIN,  ARL BIO PHARMA, ) | |
| INC. D/B/A ANALYTICAL RESEARCH ) | |
| LABORATORIES, AMERIDOSE, LLC, ) | |
| MEDICAL SALES MANAGEMENT, ) | |
| INC. AND GDC PROPERTIES ) | |
| MANAGEMENT, LLC, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OF LAW IN SUPPORT OF AMERIDOSE, LLC'S MOTION FOR WITHDRAWAL OF REFERENCE BY UNITED STATES DISTRICT COURT

Movant Ameridose, LLC, respectfully submits the following in support of its Motion to

Withdraw the Reference.

29

Case 1:13-md-02419-RWZ   Document 131-2   Filed 05/03/13   Page 35 of 38
Case 1:13-cv-10226-FDS   Document 2   Filed 02/05/13   Page 2 of 5
Memorandum of Law in Support of Ameridose LLC's Motion for Withdrawal of Refere   Page 2 of 5

**I.      Inability Of The Bankruptcy Court To Conduct A Jury Trial Constitutes "Cause" For Withdrawal Of The Reference.**

Under 28 U.S.C. § 157(d), the District Court may withdraw the reference for cause shown upon the timely motion of any party.  Cause exists for withdrawing the reference in this Adversary Proceeding because it involves a personal injury lawsuit in which the Plaintiffs and Defendants have demanded a jury trial.  Specifically, this Adversary Proceeding arises from a personal injury claim originally filed in the Massachusetts Superior Court (with a jury demand), in which the Plaintiffs claim that they were injured by methylprednisolone acetate allegedly manufactured and distributed by Defendants.  One of the Defendants, ARL Bio Pharma, Inc., subsequently removed the case to the Bankruptcy Court.

It is undisputed that trials of personal injury tort cases must occur in the District Court, not in the Bankruptcy Court.  *See* 28 U.S.C. § 157(b)(5).  A number of courts have held that a bankruptcy court's inability to conduct a jury trial, standing alone, constitutes cause for withdrawal of the reference.  *See, e.g., Lars, Inc., v. Taber Partners*, 290 B.R. 467 (D.P.R. 2003) ("a withdrawal of the reference is therefore required in instances where a defendant who is entitled to a jury trial does not consent to the holding of such trial in the Bankruptcy Court"); *Growers Packing Co. v. Community Bank of Homestead*, 134 B.R. 438 (S.D. Fla. 1991) ("the only bankruptcy provisions which deal specifically with the right to conduct a jury trial empower the *district court* to do so in personal injury and wrongful death cases") (emphasis supplied by the Court); *Marina Bay Drive Corp. v. FIMSA, Inc.*, 123 B.R. 222 (S.D. Tx. 1990); *In re*

Case 1:13-md-02419-RWZ Document 131-2 Filed 05/03/13 Page 36 of 38
Memorandum of Law in Support of Ameridose LLC's Motion for Withdrawal of Refere Page 3 of 5

Case 1:13-cv-10226-FDS Document 2 Filed 02/05/13 Page 3 of 5

*Transcon Lines*, 121 B.R. 837 (C.D. Cal. 1990). Accordingly, withdrawal of the reference is appropriate upon the timely filing of this motion.

II.     **Uniformity of Bankruptcy Administration, Efficient Use of Judicial Resources, and Expediting the Bankruptcy Process all Support the Withdrawal of the Reference.**

In addition to the overriding concerns created by the right to a jury trial, other factors considered by courts in withdrawal of the reference strongly support the withdrawal in this case. These factors include uniformity of bankruptcy administration, efficient use of legal and judicial resources, and expediting the bankruptcy process. *See, e.g. Orion Pictures Corp. v. Showtime Networks, Inc.,* 4 F.3d 1095, 1101 (2d Cir. 1993); *Holland America Insurance Co. v. Succession of Roy,* 777 F.2d 992, 999 (5th Cir. 1985).

The Bankruptcy Case of New England Compounding Pharmacy, Inc. was a direct result of hundreds of personal injury tort cases – like the one brought by Plaintiffs in this Adversary Proceeding – arising from the production and sale of allegedly contaminated methylprednisolone acetate. Currently, there are 18 of these cases consolidated for trial before the Honorable F. Denis Saylor in the District Court. Withdrawal of the reference would allow this case to be consolidated with those cases.

The efficient use of judicial and legal resources, as well as expediting the bankruptcy process and maintaining uniformity of bankruptcy administration all favor withdrawal of the reference so that this case can be consolidated with similar cases now pending before the District Court. The goals of fair treatment for all claimants, including these Plaintiffs, as well as efficient and expedited resolution of these cases and the bankruptcy case itself are best served by

31

Case 1:13-md-02419-RWZ Document 131-2 Filed 05/03/13 Page 37 of 38
Memorandum of Law in Support of Ameridose LLC's Motion for Withdrawal of Refere Page 4 of 5
Case 1:13-cv-10226-FDS Document 2 Filed 02/05/13 Page 4 of 5

consolidation of as many of these cases as possible. Consolidation greatly simplifies and expedites discovery and other pre-trial procedures. Consolidation will also enhance the opportunity for global settlement of all similar cases, possibly in conjunction with a Chapter 11 plan of reorganization. Further advancing the consolidation of these cases, on January 31, 2013, the Judicial Panel on Multi-District Litigation conducted a hearing to determine whether pending federal cases should be designated for MDL status. All defendants and many of the plaintiffs in that litigation asked that these cases be sent to Judge Saylor. No party opposed consolidation. An order by the JPMDL is expected shortly. Thus, there are many practical benefits for withdrawing the reference in this case.

For all of the reasons set forth above, Ameridose, LLC respectfully requests that the District Court withdraw the reference for this case.

Dated: February 5, 2013

The Defendant,
Ameridose, LLC,
By its Attorneys


*s/ Matthew E. Mantalos*
Scott J. Tucker (BBO # 503940)
Matthew E. Mantalos (BBO # 669404)
Tucker, Saltzman & Dyer, LLP
100 Franklin Street
Boston, MA 02110
Tel:     617.986.4222
Fax:     617.986-6229
E-mail:  tucker@tsd-lawfirm.com
         mantalos@tsd-lawfirm.com


## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing has been filed with the Clerk of the Court

on February 5, 2013 using the ECF system that sent notification of this filing to all ECF—

registered counsel of record via e-mail generated by the Court's ECF system.


*s/ Matthew E. Mantalos*
*Attorney for Defendant Ameridose, LLC*

33