# EXHIBIT 1

```
 1                  UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS
 2

 3


 4                                     )
     MICHELE ERKAN, on behalf of       )
 5   herself, her minor child,         )
     and all others similarly          )
 6   situated,                         )  No. 12-12052-FDS
                                       )
 7                  Plaintiff,         )
     vs.                               )
 8                                     )
     NEW ENGLAND COMPOUNDING
 9   PHARMACY, INC., d/b/a NEW
     ENGLAND COMPOUNDING CENTER,
10   et al.,
                    Defendants.
11

12
         BEFORE:   THE HONORABLE F. DENNIS SAYLOR, IV
13

14
                        STATUS CONFERENCE
15

16


17
         John Joseph Moakley United States Courthouse
18                      Courtroom No. 2
                       One Courthouse Way
19                     Boston, MA 02210


20
                       February 15, 2013
21                        10:00 a.m.

22


23                    Valerie A. O'Hara
                     Official Court Reporter
24       John Joseph Moakley United States Courthouse
                  One Courthouse Way, Room 3204
25                     Boston, MA 02210
                    E-mail: vaohara@gmail.com
```

 1    the defendants is in bankruptcy at this stage.
 2            At the risk of stating the obvious and
 3    getting perhaps way ahead of myself, I want to begin
 4    talking immediately about where I think this thing is
 5    likely to go.  I don't have really hardly any facts at
 6    all, and it's always dangerous to make a decision or to
 7    begin even trying to make a decision without facts, but
 8    it does look to me like we have a relatively small pool
 9    of assets here or a defined pool.
10:05AM 10            We look like we're going to have a large
11    pool of claims, and my guess is that those claims are
12    going to greatly exceed the available assets, I'm
13    assuming, you know, liability here, I'm assuming it
14    away, causation and product identification.
15            There may be lots of issues here, but
16    assuming there is liability, I think, again, there's a
17    limited pool, and I think we need to be talking about
18    and thinking about from the beginning a procedure
19    perhaps through the bankruptcy court, perhaps not, where
10:05AM 20    there is a fund that could be administered to handle the
21    claims for people that want to go down that path to try
22    to reach the most equitable possible distribution of
23    whatever assets are available.
24            I'm very conscious that whatever we do in
25    litigation will diminish the insurance assets anyway and

perhaps all of the available assets, and, of course, everyone has a right to whatever due process the law allows. I'm sure there are individual claims and defenses and wrinkles that need to be thought through, but, again, I think this is something we need to be addressing from the beginning.

And, of course, also to state the obvious, it is important to me to manage the case that we have procedures and protocols in place so that I can imagine the litigation. To the extent there is litigation, I have appointed interim liaison counsel for the Massachusetts cases or the first dozen or so, and I need to set in motion a process for appointment of lead counsel.

We may at some point get to having committees and so forth, but I think I want to start with the relatively, relatively simple issue of appointing lead counsel, and I don't propose to do anything at this conference other than have a discussion again about where we are and to set some initial deadlines for achieving some of these things.

I welcome the lawyers who are appearing by telephone, I've seen some of you, some of you I have not, but welcome. I hope you can hear me, and I'm going to ask everyone who's in the courtroom who speaks to

```
                1   creditors' committee to file its complaint, and the
                2   creditors' committee successfully briefed and argued
                3   motions for injunctive relief and attachments, so on
                4   January 28th, the bankruptcy court ordered the
                5   following:  Ameridose, GDC and Medical Sales Management
                6   are restrained from paying Barry, Lisa, Greg or Carla up
                7   to $21.1 million.  The property of the individuals is
                8   attached up to $21.1 million.  The individuals are
                9   restrained from spending any assets other than as
10:11AM        10   necessary for ordinary living or legal expenses, which
               11   the Court noted did not include February break trips to
               12   Aspen and an attachment of trustee process attached bank
               13   accounts up to $21.1 million.  So that's where we are,
               14   your Honor.
               15             In terms of where we go from here, I think
               16   that everyone on the plaintiffs' side agrees with the
               17   observation that you made earlier, which is that the
               18   goal here should be to minimize expenses so as to not
               19   further deplete the pot while also securing a rapid
10:12AM        20   recovery for a relatively well-known class of victims.
               21             As I mentioned earlier, there are some
               22   strategic decisions to be made here in terms of which
               23   claims against particular groups of defendants proceed
               24   in which venue.  We think that the Court ought to focus
               25   on appointing lead counsel or plaintiff leadership
```

```
 1   lingering in the air and that we're starting to touch on
 2   is where do we go from here, and I'll just note the
 3   bankruptcy court has one model, and that model involves
 4   expenses being incurred by the creditors' committee, the
 5   trustee, respective counsel, financial advisors.  That
 6   model can reduce available assets and the value of the
 7   estate in principal.  The MDL has a different model, one
 8   based on at least the plaintiffs' lawyers working on
 9   contingency who are only paid if there is a recovery.
10                There are efficiencies associated with each
11   model, and we believe that we can work together to come
12   up with the most efficient resolution here.  The overall
13   notion, of course, should be to coordinate the
14   litigation and to take the steps necessary, whether here
15   or there, to foster an early fund for all claimants that
16   can be equitably distributed, and we're counting, your
17   Honor, on yourself working with Judge Boroff as well as
18   counsel in the two camps working together and hand in
19   hand with the trustee.  So far that has been a very
20   efficient and effective process, and we hope that it
21   will continue once the counsel is appointed.
22                THE COURT:  Thank you.  And, again, just one
23   of the odd wrinkles in this is I would imagine in the
24   normal case you would have a secured creditor or one or
25   more secured creditors who, you know, would have a first
```