UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | )<br>)<br>)   MDL No.: 1:13-md-2419-FDS<br>)<br>) |
| This Document Relates to:<br>All Cases | )<br>)<br>) |

**OMNIBUS MEMORANDUM IN REPLY TO VARIOUS OPPOSITIONS AND IN FURTHER SUPPORT OF CHAPTER 11 TRUSTEE'S MOTION TO TRANSFER**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

PRELIMINARY STATEMENT .......................................................................................... 2

ARGUMENT ....................................................................................................................... 4

    I.     Jurisdiction and Transfer are Appropriate ............................................................ 4

    II.    Abstention is Inappropriate ................................................................................... 6

    III.   This Court May Act to Enjoin or Otherwise Restrain the Roanoke
          Actions ................................................................................................................. 9

CONCLUSION ................................................................................................................... 14

# TABLE OF AUTHORITIES

Page

**Cases**

*A.H. Robins Co. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986) ............................................................ 7

*Alcantar v. Twin Labs, Inc. (In re Twin Labs, Inc.)*,
300 B.R. 836 (S.D.N.Y. 2003) ................................................................................................ 5, 6

*Atlantic Coastline R.R. v. Brotherhood of Locomotive Engineers*,
398 U.S. 281, 90 S. Ct. 1739, 26 L. Ed. 2d 234 (1970) .................................................... 10, 12

*Battle v. Liberty Nat'l Life Ins. Co.*, 877 F.2d 877 (11th Cir. 1989) .............................................. 9

*Blue Cross of Cal. v. Smithkline Beecham Clinical Laboratories, Inc.*,
108 F. Supp. 2d 130 (D. Conn. 2000) ........................................................................................ 10

*California v. Randtron*, 284 F.3d 969 (9th Cir. 2002) ................................................................... 13

*Carlough v. Amchem Products, Inc.*, 10 F.3d 189 (3d Cir. 1993) .................................................. 9

Celotex Corp. v. Edwards, 514 U.S. 300 (1995) ............................................................................ 4

*Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140 (1988) ............................................................... 13

*Container Transp., Inc. v. Scott Paper Co. (In re Container Transp., Inc.)*,
86 B.R. 804 (E.D.Pa. 1988) ........................................................................................................ 8

*Ferretti Const., Inc. v. Italimplanti of Am., Inc. (In re Ferretti Const., Inc.)*,
208 B.R. 396 (Bankr. S.D. Tex. 1995) ....................................................................................... 8

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .......................................................... 13

*In re Baldwin-United Corp.*, 770 F.2d 328 (2d Cir. 1985) ............................................................ 9

*In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*,
93 F Supp 2d 876 (M.D. Tenn 2000) ......................................................................................... 10

*In re Corrugated Container Antitrust Litigation*,
659 F.2d 1332 (5th Cir. 1981) ............................................................................................... 9, 11

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995) ........................................................................................................ 13

*In re Metabolife Int'l, Inc.*, Case No. 05 Civ. 1802 (C.D. Cal. Nov. 3, 2005) .............................. 5

*In Re Ocwen Federal Bank FSB Mortgage Servicing Litig.*,
   397 F. Supp. 2d 957 (N.D. Ill. 2005) ................................................................ 10

*In re Pan American Corp.*, 950 F.2d 839 (2d Cir. 1991) ......................................... 4, 6, 9

*In re Prudential Ins. Co. Sales Practices Lit.*, 314 F.3d 99 (3d Cir. 2002) ................................. 13

*In re Rezulin Products Liability Litig.*, 223 F.R.D. 109 (S.D.N.Y. 2004) .................................... 12

*In re Twin Labs Personal Injury Cases*,
   No. 03-9169, 2004 WL 435083 (S.D.N.Y. Mar 8, 2004) ....................................... 5, 6

*In the Matter of: Bridgestone/Firestone, Inc.*, 333 F.3d 763 (7th Cir. 2003) .............................. 10

*Lindsey v. O'Brien, Tanski, Tanzer & Young Health Care Providers of Conn.*
   *(In re Dow Corning Corp.)*, 86 F.3d 482 (6th Cir. 1996) ........................................ 5, 6

*M.L. Berry, et al. v. Pharmacia Corporation f/k/a Monsanto Chemical Co., et al.*,
   316 B.R. 883 (S.D. Miss. September 29, 2004) ...................................................... 6

*Mary Sharon Walker v. New England Compounding Pharmacy, Inc., et al.*,
   Case 7:12-cv-00564-JCT (May 3, 2013) ................................................................ 2

*Newby v. Enron Corp.*, 302 F.3d 295 (5th Cir. 2002) .............................................. 9

*Pacor v. Higgins*, 743 F.2d 984 (3rd Cir. 1984) ...................................................... 4

*Three J. Farms, Inc. v. Plaintiffs' Steering Committee*,
   456 U.S. 936, 72 L. Ed. 2d 456, 102 S. Ct. 1993 (1982) ..................................... 11

*TTS, Inc. v. Stackfleth (In re Total Technical Servs., Inc.)*,
   142 B.R. 96 (Bank. D. Del. 1992) .......................................................................... 8

*U.S. v. Alpine Land & Reservoir Co.*, 174 F.3d 1007 (9th Cir. 1999) ........................... 9

*Walter v. Freeway Foods, Inc. (In re Freeway Foods of Greensboro, Inc.)*,
   449 B.R. 860 (Bankr. M.D.N.C. 2011) ................................................................ 8

*Wingate v. Insight Health Corp.*, Case No. CL 12-2547 (Va. Cir. Roanoke) ............... 8

*Winkler v. Eli Lilly & Co.*, 101 F.3d 1196 (7th Cir. 1996) ..................................... 10, 12

**Statutes**

28 U.S.C. § 1651 ........................................................................................................ 2, 9

28 U.S.C. § 2283 ........................................................................................................... 13

28 U.S.C. §157(b)(5) ............................................................................................ 1, 2, 5, 7

28 U.S.C. §1334 ........................................................................................................... 1, 6

28 U.S.C. §1334(b) .......................................................................................................... 2

28 U.S.C. §1334(c)(1) ...................................................................................................... 8

28 U.S.C. §1334(c)(2) .................................................................................................. 6, 8

28 U.S.C. §1452(b) ........................................................................................................... 1

**Other Authorities**

1 *Collier on Bankruptcy*, ¶ 3.05[2]
    (Alan N. Resnick & Henry J. Somme reds., 16th ed.) ................................................. 8

Martin H. Redish, *The Anti-Injunction Statute Reconsidered*,
    44 U. CHI. L. REV. 717, 754 (1977) ..................................................................... 10

## INTRODUCTION

On March 10, 2013, Paul D. Moore, the Chapter 11 Trustee for the Estate of New England Compounding Pharmacy, Inc. ("NECC" or the "Debtor"), filed a motion to transfer to this District, pursuant to 28 U.S.C. §§ 157(b)(5) and 1334, several personal injury and wrongful death cases in various state and federal courts, involving claims stemming from use of allegedly contaminated pharmaceuticals compounded, tested, marketed and/or distributed by NECC and other third parties.  In further support of his motion, the Trustee respectfully submits this Reply Memorandum.  The Trustee also submits the Memorandum as an Omnibus reply to the various oppositions filed by parties in interest.

Preliminarily, the Court should be aware that, on May 10, 2013, Judge Samuel D. Wilson of U.S. District Court for the Western District of Virginia, Roanoke Division, ordered remand of the Roanoke Actions.  Notably, in his Memorandum Opinion,  Judge Wilson did not rule on the existence or of "related to" jurisdiction, but instead "assume[d] without deciding that [the court] has related-to jurisdiction."  [Doc. 141, Memo. Op. at 2].  Judge Wilson listed three alternative bases for remand: (1) untimely removal; (2) mandatory abstention under 28 U.S.C. §1334; and (3) remand on equitable grounds pursuant to 28 U.S.C. §1452(b).  [Id.]

For reasons that are more fully explored below, Judge Wilson's ruling is necessarily limited to the facts and issues presented in the Roanoke Actions and therefore should have no precedential effect or impact on this Court's decision.  The decision should not deter this Court from any finding with respect to subject matter or removal jurisdiction, or the transfer of any matter to this Court, including the Roanoke Actions.  While subjective considerations before the local district court may have tipped the balance of equities toward remand, this Court is nonetheless empowered with a broader mandate, and should take a more universal and objective

view of the entire litigation and the damaging consequences of duplication of the Roanoke Plaintiffs' efforts in other jurisdictions.

Furthermore, the unfortunate remand of the Roanoke Actions does not affect this Court's ability to protect its "related to" jurisdiction should it determine that such jurisdiction exists. As is more fully explained below, the All Writs Act, 28 U.S.C. § 1651, authorizes the United States federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

## PRELIMINARY STATEMENT

The parties generally agree that all Pending Actions naming the Debtor and its affiliates must be transferred pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(5).[1]  Clearly, personal injury and wrongful death actions against the debtor and affiliated individuals and entities belong in this Court.  There can be little doubt that all such claims will affect NECC's bankruptcy estate. Where the parties diverge, however, is with respect to what the PSC refers to as a "narrow subset of cases."  These are actions currently pending in federal and state courts against unaffiliated, nondebtor entities where, the PSC asserts, the "sole articulated basis for 'related to' jurisdiction is potential – but as yet unasserted – indemnification or contribution claims."  Concerned about the "substantial question" as to whether this Court may or should exercise jurisdiction or transfer these cases, the PSC wishes to avoid the costs associated with a potential – but as yet unassertable – appeal.  The PSC therefore suggests that the Court should refrain, for the time

---

[1] The brief filed by The Miller Law Firm on behalf of Mary Sharon Walker suggests that this Court lacks subject matter jurisdiction over Ms. Walker's claim, even though her case, which includes NECC as a defendant, is squarely within the bounds of "related to" jurisdiction.  (Doc. 111).  Hon. James C. Turk, Senior United States District Judge for the Western District of Virginia, Roanoke Division, stayed Ms. Walker's pending remand motion until this Court rules on the Motion to Transfer.  *Mary Sharon Walker v. New England Compounding Pharmacy, Inc., et al.*, Case 7:12-cv-00564-JCT (Doc. 26) (May 3, 2013).

being, from determining the appropriate extent of its own powers to fulfill its mandate as an MDL Court.

The very purpose of centralization, however, is to avoid the inconveniences, redundancies and wasted resources spent engaging in duplicative discovery and litigating substantially the same issues in multiple courts in numerous jurisdictions.  For this reason alone, this Court should utilize to the full extent possible its authority under applicable law.  By abstaining, even temporarily, from exercising its full statutory authority, this Court would effectively endorse repeatedly litigating the same issues, in many fora.  Moreover, continued and repetitive fact-finding and discovery will substantially affect and deplete the bankruptcy estate, and impair the Trustee's ability to maximize potential distributions to creditors of the estate.

Refraining from addressing these substantial issues, even for the moment, "until the record is more fully developed" or "the facts change," would carve an exception that would ultimately swallow the rule.  This "narrow subset" of cases would inevitably grow to uncontrollable and unmanageable proportions, despite the best efforts of the Court and the Trustee.[2]  While multi-state litigation may be inevitable in the ordinary mass tort scenario, the extraordinary powers conferred on the Court by the bankruptcy laws permit the Court to accomplish the key goal of centralization.  Through its power to transfer, this Court has the best opportunity to centralize and coordinate the hundreds of tort cases related to the bankruptcy and facilitate successful resolution of the estate for the benefit of all creditors.

Although some may be opposed or unwilling, the Court should not hesitate to do what is right, just and equitable for the majority of creditors.  The course of action that the Trustee suggests has been effective in the past and it will be effective in this matter.  The Court should

---

[2] In addition to the Roanoke cases, the Trustee is aware of at least four related actions against nondebtor healthcare providers pending in Tennessee, and others on file in Alabama and Minnesota.  It is not unreasonable to project that more filings are in progress and await this Court's decision.

find that related to jurisdiction exists, and immediately transfer all pending actions, including state court Roanoke Actions.

## ARGUMENT

I.      Jurisdiction and Transfer are Appropriate.

This Court should take advantage of its "arsenal of substantive and procedural powers" to administer the NECC bankruptcy efficiently and fairly. *In re Pan American Corp.*, 950 F.2d 839, 848 (2d Cir. 1991). This Court should not stop at transfer of the cases against the debtor; it should extend its (legislatively available) jurisdiction to all cases that impact the estate. The overriding policy at stake here – to formulate and confirm a chapter 11 plan that treats all claimants of the Debtor equitably – trumps the litigation strategy of any particular claimant who omitted NECC from a state court caption to avoid federal jurisdiction and the bankruptcy claims process.

Congress intended to grant *comprehensive* jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate. *Celotex Corp. v. Edwards,* 514 U.S. 300, 308 (1995) (quoting *Pacor v. Higgins,* 743 F.2d 984, 994 (3rd Cir. 1984) (emphasis added). Hence, a proceeding is "related to" a bankruptcy if the "outcome of [the] proceeding *could conceivably have* any *effect on the estate being administered in bankruptcy*...[or, stated otherwise, if] the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Pacor,* 743 F.2d at 994. (emphasis in the original).

Indeed, the centralization of tort claims related to the bankruptcy has historically been crucial to and has facilitated the successful resolution of bankruptcy cases for the benefit of the

creditors, which are predominantly tort claimants.  28 U.S.C. § 157(b)(5); *Lindsey v. O'Brien, Tanski, Tanzer & Young Health Care Providers of Conn. (In re Dow Corning Corp.)*, 86 F.3d 482 (6th Cir. 1996); *In re Twin Labs Personal Injury Cases*, No. 03-9169, 2004 WL 435083 (S.D.N.Y. Mar 8, 2004); *Alcantar v. Twin Labs, Inc. (In re Twin Labs, Inc.*), 300 B.R. 836 (S.D.N.Y. 2003); *Order Granting Petition of Debtors-in-Possession Pursuant to 28 U.S.C. 157(b)(5), In re Metabolife Int'l, Inc*., Case No. 05 Civ. 1802 (C.D. Cal. Nov. 3, 2005) [Dkt. No. 29].

Transfer pursuant to 28 U.S.C. § 157(b)(5) is not limited to claims against a debtor. *See e.g., In re Dow Corning Corp.*, 86 F.3d at 497.  The claims asserted against the nondebtor defendants in these actions all arise out of the same facts as those underlying claims against the Debtor.  Moreover, at least one nondebtor defendant has asserted its intention to file a claim against the estate for contribution and indemnity.  More are certainly to follow.[3] Claims for indemnification and contribution, which will necessarily deplete the already limited resources of the estate, will have an undeniable effect on the estate and are therefore "related to" the bankruptcy case.

In *In re Dow Corning Corp.*, the Sixth Circuit found that "related to" jurisdiction existed over the nondebtor defendants' potential, but, as yet unasserted, claims for contribution and indemnification against Dow Corning because it could have an effect on the bankruptcy proceedings.  It was not necessary that the plaintiffs first prevail on claims against the nondebtor defendants.  Claims for indemnification and contribution, whether asserted by or against the

---

[3] Insight has asserted its existing and ripe claim for contribution and indemnity. (See Memo in Opp. To Abstention Motion, Doc. 126, pp. 6 -9, 12, and Exhibits D – G.) In addition, IGPM had initially argued similarly that NECC is a necessary and indispensable party to the litigation.  (See *Id.* at Fn.1 at p.8, and *Wingate v. Insight Health Corp.*, Case No. CL 12-2547 (Va. Cir. Roanoke), Demurrers, Pleas in Bar, Answer, Cross-Claims of IGPM (February 4, 2013). IGPM's papers containing those acknowledgements, however, were subsequently withdrawn. (See *Id.*, Withdrawal of Indispensable Party Plea in Bar by John M. Mathis, M.D., Robert F. O'Brien, M.D., and IGPM (March 26, 2013).

debtor, would undoubtedly affect the size of the estate and the length of time the bankruptcy proceedings will be pending, as well as the debtor's ability to resolve its liabilities and proceed with reorganization.  *See In re Dow Corning Corp.*, 86 F.3d at 494.

The 2004 *Twin Labs* decision, arising out of the ephedra MDL, is particularly instructive. *In re Twinlabs Personal Injury Cases*, No. 03-9169, 2004 WL 435083 (S.D.N.Y. Mar 8, 2004). In one particular case, the plaintiff had originally sued the debtor, as well as retailers of debtors' product.  The debtor was subsequently dismissed.  The debtor, however, though it was no longer a party to the suit, moved to transfer the state court action pursuant to §1334(b) to the district court where the bankruptcy was pending.  The court found that the defense of the claims against the retailer defendants will "invariably involve the Debtors and some or all of the issues raised in the already-transferred suits.  Moreover, the retailer defendants … will undoubtedly seek indemnity from the Debtors following any judgments against them." *Id*. at *1.  Citing *Dow*, the court held that the claims will have more than a "conceivable effect" on the bankrupt estate of the debtors and the case therefore should be transferred.  *Id.; see also M.L. Berry, et al. v. Pharmacia Corporation f/k/a Monsanto Chemical Co., et al.,* 316 B.R. 883, 889 (S.D. Miss. September 29, 2004) (applying the rationale for exempting personal injury and wrongful death claims against the debtor's estate from mandatory abstention to claims against a nondebtor, partly because it had claims for indemnity).

II.    Abstention is Inappropriate.

Certain plaintiffs urge abstention pursuant to §1334(c)(2).  The mandatory abstention analysis of this section, however, does not apply to the liquidation of personal injury and wrongful death claims.  *In re Pan American Corp.,* 950 F.2d 839.  Claims involving nondebtors may also be decided when their cases are so intertwined with the bankruptcy that to abstain

would undercut the manifest purpose of §157(b)(5) "to centralize the administration of the estate and to eliminate the multiplicity of forums for the adjudication of parts of a bankruptcy case." *Id*. at 845. *See also, A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1011 (4th Cir. 1986) ("The single focal point of this proceeding is the development of a reasonable plan of reorganization for the debtor, one which will work a rehabilitation of the debtor and at the same time assure fair and non-preferential resolution of the Dalkon Shield claims.").

That is the case here.  Mandatory abstention must not apply, because the state court actions are unquestionably linked to the administration of the debtor's estate.  Indeed, the state court actions would not exist but for the bankruptcy filing.  Before the filing, many plaintiffs elected to proceed against the debtor only, or the debtor and its affiliates.  Others chose to include claims against their healthcare providers and distributors of the compound.  But until NECC moved for Chapter 11 protection, every case had named the debtor as a defendant. When NECC filed for bankruptcy, plaintiffs' choices were effectively eliminated.

This is the reality that Judge Wilson in the Western District of Virginia failed to consider. In fact, many cases suggest that the second factor in the abstention analysis (*i.e*., that there must be an active proceeding), must exist *before* the debtor's filing.  Cases filed or amended after the filing are not subject to mandatory abstention due to failure to meet the pending parallel action requirement.  To hold otherwise would encourage the kind of procedural inaction-actions and forum-shopping that the Bankruptcy Code disfavors.

Mandatory abstention therefore should not apply to the Roanoke Actions because those cases were commenced after NECC filed for Chapter 11 protection.  Section 1334(c)(2) states that a court shall abstain from hearing a proceeding "if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction."  The majority of courts have interpreted this phrase to mean that an action must be pending in state court *prior* to the filing of a bankruptcy petition in order for mandatory abstention to apply.  *Walter v. Freeway Foods, Inc. (In re Freeway Foods of Greensboro, Inc.)*, 449 B.R. 860, 877-78 (Bankr. M.D.N.C. 2011); *Ferretti Const., Inc. v. Italimplanti of Am., Inc. (In re Ferretti Const., Inc.),* 208 B.R. 396, 398 (Bankr. S.D. Tex. 1995) (mandatory abstention did not apply where no proceeding had been commenced in a state forum of appropriate jurisdiction and could not be commenced without first obtaining relief from automatic stay);  *Container Transp., Inc. v. Scott Paper Co. (In re Container Transp., Inc.),* 86 B.R. 804, 806 (E.D.Pa. 1988) (action must be pending in state court at the time a proceeding is initiated in bankruptcy court in order to successfully invoke mandatory abstention); *see also* 1 *Collier on Bankruptcy*, ¶ 3.05[2] (Alan N. Resnick & Henry J. Somme reds., 16th ed.).  NECC filed for Chapter 11 Bankruptcy on December 21, 2012, but the *Wingate* state court matter was commenced on December 27, 2012.  Indeed, all of the Roanoke Actions were commenced post-petition.  Accordingly, mandatory abstention does not apply. *TTS, Inc. v. Stackfleth (In re Total Technical Servs., Inc.)*, 142 B.R. 96 (Bank. D. Del. 1992) (Mandatory abstention does not apply because an action has not previously been commenced in a State forum, as § 1334(c)(2) requires).

Without restating its argument set forth in the underlying papers, the Trustee also submits that even though personal injury claims are not specifically excepted from the discretionary abstention provision of 1334(c)(1), the same policy considerations counsel against its

application.  *See In re Pan American Corp.*, 950 F.2d at 845 (noting that "[a] district court, if it elects to abstain and have [a personal injury] claim liquidated in state court, may be contravening legislative history.").  The efficient administration of NECC's bankruptcy is best served by retaining (or finding) jurisdiction of all the cases involved in the New England Compounding Pharmacy Product Liability Litigation, as defined by the Judicial Panel on Multidistrict Litigation, in this single federal forum.

III.    This Court May Act to Enjoin or Otherwise Restrain the Roanoke Actions.

Under the All Writs Act, 28 U.S.C. § 1651, district courts may take any action or issue any injunction affecting state court proceedings in aid of its jurisdiction or to enforce its orders and judgments.  In appropriate circumstances, federal courts have the power "to enjoin state court proceedings that interfere with federal judgments."  *U.S. v. Alpine Land & Reservoir Co.*, 174 F.3d 1007, 1015 (9th Cir. 1999).  An injunction is appropriate and necessary where parallel state court proceedings threaten to frustrate and disrupt the orderly resolution of the federal litigation.  *Carlough v. Amchem Products, Inc.*, 10 F.3d 189, 197 (3d Cir. 1993); *In re Baldwin-United Corp.*, 770 F.2d 328, 336 (2d Cir. 1985); *In re Corrugated Container Antitrust Litigation*, 659 F.2d 1332, 1334-35 (5th Cir. 1981).

Numerous courts have enjoined competing state-court actions. Many circuits have recognized that district courts supervising complex litigation enjoy particularly broad powers to issue such injunctions.  *See Newby v. Enron Corp.*, 302 F.3d 295, 300 (5th Cir. 2002) (federal courts possess the power to enjoin "vexatious litigants from filing future [parallel] state court actions" in MDL cases); *Battle v. Liberty Nat'l Life Ins. Co.*, 877 F.2d 877, 880-82 (11th Cir. 1989); *Baldwin-United*, 770 F.2d, at 335 (district court in MDL case may enjoin parallel state court actions to prevent the relitigation of matters already decided by the district court); *In the*

9

*Matter of: Bridgestone/Firestone, Inc.*, 333 F.3d 763, 765 (7th Cir. 2003) (enjoining members of putative classes and their attorneys, in a federal MDL case involving defective tires, from attempting to have nationwide classes certified in state courts); *Blue Cross of Cal. v. Smithkline Beecham Clinical Laboratories, Inc.*, 108 F. Supp. 2d 130, 135 (D. Conn. 2000) (district courts may issue these injunctions "to protect the court's judgment and to prevent, in [] multidistrict litigation, intolerable conditions that could ensue from conflicting orders from different courts"); *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 93 F Supp 2d 876 (M.D. Tenn 2000) (Where federal court hearing multidistrict action had established single document repository for discovery production and mandated coordinated discovery effort in federal and related state actions, federal court could enjoin state-court proceedings until making decision on discovery motions as "necessary in aid of its jurisdiction.")

In *Winkler v. Eli Lilly & Co.*, a federal MDL case involving injuries allegedly caused by the prescription drug Prozac, the Seventh Circuit explained that "an injunction [of a parallel state court action] may be issued where 'necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case.'"  101 F.3d 1196, 1201 (7th Cir. 1996) (quoting *Atlantic Coastline R.R. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 295, 90 S. Ct. 1739, 26 L. Ed. 2d 234 (1970)).  Federal MDL courts are empowered "'to enjoin a concurrent state proceeding that might render the exercise of the federal court's jurisdiction nugatory.'" *Id.* at 1202 (quoting Martin H. Redish, The Anti-Injunction Statute Reconsidered, 44 U. CHI. L. REV. 717, 754 (1977); *see also In Re Ocwen Federal Bank FSB Mortgage Servicing Litig.*, 397 F. Supp. 2d 957 (N.D. Ill. 2005).

Similar injunctions have been issued by many other MDL courts.  For example, in the *Corrugated Container Antitrust Litig.*, the Fifth Circuit upheld an injunction issued by the district court presiding over a complex antitrust MDL, which barred plaintiffs who had been dismissed from the MDL from pursuing related claims against the same defendants in a South Carolina state court. 659 F.2d 1332, *cert. denied*. sub nom.  *Three J. Farms, Inc. v. Plaintiffs' Steering Committee*, 456 U.S. 936, 72 L. Ed. 2d 456, 102 S. Ct. 1993 (1982).  The injunction was upheld as necessary "to protect or effectuate [the] judgments [of the MDL court]," based on the district court's specific findings that the plaintiffs' attorneys had "taken, and manifested an intention to continue to take, actions threatening this court's exercise of its proper jurisdiction and the effectuation of its judgments, by filing and threatening to file duplicative and harassing litigation in the courts of various states and by seeking therein orders disrupting the proceedings in M.D.L. 310." *Id*. 659 F.2d at 1335.

Given the JPML's mandate for coordination, MDL courts have been justifiably concerned about the threats of discoordination and discovery abuse through forum-shopping:

> The district courts' power to control multidistrict litigation is established by statute, 28 U.S.C. §1407, and with that power comes the duty to exercise it as efficiently as possible. *Marrese*, 726 F.2d at 1161.  An important aspect of that control is to prevent predatory discovery, especially of sensitive documents, ensuring that litigants use discovery properly as an evidence gathering tool, and not as a weapon. *Id*. at 1161-62.  Indeed, an express purpose of consolidating multidistrict litigation for discovery is to conserve judicial resources by avoiding duplicative rulings. *Matter of Orthopedic Bone Screw Products Liability Litig.*, 79 F.3d 46, 48 (7th Cir. 1996). The principles of federalism and comity include a strong and long-established policy against forum-shopping. *See Kapco Mfg. Co., Inc. v. C & O Enterprises, Inc.*, 886 F.2d 1485, 1492 (7th Cir. 1989); *Freeman v. Kohl & Vick Machine Works, Inc.*, 673 F.2d 196, 198 n.2 (7th Cir. 1982).

*Winkler*, 101 F.3d at 1201.  *Winkler* found an "injunction under the All Writs Act is appropriate" to address the kind of forum-shopping engaged in by the Roanoke Plaintiffs.   The court

advocated a proactive position when faced with plaintiffs taking advantage of "our dual court system for the specific purpose of evading the authority of a federal court."  *Winkler* at __1203, quoting *Atlantic Coastline R.R.*, 398 U.S. at 295.

In the *Rezulin* MDL, the Southern District of New York found that an injunction under the All Writs Act was appropriate because many named plaintiffs had failed to comply with MDL discovery requirements and were expected to bring new state court actions or otherwise to seek to evade preclusive effect of that court's orders:

> In view of the extensive efforts by some plaintiffs to defeat federal jurisdiction in many of these cases, this is not a speculative concern.  This Court is not required to "stand idly by and hope that [a] state court" accords preclusive effect to its rulings before issuing an otherwise appropriate injunction.  *See Blue Cross of California v. SmithKline Beecham Clinical Labs.*, 108 F. Supp. 2d 130, 136 (D. Conn. 2000) (quoting *International Ass'n of Machinists & Aerospace Workers v. Nix*, 512 F.2d 125, 132 (5th Cir. 1975)).  Moreover, equity traditionally has sought to protect litigants from being subjected to a needless multiplicity of actions.  *See Graves v. Texas Co*., 298 U.S. 393, 403, 80 L. Ed. 1236, 56 S. Ct. 756, 56 S. Ct. 818 (1936).  Accordingly, the Court is persuaded that the injunction sought here is necessary and appropriate in aid of its jurisdiction so as to prevent the frustration of its prior discovery orders, ensure the preclusive effect of its order dismissing the actions of plaintiffs who willfully disregarded those prior orders, and to prevent a multiplicity of actions.

*In re Rezulin Products Liability Litig*., 223 F.R.D. 109, 120 (S.D.N.Y. 2004).

Permitting the Roanoke Actions, and others, to proceed in state court would risk the entry of additional orders and judgments inconsistent with this Court's orders and plans.  Indeed, parallel state court actions threaten not only to undermine this Court's ability effectively to manage discovery and pretrial proceedings but also, ultimately, to achieve global settlement.  As in other complex multidistrict cases, the Court's efforts will likely entail "a herculean effort to provide a fair and consistent framework for the resolution" of numerous claims.  *In re Prudential*

*Ins. Co. Sales Practices Lit.*, 314 F.3d 99, 105 (3d Cir. 2002).  "The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."  *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995).  *See Battle*, 877 F.2d at 882 (affirming injunction because "'[a]ny state court judgment would destroy the settlement worked out over seven years, nullify this court's work in refining its Final Judgment over the last ten years, add substantial confusion in the minds of a large segment of the state's population, and subject the parties to added expense and conflicting orders.'" (citation omitted)).

While the power to enjoin state-court proceedings is generally circumscribed by the Anti-Injunction Act, 28 U.S.C. § 2283, specific exceptions permit a federal court to enjoin state court proceedings where necessary in aid of its appropriate jurisdiction, or to protect or effectuate its judgments.  *See Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146-47 (1988). "Although comity requires federal courts to exercise extreme caution in interfering with state litigation, federal courts have the power to do so when their jurisdiction is threatened." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998).  The decision whether to enjoin is ultimately up to the district court's discretion.  *See California v. Randtron*, 284 F.3d 969, 974 (9th Cir. 2002). Under the circumstances presented, such action is warranted.

**<u>CONCLUSION</u>**

For all the foregoing reasons, the Trustee respectfully requests that this Court enter an

Order transferring All Pending Actions to this Court for further proceedings.

Respectfully Submitted,

Dated: May 13, 2013                              HARRIS BEACH PLLC

By:     /s/ Frederick H. Fern
        Frederick H. Fern
        100 Wall Street, 23rd Floor
        New York, New York 10005
        (P) 212-687-0100
        (F) 212-687-0659
        (E) hbnecc@harrisbeach.com

        *Proposed Counsel for Paul D. Moore,
        Chapter 11 Trustee of New England
        Compounding Pharmacy, Inc. d/b/a New
        England Compounding Center*

## <u>CERTIFICATE OF SERVICE</u>

I, Frederick H. Fern, hereby certify that on the 13th day of May, 2013, the documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

<u>/s/ Frederick H. Fern</u>
Frederick H. Fern