1                    UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS
2

MICHELE ERKAN, on behalf of herself,      )
3    her minor child, and all others
     similarly situated,                   )
4
                          Plaintiff,       )  Civil Action
5    vs.                                       No. 12-12052-FDS
                                           )
6    NEW ENGLAND COMPOUNDING
     PHARMACY, INC., d/b/a NEW ENGLAND      )
7    COMPOUNDING CENTER, et al.,
                        Defendants.         )
8
     ROBERT COLE,                           )
9    on behalf of himself and all
     others similarly situated,             )
10                        Plaintiffs
     vs.                                    )  Civil Action
11                                             No. 12-12066-FDS
     NEW ENGLAND COMPOUNDING                 )
12   PHARMACY, INC., d/b/a NEW ENGLAND
     COMPOUNDING CENTER, et al.,            )
13                      Defendants.


14

     BEFORE:  THE HONORABLE F. DENNIS SAYLOR, IV
15

                         MOTION HEARING
16

              John Joseph Moakley United States Courthouse
17                        Courtroom No. 2
                          One Courthouse Way
18                        Boston, MA 02210

19                        December 10, 2012
                             11:30 a.m.
20

21

22

23                       Valerie A. O'Hara
                        Official Court Reporter
24          John Joseph Moakley United States Courthouse
                    One Courthouse Way, Room 3204
25                        Boston, MA 02210
                    E-mail: vaohara@gmail.com

1    APPEARANCES:

2    <u>For The Plaintiffs</u>:

3        Hagens, Berman, Sobol, Shapiro LLP, by KRISTEN JOHNSON
     PARKER, ATTORNEY, 55 Cambridge Parkway, Suite 301, Cambridge,
4    Massachusetts  02142;

5        Robinson & Cole, LLP, KIMBERLY A. DOUGHERTY, ATTORNEY,
     One Boston Place, Suite 2500, Boston, Massachusetts  02108;
6
         Sheff Law Offices, P.C., by FRANK J. FEDERICO, JR.,
7    ESQ., Ten Tremont Street, Boston, Massachusetts  02108;

8        Ellis & Rapacki, by FREDRIC L. ELLIS, ESQ.,
     85 Merrimac Street, Suite 500, Boston, Massachusetts  02114;
9
         Sugarman, Rogers, Barshak & Cohen, P.C., by Anthony V.
10   Agudelo, Esq., 101 Merrimac Street, 9th Floor,
     Boston, Massachusetts  02114;
11
         Law Offices of Mark Zamora and Associates, MARK ZAMORA,
12   ESQ., 5 Concourse Parkway, Suite 2350, Atlanta, Georgia  30328.

13       Shapiro Haber & Urmy LLP, by APRIL KUEHNHOFF, 53 State
     Street, Boston, Massachusetts  02108;
14
     <u>For the Defendants</u>:
15
         Harris Beach PLLC, by, FREDERICK H. FERN, ESQ., 100 Wall
16   Street, New York, New York  10005;

17       Hinshaw & Culbertson LLP, by GEOFFREY M. COAN, ESQ.,
     28 State Street, 24th Floor, Boston, Massachusetts  02109;
18
         Tucker & Ellis LLP, by MATTHEW P. MORIARTY, ESQ.,
19   1150 Huntington Building, 925 Euclid Avenue, Cleveland, Ohio
     44115-1414;
20
         Tucker, Saltzman & Dyer, LLP, by SCOTT J. TUCKER, ESQ.,
21   100 Franklin Street, Suite 801
     Boston, MA 02110;
22
         Donoghue, Barrett & Singal, P.C., by BRUCE A. SINGAL,
23   ESQ., One Beacon Street, Boston, Massachusetts  02108-3106;

24       Michaels, Ward & Rabinovitz LLP, by NICKI SAMSON,
     ATTORNEY, One Beacon Street, Boston, Massachusetts  02108;
25

APPEARANCES (CONTINUED):

For the Defendants:

    Todd & Weld LLP, by HEIDI A. NADEL, ESQ.,
28 State Street, 31st Floor, Boston, Massachusetts 02109;

For the United States:

    United States Attorney's Office, by ZACHARY A. CUNHA,
ASSISTANT UNITED STATES ATTORNEY, Suite 9200, 1 Courthouse Way,
Boston, Massachusetts 02210

VIA PHONE FOR The PLAINTIFFS:

    Lieff, Cabraser, Heimann & Bernstein, LLP, by
WENDY FLEISHMAN, ATTORNEY, 250 Hudson Street, 8th Floor,
New York, New York  10013-1413;

1        PROCEEDINGS

2            THE CLERK:  All rise.  Thank you.  Please be seated.

3    Court is now in session.  This is Civil Action 12-12052,

4    Michelle Erkan vs. NECP, et al. and related cases.  Counsel,

5    please identify yourselves for the record.

6            MS. PARKER:  Good morning, your Honor,

7    Attorney Kristen Johnson Parker with Hagens, Berman for

8    plaintiffs Erkan and Cole.

9            THE COURT:  Good afternoon.

04:10PM 10            MS. DOUGHERTY:  Good afternoon, your Honor,

11    Kim Dougherty, Janet, Jenner & Suggs on behalf of Chad Green.

12            MR. ELLIS:  Fredric Ellis for plaintiffs Cary and

13    Schroder.

14            MR. FEDERICO:  Frank Federico, Sheff Law Offices on

15    behalf of the Martin plaintiffs, your Honor.

16            THE COURT:  Okay.

17            MR. ZAMORA:  Your Honor, Mark Zamora for Chad Green.

18            MR. AGUDELO:  Anthony Agudelo from Sugarman, Rogers,

19    Barshak & Cohen by for the plaintiff, Sandra Harrison.

04:10PM 20            THE COURT:  Any other plaintiffs' counsel?

21            MS. KUEHNHOFF:  Yes, sorry, pardon, April Kuehnhoff

22    for Shapiro, Haber & Urmy on behalf of Tawan Jenkins and

23    Franklin Jenkins.

24            THE COURT:  Good afternoon, all.

25            MR. FERN:  Good afternoon, your Honor, Frederick Fern

1    from Harris Beach on behalf of Defendant NECC, MSN and a number

2    of the individual defendants, including Barry and Lisa Cadden

3    and Greg and Carla Conigliaro.

4         MR. COAN:  Good afternoon, your Honor, Geoff Coan,

5    Mr. Fern's local counsel.

6         MR. MORIARTY:  Good afternoon, your Honor,

7    Matthew Moriarty on behalf of Ameridose.

8         MR. TUCKER:  Good afternoon, your Honor, Scott Tucker,

9    from Tucker, Heifetz & Saltzman with Mr. Moriarty.

04:11PM 10         THE COURT:  Okay.

11         MS. NADEL:  Good afternoon, your Honor, Heidi Nadel,

12    co-counsel for Doug and Carla Conigliaro.

13         MS. SAMSON:  Good afternoon, your Honor,

14    Nicki Samson from Michaels, Ward & Rabinovitz, counsel for

15    Medical Sales Management.

16         THE COURT:  All right.  Is anyone on the telephone?

17         MS. FLEISHMAN:  Wendy Fleishman from Lieff, Cabraser

18    on behalf of the plaintiff Raymond McDow and Roseanne Brooks,

19    your Honor, good afternoon.

04:12PM 20         THE COURT:  Good afternoon.  All right.  This is a

21    status conference in this case.  I'm going to ask counsel

22    present in the courtroom to remain seated and to speak into the

23    microphone so that people on the telephone can hear you.  I

24    have at least three or four, possibly more matters to take up

25    in no particular order.

1          First, the issue of the preservation orders.  I've

2   reviewed the submissions by the parties.  There's a pending

3   motion for oral argument.  I'm not sure that I need -- I'll

4   grant it, but I'm not sure that I need to hear.  I guess my

5   inclination is to issue three orders more or less along the

6   lines proposed by the defendants.  I would issue an order for

7   NECC, one for Ameridose and one for the individual defendants.

8          The principal issue, as I see it, is whether I should

9   require NECC in some form or another to communicate with third

04:13PM 10  parties and to request that they preserve evidence.  I'm not

11  inclined to approach the problem that way, although I do

12  acknowledge, of course, that there may be evidence in the hands

13  of third parties that in some form or another may need to be

14  either obtained or preserved, and I'm also conscious, of

15  course, that various governmental authorities may have seized

16  or otherwise obtained evidence that is not in the custody or

17  control of defendants, and whatever order I issue in that

18  regard can only apply to that which is in their custody and

19  control.

04:14PM 20         But did you want to be heard?  I guess Mr. Fern, was

21  it your motion?

22         MR. FERN:  It's not, Judge.  We're willing to stand on

23  the papers.  Obviously the Court has an inclination as to which

24  way you want to rule, and we're willing to stand by what we

25  submitted.

1          THE COURT:  Like everything else I'm going to do in

2     this case, you know, all of these orders are always subject to

3     modification pending changed conditions, and certainly I will

4     entertain anything that is reasonable and legal and within my

5     jurisdiction.  If it appears necessary to maintain the status

6     quo before valuable evidence is lost --

7          MS. PARKER:  Your Honor.

8          THE COURT:  Ms. Parker.

9          MS. PARKER:  If plaintiffs may just briefly be heard?

04:15PM 10     THE COURT:  Yes.

11          MS. PARKER:  There is one issue in the NECC

12     preservation order that we believe may merit the Court's

13     attention.  Defendants have suggested language that requires

14     them to preserve the clean rooms.  It's a paragraph in the

15     order that specifically deals with that.  Plaintiffs had asked

16     that that duty to preserve extend to the premises for the NECC

17     facility, not simply the clean rooms, at least until the time

18     that the plaintiff's inspection has occurred.

19          THE COURT:  I guess that's segues into the next point.

04:15PM 20     I saw that Judge Boal held a hearing.  Where do matters stand

21     on the inspection issue, Ms. Parker?

22          MS. PARKER:  Yes.  That's correct, your Honor,

23     Judge Boal did issue an order recently.  The plaintiffs have

24     conferred among ourselves.  We are in the process of putting

25     together a protocol, and we intend to submit that to defendants

1    tomorrow, and we intend to move with all due haste here.

2         THE COURT:  All right.  Mr. Fern, where does the

3    inspection issue stand from your perspective?

4         MR. FERN:  Judge, I've been on the road all day.

5    Magistrate Boal's decision, which was issued some time early

6    this afternoon was just handed to me when I walked in.

7         THE COURT:  Okay.  I've been on the bench, so I

8    haven't seen it either.  Hum me a few bars here, what did she

9    say?

04:16PM 10         MR. FERN:  Judge, how about if I defer to someone

11    who's read it?

12         THE COURT:  Okay, I'll take that.

13         MS. DOUGHERTY:  Your Honor, I'm happy to provide you

14    some information with respect to the order.  Judge Boal has

15    issued an order which would allow four days of testing by the

16    plaintiffs at the facility.  Your Honor specifically on page 9

17    also allowed destructive testing.  We requested minimally

18    destructive testing of "sampling of the wall, roof, ceiling and

19    foundational assemblies and cavities, interior mechanical

04:17PM 20    systems, including but not limited to HVAC systems and its duct

21    work and plumbing systems, sampling of edging of carpeting and

22    testing of the clean room."

23         Certainly, your Honor, because she has allowed us to

24    do that type of sampling and found that sampling to be

25    reasonable and not available through any other source, we

1    believe that it should be preserved until we've had the

2    opportunity to do the sampling and the testing that we need.

3         The Judge -- Judge Boal also ordered for us to work

4    with the U.S. Attorney's Office.  We're happy to do that,

5    provide notice.  We have a proposal of a protocol that is due

6    to Judge Boal by Friday, so if we don't have a joint protocol,

7    we are to submit competing protocols.  What we had indicated to

8    Judge Boal at the hearing last week was that we would like to

9    be in there on the 18th through the 21st.

04:18PM 10         I've conferred in advance of the hearing with

11   U.S. Attorney Cunha who has indicated that he is working on

12   that time frame to also accommodate and hope that we are able

13   to get in there for those four days.

14         THE COURT:  All right.  That's the civil division of

15   the U.S. Attorney's Office representing, what, the DEA or the

16   FDA?

17         MR. CUNHA:  Your Honor, if I might?

18         THE COURT:  Oh, yes.

19         MR. CUNHA:  Zachary Cunha on behalf of the

04:18PM 20   United States.

21         THE COURT:  Yes.

22         MR. CUNHA:  I'm here only as an interested party, and,

23   accordingly, wasn't otherwise going to participate.  I am here

24   on behalf of the civil division of the office.  We are

25   coordinating in connection with this litigation to ensure that

1    there are not any actions that would impinge on the ongoing

2    investigation being conducted by the office.

3          To that end, I had indicated that we're happy to

4    review any protocol and that to the extent that that protocol

5    doesn't create problems for the ongoing investigation, we would

6    try and expedite it as much as we can.

7          THE COURT:  This is simply informative.  I've referred

8    this matter to Magistrate Judge Boal, as you know, and I asked

9    the question because there are at least two other potential

04:19PM 10    players here, if not more, the Commonwealth and the grand

11    jury/criminal division of the U.S. Attorney's Office, and it's

12    not clear to me exactly what needs to be coordinated or how,

13    but I want to make sure that all interested parties have a say,

14    again, because in my mind, at least, the public health comes

15    first.

16          MR. CUNHA:  Just to be clear, your Honor, although I

17    sit in the civil division, I am here on behalf of the entirety

18    of my office, and in response to Judge Boal's invitation, we

19    forwarded her order to the state, so they are certainly aware

04:20PM 20    of the issues and had the opportunity to weigh in if they were

21    so inclined.

22          THE COURT:  Okay.  As to the narrow issue before me,

23    whether the preservation order ought to address preservation of

24    the premises for a period of what may be not much more than a

25    week, I'll take that under advisement.  It's a little more

1   complicated than preserving documents and computerized

2   information, but I will take that under advisement.

3        Anything else on the preservation orders?  Mr. Fern,

4   you have a frown suggesting you have something you want to tell

5   me?

6        MR. FERN:  No, Judge, no frown.  I was trying to make

7   the Judge's job a little easier.  We have no problem --

8        THE COURT:  I'm always happy with that, but usually

9   when people say that, I don't find my job is.

04:20PM 10        MR. FERN:  Well, Judge, clearly my intention is to do

11   that, and we have agreed and have represented in our papers and

12   I represent now in open court that we will do our best to

13   maintain the status quo on the premises between now and

14   whatever date the discovery and inspection is held pursuant to

15   Magistrate Judge Boal's directive.

16        My issue -- so, as to that point, that's fine.

17   Magistrate Boal for the first time when we get there on

18   Thursday, my partner, Ms. Curry was present, and we were told

19   for the first time that plaintiffs wanted to do destructive

04:21PM 20   testing on the premises, punch holes in the wall, take tiles

21   off the roof, pull off paneling so they can see behind the

22   walls to see whether there are rusty nails or shiny nails.

23        The premises is not owned by NECC.  There is a

24   landlord GDC Holdings, Inc. and GDC Property Management, Inc.

25   who manage the premises who is not NECC.  That is somewhat of a

1   taking of personal property.  When this was raised for the

2   first time, we were not aware of it.  We did not raise it in

3   our papers, and Magistrate Boal said there was no evidence

4   before her to back up the assertion that NECC did not own the

5   premises.

6        It was kind of a curve ball, your Honor, we are

7   willing to submit within 48 hours a deed, a tax bill or

8   something to show who the actual owner of the premises is and

9   somehow limit the discovery and inspection to nondestructive

04:22PM 10   testing so the premises aren't altered to the actual owner who

11   is not a party to the action.

12        THE COURT:  Here's what I'm going to do with that.

13   I'm going to leave the issue of the inspection and testing with

14   Magistrate Judge Boal.  I referred the whole issue to her.  If

15   you need a modification or a protective order, you should move

16   in her court in the first instance, and if you're not

17   satisfied, I'll take up an objection even on an emergency

18   basis.  I'm around basically, you know, if you need emergency

19   relief, I'll do my best to hear you, but I'm going to leave

04:23PM 20   that ball in her court for the time being.

21        All right.  In no particular order, I also have the

22   issue --

23        MR. MORIARTY:  Your Honor, I'm sorry, excuse me, it's

24   Matt Moriarty for Ameridose.  There is an issue in the proposed

25   Ameridose preservation order, and I didn't know whether you had

1    just taken up the NECC one or all of them at the same time.

2          THE COURT:  All of them, so go ahead.

3          MR. MORIARTY:  Okay.  The competing provisions are on

4    page 3 of the proposal, has to do with the preservation of

5    backups.

6          THE COURT:  Yes.

7          MR. MORIARTY:  So one thing is that they want backups

8    going back in time without any sort of limitation in their

9    submission, they just say prior to January 1st, 2013, which is

04:24PM 10   not easy because backups are frequently overwritten, et cetera,

11   so they know, and we've already discussed whether, you know, if

12   those are not available, obviously that's not a problem, but I

13   think the bigger issue for right now is that once the

14   litigation started, our client and its vendor went in and did

15   backups and started the computer forensic work immediately,

16   which is back in October.

17          The plaintiffs, at least as I understand it, want

18   backups subsequent to the October 14th, 2012 preservation,

19   which means that we would have to go back in and do this again

04:24PM 20   once or more times because they want any backups done between

21   October 14th, 2012 and the end of this calendar year.

22          I will allow the plaintiffs to set forth their reasons

23   for wanting that, but we object to having to go and do these

24   things again or again and again just to retrieve backups.

25          THE COURT:  Who wants to take that up, Ms. Parker?

1      MS. PARKER:  I'll address that, thank you.  Our

2  thought here was not to ask Mr. Moriarty or his client to do

3  anything again, rather that there's a period of time after --

4  let me start over.

5      Ameridose has represented that in October when the

6  problems with NECC's products came to light, they did a full

7  set of imaging of their systems, which I understand to include

8  copies of hard drives and the like.  We're not asking them to

9  do that again, at least not at this point in time, we have no

04:25PM 10  grounds for doing so and would not so impose.

11      What we are asking is that to the extent that backup

12  material currently exists that postdates those October samples

13  that we've been -- the images that we've been informed of, we

14  would ask that they retain, not duplicate or produce, but at

15  this time retain those backup materials and not overwrite those

16  until January 1st, therefore, moving forward January 1st and

17  after they would be free to do so.

18      THE COURT:  One of my privileges, of course, as a

19  District Judge is these issues are usually dealt with by the

04:26PM 20  magistrate judges, and I don't have to get into the details.

21      MS. PARKER:  Yes, your Honor.

22      THE COURT:  But, you know, in the old days, ancient

23  history, things would be backed up on tapes, and the tapes

24  would be recycled every week or so, so simply to preserve it

25  was this incredible problem because you were always overriding

1    an old tape.

2           I don't know what the modern version of that is, but

3    my guess is it's not for you to say that they can't destroy any

4    current backup may mean that they need to change their way of

5    doing business every day and preserve something every day

6    because otherwise something is overwritten.  Mr. Moriarty, do

7    you know the answer to this?

8           MR. MORIARTY:  I do not know the answer to your

9    specific question, but, historically, they have overwritten, I

04:27PM 10    know that.

11          MS. PARKER:  I believe I actually know the answer from

12    speaking with Mr. Moriarty's colleague.  I understand that it

13    is not the case on a daily basis backups are made.  We are not

14    asking them to do anything or to stop the process moving

15    forward from January 1 but simply to the extent that copies

16    other than those in October exist that they save those.

17          The specifics that I understand here as opposed to

18    tapes, your Honor, periodically copies of hard drives or the

19    systems will be saved to a third-party vendor's system as a

04:27PM 20    form of backing it up.

21          THE COURT:  All right.

22          MS. PARKER:  So to the extent that there are images

23    from other dates and other time periods that currently exist

24    there, we would ask that they not be allowed to rewrite those

25    until after January 1st.

1          THE COURT:  Again, that's a problem, let's say they do

2     that once a week and let's say it's the electronic or cloud

3     version of a tape, in other words, let's say every Sunday night

4     they take a snapshot of the system and it overwrites, you know,

5     the last snapshot, and then they do it again and they do it

6     again, and they're just simply backing it up that way, to stop

7     that process in its tracks is not going to be quite as simple

8     as what you suggested.

9          Isn't effectively what they would have to do, what

04:28PM 10     they did on October 14th, in other words, take a picture of the

11     entire system as it existed as of that moment?

12          MS. PARKER:  No, your Honor, that's not what we're

13     intending to ask for.  So let me see if I can clarify, rather

14     to the extent they have copies from earlier dates or later

15     dates that already exist that have already been taken in the

16     course of things, we'd ask them to preserve a copy.

17          Now, I understand from speaking with Mr. Moriarty's

18     colleague that there is no set, for example, daily or weekly

19     backup, that it sort of happens incrementally.  Our thought for

04:28PM 20     asking for a backup after October is that plaintiffs would in

21     theory, and, again, we're not asking for this to be produced

22     now, be entitled to correspondence among Ameridose employees

23     about how they're dealing with and responding to this issue.

24          So that's the content that we're hoping to preserve.

25     We thought that asking until January 1st was an appropriate

1    reasonable time period but, if, for example, your Honor wanted

2    to say as of today, we would, you know, certainly consider that

3    as well.  The idea was to go slightly beyond that October image

4    to the extent that it already existed.

5            THE COURT:  Mr. Moriarty.

6            MR. MORIARTY:  I don't think I need to add anything

7    further.

8            THE COURT:  All right.  Here's what I'd like you to

9    do.  On this issue only, I'd like you to confer one more time

04:29PM 10   and see if you can't agree on language or narrow it further.

11   I'm very hesitant to do this on my own for fear that I will do

12   something that will create a greater problem than whatever it

13   is I'm trying to solve, but if you think it's not intrusive,

14   Ms. Parker, see if you can't convince Ameridose that that's

15   true, and maybe you can agree on language, and if it is

16   intrusive, then just give me the two competing considerations,

17   and I'll do that.

18           I think in the meantime what I may do is simply issue

19   orders and then amend them later to include this additional

04:30PM 20   language depending on the timing you submit additional

21   language.

22           MS. PARKER:  Certainly, your Honor, and I'm confident

23   that we can work out something.

24           THE COURT:  All right.  That's the preservation orders

25   then.  Let me take up the issue of interim liaison counsel.

1    Just to be clear again, this is not lead counsel, which is a

2    decision that will await another day depending on where the

3    JPML decides to assign the cases.  It's not even liaison

4    counsel, it's interim liaison counsel in order to try to

5    facilitate the next two or three or whatever it is months until

6    we have the JPML decision.

7        Some of these requirements or suggestions predate

8    electronic filing.  Again, in the old days, it was important

9    when there was paper to distribute to have one principal

04:31PM 10    contact for distributing paper, and it's not clear to me in the

11    electronic age whether that's a particularly important

12    function.

13        I suppose there may be paper to distribute at some

14    point, or if, you know, paper service is made or required, we

15    may need a liaison counsel, but as I see the principal purpose

16    in the interim is to have a single point of contact for

17    opposing counsel so that, for example, when there's a meet and

18    confer obligation, Mr. Fern's office, for example, will have

19    one person to contact on the plaintiff's side instead of trying

04:31PM 20    to contact all plaintiffs' counsel and dido for the individual

21    defendants.

22        So I'm going to issue an order setting out these

23    relatively minimal duties, and I will appoint interim liaison

24    counsel again for those purposes.  It is very much not intended

25    to place a thumb on the scale ultimately for who will be lead

1    counsel.  That is an issue that will again await another day,

2    but, again, for this limited purpose and for this short period

3    of time, I am going to appoint Ms. Parker as plaintiffs'

4    interim liaison counsel.

5          Ms. Dougherty submitted an application, and I think it

6    will work best in the short term without two candidates,

7    although I certainly welcome and encourage whatever

8    Ms. Dougherty wants to contribute to help facilitate

9    communications, and for the individual defendants, I'll appoint

04:32PM 10    Ms. Nadel from Todd & Weld as liaison counsel.  I don't know

11    that I need to appoint counsel for NECC, Ameridose are

12    represented by one law firm, and I assume Mr. Fern and

13    Mr. Moriarty are taking on the lead.

14          So, again, just to reiterate to the extent that there

15    is paper of some sort that needs to be distributed, and perhaps

16    as automatic discovery proceeds, such things will occur, it

17    will be the obligation of liaison counsel to maintain

18    up-to-date service lists and to distribute paper, otherwise the

19    principal purpose will be to be the point of contact whenever

04:33PM 20    contact is necessary, particularly as to any meet and confer

21    obligation involving all counsel, and I'll issue written orders

22    that cover this issue.  Any questions or issues in that regard?

23    Okay.

24          I have pending two or possibly four motions for

25    remand.  I have read the papers in at least some of the

1    underlying cases.  I think it would be helpful in the Cary and

2    Schroder cases, which are ripe for resolution, to hear from the

3    defense.  Who wants to take the lead on this as to why I should

4    not remand these cases, or do you want to just rest on the

5    papers?  Mr. Fern.

6              MR. FERN:  Judge, I think our position was set forth a

7    couple weeks ago.  At the last conference your Honor said that

8    he was going to rule on the papers, and to be blunt, I was not

9    prepared to orally argue because I know when one of the

04:35PM 10   plaintiffs stood up the last time and said that oral argument

11   was not necessary, so I took that to mean the Judge was going

12   to rule on the papers.

13             THE COURT:  I'm certainly prepared to do that.  I

14   guess I am giving you an opportunity.  I am looking carefully

15   at the cases.  It's a little more complicated than it used to

16   be.  I mean, the rule used to be simply it was a well-pleaded

17   complaint rule, and if you didn't state a federal claim that

18   was that.  It's a bit more complicated around the edges now,

19   and one of the areas where it's complicated is in matters

04:35PM 20   involving pharmaceuticals and the FDA, and I'm looking

21   carefully at it, but some of the arguments, you know, for

22   example, as to inefficiency of having parallel state and

23   federal litigation, while no doubt they're true, it's not

24   really a basis for me to make a subject matter jurisdiction

25   issue.

1          Either there is federal question jurisdiction or there

2    is not, and if there is not, then it becomes an issue of

3    diversity, and whether an in-state defendant has removed the

4    case, which it is not jurisdictional, but the statute doesn't

5    provide for removal in those circumstances.  Mr. Moriarty, do

6    you want to be heard on this issue, or are you prepared to rest

7    on the papers as well?

8          MR. MORIARTY:  Well, your Honor, I think to some

9    degree I'm in the same boat as Mr. Fern, but if your Honor has

04:36PM 10  specific questions because we may know a little bit more about

11   the documents or the way these claims tend to go because we've

12   been through this on these specific sort of cases before

13   involving federal regulations, I'm happy to answer any

14   questions that you have about that regarding Ameridose, but one

15   of the key distinctions between Ameridose and NECC is this

16   whole legal issue regarding the regulation of compounding

17   pharmacies, which as I understand is a huge part of their

18   separate papers.

19          Ameridose doesn't necessarily have that same problem

04:37PM 20  because it not only had licenses as a compounding pharmacy but

21   also licenses or permission to manufacture from FDA, but I'm

22   happy to answer any questions you have about documents or

23   evidentiary issues or why we think this is a federal question.

24          THE COURT:  Well, I guess I'll, you know, if you want

25   to take it up, I'll give you the opportunity.  My basic

1    question is what is the federal issue, what is the federal

2    question?  There are cases out there, for example, where, you

3    know, the FDA mandates that a label contain certain language

4    and then a state law claim for failure to warn based on the

5    inadequacy of the labeling, at least as I might in my limited

6    understanding of the law there's cases out there that says,

7    well, you can't answer that question without interpreting

8    federal law, and so it presents a federal question.

9           What is the federal question here?  How is the

04:38PM 10   pharmacy compounding issue here at play in the plaintiff's

11   cause of action for negligence, breach of warranty, et cetera?

12   Does anyone want to take that up?

13          MR. MORIARTY:  Do you want to discuss that first as

14   far as NECC is concerned?

15          THE COURT:  Again, you don't need to, I'm just giving

16   you the opportunity.

17          MR. MORIARTY:  At least as far as Ameridose is

18   concerned, generally what these plaintiffs tried to do is take

19   federal regulatory schemes such as the general good

04:38PM 20   manufacturing practices, which is part of the United States

21   Code, and then the actual provisions of it have been deferred

22   to FDA to write regs., so we have a regulatory scheme for not

23   only that but the regulatory scheme refers to the United States

24   Pharmacopeia, which is sort of the official, I mean, it's

25   adopted under the Code of Federal Regulations.

1          So when the plaintiffs start to talk about how drugs

2    are manufactured and the meaning of current and good general

3    manufacturing or the United States Pharmacopeia, it

4    automatically implicates federal issues regarding what those

5    regulatory schemes mean and what the standard of care, for lack

6    of a better term, is regarding the manufacturing of

7    pharmaceutical, and it really doesn't matter quite frankly

8    whether it's a compounded product so far as Ameridose is

9    concerned, it may make a difference as far as NECC is

04:39PM 10   concerned, but whether it's compounded or manufactured, you're

11   still supposed to comply with these, and so they immediately

12   get into issues regarding the applicable law, the applicable

13   regulations, the applicable standard of care, what they mean

14   and things of that nature.

15          Then you get into the next layer, which is more of an

16   evidentiary layer of, okay, what does a 483 mean, what does a

17   warning letter mean when they're issued by the FDA so far as

18   the legal effect of them and the evidentiary effect of them.

19   Do they constitute some sort of a finding that the

04:40PM 20   manufacturing facility was in noncompliance, and, if so, what

21   does that mean, or does it mean something completely different?

22          So as far as Ameridose is concerned, that's part of

23   the issue of why this is a federal question, and the federal

24   courts are uniquely in a position to analyze those issues, for

25   example, in the case of Dick vs. American Home, it goes through

1    page after page of why the plaintiff couldn't prove their case

2    just based on alleging violations of CGMPs and the existence of

3    warning letters or 483s, and the federal court was able to

4    dissect those out and was in a unique position to know what all

5    of that meant.

6              THE COURT:  All right.  Does counsel in the Cary or

7    Schroder case wish to respond?

8              MR. ELLIS:  Well, just briefly, your Honor --

9              THE COURT:  Mr. Ellis?

04:41PM 10              MR. ELLIS:  Yes, Fredric Ellis.  I think the problem

11   with their argument and their whole brief is how he prefaced

12   his argument just right now, "Generally what these plaintiffs

13   try to do."  Well, the real issue is what did we do in our

14   complaints?  And we never mentioned anything about federal law,

15   federal agencies, the FDA, nothing, and there's just no federal

16   question that is raised by our complaint, period, and so their

17   whole brief is, well, they could allege this, other plaintiffs

18   have alleged this, but we don't, so we think that ends the

19   issue.

04:42PM 20              And the U.S.P., it's a private nongovernmental entity

21   that basically sets testing standards.  That has nothing to do

22   with the government, and we didn't move to file a reply brief

23   to their brief because their arguments that they raise in their

24   brief, they're just no stronger than they were in their notice

25   of removal.  For instance, they argue that we allege that there

1    was contamination present at the site, that NECC's own

2    environmental monitoring revealed that, and they failed to take

3    any action to stop it.

4         So they allege what?  We've raised the federal issue.

5    Why?  Well, that's what the FDA said in their 483.  Well, that

6    doesn't make it a federal issue, it's a fact, we allege that as

7    a fact.  They failed to remedy the environmental contamination

8    that they knew of.  That's negligence, that's gross negligence,

9    but it's not a federal issue, so, you know, in our view, you

04:43PM 10   look at our complaints, you will not see the word "federal,"

11   you will not see anything about 483s, you'll not see warning

12   letters, you will not see anything.

13        All you see is a garden variety state tort causes of

14   action, wrongful death, negligence, breach of warranty, and,

15   you know, in our view this one is absolutely clear, I mean, you

16   know maybe other cases may stand on different footings, maybe

17   they allege something in their complaints that could raise a

18   federal issue, but I think if you look at our complaints,

19   there's nothing there, Judge, and as to diversity, it's

04:44PM 20   absolutely clear, you can't remove, they're an in-state

21   defendant, they can't remove, period.

22        THE COURT:  My understanding of the statute is that

23   it's not jurisdictional in the sense that it can be waived, but

24   the statute says you can't remove, and --

25        MR. ELLIS:  That's correct.

1          THE COURT:  -- so if it hasn't been waived, I think if

2     it is a question of diversity, remand is required.  The only

3     question is whether there's a federal question raised.

4          MR. ELLIS:  Right.

5          THE COURT:  All right.  I'm going to -- I have the

6     motions under advisement, and I will again resolve that as

7     quickly as I can.  I understand that a couple more motions to

8     remand have been filed in two other cases, which I have not had

9     a chance to look at, but I will take those up in due course as

04:45PM 10    well.

11          MR. ELLIS:  Judge, could I say one more thing?

12          THE COURT:  Yes.

13          MR. ELLIS:  At the last hearing, I heard you express

14    some concern about if cases get remanded to state court that

15    we'll have another track of discovery and litigation.  If these

16    cases are remanded, I can assure you we will work closely with

17    the counsel in the MDL, I already have a pretty good

18    relationship with Ms. Dougherty.

19          THE COURT:  I think, I hope -- I can't remember what I

04:45PM 20    said, frankly.  I'm hoping that there will be a special -- if

21    there are a lot of them, they will be especially assigned to

22    one Judge at the Superior Court so that that Judge and I can

23    coordinate among other things and make sure that we're not

24    working at cross purposes.  There are bound to be some bumps in

25    the road between now and then assuming that that's how it plays

```
 1    out.

 2              MR. ELLIS:  We will also try to achieve whatever

 3    efficiencies we can achieve on the state level, and also,

 4    Judge, I've been involved in several MDLs, and if you want

 5    state liaison counsel, some type of liaison between the state

 6    litigation and federal, I'd be more than willing to serve.

 7              THE COURT:  I understand.  This is frankly --

 8              MR. ELLIS:  Premature.

 9              THE COURT:  -- routine.  Well, it's premature, but

04:46PM 10    it's also routine to have separate tracks for state and federal

11    cases.

12              MR. ELLIS:  Exactly.

13              THE COURT:  Well, I think I've said what I need to

14    say.  It's under advisement, and I expect to issue a prompt

15    ruling.  What else do we have to talk about?  I would like to

16    see counsel with some regularity in the short term, but it's

17    not clear to me that we need to meet unless there's an

18    emergency issue until after the first of the year, but I'll

19    hear counsel on that subject or any other subject people want

04:47PM 20    to take up while I have you here.  Ms. Parker.

21              MS. PARKER:  Yes, your Honor.  From the plaintiff's

22    perspective, aside from the issue of the inspection, we see no

23    need that defense counsel should have to travel to Boston

24    between now and the first of the year.  Obviously we do think

25    that the inspection should go forward with all due haste.
```

We've suggested the 18th to the 21st.  I understand you've left that to the magistrate.  Defendants seem amenable to that, although I won't hold them to it.

THE COURT:  Again, subject to the statutory procedure for objections or appeals or whatever we call it, which I can take up on emergency basis, if required.

MS. PARKER:  Certainly.  Thank you, your Honor.

THE COURT:  Mr. Fern.

MR. FERN:  Nothing further, Judge.  We have spoken among the plaintiffs and myself and Mr. Moriarty in an attempt to catch a break, spend some time with our families over the holidays.  If we can come back after the first of the year, I think everybody would be amenable, and no one is in a rush to come back to the courtroom.  I'm sure we'll have plenty of time here before you on this case, your Honor.

THE COURT:  Again, I do permit telephone conferences. You shouldn't feel the need to come up here for every one of these things.  You also should know if you don't, I have issued a standing order encouraging the appearance of junior or relatively inexperienced counsel.  A lot of Judges insist on having the senior most counsel present for all purposes.  I don't require that at all, and, in fact, I encourage the opposite because it's often the case that the more junior person who may have drafted a motion and may understand the facts in the case a lot better, understands the issues better,

1    and certainly from a cost-containment perspective, it's usually

2    preferable to have the more junior person.

3         I'll leave it up to you all obviously to send who you

4    want to send and argue who you want to argue, have argue, but

5    just so you understand, I do permit that.  Mr. Moriarty,

6    anything further you want to take up?

7         MR. MORIARTY:  No, your Honor, I'll be back in

8    Cleveland on the 3rd, and I'd be happy to come to Boston any

9    time on or after the 5th of January.

04:49PM 10         THE COURT:  Ms. Nadel.

11         MR. NADEL:  Nothing, your Honor.  Thank you.

12         THE COURT:  Anything else anyone wants to take up?

13         MS. PARKER:  I had one small procedural matter, your

14   Honor.

15         THE COURT:  Ms. Parker, yes.

16         MS. PARKER:  The parties today had met and conferred

17   and submitted a joint proposed agenda.  We took the liberty of

18   doing that.  Is that something that your Honor finds helpful?

19   If so, we're certainly happy to continue doing that on an

04:49PM 20   ongoing basis.

21         THE COURT:  I looked at it, I found it helpful.  It's

22   not required.  It's up to you.  Again, I find when Judges

23   require things, it just starts to add costs and complexity to

24   things that aren't really necessary.  I did find it helpful,

25   but I don't need it all of the time, but I did look at it and I

1    did find it helpful.

2         MS. PARKER:  Thank you.

3         THE COURT:  Anyone on the telephone want to raise

4    anything?  Hearing nothing, thank you, we will stand in recess

5    and have a good holiday.  I'm sorry, I need to set the next

6    date, don't I?

7         MR. FERN:  Judge --

8         THE COURT:  Yes, Mr. Fern.

9         MR. FERN:  Judge, what I have found helpful in the

04:50PM 10    past serving as liaison counsel in these other mass torts, and

11    it may be a little bit too early to do that, but if the Court

12    picks hypothetically the third Wednesday of every month so we

13    can block that time on our schedules.

14         THE COURT:  I expect to do that once we're up and

15    rolling.  It may not even be every 30 days, but I intend to do

16    exactly that, but I'm not there yet.  I don't know whether

17    these cases are going to be mine or not, which is an important

18    part of that.

19         MR. FERN:  I understand.

04:50PM 20    THE COURT:  I'm just trying to handle things in the

21    interim.

22         MR. MORIARTY:  I get back to Cleveland on the 3rd.  I

23    could be here by the 5th.  I guess I could be here before it if

24    we did it late in the day.  I can send somebody in my place.

25         THE COURT:  I have duty in Washington the week of the

1    7th.  Let's put it down for the week of the 14th.

2              THE CLERK:  You'll be in Worcester.

3              THE COURT:  Maybe or maybe not.  2:00 on Monday,

4    January the 14th.

5              MR. FERN:  That will work, your Honor.

6              MS. PARKER:  I will not be here, your Honor.  I can

7    send someone else, that will be fine.

8              THE COURT:  Okay.  It's going to be hard, is it just

9    that day or that whole week?

04:52PM 10              MS. PARKER:  It is the 11th through the 16th.  If the

11    4th is on the table, I hate to inconvenience Mr. Moriarty.

12              THE COURT:  Well, there's no way I'm going to make all

13    these pieces fit, and the 7th is not movable, the week of the

14    7th is not movable for me.  Again, it's a duty week for me in

15    Washington, so I'm stuck with that.  I think I'm going to have

16    to stick with the 14th.  Again, I understand that we're not

17    always going to have every lead counsel available every time.

18    We'll do the best we can.

19              Okay.  All right.  With that then, thank you and have

04:52PM 20    a good holiday everyone, and I'll see you after the first of

21    the year.

22              (Whereupon, the hearing was adjourned at 4:53 p.m.)

23

24

25

1                   C E R T I F I C A T E

2    UNITED STATES DISTRICT COURT )

3    DISTRICT OF MASSACHUSETTS ) ss.

4    CITY OF BOSTON )

5

6             I do hereby certify that the foregoing transcript,

7    Pages 1 through 32 inclusive, was recorded by me

8    stenographically at the time and place aforesaid in Civil

9    Action Nos. 12-12052-FDS and No. 12-12066-FDS, ERKAN, COLE, et

10   al. vs. NEW ENGLAND COMPOUNDING PHARMACY, INC., d/b/a NEW

11   ENGLAND COMPOUNDING CENTER, et al. and thereafter by me reduced

12   to typewriting and is a true and accurate record of the

13   proceedings.

14             Dated this 10th day of January, 2013.

15                            s/s Valerie A. O'Hara

16                   _____

17                   VALERIE A. O'HARA

18                   OFFICIAL COURT REPORTER

19

20

21

22

23

24

25