UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br>    All Cases | MDL No. 1:13-md-2419-FDS |
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY CASES<br><br>This Document Relates to:<br>    All Cases | Master Docket No. 12-12052-FDS |

**POST-HEARING MEMORANDUM
IN SUPPORT OF CHAPTER 11 TRUSTEE'S
MOTION TO TRANSFER PERSONAL INJURY TORT
AND WRONGFUL DEATH CASES TO THIS COURT
PURSUANT TO 28 U.S.C. §§ 157(b)(5) AND 1334**

Paul D. Moore, the Chapter 11 Trustee for the Estate of New England Compounding Pharmacy, Inc. ("NECC" or the "Debtor"), hereby files this post-hearing memorandum of law in further support of his motion for entry of an order transferring to this Court certain personal injury and wrongful death cases, pursuant to 28 U.S.C. §§ 157(b)(5) and 1334 (the "Motion")[1] and, in particular, to address certain issues raised during the hearing on the Motion on May 14, 2013. In addition, the Trustee joins in the *Post-Hearing Memorandum of the Official Committee of Unsecured Creditors in Support of Chapter 11 Trustee's Motion to Transfer Personal Injury Tort and Wrongful Death Cases to This Court Pursuant to 28 U.S.C. § 157(b)(5) and 1334* (the

---

[1] Unless otherwise set forth herein, capitalized terms shall have the meanings ascribed to them in the Memorandum of Law in Support of Chapter 11 Trustee's Motion to Transfer Personal Injury Tort and Wrongful Death Cases to this Court Pursuant to 28 U.S.C. §§ 157(b)(5) and 1334.

"Post-Hearing Memorandum of the Official Committee of Unsecured Creditors") filed contemporaneously herewith.

### The Adverse Effects of Allowing Cases to Proceed in Other Fora.

In state court actions (the "State Court Actions"), plaintiffs are pursuing healthcare providers and other third parties in multiple fora where they: (1) strategically declined to identify NECC as a defendant or dropped NECC as a party in order to avoid transfer to another forum; or (2) declined to sue NECC due to the automatic stay imposed by 11 U.S.C. § 362. These actions undermine the chapter 11 plan process. The Trustee's ultimate goal is the confirmation of a plan of reorganization which will: (1) maximize payments to the estate through global settlements; and (2) assure that certain creditors do not benefit at the expense of others and that all creditors of NECC are treated fairly and equitably. Transferring these cases to this Court for trial or pretrial purposes will maximize the potential for global settlements and prevent any individual creditor from obtaining a disproportionate recovery due to a successful race to judgment against a third party defendant. Absent transfer, the Trustee may be forced to expend scarce estate resources in order to participate in these actions either directly (through intervention) or indirectly (through participation in discovery). Finally, if the Pending Actions proceed, the Trustee will be subjected to the risk of inconsistent judgments and rulings and substantial delay in making any distributions to creditors of NECC's estate.

### A. The Plaintiffs' Pursuit of the State Court Actions Undermines the Goal of a Global Settlement.

Collectively, creditors will benefit from a global resolution of all claims. Defendants faced with significant ongoing litigation will not pay the maximum amount towards a settlement absent global releases. A global settlement is best effected through centralizing litigation and confirming a plan of reorganization which provides such releases in exchange for the defendants' contributions to the estate. *See In re A.H. Robins Company, Inc.*, 788 F.2d 994, 1011 (4th Cir.

1986) (noting that the "development of a reasonable plan of reorganization for the debtor, one which will work a rehabilitation of the debtor and at the same time assure fair and non-preferential resolution of [claims]" is the single focal point of the debtor's bankruptcy proceeding and a rationale for the centralization of all claims against the debtor).  The plaintiffs' pursuit of piecemeal litigation undermines this process.

The defendants in the State Court Actions are likely to assert claims against third parties other than NECC (*e.g.*, entities in the chain of distribution, former officers, directors and principals of NECC, etc.).  So long as those claims are pending, a chapter 11 plan of reorganization may not be able to provide to these third parties a global release, and they will be unwilling to contribute the maximum amount into the plan.  In fact, NECC's own insurers will not be in a position to maximize their contribution to the estate so long as there are pending claims against NECC's officers and directors which are within the scope of coverage and which give rise to an ongoing duty to fund defense fees and costs.  In sum, the goal is to channel all claims into one forum, which will increase the likelihood of a global resolution.  *See* Kenneth R. Feinberg, *Response to Deborah Hensler*, *a Glass Half Full, a Glass Half Empty: the Use of Alternative Dispute Resolution in Mass Personal Injury Litigation*, 73 Tex. L. Rev. 1647, 1648 (1995) ("What ultimate issue holds the key to the resolution of [mass tort] claims in an efficient way?  The answer is aggregation.  Aggregation. You must get all of these cases in one forum. Until you do that, any piecemeal solution, however beneficial it may be, does not offer either the plaintiff or the defendant global peace.").  The outlier State Court Actions undermine this goal and assure the likelihood of an intractable multiplicity of proceedings and substantial delays in effectuating distributions to NECC's unsecured creditors.

B.	**The State Court Litigation Imposes Unreasonable Burdens on the Estate.**

1.	**The Trustee may need to intervene in the State Court Litigation in order to attempt to prevent disproportionate recoveries.**

The plaintiffs, through trial or settlement, may obtain judgments against parties who will seek indemnity and contribution from the estate. An excessive or even a "reasonable" judgment (or even reasonable settlements), and the satisfaction and/or payment thereof through third party insurance or otherwise, will impair the Trustee's ability to make fair and equitable distributions to claimants. Such a judgment or settlement will certainly increase the cost of the administration of the estate (and thus reduce amounts available for distribution) through likely litigation over the priorities and allowed amounts of various indemnification/contribution claims.

To the extent of payment of the underlying claim, any liquidated indemnity or contribution claims against the estate will rank equally (*pari passu*) with the claims of other creditors. Under the Bankruptcy Code, all similarly situated claims must be treated the same and must share *pro rata* in distributions under a plan. *See, e.g., In re Klein Sleep Products, Inc.*, 78 F.3d 18, 20 (2d Cir. 1996) ("The liquidation provisions of the Bankruptcy Code contained in 11 U.S.C. § 726 distribute a pro-rata share of a debtor's estate to each unsecured creditor so that similarly situated creditors may be treated alike."); 11 U.S.C. § 726(b) ("Payment on claims of a kind specified . . . shall be made pro-rata among claims of the kind specified").[2] Pursuant to 11 U.S.C. § 1123(a)(4), a plan of reorganization shall "provide the same treatment of each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." *See In re Combustion Engineering,*

---

[2] While § 726 directly applies only to cases under chapter 7 of the Bankruptcy Code, it is applied indirectly in the chapter 11 plan confirmation process under 11 U.S.C. § 1129(a)(7). That section incorporates the so-called "best interests of creditors" test, which requires the court to determine whether holders of unsecured claims will receive at least as much as they would have received if the debtor's estate had been liquidated under chapter 7. *Collier on Bankruptcy* P. 726.01.

*Inc.*, 391 F.3d 190, 239-42 (3d Cir. 2004)(reversing confirmation of a plan of reorganization which provided for disparate treatment of subcategories of personal injury claims); *In re Congoleum Corp.*, 2010 U.S. Dist. LEXIS 72431, 12-13 (D.N.J. July 19, 2010) (affirming bankruptcy court's finding that prejudgment personal injury claimants and breach of contract claimants were similarly situated and therefore must receive similar treatment under a plan of reorganization). Absent exceptional circumstances, a bankruptcy court judge does not have sweeping powers to approve disparate treatment for subcategories of general unsecured claims.

Thus, judgments against or settlements by these third parties will increase recoveries to some individual plaintiffs, while reducing recovery to the remaining NECC creditors (including other personal injury claimants). Distributions under a liquidating plan are part of a zero sum game. For this reason, the Trustee may be forced to intervene or otherwise participate in the underlying litigation in order to assure that any judgment/settlement is not excessive.

This Court should reject the argument that concerns about contribution claims are overblown due to the fact that such claims arguably may not be pursued under state law[3] or under the bankruptcy code, absent payment of the underlying judgment.[4] This argument is the true "red herring." Those who urge this argument ask this Court to assume that plaintiffs are pursuing judgment-proof defendants, who lack assets or insurance to satisfy a jury award. This is not a reasonable assumption. Rather, those plaintiffs who succeed in a race to judgment may

---

[3] The state law arguments advanced by the Virginia plaintiffs ignore the possibility of indemnity claims, which are not dependent on payment of a judgment. *See* Va. Code § 8.01-249(5) (contribution and indemnification claims may be asserted before such cause of action is deemed to accrue); Va. Code § 8.01-281(A) ("it shall be no defense thereto that the party asserting such claim, counterclaim, cross-claim, or third-party claim has made no payment or otherwise discharged any claim as to him arising out of the transaction or occurrence").

[4] 11 U.S.C. § 502(e)(1)(B) & (C) and 11 U.S.C. § 509 both provide for *pari passu* treatment of contribution or indemnity claims against the estate to the extent that creditors have satisfied the underlying liability to third parties underlying such claims. *See* Post-Hearing Memorandum of the Official Committee of Unsecured Creditors at pages 5 to 8.

5

well exhaust whatever assets or insurance is available to compensate other claimants, the antithesis of equitable distribution to similarly situated competing claimants.

The Trustee cannot let the estate bear the risk that a defendant will fail to litigate vigorously and suffer an excessive judgment.[5] The Trustee will want to assure that any settlement is fair and reasonable. He will be best able to influence a settlement as a party to the underlying proceeding, where the Trustee would assert cross-claims that would have to be addressed in the context of a settlement. Having the benefit of a global overview of all litigation, the Trustee will have insights into strategy that are best shared as a party to the underlying case.

> **2.      The Trustee may need to intervene in the State Court Actions in order to participate in depositions whose impact will extend far beyond any individual case.**

The Trustee may want or need to participate in any depositions where critical witnesses may give deposition testimony. Once a witness testifies at a deposition, he may be "locked" into that testimony for subsequent depositions. That testimony may have an adverse impact on the case which could be mitigated by the Trustee's participation in the deposition. Further, that testimony may be admissible against the estate (if there is privity between the deponent and the estate) as prior recorded testimony. *See In re Johns-Manville Corp.*, 40 B.R. 219, 225 (S.D.N.Y. 1984) (extending automatic stay to non-debtor employees on grounds that permitting the discovery and trial testimony would "seriously interfere with the ongoing Chapter 11 proceedings" and holding that "once a witness has testified to a fact or what sounds like a fact, that witness may be confronted with his prior testimony under oath in a future proceeding directly involving [debtor], whether or not [debtor] was a party to the record on which the initial

---

[5] In any event, the Trustee fiduciary obligations to the estate will require him to object to those claims arising from an unreasonably excessive judgment or settlement. These objections are likely to result in costly and time consuming claims objections.

6

testimony was taken. Once an admission against interest is made, under oath or otherwise, by the agent of a party, that admission stands for all time. No matter what [one-claimant] may stipulate the thousands of other claimants and cross-claimants who are after [debtor's] assets . . . would be entitled to the product of such discovery."); *see also, In re Lion Capital Group*, 44 B.R. 690, 703 (Bankr. S.D.N.Y. 1984) (staying parallel litigation in district court noting that "the risk of collateral estoppel, the consequent drain on the debtor's resources through having to monitor or perhaps participate in other actions, and the risk that testimony by employees or agents might be subsequently employed against the debtor . . . warranted the issuance of a stay").

> **3. The State Court Actions expose the Trustee to inconsistent judgments and rulings and to litigation over their potential collateral estoppel effect.**

Permitting the objecting parties to proceed with their state court actions will create a blueprint for other plaintiffs to proceed outside of this Court. Multiple proceedings outside of this Court subject the estate to the risk of inconsistent judgments and rulings. *See Seybolt v. Bio-Energy of Lincoln, Inc.*, 38 Bankr. 123, 128 (D. Mass 1984) (staying action against a guarantor entitled to indemnity by debtor because "the dual litigation of these issues in the state court and the bankruptcy court is not judicially economic and potentially exposes [the debtor] to inconsistent judgments"); *see also, In re Zimmer Nexgen Knee Implant Products Liability Litigation*, 2011 WL 3563293, *2 (J.P.M.D.L. 2011) (consolidation "will eliminate duplicative discovery, prevent inconsistent pretrial rulings on *Daubert* and other pretrial issues, and conserve the resources of the parties, their counsel and the judiciary"). Inconsistent judgments and rulings may lead to disproportionate recoveries by individual plaintiffs.

Further, these judgments and rulings will lead to litigation over whether specific findings and conclusions, if any, should have collateral estoppel effect in subsequent cases. *In re Adelphia Communs. Corp.,* 302 B.R. 439, 451-452 (Bankr. S.D.N.Y. 2003) (finding that the

mere "risk of imposition of collateral estoppel" against the debtor provided a sufficient basis for enjoining an action against a non-debtor); *In re Sudbury, Inc.*, 140 B.R. 461, 464 (Bankr. N.D. Ohio 1992) (enjoining litigation against present and former directors and officers of debtor due to "questions as to the enforceability of indemnities" which would compel the debtor to become involved in the underlying litigation "because of legitimate indemnity and collateral estoppel concerns as fully as if it were a named defendant").

    **4.    The State Court Actions expose the estate to the unfair and unreasonable burden of duplicate discovery.**

As set forth in in the Post-Hearing Memorandum of the Official Committee of Unsecured Creditors at pages 8 to 10, there are limits on this Court's ability to restrict discovery propounded upon the Trustee by State Court Plaintiffs. The Trustee is administering a liquidating estate with limited resources and no employees. Consolidating all cases before this Court will enable the Trustee to avoid duplicate discovery and assist the Trustee in conserving scarce estate resources and will serve the interests of justice. *See Seybolt v. Bio-Energy of Lincoln, Inc.*, 38 Bankr. at 128; *see also In re Zimmer Nexgen Knee Implant Products Liability Litigation*, 2011 WL 3563293, *2.

**C.    <u>The State Court Actions will unreasonably delay distributions to creditors.</u>**

The Trustee cannot make distributions to creditors until he knows the dollar amount of the universe of claims. Absent transfer, the number of state court cases will multiply in many fora. The plaintiffs in all of those cases (and in the Pending Actions), as well as most, if not all of the defendants, will likely assert claims against NECC by filing proofs of claim. Distribution to all creditors will have to await the outcome of these parallel state court proceedings, possibly leading to years of delay before any of NECC's creditors receive any distributions.

## **CONCLUSION**

For all the foregoing reasons, and the reasons set forth in the Trustee's original Memorandum and Reply, the Trustee respectfully requests that this Court enter an order transferring the Pending Actions to this Court for further proceedings pursuant to 28 U.S.C. § 157(b)(5).

Dated: May 20, 2013

Respectfully submitted,

DUANE MORRIS LLP

*/s/ Michael R. Gottfried*
Michael R. Gottfried
(BBO #542156)

100 High Street
Suite 2400
Boston, MA 02110-1724
Phone: (857) 488-4200
Email: mrgottfried@duanemorris.com

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on May 20, 2013.

/s/ *Michael R. Gottfried*
Michael R. Gottfried (BBO #542156)
DUANE MORRIS LLP
100 High Street, Suite 2400
Boston, MA 02110-1724
Tel: 857-488-4200
Fax: 857-488-4201
MRGottfried@duanemorris.com

Counsel for PAUL D. MOORE, in his capacity as Chapter 11 Trustee of the Defendant New England Compounding Pharmacy, Inc., d/b/a New England Compounding Center