IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LAIBILITY LITIGATION<br><br>This Document Relates to:<br>    All Cases | Master File No. 1:13-MD-2419-FDS<br>MDL Docket No. 2419 |
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY CASES<br><br>This Document Relates to:<br>**1:13-cv-10498** | |

**SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR MANDATORY ABSTENTION AND IN OPPOSITION TO TRUSTEE'S MOTION TO TRANSFER**

The Roanoke Gentry Locke Plaintiffs,[1] appearing specially by counsel, offer this Supplemental Memorandum of Law in Support of Motion for Mandatory Abstention and In Opposition to Trustee's Motion to Transfer, responding to inquiries made by the Court in oral argument on May 14, 2013.

### Introduction

Three primary practical issues were presented in the court proceedings on May 14, 2013:

1. Whether problems with potentially repetitive discovery requests could be minimized by some process other than transferring the Roanoke state-court cases against non-debtors to this Court;

---

[1] These Plaintiffs have filed Virginia state-court cases naming only non-debtor defendants identified by the Trustee in Exhibit A-4 to his Motion to Transfer.

2

2. Whether potential contribution claims from the state-court defendant, Insight Health Corp., ("Insight"), would be treated equally with the injured party creditors, thus reducing the NECC funds available to pay injured parties; and

3. By what procedural means would the state court cases be transferred to this federal court?

This Supplemental Memorandum addresses each of these three issues, concluding that: (1) all discovery issues can be appropriately handled without need for the drastic measure of transferring these non-debtor cases to this Court; (2) 11 U.S.C. §510(c) provides the bankruptcy court with sufficient latitude to subordinate any potential contribution claim by Insight (or other potential contribution creditor); and (3) the Trustee's present motion to transfer is brought under 28 U.S.C. §157(b)(5), which does not apply to state-court cases against only non-debtor parties.

**1. Discovery Related To NECC and Associated Parties**

Discovery related to the NECC parties does not present a challenge because this Court and/or the Bankruptcy Court have ultimate authority over such matters due to NECC's bankruptcy. 11 U.S.C. §362. The stay may be extended to related insiders. *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986). As a practical matter, the Court may lift the stay subject to certain conditions and procedures that would protect the debtor and its insiders/related parties on discovery-related matters, while allowing reasonable access to relevant information. Any state-court party seeking discovery of this information would be required to go through that designated process to obtain the information. For example, documents responsive to a general list of relevant categories could be made available through the Plaintiff's Steering Committee or the Trustee. Requests outside of that scope would require permission of the Bankruptcy Court.

3

As to parties that may be not directly related to NECC, it is doubtful that the information possessed by such parties would ever be relevant to the facts at issue in the Roanoke cases. However, if the parties in Virginia want to obtain discovery from non-parties located in Massachusetts, the procedures are straight-forward and uncomplicated. Massachusetts allows a party involved in a lawsuit outside Massachusetts to submit an application and order to a Massachusetts trial court to compel testimony or production of evidence:

> A court of this commonwealth may order a person who is domiciled or is found within this commonwealth to give his testimony or statement or to produce documents or other things for use in a proceeding in a tribunal outside this commonwealth. The order may be made upon the application of any interested person . . . .

MASS. GEN. LAWS ANN. ch. 223A, § 11 (2011); *see also Application of O'Brien*, 403 Mass. 1005, 529 N.E. 886 (1988) (entry of order commanding non-party Massachusetts resident to be deposed by New Jersey state-court litigant was interlocutory and not appealable). Upon receiving such an application, the trial court will issue the order compelling discovery. MASS. GEN. LAWS ANN. ch. 223A, § 11.

Thus, a party in the Roanoke, Virginia state-court lawsuit seeking discovery would apply to a trial court in Massachusetts to compel a non-party there to produce documents, be deposed, or both. The Virginia parties would then travel to Massachusetts for a deposition. Since the issues are exactly the same in all of the Roanoke Gentry Locke cases, at most only one deposition and/or document request from each non-party witness would be required. The number of pending cases by the Roanoke Gentry Locke Plaintiffs should not be confused with the number of times any non-party witness would need to be deposed, as the parties and the

Roanoke City Circuit Court have already indicated that a consolidated discovery process will be employed.

Difficulties or technical aspects of discovery regarding non-NECC parties as well as NECC insiders will also presumably be coordinated through the federal-state court liaison counsel appointed by the MDL court. Further, to the extent that it becomes necessary, this Court may use its powers under 11 U.S.C. §105(a) which allows "any order, process, or judgment that is necessary or appropriate to carry out the provisions" of Title 11. However, the First Circuit has cautioned generally that any use of §105 to enjoin a non-debtor involves an extraordinary exercise of discretion. *In re G.S.F. Corp.*, 938 F.2d 1467, 1474 (1st Cir. 1991).

### 2. Any Injustice may be Avoided by Subordinating Insight's Contribution Claims

Guided by principles of equitable subordination, section 510(c) of the Bankruptcy Code allows courts to subordinate all or part of an allowed claim to all or part of another allowed claim for purposes of distribution. 11 U.S.C. §510(c) (2007). *See e.g. In re Wolverine, Proctor, & Schwartz, LLC*, 447 B.R. 1, 31 (Bankr. D. Mass. 2011). The doctrine allows the court to "take account of the misconduct of one creditor . . . and of the debts the creation of which was inequitable vis-à-vis other creditors". *Id.* (citing *In re Giorgio*, 862 F.2d 933, 938-39 (1st Cir. 1988)). Accordingly, the primary thrust of §510(c) is to prevent inequity among creditors in a bankruptcy distribution. *Id.* at 377. To this end, the court may exercise its equitable power to subordinate a creditor's claim where: 1) the creditor has engaged in some type of inequitable conduct; 2) the misconduct has caused injury to creditors or conferred an unfair advantage on the claimant; and 3) the subordination of the claim would not be inconsistent with the provisions of the Bankruptcy Code. *In re 604 Columbus Ave. Realty Trust*, 968 F.2d 1332, 1354 (1st Cir.

1992); *In re Giorgio*, 862 F.2d at 938-39; *In the Matter of Mobile Steel Co.*, 563 F.2d 692, 700 (5th Cir. 1977); *In re Forest St. LLC*, 409 B.R. 543, 572-73 (Bankr. D. Mass. 2009).

### a. Inequitable Conduct

While equitable subordination does not give a court the general ability to judge the moral weight of a creditor's claim, acts of fraud and illegality are the types of creditor misconduct that warrant equitable subordination. *In re Hedged–Inv. Assocs., Inc.*, 380 F.3d 1292, 1301 (10th Cir.2004); *In re 604 Columbus Ave.*, 968 F.2d at 1360; *In re Beverages Intl. Ltd.*, 50 Bankr. 273, 281 (Bankr. D. Mass. 1985). Bankruptcy courts may subordinate a creditor's claim on the grounds that the creditor's acts were "severely unfair in relation to the other creditors". *In re Girogio*, 862 F.2d at 839; *see also In re Martin Special Vehicles, Inc.*, 87 Bankr. 752, 768 (Bankr. D. Mass. 1988) (stating that a creditor may still have his debt subordinated when guilty of substantial misconduct involving "moral turpitude or fraud").

### b. Harm or Injury to Other Creditors

The creditor's inequitable conduct must have resulted in harm to other creditors or conferred and unfair advantage upon the bad actor in the proceeding. *In re Bellucci*, 29 B.R. 814, 815 (B.A.P. 1st Cir. 1983); *In re Forest St. LLC*, 409 B.R at 578. The harm must have an impact on the results of the distribution, but need not affect the entire body of creditors. *In re Beverages Int'l*, 50 B.R. at 283. Rather, unfairness or harm to a particular class of creditors, a specific few, or even a single creditor is enough to satisfy the inquiry. *Id.*

### c. Consistency with the Bankruptcy Code

Courts are meant to ensure that they do not ignore the letter of the bankruptcy law in the "name of equity." *In re Forrest,* 409 B.R. at 573 (quoting *In re Racing Servs., Inc.*, 340 B.R. 73, 78 (B.A.P. 8th Cir. 2006)). Thus, this prong of the analysis is satisfied as long as the court does

not simply adjust a good-faith creditor's valid claim because it deems the subsequent result to be more equitable. *In re Beverages Int'l*, 50 B.R. at 283. Faced with an equitable subordination claim against two creditors who were found to have engaged in "grossly inequitable conduct", the Massachusetts Bankruptcy Court noted, "it is difficult to conceive how the subordination of the . . . debt is anything other than a facilitation of, rather than an inconsistency with, Congress's important goals in fashioning Chapter 11 relief." *In re All-Clamp Corp.*, 233 B.R. 198, 211 (Bankr. D. Mass. 1999).

    *d. Application of the Insight Facts at Issue*

Insight engaged in illegal and inequitable conduct, causing harm to the Roanoke Gentry Locke Plaintiffs who are part of the greater injured party class of NECC creditors. At least with regard to the first issue noted below, the same is likely true as to other contribution creditors around the nation.

    i.   At the most basic level, Insight was complicit with NECC in violating applicable law for purchases from a compounding pharmacy. The law of Massachusetts requires pharmacists to dispense medications only pursuant to a valid prescription from an authorized practitioner for a specific patient. **Exhibit 1**. Insight did <u>not</u> provide such prescriptions for its bulk purchases of methylprednisolone acetate ("MPA") from NECC that numbered about 200 vials per shipment.[2] Instead, Insight's employees have testified that Insight cooperated in NECC's lawlessness by providing a list of 40 to 50 names of <u>previous</u> patients (who had already been treated by Insight) in order to receive a new shipment of 200 doses of un-prescribed drugs. These drugs arrived in sub-packages containing five (5) vials of MPA with the name of one <u>historic</u> patient affixed to the

---

[2] Bulk production is also unlawful. Va. Code §54.1-3410.2(I)

7

outside of the sub-package. The historic patient named on the label, and in whose name the drugs were ordered, would almost certainly not be the patient receiving these doses. Moreover, Virginia law (to which both Insight and NECC were subject) also prohibits pharmacists from engaging in the regular compounding or the compounding of inordinate amounts of any drug products that are essentially copies of commercially available drugs. Va. Code §54.1-3410.2(I).

ii. Insight also then pawned-off the NECC MPA as the trademarked name brand drug, Depo-Medrol:

    a. It advertised to prospective patients on its website that "Depo-Medrol" was used for epidural steroid injections;

    b. It provided written materials to patients stating that they received "Depo-Medrol";

    c. Surgical reports for each patient stated that the patient received "Depo-Medrol";

    d. Patient invoices from Insight described the drug as "Depo-Medrol"; and

    e. Insight's billing information for insurance inexplicably used the National Drug Code for the generic version of the Pfizer drug manufactured by TEVA (0703-0051-01) and the HCPCS Code for a non-compounded drug.

iii. Insight provides medical services to the general public and is held to applicable standards of care. Yet, Insight's Center Manager -- who was in charge of purchasing the MPA, and who was deposed on May 7, 2013 -- claims not to have known that NECC was a compounding pharmacy, or even what a compounding pharmacy was in the first place. According to its own employees, Insight did absolutely no due diligence in choosing the source of the MPA that it routinely passed off as the FDA-regulated Pfizer drug, Depo-Medrol. When asked to participate in the unlawful and patently inappropriate practice of

8

using an incomplete list of <u>prior</u> patients' names to NECC to obtain medication for completely different prospective patients, NECC simply did so. This type of patient information is clearly protected health information under HIPAA,[3] but it was disclosed to NECC for reasons totally unrelated to facilitating treatment for the "named" patient, without the consent of the patient, and without notification of the patient. Basically, Insight sacrificed patient privacy for its own convenience and profit. But even under this extraordinarily shady process, Insight saw no need to investigate conditions at its distant drug source surrounded by a garbage facility.

Based upon the facts discovered so far in the Roanoke cases, any claim by Insight against NECC must be equitably subordinated to those of the injured claimants.

Also, for the reasons stated in oral argument, there is no merit to the recent underlying arguments by the Trustee that the potential contribution claims by Insight are somehow "ripe" because Virginia procedure allows them to be asserted as third-party claims before the cause of action matures. No third-party claim has been filed in these cases and none can be filed without permission of this Court <u>and</u> permission of the state court in Virginia where the third party claim would be asserted. It did not happen, and it is not going to happen. The only possible way in which such a claim could be asserted now would be if this Court granted the Trustee's motion and allowed the state-court defendants to proceed with a third party claim.

### 3. 28 U.S.C. § 157(b)(5) does not provide procedural means to transfer non-debtor cases to this Court.

The form draft order attached to the Trustee's transfer motion purports to direct the Circuit Court in Roanoke, Virginia that the case is removed and transferred "pursuant to 28 U.S.C. §157(b)(5)." Section 157(b)(5) is not a jurisdictional statute but simply a venue statute.

---

[3] 45 C.F.R. §§ 164.501, 164.502(a)(1)(iv), 164.524(a)(1)(ii), 164.524(b), 164.528.

9

23347/1/6289534v1

*Stern v. Marshall*, 131 S. Ct. 2594, 2606 - 2607 (2011). Accordingly, it is clear that the Trustee believes that this Court has the procedural authority to transfer state court cases against only non-debtors under §157(b)(5). However, this section "was drafted to cover the procedure in connection with a special group of cases, to wit, personal injury tort claims *against the debtor* in Chapter 11 proceedings wherever pending ..." *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1011 (4th Cir. 1986) (emphasis added). "In all other cases related to the bankruptcy proceedings, however, the general [change of venue] statute (i.e., section 1412) would govern." *Id.* In *Piccinin*, the District Court was aware of limitations to the reach of federal process into state courts. Accordingly, while it held that all tort cases arising out of the Dalkon Shield were "related to" the A.H. Robbins bankruptcy, it noted its qualified removal power by holding that "...all actions related to the Robins' Chapter 11 case now pending in any federal district court or subsequently removed to any federal district court, during the pendency of this Chapter 11 case, were to be transferred ..." *Id.* at 998.[4] It did not presume to "remove" state court cases against non-debtors only under the power of §157(b)(5).

Although the Sixth Circuit veered from the majority view as to limitations on the scope of "related to" jurisdiction in *In re Dow Corning*, 86 F.3d 482 (6th Cir. 1996) (*"Dow I"*), its holding there as to the procedural application of §157(b)(5) is not so stretched, and it certainly does not support the Trustee's assertion that this venue statute may be applied to cases against only non-debtors. In *Dow I*, the Court framed the limited issue quite clearly, stating: "The question for our consideration is whether Section 157(b)(5) allows for the transfer of personal

---

[4] Recall also that *Piccinin* only dealt with cases where claims against the debtor were joined with insiders closely associated with the debtor who were "additional insureds" on the debtor policies and had absolute and immediate claims of indemnity back against the debtor. The only defendants other than the debtor corporation were "the two Robins [owners], Dr. Frederick A. Clark, Jr., Dr. Hugh J. Davis [the inventor of the Dalkon Shield], and the debtor's insurer Aetna." 788 F.2d at 1007.

10

injury and wrongful death claims pending against nondebtor defendants <u>who have been **sued with a debtor** under claims of joint and several liability</u>." *Id.* at 496. Such circumstances are absent in the Roanoke cases. *Dow I* did not address the transfer of cases solely against non-debtors. Accordingly, this Court cannot look to §157(b)(5) for the procedural mechanism to transfer state court cases in Virginia against non-debtors.

The Trustee himself is troubled by this procedural problem. After the Trustee filed his Motion to Transfer, counsel for NECC was present for the courtroom announcement of the attempted removal of the Wingate matter on April 5, 2013; and counsel for the Trustee filed a Notice of Tag-Along immediately thereafter in Wingate and the other Roanoke Gentry Locke cases. That procedural gambit was unsuccessful,[5] but it shows a lack of confidence in the Trustee's arguments in support of the present transfer motion.

28 U.S.C. §1452 also does not provide any procedural options for the Trustee's requested transfer or any subsequent efforts at transfer. That section simply allows the removal of an action to the district court in which the action is pending if the court has jurisdiction under 28 U.S.C. §1334. It provides no procedure for removal to this Court; and it provides no procedure for removal by a non-party. Even if §1452 could be stretched to apply to these cases, the facts clearly establish that NECC received copies of the filed complaints by the Roanoke Gentry Locke Plaintiffs long ago. (See Declarations of J. Scott Sexton, ECF Nos. 110, 112-114, 116-117, 119-121, 123-124). Accordingly, any removal by the Trustee under §1452 would be untimely under Federal Rule of Bankruptcy Procedure 9027. *See, e.g.,* Memorandum Order, May 10, 2013 (ECF No. 140) (concluding that Insight's effort to remove the Wingate case were untimely, and remanding the case for that and myriad other reasons). Significantly, the Trustee

---

[5] Order vacating CTO-8 as moot, MDL No. 2419, ECF No. 245.

has not sought an extension of the time to remove these cases even though he has obtained Interim Orders in the Bankruptcy Court extending the deadline to remove civil actions on all cases filed after the Petition date (December 21, 2012) "as to which the period for removal had not expired" as of March 21, 2013. (Case 12-19882 ECF Nos. 142 and 171).

The relevance of these procedural problems does not end with the technical difficulty of extracting a pending case from a sovereign state to a federal court in a distant state. The fact that there is no established statutory procedure for transferring state-court non-debtor-only cases also suggests that the extension of "related to" jurisdiction to such cases is beyond the statutory intent of 28 U.S.C. §1334(b).

Further, it is worth noting that the Trustee's arguments appear to indicate a request to remove these state-court cases to this Court for purposes of discovery and case management only (similar to the JPML/MDL process). However, that procedural machination is clearly not contemplated by the venue statute, 28 U.S.C. §157(b)(5) --- which directs this Court to specify whether personal injury and wrongful death cases with the debtor "shall be tried" in this Court or in the federal court in Roanoke.

Thus, the Trustee's loose mix and match blending of procedures reveals its own errors. Either the Roanoke cases are or are not personal injury or wrongful death cases against the debtor. If they are, §157(b)(5) may be applied and the cases must be tried in either this federal Court or the one in Roanoke (which has already soundly rejected the invitation). There is absolutely nothing about §157(b)(5) that implies an authority upon this Court to simply remove/transfer under §157(b)(5) only to then return the case to state court for trial. The fact that the latter is held out as some type of possibility betrays a lack of seriousness as to the underlying applicability of §157(b)(5).

12

## Conclusion

The Roanoke Plaintiffs do not want to pursue any course of conduct that would injure, diminish or delay the claims of other injured parties against NECC, its related parties, or third parties who may bear some responsibility universally to either the injured parties or NECC. But that is not even a genuine risk here. The real risk to all of the injured parties would occur if the Trustee and the Creditors' Committee should get their wish in this matter and in their ultimate plan regarding these state court non-debtor cases. Such a course of conduct will inevitably create lengthy delays and appeals. By contrast, respect for the time-honored principles of jurisprudence advanced by the Roanoke Plaintiffs will cause no delays and will foster no errors.

For all of the reasons stated herein, these parties respectfully ask that this Court deny the Trustee's motion to transfer the Virginia state-court cases which they have brought solely against non-debtor defendants; and that the Court also grant their Motion for abstention. These parties further make this submission without waiver of any rights and without consent to the jurisdiction of this Court generally. Rather, their appearance is limited and special for the purpose of contesting the Trustee's motion.

ROANOKE GENTRY LOCKE PLAINTIFFS

/s/ J. Scott Sexton
  Of Counsel

J. Scott Sexton, Esq. (VSB No. 29284)
Anthony M. Russell, Esq. (VSB No. 44505)
Charles H. Smith, III, Esq. (VSB No. 32891)
H. David Gibson, Esq. (VSB No. 40641)
Benjamin D. Byrd, Esq. (VSB No. 76560)

13

Daniel R. Sullivan, Esq. (VSB No. 81550)
GENTRY LOCKE RAKES & MOORE, LLP
10 Franklin Road, S.E., Suite 800
P. O. Box 40013
Roanoke, Virginia 24022-0013
(540) 983-9300
FAX (540) 983-9400
sexton@gentrylocke.com
russell@gentrylocke.com
smith@gentrylocke.com
gibson@gentrylocke.com
byrd@gentrylocke.com
sullivan@gentrylocke.com
*Counsel for Roanoke Gentry Locke Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2013, I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF system, which then sent a notification of such filing (NEF) to all counsel of record.

/s/ J. Scott Sexton