UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates To:<br><br>*Devilli v. Ameridose, LLC, et al.*<br>Civil Action No. 1:13-11167-FDS | MDL No. 1:13-md-2419-FDS<br><br>**AMERIDOSE, LLC'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO SEVER AND REMAND CLAIMS AGAINST PREMIER ORTHOPEDIC ASSOCIATES SURGICAL CENTER, LLC AND RELATED PARTIES** |

## INTRODUCTION

Although the Devilli Plaintiffs relegate the discussion of "related to" jurisdiction to a footnote and simply refer the Court to the prior "extensive briefing," they fail to acknowledge that all other parties – the Plaintiffs Steering Committee ("PSC"), the Official Committee of Unsecured Creditors ("Creditors' Committee"), Chapter 11 Trustee ("Trustee"), and NECC-affiliated entities – agree that this Court has "related to" jurisdiction over cases in which NECC-affiliated entities are named defendants.  The Devilli Plaintiffs' inclusion of claims against NECC-affiliated entities takes this case outside of the narrow group of cases over which there is currently a dispute over the application of this Court's "related to" jurisdiction.  Thus, the Devilli Plaintiffs are standing alone in their refusal to acknowledge the well-established authority demonstrating that this Court possesses "related to" jurisdiction over this case.

Practical considerations also necessitate the denial of the Devilli Plaintiffs' Motion to Sever.  Ameridose acknowledges that it originally advocated severance as a remedy of last resort, and still does so. But recent events have made severance even less desirable. The statements about deposition discovery of NECC and Ameridose executives and owners, made

by counsel for the Virginia Plaintiffs at the May 14, 2013 status conference and motion hearing, is a perfect example of how discovery outside the direct control of this Court will negatively impact the bankruptcy estate and undermine the judicious, targeted discovery planned by both the PSC and the Creditors' Committee. The Devilli Plaintiffs' inclusion of NECC-affiliated entities makes it even more certain that they will seek such discovery. As a result, by exercising its "related to" jurisdiction and denying the Devilli Plaintiffs' Motion to Sever, this Court can create the greatest amount of efficiencies for the greatest number of parties.

## LAW AND ARGUMENT

**A.     The Devilli Plaintiffs Are Alone in Disputing This Court's "Related To" Jurisdiction Over Cases Involving NECC-Affiliated Entities.**

As noted in Ameridose's Notice of Removal and the extensive briefing previously submitted in this MDL, 28 U.S.C. §1334(b) and §157(b)(5) give this Court the authority and procedural mechanism by which to obtain jurisdiction over personal injury and wrongful death cases that are "related to" a bankruptcy estate. In light of this authority, all parties – other than the Devilli Plaintiffs – have acknowledged that this Court can exercise "related to" jurisdiction over cases, such as this, in which NECC-affiliated entities are named defendants:

- The Chapter 11 Trustee filed a Motion to Transfer Personal Injury Tort and Wrongful Death Cases to This Court Pursuant to 28 U.S.C. §§ 157(b)(5) and 1334(b), seeking the transfer of **all** cases arising from NECC's manufacture of methylprednisolone acetate ("MPA") to this Court. (*See* Chapter 11 Trustee's Motion to Transfer Personal Injury Tort and Wrongful Death Cases, ECF #37.)

- The Creditors' Committee joined the Trustee's Motion to Transfer arguing that coordination of NECC's Chapter 11 case with the personal injury actions in the District Court is critical to (a) the speedy recovery and collection of assets for the estate; and (b) the subsequent distribution to creditors at maximum efficiency and minimum cost. (*See* Joinder of the Creditors' Committee to the Trustee's Motion to Transfer, ECF #128.) The Creditors' Committee further agreed with the Trustee

2

that centralization is "essential for **all** civil actions" related to MPA, including those in which NECC-affiliated parties are not named. (*Id.*)

- The PSC agreed with the Trustee's Motion to Transfer as to those cases naming NECC-affiliated entities and objected only to the small subset of cases filed in state court asserting claims **solely** against non-debtors (such as those filed by the Virginia Plaintiffs). (*See* PSC's Response to the Chapter 11 Trustee's Motion to Transfer, ECF #125.)

- Ameridose has removed several cases, and opposed subsequent motions to remand, pursuant to 28 U.S.C. §§ 157(b)(5) and 1334. (*See* Ameridose, LLC's Amended Brief Opposing Plaintiffs' Motions to Remand, ECF #135.)

The only area of dispute regarding "related to" jurisdiction centers on a narrow group of cases within which the Devilli Plaintiffs do not fit.

Thus, the Devilli Plaintiffs' reference to the "extensive briefing" fails to demonstrate any basis to support the contention that this Court does not possess "related to" jurisdiction. To the contrary, the "extensive briefing" supports this Court's exercise of "related to" jurisdiction. The inclusion of claims against the owners of the NECC-related entities further undermines the Devilli Plaintiffs' argument. The owners are the discovery targets regardless of which entities are named as defendants. Excluding NECC while asserting claims against its owners does not make the case any less "related to" the NECC bankruptcy. The Devilli Plaintiffs, therefore, are taking the most extreme, narrow view of jurisdiction of anyone in this litigation, and have done so without citing any supporting authority.

B.  **Severing the Devilli Plaintiffs' Claims Against the Healthcare Defendants Will Undermine The Goals of this MDL.**

All parties to this litigation share at least one goal – the efficient administration of claims arising from NECC's manufacture of MPA. This ideal has been expressed repeatedly in all of the briefings and status conferences. The parties are seeking to achieve efficiency not only for practical purposes, but also to preserve as much money as possible for a potential

3

settlement.  With the exception of the narrow group of cases against only non-debtor defendants in state court, **which does not apply here**, the parties have agreed that the best way to achieve that efficiency is for this Court to oversee discovery.

The PSC and Creditor's Committee have gone one step further and agreed not to pursue discovery from NECC and the NECC-related entities while the Trustee works to gather funds for potential settlement.  At the May 15, 2013 Status Conference, counsel for the PSC stated:

> Now, with respect to the NECC and the NECC-affiliated entities and persons, there has become an understanding, which is that the trustee is in the process of trying to undertake what would be a resolution with all of those persons and entities to create a pot, which pot eventually would become subject to a bankruptcy plan and an allocation and a release. . . . [W]e, the PSC has said then we won't take any discovery, we won't racket up any bills with respect to those entities, we're not interested in doing it, you stay away from us, you don't take discovery with respect to us because you don't need any discovery from us, you're in the middle of a settlement right now, let's just leave that be as it is, and I'll see how things go.

(5/14/13 Status Conference Transcript ("5/14/13 Tr.") at 92:7-13, 92:25-93:6.)

Rather, the PSC has successfully sought to partially lift the discovery stay to enable it to conduct discovery "of persons or entities other than [NECC] and those persons and entities employed by, or, directly or indirectly, affiliated with [NECC] who may have some responsibility for the tort plaintiffs' injuries."  (PSC's Motion to Partially Lift Discovery Stay and Supporting Memorandum, ECF #101 and 102; Notes from 5/14/13 Status Conference, ECF #154.)  More specifically, the PSC intends to take discovery from vendors, clinics, medical service providers, and distributors not directly affiliated with NECC that had some role in providing patients with the MPA.  (*Id.*)  The PSC's purpose for conducting this discovery is to evaluate the plaintiffs' claims and facilitate in drafting a master complaint.  (*Id.*)  Even as to

this discovery, however, the PSC intends to proceed in a "judicious manner" so as not to end up depleting any wasting policies that these parties may have. (5/15/13 Tr. at 94:15-25.)

Contrary to the PSC, state court plaintiffs such as the Devilli Plaintiffs and Virginia Plaintiffs intend to get ahead of the PSC and Creditor's Committee and start conducting discovery on NECC-affiliated entities. Even the Virginia Plaintiffs, who did not assert claims against the NECC-affiliated entities, admitted that they intend to depose the owners of those entities:

> Now, so there's discovery. I mean, in reality, the discovery of whom the New England executives, the New England people who are on the hook. As we pointed out in our filings, those will be the shortest depositions. They should last about as long as the congressional hearings did, which is long enough for the plaintiff to say are you really going to plead the Fifth to every substantive question…

(5/14/13 Tr. at 49:1-8.)

Ameridose recognizes that what may be the plan of the Virginia Plaintiffs may not be the same as the Devilli Plaintiffs, but it is safer to assume it is so, especially since the Devilli Plaintiffs sued Ameridose, and one could reasonably conclude that they intend to take discovery from its owners. If the Devilli Plaintiffs did not intend to take discovery of NECC-related entities, they (a) would not have named them as parties; and/or (b) would be willing to stay in the MDL and participate in the Creditors' Committee and PSC's plan of judicious, targeted discovery. Moreover, naming the individual owners of NECC and the NECC-related entities demonstrates a clear intent to obtain discovery that is directly related to NECC.

That these depositions may be short in duration does not mean that they will not consume resources that could otherwise be preserved for potential resolution. Spending precious resources on these depositions would be particularly wasteful because they do not

serve to advance the ball in any of these cases but instead are designed to simply make headlines. Additionally, the focus on these "short" depositions ignores the time and expense likely to be associated with related written discovery.

The Devilli Plaintiffs' Motion to Sever cannot be considered in a vacuum. If this Court were to grant this motion, it would provide a roadmap for other plaintiffs to file similar motions, which will then introduce numerous inefficiencies into this litigation. In particular, as noted in the post-hearing briefing submitted by both the Trustee and Creditors' Committee, allowing the Devilli Plaintiffs (and what will likely be countless other plaintiffs) to proceed with claims against Healthcare Defendants in state court will, among other things:

- Force NECC-related entities to expend scarce resources in discovery in multiple forums;

- Subject NECC-related entities to the risk of inconsistent judgments and rulings in multiple forums;

- Prevent defendants in the MDL from entering a global release – which would provide the maximum settlement amount for the creditors – due to the uncertainty of the status of cases pending in numerous state courts;

- Result in indemnity and contribution claims that will rank equally (*pari pasu*) with claims of pre-existing creditors (i.e., injured plaintiffs in the MDL), thereby diminishing the value of claims held by injured plaintiffs; and

- Delay distributions to creditors from the estate because the Trustee cannot make distributions to creditors until he knows the dollar amount of the universe of claims, many of which will be in the middle of litigation in various state courts.

(*See* Post-Hearing Memorandum in Support of Chapter 11 Trustee's Motion to Transfer, ECF #155; Post-Hearing Memorandum of the Creditors' Committee in Support of Chapter 11 Trustee's Motion to Transfer, ECF # 156.)[1]

---

[1] Ameridose incorporates the Post-Hearing Memoranda of the Trustee and Creditors' Committee as if fully

Thus, severing the Devilli Plaintiffs' claims against the Healthcare Defendants will undermine the efficiency designed, and progress being made between the parties, in the MDL. Although Ameridose argued for severance as an option to perfect diversity jurisdiction in the event the Court does not find "related to" jurisdiction, for the reasons set forth above Ameridose intended severance to be an option of last resort. (5/14/13 Tr. at 112:13-21.) Where, as here, this Court has "related to" jurisdiction under 28 U.S.C. §1334(b), severing claims against the Healthcare Defendants is not the preferable way in which to manage these claims as it is far less efficient for the greatest number of parties.

## CONCLUSION

For the foregoing reasons, Defendant Ameridose, LLC respectfully request that the Court deny Plaintiff's Motion to Sever and Remand Claims Against Premier Orthopedic Associates Surgical Center LLC and Related Parties.

By:   /s/ Matthew P. Moriarty
      *Counsel for Defendant Ameridose, LLC*
      Matthew Moriarty (OH 0028389)
      Tucker Ellis LLP
      925 Euclid Avenue
      Suite 1150
      Cleveland, OH 44115-1414
      Tel:  216.592.5000
      Fax:  216.592.5009
      E-mail:  matthew.moriarty@tuckerellis.com

      And

---

rewritten herein.

/s/ Scott J. Tucker
Scott J. Tucker (BBO # 503940)
Tucker, Saltzman & Dyer, LLP
100 Franklin Street
Boston, MA 02110
Tel:    617.557.9696
Fax:    617.227.9191
E-mail:tucker@tsd-lawfirm.com
mantalos@tsd-lawfirm.com

Attorneys for Ameridose, LLC

**CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing has been filed with the Clerk of the Court on May 30, 2013 using the ECF system that sent notification of this filing to all ECF-registered counsel of record via e-mail generated by the Court's ECF system.

>/s/ Matthew P. Moriarty
>*Attorney for Defendant Ameridose, LLC*