## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                                                    )
                                                    )
IN RE:   NEW ENGLAND                                )        MDL No. 1:13-md-2419-FDS
COMPOUNDING PHARMACY, INC.                          )
PRODUCTS LIABILITY LITIGATION                       )
                                                    )
This Document Relates To:                           )
                                                    )
    All Cases                                       )
                                                    )
_____)


## CORRECTED MEMORANDUM AND ORDER ON TRUSTEE'S
## MOTION TO TRANSFER CASES AND RELATED MOTIONS


**SAYLOR, J.**

**I.      Introduction**

        This litigation involves claims for wrongful death and personal injury arising out of the

administration of an injectable steroid, methylprednisolone acetate ("MPA"), manufactured by

defendant New England Compounding Pharmacy, Inc. ("NECC").  The complaints allege, in

substance, that NECC produced contaminated MPA that led to serious fungal infections and, in

some instances, death.  As of May 6, 2013, the Centers for Disease Control and Prevention had

reported 53 deaths and 733 incidents of fungal infection across 20 states related to injections of

contaminated MPA manufactured by NECC since October 2012.

        Lawsuits alleging death or injury based on contaminated MPA have been filed in

multiple federal and state jurisdictions around the country, including the District of

Massachusetts, beginning in November 2012.  In February 2013, the Judicial Panel on

Multidistrict Litigation ("JPML") issued an order under 28 U.S.C. § 1407 transferring various federal-court proceedings to this Court for coordinated and consolidated pretrial proceedings. Subsequent orders of the JPML have transferred other "tag-along" cases to this Court. The matters transferred to this Court typically name additional defendants other than NECC, including certain of its officers and shareholders and certain affiliated corporations.

In the meantime, NECC filed for bankruptcy protection in December 2012.  A United States Trustee, Paul Moore, was subsequently appointed to administer the bankruptcy estate.

There are likely to be a large number of victim-claimants in this matter, and it appears undisputed that many of them have suffered death or serious personal injury as a result of the administration of contaminated MPA.  It also appears to be undisputed that the pool of available assets to pay claims is likely to be limited; NECC was a fairly small company with relatively few assets, although it appears that there are at least some insurance policies available to cover claims.  The trustee, and counsel representing parties in this litigation, essentially agree that it is highly desirable to maximize the resources available to victims and to keep expenditures reasonably low.  The trustee, and most counsel, also appear to agree that centralized management of the litigation and claim process is desirable to create the largest possible pool of funds for victims and to distribute those funds fairly, equitably, and with a minimum of expense and delay.

The trustee has moved to transfer *all* personal injury and wrongful death cases, wherever filed, to this Court, in order to facilitate that process and achieve that desirable end. The trustee thus seeks the transfer not only of all federal cases, but of all related state cases, regardless of the identity of the defendants.  In substance, the trustee contends that this Court can

2

exercise "related-to" jurisdiction over all such matters under 28 U.S.C. §§ 1334 and 157(b), and should transfer the matters to this District.

Consolidation of all NECC litigation in this Court is greatly complicated by the existence of the parallel state-court cases.  Some of those cases, particularly those filed after the bankruptcy petition and the automatic stay, name only local healthcare providers (such as pain clinics and individual physicians), and do not name NECC or any affiliates.  Some of those plaintiffs object to a centralized proceeding, preferring instead to proceed against those defendants in state court.  The trustee, however, contends that those cases could ultimately result in huge claims for contribution or indemnity against the bankruptcy estate, and that such claims could greatly affect or upset the fair administration of the estate, in particular preventing the treatment of all victims fairly and equitably.

Whether, and to what extent, this Court has the power to exercise jurisdiction over state-court litigation, and to transfer it to this District, raises complex and difficult issues of jurisdiction, abstention, and federal-state comity.  After careful consideration, and for the reasons set forth below, the trustee's motion to transfer personal injury tort and wrongful death cases will be granted in part and denied in part without prejudice to its renewal.  In substance, the Court will assert jurisdiction over, and transfer, all federal cases against NECC and its affiliates, and all state-court cases against NECC and its affiliates, including cases where the claims are third-party claims for contribution or indemnity.  The Court will not, however, transfer any state-court cases at this time that do not involve claims against NECC or its affiliates.  Any related motions, such as motions to remand or for mandatory abstention, will be treated in a consistent fashion.

II.    **Background**

NECC operated a compounding pharmacy in Framingham, Massachusetts, that combined

and mixed ingredients to create specific formulations of pharmaceutical products.  NECC was

owned and operated by a small group of officers and directors, many of whom were related.

NECC is affiliated with a number of other companies; it is unclear what, if any, role those

entities played in the events underlying this litigation.[1]

In fall 2012, health officials traced a number of cases of fungal meningitis to injections in

and around the patients' spinal cords (known as intrathecal administration) of MPA that had

been manufactured by NECC.  In response, NECC initiated a recall of several contaminated

batches of MPA.  As the scope of the problem became evident, NECC eventually surrendered its

pharmacy license and ceased production of all pharmaceutical products.

The first complaint against NECC in this Court alleging personal injury from

contaminated MPA was filed on November 2, 2012.  The complaint names NECC, two affiliated

entities, and various individual officers as defendants.  In the ensuing months, similar cases were

filed in this District, other federal districts, and in various state courts.  Most of those cases name

NECC, and affiliated entities or individuals, as defendants.  Some, however, name only the

healthcare providers who actually distributed or administered the MPA.

On December 21, 2012, NECC filed a petition under chapter 11 of the bankruptcy code.

Among other things, that triggered an automatic stay of proceedings against NECC pursuant to

---

[1] The individuals who have been named in cases before this Court due to their positions within NECC or affiliated entities include Barry J. Cadden, Lisa Conigliaro Cadden, Gregory Conigliaro, Douglas Conigliaro, Carla Conigliaro, and Glenn A. Chin.  As of the date of this order, the following entities have been alleged to be affiliated with NECC in cases before this Court:  Ameridose, LLC; Medical Sales Management, Inc.; Alaunus Pharmaceutical, LLC; GDC Properties Management, LLC; and GDC Holdings, Inc..

11 U.S.C. § 362(a).  Although filed as a chapter 11 petition, there is little, if any, likelihood that the company will resume operations.  As noted, the company appears to have relatively limited assets, other than insurance policies.  The company also, however, has no significant secured creditors.

On February 12, 2013, the JPML created an MDL proceeding and transferred all actions pending in federal court against NECC to this district for coordinated pretrial proceedings before this Court.  The JPML has since transferred multiple "tag-along" actions to this Court.

After the bankruptcy filing, certain plaintiffs filed state-court actions that did not name NECC as a defendant, presumably in order to avoid the operation of the automatic stay.[2]  Of particular note are 17 Virginia cases where a Virginia healthcare provider is now the sole defendant.  *See, e.g., Wingate v. Insight Health Corp.*, 2013 U.S. Dist. LEXIS 67358 (W.D. Va. May 10, 2013).  After the defendant in those actions attempted to have the cases removed to federal court, on May 10, 2013, Judge Wilson of the United States District Court for the Western District of Virginia remanded the cases to state court.  *See id.*

As the schedules attached to the trustee's motion acknowledge, there are now four different categories of cases based on personal injuries resulting from the administration of tainted MPA that are not yet before this Court as part of the MDL:  (1) cases pending in other federal courts that have not yet been transferred here; (2) cases pending in state courts where removal is in process; (3) cases pending in state courts that name NECC or affiliated entities as defendants; and (4) cases pending in state courts that do not name NECC or affiliated entities as

---

[2] Other state-court plaintiffs dismissed their claims against NECC after the bankruptcy filing.

defendants.[3]  The trustee's motion asks the Court to assert jurisdiction over cases in all four categories, whether or not the non-NECC-affiliated defendants have made claims for contribution or indemnity from NECC.  The Plaintiffs' Steering Committee ("PSC") appointed by the Court in the MDL proceeding agrees as to the first three categories of cases, but requests that the Court abstain from exercising jurisdiction over what it refers to as a "narrow subset" of cases in the fourth category—pending state-court cases that do not name NECC or affiliated entities as defendants—"where the sole articulated basis for 'related to' jurisdiction is a potential—but as yet unasserted—indemnification or contribution claims against NECP."  A small number of such state-court plaintiffs have filed oppositions to the trustee's motion, as well as their own motions requesting the Court to abstain from exercising jurisdiction over their cases.[4]

## III.   Analysis

The difficulties presented by the trustee's motion are significant and implicate a wide range of concerns.  Unfortunately, no solution can equally address all of these concerns, and each comes with its own troublesome set of questions.

If the Court were to decline to assert jurisdiction over the state-court cases, it might make

---

[3] Which court has jurisdiction over a case in which removal has not yet been perfected is not entirely settled.  Pursuant to 28 U.S.C. 1446(d) removal is effected after the defendant takes three procedural steps:  (1) filing a notice of removal in federal court, (2) filing notice of removal in state court, and (3) giving prompt written notice to all adverse parties.  *See* 14C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3736 (4th ed. 2009).  Some courts have held that after notice has been filed with the federal court, but before notice has been filed with the state court, both courts retain concurrent jurisdiction over the case until such notice is filed.  *Resolution Trust Corp. v. Nernberg*, 3 F.3d 62, 69 (3d Cir. 1993) ("The requirement of notice to the state court is an important part of the removal process and has been held necessary to terminate the state court's jurisdiction.") (citing *Stephens v. Portal Boat Co.*, 781 F.2d 481, 482 n.1 (5th Cir. 1986)).

[4] *See, e.g.,* Opposition filed by Roanoke Area Lichtenstein Fishwick Intervenors (Virginia); Opposition filed by Tracy Maccoux (Minnesota); Opposition filed by Chance Baker, Patrick Johnston, Ferman Wertz (Virginia); Opposition filed by Roanoke Gentry Locke Plaintiffs (Virginia);  Roanoke Gentry Locke Plaintiffs' Motion for Mandatory Abstention.

it difficult or impossible to resolve the entire litigation in an equitable or efficient manner.  Any cases that remain pending in state court could ultimately result in large judgments and corresponding claims for contribution or indemnity against the estate of NECC.  Pursuant to the bankruptcy code, such claims would normally have to be considered on equal footing with the claims of injured plaintiffs against the estate as claims of unsecured creditors.  Because all unsecured creditors are normally paid *pari passu* (that is, proportionally and without preference) based on the amount of their claims, even one large contribution or indemnity claim against the estate could greatly diminish, or virtually eliminate, the amount available to be paid to the remaining claimants.  *See* 11 U.S.C. § 1123(a)(4) (any reorganization plan must "provide the same treatment of each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest"); *In re Combustion Engineering, Inc.*, 391 F.3d 190, 239-42 (3d Cir. 2004) (reversing confirmation of a plan of reorganization which provided for disparate treatment of subcategories of personal injury claims); *In re Congoleum Corp.*, 2010 U.S. Dist. LEXIS 72431, 12-13 (D.N.J. July 19, 2010) (affirming bankruptcy court's finding that prejudgment personal injury claimants and breach of contract claimants were similarly situated and therefore must receive similar treatment under a plan of reorganization).  In addition, the threat of contingent contribution or indemnity claims becoming fixed after judgment or settlement of the MDL plaintiffs' claims would likely require the plan of reorganization to reserve specific funds.  *See* 11 U.S.C. § 502(e) and (j).

Furthermore, allowing some state-court cases to proceed without consolidation in the MDL creates the possibility of inconsistent rulings or judgments on factual or scientific issues that may greatly complicate the resolution of these matters.  And litigation in multiple courts also

threatens to impose significant discovery burdens, as discovery from many of the same people and entities may be sought on multiple occasions.

If, however, the Court were to assert jurisdiction over all the cases listed by the trustee—including state-court cases where no claims against NECC or its affiliates have yet been asserted—it would have to do so based on a very broad reading of federal subject-matter jurisdiction. As will be discussed, the boundaries of that jurisdiction are very far from clear, and it is therefore uncertain whether the Court even has the authority to act. Even if subject-matter jurisdiction exists, the Court must then consider issues of both mandatory and discretionary abstention. And assuming those hurdles are overcome, in order to effect a transfer of state cases, the Court might be required to enjoin state-court proceedings—a highly disfavored judicial remedy, the use of which is explicitly restricted by the Anti-Injunction Act, 28 U.S.C. § 2283.

Under the circumstances, the Court has concluded that a somewhat cautious approach is appropriate. In substance, the Court will grant the motion to transfer (1) any case pending in federal court against NECC or any affiliated entity or individual, (2) any such case that is in the process of removal to federal court, and (3) any case pending in any state court in which a party has made a claim against NECC or any affiliated entity or individual, including third-party claims for contribution or indemnity. However, as to state-court proceedings not naming NECC or any affiliated entity or individual, the motion will be denied without prejudice to its renewal.

### A.   Cases Against NECC Affiliates Only

The Court must first determine whether it has subject-matter jurisdiction over cases filed by plaintiffs against NECC affiliates but not against NECC. As noted, such cases are pending in both federal and state courts.

According to the trustee, NECC has express contractual indemnification obligations to many of the affiliated defendants, including, but not limited to, Barry Cadden, Greg Conigliaro, Lisa Conigliaro, Carla Conigliaro, Glenn Chin, GDC, and MSM.  The individual defendants are also additional insureds under at least one of NECC's insurance policies.

The trustee contends that cases against affiliated entities and individuals are subject to the Court's bankruptcy jurisdiction under 28 U.S.C. § 1334.  Section 1334 provides district courts with original, but not exclusive, jurisdiction over "all civil proceedings arising under title 11, or arising in or *related to* cases under title 11."  28 U.S.C. § 1334 (emphasis added).  As discussed below, courts have held that related-to jurisdiction exists over cases against non-debtor defendants whom the debtor has an automatic obligation to indemnify or defend.  *See, e.g., Cambridge Place Inv. Mgmt. v. Morgan Stanley & Co.*, 2010 U.S. Dist. LEXIS 142954 (D. Mass. 2010); *City of Ann Arbor Empls. Ret. Sys. v. Citigroup Mortg. Loan Trust Inc.*, 572 F. Supp. 2d 314 (E.D.N.Y. 2008); *In Re Brentano's*, Inc., 27 Bankr. 90 (S.D.N.Y. 1983).  The trustee has asserted (and no party has disputed) that NECC owes such an obligation to the affiliated entities and individual defendants.  Indeed, no party appears to dispute the Court's power to assert subject-matter jurisdiction over cases naming any NECC-affiliated entity or individual as a defendant.

Accordingly, the Court has subject-matter jurisdiction over any cases pending in federal or state court against entities or individuals affiliated with NECC, whether or not NECC is named as a defendant.

B.        **Motion to Transfer – Federal Cases**

The potential transfer of cases presently pending in other federal courts, and those now

pending in state courts where removal is in process, does not appear to present any significant

jurisdictional or venue-related issues.  Indeed, no party has opposed the transfer of these

categories of cases, and the JPML's initial transfer order establishing the MDL specifically

contemplates the transfer of such "tag-along" actions pending in various district courts.

Since the date of the initial transfer order, the JPML has transferred to this Court more

than 100 "tag-along" cases that had been pending in other federal district courts.  The Court has

no reason to believe that any federal cases that are the subject of the trustee's transfer motion

will not receive similar treatment from the JPML and be transferred to this Court in due course.

However, should the situation arise that a case pending in federal court, over which this Court

could properly exercise related-to jurisdiction, is not transferred by an order of the JPML, this

Court will presumably act to assert jurisdiction over it.  Until the Court is made aware of such a

situation, it will simply await the JPML's transfer orders for any cases now pending in other

federal courts or that are in the process of being removed.

C.        **Motion to Transfer – State Cases**

The more difficult set of issues concerns the potential transfer of the state-court cases in

which no NECC affiliate is named as a defendant, or in which an NECC affiliate is named only

as a third-party defendant in a claim for contribution or indemnity.

1.        **Subject-Matter Jurisdiction**

The Court must first determine whether it has subject-matter jurisdiction over the cases

that the trustee seeks to have transferred here.  If the Court lacks subject-matter jurisdiction over

10

*any* case, it cannot constitutionally adjudicate that case, regardless of the practical considerations or efficiency benefits.

### a.    28 U.S.C. § 157(b)(5)

The trustee has cited 28 U.S.C. § 157(b)(5) as the primary basis for the authority to transfer the state-court personal injury and wrongful death actions to this Court.  Section 157(b)(5) provides as follows:

> The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

28 U.S.C. § 157(b)(5).

The trustee's reliance on this provision as the basis for subject-matter jurisdiction is misguided.  The Supreme Court recently held that "§ 157(b)(5) is not jurisdictional," but rather a venue provision.  *See Stern v. Marshall*, 131 S. Ct. 2594, 2606 (2011).  In reaching that conclusion, the Supreme Court reasoned as follows:

> Section 157(b)(5) does not have the hallmarks of a jurisdictional decree. To begin, the statutory text does not refer to either district court or bankruptcy court 'jurisdiction,' instead addressing only where personal injury tort claims 'shall be tried.'

> The statutory context also belies [the] jurisdictional claim. Section 157 allocates the authority to enter final judgment between the bankruptcy court and the district court. *See* §§ 157(b)(1), (c)(1).   That allocation does not implicate questions of subject matter jurisdiction.  *See* § 157(c)(2) (parties may consent to entry of final judgment by bankruptcy judge in non-core case).  By the same token, § 157(b)(5) simply specifies where a particular category of cases should be tried.

*Id.* at 2607.

Accordingly, this provision does not confer any additional jurisdiction on the district courts, and thus the Court must find an alternative basis for the assertion of subject-matter

jurisdiction if it is to order the transfer of any state-court cases to this Court.[5]

### b.    28 U.S.C. § 1334

If § 157(b)(5) cannot itself provide the basis for federal jurisdiction over the state-court

cases, the Court must look elsewhere for a statutory grant of jurisdiction.  As the parties

acknowledge, jurisdiction over the vast majority of these cases depends on the Court's

interpretation of its bankruptcy jurisdiction under 28 U.S.C. § 1334.

Section 1334 provides district courts with original, but not exclusive, jurisdiction over

"all civil proceedings arising under title 11, or arising in or *related to* cases under title 11."  28

U.S.C. § 1334.  The scope of related-to jurisdiction is "quite broad."  *In re Boston Reg'l Med.*

*Ctr.*, 410 F.3d 100, 105 (1st Cir. 2005).  "[A] civil proceeding is related to bankruptcy [if] the

outcome of that proceeding could conceivably have any effect on the [bankruptcy] estate."  *In re*

*G.S.F. Corp.*, 938 F.2d 1467, 1475 (1st Cir. 1991) (internal quotations omitted), *overruled on*

*other grounds by Connecticut Nat'l Bank v. Germain*, 503 U.S. 249 (1992); *Pacor, Inc. v.*

*Higgins*, 743 F.2d 984 (3d Cir. 1984), *overruled on other grounds by Things Remembered v.*

*Petrarca*, 516 U.S. 124 (1995); *TD Bank, N.A. v. Sewall*, 419 B.R. 103, 105-06 (D. Me. 2009);

*In re Twinlabs Personal Injury Cases,*  2004 WL 435083, 1 (S.D.N.Y. 2004) ("The standard for

'related to' jurisdiction over a suit in the posture of [an action against non-debtor third parties] is

"whether its outcome might have any 'conceivable effect' on the bankrupt estate." (quoting

---

[5] To be clear, transfer of the federal cases that are currently before the Court (whether filed here or transferred under the JPML) is squarely addressed by § 157(b)(5).  Section 157(b)(5) states that "personal injury tort and wrongful death claims" are to be tried by a federal district court either in the district where the claim arose or the district where the bankruptcy case is pending, giving the district court in the district where the bankruptcy case is pending discretion to choose between the two venue options.  NECC filed for bankruptcy in the District of Massachusetts, which gives this Court the discretion under § 157(b)(5) to determine the appropriate venue for personal injury and wrongful death cases pending in the federal courts related to contaminated MPA manufactured and/or sold by NECC or its affiliates.

*Cuyahoga Equip. Corp. v. Publicker Indus. Inc.*, 980 F.2d 110, 114 (2d Cir.1992))).[6]

Such jurisdiction is not unlimited, however.  There must be some nexus between the "related" proceeding and the bankruptcy case, such that "the outcome of the litigation potentially could have some effect on the bankruptcy estate, such as altering debtor's rights, liabilities, options, or freedom of action, or otherwise have an impact upon the handling and administration of the bankrupt estate."  *In re Boston Reg'l*, 410 F.3d at 105 (internal citations and textual alterations omitted); *see Pacor*, 743 F.2d at 994.

As noted, there are two general categories of state-court cases that are the subject of the trustee's motion:  those that name NECC or affiliated entities as defendants, and those that do not.  It is undisputed that the Court has related-to jurisdiction over cases in the former category.  The outcome of such suits against the debtor and its affiliates certainly "could have some effect on the bankruptcy estate."  *In re Boston Reg'l*, 410 F.3d at 105 (internal citations and textual alterations omitted).

The more difficult question is whether the Court has related-to jurisdiction over cases currently pending in state court that do *not* name NECC or affiliated entities as defendants, but rather name *only* third-parties (such as physicians or pain clinics), or in which NECC affiliates are named only in third-party claims for contribution or indemnity.

In *Pacor*, the Third Circuit held that related-to jurisdiction did not exist over a suit by an employee against a distributor of asbestos, even though the employee's success in that suit

---

[6] The First Circuit, along with most other circuits, has adopted the standard set forth in *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984).  *See, e.g.*, *In Re Boston Reg'l*, 410 F.3d at 105 (citing *Pacor*); *In re G.S.F. Corp.*, 938 F.2d at 1475 (same); *In re Santa Clara Cnty. Child Care Consortium*, 223 B.R. 40, 45 n.8 (1st Cir. B.A.P. 1998) (collecting cases); *see also Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.6 ("The First, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth, and Eleventh Circuits have adopted the *Pacor* test with little or no variation.").

would likely cause the distributor to seek indemnification from the debtor, an asbestos manufacturer. *Pacor*, 743 F.2d at 986. The court concluded that the action was, at best, a "mere precursor to the potential third party claim for indemnification by [the distributor] against [the manufacturer]." *Id.* at 995. The court contrasted these facts with those in *In re Brentano's, Inc.*, 27 B.R. 90 (Bankr. S.D.N.Y. 1983), where the debtor's landlord sued the guarantor of the debtor's lease. *Pacor*, 743 F.2d at 995. Because the debtor had agreed to indemnify the guarantor, any recovery against the guarantor would result in automatic liability to the estate, creating related-to jurisdiction. *Id.* In contrast, the employee in *Pacor* was not a creditor of the asbestos manufacturer, and "[a]ny judgment obtained would thus have no effect on the arrangement, standing, or priorities of [the asbestos manufacturer's] creditors." *Id.* at 995-96.

Applying *Pacor*, courts have held that related-to jurisdiction exists over suits by tort plaintiffs, who are potential creditors, against non-debtor third-party defendants in only limited circumstances. One such situation is when a judgment against the third party would automatically convert that third party into a creditor due to an existing contribution or indemnity obligation. *See, e.g., Cambridge Place Inv. Mgmt. v. Morgan Stanley & Co.*, 2010 U.S. Dist. LEXIS 142954 (D. Mass. 2010); *City of Ann Arbor Empls. Ret. Sys. v. Citigroup Mortg. Loan Trust Inc.*, 572 F. Supp. 2d 314 (E.D.N.Y. 2008); *In Re Brentano's*, Inc., 27 Bankr. 90 (S.D.N.Y. 1983).[7]

It remains an open question of law, at least in the First Circuit, whether there is related-to

---

[7] Another situation is when recovery under an action by a creditor against a third party could reduce the amount that the creditor can claim from the estate directly. *See, e.g., TD Bank, N.A. v. Sewall*, 419 B.R. 103 (D. Me. 2009); *In re Baptist Foundation of Arizona*, 2000 WL 35575676, at *1 (D. Ariz. June 30, 2000); *In re Curran*, 157 B.R. 500 (Bankr. D. Mass. 1993). None of the cases that the trustee seeks to have transferred to this Court present that situation.

jurisdiction over a case against a non-debtor, third-party defendant who has a *potential* (as opposed to an actual) claim for contribution or indemnity against the debtor.  *See Cambridge Place*, 2010 U.S. Dist. LEXIS 142954 (noting that "[t]he First Circuit has not yet addressed the appropriate standard to be applied in evaluating whether contractual indemnification obligations give rise to 'related to' bankruptcy jurisdiction."); *see also In re Santa Clara County Care Consortium*, 223 B.R. 40 (B.A.P. 1st Cir. 1998) ("[T]he determination of whether a removed state court proceeding is sufficiently related to a debtor's bankruptcy to confer subject matter jurisdiction is complicated by what appears to be contradictory opinions.").

The Third Circuit, in a line of cases after *Pacor*, has clarified its view that related-to jurisdiction does not exist over a case against a non-debtor defendant if another lawsuit would be necessary before the bankruptcy estate would be impacted.  *See, e.g., In re W.R. Grace & Co.*, 591 F.3d 164, 169 (3d Cir. 2009) (finding no related-to jurisdiction where there would first have to be a finding in the state-court action and then a separate suit to pursue a claim for indemnification before there could be any impact on the bankruptcy estate); *In re Combustion Eng'g*, 391 F.3d 190, 231-32 (3d Cir. 2004) ("[A]ny indemnification claims against Combustion Engineering . . . would require the intervention of another lawsuit to affect the bankruptcy estate, and thus cannot provide a basis for 'related to' jurisdiction."); *In re Federal-Mogul Global, Inc.*, 300 F.3d 368, 382 (3d Cir. 2002) ("The test articulated in *Pacor* for whether a lawsuit could 'conceivably' have an effect on the bankruptcy proceeding inquires whether the allegedly related lawsuit would affect the bankruptcy proceeding without the intervention of yet another lawsuit.").

The Fifth Circuit, taking a slightly more expansive view of related-to jurisdiction, has

15

emphasized the difference between "tort contribution" principles and "contractual indemnification rights," asserting jurisdiction over a case based on the latter. *Lone Star Fund V (US), LP v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. Tex. 2010).  At least one bankruptcy court in this circuit has adopted a similar requirement for related-to jurisdiction—that the debtor have "an unconditional duty to indemnify" the third-party defendant. *TD Bank, N.A. v. Sewall*, 419 B.R. 103, 106 (D. Me. 2009) (explaining the basis and rationale for this rule).

The Fourth Circuit, in *A.H. Robins Co. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986), has read *Pacor* to establish a distinction between a potential claim for contribution from a third-party defendant and a contractual duty to indemnify that defendant. *Id.* at 1001 ("The clear implication of the [*Pacor*] decision is that, if there had been a contract to indemnify, a contrary result would have been in order.").  Although the court ultimately remanded for a hearing on the motion to transfer in that case, citing due process concerns, it clearly intimated that related-to jurisdiction over the claims against non-debtor defendants could exist under § 1334.  *See id.* at 1016, 999-1001 (affirming the district court's extension of the mandatory stay to suits against non-debtor defendants based in part on the court's interpretation of related-to jurisdiction).

The Sixth Circuit, in *In re Dow Corning Corp.*, 86 F.3d 482 (6th Cir. 1996), took a more pragmatic approach to related-to jurisdiction, asserting jurisdiction over thousands of claims against non-debtor defendants.  In doing so, the court distinguished the potential impact on the estate of the large number of cases before it from that of the single allegedly related suit involved in *Pacor*; noting that "[a] single possible claim for indemnification or contribution simply does not represent the same kind of threat to a debtor's reorganization plan as that posed by the

16

thousands of potential indemnification claims at issue here." *Dow Corning*, 86 F.3d at 494.

The court in *In re Twinlabs Personal Injury Cases*,  2004 WL 435083, 1 (S.D.N.Y. 2004), cited that decision, and took a similar approach, in asserting jurisdiction over personal injury cases against non-debtor defendants.  The personal-injury cases at issue were all based on products-liability claims surrounding the manufacture and sale of the diet pill ephedra. Twinlabs, the manufacturer at issue, filed for bankruptcy.  In a brief opinion granting the debtor's motion to transfer a state court case against retailers of ephedra, Judge Rakoff noted that "the retailer defendants . . . will undoubtedly seek indemnity from the Debtors following any judgments against them.   Accordingly, from many perspectives, the . . . action against the retailers will have more than a 'conceivable effect' on the bankrupt estate of the Debtors."  *Id.*[8]

The situation presented here implicates many of the same concerns that motivated the Sixth Circuit's decision to assert jurisdiction over the claims against non-debtor defendants in *Dow Corning*.  Although *Dow Corning* did not distinguish between state-court cases against third-party defendants who had already asserted claims against the debtor and cases against those who merely "intend[ed] to file claims for contribution and indemnification," that may be a relevant, indeed important, distinction.  *See* 86 F.3d at 494; *In re Santa Clara*, 223 B.R. at 49 (finding "an insufficient nexus to confer 'related to' subject matter jurisdiction on the bankruptcy court, in state court actions involving non-debtor parties, which *may result in contribution/substitution of creditors without a change in the classification of a claim as it relates to the debtor*.") (emphasis added).

In any event, the issue of subject-matter jurisdiction is far from clear, and there appears

---

[8] The court in *Twinlabs* did not discuss the jurisdictional issues in any greater depth.

to be no controlling authority.  Unfortunately, the consequences of an incorrect judgment may be very substantial indeed; if the Court does not have subject-matter jurisdiction over a matter, any action it may undertake in that matter will be entirely void.  Under the circumstances, the Court will take a two-step approach.

First, the Court concludes that it has related-to subject-matter jurisdiction under § 1334 over any state-court case in which any plaintiff has asserted a claim, or any defendant has asserted a claim for contribution or indemnity, against NECC or any affiliated entity or individual.  Such a claim could clearly have an effect, indeed a substantial effect, on the bankruptcy estate.

However, as to state-court cases in which a claim against NECC or an affiliated entity or individual is possible, but has not yet been asserted, the Court will assume the existence of subject-matter jurisdiction, but will abstain from exercising any such jurisdiction.  The factors governing the exercise of discretionary abstention, and the reasoning of the Court, are addressed below.

The transfer of some, but not all, state-court cases might be something of a pointless exercise if the possibility remains that a state-court defendant could make a future claim in the bankruptcy case for contribution or indemnity, upsetting the effort to make an equitable distribution to the victims and other creditors.  Indeed, that is the essential basis of the trustee's motion:  that the Court *must* transfer *all* state-court cases to foreclose that very possibility.

The Court is not convinced, at least at this stage, that such a step is necessary.  Other possible courses of action might produce the desired consolidation and finality, without resolving difficult issues of jurisdiction and abstention and without intruding unnecessarily into

the proceedings of state courts.  For example, if the Bankruptcy Court were to set a relatively

early bar date for the filing of claims against the estate, it would appear that any defendant in a

state-court action would be effectively forced to decide whether it wanted to file a claim for

contribution or indemnity against the estate.  Such a claim, in turn, would probably permit the

exercise of federal jurisdiction over the underlying matter.   Any defendant who did not file a

claim would be barred, and the state-court case could proceed to judgment without interference

from the federal court.  Either way, the desired goals would be achieved with a relatively

minimal degree of risk or intrusion.

In any event, the Court does not need to reach the issue at this juncture.  If the balance of

factors shifts over time, the Court can revisit the issue, and if necessary (and appropriate) can

issue further orders concerning the exercise of related-to jurisdiction.

### 2.      Abstention

If this Court has subject-matter jurisdiction over cases now pending in state courts, the

question arises whether it should abstain from asserting such jurisdiction, either pursuant to the

mandatory abstention provisions of § 1334(c)(2), or the discretionary abstention provisions of

§ 1334(c)(1).[9]

### a.      Mandatory Abstention Under § 1334(c)(2)

Section 1334(c)(2) requires district courts to abstain from asserting related-to jurisdiction

over state-law claims in certain circumstances.  The statute provides as follows:

Upon timely motion of a party in a proceeding based upon a State law claim or State law
cause of action, related to a case under title 11 but not arising under title 11 or arising in a

---

[9] Certain Virginia state-court plaintiffs have likewise moved to compel the Court to abstain from
transferring their specific cases pursuant to § 1334(c)(2).

case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2).[10]

Section 1334(c)(2) must be read in conjunction with 28 U.S.C. § 157(b)(4), which states that "[n]on-core proceedings under section 157(b)(2)(B) . . . shall not be subject to the mandatory abstention provisions of section 1334(c)(2)." And § 157(b)(2), in turn, provides that "the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims *against the estate* for purposes of distribution in a case under title 11" are non-core claims. 28 U.S.C. § 157(b)(2)(B) (emphasis added).

A strict textual reading of the statutes may lead to the conclusion that personal injury and wrongful death claims asserted against non-debtor third parties (for example, against various healthcare providers), and not against the bankruptcy estate, are subject to the mandatory abstention provisions of § 1334(c)(2). This is the reading afforded the statutory language by Judge Wilson in *Wingate*. 2013 U.S. Dist. LEXIS 67358.

Other district courts, however, have extended the exception of § 157(b)(4) from mandatory abstention to claims against non-debtor third-parties where indemnification

---

[10] This provision has been read to establish five criteria that must be present to trigger mandatory abstention: (1) a timely motion requesting abstention; (2) an essentially state-law cause of action; (3) a non-core proceeding—one that is only "related to" the bankruptcy case; (4) a lack of federal jurisdiction absent the existence of the bankruptcy case; and (5) an ongoing state-court proceeding that be timely adjudicated. *In re Southmark Corp.*, 163 F.3d 925, 929 n. 2 (5th Cir. 1999). There is some dispute as to whether the state-court proceeding must have already been commenced at the time of the bankruptcy filing for mandatory abstention to apply. *Compare In re Container Transport, Inc.*, 86 B.R. 804, 805 (E.D.Pa.1988) ("Consistent with all known authority and our proclivity to exercise our jurisdiction over matters related to our bankruptcy cases to expedite their disposition, we hold that the presence of a state court action is a necessary condition to invoke 28 U.S.C. § 1334(c)(2).") with *Langston Law Firm v. Mississippi*, 410 B.R. 150, 155 (S.D.N.Y. 2008) ("The language of § 1334(c)(2)—that an 'action is commenced . . . in a State forum'—does not on its face require the commencement of the state action prior to the bankruptcy action.").

agreements existed between those third-parties and the debtor.  *See Abbatiello v. Monsanto,* 2007

WL 747804, 3 (S.D.N.Y. March 8, 2007) ("the exception to mandatory abstention also applies to

litigation against [third-party defendants], because [debtor] is obligated to indemnify [third-party

defendants] for any judgment awarded against them."); *Berry v. Pharmacia Corp.,* 316 B.R. 883

(S.D. Miss. 2004) ("[G]iven the nature of the relationship and degree of identity between the

debtor [and the third-party defendant], the rationale for exempting personal injury and wrongful

death claims against the debtor's estate from the mandatory abstention provision applies fully to

the claims against [third-party defendant].  Under the terms of the Distribution Agreement,

[third-party defendant] claims a right to absolute indemnity from [debtor] for any judgment that

might be rendered against it, so that a judgment against [third-party defendant] is, in practical

effect, a judgment against [third-party defendant].").

Judge Wilson acknowledged these cases and their reasoning, but found that no such

indemnification agreement existed between NECC and the third-party defendant.  He therefore

concluded that the mandatory abstention provision of § 1334(c)(2) required that the matter be

remanded to state court.  *See Wingate*, 2013 U.S. Dist. LEXIS 67358.

The trustee argues that Judge Wilson ignored Congress's motivation for crafting an

exception from mandatory abstention for personal injury and wrongful death claims and

interpreted the statute too narrowly.  That motivation has been aptly summarized as follows:

> In short, Congress, recognizing that the unpredictable and substantial verdicts that are
> often produced in personal injury tort and wrongful death claims could have potentially
> deleterious effects on a debtor's estate—particularly when, because of the automatic stay
> provisions of the Bankruptcy Code, a debtor-defendant may not have participated in the
> underlying trial—concluded that, in non-core proceedings such as the one at bar, the
> mandatory abstention provision of § 1334(c)(2) should not apply.

*Beck v. Victor Equipment Co., Inc.,* 277 B.R. 179, 180 -181 (S.D.N.Y. 2002) (Rakoff, J.).

Those same concerns are present here.  Even in the absence of contractual indemnity agreements, the third-party defendants in the pending state-court actions may have claims for contribution or common-law indemnity from NECC in the event that they are found liable in state court.  Those potential state-court verdicts pose the type of threat Congress had in mind when it crafted the exception to § 1334(c)(2)—they can be "unpredictable and substantial" and even being required to contribute to their satisfaction "could have potentially deleterious effects on a debtor's estate." *Beck,* 277 B.R. at 180 -181.  This is particularly true in circumstances such as this, where the cause of action arises out of an allegedly defective product manufactured by the debtor.  In many, if not all, jurisdictions, under ordinary circumstances, the debtor would be strictly liable for the harm caused by the defective product, even if there may have been a third-party interposed between the debtor and the tort claimant in the supply chain.  *See, e.g., Brown v. Superior Court*, 751 P.2d 470, 482-483 (Cal. 1988) (finding that, "in accord with almost all our sister states that have considered the issue . . . a manufacturer is not strictly liable for [side effects] caused by a prescription drug so long as the drug was properly prepared and accompanied by warnings of its dangerous propensities. . . . [However, a manufacturer is] subject to liability for manufacturing defects"); *Ayyash v. Henry Ford Health Sys.*, 210 Mich. App. 142, 147 (Mich. Ct. App. 1995) ("'the essence of the relationship' between the hospital and the patient and the physician and the patient is the provision of a service, not the sale of a product, and, therefore, products liability theories [are] inapplicable. . . .  Further, whereas imposing strict liability on manufacturers arguably may promote greater care in manufacturing safer products, imposing strict liability on hospitals and physicians would not.").

The Court must interpret the statutory language in the context of those practicalities.  The

22

phrase "personal injury tort or wrongful death claims against the estate," as used in §

157(b)(2)(B), can fairly be read to encompass not only personal injury and wrongful death

claims, but also claims for contribution or indemnity that derive from personal injury or

wrongful death claims.  Contribution or indemnity claims are simply procedural vehicles for

asserting liability against the estate for some underlying harm.  If the underlying harm giving rise

to the estate's potential liability involves personal injury or wrongful death, the claim against a

third-party concerning that harm is, in substance, a "personal injury tort or wrongful death claim

against the estate" and therefore covered by the exception in § 157(b)(2)(B).  This reading is

more congruent with Congress's motivation in crafting the exception to mandatory abstention.

A narrower reading would create a potentially gaping loophole in the carefully crafted system for

the orderly administration of bankruptcy estates.  Section 157(b)(2)(B), therefore, provides an

exception from mandatory abstention for personal injury and wrongful death claims against non-

debtor third-parties for contribution or indemnification.

Accordingly, this Court finds that the mandatory abstention provision of § 1334(c)(2)

does not apply to any of the state-court cases at issue.

### b.  Discretionary Abstention Under § 1334(c)(1)

In circumstances where § 1334(c)(2) does not strictly require abstention, § 1334(c)(1)

nonetheless gives district courts discretion to abstain from asserting related-to jurisdiction over

state-law claims.  The statute provides as follows:

> Except with respect to a case under chapter 15 of title 11, nothing in this section prevents
> a district court in the interest of justice, or in the interest of comity with State courts or
> respect for State law, from abstaining from hearing a particular proceeding arising under
> title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1).

Courts have articulated twelve factors that should be considered when deciding whether

or not to abstain under § 1334(c)(1).  Those factors are as follows:

(1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention;
(2) the extent to which state law issues predominate over bankruptcy issues;
(3) the difficulty or unsettled nature of the applicable state law;
(4) the presence of a related proceeding commenced in state court or other nonbankruptcy court;
(5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334;
(6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;
(7) the substance rather than form of an asserted "core" proceeding;
(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;
(9) the burden [on] the court's docket;
(10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;
(11) the existence of a right to a jury trial; and
(12) the presence in the proceeding of nondebtor parties.

*In re Twin Laboratories, Inc.,* 300 B.R. 836, 841 (S.D.N.Y. 2003).

Here, the Court finds that the balance of those factors weighs against discretionary

abstention, except as those cases pending in state courts that do not involve any claims against

NECC-affiliated entities or individuals.

As noted, the most efficient use of the limited resources of the judicial system, and the

fairest and most efficient distribution of the assets of the estate, would be for all of the related

cases to be consolidated in one court.  Abstention would be counterproductive to that end.  In

addition, the state-law claims in the cases at issue are primarily based on well-settled principles

of tort and product liability; a federal court could likely adjudicate them without being required

to decide unresolved issues of state law.  This is especially true considering the currently limited

scope of the consolidation to pre-trial matters.

Furthermore, the bankruptcy here is somewhat unusual.  The debtor, NECC, had relatively few assets and no secured creditors of any significance.  As a result, the primary focus of the plan will likely be satisfying, to the maximum extent possible, the unsecured claims of injured plaintiffs for damages and possibly of third parties for contribution or indemnity.  Thus, decisions on factual and legal issues as to liability and damages in all of the state-court cases will likely have tremendous import on the bankruptcy proceedings and the reorganization plan.  This is particularly true—indeed, determinative—with respect to cases against third-party defendants who have already asserted their own claims against NECC.

However, a number of factors suggest that abstention is warranted as to some of the cases that the trustee is seeking to have transferred.  The issues that will decide the debtor's liabilities and the validity of claims against the estate primarily involve state law.  State-court plaintiffs, as well as the states themselves, certainly have a strong interest in having state-law claims adjudicated by the state-court system.  Most importantly, the basis for asserting jurisdiction over the state-court cases at issue is confined entirely to § 1334, and that jurisdiction is unclear at best.  The potential harm to federal-state comity is potentially at its greatest where the basis for federal jurisdiction is uncertain.

In light of these considerations, the Court will exercise its discretion and abstain from asserting jurisdiction—again, assuming that it exists—over those cases currently pending in state courts involving only state-law claims against defendants other than NECC and its affiliates, and where there is no third-party claim for contribution or indemnity.  The Court may, in the future, assert jurisdiction over any such case should the third-party defendant actually assert such a claim, but it will refrain from deciding that issue at this time.

3.      **Anti-Injunction Act**

The parties acknowledge that the assertion of jurisdiction by this Court over cases pending in state court cases could, under some circumstances, require the issuance of injunctions staying proceedings or otherwise mandating the transfer of state cases.  The Anti-Injunction Act provides that a federal court "may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  28 U.S.C. § 2283.

The trustee contends that enjoining the state-court proceedings against third-party non-debtor defendants would not run afoul of the Anti-Injunction Act because the granting of such an injunction would be "necessary in aid of [the Court's] jurisdiction."  § 2283.  The Supreme Court has interpreted this exception to the rule as follows:

> [w]hile this language is admittedly broad, we conclude that it implies something similar to the concept of injunctions to "protect or effectuate" judgments. Both exceptions to the general prohibition of § 2283 imply that some federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case.

*Atlantic C. L. R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 295 (1970).

The trustee also points to the All Writs Act, 28 U.S.C. § 1651, as well as a few MDL cases from other circuits where injunctions in aid of jurisdiction were upheld.  *See, e.g., Newby v. Enron Corp.*, 302 F.3d 295, 300 (5th Cir. 2002).

It may well be the case that this Court could be forced to issue injunctive relief in aid of its related-to jurisdiction in order to effectuate the necessary transfers.  But even assuming that the Court has the power to issue an injunction in aid of jurisdiction, it is not immediately apparent such an action is necessary or appropriate at this stage.  Such an injunction is something

of a weapon of last resort, and the Court will not lightly undertake to employ it, particularly when other alternatives may be available.  For example, in *Twinlabs*, Judge Rakoff simply directed "[c]ounsel for the Debtors . . . to distribute copies of [his order granting the motion to transfer] to all affected counsel within two business days hereof and to work with them to arrange the expeditious transfer of the *Acuff* case to this Court."  *In re Twinlabs*,  2004 WL 435083 at 2.  Rather than reach a final decision as to the issue at this stage, the Court will in the first instance work with counsel and ascertain if less drastic measures will achieve the desired goal.

### 4.     Conclusion

For the foregoing reasons, the Court will grant the trustee's motion to transfer as to (1) those cases against NECC or any affiliated entity or individual pending in federal courts, (2) those cases against NECC or any affiliated entity or individual in the process of being removed from state court, and (3) those cases pending in state courts in which any party has asserted a claim (including a claim for contribution or indemnity) against NECC or any affiliated entity or individual.[11]  The Court will deny the trustee's motion as to those cases pending in state courts in which a claim against NECC or an affiliated entity or individual is possible, but has not yet been asserted, without prejudice to its renewal.  The precise mechanics of effectuating the transfer of cases pursuant to this memorandum and order, including the form of any further order that may be required, will be determined at a later time.

---

[11] The Court assumes, without deciding, that a claim for contribution or indemnity filed in the bankruptcy action would render the underlying state-court action subject to this Court's jurisdiction.

### B.    <u>Motions to Withdraw Reference</u>

Defendants Ameridose and GDC have filed motions to withdraw the reference of certain personal injury and wrongful death cases from the Bankruptcy Court to this Court.  All parties before this Court, except the plaintiffs in those specific actions, support the motions to withdraw.

The relevant statute, 28 U.S.C. § 157(d), provides that "[t]he district court may withdraw, in whole or in part, any case or proceeding referred under this section . . . on timely motion of any party, for cause shown."  *See United States v. Kaplan*, 146 Bankr. Rptr. 500, 503 (D. Mass. 1992) (motion is timely if made as promptly as possible in light of the developments in the bankruptcy proceeding or at the first reasonable opportunity).

Consolidation before this Court offers the same practical benefits for these few isolated cases pending before the Bankruptcy Court as it does for all of the other cases that were the subject of the trustee's motion to transfer.  However, simply withdrawing the reference to the Bankruptcy Court presents none of the complicated jurisdictional questions discussed at length above.  Instead, this Court undoubtedly has related-to jurisdiction over these matters and the discretion to withdraw the reference from the Bankruptcy Court upon a showing of good cause.  This Court finds that the benefits of consolidation with the hundreds of other personal injury and wrongful death cases currently before it constitutes the requisite good cause for withdrawal.

Accordingly, the Court will withdraw the reference of all adversary proceedings against NECC and affiliated entities involving personal injury and wrongful death claims from the Bankruptcy Court.

C.     **Motions to Remand in New Jersey Cases**

Plaintiffs in certain New Jersey actions that have been consolidated before this Court pursuant to the JPML's transfer order have recently moved for their specific cases to be remanded to New Jersey state courts.

As an initial matter, the Court finds that it has related-to jurisdiction over these cases by nature of the fact that they all name NECC and/or at least one NECC-affiliated entity as a defendant.[12]  For the reasons outlined above, the Court finds that "the outcome of th[ese] proceeding[s] could conceivably have [an] effect on the [bankruptcy] estate."  *In re G.S.F. Corp.*, 938 F.2d 1467, 1475 (1st Cir. 1991).  Accordingly, the Court will deny the motion to remand the New Jersey cases.

 In the alternative, some parties have proposed that the state-law claims against non-NECC-affiliated third-party defendants be severed and remanded.  At oral argument, Ameridose endorsed this solution only as an alternative to simply denying the motions to remand outright. In the original motions to remand, the New Jersey plaintiffs opposed severance.  However, some plaintiffs, likely realizing the futility of the motions to remand in light of NECC's bankruptcy, have very recently taken the position that severance is appropriate.

With regard to the issue of severance, Fed. R. Civ. P. 21 indeed gives the Court power to "sever any claim against a party."  However, in light of the conflicted positions taken by the various New Jersey plaintiffs, and the benefits of consolidation, at least for pre-trial purposes, discussed above, the Court does not find a compelling reason to exercise its discretion and sever

---

[12]  Most of these motions to remand were filed prior to NECC's bankruptcy, and consequently much of the argument against federal jurisdiction was based on the lack of complete diversity between the parties.  However, related-to jurisdiction now provides an alternative basis for subject-matter jurisdiction.  Indeed, it does not appear from the briefing on these motions that any plaintiff has challenged the Court's § 1334 jurisdiction.

the claims against third-party defendants in the New Jersey actions.  Accordingly, to the extent that the motions to remand seek severance as an alternative, they will also be denied.

### D.    Motions to Remand Massachusetts Cases

Plaintiffs in three Massachusetts actions have moved for their cases to be remanded to Massachusetts state courts.  They filed these motions prior to the bankruptcy of NECC and the consolidation of cases before this Court in the MDL.  Accordingly, for substantially the same reasons noted above with respect to the New Jersey cases, the Court will deny the motions to remand.

### E.    Motions to Remand Virginia Cases

Plaintiffs in two Virginia actions have moved for their cases to be remanded to Virginia state courts.[13]  They filed these motions prior to the consolidation of cases before this Court in the MDL.  Accordingly, for substantially the same reasons articulated above with respect to the New Jersey and Massachusetts cases, the Court will deny the motions to remand.

### F.    Motion for Mandatory Abstention in Virginia Cases

Plaintiffs in certain other Virginia actions that were the subject of Judge Wilson's decision in *Wingate*, 2013 U.S. Dist. LEXIS 67358, filed a motion for mandatory abstention pursuant to § 1334(c)(2).[14]  For the reasons set forth above, the Court finds that the mandatory abstention provision of § 1334(c)(2) does not apply to these cases, and therefore will deny the motion.  However, to the extent that these cases do not yet involve claims against NECC or

---

[13] The cases originating in Virginia that have been removed to this court in which the plaintiffs have filed motions to remand are *Radford v. New England Compounding Pharmacy, Inc., et al.*, 1:13-cv-10688-FDS, and *Rhodes v. New England Compounding Pharmacy, Inc.*, 1:13-cv-10504-FDS.

[14] This motion was filed in *Erkan v. New England Compounding Pharmacy, Inc. et al.*, 1:12-cv-12052-FDS and is referred to by the parties and herein as "Roanoke Gentry Locke Plaintiffs' Motion for Mandatory Abstention."

affiliated entities or individuals, the Court will exercise its discretion to abstain from asserting jurisdiction over them consistent with this memorandum and order.

## III.   Conclusion

For the foregoing reasons:

(1)The Trustee's Motion to Transfer Personal Injury Tort and Wrongful Death Cases is GRANTED as to (1) those cases against NECC or any affiliated entity or individual pending in federal courts, (2) those cases against NECC or any affiliated entity or individual in the process of being removed from state court, and (3) those cases pending in state courts in which any party has asserted a claim (including a claim for contribution or indemnity) against NECC or any affiliated entity or individual.  A list of the pending cases to which this transfer order applies will be entered separately on the docket.  The motion is DENIED as to those cases pending in state courts in which no claim against NECC or an affiliated entity or individual has been asserted, without prejudice to its renewal with as to those cases;

(2)     Roanoke Gentry Locke Plaintiffs' Motion for Mandatory Abstention is DENIED;

(3)     Defendants' Motions to Withdraw the Reference in the following cases are

GRANTED:

*Shaffer et al v. Cadden*, 1:13-cv-10226-FDS

*Schroder et al v. New England Compounding Pharmacy, Inc.*,
        1:13-cv-10227-FDS

*Cary v. New England Compounding Pharmacy, Inc.,* 1:13-cv-10228-FDS

*Adams v. Cadden*, 1:13-cv-10229-FDS

(4)     Plaintiffs' Motions to Remand in the following cases are DENIED:

*Thompson v. New England Compounding Pharmacy, Inc.*,

31

1:12-cv-12074-FDS

*Armstrong v. New England Compounding Pharmacy, Inc.*,
1:12-cv-12077-FDS

*Guzman v. New England Compounding Pharmacy, Inc.*,
1:12-cv-12208-FDS

*Devilli, et al. v. Ameridose*, LLC, *et al.*, 1:13-cv-11167-FDS

*Marko v. New England Compounding Pharmacy, Inc., et al.,*
1:13-cv-10404-FDS

*Pennington v. New England Compounding Pharmacy, Inc., et al.*,
1:13-cv-10406-FDS

*Hannah v. New England Compounding Pharmacy, Inc., et al.*,
1:13-cv-10407-FDS

*Leaverton v. New England Compounding Pharmacy, Inc., et al.*,
1:13-cv-10408-FDS

*Jones v. New England Compounding Pharmacy, Inc., et al.*,
1:13-cv-10409-FDS

*Ramos v. New England Compounding Pharmacy, Inc., et al.*,
1:13-cv-10410-FDS

*Rios v. New England Compounding Pharmacy, Inc., et al.*,
1:13-cv-10411-FDS

*Rivera v. New England Compounding Pharmacy, Inc., et al.*,
1:13-cv-10412-FDS

*Tolotti v. New England Compounding Pharmacy, Inc., et al.*,
1:13-cv-10413-FDS

*Tayvinsky v. New England Compounding Pharmacy, Inc., et al.*,
1:13-cv-10414-FDS

*Zavacki v. New England Compounding Pharmacy, Inc., et al.*,
1:13-cv-10441-FDS

*Letizia v. New England Compounding Pharmacy, Inc.*,

1:13-cv-10442-FDS

*Gould v. New England Compounding Pharmacy, Inc.*,
1:13-cv-10444-FDS

*Tisa v. New England Compounding Pharmacy, Inc., et al.*,
1:13-cv-10446-FDS

*Normand v. New England Compounding Pharmacy, Inc., et al.*,
1:13-cv-10447-FDS

*Radford v. New England Compounding Pharmacy, Inc., et al.*,
1:13-cv-10688-FDS

*Rhodes v. New England Compounding Pharmacy, Inc.*,
1:13-cv-10504-FDS

(5)     The Court will issue separate orders in the dockets of the specific cases just

referenced as to the  motions affected by this order.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: May 31, 2013