UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION <br><br> This Document Relates to: <br>     All Cases | ) <br> ) <br> ) <br> )    MDL No. 1:13-md-2419-FDS <br> ) <br> ) <br> ) <br> ) |
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY CASES <br><br> This Document Relates to: <br>     All Cases | ) <br> ) <br> ) <br> )    Master Docket No. 12-12052-FDS <br> ) <br> ) <br> ) |

**STATEMENT OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS
IN RESPONSE TO PLAINTIFFS STEERING COMMITTEE'S
PROPOSED CASE MANAGEMENT ORDER**

The Official Committee of Unsecured Creditors (the "Official Committee") in the Chapter 11 case (the "Chapter 11 Case") of New England Compounding Pharmacy, Inc. d/b/a New England Compounding Center ("NECC" or the "Debtor"), by and through its undersigned counsel, respectfully submits this statement (the "Statement") in response to the proposed case management order [Dkt. No. 185] ("Proposed CMO") submitted to this Court by the Plaintiffs' Steering Committee ("PSC") appointed in the above-captioned multi-district litigation (the "MDL").

The Proposed CMO filed by the PSC is, with one specific exception described more fully below, the product of extensive, constructive and ultimately successful sentence-by-sentence negotiations among the Official Committee, the PSC and other interested parties. The Official Committee is very pleased the Official Committee and the PSC were able to come to agreement as to a form of CMO. The Official Committee accordingly fully supports the Proposed CMO as

filed, with the one exception being the short additional language later added by the PSC that is unacceptable to the Official Committee.  Specifically, the PSC makes the new request – one inconsistent with its specifically-agreed form of CMO – that this Court: (i) limit the agreed application of Section II.I., which governs cooperation between the PSC and Official Committee as to settlement discussions with Unaffiliated Defendants and Non-Parties (both as defined in the Proposed CMO), which limitation would effectively exclude the Official Committee and chapter 11 trustee appointed in the Chapter 11 Case (the "<u>Trustee</u>") from settlement discussions that, in the words of the proposed new language, do not "contemplate resolution through bankruptcy channels (including the issuance of non-debtor releases or channeling injunctions by the bankruptcy court)"; and (ii) limit Section II.J's provisions on mediation with Unaffiliated Defendants so that they apply only to Unaffiliated Defendants and Non-Parties "who wish to resolve claims against them through bankruptcy channels" (together, the "<u>Added Phrases</u>").  It is respectfully submitted that these Added Phrases (i) are inconsistent with the statutory duties of the Official Committee, (ii) unreasonably interfere with the ability of the Official Committee to participate in negotiations with respect to potential "reimbursement" claims of non-Debtors that may be asserted against NECC's bankruptcy estate (which include, but are not limited to, indemnification and contribution claims against NECC), and (iii) are inconsistent with the PSC's previous agreement negotiated with the Official Committee as to the content and text of the Proposed CMO's provisions relating to settlement discussions and mediation with Unaffiliated Defendants and Non-Parties.  For these reasons, the Official Committee cannot support the Added Phrases in the Proposed CMO, and respectfully requests that this Court enter the Proposed CMO with the Added Phrases deleted.

**A.      The Added Phrases in the Proposed CMO are Inconsistent with the Statutory Duties of the Official Committee**

The Official Committee has a duty to negotiate not only with potential contributors to NECC's Chapter 11 Estate, but also with any unsecured creditors of NECC.  Unaffiliated Defendants and Non-Parties potentially fall within both of these categories, *Memorandum and Order on Trustee's Motion to Transfer Cases and Related Motions* [Dkt. No. 170] (the "Transfer Opinion") at 7 ("Pursuant to the bankruptcy code, such claims [for contribution or indemnity] would normally have to be considered on equal footing with the claims of injured plaintiffs against the estate as claims of unsecured creditors."), and the Official Committee would thus be ignoring its statutory duties if it were required to remove itself from settlement or resolution discussions with those parties (which would benefit the estate and all of NECC's creditors) or if it exempted such parties from a mediation process.[1]

The Official Committee was appointed in the Chapter 11 Case pursuant to 11 U.S.C. § 1102(a)(1) as the statutory representative body of all unsecured creditors.  The Official Committee's mission is to maximize the assets available for distribution to unsecured creditors, including the many tort victims and fulfill its statutory and fiduciary mandate to negotiate a Chapter 11 plan on behalf of its constituency.  See 7 Collier on Bankruptcy ¶ 1103.05.  Among its statutory duties, the Official Committee is to

> participate in the formulation of a plan, advise those represented by such committee of such committee's determinations as to any plan formulated, and collect and file with the court acceptances or rejections of a plan.

---

[1]      The revision to Section II.J. restricting the application of any mediation order to those "who wish to resolve claims against them through bankruptcy channels" is also unnecessary, as only parties who wish to participate in mediation will be governed by that order.

11 U.S.C. § 1103(c)(3).  As part of this duty, the Official Committee must negotiate with the Trustee, unsecured creditors (including any holders of personal injury, tort, and wrongful death cases against NECC and any holders of asserted or contingent indemnity, contribution, or similar "reimbursement" claims against NECC) and other relevant parties contemplated to be included in, part of or impacted by a Plan.  See 11 U.S.C. § 1103(c)(1)-(3).  In this case, the Trustee and the Official Committee share the objective of negotiating a consensual chapter 11 plan pursuant to which (i) potentially liable parties will contribute to a common fund for the benefit of personal injury claimants and will receive appropriate releases, and (ii) the claims of personal injury claimants will then be resolved and paid from this common fund.

The Added Phrases sought by the PSC impair and impede this Official Committee in performing these duties and working with the Trustee towards accomplishing such a Chapter 11 plan for the benefit of NECC tort victims.  Whether a particular Unaffiliated Defendant or Non-Party professes, from time to time or at any particular time to contemplate that a settlement of plaintiffs' claims against it will involve a contribution to a common fund and a corresponding non-debtor release or channeling injunction for its benefit, see Proposed CMO at § II.I and II.J, such a contribution and release remain at play until such Unaffiliated Defendant or Non-Party specifically, irrevocably, and finally disavows them.  The PSC's suggested additional language also puts unreasonable burdens on all parties and ultimately on this Court to determine on a rolling basis the current contemplations of 100 or more potential plan contributors and the particular manner that each must communicate its subjective intentions and all changes to such intentions as to such critical, gate-keeping issues central to the heart of this MDL process and success.  The Official Committee therefore has a duty to continue to negotiate with such an Unaffiliated Defendant or Non-Party.  Further, the PSC has offered no statement of

particularized harm that any party could suffer by the PSC's failure to exclude the Official Committee from these subsets of negotiations.

Moreover, an Unaffiliated Defendant or Non-Party may have claims against NECC for indemnity, contribution or "reimbursement," making such entity a potential unsecured creditor in NECC's Chapter 11 Case, and giving rise to a duty by the Official Committee to negotiate with that Unaffiliated Defendant or Non-Party as unsecured creditor.   As this Court has acknowledged, such reimbursement claims against NECC must be carefully considered and treated in a plan of reorganization, as with all other claims, and the existence of pending or even potential contribution or indemnity claims could greatly affect the recoveries of other claimants. Transfer Opinion at 7 ("Because all unsecured creditors are normally paid *pari passu* (that is, proportionally and without preference) based on the amount of their claims, even one large contribution or indemnity claim against the estate could greatly diminish, or virtually eliminate, the amount available to be paid to the remaining claimants.").   In order for the Official Committee to effectively fulfill its statutory duty to participate in the negotiation of a Chapter 11 plan, it is then necessary for the Official Committee to retain and protect its statutory authority to negotiate with all potential unsecured creditors of NECC, including entities that hold indemnity, contribution or other "reimbursement" claims.   The treatment of such creditors remains a vital consideration that must be negotiated and resolved in connection with a plan, even if such parties decided not to contribute to a common fund in exchange for a release and channeling injunction.

The Official Committee notes that the remainder of the Proposed CMO purports to reserve and protect the Committee's statutory rights, including the right to negotiate a Plan, exactly as agreed.  See Proposed CMO, § IV.H.  However, the Added Phrases could be read to

eviscerate that protection in important respects, and the Official Committee respectfully requests that they be removed and deleted.

### B. The Added Phrases in the Proposed CMO are Also Inconsistent with the Express Agreement Between the PSC and the Official Committee Concerning the Proposed CMO

In addition to being inconsistent with the Official Committee's statutory duties, the Proposed CMO is also inconsistent with the express agreement between the PSC and the Official Committee, whereby both parties agreed to seek this Court's approval of a case management order that did not include the Added Phrases now proposed by the PSC.

For the past several weeks, the Official Committee has been negotiating with the PSC regarding the form of a proposed case management order, including with respect to provisions that would permit the PSC and Official Committee to work together and cooperatively in settlement discussions and mediation discussions with Unaffiliated Defendants, thereby allowing for the Official Committee to perform its statutory duties while acknowledging and confirming the PSC's important role in settlement discussions involving claims filed in the MDL. Ultimately, the PSC and the Official Committee reached an agreement (the "PSC/Official Committee Agreement"), memorialized in a June 7, 2013 letter by William Baldiga (counsel to the Official Committee) on behalf of the Official Committee to the PSC, which was accepted and agreed to by Thomas Sobol (Lead Counsel) on behalf of the PSC. An executed copy of that agreement, with its attachment and with nonrelevant portions redacted, is attached to the Declaration of Rebecca L. Fordon, filed contemporaneously herewith, as Exhibit 1. The PSC/Official Committee Agreement referred to and attached a draft case management order that was agreed to between the Official Committee and the PSC (the "Agreed CMO"). The PSC/Official Committee Agreement provided that "[t]he PSC and Official Committee each agree to, in good faith, negotiate with the defendants and seek the MDL Court's approval of the

6

Proposed CMO (revised to include any changes requested by the defendants that the [PSC] and Official Committee deem unobjectionable)."

The Agreed CMO contained provisions titled "Settlement Discussions with Unaffiliated Defendants" and "Mediation with Unaffiliated Defendants and Non-Parties", just as does the Proposed CMO, but did not contain the Added Phrases, which restrict such provisions to settlement discussions "that contemplate resolution through bankruptcy channels (including the issuance of non-debtor releases or channeling injunctions by the bankruptcy court)" and mediation with parties who "who wish to resolve claims against them through bankruptcy channels."   In contravention of the <u>PSC/Official Committee</u> Agreement and the Agreed CMO attached thereto, the Added Phrases were unilaterally inserted by the PSC in drafts circulated to the Official Committee on Monday, June 17, 2013 and the Official Committee has never agreed to and objects to the Added Phrases.   Notwithstanding the Official Committee's objection, the PSC has refused to remove the Added Phrases from the Proposed CMO.   The Official Committee fully supports the Proposed CMO to the extent it does not include the Added Phrases, as is consistent with the Agreed CMO.

<u>**CONCLUSION**</u>

The Official Committee is pleased that, after much work among many parties and good and constructive negotiation as to the many issues that are critical to the success of this MDL and the Chapter 11 Case, there was reached complete agreement as to an agreed form of proposed CMO.   The Official Committee believes that entry of that agreed proposed CMO will put this MDL on the path to a fair and good resolution for the many tort victims who are so deserving of substantial monetary compensation as quickly as legally possible through the Chapter 11 plan process that all recognize to provide the most efficient and speediest route to that success.   For

the reasons set forth herein, the Official Committee respectfully requests that this Court enter the

Proposed CMO, with the Added Phrases removed and deleted for the reasons described above.

Dated: June 18, 2013
      Boston, Massachusetts

                           **BROWN RUDNICK LLP**

                           By:  /s/ David J. Molton
                           David J. Molton, Esq. (admitted *pro hac vice*)
                           Seven Times Square
                           New York, New York 10036
                           Telephone: (212) 209-4800
                           Facsimile: (212) 209-4801
                           dmolton@brownrudnick.com

                           and

                           William R. Baldiga, Esq. (BBO #542125)
                           Rebecca L. Fordon, Esq. (BBO #664578)
                           One Financial Center
                           Boston, Massachusetts 02111
                           Telephone: (617) 856-8200
                           Facsimile: (617) 856-8201
                           wbaldiga@brownrudnick.com
                           rfordon@brownrudnick.com

                           *Counsel to the Official Committee of Unsecured Creditors of New England Compounding Pharmacy, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

I, David J. Molton, hereby certify that on June 18, 2013, I caused a copy of the foregoing Statement to be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies to be sent to those indicated as non-registered participants, by first class mail, postage prepaid.


Dated: June 18, 2013
     New York, NY

                            <u>/s/ David J. Molton</u>
                            David J. Molton

61271504

9