IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LAIBILITY LITIGATION<br><br>This Document Relates to:<br>   All Cases | MDL Docket No. 2419 |
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY CASES<br><br>This Document Relates to:<br>   All Cases | Master File No. 1:13-MD-2419-FDS |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO ALTER OR AMEND JUDGMENT UNDER RULE 59(e) OR, IN THE ALTERNATIVE, TO CERTIFY FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. §1292(b)**

The Court's May 31, 2013, Memorandum and Order (the "Order") denied the Roanoke Gentry Locke Plaintiffs' Motion for Mandatory Abstention and assumed related-to jurisdiction over such parties and claims, permissively abstaining (for now) under the discretionary abstention provisions of 28 U.S.C. § 1334(c)(1). The Court has made it clear that it may revisit its discretionary abstention ruling in the event that some or all of the state-court defendants in these Roanoke cases assert contribution claims in the NECC bankruptcy.

The Court should either amend the Order's related-to jurisdiction and mandatory-abstention rulings, or certify that Order for interlocutory appeal under 28 U.S.C. § 1292(b). The two legal questions at issue are discrete and outcome-determinative:

1. Does related-to jurisdiction under 28 U.S.C. § 1334(b) extend to state-court cases brought solely against non-debtor defendants who are unaffiliated with the debtor or its related

1

parties, but who assert or may assert claims for joint tortfeasor contribution against the debtor?

2. Are the mandatory abstention requirements of 28 U.S.C. § 1334(c)(2) abrogated by the exception set forth in 28 U.S.C. § 157(b)(4) when a defendant in the state-court action asserts or may assert claims for contribution against the debtor?

The Court answered both of these questions "yes." As explained below, that was a mistake, and one that the Court should correct under Rule 59(e).

If the Court declines to revisit those rulings, it should certify them for interlocutory appeal. Both of these questions present controlling issues of law about which there are substantial grounds for difference of opinion. On the first issue, the federal Courts of Appeal are split, and the First Circuit has not specifically addressed this issue. However, if subject-matter jurisdiction is absent, then any exercise of jurisdiction is unconstitutional and void. As to the second issue, this Court has charted new territory. No case, appellate or otherwise, applies § 157's abstention exception to claims against non-debtors based upon a potential, future, unliquidated contribution liability claim (or, for that matter, based on a common-law indemnity claim). This Court and the United States District Court for the Western District of Virginia both analyzed exactly the same the mandatory-abstention question and arrived at completely opposite conclusions.

The resolution of both the jurisdictional and mandatory abstention questions will materially advance the ultimate termination of the litigation because both issues determine whether the Court can exercise jurisdiction over the Roanoke Gentry Locke Plaintiffs' claims in the first place. The present posture of the Court's Order presents a shaky platform for these claims. The Court's apparent offer to revisit its decision if one of the defendants simply files a

proof of claim for potential future contribution liability offers additional uncertainty that will only delay the final resolution of the litigation.

**Background**

New England Compounding Pharmacy, Inc., ("NECC") is the alleged source of contaminated methylprednisolone acetate obtained and injected into the Roanoke Plaintiffs at the hands of Insight Health Corp. ("Insight") and the related Roanoke physician defendants. After a number of lawsuits were filed against NECC across the nation, it sought bankruptcy protection on December 21, 2012. However, "there is little, if any likelihood that the company will resume operations." *In re New England Compounding Pharmacy Prods. Liab. Litig.*, 1:13-md-2419-FDS, 2013 U.S. Dist. LEXIS 76739, at * 12 (D. Mass. May 31, 2013).

All of the cases at issue in the Motion to Abstain were subsequently filed in state court in Roanoke, Virginia against only non-NECC defendants. There, they have proceeded swiftly, with written discovery, depositions of the relevant local parties, pretrial motions (including partial summary judgment), and an established trial date of April 14, 2014, for the lead Wingate case. None of these cases assert breach of warranty claims against the state court defendants. Rather, they assert causes of action unique to the actions by the local defendants.

<u>The Motion to Transfer</u>

On March 10, 2013, the Chapter 11 Bankruptcy Trustee for the Estate of NECC filed a Motion to Transfer Personal Injury Tort and Wrongful Death Cases to this Court under 28 U.S.C. § 157(b)(5). By and large, the Trustee's Transfer Motion sought to draw in cases where NECC is a co-defendant, cases against NECC insiders, and related-party cases that apply generally and equally to all creditors of NECC. Additionally, however, the Trustee took the extremely aggressive position that the Roanoke Gentry Locke Plaintiffs' state-court cases should also be

3

transferred to this Court applying related-to bankruptcy jurisdiction under 28 U.S.C. § 1334(b). These Plaintiffs filed a Motion for Mandatory Abstention on March 19, 2013, and they were the only parties to file such a motion. The Plaintiffs' Steering Committee filed a response urging the Court to deny the transfer motion.

The Virginia District Court Decision

Less than a month later, Insight removed the Roanoke cases to federal court in the Western District of Virginia, asserting "related-to" jurisdiction because of the NECC bankruptcy. Motions to remand were filed in that court and granted by Memorandum Opinion and Order dated May 10, 2013. *See Wingate v. Insight Health Corp.*, 7:13cv00142, 2013 U.S. Dist. LEXIS 67358, at * 2 (W.D. Va. May 10, 2013).

Noting the obvious Circuit split about whether related-to jurisdiction can be asserted over tort claims against non-debtor third-parties (*id.* at 7), the Virginia District Court assumed without deciding that it had such jurisdiction. However, the court held that mandatory abstention was required by 28 U.S.C. 1332(c)(2). *Id.* at 7-9. It specifically rejected claims that personal-injury and wrongful-death claims asserted against non-debtors are subject to the exception from § 1332(c)(2) mandatory abstention under 28 U.S.C §§ 157(b)(4) and 157(b)(2)(B). *Id.* at 13.

The Boston District Court Decision

This Court reached the opposite conclusion twenty-one days later when it issued the Order, denying the Motion to Abstain under 28 U.S.C. § 1334(c)(2). *See generally New England Compounding Pharmacy Prods.*, 2013 U.S. Dist. LEXIS 76739, at * 33. On the underlying issue of related-to jurisdiction, this Court departed from the Third and Fifth Circuits to join a line of authority from the Sixth Circuit that apparently allows for related-to jurisdiction where contribution liability has been or may be asserted against the debtor arising out of the case at

4

issue. This Court thereupon asserted jurisdiction over the Roanoke Gentry Locke Plaintiffs due to the potential for a claim for common-law indemnity or contribution against NECC. *Id.* In doing so, however, it acknowledged that such "jurisdiction is unclear at best." *Id.* at 46. Citing mainly the uncertainty of its jurisdiction, the Court then abstained from asserting jurisdiction under 28 U.S.C. § 1334(c)(1) but resolved to revisit the issue "if the balance of [discretionary abstention] factors shifts over time," indicating that a non-debtor defendant's claim of indemnity or contribution against the debtor "would probably permit the exercise of federal jurisdiction over the underlying matter." *Id.* at 34-35.

### Principles of Law, Argument, and Authorities

**1. The Court Should Alter or Amend its Order Under Rule 59(e).**

In denying the motion for mandatory abstention, this Court adopted an interpretation of § 157(b)(2)(B) that was, as it acknowledged, at odds with the District Court in Virginia. *Id.* at 39-41. In doing so, this Court went beyond the statutory language, seeking to discern and apply Congress's motivation in creating the exception to mandatory abstention for personal-injury and wrongful-death claims. As support, the Court centered its analysis on Judge Rakoff's characterization of congressional intent in *Beck v. Victor Equipment Co., Inc.* 277 B.R. 179, 180-81 (S.D.N.Y. 2002) (holding that mandatory abstention under § 1334(c)(2) does not apply to personal-injury claims *against the debtor* because of the §157(b)(4) exception).[1] *Id.* at 40-41.

---

[1] Judge Rakoff described this intent as follows: "Congress, recognizing that the unpredictable and substantial verdicts that are often produced in personal injury and tort and wrongful death claims could have potentially deleterious effects on a debtor's estate--particularly when, because of the automatic stay provisions of the Bankruptcy Code, a debtor-defendant may not have anticipated in the underlying trial--concluded that, in non-core proceedings such as the one at bar, the mandatory abstention provision of 1334(c)(2) should not apply." *Beck*, 277 B.R. at 180-81. Judge Rakoff cited *In re Pan Am. Corp.*, 950 F.2d 830, 845 (2d Cir. 1991), as authority demonstrating this intent. However, nowhere cited in the *Pan Am.* decision does the Second Circuit describe Section 157(b)(4)'s purpose in this manner. *See e.g. In re Pan Am. Corp*, 950 F.2d at 845 (quoting *A.H. Robbins Co. v. Piccinin*, 788 F.2d 994, 1011 (4th Cir. 1986) and stating the "manifest purpose of § 157(b)(5) was to centralize the administration of the bankruptcy estate and to eliminate the multiplicity of forums for the adjudication

5

While Judge Rakoff did not use his understanding of congressional intent to expand the statutory language of §§ 157(b)(4) and 157(b)(2)(B) in *Beck*, this Court did.

The Court reasoned that, if the underlying personal-injury or wrongful-death claim *against the non-debtor* could result in a contribution claim against the debtor if successful, then that underlying claim met the statutory criteria for the exception under § 157(b)(2)(B) as a "personal injury or wrongful death claims *against the estate*." *New England Compounding Pharmacy Prods.*, 2013 U.S. Dist. LEXIS 76739, at * 42. Thus, the Court held that §157(b)(2)(B) abrogated the mandatory abstention required by § 1334(c)(2), and denied the Roanoke Gentry Locke Plaintiffs' mandatory-abstention motion. *Id.*

No court has ever gone so far in extending the meaning of claims *"against the estate."*

To be sure, in two cases courts have extended the §157(b)(2)(B) exception to claims against related non-debtors: *Abbatiello v. Monsanto*, 2007 WL 747804, 3 (S.D.N.Y. March 8, 2007), and *Berry v. Pharmacia Corp.*, 316 B.R. 883 (S.D. Miss. 2004). Both cases involved the same three defendants, which were formed from portions of Monsanto, and both involved contractual indemnity agreements that had been negotiated between the debtor and the non-debtor defendants. Under those circumstances, the *Berry* court found that a judgment against the non-debtor would effectively be a judgment against the debtor. Here, by contrast, even if the reasoning of these very limited cases were persuasive, no such identity of interest or contractual indemnity obligation exists between the NECC debtor and the state-court defendants. Even though it acknowledged this distinction, the Court apparently used these limited holdings (of related parties with contractual indemnity) as a springboard to equate such circumstances with *potential* contribution and common-law indemnity claims that state-court defendants "may have

---

of parts of a bankruptcy case"). The Roanoke Gentry Locke Plaintiffs are aware of no other case law that describes Congress's intent in this way.

6

... in the event that they are found liable in state court." *New England Compounding Pharmacy Prods.*, 2013 U.S. Dist. LEXIS 76739, at * 40. The Court found that this potential future liability "pose[s] the type of threat Congress had in mind when it crafted the exception to § 1334(c)(2)." *Id.*

Within this context, the Court cited case law from California and Michigan for the proposition that "[i]n many, if not all, jurisdictions, under ordinary[2] circumstances, the debtor would be strictly liable for the harm caused by the defective product, even if there may have been a third-party interposed between the debtor and tort claimant in the supply chain." *Id.* at 40-41. But the abstention motion was filed by parties in cases that are governed by *Virginia* law, rendering the strict-liability or common-law indemnity obligations in other jurisdictions irrelevant. Unlike other states, Virginia does not recognize products-liability claims based on strict liability. *Sykes v. Bayer Pharmaceuticals Corp.*, 548 F. Supp. 2d 208, 214 (E.D. Va. 2008) (granting Bayer's motion for judgment on the pleadings on Sykes' strict liability claim for injury from an injection of immune globulin). Under Virginia indemnity law, "active negligence prevents a party from seeking indemnity altogether." *Glover v. Johns-Manville Corp.*, 525 F.Supp. 894, 906 (E.D. Va. 1979). Here, the Roanoke Plaintiffs have not asserted some type of derivative warranty liability against the non-debtor state-court defendants. They have alleged active negligence and fraud. If they win judgment against Insight for its active misconduct, Insight will have no valid indemnity claim against NECC (or anyone else) under Virginia law.

In its Order, the Court appears to acknowledge that it currently lacks "related-to" jurisdiction over these cases because no contribution claim has yet been asserted, much less matured into a ripe claim. But in the same Order the Court found that the mere potential for such

---

[2] For the reasons stated in prior briefings describing the claims against these non-debtors, these circumstances are far from "ordinary."

23347/1/6311949v2

an as-yet unasserted contribution claim was sufficient to deny a ripe motion for mandatory abstention. This poses a logical difficulty: If potential unasserted contribution claims probably don't even cause an action to be "related-to" a bankruptcy, how can the same potential unasserted contribution claims cause the underlying claims against the non-debtor to be nothing short of claims *"against the estate"* of the bankrupt debtor? The Court in *In re Federal-Mogul Global, Inc.*, 282 B.R. 301, 313 (Bankr. D. Del. 2002), correctly noted that "[i]t is a far step from finding that a claim against a non-debtor is related to a bankruptcy proceeding to finding that a claim against a non-debtor is actually a claim directly against the estate for the purposes of § 157(b)(2)(B)." That makes perfect sense—under any analysis, it should be easier for one item to be *related to* another than it is for that item to be *equated with* the other; the former simply sets a lower threshold than the latter. Yet, here, the Order makes the opposite finding.

The Roanoke Gentry Locke Plaintiffs thus ask the Court to amend its Order to find (1) that is has no present "related-to" jurisdiction over their claims, and (2) that even if it had such jurisdiction, the mandatory abstention provisions of 28 U.S.C. § 1334(c)(2) would prevent it from exercising that jurisdiction. Federal Rule of Civil Procedure 59(e) allows the Court to alter or amend a judgment on a party's timely motion. For purposes of that rule, a "judgment" includes a decree or any appealable order. Fed. R. Civ. P. 54(a). Here, the Court's Order is appealable for several reasons. *See A.H. Robbins Co. v. Piccinin*, 788 F.2d 994, 1009-10 (4th Cir. 1986); *In re Amatex Corp.*, 755 F.2d 1034, 1038-39 (3d Cir. 1985); *In re Saco Local Dev. Corp.*, 711 F.2d 441, 444-46 (1st Cir. 1983) (recognizing that in a bankruptcy proceeding, the concept of "finality" is applied with flexibility, allowing appellate review of orders that might be considered interlocutory in other contexts). Thus, it is a "judgment" for purposes of the federal rules, and it can be altered or amended under Rule 59(e).

To prevail on a Rule 59(e) motion, a party generally must either clearly establish a manifest error of law or present newly discovered evidence. *Markel Am. Ins. Co. v. Diaz-Santiago*, 674 F.3d 21, 32 (1st Cir. 2012). Grounds for the motion can include manifest errors of law or fact, newly discovered or previously unavailable evidence, manifest injustice, or an intervening change in the law. *Id.* Here, for the reasons explained above, the Court's Order presents both a manifest error of law in its treatment of related-to jurisdiction and abstention, and a manifest injustice.

### 2. In the Alternative, the Court should Certify its Order for Interlocutory Appeal Under 28 U.S.C. § 1292(b).

If the Court declines to alter or amend the Order, then it should certify that Order for interlocutory appeal under 28 U.S.C. § 1292(b). A district court may certify an issue for interlocutory appeal when its order (1) involves a controlling question of law (2) as to which there is substantial ground for difference of opinion and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. If the Court makes such a determination, it must do so in writing. 28 U.S.C. § 1292(b). This will give the party requesting certification leave to pursue an appeal. Here, the Order meets all of these requirements.

### A. This Court's Jurisdictional and of Mandatory Abstention Rulings Involve Controlling Questions of Law.

"A controlling issue of law as to which there is substantial ground for difference of opinion controls the outcome of the underlying case and raises significant questions of law." *In re Jackson Brook Inst.*, 227 B.R. 569, 582 (D. Me. 1998) (citing *In re Bank of New England Corp.*, 218 B.R. 643, 649 (1st Cir. B.A.P. 1998)). An order can also involve a controlling question of law when "the order . . . if erroneous, would be reversible error on final appeal." *In*

*re Barsan Contractors Inc.*, 10-3081, 2010 U.S. Dist. LEXIS 104623, at *7 (D.N.J. Sept. 30, 2010) (citing *Katz v. Carte Blanche Corp.* 496 F.2d 747, 755 (3d. Cir. 1974)).

The Court's assumption of related-to jurisdiction involves a controlling question of law. Jurisdiction, as a threshold inquiry, determines whether a court has the power to act over a given case or controversy. "The consequences of an incorrect judgment may be very substantial indeed; if the Court does not have subject matter jurisdiction over a matter, any action it may undertake in that matter will be void." *New England Compounding Pharmacy Prods.*, 2013 U.S. Dist. LEXIS 76739, at * 33. Similarly, the Court's denial of mandatory abstention is a controlling question of law by its very nature. If error on these issues exists, then the parties are threatened with the continued injury of orders being entered over a long period of time by a court that lacks jurisdiction. "This threat makes the question of whether the bankruptcy court should have abstained a controlling issue of law." *Jackson Brook Inst.*, 227 B.R. at 582; *see also Certain Underwriters at Lloyd's v. ABB Lummus Global, Inc.*, 03 Civ7248, 2004 U.S. Dist. LEXIS 10621, at *25 (S.D.N.Y. May 4, 2004) (holding that the issue of mandatory abstention involves a controlling issue of law). The suspected error in the Court's ruling also threatens the ongoing bankruptcy process and would support reversal on appeal of a final judgment if the Court of Appeals later agrees. This pivotal decision is best reviewed now.

### B. There is Substantial Ground for Difference of Opinion on the Issues of Related-to Jurisdiction and Mandatory Abstention.

Second, there is indisputably substantial ground for difference of opinion in both the related-to jurisdiction and mandatory abstention analyses. "Substantial ground for difference of opinion" exists where the "proposed intermediate appeal presents one or more difficult and pivotal questions of law not settled by controlling authority." *In re San Juan Dupont Plaza Fire Litig.*, 859 F.2d 1007, 1010 n.1 (1st Cir. 1988); *Bank of New England*, 218 B.R. at 653. This

difference of opinion "must arise out of genuine doubt as to the correct legal standard." *P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*, 161 F. Supp. 2d 355, 360 (D.N.J. 2004).

> i. **There is Substantial Ground for Difference of Opinion Because the Courts of Appeal Disagree on the Reach of Related-To Jurisdiction under 28 U.S.C. §1334(b).**

As noted in this Court's Order, "it remains an open question of law, at least in the First Circuit, whether there is related-to jurisdiction over a case against a non-debtor, third-party defendant who has the potential (as opposed to actual) claim for contribution or indemnity against the debtor." *New England Compounding Pharmacy Prods.*, 2013 U.S. Dist. LEXIS 76739, at * 27. Other Circuits disagree on the issue. The Third Circuit holds that related-to jurisdiction does not exist over a case against a non-debtor defendant if another lawsuit would be required. *Pacor, Inc. v. Higgins*, 743 F.2d 984, 985-86 (3d Cir. 1984); *In re W.R. Grace & Co.*, 591 F.3d 164, 169 (3d Cir. 2009). The Fifth Circuit takes a similar approach, exercising jurisdiction over lawsuits against non-debtor defendants only when an indemnification agreement existed between non-debtor and debtor. *Lone Star Fund V (US), LP v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *In re Stonebridge Techs., Inc.*, 430 F.3d 260, 266 (5th Cir. 2005). The Fourth Circuit draws an analogous distinction, indicating that asserting related-to jurisdiction is proper only with a prior indemnification agreement. *A.H. Robbins v. Piccinin*, 788 F.2d 994, 1001 (4th Cir. 1986). The Sixth Circuit disagrees, finding potential contribution and indemnity claims sufficient to establish related to jurisdiction. *In re Dow Corning Corp.*, 86 F.3d 482, 494 (6th Cir. 1996). As this Court noted, however, " [a]lthough *Dow Corning* did not distinguish between state-court cases against third party defendants who had asserted claims against the debtor and cases against third-party defendants who merely intend[ed] to file claims

for contribution or indemnification, that may be a relevant, indeed important, distinction." *New England Compounding Pharmacy Prods.*, 2013 U.S. Dist. LEXIS 76739, at * 32.

Federal jurisdiction is limited and should not vary from Circuit to Circuit, but on this point it apparently does—at least for now. In light of this conflict and the lack of direction from the First Circuit, there is substantial ground for difference of opinion regarding the assertion of related-to jurisdiction over non-debtor third-party defendants. As acknowledged in the Order, "the issue of subject matter jurisdiction is far from clear, and there appears to be no controlling authority." *Id.* at 33. Indeed, in its response to the Trustee's Transfer Motion, the Plaintiffs' Steering Committee referred to the cases followed by this Court as "outliers"—and the asserted jurisdiction as "dubious." ECF Doc. No. 125 at 7, 11. Accordingly, there is genuine doubt regarding the legal standard for related-to jurisdiction that warrants appellate review.

   ii. **There is Substantial Ground for Difference of Opinion on the Mandatory-Abstention Issue Because this Court and the Western District of Virginia Analyzed the Same Question and Reached Different Answers.**

The mandatory abstention issue presents another, even greater ground for difference of opinion: This Court and the District Court for the Western District of Virginia analyzed the same question of law in the same case and reached completely different results. *Wingate*, 2013 U.S. Dist. LEXIS 67358, at * 40. The Virginia District Court determined that the statutory language was plain and should be applied as written. With regard to the only two cited cases equating non-debtors with the debtor, the Virginia District Court noted that those holdings were limited to facts where a close identity and contractual indemnification agreement existed between the debtor and non-debtor. *Id.* at 15. Since Insight and NECC had no such agreement, by its plain terms the § 157(b)(2)(B) exception did not apply. *Id.* This Court held the opposite. The active

12

disagreement between two United States District Courts on the very same issue in the very same case shows that there is substantial ground for difference of opinion.

The Court's Order is also at odds with the positions advocated by the Plaintiffs' Steering Committee. That significant group in this case clearly understood and advocated that § 157 should be applied according to the actual language of the statute. *"If the Roanoke plaintiffs .... can have their claims tried promptly, then the district court must abstain from exercising its 'related to' jurisdiction."* ECF Doc. No. 125 at 11 (emphasis added).

The Roanoke Gentry Locke Plaintiffs are unaware of any case law supporting this Court's Order on this point. This case therefore presents great and "genuine doubt" as to the correct legal standard because the matter has not been analyzed by many courts or settled by controlling authority.

### C. An Immediate Appeal will Materially Advance the Ultimate Termination of the Litigation.

The Roanoke Plaintiffs believe that the Order contains substantial error that threatens great wasted effort and expense—all of which may ultimately prove meaningless if this Court lacks jurisdiction. It is far better to resolve these issues now rather than after months or years of additional work. The problems inherent within the Order also presage future problems of equal or greater proportion. Even though the Court denied the Transfer Motion for these parties, it did so in such a way as to preserve its ability and telegraph its likely intent to rule differently in the future. Apart from underlying questions of validity, such a future ruling would doubtless present extraordinary conflict as to the methodology for transfer and whether such transfer would occur at all. The Virginia state-court judge on these cases has already been directed by the federal court in his jurisdiction to proceed with these cases. A certain level of confusion can be

13

anticipated if a distant federal court subsequently instructs him to the contrary. Yet, that is the path that the Order leaves open.

The present posture is also unfair to all of the Roanoke litigants. They are proceeding with great effort and expense to prosecute and defend their claims in Roanoke. The uncertainty inherent in the Court's Order threatens to disrupt those proceedings at a moment's notice—and, apparently, upon the mere filing of a proof of claim for an unliquidated potential claim for contribution.

Under these circumstances where the very jurisdiction of this Court is at issue, an interlocutory appeal will materially advance the ultimate termination of this case. *See e.g., In re Watson*, 309 B.R. 652, 660 (1st Cir. B.A.P. 2004) and *In re Kalian*, 191 B.R. 275, 278 (D.R.I. 1996). That way, the First Circuit can determine the Court's authority to hear the Roanoke Gentry Locke Plaintiffs' state-court claims, sparing this Court and the parties unnecessary expense and delay.

## Conclusion

For these reasons, this Court should alter or amend its judgment under Rule 59(e) or, in the alternative, certify the issues noted in its Order for interlocutory appeal under 28 U.S.C. § 1292(b).

ROANOKE GENTRY LOCKE PLAINTIFFS

/s/ J. Scott Sexton
Of Counsel

J. Scott Sexton, Esq. (VSB No. 29284)
Anthony M. Russell, Esq. (VSB No. 44505)
Charles H. Smith, III, Esq. (VSB No. 32891)
H. David Gibson, Esq. (VSB No. 40641)
Benjamin D. Byrd, Esq. (VSB No. 76560)

Daniel R. Sullivan, Esq. (VSB No. 81550)
GENTRY LOCKE RAKES & MOORE, LLP
10 Franklin Road, S.E., Suite 800
P. O. Box 40013
Roanoke, Virginia 24022-0013
(540) 983-9300
FAX (540) 983-9400
sexton@gentrylocke.com
russell@gentrylocke.com
smith@gentrylocke.com
gibson@gentrylocke.com
byrd@gentrylocke.com
sullivan@gentrylocke.com

*Counsel for Roanoke Gentry Locke Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on June 21, 2013, I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF system, which then sent a notification of such filing (NEF) to all counsel of record.

/s/ J. Scott Sexton