<pre>
 1                     UNITED STATES DISTRICT COURT
                        DISTRICT OF MASSACHUSETTS
 2

 3

 4   IN RE:  NEW ENGLAND            )  MDL NO. 13-2419-FDS
     COMPOUNDING                    )
 5   PHARMACY CASES LITIGATION      )
                                    )
 6                                  )
                                    )
 7                                  )
                                    )
 8

 9
      BEFORE:  THE HONORABLE F. DENNIS SAYLOR, IV
10

11
                         STATUS CONFERENCE
12

13

14
             John Joseph Moakley United States Courthouse
15                        Courtroom No. 2
                         One Courthouse Way
16                        Boston, MA 02210

17
                          June 11, 2013
18                         2:00 p.m.

19

20

21

22

23             Valerie A. O'Hara, FCRR, RPR
                       Official Court Reporter
24      John Joseph Moakley United States Courthouse
                One Courthouse Way, Room 3204
25                    Boston, MA 02210
                E-mail: vaohara@gmail.com
</pre>

```
1    APPEARANCES:

2    For The Plaintiffs:

3        Hagens, Berman, Sobol, Shapiro LLP, by
     KRISTEN JOHNSON PARKER, ATTORNEY, 55 Cambridge Parkway,
4    Suite 301, Cambridge, Massachusetts  02142;

5        Ellis & Rapacki LLP, by FREDRIC L. ELLIS, ESQ.,
     85 Merrimac Street, Suite 500, Boston, Massachusetts
6    02114;

7        Robinson & Cole, LLP, KIMBERLY A. DOUGHERTY,
     ATTORNEY, One Boston Place, Suite 2500, Boston,
8    Massachusetts  02108;

9        Andrews Thornton, by ANNE ANDREWS, ATTORNEY, ESQ. and
     KAREN T. SCHAEFFER, ATTORNEY, 2 Corporate Park, Suite
10   110, Irvine, California 92606;

11       Brown Rudnick, by DAVID J. MOLTON, ESQ., Seven Times
     Square, New York, New York 10036;
12
         Crandall & Katt, by PATRICK THOMAS FENNELL, ESQ.,
13   366 Elm Avenue, SW, Roanoke, Virginia  24016;

14       Law Offices of Mark Zamora and Associates, by
     MARK ZAMORA, ESQ., 5 Concourse Parkway, Suite 2350,
15   Atlanta, Georgia  30328;

16       Cohen, Placitella & Roth, P.C., by MICHAEL COREN,
     ESQ., 2 Commerce Square, 2001 Market Street, Suite 2900,
17   Philadelphia, Pennsylvania  19103;

18
     For the Defendants:
19
         Harris Beach PLLC, by FREDERICK H. FERN, ESQ.,
20   100 Wall Street, New York, New York  10005;

21       Hinshaw & Culbertson LLP, by DANIEL E. TRANEN, ESQ.,
     28 State Street, 24th Floor, Boston, Massachusetts
22   02109;

23       Tucker & Ellis LLP, by MATTHEW P. MORIARTY, ESQ.,
     1150 Huntington Building, 925 Euclid Avenue, Cleveland,
24   Ohio  44115-1414;

25       Galligan & Newman, by MICHAEL D. GALLIGAN, ESQ.,
     309 West Main Street, McMinnville, Tennessee  37110;
```

```
1    APPEARANCES (CONTINUED):

2    For the Defendants:

3        Donovan & Hatem, LLP, by KRISTEN R. RAGOSTA, ESQ.,
     Two Seaport Lane, Boston, Massachusetts  02210;
4
         Todd & Weld LLP, by HEIDI A. NADEL, ESQ.,
5    28 State Street, 31st Floor, Boston, Massachusetts
     02109;
6
         Michaels, Ward & Rabinovitz, LLP, by NICKI SAMSON,
7    ATTORNEY, One Beacon Street, Boston, Massachusetts
     02108;
8
         Duane Morris LLP by MICHAEL R. GOTTFRIED,
9    ESQ., 100 High Street, Suite 2400, Boston, Massachusetts
     02110-1724;
10
         Lawson & Weitzen, LLP, by RYAN A. CIPORKIN, ESQ.,
11   88 Black Falcon Avenue, Boston, Massachusetts  02210;

12   VIA PHONE FOR THE PLAINTIFFS:

13   Timothy Housholer
     Terry Dawes
14   Paul Sand
     Wendy Fleishman
15   Elisha Hawk
     Steve Resnick
16   Sharon Houston
     Jonathan Nace
17   Sean Roth
     Chris Cain
18   Mark Dancer
     Dan Myers
19   Mary Gidaro
     Robert Sickels
20   Rebecca Blair
     Alyson Oliver
21   Will Riley
     Jaime Kendall
22   John Alexander
     Doug Jones
23   Bryan Bleichner
     Greg Lyons
24   John Lichtenstein
     John Fishwick
25
```

<u>VIA PHONE FOR THE PLAINTIFFS</u> (CONTINUED):

Kristi Osterday
George Nolan
Bill Leader
Ed Jazlowiecki
Forest Horne
David Gibson
J. Scott Sexton
Gale D. Pearson
Robert Randall
Timothy Wickstrom
Deborah Gresco-Blackburn
James Girards
Elizabeth Cabraser
Melvin Wright
Jenney Keaty
Michael Pattanite
Douglas Mulvaney
Daniel Clayton

```
 1                    PROCEEDINGS
 2            THE CLERK:  All rise.  Thank you.  Please be
 3    seated.  Court is now in session in the matter of in re:
 4    New England Compounding Pharmacy, Incorporated Products
 5    Liability Litigation.  This is Case Number 13-MD-02419.
 6    Counsel, please note your appearances for the record.
 7            MS. PARKER:  Good afternoon, your Honor,
 8    Kristen Johnson Parker for the plaintiffs' steering
 9    committee.
10            THE COURT:  Good afternoon.
11            MS. DOUGHERTY:  Good afternoon, your Honor,
12    Kim Dougherty, plaintiffs' steering committee.
13            MR. ZAMORA:  Hello, Judge, Mark Zamora,
14    plaintiffs' steering committee.
15            MR. FENNELL:  Good afternoon, Judge,
16    Patrick Fennell for plaintiffs' steering committee.
17            THE COURT:  Good afternoon, all.  Back table
18    for plaintiffs'.
19            MR. MOLTON:  Good afternoon, your Honor,
20    David Molton from Brown, Rudnick for the official
21    creditors' committee.
22            MS. ANDREWS:  Good afternoon, your Honor,
23    Anne Andrews, co-chair of the official creditors'
24    committee.
25            MR. COREN:  Good afternoon, your Honor,
```

1  Michael Coren, co-chair of the official creditors'

2  committee.

3         MR. ELLIS:  Rick Ellis, various plaintiffs.

4         MR. GALLIGAN:  Your Honor, Mike Galligan,

5  creditors' committee liaison with the PSC.

6         MR. GOTTFRIED:  Michael Gottfried for Paul

7  Moore, trustee.

8         MR. FERN:  Good afternoon, Judge, Frederick

9  Fern from Harris, Beach, NECC liaison counsel.

02:02PM  10         MR. TRANEN:  Daniel Tranen, NECC.

11         MS. SAMSON:  Good afternoon, your Honor,

12  Nikki Samson for Medical Sales Management, Inc.

13         MR. NADEL:  Good afternoon, your Honor,

14  Heidi Nadel for Doug and Carla Conigliaro.

15         MR. MORIARTY:  Good afternoon, your Honor,

16  Matt Moriarty for Ameridose.

17         THE COURT:  Good afternoon, all.  We are

18  joined, as usual, by a number of lawyers on the

19  telephone.  I have the agenda in front of me, the

02:03PM  20  proposed agenda which I guess I propose to follow.  You

21  all have received my order and memorandum on the motion

22  to transfer cases.  We'll get to that in due course, but

23  let me hear first on item Number 1, which is the status

24  of proposed case management order, protective orders and

25  medical release.

1          Ms. Parker.

2          MS. PARKER:  Good afternoon, your Honor, the

3   plaintiffs' steering committee along with the creditors'

4   committee have been working diligently with the

5   defendants in this matter to put together a

6   comprehensive case management order that would address,

7   among other things, discovery, filing of master

8   complaints as well as possibly tolling agreements and

9   mediation or settlement protocols for un affiliated

02:04PM   10   defendants, referring to defendants other than NECC.

11          We had a very productive meet and confer

12   this morning, your Honor.  I believe that we have

13   resolved the vast majority of our disagreements on that,

14   and we look forward to presenting a case management

15   order to you shortly.

16          It is our hopes to have that case management

17   order filed on Friday.  We understand that your Honor is

18   away for the next several weeks, and so we're trying to

19   get that to you quickly.  It is possible that in order

02:04PM   20   to do that, we may wind up filing competing proposals on

21   particular paragraphs.  We hope that that will not be

22   the case.  That case management order goes hand-in-hand

23   with two protective orders that the parties are working

24   on.

25          The first is a qualified protective order to

 1   deal with information that is privileged under --

 2   protected under HIPAA, the health insurance -- let's see

 3   if I can do it, the Health Insurance Portability Act.

 4           THE COURT:  HIPAA.

 5           MS. PARKER:  Close enough, sorry, and also

 6   various state law provisions that protect health

 7   information.  We intend to put before you an agreed upon

 8   order that is the type of order that has been entered in

 9   other MDLs to deal with protected healthcare information

02:05PM 10   and to explain why we're pushing that order now, your

11   Honor.

12           As we have described, I believe, to the

13   Court at the last status conference, the plaintiff

14   steering committee is ready to serve subpoenas on pain

15   clinics asking them for information about their

16   purchases and interactions with NECC as well as the

17   names of individuals who received NECC products.

18           We are not asking for medical records from

19   those entities.  We are, however, asking for names of

02:05PM 20   patients that received products.  Because that

21   information would be covered under HIPAA, we are asking

22   that the Court enter a protective order that would

23   specifically deal with how that information is produced

24   and where it is stored.

25           The idea is to identify a HIPAA compliant

1    vendor that we have issued requests for qualifications

2    in that regard and to have all of the information

3    produced to the HIPAA-compliant vendor where it would be

4    held in a black box pending further order of this Court.

5            One of the purposes for collecting all of

6    that information has to do ultimately with ensuring that

7    notices provided to claimants of the bankruptcy.  There

8    are other purposes in collecting that information as

9    well, which go to establishing the liability of NECC as

02:06PM  10   well as the pain clinics and other potential defendants.

11           So from the plaintiffs' perspective, the

12   qualified protective order is a necessary prerequisite

13   to having the pain clinics produce information in

14   response to our subpoena discovery efforts.

15           Now, the meet and confer with the defendants

16   on this has been very positive.  I don't believe we've

17   had any serious significant concerns raised by any of

18   the defendants about this particular proposed order, but

19   I understand that the defendants are going to get back

02:07PM  20   to us hopefully shortly with any further comments, and

21   it is our hope that we file that order, the qualified

22   protective order, by Thursday.

23           THE COURT:  All right.  In terms of my own

24   schedule, I am going to be in Washington next week.  I

25   will be on vacation the week after that.  My enthusiasm

1    for working on things will be higher when I am in

2    Washington than when I'm on vacation, and if it really

3    is agreed to, and I have a chance to read it, I can get

4    it out fairly quickly.  Obviously, the fewer disputes,

5    the easier it will be for me to do that, but I will do

6    my best.

7              MS. PARKER:  One final comment, as

8    contemplated in the case management order, there would

9    be an opportunity for anyone who objected to the

02:08PM   10    subpoena and the information requested in the subpoena

11    to appear before this Court to lodge any objections

12    thereto, so simply because we have a qualified

13    protective order in place does not necessarily mean that

14    we will in fact wind up receiving all of that

15    information, or put differently, there's an opportunity

16    for everyone to object.

17              THE COURT:  All right.  Who wants to take

18    the lead for the defense in responding?

19              MR. FERN:  I'll be glad to.

02:08PM   20              THE COURT:  Mr. Fern.

21              MR. FERN:  Thank you, your Honor.  Not much

22    to add to what Ms. Parker has shared with the Court.

23    The qualified protective order I do not believe there

24    will be much in controversy there, and Thursday filing

25    should be quite possible.  Again, we -- that is more so

1    to protect the plaintiffs and the various healthcare

2    providers to whom those subpoenas are being served.

3    NECC and what we call the affiliated defendants really

4    do not have much influence or input into those

5    responses.

6              As to the protective order, we have

7    negotiated an informal discovery demand with the

8    steering committee.  That is being worked on.  My office

9    has people going through those documents, reviewing them

02:09PM    10   for various privileges that might apply.  As soon as the

11   protective order can be agreed upon, submitted to the

12   Court to be so ordered, then we will start the rolling

13   production of documents.  That will, for the most part,

14   allow the PSC to identify what they call the national

15   defendants, the potential defendants who were involved

16   with work at NECC as well as state specific defendant of

17   various healthcare providers who provided the injections

18   to the individuals in their home states.

19             So that protective order should be back by

02:10PM    20   the end of the week, assuming that we can agree on it

21   with the steering committee.  Again, you should see that

22   early next week I anticipate, your Honor.

23             THE COURT:  All right.  Does anyone want to

24   be heard on that topic, anyone from the plaintiffs' side

25   of the house?  From the defense?  Trustees, any other

1   interested observers?  All right.  Good.  Topic 2,

2   Ms. Parker.

3          MS. PARKER:  So we've covered the CMO, your

4   Honor.  In terms of the mediation order, the plaintiffs

5   are drafting, and, again we'll meet and confer with the

6   defendants as appropriate as to a mediation program or

7   protocol that would pertain to the unaffiliated

8   defendants, meaning defendants other than those that are

9   affiliated with NECC.

02:10PM  10          I'm not going to promise the timing on that,

11   your Honor, but I will say that it is something we are

12   actively working through and we hope to have to you very

13   soon.

14          THE COURT:  All right.  Anyone want to be

15   heard on that topic?

16          MR. MOLTON:  Your Honor, David Molton for

17   the respective creditors' committee.  I just want to

18   place that in context.  As your Honor knows, the

19   affiliated defendants are presently engaged in

02:11PM  20   settlement discussions with the trustee pursuant to the

21   bankruptcy court-entered protocol.

22          What the mediation order as contemplated by

23   the CMO -- and there will be a provision in the CMO that

24   will discuss that and provide a time frame for

25   delivering a proposed order to your Honor -- does is

```
 1   provide the analog to that consensual set resolution
 2   mechanism that's being utilized by the trustee, but this
 3   time in terms of the nonaffiliated defendants, and
 4   hopefully it will provide incentives for nonaffiliated
 5   defendants, unaffiliated defendants, to join in a
 6   mediation program that can quickly and expeditiously
 7   bring everybody to possible resolution.
 8              THE COURT:  All right.  Item 3, status of
 9   discovery efforts.  Ms. Parker.
10              MS. PARKER:  So the plaintiffs have prepared
11   subpoenas that are ready to go out, your Honor.  As I
12   mentioned, we're waiting for the entry of a qualified
13   protective order.  I say waiting.  That's on us to
14   submit it to you, certainly not waiting for the Court.
15              There is one issue that I wanted to preview
16   with you there.  As contemplated in the case management
17   order, there would be -- let me back up.  The plaintiffs
18   intend to issue all of these subpoenas out of the MDL
19   and believe that they would all be centrally enforceable
20   by this Court in this district.
21              We have contemplated two things in that
22   regard.  The first is to submit to your Honor a simple
23   motion that asks you to enter an order that instructs
24   that any objections to the subpoenas should be filed in
25   this district before this Court, and that motion will
```

02:12PM (line 10)

02:12PM (line 20)

1    provide some of the legal authority for your Honor to do

2    that, but I will note that these are all depositions,

3    I'm sorry, these are all subpoenas that are seeking

4    depositions of recordkeepers as well as documents to be

5    produced.

6            And as such, we believe that there's no

7    dispute that that falls within your Honor's ability to

8    centrally conduct discovery as embodied in the statute

9    that actually created the judicial panel on

10   multi-district litigation as well as the transferee

11   court's responsibilities.  We hope to have that to you

12   shortly.

13           THE COURT:  Okay.

14           MS. PARKER:  The second issue to preview

15   there is we wondered whether or not the Court would want

16   to set now a time to hear any objections to those

17   subpoenas that are issued.  The idea would be to provide

18   notice to the defendants as we send out the subpoenas

19   that the date of a hearing or a date by which any

20   objections should be filed.  We would suggest that we

21   certainly could do this at the next status conference,

22   which is scheduled for July 18th.

23           We also think the timing contemplated, if

24   you give a two-week opportunity to object to the

25   subpoenas, it may be appropriate to have a hearing

1    around the first week of July.

2         THE COURT:  All right.  The only issue

3    there, that depends on a number of things happening, the

4    CMO being in place, a subpoena going out, my granting

5    this motion concerning the venue or jurisdiction for

6    enforcing them.  It seems to me that July 18th is

7    probably the right date.  If your question is what date

8    should be typed in so that things are lined up and ready

9    to go, I would type in July 18th.

02:14PM   10         MS. PARKER:  Excellent, thank you, your

11    Honor.

12         THE COURT:  I think it is optimistic to do

13    it before that.  Why don't we handle it that way.

14    Anything else on the discovery efforts, Ms. Parker?

15         MS. PARKER:  No, your Honor.

16         THE COURT:  Anything else on discovery from

17    any other defendant or other interested party?

18    Mr. Fern, anything to add?

19         MR. FERN:  Nothing to add, thank you.

02:15PM   20         THE COURT:  Topic 4 is procedure for

21    transferring state cases pursuant to my order, which I

22    left, as you know, open-ended.  I guess there are

23    several subparts, the first is which precise cases at

24    this point are subject to the order and what, if

25    anything, I need to do to effectuate the transfer of

1    those cases I have ordered transferred.

2              MR. FERN:  Judge, I'm glad to report that

3    there are no such cases currently pending transfer where

4    one of the affiliated defendants are party together with

5    a local healthcare provider.  We have a number of cases

6    that are in state court that you are aware of from our

7    last hearing in Tennessee and in Virginia.

8              There is one case, the Stewart case that is

9    in Alabama which we removed from state court.  That was

02:16PM  10   a remand motion to be heard yesterday in that court, and

11   we basically, the papers we submitted were a copy of

12   your memo and order advising the Court that you had

13   ordered that case should be removed and brought here.

14             I assume that that Federal Court Judge will

15   abide by your prior order.  Other than that, there are

16   no other cases that are currently pending which would be

17   subject to the order for transfer here.

18             THE COURT:  Just to make it clear if I

19   didn't in my opinion, this is obviously a dynamic

02:16PM  20   situation in the sense that the lineup may change in a

21   particular case particularly, and I don't know how it's

22   going to play out, obviously, but if, for example, there

23   is some kind of bar date or something that prompts

24   actions in some of these cases where unaffiliated

25   defendants decide that they do want to make a

1    contribution on an indemnity claim against an affiliated

2    defendant, that may change the mix, but I'm going to

3    take this as they come, if they come.

4              So I think I hear you saying, Mr. Fern, that

5    at this point there's nothing for me to do?

6              MR. FERN:  That's correct, Judge.

7              THE COURT:  Music to my ears.  Ms. Parker,

8    do you have any reason to disagree with that?

9              MS. PARKER:  No, your Honor, I don't.

02:17PM   10   THE COURT:  I do need to clear up for my

11   opinion, ARL Bio Pharma was unhappy that I listed them

12   as an affiliated entity.  I will grant the motion to

13   correct my memorandum and order and issue a corrected

14   order by deleting the reference to ARL, which I think is

15   in footnote 1.

16             Anything else on that topic generally?

17   Ms. Parker.

18             MS. PARKER:  No, your Honor.

19             THE COURT:  Mr. Fern.

02:18PM   20   MR. FERN:  No, Judge.  When the situation

21   does arise, we've looked at this, and I don't believe we

22   even have to take that case and do a tag-along to the

23   JPML and then have a CTO issued.  Based upon your order,

24   if that case can get removed to Federal Court either by

25   ourselves, if we are a party, or by the local healthcare

1    provider, it is hopeful that by providing a copy of your

2    decision to the Judge in that jurisdiction, that case

3    could be transferred here directly into the MDL.

4    Hopefully we can do that via cross-findings.  If the

5    situation arises where we need the Court's assistance,

6    then we will take that next step.

7              THE COURT:  All right.  Does the trustee

8    want to weigh in on this, Mr. Gottfried?

9              MR. GOTTFRIED:  Yes, we agreed with

02:18PM  10   everything else that's been said so far essentially.

11   There are no pending cases that we're aware of that

12   would be subject to your order that are not presently

13   here.  We think this really is an issue with respect to

14   future cases, and it's our hope that certainly if it's a

15   case that we're directly involved in, we'll remove it

16   pursuant to your order, and we would expect that given

17   notice, the healthcare provider would do the same

18   subject to the categories of your order.

19             THE COURT:  All right.  Good, good, good.

02:19PM  20   Item 6.

21             MS. PARKER:  So in the process of attempting

22   to -- this really is the defendant's issue.  I'll

23   explain how I believe it is HIPPA written.  In the

24   process of attempting to meet and confer with defendants

25   about proposed case management orders, we have realized

1    that it may make some sense to appoint a liaison for the

2    defendant groups, the unaffiliated defendant groups, let

3    me put it that way.

4              Now, the PSC does not have a position as to

5    whether there should be one additional liaison for the

6    national defendants and one additional liaison for the

7    pain clinics and health provider defendants, but we do

8    think it makes sense to have someone who occupies a

9    liaison role that we can reach out to and speak with in

02:20PM  10   the process of doing these things, and that is not

11   necessarily someone who would bind all of the defendants

12   but at minimum someone that we could reach out to who

13   could collect comments from those defendants and

14   interface with the plaintiffs' steering committee.

15             THE COURT:  Remind me who I appointed as

16   state federal liaison because I've forgotten and don't

17   have it in front of me.

18             MS. PARKER:  That's Mark Chalos, your Honor.

19   He is not with us today.

02:20PM  20             THE COURT:  Okay.  Is that a role that he

21   could fulfill or is that not appropriate?

22             MS. PARKER:  Well, the idea, your Honor,

23   was --

24             THE COURT:  This is liaison counsel, meaning

25   someone from -- well, you tell me.  Go ahead.  This is

```
 1    not someone actually representing the affiliated
 2    defendants or do I have that backwards?
 3              MS. PARKER:  We were suggesting that it
 4    would be defense counsel for the defendants.
 5              THE COURT:  I'm sorry.  So you have one
 6    phone call to make, in other words?
 7              MS. PARKER:  Correct.
 8              THE COURT:  Then the question is how does
 9    that process come about?  I don't have -- at least my
10    belief is to the extent that there are defendants in
11    state cases, I don't have jurisdiction over them, but
12    presumably there are several who are named in cases over
13    which I do have jurisdiction, in other words, it's not a
14    coterminous set, right?
15              MS. PARKER:  That's correct, your Honor.
16    There are, as I understand it, pain clinics that are
17    currently defendants in this MDL, although I concede I
18    don't have my service list in front of me, so I can't
19    tell you which.
20              MR. FERN:  Judge.
21              THE COURT:  Go ahead.
22              MR. FERN:  This may not require action
23    today.  I think it's a topic that we're bringing to the
24    Court's attention as we are negotiating the CMO
25    regarding discovery of nonaffiliated defendants as well
```

1    as discovery of the national defendants, from which I

2    spoke about before, it would be appropriate that they

3    have some input into the process on the CMO and future

4    CMOs as they are submitted to the Court, so this is

5    probably not ripe for today, but it was put on the

6    agenda to bring it to the Court's attention, so this

7    may, and Mr. Coren on behalf of the PSC had, I thought,

8    a very intelligent idea this morning that there might be

9    one liaison on behalf of the state defendants, all the

02:22PM    10    pain clinics and then another liaison on behalf of the

11    national defendants who would be more localized who had

12    done work or vendors at NECC.

13           If the Court goes that way and selects two

14    liaison counsels, then in addition to myself and

15    Mr. Moriarty and Ms. Nadel and others, this may then

16    turn into, Judge, as we have a plaintiffs' steering

17    committee, we may want to organize a defendants'

18    steering committee so everyone is on the same page and

19    we're able to coordinate our efforts on the defense side

02:23PM    20    of the table.

21           THE COURT:  All right.  It sounds in the

22    abstract like a good idea, and perhaps having two

23    liaison counsel, because they are somewhat differently

24    situated, the local vendors and so forth as opposed to

25    state or regional pain clinics or healthcare providers,

1    but I'll leave it, I will entertain any reasonable

2    proposal, and I'll leave it at that for now.

3              Anything further on that topic?  Ms. Parker.

4              MS. PARKER:  No, your Honor.

5              THE COURT:  All right.  Status of bankruptcy

6    proceedings.

7              MS. PARKER:  I was going to direct it to the

8    trustee.

9              MR. GOTTFRIED:  Well, here I am.  Your

02:23PM  10   Honor, I want to report to you that Mr. Moore is

11   continuing to negotiate with so-called affiliated

12   defendants, believes that that process is progressing,

13   that he has requested and is obtaining additional

14   information from them, and he is satisfied that that

15   process is moving forward appropriately.

16             He is continuing to administer the estate,

17   collect the accounting receivables.  He continues to get

18   product returns, he is rejecting leases, and as you may

19   have noted last night, the U.S. Attorney's Office and

02:24PM  20   Mr. Moore's office, we agreed to a form of notice with

21   respect to the motion to modify the preservation order.

22             I don't know if you've had a chance to look

23   at that, but that is something that we did negotiate

24   with the U.S. Attorney's Office, and both are satisfied

25   with that proposed order and form of notice, so long as

```
 1   the Court is.

 2           THE COURT:  I will grant that motion and

 3   issue the order in the proposed form with the notice

 4   attached.

 5           MR. GOTTFRIED:  Thank you, your Honor.

 6   Then, lastly, I would simply just inform the Court,

 7   nothing to be done today, that Mr. Moore is working on a

 8   bar date motion, and that's something that he's in

 9   process, having reflected on the Court's decision.

10           THE COURT:  Where do matters stand with

11   regard to the individual officers and so forth, the

12   trustee's efforts in that regard to "clawback," if

13   that's the right word, various funds from the

14   individuals?

15           MR. GOTTFRIED:  That is the subject matter,

16   at least in part, of the discussions that are ongoing,

17   and those individual defendants are represented in those

18   discussions.

19           THE COURT:  All right.  Anything further on

20   that topic?

21           While we're on the subject of affiliated

22   companies, I still have pending various motions to

23   dismiss by Alaunus, which it makes me nervous to have

24   motions -- "nervous" isn't the right word, anxious,

25   perhaps, to have motions pending for a long period of
```

02:25PM (line 10)

02:25PM (line 20)

1    time without a plan for resolving them.

2              I don't know if it makes sense to put that

3    toward the top of the agenda or not, but they're

4    12(b)(6) motions that ordinarily I would take up early

5    on in the case and decide yes or no.  It may be folded

6    in with the issue of the master complaint.

7              Does someone want to take up the issue of

8    how I address that?  Yes, sir.

9              MR. CIPORKIN:  Yes, your Honor,

02:26PM  10    Ryan Ciporkin for Alaunus Pharmaceutical.  Given the

11    status of the ongoing discussions between the trustee

12    and the affiliated defendants, where Alaunus is simply,

13    I think the word I used, "forbearing" on its motions to

14    dismiss for the time being, and we've already discussed

15    a provision in the CMO where there would be a temporary

16    stay on the response deadlines, which could be

17    terminated in the event that, you know, there would be

18    other conditions, but essentially the Court won't need

19    to take, excuse me, any action on the motions right now.

02:27PM  20              I'm not suggesting that the Court deny the

21    motions but just leave them on the docket for the time

22    being.

23              THE COURT:  All right.  I will leave that

24    where it is, and to the extent that I have been rolling

25    over response dates generally to complaints or motions

```
 1    to dismiss, they'll be rolled over again to the next
 2    status on July, is it, 18th?
 3               THE CLERK:  Yes.
 4               THE COURT:  I will have the clerk's note
 5    reflect that as well so everyone is protected in that
 6    regard.
 7               MR. CIPORKIN:  Thank you, your Honor.
 8               THE COURT:  Anything else on that issue?
 9               MS. ANDREWS:  Your Honor --
10               THE COURT:  Yes.
11               MS. ANDREWS:  -- a short report from
12    counsel, Mr. Molton, who speaks for our committee, but
13    I'm going to go first this time.  From the creditors'
14    committee, we want the Court to know that a Herculean
15    effort over the past two weeks has gone on merging the
16    interests and the personnel of the plaintiffs' steering
17    committee and the creditors' committee to align in a
18    very important way for the goals that are being rolled
19    out through CMO, very important people worked this
20    morning, Ms. Parker, Mr. Coren, others in the room,
21    attended a very long meeting with defense counsel and
22    made progress on one of the biggest case management
23    orders I have seen tackled in an MDL to get this case
24    moving quickly.
25               That's the report from our side that for
```

02:27PM (line 10)

02:28PM (line 20)

1    these interested parties, and we represent all

2    creditors, that the cost saving of this type of work for

3    the creditors and victims of this case is enormous, and

4    we're looking forward to getting this case management

5    order out to you very quickly.

6                THE COURT:  Thank you, I appreciate that.

7    Number 8, product identification.

8                MR. FERN:  Judge --

9                THE COURT:  Mr. Fern.

02:29PM  10                MR. FERN:  -- Number 8 and 9 on the agenda

11   basically can be dealt with simultaneously.  The Court

12   has spoken numerous times since our first appearance

13   before you regarding identification of the product that

14   the claimants were exposed to.  The only way that's

15   going to happen, Judge, is to have access to the

16   plaintiffs' medical records to confirm that they were

17   injected with an NECC compounded product within I'll say

18   the appropriate time frame.

19                I think the plaintiffs' side will disagree

02:29PM  20   with me on the time frame, and there is also some

21   disagreement as to whether or not we are looking at

22   methylprednisolone acetate only or whether we are

23   looking at other products, whether they be cardioplegic,

24   sulphamic, but we'll leave that for another day.

25                I have taken on the responsibility, and I

1   had obtained a number of proposals from I think three

2   different national corporations who will agree to gather

3   the records for us, and this would be a joint effort.

4          The beauty of this, Judge, both the

5   plaintiffs and the defendants would have access to the

6   records in order to minimize the cost to both the estate

7   and the plaintiffs' side.  The records would then be put

8   online to be worked out as to how and who would have

9   access via password, and the cost sharing would also be

02:30PM   10   worked out.

11          I have submitted those three proposals to

12   the plaintiffs' steering committee.  I hope that they've

13   been shared with other members of the committee.  I'm

14   waiting for word back.  I thought this was the best way

15   to go, having been involved in doing this in other MDLs,

16   including in Vioxx, there was a sharing of medical

17   records.

18          In another case I'm involved with, another

19   MDL I'm involved with in New Jersey, we have shared the

02:31PM   20   medical records, though we only have 191 cases before

21   the Court at the moment, and we anticipate hundreds

22   more, I was of the opinion -- and I may be the only

23   one -- that there's no reason why not to get started on

24   this effort now and not wait for the deluge of multiple

25   cases to be filed in anticipation of the bar date.

```
 1              THE COURT:  And, again, just to restate, you
 2    know, what I was trying to communicate is these records
 3    are what they are.  They exist.  One way or another
 4    they're going to have to be collected somehow at some
 5    point no matter what the forum is.  The plaintiff will
 6    have to come forward, and the defendants will have to
 7    access what is the evidence that they were exposed to an
 8    NECC product and what injury resulted from that, and I
 9    didn't see any reason to hold off on that particularly.
10              If we could make headway on it, and as long
11    as you all are paying attention to it, what Mr. Fern
12    proposes may or may not be the right approach, but I
13    don't see any particular reason for delay because even
14    with "only 191 cases," there's still a lot of work to be
15    done, I would assume a lot of medical providers and so
16    forth, you know, where medical records have to be
17    collected, releases have to be executed and so on.  I'm
18    sure there's work that needs to be done.
19              MR. FERN:  Judge, if we can, I will continue
20    to negotiate with the steering committee.  We will
21    select, hopefully, a vendor or have further negotiations
22    with a vendor to get to a price that we are both content
23    with and see if we could start that process, which would
24    then require also negotiating on a form of release on
25    authorization that would then have the vendor's name to
```

1    be receiving all of the records.  They would have the

2    originals.  They would be scanned, they would be made

3    available to both sides simultaneously.  There would be

4    no analysis, it would just be the pure records online

5    available to both sides at sharing of the cost.

6                    THE COURT:  All right.  Ms. Parker, do you

7    want to weigh in here?

8                    MS. PARKER:  From the plaintiffs' steering

9    committee's perspective, your Honor, there is no

02:33PM  10   question that the product identification records and

11   medical records will need to be produced in this MDL.

12                   We also have no objection in principle to

13   sharing medical records with the defendants, assuming

14   that we can iron that out and come to a workable

15   arrangement.  We have Mr. Fern's proposals, and we will

16   review those and get back to him.  Mr. Fern asked the

17   question, Why not get started now?  I'd like to speak to

18   that for a moment, if I may.

19                   THE COURT:  Okay.

02:33PM  20   MS. PARKER:  We know that these information

21   have to be produced.  We know that they will be produced

22   in the context of a bankruptcy bar date.  We know the

23   claimants will be required to provide that information

24   a, hopefully, short time down the road.  The reason that

25   we may or may not want to do it now has to do with cost,

1    and that is both the cost of producing the records but

2    also for counsel in reviewing the records, for

3    contacting clients to walk them through the process of

4    all of this, and no one is suggesting that those costs

5    would be inappropriate, but we do come from the

6    perspective of recognizing that this is a limited fund

7    case and that the plaintiffs' steering committee and

8    others, the creditors' committee -- I won't speak for

9    the trustee or the defendants -- but certainly we're

02:34PM  10   all, I think, working on the assumption that we want to

11   maximize the return to the plaintiffs in a limited fund

12   scenario.

13          From our perspective, we appreciate the

14   defendants who are electing to litigate cases as opposed

15   to those defendants who were involved in the trustee

16   settlement process may want to push aggressively for

17   medical records now so as to be able to litigate those

18   cases.  We don't understand, to be frank, the need from

19   NECC's perspective to request this information now.  We

02:35PM  20   expect it will be produced shortly in relation to the

21   bar date motion.

22          THE COURT:  All right.  I don't intend to

23   micromanage this until I need to.  I express no opinion

24   as to whether it's desirable to do it now, tomorrow or

25   the day after tomorrow or as to what format it has to be

1    done in.  I'm content to hear at this point that you are

2    both actively considering the issue and take into

3    account, as I think you should, various factors

4    including the fact that this has to be done inevitably,

5    but you also want to minimize cost and inconvenience,

6    and presumably you do need to prioritize something,

7    whatever that thing is.

8              I'll leave it at this point to your

9    collective judgment and negotiation as to how to

02:35PM  10    proceed.  I'm going to leave it at that for the time

11    being.

12              MS. PARKER:  Thank you.

13              THE COURT:  All right.  Is that it?  Are

14    there other things that we need to talk about?

15    Ms. Parker.

16              MS. PARKER:  I was remiss in not listing the

17    preservation order issues on today's agenda, but I

18    believe Mr. Gottfried has addressed those.

19              MR. GOTTFRIED:  Yes, thank you.

02:36PM  20              MS. PARKER:  The only other issue that I'd

21    bring to the Court's attention is really a plea from the

22    plaintiffs' steering committee, which is perhaps your

23    Honor could mention in his minute order that all counsel

24    for defendants whose cases are now in the MDL should

25    enter a notice of appearance so that we are then able to

1    track them and find them and include them in our

2    negotiations.

3                THE COURT:  So ordered.

4                MS. PARKER:  Thank you.

5                THE COURT:  And if there are any other

6    management-type details like that that need to be

7    addressed, don't hesitate to raise them.  You can

8    contact Mr. Cicolini, you don't need to wait for our

9    monthly status conferences.  That is exactly the kind of

02:37PM  10   thing that will drive all of us crazy if we aren't

11   paying close attention and crossing the Ts and dotting

12   the Is.

13                Every counsel representing a party has to

14   enter an appearance.  We need to have a master list.  We

15   need to know who is in, who is not, who represents what

16   party and so on.  It will be utterly unworkable if we

17   don't have that accurate and up-to-date information.

18                Anything else from the plaintiffs?

19                MS. PARKER:  No, thank you, your Honor.

02:37PM  20                THE COURT:  From the creditors' committee?

21                MR. COREN:  No, your Honor.

22                THE COURT:  Trustee?

23                MR. GOTTFRIED:  Nothing further, your Honor.

24                THE COURT:  Any defense counsel?

25                MR. MORIARTY:  Just one item, your Honor.

```
 1              THE COURT:  Yes.
 2              MR. MORIARTY:  In the way of expectation
 3    management, we've been talking a lot about the CMO
 4    today.  It was 22 pages long in its draft.  What we have
 5    found in the meet and confer process is that some of
 6    those are more urgent than others and some require more
 7    work than others, so what you may actually get is CMO1
 8    and then followed by --
 9              THE COURT:  I think CMO, I think we're up to
10    No. 7 or 9.
11              MR. MORIARTY:  Several other shorter ones.
12              THE COURT:  Put the right number on it,
13    okay, yes.
14              MR. MORIARTY:  So you may get these in a
15    sequence, I just wanted you to know so you weren't
16    expecting some tome at the beginning.
17              THE COURT:  That's fine as well.  I would
18    rather resolve those issues that can be resolved
19    quickly, and if we need to defer on others, that's fine,
20    too.  All right.
21              (Discussion held off the record.)
22              Mr. Cicolini was just telling me that if
23    every attorney has entered an appearance, that means
24    every time we do anything, we have to send notifications
25    to every attorney, and the system bogs down.  One might
```

02:38PM (lines 9-10)

02:38PM (lines 19-20)

1    think in 2013 we could handle a data problem like this,

2    but I think we need to have everyone enter an

3    appearance.  It may be that we provide notice in some

4    different way, maybe through liaison counsel.  There may

5    be other ways that we handle this.  If I have to issue

6    an order to expedite matters, I will, but I do think

7    it's important that we know which lawyers represent

8    which parties and that we have a record of that.

9              All right.  I think our next meeting is

02:39PM  10    July 18th.  Did I schedule one beyond that?

11              THE CLERK:  Yes, August 9th.

12              THE COURT:  What about for September?

13              THE CLERK:  Not yet.

14              THE COURT:  Why don't we find a date in

15    September before it gets all clogged up.

16              THE CLERK:  September 12th at 2:00.

17              THE COURT:  September 12th at 2:00.  The

18    Jewish holidays are unusually early this year.  When

19    does Yom Kippur start, on the sundown on the 12th?

02:40PM  20              MR. FERN:  On the evening of the 13th.

21              THE COURT:  It starts the 13th?

22              MR. FERN:  The evening of the 13th.

23              THE COURT:  So the 12th is okay?

24              MR. FERN:  Yes.

25              THE COURT:  September 12th at 2:00.  We'll

```
1   put that in the calendar as well.  Anyone else want to
2   be heard on any other topic?  All right.  Thank you,
3   all.
4                   MS. PARKER:  Thank you, your Honor.
5                   MR. FERN:  Thank you, Judge.
6                   (Whereupon, the hearing was adjourned at
7   2:40 p.m.)
8                   C E R T I F I C A T E
9
10  UNITED STATES DISTRICT COURT )
11  DISTRICT OF MASSACHUSETTS ) ss.
12  CITY OF BOSTON )
13
14          I do hereby certify that the foregoing
15  transcript, Pages 1 through 35 inclusive, was recorded
16  by me stenographically at the time and place aforesaid
17  in MDL NO. 13-02419-FDS, IN RE:  NEW ENGLAND COMPOUNDING
18  PHARMACY CASES LITIGATION and thereafter by me reduced
19  to typewriting and is a true and accurate record of the
20  proceedings.
21          Dated this June 24, 2013.
22                      s/s Valerie A. O'Hara
23                      _____
24                      VALERIE A. O'HARA
25                      OFFICIAL COURT REPORTER
```