UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | MDL No 2419 |
| THIS DOCUMENT RELATES TO: | Master Dkt: 1:13-md-02419-FDS |
| All Actions | |

## MICHIGAN PAIN SPECIALISTS' OBJECTIONS TO THE PLAINTIFFS' STEERING COMMITTEE'S SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

NOW COMES Michigan Pain Specialists ("MPS"), by and through its attorneys, HACKNEY, GROVER, HOOVER & BEAN, PLC, and submits the following objections to the subpoena served upon MPS on June 24, 2013 requesting the production of documents and things. MPS asks that the subpoena be quashed or modified pursuant to FED. R. CIV. P. 26 and 45(c)(3) for the reasons discussed below.

### STATEMENT OF FACTS

By way of background, MPS is a Michigan company that operates pain management clinics at various locations in Michigan. MPS is *not* a party to this multi-district litigation, but is a party to several state court actions involving allegations relating to the administration of methylprednisolone acetate ("MPA") purchased from the New England Compounding Pharmacy (hereafter referred to as "NECC"). Importantly, the

*HG*
*HB*

alleged NECC contaminated MPA was only administered at the MSP Brighton, Michigan clinic on certain dates during the months of August, September and October 2012.

On June 24, 2013, the Plaintiffs' Steering Committee ("PSC") for the above-captioned matter served a subpoena on MPS demanding production of 21 separate categories of documents/information. (A copy of the subpoena is attached as **Exhibit 1**.) The subpoena requires MPS to produce these demanded documents on July 15, 2013 in Southfield, Michigan. MPS objects to this subpoena for the reasons discussed below.

## ARGUMENT

### A.  Relevant Standards of Review

FED. R. CIV. P. 45(c)(3) permits this Court to quash or modify a subpoena that fails to allow reasonable time to comply, requires the disclosure of privileged or protected matter, or subjects a party to undue burden.

FED. R. CIV. P. 26(b)(1) limits the scope of discovery to non-privileged matters that are relevant to a party's claim or defense.

### B.  Objections

#### 1.  *The Subpoena does not Comply with the Qualified Protective Order issued by this Court*

On June 21, 2013, this Court entered an "Order Granting Plaintiff's Leave to Serve Subpoenas and Qualified Protective Order Regarding Protection of Health Information". In the Order, the Court provides a specific description of the documents that may be subpoenaed by the PSC. The Order provides:

> 2.  The information requested and produced **shall be limited to** the names of patients that have been identified as receiving NECC solutions, medications or compounds from January 2011 – November,

*HG*
*HB*

2

> 2012, the patients' last known address, the records identifying that NECC was the supplier of the solution, medication or compound, including lot number, the hospital or healthcare facilities' NECC product purchase records, including order forms, prescriptions, billing and accounts receivable, the hospital or healthcare facilities' NECC product storage and patient distribution records, and any other information that lead counsel and the PSC reasonably determine necessary to the prosecution and resolution of **these** actions. (Emphasis added.)

(See the Court's June 21, 2013 Order, Dkt. No. 192, at ¶ 2.)

The subpoena issued by the PSC far exceeds what is permitted by the Court's Order. By way of example only, the Court permitted the discovery of patient names and NECC purchase records related to those patients for the period of January 2011 through November 2012, yet the subpoena issued by the PSC seeks documents going as far back as October 6, 2007 and patient names for the period of October 6, 2010 through October 6, 2012. (See **Exhibit 1**, Exhibit A at ¶¶ 2, 6.)

Moreover, the subpoena goes well beyond seeking the names of patients and records reflecting the purchase of the medications from NECC. The subpoena demands, for example, information concerning the purchase of methylprednisolone acetate, or its generic equivalents, from any manufacturer other than NECC. (*Id.* at ¶ 2) The subpoena demands all internal and external communications by MPS relating to complaints of adverse effects of medication from NECC. (*Id.* at ¶ 7.) The subpoena demands a copy of all NECC marketing information in the possession of MPS. (*Id.* at ¶ 12.) The subpoena even goes so far as to demand copies of MPS' professional liability insurance policies, corporate documents and organizational charts, and identification of its owners. (*Id.* at ¶¶ 17-21.)

Clearly, the PSC has abused the very limited and specific authority granted by this Court to request the names and addresses of patients who were given medications

manufactured by NECC between January 2011 – November, 2012 and the product purchase records related to the medications used in treating those patients.

In addition to the fact that the scope of the requested documents exceeds the narrow authority granted by this Court, the PSC also failed to follow the procedural aspects of the Court's Order. Paragraph 3 of the Court's Order requires disclosure of the requested documents to a "third party vendor" selected jointly by the PSC. The subpoena that was issued to MPS, however, requires disclosure of the documents be made to Michigan Attorney Marc Lipton, Lipton Law, 18930 West Ten Mile Road, Suite 3000, Southfield, Michigan 48075. MPS has not been provided with any information that would verify that Mr. Lipton is the selected third-party vendor or that Mr. Lipton is obligated to abide by this Court's strict requirements for confidentiality as set forth in the Court's June 21, 2013 Order.

It should also be noted that Attorney Lipton, who upon information and belief is a member of the PSC, is also counsel of record with respect to numerous claim letters served upon MPS relating to the administration of medications manufactured by NECC. (See, e.g., **Exhibit 2**, a copy of an NOI served by Attorney Marc Lipton on March 28, 2013 identifying 48 claimants he intends to represent in Michigan state court actions against MPS.) Thus, is appears that this subpoena is being improperly used as an end-round to avoid discovery rules and limitations in state court. It has long been the policy of the federal courts to avoid federal court involvement that would result in conflicts in the interpretation of state law. *Adrian Energy Associates v. Michigan Public Service Comm.*, 481 F3d 414, 423 (6th Cir. 2007). Plaintiff's counsel should not be allowed to abuse the MDL discovery procedures to avoid state court rules concerning discovery.

HG
HB

Lastly, the PSC also failed to attach a copy of the Court's June 21, 2013 Order to the subpoena, as required in ¶ 15 of the Order.

### 2. The Subpoena Seeks Information that is Clearly Irrelevant and Constitutes Nothing More than an Improper Fishing Expedition

FED. R. CIV. P. 26(b)(1) limits the scope of discovery to non-privileged matters that are relevant to a party's claim or defense. The subpoena served upon MPS seeks documents that are clearly irrelevant to the above-captioned litigation; litigation to which MPS is *not* a party. By way of example only, and as noted above, the subpoena demands information concerning the purchase of methylprednisolone acetate from any manufacturer *other than NECC*; demands all internal and external communications by MPS relating to complaints of adverse effects of medication; demands a copy of all marketing information from MPS; and demand copies of MPS' professional liability insurance policies, corporate documents and organizational charts, and identification of the owners of MPS. None of these documents are remotely relevant to the claims pending against NECC. The subpoena also seeks documents relating to cardioplegic solution and ophthalmic solution. There are no claims, to this entity's knowledge, pertaining to these solutions. In addition, it should be noted that many of the patients whose information is being asked to be disclosed are *not* parties to the MDL. Indeed, is it evident that the subpoena, for the most part, is an improper fishing expedition to obtain information concerning potential new clients for plaintiffs' counsel.

Furthermore, and as noted above, the alleged NECC contaminated MPA was only administered out of one MPS location on certain dates in August, September, and October 2012. The PSC should not be permitted to impose this burdensome and all-

HG
HB

5

encompassing subpoena on MPS when its use of the alleged contaminated MPA was very limited.

### 3. MPS' Disclosure of Patient Information is a Violation of Michigan Law

MICH. COMP. LAWS § 600.2157 prohibits a physician from disclosing any information regarding his or her patients obtained during the course of rendering treatment. This statute provides in relevant part:

> Except as otherwise provided by law, a person duly authorized to practice medicine or surgery shall not disclose any information that the person has acquired in attending a patient in a professional character, if the information was necessary to enable the person to prescribe for the patient as a physician, or to do any act for the patient as a surgeon.

This rule of non-disclosure (a/k/a the physician/patient privilege) is only waived under limited circumstances, such as where the patient initiates a professional malpractice claim against the physician. See MICH. COMP. LAWS § 600.2912f(1).

The subpoena served upon MPS in this action is not in relation to a professional malpractice claim filed by a patient against MPS. As noted above, MPS is not even a party to the MDL. Thus, requiring MPS to disclose the requested patient information without a proper release signed by the patient is in violation of Michigan statute.

Moreover, this violation is not excused by the Health Insurance Portability and Accountability Act ("HIPAA"), 42 USC 1320d *et seq*. The physician/patient privilege is purely a matter of state law and is controlled by state statute. See, *e.g.*, *Baker v. Oakwood Hosp. Corp.*, 239 Mich. App. 461, 470; 608 N.W.2d 823 (2000); FED. R. EVID. 501. In *Northwest Memorial Hosp. v. Ashcroft*, 362 F.3d 923, 925 (7th Cir. 2004), the Seventh Circuit expressly held that HIPAA is a procedural statute and **not** "an Act of

Congress that creates a privilege." Thus, the state law regarding the physician/patient privilege is unaffected by HIPAA. As such, and due to the fact that the subpoena does not arise out of a situation involving a claim by a patient against MPS, the disclosure of patient information in compliance with the subpoena issued by the PSC without a properly signed release would require MPS to violated the physician/patient privilege created by state law.

### 4.  The Subpoena is Unduly Burdensome, Overly Broad, and the Time Allotted for Compliance is Unreasonable

The sheer volume of irrelevant, unrelated, and privileged documents demanded by the PSC in its subpoena to MPS, as discussed above, makes it unduly burdensome. In addition, the subpoena is unduly burdensome where it exceeds this Court's timeframe and permitted scope of discovery as set forth in the Court's June 21, 2013 Order. And, the subpoena is overly broad and burdensome where it seeks information from all of the various MPS locations, and information for a two-year period, where the alleged contaminated MPA was only administered from a single MPS location and only on certain dates during the months of August, September, and October 2012. It also makes no sense to require MPS to divulge, in violation of the HIPAA and state law, the name of patients who were never administered the alleged contaminated MPA. Why should these names and their personal information be provided when these patients had no involvement in this matter whatsoever?

Moreover, the PSC has failed to provide MPS a reasonable amount of time within which to comply with the subpoena. Pursuant to FED. R. CIV. P. 34(b)(2)(A), a party typically gets 30 days to respond to a request for documents. Here, the subpoena was

served on June 24, and demands a response by July 15. Thus, MPS has only been given 21 days to respond. Even if MPS had been given 30 days, such a timeframe is far too short for the overly broad and burdensome subpoena issued to MPS.

Based on all of the above, the PSC has violated its obligation to avoid imposing an undue burden or expense on a person subject to a subpoena. FED. R. CIV. P. 45(c)(1). Moreover, if MPS is required to comply with such a burdensome subpoena, it is requested that the Court impose a requirement that MPS will be reasonably compensated for the time required to respond to the subpoena. FED. R. CIV. P. 45(c)(3)((C)(ii).

### 5.     *The Subpoena was not Properly Served*

Fed. R. Civ P. 45(b)(1) requires service of the subpoena by "delivering a copy to the named person". The person named in the subpoena is MPS' registered agent, John W. Chatas. The Proof of Service reflects, however, that the subpoena was served via certified mail and was not restricted to service upon Mr. Chatas. As it turns out, Mr. Chatas was not present when the subpoena was served and it was served upon an individual in the mailroom. (**Exhibit 3**, a copy of the Proof of Service and return receipt.) Thus, service was deficient.

### CONCLUSION

Based on the foregoing, Michigan Pain Specialists requests the Court issue an Order quashing the subpoena. In the alternative, Michigan Pain Specialists requests the Court issue an Order modifying the subpoena consistent with the objections raised above, provide Michigan Pain Specialists with a reasonable amount of time to respond to

HG
HB

the subpoena, and impose a requirement that MPS will be reasonably compensated for the time required to respond to the subpoena.

Respectfully submitted,

**HACKNEY GROVER HOOVER & BEAN**
Attorneys for Michigan Pain Specialists

BY: Randy J. Hackney (P28980)
C. Mark Hoover (P27574)
1715 Abbey Road, Suite A
East Lansing, MI 48823
(517) 333-0306

Dated: 7/8/2013

### CERTIFICATE OF SERVICE

This will certify that a true and accurate copy of the foregoing was served on all parties hereto by virtue of the Court's electronic filing system this 8th day of July, 2013.

Gloria Wesaw

*HG*
*HB*

9