

MARC E. LIPTON
JODY B. LIPTON

STEFFANI CHOCRON
RONALD K. WEINER
KYLE J. KELLY

KIMBERLY NORMAN
NICOLE K. FREY
CHRIS J. CAMPER

*Of Counsel*
WILLIAM LIPTON

June 21, 2013

Michigan Pain Specialists
c/o Registered Agent, John W. Chatas
135 South Prospect Street
Ypsilanti, Michigan 48198

    Re:    *New England Compounding Center Litigation, MDL No. 2419*

Dear Mr. Chatas:

    Enclosed please find a press release and Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action issued to Michigan Pain Specialists in regard to the above referenced matter.

    If you have any questions or concerns, please feel free to contact me. I look forward to speaking with you.

Sincerely,

MARC LIPTON
marc@liptonlaw.com

MEL/jef
Enclosure
Cc via electronic mail:    Randy Hackney
David Thomas
Rob Sickels
Thomas Sobol

Exhibit 1

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

District of Massachusetts

| In re New England Compunding Pharmacy, Inc. | ) | |
|---|---|---|
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   MDL 1:13-md-02419 |
| | ) | |
| | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:   Michigan Pain Specialists – Brighton Location c/o Registered Agent, John W. Chatas 135 South Prospect Street Ypsilanti, Michigan 48198

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:
   See Exhibit A

| Place: Marc E. Lipton, Lipton Law, 18930 West Ten Mile Road, Suite 3000, Southfield, Michigan 48075 | Date and Time: 07/15/2013 5:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:   06/21/2013

*CLERK OF COURT*

OR

_____          /s/ Marc E. Lipton
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)* _____
Plaintiffs' Steering Committee_____ , who issues or requests this subpoena, are:
Marc E. Lipton, Lipton Law, 18930 West Ten Mile Road, Suite 3000, Southfield, Michigan 48075, marc@liptonlaw.com

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. MDL 1:13-md-02419

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____
was received by me on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

# Exhibit A to Subpoena

1.  Any and all documents and/or electronically stored information ("ESI") reflecting, and/or related in any way whatsoever to, the procurement of methylprednisolone acetate ("MPA") and any other injectable steroid preparations from New England Compounding Pharmacy, Inc. ("NECP") during the two-year period immediately preceding October 6, 2012, including without limitation of the foregoing, information reflecting dates of shipment and/or receipt, quantities of shipment, lot numbers and other identifying labels, sizes of containers of steroid preparation, the cost you paid for the steroid preparation, applicable warranties, shelf life, expiration dates, requirements and instructions for shipment and/or storage, and the specific identity of the preparation being purchased. Also including account information, prescriptions submitted to NECP, prescription order forms, NECP charges for MPA (before and after any discounts applied).

2.  Any and all documents and/or ESI reflecting, and/or related in any way whatsoever to, the procurement of MPA, or its generic or name-brand equivalent, from any producer, compounding facility or manufacturer other than NECP, since October 6, 2007, including without limitation of the foregoing, information reflecting dates of shipment and/or receipt, quantities of shipment, lot numbers and other identifying labels, sizes of containers of the product, the cost you paid for the product, applicable warranties, shelf life, expiration dates, requirements and instructions for shipment and/or storage, and the specific identity of the preparation being purchased.

3.  Any and all documents and/or ESI reflecting, and/or related in any way whatsoever to, the procurement of cardioplegic solution from NECP during the two-year period immediately preceding October 6, 2012, including without limitation of the foregoing, information reflecting dates of shipment and/or receipt, quantities of shipment, lot numbers and other identifying labels, sizes of containers of cardioplegic solution, the cost you paid for the cardioplegic solution, applicable warranties, shelf life, expiration dates, and requirements and instructions for shipment and/or storage. Also including prescriptions submitted to NECP, prescription order forms, NECP charges for cardioplegic solution (before and after any discounts applied).

4.  Any and all documents and/or ESI reflecting, and/or related in any way whatsoever to, the procurement of ophthalmic solution from NECP during the two-year period immediately preceding October 6, 2012, including without limitation of the foregoing, information reflecting dates of shipment and/or receipt, quantities of shipment, lot numbers and other identifying labels, sizes of containers of ophthalmic solution, the cost you paid for the ophthalmic solution, applicable warranties, shelf life, expiration dates, and requirements and instructions for shipment and/or storage. Also including prescriptions submitted to NECP, prescription order forms, NECP charges for opthalmic solution (before and after any discounts applied).

5.  Any and all documents and/or ESI reflecting, and/or related in any way whatsoever to, the procurement of preservative-free saline solution from NECP during the two-year period immediately preceding October 6, 2012, including without limitation of the

foregoing, information reflecting dates of shipment and/or receipt, quantities of shipment, lot numbers and other identifying labels, sizes of containers of saline solution, the cost you paid for the saline solution, applicable warranties, shelf life, expiration dates, and requirement and instructions for shipment and/or storage. Also including prescriptions submitted to NECP, prescription order forms, NECP charges for preservative-free saline solution (before and after any discounts applied).

6. Any and all documents and/or ESI reflecting, and/or related to, the identification of each and every patient that was administered an NECP product during the two-year period immediately preceding October 6, 2012, including patient name, address, date of birth, identification of product administered, and date product was administered.

7. Any and all documents and/or ESI reflecting or containing communications (written or otherwise) between Michigan Pain Specialists ("Healthcare Provider"), its employees, principals, partners, and/or agents, and NECP, its employees and/or agents, during the two-year period immediately preceding October 6, 2012, including, but not limited to, any complaints or adverse event reports made to NECP by the Healthcare Provider.

8. Any and all documents and/or ESI reflecting or containing information obtained by the Healthcare Provider, its employees and/or agents, regarding NECP, including without limitation of the foregoing, NECP's qualifications, certifications or accreditations, or lack thereof, regulatory compliance, lack of regulatory compliance, operations, enforcement actions, suitability for conducting its business, legal actions and/or warnings, brochures, policies and procedures, ordering and delivery information company overviews, standard operating procedures, executive summaries, attachments A, B or others (relating to HIPAA, NECP policies and procedures, or other information).

9. Any and all documents and/or ESI reflecting or containing information obtained by, or communications received by, the Healthcare Provider, its employees and/or agents, concerning the fitness of any products purchased or obtained from NECP for their intended use, during the two-year period immediately preceding October 6, 2012, including but not limited to any environmental testing results, microbiology reports or certificates of analysis.

10. Any and all documents and/or ESI reflecting or containing information obtained by, or sent to, the Healthcare Provider, its employees and/agents, from the Centers for Disease Control and Prevention, the Federal Food and Drug Administration, and/or any other Federal, state or local regulatory agency, concerning the fitness of any products manufactured, compounded or produced by NECP for their intended purpose.

11. Any and all documents and/or ESI reflecting or containing communications between the Healthcare Provider and any federal or state agency (including, but not limited to state licensing authorities, the Food and Drug Administration, and the Centers for Disease Control and Prevention) in connection with the procurement of products from any compounding pharmacy.

12. Any and all documents and/or ESI reflecting or containing marketing information from NECP, NECP's agents, or any sales company or person marketing, selling, or attempting to sell products on behalf of NECP.

13. Any and all documents and/or ESI reflecting or containing agreements, contracts and/or warranties between the Healthcare Provider and NECP, NECP's agents, or any sales company or person marketing, selling, or attempting to sell products on behalf of NECP.

14. Any and all documents and/or ESI reflecting or containing recall notices received by the Healthcare Provider pertaining to products produced by NECP, including without limitation of the foregoing, the date, time and manner of receipt of the recall notices, the specific person or persons within the Healthcare Provider who received the notice, and the substance of the notice.

15. Any and all documents and/or ESI reflecting or containing communications made or issued by the Healthcare Provider, its employees and/or agents, in response to any recall notice regarding NECP products, including without limitation of the foregoing, the date, time and manner of transmission of the communication, the person(s) to which the communication was directed, and the person at the Healthcare Provider who made or delivered the communication.

16. Any and all documents regarding any investigation or inquiry the Healthcare Provider performed related to attempts by NECP to comply with United States Pharmacopeia – National Formulary, Chapter 797 (USP – NF General Chapter 797, entitled "Pharmaceutical Compounding – Sterile Preparations").

17. Any and all policies of insurance, including without limitation of the foregoing, professional liability, malpractice, products liability, general liability, and comprehensive or umbrella policies, issued to the Healthcare Provider and/or its principal officers and directors and/or any physician working for or on behalf of the Healthcare Provider, for the policy periods including calendar years 2011, 2012 and 2013.

18. Articles of Incorporation and/or By-Laws applicable to the Healthcare Provider for calendar years 2011, 2012 and 2013.

19. Any and all documents and/or ESI reflecting or containing the names, addresses and positions (President, Vice-President, Director, etc.) within the Healthcare Provider of all officers and directors of the Healthcare Provider during the calendar years 2011, 2012 and 2013.

20. Any and all documents showing the entities or individuals with an ownership interest in the Healthcare Provider.

21. Any and all organizational charts maintained by the Healthcare Provider and/or any documents listing directors, officers, employees, and/or agents of the Healthcare Provider showing the names and positions of said directors, officers, employees, and/or agents and their relationship or rank within the Healthcare Provider.

## MICHIGAN PAIN SPECIALISTS SERVED WITH SUBPOENA IN LITIGATION INVOLVING MENINGITIS OUTBREAK

Discovery begins in cases consolidated in U.S. District Court in Massachusetts

FOR IMMEDIATE RELEASE: June 21, 2013
CONTACT: Rob B. Sickles, Telephone: 248-266.2536, E-mail: rsickels@sommerspc.com

(Brighton, MI)  June 21, 2013.  Today Michigan Pain Specialists, a pain management clinic in Brighton, was served with a subpoena requiring it to turn over documents in its possession that could shed light on allegations that its patients received injections of tainted medication that led to serious illness.

The subpoena originated in the U.S. District Court for the District of Massachusetts, which is overseeing the consolidation of most cases in Federal and state court alleging personal injury or wrongful death as a result of the contaminated injections.  The subpoena was issued by attorneys working in conjunction with a seven-member Plaintiffs' Steering Committee appointed by the District Court to initiate, coordinate and conduct all pretrial discovery of plaintiffs in all actions pending in that court.  The purpose of the subpoena is to investigate facts material to ongoing proceedings in the consolidated cases in Massachusetts, and does not necessarily indicate wrongdoing on the part of the clinic.  The issuance of the subpoena should not be interpreted as an allegation of wrongdoing on the part of the clinic.

Michigan Pain Specialists was one of many clinics nationwide identified by the Centers for Disease Control and Prevention (CDC) as having purchased and administered vials of contaminated methylprednisolone acetate ("MPA") that were produced by New England Compounding Pharmacy, Inc. (NECP) of Framingham, Massachusetts.  This is one of many subpoenas being served nationwide on most of the approximately 76 clinics across the country that have been identified as having dispensed NECP products.  The CDC has reported 264 cases of fungal meningitis infection, linked to the tainted compound, in the State of Michigan alone.

The subpoena requires Michigan Pain Specialists to produce for examination or copying, documents and communications between the clinic and NECP, including information reflecting purchasing decisions, items purchased, dates, quantities, pricing, storage of the medication and more.

According to Rob B. Sickles, this subpoena signals the next step of an ongoing investigation of the role clinics like Insight Imaging played in the distribution of contaminated medication.  "We believe the information we receive from Insight Imaging will help us understand how the outbreak of fungal meningitis infections occurred," Rob B. Sickles said.

The outbreak of fungal meningitis infections is the worst such outbreak in U.S. history.  The CDC has recorded more than 700 infections nationwide, and has not ruled out the possibility that this number will continue to grow.

As a result of the large number of actual and anticipated civil lawsuits arising from the outbreak, NECP filed for reorganization under Chapter 11 of the United State Bankruptcy Code, in the U.S. Bankruptcy Court in Massachusetts, on December 21, 2012. On February 12, 2013, the United States Judicial Panel on Multidistrict Litigation ordered the consolidation of all Federal cases in the U.S. District Court in Massachusetts.

On April 9, 2013 the Hon. F. Dennis Saylor, IV, presiding United States District Court Judge, appointed the Plaintiffs' Steering Committee, of which Thomas M. Sobol, an attorney with the firm Hagens Berman Sobol Shapiro LLP, is lead counsel. Rob B. Sickles is working with the Plaintiffs' Steering Committee to organize the litigation in the State of Michigan.

MARC E. LIPTON
JODY B. LIPTON

KYLE J. KELLY
STEFFANI CHOCRON
KIMBERLY NORMAN

# LIPTON LAW

*Of Counsel*
WILLIAM LIPTON

March 28, 2013

Michigan Pain Specialists, PLLC
John Chatas, MD, Resident Agent
3520 Green Court
Ste 100
Ann Arbor, MI 48105

Michigan Pain Specialists, PLLC
John Chatas, MD, Resident Agent
135 S. Prospect
Ypsilanti, MI 48198

In re: Fungal Meningitis Patients

Dear Sirs:

Please be advised that my office represents a number of individuals, <u>only some of whom are</u> specified below, who claim injury as a result of injection with steroids that were ordered, purchased, distributed, supplied and injected into them by Michigan Pain Specialists, PLLC, its physician employees and/or agents and/or staff. These patients claim that MPS may have negligently investigated NECC, unreasonably purchased from them, failed to warn their patients of the hazards associated with a compounding pharmacy, misrepresented the nature of the medication it was using, and, as to some patients, actually injected them after it knew, or should have known, of this particular contamination event.

More particularly, but without limitation, Michigan Pain Specialists, PLLC, its physician employees and/or agents and/or staff may be shown to be liable to the patients identified below, among others represented by this office, due to breaches of its obligations to exercise ordinary, reasonable care:

a. By procuring injectable steroids from NECC without conducting adequate due diligence regarding whether NECC was a reputable and safe supplier of sterile injectable compounds;
b. By Failing to visit NECC's facilities before procuring compounds to be injected into the epidural space and other anatomic locations of patients, as recommended by the American Society of Health System Pharmacists, in order to determine whether compounds were being prepared in a sterile environment, utilizing appropriate technique to ensure safety and sterility;
c. By Failing to determine whether NECC had a history of recalling compounded medications before procuring spinal injection medicines from that company;
d. By Failing to investigate NECC's regulatory history with the FDA and state regulatory agencies before procuring spinal injection medicines from NECC.
e. By Failing to determine whether NECC had a history of product liability suits before procuring spinal injection medicines from that company;

18930 West Ten Mile Road | Suite 3000 | Southfield, Michigan 48075 | Phone: 248.557.1688 | Fax: 248.557.6344 | www.liptonlaw.com

**Exhibit 2**

Page 2 of 5

    f.  By Failing to determine whether NECC was accredited by the PCAB and failed to obtain steroid medications for use in therapeutic injections only from an accredited compounding facility;

    g.  By injecting its patients with a steroid preparation that was obtained in a bulk transaction from NECC, rather than a patient specific prescription;

    h.  By Failing to implement policies and procedures that would prevent the procurement of purportedly sterile injectable medications from an out-of-state compounding pharmacy with deplorable sterility procedures, a history of product liability suits and a history of regulatory agency enforcement actions, warnings and advisories;

    i.  By purchasing MPA from NECC because it was less expensive than safer alternatives;

    j.  By Failing to inspect the vials of steroids used in the epidural steroid injection procedures performed upon its patients, and failing to observe the presence of dark particulate matter, failing to alert the manufacturer, the state and the federal government of the contamination;

    k.  By Failing to exercise reasonable and prudent care to ensure that the drug Defendants purchased and provided to its patients was made in compliance with Michigan's Public Health Code and/or the rules and regulations of the Michigan Board of Pharmacy;

    l.  By Failing to exercise reasonable and prudent care to ensure that the drug injected into its patients was prepared in sanitary, sterile conditions;

    m.  By Failing to properly inform its patients that the epidural steroid injection was not the FDA approved drug Depo Medrol, but rather, a non-FDA approved formula, prepared by a non-accredited compounding facility that was not regulated by the FDA;

    n.  By Failing to warn its patients of the risks and dangers associated with the injection of a preservative free steroid medication, including the increased risk of infection;

    o.  By Failing to exercise reasonable care to avoid injecting its patients with a contaminated drug;

    p.  By Failing to immediately remove from its stock, and failing to inform its staff and physicians of, medications that had been recalled by NECC;

    q.  By Failing to stop injecting patients with MPA procured from NECC despite a recall of the medication on or about September 25, 2012;

    r.  By Injecting its patients on and after September 26, 2012, with MPA obtained from NECC, despite having received notification of a recall on or about September 25, 2012;

    s.  Any and all other acts of negligence which may become known throughout the course of discovery.

Notice is hereby provided of these claims. By reference, this notice incorporates but is not limited to the claims outlined in the matter of Wertz v Michigan Pain Specialists, PLLC, assigned case no. 13-27357 NO by the Livingston County Circuit Court.

Page 3 of 5

This notice is general in nature, is based upon information reasonably available at the time of preparation, and does not limit the claims that will be brought in the future. Further, this notice does not limit the entities or individuals who may bring claims, or against whom claims may be brought. This notice is provided as a courtesy only, for your use as necessary. By providing it, we are not conceding that it is required by any applicable law, contract or regulation.

Further, I am aware of the request to you, your insurers, representatives and attorneys, by the law firm of Sommers Schwartz, PC (Attorney Robert Sickels) that we convene a meeting of all Plaintiffs' counsel, defense counsel and insurers to discuss the most efficient and equitable manner to resolve these claims. This State wide catastrophe calls for "outside the box" thinking, to provide a modicum of relief to the affected patients, and incidentally protect the providers who participated, even if unknowingly, in their current condition. I sincerely hope that you will consider this invitation and meet with those involved with an eye towards resolving these matters.

Sincerely,

MARC LIPTON
marc@liptonlaw.com

List of claimants, 3-27-2012

| Client | Date of Injection | Facility |
|---|---|---|
| Adair, Anna | 9/17/2012 | Mi Pain Specialists - Brighton |
| Asadoorian, Martha | 9/17/2012 | Mi Pain Specialists - Brighton |
| Bansale, Brenda | 8/28/2012 | Mi Pain Specialists - Brighton |
| Beach, Jack | 8/13/2012 | Mi Pain Specialists - Brighton |
| Bell, Alta | 9/6/2012 | Mi Pain Specialists - Brighton |
| Brown, Maurice | 9/18/2012 | Mi Pain Specialists - Brighton |
| D'Angelo, Cathy | 8/22/2012 | Mi Pain Specialists - Brighton |
| Dargan, Nancy | 8/28/2012 | Mi Pain Specialists - Brighton |
| Demeniuk, Thomas | 9/27/2012 | Mi Pain Specialists - Brighton |
| Denton, Joy | 9/25/2012 | Mi Pain Specialists - Brighton |
| Fairchild, Jessica | 8/12/2012 | Mi Pain Specialists - Brighton |
| Ferguson, Harvey | 9/24/2012 | Mi Pain Specialists - Brighton |

Page 4 of **5**

| Godlewski, Elaine | 9/5/2012 | Mi Pain Specialists - Brighton |
| --- | --- | --- |
| Jazanoski, Henry | 9/5/2012 | Mi Pain Specialists - Brighton |
| Johnson, Geraldine | 8/27/2012 | Mi Pain Specialists - Brighton |
| Jordan, Jessica | 9/26/2012 | Mi Pain Specialists - Brighton |
| Juntila, Delores | 8/27/2013 | Mi Pain Specialists - Brighton |
| Jusufi, Pam | 9/27/2012 | Mi Pain Specialists - Brighton |
| Kelly, Joy Alaine | 9/20/2012 | Mi Pain Specialists - Brighton |
| Kennedy, Brian | 9/12/2012 | Mi Pain Specialists - Brighton |
| Kidd, Pamela | 10/1/2012 | Mi Pain Specialists - Brighton |
| Kulchinski, Melinda | 8/27/2012 | Mi Pain Specialists - Brighton |
| Lee, Linda | 10/1/2012 | Mi Pain Specialists - Brighton |
| Mackey, Anja | 9/4/2012 | Mi Pain Specialists - Brighton |
| Meszaros, Brian | 9/25/2012 | Mi Pain Specialists - Brighton |
| Michelini, Jeanne | 10/2/2012 | Mi Pain Specialists - Brighton |
| Morrow, Betty | 9/17/2012 | Mi Pain Specialists - Brighton |
| Munch, Genevieve | 9/6/2012 | Mi Pain Specialists - Brighton |
| Osborn, Ronald | 8/23/2012 | Mi Pain Specialists - Brighton |
| Ostrowski, Beatrice | 10/1/2012 | Mi Pain Specialists - Brighton |
| Petchell, Linda | 8/29/2012 | Mi Pain Specialists - Brighton |
| Pew, Allison | 8/13/2012 | Mi Pain Specialists - Brighton |
| Przydzial, Alan | 8/11/2012 | Mi Pain Specialists - Brighton |
| Quattlander, Todd | 9/10/2012 | Mi Pain Specialists - Brighton |
| Randolph, Robert | 9/17/2012 | Mi Pain Specialists - Brighton |
| Schneider, Christina | 9/1/2012 | Mi Pain Specialists - Brighton |
| Smith, Darin | 10/1/2012 | Mi Pain Specialists - Brighton |
| Stratton, Glenda | 9/13/2012 | Mi Pain Specialists - Brighton |
| Szegda, Debra | 9/19/2012 | Mi Pain Specialists - Brighton |
| Thistlethwaite, Larry | 10/2/2012 | Mi Pain Specialists - Brighton |
| Thomas, William | 9/4/2012 | Mi Pain Specialists - Brighton |

Page **5** of **5**

| Thomson, Nancy | 9/13/2012 | Mi Pain Specialists - Brighton |
| --- | --- | --- |
| Todd, Emma | 9/10/2012 | Mi Pain Specialists - Brighton |
| Trammell, Sheri Lynn | 8/16/2012 | Mi Pain Specialists - Brighton |
| Vore, Richard | 8/21/2012 | Mi Pain Specialists - Brighton |
| Walker, Sandra | 9/12/2012 | Mi Pain Specialists - Brighton |
| Walker, William | 9/12/2012 | Mi Pain Specialists - Brighton |
| Werner, Marilyn | 9/17/2012 | Mi Pain Specialists - Brighton |

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
для the

District of Massachusetts

| In re New England Compounding Pharmacy, Inc. | ) | |
|---|---|---|
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. MDL 1:13-md-02419 |
| | ) | |
| | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) | ) |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Michigan Pain Specialists – Brighton Location c/o Registered Agent, John W. Chatas 135 South Prospect Street Ypsilanti, Michigan 48198

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

See Exhibit A

| Place: Marc E. Lipton, Lipton Law, 18930 West Ten Mile Road, Suite 3000, Southfield, Michigan 48075 | Date and Time: 07/15/2013 5:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date: __06/21/2013__

*CLERK OF COURT*

OR

_____          /s/ Marc E. Lipton
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*
Plaintiffs' Steering Committee , who issues or requests this subpoena, are:
Marc E. Lipton, Lipton Law, 18930 West Ten Mile Road, Suite 3000, Southfield, Michigan 48075, marc@liptonlaw.com

**Exhibit 3**

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. MDL 1:13-md-02419

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* Michigan Pain Specialists
was received by me on *(date)* _____ .

☑ I served the subpoena by delivering a copy to the named person as follows: Via Certified mail
_____ on *(date)* June 24, 2013 ; or

☐ I returned the subpoena unexecuted because: _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: June 28, 2013

_____
Server's signature

Samantha S. Stenquist, Legal Secretary
Printed name and title

THE MILLER LAW FIRM, P.C.
950 W. UNIVERSITY DRIVE
SUITE 300
ROCHESTER, MI 48307

Additional information regarding attempted service, etc:

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X [signature] ☐ Agent ☒ Addressee<br>B. Received by (Printed Name)  C. Date of Delivery 6/24/13 |
| 1. Article Addressed to:<br><br>Michigan Pain Specialists<br>c/o Registered Agent, John W. Chatas<br>135 South Prospect Street<br>Ypsilanti, Michigan 48198 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No |
| | 3. Service Type<br>☒ Certified Mail   ☐ Express Mail<br>☐ Registered      ☒ Return Receipt for Merchandise<br>☐ Insured Mail    ☐ C.O.D. |
| | 4. Restricted Delivery? (Extra Fee)   ☐ Yes |
| 2. Article Number (Transfer from service label) | 7008 3230 0000 3174 9559 |
| PS Form 3811, February 2004   Domestic Return Receipt | 102595-02-M-1540 |