Exhibit "A"

# *NATIONAL REGISTERED AGENTS, INC.*

## *SERVICE OF PROCESS SUMMARY TRANSMITTAL FORM*

To: DALE HETZLER
ERLANGER HEALTH SYSTEM
960 E. THIRD STREET
WHITEHALL BUILDING SUITE 413
CHATTANOOGA, TN 37403

SOP Transmittal # 522931812

800-592-9023 - Telephone

Entity Served:   ERLANGER HEALTH SYSTEM (Assumed Name) (Domestic State: TENNESSEE) (Served as To: Erlanger Health
Systems Name discrepancy noted.)

Enclosed herewith are legal documents received on behalf of the above captioned entity by National Registered Agents, Inc. or its Affiliate
in the State of TENNESSEE on this 17 day of June, 2013. The following is a summary of the document(s) received:

1. **Title of Action:**   In Re: New England Compounding Pharmacy, Inc., Pltf. vs. To: Erlanger Health Systems

2. **Document(s) Served:**   SUBPOENA
   Other: Letter/Proof of Service/Attachment(s)/Exhibit(s)

3. **Court of Jurisdiction/Case Number:** United States District Court - District of Massachusetts, MA
   Case # MDL113MD02419

4. **Amount Claimed, if any:** N/A

5. **Method of Service:**

   _X_ Personally served by:       _X_ Process Server       ___ Deputy Sheriff       ___ U. S Marshall

   ___ Delivered Via:       ___ Certified Mail       ___ Regular Mail       ___ Facsimile

   ___ Other (Explain):

6. **Date and Time of Receipt:** 06/17/2013 03:15:00 AM CST

7. **Appearance/Answer Date:**   July 8, 2013 at 9:00 a.m.

8. **Received From:**   J. Gerard Stranch, IV       9. **Federal Express Airbill #** 796021529176
   Branstetter, Stranch and Jennings
   227 Second Ave. N.       10. **Call Made to:** Not required
   Nashville, TN 37201

11. **Special Comments:**
   SOP Papers with Transmittal, via Fed Ex 2 Day

**NATIONAL REGISTERED AGENTS, INC.**       CopiesTo:

Transmitted by Amy McLaren

The information contained in this Summary Transmittal Form is provided by National Registered Agents, Inc. for informational purposes only and should not
be considered a legal opinion. It is the responsibility of the parties receiving this form to review the legal documents forwarded and to take appropriate action.

ORIGINAL

T 617.482.3700   F 617.482.3003



Thomas M. Sobol
HAGENS BERMAN SOBOL SHAPIRO LLP
55 CAMBRIDGE PARKWAY, SUITE 301
CAMBRIDGE, MA 02142
www.hbsslaw.com
Direct (617) 482-3700
tom@hbsslaw.com

June 17, 2013

Erlanger Health Systems
c/o Registered Agent, National Registered Agents, Inc.
800 S Gay St.
STE 2021
KNOXVILLE, TN 37929-9710

Re:    New England Compounding Center Litigation, MDL No. 2419

To Whom It May Concern,

As you are aware, last year New England Compounding Pharmacy, Inc. d/b/a the New England Compounding Center ("NECC") distributed tainted medication to various clinics throughout the country and specifically in Tennessee. Hundreds, if not thousands, of patients have been injured as a result of exposure to tainted NECC products. The most recent Center for Disease Control reports confirm that over 700 patients have confirmed illnesses related to their exposure to tainted NECC pharmaceuticals and over 240 people have confirmed cases of meningitis. Fifty-eight people have died.

We believe based on our preliminary investigation that Erlanger Health Systems purchased and received preservative free methylprednisolone actetate from at least one of the three contaminated lots distributed by NECC.

The Judicial Panel on Multidistrict Litigation created a multi-district litigation forum in the United States District Court for the District of Massachusetts to address federal lawsuits alleging harm related to products manufactured by NECC (No. 1:13-md-2419-FDS). The Honorable Judge Saylor appointed seven firms to the Plaintiffs' Steering Committee (PSC) and appointed me, Thomas M. Sobol of Hagens Berman Sobol Shapiro LLP, as Lead Counsel.

MDL Order No. 2 provides for the involvement of Lead Counsel "in any class or group settlement discussions, whether with a single defendant or multiple defendants, whether taking place in the MDL or the bankruptcy." (*Id.* At §7). The order also provides that the Plaintiffs Steering Committee shall have authority "to negotiate and propose settlement of cases on behalf of plaintiffs or plaintiff groups, including exploring

010337-13 616206 V1

June 17, 2013
Page 2

and, where appropriate, pursuing all settlement options concerning any claim or portion thereof of any case filed in this litigation." (*Id*. At §8(D)(1)).

Together, Lead Counsel and the PSC are charged with:

1.  Initiating, coordinating, and conducting all pretrial discovery on behalf of plaintiffs in all actions subject to this order;

2.  Developing and proposing to the Court schedules for the commencement, execution, and completion of all discovery on behalf of all plaintiffs;

3.  Issuing in the name of all plaintiffs the necessary discovery requests, motions, and subpoenas concerning any witnesses and documents needed to prepare for the trial of this litigation (similar requests, motions, and subpoenas may be caused to be issued by the PSC upon written request by an individual attorney in order to assist him or her in the preparation of the pretrial stages of his or her client's particular claims); and

4.  Conducting all discovery, by members or their designees approved by Lead Counsel, in a coordinated and consolidated manner on behalf and for the benefit of all plaintiffs.

NECC has filed for reorganization under Chapter 11 of the Bankruptcy Code. Lead Counsel and the PSC are coordinating their efforts with the Official Creditor's Committee and its counsel, and will share with the Creditor's Committee all appropriate information that you produce in response to the subpoena. The PSC and Lead Counsel are committed to working hand-in-hand with the Official Creditors' Committee to explore potential bankruptcy solutions. Lead Counsel and the Creditors' Committee will be involved in any such settlement discussions.

Lead Counsel and the PSC have designated J. Gerard Stranch of Branstetter, Stranch, and Jennings, PLLC to handle the day-to-day litigation of claims against Specialty Surgery Center.

Attached is a subpoena requesting information about your purchase, storage, and use of NECC products.

The subpoena requests some information that is protected under the Health Insurance Portability and Accountability Act of 1996 (HIPAA) and other privacy laws.

June 17, 2013
Page 3

We have asked Judge Saylor to enter an order in the MDL governing the production of this protected health information. (Dkt. Nos. 180-181) Once the order has been entered, we will identify a HIPAA-compliant vendor to receive (only) protected health information that is responsive to this subpoena. All other responsive information should be produced in accordance with the instructions in the subpoena.

We have also asked Judge Saylor to enter an order confirming that he will centrally enforce all subpoenas and instructing subpoena recipients to file any objections or motions to quash directly into the MDL. (Dkt. No. 182) Judge Saylor will hear any objections to subpoenas at the July 18, 2013 MDL status conference. (Dkt. No. 183)

Thank you. Please contact me or J. Gerard Stranch, IV with any questions.

Sincerely,

/s/ **Thomas M. Sobol**

Thomas M. Sobol
Partner
HAGENS BERMAN SOBOL SHAPIRO LLP

TMS:kjp
Enclosure

AO 88A (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Massachusetts

| | |
|---|---|
| In re: New England Compounding Pharmacy, Inc. | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.   MDL 1:13-md-02419 |
| | ) |
| | ) (If the action is pending in another district, state where: |
| *Defendant* | ) ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:  Erlanger Health Systems, via Registered Agent, National Registered Agents, Inc., 800 S. Gay St., Knoxville, TN
37929

☑ *Testimony:* YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a
deposition to be taken in this civil action. If you are an organization that is *not* a party in this case, you must designate
one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf
about the following matters, or those set forth in an attachment:

See Exhibit A

| Place: Erlanger Health Systems, 975 E. Third Street, | Date and Time: |
|---|---|
| Chattanooga, TN 37403 | 07/08/2013 9:00 am |

The deposition will be recorded by this method:  Stenographically and/or Videographically

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents,
electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the
material:

See Exhibit B

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule
45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are
attached.

Date:  6-17-13

*CLERK OF COURT*

OR

_____          _____
*Signature of Clerk or Deputy Clerk*                *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*
Plaintiffs' Steering Committee _____ , who issues or requests this subpoena, are:
J. Gerard Stranch, IV, Branstetter, Stranch, and Jennings, 227 Second Ave. N, Nashville, TN 37201

AO 88A  (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.  MDL 1:13-md-02419

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)*   ERLANGEZ HEALTH SYSTEMS, C/O
was received by me on *(date)* 1 7 JUN 2013  .     NATIONAL REGISTERED AGENTS, INC

☑ I served the subpoena by delivering a copy to the named individual as follows:

    ARICKA MULLIGAN

                                                      on *(date)*   6/17/13  ; or

☐ I returned the subpoena unexecuted because:

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____  .

My fees are $ _____  for travel and $ _____  for services, for a total of $   0.00  .

I declare under penalty of perjury that this information is true.

Date:   6/17/17

                            *Server's signature*

                    JENNIFER PLOTT           **PROCESS SERVER**
                            *Printed name and title*

                    KNOX COUNTY PROCESS SERVICE, INC
                    P. O. BOX 1748
                    KNOXVILLE, TN 37901-1748

                            *Server's address*

Additional information regarding attempted service, etc:

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

(c) Protecting a Person Subject to a Subpoena.

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(d) Duties in Responding to a Subpoena.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) Contempt. The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

EXHIBIT A

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

IN RE: NEW ENGLAND      )
COMPOUNDING PHARMACY, INC.  )    MDL No. 1:13-md-02419
PRODUCTS LIABILITY LITIGATION )

                          )    Hon. F. Dennis Saylor, IV
This Document Relates To: All Cases   )
                          )

## NOTICE OF TAKING ORAL DEPOSITION
## OF DESIGNATED REPRESENTATIVE(S)

Please take notice that on July 8, 2013 beginning at 9:00 a.m. at the offices of Erlanger Health Systems, 975 E. Third St., Chattanooga, TN 37403 the deposition of a designated corporate representative will be taken upon oral examination by one or more attorneys of the Plaintiffs' Steering Committee in the pending MDL, pursuant to Rule 30 of the Federal Rules of Civil Procedure for the purpose of discovery or for use as evidence in this action, and before an officer authorized by law to administer oaths. The deposition shall be recorded stenographically and/or videographically.

PLEASE TAKE FURTHER NOTICE that pursuant to Rules 30 and 34 of the Federal Rules of Civil Procedure, the non-party deponent(s) shall produce at the deposition the documents identified in Exhibit B attached to the subpoena contemporaneously served herewith.

Duty to designate. By designating a representative, the organization indicates its representative has the authority to speak on its behalf about the matters listed in this deposition notice – not only to facts, but also to subject beliefs and opinions.[1]

---

{004663/12496/00292146.DOCX / Ver.2}

**Duty to substitute.** If it becomes clear that the chosen representative is unable to respond to questions on the matters for which he or she has been designated, the organization must immediately provide a substitute knowledgeable witness. This is required even if the initial designation was made in good faith.[2]

**Duty to prepare.** The testimony elicited in the deposition represents the organization's knowledge, not the individual deponent's knowledge. The organization must conduct a thorough investigation in response to the deposition notice and must prepare any witness to testify to all matters "known or reasonably available to the organization." Therefore, if the organization's designee is not knowledgeable about the matters specified in the deposition notice, it must nonetheless prepare such designee to give knowledgeable, binding answers.[3]

"Reasonably available" information includes all documents that the organization has the authority, legal right, or practical ability to obtain. An inadequately prepared designated witness will amount to an impermissible refusal to answer and a sanctionable failure to appear.[4]

---

[1] *Lapenna v. Upjohn Co.*, 110 F.R.D. 15, 20 (E.D. Pa. 1986); *See also Alexander v. Fed. Bureau of Investigation*, 186 F.R.D. 148, 151-52 (D.D.C. 1999); *Mitsui & Co. v. Puerto Rico Water Res. Autho.*,93 F.R.D. 62, 66-67 (D.P.R. 1981).

[2] *See Marker v. Union Fidelity Life*, 125 F.R.D. 121, 126 (M.D.N.C. 1989).

[3] *United States v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C. 1996).

[4] *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 637 (D. Minn. 2000) (citing *Lumber v. PPG Industries, Inc.*, 168 F.R.D. 641, 643 n. 1 (D. Minn. 1966); *See Black Horse Lane Assoc., L.P. v. Down Chem. Corp.*, 228 F.3d 275, 303-04 (3d Cir. 2000); *Resolution Trust Corp. v. S. Union Co.*, 985 F. 2d 196, 197 (5th Cir. 1993); *Taylor*, 166 F.R.D. at 363; *Marker v. Union Fidelity Life Ins. Co.*, 125 F.R.D. 121, 126 (M.D.N.C. 1989).

EXHIBIT A

**Scope of inquiry** The description contained in the deposition notice simply identifies the minimum to which a witness must be prepared to testify. If an examining party asks questions outside the scope of the matters described in the notice, the general deposition rules govern.

## DESIGNATION OF TESTIMONY AND PRODUCTION OF DOCUMENTS

The designated matters upon which examination is requested are as follows:

1. To provide testimony regarding those individuals involved in the production of documents.

2. To provide testimony regarding the efforts made and the time expended in the production of documents.

3. To provide testimony regarding the methods of search and methods of production of documents produced.

4. To provide testimony regarding the authenticity of documents.

5. To provide testimony regarding the methods of storage, entry and use of computer data and the method by which it has been produced.

6. To provide testimony regarding the location and methods of storage of corporate documents.

7. To provide testimony regarding the existence of documents.

8. To provide testimony regarding the electronic creation, duplication and/or storage of the documents.

9. To provide testimony regarding any and all document retention/destruction policies that would relate to any of the documents.

{004663/12496/00292146.DOCX / Ver.2}

10. To provide testimony regarding the searchability of databases for the extraction of information.

11. To provide testimony regarding the procurement of methylprednisolone acetate ("MPA") and any other injectable steroid preparations from New England Compounding Pharmacy Inc. ("NECP") during the five-year period immediately preceding October 6, 2012, including without limitation of the foregoing, information reflecting dates of shipment and/or receipt, quantities of shipment, lot numbers and other identifying labels, sizes of containers of steroid preparation, the cost you paid for the steroid preparation, applicable warranties, shelf life, expiration dates, requirements and instructions for shipment and/or storage, and the specific identity of the preparation being purchased. Also including account information, prescription order forms, NECP charges for MPA (before and after any discounts applied).

12. To provide testimony regarding the procurement of MPA, or its generic or name-brand equivalent, from any producer, compounding facility, or manufacturer other than NECP, during the five-year period immediately preceding October 6, 2012, including without limitation of the foregoing, information reflecting dates of shipment and/or receipt, quantities of shipment, lot numbers and other identifying labels, sizes of containers of the product, the cost you paid for the product, applicable warranties, shelf life, expiration dates, requirements and instructions for shipment and/or storage, and the specific identity of the preparation being purchased.

13. To provide testimony regarding procurement of cardioplegic solution NECP during the five-year period immediately preceding October 6, 2012, including without limitation of the foregoing, information reflecting dates of shipment and/or receipt, quantities of shipment, lot numbers and other identifying labels, sizes of containers of cardioplegic solution, the cost you paid for the cardioplegic solution, applicable warranties, shelf life, expiration dates, and requirements and instructions for shipment and/or storage.

14. To provide testimony regarding the procurement of ophthalmic solution from NECP during the five-year period immediately preceding October 6, 2012, including without limitation of the foregoing, information reflecting dates of shipment and/or receipt, quantities of shipment, lot numbers and other identifying labels, sizes of containers of ophthalmic solution, the cost you paid for the ophthalmic solution, applicable warranties, shelf life, expiration dates, and requirements and instructions for shipment and/or storage.

15. To provide testimony regarding the procurement of preservative-free saline solution from NECP during the five-year period immediately preceding October 6, 2012, including without limitation of the foregoing, information reflecting dates of shipment and/or receipt, quantities of shipment, lot numbers and other identifying labels, sizes of containers of saline solution, the cost you paid for the saline solution, applicable warranties, shelf life, expiration dates, and requirements and instructions for shipment and/or storage.

16. To provide testimony regarding procurement of methylprednisolone acetate ("MPA") and any other product from New England Compounding Pharmacy, Inc. ("NECP") during the five-year period immediately preceding October 6, 2012, including without limitation of the foregoing, information reflecting dates of shipment and/or receipt, quantities of shipment, lot numbers and other identifying labels, sizes of containers of steroid preparation, the amount you paid for the steroid preparation, any discounts you received in purchasing the preparations, applicable warranties, shelf life, expiration dates, prescription order forms, any other account information, requirements and instructions for shipment and/or storage, and the specific identity of the preparation being purchased.

17. To provide testimony regarding the identification of each and every patient that was administered an NECP product during the five-year period immediately preceding October 6, 2012, including patient name, address, date of birth and identification of product administered.

18. To provide testimony regarding the identity of the name, address, phone number, and social security number of any patient that received any product manufactured by NECP from 2011-2012 and sufficient documents to identify the specific NECP product received by the patient.

19. To provide testimony regarding the communications (written or otherwise) between Erlanger Health Systems and/or Chattanooga-Hamilton County Hospital Authority ("Healthcare Provider"), its employees and/or agents, and

{004663/12496/00292146.DOCX / Ver.2}

NECP, its employees and/or agents, during the five-year period immediately preceding October 6, 2012.

20. To provide testimony regarding information obtained by the Healthcare Provider, its employees and/or agents, regarding NECP, including without limitation of the foregoing, NECP's qualifications, certifications or accreditations, or lack thereof, regulatory compliance, lack of regulatory compliance, operations, enforcement actions, suitability for conducting its business, legal actions and/or warnings, brochures, policies and procedures, ordering and delivery information company overviews, standard operating procedures, executive summaries, attachments A, B or others (relating to HIPAA, NECP policies and procedures, or other information)

21. To provide testimony regarding communications received by, the Healthcare Provider, its employees and/or agents, concerning the fitness of any products purchased or obtained from NECP for their intended use, during the five-year period immediately preceding October 6, 2012, including but not limited to any microbiology reports or certificates of analysis.

22. To provide testimony regarding information obtained by, or sent to, the Healthcare Provider, its employees and/agents, from the Centers for Disease Control and Prevention, the Federal Food and Drug Administration, and/or any other Federal, state or local regulatory agency, concerning the fitness of any products manufactured, compounded or produced by NECP for their intended purpose.

23. To provide testimony regarding marketing information from NECP, NECP's agents, or any sales company or person marketing, selling, or attempting to sell products on behalf of NECP.

24. To provide testimony regarding agreements, contracts and/or warranties between the Healthcare Provider and NECP , NECP's agents, or any sales company or person marketing, selling, or attempting to sell products on behalf of NECP.

25. To provide testimony regarding recall notices received by the Healthcare Provider pertaining to products produced by NECP, including without limitation of the foregoing, the date, time and manner of receipt of the recall notices, the specific person or persons within the Healthcare Provider who received the notice, and the substance of the notice.

26. To provide testimony regarding any investigation or inquiry the Healthcare Provider performed related to NECP's compliance with UPS 797.

27. To provide testimony regarding regarding the Healthcare Provider's and/or NECP's compliance with Tenn. Comp. R. & Regs. R. § 1140-01-.08.

28. To provide testimony regarding the Health Provider's compliance Tenn. Comp. R. & Regs. R. § 1140-01-.04.

29. To provide testimony relating to the Healthcare Provider's compliance with Tenn. Comp. R. & Regs. R. § 1140-01.05 for all NECP products dispensed by the Healthcare Provider.

30. To provide testimony regarding policies of insurance, including without limitation of the foregoing, professional liability, malpractice, products

{004663/12496/00292146.DOCX / Ver.2}

liability, general liability, and comprehensive or umbrella policies, issued to the Healthcare Provider and/or its principal officers and directors and/or any physician working for or on behalf of the Healthcare Provider, for the policy periods including calendar years 2011, 2012 and 2013.

31. To provide testimony regarding the ownership and management of the Healthcare Provider's operations.

32. To provide testimony regarding the identity of physicians and/or pharmacists that prescribed and/or dispensed NECP products to patients.

33. To provide testimony regarding the identity of any persons or entities that you believe may be liable, either through principals of comparative fault, joint tortfeasor, or any other related legal principal, for any injury suffered by any of the Healthcare Provider's patients as a result of exposure to NECP products.

34. To provide testimony regarding the identity of any expert, outside consultant, physician, and/or pharmacists that reviewed or approved the Healthcare Provider's use of NECP products.

35. To provide testimony regarding the decision of the Healthcare Provider to use NECP products.

36. To provide testimony on the identity of individuals who were responsible for the purchase, receipt, storage, and/or maintenance of NECP products for the three year period prior to October 6, 2012.

37. To provide testimony regarding the relationship between Erlanger Health Systems and the Chattanooga-Hamilton County Hospital Authority.

## **Exhibit B to Subpoena**

1.       Any and all documents and/or electronically stored information ("ESI") reflecting, and/or related in any way whatsoever to, the procurement of methylprednisolone acetate ("MPA") and any other injectable steroid preparations from New England Compounding Pharmacy, Inc. ("NECP") during the five-year period immediately preceding October 6, 2012, including without limitation of the foregoing, information reflecting dates of shipment and/or receipt, quantities of shipment, lot numbers and other identifying labels, sizes of containers of steroid preparation, the cost you paid for the steroid preparation, applicable warranties, shelf life, expiration dates, requirements and instructions for shipment and/or storage, and the specific identity of the preparation being purchased. Also including account information, prescription order forms, NECP charges for MPA (before and after any discounts applied).

2.       Any and all documents and/or ESI reflecting, and/or related in any way whatsoever to, the procurement of MPA, or its generic or name-brand equivalent, from any producer, compounding facility or manufacturer other than NECP, during the five-year period immediately preceding October 6, 2012, including without limitation of the foregoing, information reflecting dates of shipment and/or receipt, quantities of shipment, lot numbers and other identifying labels, sizes of containers of the product, the cost you paid for the product, applicable warranties, shelf life, expiration dates, requirements and instructions for shipment and/or storage, and the specific identity of the preparation being purchased.

3.       Any and all documents and/or ESI reflecting, and/or related in any way whatsoever to, the procurement of cardioplegic solution from NECP during the five-year period immediately preceding October 6, 2012, including without limitation of the foregoing, information reflecting dates of shipment and/or receipt, quantities of shipment, lot numbers and other identifying labels, sizes of containers of cardioplegic solution, the cost you paid for the cardioplegic solution, applicable warranties, shelf life, expiration dates, and requirements and instructions for shipment and/or storage.

4.       Any and all documents and/or ESI reflecting, and/or related in any way whatsoever to, the procurement of ophthalmic solution from NECP during the five-year period immediately preceding October 6, 2012, including without limitation of the foregoing, information reflecting dates of shipment and/or receipt, quantities of shipment, lot numbers and other identifying labels, sizes of containers of ophthalmic solution, the cost you paid for the ophthalmic solution, applicable warranties, shelf life, expiration dates, and requirements and instructions for shipment and/or storage.

5.       Any and all documents and/or ESI reflecting, and/or related in any way whatsoever to, the procurement of preservative-free saline solution from NECP during the five-year period immediately preceding October 6, 2012, including without limitation of the foregoing, information reflecting dates of shipment and/or receipt, quantities of shipment, lot numbers and other identifying labels, sizes of containers of saline solution, the cost you paid for the saline solution, applicable warranties, shelf life, expiration dates, and requirements and instructions for shipment and/or storage.

Exhibit B

6.      Any and all documents and/or electronically stored information ("ESI") reflecting, and/or related in any way whatsoever to, the procurement of methylprednisolone acetate ("MPA") and any other product from NECP during the five-year period immediately preceding October 6, 2012, including without limitation of the foregoing, information reflecting dates of shipment and/or receipt, quantities of shipment, lot numbers and other identifying labels, sizes of containers of steroid preparation, the amount you paid for the steroid preparation, any discounts you received in purchasing the preparations, applicable warranties, shelf life, expiration dates, prescription order forms, any other account information, requirements and instructions for shipment and/or storage, and the specific identity of the preparation being purchased.

7.      Any and all documents and/or ESI reflecting, and/or related to, the identification of each and every patient that was administered an NECP product during the five-year period immediately preceding October 6, 2012, including patient name, address, date of birth and identification of product administered.

8.      Sufficient documents to identify the name, address, phone number, and social security number of any patient that received any product manufactured by NECP from 2011-2012 and sufficient documents to identify the specific NECP product received by the patient.

9.      Any and all documents and/or ESI reflecting or containing communications (written or otherwise) between Erlanger Health Systems and/or Chattanooga-Hamilton County Hospital Authority ("Healthcare Provider"), its employees, principals, partners, and/or agents, and NECP, its employees and/or agents, during the five-year period immediately preceding October 6, 2012.

10.     Any and all documents and/or ESI reflecting or containing information obtained by the Healthcare Provider, its employees and/or agents, regarding NECP, including without limitation of the foregoing, NECP's qualifications, certifications or accreditations, or lack thereof, regulatory compliance, lack of regulatory compliance, operations, enforcement actions, suitability for conducting its business, legal actions and/or warnings, brochures, policies and procedures, ordering and delivery information, company overviews, standard operating procedures, executive summaries, attachments A, B or others (relating to HIPAA, NECP policies and procedures, or other information)

11.     Any and all documents and/or ESI reflecting or containing information obtained by, or communications received by, the Healthcare Provider, its employees and/or agents, concerning the fitness of any products purchased or obtained from NECP for their intended use, during the five-year period immediately preceding October 6, 2012, including but not limited to any microbiology reports or certificates of analysis.

12.     Any and all documents and/or ESI reflecting or containing information obtained by, or sent to, the Healthcare Provider, its employees and/or agents, from the Centers for Disease Control and Prevention, the Federal Food and Drug Administration, and/or any other Federal, state or local regulatory agency, concerning the fitness of any products manufactured, compounded or produced by NECP for their intended purpose.

{004663/12496/00290965.DOCX / Ver.1}

Exhibit B

13.     Any and all documents and/or ESI reflecting or containing marketing information from NECP, NECP's agents, or any sales company or person marketing, selling, or attempting to sell products on behalf of NECP.

14.     Any and documents and/or ESI reflecting or containing agreements, contracts and/or warranties between the Healthcare Provider and NECP , NECP's agents, or any sales company or person marketing, selling, or attempting to sell products on behalf of NECP.

15.     Any and all documents and/or ESI reflecting or containing recall notices received by the Healthcare Provider pertaining to products produced by NECP, including without limitation of the foregoing, the date, time and manner of receipt of the recall notices, the specific person or persons within the Healthcare Provider who received the notice, and the substance of the notice.

16.     Any and all documents and/or ESI reflecting or containing communications made or issued by the Healthcare Provider, its employees and/or agents, in response to any recall notice regarding NECP products, including without limitation of the foregoing, the date, time and manner of transmission of the communication, the person(s) to which the communication was directed, and the person at the Healthcare Provider who made or delivered the communication.

17.     Any and all documents regarding any investigation or inquiry the Healthcare Provider performed related to NECP's compliance with UPS 797.

18.     Any and all documents regarding the Healthcare Provider's and/or NECP's compliance with Tenn. Comp. R. & Regs. R. § 1140-01-.08.

19.     Any and all documents maintained by the Healthcare Provider related to Tenn. Comp. R. & Regs. R. § 1140-01-.04.

20.     Any and all documents maintained by the Healthcare Provider evincing its compliance with Tenn. Comp. R. & Regs. R. § 1140-01.05 for all NECP products dispensed by the Healthcare Provider.

21.     Any and all policies of insurance, including without limitation of the foregoing, professional liability, malpractice, products liability, general liability, and comprehensive or umbrella policies, issued to the Healthcare Provider and/or its principal officers and directors and/or any physician working for or on behalf of the Healthcare Provider, for the policy periods including calendar years 2011, 2012 and 2013.

22.     Articles of Incorporation and/or By-Laws applicable to the Healthcare Provider for calendar years 2011, 2012 and 2013.

23.     Any and all documents and/or ESI reflecting or containing the names, addresses and positions (President, Vice-President, Director, etc.) within the Healthcare Provider of all officers and directors of the Healthcare Provider during the calendar years 2011, 2012 and 2013.

24.     Any and all documents showing the entities or individuals with an ownership interest in the Healthcare Provider.

25.     Any and all organizational charts maintained by the Healthcare Provider and/or any documents listing directors, officers, employees, and/or agents of the Healthcare Provider showing the names and positions of said directors, officers, employees, and/or agents and their relationship or rank within the Healthcare Provider.

26.     Any and all documents showing the names of physicians and/or pharmacists that prescribed and/or dispensed NECP products to patients.

27.     Any and all documents related to the relationship between Erlanger Health Systems and the Chattanooga Hamilton County Hospital Authority.