UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ THIS DOCUMENT RELATES TO: All Actions ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) ) ) ) ) ) ) ) ) ) ) MDL No. 2419 Dkt. No 1:13-md-2419 (FDS) |

## MARTIN KELVAS'S OBJECTIONS TO THE PLAINTIFFS' STEERING COMMITTEE'S SUBPOENA

COMES NOW Martin Kelvas ("Kelvas") and files these Objections to the Plaintiffs' Steering Committee's ("PSC") Subpoena to Testify at a Deposition in a Civil Action and corresponding document request. This Court should quash or modify the subpoenas under Federal Rule of Civil Procedure ("FRCP") 45. Alternatively, the Court should issue a protective order under FRCP 26. PSC's subpoena is defective in the following ways:

- The subpoena violates FRCP 45 because it is not issued from the correct court.

- The subpoena violates FRCP 45 because notice has not been served on all parties to this litigation.

- The subpoena violates FRCP 45 by failing to attach a fee for one day's attendance.

- The subpoena violates the discovery stay and therefore exceeds the limited scope of discovery permitted by the Court.

- The subpoena subjects Kelvas to undue burden and expense.

- The subpoena seeks irrelevant information.

- The subpoena seeks the production of privileged or other protected matter.

1

## I.   BACKGROUND

The instant subpoena was issued on June 25, 2013 by J. Gerard Stranch, IV, a member of the PSC, and is issued from the District of Massachusetts.  (*See* Subpoena to Testify at a Deposition in a Civil Action and attachments, attached hereto as Exhibit A, at 10.)  The subpoena was not served on Kelvas until July 5, however.  The subpoena commands Kelvas to appear for a deposition at 9 a.m. on July 15, 2013 at the offices of Mark Zamora and Associates in Atlanta, Georgia.  (*See* Ex. A at 10.)  The subpoena failed to include a fee for one day's deposition attendance, and failed to indicate the manner of service or otherwise provide a record of the date and time of service—Kelvas was simply handed an envelope containing the subpoena and attachments (the entirety of which is encompassed in Exhibit A) by a process server at Kelvas's place of employment.

## II.   ANALYSIS

### a.   The subpoena is invalid on its face.

The subpoena fails to comply with the provisions of FRCP 45(a)(2)(B) and (C), which require that a subpoena be issued "from the court for the district where the deposition is to be taken" or "where the production or inspection is to be made."  That this matter is pending as multi-district litigation ("MDL") does not alter the requirements of FRCP regarding the court that is authorized to issue a subpoena.  *See U.S. ex. Rel. Pogue v. Diabetes Treatment Centers of Am. Inc.*, 444 F.3d 462, 468-69 (6th Cir. 2006) (describing the distinction between an issuing court and an enforcing court in multi-district litigation).  Therefore, the subpoena must be issued from the Northern District of Georgia—the judicial district in which Kelvas resides and where the deposition is set to take place—not the District of Massachusetts.  Accordingly, the subpoena to Kelvas is invalid on its face.

      **b.**     **The subpoena is procedurally deficient under FRCP 45(b)(1) because prior notice to each party was not given.**

FRCP 45(b)(1) requires that for subpoenas commanding the production of documents, electronically stored information, or tangible things, notice of the subpoena must be served on each party. Notice of the subpoena to Kelvas has not been provided in the MDL Master Docket, and, upon information and belief, it does not appear that Plaintiffs' counsel has otherwise provided notice to the other parties in the MDL by mail or electronic communications. Moreover, such notice should have been provided *before* service of the subpoenas. *See* Fed. R. Civ. P. 45 advisory committee's note to the 2007 amendment (adopting prior court interpretation that Rule 45(b)(1) requires notice to parties before service of the subpoena on the third-party). Therefore, the subpoena is procedurally deficient under Rule 45(b)(1).

      **c.**     **The subpoena is procedurally deficient under FRCP 45(b)(1) because it fails to include a fee for attendance and mileage.**

FRCP 45(b)(1) also requires that, where a subpoena requires a person's attendance, the fees for one day's attendance and mileage be tendered with the subpoena. The attendance fee is a minimum of $40 per day, and should also include fees for the time that the deponent is occupied in traveling to and from the place of attendance. *See* 28 U.S.C. § 1821(b). Here, the deposition location is set to take place at 6 Concourse Parkway, Atlanta, Georgia 30328. (*See* Ex. A at 10.) Kelvas's address is 4065 Rotterdam Pass, Hampton, Georgia 30228. (*Id.*) The distance to and from Kelvas's is over 40 miles each way; not an inconsequential distance when calculating time spent traveling to and from the deposition site. Similarly, mileage fees for over 80 miles of travel are not inconsequential.

Attendance and mileage fees must be tendered at the time the subpoena is served. *See, e.g.*, *CF & I Steel Corp. v. Mitsui & Co. (U.S.A.)*, 713 F.2d 494, 496 (9th Cir. 1983). The failure

to tender the requisite fees at the time of service renders the subpoena invalid.  *See In re Dennis*, 330 F.3d 696, 704-05 (5th Cir. 2003) ("The plain meaning of Rule 45(b)(1) requires *simultaneous* tendering of witness fees and the reasonably estimated mileage allowed by law with service of a subpoena.  The courts uniformly agree with this interpretation of Rule 45(b)(1), as do the leading treatises on civil procedure." (emphasis added) (citation and internal quotation marks omitted) (alterations in original)).  As the subpoena did not tender any fee to Kelvas at the time of service, it is further procedurally deficient under Rule 45(b)(1).

        **d.**       **The Subpoena violates the discovery stay and is not otherwise authorized by the Court.**

The New England Compounding Pharmacy, Inc. d/b/a the New England Compounding Center ("NECC" or "NECP") filed a voluntary petition for Chapter 11 Bankruptcy Protection on December 21, 2012.  The bankruptcy filing triggered an automatic stay of actions against NECC or property of its bankruptcy estate.  The PSC filed a Motion to Partially Lift Discovery Stay in the MDL Court on April 29, 2013.  In the Memorandum in Support of its Motion, the PSC stated that it sought to take discovery of the following entities: (1) "Pain clinics, hospitals, and other healthcare providers who purchased NECP's methyl prednisolone [sic] acetate, cardioplegic solution, or ophthalmic solution"; (2) "Vendors and contractors who worked on or were responsible for the conditions of the NECP facility"; (3) "Vendors who conducted sterility or other testing of NECP's products or equipment used to make the products"; and (4) "Suppliers who provided the raw materials used to create methyl prednisolone [sic] acetate, cardioplegic solution, or ophthalmic solution."  PSC Memo. [Dkt. No. 102] at 5-6.

Kelvas presumably received the instant subpoena because of his role as Director of Pharmacy for St. Thomas Hospital ("St. Thomas") during the relevant time period.  The cover letter included with the subpoena references litigation of claims against St. Thomas Outpatient

4

Neurosurgical Center (the "Clinic") and states that the instant subpoena requests "information about [Kelvas's] role in [the Clinic's] purchase, storage, and use of NECC products." (Ex. A at 2.) Contrary to the suggestions in the cover letter, however, St. Thomas did not purchase methylprednisolone acetate ("MPA") from one of the three contaminated lots distributed by NECC, nor has the Center for Disease Control identified St. Thomas as such an entity. In fact, as indicated in sworn written discovery provided by St. Thomas in related Tennessee state court litigation, St. Thomas did not purchase any MPA from NECC. Moreover, the sworn written discovery provided by St. Thomas and the Clinic indicate that St. Thomas—and by extension, Kelvas—were not involved in any purchasing decisions related to the Clinic's decision to acquire MPA from the NECC.

To the extent this Court has allowed discovery of "pain clinics, hospitals, and other healthcare providers who purchased NECP's methyl prednisolone [sic] acetate, cardioplegic solution, or ophthalmic solution," St. Thomas and Kelvas are not contained within this category of entities for which this Court has allowed discovery. As a result, any discovery against Kelvas would violate the MDL discovery stay.

Furthermore, the Court has not granted Plaintiffs leave to serve a subpoena on Kelvas. The Order granting leave to serve subpoenas (*see* Dkt. No. 192) expressly authorizes Plaintiffs' counsel to serve third-party subpoenas on the entities listed on the NECC Customer List located at http://www.fda.gov/downloads/Drugs/DrugSafety/FungalMeningitis/UCM325466.pdf.[1] (*See id.*) St. Thomas and Kelvas are not entities covered by the Court's Order. Therefore, the subpoena to Kelvas is not authorized by the Court and remains barred by the discovery stay.

---

[1] The Order also granted Plaintiffs leave to serve subpoenas on three other entities unrelated to STH or Kelvas. (*See* Dkt. No. 192, ¶ 10.)

### e. The subpoena subjects Kelvas to undue burden and expense.

FRCP 45(c)(1) requires the issuing attorney to take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The PSC has failed to meet this obligation. At the outset, the subpoena fails to provide Kelvas with any notice of the topics on which the PSC seeks to depose him. Accordingly, the scope and number of topics to be covered at any deposition could be unlimited. Without a listing of proposed deposition topics, Kelvas is unable to specifically object to specific deposition topics, and, similarly, is unable to adequately prepare for deposition. If the deposition to Kelvas is not quashed, the PSC will, in essence, be able to ambush Kelvas on any topic it chooses.

As to the specific document requests, the breadth and scope of the requests are staggering. Exhibit A to the St. Thomas subpoena identifies 31 different document requests including the following broad categories: (1) procurement and administration of any medications purchased from NECC or any injectable steroids regardless of manufacturer (Ex. A ¶¶ 1-6, 26-30); (2) any communications with or about NECC (*id.* ¶¶ 7-15, 21-22); (3) regulatory compliance with certain state Pharmacy Board Regulations (*id.* ¶¶ 16-18); (4) names of healthcare providers who prescribed, dispensed, or purchased NECC products (*id.* ¶¶ 19-20); (5) communications between Kelvas and all Saint Thomas Health, St. Thomas Network, and St. Thomas Hospital employees, officers, and agents (*id.* ¶¶ 23-25); and (6) contracts or agreements between Kelvas and various entities. (*Id.* ¶ 31.)

With the exception of the document requests listed below, all of the document requests seek documents that are not within Kelvas's possession or control. Kelvas is no longer employed by St. Thomas Hospital, and therefore no longer has possession or access to the majority of documents sought, even if such documents are in existence. Kelvas cannot produce

documents over which he has no control. Accordingly, the document requests referenced in Paragraphs 1-22 and 26-30 of Exhibit A are irrelevant, beyond the scope of discovery under FRCP 26, and not reasonably likely to lead to the discovery of relevant or admissible evidence regarding the issues in the MDL action. Kelvas further objects to these document requests as seeking documents and electronically stored information that are not reasonably accessible due to undue burden or cost, and this burden and expense outweighs any likely benefit of the requested information.

With respect to the documents requested in Paragraphs 23-25 (documents, correspondence, and/or ESI between Kelvas and employees, directors, officers, and/or agents of Saint Thomas Health, St. Thomas Network, and St. Thomas Hospital), any documents that Kelvas would have maintained would be related to his employment and would be entirely irrelevant to any issues in the MDL action. Similarly, any documents that are responsive to Paragraph 31 (contracts and/or agreements between Kelvas and St. Thomas Outpatient Neurosurgical Center, St. Thomas Hospital, Saint Thomas Health, St. Thomas Network, and/or the Howell Allen Clinic) are irrelevant to any issues in the MDL action. Kelvas was employed by St. Thomas Hospital and never had any contractual agreements or arrangements with the St. Thomas Outpatient Neurosurgical Center or the Howell Allen Clinic. Accordingly, the document requests referenced in Paragraphs 23-25 and 31 of Exhibit A are irrelevant, beyond the scope of discovery under FRCP 26, and not reasonably likely to lead to the discovery of relevant or admissible evidence regarding the issues in the MDL action. Kelvas further objects to these document requests as seeking documents and electronically stored information that are not reasonably accessible due to undue burden or cost, and this burden and expense outweighs any likely benefit of the requested information.

**f.     The subpoena seeks the production of privileged or other protected matter.**

Due to the breadth and scope of the document requests, the information requested necessarily includes documents and other information protected by the attorney-client privilege and the work-product doctrine.  Moreover, given the depth and breadth of the requested information, in conjunction with the very limited time within which to respond to the requests, it is impossible for Kelvas to review the documents and electronically stored information sufficiently to identify the applicability of privileges and for the specific objections, as discussed in Rule 45(d)(2)(A)(ii).  In the event the Court allows limited discovery of Kelvas and permits Kelvas a reasonable time within which to review its documents and electronically stored information, Kelvas reserves the right to assert applicable privileges and object to providing testimony or producing documents on the basis of such privilege.

### III.     CONCLUSION

In short, in light of the breadth and scope of the numerous discovery requests and under the circumstances—where it is undisputed that St. Thomas did not purchase any MPA from NECC and was not involved in the Clinic's purchase or administration of MPA from NECC—compliance with the deposition and production of documents identified in the subpoena imposes an undue burden on Kelvas.   The PSC failed to take any steps to avoid imposing undue burden and expense on Kelvas as it is required to do.  For the reasons set forth, Kelvas objects to responding to the subpoena.

> Respectfully submitted,
>
> FULBRIGHT & JAWORSKI L.L.P.
> 98 San Jacinto Blvd. Suite 1100
> Austin, Texas 78701
> (512) 536-2450
> (512) 536-4598 (FAX)

By:    */s/ Yvonne K. Puig*

      YVONNE K. PUIG
      Texas State Bar No. 16385400
      MARCY H. GREER
      Texas State Bar No. 08417650
      ERIC J. HOFFMAN
      Texas State Bar No. 24074427

      Attorneys for Martin Kelvas

## CERTIFICATE OF SERVICE

This certifies that a true and accurate copy of the foregoing was served on all parties hereto by virtue of the Court's electronic filing system this 9th day of July, 2013.  A copy has also been sent to the PSC via electronic mail to J. Gerard Stranch, IV.

      */s/ Eric J. Hoffman*
      Eric J. Hoffman