**MONTGOMERY McCRACKEN WALKER & RHOADS LLP**
(A Limited Liability Partnership Formed in Pennsylvania)
LibertyView, Suite 600
457 Haddonfield Road
Cherry Hill, New Jersey 08002
(856) 488-7700
*Counsel for Defendants Inspira Health Network, Inc.*
*and Inspira Medical Centers, Inc.*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

IN RE: NEW ENGLAND
COMPOUNDING PHARMACY, INC.
PRODUCTS LIABILITY LITIGATION
_____

THIS DOCUMENT RELATES TO:
*Hannah v. New England Compounding Pharmacy,*
*Inc. et al.,* Docket No. 13-cv-10407;
*Jones v. New England Compounding Pharmacy,*
*Inc. et al.,* Docket No. 13-cv-10409;
*Ramos v. New England Compounding Pharmacy,*
*Inc. et al.,* Docket No. 13-cv-10410;
*Rios v. New England Compounding Pharmacy,*
*Inc. et al.,* Docket No. 13-cv-10411;
*Rivera v. New England Compounding Pharmacy,*
*Inc. et al.,* Docket No. 13-cv-10412;
*Tayvinsky v. New England Compounding Pharmacy,*
*Inc. et al.,* Docket No. 13-cv-10414;
*Gould v. New England Compounding Pharmacy,*
*Inc. et al.,* Docket No. 13-cv-10444; and
*Normand v. New England Compounding Pharmacy,*
*Inc. et al.,* Docket No. 13-cv-10447

**Document Electronically Filed**

MDL No. 1:13-md-2419-FDS

## INSPIRA HEALTH NETWORK, INC. AND INSPIRA MEDICAL CENTERS, INC.'S MOTION TO QUASH THE PLAINTIFFS' STEERING COMMITTEE'S SUBPOENA

Defendants Inspira Health Network, Inc. and Inspira Medical Centers, Inc. (formerly

known as South Jersey Health System, Inc. and South Jersey Hospital, Inc.) (collectively,

"Inspira"), by and through their undersigned attorneys, respectfully submit this Motion to Quash

the Plaintiffs' Steering Committee's ("PSC") Subpoena ("Subpoena") to produce documents,

improperly served on June 26, 2012 in the captioned  multi-district litigation ("MDL").  The Subpoena should be quashed as it (1) unreasonably seeks to compel the production of multiple, broad categories of documents and information well outside the proper, limited scope of discovery and relevance in these proceedings; (2) will impose unreasonable burden and expense on Inspira; (3) is improperly directed to Inspira – as a party to this action; (4) is procedurally deficient on its face; (5) fails to allow a reasonable period of time to comply; and (6) has not been properly served.

<u>**PRELIMINARY STATEMENT**</u>

The cases in this MDL are about the harm caused by *three specific lots* of preservative-free methylprednisolone acetate ("MPA") produced by New England Compounding Center ("NECC") and injected after May 21, 2012 – nothing more.  The PSC, however, is attempting to expand these cases to every single product and every single lot number ever produced by NECC in the past five years and the patients who received them, which is evident by the scope and content of the countless subpoenas the PSC issued on non-parties and parties, including Inspira, when there is no evidence that the fungal meningitis outbreak is in any way linked to any NECC product other than the *three specific lots of MPA*.

The Centers for Disease Control and Prevention ("CDC") defines a "probable case" of meningitis as "[a] person who received a preservative-free methylprednisolone acetate (MPA) injection **with preservative-free MPA that definitely or likely came from one of the following three lots produced by the New England Compounding Center (NECC) [05212012@68, 06292012@26, 08102012@51]**, and subsequently developed…" certain identified conditions following an "…injection after May 21, 2012."  Centers for Disease Control and Prevention, Case Definitions for Meningitis and Other Infections,

http://www.cdc.gov/hai/outbreaks/clinicians/casedef_multistate_outbreak.html (last visited July 9, 2013) (emphasis in original).   The CDC, therefore, has defined the scope of patients at risk and the products tied to the fungal meningitis outbreak as individuals who received an injection from the three specific lot numbers of NECC MPA after May 21, 2012.  To date, that encompasses approximately 13,500 people.

Here, the PSC is attempting to impermissibly expand these cases far beyond the meningitis outbreak defined by the CDC to one defined by the PSC.  The Subpoenas request, among other things, product information, patient names, medical records, and finance and billing records, for a host of NECC products and MPA beyond the three specific lots at issue, including products that were not even produced by NECC.  None of this is in any way relevant to the cases or claims against Inspira or any other healthcare provider.  To allow the scope of discovery contemplated by the Subpoena – and not limit the scope of discovery to MPA from the three specific lot numbers and people who received an injection of such product after May 21, 2012 – is unjustified, prejudicial, and harmful to not just Inspira, but to the patients who received NECC products and MPA injections from lot numbers that have *not* been linked to (a) contamination, (b) the fungal meningitis outbreak, or (c) potential or actual harm.

The PSC, if given these patients' names and records, will undoubtedly contact them, which will needlessly subject such patients to fear and hysteria when they are told—for the first time—and are led to believe that they, too, are potentially at risk and could someday contract meningitis or suffer some other harm when there is absolutely no medical or any other evidence that such patients were or could be harmed by MPA from lots other than the three specific lots the CDC identified.  If there was any evidence that any other lot number or product, other than the three specific lots of NECC MPA, could be tied to the meningitis outbreak, the CDC would

have included such lots in the case definition and required healthcare providers, such as Inspira, to notify those patients in order for the patients to be evaluated.  Allowing baseless, reckless, and harmful discovery on all patients who did *not* receive an injection from one of the three specific lots would subvert the careful, deliberative, investigative, and expert analysis that the CDC and many other federal, state, and local health authorities undertook (and continue to undertake) in order to not only appropriately respond to and manage the outbreak, but also to identify the scope of patients at risk and the specific products and lots at issue.

Accordingly, while the subpoenas must be quashed, any discovery sought by the PSC – by subpoena or otherwise – must be limited to the scope of this case: *the harm caused by the three specific lots of NECC MPA and the patients who received an injection of such product after May 21, 2012.*

## PROCEDURAL BACKGROUND

On June 26, 2013, the PSC sent a copy of the Subpoena addressed to South Jersey Healthcare, an entity which does not exist, via e-mail to counsel for Inspira.  (*See* accompanying Declaration of Stephen A. Grossman at ¶ 3.)  On June 27, 2013, counsel for Inspira received an identical copy of the Subpoena via Federal Express.  (*Id.* at ¶ 4.)  The Subpoena, issued out of the District of Massachusetts, is signed by Patrick T. Fennell of the PSC and requests responsive production by July 15, 2013 to the law offices of Golomb & Honik in Philadelphia, PA.  (*Id.* at Ex. A.)

Pursuant to D. Mass. Local R. 7.1, counsel for Inspira met and conferred by telephone with the PSC regarding Inspira's objections to the Subpoena.  (*Id.* at ¶ 8.)  During that call, Inspira's counsel requested that the PSC withdraw the Subpoena because, among other reasons, District of Massachusetts law (*see*, *supra*, point B), does not allow the issuance of a Rule 45 subpoena on a party.  (*Id.* at ¶ 8.)  Counsel for Inspira invited the PSC to reissue its Subpoena as a proper Rule 34 request for the production of documents.  The PSC refused and told Inspira's counsel to go ahead and file the motion to quash.  (*Id.* at ¶¶ 8 & 10.)  Accordingly, Inspira had no choice but to file the instant motion.

## ARGUMENT

**A.     The Subpoena Exceeds the Scope of the Case, Violates the Court's Qualified Protective Order, Seeks Information Not Reasonably Likely to Lead to the Discovery of Admissible Evidence, and Creates an Undue Burden.**

The CDC defines a "Probable Case" of fungal meningitis as follows:

A person who received a preservative-free methylprednisolone acetate (MPA) injection, **with preservative-free MPA that definitely or likely came from one of the following three lots produced by the New England Compounding Center (NECC) [05212012@68, 06292012@26, 08102012@51]**, and subsequently developed any of the following:

- o   Meningitis of unknown etiology following epidural or paraspinal injection after May 21, 2012;

- o   Posterior circulation stroke without a cardioembolic source and without documentation of a normal cerebrospinal fluid (CSF) profile, following epidural or paraspinal injection after May 21, 2012;

- o   Osteomyelitis, abscess or other infection (e.g., soft tissue infection) of unknown etiology, in the spinal or paraspinal structures at or near the site of injection following epidural or paraspinal injection after May 21, 2012; or

- o   Osteomyelitis or worsening inflammatory arthritis of a peripheral joint (e.g., knee, shoulder, or ankle) of unknown etiology diagnosed following joint injection after May 21, 2012.

Centers for Disease Control and Prevention, Case Definitions for Meningitis and Other Infections, http://www.cdc.gov/hai/outbreaks/clinicians/casedef_multistate_outbreak.html (last visited July 9, 2013) (footnotes omitted) (emphasis in original).

Despite the careful, deliberative, investigative and expert analysis that the CDC and many other federal, state, and local health authorities undertook (and continue to undertake) in order to appropriately respond to and manage the outbreak and identify the scope of patients at risk, the PSC seeks a plethora of information that far surpasses the scope of this case, which is limited to the three specific lots of NECC MPA that were injected after May 12, 2012.  Indeed, by way of

illustration, the PSC's Subpoena seeks the production of all of the following categories of

documents:

- Documents related to the procurement of MPA and *any other injectable steroid* from NECP between October 6, 2010 and October 6, 2012;

- Documents related to the procurement of MPA or its generic or name-brand equivalent, *from any producer, compounding facility or manufacturer other than NECP*, since October 6, 2007;

- Documents related to the procurement of cardioplegic solution from NECP between October 6, 2010 and October 6, 2012;

- Documents related to the procurement of ophthalmic solution from NECP between October 6, 2010 and October 6, 2012;

- Documents related to the procurement of preservative-free saline solution from NECP between October 6, 2010 and October 6, 2012; and

- Documents related to the identification of each and every patient that was administered *any NECP product* between October 6, 2010 and October 6, 2012;

(*See* Grossman Decl. at Ex. A.)  These requests seek detailed patient information, medical

records, dates of shipment, shipment quantities, lot numbers, labels, container sizes, costs,

warranties, expiration dates, instructions, account information, prescription order forms, and

charges – all for products beyond the scope of the three specific lots of NECC MPA.  Such broad

discovery is unwarranted, unjustified, and impermissible when there is no evidence that any

other lot of MPA, or any other product administered at a healthcare clinic, for that matter, was

contaminated or tied to the fungal meningitis outbreak.  As a result, the PSC's broad-ranging

Subpoena requests outside of the three specific lots of NECC MPA are not reasonably calculated

to lead to the discovery of admissible evidence.

     In addition to impermissibly expanding the scope of the case by attempting to obtain

discovery of documents and information to which they are not entitled, the PSC has also violated

its own time-period limitation contained in the Court's June 21, 2013 "Order Granting Plaintiffs

Leave to Serve Subpoenas and Qualified Protective Order Regarding Protection of Health Information" ("QPO").  The QPO provided:

> The information requested and produced shall be limited to the names of patients that have been identified as receiving NECC solutions, medications or compounds from January, 2011 – November, 2012, the patients' last known address, the records identifying that NECC was the supplier of the solution, medication or compound, including lot number, the hospital or healthcare facilities' NECC product purchase records, including order forms, prescriptions, billing and accounts receivable, the hospital or healthcare facilities' NECC product storage and patient distribution records, and any other information that lead counsel and the PSC reasonably determine necessary to the prosecution and resolution of these actions.

(Dkt. No. 192 at ¶ 2.)  Despite representing to the Court that the subpoenas would be limited to January 2011, the PSC's Subpoena requests the production of documents for a two year time period running from October 6, 2010 to October 6, 2012.  (*See* Grossman Decl. at Ex. A, ¶¶ 1, 3-7, 9.)  The Subpoena also seeks documents for a five year time period, running from October 6, 2007 to October 6, 2012.  (*See* Grossman Decl. at Ex. A, ¶ 2.)  In addition, several of the PSC's Subpoena requests seek documents for a three year time period, including all of 2011, 2012, and 2013.  (*See* Grossman Decl. at Ex. A, ¶¶ 17-19).  Finally, numerous Subpoena requests are not even limited by a timeframe at all, presumably seeking documents from some arbitrary point in the past through today's date.  (*See* Grossman Decl. at Ex. A, ¶¶ 8, 10-16, 20-21.)  On its face, therefore, the Subpoena exceeds the plain language and limitations of the QPO.[1]

Given the overbroad scope of the Subpoena, the fact that the PSC not only impermissibly attempts to broaden the potential number of plaintiffs and claims in the MDL by expanding the

---

[1]  By entering the QPO, the Court did not order or rule that the relevant time frame for discovery is January 2011 to November 2012.  The QPO expressly provides that "nothing in this order shall deprive a subpoena recipient of the opportunity to object to requests to produce such protected information."  (Dkt. No. 192.)

cases beyond the meningitis outbreak defined by the CDC to one defined by the PSC, and the fact that the PSC blatantly violated the QPO that they, themselves drafted, compliance with the Subpoena, as written, would place an undue burden on Inspira.  Whether a subpoena places an undue burden on a subpoenaed entity depends on many factors, such as "the relevance of the documents sought, the necessity of the documents sought, the breadth of the request, the time period covered by the request, the particularity with which the documents are described, and the burden in fact imposed."  *Demers v. LaMontagne*, No. Civ.A. 98–10762–REK, 1999 WL 1627978, at *2 (D. Mass. May 5, 1999) (citing United States v. Concemi, 957 F.2d 942, 949 (1st Cir.1992)).  Based on these enumerated factors and the reasons set forth above, it is clear that the Subpoena places an undue burden on Inspira and should be quashed.[2]

## B.    As a Party, Inspira Should Have Been Served With a Request for Documents Under Fed. R. Civ. P. 34, Not a Subpoena Under Fed. R. Civ. P. 45.

On June 21, 2012, the PSC began issuing a flurry of subpoenas, with absolutely no regard to whether the subpoenaed entity was already a party to the MDL.  Such behavior – subpoenaing parties – contravenes case law in the District of Massachusetts.  *See Hasbro, Inc. v. Serafino*, 168 F.R.D. 99 (D. Mass. 1996).  That case, similar to the instant one, involved a party who served another party with a subpoena for documents under Fed. R. Civ. P. 45, as opposed to a request for production of documents under Fed. R. Civ. P. 34.  *Id.* at 100.  In discussing the propriety of this action, the Court noted that although the language of Fed. R. Civ. P. 45 is not "crystal clear, it is apparent to this Court that *discovery* of documents from a party, as distinct from a non-party, is not accomplished pursuant to Rule 45."  *Id.* at 100 (citing *Contardo v. Merrill Lynch, Pierce,*

---

[2]  The Subpoena should also be quashed because it seeks privileged information, in violation of Rule 45(c)(3)(A)(iii).  Many of the extremely broad requests in the PSC's Subpoena would require the disclosure of attorney-client privileged documents, documents protected by the work product doctrine and information prepared in anticipation of litigation.

*Fenner & Smith*, 119 F.R.D. 622, 624 (D. Mass. 1988).   Rule 45, to the "extent it concerns

discovery, is still directed at non-parties and [] Rule 34 governs the discovery of documents in

the possession or control of the parties themselves." *Id.* (citing 9A Wright and Miller: Fed.

Practice & Procedure s. 2452 (1995) ("Rule 45 has a close relation to the proper functioning of

the discovery rules.  Most notably, a subpoena is necessary to compel someone who is not a

party to appear for the taking of the deposition.")  In addition, the *Hasbro* Court noted that Rule

45, as well as the advisory committee notes, are replete with references to non-parties.  *Id.*

Indeed, "Rule 34, which unquestionably applies only to parties, illuminates the scope of Rule 45

when it directs that [a] person not a party to the action may be compelled to produce documents

and things or to submit to an inspection as provided in Rule 45." *Id.* (quoting Fed. R. Civ. P. 34

(c) [since amended, but substantively the same]).  *See also Alper v. United States*, 190 F.R.D.

281, 283 (D. Mass. 2000) (citing to *Hasbro*'s holding with approval).

    The PSC's issuance of a Subpoena to Inspira, as a party, is also at odds with its own

representations to the Court in its Memorandum in Support of Motion for Order on Central

Enforcement of Subpoenas.  In its brief, the PSC noted that the "MDL court could compel

production or quash a subpoena directed to an out of district **nonparty**."  (Dkt. No. 183 at p. 3.)

The PSC went on to quote *In re Neurontin Mktg., Sales Practices, and Prod. Liab. Litig.*, noting

that

> A judge presiding over an MDL case therefore may compel
> production by an extra-district **nonparty**; enforce, modify, or quash
> a subpoena directed to an extra-district **nonparty**; and hold an
> extra-district nonparty deponent in contempt, notwithstanding the
> **nonparty**'s physical situs in a foreign district where discovery is
> being conducted.

(*Id.* (citing 245 F.D.R. 55, 58 (D. Mass. 2007)) (emphasis added).)  The PSC also cited *In re*

*Online DVD Rental Antitrust Litig.*, for the proposition that motions to quash, brought by a

"*third party* subpoenaed by the MDL plaintiffs" were better decided by the transferee judge.  (*Id.* (citing 744 F. Supp. 2d 1378 (J.P.M.L 2010)).)

The difference between parties and non-parties is further highlighted by the penalties available for various discovery violations.  As the Court is well aware, the penalty for non-compliance with a subpoena is contempt (*see* Fed. R. Civ. P. 45(e)), whereas the rule governing non-compliance with a Rule 34 Request for Documents is a Motion to Compel (*see* Fed. R. Civ. P. 37(a)(3).  Here, the PSC is attempting to side-step the traditional discovery mechanisms against defendants by serving Inspira with a Subpoena, thereby looking to obtain documents faster, requiring that Inspira file a motion to quash and objections as opposed to written responses, and threatening contempt sanctions for any perceived non-compliance.  Aside from its clear procedural impropriety, the PSC's Subpoena has already subjected Inspira to undue burden and needless expense.  (*See*, *supra*, point F.)

Because the cases, both those in the District of Massachusetts[3] governing this dispute, and those submitted on behalf of the PSC, are replete with references to the fact that a Rule 45 subpoena may only be issued to a non-party, this Court should quash the Subpoena and require that the PSC properly serve Inspira with a Rule 34 Request for the Production of Documents.

**C.**     **The Subpoena is Procedurally Deficient on Its Face.**

Assuming, for the sake of argument, that Inspira could have been issued a Subpoena under Rule 45, the PSC's Subpoena would still be procedurally deficient.    The Court, under its

---

[3]  For the reasons noted in *U.S. ex rel. Pogue v. Diabetes Treatment Centers of Am., Inc.*, 444 F. 3d 462, 468 (6th Cir. 2006), Inspira, as a party, is subject to the jurisdiction of the District of Massachusetts, bound by the Local Rules of Massachusetts, and thus, as a party, Massachusetts procedural law applies to the interpretation of the motion to quash.  In any case, the District of New Jersey and the Third Circuit have not ruled on whether a party may be served with a Rule 45 subpoena.

MDL authority, has the power to issue foreign-district subpoenas pursuant to 28 U.S.C. § 1407(b). *U.S. ex rel. Pogue*, 444 F. 3d at 468. However, when a court exercises its 28 U.S.C. § 1407(b) authority to issue a subpoena to a foreign-district "non-party" deponent, the MDL judge sits as a judge of the district court where the deponent resides. *Id.* In regard to the Subpoena issued to South Jersey Healthcare, this Court sits as a member of the United Stated District Court for the District of New Jersey. Accordingly, the Subpoena should have been captioned "United Stated District Court for the District of New Jersey" and not "United Stated District Court for the District of Massachusetts."

Similarly, the Court's Qualified Protective Order (Dkt. No. 192) ("QPO") requires that documents produced in response to subpoenas be produced directly to a third party vendor. In direct contravention of the QPO, the Subpoena requires that the documents be produced to "Golomb & Honik, PC, 1515 Market Street, Suite 1100, Philadelphia, PA 19102." Moreover, even though the QPO and the Case Management Order (Dkt. No. 209) mandated the filing of an Electronically-Stored Information Protocol prior to the production of any documents or information, the PSC seeks to require subpoenaed entities, like Inspira, to turn over documents prior to meeting its own Court-ordered obligations.

**D.**     **The Subpoena Does Not Allow a Reasonable Period of Time to Respond.**

Consistent with its clear intent to over-reach in discovery, the PSC has failed to provide Inspira with a reasonable period of time to comply with its various Subpoena requests for the production of documents. Had Inspira instead properly been served with a Rule 34 Request for Production, it would have had 30 days to respond. However, as an end-run around the rules of discovery, the PSC opted to issue a Rule 45 subpoena with an arbitrarily short time frame for response and production. Ironically enough, the date the PSC specified for production in its

Subpoena occurs *before* the date in which Inspira was told, in the cover letter accompanying the Subpoena, that any Motion to Quash/Objection would be heard.  (*See* Grossman Decl. at Ex. A.)

However, even if the PSC had given Inspira 30 days to comply, it is far too short a time frame to answer the overbroad and unduly burdensome requests propounded by the PSC, some of which—as alluded to previously—are not limited by timeframe.

**E.     The Subpoena Was Improperly Served.**

The PSC served the Subpoena on counsel for Inspira, via e-mail and Federal Express. This is improper – Fed. R. Civ. P. 45 requires personal service, and e-mail or delivery via courier to Inspira's attorney is insufficient.  *See, e.g.*, Fed. R. Civ. P. 45(b)(1); *Omikoshi Japanese Rest. v. Scottsdale Ins. Co.*, No 08-cv-3657, 2008 WL 4829583, at *1 (E.D. La. Nov. 5, 2008); *In re Motorsports Merchandise Antitrust Litig.*, 186 F.R.D. 344, 348 (W.D. Va. 1999).  The PSC did not seek the consent of Inspira's counsel to accept service on its behalf, nor did it seek its consent to accept service via an alternative method.  (*See* Grossman Decl. at ¶ 5.)

**F.     The PSC Breached its Duty to Take Reasonable Steps to Avoid Undue Burden and Expense.**

The PSC's overbroad and unduly burdensome requests, through which it attempts to impermissibly expand the scope of the case beyond the products and patients linked to the outbreak of meningitis and which fail to provide Inspira with a reasonable time to comply, are a clear violation of the PSC's duty to take reasonable steps to avoid undue burden and expense. Indeed, in an effort to mitigate Inspira's expenses, counsel for Inspira reached out to the PSC and requested that they withdraw the Subpoena because it had been improperly served on a party in direct contravention of the case law.  Instead of complying with this reasonable request, the PSC told Inspira's counsel to go ahead and file the motion to quash.  (*See* Grossman Decl. at ¶ 10.)

Rule 45(c) allows for costs, including reasonable attorney's fees, when a party has faced an undue burden or expense in objecting to a subpoenaing party who failed to take reasonable steps to ensure the subpoena would not result in an undue burden.  *See* Fed. R. Civ. P. 45(c)(1). "The question is not whether the subpoenas were issued in 'good faith.'  Rather, the issue is whether issuance of the subpoenas violated the duty imposed by Rule 45(c)(1).  A subpoena may be issued in 'good faith' but still may be improper if the party serving the subpoena has failed to 'take reasonable steps to avoid imposing undue burden or expense on the person subject to the subpoena.'"  *Liberty Mut. Ins. Co. v. Diamante*, 194 F.R.D. 20, 23 (D. Mass. 2000).

Here, because the PSC has failed to take reasonable steps to avoid undue burden and expense, Inspira is entitled to reasonable costs and fees in filing this Motion to Quash.

## <u>CONCLUSION</u>

Inspira respectfully requests that the Court quash the Subpoena, or, in the alternative, modify the Subpoena in accordance with Inspira's objections, which are attached hereto as Exhibit A.

<div style="margin-left: 40%;">

Respectfully submitted,

MONTGOMERY, McCRACKEN, WALKER
  & RHOADS LLP

</div>

Dated:  July 10, 2013                      *s/Stephen A. Grossman*
                                            Stephen A. Grossman
                                            Montgomery, McCracken, Walker & Rhoads, LLP
                                            LibertyView, Suite 600
                                            457 Haddonfield Road
                                            Cherry Hill, NJ 08002
                                            sgrossman@mmwr.com
                                            (856) 488-7700
                                            (856) 488-7720 (facsimile)

                                            *Counsel for Defendants*
                                            *Inspira Health Network, Inc. and.*
                                            *Inspira Medical Centers, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, **STEPHEN A. GROSSMAN**, hereby certify that I caused a true and correct copy of

Inspira Health Network, Inc. and Inspira Medical Centers, Inc.'s Motion to Quash the Plaintiffs'

Steering Committee's Subpoena to be filed electronically via the Court's electronic filing

system.

Dated: July 10, 2013                    s/ Stephen A. Grossman_____
                                        Stephen A. Grossman

# EXHIBIT A

**MONTGOMERY McCRACKEN WALKER & RHOADS LLP**
(A Limited Liability Partnership Formed in Pennsylvania)
LibertyView, Suite 600
457 Haddonfield Road
Cherry Hill, New Jersey 08002
(856) 488-7700
*Counsel for Defendants Inspira Health Network, Inc.*
*and Inspira Medical Centers, Inc.*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION <br><br> _____ <br><br> THIS DOCUMENT RELATES TO: <br> *Hannah v. New England Compounding Pharmacy, Inc. et al.,* Docket No. 13-cv-10407; <br> *Jones v. New England Compounding Pharmacy, Inc. et al.,* Docket No. 13-cv-10409; <br> *Ramos v. New England Compounding Pharmacy, Inc. et al.,* Docket No. 13-cv-10410; <br> *Rios v. New England Compounding Pharmacy, Inc. et al.,* Docket No. 13-cv-10411; <br> *Rivera v. New England Compounding Pharmacy, Inc. et al.,* Docket No. 13-cv-10412; <br> *Tayvinsky v. New England Compounding Pharmacy, Inc. et al.,* Docket No. 13-cv-10414; <br> *Gould v. New England Compounding Pharmacy, Inc. et al.,* Docket No. 13-cv-10444; and <br> *Normand v. New England Compounding Pharmacy, Inc. et al.,* Docket No. 13-cv-10447 | **Document Electronically Filed** <br><br> MDL No. 1:13-md-2419-FDS |

## INSPIRA HEALTH NETWORK, INC. AND INSPIRA MEDICAL CENTERS, INC.'S
## OBJECTIONS TO THE PLAINTIFFS' STEERING COMMITTEE'S SUBPOENA

Defendants Inspira Health Network, Inc. and Inspira Medical Centers, Inc. (formerly

known as South Jersey Health System, Inc. and South Jersey Hospital, Inc.) (collectively,

"Inspira"), by and through their undersigned attorneys, respectfully submit these Objections to

the Plaintiffs' Steering Committee's ("PSC") Subpoena (the "Subpoena").

# Exhibit A to Subpoena

1.        Any and all documents and/or electronically stored information ("ESI") reflecting, and/or related in any way whatsoever to, the procurement of methylprednisolone acetate ("MPA") and any other injectable steroid preparations from New England Compounding Pharmacy, Inc. ("NECP") during the two-year period immediately preceding October 6, 2012, including without limitation of the foregoing, information reflecting dates of shipment and/or receipt, quantities of shipment, lot numbers and other identifying labels, sizes of containers of steroid preparation, the cost you paid for the steroid preparation, applicable warranties, shelf life, expiration dates, requirements and instructions for shipment and/or storage, and the specific identity of the preparation being purchased.  Also including account information, prescriptions submitted to NECP, prescription order forms, NECP charges for MP A (before and after any discounts applied).

**OBJECTION:  Inspira objects to Request No. 1 as overbroad, not reasonably calculated to lead to the discovery of admissible evidence, unduly burdensome and oppressive to the extent the Request calls for the production of documents and information that:**

**(1) is outside the relevant time frame established by the Centers for Disease Control and Prevention ("CDC"), which has defined the scope of patients at risk and the products tied to the fungal meningitis outbreak to those patients injected after May 21, 2012 with three specific lots of methylprednisolone acetate ("MPA") – Lot Numbers 05212012@68, 06292012@26, and 08102012@51 – produced by the New England Compounding Center ("NECC");**

**(2) relates to preparations, products or drugs other than the three specific lots of NECC MPA identified by the CDC; and/or**

**(3) relates to patients other than those who were injected after May 21, 2012 with the specific lots of NECC MPA.**

**Inspira further objects to this Request to the extent it seeks to force Inspira to conduct an unreasonable, unduly burdensome search, review and production on the PSC's behalf.**

**Inspira further objects to this Request to the extent it fails to define various vague and ambiguous terms and conditions including, but not limited to  "procurement," "injectable steroid preparations," "specific identity of the preparation being purchased," and "discounts applied."**

**Inspira further objects to the production of ESI that is not reasonably accessible or would otherwise impose undue burden or cost to identify, collect, process, review and/or produce.  In addition, Inspira objects to the extent the PSC seeks the production of ESI without: (1) any negotiated ESI protocol; (2) providing necessary clarification and appropriate limitations as to the type(s), location(s), and accessibility of the ESI requested;**

and/or (3) including any good-faith proposal for appropriate cost-shifting relative to Inspira's identification, collection, review and production.

Inspira further objects to this Request to the extent it seeks documents that are not in Inspira's ownership, possession, custody or control, or that would require it to seek documents from or belonging to third parties.

Inspira further objects to the extent the documents and information the PSC seeks can be obtained from some other source that is more convenient, less burdensome, and/or less expensive.

Inspira further objects to this Request to the extent that it seeks or may be deemed to seek documents or information in the public domain, or that is confidential, and/or that is protected from disclosure by the attorney-client privilege, work product doctrine, or any other privilege, immunity or limitation on discovery.

2.      Any and all documents and/or ESI reflecting, and/or related in any way whatsoever to, the procurement of MPA, or its generic or name-brand equivalent, from any producer, compounding facility or manufacturer other than NECP, since October 6, 2007, including without limitation of the foregoing, information reflecting dates of shipment and/or receipt, quantities of shipment, lot numbers and other identifying labels, sizes of containers of the product, the cost you paid for the product, applicable warranties, shelf life, expiration dates, requirements and instructions for shipment and/or storage, and the specific identity of the preparation being purchased.

OBJECTION:  Inspira objects to Request No. 2 as overbroad, not reasonably calculated to lead to the discovery of admissible evidence, unduly burdensome and oppressive to the extent the Request calls for the production of documents and information that:

(1) is outside the relevant time frame established by the CDC, which has defined the scope of patients at risk and the products tied to the fungal meningitis outbreak to those patients injected after May 21, 2012 with three specific lots of MPA – Lot Numbers 05212012@68, 06292012@26, and 08102012@51 –by NECC;

(2) relates to preparations, products or drugs other than the three specific lots of NECC MPA identified by the CDC; and/or

(3) relates to patients other than those who were injected after May 21, 2012 with the specific lots of NECC MPA.

Inspira further objects to this Request to the extent it seeks to force Inspira to conduct an unreasonable, unduly burdensome search, review and production on the PSC's behalf.

Inspira further objects to this Request to the extent it fails to define various vague and ambiguous terms and conditions including, but not limited to "procurement,"

"generic," "name-brand equivalent," and "specific identity of the preparation being purchased."

Inspira further objects to the production of ESI that is not reasonably accessible or would otherwise impose undue burden or cost to identify, collect, process, review and/or produce.  In addition, Inspira objects to the extent the PSC seeks the production of ESI without: (1) any negotiated ESI protocol; (2) providing necessary clarification and appropriate limitations as to the type(s), location(s), and accessibility of the ESI requested; and/or (3) including any good-faith proposal for appropriate cost-shifting relative to Inspira's identification, collection, review and production.

Inspira further objects to this Request to the extent it seeks documents that are not in Inspira's ownership, possession, custody or control, or that would require it to seek documents from or belonging to third parties.

Inspira further objects to the extent the documents and information the PSC seeks can be obtained from some other source that is more convenient, less burdensome, and/or less expensive.

Inspira further objects to this Request to the extent that it seeks or may be deemed to seek documents or information in the public domain, or that is confidential, and/or that is protected from disclosure by the attorney-client privilege, work product doctrine, or any other privilege, immunity or limitation on discovery.

3.      Any and all documents and/or ESI reflecting, and/or related in any way whatsoever to, the procurement of cardioplegic solution from NECP during the two-year period immediately preceding October 6, 2012, including without limitation of the foregoing, information reflecting dates of shipment and/or receipt, quantities of shipment, lot numbers and other identifying labels, sizes of containers of cardioplegic solution, the cost you paid for the cardioplegic solution, applicable warranties, shelf life, expiration dates, and requirements and instructions for shipment and/or storage.  Also including prescriptions submitted to NECP, prescription order forms, NECP charges for cardioplegic solution (before and after any discounts applied).

OBJECTION:  Inspira objects to Request No. 3 as overbroad, not reasonably calculated to lead to the discovery of admissible evidence, unduly burdensome and oppressive to the extent the Request calls for the production of documents and information that:

(1) is outside the relevant time frame established by the CDC, which has defined the scope of patients at risk and the products tied to those patients injected after May 21, 2012 with three specific lots of MPA – Lot Numbers 05212012@68, 06292012@26, and 08102012@51 – produced by NECC;

(2) relates to preparations, products or drugs other than the three specific lots of NECC MPA identified by the CDC; and/or

-4-

(3) relates to patients other than those who were injected after May 21, 2012 with the specific lots of NECC MPA.

Inspira further objects to this Request to the extent it seeks to force Inspira to conduct an unreasonable, unduly burdensome search, review and production on the PSC's behalf.

Inspira further objects to this Request to the extent it fails to define various vague and ambiguous terms and conditions including, but not limited to terms "procurement," "cardioplegic solution," and "discounts applied."

Inspira further objects to the production of ESI that is not reasonably accessible or would otherwise impose undue burden or cost to identify, collect, process, review and/or produce.  In addition, Inspira objects to the extent the PSC seeks the production of ESI without: (1) any negotiated ESI protocol; (2) providing necessary clarification and appropriate limitations as to the type(s), location(s), and accessibility of the ESI requested; and/or (3) including any good-faith proposal for appropriate cost-shifting relative to Inspira's identification, collection, review and production.

Inspira further objects to this Request to the extent it seeks documents that are not in Inspira's ownership, possession, custody or control, or that would require it to seek documents from or belonging to third parties.

Inspira further objects to the extent the documents and information the PSC seeks can be obtained from some other source that is more convenient, less burdensome, and/or less expensive.

Inspira further objects to this Request to the extent that it seeks or may be deemed to seek documents or information in the public domain, or that is confidential, and/or that is protected from disclosure by the attorney-client privilege, work product doctrine, or any other privilege, immunity or limitation on discovery.

4.      Any and all documents and/or ESI reflecting, and/or related in any way whatsoever to, the procurement of ophthalmic solution from NECP during the two-year period immediately preceding October 6, 2012, including without limitation of the foregoing, information reflecting dates of shipment and/or receipt, quantities of shipment, lot numbers and other identifying labels, sizes of containers of ophthalmic solution, the cost you paid for the ophthalmic solution, applicable warranties, shelf life, expiration dates, and requirements and instructions for shipment and/or storage.  Also including prescriptions submitted to NECP, prescription order forms, NECP charges for opthalmic solution (before and after any discounts applied).

OBJECTION:  Inspira objects to Request No. 4 as overbroad, not reasonably calculated to lead to the discovery of admissible evidence, unduly burdensome and oppressive to the extent the Request calls for the production of documents and information that:

(1) is outside the relevant time frame established by the CDC, which has defined the scope of patients at risk and the products tied to the fungal meningitis outbreak to those patients injected after May 21, 2012 with three specific lots of MPA – Lot Numbers 05212012@68, 06292012@26, and 08102012@51 – produced by NECC;

(2) relates to preparations, products or drugs other than the three specific lots of NECC MPA identified by the CDC; and/or

(3) relates to patients other than those who were injected after May 21, 2012 with the specific lots of NECC MPA.

Inspira further objects to this Request to the extent it seeks to force Inspira to conduct an unreasonable, unduly burdensome search, review and production on the PSC's behalf.

Inspira further objects to this Request to the extent it fails to define various vague and ambiguous terms and conditions including, but not limited to terms "procurement," "opthalmic solution," and "discounts applied."

Inspira further objects to the production of ESI that is not reasonably accessible or would otherwise impose undue burden or cost to identify, collect, process, review and/or produce.  In addition, Inspira objects to the extent the PSC seeks the production of ESI without: (1) any negotiated ESI protocol; (2) providing necessary clarification and appropriate limitations as to the type(s), location(s), and accessibility of the ESI requested; and/or (3) including any good-faith proposal for appropriate cost-shifting relative to Inspira's identification, collection, review and production.

Inspira further objects to this Request to the extent it seeks documents that are not in Inspira's ownership, possession, custody or control, or that would require it to seek documents from or belonging to third parties.

Inspira further objects to the extent the documents and information the PSC seeks can be obtained from some other source that is more convenient, less burdensome, and/or less expensive.

Inspira further objects to this Request to the extent that it seeks or may be deemed to seek documents or information in the public domain, or that is confidential, and/or that is protected from disclosure by the attorney-client privilege, work product doctrine, or any other privilege, immunity or limitation on discovery.

5.      Any and all documents and/or ESI reflecting, and/or related in any way whatsoever to, the procurement of preservative-free saline solution from NECP during the two-year period immediately preceding October 6, 2012, including without limitation of the foregoing, information reflecting dates of shipment and/or receipt, quantities of shipment, lot numbers and other identifying labels, sizes of containers of saline solution, the cost you paid for the saline solution, applicable warranties, shelf life, expiration dates, and requirement and instructions for shipment and/or storage.  Also including prescriptions submitted to NECP,

prescription order forms, NECP charges for preservative-free saline solution (before and after any discounts applied).

**OBJECTION:  Inspira objects to Request No. 5 as overbroad, not reasonably calculated to lead to the discovery of admissible evidence, unduly burdensome and oppressive to the extent the Request calls for the production of documents and information that:**

**(1) is outside the relevant time frame established by the CDC, which has defined the scope of patients at risk and the products tied to the fungal meningitis outbreak to those patients injected after May 21, 2012 with three specific lots of MPA – Lot Numbers 05212012@68, 06292012@26, and 08102012@51 – produced by NECC;**

**(2) relates to preparations, products or drugs other than the three specific lots of NECC MPA identified by the CDC; and/or**

**(3) relates to patients other than those who were injected after May 21, 2012 with the specific lots of NECC MPA.**

**Inspira further objects to this Request to the extent it seeks to force Inspira to conduct an unreasonable, unduly burdensome search, review and production on the PSC's behalf.**

**Inspira further objects to this Request to the extent it fails to define various vague and ambiguous terms and conditions including, but not limited to terms "procurement," "preservative-free saline solution," and "discounts applied."**

**Inspira further objects to the production of ESI that is not reasonably accessible or would otherwise impose undue burden or cost to identify, collect, process, review and/or produce.  In addition, Inspira objects to the extent the PSC seeks the production of ESI without: (1) any negotiated ESI protocol; (2) providing necessary clarification and appropriate limitations as to the type(s), location(s), and accessibility of the ESI requested; and/or (3) including any good-faith proposal for appropriate cost-shifting relative to Inspira's identification, collection, review and production.**

**Inspira further objects to this Request to the extent it seeks documents that are not in Inspira's ownership, possession, custody or control, or that would require it to seek documents from or belonging to third parties.**

**Inspira further objects to the extent the documents and information the PSC seeks can be obtained from some other source that is more convenient, less burdensome, and/or less expensive.**

**Inspira further objects to this Request to the extent that it seeks or may be deemed to seek documents or information in the public domain, or that is confidential, and/or that is protected from disclosure by the attorney-client privilege, work product doctrine, or any other privilege, immunity or limitation on discovery.**

6.     Any and all documents and/or ESI reflecting, and/or related to, the identification of each and every patient that was administered an NECP product during the two-year period immediately preceding October 6, 2012, including patient name, address, date of birth, identification of product administered, and date product was administered.

**OBJECTION:  Inspira objects to Request No. 6 as overbroad, not reasonably calculated to lead to the discovery of admissible evidence, unduly burdensome and oppressive to the extent the Request calls for the production of documents and information that:**

**(1) is outside the relevant time frame established by the CDC, which has defined the scope of patients at risk and the products tied to the fungal meningitis outbreak to those patients injected after May 21, 2012 with three specific lots of MPA – Lot Numbers 05212012@68, 06292012@26, and 08102012@51 – produced by NECC;**

**(2) relates to products or drugs other than the three specific lots of NECC MPA identified by the CDC; and/or**

**(3) relates to patients other than those who were injected after May 21, 2012 with the specific lots of NECC MPA.**

**Inspira further objects to this Request to the extent it seeks to force Inspira to conduct an unreasonable, unduly burdensome search, review and production on the PSC's behalf.**

**Inspira further objects to this Request to the extent it is cumulative of Requests Nos. 1 through 5.**

**Inspira further objects to the production of ESI that is not reasonably accessible or would otherwise impose undue burden or cost to identify, collect, process, review and/or produce.  In addition, Inspira objects to the extent the PSC seeks the production of ESI without: (1) any negotiated ESI protocol; (2) providing necessary clarification and appropriate limitations as to the type(s), location(s), and accessibility of the ESI requested; and/or (3) including any good-faith proposal for appropriate cost-shifting relative to Inspira's identification, collection, review and production.**

**Inspira further objects to this Request to the extent it seeks documents that are not in Inspira's ownership, possession, custody or control, or that would require it to seek documents from or belonging to third parties.**

**Inspira further objects to the extent the documents and information the PSC seeks can be obtained from some other source that is more convenient, less burdensome, and/or less expensive.**

**Inspira further objects to this Request to the extent that it seeks or may be deemed to seek documents or information in the public domain, or that is confidential, and/or that is protected from disclosure by the attorney-client privilege, work product doctrine, or any other privilege, immunity or limitation on discovery.**

7.      Any and all documents and/or ESI reflecting or containing communications (written or otherwise) between South Jersey Healthcare, Elmer, New Jersey and Vineland, New Jersey ("Healthcare Provider"), its employees, principals, partners, and/or agents, and NECP, its employees and/or agents, during the two-year period immediately preceding October 6, 2012, including, but not limited to, any complaints or adverse event reports made to NECP by the Healthcare Provider.

**OBJECTION:  Inspira objects to Request No. 7 as overbroad, not reasonably calculated to lead to the discovery of admissible evidence, unduly burdensome and oppressive to the extent the Request calls for the production of documents and information that:**

**(1) is outside the relevant time frame established by the CDC, which has defined the scope of patients at risk and the products tied to the fungal meningitis outbreak to those patients injected after May 21, 2012 with three specific lots of MPA – Lot Numbers 05212012@68, 06292012@26, and 08102012@51 – produced by NECC;**

**(2) relates to products or drugs other than the three specific lots of NECC MPA identified by the CDC; and/or**

**(3) relates to patients other than those who were injected after May 21, 2012 with the specific lots of NECC MPA.**

**Inspira further objects to this Request to the extent it seeks to force Inspira to conduct an unreasonable, unduly burdensome search, review and production on the PSC's behalf.**

**Inspira further objects to this Request to the extent it fails to define various vague and ambiguous terms and conditions including, but not limited to terms "complaints" and "adverse event reports."**

**Inspira further objects to the production of ESI that is not reasonably accessible or would otherwise impose undue burden or cost to identify, collect, process, review and/or produce.  In addition, Inspira objects to the extent the PSC seeks the production of ESI without: (1) any negotiated ESI protocol; (2) providing necessary clarification and appropriate limitations as to the type(s), location(s), and accessibility of the ESI requested; and/or (3) including any good-faith proposal for appropriate cost-shifting relative to Inspira's identification, collection, review and production.**

**Inspira further objects to this Request to the extent it seeks documents that are not in Inspira's ownership, possession, custody or control, or that would require it to seek documents from or belonging to third parties.**

**Inspira further objects to the extent the documents and information the PSC seeks can be obtained from some other source that is more convenient, less burdensome, and/or less expensive.**

Inspira further objects to this Request to the extent that it seeks or may be deemed to seek documents or information in the public domain, or that is confidential, and/or that is protected from disclosure by the attorney-client privilege, work product doctrine, or any other privilege, immunity or limitation on discovery.

8.      Any and all documents and/or ESI reflecting or containing information obtained by the Healthcare Provider, its employees and/or agents, regarding NECP, including without limitation of the foregoing, NECP's qualifications, certifications or accreditations, or lack thereof, regulatory compliance, lack of regulatory compliance, operations, enforcement actions, suitability for conducting its business, legal actions and/or warnings, brochures, policies and procedures, ordering and delivery information company overviews, standard operating procedures, executive summaries, attachments A, B or others (relating to HIPAA, NECP policies and procedures, or other information).

**OBJECTION:  Inspira objects to Request No. 8 as overbroad, not reasonably calculated to lead to the discovery of admissible evidence, unduly burdensome and oppressive to the extent the Request calls for the production of documents and information that is outside the relevant time frame established by the CDC, which has defined the scope of patients at risk and the products tied to the fungal meningitis outbreak to those patients injected after May 21, 2012 with three specific lots of MPA – Lot Numbers 05212012@68, 06292012@26, and 08102012@51 – produced by NECC.**

**Inspira further objects to this Request to the extent it seeks the production of documents and information outside the timeframe PSC represented it would limit its discovery requests to in its "[Proposed] Order Granting Plaintiffs Leave to Serve Subpoenas and Qualified Protective Order Regarding Protection of Health Information," filed on June 13, 2013 (Document No. 181-1).**

**Inspira further objects to this Request to the extent it seeks to force Inspira to conduct an unreasonable, unduly burdensome search, review and production on the PSC's behalf.**

**Inspira further objects to this Request to the extent it fails to define various vague and ambiguous terms and conditions including, but not limited to terms "NECP's qualifications," "regulatory compliance," "lack of regulatory compliance," "operations," "enforcement actions," "suitability for conducting its business," "policies and procedures," "company overviews," "standard operating procedures," and "executive summaries."**

**Inspira further objects to the production of ESI that is not reasonably accessible or would otherwise impose undue burden or cost to identify, collect, process, review and/or produce.  In addition, Inspira objects to the extent the PSC seeks the production of ESI without: (1) any negotiated ESI protocol; (2) providing necessary clarification and appropriate limitations as to the type(s), location(s), and accessibility of the ESI requested; and/or (3) including any good-faith proposal for appropriate cost-shifting relative to Inspira's identification, collection, review and production.**

-10-

Inspira further objects to this Request to the extent it seeks documents that are not in Inspira's ownership, possession, custody or control, or that would require it to seek documents from or belonging to third parties.

Inspira further objects to the extent the documents and information the PSC seeks can be obtained from some other source that is more convenient, less burdensome, and/or less expensive.

Inspira further objects to this Request to the extent that it seeks or may be deemed to seek documents or information in the public domain, or that is confidential, and/or that is protected from disclosure by the attorney-client privilege, work product doctrine, or any other privilege, immunity or limitation on discovery.

9.      Any and all documents and/or ESI reflecting or containing information obtained by, or communications received by, the Healthcare Provider, its employees and/or agents, concerning the fitness of any products purchased or obtained from NECP for their intended use, during the two-year period immediately preceding October 6, 2012, including but not limited to any environmental testing results, microbiology reports or certificates of analysis.

OBJECTION:  Inspira objects to Request No. 9 as overbroad, not reasonably calculated to lead to the discovery of admissible evidence, unduly burdensome and oppressive to the extent the Request calls for the production of documents and information that:

(1) is outside the relevant time frame established by the CDC, which has defined the scope of patients at risk and the products tied to the fungal meningitis outbreak to those patients injected after May 21, 2012 with three specific lots of MPA – Lot Numbers 05212012@68, 06292012@26, and 08102012@51 – produced by NECC; and/or

(2) relates to products or drugs other than the three specific lots of NECC MPA identified by the CDC.

Inspira further objects to this Request to the extent it seeks to force Inspira to conduct an unreasonable, unduly burdensome search, review and production on the PSC's behalf.

Inspira further objects to this Request to the extent it fails to define various vague and ambiguous terms and conditions including, but not limited to terms "fitness of any products," "intended use," "environmental testing results," "microbiology reports," and "certificates of analysis."

Inspira further objects to this Request to the extent it is cumulative of Requests Nos. 1 through 8.

Inspira further objects to the production of ESI that is not reasonably accessible or would otherwise impose undue burden or cost to identify, collect, process, review and/or produce.  In addition, Inspira objects to the extent the PSC seeks the production of ESI without: (1) any negotiated ESI protocol; (2) providing necessary clarification and

**appropriate limitations as to the type(s), location(s), and accessibility of the ESI requested; and/or (3) including any good-faith proposal for appropriate cost-shifting relative to Inspira's identification, collection, review and production.**

**Inspira further objects to this Request to the extent it seeks documents that are not in Inspira's ownership, possession, custody or control, or that would require it to seek documents from or belonging to third parties.**

**Inspira further objects to the extent the documents and information the PSC seeks can be obtained from some other source that is more convenient, less burdensome, and/or less expensive.**

**Inspira further objects to this Request to the extent that it seeks or may be deemed to seek documents or information in the public domain, or that is confidential, and/or that is protected from disclosure by the attorney-client privilege, work product doctrine, or any other privilege, immunity or limitation on discovery.**

10.    Any and all documents and/or ESI reflecting or containing information obtained by, or sent to, the Healthcare Provider, its employees and/agents, from the Centers for Disease Control and Prevention, the Federal Food and Drug Administration, and/or any other Federal, state or local regulatory agency, concerning the fitness of any products manufactured, compounded or produced by NECP for their intended purpose.

**OBJECTION:  Inspira objects to Request No. 10 as overbroad, not reasonably calculated to lead to the discovery of admissible evidence, unduly burdensome and oppressive to the extent the Request calls for the production of documents and information that:**

**(1) is outside the relevant time frame established by the CDC, which has defined the scope of patients at risk and the products tied to the fungal meningitis outbreak to those patients injected after May 21, 2012 with three specific lots of MPA – Lot Numbers 05212012@68, 06292012@26, and 08102012@51 – produced by NECC;**

**(2) relates to products or drugs other than the three specific lots of NECC MPA identified by the CDC; and/or**

**(3) relates to patients other than those who were injected after May 21, 2012 with the specific lots of NECC MPA.**

**Inspira further objects to this Request to the extent it seeks to force Inspira to conduct an unreasonable, unduly burdensome search, review and production on the PSC's behalf.**

**Inspira further objects to this Request to the extent it fails to define various vague and ambiguous terms and conditions including, but not limited to terms "other Federal state or local regulatory agency," "fitness of any products," and "intended purpose."**

**Inspira further objects to the production of ESI that is not reasonably accessible or would otherwise impose undue burden or cost to identify, collect, process, review and/or produce.  In addition, Inspira objects to the extent the PSC seeks the production of ESI without: (1) any negotiated ESI protocol; (2) providing necessary clarification and appropriate limitations as to the type(s), location(s), and accessibility of the ESI requested; and/or (3) including any good-faith proposal for appropriate cost-shifting relative to Inspira's identification, collection, review and production.**

**Inspira further objects to this Request to the extent it seeks documents that are not in Inspira's ownership, possession, custody or control, or that would require it to seek documents from or belonging to third parties.**

**Inspira further objects to the extent the documents and information the PSC seeks can be obtained from some other source that is more convenient, less burdensome, and/or less expensive.**

**Inspira further objects to this Request to the extent that it seeks or may be deemed to seek documents or information in the public domain, or that is confidential, and/or that is protected from disclosure by the attorney-client privilege, work product doctrine, or any other privilege, immunity or limitation on discovery.**

11.      Any and all documents and/or ESI reflecting or containing communications between the Healthcare Provider and any federal or state agency (including, but not limited to state licensing authorities, the Food and Drug Administration, and the Centers for Disease Control and Prevention) in connection with the procurement of products from any compounding pharmacy.

**OBJECTION:  Inspira objects to Request No. 11 as overbroad, not reasonably calculated to lead to the discovery of admissible evidence, unduly burdensome and oppressive to the extent the Request calls for the production of documents and information that:**

**(1) is outside the relevant time frame established by the CDC, which has defined the scope of patients at risk and the products tied to the fungal meningitis outbreak to those patients injected after May 21, 2012 with three specific lots of MPA – Lot Numbers 05212012@68, 06292012@26, and 08102012@51 – produced by NECC;**

**(2) relates to preparations, products or drugs other than the three specific lots of NECC MPA identified by the CDC; and/or**

**(3) relates to patients other than those who were injected after May 21, 2012 with the specific lots of NECC MPA.**

**Inspira further objects to this Request to the extent it seeks to force Inspira to conduct an unreasonable, unduly burdensome search, review and production on the PSC's behalf.**

-13-

Inspira further objects to this Request to the extent it fails to define various vague and ambiguous terms and conditions including, but not limited to terms "other Federal state or local regulatory agency" and "procurement."

Inspira further objects to the production of ESI that is not reasonably accessible or would otherwise impose undue burden or cost to identify, collect, process, review and/or produce.  In addition, Inspira objects to the extent the PSC seeks the production of ESI without: (1) any negotiated ESI protocol; (2) providing necessary clarification and appropriate limitations as to the type(s), location(s), and accessibility of the ESI requested; and/or (3) including any good-faith proposal for appropriate cost-shifting relative to Inspira's identification, collection, review and production.

Inspira further objects to this Request to the extent it seeks documents that are not in Inspira's ownership, possession, custody or control, or that would require it to seek documents from or belonging to third parties.

Inspira further objects to the extent the documents and information the PSC seeks can be obtained from some other source that is more convenient, less burdensome, and/or less expensive.

Inspira further objects to this Request to the extent that it seeks or may be deemed to seek documents or information in the public domain, or that is confidential, and/or that is protected from disclosure by the attorney-client privilege, work product doctrine, or any other privilege, immunity or limitation on discovery.

12.     Any and all documents and/or ESI reflecting or containing marketing information from NECP, NECP's agents, or any sales company or person marketing, selling, or attempting to sell products on behalf of NECP.

OBJECTION:  Inspira objects to Request No. 12 as overbroad, not reasonably calculated to lead to the discovery of admissible evidence, unduly burdensome and oppressive to the extent the Request calls for the production of documents and information that is outside the relevant time frame established by the CDC, which has defined the scope of patients at risk and the products tied to the fungal meningitis outbreak to those patients injected after May 21, 2012 with three specific lots of MPA – Lot Numbers 05212012@68, 06292012@26, and 08102012@51 – produced by the NECC.

Inspira further objects to this Request to the extent it seeks the production of documents and information outside the timeframe PSC represented it would limit its discovery requests to in its "[Proposed] Order Granting Plaintiffs Leave to Serve Subpoenas and Qualified Protective Order Regarding Protection of Health Information," filed on June 13, 2013 (Document No. 181-1).

Inspira further objects to this Request to the extent it seeks to force Inspira to conduct an unreasonable, unduly burdensome search, review and production on the PSC's behalf.

Inspira further objects to this Request to the extent it fails to define various vague and ambiguous terms and conditions including, but not limited to terms "reflecting or containing marketing information," "sales company," "person marketing, selling or attempting to sell products on behalf of NECP."

Inspira further objects to the production of ESI that is not reasonably accessible or would otherwise impose undue burden or cost to identify, collect, process, review and/or produce.  In addition, Inspira objects to the extent the PSC seeks the production of ESI without: (1) any negotiated ESI protocol; (2) providing necessary clarification and appropriate limitations as to the type(s), location(s), and accessibility of the ESI requested; and/or (3) including any good-faith proposal for appropriate cost-shifting relative to Inspira's identification, collection, review and production.

Inspira further objects to this Request to the extent it seeks documents that are not in Inspira's ownership, possession, custody or control, or that would require it to seek documents from or belonging to third parties.

Inspira further objects to the extent the documents and information the PSC seeks can be obtained from some other source that is more convenient, less burdensome, and/or less expensive.

Inspira further objects to this Request to the extent that it seeks or may be deemed to seek documents or information in the public domain, or that is confidential, and/or that is protected from disclosure by the attorney-client privilege, work product doctrine, or any other privilege, immunity or limitation on discovery.

13.      Any and all documents and/or ESI reflecting or containing agreements, contracts and/or warranties between the Healthcare Provider and NECP, NECP's agents, or any sales company or person marketing, selling, or attempting to sell products on behalf of NECP.

OBJECTION:  Inspira objects to Request No. 13 as overbroad, not reasonably calculated to lead to the discovery of admissible evidence, unduly burdensome and oppressive to the extent the Request calls for the production of documents and information that is outside the relevant time frame established by the CDC, which has defined the scope of patients at risk and the products tied to the fungal meningitis outbreak to those patients injected after May 21, 2012 with three specific lots of MPA – Lot Numbers 05212012@68, 06292012@26, and 08102012@51 – produced by NECC.

Inspira further objects to this Request to the extent it seeks the production of documents and information outside the timeframe PSC represented it would limit its discovery requests to in its "[Proposed] Order Granting Plaintiffs Leave to Serve Subpoenas and Qualified Protective Order Regarding Protection of Health Information," filed on June 13, 2013 (Document No. 181-1).

Inspira further objects to this Request to the extent it seeks to force Inspira to conduct an unreasonable, unduly burdensome search, review and production on the PSC's behalf.

**Inspira further objects to this Request to the extent it fails to define various vague and ambiguous terms and conditions including, but not limited to terms "reflecting or containing agreements," "contracts," "warranties," "sales company," "person marketing, selling or attempting to sell products on behalf of NECP."**

**Inspira further objects to the production of ESI that is not reasonably accessible or would otherwise impose undue burden or cost to identify, collect, process, review and/or produce.  In addition, Inspira objects to the extent the PSC seeks the production of ESI without: (1) any negotiated ESI protocol; (2) providing necessary clarification and appropriate limitations as to the type(s), location(s), and accessibility of the ESI requested; and/or (3) including any good-faith proposal for appropriate cost-shifting relative to Inspira's identification, collection, review and production.**

**Inspira further objects to this Request to the extent it seeks documents that are not in Inspira's ownership, possession, custody or control, or that would require it to seek documents from or belonging to third parties.**

**Inspira further objects to the extent the documents and information the PSC seeks can be obtained from some other source that is more convenient, less burdensome, and/or less expensive.**

**Inspira further objects to this Request to the extent that it seeks or may be deemed to seek documents or information in the public domain, or that is confidential, and/or that is protected from disclosure by the attorney-client privilege, work product doctrine, or any other privilege, immunity or limitation on discovery.**

14.     Any and all documents and/or ESI reflecting or containing recall notices received by the Healthcare Provider pertaining to products produced by NECP, including without limitation of the foregoing, the date, time and manner of receipt of the recall notices, the specific person or persons within the Healthcare Provider who received the notice, and the substance of the notice.

**OBJECTION:  Inspira objects to Request No. 14 as overbroad, not reasonably calculated to lead to the discovery of admissible evidence, unduly burdensome and oppressive to the extent the Request calls for the production of documents and information that:**

**(1) is outside the relevant time frame established by the CDC, which has defined the scope of patients at risk and the products tied to the fungal meningitis outbreak to those patients injected after May 21, 2012 with three specific lots of MPA – Lot Numbers 05212012@68, 06292012@26, and 08102012@51 – produced by NECC; and/or**

**(2) relates to products or drugs other than the three specific lots of NECC MPA identified by the CDC.**

**Inspira further objects to this Request to the extent it seeks the production of documents and information outside the timeframe PSC represented it would limit its discovery requests to in its "[Proposed] Order Granting Plaintiffs Leave to Serve**

**Subpoenas and Qualified Protective Order Regarding Protection of Health Information,"**
**filed on June 13, 2013 (Document No. 181-1).**

**Inspira further objects to this Request to the extent it seeks to force Inspira to conduct an unreasonable, unduly burdensome search, review and production on the PSC's behalf.**

**Inspira further objects to this Request to the extent it fails to define various vague and ambiguous terms and conditions including, but not limited to terms "reflecting or containing recall notices," and "products produced by NECP."**

**Inspira further objects to the production of ESI that is not reasonably accessible or would otherwise impose undue burden or cost to identify, collect, process, review and/or produce.  In addition, Inspira objects to the extent the PSC seeks the production of ESI without: (1) any negotiated ESI protocol; (2) providing necessary clarification and appropriate limitations as to the type(s), location(s), and accessibility of the ESI requested; and/or (3) including any good-faith proposal for appropriate cost-shifting relative to Inspira's identification, collection, review and production.**

**Inspira further objects to this Request to the extent it seeks documents that are not in Inspira's ownership, possession, custody or control, or that would require it to seek documents from or belonging to third parties.**

**Inspira further objects to the extent the documents and information the PSC seeks can be obtained from some other source that is more convenient, less burdensome, and/or less expensive.**

**Inspira further objects to this Request to the extent that it seeks or may be deemed to seek documents or information in the public domain, or that is confidential, and/or that is protected from disclosure by the attorney-client privilege, work product doctrine, or any other privilege, immunity or limitation on discovery.**

15.     Any and all documents and/or ESI reflecting or containing communications made or issued by the Healthcare Provider, its employees and/or agents, in response to any recall notice regarding NECP products, including without limitation of the foregoing, the date, time and manner of transmission of the communication, the person(s) to which the communication was directed, and the person at the Healthcare Provider who made or delivered the communication.

**OBJECTION:  Inspira objects to Request No. 15 as overbroad, not reasonably calculated to lead to the discovery of admissible evidence, unduly burdensome and oppressive to the extent the Request calls for the production of documents and information that:**

**(1) is outside the relevant time frame established by the CDC, which has defined the scope of patients at risk and the products tied to the fungal meningitis outbreak to those patients injected after May 21, 2012 with three specific lots MPA – Lot Numbers 05212012@68, 06292012@26, and 08102012@51 – produced by NECC; and/or**

**(2) relates to products or drugs other than the three specific lots of NECC MPA identified by the CDC.**

**Inspira further objects to this Request to the extent it seeks the production of documents and information outside the timeframe PSC represented it would limit its discovery requests to in its "[Proposed] Order Granting Plaintiffs Leave to Serve Subpoenas and Qualified Protective Order Regarding Protection of Health Information," filed on June 13, 2013 (Document No. 181-1).**

**Inspira further objects to this Request to the extent it seeks to force Inspira to conduct an unreasonable, unduly burdensome search, review and production on the PSC's behalf.**

**Inspira further objects to this Request to the extent it fails to define various vague and ambiguous terms and conditions including, but not limited to terms "recall notice," and "manner of transmission."**

**Inspira further objects to the production of ESI that is not reasonably accessible or would otherwise impose undue burden or cost to identify, collect, process, review and/or produce.  In addition, Inspira objects to the extent the PSC seeks the production of ESI without: (1) any negotiated ESI protocol; (2) providing necessary clarification and appropriate limitations as to the type(s), location(s), and accessibility of the ESI requested; and/or (3) including any good-faith proposal for appropriate cost-shifting relative to Inspira's identification, collection, review and production.**

**Inspira further objects to this Request to the extent it seeks documents that are not in Inspira's ownership, possession, custody or control, or that would require it to seek documents from or belonging to third parties.**

**Inspira further objects to the extent the documents and information the PSC seeks can be obtained from some other source that is more convenient, less burdensome, and/or less expensive.**

**Inspira further objects to this Request to the extent that it seeks or may be deemed to seek documents or information in the public domain, or that is confidential, and/or that is protected from disclosure by the attorney-client privilege, work product doctrine, or any other privilege, immunity or limitation on discovery.**

16.      Any and all documents regarding any investigation or inquiry the Healthcare Provider performed related to attempts by NECP to comply with United States Pharmacopeia - National Formulary, Chapter 797 (USP - NF General Chapter 797, entitled "Pharmaceutical Compounding - Sterile Preparations").

**OBJECTION:  Inspira objects to Request No. 16 as overbroad, not reasonably calculated to lead to the discovery of admissible evidence, unduly burdensome and oppressive to the extent the Request calls for the production of documents and information that is outside the relevant time frame established by the CDC, which has defined the scope of patients at risk and the products tied to the fungal meningitis outbreak to those patients**

injected after May 21, 2012 with three specific lots of MPA – Lot Numbers 05212012@68, 06292012@26, and 08102012@51 – produced by NECC.

Inspira further objects to this Request to the extent it seeks the production of documents and information outside the timeframe PSC represented it would limit its discovery requests to in its "[Proposed] Order Granting Plaintiffs Leave to Serve Subpoenas and Qualified Protective Order Regarding Protection of Health Information," filed on June 13, 2013 (Document No. 181-1).

Inspira further objects to this Request to the extent it seeks to force Inspira to conduct an unreasonable, unduly burdensome search, review and production on the PSC's behalf.

Inspira further objects to this Request to the extent it fails to define various vague and ambiguous terms and conditions including, but not limited to terms "investigation or inquiry," and "United States Pharmacopeia National Formulary."

Inspira further objects to the production of ESI that is not reasonably accessible or would otherwise impose undue burden or cost to identify, collect, process, review and/or produce.  In addition, Inspira objects to the extent the PSC seeks the production of ESI without: (1) any negotiated ESI protocol; (2) providing necessary clarification and appropriate limitations as to the type(s), location(s), and accessibility of the ESI requested; and/or (3) including any good-faith proposal for appropriate cost-shifting relative to Inspira's identification, collection, review and production.

Inspira further objects to this Request to the extent it seeks documents that are not in Inspira's ownership, possession, custody or control, or that would require it to seek documents from or belonging to third parties.

Inspira further objects to the extent the documents and information the PSC seeks can be obtained from some other source that is more convenient, less burdensome, and/or less expensive.

Inspira further objects to this Request to the extent that it seeks or may be deemed to seek documents or information in the public domain, or that is confidential, and/or that is protected from disclosure by the attorney-client privilege, work product doctrine, or any other privilege, immunity or limitation on discovery.

17.     Any and all policies of insurance, including without limitation of the foregoing, professional liability, malpractice, products liability, general liability, and comprehensive or umbrella policies, issued to the Healthcare Provider and/or its principal officers and directors and/or any physician working for or on behalf of the Healthcare Provider, for the policy periods including calendar years 2011, 2012 and 2013.

OBJECTION:  Inspira objects to Request No. 17 as overbroad, not reasonably calculated to lead to the discovery of admissible evidence, unduly burdensome and oppressive to the extent the Request calls for the production of documents and information that is outside the relevant time frame established by the CDC, which has defined the scope

of patients at risk and the products tied to the fungal meningitis outbreak to those patients injected after May 21, 2012 with three specific lots of MPA – Lot Numbers 05212012@68, 06292012@26, and 08102012@51 – produced by NECC.

Inspira further objects to this Request to the extent it seeks the production of documents and information outside the timeframe PSC represented it would limit its discovery requests to in its "[Proposed] Order Granting Plaintiffs Leave to Serve Subpoenas and Qualified Protective Order Regarding Protection of Health Information," filed on June 13, 2013 (Document No. 181-1).

Inspira further objects to this Request to the extent it seeks to force Inspira to conduct an unreasonable, unduly burdensome search, review and production on the PSC's behalf.

Inspira further objects to the production of ESI that is not reasonably accessible or would otherwise impose undue burden or cost to identify, collect, process, review and/or produce.  In addition, Inspira objects to the extent the PSC seeks the production of ESI without: (1) any negotiated ESI protocol; (2) providing necessary clarification and appropriate limitations as to the type(s), location(s), and accessibility of the ESI requested; and/or (3) including any good-faith proposal for appropriate cost-shifting relative to Inspira's identification, collection, review and production.

Inspira further objects to this Request to the extent it seeks documents that are not in Inspira's ownership, possession, custody or control, or that would require it to seek documents from or belonging to third parties.

Inspira further objects to the extent the documents and information the PSC seeks can be obtained from some other source that is more convenient, less burdensome, and/or less expensive.

Inspira further objects to this Request to the extent that it seeks or may be deemed to seek documents or information in the public domain, or that is confidential, and/or that is protected from disclosure by the attorney-client privilege, work product doctrine, or any other privilege, immunity or limitation on discovery.

18.     Articles of Incorporation and/or By-Laws applicable to the Healthcare Provider for calendar years 2011, 2012 and 2013.

OBJECTION:  Inspira objects to Request No. 18 as overbroad, not reasonably calculated to lead to the discovery of admissible evidence, unduly burdensome and oppressive to the extent the Request calls for the production of documents and information that is outside the relevant time frame established by the CDC, which has defined the scope of patients at risk and the products tied to the fungal meningitis outbreak to those patients injected after May 21, 2012 with three specific lots of MPA – Lot Numbers 05212012@68, 06292012@26, and 08102012@51 – produced by NECC.

Inspira further objects to this Request to the extent it seeks the production of documents and information outside the timeframe PSC represented it would limit its

-20-

discovery requests to in its "[Proposed] Order Granting Plaintiffs Leave to Serve Subpoenas and Qualified Protective Order Regarding Protection of Health Information," filed on June 13, 2013 (Document No. 181-1).

Inspira further objects to this Request to the extent it seeks to force Inspira to conduct an unreasonable, unduly burdensome search, review and production on the PSC's behalf.

Inspira further objects to the production of ESI that is not reasonably accessible or would otherwise impose undue burden or cost to identify, collect, process, review and/or produce.  In addition, Inspira objects to the extent the PSC seeks the production of ESI without: (1) any negotiated ESI protocol; (2) providing necessary clarification and appropriate limitations as to the type(s), location(s), and accessibility of the ESI requested; and/or (3) including any good-faith proposal for appropriate cost-shifting relative to Inspira's identification, collection, review and production.

Inspira further objects to this Request to the extent it seeks documents that are not in Inspira's ownership, possession, custody or control, or that would require it to seek documents from or belonging to third parties.

Inspira further objects to the extent the documents and information the PSC seeks can be obtained from some other source that is more convenient, less burdensome, and/or less expensive.

Inspira further objects to this Request to the extent that it seeks or may be deemed to seek documents or information in the public domain, or that is confidential, and/or that is protected from disclosure by the attorney-client privilege, work product doctrine, or any other privilege, immunity or limitation on discovery.

19.	Any and all documents and/or ESI reflecting or containing the names, addresses and positions (President, Vice-President, Director, etc.) within the Healthcare Provider of all officers and directors of the Healthcare Provider during the calendar years 2011, 2012 and 2013.

OBJECTION:  Inspira objects to Request No. 19 as overbroad, not reasonably calculated to lead to the discovery of admissible evidence, unduly burdensome and oppressive to the extent the Request calls for the production of documents and information that is outside the relevant time frame established by the CDC which has defined the scope of patients at risk and the products tied to the fungal meningitis outbreak to those patients injected after May 21, 2012 with three specific lots of MPA– Lot Numbers 05212012@68, 06292012@26, and 08102012@51 – produced by NECC.

Inspira further objects to this Request to the extent it seeks the production of documents and information outside the timeframe PSC represented it would limit its discovery requests to in its "[Proposed] Order Granting Plaintiffs Leave to Serve Subpoenas and Qualified Protective Order Regarding Protection of Health Information," filed on June 13, 2013 (Document No. 181-1).

Inspira further objects to this Request to the extent it seeks to force Inspira to conduct an unreasonable, unduly burdensome search, review and production on the PSC's behalf.

Inspira further objects to the production of ESI that is not reasonably accessible or would otherwise impose undue burden or cost to identify, collect, process, review and/or produce.  In addition, Inspira objects to the extent the PSC seeks the production of ESI without: (1) any negotiated ESI protocol; (2) providing necessary clarification and appropriate limitations as to the type(s), location(s), and accessibility of the ESI requested; and/or (3) including any good-faith proposal for appropriate cost-shifting relative to Inspira's identification, collection, review and production.

Inspira further objects to this Request to the extent it seeks documents that are not in Inspira's ownership, possession, custody or control, or that would require it to seek documents from or belonging to third parties.

Inspira further objects to the extent the documents and information the PSC seeks can be obtained from some other source that is more convenient, less burdensome, and/or less expensive.

Inspira further objects to this Request to the extent that it seeks or may be deemed to seek documents or information in the public domain, or that is confidential, and/or that is protected from disclosure by the attorney-client privilege, work product doctrine, or any other privilege, immunity or limitation on discovery.

20.      Any and all documents showing the entities or individuals with an ownership interest in the Healthcare Provider.

OBJECTION:  Inspira objects to Request No. 20 as overbroad, not reasonably calculated to lead to the discovery of admissible evidence, unduly burdensome and oppressive to the extent the Request calls for the production of documents and information that is outside the relevant time frame established by the CDC which has defined the scope of patients at risk and the products tied to the fungal meningitis outbreak to those patients injected after May 21, 2012 with three specific lots of MPA– Lot Numbers 05212012@68, 06292012@26, and 08102012@51 – produced by NECC.

Inspira further objects to this Request to the extent it seeks the production of documents and information outside the timeframe PSC represented it would limit its discovery requests to in its "[Proposed] Order Granting Plaintiffs Leave to Serve Subpoenas and Qualified Protective Order Regarding Protection of Health Information," filed on June 13, 2013 (Document No. 181-1).

Inspira further objects to this Request to the extent it seeks to force Inspira to conduct an unreasonable, unduly burdensome search, review and production on the PSC's behalf.

Inspira further objects to the production of ESI that is not reasonably accessible or would otherwise impose undue burden or cost to identify, collect, process, review and/or

produce.  In addition, Inspira objects to the extent the PSC seeks the production of ESI without: (1) any negotiated ESI protocol; (2) providing necessary clarification and appropriate limitations as to the type(s), location(s), and accessibility of the ESI requested; and/or (3) including any good-faith proposal for appropriate cost-shifting relative to Inspira's identification, collection, review and production.

Inspira further objects to the extent the documents and information the PSC seeks can be obtained from some other source that is more convenient, less burdensome, and/or less expensive, such as the Corporate Disclosure Statement of South Jersey Health System, Inc. (Dkt. No. 80), the Corporate Disclosure Statement of South Jersey Hospital, Inc. (Dkt. No. 81), the Supplemental Corporate Disclosure Statement of Inspira Medical Centers, Inc. (Dkt. No. 272), and the Supplemental Corporate Disclosure Statement of Inspira Health Network, Inc. (Dkt. No. 271).

Inspira further objects to this Request to the extent that it seeks or may be deemed to seek documents or information in the public domain, or that is confidential, and/or that is protected from disclosure by the attorney-client privilege, work product doctrine, or any other privilege, immunity or limitation on discovery.

21.    Any and all organizational charts maintained by the Healthcare Provider and/or any documents listing directors, officers, employees, and/or agents of the Healthcare Provider showing the names and positions of said directors, officers, employees, and/or agents and their relationship or rank within the Healthcare Provider.

OBJECTION:  Inspira objects to Request No. 21 as overbroad, not reasonably calculated to lead to the discovery of admissible evidence, unduly burdensome and oppressive to the extent the Request calls for the production of documents and information that is outside the relevant time frame established by the CDC, which has defined the scope of patients at risk and the products tied to the fungal meningitis outbreak to those patients injected after May 21, 2012 with three specific lots of MPA – Lot Numbers 05212012@68, 06292012@26, and 08102012@51 – produced by NECC.

Inspira further objects to this Request to the extent it seeks the production of documents and information outside the timeframe PSC represented it would limit its discovery requests to in its "[Proposed] Order Granting Plaintiffs Leave to Serve Subpoenas and Qualified Protective Order Regarding Protection of Health Information," filed on June 13, 2013 (Document No. 181-1).

Inspira further objects to this Request to the extent it seeks to force Inspira to conduct an unreasonable, unduly burdensome search, review and production on the PSC's behalf.

Inspira further objects to the production of ESI that is not reasonably accessible or would otherwise impose undue burden or cost to identify, collect, process, review and/or produce.  In addition, Inspira objects to the extent the PSC seeks the production of ESI without: (1) any negotiated ESI protocol; (2) providing necessary clarification and appropriate limitations as to the type(s), location(s), and accessibility of the ESI requested;

and/or (3) including any good-faith proposal for appropriate cost-shifting relative to Inspira's identification, collection, review and production.

Inspira further objects to this Request to the extent it seeks documents that are not in Inspira's ownership, possession, custody or control, or that would require it to seek documents from or belonging to third parties.

Inspira further objects to the extent the documents and information the PSC seeks can be obtained from some other source that is more convenient, less burdensome, and/or less expensive.

Inspira further objects to this Request to the extent that it seeks or may be deemed to seek documents or information in the public domain, or that is confidential, and/or that is protected from disclosure by the attorney-client privilege, work product doctrine, or any other privilege, immunity or limitation on discovery.

Respectfully submitted,

MONTGOMERY, McCRACKEN, WALKER
& RHOADS LLP

Dated:  July 10, 2013

s/*Stephen A. Grossman*
Stephen A. Grossman
Montgomery, McCracken, Walker & Rhoads, LLP
LibertyView, Suite 600
457 Haddonfield Road
Cherry Hill, NJ 08002
sgrossman@mmwr.com
(856) 488-7700
(856) 488-7720 (facsimile)

*Counsel for Defendants*
*Inspira Health Network, Inc. and*
*Inspira Medical Centers, Inc.*