UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates To:<br>    All Cases | MDL No. 1:13-md-2419-FDS |

**MEMORANDUM OF LAW IN OPPOSITION TO THE MOTIONS
TO ALTER OR AMEND JUDGMENT UNDER RULE 59(e) OR,
IN THE ALTERNATIVE, TO CERTIFY FOR INTERLOCUTORY APPEAL
UNDER 28 U.S.C. § 1292(b) FILED BY (1) THE ROANOKE GENTRY LOCKE
PLAINTIFFS; AND (2) THE ROANOKE-AREA LICHTENSTEINFISHWICK
INTERVENORS AND BROWN & JENNINGS INTERVENORS**

Paul D. Moore, the Chapter 11 Trustee for the Estate of New England Compounding Pharmacy, Inc. ("NECC" or the "Debtor"), hereby files this Memorandum of Law in Opposition to the Motions to Alter or Amend Judgment under Rule 59(e) or, in the alternative, to Certify for Interlocutory Appeal under 28 U.S.C. § 1292(b) filed by (1) the Roanoke Gentry Locke Plaintiffs; and (2) the Roanoke-Area Lichtensteinfishwick Intervenors and Brown & Jennings Intervenors (collectively, the "Motions"). In support of his opposition to the Motions, the Trustee states as follows:

**INTRODUCTION**

On March 10, 2013, the Trustee filed the Chapter 11 Trustee's Motion to Transfer Personal Injury Tort and Wrongful Death Cases to this Court pursuant to 28 U.S.C. §§ 157(b)(5) and 1334 (the "Transfer Motion"). In response to the Transfer Motion, certain plaintiffs in cases pending in state court in Roanoke, Virginia who characterized themselves as the "Roanoke Gentry Locke Plaintiffs" (the "RGLP") filed a Memorandum of Law in Support of Motion for Mandatory Abstention and in Opposition to Trustee's Motion to Transfer on March 19, 2013 (the

"Abstention Motion"). Although the Abstention Motion sought mandatory abstention, it also sought discretionary abstention as an alternate form of relief.

Certain other plaintiffs, who have not yet filed civil actions and who characterize themselves as the "Roanoke-Area Lichtensteinfishwick Intervenors" and the "Brown & Jennings Intervenors" (collectively, the "Virginia Intervenors," and together with the RGLP, the "Virginia Claimants"), opposed the Transfer Motion and joined in the Abstention Motion.

On May 31, 2013, this Court entered its Memorandum and Order on Trustee's Motion to Transfer Cases and Related Motions [Docket No. 170] (the "Court's Memorandum"). The Court granted the Transfer Motion in part. With regard to the category of cases which includes the Virginia Claimants' cases (*i.e.*, "cases pending in state courts that do not name NECC or affiliated entities as defendants"[1]), the Court assumed the existence of subject matter jurisdiction, but decided to exercise its discretion and to abstain from exercising jurisdiction. Court's Memorandum at 33. This Court held:

> The transfer of some, but not all, state-court cases might be something of a pointless exercise if the possibility remains that a state-court defendant could make a future claim in the bankruptcy case for contribution or indemnity, upsetting the effort to make an equitable distribution to the victims and other creditors. Indeed, that is the essential basis of the trustee's motion: that the Court *must* transfer *all* state-court cases to foreclose that very possibility.
>
> The Court is not convinced, at least at this stage, that such a step is necessary. Other possible courses of action might produce the desired consolidation and finality, without resolving difficult issues of jurisdiction and abstention and without intruding unnecessarily into the proceedings of state courts. For example, if the Bankruptcy Court were to set a relatively early bar date[2] for the filing of claims against the estate, it would appear that any

---

[1] Court's Memorandum at 5-6.

[2] The Trustee has filed a motion to establish a bar date. Although this motion is scheduled to be heard on July 17, 2013, the Trustee has filed a motion to continue this hearing to July 24, 2013.

> defendant in a state-court action would be effectively forced to decide whether it wanted to file a claim for contribution or indemnity against the estate. Such a claim, in turn, would probably permit the exercise of federal jurisdiction over the underlying matter. Any defendant who did not file a claim would be barred, and the state-court case could proceed to judgment without interference from the federal court. Either way, the desired goals would be achieved with a relatively minimal degree of risk or intrusion.
>
> In any event, the Court does not need to reach the issue at this juncture. <u>If the balance of factors shifts over time, the Court can revisit the issue, and if necessary (and appropriate) can issue further orders concerning the exercise of related-to jurisdiction</u>. (Emphasis added).

*Id*. at 18-19 (emphasis added).

In sum, this Court granted the relief which the Virginia Claimants requested (*i.e.*, the Court declined to exercise jurisdiction over their cases). Nevertheless, the Virginia Claimants have filed the Motions, seeking reconsideration or certification of an interlocutory appeal. For the reasons set forth below, this Court should deny the Motion.

## **ARGUMENT**

**A.     This Court should deny the Motions to Alter or Amend Judgment Under Rule 59(e).**

In seeking relief under Fed. R. Civ. P. 59(e), the Virginia Claimants are seeking reconsideration. A federal district court has the discretion to reconsider interlocutory orders and revise or amend them prior to final judgment. *Antony v. Duty Free Ams., Inc.*, 705 F. Supp. 2d 112, 114 (D. Mass. 2010) (citing *Davis v. Lehane*, 89 F. Supp. 2d 142, 147 (D. Mass. 2000)). The United States Supreme Court, however, has admonished that "courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous <u>and</u> would work a manifest injustice." *Id*. (citing *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 817, 108 S. Ct. 2166, 100 L. Ed. 2d 811 (1988)) (emphasis added).

As courts in the First Circuit have recognized, a motion for reconsideration should not be allowed to give a party "another bite at the apple simply because the Court did not rule in his favor." *Antony*, 705 F. Supp. 2d at 115; *see In re Wedgestone Fin.*, 142 B.R. 7, 8 (Bankr. D. Mass. 1992) ("A motion for reconsideration is not a means by which parties can rehash previously made arguments"); *Froudi v. United States*, 22 Cl. Ct. 290, 300 (1991) ("Generally, a motion for reconsideration is not a vehicle for giving an unhappy litigant an additional chance to sway the judge, nor is it intended to allow a party to make arguments already presented to, and rejected by, the court."); *see also*, *In re Armstrong Store Fixtures Corp.*, 139 B.R. 347, 350 (Bankr. W.D. Penn. 1992) (noting that the court "does not have the luxury of treating its first decision as a dress rehearsal for the next time."). Notably, the Motions repeat the same arguments which the RGLP made in their Memorandum of Law in Support of Motion for Mandatory Abstention and in Opposition to Trustee's Motion to Transfer [Docket No. 157] and which the Virginia Intervenors joined.

The RGLP urge this Court to reconsider its decision due to "both a manifest error of law in its treatment of related-to jurisdiction and abstention, and a manifest injustice." RGLP Motion at 9.[3] As set forth below, the Virginia Claimants have failed to establish either contention.

### 1. This Court should not reconsider its determination of "related to" jurisdiction.

As this Court noted, "[t]he scope of related to jurisdiction is 'quite broad.'" Court's Memorandum at 12 (citing *In re Boston Reg'l Med. Ctr.*, 410 F.3d 100, 105 (1st Cir. 2005)). This Court acknowledged that it has "related to" jurisdiction "over any state-court case in which

---

[3] The Virginia Intervenors do not argue that there has been "manifest injustice." Instead, they argue only that there has been an error of law. Virginia Intervenors' Motion at 2.

any . . . defendant has asserted a claim for contribution or indemnity . . . against NECC or any affiliated entity or individual." *Id*. at 18. The Virginia Claimants do not dispute this conclusion.

This Court found that the exercise of "related to" jurisdiction over state-court cases where there has been no such assertion of a claim for contribution or indemnity was a closer call. While some circuits have held that there is no jurisdiction under such circumstances, *see e.g.*, *Pacor v. Higgins*, 743 F.2d 984 (3d Cir. 1984), the United States Court of Appeals for the Sixth Circuit has taken a "more pragmatic approach to related-to jurisdiction." *Id*. at 16 (citing *In re Dow Corning Corp.*, 86 F.3d 482 (6th Cir. 1996). In *Dow Corning*, the court distinguished *Pacor* and observed that "[a] single possible claim for indemnification or contribution simply does not represent the same kind of threat to a debtor's reorganization plan as that posed by thousands of potential indemnification claims at issue here." *Dow Corning*, 86 F.3d at 494. The Trustee provided the Court with an ample record to support the assertion of jurisdiction over the RGLP's state-court case under *Dow Corning*, *see e.g.*, Memorandum of Law of Chapter 11 Trustee in Opposition to Plaintiff's Motion for Mandatory Abstention [Docket No. 126] at 12-13; Omnibus Memorandum in Reply to Various Oppositions and in Further Support of Chapter 11 Trustee's Motion to Transfer [Docket No. 146] at 5-6. The exercise of such jurisdiction is not a manifest error of law. Moreover, such an exercise does not create a "manifest injustice" in light of the fact that this Court has abstained from exercising jurisdiction.

> **2.    This Court should not reconsider its determination that mandatory abstention was inappropriate.**

As the Court noted, the mandatory abstention provisions of 28 U.S.C. § 1334(c)(2):

> … must be read in conjunction with 28 U.S.C. § 157(b)(4), which states that "[n]on-core proceedings under section 157(b)(2)(B) . . . shall not be subject to the mandatory abstention provisions of section 1334(c)(2)." And § 157(b)(2), in turn, provides that "the liquidation or estimation of contingent or unliquidated personal

5

> injury tort or wrongful death claims *against the estate* for purposes of distribution in a case under title 11" are non-core claims. 28 U.S.C. § 157(b)(2)(B) (emphasis added).

Court's Memorandum at 20. While this Court acknowledged that a strict reading of section 157(b)(2)(B) might lead to the conclusion that wrongful death claims against non-debtors are subject to mandatory abstention, *id*. at 20, the Court found that the legislative history of that section supported a more expansive approach. *Id*. at 21 (citing *Beck v. Victor Equipment Co., Inc.*, 277 B.R. 179, 180-181 (S.D.N.Y. 2002) (Rakoff, J.)).

This Court further explained:

> Even in the absence of contractual indemnity agreements, the third-party defendants in the pending state-court actions may have claims for contribution or common-law indemnity from NECC in the event that they are found liable in state court. Those potential state-court verdicts pose the type of threat Congress had in mind when it crafted the exception to § 1334(c)(2)—they can be "unpredictable and substantial" and even being required to contribute to their satisfaction "could have potentially deleterious effects on a debtor's estate." *Beck*, 277 B.R. at 180-181. This is particularly true in circumstances such as this, where the cause of action arises out of an allegedly defective product manufactured by the debtor. <u>In many, if not all, jurisdictions, under ordinary circumstances, the debtor would be strictly liable for the harm caused by the defective product</u>, even if there may have been a third-party interposed between the debtor and the tort claimant in the supply chain.
>
> The Court must interpret the statutory language in the context of those practicalities. <u>The phrase "personal injury tort or wrongful death claims against the estate," as used in § 157(b)(2)(B), can fairly be read to encompass not only personal injury and wrongful death claims, but also claims for contribution or indemnity that derive from personal injury or wrongful death claims</u>. Contribution or indemnity claims are simply procedural vehicles for asserting liability against the estate for some underlying harm. If the underlying harm giving rise to the estate's potential liability involves personal injury or wrongful death, the claim against a third-party concerning that harm is, in substance, a "personal injury tort or wrongful death claim against the estate" and therefore covered by the exception in § 157(b)(2)(B). This reading is more congruent with Congress's motivation in crafting the exception to

6

> mandatory abstention. A narrower reading would create a potentially gaping loophole in the carefully crafted system for the orderly administration of bankruptcy estates. Section 157(b)(2)(B), therefore, provides an exception from mandatory abstention for personal injury and wrongful death claims against non-debtor third-parties for contribution or indemnification.

Court's Memorandum at 22-23 (citations omitted) (emphasis added). Reviewing this language, the RGLP contend that the Court's reasoning is flawed, arguing that, under Virginia law, the remedy of indemnity is not available to the defendants in their action, and that Virginia does not recognize strict liability.

First, with regard to the remedy of indemnity, the RGLP have asserted that "[u]nder Virginia indemnity law, 'active negligence prevents a party from seeking indemnity altogether.'" Motion at 7 (citing *Glover v. Johns-Manville Corp.*, 525 F. Supp. 894, 906 (E.D. Va. 1979) (citing *Hartford Accident and Indemnity Company v. Williams*, 291 F. Supp. 103 (W.D.Va.1968)). The *Glover* court did hold that "[a] party may only prevail on its indemnity claim if its negligence is in some sense 'passive' or 'secondary' in bringing about the injury suffered by the original claimant." *Id*. In that case, the court had found several defendants liable for manufacturing and distributing products that carried the "latent danger" posed by asbestos. *Glover*, 525 F. Supp. at 907. The United States government had purchased these products and the plaintiff suffered from exposure while working at a naval shipyard. The *Glover* court held that the manufacturers were actively negligent since their "negligence set in motion the tragedy that was to ensue." *Id*. By contrast, any negligence of the United States arose from its failure properly to control a "hazard" purchased from others. *Id*. Under the reasoning in *Glover*, a court could find that, as between the Debtor and non-debtor defendants, the Debtor was the actively negligent party. Further, the non-debtor defendants may seek contribution from NECC

pursuant to Va. Code. Ann. § 8.01-34, which provides that "[c]ontribution among wrongdoers may be enforced when the wrong results from negligence and involved no moral turpitude."[4]

Second, the existence of a cause of action for strict liability is not essential to the Court's reasoning that claims against non-debtor defendants will lead to claims against the Debtor. Moreover, although the RGLP have not pled a cause of action for "strict liability," they do seek relief under a theory of "negligence *per se*." *See* RGLP Complaint at ¶¶ 181-94. Strict liability and negligence *per se* are essentially the same. *See, e.g., Chambers v. St. Mary's Sch.*, 82 Ohio St. 3d 563, 566 (Ohio 1998) (Negligence *per se* is tantamount to strict liability for purposes of proving that a defendant breached a duty).

In conclusion, the Court, in rendering the Court's Memorandum, committed no "manifest error of law." Further, there can be no finding of "manifest injustice" in light of this Court's decision to exercise its discretion and to abstain from exercising jurisdiction.

**B.    This Court should not certify an interlocutory appeal.**

    **1.    An order granting discretionary abstention pursuant to 28 U.S.C. § 1334(c)(1) is not an appealable order.**

Pursuant to 28 U.S.C. § 1334(d):

> Any decision to abstain or not to abstain made under subsection (c) (other than a decision not to abstain in a proceeding described in subsection (c)(2)[5]) is not reviewable by appeal . . . ."

---

[4] Although the RGLP have alleged intentional torts, they have alleged, in the alternative, negligence.

[5] Notably, although the appeal from a decision not to abstain under 28 U.S.C. § 1334(c)(2) (mandatory abstention) is not *per se* prohibited under 28 U.S.C. § 1334(d), the right to an interlocutory appeal is not automatic. A party seeking an appeal must still satisfy the requirements of 28 U.S.C. § 1292(b). *See Beightol v. UBS Painewebber Inc.*, 354 F.3d 187, 189 (2d Cir. 2004) (holding "nothing in the text of § 1334(d) creates an independent basis of appellate jurisdiction over § 1334(c)(2) decisions; rather, the provision simply indicates that these decisions will be reviewable if the Court otherwise has appellate jurisdiction over the decision.").

In this case, the Court decided to "exercise its discretion and abstain from asserting jurisdiction" over the Virginia Claimants' claims. Court's Memorandum at 25. This exercise of discretion was based upon 28 U.S.C. § 1334(c)(1). Court's Memorandum at 23-25. 28 U.S.C. § 1334(d) bars any appeal from such a decision to abstain. *See United States (IRS) v. Paolo (In re Paolo)*, 619 F.3d 100, 103 (1st Cir. 2010) (dismissing appeal from lower court's decision to abstain pursuant to section 1334(c)(1) on the grounds that such an appeal is barred by § 1334(d)).

**2.    The Virginia Claimants cannot satisfy the requirements of 28 U.S.C. § 1292(b).**

In deciding whether to grant a motion for leave to file an interlocutory appeal pursuant to 28 U.S.C. § 1292(b), the court must consider "whether (1) 'the order involves a controlling question of law' (2) 'as to which there is substantial ground for difference of opinion,' and (3) whether 'an immediate appeal from the order may materially advance the ultimate termination of the litigation.'" *In re Bank of New England*, 218 B.R. 643, 652 (B.A.P. 1st Cir. 1998) (quoting 28 U.S.C. § 1292(b)). As the First Circuit has recognized, "interlocutory appeals are granted 'sparingly and only in exceptional circumstances.'" *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 894 F. Supp. 2d 144 (D. Mass. 2012) (citing *In re San Juan DuPont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1010 n.1 (1st Cir. 1988) (internal quotation marks and citation omitted); *see also*, *Camacho v. P.R. Ports Auth.*, 369 F.3d 570, 573 (1st Cir. P.R. 2004) (holding that "Section 1292(b) is meant to be used sparingly, and appeals under it are, accordingly, hen's-teeth rare."); *McGillicuddy v. Clements*, 746 F.2d 76, 76 n.1 (1st Cir. 1984) (same). Similarly, in *Miara v. First Allmerica Fin. Life Ins. Co.*, the court held that section 1292(b) certification "should be used sparingly and only in exceptional circumstances." 379 F. Supp. 2d 20, 67 n. 53 (D. Mass. 2005) (citing *Stone ex. rel. Estate of Stone v. Stone v. Frontier Airlines, Inc.* (*In re Estate of Stone*), 256 F. Supp. 2d 28, 47 (D. Mass. 2002)).

9

In determining whether there is a controlling question of law, the court must decide whether the issue "presents a question of law that controls the outcome of the underlying case." *Sandler v. Eastern Airlines, Inc.*, 649 F.2d 19, 20 (1st Cir. 1981). In *Sandler*, a male flight attendant sued Eastern Airlines under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, challenging a policy which precluded married persons or parents from being employed as flight attendants. Eastern Airlines filed a motion to dismiss on the grounds that plaintiff had failed to allege discrimination on the basis of race, color, religion, sex or national origin. The district court denied the motion, but certified the issues raised therein *(i.e.,* the legality of an "employment practice precluding married individuals and/or parents from being considered for employment as flight attendants with Eastern") for interlocutory appeal. The court of appeals granted permission for interlocutory appeal, but ultimately dismissed the appeal without addressing "the merits of the question certified." *Sandler*, 649 F.2d at 20.

The court noted that, on appeal, Sandler appeared to argue that Eastern's policy was "merely a pretext for Eastern's actual refusal to hire <u>male</u> flight attendants, married or unmarried." *Id*. (Emphasis added). The court noted that "if Sandler succeeds in proving that this is the case, the question certified will neither arise or control." *Id*. Further, certification of Eastern's interlocutory appeal would not "materially advance the ultimate termination of the litigation." *Id*. (citing 28 U.S.C. § 1292(b)).

Similarly, in this case, the Court has declined to exercise jurisdiction. Although the Court has stated that, upon a change of circumstances, the Court may re-visit its decision to abstain from hearing the RGLP's state court action, it has not done so and may never do so. In the event that the Court later decides to exercise jurisdiction based upon changed circumstances (*i.e.*, a defendant's assertion of a claim against NECC in the context of a proof of claim), the

10

questions which the RGLP seek to certify (both of which assume that no defendant has asserted a claim for indemnity or contribution against NECC) "will neither arise or control." *Sandler*, 649 F.2d at 20.[6]

## CONCLUSION

For all the foregoing reasons, the Trustee respectfully requests that this Court enter an Order denying the Motion.

Dated: July 12, 2013

Respectfully submitted,

DUANE MORRIS LLP

*/s/ Michael R. Gottfried*
Michael R. Gottfried
(BBO #542156)

100 High Street
Suite 2400
Boston, MA 02110-1724
Phone: (857) 488-4200
Email: mrgottfried@duanemorris.com

---

[6] The Virginia Intervenors cite the decisions in *APCC Services, Inc. v. ESH AT&T Corporation*, 297 F. Supp. 2d 101, 109 (D.D.C. 2009) and *Al Maqaleh v. Gates*, 620 F. Supp. 2d 51, 55 (D.D.C. 2009) for the proposition that Courts regularly certify interlocutory appeals where there has been a denial of a motion to dismiss for lack of subject matter jurisdiction. Virginia Intervenors' Motion at 4. These decisions are easily distinguished. While this Court found that it has subject matter jurisdiction, it declined to exercise that jurisdiction over the claims which the Virginia Claimants assert.

11

## CERTIFICATE OF SERVICE

I, Michael R. Gottfried, hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF) and that paper copies will be provided to those indicated in the NEF as nonregistered participants.

/s/ Michael R. Gottfried
Michael R. Gottfried

Counsel for Chapter 11 Trustee for the Estate of
New England Compounding Pharmacy, Inc.
