UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | MDL No. 2419<br>Master Dkt.: 1:13-md-02419-FDS |
| THIS DOCUMENT RELATES TO:<br><br>All Actions | |

### PLAINTIFFS' STEERING COMMITTEE'S RESPONSE TO OBJECTIONS OF DR. DONALD JONES

On June 17, 2013, the Plaintiffs' Steering Committee ("PSC") served a subpoena (the "Subpoena) upon Dr. Donald Jones ("Dr. Jones" or the "Subpoenaed Party"). On July 1, 2013, Dr. Jones, through counsel, filed an Objection to the Subpoena (Dkt. No. 222, the "Jones Objection"). The PSC now files this response to the Jones Objection.

### INTRODUCTION

The Jones Objection provides no basis to quash or otherwise modify the Subpoena. The Jones Objection offers only technicalities, red herrings and vague, unsupported legal arguments for the relief requested and fails to provide any evidence to support its unfounded allegations that the Subpoena imposes an undue burden.

Dr. Jones has exhibited bad faith in his utter refusal to work with the PSC in obtaining highly critical documents to this litigation. He failed to attach the letter sent by the PSC in the meet and confer process, which directly addressed many of the arguments put forth in the Jones Objection.

In light of the considerable lack of any substance to the Jones Objection, it is clear what Dr. Jones' goal here is: Delay. Tennessee, the state in which Dr. Jones practices, has a one year

statute of limitations, a statutory bar that is quickly approaching, and Dr. Jones' strategy to unnecessarily delay these proceedings is likely aimed at trying to run out this clock and limit his liability for providing tainted, NECC methylprednisolone acetate ("MPA") to his patients. The Court should not permit these obstructionist tactics and should immediately require Dr. Jones to respond, in full, to the Subpoena.

Finally, Dr. Jones sets forth only the flimsiest basis for the Court to quash the Subpoena based on undue burden. Dr. Jones provides no evidence or even makes any claim that producing responsive documents to the Subpoena would work a considerable hardship for him. Instead, Dr. Jones seeks to quash the Subpoena merely because it uses the term "all" in its requests and because some of the documents may be accessible from other sources like the CDC, FDA, and the New England Compounding Clinic ("NECC"). These are absurd arguments and provide no grounds for the Court to quash or alter the Subpoena.

In short, the Court should overrule the Jones Objection and require Dr. Jones to immediately respond to the Subpoena. Otherwise, Tennessee victims of this tragedy may lose their right to be made whole.

**I.  The Failure To Provide Witness Fees Has Been Cured**

The Jones Objection first seeks relief from the Subpoena for failure of the Subpoena to be accompanied by the required witness fee under Rule 45. This technical error was cured by letter to counsel submitted on June 28, 2013, a copy of which is attached to this response as Exhibit A.

Although technical failures in providing witness fees can be cured or waived by the Court, this Court need not do that now as there is no legitimate argument that Dr. Jones has not been provided its witness fees. *See Adams v. Dolgencorp, LLC*, Case No. 11-784, 2012 U.S. Dist. LEXIS 71066 (M.D. La. May 22, 2012) ("[W]hile a subpoena request without the witness

fee is technically invalid, the defect can be cured.") (citing *Meyer v. Foti*, 720 F.Supp. 1234, 1244 (E.D.La. 1989)). Despite this, Dr. Jones insisted that the PSC reserve the Subpoena with a second check attached. Out of an abundance of caution, and in light of Dr. Jones' insistence on re-service, the PSC reserved the Subpoena on July 8 mooting this point in its entirety. Dr. Jones' highly technical, form over substance approach, provides Dr. Jones no relief and only distracts from the important work that needs to be done to ensure that victims of this tragedy are made whole.

In fact, Dr. Jones' utter insistence on these technicalities is highly misplaced in light of the technical failure of the Jones Objection to itself satisfy certain technicalities required by this Court. Local Rules 7.1(a)(2), 26.2(c) require that any discovery motion be filed with a certificate of good faith consultation, which was not filed with the Jones Objection. Moreover, Local Rule 37.1 requires all discovery motions to set forth specific facts about the discovery conference held by the parties prior to filing any discovery related motion. There can be no doubt that the Jones Objection is such a motion, yet the motion fails to set forth the required information, presumably because Jones' counsel failed to participate in good faith, despite the PSC's attempts to do so, to narrow the issues now before this Court. Furthermore, as of last week, the PSC was still meeting and conferring with Dr. Jones on various issues in the subpoena and as of today, the PSC sent additional materials for Dr. Jones to review as part of the meet and confer process.

For example, by letter on June 28, 2013, the PSC agreed to narrow the scope of the Subpoena to conform to certain requests made by Jones' counsel in its original meet and confer letter. *See* Exhibit A. Despite that offer, the Jones Objection contains an allegation that the PSC breached and violated the Court's limited discovery by requesting documents outside of the

January 2011 and November 2012 timeframe; but the Jones Objection fails to tell the Court that the PSC agreed to such a limitation.[1]

By failing to engage in a good faith meet and confer process, and by failing to attach the required certificates, and by failing to include in its Motion the information required by Local Rule 37.1, the Jones Objection fails on technicalities alone. *Howe v. Town of N. Andover*, 784 F. Supp. 2d 24 (D. Mass. 2011) (J. Gorton) (granting motion to strike discovery motion, in part, for parties' failure to comply with the "mandatory provisions of Local Rule 37.1(a)"). It is utterly unreasonable for the Jones Objection to require the PSC to meet all technicalities and then turn around and fail to do so itself. The Court should end these mindless games and order Dr. Jones to comply with the Subpoena.

## II.     The Subpoena Does Not Breach The Court's Limitation On Discovery

As already discussed, Dr. Jones' next claim that the Subpoena went beyond the discovery permitted by the Court is utterly unfounded. As demonstrated in Exhibit A, the PSC agreed to limit the documents produced pursuant to the Subpoena to be in accordance with the Court's Qualified Protective Order. Specifically, the letter states the following:

> As an initial matter, the PSC agrees to limit the scope of the Jones Subpoena to require production of HIPAA-protected information only from January 2011-November 2012.

*See* Exhibit A, page 4.

This argument is nothing more than further indication of Dr. Jones' bad faith that he would now seek to quash the Subpoena on a ground that the PSC already consented to.

Further, the PSC is simply mystified by Dr. Jones' allegation that the Jones Subpoena "circumvented the Court's requirement that the protected health information be produced to a

---

[1] As discussed in greater detail below this is not the only example of the Jones Objection insisting this Court quash or modify the Subpoena on grounds that the PSC agreed to in the meet and confer process.

{004663/12496/00294542.DOCX / Ver.3}

vendor." This is patently incorrect. As can be demonstrated by the cover letter sent along with the Subpoena, the PSC originally requested that any HIPAA protected information be produced in accordance with the Court's Qualified Protective Order.[2] Further, in the June 28 meet and confer letter, counsel once again clarified that HIPAA protected information need not be produced at the deposition but should only be produced in accordance with the Court's Qualified Protective Order. This is yet another indication of Dr. Jones' bad faith in pursuing to quash or modify the Subpoena and yet another indication of how, had Dr. Jones' counsel followed the Local Rules, this issue could have been resolved without the Court intervening.

Finally, Dr. Jones once again misleadingly claims that the PSC failed to append the Qualified Protective Order to the Subpoena. Dr. Jones fails to tell the Court that the order had not been issued at the time the PSC served the original Jones Subpoena, and the cover letter that accompanied the Subpoena stated that the PSC anticipated the order would be issued shortly and the PSC would provide a copy of that Order once it was issued; which it did, as it was attached to the June 28 meet and confer letter. This is yet another example of Dr. Jones' bad faith and his improper attempt to put form over substance to circumvent his responsibilities on mere technicalities.

### III. The Subpoena Is Not Unduly Burdensome

Next, Dr. Jones incorrectly, and without providing any evidence in support, claims that the Subpoena imposes an undue burden.[3] "The party seeking to quash a subpoena bears a heavy burden of proof." *Irons v. Karceski*, 74 F.3d 1262, 1264 (D.C. Cir. 1995). "When a non-party claims that a subpoena is burdensome and oppressive, the non-party must support its claim by

---

[2] A copy of this letter is attached as Exhibit A to the Jones Objection.
[3] Dr. Jones claims that the standard for undue burden used in the Eastern District of Tennessee should be used to determine undue burden in this case. The PSC does not believe that it needs to address this issue as Dr. Jones' claims of undue burden fail under any standard used in federal courts.

showing how production would be burdensome." *In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d 606, 612 (E.D. Va. 2008). Given this heightened standard, the fact that Dr. Jones provides no evidence demonstrating burden and the fact that Dr. Jones' legal arguments are utterly unfounded, Dr. Jones has failed to carry his substantial burden of showing that the Subpoena is unduly burdensome.

### A. Dr. Jones Should Be Considered A Party

Dr. Jones incorrectly claims that he should be afforded special protection under Rule 45 because he is a "non-party" to this proceeding. Given the nature of this MDL, the party/non-party label is nothing more than a distinction without a difference. Although no complaint has been filed against Dr. Jones currently in the MDL, Dr. Jones will very soon be defending cases in the MDL because the clinic where Dr. Jones practices is identified on the Center for Disease Control website as receiving tainted MPA and is also listed on the FDA's list of customers of NECC. It simply makes no sense, and would be a waste of judicial resources, to grant Dr. Jones' objection on this basis only to have it be mooted once a case is filed against Dr. Jones.

### B. Dr. Jones Fails To Show The Subpoena Is An Undue Burden

Dr. Jones, without any support or evidence, claims that it would be unduly burdensome to reply to the Subpoena and provides a litany of excuses, but no actual facts, to support his claim of undue burden.

First, Dr. Jones simply has not stated how production would be burdensome. He has provided no affidavit detailing the time and expense he estimates it will take to comply with the requests. Dr. Jones simply makes bald, unsupported, and broad allegations that the Subpoena imposes an undue burden; and as a result, he has failed to meet the burden to quash or otherwise modify the subpoena. *See AF Holdings LLC v. Does*, 286 F.R.D. 39 (D.D.C. 2012) (refusing to

quash subpoena when party, despite filing five declarations in support of motion to quash, failed to demonstrate with specificity the administrative burden it would incur in having to comply with a subpoena).

Instead of demonstrating with evidence the undue burden imposed by the Subpoena as required by law, Dr. Jones puts forth a litany of broad, vague, and unfounded legal theories as the basis of his burden argument.

First, Dr. Jones suggests that merely because the requests are broad (because they request "all" documents), the Subpoena imposes an undue burden, but that is clearly not the law. *Federal Communications Com. v. Cohn*, 154 F. Supp. 899, 1957 U.S. Dist. LEXIS 3187 (D.N.Y., September 5, 1957) ("Broadness alone does not make a subpoena invalid. A [subpoena] may require the production of all documents relevant to an inquiry.")

Next, Dr. Jones claims that the Subpoena imposes an undue burden because some of the documents requested by the PSC are easily accessible from other sources (i.e. the FDA, CDC, and state department of health). This is a red herring at best.

This argument ignores the fact that much of the information possessed by these entities related to Dr. Jones was collected from Dr. Jones ***in the first instance***, as the CDC and the FDA required clinics, like the one operated by Dr. Jones, produce this information as part of their investigation into the outbreak of meningitis and other infections caused by tainted NECC products. In other words, Dr. Jones could just as easily provide much of the information possessed by the CDC and the FDA because he already collected it and sent it to the CDC and FDA in the first place. Moreover, Dr. Jones provides no basis for why obtaining this information from the CDC or FDA is in any way more or less burdensome than obtaining them from Dr. Jones himself – after all, these agencies are non-parties to this lawsuit and, unlike Dr. Jones, are

never going to be parties. In any event, there is no federal rule that requires the PSC to obtain information from the least burdened entity and such a rule would be absurd and lead to unnecessary litigation over who is in the best position to provide what discovery. In any event, the Court granted the PSC permission to seek this information from the clinics themselves and Dr. Jones operates such a clinic. There is simply no grounds to quash or modify the Subpoena based on the fallacy that merely because the CDC or the FDA may have possession of this information that Dr. Jones should be relieved from producing it.

The other remaining arguments Dr. Jones alleges support his claim for undue burden are equally unavailing. The PSC is not involved in a fishing expedition for clients[4]; the witness fees have been paid (twice at this point); merely because a request asks for "all" documents, does not mean that Dr. Jones can produce no documents; and merely because the Subpoena uses a defined term instead of naming Dr. Jones specifically in the request is wholly immaterial (and it is patently absurd that Dr. Jones would submit that as a basis for anything let alone fully quashing the Subpoena).

In short, Dr. Jones' unfounded, unsupported, and wholly immaterial claims of undue burden fail as a matter of law. The Court should require Dr. Jones to comply with the Subpoena.

## IV. The PSC Did Not Seek Privileged Information

The PSC is also mystified by Dr. Jones' unfounded accusation that the Subpoena seeks the production of privileged information. As is clear from the June 28 Meet and Confer Letter, the PSC simply stated that if Dr. Jones wished to assert privilege over an otherwise responsive

---

[4] As the Court is well aware, part of the information sought in the Subpoena (patient names and contact information for example) is done in conjunction with the NECC Bankruptcy Creditors' Committee, as that information is highly relevant to providing adequate notice in that proceeding. In fact, the need for this information is accelerated by the Trustee's recent attempts to set a bar date as early as September.

document, obviously he could do so and should produce a privilege log so that the PSC could evaluate any such claim.

### V. The Subpoena Permits a Reasonable Period of Time To Comply and Even if Dr. Jones Needed More Time, the PSC Offered a Reasonable Extension

Dr. Jones's claim that he was not permitted a reasonable time to comply with the subpoena is not in accordance with Rule 45 and, in any event, is a red herring in light of the PSC's offer to extend the time to reply to the Subpoena.

The Subpoena, served on June 17, 2013, requested that Dr. Jones respond by July 8, 2013. This gave Dr. Jones approximately three weeks to respond to the Subpoena, and Dr. Jones claims, without citation to any support that the three week period was insufficient to respond to the Subpoena. Presumably, Dr. Jones' failure to cite to any support for this time period is due to the wealth of case-law supporting that a three week time to respond to a subpoena is sufficient under Rule 45. *See e.g.*, *Lowe v. Vadlamudi*, Case No. 08-10269, 2012 U.S. Dist. LEXIS 127586 (E.D. Mich. Sept. 7, 2012) ("The text of Rule 45 does not support this argument, and the Court finds that twenty-one days is a reasonable time to comply."); *Linke Enterprises of Oregon, Inc. v. Champion Lab. Inc.*, Case No. 90-544, 1991 U.S. Dist. LEXIS 7155 (D. Ore. May 20, 1991) (holding that party is entitled to a reasonable time to comply under Rule 45 and permitting 21 days for compliance); *see also Thomas v. Rockin D Marine Servs., LLC,* Case No. 12-1315, 2013 U.S. Dist. LEXIS 60007 (E.D. La. April 25, 2013) (fourteen days is reasonable time to comply with subpoena); *Mann v. Univ. of Cincinnati*, 114 F.3d 1188 (Table), Nos. 95-3195, 95-3292, [published in full-text format at 1997 U.S. App. LEXIS 12482], (6th Cir. May 27, 1997) (approving magistrate judge's finding that fourteen days' notice is reasonable).

In any event, the entire argument on timeliness is a red herring in light of the PSC's offer to extend the time for compliance if the party needed additional time.  Specifically, Counsel offered the following in the meet and confer process:

> To the extent that you may require additional time to produce responsive documents, we would consider a reasonable extension on this requirement, so long as you agree to produce responsive documents no later than July 22, 2013.

*See* Exhibit A, page 5.

Instead of working with the PSC to obtain a reasonable extension, Dr. Jones rushed to file his objections in a desperate and unfounded attempt to avoid ANY compliance with the Subpoena.  This was not done in good faith and is certainly not grounds to quash, either in part or in whole, the Subpoena.

### VI. The Subpoena Seeks Relevant Information and Does Not Impose an Undue Burden

As already discussed, the Subpoena does not impose an undue burden, but Dr. Jones once again makes another run at a claim that it did.  Dr. Jones makes another unsupported allegation that the Subpoena seeks irrelevant information and is therefore unduly burdensome. "[R]elevancy is broadly construed at the discovery stage of litigation and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action."  *Gagne v. Reddy*, 104 F.R.D. 454, 456 (D. Mass. 1984); *see also In re Texas Bumper Exchange, Inc. v. Veliz,* 333 B.R. 135 (2005) ("A party resisting discovery is swimming against a strong upstream policy current [where] the policy underlying the discovery rules encourages more rather than less discovery, and discourages obstructionist tactics.")

Dr. Jones' claims that his insurance policies, documents related to his corporate structure, and documents related to physicians that prescribed NECC products is irrelevant to claims pending in the MDL. Each of these assertions are simply absurd.

The Court specifically permitted the PSC to subpoena any information it "reasonably determines necessary to the prosecution and resolution of these actions." (Dkt. No. 192 at ¶ 2.) Insurance policies of clinics and doctors that may have liability as a result of prescribing and injecting tainted NECC pharmaceuticals into unsuspecting patients falls squarely within this information as it will enable the PSC, and possibly the Creditors Committee, to assess the reasonableness of any settlement proposals, and will help ensure that any insurance proceeds are not unnecessarily exhausted in litigation costs and such proceeds can be passed onto the victims of this tragedy. Moreover, it is absolutely absurd to claim that insurance policies are irrelevant when the Federal Rules specifically require this information to be produced as part of initial disclosures. Fed. R. Civ. P. 26(a)(1)(iv).  The very fact that the Jones Objection would take such a position is nothing more than further evidence of the unreasonableness in their objections and their continued bad faith in attempting to avoid their obligations under the Subpoena.

With regard to documents related to the corporate structure of Dr. Jones' practice (including bylaws, identity of officers and directors, and individuals with an ownership interest in his practice), this information is clearly relevant to the claims made in this proceeding as it will help the PSC identify any parties that may be liable for injuries suffered by victims, and will allow the PSC to identify potential witnesses that will help the PSC identify how and why Dr. Jones came to be a customer of NECC.[5]  Further, many of the pain clinics at issue in this

---

[5] This is particularly important in states like Tennessee, which have highly technical requirements on bringing claims sounding in medical malpractice and where failure to give pre-suit notice to all entities named in a lawsuit could be fatal to a given plaintiff's claims.  *See e.g.*, T.C.A. § 29-26-121 (requiring that all healthcare facilities named in a lawsuit be given notice of a claim 60 days prior to filing a complaint).

{004663/12496/00294542.DOCX / Ver.3}

litigation often change ownership structure on an ongoing basis, and the PSC should be entitled to investigate ownership interests and the identity of directors and officers to ensure that when suits are brought the correct entities are named.

Dr. Jones' practice is an excellent example of just this. PCA Pain Clinic, the former name under which Dr. Jones operated, is identified on the CDC website as one of the three clinics in Tennessee that provided tainted MPA to its patients. PCA Pain Clinic is no longer the name of Dr. Jones' practice, and in fact, the PSC has attempted to serve a subpoena on PCA Pain Clinic, but its registered agent is no longer reachable.

Finally, with regard to the identity of physicians that prescribed NECC products, given the nature of the pain clinics at issue in this litigation, and the fact that many of them are staffed by a revolving cast of physicians, especially in rural areas, it is simply absurd for Dr. Jones to assert that the PSC should not be given a list of names of all physicians that practiced with Dr. Jones and prescribed NECC products.

Accordingly there is simply no basis in law or fact to quash or modify the Subpoena based on Dr. Jones' unfounded assertions that the Subpoena seeks irrelevant information. *See Bariteau v. Krane*, 206 FRD 129 (W.D. Ky. 2001) (holding that if documents sought by subpoena duces tecum are relevant and are sought for good cause, then subpoena should be enforced unless documents are privileged or subpoena is unreasonable, oppressive, annoying, or embarrassing.)

## **CONCLUSION**

For the foregoing reasons, the Jones Objection should be overruled in its entirety, the Subpoena should not be quashed or modified, and the Court should order Dr. Jones to comply with the Subpoena.

| | |
|---|---|
| Dated:  July 15, 2013 | */s/ J. Gerard Stranch, IV*  <br>J. Gerard Stranch, IV<br>Benjamin A. Gastel<br>BRANSETTER, STRANCH & JENNINGS PLLC<br>227 Second Avenue North<br>Nashville, TN  37201<br>Phone: (615) 254-8801<br>Fax: (615) 255-5419<br>gerards@branstetterlaw.com<br><br>*Tennessee Lead Counsel for PSC*<br><br>Thomas M. Sobol<br>Kristen Johnson Parker<br>HAGENS BERMAN SOBOL SHAPIRO LLP<br>55 Cambridge Parkway, Suite 301<br>Cambridge, MA 02142<br>Phone: (617) 482-3700<br>Fax: (617) 482-3003<br>tom@hbsslaw.com<br>kristenjp@hbsslaw.com<br><br>*Plaintiffs' Lead Counsel*<br><br>Elizabeth J. Cabraser<br>Mark P. Chalos<br>LIEFF CABRASER HEIMANN & BERNSTEIN, LLP<br>275 Battery Street, 29th Floor<br>San Francisco, CA  94111<br>Phone: (415) 956-1000<br>Fax: (415) 956-1008<br>ecabraser@lchb.com<br>mchalos@lchb.com<br><br>*Federal/State Liaison* |

{004663/12496/00294542.DOCX / Ver.3}

Marc E. Lipton
LIPTON LAW
18930 W. 10 Mile Road
Southfield, MI 48075
Phone: (248) 557-1688
Fax: (248) 557-6344
marc@liptonlawcenter.com

Kim Dougherty
JANET, JENNER & SUGGS, LLC
75 Arlington St.
Suite 500
Boston, MA 02116
Phone: (617) 933-1265
kdougherty@myadvocates.com

Patrick T. Fennell
CRANDALL & KATT
366 Elm Avenue, S.W.
Roanoke, Virginia 24016
Phone:  (540) 342-2000
pfennell@crandalllaw.com

Mark Zamora
ZAMORA FIRM
6 Concourse Parkway, 22nd Floor
Atlanta, GA 30328
Phone: (404) 451-7781
Fax: (404) 506-9223
mark@markzamora.com

*Plaintiffs' Steering Committee*

{004663/12496/00294542.DOCX / Ver.3}

**CERTIFICATE OF SERVICE**

I, J. Gerard Stranch, IV, hereby certify that I caused a copy of the foregoing to be filed electronically via the Court's electronic filing system. Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system, and notice of these filings will be sent to these parties by operation of the Court's electronic filing system.

Dated: July15, 2013

*/s/ J. Gerard Stranch, IV*
J. Gerard Stranch, IV, TN Bar # 023045