FOCUS™ Terms [                ]   Search Within [Original Results (1 - 1) ▼]   Advanced...

View Tutorial

View [Full ▼]                              1 of 1
                                        Book Browse
                    Tenn. Code Ann. § 63-1-150  (Copy w/ Cite)                    Pages: **4**
                         *Tenn. Code Ann. § 63-1-150*

TENNESSEE CODE ANNOTATED
© 2013 by The State of Tennessee
All rights reserved

*** Current through the 2012 Regular Session ***

Title 63  Professions Of The Healing Arts
Chapter 1  Division of Health Related Boards
Part 1  General Provisions

Tenn. Code Ann. § 63-1-150  (2013)

**63-1-150. Patient safety and quality improvement.**

**(a)** This section shall not apply to §§ 63-4-118, 63-5-131, 63-9-114, 63-10-402 -- 63-10-405, 63-11-220, 63-12-138 and 68-11-272.

**(b)** It is the policy of this state to encourage the improvement of patient safety and quality and the evaluation of the quality, safety, cost, processes and necessity of healthcare services by healthcare providers and by other entities. This state further recognizes that certain protections must be available to these providers and entities to ensure that they are able to effectively pursue these measures.

**(c)** As used in this section:

  **(1)** "Healthcare organization" means any:

    **(A)** State or local health professional association or society;

    **(B)** Professional assistance program providing, or attempting to provide, intervention, counseling, referral or other assistance to any healthcare provider or family of a healthcare provider directly related to and including the alcohol or drug impairment of a healthcare provider;

    **(C)** Healthcare provider malpractice support group;

    **(D)** Group practice that is engaged in the provision of healthcare services;

    **(E)** Entity engaged in the provision of healthcare provider services or healthcare provider staffing to licensed healthcare entities, including hospitals;

    **(F)** Professional healthcare foundation;

    **(G)** Individual practice association made up of practices the members of which are engaged in the provision of health care;

    **(H)** Health maintenance organization, preferred provider organization, hospital and medical service corporation, or accountable care organization as defined by § 3022 of the federal Patient Protection and Affordable Care Act, P.L. 111-148, as amended;

DEFENDANT'S EXHIBIT 3  PENGAD-Bayonne, N.J.

**(I)** Entity that contracts with a healthcare organization to perform any of the functions of a quality improvement committee;

**(J)** Any patient safety organization listed as such by the federal secretary of health and human services pursuant to § 924 of the Patient Safety and Quality Improvement Act of 2005, P.L. 109-41, as amended; or

**(K)** University medical school or health science center;

**(2)** "Healthcare provider" means any healthcare professional licensed, authorized, certified or regulated under title 63, including, but not limited to, medical resident physicians, interns, and fellows participating in a training program of one (1) of the accredited medical schools or of one (1) of such medical school's affiliated teaching hospitals in this state, or any other clinical staff of a healthcare organization;

**(3)** "Quality improvement committee" or "QIC" means a committee formed or retained by a healthcare organization, an activity of a healthcare organization, or one (1) or more individuals employed by a healthcare organization performing the types of functions listed in subdivisions (c)(3)(A)-(P), the purpose of which, or one (1) of the purposes of which is to evaluate the safety, quality, processes, costs, appropriateness, or necessity of healthcare services by performing functions, including, but not limited to:

**(A)** Evaluation and improvement of the quality of healthcare services rendered;

**(B)** Determination that health services rendered were professionally indicated or were performed in compliance with applicable standards of care;

**(C)** Determination that the cost of health care rendered was considered reasonable;

**(D)** Evaluation of the qualifications, credentials, competence and performance of healthcare providers or action upon matters relating to the discipline of any individual healthcare provider;

**(E)** Reduction of morbidity or mortality;

**(F)** Establishment and enforcement of guidelines designed to keep the cost of health care within reasonable bounds;

**(G)** Research;

**(H)** Evaluation of whether facilities are being properly utilized;

**(I)** Supervision, education, discipline, admission, and the determination of privileges of healthcare providers;

**(J)** Review of professional qualifications or activities of healthcare providers;

**(K)** Evaluation of the quantity, quality and timeliness of healthcare services rendered to patients;

**(L)** Evaluation, review or improvement of methods, procedures or treatments being utilized;

**(M)** Intervention, support or rehabilitative referrals or services to healthcare providers;

**(N)** Evaluation as to whether to report an unusual incident pursuant to § 63-6-221 or § 63-

9-117 or to evaluate and improve the quality of health care rendered by healthcare providers related to the submission of an unusual incident report;

**(O)** Activities to determine the healthcare organization's compliance with state or federal regulations; or

**(P)** Participation in utilization review activities, including participation in review activities within the healthcare organization and activities in conjunction with an insurer or utilization review agent under title 56, chapter 6, part 7; and

**(4)** "Records" means records of interviews and all reports, incident reports, statements, minutes, memoranda, charts, statistics, evaluations, critiques, test results, corrective actions, disciplinary actions and any and all other documentation generated in connection with the activities of a QIC.

**(d) (1)** Records of a QIC and testimony or statements by a healthcare organization's officers or directors, trustees, healthcare providers, administrative staff, employees or other committee members or attendees relating to activities of the QIC shall be confidential and privileged and shall be protected from direct or indirect means of discovery, subpoena or admission into evidence in any judicial or administrative proceeding. Any person who supplies information, testifies or makes statements as part of a QIC may not be required to provide information as to the information, testimony or statements provided to or made before such a committee or opinions formed by such person as a result of committee participation.

**(2)** Any information, documents or records, which are not produced for use by a QIC or which are not produced by persons acting on behalf of a QIC, and are otherwise available from original sources, shall not be construed as immune from discovery or use in any judicial or administrative proceedings merely because such information, documents or records were presented during proceedings of such committee.

**(e)** No healthcare organization's officers, trustees, directors, healthcare providers, administrative staff, employees or other committee members or attendees shall be held liable in any action for damages or other relief arising from the provision of information to a QIC or in any judicial or administrative proceeding, if such information is provided in good faith and without malice and on the basis of facts reasonably known or reasonably believed to exist.

**(f)** A professional assistance program also advocates for healthcare professionals before other QICs, healthcare entities, private and governmental insurance carriers, national or local certification and accreditation bodies, and the state health-related boards of this or any other state. The disclosure of confidential, privileged QIC information to such entities during advocacy or as a report to the health-related boards, or to the affected healthcare provider under review, does not constitute either a waiver of confidentiality or privilege.

**HISTORY:** Acts 2011, ch. 67, § 4.

View Full    1 of 1
Book Browse
**Tenn. Code Ann. § 63-1-150**  (Copy w/ Cite)    Pages: 4

About LexisNexis | Privacy Policy | Terms & Conditions | Contact Us
Copyright © 2013 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

FOCUS™ Terms [          ] Search Within [Original Results (1 - 1) ▼] Advanced...

View Tutorial

View [Full ▼]                                                                 1 of 1
Book Browse

**Tenn. Code Ann. § 68-11-272**  (Copy w/ Cite)                               Pages: **4**
*Tenn. Code Ann. § 68-11-272*

TENNESSEE CODE ANNOTATED
© 2013 by The State of Tennessee
All rights reserved

\*\*\* Current through the 2012 Regular Session \*\*\*

Title 68  Health, Safety and Environmental Protection
Health
Chapter 11  Health Facilities and Resources
Part 2  Regulation of Health and Related Facilities

Tenn. Code Ann. § 68-11-272  (2013)

**68-11-272. Patient safety and quality improvement.**

**(a)** It is the policy of this state to encourage the improvement of patient safety, the quality of patient care and the evaluation of the quality, safety, cost, processes and necessity of healthcare services by hospitals, healthcare facilities and healthcare providers. Tennessee further recognizes that certain protections must be available to these entities to ensure that they are able to effectively pursue these measures.

**(b)** As used in this section:

**(1)** "Healthcare organization" means any:

**(A)** Healthcare facility licensed or regulated under this title and any related system;

**(B)** Hospital licensed under this title and any related hospital system;

**(C)** Hospital licensed under title 33 and any related hospital system;

**(D)** Entity owning, owned by, affiliated with or providing ancillary or allied health services to, or on behalf of, a hospital, hospital system, or healthcare facility licensed or regulated under this title;

**(E)** Entity that contracts with a healthcare organization to perform any of the functions of a quality improvement committee;

**(F)** Entity that maintains a patient safety evaluation system in compliance with the Patient Safety and Quality Improvement Act of 2005, P.L. 109-41, as amended, for reporting to a patient safety organization listed as such by the federal secretary of health and human services pursuant to § 924 of the Patient Safety and Quality Improvement Act of 2005, P.L. 109-41, as amended;

**(G)** Professional assistance program providing, or attempting to provide, intervention, counseling, referral or other assistance to any healthcare provider or family of a healthcare provider directly related to and including the alcohol or drug impairment of a healthcare provider;

**(H)** Professional healthcare foundation;

**(I)** Health maintenance organization, preferred provider organization, hospital and medical service corporation, or accountable care organization as defined by § 3022 of the federal Patient Protection and Affordable Care Act, P.L. 111-148, as amended; or

**(J)** University medical school or health science center;

**(2)** "Healthcare provider" means any healthcare professional licensed, authorized, certified or regulated under title 63 or this title, including, but not limited to, medical resident physicians, interns, and fellows participating in a training program of one (1) of the accredited medical schools or of one (1) of such medical school's affiliated teaching hospitals in this state, or any other clinical staff of a healthcare organization;

**(3)** "Hospital system" means two (2) or more hospitals that are subject to the control and direction of one (1) common owner, or an entity under a management contract, responsible for the operational decisions of the entire system or that have integrated administrative functions and medical staff that report to one (1) governing body as the result of a formal legal or contractual obligation;

**(4)** "Quality improvement committee" or "QIC" means a committee formed or retained by a healthcare organization, an activity of a healthcare organization, or one (1) or more individuals employed by a healthcare organization performing the types of functions listed in subdivisions (4)(A)-(P), the purpose of which, or one (1) of the purposes of which is to evaluate the safety, quality, processes, costs, appropriateness or necessity of healthcare services by performing functions including, but not limited to:

**(A)** Evaluation and improvement of the quality of healthcare services rendered;

**(B)** Determination that health services rendered were professionally indicated or were performed in compliance with the applicable standards of care;

**(C)** Determination that the cost of health care rendered was reasonable;

**(D)** Evaluation of the qualifications, credentials, competence and performance of healthcare providers or actions upon matters relating to the discipline of any individual healthcare provider;

**(E)** Reduction of morbidity or mortality;

**(F)** Establishment and enforcement of guidelines designed to keep the cost of health care within reasonable bounds;

**(G)** Research;

**(H)** Evaluation of whether facilities are being properly utilized;

**(I)** Supervision, education, discipline, admission, and the determination of privileges of healthcare providers;

**(J)** Review of professional qualifications or activities of healthcare providers;

**(K)** Evaluation of the quantity, quality and timeliness of healthcare services rendered to patients;

**(L)** Evaluation, review or improvement of methods, procedures or treatments being utilized;

   **(M)** Participation in utilization review activities, including participation in review activities within the facility or hospital system and activities in conjunction with an insurer or utilization review agent under title 56, chapter 6, part 7;

   **(N)** The evaluation of reports made pursuant to § 68-11-211 and any internal reports related thereto or in the course of a healthcare organization's patient safety and risk management activities;

   **(O)** Activities to determine the healthcare organization's compliance with state or federal regulations;

   **(P)** Participation in patient safety activities as defined at § 921 of the Patient Safety and Quality Improvement Act of 2005, P.L. 109-41, as amended;

   **(5)** "Records" means records of interviews and all reports, incident reports, statements, minutes, memoranda, charts, statistics, evaluations, critiques, test results, corrective actions, disciplinary actions, and any and all other documentation generated by or in connection with activities of a QIC and any patient safety work product as defined at § 921 of the Patient Safety and Quality Improvement Act of 2005, P.L. 109-41, as amended.

**(c) (1)** Records of a QIC and testimony or statements by a healthcare organization's officers, directors, trustees, healthcare providers, administrative staff, employees or other committee members or attendees relating to activities of the QIC shall be confidential and privileged and shall be protected from direct or indirect means of discovery, subpoena or admission into evidence in any judicial or administrative proceeding. Any person who supplies information, testifies or makes statements as part of a QIC may not be required to provide information as to the information, testimony or statements provided to or made before such a committee or opinions formed by such person as a result of committee participation.

**(2)** Any information, documents or records, which are not produced for use by a QIC or which are not produced by persons acting on behalf of a QIC, and are otherwise available from original sources, shall not be construed as immune from discovery or use in any judicial or administrative proceeding merely because such information, documents or records were presented during proceedings of such committee.

**(d)** No healthcare organization's officers, director, trustee, healthcare providers, administrative staff, employee or other committee members or attendees shall be held liable in any action for damages or other relief arising from the provision of information to a QIC or in any judicial or administrative proceeding, if such information is provided in good faith and without malice and on the basis of facts reasonably known or reasonably believed to exist.

**(e)** Nothing in this section shall conflict with any federal protection of records provided under the federal Health Care Quality Improvement Act, compiled in 42 U.S.C. § 11101 et seq., or the federal Patient Safety Act.

**HISTORY:** Acts 2011, ch. 67, § 3.

View | Full |

1 of 1
Book Browse
**Tenn. Code Ann. § 68-11-272** (Copy w/ Cite)                  Pages: 4

In

About LexisNexis | Privacy Policy | Terms & Conditions | Contact Us
Copyright © 2013 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.