**Summary of Dr. Jones' Objections and Grounds to Quash PSC's Subpoena**

Subject to and without waiving the objections stated in the Motion, and for the Court's convenience, Dr. Jones includes his specific objections to each paragraph of PSC's subpoena.

### A. Dr. Jones' Objections to Exhibit A of the Subpoena

¶¶ 1-10   These paragraphs seek testimony regarding Dr. Jones' production and storage of documents.

- The documents, and therefore their storage, are irrelevant to the resolution of the cases consolidated in the MDL. To Dr. Jones' knowledge, storage of his documents related to NECC is not at issue in any of the MDL cases.

¶ 11   This request seeks testimony regarding the procurement of methylprednisolone acetate ("MPA") and any other injectable steroid from NECC from October 6, 2010 – October 6, 2012, including (1) dates of shipment and/or receipt, (2) quantities of shipment, (3) lot numbers and other identifying labels, (4) sizes of containers of steroid preparation, (5) the cost Dr. Jones paid for the steroid preparation, (6) applicable warranties, (7) shelf life, (8) expiration dates, (9) requirements and instructions for shipment and/or storage, and (10) the specific identity of the preparation being purchased. The request also asks for (11) account information, (12) prescription order forms, and (13) NECC charges for MPA (before and (14) after any discounts applied).

- The request seeks information regarding fourteen (14) broad and burdensome topics, much of which is ascertainable from NECC, an actual party to the MDL, or the CDC, FDA, or Tennessee Department of Health.[1]

- It is irrelevant to the resolution of the cases consolidated in the MDL for PSC to request the PHI of patients other than patients in the MDL that received treatment from Dr. Jones.

---

[1] *See Stratienko v. Chattanooga-Hamilton County Hospital Authority*, 2008 WL 4442492 at *5-6 (E.D. Tenn. Sept. 25, 2008) (unpublished order) (applying Fed. R. Civ. P. 26).

DEFENDANT'S EXHIBIT 2

- Collecting the information is costly, as stated in the affidavit attached as Exhibit 3.

- The request exceeds the January 2011 - November 2012 timeframe set forth in the QPO.

¶ 12   This request seeks testimony regarding procurement of MPA, or its generic or name brand equivalent from any producer, compounding facility, or manufacturer other than NECC from October 6, 2010 – October 6, 2012, including dates of shipment and/or receipt, quantities of shipment, lot numbers and other identifying labels, sizes of containers of the product, the cost Dr. Jones paid for the product, applicable warranties, shelf life, expiration dates, requirements and instructions for shipment and/or storage, and the specific identity of the preparation being purchased.

- Which entities Dr. Jones, a non-party, purchased MPA from prior to purchasing from NECC is irrelevant to the resolution of the cases consolidated in the MDL. Certainly, the price Dr. Jones paid for MPA from other suppliers before purchasing MPA from NECC is irrelevant to whether NECC negligently or otherwise provided a dangerous or defective product. This is simply "fishing."

- Collecting the information is costly, as stated in the affidavit attached hereto as Exhibit 3.

- The request exceeds the January 2011 - November 2012 timeframe set forth in the QPO.

¶ 13   This request seeks testimony regarding procurement of NECC cardioplegic solution from October 6, 2010 – October 6, 2012, including dates of shipment and/or receipt, quantities of shipment, lot numbers and other identifying labels, sizes of containers of cardioplegic solution, the cost Dr. Jones paid for the cardioplegic solution, applicable warranties, shelf life, expiration dates, and requirements and instructions for shipment and/or storage.

- Dr. Jones is not aware of any MDL lawsuits alleging injury from contaminated cardioplegic solution. Therefore, the request is irrelevant to the resolution of the cases consolidated in the MDL.

- The request exceeds the January 2011 - November 2012 timeframe set forth in the QPO.

¶ 14   This request seeks testimony regarding procurement of NECC ophthalmic solution from October 6, 2010 – October 6, 2012, including dates of shipment and/or receipt, quantities of shipment, lot numbers and other identifying labels, sizes of containers of ophthalmic solution, the cost Dr. Jones paid for the ophthalmic solution, applicable warranties, shelf life, expiration dates, and requirements and instructions for shipment and/or storage.

- Dr. Jones is not aware of any MDL lawsuits alleging injury from ophthalmic solution. Therefore, the request is irrelevant to the resolution of the cases consolidated in the MDL.

- The request exceeds the January 2011 - November 2012 timeframe set forth in the QPO.

¶ 15   This request seeks testimony regarding the procurement of NECC preservative-free saline solution from October 6, 2010 – October 6, 2012, including dates of shipment and/or receipt, quantities of shipment, lot numbers and other identifying labels, sizes of containers of preservative-free saline solution, the cost Dr. Jones paid for the preservative-free saline solution, applicable warranties, shelf life, expiration dates, and requirements and instructions for shipment and/or storage.

- Dr. Jones is not aware of any MDL lawsuits alleging injury from preservative-free saline solution. Therefore, the request is irrelevant to the resolution of the cases consolidated in the MDL.

- The request exceeds the January 2011 - November 2012 timeframe set forth in the QPO.

¶ 16   This request seeks testimony regarding the procurement of MPA and any other product from NECC from October 6, 2010 – October 6, 2012, including (1) dates of shipment and/or receipt, (2) quantities of shipment, (3) lot numbers and other identifying labels, (4) sizes of containers of the product, (5) the cost Dr. Jones paid for the product, (6) applicable warranties, (7) shelf life, (8) expiration dates, (9) requirements and instructions for shipment and/or storage, and (10) the specific identity of the preparation being purchased.

- Dr. Jones is not aware of any MDL lawsuits alleging injury from any NECC products other than MPA. Therefore, to the extent the request seeks testimony

regarding products other than MPA, the request is irrelevant to the resolution of the cases consolidated in the MDL.

- The request exceeds the January 2011 - November 2012 timeframe set forth in the QPO.

¶ 17   This request seeks testimony regarding the **identification of each and every patient that was administered an NECC product** from October 6, 2010 – October 6, 2012, including patient name, address, date of birth and identification of the product administered.

- The request is very burdensome in time and cost, as stated in the affidavit attached hereto as Exhibit 3.

- Dr. Jones is not aware of any MDL lawsuits alleging injury from any NECC products other than MPA. Therefore, the request is irrelevant to the resolution of the cases consolidated in the MDL.

- It is irrelevant to the resolution of the cases consolidated in the MDL for PSC to request information for patients other than patients in the MDL that received treatment from Dr. Jones. This is obvious "fishing."

- The request exceeds the January 2011 – November 2012 timeframe set forth in the QPO.

¶ 18   This request seeks testimony regarding **the name, address, phone number, and social security number of any patient that received any NECC product from 2011-2012** and sufficient documents to identify the specific NECC product that the patient received.

- The request is very burdensome in time and cost, as stated in the affidavit attached hereto as Exhibit 3.

- Dr. Jones is not aware of any MDL lawsuits alleging injury from any NECC products other than MPA. Therefore, to the extent the request seeks testimony regarding products other than MPA, the request is irrelevant to the resolution of the cases consolidated in the MDL. To the same extent, this is obvious "fishing."

- It is irrelevant to the resolution of the cases consolidated in the MDL for PSC to request the name,

4

                          address, phone number, and social security number for patients other than patients in the MDL that received treatment from Dr. Jones.

                          • The request exceeds the January 2011 – November 2012 timeframe set forth in the QPO.

¶ 19    This request seeks testimony regarding the communications between Dr. Jones and NECC from October 6, 2010 – October 6, 2012.

                          • Dr. Jones is not a party to any lawsuits consolidated in the MDL. Therefore, Dr. Jones' communications to NECC are irrelevant to the resolution of the cases consolidated in the MDL. The fact that discovery of NECC is stayed should not permit PSC to seek discovery of information held by NECC, a <u>party</u> to the MDL, from, and at the burden and expense of, out-of-state non-parties.[2]

¶ 20    This request seeks testimony regarding information obtained by Dr. Jones regarding NECC, including NECC's qualifications, certifications or accreditations, or lack thereof, regulatory compliance, lack of regulatory compliance, operations, enforcement actions, suitability for conducting its business, legal actions and/or warnings, brochures, policies and procedures, ordering and delivery information, company overviews, standard operating procedures, executive summaries, attachments A, B or others (relating to HIPAA, NECC policies and procedures, or other information).

                          • The request is incoherent. It is an undue burden for Dr. Jones to attempt to decipher what PSC means when it requests testimony regarding "attachments A, B or others (relating to HIPAA, NECC policies and procedures, or other information)." PSC did not attach an Exhibit B or an "other." Furthermore, the parenthetical phrase is nonsensical.

                          • The request seeks information protected by the attorney-client privilege and the work-product doctrine.[3]

---

[2] *Id.*

[3] PSC has made numerous requests that would potentially require counsel to disclose memoranda prepared by counsel in preparation for fungal meningitis litigation and countless communications between counsel and Dr. Jones related to the fungal meningitis outbreak. These requests are improper and should be stricken pursuant to Federal Rule of Civil Procedure 45(c)(3)(A)(iii).

- The request seeks information that is more appropriately requested from the FDA, CDC, or respective state boards of pharmacy.[4]

- The request seeks testimony that is more appropriately requested of NECC, an actual party to the MDL.[5]

- Dr. Jones is not a party to any lawsuit in the MDL. Therefore, Dr. Jones' knowledge of NECC's qualifications is irrelevant to the resolution of the cases consolidated in the MDL. This is fishing for a basis to assert claims against Dr. Jones.

¶ 21   This request seeks testimony regarding communications received by Dr. Jones concerning the fitness of any products purchased or obtained from NECC from October 6, 2010 – October 6, 2012, including but not limited to any microbiology reports or certificates of analysis.

- The request seeks information that is more appropriately requested from ARL Biopharma or NECC, actual parties to the MDL.[6]

- The request also seeks information that is more appropriately requested from the CDC, FDA, or Tennessee Department of Health.[7]

- Dr. Jones is not aware of any MDL lawsuits alleging injury from any NECC products other than MPA. Therefore, to the extent the request seeks testimony regarding products other than MPA, the request is irrelevant to the resolution of the cases consolidated in the MDL.

¶ 22   This request seeks testimony regarding information obtained by Dr. Jones from the CDC, FDA, and/or federal, state or local regulatory agency concerning the fitness of any products manufactured, compounded or produced by NECC.

- The request seeks information that is more appropriately requested from the CDC, FDA, or Tennessee Department of Health.[8]

---

[4] See *Stratienko*, 2008 WL 4442492 at *5-6 (applying Fed. R. Civ. P. 26).
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.*

6

- Dr. Jones is not aware of any MDL lawsuits alleging injury from any NECC products other than MPA. Therefore, to the extent the request seeks testimony regarding products other than MPA, the request is irrelevant to the resolution of the cases consolidated in the MDL. This is an obvious attempt to "fish" for information to form the basis of a claim against Dr. Jones.

¶ 23   This request seeks testimony regarding marketing information from NECC or any sales company selling or attempting to sell products on behalf of NECC.

- The request seeks information that is more appropriately requested from NECC or Medical Sales Management, Inc., actual parties to the MDL.[9]

¶ 24   This request seeks testimony regarding agreements, contracts, and/or warranties between Dr. Jones and NECC or any sales company selling or attempting to sell products on behalf of NECC.

- The request seeks information that is more appropriately requested from NECC or Medical Sales Management, Inc., actual parties to the MDL.[10]

¶ 25   This request seeks testimony regarding any recall notices received by Dr. Jones pertaining to products produced by NECC, including the date, time, manner of receipt of the recall notices, the specific person or persons within Dr. Jones' practice that received the notice, and the substance of the notice.

- Dr. Jones is not a party to any lawsuit in the MDL. Therefore, the date, time, manner, and specific person within Dr. Jones' practice that received the notice is irrelevant to the resolution of the cases consolidated in the MDL.

- The request seeks information that is more appropriately requested from NECC, an actual party to the MDL, or the FDA, CDC, or Tennessee Department of Health.[11] The recall process has been widely

---

[9] *Id.*
[10] *Id.*
[11] *Id.*

7

>   reported, and it is very doubtful PSC does not have copies of the recall notices issued by NECC.

¶ 26   This request seeks testimony regarding any investigations or inquiry Dr. Jones performed related to NECC's compliance with UPS 797.

- Dr. Jones does not know what UPS 797 is, and it is an undue burden for Dr. Jones to decipher PSC's obscure request. Presumably, this is a typographical error.

- To the extent PSC requests Dr. Jones' investigations of NECC's compliance with USP 797, Dr. Jones raises the following objections:

    o The request seeks information protected by the attorney-client privilege and the work-product doctrine.[12]

    o Dr. Jones is not a party to any lawsuit in the MDL. Therefore, Dr. Jones' knowledge of NECC's compliance with USP 797 is irrelevant to the resolution of the cases consolidated in the MDL. This is obvious "fishing" for a basis to claim liability against Dr. Jones.

¶ 27   This request seeks testimony regarding Dr. Jones' and/or NECC's compliance with Tenn. Comp. R. & Regs. R. § 1140-01-.08.

- Tenn. Comp. R. & Regs. R. § 1140-01-.08 deals with applications to the Tennessee Board of Pharmacy for pharmacy practice site, manufacturer, and wholesaler licenses.

- Dr. Jones is not regulated by the Tennessee Board of Pharmacy, and Tenn. Comp. R. & Regs. R. § 1140-01-.08 is irrelevant to Dr. Jones.

- NECC's compliance with Tenn. Comp. R. & Regs. R. § 1140-01-.08 is more appropriately requested from NECC, an actual party to the MDL, or the Tennessee

---

[12] PSC has made numerous requests that would potentially require counsel to disclose memoranda prepared by counsel in preparation for fungal meningitis litigation and countless communications between counsel and Dr. Jones related to the fungal meningitis outbreak. These requests are improper and should be stricken pursuant to Federal Rule of Civil Procedure 45(c)(3)(A)(iii).

8

|  |  |
|---|---|
|  | Board of Pharmacy.[13] Dr. Jones should not be burdened with providing documents or a witness to support or evaluate NECC's compliance with a standard that does not apply to Dr. Jones. |
| ¶ 28 | This request seeks testimony regarding Dr. Jones' compliance with Tenn. Comp. R. & Regs. R. § 1140-01-.04. |

- Tenn. Comp. R. & Regs. R. § 1140-01-.04 deals with applying for a pharmacy internship license.

- Dr. Jones is not regulated by the Tennessee Board of Pharmacy, and Tenn. Comp. R. & Regs. R. § 1140-01-.04 is irrelevant to Dr. Jones.

- NECC's compliance with Tenn. Comp. R. & Regs. R. § 1140-01-.04 is more appropriately requested from NECC, an actual party to the MDL, or the Tennessee Board of Pharmacy.[14] Dr. Jones should not be burdened with providing documents or a witness to support or evaluate NECC's compliance with a standard that does not apply to Dr. Jones.

¶ 29   This request seeks testimony regarding Dr. Jones' compliance with Tenn. Comp. R. & Regs. R. § 1140-01-.05 for all NECC products dispensed by Dr. Jones.

- Tenn. Comp. R. & Regs. R. § 1140-01-.05 deals with pharmacy licensing examinations.

- Dr. Jones is not regulated by the Tennessee Board of Pharmacy, and Tenn. Comp. R. & Regs. R. § 1140-01-.05 is irrelevant to Dr. Jones. This request has no relevance to the cases consolidated in the MDL and is just a "fishing expedition" for a basis to assert a claim against Dr. Jones.

¶ 30   This request seeks testimony regarding policies of insurance, including professional liability, malpractice, products liability, general liability, and comprehensive or umbrella policies, issued to Dr. Jones and/or his practice's principal officers and directors and/or any physician working for or on behalf of Dr. Jones' practice, for the policy periods of 2011 and 2012.

---

[13] See *Stratienko*, 2008 WL 4442492 at *5-6 (applying Fed. R. Civ. P. 26).
[14] *Id*.

9

- Insurance policies of non-parties are irrelevant as stated in *Stratienko*, 2008 WL 4442492 at *5-6 (physician's medical malpractice policy is private and irrelevant); *See also Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001).

- Dr. Jones' practice's physicians are not named on the FDA list. PSC lacks the authority to request their insurance policies.

- Dr. Jones is not a party to any lawsuit in the MDL. Therefore, Dr. Jones' insurance policies are irrelevant to the resolution of the cases consolidated in the MDL.

- Tennessee law protects the policy information of <u>parties</u> in lawsuits.[15] The insurance limits of Dr. Jones and his practice's officers have no relevance to the claims of MDL plaintiffs against NECC and its affiliated entities. This is a transparent attempt to discover insurance information to assist in the mediation process, hoping non-party health care providers like Dr. Jones will contribute to a settlement pool. Dr. Jones is not a party to any suit in the MDL, and his insurance policy information is irrelevant.

¶ 31   This request seeks testimony regarding the ownership and management of Dr. Jones' practice.

- Dr. Jones is not a party to any lawsuit in the MDL. Therefore, Dr. Jones' practice's ownership and management are irrelevant to the resolution of the cases consolidated in the MDL.

¶ 32   This request seeks testimony regarding the identity of physicians and/or pharmacists that prescribed and/or dispensed NECC products to patients.

- This request is vague. It has no time period and is not limited in scope at all. As written, it seeks information regarding any physician anywhere who gave MPA or any other NECC product.

- Dr. Jones is not aware of any MDL lawsuits alleging injury from any NECC products other than MPA.

---

[15] *Thomas v. Oldfield*, 279 S.W.3d 259, 260 (Tenn. 2009).

10

                Therefore, the identity of "physicians and/or pharmacists" that administered NECC products other than MPA is irrelevant to the resolution of the cases consolidated in the MDL.

- It is irrelevant to the resolution of the cases consolidated in the MDL for PSC to request information for patients other than patients in the MDL that received treatment from Dr. Jones.

¶ 33    This request seeks testimony regarding any contracts and/or agreements between Dr. Jones and/or PCA Pain Center and/or Comprehensive Pain Specialists.

- Dr. Jones is not a party to any lawsuit in the MDL. Therefore, Dr. Jones' contracts and/or agreements with PCA Pain Center and/or Comprehensive Pain Specialists are irrelevant to the resolution of the cases consolidated in the MDL. This is an obvious attempt to "fish" into Dr. Jones' corporate relationships. It is improper.

- The request is overbroad and has no time limitation.

¶ 34    This request seeks testimony regarding the identity of any persons or entities that Dr. Jones believes may be liable, either through principles of comparative fault, joint tortfeasor, or any other related legal principle, for any injury suffered by any of Dr. Jones' patients as a result of exposure to NECC products.

- Dr. Jones is not a party to any lawsuit in the MDL. Therefore, Dr. Jones' opinions regarding allegations of comparative fault are irrelevant to the resolution of the cases consolidated in the MDL.

- It is irrelevant to the resolution of the cases consolidated in the MDL for PSC to request opinions regarding patients other than patients in the MDL that received treatment from Dr. Jones.

¶ 35    This request seeks testimony regarding the identity of any expert, outside consultant, physician, and/or pharmacists that reviewed or approved Dr. Jones' use of NECC products.

11

- Dr. Jones is not a party to any lawsuit in the MDL. Therefore, Dr. Jones' peer review of purchasing decisions related to NECC is irrelevant to the resolution of the cases consolidated in the MDL.

- The request seeks information protected by attorney-client privilege and the work-product doctrine.[16]

- The request seeks information that is privileged pursuant to the Tennessee Patient Safety and Quality Improvement Act of 2011, codified at Tenn. Code Ann. § 63-1-150 and § 68-11-272.[17]

---

[16] PSC has made numerous requests that would potentially require counsel to disclose memoranda prepared by counsel in preparation for fungal meningitis litigation and countless communications between counsel and Dr. Jones related to the fungal meningitis outbreak. These requests are improper and should be stricken pursuant to Federal Rule of Civil Procedure 45(c)(3)(A)(iii).

[17] PSC has made numerous requests that seek the disclosure of Dr. Jones' peer review activities. These requests seek information that is privileged by the TPSQIA, which is applicable to Dr. Jones' foreign-district non-party deposition. *See Palmer v. Fisher*, 228 F.2d 603, 608-09 (7th Cir. 1955); Additionally, the only MDL plaintiffs with discovery requests relevant to Dr. Jones are MDL plaintiffs who received treatment from Dr. Jones. The lawsuits filed against NECC by MDL plaintiffs who received treatment from Dr. Jones are <u>based on Tennessee law</u>. Federal Rule of Evidence 501 states, in relevant part, "[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."

In addition, TPSQIA is very broad and protects, from discovery and use at trial, documents and communications related to a health care provider's:
    (A) Evaluation and improvement of the quality of healthcare services rendered;
    (B) Determination that health services rendered were professionally indicated or were performed in compliance with applicable standards of care;
    (C) Determination that the cost of health care rendered was considered reasonable;
    (D) Evaluation of the qualifications, credentials, competence and performance of healthcare providers or action upon matters relating to the discipline of any individual healthcare provider;
    (E) Reduction of morbidity or mortality;
    (F) Establishment and enforcement of guidelines designed to keep the cost of health care within reasonable bounds;
    (G) Research;
    (H) Evaluation of whether facilities are being properly utilized;
    (I) Supervision, education, discipline, admission, and the determination of privileges of healthcare providers;
    (J) Review of professional qualifications or activities of healthcare providers;
    (K) Evaluation of the quantity, quality and timeliness of healthcare services rendered to patients;
    (L) Evaluation, review or improvement of methods, procedures or treatments being utilized;
    (M) Intervention, support or rehabilitative referrals or services to healthcare providers;
    (N) Evaluation as to whether to report an unusual incident pursuant to § 63-6-221 or § 63-9-117 or to evaluate and improve the quality of health care rendered by healthcare providers related to the submission of an unusual incident report;
    (O) Activities to determine the healthcare organization's compliance with state or federal regulations; or

¶ 36   This request seeks testimony regarding Dr. Jones' decision to use NECC products.

- Dr. Jones is not a party to any lawsuit in the MDL. Therefore, Dr. Jones' purchasing decisions related to NECC are irrelevant to the resolution of the cases consolidated in the MDL.

- The request seeks information that is privileged pursuant to the Tennessee Patient Safety and Quality Improvement Act of 2011, codified at Tenn. Code Ann. § 63-1-150 and § 68-11-272.[18]

- This is a transparent attempt to seek information to support potential claims against Dr. Jones. Dr. Jones is <u>not</u> a party to any MDL claim.

¶ 37   This request seeks testimony regarding the identity of individuals who were responsible for the purchase, receipt, storage, and maintenance of NECC products from October 6, 2010 – October 6, 2012.

- Dr. Jones is not aware of any MDL lawsuits alleging injury from any NECC products other than MPA. Therefore, to the extent the request seeks testimony regarding products other than MPA, the request is irrelevant to the resolution of the cases consolidated in the MDL.

---

(P) Participation in utilization review activities, including participation in review activities within the healthcare organization and activities in conjunction with an insurer or utilization review agent. . .

[18] *See* footnote 17.

13

## B. Dr. Jones' Objections to Exhibit B of the Subpoena[19]

¶¶ 1-15   These requests seek the production of documents and/or electronically stored information ("ESI") regarding the same information that PSC requested in ¶¶ 11-25 of Exhibit A to PSC's subpoena.

- Dr. Jones makes the same objections to ¶¶ 1-15 of Exhibit B to PSC's subpoena that Dr. Jones made to ¶¶ 11-25 of Exhibit A to PSC's subpoena.

- Dr. Jones also objects on the ground that collecting the responsive documents is time consuming and costly, as stated in the affidavit attached hereto as Exhibit 3.

¶ 16   This request seeks the production of documents and ESI related to Dr. Jones' communications made or issued in response to any recall notice regarding NECC products including the date, time and manner of transmission of the communication, the person(s) to which the communication was directed, and the person who made or delivered the communication.

- The request exceeds the January 2011 - November 2012 timeframe set forth in the QPO.

- The request seeks information that is more appropriately requested from NECC, an actual party to the MDL, or the CDC, FDA, or Tennessee Department of Health.[20]

- It is irrelevant to the resolution of the cases consolidated in the MDL for PSC to request the PHI of patients other than patients in the MDL that received treatment from Dr. Jones.

- Dr. Jones is not a party to any lawsuit in the MDL, and there is no allegation, either formal or informal, that Dr. Jones did not adequately notify his patients of the recall. This is an obvious "fishing expedition" seeking documents in an attempt to assert liability against Dr. Jones.

---

[19] In both the June 17 and July 8 subpoenas, PSC did not attach an Exhibit B. However, the Notice of Deposition references an Exhibit B. Subject to and without waiving his objection to PSC's failure to include Exhibit B, to the extent that PSC appears to be copying and pasting Exhibit B, Dr. Jones has the following objections.

[20] See *Stratienko*, 2008 WL 4442492 at *5-6 (applying Fed. R. Civ. P. 26).

- Collecting the information is overly burdensome in time and cost, as stated in the affidavit attached hereto as Exhibit 3.

- The request seeks information protected by the attorney-client privilege and the work-product doctrine.[21]

- PSC presumably represents patients that received communications responsive to this request. It is an undue burden for Dr. Jones to produce duplicative documents.

¶¶ 17-21   These requests seek the production of documents and/or ESI regarding the same information requested in ¶¶ 26-30 of Exhibit A to PSC's subpoena.

- Dr. Jones makes the same objections to ¶¶ 17-21 of Exhibit B to PSC's subpoena that Dr. Jones made to ¶¶ 26-30 of Exhibit A to PSC's subpoena.

- Dr. Jones also objects on the ground that collecting the responsive documents is burdensome in time and cost, as stated in the affidavit attached hereto as Exhibit 3.

¶ 22   This request seeks Dr. Jones' practice's Articles of Incorporation and/or bylaws for 2011 and 2012.

- Dr. Jones is not a party to any lawsuit in the MDL. Therefore, Dr. Jones' practice's Articles of Incorporation and/or bylaws are irrelevant to the resolution of the cases consolidated in the MDL.

¶ 23   This request seeks the production of documents and/or ESI with the names, addresses, and positions within Dr. Jones' practice of all officers and directors during 2011 and 2012.

- Dr. Jones is not a party to any lawsuit in the MDL. Therefore, the identification of Dr. Jones' practice's officers and directors is irrelevant to the resolution of the cases consolidated in the MDL.

---

[21] PSC has made numerous requests that would potentially require counsel to disclose memoranda prepared by counsel in preparation for fungal meningitis litigation and countless communications between counsel and Dr. Jones related to the fungal meningitis outbreak. These requests are improper and should be stricken pursuant to Federal Rule of Civil Procedure 45(c)(3)(A)(iii).

15

¶ 24   This request seeks the production of any and all documents reflecting entities and individuals with an ownership interest in Dr. Jones' practice.

- Dr. Jones is not a party to any lawsuit in the MDL. Therefore, the ownership of Dr. Jones' practice is irrelevant to the resolution of the cases consolidated in the MDL.

- The request is overbroad and has no time limitation.

¶ 25   This request seeks the production of any and all organizational charts and/or documents listing directors, officers, employees, and/or agents of Dr. Jones' practice, showing the names and positions of the directors, officers, employees, and/or agents and their relationship or rank within Dr. Jones' practice.

- Dr. Jones is not a party to any lawsuit in the MDL. Therefore, Dr. Jones' practice's organizational charts and other documents identifying Dr. Jones' practice's directors, officers, and employees are irrelevant to the resolution of the cases consolidated in the MDL.

- The request is overbroad and has no time limitation.

¶ 26   This request seeks the production of any and all documents showing the names of physicians and/or pharmacists that prescribed and/or dispensed NECC products.

- This request is vague. It has no time period and is not limited in scope at all. As written, it seeks information regarding any physician anywhere who gave MPA or any other NECC product.

- Dr. Jones is not aware of any MDL lawsuits alleging injury from any NECC products other than MPA. Therefore, the identity of "physicians and/or pharmacists" that administered NECC products other than MPA irrelevant to the resolution of the cases consolidated in the MDL.

- It is irrelevant to the resolution of the cases consolidated in the MDL for PSC to request information for patients other than patients in the MDL that received treatment from Dr. Jones.