UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | ) ) ) | |
| ——————————————— | ) ) | MDL No. 2419 Dkt. No 1:13-md-2419 (FDS) |
| THIS DOCUMENT RELATES TO: | ) ) | |
| All Actions | ) ) | |
| ——————————————— | ) | |

**THE NEUROSURGICAL GROUP OF CHATTANOOGA D/B/A CHATTANOOGA NEUROSURGERY AND SPINE'S MOTION AND MEMORANDUM IN SUPPORT OF ITS MOTION TO QUASH AND OBJECTIONS TO PLAINTIFFS' STEERING COMMITTEE'S SUBPOENA**

Comes the Neurosurgical Group of Chattanooga d/b/a Chattanooga Neurosurgery and Spine ("CNS"), and submits its Motion and Memorandum in Support of its Motion to Quash and Objections to Plaintiffs' Steering Committee's ("PSC") subpoena *ad testificandum*,[1] which also requests the production of documents and things.[2]

PSC's subpoena should be quashed or modified pursuant to Federal Rules of Civil Procedure 45 and 26. In the alternative, the Court should issue a protective order pursuant to Federal Rule of Civil Procedure 26(c).

The subpoena has the following deficiencies:

- The subpoena is not issued from the proper court in violation of Federal Rule of Civil Procedure 45(a)(2)(B)-(C).

- The notice of subpoena was not served on each party in violation of Federal Rule of Civil Procedure 45(b)(1).

---

[1] Prior to filing this Motion to Quash, counsel for CNS participated in a discovery conference with PSC's local counsel, Gerard Stranch, pursuant to Local Rule 37.1.

[2] For the Court's convenience, attached as Exhibit 1 is PSC's Subpoena, and Exhibit 2 is CNS's objections to Exhibits A and B of PSC's subpoena.

- The subpoena exceeds the scope of the limited discovery approved by the Court.

- The subpoena creates an undue burden and seeks irrelevant information in violation of Federal Rules of Civil Procedure 26(b) and 45.

- The subpoena seeks privileged information in violation of Federal Rule of Civil Procedure 45(c)(3)(A)(iii).

- The subpoena does not provide CNS with a reasonable period of time to comply in violation of Federal Rules of Civil Procedure 45(c)(3) and 34(b)(2)(A).

- PSC has breached its duty to take reasonable steps to avoid undue burden or expense in violation of Federal Rule of Civil Procedure 45(c)(1).

### Background

CNS is a medical facility in Chattanooga, Tennessee that did <u>not</u> purchase any medications from New England Compounding Pharmacy d/b/a New England Compounding Center ("NECC"). There are no claims of liability against CNS by any injured plaintiff in the cases consolidated in the MDL or elsewhere.

On July 8, 2013, PSC served a subpoena upon CNS, which was issued from the United States District Court for the District of Massachusetts and signed by J. Gerard Stranch of the firm Branstetter, Stranch, and Jennings, in Nashville, Tennessee.[3] The subpoena *ad testificandum* scheduled CNS's deposition at the offices of CNS on July 29, 2013, at 9:00 a.m. However, the subpoena's Notice of Deposition scheduled the deposition for July 26, 2013, at 9:00 a.m.

The July 8, 2013 subpoena attempts to remedy numerous deficiencies in a previous subpoena, which was served upon CNS on June 17, 2013. After accepting

---

[3] Mr. Stranch is PSC's local counsel for Tennessee.

service of the June 17, 2013 subpoena, CNS filed objections to it on July 1, 2013.[4] CNS has also had numerous communications with Mr. Stranch regarding the deficient June 17, 2013 subpoena. Despite these objections and communications, PSC's reissued July 8, 2013 subpoena has nearly identical deficiencies and fails to comply with Federal Rules of Civil Procedure 45 and 26.

## Standard of Review

The Court, under its multi-district litigation ("MDL") authority, has the power to enforce foreign-district subpoenas pursuant to 28 U.S.C. § 1407(b).[5] When a court exercises its 28 U.S.C. § 1407(b) authority to enforce a subpoena served upon a foreign-district non-party deponent, the MDL judge sits as a judge of the district court where the deponent resides.[6] In addition, because the MDL judge is acting as a judge of the deponent's district, appeal is to the circuit court of the deponent's district.[7] In regard to the subpoena issued to CNS, the Honorable Judge Saylor sits as a judge of the United States District Court for the Eastern District of Tennessee and is bound by the precedent of the United States Sixth Circuit Court of Appeals.

Sitting as a judge of the United States District Court for the Eastern District of Tennessee, Judge Saylor must apply the privilege law of the forum state where he sits, Tennessee.[8]

---

[4] Dkt. No. 218.
[5] *United States ex rel. Pogue v. Diabetes Treatment Centers of America, Inc.*, 444 F.3d 462, 468 (6th Cir. 2006).
[6] *Id.*
[7] *Id.* at 469.
[8] *See Palmer v. Fisher*, 228 F.2d 603, 608-09 (7th Cir. 1955); Additionally, the only MDL plaintiffs with discovery requests relevant to CNS are MDL plaintiffs who received treatment at CNS. The lawsuits filed against NECC by MDL plaintiffs who received treatment at CNS are based on Tennessee law. Federal Rule of Evidence 501 states, in relevant part, "[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."

## Law and Argument

**I. The Subpoena is Procedurally Invalid**

### A. The Subpoena Fails to Comply with Federal Rules of Civil Procedure 45(a)(2)(B)-(C)

The subpoena fails to comply with Federal Rule of Civil Procedure 45(a)(2)(B)-(C), which requires that a subpoena be issued "from the court for the district where the deposition is to be taken" or "where the production or inspection is to be made." The Court's ability to enforce foreign-district subpoenas does not alter the requirements of Federal Rule of Civil Procedure 45(a)(2)(B)-(C).[9] Therefore, the subpoena must be issued from the United States District Court for the Eastern District of Tennessee.

While the Court has the authority to enforce the foreign-district non-party subpoena, the Court lacks the authority to issue the foreign-district non-party subpoena.[10] For this reason, the subpoena fails to comply with Federal Rule of Civil Procedure 45(a)(2)(B)-(C) and should be quashed.

### B. The Subpoena Fails to Comply with Federal Rule of Civil Procedure 45(b)(1)

Federal Rule of Civil Procedure 45(b)(1) requires that notice of subpoenas commanding the production of documents, electronically stored information, or tangible things, be served on each party. Notice of the subpoena to CNS has not been provided in the MDL Master Docket, and, upon information and belief, PSC has not provided notice to the MDL parties by mail or electronic communications. Moreover, such notice

---

[9] *See Pogue*, 444 F.3d at 465, 468-469, 478 n.1 (describing that while an MDL court may enforce a foreign-district subpoena, the subpoena must still issue from the district court where the deposition is to be taken or where production or inspection is to be made pursuant to Fed. R. Civ. P. 45(a)(2)(B) and (C)).
[10] *Id.*

should have been provided *before* service of the subpoena.[11] Therefore, the subpoena served upon CNS is procedurally deficient pursuant to Rule 45(b)(1).

## II. PSC's Breach of the Court's Limitation of Discovery

### A. PSC's Breach of the January, 2011 – November, 2012, Timeframe

On June 21, this Court entered two Orders titled: "Order Granting Plaintiffs Leave to Serve Subpoenas and Qualified Protective Order Regarding Protection of Health Information" ("QPO") and "Order on Central Enforcement of Subpoenas" ("Enforcement Order").[16] The QPO limited the time frame for PSC's subpoena requests, stating,

> The information requested and produced shall be limited to the names of patients that have been identified as receiving NECC solutions, medications or compounds from January, 2011 – November, 2012, the patients' last known address, the records identifying that NECC was the supplier of the solution, medication or compound, including lot number, the hospital or healthcare facilities' NECC product purchase records, including order forms, prescriptions, billing and accounts receivable, the hospital or healthcare facilities' NECC product storage and patient distribution records, and any other information that lead counsel and the PSC reasonably determine necessary to the prosecution and resolution of these actions.[17]

In the Enforcement Order, the Court noted that PSC had advised the Court that it intended to issue subpoenas to, "Pain clinics, hospitals, and other entities or individuals who purchased NECC's methylprednisolone acetate, cardioplegic solution, or

---

[11] *See* Fed. R. Civ. P. 45 advisory committee's note to the 2007 amendment (adopting prior court interpretation that Rule 45(b)(1) requires notice to parties before service of the subpoena on the third-party).

[16] Dkt. No. 192; Dkt. No. 193.

[17] Dkt. No. 192 ¶ 2.

ophthalmic solution."[18] Based on PSC's representations to the Court, the Court's QPO limited PSC's subpoena authority, stating,

> Plaintiffs' Counsel are authorized to serve subpoenas issued by this Court on the entities listed in NECC's Customer list located at: http://www.fda.gov/downloads/Drugs/DrugSafety/FungalMeningitis/UCM3 25466.pdf as well as Pharmacy Support, Inc., CuraScript, Inc., and Clint Pharmaceuticals.[19]

While the Court's directions to PSC were clear, PSC requested that CNS, <u>an entity not found on the FDA's list</u>, provide documents and things for a two year period ending on October 6, 2012.[20] [21] PSC has no authority to subpoena CNS, and PSC's subpoena should be quashed.

### B. PSC's Subpoena Attempts to Circumvent the Court's Requirement that Protected Health Information be Produced to a Vendor

PSC's subpoena violates the Court's QPO by requesting CNS produce the documents directly to PSC at the deposition.[22] The Court clearly ruled that protected health information shall be produced only to a third-party Vendor.[23]

Following service of the subpoena and upon its own expense and effort, CNS learned of the identification of the Vendor.[24] CNS's expense and effort are undue burdens which should have been borne by PSC.[25]

---

[18] Dkt. No. 193.

[19] Dkt. No. 192 ¶ 10.

[20] PSC Subpoena Exhibit A ¶¶ 11-17, 19, 21, and 36 have a timeframe of October 6, 2010 - October 6, 2012. In addition, ¶¶ 18 and 30 ask for all of 2012, and ¶¶ 20, 22-29 and 31-35 have no time limit. Also, PSC Subpoena Exhibit B ¶¶ 1-7, 9, 11 have a timeframe of October 6, 2010 - October 6, 2012. In addition, ¶¶ 8 and 22-23 ask for all of 2012, and ¶¶ 10, 12-21, and 24-27 have no time limit. None of PSC's requests comply with the timeframe limitation of the QPO.

[21] On July 9, 2013, the date immediately following CNS's receipt of the subpoena, Mr. Stranch informed counsel that it was his intent to comply with the timeframe stated in the Court's QPO. While Mr. Stranch's statement evidences his professionalism and the courteous nature of the negotiations between counsel, it is his duty pursuant to Federal Rule of Civil Procedure 45(c)(1) to ensure that the subpoena complies with the QPO. The burden of ensuring the subpoena complies with the QPO should be borne by Mr. Stranch, and it is an undue burden for CNS to attempt to rewrite the subpoena in compliance with the Court's QPO.

[22] PSC Subpoena.

[23] Dkt. No. 192 ¶ 3.

## III. Undue Burden

### A. Standard for Undue Burden in the Eastern District of Tennessee

In the Eastern District of Tennessee, when a non-party objects to the relevancy of a request, the court places the burden on the party seeking disclosure to show the relevancy of the requests.[26]

PSC cannot meet its burden to establish that CNS's testimony is relevant. CNS is not a party to any case related to the fungal meningitis outbreak, let alone any case that has been consolidated in the MDL. The only documents that are relevant to the MDL and possessed by CNS are the protected health records of the plaintiffs in the MDL that received treatment from CNS.[27] CNS does not have any documents that would be pertinent to resolving the numerous cases of plaintiffs that were not treated at CNS. Requiring CNS to produce any documents other than the protected health information of the CNS patients in the MDL would be an undue burden to CNS.

When determining whether an undue burden exists, the Eastern District uses factors that include (1) relevance, (2) the need of the party for the documents, (3) the breadth of the document request, (4) the time period covered by it, (5) the particularity with which the documents are described, and (6) the burden imposed.[28]

The Eastern District also notes that there is some dispute among the courts about whether the issue of burdensomeness should be addressed differently depending on whether the discovery requests are directed to a party or non-party.[29] However, the

---

[24] Dkt. No. 237.
[25] Fed. R. Civ. P. 45(c)(1).
[26] *Travelers Casualty & Surety Company of America v. Pascarella*, 2011 WL 2149524 at *1 n. 1 (E.D. Tenn. May 31, 2011) (unpublished order).
[27] CNS does not believe it has any patients in the MDL.
[28] *Travelers*, 2011 WL 2149524 at *1 n. 1.
[29] *Id.*

Eastern District has always noted whether a subpoena was issued to a party or a non-party, and in *Stratienko*, the court considered the fact that the subpoena was issued to a non-party without explicitly recognizing that it had done so, stating, "[I]n the absence of a showing by the plaintiff that the evidence at issue is actually relevant, not just that it might possibly be relevant, the Court will not allow such discovery, and the accompanying satellite litigation such discovery would entail, as to the personnel files of <u>non-parties</u>. . . ."[30]

Therefore, in the Eastern District, once PSC has proved that all of its requests are relevant, CNS must prove that PSC's requests create an undue burden based on factors including (1) relevance, (2) the need of the party for the documents, (3) the breadth of the document request, (4) the time period covered by it, (5) the particularity with which the documents are described, and (6) the burden imposed. When applied to CNS, the factors weigh overwhelmingly in favor of quashing the subpoena.

### B. PSC's Subpoena is an Undue Burden

First, CNS is not a party to any case in the MDL or any case related to the fungal meningitis outbreak. As a non-party, it is given greater protection against overbroad subpoenas, and any discovery request of it should be viewed with more scrutiny.[31]

Second, pursuant to Federal Rule of Civil Procedure 26(b)(2)(C)(i),[32] many of the documents requested by PSC should be obtained from other, more appropriate,

---

[30] *Stratienko v. Chattanooga-Hamilton County Hospital Authority*, 2008 WL 4442492 at *6 (E.D. Tenn. Sept. 25, 2008) (unpublished order) (emphasis added).
[31] CNS does not believe it has any patients in the MDL.
[32] Federal Rule of Civil Procedure 26(b)(2)(C)(i) states,

(C) *When Required.* On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive.

sources. PSC requested numerous documents regarding the recall of NECC's medications that can be easily obtained from the FDA, CDC, or Tennessee Department of Health. Furthermore, the overwhelming majority of the documents requested can be easily produced by NECC, an actual party to the MDL. The fact that NECC's bankruptcy case and federal investigation may somehow delay discovery from NECC is no reason to burden Tennessee healthcare providers.

Third, the document requests are prohibitively overbroad, including:

- Any and all documents and/or ESI reflecting, and/or related to, the identification of each and every patient that was administered an NECP product during the two-year period immediately preceding October 6, 2012, including patient name, address, date of birth and identification of product administered.[33]

- Any and all documents and/or ESI reflecting, and/or related in any way whatsoever to, the procurement of MPA, or its generic or name-brand equivalent, from any producer, compounding facility or manufacturer other than NECP, during the two-year period immediately preceding October 6, 2012, including without limitation of the foregoing, information reflecting dates of shipment and/or receipt, quantities of shipment, lot numbers and other identifying labels, sizes of containers of the product, cost you paid for the product, applicable warranties, shelf life, expiration dates, requirements and instructions for shipment and/or storage, and the specific identity of the preparation being purchased.[34]

- Any and all documents and/or ESI reflecting or containing information obtained by, or sent to, the Healthcare Provider, its employees and/agents [sic], from the Centers for Disease Control and Prevention, the Federal Food and Drug Administration, and/or any other Federal, [sic] state or local regulatory agency, concerning the fitness of any products manufactured, compounded or produced by NECP for their intended purposes.[35]

---

[33] PSC Subpoena Exhibit B ¶ 7.
[34] PSC Subpoena Exhibit B ¶ 2.
[35] PSC Subpoena Exhibit B ¶ 12.

Fourth, PSC's requests fail to seek information during the relevant period of the outbreak and the relevant period of the Court's QPO. The outbreak involved medications that were manufactured by NECC from May through August 2012.[36] The requests are also not limited to the timeframe set by the Court: January, 2011 – November, 2012.[37] PSC's two year time period is entirely arbitrary, and PSC has no basis for using such a burdensome timeframe.

Fifth, the documents are broadly requested. PSC has failed to even name CNS in several of the requests, instead referring to CNS as "Healthcare Provider." The requests are not specific as evidenced by the overlap of several requests, and the requests appear to have been sent to parties and non-parties alike, with no concern for the impropriety of treating a non-party like a party. PSC's requests are burdensomely broad, and CNS would require immense time and resources to comply with PSC's requests.[38]

Lastly, PSC's 27 requests for documents are facially burdensome, and it would be cost prohibitive for a non-party to respond to them. As stated previously, PSC has imposed numerous burdens on CNS including:

- Failing to issue the subpoena from the United States District Court for the Eastern District of Tennessee in violation of Federal Rules of Civil Procedure 45(a)(2)(B) and (C);

- Subpoenaing a non-party that is not on the FDA, in violation of the Court's QPO;

- Seeking irrelevant information, including documents related to corporate structure and insurance policies;

---

[36] http://www.fda.gov/Safety/MedWatch/SafetyInformation/SafetyAlertsforHumanMedicalProducts/ucm323946.htm (last accessed June 27, 2013).
[37] Dkt. No. 192 ¶ 2.
[38] *See* Affidavit attached hereto as Exhibit 3.

- Seeking information pertaining to an irrelevant and arbitrary timeframe,

- To the extent that PSC's requests are overbroad, seeking information privileged by the attorney-client privilege and the work-product doctrine; and

- Failing to provide CNS with a reasonable time to comply.

For all of these reasons, PSC's subpoena should be quashed.

## C. PSC's Fishing Expedition

Many of PSC's requests for production, including those identified above, amount to little more than a fishing expedition for potential clients. Fishing for potential clients is completely unrelated to PSC's duty to represent the plaintiffs in the MDL, and a clear burden to CNS.

The Court has consistently limited the PSC's authority to the actions consolidated in the MDL. In the Court's Order creating the PSC, the Court stated that the PSC's authority was limited "to initiate, coordinate, and conduct all pretrial discovery on behalf of plaintiffs in all actions subject to this order."[39] The Court reaffirmed this limitation in the QPO, stating that the PSC was limited to seeking "information that lead counsel and the PSC reasonably determine necessary to the prosecution and resolution of these actions."[40]

PSC does not represent a certified class of all patients who received NECC's medications. Having CNS provide PSC with private health information of patients not in the MDL is nothing more than a fishing expedition, which is not allowed by the law of any jurisdiction.

---

[39] Dkt. No. 82.
[40] Dkt. No. 192 ¶ 2 (emphasis added).

11

In *Stratienko*, Dr. Stratienko alleged that Dr. Monroe and the Chattanooga-Hamilton County Hospital Authority conspired against Dr. Stratienko following a fight between Dr. Stratienko and Dr. Monroe.[41] Dr. Stratienko served a subpoena upon CardioVascular Group, P.C., a non-party, seeking the personnel file of Dr. Monroe, and any and all applications for staff privileges filed by Dr. Monroe.[42] Dr. Monroe's personnel file consisted of his employment agreement, shareholder agreement, 401k information, insurance election information, payroll documents, disability insurance policy(s), life insurance policy(s), and medical malpractice insurance policy(s).[43] On behalf of the non-party CardioVascular Group, Dr. Monroe objected to the subpoena.[44] The court stated,

> The Court begins its analysis with the relevance of the discovery at issue. Rule 26 of the Federal Rules of Civil Procedure states, in pertinent part, that:
>
>> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense — including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.
>
> Fed. R. Civ. P. 26(b)(1). The scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad. See *Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). Nevertheless, discovery does have "ultimate and necessary boundaries," and "discovery of matter not `reasonably calculated to lead to the discovery of admissible evidence'

---

[41] *Stratienko*, 2008 WL 4442492 at *6.
[42] *Id.* at *3.
[43] *Id.*
[44] *Id.* at *4.

is not within the scope of Rule 26(b)(1)."*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). <u>Because of the extremely private nature of personnel files, courts generally do not order production of such files except upon a compelling showing of relevance by the requesting party.</u> *Miller v. Federal Express Corp.*, 186 F.R.D. 376, 384 (W.D. Tenn. 1999). <u>To be compelling, the requesting party must demonstrate that the value of the information outweighs the privacy interests of the affected parties.</u> *Onwuka v. Federal Express Corp.*, 178 F.R.D. 508 (D. Minn. 1997). While not binding on this Court, the Court finds these cases persuasive and appropriate in this matter.

In the instant case, CVG has stated that it does not possess any documents responsive to the plaintiff's request for applications of employment. <u>CVG cannot produce documents it does not possess, and there has been no showing that would cause the Court to doubt its assertion.</u> Thus, the Court need not further address that portion of the request.

The Court turns next to the plaintiff's request as to Dr. Monroe's personnel file. After considering the arguments of counsel and the evidence of record, <u>the Court finds that the plaintiff has not made a compelling showing that the request as to the personnel file is relevant to any claim or defense at issue in this litigation or that any value such request might have outweighs Dr. Monroe's privacy interest. During the September 22, 2008, hearing, the parties stated that Dr. Monroe became associated with CVG in approximately 2002. The events in question occurred in 2004. There is no evidence before the Court that the employment agreement and shareholder agreement would contain any information relevant to the events at issue in this lawsuit. Nor is there any evidence that the plaintiff's insurance elections would provide any relevant evidence.</u>

<u>Similarly, any information obtained from Dr. Monroe's payroll, 401k records, and insurance policies would provide no relevant evidence.</u> The plaintiff argues that such records might provide evidence as to some conspiracy between the defendants, evidenced by special payments received by the defendants. However, the fact that the defendants may, or may not, have received benefits, benefits which were not made available to Dr. Stratienko, would not, standing alone, "make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Rather, the plaintiff would necessarily be required to examine

13

the payroll records of other doctors at Erlanger to determine whether any other doctors received similar payments, or whether only the doctors in the alleged conspiracy received the benefits in question. Given that this litigation has been proceeding for four years, and in the absence of a showing by the plaintiff that the evidence at issue is actually relevant, not just that it might possibly be relevant, the Court will not allow such discovery, and the accompanying satellite litigation such discovery would entail, as to the personnel files of non-parties, nor as to the personnel files of the parties to this litigation. Given that the primary focus of this case is on the altercation between the plaintiff and Dr. Monroe, and his subsequent suspension, the Court finds that the plaintiff has not made a showing sufficient to allow the plaintiff to discover the contents of Dr. Monroe's personnel file, contents which, at least in some part, predate the events at issue.

Nor does the Court find that Dr. Monroe's application for staff privileges at Erlanger would provide any relevant evidence. There is no evidence before the Court that the application would shed any light as to the facts and circumstances of the confrontation at issue or plaintiff's subsequent suspension. Again, <u>the plaintiff cannot state that the application is relevant, only that it might be relevant, and the Court will not open the door to a fishing expedition through such private and personal material.</u>[45]

Comparable to a personnel file, the protected health information, social security number, name, date of birth, address, and phone number for hundreds, if not thousands, of Tennesseans are also private and personal materials.[46] Furthermore, the information is completely unrelated to the claims and defenses in the MDL and PSC's duties.  PSC has no basis for requesting the documents, and PSC's subpoena should be quashed.

## IV. PSC Seeks Privileged Information in Violation of Fed. R. Civ. P.  45(c)(3)(A)(iii)

To the extent that the PSC's requests are overbroad, they seek information protected by attorney-client privilege and the work-product doctrine. PSC has made

---

[45] *Stratienko*, 2008 WL 4442492 at *5-6 (emphasis added).
[46] Dkt. No. 192; PSC Subpoena Exhibit B ¶¶ 7-8 (not attached).

numerous requests that would potentially require counsel to disclose memoranda prepared by counsel in preparation for fungal meningitis litigation and countless communications between counsel and CNS related to the fungal meningitis outbreak. These requests are improper and should be stricken.

Pursuant to Federal Rule of Civil Procedure 45(c)(3)(A)(iii), the Court must quash or, in the alternative, modify PSC's subpoena because it seeks privileged information.

## V. PSC Failed to Provide CNS with a Reasonable Period of Time to Comply

PSC has failed to provide CNS with a reasonable period of time to comply with its requests for documents. Pursuant to Fed. R. Civ. P. 34(b)(2)(A), a respondent gets 30 days to comply with a request for production. Depending on whether CNS counts from the deposition date on the subpoena or on the Notice of Deposition, PSC only provided CNS with either 21 or 18 days to respond. Therefore, pursuant to Fed. R. Civ. P. 45(c)(3)(A)(i), the Court must quash or modify the subpoena.

However, even if PSC had provided CNS with 30 days to comply, 30 days is far too short of a timeframe to comply with the overbroad and unduly burdensome requests propounded by PSC. CNS requests additional time to respond to these cumbersome requests.

## VI. PSC has Breached its Duty to Take Reasonable Steps to Avoid Undue Burden and Expense

PSC's overbroad and unduly burdensome requests, which fail to provide CNS with a reasonable period of time to respond, and which seek, in part, privileged

documents, are a clear violation of PSC's duty to take reasonable steps to avoid undue burden or expense.[47] Federal Rule of Civil Procedure 45(c)(1) states,

> (c) Protecting a Person Subject to a Subpoena
>
> > (1)  Avoiding Undue Burden or Expense; Sanctions.
> >
> > > A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees – on a party or attorney who fails to comply.

In light of the fact that PSC has not allowed a reasonable time to respond, exceeded its limited authority, and created an undue burden as defined by the Eastern District of Tennessee, PSC has violated its duty pursuant to Federal Rule of Civil Procedure 45(c)(1). Furthermore, PSC has breached its duty of good faith by scheduling CNS's deposition for the same time as four other Tennessee healthcare providers, all of which are represented by Gideon, Cooper & Essary.

As a result of Mr. Stranch and PSC's failure to comply with their Federal Rule of Civil Procedure 45(c)(1) duty, CNS requests the Court impose an appropriate sanction to include, but not limited to, reasonable attorney's fees.

## VII. CNS's Request for Compensation Pursuant to Federal Rule of Civil Procedure 45(c)(2)(B) and (c)(3)(C)

If the Court compels CNS to provide documents and testimony pursuant to the subpoena, in accordance with Federal Rule of Civil Procedure 45(c)(2)(B) and (c)(3)(C), CNS respectfully requests reasonable compensation for responding to the subpoena at a fair hourly rate for the CNS staff member tasked with gathering responsive documents and materials.

---

[47] Fed. R. Civ. P. 45(c)(1); *See* Affidavit attached hereto as Exhibit 3.

**VIII. Conclusion**

For the reasons stated herein, CNS requests the Court quash or, in the alternative, modify the subpoena in accordance with CNS's objections and impose sanctions against J. Gerard Stranch and PSC. Additionally, should the Court order production of the portions of the information requested, in accord with Federal Rule of Civil Procedure 45(c)(2)(B) and (c)(3)(C), CNS respectfully requests that it be reimbursed for the reasonable costs and hourly fees of employees for work associated with responding to the requests.

Respectfully submitted,

**GIDEON, COOPER & ESSARY, PLC**

/s/Chris J. Tardio_____
**Chris J. Tardio, #23924**
Suite 1100
315 Deaderick Street
Nashville, TN 37238
(615) 254-0400
***Attorney for Chattanooga Neurosurgery***
***and Spine***

**CERTIFICATE OF SERVICE**

This will certify that a true and accurate copy of the foregoing was served on all parties hereto by virtue of the Court's electronic filing system this 16th day of July, 2013.

/s/Chris J. Tardio_____
**Chris J. Tardio**