UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | MDL No. 2419<br>Master Dkt.: 1:13-md-02419-FDS |
| THIS DOCUMENT RELATES TO:<br><br>All Actions | |

## PLAINTIFFS' STEERING COMMITTEE'S RESPONSE TO OBJECTIONS OF ERLANGER HEALTH SYSTEM, INC.

On June 17, 2013, the Plaintiffs' Steering Committee ("PSC") served a subpoena (the "Subpoena) upon Erlanger Health System, Inc. ("Erlanger" or the "Subpoenaed Party"). On July 8, 2013, Erlanger, through counsel, filed an Objection to the Subpoena (Dkt. No. 246) and on July 9, 2013 filed a Supplemental Objection (Dkt. No. 256, and collectively with Dkt. No 246, the "Erlanger Objection). The PSC now files this response to the Erlanger Objection.

### INTRODUCTION

The Erlanger Objection provides no basis to quash or otherwise modify the Subpoena. Erlanger Objection offers only technicalities, red herrings, and vague, unsupported legal arguments for the relief requested and fails to provide any evidence to support its unfounded allegations that the Subpoena imposes an undue burden.

Erlanger has exhibited bad faith in its utter refusal to work with the PSC in obtaining highly critical documents to this litigation. It failed to attach the letter sent by the PSC in the meet and confer process, which directly addressed many arguments put forth in the Erlanger Objection.

In light of the considerable lack of any substance to the Erlanger Objection, it is clear what Erlanger's goal here is: Delay.  Tennessee, the state in which Erlanger practices, has a one year statute of limitations, a statutory bar that is quickly approaching, and Erlanger's strategy to unnecessarily delay these proceedings is likely aimed at trying to run out this clock and limit its liability for providing tainted, NECC methylprednisolone acetate ("MPA") to its patients.  The Court should not permit these obstructionist tactics and should immediately require Erlanger to respond, in full, to the Subpoena.

Finally, Erlanger sets forth only the flimsiest basis for the Court to quash the Subpoena based on undue burden.  Erlanger provides no evidence or even makes any claim that producing responsive documents to the Subpoena would work a considerable hardship for it.  Instead, Erlanger seeks to quash the Subpoena merely because it uses the term "all" in its requests and because some of the documents may be accessible from other sources like the CDC, FDA, and the New England Compounding Clinic ("NECC").  These are absurd arguments and provide no grounds for the Court to quash or alter the Subpoena.

In short, the Court should overrule the Erlanger Objection and require Erlanger to immediately respond to the Subpoena.  Otherwise, Tennessee victims of this tragedy may lose their right to be made whole.

## I. The Failure To Provide Witness Will Be Cured And Should Be Waived For Erlanger's Failure To Follow The Local Rules

The Erlanger Objection first seeks relief from the Subpoena for failure of the Subpoena to be accompanied by the required witness fee under Rule 45.  This technical error was not raised in either meet and confer letter sent to the PSC (*See* Exhibit A and B to the Erlanger Objection) and was raised the first time in the Erlanger Objection.  Had Erlanger's counsel mentioned this

failure in the lengthy meet and confer process, the PSC would have cured or reserved the Subpoena.

Technical failures in providing witness fees can be cured or waived by the Court, and this Court should so waive the failure because the PSC will serve witness fees prior to the deposition and Erlanger's counsel's failure to give the PSC the opportunity to cure this technical error in the meet and confer process violates Local Rules 37.1. *See Adams v. Dolgencorp, LLC*, Case No. 11-784, 2012 U.S. Dist. LEXIS 71066 (M.D. La. May 22, 2012) ("[W]hile a subpoena request without the witness fee is technically invalid, the defect can be cured.") (citing *Meyer v. Foti*, 720 F.Supp. 1234, 1244 (E.D.La. 1989).

## II.     The Subpoena Complies With the Court's Order On Subpoena Enforcement

Without conceding that the original Subpoena went beyond the scope of the Court's Order on Central Enforcement of Subpoenas and the Qualified Protective Order, contemporaneously with the filing of this Response, the PSC is also filing a consolidated response (the "Consolidated Response") to the many objections filed which will directly address the concerns raised by Erlanger and should moot the points raised herein. To the extent necessary, the Accommodations detailed therein and the arguments put forward in response to objections raised are incorporated herein.

## III.    The Subpoena Is Not Unduly Burdensome

### A. Erlanger, Even As A Non-Party Is Not Beyond The Scope Of Permitted Discovery

It is well settled that parties to lawsuits may take broad discovery of nonparties.[1] Moreover, when a subpoenaed party seeks to resist discovery, even when that party is a non-party, it is the subpoenaed party's burden to demonstrate that the discovery should not be

---

[1] Fed.R.Civ.P. 45; Fed.R.Civ.P. 34(c).

permitted.[2]  When analyzing whether a subpoena to a nonparty should be quashed, the court considers issues such as relevance, the requesting party's need, the breadth of the request, and the burden imposed. *Grider v. Keystone Health Plan Cent., Inc.,* 2005-MC-40, 2005 U.S. Dist. LEXIS 44069, 2005 WL 2030456, *7 (M.D. Pa. July 28, 2005).

Among the most important objectives of the PSC in issuing these subpoenas is to identify all known and reasonably ascertainable personal injury and wrongful death victims of NECC. By capitalizing on the work of the CDC and serving subpoenas only on those clinics identified by the CDC as having received the recalled lots of contaminated NECC medication, the burden imposed on such clinics is minimal, and the need is great.  Many, if not all, of the clinics have already been required to identify such patients of theirs in response to grand jury subpoenas or requests for information from the CDC or their state health department.  Moreover, the Accommodations described in the Consolidated Response address many, if not all, of the arguments made by Erlanger regarding undue burden.  The remainder of this section will focus on those issues not directly addressed by the Consolidated Response.

### B.  Erlanger's Corporate Structure Is Relevant

Erlanger incorrectly claims that its information related to its corporate structure and specifically requests 22, 24, 25, and 27 of the Exhibit B, is misplaced.  To the extent that parties in the MDL will need to file claims under the Tennessee Medical Malpractice Act (the "TMMA"), the identity of all potential health-care related defendants, including those in the Erlanger corporate tree, must be known PRIOR to a party filing a suit.  *See Myers v. Amisub*

---

[2] *See e.g.*, *Rockwell Automation, Inc. v. Kontron Modular Computers*, Case No. 12-cv-566, 2013 U.S. Dist. LEXIS 2889, * 3-4 (S.D. Cal. January 8, 2013) ("Under Fed. R. Civ. P. 45(a)(1)(C), a nonparty to a civil suit… can be subpoenaed for documents relevant to the suit…The burden is on the party resisting discovery to demonstrate that discovery should not be permitted."); *Sham v. Hyannis Heritage House Hotel, Inc.,* 118 F.R.D. 24, 25 (D. Mass. 1987) ("The burden is upon the party resisting discovery to demonstrate that the matter being sought is indeed work-product as defined by Fed. R. Civ. P. 26(b)(3).")

*(SFH), Inc.,* 382 S.W.3d 300 (Tenn. 2012) (discussing requirements). Otherwise, a party cannot comply with the notice provisions contained in T.C.A. § 29-26-121, which require that all health-care related defendants (including hospitals, doctors, and pharmacists) be given notice of claims and a HIPAA compliant medical release 60 days prior to filing suit. Erlanger is well aware of these requirements, but nonetheless failed to mention how a potential plaintiff could satisfy these notice requirements without the discovery requested.

### IV.     The Subpoena Is Not Overly Broad

Erlanger's concerns regarding breadth are largely mooted by the Accommodations detailed in the Consolidated Response. Here, the PSC needs the information sought in the Subpoena (1) to establish or bolster its liability case against NECC, (2) to understand the role clinics, doctors, and/or health care providers played in the unfolding of the NECC-related debacle (including whether they or others share any liability) and (3) for purposes of providing actual notice of the bar date to potential claimants.

The Accommodations largely address Erlanger's concerns. For example, Erlanger takes issue with having to provide a list of all patients who received any products from NECC, but the Accommodations make clear that the Subpoena will be limited to lists of patients who received an injection of a medication lot that the CDC has determined was contaminated AND to any lists of patients already compiled by a clinic in response to a request from any Federal or State agency, any Grand Jury Subpoena, or any other governmental entity. Erlanger may or may not have documents responsive to this request, but there is simply no reasonable argument to be made that the request is overly broad.

### V.     It Is Unreasonable To Obtain Responsive Documents From NECC

Erlanger claims that the Subpoena seeks information better produced by NECC rings hollow in light of the practical realities facing NECC. Subpoena recipients' suggestions that a bankrupt entity facing hundreds of lawsuits brought by victims of this tragedy – who will never be able to pay victims the full value of their claims – should further deplete the limited resources it is endeavoring to retain for the benefit of victims by paying to produce information within clinics' possession reflects either a stunning lack of compassion or a failure to think through the consequences of shifting the expense.

Moreover, "a person may not avoid a subpoena by saying that the evidence sought from him is obtainable from another." *Covey Oil Co. v. Continental Oil Co.*, 340 F.2d 993 (10th Cir. 1965).

The bankruptcy stay currently prohibits the plaintiffs from serving any formal discovery requests on NECC. And while NECC may have some of this information, NECC does not have contact information for patients who received contaminated products, information about what the subpoena recipient considered when deciding whether to purchase products from NECC, information the clinic possessed about NECC's attempts to comply with USP requirements, or information the clinic possessed about the fitness of NECC's products for a particular purpose. Who better to provide information about what the clinic knew than the clinic?

### VI. The Qualified Protective Order Is Sufficient To Protect PHI Required To Be Produced

The Accommodations should address the concerns Erlanger has with providing PHI related to patients that did not receive NECC products.

### VII. The PSC Is Not Trolling For Clients

Erlanger's claim that the PSC is merely trolling for clients is utterly unfounded. The PSC is doing its job and performing its duty. Protected health information, including patient names

and contact information, will be produced to a HIPAA-compliant vendor and held by that vendor until a Court issues an order permitting that data to be used for notice purposes. The PSC will not have access to patient names and thus could not possibly use that information to try to drum up clients.

The PSC proposes having a qualified vendor use this patient identifying information for the purposes of notifying potential claimants about any bar date. Why does the PSC care about who gets notice of the bar date?

The Chapter 11 Trustee has filed a Motion to Bar Date in the Bankruptcy Court, asking that Court to require all creditors – including tort victims – to file a proof of claim against NECC by September 20, 2013. The proposed form of notice obliquely refers to the possibility that the bankruptcy plan may include the equivalent of a release from liability (presumably through channeling injunctions imposed by the bankruptcy court) for entities other than NECC who have contributed to the estate's pot:

> **When considering whether to file a proof of claim in the NECC bankruptcy case, you should also be aware that, there is a possibility that a bankruptcy plan and court order will bar you from recovering against *any* other person or entity for *any* injury related to any NECC product, including a claim for mislabeling or malpractice that you may have against a pain clinic or doctor, regardless of whether you have suffered an illness or side effect to date.**

The Plaintiffs' Steering Committee has been in discussions with the Trustee about the Bar Date Motion, in particular the timing of the bar date and the form of the notice.

Because a tort victim's failure to file a proof of claim in the bankruptcy could theoretically wipe out its claims against other entities and individuals who may share culpability for the NECC-related debacle, such as clinics or doctors who contribute to the NECC-pot in exchange for the functional equivalent of a release for all liability relating to NECC, it is

imperative that the PSC and the Creditors' Committee work together in identifying, before the bar date, all potential claimants. Otherwise the due process rights of potentially hundreds of individuals will be violated for lack of notice that their claim was extinguished in the bankruptcy proceeding.

**VIII.    The Individual Objections Are Addressed By The Accommodations**

Erlanger's individual objections to each request are largely addressed by the Accommodations and the Consolidated Response. To the extent necessary, the PSC incorporates the portions of the Consolidated Response related to each objection raised by Erlanger not otherwise addressed directly herein.

**IX.    Erlanger's Supplemental Objection Is Groundless**

Erlanger filed a supplemental objection incorrectly claiming that the Court lacked the authority to issue the subpoenas and enforce them centrally in the MDL. This Court's jurisdiction to issue, enforce, and quash subpoenas cannot seriously be questioned.

Federal statutes grant MDL courts have authority to preside over coordinated or consolidated pretrial proceedings. *See* 28 U.S.C. § 1407. "Pretrial proceedings" have been liberally interpreted to give the MDL court control over all proceedings prior to trial. *See In re Neurontin Mktg., Sales Practices, and Prod. Liab. Litig.*, 245 F.D.R. 55, 57 (D. Mass. 2007). *See also In re U.S. Office Prod. Co. Sec. Litig.*, 251 F.Supp.2d 58, 65 (D.D.C. 2003) ("In a multidistrict litigation action, the transferee judge has the same jurisdiction and power over pretrial proceedings that the transferor judge would have in the absence of the transfer.").

MDL courts have the authority to issue subpoenas pursuant to Fed. R. Civ. P. 30 & 45 and 28 U.S.C. § 1407(b). 28 U.S.C. 1407(b) explicitly references the MDL judge's enforcement power when it comes to conducting pretrial depositions:

> "[t]he judge or judges to whom [MDL] actions are assigned … may exercise the powers of a district judge in any district for the purpose of conducting pretrial depositions in such coordinated or consolidated pretrial proceedings."

Moore's Federal Practice notes that "[t]hough the statutory language refers to 'pretrial depositions,' the statute wisely has been interpreted to embrace document production subpoenas as well." *See also* 9-45 Moore's Federal Practice – Civil § 45.50(4). Some transferee courts have concluded that they do not have power to enforce subpoenas seeking documents only. *See*, *e.g.*, *Visx, Inc. v. Nidek Co.*, 208 F.R.D. 615 (N.D. Cal. 2002). This distinction has no bearing here. All of the subpoenas that the PSC presently intends to serve seek record keeper depositions as well as documents.

MDL courts can also quash subpoenas. According to Wright and Miller, "In multidistrict litigation, the court in charge of the consolidated proceedings has the power to rule on a motion to quash subpoenas." Wright and Miller, FEDERAL PRACTICE AND PROCEDURE, §2463.1 (2008 ed.). *See also*, *In re Clients & Former Clients of Baron & Budd, P.C.,* 478 F.3d 670 (5th Cir. 2007); *In re Subpoenas Served on Wilmer, Cutler & Pickering & Goodwin Proctor LLP*, 255 F.Supp.2d 1(D.D.C. 2003); *In re Subpoena Issued to Boies, Schiller & Flexner LLP*, 2003 WL 1831426 (D.N.Y. 2003); *HCA, Inc. v. U.S. ex. Rel. Pogue*, 2002 WL 31953748 (D. Tn. 2002). In the *Neurontin* MDL, Judge Sorokin concluded that the MDL court could compel production or quash a subpoena directed to an out-of-district nonparty:

> ...the MDL statute empowers an MDL judge to act as a judge of the deposition or discovery district. *See* 28 U.S.C. § 1407(b) ("The judge or judges to whom such [MDL] actions are assigned ... may exercise the powers of a district judge in any district for the purpose of conducting pretrial depositions in such coordinated or consolidated pretrial proceedings"). A judge presiding over an MDL case therefore may compel production by an extra-district nonparty; enforce, modify, or quash a subpoena directed to an extra-district nonparty; and hold an extra-district nonparty deponent in contempt, notwithstanding the nonparty's physical status in a foreign district where discovery is being conducted.

*In re Neurontin*, 245 F.D.R. at 58, citing *U.S. ex rel. Pogue v. Diabetes Treatment Centers of America, Inc.*, 444 F.3d 462, 468–469 (6th Cir. 2006).

The Judicial Panel on Multidistrict Litigation agrees. In *In re Online DVD Rental Antitrust Litigation*, the Panel found that actions involving a motion to quash brought by a third party subpoenaed by the MDL plaintiffs were better decided by the transferee judge rather than a judge in another district with no particular knowledge of the MDL, where the third party was found to have important information central to the issues in the MDL. As the Panel put it, "requiring a judge in the Northern District of Texas to learn the particulars of MDL No. 2029 would not promote the just and efficient conduct of this action or the litigation as a whole[,]" and the "…litigation would be best served by allowing the transferee judge to determine the scope of discovery in the MDL." *In re Online DVD Rental Antitrust Litig.*, 744 F. Supp. 2d 1378 (J.P.M.L. 2010).

Accordingly, Erlanger's position that the Court lacks jurisdiction to issue and enforce the Subpoena is utterly unfounded.

## CONCLUSION

For the foregoing reasons, the Erlanger Objection should be overruled in its entirety, the Subpoena should not be quashed or modified, and the Court should order Erlanger to comply with the Subpoena.

Dated:  July 17, 2013

*/s/ J. Gerard Stranch, IV*
J. Gerard Stranch, IV
Benjamin A. Gastel
BRANSETTER, STRANCH & JENNINGS PLLC
227 Second Avenue North
Nashville, TN  37201
Phone: (615) 254-8801
Fax: (615) 255-5419
gerards@branstetterlaw.com

*Tennessee Lead Counsel for PSC*

Thomas M. Sobol
Kristen Johnson Parker
HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Phone: (617) 482-3700
Fax: (617) 482-3003
tom@hbsslaw.com
kristenjp@hbsslaw.com

*Plaintiffs' Lead Counsel*

Elizabeth J. Cabraser
Mark P. Chalos
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111
Phone: (415) 956-1000
Fax: (415) 956-1008
ecabraser@lchb.com
mchalos@lchb.com

*Federal/State Liaison*

Marc E. Lipton
LIPTON LAW
18930 W. 10 Mile Road
Southfield, MI 48075
Phone: (248) 557-1688
Fax: (248) 557-6344
marc@liptonlawcenter.com

Kim Dougherty
JANET, JENNER & SUGGS, LLC
75 Arlington St.
Suite 500
Boston, MA 02116
Phone: (617) 933-1265
kdougherty@myadvocates.com

Patrick T. Fennell
CRANDALL & KATT
366 Elm Avenue, S.W.
Roanoke, Virginia 24016
Phone:  (540) 342-2000
pfennell@crandalllaw.com

Mark Zamora
ZAMORA FIRM
6 Concourse Parkway, 22nd Floor
Atlanta, GA 30328
Phone: (404) 451-7781
Fax: (404) 506-9223
mark@markzamora.com

*Plaintiffs' Steering Committee*

**CERTIFICATE OF SERVICE**

I, J. Gerard Stranch, IV, hereby certify that I caused a copy of the foregoing to be filed electronically via the Court's electronic filing system. Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system, and notice of these filings will be sent to these parties by operation of the Court's electronic filing system.

Dated: July 17, 2013

*/s/ J. Gerard Stranch, IV*
J. Gerard Stranch, IV, TN BPR # 023045