UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

---

IN RE: NEW ENGLAND COMPOUNDING
PHARMACY, INC. PRODUCTS LIABILITY
LITIGATION

MDL No. 2419

Master Dkt: 1:13-md-02419-FDS

---

THIS DOCUMENT RELATES TO:

All Actions

---

## MICHIGAN PAIN SPECIALISTS' SUPPLEMENTAL BRIEF IN SUPPORT OF ITS OBJECTIONS TO THE PLAINTIFFS' STEERING COMMITTEE'S SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

*HG*
*HB*

## TABLE OF CONTENTS

INDEX OF AUTHORITIES ................................................................................. iii

INTRODUCTION ............................................................................................ 1

ANALYSIS ..................................................................................................... 2

    I.   Standard of Review ............................................................................ 2

    II.   Michigan's Physician-Patient Privilege ............................................... 4

    III.  HIPAA Does Not Preempt Michigan's More Stringent State Law ......................... 6

    IV.  Public Policy Favors Enforcement of Michigan's Physician-Patient Privilege ....... 9

CONCLUSION ............................................................................................... 10

*HG*
*HB*

## INDEX OF AUTHORITIES

**Cases:**

*Baker v. Oakwood Hosp. Corp.,*
  608 N.W.2d 823 (Mich. Ct. App. 2000) ................................................................. 5, 7

*Dorris v. Detroit Osteopathic Hosp. Corp.,*
  594 N.W.2d 455 (Mich. 1999) ................................................................................... 4

*Erie v. Tompkins,*
  58 S. Ct. 817 (1938) ................................................................................................. 9

*Fidelity Fed. Savings & Loan Ass'n v. de la Cuesta,*
  102 S. Ct. 3014 (1982) ............................................................................................. 7

*Gade v. Nat'l Solid Wastes Mgmt. Assoc,*
  112 S. Ct. 2374 (1992) ............................................................................................. 8

*Holman v. Rasak,*
  785 N.W.2d 98 (Mich. 2010) ................................................................................... 7

*In re Baycol Prodocts Litigation,*
  219 F.R.D. 468 (D. Minn. 2003) .............................................................................. 3

*In re Westinghouse Electrical Corp. Uranium Contracts Litigation,*
  76 F.R.D. 47 (W.D. Pa. 1977) ................................................................................. 3

*In re Zimmer Nexgen Knee Implant Products Liability Litigation,*
  890 F. Supp.2d 896 (N.D. Ill. 2012) ........................................................................ 3

*Isidore Steiner v. Bonanni,*
  807 N.W.2d 902 (Mich. Ct. App. 2011) ............................................................. 5, 8, 9

*Konynenbelt v. Flagstar Bank,*
  617 N.W.2d 706 (Mich. Ct. App. 2000) ................................................................... 7

*Meier v. Awaad,*
  832 N.W.2d 251 (Mich. Ct. App. 2013) ................................................................... 8

*Northwest Memorial Hosp. v. Ashcroft,*
  362 F.3d 923 (7th Cir. 2004) ................................................................................... 7

*Palmer v. Fisher,*
  228 F.2d 603 (7th Cir. 1955) ................................................................................... 3

*HG*
*HB*

*Schechet v. Kesten*,
126 N.W.2d 718 (Mich. 1964) ........................................................................ 5

*U.S. ex rel. Pogue v. Diabetes Treatment Centers of America, Inc.*,
444 F.3d 462 (6th Cir. 2006) ........................................................................ 2

**Statutes:**

42 U.S.C. § 1320d ........................................................................................... 6

MICH. COMP. LAWS § 257.625a(9) .................................................................. 6

MICH. COMP. LAWS § 330.1748a ..................................................................... 6

MICH. COMP. LAWS § 330.1946 ....................................................................... 6

MICH. COMP. LAWS § 333.7403a ..................................................................... 6

MICH. COMP. LAWS § 600.2157 ................................................................ 1, 4, 5

MICH. COMP. LAWS § 600.2912f(1) .................................................................. 6

**Rules:**

FED. R. CIV. P. 45 ............................................................................................ 2

FED. R. CIV. P. 45(a)(2)(C) .............................................................................. 2

FED. R. CIV. P. 45(c)(2)(B) .............................................................................. 2

FED. R. CIV. P. 45(c)(3)(A)(iii) ......................................................................... 2

FED. R. EVID. 501 ........................................................................................ 3, 7

**Regulations:**

45 C.F.R. § 160.203(b) .................................................................................... 8

HG
HB

## INTRODUCTION

Pursuant to this Court's request made during the July 18, 2013 hearing on the objections to the Plaintiff Steering Committee's ("PSC") subpoenas to various non-party healthcare providers, Michigan Pain Specialists ("MPS") submits the following supplemental brief in support of its objection that the subpoena violates the physician-patient privilege as established by Michigan statute.

By way of background, MPS is a Michigan company that operates pain management clinics at various locations in Michigan.  MPS is *not* a party to this multi-district litigation, but is a party to several state court actions involving allegations relating to the administration of methylprednisolone acetate ("MPA") purchased from the New England Compounding Pharmacy (hereafter referred to as "NECC").  The alleged NECC contaminated MPA was only administered at the MPS Brighton, Michigan clinic on certain dates during the months of August, September and October 2012.

As discussed below, MICH. COMP. LAWS § 600.2157 sets forth that information obtained from a patient by a person authorized to practice medicine in Michigan shall not be disclosed.  Although there are some limited exceptions; none apply to this case.  Moreover, the Michigan Supreme Court has held that the protections set forth in § 600.2157 are more stringent than those contained in the HIPAA, and therefore, it is the more stringent Michigan requirements that must be followed.

The subpoena served upon MPS by the PSC requires the disclosure of privileged information to which no exception under state law applies.  Thus, the subpoena seeks to compel MPS to violate state law.  To that extent, the subpoena must properly be quashed.

*HG*
*HB*

## ANALYSIS

### I.   Standard of Review

FED. R. CIV. P. 45 controls the issuance of a subpoena in federal court. After being served a subpoena, the recipient may object and ask that it be quashed or modified if the subpoena seeks the disclosure of privileged information. FED. R. CIV. P. 45(c)(3)(A)(iii). This rule provides:

> **(c) Protecting a Person Subject to a Subpoena.**
>
> * * *
>
> **(3) *Quashing or Modifying a Subpoena.***
>
> > **(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:
> >
> > * * *
> >
> > > **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

Thus, this Court is required to quash the subpoena if it seeks to compel the disclosure of privileged matters for which no exception or waiver applies.

A subpoena for documents issued to a non-party to the action (like MPS), must issue from *the court for the district where the production will be made.* FED. R. CIV. P. 45(a)(2)(C). Under such circumstances, any disputes concerning the subpoena must be resolved by the court that issued the subpoena. FED. R. CIV. P. 45(c)(2)(B). Consequently, in multi-district litigation, it has been held that the MDL judge, for purposes of enforcing a subpoena for documents, acts as a judge in the discovery district. *U.S. ex rel. Pogue v. Diabetes Treatment Centers of America, Inc.*, 444 F.3d 462, 468-469 (6th Cir. 2006). As stated in *Pogue* at 468-469:

*HG*
*HB*

> A judge presiding over an MDL case therefore can compel production by an extra-district nonparty; enforce, modify, or quash a subpoena directed to an extra-district nonparty; and hold an extra-district nonparty deponent in contempt, notwithstanding the nonparty's physical situs in a foreign district where discovery is being conducted.

Therefore, an MDL judge has the authority to enforce a subpoena in the discovery district *and is acting as a judge in that district when doing so.*

Here, the subpoena issued to MPS was issued in Michigan and required disclosure of documents in Southfield, Michigan. Accordingly, this Court is sitting as a judge of the United States District Court for the Eastern District of Michigan in deciding this matter.

With respect to the law of privilege, this court is required to apply the law of the forum state in which this court sits -- Michigan. *See* FED. R. EVID. 501; *Palmer v. Fisher*, 228 F.2d 603, 608-609 (7th Cir. 1955); *In re Westinghouse Electrical Corp. Uranium Contracts Litigation*, 76 F.R.D. 47, 53 (W.D. Pa. 1977); *In re Baycol Products Litigation*, 219 F.R.D. 468, 469 (D. Minn. 2003); *In re Zimmer Nexgen Knee Implant Products Liability Litigation*, 890 F. Supp.2d 896, 901-903 (N.D. Ill. 2012).

FED. R. EVID. 501 provides:

> The common law – as interpreted by United States courts in the light of reason and experience -- governs a claim of privilege unless any of the following provides otherwise:
>
> - the United States Constitution;
> - a federal statute; or
> - rules proscribed by the Supreme Court.
>
> *But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.* (Emphasis added.)

*HG*
*HB*

3

The subpoena in this matter was served upon a Michigan company, in Michigan, requesting information as to patients who sought medical treatment in Michigan. As a result, this Court applies Michigan law concerning whether a privilege applies to the requested information.

## II.   Michigan's Physician-Patient Privilege

Michigan has a very broad physician-patient privilege, codified in MICH. COMP. LAWS § 600.2157:

> *Except as otherwise provided by law, a person duly authorized to practice medicine or surgery shall not disclose any information that the person has acquired in attending a patient in a professional character, if the information was necessary to enable the person to prescribe for the patient as a physician, or to do any act for the patient as a surgeon.* If the patient brings an action against any defendant to recover for any personal injuries, or for any malpractice, and the patient produces a physician as a witness in the patient's own behalf who has treated the patient for the injury or for any disease or condition for which the malpractice is alleged, the patient shall be considered to have waived the privilege provided in this section as to another physician who has treated the patient for the injuries, disease, or condition. If a patient has died, the heirs at law of the patient, whether proponents or contestants of the patient's will, shall be considered to be personal representatives of the deceased patient for the purpose of waiving the privilege under this section in a contest upon the question of admitting the patient's will to probate. If a patient has died, the beneficiary of a life insurance policy insuring the life of the patient, or the patient's heirs at law, may waive the privilege under this section for the purpose of providing the necessary documentation to a life insurer in examining a claim for benefits. (emphasis added).

*HG*
*HB*

The purpose of this privilege is to protect the confidential nature of the physician-patient relationship and to encourage and open and honest disclosure by the patient. *Dorris v. Detroit Osteopathic Hosp. Corp.*, 594 N.W.2d 455, 459 (Mich. 1999). Importantly, this privilege belongs to the patient; not the physician. *Id.* Thus, only the patient can waive the privilege. *Id.; see also Baker v. Oakwood Hosp. Corp.*, 608 N.W.2d

823, 828 (Mich. Ct. App. 2000).   The Michigan Supreme Court has described this

privilege as follows:

> The statute imposes an absolute bar. . . Such a veil of privilege is the
> patient's right.   It prohibits the physician from disclosing, in the course of
> any action wherein his patient or patients are not involved and do not
> consent, even the names of such noninvolved patients.

*Schechet v. Kesten*, 126 N.W.2d 718, 720-21 (Mich. 1964).

In applying this privilege, the names, addresses, telephone numbers, and medical

information relative to nonparty patients all fall within the scope of the privilege.   *Isidore*

*Steiner v. Bonanni*, 807 N.W.2d 902, 274-75 (Mich. Ct. App. 2011).

Under Michigan law, the subpoena sent to MPS is squarely in violation of the

physician-patient privilege.   The subpoena seeks, among other things, "Any and all

documents . . . related to, the identification of each and every patient that was

administered an NECP product during the two-year period immediately preceding

October 6, 2012, including patient name, address, date of birth, identification of product

administered, and date product was administered".   (See PSC subpoena, attached as

**Exhibit 1**, at ¶ 6.)   The subpoena also seeks: "Any and all documents . . . containing

communications made or issued by the Healthcare Provider, its employees and/or

agents, in response to any recall notice regarding NECP products".   (**Exhibit 1** at ¶ 15.)

Thus, the subpoena seeks the name, address, and date of birth of potentially affected

patients and also seeks a copy of any communications by MPS to those patients.   As

stated in *Isidore Steiner*, *supra*, the disclosure of this type of information with respect to a

nonparty is a violation of the physician-privilege.

Of course, there are various exceptions to the privilege set forth in MICH. COMP.

LAWS § 600.2157.   These include:

*HG*
*HB*

5

- when the holder of the privilege (the patient) files **a claim alleging medical malpractice** (MICH. COMP. LAWS § 600.2912f(1));

- in certain cases involving **child neglect** (MICH. COMP. LAWS § 330.1748a);

- in cases involving **prescription fraud** (MICH. COMP. LAWS § 333.7403a);

- in certain circumstances where a mental health professional is under a **duty to warn another of eminent harm** (MICH. COMP. LAWS § 330.1946); and

- in certain cases involving **Michigan's implied consent law** (MICH. COMP. LAWS § 257.625a(9)).

Clearly, none of the exceptions apply in this matter.

Here, none of the patients who would be affected by the requested disclosure are parties to this case. Moreover, the PSC has not provided MPS with a valid release, signed by the patients, indicating that they are waiving their right to confidentiality. As such, any Order requiring MPS to disclose patient information would be an Order requiring MPS to violate state law.

## III.   HIPAA Does Not Preempt Michigan's More Stringent State Law

The PSC has attempted to bypass the state-privilege issue by arguing that there is no privilege violation where an appropriate Qualified Protective Order has been entered under the Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. § 1320d, *et seq.* Michigan law is clear, however, that since state law provides more protection than HIPAA, not less, HIPAA does not preempt state law. In other words, patients in Michigan are afforded all of the protections granted under the HIPAA, as well as the more stringent Michigan protections.

HG
HB

6

First and foremost, it should be noted that the HIPAA guidelines do not establish any physician-patient privilege.  The physician-patient privilege is purely a matter of state law and is controlled by statute.  *Baker v. Oakwood Hosp. Corp.*, 608 N.W.2d 823, 828 (Mich. Ct. App. 2000); FED. R. EVID. 501.  HIPAA does not create any new privilege; it merely assures that patients are aware of when their health information is being disclosed and preempts state law only to the extent the law requiring notice of disclosure in a given state is *less* stringent than the protections provided by HIPAA.  *Holman v. Rasak*, 785 N.W.2d 98, 105 (Mich. 2010).

In *Northwest Memorial Hosp. v. Ashcroft*, 362 F.3d 923, 925 (7th Cir. 2004), the Seventh Circuit expressly held that HIPAA is a procedural statute and *not* "an Act of Congress that creates a privilege."  Thus, the state law creating a physician-patient privilege is unaffected by HIPAA and does not preempt state law to the extent that state law provides enhanced protections.

In *Konynenbelt v. Flagstar Bank*, 617 N.W.2d 706, 709-10 (Mich. Ct. App. 2000) the Michigan Court of Appeals, citing *Fidelity Fed. Savings & Loan Ass'n v. de la Cuesta*, 102 S. Ct. 3014 (1982), stated:

> Under the Supremacy Clause of the United States Constitution, US Const, Art VI, Cl 2, federal law preempts state law where Congress so intends …However, there is a strong presumption against preemption of state law and preemption will be found only where it is the clear an unequivocal intent of Congress … Congressional intent to preempt state lay may be expressed or implied … If expressed, the intent of Congress to preempt state law must be clearly stated in the statute's language or impliedly contained in the statute's structure and purpose."

It is clear that Congress did not intend to preempt state law on the issue of the physician-patient privilege when it enacted the HIPAA.  The touchstone of any preemption issue is congressional intent.  *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 112

HG
HB

7

S. Ct. 2374, 2381-382 (1992).   Nothing in HIPAA gives any indication that state law

regarding a state-create physician-patient privilege is preempted.   In fact, the HIPAA

preemption statement, as set forth in 45 C.F.R. § 160.203(b) specifically provides:

> A standard, requirement, or implementation specification adopted under this
> subchapter that is contrary to a provision of State law preempts the
> provision of State law. This general rule applies, except if one or more of
> the following conditions is met:
>
>                                    * * *
>
> (b) The provision of State law relates to the privacy of individually
> identifiable health information and is more stringent than a standard,
> requirement, or implementation specification adopted under subpart E of
> part 164 of this subchapter.

It is clear under the preemption statement that the HIPAA is not intended to

preempt more stringent state law.

The Michigan Court of Appeals succinctly this very issue as follows:

> By its language, HIPAA asserts supremacy in this area, but allows
> for the application of state law regarding physician-patient privilege if the
> state law is more protective of patients' privacy rights. In the context of
> litigation that, as here, involves nonparty patients' privacy, HIPAA requires
> only notice to the patient to effectuate disclosure **whereas Michigan law
> grants the added protection of requiring patient consent before
> disclosure of patient information**. Because Michigan law is more
> protective of patients' privacy interests in the context of this litigation,
> Michigan law applies to plaintiff's attempted discovery of defendant's patient
> information.

*Meier v. Awaad*, 832 N.W.2d 251, 258 (Mich. Ct. App. 2013) (quoting *Isidore
Steiner v. Bonanni*, 807 N.W.2d 902, 904 (Mich. Ct. App. 2011)) (emphasis
added).

*HG
HB*

Therefore, despite the fact that a Qualified Protective Order has been entered by

this Court, HIPAA does not excuse the PSC's attempts to violate state law.  HIPAA was

not meant to control or diminish a physician-patient privilege created under state law.

## IV.    Public Policy Favors Enforcement of Michigan's Physician-Patient Privilege

Lastly, MPS submits that Michigan's strong public policy in protecting the rights of Michigan patients must not be overlooked or undermined simply because others have decided to pursue federal court litigation.  If MPS is compelled to violate state law and provide the requested patient information, such a policy will have a chilling effect on a patient's willingness to have open and forthright conversations with his or her doctors in Michigan, thereby hindering patient care or even a patient's willingness to seek out medical care under certain circumstances.  This protection granted to the citizens of Michigan is significant.  As stated by the Michigan Court of Appeals:

> Here, protecting the interests of the nonparty patients is of **utmost importance**.  The nonparty patients who defendant allegedly treated confided in defendant with personal information, including the fact that they were treated at all, which should not be disclosed without their consent. Moreover, these patients are not in a position to waive their rights. Nothing in the record shows that they are aware of this case or were given the right to decide the issue. Thus, the public policy underlying both HIPAA and Michigan's physician-patient privilege supports applying Michigan law, specifically because there are only limited exceptions to Michigan's general nondisclosure requirement and there is no Michigan rule for nonconsensual disclosure of nonparty patients in judicial proceedings as in HIPAA.

*Isidore Steiner*, *supra*, 807 N.W.2d at 902 (emphasis added).

Michigan's choice to protect its citizens and to encourage honest conversations between medical providers and patients should not be overridden simply because others have chosen to file a federal lawsuit.  State law should properly be applied and enforced in this instance.  *Erie v. Tompkins*, 58 S. Ct. 817, 822 (1938).

*HG*
*HB*

9

## CONCLUSION

Based on the foregoing, MPS respectfully requests that the subpoena served upon it by the PSC be quashed for all of the reasons set forth in its original objections filed with this Court.

Respectfully submitted,

**HACKNEY GROVER HOOVER & BEAN**

Dated:  7/26/2013

/s/ Randy J. Hackney
Randy J. Hackney (P28980)
C. Mark Hoover (P27574)
Sandra J. Lake (P54288)
Hackney, Grover, Hoover & Bean, PLC
1715 Abbey Road, Suite A
East Lansing, MI 48823
rhackney@hghblaw.com
mhoover@hghblaw.com
slake@hghblaw.com
(517) 333-0306
(517) 333-0319 (facsimile)

Attorneys for Michigan Pain Specialists

## CERTIFICATE OF SERVICE

This will certify that a true and accurate copy of the foregoing was served on all parties hereto by virtue of the Court's electronic filing system this 26th day of July, 2013.

Sandra J. Lake

*HG*
*HB*

Exhibit 1

MARC E. LIPTON
JODY B. LIPTON

LIPTON LAW
THE EDGE YOU NEED

KIMBERLY NORMAN
NICOLE K. FREY
CHRIS J. CAMPER

STEFFANI CHOCRON
RONALD K. WEINER
KYLE J. KELLY

*Of Counsel*
WILLIAM LIPTON

June 21, 2013

Michigan Pain Specialists
c/o Registered Agent, John W. Chatas
135 South Prospect Street
Ypsilanti, Michigan 48198

     *Re:*   *New England Compounding Center Litigation, MDL No. 2419*

Dear Mr. Chatas:

     Enclosed please find a press release and Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action issued to Michigan Pain Specialists in regard to the above referenced matter.

     If you have any questions or concerns, please feel free to contact me. I look forward to speaking with you.

                     Sincerely,

                     MARC LIPTON
                     marc@liptonlaw.com

MEL/jef
Enclosure
Cc via electronic mail:    Randy Hackney
                      David Thomas
                      Rob Sickels
                      Thomas Sobol

Exhibit 1

AO 88B  (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### District of Massachusetts

| | | |
|---|---|---|
| In re New England Compunding Pharmacy, Inc. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   MDL 1:13-md-02419 |
| | ) | |
| | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  Michigan Pain Specialists – Brighton Location c/o Registered Agent, John W. Chatas 135 South Prospect Street
Ypsilanti, Michigan 48198

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following
documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the
material:

See Exhibit A

| Place: Marc E. Lipton, Lipton Law, 18930 West Ten Mile Road, Suite 3000, Southfield, Michigan 48075 | Date and Time: 07/15/2013 5:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or
other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party
may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule
45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are
attached.

Date:    06/21/2013

CLERK OF COURT

OR

_____        /s/ Marc E. Lipton
*Signature of Clerk or Deputy Clerk*        *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*
Plaintiffs' Steering Committee _____, who issues or requests this subpoena, are:

Marc E. Lipton, Lipton Law, 18930 West Ten Mile Road, Suite 3000, Southfield, Michigan 48075, marc@liptonlaw.com

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  MDL 1:13-md-02419

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____.

□ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

□ I returned the subpoena unexecuted because: _____

_____.

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____.

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____         _____
                                            *Server's signature*

                                   _____
                                            *Printed name and title*

                                   _____
                                            *Server's address*

Additional information regarding attempted service, etc:

AO 88B  (Rev.  06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## Exhibit A to Subpoena

1.      Any and all documents and/or electronically stored information ("ESI") reflecting, and/or related in any way whatsoever to, the procurement of methylprednisolone acetate ("MPA") and any other injectable steroid preparations from New England Compounding Pharmacy, Inc. ("NECP") during the two-year period immediately preceding October 6, 2012, including without limitation of the foregoing, information reflecting dates of shipment and/or receipt, quantities of shipment, lot numbers and other identifying labels, sizes of containers of steroid preparation, the cost you paid for the steroid preparation, applicable warranties, shelf life, expiration dates, requirements and instructions for shipment and/or storage, and the specific identity of the preparation being purchased. Also including account information, prescriptions submitted to NECP, prescription order forms, NECP charges for MPA (before and after any discounts applied).

2.      Any and all documents and/or ESI reflecting, and/or related in any way whatsoever to, the procurement of MPA, or its generic or name-brand equivalent, from any producer, compounding facility or manufacturer other than NECP, since October 6, 2007, including without limitation of the foregoing, information reflecting dates of shipment and/or receipt, quantities of shipment, lot numbers and other identifying labels, sizes of containers of the product, the cost you paid for the product, applicable warranties, shelf life, expiration dates, requirements and instructions for shipment and/or storage, and the specific identity of the preparation being purchased.

3.      Any and all documents and/or ESI reflecting, and/or related in any way whatsoever to, the procurement of cardioplegic solution from NECP during the two-year period immediately preceding October 6, 2012, including without limitation of the foregoing, information reflecting dates of shipment and/or receipt, quantities of shipment, lot numbers and other identifying labels, sizes of containers of cardioplegic solution, the cost you paid for the cardioplegic solution, applicable warranties, shelf life, expiration dates, and requirements and instructions for shipment and/or storage.  Also including prescriptions submitted to NECP, prescription order forms, NECP charges for cardioplegic solution (before and after any discounts applied).

4.      Any and all documents and/or ESI reflecting, and/or related in any way whatsoever to, the procurement of ophthalmic solution from NECP during the two-year period immediately preceding October 6, 2012, including without limitation of the foregoing, information reflecting dates of shipment and/or receipt, quantities of shipment, lot numbers and other identifying labels, sizes of containers of ophthalmic solution, the cost you paid for the ophthalmic solution, applicable warranties, shelf life, expiration dates, and requirements and instructions for shipment and/or storage.  Also including prescriptions submitted to NECP, prescription order forms, NECP charges for opthalmic solution (before and after any discounts applied).

5.      Any and all documents and/or ESI reflecting, and/or related in any way whatsoever to, the procurement of preservative-free saline solution from NECP during the two-year period immediately preceding October 6, 2012, including without limitation of the

foregoing, information reflecting dates of shipment and/or receipt, quantities of shipment, lot numbers and other identifying labels, sizes of containers of saline solution, the cost you paid for the saline solution, applicable warranties, shelf life, expiration dates, and requirement and instructions for shipment and/or storage.  Also including prescriptions submitted to NECP, prescription order forms, NECP charges for preservative-free saline solution (before and after any discounts applied).

6.     Any and all documents and/or ESI reflecting, and/or related to, the identification of each and every patient that was administered an NECP product during the two-year period immediately preceding October 6, 2012, including patient name, address, date of birth, identification of product administered, and date product was administered.

7.     Any and all documents and/or ESI reflecting or containing communications (written or otherwise) between Michigan Pain Specialists ("Healthcare Provider"), its employees, principals, partners, and/or agents, and NECP, its employees and/or agents, during the two-year period immediately preceding October 6, 2012, including, but not limited to, any complaints or adverse event reports made to NECP by the Healthcare Provider.

8.     Any and all documents and/or ESI reflecting or containing information obtained by the Healthcare Provider, its employees and/or agents, regarding NECP, including without limitation of the foregoing, NECP's qualifications, certifications or accreditations, or lack thereof, regulatory compliance, lack of regulatory compliance, operations, enforcement actions, suitability for conducting its business, legal actions and/or warnings, brochures, policies and procedures, ordering and delivery information company overviews, standard operating procedures, executive summaries, attachments A, B or others (relating to HIPAA, NECP policies and procedures, or other information).

9.     Any and all documents and/or ESI reflecting or containing information obtained by, or communications received by, the Healthcare Provider, its employees and/or agents, concerning the fitness of any products purchased or obtained from NECP for their intended use, during the two-year period immediately preceding October 6, 2012, including but not limited to any environmental testing results, microbiology reports or certificates of analysis.

10.     Any and all documents and/or ESI reflecting or containing information obtained by, or sent to, the Healthcare Provider, its employees and/agents, from the Centers for Disease Control and Prevention, the Federal Food and Drug Administration, and/or any other Federal, state or local regulatory agency, concerning the fitness of any products manufactured, compounded or produced by NECP for their intended purpose.

11.     Any and all documents and/or ESI reflecting or containing communications between the Healthcare Provider and any federal or state agency (including, but not limited to state licensing authorities, the Food and Drug Administration, and the Centers for Disease Control and Prevention) in connection with the procurement of products from any compounding pharmacy.

{004663/12496/00290939.DOCX / Ver.1}

12.     Any and all documents and/or ESI reflecting or containing marketing information from NECP, NECP's agents, or any sales company or person marketing, selling, or attempting to sell products on behalf of NECP.

13.     Any and all documents and/or ESI reflecting or containing agreements, contracts and/or warranties between the Healthcare Provider and NECP, NECP's agents, or any sales company or person marketing, selling, or attempting to sell products on behalf of NECP.

14.     Any and all documents and/or ESI reflecting or containing recall notices received by the Healthcare Provider pertaining to products produced by NECP, including without limitation of the foregoing, the date, time and manner of receipt of the recall notices, the specific person or persons within the Healthcare Provider who received the notice, and the substance of the notice.

15.     Any and all documents and/or ESI reflecting or containing communications made or issued by the Healthcare Provider, its employees and/or agents, in response to any recall notice regarding NECP products, including without limitation of the foregoing, the date, time and manner of transmission of the communication, the person(s) to which the communication was directed, and the person at the Healthcare Provider who made or delivered the communication.

16.     Any and all documents regarding any investigation or inquiry the Healthcare Provider performed related to attempts by NECP to comply with United States Pharmacopeia – National Formulary, Chapter 797 (USP – NF General Chapter 797, entitled "Pharmaceutical Compounding – Sterile Preparations").

17.     Any and all policies of insurance, including without limitation of the foregoing, professional liability, malpractice, products liability, general liability, and comprehensive or umbrella policies, issued to the Healthcare Provider and/or its principal officers and directors and/or any physician working for or on behalf of the Healthcare Provider, for the policy periods including calendar years 2011, 2012 and 2013.

18.     Articles of Incorporation and/or By-Laws applicable to the Healthcare Provider for calendar years 2011, 2012 and 2013.

19.     Any and all documents and/or ESI reflecting or containing the names, addresses and positions (President, Vice-President, Director, etc.) within the Healthcare Provider of all officers and directors of the Healthcare Provider during the calendar years 2011, 2012 and 2013.

20.     Any and all documents showing the entities or individuals with an ownership interest in the Healthcare Provider.

21.     Any and all organizational charts maintained by the Healthcare Provider and/or any documents listing directors, officers, employees, and/or agents of the Healthcare Provider showing the names and positions of said directors, officers, employees, and/or agents and their relationship or rank within the Healthcare Provider.

## MICHIGAN PAIN SPECIALISTS SERVED WITH SUBPOENA IN LITIGATION INVOLVING MENINGITIS OUTBREAK

### Discovery begins in cases consolidated in U.S. District Court in Massachusetts

FOR IMMEDIATE RELEASE:  June 21, 2013
CONTACT: Rob B. Sickles, Telephone: 248-266.2536, E-mail: rsickels@sommerspc.com

(Brighton, MI)  June 21, 2013.  Today Michigan Pain Specialists, a pain management clinic in Brighton, was served with a subpoena requiring it to turn over documents in its possession that could shed light on allegations that its patients received injections of tainted medication that led to serious illness.

The subpoena originated in the U.S. District Court for the District of Massachusetts, which is overseeing the consolidation of most cases in Federal and state court alleging personal injury or wrongful death as a result of the contaminated injections.  The subpoena was issued by attorneys working in conjunction with a seven-member Plaintiffs' Steering Committee appointed by the District Court to initiate, coordinate and conduct all pretrial discovery of plaintiffs in all actions pending in that court.  The purpose of the subpoena is to investigate facts material to ongoing proceedings in the consolidated cases in Massachusetts, and does not necessarily indicate wrongdoing on the part of the clinic.  The issuance of the subpoena should not be interpreted as an allegation of wrongdoing on the part of the clinic.

Michigan Pain Specialists was one of many clinics nationwide identified by the Centers for Disease Control and Prevention (CDC) as having purchased and administered vials of contaminated methylprednisolone acetate ("MPA") that were produced by New England Compounding Pharmacy, Inc. (NECP) of Framingham, Massachusetts.  This is one of many subpoenas being served nationwide on most of the approximately 76 clinics across the country that have been identified as having dispensed NECP products.  The CDC has reported 264 cases of fungal meningitis infection, linked to the tainted compound, in the State of Michigan alone.

The subpoena requires Michigan Pain Specialists to produce for examination or copying, documents and communications between the clinic and NECP, including information reflecting purchasing decisions, items purchased, dates, quantities, pricing, storage of the medication and more.

According to Rob B. Sickles, this subpoena signals the next step of an ongoing investigation of the role clinics like Insight Imaging played in the distribution of contaminated medication.  "We believe the information we receive from Insight Imaging will help us understand how the outbreak of fungal meningitis infections occurred," Rob B. Sickles said.

The outbreak of fungal meningitis infections is the worst such outbreak in U.S. history.  The CDC has recorded more than 700 infections nationwide, and has not ruled out the possibility that this number will continue to grow.

As a result of the large number of actual and anticipated civil lawsuits arising from the outbreak, NECP filed for reorganization under Chapter 11 of the United State Bankruptcy Code, in the U.S. Bankruptcy Court in Massachusetts, on December 21, 2012.  On February 12, 2013, the United States Judicial Panel on Multidistrict Litigation ordered the consolidation of all Federal cases in the U.S. District Court in Massachusetts.

On April 9, 2013 the Hon. F. Dennis Saylor, IV, presiding United States District Court Judge, appointed the Plaintiffs' Steering Committee, of which Thomas M. Sobol, an attorney with the firm Hagens Berman Sobol Shapiro LLP, is lead counsel.  Rob B. Sickles is working with the Plaintiffs' Steering Committee to organize the litigation in the State of Michigan.