UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                              :

IN RE:  NEW ENGLAND COMPOUNDING  :   MDL No. 2419
PHARMACY, INC. PRODUCTS LIABILITY :   Master Dkt. No.:  1:13-md-02419-FDS
LITIGATION

                              :   **NON-PARTY INTERVENTIONAL**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - :   **SPINE & SPORTS MEDICINE, PC'S**
                              :   **SUPPLEMENT TO OBJECTIONS**
THIS DOCUMENT RELATES TO:     :   **TO SUBPOENA**

ALL ACTIONS                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

      Pursuant to the Court's Docket Order, dated July 18, 2013, non-party Interventional Spine

& Sports Medicine, PC ("ISSM"), by and through its attorneys, Golenbok Eiseman Assor Bell &

Peskoe LLP, respectfully supplements its Objections to Plaintiffs' Steering Committee's ("PSC")

subpoena to ISSM (the Subpoena") on the ground that the Subpoena violates the physician-

patient privilege under Connecticut law.  In support of this supplement to ISSM's Objections,

ISSM joins in, and incorporates herein by reference, the memoranda of even date herewith filed

on behalf of Michigan Pain Specialists, PLLC ("MPS") [Docket No. 347] and Neuromuscular

and Rehabilitation Associates of Northern Michigan ("NRANM") [Docket No. 348], with

respect to the law and arguments therein that are equally applicable to ISSM, as set forth below.[1]

### INTRODUCTION

      As set forth in ISSM's Objections to the Subpoena, dated July 24, 2013 [Docket No.

345], at all relevant times, ISSM was a one-physician practice located only in Connecticut.  It is

not a party to the MDL.  Additionally, none of ISSM's patients is a party in the MDL or any

related action.

---

[1] ISSM also continues to assert, and incorporates herein, all of its other objections to the Subpoena set forth in its
Objections, dated July 24, 2013, including, among all of its other objections, its objections on the grounds of
improper service.

On July 12, 2013, PSC issued the Subpoena to ISSM by certified mail.[2]  The Subpoena

seeks, among other things:

- Any and all documents and/or ESI reflecting, and/or related to, the identification of each and every patent that was administered an NECP product during the two-year period immediately preceding October 6, 2012, including patient name, address, date of birth, identification of product administered, and date product was administered [Request No. 6]; and

- Any and all documents and/or ESI reflecting or containing communications made or issued by the Health Care Provider, its employees and/or agents, in response to any recall notice regarding NECP products, including without limitation of the foregoing, the date, time and manner of transmission of the communication, the person(s) to which the communication was directed, and the person at the Health Care Provider who made or delivered the communication [Request No. 15].

ISSM served and filed Objections to the Subpoena on July 24, 2013, including, among

other objections, that the Subpoena seeks information protected by the physician-patient privilege

codified in Connecticut General Statute ("C.G.S.") 52-146o.  ISSM supplements that objection

herein.

## STANDARDS FOR REVIEW AND APPLICATION OF
## STATE PHYSICIAN-PATIENT PRIVILEGES

ISSM joins in, and incorporates herein by reference, the law and argument concerning the

standards for review and application of state physician-patient privileges set forth in the

memoranda of even date herewith filed on behalf of MPS and NRANM.  In particular, ISSM

joins in the following points:

- Under FRCP 45(c)(3), the Court is required to quash a subpoena if it seeks the disclosure of privileged matters for which no exception or waiver applies.

- An MDL Judge, for purposes of enforcing a subpoena, acts as a judge of the district in which the discovery is sought, and thus must apply the law applicable in

---

[2] Due to a clerical error, ISSM did not attach a copy of the Subpoena to its July 24, 2013 Objections.  A copy of the Subpoena and the cover letter from PSC enclosing same are attached hereto as Exhibit 1.

1824137.2

that district.  Therefore, for purposes of deciding whether a state privilege applies, the Court must apply the law of the state in which the discovery is sought.

- HIPAA does not preempt state law on the issue of the physician-patient privilege where state law is more stringent than HIPAA.

PSC's Subpoena to ISSM was sent by certified mail to ISSM in Connecticut and seeks ISSM's deposition and production of documents in Connecticut, and thus this Court is sitting as a Judge in the United States District Court for the District of Connecticut in deciding whether to enforce or quash the Subpoena, and Connecticut's physician-patient privilege law applies.

Moreover, as set forth below, Connecticut's physician-patient privilege is more stringent than HIPPAA with respect to disclosure of the information sought by the Subpoena, and thus it is not preempted by HIPPA.

## THE SUBPOENA VIOLATES THE CONNECTICUT PHYSICIAN-PATIENT PRIVILEGE

The Connecticut physician-patient privilege is codified in C.G.S. § 52-146o.  Absent certain exceptions that are not applicable here, that statute prohibits a physician from disclosing in a civil action any patient information obtained "with respect to any actual or supposed physical or mental disease or disorder" or "by personal examination of a patient" without the patient's explicit consent.  In particular, C.G.S. § 52-146o states:

> (a) Except as provided in sections 52-146c to 52-146j, inclusive[3], and subsection (b) of this section, in any civil action or any proceeding preliminary thereto or in any probate, legislative or administrative proceeding, a physician or surgeon, as defined in subsection (b) of section 20-7b, shall not disclose (1) any communication made to him by, or any information obtained by him from, a patient or the conservator or guardian of a patient with respect to any actual or supposed physical or mental disease or disorder, or (2) any information obtained by personal examination of a patient, unless the patient or his authorized representative explicitly consents to such disclosure.

---

[3] Sections 52-146c to 52-146j relate to communications between a psychologist or psychiatrist and patient, and thus are not applicable here.

1824137.2

(b) Consent of the patient or his authorized representative shall not be required for the disclosure of such communication or information (1) pursuant to any statute or regulation of any state agency or the rules of court, (2) by a physician, surgeon or other licensed health care provider against whom a claim has been made, or there is a reasonable belief will be made, in such action or proceeding, to his attorney or professional liability insurer or such insurer's agent for use in the defense of such action or proceeding, (3) to the Commissioner of Public Health for records of a patient of a physician, surgeon or health care provider in connection with an investigation of a complaint, if such records are related to the complaint, or (4) if child abuse, abuse of an elderly individual, abuse of an individual who is physically disabled or incompetent or abuse of an individual with intellectual disability is known or in good faith suspected.

The purpose of Connecticut's physician-patient privilege is "to protect the confidentiality of communications in order to foster the free exchange of information from patient to physician." *Edelstein v. Dept. of Public Health & Addiction Servs.*, 240 Conn. 658, 666 (Conn. 1997). As held by the Connecticut Supreme Court, "[t]he statute provides that a health care provider shall not disclose patient information in their files without the patient's explicit consent." *Jarmie v. Troncale*, 306 Conn. 578, 607 (Conn. 2012).

> The protection offered by Section 52-146o(a) is very broad. . . . The text of the statute applies to "any communication" from the patient to the doctor; there is no requirement that the communication be confidential. Moreover, the privilege includes "any information" and is not limited to communications. Lastly, there is no requirement that the communication or information be obtained for the purpose of treatment.

*Thopsey v. Bridgeport Roman Catholic Diocesan Corp.*, No. NNHCV106009360S, 2012 WL 695624, at *6 (Conn. Super. Feb. 15, 2012) (internal citations omitted).

Accordingly, the Subpoena's request for "[a]ny and all documents and/or ESI reflecting, and/or related to, the identification of each and every patient that was administered an NECP product during the two-year period immediately preceding October 6, 2012, including patient name, address, date of birth, identification of product administered, and date product was administered" [Request No. 6], violates the Connecticut physician-patient privilege because all

4

information responsive to that request is, at a minimum, "information obtained by [ISSM] from, a patient" in connection with treatment.  C.G.S. 52-146o.  The Subpoena's request for "[a]ny and all documents and/or ESI reflecting or containing communications made or issued by the Health Care Provider, its employees and/or agents, in response to any recall notice regarding NECP products" [Request No. 15] also falls within the privilege to the extent the request seeks communications with patients.

Moreover, the Connecticut physician-patient privilege is not preempted by HIPAA because, while HIPAA allows for the disclosure of patient information after notice is given to the patient and/or other procedures are established, Connecticut law requires explicit patient consent. Thus, the Court's Order Granting Plaintiffs Leave to Serve Subpoenas and Qualified Protective Order Regarding Protection of Health Information, dated June 21, 2013, does not provide any basis or safe harbor for the production of patient information or communications covered by the Connecticut attorney-client privilege.

1824137.2

## CONCLUSION

For the reasons set forth herein and in the memoranda of even date herewith filed on behalf of MPS and NRANM, ISSM objects to the production of, and should not be required to produce, patient information or communications.   ISSM also continues to assert, and incorporates herein, all of its other objections to the Subpoena set forth in its Objections, dated July 24, 2013, including, among all of its other objections, its objections on the grounds of improper service of the Subpoena.

Dated:   New York, New York
        July 26, 2013

GOLENBOCK EISEMAN ASSOR BELL
& PESKOE LLP

By: _____
        Martin S. Hyman
        Matthew C. Daly

437 Madison Avenue
New York, New York 10022
(212) 907-7300

*Attorneys for Non-Party Interventional*
*Spine & Sports Medicine, PC*

6

1824137.2

## <u>CERTIFICATE OF SERVICE</u>

I, Matthew C. Daly, hereby certify that on July 26, 2013, a true and correct copy of the foregoing was served on all parties of record by virtue of the Court's electronic filing system.

Dated: July 26, 2013

_____
Matthew C. Daly

1824137.2

# EXHIBIT 1

07/15/2013 MON 17:00  [TX/RX NO 7984]  ☑002



Daniel L. Crandall*
Peter A. Katt
Danny D. Ashwell, Jr.
Patrick T. Fennell**
D. Adam McKelvey
William C. Pattisall***
John F. Pyle
David J. Crandall

* also admitted in Washington, DC
** also admitted in West Virginia
*** also admitted in North Carolina

# Crandall & Katt
Attorneys & Counselors at Law
366 Elm Avenue, S.W., Roanoke, Virginia 24016
July 12, 2013

Telephone:
540-342-2000
Facsimile:
540-345-3527
Email:
info@crandalllaw.com

**Certified Mail: 7012 1010 0002 6657 6248**

**Interventional Spine & Sports Medicine, PC**
**Attn: Bhavesh R. Patel, President**
**1625 Straits Turnpike, Suite 205**
**Middlebury, CT 06762**

    Re:    New England Compounding Center Litigation, MDL No. 2419

To Whom It May Concern,

    As you are aware, last year New England Compounding Pharmacy, Inc. d/b/a the New England Compounding Center ("NECC") distributed tainted medication to various clinics throughout the country and specifically in Connecticut. Hundreds, if not thousands, of patients have been injured as a result of exposure to tainted NECC products. The most recent Center for Disease Control reports confirm that over 700 patients have confirmed illnesses related to their exposure to tainted NECC pharmaceuticals and over 240 people have confirmed cases of meningitis. Fifty-eight people have died.

    According to the CDC, Interventional Spine & Sports Medicine, PC purchased and received preservative free methylprednisolone actetate from at least one of the three contaminated lots distributed by NECC.

    The Judicial Panel on Multidistrict Litigation created a multi-district litigation forum in the United States District Court for the District of Massachusetts to address federal lawsuits alleging harm related to products manufactured by NECC (No. 1:13-md-2419-FDS). The Honorable Judge Saylor appointed seven firms to the Plaintiffs' Steering Committee (PSC) and appointed Thomas M. Sobol of Hagens Berman Sobol Shapiro LLP as Lead Counsel.

    Lead Counsel and the PSC are charged with:

010337-13 616206 V1

07/15/2013 16:28 FAX  203 598 0200    Dr. Patel    ☑0002/0017

1.  Initiating, coordinating, and conducting all pretrial discovery on behalf of plaintiffs in all actions subject to this order;

2.  Developing and proposing to the Court schedules for the commencement, execution, and completion of all discovery on behalf of all plaintiffs;

3.  Issuing in the name of all plaintiffs the necessary discovery requests, motions, and subpoenas concerning any witnesses and documents needed to prepare for the trial of this litigation (similar requests, motions, and subpoenas may be caused to be issued by the PSC upon written request by an individual attorney in order to assist him or her in the preparation of the pretrial stages of his or her client's particular claims); and

4.  Conducting all discovery, by members or their designees approved by Lead Counsel, in a coordinated and consolidated manner on behalf and for the benefit of all plaintiffs.

NECC has filed for reorganization under Chapter 11 of the Bankruptcy Code. Lead Counsel and the PSC are coordinating their efforts with the Official Creditor's Committee and its counsel, and will share with the Creditor's Committee all appropriate information that you produce in response to the subpoena. The PSC and Lead Counsel are committed to working hand-in-hand with the Official Creditors' Committee. Lead Counsel and the Creditors' Committee will be involved in any settlement discussions.

Lead Counsel and the PSC have designated me, Patrick T. Fennell of Crandall & Katt, to handle the day-to-day litigation of claims against Interventional Spine & Sports Medicine, PC.

I have enclosed a subpoena requesting information about your purchase, storage, and use of NECC products.

The subpoena requests some information that is protected under the Health Insurance Portability and Accountability Act of 1996 (HIPAA) and other privacy laws. Judge Saylor has entered an order in the MDL governing the production of this protected health information. (Dkt. No. 192)  We have identified a HIPAA-compliant vendor to receive (only) protected health information that is responsive to this subpoena. (Dkt No. 237)

Judge Saylor has entered an order confirming that he will centrally enforce all subpoenas and instructing subpoena recipients to file any objections or motions to quash directly into the MDL. (Dkt. No. 193) Judge Saylor will hear any objections to subpoenas at the July 18, 2013 MDL status conference. (Dkt. No. 193).

010337-13  616206 V1

07/15/2013 MON 17:00   [TX/RX NO 7984]   ☑004

Thank you.  Please contact me at (540) 342-2000 with any questions.

Very truly yours,

**CRANDALL & KATT**
**Attorneys and Counselors at Law**

Patrick T. Fennell, Esq.

PTF/cmh
Enclosures

010337-13  616206 V1

07/15/2013 MON 17:00 [TX/RX NO 7984] ☑005

AO 88A (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

### for the

### District of Massachusetts

| | | |
|---|---|---|
| In re: New England Compounding Pharmacy, Inc. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   MDL 1:13-md-02419 |
| | ) | |
| | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:  Interventional Spine & Sports Medicine, PC; C/O: Bhavesh R. Patel, Registered Agent
    1625 Straits Turnpike, Suite 205, Middlebury, CT 06762

☑ *Testimony:*  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

See Exhibit A

| Place: Interventional Spine & Sports Medicine, PC | Date and Time: |
|---|---|
| 1625 Straits Turnpike, Suite 205 Middlebury, CT 06762 | 08/02/2013 9:00 am |

The deposition will be recorded by this method:   Stenographically and/or Videographically

☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

See Exhibit B

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:  _07/12/2013_

| *CLERK OF COURT* | | |
|---|---|---|
| _____ | OR | _____ |
| Signature of Clerk or Deputy Clerk | | Attorney's signature |

The name, address, e-mail, and telephone number of the attorney representing *(name of party)* _____
Plaintiffs' Steering Committee _____ , who issues or requests this subpoena, are:
Patrick T. Fennell, Crandall & Katt, 366 Elm Avenue, SW, Roanoke, Virginia 24016

☑0005/0017                                 Dr. Patel                 07/15/2013 16:29 FAX 203 598 0200

AO 88A (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.  MDL 1:13-md-02419

### PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)*   Interventional Spine & Sports Medicine, PC

was received by me on *(date)*   07/12/2013

☑ I served the subpoena by delivering a copy to the named individual as follows:  Certified Mail to

Bhavesh R. Patel, President, 1625 Straits Turnpike, Suite 205, Middlebury, CT 06762

on *(date)*   07/12/2013   ; or

☐ I returned the subpoena unexecuted because:

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00

I declare under penalty of perjury that this information is true.

Date:   07/12/2013

*Patrick T. Fennell*
*Server's signature*

Patrick T. Fennell, Esq.
*Printed name and title*
The Law Office of Crandall & Katt
366 Elm Avenue, SW
Roanoke, Virginia 24016

*Server's address*

Additional information regarding attempted service, etc:

AO 88A (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

07/15/2013 MON 17:00   [TX/RX NO 7984]   ☒008

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE: NEW ENGLAND | ) | |
| COMPOUNDING PHARMACY, INC. | ) | MDL No. 1:13-md-02419 |
| PRODUCTS LIABILITY LITIGATION | ) | |
| | ) | Hon. F. Dennis Saylor, IV |
| This Document Relates To: All Cases | ) | |
| | ) | |

## NOTICE OF TAKING VIDEOTAPED ORAL DEPOSITION OF DESIGNATED REPRESENTATIVE(S) OF NON PARTY INTERVENTIONAL SPINE & SPORTS MEDICINE, PC

Please take notice that on August 9, 2013 beginning at 9:00 a.m. at the offices of Interventional Spine & Sports Medicine, PC, 1625 Straits Turnpike, Suite 205, Middlebury, CT 06762 the deposition of a designated corporate representative will be taken upon oral examination by one or more attorneys of the Plaintiffs' Steering Committee in the pending MDL, pursuant to Rule 30 of the Federal Rules of Civil Procedure for the purpose of discovery or for use as evidence in this action, and before an officer authorized by law to administer oaths.

PLEASE TAKE FURTHER NOTICE that pursuant to Rules 30 and 34 of the Federal Rules of Civil Procedure, the non-party deponent(s) shall produce at the deposition the documents identified in Exhibit B.

**Duty to designate.** By designating a representative, the organization indicates its representative has the authority to speak on its behalf about the matters listed in this deposition notice – not only to facts, but also to subject beliefs and opinions.[1]

---

[1] *Lapenna v. Upjohn Co.,* 110 F.R.D. 15, 20 (E.D. Pa. 1986); *See also Alexander v. Fed Bureau of Investigation,* 186 F.R.D. 148, 151-52 (D.D.C. 1999); *Mitsui & Co. v. Puerto Rico Water Res. Autho.,*93 F.R.D. 62, 66-67 (D.P.R. 1981).

**Duty to substitute.**  If it becomes clear that the chosen representative is unable to respond to questions on the matters for which he or she has been designated, the organization must immediately provide a substitute knowledgeable witness.  This is required even if the initial designation was made in good faith. [2]

**Duty to prepare.** The testimony elicited in the deposition represents the organization's knowledge, not the individual deponent's knowledge. The organization must conduct a thorough investigation in response to the deposition notice and must prepare any witness to testify to all matters "known or reasonably available to the organization." Therefore, if the organization's designee is not knowledgeable about the matters specified in the deposition notice, it must nonetheless prepare such designee to give knowledgeable, binding answers.[3]

"Reasonably available" information includes all documents that the organization has the authority, legal right, or practical ability to obtain.   An inadequately prepared designated witness will amount to an impermissible refusal to answer and a sanctionable failure to appear. [4]

**Scope of inquiry**  The description contained  in the deposition notice simply identifies the minimum to which a witness must be prepared to testify.  If an examining

---

[2] *See Marker v. Union Fidelity Life,* 125 F.R.D. 121, 126 (M.D.N.C. 1989).

[3] *United States v. Taylor,* 166 F.R.D. 356, 361 (M.D.N.C. 1996) .

[4] *Prokosch v. Catalina Lighting, Inc.,* 193 F.R.D. 633, 637 (D. Minn. 2000) (citing *Lumber v. PPG Industries, Inc.,* 168 F.R.D. 641, 643 n. 1 (D. Minn. 1966); *See Black Horse Lane Assoc., L.P. v. Dawn Chem. Corp.,* 228 F. 3d 275, 303-04 (3d Cir. 2000); *Resolution Trust Corp. v. S. Union Co.,* 985 F. 2d 196, 197 (5th Cir. 1993); *Taylor,* 166 F.R.D. at 363; *Marker v. Union Fidelity Life Ins. Co.,* 125 F.R.D. 121, 126 (M.D.N.C. 1989).

party asks questions outside the scope of the matters described in the notice, the general deposition rules govern.

## DESIGNATION OF TESTIMONY AND PRODUCTION OF DOCUMENTS

The designated matters upon which examination is requested are as follows:

1. To provide testimony regarding those individuals involved in the production of documents.

2. To provide testimony regarding the efforts made and the time expended in the production of documents.

3. To provide testimony regarding the methods of search and methods of production of documents produced.

4. To provide testimony regarding the authenticity of documents.

5. To provide testimony regarding the methods of storage, entry and use of computer data and the method by which it has been produced.

6. To provide testimony regarding the location and methods of storage of corporate documents.

7. To provide testimony regarding the existence of documents.

8. To provide testimony regarding the electronic creation, duplication and/or storage of the documents.

9. To provide testimony regarding any and all document retention/destruction policies that would relate to any of the documents.

10. To provide testimony regarding the searchability of databases for the extraction of information.

RESPECTFULLY SUBMITTED

*Patrick T. Fennell*

Patrick T. Fennell (VSB 40393)
Crandall & Katt
366 Elm Avenue, S.W.
Roanoke, Virginia 24016
Telephone: 540/342-2000
Facsimile: 540/400-0616
pfennell@crandalllaw.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 12th day of July 2013, a true and

Complete copy of the foregoing was delivered to the following via electronic mail:

SEE ATTACHED SERVICE LIST.

*Patrick T. Fennell*

Patrick T. Fennell (VSB 40393)
Crandall & Katt
366 Elm Avenue, S.W.
Roanoke, Virginia 24016
Telephone: 540/342-2000
Facsimile: 540/400-0616
pfennell@crandalllaw.com

## All Defense Counsel of record in MDL 2419

| Attorney | Email |
| --- | --- |
| Alan Winchester | awinchester@harrisbeach.com |
| Dan Rabinovitz | dmr@michaelsward.com |
| Daniel Tranen | dtranen@hinshawlaw.com |
| Frederick Fern | hbnecc@harrisbeach.com |
| Geoffrey Coan | gcoan@hinshawlaw.com |
| Heidi Nadel | hnadel@toddweld.com |
| Jessica Saunders Eichel | jeichel@harrisbeach.com |
| Judi Abbott Curry | Jcurry@HarrisBeach.com |
| Matthew Moriarty | matthew.moriarty@tuckerellis.com |
| Richard Dean | richard.dean@tuckerellis.com |
| Thomas Coffey | thomas.coffey@tuckerellis.com |
| Matthew Mantalos | mantalos@tsd-lawfirm.com |
| Paul Saltzman | saltzman@tsd-lawfirm.com |
| Scott Kremer | kremer@tsd-lawfirm.com |
| Scott Tucker | tucker@tsd-lawfirm.com |
| Joshua Klarfeld | jklarfeld@ulmer.com |
| Robert Curley | rac@curleylaw.com |
| Kenneth Walton | kwalton@donovanhatem.com |
| Kristen Ragosta | kragosta@donovanhatem.com |
| Melinda Thompson | mthompson@toddweld.com |
| Stephen Grossman | sgrossman@mmwr.com |
| John Lovely | jlovely@cashmanlovely.com |
| Joseph Lang | jlang@lenoxlaw.com |
| Michael Gardner | michael.gardner@leclairryan.com |
| Joseph Thomas | jthomas@ulmer.com |
| Nicki Samson | ns@michaelsward.com |
| Ryan Ciporkin | rciporkin@lawson-weitzen.com |
| Dan Rabinovitz | dmr@michaelsward.com |
| Nicki Samson | ns@michaelsward.com |
| Brady Hermann | bjh@michaelsward.com |
| Chris Hassell | Chassell@bonnerkiernan.com |
| Matthew Moriarty | Matthew.moriarty@tuckerellis.com |

07/15/2013 MON 17:00  [TX/RX NO 7984]  ☑014

# EXHIBIT B

# Exhibit B to Subpoena

1.      Any and all documents and/or electronically stored information ("ESI") reflecting, and/or related in any way whatsoever to, the procurement of methylprednisolone acetate ("MPA") and any other injectable steroid preparations from New England Compounding Pharmacy, Inc. ("NECP") during the two-year period immediately preceding October 6, 2012, including without limitation of the foregoing, information reflecting dates of shipment and/or receipt, quantities of shipment, lot numbers and other identifying labels, sizes of containers of steroid preparation, the cost you paid for the steroid preparation, applicable warranties, shelf life, expiration dates, requirements and instructions for shipment and/or storage, and the specific identity of the preparation being purchased. Also including account information, prescriptions submitted to NECP, prescription order forms, NECP charges for MPA (before and after any discounts applied).

2.      Any and all documents and/or ESI reflecting, and/or related in any way whatsoever to, the procurement of MPA, or its generic or name-brand equivalent, from any producer, compounding facility or manufacturer other than NECP, since October 6, 2007, including without limitation of the foregoing, information reflecting dates of shipment and/or receipt, quantities of shipment, lot numbers and other identifying labels, sizes of containers of the product, the cost you paid for the product, applicable warranties, shelf life, expiration dates, requirements and instructions for shipment and/or storage, and the specific identity of the preparation being purchased.

3.      Any and all documents and/or ESI reflecting, and/or related in any way whatsoever to, the procurement of cardioplegic solution from NECP during the two-year period immediately preceding October 6, 2012, including without limitation of the foregoing, information reflecting dates of shipment and/or receipt, quantities of shipment, lot numbers and other identifying labels, sizes of containers of cardioplegic solution, the cost you paid for the cardioplegic solution, applicable warranties, shelf life, expiration dates, and requirements and instructions for shipment and/or storage.  Also including prescriptions submitted to NECP, prescription order forms, NECP charges for cardioplegic solution (before and after any discounts applied).

4.      Any and all documents and/or ESI reflecting, and/or related in any way whatsoever to, the procurement of ophthalmic solution from NECP during the two-year period immediately preceding October 6, 2012, including without limitation of the foregoing, information reflecting dates of shipment and/or receipt, quantities of shipment, lot numbers and other identifying labels, sizes of containers of ophthalmic solution, the cost you paid for the ophthalmic solution, applicable warranties, shelf life, expiration dates, and requirements and instructions for shipment and/or storage.  Also including prescriptions submitted to NECP, prescription order forms, NECP charges for opthalmic solution (before and after any discounts applied).

5.      Any and all documents and/or ESI reflecting, and/or related in any way whatsoever to, the procurement of preservative-free saline solution from NECP during the two-year period immediately preceding October 6, 2012, including without limitation of the

{004663/12496/00290939.DOCX / Ver.1}

foregoing, information reflecting dates of shipment and/or receipt, quantities of shipment, lot numbers and other identifying labels, sizes of containers of saline solution, the cost you paid for the saline solution, applicable warranties, shelf life, expiration dates, and requirement and instructions for shipment and/or storage.  Also including prescriptions submitted to NECP, prescription order forms, NECP charges for preservative-free saline solution (before and after any discounts applied).

6.    Any and all documents and/or ESI reflecting, and/or related to, the identification of each and every patient that was administered an NECP product during the two-year period immediately preceding October 6, 2012, including patient name, address, date of birth, identification of product administered, and date product was administered.

7.    Any and all documents and/or ESI reflecting or containing communications (written or otherwise) between Interventional Spine & Sports Medicine, PC ("Healthcare Provider"), its employees, principals, partners, and/or agents, and NECP, its employees and/or agents, during the two-year period immediately preceding October 6, 2012, including, but not limited to, any complaints or adverse event reports made to NECP by the Healthcare Provider.

8.    Any and all documents and/or ESI reflecting or containing information obtained by the Healthcare Provider, its employees and/or agents, regarding NECP, including without limitation of the foregoing, NECP's qualifications, certifications or accreditations, or lack thereof, regulatory compliance, lack of regulatory compliance, operations, enforcement actions, suitability for conducting its business, legal actions and/or warnings, brochures, policies and procedures, ordering and delivery information company overviews, standard operating procedures, executive summaries, attachments A, B or others (relating to HIPAA, NECP policies and procedures, or other information).

9.    Any and all documents and/or ESI reflecting or containing information obtained by, or communications received by, the Healthcare Provider, its employees and/or agents, concerning the fitness of any products purchased or obtained from NECP for their intended use, during the two-year period immediately preceding October 6, 2012, including but not limited to any environmental testing results, microbiology reports or certificates of analysis.

10.   Any and all documents and/or ESI reflecting or containing information obtained by, or sent to, the Healthcare Provider, its employees and/agents, from the Centers for Disease Control and Prevention, the Federal Food and Drug Administration, and/or any other Federal, state or local regulatory agency, concerning the fitness of any products manufactured, compounded or produced by NECP for their intended purpose.

11.   Any and all documents and/or ESI reflecting or containing communications between the Healthcare Provider and any federal or state agency (including, but not limited to state licensing authorities, the Food and Drug Administration, and the Centers for Disease Control and Prevention) in connection with the procurement of products from any compounding pharmacy.

12.     Any and all documents and/or ESI reflecting or containing marketing information from NECP, NECP's agents, or any sales company or person marketing, selling, or attempting to sell products on behalf of NECP.

13.     Any and all documents and/or ESI reflecting or containing agreements, contracts and/or warranties between the Healthcare Provider and NECP, NECP's agents, or any sales company or person marketing, selling, or attempting to sell products on behalf of NECP.

14.     Any and all documents and/or ESI reflecting or containing recall notices received by the Healthcare Provider pertaining to products produced by NECP, including without limitation of the foregoing, the date, time and manner of receipt of the recall notices, the specific person or persons within the Healthcare Provider who received the notice, and the substance of the notice.

15.     Any and all documents and/or ESI reflecting or containing communications made or issued by the Healthcare Provider, its employees and/or agents, in response to any recall notice regarding NECP products, including without limitation of the foregoing, the date, time and manner of transmission of the communication, the person(s) to which the communication was directed, and the person at the Healthcare Provider who made or delivered the communication.

16.     Any and all documents regarding any investigation or inquiry the Healthcare Provider performed related to attempts by NECP to comply with United States Pharmacopeia – National Formulary, Chapter 797 (USP – NF General Chapter 797, entitled "Pharmaceutical Compounding – Sterile Preparations").

17.     Any and all policies of insurance, including without limitation of the foregoing, professional liability, malpractice, products liability, general liability, and comprehensive or umbrella policies, issued to the Healthcare Provider and/or its principal officers and directors and/or any physician working for or on behalf of the Healthcare Provider, for the policy periods including calendar years 2011, 2012 and 2013.

18.     Articles of Incorporation and/or By-Laws applicable to the Healthcare Provider for calendar years 2011, 2012 and 2013.

19.     Any and all documents and/or ESI reflecting or containing the names, addresses and positions (President, Vice-President, Director, etc.) within the Healthcare Provider of all officers and directors of the Healthcare Provider during the calendar years 2011, 2012 and 2013.

20.     Any and all documents showing the entities or individuals with an ownership interest in the Healthcare Provider.

21.     Any and all organizational charts maintained by the Healthcare Provider and/or any documents listing directors, officers, employees, and/or agents of the Healthcare Provider showing the names and positions of said directors, officers, employees, and/or agents and their relationship or rank within the Healthcare Provider.