UNITED STATES DISTRICT COURT
DISTRICT COURT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | ) ) ) ) | MDL No. 2419 Dkt. No. 1:13-md-2419 (FDS) |

<u>**NON-PARTY PAIN CONSULTANTS OF WEST FLORIDA'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ITS MOTION TO QUASH AND OBJECTIONS TO PLAINTIFFS' STEERING COMMITTEE'S SUBPOENA**</u>

COMES NOW, Non-party Pain Consultants of West Florida ("PCWF"), and files its Supplemental Brief in Support of its Motion to Quash and Objections to Plaintiffs' Steering Committee's Subpoena, showing this Honorable Court as follows:

## I.   <u>INTRODUCTION</u>

On April 9, 2013, this Court appointed a group of attorneys to act as the Plaintiffs' Steering Committee ("PSC"), which, in regards to matters of discovery, was given the responsibility to initiate, coordinate, and conduct all pretrial discovery needed to prepare for the trial of this litigation on behalf of all plaintiffs.[1] This litigation involves numerous lawsuits against New England Compounding Pharmacy ("NECC") and other named Defendants for the harm caused by three specific lots of preservative-free methylprednisolone acetate produced and distributed by NECP and administered to Plaintiffs.

On June 21, 2013, this Court entered two Orders titled: "Order Granting Plaintiffs Leave to Serve Subpoenas and Qualified Protective Order Regarding Protection of Health Information" ("QPO") and "Order on Central Enforcement of Subpoenas" ("Enforcement Order").[2] These

---

[1] Dkt. No. 82 ¶ 9.
[2] Dkt. No. 192; Dkt. No. 193.

Orders authorized Plaintiffs' Counsel to serve subpoenas on non-party entities listed in NECC's Customer list.[3]

On July 8, 2013, counsel for PCWF, a non-party to this action, acknowledged service of PSC's Subpoena, which attached a list of items for a PCWF representative to bring to the deposition. Among other Requests, PSC asked PCWF to produce the protected and confidential health information of each and every patient who was administered an NECC product. Specifically, Request 6 asked for:

> "Any and all documents and/or ESI reflecting, and/or related to, the identification of each and every patient that was administered an NECP product during the five-year period immediately preceding October 6, 2012, including patient name, address, date of birth, identification of product administered, and date product was administered."[4]

Among other objections, PCWF moved to quash PSC's Subpoena on the grounds that this Request exceeded the bounds of Fed. R. Civ. P. 26(b)(1), as the identities and other protected health information of non-party patients, who were treated by a non-party healthcare provider, were wholly irrelevant to the pending litigation and in violation of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). PCWF objected further to the extent this Request sought information which was confidential, pursuant to Florida law.

In PSC's Consolidated Response to Subpoena Objections, PSC limited Request 6 to lists of patients who received an injection of a medication lot that the CDC determined was contaminated AND to any lists of patients already compiled by a clinic in response to a request from any Federal or State agency, any Grand Jury Subpoena, or any other governmental agency.[5]

---

[3] PCWF was included on NECC's Customer list.
[4] Dkt. No.192 ¶ 6.
[5] Dkt. No. 325, pg. 6.

The PSC stated it needs this information (1) to establish or bolster its liability against NECC, (2) to understand the role clinics, doctors, and/or health care providers played in the unfolding of the NECC-related debacle (including whether they or others share any liability) and (3) for purposes of providing actual notice of the bar date to potential claimants.[6] Further, the PSC stated that identifying all known and reasonably ascertainable personal injury and wrongful death victims was among the most important objective in issuing the subpoenas to non-parties, such as PCWF.[7] Thus, the protected health information will ultimately be used to notice non-party patients who have not yet filed suit and are not parties to this MDL.[8]

On July, 18, 2013, this Court held a Status Conference and heard from non-party objectors and the parties regarding the various motions to quash and objections to the PSC subpoenas. Specifically, this Court heard argument as to whether, under Fed. R. Civ. P. 26 and 45, or otherwise, it may enforce a subpoena seeking non-party patient and medical information intended to assist in the provision of notice to potential claimants in the bankruptcy court. This Court ordered parties and non-parties alike to submit supplemental memoranda concerning this issue.

PCWF, as a non-party to this MDL, maintains that Fed. R. Civ. P. 26(b)(1) and Florida's medical privacy law prohibit PSC from discovering the identities and other confidential medical information of PCWF's non-party patients. Further, PSC's intended use of the health information, to notice non-party patients of bankruptcy proceedings and ascertain additional plaintiffs and defendants, is additional evidence that the discovery of such information would be

---

[6] Dkt. No. 325, pg. 8.
[7] See Dkt. No. 325, pg. 15.
[8] See Dkt. No. 325, pg. 25, fn. 74.

3

improper and in violation of HIPAA, Rule 26(b)(1), and Florida law. As a result, this Court must quash PSC's Request for the medical information of PCWF's non-party patients.

## II. ARGUMENT

### A. PSC's Request For The Medical Information of PCWF's Non-party Patients Is Irrelevant To This MDL And Must Be Quashed

Fed. R. Civ. P. 45 governs discovery of non-parties by subpoena; however, it is well settled that the scope of discovery under a subpoena is the same as the scope of discovery under Fed. R. Civ. P 26(b).[9] Therefore, this Court must examine whether PSC's Request for the medical information of PCWF's non-party patients is relevant under the same standards set forth in Rule 26(b), and subsequently limit the disclosure of such information to medical records which are germane to the issues before this Court.[10]

#### 1. Standard For "Relevancy"

The Federal Rules of Civil Procedure allow discovery of any relevant, non-privileged matter that is relevant to any party's claim or defense.[11] Specifically, Fed.R.Civ. P. 26(b)(1) states:

> **(b) Discovery Scope and Limits.**
>
> **(1) *Scope in General.*** Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. . .

---

[9] Commissariat A L'Energie Atomique v. Samsung Electronics Co., Ltd., 2006 WL 5003562 at *2 (M.D. Fla. 2006)
[10] Id. See generally Bailey v. City of Daytona Beach, 286 F.D.R. 625 at 629 (M.D. Fla. 2012) (limiting the disclosure of plaintiff's personal health information to records which were germane to the issue before the court).
[11] Fed.R.Civ.P. 26(b)(1).

(emphasis added).[12]

Thus, discovery, like all matters of procedure, has ultimate and necessary boundaries, as illustrated in the 2000 Amendment to Fed. R. Civ. P. 26(b)(1), which narrowed the scope of permissible discovery.[13] The Advisory Committee Note to the 2000 Amendment of Rule 26(b)(1) explains that the Committee was concerned with "overbroad discovery" and intended for "the parties and the court to focus on the actual claims and defenses involved in the action."[14] "The Rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings."[15] Thus, Rule 26 has effectively limited the scope of discoverable information to those matters which are relevant to a claim or defense in the pending lawsuit.[16]

The boundaries of Rule 26(b)(1) are best illustrated in Oppenheimer Fund, Inc. v. Sanders, as the Supreme Court of the United States demonstrated how requests for discovery must be relevant to the pending litigation.[17] Although Oppenheimer applied the broader definition of "relevance" prior to the 2000 Amendment to Rule 26(b)(1), the court still held the identities of non-parties were not discoverable and is analogous to this case.

---

[12] Fed.R.Civ.P. 26(b)(1).

[13] See Jeffrey W. Stempel & David F. Herr, Applying Amended Rule 26(b)(1) in Litigation: The New Scope of Discovery, 199 F.R.D. 396 (2001) (stating Amended Rule 26(b)(1) shrinks the scope of discovery from anything relevant to the "subject matter" of the controversy to things relevant to a "claim or defense" interposed by the parties").

[14] Dellacasa, LLC. v. John Moriarty & Associates of Florida, Inc., 2007 WL 4117261 at *1 (S.D. Fla. 2007)(citing Fed.R.Civ.P 26, Advisory Comm. Notes, 2000 Amendment).

[15] Id. (denying motion to compel discovery which concerned information beyond actual claims and defenses in instant case) (emphasis added).

[16] See Henderson v. Holiday CVS, LLC., 269 F.R.D. 682, 685 (S.D. Fla. 2010) (stating the 2000 Amendment to Rule 26 has effectively limited the scope of discoverable information to those matters which are relevant to a claim or defense in the lawsuit).

[17] Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978).

In Oppenheimer, respondents brought a class action on behalf of shareholders to an investment fund.[18] The class proposed by respondents numbered about 121,000 persons; however, approximately 68,000 persons had not received class notice and were not yet members of the class.[19] Thus, respondents sought to depose petitioner's employees to help compile a list of the names and addresses of the remaining members of the plaintiff class from records kept by the petitioner, so that individual notice could be sent.[20]

Nevertheless, the Supreme Court stated the respondents' attempt to obtain the class members' names and addresses through discovery could not be forced into the boundaries of "relevancy," pursuant to Rule 26(b)(1).[21] The Court held the names and addresses of non-parties were not relevant to the subject matter involved in the pending litigation simply because respondents needed the information in order to send the class notice.[22] As a result, the Supreme Court denied respondents' request because respondents did not seek this information for any bearing it might have on the issues in the case before the court.[23]

## 2. PSC's Request For The Identities and Other Medical Information Are Not "Relevant" To The Parties' Claims Or Defenses In This MDL

PSC seeks to use MDL discovery proceedings for the exact reasons which Oppenheimer forbids, which is to discover the identities and addresses of non-parties in an attempt to either notice or add potential non-party claimants to the litigation already pending in this MDL. The PSC does not deny its impermissible motive, as the PSC admitted that identifying all known and reasonably ascertainable personal injury and wrongful death patients was among its most

---

[18] Oppenheimer, 437 U.S. 340 (1978).
[19] Id.
[20] Id.
[21] Id. at 351-52.
[22] Id. at 353-54.
[23] Id. at 352-53.

important objective in issuing the subpoenas to non-parties, and that such information would essentially be used to notice parties who have not yet filed suit.[24]

Thus, similar to Oppenheimer, PSC's discovery request for the identities, addresses, and other medical information of PCWF's non-party patients cannot be forced within the bounds of "relevancy," as such information has no bearing on the individual actions pending among the named parties in this MDL. Furthermore, the circumstances at bar are even further removed from Oppenheimer, as the PSC seeks this information to notice non-parties of a separate and independent proceeding pending in Bankruptcy court, which, compared to Oppenheimer, has even less of a connection to Plaintiffs' individual civil lawsuits pending in the MDL.

Additionally, PSC seeks this information for the impermissible purpose of developing new claims or defenses, as the PSC stated another reason it needs such information is to determine whether non-party providers share any liability.[25] This directly contradicts the purpose of the 2000 Amendment to Rule 26(b)(1).[26]

Although PSC may argue it would be convenient and practical for Plaintiffs to obtain the medical information of PCWF's non-party patients to send notice and add potential claimants, this Court has a duty to limit the scope of discovery to relevant information according to the "reasonable needs of the action."[27] Therefore, as the identities and other health information of PCWF's non-party patients are wholly irrelevant and have no bearing on the parties' claims or defenses which are pending in this MDL, PSC's Request for such information must be quashed. PSC's Request falls outside the scope of legitimate discovery and PSC's responsibility to initiate,

---

[24] See Dkt. No. 325, pg. 15; pg. 25, fn. 74.
[25] See Dkt. No. 325, pg. 8.
[26] Dellacasa, LLC., 2007 WL 4117261 at *1 (S.D. Fla. 2007)(citing Fed.R.Civ.P 26, Advisory Comm. Notes, 2000 Amendment, which signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings).
[27] Id. (citing Fed. R. Civ. P. 26, Advisory Comm. Notes, 2000 Amendment) (emphasis added).

coordinate, and conduct all <u>pretrial discovery</u> needed to prepare for the trial of <u>this litigation</u> on behalf of all <u>plaintiffs</u>.[28]

### B.  PSC's Subpoena Seeks Information Protected by Florida's Medical Privacy Law Without an Adequate Showing to Overcome the Privilege and Must be Quashed

Contrary to the view of the PSC, compliance of HIPAA alone cannot satisfy Florida law, which imposes independent burdens and obligations. HIPAA does not preempt State law where "[t]he provision of State law relates to the privacy of individually identifiable health information and is more stringent than a standard, requirement, or implementation specification" contained in the HIPAA Privacy Rule.[29] Further, the claims in this MDL are state law tort claims, and thus, this court must apply state law privileges.[30] Therefore, this Court must quash PSC's Request for PCWF's non-party patients' health information and comply with Florida's medical privacy law, which stems from the express right to privacy in the Florida Constitution.[31]

### 1.  Florida's Medical Privacy Privilege

In Florida, a patient's medical record and other medical information are deemed confidential under the right to privacy clause contained in Article I, Section 23 of the Florida Constitution.[32] Accordingly, Florida statutes provide certain protections to patients in regards to the disclosure of such information. For example, § 456.057(4) and § 456.057(7)(a) Fla. Stat., require a health care practitioner's employer, such as PCWF, to keep a patient's medical records confidential. Specifically, § 456.057(7)(a) Fla. Stat., states records of examination or treatment by a healthcare practitioner "may not be furnished to, and the medical condition of a patient may

---

[28] <u>See</u> Dkt. No. 82 ¶ 9 (emphasis added).
[29] 45 C.F.R. § 160.203, 160.203(b).
[30] <u>See</u> Fed. R. Evid. 501; <u>State Farm Mut. Ins. Co. v. Kugler</u>, 840 F.Supp.2d 1323, 1329 (S.D. Fla. 2011) (stating federal law governs privileges in federal question cases).
[31] Fed. R. Civ. P. (45)(c)(3)(A)(iii) (requiring the court to quash or modify a subpoena that requires disclosure of privileged or other protected matter, when no exception or waiver applies).
[32] <u>See</u> <u>Kugler</u>, 840 F.Supp.2d at 1327.

not be discussed with, any person other than the patient or the patient's legal representative or other health care practitioners and providers involved in the care or treatment of the patient, except upon written authorization of the patient."[33] Accordingly, Florida statutes provide certain protections to patients whose medical records are being subpoenaed.[34]

Florida law, however, recognizes that these protections are not absolute, and subpoenaed medical records may be disclosed without the patient's written authorization or consent if certain conditions are met.[35] Upon issuance of a subpoena which requests a patient's confidential medical records, the court must proceed with caution and balance the right to discovery in a legal proceeding against the individual's competing privacy interest, to prevent an undue invasion of privacy.[36]

First, in deciding whether a patient's confidential medical information is discoverable, the court must determine whether the information sought is relevant. PCWF has provided this Court with several examples where requests for patients' identities or other medical information was deemed irrelevant, and thus, found to be an unjust invasion of a patient's privacy and not discoverable.[37] Further, although the court may conduct an *in camera* inspection of records to

---

[33] See also § 395.3025(4) Fla. Stat. (providing that a patient's medical records at a licensed facility, such as a hospital, are confidential).

[34] Kugler, 840 F.Supp.2d at 1327.

[35] Estate of Carrillo v. F.D.I.C., 2012 WL 1831596 at *3 (S.D. Fla. 2012) (citing § 456.057 and § 395.3025(4) Fla. Stat.).

[36] Bassette v. Health Management Resources Corp. 661 So.2d 317, 319 (Fla. 2d DCA 1995).

[37] McEnany v. Ryan, 44 So.3d 245, 247 (Fla. 4th DCA 2010) (holding petitioner's privacy right to his medical records must be protected against unwarranted intrusion where plaintiff requested records from non-party providers which were completely unrelated to plaintiff's claims); Colonial Medical Specialties of South Florida, Inc. v. United Diagnostic Laboratories, 674 So.2d 923, 924 (Fla. 4th DCA 1996) (quashing discovery order which compelled petitioner to provide addresses and telephone numbers of 300 non-party patients, as respondent failed to meet its burden to show any need for this discovery which would override the privacy rights of non-party patients in breach of contract action); Haywood v. Samai, 624 So.2d 1154 (Fla. 4th DCA 1993) (holding non-party patient names and telephone numbers were irrelevant to plaintiff's claim that doctor was overextended by too many other patient appointments and would be an invasion of non-party patients' privacy); Bassette, 661 So.2d at 317 (holding plaintiff's father's medical records were irrelevant to the injuries claimed by plaintiff and not discoverable, as plaintiff's father was a non-party).

protect a person's privacy right to his or her medical records, a court may significantly limit its review by requiring a further showing of what records might lead to discoverable evidence, which can substantially reduce, or even eliminate, its burden of inspection.[38]

Second, if relevance of a non-party's medical record is established, prior to ordering production of the records, the party seeking discovery must provide notice to the non-party as required by § 456.057(7)(a)(3). Specifically, § 456.057(4) and 456.057(7)(a)(3) Fla. Stat., forbid records custodians from furnishing medical records without a patient's written authorization, unless it is done "upon issuance of a subpoena from a court of competent jurisdiction <u>and proper notice to the patient or the patient's legal representative by the party seeking such records</u>."[39] The purpose of requiring notice is to provide patients with an opportunity to be heard in the proceedings.[40] Upon notice to the non-party, the court must then fashion a discovery order that balances the competing interests of the party seeking access to the information and the privacy interests of the non-party.[41]

Nevertheless, if the identities of the non-party patients are unknown to the party seeking discovery and notice cannot be provided, the Florida Supreme Court held that a patient's constitutional right to privacy of medical records may be sufficiently protected by removing all identifying information from the records.[42] However, if the confidential medical records of the

---

[38] McEnany, 44 So.3d at 248 (Fla. 4th DCA 2010).
[39] Kugler, 840 F.Supp.2d at 1327 (citing Fla. Stat. § 456.057) (emphasis added).
[40] Id.
[41] Bassette, 661 So.2d at 319; Age Institute of Florida, Inc. v. McGriff, 884 So.2d 512, 514 (Fla. 2d DCA 2004)(quashing trial court's order which compelled discovery of non-party patients' medical records without redacting non-parties' identities or establishing other safeguards sufficient to protect non-parties' privacy rights).
[42] Bassette, 661 So.2d at 319 (citing Amente v. Newman, 653 So.2d 1030 (Fla. 1995) (holding when notice cannot be given because the identity of the non-party patients is unknown, redacting the records can protect patients' privacy)).

nonparty patient are discoverable and cannot be protected by redaction of identity, then the court must still comply with the notice requirement of section § 456.057 Fla. Stat.[43]

### 2. PSC Requests Irrelevant Medical Information and Discovery Must Be Denied to Prevent Unwarranted Intrusion To Non-party Patients' Right to Privacy

PSC cannot meet its burden to show that its need for the confidential medical information of PCWF's non-party patients overrides the patients' right to privacy of medical records. As previously stated, neither PCWF nor are any of its patients are parties to the action pending in the MDL, and therefore, the identities and other confidential medical information of the non-party patients have no bearing on the claims and defenses pending in this MDL and will provide no benefit to Plaintiffs. Thus, as the confidential medical information of PCWF's non-party patients is wholly irrelevant to the pending actions in this MDL, this Court must deny the discovery of such information to protect these patients from PSC's unwarranted intrusion of their privacy rights to medical records.

### 3. PSC Cannot Provide Notice To PCWF's Non-party Patients as It Seeks The Very Information Which Must Be Redacted If Such Information Is Deemed Discoverable

Even if PSC can demonstrate the confidential medical records of PCWF's non-party patients are relevant to the pending MDL, which PCWF argues it cannot, the notice requirement still bars the PSC from discovering such information.[44] Section 456.057(7)(a)(3) Fla. Stat., requires the PSC to provide notice to PCWF's non-party patients that their medical records have been subpoenaed; however, PSC is unable to comply with this requirement, as the PSC does not have the identities and contact information of PCWF's patients.

---

[43] Bassette, 661 So.2d at 319.
[44] Kugler, 840 F.Supp.2d at 1328 (stating the notice requirement may serve as a bar where identities are unknown to the party who seeks medical records if redacting patient names cannot cure lack of notice to non-party patients).

Furthermore, although the notice requirement may be satisfied if the Court chooses to redact all the non-party's identifiable health information when the identities of the patients are unknown, this exception is not applicable in this case. Although the identities of PCWF's patients are unknown to PSC and notice cannot be provided, this Court cannot redact the confidential information because it is the very information which the PSC is trying to obtain.[45]

As a result, this Court must quash PSC's Request for the confidential health information of PCWF's non-party patients, as PSC is unable to provide notice to PCWF's non-party patients, yet requests the very information which this Court would be required to redact when notice is not provided.

### C. PSC's Intended Use of The Protected Health Information Violates HIPAA

HIPAA requires a covered entity, such as PCWF, to keep patients' protected health information confidential subject to certain exceptions, such as the Court's entry of a qualified protective order.[46] Upon disclosure of such information, however, a party is prohibited from using or disclosing the protected health information for any purpose other than the litigation or proceeding for which such information was requested.[47] Specifically, the Code of Federal Regulation states:

> "(v) For purposes of paragraph (e)(1) of this section, a qualified protective order means, with respect to protected health information requested under paragraph (e)(1)(ii) of this section, an order of a court or of an administrative tribunal or a stipulation by the parties to the litigation or administrative proceeding that:

---

[45] Colonial Medical Specialties of South Florida, 674 So.2d at 923 (finding respondent failed to meet its burden to show any need for non-party patients' identities, addresses, and phone numbers which would override the privacy rights of non-party patients, and personal information could not be redacted because it was the very information respondent tried to obtain).
[46] 45 C.F.R. 160.103; 45 C.F.R. 164.512 (e)(1)(i-ii).
[47] Estate of Carrillo, 2012 WL 1831596 at *5 (prohibiting all parties of subject law suit from using or disclosing any protected health information obtained pursuant to subpoenas duces tecum for any purpose other than the litigation of this lawsuit) (emphasis added).

> **(A)** <u>Prohibits the parties from using or disclosing the protected</u>
> <u>health information for any purpose other than the litigation or</u>
> <u>proceeding for which such information was requested</u> . . ."

(emphasis added).[48] This coincides with this Court's QPO, which states "the information requested and produced shall be limited to the names of patients that have been identified as receiving NECC solutions. . .and any other information that lead counsel and the PSC reasonable determine necessary to the prosecution or resolution of <u>these actions</u>."[49]

Thus, PSC cannot use the protected health information to provide non-party patients with notice of the bar date set in the bankruptcy proceeding, as this is a purpose other than the litigation or proceeding for which the information was requested (PSC represents Plaintiffs in individual and independent civil actions against Defendants). Plaintiffs' attorneys who represent named parties in the actions pending in the MDL are independent and separate from the NECC bankruptcy proceedings.

As a result, HIPAA and this Court's QPO prohibit PSC's intended use of the protected health information, as the requested information will be disclosed to PSC for purposes of noticing non-parties of bankruptcy proceedings and filing additional lawsuits against non-party providers who may share liability (independent of proceedings currently pending), and not for the purpose of discovering relevant information pertinent to the <u>these actions</u> currently pending in the MDL.

---

[48] 45 C.F.R. 164.512 (e)(1)(v) (emphasis added).
[49] Dkt. No. 192 ¶ 2 (emphasis added). PCWF interprets "these actions" as the actions currently pending before the Honorable Judge Saylor in the MDL and not the proceedings pending in Bankruptcy court.

### D. Bankruptcy Order Moots Any Remaining Question as to Whether This Court May or Needs to Enforce PSC's Request for Non-party Patient Medical Information

As a result of the hearing held before Hon. Henry J. Boroff in the United States Bankruptcy Court for the District of Massachusetts, In re New England Compounding Pharmacy, Inc., No. 12-19882, on Wednesday, July 24, 2013, PCWF respectfully submits that this question is now moot. Judge Boroff ordered, among other things, that all healthcare providers, such as PCWF, must provide to the bankruptcy trustee a list of all patients who received an injection of MPA from one of the specified lots on or before August 16, 2013, for notice purposes. Because the bankruptcy court has created a mechanism for and defined the scope of notice, the question raised by this Court – whether it may enforce PSC's Request to assist in the provision of notice to potential claimants in the bankruptcy court – is now moot.

## III. CONCLUSION

The Federal Rules of Civil Procedure and Florida law prohibit PSC from discovering the confidential medical information of PCWF's non-party patients. The identities and other confidential medical information of non-party patients, who were treated by a non-party healthcare provider, are wholly irrelevant from the parties' claims and defenses pending in this MDL, and this Court must protect PCWF's non-party patients from PSC's unwarranted intrusion of their right to privacy. Further, PSC's intended use of the protected health information, to notice non-party patients and ascertain additional plaintiffs and defendants, is in violation of HIPAA, Rule 26(b)(1), and Florida law. As a result, pursuant to Fed. R. Civ. P. 26 and 45, this Court is required to quash PSC's Request for the irrelevant, confidential, and protected health information of PCWF's non-party patients.

14

Respectfully submitted,

FULLER, MITCHELL, HOOD &
STEPHENS, LLC

/s/ Halley M. Stephens
HALLEY M. STEPHENS
Fla. Bar No.: 0154725
hstephens@fmhslaw.com
2565 Barrington Circle
Tallahassee, FL 32308
TELEPHONE:  (850) 222-0770
FACSIMILE:  (850) 222-0760
*Attorneys for Non-Party Pain Consultants
of West Florida*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I caused a copy of the above Supplemental Brief in Support of PCWF's Motion to Quash and Objections to Plaintiffs' Steering Committee's Subpoena to be filed electronically on the 26th of July, 2013, via the Court's electronic filing system. Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system, and notice of these filings will be sent to these parties by operation of the Court's electronic filing system.

/s/ Halley M. Stephens
Halley M. Stephens

15