UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
_____

IN RE: NEW ENGLAND COMPOUNDING          MDL No. 1:13-md-02419
PHARMACY, INC. PRODUCTS LIABILITY
LITIGATION                              Hon. F. Dennis Saylor, IV
_____

<u>**OBJECTIONS TO SUBPOENA**</u>

To:  Patrick T. Fennell (VSB 40393)
     Crandall & Katt
     366 Elm Avenue, S.W.
     Roanoke, Virginia 24016
     pfennell@crandalllaw.com
     (540) 342-2000

     **PLEASE TAKE NOTICE**: Non-Party Rochester Brain and Spine
Neurosurgery & Pain Management, LLC ("the Clinic"), by and
through its undersigned counsel, objects to the attached
subpoena *duces tecum* issued by counsel for the Plaintiffs'
Steering Committee ("Plaintiffs") calling for testimony and the
production of documents.

<u>**GENERAL OBJECTIONS**</u>

     The Clinic objects to the subpoena in its entirety,
including the instructions, definitions, and documents
requested, for the following reasons:

     1.   The subpoena does not comply with the Order of the
          Court filed June 21, 2013 (Document 192).

     2.   Service of the subpoena was improper, Fed. R. Civ. P.
          45(b)(1), and the Court therefore lacks jurisdiction
          over the Clinic.

     3.   The subpoena fails to allow a reasonable time for
          compliance.  Rule 45(c)(3)(A)(i).  The Clinic is
          investigating coverage for the claims asserted, but
          the return date provides insufficient time to the
          Clinic to complete its review.

     4.   The subpoena improperly designates the Clinic's own
          office as the location at which the subpoena is
          returnable.

     5.   The subpoena fails to tender fees and mileage for the
          Clinic's representative.  Fed. R. Civ. P. 45(b)(1).

6.   The Clinic is entitled to reasonable costs incurred in complying with the subpoena, including without limitation retrieval and copying costs, because the subpoena imposes undue expense upon the Clinic, *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309 (S.D.N.Y. 2003), especially in light of repeated requests for electronically stored information.

7.   The requested information is not vital to the underlying litigation and/or can be obtained from other sources.

8.   Even if disclosure of any of the items requested is warranted, the requests are not narrowly tailored.

9.   The subpoena exceeds the bounds of proper discovery from a non-party.

## SPECIFIC OBJECTIONS

10.  The issuing party has failed to take reasonable steps to avoid imposing undue burden and expense upon the Clinic.  Fed. R. Civ. P. 45(c)(1).  For example, and without limitation:

Item 10 requests "all documents . . . containing information obtained by, or sent to, [the Clinic] . . . from the Centers for Disease Control and Prevention, the Federal Food and Drug Administration, and/or any other Federal, state or local regulatory agency" concerning the fitness of NECP products;

Item 11 requests "all documents . . . containing communications between [the Clinic] and any federal or state agency . . . in connection with the procurement of products from any compounding pharmacy;" and

Item 17 requests "any and all polices of insurance . . . issued to [the Clinic], and/or its principal officers and directors and/or any physician working for [the Clinic]."

11.  The subpoena purports to require the disclosure of privileged, commercially sensitive, confidential, or proprietary information, including without limitation matter protected under the Health Insurance

Portability and Accountability Act of 1996, and no exception or waiver applies. Fed. R. Civ. P. 45(c)(3)(A)(iii).  For example, and without limitation:

> Item 6 requests "the identification of each and every patient that was administered an NECP product . . . including patient name, address, date of birth, identification of product administered, and date product was administered;" and

> Items 3, 4, and 5 request "prescriptions submitted to NECP, prescription order forms, [and] NECP charges" for cardioplegic solution, ophthalmic solution, and preservative-free saline solution, respectively.

12.   The subpoena, including its instructions, definitions, and documents requested, is overly broad and unduly burdensome. Fed. R. Civ. P. 45(c)(3)(A)(iv).  For example, and without limitation:

> Item 2 requests "[a]ny and all" documents related "in any way" to the procurement of methylprednisolone acetate ("MPA") from companies other than New England Compounding Pharmacy, Inc. ("NECP"), a task that would cause excessive searching through the Clinic's files.

13.   The subpoena seeks materials that are neither relevant to the subject matter of the parties' dispute nor reasonably calculated to lead to the discovery of admissible evidence.  For example, and without limitation:

> Item 17 requires the insurance policies for the Clinic's officers and directors;

> Item 18 requests "[a]ny and all" documents "reflecting or containing the names, addresses and positions . . . within the [Clinic] of all officers and directors";

> Item 20 requests "[a]ny and all documents showing the entities or individuals with an ownership interest in the [Clinic];" and

> Item 21 requests "[a]ny and all organizational charts . . . and/or any documents listing

- 3 -

directors, officers, employees, and/or agents of the [Clinic]."

See Fein v. Numex Corp., 92 F.R.D. 94, 96 (S.D.N.Y. 1981) ("Even though a nonparty may be unconcerned with the outcome of a litigation, it may legitimately oppose even slight burden upon itself where the discovery sought is irrelevant.")

14. The Clinic further objects to each of the document requests to the extent they are unreasonably cumulative or duplicative; request documents or things obtainable from some other source that is more convenient, less expensive or less burdensome, or that Plaintiffs have had an opportunity to seek from another source; or where the burden or expense to the Clinic of the proposed discovery outweighs its likely benefit to Plaintiffs.

15. Even if any production is warranted, no production should occur before entry of a confidentiality order sufficient to protect the interests of the Clinic and its patients and to ensure compliance with law.

The foregoing is not exhaustive and is intended to serve as the basis for good faith attempts to resolve this matter.  By agreement, the issuing party and the Clinic through their respective counsel will meet and confer in an attempt to resolve this matter.  Issuing counsel has indicated that he will provide revisions to counsel for the Clinic.  The issuing party and the Clinic further agree to adjourn any hearing on this matter until after their respective counsel have met and conferred.

Dated:     Buffalo, New York
           July 16, 2013


                     Respectfully submitted,


                     PHILLIPS LYTLE LLP


                     By:_____s/Joanna J. Chen_____
                          Alan J. Bozer
                          Joanna J. Chen
                     One HSBC Center, Suite 3400
                     Buffalo, New York  14203-2887
                     Telephone No. (716) 847-8400
                     abozer@phillipslytle.com

                     Attorneys for the Clinic

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that a copy of the foregoing **OBJECTIONS TO DOCUMENT SUBPOENA**, was served by electronic delivery to the issuing attorney of record whose address and contact information is as follows:

>  Patrick T. Fennell (VSB 40393)
>  Crandall & Katt
>  366 Elm Avenue, S.W.
>  Roanoke, Virginia 24016
>  pfennell@crandalllaw.com
>  (540) 342-2000

on this 16th day of July, 2013.

>  s/Joanna J. Chen
>  Alan J. Bozer
>  Joanna J. Chen
>  One HSBC Center, Suite 3400
>  Buffalo, New York  14203-2887
>  Telephone No. (716) 847-8400
>  abozer@phillipslytle.com

Doc #01-2681501.2

AO 88A (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

### for the

### District of Massachusetts

| | |
|---|---|
| In re: New England Compounding Pharmacy, Inc. | ) |
| _Plaintiff_ | ) |
| v. | ) Civil Action No.   MDL 1:13-md-02419 |
| | ) |
| | ) (If the action is pending in another district, state where: |
| _Defendant_ | ) |
| | )          ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To: Rochester Brain and Spine Neurosurgery & Pain Management, LLC ; C/O: Seth M. Zeidman, MD, Registered Agent, 400 Red Creek Drive, Suite 120, Rochester, New York 14623

☑ _Testimony:_ **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization that is _not_ a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

See Exhibit A

| Place:  Rochester Brain and Spine Neurosurgery & Pain Management, LLC, 400 Red Creek Drive, Suite 120, Rochester, New York 14623 | Date and Time:<br><br>07/15/2013 9:00 am |
|---|---|

The deposition will be recorded by this method:  _Stenographically and/or Videographically_

☑ _Production:_ You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

See Exhibit B

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:   06/21/2013

_CLERK OF COURT_

_____          OR          _Patrick T. Fennell_
_Signature of Clerk or Deputy Clerk_                    _Attorney's signature_

The name, address, e-mail, and telephone number of the attorney representing _(name of party)_ _____
Plaintiffs' Steering Committee _____ , who issues or requests this subpoena, are:
Patrick T. Fennell, Crandall & Katt 366 Elm Avenue, SW, Roanoke, Virginia 24016

AO 88A (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.  MDL 1:13-md-02419

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ __·0.00__ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 88A (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information;

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

**(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

# EXHIBIT A

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

IN RE: NEW ENGLAND )
COMPOUNDING PHARMACY, INC. )    MDL No. 1:13-md-02419
PRODUCTS LIABILITY LITIGATION )
                          )    Hon. F. Dennis Saylor, IV
This Document Relates To: All Cases )
                          )

## NOTICE OF TAKING VIDEOTAPED ORAL DEPOSITION OF DESIGNATED REPRESENTATIVE(S) OF NON PARTY ROCHESTER BRAIN AND SPINE NEUROSURGERY & PAIN MANAGEMENT, LLC

Please take notice that on July 15, 2013 beginning at 9:00 a.m. at the offices of Rochester Brain and Spine Neurosurgery & Pain Management, LLC the deposition of a designated corporate representative will be taken upon oral examination by one or more attorneys of the Plaintiffs' Steering Committee in the pending MDL, pursuant to Rule 30 of the Federal Rules of Civil Procedure for the purpose of discovery or for use as evidence in this action, and before an officer authorized by law to administer oaths.

PLEASE TAKE FURTHER NOTICE that pursuant to Rules 30 and 34 of the Federal Rules of Civil Procedure, the non-party deponent(s) shall produce at the deposition the documents identified in Exhibit B.

**Duty to designate.** By designating a representative, the organization indicates its representative has the authority to speak on its behalf about the matters listed in this deposition notice – not only to facts, but also to subject beliefs and opinions.[1]

---

[1] *Lapenna v. Upjohn Co.,* 110 F.R.D. 15, 20 (E.D. Pa. 1986); *See also Alexander v. Fed. Bureau of Investigation,* 186 F.R.D. 148, 151-52 (D.D.C. 1999); *Mitsui & Co. v. Puerto Rico Water Res. Autho.,*93 F.R.D. 62, 66-67 (D.P.R. 1981).

**Duty to substitute**. If it becomes clear that the chosen representative is unable to respond to questions on the matters for which he or she has been designated, the organization must immediately provide a substitute knowledgeable witness. This is required even if the initial designation was made in good faith.[2]

**Duty to prepare**. The testimony elicited in the deposition represents the organization's knowledge, not the individual deponent's knowledge. The organization must conduct a thorough investigation in response to the deposition notice and must prepare any witness to testify to all matters "known or reasonably available to the organization." Therefore, if the organization's designee is not knowledgeable about the matters specified in the deposition notice, it must nonetheless prepare such designee to give knowledgeable, binding answers.[3]

"Reasonably available" information includes all documents that the organization has the authority, legal right, or practical ability to obtain. An inadequately prepared designated witness will amount to an impermissible refusal to answer and a sanctionable failure to appear.[4]

---

[1] *Lapenna v. Upjohn Co.*, 110 F.R.D. 15, 20 (E.D. Pa. 1986); *See also Alexander v. Fed. Bureau of Investigation*, 186 F.R.D. 148, 151-52 (D.D.C. 1999); *Mitsui & Co. v. Puerto Rico Water Res. Autho.*,93 F.R.D. 62, 66-67 (D.P.R. 1981).

[2] *See Marker v. Union Fidelity Life*, 125 F.R.D. 121, 126 (M.D.N.C. 1989).

[3] *United States v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C. 1996) .

[4] *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 637 (D. Minn. 2000) (citing *Lumber v. PPG Industries, Inc.*, 168 F.R.D. 641, 643 n. 1 (D. Minn. 1966); *See Black Horse Lane Assoc., L.P. v. Down Chem. Corp.*, 228 F. 3d 275, 303-04 (3d Cir. 2000); *Resolution Trust Corp. v. S. Union Co.*, 985 F. 2d 196, 197 (5th Cir. 1993); *Taylor*, 166 F.R.D. at 363; *Marker v. Union Fidelity Life Ins. Co.*, 125 F.R.D. 121, 126 (M.D.N.C. 1989).

**Scope of inquiry** The description contained in the deposition notice simply identifies the minimum to which a witness must be prepared to testify. If an examining party asks questions outside the scope of the matters described in the notice, the general deposition rules govern.

## DESIGNATION OF TESTIMONY AND PRODUCTION OF DOCUMENTS

The designated matters upon which examination is requested are as follows:

1. To provide testimony regarding those individuals involved in the production of documents.

2. To provide testimony regarding the efforts made and the time expended in the production of documents.

3. To provide testimony regarding the methods of search and methods of production of documents produced.

4. To provide testimony regarding the authenticity of documents.

5. To provide testimony regarding the methods of storage, entry and use of computer data and the method by which it has been produced.

6. To provide testimony regarding the location and methods of storage of corporate documents.

7. To provide testimony regarding the existence of documents.

8. To provide testimony regarding the electronic creation, duplication and/or storage of the documents.

9. To provide testimony regarding any and all document retention/destruction policies that would relate to any of the documents.

10. To provide testimony regarding the searchability of databases for the extraction of information.

RESPECTFULLY SUBMITTED

_Patrick T. Fennell_

Patrick T. Fennell (VSB 40393)
Crandall & Katt
366 Elm Avenue, S.W.
Roanoke, Virginia 24016
Telephone:  540/342-2000
Facsimile:  540/400-0616
pfennell@crandalllaw.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 21ST day of June 2013, a true and Complete copy of the foregoing was delivered to the following via electronic mail:

SEE ATTACHED SERVICE LIST.

_Patrick T. Fennell_

Patrick T. Fennell (VSB 40393)
Crandall & Katt
366 Elm Avenue, S.W.
Roanoke, Virginia 24016
Telephone:  540/342-2000
Facsimile:  540/400-0616
pfennell@crandalllaw.com

All Defense Counsel of record in MDL 2419

| Attorney | Email |
| --- | --- |
| Alan Winchester | awinchester@harrisbeach.com |
| Dan Rabinovitz | dmr@michaelsward.com |
| Daniel Tranen | dtranen@hinshawlaw.com |
| Frederick Fern | hbnecc@harrisbeach.com |
| Geoffrey Coan | gcoan@hinshawlaw.com |
| Heidi Nadel | hnadel@toddweld.com |
| Jessica Saunders Eichel | jeichel@harrisbeach.com |
| Judi Abbott Curry | Jcurry@HarrisBeach.com |
| Matthew Moriarty | matthew.moriarty@tuckerellis.com |
| Richard Dean | richard.dean@tuckerellis.com |
| Thomas Coffey | thomas.coffey@tuckerellis.com |
| Matthew Mantalos | mantalos@tsd-lawfirm.com |
| Paul Saltzman | saltzman@tsd-lawfirm.com |
| Scott Kremer | kremer@tsd-lawfirm.com |
| Scott Tucker | tucker@tsd-lawfirm.com |
| Joshua Klarfeld | jklarfeld@ulmer.com |
| Robert Curley | rac@curleylaw.com |
| Kenneth Walton | kwalton@donovanhatem.com |
| Kristen Ragosta | kragosta@donovanhatem.com |
| Melinda Thompson | mthompson@toddweld.com |
| Stephen Grossman | sgrossman@mmwr.com |
| John Lovely | jlovely@cashmanlovely.com |
| Joseph Lang | jlang@lenoxlaw.com |
| Michael Gardner | michael.gardner@leclairryan.com |
| Joseph Thomas | jthomas@ulmer.com |
| Nicki Samson | ns@michaelsward.com |
| Ryan Ciporkin | rciporkin@lawson-weitzen.com |

# EXHIBIT B

# Exhibit B to Subpoena

     1.    Any and all documents and/or electronically stored information ("ESI") reflecting, and/or related in any way whatsoever to, the procurement of methylprednisolone acetate ("MPA") and any other injectable steroid preparations from New England Compounding Pharmacy, Inc. ("NECP") during the two-year period immediately preceding October 6, 2012, including without limitation of the foregoing, information reflecting dates of shipment and/or receipt, quantities of shipment, lot numbers and other identifying labels, sizes of containers of steroid preparation, the cost you paid for the steroid preparation, applicable warranties, shelf life, expiration dates, requirements and instructions for shipment and/or storage, and the specific identity of the preparation being purchased. Also including account information, prescriptions submitted to NECP, prescription order forms, NECP charges for MPA (before and after any discounts applied).

     2.    Any and all documents and/or ESI reflecting, and/or related in any way whatsoever to, the procurement of MPA, or its generic or name-brand equivalent, from any producer, compounding facility or manufacturer other than NECP, since October 6, 2007, including without limitation of the foregoing, information reflecting dates of shipment and/or receipt, quantities of shipment, lot numbers and other identifying labels, sizes of containers of the product, the cost you paid for the product, applicable warranties, shelf life, expiration dates, requirements and instructions for shipment and/or storage, and the specific identity of the preparation being purchased.

     3.    Any and all documents and/or ESI reflecting, and/or related in any way whatsoever to, the procurement of cardioplegic solution from NECP during the two-year period immediately preceding October 6, 2012, including without limitation of the foregoing, information reflecting dates of shipment and/or receipt, quantities of shipment, lot numbers and other identifying labels, sizes of containers of cardioplegic solution, the cost you paid for the cardioplegic solution, applicable warranties, shelf life, expiration dates, and requirements and instructions for shipment and/or storage. Also including prescriptions submitted to NECP, prescription order forms, NECP charges for cardioplegic solution (before and after any discounts applied).

     4.    Any and all documents and/or ESI reflecting, and/or related in any way whatsoever to, the procurement of ophthalmic solution from NECP during the two-year period immediately preceding October 6, 2012, including without limitation of the foregoing, information reflecting dates of shipment and/or receipt, quantities of shipment, lot numbers and other identifying labels, sizes of containers of ophthalmic solution, the cost you paid for the ophthalmic solution, applicable warranties, shelf life, expiration dates, and requirements and instructions for shipment and/or storage. Also including prescriptions submitted to NECP, prescription order forms, NECP charges for opthalmic solution (before and after any discounts applied).

     5.    Any and all documents and/or ESI reflecting, and/or related in any way whatsoever to, the procurement of preservative-free saline solution from NECP during the two-year period immediately preceding October 6, 2012, including without limitation of the

foregoing, information reflecting dates of shipment and/or receipt, quantities of shipment, lot numbers and other identifying labels, sizes of containers of saline solution, the cost you paid for the saline solution, applicable warranties, shelf life, expiration dates, and requirement and instructions for shipment and/or storage. Also including prescriptions submitted to NECP, prescription order forms, NECP charges for preservative-free saline solution (before and after any discounts applied).

6.      Any and all documents and/or ESI reflecting, and/or related to, the identification of each and every patient that was administered an NECP product during the two-year period immediately preceding October 6, 2012, including patient name, address, date of birth, identification of product administered, and date product was administered.

7.      Any and all documents and/or ESI reflecting or containing communications (written or otherwise) between Rochester Brain and Spine Neurosurgery & Pain Management, LLC ("Healthcare Provider"), its employees, principals, partners, and/or agents, and NECP, its employees and/or agents, during the two-year period immediately preceding October 6, 2012, including, but not limited to, any complaints or adverse event reports made to NECP by the Healthcare Provider.

8.      Any and all documents and/or ESI reflecting or containing information obtained by the Healthcare Provider, its employees and/or agents, regarding NECP, including without limitation of the foregoing, NECP's qualifications, certifications or accreditations, or lack thereof, regulatory compliance, lack of regulatory compliance, operations, enforcement actions, suitability for conducting its business, legal actions and/or warnings, brochures, policies and procedures, ordering and delivery information company overviews, standard operating procedures, executive summaries, attachments A, B or others (relating to HIPAA, NECP policies and procedures, or other information).

9.      Any and all documents and/or ESI reflecting or containing information obtained by, or communications received by, the Healthcare Provider, its employees and/or agents, concerning the fitness of any products purchased or obtained from NECP for their intended use, during the two-year period immediately preceding October 6, 2012, including but not limited to any environmental testing results, microbiology reports or certificates of analysis.

10.      Any and all documents and/or ESI reflecting or containing information obtained by, or sent to, the Healthcare Provider, its employees and/agents, from the Centers for Disease Control and Prevention, the Federal Food and Drug Administration, and/or any other Federal, state or local regulatory agency, concerning the fitness of any products manufactured, compounded or produced by NECP for their intended purpose.

11.      Any and all documents and/or ESI reflecting or containing communications between the Healthcare Provider and any federal or state agency (including, but not limited to state licensing authorities, the Food and Drug Administration, and the Centers for Disease Control and Prevention) in connection with the procurement of products from any compounding pharmacy.

{004663/12496/00290939.DOCX / Ver.1}

12.     Any and all documents and/or ESI reflecting or containing marketing information from NECP, NECP's agents, or any sales company or person marketing, selling, or attempting to sell products on behalf of NECP.

13.     Any and all documents and/or ESI reflecting or containing agreements, contracts and/or warranties between the Healthcare Provider and NECP, NECP's agents, or any sales company or person marketing, selling, or attempting to sell products on behalf of NECP.

14.     Any and all documents and/or ESI reflecting or containing recall notices received by the Healthcare Provider pertaining to products produced by NECP, including without limitation of the foregoing, the date, time and manner of receipt of the recall notices, the specific person or persons within the Healthcare Provider who received the notice, and the substance of the notice.

15.     Any and all documents and/or ESI reflecting or containing communications made or issued by the Healthcare Provider, its employees and/or agents, in response to any recall notice regarding NECP products, including without limitation of the foregoing, the date, time and manner of transmission of the communication, the person(s) to which the communication was directed, and the person at the Healthcare Provider who made or delivered the communication.

16.     Any and all documents regarding any investigation or inquiry the Healthcare Provider performed related to attempts by NECP to comply with United States Pharmacopeia – National Formulary, Chapter 797 (USP – NF General Chapter 797, entitled "Pharmaceutical Compounding – Sterile Preparations").

17.     Any and all policies of insurance, including without limitation of the foregoing, professional liability, malpractice, products liability, general liability, and comprehensive or umbrella policies, issued to the Healthcare Provider and/or its principal officers and directors and/or any physician working for or on behalf of the Healthcare Provider, for the policy periods including calendar years 2011, 2012 and 2013.

18.     Articles of Incorporation and/or By-Laws applicable to the Healthcare Provider for calendar years 2011, 2012 and 2013.

19.     Any and all documents and/or ESI reflecting or containing the names, addresses and positions (President, Vice-President, Director, etc.) within the Healthcare Provider of all officers and directors of the Healthcare Provider during the calendar years 2011, 2012 and 2013.

20.     Any and all documents showing the entities or individuals with an ownership interest in the Healthcare Provider.

21.     Any and all organizational charts maintained by the Healthcare Provider and/or any documents listing directors, officers, employees, and/or agents of the Healthcare Provider showing the names and positions of said directors, officers, employees, and/or agents and their relationship or rank within the Healthcare Provider.

{004663/12496/00290939.DOCX / Ver.1}

# ROCHESTER CLINIC SERVED WITH SUBPOENA IN LITIGATION INVOLVING MENINGITIS OUTBREAK

### Discovery begins in cases consolidated in U.S. District Court in Massachusetts

FOR IMMEDIATE RELEASE: June 24, 2013
CONTACT: Patrick T. Fennell, Telephone: (540) 342-2000, E-mail: pfennell@crandalllaw.com

Rochester, New York, June 24, 2013. Today Rochester Brain and Spine Neurosurgery & Pain Management, LLC, a pain management clinic in Rochester, was served with a subpoena requiring it to turn over documents in its possession that could shed light on allegations that its patients received injections of tainted medication that led to serious illness.

The subpoena originated in the U.S. District Court for the District of Massachusetts, which is overseeing the consolidation of most cases in Federal and state court alleging personal injury or wrongful death as a result of the contaminated injections. The subpoena was issued by attorneys working in conjunction with a seven-member Plaintiffs' Steering Committee appointed by the District Court to initiate, coordinate and conduct all pretrial discovery of plaintiffs in all actions pending in that court. The purpose of the subpoena is to investigate facts material to ongoing proceedings in the consolidated cases in Massachusetts, and does not necessarily indicate wrongdoing on the part of the clinic. The issuance of the subpoena should not be interpreted as an allegation of wrongdoing on the part of the clinic.

Rochester Brain and Spine Neurosurgery & Pain Management, LLC was one of many clinics nationwide identified by the Centers for Disease Control and Prevention (CDC) as having purchased and administered vials of contaminated methylprednisolone acetate ("MPA") that were produced by New England Compounding Pharmacy, Inc. (NECP) of Framingham, Massachusetts. This is one of many subpoenas being served nationwide on most of the approximately 76 clinics across the country that have been identified as having dispensed NECP products. The CDC has reported one case of fungal meningitis infection, linked to the tainted compound, in the State of New York alone.

The subpoena requires Rochester Brain and Spine Neurosurgery & Pain Management, LLC to produce for examination or copying, documents and communications between the clinic and NECP, including information reflecting purchasing decisions, items purchased, dates, quantities, pricing, storage of the medication and more.

According to Patrick T. Fennell, this subpoena signals the next step of an ongoing investigation of the role clinics like Rochester Brain and Spine Neurosurgery & Pain Management, LLC played in the distribution of contaminated medication. "We believe the information we receive from Rochester Brain and Spine Neurosurgery & Pain Management, LLC will help us understand how the outbreak of fungal meningitis infections occurred," Patrick T. Fennell said.

The outbreak of fungal meningitis infections is the worst such outbreak in U.S. history. The CDC has recorded more than 700 infections nationwide, and has not ruled out the possibility that this number will continue to grow.

As a result of the large number of actual and anticipated civil lawsuits arising from the outbreak, NECP filed for reorganization under Chapter 11 of the United State Bankruptcy Code, in the U.S. Bankruptcy Court in Massachusetts, on December 21, 2012. On February 12, 2013, the United States Judicial Panel on Multidistrict Litigation ordered the consolidation of all Federal cases in the U.S. District Court in Massachusetts.

On April 9, 2013 the Hon. F. Dennis Saylor, IV, presiding United States District Court Judge, appointed the Plaintiffs' Steering Committee, of which Thomas M. Sobol, an attorney with the firm Hagens Berman Sobol Shapiro LLP, is lead counsel. Patrick T. Fennell is working with the Plaintiffs' Steering Committee to organize the litigation in the State of New York.