# EXHIBIT A

**EXCERPT FROM TRANSCRIPT OF JULY 24, 2013
BANKRUPTCY HEARING**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS - WESTERN DIVISION
================================
IN THE MATTER OF:                  . Case #12-19882-hjb
                                   .
NEW ENGLAND COMPOUNDING            .
    PHARMACY, INC.,                . Springfield, Massachusetts
                                   . **July 24, 2013**
        Debtor.                    . 1:39 p.m.
================================

TRANSCRIPT OF HEARING ON:
(#166) AMENDED APPLICATION OF CHAPTER 11
TRUSTEE TO EMPLOY AND RETAIN HARRIS BEACH PLLC AS SPECIAL
COUNSEL;
(#263) MOTION OF CHAPTER 11 TRUSTEE FOR AN ORDER (I)
ESTABLISHING BAR DATES FOR FILING PROOFS OF CLAIM; (II)
APPROVING CERTAIN ADDITIONAL DOCUMENTATION REQUIREMENTS AND
PROCEDURES FOR PERSONAL INJURY TORT AND WRONGFUL-DEATH CLAIMS;
(III) APPROVING THE FORM AND MANNER OF NOTICE; AND FOR
ADDITIONAL RELATED RELIEF

BEFORE THE HONORABLE HENRY J. BOROFF

APPEARANCES:
For the Chapter 11           JEFFREY D. STERNKLAR, ESQ.
Trustee, Paul D. Moore:      DUANE MORRIS, LLP
                             100 High Street
                             24th Floor
                             Boston, MA 02110

For the                      WILLIAM R. BALDIGA, ESQ.
Official Committee of        BROWN RUDNICK LLP
Unsecured Creditors:         One Financial Center
                             Boston, MA 02111

For the United States        PAULA R.C. BACHTELL, ESQ.
Trustee:                     OFFICE OF THE U.S. TRUSTEE
                             5 Post Office Square
                             Suite 1000
                             Boston, MA 02109

For PMIC:                    RICHARD E. MIKELS, ESQ.
                               (TELEPHONICALLY)
                             MINTZ LEVIN COHN FERRIS GLOVSKY AND
                             POPEO PC
                             One Financial Center
                             Boston, MA 02111

| | |
|---|---|
| For Individual Defendants in the MDL Action: | WILLIAM J. DAILEY, JUNIOR, ESQ.<br>SLOANE AND WALSH LLP<br>Three Center Plaza<br>Boston, MA 02108 |
| For the Plaintiffs' Steering Committee: | THOMAS M. SOBOL, ESQ.<br>HAGENS BERMAN SOBOL SHAPIRO LLP<br>55 Cambridge Parkway<br>Suite 301<br>Cambridge, MA 02142 |
| For Barry and Lisa Cadden: | HAROLD B. MURPHY, ESQ.<br>MURPHY & KING<br>One Beacon Street<br>21st Floor<br>Boston, MA 02108 |

Electronic Sound Recording Operator: Laura L. Chambers

Proceedings Recorded by Electronic Sound Recording
Transcript Produced by Certified Transcription Service
ESCRIBERS, LLC
700 West 192nd Street Suite 607, New York, NY 10040
1-973-406 2250; operations@escribers.net

1  (Proceedings from 3:01 p.m. until 4:13 p.m. not transcribed)
2  THE COURT: Let me start out by providing my
3  perspective as to the delineation of the job that I have and
4  the job that I think the district court has taken on. And I
5  preface that by reminding those of you that are familiar with
6  the Bankruptcy Code and Title 28 of the United States Code
7  that any time that the district court chooses to do so, it may
8  withdraw the reference from this court and deal with the whole
9  ball of wax. Until and unless it does that, then the
10 following delineation is, I think, what I'm doing and what I
11 think the district court is doing, and the delineation is
12 created not as a result of anyone's choice, as much as it is
13 statutory and constitutional requirements.
14 The bankruptcy court's job here is to marshal the
15 assets of the estate, to approve a mechanism for distribution
16 of the proceeds of those assets to allowed claims, and to
17 liquidate claims that are neither personal injury nor wrongful
18 death claims. Those are the primary functions of this court.
19 The primary function of the district court, so long as it
20 chooses to do so, as I indicated, is to liquidate the personal
21 injury and the wrongful death claims. Frankly, I think I've
22 got the better of the deal.
23 The parties differ on whether there needs to be an
24 early bar date for the victims. I agree that there should be,
25 not so much an early but an earlier, relatively speaking, bar

date. The goal is to get everybody around the table, and I don't think that that can be appropriately done unless the victims are required to file claims.

Now, which victims should that be -- or I should say what persons should that be? And those should be those people who received products that the CDC said were contaminated. Not everybody that any NECC ever dealt with, and not people who, under any stretch of the imagination might have had some contact with NECC. The CDC has identified the contaminated lots. Those are the people who need the actual notice. Again, those claims are not going to tell us very much. They're not going to give us very much information about the ultimate liquidation value of those claims. And if the district court wants to fashion some sort of a secondary notice or to appoint some mediation intermediary in order to resolve these claims, I wouldn't be surprised. But this court's job is to get everybody around the table that should be around the table.

Now, the parties differ as to what the notice intermediaries should -- who they should be. Well, they should be those entities who administered the contaminated product. Again, not everybody who administered any NECC product over a stated period of time. They ought to be required to produce, for the Chapter 11 Trustee -- as well as the PSC, but I leave what should be produced for the PSC to

1  District Judge Saylor. But they ought to produce a list of
2  the names, the addresses, the last four digits of Social
3  Security numbers, so that they can be separately identified
4  for those with similar names, and what was administered to,
5  when, and by whom. I really can't see anything else of value
6  that would be put to good use.
7      The Chapter 11 Trustee ought to be sending the
8  notices to all of those people, and that list, by each of the
9  notice intermediaries, ought to be supplied in short order.
10 The request for reimbursement for identifying the names of
11 patients, who probably have already been identified to the
12 CDC, has a level of arrogance that I won't even begin to
13 address.
14     The PITWD -- and I think that the creditors'
15 committee called it something else, but the supplement, again,
16 ought to be extremely limited because of its limited value.
17 The notice should not identify any particular third-party
18 targets. It's enough, it seems to me, if it says to the
19 claimant that your failure to file a claim in the NECC case
20 may affect your rights against parties other than NECC. That
21 ought to be enough to give them a clue as to who those parties
22 might be. And I think being more specific and identifying
23 classes of likely third-party targets paints a target on those
24 entities that is inappropriate.
25     HIPAA is not a problem. HIPAA contains the

Case 1:13-md-02419-RWZ Document 362-1 Filed 07/26/13 Page 7 of 11

1  exception for information requested supplied by court order.
2  In the order that I'm going to ask the Chapter 11 Trustee to
3  prepare, we'll say that in the Court's view, HIPAA is
4  satisfied by the terms of the order.
5  As for these different noticing agents, I think that
6  the PSC, understandably, views this proceeding much
7  differently than does this court. This is a case here about
8  all of the creditors. The victims of these adulterated
9  products are clearly the vast majority, and undoubtedly, the
10 most sympathetic. But to have a separate noticing agent for
11 the PSC, whose job it also is to collect claims and deal with
12 plan votes, if that time ever comes, with respect to -- it
13 simply creates confusion if we're going to have secondary
14 notices, one for nonvictims and one for victims.
15 Accordingly, this court is happy to consider any
16 change that the Chapter 11 Trustee and the creditors'
17 committee in the bankruptcy case, with the advice of the PSC,
18 recommends to change noticing agents, in the event that one of
19 them is less expensive than the other. And the parties know
20 how to file a motion seeking to substitute one notice agent
21 for another. But that noticing agent must come from the
22 bankruptcy court, which is responsible for a larger class of
23 creditors than simply the victims of these adulterated lots.
24 I've already indicated my unwillingness to disrupt
25 the 503(b)(9) deadline that is addressed in the Local Rules.

```
 1              Just going down my list of the different issues that
 2    were raised, a number of the objections addressed the problem
 3    of statutes of limitations that might extend for periods well
 4    after the bar date.  Well, frankly, that's what bankruptcy is
 5    all about.  We don't wait for the statute of limitations,
 6    because that delays recovery for creditors.  Creditors who
 7    have claims must state those claims.  It's okay that they're
 8    unliquidated.  It's okay that they're contingent.  But they
 9    must identify the claims in order to participate with other
10    creditors.  Claims filed can always be amended, so long as
11    they're not substantively different.  So a creditor who has
12    incurred loss as a result of one of these adulterated lots,
13    and whose illness progressed thereafter, is always free to
14    file an amended claim.  And even untimely claims may be
15    allowed under the Pioneer -- the Supreme Court's Pioneer case,
16    in Chapter 11 cases, so long as the failure to file the claim
17    was by virtue of excusable neglect and the estate has not been
18    unduly prejudiced.
19              And so I have no problem with telling these
20    creditors that in fact if they fail to file a claim they may
21    be barred from doing so thereafter.  But rather than using the
22    words "shall be forever barred", I'd either prefer "may be
23    barred", or if "shall be barred" is the choice of the Chapter
24    11 Trustee, that it be appropriately footnoted with an
25    indication that it may be subject to amendment, and there may
```

1  even be an opportunity for later filed claims.  See the
2  Pioneer case.
3       Hold on just a moment.  Let me just make sure.  Oh,
4  one last thing that I think Mr. Lipton suggested, or perhaps
5  it was Mr. Sobol, that this court may want to have a joint
6  session with the district court.  I'm not calling for that.
7  If the district court finds it of value then I can make my way
8  to Boston well enough.  But so long as the district court is
9  satisfied that I'm doing the job the way it would prefer, then
10 I'm happy to do that from a distance.  I'm happy to do a joint
11 session, if that's what the district court wants, and I'm even
12 happy to -- not happy, but I'm either content to send the file
13 to the district court, if the district court chooses to
14 withdraw the reference.  At the moment, I don't see any
15 indication that the district court wishes to do that.
16      So now, in terms of timing.  I'm going to ask the
17 Chapter 11 Trustee to send me a proposed order, ordering the
18 notice intermediaries who administered these adulterated lots
19 identified by the CDC, to supply the names, addresses, last
20 four digits of the Social Security number, what was
21 administered and when, to the trustee on or before August 16.
22 I then would ask the Chapter 11 Trustee and his counsel and
23 counsel for the plaintiff steering committee to sit down and
24 see if they can create a joint list of who it is that ought to
25 get this actual notice.

1    Then I want the notice to be published ten days
2    after the bar-date order, and then twenty days before the
3    expiration of the order, in each of the newspapers which were
4    listed in the trustee's amended supplemental bar-date motion.
5    It currently reads that the trustee has the option to do that;
6    I would prefer that the trustee be directed to do it.
7    And I assume that that list is a list of newspapers
8    of general distribution in those places where the drug was
9    administered. If somebody thinks that there ought to be
10   another newspaper, then I'm happy to hear about that, and I
11   would be happy to hear about it on August 22 at 10 a.m. in
12   Springfield. Parties who wish to appear by phone, as they
13   have today, are welcome to do so again.
14   On August 22, I'm hoping that what I will hear
15   counsel for the PSC and counsel for the Chapter 11 Trustee and
16   counsel for the creditors' committee. What I will hear from
17   them is that they have a list, with which they feel some
18   degree of confidence is a list of all those who received the
19   drugs from the allegedly adulterated lots. The notice
20   intermediaries ought to use their best efforts to produce
21   those names, for no other reason than that, of all the things
22   that I may eventually release them from, I will never agree to
23   release them from their original responsibility to have
24   provided these names to the Chapter 11 Trustee. So they ought
25   to do a good job, for their own sake.

1   So I'm hoping that I will receive the order from the
2   Chapter 11 Trustee by week's end. And again, that's the order
3   to the notice intermediaries to turn over those lists to the
4   Chapter 11 Trustee and counsel for the PSC, in confidence, on
5   or before August 16, and we'll address, again, on August 22 at
6   10 a.m. what modifications need to be made to the notice
7   that's going to go out to these people and also to the
8   nonvictims. I hope that you'll have for me a proposed revised
9   notice consistent with what I've talked about in the last
10  twenty minutes or so.
11      Thank you very much.
12  (End of requested audio at 4:33 p.m.)
13          * * * * * * * * * *
14
15              C E R T I F I C A T I O N
16
17      I, Clara Rubin, the court approved transcriber, do
18  hereby certify the foregoing is a true and correct transcript
19  from the official electronic sound recording of the
20  proceedings in the above-entitled matter.
21
22  [signature]
23                              July 25, 2013
24  _____    _____
25                                DATE