# Exhibit B

West's North Carolina General Statutes Annotated
　Chapter 8. Evidence (Refs & Annos)
　　Article 7. Competency of Witnesses

N.C.G.S.A. § 8-53

§ 8-53. Communications between physician and patient

Currentness

No person, duly authorized to practice physic or surgery, shall be required to disclose any information which he may have acquired in attending a patient in a professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or to do any act for him as a surgeon, and no such information shall be considered public records under G.S. 132-1. Confidential information obtained in medical records shall be furnished only on the authorization of the patient, or if deceased, the executor, administrator, or, in the case of unadministered estates, the next of kin. Any resident or presiding judge in the district, either at the trial or prior thereto, or the Industrial Commission pursuant to law may, subject to G.S. 8-53.6, compel disclosure if in his opinion disclosure is necessary to a proper administration of justice. If the case is in district court the judge shall be a district court judge, and if the case is in superior court the judge shall be a superior court judge.

**Credits**
Amended by Laws 1969, c. 914; Laws 1977, c. 1118; Laws 1983, c. 410, §§ 1, 2; Laws 1983, c. 471.

**Editors' Notes**

**LAW REVIEW COMMENTARIES**

　Case for a Federal Psychotherapist-Patient Privilege Protecting Patient Identity. 1985 Duke L.J. 1217, (1985).
　Death and the Privilege. Kenneth S. Broun, 9, No. 1 N.C. State Bar Journal 48, (2004).
　Discovery of Medical Records in a Corporate Negligence Action. 10 Campbell L.Rev. 193, (1987).
　Prohibition of Ex Parte Contacts With Plaintiff's Treating Physician. 13 Campbell L.Rev. 233, (1991).
　Restricting Ex Parte Interviews With Nonparty Physicians. 69 N.C.L.Rev. 1381, (1991).
　Role of the Physician in the Protection of Patient Privacy. Robert Gellman, 62 N.C.L.Rev. 255, (1984).
　Taking A Deposition Under North Carolina Law. G. Nicholas Herman, 21 N.C.Cent.L.J. 215, (1995).

**LIBRARY REFERENCES**

Witnesses ⚖207.
Westlaw Key Number Search: 410k207.
C.J.S. Witnesses § 293.

**RESEARCH REFERENCES**

**ALR Library**

10 ALR 4th 552, Physician-Patient Privilege as Extending to Patient's Medical or Hospital Records.
48 ALR 4th 668, Physician's Tort Liability for Unauthorized Disclosure of Confidential Information About Patient.
23 ALR 4th 799, Right of Prosecution to Discovery of Case-Related Notes, Statements, and Reports--State Cases.
21 ALR 3rd 912, Commencing Action Involving Physical Condition of Plaintiff or Decedent as Waiving Physician-Patient Privilege as to Discovery Proceedings.

44 ALR 3rd 24, Privilege, in Judicial or Quasi-Judicial Proceedings, Arising from Relationship Between Psychiatrist or Psychologist and Patient.
25 ALR 2nd 1429, Construction and Effect of Statute Removing or Modifying, in Personal Injury Actions, Patient's Privilege Against Disclosure by Physician.
114 ALR 798, When Testimony by Patient Deemed to Waive Physician-Patient Privilege.
22 ALR 1217, Competency of Hospital Physician or Attendant to Testify as to Condition of Patient.

## Encyclopedias

22 Am. Jur. Proof of Facts 2d 1, Medical Malpractice--Use of Hospital Records.
38 Am. Jur. Proof of Facts 2d 145, Foundation for Admissibility of Hospital Records and X-Rays.
45 Am. Jur. Proof of Facts 2d 595, Protected Communication Between Physician and Patient.
8 Am. Jur. Proof of Facts 3d 399, Existence of "Sudden Emergency".
87 Am. Jur. Proof of Facts 3d 259, Confidentiality of Medical and Other Treatment Records.
2 Am. Jur. Trials 1, Investigating Particular Civil Actions.
4 Am. Jur. Trials 223, Motions for Production and Inspection.
30 Am. Jur. Trials 237, Misdiagnosis of Cancer and Loss of Chance.
30 Am. Jur. Trials 437, Countering the Standard Defenses in a Breast Cancer Malpractice Case.
32 Am. Jur. Trials 105, Unauthorized Disclosure of Confidential Patient Information.
36 Am. Jur. Trials 695, Obtaining, Organizing and Abstracting Medical Records for Use in a Lawsuit.
77 Am. Jur. Trials 1, Representing Law Enforcement Officers in Personnel Disputes and Employment Litigation.
Am. Jur. 2d Witnesses § 476, Personal Representative of Deceased Patient.
Strong's N.C. Index 4th, Appeal and Error § 139, Interrogatories.
Strong's N.C. Index 4th, Criminal Law § 1606, Procedure for Taking Evidence--Assertion of Privilege.
Strong's N.C. Index 4th, Evidence and Witnesses § 2486, Extent of Privilege; Generally.
Strong's N.C. Index 4th, Evidence and Witnesses § 2487, Extent of Privilege; Generally--Medical Records Containing Protected Information.
Strong's N.C. Index 4th, Evidence and Witnesses § 2500, Who May Waive Privilege--Information in Medical Records.
Strong's N.C. Index 4th, Evidence and Witnesses § 2504, Filing of Medical Malpractice Action.
Strong's N.C. Index 4th, Evidence and Witnesses § 2510, Who May Compel Disclosure.
Strong's N.C. Index 4th, Evidence and Witnesses § 2511, When Disclosure May be Compelled.
Strong's N.C. Index 4th, Evidence and Witnesses § 2512, Discretionary Authority of Trial Court.
Strong's N.C. Index 4th, Evidence and Witnesses § 2514, Discretionary Authority of Trial Court--Propriety of Disclosure of Particular Privileged Information.
Strong's N.C. Index 4th, Evidence and Witnesses § 2519, Compelling Disclosure.
Strong's N.C. Index 4th, Evidence and Witnesses § 2535, Health Care Provider and Recipient.
Strong's N.C. Index 4th, Health § 12, Confidentiality of Records.
Strong's N.C. Index 4th, Worker's Compensation § 220, Employer's Duty to Provide Medical Compensation--Managed Care Organizations.
Strong's N.C. Index 4th, Worker's Compensation § 399, Inapplicability of Physician-Patient Privilege.

## Forms

AMJUR PP Forms Physicians Surgeons & Healers § 56, Introductory Comments.

## Treatises and Practice Aids

Admissibility of Evidence in North Carolina § 16:33, Privilege.
North Carolina Law of Damages § 20:12, Workers' Compensation Benefits.
Shuford N.C. Civil Practice and Procedure § 26:6, Scope of Examination--Privileged Matter.
N.C. Juvenile Code: Prac. & Proc. § 5:2, Statutory Evidentiary Privileges.

Wharton's Criminal Evidence § 37:35, North Carolina.

Wright & Miller: Federal Prac. & Proc. RR 504, Rejected Rule 504. Patient's Privilege.

Notes of Decisions (171)

N.C.G.S.A. § 8-53, NC ST § 8-53

The statutes and Constitution are current through S.L. 2013-128, 130-144 of the 2013 Regular Session of the General Assembly.

End of Document © 2013 Thomson Reuters. No claim to original U.S. Government Works.

257 N.C. 32
Supreme Court of North Carolina.

Juanita SIMS, by her Next Friend, Ruth Mae Sims,
v.
CHARLOTTE LIBERTY MUTUAL INSURANCE COMPANY.

No. 379 | May 2, 1962

Beneficiary of life policy brought an action against the insurer to recover death benefits. The Superior Court, Forsyth County, Walter E. Crissman, J., rendered a judgment adverse to the insurer, and the insurer appealed. The Supreme Court, Moore, J., held that instruction that insurer contended that where false statements are made in application and they are material statements, insurer should not be held liable, was prejudicially erroneous.

New trial.

**327 *33 This is a civil action to recover death benefits provided in a policy of insurance issued by defendant on the life of Delia Sims, plaintiff beneficiary's mother. On 12 January 1959 the insured, Delia Sims, signed a written application on the basis of which the policy was issued on 26 January 1959. To question No. 14, 'Are you in good health?', the insured answered, 'Good.' To question No. 18, 'Have you ever had: heart trouble, high blood pressure, paralysis, asthma, tuberculosis, cancer, diabetes, kidney trouble, ulcers, syphilis, tumor, neurosis or alcoholism?' the insured answered, 'None.' 'Have you had any disease, illness or injury not mentioned herein? ' Insured answered 'No.' The application included the following statement **328 by insured: 'I certify that the above statements and representations are complete and true. I agree that no obligation shall exist against said Company by reason of this application, although I may have made a deposit thereon, unless a policy is delivered to me, and unless upon said delivery I shall be alive and in good health.'

The policy provided for coverage of $980 or double that amount if death resulted 'solely through external, violent and accidental means.'

Insured died on 31 January, 1959, five days after the policy was issued.

Defendant denied liability on the ground that the application contained false statements with respect to insured's health.

*34 Defendant introduced in evidence the signed application containing the quoted questions and answers. It attempted to introduce the properly authenticated records of Kate Bitting Reynolds Memorial Hospital showing the insured had been a patient and had been treated (1) for nine days in March, 1956; (2) ten days in April, 1957; (3) eleven days in July, 1957; (4) four days in October, 1957; and (5) the final admission on 31 January 1959—the date of death. In ruling upon plaintiff's objection to the hospital records, the court said: 'I will allow these for the purpose of showing when she was in the hospital * * * and for no other purpose.' The exclusion of these records for other purposes is the basis of defendant's Assignment of Error No. 1.

The records in the time sequence of admission to the hospital showed the following diagnoses: (1) burns, nutritional anemia; (2) acute alcoholism, gastritis, chronic alcoholism, portal cirrhosis; (3) cirrhosis of the liver, chronic alcoholism; (4) valvular heart disease, and (5) the admission diagnosis of 31 January 1959, 6:30 P. M., cirrhosis, concussion, pancreatitis, and the final diagnosis at 9:30 P. M., subdural hematoma, chronic alcoholism, chronic pancreatitis, and tubular nephrosis.

Issues were submitted to and answered by the jury as follows:

'1. Did Delia Sims in the written application to the defendant represent that she was in good health on the date of the issuance of said application? Answer: Yes.

'2. Was said representation false? Answer: No.

'3. Did Delia Sims represent in her written application to the defendant that she had no disease at the time of the issuance of said application? Answer: Yes.

'4. Was said representation false? Answer: No.

'5. Was the death of Delia Sims caused by accidental means? Answer: Yes.

'6. What amount, if any, is the plaintiff entitled to recover of the defendant? Answer: $1960.00.'

The court entered judgment against the defendant for $1960.00, double the face value of the policy, from which defendant appealed.

Sims v. Charlotte Liberty Mut. Ins. Co., 257 N.C. 32 (1962)
125 S.E.2d 326

**Attorneys and Law Firms**

Hoyle C. Ripple, Winston-Salem, for plaintiff.

Womble, Carlyle, Sandridge & Rice and Wesley Bailey, Winston-Salem, for defendant.

**Opinion**

MOORE, Justice.

The trial court excluded the contents of the hospital records without assigning any reason for the ruling. Consequently if they were inadmissible on any legal ground, the ruling should be upheld. *35 The plaintiff insists the records were inadmissible upon two grounds: (1) as hearsay, and (2) as privileged communications.

[1] [2] Hospital records, when offered as primary evidence, are hearsay. However, we think they come within one of the well recognized exceptions to the hearsay rule—entries made in the regular course of business. **329 Modern business and professional activities have become so complex, involving so many persons, each performing a different function, that an accurate daily record of each transaction is required in order to prevent utter confusion. An inaccurate and false record would be worse than no record at all. Ordinarily, therefore, records made in the usual course of business, made contemporaneously with the occurrences, acts, and events recorded by one authorized to make them and before litigation has arisen, are admitted upon proper identification and authentication. Smith Builders Supply Co. v. Dixon, 246 N.C. 136, 97 S.E.2d 767; Breneman Co. v. Cunningham, 207 N.C. 77, 175 S.E. 829; Insurance Co. v. Seaboard Air Line R. Co., 138 N.C. 42, 50 S.E. 452.

[3] It is a matter of common knowledge, we think, that modern hospitals are staffed by medical, surgical and technological experts who serve as members of a team in the diagnosis and treatment of human ills and injuries. The hospital record of each patient is the daily history made in the course of examination, diagnosis and treatment. The welfare, even the life of the patient, depends upon the accuracy of the record. And the records, as evidence, are more credible perhaps, as to accuracy, than the independent recollection of the physicians, surgeons and technicians who make them. Motive for falsification is lacking. Globe Indemnity Co. v. Reinhart, 152 Md. 439, 137 A. 43; 26 Am.Jur., Hospitals and Asylums, s. 6, p. 590; 75 A.L.R. 1124; 13 N.C.Law Review 326; 24 Missouri Law Review 51; 58 West Virginia Law Review 76; 14 Southern California Law Review 99. On this subject Parker, J., of the United States Court of Appeals for the Fourth Circuit, delivered an illuminating opinion—United States v. Wescoat, 49 F.2d 193.

[4] [5] In instances where hospital records are legally admissible in evidence, proper foundation must, of course, be laid for their introduction. The hospital librarian or custodian of the record or other qualified witness must testify to the identity and authenticity of the record and the mode of its preparation, and show that the entries were made at or near to the time of the act, condition or event recorded, that they were made by persons having knowledge of the data set forth, and that they were made ante litem motam. The court should exclude from jury consideration matters in the record which are immaterial and irrelevant to the inquiry, and entries which amount to hearsay on hearsay.

*36 The hospital records offered at the trial are not inadmissible as hearsay. They fall within the exception to the hearsay rule.

The next inquiry is whether or not the hospital records are privileged under the provisions of G.S. s 8-53 and therefore inadmissible.

At common law communications from patients to physicians are not privileged. Such privilege is purely statutory. It is the purpose of such statutes to induce the patient to make full disclosure that proper treatment may be given, to prevent public disclosure of socially stigmatized diseases, and in some instances to protect patients from self-incrimination. In 1828 New York became the first state to recognize the privilege. Now twenty-nine states have statutes dealing with this subject. In 1885 the General Assembly of North Carolina passed an Act providing: 'No person duly authorized to practice physic or surgery shall be required to disclose any information which he may have acquired in attending a patient in a professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or to do any act for him as a surgeon: Provided, that the presiding judge of a superior court may compel such disclosure, if in his opinion the same is necessary to a proper administration of justice.' Ch. 159, Laws of N. C., 1885; G.S. s 8-53. Except for the proviso, our law is the same as the original New York statute.

[6] The caption or title of our statute according to the original enactment is: **330 'An act making it unlawful for physicians or surgeons to disclose information lawfully communicated to them by their patients.' From this it would

appear that the statute relates only to information orally communicated to the physician or surgeon by the patient. But the act itself is more comprehensive than the title and extends the privilege to include also any information which the physician or surgeon acquires in attending the patient in a professional character, and which is necessary to enable him to prescribe for or treat the patient. It is the law in this jurisdiction that the caption or title of a statute will be considered in its construction when the meaning of the act is doubtful, but when, as in G.S. s 8-53, the text is clear the title does not control. Town of Blowing Rock v. Gregorie, 243 N.C. 364, 371, 90 S.E.2d 898; In re Chisholm's Will, 176 N.C. 211, 96 S.E. 1031. We have no constitutional provision giving special significance to statute titles as has Pennsylvania for instance. In that state a statute is constitutional only to the extent that its purpose is clearly expressed in the title. A Pennsylvania statute renders privileged the information a physician acquires in attending the patient in a professional capacity and which tends to blacken the character of the patient. But the title of the statute refers only to communications. The Pennsylvania court limits *37 the privilege to oral communications. In re Phillips' Estate, 295 Pa. 349, 145 A. 437 (1929).

The North Carolina statute has been construed as follows: 'It is the accepted construction of this statute that it extends, not only to information orally communicated by the patient, but to knowledge obtained by the physician or surgeon through his own observation or examination while attending the patient in a professional capacity, and which was necessary to enable him to prescribe. ' Smith v. John L. Roper Lumber Co., 147 N.C. 62, 64, 60 S.E. 717, 718, citing cases from other jurisdictions. It is conceded that in the Smith case such construction of the statute was only incidentally necessary to decision on the facts presented. But this construction has been followed by us in many cases directly involving information obtained by physicians and surgeons through examination and treatment. Brittain v. Piedmont Aviation, Inc., 254 N.C. 697, 120 S.E.2d 72; Capps v. Lynch, 253 N.C. 18, 116 S.E.2d 137; Yow v. Pittman, 241 N.C. 69, 84 S.E.2d 297; Creech v. Sovereign Camp Woodmen of the World, 211 N.C. 658, 191 S.E. 840; Sawyer v. Weskett, 201 N.C. 500, 160 S.E. 575; Metropolitan Life Insurance Co. v. Boddie, 194 N.C. 199, 139 S.E. 228.

Most of the privilege statutes in the states having such legislation are similar to ours and were modeled after the original New York statute. However, in seven states the privilege is limited by statute to oral communications, and court decisions generally follow the statutes as written. In some jurisdictions the privilege statutes are strictly construed on the theory that they are in derogation of the common law; in others the courts say that the statutes are remedial and consequently should be liberally construed. 39 Michigan Law Review 1258. Ohio has a statute which limits privilege to communications by the patient, but its courts hold that a communication may be, not only by word of mouth, but also by exhibiting the body or any part thereof to the physician for his opinion, examination or diagnosis. Meier v. Peirano, 76 Ohio App. 9, 62 N.E.2d 920 (1945). North Carolina is a strict constructionist. We are not disposed to extend the privilege beyond the plain sense of the text of the statute, but we are required to give effect to that.

[7] [8] [9] [10] We have not heretofore had occasion to apply the statute in a hospital records case. Frankly, we perceive no difference in the application of the statute between examination and treatment of the patient by a physician or surgeon in a hospital and in the home. The information is no less privileged that it was obtained in a hospital. 'It may be laid down as a general rule that the incompetency of a physician **331 to testify concerning information acquired while attending a person in a professional capacity extends to a physician connected *38 with a hospital * * * who offers testimony as to the condition of the patient therein,' where his duty in the hospital involved professional attention to the patient. 22 A.L.R., Anno.— Witness—Hospital Physicians, p. 1217, where many cases from many jurisdictions are cited and reviewed. A fortiori, if the hospital physician is incompetent personally to testify to information obtained, entries made by him or under his direction pertaining to the same matter is inadmissible as evidence. We therefore hold that G.S. s 8-53 applies to the hospital records offered in evidence in this case insofar as they contain entries made by physicians and surgeons, or under their direction, pertaining to communications and information obtained by them in attending the insured professionally, which information was necessary to enable them to prescribe for her. However, any other information contained in the records, if relevant and otherwise competent, is not privileged. The effect of the statute is not extended to include nurses, technicians and others, unless they were assisting, or acting under the direction of, a physician or surgeon. Prudential Life Ins. Co. v. Kozlowski, 226 Wis. 641, 276 N.W. 300 (1937); 14 Southern California Law Review 109.

[11] [12] In North Carolina the statutory privilege is not absolute, but is qualified. A physician or surgeon may not

refuse to testify; the privilege is that of the patient. And G.S. s 8-53 provides that notwithstanding a claim of privilege on the part of the patient, the presiding judge of superior court may compel the physician or surgeon to disclose communications and information obtained by him 'if in his (the judge's) opinion the same is necessary to a proper administration of justice.' In such case the judge shall enter upon the record his finding that the testimony is necessary to a proper administration of justice. Sawyer v. Weskett, supra; State v. Newsome, 195 N.C. 552, 143 S.E. 187. The judge, in the exercise of discretion and by the same authority, may follow the same procedure and admit hospital records in evidence.

[13] It seems to us that the privilege statute, when strictly applied without the exercise of discretion on the part of the judge, is more often unjust than just. We are generally in agreement with the following comment: 'Certain it is that the practical employment of the privilege has come to mean little but the suppression of useful truth, * * * Ninety-nine per cent of the litigation in which the privilege is invoked consists of three classes of cases,—on policies of life insurance, where * * * misrepresentations of * * * health are involved; * * * for corporal injuries, where the extent of plaintiff's injury is at issue; and testamentary actions, where * * * mental capacity is disputed.' Wigmore on Evidence, 3d Ed., Vol. VIII, s. 2380, p. 814. Our Legislature intended the statute to be a shield and not a sword. It was careful to make provision to avoid injustice and suppression of truth by putting it in the *39 power of the trial judge to compel disclosure. Judges should not hesitate to require the disclosure where it appears to them to be necessary in order that the truth be known and justice be done. The Supreme Court cannot exercise such authority and discretion, nor can it repeal or amend the statute by judicial decree. If the spirit and purpose of the law is to be carried out, it must be at the superior court level.

The case at bar vividly illustrates the anomalous situation in which a trial judge may be placed by failure to exercise the authority and discretion given by the statute. There had been tendered, but excluded, hospital records tending strongly to show that the insured, nineteen days after she had applied for insurance and five days after issuance of the policy, was suffering from cirrhosis, chronic pancreatitis, tubular nephrosis and chronic alcoholism. Yet in instructing the jury as to plaintiff's contentions, **332 the judge said: '* * * (T)he plaintiff * * * says and contends that there isn't any evidence here of any falsity at all; that the hospital is supposed to get you well; that that's what you go there for, and that many people have just as good health, have better health after they have made some trips to the hospital and they have found the trouble, than they have ever had before. * * *' Thus the court in view of the evidence admitted and heard by the jury felt compelled to suggest, on behalf of plaintiff, that insured was in good health at the time she applied for insurance, and that her admissions to the hospital (five in four years) were immaterial. Yet evidence was available and at hand that insured was suffering from a complication of serious chronic diseases. What is said here is not intended, and it may not be taken, as any reflection upon or criticism of the eminent, conscientious and learned jurist who tried the case. His integrity is beyond question. He may well have excluded the hospital records because he thought them to be hearsay and for lack of a former ruling by this Court as to the admissibility of hospital records.

[14] On this record and in the absence of a finding by the trial court that, in its opinion, the admission of the hospital records was necessary to a proper administration of justice, we are compelled to hold that their exclusion was not error.

[15] Defendant challenges the following portion of the charge: '* * * (T)he defendant says and contends that where false statements are made that are material statements, that it has a bearing upon the issuance of the policy, if those are made in the application, and that if false statements are made by the insured and the insurance company has no knowledge of it and it develops that they were false, that a policy was issued based upon false statements, that they shouldn't be held liable for it and should not have to make any payments on a condition of that kind.'

[16] [17] *40 From this instruction the jury may well have concluded that it had the duty of passing upon the materiality of insured's answers to the questions in the application concerning her health. This is not the case. 'In an application for a policy of life insurance, written questions relating to health and written answers thereto are deemed material as a matter of law. Tolbert v. Mutual Benefit Life Insurance Co., 236 N.C. 416, 419, 72 S.E.2d 915. The inquiry for the jury is whether or not insured made the statement and whether or not it was false.' Rhinehardt v. North Carolina Mutual Life Insurance Co., 254 N.C. 671, 673, 119 S.E.2d 614, 616. It is true that the questioned instruction was given as a contention, but a misstatement of pertinent law must be held prejudicial even though the misstatement is made in stating the contentions. Harris v. White Construction Co., 240 N.C. 556, 561, 82 S.E. 2d 689.

Sims v. Charlotte Liberty Mut. Ins. Co., 257 N.C. 32 (1962)
125 S.E.2d 326

[18] Plaintiff's evidence was insufficient to establish her right to double indemnity, but she ought not to be deprived of the right to establish that fact if she can. Plaintiff's witness testified: 'I was not present when the blow was administered. I don't know whether the blow was inflicted through another person, or in a fight, or what the circumstances were of that, only through what they said, that she fell coming up the steps. Of my own personal knowledge, I do not know how the blow got there.' This is all the evidence with respect to insured's injury. This is insufficient to show bodily injury sustained solely through external, violent and accidental means. Furthermore, in the charge the court did not anywhere explain the term 'accidental means.'

New trial.

HIGGINS, Justice (concurring in the result).

The record requires a new trial. However, I am unable to agree that G.S. s 8-53 makes inadmissible properly authenticated **333 hospital records in so far as they show clinical findings and diagnoses. The majority opinion makes out a better case for admitting the records than it does for excluding them.

The basis for exclusion is laid in a New York statute passed 144 years ago and copied by North Carolina 77 years ago: 'No person duly authorized to practice physic or surgery shall be required to disclose any information he may have acquired, etc.' (emphasis added) The equipment of a person duly authorized to practice physic consisted of a thermometer, a pair of tooth pullers, and probably a stethoscope. His method of diagnosis consisted of some thumping around over the body and a most detailed inquiry into the patient's complaints. Boneset tea was up-to-date medication. Methods now common to every hospital were as unknown as the back side of the moon.

Even in 1908, when this Court wrote the dictum in *41 Smith v. John L. Roper Lumber Company, 147 N.C. 62, 60 S.E. 717, some of the cities had hospitals operated by a small staff and with meager equipment. The practitioner of physic had become a doctor. His treatment usually took place in the home. His training and instruments were greatly improved. He carried a most interesting case of small bottles, some containing tablets and powders, others liquids of many colors. Still, much detailed inquiry preceded the diagnosis and treatment. If the patient was fortunate enough to get to a hospital, the family physician usually conferred with the staff and passed on what information he had acquired. However, the only record the family doctor kept was a memorandum in a little vest pocket notebook showing the balance due for the treatment.

What a difference today] It is a matter of common knowledge that hospitals are staffed by medical, surgical, technological experts, and research specialists who serve as members of a team in diagnoses and treatment of human ills and injuries. The X-ray, the fluoroscope, the electrocardiograph, and the test tube show the patient's condition. Except in mental cases the examination may begin by this question to the patient: Where is the pain and how long have you had it? Otherwise the machines and the scientific tests tell the story. What they say becomes the hospital record. The diagnosis is the evaluation of the findings.

Should such a record be kept from a court charged with the duty of ascertaining the truth about a subject's physical condition?

The law of evidence is never frozen. Justice Connor had something to say on this subject in 1905 in a case involving the admission of a 'train sheet' in evidence. Insurance Co. v. Seaboard Air Line R. Co., 138 N.C. 42, 50 S.E. 452: 'The question is of first impression in this state. We have given it careful and anxious consideration, desiring to make no departure from the well-settled principles of the law of evidence or the decisions of this court, at the same time recognizing and keeping in view the duty of the court to make diligent effort to find in those general principles such safe and reasonable adaptability that in the changing conditions of social, commercial, and industrial life there may be no wide divergence in the decisions from the standards by which men are guided and controlled in important practical affairs. The law of evidence, based upon certain more or less well-defined general rules, evolved from experience, has been molded by judicial decision and legislative enactment into a system having for its end and purpose, and believed to be adapted to, the discovery of truth in judicial proceedings. Mr. Greenleaf says: 'In the ordinary affairs of life we do not require demonstrative evidence, because it is not consistent with the nature of the subject, and to insist upon it would be unreasonable and absurd. The most that can be affirmed of such things is that there *42 is no reasonable doubt concerning them.' Prof. Thayer says: 'The law of evidence is the creature of experience rather than logic.''

**334 To me, the exclusion of hospital records is as out-of-date as the bustle, asafoetida, and the tomahawk. The statute does not require the exclusion unless a modern hospital is a

**Sims v. Charlotte Liberty Mut. Ins. Co., 257 N.C. 32 (1962)**
125 S.E.2d 326

person duly authorized to practice physic, and then only as to information he may have acquired.

PARKER, J., authorizes me to say that he shares the views here expressed, and joins in this opinion.

**Parallel Citations**

125 S.E.2d 326

---

**End of Document**      © 2013 Thomson Reuters. No claim to original U.S. Government Works.

241 N.C. 69
Supreme Court of North Carolina.

Mrs. Ruth YOW
v.
Dave Edward PITTMAN,
Jr., and William D. Gaston.

No. 313 | Nov. 3, 1954

Action for damages for personal injuries sustained in motor vehicle collision. Defendants made a motion for order requiring physician to submit to taking of deposition pertaining to medical history, examination, diagnosis and treatment of plaintiff. The Superior Court, Catawba County, J. C. Rudisill, J., after hearing in chambers, denied motion and a defendant appealed. The Supreme Court, Higgins, J., held that under statute providing that presiding judge of Superior Court can require doctor to make disclosure of information received from patient, only presiding judge of Superior Court in term had authority to enter order for deposition requiring such disclosure by doctor.

Affirmed.

**297 *69 This is a civil action pending in the Superior Court of Catawba County for injury plaintiff alleges she received by reason of the actionable negligence of the defendants in a tractor-trailer-automobile collision. Plaintiff alleges serious personal injury for which she seeks to recover $40,643.55. Each of the defendants answered, denying negligence and liability.

The defendants made a motion in the cause, asking the court for an order permitting **298 them to take the deposition of Dr. A. G. Brenizer, Jr., the physician who treated plaintiff for her injuries, and 'requiring the said doctor to submit himself to the taking of said deposition * * * pertaining to his examination, the medical history secured by him, his diagnosis and treatment of the plaintiff, and as to her present condition.' The defendants state in their motion: 'These defendants have no information concerning the plaintiff's physical condition prior to the collision out of which this action arises and have no information as to the nature *70 and extent of plaintiff's injuries * * * that the attorneys for the defendants are without sufficient medical information to properly defend this action.'

After notice, Judge Rudisill held a hearing in Chambers on August 28, 1954, and 'after reviewing the pleadings and two medical reports signed by Dr. Brenizer pertaining to plaintiff's injuries,' concluded he did not have the authority to order the examination, overruled the motion as a matter of law. The defendants excepted and appealed. Only the defendant Gaston perfected his appeal and filed a brief.

**Attorneys and Law Firms**

Mary Gaither Whitener, Louis A. Whitener, Hickory, for plaintiff, appellee.

James C. Smathers, Hickory, for defendant William D. Gaston, appellant.

**Opinion**

HIGGINS, Justice.

The defendants applied for an order of court permitting them to take, and requiring Dr. Brenizer to submit to the taking of, a deposition 'pertaining to his examination, medical history secured by him, his diagnosis and treatment of the plaintiff, * * *.' Such a deposition would require the physician to disclose not only his clinical findings, diagnosis and treatment, but 'the history secured by him' from the plaintiff—information of a very confidental nature.

[1] [2] The defendants do not proceed under the deposition statute, G.S. s 8-71, broad as its provisions are: 'Any party in a civil action or special proceeding, upon giving notice to the adverse party or his attorney as provided by law, may take the depositions of persons whose evidence he may desire to use, without any special order therefor, unless the witness shall be beyond the limits of the United States.' This statute does not contemplate the taking of deposition of a person disqualified to give evidence in the case. It confers no right to investigate or inquire into matters which the court could not investigate and inquire into in the actual trial. The deposition statute, therefore, must be considered in connection with G.S. s 8-53, which provides: 'Communications between physician and patient.—No person, duly authorized to practice physic or surgery, shall be required to disclose any information which he may have acquired in attending a patient in a professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or to do any act for him as a surgeon: Provided, that the presiding judge of a superior court may compel such disclosure, if in his opinion the same is necessary to a proper administration of justice.' (Emphasis added.)

[3] [4] One of the objects of this statute is to encourage full and frank disclosure to the doctor. The law protects the patient's secrets and makes it the duty of the doctor to keep them, a duty he cannot waive. The veil of secrecy can be drawn aside only by the patient or by 'the presiding *71 judge of a superior court', and by him only when the ends of justice require it.

In construing C.S. s 1798, now G.S. s 8-53, Justice Brogden, in the case of Sawyer v. Weskett, 201 N.C. 500, 160 S.E. 575, said: 'C.S. s 1798, prescribes the privilege protecting physicians in disclosing confidential information acquired in the course of employment in treating a patient. This statute was construed in Metropolitan Life Ins. Co. v. Bobbie, 194 N.C. 199, 139 S.E. 228, and in State v. Newsome, 195 N.C. 552, 143 S.E. 187, 191. The opinion in the Newsome case, supra, declares: 'If the statements were privileged under this **299 statute, then, in the absence of a finding by the presiding judge, duly entered upon the record, that the testimony was necessary to a proper administration of justice, it was incompetent, and, upon defendant's objection, should have been excluded.''

[5] The statute contemplates a superior court in term. As stated in the cases cited, the presiding judge must enter his findings upon the record. This he can do only in term and after hearing. While Judge Rudisill was a Judge of the Superior Court, he was not at the time the presiding judge of a superior court in term. He had no authority to enter the requested order in Chambers. It follows, therefore, that he was correct in denying the motion as a matter of law.

Affirmed.

**Parallel Citations**

84 S.E.2d 297

End of Document                    © 2013 Thomson Reuters. No claim to original U.S. Government Works.

WestlawNext © 2013 Thomson Reuters. No claim to original U.S. Government Works.                    2

KeyCite Yellow Flag - Negative Treatment
Distinguished by James v. Bledsoe, N.C.App., July 21, 2009

261 N.C. 754
Supreme Court of North Carolina.

Clifford J. LOCKWOOD
v.
Earl McCASKILL, and Charles Albert Macon d/b/a C. A. M. Machine Company.

No. 234   |   May 6, 1964

Proceeding wherein appeal was taken from an order of the Superior Court, Mecklenburg County, John D. McConnell, J., permitting defendants in a pending action to take the deposition of plaintiff's physician. The Supreme Court, Bobbitt, J., held that statute does not authorize superior court judge, based on circumstances that he is then presiding in county in which an action is pending, to strike down physicianpatient privilege in respect to any and all matters concerning which physician might be asked at a deposition hearing.

Reversed.

**67 *755 Plaintiff's action is to recover damages for personal injuries and property damage he sustained as a result of a collision that occurred February 11, 1963, at a street intersection in Charlotte, North Carolina, between a Chevrolet car owned and operated by plaintiff and a Chevrolet truck owned by defendant Macon and then operated by Earl McCaskill as Macon's agent. Plaintiff alleged the collision and his injuries and damage were proximately caused by the negligent manner in which McCaskill operated the truck.

McCaskill, although named as a defendant, was not served with process.

Summons and complaint were served on Macon on May 14, 1963. On account of his failure to answer or otherwise plead, judgment by default and inquiry was entered against Macon on June 24, 1963. Prior to the execution of the 'inquiry * * before a jury to determine the amount of said damages,' counsel for Macon on September 4, 1963, filed an 'Entry of Appearance,' and on October 17, 1963, filed a motion for an order permitting them to take the deposition of Dr. Thomas H. Wright.

In said motion, counsel for Macon assert: That 'the defendants are informed and believe and therefore allege that the plaintiff **68 was placed under the care of a psychiatrist, Dr. Thomas H. Wright, sometime in May of 1963 for the treatment of certain injuries to his mental health and that the plaintiff claims that said injuries to his mental health and said psychiatric care were causally related to the accident referred to in the complaint'; that 'the defendants are not advised as to the nature and extent of the injury to the plaintiff's mental health, or as to the present condition of the plaintiff's mental health and have been unable to secure any medical reports as to the condition of the plaintiff's mental health'; that 'Dr. Thomas H. Wright as the psychiatrist who treated the plaintiff is the person most qualified to furnish defendants an accurate statement as to the condition of the plaintiff's mental health and that the defendants desire to depose the said Dr. Thomas H. Wright with regard to the injury to the plaintiff's *756 mental health and as to his present mental condition'; and that 'such deposition is necessary to enable the defendants to properly defend this action and to properly prepare for trial thereof and the ends of justice require that the defendants be permitted to examine the said Dr. Thomas H. Wright with regard to the matters referred to above.'

On October 24, 1963, Judge McConnell, granting the prayer of the petition, entered the following order:

'This cause coming on to be heard and being heard before the Honorable John D. McConnell, Judge presiding at the October 21st Regular Schedule 'C' Term of the Superior Court of Mecklenburg County, on motion by the defendants for an order permitting them to take the deposition of one of the plaintiff's treating physicians, Dr. Thomas H. Wright and the Court, after hearing arguments of counsel, finding as a fact that said deposition is necessary to the proper administration of justice, and being of the opinion that in its discretion said motion should be allowed;

Opinion

'IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that said motion be and it is hereby allowed and that the defendants may take the deposition of the said Dr. Thomas H. Wright at a time and place convenient for said doctor and that said doctor shall submit himself to the taking of said deposition pertaining to his examinations of the plaintiff relative to the injuries to the plaintiff's mental and emotional health subsequent to the accident occurring on or about the 11th day of February 1963, referred to in the complaint including the plaintiff's medical history as secured

by him, his diagnosis and treatments of the plaintiff, the results of any tests conducted as a part of his examinations and treatments of the plaintiff and as to the plaintiff's present condition.'

Plaintiff excepted to said order and appealed.

**Attorneys and Law Firms**

H. Parks Helms, Charlotte, for plaintiff appellant.

Kennedy, Covington, Lobdell & Hickman and Charles V. Tompkins, Jr., Charlotte, for defendant appellee Macon.

BOBBITT, Justice.

Referring to the deposition statute, G.S. s 8-71, this Court in Yow v. Pittman, 241 N.C. 69, 84 S.E.2d 297, in opinion by Higgins, J., said: 'This statute does not contemplate the taking of deposition of a person disqualified to give evidence in the case.'

As in Yow, the deposition statute must be considered in connection with G.S. s 8-53, which provides: 'Communications between physician and patient.—No person, duly authorized to practice physic or surgery, *757 shall be required to disclose any information which he may have acquired in attending a patient in a professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or to do any act for him as a surgeon: Provided, that the presiding judge of a superior court may compel such disclosure, if in his opinion the same is **69 necessary to a proper administration of justice.'

In Yow, a similar motion was heard by Judge Rudisill, the Resident Judge, in Chambers. His denial of the motion as a matter of law was affirmed by this Court. The ground of decision was stated as follows: 'While Judge Rudisill was a Judge of the Superior Court, he was not at the time the presiding judge of a superior court in term. He had no authority to enter the requested order in Chambers.'

While Judge McConnell was the Presiding Judge at the October 21, 1963, Regular Schedule 'C' Session of Mecklenburg Superior Court, this case was not before him for trial. It was brought before him on October 24, 1963, solely for hearing on said motion of October 17, 1963.

Questions relating to the privilege created by G.S. s 8-53 have been discussed and decided often by this Court. Capps v. Lynch, 253 N.C. 18, 116 S.E.2d 137, and cases cited; Sims v. Charlotte Liberty Mutual Insurance Co., 257 N.C. 32, 125 S.E.2d 326, and cases cited. In all of our decisions except Yow v. Pittman, supra, the questions presented related to rulings made during the progress of the trial by the presiding superior court judge.

'It is the accepted construction of this statute (G.S. s 8-53) that it extends, not only to information orally communicated by the patient, but to knowledge obtained by the physician or surgeon through his own observation or examination while attending the patient in a professional capacity, and which was necessary to enable him to prescribe.' Smith v. John L. Roper Lumber Co., 147 N.C. 62, 64, 60 S.E. 717, 718; Sims v. Charlotte Liberty Mutual Insurance Co., supra, 257 N.C. p. 37, 125 S.E.2d 326, and cases cited.

[1] Undoubtedly, Judge McConnell's order purports to compel Dr. Wright to testify concerning matters which otherwise would be privileged. Whether Dr. Wright's deposition is offered in evidence is immaterial. If and when Dr. Wright is required to testify concerning privileged matters at a deposition hearing, eo instante the statutory privilege is destroyed. This fact precludes dismissal of the appeal as fragmentary and premature. Cf. Waldron Buick Co. v. General Motors Corp., 251 N.C. 201, 110 S.E.2d 870.

[2] In the construction of G.S. s 8-53, our chief concern is to ascertain the legislative intent. As stated by Stacy, C. J., in Branch Banking & Trust Co. v. Hood, Comr. of Banks, 206 N.C. 268, 270, 173 S.E. 601, 602: 'The heart of a statute is the intention of the lawmaking body.' In performing our judicial task, *758 'we must avoid a construction which will operate to defeat or impair the object of the statute, if we can reasonable do so without violence to the legislative language.' Ballard v. City of Charlotte, 235 N.C. 484, 487, 70 S.E.2d 575, 577.

Appellee contends the statute, G.S. s 8-53, is in derogation of the common law and should be strictly construed. However, we are not considering what matters are privileged or questions relating to waiver of the statutory privilege. Rather, our question is what superior court judge, upon appropriate findings of fact, may compel disclosure.

The following statement is pertinent: 'A proviso should be construed together with the enacting clause or body of the act, with a view to giving effect to each and to carrying out the intention of the legislature as manifested in the entire act and acts in pari materia. A strict but reasonable construction is to be given to the proviso so as to take out of the enacting

clause only those cases which are fairly within the terms of the proviso.' 82 C.J.S. Statutes s 381b (1). Here, construction of the proviso is necessary to decision.

[3] The sole purpose of the 1885 statute (Public Laws of 1885, Chapter 159), now codified as G.S. s 8-53, was to create **70 a privileged relationship between physician and patient. In view of this primary purpose, we think it clear the proviso was intended to refer to exceptional rather than ordinary factual situations.

[4] Under a literal interpretation, the words of the proviso, 'the presiding judge of a superior court,' might include the superior court judge currently presiding in the judicial district. As indicated above, we have held they refer solely to a superior court judge presiding 'in term.' Too, the words, 'the presiding judge of a superior court,' might include any superior court judge who happens to be presiding over any term in any county in North Carolina. We think it obvious they refer solely to a judge presiding at a term of superior court in the county in which the action is pending. In short, the words, 'the presiding judge of a superior court,' must be construed to effectuate rather than to defeat the dominant purpose of the statute.

In our view, it was the intention of the General Assembly that the presiding judge authorized to compel disclosure by a physician on the ground such disclosure is necessary to the proper administration of justice is the judge presiding on the occasion when the physician is called upon to testify, namely, the trial judge. All relevant circumstances, including the nature and character of evidence offered by or in behalf of the injured person, are available for consideration by the trial judge. Moreover, the trial judge may ascertain from the physician the nature of the evidence involved and may determine what part, if any, *759 should be disclosed as necessary to the proper administration of justice. Obviously, the proper administration of justice might require disclosure as to certain but not as to all matters under the privilege. In short, we think it was intended that disclosure should be compelled only when the examination of the physician was conducted under the supervision of the trial judge.

G.S. s 8-71 provides that a party may take 'the depositions of persons whose evidence he may desire to use.' (Our italics) Appellee's contention, as stated in his brief, is that disclosure 'is necessary to enable the defendant to accurately evaluate the case against him and to prepare his defense.'

[5] In our view, the proviso in G.S. s 8-53 does not authorize a superior court judge, based on the circumstance that he is then presiding in the county in which the action is pending, to strike down the statutory privilege in respect of any and all matters concerning which the physician might be asked at a deposition hearing. Doubtless, in practically all personal injury actions the defendant would deem it advisable, if permitted to do so, to examine before a commissioner or notary public in advance of trial the physician(s) of the injured party to 'evaluate the case' and 'to prepare his defense.' Obviously, if this course were permitted, the privilege created by the statute would be substantially nullified. This practice, if considered desirable, should be accomplished by amendment or repeal of the statute.

Although the question before us was not decided or drawn into focus, expressions in opinions of this Court would seem to indicate an understanding that the words, 'the presiding judge of a superior court,' refer to the superior court judge who presides at the trial. Creech v. Sovereign Camp of Woodmen of the World, 211 N.C. 658, 661, 191 S.E. 840, 842; Sims v. Charlotte Liberty Mutual Insurance Co., supra, 257 N.C. pp. 38-39, 125 S.E.2d 326.

With reference to examinations prior to trial by court-appointed physicians to ascertain the nature and extent of alleged injuries, see Helton v. Stevens Co., 254 N.C. 321, 118 S.E.2d 791.

In view of the foregoing, we need not consider whether the motion itself and the record proper constitute a sufficient basis **71 for a finding 'that said deposition is necessary to a proper administration of justice.'

For the reasons stated, the order of the court below is reversed.

Reversed.

**Parallel Citations**

136 S.E.2d 67

End of Document                                               © 2013 Thomson Reuters. No claim to original U.S. Government Works.

WestlawNext © 2013 Thomson Reuters. No claim to original U.S. Government Works.                                       3

North Carolina Administrative Code
 Title 10A. Department of Health and Human Services (Refs & Annos)
  Chapter 13. Nc Medical Care Commission
   Subchapter 13C. Licensing of Ambulatory Surgical Facilities
    Section .1000. Medical Records Services

10A NCAC 13C.1002

.1002 INDIVIDUAL PATIENT RECORDS

Currentness

(a) Each patient's medical record shall be maintained in accordance with professional standards and shall include at least the following information:

   (1) patient's identification, including name, address, date of birth, next of kin and a patient number;

   (2) admitting diagnosis;

   (3) preoperative history and physical examination pertaining to the procedure to be performed;

   (4) anesthesia report;

   (5) surgeon's operative report;

   (6) anesthesiologist's or anesthetist's report if applicable;

   (7) pertinent laboratory, pathology and X-ray reports;

   (8) postoperative orders and follow-up care;

   (9) discharge summary, including discharge diagnosis;

   (10) record of informed consent; and

   (11) physician's, dentist's, and nurse's progress notes.

(b) The administrator shall be responsible for safeguarding information on the medical record against loss, tampering, or use by unauthorized persons.

.1002 INDIVIDUAL PATIENT RECORDS, 10A NC ADC 13C.1002

(c) Medical records shall be the property of the facility and shall not be moved from the premises wherein they are filed except by subpoena or court order.

(d) For licensing purposes the length of time that medical records are to be retained is dependent upon the need for their use in continuing patient care and for legal, research, or educational purposes. This length of time shall not be less than 20 years.

(e) Should a facility cease operation, there shall be an arrangement for preservation of records to insure compliance with these regulations. The Department shall be notified, in writing, concerning the arrangements.

Current with rules received through July 1, 2013

10A NCAC 13C.1002, 10A NC ADC 13C.1002

End of Document © 2013 Thomson Reuters. No claim to original U.S. Government Works.

North Carolina Administrative Code
　Title 10A. Department of Health and Human Services (Refs & Annos)
　　Chapter 13. Nc Medical Care Commission
　　　Subchapter 13B. Licensing of Hospitals
　　　　Section .3300. Patient's Bill of Rights

10A NCAC 13B.3302

.3302 MINIMUM PROVISIONS OF PATIENT'S BILL OF RIGHTS

Currentness

This Rule does not apply to patients in licensed nursing facility beds since these individuals are granted rights pursuant to G.S. 131E-117. A patient in a facility subject to this Rule has the following rights:

(1) A patient has the right to respectful care given by competent personnel.

(2) A patient has the right, upon request, to be given the name of his attending physician, the names of all other physicians directly participating in his care, and the names and functions of other health care persons having direct contact with the patient.

(3) A patient has the right to privacy concerning his own medical care program. Case discussion, consultation, examination, and treatment are considered confidential and shall be conducted discreetly.

(4) A patient has the right to have all records pertaining to his medical care treated as confidential except as otherwise provided by law or third party contractual arrangements.

(5) A patient has the right to know what facility rules and regulations apply to his conduct as a patient.

(6) A patient has the right to expect emergency procedures to be implemented without unnecessary delay.

(7) A patient has the right to good quality care and high professional standards that are continually maintained and reviewed.

(8) A patient has the right to full information in laymen's terms, concerning his diagnosis, treatment and prognosis, including information about alternative treatments and possible complications. When it is not possible or medically advisable to give such information to the patient, the information shall be given on his behalf to the patient's designee.

(9) Except for emergencies, a physician must obtain necessary informed consent prior to the start of any procedure or treatment, or both.

(10) A patient has the right to be advised when a physician is considering the patient as a part of a medical care research program or donor program. Informed consent must be obtained prior to actual participation in such a program and the patient or legally

responsible party, may, at any time, refuse to continue in any such program to which he has previously given informed consent. An Institutional Review Board (IRB) may waive or alter the informed consent requirement if it reviews and approves a research study in accord with federal regulations for the protection of human research subjects including U.S. Department of Health and Human Services (HHS) regulations under 45 CFR Part 46 and U.S. Food and Drug Administration (FDA) regulations under 21 CFR Parts 50 and 56. For any research study proposed for conduct under an FDA "Exception from Informed Consent Requirements for Emergency Research" or an HHS "Emergency Research Consent Waiver" in which informed consent is waived but community consultation and public disclosure about the research are required, any facility proposing to be engaged in the research study also must verify that the proposed research study has been registered with the North Carolina Medical Care Commission. When the IRB reviewing the research study has authorized the start of the community consultation process required by the federal regulations for emergency research, but before the beginning of that process, notice of the proposed research study by the facility shall be provided to the North Carolina Medical Care Commission. The notice shall include:

(a) the title of the research study;

(b) a description of the research study, including a description of the population to be enrolled;

(c) a description of the planned community consultation process, including currently proposed meeting dates and times;

(d) an explanation of the way that people choosing not to participate in the research study may opt out; and

(e) contact information including mailing address and phone number for the IRB and the principal investigator.

The Medical Care Commission may publish all or part of the above information in the North Carolina Register, and may require the institution proposing to conduct the research study to attend a public meeting convened by a Medical Care Commission member in the community where the proposed research study is to take place to present and discuss the study or the community consultation process proposed.

(11) A patient has the right to refuse any drugs, treatment or procedure offered by the facility, to the extent permitted by law, and a physician shall inform the patient of his right to refuse any drugs, treatment or procedures and of the medical consequences of the patient's refusal of any drugs, treatment or procedure.

(12) A patient has the right to assistance in obtaining consultation with another physician at the patient's request and expense.

(13) A patient has the right to medical and nursing services without discrimination based upon race, color, religion, sex, sexual orientation, gender identity, national origin or source of payment.

(14) A patient who does not speak English shall have access, when possible, to an interpreter.

(15) A facility shall provide a patient, or patient designee, upon request, access to all information contained in the patient's medical records. A patient's access to medical records may be restricted by the patient's attending physician. If the physician restricts the patient's access to information in the patient's medical record, the physician shall record the reasons on the patient's

medical record. Access shall be restricted only for sound medical reason. A patient's designee may have access to the information in the patient's medical records even if the attending physician restricts the patient's access to those records.

(16) A patient has the right not to be awakened by hospital staff unless it is medically necessary.

(17) The patient has the right to be free from duplication of medical and nursing procedures as determined by the attending physician.

(18) The patient has the right to medical and nursing treatment that avoids unnecessary physical and mental discomfort.

(19) When medically permissible, a patient may be transferred to another facility only after he or his next of kin or other legally responsible representative has received complete information and an explanation concerning the needs for and alternatives to such a transfer. The facility to which the patient is to be transferred must first have accepted the patient for transfer.

(20) The patient has the right to examine and receive a detailed explanation of his bill.

(21) The patient has a right to full information and counseling on the availability of known financial resources for his health care.

(22) A patient has the right to be informed upon discharge of his continuing health care requirements following discharge and the means for meeting them.

(23) A patient shall not be denied the right of access to an individual or agency who is authorized to act on his behalf to assert or protect the rights set out in this Section.

(24) A patient has the right to be informed of his rights at the earliest possible time in the course of his hospitalization.

(25) A patient has the right to designate visitors who shall receive the same visitation privileges as the patient's immediate family members, regardless of whether the visitors are legally related to the patient.

Current with rules received through July 1, 2013

10A NCAC 13B.3302, 10A NC ADC 13B.3302

End of Document                                                        © 2013 Thomson Reuters. No claim to original U.S. Government Works.