# ATTACHMENT 2

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | MDL No. 2419<br>Master Dkt.: 1:13-md-02419-FDS |
| THIS DOCUMENT RELATES TO:<br><br>All Actions | |

## THE PLAINTIFFS' STEERING COMMITTEE'S
## CONSOLIDATED RESPONSE TO SUBPOENA OBJECTIONS

# TABLE OF CONTENTS

INTRODUCTION .......................................................................................................................1

BACKGROUND ........................................................................................................................3

ACCOMMODATIONS...............................................................................................................4

    A.    The PSC will narrow the scope of the documents and information requested. ........................................................................................................5

    B.    The PSC will give objectors who agree to produce documents on a rolling basis until August 15, 2013 to complete their production..........................7

    C.    The PSC will forgo record keeper depositions, barring extenuating circumstances...........................................................................................7

LEGAL STANDARD...................................................................................................................7

RESPONSES TO OBJECTIONS ...................................................................................................8

I.      BURDEN (I.E., TIME AND EXPENSE) OBJECTIONS....................................................8

    A.    The request for production of documents is neither overly broad nor unduly burdensome; nevertheless, the PSC will cut back the scope of some requests...............................................................................8

    B.    The requested documents are relevant and are reasonably calculated to lead to the discovery of admissible evidence .....................................9

    C.    The time periods given by the Accommodations are reasonable. .........................10

    D.    Most subpoenaed information cannot be obtained from public sources or from NECC....................................................................................11

II.     JURISDICTIONAL AND PROCEDURAL OBJECTIONS.............................................12

    E.    This Court has jurisdiction to centrally enforce the subpoenas. ............................12

    F.    Plaintiffs may take discovery of nonparties...........................................................14

    G.    To the extent that the Court's orders limited the subpoenas' contents, the subpoenas comply with those Orders. ..............................................16

    H.    The subpoenas do not intentionally seek any privileged communications between attorneys and their clients............................................17

    I.    If the PSC takes depositions pursuant to the subpoena, the attendance fee will be paid.......................................................................................17

J.      Plaintiffs may seek discovery of parties through either Rule 45 or
        Rule 34. ...................................................................................................18

K.      The subpoenas were served in compliance with the Federal Rules. ......................19

L.      By definition, the subpoenas are limited to information in the
        recipient's possess, custody, or control .................................................................20

M.      The time to respond proposed in the Accommodations is
        reasonable. ..............................................................................................20

N.      Parties to the MDL knew subpoenas were going out to clinics and
        received copies of the subpoenas actually issued. .................................................21

III.    CONFIDENTIALITY OBJECTIONS ..............................................................................22

O.      The Protective Order will protect confidential information. ................................22

P.      The Court's Orders, the selected vendor, and the process provided
        for producing protected health information comply with HIPAA. ........................22

IV.     MOTIVE OBJECTIONS ...................................................................................................25

Q.      The PSC is doing its job, not trolling for clients ....................................................25

CONCLUSION ......................................................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adams v. Dolgencorp, LLC,*
  Case No. 11-784, 2012 U.S. Dist. LEXIS 71066 (M.D. La. May 22, 2012)...........................17

*Bare v. Brand Energy & Infrastructure Servs.,*
  Case No. 09-807 2012 U.S. Dist. LEXIS 153881 (D. Utah October 24, 2012) .....................21

*Commonwealth Care Alliance v. Astrazeneca Pharmaceuticals L.P.,*
  05-0269-BLS, Dkt. No. 169 (Suffolk Sup. Dec. 20, 2012) ....................................................23

*Commonwealth of Virginia v. McKesson Corporation,*
  11-02782-SI, Dkt. No. 31 (N.D. Cal. Dec. 12, 2011)..............................................................23

*Cont'l Datalabel, Inc. v. Avery Dennison Corp.,*
  2010 U.S. Dist. LEXIS 68703 (D. Mass. June 15, 2010) .........................................................9

*Covey Oil Co. v. Continental Oil Co.,*
  340 F.2d 993 (10th Cir. 1965) ................................................................................................12

*Doe v. Hersemann,*
  155 F.R.D. 630 (N.D. Ind. 1994)............................................................................................19

*First City, Texas-Houston, N.A. v. Rafidain Bank,*
  197 F.R.D. 250 (S.D.N.Y. 2000),...........................................................................................18

*Government Employees Hosp. Ass'n v. Serono Int',l S.A.,*
  05-cv-11935-PBS, Dkt. No. 109 (D. Mass. July 13, 2007)....................................................23

*Grider v. Keystone Health Plan Cent., Inc.,*
  2005-MC-40, 2005 U.S. Dist. LEXIS 44069, 2005 WL 2030456 (M.D. Pa. July 28,
  2005) .......................................................................................................................................15

*Hall v. Sullivan,*
  229 F.R.D. 501 (D. Md. 2005)................................................................................................19

*HCA, Inc. v. U.S. ex. Rel. Pogue,*
  2002 WL 31953748 (D. Tn. 2002) .........................................................................................14

*Heidelberg Ams., Inc. v. Tokyo Kikai Seisakusho, Ltd.,*
  333 F.3d 38 (1st Cir. 2003)......................................................................................................8

*Hendricks v. Total Quality Logistics, LLC,*
  275 F.R.D. 251 (S.D. Ohio 2011) ..........................................................................................21

*In re Actiq Sales and Mktg. Practices Litig.*,
    07-cv-04492-PBT, Dkt. No. 293 (E.D. Penn. Sept. 7, 2011) ...................................................23

*In Re Artra Group, Ltd.*,
    Case No. 02-A 01086 ...............................................................................................................24

*In re Bextra and Celebrex Marketing, Sales Practices and Prod. Liab. Litig.*,
    05-CV-01699-CRB, Dkt. No. 2595 (N.D. Cal. Dec. 8, 2008)..........................................23, 13

*In Re Christian Brothers Institute*,
    Case No. 11-22820 (RDD) ........................................................................................................24

*In re Clients & Former Clients of Baron & Budd, P.C.*,
    478 F.3d 670 (5th Cir. 2007) ....................................................................................................13

*In Re Downey Regional Medical Center*,
    Case No. 2:09-bk-34714-SB .....................................................................................................24

*In re Neurontin Mktg.*,
    245 F.R.D. 55, 58 (D. Mass. 2007).....................................................................................14, 13

*In re Online DVD Rental Antitrust Litig.*,
    744 F. Supp. 2d 1378 (J.P.M.L. 2010).....................................................................................14

*In Re Owens Corning, LLC*,
    Case No. 00-03837 (JKF) .........................................................................................................24

*In re Pharmaceutical Industry Average Wholesale Price Litig.*,
    01-CV-12257-PBS, Dkt. No. 5455 (D. Mass. July 21, 2008) ..................................................23

*In re Pharmaceutical Industry Average Wholesale Price Litig.*,
    01-CV-12257-PBS, Dkt. No. 865 (D. Mass. June 8, 2004)......................................................23

*In re Relafen Antitrust Litig. v. Smithkline Beecham Corp.*,
    2004 U.S. Dist. LEXIS 29834 (D. Mass. Nov. 24, 2004) ........................................................23

*In re Subpoena Duces Tecum*,
    Case No. 3:12-mc-0078, 2012 U.S. Dist. LEXIS 175871 (M.D. Tenn. December 10,
    2012) ..........................................................................................................................................19

*In re Subpoena Issued to Boies, Schiller & Flexner LLP*,
    2003 WL 1831426 (D.N.Y. 2003) ............................................................................................14

*In re Subpoenas Served on Wilmer, Cutler & Pickering & Goodwin Proctor LLP*,
    255 F.Supp.2d 1 (D.D.C. 2003) ...............................................................................................13

*In re Tricor Indirect Purchaser Antitrust Litig.*,
    05-cv-00360-SLR, Dkt. No. 510 (D. Del. May 8, 2009)..........................................................23

*In re Tricor Indirect Purchaser Antitrust Litig.*,
  05-cv-00360-SLR, Dkt. No. 558 (D. Del. Feb. 2, 2010) ........................................23

*In re U.S. Office Prod. Co. Sec. Litig.*,
  251 F.Supp.2d 58 (D.D.C. 2003) ........................................................................13

*In re Visa Check/Mastermoney Antitrust Litig.*,
  2002 U.S. Dist. LEXIS 23327 (E.D.N.Y. June 21, 2002) .....................................23

*In Re W.R. Grace*,
  Case No. 01-01139 (JFK) ...................................................................................24

*King v. Crown Plastering Corp.*,
  170 F.R.D. 355 (E.D.N.Y. 1997) ........................................................................19

*Linke Enterprises of Oregon, Inc. v. Champion Lab. Inc.*,
  Case No. 90-544, 1991 U.S. Dist. LEXIS 7155 (D. Ore. May 20, 1991)................20

*Lowe v. Vadlamudi*,
  Case No. 08-10269, 2012 U.S. Dist. LEXIS 127586 (E.D. Mich. Sept. 7, 2012)...................20

*Mann v. Univ. of Cincinnati*,
  114 F.3d 1188, Nos. 95-3195, 95-3292,
  (6th Cir. May 27, 1997) .....................................................................................20

*Mortgage Information Services v. Kitchens*,
  210 F.R.D. 562 (W.D.N.C. 2002)........................................................................18

*Myers v. Amisub (SFH), Inc.*,
  382 S.W.3d 300 (Tenn. 2012)...........................................................................6, 7

*New England Carpenters Health Benefits Fund v. First Databank, Inc.*,
  05-cv-11148-PBS, Dkt. No. 139 (D. Mass. 2006)..............................................23

*Sanchez-Medina v. Unicco Serv. Co.*,
  265 F.R.D. 29 (D.P.R. 2010) ..............................................................................10

*SEC v. Rex Venture Group, LLC*,
  Case No. 5:13-MC-004, 2013 U.S. Dist. LEXIS 44564 (M.D. Fla. March 28, 2013) ............19

*Sham v. Hyannis Heritage House Hotel, Inc.*,
  118 F.R.D. 24 (D. Mass. 1987)...........................................................................15

*Steel Works Rebar Fabricators, LLC v. Alterra Am. Ins. Co.*,
  Case No. 11-24032, 2012 U.S. Dist. LEXIS 72985 (S.D. Fla. May 25, 2012) ......................21

*Thomas v. Rockin D Marine Servs., LLC*,
  Case No. 12-1315, 2013 U.S. Dist. LEXIS 60007 (E.D. La. April 25, 2013)........................20

*TracFone Wireless, Inc. v. Technopark Co., Ltd.*,
  281 F.R.D. 683 (S.D. Fla.) ...................................................................................................19

*Ultradent Prods., Inc. v. Hayman*,
  2002 U.S. Dist. LEXIS 18000, 2002 WL 31119425 (S.D.N.Y.2002) ...................................19

*United States EPA v. GE*,
  197 F.3d 592 (2d Cir. 1999) .................................................................................................20

*Visx, Inc. v. Nidek Co.*,
  208 F.R.D. 615 (N.D. Cal. 2002) ........................................................................................13

*Western Res., Inc. v. Union Pac. R.R.*,
  2002 U.S. Dist. LEXIS 14897 (D. Kan.2002) ....................................................................19

## STATUTES

28 U.S.C. 1407(b) .....................................................................................................................13

Tenn. Code Ann. § 29-26-121 ....................................................................................................6

## OTHER AUTHORITIES

9 Moore's Federal Practice § 45.03[1] .......................................................................................18

Wright and Miller, FEDERAL PRACTICE AND PROCEDURE, §2463.1 (2008 ed.) ......................12, 13

Fed.R.Civ.P. 26(b)(3) ........................................................................................................9, 10, 15

Fed.R.Civ.P. 30 ........................................................................................................................13

Fed.R.Civ.P. 34 .....................................................................................................................14, 19

Fed.R.Civ.P. 45 ................................................................................................................... passim

Malani A.N., *Magnetic Resonance Imaging Screening to Identify Spinal and Paraspinal
  Infections Associated with Injections of Contaminated Methylprednisolone Acetate*,
  JAMA 309(23):2465-2472 (June 19, 2013) ........................................................................15

Morbidity and Mortality Weekly Report, 62(19) ........................................................................15

Radiology: *MRI May Spot Meningitis from Tainted Steroids* ....................................................15

## INTRODUCTION

The Plaintiffs' Steering Committee ("PSC") has served subpoenas on 85 clinics, doctors, and/or healthcare providers ("subpoena recipients").[1]  The PSC needs this information to (1) bolster its liability case against NECC, (2) to understand the role clinics, doctors, and/or health care providers played in the unfolding of the NECC-related debacle (including whether they or others share any liability) and (3) provide actual notice of any bar date to tort victims.  The PSC shared these goals with the Court, defendants, the Chapter 11 Trustee, the Creditors' Committee, other plaintiffs' counsel, and – frankly – anyone who would listen for months before the subpoenas actually went out. The PSC sought to put procedures in place to deal with potentially thorny issues *before* the subpoenas were served.  The Court, fully apprised of the PSC's plan, granted the PSC's motions to partially lift the discovery stay, entered a protective order addressing confidentiality, entered a qualified protective order addressing the production of protected health information, agreed to enforce all subpoenas centrally, and even (for the second time) explicitly authorized the PSC to issue subpoenas seeking the information requested in thae attachment to the subpoenas.

Despite all of this groundwork,  31 subpoena recipients have filed objections with the Court ("objectors").[2]  Many of those pleadings address issues this Court has already grappled with and decided.  And many pleadings raise similar objections.  This consolidated response is

---

[1] *See* Exhibit A, list of all subpoenaed clinics, doctors, and/or health care providers.  The PSC has also served other entities outside of this category; those objections will be addressed separately.

[2] *See* Exhibit B, list of all filed objections and motions to quash, identifying arguments raised by each filer (presented in the order addressed in this response).

an effort to identify and address common substantive objections in a single cross-cutting pleading.[3]

The objections largely fall into four camps: (1) objections to the burden (*i.e.*, time and expense) required to comply with the subpoena, (2) procedural objections, (3) confidentiality objections, and (4) motive objections. Exhibit C lists all filed objections and identifies the arguments made in each.

Many objectors objected based on burden; few (if any) provided estimates of the time or expenses likely to be incurred in responding. Nevertheless, the Plaintiffs' Steering Committee has taken another long, hard look at deposition notices and the documents requested. And – in an effort to be responsive to recipients' concerns about burden while still zealously representing victims – the Plaintiffs' Steering Committee will cut back the scope of the requested documents as described in the "Accommodations" section below and in the attached, redlined, amended Exhibit B. The PSC will also forgo all noticed depositions (barring exceptional circumstances) and give objectors who agree to a rolling production until the close of discovery (August 15, 2013) to complete production of documents.

None of the objections make a compelling case for modifying or quashing the subpoenas. There may have been a few technical procedural flaws in the service of a few subpoenas – it is probably inevitable given the number – but all can be easily remedied. Many objections belie a lack of familiarity with the now common practice of producing names and contact information of victims in a manner compliant with HIPAA for the purposes of providing notice in class actions and bankruptcies. And the argument that the PSC is seeking discovery in order to drum up new clients, particularly since the qualified protective order bars the PSC from accessing patient

---

[3] Some objections raise objections or issues that are specific to a particular subpoena recipient. The Plaintiffs' Steering Committee has or will (today) file additional responses to address those objections.

information, is barely worth dignifying with a response.  The Court should deny the objections and motions to quash in their entirety.

## BACKGROUND

On June 21, 2013, the Court entered an Order on Central Enforcement of Subpoenas ("Order on Central Enforcement") and an Order Granting Plaintiffs Leave to Serve Subpoenas and Qualified Protective Order Regarding Protection of Health Information ("Qualified Protective Order").[4]

On or about June 21, 2013, and pursuant to the Order on Central Enforcement and the Qualified Protective Order, attorneys acting on behalf of the Plaintiffs' Steering Committee served subpoenas on clinics identified by the United States Centers for Disease Control and Prevention ("CDC") (the "Identified Clinics") as having received medication from any of three recalled lots of Methylprednisolone Acetate ("MPA") from New England Compounding Pharmacy, Inc. ("NECC").  The subpoenas contained both a Notice of Deposition (to take the deposition of a designated Records Custodian) and a demand for production of certain documents identified in the subpoena.  The subpoenas were served substantially in the form of the sample attached hereto as Exhibit C.[5]  A small number of subpoenas were served on additional clinics as the PSC became aware of patients who received notice that they had been exposed to contaminated NECC medication by and from clinics that were not among the CDC's Identified Clinics.  Exhibit A identifies all subpoenaed clinics.

---

[4] Dkt. Nos. 193, 192.

[5] Some subpoenas served on clinics in the State of Tennessee contained additional requirements in the request for production of document due to unique circumstances arising from the statutory environment in that state.

Several subpoena recipients have filed objections to, or motions to quash, the subpoenas. Others raised objections informally with plaintiffs' counsel. Most objections to the subpoenas, and alleged grounds for quashing, are repeated among the many objections and motions to quash.

On June 28, 2013 the Chapter 11 Trustee filed his Motion for an Order (I) Establishing Bar Dates for Filing Proofs of Claim; (II) Approving Certain Additional Documentation Requirements and Procedures for Personal Injury Tort and Wrongful Death Claims; (III) Approving the Form and Manner of Notice Thereof; and (IV) Granting Additional Related Relief. U.S. Bankruptcy Court, D. Mass., Case No.: 12-19882-HJB, Dkt. No. 263 ("Bar Date Motion"). In his Bar Date Motion the Trustee seeks to establish a date by which all claims, including claims for personal injury and wrongful death, must be filed in the Bankruptcy Court, and to establish a protocol for giving notice of such bar date and filing requirements to all prospective claimants. The method of identifying and giving notice to all prospective claimants is a central issue in the Trustee's Bar Date Motion.[6]

## ACCOMMODATIONS

The PSC spent an inordinate amount of time crafting the requests attached to the subpoenas. At the time the subpoenas issued, the PSC firmly believed that the information requested was the bare minimum we could ask for given the unusual circumstances of this case.

Since issuing the subpoenas, the PSC has met and deliberated further – both internally and with subpoena recipients – in an effort to further minimize the burden on clinics and reach accommodation with the clinics on many of the objections. The PSC's deliberations resulted in a determination to make three significant accommodations to address the clinics' concerns: (i) the production of documents required pursuant to the subpoenas would be significantly reduced, (ii)

---

[6] The deadline to respond or object to the Trustee's Motion for Bar Date has been extended to July 22, 2013; a hearing on the motion will be held on July 24 in Springfield, MA. (12-19882, Dkt. No. 307).

"Records Custodian" depositions will only be taken in cases in which unique circumstances require a deposition, such as the failure of a particular clinic to cooperate in the production of documents pursuant to subpoena, and (iii) the deadline for producing documents would be extended to August 15, 2013 for those objectors who agreed to produce documents on a rolling basis (collectively, the "Accommodations").

Plaintiffs' counsel relayed these accommodations piecemeal to some, but not all, subpoena recipients.  It appear that very few, if any, subpoena recipients considered these proposed accommodations before filing objections (in part, because they may not have been aware of the proposed accommodations before their filing).

A.      **The PSC will narrow the scope of the documents and information requested.**

The narrower scope of document production required pursuant to subpoena is described in the Memorandum attached hereto as Exhibit C.[7]  Among other things, these modifications limit requests to the four products the CDC identified as contaminated and (as a practical matter) restrict the time period to 2012.

Unless otherwise noted, all requests are limited in scope to the two years before October 6, 2012.  In particular, requests relating to the contaminated lots are even narrower, as all lots were produced in 2012.

Requests 1, 3, and 4, originally requesting information relating to the procurement from NECC of "MPA and any other injectable steroid preparations" (Request 1), "cardioplegic solution" (Request 3) and ophthalmic solution (Request 4) will be satisfied by producing

---

7 The PSC reserves the right to require the production of additional documents in the future, pursuant to the original document requests, should circumstances develop that necessitate producing the requested information.

responsive information relating to the four products the CDC has identified as contaminated: MPA, Triamcinolone, Cardioplegia solution, and Betamethasone from specified lots.[8]

Request 2 is limited to information relating to equivalents to MPA that the clinics obtained from other compounders or manufacturers since January 1, 2012.  But it is clarified also include the same information relating to equivalents the clinics obtained for Triamcinolone, Cardioplegia solution, and Betamethasone.

Request 5 is withdrawn as to all clinics; but the PSC reserves the right to request this information from particular clinics based on facts relating to specific plaintiffs.

Request 6 is limited to lists of patients who received an injection of a medication lot that the CDC has determined was contaminated AND to any lists of patients already compiled by a clinic in response to a request from any Federal or State agency, any Grand Jury Subpoena, or any other governmental entity.

Request 9 is limited to the NECC products determined by the CDC to be contaminated.

Request 11 is withdrawn.

Request 17 is limited to responsive documents that provide coverage for the use of any NECC products identified as contaminated by the CDC.

Requests 19, 20, and 21 are withdrawn, except as to clinics in Tennessee.[9]

---

[8] http://emergency.cdc.gov/HAN/han00337.asp.

[9] The PSC understands that some state law pleading requirements necessitate that plaintiffs' possess this information.  For example, under the Tennessee Medical Malpractice Act (the "TMMA"), at least sixty days prior to filing suit, each defendant named in a medical malpractice case must be given pre-suit notice identifying, amongst other information, all defendants named in the suit and must be provided with a HIPAA-compliant medical release. Tenn. Code Ann. § 29-26-121.  Failure to follow these requirements subjects a claim to dismissal.  *See Myers v. Amisub (SFH), Inc.,* 382 S.W.3d 300 (Tenn. 2012) (discussing requirements). Accordingly, and to the extent that a plaintiff in this MDL needs to seek recovery under the TMMA, it is absolutely necessary to know the identity and address of all potential defendants prior to filing suit or a plaintiff runs the risk of not being made whole.

**B.     The PSC will give objectors who agree to produce documents on a rolling basis until August 15, 2013 to complete their production.**

The PSC will agree that subpoena recipients who commit to producing responsive materials on a rolling basis may have until August 15, 2013 to complete production.  August 15, 2013 is the deadline for discovery set by the Case Management Order.

**C.     The PSC will forgo record keeper depositions, barring extenuating circumstances.**

The subpoenas were served with a notice of deposition for a "keeper of the record" deposition.  The PSC will forgo taking records custodian depositions unless unique circumstances require the deposition to take place.[10]  As of now, the only depositions going forward are in Tennessee.

## LEGAL STANDARD

A court must quash or modify a subpoena only if it fails to allow a reasonable time to comply, require travel of more than 100 miles from home, requires disclosure of privileged or other protected matter, if no exception or waiver applies, or subjects a person to undue burden.[11]

A court may exercise its discretion to quash or modify a subpoena if it requires disclosing a trade secret of other confidential commercial information, disclosing an unretained expert's opinion, or requires a nonparty to incur substantial expense to travel more than 100 miles to attend trial.[12]

---

[10] So far, the only depositions the PSC intends to conduct are in Tennessee.  Unique features of Tennessee law, discussed in the previous footnote and more further explained in *Myers*, 382 S.W.3d 300, require that these depositions go forward.  All Tennessee clinics served with a subpoena, with limited exceptions, have filed objections with this Court, and as a result the noticed depositions have been postponed pending a ruling by this Court on the outstanding objections.

[11] Fed.R.Civ.P. 45(c)(3)(A).

[12] Fed.R.Civ.P. 45(c)(3)(B).

# RESPONSES TO OBJECTIONS[13]

## I.     BURDEN (I.E., TIME AND EXPENSE) OBJECTIONS

### A.     The request for production of documents is neither overly broad nor unduly burdensome; nevertheless, the PSC will cut back the scope of some requests.

**Objection:**     The request for production of documents is overly broad and unduly burdensome.[14]

**Response:**     Many clinics claimed that responding to the subpoenas would be burdensome.  It is, undoubtedly, a burden to have to respond to a subpoena.  But the question, according to Federal Rule of Civil Procedure 45(c)(3)(A)(iv), is whether it is an "undue" burden. At bottom, as the First Circuit put it, the central question is whether the party's need for the information overcomes the nonparties' rationale for resisting disclosure.[15]

Here, the PSC needs this information (1) to establish or bolster its liability case against NECC, (2) to understand the role clinics, doctors, and/or health care providers played in the unfolding of the NECC-related debacle (including whether they or others share any liability) and (3) for purposes of providing actual notice of the bar date to potential claimants.

None of the objectors offer any rationale for resisting disclosure on burden grounds other than vaguely alleging that it will take too long and cost too much to comply.   As far as the PSC is aware, none of the clinics provide information about the estimated time and expense that would be incurred in order to respond to the subpoena as issued.  And many of the clinics have

---

[13] By offering the following responses, many of which are based on the Accommodations, the PSC does not waive its right to otherwise challenge the correctness of the objections, or its right to later seek to obtain the documents originally requested.

[14] *See* Exhibit C for list of objections/motions to quash making this objection.

[15] *Heidelberg Ams., Inc. v. Tokyo Kikai Seisakusho, Ltd.*, 333 F.3d 38 (1st Cir. 2003).  The First Circuit upheld the district court's order quashing a subpoena served on a non-party that sought a decade's worth of materials, including any information relating to any business relationship with the plaintiff, and was not probative of the defendants' liability.  Here, in contrast, the PSC's requests are limited to only four products and span only a little more than one year, and is undoubtedly related to NECC's and other parties' liability.

already gathered and produced much of the information requested in response to a Grand Jury

Subpoena and requests from other governmental agencies.

In any event, this objection is addressed, if not mooted, by the PSC's Accommodations.

The PSC took steps, both initially and in its Accommodations, to avoid imposing undue burden

or expense on the subpoena recipients.[16]  Document requests relating to the identification of

patients is narrowly tailored to only those patients who the clinics identify as having received

administration of a contaminated NECC medication.  The PSC has cut back the timeframe

covered by almost all of its requests.  The PSC will accept, in response to Request 6, lists of

patients exposed to products the CDC has determined are contaminated that were previously

create in response to governmental requests.  The PSC is only seeking insurance policies that are

applicable to the acts resulting in the administration of contaminated medications to patients.

The PSC will waive the request to produce information about corporate structure, ownership, and

organization.  And the PSC will forgo most (if not all) record keeper depositions.

### B.    The requested documents are relevant and are reasonably calculated to lead to the discovery of admissible evidence

**Objection:**      The requested documents are not relevant and/or not reasonably calculated

to lead to the discovery of admissible evidence. [17]

**Response**:      According to Federal Rule of Civil Procedure 26(a)(1), a party may seek

information that is not directly related to issues raised by the pleadings if it is related in any way

---

[16] *Cont'l Datalabel, Inc. v. Avery Dennison Corp.*, 2010 U.S. Dist. LEXIS 68703 (D. Mass. June 15, 2010).  The Honorable Richard Stearns noted that since the non-party recipient had already agreed complied with a 30(b)(6), professed no knowledge about other topics, and agreed to produce a witness for deposition, the serving party's insistence that the subpoena recipient produce documents reflecting "any consideration" of the subject of the patent infringement dispute was overreaching.  Here, the subpoena recipients have, on the whole, not agreed to produce anything pursuant to the PSC's requests.

[17] *See* Exhibit C for list of objections/motions to quash making this objection.

to the subject matter involved in the action upon a showing of good cause.[18]  Good cause is shown when (1) the information sought is requested in a timely manner, (2) it does not appear that the information requested is cumulative or duplicative, and (3) the information requested may help to resolve the issues that are present in this case.[19]

Here, the PSC seeks, in part, information about purchases of contaminated products (Requests 1-4); what NECC told clinics, doctors, and/or health care providers about products it created and sold that were later found by the CDC to be contaminated; what clinics were told about NECC's qualifications and its compliance with USP standards (Requests 8 and 16); and communications between the clinics and NECC about recall notices (Requests 14 and 15). These requests all bear on NECC's liability and issues raised in the various complaints.  The subpoenas are timely, are not seeking cumulative or duplicative information (see Section II. D), and will undoubtedly help to resolve matters at issue in the present case.

With the tailored scope of production contemplated in the Accommodations, the documents requested will serve the interests of establishing NECC's liability and identifying known and reasonably ascertainable personal injury and wrongful death claimants.  Any narrowing of the document production beyond the Accommodations would severely inhibit the PSC's ability to develop its case and identify all known and reasonably ascertainable personal injury and wrongful death claimants.

### C.      The time periods given by the Accommodations are reasonable.

**Objection:**      The time periods for which documents are requested are unreasonable.[20]

---

[18] *Sanchez-Medina v. Unicco Serv. Co.*, 265 F.R.D. 29 (D.P.R. 2010) (citing *In re Subpoena to Witzel*, 531 F.3d at 118); Fed.R.Civ.P. 26(a)(1).

[19] *Id.*

[20] *See* Exhibit C for list of objections/motions to quash making this objection.

**Response:**    The Accommodations moot this objection.  Some requests were originally open ended as to time.  The revised requests ask for information from October 6, 2010 on (two years before the recall) as a default; some requests are even more limited, including those relating to the contaminated lots (all of which were produced in 2012).

### D.    Most subpoenaed information cannot be obtained from public sources or from NECC.

**Objection:**    The subpoena calls for the production of documents properly attainable by plaintiffs from public sources (CDC, FDA).[21]

**Response:**    The PSC, along with the Creditors' Committee, has been in contact with the CDC about gaining access to materials.  But, as discussed above, much of the information requested will not be in the government's possession.

Most clinics have not supported this objection with the identification of any requested documents that can be obtained from public sources.  The PSC has requested the disclosure of any communications received by the clinics from the CDC, FDA or other governmental agencies concerning (a) NECC products and/or (b) the procurement of products from any compounding pharmacy.  As to (a), the request is intended to reveal not only what public announcements were made about NECC products, but *what announcements about NECC products the clinics actually received* and information that the clinics sent in response.  As to (b), this request has been eliminated in the Accommodations.

**Objection:**    Many of the documents sought by the subpoena are more appropriately sought from NECC, thus reducing the burden and expense on the clinics.[22]

---

[21] *See* Exhibit C for list of objections/motions to quash making this objection.

[22] *See* Exhibit C for list of objections/motions to quash making this objection.

**Response:**     Subpoena recipients' suggestions that a bankrupt entity facing hundreds of lawsuits brought by victims of this tragedy – who will never be able to pay victims the full value of their claims – should further deplete the limited resources it is endeavoring to retain for the benefit of victims by paying to produce information within clinics' possession reflects either a stunning lack of compassion or a failure to think through the consequences of shifting the expense.

Whether information may be discovered elsewhere is a factor for the Court to consider when weighing the subpoenas' benefits and burdens, but it is not determinative.[23]  It is a highly case specific inquiry and entails an exercise of judicial discretion.[24]  And "a person may not avoid a subpoena by saying that the evidence sought from him is obtainable from another."[25]

The bankruptcy stay currently prohibits the plaintiffs from serving any formal discovery requests on NECC.  And while NECC may have some of this information, NECC does not have contact information for patients who received contaminated products, information about what the subpoena recipient considered when deciding whether to purchase products from NECC, information the clinic possessed about NECC's attempts to comply with USP requirements, or information the clinic possessed about the fitness of NECC's products for a particular purpose.  Who better to provide information about what the clinic knew than the clinic?

## II.     JURISDICTIONAL AND PROCEDURAL OBJECTIONS

### E.     This Court has jurisdiction to centrally enforce the subpoenas.

**Objection:**     This Court does not have jurisdiction to enforce the subpoena.[26]

---

[23] Wright and Miller, FEDERAL PRACTICE AND PROCEDURE, §2463.1 (2008 ed.).

[24] *Id.*

[25] *Covey Oil Co. v. Continental Oil Co.*, 340 F.2d 993 (10th Cir. 1965).  *See also*

[26] *See* Exhibit C for list of objections/motions to quash making this objection.

**Response:**   This Court's jurisdiction to issue, enforce, and quash subpoenas cannot seriously be questioned.

MDL courts have authority to preside over coordinated or consolidated pretrial proceedings.[27]  "Pretrial proceedings" have been liberally interpreted to give the MDL court control over all proceedings prior to trial.[28]

MDL courts have the authority to issue subpoenas pursuant to Fed. R. Civ. P. 30 & 45 and 28 U.S.C. § 1407(b).  28 U.S.C. 1407(b) explicitly references the MDL judge's enforcement power when it comes to conducting pretrial depositions: "[t]he judge or judges to whom [MDL] actions are assigned … may exercise the powers of a district judge in any district for the purpose of conducting pretrial depositions in such coordinated or consolidated pretrial proceedings."[29]  Moore's Federal Practice notes that "[t]hough the statutory language refers to 'pretrial depositions,' the statute wisely has been interpreted to embrace document production subpoenas as well."[30]

MDL courts can also quash subpoenas.  According to Wright and Miller, "In multidistrict litigation, the court in charge of the consolidated proceedings has the power to rule on a motion to quash subpoenas."[31]  In the *Neurontin* MDL, Judge Sorokin concluded that the MDL court could compel production or quash a subpoena directed to an out of district nonparty:

---

[27] 28 U.S.C. §1407.

[28] *See In re Neurontin Mktg., Sales Practices, and Prod. Liab. Litig.*, 245 F.D.R. 55, 57 (D. Mass. 2007).  *See also In re U.S. Office Prod. Co. Sec. Litig.*, 251 F.Supp.2d 58, 65 (D.D.C. 2003) ("In a multidistrict litigation action, the transferee judge has the same jurisdiction and power over pretrial proceedings that the transferor judge would have in the absence of the transfer.").

[29] 28 U.S.C. §1407 (b).

[30] *See also* 9-45 Moore's Federal Practice – Civil § 45.50(4).  Some transferee courts have concluded that they do not have power to enforce subpoenas seeking documents only.  *See, e.g.*, *Visx, Inc. v. Nidek Co.*, 208 F.R.D. 615 (N.D. Cal. 2002). This distinction has no bearing here.  All of the subpoenas that the PSC presently intends to serve seek record keeper depositions as well as documents.

[31] Wright and Miller, FEDERAL PRACTICE AND PROCEDURE, §2463.1 (2008 ed.).  *See also*, *In re Clients & Former Clients of Baron & Budd, P.C.*, 478 F.3d 670 (5th Cir. 2007); *In re Subpoenas Served on Wilmer, Cutler &*

...the MDL statute empowers an MDL judge to act as a judge of the deposition or discovery district. *See* 28 U.S.C. § 1407(b) ("The judge or judges to whom such [MDL] actions are assigned ... may exercise the powers of a district judge in any district for the purpose of conducting pretrial depositions in such coordinated or consolidated pretrial proceedings"). A judge presiding over an MDL case therefore may compel production by an extra-district nonparty; enforce, modify, or quash a subpoena directed to an extra-district nonparty; and hold an extra-district nonparty deponent in contempt, notwithstanding the nonparty's physical situs in a foreign district where discovery is being conducted.[32]

The Judicial Panel on Multidistrict Litigation agrees. In *In re Online DVD Rental Antitrust Litigation*, the Panel found that actions involving a motion to quash, brought by a third party subpoenaed by the MDL plaintiffs, were better decided by the transferee judge rather than a judge in another district with no particular knowledge of the MDL, where the third party was found to have important information central to the issues in the MDL. As the Panel put it, "requiring a judge in the Northern District of Texas to learn the particulars of MDL No. 2029 would not promote the just and efficient conduct of this action or the litigation as a whole[,]" and the "…litigation would be best served by allowing the transferee judge to determine the scope of discovery in the MDL."[33]

## F. Plaintiffs may take discovery of nonparties.

**Objection:** The Clinic is not a party to any litigation and/or has no injured patients.[34]

**Response:** It is well settled that parties to lawsuits may take broad discovery of nonparties.[35] When a subpoenaed party seeks to resist discovery, even when that party is a non-party, it is the subpoenaed party's burden to demonstrate that the discovery should not be

---

*Pickering & Goodwin Proctor LLP*, 255 F.Supp.2d 1(D.D.C. 2003); *In re Subpoena Issued to Boies, Schiller & Flexner LLP*, 2003 WL 1831426 (D.N.Y. 2003); *HCA, Inc. v. U.S. ex. Rel. Pogue*, 2002 WL 31953748 (D. Tn. 2002).

[32] *In re Neurontin Mktg.*, 245 F.R.D. 55, 58 (D. Mass. 2007), citing *U.S. ex rel. Pogue v. Diabetes Treatment Centers of America, Inc.*, 444 F.3d 462, 468–469 (6th Cir. 2006).

[33] *In re Online DVD Rental Antitrust Litig.*, 744 F. Supp. 2d 1378 (J.P.M.L. 2010).

[34] *See* Exhibit C for list of objections/motions to quash making this objection.

[35] Fed.R.Civ.P. 45; Fed.R.Civ.P. 34(c).

permitted.[36]   When analyzing whether a nonparty subpoena should be quashed, the court

considers issues such as relevance, the requesting party's need, the breadth of the request, and

the burden imposed.[37]

Among the most important objectives of the PSC in issuing these subpoenas is to identify

all known and reasonably ascertainable personal injury and wrongful victims who received a

contaminated  product from NECC.  By capitalizing on the work of the CDC and serving

subpoenas only on those clinics identified by the CDC as having received the recalled lots of

contaminated NECC medication, the burden imposed on such clinics is minimal, and the need is

great.  Many, if not all, of the clinics have already been required to identify such patients of

theirs in response to grand jury subpoenas or requests for information from the CDC or their

state health department.

Finally, an allegation that a clinic "has no injured patients" rings hollow in light of the

recent journal articles disclosing an extremely long latency period and recurrence of symptoms.[38]

---

[36] *See e.g.*, Rockwell Automation, Inc. v. Kontron Modular Computers, Case No. 12-cv-566, 2013 U.S. Dist. LEXIS 2889, * 3-4 (S.D. Cal. January 8, 2013) ("Under Fed. R. Civ. P. 45(a)(1)(C), a nonparty to a civil suit… can be subpoenaed for documents relevant to the suit…The burden is on the party resisting discovery to demonstrate that discovery should not be permitted."); *Sham v. Hyannis Heritage House Hotel, Inc.,* 118 F.R.D. 24, 25 (D. Mass. 1987) ("The burden is upon the party resisting discovery to demonstrate that the matter being sought is indeed work-product as defined by Fed. R. Civ. P. 26(b)(3).")

[37] *Grider v. Keystone Health Plan Cent., Inc.,* 2005-MC-40, 2005 U.S. Dist. LEXIS 44069, 2005 WL 2030456, *7 (M.D. Pa. July 28, 2005).

[38] Malani A.N., *Magnetic Resonance Imaging Screening to Identify Spinal and Paraspinal Infections Associated with Injections of Contaminated Methylprednisolone Acetate,* JAMA 309(23):2465-2472 (June 19, 2013) ("a steady stream of spinal and paraspinal infections continue to present long after the injections were last administered."); Radiology: *MRI May Spot Meningitis from Tainted Steroids*, June 18, 2013 (36 of 172 individuals exposed to MPA screened had an abnormal MRI; of the 36, all but one met the CDC definition for probable (17 patients) or confirmed (18 patients) fungal spinal or paraspinal infection.); Morbidity and Mortality Weekly Report, 62(19);377-381. ("Patients with diagnosed spinal or paraspinal infections might not have signs and symptoms greater than their baseline levels."); Carol A. Kauffman et al., *Fungal Infections Associated with contaminated Methylprednisplone Injections*, N. Engl. J. Med. 368;26 (June 27, 2013) ("patients who had persistent back pain or peripheral-joint pain but who had a normal MRI study should … be watched carefully and undergo repeated imaging if there was persistence or any increase in symptoms.  Some patients had initially had normal imaging but subsequently were shown to have development of epidural abscess or phlegmom on follow-up MRI …").

**G.      To the extent that the Court's orders limited the subpoenas' contents, the subpoenas comply with those Orders.**

**Objection:**      The subpoena imposes burdens other than or beyond those imposed by the Order on Central Enforcement and the Qualified Protective Order.[39]

**Response:**      To the extent that the Court's previous orders limit the scope of what the PSC may seek, the PSC's subpoenas comply with those orders.  The Order on Central Enforcement permits the PSC to obtain discovery over "Healthcare facilities and/or providers that have examined, tested or treated patients who have been identified as recipients of one or more of New England Compounding Pharmacy, Inc. ("NECC") solutions, medications or compounds, shall produce protected health information pursuant to this order and a subpoena issued by Plaintiffs."[40]  The Order also permits the PSC to obtain discovery over "Pain clinics, hospitals, and other entities or individuals who purchased NECC's methylprednisolone acetate, cardioplegic solution, or ophthalmic solution."[41]  And it provides for "any other information that lead counsel and the PSC reasonably determine necessary to the prosecution and resolution of these actions."[42]

And, as discussed above, the Accommodations squarely address any concern, however meritless, raised that the subpoenas went beyond the scope of discovery permitted by these orders.

---

[39] *See* Exhibit C for list of objections/motions to quash making this objection.

[40] Qualified Protective Order, Dkt. No. 192 at ¶ 1.

[41] Order on Central Enforcement, Dkt. No. 193.

[42] *See id.* at ¶ 2.

### H.     The subpoenas do not intentionally seek any privileged communications between attorneys and their clients.

**Objection:**     The subpoena calls for the production of documents protected from disclosure as reflective of attorney-client communications and/or attorney work-product.[43]

**Response:**     These objections are unfounded.  The PSC has not requested any documents that would reasonably be expected to contain either attorney work-product or attorney-client communications.  No subpoena recipient has specifically identified any document that falls into either of those categories.  If a subpoena recipient has concerns related to specific, identified documents or categories of documents, the Plaintiffs' Steering Committee will meet and confer to resolve the issue (perhaps through the use of a privilege log).

### I.     If the PSC takes depositions pursuant to the subpoena, the attendance fee will be paid.

**Objection:**     The PSC failed to provide the fee for one day's attendance as required by Rule 45(b)(1).[44]

**Response:**     The PSC subpoenas included a deposition notice for a record keeper deposition.  The PSC has since determined not to conduct records custodian depositions unless unique circumstances require the deposition to take place.[45]  The PSC will pay the required fee for all depositions that actually occur.   For those depositions that may go forward and the witness fees were not contemporaneously served with the subpoena, the Court should permit the PSC to cure this technical defect by providing the witness fees prior to the deposition.[46]

---

[43] *See* Exhibit C for list of objections/motions to quash making this objection.

[44] *See* Exhibit C for list of objections/motions to quash making this objection.

[45] So far, the only depositions the PSC intends to conduct are in Tennessee.

[46] *See Adams v. Dolgencorp, LLC*, Case No. 11-784, 2012 U.S. Dist. LEXIS 71066 (M.D. La. May 22, 2012) ("[W]hile a subpoena request without the witness fee is technically invalid, the defect can be cured.") (citing Meyer v. Foti, 720 F.Supp. 1234, 1244 (E.D.La. 1989).

**J.      Plaintiffs may seek discovery of parties through either Rule 45 or Rule 34.**

**Objection:**      Clinics that are parties should have been served a request for production

pursuant to Fed. R. Civ. P. 34 rather than a subpoena pursuant to Fed. R. Civ. P 45.[47]

**Response:**      It is well settled, that a party may use a Rule 45 subpoena to obtain

discovery from a party.[48]      In *Badman v. Stark*, the Court held that, although Rule 34 applies

only to parties, "a subpoena under Rule 45 may be served upon both party and non-party

witnesses."[49]

The text of Rule 45 compels this conclusion.  As one federal court correctly held:

> [T]here is no express limitation on the type of person who may be
> subject to the rule, as its language describes the individual upon
> whom a Rule 45 subpoena may be served simply as a "person"
> rather than a "non-party." Had the drafters of Rule 45 intended to
> restrict its scope to non-parties, they could easily have done so.
> Indeed, the separate and distinct use of the terms "person" and
> "person who is not a party" in the text of Rule 45 clearly
> demonstrates that the drafters were aware of the effect they would
> have on the scope of the rule's various provisions.[50]

Typically, parties are served with requests for production, rather than subpoenas.  But this

isn't always the case.  And the distinction is one of form, not substance.  If the PSC had elected

---

[47] *See* Exhibit C for list of objections/motions to quash making this objection.

[48] *See e.g.*, United Steelworkers of Am. v. Gov't of the V.I., Case No. 2005-cv-0021, 2008 U.S. Dist. LEXIS 97916, * 3-4 (D.V.I. 2005); *Mortgage Information Services v. Kitchens*, 210 F.R.D. 562, 563-66 (W.D.N.C. 2002); *see also* 9 Moore's Federal Practice § 45.03[1] (noting that "[s]ubpoenas under Rule 45 may be issued to parties or non-parties").

[49] 139 F.R.D. 601, 603 (M.D. Pa. 1991) (citing *Continental Coatings Corp. v. Metco, Inc.*, 50 F.R.D. 382, 384 (N.D. Ill. 1970)).  *See also First City, Texas-Houston, N.A. v. Rafidain Bank*, 197 F.R.D. 250, 255 n.5 (S.D.N.Y. 2000), aff'd, 281 F.3d 48 (2d Cir. 2002) ("While a Rule 45 subpoena is typically used to obtain the production of documents and/or testimony from a non-party to an action . . . nothing in the Federal Rules of Civil Procedure explicitly precludes the use of Rule 45 subpoenas against parties.") (citing *Badman*, 139 F.R.D. at 603).

[50] *Kitchens*, 201 F.R.D. at 565 (cited by *United Steelworkers*, 2008 U.S. Dist. LEXIS 97916).

to serve requests for production rather than subpoenas, the recipient would be facing the exact same substantive requests for production and, by default, a much more aggressive timeline.[51]

### K.  The subpoenas were served in compliance with the Federal Rules.

**Objection:**   The subpoena was improperly served via Federal Express.[52]

**Response:**   Numerous courts have found that a subpoena may be served via Federal Express.[53]

The text of Rule 45 compels this conclusion.  Rule 45(b)(1), provides in pertinent part as follows: "Service of a subpoena upon a person named therein shall be made by delivering a copy thereof to such person. . . ."  Courts have determined that nothing in the plain language of the Rule requires personal service.[54]  And Courts have held that service by certified mail or Federal Express is sufficient.[55]

---

[51] Fed.R.Civ.P. 34(b)(2)(A) ("the party to whom the request is directed must respond in writing within 30 days after being served.").

[52] *See* Exhibit C for list of objections/motions to quash making this objection.

[53] *See e.g.*, *SEC v. Rex Venture Group, LLC*, Case No. 5:13-MC-004, 2013 U.S. Dist. LEXIS 44564 (M.D. Fla. March 28, 2013); *In re Subpoena Duces Tecum*, Case No. 3:12-mc-0078, 2012 U.S. Dist. LEXIS 175871 (M.D. Tenn. December 10, 2012); *TracFone Wireless, Inc. v. Technopark Co., Ltd.*, 281 F.R.D. 683 (S.D. Fla.); *Hall v. Sullivan*, 229 F.R.D. 501 (D. Md. 2005); *Western Res., Inc. v. Union  Pac. R.R.*, 2002 U.S. Dist. LEXIS 14897, 2002 WL 1822432 (D. Kan.2002).

[54] *See King v. Crown Plastering Corp.*, 170 F.R.D. 355, 356 (E.D.N.Y. 1997) (no need for personal service of Rule 45 subpoena "so long as service is made in a manner that reasonably insures actual receipt of the subpoena by the witness"); *Doe v. Hersemann*, 155 F.R.D. 630, 630-631 (N.D. Ind. 1994) ("The plain language of the rule requires only that the subpoena be delivered to the person served by a qualified person"); *Ultradent Prods., Inc. v. Hayman*, 2002 U.S. Dist. LEXIS 18000, 2002 WL 31119425 (S.D.N.Y.2002) (finding that although delivery to the person was required, delivery did not require personal in-hand service);

[55] *See*, *e.g.*, *Doe v. Hersemann*, 155 F.R.D. 630 (N.D. Ind.1994) (holding that service of a subpoena via certified mail is sufficient under Rule 45, particularly when Defendant does not deny actual receipt); *Western Res., Inc. v. Union  Pac. R.R.*, 2002 U.S. Dist. LEXIS 14897 (D. Kan.2002) (holding that delivery of subpoena via Federal Express was sufficient because effective service under Rule 45 is not limited to personal service).

**L.      By definition, the subpoenas are limited to information in the recipient's possess, custody, or control.**

**Objection:**      The subpoena calls for the production of documents outside the clinic's possession, custody or control.[56]

**Response:**      Rule 45 explicitly limits its scope to the production of documents within the subpoenaed party's "possession, custody, or control."[57]  Obviously, the PSC cannot expand the scope of the rule and it need not explicitly state that the documents required be produced be in the possession, custody, or control of the party.[58]  Therefore, all documents identified in the subpoena for production are, by definition, limited to the documents that any clinic would ordinarily keep within its possession, custody, or control.

**M.      The time to respond proposed in the Accommodations is reasonable.**

**Objection:**      The subpoena provided only 21 or 30 days to respond, which is not a reasonable amount of time.

**Response:**      No subpoenaed issued required the production of documents in less time than three weeks.  There is a wealth of case law holding that 21 days to comply with a subpoena is reasonable under Rule 45.[59]

---

[56] *See* Exhibit C for list of objections/motions to quash making this objection.

[57] Fed. R. Civ. P. 45(a)(1)(A)(iii).

[58] *See*, *e.g.*, *United States EPA v. GE*, 197 F.3d 592 (2d Cir. 1999) (noting that Rule 45 is limited to requiring a person to produce documents within his or her possession, custody, or control).

[59] See, *e.g.*, *Lowe v. Vadlamudi*, Case No. 08-10269, 2012 U.S. Dist. LEXIS 127586 (E.D. Mich. Sept. 7, 2012) ("The text of Rule 45 does not support this argument, and the Court finds that twenty-one days is a reasonable time to comply."); *Linke Enterprises of Oregon, Inc. v. Champion Lab. Inc.*, Case No. 90-544, 1991 U.S. Dist. LEXIS 7155 (D. Ore. May 20, 1991) (holding that party is entitled to a reasonable time to comply under Rule 45 and permitting 21 days for compliance); *see also Thomas v. Rockin D Marine Servs., LLC,* Case No. 12-1315, 2013 U.S. Dist. LEXIS 60007 (E.D. La. April 25, 2013) (fourteen days is reasonable time to comply with subpoena); *Mann v. Univ. of Cincinnati*, 114 F.3d 1188 (Table), Nos. 95-3195, 95-3292, [published in full-text format at 1997 U.S. App. LEXIS 12482], (6th Cir. May 27, 1997) (approving magistrate judge's finding that fourteen days' notice is reasonable).

Most of the subpoenas were served weeks ago.  And the PSC's Accommodations,
including the narrowing of the requests to produce and the offer to extend the deadline for
producing documents until August 15 for recipients who agree to produce materials on a rolling
basis, moot this objection.

**N.  Parties to the MDL knew subpoenas were going out to clinics and received
copies of the subpoenas actually issued.**

**Objection:**    Federal Rule of Civil Procedure 45(b)(1) requires that subpoenas be
served on each party to the MDL.  Comments to the Rule say that parties should have been given
notice before service of the subpoenas on third parties.

**Response:**  A subpoena recipient – particularly a non-party – cannot avoid the reach of a
subpoena by arguing that the PSC failed to give notice to another party.[60]  But, in any case, the
PSC adequately provided notice to defendants both before and after the subpoenas issued, which
is sufficient under Rule 45 to satisfy the notice requirements.

The Plaintiffs' Steering Committee informed the Court and the defendants that it intended
to issue subpoenas to clinics, doctors, and/or other health care providers months before the
subpoenas went out.  The Court entered multiple orders permitting and addressing these
subpoenas.  The PSC shared copies of the attachment to the subpoena requesting documents with
counsel then of record in the MDL – and incorporated comments from the defendants – before
the subpoena went out.  Copies of each subpoena were sent to counsel for all defendants then of
record following service of the subpoenas, both by the counsel issuing the subpoena (*see* service

---

[60] *See, e.g., Bare v. Brand Energy & Infrastructure Servs.*, Case No. 09-807 2012 U.S. Dist. LEXIS 153881 (D.
Utah October 24, 2012) (refusing to quash subpoena on grounds of failure to provide each party with pre-service
notice because "the opposing party has had a sufficient opportunity, albeit after the subpoena had been served, to
object to the subpoena."); *Steel Works Rebar Fabricators, LLC v. Alterra Am. Ins. Co.*, Case No. 11-24032, 2012
U.S. Dist. LEXIS 72985 (S.D. Fla. May 25, 2012)  (refusing to quash subpoena for lack of notice to each party when
party cannot demonstrate any prejudice suffered for lack of timely notice); *Hendricks v. Total Quality Logistics,
LLC*, 275 F.R.D. 251 (S.D. Ohio 2011) (same).

lists accompanying each subpoena) and – as an added precaution – by the Plaintiffs' Steering Committee.

## III. CONFIDENTIALITY OBJECTIONS

### O. The Protective Order will protect confidential information.

**<u>Objection:</u>**  The subpoena calls for the production of confidential or proprietary business information.[61]

**<u>Response:</u>**  On July 12, 2013 the Court entered the Stipulated Protective Order of Confidentiality, pursuant to which "persons producing discovery material, including non-parties to this litigation, . . . may designate as "Confidential Discovery Material" information the producing party believes is entitled to protection pursuant to this Order."[62]  The Court identifies "[t]rade secrets, or other confidential or proprietary research, development, manufacturing or commercial or business information" as being specifically among those categories of information eligible for protection under the Order.[63]  The disclosing parties need only designate such information as Confidential Discovery Material to ensure that such information is afforded all the protections under the Order.[64]

### P. The Court's Orders, the selected vendor, and the process provided for producing protected health information comply with HIPAA.

**<u>Objection:</u>**  The subpoena calls for the production of documents protected from disclosure under the doctor-patient privilege, and/or the production of which would violate the

---

[61] *See* Exhibit C for list of objections/motions to quash making this objection.

[62] Dkt. No. 280, ¶ 2.

[63] *Id.*

[64] The Plaintiffs' Steering Committee reserves the right to challenge the confidentiality of any materials designated "confidential"

requirements of the Health Insurance Portability and Accountability Act and its related regulations.[65]

**Response:**   It has become de rigueur for state of the art notice plans in class actions and bankruptcies to include subpoenaing the name and contact information of potential class members or bankruptcy claimants from non-parties for purposes of providing notice to those individuals. Any ethical, responsible attorney would endeavor to collect this information in order to provide actual notice to victims. On the class action side, the notice discloses certification of a class and/or provides an opportunity to opt in to, or out of, a settlement.[66] Sometimes, collecting the name of individuals who took a particular drug allows checks to be sent directly to consumers (without requiring them to do more than take a trip to the bank). On the bankruptcy side, the notice discloses a date by which claims against the estate must be filed.

Plaintiffs' have already provided the Court with 13 examples[67] where patients' names and contact information were produced (only) to a qualified vendor who held the information in a manner compliant with HIPAA and, pursuant to a later Court order, used the information for purposes of sending notice. And Rust/Omni, the vendor the PSC has retained to receive

---

[65] *See* Exhibit C for list of objections/motions to quash making this objection.

[66] We refer to class actions by way of an example where courts routinely approve collecting protected health information for purposes of notice; *not* because the PSC intends to pursue class certification or a class settlement.

[67] *Commonwealth Care Alliance v. Astrazeneca Pharmaceuticals L.P.*, 05-0269-BLS, Dkt. No. 169 (Suffolk Sup. Dec. 20, 2012) (Sanders, J.); *In re Relafen Antitrust Litig. v. Smithkline Beecham Corp.*, 2004 U.S. Dist. LEXIS 29834, at *17-18 (D. Mass. Nov. 24, 2004) (Young, J.); *In re Pharmaceutical Industry Average Wholesale Price Litig.*, 01-CV-12257-PBS, Dkt. No. 5455 (D. Mass. July 21, 2008) (Saris, J.); *In re Pharmaceutical Industry Average Wholesale Price Litig.*, 01-CV-12257-PBS, Dkt. No. 865 (D. Mass. June 8, 2004) (Saris, J.);*Government Employees Hosp. Ass'n v. Serono Int',l S.A.*, 05-cv-11935-PBS, Dkt. No. 109 (D. Mass. July 13, 2007) (Saris, J.); *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, 05-cv-11148-PBS, Dkt. No. 139 (D. Mass. 2006) (Saris, J.); *In re Visa Check/Mastermoney Antitrust Litig.*, 2002 U.S. Dist. LEXIS 23327, at *6-7 (E.D.N.Y. June 21, 2002); *Mercier v. Courtyard Nursing Care Ctr.*, 25 Mass. L. Rep. 461 (Mass. Super. Ct. 2009); *In re Bextra and Celebrex Marketing, Sales Practices and Prod. Liab. Litig.*, 05-CV-01699-CRB, Dkt. No.  2595 (N.D. Cal. Dec. 8, 2008) (Breyer, J.); *Commonwealth of Virginia v. McKesson Corporation*, 11-02782-SI, Dkt. No. 31 (N.D. Cal. Dec. 12, 2011) (Illston, J.); *In re Tricor Indirect Purchaser Antitrust Litig.*, 05-cv-00360-SLR, Dkt. No. 510 (D. Del. May 8, 2009) (Robinson, J.); *In re Tricor Indirect Purchaser Antitrust Litig.*, 05-cv-00360-SLR, Dkt. No. 558 (D. Del. Feb. 2, 2010) (Robinson, J.); *In re Actiq Sales and Mktg. Practices Litig.*, 07-cv-04492-PBT, Dkt. No. 293 (E.D. Penn. Sept. 7, 2011) (Tucker, J.).

protected health information here, listed thirteen examples where it had obtained protected health information in the context of a bankruptcy.[68]

The Court and the PSC have gone to great lengths to ensure that procedures are in place to ensure compliance with HIPAA and the protection of individuals' Personal Health Information, including the following:

> (i).    The Court entered the Qualified Protective Order, which provides the limited circumstances under which Personal Health Information will be disclosed. Among other things the Order requires the identification of a Vendor which shall hold the protected health information "in the strictest confidence and shall not release such information to any other person or entity until further order of this Court."[69]  In the Order, the Court also provided that "[a]ll subpoenaed entities that provide requested information shall be deemed to fall within the safe harbor of HIPAA for court-ordered production of personal health information, . . .  and shall have no liability under HIPAA or any other federal or state statute, regulation, or other requirement related to protected health information, for supplying patient or member information to the Vendor."[70]

> (ii).    In its Corrected Notice of Identification of Document Repository Vendors, the PSC identified Rust Consulting Omni Bankruptcy as the designated repository for all documents containing Personal Health Information.[71]

---

[68] *In Re Owens Corning, LLC*, Case No. 00-03837 (JKF), United States Bankruptcy Court District Of Delaware; *In Re W.R. Grace*, Case No. 01-01139 (JFK), United States Bankruptcy Court District Of Delaware;  *In Re Artra Group, Ltd.*, Case No. 02-A 01086, United States Bankruptcy Court Northern District Of Illinois, Eastern Division; *In Re Christian Brothers Institute*, Case No.: 11-22820 (RDD), United States Bankruptcy Court For The Southern District Of New York; *In Re Society of Jesus*, Oregon Province, Case No. 09-3093, United States Bankruptcy Court District Of Oregon; *In Re Downey Regional Medical Center*, Case No. 2:09-bk-34714-SB, United States Bankruptcy Court Central District Of California.

[69] Qualified Protective Order, ¶ 4.

[70] Id. at ¶ 11.

[71] Dkt. No. 237.

(iii).    In his affidavit filed in support of the Qualified Protective Order, Brian

Osborne, President of Rust Consulting Omni Bankruptcy swore, inter alia, that he had

reviewed the Qualified Protective Order, that his company is qualified to meet the

obligations outlined in the Order, and that his company "shall hold such protected health

information in the strictest confidence and shall not release such information to any other

person or entity until further order of the Court."[72]

## IV.    MOTIVE OBJECTIONS

### Q.    The PSC is doing its job, not trolling for clients.

**Objection:**    The PSC's subpoenas are thinly veiled attempts to identify new clients.[73]

**Response:**    Protected health information, including patient names and contact

information, will be produced to a HIPAA-compliant vendor and held by that vendor until a

Court issues an order permitting that data to be used for notice purposes.  The PSC will not have

access to patient names and thus could not possibly use that information to try to drum up clients.

The Chapter 11 Trustee has filed a Motion to Bar Date in the Bankruptcy Court, asking

that Court to require all creditors – including tort victims – to file a proof of claim against NECC

by September 20, 2013.  The PSC proposes having a qualified vendor use this patient identifying

information for the purposes of notifying potential claimants about any bar date.

Why does the PSC care about who gets notice of the bar date?  Because a bar date, and

the later confirmation of a bankruptcy plan, will extinguish tort victims' claims against NECC.

Including victims who are, or will be, represented by the PSC in the MDL.[74]

---

[72] Dkt. No. 224.

[73] *See* Exhibit C for list of objections/motions to quash making this objection.

[74] The members of the Plaintiffs' Steering Committee, and other lawyers across the country, represent many victims
who have yet to file a lawsuit.

The CDC has stated that at least 13,000 people were potentially exposed to NECC's contaminated products.  It is imperative that all potential claimants be identified and sent actual notice well before the bar date.  Otherwise the due process rights of potentially hundreds of individuals will be violated for lack of notice that their claim against NECC was extinguished in the bankruptcy proceeding.  The Court should ensure that, at minimum, the victims' identifying information be produced, according to the safe guards already in place.

## CONCLUSION

None of the arguments raised in the objections and motions to quash subpoenas issued to clinics, doctors, and/or health care providers undercut the served subpoenas.  The Court should deny the motions to quash and reject the objections, particularly in light of the PSC's Accommodations.

Dated:  July 17, 2013                           **Respectfully Submitted,**

                                                **/s/ Kristen Johnson Parker**
                                                Thomas M. Sobol
                                                Kristen Johnson Parker
                                                HAGENS BERMAN SOBOL SHAPIRO LLP
                                                55 Cambridge Parkway, Suite 301
                                                Cambridge, MA 02142
                                                Phone: (617) 482-3700
                                                Fax: (617) 482-3633
                                                tom@hbsslaw.com
                                                kristenjp@hbsslaw.com

                                                *Plaintiffs' Lead Counsel*

                                                Elizabeth J. Cabraser
                                                Mark P. Chalos
                                                LIEFF CABRASER HEIMANN &
                                                BERNSTEIN, LLP
                                                275 Battery Street, 29th Floor
                                                San Francisco, CA  94111
                                                Phone: (415) 956-1000
                                                Fax: (415) 956-1008
                                                ecabraser@lchb.com

mchalos@lchb.com

*Federal/State Liaison*

Marc E. Lipton
LIPTON LAW
18930 W. 10 Mile Road
Southfield, MI 48075
Phone: (248) 557-1688
Fax: (248) 557-6344
marc@liptonlawcenter.com

Kimberly A. Dougherty
JANET, JENNER & SUGGS, LLC
31 St. James Avenue
Suite 365
Boston, MA 02116
Phone: (617) 933-1265
kdougherty@myadvocates.com

Patrick T. Fennell
CRANDALL & KATT
366 Elm Avenue, S.W.
Roanoke, Virginia 24016
Phone:  (540) 342-2000
pfennell@crandalllaw.com

J. Gerard Stranch, IV
Benjamin A. Gastel
BRANSETTER, STRANCH & JENNINGS
PLLC
227 Second Avenue North
Nashville, TN  37201
Phone: (615) 254-8801
Fax: (615) 255-5419
gerards@branstetterlaw.com

Mark Zamora
ZAMORA FIRM
6 Concourse Parkway, 22nd Floor
Atlanta, GA 30328
Phone: (404) 451-7781
Fax: (404) 506-9223
mark@markzamora.com

*Plaintiffs' Steering Committee*

## <u>CERTIFICATE OF SERVICE</u>

     I, Kristen Johnson Parker, hereby certify that I caused a copy of the foregoing Motion for Entry of Stipulated Protective Order of Confidentiality and proposed stipulated protective order of confidentiality to be filed electronically via the Court's electronic filing system. Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system, and notice of these filings will be sent to these parties by operation of the Court's electronic filing system.

Dated: July 17, 2013

                                       */s/ Kristen Johnson Parker*
                                       Kristen Johnson Parker, BBO # 667261

# EXHIBIT A

## List of Subpoenaed Clinics, Doctors, and/or Health Care Providers

| | Facility Name | Facility Street Address | Facility City | Facility State |
|---|---|---|---|---|
| 1 | Cypress Surgery Center a/k/a Sequoia Surgical Center | 842 S. Akers Street | Visalia | California |
| 2 | Encino Outpatient Surgicenter | 16311 Ventura Boulevard | Encino | California |
| 3 | Ukiah Valley Medical Center | 275 Hospital Drive | Ukiah | California |
| 4 | Universal Pain Management | 819 Auto Center Drive | Palmdale | California |
| 5 | Interventional Spine and Sports Med | 1625 Straits Turnpike, Suite 205 | Middlebury | Connecticut |
| 6 | Interventional Rehabilitation Center | 1549 Airport Blvd, Suite 420 | Pensacola | Florida |
| 7 | North County Surgicenter | 4000 Burns Road | Palm Beach Gardens | Florida |
| 8 | Orlando Center for Outpatient Surgery | 1405 S. Orange Ave, # 400 | Orlando | Florida |
| 9 | Pain Consultants of West Florida | 4624 North Davis Highway | Pensacola | Florida |
| 10 | Surgical Park Center | 9100 SW 87th Ave. | Miami | Florida |
| 11 | Forsyth Street Ambulatory Surgery Center | 1600-1610 Forsyth Street | Macon | Georgia |
| 12 | Pain Specialists of Idaho | 2375 E. Sunnyside Road, Suite F | Idaho Falls | Idaho |
| 13 | Walter Knox Memorial Hospital | 1202 E. Locust Street | Emmett | Idaho |
| 14 | APAC Centers for Pain Management | 2860 North Broadway Street | Chicago | Illinois |
| 15 | APAC Centers for Pain Management | 2450 S. Wolf Road, Suite D | Westchester | Illinois |
| 16 | Thorek Memorial Hospital | 850 W. Irving Park Road | Chicago | Illinois |
| 17 | Ambulatory Care Center LLC | 1125 Professional Blvd. | Evansville | Indiana |
| 18 | Fort Wayne Physical Medicine | 5740 Coventry Lane, Suite 101 | Fort Wayne | Indiana |

| 19 | OSMC Outpatient Surgery Center | 2310 California Road | Elkhart | Indiana |
|----|---|---|---|---|
| 20 | South Bend Clinic | 211 North Eddy Street | South Bend | Indiana |
| 21 | Union Hospital | 1606 N. 7th Street | Terre Haute | Indiana |
| 22 | Wellspring Pain Solutions | 2400 North Park, Suite 20 | Columbus | Indiana |
| 23 | Baltimore Pain Management | 9110 Philadelphia Road, Suite 306 | Baltimore | Maryland |
| 24 | Berlin Interventional Pain Management | 10308 Old Ocean City Blvd. | Berlin | Maryland |
| 25 | Box Hill Surgery Center | 100 Walter Ward Blvd, Suite 300 | Abingdon | Maryland |
| 26 | Greenspring Surgery Center | 2700 Quarry Lake Drive | Baltimore | Maryland |
| 27 | Harford County ASC, LLC | 1952 A. Pulaski Highway | Edgewood | Maryland |
| 28 | Pain Medicine Specialists | 8322 Bellona Ave., Suite 330 | Towson | Maryland |
| 29 | Surgcenter of Bel Air | 209 Thomas Street | Bel Air | Maryland |
| 30 | Greater Baltimore Medical Center | 6701 North Charles Street | | Maryland |
| 31 | Salisbury Immediate Care Center | 659 South Salisbury Blvd., Suite 2 | | Maryland |
| 32 | Michigan Neurosurgical Institute | 4620 Genesys Parkway | Grand Blanc | Michigan |
| 33 | Michigan Pain Specialists | 2305 Genoa Business Park Drive, Suite 210 | Brighton | Michigan |
| 34 | Neuromuscular & Rehabilitation | 3988 West Royal Drive | Traverse City | Michigan |
| 35 | Southeast Michigan Surgical Hospital | 21230 Dequindre Road | Warren | Michigan |
| 36 | MAPS-Edina Medical Pain Clinic | 2104 Northdale Blvd., Suite 220 | Fridley | Minnesota |
| 37 | MAPS- Medical Advanced Pain | 2104 Northdale Blvd., Suite 220 | Fridley | Minnesota |
| 38 | Medical Advanced Pain Specialists | 1601 St. Fancis Avenue, Suite 200 | Shakopee | Minnesota |
| 39 | Medical Advanced Pain Specialists | | Maple Grove | Minnesota |

| 40 | Minnesota Surgery Center | 7400 France Aveneu S. | Minneapolis | Minnesota |
|---|---|---|---|---|
| 41 | Minnesota Surgery Center | 9550 Upland Lane North, Suite 150 | Maple Grove | Minnesota |
| 42 | High Point Surgery | 600 Lindsay Street | Hight Point | North Carolina |
| 43 | North Carolina Orthopaedic Clinic | 3609 Southwest Durham Drive | Durhmam | North Carolina |
| 44 | Surgery Center of Wilson d/b/a Eastern Regional Surgery Center | 1709 Medical Park Drive West | Wilson | North Carolina |
| 45 | Dr. O'Connell's Pain Care Center | 2299 Woodbury Avenue | Newington | New Hampshire |
| 46 | Dr. O'Connell's Pain Care Center, Inc | 1 Mound Court | Merrimack | New Hampshire |
| 47 | Central Jersey Orthopedics Specialists PC | 1907 Park Avenue, Suite 102 | South Plainfield | New Jersey |
| 48 | Edison Surgical Center | 10 Parsonage Road, #206 | Edison | New Jersey |
| 49 | If Pain Associates/ Isaiah Florence | 222 Cedar Lane, Suite 210 | Teaneck | New Jersey |
| 50 | Premier Orthopedics Surg. Assoc., LLC | 298 South Delsea Drive | Vineland | New Jersey |
| 51 | Comprehensive Pain Management | 540 Lafayette Road | Sparta | New Jersey |
| 52 | South Jersey Health Care | 1505 West Sherman | Vineland | New Jersey |
| 53 | South Jersey Health Care | 501 West Front Street | Elmer | New Jersey |
| 54 | Sahara Surgery Center | 2401 Paseo Del Prado | Las Vegas | Nevada |
| 55 | Butani, Sunil H., Physician PC | 184 Old Country Road | Mineola | New York |
| 56 | Obosa Medical Services | 140 Stevens Avenue | Mount Vernon | New York |
| 57 | Rochester Brain and Spine | 400 Red Creek Drive, Suite 120 | Rochester | New York |
| 58 | BKC Pain Specialists, LLC | 1065 Delaware Avenue, Suite A | Marion | Ohio |
| 59 | Cincinnati Pain Management | 8261 Cornell Road, Suite 630 | Cincinnati | Ohio |

| 60 | Marion Pain Clinic | 1199 Delaware Avenue | Marion | Ohio |
|----|----|----|----|----|
| 61 | Ortho-Spine Rehabilitation Center, Inc | 7211 Sawmill Road, Suite 101 | Dublin | Ohio |
| 62 | Allegheny Pain Management | 1402 Ninth Street | Altoona | Pennsylvania |
| 63 | South Hills Pain & Rehab Associates | 575 Coal Valley Road, Suite 277 | Jefferson Hills | Pennsylvania |
| 64 | Doylestown Hospital | 595 West State Street | | Pennsylvania |
| 65 | Holy Redeemer Ambulatory Surgery | 821 Huntingdon Pike | | Pennsylvania |
| 66 | New England Anesthesiology | 935 Jefferson Blvd., Suite 1002 | Warwick | Rhode Island |
| 67 | Ocean State Pain Management | 6 Blackstone Valley Place, Suite 21, Building 2 | Lincoln | Rhode Island |
| 68 | Ocean State Pain Management | 1377 South County Trail | East Greenwich | Rhode Island |
| 69 | Intervene MD | 1341 Old Georgetown Road, Suite B | Mount Pleasant | South Carolina |
| 70 | PCA Pain Care Center | 200 New York Avenue, Suite 320 | Oak Ridge | Tennessee |
| 71 | Specialty Surgery Center | 116 Brown Avenue | Crossville | Tennessee |
| 72 | St. Thomas Outpatient Neurosurgical | 4320 Harding Pike, F19 | Nashville | Tennessee |
| 73 | Donald Jones, M.D. | 200 New York Avenue, Suite 320 | Oak Ridge | Tennessee |
| 74 | Erlanger Health Systems | 975 E. Third Street | Chattanooga | Tennessee |
| 75 | Chattanooga Neurosurgery & Spine | 1010 E. Third Street, Suite 202 | Chattanooga | Tennessee |
| 76 | St. Thomas Health | 102 Woodmont Blvd., Suite 800 | Nashville | Tennessee |
| 77 | Howell Allen Clinic, P.C. | 2011 Murphy Avenue, Suite 301 | Nashville | Tennessee |
| 78 | St. Thomas Hospital | 102 Woodmont Blvd. Suite 800 | Nashville | Tennessee |
| 79 | St. Thomas Network | 4220 Harding Pike | Nashville | Tennessee |

| | | | | |
|---|---|---|---|---|
| 80 | Martin Kelvas (Former St. Thomas Hospital Employee) | 102 Woodmont Blvd., Suite 800 | Nashville | Tennessee |
| 81 | HCA Health Services of Tennessee (Centennial Medical Center) | 1 Park Plz | Nashville | Tennessee |
| 82 | Insight Imaging-Roanoke | 2923 Franklin Road | | Virginia |
| 83 | New River Valley Surgery Center | 2901 Lamb Circle | Christiansburg | Virginia |
| 84 | Insight Health Corp. | 2923 Franklin Road | | Virginia |
| 85 | PARS Interventional Pain | 1212 Garfield Avenue, Suite 202 | Parkersburg | West Virginia |

**EXHIBIT B**

Objections to Subpoenas

| Objector | Neurosurgical Group of Chattanooga | St. Thomas Outpatient Neurological Center | Specialty Surgery Center, PLLC | Howell Allen Clinic, PLLC | Dr. Donald Jones | Liberty Industries, Inc. & Mot. in Support thereof | Southeast Michigan Surgial Hospital | Michigan Pain Specialists | Thorek Memorial Hospital | Erlanger Health Systems, Inc. | Surgery Center Associates of High Point, LLC | Premier Orthopedic | Baltimore Pain Management Center |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Docket Entry # | 218 | 219 | 220 | 221 | 222 | 231 & 232 | 236 | 241 | 244 | 246, 247, 248, 256 | 250 | 252 | 254 |
| State | TN | TN | TN | TN | TN | CT | MI | MI | IL | TN | NC | NJ | MD |
| **I. BURDEN (i.e., time, expense, and scope) OBJECTIONS** | | | | | | | | | | | | | |
| A. The request for production of documents is overly broad and unduly burdensome. | X | X | X | X | X | X | X | X | X | X | X | | |
| B. The requested documents are not relevant and/or not reasonably calculated to lead to the discovery of admissable evidence. | X | X | X | X | X | X | X | X | X | X | X | | X |
| C. The time periods for which documents are requested are unreasonable. | | | | | | | | | | | | | |
| D. The subpoena calls for the production of documents properly attainable by plaintiffs from public sources (CDC, FDA). | | | | | | | | | | | X | | |
| Many of the documents sought by the subpoena are more appropiatly sought from NECC, thus reducing the burden and expense on the clinics. | | | | | | | | | | | | | |

1

**EXHIBIT B**

Objections to Subpoenas

| Objector | Carilion Surgery Center New River Valley | North Carolina Orthopedic Clinic | HCA Health Services of Tennessee (Centennial Medical Center) | Surgical Park Center, Ltd. | Martin Kelvas | St. Thomas Outpatient Neurological Center | The South Bend Clinic, LLP | South Jersey Healthcare (Inspira Health Clinic) | Surgery Center of Wilson, LLC | Forsyth Street Ambulatory Surgery Center, LLC | Neuromuscular and Rehabilitation Associates of Northern Michigan |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Docket Entry # | 257 | 259 | 260 | 261 | 263 | 266 | 269 & 270 | 273 | 275 | 279 | 288 |
| State | VA | NC | TN | FL | GA | TN | IN | NJ | NC | GA | MI |
| **I. BURDEN (i.e., time, expense, and scope) OBJECTIONS** | | | | | | | | | | | |
| A. The request for production of documents is overly broad and unduly burdensome. | | | X | X | | | | X | | | |
| B. The requested documents are not relevant and/or not reasonably calculated to lead to the discovery of admissable evidence. | X | X | X | X | X | X | X | X | X | | X |
| C. The time periods for which documents are requested are unreasonable. | | | X | X | | | | | | | |
| D. The subpoena calls for the production of documents properly attainable by plaintiffs from public sources (CDC, FDA). | | | X | X | | | | | | | |
| Many of the documents sought by the subpoena are more appropiatly sought from NECC, thus reducing the burden and expense on the clinics. | | | | | | | X | | | | |

2

**EXHIBIT B**

Objections to Subpoenas

| Objector | Rochester Brain and Spine Neurosurgery & Pain | Insight Health Corp. | Inspira Health Network, Inc. and Inspira Medical Center, Inc. | Pain Associates of Charleston | Dr. O'Connell's Pain Care Center | Greenspring Surgery Center | Pain Consultants of West Florida |
|---|---|---|---|---|---|---|---|
| Docket Entry # | | | | | | | |
| State | | | | | | | |
| **I. BURDEN (i.e., time, expense, and scope) OBJECTIONS** | | | | | | | |
| A. The request for production of documents is overly broad and unduly burdensome. | X | X | X | X | X | | X |
| B. The requested documents are not relevant and/or not reasonably calculated to lead to the discovery of admissable evidence. | X | | X | X | X | | X |
| C. The time periods for which documents are requested are unreasonable. | | | | | | | |
| D. The subpoena calls for the production of documents properly attainable by plaintiffs from public sources (CDC, FDA). | X | | | | | | X |
| Many of the documents sought by the subpoena are more appropiatly sought from NECC, thus reducing the burden and expense on the clinics. | X | | | | | | X |

3

**EXHIBIT B**

Objections to Subpoenas

| Objector | Neurosurgical Group of Chattanooga | St. Thomas Outpatient Neurological Center | Specialty Surgery Center, PLLC | Howell Allen Clinic, PLLC | Dr. Donald Jones | Liberty Industries, Inc. & Mot. in Support thereof | Southeast Michigan Surgial Hospital | Michigan Pain Specialists | Thorek Memorial Hospital | Erlanger Health Systems, Inc. | Surgery Center Associates of High Point, LLC | Premier Orthopedic | Baltimore Pain Management Center |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **II. JURISDICTIONAL AND PROCEDURAL OBJECTIONS** | | | | | | | | | | | | | |
| E. This court does not have jurisdiction to enforce the subpoena. | | | | | | | | | X | | | | |
| F. The clinic is not a party to any litigation and/or has no injured patients. | | | | | | | X | X | | X | X | | X |
| G. The subpoena imposes burdens other than or beyond those imposed by the Order on Central Enforcement and the Qualified Protected Order. | X | X | X | X | X | | | X | | X | X | X | X |
| H. The subpoena calls for the production of documents protected from disclosure as reflective of attorney-client communications and/or attorney work product. | X | X | X | X | X | X | X | X | X | | X | | X |
| I. The PSC failed to provide the fee for one day's attendance as required by Rule 45(b)(1). | X | X | X | X | X | | X | X | X | X | | | |
| J. Clinics that are parties should have been served a request for production pursuant to Rule 34 rather than a subpoena pursuant to Rule 35. | | | | | | | | | | | | | |
| K. The subpoena was improperly served via Federal Express. | | | | | | | | X | | | | | |
| L. The subpoena calls for the production of documents outside the clinic's possession, custody or control. | | | | | | | | | | | | | |
| M. The subpoena provided only 21 or 30 days to respond, which is not a reasonable amount of time. | X | X | X | X | X | | | X | | | X | X | |
| N. Rule 45(b)(1) requires that subpoenas be served on each party to the MDL. Comments to the Rule say that parties should have given notice before service of the subpoena on third parties. | | | | | | | | | | | | | |

**EXHIBIT B**

Objections to Subpoenas

| Objector | Carilion Surgery Center New River Valley | North Carolina Orthopedic Clinic | HCA Health Services of Tennessee (Centennial Medical Center) | Surgical Park Center, Ltd. | Martin Kelvas | St. Thomas Outpatient Neurological Center | The South Bend Clinic, LLP | South Jersey Healthcare (Inspira Health Clinic) | Surgery Center of Wilson, LLC | Forsyth Street Ambulatory Surgery Center, LLC | Neuromuscular and Rehabilitation Associates of Northern Michigan |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **II. JURISDICTIONAL AND PROCEDURAL OBJECTIONS** | | | | | | | | | | | |
| E. This court does not have jurisdiction to enforce the subpoena. | | | | | X | X | | X | | | |
| F. The clinic is not a party to any litigation and/or has no injured patients. | | | X | X | | | | | | | X |
| G. The subpoena imposes burdens other than or beyond those imposed by the Order on Central Enforcement and the Qualified Protected Order. | X | X | X | X | X | X | | X | X | | X |
| H. The subpoena calls for the production of documents protected from disclosure as reflective of attorney-client communications and/or attorney work product. | X | | X | X | X | X | X | X | X | | X |
| I. The PSC failed to provide the fee for one day's attendance as required by Rule 45(b)(1). | | X | X | X | X | X | X | | X | | |
| J. Clinics that are parties should have been served a request for production pursuant to Rule 34 rather than a subpoena pursuant to Rule 35. | | | | | | | | | | | |
| K. The subpoena was improperly served via Federal Express. | | | | | | | | | | | |
| L. The subpoena calls for the production of documents outside the clinic's possession, custody or control. | | | X | X | | | | | | | |
| M. The subpoena provided only 21 or 30 days to respond, which is not a reasonable amount of time. | | X | | | | X | | X | X | | X |
| N. Rule 45(b)(1) requires that subpoenas be served on each party to the MDL. Comments to the Rule say that parties should have given notice before service of the subpoena on third parties. | | | | | X | X | | X | | X | X |

EXHIBIT B

Objections to Subpoenas

| Objector | Rochester Brain and Spine Neurosurgery & Pain | Insight Health Corp. | Inspira Health Network, Inc. and Inspira Medical Center, Inc. | Pain Associates of Charleston | Dr. O'Connell's Pain Care Center | Greenspring Surgery Center | Pain Consultants of West Florida |
|---|---|---|---|---|---|---|---|
| **II. JURISDICTIONAL AND PROCEDURAL OBJECTIONS** | | | | | | | |
| E. This court does not have jurisdiction to enforce the subpoena. | X | | | X | X | | |
| F. The clinic is not a party to any litigation and/or has no injured patients. | X | | | | | | |
| G. The subpoena imposes burdens other than or beyond those imposed by the Order on Central Enforcement and the Qualified Protected Order. | X | X | | | X | X | X |
| H. The subpoena calls for the production of documents protected from disclosure as reflective of attorney-client communications and/or attorney work product. | X | | | | | | |
| I. The PSC failed to provide the fee for one day's attendance as required by Rule 45(b)(1). | X | | | | | X | X |
| J. Clinics that are parties should have been served a request for production pursuant to Rule 34 rather than a subpoena pursuant to Rule 35. | | | X | | | | |
| K. The subpoena was improperly served via Federal Express. | X | | X | X | | X | |
| L. The subpoena calls for the production of documents outside the clinic's possession, custody or control. | | | | | | | |
| M. The subpoena provided only 21 or 30 days to respond, which is not a reasonable amount of time. | X | X | X | | X | | X |
| N. Rule 45(b)(1) requires that subpoenas be served on each party to the MDL. Comments to the Rule say that parties should have given notice before service of the subpoenas on third parties. | | | | | | | |

6

**EXHIBIT B**

Objections to Subpoenas

| Objector | Neurosurgical Group of Chattanooga | St. Thomas Outpatient Neurological Center | Specialty Surgery Center, PLLC | Howell Allen Clinic, PLLC | Dr. Donald Jones | Liberty Industries, Inc. & Mot. in Support thereof | Southeast Michigan Surgial Hospital | Michigan Pain Specialists | Thorek Memorial Hospital | Erlanger Health Systems, Inc. | Surgery Center Associates of High Point, LLC | Premier Orthopedic | Baltimore Pain Management Center |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **III. CONFIDENTIALITY OBJECTIONS** | | | | | | | | | | | | | |
| O. The subpoena calls for the production of confidential or proprietary business information. | X | X | X | X | X | | | | X | | X | | |
| P. The subpoena calls for the production of documents protected from disclosure under the doctor-patient privilege, and/or the production of which would violate the requirements of HIPAA and its related regulations. | | | | | | | | | X | X | | | |

7

**EXHIBIT B**

Objections to Subpoenas

| Objector | Carilion Surgery Center New River Valley | North Carolina Orthopedic Clinic | HCA Health Services of Tennessee (Centennial Medical Center) | Surgical Park Center, Ltd. | Martin Kelvas | St. Thomas Outpatient Neurological Center | The South Bend Clinic, LLP | South Jersey Healthcare (Inspira Health Clinic) | Surgery Center of Wilson, LLC | Forsyth Street Ambulatory Surgery Center, LLC | Neuromuscular and Rehabilitation Associates of Northern Michigan |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **III. CONFIDENTIALITY OBJECTIONS** | | | | | | | | | | | |
| O. The subpoena calls for the production of confidential or proprietary business information. | X | | X | X | | | X | | X | | |
| P. The subpoena calls for the production of documents protected from disclosure under the doctor-patient privilege, and/or the production of which would violate the requirements of HIPAA and its related regulations. | | | X | X | | | | | | | X |

**EXHIBIT B**

Objections to Subpoenas

| Objector | Rochester Brain and Spine Neurosurgery & Pain | Insight Health Corp. | Inspira Health Network, Inc. and Inspira Medical Center, Inc. | Pain Associates of Charleston | Dr. O'Connell's Pain Care Center | Greenspring Surgery Center | Pain Consultants of West Florida |
|---|---|---|---|---|---|---|---|
| **III. CONFIDENTIALITY OBJECTIONS** | | | | | | | |
| O. The subpoena calls for the production of confidential or proprietary business information. | x | | x | | | x | |
| P. The subpoena calls for the production of documents protected from disclosure under the doctor-patient privilege, and/or the production of which would violate the requirements of HIPAA and its related regulations. | x | x | x | x | x | x | x |

**EXHIBIT B**

Objections to Subpoenas

| Objector | Neurosurgical Group of Chattanooga | St. Thomas Outpatient Neurological Center | Specialty Surgery Center, PLLC | Howell Allen Clinic, PLLC | Dr. Donald Jones | Liberty Industries, Inc. & Mot. in Support thereof | Southeast Michigan Surgial Hospital | Michigan Pain Specialists | Thorek Memorial Hospital | Erlanger Health Systems, Inc. | Surgery Center Associates of High Point, LLC | Premier Orthopedic | Baltimore Pain Management Center |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **IV. MOTIVE OBJECTIONS** | | | | | | | | | | | | | |
| Q. The PSC's subpoenas are thinly-veiled attempts to identify new clients. | | | | | | | | | | X | | | |

**EXHIBIT B**

Objections to Subpoenas

| Objector | Carilion Surgery Center New River Valley | North Carolina Orthopedic Clinic | HCA Health Services of Tennessee (Centennial Medical Center) | Surgical Park Center, Ltd. | Martin Kelvas | St. Thomas Outpatient Neurological Center | The South Bend Clinic, LLP | South Jersey Healthcare (Inspira Health Clinic) | Surgery Center of Wilson, LLC | Forsyth Street Ambulatory Surgery Center, LLC | Neuromuscular and Rehabilitation Associates of Northern Michigan |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **IV. MOTIVE OBJECTIONS** | | | | | | | | | | | |
| Q. The PSC's subpoenas are thinly-veiled attempts to identify new clients. | | | X | X | | | | | | | |

**EXHIBIT B**

Objections to Subpoenas

| Objector | Rochester Brain and Spine Neurosurgery & Pain | Insight Health Corp. | Inspira Health Network, Inc. and Inspira Medical Center, Inc. | Pain Associates of Charleston | Dr. O'Connell's Pain Care Center | Greenspring Surgery Center | Pain Consultants of West Florida |
|---|---|---|---|---|---|---|---|
| **IV. MOTIVE OBJECTIONS** | | | | | | | |
| Q. The PSC's subpoenas are thinly-veiled attempts to identify new clients. | | | | | | | X |

**EXHIBIT C**

# Exhibit _ to Subpoena

Deleted: A

Unless otherwise noted, all requests pertain to the time period October 6, 2010 through October 6, 2012

1.  *MPA and Triamcinolone:* Any and all documents and/or electronically stored information ("ESI") reflecting, and/or related in any way whatsoever to, the procurement of methylprednisolone acetate ("MPA") and Triamcinolone from New England Compounding Pharmacy, Inc. ("NECP") that the CDC has identified as contaminated including without limitation of the foregoing, information reflecting dates of shipment and/or receipt, quantities of shipment, lot numbers and other identifying labels, sizes of containers of steroid preparation, the cost you paid for the steroid preparation, applicable warranties, shelf life, expiration dates, requirements and instructions for shipment and/or storage, and the specific identity of the preparation being purchased. Also including account information, prescriptions submitted to NECP, prescription order forms, NECP charges for MPA (before and after any discounts applied) or any other compounded steroid medication encompassed by this request.

Deleted: any other injectable steroid preparations compounded steroid medication

Deleted: during the two-year period immediately preceding October 6, 2012,

Deleted: .

2.  *Equivalents to MPA and Triamcinolone:* Any and all documents and/or ESI reflecting, and/or related in any way whatsoever, to the procurement of any equivalent medication to MPA or Triamcinolone, or its generic or name-brand equivalent, or any other NECC compounded medication identified as contaminated by the CDC, from any producer, compounding facility or manufacturer other than NECP, since 1/1/2012, including without limitation of the foregoing, information reflecting dates of shipment and/or receipt, quantities of shipment, lot numbers and other identifying labels, sizes of containers of the product, the cost you paid for the product, applicable warranties, shelf life, expiration dates, requirements and instructions for shipment and/or storage, and the specific identity of the preparation being purchased.

Deleted: since October 6, 2007

3.  *Cardioplegic solution:* Any and all documents and/or ESI reflecting, and/or related in any way whatsoever to, the procurement of cardioplegic solution from NECP that the CDC has identified as contaminated including without limitation of the foregoing, information reflecting dates of shipment and/or receipt, quantities of shipment, lot numbers and other identifying labels, sizes of containers of cardioplegic solution, the cost you paid for the cardioplegic solution, applicable warranties, shelf life, expiration dates, and requirements and instructions for shipment and/or storage. Also including prescriptions submitted to NECP, prescription order forms, NECP charges for cardioplegic solution (before and after any discounts applied).

Deleted: during the two-year period immediately preceding October 6, 2012,

4.  *Betamethasone:* Any and all documents and/or ESI reflecting, and/or related in any way whatsoever, to the procurement of Betamethasone from NECP that the CDC has identified as contaminated, including without limitation of the foregoing, information reflecting dates of shipment and/or receipt, quantities of shipment, lot numbers and other identifying labels, sizes of containers of ophthalmic solution, the cost you paid for the ophthalmic solution, applicable warranties, shelf life, expiration dates, and requirements and instructions for shipment

Deleted: ophthalmic

Deleted: solution

Deleted: during the two-year period immediately preceding October 6, 2012

**EXHIBIT C**

and/or storage.  Also including prescriptions submitted to NECP, prescription order forms, NECP charges for opthalmic solution (before and after any discounts applied).

5.

6.   *Identification of exposed patients:* Any and all documents and/or ESI reflecting, and/or related to, the identification of each and every patient that was administered an NECP product that the CDC has identified as contaminated, or that have previously been compiled in response to a request from the Centers for Disease Control and Prevention, the Federal Food and Drug Administration, and/or any other Federal, state or local regulatory agency, any Grand Jury Subpoena, or any other governmental entity, including patient name, address, date of birth, identification of product administered, and date product was administered.

7.   *Communications with NECP:*  Any and all documents and/or ESI reflecting or containing communications (written or otherwise) between <u>NAME OF TARGET HEALTHCARE PROVIDER</u> ("Healthcare Provider"), its employees, principals, partners, and/or agents, and NECP, its employees and/or agents, during the two-year period immediately preceding October 6, 2012, including, but not limited to, any complaints or adverse event reports made to NECP by the Healthcare Provider.

8.   *Information about NECP's qualifications:*  Any and all documents and/or ESI reflecting or containing information obtained by the Healthcare Provider, its employees and/or agents, regarding NECP, including without limitation of the foregoing, NECP's qualifications, certifications or accreditations, or lack thereof, regulatory compliance, lack of regulatory compliance, operations, enforcement actions, suitability for conducting its business, legal actions and/or warnings, brochures, policies and procedures, ordering and delivery information company overviews, standard operating procedures, executive summaries, attachments A, B or others (relating to HIPAA, NECP policies and procedures, or other information).

9.   *Communications received about fitness of NECP's products:*  Any and all documents and/or ESI reflecting or containing information obtained by, or communications received by, the Healthcare Provider, its employees and/or agents, concerning the fitness of any products purchased or obtained from NECP for their intended use, for the medical products determined by the CDC to be contaminated, including but not limited to any environmental testing results, microbiology reports or certificates of analysis.

10.   *Information received from governmental entities:* Any and all documents and/or ESI reflecting or containing information obtained by, or sent to, the Healthcare Provider, its employees and/agents, from the Centers for Disease Control and Prevention, the Federal Food and Drug Administration, and/or any other Federal, state or local regulatory agency, concerning the fitness of any products manufactured, compounded or produced by NECP for their intended purpose.

12.   *Marketing information:*  Any and all documents and/or ESI reflecting or containing marketing information from NECP, NECP's agents, or any sales company or person marketing, selling, or attempting to sell products on behalf of NECP.

**Deleted:** Any and all documents and/or ESI reflecting, and/or related in any way whatsoever to, the procurement of preservative-free saline solution from NECP that the CDC has identified as contaminated during the two-year period immediately preceding October 6, 2012, including without limitation of the foregoing, information reflecting dates of shipment and/or receipt, quantities of shipment, lot numbers and other identifying labels, sizes of containers of saline solution, the cost you paid for the saline solution, applicable warranties, shelf life, expiration dates, and requirement and instructions for shipment and/or storage.  Also including prescriptions submitted to NECP, prescription order forms, NECP charges for preservative-free saline solution (before and after any discounts applied).

**Deleted:** during the two-year period immediately preceding October 6, 2012,

**Deleted:** during the two-year period immediately preceding October 6, 2012

**Deleted:** medications

**Deleted:** 11.   Any and all documents and/or ESI reflecting or containing communications between the Healthcare Provider and any federal or state agency (including, but not limited to state licensing authorities, the Food and Drug Administration, and the Centers for Disease Control and Prevention) in connection with the procurement of products from any compounding pharmacy.¶

**EXHIBIT C**

13.  *Contracts with NECP:* Any and all documents and/or ESI reflecting or containing agreements, contracts and/or warranties between the Healthcare Provider and NECP, NECP's agents, or any sales company or person marketing, selling, or attempting to sell products on behalf of NECP.

14.  *Recall notices received:* Any and all documents and/or ESI reflecting or containing recall notices received by the Healthcare Provider pertaining to products produced by NECP, including without limitation of the foregoing, the date, time and manner of receipt of the recall notices, the specific person or persons within the Healthcare Provider who received the notice, and the substance of the notice.

15.  *Communications responding to recall notices:* Any and all documents and/or ESI reflecting or containing communications made or issued by the Healthcare Provider, its employees and/or agents, in response to any recall notice regarding NECP products, including without limitation of the foregoing, the date, time and manner of transmission of the communication, the person(s) to which the communication was directed, and the person at the Healthcare Provider who made or delivered the communication.

16.  *Compliance with USP:* Any and all documents regarding any investigation or inquiry the Healthcare Provider performed related to attempts by NECP to comply with United States Pharmacopeia – National Formulary, Chapter 797 (USP – NF General Chapter 797, entitled "Pharmaceutical Compounding – Sterile Preparations").

17.  *Insurance policies:* Any and all policies of insurance, including without limitation of the foregoing, professional liability, malpractice, products liability, general liability, and comprehensive or umbrella policies, issued to the Healthcare Provider and/or its principal officers and directors and/or any physician working for or on behalf of the Healthcare Provider, for the policy periods covering any use of NECP medical products identified as contaminated by the CDC.

18.  *Articles of incorporation:* Articles of Incorporation and/or By-Laws applicable to the Healthcare Provider for calendar years 2011, 2012 and 2013.

**Deleted:** including calendar years 2011, 2012 and 2013

**Deleted:**  19.  Any and all documents and/or ESI reflecting or containing the names, addresses and positions (President, Vice-President, Director, etc.) within the Healthcare Provider of all officers and directors of the Healthcare Provider during the calendar years 2011, 2012 and 2013.¶
  20.  Any and all documents showing the entities or individuals with an ownership interest in the Healthcare Provider.¶
  21.  Any and all organizational charts maintained by the Healthcare Provider and/or any documents listing directors, officers, employees, and/or agents of the Healthcare Provider showing the names and positions of said directors, officers, employees, and/or agents and their relationship or rank within the Healthcare Provider. ¶