### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | MDL No. 2419<br>Master Dkt No. 1:13-md-02419-FDS |
| THIS DOCUMENT RELATES TO:<br><br>All Actions | |

### PLAINTIFFS' STEERING COMMITTEE'S PROPOSED MEDIATION ORDER AND MEMORANDUM IN SUPPORT

Pursuant to MDL Order No. 6 (Docket No. 209), the Plaintiffs' Steering Committee ("PSC") hereby files the attached proposed mediation order. The PSC has conferred on multiple occasions with the Unsecured Creditors Committee ("UCC") and the Bankruptcy Trustee, by telephone and email, regarding the proposed language of the mediation order. The groups have reached consensus on many issues, but there remain four issues on which the parties have differing positions.

As detailed below, the PSC's position on these disputed issues is:  (1) the District Court should oversee the mediation program;  (2) potentially responsible parties should be required to identify all entities or persons known to them that potentially bear responsibility for harm related to the contaminated NECC products, as they would have to under applicable state law;  (3) recipients of previously served subpoenas from the District Court who have not timely objected to the subpoenas should be required to comply with the subpoenas and produce the requested information, as they are in the process of doing at the present time; and (4) the District Court should not establish the UCC's proposed "Mediation Management Committee," as it has already

ordered the PSC to manage settlement of the claims in this litigation. *See* MDL Order No. 2, Dkt No. 82, p. 7. The parties should instead be allowed to self-organize to the extent necessary during the mediation process.

Attached to this document are the PSC's proposed mediation order (Ex. 1) and a redlined version showing the differences between the UCC's proposed mediation order and the PSC's proposed mediation order (Ex. 2).

1.   **The MDL court should oversee the proposed mediation program.**

The UCC's proposed mediation order sets the Bankruptcy Court as the presiding court over the mediation process. The PSC believes that the MDL court is obligated to oversee the mediation program for the following reasons:

**a.    The Judicial Panel for Multidistrict Litigation ("JPML") transferred actions to the District Court for the purposes of conducting all pre-trial proceedings.**

The JPML, in its MDL transfer order, expressed that the transfer of these cases to the District Court was, in part, intended to facilitate the resolution of the entire litigation in the District Court: "While transfer of a particular action might inconvenience some parties to the action, such transfer is often necessary to further the expeditious resolution of the litigation taken as a whole." Dkt. No. 2 (JPML transfer order, pursuant to 28 U.S.C. § 1407) at 1. Moreover, one fundamental justification underpinning the MDL concept is that:

> [MDLs] bring before a single judge all of the federal cases, parties, and counsel comprising the litigation. They therefore afford a unique opportunity for the negotiation of a global settlement. Few cases are remanded for trial; most multidistrict litigation is settled in the transferee court. As a transferee judge, it is advisable to make the most of this opportunity and facilitate the settlement of the federal and any related state cases."

Manual for Complex Litigation (Fourth) § 20.1. It is also well-settled that in MDLs, the "transferee judge supervises discovery; resolves important evidentiary disputes, class

certification issues, and dispositive motions; and **establishes procedures that will aid the parties in settlement negotiations**." Barbara J. Rothstein & Catherine R. Borden, *Managing Multidistrict Litigation in Products Liability Cases*, p.3 (Federal Judicial Center 2011) available at http://www.fjc.gov/public/pdf.nsf/ lookup/MDLGdePL.pdf/$file/MDLGdePL.pdf (emphasis added); *see also In re Patenaude*, 210 F.3d 135, 144 (3d Cir. 2000) (". . . there is no basis for concluding that settlement conferences are not pretrial proceedings.").

It is certainly within the District Court's inherent powers to delegate its authority to oversee the mediation program to the Bankruptcy Court, but the PSC believes this is a decision for the District Court to make and not one that the parties can make by agreement. Moreover, the PSC believes that given the District Court's charge by the JPML, it is more appropriate for the District Court to oversee the mediation program.

### b. The District Court created the mediation program.

The District Court, in its June 28, 2013 Order, set forth its vision for a mediation program, which included outlining in general terms the obligations and rights of participants. Dkt. No. 209. Accordingly, it appears to be the contemplation of the District Court that the mediation program would be created and would proceed under its direction. By virtue of its Article III powers and its statutory powers, the District Court is the more appropriate court to oversee the mediation program. Article III courts are empowered with broad inherent powers, including the power to oversee global settlement programs and even to compel attendance at a settlement conference. *See, e.g., Heileman Brewing Co. v. Joseph Oat Corp.*, 871 F.2d 648, 650 (7th Cir. 1989) (en banc); *see also In re Atl. Pipe Corp.*, 304 F.3d 135, 143 (1st Cir. 2002).

### c. The District Court has ruled that it has subject matter jurisdiction over most or all of the claims at issue under its "related to" jurisdiction (Dkt. 170) and the Bankruptcy Court agrees that liquidation of the personal injury and wrongful death claims is properly within the District Court's jurisdiction.

The District Court has not and cannot refer these tort actions to the Bankruptcy Court. The Bankruptcy Court has also recognized that its jurisdiction does not extend to liquidating the personal injury or wrongful death claims and that that responsibility properly rests with the District Court. *See* Ex. 3 (Transcript of July 24, 2013 hearing, Bankruptcy Court) at 105-107. Accordingly, because the District Court has subject matter jurisdiction over the underlying claims and, ultimately the constitutional and statutory power to adjudicate those claims, it is appropriate that the District Court oversee the mediation program.

2.    **The participants should be required to identify all potentially liable parties known to them (and not merely limited to Ohio and Tennessee).**

Paragraph 4(b)(4) of the  PSC's proposed mediation order requires participants to identify any known entities or persons that potentially have responsibility for  harm related to the contaminated NECC products.  This is consistent with the District Court's June 28, 2013, Order, which stated:

> The proposed mediation order shall provide that any unaffiliated defendant or non-party who elects to participate in mediation shall, among other things:
>
>        * * *
>
> provide a statement to the appointed mediator, the Plaintiffs' Lead Counsel, a liaison to the defendants, the trustee, and the Creditors' Committee identifying any other potentially responsible parties liable to tort claimants or liable to the defendants or another potentially responsible party regarding injuries related to the allegedly contaminated methylprednisolone acetate and the grounds or basis of the claim.

June 28, 2013 Order at 11, sec. J.4. (Dkt. 209).

In the UCC's proposed mediation order, however, the provision effectuating this mandate applies only to states with a one-year statute of limitations, such as Tennessee and Ohio. While the PSC believes there is good cause for this provision to apply to one-year statute of limitations states, for the same reasons, the provision should apply to parties in all states.

As an initial matter, the District Court's June 28, 2013, Order makes no such distinction between states with one-year statutes of limitations and all other states. *Id*. at 11, sec. II.J.4. The District Court's Order applies this requirement to all participants, regardless of the state in which the claims arose.  Moreover requiring defendants or potential defendants to identify all entities known to them as potentially bearing comparative fault for the harm caused to the claimants will bring into the global mediation process all potentially responsible parties and will avoid piece-meal litigation.

One purpose of the global mediation is to capture the "unique opportunity" for the negotiation of a global settlement that an MDL such as this one provides.  The District Court has recognized that there is an opportunity to craft a global resolution early in this litigation. Doing so early in litigation, however, has the disadvantage of proceeding without the benefit of substantial or even basic discovery and, in some instances, without the claimants having an opportunity to identify all potentially responsible parties.

Defendants or potential defendants, on the other hand, have knowledge superior to that of the claimants regarding which other entities they believe bear responsibility for causing the alleged harm.  For example, through early discovery in a case then-pending in Tennessee state court, claimants learned about additional persons and entities that the defendants-clinic consulted when making purchase and other key decisions regarding the tainted NECC products.  These were entities whose potential culpability was known to the defendant-clinic, but whose existence and potential liability was unknown to the claimants prior to production of documents responsive to discovery in those cases. Without the benefit of discovery preceding the global mediation program, there is a substantial likelihood that potentially responsible parties will be excluded – unintentionally perhaps – from participation in the mediation program. Such exclusion would

diminish the already limited funds potentially available for settlement and, if the program is successful, would allow responsible parties potentially to escape accountability.

In addition, if all potentially responsible parties are not identified and given an opportunity to participate in the global mediation program, there is an increased likelihood that the program will not produce a global resolution and instead piece-meal litigation will remain against the potentially responsible parties that are identified later. In other words, while the mediation program might result in significant resolution of claims, it can only hope to resolve claims against participating entities. So, in the Tennessee example set forth above, if the identity and role of the additional potentially responsible entities came to light after the mediation program, the claims against them would not be barred or resolved by the mediation program. Such a scenario would undercut the program's goal of global resolution.

The PSC's proposed mediation order makes clear that the requirement that participants identify potentially liable entities or persons known to them is an important requirement with consequences for non-compliance. In particular, paragraph 8(e) of the PSC's proposed mediation order states that a participant's list of identified potentially responsible entities or person cannot be expanded by the participant should they withdraw from the mediation program.  This requirement is particularly, but not exclusively, important for claimants in states with one-year statutes of limitation. In those states, even with a tolling provision for the claims against the mediation participants, claimants face the potential for claims against non-participants to be time-barred if not timely filed, and the statute of limitations for those claims potentially could expire during the pendency of the mediation program.  Requiring participants to identify early those other entities or persons known to them reduces the risk of plaintiffs' claims being time-barred because some parties opted to participate in the mediation program. Moreover, it would

impose no more burden on the participating defendants than would otherwise be imposed on them under state law and the Federal Rules when any lawsuit is timely filed against them. *See, e.g.*, Fed. R. Civ. P. 8(c) (requiring pleading of the affirmative defense of contributory negligence in a defendant's answer).

Accordingly, requiring participants to identify all potentially responsible entities would be consistent with the District Court's Order, would potentially increase the funds available for settlement, and would avoid the potential for significant additional litigation even after an otherwise successful mediation program.

### 3.   The Mediation Order should not relieve subpoena recipients that have not timely objected of their obligations to respond to the subpoenas.

The PSC served subpoenas on various non-party health care providers and other potentially responsible entities, most of which we served during the time period from June 25, 2013 to July 8, 2013. These subpoenas were narrowly tailored to seek information necessary to establish the scope and bases for liability against these entities.  The subpoenas seek information and materials necessary for effectively mediating the claims in this litigation.  The District Court ordered deadline to file objections was July 16, 2013. Some recipients have already responded to the subpoenas and provided the requested information. Others have indicated that they are gathering the information and will produce it imminently.  For the subpoena recipients who have neither produced documents nor timely objected, the District Court should enforce the subpoenas and the mediation order should not relieve the subpoena recipients of their obligations. *See* Ex. 2 (PSC's proposed mediation order) ¶ 4(b)(5).

Absent timely objection, Rule 45 requires compliance. Fed. R. Civ. P. 45 (c)(2) and (3). In this litigation, except for the District Court's August 1, 2013, Order excluding certain patient information from production (Dkt. 370), there has been no court order relieving subpoena

recipients of their requirement to comply with Rule 45. In the absence of any timely objection, there is no reason why subpoena recipients who have either agreed to provide documents or have failed to take any action to quash or modify the subpoenas, should be free to ignore their obligations under Rule 45. It is a fair assumption that any recipient that has not timely objected to the subpoena intends to comply with it and has concluded that compliance is not unduly burdensome or otherwise problematic. Accordingly, absent timely objections, the mediation order should recognize this principle and recipients of previously served subpoenas should be required to respond to the subpoenas.

### 4.   The UCC's proposed Mediation Order usurps the duties and responsibilities assigned to the PSC.

Within the proposed procedures outlined by the UCC and Trustee, it is suggested that the Mediation Order establish a "Mediation Management Committee" comprised of "five members" who will be one designee from The Trustee, The Official Creditors' Committee, the PSC, Defendants' Liaison Counsel, and Other Defendants' counsel. This is not a workable organization.

The District Court – after submissions and much thought – established a seven-member PSC. It did so based on the work to be performed in this complicated litigation. In its MDL Order No. 2, this Court order that it was the PSC's responsibility "to negotiate and propose settlement of cases on behalf of plaintiffs or plaintiff groups, including exploring and, where appropriate, pursuing all settlement options concerning any claim or portion thereof of any case filed in this litigation." *See* Dkt No. 82, p. 7. In the event any mediation "management" committee is needed or ordered, the parties themselves should self-organize, allowing all members of the PSC to manage the resolution process on their own, consistent with MDL Order No. 2, and in consultation with the Defendants, without setting up another layer of rules and

procedures to follow. Restricting the voices of the seven members of the PSC to one designee makes no sense here and flies in the face of this Court's order appointing the PSC to manage settlement of these cases. The PSC welcomes the Trustee's involvement, as his work is important to the potential resolution of national tragedy.

*   *   *

For the foregoing reasons, the District Court should enter the PSC's proposed mediation order.

Dated:  August 8, 2013       Respectfully submitted,

            **/s/ Thomas M. Sobol**
            Thomas M. Sobol
            Kristen Johnson Parker
            HAGENS BERMAN SOBOL SHAPIRO LLP
            55 Cambridge Parkway, Suite 301
            Cambridge, MA  02142
            Telephone:  (617) 482-3700
            Facsimile:  (617) 482-3003
            tom@hbsslaw.com
            kristenjp@hbsslaw.com

            *Plaintiffs' Lead Counsel*

            Elizabeth J. Cabraser
            Mark P. Chalos
            LIEFF CABRASER HEIMANN &
            BERNSTEIN, LLP
            275 Battery Street, 29th Floor
            San Francisco, CA  94111
            Telephone:  (415) 956-1000
            Facsimile:  (415) 956-1008
            ecabraser@lchb.com
            mchalos@lchb.com

            *Federal/State Liaison*

Marc E. Lipton
LIPTON LAW
18930 W. 10 Mile Road
Southfield, MI  48075
Telephone:  (248) 557-1688
Facsimile:  (248) 557-6344
marc@liptonlawcentercom

Kim Dougherty
JANET, JENNER & SUGGS, LLC
75 Arlington St., Suite 500
Boston, MA  02116
Telephone:  (617) 933-1265
kdougherty@myadvocates.com

Patrick T. Fennell
CRANDALL & KATT
366 Elm Avenue, S.W.
Roanoke, VA  24016
Telephone:  (540) 342-2000
pfennel@crandalllaw.com

Mark Zamora
ZAMORA FIRM
6 Concourse Way, 22nd Floor
Atlanta, GA  30328
Telephone:  (404) 451-7781
Facsimile:  (404) 506-9223
marc@markzamora.com

J. Gerard Stranch, IV
Benjamin A. Gastel
BRANSETTER, STRANCH & JENNINGS
PLLC
227 Second Avenue North
Nashville, TN  37201
Telephone:  (615) 254-8801
Facsimile:  (615) 255-5419
gerards@branstetterlaw.com

*Plaintiffs' Steering Committee*

## **CERTIFICATE OF SERVICE**

I, Thomas M. Sobol, hereby certify that I caused a copy of the foregoing *Plaintiffs'*
*Steering Committee's Proposed Mediation Order and Memorandum in Support* to be filed
electronically via the Court's electronic filing system. Those attorneys who are registered with
the Court's electronic filing system may access these filings through the Court's system, and
notice of these filings will be sent to these parties by operation of the Court's electronic filing
system.

Dated: August 8, 2013

/s/ Thomas M. Sobol
Thomas M. Sobol (BBO # 471770)