T 617.482.3700   F 617.482.3003

**HAGENS BERMAN**

Thomas M. Sobol
HAGENS BERMAN SOBOL SHAPIRO LLP
55 CAMBRIDGE PARKWAY, SUITE 301
CAMBRIDGE, MA 02142
www.hbsslaw.com
Direct (617) 482-3700
tom@hbsslaw.com

July 10, 2013

UNIVERSAL PAIN MANAGEMENT
819 Auto Center Drive
Palmdale, CA 93551

Re: New England Compounding Center Litigation, MDL No. 2419

To Whom It May Concern,

As you are aware, last year New England Compounding Pharmacy, Inc. d/b/a the New England Compounding Center ("NECC") distributed tainted medication to various clinics throughout the country and specifically in Tennessee. Hundreds, if not thousands, of patients have been injured as a result of exposure to tainted NECC products. The most recent Center for Disease Control reports confirm that over 700 patients have confirmed illnesses related to their exposure to tainted NECC pharmaceuticals and over 240 people have confirmed cases of meningitis. Fifty-eight people have died.

According to the CDC, Universal Pain Management purchased and received preservative free methylprednisolone actetate from at least one of the three contaminated lots distributed by NECC.

The Judicial Panel on Multidistrict Litigation created a multi-district litigation forum in the United States District Court for the District of Massachusetts to address federal lawsuits alleging harm related to products manufactured by NECC (No. 1:13-md-2419-FDS). The Honorable Judge Saylor appointed seven firms to the Plaintiffs' Steering Committee (PSC) and appointed me, Thomas M. Sobol of Hagens Berman Sobol Shapiro LLP, as Lead Counsel.

Lead Counsel and the PSC are charged with:

1.  Initiating, coordinating, and conducting all pretrial discovery on behalf of plaintiffs in all actions subject to this order;

2.  Developing and proposing to the Court schedules for the commencement, execution, and completion of all discovery on behalf of all plaintiffs;

July 10, 2013
Page 2

    3.    Issuing in the name of all plaintiffs the necessary discovery requests, motions, and subpoenas concerning any witnesses and documents needed to prepare for the trial of this litigation (similar requests, motions, and subpoenas may be caused to be issued by the PSC upon written request by an individual attorney in order to assist him or her in the preparation of the pretrial stages of his or her client's particular claims); and

    4.    Conducting all discovery, by members or their designees approved by Lead Counsel, in a coordinated and consolidated manner on behalf and for the benefit of all plaintiffs.

NECC has filed for reorganization under Chapter 11 of the Bankruptcy Code. Lead Counsel and the PSC are coordinating their efforts with the Official Creditor's Committee and its counsel, and will share with the Creditor's Committee all appropriate information that you produce in response to the subpoena. The PSC and Lead Counsel are committed to working hand-in-hand with the Official Creditors' Committee. Lead Counsel and the Creditors' Committee will be involved in any settlement discussions.

Lead Counsel and the PSC have designated Michael R. Hugo of the Law Offices of Michael R Hugo, PLLC, 1 Catherine Rd., Framingham, MA 01701, telephone 617-448-4888, to handle the day-to-day litigation of claims against Universal Pain Management.

You will receive a subpoena requesting information about your purchase, storage, and use of NECC products shortly. For your convenience, a copy of that subpoena is attached.

The subpoena requests some information that is protected under the Health Insurance Portability and Accountability Act of 1996 (HIPAA) and other privacy laws. We have asked Judge Saylor to enter an order in the MDL governing the production of this protected health information. (Dkt. No. __) Once the order has been entered, we will identify a HIPAA-compliant vendor to receive (only) protected health information that is responsive to this subpoena. All other responsive information should be produced in accordance with the instructions in the subpoena.

We have also asked Judge Saylor to enter an order confirming that he will centrally enforce all subpoenas and instructing subpoena recipients to file any objections

July 10, 2013
Page 3

or motions to quash directly into the MDL. (Dkt. No. __) Judge Saylor will hear any objections to subpoenas at the July 18, 2013 MDL status conference. (Dkt. No. __)

Thank you. Please contact me or Mr. Hugo with any questions.

Sincerely,

**/s/ Thomas M. Sobol**

Thomas M. Sobol
Partner
HAGENS BERMAN SOBOL SHAPIRO LLP

TMS:kjp
Enclosure

AO 88A (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the

District of Massachusetts

| In re: New England Compounding Pharmacy, Inc. | ) | |
|---|---|---|
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.  MDL 1:13-md-02419 |
| | ) | |
| | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To: UNIVERSAL PAIN MANAGEMENT
819 Auto Center Drive, Palmdale, CA 93551

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

See Exhibit A

| Place: UNIVERSAL PAIN MANAGEMENT<br>819 Auto Center Drive, Palmdale, CA 93551 | Date and Time:<br>07/31/2013 10:00 am |
|---|---|

The deposition will be recorded by this method:   Stenographically and/or Videographically

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

See Exhibit A

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date: _____

*CLERK OF COURT*

OR  _____[signature]_____

_____     _____
*Signature of Clerk or Deputy Clerk*                                   *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*  _____
Plaintiffs' Steering Committee _____ , who issues or requests this subpoena, are:
Michael R. Hugo, Esq., Law Office of Hugo & Associates, LLC; 1 Catherine Rd., Framingham, MA 01701  617-448-4888

AO 88A (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. MDL 1:13-md-02419

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____.

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

## Exhibit A to Subpoena

1. Any and all documents and/or electronically stored information ("ESI") reflecting, and/or related in any way whatsoever to, the procurement of methylprednisolone acetate ("MPA") and any other injectable steroid preparations from New England Compounding Pharmacy, Inc. ("NECP") during the two-year period immediately preceding October 6, 2012, including without limitation of the foregoing, information reflecting dates of shipment and/or receipt, quantities of shipment, lot numbers and other identifying labels, sizes of containers of steroid preparation, the cost you paid for the steroid preparation, applicable warranties, shelf life, expiration dates, requirements and instructions for shipment and/or storage, and the specific identity of the preparation being purchased. Also including account information, prescriptions submitted to NECP, prescription order forms, NECP charges for MPA (before and after any discounts applied).

2. Any and all documents and/or ESI reflecting, and/or related in any way whatsoever to, the procurement of MPA, or its generic or name-brand equivalent, from any producer, compounding facility or manufacturer other than NECP, since October 6, 2007, including without limitation of the foregoing, information reflecting dates of shipment and/or receipt, quantities of shipment, lot numbers and other identifying labels, sizes of containers of the product, the cost you paid for the product, applicable warranties, shelf life, expiration dates, requirements and instructions for shipment and/or storage, and the specific identity of the preparation being purchased.

3. Any and all documents and/or ESI reflecting, and/or related in any way whatsoever to, the procurement of cardioplegic solution from NECP during the two-year period immediately preceding October 6, 2012, including without limitation of the foregoing, information reflecting dates of shipment and/or receipt, quantities of shipment, lot numbers and other identifying labels, sizes of containers of cardioplegic solution, the cost you paid for the cardioplegic solution, applicable warranties, shelf life, expiration dates, and requirements and instructions for shipment and/or storage. Also including prescriptions submitted to NECP, prescription order forms, NECP charges for cardioplegic solution (before and after any discounts applied).

4. Any and all documents and/or ESI reflecting, and/or related in any way whatsoever to, the procurement of ophthalmic solution from NECP during the two-year period immediately preceding October 6, 2012, including without limitation of the foregoing, information reflecting dates of shipment and/or receipt, quantities of shipment, lot numbers and other identifying labels, sizes of containers of ophthalmic solution, the cost you paid for the ophthalmic solution, applicable warranties, shelf life, expiration dates, and requirements and instructions for shipment and/or storage. Also including prescriptions submitted to NECP, prescription order forms, NECP charges for opthalmic solution (before and after any discounts applied).

5. Any and all documents and/or ESI reflecting, and/or related in any way whatsoever to, the procurement of preservative-free saline solution from NECP during the two-year period immediately preceding October 6, 2012, including without limitation of the

foregoing, information reflecting dates of shipment and/or receipt, quantities of shipment, lot numbers and other identifying labels, sizes of containers of saline solution, the cost you paid for the saline solution, applicable warranties, shelf life, expiration dates, and requirement and instructions for shipment and/or storage. Also including prescriptions submitted to NECP, prescription order forms, NECP charges for preservative-free saline solution (before and after any discounts applied).

6. Any and all documents and/or ESI reflecting, and/or related to, the identification of each and every patient that was administered an NECP product during the two-year period immediately preceding October 6, 2012, including patient name, address, date of birth, identification of product administered, and date product was administered.

7. Any and all documents and/or ESI reflecting or containing communications (written or otherwise) between UNIVERSAL PAIN MANAGEMENT ("Healthcare Provider"), its employees, principals, partners, and/or agents, and NECP, its employees and/or agents, during the two-year period immediately preceding October 6, 2012, including, but not limited to, any complaints or adverse event reports made to NECP by the Healthcare Provider.

8. Any and all documents and/or ESI reflecting or containing information obtained by the Healthcare Provider, its employees and/or agents, regarding NECP, including without limitation of the foregoing, NECP's qualifications, certifications or accreditations, or lack thereof, regulatory compliance, lack of regulatory compliance, operations, enforcement actions, suitability for conducting its business, legal actions and/or warnings, brochures, policies and procedures, ordering and delivery information company overviews, standard operating procedures, executive summaries, attachments A, B or others (relating to HIPAA, NECP policies and procedures, or other information).

9. Any and all documents and/or ESI reflecting or containing information obtained by, or communications received by, the Healthcare Provider, its employees and/or agents, concerning the fitness of any products purchased or obtained from NECP for their intended use, during the two-year period immediately preceding October 6, 2012, including but not limited to any environmental testing results, microbiology reports or certificates of analysis.

10. Any and all documents and/or ESI reflecting or containing information obtained by, or sent to, the Healthcare Provider, its employees and/agents, from the Centers for Disease Control and Prevention, the Federal Food and Drug Administration, and/or any other Federal, state or local regulatory agency, concerning the fitness of any products manufactured, compounded or produced by NECP for their intended purpose.

11. Any and all documents and/or ESI reflecting or containing communications between the Healthcare Provider and any federal or state agency (including, but not limited to state licensing authorities, the Food and Drug Administration, and the Centers for Disease Control and Prevention) in connection with the procurement of products from any compounding pharmacy.

12. Any and all documents and/or ESI reflecting or containing marketing information from NECP, NECP's agents, or any sales company or person marketing, selling, or attempting to sell products on behalf of NECP.

13. Any and all documents and/or ESI reflecting or containing agreements, contracts and/or warranties between the Healthcare Provider and NECP, NECP's agents, or any sales company or person marketing, selling, or attempting to sell products on behalf of NECP.

14. Any and all documents and/or ESI reflecting or containing recall notices received by the Healthcare Provider pertaining to products produced by NECP, including without limitation of the foregoing, the date, time and manner of receipt of the recall notices, the specific person or persons within the Healthcare Provider who received the notice, and the substance of the notice.

15. Any and all documents and/or ESI reflecting or containing communications made or issued by the Healthcare Provider, its employees and/or agents, in response to any recall notice regarding NECP products, including without limitation of the foregoing, the date, time and manner of transmission of the communication, the person(s) to which the communication was directed, and the person at the Healthcare Provider who made or delivered the communication.

16. Any and all documents regarding any investigation or inquiry the Healthcare Provider performed related to attempts by NECP to comply with United States Pharmacopeia – National Formulary, Chapter 797 (USP – NF General Chapter 797, entitled "Pharmaceutical Compounding – Sterile Preparations").

17. Any and all policies of insurance, including without limitation of the foregoing, professional liability, malpractice, products liability, general liability, and comprehensive or umbrella policies, issued to the Healthcare Provider and/or its principal officers and directors and/or any physician working for or on behalf of the Healthcare Provider, for the policy periods including calendar years 2011, 2012 and 2013.

18. Articles of Incorporation and/or By-Laws applicable to the Healthcare Provider for calendar years 2011, 2012 and 2013.

19. Any and all documents and/or ESI reflecting or containing the names, addresses and positions (President, Vice-President, Director, etc.) within the Healthcare Provider of all officers and directors of the Healthcare Provider during the calendar years 2011, 2012 and 2013.

20. Any and all documents showing the entities or individuals with an ownership interest in the Healthcare Provider.

21. Any and all organizational charts maintained by the Healthcare Provider and/or any documents listing directors, officers, employees, and/or agents of the Healthcare Provider showing the names and positions of said directors, officers, employees, and/or agents and their relationship or rank within the Healthcare Provider.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN RE: NEW ENGLAND )
COMPOUNDING PHARMACY, INC. )   MDL No. 1:13-md-02419
PRODUCTS LIABILITY LITIGATION )
) Hon. F. Dennis Saylor, IV
This Document Relates To: All Cases )
)

### NOTICE OF TAKING VIDEOTAPED ORAL DEPOSITION OF DESIGNATED REPRESENTATIVE(S) OF NON PARTIES DIRECTED TO UNIVERSAL PAIN MANAGEMENT

Please take notice that on August 10, 2013, beginning at 9:00 a.m. at the offices of UNIVERSAL PAIN MANAGEMENT, 819 Auto Center Drive, Palmdale, CA 93551, the deposition of a designated corporate representative will be taken upon oral examination by one or more attorneys of the Plaintiffs' Steering Committee in the pending MDL, pursuant to Rule 30 of the Federal Rules of Civil Procedure for the purpose of discovery or for use as evidence in this action, and before an officer authorized by law to administer oaths.

PLEASE TAKE FURTHER NOTICE that pursuant to Rules 30 and 34 of the Federal Rules of Civil Procedure, the non-party deponent(s) shall produce at the deposition the documents identified in Exhibit 1 attached to this Notice.

**Duty to designate.** By designating a representative, the organization indicates its representative has the authority to speak on its behalf about the matters listed in this deposition notice – not only to facts, but also to subject beliefs and opinions.[1]

---

**Duty to substitute.** If it becomes clear that the chosen representative is unable to respond to questions on the matters for which he or she has been designated, the organization must immediately provide a substitute knowledgeable witness. This is required even if the initial designation was made in good faith.[2]

**Duty to prepare.** The testimony elicited in the deposition represents the organization's knowledge, not the individual deponent's knowledge. The organization must conduct a thorough investigation in response to the deposition notice and must prepare any witness to testify to all matters "known or reasonably available to the organization." Therefore, if the organization's designee is not knowledgeable about the matters specified in the deposition notice, it must nonetheless prepare such designee to give knowledgeable, binding answers.[3]

"Reasonably available" information includes all documents that the organization has the authority, legal right, or practical ability to obtain. An inadequately prepared designated witness will amount to an impermissible refusal to answer and a sanctionable failure to appear.[4]

---

[1] *Lapenna v. Upjohn Co.*, 110 F.R.D. 15, 20 (E.D. Pa. 1986); *See also Alexander v. Fed. Bureau of Investigation*, 186 F.R.D. 148, 151-52 (D.D.C. 1999); *Mitsui & Co. v. Puerto Rico Water Res. Autho.*, 93 F.R.D. 62, 66-67 (D.P.R. 1981).

[2] *See Marker v. Union Fidelity Life*, 125 F.R.D. 121, 126 (M.D.N.C. 1989).

[3] *United States v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C. 1996).

[4] *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 637 (D. Minn. 2000) (citing *Lumber v. PPG Industries, Inc.*, 168 F.R.D. 641, 643 n. 1 (D. Minn. 1966); *See Black Horse Lane Assoc., L.P. v. Down Chem. Corp.*, 228 F. 3d 275, 303-04 (3d Cir. 2000); *Resolution Trust Corp. v. S. Union Co.*, 985 F. 2d 196, 197 (5th Cir. 1993); *Taylor*, 166 F.R.D. at 363; *Marker v. Union Fidelity Life Ins. Co.*, 125 F.R.D. 121, 126 (M.D.N.C. 1989).

**Scope of inquiry** The description contained in the deposition notice simply identifies the minimum to which a witness must be prepared to testify. If an examining party asks questions outside the scope of the matters described in the notice, the general deposition rules govern.

## DESIGNATION OF TESTIMONY AND PRODUCTION OF DOCUMENTS

The designated matters upon which examination is requested are as follows:

1. To provide testimony regarding those individuals involved in the production of documents.
2. To provide testimony regarding the efforts made and the time expended in the production of documents.
3. To provide testimony regarding the methods of search and methods of production of documents produced.
4. To provide testimony regarding the authenticity of documents.
5. To provide testimony regarding the methods of storage, entry and use of computer data and the method by which it has been produced.
6. To provide testimony regarding the location and methods of storage of corporate documents.
7. To provide testimony regarding the existence of documents.
8. To provide testimony regarding the electronic creation, duplication and/or storage of the documents.
9. To provide testimony regarding any and all document retention/destruction policies that would relate to any of the documents.

10. To provide testimony regarding the searchability of databases for the extraction of information.

RESPECTFULLY SUBMITTED

/S/ Michael R. Hugo
Michael R. Hugo, BBO #243890
LAW OFFICES OF HUGO & ASSOCIATES
1 Catherine Road
Framingham, MA 01701
Tel. (617) 448-4888
Fax (617) 607-9655
mike@hugo-law.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 10TH day of July 2013, a true and exact copy of the foregoing was served upon the above named entities.

/s/Michael R. Hugo
Michael R. Hugo, BBO #243890
LAW OFFICES OF HUGO & ASSOCIATES
1 Catherine Road
Framingham, MA 01701
Tel. (617) 448-4888
Fax (617) 607-9655
mike@hugo-law.com