1             UNITED STATES DISTRICT COURT
              DISTRICT OF MASSACHUSETTS
2

3

4    IN RE:  NEW ENGLAND              )  MDL NO. 13-02419-FDS
     COMPOUNDING                      )
5    PHARMACY CASES LITIGATION        )
                                      )
6                                     )
                                      )
7                                     )
                                      )
8

9     BEFORE:  THE HONORABLE F. DENNIS SAYLOR, IV

10
                     STATUS CONFERENCE
11

12
          John Joseph Moakley United States Courthouse
13                   Courtroom No. 2
                    One Courthouse Way
14                   Boston, MA 02210

15
                     August 9, 2013
16                     1:30 p.m.

17

18

19

20

21

22

23            Valerie A. O'Hara, FCRR, RPR
                  Official Court Reporter
24    John Joseph Moakley United States Courthouse
              One Courthouse Way, Room 3204
25                 Boston, MA 02210
              E-mail: vaohara@gmail.com

1    APPEARANCES:

2    For The Plaintiffs:

3        Hagens, Berman, Sobol, Shapiro LLP, by
     KRISTEN JOHNSON PARKER, ATTORNEY,
4    55 Cambridge Parkway, Suite 301, Cambridge,
     Massachusetts 02142;

5
         Ellis & Rapacki LLP, by FREDRIC L. ELLIS, ESQ.,
6    85 Merrimac Street, Suite 500, Boston, Massachusetts
     02114;

7
         Robinson & Cole, LLP, KIMBERLY A. DOUGHERTY,
8    ATTORNEY, One Boston Place, Suite 2500, Boston,
     Massachusetts  02108;

9
         Branstetter, Stranch & Jennings, PLLC, by J. GERARD
10   STRANCH, IV, ESQ., 227 Second Avenue North, Nashville,
     Tennessee 37201-1631;

11
         Lieff, Cabraser, Heimann & Bernstein, LLP, by MARK P.
12   CHALOS, ESQ., One Nashville Place, 150 Fourth Avenue,
     North, Suite 1650, Nashville, Tennessee 37219-2423;

13
         Law Office of Hugo & Associates, MICHAEL R. HUGO,
14   ESQ., 1 Catherine Road, Framingham, Massachusetts
     01701;

15
         Crandall & Katt, by PATRICK THOMAS FENNELL, ESQ.,
16   366 Elm Avenue, SW, Roanoke, VA 24016;

17   FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS:

18       Brown Rudnick, by REBECCA L. FORDON, ATTORNEY,
     and KIERSTEN A. TAYLOR, ATTORNEY, One Financial Center,
19   Boston, Massachusetts  02111;

20       Cohen, Placitella & Roth, P.C., by MICHAEL COREN,
     ESQ., 2 Commerce Square, 2001 Market Street, Suite 2900,
21   Philadelphia, Pennsylvania  19103;

22   For the Defendants:

23       Harris Beach PLLC, by FREDERICK H. FERN, ESQ.,
     100 Wall Street, New York, New York  10005;

24
         Hinshaw & Culbertson LLP, by DANIEL E. TRANEN, ESQ.,
25   28 State Street, 24th Floor, Boston, Massachusetts
     02109;

1   <u>For the Defendants</u> (Continued):

2       Tucker & Ellis LLP, by MATTHEW P. MORIARTY, ESQ.,
    1150 Huntington Building, 925 Euclid Avenue, Cleveland,
3   Ohio  44115-1414;

4       Michaels, Ward & Rabinovitz LLP, by DAN RABINOVITZ,
    ESQ., One Beacon Street, Boston, Massachusetts  02108;
5
        Todd & Weld LLP, by HEIDI A. NADEL, ESQ.,
6   28 State Street, 31st Floor, Boston, Massachusetts
    02109;
7
        Curley & Curley, P.C., by LISABETH RYAN KUNDERT,
8   ATTORNEY, 27 School Street, Boston, Massachusetts
    02108;
9
        Lawson & Weitzen, LLP, by RYAN A. CIPORKIN, ESQ.,
10  88 Black Falcon Avenue, Boston, Massachusetts  02210;

11      Ulmer & Berne LLP, by JOSEPH P. THOMAS, ESQ.,
    600 Vine Street, Suite 2800, Cincinnati, OH 45202;
12
        Marks, O'Neill, O'Brien, Doherty & Kelly, P.C., by
13  MICHAEL T. HAMILTON, ESQ., 600 Baltimore Avenue, Suite
    305, Towson, Maryland 21204;
14
        Donovan & Hatem, LLP, by KENNETH B. WALTON, ESQ.,
15  Two Seaport Lane, Boston, Massachusetts  02210;

16  FOR PAUL D. MOORE, IN HIS CAPACITY AS CHAPTER 11 TRUSTEE
    OF NECP, INC.:
17
        Duane Morris LLP by MICHAEL R. GOTTFRIED,
18  ESQ. and JEFFREY D. STERNKLAR, ESQ., 100 High Street,
    Suite 2400, Boston, Massachusetts 02110-1724;
19
        Lewis, Brisbois, Bisgaard & Smith LLP,
20  KIP J. ADAMS, ESQ., 75 Arlington Street, Suite 500,
    Boston, Massachusetts  02116;

21

22

23

24

25

```
 1   VIA PHONE FOR THE PLAINTIFFS:

 2   Sharon L. Houston
     Mark Zamora (PSC)
 3   Scott Sexton
     Steven Resnick
 4   Mel Wright
     Mary T. Gidaro
 5   Doug Small
     George Nolan
 6   Will Riley

 7   VIA PHONE FOR THE DEFENDANTS:

 8   Jay Blumberg

 9   FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS:

10   David Molton

11   INTERESTED PARTY:

12   Andrew Eiferley

13

14

15

16

17

18

19

20

21

22

23

24

25
```

<u>PROCEEDINGS</u>

1

2          THE CLERK:  All rise.  Thank you.  Please be

3    seated.  Court is now in session in the matter of in re:

4    New England Compounding Pharmacy, Incorporated Products

5    Liability Litigation.  This is Case No. 13-md-02419.

6    Counsel for PSC, please identify yourselves for the

7    record.

8          MS. PARKER:  Good afternoon, your Honor,

9    Kristen Johnson Parker for the plaintiffs' steering

10   committee.

11         MR. STRANCH:  Good afternoon, your Honor,

12   Gerard Stranch for the plaintiffs' steering committee.

13         MR. CHALOS:  Mark Chalos on behalf of the

14   steering committee.

15         MR. ELLIS:  Rick Ellis for various

16   plaintiffs.

17         MR. FENNELL:  Patrick Fennell for

18   plaintiffs' steering committee.

19         MS. DOUGHERTY:  Kim Dougherty, plaintiffs'

20   steering committee.  Good afternoon, your Honor.

21         THE COURT:  Good afternoon.

22         MR. HUGO:  Mike Hugo, various plaintiffs.

23   Good afternoon, your Honor.

24         Ms. Fordon:  Rebecca Fordon, official

25   creditor's committee.

1          MS. TAYLOR:  Kiersten Taylor, official
2    creditors' committee.
3          MR. COREN:  Michael Coren, official
4    creditors' committee.
5          MR. STERNKLAR:  Good afternoon, your Honor,
6    Jeffrey Sternklar for the Chapter 11 trustee, Paul
7    Moore.
8          MR. GOTTFRIED:  Michael Gottfried for the
9    trustee, your Honor.

01:33PM  10          MS. KUNDERT:  Lisabeth Kundert for GDC
11    Properties.
12          MR. THOMAS:  Joe Thomas for GDC Properties.
13          MR. FERN:  Frederick Fern, liaison counsel
14    for NECC, Judge.
15          MR. TRANEN:  Daniel Tranen for NECC.
16          MR. RABINOVITZ:  Dan Rabinovitz for MSM.
17    Good afternoon, your Honor.
18          MR. NADEL:  Good afternoon, your Honor,
19    Heidi Nadel for Doug and Carla Conigliaro.

01:33PM  20          MR. MORIARTY:  Good afternoon, your Honor,
21    Matthew Moriarty for Ameridose.
22          THE COURT:  All right.  Good afternoon,
23    everyone.  This is a status conference in this case.
24    Again, I'll ask people to speak into the microphone and
25    keep your voice up because we have people participating

1     by telephone.

2            MR. EIFERLEY:  Your Honor, I don't know if

3     you can hear me.

4            THE COURT:  Yes.  Who is this?

5            MR. EIFERLEY:  Andrew Eiferley appearing on

6     behalf of Neuromuscular Rehabilitation Associates in

7     Northern Michigan.  We're not technically a party, but

8     we have a limited appearance for a subpoena that was

9     served upon our motion.  Again, my name is Andrew

01:34PM  10     Eiferley, E-i-f-e-r-l-e-y.

11            THE COURT:  Yes.  All right.  I have a list

12     of attorneys who are present on the phone.  I'm not

13     going to ask you to identify yourself.  I think only one

14     attorney indicated that he wanted to be heard, but I'll

15     give you an opportunity should the occasion arise.  But

16     let me hear first -- I guess who's going to take the

17     lead for the PSC?  I have the agenda in front of me,

18     and, again, I propose to go through it item by item.

19     Ms. Parker.

01:34PM  20            MS. PARKER:  Good afternoon, your Honor.

21     First item we have on the agenda is the status of the

22     PSC's discovery efforts.  I suggest that it makes sense

23     to address that item as well as Number 10 dealing with

24     the objections to subpoenas and Number 4, the conduct of

25     the discovery order at the same time.  It's a little bit

1    out of order, but it's all the same subject matter.

2              THE COURT:  All right.

3              MS. PARKER:  So in terms of the PSC's

4    discovery efforts, as this Court well knows, the PSC has

5    issued I believe it's over 80 subpoenas now to pain

6    clinics.  We have also issued additional subpoenas to

7    various entities in what we call the national

8    defendants' camp.  We have to date received production

9    from three of the national defendants in response to

01:35PM  10   those subpoenas.  That includes Liberty, UniFirst and

11   Scientific Air Analysis.

12              We've also received productions as of

13   yesterday from at least three pain clinics.  Those

14   materials are all in the process of being uploaded to

15   the single document repository that has been created in

16   this case.  We hope that that upload will be completed

17   today.  It may spill over into the first part of next

18   week.

19              That brings us into, I think, some questions

01:35PM  20   about how to access that repository.  Mr. Zamora for the

21   plaintiff's steering committee expected to be here today

22   discussing that with the Court, but the weather has

23   rerouted him to Philly.  I understand though that we

24   have a single-page protocol that will describe how

25   parties can get access to that document repository.  It

also requests some information from the defendants in

order to set up that access, of course, and that that

protocol is expected to be shared with the defendants on

Monday.

THE COURT:  All right.  My sympathies to

Mr. Zamora for being in Philadelphia today.

[Laughter]

MS. PARKER:  Then in terms of subpoenas,

your Honor, since we had our last status conference, the

Court has issued an order that addresses two of the

substantive objections to subpoenas.  That is both the

jurisdictional and the enforcement objection and also

the plaintiff information, I'm sorry, excuse me, the

patient protected information objection.

Your Honor has also referred the remaining

objections to Magistrate Boal.  The plaintiff's steering

committee sent Magistrate Judge Boal a letter earlier in

the week suggesting that we schedule a hearing or in the

alternative asking how the Judge would like to proceed.

We have not yet heard from the magistrate.

We realize we only sent that letter to her recently, but

I mention it to your Honor for purposes of informing you

that we are intending to proceed with Magistrate Boal on

that process.

THE COURT:  All right.  This may be out of

order, but there were some subsequently entered

objections and motions to quash that I'm going to refer

to Magistrate Judge Boal again pursuant to my order of

August 1st:  If I have an up-to-date agenda, that would

be docket entry 372; objection by Pain Associates of

Charleston, 378, which is a letter request from

Rochester Brain & Spine Neurosurgery and Pain

Management -- it's a letter to Judge Boal.  It's not

clear to me whether there's anything requested there or

01:37PM   not, but that will be referred -- and a motion to quash

filed by Universal Pain Management, Number 383; and a

letter request from Halley Stephens representing Pain

Consultants of West Florida, Number 384.  All of those

will be referred to the magistrate judge.

All right.  Anything else on that topic,

Ms. Parker?

MS. PARKER:  I note that Number 4 on our

agenda is the conduct of discovery order.  I don't think

there's anything particularly contentious about that

01:38PM   order, but I will let the Court know that the defendants

currently have a draft of that order from the

plaintiffs' steering committee.  We've gone back and

forth a few times already, and we're optimistic that

that will be done and addressed before the next status

conference.

```
 1              THE COURT:  All right.  Remind me, the
 2  conduct of discovery means what?
 3              MS. PARKER:  Perhaps Mr. Moriarty would like
 4  to address that.
 5              MR. MORIARTY:  Yes, your Honor.  We sent
 6  them --
 7              THE COURT:  Speak into the mic. again so
 8  everyone can hear you.
 9              MR. MORIARTY:  We sent them a conduct of
10  discovery order from another case that covers how
11  depositions are set up, where they are to take place,
12  things like national court reporting services, telephone
13  access to depositions, all the logistical things that
14  surround production of documents, depositions, things of
15  that nature, and they sent a different version back to
16  us.
17              We red-lined it and got some comments from
18  some other defendants, sent it back, and I told them
19  when I did that that there were some other defendants
20  that had not yet weighed in, so it's bouncing back and
21  forth, but I don't expect a lot of, as Ms. Parker refers
22  to it, contentious issues.
23              THE COURT:  Okay.  Thank you.  All right.
24  Ms. Parker.
25              MS. PARKER:  That's everything on discovery
```

01:38PM (line 10)

01:39PM (line 20)

```
 1    at the moment, your Honor.
 2              THE COURT:  All right.  Let's take up
 3    Number 2.  Does anyone want to comment on the discovery
 4    position, anyone want to weigh in here on any issues
 5    we've discussed so far?
 6              (No response)
 7              THE COURT:  All right.  Number 2, mediation
 8    order.  Ms. Parker.
 9              MS. PARKER:  Mr. Chalos will be addressing
10    that for the plaintiffs' steering committee.
11              MR. CHALOS:  Yes, your Honor, if it's okay
12    with the Court, I'd like to use the lectern.
13              THE COURT:  Yes.
14              MS. PARKER:  Actually, Mr. Chalos, I
15    apologize.  There is one other discovery matter, your
16    Honor, I'd be remiss for not mentioning, which is that
17    the plaintiffs' steering committee and the trustee for
18    New England Compounding Committee have been engaged in
19    some informal discovery.  I think that it's fair to say
20    that that process is moving along, but it is moving
21    along more slowly than I think any entity would have
22    hoped, but that is in the works, and I don't want to
23    shortchange the trustee by at least not acknowledging
24    that.
25              THE COURT:  Okay.  Mr. Chalos.
```

1            MR. CHALOS:  Your Honor, Mark Chalos on

2    behalf of the plaintiffs' steering committee.  The

3    plaintiffs' steering committee, the creditors' committee

4    and the trustee have met on the telephone and exchanged

5    enumerable e-mails seeking to get to an agreed mediation

6    order to present to the Court.

7            We are probably 80 or 85 percent of the way

8    there.  We reached a point where we all, I think,

9    concluded that we had some differences that we needed

01:41PM  10    the Court's intervention on, but I think importantly

11    what we do share, I think, are three goals:  One, we

12    want a program that is going to work or at least have

13    the most likelihood of being successful in presenting a

14    global or near global resolution of these claims; two,

15    we want a program that doesn't impair the rights of the

16    victims and doesn't impair the rights of the defendants;

17    and, three, we want a system or program that's efficient

18    and recognizes that we're dealing with a finite amount

19    of money, finite resources and a global desire to be

01:41PM  20    mindful of the efficiency of the process and to avoid

21    any waste or excess use of resources.

22            So I think there are three areas where we

23    have a disagreement, three that I think are I don't want

24    to suggest they're minor, but I think they're perhaps

25    less important, and then there's one area, I think,

1   that's particularly important, and I'd like to address

2   just the three less substantial issues first.

3          Number 1 is the issue of what will be the

4   obligations of participants in the mediation program

5   with respect to identifying other parties that may have

6   liability for the conduct at issue, and the difference I

7   think there, I mean, first of all, we agree with the

8   creditors' committee, with the trustee that some

9   participants should be called to identify other parties

01:42PM   10   that may have or other entities that may have liability.

11          And I remind your Honor that that's

12   something that your Honor's order back in I believe it

13   was June set forth and contemplated that this program

14   would require all the participants to identify

15   particular I think it's paragraph 80 that would identify

16   other potentially responsible entities.

17          So we agree that the creditors' committee,

18   the trustee and the plaintiffs' steering committee all

19   agree that at least some participants ought to be

01:43PM   20   required to make those identifications, and we're only

21   dealing with entities that are known to the participants

22   as having potential responsibility.  You know, what they

23   don't know, they don't know, and we're not imposing any

24   obligations beyond than tell us what you know at this

25   point.

1          The disagreement is the steering committee

2   believes that that should apply universally, it should

3   apply to all participants in all states, and it should

4   require that they have to make those identifications.

5          The creditors' committee and the trustee

6   believe that it should only be required in they've

7   identified three states.  I believe their basis is that

8   those are three states with a one-year statute of

9   limitations, it's Tennessee, Ohio and Nevada in their

01:44PM   10   analysis, and the second area I think of disagreement is

11   that the plaintiffs' steering committee believes that

12   these identifications should be binding on the

13   participants making them.

14          In other words, the obligation on the

15   participant is to identify all known other parties or

16   other entities that may bear fault for the injuries at

17   issue here, and if there exists other entities known to

18   the participants that may bear fault, the participant

19   can't come back later should the mediation program not

01:44PM   20   succeed entirely and identify those parties for purposes

21   of asserting comparative fault.

22          In other words, you know, "speak now or

23   forever hold your peace" with respect to known entities,

24   known to the participants that may bear some fault, so I

25   think those are the two areas of disagreement:  1,

1   whether it should apply universally to all participants

2   regardless of the states in which their conduct arose;

3   Number 2, the steering committee believes that it ought

4   to have teeth, it ought to be binding, they ought not to

5   be able take -- the defendants ought not to be able to

6   take advantage of the delay that the mediation program

7   would necessarily impose for purposes of obscuring other

8   entities that may bear some fault.

9            There's a practical I think effect of

01:45PM  10   requiring to "put up" or "shut up" essentially notion,

11   and that is it will bring potentially more parties into

12   the process or more entities into the process.  This is

13   not a -- it's not merely a theoretical concern.

14           We have an example in Tennessee where there

15   are some state court litigation that's since been

16   dismissed after your Honor's order on the "related to"

17   jurisdiction.  We're in the process of early discovery.

18   After two motions to compel, the plaintiffs there

19   learned about two entities, one person, one entity that

01:46PM  20   they had no idea existed, and it turns out that these

21   other entities were involved in the decision to purchase

22   drugs from NECC.

23           Now, they may have liability, they may have

24   insurance policies, they would have been entirely

25   unknown to the claimants had not that discovery taken

1    place.  Now, they were known to the clinic defendant

2    there, the clinic defendant had a contractual

3    arrangement with these other entities or some other

4    business arrangement, so it's not merely a theoretical

5    concern, it's a very practical concern, and the effect

6    would be necessarily to bring more parties to the table

7    that could conceivably contribute to local settlement.

8            And the burden that this -- and I know this

9    is a concern of the trustee and a concern of the

01:47PM    10    creditors' committee that, you know, the more barriers

11    to entry this mediation order presents, you know, the

12    fewer participants we'll ultimately see.  Should we file

13    tomorrow a lawsuit, the Federal Rules would impose on

14    the defendants the obligation within 20 days to make

15    their affirmative defenses, which would include a

16    contributory comparative negligence, comparative

17    fault-type other party.

18            So this requirement, while it may sound

19    onerous, really is nothing more than the rules would

01:47PM    20    impose anyway should we go file the lawsuit tomorrow.

21    Without this provision, without it having the teeth of

22    being mandatory and binding and non-expandable, the

23    claimants are in the position where they may just need

24    to file their case anyway, and I don't know that that's

25    the best use of everybody's resources to have another

couple hundred cases filed here for the purpose of

triggering the obligation to identify these other

parties that may have liability, that's issue Number 1.

Issue Number 2 relates to the subpoenas, and

the bigger context is the mediation order as proposed

requires certain categories of documents to be produced

as a precondition to participating in the mediation.  In

other words, for any entity that wants to participate,

they have to submit that they will produce a certain set

of categories of documents.

There may be some additional to that as well

in the discretion of the discovery master, and we've

through the compromised process and the negotiations

with the creditors' committee and the trustee, there's

been give and take, and we've arrived at a list that we

largely agree on.

That's one category that the plaintiff's

steering committee urges that this Court adopt as well,

and that is for recipients of subpoenas, and Ms. Parker

mentioned we had served I think 85 subpoenas or so,

there have been to date 35 or 40 objections.  For

recipients of those subpoenas who have not filed any

objection or have filed an objection and withdrawn the

objection, that they be obligated to respond to the

subpoena.

1              There are at least a dozen clinics who the

2    PSC is in ongoing negotiations with to respond to the

3    subpoena.  These other clinics have said, you know,

4    we'll respond in some form or fashion, and the question

5    is what does that look like, and that's the subject of

6    ongoing negotiations.

7              Two clinics have already produced their

8    documents, and it's the plaintiffs' steering committee's

9    position that for entities that receive these subpoenas

01:49PM  10   and, you know, receive them properly and have not

11   objected, and the time for returning the subpoenas has

12   come and gone on and the time for production has come

13   and gone, and if they haven't objected, then we presume

14   that they don't have an objection, they haven't spoken

15   up yet, and for those clinics, they ought to be required

16   to continue the process of responding to those

17   subpoenas, and they ought not to be relieved of the

18   obligation to respond to a duly-issued and duly-served

19   subpoena from this Court merely by the entry of this

01:50PM  20   mediation order, so that's issue Number 2.

21             Issue Number 3 is with respect to a

22   mediation committee which paragraph 12 of the proposed

23   order, the creditors' committee and trustee's version

24   includes yet another committee, a mediation committee

25   composed of five members of other committees.  It's the

1   plaintiffs' steering committee's position that there's

2   no need for another committee.

3            We, at the outset, the Court and the parties

4   have said, as one of their agreed values, that this

5   litigation would be conducted as efficiently as possible

6   without unnecessary bureaucracy.  We've got a PSC that's

7   limited in number.  We don't have the usual layers that

8   you may see in some other larger MDLs.  The PSC's

9   position is we don't need another committee.

01:51PM   10            Your Honor has already in MDL Order No. 2,

11   paragraph 9(d)(1) has set forth the responsibility for

12   conducting settlement.  It says the PSC's responsibility

13   is to negotiate a proposed settlement of cases on behalf

14   of the plaintiff or plaintiff group, including

15   exploring, and where appropriate, pursuing all

16   settlement options concerning any claim or portion

17   thereof.

18            Now, we've involved in all of our

19   discussions the creditors' committee, where appropriate,

01:51PM   20   the trustee, and we don't see the need for yet another

21   committee.  We've been able to, you know, with the PSC

22   discharging its Court-ordered obligations, we've been

23   able to make progress, and I don't see and the PSC sees

24   no reason to create yet another layer of bureaucracy

25   that will necessarily cause more delay, more waste of

1    resources.  Your Honor has already dealt with this issue

2    back in April of this year.

3                So those are the three issues that -- three

4    areas of disagreement, and there's one I think very

5    significant area of disagreement that may be a little

6    bit more difficult to resolve or maybe not.  That's the

7    question of which court has oversight over the mediation

8    process as a whole.

9                It's the plaintiffs' steering committee's

01:52PM  10    position that this Court ought to have oversight over

11    any type of global mediation program involving tort,

12    personal injury claims and wrongful death claims.

13                It's the position of the steering committee

14    that when the judicial panel for multi-district

15    litigation centralized this litigation here, it was in

16    the panel's contemplation, in fact, it's in the panel's

17    order, that one of the charges for this Court would be

18    to oversee a global resolution or at least oversee the

19    possibility of a global resolution.

01:53PM  20                It's a fundamental principle of MDLs that

21    the transferer court is in a unique position to oversee

22    a global resolution.  It happens in most MDLs as it

23    ought to, and it's the type of this issue that this

24    Court is uniquely positioned to oversee.

25                Your Honor's case management orders, I

1    think, have contemplated that.  The initial -- the

2    June 28th, 2013 case management order, which is the

3    order that established the mediation program in the

4    first instance, I think it's important that that's the

5    genesis of the mediation program.  It came from your

6    Honor's order in this court, so that's an important, I

7    think, principle to recognize, you know, what the

8    origins of this program are, Number 1.

9            Number 2, Judge Boroff in his recent hearing

01:54PM    10    recognized that to this Court should go this Court's

11    obligations, and those are to oversee the ultimate

12    resolution of the tort and the wrongful death claims,

13    and we've cited this in our brief.  It comes from the

14    hearing transcript that we've also attached to our

15    filing, and the bankruptcy court has its obligations

16    with respect to the bankruptcy estate and the claims

17    against the bankruptcy estate.

18            The bankruptcy court, both from a

19    constitutional standpoint and the statutory standpoint

01:55PM    20    doesn't have the authority to ultimately resolve the

21    wrongful death and personal injury tort cases.  Those

22    are for this Court.  In this court already, the Court

23    appointed leadership.  The PSC has undertaken

24    significant discovery.  You've heard about the 85

25    subpoenas.  Mr. Ellis, at the direction of lead counsel,

1    has -- at the request of lead counsel, has undertaken a

2    substantial discovery effort with respect to ARL, and

3    there have been others, other substantial discovery

4    efforts.

5            Ultimately, it will be for the magistrate

6    judge here to resolve the objections to the subpoenas

7    that are outstanding, and the magistrate judge is

8    perfectly capable of doing that, and it would make no

9    sense ultimately, I think, or at least it would be

01:55PM  10   duplicative to then delegate a very substantial portion

11   of the overall effort toward global resolution to

12   another court when it's already happening here.  We've

13   already made quite a bit of progress in discovery, and I

14   expect that to continue.

15           Now, what does it mean for this Court to

16   have oversight?  I think there are primarily two issues

17   over which this Court would have oversight and where we

18   think those powers may be necessary:

19           First, with respect to discovery.  There's a

01:56PM  20   notion that the mediator, the private mediator, paid by

21   the hour or paid by the day would resolve all the

22   discovery disputes in connection with the mediation, and

23   everybody agrees there's going to need to be discovery

24   in the mediation process, we just don't know enough

25   about the claims and the liability of these various

1        potential defendants to know how much they ought to pay.

2                So the question then is what happens when

3        there's a dispute about what information they ought to

4        be producing?  One solution would be to have this

5        privately-paid mediator to do it.

6                Another solution, and the PSC submits the

7        better solution is for the magistrate court to oversee

8        that process.  In order to do that, we think the

9        ultimate oversight has to be in this court so your Honor

01:57PM  10       could make the referral to the magistrate court for

11       resolving any discovery disputes that bubble up to that

12       level and can't be resolved otherwise.  That's something

13       the magistrate court is already doing.

14               The discovery disputes to the extent they've

15       come to your Honor's attention have been largely as a

16       result of the PSC's, entirely as a result of the PSC's

17       efforts to obtain discovery, and the second issue, and

18       this will hopefully be less of an issue, but it may

19       nevertheless be an issue is for your Honor to, or

01:57PM  20       whichever Court oversees it, to decide which entities

21       are no longer permitted to participate in the process,

22       and the order, and I believe this is agreed upon, the

23       order sets forth the process by which your Honor can

24       tell, or whichever Court is overseeing, can tell a

25       defendant that's no longer participating in good faith

1   that you're out of the program, you no longer enjoy the

2   protections that this program offered to you, and you're

3   going to be in litigation.  Of course, that litigation

4   would occur in this court regardless.

5            So the oversight, I think, means primarily

6   two things:  One, over discovery disputes in the

7   mediation; Number 2, over the continued participation of

8   an uncooperative defendant.

9            Given this Court's constitutional and

01:58PM   10   statutory powers, given the charge of the judicial

11   panel, given the Court's orders to date, it's the PSC's

12   position that the oversight for the mediation program

13   ought to occur here given that it's ultimately going to

14   be the resolution of the tort and wrongful death claims.

15            So that's all I have, your Honor, for now.

16            THE COURT:  All right.  Thank you.  Who

17   wants to take the lead for the trustee/creditors'

18   committee?

19            MS. PARKER:  If I may, your Honor?

01:59PM   20            THE COURT:  Yes, Ms. Parker.

21            MS. PARKER:  Thank you.  I just want to take

22   a minute to acknowledge where we are with the mediation

23   order and where we agree, so the plaintiffs' steering

24   committee, the creditors' committee and the trustee all

25   want an order entered that addresses a mediation

1   framework.  We all, we hope that there are "jets on the

2   tarmac," to borrow Mr. Sobol's expression from earlier

3   today, lined up and waiting for this order.

4           THE COURT:  Not in Philadelphia?

5           MS. PARKER:  Hopefully not in Philly,

6   probably not in Boston.  We also all want mediation

7   framework that works best, and in large part everyone

8   has agreed on what that framework is.  Mr. Chalos has

9   taken you through the areas of disagreement, and I won't

01:59PM  10  repeat that, but I will identify for the Court the two

11  concerns that I think undergird Mr. Chalos' remarks.

12          The first is that the PSC doesn't want the

13  mediation order to inevitably impair the rights of tort

14  victims or wrongful death victims.  We wouldn't want a

15  situation where an entity participating in mediation

16  does not identify entities, other entities that may have

17  comparative fault here upfront, and the PSC finds out

18  about it only after the fact in a situation where

19  potentially victims' rights have been foreclosed either

02:00PM  20  by a short statute of limitation or for some other

21  reason.

22          As Mr. Chalos said, it seems to me that the

23  alternative, if information about comparative fault is

24  not provided up front, would be for plaintiffs' lawyers

25  to run to state courts and file nonremoval cases in

1   state courts solely against the particular defendant

2   you're trying to get this information from, for the only

3   purpose of having that defendant answer those particular

4   questions, at which point, as a practical matter, you've

5   lost the efficiency of the MDL, and it seems

6   counterintuitive.

7          PSC's second concern is really one of

8   efficient and nonduplicative process from a resource

9   perspective, so this MDL court is charged with

02:01PM 10  overseeing the litigation of tort victims' claims.

11  There's no dispute about that.  This Court is also

12  charged with liquidating those claims.  There's no

13  dispute about that either, so what does that mean?  That

14  means that this Court is concerned with the strengths

15  and merits of tort claims, with the value of tort

16  claims, with the level at which those claims may

17  ultimately be compromised, and also the discovery needed

18  to assess the value of those claims.

19          Judge Boal is already presiding over

02:01PM 20  discovery disputes relating to these issues.  Judge Boal

21  will decide what pain clinics, for example, have to

22  produce in response to the PSC's subpoenas, and she'll

23  decide that on an individual basis, but she certainly

24  will develop familiarity with the issues, and one would

25  anticipate, issue rulings that would be effective and

1    cross-cutting.

2              As Mr. Chalos pointed out, the bankruptcy

3    court cannot, as a matter of jurisdiction, refer

4    discovery disputes to Judge Boal, and so the question

5    becomes does it make sense to have two separate entities

6    dealing with discovery disputes that are relevant to the

7    valuation and liquidation of tort claimants' claims, or

8    is there an efficiency that can be gained by using the

9    knowledge that Judge Boal will be developing in handling

02:02PM   10    these discovery disputes?

11              THE COURT:  All right.  I want to add, I

12    also don't want to inadvertently or advertently impair

13    the rights of defendants or non-affiliated parties.

14    Mr. Gottfried, I think you wanted to take the torch?

15              MR. GOTTFRIED:  Yes, your Honor, if I may.

16    First of all, I want to say that the trustees' only goal

17    with respect to this order is to bring as many

18    unaffiliated defendants and nonparties to the table for

19    a mediation, and that's been the governing principle of

02:03PM   20    his effort in meeting and conferring not only with the

21    PSC and the creditors' committee but also reaching out

22    to unaffiliated defendants to get their views with

23    respect to this process because ultimately they're the

24    ones who have to buy in for it to be successful.

25              And at the beginning of the PSC's

presentation, they said these were negotiations among

the PSC, the trustee and creditors' committee, and

that's accurate, and that's also where our comments

really come from.

There was a missing party to those

discussions, so, as a result, the final proposals that

the Court sees, for example, left open for unaffiliated

defendants and nonparty input, things like whether the

mediator will be the discovery master, or whether it

02:04PM will be the bankruptcy court, or whether it will be

Magistrate Boal, and the order you have, and all sides

at least agree to, at least the mediator or some

judicial officer left that as an open issue because we

needed to get input from the people who would be

participating as to their views on that, and so that was

an input that the trustee gave.

Originally we were presented with the choice

of a mediator, and, again, our input was that's great,

but we really have another leg of this stool that we

02:04PM need to talk to and get their input on, and, again, that

process was changed to leave that open, to have a

process to get input from unaffiliated defendants.

So that's the spirit that we approach this

order, so taking the items in order, if that's easier

for the Court that Mr. Chalos raised them in, I'd start

```
 1    first with the comparative fault issue.  As Mr. Chalos
 2    correctly said, our concern is that that's a barrier to
 3    entry for defendants and nonparties to participate, and
 4    we were particularly concerned about the clause which
 5    said that if you don't name these people, it's a
 6    "forever hold your peace" requirement.
 7              And our initial position in that discussion
 8    was we don't think that should be in there.  Nothing, by
 9    the way, that we're talking about precludes any party
10    from getting this discovery in the mediation process
11    where there's a mutuality of discovery.
12              I mean, one of the things that we keep
13    hearing from defendants is this is completely one-
14    sided, where are we getting our discovery, and so our
15    process has been to defer that to the mediation and let
16    there be a discussion with the mediators to what people
17    really need to facilitate a settlement.  That's sort of
18    been our input on this.
19              So, as to this one, no, it shouldn't be in,
20    but we listened to what the PSC and the creditors'
21    committee said, and they said, well, this is really an
22    issue with respect to these three states with a one-year
23    statute of limitations.  So, our view was let's have a
24    compromise.  That seems like a legitimate reason,
25    appropriate, maybe that can't be deferred to the
```

1    mediation process, and that's the genesis of our

2    approach is to require with respect to the three states

3    where it seems necessary not to make it a barrier to

4    entry as to other states and to leave out the implorem

5    effect of if you don't raise it, "forever hold your

6    peace" because we're afraid that's a barrier to entry.

7              With respect to the subpoena issue, these

8    are parties who didn't object and otherwise would

9    produce.  Even in the original CMO-6, your Honor, one of

02:06PM   10   the initial carrots for people to participate in

11   mediation was if you participate, then the discovery

12   stops, and so our view is that that should be the case,

13   that a carrot to get nonparties and unaffiliated

14   defendants to participate is that discovery stops.  That

15   doesn't mean in the context of mediation that more

16   limited, more focus, more targeted discovery that's

17   really necessary to facilitate a mediation doesn't

18   occur.

19             In fact, the order expressly contemplates

02:06PM   20   that, but we are concerned that it's a barrier to entry

21   to say even if you participate, if you haven't objected,

22   you're still producing all of these documents.  Our view

23   is it should be a carrot that if you do participate,

24   that stops, and so that's the genesis of that

25   disagreement.

1                Again, that comes from the trustee reaching

2       out and talking to unaffiliated defendants and talking

3       to nonparties and trying to get their input prior to

4       this process and be sensitive to that.

5                The next issue my Brother raised was this

6       mediation committee.  I think the first thing I'd like

7       to say about that, your Honor, is the mediation

8       committee is really in the scheme of things very

9       insignificant.  It's a committee that was formed to deal

02:07PM  10      literally with scheduling and location and really has no

11      other meaningful function.

12               The genesis, as I've been saying, that the

13      trustee said, you know what, we don't want someone to

14      dictate to folks who are trying to get to participate

15      who are nonaffiliated or nonparties where this is going

16      to be or when it's going to occur.  Let's create a

17      mechanism to have a discussion to see if we can get to

18      agreement on that, and failing that, an opportunity for

19      that to be resolved.

02:08PM  20               So, again, I think there really is not much

21      to that issue.  I think there's probably some

22      compromised language.  That committee has a very narrow

23      and limited focus, if you read paragraph 12 of the

24      order.  I think our proposal again makes sense in terms

25      of giving people input into the very, I think,

straightforward issues of location and timing.

The last issue is the jurisdiction issue with respect to who's overseeing this, and the things that that would involve, your Honor, are ultimately the selection of the mediator, perhaps the discovery disputes, so that's deferred and the like, and there I don't know whether the Court has an opportunity to look at the transcript that the PSC provided to the Court, but pages 105 through 107 of the transcript lay out at least what Judge Boroff believed to be the delineation and the responsibility of the bankruptcy court with respect to this, including that it's his job to get everyone around the table that should be around the table and that his job is to marshal the assets, et cetera.

And I command that the Court's view, obviously this Court has the ability at any time to withdraw the reference and sit as the bankruptcy court if it chooses, but as Boroff Judge said, at this point that's not happened.  He believes this is his role.  I think the trustee believes that he has properly stated his role as it exists today absent the withdrawal of the reference and believes that the best mechanism and the appropriate mechanism for delineation of the various duties and responsibilities here is for the bankruptcy

 1    court to oversee this process.

 2            Again, I do want to note that both parties

 3    agree and both orders suggest that this is supposedly to

 4    be largely a self-effectuating process, and the hope is

 5    that there will be little or no court involvement, but

 6    there are a couple of key things that the Court will be

 7    doing including ultimately confirming a selection of the

 8    mediator, hopefully something that the parties have

 9    agreed to, and for the reasons I would say that

02:10PM   10    Judge Boroff has laid out in pages 105 to 107 of the

 11    transcript, you know, we think that the right answer

 12    here is what we have proposed to this Court.

 13            THE COURT:  All right.  Yes.

 14            MR. COREN:  Good afternoon, your Honor.  I'm

 15    Michael Coren.  I'm co-chair of the official creditors'

 16    committee, and being one of the people who worked on

 17    framing this document, I wanted to take a step back and

 18    explain not in detail, but I want to go over the

 19    over-arcing structure what this was.

02:10PM   20            Your Honor, what we tried to do here is

 21    freeze time.  It's an armistice, okay.  There's a choice

 22    to be made, you can litigate, or you can try to resolve

 23    your differences, and to do that, because of the

 24    complexity of involving a core nucleus group of

 25    defendants that expands to 80 clinics, 12 or so

1    national, how do we organize this, okay, and so that we

2    can get this done within the context and time frame that

3    bankruptcy proceedings move to take advantage of the

4    various expertises of the court as outlined by

5    Judge Boroff when he explained the differences in labor

6    that the bankruptcy court has, which is to marshal the

7    assets, gather the people around the table, he said, get

8    the people here to talk.

9              Well, to do that, your Honor, where you have

02:11PM    10    the clock moving under statute of limitations and

11    various other requirements requires steps and measures

12    for those who will agree to mediate to freeze time.

13    When you freeze time, however, you have to protect the

14    rights, so when we look at this, why did we choose to

15    focus on the one year's statute states, because that

16    statute is imminent.

17              We have the pleasure of time with the

18    two-year and three-year and six-year statute states, so

19    to the extent we have comparative fault and provisions,

02:12PM    20    for example, in Florida or in Colorado, we don't have to

21    worry about that because we've got much longer statutes

22    of limitations there, so we're not under that pressure.

23              Once again, this is an armistice that people

24    can, if they want to mediate, but there are certain

25    conditions to mediate.  Taking into account, we looked

at Rule 26 and self-executing disclosures, we looked at

the various things that we thought people would need but

left a lot to the discretion of the mediator to start to

get the parties together, which then takes us to -- so I

believe I covered why did we choose one year, you know,

on there as to finishing the subpoenas.

         If someone wants to voluntarily complete

that, that's fine, but as it said, one of the carrots

and a big carrot is they get a stay of discovery so that

they get better mediation where it will be, we believe,

a much more focused, you'll get what you need to do

this.  There's a big difference in what you need to

mediate and make a decision to settle versus what you

need to try a case, and that, you know, to the extent

you don't need to mediate to come to an intelligent

decision.

         That's, you know, we don't need to do that,

and that's where we hope they'll be some guidance.  The

situs -- oh, the mediation committee.  As counsel has

just explained to your Honor, that is an administrative

committee.  That is one so that whoever is chosen as the

mediator by the parties doesn't have to have 86 people

to try to contact to set up things, to get the

administration, to get the payment structure done.

         So, therefore, we took one from each of the

1    major camps, put them into a committee so that the

2    mediator could just get ahold of those people to resolve

3    those administrative issues.  It's a difference, a world

4    of difference from that committee versus who is on the

5    mediation team negotiating a settlement.  That is for

6    another day for the mediator.

7              And, finally coming to the issue of the

8    situs, this to us we see as a core bankruptcy matter.

9    The marshalling of assets and the resolution of the

02:14PM  10  claims and the release is a bankruptcy creature.

11   Because of those, we thought it made most sense that

12   this be sitused as to those issues with the bankruptcy

13   court.

14             So unless, your Honor -- those are my

15   remarks.  If you have any questions regarding the

16   structure of that, I'm more than happy to answer them.

17             THE COURT:  I want to hear if Ms. Parker or

18   Mr. Chalos has a response, but, first, is this matter

19   ripe for resolution?  I mean, it's not clear to me

02:15PM  20  whether there's an adversarial party or who it is.  In

21   other words, do I have everything in front of me

22   necessary to make the decision?  Do I need to allow time

23   for someone to object?  How should I proceed

24   procedurally?

25             MR. COREN:  Well, 1, it is ripe, your Honor,

        because we're approaching the time where, first of all,
        the anniversary of the one year is coming up some time
        in September.  Second, we need to get the process in
        operation.

                THE COURT:  I understand all that --

                MR. COREN:  That's the adversarial.

                THE COURT:  -- but normally there's a
        motion, there's 14 days to oppose, and, you know, I hear
        from the other side.  I'm not sure who the other side is
        here or whether I need to allow somehow leave to
        intervene to be heard.  I guess that's my question.

                MR. COREN:  The concept of it, and I'm
        addressing that issue on the ripeness, your Honor, is
        that the whole concept is that there is a time on
        paragraph 1, a set of time dates that it goes out.  30
        days people will say whether they want to be in this
        program or not be in this program by we call it opting
        in.  That occurs 30 days from the date of your order.

                THE COURT:  I understand that.  That's a
        different issue, it's just the entry of the order
        itself.  I'm sorry, I'm sorry, Mr. Gottfried did you
        want to respond or Mr. Sternklar?

                MR. GOTTFRIED:  I'm happy to respond, your
        Honor.

                THE COURT:  Yes.

1            MR. GOTTFRIED:  I think the filing of these

2    proposed orders was a creature of CMO-6.

3            THE COURT:  Right.

4            MR. GOTTFRIED:  And, you know, indeed, we

5    had asked for a brief extension from this Court to file

6    the proposed orders --

7            THE COURT:  Right.

8            MR. GOTTFRIED:  -- so I think there has been

9    notice and opportunity to comment by anyone who is

02:16PM   10    inclined to do so in the context of the original CMO-6,

11    and this is really a proposed order that these three

12    groups have negotiated and put together ultimately for

13    the Court's, you know, decision on, so I think

14    procedurally it is certainly ripe for you to consider

15    and review this and enter it because I think it's a

16    creature of CMO-6.

17            THE COURT:  I'm not going to delay the

18    decision for its own sake, but, again, to make sure

19    everyone who needs to have an opportunity to be heard

02:17PM   20    can be heard.  Ms. Parker.

21            MS. PARKER:  Thank you, your Honor.  I am

22    aware of no entity that is waiting to weigh in here,

23    your Honor.  I will also note that this is an

24    opportunity for resolving claims that the PSC,

25    creditors' committee and trustee is presenting to

1   defendants.  It is by no means the only opportunity for

2   resolving claims, and I think, to put it bluntly,

3   defendants can either opt in or opt out.

4           Certainly if defendants opt in to mediation,

5   there will be play with the mediator in terms of what is

6   appropriate for that defendant, but this is a guideline

7   and a framework that is being presented as an

8   opportunity.

9           THE COURT:  All right.  That latter point is

10  important to me.  I mean, I have not forgotten, I hope,

11  what it's like to be a lawyer, and I sometimes had

12  clients where we were ordered into mediation, and it was

13  not really distinguishable from paying a criminal fine.

14  I mean, it was not really very voluntary, and I think

15  it's important that it be voluntary.  Yes, I'm sorry,

16  you're Ms. Taylor?

17          Ms. Fordon:  Rebecca Fordon, counsel for the

18  creditors' committee.

19          THE COURT:  Ms. Fordon, I'm sorry.

20          Ms. Fordon:  I just wanted to make one point

21  in response to your question and a couple additional

22  things.  Mr. Gottfried mentioned this.  We did attempt

23  to reach many defendants and get their input, and, in

24  fact, we've incorporated quite a bit of their input into

25  this order, and as Ms. Parker says, it's just an option

1    for them if they'd like to resolve their claims, and I

2    just want to emphasize that this process, the creditors'

3    committee sees, at least, and I think we're in agreement

4    with the trustee and the PSC that this is all in aid of

5    negotiation of what we hope will be a Chapter 11

6    resolution that gets recoveries into victims' pockets

7    but occurs through the bankruptcy process, and you heard

8    the comments from Judge Boroff, which the committee also

9    agrees with, that his role, Judge Boroff's role is

02:19PM   10    really to marshal the assets and get people to the

11    table, which is exactly what this mediation will do.

12            And as far as what's involved in

13    administering this program, when we're talking about

14    whether this should be in the bankruptcy court or this

15    court, and I think Mr. Chalos gave two pretty big

16    buckets of that.

17            One is discovery, which we think there needs

18    to be more discussion on, frankly.  That includes the

19    defendants so that they can help decide how discovery

02:20PM   20    disputes will be resolved, and it's pretty -- the

21    discovery that's happening we don't view as just plenary

22    discovery because that will cease.

23            The discovery in the MDL, part of the

24    proposed order is that that will discontinue for any

25    participant who wants to be this program, so that's not

1    the discovery we're talking about.  What we're talking

2    about is discovery in aid of the mediation, and we think

3    the mediator is in the best position to decide what that

4    discovery should be.

5            He or she will be the one involved in

6    day-to-day discussions with participants, and we think

7    that mediator should at least be in charge of that part,

8    and then the other big bucket is what happens if people

9    aren't cooperating, how do you get people out of

02:21PM  10   mediation, and, again, it's primarily the mediator who

11   would be involved in that and only if there's a dispute

12   would it go to the court, and we do think the bankruptcy

13   court is most appropriate for that.

14           One of the requirements for participating in

15   mediation that we all agree on is that a participant

16   file a proof of claim in the bankruptcy court, and that

17   brings everyone within the auspicious of the bankruptcy

18   court.  There's some people we hope to involve that

19   aren't currently in the MDL, and this is one way to

02:21PM  20   bring them in the process.

21           Then there's a few other things that I just

22   want to run through just so your Honor is aware of what

23   we're asking as, you know, as the scope of supervising

24   mediation.  There's proposals for a fee sharing

25   structure and for the identity of a mediator.  If people

can't agree, we'll go to we suggest the bankruptcy
court.  Then I mentioned discovery, and I mentioned
termination of mediation, also to resolve disputes as to
schedule, location and time of mediation sessions, and
then to modify the terms of the mediation program, if
necessary, to facilitate mediation.

So just as far as process, what we're asking
your Honor to do is enter this order and give the
bankruptcy court supervision over the mediation, and
then the next step would be for us to go to the
bankruptcy court and get approval before Judge Boroff,
and if he thought there were, you know, revisions that
were necessary to facilitate mediation, then we could
address it with him.

THE COURT:  All right.  Thank you,
Ms. Fordon.  I will take the matter under advisement.
Next up, Ms. Parker, we're on Number 3, scheduling
issues.

MS. PARKER:  Yes, your Honor.

[Pause]

THE COURT:  If you're not sure what that
means, we can skip to Number 5.

MS. PARKER:  No, sadly, no.  As your Honor
knows, and I believe everyone in the courtroom knows, as
well as everyone on the phone, the prevailing case

1      management order, which is CMO-6, sets forth a schedule

2      for all major discovery and litigation activities in

3      this case.

4             It is the plaintiffs' steering committee's

5      position that that schedule needs to be radically

6      overhauled in light of the lack of progress in this

7      case.  So what do I mean by that?  The plaintiffs'

8      steering committee was informed some time ago that the

9      trustee was undertaking settlement discussions with

02:24PM  10      NECC-affiliated entities and that it was hopeful that

11      those settlement discussions would be fruitful.

12             Because the PSC understood that the trustee

13      was taking on that task, the PSC agreed to stay

14      discovery against the affiliated defendants, so I'm

15      setting NECC aside, your Honor, when I say that.  I'm

16      talking about the defendants who are affiliated with

17      NECC but not NECC.  That agreement was reached some six

18      months ago.

19             We understand that the trustee is continuing

02:25PM  20      to work through those settlement processes, and we don't

21      mean to suggest that the trustee has been shirking his

22      responsibilities there certainly, however, six months

23      later there has been no material change in settlement

24      status.  There has been no proposal that has been

25      presented to the PSC, and in light of that, we believe

that we will now need to take discovery of the

affiliated defendants and that their active

participation in a litigation mode fundamentally shifts

the schedule that we had previously set out for this

Court.

Now, we have shared with the defendants that

the PSC has that opinion.  We have not, however,

presented to the defendants a schedule that the PSC

thinks would be reasonable and appropriate for moving

forward.  We intend to do that and meet and confer with

the defendant before the next status conference so that

this will be teed up and ripe for your Honor to discuss

or decide at the next status conference.

I will say though as an interim step because

we do have some deadlines coming up that it is the PSC's

position that the dates that will occur this fall will

need to be pushed out at least two to three months, so,

in particular, the date for filing a master complaint

and short form complaints as well as the discovery

deadlines.

I mention that not to try and negotiate

today dates by which those should be adjusted to but

rather so that perhaps we can put a mechanism in place

whereby everyone understands that this is what the PSC

is contemplating and that we will have that schedule

1    teed up for the Court before the next status conference.

2             THE COURT:  My preference is to, and I

3    express no opinion on the matter, but to have you

4    discuss it, try to reach agreement, if you can, if you

5    can't, tee it up in a motion in opposition, and I can

6    resolve it hopefully at the next status conference.

7             I would -- I do want the case to move with

8    all deliberate speed, and short extensions are easier to

9    grant than long extensions.  Without prearguing the

02:27PM  10   case, Mr. Gottfried, does anyone want to respond to

11   this?

12            MR. GOTTFRIED:  Thank you, your Honor.  I

13   think the point that I want to make is, one, yesterday

14   Mr. Moore met -- the trustee -- met with representatives

15   of the affiliated defendants.  He provided a written

16   report of how progress was going to Mr. Sobol of the PSC

17   at the end of the day yesterday.  He reported that he

18   thought that progress was continuing to be made and that

19   he had further meetings scheduled for next week, and so

02:28PM  20   I think any suggestion that this process has not been

21   going forward in good faith would be not consistent with

22   the trustee's view.

23            The trustee's view is that the parties are

24   working diligently to see if a resolution can be

25   achieved, that progress is being made and that he's been

1    reporting that progress, as appropriate, to the PSC

2    consistent with your order, so I guess from our

3    perspective, the trustee's perspective, I think that

4    preamble to the discussion of the deadlines is something

5    that we would not agree with.

6             In terms of extending deadlines in a

7    practical sense, certainly we do agree to that and think

8    that your suggestion, your Honor, with respect to that

9    is appropriate, including your admonition that the

02:28PM  10  extension should be short.

11            THE COURT:  And deadlines do have a way of

12   focusing everyone's attention and bringing matters to

13   closure that otherwise wouldn't come to closure.

14            MR. GOTTFRIED:  Absolutely, your Honor.

15            THE COURT:  Let's put that on pause, and

16   we'll take it up at the next status conference.

17            MS. PARKER:  If I may, your Honor, I'd just

18   like to be very clear that the plaintiffs' steering

19   committee's position with respect to the affiliated

02:29PM  20  defendants is that an affiliated defendant is either in

21   settlement mode or a litigation mode, and if we're in

22   litigation mode, there's a lot of work to be done.

23   Thank you.

24            THE COURT:  All right.  Number 5, sharing of

25   documents.

1          MR. FERN:  Your Honor, Frederick Fern.  This

2     is an item I placed on the agenda.  Just yesterday

3     afternoon I received an e-mail from Mark Zamora on

4     behalf of the PSC advising what Ms. Parker had just told

5     the Court about that there were documents received from

6     various national defendants, that they would be put into

7     the repository at U.S. Legal and that he would be

8     providing us some type of mechanism to gain access to

9     that.  That has not yet occurred, but that occurred

02:29PM  10     after this item appeared on the agenda, so I think let

11     the process prevail, and hopefully it will resolve

12     itself, and it won't have to be discussed at the next

13     conference in September.

14          THE COURT:  All right.  Anything more on

15     that topic?

16          MS. PARKER:  No, your Honor.

17          MR. FERN:  Your Honor, Number 6 again is

18     also my -- an item that I asked to be put on the agenda.

19     It may be a nonissue based upon an e-mail that I

02:30PM  20     received from Ms. Parker about an hour before appearing

21     here in court, but let me advise the Court of what the

22     issue is.  Under the initial stipulated protective order

23     that your Honor entered in this case, the names of

24     patients were protected.  In reviewing documents that we

25     are -- in reviewing for privilege purposes to produce to

1    the PSC as part of the informal discovery that the

2    trustee negotiated on behalf of NECC, we have found

3    multiple documents that have information other than just

4    patient names, for instance, diagnosis, dates of

5    treatment, drugs being prescribed, the treatment to be

6    rendered.

7          Those -- that information can be redacted,

8    Judge, but at a tremendous effort and cost.  This

9    applies to only paragraph 2A of the protective order.

02:31PM   10    We had asked Ms. Parker on behalf of the PSC if there

11    would be any problem with us producing these documents

12    which would then expedite their production without

13    producing -- with producing this healthcare information.

14          We had provided --

15          THE COURT:  HIPAA information, not

16    privileged, right, in other words, if you have it, it's

17    not privileged?

18          MR. FERN:  Well, we have it on behalf of

19    NECC, and they were the provider on behalf of the

02:31PM   20    patient, so it would be a prescription coming from a

21    pain clinic, coming from NECC with a patient name saying

22    we want to do an epidural injection of

23    methylprednisolone on this date.

24          THE COURT:  Again, if I'm seeing this

25    clearly, that's not an issue of physician-patient

```
 1    privilege, you're not a physician, it's a HIPAA

 2    confidentiality-type issue?

 3               MR. FERN:  Well, NECC as a pharmacy would be

 4    under the same type of privilege as a physician would

 5    be.

 6               THE COURT:  The reason the I'm raising it is

 7    it's not clear to me that anyone other than the patient

 8    can waive the privilege if it is privileged.  In any

 9    event, go on.

10    MR. FERN:  Well, that was what your Honor's

11    qualified protective order intended to accomplish --

12               THE COURT:  I may not be thinking it through

13    carefully.

14               MR. FERN:  -- in way of the subpoenas.  So

15    we have some language that we had proposed that the PSC

16    has now approved regarding producing healthcare

17    information.  Now that I have the PSC's approval, your

18    Honor, we can submit that to you via motion or submit

19    the amended protective order to you on Monday for the

20    Court's consideration and approval.

21               THE COURT:  All right.  Does anyone want to

22    respond to that?

23               MS. PARKER:  Mr. Fern has accurately

24    reported that the PSC has no objection to the amendment

25    to the protective order.
```

THE COURT:  I'm indifferent as to whether it
comes to me as a proposed order or motion, whatever is
easier from your perspective.

MR. FERN:  You'll have that early next week,
Judge.

THE COURT:  Just so you all know, I am going
to be in Washington for most of next week, and then I
disappear on vacation, so early is better than later.  I
can access things remotely from Washington, but my
willingness to do so on vacation is more limited.

All right.  Number 7, liaison counsel for
unaffiliated defendants.

MR. FERN:  Your Honor, this was a -- though
it's not my topic, I'll be glad to speak on it.

THE COURT:  All right.

MR. FERN:  You had at the last case
management conference, you had directed that any
unaffiliated defendant who wanted to step up and serve
as liaison submit a proposal to you.  As I had predicted
to others, that did not happen.

The Court is now left in a quandary as to
whether you select somebody, and since everyone took one
step backwards, and we have no volunteers, I really have
no suggestion how the Court would do that or do we
proceed at this point without a liaison for the

1  unaffiliated defendants, or do we simply wait until we

2  get to the mediation process when that liaison counsel

3  may become apparent based upon various items depending

4  on their experience in a Mass. tort mediation process,

5  perhaps the extent of the insurance coverage available

6  to them, perhaps the extent of the number of cases that

7  individual has in the process and just pro facto, that

8  person becomes the lead on behalf of the unaffiliated

9  defendant?

02:35PM  10          THE COURT:  I'm no further along than I was

11  a month ago, which is it certainly sounds like a good

12  idea from a practical standpoint.  It's not clear to me

13  what authority I have, what the mechanism is.  There's

14  no procedure for an election.  Whoever I would select

15  would have higher level bills in terms of the client.

16  I'm just very unsure of myself here.

17          MR. BLUMBERG:  Your Honor, are we allowed to

18  speak from the phone?

19          THE COURT:  Who is this?

02:35PM  20          MR. BLUMBERG:  This is Jay Blumberg on

21  behalf of the Premier defendants in New Jersey.

22          THE COURT:  Yes, you indicated you wanted to

23  speak, so I'll let you speak.  Go ahead.

24          MR. BLUMBERG:  With respect to the liaison

25  counsel issue, I have discussed it with a number of my

1    colleagues who are not yet defendants, some who are

2    defendants, and there was no -- although we had some

3    identity of interest, there was really no way that we

4    could determine who, and I don't want me speaking to be

5    in any way construed, but there was really no way that

6    we could determine who should be liaison or whether it

7    would even work, so at this point in time I don't

8    believe that there's any feasible way for either the

9    Court to appoint a liaison counsel for unaffiliated

02:36PM  10   defendants or for the unaffiliated defendants to choose

11   one among themselves because in many ways, our interests

12   are not identical.

13           THE COURT:  All right.  I mean, the only

14   thing that occurs to me is to the extent, you know, any

15   affiliated defendant is filing a claim in the bankruptcy

16   court, there could be some mechanism there, they may be

17   just another unsecured creditor, I don't know at that

18   point.  I'm inclined to muddle through without liaison

19   counsel, at least for the time being, unless someone has

02:36PM  20   a better idea.

21           Hearing no -- yes, I'm sorry, Mr. Blumberg.

22           MR. BLUMBERG:  I just think at this point in

23   time, it may not be the most effective way, but, I think

24   it's, you know, based on my experience in talking to a

25   number of the unaffiliated defendants, I just don't see

1    it as being workable.

2         THE COURT:  All right.  Without finally

3    resolving the issue, I'm just going to put that on hold

4    for the time being, and, again, we'll see how it plays

5    out.  It could well be, as Mr. Fern suggested, I mean,

6    it might depend, for example, how many insurers are

7    involved, what the stakes are.  It may be that there are

8    a small number of lawyers who as a practical matter come

9    to the fore, but I think we're fairly far from that

10   point.

11        MR. BLUMBERG:  Judge, can I just go back for

12   one issue on the mediation order very quickly?

13        THE COURT:  Yes.

14        MR. BLUMBERG:  With the Court's permission,

15   this doesn't deal with the issues that were addressed

16   previously, it's more that I know a number of the

17   unaffiliated defendants and some of the people who

18   aren't even defendants had a limited amount of time to

19   respond to the proposed mediation order.

20        The only thing I would -- and obviously as

21   the Court, I think, has indicated before, we're one of

22   the legs of the table that really needs to be able to

23   make this work.

24        The timing is one thing that I would ask the

25   Court to take into consideration, and I would just

1    educate, and I'm sure the Court is aware, for us to

2    decide whether to opt in or opt out, there's a number of

3    things that have to happen.  One is we have to know how

4    what the terms are, and that's how much discovery is

5    likely to occur, what it's going to cost, what is going

6    to be, you know, the mechanism of the mediation, all of

7    which is in flux at this point, and then it gives us 30

8    days to decide whether we're going to opt in or opt out.

9                I've got to say that as a defendant, I have

02:39PM   10   to meet not only with my client, but I've got to then

11   meet with my insurance carrier, and I've got to then

12   have decisions by all of them as to whether they want to

13   opt in.  In the middle of vacation season, I don't see

14   it being workable, at least from my perspective, and I

15   may be alone on this, but I just don't see 30 days being

16   workable in terms of an opt-in date when all of this

17   education has to take place with respect to my clients,

18   and these are pretty heavy decisions as to whether to

19   opt in or opt out, so I just wanted to say that the time

02:39PM   20   limits of 30 days and then 14 days and then 7 days to

21   pick certain things, I would just ask that they be

22   relaxed a little bit or at least have an opportunity to

23   relax then if the Court is going to enter the mediation

24   order.

25                THE COURT:  All right.  Point noted.  I will

```
 1    take that into account.

 2              MR. BLUMBERG:  Thank you, your Honor.

 3              THE COURT:  All right.  Number 8,

 4    multi-plaintiff complaints.

 5              MS. PARKER:  As I understand it,

 6    Mr. Moriarty and Mr. Lipton, who had added that agenda

 7    item, have agreed to put that over until the next status

 8    conference.

 9              THE COURT:  All right.  Pending motions to

10    dismiss, are those simply going to be rolled over again?

11    Is there a different plan?  Yes, I'm sorry.

12              MR. CIPORKIN:  As to Alaunus, yes, for now,

13    your Honor.

14              THE COURT:  I'm sorry, Ms. Parker.

15              MS. PARKER:  We listed those there, your

16    Honor, because they are motions that are currently

17    pending before the Court, but I don't believe that the

18    Court needs to take any action on them at this time.

19              THE COURT:  All right.  I will continue the

20    stay, if that's the right word on those motion to

21    suppress.  ALR's motion for a protective order.

22              MR. WALTON:  Your Honor, Ken Walton for ALR.

23    We're going to put that over as well, if it's

24    permissible to the Court.

25              THE COURT:  All right.  Number 10 I think
```

02:40PM (line 10)

02:40PM (line 20)

1    we've taken up already.  Is there anything more on that,

2    Ms. Parker?

3                    MS. PARKER:  No, your Honor.

4                    THE COURT:  Number 11, status of bankruptcy

5    proceedings, who wants to take the lead here?

6    Mr. Gottfried.

7                    MR. GOTTFRIED:  Yes, your Honor.  I think

8    we've talked about some of this already, but as I

9    reported in the past, the trustee continues to

02:41PM  10    administer the estate, collect receivables, pay bills

11    actively negotiating with the affiliated defendants,

12    which he believes he's making progress.

13                    As I indicated, he met with him as recently

14    as yesterday, reported to the PSC and is to be meeting

15    with him again next week, obviously been active in

16    negotiating this mediation order that we've been talking

17    today.

18                    There's certainly been activity in the

19    bankruptcy court.  I think it's self-explanatory.  I'm

02:41PM  20    sure the Court, you know, has seen the various actions

21    that Judge Boroff has taken.  There's further hearings

22    scheduled for August 22d, and unless you have any

23    questions, I think --

24                    THE COURT:  August 22d is the bar date

25    hearing, right?

```
 1              MR. GOTTFRIED:  That's correct, your Honor.
 2    I saw actually as I was walking over here, I think he's
 3    also scheduled a mediation order for that date as well.
 4              MR. BLUMBERG:  This is Jay Blumberg again.
 5    I was one of the individuals who filed a motion for
 6    reconsideration of Judge Boroff's order to produce
 7    specific patient's names who are not defendants in this
 8    case, and that motion for reconsideration was promptly
 9    denied.  There is -- I want this Court to just be aware
10    that if it hasn't been filed yet, I anticipate that it
11    will be filed by Monday an appeal of Judge Boroff's
12    decision.  I believe it's to the District Court.
13              THE COURT:  An appeal to me anyway?
14              MR. BLUMBERG:  I don't know, but it is an
15    appeal of Judge Boroff's decision.  It will be filed,
16    and concurrently with that or shortly after that, we
17    will be applying for a stay of Judge Boroff's decision
18    to supply the patient names.  I wanted the Court just to
19    be aware that that was something it isn't -- I don't
20    believe it's been filed yet, but I anticipate that by
21    Monday it will be.
22              THE COURT:  All right.  I'm assuming that
23    any appeal would be assigned to me as a related matter.
24    I guess I'm shooting from the hip there, but I think it
25    ought to work that way.  All right.  If an appeal is
```

02:42PM (line 10)

02:43PM (line 20)

```
 1    filed, I'll take it up in due course.  I don't know what
 2    else to say.
 3                  MS. PARKER:  A word about the timing there,
 4    your Honor.
 5                  THE COURT:  Yes.
 6                  MS. PARKER:  So on July 29th, Judge Boroff
 7    issued an order that required production of some patient
 8    information by pain clinics and healthcare providers.
 9    That order, as it currently stands, requires that
10    clinics listed on Exhibit A, which is attached to the
11    order, produce that patient information by August 16th,
12    so that is a deadline that is upon us.
13                  THE COURT:  All right.
14                  MR. BLUMBERG:  That would be the stay that
15    we are applying for actually.
16                  THE COURT:  I'm sorry.
17                  MR. BLUMBERG:  That would be the stay that
18    we are applying for --
19                  THE COURT:  Yes.
20                  MR. BLUMBERG:  -- once the appeal is filed.
21    That's what I was referring to.
22                  THE COURT:  All right.  In other words, a
23    stay pending appeal?
24                  MR. BLUMBERG:  Correct.
25                  THE COURT:  All right.  Anything else on the
```

1    status of bankruptcy?

2              (No response)

3              THE COURT:  All right.  Anything else on any

4    issue at all not on the agenda?  Anything from the

5    plaintiffs' side?

6              MR. CHALOS:  Your Honor, Mark Chalos.  I

7    have just one point to make regarding the mediation

8    order --

9              THE COURT:  Yes.

02:44PM  10              MR. CHALOS:  -- and the comment Mr. Blumberg

11    made on the phone about the 30 days.

12              THE COURT:  Yes.

13              MR. CHALOS:  We're about six weeks away from

14    the first statute of limitations running, at least the

15    one year states.  Much more than 30 days will require, I

16    think, plaintiffs in those states to at least very

17    strongly consider filing their cases, which I think is

18    something that the mediation program is attended to

19    avoid, at least that expenditure of resources.

02:45PM  20              In Tennessee, at least, we have to have

21    experts review all our cases and give a certificate of

22    merit before we file it, and those are, you know, very

23    expensive, many thousands of dollars to do, and I know

24    some lawyers, at least, have been waiting before they

25    expend those resources to see what, you know, is coming

1    out of this mediation order, so the mediation order

2    doesn't do much more than put some details around the

3    program your Honor designed and put in the June 28th

4    order.

5              You know, that's about six weeks ago or so,

6    so for any clinic lawyer who hasn't started educating

7    their clients, I think they might be well-advised to

8    start educating their clients, and if it's going to be

9    meaningful, as we all intend it to be, I think it's got

02:46PM   10   to be in advance of the one-year statute states losing

11   their statute of limitations, so we ask your Honor to

12   look strongly as being the 30 days to be the appropriate

13   measure.  Thanks.

14             THE COURT:  I thought I heard Mr. Blumberg

15   say that if he doesn't obtain relief from 30 days, he

16   would seek an opportunity for relief, which is, I

17   assume, an opportunity to relax or modify a deadline

18   under appropriate circumstances.

19             All right.  Anything else from plaintiffs'

02:46PM   20   side?

21             MS. PARKER:  No, your Honor.

22             THE COURT:  From the trustee?

23             MR. GOTTFRIED:  Just one issue, your Honor.

24             THE COURT:  Mr. Gottfried.

25             MR. FERN:  Going back to the mediation

1    order, in light of the fact that no unaffiliated

2    defendants stepped up to be liaison counsel, I think

3    when you review the orders, and the orders, I think, are

4    the same with respect to this in terms of creating an

5    NDC mediation committee, I think it would be a modest

6    edit to suggest that if such a committee is not formed

7    or assembled that the interested parties and the

8    interested unaffiliated non-debtor claimants could

9    submit suggestions as to who the mediator could be and

02:47PM   10    things of the nature, so I think we need to just build

11    in the fact that maybe no one will step up again, and I

12    think that's an easy edit, and if it's acceptable to the

13    Court, I'd be happy to send that to the Court as a blue

14    line in a couple of places where that sort of edit would

15    be appropriate.

16            THE COURT:  Why don't you go ahead and do

17    that.

18            MR. GOTTFRIED:  Thank you, your Honor.

19            THE COURT:  All right.  Unsecured creditors'

02:47PM   20    committee, anything further?

21            MR. COREN:  No, your Honor, we're fine.

22            THE COURT:  Anyone from the defense side?

23    Anyone else?

24            (No response).

25            THE COURT:  All right.  Thank you, all, have

```
 1   a good week.  I hope you don't get stuck in Philadelphia
 2   on your way out.  I should point out I'm really tweaking
 3   my law clerk, who's from Philadelphia here.  It's a
 4   worthy topic.
 5             [Laughter]
 6             MR. COREN:  Your Honor, you've been striking
 7   a nerve with me.  I'm from Philadelphia.
 8             THE COURT:  All right.  You're just
 9   collateral damage here.  I will see you September --
10             THE CLERK:  September 12th.
11             THE COURT:  Let's set a November date as
12   well, let's keep rolling about 60 days in advance.
13             THE CLERK:  September 12th, October 8th,
14   November 7th at 1:30.
15             THE COURT:  Thursday, November 7th at 1:30?
16             (No response)
17             THE COURT:  Hearing no objection,
18   November 7th at 1:30.  Thank you, all.
19             (Whereupon, the hearing was adjourned at
20   2:48 p.m.)
21
22
23
24
25
```

```
1                C E R T I F I C A T E

2

3

4   UNITED STATES DISTRICT COURT )

5   DISTRICT OF MASSACHUSETTS ) ss.

6   CITY OF BOSTON )

7

8        I do hereby certify that the foregoing

9   transcript, Pages 1 through 64 inclusive, was recorded

10  by me stenographically at the time and place aforesaid

11  in MDL NO. 13-02419-FDS, IN RE:  NEW ENGLAND COMPOUNDING

12  PHARMACY CASES LITIGATION and thereafter by me reduced

13  to typewriting and is a true and accurate record of the

14  proceedings.

15        Dated this August 14, 2013.

16                     s/s Valerie A. O'Hara

17            _____

18            VALERIE A. O'HARA

19            OFFICIAL COURT REPORTER

20

21

22

23

24

25
```