UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEW ENGLAND COMPOUNDING ) <br> PHARMACY, INC. PRODUCTS LIABILITY ) <br> LITIGATION ) <br> _____ ) <br>  ) <br> THIS DOCUMENT RELATES TO: ) <br>  ) <br> All Actions ) <br>  ) | MDL No. 2419 <br> Dkt. No 1:13-md-2419 (FDS) |

_____

**RESPONSE TO PLAINTIFFS' MOTION FOR
ENTRY OF REVISED CASE MANAGEMENT SCHEDULE**
_____

Come Saint Thomas Outpatient Neurosurgical Center, LLC ("STOPNC"), John Culclasure, M.D., Debra Schamberg, R.N., and Howell Allen Clinic, a Professional Corporation ("Howell Allen") (collectively "these healthcare providers") and file this opposition to the Plaintiffs' Motion for Entry of Revised Case Management Schedule (Dkt. No. 421[1]).

## BACKGROUND

On July 1, 2013, more than two months ago, counsel for these healthcare providers entered a limited appearance on behalf of STOPNC and Howell Allen for the purpose of objecting to subpoenas issued by the Plaintiffs' Steering Committee ("PSC") (Dkt. No. 217).

---

[1] The PSC filed another Revised Case Management Schedule on September 16, 2013 (Dkt. No. 431), but the deadlines are unchanged.

These healthcare providers were recently named as defendants in *Bland v. Ameridose, et al.*, Case No. 1:13-cv-11881. *Bland* was transferred into the MDL by CTO-15[2] on August 7, 2013, over a month ago.

Also, these healthcare providers are defendants in *May v. Ameridose, et al.*, Case No. 13-cv-12234, and *Carman v. Ameridose, et al.*, Case No. 13-cv-12238, which were transferred into the MDL on September 9, 2013, by CTO-17 (Dkt. No. 409).

These healthcare providers have filed numerous pleadings in the MDL (*see, e.g.*, Dkt. Nos. 217-222) and have been active in the MDL and NECC's bankruptcy proceeding. Also, at the status conference on September 12, 2013, Mark Chalos of the PSC specifically asked the Court to address the deadline for these healthcare providers' motion for summary judgment pending in *Carman*.

On September 12, 2013, shortly before the status conference set for 1:30 p.m. EST, the PSC filed both a "Jointly" Proposed Agenda for the September 12, 2013, Status Conference and a Motion for Entry of Revised Case Management Schedule (Dkt. Nos. 420, 421). Counsel for these healthcare providers was unaware of the existence of either document prior to September 12, 2013. In fact, counsel for these healthcare providers did not learn of the existence of the Revised Case Management Schedule *until it was discussed at the status conference*.

Despite representing in the Motion for Entry of Revised Case Management Schedule that the proposed schedule was provided to all defendants and nonparties represented in the MDL, neither the PSC, the Official Committee of Unsecured Creditors, nor the Chapter 11 Trustee contacted counsel for these healthcare providers prior to the September 12, 2013, status conference to discuss (1) the proposed agenda;

---

[2] CTO-15 has not yet been docketed.

(2) the proposed Revised Case Management Schedule; or (3) the motion for summary judgment pending in *Carman*.

## LAW AND ARGUMENT

As defendants in these actions, these healthcare providers hereby file this opposition to the Plaintiffs' Motion for Entry of Revised Case Management Schedule. The deadlines are unrealistic and unfair.

### I. The PSC Violated Local Rule 37.1 in Failing to "Meet and Confer" with Counsel for these Healthcare Providers Prior to Moving for Entry of the Revised Case Management Schedule.

The PSC did not comply with Local Rule 37.1, which requires the moving party to confer with "counsel <u>for each of the parties</u> in good faith to narrow the areas of disagreement to the greatest possible extent."[3]

In its motion, the PSC stated that it had solicited comments regarding the Revised Case Management Scheduled from (1) all defendants of record in the MDL and (2) all clinics who had filed limited appearances in the MDL for the purpose of objecting to the subpoenas. These healthcare providers fit both categories, yet they were never contacted by the PSC, let alone invited to participate in a "meet and confer" regarding the motion.[4]

Additionally, the PSC apparently intended to ask the Court to stay the deadline for responding to these healthcare providers' motion for summary judgment pending in *Carman.* However, this item was not included on the "Jointly" Proposed Agenda. The issue was first raised by the PSC at the September 12, 2013, hearing. The oral request

---

[3] Local Rule 37.1 (emphasis added).
[4] It appears that, at least from the PSC's motion, only one of the 50+ healthcare providers chose to participate in the development of the Revised Case Management Schedule.

3

by the PSC to stay briefing on the *Carman* motion for summary judgment was the first time counsel for these healthcare providers heard of such a request.

Despite statements to the contrary in the Motion for Entry of Revised Case Management Schedule, no one approached these healthcare providers about the Revised Case Management Schedule prior to presenting it to the Court. Therefore, these healthcare providers respectfully request that the Court deny the PSC's motion for entry of the Revised Case Management Schedule and order the PSC to comply with Local Rule 37.1 prior to refiling.

If the Court is inclined to grant the PSC's motion, these healthcare providers respectfully request that the Court consider the objections discussed below.

## II.     The Proposed Deadline for Filing Answers is Unnecessarily Short.

The Revised Case Management Schedule sets September 25, 2013, less than ten days from entry of the proposed Revised Case Management Schedule, as the deadline for filing answers to suits filed directly into or transferred into the MDL prior to August 28, 2013. For suits filed in or transferred into the MDL after August 28, 2013, defendants must file an answer within 21 days. Ignoring the obvious unreasonableness of giving defendants less than two weeks to file an answer,[5] these deadlines fail to recognize an applicable Tennessee statute and two provisions of the Federal Rules of Civil Procedure.

---

[5] These healthcare providers are currently party to multiple complaints, all greater than 50 pages and 200 paragraphs.

### A. Tennessee law allows plaintiffs to add new parties after the statute of limitations expires.

The PSC has advised the Court that the accelerated answer deadlines are necessary to identify other comparatively at-fault nonparties prior to the expiration of Tennessee's one year statute of limitations.

However, Tenn. Code Ann. § 20-1-119 extends the statute of limitations against any parties identified by defendants in an answer or amended answer as comparatively at-fault for the plaintiff's injuries.[6] Plaintiffs are given 90 days to either (1) file an amended complaint naming the newly-identified party or (2) institute a separate action against the newly-identified party.[7] Either action initiated within this 90 day period "shall not be barred by any statute of limitations."[8]

In other words, there is no legitimate justification for requiring Tennessee defendants to file an answer within the PSC's accelerated timeframe.

### B. The proposed deadlines disregard the Federal Rules of Civil Procedure.

Under Fed. R. Civ. P. 4(d)(3) and 12(a)(1)(A)(ii), defendants who agree to waive service are given 60 days to file an answer. Dr. Culclasure and Nurse Schamberg have agreed to waive service in the *Bland* suit. The September 25, 2013, deadline for filing an answer would require them to answer in less than 60 days. Additionally, these healthcare provider defendants have agreed to waive service in several other suits that have not yet been transferred into the MDL. The 21 day deadline for filing answers in suits transferred or filed into the MDL after August 28, 2013, will also violate these rules.

---

[6] Tenn. Code Ann. § 20-1-119.
[7] *Id.*
[8] *Id.*

5

The deadlines also fail to account for Fed. R. Civ. P. 12. Under Fed. R. Civ. P. 12(b), a party must make a motion to dismiss for failure to state a claim upon which relief can be granted prior to filing an answer. Additionally, as the Court recognized at the September 12, 2013, status conference, defendants have the right to seek early dismissal if legal grounds exist to avoid being "swept up" in the inexorable flood of this massive litigation.

Put simply, these healthcare provider defendants are entitled to have dispositive motions considered before being required to undertake the burden and expense of filing an answer. The Revised Case Management Schedule deadlines simply do not allow for this fundamental right. Instead, the deadlines place unreasonable time constraints on defendants in filing answers.

### C. The answers filed by these healthcare providers in state court satisfy the PSC's stated need for setting a short filing deadline.

Finally, STOPNC and Howell Allen already filed answers in four state court suits arising from the fungal meningitis outbreak.[9] Those answers contained 30+ pages of detailed and comprehensive comparative fault allegations, and at least some, if not all, members of the PSC have undoubtedly obtained copies.

If the concern from the PSC is that they need to see these defendants' comparative fault allegations in order to proceed with this litigation, they can simply read the state court answers.[10]

---

[9] All four suits were subsequently nonsuited.

[10] Plus, the Revised Case Management Schedule calls for the filing of the Master Complaint months <u>after</u> these healthcare providers are required to file an answer to the individual complaints. The order gives the PSC almost a year to file the Master Complaint but contemplates these healthcare providers filing answers to specific complaints in weeks.

6

These healthcare provider defendants respectfully request that the Court set deadlines for filing answers that account for Tennessee law and the time allotted by the Federal Rules of Civil Procedure, and that do not require these defendants to file answers to 50+ page complaints in a matter of days. Additionally, these healthcare providers respectfully request that the Court set a reasonable deadline for responding to the Master and Short Form Complaints once the PSC files them.

### III. The Proposed Deadlines for Producing Defense Expert Reports are Unreasonably Short and Fail to Take into Account the Defendants' Need for Discovery and Rulings on Dispositive Motions.

At the outset, these healthcare providers would like to point out that it is probably more appropriate to wait to set expert deadlines until the Master and Short Form Complaints are filed so that all parties, including the Court, can more reasonably anticipate the number and scope of claims that will require expert testimony. Additionally, rulings on dispositive motions will likely narrow the claims.

The Revised Case Management Schedule sets the following deadlines for expert reports:

| | |
|---|---|
| Common Expert Reports | February 28, 2014 |
| Common Responsive Expert Reports[11] | March 31, 2014 |
| Common Rebuttal Expert Reports | April 30, 2014 |
| Case Specific Expert Reports Simultaneous Disclosure by Plaintiff & Defendant | May 30, 2014 |

---

[11] The Revised Case Management schedule does not define "responsive" experts, but, presumably, it means defense experts.

### A. Defendants should not be required to disclose case specific experts until after the plaintiffs.

For claims against these and other Tennessee healthcare providers, Tennessee's Health Care Liability Act places the burden of proof on the plaintiff, and the plaintiff must prove their case by expert testimony.[12] Unless and until the plaintiff provides expert testimony, it is unnecessary for defendants to even retain an expert, let alone disclose an expert report. Simultaneous disclosure would require defendants to obtain expensive expert opinions without knowing whether plaintiffs even have an expert on a given subject.

More importantly, requiring simultaneous disclosure will result in the rendering of overbroad and unnecessary opinions. Following the more traditional course, by requiring plaintiffs to disclose their experts first, will serve to narrow the issues. Once plaintiffs have set out the scope of their claims in their expert reports, defendants will know what issues actually require an expert opinion. Anything else would require sheer guesswork.

These healthcare providers can see no legitimate justification for requiring simultaneous disclosure, and the PSC gave no justification in their motion or at the September 12, 2013, status conference.

Therefore, these healthcare providers respectfully request that the Court set the deadline for defendants' production of case specific expert reports 60 days after the plaintiffs' deadline for producing such reports. These healthcare providers submit that this deadline is entirely reasonable in light of the 100+ claims that will likely be filed against them, all of which will require case specific expert reports.

---

[12] Tenn. Code Ann. § 29-25-115.

8

**B.     The deadline for producing common responsive[13] expert reports is unreasonably short.**

The Revised Case Management Schedule requires defendants to produce common expert reports 31 days after the plaintiffs produce their common expert reports. As explained in Section III., A. above, defendants' need plaintiffs' expert reports prior to obtaining and producing their own reports. Thirty-one (31) days is simply not enough time to produce such reports.

As the Court is well-aware, these cases are very complex with many defendants.[14] Defendants will need adequate time to (1) analyze plaintiffs' expert reports as to each of those many defendants and (2) determine whether to obtain expert opinions regarding those other defendants for the purpose of asserting comparative fault against them. Defendants will also need adequate time to obtain responsive expert reports for criticisms of their own actions.

These healthcare providers respectfully submit that defendants' common expert reports should be due 60 days after the plaintiffs' common expert reports. Sixty (60) days is a more reasonable (and traditional) amount of time for defendants to produce their expert reports.

---

[13] Again, these healthcare providers understand "responsive" expert reports to mean defendants' expert reports.
[14] This simple fact becomes increasingly clear every time the plaintiffs miss or ask the Court to extend a deadline *that they proposed* in the original Case Management Order. The PSC has asked the Court to extend its own deadline for filing the Master and Short Form complaints by *two months*.

  **C. All expert deadlines should take into account the need for (1) discovery from the NECC-affiliated defendants and (2) rulings on dispositive motions.**

The Revised Case Management Schedule stays all discovery against NECC and the NECC-affiliated defendants. However, the unaffiliated defendants will need discovery from the NECC-affiliated defendants (and NECC) in order to provide their experts with the information necessary to render opinions, for the purpose of establishing comparative fault.[15]

These healthcare providers understand that the automatic stay operates to preclude discovery against NECC, but it does not protect the NECC-affiliated defendants from discovery. Furthermore, the NECC-affiliated defendants' decision to mediate should not operate to deprive the unaffiliated defendants of discovery regarding the culpability of those who are truly at fault.

Similarly, the deadline for briefing motions for summary judgments is *after* the deadline for submitting expert reports. One of the purposes of dispositive motions is to narrow the scope of the issues, and defendants should have the opportunity to have such motions heard before producing expert reports. Dispositive motions will render at least some expert opinions unnecessary.

Without hearings on dispositive motions, defendants will be required to expend time and resources to obtain unnecessary expert opinions on claims that are legally non-viable.

---

[15] And, as the Court observed at the September 12, 2013, status conference, the bankruptcy court's stay of discovery is still in place for the debtor, NECC. These healthcare provider defendants have not been given access to any of the thousands of pages of "informal" discovery NECC has produced.

Therefore, these healthcare providers respectfully request that expert deadlines take into account the defendants' need for (1) discovery from the NECC-affiliated defendants and (2) rulings on dispositive motions.

**D.     The proposed deadlines for expert discovery are unreasonably short.**

The deadlines for disclosure of expert reports and completion of expert discovery are unreasonably short. Notably:

- The deadline for common expert reports comes just a few months after plaintiff profile forms are completed in the bellwether cases and 90 days after defendants finally see the Master Complaint.

- The PSC enjoys more than a year to develop expert reports, and defendants must disclose "common" responsive reports in 30 days.

- The Revised Case Management Schedule allows for just 30 days to complete the depositions of <u>all</u> plaintiffs', defense, and rebuttal "common" experts.

- The Revised Case Management Schedule allows for just 30 days to complete specific expert discovery.

These deadlines are too quick and will inevitably lead to incomplete disclosures, requiring supplementation, and extensions of the deadlines.

**IV.     The Proposed Trial Date is Unrealistic.**

The proposed trial date is simply too ambitious. It contemplates resolution of these cases ten months after the filing of the Master Complaint and just a few months after completion of expert discovery. This is unrealistic and unreasonable.

**CONCLUSION**

For the reasons set forth above, these healthcare providers respectfully request that the Court DENY the PSC's Motion for Entry of Revised Case Management Schedule for failure to "meet and confer" with each party as required by Local Rule 37.1.

Alternatively, these healthcare providers respectfully request that the Court set deadlines that are fair and reasonable in light of the objections raised in Sections II., III., and IV., above.[16]

Respectfully submitted,

**GIDEON, COOPER & ESSARY, PLC**

/s/ Chris J. Tardio_____ _____
**C.J. Gideon, Jr., #6034
Chris J. Tardio, #23924
Matthew H. Cline, #31076
John-Mark Zini, #31769**
Suite 1100
315 Deaderick Street
Nashville, TN 37238
(615) 254-0400

***Attorneys for STOPNC, John W. Culclasure, M.D., Debra Schamberg, R.N., and Howell Allen.***

---

[16] Also of note, key terms in the Order are not defined, (*e.g.*, "common fact discovery" and "generic motions to dismiss"). And, the process for bellwether case selection is not defined. Finally, the bellwether cases are selected before many cases are even filed.

## CERTIFICATE OF SERVICE

This will certify that a true and accurate copy of the foregoing was served on all parties hereto by virtue of the Court's electronic filing system this 16th day of September, 2013.

/s/ Chris J. Tardio
**Chris J. Tardio**