UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

IN RE:  NEW ENGLAND          )  MDL NO. 13-02419-FDS
COMPOUNDING                  )
PHARMACY CASES LITIGATION    )
                             )
                             )
                             )
                             )
                             )

BEFORE:  THE HONORABLE F. DENNIS SAYLOR, IV

STATUS CONFERENCE

John Joseph Moakley United States Courthouse
Courtroom No. 2
One Courthouse Way
Boston, MA 02210

September 12, 2013
1:30 p.m.

Valerie A. O'Hara, FCRR, RPR
Official Court Reporter
John Joseph Moakley United States Courthouse
One Courthouse Way, Room 3204
Boston, MA 02210
E-mail: vaohara@gmail.com

```
 1     APPEARANCES:

 2     For The Plaintiffs:

 3         Hagens, Berman, Sobol, Shapiro LLP,
 4     by KRISTEN JOHNSON PARKER, ATTORNEY,
       55 Cambridge Parkway, Suite 301, Cambridge,
 5     Massachusetts 02142;

 6         Ellis & Rapacki LLP, by FREDRIC L. ELLIS, ESQ.,
       85 Merrimac Street, Suite 500, Boston, Massachusetts
 7     02114;

 8         Janet, Jenner & Suggs, LLC, KIMBERLY A. DOUGHERTY,
       ATTORNEY, 75 Arlington Street, Suite 500, Boston,
 9     Massachusetts  02116;

10         Lieff, Cabraser, Heimann & Bernstein, LLP, by MARK P.
       CHALOS, ESQ., One Nashville Place, 150 Fourth Avenue,
11     North, Suite 1650, Nashville, Tennessee 37219-2423;

12         Crandall & Katt, by PATRICK THOMAS FENNELL, ESQ.,
       366 Elm Avenue, SW, Roanoke, VA 24016;
13
           Lipton Law, by MARC E. LIPTON, ESQ., 18930 West Ten
14     Mile Road, Suite 3000, Southfield, Missouri  48075;

15     FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS:

16         Brown Rudnick, by DAVID J. MOLTON, ESQ.,
       Seven Times Square, New York, New York 10036;
17
           Brown Rudnick, by KIERSTEN A. TAYLOR, ATTORNEY,
18     One Financial Center, Boston, Massachusetts  02111;

19         Cohen, Placitella & Roth, P.C., by MICHAEL COREN,
       ESQ., 2 Commerce Square, 2001 Market Street, Suite 2900,
20     Philadelphia, Pennsylvania  19103;

21     For the Defendants:

22         Harris Beach PLLC, by FREDERICK H. FERN, ESQ.,
       100 Wall Street, New York, New York  10005;
23
           Hinshaw & Culbertson LLP, by DANIEL E. TRANEN, ESQ.,
24     28 State Street, 24th Floor, Boston, Massachusetts
       02109;
25
```

1   <u>For the Defendants</u> (Continued):

2      Tucker & Ellis LLP, by MATTHEW P. MORIARTY, ESQ.,
   1150 Huntington Building, 925 Euclid Avenue, Cleveland,
3   Ohio 44115-1414;

4      Michaels, Ward & Rabinovitz LLP, by DAN RABINOVITZ,
   ESQ., One Beacon Street, Boston, Massachusetts 02108;
5
       Todd & Weld LLP, by CHRISTOPHER R. O'HARA, ESQ.,
6   28 State Street, 31st Floor, Boston, Massachusetts
   02109;
7
       Curley & Curley, P.C., by LISABETH RYAN KUNDERT,
8   ATTORNEY, 27 School Street, Boston, Massachusetts
   02108;
9
       Lawson & Weitzen, LLP, by RYAN A. CIPORKIN, ESQ.,
10  88 Black Falcon Avenue, Boston, Massachusetts  02210;

11     Ulmer & Berne LLP, by JOSEPH P. THOMAS, ESQ.,
   600 Vine Street, Suite 2800, Cincinnati, OH 45202;
12
       Marks, O'Neill, O'Brien, Doherty & Kelly, P.C., by
13  MICHAEL T. HAMILTON, ESQ., 600 Baltimore Avenue, Suite
   305, Towson, Maryland 21204;
14
       Donovan & Hatem, LLP, by KENNETH B. WALTON, ESQ.,
15  Two Seaport Lane, Boston, Massachusetts  02210;

16     Sloane & Walsh, LLP, by WILLIAM J. DAILEY, JR., ESQ.,
   Three Center Plaza, Boston, Massachusetts  02108;
17
   <u>FOR PAUL D. MOORE, IN HIS CAPACITY AS CHAPTER 11 TRUSTEE</u>
18  <u>OF NECP, INC.:</u>

19     Duane Morris LLP by MICHAEL R. GOTTFRIED,
   ESQ. and JEFFREY D. STERNKLAR, ESQ., 100 High Street,
20  Suite 2400, Boston, Massachusetts 02110-1724;

21  <u>VIA PHONE FOR THE PLAINTIFFS:</u>

22  Forest Home
   Susan Taylor
23  Alyson Oliver
   Melvin Wright
24  Mary Gidaro

25

```
 1   VIA PHONE FOR THE PLAINTIFFS (CONTINUED):

 2   Chris Cain
     Frank Federico
 3   Susan Groden
     Mike Derrick
 4   Jim Girards
     Daniel Clayton
 5   Karren Schaeffer
     Ryan Quinn
 6   Sharon Houston
     Scott Kaminski
 7   Randy Kinnard
     Anne Andrews
 8   John Thornton
     Sheri Peterson
 9   J. Stephen King
     Benjamin Perry
10   Rob Sickels
     Steven Resnick
11   Mike Hugo
     Deb Gresco-Blackburn
12   Elliot Olsen
     John Alexander
13   Johnathan Krohnfeldt
     Terry Dawes
14   Daniel Myers
     Mark Dancer
15   Dave Lawrence
     Robert Sanders
16   Will Riley
     Rob Briley
17   Rebecca Blair
     Terry Cochran
18   Douglas Mulvaney
     Gerard Stranch
19   Nolan Nicely
     Timothy Housholder
20   Patrick Montoya
     Jeff Keiser
21   David Rashid
     George Nolan
22   Doug Small
     Robert Randall
23   Terry Cochran
     Robert Dean
24   Ed Jazlowiecki
     Sean Roth
25   Scott Sexton
     Jason Denton
```

1    <u>VIA PHONE FOR THE PLAINTIFFS</u> (CONTINUED):

2    Peter McGrath
     Greg Lyons
3    Michael Pattanite

4    <u>VIA PHONE FOR THE DEFENDANTS</u>:

5    Jay Blumberg
     Ron E. Meisler
6    Kathryn J. Humphrey
     Stephen A. Grossman

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    PROCEEDINGS
 2          THE CLERK:  All rise.  Thank you.  All be
 3   seated.  Court is now in session.  This is the matter of
 4   In Re:  New England Compounding Pharmacy, Incorporated
 5   Products Liability Litigation.  This is Case
 6   Number 13-md-02419.
 7          Counsel for the PSC, please note your
 8   appearances for the record.
 9          MS. PARKER:  Good afternoon, your Honor,
10   Kristen Johnson Parker of Hagens, Berman, Sobol, Shapiro
11   for the plaintiffs' steering committee.
12          THE COURT:  Good afternoon.
13          MS. DOUGHERTY:  Good afternoon, your Honor,
14   Kim Dougherty, Janet, Jenner & Suggs, also on behalf of
15   the plaintiffs' steering committee.
16          MR. LIPTON:  Marc Lipton on behalf of the
17   steering committee, your Honor.
18          MR. CHALOS:  Mark Chalos on behalf of the
19   steering committee.
20          MR. FENNELL:  Patrick Fennell for the
21   plaintiff's steering committee.
22          MR. MOLTON:  Your Honor, David Molton of
23   Brown, Rudnick here with Kiersten Taylor for the
24   official committee of organized creditors, the debtor,
25   NECC.
```

01:32PM (line 10)

01:33PM (line 20)

1          MR. COREN:  Michael Coren, co-chair,
2     creditors' committee, your Honor.
3          MR. ELLIS:  Rick Ellis, various plaintiffs.
4          MR. GOTTFRIED:  Michael Gottfried for the
5     trustee, Paul Moore.  With me, my partner, Jeff
6     Sternklar.
7          MR. THOMAS:  Joe Thomas on behalf of GDC.
8          THE COURT:  Mr. Fern.
9          MR. FERN:  Your Honor, Frederick Fern from
01:33PM  10    Harris, Beach, especially-retained counsel for the
11    Chapter 11 trustee.
12         MR. DAILY:  William Daily, your Honor, on
13    behalf of the affiliated defendants.
14         MR. RABINOVITZ:  Good afternoon, your Honor,
15    Dan Rabinovitz on behalf of Medical Sales Management,
16    Inc.
17         MR. O'HARA:  Good afternoon, your Honor,
18    Christopher O'Hara on behalf of Doug Conigliaro and
19    Carla Conigliaro.
01:34PM  20        MR. MORIARTY:  Good afternoon, your Honor,
21    Matthew Moriarty for Ameridose.
22         THE COURT:  All right.  We have various
23    other parties on the phone, some of whom have indicated
24    they wish to be heard at some point in this proceeding.
25         All right.  I have the agenda or the

proposed agenda, which I will follow as usual.

Ms. Parker, why don't you tell me where we are on item

Number 1, update on subpoenas and objections.

MS. PARKER:  Thank you, your Honor.  The PSC

has served, I believe the number last time I checked was

83 subpoenas.  A number of those subpoena recipients

filed objections in this Court.  This Court issued an

order addressing some of the substantive issues raised

in those subpoena objections and referred the remainder

01:34PM   of those objections to Magistrate Boal.

THE COURT:  Let me stop you there.  Are

there any that I have not referred because they've come

in late?

MS. PARKER:  I believe that you have

referred all of them, your Honor, but we will take

another look and let the Court know if that is in fact

the case.

THE COURT:  Okay.  Thank you.  Go ahead.

MS. PARKER:  Judge Boal has scheduled a

01:35PM   status conference on subpoena objections on

September 25th.  That date is two days after the

deadline for defendants or potential defendants to opt

into the mediation program.  We think that that timing

is fortuitous.  We think that there are unfortunately

some entities out there who may believe that because of

1    the Court's order and the fact that no additional orders

2    addressing subpoena objections have been issued in that

3    short time period that there may be a misapprehension

4    that the PSC does not intend to pursue aggressively

5    those subpoenas and to address those objections on the

6    merits with Magistrate Judge Boal, so we look forward to

7    addressing all of those issues before her on the 25th.

8            THE COURT:  All right.  Does anyone else

9    want to be heard on the subject of the subpoenas or the

01:36PM  10    upcoming hearing?  All right.  Let's go to item 2,

11    status of mediation efforts.

12            MS. PARKER:  Discussions with New England

13    Company and the affiliated defendants are ongoing.  I

14    won't say anything else one way or the other about that.

15    I don't intend to send any signals.  The trustee is

16    actively working through those matters and is apprising

17    the lead counsel and also counsel for the creditors'

18    committee.

19            THE COURT:  All right.  Does anyone else

01:36PM  20    want to comment on that?

21            MR. COREN:  Yes, your Honor, Michael Coren,

22    the co-chair of the creditors' committee.  I just wanted

23    to let your Honor know that both the PSC and the

24    official creditors' committee jointly have sent a letter

25    out to all known clinics, healthcare, anyone who would

1    fall within the ambit of the mediation order advising

2    them of your Honor entering the order, supplying them

3    with a copy of the order.

4            We also have set up a question and answer

5    session jointly with the PSC and the creditors'

6    committee for the clinics so if they have any questions

7    regarding, we could answer it.  Bankruptcy counsel will

8    be available to answer any bankruptcy-related issues.

9    That is scheduled for the 19th, your Honor.  It will be

01:37PM  10   a telephone conference call.

11           As to the plaintiffs, originally I thought

12   it would be the 25th, but I understand it now be the

13   26th now because of the proceedings in front of the

14   magistrate judge that we will have a plaintiff-oriented

15   session to explain to them by then we believe the bar

16   order will be entered and bankruptcy counsel will

17   address the status of that separately, but they'll be a

18   similar question and answer, you know, period regarding

19   the mediation and questions of how that relates to the

01:38PM  20   bar order and those things to get the word out, so if

21   you have any questions I could address regarding that.

22           THE COURT:  No, I'm sorry, the thing on the

23   26th is plaintiffs' counsel as opposed to plaintiffs

24   themselves?

25           MR. COREN:  Correct.  There's a lot of

1    plaintiffs' counsel out there who --

2              THE COURT:  That's what I thought, I wanted

3    to make sure I understood it.

4              MR. COREN:  Yes.

5              THE COURT:  Remind me, what's the present

6    bar date?

7              MR. COREN:  It has not yet been set, your

8    Honor.  I'll let bankrupt counsel address that for you.

9              THE COURT:  All right.  Mr. Gottfried.

01:38PM  10              MR. GOTTFRIED:  Yes, focusing on your last

11    question first, your Honor, there's a hearing on the bar

12    date motion scheduled for the 23d of this month.

13              THE COURT:  I guess that's what I meant,

14    yes.

15              MR. GOTTFRIED:  So that's the date of that

16    hearing.  Obviously Judge Boroff hasn't decided that

17    yet.

18              THE COURT:  Yes.

19              MR. GOTTFRIED:  With respect to the

01:39PM  20    discussions between the trustee and the affiliated

21    defendants that the PSC raised in its report, presumably

22    it would echo that the trustee believes that progress is

23    being made, that he has been keeping lead counsel for

24    the PSC, Mr. Sobol, and counsel to the creditors'

25    committee apprised.  He's met with both of them several

1  times, including this morning, to apprise him of the

2  status of things, and those discussions are ongoing.

3            THE COURT:  All right.  And to state what I

4  hope is obvious, no one is under any obligation or

5  pressure to mediate or settle any claim, and to the

6  extent that issues fall within my ambit, as opposed to

7  the transferor courts, I will certainly -- I certainly

8  hope and I expect that I will give any party a fair

9  hearing.

01:39PM  10            Obviously I'm pleased to hear that

11  discussions are underway and hope that they're fruitful,

12  but I also understand that sometimes people can't reach

13  accommodation, and if that's what happens, we're going

14  to go forward with the litigation, and no one will be

15  penalized as a result.

16            All right.  Anything else on that topic?

17  All right.  Let's go item 3, scheduling issues.

18  Ms. Parker.

19            MS. PARKER:  So I think items 3 and 5 are

01:40PM  20  actually duplicative, your Honor, so I'll address both

21  at the same time.

22            THE COURT:  Good, because that confused me.

23            MS. PARKER:  So earlier today, although not

24  as early as I would have liked, the plaintiffs' steering

25  committee filed a motion for entry of revised case

1    management order.

2           THE COURT:  Yes, which I saw and read

3    quickly.

4           MS. PARKER:  That case management order

5    really serves three purposes from the plaintiffs'

6    perspective:  First, it sets dates for some items that

7    had previously been generally described as occurring at

8    a particular time of year; the second is that it maps

9    out in only broad strokes, your Honor, what the

01:41PM  10   plaintiffs have contemplated in terms of bellwether

11   trials for those cases that in fact proceed to

12   litigation; and the third is it addresses the reality

13   the discovery here has not moved as quickly as I think

14   anyone would have liked.

15          Part of that deals with subpoena objections,

16   which we have already addressed, and part of that deals,

17   we think, with the fact that many entities at play here,

18   defendants or potential defendants, have been spending

19   time considering whether or not to participate in

01:41PM  20   mediation, and the result of that is that some of the

21   discovery has been stalled, so I think as your Honor put

22   it earlier, if you're not mediating, you're moving into

23   litigation, so the schedule contemplates what litigation

24   would look like against entities that do not opt into

25   the mediation program.

1            Now, the schedule that the PSC has provided

2      here is not meant to replace existing CMO-6, which had

3      several other substantive provisions in it, but rather

4      would amend only those dates that are included in the

5      new schedule.  We think that's clear, however, if the

6      Court would like a single CMO that contains everything

7      as the operative case management order, we can certainly

8      amend it to do that.

9            In terms of the schedule itself, the

01:42PM  10      plaintiffs' steering committee undertook to reach out to

11      all defendants.  That includes NECC, the affiliated

12      defendants, the unaffiliated defendants, and also

13      nondefendants, pain clinics and others who had filed

14      limited notices of appearance in the MDL for the

15      purposes of quashing or objecting to subpoenas, so that

16      is to say, your Honor, we cast a very broad net with

17      this, and we sought input from anyone to speak with us

18      about it.

19            We held a very productive I think meet and

01:42PM  20      confer on the Monday of this week in an effort to put

21      together a joint submission to the Court.  We received

22      some comments during that meet and confer, also some

23      e-mail traffic afterwards.  The schedule is an effort to

24      accommodate all of the comments that we have received to

25      date.  I won't say though that anyone signs off on the

1    schedule.

2           I thought as of this morning that we had an

3    agreement with NECC, I thought until we walked into this

4    courtroom, frankly, that we had an agreement with NECC

5    and the affiliated defendants as to the dates set forth

6    in the schedule and the provisions included in the

7    schedule.

8           I have been informed, and I will, of course,

9    let the affiliated defendants speak to this directly,

01:43PM   10    but I had made a few last minute tweaks to the schedule,

11    meaning I had added a footnote stating plaintiffs'

12    position in an area, and I also had wordsmith things to

13    take out a reference saying "this does not pertain to

14    NECC or the affiliated defendants," in some places to

15    add a single line item, which is item Number 2 saying

16    that certain deadlines do not apply to NECC.

17           I understand that counsel for NECC and the

18    affiliated defendants may have some objections to those

19    changes.  I don't understand them to be substantive, and

01:44PM   20    it seems like something that can be resolved between the

21    parties, but I would let them speak to how they wish to

22    proceed.

23           THE COURT:  All right.  Let me ask some

24    questions.  Again, I read this quickly and right before

25    the hearing.  As I understand it, what the plaintiffs'

 1    steering committee contemplates is that there will be

 2    some discovery of plaintiffs "for purposes of

 3    determining bellwether cases," that that gets whittled

 4    down to six for case specific discovery, presumably

 5    finalizing six cases, and that that gets narrowed again

 6    to two.

 7            Would those be necessarily Massachusetts

 8    cases, in other words, without consent, I don't think I

 9    have the power to preside over the trial of a case

01:45PM  10    arising in Nashville, Tennessee or Traverse City,

11    Michigan, right?  Don't I have to spin those to the

12    districts in which they were filed once pretrial matters

13    are concluded?

14            MS. DOUGHERTY:  Your Honor, Kim Dougherty on

15    behalf of the plaintiffs' steering committee.  We do

16    anticipate a further case management order that will

17    deal specifically with a bellwether selection and the

18    criteria for that.  We're going to negotiate that with

19    the defendants.  What we decided to do on the call on

01:45PM  20    Monday was to revisit the specifics of the bellwether

21    criteria and the selection categories and how we reach

22    those, whether they be cases that were directly filed in

23    the MDL or not.

24            We are going to discuss that.  I think your

25    initial reaction that cases will be transferred back to

1    the transferor court is exactly right, however, we are

2    going to confer after we know on September 23d who is

3    actually subject to this new order.  We're going to

4    confer with those potential defendants and finalize and

5    come up with a bellwether case management order where we

6    set forth the criteria for selection.  This is just to

7    earmark deadlines for when that case specific discovery

8    will start, but we will address the issues, particularly

9    those types of questions in another separate CMO for

01:46PM    10    bellwethers.

11              THE COURT:  All right.  But won't all fact

12    discovery from plaintiffs be case specific, in other

13    words, the plaintiffs haven't acted jointly, right?

14              MS. DOUGHERTY:  That's right, your Honor.

15    The way that the schedule is set forth right now will

16    contemplate that the plaintiffs will produce discovery,

17    a plaintiff, either a profile form or some sort of fact

18    sheet that we negotiate with the defendants which will

19    also be some records that will be produced.

01:46PM    20              Usually the way that that's set forth, your

21    Honor, and also will be in another CMO, would be 60 days

22    after the date of filing.  The plaintiffs normally will

23    produce a profile form and medical records.  What we've

24    set forth here is the cases that are on file that want

25    to be considered for the bellwether selection would have

1    a deadline for producing those plaintiff profile forms

2    and the information that would be necessary to do the

3    selection of those bellwethers.

4         MS. PARKER:  Your Honor, if I may, I believe

5    you asked the question of whether cases that were not

6    filed in Massachusetts could be included in the

7    bellwether pool.

8         THE COURT:  Without consent.

9         MS. PARKER:  Without consent, and the

10   concept is with consent, they could be so that

11   plaintiffs could elect to have their cases tried here,

12   and that is something that has been done certainly in

13   other MDLs.

14        THE COURT:  Then fact discovery of

15   unaffiliated defendants and nonparties.  Again, I'm just

16   trying to conceptualize all of this.  Is that largely

17   physicians, pain clinics and the like?  What else would

18   fall in that category?

19        MS. DOUGHERTY:  Yes, your Honor, and other

20   potential national defendants such ARL if they aren't

21   inclined to enter the mediation program, other potential

22   defendants such as the installer of the clean room, the

23   designer, other folks who do not opt into the mediation

24   program, so, again, we decided we could revisit some of

25   those issues when we actually know who those potential

1   parties are, but, yes, it would include the clinics and

2   physicians as well.

3           THE COURT:  Now, what is the NECC and the

4   affiliated defendants, what is at least the PSC's

5   expectation as to how that discovery is going to play

6   out?

7           MS. PARKER:  If it becomes necessary to take

8   formal discovery of NECC and the affiliated defendants,

9   and I don't mean to be suggesting to the Court now that

01:48PM  10  that is the case, if it were necessary, then we would

11  need to revisit that.  This case management order does

12  not contemplate that.

13          After having many conversations with the

14  trustee and NECC and the affiliated defendants, the

15  agreement that was struck is between the PSC and the

16  affiliated defendants in this order was that we would

17  agree to extend the stay of discovery against NECC and

18  the affiliated defendant for a month but that we would

19  revisit it at the subsequent status conference, and

01:49PM  20  actually you'll see that photo note 1 in the case

21  management order, which I referred to earlier, indicates

22  that the plaintiffs' steering committee's intention is

23  to move to lift that stay if we are not satisfied with

24  the developments at the time of the October status

25  conference, and in fairness to the affiliated

 1    defendants, that footnote was added later on, and, of

 2    course, they have not agreed to it.

 3              THE COURT:  All right.  Then explain to me

 4    what you mean by common experts as opposed to individual

 5    experts.  In other words, normally even with a

 6    pharmaceutical, I guess this is a form of a

 7    pharmaceutical perhaps, but, you know, it has an

 8    individualized reaction on a particular patient.  I

 9    presume each case is going to have to have individual

01:50PM  10    experts, and what are the common experts?  What types of

 11    experts would be common experts?

 12              MS. DOUGHERTY:  Your Honor, the common

 13    experts are the generic experts that we contemplate will

 14    have to do primarily with liability and also sort of a

 15    generic causation expert that in fact the contaminated

 16    lots could cause fungal meningitis, and then the case

 17    specific discovery that is later contemplated where the

 18    expert discovery is set forth would be that in fact in

 19    this case, Mrs. Smith, it caused her fungal meningitis.

01:50PM  20              THE COURT:  Right.

 21              MS. DOUGHERTY:  So the idea will be in terms

 22    of clinics if we have to move forward against clinics,

 23    we're going to have to produce generic expert reports

 24    that would say, for example, this clinic, Joe's clinic

 25    in Michigan was negligent for the variety of reasons

 1    that they didn't properly store the product, they didn't

 2    properly evaluate New England Compounding Center, they

 3    didn't do the due diligence that they should have done,

 4    that's sort of a generic one that would apply to all the

 5    plaintiffs that are subject to that clinic, and then the

 6    case specific stuff that will come later has to do more

 7    with causation and causation of the injury in that

 8    particular case.

 9              THE COURT:  All right.  Finally, just to

01:51PM 10   make sure I understand, by bellwether case, I assume you

11    mean cases that for one reason or another are deemed to

12    be representative or otherwise appropriate to go first

13    so as to more or less set precedent, if we get that far,

14    as to what the cases are going to look like and maybe

15    what the settlement value is perhaps; is that the idea?

16              MS. DOUGHERTY:  That's exactly right, your

17    Honor.  And primarily when it starts off, you know, you

18    have plaintiffs are going to pick three, and the

19    defendants will pick three, and from there we narrowed

01:52PM 20   to the two that could potentially be tried together if

21    your Honor is inclined or one after the other.

22              MS. PARKER:  There are two features, your

23    Honor, about the schedule that I would like to bring to

24    the Court's attention.  They are not disputed, so I'm

25    not addressing them for that reason, but I think it may

1    be helpful to the Court to explain why we are doing

2    certain things, so you'll see that we contemplate that

3    defendants will file answers to complaints in states

4    with one-year statute of limitations by September 25th

5    of 2013.  We then have a separate answer date later on

6    in time for plaintiffs from other states that don't have

7    a one-year statute of limitations, and the purpose for

8    that bumps up against something that we addressed with

9    your Honor in the context of the mediation order.

01:52PM    10            THE COURT:  I thought there were only three

11    states, but, anyway, there's five, but go ahead.

12            MS. PARKER:  I may have to defer to someone

13    else in the PSC as to how we got the five.

14            MS. DOUGHERTY:  Your Honor, there are three

15    states that we believe have folks who have been

16    infected; however, we were just being cautious by

17    putting in all of the states that could apply, for

18    example, Ohio doesn't have a statute of limitation of

19    one year, but it has a statute, a product liability

01:53PM    20    statute that triggers something around one year, so we

21    were just being overly cautious there.

22            THE COURT:  Okay.

23            MS. DOUGHERTY:  For example, Kentucky, while

24    there might not be a clinic there, some folks went to

25    clinics in other states, so they're from Kentucky, and

1    we were just being overinclusive there.

2              MS. PARKER:  So the information that we are

3    primarily concerned with receiving for those one-year

4    states is an issue that you dealt with in the mediation

5    context, which is the identification of entities that

6    may have comparative fault because the one-year statute

7    of limitations may prevent claims from being asserted

8    against those individuals, so we would like to know them

9    now without waiving the right to pursue civil actions

01:54PM  10   against them, if appropriate.

11             The second feature I would draw your

12   attention to, your Honor, is footnote 2, and this is

13   mostly by way of informing the Court about something

14   that has happened in a few instances.  In a few

15   instances, I believe only in Tennessee, but I may be

16   mistaken about that, defendants have filed substantive

17   motions, potentially dispositive motions, in the

18   district court or the state court in which an action was

19   initially filed before the action has been swept up and

01:54PM  20   transferred to this MDL either as a result of your

21   Honor's decision on transfer relating to the bankruptcy

22   or by the JPML panel.

23             So, footnote 2 is our effort to address

24   that.  We suggest that the Court, to the extent they are

25   traditional Rule 12 or Rule 56 motions, suspend the

1    timing to respond to those motions and track it with the

2    timing set forth in this order and for other motions,

3    and that's a broad bucket, I realize, that the parties

4    inform the Court about those motions that they have been

5    filed and that they've made their way to this Court so

6    the schedule can be addressed, if appropriate.

7                THE COURT:  On that, I think the schedule

8    may be more languid than I might prefer.  I mean, one of

9    my concerns all the way along is somebody is improperly

01:55PM  10   or for one reason or another named in a lawsuit, and now

11   they're, you know, like a cork bobbing down the stream

12   here, and they're caught up with everything else, and

13   Rule 12 and Rule 56 gives them a vehicle for saying we

14   should be dismissed, and I'm somewhat reluctant to -- I

15   remain a little concerned about having not dealt with

16   those issues already and have some concerns about

17   letting it go all the way to next summer at the earliest

18   before I resolve any of those issues.

19                One problem is I don't know the universe of

01:56PM  20   those motions, frankly I haven't even seen them, so I

21   don't even know what they cover, but in the ordinary

22   course, people file, as you know, Rule 12 motions or

23   early Rule 56 motions for a variety of reasons, and some

24   of them, for all I know, is meritorious, but I'll put

25   that on hold for the moment.

1          MR. CHALOS:  Your Honor, may I be heard on

2     this?

3          THE COURT:  Yes.

4          MR. CHALOS:  I'm just going to stand here.

5          THE COURT:  Yes.  Could you identify

6     yourself for everyone on the phone.

7          MR. CHALOS:  Mark Chalos on behalf of the

8     plaintiffs' steering committee.  We were sort of talking

9     about that in the abstract, and maybe I can give you

01:56PM  10     some information that may, you know, put some more

11     context around that.  They're in at least one case in

12     the Federal District Court and in one case in the state

13     court in Nashville, Tennessee, the defendant clinics

14     have filed summary judgment motions on issues that are

15     if not global, certainly recurring among the various

16     Tennessee cases.

17          They would not be, I think -- I can't think

18     of any of the grounds that they've asserted that would

19     be dispositive vis-a-vis any defendant, in other words,

01:57PM  20     it would not end the case against those defendants.

21     They involve the interplay of some Tennessee statutes.

22     They involve a recurring fact pattern that we're seeing

23     in a number of these cases.  They wouldn't end the case.

24     Our concern is these are issues that are going to touch

25     a number of cases, some of which haven't even yet been

1    filed.

2              THE COURT:  That may be true, okay.  At the

3    other extreme, there may be some -- I literally don't

4    know what these motions are.  There might be some

5    defendant out there who said, you know, we were never

6    properly served, you don't have personal jurisdiction

7    over me, you named the wrong entity, you know, the kinds

8    of things that normally come up in Rule 12 motions.  I

9    don't know if there's anything like that.  Right now

01:57PM  10   they're all being thrown into the same bucket.

11             MR. CHALOS:  Right.

12             THE COURT:  And I express no opinion,

13   obviously.  I don't want to get into the details now

14   about the issues you raised out of Tennessee.  You may

15   be right, you may not be, I don't know, but the Rules of

16   Civil Procedure provide for, you know, parties who, for

17   whatever reason or another, have been wrongly named or

18   wrongfully served to get out early, and I want to make

19   sure that that right is not being entirely abrogated

01:58PM  20   here.

21             MR. CHALOS:  Sure.  There's one case that

22   was brought to my attention, it's not my case.  It's the

23   Carman v. Ameridose case.  It's subject to conditional

24   transfer order 17, so it will be here if it's not

25   already here, it will be here.  It's C-a-r-m-a-n.  That

 1   case, there was a motion for summary judgment filed by

 2   the clinic defendants a week or two or maybe more.  It

 3   was filed in the period between the case being initially

 4   filed in the Middle District of Tennessee.  It may have

 5   even been filed after the confidential transfer order

 6   was issued, but I believe it was filed after notice went

 7   to the JPML of that case being a tag-along.  I'm not

 8   sure the strategic reason why the clinic filed it then,

 9   but they did.

01:59PM   10          We're coming up relatively soon under the

 11   federal rules the deadline for the plaintiffs to

 12   respond, and they've asked us as a PSC for guidance

 13   about what they ought to do.  Again, these are global

 14   issues that are recurring, and I don't believe it would

 15   end the case against anybody.

 16          THE COURT:  I don't have a problem with

 17   staying certain responsive deadlines while we're still

 18   in the process of sorting it out.  If I understand the

 19   proposal, this said that, you know, we're just going to

01:59PM   20   put everything off until next summer and wrap it up with

 21   the more global and significant summary judgment

 22   motions, and my guess is some of those ought to be

 23   disposed that way and others perhaps not, I don't know.

 24          MR. CHALOS:  Mr. Ellis just reminded me in

 25   the current schedule, the motions to dismiss would be

1    heard in December or filed by December of this year.  I

2    understand that doesn't alleviate your Honor's concern

3    in its entirety.

4         With respect to the Carman case, now I

5    expect that they'll be other motions for summary

6    judgment filed.  For whatever reason, these clinics have

7    decided they're going to take the strategy of filing in

8    that short interim where the case is sitting in the

9    Middle District of Tennessee.  The one year statute is

02:00PM  10   coming.  There's a bunch of filings happening over the

11   next week or two.

12        I expect they're going to use that strategy

13   in other cases, so at the very least, we'd ask your

14   Honor for an order putting those motions, the response

15   dates for those motions, for those plaintiffs off until

16   we can get some unified schedule that makes sense for

17   everybody.

18        THE COURT:  All right.  Again, it may --

19   you're calling it a strategy.  It may be something that

02:00PM  20   they have a right to do, I have no idea, but I would

21   like this to be orderly.  I want it to proceed with all

22   deliberate speed, but I don't want cases that ought to

23   be disposed of, or parties, more accurately probably,

24   that ought to be disposed of early to get caught up with

25   everything and to remain in litigation for years.

1          MS. PARKER:  If I may, your Honor?

2          THE COURT:  Yes.

3          MS. PARKER:  Perhaps -- well, my suggestion

4    would be that the plaintiffs' steering committee

5    identify the motions that we are aware of that have been

6    filed to fit into this bucket and that we propose to you

7    a solution before the next status conference for how we

8    can address those and your Honor's concerns about

9    letting defendants who are not properly named in the

02:01PM 10   case out of the case at an early time.

11         THE COURT:  You're not necessarily going to

12   reach agreement on the substantive merits, but I think

13   that's a good plan for at least setting up a timetable,

14   and that would include conferring with the relevant

15   parties.  I mean, for all I know, you know, some state

16   has a statute that grants immunity to a pain clinic.  I

17   don't know what any of these underlying issues are.

18         MS. PARKER:  Yes, your Honor.  We will do

19   that.  We would ask though that perhaps the minute entry

02:02PM 20   for the status conference could indicate that the

21   deadline will be rolled over until the next status

22   conference, at least, so that we can address that.

23         THE COURT:  All right.  I would expect to do

24   that.

25         MS. PARKER:  Thank you, your Honor.

```
 1              MR. CHALOS:  Thank you, your Honor.

 2              THE COURT:  Who wants to take the lead in

 3    responding to this proposal?

 4              MR. RABINOVITZ:  Your Honor, I will,

 5    Dan Rabinovitz representing Medical Sales Management,

 6    Inc.

 7              THE COURT:  All right.  Mr. Rabinovitz.

 8              MR. RABINOVITZ:  In essence, your Honor,

 9    just like the Court, the affiliated defendants and I

10    believe also the trustee were only able to read what was

11    filed about an hour before the hearing today quickly, as

12    you put it.  We had spent some time in a meet and confer

13    call and then a second call between me and one member of

14    the plaintiffs' steering committee, and we had

15    indicated, when I say we, I mean the affiliated

16    defendants, had indicated that there was a particular

17    form of that schedule that we would not object to.

18              When that call ended, we believed or I

19    believed that we had an agreement and everything would

20    be fine, and then a different document was filed this

21    afternoon about an hour before court.  What I propose is

22    rather than necessarily getting into the back and forth

23    of who filed what when in front of this Court, which I

24    think probably should be avoided, if possible, if you'd

25    give us till tomorrow morning to file our version of it,
```

1    we'd appreciate you considering that version instead.

2    It's drafted, I just need to get it electronically

3    filed.

4            In essence, both footnotes were not in.

5    There are two footnotes in their schedule.  Neither

6    footnote was in the version that we had indicated we

7    would not object to, and also while some might call it

8    wordsmithing, the affiliated defendants felt strongly or

9    feel strongly that the way we individually and each

02:03PM    10   different category in each box, we had some very, what

11   we thought was very clear language making the order much

12   tighter and much clearer.

13           We think your Honor would be more

14   comfortable signing an order like that, and so if you'd

15   just give us till, I don't know, roughly 10 in the

16   morning to file our version, that would be great.

17           THE COURT:  All right.  I certainly have no

18   problem with that.  Is that enough time, till 10 in the

19   morning?

02:04PM    20           MR. RABINOVITZ:  Absolutely, yeah.  I don't

21   know if Mr. Gottfried on behalf of the trustee wants to

22   add anything.

23           MR. GOTTFRIED:  Your Honor, just briefly, I

24   absolutely agree with what Mr. Rabinovitz has said.

25   Speaking for the trustee, we participated in the meet

1    and confer on Monday.  Prior to the meet and confer, we

2    had a draft from the PSC which did not include these

3    footnotes.  After that meet and confer, Mr. Rabinovitz

4    took the laboring work to send a revised document, which

5    we believe was consistent with what we agreed to in the

6    meet and confer.  That was sent on Tuesday at about 4:30

7    or so.

8              Subsequent to that, Mr. Moore confirmed that

9    if that was what was filed, he was in agreement with it,

02:04PM  10   and then today at about noon, we got a document that was

11   not that document.

12             So I think Mr. Rabinovitz's suggestion that

13   we file the document that we had provided to them on

14   Tuesday, which we thought was agreed to, for the Court

15   to consider makes sense to the trustee.

16             THE COURT:  Why don't we do this.  I'll give

17   you till noon, I'll give you an extra couple of hours to

18   scrub for typos or otherwise look carefully at it, and

19   you can either file that document or file whatever

02:05PM  20   response you think is appropriate to this.

21             I don't want to get into the back and forth

22   of who did what when, I just want to hear the relevant

23   positions of the parties, and because we have some

24   deadlines coming up on us, I think I need to dispose of

25   this relatively quickly.  That's the only reason I'll

1    even keep it on as tight a schedule as it is.

2          MS. PARKER:  To reassure your Honor, I think

3    that both sides of this can agree, we all agreed to the

4    dates, so this is not a question of the dates that are

5    proposed being different as between the parties, if that

6    provides you some solace.  I'll also note that this gets

7    back to PSC's issue that we had raised with you before,

8    NECC and Ameridose are either settling, or they're not,

9    right, and if they're settling, then, of course, none of

02:06PM   10   these later decisions apply to NECC or the affiliated

11   entities, so for what's that worth, your Honor.

12          MR. FERN:  Judge, if I may.

13          THE COURT:  Yes, Mr. Fern.

14          MR. FERN:  I think I have to correct

15   Ms. Parker here.  NECC is covered by the automatic

16   bankruptcy stay that comes out of Judge Boroff's

17   courtroom, and despite her comments here that they would

18   move to lift the stay and revisit NECC's obligations to

19   answer and do other discovery, we have a statutory stay

02:06PM   20   that covers NECC.

21          Truthful, that does not account for the

22   affiliated defendants, one of which Mr. Rabinovitz

23   speaks for, but even on the first line with the

24   discovery of NECC and affiliated defendants stayed until

25   further order of this Court, unless the Court decides to

1    withdraw the reference, which obviously you have an

2    ability to do, the stay is in effect against NECC.

3             THE COURT:  I assumed as much, and I assumed

4    this was a somewhat imprecise way of describing that

5    process.

6             MR. FERN:  I just wanted to bring it to the

7    Court's attention.  I have another suggestion, if the

8    Court is willing to entertain it.  On behalf of MSM and

9    Mr. Gottfried, they discussed getting a counter order to

02:07PM  10    you by tomorrow noon.  Since the parties -- this came to

11    us on -- we had our first meeting because of the Jewish

12    holidays Monday noontime.  We felt we had reached

13    agreement.  What got filed was not consistent with what

14    we had agreed to.

15             Perhaps if the Court would give us an

16    opportunity to go back and meet and confer tomorrow or

17    Monday, perhaps we can get an order to the Court that

18    would not require the Court to make a decision between

19    the PSC's version and/or the defendant's version, and we

02:08PM  20    can agree to an order which would be jointly submitted,

21    and the Court would not have to make a decision on that.

22             THE COURT:  Is the holiday on Saturday?

23             MR. FERN:  The holiday begins sundown Friday

24    through Saturday, correct, Judge.

25             THE COURT:  All right.  Ms. Parker, what's

1    your response to that?

2              MS. PARKER:  We are always willing to meet

3    and confer, your Honor.  I think the differences here

4    are so small that filing two competing orders is not

5    going to be difficult for the Court, but truly we are

6    more than happy to sit down again and go through it.

7              THE COURT:  All right.  I'm not sure I see a

8    whole lot of difference between tomorrow at noon and say

9    Monday.  Why don't I extend that deadline to -- why

02:08PM  10    don't we say Monday at close of business five o'clock

11    eastern time.  You don't have to agree, but it will give

12    you a window to do that, but I am going to have to turn

13    this around quickly, I think, in light of where we are

14    on the timetable.

15             MR. FERN:  I think that deadline, Judge,

16    will keep the pressure on and give us sufficient time to

17    hopefully get this resolved between the sides.

18             THE COURT:  All right.  I think I've been

19    ignoring people on the phone.  Mr. Blumberg from

02:09PM  20    New Jersey, did you want to be heard on this topic?

21             MR. BLUMBERG:  Not on this topic, Judge.  I

22    have some other issues with respect to some of the

23    requirements for discovery, one being whether the

24    unaffiliated defendants would be entitled to discovery

25    with respect to NECC in light of our present claims

1    against NECC, and I'm not sure how that is actually

2    addressed in the case management order as well as the

3    requirements for affidavits of merit and how those are

4    going to be addressed with respect to the case

5    management order.

6              THE COURT:  Let me speak generically.  As

7    Mr. Fern points out, NECC is subject to the protection

8    of the bankruptcy court and the automatic stay.  Unless

9    I withdraw the reference, it's Judge Boroff's decision

02:10PM  10   at this stage, at least in the first instance.

11             I certainly expect that some discovery in

12   some form will be forthcoming from NECC if we're in

13   litigation mode at some point, but how we get from here

14   to there remains to be seen, and I hope that as we

15   discussed some months ago that whatever discovery is out

16   there has been preserved.

17             Beyond that, I'm not sure I know what to

18   say, but I don't think I have the power, unless I

19   withdraw the reference, to order NECC to do anything in

02:10PM  20   this litigation.

21             MR. BLUMBERG:  Understood, and I guess my

22   second issue, Judge, was that in some jurisdictions, and

23   New Jersey being one of them, affidavits of merit are

24   required, and there's really no provision in the case

25   management order when they are to be supplied and if

1       they are to be supplied.  I'm sure New Jersey is not the

2       only jurisdiction that's an issue.

3                   MS. DOUGHERTY:  Your Honor, if I may on that

4       issue, during the meet and confer on Monday, we did

5       discuss this issue related to the merit affidavits, and

6       the plaintiffs' steering committee was left with the

7       understanding that the folks in New Jersey were going to

8       confer and get back to us as to whether they would waive

9       those requirements and instead agree to the schedule

02:11PM  10      that is set forth in the proposed order, which sets

11      forth dates for expert disclosures, so that is the

12      understanding we have.

13                  We are waiting to hear back from the folks

14      in New Jersey to see whether or not they will waive that

15      requirement, given the fact that the disclosures are due

16      shortly, you know, after they're going to have a good

17      sense of what's going to be on file.

18                  THE COURT:  All right.  Let's get back on

19      track with the agenda.  Anything else on 3 and 5?  Let's

02:12PM  20      go to Number 4, multi-plaintiff complaints.

21                  MR. GROSSMAN:  Your Honor.

22                  THE COURT:  Yes, I'm sorry, who's this?

23                  MR. GROSSMAN:  I'm sorry, this is

24      Steve Grossman on behalf of Inspira in New Jersey.

25                  THE COURT:  Yes.

1          MR. GROSSMAN:  I wanted a clarification with

2     respect to the discovery that is being put on hold.

3     From the representations made in court today, it

4     suggests that there's an agreement between the PSC and

5     the unaffiliated defendants not to pursue discovery.

6          My point is as if indeed we opt to not opt

7     into the mediation and the PSC decides to move forward

8     with discovery against my client, we should be entitled

9     to pursue discovery against the unaffiliated defendants

02:12PM  10     as well.  I'm not sure that this order is clear on

11     whether or not we have that right to do so, and I

12     believe we do.

13          MS. PARKER:  The PSC has no agreement to

14     stay discovery against the unaffiliated defendants.

15          THE COURT:  I think the proposal says it

16     will begin forthwith.

17          MS. PARKER:  Exactly, that's correct, your

18     Honor.

19          MR. GROSSMAN:  Sorry, I should say the

02:13PM  20     affiliated defendants.  We should be able to pursue --

21     my mistake.  We should be able to pursue discovery

22     against the affiliated defendants.

23          THE COURT:  All right.  Ms. Parker, do you

24     want to respond to that?

25          MS. PARKER:  The PSC has an agreement on

1   behalf of plaintiffs with the affiliated defendants and

2   NECC.  We have not undertaken, nor would we, to extend

3   that to apply to anyone else.  There are practical

4   reasons, your Honor, why it may make sense to do so, but

5   we have not asked the Court to do that, and we are not

6   aware that anyone else has taken a position on that.

7            MR. FERN:  Judge, you also have a stay

8   order, a mediation order in Judge Boroff's courtroom

9   which covers all 19 affiliated defendants while good

02:13PM   10  faith negotiations are taking place with the Trustee

11  Moore, and we heard Mr. Gottfried just report to the

12  Court that good faith negotiations are going on.  Truth

13  be told, that order does not concern or did not involve

14  these unaffiliated defendants, but the same rationale

15  should apply while they're negotiating in good faith.

16           THE COURT:  I mean, to cut to the chase, my

17  expectation is I think -- my hope is that the landscape

18  is going to look somewhat difference in 30 or 45 or 60

19  days, and I said it before, I'll say it again, if we

02:14PM   20  aren't going to mediate it or settle it, I want to get

21  going on that.  I don't want this case to be still

22  pending 10 or 15 or 20 years from now, but I'm still

23  prepared at this stage to take it a step at a time, and

24  it seems to me that at a minimum more or less keeping

25  things on hold for another 30 days makes sense to me.

```
 1              All right.  Number 4, multi-plaintiff
 2    complaints.  Who wants to take that up?
 3              MR. MORIARTY:  Your Honor, it's
 4    Matt Moriarty for Ameridose.  There are cases that have
 5    been filed.  I know the Adair case was filed in Michigan
 6    where there are 20 or 30, I've forgotten, as I looked at
 7    that so long ago, nonrelated-plaintiffs tied together in
 8    one complaint.
 9              We had already negotiated CMO Number 6 with
10    the PSC which says that you can't do that.  Now, I know
11    their technical point is that the case was filed in
12    Michigan, not directly into the MDL, so CMO-6 should not
13    technically apply, but I think it is a violation of the
14    spirit of the order to try to do indirectly which you
15    cannot do directly, including by members of the PSC who
16    should know better, and it shouldn't be prohibited.
17              There are reasons why we negotiated it into
18    CMO Number 6.  It was not a hotly contested negotiation
19    on that point because it is standard in MDLs to have
20    such a clause, so --
21              THE COURT:  What are the short --
22              MR. MORIARTY:  And we are very sensitive, by
23    the way -- I'm sorry -- to their -- everybody is trying
24    to conserve resources, so I am very sensitive to the
25    plaintiffs' lawyers not wanting to file 30 filing fees,
```

1    and if there's a work-around that we could do

2    administratively with the clerks of courts, great, but I

3    don't know if such an order that can be accomplished, so

4    we object to these and are looking for some guidance on

5    whether we should move to sever them here or whether

6    there is some way to work this out.

7            THE COURT:  In the short term, what is the

8    harm other than the lost revenue to the Court, in other

9    words, I can't imagine that this would be deemed one

02:17PM  10   case for the bellwether case proposal, for example.  I

11   mean, if it comes to that, I will certainly sever the

12   claims of individual unrelated plaintiffs.

13           MR. MORIARTY:  In the short term --

14           THE COURT:  Yes, in the short term.

15           MR. MORIARTY:  In the short term, there

16   probably is none, but sometimes if you don't bring these

17   to light, two things happen, you forget about them, and

18   you have to fix them later, or other plaintiffs' lawyers

19   embolden are to do the same thing, and your problem

02:17PM  20   compounds.

21           THE COURT:  I don't have enough information

22   before me to know whether or not anything improper

23   occurred.  I certainly would entertain a motion to

24   sever, and if you want to get that process rolling or

25   anyone else does and do the meet and confer, I'd be

1    happy to take it up.

2              You know, I'm aware in other contexts in

3    which lawyers in order to avoid filing fees have

4    aggregated cases, and we've severed and dismissed all

5    but the lead plaintiff forcing the lawyer to refile and

6    paying the, whatever it is, $400.  I've lost track of

7    how much it is.  Anyway, it's not cheap to file a new

8    case, but I express no opinion on that here.  And,

9    again, I'm proceeding on the assumption these are

02:18PM  10   unrelated plaintiffs, not a husband and wife, for

11   example, something of that nature.

12             So for present purposes, I'll just

13   acknowledge the existence of the issue, and I will

14   certainly not discourage anyone from taking it up and

15   attempting to resolve it.  Does anyone else want to be

16   heard on that issue?

17             MR. LIPTON:  Your Honor, Marc Lipton.  Since

18   the Adair complaint is my complaint, I think I should

19   just say that it's my view that there's nothing

02:18PM  20   improper.  In fact, it is fully proper under both the

21   CMO and FRCP-20, but when the issue is briefed or

22   motioned up, we'll respond.

23             THE COURT:  Okay.  If we get to that point,

24   I'll take it up, and whatever the rules are, hopefully

25   is what I'll follow.  I try.  It's harder than it looks.

1              [Laughter]

2              THE COURT:  All right.  Number 6, NECC

3    informal production of documents.  Ms. Parker.

4              MS. PARKER:  NECC's informal production is

5    ongoing.  There have been some issues.  We will address

6    them with Mr. Fern, and if need be, we will present them

7    to the Court before the next status conference.

8              THE COURT:  And tell me what this informal

9    production consists of at this stage.  I assume what

02:19PM  10   that means is there's no document request or

11   interrogatory but that NECC in order to expedite things

12   is making documents available; is that the idea?

13             MR. FERN:  Judge, if I can.

14             THE COURT:  Yes. Mr. Fern.

15             MR. FERN:  Based upon a letter request that

16   was issued by the PSC in conjunction with the trustee

17   back in March and April of this year, we negotiated

18   terms and agreed to produce 24 categories of documents

19   that we had obtained as part of our collection process.

02:20PM  20             Since that time, we continued to review and

21   produced approximately on a weekly basis a rolling

22   production, as we represented to the Court before.  Up

23   to this date, your Honor, I'm happy to report on behalf

24   of the trustee that we have produced 1,852 documents

25   which encompass 24,137 pages that have been produced

1    either via a CD-rom and using new technology via a file

2    transfer, FTP, that members of the PSC and others who

3    were authorized to get the documents again on a weekly

4    basis.

5              In addition to those documents, the

6    documents which contain HIPAA material consistent with

7    the last amended protective order that we submitted to

8    the Court that have either patient names or patient

9    healthcare information, we produced an additional 2153

02:21PM 10   documents which encompass 9656 pages.  Those documents

11   were sent directly to Rust Omni, the repository that the

12   PSC had designated for receipt of HIPAA material.

13             So in all, we've produced almost 4,000

14   documents, almost 35,000 pages, which encompass almost

15   35,000 pages.  Ms. Parker's comment that there are some

16   problems is the very first time I'm hearing about them.

17   We will listen, we will attempt to resolve the problems,

18   but I was not aware of any issues.

19             We will continue to make rolling

02:22PM 20   productions.  The last one went out earlier this

21   morning, and the last one this morning actually was on

22   an amended request from members of the PSC for some

23   additional documents which were not part of the initial

24   negotiation.  We thought that request to be reasonable.

25   The trustee consented to them, and those amended --

1    those additional documents were produced this morning.

2              THE COURT:  All right.

3              MR. BLUMBERG:  Excuse me, Judge, this is

4    Jay Blumberg from New Jersey.

5              THE COURT:  Yes.

6              MR. BLUMBERG:  Would the unaffiliated

7    defendants have access to those records?

8              THE COURT:  Does this lead into Number 7?

9              MS. PARKER:  No.

02:22PM  10              MR. FERN:  No, Judge, it doses not lead into

11    Number 7.  The initial -- it's not my place to tell

12    Mr. Blumberg yes or no, especially to a fellow person

13    from New Jersey, but the agreement --

14              THE COURT:  Careful, don't go too far down

15    that path.  My last two law clerks were both from

16    New Jersey, but they have moved on, and so I have

17    non-New Jersey clerks at this point, so a warning to all

18    of you.

19              MR. FERN:  I hope they went on to greater

02:23PM  20    things after being tutored by you as your clerk, Judge,

21    but the original agreement with the PSC was that these

22    documents would be produced to members of the PSC and a

23    select few others, including Mr. Rick Ellis here in

24    Massachusetts and others.  There was some thought that

25    the PSC could do their job more effectively if the

1    people who had access to those documents were kept to a

2    minimum, and they were not made available to either

3    unaffiliated defendants, they were not even made

4    available to all the members of the PSC, only counsel to

5    the PSC, so we continue to operate under that goal.

6              Again, as the Court mentioned previously,

7    the stay as to NECC is in effect, so this is a

8    voluntarily production in an attempt to allow the PSC to

9    do their job to get to this mediation process hopefully

02:24PM   10   looking for a global resolution.

11             THE COURT:  Mr. Blumberg, I express no

12   opinion as to whether this distribution ought to be

13   wider.  Again, I don't think I have the authority to

14   order NECC to do anything.  I guess I would ask in the

15   first instance if you're not happy with the current

16   state of affairs to pick up the phone and try to

17   negotiate something different, and we'll take it from

18   there.

19             MR. BLUMBERG:  Fair enough, Judge.

02:24PM   20             THE COURT:  All right.  Anything else on

21   Number 6?  Number 7, record retrieval and

22   authorizations.  Ms. Parker.  I'm sorry, Mr. Moriarty.

23             MR. MORIARTY:  This has fallen to me.  So

24   throughout the winter when it looked like things were

25   going to pick up speed a little bit, Ms. Dougherty and I

1    and a few others were working on medical releases.  We

2    got very close.  The project then got stalled, and it's

3    recently been resurrected.  We think we're probably done

4    with the release itself in order to move on.  There are

5    some lingering issues that I don't think need to be

6    discussed today, but I think we're ready to move on.

7         I think what the problem now is is that the

8    way the defendants, and I assume this means affiliated

9    and non-affiliated, is that pursuant to this case

02:26PM 10    management schedule, it contemplates discovery, it

11    contemplates bellwethers.

12         I think inherent in that is that it should

13    contemplate actually getting these releases executed

14    back to defendants or a vendor who can then go out and

15    obtain the records and distribute them as appropriate,

16    whether it's through the Rust Omni site or otherwise, so

17    that they can be analyzed either by the unaffiliated

18    defendants who are engaged in mediation, the affiliated

19    defendants who are negotiating settlements separately,

02:26PM 20    unaffiliated defendants or others who may be litigating

21    and need to participate in the process of the

22    bellwethers.

23         The bottom line is these records need to be

24    obtained even if it's just for the purposes of the

25    bankruptcy court and the setting up of a claims facility

1    so it knows how to divide up this pie when that day

2    ultimately arrives.

3              So, it's my understanding that there's a

4    little bit of hesitance on the PSC to take the release

5    what we've negotiated to the next step and actually get

6    them signed and get a process in place promptly to do

7    this.  It's not an unwillingness to do it forever.  I

8    think it's a timing issue, so the defendants believe

9    this has to happen now, and I'll let the PSC speak to

02:27PM   10    their own position on it.

11              MS. PARKER:  Well, your Honor, this is the

12    first I'm hearing that Ameridose is interested in

13    pursuing the collection of medical records now.  We had

14    a fairly extensive meet and confer about how this case

15    ought to move forward.  We talked about plaintiff fact

16    sheets, which would include medical records, during our

17    meet and confer on Monday, so the PSC wasn't aware that

18    anyone from Ameridose wanted to do this.

19              We'll certainly talk about it.  I will note

02:28PM   20    though that, again, I feel like a broken record, so

21    forgive me, if the affiliated defendants are settling,

22    they have no dog in this fight.  They have no reason

23    that they need plaintiffs' medical records.  As your

24    Honor knows, medical record collection is a necessary

25    part of this case.  It's also an expensive part of this

1   case, and it's something that we think should be done

2   with great thought and care.

3            We have no interest in keeping information

4   from the defendants, but if the affiliated defendants

5   are going to be out of this case in 30 days, two months,

6   I'm not saying they are, but if that comes to pass, then

7   starting this process of collecting medical records and

8   expending great sums of money, doing that becomes hard

9   to understand why the affiliated defendants have an

02:28PM  10   interest in pushing that.

11            THE COURT:  Let me cut this short.  Putting

12   aside how we got to where we are today, it's hard for me

13   to see a scenario here, and maybe I'm missing something,

14   in which these claims ultimately get resolved.  I mean,

15   you say settling.  I assume you mean settling is

16   contributing a pot of money.  Someone has to decide how

17   that money in the pot is split up among claimants.  I

18   don't see how that process can't occur without the

19   collection of medical records and product

02:29PM  20   I.D. information at some level.

21            As I've been saying from the beginning, it

22   is cumbersome, as you know, you know, chasing down

23   healthcare providers for records, collecting them,

24   organizing them, all of that.  I'm not sure I see any

25   reason why that process ought to be delayed regardless

1        of who is asking for it, but I think the place to start,

2        and I think this is what I hear you both saying is you

3        need to talk among one another and see if you can agree

4        on some kind of protocol for going forward.

5                I mean, whoever is the person at the end of

6        the day who decides how this pot is to be divided,

7        surely they're going to need enough information to know,

8        for example, was the person actually administered an

9        NECC steroid, what happened to the person, what medical

02:30PM  10      consequences followed, you know, what is the prognosis

11       and all of that, and I don't see how you do that without

12       the relevant records.

13               MS. PARKER:  And we completely agree with

14       that, your Honor, and so let me make two points that I

15       hope to be clarifying rather than argumentative.  The

16       first is that the plaintiffs' counsel have been

17       collecting medical records for their own clients, and so

18       it is not as though we will necessarily be starting from

19       scratch when this process begins to unfold.

02:30PM  20              The second is that as your Honor recognizes,

21       in conjunction with an allocation in the bankruptcy or

22       perhaps a filing of proof of claim in the bankruptcy,

23       some medical records will likely be or may, certainly

24       may, if not necessarily need to be collected.  So the

25       concern from the plaintiffs' steering committee has

1    always been how do we reconcile all of this efficiently

2    in a way while being cost sensitive and cognizant of the

3    best way to move this case forward sufficiently.

4              THE COURT:  Which is why I'm issuing no

5    order right now, I'm simply acknowledging the issue.  I

6    think you ought to talk and begin working through these

7    issues, and I do have this residual concern that things

8    that are not collected tend to start to disappear, you

9    know, even medical records, so I don't want the delay to

02:31PM  10  be infinite.  Anything else on item Number 7?

11             All right.  Item Number 8 is pending

12   motions, motion to dismiss.  I continue to have these

13   pending.  The other day I pulled up from the computer

14   all of my pending bankruptcy matters and was reminded

15   that I have four or five motions to withdraw the

16   reference pending as well.  I guess this, too, will

17   remain on hold unless someone has a different view.

18             Is there something else anyone wants to take

19   up in that regard?  Yes.

02:32PM  20        MR. CIPORKIN:  Your Honor --

21             THE COURT:  I'm sorry, your name.

22             MR. CIPORKIN:  Ryan Ciporkin.  I represent

23   Alaunus Pharmaceutical.

24             THE COURT:  Yes.

25             MR. CIPORKIN:  I just wanted to make a few

1  points to this Court.  First of all, I did want to point

2  out an issue just as it pertains to this jointly

3  proposed agenda, and Item 8(a)(1) in the brackets, it

4  lists three different document numbers.

5           THE COURT:  Yes.

6           MR. CIPORKIN:  Indicating that there's been

7  three motions to dismiss that have been filed, but I did

8  want to indicate to the Court that Alaunus has filed 33

9  motions to dismiss by my count.

02:33PM  10           THE COURT:  It's only off by one order of

11  magnitude.

12           [Laughter]

13           MS. PARKER:  I guess I forgot the "e.g."

14           MR. CIPORKIN:  As Ms. Parker had indicated

15  to this Court, the majority of those motions were filed

16  with the district courts prior to the transfer and

17  consolidation in this MDL, so I just wanted to make sure

18  that this Court was aware that there's more motions on

19  the docket other than those three that are indicated in

02:33PM  20  item 8(a)(1).

21           THE COURT:  Again, just to be clear, if

22  Alaunus were to press the point and say, look, I want

23  these to be resolved, we don't think we're a proper

24  defendant, I want it teed up, and I'll resolve it.

25  Right now everything is kind of on hold while these

1    other things are happening.

2         MR. CIPORKIN:  Correct, your Honor, and so

3    that leads me to my second point is that, you know, I do

4    want to stay on.  This is an objection formally to

5    footnote 2 for the same reasons that Mr. Rabinovitz and

6    the trustee's counsel have indicated.

7         THE COURT:  All right.

8         MR. CIPORKIN:  And, furthermore, in light of

9    the PSC's agreement to extend discovery for another 30

02:34PM  10    days, Alaunus is willing to agree to roll over that

11    deadline for another 30 days as well, the deadlines to

12    respond to the motion to dismiss, that is.

13         THE COURT:  All right.  Let's turn then to

14    the bankruptcy proceedings.  I received yesterday or the

15    day before an assented to motion to defer consideration

16    of and stay appeal in all related motions.  This is

17    Dr. O'Connell's Pain Care Center appeal.  I had been

18    informally staying it.  I received a letter from I think

19    Dykema Gossett suggesting that I should do so, and it

02:35PM  20    has been in a state of suspended animation, so to speak,

21    ever since.  Who wants to take up this issue?

22         MR. GOTTFRIED:  I can take it up.

23         THE COURT:  Yes, Mr. Gottfried.

24         MR. GOTTFRIED:  I think, as you may know,

25    from the motion to stay, there has been an agreement in

1    principal subject to court approval to resolve the

2    appeal with respect to the notice requirements.  Those

3    papers were filed with Judge Boroff on Tuesday.

4    Judge Boroff has set that down for hearing on the 23d

5    along with other motions, and it is certainly the hope

6    of the proponents of that motion, which would be a

7    complete settlement of the appeal, that it will be

8    acceptable to Judge Boroff, and that appeal will be

9    moot.

02:35PM  10          THE COURT:  All right.  And would you need

11    anything from me other than granting of the assented to

12    motion to defer consideration and stay appeal pending

13    further developments in the bankruptcy court?

14          MR. GOTTFRIED:  I would think not, your

15    Honor.

16          THE COURT:  Does anyone else want to be

17    heard on that?  All right.  Does anyone on the phone

18    want to be heard on this?  I have Mr. Meisler from

19    Illinois, do you want to be heard on this?

02:36PM  20          MR. MEISLER:  Your Honor, I think counsel

21    summed up where we are nicely, and so I don't think

22    there's much further necessary to add.

23          THE COURT:  Ms. Humphrey from Michigan?

24          MS. HUMPHREY:  Nothing else, your Honor,

25    thank you.

1        THE COURT:  All right.  Under 9, we have

2   status of bar date motion, which I think we've addressed

3   and August 23d hearing.  Is there anything else to talk

4   about on the bankruptcy question?

5        MR. MOLTON:  Your Honor, David Molton for

6   the committee.

7        THE COURT:  Yes, Mr. Molton.

8        MR. MOLTON:  I just wanted to bring you up,

9   Judge Boroff will be having on the 23d the formal bar

02:37PM  10   date hearing.  Also noticed for that date is a motion

11   for contempt by the trustee and the committee jointly

12   with respect to parties who did not comply with

13   Judge Boroff's earlier interim bar date order, and what

14   I would like do is just give your Honor an update of

15   where we are with respect to the interim order with

16   respect to compliance by medical care providers and

17   what's left going forward for the contempt hearing.

18        Your Honor, we are pleased to say that we've

19   had 42 clinics fully comply with Judge Boroff's order

02:37PM  20   and another 16 in the process of complying.  As my

21   friend, Mr. Sternklar, and Mr. Meisler on the phone from

22   Skadden in Chicago advised, your Honor, an additional 24

23   medical care providers are subject or parties to the

24   stipulation of settlement that resulted in the motion to

25   defer the appeal and the motion to stay in front of your

1    Honor, and upon Judge Boroff's anticipated granting of

2    the settlement and stipulation, they will be complying

3    with the bar date order in the manner set forth in that

4    stipulation of settlement.

5              There's an additional ten medical care

6    providers on the CDC list that haven't complied, seven

7    of which are subject to the contempt motion.  Because I

8    don't know the particulars on the three other than to

9    generalize and say that there might have been service

02:38PM  10   issues with respect to them and there's reservice going

11   on.

12             The hearing in front of Judge Boroff on the

13   23rd with respect to the contempt is going to be an

14   evidentiary hearing, and it's both the trustee's and the

15   committee's hope that the remaining clinics who haven't

16   complied or reached agreement with the committee and the

17   trustee do so within the next week or two before the

18   hearing so that we don't have to go forward with the

19   contempt hearing, but barring that, that is set for the

02:39PM  20   23d.

21             THE COURT:  All right.

22             MR. MEISLER:  Your Honor, this is

23   Ron Meisler here in Illinois.

24             THE COURT:  Yes.

25             MR. MEISLER:  Your Honor, one point of

1    clarification, that is, while it's true that the motion

2    for contempt is going toward, in case it wasn't clear,

3    that motion for contempt is going forward against those

4    that are not party to the stip.  As those that are party

5    to the stip., the parties agreed pursuant to paragraph 9

6    of the stipulation that upon execution of the stip., the

7    contempt motion was deemed withdrawn, but it was clear

8    that it was solely as to each of those participating

9    notice intermediaries, and it's without prejudice to the

02:39PM   10    trustee and/or the official committee's right to seek

11    the same relief or other relief sought in the contempt

12    motions to the extent that the bankruptcy court were to

13    reject the stip., but the trustee and/or the committee

14    would have to renew that contempt motion at some later

15    date.

16           THE COURT:  All right.  Anything else on

17    that topic, on the bankruptcy proceedings?

18           MS. HUMPHREY:  Your Honor, this is

19    Kathy  Humphrey in Michigan, and if the Court would feel

02:40PM   20    it appropriate, I think it would be helpful to us to

21    know from Mr. Molton so that by process of elimination,

22    we can figure out who the seven are that he's talking

23    about, which are the three that are not subject to the

24    motion for contempt or could he identify the seven who

25    remain?

1          THE COURT:  Mr. Molton.

2          MR. MOLTON:  Your Honor, I don't have that

3    specific information in front of me right now, but we

4    could get that information by way of a notice of filing

5    on the MDL docket.

6          THE COURT:  All right.

7          MS. HUMPHREY:  Thank you.

8          MR. MOLTON:  Just for Mr. Meisler and

9    Ms. Humphrey's clarification, and I'm glad Mr. Meisler

02:41PM  10  clarified, the 20 CT stipulation parties are not part of

11   the seven, so I thought I was clear.  If I wasn't --

12         THE COURT: I thought you were, but I will

13   never be upset with anyone clarifying anything in this

14   case.

15         All right.  Number 10, status of appeals.

16   Is that covered?

17         MS. PARKER:  I believe we've covered that,

18   in effect, your Honor.  There's one other appeal that

19   Mr. Sexton from Virginia filed relating to the motion to

02:41PM  20  transfer, but nothing has happened in that appeal yet.

21         THE COURT:  That's an appeal of my order to

22   the First Circuit, correct?

23         MS. PARKER:  Yes, correct, your Honor.

24         THE COURT:  All right.  Anything else anyone

25   wants to take up while I have you here?  Anything from

1     the plaintiffs' side of the house?

2                 MS. PARKER:  No, your Honor, thank you.

3                 THE COURT:  Creditors' committee?

4                 MR. MOLTON:  No, your Honor.

5                 THE COURT:  Trustee?

6                 MR. GOTTFRIED:  No, thank you, your Honor.

7                 THE COURT:  Defendants?

8                 MR. RABINOVITZ:  No thank you, your Honor.

9                 THE COURT:  Let me set at least one more

02:42PM   10    status conference.  How far up are we, Peter?

11                THE CLERK:  We have October 8th at 1:30,

12    November 7th at 1:30, and in December it gets a little

13    tight.  Do you want to do a morning, December 17th?

14                THE COURT:  Do you have the calendar?  We

15    can do a morning.

16                THE CLERK:  December 13th at 10, it's a

17    Friday.

18                THE COURT:  December 13th at 10, it's a

19    Friday.  Mr. Cicolini tells me my schedule is a little

02:42PM   20    rough in December.  Will that work?

21                MS. PARKER:  That will work for the

22    plaintiffs, your Honor.

23                THE COURT:  Obviously I prefer people coming

24    here from out of town to be able to get in and out in

25    one day.  Does 10:00 let you do that?

1          MR. COREN:  It makes a little tight for

2    people from Philadelphia, your Honor.

3          THE COURT:  We'll move things around.  How

4    about we do it at 1:30 on that day, on that Friday?

5    That will give you the Friday afternoon travel, which is

6    always pleasant up and down the East Coast.

7          MR. MORIARTY:  Well, the alternative, your

8    Honor, if I may bud in, is maybe 11 works better or 12.

9          MR. COREN:  11 works.

02:43PM   10          MR. MORIARTY:  If it's available for the

11    Court because when you start getting into Friday --

12          THE COURT:  I can try to move things around.

13    Let's make it 11:00.  If I start to get hungry if it

14    goes too long, I'll just shut it down.

15          MS. PARKER:  I'll bring snacks.

16          THE COURT:  All right.  Anything else?

17    Thank you, all.  Those of you who observe, have a good

18    holiday, and I will see you next month.

19          MS. PARKER:  Thank you, your Honor.

02:43PM   20          MR. FERN:  Thank you, your Honor.

21          (Whereupon, the hearing was adjourned at

22    2:43 p.m.)

23

24

25

```
1              C E R T I F I C A T E

2

3

4    UNITED STATES DISTRICT COURT )

5    DISTRICT OF MASSACHUSETTS ) ss.

6    CITY OF BOSTON )

7

8         I do hereby certify that the foregoing

9    transcript, Pages 1 through 61 inclusive, was recorded

10   by me stenographically at the time and place aforesaid

11   in MDL NO. 13-02419-FDS, IN RE:  NEW ENGLAND COMPOUNDING

12   PHARMACY CASES LITIGATION and thereafter by me reduced

13   to typewriting and is a true and accurate record of the

14   proceedings.

15         Dated this September 17, 2013.

16                   s/s Valerie A. O'Hara

17              _____

18              VALERIE A. O'HARA

19              OFFICIAL COURT REPORTER

20

21

22

23

24

25
```