1                   UNITED STATES DISTRICT COURT
                       DISTRICT OF MASSACHUSETTS
2

3      *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
       *IN RE:  NEW ENGLAND COMPOUNDING   *   MDL NO. 13-02419-FDS
4      PHARMACY, INCORPORATED             *
       PRODUCTS LIABILITY LITIGATION      *
5                                         *
       *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
6

7

8

9             BEFORE THE HONORABLE JENNIFER C. BOAL
                 UNITED STATES MAGISTRATE JUDGE
10                     STATUS CONFERENCE
                     September 25, 2013
11

12

13

14

15

16

17

18

19                              Courtroom no. 17
                                1 Courthouse Way
20                              Boston, Massachusetts 02109

21
                        JAMES P. GIBBONS, RPR/RMR
22                       Official Court Reporter
                      1 Courthouse Way, Suite 7205
23                     Boston, Massachusetts  02210
                         jmsgibbons@yahoo.com
24

25

1    <u>APPEARANCES</u>:

2

3        HAGENS, BERMAN, SOBOL, SHAPIRO, LLP, (By Kristen
     Johnson Parker, Esq.), 55 Cambridge Parkway, Suite 301,
     Cambridge, Massachusetts  02142, on behalf of
4    Plaintiffs' Steering Committee

5        CRANDALL & KATT, (By Patrick Thomas Fennell, Esq.),
     366 Elm Avenue SW, Roanoke, Virginia 24016, on behalf of
6    Plaintiffs' Steering Committee

7        JANET, JENNER & SUGGS, LLC, (By Kimberly A.
     Dougherty, Esq.), 75 Arlington Street, Suite 500,
8    Boston, Massachusetts  02116, on behalf of Plaintiffs'
     Steering Committee

9
         MONTGOMERY McCRACKEN, (By Stephen A. Grossman,
10   Esq.), Liberty View, Suite 600, 457 Haddonfield Road,
     Cherry Hill, New Jersey 08002, on behalf of Inspira
11   Health Networks and Inspira Medical Centers

12       BONNER KIERNAN TREBACH & CROCIATA, LLP, (By Brian
     J. Gerling, Esq.), 1233 20th Street, N.W. 8th Floor,
13   Washington, D.C.  20036, on behalf of Insight Health
     Corp.
14
         DEBEVOISE & PLIMPTON, (By Cari Almo Wint, Esq.),
15   919 Third Avenue, New York, New York 10022, on behalf of
     Tristar Centennial Medical Center, Sahara Surgery
16   Center, Surgical Park Center

17

18       Tucker, Saltzman & Dyer, LLP (By Matthew E.
     Mantalos, Esq.) 50 Congress Street, Boston, MA
19   02109, on behalf of Ameridose

20

21       Marks, O'Neill, O'Brien, Doherty & Kelly, P.C. (By
     Michelle J. marzullo, Esq.) 600 Baltimore Ave, Suite
22   305, Towson, MD 21204, on behalf of Baltimore Pain
     Management Center
23

24       Batten Lee PLLC (By G. Adam Moyers, Esq.)  4141
     Parklake Ave Suite 350 Raleigh, NC 27612, on behalf of
25   the Surgery Center of Wilson, North Carolina

1        Eccleston and Wolf, P.C. (By Thomas J. Althauser,
   Esq.) 7240 Parkway Drive, 4th Floor, Hanover, MD
2  21076-1378

3

4        Ficksman & Conley LLP, (By Mary-Rose Watson, Esq.)
   98 N. Washington Street, Suite 500, Boston, MA 02114, on
5  behalf of Ocean State Pain Management

6

7        BROWN RUDNICK, (By Kiersten A. Taylor, Esq.), One
   Financial Center, Boston, Massachusetts   02111, on
   behalf of the Official Committee of Unsecured Creditors

8

9        HINSHAW & CULBERTSON, LLP, (By Daniel E. Tranen,
   Esq.), 28 State Street, 24th Floor,, Boston,
   Massachusetts 02109, on behalf of Defendants

10

11       Dykema Gossett, PLLC (By Kathryn J. Humphrey, Esq.)
   400 Renaissance Center 37th Floor, Detroit, MI
12  48243-1668, On behalf of Southeast Michigan Surgical
   Hospital.

13

14       Shaheen & Gordon, P.A.  (By Benjamin Siracusa
   Hillman, Esq., and William E. Christie, Esq.,) 107
15  Storrs Street, P.O. Box 2703, Concord, NH 03302-2703, On
   behalf of Dr. O'Connell's Pain Care Center, Inc.,

16

17

18

19

20

21

22
              JAMES P. GIBBONS, RPR/RMR
23              Official Court Reporter
            1 Courthouse Way, Suite 7205
24           Boston, Massachusetts  02210
                jmsgibbons@yahoo.com
25

```
1                  P R O C E E D I N G S

2           THE CLERK:  All rise.

3       The United States District Court for the District of

4   Massachusetts is now in session.

5       The Honorable Jennifer C. Boal presiding.

6       You may be seated.

7       Today is September 25, 2013.  We're on the record in

8   the matter of New England Compounding Pharmacy, Inc.,

9   Products Liability Litigation.

10      I would first like to ask counsel appearing for

11  Plaintiffs' Steering Committee in court to identify

12  yourselves and then on the phone to identify yourselves.

13          MS. PARKER:  Good morning, your Honor.  Kristen

14  Johnson Parker for the Plaintiffs' Steering Committee.

15          MR. FENNELL:  Good morning, your Honor.  Patrick

16  Fennell from Crandall & Katt, Roanoke, Virginia, for the

17  Plaintiffs' Steering Committee.

18          MS. DOUGHERTY:  Good morning, your Honor.  Kim

19  Dougherty on behalf of the Plaintiffs' Steering Committee.

20          THE CLERK:  Do I have anyone appearing by phone for

21  the Plaintiffs' Steering Committee?

22      (No response.)

23          THE CLERK:  We're going to ask counsel in the front

24  to my left to identify yourself.

25          MR. GROSSMAN:  Good morning, your Honor.  Steve
```

1   Grossman from Montgomery McCracken on behalf of the Inspira

2   Health Networks and inspira Medical Centers in New Jersey.

3            MR. GERLING:  Good morning, your Honor.  Brian

4   Gerling for Insight Health Corp.

5            MR. MOYERS:  Good morning, your Honor.  Adam Moyers

6   from Batten Lee in Raleigh, North Carolina, for Surgery

7   Center of Wilson, North Carolina.

8            MS. MARZULLO:  Good morning, your honor.  Michelle

9   Marzullo, of Marks, O'Neill, O'Brien, Doherty & Kelly, on

10   behalf of the Baltimore Pain Management Center in Baltimore,

11   Maryland.

12            MR. ALTHOUSER:  Good morning, your Honor.  My name

13   is Tom Althouser.  I'm from Maryland, here on behalf of the

14   non-party objector, Harford County Ambulatory Surgery

15   Center, LLC.

16            MR. APELIN:  Your Honor, good morning.  Anthony

17   Apelin on behalf of non-party objector Pain Associates of

18   Charleston.

19            MS. WINT:  Good morning, your Honor.  Cari Wint,

20   from Debevoise & Plimpton, on behalf of Tristar Centennial

21   Medical Center, Sahara Surgery Center, and Surgical Park

22   Center.

23            THE CLERK:  In the gallery, starting from my left

24   to the right.

25            MR. HUGO:  Michael Hugo, Framingham, Massachusetts,

1    appearing for the plaintiffs.

2              MS. WATSON:  Mary-Rose Watson, representing Ocean

3    State Pain Management Center.

4              MS. TAYLOR:  Kiersten Taylor, Committee of

5    Unsecured Creditors.

6              MR. MANTALOS:  Good morning, your Honor.  Matthew

7    Mantalos on behalf of Ameridose.

8              MR. TRANEN:  Good morning, your Honor.  Daniel

9    Tranen for New England Compounding Pharmacy.

10             THE COURT:  Good morning, everyone.  I am not going

11   to ask the persons on the phone to identify themselves.  I

12   do intend to follow, where practicable, Judge Saylor's Order

13   No. 4, and, in that sense -- and that had to do with the

14   telephone conferences -- I am going to ask counsel on the

15   phone, it seems as if they've already done that, to please

16   minimize the background noise or other interference during

17   the call and to normally mute their telephones, obviously,

18   unless they're speaking.

19       And I am going to ask the people in the room, for the

20   benefit of those on the phone, when they speak, if they

21   could speak into the microphones.  If you don't have a

22   microphone in front of you, I would ask that you go to the

23   podium, if you wish to speak, and speak into that

24   microphone.

25       I did want to mention before we begin that an Attorney

1    Chris O'Hara has entered an appearance on behalf of some of

2    the defendants.  Our children attended nursery school

3    together some time ago, and Mr. O'Hara and my husband play

4    hockey together on occasion.  I don't think that's a

5    conflict.  As far as I know, it's all been amicable on the

6    ice.

7          (Laughter.)

8          THE COURT:  But if anyone believes that's an issue,

9    they are welcome to bring that to my attention.

10         I have you all here today for a status conference, as

11   opposed to oral argument.  I am hoping to develop a system

12   to work through the many objections in both a thoughtful and

13   efficient manner.  I think the parties made some great

14   strides toward that in the chart that was prepared by the

15   Plaintiffs' Steering Committee.

16         So what I would like to do is first go through at least

17   my understanding of where we are with respect to the

18   subpoenas and their objections, and then propose a framework

19   for dealing with them, and hear from you all as to your

20   thoughts and whether that's a good framework on not.

21         So, as I understand it, the Plaintiffs' Steering

22   Committee has issued 80-plus subpoenas.  Objections have

23   been filed to, perhaps, 40-plus of the subpoenas.

24         On August 1 Judge Saylor granted the motion to quash

25   with respect to the medical records of nonplaintiffs, and

1    then referred the remaining objections and motions to quash

2    to me for decision.

3         On August 6, as I've mentioned, the Plaintiffs'

4    Steering Committee filed a report and a chart for the

5    purpose of identifying the remaining issues, and had

6    indicated in that report that there had been some

7    accommodations to some of the objectors' concerns.

8         Then some objectors filed pleadings saying they didn't

9    quite agree with everything that was in the plaintiffs'

10   characterization of the outstanding issues.

11        On August 15 I understand Judge Saylor issued a

12   mediation order with an opt-in procedure, and the parties

13   that opted in, for those parties discovery would be stayed.

14        More recently, some parties have filed pleadings

15   indicating that the parties have worked out some other

16   issues.

17        So what all that means is that I need some

18   clarification as to where we are with the subpoenas and

19   their objections.  So I am looking for input from the

20   parties, again in the most cost-efficient and effective way.

21        I would propose that the parties work together to amend

22   and/or change the chart that was initially proposed by the

23   Plaintiffs' Steering Committee.  I do not need further

24   briefing.  It is simply to identify and narrow, if possible,

25   the live issues that I need to decide.  And I would propose

1    that the parties work together and file an amended chart by

2    October 16.

3         I fully recognize, despite everyone's best efforts,

4    there still might be some disagreements as to what is in the

5    chart, and if there are any objections to what is in the

6    chart or the characterization -- if you cannot work it

7    out -- that those objections be filed by October 23.  But no

8    one should file anything more than four pages.  I think it's

9    really identifying which issues are live or the

10   characterization of that issue.

11        I would then propose to hold oral argument on

12   November 7.  I understand that Judge Saylor has a conference

13   scheduled for that afternoon at 1:30, and in the hope of

14   minimizing travel for the parties, I would propose to do it

15   at ten o'clock that morning.

16        Again, for the future reference, I am not sure what

17   Judge Saylor would refer to me.  I anticipate there might be

18   other issues coming my way.  What I will try to do is where

19   there is a conference in the afternoon, I will try and

20   schedule oral argument on those issues on the morning before

21   those conferences.

22        All right.  So I will hear from the Plaintiffs'

23   Steering Committee first, if you have any suggestions,

24   comments, etc.

25             MS. PARKER:  Thank you, your Honor.

1    If I may, I think I'll sit so the microphone will

2    reach.

3         THE COURT:  Yes.

4         MS. PARKER:  Thank you.

5    Kristen Johnson Parker, with Hagens, Berman, Sobol

6    Shapiro, for the Plaintiffs' Steering Committee, your Honor.

7    I think that your Honor's suggestion is a very workable

8    one.  The purpose of providing a chart was to try and

9    grapple with the many cross-cutting issues that were

10   appearing in many subpoenas, in the hope that we may be able

11   to present this to your Honor in a manner that would enable

12   some cross-cutting decisions to track --

13        THE COURT:  And I think it was a very good effort.

14   It's just that you've moved on in some ways from that.

15        MS. PARKER:  Yes, certainly.

16   And so one of the things that we have prepared for

17   today, your Honor, was actually an updated version of that

18   chart.  I think I will, with the Court's permission, have

19   Mr. Fennell point out for you some of the changes that are

20   reflected in this chart, not for purposes of arguing -- and

21   I hear you when you say we should be speaking with the

22   defendants to come up on an agreed chart -- but so that

23   you're aware of some material changes with a few of the

24   objections.

25        If I may, I will hand this up to the Court, and I also

1    have copies for maybe not all but most of the defense

2    counsel.

3         (Pause in proceedings.)

4         MR. FENNELL:  Good morning, your Honor.  Patrick

5    Fennell for the Plaintiffs' Steering Committee.

6         I just want to give the Court a quick update on where

7    we stand in terms of the numbers and so forth.  As of today,

8    according to the Plaintiffs' Steering Committee's numbers,

9    there are 31 outstanding objections and/or motions to quash

10   that still need to be resolved.

11        Since the last update to our chart, there have been

12   three clinics that have been withdrawn from our chart

13   because the objections have been resolved in one way or

14   another, and that is:  Erlanger Health Systems, Carilion

15   Surgery Center of New River Valley, and HCA Health Services

16   of Tennessee, also known as "Centennial Medical Center."

17        In addition to those, South Bend Clinic has opted into

18   the mediation, and, therefore, we will not be pursuing any

19   further action against them with regard to this subpoena.

20        We also have -- High Point Surgery Center has -- their

21   objections have been resolved.  They submitted documents

22   pursuant to the Plaintiffs' Steering Committees's

23   accommodations.  So we're satisfied with their production,

24   and we're withdrawing -- or their objections are withdrawn.

25        In addition to that, there's -- we've identified some

1    clinics that have produced documents pursuant to the

2    subpoena, and we just wanted to advise the Court that High

3    Point Surgery Center has produced documents.

4        Image Guided Pain Management of Virginia has produced

5    documents.

6        Carilion Surgery Center of New River Valley -- that's

7    also in Virginia -- has produced documents.

8        The Orlando Center for Outpatient Surgery has produced

9    documents.

10       Berlin Interventional Pain Management has produced

11    documents.  That's in Maryland.

12       And Marion Pain Management of Ohio has produced

13    documents.

14       Now, not all of those clinics that have produced

15    documents had filed objections, but, just so your Honor

16    knows, at this point, there are -- those six clinics have

17    produced documents pursuant to the subpoenas.

18           MS. PARKER:  And, your Honor, I would also like to

19    bring to your attention something that has gone on on the

20    bankruptcy side of things that has an impact on some of the

21    objections to the subpoenas before you.

22       As your Honor is aware, the Plaintiffs' Steering

23    Committee served subpoenas that asked for protected health

24    information, including the names and contact information of

25    patients who had received injections of MPA and other New

1    England Compounding Products.

2        Judge Saylor discussed and heard argument from the

3    parties on this in front of him at a status concerns and

4    asked for supplemental briefing on this issue before he made

5    a decision.

6        At the same time on the bankruptcy side of things,

7    Judge Boroff issued an order that required clinics to

8    produce patient names -- and let me be specific about

9    this -- issued an order that required clinics who appeared

10   on the CDC's list of entities that had received the

11   contaminated MPA, to produce patient-identifying information

12   to the Trustee, the Creditors' Committee, and lead counsel

13   in the MDL.

14       Because Judge Boroff had issued -- and Judge Boroff did

15   that for the purpose of sending notice of any potential bar

16   dates to potential claimants against the NECC estate.

17       Because Judge Boroff had issued that order, the PSC

18   then advised Judge Saylor that we would no longer be

19   separately pursuing to recover that information pursuant to

20   our subpoenas in the MDL.

21       The primary -- the sole purpose of requesting that

22   information had been to provide notice, and since that was

23   accomplished through the Bankruptcy Court's exercise of its

24   bankruptcy powers related to the bar date proceedings, the

25   PSC has dropped that request.

1        Dropping that request, just to state on the record, I

2   know we have many people on the line, and many pain clinics

3   listening to this, that goes for all clinics.  So the PSC

4   will no longer be trying to recover patient-identifying

5   information from clinics pursuant to our subpoenas.

6        So I bring that to the Court's attention as something

7   that has been resolved.

8        I would also take this opportunity to state that, in

9   response to many clinics' objections, we did make

10  accommodations, which your Honor referred to, and those

11  accommodations would similarly apply to all clinics who have

12  objected to subpoenas.

13        THE COURT:  Anything else from the Plaintiffs'

14  Steering Committee?

15        MS. PARKER:  My only other comment, your Honor, is

16  on timing, and I think that gets into why we're here.  So if

17  you'll indulge me for a minute.

18        The Plaintiffs' Steering Committee served these

19  subpoenas for a variety of purposes.  The primary purpose

20  was to recover information from clinics that showed the

21  liability of New England Compounding Center and related

22  corporate affiliates Ameridose and Medical Sales Management,

23  as well as insiders at those companies:  Doug Conigliaro,

24  Barry Cadden, Lisa Conigliaro Cadden, Carla Conigliaro and

25  Greg Conigliaro.

1        As your Honor knows, you had permitted an inspection of

2  NECC early on.  We've also had some informal discovery

3  produced by NECC to date.  That information only gives us

4  part of the picture.  The reality here is that this national

5  health tragedy could not have occurred without clinics,

6  doctors, and hospitals purchasing NECC products, storing

7  NECC products, and injecting NECC products.

8        Another way to put it is that this contaminated MPA

9  would not have been injected into people's spines without

10  the clinics' complicity.

11        Now, because these clinics are part of the distribution

12  chain, they are part of this tragedy.  And the type of

13  information that we're trying to elicit from them includes

14  information about what representations NECC or MSM employees

15  or others made to the clinics about the quality of the

16  products, about how these products should have been stored,

17  about the need to produce patient names, or the need not to

18  produce patient names, as the case may be; also, NECC's or

19  MSM's representations about whether these clinics were USP

20  compliant for -- or these products were USP compliant, for

21  example.

22        Another reality, though, and one that we have been up

23  front about, is that we anticipate, and based on some

24  production we have seen so far, that the information

25  produced responsive to these subpoenas by clinics, doctors,

1     and hospitals, may show some liability of the clinics,

2     doctors, and hospitals.

3          We have never tried to hide that, right?  We recognize

4     it's a reality.

5          We know now that the procedural status is a bit

6     different than it was when we issued these subpoenas

7     originally.  At the time that these subpoenas were issued,

8     many clinics had not yet been named as defendants in a

9     federal case in the MDL.  That has changed, particularly

10    with the one-year deadline of this tragedy fast upon us, and

11    knowing that there are states involved here, like Tennessee,

12    where that statute of limitations is one year.  So there

13    have been a rash of filing additional complaints.

14         There is also a class case that is in the MDL that has

15    been filed on behalf of all victims of this tragedy.  So

16    even though there are clinics here who've received subpoenas

17    that may not then have been a named defendant, some, many,

18    now have been named as defendants, and you also have a class

19    case that would implicate those clinics.

20         We also think in reality, based on documents that we

21    have received, that production by the clinics may reveal

22    other entities from which we need to take discovery.

23         We are mindful that the Case Management Order 7,

24    recently imposed by Judge Saylor, contemplates the

25    plaintiffs filing master complaints by November 5.

1          So, to the extent that additional discovery is needed

2    in order to buttress those complaints, we do have a quick

3    time line.

4          All of that is to say, your Honor, that I think the

5    schedule you set is workable.  However, given the November 5

6    master complaint deadline, it would be helpful if we could

7    expedite the process a bit.

8          THE COURT:  And we had also looked.  I believe

9    Judge Saylor has a conference schedule in two weeks; is that

10   about right?

11         MS. PARKER:  On October 8.

12         THE COURT:  October 8.

13         And that seemed a bit tight for the turnaround.  I

14   recognize now, not knowing when I was thinking about this,

15   that you had now updated the chart.  But I believe everybody

16   else has not had the opportunity to look at the chart.  So

17   that seemed a bit quick to me, to have everyone on that

18   date.

19         The other option is to set a stand-alone date.  I was

20   hoping to coordinate and be efficient, just to minimize

21   travel time.  I know people are coming from far away, but

22   that is a potential as well, that I could have everyone in

23   for a separate date.  So I am happy to hear comment on that

24   as well.

25         Anyone else from the Plaintiff's Steering Committee

 1    wish to speak?

 2          (No response.)

 3              THE COURT:  All right.

 4      So, why don't we move on.  Does anyone wish to comment?

 5    Are there any plaintiffs' counsel on the phone that would

 6    like to speak.

 7          (No response.)

 8              THE COURT:  All right.

 9      Are there any defendants that wish to speak to this

10    issue?

11              MR. GROSSMAN:  Good morning, your Honor.  Steve

12    Grossman on behalf of the defendants.  We're a defendant in

13    the litigation, so we're a little different than some of my

14    other colleagues here who may just be parties to the

15    subpoena.

16      I would like to address sort of the timing issue that

17    was raised by Ms. Parker.

18      These subpoenas have been outstanding for over two

19    months.  At no time has anyone from the Plaintiffs' Steering

20    Committee reached out to me and had any discussion about a

21    potential resolution to the issues that we've raised and

22    that they're well aware of.  So to come in today and ask for

23    an expedited time frame seems a little disingenuous.

24      We believe that the time frame set forth by your Honor

25    is certainly workable.  To the extent that conflicts with

1    Judge Saylor's timing at this point, Judge Saylor has said

2    to all of us in this group and in this case that those

3    deadlines certainly can be amended as needed, and he will

4    revisit those as needed.  So I think an important piece here

5    is making sure that we work out a resolution of these issues

6    before this Court and before your Honor.  And I think the

7    time frame that you propose -- well, I would actually ask

8    for more time -- I think at this point is certainly

9    reasonable.

10        THE COURT:  I may have missed this.  Do the

11   defendants have separate objections to the subpoenas?

12        MR. GROSSMAN:  We have separate objections and

13   objections to the way in which they were served on us.  I

14   really didn't want to get into argument, but certainly the

15   issues -- I've looked at the chart very briefly.  I have not

16   had an opportunity to see how complete it is, but even the

17   checkboxes are not accurate to my client.

18        But one of the issues that we have is we were served a

19   Rule 45 subpoena, but we're a party to the litigation, which

20   is improper under Massachusetts law.

21        So there are issues to us that might be a little

22   distinct than many of my colleagues here representing other

23   clinics may have who are not parties to the MDL at this

24   point in time, and, obviously, they'll speak to those as

25   well.

1          THE COURT:  All right.  Thank you.

2          MR. GROSSMAN:  Thank you, your Honor.

3          THE COURT:  Any other defendants wish to speak?

4          MR. GERLING:  Good morning, your Honor, Brian

5     Gerling for Insight Health Corp. from Virginia.

6        I, like your Honor, was just a little unclear as to

7     where we stood with regard to what was still live,

8     quote/unquote, with regard to the subpoenas.  So that's why

9     I'm here today, and I appreciate the mechanism by which your

10    Honor has laid this out.  I think this time frame is

11    workable.  In fact, Mr. Fennell is from Virginia.  It's the

12    first time I've actually met him.  Hopefully he and I can

13    get together after this and try to work it out.

14       I think we're in a little bit different situation than

15    the rest of the other parties here.  Like Mr. Grossman's

16    client, we are a party to the litigation as well, but I

17    would like to get together with Mr. Fennell after this and

18    try to work this out.  I think we can, and I think the time

19    period which you've laid out, your Honor, is going to work

20    well.

21          THE COURT:  All right.

22       Any other defendants?

23          MR. ALTHOUSER:  Thank you, your Honor.  Tom

24    Althouser on behalf of nonparty Harford County Ambulatory

25    Surgery Center, LLC.

1      I think that your Honor's schedule is appropriate.  We

2  were talking here briefly, and I wanted to make sure we're

3  now dealing with this latest amended chart is what we should

4  be working from, the one that was just served today.  So

5  with that understanding, I think the schedule you've laid

6  out is appropriate, because I know that certainly my clients

7  don't agree with the chart that was provided before as being

8  the only issues.  That was one of the other issues.  I

9  wasn't sure if this Court was trying to work out something

10  uniform, since this subpoena request for documents was

11  apparently prepared uniformly, certainly not served

12  uniformly, in any fashion, and I wasn't sure.  And that's

13  one of the reasons we made the trip today, to find out if

14  you were going to deal with trying to find one uniform

15  request for documents for everybody or whether you were

16  going to deal with it piecemeal, and it sounds like you're

17  going to deal with it piecemeal, and that's fine.

18      I want to point out on the timing issue, since that was

19  brought up, which I didn't expect it would be, but I want to

20  respond to that.

21      Today was the very first tacit admission that I have

22  seen on the record that the purpose of this subpoena was to

23  search for clients.  And, in fact, if you look at Document

24  325, which was the first Steering Committee's consolidated

25  response, they took great pains to tell this Court at

```
 1    pages 25 and 26 that they were not looking for anything to

 2    establish liability of these various clinics and the like,

 3    that their only purpose was to serve notice, just like the

 4    Bankruptcy Trustee is charged with.

 5         I did not come here with any intention to address any

 6    of that issue, but I'm certainly not going to sit here idly

 7    by when that's said.

 8         Thank you, your Honor.

 9         THE COURT:  I guess we've also moved on to

10    nonparties as well.

11         MS. MARZULLO:  Good morning, your Honor.  Michelle

12    Marzullo on behalf of nonparty Baltimore Pain Management

13    Center, and my question really is more just logistical and

14    clarification.

15         I wanted to make sure that -- so we have our new chart,

16    but the subpoena that we're looking at to discuss with

17    regard to this chart, I want to make sure is the

18    accommodation version that was filed with the Court in, I

19    believe, late July, July 17, and not whatever the original

20    subpoena was that was issued to each of the individual

21    clinics and hospitals.

22         THE COURT:  And I'll ask the Plaintiffs' Steering

23    Committee to address that question.

24         MS. MARZULLO:  Thank you, your Honor.

25         MS. PARKER:  Yes, your Honor, the accommodation
```

1    that was filed is the version that clinics should be looking

2    at, but I will be clear that there is one possible exception

3    to that.

4        Because of some differences in state laws, various

5    clinics received slightly tailored versions of that exhibit.

6    There may have been an additional request, or there may have

7    been different phrasing, your Honor.  So the accommodations

8    apply to everyone, insofar as they removed requests, changed

9    time periods, or otherwise materially altered requests.  But

10   there may be some specific instances where, for example,

11   Tennessee clinics had an additional request included.

12       The way I would suggest that we deal with that is that

13   I will go back and revisit with the Plaintiffs' Steering

14   Committee members and identify the instances where subpoenas

15   did not match that exhibit, and if we think that needs to be

16   addressed, we'll discuss that with the clinics receiving

17   those slightly different exhibits.

18           THE COURT:  And then include the resolution of that

19   in the report?

20           MS. PARKER:  Yes, your Honor.

21           THE COURT:  That makes sense.

22       All right.  Any other non-party objectors?

23           MS. HUMPHREY:  Your Honor, this is Kathryn Humphrey

24   in Michigan.  My client is Southeast Michigan Surgical

25   Hospital.

1          I have two questions or comments.  One is I just heard

2     you, your Honor, refer to a report.  Are you talking -- and

3     yet when you laid out your time frame, I think you were

4     talking about a revised chart, and then any other objection.

5          I want to be clear we understand what you are expecting

6     by way of a report.

7               THE COURT:  Yes.  And thank you for that question.

8     It may have been that I was imprecise in the language that I

9     used, and we will hopefully make this all perfectly clear,

10    although I can't promise that we will issue a scheduling

11    order after I consider everyone's comments here today, but

12    what I envision is that there would be an amended chart.  I

13    understand that the Plaintiffs' Steering Committee has

14    already prepared one, but now I have asked them to consult

15    with all interested parties and see if we can come up with a

16    joint chart, hopefully, and, if not, that's why I set

17    another date for objections after that.

18         It may be that with the chart I need some sort of

19    report to explain the differences, and that's why I

20    mentioned "report."

21         But thank you for that question, and you said you had

22    another question as well?

23              MS. HUMPHREY:  I do.

24         This is also the first time now that we understand that

25    the Plaintiffs' Steering Committee is expecting us to

1    respond to the accommodation version, what they're calling

2    the "accommodation version" of the subpoena.

3        We were served with an original subpoena.  I will --

4    there may be others who are in the same position that my

5    client is in, and that is that there may be different,

6    additional, or fewer objections from our original set and

7    our original motion to quash when we look at the

8    accommodation.  So as a part of the process of working with

9    the Plaintiffs' Steering Committee on the revised chart on

10   another chart, other than what, I guess, they've passed out

11   today, we will do that through the prism of the

12   accommodation subpoena.

13       And that is your expectation, your Honor?

14           THE COURT:  Yes.

15           MS. HUMPHREY:  Okay.  Thank you.

16           THE COURT:  All right.  Any other nonparties wish

17   to speak?

18       (No response.)

19           MS. PARKER:  If I may, your Honor?

20           THE COURT:  Yes.

21           MS. PARKER:  There are a few points I think that

22   will be clarifying, if I could briefly address them?

23           THE COURT:  Yes.

24           MS. PARKER:  The only -- just for purposes of

25   making sure that everybody is on the same page, I'll take

```
 1    advantage of this opportunity --
 2              THE COURT:  Absolutely.
 3              MS. PARKER:  -- and we have counsel on the phone,
 4    so forgive me.
 5         So that everyone is aware, the only amendments to the
 6    chart that we passed out in court today were the removal of
 7    some objectors, where those have been removed, and the
 8    addition of objections that were filed since the last
 9    version of the chart.  So there should not have been
10    substantive changes, or moving of Xs, or anything of that
11    nature.
12         In terms of the accommodations, we will, again,
13    recirculate that version to everyone.  We are, of course,
14    referring to the version that was filed with the June 17
15    filing.  I believe we called it "Plaintiffs' Steering
16    Committee's Consolidated Response to Objections," but we'll
17    make sure that everyone has that.
18         And then one preview for your Honor.
19         Because we have this mediation process ongoing, we
20    understand that there have been several clinics that have
21    asked for extensions of the deadline to opt into mediation.
22         We recognize that there are clinics that may still be
23    interested in participating.
24         In light of that, it is possible -- for clinics that
25    are participating we would, therefore, withdraw the PSC
```

1    subpoena while they are participating in mediation, at

2    least.  Given that, it's possible that the chart that comes

3    back to you may be missing entities.  So we will, of course,

4    address them in the response, but so your Honor has a

5    glimmer of what may happen.

6         THE COURT:  And that's helpful.  This is all going

7    to be a moving target, right?  I think the landscape is

8    going to be continually changing and, you know, hopefully

9    we'll just deal with the best information that we have at

10   the time, recognizing that there are continual changes.

11        MS. PARKER:  And the last word that I will have on

12   this, your Honor, is the PSC, to be clear, has withdrawn its

13   request to obtain patient information.  So none of the

14   information that is participated is sought by means of

15   trying to identify clients or bring additional cases.

16        We did recognize the possibility, and, again, based on

17   some of the documents we've seen, that there may be

18   information that is contained there that goes to liability

19   of other entities, which is the point we were trying to make

20   earlier.

21        And I believe Mr. Fennell would like to be heard on the

22   timing point.

23        MR. FENNELL:  Yes, your Honor.  Patrick Fennell for

24   the Plaintiffs' Steering Committee.  Just a couple of

25   points.

1          One, on the timing issue, I think one of the defense

2     counsel at least requested additional time in addition to

3     the schedule proposed by your Honor.  Ideally, the

4     Plaintiffs' Steering Committee would like to have a shorter

5     time line because, as Ms. Parker indicated, because of the

6     master complaint deadline established by Judge Saylor.

7          We think that your Honor's proposed deadline is

8     workable.  Ideally, we would like to have sooner dates so

9     that we would have more time to prepare for the master

10    complaint.  But certainly we don't think additional time, in

11    addition to what your Honor has proposed, is called for in

12    this case.

13         In addition, since we are going to be working --

14    hopefully working out a lot of details with defense counsel

15    on this, it would be very helpful from our stated point if

16    the defense counsel could get together and appoint among

17    themselves a spokesperson who could represent the positions

18    of the different defense counsel with respect to working out

19    the details on the chart and so forth, if somebody could

20    volunteer to do that.

21              MR. ALTHOUSER:  May I respond to that, your Honor?

22              THE COURT:  Yes.

23              MR. ALTHOUSER:  This is Tom Althouser.

24         I think that goes back to my point of I don't see how

25    that's workable unless we're going to have some uniform

1   document request and we eliminate this charge of saying,

2   This person for this and this person for this.  I don't see

3   how we can appoint a committee.

4       If, in fact, the goal is to have one standard request

5   that this Court rules on, like was sent out originally, then

6   I could see how we could appoint some sort of committee to

7   address that.

8       Thank you.

9       THE COURT:  Well, I think rather than have me delve

10  into the details at this point -- I am happy to do so if

11  necessary, but perhaps that is a conversation that can take

12  place between the Plaintiffs' Steering Committee and at

13  least, perhaps, the people here today.  I don't know if

14  that's a representative sample or not.  I don't know the

15  case well enough.  But that's certainly something that's

16  worthy of discussion.

17      I will set the schedule.  If the parties themselves and

18  nonparties agree with the framework on how to respond and

19  deal with it, they're free to do so.

20      Is there anyone else that would like to speak to any of

21  these issues?  I know we haven't heard -- and it may be

22  because these issues are not as germane to them -- from the

23  Unsecured Creditors' Committee or the Trustee, or is there

24  anyone else that would like to speak?

25      MS. DOUGHERTY:  Your Honor, Kim Dougherty on behalf

```
 1    of the Plaintiffs' Steering Committee.

 2         The only reason we're raising a potential liaison is

 3    because we've made every effort to make sure that the

 4    clinics that we are aware of have received service of, for

 5    example, the accommodation.  And we're hearing today that at

 6    least two clinics did not have an understanding that all we

 7    are now looking for is the subpoena that's set forth in our

 8    accommodations to Exhibit C.  And so what we're looking to

 9    do is at least have someone that we can exchange information

10    with so that we don't have clinics next time we're at this

11    hearing saying, We never got this information.

12         We don't have a master list of all the clinics out

13    there.  We have information for clinics, some clinics, and

14    clinics that have appeared on the record.  But, for example,

15    all 80 clinics we don't necessarily have contact information

16    for.  So we're not looking for a liaison in terms of making

17    particular arguments on behalf of particular clinics, but

18    just someone that we can utilize to disseminate the

19    information and the proposals.

20              THE COURT:  All right.  Thank you.

21         And someone on the phone wanted to speak?

22              MR. SIRACUSA HILLMAN:  Yes, your Honor.  This is

23    Benjamin Siracusa Hillman.  I represent, together with my

24    colleague Bill Christie, Dr. O'Connell's Pain Care Center

25    and Dr. O'Connell's Pain Care Center, Inc. in New Hampshire.
```

1      I think, hopefully, this will all be worked out by the

2  process you've outlined, but I just wanted to, I guess,

3  emphasize two things:  One is that nonparties, that is,

4  defendants who have not been sued in the MDL, are

5  potentially in a different position than those that have

6  been sued as to what, you know, would be appropriate for a

7  subpoena, for a Rule 45 subpoena, versus a discovery request

8  under Rule 26.  And we just want to make sure that as this

9  process goes forward, you know, particularly if some sort of

10  representative of the defendants is appointed, you know,

11  that that takes those distinctions into account.

12      The other issue I think we'd just like to suggest is

13  the need to clarify.  The PSC has decided here that they've

14  withdrawn requests to obtain patients' names or

15  patient-identifying information.  That was also the subject

16  of Judge Saylor's order on the motion to quash.

17      In our view at least, the accommodation subpoena, which

18  was, you know, issued before the motion to quash was ruled

19  upon, at least that initial piece of it that Judge Saylor

20  addressed, that accommodation subpoena still requests

21  protected health information or patient-identifying

22  information as part of various requests.

23      And so I think it would probably be helpful, from our

24  client's point of view, if the Plaintiffs' Steering

25  Committee could revise the accommodation in such a way to

1      make clear that, you know, no patient-identifying

2      information is being requested, so that that's what we're

3      working off of as a working document.

4           Thank you.

5           MR. FENNELL:  Your Honor, the Plaintiffs' Steering

6      Committee can submit a completely revised subpoena which

7      will reflect both the accommodations that we've previously

8      offered in Document 325, as well as Judge Saylor's ruling on

9      the issues regarding physician-patient privilege and so

10     forth.

11          THE COURT:  I think that would be helpful.

12          MS. PARKER:  To be clear, though, your Honor, we

13     would not imagine any substantive changes.  So to the extent

14     that it's unclear and it may still seem to call for

15     patient-identifying information, we will revise that.  But I

16     wouldn't want clinics to think that we are going to

17     materially change the documents or change the requests that

18     we have already served upon them beyond clarifying that

19     patient-identifying information piece.

20          THE COURT:  And in terms of a mechanism and so that

21     I will have the benefit of it in reaching the objections, do

22     you propose submitting it with the chart and/or the report,

23     or how would you propose circulating it and then submitting

24     it?

25          MS. PARKER:  We would hope to submit it much sooner

1    than that, your Honor.  We think this is a reasonable

2    request, but one that could be dealt with very quickly, and

3    we would want clinics and subpoena recipients to have the

4    benefit of that information as soon as possible.

5              THE COURT:  All right.  That makes sense.

6         All right, does anyone else wish to speak?

7              MS. HUMPHREY:  Your Honor, this is Kathryn Humphrey

8    in Michigan again.

9         The gentleman -- well, Mr. Siracusa Hillman spoke to

10   this, but someone else did as well, Mr. Grossman, I think.

11   There are significant differences among the various

12   non-party objectors and certainly between the nonparties and

13   the defendants who are before you today, and this is why

14   having some kind of a spokesperson or a liaison person is a

15   difficult objective.

16        For example, my client, my client hospital, has no

17   patients who are a part of the outbreak, none.  So that may

18   be -- that puts us in a different position than some

19   hospital or clinic that may be, from the Plaintiffs'

20   Steering Committee's perception, right in the thick of

21   things.

22        I just wanted to make that point.

23        If the Court is thinking that there might be some very

24   simple fix to this problem of having 80 subpoenas, we've

25   talked about this issue among ourselves, and we don't see a

```
 1    simple answer.

 2           THE COURT:  I guess I'm doubtful that there's a

 3    simple fix to any issue in this case --

 4        (Laughter.)

 5           THE COURT:  -- but perhaps I will be proved wrong.

 6           MS. HUMPHREY:  Right.

 7           THE COURT:  Does anyone else wish to speak?

 8        (No response.)

 9           THE COURT:  All right.  So what I am going to do is

10    I'm going to carefully consider everything that's been

11    raised here.  I will, hopefully, issue a scheduling order

12    before the week is out, and we will go from there.

13        Thank you very much.

14           MS. PARKER:  Thank you, your Honor.

15           MR. GERLING:  Thank you, your Honor.

16           MS. DOUGHERTY:  Thank you, your Honor.

17           MR. GROSSMAN:  Thank you, your Honor.

18           MR. FENNELL:  Thank you, your Honor.

19           MR. ALTHOUSER:  Thank you, your Honor.

20           MS. WATSON:  Thank you, your Honor.

21           THE CLERK:  All rise.

22        (Proceedings adjourned.)

23

24

25
```

## **C E R T I F I C A T E**

I, James P. Gibbons, Official Court Reporter for the United States District Court for the District of Massachusetts, do hereby certify that the foregoing pages are a true and accurate transcription of my shorthand notes taken in the aforementioned matter to the best of my skill and ability.

/s/James P. Gibbons                    October 2, 2013

_____
James P. Gibbons

JAMES P. GIBBONS, CSR, RPR, RMR
Official Court Reporter
1 Courthouse Way, Suite 7205
Boston, Massachusetts 02210
jmsgibbons@yahoo.com