UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | MDL No. 2419<br>Master Dkt.: 1:13-md-02419-FDS |
| THIS DOCUMENT RELATES TO:<br><br>All Actions | |

**PLAINTIFF STEERING COMMITTEE'S RESPONSE TO
SAINT THOMAS ENTITIES' MOTION TO RECONSIDER MDL ORDER NO. 7**

On September 26, 2013, Saint Thomas West Hospital, Saint Thomas Network, and Saint Thomas Health (collectively referred to as the "Saint Thomas Entities") filed a Motion to Reconsider the Court's entry of MDL Order No. 7 (Dkt. No. 457, the "Motion to Reconsider".) Plaintiffs, through the Plaintiffs' Steering Committee ("PSC"), file this Response in Opposition to the Motion to Reconsider.

**INTRODUCTION**

The Saint Thomas Entities seek reconsideration of Court's MDL Order No. 7 (Dkt. No. 438, filed on September 18, 2013, the "CMO"), establishing the timing for: 1) filing a master complaint and responses thereto; 2) filing of answers and/or motions to dismiss for Unaffiliated Defendants[1] in five specific states; and 3) identifying an initial set of six bellwether cases. The Court arrived at the CMO after months of deliberation involving input from the PSC, the NECC bankruptcy trustee, and many Affiliated and Unaffiliated Defendants. The PSC believes that the CMO strikes the appropriate balance between the efficiencies to be gained in the MDL-process,

---

[1] For consistency, this response will use the Definitions in the CMO.

-1-

the needs for individual plaintiffs to obtain efficient and proper redress of injuries sustained, and the desire of certain defendants to have appropriate threshold dispositive motions decided early in the litigation.

The Motion to Reconsider does not request any specific changes to the CMO.  Instead, it invites this Court to indefinitely postpone all substantive proceedings until all Unaffiliated Defendants weigh in on case management issues and postpone any bellwether selection process until the entire universe of cases are filed and transferred into this MDL – a result that would undoubtedly lead to significant, possibly years, of unnecessary delay in these proceedings. Waiting to set deadlines until all defendants who may wind up in the MDL are in fact in the MDL will bring this litigation to a standstill.

The Saint Thomas Entities accuses the Plaintiffs' Steering Committee of misleading the Court about the Unaffiliated Defendants' approval or participation in the process of negotiating CMO 7.  Each allegation is false.

> 1. St. Thomas Entities: *"[The PSC] has assured this Court that it has been working with [the Unaffiliated Defendants] who they misleadingly represent to have concurred with the PSC's actions"*[2]

The PSC never represented to the Court that the Unaffiliated Defendants concurred with the PSC's proposed CMO order.  At the September 12 Status Conference, Ms. Parker said the opposite: "I won't say though that anyone signs off on the schedule."[3]  In the Motion for Entry of Revised Case Management Schedule, the PSC specifically did not refer to the Unaffiliated

---

[2] Motion to Reconsider at P. 2.
[3] Sept. 12 Hearing Tr. at 14-15.

Defendants as parties who had agreed to the proposed CMO order.[4]  The Saint Thomas Entities do not sight to any statements by the PSC that support this accusation.

> 2. St. Thomas Entities: *"The revised case-management order proposed by the PSC…did not reflect a vetting of the issues with the Unaffiliated Defendants." (Motion to Reconsider at P. 2.)*

As can be seen from the attached Parker Decl.,[5] the PSC solicited comments on the proposed schedule from the Affiliated Defendants, the Unaffiliated Defendants, and potential defendants – including counsel for clinics who had filed limited notices of appearance in the MDL for the purposes of contesting the PSC's subpoenas on the schedule prior to filing it with the Court.[6]  Counsel for the Saint Thomas Entities were copied on at least ten emails discussing the proposed schedule and times for a meet and confer.  Counsel for the Saint Thomas Entities were invited to the meet and confer call.  Yet the Saint Thomas Entities remained silent and provided no response to the PSC's solicitation of comments on the proposed schedule.[7]

> 3. St. Thomas Entities: *"[T]he PSC does not appear to have been gathering the medical records of its own clients at the same time it has asked this Court to set an entirely unrealistic case management schedule." (Motion to Reconsider at 3.)*

As Ms. Parker explained during the September status conference, the PSC and other plaintiffs' counsel have been actively accumulating medical records as part of this litigation.[8]  Before filing complaints in court, litigants bringing medical malpractice claims against Tennessee clinics must first provide 60-day pre-suit notice to clinics (T.C.A. § 29-26-121) and present medical records to an expert for pre-suit certification (T.C.A. § 29-26-122).  The notice

---

[4] Dkt. No. 421 at p. 3.
[5] Declaration of Kristen Johnson Parker at ¶¶ 2-11 and Exhibit A-E, attached as Exhibit1 (hereinafter the "Parker Decl.").
[6] Parker Decl. at ¶ 2 and Ex. A.
[7] Parker Decl. at ¶ 11.
[8] Sept. 12 Hearing Tr. 49 (discussing efforts of PSC to collect medical records).

requirements of T.C.A. § 29-26-121 also require that plaintiffs provide a HIPAA-compliant medical release so that clinics served with a notice can begin medical record collection. The Saint Thomas Entities admit they have been subject to hundreds of suits in the last few weeks, presumably meaning they have been in possession of notice letters for at least sixty days and attorneys are certifying that they have obtained records and vetted them with an expert.

In short, 1) the PSC did not represent that the Unaffiliated Defendants agreed to the proposed schedule; 2) the PSC vetted the proposed schedule with the Unaffiliated Defendants and objecting subpoena recipients, including counsel for St. Thomas; and 3) the PSC and other plaintiffs have been collecting medical records.

The Saint Thomas Entities offers no justification for why it did not bring any of its concerns prior to the Court entering the CMO Order. The Saint Thomas Entities could have raised these concerns before, during, and after the September 12 hearing but chose instead to remain silent until 9 days after the Court issues its CMO Order. This Court should of course consider reasonable requests for short extensions or other sensible modifications to the CMO. But the St. Thomas Entities belated request to throw out the existing schedule should be rejected. The Court should deny the Motion to Reconsider.

## ARGUMENT

At the outset, the Motion to Reconsider should be denied for the Saint Thomas Entities' failure to comply with the meet and confer process as required by Local Rule 7.1(a)(2). Had the Saint Thomas Entities done that, the PSC may have been able to narrow the issue as the PSC may have been able to clarify issues raised in the Motion to Reconsider or made reasonable accommodations. Instead, the Saint Thomas Entities rushed to file a meritless motion that invites this Court to undo much of the work already done in crafting a reasonable scheduling

order and proposes as an alternative an indefinite delay of the substantive deadlines controlling the prudent advancement of this MDL. The Court should decline this invitation, deny the Motion to Reconsider, refuse to alter or amend the CMO Order, and allow the case to proceed according to the balanced and reasonable schedule already adopted by the Court.

> **I.  The Saint Thomas Entities Had Ample Time To Provide Input To The CMO Order But They Failed To Avail Themselves Of This Opportunity**

Despite the PSC requesting and obtaining input from many stakeholders in crafting the proposed schedule and despite the fact that the Court already considered many objections to the proposed scheduling order, the Saint Thomas Entities claim the CMO Order was not properly vetted. This not only ignores the record of this case, but it ignores the fact that the Saint Thomas Entities had the opportunity to help craft the CMO Order, but failed to do so.[9]

As can be seen from the Parker Declaration, the PSC solicited comments on the proposed CMO Order from the Unaffiliated Defendants, including the Saint Thomas Entities.[10] The Saint Thomas Entities failed to respond to this invitation,[11] but now wish to complain about the vetting process. This is improper and time-wasting. The PSC cannot reasonably be expected to efficiently manage this MDL when a defendant engages in such behavior, and the Court should not countenance such tactics aimed at unnecessarily delaying these proceedings.

The Saint Thomas Entities attempt to justify this behavior by claiming their counsel has only made a limited appearance to object to the PSC-issued subpoenas and that Court had no authority to exercise jurisdiction over them. This is a red-herring. The Saint Thomas Entities

---

[9]  Parker Decl. at ¶¶ 2-11 and Exs. A-E.
[10] Parker Decl. at ¶¶ 2-11 and Exs. A-E.
[11] Parker Decl. at ¶ 11.

have known for months that they would be involved in this MDL[12], and most importantly they had been served with complaints naming them as a defendant in cases officially transferred into the MDL at least 9 days **before** the Court entered the CMO Order.[13]  Its affiliated defendants, the Saint Thomas Outpatient Neurosurgical Center and individual medical providers working at that clinic (collectively "STOPNC") filed a motion objecting to the proposed order, and this STOPNC motion was considered by the Court in issuing the CMO Order.[14]  The Saint Thomas Entities offer no justification why its affiliated clinic was able to file a timely objection to the scheduled proffered by the PSC, but they were prevented from doing so.[15]

In short, the Saint Thomas Entities were invited to comment on the proposed CMO order circulated by the PSC and were named defendants in cases that were already transferred into the MDL prior to the Court entering the CMO Order - and prior to the PSC moving for the entrance of that order - yet it only objected to the proposals 9 days **after** entrance of the CMO Order.  These tactics appear aimed only at delaying and complicating this already complicated proceeding and offer no substantive ground to reconsider issues already decided.[16]

---

[12] The Saint Thomas Entities are affiliates of STOPNC, which is one of the largest single customers, if not the largest customer, of NECP MPA during the relevant time period.  STOPNC is the epicenter of the meningitis outbreak in Tennessee, where the CDC has confirmed a total of 153 cases of meningitis/spinal infection and 16 deaths.

[13] *See e.g.* CTO-17 (Docket # 409) listing the following cases where the Saint Thomas Entities are named as defendants: *May v. Ameridose, et al.*, Case No. 13-0836, transferred from Middle District of Tennessee and *Carmen v. Ameridose, et al.*, Case No. 13-0838 transferred from the Middle District of Tennessee.

[14] *See* CMO Order, Dkt. No. 438, ("The Court has also considered oppositions to the proposed order submitted by [STOPNC]…").

[15] STOPNC also filed a motion seeking to join the Saint Thomas Entities' Motion to Reconsider.  Dkt. No. 459.  The Court granted this motion.  Dkt. No. 461.  To the extent that a response is required to Dkt. No. 459, the PSC respectfully requests that the Court consider this opposition a response to Dkt. No. 459.

[16] *See e.g.*, *A. J. Props., LLC v. Stanley Black & Decker, Inc.,* Case No. 11-10835-FDS, 2013 U.S. Dist. LEXIS 14727 (D. Mass February 4, 2013) (Saylor) ("On a motion for reconsideration,

### II. The CMO Order Strikes The Appropriate Balance With Regard To Pleading Requirements

The Saint Thomas Entities provide no significant addition to the discussion already considered by the Court in crafting its well-balanced and reasoned CMO Order. As the Court is well aware, the CMO Order stays the deadline of filing answers or other responsive pleadings for the vast majority of defendants in this action. It only requires responsive pleadings to be filed by a small subset of Unaffiliated Defendants located in Alabama, Kentucky, Louisiana, Nevada, Ohio, and Tennessee.[17] The Court will recall, it struck this well-balanced approach to ensure that plaintiffs in one-year statute of limitations had ample time to add, if necessary, additional parties to suits in the event that Unaffiliated Defendants claimed comparative fault as a defense.

The Saint Thomas Entities claim this reasonable accommodation is unnecessary because the PSC can look to complaints filed in three state court actions for the identity of parties the Saint Thomas Entities plan on claiming are at comparatively at fault in this litigation, but this ignores the fact that those answers are not binding on the hundreds of other plaintiffs with claims against the Saint Thomas Entities. Moreover, the identity of these parties may differ given the facts of each individual's claims.

Additionally, the Saint Thomas Entities claim they should be allowed to benefit from the efficiencies of the Master Complaint and Master Answer process because they risk having to answer over a hundred individual answers under the current CMO Order. Although the PSC

---

a court will not entertain old arguments previously considered and rejected or new arguments that could (and should) have been presented prior to the district court's original ruling.") *Villanueva-Mendez v. Vazquez*, 360 F. Supp. 2d 320 (D.P.R. 2005) ("A motion for reconsideration is not a means for a party to request the court to rethink a decision it has already made, rightly or wrongly.")

[17] The Saint Thomas Entities, because they are located in Tennessee, fall into this very limited and tailored exception.

obviously believes that the efficiencies of the Master Complaint/Master Answer process must be utilized in this MDL, those efficiencies cannot and should not be gained at the expense of individual plaintiff's rights. And that would occur here if the one-year statute states were delayed any further in obtaining the identity of parties for which comparative fault may lie, and as already discussed, the Saint Thomas Entities offer no real solution to this problem. Instead it offers nothing but further delay, which will only exasperate this problem.

Given that the Court has already considered and crafted a well-balanced scheduling order that properly takes into consideration the efficiencies to be gained within the MDL with the potential cost to individual plaintiffs of further delay and the fact that the Saint Thomas Entities provide no real addition to this discussion or alternative, the Motion to Reconsider provides no reasonable basis to conclude that the CMO Order needs recalibrating.

### III.    The Bellwether Deadlines Are Not Premature

As explained in greater detail at the September 27, 2013 hearing, the PSC anticipates filing a future order specifically addressing bellwether issues. The MDL Order at issue here merely establishes the first date (January 24, 2014) upon which a selection of an initial set of potential bellwether cases should be submitted, but the vast majority of bellwether-related issues will be addressed in a further order.[18]

The Saint Thomas Entities appear confused as to this fact and incorrectly assume that the CMO Order will govern the entirety of the bellwether process. Had the Saint Thomas Entities properly met and conferred with the PSC before filing its Motion to Reconsider, this fact could have been fully explained and may have assuaged many of their concerns.

---

[18]  Sept. 12 Hearing Tr. at 17-19 (discussing bellwether selection process).

In any event, a January 24, 2014 selection of initial bellwether cases, although admittedly ambitious, violates no rule of law. As the Saint Thomas Entities must concede, selection of bellwether cases is not a "one-size fits all" process and it is important to tailor the selection of bellwether cases to the particular circumstances of each case.

The Saint Thomas Entities propose, quite absurdly, that work on bellwether selection should be postponed until after the "Entire Universe of Cases" – which the Saint Thomas Entities appear to mean *all* cases - have been filed in the MDL.[19] In other words, the Saint Thomas Entities propose not even starting the bellwether process until years from now. This is absurd and not consistent with an efficient and timely administration of the MDL. The time to begin the initial process of bellwether selection is when a sufficient number of cases have been filed to allow for the "major variables" of the litigation to be identified.[20]

The PSC believes that we are at the point given the unique nature of this MDL and are willing to push an aggressive bellwether process to ensure that the thousands of individuals impacted by this tragedy do not have to wait any longer than necessary to see justice served. The Saint Thomas Entities on the other hand, invite this Court to put this process off many years with little appreciation for the troubling circumstances that plaintiffs find themselves in.

Finally, the Saint Thomas Entities offer the unsupported notion that bellwether selection is improper at this time because the PSC has not begun the process of medical record collection. As explained above, this is not true, and the Saint Thomas Entities know it is not true, at least as it relates to the hundred or so cases filed to date against the Saint Thomas Entities. Interestingly, the Saint Thomas Entities provide no evidence or explanation as to how it knows the status of

---

[19] Motion to Reconsider at 11.
[20] Fallon, Bellwether Trials, 82 TUL. L. REV. at 2324-25

medical records collection for cases not involving STOPNC patients. They certainly did not get that impression from the statement of the PSC who have clearly stated in open court that this process has started and that bellwether selection will not "start from scratch" because the PSC believes it has in place an adequate medical record collection process at this time.[21]

## CONCLUSION

For the foregoing reasons, the PSC respectfully request that the Court deny in its entirety the Motion to Reconsider and refuse to alter or amend MDL Order No. 7.

Dated: October 07, 2013

Respectfully submitted,

/s/ J. Gerard Stranch, IV
J. Gerard Stranch, IV
Benjamin A. Gastel
BRANSETTER, STRANCH & JENNINGS PLLC
227 Second Avenue North
Nashville, TN  37201
Phone: (615) 254-8801
Fax: (615) 255-5419
gerards@branstetterlaw.com

*Tennessee Lead Counsel for PSC*

Thomas M. Sobol
Kristen Johnson Parker
HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Phone: (617) 482-3700
Fax: (617) 482-3003
tom@hbsslaw.com

---

[21] Sept. 12 Hearing Tr. at 48-50.

kristenjp@hbsslaw.com

*Plaintiffs' Lead Counsel*

Elizabeth J. Cabraser
Mark P. Chalos
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111
Phone: (415) 956-1000
Fax: (415) 956-1008
ecabraser@lchb.com
mchalos@lchb.com

*Federal/State Liaison*

Marc E. Lipton
LIPTON LAW
18930 W. 10 Mile Road
Southfield, MI 48075
Phone: (248) 557-1688
Fax: (248) 557-6344
marc@liptonlawcenter.com

Kim Dougherty
JANET, JENNER & SUGGS, LLC
75 Arlington St.
Suite 500
Boston, MA 02116
Phone: (617) 933-1265
kdougherty@myadvocates.com

Patrick T. Fennell
CRANDALL & KATT
366 Elm Avenue, S.W.
Roanoke, Virginia 24016
Phone:  (540) 342-2000
pfennell@crandalllaw.com

Mark Zamora
ZAMORA FIRM
6 Concourse Parkway, 22nd Floor
Atlanta, GA 30328
Phone: (404) 451-7781

-12-

       Fax: (404) 506-9223
       mark@markzamora.com

       Plaintiffs' Steering Committee

-13-

## **CERTIFICATE OF SERVICE**

 I, J. Gerard Stranch, hereby certify that on the 7th day of October, 2013, the foregoing document was served through the Court's ECF on the registered participants as identified on the Notice of Electronic Filing (NEF).

s/ J. Gerard Stranch, IV  
J. Gerard Stranch, IV (TBA No. 023045)
