UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

)
IN RE: NEW ENGLAND                                  )
COMPOUNDING PHARMACY, INC.                          )
PRODUCTS LIABILITY LITIGATION          )          MDL No. 13-2419-FDS
                                                   )
This Document Relates To:                           )
                                                   )
    All Actions                                    )
                                                   )
_____)

## ORDER ON MOTIONS TO QUASH AND OBJECTIONS TO SUBPOENAS[1]

November 13, 2013

Boal, M.J.

    Various defendants and non-party entities have filed motions to quash and objections to

discovery subpoenas served by the Plaintiff's Steering Committee ("PSC").  The District Court

granted the motions to quash with respect to the medical records of non-plaintiffs and referred

the remaining objections to this Court for resolution.  See Docket Nos. 370, 396, 450, 521, 550.

After careful consideration of all the arguments presented, this Court makes the following

rulings.

I.      FACTUAL AND PROCEDURAL BACKGROUND

    This litigation involves claims for wrongful death and personal injury arising out of the

administration of an injectable steroid, methylprednisolone acetate ("MPA"), manufactured by

---

[1] This ruling applies to Docket Nos. 218, 219, 220, 221, 222, 236, 241, 244, 254, 259, 261, 269, 275, 279, 288, 298, 303, 304, 305, 306, 307, 308, 311, 314, 317, 334, 338, 342, 345, 347, 348, 353, 354, 355, 356, 358, 360, 361, 368, 372, 383, 400, 405, 451, 508, 524, 527, 528, 530, 532, 533, 548.

defendant New England Compounding Pharmacy, Inc. ("NECC").  The complaints allege, in

substance, that NECC produced contaminated MPA that led to serious fungal infections and, in

some cases, death.

On Lawsuits alleging death or injury based on contaminated MPA have been filed in

multiple federal and state jurisdictions around the country, including the District of

Massachusetts.  In February 2013, the Judicial Panel on Multidistrict Litigation ("JPML") issued

an order under 28 U.S.C. § 1407 transferring various federal-court proceedings to this Court for

coordinated and consolidated pretrial proceedings.  Docket No. 2.  Subsequent orders of the

JPML have transferred "tag-along" cases to this Court.  In the meantime, NECC filed for

bankruptcy protection.  On June 12, 2013, the District Court granted the bankruptcy trustee's

motion to transfer all personal injury tort and wrongful death cases (1) against NECC or any

affiliated entity or individual pending in federal court, (2) against NECC or any affiliated entity

or individual in the process of being removed from state court, and (3) pending in state courts in

which any party has asserted a claim (including a claim for contribution or indemnity) against

NECC or any affiliated entity or individual.  Docket No. 176.

On June 21, 2013, the District Court issued an order granting the PSC leave to serve

subpoenas and a qualified order regarding the protection of health information (the "Order

Authorizing Subpoenas").  Docket No. 192.  The District Court also issued an order providing

for the central enforcement of subpoenas by this District Court.  Docket No. 193.

The PSC issued approximately 90 subpoenas to pain clinics, doctors, and/or healthcare

providers.  Various defendants and non-party entities filed motions to quash and objections to

the discovery subpoenas served by the PSC.[2]  In response to the objections, the PSC revised the

scope of the subpoenas.  See Docket Nos. 325-3; 464.  The PSC also decided to forego record

keeper depositions, unless unique circumstances require the deposition to take place.[3]  The

District Court granted the motions to quash "to the extent that any relevant subpoena seeks to

obtain patient medical records or other patient information as to individuals who are not parties

to any action presently pending in this Court for the purpose of providing notice to possible

claimants."  Docket No. 370 at 3.[4]  The District Court referred the remaining objections to this

Court for resolution.  See Docket Nos. 370, 396, 450, 521, 550.

On August 6, 2013, the PSC filed a report and chart for the purpose of identifying the

issues remaining for resolution.  Docket No. 377.  Some parties filed pleadings indicating their

objections to the PSC's characterization of the outstanding issues.  See Docket Nos. 378, 384.

On August 15, 2013, the District Court entered a mediation order that provided for an opt-in

procedure and a stay of discovery for those who opt-in.  Docket No. 394.  Some parties filed

pleadings indicating that some of the issues had been resolved.  See Docket No. 451.

The Court held a status conference on September 25, 2013.  After hearing from the

parties, and in order to facilitate the speedy and just resolution of the outstanding motions to

_____

[2] For convenience, the Court refers to the parties objecting to the subpoenas as
"respondents."

[3] The subpoenas were served with a notice of deposition for a "keeper of records."  The
PSC stated that it would forego taking records custodian depositions, barring extenuating
circumstances.  See Docket No. 325 at 14.  For example, the PSC has indicated its intention to
conduct such depositions of healthcare providers in Tennessee.  Id. at n. 10.  According to the
PSC, unique features of Tennessee law require that the depositions go forward.  Id. at n. 9, 10.

[4] The District Court also denied all objections concerning the jurisdiction or centralized
authority of the District Court to issue and enforce the subpoenas.  See Docket No. 340.

quash and objections, the Court ordered the parties to confer in an attempt to provide the Court

with a joint chart identifying the outstanding issues.  Docket No. 455.  The PSC filed a joint

updated chart on October 16, 2013.  Docket No. 514.[5]  Several clinics filed responses to the

chart.  See Docket Nos. 527-530, 532-533. The PSC filed a supplemental consolidated response

and a revised chart of objections on November 5, 2013.  Docket No. 544.  One of the

respondents filed a response to the PSC's supplemental consolidated response.  Docket No. 548.

The Court heard oral argument on November 7, 2013.

II.    ANALYSIS

    A.    Jurisdiction

    Title 28, United States Code, Section 1407, provides for the transfer of actions pending in

different districts for the purpose of coordinated and consolidated pretrial proceedings.  Section

1407(a) states, in relevant part: "When civil actions involving one or more common questions of

fact are pending in different districts, such actions may be transferred to any district for

coordinated or consolidated pretrial proceedings."  28 U.S.C. § 1407(a).  "The meaning of

'pretrial proceedings' has been interpreted liberally to give the transferee district court control

over any and all proceedings prior to trial."  In re Neurontin Mktg., Sales Practices, and Products

Liab. Litig., 245 F.R.D. 55, 57 (D. Mass. 2007) (citations omitted).

    The scope of the MDL judge's authority is similarly broad.  Title 28, United States Code,

---

[5] On October 3, 2013, a conference call was held by the PSC and counsel for any of the
respondents who wished to participate.  Docket No. 514 at ¶ 6.  The PSC took input from
counsel for the respondents regarding changes to the chart.  Id.  In addition, the PSC invited
counsel for the respondents to provide written requests for changes to the chart.  Id.  On October
14, 2013, the PSC circulated a revised chart to counsel for the respondents, giving them a final
opportunity to make additional requests or suggestions for modifications to the chart.  Id. at ¶ 8.

Section 1407(b) specifically grants district court judges in transferee courts "the powers of a district judge in any district for the purpose of conducting pretrial depositions in such coordinated or consolidated pretrial proceedings."[6]  28 U.S.C. § 1407(b).  Accordingly, the MDL judge has the power to "compel production by an extra-district nonparty; enforce, modify, or quash a subpoena directed to an extra-district nonparty; and hold an extra-district nonparty deponent in contempt, notwithstanding the nonparty's physical situs in a foreign district where discovery is being conducted."  United States ex rel. Pogue v. Diabetes Treatment Centers of Am., Inc., 444 F.3d 462, 468-469 (6th Cir. 2006); see also In re Neurontin Mktg., Sales Practices, and Products Liab. Litig., 245 F.R.D. at 58-59; In re Asbestos Products Liab. Litig., 256 F.R.D. 151, 154 (E.D. Pa. 2009); In re San Juan Dupont Plaza Hotel Fire Litig., 117 F.R.D. 30, 32 (D.P.R. 1987).

The powers of the transferee judge are plenary.  In re San Juan Dupont Plaza Hotel Fire Litig., 117 F.R.D. at 32.  "As an ordinary consequence of a transferee judge's additional duties, he may designate a United States magistrate to resolve non-dispositive civil motions," as the District Court did in this case.  Id.

The goals of Section 1407(b) "are best served by applying the transferee court's interpretations of federal law, rather than being bound by the precedents of the subpoena-issuing court."  In re Automotive Refinishing Paint Antitrust Litig., 229 F.R.D. 482, 486 (E.D. Pa. 2005). As one court has observed:

---

[6] Although Section 1407(b) refers to "pretrial depositions," the statute has been construed to encompass subpoenas duces tecum as well.  See In re Neurontin Mktg., Sales Practices, and Products Liab. Litig., 245 F.R.D. at 58-59; In re Asbestos Products Liab. Litig., 256 F.R.D. 151, 154 (E.D. Pa. 2009); In re San Juan Dupont Plaza Hotel Fire Litig., 117 F.R.D. 30, 32 (D.P.R. 1987).

Section 1407 is designed to provide for the 'just and efficient conduct' of related cases filed in various federal districts by consolidating them for pretrial purposes before one court.  The legislative history of § 1407 'makes it clear that [the statute's] remedial aim is to eliminate the potential for conflicting contemporaneous pretrial rulings by coordinate district and appellate courts in multidistrict related civil actions.'  This purpose would be undermined if we were required to apply the precedents of each court issuing a discovery subpoena, rather than relying on the law of the transferee forum.  Moreover, because '[d]iscovery disputes that arise in an MDL action are appealed to the circuit court in which the action originated," it is sensible for reasons of 'uniformity and intra-circuit consistency' to apply the law of the forum where the MDL action is being adjudicated.  While the [sic] 'the law of [the subpoena-issuing] forum on a federal question . . . merits close consideration,' we conclude that it 'does not have *stare decisis* effect in a[n] [MDL] forum situated in another circuit."

Id. (internal citations omitted).

B.      Standard Of Review

"Discovery procedures set forth in the Federal Rules of Civil Procedure seek to further the interests of justice by minimizing surprise at trial and ensuring wide-ranging discovery of information."  Cartel Asset Mgmt. v. Ocwen Fin. Corp., No. 01-cv-01644, 2010 WL 502721, at *9 (D. Colo. Feb. 8, 2010) (citing United States ex rel. Schwartz v. TRW, Inc., 211 F.R.D. 388, 392 (C.D. Cal. 2002)).  To that end, Rule 26(b) permits "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . ." or discovery of any information that "appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b).  Rule 26(b)(1) generally permits liberal discovery of relevant information.  Baker v. Liggett Group, Inc., 132 F.R.D. 123, 125 (D. Mass. 1990).  As the Supreme Court has instructed, because "discovery itself is designed to help define and clarify the issues," the limits set forth in Rule 26 must be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case."  Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978).

There are limits, however, on the scope of discovery.  A court must limit discovery if it determines that the discovery sought is (1) unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the projected discovery in resolving the issues.  See Fed. R. Civ. P. 26(b)(2)(c).

A Rule 45 subpoena must fall within the scope of proper discovery under Fed. R. Civ. P. 26(b)(1).  Miller v. Allstate Fire & Cas. Ins. Co., No. 07-260, 2009 WL 700142, at *2 (W.D. Pa. Mar. 17, 2009) (citation omitted).  Thus, the information sought by a subpoena must be: (1) not privileged; (2) relevant to the claim or defense of any party; and (3) either admissible or reasonably calculated to lead to the discovery of admissible evidence.  Fed. R. Civ. P. 26(b)(1).

Rule 45 provides that a person subject to a subpoena may within a specified time period avoid or limit compliance in a number of ways: (1) by serving written objections pursuant to Rule 45(c)(2)(B); (2) by moving to quash or modify pursuant to Rule 45(c)(3); or (3) by moving for a protective order under Rule 26(c).  Fed. R. Civ. P. 45(c).  An order compelling compliance with a subpoena "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance."[7]  Fed. R. Civ. P. 45(c)(2)(B)(ii).

---

[7] Rule 45(c)(1) also protects a responding party from undue burden or expense.  Pursuant to Rule 45(c)(1), a "party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."  Fed. R. Civ. P. 45(c)(1).

C.     Jurisdictional And Procedural Objections

1.     Improper Service

Several respondents have objected to the subpoenas on the grounds that they were

improperly served by Federal Express or certified mail.  These respondents argue that Rule 45

requires in-hand service of subpoenas.

Rule 45(b)(1) of the Federal Rules of Civil Procedure provides that "[s]erving a subpoena

requires delivering a copy to the named person . . ."  Fed. R. Civ. P. 45(b)(1).  Courts are split on

the meaning of "delivering a copy."  Prall v. Hartford Prosecutors, No. 3:09 CV 1047 (JBA),

2011 WL 1336385, at *1 (D. Conn. Apr. 7, 2011) (collecting cases).  According to a leading

treatise, "[t]he longstanding interpretation of Rule 45 has been that personal service of subpoenas

is required.  The use of the word 'delivering' in subdivision (b)(1) of the rule with reference to

the person to be served has been construed literally."  Wright & Miller, 9A Fed. Prac. & Proc.

Civ. § 2454 (3d ed. 2008).  Wright & Miller also note, however, an "emerging minority position"

that "service of a subpoena under Rule 45 [is] proper absent personal service."  Id.  "[C]ourts

that have embraced the minority position have in common a willingness to acknowledge *that*

*Rule 45 itself does not expressly require personal in-hand service*, and a practical appreciation

for the fact that *the obvious purpose of Rule 45(b) is to mandate effective notice* to the

subpoenaed party, rather than slavishly adhere to one particular type of service."  Bland v.

Fairfax County, Virginia, 275 F.R.D. 466, 468 (E.D. Va. 2011) (citation omitted; emphasis in

original).

This Court agrees with the growing minority trend and finds that service was proper in

this case, where it was effectuated by a means reasonably calculated to complete delivery and the

respondents received actual notice of the subpoena.[8]  Accordingly, the Court overrules this objection.

    2.    <u>Failure To Tender Witness Fees</u>

Several respondents argue that service of the subpoenas was defective because the PSC failed to tender witness or mileage fees with the subpoenas.  The PSC concedes that it did not tender those fees upon service of the subpoenas but states that it will pay the required fees for all depositions that actually occur.

Pursuant to 28 U.S.C. § 1821 and Rule 45(b)(1) of the Federal Rules of Civil Procedure, service of a subpoena commanding a person's attendance must be accompanied by tendering to the witness both the fees for one day's attendance and the mileage allowed by law.  28 U.S.C. § 1821(b) ("A witness shall be paid an attendance fee of $40 per day for each day's attendance.  A witness shall also be paid the attendance fee for the time necessarily occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance."); Fed. R. Civ. 45(b)(1).  Some courts have held that a failure to tender the appropriate sums at the time of service invalidates the subpoena and the non-party deponent is not required to attend the deposition.  <u>See</u>, <u>e.g.</u>, <u>Aevoe Corp. v. AE Tech Co., Ltd.</u>, No. 2:12-cv-00053-GMN-NJK, 2013 WL 4714273, at *1 (D. Nev. Aug. 30, 2013); <u>Brown v. Hendler</u>, No. 09 Civ. 4486 (RLE), 2011 WL 321139, at *2 (S.D.N.Y. Jan. 31, 2011); <u>Kador v. City of New Roads</u>, No. 07-682-D-M2, 2010 WL 3418265, at *1 (M.D. La. Aug. 26, 2010).  Other courts

---

[8] Universal Pain Management Medical Corporation d/b/a Universal Pain Management ("UPM") argues that it was never served with a subpoena, and instead was advised that a subpoena was forthcoming.  Docket No. 533 at 2.  However, the subpoena was never formally served.  Accordingly, the Court rules that UPM need not comply with the subpoena unless and until it is served with the subpoena.

have held that failure to tender the required fees is a "technical defect" that can be cured and refused to quash the subpoena on such grounds.  See, e.g., Richardson v. Glickman, No. CIV A 95-1954, 1997 WL 382048, at *2 (E.D. La. June 27, 1997).

Here, it appears that all of the subpoenas called for the attendance of a keeper of records to testify at a deposition thereby triggering the requirement that witness and mileage fees be tendered with the subpoenas.  However, the PSC has stated that it will not conduct records custodian depositions except for respondents in Tennessee.[9]  A subpoena commanding only production of documents does not require tender of attendance fees.  See Halawani v. Wolfenbarger, No. 07-15483, 2008 WL 5188813, at *5 (E.D. Mich. Dec. 10, 2008) (citation omitted).  Accordingly, the Court finds that failure to tender the fees does not invalidate the subpoenas.

3.      No Prior Notice To Parties

Some respondents argue that the PSC violated the requirement that parties be given prior notice before documents are sought via subpoena.  Specifically, where, as here, a subpoena "commands production of documents," then "before it is served, a notice must be served on each party."  Fed. R. Civ. P. 45(b)(1).  The PSC states that parties to the case were on notice prior to issuance of the subpoenas because the Court entered multiple orders permitting and addressing the subpoenas.  Docket No. 325 at 28.  In addition, the PSC shared copies of the attachment to the subpoena requesting documents to counsel of record in the case and incorporated comments from the defendants before the subpoenas were served.  Id.  In any event, subpoena recipients

---

[9] At oral argument, the participants stated that the Tennessee respondents have withdrawn their objections to the subpoena on this ground and the PSC has agreed to pay the fees for all depositions that actually occur.

cannot avoid the reach of a subpoena by arguing that the PSC failed to provide prior notice to other parties.  See, e.g., Steel Works Rebar Fabricators, LLC v. Alterra Am.  Ins. Co., No. 11-24032-CIV, 2012 WL 1918704, at *2 (S.D. Fla. May 25, 2012) (refusing to quash subpoena for lack of notice to parties when party cannot demonstrate any prejudice suffered for lack of timely notice); Flagg v. City of Detroit, No. 05-74253, 2008 WL 787039, at *1 (E.D. Mich. Mar. 20, 2008) (refusing to quash subpoena on grounds of failure to provide parties with prior notice because parties did have an opportunity to object after service); In re Asbestos Prods. Liab. Litig., 256 F.R.D. at 158 (no prejudice where the delay did not interfere with the parties' ability to file an objection prior to production of documents).  Given that the respondents have not shown any prejudice to them, and indeed production has not yet occurred, the Court declines to quash the subpoenas on this ground.

> 4.      Clinics That Are Parties Should Have Been Served A Request For
>         Documents Pursuant To Rule 34 Rather Than A Subpoena Pursuant To Rule 45

Certain respondents who are parties to the MDL[10] object to the subpoenas on the grounds that they should have been served a request for documents under Rule 34 rather than a subpoena pursuant to Rule 45, or that they have received both types of discovery requests.

Courts are split regarding whether a Rule 45 subpoena may properly be served on a party. See Mortg. Info. Servs., Inc. v. Kitchens, 210 F.R.D. 562, 564 (W.D.N.C. May 15, 2002) (collecting cases).  Just as the courts are split on this issue, so too are the leading treatises.  See id. (comparing Wright & Miller, 9A Federal Prac. and Proc., § 2452 to Moore's Federal Practice

---

[10] Those parties are St. Thomas Outpatient Neurosurgical Center, LLC and Howell Allen Clinic.  Other respondents objected on this ground as well but have since withdrawn their objections.

§ 34.02[5][c]).  Another court has noted that a majority of courts hold that use of a Rule 45 subpoena constitutes discovery, thus a party employing a Rule 45 subpoena to obtain discovery from a party to an action must also comply with the time constraints and other requirements applicable to other methods of formal discovery.  Peyton v. Burdick, No. 07-cv-0453, 2008 WL 880573, at *1 (E.D. Cal. Mar. 31, 2008) (citing Mortg. Info. Servs., 210 F.R.D. at 565-568).

The Court declines to quash the subpoenas on this ground.  However, the Court notes that any subpoenas to parties must comply with the other rules applicable to parties.  For example, a Rule 34 request for production of documents requires a minimum of a 30-day response period.  Accordingly, subpoenas to parties must provide for at least 30 days to respond.

The Court also notes that it appears that certain party respondents have also received requests for production of documents and other written discovery requests since service of the subpoenas.  The PSC appears to be seeking to enforce the subpoenas as well.  To the extent that the written discovery requests overlap with the Rule 45 subpoenas, they would violate Rule 26's prohibition on duplicative discovery.  Accordingly, the Court finds that any respondent who is a party need not answer to the same requests twice.

D.      Burden Objections

1.      Undue Burden

Many of the respondents argue that the request for production of documents is overly broad and unduly burdensome.  Rule 45(c)(3) provides that "[o]n a timely motion, the issuing court must quash or modify a subpoena that . . . subjects a person to undue burden."  Fed. R. Civ. P. 45(c)(3)(A)(iv).  "When determining whether a subpoena duces tecum results in an undue burden on a party such factors as 'the relevance of the documents sought, the necessity of the

documents sought, the breadth of the request . . . expense and inconvenience' can be considered."  Behrend v. Comcast Corp., 248 F.R.D. 84, 86 (D. Mass. 2008) (citing Demers v. LaMontagne, No. 98-10762-REK, 1999 WL 1627978, at *2 (D. Mass. May 5, 1999)).

The party resisting discovery bears the burden of showing that the subpoena imposes an undue burden, and it "cannot rely on a mere assertion that compliance would be burdensome and onerous without showing the manner and extent of the burden and the injurious consequences of insisting upon compliance."  Sterling Merchandising, Inc. v. Nestle, S.A., No. 06-1015(SEC), 2008 WL 1767092, at *2 (D.P.R. Apr. 15, 2008) (quoting 9A Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 2459 (2d ed. 1995)); see also Ameritox, Ltd. v. Millennium Labs., Inc., No. 12-cv-7493, 2012 WL 6568226, at *2 (N.D. Ill. Dec. 14, 2012) ("To demonstrate undue burden, the movant must provide 'affirmative and compelling proof.'"); Biological Processors of Alabama, Inc. v. North Georgia Environmental Servs., Inc., No. 09-3673, 2009 WL 1663102, at *1 (E.D. La. June 11, 2009) (citation omitted) ("When the burdensomeness of a subpoena is at issue, the onus is on the party who alleges the burden to establish the burden with specificity, 'and assertions of a burden without specific estimates of staff hours needed to comply' are typically rejected.").

The respondents make no showing as to the nature and extent of the actual burden they would face in responding to the subpoenas.[11]  Rather, they argue that the requests are unduly burdensome because they are not parties to the case and the requests are not relevant.  However, the Federal Rules of Civil Procedure allow for discovery from non-parties.  The Court has no

---

[11] At oral argument, one counsel argued that redactions as a result of HIPAA concerns would be burdensome.

evidence of the quantity of documents sought.  On the record before it, therefore, the Court finds

that while it would undoubtedly be a burden, the respondents have not shown that any burden

would be undue.  To the extent that the respondents argue that the requests are overly broad

and/or not relevant, the Court will analyze those objections with respect to specific requests

below.

       2.       <u>Time To Comply</u>

       The subpoenas provided 21 or 30 days to respond.  Several respondents argue that such a

response period is unreasonable.

       Rule 45(c)(3) provides that a court must quash a subpoena that "fails to allow a

reasonable time to comply."  Fed. R. Civ. P. 45(c)(3)(A)(i).  Although Rule 45 does not define

"reasonable time," many courts have found fourteen days from the date of service as

presumptively reasonable.  <u>See</u>, <u>e.g.</u>, <u>Brown</u>, 2011 WL 321139, at *2 (nine days not reasonable);

<u>Cris v. Fareri</u>, No. 3:10CV1926, 2011 WL 4433961, at *2 (D. Conn. Sept. 22, 2011);

<u>McClendon v. Telohio Credit Union, Inc.</u>, No. 2:05-cv-1160, 2006 WL 2380601, at *2 (S.D.

Ohio Aug. 14, 2006).  Here, the District Court's order granting leave to serve subpoenas

provides that "[t]he subpoenaed entities must produce the requested information to the Vendor

within 30 days of receipt of the subpoena."  Docket No. 192 at ¶ 14.  Therefore, the Court finds

that any respondents required to produce documents by this Order must do so within 30 days

after the issuance of this Order, unless they appeal the order, in which case they must comply

within 30 days after any District Court ruling directing them to comply with the subpoena.

       3.       <u>Documents Outside The Clinic's Possession, Custody, Or Control</u>

       Some respondents have objected to the subpoenas on the grounds that they call for

documents outside their possession, custody, or control.  Rule 45 explicitly limits the scope of production.  Fed. R. Civ. P. 45(a)(1)(A)(iii).  Therefore, the respondents need only produce responsive documents within their possession, custody, or control.  To the extent that a respondent does not have responsive documents within its possession, custody, or control, it may simply state so.

> 4.    Documents Available From Public Sources And/Or NECC

Some respondents object to the subpoenas on the grounds that they call for the production of documents that are properly obtainable from public sources, such as the CDC, and/or from NECC.  "If the material sought by subpoena is readily available, either from a party to the action or from a public source, obtaining it through subpoena on a nonparty often will create an undue burden.  The mere availability of the documents from another source, however, does not preclude a subpoena directed to a nonparty if the party serving the subpoena can show that it is more expeditious to obtain the documents from a witness."  Gray v. Town of Easton, No. 3:12cv166, 2013 WL 2358599, at *3 (D. Conn. May 29, 2013) (quoting 9 James Wm. Moore et al., Moore's Federal Practice ¶ 45.66 (3d ed. 2012)).

The respondents have not identified specific documents that can be obtained from public sources.  The PSC has requested the disclosure of any communications received by the clinics from the CDC, the FDA or other governmental agencies concerning NECC products.  See Docket No. 464 at 11, ¶¶ 10, 14.  The PSC states that the request is intended to reveal not only what public announcements were made about NECC products, but what announcements about NECC products the clinics actually received and information that the clinics sent in response. Docket No. 325 at 18.  That information appears to be relevant and not obtainable from public

sources.

With respect to documents obtainable from NECC, the Court notes that NECC has filed for bankruptcy. The automatic bankruptcy stay generally prohibits obtaining discovery from the debtor as a party defendant to litigation. See In re Alem, No. 13-00119, 2013 WL 4840486, at *2 (Bankr. D.D.C. Sept. 10, 2013). While the PSC is not necessarily precluded from requesting all of the documents it seeks from NECC, it may also not be able to obtain everything it needs at this time. See, e.g., Kenoyer v. Cardinale, 489 B.R. 103, 115-116 (Bankr. N.D. Cal. 2013) (noting that it may be permissible to obtain discovery from debtor if one purpose of eliciting the discovery is to build a case against a non-debtor). In addition, as a bankrupt entity, NECC has limited resources. Accordingly, the Court will not quash the subpoena on this ground.

E.    Scope And Relevancy Objections

1.    The PSC Seeks Information Beyond The Limitations Imposed By The District Court's Order Granting Leave To Serve Subpoenas and Qualified Protective Order Regarding Protection Of Health Information

a.    Entities Not Found On The FDA's List

Respondent Neurosurgical Group of Chattanooga d/b/a Chattanooga Neurosurgery and Spine ("CNS") objects to the subpoena because it is not on the FDA's list of entities receiving NECC products. The District Court's Order Authorizing Subpoenas specifically limits the entities that may receive subpoenas to "entities listed in NECC's Customer List located at: http://www.fda.gov/downloads/Drugs/DrugSafety/FungalMeningitis/UCM325466. pdf as well as Pharmacy Support, Inc., Cura Script, Inc., and Clint Pharmaceuticals." Docket No. 192 at ¶ 10. Because CNS is not listed on the FDA list, the PSC had no authority to subpoena it and the

subpoena to CNS must be quashed.[12]

      b.     <u>Time Periods</u>

The original subpoenas sought documents for a period of five years ending on October 6, 2012.  The revised subpoena seeks documents for the period October 6, 2010 through October 6, 2012.  <u>See</u> Docket No. 464 at 10.  However, the Order Authorizing Subpoenas limited the time frame for requests to the period January 2011 through November 2012.  Docket No. 192 at ¶ 2.  Therefore, the Court finds that any responsive documents must be limited to the time period set by the District Court.

      c.     <u>Scope Of Requested Information</u>

Many respondents argue that the subpoenas should be quashed because they seek documents beyond the scope set by the Order Authorizing Subpoenas.  However, that order states that the PSC may serve requests for "any other information that lead counsel and the PSC reasonably determine necessary to the prosecution and resolution of these actions."  Docket No. 192 at ¶ 2.  Therefore, the Court finds that the subpoena may request information that is not specifically listed on the Order Authorizing Subpoenas so long as it otherwise complies with the discovery limits imposed by the Federal Rules of Civil Procedure and the Court's orders in this case.

      d.     <u>Third-Party Vendor</u>

The Order Authorizing Subpoenas provides that "[a]ll protected health information

---

[12] At oral argument, the PSC suggested that CNS was not on the FDA list because of confusion regarding its corporate structure.  CNS disputed the PSC's statements.  The Court, however, will not enforce the subpoena based solely on oral representations made during argument.

produced pursuant to this order shall be produced in electronic or hard copy format only to a third

party vendor (the "Vendor") to be selected jointly by the Plaintiff's Steering Committee, the

chapter 11 trustee appointed in NECC's chapter 11 case (the "Trustee"), and the Official

Committee of Unsecured Creditors in NECC's chapter 11 case (the "Official Committee"), after

meeting and conferring."  Docket No. 192 at ¶ 3.  That Vendor is to "hold such protected health

information in the strictest confidence and shall not release such information to any other person

or entity until further order of this Court."  Id. at ¶ 4.  Several parties object to the subpoenas on

the grounds that the PSC is attempting to circumvent that requirement.  However, the PSC has

identified Rust Consulting Omni Bankruptcy as the designated repository for all documents

containing protected health information.  Docket No. 237.  Responsive protected health

information shall be produced directly to the third-party vendor as provided in the District Court's

Order Authorizing Subpoenas.

> 2.     The Subpoenas Are Overly Broad And Seek Irrelevant Information

Many of the respondents object to the subpoenas on the grounds that the requests for

production of documents are overly broad and/or seek irrelevant information.

> a.     Categories Seeking Documents "Related In Any Way Whatsoever" To A Topic

As a preliminary matter, the Court notes that many of the subpoena requests seek "any and

all" documents "related in any way whatsoever" to a topic.  Such requests appear to be overly

broad on their face.  "Courts may find requests overly broad when they are 'couched in such

broad language as to make arduous the task of deciding which of numerous documents may

conceivably fall within [their] scope."  Western Resources, Inc. v. Union Pacific Railroad Co.,

No. 00-2043-CM, 2002 WL 1822430, at *2 (D. Kan. July 23, 2002) (citation omitted).  "Use of

broad terms such as 'relate to' or 'relating to' provides no basis upon which an individual or entity can reasonably determine what documents may or may not be responsive." Id.; see also Twigg v. Pilgrim's Pride Corp., No. 3:05-CV-40, 2007 WL 676208, at *9 (N.D. W. Va. Mar. 1, 2007).  Nevertheless, the Court finds that reading the requests to seek documents "reflecting" or "concerning" a particular topic is appropriate in this case.  Accordingly, the Court modifies the subpoenas to strike the language "related in any way whatsoever to" and replacing it with "concerning."

   b.  Non-Parties With No Patient-Plaintiffs v.
       Parties and Non-Parties with Patient-Plaintiffs

   The Court believes that it is appropriate to make a distinction between clinics that have no patients who have become plaintiffs in the MDL and have received no notices of claim or letters of representation from any potential plaintiff, on the one hand, and clinics who have patients who are plaintiffs in the MDL or have received notices of claim or letters of representation from potential plaintiffs, on the other.  The District Court has already quashed the subpoenas to the extent that they seek to obtain patient medical records or other patient information as to individuals who are not parties to any action presently pending in this Court.  Docket No. 370 at 3.  There appears to be little, if any, connection between the claims in this litigation and hospitals and clinics who have no patients who have filed suit, joined in the MDL litigation, or given notice of a claim against any party relating to NECC medications.  Except for one category of information, the PSC has not explained to the Court's satisfaction why this information is relevant or reasonably calculated to lead to the discovery of admissible evidence.  Request No. 7 seeks communications between each of the respondents and NECC, "including, but not limited to, any complaints or adverse reports made to [NECC] by the [respondent]."  See Docket No. 464 at 11.

The Court finds that communications to NECC regarding complaint or adverse reports are relevant to these cases in that they may show notice to NECC of the alleged contamination of its products.[13]  Accordingly, except with respect to this narrow category of information, the Court quashes the subpoenas that are directed to respondents who have no patients who have filed suit, joined in the MDL litigation, or given notice of a claim against that respondent relating to NECC medications.[14]

    c.    <u>Requests To Parties And Clinics With Patient-Plaintiffs</u>

The Court has reviewed the revised subpoena requests and finds that, with respect to respondents who are parties or who have patients who are plaintiffs in this litigation, the revised requests are reasonably calculated to lead to the discovery of admissible evidence with a few exceptions.  First, to the extent that any request may be interpreted to reveal information about patients who are not plaintiffs in this litigation, that information is not discoverable.[15]  For example, requests regarding the procurement of NECC medications includes a request for prescriptions submitted to NECC and prescription order forms.  <u>See</u> Docket No. 464 at ¶¶ 1, 3, 4. Any such responsive prescriptions shall be limited to patient-plaintiffs.

The PSC seeks information regarding the procurement of MPA or MPA equivalents from any producer other than NECC.  <u>See</u> Docket No. 464 at 10.  The PSC did not satisfactorily

---

[13] The PSC has not explained how other communications between the respondents and NECC are relevant.

[14] Should a respondent's patient(s) file suit, join in the MDL litigation, or give notice of a claim against that respondent in the future, then the PSC may serve a subpoena on that respondent consistent with this opinion.

[15] As a result, the Court need not address the respondents' argument that the subpoenas are a thinly veiled attempt to identify new clients.

explain how any such information would be relevant or reasonably calculated to lead to the discovery of admissible evidence.  Accordingly, the Court finds that respondents need not comply with this request.

In addition, insurance policies of non-parties are not discoverable.  The PSC has not satisfactorily explained how insurance policies of non-parties are reasonably calculated to lead to the discovery of admissible evidence in this litigation.  Any party-respondents are required to produce "any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment" as part of their automatic disclosure obligations.  See Fed. R. Civ. P. 26(a)(1)(A)(iv).

Finally, the Court finds that Articles of Incorporation and/or By-Laws for non-party clinics are not reasonably calculated to lead to the discovery of admissible evidence.

F.      Confidentiality And Privilege Objections

1.      Confidential And/Or Proprietary Business Information

A few respondents object to the subpoenas because they call for the disclosure of confidential information and/or proprietary business information.  However, they have not identified any reasons why any responsive confidential information cannot be protected by the protective order entered in this case.

On July 12, 2013, the District Court entered a Stipulated Order of Confidentiality.  Docket No. 280.  On August 16, 2013, the District Court entered an Amended Stipulated Protective Order of Confidentiality.  Docket No. 397.  That order allows "persons producing Discovery Material, including non-parties to this litigation" to designate information as "Confidential Discovery

Material."  Docket No. 397 at ¶ 2.  The Court identifies "[t]rade secrets, or other confidential or

proprietary research, development, manufacturing or commercial or business information," and

"[p]roprietary licensing, distribution, marketing, design, development, research, testing and

compounding information . . . ," among other categories of information, as being specifically

among those categories of documents eligible for protection under the order.  Id. at ¶ 2(B), (C).

Accordingly, the Court overrules this objection.

      2.     <u>Attorney-Client Privilege And/Or Work Product</u>

     Many respondents object to the subpoenas on the grounds that they call for the disclosure

of information protected by the attorney-client privilege and/or work product doctrine.

     The party claiming the protection of a privilege bears the burden of demonstrating, by a

fair preponderance of the evidence, not only that the privilege applies, but also that it has not been

waived.  <u>In re Keeper of the Records (Grand Jury Subpoena Addressed to XYZ Corp.)</u>, 348 F.3d

16, 22 (1st Cir. 2003); <u>see also</u> <u>Horace Mann Ins. Co. v. Nationwide Mutual Ins. Co.</u>, 240 F.R.D.

44, 47 (D. Conn. 2007); <u>In re Application for Subpoena to Kroll</u>, 224 F.R.D. 326, 328 (E.D.N.Y.

2004).  "Whatever quantum of proof is necessary to satisfy this obligation, a blanket assertion of

privilege is generally insufficient."  <u>In re Grand Jury Subpoena (Mr. S.)</u>, 662 F.3d 65, 71 (1st Cir.

2011) (citations omitted); <u>see also</u> <u>Horace Mann Ins. Co.</u>, 240 F.R.D. at 47 ("That burden cannot

be met by mere conclusory or ipse dixit assertions in unsworn motion papers authored by

attorneys.").  "Determining whether documents are privileged demands a highly fact-specific

analysis–one that most often requires the party seeking to validate a claim of privilege to do so

document by document."  <u>In re Grand Jury Subpoena (Mr. S)</u>, 662 F.3d at 71.  The "universally

accepted means" of claiming that documents are privileged is the production of a privilege log.

In re Grand Jury Subpoena, 274 F.3d 563, 576 (1st Cir. 2001).

Here, none of the respondents have produced a privilege log or provided categories of information that are likely privileged.  Therefore, the Court is unable to evaluate their claims of privilege.  At oral argument, one attorney for a respondent asserted that the objection was intended to preserve a respondent's right to assert the privileges.  Accordingly, the Court overrules the objection to the extent that it was intended to bar a response to the subpoena.  To the extent that any respondents are required to produce documents by this order, and they still claim that responsive documents include documents protected by the attorney-client privilege and/or work product doctrine, they must provide the PSC with a privilege log.

        3.       HIPAA And Physician-Patient Privilege

Many respondents have objected to the subpoenas on the grounds that they call for the disclosure of information protected under the physician-patient privilege and/or the production of which that would violate the requirements of the Health Insurance Portability And Accountability Act ("HIPAA") and its related regulations.

        a.       HIPAA

In 1996, Congress passed HIPAA, 42 U.S.C. §§ 1320d et seq., which governs the dissemination of protected health information.  HIPAA became effective on April 14, 2003. Wade v. Vabnick-Wener, 922 F. Supp. 2d 679, 685 (W.D. Tenn. 2010).

"HIPAA embodies Congress' recognition of 'the importance of protecting the privacy of health information in the midst of the rapid evolution of health information systems.'"  Id. (citations omitted).  "Congress enacted HIPAA, in part, to protect the security and privacy of [health information]."  Id. (citation omitted).  In order to accomplish this task, Congress delegated

to the Secretary of Health and Human Services broad authority to promulgate rules and

regulations protecting the privacy of patient health information.  <u>Id.</u> (citation omitted).  The

regulations place strict limitations on the ability of certain healthcare providers to release a

patient's medical records or discuss the patient's medical history without the express consent of

the patient.  <u>Id.</u> (citation omitted).

The regulations provide certain exceptions to the general rule against disclosure of patient

health information without the patient's prior written consent.  As relevant here, healthcare

providers may disclose patient information in connection with judicial and administrative

proceedings under certain circumstances.  <u>See</u> 45 C.F.R. § 164.512(a).  HIPAA regulations allow

disclosure of patient information "[i]n response to an order of a court or administrative tribunal,

provided that the covered entity discloses only the protected health information authorized by

such order."  45 C.F.R. § 164.512(e)(1)(i).  HIPAA regulations also allow health care providers to

disclose patient information in connection with judicial proceedings

> 'in response to a subpoena, discovery request, or other lawful process,' if the party
> seeking the information either notifies the patient (or at least makes a good faith
> effort to do so) or makes a 'reasonable effort' to secure a qualified protective
> order, that is, an order that prohibits the use or disclosure of the information
> outside the litigation and requires the return or destruction of the information at the
> end of the litigation.

<u>Northwestern Memorial Hosp. v. Ashcroft</u>, 362 F.3d 923, 925 (7th Cir. 2004) (citing 45 C.F.R.

§164.512(e)(1)).

Here, the records are being sought pursuant to a subpoena and the District Court entered a

Qualified Protective Order, which provides the limited circumstances under which protected

health information may be disclosed.  Accordingly, the Court finds that disclosure of health

protected information pursuant to the subpoenas does not violate HIPAA.

      b.    <u>Physician-Patient Privilege</u>

Respondent clinics in Tennessee, Michigan, Illinois, Maryland, Florida, North Carolina, Georgia, New Hampshire, New York, Pennsylvania, California, Connecticut, Nevada, and South Carolina object to the subpoenas on the grounds that it calls for information protected by each of their state's laws creating a physician-patient privilege.

There is no physician-patient privilege under federal common law, and no federal statute creates such a privilege. <u>See</u>, <u>e.g.</u>, <u>Heilman v. Waldron</u>, 287 F.R.D. 467, 472 (D. Minn. 2012); <u>In re Zyprexa Prods. Liab. Litig.</u>, 254 F.R.D. 50, 52 (E.D.N.Y. 2008).  In diversity cases, the existence of the physician-patient privilege is substantive for <u>Erie</u> purposes and thus state law controls whether federal courts recognize the privilege in such cases.  <u>See</u> <u>Filz v. The Mayo Foundation</u>, 136 F.R.D. 165, 167-168 (D. Minn. 1991) (citations omitted).  Rule 501 of the Federal Rules of Evidence further provides that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."  Fed. R. Evid. 501.  Accordingly, state law controls the existence and scope of the physician-patient privilege in diversity actions, such as the cases in this MDL.

Many states have created a physician-patient privilege by statute.  <u>Filz</u>, 136 F.R.D. at 168.  In general, the physician-patient privilege arises when a physician obtains information from the patient during the course of treatment.  <u>See</u> <u>In re Asbestos Prods. Liab. Litig.</u>, 256 F.R.D. at 155; <u>see</u>, <u>e.g.</u>, <u>Wade</u>, 922 F. Supp. 2d at 690-91 (Tennessee law requires health care providers to keep a patient's medical records and identifying health information confidential); <u>Jarmie v. Troncale</u>, 306 Conn. 578, 608 (Conn. 2012) (Connecticut physician-patient privilege prohibits disclosure of patient information in healthcare provider's files without the patient's explicit consent); <u>Johnson</u>

v. Detroit Medical Center, 291 Mich. App. 165, 168 (Mich. App. 2010) (Michigan law protects

from disclosure information a healthcare provider "acquired in attending a patient . . . if the

information was necessary to enable [the healthcare provider] to prescribe for the patient as a

physician, or to do any act for the patient as a surgeon.").  In most cases, when a patient puts his

health at issue in litigation, the privilege is waived.  In re Asbestos Prods. Liab. Litig., 256 F.R.D

at 155 n. 10 (citing Karl A. Menninger, II, *Confidentiality of Medical and Other Treatment*

*Records*, 87 Am. Jur. Proof of Facts 3d 259, § 20 (2008)); see also Wade, 922 F. Supp. 2d at 691

(the commencement of an action effectuate's the plaintiff's implied consent to produce medical

information); Jarmie, 306 Conn. at 608.

Here, the Court has already ruled that the PSC is not entitled to discover information

related to patients that are not plaintiffs in this litigation.  It would appear that by bringing an

action, most plaintiffs have waived any privilege.  To the extent that state law does not provide

for such a waiver, the Court sees no reason why the plaintiffs should not provide signed waivers

to the clinics that treated them for the purpose of obtaining the documents they seek.

Accordingly, the Court orders the PSC to obtain releases from each of the plaintiffs if they wish

to obtain documents containing information protected by the physician-patient privilege.

G.    Sanctions

Several respondents argue that the PSC violated its duty to take reasonable steps not to

impose an undue burden on respondents and, therefore, request sanctions pursuant to Rule

45(c)(1) of the Federal Rules of Civil Procedure.  Rule 45(c)(1) provides:

> **(1) Avoiding Undue Burden or Expense; Sanctions**.  A party or attorney
> responsible for issuing and serving a subpoena must take reasonable steps to avoid
> imposing undue burden or expense on a person subject to the subpoena.  The
> issuing court must enforce this duty and impose an appropriate sanction – which

> may include lost earnings and reasonable attorney's fees – on a party or attorney
> who fails to comply.

Fed. R. Civ. P. 45(c)(1).  Courts have analyzed motions for attorneys' fees pursuant to Rule 45(c)(1) in several different ways.  Some courts hold that a party should only be sanctioned if the litigant's actions would warrant sanctions under Rule 11 of the Federal Rules of Civil Procedure.  Orgulf Transport Co. v. Grillot Co., Inc., No. 97-228, 1998 WL 313732, at *2 (E.D. La. June 12, 1998).  Other courts engage in a case specific analysis to determine the reasonableness of the litigant's actions.  Id.  Yet other courts hold that reasonable steps to avoid imposing undue burden or expense on a person subject to a subpoena include all the matters encompassed in the certification of Rule 26(g):

> that to the best of the signer's knowledge, information, and belief, formed after a
> reasonable inquiry . . . [the subpoena is]:
>
> (i)    consistent with these rules and warranted by existing law or by a
>        nonfrivolous argument for extending, modifying, or reversing existing law,
>        or for establishing new law;
> (ii)   not interposed for any improper purpose, such as to harass, cause
>        unnecessary delay, or needlessly increase the costs of litigation; and
> (iii)  neither unreasonable nor unduly burdensome or expensive, considering the
>        needs of the case, prior discovery in the case, the amount in controversy,
>        and the importance of the issues at stake in the action.

Fed. R. Civ. P. 26(g)(1)(B); see Builders Ass'n of Greater Chicago v. City of Chicago, 215 F.R.D. 550, 554 (N.D. Ill. 2003).  The Court finds that the PSC's actions in this case fail to warrant sanctions under any of the tests.

There is no evidence that the PSC had any improper intentions worthy of sanctions.  The PSC endeavored to obtain court approval prior to the issuance of the subpoenas and the Court entered the Order Authorizing the Subpoenas and a Qualified Protective Order.  After respondents objected to the subpoenas, the PSC modified the scope of the subpoenas.  Although this Court is

further limiting the scope of the subpoenas by this order and quashing it with respect to certain respondents, the Court does not find the PSC's conduct sanctionable pursuant to Rule 45(c)(1).

III.     <u>ORDER</u>

For the foregoing reasons, the Court overrules in part and sustains in part the objections to the subpoenas, and grants in part and denies in part the motions to quash as provided in this opinion.  In addition, the Court denies certain respondents' requests for sanctions.

<u>/s/ Jennifer C. Boal</u>
JENNIFER C. BOAL
United States Magistrate Judge