UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


IN RE:  NEW ENGLAND          )  MDL NO. 13-02419-FDS
COMPOUNDING                  )
PHARMACY CASES LITIGATION    )
                             )
                             )
                             )
                             )
                             )

            BEFORE:  THE HONORABLE F. DENNIS SAYLOR, IV




                   STATUS CONFERENCE




         John Joseph Moakley United States Courthouse
                    Courtroom No. 13
                    One Courthouse Way
                    Boston, MA 02210


                    November 7, 2013
                      1:30 p.m.




              Valerie A. O'Hara, FCRR, RPR
                 Official Court Reporter
         John Joseph Moakley United States Courthouse
                 One Courthouse Way, Room 3204
                    Boston, MA 02210
                 E-mail: vaohara@gmail.com

1    APPEARANCES:

2    <u>For The Plaintiffs:</u>

3        Hagens, Berman, Sobol, Shapiro, LLP,
     by KRISTEN JOHNSON PARKER, ATTORNEY, 55 Cambridge
4    Parkway, Suite 301, Cambridge, Massachusetts 02142;

5        Ellis & Rapacki LLP, by JOSEPH M. MAKALUSKY, ESQ.,
     85 Merrimac Street, Suite 500, Boston, Massachusetts
6    02114;

7        Janet, Jenner & Suggs, LLC, KIMBERLY A. DOUGHERTY,
     ATTORNEY, 75 Arlington Street, Suite 500, Boston,
8    Massachusetts  02116;

9        Lieff, Cabraser, Heimann & Bernstein, LLP, by MARK P.
     CHALOS, ESQ., One Nashville Place, 150 Fourth Avenue,
10   North, Suite 1650, Nashville, Tennessee 37219-2423;

11       Crandall & Katt, by PATRICK THOMAS FENNELL, ESQ.,
     366 Elm Avenue, SW, Roanoke, VA 24016;
12
         Branstetter, Stranch & Jennings, PLLC, by BEN GASTEL,
13   ESQ., ESQ., 227 Second Avenue North, Nashville,
     Tennessee 37201-1631;
14
     <u>FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS:</u>
15
         Brown Rudnick, by WILLIAM R. BALDIGA, ESQ.,
16   Seven Times Square, New York, New York 10036;

17       Brown Rudnick, by KIERSTEN A. TAYLOR, ATTORNEY,
     One Financial Center, Boston, Massachusetts  02111;
18
         Cohen, Placitella & Roth, P.C., by MICHAEL COREN,
19   ESQ., 2 Commerce Square, 2001 Market Street, Suite 2900,
     Philadelphia, Pennsylvania  19103;

20

21

22

23

24

25

1    <u>For the Defendants:</u>

2        Harris Beach PLLC, by FREDERICK H. FERN, ESQ.,
     100 Wall Street, New York, New York  10005;

3
         Hinshaw & Culbertson LLP, by DANIEL E. TRANEN, ESQ.,
4    28 State Street, 24th Floor, Boston, Massachusetts
     02109;

5
         Tucker & Ellis LLP, by MATTHEW P. MORIARTY, ESQ.,
6    1150 Huntington Building, 925 Euclid Avenue, Cleveland,
     Ohio 44115-1414;

7
         Michaels, Ward & Rabinovitz LLP, by DAN RABINOVITZ,
8    ESQ., One Beacon Street, Boston, Massachusetts 02108;

9        Todd & Weld LLP, by CORRINA L. HALE, ESQ.,
     28 State Street, 31st Floor, Boston, Massachusetts
10   02109;

11       Lawson & Weitzen, LLP, by RYAN A. CIPORKIN, ESQ.,
     88 Black Falcon Avenue, Boston, Massachusetts  02210;

12
         Ulmer & Berne LLP, by JOSEPH P. THOMAS, ESQ.,
13   600 Vine Street, Suite 2800, Cincinnati, OH 45202;

14       Donovan & Hatem, LLP, by KENNETH B. WALTON, ESQ.,
     Two Seaport Lane, Boston, Massachusetts  02210;

15
         Nutter, McClennen & Fish LLP, by SARAH P. KELLY,
16   ATTORNEY, World Trade Center West, 155 Seaport
     Boulevard, Boston, Massachusetts  02210-2604;

17
         Fulbright & Jaworski, LLP, by YVONNE K. PUIG,
18   ATTORNEY, 98 San Jacinto Blvd, Suite 1100, Austin, Texas
     78701;

19
         Debevoise & Plimpton LLP, by CARI ALMO WINT,
20   ATTORNEY,  919 Third Avenue, New York, New York 10022;

21       Shaheen & Gordon, P.A., by WILLIAM E. CHRISTIE, ESQ.
     and BENJAMIN T. SIRACUSA HILLMAN, ESQ., 107 Storrs
22   Street, P.O. Box 2703, Concord, New Hampshire
     03302-2703;

23
         Marks, O'Neill, O'Brien, Doherty & Kelly, P.C.,
24   MICHELLE J. MARZULLO, ATTORNEY, 600 Baltimore Avenue,
     Suite 305, Towson, Maryland  21204;

25

1   <u>For the Defendants</u> (Continued):

2     Batten, Lee, by ADAM MOYERS, ESQ., 4141 Parklake
  Avenue, Suite 350, Raleigh, North Carolina  27612;

3

4     Eccleston and Wolf, P.C., by THOMAS J. ALTHAUSER,
  ESQ., 7240 Parkway Drive, 4th Floor,
  Hanover, Maryland  21076-1378;

5

6     Gideon, Cooper & Essary, PLC, by CHRIS J. TARDIO,
  ESQ., 315 Deaderick Street, Suite 1100, Nashville,
  Tennessee 37238;

7

8     Fuller, Mitchell, Hood & Stephens, LLC, by HALLEY M.
  STEPHENS, ATTORNEY, 2565 Barrington Circle,
  Tallahassee, Florida  32308;

9

10     Law Offices of Jay J. Blumberg, ESQ., by CHRISTOPHER
  M. WOLK, ESQ., 158 Delaware Street, P.O. Box 68,
  Woodbury, New Jersey  08096;

11

12     Curley & Curley, P.C., by LISABETH RYAN KUNDERT,
  ATTORNEY, 27 School Street, Boston, Massachusetts
  02108;

13

14     Morrison, Mahoney, & Miller, LLP, by ROBERT V. X.
  DeLANDERS, ESQ., 250 Summer Street, Boston, MA
  02210-1181;

15

16     Sloane and Walsh, ROBERT A. GAYNOR, ESQ.,
  Three Center Plaza, Boston, Massachusetts
  02108;

17

18   <u>FOR PAUL D. MOORE, IN HIS CAPACITY AS CHAPTER 11 TRUSTEE
  OF NECP, INC.:</u>

19     Duane Morris LLP by MICHAEL R. GOTTFRIED,
  ESQ., 100 High Street, Suite 2400, Boston, Massachusetts
20   02110-1724;

21   ALSO PRESENT:

22   Carmin Reiss of Resolutions, LLC

23   <u>VIA PHONE FOR THE PLAINTIFFS:</u>

24   George Nolan
  Bill Leader
25   Jason Eyberg
  Frank Federico

1    VIA PHONE FOR THE PLAINTIFFS (CONTINUED):

2    Tim Housholder
     Mary Gidaro
3    Chris Cain
     Shannon Carey
4    Scott Sexton
     Jonathan Krohnfeldt
5    Melvin Wright
     Terry DaweslRob Sickels
6    Harry Roth
     Karen Schaeffer
7    Sean Roth
     Jim Girards
8    Matthew Barsenas
     Sharon Houston
9    Patti Kasputys
     Michael Hugo
10   Lisa Ann Thomas
     Rob Randall
11   Daniel Clayton
     Allen Neely
12   J. Stephen King
     Deborah Gresco-Blackburn
13   Randy Kinnard
     Erin Amos
14   Will Riley
     Stephanie L. Arndt
15   Rebecca Blair
     Patrick S. Montoya
16   Elliot Olsen
     Bryan L. Bleichner
17   Ed Jazlowiecki
     Marc Lipton
18
     VIA PHONE FOR THE DEFENDANTS:
19
     Stephen A. Grossman
20   Nichole Dorman

21

22

23

24

25

1                              PROCEEDINGS

2              THE CLERK:  All rise.  Thank you.  Please be

3     seated.  Court is now in session in the matter of in re:

4     New England Compounding Pharmacy, Incorporated Products

5     Liability Litigation.  This is Case No. 13-md-02419.

6     Counsel for the plaintiffs' steering committee, please

7     note your appearance for the record.

8              MS. PARKER:  Good afternoon, your Honor,

9     Kristen Johnson Parker from Hagens, Berman, Sobol,

10    Shapiro for the plaintiffs' steering committee.

11             THE COURT:  Good afternoon.

12             MR. GASTEL:  Good afternoon, your Honor,

13    Ben Gastel from Branstetter, Stranch & Jennings in

14    Nashville for the plaintiffs' steering committee.

15             THE COURT:  Good afternoon.

16             MS. DOUGHERTY:  Good afternoon, your Honor,

17    Kim Dougherty from Janet, Jenner & Suggs on behalf of

18    the plaintiffs' steering committee.

19             MR. CHALOS:  Mark Chalos on behalf of the

20    plaintiffs' steering committee.

21             MR. FENNELL:  Patrick Fennell for the

22    plaintiffs' steering committee, your Honor.

23             THE CLERK:  The back table there.

24             MR. BALDIGA:  Good afternoon, your Honor,

25    William Baldiga of Brown, Rudnick for the creditors'

1    committee.

2                MR. COREN:  Good afternoon, your Honor,

3    Michael Coren, Cohen, Placitella & Roth on the official

4    creditors' committee.

5                MS. TAYLOR:  Good afternoon, your Honor,

6    Kiersten Taylor from Brown, Rudnick for the creditors'

7    committee.

8                MR. GOTTFRIED:  Michael Gottfried for the

9    trustee, Paul Moore.

01:32PM  10                MR. STEIN:  Callan Stein for Barry and Lisa

11    Cadden.

12                MR. FERN:  Good afternoon, Judge,

13    Frederick Fern on behalf special retained counsel for

14    the bankruptcy trustee.

15                MR. GAYNOR:  Your Honor, Robert Gaynor,

16    Sloane and Walsh on behalf of the so-called insiders.

17                MR. RABINOVITZ:  Dan Rabinovitz on behalf of

18    Medical Sales Management, Inc.

19                MR. TRANEN:  Daniel Tranen for the trustee.

01:32PM  20                MR. MORIARTY:  Good afternoon, your Honor,

21    Matthew Moriarty for Ameridose.

22                THE COURT:  All right.  Good afternoon,

23    everyone.  We also have some number of people on the

24    telephone.  We're meeting today in this courtroom

25    because the electronics in my courtroom were upgraded

1    about a week and a half ago, as a result of which, they

2    were completely knocked out, and there's a metaphor for

3    modern life of some sort, but, in any event, it's going

4    to be some time before I'm back in my courtroom.

5            I have before me the jointly proposed

6    agenda, which, again, I intend to follow.  There are, I

7    think, a few motions pending, which I'll take up along

8    the way, but why don't we start.  Let me hear from the

9    PSC concerning subpoenas and objections.

01:33PM   10            MS. PARKER:  Thank you, your Honor.  As the

11    Court and many of those in the courtroom are aware,

12    Magistrate Judge Boal held a hearing this morning where

13    she heard oral objections to the subpoenas served by the

14    plaintiffs' steering committee back in June.  I think it

15    was a very effective hearing.  Judge Boal indicated that

16    we were likely to receive an order from her relatively

17    soon, and we look forward to her decision on many of

18    those matters.

19            By way of informing the Court, the

01:34PM   20    plaintiffs' steering committee was asked to provide a

21    list of pain clinics who are objecting to subpoenas who

22    are named defendants in the MDL currently, and we will

23    provide that list to Magistrate Judge Boal by next week.

24            THE COURT:  All right.  Does anyone else

25    want to report on or be heard on the subject of

1   subpoenas or objections?  All right.  Let's go item 2,

2   status of mediation efforts.

3            MS. PARKER:  Your Honor, could we save that

4   for later in the agenda possibly?

5            THE COURT:  Yes.

6            MS. PARKER:  Thank you.

7            THE COURT:  Item 2, master plaintiffs and

8   responsive pleadings.

9            MS. PARKER:  The plaintiffs' steering

01:34PM  10   committee filed on November 5th a master complaint.  We

11   also filed with the master complaint a short form

12   complaint, and with the Court's permission and as much

13   for the benefit of the attorneys on the phone, I'd like

14   to explain a little bit about how those two documents

15   work together.

16            THE COURT:  All right.

17            MS. PARKER:  The master complaint is

18   designed to be an administrative tool that aids

19   plaintiffs' counsel.  It was intended to replace or

01:35PM  20   supersede the complaints currently on file in existing

21   civil actions.  Plaintiffs and their attorneys will have

22   an opportunity to sign onto the facts and allegations

23   set forth in the master through the short form complaint

24   mechanism, so the master complaint standing on its own

25   serves to provide a factual basis and sample counts for

1    individual plaintiffs, but it is administrative in

2    nature only.

3            The short form complaint filed with the

4    master is a template complaint that will be provided to

5    plaintiffs' attorneys in a workable file format.  That

6    provides an opportunity for counsel to sign onto or to

7    adopt particular counts and facts as alleged in the

8    master complaint.

9            The current court schedule contemplates that

01:36PM  10   for plaintiffs with cases currently on file in the MDL,

11   that they shall have until November 29th in order to

12   file short form complaints.  That November 29th deadline

13   also applies currently to cases that wished to be

14   considered for bellwether status down the road, but it

15   is not as currently ordered by the Court a deadline for

16   all plaintiffs to file short form complaints.

17           The plaintiffs' steering committee will be

18   making efforts to circulate the Word version of the

19   short form complaints widely to all plaintiffs' counsel

01:36PM  20   who may have clients who wish to use that mechanism, and

21   we will be making educational efforts and outreach

22   efforts to ensure that we have distributed that

23   information as to the current deadlines as widely as

24   possible.

25           THE COURT:  Remind me, several things, I

1    guess.  A complaint that is currently on file, if

2    plaintiffs' counsel elects, as, frankly, I hope that

3    they will, to adopt the short form complaint, which is

4    in effect amending their complaint, presumably that

5    would moot any then pending motion to dismiss, and we

6    would start that clock all over again.  That's normally

7    what would happen with the filing of an amended

8    complaint.

9         MS. PARKER:  That's correct, your Honor, and

01:37PM  10   that is what we would anticipate as well.

11        THE COURT:  And I forgot to check on the

12   terms of the order.  When are responses due, answers or

13   responsive pleadings?

14        MS. PARKER:  Currently MDL Order Number 7

15   contemplates that a filing of master answers or motion

16   to dismiss the master complaint would be due -- by those

17   defendants named in the master complaint would be due on

18   December 2d.

19        THE COURT:  That's only as to the master

01:38PM  20   complaint itself?

21        MS. PARKER:  That's correct, your Honor, and

22   there is something I think worth discussing in that.  On

23   the one hand, plaintiffs would be eager to have that

24   deadline stick.  On the other, we realized in the

25   process of drafting the master complaints that some of

1   the defendants named, in fact, virtually all of the

2   defendants named in the master complaint have not been

3   sued in a civil action pending in this MDL, which is to

4   say that they may not be aware of these existing

5   deadlines and that they will not be formally sued or

6   receive service of the complaint until after a short

7   form complaint is filed naming them in an individual

8   civil action and then service is effectuated from there.

9           So one thing that had occurred to the

01:38PM   10   plaintiffs' steering committee, even though we

11   certainly, we like that December 2d date, is that out of

12   fairness, it may be appropriate to consider revising

13   that date, waiting to see which defendants are in fact

14   named in short form complaints filed by November 29th

15   and having the PSC and those named defendants meet and

16   confer as to an appropriate briefing mechanism, meaning

17   a way for us to identify and deal with either a motion

18   to dismiss the master or a way to brief in some

19   manageable and efficient way those cross-cutting issues.

01:39PM   20           THE COURT:  My inclination is to extend that

21   date at least past the date of the subsequent status

22   conference, that is past December 13th, so, if nothing

23   else, we can see how this sorts itself by then and then

24   resolve the issue at that point, and I may be inclined

25   to do that as well with this issue of the bellwether

1    cases.

2              Again, if nothing else, to put that issue on

3    hold while it sorts itself out.  I note that the master

4    complaint names, is it, Liberty and UniFirst I think is

5    defendant in all cases?  If they have been served in

6    other cases, I'm not aware of it.

7              MS. PARKER:  I am not aware of that either,

8    your Honor.  I believe that they have not been named in

9    a case currently pending in the MDL.

01:40PM   10              THE COURT:  Does anyone else want to address

11    the issue of the master complaint, short form complaint

12    or anything else that we've been discussing?

13              MR. GROSSMAN:  Good afternoon, your Honor,

14    this is Steve Grossman of Montgomery, McCracken who

15    represents Speer Medical Centers.

16              THE COURT:  Yes.

17              MR. GROSSMAN:  We had sort of a different

18    approach in terms of perhaps extending the deadline with

19    which to file answers to the master complaint, and it

01:40PM   20    arises out of a recent order that was entered by your

21    Honor which extends the deadline for filing of a master

22    complaint as it relates to the affiliated defendants --

23              THE COURT:  Yes.

24              MR. GROSSMAN:  -- as well as the mediating

25    parties.

```
 1              THE COURT:  Yes.
 2              MR. GROSSMAN:  And as a result of that, we
 3  are sort of stuck in a conundrum where, to the extent
 4  that we are to file a responsive pleading on
 5  December 2d, we were hopefully contemplating simply
 6  filing cross-claims against the affiliated defendants,
 7  but, as you know, they are not currently named.
 8              We think, and would certainly like
 9  clarification from the Court, that we would then be in a
10  position to be forced to file third-party complaints
11  against the affiliated defendants since they are not
12  part of the master complaint at this point, which would
13  obviously, you know, create a burden and an expense on
14  the unaffiliated defendants and may invite multiple
15  third-party complaints since I believe that we would all
16  be in a similar situation.
17              THE COURT:  I would like to avoid that.
18              MR. GROSSMAN:  Yes, so my recommendation or
19  my proposal to the Court is since the order that you
20  entered now takes an amendment against the affiliated
21  defendants until December 20th, we were requesting that
22  the Court move back the December 2d answer date until
23  January, I think I picked January 10th, which would
24  allow, I think, all the issues that Ms. Parker just
25  raised to unfold as well as allow us to see what the PSC
```

01:41PM (line 10)

01:42PM (line 20)

1    may do on or before December 20th and be in a position

2    to simply file one responsive pleading.

3                  THE COURT:  All right.  Do you want to

4    respond to that, Ms. Parker?

5                  MS. PARKER:  Excuse me one moment, your

6    Honor.

7                  THE COURT:  All right.

8                  MS. PARKER:  Your Honor, we have no -- we

9    have no objection to that.  Let me note, however, that

01:43PM  10    the hope in asking the Court to extend the deadline to

11    file a master complaint naming affiliated defendants and

12    individuals is that in the time before that complaint is

13    filed, there is a resolution reached with those entities

14    so there becomes no need for a second master complaint.

15    If that comes to pass, perhaps that deadline should be

16    revisited, but we have no objection in principle.

17                  There is one very specific Tennessee issue

18    though that I think is raised by that proposal.  Under

19    Tennessee law, and my fellow plaintiffs' steering

01:43PM  20    committee members can get into the specifics of that,

21    but I understand that under Tennessee law, there's a

22    finite period of time in which to cure particular

23    defects that would be asserted in an answer to a

24    complaint, and there is some concern that we may need to

25    request relief from the Court to require answers or

1   particular information from defendants in filed cases

2   involving the State of Tennessee.

3            Mr. Gastel, did you want to speak to that?

4            MR. GASTEL:  There are a handful of

5   affirmative defenses that were sort of running out of

6   time to the extent that we could cure within the time

7   provided either under the Federal Rules of Civil

8   Procedure or under the Tennessee statute.

9            For example, I believe the Federal Rules

01:44PM   10   gives us 120 days to serve a complaint.  If there is an

11   insufficiency of process affirmative defense, most of

12   the Tennessee complaints were filed in September, we're

13   sort of running out of time to cure that defect in the

14   event that we don't have answers to the affirmative

15   complaints, so we are continuing to work with the

16   Tennessee defendants on this issue, but to the extent --

17            THE COURT:  I'm sorry, someone on the phone

18   is creating some noise in the background, if you can

19   please mute your speaker.  Thank you.  I'm sorry, go

01:45PM   20   ahead.

21            MR. GASTEL:  So given the window that is

22   available to us, we may, to the extent that we can, work

23   this out with the Tennessee defendants.  We may be

24   filing some sort of motion to have them identify on a

25   limited basis those affirmative defenses that could be

 1    cured within the time period provided by the relevant

 2    rules.

 3            THE COURT:  All right.  Does anyone else

 4    want to be heard on this topic?  I think what Mr., is

 5    it, Grossman makes sense, that is, I extend the

 6    deadlines for answers or responses to the master

 7    complaint to January 10th, that I extend first the

 8    December 2d deadline to December 20th and then create a

 9    new deadline of January 10th.  That's about the time

01:45PM  10    frame in my mind that I would like to know whether or

11    not -- I guess I'd like to know what this litigation is

12    going to look like.

13            I understand that there are lots of

14    negotiations under way and that this process is going to

15    be imperfect and perhaps take longer than necessary, but

16    I'm increasingly concerned that the mediation and

17    settlement-type discussions are dragging on, and I would

18    like to get this case in litigation mode, if that's what

19    we're going to do, at least as to some cases and some

01:46PM  20    defendants, and mid-January is about the time frame I

21    think in which it seems to me it's appropriate to put

22    this case in full litigation mode if it hasn't been

23    resolved by then, which is more than two months away.

24            All right.  So I will issue that order

25    extending the deadlines, that is, the November 29th and

1   December 2d deadlines, I think we're out to

2   December 20th, and then I create a new deadline for

3   answering or otherwise responding to the master

4   complaint by January 10th.  If there's a specific state

5   law issue arising in Tennessee or elsewhere, I will wait

6   to hear a proposal from the parties if resolution can't

7   be negotiated.

8                Does all of that work, Ms. Parker?

9                MS. PARKER:  It does, your Honor.

01:47PM  10                THE COURT:  Mr. Grossman?

11                MR. GROSSMAN:  Your Honor, I was just going

12   to ask for clarification.  Are you moving the deadline

13   file short form complaints, the deadline that's the

14   29th?

15                THE COURT:  Yes, that was my intention to

16   December 20th.

17                MR. GROSSMAN:  Oh, to December 20th.  Thank

18   you, that's fine.

19                MS. PARKER:  One point of clarification, if

01:47PM  20   I could, your Honor.  Local Rule 15.1 ordinarily

21   requires providing 14 days of notice when you intend to

22   amend a complaint to add a party.  As I read your

23   Honor's earlier rulings, there's no need for that to be

24   done here, but I did want to bring that rule to the

25   Court's attention.

1          THE COURT:  That is certainly true if what

2    we're talking about is a party amending their complaint

3    in order to use the short form complaint/master

4    complaint process.  I will -- I do not think it's

5    necessary to comply with 15.1.  Among other things, for

6    administrative convenience, if nothing else, I strongly

7    hope that most plaintiffs will adopt the master

8    complaint or some form of it, and the usual issues with

9    regard to amendment of the complaint giving the party a

01:48PM   10    chance to oppose on it on grounds of futility and so

11    forth I think do not need to be -- to the extent those

12    issues exist, I can address them in other context

13    without strictly enforcing Rule 15.1.

14          MS. PARKER:  Thank you, your Honor.

15          THE COURT:  All right.  Unless there's

16    anything else on item 3; item 4, pending motions,

17    St. Thomas' motion for reconsideration.  I think there's

18    a further request to extend the deadline.

19          Does anyone want to be heard on that topic?

01:49PM   20          MR. GASTEL:  That's probably mine, your

21    Honor, and this dovetails with the point that I was just

22    making.  We're continuing to work with St. Thomas on

23    their motion for reconsideration, the talks have

24    encompassed a very wide range of issues, and it's just

25    taking us a little time to sort that out.  The parties

1    have been very cooperative at this point, and we

2    continue to try to arrive at agreement on as many issues

3    that we can agree on, but that's why we sort of

4    requested an additional extension just because there's a

5    whole host of issues that we're negotiating.

6              We're making progress, but we just have not

7    completed that process given the amount of issues that

8    St. Thomas has put on the table, but, again, like I

9    said, we continue to work with them, and we hope to

01:50PM  10    resolve that certainly before the next status

11    conference.

12              THE COURT:  The request is to extend the

13    date to November 25th, I believe?

14              MR. GASTEL:  That's correct, your Honor.

15              THE COURT:  Does anyone from St. Thomas want

16    to be heard on that or representing St. Thomas?  Yes.

17              MS. PUIG:  Yvonne Puig, your Honor, on

18    behalf of the St. Thomas entities as well as

19    Sarah Kelly.  Your Honor, what has been represented to

01:50PM  20    the Court is correct, and we have asked for an extension

21    of time to November 25th.

22              THE COURT:  All right.  That motion, which

23    is Number 543 is granted.

24              MS. PUIG:  Thank you, your Honor.

25              THE COURT:  Motions to dismiss Alaunus and

1   Ameridose, Ms. Parker.  These are the same Alaunus

2   motions that have been rolled over repeatedly, I think,

3   is that right?

4               MS. PARKER:  That's correct, your Honor.

5               THE COURT:  I guess I'll roll them over

6   again.  Some of this may be obviated by the amendment to

7   the complaint, and what is the Ameridose issue regarding

8   Nevada cases?

9               MR. MORIARTY:  Your Honor, there were two

01:51PM  10   cases filed in Nevada.  They were appropriately tagged

11   for transfer, but somebody at the JPML clerk's office

12   must have seen that they had to do cardioplegia solution

13   and did not transfer them, so we have filed a motion

14   with the JPL talking about "related to" jurisdiction and

15   how those cases, except for the specific product, are

16   exactly the same as everything else and for efficiency

17   purposes should be tagged and sent here.

18               THE COURT:  All right.

19               MR. MORIARTY:  That's all briefed, and it

01:52PM  20   was all agreed to.  There's nobody opposing it.

21               THE COURT:  All right.  In terms of other

22   pending motions, I looked through the docket, which

23   always gives me a bit of a scare every time I do that,

24   but there was a motion to amend the complaint in the

25   Bland case, which is Number 468.

```
 1              THE CLERK:  Attorney Bill Leader should be
 2    on the phone.
 3              THE COURT:  Bill Leader, are you on the
 4    phone?
 5              MR. LEADER:  Yes, your Honor, this is
 6    Bill Leader.
 7              THE COURT:  What is your intention in that
 8    regard?  I don't know that it's been opposed yet, but
 9    I'm not sure I know what the issues are.
10              MR. LEADER:  This motion is simply to add
11    St. Thomas Hospital and two St. Thomas entities that
12    could not be named when the Blands filed their initial
13    complaint because they had not given the notice required
14    under Tennessee law at the time to the St. Thomas
15    entities.  They now have.  We gave the St. Thomas
16    lawyers notice pursuant to Local Rule 15.1 and then
17    waited 14 days and filed the motion, and they have told
18    us that they do not oppose this amendment insofar as
19    adding the three St. Thomas entities.
20              THE COURT:  That motion is granted,
21    Number 468, and that's without prejudice to the
22    plaintiff in that case amending the complaint again to
23    adopt the short form/master complaint.  There's also I
24    think Number 508, motion to quash a subpoena.  If that
25    hasn't been referred to Magistrate Judge Boal, I now so
```

01:52PM 10

01:53PM 20

1    refer it, and we have the PSC's motion to partially lift

2    the discovery stay, which is not yet ripe for

3    resolution, but we probably ought to talk at some point.

4    I think those are the pending motions.  Have I missed

5    anything, again, in the MDL in the individual cases?

6             All right.  Item Number 5, informal

7    discovery.

8             MR. FERN:  Judge, that's my issue.

9             THE COURT:  Mr. Fern.

01:54PM  10             MR. FERN:  I'd like to report to the Court

11    that the ongoing, informal disclosure of documents on

12    behalf of the trustee and NECC have continued since we

13    were last before the Court.  Just a way of total, some

14    documents are going to the PSC, some are being delivered

15    to Rust Omni, the HIPAA information and other

16    information regarding patient identifying information

17    goes directly to Rust Omni.

18             All in, Judge, to date, we have produced

19    approximately 4800 documents which encompass about

01:55PM  20    38,000 pages of the documents.  The last production went

21    out on Friday, mostly including documents that were

22    subsequently requested by members of the PSC,

23    Mr. Lipton, in particular, regarding Liberty Industries,

24    which we note to be one of the defendants that were

25    named in the master complaint.

```
 1                    THE COURT:  All right.

 2                    MR. FERN:  Judge, can I go off agenda for a

 3      moment, if I could?

 4                    THE COURT:  Yes.

 5                    MR. FERN:  On a housekeeping matter?

 6                    THE COURT:  Yes.

 7                    MR. FERN:  Per CMO-6, the affiliated

 8      defendants had all agreed to waive formal service of

 9      process.  There was a long period of time when I

10      represented most of the people of the affiliated

11      defendants.  Recently with my appointment by

12      Judge Boroff, I no longer do.

13                    Other gentlemen at the table here,

14      Mr. Moriarty represents Ameridose, Mr. Thomas on behalf

15      of GDC, Mr. Gaynor has the individuals, and

16      Mr. Rabinovitz represents MSM.

17                    My firm continues to receive Rule 4 waivers

18      for service of process because no one out in the

19      plaintiffs' world knows of the changed circumstance.  If

20      I can, and with Ms. Parker's and the PSC's help, I will

21      get her tomorrow, if not tomorrow, Monday, a list of all

22      the individuals in the firms that are authorized to

23      accept service of process on behalf of these affiliated

24      defendants.

25                    I would ask that the PSC then communicate to
```

01:55PM (line 10)

01:56PM (line 20)

1    the plaintiff bar out there in the world regarding these

2    modifications so that the Rule 4 service of process are

3    directed to the right individuals.

4              THE COURT:  All right.  Ms. Parker.

5              MS. PARKER:  The PSC has no objection to

6    that, your Honor.  It occurs to me that it may make

7    sense to revise CMO-6 so that the order on file reflects

8    the appropriate entities to be served, but we can

9    certainly discuss that.

01:57PM   10              THE COURT:  I'm certainly happy to do that.

11    Why don't you perhaps jointly propose whatever

12    modification you think is appropriate.

13              MR. FERN:  Judge, we can do that, but in

14    looking at CMO-6, it does not say who or what firm or

15    what individual was directed to accept service, it just

16    says that formal service would be waived.  If the Court

17    would like a new CMO, we'd be glad to prepare it and

18    submit it.

19              THE COURT:  All right.  This triggers a

01:57PM   20    point that applies not only to this issue but to this

21    informal exchange of discovery.  I very much appreciate

22    these efforts that make people's lives easier, including

23    mine, but if we do wind up in full litigation mode, and

24    it looks like we're heading that way for at least some

25    member of the defendants, some of these things are going

1    to have to be formalized.

2         I had a case transferred to me in which all

3    the discovery had been informal, disputes have now

4    arisen, including late production of documents after the

5    discovery deadline, people are unhappy, and they say

6    they want sanctions.  I said how can I sanction someone

7    for failing to produce something when there was never a

8    document request?

9         I don't know how we're going to handle that

01:58PM  10  here, but in addition to the obvious, which is you need

11   to keep track of what is being produced to whom, at some

12   point we need to come to closure on this issue because

13   if a dispute does arise as to what documents were

14   produced or any other issue like that, whether someone

15   was properly served, I need to have some formality of

16   the process if I'm going to do any enforcement at all.

17        We may be some ways away from that.  I'm not

18   suggesting any particular procedure.  It could be that

19   through mediation or settlement that some of these

01:59PM  20  issues disappear, but keep that in the back of your

21   mind.  At some point, we're going to need to make sure

22   that that base is touched, and if we're going to have

23   new defendants, like Liberty and UniFirst, and if

24   they're significant defendants, I don't know if they

25   are, but I suspect as much, that may change the

             1    landscape somewhat as well, but at this stage I'm simply

             2    going to note the issue.

             3              Anything else that anyone wants to take up

             4    on what I'll call informal discovery at this point?

             5              MS. PARKER:  Nothing on informal discovery,

             6    but to backtrack a bit --

             7              THE COURT:  Yes.

             8              MS. PARKER:  -- I do not mean to be putting

             9    Mr. Fern on the spot when I raise this question.

01:59PM     10              THE COURT:  But you're going to anyway.

            11              MS. PARKER:  Yes, I'm going to do it anyway,

            12    I guess.  We would ask that the previously-served

            13    waivers of service of process that may have been

            14    inadvertently delivered to Mr. Fern, we need not

            15    re-serve those, meaning we have a tremendous number of

            16    plaintiffs, as your Honor knows, that complied with

            17    those procedures set out in CMO-6, particularly with the

            18    Tennessee cases, and we would not want to jeopardize any

            19    plaintiffs.

02:00PM     20              THE COURT:  I would hope that would be true,

            21    but you may need to loop in someone else, I don't know

            22    who.  Maybe it's somebody else sitting to his right.

            23              MR. FERN:  Judge, that was not my intention.

            24    I was trying to fix it going forward.  The Rule 4

            25    waivers that have come to us in the last three or four

1    weeks, the same day they get flipped and are sent to the

2    appropriate counsel for their signature.

3              THE COURT:  But, in other words, if you want

4    to button down that no further service is necessary, you

5    better loop in whoever the current counsel is as well in

6    that decision, again, just to make sure it's buttoned up

7    tight.

8              MS. PARKER:  Yes, your Honor.  Thank you.

9              THE COURT:  Again, as this case continues to

02:01PM    10    grow, making sure we have these details nailed down is

11    going to be increasingly important.

12              All right.  The next item is bankruptcy

13    proceedings.  Mr. Gottfried.

14              MR. GOTTFRIED:  Your Honor, the bankruptcy

15    trustee is continuing his negotiations with the insiders

16    and keeping both the PSC and the creditors' committee

17    apprised, and they've been actually active in those

18    discussions, and he, consistent with the pleading that

19    we filed, the emergency pleading we filed last week, I

02:01PM    20    think all the parties remain optimistic that a

21    resolution is possible, so the settlement aspect

22    continues to progress.

23              In terms of the rest of the bankruptcy, you

24    know, the trustee continues to get returns, collect

25    receivables, pay bills and the like and is proceeding

```
 1    apace.
 2                THE COURT:  And, again, just my view as I
 3    sit here is if we get to the beginning of the year and
 4    we haven't progressed any further, I think enough is
 5    enough, and we need to take the gloves off, so to speak,
 6    and begin full-fledged litigation.  I would rather not
 7    get to that point, but I do feel that, you know, the
 8    episodes are more than a year old, the litigation is
 9    approximately the same age, and at some point if we're
10    going to litigate it, we need to litigate it, and I
11    think January --
12                MR. GOTTFRIED:  The trustee shares your
13    view.
14                THE COURT:  All right.  January is about the
15    time frame that I'm thinking is -- I feel that that's
16    where my generosity will begin to expire.  Anything else
17    on the bankruptcy?  Does the creditors' committee want
18    to weigh in here, anyone?  Mr. Baldiga.
19                MR. BALDIGA:  Nothing in addition to that,
20    your Honor.
21                THE COURT:  All right.  Status of appeals?
22                MS. PARKER:  I confess that I was remiss in
23    checking that docket this morning, your Honor, but as of
24    the last time that I had, there was no further
25    development.
```

1           THE COURT:  Anyone want to be heard on that
2      topic?  All right.  I think that takes us back to item
3      Number 2, mediation efforts.
4           MS. PARKER:  Yes, thank you, your Honor.
5      This Court entered an order on mediation back in August.
6      Since that time period, the trustee, the official
7      committee of creditors and the plaintiffs' steering
8      committee jointly asked this Court to appoint a mediator
9      in this matter.
02:03PM  10           Yesterday the Court entered an order
11      appointing Resolutions, LLC as the mediator, and I'd
12      like to take a moment, if I may, your Honor, to
13      introduce we have with us today Ms. Carmin Reiss of
14      Resolutions, LLC.
15           THE COURT:  Good afternoon.  You have my
16      deepest sympathies.
17           (Laughter)
18           THE COURT:  Thank you.
19           MS. PARKER:  Which I think brings us to
02:04PM  20      deadlines.  There are some mediation deadlines
21      approaching.  Because they're written in a few different
22      places, I'd like to go through those.
23           THE COURT:  All right.
24           MS. PARKER:  The deadline for the parties to
25      meet and confer about procedures that may be necessary

1    to govern any disputes that arise in mediation is

2    November 11th, 2013.  I confess I'm not entirely sure

3    what that refers to, but I'm sure that Ms. Reiss will

4    have thoughts, as will participants.  We also have a

5    deadline of November 15th for the fee sharing proposal

6    regarding mediation, which I know has been in the works

7    and discussed by all of the relevant parties so far.

8              THE COURT:  All right.  Those are

9    approaching rapidly.  I'm inferring you think that those

02:04PM  10    ought to be extended somewhat.  November 11th is Monday.

11              MS. PARKER:  That's correct.

12              THE COURT:  Federal holiday.

13              MS. PARKER:  I think a brief extension would

14    be appropriate, although I have not discussed that with

15    the trustee, the creditors' committee or Ms. Reiss, so

16    perhaps it makes sense for us to convene and to suggest

17    to you what an appropriate brief extension might be on

18    this.

19              THE COURT:  Why don't I do this to give you

02:05PM  20    some breathing space.  Why don't I extend both of those

21    deadlines a week without prejudice to seeking a further

22    extension, so November 11th will now be November 18th,

23    and November 15th will be November 22d, and you can come

24    back to me if you think you need more time as to that.

25              MS. PARKER:  Thank you.

```
 1                    THE COURT:  Anything further on that topic?
 2                    MS. PARKER:  Nothing from the PSC, your
 3       Honor.
 4                    THE COURT:  All right.  Anyone else want to
 5       take up any issues regarding the deadlines, appointment
 6       of a mediator or the mediation process?  Again, I'm
 7       going to repeat that mediation is voluntary.  It's not
 8       intended to be a club to force people to the table.  It
 9       was intended to provide a vehicle for reducing
10       transaction costs and making the case move forward, if
11       nothing else, in a somewhat simpler posture, and if it's
12       not successful, we will move on to a different approach,
13       but, again, in my view, it is entirely voluntary and
14       without prejudice to the rights of all parties to
15       litigate whatever claims or defenses they feel they may
16       have.
17                    MS. DORMAN:  Your Honor, Nicole Dorman
18       representing Liberty Industries.
19                    THE COURT:  Yes.
20                    MS. DORMAN:  Since we are recently named in
21       the master complaint --
22                    THE COURT:  But apparently not served, is
23       that right, or you don't know perhaps?
24                    MS. DORMAN:  No, not served.  We were served
25       with a subpoena early on, which we complied subject to
```

1   an agreement with the PSC, but we have not been served,

2   and I know that UniFirst has not yet been served.

3            I realize the deadline for volunteering to

4   mediate has passed, however, given the allegations of

5   the master complaint and the upcoming deadlines with the

6   short form, would your Honor consider late entry?  I, at

7   least, would like to have the opportunity to evaluate

8   that option with my client.

9            THE COURT:  Yes, and I will consider

02:07PM   10   anything that sounds sensible.  The place to start, of

11   course, is with a meet and confer and see if you can

12   agree as to what makes sense, but certainly I will make

13   every effort to be reasonable and to accommodate that.

14            MS. DORMAN:  Thank you, your Honor.

15            THE COURT:  That obviously will apply to

16   UniFirst as well.

17            MR. LIPTON:  And, your Honor, Marc Lipton --

18            MS. DORMAN:  I will relay that to counsel.

19            THE COURT:  I'm sorry.

02:08PM   20            MR. LIPTON:  Marc Lipton on behalf of --

21            MS. DORMAN:  I will report that to counsel

22   for UniFirst.

23            THE COURT:  Yes.  Mr. Lipton I think wants

24   to say something.

25            MR. LIPTON:  Yes.  It's Marc Lipton on

behalf of the PSC, and I was just going to tell counsel

for Liberty that the PSC is happy to discuss this with

them, and now that I'm able to talk with her, we'll

touch base next week.

THE COURT:  Again, I want to give people a

fair opportunity to resolve or reduce the field of

dispute through that process, but it's going to have

limits, and if you can't mediate it, can't settle it,

let's get going.

02:08PM  All right.  That seems to be the whole

agenda as proposed.  Is there anything else anyone wants

to take up other than I'll set one more status

conference.  I think I'm seeing you again on

December 13th.

THE CLERK:  We have status conferences each

month through March 13th.

THE COURT:  Let's do an April status, let's

set one.

THE CLERK:  April 11th at 1:30.

02:09PM  THE COURT:  April 11th at 1:30.  I'm trying

to do this sufficiently far in advance so that people

can plan, particularly those from out of state.  Does

that work?

MS. PARKER:  That works for the plaintiffs'

steering committee, thank you.

```
  1                    THE COURT:  It's not school vacation week in

  2      Massachusetts, which I think is the week after that.

  3                    MR. MORIARTY:  Peter, what was the

  4      March date?

  5                    THE CLERK:  March 13th.

  6                    THE COURT:  March 13th is the March date.

  7      Other than that, is there anything anyone wants to take

  8      up, anything from plaintiffs?

  9                    MS. PARKER:  No, your Honor, thank you.

 10                    THE COURT:  Bankruptcy counsel?

 11                    MR. GOTTFRIED:  No, thank you, your Honor.

 12                    THE COURT:  Creditors' committee?

 13                    MR. COREN:  No, thank you, your Honor.

 14                    THE COURT:  Any defendant?  Anyone on the

 15      phone?

 16                    (No response)

 17                    THE COURT:  All right.  Thank you, all.

 18      That was short and sweet, 38 minutes, and I will see you

 19      in December.

 20                    MS. PARKER:  Thank you, your Honor.

 21                    (Whereupon, the hearing was adjourned at

 22      2:10 p.m.)

 23

 24

 25
```

02:09PM (line 10)

02:10PM (line 20)

```
 1                    C E R T I F I C A T E

 2

 3    UNITED STATES DISTRICT COURT )

 4    DISTRICT OF MASSACHUSETTS ) ss.

 5    CITY OF BOSTON )

 6

 7         I do hereby certify that the foregoing

 8    transcript, Pages 1 through 36 inclusive, was recorded

 9    by me stenographically at the time and place aforesaid

10    in MDL NO. 13-02419-FDS, IN RE:  NEW ENGLAND COMPOUNDING

11    PHARMACY CASES LITIGATION and thereafter by me reduced

12    to typewriting and is a true and accurate record of the

13    proceedings.

14         Dated this November 15, 2013.

15                        s/s Valerie A. O'Hara

16              _____

17              VALERIE A. O'HARA

18              OFFICIAL COURT REPORTER

19

20

21

22

23

24

25
```