UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEW ENGLAND COMPOUNDING ) <br> PHARMACY, INC. PRODUCTS LIABILITY ) <br> LITIGATION ) <br> ──────────────────────────────── ) <br>  ) <br> THIS DOCUMENT RELATES TO: ) <br>  ) <br> All Actions ) <br> ──────────────────────────────── ) | MDL No. 2419 <br> Dkt. No 1:13-md-2419 (FDS) |

**SAINT THOMAS ENTITIES' RESPONSE TO COURT'S DIRECTIVE IN FURTHER SUPPORT OF MOTION TO RECONSIDER MDL ORDER NO. 7**

Saint Thomas West Hospital, formerly known as St. Thomas Hospital, Saint Thomas Network, and Saint Thomas Health (collectively referred to as the "Saint Thomas Entities") file this *Response to Court's Directive in Further Support of Their Motion to Reconsider MDL Order No. 7*, and in support, show as follows:

**INTRODUCTION**

In their Motion to Reconsider,[1] the Saint Thomas Entities, joined by Saint Thomas Outpatient Neurosurgical Center, LLC ("STOPNC"), the Howell Allen Clinic, P.C. ("Howell Allen"), John W. Culclasure, M.D. ("Culclasure"), and Debra V. Schamberg, R.N. ("Schamberg") (collectively referred to as the "Tennessee Defendants") demonstrated that MDL Order No. 7[2]—which was entered at the request of the Plaintiffs' Steering Committee ("PSC") without input from, much less any consensus of, the Unaffiliated Defendants—should be substantially revised to streamline and facilitate the case development process, including substantial revision of the proposed bellwether proposal.

---

[1] *See Saint Thomas Entities' Motion to Reconsider MDL Order No. 7* (Docket #457) ("Motion to Reconsider").

[2] *See* MDL Order No. 7, Further Case Management Order (Docket #438) (Sept. 18, 2013) ("MDL Order No. 7").

53090516.3

1

At its October 8, 2013, Status Conference, the Court entertained argument on the Motion to Reconsider and ordered the (PSC) and the Tennessee Defendants to meet and confer and provide the Court with a joint proposal or further responses by October 22, 2013.[3]

The Saint Thomas Entities promptly submitted proposed case management orders ("CMOs") to the PSC regarding a master pleading plan, discovery protocols, and a bellwether selection process.[4]  They have also circulated proposed forms for Plaintiffs' Fact Sheets, authorizations for the release of Plaintiffs' medical, educational, employment (for cases in which lost wages/earnings are sought), social security, and tax records, and a revised protective order.[5] For their part, the PSC has offered generalized grievances, categorical rejections, and verbal counter-proposals "in concept," providing a written response for the first time only minutes before a telephone conference last Friday, November 22, 2013—a call that was acknowledged to be the last opportunity to meet and confer before the deadline for this Response.[6]

Instead, the PSC has focused on its own discovery efforts.  The day after the October 8 Status Conference, the PSC served the Tennessee Defendants with discovery requests, including interrogatories, requests for admission, and requests for production.[7]  The PSC has confirmed that it intends these discovery requests to serve as master discovery such that the Saint Thomas Entities' responses and document production will apply in the 100+ cases filed against them that are either in the MDL or in transit to this Court from the Middle District of Tennessee.  In addition, the PSC has started requesting dates for the depositions of fact witnesses, although at

---

[3] *See* Docket #519.  That deadline has twice been extended by the Court based on joint application of the parties.  Docket ##526, 567.

[4] *See* Declaration of Marcy Hogan Greer ("Greer Declaration"), filed contemporaneously, at ¶ 8.

[5] *Id.* ¶¶ 10, 11, 12, 14.

[6] *Id.* ¶ 22.

[7] *See* Greer Declaration at ¶ 3 and Exhibits A-A16.

53090516.3

the same time it has consistently resisted providing more than very basic information about its own clients unless and until they are selected for the bellwether pool. The PSC's position is that the Court has given it the green light to go forward with any and all discovery it deems appropriate, despite the lack of any structure or limitations as are traditionally used in complex litigation, including MDLs.

Thus, despite multiple telephone conferences and email exchanges, the parties have made virtually no progress in negotiating the necessary CMOs. Though the Saint Thomas Entities provided proposed CMOs over a month ago, the only written counter-proposal from the PSC was provided to the Tennessee Defendants on Friday, November 22, 2013—only minutes before a meet and confer call with the PSC and defense counsel to discuss final proposals.

The Saint Thomas Entities have proposed reasonable, bilateral procedures along the lines of ones adopted in other MDLs, while the PSC wants to bind them to a process that prevents them from filing motions to dismiss the purely vicarious claims against them until after bellwether cases are selected in late Spring 2014. And while the PSC is pressing forward aggressively with discovery against the Tennessee Defendants, it is at the same time attempting to limit discovery of their clients to minimal information previously ordered by the Bankruptcy Court as part of the proof of claim process unless they self-select into the bellwether process. As explained below, the PSC's one-sided proposal leaves out key elements of a case management plan and will inevitably lead to further disputes over these preliminary matters that should be settled as soon as possible so that discovery and case development can get underway. Accordingly, the Saint Thomas Entities respectfully request that the Court enter their proposed CMOs as to pleadings, discovery, and bellwether selections (attached as Exhibits 1-3) and

approve their proposed form of Plaintiffs' Fact Sheets (Exhibit 4) and authorizations for the release of Plaintiffs' individual records (Exhibit 5-11).

## ARGUMENT AND AUTHORITIES

I. **The Saint Thomas Entities' Proposals Set the Path for an Orderly, Bilateral Discovery and Case Development Process**

   A. **The Master Complaint Requirement Should Apply to Plaintiffs' Claims Against All Defendants**

The PSC's "Master Complaint," as filed on November 5, 2013 (Docket #545), contains no allegations or claims against the Saint Thomas Entities.  The purpose of a master complaint is to compile the repetitive allegations against a particular defendant into one single pleading so that master challenges can be made to it that will then apply to all cases in the MDL.  Short-form complaints are designed to allow individual Plaintiffs to opt into particular counts and remedies of the master complaint and to provide case-specific allegations.  The Court need only peruse a sampling of the Tennessee complaints to see that the allegations against the Saint Thomas Entities are essentially the same if not verbatim.  There is no basis for regurgitating these same core allegations in a series of 100+ "short-form" complaints, much less forcing the Saint Thomas Entities to file 100+ "redundant motions to dismiss and short-form" answers.

The Saint Thomas Entities have proposed alternatives to the PSC for a master complaint process, including the submission of a master Tennessee complaint or an amendment to the current Master Complaint to include counts against these Defendants, but all such proposals have been rejected by the PSC in favor of its Proposed MDL Order No. 8 (Greer Declaration Exhibit G2) ("PSC Proposal").  The Saint Thomas Entities are open to other proposals for achieving this result, but at a minimum, the PSC should be directed to file a master pleading that contains the uniform allegations of the Tennessee Plaintiffs against these Defendants  so  that  they  can

mount pleadings challenges to the master complaint that will apply to all MDL Plaintiffs making the same or similar allegations.

### B.   Plaintiffs' Fact Sheets and Full Medical Records Are Necessary for All MDL Plaintiffs

A "fact sheet" largely replaces interrogatories to the individual Plaintiffs in an MDL or other coordinated proceeding. The document is similar to the types of forms that patients typically fill out in a doctor's office, asking for basic background information and health history. As the Court can see from the proposed Plaintiffs' Fact Sheet, Exhibit 4, the questions do not require legal advice and so can be completed by the individual Plaintiffs or their representatives.

MDLs are increasingly turning to Plaintiffs' Fact Sheets as an efficient and "user-friendly" way to obtain discovery from individual Plaintiffs. *See* FEDERAL JUDICIAL CENTER, MANUAL FOR COMPLEX LITIGATION (FOURTH) at § 22.83 at 438 & n.1420 ("In lieu of interrogatories, questionnaires directed to individual plaintiffs in standard, agreed-on forms were used successfully in the breast implant and diet drug litigations." (citing *In re Diet Drugs Prods. Liab. Litig.*, MDL No. 1203, Order No. 22 (E.D. Pa. Mar. 23, 1998) (including "Plaintiff Fact Sheet" and medical authorizations in "First Wave Discovery"); *In re Silicone Gel Breast Implants Prods. Liab. Litig.*, MDL No. 926, Order No. 30 (N.D. Ala. Mar. 25, 1996) (approving the use of MDL questionnaire "which is treated as the plaintiff's answer to interrogatories and requests for production")). In fact, the Saint Thomas Entities' proposed Plaintiffs' Fact Sheet is patterned on similar documents used by the undersigned in other MDLs and statewide coordinated personal injury proceedings. *See* Greer Declaration ¶ 6. The PSC has not provided any comments to the proposed Fact Sheet except to indicate generally that it is unlikely to agree to the proposed form. *Id.* ¶ 23.

In addition, the Saint Thomas Entities have proposed succinct, clear, and reasonable authorizations for the release of the individual Plaintiffs' full medical[8] and other individual records necessary to evaluate their claims. Exhibits 5-11. Full medical records are a given in any personal injury or wrongful death lawsuit. This fundamental requirement of discovery is not lost in an MDL. This is "important, basic information" that must be provided in a personal injury MDL in order to conduct any meaningful bellwether selections. Eldon E. Fallon, Jeremy T. Grabill & Robert Pitard Wynne, *The Problem of Multidistrict Litigation: Bellwether Trials in Multidistrict Litigation*, 82 Tul. L. Rev. 2323, 2352 (June 2008). As Judge Fallon explains it:

> The discretionary limitation that bellwether trial candidates be trial-ready should be imposed as a means to streamline the trial-selection process. . . . [I]n this context, trial-ready means that the attorneys have adequate proof of the important, basic information, [which includes] access to the plaintiffs' medical files . . . The importance of being trial-ready in this sense, other than the accelerated manner in which the case can be prepared, is that it prevents the unfortunate situation where a case is proposed and accepted to fill the pool, but the attorneys later discover that the existence of one of these preliminary matters is uncertain or even challenged.
>
> ***The parties will usually be required to provide all of this information early on in the litigation pursuant to a global pretrial discovery order***. *See, e.g., In re Vioxx Prods. Liab. Litig.*, MDL No. 1657 (E.D. La. June 29, 2006) (pretrial order no. 18C) (governing the provision of Plaintiff Profile Forms, Merck Profile Forms, and medical authorizations); *In re Propulsid Prods. Liab. Litig.*, MDL No. 1355 (E.D. La. Jan. 31, 2001) (pretrial order no. 9) (governing the provision of Plaintiff Profile Forms and medical authorizations). Notwithstanding such a requirement, the parties may occasionally fail to provide this information. ***Cases in which this basic level of disclosure is not complete should not be considered for bellwether trials, and may even be subject to dismissal if the parties fail to comply after additional prompting***. *See In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1232-34 (9th Cir. 2006); *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 340-41 (5th Cir. 2000).

*Id.* at 2352 & n.99 (emphasis added).

---

[8] Tennessee law requires that a personal injury plaintiff provide access to the medical records relating to the claims made in the complaint, and the Tennessee Plaintiffs have largely provided those limited releases. But the PSC has been persistently resisting providing releases for full medical records and so has not engaged in any meaningful discussions of scope.

53090516.3

6

## C. The Saint Thomas Entities' Proposed Bellwether Process Has Ample Precedent and Is Balanced to Achieve Representative Samples

The Saint Thomas' Entities' proposed bellwether process follows largely on Judge Fallon's recommendations based on his experience in the Merck and PPA litigation. It provides, as Judge Fallon recommends, that the Plaintiffs provide completed Plaintiffs' Fact Sheets and executed authorizations for the release of medical and other records that will be necessary to evaluate the claims. The proposed CMO also lines out an orderly process for defining selection protocols, selecting the Initial Pool of potential bellwether candidates, and permitting further discovery of the Plaintiffs in the Initial Pool, culminating in the selection of four bellwether candidates for initial trials. As explained below in part II.C, the PSC rejected this traditional bellwether proposal in its entirety in favor of a procedure that, to the undersigned counsel's knowledge, has never before been used in an MDL.

## II. The PSC's Proposal Is Neither Balanced Nor Comprehensive

The PSC's suggestion for its novel case-management approach was first outlined to the Tennessee Defendants in the meet and confer call on November 15, 2013, and its written proposal was provided to the Tennessee Defendants for the first time last Friday afternoon. Greer Declaration ¶¶ 16, 22 & Exhibits G-G2. As a result, these Defendants have had little opportunity to respond to it, although they have investigated other MDLs that the PSC indicated had used such a process. *Id.* ¶ 17. Defendants therefore reserve the right to respond more fully to the PSC's Proposal after receiving the PSC's response to the Court's directive.

The PSC's proposed MDL Order No. 8 (Greer Declaration at Exhibit G2) ("PSC's Proposal") is transparently designed to achieve the PSC's goals of permitting unfettered discovery and case development on their part, while denying the Tennessee Defendants access to important records and information of the Plaintiffs and the opportunity to seek early dismissal of

53090516.3

7

the claims against them. The bellwether selection process is likewise one-sided, with the Plaintiffs being able to restrict information and possibly medical records (beyond the limited releases previously required by Tennessee law) unless and until they self-select into the bellwether process. The only portions of the PSC Proposal dealing with discovery are deadlines for submission of agreed electronically stored information ("ESI") and deposition protocols, but as to the other material elements of a discovery plan, the PSC takes the position that this Court has previously waived them. For the reasons set forth in the *Saint Thomas Entities' Memorandum in Support of Motion to Stay Objections and Responses to Discovery Pending Submission of a Discovery Plan and Amended Protective Order and Motion for Second Amended Protective Order* ("Motion to Stay"), filed contemporaneously, the PSC's Proposal is untenable and will inevitably lead to duplicative discovery, unstructured and unlimited discovery by the PSC, and further resort to the Court over matters that can and should be settled before discovery gets underway. The Saint Thomas Entities respectfully request that the Court impose a balanced and equitable structure for discovery and further case development for the MDL as a whole.

### A. There Is No Master Pleading for the Saint Thomas Entities and No Mechanism for Seeking Early Dismissal

Under the PSC's Proposal, the Tennessee Defendants would have no ability to pursue a motion to dismiss until after the bellwether plaintiffs are selected for initial trials. Although the Proposal sets forth a deadline for filing "Motions to Dismiss the Master Complaint," as noted, the current Master Complaint does not state claims against the Saint Thomas Entities, so there is currently no pleading they can challenge. Instead, the PSC has indicated that it will allege the vicarious liability claims against the Saint Thomas Entities in short-form complaints, meaning that the PSC is creating a new version of the same problem the Saint Thomas Entities raised in

their Motion to Reconsider because these Defendants will have to effectively move to dismiss and answer the same meritless allegations in more than 100 complaints.[9]

Even more concerning is the PSC's intention to delay the Saint Thomas Entities' ability to seek dismissal of the claims against them because the PSC intends to stay filing of all responsive pleadings to the short-form complaints "pending selection of the case as a bellwether case and filing of long form complaint." Exhibit G2 at 3.[10] The Court has repeatedly indicated that it will entertain motions to dismiss parties who do not belong in this MDL at an early stage, yet the PSC's Proposal is crafted precisely to avoid this result.

Further, although the PSC proposes deferring responsive pleadings as to the short-form complaints, it nonetheless wants the Court to order the Unaffiliated Defendants to provide a list of cases in which individual defenses to process, pre-suit notification requirements, and comparative fault, "including identifying the parties alleged to be at fault," will be made. *Id.* So, the PSC essentially wants the benefits of obtaining short-form answers so that it can have the comparative fault commitments and remedy any procedural defects in its own notice and service, but deprive the Unaffiliated Defendants from any meaningful challenge to the PSC's allegations against them.

B.      **The PSC Proposal Shuts Out All But the Most Basic Plaintiff Information**

The PSC proposes deferring completion of Plaintiffs' Fact Sheets until "after a case is selected as a bellwether case," which will occur in late Spring 2014. Greer Declaration, Exhibit

---

[9] The PSC's verbal promise that a ruling on the motion to dismiss in one individual case will apply to the other cases is neither memorialized in its proposal nor sufficient to address the concerns raised above showing why a master pleading is necessary.

[10] The other Tennessee Defendants are likewise precluded from pursuing an early disposition on the pleadings because the proposed response date for a motion to dismiss or other responsive pleading is limited to those requests "seeking to dismiss a party entirely from the Master Complaint." *Id.*

53090516.3

G2 at 4. And their proposal is that only six potential Bellwether Cases be selected for the initial bellwether pool, as explained below. In other words, only if a case is selected as one of the six in the bellwether pool will the Tennessee Defendants receive a Plaintiffs' Fact Sheet and full medical records. As explained above in part I.B, this is basic information that must be provided, and the PSC offers no legitimate basis for denying it.

## C. The Novel Bellwether Process Proposed by the PSC Is Ill-Conceived and Patently Unfair to the Tennessee Defendants

Rather than provide comments to the Saint Thomas Entities' bellwether proposal, Plaintiffs waited until ten days before the Court's deadline to provide a counter-proposal, and even then it was only a verbal outline of a "concept" for further discussion. Greer Declaration ¶ 16. The PSC provided a written proposal containing only a few parameters of the process for the first time last Friday, November 22, 2013—only a few minutes before the parties' final meet and confer on the CMOs and other case-management issues. *Id.* ¶ 22. As noted above, the process entails deferring Plaintiffs' Fact Sheets and full medical and other records for all Plaintiffs except for the proposed "six potential Bellwether Cases." Greer Declaration, Exhibit G2 at 4. The selection process thus affords the Defendants no meaningful opportunity for discovery of the potential bellwether Plaintiffs, while the PSC has unfettered access to the records and information of every Plaintiff in the MDL. There is no justification for such a lopsided process, and the PSC has offered only its erroneous interpretation of a procedure used in a very different MDL involving tens of thousands of plaintiffs—very unlike the circumstances here. Specifically, the PSC pointed to the pelvic/transvaginal mesh MDLs pending in the U.S. District Court for the Southern District of West Virginia as support for its proposal. Greer Declaration ¶ 16. But further investigation of the mesh MDL revealed that the defendants in those MDLs had access to full medical records for ***all*** plaintiffs in the MDLs, and the initial

discovery pools were also much larger than the PSC's current proposal of six—involving dozens of potential bellwethers selected by both sides. *Id.* ¶ 17. In addition, the defendants were able to take depositions of 5-7 fact witnesses per potential bellwether plaintiff before the final selection process. *Id.* Consequently, the mesh MDLs provide no support for the PSC's Proposal.

Indeed, adoption of the PSC's Proposal will undermine the entire bellwether goal: "Little credibility will be attached to this process, and it will be a waste of everyone's time and resources." *In re Yasmin and Yaz (Drospirenone) Mktg., Sales Practices and Prods. Liab. Litig.*, No. 3:09-md-02100-DRH-PMF, 2010 WL 4024778, at *2 (S.D. Ill. Oct. 13, 2013), and ultimately derail resolution of the MDL.

## CONCLUSION AND PRAYER

For these reasons, Saint Thomas West Hospital, formerly known as St. Thomas Hospital, Saint Thomas Network, and Saint Thomas Health respectfully request that the Court: (i) grant their Motion to Reconsider MDL Order No. 7; (ii) rescind MDL Order No. 7; (iii) enter new case management orders along the lines of the proposals submitted by the Saint Thomas Entities; (iv) approve the proposed Plaintiffs' Fact Sheets and authorizations for medical and other records of the Plaintiffs; and (v) grant such other and further relief to which the Saint Thomas Entities are entitled.

SAINT THOMAS WEST HOSPITAL, FORMERLY KNOWN AS ST. THOMAS HOSPITAL, SAINT THOMAS NETWORK, AND SAINT THOMAS HEALTH

By its attorneys,
*/s/ Sarah P. Kelly*
Sarah P. Kelly (BBO #664267)
skelly@nutter.com
NUTTER McCLENNEN & FISH LLP
Seaport West
155 Seaport Boulevard
Boston, Massachusetts 02210
(617) 439-2000

Dated: November 25, 2013

OF COUNSEL:

Yvonne K. Puig*
Texas State Bar No. 16385400
Marcy Hogan Greer*
Texas State Bar No. 08417650
Eric J. Hoffman*
Texas State Bar No. 24074427

FULBRIGHT & JAWORSKI L.L.P.
98 San Jacinto Blvd. Suite 1100
Austin, Texas 78701
(512) 536-2450
(512) 536-4598 (FAX)

*Appearing *Pro Hac Vice*

**CERTIFICATE OF SERVICE**

      This certifies that a true and accurate copy of the foregoing was served on all parties of record by virtue of the Court's electronic filing system this 25th day of November, 2013.

                                              */s/ Sarah Kelly*
                                              Sarah P. Kelly