UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION <br><br> THIS DOCUMENT RELATES TO: <br><br> ALL ACTIONS | ) ) ) ) ) ) ) ) ) ) MDL NO. 2419 <br> DKT. NO 1:13-MD-2419 (FDS) |

**DECLARATION OF MARCY HOGAN GREER**

I, Marcy Hogan Greer, declare the following under penalty of perjury pursuant to 28 U.S.C. § 1746:

1.  I am a partner with the law firm of Fulbright & Jaworski L.L.P. ("Fulbright") in its Austin, Texas office and represent Saint Thomas West Hospital, formerly known as St. Thomas Hospital, Saint Thomas Network, and Saint Thomas Health (collectively referred to as the "Saint Thomas Entities") in the above-captioned litigation. I make this declaration in support of the *Saint Thomas Entities' Response to Court's Directive in Further Support of Their Motion to Reconsider MDL Order No. 7* ("Response") and *Motion to Stay Discovery Pending Submission of a Discovery Plan and Amended Protective Order and Motion for Second Amended Protective Order*.

2.  At the October 8, 2013, Status Conference, the Court ordered the Saint Thomas Entities and Saint Thomas Outpatient Neurosurgical Center, LLC ("STOPNC"), the Howell Allen Clinic, P.C. ("Howell Allen"), John W. Culclasure, M.D. ("Culclasure"), and Debra V. Schamberg, R.N. ("Schamberg") (collectively referred to as the "Tennessee Defendants") and the Plaintiffs' Steering Committee ("PSC") to meet and confer on responses to the Tennessee

Plaintiffs' Motion to Reconsider (Docket ##457, 459) ("Motion to Reconsider") and provide the Court with a joint proposal or further response by October 22, 2013.

3. The day after the Status Conference, on October 9, 2013, Ben Gastel on behalf of the PSC served discovery requests upon all of the Tennessee Defendants, including interrogatories, requests for production, and requests for admission. True and correct copies of the Gastel email and documents attached to it are <u>Exhibits A-A16</u> to this declaration. The letters attached to the discovery requests were from Gerard Stranch of the PSC and requested a conference to discuss the Tennessee Defendants' responses to the individual Plaintiffs' complaints.

4. On October 13, 2013, my partner, Yvonne K. Puig, sent the email attached as <u>Exhibit B</u> to Mr. Stranch and Mr. Gastel, offering times for a conference and listing additional items to discuss relating to the requested discovery and case management orders.

5. On October 15, 2013, a telephone conference was held with Messrs. Stranch and Gastel, Sarah Kelly (MDL counsel for the Saint Thomas Entities), Lela Hollabaugh (Tennessee counsel for the Saint Thomas Entities), Ms. Puig, Eric Hoffman (Norton Rose Fulbright), and myself. The parties discussed ideas for proposed case management orders ("CMOs"), protocols for discovery, including electronically stored information ("ESI"), Plaintiffs' Fact Sheets, and general case management issues.

6. Following that meeting, the Saint Thomas Entities began preparing proposed CMOs and Plaintiffs' Fact Sheets for further discussion. In my experience, MDLs are increasingly turning to Plaintiffs Fact Sheets as an efficient and "user-friendly" way to obtain discovery from individual Plaintiffs. The Saint Thomas Entities' proposed Plaintiffs' Fact Sheet

form is patterned on similar documents I have used in other MDLs and statewide coordinated personal injury proceedings.

7. On October 22, 2013, I sent an email to Messrs. Stranch and Gastel, as well as C.J. Gideon and Matt Cline (counsel for the other Tennessee Defendants, STOPNC, Howell Allen, Culclasure, and Schamberg), indicating that the Saint Thomas Entities would be circulating drafts shortly and asking if the parties wanted to request an extension of time to provide the Court with a joint/proposal or responses. As a result, these parties filed a *Joint Motion for Extension of Time to November 4, 2013 to File a Response to Motion to Reconsider* (Docket #525), which the Court granted (Docket #526).

8. On October 23, 2013, I sent three proposed CMOs attached as <u>Exhibits C-C3</u> to Messrs. Stranch, Gastel, Gideon, and Cline, as well as Ms. Kelly, Ms. Hollabaugh, Ms. Puig, and Mr. Hoffman (collectively referred to as "Negotiation Counsel").

9. On October 25, 2013, Negotiation Counsel held another telephone conference to discuss the proposed CMOs, Plaintiffs' Fact Sheets, releases, master complaints (including whether to prepare a Tennessee master complaint), a framework for filing motions to dismiss, and proposed amendments to the *Amended Stipulated Protective Order of Confidentiality* (Docket #397) (Aug. 16, 2013) ("Protective Order"), which had been entered before the Tennessee Defendants were made parties to the MDL.

10. On October 31, 2013, I circulated to Negotiation Counsel our proposed Plaintiffs' Fact Sheet. That day, Negotiation Counsel also exchanged multiple emails and held another conference call.

11. On November 1, 2013, Negotiation Counsel held another telephone conference to discuss the proposed CMOs, Plaintiffs' Fact Sheets, authorizations, amendments to the

Protective Order, discovery, pleadings (including how to handle state-specific allegations), and related matters.

12. Following that conference, the Saint Thomas Entities prepared authorizations for the release of various medical, educational employment, Social Security, tax, and related documents regarding the individual Plaintiffs with claims against the Tennessee Defendants, which I forwarded to the Negotiation Counsel on November 4, 2013. That same day, Mr. Gastel confirmed another extension of the Saint Thomas Entities' deadline for responding to the outstanding discovery requests until December 11, 2013—in light of my being out of the country until December 7—but also reiterated the PSC's expectation that a rolling production of electronic documents would be underway by that point. On behalf of the Saint Thomas Entities, we reiterated the need for an amended Protective Order and an ESI protocol before we could start producing documents. The parties also agreed to request another extension from the Court to continue negotiations. Consequently, they filed a *Joint Motion for Extension of Time to November 25, 2013, to File Response to Motion to Reconsider* (Docket #544), which the Court granted (Docket #567).

13. On November 5, 2013, the PSC filed an Amended Complaint (Docket #545) against a number of defendants in the MDL, as well as a Short-Form Amended Complaint (Docket #546), but these pleadings did not name the Saint Thomas Entities as defendants, nor did they state claims against these defendants.

14. That same day, on November 5, 2013, I circulated a proposed revised (redlined) Protective Order, a true and correct copy of which is attached as Exhibit D-D1.

15. On November 11, 2013, we were informed that Mr. Stranch had surgery and was out that week, and so no further conferences could be scheduled until November 15, 2013.

16. On November 15, 2013, Negotiation Counsel held another meet and confer regarding the proposed CMOs, Fact Sheets, authorizations, bellwether trials, and related matters. In that call, Mr. Stranch requested that the Tennessee Defendants consider instead a bellwether "concept" like one he verbally described that he understood had been used in the pelvic mesh MDLs (pending in the Eastern District of West Virginia) where individual plaintiffs would submit only a very short "profile form"—in this case, the profile form would be the "Confidential Personal Injury or Wrongful Death Claim Information Form [the 'PITWD Addendum']" previously ordered by the Bankruptcy Court for proofs of claims—unless and until they determined they wanted to participate in the bellwether pool. If they chose to participate, these plaintiffs would then submit completed Plaintiffs' Fact Sheets and authorizations for full medical records. The Tennessee Defendants would then have an opportunity to depose these individuals. My colleagues and I expressed concern that the proposal would allow the Plaintiffs to self-select and would not necessarily draw truly representative Plaintiffs for bellwether trials. We further stated that we would follow up with counsel in the mesh MDL. Negotiation Counsel then scheduled follow up meetings for November 18, 2013, and November 22, 2013, in order to comply with the Court's November 25, 2013, deadline, as extended.

17. After that call, I reviewed additional CMOs from the four mesh MDLs in which bellwether trials have been ordered and contacted some of the defense counsel in the mesh MDL. In the course of this investigation, I learned that the parties had negotiated Plaintiffs' Fact Sheets similar to the one proposed by the Saint Thomas Entities in this MDL, but due to the sheer volume of cases—over 8,000 at the time—they agreed to use a more limited "profile" to move the cases into initial discovery pools from which bellwethers could be drawn. The initial discovery pools were much larger than the PSC's current proposal of six—involving dozens of

potential bellwethers selected by both sides. I also learned that the defendants were provided full medical and other records for all plaintiffs in the MDL and took 5-7 fact depositions for each of the plaintiffs in the initial discovery pool, including the plaintiffs, consortium plaintiffs, treating physicians, and others, before choosing the bellwether plaintiffs. In reliance on this information and based on the orders and other materials available from the U.S. District Court for the Southern District of West Virginia, I concluded that the PSC's proposal "in concept" was both different from the process used in the mesh litigation and unnecessary in this case, where at present the bellwether issues would affect at best 100+ Tennessee plaintiffs (and the entire MDL is likely to involve only a few hundred plaintiffs).

18. On November 18, 2013, Negotiation Counsel held another meet and confer regarding the proposed CMOs, Fact Sheets, authorizations, bellwether trials, and related matters. In that call, Mr. Stranch indicated that the PSC had rejected our proposal for an amended Protective Order because a number of parties had requested changes to the order, and the PSC was categorically rejecting all proposals. The parties also discussed briefly the CMOs, but did not reach any further agreement.

19. On November 19, 2013, the Saint Thomas Entities invited other members of the PSC to participate in the final meet and confer call to avoid any further loss of time in having the PSC's Tennessee Counsel carry back proposals to the PSC for approval. A true and correct copy of my email is attached as Exhibit E.

20. Following that email, the Saint Thomas Entities prepared and circulated another round of revised proposals for CMOs as to pleadings, discovery, and bellwether trials to Negotiation Counsel on November 21, 2013.

21. At the same time, the PSC has reached out to third-party doctors seeking depositions indicating that "[d]iscovery is open in the MDL." A true and correct copy of an email sent to Ms. Hollabaugh as Tennessee Counsel for the Saint Thomas Entities and forwarded to me for purposes of our negotiations with the PSC is attached as Exhibit F.

22. On November 22, 2013, Negotiation Counsel held a meet and confer call at 2:00 p.m. CST to discuss their final proposals on the matters described in the preceding paragraphs. A few minutes before that call, we received the only written proposals from the PSC, which included a lengthy PSC proposal for handling electronically stored information ("ESI") and a draft CMO that included the PSC's proposal for handling these matters. True and correct copies of the November 22, 2013, email from Mr. Gastel and the PSC's proposals are attached as Exhibits G-G2. Messrs. Stranch and Gastel, as well as Mark Zamora, participated in the call on behalf of the PSC. In that call, the PSC members indicated that they intended to file any claims against the Saint Thomas Entities as part of a short-form complaint in individual cases, but would not be filing a master pleading relating to these Defendants. They also stated that their proposed CMO would defer any Plaintiffs' Fact Sheets until after selection of the bellwether pool in Spring of 2014, and delay any motions to dismiss until after the bellwether trial cases were selected. We also discussed the need for a discovery protocol along the lines of the one that the Saint Thomas Entities had proposed on October 23, 2013, and the PSC's position was that the Court has ordered and encouraged discovery and—other than a protocol for handling ESI—they did not see the need for any discovery plan, as discovery could be conducted according to the federal and local rules of procedure.

23. The PSC has not provided any comments to the proposed Fact Sheet except to indicate generally that it is unlikely to agree to the proposed form. The PSC has objected

- 8 -

generally to completing the authorizations for release of Plaintiffs' individual records as premature and has provided only general, verbal comments about the form of the releases. The only written responses we have received from the PSC are the ones described in paragraph 22 above that were sent last Friday.

Dated:   November 25, 2013

<i>s/Marcy Hogan Greer</i><br>
Marcy Hogan Greer

## CERTIFICATE OF SERVICE

This certifies that a true and accurate copy of the foregoing was served on all parties of record by virtue of the Court's electronic filing system this 25th day of November, 2013.

<i>/s/ Sarah Kelly</i><br>
Sarah P. Kelly