# Exhibit A10

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE:  NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>All actions pending against Saint Thomas Outpatient Neurosurgical Center, LLC, and its affiliates including:<br><br>1:13-cv-12234-FDS May et al v. Ameridose, LLC et al<br>1:13-cv-12238-FDS Carman et al v. Ameridose, LLC et al<br>1:13-cv-12305-FDS Wiley et al v. Ameridose, LLC et al<br>1:13-cv-12311-FDS Schulz et al v. Ameridose, LLC et al<br>1:13-cv-12315-FDS Hester et al v. Ameridose, LLC et al<br>1:13-cv-12426-FDS Davis et al v. Ameridose, LLC et al<br>1:13-cv-12429-FDS Bequette et al v. Ameridose, LLC et al<br>1:13-cv-12430-FDS Norwood et al v. Ameridose, LLC et al<br>3:13-cv-00918 Ziegler et al v. Ameridose, LLC et al<br>3:13-cv-00919 Martin v. Ameridose, LLC et al<br>3:13-cv-00923 Reed v. Ameridose, LLC et al<br>3:13-cv-00929 Brinton v. Ameridose, LLC et al<br>3:13-cv-00930 Lovelace v. Ameridose, LLC et al<br>3:13-cv-00931 Ragland v. Ameridose, LLC et al<br>3:13-cv-00932 Slatton et al v. Ameridose, LLC et al<br>3:13-cv-00933 Rybinski v. Ameridose, LLC et al | )<br>)<br>)<br>)<br>)  MDL No. 1:13-md-2419-FDS<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

| | |
|---|---|
| 3:13-cv-00934 Lemberg et al v. Ameridose, LLC et al | ) )
| 3:13-cv-00935 Ruhl et al v. Ameridose, LLC et al | ) )
| 3:13-cv-00938 McElwee v. Ameridose, LLC et al | ) )
| 3:13-cv-00940 Robnett et al v. Ameridose, LLC et al | ) )
| 3:13-cv-00941 Sharer et al v. Ameridose, LLC et al | ) )
| 3:13-cv-00942 Johnson et al v. Ameridose, LLC et al | ) )
| 3:13-cv-00943 Knight v. Ameridose, LLC et al | ) )
| 3:13-cv-00951 Knihtila v. Ameridose, LLC et al | ) )
| 3:13-cv-00952 Sellers et al v. Ameridose, LLC et al | ) )
| 3:13-cv-00953 Barger et al v. Ameridose, LLC et al | ) )
| 3:13-cv-00954 Lodowski et al v. Ameridose, LLC et al | ) )
| 3:13-cv-00961 Skelton et al v. Ameridose, LLC et al | ) )
| 3:13-cv-00962 Chambers et al v. Ameridose, LLC et al | ) )
| 3:13-cv-00963 Hill et al v. Ameridose, LLC et al | ) )
| 3:13-cv-00964 Mathias v. Ameridose, LLC et al | ) )
| 3:13-cv-00965 Settle et al v. Ameridose, LLC et al | ) )
| 3:13-cv-00966 Miller v. Ameridose, LLC et al | ) )
| 3:13-cv-00967 Noble et al v. Ameridose, LLC et al | ) )
| 3:13-cv-00968 Eggleston et al v. Ameridose, LLC et al | ) )
| 3:13-cv-00969 Meeker et al v. Ameridose, LLC et al | ) )
| 3:13-cv-00970 Scott et al v. Ameridose, LLC et al | ) )
| 3:13-cv-00971 McCullouch et al v. Ameridose, LLC et al | ) )
| 3:13-cv-00972 McKee et al v. Ameridose, LLC et al | ) )

| | |
|---|---|
| 3:13-cv-00973 Kirby v. Ameridose, LLC et al | ) |
| 3:13-cv-00975 Richards v. Ameridose, LLC et al | ) |
| 3:13-cv-00977 Youree et al v. Ameridose, LLC et al | ) |
| 3:13-cv-00978 Koonce et al v. Ameridose, LLC et al | ) |
| 3:13-cv-00979 Pelters et al v. Ameridose, LLC et al | ) |
| 3:13-cv-00984 Besaw et al v. Ameridose, LLC et al | ) |
| 3:13-cv-00985 Ferguson et al v. Ameridose, LLC et al | ) |
| 3:13-cv-00986 Hurt et al v. Ameridose, LLC et al | ) |
| 3:13-cv-00987 Wanta et al v. Ameridose, LLC et al | ) |
| 3:13-cv-00988 Russell et al v. Ameridose, LLC et al | ) |
| 3:13-cv-00989 Pruitt et al v. Ameridose, LLC et al | ) |
| 3:13-cv-00992 Young v. Ameridose, LLC et al | ) |
| 3:13-cv-00993 Sullivan et al v. Ameridose, LLC et al | ) |
| 3:13-cv-01033 Barnard v. Ameridose, LLC et al | ) |
| 3:13-cv-01032 Berry v. Ameridose, LLC et al | ) |

## PLAINTIFFS' STEERING COMMITTEE'S FIRST SET OF INTERROGATORIES TO SAINT THOMAS WEST HOSPITAL

The Plaintiffs' Steering Committee, pursuant to Federal Rules of Civil Procedure 26 & 33, respectfully propounds these Interrogatories to Saint Thomas West Hospital to be answered within the time prescribed by law.

## DEFINITIONS

As used herein, the following terms mean:

- 3 -

"Saint Thomas Neurosurgical" means Saint Thomas Outpatient Neurosurgical Center, LLC.

"St. Thomas Hospital" means Saint Thomas West Hospital, formerly known as St. Thomas Hospital.

"You" or "your" refer to St. Thomas Hospital.

"Howell Allen Clinic" means Howell Allen Clinic A Professional Corporation.

"NECC" means New England Compounding Pharmacy, Inc. d/b/a New England Compounding Center.

"MPA" means methylprednisolone acetate.

"Dr. Culclasure" means John Culclasure, M.D.

"Ms. Schamberg" means Debra Schamberg, R.N.

## INTERROGATORIES

1.      Was St. Thomas Hospital (including its agents, employees or representatives) involved in any way in the decision to purchase medications from New England Compounding Pharmacy, Inc. d/b/a New England Compounding Center ("NECC") for use at Saint Thomas Outpatient Neurosurgical Center, LLC ("Saint Thomas Neurosurgical)?  If so, identify each and every individual involved in the decision, and describe each and every aspect of the involvement.

RESPONSE:

2.      Has St. Thomas Hospital ever purchased medication from a compounding pharmacy?  If so, identify the name of the compounding pharmacy, the name of the

medication(s) purchased, the reason for procuring the medication(s) from the compounding pharmacy, and the manner in which St. Thomas Hospital evaluated the compounding pharmacy.

RESPONSE:


3.      Identify each communication (including face-to-face, telephone, email, or other communications) between NECC (including its agents, employees or representatives) and St. Thomas Hospital (including its agents, employees or representatives).  For each communication identified, please provide the following information:

        a)      the names, job titles, and contact information for each person involved in the communication;

        b)      the date, time, length, mode and location of each communication or discussion;

        c)      whether any notes, memoranda, recordings, writings or other records were kept of any of those conversations or communications; and

        d)      state as specifically as possible what each party to the communication or conversation said and state what actions St. Thomas Hospital took, if any, as a result of each communication or conversation.

RESPONSE:


4.      Has St. Thomas Hospital ever decided not to purchase or continue purchasing medications from NECC or any entity affiliated with NECC?  If so, please state the date of that

decision, identify the name of each individual involved with that decision, and please explain all reasons for and circumstances surrounding the decision.

RESPONSE:

5.      Has St. Thomas Hospital ever decided not to purchase or continue purchasing medications from a compounding pharmacy?  If so, state the date of that decision, identify the name of each individual involved with that decision, and please explain all reasons for and circumstances surrounding the decision.

RESPONSE:

6.      Please list the date, location, and attendees present at each and every meeting (business or social) between or among NECC (including its agents, employees or representatives) and St. Thomas Hospital (including its agents, employees or representatives).

RESPONSE:

7.      Please list every company, manufacturer, compounder or distributor from whom St. Thomas Hospital purchased any steroid used in epidural steroid injections since January 1, 2008, the date of each purchase, the quantity ordered, and how much St. Thomas Hospital paid for each vial of injectable steroid.

RESPONSE:

8.      Describe in detail every gift, sample, incentive, promotion, thank you gift, and/or discount that St. Thomas Hospital (or anyone associated with it) ever received from NECC (including its agents, employees or representatives) or any wholesaler or distributor of any injectable steroid.

RESPONSE:

9.      Before September 18, 2012, did anyone associated with St. Thomas Hospital ever communicate with anyone associated with Saint Thomas Neurosurgical regarding injectable steroids or NECC?  If so, please identify each person involved in those communications, and please explain the date and substance of the communications in detail.

RESPONSE:

10.      Has the hospital pharmacy at St. Thomas Hospital ever supplied medications to Saint Thomas Neurosurgical, and/or has it ever assisted, or declined to assist, Saint Thomas Neurosurgical with acquiring or evaluating medications?  In your answer, please explain in detail the hospital pharmacy department's interactions with Saint Thomas Neurosurgical, including the identities of all persons involved and the substance of any communications.

RESPONSE:

11.     Explain in detail St. Thomas Hospital's policies and procedures regarding the purchase of medications, including but not limited to a description of any applicable policies and procedures from Ascension.

RESPONSE:


12.     Describe in detail the process by which St. Thomas Hospital procured medications in 2012, including the names and contact information of all buying agents, suppliers, distributors, and wholesalers involved.

RESPONSE:


13.     Please describe in detail all systems, policies and procedures used at St. Thomas Hospital in order to supervise and oversee Saint Thomas Neurosurgical.

RESPONSE:


14.     Please describe in detail all systems, policies and procedures used at St. Thomas Hospital in order to evaluate compounding pharmacies from which it purchases medications.

RESPONSE:

15.     Please describe in detail all systems, policies and procedures used at St. Thomas Hospital in order to evaluate manufacturers, distributors or wholesalers from which it purchases medications.

RESPONSE:

16.     Please describe in detail (including names and dates) the extent to which anyone associated with Saint Thomas Neurosurgical consulted with any pharmacist employed by St. Thomas Hospital or hospital pharmacy department regarding whether to purchase medications from NECC in particular or compounding pharmacies in general.

RESPONSE:

17.     Please explain, in detail, all reasons for the termination of Martin Kelvas, and describe each and every fact and/or consideration that lead to that termination.  Please include the identities of each person involved in the termination decision, and describe all conversations leading to the termination decision.

RESPONSE:

18.     Describe in complete detail the business structure of St. Thomas Hospital including but not limited to:

    a)      provide the names and job title of each officer of St. Thomas Hospital;

    b)      provide the name of each manager of St. Thomas Hospital;

- 9 -

c)      provide the name of each owner or member of St. Thomas Hospital;

d)      identify all contracts, agreements, cost-sharing arrangements, profit-sharing arrangements, and patient referral arrangements existing between or among St. Thomas Hospital and Saint Thomas Neurosurgical, Howell Allen Clinic, Saint Thomas Network, Saint Thomas Health and/or Saint Thomas Health Services;

e)      describe in detail all financial arrangements that presently exist or have previously existed between or among St. Thomas Hospital and Saint Thomas Neurosurgical, Howell Allen Clinic, Saint Thomas Network, Saint Thomas Health and/or Saint Thomas Health Services; and

f)      identify and describe every lease for space occupied by Saint Thomas Neurosurgical.

RESPONSE:

19.    Explain in detail all financial transactions that occurred between St. Thomas Hospital and Saint Thomas Neurosurgical in 2012, including dates, amounts and reasons.

RESPONSE:

20.    Explain in detail all financial transactions that occurred between St. Thomas Hospital and Howell Allen Clinic in 2012, including dates, amounts and reasons.

RESPONSE:

21.     Please identify every employee or agent of St. Thomas Hospital who performed any duties or functions for Saint Thomas Neurosurgical, and for each such person, please state:

        a)     the person's name, job title and contact information;

        b)     a description of the duties or functions performed; and

        c)     a statement of whether the person continues to be employed by or affiliated with either St. Thomas Hospital and/or Saint Thomas Neurosurgical.

        RESPONSE:

22.     Has St. Thomas Hospital ever paid for or provided any personnel, medications, consulting services, procurement services, equipment, medical supplies, medical forms, billing services, telephone services, websites or other materials used by Saint Thomas Neurosurgical?  If so, please explain detail each item provided.

        RESPONSE:

23.     Explain in detail St. Thomas Hospital's relationship with Saint Thomas Network and Saint Thomas Health.  Please include a complete description of the role played by each of those entities in healthcare and business operations at the Saint Thomas hospital campus on Harding Road in Nashville, Tennessee.

RESPONSE:

24.     Does St. Thomas Hospital contend that any other person or entity was responsible for or caused the injuries and deaths that are the subject of this litigation?  If so, identify each such person or entity and state the factual basis for a contention that any other person or entity was responsible for the injuries and deaths forming the basis of this litigation.

RESPONSE:

25.     State the full name, address, telephone number, job title and employer of each and every person believed by St. Thomas Hospital to have knowledge of facts regarding the claims alleged in this litigation, any defenses thereto, and/or any issues germane to this litigation. Please include any person believed to have knowledge of rebuttal or impeachment evidence, and for each person listed, please identify the subject matter of their knowledge and provide a brief description of their knowledge.

RESPONSE:

26.     When and how did you (or your agents) become aware that Saint Thomas Neurosurgical had received contaminated medication from NECC and how did you respond to that information?

RESPONSE:

27.    What involvement, if any, did St. Thomas Hospital have in contacting patients after learning of the recent meningitis outbreak?

      RESPONSE:

28.    Describe every communication and/or conversation St. Thomas Hospital (including its agents, employees or representatives) had with Saint Thomas Neurosurgical regarding the recent fungal meningitis outbreak, and describe what actions St. Thomas Hospital took, if any as a result of each communication or conversation.

      RESPONSE:

29.    Did St. Thomas Hospital personnel make or were they requested to make any report to any government bodies, accreditation groups or any other oversight bodies regarding its acquisition of steroids from NECC and/or the fungal meningitis outbreak?  If so, please identify and explain all such reports in detail.

      RESPONSE:

30.     Please explain in detail St. Thomas Hospital's involvement in the inspection, investigation and closure of Saint Thomas Neurosurgical in connection with the fungal meningitis outbreak, and please identify each person involved.

RESPONSE:


**Dated: October 9, 2013**

/s/ J. Gerard Stranch, IV
J. Gerard Stranch, IV
Benjamin A. Gastel
BRANSETTER, STRANCH & JENNINGS PLLC
227 Second Avenue North
Nashville, TN  37201
Phone: (615) 254-8801
Fax: (615) 255-5419
gerards@branstetterlaw.com

*Tennessee Lead Counsel for PSC*

Thomas M. Sobol
Kristen Johnson Parker
HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Phone: (617) 482-3700
Fax: (617) 482-3003
tom@hbsslaw.com
kristenjp@hbsslaw.com

*Plaintiffs' Lead Counsel*

Elizabeth J. Cabraser
Mark P. Chalos
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111
Phone: (415) 956-1000
Fax: (415) 956-1008
ecabraser@lchb.com
mchalos@lchb.com

*Federal/State Liaison*

Marc E. Lipton
LIPTON LAW
18930 W. 10 Mile Road
Southfield, MI 48075
Phone: (248) 557-1688
Fax: (248) 557-6344
marc@liptonlawcenter.com

Kim Dougherty
JANET, JENNER & SUGGS, LLC
75 Arlington St.
Suite 500
Boston, MA 02116
Phone: (617) 933-1265
kdougherty@myadvocates.com

Patrick T. Fennell
CRANDALL & KATT
366 Elm Avenue, S.W.
Roanoke, Virginia 24016
Phone:  (540) 342-2000
pfennell@crandalllaw.com

Mark Zamora
ZAMORA FIRM
6 Concourse Parkway, 22nd Floor
Atlanta, GA 30328
Phone: (404) 451-7781
Fax: (404) 506-9223
mark@markzamora.com

Plaintiffs' Steering Committee

## CERTIFICATE OF SERVICE

I, J. Gerard Stranch, IV, hereby certify that on the 9th day of October, 2013, the foregoing document was served via hand delivery (*), electronic mail (**), and/or U.S. Mail, postage prepaid, on the following counsel:

CJ Gideon*
Chris Tardio*
Gideon Cooper & Essary
315 Deadrick St., Suite 1100
Nashville, TN 37238

Yvonne Puig
Marcy H. Greer
Eric J. Hoffman
Fulbright & Jaworski LLP
98 San Jacinto Boulevard
Suite 1100
Austin, TX 78701-4255

Sarah P. Kelly
Nutter McClennen & Fish, LLP
Seaport West, 155 Seaport Blvd.
Boston, Massachusetts 02210

George Nolan (gnolan@leaderbulso.com)**
William Daniel Leader, Jr.
(bleader@leaderbulso.com)**
Paul J. Krog (pkrog@leaderbulso.com)**
Leader, Bulso & Nolan, PLC
414 Union Street, Suite 1740
Nashville, Tennessee 37219

Rebecca Blair (rblair@blair-law.com)**
The Blair Law Firm
5214 Maryland Way
Suite 207
Brentwood, TN 37027

Jason G. Denton (jdenton@rma-law.com)**
Rochelle McCullouch & Aulds
109 N. Castle Heights Avenue
Lebanon, TN  37087

B. Nathan Hunt (nhunt@pattonandpittman.com)**
Patton & Pittman
109 S. Third Street
Clarksville, TN  37040

John O. Belcher (jbelcher@lassiterlaw.com)**
William Hance Lassiter, Jr.
(blassiter@lassiterlaw.com)**
Lassiter Tidwell & Davis, PLLC
150 Fourth Ave. N., Suite 1850
Nashville, TN  37219-2408

Daniel L. Clayton (dclayton@kcbattys.com)**
Randall Loftin Kinnard (rkinnard@kcbattys.com)**
Kinnard Clayton & Beveridge
The Woodlawn
127 Woodmont Blvd.
Nashville, TN  37205

Larry Lamont Crain (larry@csafirm.com)**
American Center for Law and Justice
5214 Maryland Way, Suite 402
Brentwood, TN  37027

Kurt W. Maier (kmaier@elpolaw.com)**
J. Kyle Roby (kroby@elpolaw.com)**
Robert Arthur Young (byoung@elpolaw.com)**
English Lucas Priest & Owsley
P.O. Box 770
Bowling Green, KY  42102-0770

Edgar Taylor, III (eddie@dttlawfirm.com)**
Donoho Taylor & Taylor
P.O. Box 179
Hartsville, TN  37074

/s/ J. Gerard Stranch, IV
J. Gerard Stranch, IV

- 16 -

VERIFICATION

STATE OF TENNESSEE                              )

COUNTY OF _____                       )

       I, _____. swear or affirm that the answers to interrogatories contained above are true, complete and accurate.  I also understand that it is my duty to promptly notify my attorney should I later learn that any of these answers are incomplete, inaccurate or misleading.  I further certify that I have provided my attorneys with all documents requested.


       By:_____


      Sworn to and subscribed before me this ___ day of _____, 2013.


      _____

      Notary Public

      My Commission Expires:_____