UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION )))) | |
| ) | MDL No. 2419 |
| ) | Dkt. No 1:13-md-2419 (FDS) |
| THIS DOCUMENT RELATES TO: ) | |
| ) | |
| All Actions ) | |
| ) | |

**SAINT THOMAS ENTITIES' MEMORANDUM IN SUPPORT OF MOTION TO STAY OBJECTIONS AND RESPONSES TO DISCOVERY PENDING SUBMISSION OF A DISCOVERY PLAN AND AMENDED PROTECTIVE ORDER AND MOTION FOR SECOND AMENDED PROTECTIVE ORDER**

Saint Thomas West Hospital, formerly known as St. Thomas Hospital, Saint Thomas Network, and Saint Thomas Health (collectively referred to as the "Saint Thomas Entities") file this Memorandum in Support of Motion to Stay Objections and Responses to Discovery Pending Submission of a Discovery Plan and Amended Protective Order and Motion for Second Amended Protective Order, and in support, show as follows:

**INTRODUCTION**

The Court's current Case Management Order provides that fact discovery of the Unaffiliated Defendants,[1] such as the Saint Thomas Entities, "may begin forthwith."[2] The day after the hearing on the Saint Thomas Entities' motion to reconsider the Case Management Order, the Plaintiffs' Steering Committee ("PSC") served the Saint Thomas Entities with several discovery requests, including interrogatories, requests for admission, and requests for

---

[1] The Unaffiliated Defendants include various hospitals, clinics, and other healthcare providers—most of whom have not yet made appearances in this Court.

[2] *See* MDL Order No. 7, Further Case Management Order (Docket #438) (Sept. 18, 2013) ("MDL Order No. 7").

1

production.[3]  The PSC has confirmed that it intends these discovery requests to serve as master discovery such that the Saint Thomas Entities' responses and document production will apply in the 100+ cases filed against them that are either in the MDL or in transit to this Court from the Middle District of Tennessee.  In addition, the PSC has started requesting dates for the depositions of fact witnesses, although at the same time it is unwilling to provide more than very basic information about its own clients.  In fact, the PSC's own proposal provides that Plaintiffs' Fact Sheets will not be provided until at least spring of 2014, and then only for those six Plaintiffs chosen for the bellwether process.  The PSC's discovery requests are premature and should be stayed.

There has been no finding that Rule 26's requirements for pre-discovery conferences and a discovery plan have been waived by the Court.  Although the Court ordered that discovery may begin, to the undersigned's knowledge, it has said nothing to indicate that a discovery plan was not needed here.  To the contrary, the Court has expressly directed Plaintiffs' Lead Counsel to insure full compliance with Rule 26.[4]  The PSC has certainly not made any showing of exigent circumstances or other exceptional grounds for bypassing Rule 26's presumption that a negotiated plan for discovery should be in place before formal discovery begins.  This omission is all the more concerning, considering that MDL Order No. 7 was entered without input—much less consensus—from the Saint Thomas Entities (or, for that matter, most of the other

---

[3] *See* Declaration of Marcy Hogan Greer ("Greer Declaration"), filed contemporaneously, Exhibits A-A16.

[4] *See* MDL Order No. 2 (Docket # 82) at 6 (defining responsibilities, which include "to coordinate and lead discussions with the Court, plaintiffs' counsel and other stakeholders . . . to ensure that court orders are followed, schedules are met, discovery is conducted and provided ***consistent with the requirements of Fed. R. Civ. P. 26***, unnecessary expenditures of time and funds are avoided, and any negotiations are reasonably efficient and productive" (emphasis added)).

Unaffiliated Defendants). As the Court is aware, the Saint Thomas Entities were not even parties to the MDL until shortly before the Court entered the Order.

At its October 8 status conference, the Court took the Saint Thomas Entities' Motion to Reconsider[5] under advisement in order to allow the parties to meet and confer about a joint case management order. The Saint Thomas Entities reasonably believed that the Court's direction included negotiation of a discovery protocol and submitted detailed proposals for a framework for that process to the PSC over a month ago, as more fully explained in the *Saint Thomas Entities' Response to Court's Directive in Further Support of Their Motion to Reconsider MDL Order No. 7* ("Response"), filed contemporaneously. *See, e.g.*, Greer Declaration at ¶¶ 6, 8, 12, 14. The parties have had several conferences to address all of the case management issues raised by MDL Order No. 7, but have not been able to reach any agreement regarding discovery because the PSC takes the position that the Court has obviated the need for a Rule 26(f)/Local Rule 16.1 discovery plan, and that any and all discovery the PSC wishes to seek should commence immediately and without structure or limitation. It is readily apparent that the lack of a discovery plan will create myriad problems and inefficiencies—not to mention potential injustices—requiring the Saint Thomas Entities to file this motion.

Rule 26 requires parties to confer and attempt to agree on a proposed discovery plan before a party may seek discovery from "*any* source." FED. R. CIV. P. 26 (emphasis added). Notwithstanding the clear direction of the rule, these defendants had *no* opportunity to confer with the PSC about a proposed discovery plan before the discovery was served. Instead, the PSC

---

[5] *See Saint Thomas Entities' Motion to Reconsider MDL Order No. 7* (Docket #457) ("Motion to Reconsider").

simply sent out these discovery requests the day after the Court heard argument on Saint Thomas Entities' Motion for Reconsideration and directed the parties to attempt to resolve the issues.[6]

Given the complexity of this growing MDL, it is particularly important that the Court enforce Rule 26 and supervise and manage master discovery. A discovery plan could help avoid wasteful discovery disputes and duplicative document productions by allowing the parties to agree on the scope and timing of discovery. For example, the parties have yet to agree on a plan for handling electronically stored information ("ESI"). Despite multiple discussions about the need for an ESI protocol, the PSC's first proposal was emailed to counsel only minutes before the final meet and confer telephone conference held last Friday afternoon (November 22, 2013). At the same time, the PSC has only agreed to extend the Saint Thomas Entities' discovery response date until December 11, 2013, and has made clear that it expects a rolling electronic production to begin at that time. Until an ESI protocol is either agreed by the parties or adopted by the Court, it would be wasteful and unproductive for the Saint Thomas Entities to begin processing their voluminous electronic documents for production.

The lack of any coordinated plan for depositions is likewise becoming problematic. A member of the PSC has contacted the attorneys for third-party doctors about deposition dates, but there is no plan in place for how those depositions will occur. In fact, the Saint Thomas Entities have asked for time-frames for negotiating a deposition plan and protocol, but again, the PSC is pushing forward without agreement—treating the absence of any discovery plan as permission to unilaterally define the discovery process. In response to legitimate questions from the doctors' counsel about the scope and implications of these depositions, the PSC responded: "The deposition has been subpoenaed in the *Wray* case. We anticipate that the deposition will be

---

[6] *See* Docket #519.

cross-noticed in the MDL.  There *will likely be one questioner per party*.  *If it is cross-noticed in the MDL*, as expected, *we will endeavor to have one lawyer question* on behalf of both the Wrays and the MDL."[7]  These are precisely the kinds of issues that should be agreed to by the parties after full discussion, not simply imposed by one side.  Not having a predetermined, global plan for discovery in this complex and growing MDL will inevitably result in the duplicative discovery that the PSC has been tasked with avoiding.

Accordingly, the Saint Thomas Entities respectfully request that the Court stay the PSC's discovery requests to the Saint Thomas Entities and allow them to pursue a Rule 26(f)/Local Rule 16.1 discovery plan with the PSC, and, if no plan can be agreed, to petition the Court for guidelines on master discovery along the lines of the Saint Thomas Entities' proposed CMOs. These Defendants also request that they not be required to produce any documents until the Court resolves their request for an amended protective order.

## ARGUMENT AND AUTHORITIES

### I.   The Discovery Served On The Saint Thomas Entities Is Premature

The PSC served discovery on the Saint Thomas Entities before the parties had conferred under Rule 26(f) to "attempt[] in good faith to agree on [a] proposed discovery plan."  *See* FED. R. CIV. P. 26(f)(2).  Thus, the PSC's discovery is premature because Rule 26(d) prevents a party from "seek[ing] discovery from any source before the parties have conferred as required by Rule 26(f)," unless the discovery is authorized by the Rules, stipulation, or court order.  FED. R. CIV. P. 26(d); *see Al Odah v. United States*, 329 F. Supp. 2d 106, 108-09 (D.D.C. 2004) (finding plaintiffs' discovery requests premature because the parties had not yet held a Rule 26(f) discovery conference); *see also Media Prods., Inc. v. Does 1-49*, No. 12–30084–MAP, 2013 WL

---

[7] *See* Greer Declaration, Exhibit F (emphasis added).

1092128, at *5 (D. Mass. Feb. 15, 2013) ("[Rule 26(d)] provides that: '[e]xcept . . . when authorized under these rules or by order or agreement of the parties, a party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)." (citation omitted)).  Similarly, Local Rules 16.1 and 16.3 confirm the need for such a conference and plan, and MDLs are not exempted from this requirement under Local Rule 16.2.

The PSC contends that the Court's MDL Order No. 7 permits it to serve discovery before a Rule 26(f) conference, relying on the language ***they proposed*** in that CMO providing that discovery of Unaffiliated Defendants "may begin forthwith."  *See* MDL Order No. 7.[8]  The Saint Thomas Entities do not agree that the CMO was intended to permit the PSC to launch master discovery without following the mandatory procedures outlined in Rule 26.  The Court has not made any ruling or finding that a discovery plan was not required; in fact, as noted above it directed the PSC to insure compliance with Rule 26.  MDL Order No. 2 at ¶ 6.

The PSC certainly never attempted to show good cause for obtaining expedited discovery.  *See Media Products, Inc.*, 2013 WL 1092128, at *5 ("In order for a party to obtain expedited discovery before the Rule 26(f) conference, it must show good cause.") (citing FED. R. CIV. P. 26(b)(1)); *id.* (allowing expedited discovery before Rule 26(f) conference for the purpose of determining the identity of a John Doe defendant).  Federal courts have consistently held that a "party seeking expedited discovery in advance of [the] Rule 26(f) conference has the burden of showing good cause for the requested departure from usual discovery procedures."  *Qwest Commc'ns Int'l, Inc. v. WorldQuest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo. 2003); *see also Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1066 (C.D. Cal. 2009) (collecting cases).

---

[8] A similar provision was included in the PSC's proposal that was entered as MDL Order No. 6 (Docket #209) at 13-14, but that order was entered months before the Saint Thomas Entities became parties to the MDL and again, without any input by these defendants or, to their knowledge, any other Unaffiliated Defendant.

Nor is there any legitimate alternative basis for bypassing these important requirements of the Federal Rules of Civil Procedure to insure an orderly and thoughtful discovery process. In fact, the other Tennessee Defendants have proposed a discovery plan in compliance with Rule 26 and Local Rule 16.1 to address these matters that is being filed contemporaneously. The Court should stay the discovery served by the PSC on the Saint Thomas Entities pending the submission of an agreed Rule 26(f) discovery plan or court order imposing one if the parties cannot agree. *See Arias v. Dyncorp*, 517 F. Supp. 2d 221, 230 (D.D.C. 2007) (finding that motion to compel discovery before the Rule 26(f) conference was premature).

To be clear, the St. Thomas Entities are not seeking to delay these cases; indeed, they are seeking to streamline the litigation. After their Motion to Reconsider was heard by the Court, they promptly submitted proposed CMOs to the PSC regarding pleadings, bellwether selection, and discovery protocols. *See* Greer Declaration at ¶ 8. The entry of those proposed CMOs, especially the proposed CMO regarding discovery protocols, will move the cases forward, leaving the parties to address only discrete discovery issues rather than having to tackle a broad discovery plan all at once. The PSC's refusal to meaningfully engage in discussions about these proposed CMOs (again, especially the proposed CMO concerning discovery protocols) has limited the parties' abilities to move forward with the cases in an organized, efficient manner. Whether in the form of a Rule 26(f) proposal, or a CMO managing discovery, a protocol is necessary in a case of this magnitude and complexity.

## II.     Enforcing Rule 26 Is Particularly Important In Complex Multi-District Litigation

District courts have extensive authority to manage complex Multi-District Litigation. *See* MANUAL FOR COMPLEX LITIGATION, FOURTH, § 10.1 ("Although not without limits, the court's express and inherent powers enable the judge to exercise extensive supervision and control of litigation."). "In planning and implementing case management, the court should keep in mind

the goal of bringing about a just resolution as speedily, inexpensively, and fairly as possible." *Id.* Rule 26(f) conferences and comprehensive discovery plans are vital tools for accomplishing efficient case management. *See id.* § 11.42 ("A discovery plan should facilitate the orderly and cost-effective acquisition of relevant information and materials and the prompt resolution of discovery disputes. The plan should reflect the circumstances of the litigation, and its development and implementation must be a collaborative effort with counsel.").

Thus, not only do the Rules require that the parties participate in a Rule 26(f) conference before discovery can begin—*see id.* § 11.421 ("Rule 26(f) requires such conferring and places joint responsibility on the attorneys of record and all unrepresented parties to arrange, attend (or be represented at), and participate in good faith in the conference. Rule 26(d) bars discovery, absent stipulation or court order, before that conference.")—but a discovery plan setting out the rules of engagement would also help the parties structure their relationships going forward and avoid duplicative discovery and wasteful discovery disputes. As noted above, the parties need ground rules before engaging in written discovery, document production, and depositions. *See* FED. R. CIV. P. 26(f)(3)(B) (plan includes "the subjects on which discovery may be needed, when discovery should be completed, and whether discovery should be conducted in phases or limited to or focused on particular issues"); *see also* MANUAL FOR COMPLEX LITIGATION FOURTH, § 20.132; *In re Foundry Resins Antitrust Litig.*, 342 F. Supp. 2d 1346, 1347 (J.P.M.L. 2004) (Prevention of duplicative discovery is one of the purposes of permitting transfer under 28 U.S.C. § 1407.). Accordingly, the Court should also stay discovery against the Saint Thomas Entities in order to fulfill its case management obligations.

**III.     The Protective Order Should Be Amended**

The *Amended Stipulated Protective Order of Confidentiality* (Docket #397) (Aug. 16, 2013) ("Protective Order") was entered by the Court as "stipulated" by the parties, but here

again, the Unaffiliated Defendants had no input. The Saint Thomas Entities proposed specific changes to the Protective Order to the PSC (redlined against the current Protective Order), *see* Greer Declaration, Exhibit D1, but the PSC denied every request, stating its position that it had received similar requests from other Unaffiliated Defendants and was categorically not entertaining any requests for changes. Accordingly, the Saint Thomas Entities respectfully request that the Court enter a Second Amended Protective Order in the form of the attached to the *Saint Thomas Entities' Motion for Entry of a Second Amended Protective Order* ("Motion for Amended Protective Order"), filed contemporaneously, as Exhibit 1.

The proposed changes are specific and necessary. Some are for clarification and should be self-explanatory. As to the substantive changes, the Saint Thomas Entities first request that the parties not be required to designate particular portions of depositions by page and line numbers within 30 days of receiving the transcripts in order to maintain confidentiality. *See* Protective Order at 4(F). That is make-work that is extremely inefficient, especially when considering the number of depositions that can be expected. The PSC offers no legitimate justification for doing so, and there is none. To the extent that any confidentiality designations become necessary to resolve prior to trials (which will likely only occur in a precious few cases), the parties have a procedure for addressing them by first attempting agreement and then taking to the Court if necessary. It makes much more sense for these issues to be addressed if and when the confidentiality designations become relevant in the context of more developed proceedings.

Second, in paragraph 7(D), the Protective Order should be qualified to explain that paralegals and staff are limited to those working on these matters—not just generally working for a law firm.

9

Paragraph 7(J) is far too broad, permitting any witness access to Confidential Discovery Material: "Any person whose testimony has been noticed or subpoenaed, or who has been designated as a witness at a deposition or at trial in this Litigation may receive Confidential Discovery Material." Protective Order ¶ 7(J). The proposed changes are appropriate and necessary to ensure that Confidential Discovery Material is not widely disseminated to non-parties who likely have no legitimate reason to see it.

New proposed paragraph 13 should be added to give notice of Tennessee law that affects this litigation:

> As authorized by T.C.A. 29-26-121, Defendants and their attorneys may obtain protected information during interviews, outside the presence of Plaintiffs or Plaintiffs' counsel, with Plaintiffs' treating healthcare providers, as defined by T.C.A. 29-26-101 and as identified by Plaintiffs in the Plaintiff Fact Sheet or as otherwise agreed between the parties or ordered by this Court, upon proper motion. Use or dissemination of any information obtained during these ex-parte communications shall be used solely for the purposes of prosecuting or defending civil claims in this Litigation or for purposes of Administering the NECP Bankruptcy Proceedings, including but not limited to the development and approval of a Chapter 11 plan, and for no other purpose without prior written approval from the Court, the Bankruptcy Court, or the prior written consent of the Plaintiffs or Plaintiffs' counsel.

Motion for Amended Protective Order, Exhibit 1, ¶ 13.[9]

There is no provision in the Protective Order for the treatment of redactions, and so the Saint Thomas Entities have proposed a reasonable provision in proposed paragraph 15 that has been adopted by other federal courts. Defendants request this Court to likewise adopt the proposed redaction provision.

---

[9] The PSC rejected the Saint Thomas Entities' request for this provision based on its view that such a provision did not belong in a protective order. This provision of the Tennessee Healthcare Liability Act provides some relief to case law that states a physician breaches the implied covenant of confidentiality by divulging medical information without the patient's consent through informal conversations with others. Such communications—to the extent they may occur—will take place in Tennessee and are therefore covered by the Tennessee statute. Consequently, it is appropriate to include this language in the Court's Protective Order.

Finally, paragraph 20 of the current Protective Order does not go far enough to protect the parties in the event of an inadvertent disclosure. If a document designated as confidential were inadvertently produced and further produced by the receiving party, the receiving party should have an affirmative duty to disclose that unauthorized production and take steps to remedy the erroneous disclosure. The proposed amendments address and resolve this issue by creating such an obligation in paragraph 22.

## CONCLUSION AND PRAYER

For these reasons, Saint Thomas West Hospital, formerly known as St. Thomas Hospital, Saint Thomas Network, and Saint Thomas Health respectfully request that the Court:

(i) grant this motion for a stay of the discovery served on them by the PSC, pending (a) submission of an agreed Rule 26(f) discovery plan to the Court or the entry of a CMO managing discovery and (b) entry of a Second Amended Protective Order;

(ii) enter a Second Amended Protective Order along the lines of the Saint Thomas Entities' attached proposal; and

(iii) grant such other and further relief to which the Saint Thomas Entities are entitled.

> SAINT THOMAS WEST HOSPITAL, FORMERLY KNOWN AS ST. THOMAS HOSPITAL, SAINT THOMAS NETWORK, AND SAINT THOMAS HEALTH
>
> By its attorneys,
> */s/ Sarah P. Kelly*
> Sarah P. Kelly (BBO #664267)
> skelly@nutter.com
> Dahlia Rin (BBO #674137)
> drin@nutter.com
> NUTTER McCLENNEN & FISH LLP
> Seaport West
> 155 Seaport Boulevard
> Boston, Massachusetts 02210
> (617) 439-2000

Dated: November 25, 2013

OF COUNSEL:

Yvonne K. Puig*
Texas State Bar No. 16385400
Marcy Hogan Greer*
Texas State Bar No. 08417650
Eric J. Hoffman*
Texas State Bar No. 24074427

FULBRIGHT & JAWORSKI L.L.P.
98 San Jacinto Blvd. Suite 1100
Austin, Texas 78701
(512) 536-2450
(512) 536-4598 (FAX)

*Appearing *Pro Hac Vice*

## CERTIFICATE OF SERVICE

This certifies that a true and accurate copy of the foregoing was served on all parties of record by virtue of the Court's electronic filing system this 25th day of November, 2013.

        */s/ Sarah Kelly*
        Sarah P. Kelly