UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEW ENGLAND COMPOUNDING ) <br> PHARMACY, INC. PRODUCTS LIABILITY ) <br> LITIGATION ) <br> _____ ) <br>  ) <br> THIS DOCUMENT RELATES TO: ) <br>  ) <br> All Cases Naming Tennessee Defendants ) <br> _____ ) | MDL No. 2419 <br> Dkt. No 1:13-md-2419 (FDS) |

**MOTION OF TENNESSEE CLINIC AND PHYSICIAN DEFENDANTS REQUESTING THE COURT:
(1) ENTER PROPOSED FURTHER CASE MANAGEMENT ORDER MODIFYING MDL ORDER NO. 7 ATTACHED TO THIS MOTION,
(2) ENTER PROPOSED CASE MANAGEMENT ORDER REGARDING DISCOVERY PROTOCLS ATTACHED TO THIS MOTION, and
(3) ENTER SEPARATE CASE MANAGEMENT ORDER RELATED TO BELLWETHER TRIAL SELECTION FOR SPECIALTY SURGERY CENTER, CROSSVILLE CASES ATTACHED TO THIS MOTION
AND
JOINDER OF TENNESSEE CLINIC AND PHYSICIAN DEFENDANTS IN THE SAINT THOMAS ENTITIES' RESPONSE TO COURT'S DIRECTIVE IN FURTHER SUPPORT OF MOTION TO RECONSIDER MDL ORDER NO. 7**

These Defendant Tennessee clinics and physicians – Saint Thomas Outpatient Neurosurgical Center, LLC ("STOPNC"), Howell Allen Clinic, a Professional Corporation ("Howell Allen"), John W. Culclasure, M.D. ("Dr. Culclasure"), Debra V. Schamberg, R.N. ("Nurse Schamberg"), Specialty Surgery Center, Crossville, PLLC ("SSC"), and Kenneth R. Lister, M.D. ("Dr. Lister") – have been named in various combinations as defendants in 100+ MDL suits.[1]

---

[1] STOPNC is Tennessee clinic that purchased MPA from NECC. It has 100+ suits pending against it. SSC is a separate and distinct Tennessee clinic that purchased MPA from NECC. It has 20+ suits pending against it. STOPNC and SSC are represented by the same counsel, but they are unrelated. Howell Allen, Dr. Culclasure, and Nurse Schamberg, along with the Saint Thomas Entities, are named in suits against STOPNC in various combinations. Dr. Lister is named in some of the suits pending against SSC.

1

In many of the suits against STOPNC, the plaintiff(s) has also sued one or more of the Saint Thomas Entities[2], which are separate entities.

The Saint Thomas Entities have contemporaneously requested entry of three case management orders:

1. "Further Case Management Order Modifying MDL Order No. 7"[3]

2. "Case Management Order Regarding Discovery Protocols"[4]

3. "Case Management Order Related to Bellwether Trial Selection for Certain Tennessee Cases."[5]

In the same filing, the Saint Thomas Entities also requested that the Court approve their proposed Plaintiffs' Fact Sheet and the accompanying authorizations for the release of Plaintiffs' individual records.

These Defendants, for the most part, align with the proposals of the Saint Thomas Entities. These Defendants' position on the three Saint Thomas-proposed orders is described below, in addition to a proposal for one additional case management order. These Defendants also join in the Saint Thomas Entities' request that the Court approve the Saint Thomas Entities' proposed Plaintiffs' Fact Sheet and the accompanying authorizations for the release of Plaintiffs' individual records.

In this motion, these Defendants request as follows:

1. That the Court enter the Saint Thomas Entities' "Further Case Management Order Modifying MDL Order No. 7," but with these Defendants' requested changes, as reflected in Exhibit A to this motion;

---

[2] "The Saint Thomas Entities" include "St. Thomas West Hospital," "Saint Thomas Health," and "Saint Thomas Network." The Saint Thomas Entities and Saint Thomas Outpatient Neurosurgical Center, LLC ("STOPNC") are separate entities. The instant motion is filed on behalf of STOPNC (and other Tennessee clinic and physician defendants) but largely aligns with the similar motion filed by the Saint Thomas Entities.

[3] Which governs the Tennessee defendants' responses to the scores of complaints against them.

[4] Which governs various other discovery deadlines.

[5] Which governs the selection of bellwether suits against Saint Thomas Outpatient Neurosurgical Center, LLC.

2. That the Court enter the Saint Thomas Entities' "Case Management Order Regarding Discovery Protocols" but with these Defendants' requested changes, as reflected in Exhibit B to this motion;

3. That the Court enter the Saint Thomas Entities' "Case Management Order Related to Bellwether Trial Selection for Certain Tennessee Cases" as proposed by Saint Thomas (no changes proposed by these Defendants);

4. That the Court enter these Defendants' proposed "Case Management Order Related to Bellwether Trial Selection for Specialty Surgery Center, Crossville Cases" (a requested additional order not requested by the Saint Thomas Entities), which is attached as Exhibit C to this motion; and

5. That the Court approve the Saint Thomas Entities' proposed Plaintiffs' Fact Sheet and the accompanying authorizations for the release of Plaintiffs' medical records (no changes proposed by these Defendants).

## **Background**

On September 18, 2013, the Court entered MDL Order No. 7 [Dkt. 438] which required these Defendants to file responsive pleadings in each individual case by October 8, 2013, or the date provided by the Federal Rules of Civil Procedure, whichever was later.[6]

On September 26, 2013, the Saint Thomas Entities filed their Motion to Reconsider MDL Order No. 7 [Dkt. 457]. These Defendants joined in that motion [Dkts. 459, 506]. The basis of the motion to reconsider and joinder was, in essence, that the Tennessee hospital, pain clinic, and physician defendants believed a more organized, efficient, and equitable protocol should be set out governing the Tennessee defendants' responses to the scores of complaints against them.

In response to the motion to reconsider, the Court ordered the parties to meet and confer and submit joint or competing proposals by October 22, 2013. This deadline

---

[6] As noted above, these Defendants are named in scores of cases presently in the MDL or en route to the MDL.

3

was later extended to November 25, 2013, as the parties were still negotiating [Dkt. 567].

Counsel for the Saint Thomas Entities and these Tennessee Defendants have met on several occasions with the Tennessee representatives of the PSC in an effort to fashion a fair management order governing the progression of the early steps of this MDL.[7] Today, the Saint Thomas Entities filed their Response to Court's Directive In Further Support of Motion to Reconsider MDL Order No. 7 [Dkt. 593] and its proposed orders as described above. With this motion, these Tennessee clinic and physician Defendants align mostly with the proposals of the Saint Thomas Entities, with the exceptions and additional requests described herein.

## Law and Argument

**1. Request that the Court enter the Saint Thomas Entities' "Further Case Management Order Modifying MDL Order No. 7," but with these Defendants' requested changes, as reflected in Exhibit A to this motion**

The proposed order attached to this motion as Exhibit A is almost identical to the proposed "Further Case Management Order Modifying MDL Order No. 7" filed by the Saint Thomas Entities. Changes to the Saint Thomas Entities' proposed "Further Case Management Order Modifying MDL Order No. 7" are indicated with a strikethrough for text that has been removed (Example) and underlined text (Example) that has been added. For the Court's convenience, Word versions of these Defendants' proposed Orders have been provided to the Court's law clerk with the changes in red font to make them easier to appreciate.

---

[7] *See* Affidavit of Chris J. Tardio, Esq., attached as Exhibit 1 to these Defendants' Joinder in the Saint Thomas Entities' Motion to Stay Discovery; *see also* Declaration of Marcy Hogan Greer [Dkt. 593].

4

These Defendants request two substantive changes to the Saint Thomas Entities' proposed "Further Case Management Order Modifying MDL Order No. 7." First, Specialty Surgery Center, Crossville ("SSC") and Kenneth Lister, M.D. ("Dr. Lister") request that the scope of the Order be expanded to include cases against them. Doing so will obviate the need to enter a separate case management order for SSC cases, and it will bring all cases against Tennessee health care providers under the same order. Additionally, SSC and Dr. Lister respectfully submit that the "Further Case Management Order Modifying MDL Order No. 7" proposed by the Saint Thomas Entities should function equally well for the cases against SSC and Dr. Lister.

Second, these Defendants respectfully request that Court also include in the "Further Case Management Order Modifying MDL Order No. 7" a schedule for briefing motions to dismiss *claims* in the Master Complaint, not just motions to dismiss *parties*. In their proposed "Further Case Management Order Modifying MDL Order No. 7," these Defendants have incorporated a briefing schedule for motions to dismiss claims from the Master Complaint. [8] [9]

Dismissal of individual claims against these Defendants is important to evaluation of the overall prospect of success of the complaints and the value of these cases.

---

[8] These Defendants have pending motions for summary judgment in *Carman v. Ameridose, et al.*, No. 1:13-cv-12238 and *O'Brien v. Ameridose, et al.*, No. 1:13-cv-12759. On October 6, 2013, counsel for these Defendants spoke with the PSC about these pending motions. No mention was made that the PSC proposed to simply do away with them. Then, on October 7, 2013, the PSC filed a "Notice of Filing Dispositive Motion Proposal" [Dkt. 499] that proposed to simply do away with these pending dispositive motions and require these Defendants to refile them at a later date. These Defendants were caught off-guard by the PSC's proposal and requested that the Court allow them time to respond. The Court granted the request at the October 8, 2013, status conference. These Defendants include in the instant proposed management orders, deadlines to manage dispositive motions, which serve as these Defendants' response to the PSC's "Dispositive Motion Proposal" [Dkt. 499]. These Defendants acknowledge and understand that filing dispositive motions in each individual case is unnecessarily burdensome on all parties and support a plan to file motions to challenge "common" claims in complaints.
[9] *See* Exhibit A.

For instance, virtually all plaintiffs in the MDL asserting claims against these Tennessee clinic and physician Defendants allege a theory of product liability. This is obviously a primary theory upon which the Plaintiffs attempt to travel against the Tennessee Defendants.

While this issue of whether product liability is a viable claim is an issue of first impression in Tennessee, the vast majority of jurisdictions that have decided the issue have held that health care providers are not "sellers" and, therefore, are not subject to products liability.[10] Thus, these Defendant health care providers are confident the law does not allow the Tennessee Plaintiffs to sustain a legal claim against them under a theory of product liability. Based on the overwhelming law contrary to the Plaintiffs' position on this issue, the Defendants wish to test the legal viability of this claim as soon as practicable.

While the dismissal of the product liability claim against these Defendants would not dismiss the entire complaint in some instances, the Defendants respectfully submit that it is an important issue that should be briefed and decided early in the case.[11] Even

---

[10] *E.g., Perlmutter v. Beth David Hospital*, 308 N.Y. 100, 103 (N.Y. 1954).

[11] Additionally of note, this issue has been decided as a "Rule 12" motion in many jurisdictions. Thus, a motion to dismiss, rather than a motion for summary judgment, is an appropriate means for resolving this legal issue, as evidenced by the twenty-one (21) cases from other jurisdictions that decided this issue on motions to dismiss. *See, e.g., Brandt v. Boston Scientific Corp.*, 792 N.E.2d 296, 298 (Ill. 2003); *Cafazzo v. Cent. Medical Health Services*, 542 Pa. 526, 529 (1995); *Goldfarb v. Teitelbaum*, 149 A.D.2d 566, 567 (N.Y. App. Div. 1989); *Greenberg v. Michael Reese Hospital*, 83 Ill.2d 282, 284 (Ill. 1980); *Hollander v. Sandoz Pharmaceuticals Corp.*, 289 F.3d 1193, 1196 (10th Cir. 2002) (discussing state court motion to dismiss); *Hoven v. Kelble*, 79 Wis.2d 444, 447-448 (Wis. 1977) (demurrer); *Iacangelo v. Georgetown University*, 2006 WL 4391359, at *4 (Mag. D.D.C. Oct. 11, 2006) adopted in pertinent part, 2007 WL 915224 (D.D.C. March 26, 2007); *In re Breast Implant Product Liability*, 331 S.C. 540, 543 (1998); *Leith v. Henry Ford Hospital*, 2000 WL 33420641, at *2 (Mich. App. May 16, 2000) (utilizing Michigan's functional equivalent to Fed. R. Civ. P. 12, MCR 2.116(C)(8)); *McCombs v. Southern Regional Medical Center*, Inc., 504 S.E.2d 747, 749 (Ga. App. 1998); *NME Hospitals, Inc. v. Azzariti*, 573 So.2d 173, 173 (Fla. App. 1991); *Pantano v. Telectronics Pacing Systems, Inc.*, 1996 WL 107099, at *1 (W.D.N.Y. Feb. 15, 1996); *Perlmutter v. Beth David Hospital*, 308 N.Y. 100, 103 (N.Y. 1954); *Pierson v. Sharp Memorial Hospital, Inc.*, 216 Cal.App.3d 340, 342 (Cal. App. 1989); *Roberts v. Suburban Hospital*, 532 A.2d 1081 (Md. App. 1987); *Royer v. Catholic Medical Center*, 144 N.H. 330, 331 (N.H. 1999); *San Diego Hospital Ass'n. v. Superior Court*, 30 Cal.App.4th 8, 14-15 (Cal. App. 1994) (demurrer); *Shepard v. Alexian Brothers*

partial dismissal spares Defendants the additional cost of unnecessarily defending those claims that are dismissed. And, dismissal of individual claims should, to some extent, limit the scope of discovery.

Thus, these Defendants believe that the "Further Case Management Order Modifying MDL Order No. 7" should allow for moving for and briefing on dismissal of individual claims, including the claim for strict product liability.

Respectfully, if the Plaintiffs believe a FRCP 12 motion to dismiss filed by these Defendants should be considered as a FRCP 56 motion for summary judgment, the Plaintiffs are free to request such a determination from the Court after the motion is filed. Similarly, if the Plaintiffs believe a dispositive motion filed by these Defendants warrants additional discovery before the Plaintiffs must respond, the Plaintiffs are free to file a motion under FRCP 56(d) supported by the requisite affidavit or declaration.

However, the Defendants respectfully request the opportunity to test individual claims via a motion to dismiss a specific claim in the Master Complaint, and respectfully request that deadlines allowing accomplishment of that be built into the "Further Case Management Order Modifying MDL Order No. 7."[12]

Consistent with these Defendants' request that they be allowed to test the legal sufficiency of certain claims of the Master Complaint, these Defendants have proposed

---

*Hospital*, 33 Cal.App.3d 606, 608 (Cal. App. 1973) (demurrer); *St. Mary Medical Center, Inc. v. Casko*, 639 N.E.2d 312, 313 (Ind. App. 1994); *Tucker v. Kaleida Health*, 2011 WL 1260117, at *1 (W.D.N.Y. March 31, 2011) (filed as a motion to dismiss, but dismissed for fraudulent joinder); *Von Downum v. Synthes*, 2012 WL 5463900, at *1 (N.D. Okla. Nov. 8, 2012).

[12] These Defendants have attempted at multiple points to test the legal viability of the product liability claim. STOPNC and Howell Allen have filed motions to dismiss in five (5) cases filed in state court. The complaints were voluntarily dismissed after the motions were filed. The Defendants have filed two (2) motions for summary judgment (*Carman* and *O'Brien*) to challenge the legal viability of the product liability claim. The Plaintiffs have avoided ruling on these motions via removal to the MDL or voluntary dismissal. As such, STOPNC and Howell Allen have already waited more than six (6) months for a decision on this issue. These Defendants respectfully submit that they have the right to have the Court rule on their dispositive motions, even if they request dismissal of a claim or claims and not the entire complaint.

partial dismissal spares Defendants the additional cost of unnecessarily defending those claims that are dismissed. And, dismissal of individual claims should, to some extent, limit the scope of discovery.

Thus, these Defendants believe that the "Further Case Management Order Modifying MDL Order No. 7" should allow for moving for and briefing on dismissal of individual claims, including the claim for strict product liability.

Respectfully, if the Plaintiffs believe a FRCP 12 motion to dismiss filed by these Defendants should be considered as a FRCP 56 motion for summary judgment, the Plaintiffs are free to request such a determination from the Court after the motion is filed. Similarly, if the Plaintiffs believe a dispositive motion filed by these Defendants warrants additional discovery before the Plaintiffs must respond, the Plaintiffs are free to file a motion under FRCP 56(d) supported by the requisite affidavit or declaration.

However, the Defendants respectfully request the opportunity to test individual claims via a motion to dismiss a specific claim in the Master Complaint, and respectfully request that deadlines allowing accomplishment of that be built into the "Further Case Management Order Modifying MDL Order No. 7."[12]

Consistent with these Defendants' request that they be allowed to test the legal sufficiency of certain claims of the Master Complaint, these Defendants have proposed

---

*Hospital*, 33 Cal.App.3d 606, 608 (Cal. App. 1973) (demurrer); *St. Mary Medical Center, Inc. v. Casko*, 639 N.E.2d 312, 313 (Ind. App. 1994); *Tucker v. Kaleida Health*, 2011 WL 1260117, at *1 (W.D.N.Y. March 31, 2011) (filed as a motion to dismiss, but dismissed for fraudulent joinder); *Von Downum v. Synthes*, 2012 WL 5463900, at *1 (N.D. Okla. Nov. 8, 2012).

[12] These Defendants have attempted at multiple points to test the legal viability of the product liability claim. STOPNC and Howell Allen have filed motions to dismiss in five (5) cases filed in state court. The complaints were voluntarily dismissed after the motions were filed. The Defendants have filed two (2) motions for summary judgment (*Carman* and *O'Brien*) to challenge the legal viability of the product liability claim. The Plaintiffs have avoided ruling on these motions via removal to the MDL or voluntary dismissal. As such, STOPNC and Howell Allen have already waited more than six (6) months for a decision on this issue. These Defendants respectfully submit that they have the right to have the Court rule on their dispositive motions, even if they request dismissal of a claim or claims and not the entire complaint.

a briefing protocol for dispositive motions seeking dismissal of individual claims in the Master Complaint, which has been included in the proposed "Further Case Management Order Modifying MDL Order No. 7" attached as Exhibit A.

These Defendants propose that Defendants file Master Motions to Dismiss without briefing by January 17, 2014. Memoranda in support of Motions to Dismiss individual claims in the Master Complaint will be due by February 17, 2014.[13] Parties will have 30 days to file responses to the memoranda in support, and the movants will have 25 days to reply to the responses.

This second change to the Saint Thomas Entities' proposed "Further Case Management Order Modifying MDL Order No. 7" is indicated using underlining and strikethroughs on Exhibit A, as described above.

For the reasons explained above, these Defendants request that the Court enter its version of the "Further Case Management Order Modifying MDL Order No. 7" attached as Exhibit A.

**2. Request that the Court enter the Saint Thomas Entities' "Case Management Order Regarding Discovery Protocols" as proposed by the Saint Thomas Entities, but with these Defendants' requested changes, as reflected in Exhibit B to this motion**

Specialty Surgery Center, Crossville ("SSC") and Kenneth Lister, M.D. ("Dr. Lister") request that the scope of the "Case Management Order Regarding Discovery Protocols" be expanded to include cases against them. Doing so will obviate the need to enter a separate case management order regarding discovery for those cases, and it will bring all cases against Tennessee health care providers under the same order.

---

[13] These Defendants have proposed a longer deadline for filing memoranda in support of motions to dismiss individual claims than memoranda in support of motions to dismiss parties because it will be necessary to file multiple memoranda in support of motions to dismiss claims (one for each claim to be dismissed) while only one memorandum in support of motions to dismiss parties will need to be filed.

8

Additionally, SSC and Dr. Lister respectfully submit that the "Case Management Order Regarding Discovery Protocols" proposed by the Saint Thomas Entities should function equally well for the cases against SSC and Dr. Lister. SSC and Dr. Lister respectfully request that the Court enter its version of the "Case Management Order Regarding Discovery Protocols" attached as Exhibit B.

   **3. Request that the Court enter the Saint Thomas Entities' "Case Management Order Related to Bellwether Trial Selection for Certain Tennessee Cases" as proposed by the Saint Thomas Entities (no changes proposed by these Defendants)**

These Defendants request that the Court enter the Saint Thomas Entities' "Case Management Order Related to Bellwether Trial Selection for Certain Tennessee Cases" as proposed by the Saint Thomas Entities.

   **4. Request that the Court enter these Defendants' proposed "Case Management Order Related to Bellwether Trial Selection for Specialty Surgery Center, Crossville Cases" (a requested additional order not requested by the Saint Thomas Entities), which is attached as Exhibit C to this motion**

The Saint Thomas Entities' proposal to the Court does not allow for bellwether selection of cases against Specialty Surgery Center, Crossville ("SSC") and Kenneth Lister, M.D. ("Dr. Lister"). SSC and Dr. Lister request such an order.

SSC is a Tennessee clinic that purchased MPA from NECC. It has 20+ suits pending against it. Dr. Lister is named in some of the suits against SSC. SSC and Dr. Lister are unrelated to STOPNC and the Saint Thomas Entities.

If the goal of the bellwether selection process is to identify cases for trial and then try the cases to verdict so as to allow for an evaluation of exposure in the remaining cases against similar defendants, SSC should be represented in the process. The claims against it are different, both legally and factually, from the claims against

9

STOPNC and the Saint Thomas Entities. And, the number of cases against it requires a separate bellwether selection process.

There are substantially fewer cases against SSC than STOPNC and the Saint Thomas Entities (~20 versus ~100). So, the proposed "Case Management Order Related to Bellwether Trial Selection for Specialty Surgery Center, Crossville Cases" halves the number of cases at each step of the bellwether selection process, including: (1) the number of bellwether cases each side initially proposes; (2) the number of strikes for each side; (3) the number of bellwethers submitted to the Court; and (4) the number of bellwethers to be selected by the Court.

SSC and Dr. Lister respectfully submit that the other aspects of the well-reasoned protocol for bellwether selection for the STOPNC and the Saint Thomas Entities' cases should function equally well for the cases against SSC, just on a smaller scale. For the reasons explained above, SSC and Dr. Lister respectfully request that the Court enter the "Case Management Order Related to Bellwether Trial Selection for Specialty Surgery Center, Crossville Cases" attached as Exhibit C.

**5. Request that the Court approve the Saint Thomas Entities' proposed Plaintiffs' Fact Sheet and the accompanying authorizations for the release of Plaintiffs' medical records (no changes proposed by these Defendants)**

These Defendants request that the Court approve the Plaintiffs' Fact Sheet and authorization for the release of individual Plaintiffs' records as proposed by the Saint Thomas Entities.

## **Conclusion**

For the above reasons, these Defendants request that the Court:

1. Enter their Exhibit A, which is a modification of the Saint Thomas Entities' proposed "Further Case Management Order Modifying MDL Order No. 7" expanding the scope of the order to cover cases against SSC and Dr. Lister and allowing for moving and briefing on the legal viability of specific claims in the Master Complaint;

2. Enter their Exhibit B, which is a modification of the Saint Thomas Entities' proposed "Case Management Order Regarding Discovery Protocols" expanding the scope of the order to cover cases against SSC and Dr. Lister;

3. Enter the Saint Thomas Entities' proposed "Case Management Order Related to Bellwether Trial Selection for Certain Tennessee Cases" as proposed by the Saint Thomas Entities;

4. Enter their Exhibit C, which is a separate bellwether selection order for SSC cases; and

5. Approve the Saint Thomas Entities' proposed Plaintiffs' Fact Sheet and the accompanying authorizations for the release of individual records as proposed by the Saint Thomas Entities.

Respectfully submitted,

**GIDEON, COOPER & ESSARY, PLC**


/s/Chris J. Tardio
**C.J. Gideon, Jr.** (admitted *pro hac* vice)
**Chris J. Tardio** (admitted *pro hac* vice)
**Matthew H. Cline**
**John-Mark Zini**
315 Deaderick Street, Suite 1100
Nashville, TN 37238
Ph:  (615) 254-0400
Fax: (515) 254-0459
chris@gideoncooper.com

***Attorneys for STOPNC, Howell Allen, John W. Culclasure, M.D., Debra V. Schamberg, R.N., SSC, and Kenneth R. Lister, M.D.***

11

## CERTIFICATE OF SERVICE

This will certify that a true and accurate copy of the foregoing was served on all parties hereto by virtue of the Court's electronic filing system this 25th day of November, 2013.

/s/Chris J. Tardio
**Chris J. Tardio**