UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN RE NEW ENGLAND COMPOUNDING )
PHARMACY, INC. PRODUCTS LIABILITY )
LITIGATION )
 )  MDL No. 2419
 )  Dkt. No 1:13-md-2419 (FDS)
THIS DOCUMENT RELATES TO: )
 )
All Cases with Tennessee Defendants )
 )

## AFFIDAVIT OF CHRIS J. TARDIO, ESQUIRE

STATE OF TENNESSEE )
 )
COUNTY OF DAVIDSON )

Comes now Chris J. Tardio, Esq., after first being duly sworn, and states as follows:

1. I am over the age of 18, have personal knowledge of the facts contained herein, and am competent to testify to same.

2. I, along with CJ Gideon, Matt Cline, and John-Mark Zini, am counsel of record for Tennessee health care providers Saint Thomas Outpatient Neurosurgical Center, LLC, Howell Allen Clinic, a Professional Corporation, John W. Culclasure, MD, and Debra Schamberg, RN, in 100+ cases filed against them related to NECC's contamination of methylprednisolone acetate. These cases are either pending in this multi-district litigation or are in the process of being transferred.



DEFENDANT'S
EXHIBIT
1

1

3. In many of the suits against Saint Thomas Outpatient Neurosurgical Center, LLC, Howell Allen Clinic, a Professional Corporation, John W. Culclasure, MD, and Debra Schamberg, RN, the Plaintiff has also named as a defendant various "Saint Thomas Entities." The "Saint Thomas Entities" are represented by separate counsel.

4. I, along with CJ Gideon, Matt Cline, and John-Mark Zini, am also counsel of record for Tennessee health care providers Specialty Surgery Center, Crossville, PLLC and Kenneth R. Lister, MD, in 20+ cases filed against them related to NECC's contamination of methylprednisolone acetate. These cases are either pending in this multi-district litigation or are in the process of being transferred.

5. As counsel for the above Tennessee health care providers, we have worked with counsel for the Saint Thomas Entities, including Marcy Greer, to establish a proposed management plan to allow for an efficient and cost-effective response to the scores of complaints and an efficient and cost-effective response to written discovery propounded on these Tennessee health care providers.

6. I have reviewed the Declaration of Marcy Greer, counsel for the Saint Thomas Entities, which details her efforts to confer with the PSC regarding a plan for responding to the complaints and for discovery. Based on my personal knowledge, that declaration accurately sets out the efforts of the Tennessee Defendants to confer with the PSC regarding management of the initial stages of this MDL. We have been directly and substantively involved in much of the "meeting and conferring" detailed in Ms. Greer's Declaration.

7.     In addition, on behalf of my clients, I or other lawyers of record have exchanged letters with the PSC, exchanged emails with the PSC, spoken by phone with the PSC, and met in person with the PSC to discuss numerous case management issues specifically related to my clients.

8.     Specifically, we have proposed protocols for responding to the scores of complaints against my clients, procedures to allow for "common" initial disclosures, limits on the number of discovery requests, and general (and specific) procedures to limit duplicative discovery[1]. The PSC has not responded to some proposals and rejected others outright.[2]

---

[1] At this point, the PSC has served three subpoenas and hundreds of discovery requests on these Tennessee Defendants, after previously serving hundreds of requests in the state court cases prior to the cases landing in the MDL. Obviously, many of these requests are duplicative, which makes substantive responses easier. But, simply reviewing the requests to determine what is new, reviewing the requests to determine what has already been answered, and drafting objections and responses is a lengthy, cumbersome, and burdensome task.

[2] For instance, we have sought for weeks to establish a limit on the number of requests for admissions and number of interrogatories to be served with the "master" discovery but have received no commitment by the PSC to any limits. Additionally, we have asked the PSC to identify which of the hundreds of discovery requests they have sent have not already been answered in the state court litigation. After initially agreeing to do this, the PSC then wrote on November 11 that the "easiest" way to manage the duplicative discovery was for these Defendants to "simply answer all discovery requests posed on October 9, 2013, regardless of whether a given request is the exact same request served in the state court litigation," and granted an extension of nine business days to do so. Requiring responses to dozens of "the exact same" requests is obviously duplicative and inefficient.

9. I agree with Ms. Greer's statement that the PSC's apparent position is that a discovery plan is not needed. Respectfully, as explained in the contemporaneously-filed motions and proposals, I believe a plan is necessary to avoid the inefficiency of duplicative discovery, and to arrange a bilateral exchange of information that is cost-efficient and fair.

10. The intent of these Tennessee Defendants seeking a discovery plan before launching into written discovery is not to delay this litigation or avoid turning over documents or information.[3] The intent is move the discovery phase of the litigation along in the most cost-effective and efficient manner, while ensuring an *exchange* of information, not endless and unorganized one-sided responses to duplicative written requests.

---

[3] As noted herein, these Defendants have already turned over hundreds of pages of documents and answered scores of written questions in the state court litigation for the same lawyers.

4

_____
(Signature of Affiant)

Sworn to and subscribed by me on this 25th day of November, 2013.

_____
(Notary Public)

My Commission Expires: 07/03/17

[Notary Seal: LINDA DEBAUN, STATE OF TENNESSEE NOTARY PUBLIC, DAVIDSON COUNTY, MY COMMISSION EXPIRES July 3, 2017]