UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN RE: NEW ENGLAND COMPOUNDING ) 
PHARMACY, INC., PROCUCTS LIABILITY ) 
LITIGATION ) 
    ) MDL No.: 2419
    ) Master Docket No.: 1:13-md-2419-FDS
    )
THIS DOCUMENT RELATES TO: )
    )
All Actions. )

## DECLARATION OF BENJAMIN A. GASTEL

Benjamin A. Gastel declares, under penalty of perjury on the date identified below, as follows:

1. I am an attorney at Branstetter, Stranch, and Jennings, PLLC, and our firm sits on the Plaintiffs' Steering Committee "(PSC)" in the above-styled lawsuit (the "MDL"). I make this declaration as part of the PSC's Consolidated Response to Docket Numbers 592, 594, 595, and 597 (the "Response"). I have been working with plaintiffs' counsel in Tennessee in developing and filing claims against Tennessee-specific defendants and have personally reviewed many, although not all, of the complaints filed in Tennessee state and federal court, and I have personally reviewed documents produced by Tennessee defendants in state court litigation.

2. Below appears a brief summary of the allegations and other evidence gleaned from the counsel's initial investigation and is meant to address the claims of Saint Thomas West Hospital f/k/a Saint Thomas Hospital, Saint Thomas Network, and Saint Thomas Hospital (the "Saint Thomas Entities") that plaintiffs in this MDL only assert vicarious liability claims against them.

3. According to the FDA, the pain clinic known as Saint Thomas Outpatient Neurosurgical Center ("Saint Thomas Neurosurgical") purchased MPA from New England Compounding Pharmacy d/b/a New England Compounding Clinic ("NECC"), and, according to the Center for Disease Control, it was one of three Tennessee clinics to receive confirmed tainted lots from NECC. Saint Thomas Neurosurgical is located on the St. Thomas Hospital campus in a building that connects to the hospital.

4. Saint Thomas Neurosurgical (the pain clinic) is owned by Saint Thomas Network and Howell Allen Clinic. Saint Thomas Network (part owner of Saint Thomas Neurosurgical) has zero employees and appears to be an empty shell. Saint Thomas Network is owned by Saint Thomas Health, the same entity that owns St. Thomas Hospital. The CEO of St. Thomas Hospital is on the Board of Governors of Saint Thomas Neurosurgical (pain clinic). The Medical Director of St. Thomas Hospital regularly attended Saint Thomas Neurosurgical's (pain clinic) Board of Governors' meetings. Saint Thomas Neurosurgical (pain clinic) conducts its Board of Governors' meetings in the St. Thomas Hospital board room.

5. Based upon those interrelationships and other facts, the Tennessee plaintiffs assert several direct liability and vicarious liability claims against Saint Thomas Network, Saint Thomas Health, and St. Thomas Hospital. Those causes of action include claims for direct negligence, agency, apparent agency, ostensible agency, alter ego liability, piercing the corporate veil, concerted action/conspiracy, *respondeat superior* liability and other claims.

6. In addition to the Tennessee plaintiffs' allegations that Saint Thomas Network and its related entities directly controlled the pain clinic known as Saint Thomas Neurosurgical (and are therefore liable for their own direct negligence), the Tennessee plaintiffs also assert agency claims. Those agency claims are based upon interrelationships among the Saint Thomas

Entities. Saint Thomas Health intentionally fosters a public perception that all Saint Thomas entities act as a single entity through its large scale marketing campaign highlighting the tag line: **"Saint Thomas Health: One Name, One Healing Community."** One element of Saint Thomas' marketing campaign is found plastered on the sides of large public transportation buses that drive throughout the Nashville community. Those buses bear the foregoing message. A true and correct copy of an image of such a bus is provided below:



7.  On November 27, 2013 the PSC served a letter upon counsel for many Unaffiliated Defendants related to the PSC's proposed Case Management Order it filed on November 25, 2013. Subsequently on December 4, 2013, the PSC held a call with counsel for

many defendants related to this proposal. A true and correct copy of this letter and the cover email, without certain attachments, is attached hereto as Exhibit A.

8. During the many meet and confer conferences the parties had discussing the various case management issues, members of the PSC offered to the Saint Thomas Entities that they could file a master motion to dismiss and designate the complaints to which the motion applied, but counsel for the Saint Thomas Entities maintained the position that the PSC should amend the master complaint and add them.

Executed on this 9th day of December, 2013, in Nashville, Tennessee.

_____
Benjamin A. Gastel

# **Exhibit A**

## Ben Gastel

| | |
|---|---|
| **From:** | Kristen Johnson Parker <kristenjp@hbsslaw.com> |
| **Sent:** | Wednesday, November 27, 2013 2:37 PM |
| **To:** | Louis R. Moffa; Stephen A. Grossman; Eric Hoffman; Brett J. Bean; Brian Gerling; Christopher Hassell; Chris J. Tardio ; C. J. Gideon , Jr.; Cynthia Palin; Christopher M. Wolk; David Thomas; Jay J. Blumberg; Joseph R. Lang; John M. Lovely; John-Mark Zini; Jack Reinholtz; Kristin Mykulak; Kristen R. Ragosta ; Kenneth B. Walton ; Marcy Greer; Matthew H. Cline; Michael Hayes; C. Mark Hoover; Michael Gardner; Michael Pikiel; Louis Moffa; Michael Sams; Mary-Rose Watson; Nancy Reynolds; Nicole Dorman; Roberto Braceras; Steven Drake; Randy J. Hackney; Rhond L. Beesing; Paul Saltzman; Sean E. Capplis; Daniel Ari Shapiro; Tory Weigand; Yvonne Puig |
| **Cc:** | Thomas Sobol; Kimberly A. Dougherty; Mike Barker; Patrick T. Fennell; Gerard Stranch; Ben Gastel; Marc Lipton; Chalos, Mark P. (mchalos@lchb.com); mark@markzamora.com; Jennifer Frushour Bean |
| **Subject:** | NECC:  Letter from the Plaintiffs' Steering Committee |
| **Attachments:** | 11-27-13 FINAL TMS to Defs re discovery and PSC proposals.pdf; 13-11-26 Joint Deposition Protocol - Proposed Order (00306797).DOC; 13-11-26 PSC-OCC HIPAA Compliant Medical Authorization (00306802).DOCX; 13-11-24 Proposed CMO Order No 8 Governing Pleadings and Discovery (00306317-4).DOCX; 13-11-21 Proposed ESI Protocol (00306376).DOCX; Profile Form and PITWD Addendum (Approved).pdf |

Attached is a letter from the Plaintiffs' Steering Committee (i) providing information about how to access to the U.S. Legal document repository and (ii) requesting input on the PSC's recently filed proposed case management order, protocols, and other documents.

Also attached are the following documents, referenced in the letter:
- The PSC's proposed CMO (filed Monday),
- The PSC's proposed Plaintiff Profile Form (same as the bankruptcy PITWD addendum),
- A HIPAA compliant medical release the PSC proposes to use with the Plaintiff Profile Form,
- A proposed deposition protocol, and
- A proposed ESI protocol.

We propose meeting and conferring on Wednesday, December 3, 2013 at 2:00 Eastern.  A dial in will be circulated by email after the holiday.

Happy Thanksgiving, all.



T 617.482.3700   F 617.482.3003

Thomas M. Sobol
**HAGENS BERMAN SOBOL SHAPIRO LLP**
55 CAMBRIDGE PARKWAY, SUITE 301
CAMBRIDGE, MA  02142
www.hbsslaw.com
**Direct (617) 482-3700**
tom@hbsslaw.com

November 27, 2013

**VIA EMAIL**

Re:   *In Re: New England Compounding Pharmacy, Inc. Products Liability Litigation*
MDL 2419; C.A. No.: 13-md-2419-FDS

Dear Defense Counsel:

I write on behalf of the Plaintiffs' Steering Committee ("PSC") to all defendants named in at least one case currently pending in the *In re New England Compounding Center, Inc., Products Liability Litigation*, 13-md-2419-FDS to address three discovery-related matters.

First, I respond to questions from some defendants about how to gain access to discovery materials produced to date in the MDL. The PSC has addressed access to discovery materials piecemeal as inquiries have arisen. We now write to ensure that all defendants have information on accessing the repository.

Second, I write to share the PSC's proposals for a deposition protocol, an ESI protocol, and a HIPAA-complaint medical release to be used by all plaintiffs in this litigation. The PSC began negotiating the deposition protocol and the medical release with the NECC-Affiliated Defendants many months ago. The ESI protocol is new and has not been previously presented to the NECC-Affiliated Defendants. We circulate all of these drafts for your comments.

Finally, I enclose copies of the proposed case management orders the PSC submitted to the Court in conjunction with St. Thomas's motion for reconsideration of the existing case management order. The PSC undertook negotiations with St. Thomas directly, per the Court's instruction. But the PSC wishes to hear from all defendants who have comments on how best to move this case forward in an efficient and fair manner. Our hope is that further comments on the PSC's proposals can be presented to Judge Saylor before the next status conference.

**Access to Document Repositories**

MDL Order #6 provided that any formal discovery produced by any plaintiff, defendant, or non-parties in any of the MDL cases or any other civil actions involving allegations of injury from use of an NECC product, must also be produced to Lead Counsel no later than seven days after production elsewhere. Documents must be sent to lead counsel's attention in the format produced elsewhere (whether electronic or hard copy). The Order required the PSC to create and maintain an online document repository accessible (at minimum) by the Creditors' Committee, the trustee, and plaintiffs' counsel of record in any action alleging injury related to a plaintiff's use of a product sold by NECC.

November 27, 2013
Page 2

MDL Order #6 also required that any plaintiffs' or defendants' counsel who seeks access to the repository (i) must comply with any confidentiality order and/or protective order entered in this case and (ii) may be -- at the Plaintiffs' Steering Committee's discretion -- subject to a reasonable assessment or cost-sharing arrangement as a condition precedent to use of the repository.[1]

The PSC subsequently created two document repositories to hold materials produced formally or informally. On July 2, 2013, the PSC identified their vendors in a pleading filed in the MDL docket.[2] The PSC asked that discovery produced that contained protected health information be produced to Rust/Omni and that all other discovery materials be produced to U.S. Legal.

The PSC has made all formal discovery produced by plaintiffs, defendants, or non-parties available through the Rust and U.S. Legal repositories. The PSC has provided instructions for how to access these repositories to defense counsel when asked.

*Rust Repository*

The Rust repository contains protected health information. Specifically, it contains: (i) information produced to Lead Counsel by clinics in response to Judge Boroff's order in the bankruptcy court requiring clinics to identify patients who were injected with contaminated MPA and (ii) information produced informally by NECC that included patient information or other protected health information. Under the terms of Judge Boroff's order and the PSC's agreement with NECC, the PSC is not permitted to share any of this information with defendants at this time.

*U.S. Legal Repository*

The U.S. Legal repository contains all other discovery produced in the MDL proceedings to Lead Counsel or the PSC to date. Specifically, it contains: (i) information produced by clinics, clinic-related entities, and other defendants who have not elected to participate in mediation pursuant to the PSC's subpoenas or other discovery requests (ii) informal productions by NECC that do not include patient information or other protected health information.

---

[1] The Order requires the PSC to agree with the Creditors' Committee as to any assessment. The PSC understands that the Creditors' Committee has not yet formulated a position on the proposed assessment.

[2] Dkt. No. 224.

November 27, 2013
Page 3

Under the terms of the PSC's agreement with NECC, the PSC is not permitted to share documents in category (ii) with defendants at this time. Defendants may access the documents in category (i).

The PSC has born, and will continue to bear, the continued costs of populating, hosting, and maintaining the repository. As contemplated by MDL Order #6, each unaffiliated defendant – *not* each law firm – who wishes to access the repository will be assessed a one-time fee of $3,000.00 for access to the repository. This fee is based on both charges associated with setting up and maintaining the repository to date, as well as an estimate of the costs expected to be incurred going forward. Should the costs associated with maintaining the repository for the duration of the litigation be less than the PSC anticipates, the PSC will equitably refund a portion of the user fee. Likewise, should these costs wildly exceed the PSC's best estimates, the PSC reserves the right to ask the Court to impose additional assessments on users.

U.S. Legal offers a number of options for accessing the documents. The simplest, and least expensive, option allows you to view and download documents (only). U.S. Legal can also create platforms that accommodate document review and/or attorney work product directly in the repository. Any expenses incurred in adding functionality beyond the "view and download" option will be born by the defendants requesting the same (on top of the one-time fee).

To access the documents in category (i), please send a check made out to the "NECC Litigation Fund" to Lead Counsel's firm at the following address:

> Hagens Berman Sobol Shapiro LLP
> Attn: Stefanie Knowlton, Accounting
> 1918 Eighth Ave, Suite 3300
> Seattle, WA 98101[3]

Then contact Kathleen Dwyer (T: (917) 512-7507, kdwyer@uslegalsupport.com) at U.S. Legal directly to arrange for access. The PSC will provide U.S. Legal with a list of defendants who have paid the user fee and may therefore access the depository.

**Proposed Deposition Protocol, Case Management Order, and Protocols**

Two days ago, the PSC filed a proposed case management order related to discovery, pleadings, and bellwether issues. In its filings, the PSC invited defendants to comment on the proposed CMO and the protocols and other documents attached to this letter.

---

[3] Or, contact Mike Barker, mikeb@hbsslaw.com, for wiring instructions.

November 27, 2013
Page 4

Attached to this letter are:

1) A Word version of the proposed CMO filed Monday by the PSC;
2) The PSC's proposed Plaintiff Profile Form (the same form used as the PITWD addendum to the proof of claim form required in the bankruptcy)
3) A HIPAA compliant medical release the PSC proposes to use with the Plaintiff Profile Form;
3) A proposed deposition protocol; and
4) A proposed ESI protocol.

Comments and suggestions on each of these documents are welcome. The PSC hopes that Judge Saylor will rule on the entry of the CMO by, at the latest, the December 13, 2013 status conference. The remaining protocols we hope to have negotiated with all defendants by the dates indicated in the proposed CMO.

To this end, we propose an open call between the PSC and all defendants on **Wednesday, December 3, 2013** at **2:00 Eastern**. We will circulate a dial in by email after the holiday.

Thanks very much. And happy Thanksgiving.

Sincerely,

/s/ **Thomas M. Sobol**
Thomas M. Sobol
HAGENS BERMAN SOBOL SHAPIRO LLP

*Lead Counsel,*
*On Behalf of the Plaintiffs' Steering Committee*

Cc:   Plaintiffs' Steering Committee
      Chapter 11 Trustee
      Affiliated Defendants