UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN RE: NEW ENGLAND               )
COMPOUNDING PHARMACY, INC.       )    MDL No. 1:13-md-02419
PRODUCTS LIABILITY LITIGATION    )
                                 )    Hon. F. Dennis Saylor, IV
This Document Relates to: All Cases )

## THE TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA'S MOTION TO QUASH PLAINTIFF'S SUBPOENA

### INTRODUCTION

Now comes nonparty The Travelers Property Casualty Company of America ("Travelers") and respectfully moves this Honorable Court to quash plaintiff's document subpoena. Travelers formerly provided liability insurance coverage to Defendant Liberty Industries Inc. ("Liberty") for several years before the Plaintiffs' injuries occurred. Travelers ceased providing liability coverage to Liberty on January 20, 2011, well before the Plaintiffs were exposed to contaminated medications in 2012.

Plaintiffs issued a document subpoena to Travelers (and other insurers) for copies of a variety of "policy related documents" covering the years 2006 -2012. (The subpoena is attached hereto as Exhibit No. 1.) The subpoena includes requests for irrelevant business records way beyond the scope of "insurance agreement" discovery permitted under Fed. R. Civ. P. 26(a)(1)(A)(iv). In addition the subpoena's document requests are facially overly broad and violative of prior decisional law in this very case. For these and the reasons more fully developed below, Travelers moves this Honorable Court to quash Plaintiff's subpoena.

### PROCEDURAL BACKGROUND

This action arises out of a widespread outbreak of fungal meningitis and other infections in 2012, allegedly attributable to contaminated medication, causing multiple deaths and injuries. Numerous lawsuits based on these deaths and injuries have been filed around the country. On February 12, 2013, the Judicial Panel on Multidistrict Litigation (MDL No. 2419) issued an order under 28 U.S.C. § 1407 transferring various federal-court proceedings to the Massachusetts Court, in which the at-issue Master Complaint was filed.

According to the Master Complaint, federal and state regulatory authorities, including the Center for Disease Control, the Food and Drug Administration and the Massachusetts Department of Public Health, traced the infectious outbreak to fungal contamination in three lots of medication used for epidural steroid injections. See generally Master Complaint, paragraphs 60 – 118. The medication was packaged and marketed by the New England Compounding Center ("NECC"), a compounding pharmacy in Framingham, Massachusetts (now bankrupt). Doses from those three lots were distributed to 75 medical facilities in 23 states, and administered

to more than 14,000 patients in 23 states **after May 21, 2012 and before September 24, 2012.** Id.

The Master Complaint alleges that there were several other actors besides NECC, who contributed to the chain of events that led to the Plaintiffs' claims. One of those is Liberty Industries, Inc. (hereinafter, "Liberty") which allegedly designed, manufactured, and installed the cleanrooms used to compound, mix, prepare, and assemble the contaminated medications. As alleged, Liberty manufactured, constructed, installed, and/or designed cleanrooms between 2005 – 2008 which contained defects that made them unsuitable for their intended use and vulnerable to manufacture of contaminated products. Plaintiffs further allege that one or more of the cleanrooms was used to compound the NECC Contaminated Drugs administered to the Plaintiffs.

Prior to 2012, Travelers provided liability insurance coverage to Liberty for a number of years. Travelers' last / most recent Commercial General Liability policy issued to Liberty was Policy No. 630-208M3177-TIL-10, and covered the period **November 1, 2010 to November 1, 2011** ("the Policy"). (The policy is attached hereto as Exhibit No. 2.) Travelers cancelled the Policy effective January 20, 2011. See Exhibit No. 2, last 2 pages. Following notification of this lawsuit, Travelers issued a declination of coverage letter to Liberty. (The declination of coverage letter is attached hereto as Exhibit No. 3.). Liberty has not contested Travelers' declination of coverage. In addition, the Master Complaint contains no allegations against Travelers.

## PLAINTIFFS' SUBPOENA TO TRAVELERS

Exhibit A to the Subpoena contains four (4) Requests for Production of Documents directed to Travelers, as follows:

1. Any and all applications for policies related to Liberty from 2006 to the present.

2. Any and all policies related to Liberty from 2006 to the present.

3. Any and all changes to or requests for changes to policy coverage related to Liberty from 2006 to the present.

4. Any and all policy related documents related to Liberty, including any reservation of rights statements and claims submissions, from 2006 to the present.

## ARGUMENT

A Rule 45 subpoena must fall within the scope of proper discovery under Fed. R. Civ. P. 26(b)(1). In re New England Compounding Pharmacy, Inc. Products Liability Litigation, supra, citing Miller v. Allstate Fire & Cas. Ins. Co., No. 07-260, 2009 WL 700142, at 2 (W.D.Pa. Mar. 17, 2009) (citation omitted). "Thus, the information sought by a subpoena must be: (1) not privileged; (2) relevant to the claim or defense of any party; and (3) either admissible or reasonably calculated to lead to the discovery of admissible evidence." Id., Fed. R. Civ. P. 26(b)(1).

## I. THE REQUESTS SEEK IRRELEVANT INSURANCE BUSINESS RECORDS WAY BEYOND THE DISCOVERY OF INSURANCE INFORMATION AUTHORIZED BY FED. R. CIV. P. 26(a)(1)(A)(iv)

The Master Complaint contains no allegations against Travelers and as a nonparty, Travelers' relationship to this action is that of a potential source of insurance to Liberty. Because of that relationship, discovery of Liberty's insurance agreements is authorized under Fed. R. Civ. P. 26(a)(1)(A)(iv) which requires parties to disclose and make available for inspection and copying:

> "any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment."

According to the Master Complaint, doses from the three recalled lots were administered to patients **after May 21, 2012 and before September 24, 2012**. (Emphasis added.) Thus, May 21, 2012 to September 24, 2012 is the pertinent time period for the plaintiff's claims. As stated above, the Travelers policy issued to Liberty provided coverage for the effective period November 1, 2010 to November 1, 2011, and was cancelled effective January 20, 2011. Accordingly, there was no Travelers' liability policy in effect during the pertinent 2012 time period. Furthermore there is no allegation to the contrary in any pleading filed in this action.

### Request No. 2

Even though it had no insurance agreement in effect with Liberty during the pertinent time period and without waiving its objections to the subpoena, Travelers has produced its last and most recent policy of liability insurance to Liberty. See Exhibit No. 2. Production of this insurance agreement more than satisfies Travelers' discovery obligations as a nonparty and noninsurer in this action. Plaintiffs' request No. 2 which seeks historical policies from "2006 to the present" clearly exceeds the scope of Fed. R. Civ. P. 26(a)(1)(A)(iv). No reasonable argument can be advanced that annual liability policies issued in the years preceding the 2012 injuries and deaths are insurance agreements which "may be liable to satisfy all or part of a possible judgment in the action." "Where the requested insurance-related discovery is 'not relevant or reasonably calculated to lead to the discovery of admissible evidence,' a party need only produce what is required under Fed. R. Civ. P. 26(a)(1)(A)(iv)". Honeywell Intern. Inc. v. ICM Controls Corp., 2013 WL 6169671 (Slip copy) (D.Minn., 2013)

### Request No. 1, 3 and 4

In addition, Requests Nos. 1, 3 and 4 even further exceed the parameters of Rule 26(a)(1)(A)(iv) ("The Rule") by seeking historical "applications for policies," "changes to or requests for changes to policy coverage" and "policy related documents… including any reservation of rights statements and claims submissions."

The Rule specifically references only insurance agreements and makes no mention of applications, policy change requests, policy related documents or claims submissions. Nor have the courts been tolerant of efforts by litigants to expand the reach of the Rule to conduct fishing expeditions of insurance business records in cases not involving insurance coverage disputes. See

Honeywell Intern. Inc. v. ICM Controls Corp., 2013 WL 6169671 (Slip copy) (D.Minn., 2013), citing Gulf Ins. Co. v. Skyline Displays Inc., No. 02–cv–3503 (DSD/SRN), at 9–10 (D.Minn. Oct. 20, 2003) (order denying interrogatories and document request relating to reinsurance agreement under former Rule 26(a)(1)(D)); cf. Wegner v. Cliff Viessman, Inc., 153 F. R.D. 154, 160-61 (N.D. Ia. 1994)(noting historical significance of rule providing for insurance-related discovery "because [insurance information] was not generally considered relevant or discoverable within the scope of Rule 26(b)(1)").

Indeed the Rule was originally promulgated as an exception to the discovery limitation of relevance - "The Rule's primary purpose is to enable counsel to obtain insurance agreements in order to "realistically appraise the case by determining whether an insurer will be able to satisfy an expected judgment or settlement agreement." Id., citing Fireman's Fund Ins. Co. v. Cunningham Lindsey Claims Mgmt., Inc., 2005 WL 1522783 at 3 (E.D.N.Y. June 28, 2005). Accordingly the Rule permits limited discovery of insurance agreements not because they are relevant but because the existence or nonexistence of such agreements often affects the resolution of the case.

None of the documents requested by Requests nos. 1, 3 and 4 will promote the purposes of the Rule. Discovery of archival insurance information by Plaintiffs' counsel will not elucidate the issue of whether there is a Travelers insurance agreement available to satisfy a judgment against Liberty for causes of action accruing in 2012. If there were any such possibility, undoubtedly Liberty would be leading the charge on that issue. More likely Plaintiffs seek to fish in Travelers' business records (and those of Liberty's other former insurers) for potential information to use against Liberty. This is an impermissible fishing expedition not countenanced by the discovery rules or the courts. See Emhart Industries, Inc. v. N.E. Container Co., Inc., 2008 WL 5340134 (D.R.I.) (Dec. 19, 2008)(quashing subpoena for insurance claims and underwriting files).

## II. REQUESTS NOS. 1, 3 and 4 ARE PATENTLY OVER BROAD AND IGNORE THIS COURT'S PRIOR RULING ON SUCH REQUESTS

In addition to the reasons discussed above, Travelers further objects to Requests Nos. 1, 3 and 4 because the requests are facially over broad and even ignore this Court's own prior ruling concerning similarly worded subpoenas. In that regard, each of the requests contain the phrases "any and all" documents "related to Liberty". Request No. 4 compounds the issue by using the phrase "policy related documents". The compliance problems resulting from this inherently overbroad phraseology are further magnified by the historical reach of the requests, 2006 – present.

For proper guidance on this issue, the Plaintiffs need only review this Court's November 13, 2013 ruling on various motions to quash Plaintiffs' subpoenas for medical records. See In re New England Compounding Pharmacy, Inc. Products Liability Litigation, 2013 WL 6058483 at 9 (D.Mass. Nov. 13, 2013). There this Court noted that subpoena requests which "seek 'any and all' documents 'related in any way whatsoever' to a topic ... appear to be overly broad on their face." This Court adopted the critique of other Courts confronted with such requests: "Courts may find requests overly broad when they are 'couched in such broad language as to make arduous the task of deciding which of numerous documents may conceivably fall within [their]

scope." Id., citing Western Resources, Inc. v. Union Pacific Railroad Co., No. 00-2043-CM, 2002 WL 1822430, at 2 (D.Kan. July 23, 2002) (citation omitted). "Use of broad terms such as 'relate to' or 'relating to' provides no basis upon which an individual or entity can reasonably determine what documents may or may not be responsive." Id.; see also Twigg v. Pilgrim's Pride Corp., No. 3:05-CV-40, 2007 WL 676208, at 9 (N.D.W.Va. Mar. 1, 2007).

Nor is there any reason for the Court to modify Plaintiffs' subpoena requests; there is simply no valid reason for commanding production of any insurance business records beyond those attached to this motion, i.e. Travelers' last / most recent liability policy and its declination of coverage letter to Liberty.

In addition to the foregoing problems, the term "claims submission" used in Request 4 has no accepted definition in either insurance or legal parlance. Accordingly it is susceptible to countless subjective interpretations and therefore, impermissibly vague and ambiguous.

In the context of this case, Plaintiffs' only legitimate reason for issuing a subpoena to Travelers is for trying to identify a possible source of insurance coverage. Clearly Plaintiffs' document subpoena is not narrowly tailored to that purpose.

## CONCLUSION

For the forgoing reasons, Travelers respectfully requests that the Court Quash Plaintiffs' subpoena.

By its attorney,

/s/ *Brian M. Cullen*

---

Brian M. Cullen
Law Offices of Steven B. Stein
Two Financial Center
60 South Street, Suite 1000
Boston, MA 02111-2759
Direct Dial: (617) 772-2905
B.B.O. #547427
bcullen@travelers.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 19, 2013, I electronically filed the forgoing The Travelers Property Casualty Company of America's Motion to Quash Plaintiff's Subpoena by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ *Brian M. Cullen*

---

Brian M. Cullen