UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br>    All Cases | )<br>)<br>)<br>) MDL No. 1:13-md-2419-FDS<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OF LAW IN SUPPORT OF
CHAPTER 11 TRUSTEE'S RENEWED AND SUPPLEMENTAL
MOTION TO TRANSFER ADDITIONAL PERSONAL INJURY TORT
AND WRONGFUL DEATH CASES TO THIS COURT PURSUANT TO
28 U.S.C. §§ 1334 AND 157(b)(5)**

Pursuant to 28 U.S.C. §§ 1334 and 157(b)(5), Paul D. Moore, the Chapter 11 Trustee for the bankruptcy Estate of New England Compounding Pharmacy, Inc. ("NECC" or the "Debtor"), hereby files this memorandum of law in support of his renewed and supplemental motion (the "Renewed Motion") for entry of an order transferring to this Court the personal injury and wrongful death cases which are identified on Exhibit 1 hereto (the "State Court Actions") and in which the defendant, Insight Health Corp. ("Insight") has recently asserted claims for indemnity and contribution against NECC. In support of the Renewed Motion, the Trustee states as follows:

**INTRODUCTION**

On December 21, 2012, NECC filed a voluntary petition seeking relief under Chapter 11 of Title 11 of the United States Code. Thereafter, on January 24, 2013, the Bankruptcy Court entered an order authorizing the appointment of a chapter 11 trustee. On January 25, 2013, Paul D. Moore was appointed as the Chapter 11 Trustee of the Debtor's estate.

Thereafter, the Trustee filed a Motion to Transfer Personal Injury Tort and Wrongful Death Cases to this Court pursuant to 28 U.S.C. §§ 1334 and 157(b)(5) [MDL Doc. No. 37] (the "Transfer Motion").  The Transfer Motion sought to transfer to this Court all personal injury and wrongful death cases then pending in both state and federal courts, which involved claims arising from use of allegedly contaminated pharmaceuticals compounded and/or distributed by NECC and other third parties.  As this Court observed in its *Memorandum and Order on Trustee's Motion to Transfer*, dated May 31, 2013 [MDL Doc. No. 170] (the "Transfer Opinion"), the Transfer Motion sought the transfer of cases which fall into the four (4) following categories:

> (1) cases pending in other federal courts that have not yet been transferred here; (2) cases pending in state courts where removal is in process; (3) cases pending in state courts that name NECC or affiliated entities as defendants; and (4) cases pending in state courts that do not name NECC or affiliated entities as defendants.

*In re New Eng. Compounding Pharm. Prods. Liab. Litig.*, 496 B.R. 256, 262 (D. Mass. 2013).  The Transfer Motion was granted as to cases within categories (1), (2) and (3).  The Transfer Motion was denied, without prejudice, as to cases within category (4).  *Id.* at 277-78.

With regard to category (4) cases, this Court assumed the existence of subject matter jurisdiction, but declined to exercise its discretion and abstained from exercising such jurisdiction. *Id.* at 277.  This Court held:

> The transfer of some, but not all, state-court cases might be something of a pointless exercise if the possibility remains that a state-court defendant could make a future claim in the bankruptcy case for contribution or indemnity, upsetting the effort to make an equitable distribution to the victims and other creditors.  Indeed, that is the essential basis of the trustee's motion:  that the Court *must* transfer *all* state-court cases to foreclose that very possibility.
>
> The Court is not convinced, at least at this stage, that such a step is necessary.  Other possible courses of action might produce the desired consolidation and finality, without resolving difficult issues of jurisdiction and abstention and without intruding unnecessarily

> into the proceedings of state courts. For example, if the Bankruptcy Court were to set a relatively early bar date for the filing of claims against the estate, it would appear that any defendant in a state-court action would be effectively forced to decide whether it wanted to file a claim for contribution or indemnity against the estate. Such a claim, in turn, would probably permit the exercise of federal jurisdiction over the underlying matter. Any defendant who did not file a claim would be barred, and the state-court case could proceed to judgment without interference from the federal court. Either way, the desired goals would be achieved with a relatively minimal degree of risk or intrusion.
>
> In any event, the Court does not need to reach the issue at this juncture. <u>If the balance of factors shifts over time, the Court can revisit the issue, and if necessary (and appropriate) can issue further orders concerning the exercise of related-to jurisdiction</u>. (Emphasis added).

*Id*. at 269-70 (emphasis added).

Since the entry of the Transfer Opinion, the Bankruptcy Court has entered its *Order (I) Establishing Deadline for Submitting Proofs of Claim, (II) Approving Certain Additional Requirements and Procedures for Personal Injury Tort and Wrongful Death Claims and (III) Approving Form and Manner of Notice Thereof* [Bankr. Doc. No. 582] (the "<u>Bar Date Order</u>"), fixing January 15, 2014 at 4:00 p.m. as the claims deadline. In response to the Bar Date Order, Insight, a defendant identified in a group of category (4) cases, has asserted claims against NECC for indemnity and contribution in a proof of claim filed on Friday, December 20, 2013 (the "<u>Insight Proof of Claim</u>").[1] The automatic stay set forth in 11 U.S.C. § 362 prohibits Insight

---

[1] A true and correct copy of the Insight Proof of Claim, including the addendum thereto (the "<u>Insight Addendum</u>," is attached hereto as <u>Exhibit 2</u>. When Insight filed its Proof of Claim, Insight inadvertently failed to include the exhibits to the Addendum. Insight has advised the Trustee that Insight will file forthwith an Amended Proof of Claim, which will include the Addendum and all exhibits. The Trustee has included those exhibits in Exhibit 2.

from naming NECC as a defendant in any civil action, and the filing of a proof of claim is Insight's only appropriate vehicle for asserting indemnity and contribution claims against NECC.

The Trustee has therefore filed this renewed and supplemental motion in support of an Order transferring the State Court Actions.

## **THE INSIGHT PROOF OF CLAIM**

The Insight Proof of Claim identifies claims which certain plaintiffs are pursuing against Insight and which arise from a series of allegations common to the cases which this Court earlier transferred. Insight states the following:

> 2. [NECC] was a supplier/producer/manufacturer of compounded methylprednisolone acetate ("MPA"), which was provided to Insight, among others, for use in epidural steroid injections of individuals experiencing chronic pain. The MPA was typically injected into the spinal column of the individual to reduce inflammation and eliminate pain.
>
> 3. Insight is a company that operates imaging centers nationwide, including a facility located in Roanoke, Virginia. Patients at Insight's Roanoke clinic receive, among other services, image-guided pain therapy. Insight performs the clinic administration and operational support functions at the Roanoke facility. Insight's Roanoke clinic received preservative-free MPA over a 5-year period.
>
> . . .
>
> 30. Insight is currently a named defendant in 22 lawsuits filed in the Circuit Court for the City of Roanoke, Virginia, alleging injuries and, in some cases, death, resulting from the administration of injections containing contaminated MPA that was marketed, manufactured, produced, and shipped by NECC (hereinafter the "Roanoke Suits").
>
> 31. The extent of injury suffered by each plaintiff in the Roanoke Suits is the subject of ongoing, and as yet incomplete, discovery. Insight's information about the extent of injuries in some cases is limited to the allegations in the respective complaints. Nevertheless, each of the 22 complaints alleges that the plaintiff contracted fungal meningitis and had to undergo, in

some cases, hospitalization and other extensive treatment for the infection. Three of the Roanoke Suits include wrongful death claims. Each of the *ad damnum* clauses in 20 of the 22 complaints in the Roanoke Suits seek compensatory damages of $5 million, and one such complaint seeks compensatory damages of over $25 million (the remaining two seek $2 million and $500,000, respectively). All but one of the 22 Roanoke Suits also seeks punitive damages of $350,000. Combined, <u>the Roanoke Suits seek well over $100 million in damages</u>. This Proof of Claim hereby asserts claims for each of the grounds set forth below on account of each of the Roanoke Suits.

Insight Addendum at paragraphs 2, 3, 30 and 31 (emphasis added).

Insight has now asserted claims for indemnity and contribution against NECC as follows:

## INSIGHT'S CLAIMS AGAINST NECC

33. Insight did not alter the MPA received from NECC. NECC represented to Insight that the MPA was a sterile, preservative-free preparation of MPA for use in intrathecal and other injections … To the extent that any patient in Insight's Roanoke facility received contaminated MPA, such contaminated MPA came from NECC and was purchased by Insight and used by the physicians at the Insight facility, without any knowledge of any potential contamination.

34. Insight denies any and all liability for any injuries, damages and death claimed with respect to the Roanoke Suits and [potential future claims ("<u>Potential Roanoke Claims</u>")]. If any of the plaintiffs in any of Roanoke Suits obtains a judgment against Insight, all damages allegedly sustained by the plaintiff were solely the result of the acts, omissions, breaches, negligence, fraud and/or other violations of law by NECC. Similarly, if any of the potential plaintiffs with respect to the Potential Roanoke Claims obtains a judgment against Insight, all damages allegedly sustained by such potential plaintiff were solely the result of the acts, omissions, breaches, negligence, fraud and/or other violations of law by NECC.

35. Contribution. In the event that Insight incurs an adverse judgment with respect to the Roanoke Suits and the Potential Roanoke Claims, Insight is entitled to contribution from NECC for each and every such judgment. *See* Va. Code 8.01-34; *Hudgins v. Jones*, 205 Va. 495, 138 S.E.2d 16 (1964).

> 36. Indemnification. In the alternative, in the event that Insight incurs an adverse judgment with respect to any of the Roanoke Suits or the Potential Roanoke Claims, Insight is entitled to common law equitable indemnification from NECC for each and every such judgment because NECC was the negligent party whose conduct proximately caused the injury of the plaintiffs or potential plaintiffs with respect to the Roanoke Suits or the Potential Roanoke Claims, without any intervention or other action by Insight. *See, e.g., Carr v. The Home Ins. Co.*, 250 Va. 427, 429, 463 S.E.2d 457 (1995).
>
> 37. In addition, with respect to the Roanoke Suits or the Potential Roanoke Claims, Insight is entitled to implied indemnity—sometimes referred to as an implied contract for indemnity or implied-in-fact indemnity—because, as described below, NECC breached its implied warranty of merchantability to Insight. *See Whittle v. Timesavers, Inc.*, 614 F. Supp. 115, 119 (W.D. Va. 1985) ("[W]here there has been a breach of an implied warranty of merchantability . . . an implied contract for indemnity will lie."); *see also Wingo v. Celotex Corp.*, 834 F.2d 375, 377 (4th Cir. 1987) ("The general law is that where a supplier of chattels supplies a dangerously defective chattel to a buyer for the use of another and both have become liable to the user on account of the use of the product, an implied right of indemnity in favor of the buyer against the supplier is usually implied.").
>
> 38. Moreover, if Insight is found to be at fault in some regard with respect to the Roanoke Suits or the Potential Roanoke Claims, NECC's negligence was greater in quality and degree and, therefore, Insight is entitled to implied-in-law indemnity. *See, e.g., International Surplus Lines Ins. Co. v. Marsh & McLennan, Inc.*, 838 F. 2d 124, 126-127 (4th Cir. 1987).
>
> 39. Accordingly, Insight is entitled to recover from NECC 100% of each and every adverse judgment or settlement relating to the Roanoke Suits and the Potential Roanoke Claims, including all attorneys' fees and other costs of defense.

Insight Addendum at 33-39.  The so-called Roanoke Suits are identified on Exhibit D to the Insight Proof of Claim and on <u>Exhibit 2</u> hereto.

This Court acknowledged that subject matter jurisdiction might exist with regard to cases within category (4) (*i.e.*, cases where defendants have not yet asserted claims for indemnity or contribution against NECC).  However, this Court ultimately concluded that jurisdiction was

"unclear at best." *In re New Eng. Compounding*, 496 B.R. at 274. This Court therefore exercised its discretion to abstain from asserting jurisdiction, *id.*, and decided to "deny the trustee's motion as to those cases pending in state courts in which a claim against NECC or an affiliated entity is possible, but has not yet been asserted, <u>without prejudice to its renewal</u>." *Id.* at 275 (emphasis added); *see also*, *id.* at 261 ("The Court will not, however, transfer any state-court cases <u>at this time</u> that do not involve claims against NECC or its affiliates") (emphasis added). In light of Insight's assertion of such claims against NECC in its Proof of Claim, the Trustee has filed the Renewed Motion.

As set forth further below, this Court should now transfer the State Court Actions.

## ARGUMENT

**This Court has jurisdiction over the State Court Actions pursuant to 28 U.S.C. § 1334.**

In its Transfer Opinion, this Court stated that a claim against NECC's estate for indemnity and contribution "would probably permit the exercise of federal jurisdiction over the underlying matter." *Id.* at 270. Now that Insight has filed its proof of claim, which may exceed $100 million, against NECC for indemnity and contribution, the basis for subject matter jurisdiction is clear.[2] The Trustee therefore requests that this Court exercise jurisdiction over the State Court Actions.[3]

---

[2] *See In re New Eng. Compounding,* 496 B.R. at 269 ("[T]he Court concludes that it has related-to subject matter jurisdiction under § 1334 over any state-court case in which any plaintiff has asserted a claim, or any defendant has asserted a claim for contribution or indemnity, against NECC or any affiliated entity or individual. Such a claim could clearly have an effect, indeed a substantial effect, on the bankruptcy estate.").

[3] Such an exercise of jurisdiction is also supported by cases which hold that jurisdiction exists where an indemnity claim has a "reasonable legal basis." *In re Masterwear Corp.*, 241 B.R. 511, 516 (S.D.N.Y. 1999) (quoting *In re Chateaugay Corp.*, 213 B.R. 633, 640 (S.D.N.Y. 1999)

(Continued…)

In the Transfer Opinion, this Court examined the scope of "related to" jurisdiction under 11 U.S.C. § 1334 and concluded that the scope was "quite broad." *Id*. at 266 (quoting *In re Boston Reg'l Med. Ctr.*, 410 F.3d 100, 105 (1st Cir. 2005)). As this Court explained:

> Section 1334 provides district courts with original, but not exclusive, jurisdiction over "all civil proceedings arising under title 11, or arising in or *related to* cases under title 11." 28 U.S.C. § 1334. The scope of related-to jurisdiction is "quite broad." *In re Boston Reg'l Med. Ctr.*, 410 F.3d 100, 105 (1st Cir. 2005). "[A] civil proceeding is related to bankruptcy [if] the outcome of that proceeding could conceivably have any effect on the [bankruptcy] estate." *In re G.S.F. Corp.*, 938 F.2d 1467, 1475 (1st Cir. 1991) (internal quotations omitted), *overruled on other grounds by Connecticut Nat'l Bank v. Germain*, 503 U.S. 249 (1992) . . .
>
> Such jurisdiction is not unlimited, however. There must be some nexus between the "related" proceeding and the bankruptcy case, such that "the outcome of the litigation potentially could have some effect on the bankruptcy estate, such as altering debtor's rights, liabilities, options, or freedom of action, or otherwise have an impact upon the handling and administration of the bankrupt estate." *In re Boston Reg'l*, 410 F.3d at 105 (internal citations and textual alterations omitted) . . .

*Id*. at 266-67 (citations omitted, footnote omitted). This Court further observed that:

> It remains an open question of law, at least in the First Circuit, whether there is related-to jurisdiction over a case against a non-debtor, third-party defendant who has a *potential* (as opposed to an actual) claim for contribution or indemnity against the debtor. *See Cambridge Place*, 2010 U.S. Dist. LEXIS 142954 (noting that "[t]he First Circuit has not yet addressed the appropriate standard to be applied in evaluating whether contractual indemnification obligations give rise to 'related to' bankruptcy jurisdiction.") . . . .

---

(Continued…)

(S.D.N.Y. 1997)); *see also, Bond Street Assocs. v. Ames Dep't Stores, Inc.*, 174 B.R. 28, 33 (S.D.N.Y. 1994) (lease dispute between landlord and debtor's assignor was "related to" debtor-assignee's bankruptcy because assignor "will normally have a claim against the debtor-assignee for losses caused by the assignee's breach").

*Id*. at 268 (emphasis in the original).  This Court then reviewed other decisions which held that the assertion of claims for indemnity or contribution provides a basis for jurisdiction under Section 1334.  *Id*. at 268-69 (citing *In re Dow Corning Corp.*, 86 F.3d 482, 494 (6th Cir. 1996) (distinguishing the impact of thousands of indemnity and contribution claims versus the impact of a single claim and concluding "[a] single possible claim for indemnification or contribution simply does not represent the same kind of threat to a debtor's reorganization plan as that posed by the thousands of potential indemnification claims at issue here."); *In re Twin Labs Personal Injury Cases*, Case No. 03 Civ. 9169, 2004 WL 435083, at *1 (S.D.N.Y. 2004) (concluding, in the context of product liability claims that "the retailer defendants . . . will undoubtedly seek indemnity from the Debtors following any judgments against them.  Accordingly, from many perspectives, the . . . action against the retailers will have more than a 'conceivable effect' on the bankrupt estate of the Debtors.")).

Now that Insight has filed the Insight Proof of Claim, the basis for jurisdiction is clear. The State Court Actions will have a "conceivable effect" on NECC's estate and should be transferred to this Court.

**This Court should not abstain from exercising jurisdiction.**

In the Transfer Opinion, this Court discussed both mandatory abstention under 28 U.S.C. 1334(c)(2) and discretionary abstention under 28 U.S.C. § 1334(c)(1).  This Court determined that mandatory abstention was inapplicable.  *See In re New Eng. Compounding*, 496 B.R. at 270-272.  This Court also decided to exercise discretionary abstention in cases where the defendant did not assert a claim for indemnity or contribution against NECC, *id*. at 273, while acknowledging that the assertion of jurisdiction might be appropriate upon the filing of such

claims.  *Id*. at 274.  Now that Insight has asserted such claims, the Trustee urges the Court to exercise jurisdiction and to transfer the State Court Actions.

### Mandatory Abstention.

With regard to mandatory abstention, this Court explained that:

> Section 1334(c)(2) must be read in conjunction with 28 U.S.C. § 157(b)(4), which states that '[n]on-core proceedings under section 157(b)(2)(B) . . . shall not be subject to the mandatory abstention provisions of section 1334(c)(2).' And § 157(b)(2), in turn, provides that 'the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims <u>against the estate</u> for purposes of distribution in a case under title 11' are non-core claims.  28 U.S.C. § 157(b)(2)(B).

*Id*. at 270-71 (emphasis in the original).  This Court conceded that a "strict textual reading of these statutes might lead to the conclusion that personal injury and wrongful death claims asserted against non-debtor third parties . . . are subject to . . . mandatory abstention." *Id*. at 271.  However, this Court reasoned, in light of the strong Congressional policy to centralize the determination of personal injury and wrongful death claims in bankruptcy cases, Section 157(b)(2)(B) should be interpreted to include cases where defendants have asserted indemnity and contribution claims against a debtor's estate.  *Id*. at 272.  "A narrower reading would create a potentially gaping loophole in the carefully crafted system for the orderly administration of bankruptcy estates." *Id*.

### Discretionary Abstention.

With regard to discretionary abstention under 28 U.S.C. § 1334(c)(1), this Court found that "the balance of . . . factors weighs against discretionary abstention, except in those cases pending in state courts that do not involve any claims against NECC-affiliated entities or individuals."  *Id*. at 273.  With regard to category (4) cases, the issue of subject matter jurisdiction was determinative in this Court's decision to abstain.  As this Court explained:

> Most importantly, the basis for asserting jurisdiction over the state-court cases at issue is confined entirely to § 1334, and that jurisdiction is unclear at best. The potential harm to federal-state comity is potentially at its greatest where the basis for federal jurisdiction is uncertain.
>
> In light of these considerations, the Court will exercise its discretion and abstain from asserting jurisdiction—again, assuming that it exists—over those cases currently pending in state courts involving only state-law claims against defendants other than NECC and its affiliates, and where there is no third-party claim for contribution or indemnity. <u>The Court may, in the future, assert jurisdiction over any such case should the third-party defendant actually assert such a claim, but it will refrain from deciding that issue at this time</u>.

*Id*. at 274 (emphasis added). As described above, as a result of the filing of the Insight Proof of Claim, the issue of jurisdiction is no longer "unclear" with regard to the State Court Actions against Insight.

Finally, with regard to cases within the scope of 28 U.S.C. § 157(b)(5), there should be a presumption in favor of exercising jurisdiction. As the Court explained in *In re Twin Laboratories Inc.*, 300 B.R. 836 (Bankr. S.D.N.Y. 2003):

> [I]n deference to the seemingly mandatory language of § 157(b)(5) and its obvious purpose of giving particular priority to the centralization of bankruptcy-related personal injury claims in a single forum, the Second Circuit has further instructed district courts that, so far as cases falling within the purview of that section are concerned, "[t]ransfer should be the rule, abstention the exception." [*Coker v. Pan American World Airways, Inc. (In re Pan American Corporation)*, 950 F.2d 839, 845 (2d Cir. 1991)]. Accordingly, even though district courts in deciding whether or not to abstain in a bankruptcy context have frequently invoked a 12–factor test, *see, e.g.*, *In re WorldCom, Inc. Securities Litigation*, 293 B.R. 308, 332 (S.D.N.Y.2003), that test must here be applied with caution, taking account of the strong legislative presumption favoring transfer under § 157(b)(5): for in this context, perhaps even more than elsewhere, federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

*Id*. at 840-41.

For all of the preceding reasons, this Court should, therefore, no longer exercise discretionary abstention with respect to the State Court Actions and should now transfer them to this Court.

## CONCLUSION

For all the foregoing reasons and the reasons set forth in the Transfer Motion, the Trustee respectfully requests that this Court enter the attached order transferring the State Court Actions to this Court for further proceedings pursuant to 28 U.S.C. § 157(b)(5).

Dated: December 27, 2013

Respectfully submitted,

DUANE MORRIS LLP

*/s/ Michael R. Gottfried*
Michael R. Gottfried (BBO #542156)
100 High Street
Suite 2400
Boston, MA 02110-1724
Phone: (857) 488-4200
Email: mrgottfried@duanemorris.com

**CERTIFICATE OF SERVICE**

      I hereby certify that Memorandum of Law in Support of Chapter 11 Trustee's Renewed and Supplemental Motion to Transfer Additional Personal Injury Tort and Wrongful Death Cases to this Court Pursuant to 28 U.S.C. §§157(b)(5) and 1334 filed through the EFC system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on December 27, 2013.

      */s/ Michael R. Gottfried*
      Michael R. Gottfried