UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br>    All Cases | )<br>)<br>)<br>)  MDL No. 1:13-md-2419-FDS<br>)<br>)<br>)<br>) |

**JOINDER OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
TO CHAPTER 11 TRUSTEE'S RENEWED AND SUPPLEMENTAL
MOTION TO TRANSFER ADDITIONAL PERSONAL INJURY TORT
AND WRONGFUL DEATH CASES TO THIS COURT
PURSUANT TO 28 U.S.C. §§ 157(b)(5) AND 1334**

The Official Committee of Unsecured Creditors (the "Official Committee") of New England Compounding Pharmacy, Inc. d/b/a New England Compounding Center ("NECC" or the "Debtor"), by and through its undersigned counsel, respectfully submits this joinder (the "Joinder") to the *Chapter 11 Trustee's Renewed and Supplemental Motion to Transfer Additional Personal Injury Tort and Wrongful Death Cases to this Court Pursuant to 28 U.S.C. §§ 157(B)(5) and 1334* [Dkt. No. 732] (the "Transfer Motion") and accompanying memorandum of law [Dkt. No 733] (the "Memorandum of Law") filed by the chapter 11 trustee (the "Trustee") of NECC.[1] In support of this Joinder, the Official Committee respectfully states as follows:

    1.    The Official Committee joins in and supports the Transfer Motion and joins in the Trustee's Memorandum of Law (the arguments and authorities of each of which are incorporated as if fully set forth herein), and the Official Committee respectfully requests that this Court transfer to this Court the personal injury and wrongful death cases which are identified on Exhibit 1 to the Memorandum of Law (the "State Court Actions"), in which the defendant,

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Transfer Motion.

Insight Health Corp. ("Insight"), has recently asserted claims for indemnity and contribution against NECC.

## BACKGROUND

2. Insight is a Virginia clinic that received and administered a substantial number of NECC's tainted steroidal injections. On December 22, 2013, Insight filed its proof of claim against NECC in NECC's Chapter 11 case. On December 30, 2013, Insight filed an amended proof of claim against NECC (the "Amended Insight Proof of Claim").[2]

3. Insight is currently a named defendant in 22 lawsuits filed in the Circuit Court for the City of Roanoke, Virginia, alleging injuries and, in some cases, death, resulting from the administration of injections containing contaminated MPA that was compounded, marketed, produced, and shipped by NECC. See Amended Insight Addendum ¶ 30. In the Amended Insight Proof of Claim, Insight asserts claims for indemnity and contribution against NECC. See Amended Insight Addendum ¶¶ 35-40 (describing, in detail, Insight's indemnification and contribution claims).

## JOINDER

**A. The Court Has "Related-To" Subject Matter Jurisdiction Over the State Court Actions**

4. The Official Committee submits that this Court has "related-to" jurisdiction over the State Court Actions pursuant to 28 U.S.C. § 1334, the scope of which, as this Court has stated, is "quite broad." In re New Eng. Compounding Pharm. Prods. Liab. Litig., 496 B.R. 256, 266 (D. Mass. 2013). Although the Court had earlier expressed concern that its jurisdiction over actions such as the State Court Actions (where a claim for indemnification or contribution had

---

[2] A true and correct copy of the Amended Insight Proof of Claim, including the addendum thereto (the "Amended Insight Addendum"), is attached hereto as Exhibit A.

not yet been made or filed against the Debtor) was "unclear at best," New Eng. Compounding Pharm. Prods. Liab. Litig., 496 B.R. at 274, as a result of Insight's filing its Amended Insight Proof of Claim, the issue of jurisdiction is no longer "unclear" with regard to these State Court Actions. Id.; see id. at 270 (a claim against NECC's estate for indemnity and contribution "would probably permit the exercise of federal jurisdiction over the underlying matter"). As the Trustee notes, because the State Court Actions will have a "conceivable effect" on NECC's Estate, this Court has clear jurisdiction over the State Court Actions and, therefore, should transfer them to this Court.

**B.     Mandatory Abstention is Inapplicable**

5. Moreover, the Official Committee, in agreement with the Trustee, submits that mandatory abstention under 28 U.S.C. § 1334(c)(2) is inapplicable here, given 28 U.S.C. § 157(b)(4)'s mandate that "[n]on-core proceedings under section 157(b)(2)(B) . . . ***shall not*** be subject to the mandatory abstention provisions of section 1334(c)(2)." 28 U.S.C. § 157(b)(4) (emphasis added). Section 157(b)(2)(B), in turn, provides that "the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11" are non-core claims. 28 U.S.C. § 157(b)(2)(B). As this Court has noted, Section 157(b)(2)(B) should properly be interpreted to include in "non-core proceedings" not only personal injury claims or wrongful death clams proceeding directly against the estate, but also cases in which defendants have asserted indemnity or contribution claims against the debtor's estate (as Insight has done). See New Eng. Compounding Pharm. Prods. Liab. Litig., 496 B.R. at 272 ("The phrase 'personal injury tort or wrongful death claims against the estate,' as used in § 157(b)(2)(B), can fairly be read to encompass not only personal injury and wrongful death claims, but also claims for contribution or indemnity that derive from personal injury or wrongful death claims."); accord Abbatiello v. Monsanto Co., 06 Civ. 266,

3

2007 U.S. Dist. LEXIS 19790, at *16 (S.D.N.Y. Mar. 8, 2007) ("the exception to mandatory abstention also applies to litigation against [third-party defendants], because [debtor] is obligated to indemnify [third-party defendants] for any judgment awarded against them."); Berry v. Pharmacia Corp., 316 B.R. 883, 889 (S.D. Miss. 2004) ("[G]iven the nature of the relationship and degree of identity between the debtor [and the third-party defendant], the rationale for exempting personal injury and wrongful death claims against the debtor's estate from the mandatory abstention provision applies fully to the claims against [third-party defendant]. Under the terms of the Distribution Agreement, [third-party defendant] claims a right to absolute indemnity from [debtor] for any judgment that might be rendered against it, so that a judgment against [third-party defendant] is, in practical effect, a judgment against [debtor]."); see also Transfer Motion at 3 (noting that the automatic stay prohibits Insight from naming NECC as a defendant in any civil action and the filing of a proof of claim is Insight's only appropriate vehicle for asserting indemnity and contribution claims against NECC); Memorandum of Law at 3-4 (same). Mandatory abstention is thus inapplicable to the State Court Actions.

C. **This Court Should Not Exercise Discretionary Abstention with Respect to the State Court Actions**

6. The Official Committee submits that this Court should not exercise discretionary abstention with respect to the State Court Actions. 28 U.S.C. § 157(b)(5) provides that

> [t]he district court ***shall*** order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

28 U.S.C. § 157(b)(5) (emphasis added). Accordingly, "in deference to the seemingly mandatory language of § 157(b)(5)," there should be a presumption in favor of exercising jurisdiction. Alcantar v. Twin Labs. Inc. (In re Twin Labs. Inc.), 300 B.R. 836, 840 (S.D.N.Y.

4

2003). The Twin Labs court explained that

> so far as cases falling within the purview of [§ 157(b)(5)] are concerned, '[t]ransfer should be the rule, abstention the exception." [Coker v. Pan Am. World Airways, Inc. (In re Pan Am. Corp.), 950 F.2d 839, 845 (2d Cir. 1991)]. Accordingly, even though district courts in deciding whether or not to abstain in a bankruptcy context have frequently invoked a 12–factor test, see, e.g., In re WorldCom, Inc. Securities Litigation, 293 B.R. 308, 332 (S.D.N.Y. 2003), that test must here be applied with caution, taking account of the strong legislative presumption favoring transfer under § 157(b)(5): for in this context, perhaps even more than elsewhere, federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

Id. at 841.

7. This Court has already concluded that "the balance of . . . factors weighs against discretionary abstention, except in those cases pending in state courts that do not involve any claims against NECC-affiliated entities or individuals." New Eng. Compounding Pharm. Prods. Liab. Litig., 496 B.R. at 273. Now that the State Court Actions involve claims against the Debtor (through Insight's proof of claim filing in the NECC Chapter 11 case), see id. at 274 ("the Court may, in the future, assert jurisdiction over any such case should the third-party defendant actually assert such a claim [for contribution or indemnity]"), the circumstances of this case weigh heavily in favor of this Court's declining to exercise permissive abstention.

8. Significant progress has been made in the Chapter 11 case: the Trustee, the Official Committee, and the Plaintiffs' Steering Committee have begun, through preliminary settlements with NECC's insiders and insurers, to build a "Claimants' Compensation Fund", for distribution to claimants through a Chapter 11 plan, to benefit the victims of NECC's tainted steroidal injections. See Preliminary Settlement Agreements Establish $100M Fund for Victims of Tainted Steroids Traced to NECC, Reuters (Dec. 23, 2013), available at

5

http://www.reuters.com/article/2013/12/23/ma-necc-settlement-idUSnPnNEg2mBD+163+PRN20131223 (describing the preliminary agreements of NECC's insiders and insurers to contribute an amount exceeding $100 million to "a compensation fund to be distributed to NECC creditors, including victims who received injections of tainted steroids traced to NECC"); see also New Eng. Compounding Pharm. Prods. Liab. Litig., 496 B.R. at 273 (the "primary focus" of the chapter 11 plan will be "satisfying, to the maximum extent possible, the unsecured claims of injured plaintiffs for damages").

9. Furthermore, as this Court is aware, mediation is already well underway with respect to several significant Non-Affiliated Defendants (as that term is used in this Court's *Order on Mediation Program* [Dkt. No. 394] (the "Mediation Order")). The Official Committee expects that successful mediations will result in Non-Affiliated Defendant contributions of additional sums to the Claimants' Compensation Fund in exchange for injunctions and releases from liability to be included in and provided by a Chapter 11 plan.[3]

10. Significantly, consolidation and centralization of the State Court Actions will protect the Claimants' Compensation Fund by preventing piecemeal litigation against third-party defendants like Insight – litigation which may, as this Court has recognized, result in substantial, liquidated indemnification claims against the Estate:

> If the Court were to decline to assert jurisdiction over the state-court cases, it might make it difficult or impossible to resolve the entire litigation in an equitable or efficient manner. Any cases that

---

[3] See Joint Motion of Plaintiff Paul D. Moore as He is Trustee of the Chapter 11 Estate of New England Compounding Pharmacy, Inc., Defendants, Barry Cadden, Lisa Conigliaro Cadden, Gregory Conigliaro, Carla Conigliaro and Reach-And-Apply Defendants, Ameridose LLC, GDC Properties Management, LLC and Medical Sales Management for Approval and Entry of Agreed-Upon Order Establishing Protocol for Settlement Negotiations and Communications, *Official Committee of Unsecured Creditors v. Cadden, et al.*, Adv. Pro. 13-01040-JMB (Bankr. D. Mass), ¶ 20 (under the plan, "potentially liable parties, including the allegedly culpable insiders of the Debtor, would contribute funds in amounts to be negotiated into a common fund. To ensure finality, and to induce potentially liable parties to contribute to the fund, the Trustee contemplates the chapter 11 plan would provide third party releases to those potentially liable parties who make the substantial contributions the Trustee envisions will be required by such parties.").

remain pending in state court could ultimately result in large judgments and corresponding claims for contribution or indemnity against the estate of NECC.

New Eng. Compounding Pharm. Prods. Liab. Litig., 496 B.R. at 263.

11. Any such claims, in turn, would pose serious dangers to victims' recoveries. As this Court explained,

> [p]ursuant to the bankruptcy code, such claims would normally have to be considered on equal footing with the claims of injured plaintiffs against the estate as claims of unsecured creditors. Because all unsecured creditors are normally paid *pari passu* (that is, proportionally and without preference) based on the amount of their claims, <u>even one large contribution or indemnity claim against the estate could greatly diminish, or virtually eliminate, the amount available to be paid to the remaining claimants</u>.

Id. (emphasis added). Transferring the State Court Actions to this Court would thereby ensure that the Claimants' Compensation Fund is protected from these claims, and can be distributed, as intended, to victims.

12. In addition, consolidation and centralization will promote and facilitate mediation by Non-Affiliated Defendants transferred into this multi-district litigation by, *inter alia*, (i) making the mediation vehicles currently in place more readily available to those parties, and (ii) enabling this Court to provide consolidated case management (such as stays of discovery pending mediation) to allow mediation to proceed efficiently and expeditiously. The Official Committee submits that centralizing the State Court Actions in this Court will provide Insight with opportunities to take advantage of the ongoing global mediation efforts being overseen and supervised by the Court. Indeed, this Court has already recognized the importance of centralizing proceedings related to NECC's tainted steroidal injections, like the State Court Actions, by providing avenues through which to resolve consensually the claims of parties who may have indemnification, contribution, reimbursement or other claims against the NECC Estate

for the benefit of the injured claimants.  See, e.g., Mediation Order.

13.     Consolidating and centralizing the State Court Actions will also avert the other significant and costly consequences of piecemeal litigation in state courts.  For example, as this Court has recognized, "allowing some state-court cases to proceed without consolidation in the MDL creates the possibility of inconsistent rulings or judgments on factual or scientific issues that may greatly complicate the resolution of these matters."  New Eng. Compounding Pharm. Prods. Liab. Litig., 496 B.R. at 263-64.  Transferring the State Court Actions will, *inter alia*, foreclose such inconsistent rulings or judgments.  "[L]itigation in multiple courts also threatens to impose significant discovery burdens, as discovery from many of the same people and entities may be sought on multiple occasions."  Id. at 264.  Conversely, transfer will permit economical, targeted, and non-redundant discovery.  Finally, in the event the State Court Actions are not transferred, those claims will necessarily implicate NECC and its Chapter 11 Trustee — either through discovery issues and/or the assertion of liquidated indemnification and contribution claims against the Debtor — resulting in unnecessary and wasteful taxation and depletion of the Estate's already-limited resources.

14.     Understandably, this Court has already concluded that "the most efficient use of the limited resources of the judicial system, and the fairest and most efficient distribution of the assets of the estate, would be for all of the related cases to be consolidated in one court.  Abstention would be counterproductive to that end."  Id. at 273.

15.     In sum, transfer of the State Court Actions to this Court not only promotes 28 U.S.C. § 157(b)(5)'s "obvious purpose of giving particular priority to the centralization of bankruptcy-related personal injury claims in a single forum," Twin Labs., 300 B.R. at 840-41; see also New Eng. Compounding Pharm. Prods. Liab. Litig., 496 B.R. at 272 (noting the strong

Congressional policy to centralize the determination of personal injury and wrongful death claims in bankruptcy cases), but will also protect and enhance the Claimants' Compensation Fund and facilitate the ongoing mediation efforts between Estate and claimant representatives, on one hand, and Non-Affiliated Defendants, on the other hand. Under the present circumstances, discretionary abstention should be denied.

## CONCLUSION

16. As this Court has recognized, "decisions on factual and legal issues as to liability and damages in all of the state-court cases will likely have tremendous import on the bankruptcy proceedings and the reorganization plan. This is particularly true — indeed, determinative — with respect to cases against third-party defendants who have already asserted their own claims against NECC." New Eng. Compounding Pharm. Prods. Liab. Litig., 496 B.R. at 273. Insight has now asserted its claims against NECC through the proper procedural vehicle, a proof of claim in the Debtor's Chapter 11 case. Centralizing the State Court Actions in this Court is of paramount importance to promoting the "carefully crafted system for the orderly administration" of NECC's estate. See id. at 272. Accordingly, for the reasons set forth in this Joinder, the Transfer Motion, and the accompanying Memorandum of Law, the Official Committee respectfully requests that this Court: (a) grant the Transfer Motion; (b) transfer the State Court Actions to this Court for all purposes; and (c) grant such other and further relief as this Court deems necessary or appropriate.

*[Remainder of this page intentionally left blank]*

Dated: January 6, 2014
Boston, Massachusetts

Respectfully submitted,

**BROWN RUDNICK LLP**

By: /s/ David J. Molton
David J. Molton, Esq.
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801
dmolton@brownrudnick.com

and

William R. Baldiga, Esq.
Kiersten A. Taylor, Esq.
One Financial Center
Boston, Massachusetts 02111
Telephone: (617) 856-8200
Facsimile: (617) 856-8201
wbaldiga@brownrudnick.com
ktaylor@brownrudnick.com

and

Rebecca L. Fordon, Esq.
2211 Michelson Drive, 7th Floor
Irvine, California 92612
Telephone: (949) 752-7100
Facsimile: (949) 252-1514
rfordon@brownrudnick.com

*Counsel to the Official Committee of Unsecured Creditors of New England Compounding Pharmacy, Inc.*

## CERTIFICATE OF SERVICE

       I, Carol S. Ennis, hereby certify that on January 6, 2014, I caused a copy of the foregoing Joinder to be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants, by first class mail, postage prepaid.


Dated: January 6, 2014
       Boston, Massachusetts                                      /s/ Carol S. Ennis
                                                                                          Carol S. Ennis

61577604