UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
(at Boston)

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION )<br><br>This Document Relates to:<br><br>All Actions | Master File No. 1:13-md-2419-FDS<br><br>MDL Docket No. 2419 |

## AFFILIATED DEFENDANTS' BRIEF IN OPPOSITION TO THE PLAINTIFFS' STEERING COMMITTEE'S MOTION TO PARTIALLY LIFT THE DISCOVERY STAY

### INTRODUCTION

On December 23, 2013, the Plaintiffs' Steering Committee ("PSC") publicly announced that the PSC is in support of a preliminary settlement fund in excess of $100 million dollars in settlement of all claims against the Individual Defendants and certain Affiliated Defendants on terms negotiated by the Trustee of New England Compounding Pharmacy, Inc. ("NECC").

On January 6, 2014, the PSC and the Trustee filed an Emergency Motion in this MDL action to continue the deadline for filing a master complaint against the affiliated defendants ("PSC's Emergency Motion"). *See* Doc. 741. In the PSC's Emergency Motion, the PSC states that that the filing of a master complaint would be ". . . deleterious to the negotiations with the Affiliated Defendants . . . ." *Id.* at ¶ 3. On January 7, 2014, this Honorable Court allowed that motion, extending the time for the PSC to file a master complaint against the Affiliated Defendants to and including March 10, 2014.

While the filing of a master complaint at this time would certainly be deleterious, ordering that the Affiliated Defendants participate in discovery at this time would be even worse.

Simply put, the Affiliated Defendants, the PSC, the Creditor's Committee and the Trustee all need to direct their attention to ironing out the details of a proposed settlement agreement and seeking the appropriate court approval of that agreement. Proceeding with discovery at this time will only detract from that common goal. The PSC clearly embraced this when it stated:

> Although an agreement in principle has been reached, the parties are now negotiating the written terms of the settlement, a process that may take some time given the numbers of parties involved. The PSC and the Trustee believe that a postponement of the filing of a Master Complaint against the Affiliated Defendants is appropriate in order to provide the parties sufficient time to formalize and execute a full settlement agreement. There may be no need for a Master Complaint against the Affiliated Defendants if a formal settlement agreement can be reached.

*Id.* at ¶ 5.  Just as there may be no need for a master complaint if the settlement is concluded, there may be no need for discovery against the Affiliated Defendants, or, at the very least, the type of discovery necessary may be very limited. Thus, the Affiliated Defendants maintain that continuing the discovery stay is entirely consistent with the PSC's own stated beliefs and makes sense logically.

Quite unbelievably, on the heels of the PSC's Emergency Motion and the publicly announced support for the settlement agreement in principle of all claims against the Individual Defendants and certain Affiliated Defendants, the PSC continues to move forward with its motion to partially lift the stay of discovery.  *See* Doc. 534. The PSC's motion to lift the stay must be denied for at least three reasons. First, no good cause exists to lift the discovery stay as to the Affiliated Defendants, as is required by this Court's prior Order and well established case law. Second, requiring the Affiliated Defendants to participate in discovery at this time will only detract from finalizing the settlement process and potentially deplete available resources that otherwise would be used to compensate plaintiffs.  Third, by continuing the discovery stay as to

013260.000276.1892233.1

the Affiliated Defendants, this court will have the benefit of obtaining a much clearer view as to "what the litigation will look like," including what allegations may be made in the master short form complaint (if one is to be filed against the Affiliated Defendants), before deciding what discovery to order. As such, the PSC's motion should be denied.

## BACKGROUND

As this Court has repeatedly recognized, this is not your "usual" MDL. In fact, there are many factors that make this MDL unique. One factor is that the primary defendant – NECC – filed for bankruptcy on December 21, 2012. This complicates every aspect of the case because there is already a limited and potentially dwindling pool of assets. This MDL currently consists of 313 cases involving personal injury and wrongful death claims arising from the allegedly contaminated injectable steroid methylprednisolone acetate ("MPA") and other drugs compounded by NECC.

Another factor that makes this MDL unique is that the Affiliated Defendants are actively engaged in pre-discovery, voluntary settlement negotiations with the Chapter 11 Trustee in an effort to reach a resolution favorable to all parties. This factor originally caused this Court to take the unique step of staying discovery as part of a larger, elaborate plan that bridges the MDL and bankruptcy proceedings with an overall goal of preserving assets for claimants. Continuing the discovery stay pending a completed settlement agreement accomplishes the parties' overall goal of ensuring the preservation of financial resources that can be contributed to any potential settlement. The Affiliated Defendants agreed to engage in this unusual process based on the understanding that cumbersome and costly discovery would be stayed while that process was underway. It is unreasonable to change the rules now. That was the whole purpose of the discovery stay in the first place.

3

Until now, both the parties and this Court have overwhelmingly acknowledged this paramount goal. In fact, this Court's discovery stay has effectively been in place since the litigation started, ultimately recognizing the unique factors that complicate discovery in this MDL. Moreover, on June 28, 2013, this Court ordered – based on a case management order the PSC negotiated – that discovery against the Affiliated Defendants may commence only upon a showing of "good cause." Case Management Order 6 ("CMO 6"), attached as Exhibit A.  That Order states:

> H. <u>Settlement Discussions with the Affiliated Defendants</u> The trustee is currently engaged in settlement discussions with NECC and the affiliated defendants, pursuant to the Agreed-Upon Order Establishing Protocol for Settlement Negotiations and Communications entered in the chapter 11 case. Plaintiffs' lead counsel and the Creditors' Committee should be kept apprised of the status of that process to the extent permitted by the Bankruptcy Court. The Plaintiffs' Steering Committee may nonetheless commence formal discovery against any one or more affiliated defendants upon a showing of good cause to this Court.

Since June 28, Plaintiffs' counsel and the Trustee's representatives have repeatedly reported that steady progress was being made in the negotiations, the details of which are recounted at pages 7-8, *infra*.  In fact, that continued optimism was corroborated at the December 2013 conference when counsel for the Trustee announced two actual settlements and an impending settlement, all with the Affiliated Defendants or their insurance carriers.  Yet, the PSC asks this Court to lift the discovery stay simply because the parties have not reached a final, global resolution.  In its motion, the PSC cites no evidence to support its position that the discussions have slowed down, much less stalled completely, and in the face of an announced settlement the PSC cannot offer any credible evidence that discovery is suddenly a better path toward resolution.

4

013260.000276.1892233.1

While compensation for their clients is an important goal, the PSC's unwarranted impatience (with the very process they negotiated) flies in the face of recent, documented and substantial developments.

## LAW AND ARGUMENT

**I. Lifting the Discovery Stay as to the Affiliated Defendants Requires a Showing of Good Cause.**

Courts have consistently recognized that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936); *Microfinancial, Inc., v. Premier Holidays Int., Inc.*, 385 F.3d 72, 77 (1st Cir. 2004). "Trial courts enjoy a broad measure of discretion in managing pretrial affairs, including the conduct of discovery. Decisions regarding the scope of discovery . . . are ordinarily left to the informed judgment of the district judge." *Mack v. Great Atlantic and Pacific Tea Co., Inc.*, 871 F.2d 179, 186 (1st Cir. 1989) (quoting *In re Reciticel Foam Corp.*, 859 F.2d 1000, 1006 (1st Cir. 1988)); *see also* Fed. R. Civ. P. 26(b)(1) (giving courts broad discretion to control discovery); Fed. R. Civ. P. 26(c)(1) (requiring good cause to stay discovery). A court's broad discretion to control discovery is evident by this Court's orders staying discovery as to the Affiliated Defendants. *See* Exh. A at ¶ H.

Equally inherent in a court's power to stay discovery is its power to lift the discovery stay. Consistent with Paragraph H of CMO 6, courts consider several factors that weigh competing interests to determine whether "good cause" exists that warrants granting or lifting a discovery stay:

> (1) the interests of the plaintiff in proceeding expeditiously with the litigation, including the avoidance of any prejudice to the plaintiff should a delay transpire; (2) the burden that any particular aspect of the proceedings may

>impose on the defendant; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of third parties; and (5) the public interest.

*Microfinancial, Inc.*, 385 F.3d at 77; *see also Ashworth*, 229 F.R.D. 527 at 530 (same); *Nowaczyk v. Matingas*, 146 F.R.D. 169, 174 (N.D. Ill. 1993) (same); *Volmar Distributors, Inc. v. New York Post Co., Inc.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993) (same). Balancing these factors is the hallmark of a good cause analysis, "with the basic goal being to avoid prejudice." *Volmar*, 152 F.R.D. at 39. The PSC has not met its burden on any of these five factors. The reasons include:

1. The PSC has not shown why proceeding expeditiously with discovery fosters the goal of resolving the cases when, in fact, the opposite may be true.

2. The burden on the Affiliated Defendants could cripple the negotiations.

3. The Court is likely to be burdened with costly discovery disputes that do not advance the cause of efficient resolution.

4. Starting discovery does not help third parties, and the PSC has not shown otherwise.

5. The PSC has not shown how the public benefits by starting discovery.

While the PSC seems anxious to get moving on discovery, they have not shown how it advances the ball more efficiently or swiftly than the process in place.

**II. No Good Cause Exists to Lift the Discovery Stay and the Affiliated Defendants will be Prejudiced.**

    A.    *Progress is being made toward settlement.*

Here, there is no good cause to lift the discovery stay as to the Affiliated Defendants. The PSC has always acknowledged that the discovery stay would remain in place as long as the settlement discussions were proceeding. The premise of the PSC's motion to partially lift the

6

013260.000276.1892233.1

discovery stay rests on the fact that settlement negotiations have not yielded "sufficient progress toward resolution." Doc. 534 at 2. While the PSC's motion was filed before settlement with the Affiliated Defendants had been reached in principle, even at the October 2013 hearing before this Court a representative of the PSC stated to the Court that "all the parties are acting in . . . good faith, and there has been some very substantial progress from [his] perspective personally since Labor Day." Status Conf. Tr. 38:5-8, Oct. 8, 2013, attached as Exhibit B.  The PSC expressed similar optimism at the November conference.  Status Conf. Tr. 15:10-16, Nov. 7, 2013, attached as Exhibit C. And at the December 13, 2013 case management conference counsel for the Trustee stated:

> I would inform the Court that we've reached agreement with NECC's primary and excess insurers subject to final documentation, which will be facilitated by the finalization of settlements with the individual defendants.  We've reached agreement with one of the insurers for another affiliated defendant, and we are close with yet another affiliated defendant insurers.  The process with respect to negotiating those individual settlements is continuing.  The creditors' committee is engaged in that process.  A full meeting of the creditors' committee, which includes Attorney Sobol and Lipton, who are also on the PSC, is scheduled for next week to discuss the various issues regarding the insider settlement.

Status Conf. Tr. 49:10-14, Dec. 13, 2013, attached as Exhibit D.  Furthermore, even more recently the PSC publicly acknowledged progress in the negotiations.[1]  This is documented

---

[1] Several members of the PSC were quoted in media publications indicating that a preliminary settlement had been reached with insurers and owners of NECC and affiliated entities.  *See*, *e.g., Settlement reached over deadly US meningitis outbreak*, http://www.reuters.com/article/2013/12/24/us-necc-meningitis-settlement-idUSBRE9BN01Y20131224, (posted Dec. 23, 2013; link last accessed Jan. 6, 2014) (quoting Thomas Sobol, a partner at Hagens Berman Sobol Shapiro representing the plaintiffs' steering committee, who called the settlement agreement "a big step forward in getting justice for victims."); *see also Preliminary Settlement Agreements Exceeding $100M in NECC Deadly Meningitis Outbreak Litigation Cautiously Announced by Plaintiffs' Steering Committee*,
http://www.businesswire.com/news/rxtimes/20131223005839/en/Hagens%C2%A0Berman%C2%A0Preliminary-Settlement-Agreements-Exceeding-100M- (posted Dec. 24, 2013; link last accessed Jan. 6, 2014).

progress, as opposed to the PSC's subjective impatience. Additionally, both the Trustee and the Creditor's Committee have acknowledged their satisfaction with settlement negotiations and it is anticipated that the Trustee will also file a brief opposing the PSC's motion.

In the face of this undeniable progress, the PSC has shown no evidence that warrants lifting the discovery stay. It has not met its burden and its motion should be denied. The system is operating precisely as designed by CMO 6 and should not be changed (i.e. "if it ain't broke, don't fix it").

      B.    *Lifting the discovery stay will negatively impact settlement proceeds.*

The PSC cannot deny the correlation between active discovery and the resulting black hole that could devour potential settlement proceeds. At the MDL status conference on September 12, 2013, the issue of initiating medical record collection was raised by counsel for Ameridose. Lead counsel to the PSC objected, arguing "if the affiliated defendants are settling, they have no dog in this fight . . . if the affiliated defendants are going to be out of this case in 30 days, two months, I'm not saying they are, but if that comes to pass, <u>then starting this process of collecting medical records and expending great sums of money, doing that becomes hard to understand</u> why the affiliated defendants have an interest pushing that." Status Conf. Tr. 48:19-49:10, Sept. 12, 2013, attached as Exhibit E (emphasis added). Everyone knows that starting discovery will be costly. That cost is clearly not justified given the admitted, substantial progress that has been made in the settlement negotiations.

One example is that Ameridose has engaged in preliminary discussions with the NECC Chapter 11 Trustee regarding the potential for a monetary contribution for the benefit of the tort claimants (despite the fact that it denies liability here). Such discussions, which are subject to the terms of a confidentiality protocol in place in NECC's bankruptcy case, are at a sensitive

8

juncture in terms of the strategic course and direction that Ameridose has been pursuing, and discovery in the near term will likely interfere with the negotiations.

Another example is GDC. Like Ameridose and the other so-called "Affiliated Defendants," it, too, has been involved in good-faith settlement negotiations with the Chapter 11 Trustee in an effort to reach a resolution of the claims against it. GDC believes that substantial progress has been made towards achieving that goal. No one has suggested to GDC that it has not been responsive, cooperative, or reasonable in its settlement negotiations or that it has not acted in good faith to resolve the claims against it.

Furthermore, starting discovery will have to occur at the <u>most inefficient</u> level. Discovery against NECC (and its principals) is stayed by operation of the Bankruptcy Code. That means the PSC would have to start discovery with parties who not only may be on the cusp of settlement, but also some who are peripheral because they did not compound, sell, or distribute the MPA that is at the core of this litigation. Discovery on the periphery always increases the risk of disputes under F.R.C.P. 26. The cost dwarfs the potential value at this time.

Even worse, the cases cited by the PSC in its motion to partially lift the discovery stay do not support its motion because they are inapposite and easily distinguishable. As mentioned above, the parties jointly negotiated this discovery stay. The cases cited by the PSC, on the other hand, involve cases in which a discovery stay was denied pending the resolution of non-dispositive motions. *See, e.g., Qwest Comms. Corp. v. Herakles, LLC*, No. 2:07-cv-00393, 2007 U.S. Dist. LEXIS 57757 (E.D. Cal. August 8, 2007) (denying discovery stay pending resolution of motion to dismiss); *O'Neal v. NCO Financial Systems, Inc.*, No. 06-cv-16, 2006 U.S. Dist. LEXIS 83505 (S.D. Cal. November 16, 2006) (denying discovery stay pending resolution of motion to strike); *Skellerup Industries Ltd. v. City of Los Angeles*, 163 F.R.D. 598 (C.D. Cal.

9

1995) (denying discovery stay pending resolution of motion to dismiss). But this discovery stay was not implemented pending the decision of a non-dispositive motion. Rather, this discovery stay was implemented so as to permit the very thing that is bearing fruit: settlement negotiations that could result in a resolution that would entirely dispose of the need for any discovery at all. As a protection against the whims of some Plaintiffs' lawyers, and consistent with prevailing case law, CMO 6 contains a good cause requirement. Thus, the cases cited by the PSC do not stand for the general proposition that all discovery stays are disfavored.

    C.    *The Affiliated Defendants will be prejudiced if the discovery stay is lifted.*

Of course, starting discovery has consequences, and in no way increases the assets available to pay judgments or settlements. Because a resolution from settlement negotiations could possibly dispose of the need for much, if not all, of the discovery from the Affiliated Defendants, the Affiliated Defendants will be prejudiced if this Court lifts the discovery stay and requires them to allocate resources away from settlement to discovery. As mentioned, the Affiliated Defendants deny any and all liability arising from the compounding, sale, or distribution of MPA that is at the core of this litigation. To the extent that plaintiffs have alleged that Ameridose manufactured MPA, that is also denied. Every pleading emphasizes that point, as does the published medical literature about this situation.[2] Proceeding forward now with discovery will require the Affiliated Defendants to allocate resources to discovery, which entirely negates the parties' overall goal of this discovery stay: preserving financial resources for contribution to any potential settlement. The Affiliated Defendants will have no incentive to pay lawyers and electronic document vendors to engage in discovery and, at the same time, increase

---

[2] *See, e.g.,* Rachel Smith, et al., *Fungal Infections Associated with Contaminated Methylprednisolone Injections*, NEJM, 369; 17, pp. 1598-1609 (2013), attached as Exhibit F.

013260.000276.1892233.1

the funds offered to settle. The PSC, like the Affiliated Defendants, has an interest in maximizing resources toward settlement. Lifting the discovery stay at this time will prejudice the Affiliated Defendants and require them to shift the allocation of resources away from settlement to discovery costs.[3] Progress is being made. In a complex litigation such as this, it is hardly realistic to expect a resolution to occur quickly. Allowing the parties adequate time to reach a resolution is at the very essence of the jointly-negotiated discovery stay that is currently in place. That "very substantial progress" has been made buttresses the Affiliated Defendants' position that no good cause exists to lift the discovery stay at this time. Exh. B at 38:5-8.

### III. No Good Cause Exists to Lift the Discovery Stay Because the Litigation Can Continue Without Discovery from the Affiliated Defendants.

While the Affiliated Defendants will be prejudiced if this Court lifts the discovery stay, the PSC will not suffer any prejudice if the stay remains in place because the litigation can successfully continue without discovery from the Affiliated Defendants. In fact, proceeding with discovery against non-mediating, non-affiliated defendants is part of the overall plan negotiated by the parties as outlined in several of this Court's orders. *See, e.g.,* Exh. A. Furthermore, the PSC has issued approximately 90 subpoenas to pain clinics, doctors, and/or healthcare providers in an effort to obtain plaintiffs' medical information and information about those entities' purchase and use of MPA.

Thus, the PSC has not shown how it has come anywhere close to pursuing the discovery it needs from non-mediating, non-affiliated defendants and the subpoenaed pain clinics, doctors,

---

[3] Not only does the ultimate goal of avoiding prejudice to the Affiliated Defendants weigh heavily against lifting the discovery stay, but the other *Microfinancial* factors equally tip the scale in the Affiliated Defendants' favor. With respect to the first factor, the PSC will not be prejudiced if the discovery stay continues because the litigation can proceed without discovery from the Affiliated Defendants. *See* Part II, *supra*. With respect to the third and fourth factors, permitting discovery to proceed and erode the Affiliated Defendants' resources will create obstacles in reaching any potential settlement, which would be an inefficient use of the Court's and parties' resources.

11

vendors and/or healthcare providers. Simply, the PSC is being impatient and not allowing the jointly-negotiated plan of CMO 6 to work as designed and intended. Absent a showing that formal discovery as to non-mediating, non-affiliated defendants has advanced, no good cause exists to lift the discovery stay as to the Affiliated Defendants because the litigation can successfully continue without any prejudice to the PSC amidst settlement negotiations.

## CONCLUSION

For the foregoing reasons, the PSC's motion to partially lift the discovery stay as to the Affiliated Defendants should be denied.

| | |
|---|---|
| **/s/ Richard A. Dean** | **/s/ Robert H. Gaynor** |
| Richard A. Dean, Esq. | William J. Dailey, Jr., Esq. |
| Matthew P. Moriarty, Esq. | Robert H. Gaynor, Esq. |
| TUCKER ELLIS | SLOANE & WALSH, LLP |
| 950 Main Avenue | Boston, MA 02108 |
| Suite 1100 | (617) 523-6010 |
| Cleveland, OH 44113 | wdaileyjr@sloanewalsh.com |
| matthew.moriarty@tuckerellis.com | rgaynor@sloanewalsh.com |
| | |
| *Counsel for Ameridose, LLC* | *Counsel for Individual Defendants Barry Cadden, Lisa Conigliaro-Cadden, Doug Conigliaro, Carla Conigliaro, Greg Conigliaro, and Glenn Chin* |
| | |
| **/s/ Joseph P. Thomas** | **/s/ Dan Rabinovitz** |
| Joseph P. Thomas, Esq. | Dan Rabinovitz, Esq. |
| ULMER & BERNE, LLP | MICHAELS, WARD & RABINOVITZ, LLP |
| 600 Vine Street, Suite 2800 | One Beacon Street, 2nd Floor |
| Cincinnati, OH 45202 | Boston, MA 02108 |
| (513) 698-5000 | (617) 350-4040 |
| jthomas@ulmer.com | dmr@michaelsward.com |
| | |
| *Counsel for GDC Properties Management, LLC* | *Counsel for Medical Sales Management, Inc.* |

013260.000276.1892233.1

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on January 8, 2014, a true and exact copy of the foregoing was filed with this Panel's CM/ECF filing system, thereby providing electronic notice to those counsel of record listed below who are registered users of the system.

*/s/ Richard A. Dean*
*One of the Attorneys for Attorney for*
*Defendant Ameridose, LLC*
