## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LAIBILITY LITIGATION <br><br> This Document Relates to: <br>    All Cases | Master File No. 1:13-MD-2419-FDS <br> MDL Docket No. 2419 |
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY CASES <br><br> This Document Relates to: <br> All Cases | |

## MEMORANDUM OF LAW IN OPPOSITION TO TRUSTEE'S RENEWED MOTION TO TRANSFER AND IN SUPPORT OF RENEWED MOTION FOR ABSTENTION

The Court should deny the Chapter 11 Trustee's Renewed and Supplemental Motion to Transfer Additional Personal Injury Tort and Wrongful Death Cases to this Court Pursuant to 28 U.S.C. §§ 1334 and 157(b)(5) for three reasons. *First*, the fact that Insight Health Corp. has filed a proof of claim does not give this Court related-to jurisdiction over the Roanoke Gentry Locke Plaintiffs.[1] Insight's contribution and indemnity claims remain contingent and—as the Trustee himself acknowledges—they will be disallowed or subordinated to the claims of NECC's tort

---

[1] The Roanoke Gentry Locke Plaintiffs are parties represented by the law firm Gentry Locke Rakes & Moore LLP who have filed personal injury and wrongful death claims against nondebtor third-party defendants in Virginia state court—specifically, Sandra F. Artis; Dana Marlene Bradley; Ronnie A. Brown; Ronald T. Courtney; Trudy R. Epperly; Barbara J. Filson; Zachary Lucas Foutz, a Minor, by His Parents and Next Friends, Benjamin T. Foutz and Andrea L. Foutz; Robert Earl Harris, Jr.; Julian D. Holbrook; Robert Dana Bender, Executor of the Estate of Ralph James Irace, Jr., Deceased; Chester T. Kalinoski; Pauline R. McFarlane; Odessa M. Shuck; James Wirt Smith, Jr.; Randolph E. Smith; Patricia S. Brown, John D. Spicer, and Jenae S. Patsell, Executors of the Estate of Louis B. Spicer, Deceased; Rose M. White; Richard A. Whitlow; and Sharon G. Wingate, Executor of the Estate of Douglas Gray Wingate, Deceased.

5002/684/6522972v2

creditors. They can have no conceivable effect on the bankruptcy estate. *Second*, the Court must abstain from exercising jurisdiction under the plain language of 28 U.S.C. § 1334(c)(2). *Third*, the Court should continue to abstain from exercising jurisdiction under 28 U.S.C. § 1334(c)(1) in the interests of justice, comity, and respect for State law. New England Compounding Pharmacy, Inc.'s ("NECC") owners and insurers have reached an agreement in principle regarding settlement with the Trustee, the Official Committee of Unsecured Creditors, and the Plaintiffs' Steering Committee. There is thus almost no chance that claims against NECC or its insiders will ever be tried, so there is little reason to transfer the Roanoke cases to the MDL for discovery relating to those claims. Further, the Roanoke cases will be swiftly resolved if they are left in Virginia. The bellwether Roanoke case is set for trial on April 21, 2014.

## BACKGROUND

1. **The Roanoke Gentry Locke Plaintiffs sue nondebtor defendants on state-law claims in Virginia state court.**

At issue here are nineteen lawsuits that the Roanoke Gentry Locke Plaintiffs filed in Virginia state court against nondebtor defendants including Insight. Those suits have proceeded rapidly. The state court has entered a scheduling order and granted partial motions for summary judgment in ten of the nineteen cases. The bellwether case, Sharon Wingate's suit, it set for trial starting April 21, 2014. Discovery is nearly complete. Depositions of the relevant local parties have been taken. Wingate has disclosed her experts, and the defense expert disclosures are due on February 5. The state-court judge has made it clear that trial will proceed as scheduled.

The Roanoke Gentry Locke Plaintiffs' state-court complaints all assert substantially the same claims, which raise unique – and in some instances unsettled – state-law causes of action based *solely* on the activity of the nondebtor defendants. Wingate's Amended Complaint is

representative and it is attached for the Court's reference as **Exhibit 1**.[2] It details—and attaches

documents showing—Insight's willful and active misconduct.

   2. **NECC declares bankruptcy and the Trustee tries to transfer all cases—including the Roanoke cases—to this Court.**

Faced with numerous lawsuits concerning its tainted drugs, New England Compounding

Pharmacy ("NECC") sought bankruptcy protection. This Court has recognized, however, NECC

has few assets other than insurance policies. *See In re New England Compounding Pharmacy*

*Prods. Liab. Litig.*, 496 B. R. 256, 262 (D. Mass. 2013). The Trustee initially tried to transfer *all*

personal-injury and wrongful-death cases to this Court, including the Roanoke cases against

nondebtor defendants. The Roanoke Gentry Locke Plaintiffs opposed that motion and moved for

mandatory abstention. The Plaintiffs' Steering Committee also urged the Court to deny the

transfer motion as it applied to the Roanoke Gentry Locke Plaintiffs.

   3. **Insight tries to remove the Roanoke cases to federal court, but the Virginia District Court holds that it must abstain from exercising jurisdiction under 28 U.S.C. § 1332(c)(2).**

To assist the Trustee, Insight tried to remove the Roanoke state-court cases to federal

court in the Western District of Virginia, asserting "related-to" jurisdiction. In a sternly worded

opinion, the District Court promptly remanded the cases. *See Wingate v. Insight Health Corp.*,

No. 7:13cv00142, 2013 U.S. Dist. LEXIS 67358, at * 2 (W.D. Va. May 10, 2013). Noting the

circuit split about whether related-to jurisdiction can be asserted over tort claims against

nondebtors, the Court assumed without deciding that it had such jurisdiction. *Id*. at * 6-7. Even

so, it held that 28 U.S.C. § 1332(c)(2) required it to abstain from exercising that jurisdiction. *Id*.

at *7-9. The District Court specifically rejected Insight's argument that personal-injury and

---

[2] The Roanoke Gentry Locke Plaintiffs are in the process of amending their complaints. They all will eventually file amended complaints similar to the document attached as Exhibit 1. The amended complaints include four paragraphs filed under seal, which are not included in Exhibit 1. Those paragraphs are not relevant to this motion.

5002/684/6522972v2

wrongful-death claims against nondebtors are subject to § 157(b)(4)'s exemption from §

1332(c)(2)'s mandatory abstention requirements. *Id*. at *13.

### 4. This Court permissively abstains from exercising jurisdiction.

A few days after the Virginia ruling, this Court heard argument on the Trustee's transfer

motion. Counsel for the Committee insisted that the Roanoke cases had to be transferred because

otherwise, Insight's contribution claims would dilute the estate's payouts to injured parties

because they would rank *pari passu* with the tort claims. The Trustee and the Committee pressed

this point in post-trial briefing. (ECF Nos. 155, 156.)

After considering the arguments, the Court denied the Roanoke Gentry Locke Plaintiffs'

Motion for Mandatory Abstention. *See New Eng. Compounding Pharm.*, 496 B. R. at 276-77.

The Court granted the Trustee's motion to transfer in part, but denied it with regard to claims in

state-court proceedings like these, which did not name NECC. *Id.* at 264. The Court assumed

without deciding that it had jurisdiction of the Roanoke Gentry Locke Plaintiffs' claims based on

Insight's potential claim for common-law indemnity or contribution against NECC. *Id*. at 276-

77. It acknowledged, however, that its jurisdiction was "unclear at best." *Id*. at 274. Citing that

uncertainty, the Court abstained from asserting jurisdiction under 28 U.S.C. § 1334(c)(1) but

resolved to revisit the issue "if the balance of factors shifts over time," reasoning that a

nondebtor defendant's claim of indemnity or contribution against the debtor "would probably

permit the exercise of federal jurisdiction over the underlying matter." *Id*. at 270.

With regard to mandatory abstention, the Court acknowledged that a literal reading of 28

U.S.C. §§ 1334(c)(2) and 157(b)(4) would compel it to abstain from exercising jurisdiction, just

as Judge Wilson had concluded in Virginia. *Id.* at 271. It nonetheless determined that, when

Congress exempted "personal injury or wrongful death claims against the estate" from

4

mandatory abstention, it intended also to exempt claims against nondebtor defendants with potential contribution or indemnification claims against the estate, because those claims were functionally equivalent to claims against the estate. *Id.* at 270-72. Thus, mandatory abstention did not apply.

### 5. Insight files a proof of claim.

On December 23, 2013, it was announced that an agreement in principle regarding settlement had been reached between NECC's owners and insurers, the Trustee, the Official Unsecured Creditors Committee, and the Plaintiffs' Steering Committee. A copy of the press release is attached as **Exhibit 2**. As a result of this settlement, there will be no litigation against NECC or its insiders.

The next day, Insight accepted this Court's invitation and filed a proof of claim against NECC, which it later amended. (ECF No. 743-1). Denying liability for the injuries sustained by the Roanoke Gentry Locke Plaintiffs, Insight contended that it is entitled to recover 100% of any judgment in favor of the Roanoke Gentry Locke Plaintiffs. *See id.* at ¶ 39. It argued that all damages sustained by the Roanoke plaintiffs "were solely the result of the acts, omission, breaches, negligence, fraud and/or other violations of law by NECC." *Id.* ¶ 34.

### 6. The Trustee determines that "Insight's claim is unlikely to participate in any distribution from NECC's estate . . . ."

The Trustee then filed a renewed motion to transfer the Roanoke Gentry Locke Plaintiffs' cases to this Court. (ECF No. 732).

On December 31, 2013, the Roanoke Gentry Locke Plaintiffs demanded that the Trustee file an adversary proceeding against Insight to seek an order equitably subordinating Insight's claims against NECC. The Trustee declined. In a scholarly analysis, he explained that such action was unnecessary. The Trustee determined that, far from diluting the tort claims, "Insight's

5

claim [was] unlikely to participate in any distribution from NECC's estate to unsecured creditors" because it would be released, disallowed, or subordinated. In fact, the Trustee concluded that Insight's claim posed such little threat that it would actually be "a waste of estate time and resources to attempt to equitably subordinate Insight's claim under these circumstances." The Trustee's letter outlining his reasoning is attached as **Exhibit 3**.

## PRINCIPLES OF LAW, ARGUMENT, AND AUTHORITIES

1. **The Court does not have related-to jurisdiction over the Roanoke Gentry Locke Plaintiff's claims.**

The Trustee now insists that this Court enjoys related-to jurisdiction over the Roanoke Gentry Locke Plaintiffs because Insight has filed a proof of claim. He is mistaken.

A. **Even with its proof of claim, Insight's contingent contribution and indemnity claims against NECC are not sufficient to confer related-to jurisdiction.**

This Court enjoys original but not exclusive jurisdiction over all civil proceedings arising under Title 11, or arising in or related to cases under Title 11. 28 U.S.C. § 1334(b). The Supreme Court has cautioned that "a bankruptcy court's 'related to' jurisdiction cannot be limitless." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308, 115 S.Ct. 1493, 1499 (1995); *see also Bd. of Governors of the Fed. Reserve Sys. v. MCorp. Fin. Inc.*, 502 U.S. 32, 40, 112 S. Ct. 459, 464 (1991) (describing Bankruptcy Courts as vested with "limited authority").

There are thus limits to this Court's related-to jurisdiction, and the leading case illustrates them. In *In re PACOR, Inc. v. Higgins*, 743 F.2d 984 (3rd Cir. 1984), the plaintiff, Higgins, brought a state court action for asbestos exposure against the Philadelphia Asbestos Company, or "Pacor." *Id.* at 986. Pacor filed a third-party complaint against the original manufacturer of the asbestos, Johns-Manville Corporation, and Johns-Manville, in turn, declared bankruptcy. *Id.* Pacor tried to remove the entire controversy to bankruptcy court and then transfer it to the

Southern District of New York, where other cases against Johns-Manville were pending. *Id.* The District Court held that Higgins' original suit against Pacor was not "related to" the Johns-Manville bankruptcy proceedings and remanded the case to state court because it lacked jurisdiction. *Id.*

On appeal, the Third Circuit affirmed. It explained that a matter is "related to" a case under Title 11 when "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Id.* at 994. Specifically considering the potential contribution or indemnity claims that could arise from a state-court lawsuit between two third-parties that were unrelated to the debtor, the Third Circuit found that the state-court lawsuit would have no effect on the bankruptcy estate and was therefore not sufficiently "related to" the bankruptcy to confer jurisdiction. *Id.* at 995-96. At best, the state-court lawsuit was "a mere precursor to the potential third-party claim for indemnification by Pacor against Manville." *Id.* The Court noted that the debtor would be free to relitigate any issue in response to a later claim by Pacor, preventing any real impact on the bankruptcy estate until Pacor's action was actually brought and tried. *Id.*

Thus, despite *PACOR*'s sometimes "sweeping language, the facts of the case demonstrate a crucial limit on the legitimate exercise of subject matter jurisdiction." *In re W.R. Grace & Co.*, 591 F.3d 164, 171 (3rd Cir. 2009); *see also Celotex*, 514 U.S. at 308, 115 S.Ct. at 1499 n.6 (describing the *PACOR* test as "attempting to strike an appropriate balance" and noting its widespread acceptance among the Courts of Appeals); *Lone Star Fund V (US), LP v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (exercising jurisdiction over lawsuits against nondebtor defendants only when an indemnification agreement existed between nondebtor and debtor); *Arnold v. Garlock, Inc.*, 288 F.3d 234, 238-39 (5th Cir. 2002) (holding that absent a

7

judgment against a defendant at the time of removal, common law contribution did not confer to related-to jurisdiction); *A.H. Robbins v. Piccinin*, 788 F.2d 994, 1001 (4th Cir. 1986) (determining that related-to jurisdiction is proper only where there is a prior indemnification agreement between the nondebtor defendant and the debtor).[3]

Here, the Court lacks related-to jurisdiction over the Roanoke Gentry Locke Plaintiffs' claims, irrespective of Insight's proof of claim. Insight has only a potential, inchoate claim for contribution or indemnity against NECC. Insight's proof of claim concedes that the claim is contingent, and Insight's right to recovery depends on the Roanoke Gentry Locke Plaintiffs' recovery against Insight in the first place, and Insight's payment of the judgment. Virginia Code § 8.01-249 specifies that a cause of action for contribution does not accrue until the contributees have paid or discharged an obligation. Even then, contribution among joint tortfeasors responsible for an indivisible injury to a plaintiff is based on pro rata allocation. *See Sullivan v. Robertson Drug Co., Inc.*, 273 Va. 84, 91-92, 639 S.E.2d 250, 255 (2007). Thus, Virginia differs from other jurisdictions where a comparative fault allocation applies. It is also one of only five jurisdictions in the United States that retain pure contributory negligence.

In Virginia, if a defendant is found liable and then seeks contribution from another joint tortfeasor, it has the burden of proving that the concurring negligence of the other party was a proximate cause of the injury for which damages were paid. *Nationwide Mut. Ins. Co. v. Jewel Tea Co.*, 202 Va. 527, 531, 118 S.E.2d 646, 649 (1961). The potential contributing tortfeasor (here, NECC) would have the right to trial as to that and other defenses. *Id.* In any suit for

---

[3] The Sixth Circuit took a different approach in *In re Dow Corning Corp.*, 86 F.3d 482 (6th Cir. 1996), but this Court should not follow its lead. The circumstances in *Dow Corning* are far different from those in this case. Here, Insight is a single potential claimant, and one whose claim will be disallowed or subordinated. Further, the First Circuit has indicated that the related-to jurisdiction inquiry turns on a real case-by-case analysis, not merely cut-and-pasted language to the effect that related-to federal bankruptcy jurisdiction is "quite broad." *See Boston Reg'l Med. Ctr., Inc. v. Reynolds*, 410 F.3d 100, 107 (1st Cir. 2005). Because the broad language in *Dow Corning* applied to a factual setting completely different from the circumstances of this case, the Sixth Circuit's approach is not warranted here.

contribution, the contributing tortfeasor can produce evidence to rebut or dispute the allegations and proof of negligence and have the issues adjudicated. *Id.* Further, under Virginia indemnity law, "active negligence prevents a party from seeking indemnity altogether." *Glover v. Johns-Manville Corp.*, 525 F.Supp. 894, 906 (E.D. Va. 1979).

The fact that Insight has filed a proof of claim does not change this analysis. *See Ret. Sys. Of Ala. v. J. P. Morgan Chase & Co.*, 285 B.R. 519, 526 (M.D. Ala. 2002) ("[T]his court is hesitant to reach the conclusion that the act of filing a proof of claim in bankruptcy court is sufficient to guarantee related to jurisdiction"). Rather, *PACOR* and its progeny continue to guide the jurisdictional inquiry. When a nondebtor defendant like Insight files a proof of claim for statutory or contractual indemnification, "such that the action's outcome could *conceivably* have a *direct* impact on the debtor's estate," the bankruptcy court may possess related-to jurisdiction. *Siskin Steel & Supply Co. v. Highland North LLC,* No. 3:12cv105, 2013 U.S. Dist. LEXIS 270, at *21-22 (W.D. Pa. January 2, 2013) (emphasis in original) (citing *In re American Home Mortgage Holding*, 477 B.R. 517, 529 n. 62 (Bankr. D. Del. 2012)). Thus, courts have generally acknowledged that a nondebtor defendant's proof of claim is sufficient to confer related-to jurisdiction when an unambiguous indemnification agreement exists between the debtor and the nondebtor. *See In re Residential Capital, LLC*, 489 B.R. 36, 45-46 (Bankr. S.D.N.Y. 2013) (citing cases); *In re Exide Techs.*, 544 F.3d 196, 217 (3rd Cir. 2008); *In re Celotex Corp.,* 124 F.3d 619, 627 (4th Cir. 1997).

By the same token, courts have doubted the existence of related-to jurisdiction where—as here—the viability of the nondebtor defendant's indemnification claim was uncertain, opting instead to abstain from exercising jurisdiction. *See, e.g., Retirement Systems of Alabama v. Merrill Lynch & Co. et al.*, 209 F. Supp. 2d 1257, 1267 (M.D. Ala. 2002). Insight, of course, has

9

no statutory or contractual right to indemnification. It asserts only a claim for common-law contribution or indemnification, and that claim overlooks its own undeniable—and clearly documented—wrongdoing. The Trustee himself has such serious doubts about the viability of Insight's claim that he would not even bother to pursue an action to equitably subordinate it, deeming such action "a waste of estate time and resources" because Insight almost certainly will not participate in any distribution from NECC's estate. The Roanoke Gentry Locke Plaintiffs are aware of no case where a court has upheld related-to jurisdiction under these circumstances. After all, "common sense cautions against an open-ended interpretation of the 'related to' statutory language in a universe where everything is related to everything else . . . ." *Wingate,* 2013 U.S. Dist. LEXIS 67358 at *7 (quoting *Matter of Fedpak Sys., Inc.,* 80 F.3d 207, 214 (7th Cir. 1996)) (internal quotation marks omitted).

**B. Insight's claim will have no conceivable effect on the bankruptcy estate because it will be disallowed or subordinated.**

Insight's contingent, inchoate claim for contribution and indemnification will not have any effect on NECC's estate because it will be disallowed or subordinated to the claims of NECC's tort creditors for at least three reasons.

*First*, Insight's claim will be disallowed. That claim is largely based on alleged rights of indemnification and contribution. It is therefore subject to disallowance under 11 U.S.C. §502(e)(1)(B), which provides: "[T]he court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on . . . the claim of a creditor" if "such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution." For a claim to be disallowed under this section, three elements must be present: First, the claim must be one for reimbursement or contribution; second, the entity asserting the claim (Insight) must be liable

10

with the debtor on the claim of a creditor (the Roanoke Gentry Locke Plaintiffs); and third, the claim must be contingent at the time of its allowance or disallowance. *In re Wolverine, Proctor & Schwartz, LLC,* 436 B.R. 253, 264 (D. Mass. 2010).

All three elements are present. First, it's clear from Insight's proof of claim that it seeks both indemnity and contribution. Thus, by its terms, Insight's proof of claim asserts a claim for contribution, and its claim for indemnity is a claim for reimbursement. *See In re The Drexel Burnham Lambert Grp., Inc. v. Sorenson*, 146 B.R. 92, 95-96 (S.D.N.Y. 1992). Second, because Insight is seeking contribution or indemnity, it is "liable with the defendant on" the Roanoke Gentry Locke Plaintiffs' claims. Third, Insight's claim is and will be contingent at the time of its allowance or disallowance. Ex. 3 at 5. Insight's proof of claim concedes that its claims are contingent.  Section 502(e) "requires disallowance of a claim for reimbursement or contribution unless the claim of the original creditor has been paid in full." *Leavell v. Keanes*, 143 B.R. 212, 216 (S.D. Ill. 1990). Thus, unless and until the Roanoke Gentry Locke Plaintiffs obtain and execute on a judgment, Insight's claim will remain contingent—and therefore disallowed.

The Trustee agrees that Insight's claim will be disallowed for this reason. Ex. 3 at 3-5 ("[I]n the Trustee's judgment, it is likely Insight's claim will be disallowed, thereby obviating the need to commence litigation to subordinate that claim.").

*Second*, and alternatively, Insight's claim will be subordinated to general unsecured claims under 11 U.S.C. § 509(c). That section states: "The court shall subordinate the claim of a creditor and for the benefit of such creditor an allowed claim, . . . for reimbursement or contribution, of an entity that is liable with the debtor on, or that has secured, such creditor's claim, until such creditor's claim is paid in full, either through payments under this title or otherwise." Under § 509(c), a codebtor's claim for reimbursement or contribution – to the extent

11

that it is allowed in the first place – is subordinate to the underlying creditor's claim until such time as the codebtor has paid the underlying creditor in full. *See* Ex. 3 at 6 (quoting 4 *Collier's on Bankruptcy* ¶ 502.06[6] (16th ed. Rev. 2013)).

Again, the Trustee agrees that Insight's claim will be subordinated under this provision. *Id.* at 5-6 ("Accordingly, even if not disallowed, Insight's claim would be subordinated to general unsecured claims pursuant to operation of § 509(c).").

*Third*, 11 U.S.C. § 510(c) allows courts to subordinate all or part of an allowed claim to all or part of another allowed claim for purposes of distribution. *See, e.g., In re Wolverine, Proctor, & Schwartz*, LLC, 447 B.R. 1, 31 (Bankr. D. Mass. 2011). This equitable-subordination doctrine lets the court "take account of the misconduct of one creditor . . . and of the debts the creation of which was inequitable vis-à-vis other creditors". *In re Giorgio*, 862 F.2d 933, 938-39 (1st Cir. 1988). To that end, the court may exercise its equitable power to subordinate a creditor's claim where: (1) a creditor has engaged in some type of inequitable conduct; (2) the misconduct has caused injury to creditors or conferred an unfair advantage on the claimant; and (3) the subordination of the claim would not be inconsistent with the provisions of the Bankruptcy Code. *In re 604 Columbus Ave. Realty Trust*, 968 F.2d 1332, 1354 (1st Cir. 1992); *In re Giorgio*, 862 F.2d at 938-39; *In the Matter of Mobile Steel Co.*, 563 F.2d 692, 699-700 (5th Cir. 1977); *In re Forest St. LLC*, 409 B.R. 543, 572-73 (Bankr. D. Mass. 2009).

Here, Insight engaged in illegal and unfair conduct, harming the Roanoke Gentry Locke Plaintiffs. To begin with, Insight was complicit with NECC in violating applicable law for purchases from a compounding pharmacy. Massachusetts law allows pharmacists to dispense medications only pursuant to a valid prescription from an authorized practitioner for a specific patient. Insight did not provide these prescriptions for its bulk purchases of methylprednisolone

12

acetate ("MPA") from NECC. Instead, Insight's employees have testified that Insight cooperated in NECC's misconduct by providing a list of forty to fifty names of previous patients—who had already been treated by Insight—to receive a new shipment of 200 doses of unprescribed drugs. Those drugs arrived in sub-packages containing five vials of MPA with the name of one historic patient affixed to the outside of the sub-package. The historic patient named on the label, and in whose name the drugs were ordered, would almost certainly not be the patient receiving these doses.

This type of patient information is clearly protected under HIPAA, but Insight disclosed it to NECC for reasons unrelated to facilitating treatment for the "named" patient, without the consent of the patient, and without notification to the patient. What is more, Virginia law—to which both Insight and NECC were subject—also prohibits pharmacists from engaging in the regular compounding or the compounding of inordinate amounts of any drug products that are essentially copies of commercially available drugs. Va. Code § 54.1-3410.2(I).

In addition to being complicit in NECC's misconduct, Insight also pawned NECC's MPA off to its patients as the trademarked and FDA-regulated Pfizer drug, Depo-Medrol:

- Insight advertised to prospective patients on its website that "Depo-Medrol" was used for epidural steroid injections;

- Insight provided written materials to patients stating that they had received "Depo-Medrol";

- Surgical reports for each patient stated that the patient had received "Depo-Medrol";

- Patient invoices from Insight described the drug as "Depo-Medrol"; and

- Insight's billing information for insurance used the National Drug Code for the generic version of the Pfizer drug manufactured by TEVA (0703-0051-01) and the HCPCS Code for a non-compounded drug.

Finally, Insight provides medical services to the general public and is held to a concomitant standard of care. Yet Insight's Center Manager—who was in charge of purchasing

13

the MPA—testified that he did not know that NECC was a compounding pharmacy, or even what a compounding pharmacy was in the first place. According to its own employees, Insight conducted no due diligence in choosing the source of the MPA that it routinely passed off as the FDA-regulated Pfizer drug, Depo-Medrol. Even given its shady process of using historic patient information to order future doses of MPA, in violation of state and federal law, Insight saw no need to investigate conditions at its distant drug source surrounded by a garbage facility.

This conduct clearly warrants the equitable subordination of Insight's claim. First, it involved fraud and illegality—namely, the procurement of future doses of MPA using historic patient information, in violation of state and federal law. Second, it harmed other creditors and conferred an unfair benefit on the bad actor, Insight. Insight's conduct exposed its patients to tainted MPA with devastating, and even fatal, consequences. And it benefited Insight, because Insight profited from its illegal transactions. Third, equitable subordination is consistent with the Bankruptcy Code in light of Insight's grossly unfair conduct.

## 2. Even if the Court has jurisdiction, 28 U.S.C. § 1334(c)(2) requires it to abstain from exercising that jurisdiction.

Even if the Court determines that it has related-to jurisdiction, 28 U.S.C. § 1334(c)(2) requires it to abstain from exercising that jurisdiction. Five elements are needed to trigger mandatory abstention under that statute: (1) a timely motion requesting abstention; (2) an essentially state-law cause of action; (3) a non-core proceeding—one that is only "related to" the bankruptcy case; (4) a lack of federal jurisdiction absent the existence of the bankruptcy case; and (5) an ongoing state-court proceeding that be timely adjudicated. *New Eng. Compounding Pharm.,* 496 B.R. at 270 n.10. All are present here.

In its May ruling, however, this Court declined to apply 28 U.S.C. § 1334(c)(2) based on its reading of 28 U.S.C. § 157(b)(4). *Id.* at 270-72. Section 157(b)(4) provides that "non-core

14

proceedings *under § 157(b)(2)(B)* . . . shall not be subject to the mandatory abstention provisions of § 1334(c)(2)," (emphasis added). The only non-core proceedings under § 157(b)(2)(B) are "liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims *against the estate* for purposes of distribution in a case under Title 11." 28 U.S.C. § 157(b)(2)(B) (emphasis added). The personal-injury and wrongful-death actions at issue in the Roanoke Gentry Locke Plaintiffs' cases are *not* claims "against the estate" of the debtor. They are against nondebtors. Thus, on a plain reading, 28 U.S.C. § 157(b)(4) does not apply—just as Judge Wilson determined earlier in this case.

This Court disagreed, looking beyond the statutory language in an effort to discern Congress's intent in crafting the exception. The Court reasoned that, if the underlying personal-injury or wrongful-death claim *against a nondebtor* could result in a contribution claim against the debtor, then that underlying claim met the statutory criteria for the exception under § 157(b)(2)(B) as a "personal injury or wrongful death claims *against the estate*." *New England Compounding Pharmacy Prods.*, 496 B. R. at 272. Accordingly, mandatory abstention did not apply. *Id.*

That conclusion is logically problematic and at odds with the remainder of the Court's opinion. On one hand, the Court appropriately doubts whether a potential contribution or indemnity claim can render a personal-injury claim against a nondebtor "*related to*" a bankruptcy proceeding, *id.* at 269—but at the same time, it characterizes such a claim against a nondebtor as being, in substance, *an actual claim against* the debtor's estate, *id.* at 270-72. The two holdings are irreconcilable. As Judge Wilson noted when analyzing the same question earlier in this case, "'[I]t is a far step' indeed to find 'that a claim against a non-debtor is actually a claim against the estate for purposes of Section 157(b)(2)(B).'" *Wingate*, 2013 U.S. Dist. LEXIS

15

67358 at *14 (quoting *In re Federal-Mogul Global, Inc.*, 282 B.R. 301, 313 (Bankr. D. Del. 2002)). Under any analysis, it must be easier for one item to be *related to* another than it is for that item to be *equivalent to* it; the former simply sets a lower threshold than the latter.

### 3. The Court should abstain from exercising jurisdiction under 28 U.S.C. § 1334(c)(1).

Finally, the Court should abstain under § 1334(c)(1), which allows courts to abstain in the interests of justice, comity with State courts, or respect for State law. Courts have translated these three considerations into a twelve-factor test:

1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention;

2) the extent to which state law issues predominate over bankruptcy issues;

3) the difficulty or unsettled nature of the applicable state law;

4) the presence of a related proceeding commenced in state court or other nonbankruptcy court;

5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334;

6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

7) the substance rather than form of an asserted "core" proceeding;

8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

9) the burden on the court's docket;

10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

11) the existence of a right to a jury trial; and

12) the presence in the proceeding of nondebtor parties.

*New Eng. Compounding Pharm.*, 496 B. R. at 273.

On balance, those factors weigh in favor of abstention. As to the first prong, transfer of the Roanoke cases will not facilitate the efficient administration of the NECC estate. The

Roanoke Gentry Locke Plaintiffs' claims against Insight are not products-liability claims that will turn on facts about NECC's drugs; they are based on Insight's own, active misconduct, not facts common to all of the NECC claims. Insight's claim, such as it is, will be disallowed or subordinated to the claims of the tort victims. *See* Ex. 3. It will have no effect on NECC's estate—which is inadequate to satisfy even its obligations to tort victims, let alone potential contribution claims that may one day arise in other, unrelated cases. No one expects NECC to raise or litigate any legitimate defenses. In fact, NECC and its insiders have reached an agreement in principle concerning settlement with the Trustee, the Committee, and the Plaintiffs' Steering Committee. There is almost no possibility that claims against NECC or its insiders will ever be tried in this or any other jurisdiction. By extension, there is little reason to transfer the Roanoke cases into the MDL to participate in discovery related to those claims. Abstention will therefore have scant effect on the efficient administration of its estate.

As to the second, third, and fourth prongs, concerning the presence of state-law issues, the Roanoke state-court complaints involve *only* matters of Virginia law, and some implicate unique or unsettled aspects of it. For example, Count V of each complaint seeks recovery for fraud because the nondebtor defendants deceived the plaintiffs (and their insurers and primary healthcare providers) about the quality, identity, and source of the MPA injected into their bodies. The Roanoke Gentry Locke Plaintiffs allege—and attach documents showing—that Insight provided literature to patients stating that they were being injected with the name brand, FDA-regulated drug Depo-Medrol. *See* Am. Compl. ¶¶ 160-61, 277-82; Ex. C to Am. Compl. Additionally, Insight's billing to patients contained intentionally false coding, as part of a long-term practice designed to keep insurers from detecting the use of compounded drugs. *See* Am. Compl. ¶¶ 164-178, 287-93; Ex. B to Am. Compl. These fraud claims present at least two issues

17

that are unsettled under Virginia law: (1) whether fraud on a third party (e.g., an insurance company or primary care physician) can constitute fraud on a plaintiff;[4] and (2) whether a pattern of fraud that allows bad practices to continue can be asserted by an individual plaintiff, particularly where the misrepresentation occurs after the injection. Likewise, handling wrongful-death and personal-injury claims within the context of the Virginia Consumer Protection Act presents a far from mundane judicial task. The Virginia Drug Control Act and negligence per se claims are also complex, and the medical negligence aspects of all of the claims will be regulated by Virginia statute. Further, the Roanoke state-court proceedings have not just commenced, but they are well underway. The bellwether case is less than 100 days from trial. Discovery is nearly complete and the plaintiff has disclosed her experts.

As to item five, there is no basis for jurisdiction in this Court other than § 1334.

Items six through eight test the relation between the proceeding to be transferred and the bankruptcy. State-law claims in Roanoke state court against nondebtor defendants are about as remote from the NECC bankruptcy as they could be. There are no core proceedings involved.

Item nine looks to the burden on the Court's docket. The Roanoke state-court cases are proceeding swiftly, and the first case is set for trial in April. There is no need to pile those cases onto this Court's already crowded docket.

Item ten looks to forum shopping. There is none involved here.

Item eleven looks to the existence of a right to a jury trial. The Roanoke Gentry Locke Plaintiffs have a right to a jury trial, which is sacred under Virginia law. *See* Va. Const. art. I, § 11 ("That in controversies respecting property, and in suits between man and man, trial by jury is

---

[4] Courts in other jurisdictions have recognized similar claims. *See, e.g., Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 578 (Tex. 2001); *see also IQ Holdings, Inc. v. Arthur Andersen, LLP* (*In re WorldCom Sec. Litig.*), No. 02-civ-3288, 2006 U.S. Dist. LEXIS 21385, at *17-18 (S.D.N.Y. 2006); Restatement (Second) of Torts, § 533 (1977); *Banca Del Sempione v. Provident Bank*, 75 F.3d 951, 962 (4th Cir. 1996) (applying Maryland law).

preferable to any other, and ought to be held sacred."). Transferring their cases to this Court under an expansionist view of related-to jurisdiction will rob them of that right. And the Roanoke Gentry Locke Plaintiffs are entitled to a trial by a jury of their *peers*. The life experiences, expectations, and values of people from rural Appalachia differ markedly from those of the citizens of cosmopolitan Boston. It is hard to assume any meaningful peership among these plaintiffs and such potential jurors. Each of the Plaintiffs in the Roanoke cases has chosen to make his or her life in the mountains of Southwest Virginia. Many of them have very limited means, are aged, or are in extremely poor health. All of the witnesses they would call in their cases live near their homes. Forcing them to bring their local cases to Boston for a jury trial could well insure that none of these cases would ever be heard by a jury.

The Trustee assumes that he can transfer the Roanoke cases to this Court for purposes of discovery only, as if MDL jurisdiction were the basis for the transfer. In fact, he is conflating two distinct processes. If this Court accepts the Trustee's invitation to transfer the Roanoke cases under its related-to jurisdiction, it has accepted the cases for good. There is no procedure for returning them to Virginia once the Trustee's purposes have been served.

Lastly, item twelve looks to the presence of nondebtor parties. All of the parties in the Roanoke cases are nondebtor parties, and all of them except Insight wish to remain in Virginia.

## CONCLUSION

The Court should deny the Trustee's motion and/or abstain from exercising jurisdiction.

## REQUEST FOR ORAL ARGUMENT

The Roanoke Gentry Locke Plaintiffs request a hearing on the issues presented herein.

19

ROANOKE GENTRY LOCKE PLAINTIFFS


/s/ J. Scott Sexton
Of Counsel


J. Scott Sexton, Esq. (VSB No. 29284)
Anthony M. Russell, Esq. (VSB No. 44505)
GENTRY LOCKE RAKES & MOORE, LLP
10 Franklin Road, S.E., Suite 800
P. O. Box 40013
Roanoke, Virginia 24022-0013
(540) 983-9300
FAX (540) 983-9400
sexton@gentrylocke.com
russell@gentrylocke.com

*Counsel for Roanoke Gentry Locke Plaintiffs*


## CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2014, I electronically filed the foregoing with the

Clerk of the Court, using the CM/ECF system, which then sent a notification of such filing

(NEF) to all counsel of record.


/s/ J. Scott Sexton


20

5002/684/6522972v2