NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
BOSTON
HOUSTON
LOS ANGELES
HANOI
HO CHI MINH CITY
ATLANTA

# DuaneMorris®

*FIRM and AFFILIATE OFFICES*

JEFFREY D. STERNKLAR
DIRECT DIAL: +1 857 488 4216
PERSONAL FAX: +1 857 401 3034
*E-MAIL:* jdsternklar@duanemorris.com

*www.duanemorris.com*

BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NEWARK
LAS VEGAS
CHERRY HILL
LAKE TAHOE
MYANMAR
OMAN
*A GCC REPRESENTATIVE OFFICE
OF DUANE MORRIS*

MEXICO CITY
ALLIANCE WITH
MIRANDA & ESTAVILLO

January 7, 2014

VIA E-MAIL
VIA REGULAR MAIL

J. Scott Sexton, Esq.
Gentry Locke Rakes & Moore, LLP
SunTrust Plaza
10 Franklin Road S.E., Suite 800
Roanoke VA  24011

> Re: **In re New England Compounding Pharmacy, Inc. ("NECC")**
> **Chapter 11: Case No. 12-19882-HJB**
> **Demand for Equitable Subordination Under 11 U.S.C. 510(c)**

Dear Mr. Sexton:

As you know, I represent Paul D. Moore, the duly appointed chapter 11 trustee ("Trustee") of NECC. I write in response to your letter dated and received by the Trustee on New Year's Eve, December 31, 2013, demanding that he advise you by January 10, 2014 whether he will "proceed promptly with the filing of an adversary proceeding" against Insight Health Corp. ("Insight"), to seek an order equitably subordinating Insight's claim against NECC's bankruptcy estate pursuant to 11 U.S.C. § 510(c). Your letter also advises that the parties you identify as the "Roanoke Gentry Locke Plaintiffs" will seek leave from the Bankruptcy Court to commence an adversary proceeding against Insight if the Trustee declines

**EXHIBIT 3**

DuaneMorris

J. Scott Sexton, Esq.
January 7, 2014
Page 2

your demand that he do so "promptly."[1] By copy of this letter, I am also responding to the January 6, 2014 letter to the Trustee from Patrick T. Fennell joining in your demand.[2]

For the reasons set forth below, the Trustee declines to bring the adversary proceeding you demand "promptly," but the Trustee reserves the right to do so at a later date. Further, the Trustee does not believe the "Roanoke Gentry Locke Plaintiffs" can or should be authorized to bring an adversary proceeding against Insight on behalf of NECC's bankruptcy estate. Indeed, as none of your clients appear to have filed proofs of claim, none of them is a creditor of NECC, holding an allowed claim against NECC, who properly can demand that the Trustee take action that would inure to the benefit of creditors who hold such claims or pursue such claims on their behalf. The Trustee reserves all of his rights and remedies against the Roanoke Gentry Locke Plaintiffs if any, some or all of them attempt to obtain such standing or otherwise engage in activities detrimental to the interests of NECC's bankruptcy estate and its creditors.

### A.  Summary of Basis for Declining Your Demand

#### 1.  *It is Unnecessary to File the Requested Adversary Proceeding Because Insight's Claim Likely Will Be Released, Disallowed or Subordinated Without Regard to Principles of Equitable Subordination*

What you are requesting is that the Trustee commence an entirely new adversary proceeding – a lawsuit – subject to the full range of procedural and pretrial discovery provisions of the Federal Rules of Civil Procedure (as made applicable to adversary proceedings in bankruptcy pursuant to the Federal Rules of Bankruptcy Procedure). Equitable subordination cannot be determined in a summary proceeding or by motion; acquiescing to your demand requires the Trustee to embark on a full-blown litigation track, with all the attendant delays, costs and complications.

---

[1] It appears from your letter that you are counsel to all of "Roanoke Gentry Locke Plaintiffs" and that none of them has filed a proof of claim or otherwise holds an allowed claim in the NECC bankruptcy case. Kindly forward to me copies of all proofs of claim if, as and when filed by the Roanoke Gentry Locke Plaintiffs. Also, to the extent you represent multiple parties in NECC's bankruptcy case, kindly forward to me your statement in compliance with Fed. R. Bankr. P. 2019.

[2] I hereby similarly request that Mr. Fennell forward to me his statement in compliance with Fed. R. Bankr. P. 2019. I note that Mr. Fennell advises that his clients have filed proofs of claim, unlike the Roanoke Gentry Locke Plaintiffs. I am not addressing in this response the additional issues arising from the filing of proofs of claim by Mr. Fennell's clients with respect to the pending "Transfer Motion" that Mr. Fennell references in his January 6 letter. Of course, the Trustee reserves all of his rights with regard to all such issues.

DuaneMorris

J. Scott Sexton, Esq.
January 7, 2014
Page 3

The Trustee emphatically believes commencing such an expensive and time-consuming litigation is repellant to the interests of creditors, particularly those asserting claims against NECC alleging personal injury and for whom the Trustee has made every effort to resolve matters without unnecessary cost and delay. The cost and delay of the adversary proceeding you demand likely are unnecessary, as Insight's claim is unlikely to participate in any distribution from NECC's estate to unsecured creditors, even without equitable subordination litigation, for at least three reasons. Moreover, even should it prove necessary at some point to pursue equitable subordination, there is no reason whatsoever why it is necessary or appropriate at this time.

    a.    ***Ongoing Settlement Negotiations***

First, as you know, and as discussed below, with the support and assistance of the Plaintiff's Steering Committee ("PSC") and the Official Committee of Unsecured Creditors ("Committee"), the Trustee is attempting globally to settle claims by and against third party health care providers such as Insight. In order to induce such providers to participate in mediation and efforts to settle such claims, the PSC, the Committee and the Trustee have secured orders from Judge Saylor staying litigation against mediation participants. The action you demand would be contrary to those orders and their goal of incenting mediation by additional defendants such as Insight. I anticipate health care providers participating in the settlement both will contribute substantial cash consideration to NECC's estate and will agree not to assert any claims against NECC's estate.

The Trustee's discussions with Insight regarding Insight's willingness to participate in some sort of mediation have been productive. While there is no guarantee that those discussions will result in Insight participating in mediation, let alone a final settlement with Insight, nevertheless, there is every reason for prudent optimism that Insight in fact wants to settle and resolve globally the claims against it related to NECC, and that further discussions with Insight are warranted without further litigation regarding subordination. The litigation you demand will interfere with the present, ongoing discussions with Insight and thus should not be brought now. Of course the Trustee will continue, as he has throughout this case, to involve the PSC and the Committee in any substantive settlement discussions with Insight.

    b.    ***Insight's Claim Will Be Disallowed***

Second, even absent a settlement, in the Trustee's judgment it is likely Insight's claim will be disallowed, thereby obviating the need to commence litigation to subordinate that claim. You allege (at page 3 of the memorandum included with your letter) that Insight "was complicit with NECC in violating applicable law for purchases from a compounding pharmacy." If true, then such conduct would constitute a complete or partial defense to Insight's claim under applicable non-bankruptcy law, and would be a basis to disallow or reduce Insight's claim.

J. Scott Sexton, Esq.
January 7, 2014
Page 4

DuaneMorris

Moreover, a review of Insight's most recent amended proof of claim reveals that Insight's claim is based largely upon alleged rights of indemnification and contribution from NECC. Thus, Insight's claim is subject to disallowance pursuant to 11 U.S.C. § 502(e)(1)(B).[3] Where, as here, the filing by Insight of a contingent claim for reimbursement or contribution "entails risk that the assets of the [bankruptcy] estate will be exposed to 'double-dipping' by holders of the same underlying claim against the estate, section 502(e)(1)(B) mandates disallowance of the contingent claim." *Juniper Dev. Grp. v. Kahn (In re Hemingway Transp., Inc.)*, 993 F.2d 915, 923 (1st Cir. 1993). Indeed, section 502(e)(1)(B) was enacted precisely "to prevent . . . *competition between a creditor and his guarantor* for the limited proceeds of the estate." *Hemingway*, 993 F.3d at 923 (quoting S. Rep. No. 95.989, at 65 (1978)) (emphasis in original); *Crawford v. Riley (In re Wolverine, Proctor & Schwartz, LLC)*, 436 B.R. 253, 264 (D. Mass. 2013).

For a claim to be disallowed under section 502(e)(1)(B), three elements must be present. First, the claim must be one "for reimbursement or contribution." Second, the entity asserting the claim (here, Insight) must be "liable with the debtor on . . . the claim of a creditor" (purportedly your clients). Finally, the claim must be "contingent at the time of its allowance or disallowance." *Id.* All three elements are present here.

First, it is clear from Insight's proof of claim that it seeks both indemnity and contribution. Thus, by its terms Insight's proof of claim asserts a claim for contribution, and its claim for indemnity is a claim for reimbursement. *In re Drexel Burnham Lambert Grp., Inc. v. Sorenson*, 146 B.R. 92, 95 (S.D.N.Y. 1992) (citations omitted).

Second, Insight clearly is "liable with the debtor on" your clients' alleged claims. You assert Insight is a joint tortfeasor. Indeed, Insight is not seeking recovery for its direct alleged losses. Rather, Insight is seeking compensation or reimbursement for damages that may be recovered by, *inter alia,* your clients and for which Insight ultimately may be adjudged liable. Thus, Insight is "liable with the debtor on" your clients' claims. *See Syntex Corp. v. The Charter Co. (In re The Charter Co.)*, 862 F.2d 1500, 1503 (11th Cir. 1989). Consistently, "[a]lthough section 502(e)(1)(B) may have been devised *primarily* with contract-based codebtor relationships in mind (*e.g.*, guaranties, suretyships), . . . its language ('liable with') has been found too plain and inclusive to exempt 'joint and several' tort-based obligations from disallowance, and the Bankruptcy Code elsewhere carves out no exception for this variety of co-obligation." *In re*

---

[3] Section 502(e)(1)(B) provides in pertinent part:

**(e) (1)** [T]he court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent that—

. . .

**(B)** such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution.

DuaneMorris

*Hemingway Transport, Inc., supra*, 993 F.2d at 924 (citations omitted) (emphasis in original); *In re Fiesole Trading Corp.*, 315 B.R. 198, 205 (Bankr. D. Mass. 2004) (citing *In re Baldwin-United Corp.*, 55 B.R. 885, 890 (Bankr. S.D. Ohio 1985) ("the phrase 'an entity liable with the debtor' is broad enough to encompass any type of liability shared with the debtor, whatever its basis.")).

Third, Insight's claim is and will be contingent at the time of its allowance or disallowance. Insight's proof of claim concedes that its claim is contingent. Insight's rights of recovery on its claim for indemnification and contribution depend upon recovery of your clients against Insight and Insight's payment in full to your clients. *See id; cf. The Windolph Trust v. Leitch (In re Kent Holland Die Casting & Plating, Inc.)*, 125 B.R. 493, 501 n.4 (Bankr. W.D. Mich. 1991) (claim not contingent because costs actually incurred and expended). Section 502(e) "requires disallowance of a claim for reimbursement or contribution unless the claim of the original creditor has been paid in full." *Leavell v. Karnes*, 143 B.R. 212, 216 (S.D. Ill. 1990), (citing H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 354, reprinted in 18 U.S. Code, Cong. & Admin. News 5963, 6310). Thus, under § 502(e)(1)(B) a claim is "contingent" unless and until the original creditor has obtained a judgment and executes on it against Insight for full payment. *Leavell v. Karnes, supra.*

Accordingly, as Insight's claim likely will be disallowed, either because NECC has valid defenses against Insight's claim or because of application of 11 U.S.C. § 502(e)(2)(B), there is no benefit to NECC's estate or to your clients to incur the costs that will be incurred if the Trustee accedes to your demand and commences an equitable subordination adversary proceeding against Insight "promptly."

### c. *Alternatively, Insight's Claim will be Subordinated Pursuant to 11 U.S.C. § 509(c)*

11 U.S.C. § 509 provides additional protection to your clients from dilution of their claims (assuming they file proofs of claim timely) by Insight's claim. In relevant part, 11 U.S.C. § 509(c) provides that "[t]he court shall subordinate to the claim of a creditor and for the benefit of such creditor an allowed claim, . . . for reimbursement or contribution, of an entity that is liable with the debtor on, or that has secured, such creditor's claim, until such creditor's claim is paid in full, either through payments under this title or otherwise."[4] Thus, by the plain language of section 509(c),

---

[4] The relationship between the parallel provisions of §§ 502(e)(2)(B) and 509 is complex. In summary, section 509 allows a creditor who has actually paid a creditor to assert a right of subrogation to the extent of such payment, subject to various limitations and exceptions. As Judge Boroff wrote in *In re Fielsole Trading Corp., supra,* 315 B.R. at 205 n.11 (internal quotations and citations omitted):

DuaneMorris

J. Scott Sexton, Esq.
January 7, 2014
Page 6

> a codebtor's claim for reimbursement or contribution, to the extent
> allowed, is subordinate to the underlying creditor's claim until
> such time as the codebtor has paid the underlying creditor in full.
> Accordingly, if the codebtor has partially paid the underlying
> creditor, then that portion of the reimbursement or contribution
> claim, which would not be disallowable under section 502(e)(1)(B)
> because it would no longer be contingent, would nonetheless be
> subordinated to the underlying creditor's claim until the underlying
> creditor was paid in full.

4 *Collier's on Bankruptcy* ¶ 502.06[6] (16th ed. rev. 2013).

Accordingly, even if not disallowed, Insight's claim would be subordinated to general unsecured claims pursuant to operation of § 509(c). It is a waste of estate time and resources to attempt to equitably subordinate Insight's claim under these circumstances.

### 2. *It is Unclear from the Materials You Have Provided that An Adversary Proceeding to Equitably Subordinate Insight's Claim Pursuant to 11 U.S.C. § 510(c) is Meritorious*

As noted, the Trustee reserves the right to seek equitable subordination of Insight's claim at a time and under conditions the Trustee deems appropriate. Thus, it would be inappropriate for me to disclose the Trustee's thinking and analysis of the potential equitable subordination claims. Nevertheless, it is useful to emphasize that the remedy of equitable subordination is usually directed towards misconduct arising in three situations.[5] It is not clear from the

> [T]he surety or codebtor has a choice; to the extent a claim for
> contribution or reimbursement would be advantageous . . . a surety
> or codebtor may opt for reimbursement or contribution under
> 502(e). On the other hand, to the extent that the claim for such
> surety or codebtor by way of subrogation is more advantageous . . .
> the surety or codebtor may elect subrogation under section 509.

It appears Insight has elected to assert a claim for contribution or reimbursement, subject to § 502(e), rather than a subrogation claim pursuant to § 509(a). Nevertheless, both types of claims are subordinated until the original creditor is paid in full pursuant to section 509(c). *Id.*

---

[5] To wit, (1) when a fiduciary of the debtor misuses his position to the disadvantage of other creditors; (2) when a third party dominates or controls the debtor to the disadvantage of others; (3) when a third party defrauds the other creditors. *Capitol Bank & Trust Co. v. 604 Columbus Ave. Realty Trust (In re 604 Columbus Avenue Realty Trust),* 968 F.2d 1332, 1359-60 (1st Cir. 1992); *Riley v. Tencara, LLC (In re Wolverine Proctor & Schwartz, LLC)*, 447 B.R. 1, 33 (Bankr. D. Mass. 2011).

DuaneMorris

information you have provided to me that any of these three situations exist here. Moreover, generalized policy considerations or broad claims of inequity or unfairness may not be sufficient. "[B]ankruptcy courts may not categorically subordinate classes of claims based on generalized policy considerations." *Merrimac Paper Co., Inc. v. Harrison (In re Merrimac Paper Co., Inc.)*, 420 F.3d 53 (1st Cir. 2005). "Instead, they must exercise their equitable discretion to decide whether or not to subordinate particular claims on a case-by-case basis." *Id.*

It appears you are not alleging that Insight was an insider of NECC. As you know, any effort to obtain equitable subordination of Insight's claim will be treated differently if Insight is an insider. "Whether the creditor is an insider or fiduciary of the debtor is fundamentally important to the level of scrutiny that courts apply to allegations of misconduct against a creditor. *In re 604 Columbus Ave. Realty Trust, supra.* While claims arising from dealings with insiders are rigorously scrutinized, if the creditor is not an insider then "evidence of more egregious misconduct such as fraud, spoliation or overreaching is necessary." *Id.* (citation omitted). "[T]he minimum level of offending conduct [in non-insider equitable subordination cases] appears to be conduct that shocks the conscience of the court." *In re Wolverine, Proctor & Schwartz, LLC, supra,* 447 B.R. at 33 (quoting DeNatale & Abram, The Doctrine of Equitable Subordination as Applied to Nonmanagement Creditors, 40 Bus. L. 417, 424-25 (1985)).

In short, "the principles associated with the doctrine of equitable subordination are well developed in the First Circuit." *Aquino v. Black (In re AtlanticRancher, Inc.)*, 279 B.R. 411, 439 (Bankr. D. Mass. 2002) (collecting cases); *see Rodolakis v. Chertoff (In re 1236 Dev. Corp.)*, 188 B.R. 75 (Bankr. D. Mass. 1985); *see also In re Clamp-All Corp.*, 233 B.R. 198, 211 (Bankr. D. Mass. 1999). The evidence you provide in support of your averments is incomplete at best. The Trustee would need to review substantially more comprehensive evidence to evaluate whether your allegations regarding the alleged wrongdoing of Insight satisfies these well-defined principles or instead are merely impermissible attempts to equitably subordinate Insight's claim based on generalized policy considerations. *Accord In re 604 Columbus Ave. Realty Trust, supra.* Accordingly, please forward to me at your earliest convenience all of the evidence that you have that you contend supports claims for equitable subordination of Insight's claim under 11 U.S.C. § 510(c) so that the Trustee may undertake a reasonable review of your evidence. The incompleteness of the evidence provided to date, and the uncertainty whether the evidence would support an equitable subordination claim against Insight, further compels the Trustee to deny your request that he commence an adversary proceeding against Insight "promptly" (without prejudice to any rights or claims the Trustee may have to equitably subordinate Insight's claim at a later date).

    *3.*    *It is Premature to Commence the Requested Adversary Proceeding*

J. Scott Sexton, Esq.
January 7, 2014
Page 8

DuaneMorris

    Even if the Trustee believed grounds existed for the immediate commencement of an equitable subordination adversary proceeding against Insight, for at least three reasons, commencement of such a proceeding would be imprudent and premature.

    First, as mentioned above, the Trustee and others (including the PSC and the Committee) are engaged in negotiations with a number of parties, including Insight, to induce them to mediate and ultimately to settle claims and maximize the money available for distribution to holders of allowed claims against NECC. It is the Trustee's judgment that commencement of the adversary proceeding against Insight now would disrupt these efforts to resolve matters consensually and globally with Insight for the benefit of all creditors. Rather than expend the limited existing funds in NECC's estate on unnecessary litigation, it is the Trustee's reasonable business judgment that settlement efforts with Insight should continue since, with relatively little cost to the estate, those discussions may result in Insight participating in some form of mediation and contributing to a fund for the benefit of all creditors. As part of a settlement, the Trustee fully expects Insight will release its claims against the estate in exchange for nondebtor releases pursuant to a contemplated chapter 11 plan.

    Second, as you note, the bar date in NECC's bankruptcy case has not yet occurred.[6] Only after the bar date has passed will it be possible to evaluate with greater precision the effect on distributions to holders of allowed claims, and the extent to which, if at all, creditors generally will benefit if Insight's claim is equitably subordinated. It is premature to engage in the difficult litigation you propose until, among other things, it is determined how creditors would be affected if the Trustee prevailed in the equitable subordination adversary proceeding.

    Third, to my knowledge there is no statute of limitations imminently occurring or other risk that an equitable subordination claim against Insight will be barred unless the Trustee commences the requested adversary proceeding "promptly." Indeed, Federal Rule of Bankruptcy Procedure 7001(8) relieves the Trustee of the need for an adversary proceeding to equitably subordinate Insight's claim if that claim is subordinated by the contemplated chapter 11 plan. Thus, the earliest conceivable time when the Trustee will have to consider whether to file an adversary proceeding is when the contemplated chapter 11 plan and disclosure statement are filed. While the Trustee hopes to file both within a reasonably short time after completing settlement negotiations, the filing of neither is imminent.

---

[6] Indeed, you claim that "timing is critical" with regard to your request that the Trustee commence an adversary proceeding because your clients must decide whether to file their proofs of claim by January 15, 2014. What your clients' decision to file proofs of claim timely has to do with whether or when the Trustee commences the requested adversary proceeding is neither clear nor explained in your letter.

DuaneMorris

J. Scott Sexton, Esq.
January 7, 2014
Page 9

### B. Your Clients Are Not Entitled to Derivative Standing to Bring Equitable Subordination Claims Against Insight

In your letter, you advise that your clients intend to seek derivative standing from the bankruptcy court to commence an equitable subordination adversary proceeding on behalf of NECC's bankruptcy estate if the Trustee declines your demand to bring such an adversary proceeding. You assume without discussion that it would be appropriate for the court to confer derivative standing on your clients. The Trustee does not believe your clients are entitled to derivative standing, and he believes your attempts to obtain derivative standing will interfere with his administration of NECC's bankruptcy estate. The Trustee reserves his rights against your clients if they take action that adversely affects NECC's bankruptcy estate. The purpose of this discussion is to summarize some of the reasons why in the Trustee's judgment the court should not confer derivative standing on your clients.

The analysis starts with the actual language of the Bankruptcy Code. The Bankruptcy Code nowhere expressly authorizes individual creditors to sue on behalf of a bankruptcy estate. In contrast, 11 U.S.C. § 323(a) makes clear the Trustee is the representative of NECC's bankruptcy estate, and 11 U.S.C. § 323(b) makes clear the Trustee has capacity to sue on behalf of NECC's bankruptcy estate. While, as explained below, some courts have conferred derivative standing on individual creditors, none have done so to my knowledge in the First Circuit where, as here, a duly appointed trustee does not consent to the grant of derivative standing. *Cf. In re Indus. Comm. Elec.*, 319 B.R. 35, 53 (D. Mass. 2005) (district court grants derivative standing to chapter 11 creditors committee where debtor in possession consents). Please note that the Trustee does not consent to the grant of derivative standing to your clients to pursue equitable subordination of Insight's claim.

In other circuits, courts have granted a qualified, limited right to derivative standing. In those Circuits, "a creditor or creditors' committee may have derivative standing to initiate [litigation] where: 1) a demand has been made upon the statutorily authorized party to take action; 2) the demand is declined; 3) a colorable claim that would benefit the estate if successful exists, based on a cost-benefit analysis performed by the court, and 4) the inaction is an abuse of discretion ('unjustified') in light of the debtor-in-possession's duties in a Chapter 11 case." *Canadian Pac. Forest Prods. Ltd. v. J.D. Irving, Ltd. (In re The Gibson Group, Inc.)*, 66 F.3d 1436, 1446 (6th Cir. 1995); *see Official Comm. of Unsec. Creditors v. Chinery (In re Cybergenics Corp.)*, 330 F.3d 548 (3rd Cir. 2003) (en banc decision reaffirming equitable authority of bankruptcy court to authorize creditors' committee to prosecute avoidance actions on behalf of bankruptcy estate); *Unsecured Creditors Comm. v. Noyes (In re STN Enter.)*, 779 F.2d 901 (2d Cir. 1985). A creditor has met its burden to show standing to file an avoidance action if it has fulfilled the first three requirements and the trustee or debtor-in-possession declined to take action without stating a reason. *In re The Gibson Grp., Inc., supra.*

Here, for the reasons cited, the Trustee does not believe you have satisfied the third element. It is unclear whether the equitable subordination claims are "colorable." It is plain to

DuaneMorris

J. Scott Sexton, Esq.
January 7, 2014
Page 10

the Trustee that the estate would not benefit from the prompt commencement of the equitable subordination adversary proceeding against Insight or that any reasonable cost-benefit analysis would support a contrary conclusion. Moreover, the Trustee has "stated a reason" (*id.*) and under the circumstances his reasons for declining your demand that he commence an adversary proceeding "promptly" are reasonable. It is worth emphasizing again that the Trustee believes it is decidedly not in the best interests of the estate for equitable subordination litigation against Insight to be commenced "promptly," but the Trustee reserves the right to commence such litigation in the future if he determines such litigation will be meritorious and beneficial to NECC's estate and its creditors. Finally, as your clients have not filed any proofs of claim, it is doubtful your clients are creditors, with allowed claims, who have any pecuniary interest in any equitable subordination litigation or even have standing to demand that the Trustee commence equitable subordination litigation against Insight or seek derivative standing as a creditor in NECC's bankruptcy case to pursue such litigation instead.

Finally, I emphasize that, even if your clients obtain derivative standing, they do not thereby obtain ownership of equitable subordination causes of action belonging to the estate. The estate retains ownership of those causes of action, and the Trustee retains full control over the right to compromise or settle those causes of action even if your clients obtain derivative standing to assert those causes of action. *See Smart World Techs., Inc. v. Juno Online Servs., Inc. (In re Smart World Techs., Inc.)*, 423 F.3d 166 (2nd Cir. 2005). As noted, the Trustee also reserves his rights against your clients if your clients adversely affect the estate, as they would if they seek derivative standing and thereby interfere with the Trustee's ongoing efforts to negotiate with Insight. *Accord In re Clamp All, supra* (creditor's claim was equitably subordinated *sua sponte* when creditor filed pleading in violation of chapter 11 debtor's exclusive right to file and solicit acceptances of chapter 11 plan).

I trust this letter is responsive to your demand. Please do not hesitate to call me if you have any questions or wish to discuss this matter further.

Sincerely,

Jeffrey D. Sternklar

JDS:jds

cc: Paul D. Moore, Esq.
Michael R. Gottfried, Esq.
Patrick T. Fennell, Esq.
Ron E. Meisler, Esq.