UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND ) <br> COMPOUNDING PHARMACY, INC. ) <br> PRODUCTS LIABILITY LITIGATION ) <br> ) <br> This Document Relates To: ) <br> ) <br>     All Cases ) | MDL No. 1:13-md-02419 <br><br> Hon. F. Dennis Saylor, IV |

### ROANOKE FRITH & ELLERMAN PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO TRUSTEE'S RENEWED MOTION TO TRANSFER

The Trustee for the estate of New England Compounding Pharmacy, Inc. ("NECC" or the "Debtor") has moved to transfer certain personal injury and wrongful death cases pursuant to 28 U.S.C. §§ 157(b)(5) and 1334(b). These cases are pending in Roanoke, Virginia, against Insight Health Corp., Insight Health Services Corp., Image Guided Pain Management, P.C., John Mathis, M.D., and Robert O'Brien, M.D., (the "Insight Defendants"), and include three cases already set for trial and brought by the following plaintiffs represented by our firm: Chance Baker; Patrick Johnston; and, Ferman Wertz (the "Plaintiffs").

The Trustee's motion should be denied because (1) under the *Pacor* conceivable effects test, the Insight Defendants' potential, unliquidated claims for contribution and implied indemnity are insufficient to invoke the Court's "related to" jurisdiction over the Virginia state court cases, and (2) even if jurisdiction exists, the Court should nonetheless abstain from exercising jurisdiction over the Plaintiffs' cases pursuant to 28 U.S.C. § 1334(c)(1).



## Background

The Plaintiffs suffered fungal meningitis infections after they underwent epidural steroid injections at the Insight Defendants' pain clinic in Roanoke, Virginia. Several months earlier, NECC, or an affiliate, had sold contaminated batches of the epidural steroid drug, methylprednisolone acetate ("MPA"), to the Insight Defendants, which was then used in over 700 steroid injections at its Roanoke pain clinic. There were more than 50 cases of individuals who suffered from fungal meningitis infections attributed to the Insight Defendants' facility.

In February 2013, the Plaintiffs filed suit against the Insight Defendants for fraud and negligence *per se*, among other claims. The Insight Defendants' liability is based on more than the mere fact that it was a participant in the chain of distribution. Rather, the Insight Defendants actively *misrepresented* the quality, identity and source of the steroid that they injected into the Plaintiffs. They told the Plaintiffs that they were injected with Depo-Medrol, a brand name steroid drug manufactured by Pfizer, Inc. They then billed the Plaintiffs' medical insurers for the higher cost of Depo-Medrol, thereby generating more revenue, and wrote in the Plaintiffs' medical charts that each had received Depo-Medrol. In fact, the Insight Defendants had injected the plaintiffs with MPA, not Depo-Medrol, thereby placing profits ahead of patient safety. It is also alleged the Insight Defendants violated multiple Virginia statutes concerning the prescription and administration of the steroids to the plaintiffs.



The Plaintiffs' cases are pending in the Roanoke City Circuit Court in Roanoke, Virginia. The court has set each case for trial, with the first beginning in August 2014, and the parties have conducted extensive discovery.

The Plaintiffs' claims, *inter alia,* involve unique theories of recovery under Virginia law. The Plaintiffs have alleged various counts for active and constructive fraud, based primarily on the Insight Defendants failure to disclose the true source of the compounding medication it selected for its patients. The Plaintiffs have also asserted claims for negligence *per se* based on the Insight Defendants' violations of various Virginia statutes concerning the prescription and administration of steroid drugs. Their claims of fraud and negligence *per se* cases are based solely on Virginia law. By bringing their claims in Virginia state court, the Plaintiffs have chosen a forum best suited to address these distinct, unique areas of state law against the non-debtor, unaffiliated defendants.

**Procedural History**

On May 31, 2013, the Court denied the Trustee's initial attempt to transfer the Plaintiffs' cases under the Court's "related to" jurisdiction. *In re New Eng. Compounding Pharm. Prods. Liab. Litig.*, 496 B.R. 256, 262 (D. Mass. 2013). This Court held that "asserting jurisdiction over the state-court cases at issue is confined entirely to § 1334, and that jurisdiction is unclear at best." *Id.* at 274. Even assuming such jurisdiction existed, the Court nonetheless abstained from exercising such jurisdiction pursuant to 28 U.S.C. § 1334(a):



> [A] number of factors suggest that abstention is warranted as to some of the cases that the trustee is seeking to have transferred. The issues that will decide the debtor's liabilities and the validity of claims against the estate primarily involve state law. State-court plaintiffs, as well as the states themselves, certainly have a strong interest in having state-law claims adjudicated by the state-court system. Most importantly, the basis for asserting jurisdiction over the state-court cases at issue is confined entirely to § 1334, and that jurisdiction is unclear at best. The potential harm to federal-state comity is potentially at its greatest where the basis for federal jurisdiction is uncertain.
>
> In light of these considerations, the Court will exercise its discretion and abstain from asserting jurisdiction — again, assuming that it exists — over those cases currently pending in state courts involving only state-law claims against defendants other than NECC and its affiliates, and where there is no third-party claim for contribution or indemnity. The Court may, in the future, assert jurisdiction over any such case should the third-party defendant actually assert such a claim, but it will refrain from deciding that issue at this time.

*Id.* (emphasis added).

The Insight Defendants have now filed claims against the Debtor based on theories of contribution and indemnity. However, under the test set forth in *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984), the Insight Defendants' potential unliquidated claims for contribution and indemnity against the Debtor are insufficient to confer "related to" jurisdiction over the Plaintiffs' cases. Further, under Virginia law, the Insight Defendants have failed to assert a valid, third-party claim for contribution or indemnity that will have any effect on the reorganization of the estate.

Accordingly, for the foregoing reasons, the Court should decline to exercise "related to" jurisdiction and the Trustee's motion should be denied.



4

## Argument

**A.     Under the *Pacor* Test, Potential, Unliquidated Claims for Contribution and Indemnity Are Insufficient to Confer "Related To" Jurisdiction**

The Court has original but not exclusive jurisdiction over civil proceedings that are "related to" the bankruptcy case. 28 U.S.C. § 1334(b) ("[t]the district courts shall have original but not exclusive jurisdiction of all civil proceedings … related to cases under title 11."). Such claims are "related to" the bankruptcy case if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984). In other words, "the outcome [of the proceeding] could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and [could] in any way impact[] upon the handling and administration of the bankrupt estate." *Id.*

Under *Pacor* and its progeny, the proximity of the relationship between the debtor and non-debtor defendants determines whether "related to" jurisdiction applies. "Relatedness" often turns on the legal relationship between the debtor and non-debtor. For example, claims against parties *closely affiliated* with the debtor, such as officers, directors, and shareholders, confer "related to" jurisdiction, primarily because of the likelihood of joint insurance coverage. *See, e.g., Lindsey v. O'Brien, Tanski, Tanzer & Young Health Care Providers (In re Dow Corning Corp.)*, 86 F.3d 482, 490–94 (6th Cir. 1996); *A.H. Robins v. Piccinin*, 788 F.2d 994, 1007 (4th Cir. 1986). Similarly, there is "related to" jurisdiction when



5

there is contractual indemnity between the debtor and non-debtor. *See, e.g., Hunnicutt Co. v. TJX Cos. (In re Ames Dep't Stores, Inc.)*, 190 B.R. 157, 160-61 (S.D.N.Y.1995); *Apex Inv. Assoc., Inc. v. TJX Cos.*, 121 B.R. 522, 526 (N.D.Ill.1990); *In re Brentano's, Inc.*, 27 B.R. 90, 92 (Bankr.S.D.N.Y.1983), *rev'd & remanded on other grounds*, 36 B.R. 90 (S.D.N.Y.1984); *Weisman v. Southeast Hotel Properties Ltd. Partnership*, No. 91 Civ. 6232, 1992 WL 131080, at *3 (S.D.N.Y. June 1, 1992).

But there is no "related to" jurisdiction when the non-debtor lacks an existing right to contribution or any contractual right to indemnity – as is the case here, because the Insight Defendants do not have contractual indemnity with NECC or an existing right to contribution. *Federal-Mogul Global, Inc.*, 300 F.3d 368 (3d Cir. 2002); *see, e.g.*, *Pacor, Inc.*, 743 F.2d at 994; *GAF Corp. v. Johns-Manville Corp. (In re Johns Manville Corp.)*, 26 B.R. 405 (Bankr. S.D.N.Y. 1983).

The First Circuit has never addressed the scope of the Court's "related to" jurisdiction in regards to claims against non-debtors who lack contractual indemnity with the debtor, such as the Plaintiffs' claims against the Insight Defendants. But as the *Pacor* case concluded, a non-debtor defendants' potential, unliquidated claims for contribution and indemnity are *not* sufficient to confer "related to" jurisdiction. The *Pacor* test has been cited by the majority of circuits to define the scope of "related to" jurisdiction:

> The test ... articulated in *Pacor* has been enormously influential. *Pacor* not only governs our analysis here, but its cogent analytical framework has been relied upon by our sister circuits more than any other case in this area of the law....



> Even for those circuits that have not formally adopted *Pacor*, [it] has provided an indispensable and frequently cited frame of reference, a veritable beacon on the uncharted and perilous waters of bankruptcy subject matter jurisdiction. The references to Pacor in Shepard's Citations are legion. When federal courts must consider whether an issue is a related proceeding, the starting point has universally been *Pacor*.

*In re Federal-Mogul Global, Inc.*, 300 F.3d 368 (3d Cir. 2002 (quoting *Torkelsen v. Maggio (In re Guild & Gallery Plus, Inc.)*, 72 F.3d 1171, 1181 & n. 5 (3d Cir. 1996)).

The *Pacor* test has been expressly adopted by the First, Third, Fourth, Fifth, Eighth, Ninth, and Eleventh Circuits. *In re Boston Regional Medical Center, Inc.*, 410 F. 3d 100, 105 (1st Cir. 2005) ("[b]ankruptcy courts ordinarily may exercise related to jurisdiction as long as the outcome of the litigation 'potentially [could] have some effect on the bankruptcy estate, …") (citing *Pacor*, 743 F. 2d. at 994) ; *In re Lemco Gypsum, Inc.*, 910 F.2d 784, 788 (11th Cir. 1990) ("We join the majority of the circuits that have adopted the *Pacor* formulation."); *In re Fietz*, 852 F.2d 455, 457 (9th Cir. 1988) ("We ... adopt the *Pacor* definition.... We reject any limitation on this definition; to the extent that other circuits may limit jurisdiction where the Pacor decision would not, we stand by *Pacor*."); *In re Wood*, 825 F.2d 90, 93 (5th Cir. 1987) ("Courts have articulated various definitions of `related,' but the definition of the Court of Appeals for the Third Circuit appears to have the most support ... We adopt it as our own."); *In re Dogpatch U.S.A., Inc.*, 810 F.2d 782, 786 (8th Cir. 1987) (adopting the *Pacor* test); *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1002 n. 11 (4th



Cir. 1986) ("The accepted definition of the `related to' in these statutes is that declared in *Pacor*...."), *cert. denied*, 479 U.S. 876, (1986).

The Supreme Court of the United States has also favorably cited *Pacor* with respect to the scope of "related to" jurisdiction:

> We agree with the views expressed by the Court of Appeals for the Third Circuit in *Pacor* ... that the 'related to' language of § 1334(b) must be read to give district courts (and bankruptcy courts under § 157(a)) jurisdiction over more than simply proceedings involving the property of the debtor or the estate. *We also agree with that court's observation that a bankruptcy court's 'related to' jurisdiction cannot be limitless.*
>
> *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995) (citations omitted) (citing and quoting *Pacor*, 743 F.2d at 994) (emphasis added).

Therefore, the *Pacor* decision should guide the Court's analysis in this case. In *Pacor*, summarized below, the Third Circuit held that potential claims for contribution and indemnity were insufficient to confer "related to" jurisdiction claims against an unaffiliated non-debtor. The Court should reach the same conclusion in this case and decline to exercise "related to" jurisdiction over the Plaintiffs' cases against the Insight Defendants, when the only effect on the debtor's estate are potential claims for contribution and indemnity.

In *Pacor*, the plaintiff, Higgins, sued the Philadelphia Asbestos Co. ("Pacor") for injuries arising from work-related exposure to asbestos. 743 F.2d at 986. Pacor filed a third-party complaint, alleging that the Johns-Manville Corporation was liable to Higgins as the original provider of the asbestos. *Id.* Thereafter, Johns-Manville filed for Chapter 11 bankruptcy protection, which



8

stayed Pacor's third-party complaint, and Pacor sought to transfer Higgins's suit to the federal district court in the bankruptcy forum. *Id.*

The district court denied Pacor's motion to transfer and held that Higgins's suit against Pacor was not "related to" the bankruptcy proceedings under 28 U.S.C. § 1471(b) (the predecessor statute to 28 U.S.C. § 1334(b)). *Id.* The Third Circuit affirmed the district court's denial of the transfer motion and held "related to" jurisdiction did not apply:

> [T]he primary action between Higgins and Pacor would have no effect on the Manville bankruptcy estate, and therefore is not "related to" [the Manville] bankruptcy [proceeding]. At best, it is a mere precursor to the potential third party claim for indemnification by Pacor against Manville. Yet the outcome of the Higgins-Pacor action would in no way bind Manville, in that it could not determine any rights, liabilities, or course of action of the debtor. Since Manville is not a party to the Higgins-Pacor action, it could not be bound by res judicata or collateral estoppel. Even if the Higgins-Pacor dispute is resolved in favor of Higgins (thereby keeping open the possibility of a third party claim), Manville would still be able to relitigate any issue, or adopt any position, in response to a subsequent claim by Pacor. Thus, the bankruptcy estate could not be affected in any way until the Pacor-Manville third party action is actually brought and tried.

*Id.* at 995 (citations omitted).

The arguments made by Pacor were similar to the arguments now made by the Trustee, and the Third Circuit denied them:



> Pacor stresses that the Higgins-Pacor claim would affect the Manville bankruptcy estate, in that *without* a judgment for plaintiff Higgins in that action, there could never be a third party indemnification claim against Manville. This argument does not alter our conclusion. At best, one could say that a judgment against the plaintiff on the primary claim would make absolutely certain

9

that the Manville estate could never be adversely affected. This does not prove the converse, however, that a judgment in favor of the plaintiff Higgins necessarily does affect the estate. The fact remains that any judgment received by the plaintiff Higgins could not itself result in even a contingent claim against Manville, since Pacor would still be obligated to bring an entirely separate proceeding to receive indemnification.

*Id.* (emphasis in original).

Just as Pacor lacked contractual indemnity with Manville, and had no existing right of contribution, so, too, do the Insight Defendants lack a sufficient basis to confer "related to" jurisdiction over the Plaintiffs' cases. Under Virginia law, the Insight Defendants do not have valid claims for contribution or indemnity; nor will they ever on Plaintiffs' claims of negligence *per se* and fraud for the reasons set forth below. Therefore, even by filing a proof of claim, the Insight Defendants' alleged claims against the bankruptcy estate are unlikely to be allowed or otherwise have any effect on the reorganization.

Under Virginia law, a right of contribution does not accrue until the joint tortfeasor has paid or settled a claim. *Sullivan v. Robertson Drug Co.*, 639 S.E.2d 250, 255 (Va. 2007) (citing *Maroulis v. Elliott*, 151 S.E.2d 339, 345 (Va. 1966)); *Murray v. Smithson*, 48 S.E.2d 239, 241 (Va. 1948). The Insight Defendants have not paid or settled any claims with the Plaintiffs. Moreover, there is no right of contribution if a joint tortfeasor has engaged in moral turpitude, such as misrepresentation. VA. CODE § 8.01-34 ("Contribution among wrongdoers may be enforced when the wrong results from negligence and involves no moral



10

turpitude."). The Plaintiffs have alleged that the Insight Defendants violated Virginia state law in prescribing and administering the contaminated steroid drugs, and further, they engaged in moral turpitude by misrepresenting the true source of the steroid drug they selected for its pain clinics. Accordingly, even if the Insight Defendants pay or settle a claim, the Insight Defendants will be foreclosed from seeking contribution from the debtor because it engaged in intentional acts that violated Virginia state law and acts of moral turpitude.

Additionally, a defendant's active negligence precludes claims for implied indemnification. *Philip Morris, Inc. v. Emerson*, 368 S.E.2d 268, 285 (Va. 1988) (citations omitted) ("If a defendant is guilty of active negligence, he may not obtain indemnification from any other defendant.). Similarly, equitable indemnification arises when a party *without personal fault* is nevertheless liable for damages caused by the negligence of another; a prerequisite to recovery for equitable indemnification is the initial determination that the negligence of another person caused the damage. *Carr v. Home Ins. Co.*, 463 S.E.2d 457, 458 (Va. 1995) (citing *Maryland Casualty Co. v. Aetna Casualty & Surety Co.*, 60 S.E.2d 876, 879 (Va. 1950); *McLaughlin v. Siegel*, 185 S.E. 873, 874 (Va. 1936)). The Insight Defendants' active negligence in concealing the identity of the compounding drug, and their violations of Virginia law in administering the drug, prohibits them from asserting a claim for implied indemnification.



Without a reasonable basis under Virginia law, it cannot be said that the Insight Defendants' claims will have any "conceivable effect" on the debtor's reorganization. Moreover, the Insight Defendants lack contractual indemnity with the Debtor. As *Pacor* concluded on similar facts, a potential, unliquidated claim for contribution and indemnity is plainly insufficient to confer "related to" jurisdiction over non-debtor cases. Accordingly, the Court should deny the Trustee's motion to transfer because no jurisdiction exists over the cases.

**B.    Even if "Related To" Jurisdiction Exists, the Court Should Abstain From Exercising Jurisdiction Over the Plaintiffs' Cases**

Even if the Court holds that "related to" jurisdiction exists over the Plaintiffs' cases, the Court should nonetheless abstain from exercising jurisdiction "in the interest of justice," "in the interest of comity with State courts" and in the interest of "respect for State law." 28 U.S.C. § 1334(c)(1).

In addition to the factors set forth in Section 1334(c), the First Circuit has held that additional factors may weigh in favor of abstention: (a) the extent to which state law issues predominate over bankruptcy issues; (b) the presence of a related proceeding commenced in state court or other non-bankruptcy court; and, (c) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties. *In re Middlesex Power Equipment & Marine, Inc.*, 292 F. 3d 61, 69-70 (1st Cir. 2002) (citing *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1166-67 (9th Cir.



1990) (quoting *Republic Reader's Serv., Inc. v. Magazine Serv. Bureau, Inc. (In re Republic Reader's Serv., Inc.)*, 81 B.R. 422, 429 (Bankr.S.D.Tex. 1987)) (internal quotations omitted) (adopting a twelve-factor test to ascertain whether permissive abstention is appropriate in any given case); *see also In re Chicago, Milwaukee, St. Paul & Pac. R.R. Co.*, 6 F.3d 1184, 1189 (7th Cir. 1993)).

Applying the factors from the *Middlesex Power* decision, the Plaintiffs urge the Court to abstain from exercising jurisdiction over their non-debtor cases pursuant to 28 U.S.C. § 1334(c)(1).

First, Virginia state law predominates over the claims and the Plaintiffs' complaint involves novel legal theories under Virginia law. The remote possibility of a potential, unliquidated claim of contribution or indemnity in the bankruptcy proceedings would not even arise until these difficult Virginia law issues are addressed, an eventuality that is best served by keeping the Roanoke cases in Virginia courts where these issues can be litigated.

Second, the Trustee admits the primary purpose of its transfer motion is to consolidate claims against NECC, which was accomplished last year, not claims that arise on different facts, such as the Plaintiffs' cases. See Trustee's Motion, MDL No. 38, p. 2. ("These personal injury and wrongful death claims represent the vast majority of claims against the Debtor's estate."). There is no need to disrupt the Plaintiffs' state court proceedings, especially when the parties are engaged in local discovery and the cases set for a jury trial.



13

The circumstances in this case regarding claims against non-debtor parties are similar to the *Middlesex Power* case and the First Circuit's affirmance of the district court's decision to abstain should be followed.

In *Middlesex Power*, the trustee for the Middlesex Power Equipment & Marine, Inc. ("Middlesex Power") auctioned the debtor's real estate in Tyngsborough to New England Power & Marine, Inc. ("NEPM"). 292 F. 3d at 64. NEPM failed to pay property taxes, and the town of Tyngsborough brought suit in Massachusetts state court. *Id.* NEPM moved the bankruptcy court to reopen the estate, which was denied, and on appeal, the district court abstained to exercise jurisdiction. *Id.* at 65.

The First Circuit affirmed the district court's decision to abstain. *Id.* at 68. It was immaterial whether the proceeding was "related to" or "arising in" a case under Title 11; either way, the district court could choose to abstain. 28 U.S.C. § 1334(c)(1) ("[n]othing in this section prevents a district court…from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11"). The First Circuit held that courts have broad discretion to decline from hearing "state law claims whenever appropriate 'in the interest of justice, or in the interest of comity with State courts or respect for State law.'" *Id.* at 69. Since the case against the non-debtor was unrelated to the bankruptcy proceedings, and indeed governed by state law, the First Circuit affirmed the district court's decision to abstain. *Id.*



## Conclusion

The Trustee's motion should be denied because the Insight Defendants' potential, unliquidated claims for contribution and indemnity are insufficient under *Pacor* to invoke the Court's "related to" jurisdiction.

First, the mere fact that the Insight Defendants have asserted potential, unliquidated claims for contribution and indemnity against the Debtor is insufficient to confer "related to" jurisdiction over the Plaintiffs' cases under the *Pacor* case and its progeny. Second, under Virginia law, the Insight Defendants lack existing, valid claims to a right of contribution or implied indemnity from the Debtor. The Plaintiffs' claims are based on the Insight Defendants' fraud and state-law violations constituting negligence *per se*. Their active negligence and acts of moral turpitude preclude any right to contribution or indemnity.

Even if the Court decides that "related to" jurisdiction exists over these cases, the Court should nonetheless abstain from exercising jurisdiction. The Plaintiffs' claims against the Insight Defendants involve different evidence, different witnesses, and different causes of action, than the cases that were transferred last year. Virginia law predominates over the Plaintiffs' unique, novel theories of recovery, and in the interest of comity with Virginia courts, the state court should be permitted to retain jurisdiction over the cases until trial later this year, and the Court should abstain from transferring the cases.



For the foregoing reasons, the Plaintiffs respectfully request that the Trustee's renewed motion to transfer be denied.

                                        Respectfully submitted,

                                        PLAINTIFFS

                                        _____
                                        By Counsel

T. Daniel Frith, III, Esquire (VSB #22065)
Lauren M. Ellerman, Esquire (VSB #68464)
Robert E. Dean, II, Esquire (VSB #80288)
FRITH & ELLERMAN LAW FIRM, PC
P. O. Box 8248
Roanoke, VA 24014
Telephone: (540) 985-0098
Facsimile: (540) 985-9198
Email: rdean@frithlawfirm.com

*Counsel for Chance Baker, Patrick Johnson, and Ferman Wertz*



16

## CERTIFICATE OF MAILING

The undersigned hereby certifies that on this 9th day of January 2014, a true and exact copy of the foregoing was filed with this Court's CM/ECF filing system, thereby providing electronic notice to those counsel of record listed below who are registered users of the system.

The undersigned also certifies that on this 9th day of January 2014, a true and exact copy of the foregoing was mailed to the following counsel of record:

Michael R. Gottfried, Esq.
DUANE MORRIS LLP
100 High Street, Suite 2400
Boston, MA 02110-1724

*Counsel for the Chapter 11 Trustee*

Clinton R. Shaw, Esq.
BONNER KIERNAN TREBACH & CROCIATA
1233 20th Street, NW, 8th Floor
Washington, DC 20036

*Counsel for Insight Health Corp., Insight Health Services Corp., and Insight Health Services Holding Corp.*

John E. Jessee, Esq.
LECLAIRRYAN, A PROFESSIONAL CORPORATION
1800 Wells Fargo Tower, Drawer 1200
Roanoke, VA 24006

*Counsel for Robert O'Brien, MD, John M. Mathis, MD, and Image Guided Pain Management, PC*

_____

