UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION _____ This Document Relates to: Suits Identified in Exhibit A. _____ | ) ) MDL No. 2419 ) Dkt. No. 1:13-md-2419-FDS ) ) ) ) ) ) ) |

**The Tennessee Defendants' Memorandum of Law in Support of
Their Motion for Summary Judgment**

Saint Thomas Outpatient Neurosurgical Center, LLC ("STOPNC"), Howell Allen Clinic, a Professional Corporation ("Howell Allen"), John Culclasure, M.D. ("Dr. Culclasure"), Debra Schamberg, R.N. ("Ms. Schamberg"), Specialty Surgery Center, Crossville, PLLC ("SSC"), Kenneth R. Lister, M.D. ("Dr. Lister"), and Kenneth Lister, M.D., P.C. ("Dr. Lister's Practice") (collectively "the Tennessee Defendants"), file this Memorandum in Support of their contemporaneously-filed Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 7.1.[1]

---

[1] On December 23, 2013, the Court ordered defendants to file a motion to dismiss identifying suits with deficiencies in pre-suit notice or other procedural requirements. [Dkt. 723]. The Tennessee Defendants file this Memorandum and the contemporaneously-filed Motion for Summary Judgment pursuant to that Order. The Tennessee Defendants acknowledge that the Court may choose to construe their Motion for Summary Judgment as a motion to dismiss. The contemporaneously-filed affidavits of Dr. Culclasure and Dr. Lister conclusively establish that the Plaintiffs' alleged injuries were "related to the provision of health care" to the extent the factual allegations of the Master Complaint and/or the individual Complaints fail to do so. TENN. CODE ANN. § 29-26-101(a)(1).

**STATEMENT OF THE CASE**

The Plaintiffs' injuries and causes of action arise from the fungal meningitis outbreak caused by contaminated, preservative-free, methylprednisolone acetate ("MPA") manufactured and sold by the New England Compounding Pharmacy, Inc., d/b/a New England Compounding Center ("NECC").

The Plaintiffs' claims against these health care provider Defendants arise from injuries suffered from exposure to contaminated MPA administered by Dr. Culclasure, Dr. Lister, and other unnamed physicians while performing epidural steroid injection procedures.

The Plaintiffs assert claims styled as health care liability and a variety of alternative theories of liability against the Tennessee Defendants, including the following causes of action alleged against the Clinical Defendants in the Master Complaint:

- Ordinary Negligence;
- Tennessee Consumer Protection Act;
- Battery;
- Failure to Warn;
- Tennessee Products Liability Act of 1978;
- Agency;
- Civil Conspiracy.[2]

The Tennessee Defendants are entitled to summary judgment on all claims alleged by each of the identified Plaintiffs, notwithstanding any other variation in those Complaints because:

1. Every claim in the Plaintiffs' Complaints against the Tennessee Defendants arises from an injury related to a health care provider's provision of health care services; and

---

[2] *See* Master Compl. Count III, IV, VII-XI. The Master Complaint is an administrative tool, not an operative pleading. The Plaintiffs were free to incorporate allegations and claims from the Master Complaint, by filing "short form" complaints, the "effect of [which is] to amend the original complaints that had been filed by those particular plaintiffs." Supplemental Order on Pending Motions to Dismiss, for Summary Judgment, and to Amend [Dkt. 725]. Most of the Tennessee plaintiffs adopted the allegations of the Master Complaint in amending their original Complaints via the "short form" complaint process.

2. The Plaintiffs[3] failed to file a Certificates of Good Faith with their original Complaints.

Based on these undisputed facts, the Tennessee Defendants are entitled to summary judgment because:

1. The Plaintiffs' injuries are actionable against the Tennessee Defendants *only* as health care liability actions, under the Tennessee Health Care Liability Act; and

2. The Plaintiffs' health care liability claims fail, as a matter of law pursuant to Tenn. Code Ann. § 29-26-122, because the Plaintiffs failed to file Certificates of Good Faith *with their original Complaints*.

## SUMMARY OF ARGUMENT

The Plaintiffs' only cognizable cause of action against the Tennessee Defendants for the injuries alleged in the Complaints is "health care liability" under the Tennessee Health Care Liability Act.

The Health Care Liability Act subsumes all causes of action against health care providers when a plaintiff's injury is "related to" health care services.[4][5]

The Plaintiffs' causes of action are health care liability, even though the Plaintiffs have plead their claims as various other familiar torts. The Health Care Liability Act subsumes "*any civil action*" into health care liability, if the claim "alleg[es] that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, *regardless of the theory of liability on which the action is based.*"[6] The Plaintiffs' claims are subject to the Health Care Liability Act

---

[3] Exhibit A to this Memorandum in Support lists the suits in which the Plaintiffs failed to file a Certificate of Good Faith with the original Complaint.
[4] TENN. CODE ANN. § 29-26-101(a)(1).
[5] Tennessee's Health Care Liability Act is discussed at length in the Tennessee Defendants' Memorandum in Support of their "Global" or "Master" Motion to Dismiss.
[6] TENN. CODE ANN. § 29-26-101 (emphasis added).

because (1) the Tennessee Defendants are health care providers[7] and (2) the Plaintiffs' Complaints allege that the Tennessee Defendants caused the Plaintiffs' injuries through conduct "related to" the provision of health care services.

As health care liability actions, the Plaintiffs' claims are subject to the procedural prerequisites of the Health Care Liability Act, including Tenn. Code Ann. § 29-26-122.

Pursuant to Tenn. Code Ann. § 29-26-122, *before a claim is filed*, a claimant must receive a written opinion from a qualified medical expert that a good faith basis for the claim exists. The plaintiff must file a Certificate of Good Faith with any health care liability claim, certifying that the plaintiff complied with Tenn. Code Ann. § 29-26-122. If a plaintiff fails to file a Certificate of Good Faith, *with the original complaint*, the plaintiff's health care liability claim is subject to dismissal with prejudice. A plaintiff cannot cure a failure to file a Certificate of Good Faith by subsequent amendment.

The Tennessee Defendants are entitled to judgment, as a matter of law, because the Plaintiffs' Complaints are health care liability actions but were filed without Certificates of Good Faith. The Plaintiffs' failure to file Certificates of Good Faith subjects these Complaints to dismissal with prejudice.[8]

## **STANDARD OF REVIEW**

Under Fed. R. Civ. P. 12(b)(6), a party may move to dismiss a claim if the pleading fails to state a claim upon which relief may be granted. Under Fed. R. Civ. P. 12(d), a motion to dismiss is "treated as one for motion for summary judgment under Rule 56" if the defendant's motion presents matters outside the pleadings.

---

[7] *See* TENN. CODE ANN. § 29-26-101(a)(2) (defining "health care providers"); Master Compl. ¶151 ("The Plaintiffs sought treatment from the Clinic Related Defendants"); Statement of Undisputed Material Facts.
[8] Exhibit A to this Memorandum in Support lists the suits in which the Plaintiffs failed to file a Certificate of Good Faith with the original Complaint.

4

Although Tenn. Code Ann. § 29-26-122(c) states that a claimant's failure to attach a Certificate of Good Faith to the Complaint shall "make the action subject to dismissal with prejudice."[9] A defendant may also move for summary judgment based on a plaintiff's violation of Tenn. Code Ann. § 29-26-122.[10] [11]

Pursuant to Fed. R. Civ. P. 56(a), a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

While there are significant factual disputes between the parties, none of them are material to the dispositive legal issues presented in this Motion, which conclusively demonstrates the Tennessee Defendants are entitled to summary judgment on all claims.[12]

## LAW AND ARGUMENT

**I.   All claims in the Plaintiffs' Complaints are health care liability actions, subject to Tenn. Code Ann. § 29-26-122.**

The Plaintiffs' claims against the Tennessee Defendants constitute health care liability claims, subject to the Certificate of Good Faith requirement of Tenn. Code Ann. § 29-26-122 because all of the Tennessee Defendants' allegedly wrongful conduct "relates to" the provision of health care services.

---

[9] *Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 307 (Tenn. 2012) (finding a Rule 12 Motion to be a proper means of challenging a complaint's compliance with Tenn. Code Ann. § 29-26-122).

[10] *West v. AMISUB*, No. CT-003211-11, 2013 WL 1183074, at *1 (Tenn. Ct. App. Mar. 21, 2013) (affirming trial court's grant of summary judgment based on plaintiff's failure to attach a Certificate of Good Faith with the complaint).

[11] Tennessee precedents are not controlling on the procedural issue of whether to adjudicate this motion as a motion to dismiss or a motion for summary judgment. *See Erie Railroad Co. v. Tompkins,* 304 U.S. 64 (1938).

[12] *See Anderson v. Liberty Lobby,* 477 U.S. 242, 247 (1986) ("By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.").

5

Under Tennessee law, the factual nexus of the claim controls its designation as health care liability, not the label applied by the claimant.[13] The Plaintiffs cannot dodge the procedural and substantive protections afforded to health care providers for health care services through creative pleading.[14]

### a. The Health Care Liability Act subsumes all causes of action against health care providers for injuries "related to" the provision of health care services.

The Health Care Liability Act creates a uniform and exclusive remedy against health care providers for injuries "related to" the provision of health care services.[15] A health care provider can only be held liable for injuries "related to" their health care services, when a plaintiff proves the prima facie elements of a health care liability claim.[16]

The Health Care Liability Act applies to all actions for injuries related to the provision of health care:

> "Health care liability action" means **any civil action**, including claims against the state or a political subdivision thereof, alleging that a health care provider or providers have caused an injury **related to the provision of, or failure to provide, health care services** to a person, **regardless of the theory of liability on which the action is based**.[17]

If the factual nexus of a plaintiff's allegations against a health care provider "relates to" health care services, the plaintiff *cannot* escape the mandatory procedural prerequisites

---

[13] *See Caldwell v. Vanderbilt Univ.*, No. M2012-00328-COA-R3-CV, 2013 WL 655239, at *5 (Tenn. Ct. App. Feb. 20, 2013) ("It is the role of the courts to ascertain the nature of the claim; the designation given to the claim by either party is not determinative.").
[14] *See id.* ("The characterization of the claim affects the nature of the litigation and the procedures by which it must be litigated.").
[15] *See* TENN. CODE ANN. § 29-26-101(a).
[16] *See* TENN. CODE ANN. §§ 29-26-115, -118.
[17] TENN. CODE ANN. § 29-26-101(a)(1) (emphasis added) (applicable to any cause of action accruing on or after October 11, 2011).

6

of the Health Care Liability Act.[18]

To avoid any confusion, the statute provides again, in a separate section:

Any such civil action or claim is subject to this part regardless of any other claims, causes of action, or theories of liability alleged in the complaint.[19]

It does not matter whether a plaintiff's cause of action is pled as a product liability, medical battery, agency, or conspiracy claim — if the factual nexus of the allegations "relates to" health care services, then the claim is for health care liability under Tennessee law.[20]

> **b. All of the Plaintiffs' claims against the Tennessee Defendants are subsumed by the Health Care Liability Act because the Plaintiffs commonly allege that their injuries were caused by the Tennessee Defendants during the course of medical treatment, and their injuries are "related to" that treatment.**

The Health Care Liability Act broadly applies to any action against a health care provider, in which a plaintiff alleges an injury arising from the provision of health care services:

<u>"Health care liability action" means any civil action</u>, including claims against the state or a political subdivision thereof, <u>alleging that a health care provider or providers have caused an injury **related to the provision** of, or failure to provide, **health care services** to a person</u>, regardless of the theory of liability on which the action is based.[21]

The General Assembly adopted Section 29-26-101, defining the scope of the Health Care Liability Act, to replace a similar provision of the Medical Malpractice Act, which established an exclusive cause of action for "medical malpractice," defined at common law as any claim bearing a "substantial relationship to the rendition of medical treatment

---

[18] *See id.*
[19] TENN. CODE ANN. § 29-26-101(c).
[20] *Id.*; *see Caldwell*, No. M2012-00328-COA-R3-CV, 2013 WL 655239, at *5 ("It is the role of the courts to ascertain the nature of the claim; the designation given to the claim by either party is not determinative.")
[21] TENN. CODE ANN. § 29-26-101(a)(1) (emphasis added) (applicable to any cause of action occurring on or after October 11, 2011).

by a medical professional, or concern[ing] medical art, science, training, or expertise….”[22] The Health Care Liability Act, and the definition of "health care liability action" defining the scope of the Act, are markedly broader than the repealed Medical Malpractice Act.[23] The Tennessee Supreme Court has recognized that when the history of an amendment to a definitional provision reflects the General Assembly's intent to broaden the meaning of the term, courts should interpret the term "as broadly as possible."[24]

All of the Plaintiffs' injuries arise from exposure to contaminated MPA during a medical procedure and therefore, necessarily, "relate to" health care services.[25] The definition of "health care services" in the Health Care Liability Act is broad and easily includes the entire spectrum of the Plaintiffs' various claims against the Tennessee Defendants. "Health care services" includes the selection and administration of a drug used in a medical procedure:

> Health care services to persons <u>includes care by health care providers</u>, <u>which includes care by physicians</u>, nurses, licensed practical nurses, <u>pharmacists</u>, pharmacy interns or pharmacy technicians under the supervision of a pharmacist, orderlies, certified nursing assistants, advance practice nurses, physician assistants, nursing technicians <u>and other agents</u>, <u>employees and representatives of the provider</u>, <u>and also includes staffing, custodial or basic care, positioning, hydration and similar patient services</u>.[26]

"Health care services," as used in the Health Care Liability Act, is intentionally broad and non-limiting. It includes classic patient care, such as administration of medications,

---

[22] *Dunlap v. Laurel Manor Health Care*, No. E2012-02432-COA-R3-CV., 2013 WL 4680494, at *1, n. 1 (Tenn. Ct. App. Aug. 29, 2013); *see, e.g., Estate of French v. Stratford House*, 333 S.W.3d 546 (Tenn. 2011).
[23] *See* TENN. CODE ANN. § 29-26-101(a)(1).
[24] *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 531 (Tenn. 2010) (noting the legislature's amendments to broaden the Tennessee Peer Review Act).
[25] *See* Statement of Undisputed Material Facts, ¶¶ 1-2, 4-5, 14-17; Affidavit of John W. Culclasure, M.D., ¶¶ 2-4, 6-9, 11; Affidavit of Kenneth Lister, M.D., ¶¶ 2-6, 8.
[26] TENN. CODE ANN. § 29-26-101(b) (emphasis added).

and non-physician services performed by agents, employees, representatives, and other support staff.

The factual nexus of the Plaintiffs' claims indisputably "relates to" health care services. Each of the Plaintiffs' alleged injuries arises from exposure to contaminated MPA used in an epidural steroid injection procedure, performed by a licensed physician, according to the recognized standard of acceptable professional practice, at a licensed ambulatory surgery center.[27] Each of the Tennessee Defendants' allegedly wrongful acts "relate to" the decision-making, or some other conduct or omission, proximately related to the utilization of MPA from NECC for the Plaintiffs' epidural steroid injection procedures.[28] Licensed health care providers, including Dr. Culclasure and Dr. Lister, made the decisions to purchase MPA from NECC for use in medical procedures at STOPNC and SCC.[29]

The injuries and allegedly wrongful conduct that form the basis for all of the Plaintiffs' claims relate directly to health care services and are therefore subject to the Health Care Liability Act.[30]

**II.  The Tennessee Defendants are entitled to judgment, as a matter of law, on the Plaintiffs' Complaints, pursuant to Tenn. Code Ann. § 29-26-122.**

Since all of the Plaintiffs' claims against the Tennessee Defendants are health care liability actions, the Plaintiffs' Complaints are subject to dismissal if they fail to

---

[27] *See* Statement of Undisputed Material Facts, ¶¶ 1-2, 4-5, 14-18; Affidavit of John W. Culclasure, M.D., ¶¶ 2-4, 6-9, 11; Affidavit of Kenneth Lister, M.D., ¶¶ 2-6, 8
[28] *See* Statement of Undisputed Material Facts, ¶¶ 1-2, 4-5, 14-18; Affidavit of John W. Culclasure, M.D., ¶¶ 2-4, 6-9, 11; Affidavit of Kenneth Lister, M.D., ¶¶ 2-6, 8.
[29] *See* Statement of Undisputed Material Facts, ¶¶ 10-13; Affidavit of John W. Culclasure, M.D., ¶¶ 2, 10; Affidavit of Kenneth Lister, M.D., ¶¶ 2, 6.
[30] TENN. CODE ANN. § 29-26-101(a).

comply with the Good Faith Certificate requirement of Tenn. Code Ann. § 29-26-122.[31]

Each of the Plaintiffs that are identified in this Motion failed to file a Certificate of Good Faith with their original Complaints.[32] The Tennessee Defendants are entitled to final disposition of those claims because the Plaintiffs' failure to file a Certificate of Good Faith is fatal. It cannot be excused or cured by subsequent amendment.[33]

### a. The Plaintiffs' claims fail as a matter of law because the Plaintiffs did not comply with Tenn. Code Ann. § 29-26-122.

Tenn. Code Ann. § 29-26-122(a) provides that "in any health care liability action in which expert testimony is required by § 29-26-115, the plaintiff or plaintiff's counsel *shall* file a certificate of good faith *with the complaint*."[34] "If the certificate is not filed with the complaint, the complaint *shall be dismissed*. . ."[35] The provision further clarifies that this dismissal shall be "with prejudice."[36]

Tennessee courts have not struggled to interpret this clear command from the General Assembly and have not hesitated to dismiss plaintiffs' complaints *with prejudice*, when a plaintiff fails to file a Certificate of Good Faith with a health care liability claim.[37] The Tennessee Supreme Court has noted that the use of "shall" in

---

[31] TENN. CODE ANN. § 29-26-122(c).
[32] Statement of Undisputed Material Fact, ¶ 16.
[33] The Plaintiffs' claims must be dismissed, even if the Plaintiff filed a Certificate of Good Faith with a "short form" Complaint. "Short form" complaints are "amendments" to the previously filed Complaints, and therefore, they fail to excuse the Plaintiffs' non-compliance with Tenn. Code Ann. § 29-26-122 in the original Complaint. Supplemental Order on Pending Motions to Dismiss, for Summary Judgment, and to Amend [Dkt. 725].
[34] (emphasis added).
[35] TENN. CODE ANN. § 29-26-122(a) (emphasis added).
[36] TENN. CODE ANN. § 29-26-121(c).
[37] *See, e.g.*, *Myers*, 382 S.W.3d at 312 ("[W]e are dismissing Mr. Myers's complaint with prejudice as the result of his failure to comply with Tennessee Code Annotated section 29-26-122…."); *see additionally Caldwell*, No. M2012-00328-COA-R3-CV, 2013 WL 655239, at *6-*7 (affirming dismissal for failure to file compliant Certificate of Good Faith); *Jackson v. HCA Health Services of Tennessee, Inc.*, 383 S.W.3d 497, 498-99 (Tenn. Ct. App. 2012) (affirming dismissal of complaint for failure to file Certificate of Good Faith and affirming constitutionality of Good Faith Certificate requirement).

Tenn. Code Ann. § 29-26-122(a) indicates that "the legislature intended the requirement[] to be mandatory, not directory."[38]

The Plaintiffs cannot be excused from the statutory Certificate of Good Faith requirement because their health care liability claims require expert testimony.[39] Expert testimony is required to establish health care liability, unless the "medical negligence is, so to speak, as plain as a fly floating in a bowl of buttermilk."[40] The "common knowledge" exception to the expert testimony requirement does not apply in any of these cases because Tennessee courts have recognized that the selection and administration of a prescription medication is uniquely within the realm of expert knowledge.[41]

Since the Tennessee Defendants' decision to use preservative-free MPA from NECC required medical expertise and individualized medical judgment, expert testimony is required for the Plaintiffs' claims.

### b. The Plaintiffs' failure to file a Certificate of Good Faith cannot be cured by amendment.

Some of the Plaintiffs identified in this Motion have amended their Complaints to include a Certificate of Good Faith.[42] This does not cure those Plaintiffs' failure to file the Certificate "with the complaint" and does not relieve this Court of its duty to dispose of

---

[38] *Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 308 (Tenn. 2012).
[39] *See* TENN. CODE ANN. § 29-26-122(a) (requiring a Certificate of Good Faith for claims that require expert testimony per Tenn. Code Ann. §§ 29-26-115, -118).
[40] *German v. Nichopoulos*, 577 S.W.2d 197, 203 (Tenn. Ct. App. 1978).
[41] *Dooley v. Everett*, 805 S.W.2d 380, 386 (Tenn. Ct. App. 1990) (quoting *Stone v. Smith, Kline & French Laboratories*, 731 F.2d 1575 (11th Cir.1984)).
[42] *See* Exhibit A (an asterisk indicates the Plaintiff amended his or her Complaint to add a Certificate of Good Faith). The following Plaintiffs have amended their Complaint to add a Certificate of Good Faith: Terry Pierce, 1:13-cv-12733; Elizabeth Bray, 1:13-cv-12596; Judy Collins, 1:13-cv-12580; Danette Graham, 1:13-cv-12581; Shirley Savercool, 1:13-cv-12583; Dale Willis, 1:13-cv-12597; Dennis O'Brien, 1:13-cv-12759; Reba Temple, 1:13-cv-12696; Michelle Minor, 1:13-cv-12836; Ella Redkevitch, 1:13-cv-12666; Margaret White, 1:13-cv-12734; Martha Schultz, 1:13-cv-12311; Vickie Barger, Lisa Maddox, Wayne McWhorter, Samuel Groves, Betty Smiley, John Edward Jones, Angela May, Gary Wayne Waddey (multi-plaintiff complaint), 1:13-cv-12619.

the Plaintiffs' claims pursuant to Tenn. Code Ann. § 29-26-122(c).

In *Vaughn v. Mountain States Health Alliance*[43], the Tennessee Court of Appeals made clear that subsequent amendment does not cure a plaintiff's failure to file a Certificate of Good Faith with the original complaint.[44] Tenn. Code Ann. § 29-26-122 "do[es] not authorize a claimant to cure deficiencies by filing an amended complaint."[45] The statutory scheme compels this interpretation because, absent "extraordinary cause," a health care liability complaint, filed without a Certificate of Good Faith, must be dismissed "with prejudice."[46] [47] "[S]ubsequent amendment of the complaint does not help [a plaintiff's] cause."[48] Even if the Plaintiffs could show that they consulted with an expert or otherwise satisfied the spirit of the statute, the failure to satisfy the express pleading requirements of Tenn. Code Ann. § 29-26-122 is fatal.[49]

This Court has already ruled that the effect of filing a "short form" complaint is to amend the original complaint:

> As of December 20, 2013, various plaintiffs in this litigation adopted some variation of the standardized short-form complaint that was filed in the master docket on November 5, 2013. The effect of those filings was to amend the original complaints that had been filed by those particular

---

[43] E2012-01042-COA-R3-CV, 2013 WL 817032 (Tenn. Ct. App. March 5, 2013)
[44] *Id.* at *2 (holding that deficiencies in complying with -121 and -122 cannot be cured by amendment).
[45] *Id.*
[46] *Id.*; *see* TENN. CODE ANN. § 29-26-122(c).
[47] The plaintiff has the burden to prove extraordinary cause. *Myers,* 382 SW 3d at 307; *compare Childs v. UT Med. Grp.*, No. W2011-01901-COA-CV, 2012 WL 3201933, at *9 (Tenn. Ct. App. Aug. 8, 2012) (extraordinary cause not shown for plaintiff's failure to comply with Tenn. Code Ann. § 29-26-121 where Plaintiff negligently relied on a notice of intent sent during the first non-suited lawsuit) (noting the "unique" circumstances of *Howell*) with Howell v. Claiborne and Hughes Health Ctr., No. M2009-01683-COA-R3-CV, 2010 WL 2539651, at *22 (Tenn. Ct. App. Jun. 24, 2010) (finding no abuse of discretion, where the trial court excused non-compliance with Tenn. Code Ann. § 29-26-121 where the plaintiff nonsuited a lawsuit, then refiled, without serving pre-suit notice, "mere days" after Tenn. Code Ann. § 29-26-121 became effective).
[48] *Thurmond v. Mid-Cumberland Infectious Disease Consultants, PLC et al.*, No. M2012-02270-COA-R3-CV, 2013 WL 179860, at *3 (Tenn. Ct. App. April 12, 2013).
[49] *See id.* (dismissing complaint where plaintiff providing notice per Tenn. Code Ann. § 29-26-121, but failed to include an affidavit of compliance until the complaint was amended).

plaintiffs.[50]

Filing a Certificate of Good Faith with an amended complaint does not cure the initial failure to file the required Certificate of Good Faith "with the complaint."[51]

## CONCLUSION

All of the Plaintiffs' claims are subject to the requirements of the Health Care Liability Act despite the Plaintiffs' pleading of other causes of action because (1) each of the Plaintiffs' claims arise from the Plaintiff's exposure to contaminated MPA during medical treatment and (2) all of the injuries "relate to" the provision of health care services. Thus, the Plaintiffs were required, but in many instances failed, to satisfy the procedural prerequisites of Tenn. Code Ann. § 29-26-122. The Tennessee Defendants are entitled to judgment, as a matter of law, on all Complaints filed without a Certificate of Good Faith.

Respectfully submitted,

**GIDEON, COOPER & ESSARY, PLC**

/s/ Chris Tardio
**C.J. Gideon, Jr., #6034
Chris J. Tardio, #23924
Matt Cline, #31076
John-Mark Zini, #31769**
Suite 1100
315 Deaderick Street
Nashville, TN 37238
(615) 254-0400

***Attorneys for the Tennessee Defendants***

---

[50] Supplemental Order on Pending Motions to Dismiss, for Summary Judgment, and to Amend [Dkt. 725].
[51] TENN. CODE ANN. § 29-26-122(a).

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be served electronically to the registered participants identified on the Notice of Electronic Filing and copies will be e-mailed or mailed via regular U.S. mail to those participants identified as unregistered this 10th day of January, 2014.

          /s/ Chris Tardio_____
          **Chris Tardio**