# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | MDL No. 2419<br>Master Dkt. 1:13-md-02419-FDS |
| THIS DOCUMENT RELATES TO:<br><br>All Actions | |

# PLAINTIFFS' STEERING COMMITTEE'S
# RESPONSE TO THE CHAPTER 11 TRUSTEE'S RENEWED MOTION TO TRANSFER

## TABLE OF CONTENTS

I.     INTRODUCTION ..................................................................................................1

II.    FACTUAL BACKGROUND ................................................................................1

III.   ARGUMENT .......................................................................................................4

    A.     Jurisdiction ...............................................................................................4

        1.     Legal Analysis ..............................................................................4

        2.     Application to the Insight cases ....................................................8

    B.     Abstention .................................................................................................9

        1.     Mandatory Abstention ...................................................................9

        2.     Discretionary Abstention .............................................................13

    C.     Transfer ...................................................................................................15

    D.     Other Tools .............................................................................................15

IV.    CONCLUSION ..................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Haber v. Massey*, 2012 U.S. Dist. LEXIS 156764 (D. Mass. Jul 27, 2012)..................................13

*In re Am. Home Mortg. Holding*, 477 B.R. 517 (Bankr. D. Del. 2012) ..........................................7

*In re Chicago, M. & St. P. & Pac. R.R.*, 6 F.3d 1184 (7th Cir. 1993)..........................................14

*In re Dow Corning Corp.*, 86 F.3d 482 (6th Cir. 1996)....................................................................5

*In re Middlesex Power Equip. & Marine, Inc.*, 292 F.3d 61 (1st Cir. 2002).................................14

*In re S.E. Hornsby & Sons Sand & Gravel Co.*, 45 B.R. 988 (Bankr. M.D. La. 1985)................12

*In re Salem Mills, Inc.*, 148 B.R. 505 (Bankr. D.N. Ill. 1992)..........................................................6

*In re Twin Labs Personal Injury Cases*, 2004 WL 435083 (S.D.N.Y. 2004)..................................5

*Podkolzin v. Amboy Bus Co.*, 402 B.R. 539 (E.D.N.Y. 2009).......................................................11

*Ret. Sys. of Ala. v. J. P. Morgan Chase & Co.*, 285 B.R. 519 (M.D. Ala. 2002) ...........................7

*Ret. Sys. of Ala. v. Merrill Lynch & Co.*, 209 F. Supp. 2d 1257 (M.D. Ala. 2002) ........................8

*Siskin Steel & Supply Co. v. Highland North LLC*, 2013 U.S. Dist. LEXIS 270 (W.D. Pa. Jan. 2, 2013)........................................................................................................................6

*Stoe v. Flaherty*, 436 F.3d 209 (3d Cir. Pa. 2006) ........................................................................12

**FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

28 U.S.C. § 157(b) .................................................................................................................1, 2, 10

28 U.S.C. § 1332(c)(2).......................................................................................................................3

28 U.S.C. § 1334.....................................................................................................................1, 2, 4, 8

## I.    INTRODUCTION

To resolve the Chapter 11 Trustee's renewed motion to transfer,[1] this Court will need to consider whether it has jurisdiction, whether the Court must or should abstain from exercising that jurisdiction, and whether the transfer provision of the bankruptcy code applies.  The Court addressed these three separate but related concepts – jurisdiction, abstention, and transfer – in resolving the Trustee's original motion to transfer.[2]  As circumstances have changed, they must now be considered anew – though the Court's earlier order provides a good starting point.

So as not to bury the lead:  the Plaintiffs' Steering Committee, again, generally agrees with the Trustee's motion.  The PSC's position is that this Court has "related-to" jurisdiction over all the state court cases involving Insight Health Corp., must only abstain from exercising that jurisdiction over the single case set for trial in April 2014 (*Wingate v. Insight Health Corp., Inc.*), should not abstain from exercising jurisdiction over the other Virginia state court cases against Insight, and the transfer provision of 28 U.S.C. §157(b)(5) applies.  This Court should, therefore, transfer all cases identified in the Trustee's Renewed Motion – except the *Wingate* case – to the MDL.

## II.    FACTUAL BACKGROUND

The Center for Disease Control reports 64 deaths and 751 incidents of fungal infection across 20 states related to contaminated NECC products since October 2012.[3]

---

[1] Chapter 11 Trustee's Renewed and Supplemental Motion to Transfer Additional Personal Injury Tort and Wrongful Death Cases to this Court Pursuant to 28 U.S.C. §§ 1334 and 157(b)(5), 13-md-2419, ECF No. 732 (D. Mass. Dec. 27, 2013).

[2] Memorandum and Order on Trustee's Motion to Transfer Cases and Related Motions, 13-md-2419, ECF No. 224 (D. Mass. May 31, 2013) ("Order").

[3] http://www.cdc.gov/hai/outbreaks/meningitis.html.

On November 2, 2012, the first civil action alleging injuries caused by New England Compounding Pharmacy, Inc. was filed in the District of Massachusetts.[4]  Other actions soon followed.

On December 21, 2012, New England Compounding Pharmacy, Inc. filed for bankruptcy.[5]  The bankruptcy filing triggered an automatic stay of actions against NECC or property of its estate.

On February 12, 2013, the Judicial Panel on Multidistrict Litigation created an MDL and transferred all actions pending in Federal Court against NECC to this district for coordinated pretrial proceedings before this Court.[6]

On March 10, 2013, the Chapter 11 Trustee filed its Motion and Memorandum in Support of Transfer of Personal Injury Tort and Wrongful Death Cases to this Court Pursuant to 28 U.S.C. §§157(b)(5) and 1334.[7]  In support, the Trustee attached four schedules.  On March 15, 2013, the Chapter 11 Trustee filed its Notice of Filing of Amended Schedule of Pending Actions in connection with its Transfer Motion.[8]  On April 16, 2013, the Chapter 11 Trustee filed Notice of Filing of Second Amended Schedule of Pending Actions in connection with his Transfer Motion.[9]

---

[4] *Erkan v. New England Compounding Pharmacy, Inc. et al*, 1:12-cv-12052-FDS (D. Mass. Nov. 2, 2012) (*Erkan*).

[5] NECC Notice of Stay by Reason of Bankruptcy, *Erkan* , ECF No. 133 (Dec. 24, 2012).

[6] Transfer Order, *In re: New England Compounding Pharmacy, Inc. Products Liability Litigation*, MDL No. 2419, ECF No. 119 (J.P.M.L. Feb. 12, 2013).

[7] 13-md-2419, ECF Nos. 37-38 ("Tr. Motion" and "Tr. Mem.").  At the April 10, 2013 status conference, the Court extended the deadline to respond to the Trustee's Transfer Motion until May 2.  ECF No. 84.

[8] 13-md-2419, ECF No. 57.

[9] 13-md-2419, ECF No. 92.

Around the same time, Insight removed the Roanoke state-court cases to federal court in the Western District of Virginia, asserting "related to" jurisdiction.  On May 10, 2013, the Western Virginia District Court assumed that it had "related to" jurisdiction, determined that it was required to abstain from exercising that jurisdiction by 28 U.S.C. §1332(c)(2), and remanded the cases.[10]

On May 21, 2013, this Court granted in part and denied in part the Trustee's original motion to transfer cases and denied the Roanoke plaintiffs' motion for abstention.[11]  The Court asserted jurisdiction over, and transferred, all federal and state court cases against NECC and its affiliates, including cases where the claims are third-party claims for contribution or indemnity. The Court did not, then, transfer any state-court cases that did not involve claims against NECC or its affiliates or asserted indemnity or contribution claims against NECC.  The Court noted, however, that it might revisit this decision if a defendant in a state court action filed a claim for contribution or indemnity against the estate:  "If the balance of factors shifts over time, the Court can revisit the issue, and if necessary (and appropriate) can issue further orders concerning the exercise of related-to jurisdiction."[12]

On December 20, 2013, Insight filed a proof of claim against the NECC estate asserting claims against NECC for indemnity and contribution.[13]

---

[10] *Wingate v. Insight Health Corp.*, 2013 U.S. Dist. LEXIS 67358, at *2 (W.D. Va. May 10, 2013).

[11] *See generally* Order.

[12] Order at 19.

[13] *See* Exhibit 2 to the Trustee's Memorandum of Law in Support of Chapter 11 Trustee's Renewed and Supplemental Motion to Transfer Additional Personal Injury Tort and Wrongful Death Cases to this Court Pursuant to 28 U.S.C. §§ 1334 and 157(b)(5), 13-md-2419, ECF No. 733 (D. Mass. Dec. 27, 2013).

On December 31, 2014, the Roanoke Plaintiffs sent a letter to the Trustee demanding that the Trustee file an adversary proceeding against Insight to seek an order equitably subordinating Insight's claims against NECC.  The Trustee responded, declining to file an adversary proceeding and noting that Insight's claim was likely to – eventually – be disallowed or subordinated.  Copies of these letters are attached to the Roanoke Gentry Locke Plaintiffs' opposition.

## III.     ARGUMENT

### A.     Jurisdiction

#### 1.     Legal Analysis

Congress set out district court's jurisdiction over Chapter 11 bankruptcy cases in 28 U.S.C. §1334.  Section 1334(a) provides that district courts have original and exclusive jurisdiction of all Chapter 11 cases.  Section 1334(b) provides that district courts have original but not exclusive jurisdiction or civil proceedings "arising in" or "related to" Chapter 11 cases.

In response to the Trustee's original motion to transfer, the Plaintiffs' Steering Committee took the position that "[t]here is an open question as to whether this Court would have 'related to' jurisdiction over state court, unaffiliated, non-debtor only, unasserted contribution claim cases."[14]  The Court agreed, and declined to transfer cases naming only unaffiliated defendants who had not yet asserted indemnification or contribution claims: "as to state court cases in which a claim against NEC or an affiliated entity or individual is possible, but has not yet been asserted, the Court will assume the existence of subject-matter jurisdiction, but will abstain from exercising any such jurisdiction."[15]

---

[14] Plaintiffs' Steering Committee's Response to the Chapter 11 Trustee's Motion to Transfer, 13-md-2419, ECF No. 125 (D. Mass. May 2, 2013) ("PSC Response").

[15] Order at 18.

This Court determined that it had subject matter jurisdiction over state court cases where a defendant has asserted a claim for contribution or indemnity against NECC:

> "the Court concludes that it has related-to subject-matter jurisdiction under §1334 over any state-court case in which any plaintiff has asserted a claim, or any defendant has asserted a claim for contribution or indemnity, against NECC or any affiliated entity or individual."[16]

The Court also suggested that a state-court defendant filing a claim for indemnity or contribution against the estate may be enough to create "related to" jurisdiction:

> [I]f the Bankruptcy Court were to set a relatively early bar date for the filing of claims against the estate, it would appear that any defendant in a state court action would be effectively forced to decide whether it wanted to file a claim for contribution or indemnity against the estate.  Such a claim, in turn, would probably permit the exercise of federal jurisdiction over the underlying matter.

The Trustee's memorandum in support of his renewed motion to transfer states, "[n]ow that Insight has filed its proof of claim … against NECC for indemnity and contribution, the basis for subject matter jurisdiction is clear" and cites the Court's earlier order and three cases from S.D.N.Y.[17]  But the cases cited by the Trustee do not stand for the proposition that a state court defendant's filing of a proof of claim (or otherwise asserting a contribution or indemnity

---

[16] *Id.* at 18.

[17] Trustee's Memorandum of Law in Support of Chapter 11 Trustee's Renewed and Supplemental Motion to Transfer Additional Personal Injury Tort and Wrongful Death Cases to this Court Pursuant to 28 U.S.C. §§ 1334 and 157(b)(5), 13-md-2419, ECF No. 733 (D. Mass. Dec. 27, 2013) at 7 (citing *Masterwear Corp. v. Rubin Baum Levin Constant & Friedman (In re Masterwear Corp.)*, 241 B.R. 511 (Bankr. S.D.N.Y. 1999); *In re CHATEAUGAY CORP.*, 213 B.R. 633 (S.D.N.Y. 1997); *Bond Street Assocs. v. Ames Dep't Stores*, 174 B.R. 28 (S.D.N.Y. 1994)).  The Trustee also cites *In re Dow Corning Corp.*, 86 F.3d 482, 494 (6th Cir. 1996) and *In re Twin Labs Personal Injury Cases*, 2004 WL 435083 (S.D.N.Y. 2004) (involved theoretical but unasserted indemnity claims).  Both were discussed at length in the Plaintiffs' Steering Committee's earlier response.  *See* PSC Response at 7-8.

claim) against the estate creates related to jurisdiction.  None of these cases involve filing a proof of claim against the debtor.  Two cases are examples where courts considered whether there was related to jurisdiction based on hypothetical (unasserted) indemnification claims.  And in the third, the debtor's bylaws explicitly obligated it to indemnify a third party defendant.

In *In re CHATEAUGAY CORP.*, 213 B.R. 633 (S.D.N.Y. 1997), the court observed at the outset that a potential indemnity claim appeared to meet the test for "related to" jurisdiction, then noted that the appellees had not articulated a reasonable legal basis for such a claim, and concluded that (in any event) "the mere assertion of an indemnity claim against a debtor, no matter how baseless, cannot trigger bankruptcy jurisdiction."

In *Bond Street Assocs. v. Ames Dep't Stores*, 174 B.R. 28 (S.D.N.Y. 1994), there was no asserted indemnification claim, there was no indemnification agreement, but the court observed that "lessees will normally have a claim against the debtor-assignee for losses caused by the assignee's breach" and concluded that it falls within the scope of "related to" jurisdiction.

*In re Masterwear Corp.*, 241 B.R. 511 (Bankr. S.D.N.Y. 1999) involved a third-party complaint impleading third-party defendants for indemnity.  Under the debtor's bylaws, it was obligated to indemnify the third party defendants.  It does not appear that there was any doubt about whether the debtor had an obligation to indemnify.  Therefore, the Court concluded that it had "related to" jurisdiction.  (But, as the debtor was no longer part of the suit, the bankruptcy court exercised its discretion to abstain for asserting jurisdiction.)

The Plaintiffs' Steering Committee was able to find one case that held that filing a proof of claim for indemnification in the bankruptcy is enough to create "related to" jurisdiction: *In re*

*Salem Mills, Inc.*, 148 B.R. 505, 510 (Bankr. D.N. Ill. 1992).[18]  There, the court determined that filing a proof of claim by a third-party against a debtor in order to seek to enforce an indemnity agreement created related to jurisdiction.  The court noted that filing the proof of claim demonstrated "real or tangible impact" that the indemnification agreement could have on the estate.

The Roanoke plaintiffs cite a series of cases for the proposition that filing a proof of claim does not automatically create related-to jurisdiction.[19]  These cases suggest that a proof of claim may, but does not necessarily, create related-to jurisdiction.

In *Ret. Sys. of Ala. v. J. P. Morgan Chase & Co.*, 285 B.R. 519 (M.D. Ala. 2002), the underwriter defendants filed a proof of claim in the bankruptcy court.  The court noted that it was "hesitant to conclude" that filing a proof of claim for indemnification guaranteed "related to" jurisdiction.  The court suggested that a close reading of the indemnity agreement was in order, and noted that "[t]he filing of a proof of claim in the bankruptcy court will not erase the contingency contained in the indemnity agreement."  Ultimately, the court exercised discretionary abstention and did not decide whether filing a proof of claim for indemnification in the bankruptcy guaranteed "related to" jurisdiction.

In *Siskin Steel & Supply Co. v. Highland North LLC*, 2013 U.S. Dist. LEXIS 270 (W.D. Pa. Jan. 2, 2013), the Court noted that filing a proof of claim may create related to jurisdiction, and found that it had "related to" jurisdiction even though the debtor disputed the claim, noting "[w]hat is key here is the fact that Siskin has filed a proof of claim against SIAG."  The Court

---

[18] *See also Siskin Steel & Supply Co. v. Highland North LLC*, 2013 U.S. Dist. LEXIS 270 (W.D. Pa. Jan. 2, 2013) (discussed *infra*).

[19] *See* Roanoke Gentry Locke Plaintiffs' Memorandum of Law in Opposition to Trustee's Renewed Motion to Transfer and in support of Renewed Motion for Abstention, 13-md-2419, ECF No. 764 (D. Mass Jan. 9, 2014), at 9-10.

observed that "under these circumstances, the outcome of the mechanic's lien complaint [sought to be transferred] could conceivably have a direct effect on the SIAG bankruptcy estate."[20]

In *In re Am. Home Mortg. Holding*, 477 B.R. 517 (Bankr. D. Del. 2012), the court mentioned that "if the third party defendants filed a proof of claim in the debtor's bankruptcy for statutory or contractual indemnification, such that the action's outcome could *conceivably* have a *direct* impact upon the debtor's estate, there is some suggestion that the bankruptcy court may possess 'related to' jurisdiction."[21]  But this issue was not before the court.

*Ret. Sys. of Ala. v. Merrill Lynch & Co.*, 209 F. Supp. 2d 1257 (M.D. Ala. 2002) is a precursor to the *J.P. Morgan* case cited above.  The Court noted that the defendants concede that there was uncertainty about the viability of their potential (unasserted) indemnity claims, concluded that subject matter jurisdiction was, thus, unclear, and ultimately exercised discretionary abstention.

### 2.    Application to the Insight cases

At the time of the Court's order, Insight had not asserted any contribution or indemnification claims.  Insight has since filed a proof of claim in the bankruptcy.

The review of the case law above suggests that, while it is far from overwhelming, there is some precedent to support this Court exercising "related to" jurisdiction over the Insight cases based on Insight's filing a proof of claim for indemnification.  The Insight claim, on its merits, seems tenuous at best.  And other than *Salem Mills* and *Siskin Steel*, there appears little other precedent for the exercise of jurisdiction.  However, the Insight claim is no ordinary proof of claim; it seeks potentially massive recovery in circumstances of a highly limited fund.  In these

---

[20] *Id.* at 22.

[21] *Id.* (emphasis in original).

truly unique circumstances, the Insight claim can theoretically have an overwhelming effect on the claims of all victims nationwide.  Jurisdiction should be asserted.

We now turn to whether abstention is warranted.

**B.      Abstention**

Congress identified when a district court must or should abstain from exercising jurisdiction in cases "arising in" or "related to" Chapter 11 cases.  28 U.S.C. §1334(c)(2) identifies when a district court *must* abstain from exercising jurisdiction.  Section §1334(c)(1) provides that, when abstention is not strictly required, a district court may still exercise discretion to abstain from exercising jurisdiction.

**1.      Mandatory Abstention**

Section 1334(c)(2) provides that,

> Upon timely motion of a party in a proceeding based upon a State
> law claim or State law cause of action, related to a case under title
> 11 but not arising under title 11 or arising in a case under title 11,
> with respect to which an action could not have been commenced in
> a court of the United States absent jurisdiction under this section,
> the district court shall abstain from hearing such proceeding if an
> action is commenced, and can be timely adjudicated, in a State
> forum of appropriate jurisdiction.

Based on representations made by the Trustee and the Roanoke plaintiffs, as well as the Plaintiffs' Steering Committee's independent understanding of the situation, there is no dispute that the plaintiffs have requested abstention, the cases involve state law causes of action, and the only basis for federal jurisdiction over the Roanoke plaintiffs' claims is the "related to" jurisdiction arising from Insight's contribution and indemnity claims against NECC (as evidenced by Insight's proof of claim against the NECC estate).  These cases thus could not have been otherwise filed or removed to federal court.

The Court's earlier order acknowledged that a literal reading of §1334(c)(2) "leads to the conclusion that personal injury and wrongful death claims asserted against non-debtor third parties… and not against the bankruptcy estate are subject to … mandatory abstention."[22]  This is the conclusion that was reached by the first district court to consider this issue in the Insight cases.[23]

But, from there, the Court went on to consider Congress's intention in enacting 28 U.S.C. §157(b)(1).  Section 157(b)(1) provides that bankruptcy judges may hear "core proceedings" arising under Chapter 11.  Section 157(b)(2) identifies examples of "core proceedings" but makes clear that the list is not exhaustive.[24]  The only relevant example of a "core proceeding" is 157(b)(2)(B):

> [A]llowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 *but not liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate* for purposes of distribution in a case under title 11. (Emphasis added).

Embedded in this example of a core proceeding is the only example of a "non-core" proceeding given:  "liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution" is not a core proceeding.

Section 157(b)(4) provides that,

> Non-core proceedings under section 157(b)(2)(B) shall not be subject to the mandatory abstention provisions of section 1334(c)(2).

---

[22] Order at 20.

[23] *Wingate v. Insight Health Corp.*, 7:13-cv-00142, 2013 U.S. Dist. LEXIS 67358, at *2 (W.D. Va. May 10, 2013).

[24] *See* 28 U.S.C. §157(b)(2)(A-P).

The Court determined earlier that the phrase "personal injury tort or wrongful death claims against the estate" can fairly be read to encompass claims for contribution or indemnity that derive from personal injury or wrongful death claims, reading the exception to the mandatory abstention provision very broadly.[25]  When 157(b)(2)(B) is read so broadly, it is hard to imagine any claims that would be subject to mandatory abstention.  But the mandatory abstention provision must mean something; just as Congress must have intended something by enacting §157(b)(2)(B), Congress must have intended that §1334(c)(2) require courts from abstaining to exercise jurisdiction in *some* situations.

In the Plaintiffs' Steering Committee's view, §1334(c)(2) reflects Congress's respect for a federalist system in a situation where an otherwise removable state court claim against a creditor can be adjudicated before substantial proceedings to formulate a plan of reorganization have occurred in the bankruptcy.  The reasons for this follow.

The Plaintiffs' Steering Committee suggests that reading §157(b)(4) and §157(b)(2)(B) together leads to a two part conclusion: (i) a district court must abstain from hearing cases that are related to a Chapter 11 case – but could not have been otherwise filed in or removed to federal district court – if a filed action can be timely adjudicated in a state court but (ii) is not required to abstain when the proceedings are for liquidation or estimation of contingent or unliquidated *personal injury tort or wrongful death claims* against the estate for purposes of distribution.  At bottom, Insight's claim for indemnification from NECC is not a personal injury tort or wrongful death claim and thus should not be excluded from the mandatory abstention provision.

---

[25] Order at 23.

From the Plaintiffs' Steering Committee's perspective, the question becomes:  Will the Roanoke plaintiffs' claims be timely adjudicated in state court?  If so, the Court is required to abstain from exercising related-to jurisdiction.  If not, then the Court moves on to consider whether permissive abstention is warranted.

One court suggests that matters are timely adjudicated when the length of the proceedings would be about the same in a state or federal court.[26]  Another found that a matter was not timely adjudicated when a state law dispute had made "absolutely no progress" since it was filed over a year earlier.[27]  The Third Circuit has noted that "timeliness in this context must be determined with respect to needs of the Title 11 case and not solely by reference to the relative alacrity with which the state and federal court can be expected to proceed."[28]

As far as the Third Circuit's concerns about "the needs of the Title 11 case" go, the statute balances a state court's ability to adjudicate the rights of the parties in a matter that could not otherwise be in federal court and the needs of the bankruptcy to know the exposure the estate potentially faces as a result of the defendant's indemnification claim.

Here, the *Wingate* case is scheduled for trial in Virginia state court in April, a mere three months from now.  As of now, it does not appear that a plan of reorganization will be substantially formulated by April.  The mandatory abstention provision, then, dictated that the *Wingate* case be left where it is.

As to the other Insight state court cases, whether they will be timely adjudicated appears to be, at best, an open question.  The next case set for trial after the *Wingate* case is not set for

---

[26] *Podkolzin v. Amboy Bus Co.*, 402 B.R. 539 (E.D.N.Y. 2009).

[27] *In re S.E. Hornsby & Sons Sand & Gravel Co.*, 45 B.R. 988 (Bankr. M.D. La. 1985).

[28] *Stoe v. Flaherty*, 436 F.3d 209 (3d Cir. Pa. 2006).

trial until August 2014.[29]  There is currently a proposed settlement in principle with the insiders,

hope that a finalized settlement agreement will be in place by the end of the month, and an

expectation that a plan will be proposed this spring (though confirmation will come later).  It

does not appear that the other Virginia cases will be tried until summer at the earliest, and

therefore they do not appear to trigger mandatory abstention.  We now turn to whether

discretionary abstention over the Insight cases (other than *Wingate*) is warranted.

### 2.      Discretionary Abstention

Section 1334(c)(1) provides that,

> Except with respect to a case under chapter 15 of title 11, nothing
> in this section prevents a district court in the interest of justice, or
> in the interest of comity with State courts or respect for state law,
> from abstaining from hearing a particular proceeding arising under
> title 11 or arising in or related to a case under title 11.

A district court has discretion to abstain from exercising jurisdiction over proceedings that are

"related to" a Chapter 11 case in the interest of justice, comity with state courts, or respect for

state law.  Whether to abstain depends on whether justice is better served by this Court or

another court deciding the matter in question.[30]

In the Plaintiffs' Steering Committee's last submission on this topic, we took the position

that – while it might then have been a close call – the twelve factors relevant to evaluating

whether a court should abstain from exercising "related to" jurisdiction tipped in favor of

abstaining from exercising related-to jurisdiction over state-court cases that did not name a

defendant affiliated with NECC and where no contribution or indemnity claim had been asserted.

---

[29] *See* Roanoke Frith and Ellerman Plaintiffs' Memorandum of Law in Opposition to Trustee's
Renewed Motion to Transfer, 13-md-2419, ECF No. 766 (D. Mass Jan. 9, 2014) at 3 ("Plaintiffs'
cases are pending in the Roanoke City Circuit Court in Roanoke, Virginia.  The court has set
each case for trial, with the first beginning in August 2014…").

[30] *Haber v. Massey*, 2012 U.S. Dist. LEXIS 156764, at *21(D. Mass. Jul 27, 2012).

We noted, however, that "[t]he bankruptcy issues of potential contribution or indemnity claims are, by definition, not yet asserted.  If and when jurisdiction is exercised over these cases, the relative importance of federal bankruptcy law and federal proceedings will weigh against abstention."[31]   Now that Insight has filed a proof of claim, the situation has materially changed. The Plaintiffs' Steering Committee now believes that this Court should not choose to permissively abstain from exercising its "related-to" jurisdiction over the non-*Wingate* Insight cases; that is, this Court should exercise jurisdiction over all of the Insight cases *except* for Wingate.

The Plaintiffs' Steering Committee agrees with both Virginia plaintiffs' counsel and the Trustee that Insight's claim against the NECC estate should be either subordinated to tort victims' claims or disallowed outright.[32]   We understand the Trustee's position to be that, while he will not now agree to subordinate or disallow Insight's claim, those claims may eventually be subordinated or disallowed.  From the Plaintiffs' Steering Committee's perspective, it is critically important that the Virginia cases – other than *Wingate* – be transferred here so that it can be ensured that this will occur.[33]   This counsels in favor of transfer or, (put differently) weighs heavily against permissively abstaining from exercising jurisdiction.

---

[31] *See* PSC Response at 13.

[32] *See* Roanoke Gentry Locke Plaintiffs' Memorandum of Law in Opposition to Trustee's Renewed Motion to Transfer and in support of Renewed Motion for Abstention, 13-md-2419, ECF No. 764 (D. Mass Jan. 9, 2014), at 10-14.

[33] It may be that Insight's proof of claim is a sufficient basis for equitable subordination alone, and that transferring the state court claim to the MDL is not, strictly speaking, necessary for subordination to occur; but as the Trustee's response indicates that the claim has not yet been subordinated the Plaintiffs' Steering Committee believes that, out of an abundance of caution, the Insight cases (less *Wingate*) should be transferred here so that the Court can ensure this happens.

14

Courts have articulated twelve factors relevant to evaluating whether a court should abstain from exercising "related to" jurisdiction.[34]  Courts should apply these factors flexibly; no one factor is determinative.[35]  Should the Court find that it is not strictly required to abstain from exercising related-to jurisdiction over the *Wingate* case, the Plaintiffs' Steering Committee believes that these twelve factors, on the whole, support discretionary abstention for that single case (as explained in the Roanoke plaintiffs' submissions).[36]

## C.     Transfer

28 U.S.C. §157(b)(5)  provides:

> The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

As discussed above, §157(b)(4)(b)'s exception to mandatory abstention does not apply (*see supra* at p. 10).[37]  The court may therefore transfer the non-*Wingate* cases to this district.

## D.     Other Tools

The Trustee's motion concerns only an interpretation of the Court's powers under the bankruptcy statutes.  As the Plaintiffs' Steering Committee indicated before, if the circumstances

---

[34] The First Circuit has expressly mentioned at least three factors that other courts have considered, namely (1) the extent to which state law issues predominate over bankruptcy issue, (2) the presence of a related proceeding commenced in state court or other non-bankruptcy court, and (3) the likelihood that he commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties.  *See In re Middlesex Power Equip. & Marine, Inc.*, 292 F.3d 61, 69 (1st Cir. 2002).

[35] *See*, *e.g.*, *In re Chicago, M. & St. P. & Pac. R.R.*, 6 F.3d 1184, 1189 (7th Cir. 1993).

[36] *See* Roanoke Gentry Locke Plaintiffs' Memorandum of Law in Opposition to Trustee's Renewed Motion to Transfer and in support of Renewed Motion for Abstention, 13-md-2419, ECF No. 764 (D. Mass Jan. 9, 2014), at 16-18.

[37] And, as the court concluded in its Order, "§157(b)(5) does not create additional jurisdiction for district courts."  Order at 11.

change, then this Court may have other options.  For example, if this Court finds itself with jurisdiction over a finalized settlement or plan and finds the need to protect that jurisdiction, the Court may use channeling injunctions or other tools to do so.[38]

## IV.   CONCLUSION

Jurisdiction, abstention, and transfer are matters on which reasonable minds can disagree. The Plaintiffs' Steering Committee asks the Court to grant the Trustee's Renewed Motion for Transfer in large part.  But we urge this Court to deny, without prejudice, the Trustee's Motion with respect to the *Wingate* action.

---

[38] *See* PSC Response at 18-19 (discussing channeling injunctions).

Dated:  January 17, 2014

Respectfully submitted,

**/s/ Thomas M. Sobol**
Thomas M. Sobol
Kristen Johnson Parker
HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA  02142
Telephone:  (617) 482-3700
Facsimile:  (617) 482-3003
tom@hbsslaw.com
kristenjp@hbsslaw.com

*Plaintiffs' Lead Counsel*

Elizabeth J. Cabraser
Mark P. Chalos
Annika K. Martin
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
150 Fourth Avenue North, Suite 1650
Nashville, TN 37219-2417
Telephone:  615.313.9000
Facsimile:  615.313.9965
ecabraser@lchb.com
mchalos@lchb.com
akmartin@lchb.com

*Federal/State Liaison*

Marc E. Lipton
LIPTON LAW
18930 W. 10 Mile Road
Southfield, MI  48075
Telephone:  (248) 557-1688
Facsimile:  (248) 557-6344
marc@liptonlawcentercom

Kim Dougherty
JANET, JENNER & SUGGS, LLC
31 St. James Avenue, Suite 365
Boston, MA  02116
Telephone:  (617) 933-1265
kdougherty@myadvocates.com

Patrick T. Fennell
CRANDALL & KATT
366 Elm Avenue, S.W.
Roanoke, VA  24016
Telephone:  (540) 342-2000
pfennel@crandalllaw.com

Mark Zamora
ZAMORA FIRM
6 Concourse Way, 22nd Floor
Atlanta, GA  30328
Telephone:  (404) 451-7781
Facsimile:  (404) 506-9223
marc@markzamora.com

J. Gerard Stranch, IV
Benjamin A. Gastel
BRANSETTER, STRANCH & JENNINGS
PLLC
227 Second Avenue North
Nashville, TN  37201
Telephone:  (615) 254-8801
Facsimile:  (615) 255-5419
gerards@branstetterlaw.com
beng@branstetterlaw.com

*Plaintiffs' Steering Committee*

## CERTIFICATE OF SERVICE

I, Thomas M. Sobol, hereby certify that I caused a copy of the foregoing to be filed electronically via the Court's electronic filing system. Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system, and notice of these filings will be sent to these parties by operation of the Court's electronic filing system.

Dated: January 17, 2014

/s/ Thomas M. Sobol
Thomas M. Sobol, BBO # 471770