
**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | MDL No. 2419<br>Master Dkt. 1:13-md-02419-FDS |
| THIS DOCUMENT RELATES TO:<br><br>All Actions | |

**PLAINTIFFS' STEERING COMMITTEE'S MEMORANDUM IN SUPPORT OF THEIR MOTION FOR ENTRY OF CASE MANAGEMENT ORDER ESTABLISHING ASSESSMENT PROCEDURES TO FUND COMMON BENEFIT ACCOUNT**

**TABLE OF CONTENTS**

I.   INTRODUCTION AND BACKGROUND ........................................................................1

II.  THIS COURT HAS THE EQUITABLE, INHERENT, AND RULE-BASED AUTHORITY TO ESTABLISH A COMMON BENEFIT ACCOUNT FUNDED BY THE ASSESSMENT OF A PERCENTAGE HOLD BACK ON ALL RECOVERIES.....3

III. THE COMMON BENEFIT PROCEDURE AS USED IN THE MDL CONTEXT. ..........6

IV.  THE PERCENTAGE SOUGHT AS A COMMON BENEFIT HOLD BACK FOR MDL NO. 2419 IS APPROPRIATE GIVEN THE PARTICULAR CIRCUMSTANCES OF THIS LITIGATION. .................................................................................................................9

V.   CONCLUSION...............................................................................................................11

# **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980)..................................................................8

*Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885) ....................................................7

*In re Air Crash Disaster at Florida Everglades* (MDL No. 139).......................................5, 8

*In re Diet Drugs Prod. Liab. Litig.*, 582 F.3d 524 (3d Cir. 2009) .......................................10

*In re FTC Line of Business Report Litig.*, 626 F.2d 1022 (D.C. Cir. 1980) .........................9

*In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.* (MDL No. 1708) .........7

*In re MGM Grand Hotel Fire Litig.* (MDL No. 453) .........................................................6, 8

*In re: Nineteen Appeals Arising Out of the San Juan DuPont Plaza Hotel Fire Litig.*, 982 F.2d 603 (1st Cir. 1992)..................................................................................................8

*In re San Juan DuPont Plaza Hotel Fire Litig.* (MDL No. 721)........................................5, 8

*In re Thirteen Appeals Arising Out of the San Juan DuPont Plaza Hotel Fire Litig.*, 56 F.3d 295 (1st Cir. 1995)...................................................................................................8

*In re Vioxx Prods. Liab. Litig.* (MDL No. 1657)..................................................................7

*Skelton v. General Motors Corp.*, 860 F.2d 250 (7th Cir. 1988) .........................................9

*Smiley v. Sincoff*, 958 F.2d 498 (2d Cir. 1992)....................................................................8

*Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161 (1939) ..........................................................7

*Trustees v. Greenough*, 105 U.S. 527 (1881) ......................................................................7

*Turner v. Murphy Oil USA, Inc.*, 422 F. Supp. 2d 676 (E.D. La. 2006).............................10

*Walitalo v. Iacocca*, 968 F.2d 741 (8th Cir. 1992) ..............................................................8

**FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

28 U.S.C. § 1407................................................................................................................4, 7

**OTHER AUTHORITIES**

Alan Hirsch and Diane Sheehey, *Awarding Attorneys' Fees and Managing Fee Litigation* (Federal Judicial Center 1994)........................................................................9

MANUAL FOR COMPLEX LITIGATION (FOURTH) ("MCL 4TH") ...................................................... 2, 3

Mary Frances Derfner & Arthur D. Wolf, *Court Awarded Attorney Fees § 2.03* ......................... 10

William B. Rubinstein "On What A 'Common Benefit Fee' Is, Is Not, and Should Be," ............ 13

The Plaintiffs' Steering Committee respectfully submits this memorandum in support of its motion for entry of an order establishing procedures to fund a Common Benefit Account via a percentage assessment to be held back from every recovery by plaintiffs in MDL No. 2419 and Participating Parties[1] in non-MDL cases. This request is made with the understanding and expectation that, under the circumstances of this case, limited funds may be available, and thus the focus is on maximizing recovery for the victims; accordingly, any attorney reimbursement or compensation, if and when awarded by the Court, must be modest.

## I.   INTRODUCTION AND BACKGROUND

On February 12, 2013, the Judicial Panel on Multidistrict Litigation issued its Transfer Order under 28 U.S.C. § 1407 centralizing all actions pending in federal court related to injuries arising from the alleged contamination of drugs compounded at New England Compounding Pharmacy in this Court for coordinated or consolidated pre-trial proceedings. Since then, this Court has been engaged in the active judicial management and supervision of the resulting MDL No. 2419 docket. The intensive and sustained activity in this litigation thus far has included conducting extensive fact investigation, informing and coordinating activities among claimants nationwide, engaging in motion practice, establishing a Court-sanctioned mediation program, drafting and filing a Master Complaint and Short Form Complaints, and conducting formal discovery against over 70 clinics and other national defendants.

In its April 9, 2013, MDL Order No. 2 [ECF No. 82], this Court appointed Plaintiffs' Lead Counsel and a Plaintiffs' Steering Committee. These counsel (hereinafter collectively "PSC") have spearheaded the MDL litigation for the common benefit of all Plaintiffs throughout

---

[1] Participating Parties are those that have entered into the Participation Agreement that is attached as Exhibit A to the proposed Order filed concurrently with this motion.

these proceedings. The PSC has done so on a contingent basis, advancing the substantial expenses necessary to conduct the litigation, and investing substantial time in its sustained prosecution.

In recognition of the potentially limited-fund nature of this case, however, and with the desire to maximize the amount of recovery for victims, the PSC's mission is to limit fees and expenses and run a streamlined litigation. *See* Feb. 27, 2013, Letter to Court re Proposed Plaintiffs' Structure [ECF No. 20]; Mar. 19, 2013, Proposal for PSC Slate [ECF No. 64]. In keeping with that austerity philosophy, the PSC has crafted its common benefit proposal with the understanding that where, as here, some Defendants have limited assets, the total recovery, despite the best of efforts, must be predicted to be modest; the resulting small percentage of that recovery going to compensate attorneys must also be modest. The PSC's driving goal throughout is to maximize the recovery that goes to the victims here.

Nevertheless, under the MANUAL FOR COMPLEX LITIGATION (FOURTH) § 22.62 and the venerable "common benefit" doctrine promulgated by the Supreme Court over 130 years ago, the PSC is entitled to seek and obtain reimbursement and compensation for its common benefit expenses and services from the recoveries of plaintiffs in MDL No. 2419 and participating parties in non-MDL cases, and the litigation is currently at an appropriate juncture to establish a court-supervised common benefit account and a procedure for assessing and setting aside funds into that account for such eventual common benefit remuneration.[2] It is important to note, however, that the PSC is requesting only the establishment of an assessment procedure at this

---

[2] In its April 11, 2013, MDL Order No. 3 [Dkt. No. 85], this Court authorized Lead Counsel to establish a bank account for the collection and deposit of assessments into a Common Benefit Fund. The PSC requests that this Court have exclusive and continuing jurisdiction over the Common Benefit Fund and retain jurisdiction over the Common Benefit Fund, any disputes that might arise under the Common Benefit Order, and the ultimate termination of the Common Benefit Fund, even after the close of this MDL.

stage, and that the PSC fully recognizes that the establishment of a common benefit account and assessment procedure has no bearing on or predictive value regarding what amount, if any, the Court may later award as common benefit fees or costs in these proceedings.

The establishment of such a court-supervised common benefit account, funded by a percentage assessment on recoveries by all plaintiffs benefiting from the common work, is a customary feature of contemporary MDLs, and is familiar to litigants in a wide array of mass tort, consumer, and marketing multi-district cases.

**II.     THIS COURT HAS THE EQUITABLE, INHERENT, AND RULE-BASED AUTHORITY TO ESTABLISH A COMMON BENEFIT ACCOUNT FUNDED BY THE ASSESSMENT OF A PERCENTAGE HOLD BACK ON ALL RECOVERIES.**

Courts appointed to serve as MDL transferee courts are vested with broad discretion and authority to coordinate and supervise the complex multidistrict litigation that is centralized under their stewardship. To manage such complex litigation, the transferee court may appoint liaison counsel and plaintiffs' steering committees to coordinate and conduct common question investigation, discovery, and other pretrial preparation and trial work. *See* MANUAL FOR COMPLEX LITIGATION (FOURTH) ("MCL 4TH") § 22.62. The "necessary corollary to court appointment of [such] counsel . . . is the power to assure that these attorneys receive reasonable compensation for their work." *Id.*

To ensure this "reasonable compensation," multidistrict transferee courts routinely enter orders that create a funded source for future court-approved compensation to liaison counsel and court-appointed committees. Funds held in such court-supervised common benefit accounts are distributed to counsel only after court scrutiny and approval of the reasonableness of the time and costs for which awards are requested. *See generally*, MCL 4TH §§ 10.223; 14.215;

3

14.2214.232).[3]

The MCL 4TH recognizes and endorses the hold back mechanism, noting that "MDL judges generally issue orders directing that defendants who settle MDL-related cases contribute a fixed percentage of the settlement to a general fund to pay national counsel." *Id.* § 20.312; see also *id.* §§ 11.211, 14.211, 14.215, 22.927.

This procedure is based on the basic equitable principle that a party who expended resources to secure a common benefit should be compensated proportionally by all those who have benefited. This longstanding "common benefit doctrine" predates the MDL system – in fact the Supreme Court first articulated this doctrine over 130 years ago, long before the advent of modern aggregate litigation, in the landmark decision of *Trustees v. Greenough*, 105 U.S. 527 (1881). Following *Greenough*, a long line of Supreme Court authority has reaffirmed that it is unjust enrichment and contrary to public policy for claimants who benefit from others' work in a litigation to do so without contributing to the cost of the efforts that produced the benefit, and therefore those who work for the common benefit have a right to payment from those who benefited from their work. *See, e.g., Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 166 (1939). The common benefit doctrine "reflects

---

[3] The MDL court's case management authority over complex litigation extends beyond the evaluation, determination, and award of any common benefit fees, to the regulation of the contingent fees of all plaintiffs' attorneys who appear before it. While not always exercised, this authority is available to limit, or "cap" in appropriate circumstances, contingent fees that would otherwise consume too much of the plaintiffs' recoveries. *See, e.g.*, *In re Vioxx Prods. Liab. Litig.* (MDL No. 1657), 650 F. Supp. 2d 549 (E.D. La. 2010) (MDL transferee court imposed a 32% contingent fee cap based on the court's inherent authority, and its implied authority from the settlement, to limit the fees, and promote the just and efficient conduct of the litigation under 28 U.S.C. § 1407(a)). In *Vioxx* the common benefit fee ultimately awarded was deducted from the private contingent fees, rather than the plaintiffs' share of the settlement proceeds. *See also In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.* (MDL No. 1708), 2008 W.L. 682174, at *18 (D. Minn. 2008) (MDL court imposed an aggregate cap of approximately 37% as private contingency plus common benefit fees).

4

the traditional practice in courts of equity" and "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

The venerable equitable common benefit doctrine reflects the inherent ability of *every* federal district judge to do equity in all substantive and procedural litigation contexts, because the power to withhold, collect, and spread costs through a common benefit mechanism is "part of the original authority of the Chancellor to do equity in a particular situation." *See Sprague*, 307 U.S. at 166.

The common benefit doctrine has become a staple of effective case management in modern complex litigation, especially contemporary MDL litigation. The Fifth Circuit led the way in *In re Air Crash Disaster at Florida Everglades* (MDL No. 139), 549 F.2d 1006 (5th Cir. 1977) ("*Florida Everglades*"), which followed the Supreme Court's *Greenough*, *Sprague,* and *Pettus* decisions to hold that proper management of multidistrict litigation requires the entry of what have since become known as "common benefit," "assessment" or "hold back" orders. *Florida Everglades* gave practical implementation to court-appointed lead/liaison counsel and PSC structures by holding that because "lead counsel's services are in part for all parties with like interests and their lawyers," a MDL transferee court is obligated to compensate counsel who developed and prosecuted a case from the recovery of others who reaped the benefit of that work and followed on its coat-tails. *Id.* at 1017. The doctrine has since been adopted in federal courts across the nation, including in the First Circuit.[4]

---

[4] *See, e.g., In re San Juan DuPont Plaza Hotel Fire Litig.* (MDL No. 721), 111 F.3d 220, 223-25 (1st Cir. 1997); *In re: Nineteen Appeals Arising Out of the San Juan DuPont Plaza Hotel Fire Litig.*, 982 F.2d 603 (1st Cir. 1992); *In re: Thirteen Appeals Arising Out of the San Juan DuPont Plaza Hotel Fire Litig.*, 56 F.3d 295 (1st Cir. 1995); *see also Smiley v. Sincoff*, 958 F.2d 498, 501 (2d Cir. 1992) ("District courts have exercised this power to establish fee structures

Indeed, the common benefit doctrine is of particular, practical, and immediate utility in the MDL context. By designating a relatively small group of plaintiffs' attorneys with substantial resources that are directed by the Court to risk these resources in a common cause—the prosecution of the MDL on behalf of all plaintiffs—the Court assures at the outset that significant benefit accrues to all plaintiffs, their counsel, and to the system itself throughout the proceedings. Such benefit creation includes the real net benefit of lower costs and less work for individual counsel, some of which would otherwise be required to conduct all discovery, replicate the time and costs of litigating all motions, prepare for trial, and retain all experts on their own. The only work entitled to compensation from a common benefit fund is work that has demonstrably provided a benefit to all plaintiffs, or to a defined group of plaintiffs as a whole— the common benefit work. In contrast, work benefiting only a single plaintiff is, of course, compensated under the terms of that plaintiffs' fee contract with his or her individual counsel.

### III. THE COMMON BENEFIT PROCEDURE AS USED IN THE MDL CONTEXT.

The most powerful feature of the common benefit doctrine as it has been adapted to contemporary mass tort MDL case management is the mechanism that enables MDL courts to exercise their jurisdiction over the named parties (including defendants) and their counsel to compensate and reimburse costs incurred and labor expended by the PSC for the common benefit. This is accomplished by the establishment of a court-supervised "common benefit account" funded by the assessment of percentage "hold back" on all plaintiffs' recoveries.[5] This

---

designed to compensate committee members for their work on behalf of all plaintiffs involved in consolidated litigation."); *Walitalo v. Iacocca*, 968 F.2d 741, 747 (8th Cir. 1992) ("It is well established that courts can impose liability for court-appointed counsel's fees on all plaintiffs benefiting from their services"); *In re MGM Grand Hotel Fire Litig.* (MDL No. 453), 660 F. Supp. 522 (D. Nev. 1982); *In re FTC Line of Business Report Litig.*, 626 F.2d 1022, 1027 (D.C. Cir. 1980); *Skelton v. General Motors Corp.*, 860 F.2d 250, 252 (7th Cir. 1988).

[5] The common benefit account – the fund from which common benefit fees and costs are to

"hold back" usually neither diminishes the plaintiffs' recovery nor increases their attorneys' fees; it may, depending upon the circumstances, be assessed potentially or entirely against the defendants, or against the attorneys' portion of any recovery. In some instances, it has been paid by the defendants in addition to awards to plaintiffs (*e.g.*, under statutory attorney fee provisions, or as a separately negotiated settlement term). The common benefit account later becomes the source of any common benefit fees and costs awards that are made at the close of the proceedings, pursuant to a duly noticed motion and a court approval process.

The amount and value of the benefit conferred is not determined by either the beneficiary or the benefactor, since each might view the benefit with a different eye. The "hold back" itself thus does not guarantee that any specific amount of common benefit will be paid; it does not relieve common benefit applicants of the burden of demonstrating that their time, effort, and expense in fact produced the benefit; nor does it shift this burden from the applicants to anyone else. Funds available through a hold-back mechanism to pay qualified applicants are not immediately awarded. The Court, as the most knowledgeable and neutral assessor of value, must decide how much to award, and to whom. Any balance not awarded is redistributed to the beneficiaries. This failsafe feature of the hold-back mechanism ensures that no claimant ever pays, directly or indirectly, more than the value of the services rendered.[6]

---

be paid – must be "subject to the control of the court." *Greenough*, 105 U.S. at 536. In *Boeing*, the Supreme Court explained that this means the court must have "[j]urisdiction over the fund involved in the litigation." 444 U.S. at 478. This criterion is satisfied by jurisdiction over a party that controls the fund, usually the defendant. *See, e.g.,* Alan Hirsch and Diane Sheehey, *Awarding Attorneys' Fees and Managing Fee Litigation*, at p. 59 (Federal Judicial Center 1994); Mary Frances Derfner & Arthur D. Wolf, *Court Awarded Attorney Fees § 2.03*, at 2-27 to 2-34.1 (discussing various ways in which a court may exercise control of the fund).

[6] For example, in the *Diet Drugs* MDL, the initial common benefit assessment was 9%, a typical assessment of that era. After it became clear there were sufficient funds available to compensate the common benefit lawyers, the court reduced this amount to 6%. *In re Diet Drugs Prod. Liab. Litig.*, 582 F.3d 524, 554 (3d Cir. 2009). *See also Turner v. Murphy Oil USA, Inc.*,

Typically, lead or liaison counsel and the members of the court-designated PSC contribute "up front" cash assessments to fund the common benefit work. Here, over $100,000 have already been contributed, on a contingent basis, by PSC members to create a working fund to pay for the prosecution of the litigation.[7] The members of the PSC and other counsel working at the express direction of Lead Counsel have undertaken significant work to date that has inured and will continue to inure to the benefit of the claimants, including: conducting extensive fact investigation – including the inspection and expert analysis of the New England Compounding Center facility; establishing a Court-sanctioned mediation program; drafting and filing a Master Complaint and Short Form Complaints; keeping informed, and coordinating activities among victims and claimants from around the country; drafting and serving subpoenas on potential defendants and fact witnesses nationwide; establishing document repositories; conducting document discovery and analysis; and crafting proposed discovery protocols and plaintiffs' fact sheets. As the litigation matures, the PSC and others acting at the direction of Lead Counsel expect to continue these efforts, as well as conducting depositions of common defendants and fact witnesses, continuing paper discovery, providing a document database for all claimants, preparing for and conducting bellwether trials, and crafting a trial package for claimants to use in cases that remain pending after remand. All of these activities have produced and will continue to produce tangible and valuable benefits for all plaintiffs. Without a hold back order in place,

---

422 F. Supp. 2d 676 (E.D. La. 2006) (approving 10% assessment for common benefit attorney's fees, and 2% assessment for common benefit costs, on individuals who opted out and retained counsel for purposes of filing lawsuits or settling claims); *In re MGM Grand Hotel Fire Litig.* (MDL No. 453), 660 F. Supp. 522 (D. Nev. 1987) (adjusting assessment percentage upward to 7%). Common benefit orders typically provide that, to the extent the Fund ultimately exceeds the amount needed to make payments as provided in the Proposed Order, the Court may order a refund, on a *pro rata* basis, to those who contributed to the Fund.

[7] Additionally, PSC members and approximately a dozen other law firms contributed a total of $97,000 earlier in this litigation, related to the early inspection of the NECC facility.

8

the PSC will have expended potentially millions of dollars in time and upfront assessments to fund the necessary work for the common benefit of all plaintiffs which this Court has designated and directed them to undertake, without any system for equitable reimbursement.

However, while the PSC is committed to financing this litigation, they recognize that there is no guarantee that lawyers participating in common benefit work in this MDL will be paid at usual rates or percentages. As the PSC has stated to the Court, they recognize that the unique circumstances of this MDL warrant a lean, economical approach to common benefit work and expenditures, and should result in relatively modest compensation for common benefit counsel in order to preserve as much of the recovery for the victims. *See* Feb. 27, 2013, Letter to Court re Proposed Plaintiffs' Structure [ECF No. 20].

### IV. THE PERCENTAGE SOUGHT AS A COMMON BENEFIT HOLD BACK FOR MDL NO. 2419 IS APPROPRIATE GIVEN THE PARTICULAR CIRCUMSTANCES OF THIS LITIGATION.

Common benefit assessments have been approved, over the years, in a broad range of percentages in non-class MDLs. These frequently range below the level at which class action attorneys' fees would be awarded under prevailing guidelines, because, in a non-class case, much of the active litigation work is conducted on a plaintiff-specific, rather than common benefit basis. Thus, individual plaintiffs' attorneys may expend substantial fees and costs in actively preparing their clients' individual personal injury cases for trial or resolution. In order to avoid an aggregate attorneys' fee and cost assessment upon these plaintiffs' recoveries that is unreasonable, and to ensure that the client does not pay twice for the same legal services or costs, MDL courts recognize that individual plaintiff's contingent fees of one-third or higher are already involved, and hence assess all or part of the common benefit hold-back from these fees.[8]

---

[8] *See, e.g.,* the *Vioxx* and *Guidant* examples, *supra* n.2, setting caps of 32% (*Vioxx*) and 37% (*Guidant*) on private contingent fees and assessing common benefit hold-backs from such fees.

This phenomenon is why, as has frequently been reported, common benefit percentage assessments in non-class MDLs appear to range from 4% to 18%.[9]

The MCL 4TH advises courts to make provisions for the compensation of the court-designated PSC:

> Early in the litigation, the court should define designated counsel's functions, determine the method of compensation, specify the records to be kept, and establish the arrangements for their compensation, including setting up a fund to which designated parties should contribute in specified proportions.

MCL 4th, § 14.215. This is especially important where, as here, common representation of plaintiffs is done on a contingent basis. Indeed, the members of the PSC designated by this Court act for the common benefit of all plaintiffs prosecuting these MDL claims on a contingent basis, both risking their time and advancing costs out of their pockets to do so. There is no public or private source of funding for their work on an ongoing basis, other than their own resources. Thus, while their service as a PSC benefits the Court, the public, all plaintiffs (and indeed the defendants as well, at least indirectly) none of the beneficiaries is compensating the members of the PSC or defraying their expenses, on an ongoing basis. Instead, the PSC is self-funded.

So what should the hold-back assessment in <u>this</u> MDL be? As the PSC has stated previously, this MDL differs from other MDLs in material respects:

> Here, unlike in many MDLs, a key alleged wrongdoer, NECP, has sought bankruptcy protection. In the bankruptcy proceedings, the trustee and its counsel, the creditors committee and its counsel, and related financial advisors and other experts engaged by the trustee and/or creditors committee will continue to work to maximize the funds in the bankruptcy estate. Despite the best efforts of these actors, however, it is expected that the bankruptcy estate will be

---

[9] *See, e.g.,* William B. Rubinstein "On What A 'Common Benefit Fee' Is, Is Not, and Should Be," Class Action Attorney Fee Digest (March 2009).

>insufficient to compensate fully the harmed persons and their families for their losses.
>Mar. 19, 2013, Proposal for PSC Slate, p. 17 [ECF No. 64].

The circumstances particular to this litigation lead the PSC to propose a hold-back from every recovery by plaintiffs in MDL No. 2419 and Participating Parties in non-MDL cases in an amount of 8%, a percentage that is lower than amounts previously awarded for common benefit work in this Circuit. *See, e.g., In re: Nineteen Appeals Arising Out of the San Juan DuPont Plaza Hotel Fire Litig.*, 982 F.2d 603 (1st Cir. 1992) and *In re: Thirteen Appeals Arising Out of the San Juan DuPont Plaza Hotel Fire Litig.*, 56 F.3d 295 (1st Cir. 1995) (together awarding the PSC nearly 17% of the aggregate recovery). Thus the PSC's request for an 8% hold back here is appropriate in light of the circumstances of this case and the overarching goal of maximizing recovery for the victims here.

## V.  CONCLUSION

The PSC respectfully requests the entry of an order placing all parties and their counsel on notice of the Court's exercise of its jurisdiction and authority to fairly and equitably allocate an amount appropriate and sufficient to reimburse and compensate a common benefit work that has sustained these proceedings thus far, ensure equitable sharing and allocation of such fees in accord with the common benefit doctrine, and avoid unfair advantage or disadvantage to any Plaintiffs or counsel.

The PSC does not ask for a specific percentage award of attorneys' fees, or allocation thereof, at this time. The PSC instead asks the Court, as in other MDLs, to establish a structure to assure that such a determination can be made, if and when it becomes appropriate, before settlement proceeds are disbursed beyond recall. An order imposing an assessment hold-back obligation is the practice-tested mechanism for so doing in routine MDL practice, including the class action context, and its utilization is duly appropriate here.

Dated: January 17, 2014

Respectfully submitted,

**/s/ Thomas M. Sobol**
Thomas M. Sobol
Kristen Johnson Parker
HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA  02142
Telephone:  (617) 482-3700
Facsimile:  (617) 482-3003
tom@hbsslaw.com
kristenjp@hbsslaw.com

*Plaintiffs' Lead Counsel*

Elizabeth J. Cabraser
Mark P. Chalos
Annika K. Martin
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
150 Fourth Avenue North, Suite 1650
Nashville, TN 37219-2417
Telephone:  615.313.9000
Facsimile:  615.313.9965
ecabraser@lchb.com
mchalos@lchb.com
akmartin@lchb.com

*Federal/State Liaison*

Marc E. Lipton
LIPTON LAW
18930 W. 10 Mile Road
Southfield, MI  48075
Telephone:  (248) 557-1688
Facsimile:  (248) 557-6344
marc@liptonlawcentercom

Kim Dougherty
JANET, JENNER & SUGGS, LLC
31 St. James Avenue, Suite 365
Boston, MA  02116
Telephone:  (617) 933-1265
kdougherty@myadvocates.com

Patrick T. Fennell
CRANDALL & KATT
366 Elm Avenue, S.W.
Roanoke, VA  24016
Telephone:  (540) 342-2000
pfennel@crandalllaw.com

Mark Zamora
ZAMORA FIRM
6 Concourse Way, 22nd Floor
Atlanta, GA  30328
Telephone:  (404) 451-7781
Facsimile:  (404) 506-9223
marc@markzamora.com

J. Gerard Stranch, IV
Benjamin A. Gastel
BRANSETTER, STRANCH & JENNINGS PLLC
227 Second Avenue North
Nashville, TN  37201
Telephone:  (615) 254-8801
Facsimile:  (615) 255-5419
gerards@branstetterlaw.com
beng@branstetterlaw.com

*Plaintiffs' Steering Committee*

**CERTIFICATE OF SERVICE**

I, Thomas M. Sobol, hereby certify that I caused a copy of the foregoing to be filed electronically via the Court's electronic filing system. Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system, and notice of these filings will be sent to these parties by operation of the Court's electronic filing system.

Dated: January 17, 2014

**/s/ Thomas M. Sobol**
Thomas M. Sobol, BBO # 471770