IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

IN RE: NEW ENGLAND COMPOUNDING
PHARMACY, INC. PRODUCTS LIABILITY
LITIGATION                                                              Case No. 1:13-md-02419-FDS

This document relates to all cases.

**MEMORANDUM OF LAW BY ROANOKE-AREA
LICHTENSTEINFISHWICK AND BROWN & JENNINGS INTERVENORS
IN OPPOSITION TO
THE CHAPTER 11 TRUSTEE'S RENEWED AND SUPPLEMENTAL
MOTION, UNDER 28 U.S.C. §§ 157(B)(5) AND 1334,
TO TRANSFER PERSONAL INJURY TORT
AND WRONGFUL DEATH CASES TO THIS COURT**

## Introduction

The forty-nine (49) below-named intervenors ("Roanoke-Area LichtensteinFishwick and Brown & Jennings  Intervenors" or "these Intervenors," all of whom have filed proofs of claim in the NECC bankruptcy), by counsel and pursuant to paragraph 1(a) of this Court's MDL Order No. 5 [Doc. 87], respectfully intervene, without waiving any objections to jurisdiction, solely for the purpose of opposing the Trustee's Renewed and Supplemental Motion [Doc. 732] to Transfer Personal Injury Tort and Wrongful Death Cases to this Court ("Renewed Transfer Motion"). This memorandum is respectfully submitted in support of such opposition.[1]

Intervenors have previously filed two memoranda in opposition to the Chapter 11 Trustee's original transfer motion [Doc. 129 and Doc. 159]. Those pleadings, as well as the arguments advanced on behalf of these Intervenors when the Court heard argument on such

---

[1] As they have done previously, *see* Doc. 129 and Doc. 159, these Intervenors appear for the special and limited purpose of opposing the Trustee's Renewed Transfer Motion, consistent with ¶1(a) of MDL Order No. 5 [Doc. 87].  This submission, and any related submissions and/or appearance at and/or participation in argument when the Renewed Transfer Motion is taken up at the Feb. 6 status conference (or otherwise), is without waiver of these Intervenors' rights and without consent to the jurisdiction of this Court, generally or specifically, over actions that these Intervenors will file, before the Feb. 6 status conference, against non-debtors in Virginia state circuit court. These Intervenors do not at this time have filed cases that are expressly the subject of the Renewed Transfer Motion, but fully expect that upon the filing of their cases (and perhaps even before service), attempts will be made by the Trustee to have such cases transferred to this Court.

motion during the status conference/hearing on May 14, 2013, are hereby adopted and incorporated into this memorandum.[2]

Like the Gentry Locke Plaintiffs and the Frith & Ellerman Plaintiffs, these Intervenors received injections of contaminated methylprednisolone acetate (NECC compounded MPA) at the Insight Imaging-Roanoke clinic in Roanoke, Virginia.  Such injections were received from, and the patients (and their insurers) were charged and billed by Insight Health Corporation ("IHC"), an entity unaffiliated with the debtor and/or the debtor's insiders.[3]

Fundamentally, and for all the reasons previously and recently argued by these Intervenors and by the other above-identified Virginia plaintiffs, these Intervenors continue to reject the concept that "related to" jurisdiction can be expanded so as to allow this Court to reach into the state courts of the sovereign Commonwealth of Virginia and require that actions pending in those courts solely against non-debtors be transferred to this Court.  It is absolutely contrary to fundamental principles of federalism and of limited federal court jurisdiction to force Intervenors and the other Virginia plaintiffs – who are the only patients in the national fungal meningitis

---

[2] Specifically, these Intervenors reiterate their earlier argument that under the Third Circuit's analyses and case outcomes in *Pacor, Inc. v. Higgins*, 743 F.3d 984 (3rd Cir. 1984); *In re Federal-Mogul, Inc.*, 300 F.3d 368 (3rd Cir. 2002); *In re Combustion Engineering, Inc.,* 391 F.3d 190 (3rd Cir. 2004); and *W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co.)*, 591 F.3d 164 (3rd Cir. 2009), there is no "related to" jurisdiction over contribution/indemnity claims that IHC seeks to raise in its Proof of Claim.

These Intervenors additionally endorse and adopt arguments advanced in filings by the Roanoke Gentry Locke Plaintiffs and the Roanoke Frith & Ellerman Plaintiffs, *see* Docs. No. 157, 158, 763, and 764 particularly (but without limitation) the Roanoke Gentry Locke Plaintiffs' argument that §157(b)(5) does not authorize this Court to order that matters pending in state courts against non-debtors be transferred out of state court and to this Court.  The subordination and/or abstention arguments made in these filings are adopted in the alternative, it being these Intervenors' position that the Court never needs to reach either of these questions, because Virginia law does not allow IHC to assert the contribution and indemnification claims on which its proof of claim in the NECC bankruptcy is based.

[3] Depending on the specific Intervenor, the injections were physically administered by Dr. John Mathis or Dr. Robert O'Brien.  Intervenors expect in the state court actions to be filed to prove that these doctors and their Virginia professional corporation, Image Guided Pain Management, PC ("IGPM"), at the very least were instrumentalities of IHC's fraud, if not knowingly complicit in that fraud.  Significantly, neither IGPM, nor Dr. Mathis, nor Dr. O'Brien has filed a proof of claim in the NECC bankruptcy.

outbreak who have been injured by IHC and who thus are the only patients who can sue IHC – to litigate their state-law claims against Insight anywhere other than the Circuit Court for the City of Roanoke, Virginia.

And they respectfully disagree with the Court's conclusion, *see In re: New England Compounding Pharmacy, Inc. Products Liability Litigation*, 496 B.R. 256, 270 (D. Mass. 2013), that the mere filing of a proof of claim, by an IHC-type state court, non-debtor defendant, alleging a claim for contribution or indemnity against the bankruptcy estate of NECC, can even "probably" allow the exercise of federal jurisdiction over state court actions against such non-debtor.  For reasons discussed *infra*, the mere *filing* of a proof of claim *alleging* a right to contribution and/or indemnification can never in and of itself be sufficient to confer "related to" jurisdiction.  Otherwise, everything would be "related to." Rather, and as is the case here with these Intervenors, when the claims asserted in state court against the non-debtor preclude contribution and indemnity claims by the non-debtor, there cannot be "related to" jurisdiction.

## ARGUMENT

I.  **Under Virginia law, IHC cannot seek contribution and/or indemnification against NECC with respect to the fraud claims already being asserted against IHC by other Virginia injured patients and that will shortly be filed against IHC by these Intervenors.**

The fraud that IHC perpetrated on the injured Virginia patients and on their respective public and private insurers is well-described in other filings in opposition to the Trustee's original and renewed transfer motions.  The specifics of this fraud are obviously important in the context of the state-law claims being asserted and to be asserted against IHC Such specifics, respectfully, are less important in the context of the matter before the Court, but do bear a brief summarizing (not intended to be complete) here:

1. IHC violated and/or facilitated the violation of Virginia law by purchasing compounded MPA from NECC in bulk, knowing that NECC was not licensed in VA or Massachusetts to manufacture and/or sell compounded MPA on anything other than a patient-specific prescription-by-prescription basis
2. IHC violated Virginia and federal law by misusing protected health information of patients to make these bulk purchases
3. IHC injected the bulk-purchased compounded MPA into patients other than the patients whose names and other protected health information had been misused by IHC to make the improper bulk purchases
4. IHC actively concealed from patients that they were being injected with compounded MPA by
    a. telling them pre-injection that they were being injected with Depo-Medrol, a brand-name drug manufactured by an FDA-approved and -regulated pharmaceutical company, and/or
    b. providing them pre- and/or post-injection with literature describing the injection as Depo-Medrol and
    c. describing the drug received as Depo-Medrol in billing sent to the patient and to the patient's private and public third-party payers, but using the National Drug Code identifier for methylprednisolone acetate commercially manufactured (not compounded) by Teva Parenteral Medicines, Inc. and
    d. providing procedure notes and other records to patients' referring physicians that described the drug injected as Depo-Medrol and
    e. intentionally altering its proprietary "IRIS" software system such that injections of compounded MPA were reflected in such system as "Depo-Medrol."

The Court does not need to "pretry" the Virginia plaintiffs' and these Intervenors' fraud claims against IHC in order to deny the Trustee's renewed transfer motion. If Intervenors sue IHC for fraud and do not prevail, there would be no judgment against IHC on which IHC could base a contribution or indemnification claim. If Intervenors obtain judgments against IHC based on fraud or other intentional acts, then Virginia law simply does not allow claims for contribution or for implied or equitable indemnification.

In Virginia, contribution among joint tortfeasors is permitted only where the claim being asserted against the putative contribution plaintiff "results from negligence and involves no

moral turpitude." Va. Code §8.01-34.[4]  These intervenors will assert claims of actual fraud against IHC.  Actual fraud involves moral turpitude; therefore, when a judgment for actual fraud is obtained against a defendant, that defendant does not have a contribution claim to make against anyone.  Actual fraud also involves intentional conduct, and contribution is unavailable under Va. Code §8.01-34 when the defendant/contribution plaintiff's bad actions are intentional.  *E.g., E.I. DuPont de Nemours and Company v. Kolon Industries, Inc.*, 688 F.Supp.2d 443, 464-465 (E.D. Va. 2009)(citing *Philip Morris, Inc. v. Emerson*, 235 Va. 380, 412, 368 S.E.2d 268, 285 (1988) (defendant's third-party complaint for contribution dismissed where the defendant was alleged to have intentionally misappropriated trade secrets and confidential information, and to have committed tortious interference and conversion).

This result does not change when the fraud occurs in the providing of health care.  Fraud committed in providing health care is not transformed into medical negligence.  *Guilliams v. Wray*, 79 Va. Cir. 244, 250-251 (Roanoke Cir. 2009)("[T]here is nothing in the [Virginia Medical Malpractice] Act that bars a party in a medical malpractice action from proceeding against a health care provider under more than one legal theory or cause of action.").

IHC's bad acts also preclude any possibility of an equitable or implied indemnification claim by it against NECC.  In Virginia, there is no right to equitable indemnification unless the defendant/indemnification plaintiff is free from fault.  *Carr v. Home Insurance Co.*, 463 S.E.2d 457, 458 (Va. 1995).  A fraud defendant against whom a judgment has been obtained is clearly not free from fault.

Similarly, Virginia law will not allow IHC a claim for implied indemnification if a fraud judgment is obtained against IHC.  Since Virginia law does not allow an "actively negligent"

---

[4] Section 8.01-34 of the Virginia Code provides that "contribution among wrongdoers may be enforced when the wrong results from negligence and involves no moral turpitude."

defendant to seek implied indemnification, *see Philip Morris, Inc. v. Emerson*, 368 S.E.2d at 285 (citations omitted)("If a defendant is guilty of active negligence, he may not obtain indemnification from any other defendant."), it is impossible to conceive that Virginia law would allow a defendant found to have committed fraud to have such a claim.[5]

## CONCLUSION

"Related to" jurisdiction by this Court over the suits that these Intervenors intend to file in Virginia state court against IHC (and IGPM and Drs. Mathis and O'Brien) only becomes a question to be entertained by this Court if IHC can assert under Virginia law viable claims for contribution and/or indemnification against NECC's bankruptcy estate, as attempted in IHC's Proof of Claim.   Virginia law instead precludes such claims, because the actions that these Intervenors will shortly bring against IHC are based on intentional torts and/or involve moral turpitude.    Therefore, because the same body of intentional acts involving moral turpitude additionally underlies the actions by the Gentry Locke plaintiffs and the Frith & Ellerman plaintiffs, the Renewed Transfer Motion should be denied as to those plaintiffs and as to these Intervenors.

---

[5] The foregoing arguments are equally applicable to the battery claims discussed by these Intervenors in Doc. 159.  A defendant whose intentional actions vitiate a patient's consent has no greater contribution or indemnification rights than a defendant who has committed fraud.

Respectfully submitted,

**ROANOKE-AREA LICHTENSTEINFISHWICK INTERVENORS:**

| | |
|---|---|
| **Gladys G. Austin** | **Deborah Haga** |
| **Richard Blankenship** | **Larry Hall** |
| **Cheryl Brogan** | **Frank Haranzo, Jr.** |
| **Kimberly Chitwood** | **Susanne Hastings** |
| **Christopher Compton** | **Jacob Helm** |
| **Shirley Doyle** | **Stuart Katz** |
| **Terry Duncan** | **Melissa Marshall** |
| **Renate Fariss** | **John Marsinko** |
| **Nancy Goodfellow** | **Jane Mckeon** |
| **Norma Hurley** | **William L. Neal, Administrator** |
| **Mabel Hutcherson** | **Angela Norman** |
| **Arnold Moon** | **Larry Rice** |
| **Rosanne Moon** | **Deanna Smith** |
| **Sharon Overstreet** | **Stevie Thomas** |
| **Mary Radford** | **Brenda Varley** |
| **Audrey Ransome** | **Christine Wheeler** |
| **Nosworthy Reid** | |

By:   /s/ Gregory L. Lyons
        Of Counsel

John E. Lichtenstein (VSB #27048)
E-mail:  jel@vatrials.com
John P. Fishwick, Jr. (VSB #23285)
E-mail:  jpf@vatrials.com
Gregory L. Lyons (VSB #24037)
E-mail:  gll@vatrials.com
Monica L. Mroz (VSB #65766)
E-mail: Monica@vatrials.com
Joanna M. Meyer (VSB #86427)
E-mail:  jmm@vatrials.com
LICHTENSTEINFISHWICK PLC
101 South Jefferson St., Suite 400
Roanoke, VA 24011
Ph:     (540) 343-9711
Fax:    (540) 343-9713
        *Counsel for Roanoke-Area LichtensteinFishwick Intervenors*

**BROWN & JENNINGS INTERVENORS:**

**Noral Bell**
**Alma Eden**
**Thomas Goodwin**
**Jimmy Green**
**Patricia Jennings**
**Susan Kincanon**
**Ashlee Lakin**
**Virginia Milne**
**Lori Morris**
**Deborah Rogers**
**David Rose**
**Joseph Smith**
**Vicki Uthus**
**Regina Waddell**
**Doris West**
**Judith Williams**

By:  /s/ Gregory L. Lyons for P. Brent Brown
Of Counsel

P. Brent Brown (VSB # 18760)
E-mail:   brent@brownjenningslaw.com
William A. Jennings (VSB # 24176)
E-mail:   andy@brownjenningslaw.com
BROWN & JENNINGS, PLC
30 Franklin Road, Suite 700
Roanoke, Virginia 24011
Telephone:    (540) 444-4010
Fax:               (540) 444-4011
*Counsel for Brown & Jennings Intervenors*

## CERTIFICATE OF SERVICE

I, Gregory L. Lyons, hereby certify that I filed this document through the CM/ECF system, thereby providing electronic notice of such filing to the registered participants as identified in the Notice of Electronic Filing (NEF) and that paper copies will be provided to those indicated in the NEF as non-registered participants.

   /s/   Gregory L. Lyons
Counsel for Roanoke-Area
LichtensteinFishwick Intervenors
Dated: January 17, 2014