UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

IN RE: NEW ENGLAND      :  NO.: 1:13-md-02419(FDS)
COMPOUNDING PHARMACY, INC.
PRODUCTS LIABILITY LITIGATION  :   January 20, 2014

## MEMORANDUM IN SUPPORT OF
## MOTION TO QUASH

**PRELIMINARY STATEMENT AND BACKGROUND**

   This case arises from contaminated pharmaceutical preparations compounded and distributed by, or under the auspices of, New England Compounding Center ("NECC") and/or a related entity known as Ameridose, LLC ("Ameridose"). Liberty Industries, Inc. ("Liberty"), a company located in East Berlin, Connecticut, was hired to design and oversee construction of, in accordance with standards specified by NECC and/or Ameridose, what are known as "clean rooms" to be used for the NECC and Ameridose processes.

   Liberty designed and installed three (3) different projects for NECC or Ameridose in 2005, 2006 and 2008. The clean rooms worked on by Liberty were designed and constructed in accordance with the International Organization for Standardization ("ISO") standards or Federal Standard 209E as requested by NECC and/or Ameridose. Upon completion, all clean rooms were certified by an independent testing laboratory as compliant with the requested standards. Liberty had no involvement in ongoing maintenance, repair, service or ongoing use

of the clean rooms it designed and installed.  Affidavit, Robert Kaiser ("Kaiser Aff."), attached as Exhibit A, ¶¶ 2-7.

Pursuant to Fed. R. Civ. Proc. 45, on June 21, 2013, the Plaintiffs' Steering Committee ("PSC") in this matter, through counsel, served upon Liberty a subpoena to testify at a deposition.  The subpoena included 35 requests for the production of documents.  Liberty's objections to that subpoena ultimately were resolved and, on July 29, 2013, Liberty turned over to the PSC all documents in its possession relating to NECC and/or Ameridose.

Notwithstanding the absence of any temporal or causal relationship, in its Master Complaint, after detailing the conditions at NECC and outbreak of fungal meningitis beginning in September, 2012, the PSC alleged "upon information and belief" that Liberty did additional work in each of the clean rooms.  Master Complaint (Doc 545), ¶ 127.  With scant factual underpinnings, the PSC alleged that Liberty designed and constructed the clean rooms in such a way that, in 2012, they were "unsuitable for their intended use."  Id. ¶ 128.

Liberty employs 23 people and is without resources to defend against 313 cases by plaintiffs who were prepared to adopt the PSC short form complaint.  Accordingly, Liberty agreed to participate in the court ordered mediation.

On November 26, 2013 the PSC requested the production of documents as required by this Court's Mediation Order.  Exhibit B.  Liberty responded on December 5, 2013.  Exhibit C.  The PSC subsequently served subpoenas on all of Liberty's insurers since 2006.  On December 18, 2013, the Travelers Property Casualty Company of America moved to quash the PSC's

subpoena. Doc 633.  In connection with Travelers' compliance, it was disclosed that, while Travelers issued a policy, effective November 1, 2010, two weeks later, on November 15, 2010 it issued notice of cancellation, effective January 20, 2011.  See Notice of Cancellation, pp. 159-61, Doc. 633-2.

The PSC now demands that Travelers turn over:

> All documentation concerning the cancellation of the November 1, 2010 – November 1, 2011 policy, including documents regarding what led to the cancellation, the loss runs associated with the cancellation, and documentation explaining the reasons for the cancellation, including but not limited to the documents concerning Travelers' representations that:
> 1)      Catalog products which [Travelers] did not think were made by Liberty Industries have "Liberty Made" stickers on them, and are described as being manufactured by Liberty Industries in their catalog; Possible products exposure; and
> 2)      Supervision/monitoring of clean room construction could become a professional liability issue if constructed incorrectly.

Liberty objects to such disclosure and moves to quash the subpoena as the PSC is attempting to enforce it.

## LAW AND ARGUMENT

### I. The Documents Sought by the PSC are Prejudicial to Liberty, Beyond the Scope of the Mediation Order and Irrelevant to Plaintiffs' Claims.

The PSC wants it both ways.  On the one hand, it contends Liberty was negligent when it constructed clean rooms in 2005, 2006 and 2008 and therefore should be held liable.  On the other, the PSC contends that Travelers' assessment and determination in 2011 that "[s]upervision/monitoring of clean room construction <u>could</u> become a liability" can somehow

potentially support its claim that Liberty was negligent three to five years earlier.  Even more attenuated is a supposition that alleged labelling of products in 2011 can also support such a theory of previous negligent conduct.  The PSC is merely searching for some sort of negative information relating to Liberty when the reasons NECC's drugs became contaminated are abundantly clear.  Plainly, the PSC's attempt to enforce its subpoena is prejudicial to Liberty and the information sought bears no relationship to Liberty's participation in mediation.

The Order on Mediation Program in this case, which entered before Liberty had agreed to participate, required only that insurance policies and documents relating to  reservations of rights or rejection of coverage for the plaintiffs' claims be disclosed.  Doc. 394.  The PSC claimed it was obligated to investigate whether Liberty did, or did not, have insurance coverage or other resources to contribute to a settlement.  So it issued subpoenas to all of Liberty's insurers. It now wants to go well beyond its own previously proposed parameters, further highlighting that this is a classic "fishing expedition" which should be rejected.

Even the PSC's rationale for seeking this additional information reinforces that the documents sought are irrelevant and the request is simply calculated to cast Liberty in a negative light. See Doc. 785.  The PSC reasons that "facts relied upon Travelers in making the decision to cancel Liberty's coverage, such as claims submitted by Liberty or others or investigations performed, are discoverable and the PSC is entitled to this information, as these facts speak directly to the extent of Liberty's liability."  But the PSC fails to elaborate as to how such information could show that Liberty was negligent when it constructed the NECC

4

clean rooms years before the cancellation.  We do know that the fungal meningitis outbreak caused by NECC's failure to maintain appropriate conditions for compounding its drugs was unprecedented.  Additionally, Liberty installs clean rooms in a host of different settings, including semiconductor manufacturing, aerospace electronics, laser and optic industries, microelectronic facilities, paint rooms, pharmaceuticals industries, research facilities.  The specifications for a clean room vary based upon the work to be performed.  Thus, even if were assumed that Liberty had been the subject of a claim of negligent design and construction, which it has not, any substantial similarity of conditions with this case is missing and the PSC's rationale is not persuasive.

**CONCLUSION**

Because it seeks irrelevant information, would cause Liberty to be prejudiced in mediation and exceeds the parameters set forth in the Order on Mediation, the PSC's subpoena to Travelers should be quashed.

                              LIBERTY INDUSTRIES, INC.

                              By_____/s/_____
                                  Nicole D. Dorman [ct07030]
                                  Rose Kallor, LLP
                                  750 Main Street, Suite 606
                                  Hartford, CT  06103
                                  860-748-4660
                                  860-241-1547 (fax)
                                  E-mail:  ndorman@rosekallor.com

## **CERTIFICATION**

      This is to certify that on this 20th day of January, 2014, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

      _____/s/_____
      Nicole D. Dorman