

ATTORNEYS AT LAW

Michael J. Rose
Robin B. Kallor*
Melinda A. Powell
Johanna G. Zelman
Nicole D. Dorman
Allison L. Pannozzo
Cindy A. Miller**

Paralegals:
Amber M. Smith
Maria R. Palmer
Kiva T. Bynum

*Also admitted in New York and New Jersey
**Also admitted in Massachusetts

December 5, 2013

Marc E. Lipton
Lipton Law Firm
18930 West Ten Mile Road
Suite 3000
Southfield, MI 48075

RE:   In Re: New England Compounding Pharmacy, Inc. Products Liability Litigation
      Case No. 1:13-md-02419(FDS)
      Liberty Industries, Inc. ("Liberty")

Dear Attorney Lipton:

In response to yours of November 26, 2013, enclosed please find:

I. **Documents to be Produced Pursuant to Mediation Order:**

a) In view of the subpoenas served upon each of Liberty Industries, Inc.'s insurers between 2006 and 2013, and the fact that Liberty's records are not complete for the entire period, we anticipate that copies of the policies will be produced by the respective carriers.

b) A copy of the disclaimer of coverage by Travelers is enclosed. Additional responses from the other carriers will be forwarded as they are received.

c) Liberty has no such agreements.

d) Liberty is aware of New England Compounding Center and Ameridose as Potentially Responsible Parties.

II. **Documents Relevant to Liberty's Ability to Pay:**

Enclosed, please find the financial statements prepared by Liberty's independent accountants, comparing 2012 and 2013 year end reports.

ROSE KALLOR, LLP
December 5, 2013
Page 2
Re: New England Compounding

### III. Documents Relating to Liability:

a) Documents reflecting communications with subcontractors, to the extent they exist, were included in the documents previously disclosed by Liberty when it turned over all of its files and records relating to NECC and/or Ameridose. Liberty's principal subcontract was for construction of the walls of the respective cleanrooms. Please note that Victory Heating and Air Conditioning was not Liberty's subcontractor. Rather, both companies were hired by NECC/Ameridose, but necessarily had to coordinate their work.

b) Also previously disclosed were all documents relating to all work done at NECC's Framingham premises between 2006 and 2013. Inasmuch as you have specifically inquired about the conveyor system installed in the 2006 cleanroom, in 2007, Liberty received a verbal request for a quote for installation of such a system. The component index sketch that was included in Liberty's files was prepared in connection with this quote. Bates 009850. Liberty did not get the job and does not know which company or entity was in fact awarded the work. As reflected in the enclosed fax memo of May 25, 2007, Liberty supplied a temporary pass through box for the 2006 cleanroom and proposed that a vertical sliding door be installed in lieu of the pass through in connection with the proposed conveyor system. But neither the door, nor the conveyor system was ever ordered from Liberty. I am advised that the hand written phone number at the bottom of this memo is likely that of a company known as American Conveyor.

Comparison of Liberty's as built drawing for Project 5283, the 2006 cleanroom (Bates 009653 and 009655), with the existing conditions drawing dated 9/21/07 for Project 5587 (Bates 009681), the 2007-2008 cleanroom, depicts that the conveyor system was not a part of the 2006 cleanroom, but had been installed by the time Liberty was hired for the third project.

c) While they have already been produced, I have enclosed copies of the full certification reports, with testing results, for each of Liberty's three cleanrooms. Any additional work performed by Liberty is described in the punch list for each room. Once the punch list work was completed to the customer's satisfaction, and job completion was signed off, Liberty issued the operation and maintenance manual for the room. No additional work of any kind was performed by Liberty for either NECC and/or Ameridose after completion of Project 5587 on April 3, 2008.

Very truly yours,

Nicole D. Dorman

Cc: Robert Kaiser