```
 1                    UNITED STATES DISTRICT COURT
                        DISTRICT OF MASSACHUSETTS
 2


 3

 4   IN RE:  NEW ENGLAND              )  MDL NO. 13-02419-FDS
     COMPOUNDING                      )
 5   PHARMACY CASES LITIGATION        )
                                      )
 6                                    )
                                      )
 7                                    )
                                      )
 8
                     BEFORE:  THE HONORABLE F. DENNIS SAYLOR, IV
 9

10

11
                           STATUS CONFERENCE
12

13

14


15        John Joseph Moakley United States Courthouse
                        Courtroom No. 2
16                    One Courthouse Way
                      Boston, MA 02210
17

18                    January 10, 2014
                        1:30 p.m.
19

20

21

22

23            Valerie A. O'Hara, FCRR, RPR
                   Official Court Reporter
24     John Joseph Moakley United States Courthouse
               One Courthouse Way, Room 3204
25                  Boston, MA 02210
              E-mail: vaohara@gmail.com
```

1    APPEARANCES:

2    <u>For The Plaintiffs:</u>

3        Hagens, Berman, Sobol, Shapiro LLP, by THOMAS M.
     SOBOL, ESQ. and KRISTEN JOHNSON PARKER, ATTORNEY,
4    55 Cambridge Parkway, Suite 301, Cambridge,
     Massachusetts  02142;

5
         Janet, Jenner & Suggs, LLC, KIMBERLY A. DOUGHERTY,
6    ATTORNEY, 75 Arlington Street, Suite 500, Boston,
     Massachusetts  02116;

7
         Crandall & Katt, by PATRICK THOMAS FENNELL, ESQ.,
8    366 Elm Avenue, SW, Roanoke, VA 24016;

9        Branstetter, Stranch & Jennings, PLLC, by BEN GASTEL,
     ESQ., ESQ., 227 Second Avenue North, Nashville,
10   Tennessee 37201-1631;

11       Law Offices of Mark Zamora and Associates,
     MARK ZAMORA, ESQ., 5 Concourse Parkway, Suite 2350
12   Atlanta, Georgia  30328

13
     <u>FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS:</u>
14
         Brown Rudnick, by DAVID J. MOLTON, ESQ., Seven Times
15   Square, New York, New York 10036;

16       Brown Rudnick, by KIERSTEN A. TAYLOR, ATTORNEY,
     One Financial Center, Boston, Massachusetts  02111;
17
         Harris Beach PLLC, by FREDERICK H. FERN, ESQ.,
18   100 Wall Street, New York, New York  10005;

19       Tucker & Ellis LLP, by MATTHEW P. MORIARTY, ESQ.,
     1150 Huntington Building, 925 Euclid Avenue, Cleveland,
20   Ohio 44115-1414;

21       Michaels, Ward & Rabinovitz LLP, by DAN RABINOVITZ,
     ESQ., One Beacon Street, Boston, Massachusetts 02108;
22
         Todd & Weld LLP, by CHRISTOPHER R. O'HARA, ESQ. and
23   CORRINA L. HALE, ATTORNEY, 28 State Street, 31st Floor,
     Boston, Massachusetts 02109;
24
         Ulmer & Berne LLP, by JOSHUA A. KLARFELD, ESQ.,
25   1660 West 2nd Street, Suite 1100, Cleveland, OH
     44113-1448;

1   <u>For the Defendants(CONTINUED)</u>:

2       Donoghue, Barrett & Singal, P.C., by MICHELLE R.
    PEIRCE, ATTORNEY, ESQ., One Beacon Street, Boston,
3   Massachusetts  02108-3106;

4       Donovan & Hatem, LLP, by KRISTEN R. RAGOSTA, ESQ.,
    Two Seaport Lane, Boston, Massachusetts  02210;
5
        Nutter, McClennen & Fish LLP, by SARAH P. KELLY,
6   ATTORNEY, World Trade Center West, 155 Seaport
    Boulevard, Boston, Massachusetts  02210-2604;
7
        Fulbright & Jaworski, LLP, by MARCY H. GREER,
8   ATTORNEY and YVONNE K. PUIG, ATTORNEY, 98 San Jacinto
    Blvd, Suite 1100, Austin, Texas 78701;
9
        Law Offices of Jay J. Blumberg, ESQ., by JAY J.
10  BLUMBERG, ESQ., 158 Delaware Street, P.O. Box 68,
    Woodbury, New Jersey  08096;
11
        Curley & Curley, P.C., by LISABETH RYAN KUNDERT,
12  ATTORNEY, 27 School Street, Boston, Massachusetts
    02108;
13
        Sloane and Walsh, ROBERT A. GAYNOR, ESQ.,
14  Three Center Plaza, Boston, Massachusetts
    02108;
15
    <u>FOR PAUL D. MOORE, IN HIS CAPACITY AS CHAPTER 11 TRUSTEE</u>
16  <u>OF NECP, INC.</u>:

17      Duane Morris LLP by MICHAEL R. GOTTFRIED,
    ESQ., 100 High Street, Suite 2400, Boston, Massachusetts
18  02110-1724;

19
    <u>VIA PHONE FOR THE PLAINTIFFS</u>:
20
    Melvin B. Wright
21  David Gibson
    John Fishwick
22  Greg Lyons
    James Stephen King
23  Mary Gidaro
    Matthew Barsenas
24  Frank Federico
    Michael Coren
25  Harry Roth
    Will Riley

1    <u>VIA PHONE FOR THE PLAINTIFFS</u> (CONTINUED):

2    Terry Dawes
     Robert Briley
3    Edward (Ned) Mulligan
     Karren Schaeffer
4    Deborah Gresco-Blackburn
     Chris Cain
5    Laura Pittner
     Jonathan Griffith
6    Sharon Houston
     Leslie Muse
7    Jonathan Krohnfeldt
     Sean Roth
8    Mark Dancer
     Dan Myers
9    Ann Mandt
     Steven Resnick
10   Alex Apostolou
     Patrick Montoya
11   Frederick (Rick) Ellis
     Nolan Nicely
12   S. James Boumil
     Robert Randall
13   Brent Brown
     Amanda Williams
14   George Nolan
     Evan Baker
15   Lauren Ellerman
     Nicole Kreklau
16   Daniel Clayton
     Lisa Esser-Weidenfeller
17   Scott Kaminski
     Kristi Osterday
18   Douglas Mulvaney`
     Ed Jazlowiecki
19   Stephen W. Mullins
     Bill Leader
20   Daniel Frith
     Bryan Bleichner
21   Rebbecca Blair
     Elliot Olsen
22   Mark Abramowitz
     Stephanie Arndt
23   Robert Young
     Bridget Stratton
24   J. Kyle Roby
     Mark Chalos
25   Ted Corvey
     Nolan Nicely

```
1    VIA PHONE FOR THE PLAINTIFFS (CONTINUED):

2    Steffani Cochran
     Rick Morgan
3    Anthony Agudelo
     Steffani Cochran
4
     VIA PHONE FOR THE DEFENDANTS:
5
     Stephen A. Grossman
6    Nichole Dorman
     Jason D Lewis
7    Joseph R. Lang
     Chris J. Tardio
8    Matthew Cline

9    ALSO APPEARING VIA TELEPHONE:

10   Jacqueline Palank, Wall Street Journal

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

<u>PROCEEDINGS</u>

1
2          THE CLERK:  All rise.  Thank you, all.

3  Please be seated.  Court is now in session in the matter

4  of In Re: New England Compounding Pharmacy, Incorporated

5  Products Liability Litigation.  This is Case

6  No. 13-md-02419.

7          Counsel, please note your appearances for

8  the record.  We'll start with the PSC.

9          MR. SOBOL:  Good afternoon, your Honor,

01:32PM  10  Tom Sobol for the plaintiffs' steering committee.

11          MS. PARKER:  Good afternoon, your Honor,

12  Kristen Johnson Parker for the plaintiffs' steering

13  committee.

14          MR. ZAMORA:  Mark Zamora for the PSC.

15          MS. DOUGHERTY:  Good afternoon, your Honor,

16  Kim Dougherty from Janet, Jenner & Suggs on behalf of

17  the PSC.

18          MR. GASTEL:  Good afternoon, Ben Gastel from

19  Branstetter, Stranch & Jennings on behalf of the PSC.

01:32PM  20          THE COURT:  Good afternoon, all.

21          MR. FENNELL:  Good afternoon, your Honor,

22  Patrick Fennell from Crandall & Katt, Roanoke, Virginia

23  for the PSC.

24          MR. MOLTON:  Good afternoon, your Honor,

25  David Molton and Kiersten Taylor of the creditors'

```
 1   committee for the creditors' committee.

 2              THE COURT:  All right.  Good afternoon.

 3              MR. GOTTFRIED:  Good afternoon,

 4   Mike Gottfried for the trustee, Paul Moore.  With me, my

 5   partner, Jeff Sternklar.

 6              MR. STERNKLAR:  Good afternoon, your Honor.

 7              MR. KLARFELD:  Good afternoon, your Honor,

 8   Joshua Klarfeld on behalf of GDC.

 9              MR. FERN:  Good afternoon, Judge,

10   Frederick Fern, specially-retained counsel for the

11   Chapter 11 trustee.

12              MR. RABINOVITZ:  Good afternoon, your Honor,

13   Dan Rabinovitz on behalf of Medical Sales Management.

14              MS. PEIRCE:  Your Honor, Michelle Peirce for

15   Barry and Lisa Cadden individually.

16              MR. GAYNOR:  Robert Gaynor for the

17   affiliated individuals.

18              MR. O'HARA:  Good afternoon, your Honor,

19   Christopher O'Hara.  With me is Corrina Hale on behalf

20   of Doug and Carla Conigliaro.

21              MR. MORIARTY:  Happy New Year, your Honor,

22   Matthew Moriarty for Ameridose.

23              THE COURT:  Good afternoon, all.  We have a

24   number of people on the telephone participating as well.

25   I have received the corrected agenda for the status
```

conference, which I guess we will follow.  To state the

obvious, in light of the settlement with the affiliated

parties, what I hope will be a finalized settlement

reasonably soon, the litigation may take a somewhat

different course.

We may need to rethink or restructure some

things, but why don't we follow the agenda and take each

issue as they come.  Ms. Parker, do you want to take the

lead here?

01:34PM  MS. PARKER:  Yes, thank you, your Honor.

I'll address agenda item Number 1.  Before we get there,

I should note that we did file a corrected agenda this

morning.  We noticed a deadline that was stated in item

Number 1, it was dated incorrectly.  We corrected that.

We also in the process added a few of the agenda items

that the PSC thought warranted mention.  We did not,

however, share that with all of the defense counsel and

the trustee before we did so, so it's not truly a joint

corrected agenda, just to clarify that.

01:34PM  THE COURT:  All right.

MS. PARKER:  In terms of the short form

complaints, as your Honor is aware, the deadline of

December 21st came and went.  Many short form complaints

have been filed.  The PSC was pleased to see that.

We're in the process of conducting a census of those

1    short form complaints to really get our hands around how

2    many have been filed, who has been named as defendants,

3    which entities have been named as defendants.  We intend

4    to present a brief filing next week that presents some

5    basic numerical information about that, and we intend to

6    file that on the docket if your Honor will permit.

7              Attendant to that then would be an overview

8    that I think Mr. Sobol would like to give on where

9    things stand.

01:35PM  10         MR. SOBOL:  So that the summary, whatever,

11    will be submitted to the Court, as Ms. Parker indicates,

12    next week.  Given the other things that have happened, I

13    thought it made sense to do just a very brief overview.

14    So as the Court understands, there is a settlement in

15    principal which we'll turn to in terms of a different

16    agenda item in a moment with NECC, Ameridose, MSM, other

17    affiliated entities and the three families, the two

18    Conigliaro families and the Cadden families.

19              In addition to that then, the short form

01:36PM  20    complaints and the other litigation tell us that there

21    are in excess of -- well, that there still remains some

22    national defendants that may not be in mediation yet at

23    this point.  As to clinics, they'll probably be --

24              THE COURT:  By national defendants, you mean

25    Liberty and UniFirst?

```
 1              MR. SOBOL:  Fair enough.  I'll be more
 2    precise then and also deal with the status and mediation
 3    of 2, agenda Number 2 to put this all in perspective.
 4              My understanding is that the following
 5    entities are in the Court-ordered mediation:  ARL,
 6    Victory, Liberty, Orlando and West Orange, a Florida
 7    clinic.  In addition, there is a mediation with Inspira,
 8    a New Jersey entity, and another entity that I'm not at
 9    Liberty to disclose at this time, so those are the
10    entities or clinics that are in mediation.  Beyond those
11    entities, there will probably be in excess of about 20
12    other clinics that are named as defendants in lawsuits
13    that are here in this MDL.
14              There may or may not be, I can't recall off
15    the top of my head, any defendant that would be exposed
16    to national liability.  UniFirst, thank you, is that
17    entity.  What also -- and so litigation will, therefore,
18    proceed against the nonmediating entities and the
19    nonaffiliated defendants and NECC, those kinds of folks.
20              What also emerges from that is that another
21    agenda item that we'll address later on is that the PSC
22    has been undertaking a triage of what makes the most
23    amount of sense, what to focus on and when, and
24    certainly what emerges from that is the following two
25    global observations:
```

1           First, it appears clear that the St. Thomas

2   entities, which are clinics, if you will, in Tennessee

3   are litigating clinics that have the largest number of

4   victims associated with them in that St. Thomas will

5   likely be a focus of litigation here in the MDL, to be

6   sure.

7           In addition, there is the question that is

8   emerging that people will address later on at this

9   hearing or elsewhere as to whether or not InSight from

01:38PM  10   Virginia, which is currently the subject of litigation

11   in state courts in Virginia, will either continue to go

12   forward with litigation in Virginia or be moved here in

13   the MDL, and given the magnitude of the issues with

14   respect to that entity, it would probably fall into the

15   same bucket as the Tennessee/St. Thomas here in the MDL,

16   things to move forward with post-haste.

17           The remaining issues, we, the PSC, and the

18   defendants still need to go through, so we have to do

19   the consensus about what other clinics really are being

01:39PM  20   sued, how many are here and what makes sense in terms of

21   moving those cases forward or not, so we'll be in the

22   process of doing that.

23           The reason I wanted to give this overview

24   and also discuss, identify the entities that are in

25   mediation is that as you have, your Honor, indicated,

1    quite correctly, toward the end of last year, you wanted

2    to find out where things were with the NECC and related

3    folks to be able to figure out how this MDL is shaping

4    up, and so that I think how it's shaping up in terms of

5    just general overview is you have this settlement with

6    the related entities and insiders, so to speak, that's

7    making its way forward, you've got some mediations that

8    are underway, that hopefully will resolve themselves in

9    the next couple of months, and then we've got a couple

01:40PM    10    of declaratory judgment actions regarding a couple of

11    policies on Ameridose that will need to be dealt with in

12    the MDL, and then, finally, we have certainly in terms

13    of core key kind of litigation, St. Thomas, which will

14    have to go forward, and then we'll have to work our way

15    through the other clinics and what happens with

16    Virginia, and that's really what I would have to say

17    about the overview and the status of mediation efforts.

18            THE COURT:  All right.  Let's circle back to

19    the question of the short form complaint.  Someone stood

01:40PM    20    up.  Yes, sir, can you identify yourself.

21            MR. BLUMBERG:  Jay Blumberg, your Honor,

22    from Premier defendants in New Jersey.  I had filed a

23    response to the motion to extend the time to file a

24    master complaint against the affiliated defendants

25    because in December, I stood up here and asked your

1   Honor or told your Honor that I was somewhat concerned

2   about having to file a responsive pleading to my short

3   form complaint without knowing whether the affiliated

4   defendants are going to be in the case or not, and,

5   procedurally, if they're in the case, I have to file

6   cross-claims against them; if they're not in the case, I

7   have to file third-party complaints against them, and I

8   don't know which way at this point in time that that's

9   going to roll.

01:41PM  10          I think we all can guess that it's probably

11   going to be that we're going to have to file third-party

12   complaints, but we don't know for sure at this point, so

13   in conjunction with my response, I filed a motion

14   basically to extend the time for us to respond to the

15   short form complaints, which are due today, and I think

16   your Honor had indicated at the last conference that an

17   emergency motion might be entertained with respect to

18   that if there was some concern, so now I have that

19   concern, and I do ask the Court to consider whether --

01:42PM  20   and I don't know how many other people, nobody else

21   joined in this, so I don't know how many other people

22   this impacts.  But if Mr. Sobol is correct, it may be 20

23   other entities or more that are in the same situation in

24   which we really need to know whether the affiliated

25   defendants are going to be defendants or not.

```
 1                THE COURT:  Well, it raises in my mind what
 2     are perhaps a dumb question or series of questions, but
 3     I'll put it on the table, what happens if this
 4     settlement doesn't go through, what happens with
 5     cross-claims or third-party complaints?
 6                NECC I think is the only entity in
 7     bankruptcy, and if you had a third-party complaint
 8     against an affiliated company, what happens with that
 9     going forward, and I don't know the answer to that.
10                Does someone want to take that up at least
11     as a general proposition?
12                MR. BLUMBERG:  I could tell you that in
13     New Jersey what would happen in those circumstances is
14     that the cross-claims would survive to the extent that
15     the remaining defendants would get a credit for whatever
16     percentage of negligence is attributable to that
17     settling defendant, and I would take the position that
18     that includes not just the nonbankruptcy defendants but
19     the bankruptcy defendants as well, which is why it's
20     important for us to keep them in the case not because
21     they're going to be responsible to pay any more money
22     but because, at least in New Jersey, procedurally, we
23     would be entitled to a credit for that.
24                THE COURT:  All right.
25                MR. SOBOL:  If I may, your Honor.
```

01:42PM (line 10)

01:43PM (line 20)

1          THE COURT:  Yes.

2          MR. SOBOL:  If the settlement does go

3    forward, if the proposed settlement, the settlement

4    that's in principal becomes a documented settlement, the

5    position of the PSC would be that there should be no

6    litigation with respect to any of the proposed settling

7    parties.

8          In addition, I think it's fair to say,

9    because there's been no mystery, that the proposed

01:44PM  10   settlement is one in which it is intended, when all is

11   said and done through a plan of reorganization or

12   confirmation of a plan for NECC and the bankruptcy court

13   that there is functionally a nondebtor release or a

14   channeling injunction that presents any further

15   litigation against those entities.

16         So that's the short answer to that specific

17   question.  How that shakes up in terms of other

18   defendant's rights is a different matter.

19         THE COURT:  And, obviously, I'm not familiar

01:44PM  20   with the particular state procedural requirements or how

21   this plays out in New Jersey, Tennessee, Virginia and so

22   forth.  Mr. Molton, did you want to weigh in?

23         MR. MOLTON:  Yes, Judge, I just want to

24   confirm with the Court what Mr. Sobol said is that

25   taking aside the state court issues, what credits, you

1    know, certain defendants might get as a result of the

2    settlement, which is independent of the release issue,

3    it's the contemplation of the trustee and the committee

4    to put forward a plan, a Chapter 11 plan, that includes

5    the settlement and as part of that settlement will have

6    in a confirmation order what we call nondebtor releases

7    and injunctions in aid thereof.

8            That basically ends the litigation against

9    all the participants in the competition pot, and that

01:45PM  10    won't necessarily only stop with the affiliated

11    defendants, your Honor, because the intention, and I

12    know Mr. Sobol just talked about the mediations, but

13    it's the intention of the bankruptcy constituencies as

14    well as the PSC through the mediation orders and

15    otherwise to incent the remaining defendants,

16    non-settling defendants, whoever they may be, whether

17    they be the national defendants, the clinics, the

18    doctors or whatever, to come join us in mediations in

19    which case if those mediations are successful, they will

01:45PM  20    also, their settlements will also be part of the plan,

21    the Chapter 11 plan, that will protect them in the same

22    way.

23            Just to follow up on what Mr. Sobol said,

24    it's important to note, your Honor, since the settlement

25    was announced and also not only the finding of the

1    mediation joinders by the national defendants but also

2    Inspira's announcement basically by the stay order, the

3    consensual stay stipulation of discovery that your Honor

4    executed and entered, that we've been getting a lot of

5    inquiry from other participants in this MDL as to how

6    the mediation works and what the benefits are, and

7    hopefully over the next couple months, your Honor, we'll

8    see increasing participation in the mediation program.

9              THE COURT:  In the meantime, Mr. Blumberg

01:46PM  10  has asked for an extension to April 10th to respond.  Is

11   there any objection anyone has to me granting that which

12   will effectively allow that issue to be put on hold

13   while we sort out what the settlement looks like and how

14   this is going to play out?

15             MS. PARKER:  We have no objection to that

16   extension for Mr. Blumberg.

17             THE COURT:  All right.  To the extent,

18   Mr. Blumberg, that you have cross-moved to extend the

19   deadline to file responsive pleadings, which is

01:47PM  20  Number 751, that motion is granted, and you'll have

21   until April 10th, 2014 to file responses.

22             MR. BLUMBERG:  Thank you, your Honor.  At

23   that point in time, if third-party complaints are going

24   to have to be filed, I'd like to pose that we discuss at

25   least a proposal for how that's to be handled such as

```
 1    maybe a master third-party complaint to be filed so that
 2    the other defendants can use that and file short form
 3    complaints and won't be burdened with 60,000 complaints.
 4              MR. BLUMBERG:  Fair enough.  Thank you, your
 5    Honor.
 6              THE COURT:  That may be sensible, but we'll
 7    have some time to sort that.
 8              MS. GREER:  Your Honor, Marcy Greer for the
 9    St. Thomas entities.
10              THE COURT:  Yes.
11              MS. GREER:  Just for clarification, the
12    motion was made on behalf of all the defendants, which
13    is the new April deadline for third-party complaints by
14    all defendants.
15              THE COURT:  I thought it was only for
16    Premier.
17              MS. GREER:  The request was that the
18    deadline be extended.
19              THE COURT:  Is that a problem then across
20    the board?  In other words, does anyone have an
21    objection to me having this apply to not just to the
22    Premier defendants from New Jersey but all the
23    defendants?
24              MR. SOBOL:  There's a lot of whispering at
25    our table, your Honor.  I think we need to think about
```

01:48PM  (line 10)

01:48PM  (line 20)

1    it.  I'll need to check it, but there's some whispering.

2    I think in order for us to have a more intelligent

3    answer, we may have to get back to you somehow, take a

4    quick break or --

5              THE COURT:  Why don't we handle it this way.

6    To the extent that those responses are due January 10th,

7    I will extend to all defendants.  Why don't we make it a

8    minimum of three weeks to January 31st, and if we -- if

9    there's an issue, Mr. Sobol, I'll hear from you.  I

01:49PM  10    think your opposition would be due January 31st, in any

11    event, if you're going to oppose it.

12              MR. SOBOL:  Correct.

13              THE COURT:  We'll handle it that way.  In

14    the short term, everyone has until January 31st, Premier

15    has until April 10th, Premier defendants, and maybe all

16    defendants will have until April 10th.

17              MR. SOBOL:  We'll take into -- just so that

18    I don't think that counsel -- we're not going to try to

19    sandbag, our response will deal with that some more time

01:49PM  20    regardless of what it is, assent to something beyond

21    that anyway.

22              THE COURT:  Right.  Yes, I'm sorry, who is

23    this?  Does someone want to speak on the telephone?  No.

24    I'm somewhat in the dark here not only as to the details

25    of the settlement or how counsel plan or hope or intend

1    for this to work out, but I'm also obviously not

2    familiar with the nuances of New Jersey and Tennessee

3    law and so forth, and I don't know what consequence may

4    come from these orders, so what I'm hoping is that,

5    again, the parties will have the chance to sort that out

6    or to inform me or to state their perspective positions.

7    Will that work, Ms. Greer?

8              MS. GREER:  Yes, your Honor.

9              THE COURT:  Before I forget the thought on

01:50PM  10  the short form complaints, someone, maybe more than one

11   counsel, raised the issue as to service of short form

12   complaints.  Just so that it's clear, anyone who filed

13   an earlier complaint, a standard complaint, for example,

14   in the State of Tennessee or the State of Virginia who

15   later adopted the short form complaints, has amended the

16   complaint, that complaint doesn't need to be reserved,

17   but if it's a new case and you're adopting the short

18   form complaint for the first time, you have to serve

19   defendants like in any other case, if that makes sense.

01:50PM  20            There does seem to be some question about

21   that.  In other words, we're not waiving the service

22   requirements of Rule 4, the case has to start with

23   service of process.

24            MS. PARKER:  That was the plaintiffs'

25   steering committee's understanding, your Honor, and

1    that's what we have shared with other plaintiffs'

2    counsel.

3         THE COURT:  All right.  Anything else on the

4    agenda Number 1?  Ms. Greer.

5         MS. GREER:  Your Honor, I apologize, one

6    other issue.  There is only one plaintiff who we had

7    found who had filed a long form original complaint that

8    did not file a short form, and you had given us till the

9    15th to respond to that complaint.

01:51PM   10         THE COURT:  Yes.

11         MS. GREER:  Do we do something with that?

12    We'll be filing a motion to dismiss as to it.  Quite

13    frankly, a lot of the short form complaints have been

14    incorporated by reference to the original complaints, so

15    it's kind of all in the mix.

16         THE COURT:  Why don't we do this.  Why don't

17    I add 30 days to that response.  That will get us

18    through the next status conference, and we can see how

19    that plays out.  It's not been clear to me from the

01:52PM   20    beginning how we handle the cases of plaintiffs who

21    don't adopt the short form complaint other than my

22    instinct was this could go to the back of the line

23    because I have my hands full dealing with the short form

24    complaint and other issues.

25         MS. GREER:  Although, quite frankly, your

1    Honor, we weren't expecting that there would be some

2    incorporated by reference in full their prior

3    complaints, so it's all kind of in the mix.  It might

4    make sense to just put this Temple case in with the

5    others and let us add it to our global motion to

6    dismiss.

7               THE COURT:  Well, in the meantime, as to

8    that particular case, I will grant you an additional 30

9    days to respond.  Your response was due when?

01:52PM  10          MS. GREER:  January 15th.

11               THE COURT:  All right.  You have until

12    February 14th.  I'm sorry, the name of that case?

13               MS. GREER:  Temple vs. Ameridose.

14               THE COURT:  Do you have the docket number?

15               MS. GREER:  You know what, give me one

16    second, I do.

17               THE COURT:  I keep having the sense all I'm

18    doing, of course, is kicking multiple cans down the

19    road.

01:53PM  20          MS. GREER:  It's 1:13-cv-12696.

21               THE COURT:  12696, thank you.

22               MS. GREER:  Temple vs. Ameridose.

23               THE COURT:  All right.  Anything else on

24    item Number 1?  Anything else on item Number 2?

25    Mr. Gottfried.

1          MR. GOTTFRIED:  The only thing I want to

2     add, your Honor, you gave ARL until December 23d to file

3     a proof of claim.  They did not do that, so at this

4     point, they're not compliant with your mediation order.

5          THE COURT:  All right.  Is there any pending

6     motion that asks me to do something in that regard?

7          MR. GOTTFRIED:  Not that I'm aware of.

8          MS. PARKER:  I believe that ARL has since

9     filed a proof of claim or at least has indicated to us

01:54PM  10     that they are doing that.

11          THE COURT:  I'm sorry, you are?

12          MS. RAGOSTA:  Kristen Ragosta from ARL.

13     Your Honor, after our leave from the Court, we did have

14     further discussion with the trustee himself, I believe

15     through the mediator, counsel was on vacation, and he

16     said that we could have until the end of -- till

17     January 15th to file a proof of claim.  We have since

18     transmitted a draft to the mediator for the trustee's

19     review, and we plan to submit a proof of claim tomorrow

01:54PM  20     or Monday.

21          MR. GOTTFRIED:  We'll look at that when and

22     if it gets filed.  I can tell you there are issues with

23     the draft, I can see all sorts of reservations of

24     rights, provisos and the like, so we'll see what

25     ultimately gets filed.  We'll certainly react to it when

```
 1    we see it.
 2                 THE COURT:  All right.  Right now there's no
 3    motion pending before me of any kind, and we'll see how
 4    this plays out and take it up in due course.
 5                 MS. RAGOSTA:  Thank you.
 6                 THE COURT:  Mr. Sobol.
 7                 MR. SOBOL:  Nothing else.
 8                 THE COURT:  Item Number 3, proposed
 9    settlement.  Is there anything else?  Mr. Gottfried.
10                 MR. GOTTFRIED:  Sure, I'd be happy to give
11    you a further report from the trustee's perspective,
12    your Honor.  As I think I indicated in December, the
13    December status conference, the trustee and the parties
14    certainly took to heart your admonition that it was time
15    to either get this matter resolved or settled or to
16    litigate it, and I reported significant progress in the
17    December conference, and I'm sure the Court has seen in
18    various filings and otherwise, the announcement of an
19    agreement in principal to reach a settlement with the
20    insurance company and the insider defendants that have
21    been identified for an amount that's estimated to be in
22    excess of $100 million.
23                 The trustee has continued to make progress
24    towards finalizing those settlements.  We've exchanged
25    draft settlement documents with the insurers.  We expect
```

1   to be exchanging drafts with the individual and

2   affiliated defendants next week.  It's the trustee's

3   goal to file a motion with the bankruptcy court to have

4   those settlement approved in the next 30 days or so, and

5   his thought would be given a 20-day notice period that a

6   hearing might be scheduled on that in the bankruptcy

7   court 30 days or so after he files his motion.

8               He continues to negotiate with the insurer

9   for another affiliated defendant and believes that

10  substantial progress is being made towards the

11  settlements.

12              THE COURT:  All right.

13              MR. SOBOL:  If I may, your Honor?

14              THE COURT:  Yes.

15              MR. SOBOL:  I think there are several things

16  that are important for the Court to understand in terms

17  of both the time frame and what we're doing with respect

18  to that.  The first is after those events occur, once a

19  settlement is reduced to writing and presented to the

20  bankrupt court, tentatively approved or whatever would

21  be done in that context, of course, at that point won't

22  be going into in effect because the notion behind it is

23  that the SP becomes a part of a plan in the bankruptcy

24  court, which obviously has to go through an additional

25  process, voting, acceptance, potential appeal, so I just

 1    want to make sure you understand how that all runs out.

 2              There are two fundamental issues and due

 3    diligence that are being processed in terms of the

 4    settlement agreement.  First, there has been a

 5    representation made regarding the assets of Barry and

 6    Lisa Cadden, Doug and Carla Conigliaro and Greg

 7    Conigliaro that needs to be confirmed prior to the

 8    settlement becoming final, and, with regard, the PSC is

 9    undertaking that in all dispatch.

01:58PM   10              Second, because as the Court knows, there

11    has been no formal discovery with respect to any of

12    these people or entities over the past year, there are

13    representations that have been made, particularly

14    regarding Doug Conigliaro that he had absolutely nothing

15    whatsoever to do with the wrongdoing that gives rise to

16    liability in this case.

17              Obviously, that's something that the PSC

18    needs to make sure we undertake our due diligence with

19    respect to before we can agree that goes forward.  I've

01:58PM   20    had some preliminary discussions with counsel so that we

21    can undertake that due diligence, and we will do that as

22    soon as we can.

23              I'd also like to be able in connection with

24    that, your Honor, is indicate to you that I've requested

25    that Rick Ellis, who's formally not on the PSC, but

1    who's been working with us daily on all issues, I've

2    asked him to head up that bit of due diligence so that

3    there can be somebody with an awful lot of experience,

4    member of the Bar here to be able to do that, and he's

5    agreed to do that.

6              So that would be the PSC's report with

7    respect to that.  We continue to try to work with the

8    trustee and the creditors' committee to get this

9    finalized, signed, sealed and delivered in the time

01:59PM  10    frame that Mr. Gottfried has indicated.

11              THE COURT:  All right.  Does anyone want to

12    be heard on settlement?  All right.  Master complaint

13    against affiliated defendants and responsive pleadings.

14    I think we've touched on some of this.

15              MS. PARKER:  Yes, your Honor.

16              THE COURT:  Ms. Parker.

17              MS. PARKER:  Thank you, your Honor.  The

18    plaintiffs' steering committee moved this Court for an

19    extension of the deadline to file a master complaint

01:59PM  20    naming the affiliated defendants.  Our basis for doing

21    so is that we wanted to provide time for settlement

22    agreement to be reduced to writing and for due diligence

23    to be completed.

24              The Court granted that motion.  The master

25    complaint against affiliated defendants is now due

1    March 10th.  We may or may not need to revisit that

2    deadline, your Honor, but I think the most prudent

3    course is to see how things play out in the next 30

4    days.

5                 THE COURT:  To state the obvious, there's no

6    point in people undergoing unnecessary work if we can

7    avoid it.

8                 Is there -- I'm sorry, is there anything

9    else on item 4?

02:00PM  10                 MS. PARKER:  We've already addressed the

11   motion by Premier, your Honor, so I think unless

12   Mr. Blumberg has anything further.

13                 MR. BLUMBERG:  Nothing further.

14                 THE COURT:  All right.  Number 5, the PSC

15   motion to partially lift the discovery stay against the

16   affiliated defendants.  I saw that there were a handful

17   of responses to that.

18                 MR. SOBOL:  If I may, your Honor.  First,

19   let me put the motion in context so it's not

02:01PM  20   misunderstood.  Over the past, whatever, six or eight

21   months or so, Mr. Fern on behalf of NECC, trustee, has

22   been undertaking informal discovery producing

23   information to the PSC.

24                 The fact that we're seeking this motion is

25   not in any way critical of all of his efforts.  They

1    have been responsive, they continue to be responsive to

2    us in the mutually-agreed ad hoc way in which that has

3    occurred and with the limitations that the trustee has

4    understandably placed on our ability, what we can do

5    with the information or not.

6              So nothing that I'm saying is in any way

7    intended to undermine what it is they've done in that

8    regard.  The motion is a simple one.  The motion simply

9    seeks to have you lift the stay as to the affiliated

02:02PM   10   entities and individuals.  By the way, it did not

11   include NECC because I was personally under a

12   misimpression that I thought that I needed to go to the

13   bankruptcy court to have the bankruptcy court automatic

14   stay lifted for these purposes.

15             Research in the interim educates me better

16   that I actually did not have to go do that, and so I've

17   sent a letter to Mr. Moore asking that he provide, allow

18   us to have the same relief here as I've asked the other

19   parties that's not ripe.

02:02PM   20             The motion simply is a request to have you

21   lift the stay.  If you lift the stay, that does not mean

22   that anybody is required to produce any documents

23   tomorrow or any witnesses tomorrow or anything else like

24   that.  It's, instead, it would permit us to be able to

25   serve Rule 34 requests, negotiate responses, get

 1    documents and deal with things in the ordinary course.

 2            Why do we want to do it now?  Well, it's

 3    pretty simple.  It's been a year, and it turns out that

 4    there is litigation we're going to need to move forward

 5    with respect to, not with respect to hopefully the

 6    settling parties, which we've just spent quite a bit of

 7    time identifying them all, but there are quite a few

 8    non-settling parties, and the PSC has found itself over

 9    time more and more in an awkward position in dealing

02:03PM 10    with defense counsel who look to us to say, well, we're

11    not entitled to any discovery from NECC or Ameridose,

12    let's move forward with this case, so that becomes a

13    problem.  And, also, there are things that we need to

14    now formally acquire so that we can formally use it with

15    respect to other parties, that kind of thing.

16            Obviously, before any of these issues come

17    before you, the members of this Bar have been speaking

18    with one another trying to see if they can resolve

19    things, and we have spoken, and we have tried to resolve

02:03PM 20    it.  This was one of those ones where we had to agree to

21    disagree.

22            I think that my Brother's opposition to this

23    is best articulated as, "We don't want this to mock up

24    the settlement discussions."  My best answer to that is

25    I don't have any intention on mucking up the settlement

1   discussions.  If Judge Saylor lifts the stay, it was

2   going to take my guys at least a week and a half to

3   issue a Rule 34 request, you're going to have a month to

4   respond to that, we'll probably have to negotiate a

5   response to that, so I don't have a prayer of getting

6   any official documents from you until the Ides of March,

7   in any event.  That's our position with respect to it.

8          THE COURT:  Let me give you -- maybe this

9   is -- it is a tentative response.  As a general

10  proposition, I agree with you.  We're going to have to

11  do this eventually anyway unless every single defendant

12  settles, and it's been a while, and we ought to get

13  going on it.

14          Having said that, I'm concerned in the very

15  short term about burdening counsel who I do want to

16  focus principally on the settlement agreement, and,

17  Number 2, I think we need, and this probably applies to

18  all remaining defendants or anyone whom discovery is

19  going to be sought, we need to have a plan in place, how

20  are we going to deal with ESI.

21          There are a lot of issues that have not yet

22  been totally resolved, and so I think what -- well, let

23  me hear from -- who opposed it, Mr. Gottfried?

24          MR. SOBOL:  I think if they say anything,

25  they're probably doing themselves worse rather than

1  better.

2          MR. GOTTFRIED:  Let me say that I agree with

3  your Honor completely.

4          [Laughter]

5          THE COURT:  Always the right thing to say.

6          MR. GOTTFRIED:  I'm aware of that.

7          THE COURT:  It's like your wife, "You look

8  beautiful, honey," the same idea.

9          MR. GOTTFRIED:  We agree with you.

02:05PM  10  Certainly in the near term, I would say at least the

11  next 60 days, the stay should absolutely be continued

12  given the time frame that I laid out that Mr. Sobol

13  agrees with, it seems that's the bare minimum.

14          In addition to some of the concerns that you

15  raised, your Honor, one of the elements of value in this

16  settlement is the value of Ameridose, and if they are

17  forced to deal with sort of broad brush document

18  requests and processing ESI, before even master

19  complaints are filed and they even know what the claim

02:06PM  20  is against them, it just means that we're taking money

21  out of the hands of the victims, and so we strongly

22  oppose at this point the stay being lifted.

23          We think the stay served the salutary effect

24  that the Court thought it would in promoting settlement.

25  I note that this motion was first filed on October 28th

```
 1    when the landscape with respect to settlement was far

 2    different and uncertain and that it's changed materially

 3    in a very positive way, I might add, and so, you know,

 4    for those reasons, and, most particularly, your reasons,

 5    we would urge that this be denied right now and then

 6    revisited after the settlement has been achieved and the

 7    landscape is clearer, we can come up with a

 8    cost-effective way to preserve the assets of the estate

 9    and protect the creditors.

10              MR. MOLTON:  Your Honor, if I could make a

11    statement?

12              THE COURT:  Yes.

13              MR. MOLTON:  We filed a joinder.  The

14    committee is comprised, as your Honor knows, of three

15    tort claimants and one trade creditor, and so the

16    committee really understands what Mr. Sobol said and

17    understands the PSC used the committee after discussion

18    voted to join in the opposition from the trustee and for

19    the reasons that Mr. Gottfried said.

20              One of the things I do want to reiterate,

21    and that joinder was made with, you know, no small

22    matter of thought, and that should be stated.  We really

23    need to finish the settlement.  I think Mr. Gottfried is

24    correct that we're looking at 30 days.  We've got lots

25    of moving parts.  As your Honor has seen, nothing in
```

1    this case is easy.  You've got the creditors' committee,

2    who worked for very diligently with the PSC and the

3    trustee to get the settlement done with the affiliated

4    defendants.  Each of those parties is going to have to

5    stay on the operative agreement, the settlement

6    agreement.  It's not going to be an easy agreement.

7    They're mutually linked with the insurance agreements,

8    insurance settlements, and I'll get to that in a minute.

9              Accordingly, 30 days is an appropriate

02:08PM  10    amount of time to document it and get it executed and

11    then off to Judge Boroff for initial approval.  I do

12    want to also note, your Honor, that we really need to

13    protect this settlement agreement and make sure that

14    nothing gets in its way.  It is the first milestone on

15    resolving this case.

16              As I mentioned earlier, it's had the effect

17    of having our phone call, our telephones ringing with

18    other interested defendants considering the mediation

19    program.  I do note that the views from those people who

02:09PM  20    aren't always here, the plaintiffs and their attorneys

21    who are out there and have cases has been, we

22    understand, uniformly positive for the settlement, and

23    to some extent, there's writings out there indicating

24    that people were surprised that we were able to piece

25    together such a significant compensation fund, and

1    that's only at the initial stage.

2         I do want to note, your Honor, and I

3    understand what Mr. Sobol said is that, you know,

4    nothing is going to be produced yet, but, however, we

5    will, even if his informal schedule is effectuated, that

6    means the defendants have to answer written answers to

7    discovery requests before the settlement is approved,

8    these defendants still, as your Honor knows, face

9    criminal jeopardy.

02:09PM   10        To the extent that they decide to invoke

11   Fifth Amendment rights, to the extent that that's

12   appropriate, we're uncertain how that may impact the

13   interlinking of these agreements with the insurer

14   agreements, and certainly the trustee conducted very

15   sensitive and detailed discussions with the insurers in

16   the face of the facts of this case and significant

17   challenges and was able to arrive at very good

18   agreements, I think for the benefit of all the parties

19   in this case, so we believe from the creditors'

02:10PM   20   committee point of view that it's really important that

21   nothing get in the way of this settlement, and so let's

22   execute it and get it approved by Judge Boroff.

23        MR. GOTTFRIED:  One thing I want to add,

24   with your permission.

25        THE COURT:  Yes, Mr. Gottfried.

1          MR. GOTTFRIED:  As Mr. Sobol said at the

2    beginning of his remarks, the trustee has provided

3    informal discovery to the PSC.  We have and are ongoing

4    providing informal discovery to the parties who are

5    participating in mediation.  I dare say, there's been no

6    request that's been made to the trustee for informal

7    discovery that hasn't been addressed promptly and

8    appropriate productions made, and certainly we would

9    continue to do that even if we were doing this process,

02:11PM  10   if that helps facilitate mediations or if there's a

11   need, and we've done that, and I believe Mr. Fern has

12   the details, he's been running that, but I think it's

13   40,000 pages of documents have been produced.

14          I am specifically aware, for example, of the

15   due diligence that Mr. Sobol raised, he asked us to

16   conduct a review of the materials, we did an extensive

17   review, we provided a report with respect to that, so

18   there's been no -- there's no stonewalling here, but

19   that's the cost effective and efficient way of dealing

02:11PM  20   with it at this process, the way we've been doing it, we

21   think.

22          THE COURT:  All right.  Here's what I'm

23   going to do.  I'm going to not lift the stay at least

24   until the next conference on February 6th.  When I do

25   lift the stay, and, again, I share some of Mr. Sobol's

         1   concerns, it's not going to start with the issuance of
         2   Rule 34 requests, it's going to start with a meet and
         3   confer, and we're going to have a plan, and we're going
         4   to talk about what makes sense going forward, and
         5   depending on the timing of a variety of things, I may
         6   direct that that happen some time after February 6th.  I
         7   may wait, I'm not sure what I'm going to do, but the
         8   parties ought to start at least thinking about that,
         9   maybe even having some informal discussions just to
02:12PM  10   think about how this is going to happen, when it
        11   happens, what makes sense.
        12              Obviously, the landscape may change between
        13   now and then, but in the short term, I'm going to leave
        14   matters where they are.  Mr. Sobol's concern is duly
        15   noted, shared by the Court.  We'll take it a month at a
        16   time, so to speak.
        17              MR. GOTTFRIED:  Thank you, your Honor.
        18              MR. SOBOL:  If anybody says, I'll say the
        19   Judge shot me down.
02:12PM  20              THE COURT:  That happens.  There's perhaps a
        21   vaguely related question, there is a motion, I think by
        22   Liberty, that's seeking an order of disclosure
        23   permitting access to the repository of documents.
        24   There's a concern about the payment of the $3,000
        25   upfront fee.  That motion is not yet ripe.  Is counsel

1    for Liberty present?  No.

2           MS. COCHRAN:  Your Honor, Steffani Cochran

3    is present --

4           THE COURT:  Yes.

5           MS. COCHRAN:  -- among the PSC for Liberty.

6    I'm stepping in for Marc Lipton, who had a family

7    emergency, and my understanding is we're speaking with

8    the attorney for Liberty, and it's being worked on.

9    There's some stuff that's supposed to go back and forth

02:13PM   10    over the next week.

11           THE COURT:  All right.  Again, that motion

12    is not yet ripe.  I'll leave that where it is for the

13    time being.

14           MS. COCHRAN:  Thanks.

15           THE COURT:  All right.  Anything else on

16    item Number 5?  Just to be clear, the motion that

17    remains pending is the motion from last October,

18    Number 534, the PSC's motion to lift the discovery stay.

19           MR. SOBOL:  So, technically are you putting

02:14PM   20    that over or denying it without prejudice?

21           THE COURT:  I'm just putting it over, I'm

22    not resolving it.  All right.  Number 6, subpoenas and

23    objections?

24           MR. FENNELL:  Your Honor, this is

25    Patrick Fennell for the plaintiffs' steering committee.

1    On November 13 last year, Judge Boal entered a discovery

2    order requiring all subpoena recipients to produce

3    documents pursuant to the PSC subpoena if they have a

4    patient who has sued them or a patient who has a case

5    pending in the MDL or given notice of a claim against a

6    clinic in the NECC litigation.

7              So far, 21 clinics have deposited documents

8    into the PSC repository at U.S. Legal Support.  That

9    includes approximately 1300 documents and approximately

02:15PM  10    7,000 pages.  There are 15, approximately 15 clinics

11   that have taken the position that they do not have any

12   such patients and are not required to produce any

13   documents except for a limited request, which Judge Boal

14   ruled applied to everybody.

15             Interestingly, some of the clinics who have

16   received notice of a claim, a standard letter saying we

17   represent the following individuals who have claims

18   against your healthcare provider in the NECC litigation,

19   some of the clinics who have received those notices

02:15PM  20    still feel that they don't have to respond to the

21   subpoena because the notice has not been properly given

22   under certain aspects of state law.

23             The PSC's position is that Judge Boal used

24   the term "notice of a claim" in its most commonly

25   understood form and didn't say anything about whether

1   that notice has to be done in compliance with the

2   particular requirements of one state or another.

3           So the PSC is conducting meet and confers

4   and will be also preparing to file a motion to compel

5   with respect to one such clinic here very shortly.

6           THE COURT:  All right.  Anyone else want to

7   be heard on this topic?  That's item Number 6.

8           Item Number 7, matters referred to by

9   Judge Boal.  Before we get into that, there are a couple

02:16PM  10  of dangling issues raised by the St. Thomas entities.

11  Back at the end of November, St. Thomas had as part of

12  their -- a number of motions that it filed to

13  reconsider, my MDL order and so forth, there was a

14  motion to amend the protective order.

15          I have finally resolved that.  I had hoped

16  to have it filed before today so that you could see it.

17  I'm technically granting it in part and denying it in

18  part.  I'm going to make some minor tweaks to that

19  protective order, but most of the issues raised by

02:17PM  20  St. Thomas, I think, are either covered in the order or

21  I think it's not necessary to amend the order to

22  address.  That we'll get out shortly, hopefully even

23  today.

24          Part of what St. Thomas raised was also a

25  motion to stay discovery pending a discovery plan.  I do

1    want to take this up at some point today.  What I said

2    about having a discovery plan for the affiliated

3    defendants obviously applies to the unaffiliated

4    defendants as well, some degree of planning and

5    coordination needs to be done here.  You know, even in a

6    simple case, we have a scheduling conference where the

7    parties have to meet and confer.  That needs to be

8    discussed as well.

9            We don't necessarily need to resolve it

02:18PM   10   today, but that issue does need to be resolved, and with

11   that as an introduction, who's going to take the lead on

12   item 7, Ms. Parker?

13           MS. PARKER:  Actually Ms. Dougherty I

14   believe and Mr. Zamora will be addressing that.

15           THE COURT:  Ms. Dougherty.

16           MS. DOUGHERTY:  Thank you, your Honor.

17   Travellers' motion to quash at this point in time is

18   being negotiated by the PSC with Travellers.  Travellers

19   is the insurer for Liberty party in the mediation.  At

02:19PM   20   this point, some compromises have been made and reached.

21           THE COURT:  I thought Liberty said it had no

22   insurance?  Well, whatever.  Go ahead.

23           MS. DOUGHERTY:  Interesting, yes, and so at

24   this point, the plaintiffs' steering committee sought an

25   extension of time to respond, and your Honor granted

1  that extension of time, and hopefully we'll be able to

2  resolve these issues with Travellers without having to

3  seek further Court intervention, but if we are unable to

4  resolve it, that's been referred to Judge Boal, and we

5  anticipate that there may be argument on that on

6  February 6th.

7        THE COURT:  What is the status before

8  Judge Boal of dealing with the fact sheets, releases,

9  protective order, that process?  Is there a hearing set

02:20PM  10  for that as well?

11        MR. ZAMORA:  Judge, there is.  This is

12  Mark Zamora for the plaintiffs' steering committee.

13  It's set for February 6th, and, Judge, Ms. Greer and I

14  had a cordial conversation before today's hearing.  I

15  think if you looked at it in terms of complexity from

16  least to most, perhaps contentious from least to most,

17  we are mindful of a final meet and confer that's to be

18  completed on the 17th, so I think if you look at the

19  order, the first issue is going to be best protocol, and

02:20PM  20  she may disagree, I think we can both find agreement on

21  probably 90 percent of the nuts and bolts procedure.

22        A few of the other items I don't think are

23  road blocks, and I don't think Judge Boal would want to

24  be troubled with some of those issues, and so I think

25  we'll progress there and may not even have anything to

1    discuss.

2              The second component would be the medical

3    releases.  There still is some language that we are

4    discussing, but I am hopeful, I think, that in substance

5    that we'll have agreement, and if there's a real issue

6    that's significant, that will be the only thing that

7    Judge Boal considers.

8              The next item, I think we have made

9    substantial progress this week has been the fact sheet.

10   I'm mindful of your comments at the last hearing.

11             THE COURT:  As you can tell, I took

12   something of a Goldilocks approach, which is I wanted

13   this to be not too detailed and not too simple.

14             MR. ZAMORA:  I think we're getting to right

15   about to the middle, and so there are ongoing disputes

16   that mainly relate to how far back certain requests go.

17   In truth, we handed her material today, and so I am

18   hopeful that more likely than not Judge Boal will be

19   handling that, but those are the most substantial

20   issues.  I think we probably lean a little more to the

21   detail as opposed to where we were.

22             With respect to the ESI, I think we're

23   mindful that that's going to guide some other entities

24   as well.  There's still some more to be done, but I'm

25   pretty confident that we're going to get there.  To that

```
 1    end, we're going to have a call, we'll invite all
 2    participants who are parties to the litigation on the
 3    15th, which is currently set for 4:30, which is 30
 4    minutes after the proof of claim forms are going to be
 5    put to bed.  If folks aren't blurry-eyed, we'll have the
 6    call, and I think what Ms. Parker's view is we'll
 7    circulate a number on the 15th, and Ms. Greer and I and
 8    others will be involved in the discussion of the nuts
 9    and bottles of those issues.
10              THE COURT:  All right.  Anything else on
11    item 7?
12              (No response)
13              THE COURT:  All right.  Item 8.
14              MR. SOBOL:  So on item 8, your Honor, and
15    you flagged it at least twice already today, the
16    question is what's going to be the plan from here on in.
17    The long and short of it, what I would like to suggest,
18    your Honor, is that before the next status conference --
19    well, should I first put in context what will we be
20    talking about?
21              There's still going to be litigation with
22    St. Thomas, we don't know with Virginia, and then we've
23    got, whatever, a couple of dozen other clinics that are
24    out there.  Obviously, we can't put together a plan
25    regarding all of that all at once.  We've got to start
```

02:22PM (line 10)

02:22PM (line 20)

1    picking.  Where are we going to start?

2         Well, it seems to me we're going to start

3    from the plaintiffs' steering committee point of view,

4    we'll start with St. Thomas, and what I'd like us to do

5    is to meet and confer with St. Thomas.  If we can agree

6    on a plan, we'll submit an agreed plan; if we can't

7    agree on a plan, we'll submit counterproposals and hash

8    it out at the next status conference.

9         In that context, too, it's not that the

02:23PM   10    plaintiffs' steering committee is looking exclusively at

11   St. Thomas, but we have to do the census that we'll do

12   next week on a proposed, some lawyers outside the PSC,

13   it's what they think makes sense in terms of other

14   litigation activities we engage in, but from the

15   plaintiffs' steering committee point of view, we'd like

16   to be at the next status conference either talking about

17   an agreed schedule or disagreement on a schedule to tee

18   up a trial for St. Thomas.

19        THE COURT:  All right.  This raises a

02:23PM   20   question.  The Roanoke Gentry, Locke plaintiffs in their

21   papers talking about the transfer of cases raise the

22   issue of, and I'm paraphrasing here, but the thrust of

23   it was that a case arising in southwest Virginia ought

24   to be tried to a southwest Virginia and not up here in

25   far away, cold Boston.

1           My assumption from day one has been that

2   when cases are ready for trial, they get spun out to the

3   individual home districts where they first arose.

4   Again, this seems to me putting aside the so-called

5   national defendants that if what the case is is against

6   a pain clinic and a doctor, that probably those cases

7   ought to be spun out for trial to where they originated.

8           I have not done any sophisticated thinking

9   on that topic, and it obviously depends on what the

02:25PM  10   cases look like and so on, but that's going to affect

11   what cases are selected as bellwethers.  All this by way

12   of saying, this is not a typical case where, you know,

13   you have pharmaceutical product X, and the question is

14   did it cause injury Y, and was appropriate testing done

15   and so forth.

16           I think that's not going to be the central

17   issue in these cases, so it's not clear to me what this

18   is going to look like, where these cases are going to be

19   tried, and what the stage in the process we need to

02:25PM  20   begin talking about that, but certainly it was too soon

21   to be thinking about it a month ago, at least when we

22   were issuing orders, and it's one more thing.  I think

23   we ought to formulate a step at a time.  It depends very

24   much what these cases look like, who the defendants are

25   and what happens from there.

```
 1              MR. SOBOL:  Right.  And how many defendants
 2    there are, whether or not you've got a national
 3    defendant or just a local defendant.
 4              THE COURT:  Right.  Presence or absence of a
 5    national defendant may make a difference.
 6              MR. SOBOL:  And our proposal will consider
 7    that.  I don't think necessarily people have to land on
 8    a final decision on that issue on February 6th or
 9    whatever the next status conference is, and we'll also
10    look into whether or not it makes sense for this Court
11    to sit on a trial down in the middle of Tennessee or
12    not.
13              THE COURT:  Well, I'd be amenable to
14    anyplace warmer than here, which excludes then the
15    midwest at this point in time.  I think somewhere we
16    have lawyers from Traverse City, Michigan, and my mother
17    lives in Traverse City, Michigan, and it was 10, 15
18    below zero for long stretches.  She didn't even go
19    outside to the mailbox.
20              All right.  Anything else on item 8?  Yes,
21    Ms. Greer.
22              MS. GREER:  It's not clear where the
23    deposition protocol and ESI and discovery plans stand at
24    this point.  There hasn't been an order on that
25    referring it to Judge Boal, and so we just would ask for
```

some clarification as to whether you're going to be
handling that because we're hearing a lot about meet and
confer.  We are working on protocols, we are exchanging
them, but they're kind of in no man's land right now.

THE COURT:  Why don't I do this.  Certainly
as to the St. Thomas entities that you represent, I'm
going to direct the parties to meet and confer on the
discovery plan.  I may spin some of this off to
Magistrate Judge Boal, I may keep it, I don't know, but
02:27PM   certainly it makes sense for you all to get together and
talk about what you think makes sense to see if you can
agree, and we'll handle it that way.  Okay.

MS. GREER:  Okay.

THE COURT:  Does that work?

MS. GREER:  Does that go for the deposition
protocol and my protocol are kind of --

THE COURT:  I was thinking of discovery
protocol, which, in other words, discovery from
plaintiffs are going to be dealt with in the short term,
02:27PM   the fact sheets and so forth.  Discovery from your
client's perspective, I want you to meet and confer and
talk about a possible plan.  I don't know what the ESI
issues are, I don't know what the volume of documents
are.  I don't have any idea what the issues are, and
step 1 is for you to confer with one another, and as

1    Mr. Sobol suggested, if you can agree on a plan, that's

2    great, if you can't, let's tee it up, I may decide it, I

3    may refer it to Magistrate Judge Boal, and we'll go from

4    there.

5              MS. GREER:  Our thinking, right or wrong,

6    was that the discovery plan we talked about in sequence,

7    you had talked about having written discovery first and

8    then depositions, et cetera.

9              THE COURT:  That's usually the way it works.

02:28PM    10              MS. GREER:  Usually in my experience, and

11    then separate from that would be an ESI protocol that

12    just deals with the ESI issue which would be cumbersome

13    documents and just deals with the separate protocol, and

14    we have been working on drafts of those, so I just

15    wanted to make sure that you understood how this is

16    playing out kind of in the real world, and we're okay

17    with that.

18              THE COURT:  All right.  That's fine.  Again,

19    from my perspective, what I want is I want there to be

02:29PM    20    some degree of planning, I want it to be fair, I want

21    this to be as organized as it can be under the

22    circumstances.  Obviously, I'm doing a lot of this kind

23    of ad hoc, but as in any case before you take discovery

24    from the other side, there needs to be some kind of plan

25    in place or order that directs and sets deadlines and so

1    on, so why don't we get working on that.

2              If your client is in the cross-hairs and it

3    looks like it is, you need to meet and confer with the

4    plaintiffs' counsel and try to come up with either a

5    joint plan or a pair of proposals that I can choose

6    between.

7              MS. GREER:  Will do.

8              THE COURT:  If you want intelligent

9    commentary on any ESI protocol, you may have to find

02:29PM  10    another Judge.  I'm not sure I'm the right person for

11    that.

12              Item 9, notice of instructions for accessing

13    repository.

14              MS. PARKER:  Yes, your Honor, the

15    plaintiffs' steering committee sent a letter to all

16    defendants in the MDL, both unaffiliated and affiliated,

17    sharing information about the document repositories and

18    also providing some instructions for how access to those

19    repositories can be gained.  Out of an abundance of

02:30PM  20    caution, we also took the liberty of ECFing a notice of

21    those instructions to make sure that every participant

22    in the MDL understood how those repositories could be

23    accessed.

24              THE COURT:  Okay.  Anything else on that?

25              (No response)

```
 1              THE COURT:  Item 10.

 2              MR. GAYNOR:  Excuse me, your Honor, just for

 3    clarification purposes, on behalf of the individuals,

 4    and I'm not pressing this at this point in time, but we

 5    were denied access presumably because of the stay

 6    issues.  I just want to make that clear.

 7              THE COURT:  Denied access to?

 8              MR. GAYNOR:  To the repository.

 9              THE COURT:  Are you seeking relief?

10              MR. GAYNOR:  No, I think we could put that

11    off for now, I just want to clarify the record that we

12    were denied specifically that access.

13              THE COURT:  All right.

14              MR. O'HARA:  I think it's important to note

15    that we're not pressing that issue at this point in

16    time.  I think our position right now is that the global

17    issues of resolution ought to be dealt with and

18    discovery issues set aside.  I think we have a

19    fundamental agreement with your Honor at least in

20    principal through this 30-day period that's coming up to

21    focus on settlement of the case, and we'll address

22    future issues on discovery issues if there are any to be

23    had at a later date.

24              THE COURT:  All right.  Item 10, central

25    enforcement of subpoenas.  PSC has filed a motion.  I
```

02:31PM (line 10)

02:31PM (line 20)

 1    don't know.  Does anyone expect to oppose the motion?

 2    All right.  Ms. Parker.

 3                MS. PARKER:  Thank you, your Honor.  Earlier

 4    in this litigation, a motion was submitted to your Honor

 5    asking for you to decide in advance that you would

 6    centrally enforce subpoenas rather than have subpoenas

 7    be enforced in home state jurisdictions.

 8                What we have asked the Court now to do is to

 9    extend that ruling to apply to all subpoenas that are

02:32PM  10   issued out of the MDL, whether they're issued by

 11   plaintiffs' steering committee or any other party and to

 12   give clarity on that issue in advance that it would

 13   apply to all subpoenas so that subpoena recipients going

 14   forward as we begin additional discovery activities have

 15   an understanding of how to best respond to those.

 16               THE COURT:  All right.  I would again expect

 17   to grant that order.  It certainly makes sense and is a

 18   logical continuation of my prior order.

 19               All right.  Item 11, order on motions to

02:33PM  20   dismiss, amend and summary judgment.  Ms. Parker.

 21               MS. PARKER:  Yes, your Honor.  I believe

 22   there is one motion to dismiss pending in civil action

 23   number that your Honor did not address previously.  The

 24   Court had denied without leave, I'm sorry, without

 25   prejudice certain motions to dismiss that were pending

1    in individual dockets.

2              THE COURT:  Yes.

3              MS. PARKER:  I believe that we found one

4    that your Honor may have missed, the McDowell case, and

5    wanted to bring that to your attention.

6              THE COURT:  All right.  I think what had

7    happened, I'm reading from my order here, which what I

8    said was that there had been a motion to dismiss the

9    complaint in McDowell but the motion had been filed on

02:33PM  10    the docket for Erkan and that McDowell had not filed an

11    amended complaint, directed Alanus to refile the motion

12    to dismiss on the docket for McDowell, and the Erkan

13    motion should remain or the motion should remain pending

14    and to be filed on the right docket, so I haven't

15    followed up on that.  Has that happened?

16              MS. PARKER:  I don't know the answer to

17    that, your Honor, I apologize.

18              THE COURT:  All right.  I will take a look

19    at that.  Of course, when I drafted this order, it had

02:34PM  20    slipped my mind that Alanus was an affiliated

21    defendant, which I suppose is another issue.  My clerk

22    passed me a note saying nothing has been filed in

23    McDowell.  Again, if this is Alanus, is this issue

24    going to be mooted by the settlement?  I'd like to clear

25    my docket.

1            MR. RABINOVITZ:  Your Honor, this is

2    Dan Rabinovitz, your Honor.  I was asked to inform the

3    Court that the attorney who represents Alaunus,

4    Franklin Levy, had to go out of the country on business

5    that couldn't be rescheduled, is not present.

6            THE COURT:  Okay.

7            MR. RABINOVITZ:  He intends to abide by your

8    order and refile but hasn't done so yet.

9            THE COURT:  All right.  I'm just going to

02:35PM  10   put that on hold for the time being.  All right.  11B is

11   the trustee's renewed and supplemental motion to

12   transfer.  This has been opposed by the Gentry, Locke

13   plaintiffs, and the PSC has asked to have until

14   January 17th to respond, which I think is fair.  I'll

15   grant that, which is motion Number 760 on the docket,

16   and I think this is a matter that I should take up at

17   the February 6th conference and hear argument on it as

18   well.

19            Is there someone present for the Gentry,

02:36PM  20   Locke firm?

21            MR. GIBSON:  Yes, your Honor, this is

22   Dave Gibson from Roanke.

23            THE COURT:  I do want to hear argument.  I

24   won't necessarily require you to come up from Virginia

25   for it.  It's up to you, but I do want to hear the issue

1   on February 6th.

2           MR. GIBSON:  I think that we'll be available

3   to be in Boston on that day.

4           THE COURT:  All right.  Is there anything

5   else on that?  I think the creditors' committee also

6   wanted to file until January 17th.  I'm sorry, what was

7   the motion, Mr. Molton?

8           MR. MOLTON:  Your Honor, I think we filed

9   our joinder on Monday, the 6th, so we're not part of

02:36PM  10  that motion to extend time.

11          THE COURT:  Okay.  All right.  Anything else

12  on that issue?

13          (No response)

14          THE COURT:  All right.  Item 12, status of

15  bankruptcy proceedings.

16          MR. GOTTFRIED:  Yes, your Honor.  Here's a

17  brief report on the status of the bankruptcy.  Again, I

18  think you are aware January 15th is the bar date.  The

19  trustee has been busy dealing with proof of claims that

02:37PM  20  have been filed and inquiries from various creditors

21  regarding that process, and, you know, like I said, that

22  bar date is January 15th, is coming very shortly.

23          Other than dealing with bar date issues and

24  obviously the settlement, the trustee continues to

25  collect accounts receivable, continues to process the

```
 1    product recall, is involved in attempting to resolve
 2    some tax and regulatory issues and generally continues
 3    to administer the estate, but the big items obviously
 4    are the settlement, hopefully the motion to confirm and
 5    accept the settlement and the proof of claim deadline.
 6            THE COURT:  What percentage of the fund is
 7    going to come from accounts receivable at this point,
 8    Mr. Gottfried?
 9            MR. GOTTFRIED:  Probably de minimis,
10    hopefully the fund gets larger.
11            THE COURT:  Status of appeals?
12            MR. MOLTON:  Your Honor, I'm going to take
13    that information with the transfer motion.  David Molton
14    for the creditors' committee.  But before I do so, I
15    want to come back to the pending supplemental motion.  I
16    do know that there were material papers filed last
17    night, and it may be that your Honor's question to me
18    regarding our initial response peaked this.  It may be
19    that the committee and the trustee will want to file
20    reply papers to that, and so I know that that wasn't
21    discussed, and we would, I would ask and with
22    Mr. Gottfried here with me to be able to do so.
23            THE COURT:  Yes, that's fine.  Why don't I,
24    in order to make sure I have a chance to read them, why
25    don't I direct that any reply papers, let's see, well,
```

02:38PM (line 10)
02:38PM (line 20)

1    the Roanke Gentry, Locke plaintiffs have already filed

2    their response.  That was on the 9th.  Why don't I give

3    you until January 21st, which is the day after Martin

4    Luther King Day to file any reply memorandum.

5            MR. GOTTFRIED:  Yes.  The PSC is filing it

6    the 21st.

7            THE COURT:  Oh, that's right.  I'll give you

8    until the 27th.

9            MR. GOTTFRIED:  Thank you.

02:39PM  10            MR. MOLTON:  Judge, with respect to the

11   appeal to the First Circuit from your Honor's transfer

12   decision and order of this summer, no briefing schedule,

13   as I understand it, has yet been set by the

14   First Circuit.

15            The First Circuit though did come down with

16   an order on December 10th, 2013, in which it granted the

17   creditors' committee intervention rights on that appeal,

18   and in so doing actually asked all the parties in

19   connection with the appeal to address four questions

02:40PM  20   dealing with its appellate jurisdiction, and without

21   going through these questions basically, the

22   First Circuit was interested whether it has appellate

23   jurisdiction to hear an appeal from your Honor's

24   transfer order under the final order rule or its

25   exceptions or pursuant to Section 1334 and its

```
 1    provision, so the First Circuit wants the parties to

 2    deal with their appellate jurisdiction and considers

 3    that which we think to be an important item.

 4              THE COURT:  All right.  Anything else on 12

 5    or 13?

 6              (No response)

 7              THE COURT:  All right.  14, PSC to file

 8    common benefit motion.

 9              MR. SOBOL:  I'll handle that, your Honor.

10    This is my least favorite topic whenever I have to deal

11    with any issues in my practice.  As you recall, your

12    Honor, you entered an order last year, I think in April,

13    regarding the need for lawyers to be keeping time,

14    submitting their time, and then what the second step of

15    that process that we need to do is to have an order

16    entered that would segregate some amount of percentage,

17    if you will, of funds.  It doesn't mean that anybody is

18    entitled to anything, it doesn't mean anybody has earned

19    anything.  It simply segregates a certain amount of

20    money available for later on down the road to be dealt

21    with.

22              The PSC will file a motion next week so it's

23    ripe to be heard at the next status conference.  I think

24    it's important to point out that there have been quite a

25    few, as you can see around you, there are quite a few
```

1    professionals that are involved in this matter, and it

2    remains a very significant challenge trying to make sure

3    that the limited funds become available here are not

4    unduly encroached upon by the professional fees that

5    will be taxed here, and I say that because the purpose

6    from my perspective personally, the purpose of filing

7    the common benefit order now is less trying to figure

8    out a way to get a big chunk of any portion but rather

9    making very clear that people's expectations should be

02:42PM  10    quite modest, thank you very much, quite modest.

11                    I'd also say that --

12                    THE COURT:  I assume you mean the lawyers --

13                    MR. SOBOL:  The lawyers.

14                    THE COURT:  -- not the plaintiffs.

15                    MR. SOBOL:  Not the victims, the victims, we

16    should be maximizing the amount we possibly can for the

17    victims.  Put this in your mind, your Honor, for

18    instance, if there's a settlement that's proposed out

19    there that's $400 million, all right, the question will

02:42PM  20    be how much goes for -- and I'm not saying that any of

21    these services weren't provided, they weren't provided

22    very well, but the challenge that you and Judge Boroff

23    will have in terms of supervising it is that you've got

24    understandable fees, requests coming from the trustee,

25    trustee's counsel, trustee's financial advisors, from

1    the lawyers for the creditors' committee, from members

2    of the PSC, from other lawyers who have been providing

3    common benefit services, and there's also out there the

4    issue as to how much of the recovery that individuals

5    receive has to go to their individual lawyers, too, and

6    we are in a situation where the net-net that goes to

7    people is not anywhere near what it is that it looks

8    like at the beginning.

9             So I'm filing for a common benefit order

02:43PM  10   next week, a motion next week.  It's in the vain that

11   I've indicated to you, however, and I would also

12   indicate to your Honor that while there's been quite a

13   lot of excellent volunteerism by a lot of lawyers in

14   this case, particularly on the plaintiffs' side, that is

15   vital for those people to provide me with their time

16   sheets and expense records and their documentation that

17   the work was requested and is being provided in

18   accordance with your prior order.

19             I also recognize, your Honor, that I can't

02:44PM  20   get on my high horse on this by indicating that I and my

21   firm have to make sure that we, more than any other

22   party, ask for compensation that is the most modest

23   because we can't be making these kind of demands on

24   others.

25             THE COURT:  All right.  Modest expectations

```
 1    will be the watch word going forward.

 2                MR. SOBOL:  Very good.

 3                THE COURT:  All right.  Anything else on

 4    that topic?

 5                (No response)

 6                THE COURT:  Number 15, status of insurers

 7    declaratory judgment actions?

 8                MR. SOBOL:  So just really flagging two

 9    cases, your Honor, I don't know an awful lot of the

10    details of exactly where they are at, but there are two

11    declaratory judgment actions that have been filed for

12    two excess insurers for Ameridose, Lloyds and Ironshore.

13                The PSC intends to move to intervene in

14    those actions because, at least one way to look at it,

15    again, I'm not arguing it, but one way to look at it is

16    Ameridose is settling of what real dogs does it have in

17    that hunt, so that's just out there and is going on.

18                MS. PARKER:  And --

19                THE COURT:  Excuse me, the Oklahoma case?

20                MS. PARKER:  Yes, there is another

21    declaratory judgment action involving ARL, who, as you

22    know, is in mediation, your Honor.  That's pending in an

23    Oklahoma District Court, I'm sorry, in an Oklahoma State

24    Court, and the PSC has moved to intervene.  It has been,

25    I believe, let me cautiously say we have moved to
```

02:45PM (line 10)
02:45PM (line 20)

1     intervene in that action as well.

2                THE COURT:  All right.  Anything else on

3     that topic?  All right.  Is there anything else anyone

4     wants to raise, and while we're doing that, let me look

5     over my notes.

6                MS. PARKER:  Very small housekeeping

7     matters, your Honor.

8                THE COURT:  Yes, Ms. Parker.

9                MS. PARKER:  First, and your Honor today

02:46PM  10   reset the deadline to file responses or motions to

11    dismiss until January 31st.  There are some motions to

12    dismiss that were filed today, earlier today before this

13    hearing.  We would ask that the deadlines for plaintiffs

14    to respond to those motions to dismiss that were already

15    filed today be stayed and perhaps synced up with the

16    schedule that is later imposed by the Court for

17    responding to motions to dismiss that come in on

18    January 31st.

19                MR. CLINE:  Your Honor, this is Matt Cline

02:46PM  20   on behalf of the defendants who filed those motions, and

21    we're going to oppose the PSC's request here.  We don't

22    see any reason they can't respond.

23                THE COURT:  I'm sorry, who do you represent?

24                MR. CLINE:  The Tennessee defendants who

25    filed the motions to dismiss today.

```
 1                    THE COURT:  All right.
 2                    MS. PARKER:  Without really trying to argue
 3       the issue, your Honor, the reason that we would make
 4       that request is that we expect that motions to dismiss
 5       that are later filed will raise duplicative and similar
 6       issues perhaps specifically relating to Tennessee law,
 7       and the PSC would hope to address those at one shot
 8       rather than do it piecemeal.
 9                    THE COURT:  In other words, we have a
10       January 31st deadline for filing motion to dismiss,
11       correct?
12                    MS. PARKER:  Correct, your Honor.
13                    THE COURT:  You expect that there are going
14       to be Tennessee defendants who are going to file on the
15       31st.  In the meantime, Mr. Cline, is it, has filed
16       motions today, January 10th.  In the normal course, the
17       oppositions would be due January 24th.
18                    Yes, what I will do with those motions is
19       extend the deadline for the PSC to respond.  Right now
20       what I'm going to do is indicate that that response is
21       due February the 13th, which is the normal two weeks
22       after the filing of the motion.  I may extend that for
23       good cause shown, but just, again, to sync them up, I'm
24       going to say February 13th.  In the meantime, we'll meet
25       on February 6th, we'll know what these motions look
```

1    like, and we can talk about it.

2            MS. PARKER:  Thank you, your Honor.

3            THE COURT:  Okay.

4            MS. PARKER:  The second quick housekeeping

5    matter, there is a period of tolling that was provided

6    by an order entered by this Court, which was ECF

7    Number 723.

8            THE COURT:  Yes.

9            MS. PARKER:  We would just like

02:48PM   10    clarification that the provisions of that order would

11    not be affected by any of the extensions offered today,

12    imposed today, rather, and that plaintiffs would still

13    have 30 days from receiving notice of any service defect

14    to cure those defects.

15            THE COURT:  I didn't understand that

16    anything I did today would affect that order.  You're

17    talking about my order concerning possible defect and

18    service of process or failure to provide pre-suit

19    notice, if that's required, in the state law?

02:49PM   20            MS. PARKER:  That's correct, your Honor.

21            THE COURT:  Unless someone wants to persuade

22    me differently, I don't see any reason to modify those

23    deadlines.  All right.  The order remains in place.

24    That's the order in Docket 723.

25            MS. DOUGHERTY:  Your Honor, if I may.

1          THE COURT:  Yes.

2          MS. DOUGHERTY:  The order, as we read it, I

3    think it's a matter for clarification, tolls the

4    deadline until today for the statute of limitations.

5          THE COURT:  Yes.

6          MS. DOUGHERTY:  And it doesn't provide any

7    time now for the plaintiffs to cure it now that they've

8    been notified of a potential defect, so what we're also

9    asking for here is not just additional time if we find

02:49PM  10   out that there's some notice on the 31st when we receive

11   new motions to dismiss from other parties but also for

12   30 days to actually cure that defect for the tolling to

13   not just extend to the date that we get notice of it but

14   to allow us 30 days to cure it.

15          So extending the deadline for the tolling

16   for an additional 30 days to allow us to cure the

17   problem, problems which we would have found out about a

18   lot sooner.

19          THE COURT:  Maybe that's a good idea, maybe

02:50PM  20   that's not.  I'm not sure I'm prepared to do that on the

21   fly because that's one of the concerns that I have if

22   there's a one-year period, for example, and it's already

23   passed, service of process is perhaps different from

24   these one-year notifications.  For good cause shown, I

25   can enter orders and determine service of process.

1          I guess I don't know enough about the

2    relevant state law to know whether I have the power to

3    do that, whether it's appropriate under the

4    circumstances or for that matter whether I need to do

5    that.  I don't know if anyone is in this boat or not.

6    I'm going to leave that up to motion practice, in other

7    words, if there's an issue, we can file a motion, take

8    it up and let the other side respond.  I'm just not

9    prepared to do it on the fly.

02:51PM  10          MR. GASTEL:  To be clear, I don't think that

11   we're asking for like in addition to the order, it's

12   more a clarification that the tolling period began I

13   believe pursuant to the order on the date of the order,

14   which is December 23d and would extend to January 10th,

15   2014, and so we would just sort of expect the lead

16   tolling period to sort of remain in effect and then the

17   period to cure would sort of continue to accumulate as

18   days passed from December 23d to present.

19          THE COURT:  All right.  Again, what I'm

02:51PM  20   going to do is I'm going to leave the order in place,

21   and if there's a particular issue or problem, I'll take

22   it up on motion.

23          MR. GASTEL:  Thank you, your Honor.

24          THE COURT:  Yes, sir.

25          MR. BLUMBERG:  Judge.

1                    THE COURT:  I'm sorry, can you identify

2       yourself for the record?

3                    MR. BLUMBERG:  Jay Blumberg.  I have people

4       feverishly working to get a motion to dismiss filed by

5       today.  Did I understand that the deadline was extended

6       to the 31st for motions to dismiss?  I may have missed

7       that.  I just want a clarification.  Is that right?

8                    THE COURT:  That's right.

9                    MR. BLUMBERG:  They'll be happy to hear

02:52PM   10       that, Judge.  Thanks.

11                    THE COURT:  All right.  Somewhere in South

12       Jersey is an associate who I have just made his or her

13       day.

14                    MR. BLUMBERG:  But they had nothing to do

15       with the lane closures on the George Washington Bridge.

16                    [Laughter]

17                    THE COURT:  You come from a tough state.

18                    MS. PARKER:  One final housekeeping matter,

19       your Honor.  The plaintiffs' steering committee

02:52PM   20       discovered what it believes is an omission of a word and

21       perhaps a typographical error in the existing protective

22       order.

23                    THE COURT:  Which protective order is that?

24                    MS. PARKER:  The governing protective order

25       involving confidentiality pertaining to broadly this

1  litigation.

2           THE COURT:  Yes.

3           MS. PARKER:  As your Honor mentioned, you

4  may be making some changes to that order.  We would

5  propose that we identify that to the Court in a pleading

6  filed early next week should your Honor choose to

7  address that.

8           THE COURT:  I'll hold off on that, so why

9  don't you get that filed forthwith.

02:53PM  10           MS. PARKER:  Yes, thank you, your Honor.

11           THE COURT:  Yes.  Anything anyone else wants

12  to take up?

13           MR. LYONS:  Judge Saylor.

14           THE COURT:  Yes.

15           MR. LYONS:  This is Greg Lyons from Roanoke,

16  Virginia.  I apologize for speaking when I had not

17  previously asked permission to do so.  I've been

18  listening.  My firm, Lichtenstein, Fishwick, and there

19  are some other firms in town represent Virginia injured

02:54PM  20  parties and actually argued by phone on the trustee's

21  motion in its earlier iteration, and what I hoped to

22  clarify was that the extension, of course, is granted in

23  relation to agenda 11B extends, applies not just to the

24  PSC but to other Virginia plaintiffs, like my clients,

25  to respond to the trustee's motion.

```
 1              THE COURT:  I guess I don't see any reason
 2   why that shouldn't be true, so I will grant it.
 3              MR. LYONS:  Thank you very much, Judge.
 4              THE COURT:  Anything else?
 5              MR. SOBOL:  No, your Honor.
 6              THE COURT:  Thank you, all.  Have a good
 7   weekend.  I'm sure all you join me, especially the
 8   people from Indiana, in saying Go Patriots.  We'll see
 9   you on February 6th.
10              (Whereupon, the hearing was adjourned at
11   2:54 p.m.)
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                    C E R T I F I C A T E

 2

 3   UNITED STATES DISTRICT COURT )

 4   DISTRICT OF MASSACHUSETTS ) ss.

 5   CITY OF BOSTON )

 6

 7           I do hereby certify that the foregoing

 8   transcript, Pages 1 through 70 inclusive, was recorded

 9   by me stenographically at the time and place aforesaid

10   in MDL NO. 13-02419-FDS, IN RE:   NEW ENGLAND COMPOUNDING

11   PHARMACY CASES LITIGATION and thereafter by me reduced

12   to typewriting and is a true and accurate record of the

13   proceedings.

14           Dated this January 22, 2014.

15                       s/s Valerie A. O'Hara

16                  _____

17                  VALERIE A. O'HARA

18                  OFFICIAL COURT REPORTER

19

20

21

22

23

24

25
```