**EXHIBIT 2**

## Beth McCullough

| | |
|---|---|
| **From:** | Kristen Johnson Parker <kristenjp@hbsslaw.com> |
| **Sent:** | Wednesday, November 27, 2013 2:37 PM |
| **To:** | Louis R. Moffa; Stephen A. Grossman; Eric Hoffman; Brett J. Bean; Brian Gerling; Christopher Hassell; Chris J. Tardio ; C. J. Gideon , Jr.; Cynthia Palin; Christopher M. Wolk; David Thomas; Jay J. Blumberg; Joseph R. Lang; John M. Lovely; John-Mark Zini; Jack Reinholtz; Kristin Mykulak; Kristen R. Ragosta ; Kenneth B. Walton ; Marcy Greer; Matthew H. Cline; Michael Hayes; C. Mark Hoover; Michael Gardner; Michael Pikiel; Louis Moffa; Michael Sams; Mary-Rose Watson; Nancy Reynolds; Nicole Dorman; Roberto Braceras; Steven Drake; Randy J. Hackney; Rhond L. Beesing; Paul Saltzman; Sean E. Capplis; Daniel Ari Shapiro; Tory Weigand; Yvonne Puig |
| **Cc:** | Thomas Sobol; Kimberly A. Dougherty; Mike Barker; Patrick T. Fennell; Gerard Stranch; Ben Gastel; Marc Lipton; Chalos, Mark P. (mchalos@lchb.com); mark@markzamora.com; Jennifer Frushour Bean |
| **Subject:** | NECC:  Letter from the Plaintiffs' Steering Committee |
| **Attachments:** | 11-27-13 FINAL TMS to Defs re discovery and PSC proposals.pdf; 13-11-26 Joint Deposition Protocol - Proposed Order (00306797).DOC; 13-11-26 PSC-OCC HIPAA Compliant Medical Authorization (00306802).DOCX; 13-11-24 Proposed CMO Order No 8 Governing Pleadings and Discovery (00306317-4).DOCX; 13-11-21 Proposed ESI Protocol (00306376).DOCX; Profile Form and PITWD Addendum (Approved).pdf |

Attached is a letter from the Plaintiffs' Steering Committee (i) providing information about how to access to the U.S. Legal document repository and (ii) requesting input on the PSC's recently filed proposed case management order, protocols, and other documents.

Also attached are the following documents, referenced in the letter:
- The PSC's proposed CMO (filed Monday),
- The PSC's proposed Plaintiff Profile Form (same as the bankruptcy PITWD addendum),
- A HIPAA compliant medical release the PSC proposes to use with the Plaintiff Profile Form,
- A proposed deposition protocol, and
- A proposed ESI protocol.

We propose meeting and conferring on Wednesday, December 3, 2013 at 2:00 Eastern.  A dial in will be circulated by email after the holiday.

Happy Thanksgiving, all.

T 617.482.3700   F 617.482.3003



Thomas M. Sobol
**HAGENS BERMAN SOBOL SHAPIRO LLP**
55 CAMBRIDGE PARKWAY, SUITE 301
CAMBRIDGE, MA  02142
www.hbsslaw.com
**Direct (617) 482-3700**
tom@hbsslaw.com

November 27, 2013

**VIA EMAIL**

Re:   *In Re: New England Compounding Pharmacy, Inc. Products Liability Litigation*
MDL 2419; C.A. No.: 13-md-2419-FDS

Dear Defense Counsel:

I write on behalf of the Plaintiffs' Steering Committee ("PSC") to all defendants named in at least one case currently pending in the *In re New England Compounding Center, Inc., Products Liability Litigation*, 13-md-2419-FDS to address three discovery-related matters.

First, I respond to questions from some defendants about how to gain access to discovery materials produced to date in the MDL. The PSC has addressed access to discovery materials piecemeal as inquiries have arisen. We now write to ensure that all defendants have information on accessing the repository.

Second, I write to share the PSC's proposals for a deposition protocol, an ESI protocol, and a HIPAA-complaint medical release to be used by all plaintiffs in this litigation. The PSC began negotiating the deposition protocol and the medical release with the NECC-Affiliated Defendants many months ago. The ESI protocol is new and has not been previously presented to the NECC-Affiliated Defendants.   We circulate all of these drafts for your comments.

Finally, I enclose copies of the proposed case management orders the PSC submitted to the Court in conjunction with St. Thomas's motion for reconsideration of the existing case management order. The PSC undertook negotiations with St. Thomas directly, per the Court's instruction. But the PSC wishes to hear from all defendants who have comments on how best to move this case forward in an efficient and fair manner. Our hope is that further comments on the PSC's proposals can be presented to Judge Saylor before the next status conference.

**Access to Document Repositories**

MDL Order #6 provided that any formal discovery produced by any plaintiff, defendant, or non-parties in any of the MDL cases or any other civil actions involving allegations of injury from use of an NECC product, must also be produced to Lead Counsel no later than seven days after production elsewhere. Documents must be sent to lead counsel's attention in the format produced elsewhere (whether electronic or hard copy). The Order required the PSC to create and maintain an online document repository accessible (at minimum) by the Creditors' Committee, the trustee, and plaintiffs' counsel of record in any action alleging injury related to a plaintiff's use of a product sold by NECC.

November 27, 2013
Page 2


MDL Order #6 also required that any plaintiffs' or defendants' counsel who seeks access to the repository (i) must comply with any confidentiality order and/or protective order entered in this case and (ii) may be -- at the Plaintiffs' Steering Committee's discretion -- subject to a reasonable assessment or cost-sharing arrangement as a condition precedent to use of the repository.[1]

The PSC subsequently created two document repositories to hold materials produced formally or informally.  On July 2, 2013, the PSC identified their vendors in a pleading filed in the MDL docket.[2]  The PSC asked that discovery produced that contained protected health information be produced to Rust/Omni and that all other discovery materials be produced to U.S. Legal.

The PSC has made all formal discovery produced by plaintiffs, defendants, or non-parties available through the Rust and U.S. Legal repositories.  The PSC has provided instructions for how to access these repositories to defense counsel when asked.

*Rust Repository*

The Rust repository contains protected health information.  Specifically, it contains: (i) information produced to Lead Counsel by clinics in response to Judge Boroff's order in the bankruptcy court requiring clinics to identify patients who were injected with contaminated MPA and (ii) information produced informally by NECC that included patient information or other protected health information.  Under the terms of Judge Boroff's order and the PSC's agreement with NECC, the PSC is not permitted to share any of this information with defendants at this time.

*U.S. Legal Repository*

The U.S. Legal repository contains all other discovery produced in the MDL proceedings to Lead Counsel or the PSC to date.   Specifically, it contains:  (i) information produced by clinics, clinic-related entities, and other defendants who have not elected to participate in mediation pursuant to the PSC's subpoenas or other discovery requests (ii) informal productions by NECC that do not include patient information or other protected health information.

---

[1] The Order requires the PSC to agree with the Creditors' Committee as to any assessment.  The PSC understands that the Creditors' Committee has not yet formulated a position on the proposed assessment.

[2] Dkt. No. 224.

November 27, 2013
Page 3

Under the terms of the PSC's agreement with NECC, the PSC is not permitted to share documents in category (ii) with defendants at this time. Defendants may access the documents in category (i).

The PSC has born, and will continue to bear, the continued costs of populating, hosting, and maintaining the repository. As contemplated by MDL Order #6, each unaffiliated defendant – *not* each law firm – who wishes to access the repository will be assessed a one-time fee of $3,000.00 for access to the repository. This fee is based on both charges associated with setting up and maintaining the repository to date, as well as an estimate of the costs expected to be incurred going forward. Should the costs associated with maintaining the repository for the duration of the litigation be less than the PSC anticipates, the PSC will equitably refund a portion of the user fee. Likewise, should these costs wildly exceed the PSC's best estimates, the PSC reserves the right to ask the Court to impose additional assessments on users.

U.S. Legal offers a number of options for accessing the documents. The simplest, and least expensive, option allows you to view and download documents (only). U.S. Legal can also create platforms that accommodate document review and/or attorney work product directly in the repository. Any expenses incurred in adding functionality beyond the "view and download" option will be born by the defendants requesting the same (on top of the one-time fee).

To access the documents in category (i), please send a check made out to the "NECC Litigation Fund" to Lead Counsel's firm at the following address:

Hagens Berman Sobol Shapiro LLP
Attn: Stefanie Knowlton, Accounting
1918 Eighth Ave, Suite 3300
Seattle, WA 98101[3]

Then contact Kathleen Dwyer (T: (917) 512-7507, kdwyer@uslegalsupport.com) at U.S. Legal directly to arrange for access. The PSC will provide U.S. Legal with a list of defendants who have paid the user fee and may therefore access the depository.

**Proposed Deposition Protocol, Case Management Order, and Protocols**

Two days ago, the PSC filed a proposed case management order related to discovery, pleadings, and bellwether issues. In its filings, the PSC invited defendants to comment on the proposed CMO and the protocols and other documents attached to this letter.

---

[3] Or, contact Mike Barker, mikeb@hbsslaw.com, for wiring instructions.

November 27, 2013
Page 4


Attached to this letter are:

1) A Word version of the proposed CMO filed Monday by the PSC;

2) The PSC's proposed Plaintiff Profile Form (the same form used as the PITWD addendum to the proof of claim form required in the bankruptcy)

3) A HIPAA compliant medical release the PSC proposes to use with the Plaintiff Profile Form;

3) A proposed deposition protocol; and

4) A proposed ESI protocol.


Comments and suggestions on each of these documents are welcome. The PSC hopes that Judge Saylor will rule on the entry of the CMO by, at the latest, the December 13, 2013 status conference. The remaining protocols we hope to have negotiated with all defendants by the dates indicated in the proposed CMO.

To this end, we propose an open call between the PSC and all defendants on **Wednesday, December 3, 2013** at **2:00 Eastern**. We will circulate a dial in by email after the holiday.

Thanks very much. And happy Thanksgiving.

Sincerely,

/s/ **Thomas M. Sobol**
Thomas M. Sobol
HAGENS BERMAN SOBOL SHAPIRO LLP

*Lead Counsel,*
*On Behalf of the Plaintiffs' Steering Committee*


Cc:   Plaintiffs' Steering Committee
      Chapter 11 Trustee
      Affiliated Defendants

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE:  NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | ) ) ) ) | |
| This matter relates to: | ) ) | MDL No. 1:13-md-2419-FDS |
| All Actions | ) ) ) | |

MDL ORDER NO. ____
(Joint Deposition Protocol)

## I.      SCOPE OF DEPOSITION PLAN

This Deposition Plan shall govern all individual personal injury cases that are presently pending or hereafter filed in this Court or subsequently transferred to this Court by the Judicial Panel on Multidistrict Litigation for coordination of pretrial proceedings relating to this matter, and applies to the class action cases. This Order is limited in scope to the discovery issues addressed herein.  Additional discovery issues will be addressed in subsequent orders.

## II.     GENERAL PROVISIONS

### A.      Lead Deposition Counsel

Plaintiff depositions, third party depositions and matters related to same shall be coordinated by Lead Deposition Counsel for plaintiffs and Lead Deposition Counsel for defendants, or their designees. The name and contact information for any designee shall be promptly communicated to the other parties.

**B.**     **Deposition Notices**

1.     *Notice of Deposition Procedures.*  A copy of this Order shall be attached to each notice of deposition and/or any non-party subpoena to testify at a deposition, issued or served in these MDL proceedings.

2.     *Contents of Notice.* Information shall be provided as required by Fed. R. Civ. P. 30.  Each deposition notice shall include the name of each deponent and the date, time and place of the deposition.  If the notice asks the deponent to produce documents or information, or if the witness may be asked about documents that may contain confidential information, the witness shall be provided with a copy of the Protective Order.

**C.**     **Cooperation**

Counsel are expected to cooperate with and be courteous to each other and deponents in both scheduling and conducting depositions.

**D.**     **Attendance**

1.     *Who May Be Present.*  Unless otherwise ordered under Fed. R. Civ. P. 26 (c), depositions may be attended by counsel of record, members and employees of their firms, members of the Plaintiffs' Steering Committee, attorneys specially engaged by a party for purposes of the deposition, the parties or the representative of a party, court reporters, videographers, the deponent, and counsel for the deponent. While the deponent is being examined about any material designated Confidential, persons to whom disclosure is not authorized under the Stipulated Protective Order shall be excluded from the deposition. Any portion of the deposition

transcript containing documents or information subject to the Protective Order entered in this case shall be sealed in accordance with the terms of the Protective Order.

### E.   Fed. R. Civ. P. 30(b)(6) Deposition

A party or non-party asked to provide a designee pursuant to a Fed. R. Civ. P. 30(b)(6) deposition notice shall provide notice of the names of the individuals to be produced for deposition at least 10 days prior to commencement of the deposition, setting forth the matters upon which each person will testify.

## III.   CONDUCT OF DEPOSITIONS

### A.   Examination

Except in depositions that have been cross-noticed in actions pending in state court and without reference to the participation of coordinating counsel from the state court litigations, questioning should ordinarily be conducted by no more than two attorneys for all MDL plaintiffs. Lead Deposition Counsel for plaintiffs may designate at least two attorneys representing personal injury plaintiffs to participate in the questioning during each deposition. MDL counsel for Plaintiffs may designate others for specific subject areas. Counsel for plaintiffs should endeavor to avoid asking the same or substantially the same questions.

Lead Deposition Counsel for defendants may designate at least two attorneys representing defendants to participate in defending a deposition. Counsel for defendants should endeavor to avoid asking the same or substantially same questions and lodging the same or substantially the same objections.

### B.   Documents Used in Connection with Deposition.

1.    *Marking of Deposition Exhibits.* All documents previously produced in the course of this litigation and used as exhibits with witnesses from a particular defendant or non-party witness shall be referred to by the Bates stamp numbers appearing on the documents submitted to the document repositories.  Documents that have not been previously produced in the course of this litigation shall be assigned a Bates stamp number from a range of numbers reserved for this purpose. The first time such a document is introduced as an exhibit at a deposition, it shall be marked with the assigned Bates stamp number and shall be produced at the conclusion of the deposition. Any documents marked as Exhibits during depositions shall be marked consecutively, (i.e. "Plaintiff Exhibit 1").

## C.    Duration

Duration of depositions shall be governed by the Federal Rules of Civil Procedure.

## D.    Scheduling

Counsel should consult in advance with opposing counsel and counsel for proposed deponents in an effort to schedule depositions at mutually convenient times and locations.

## E.    Location for Depositions

1.    The location of the depositions shall be as uniform as feasible within each city, so that videotape equipment, if being used, can be left in place.

2.    Defense counsel will make reasonable efforts to obtain the agreement of former employees of defendants to appear at designated locations. Absent such agreement, depositions will take place either within the federal district in which the

former employee resides or at a location mutually agreeable to the former employee and the parties.

**F.**     **Coordination with State Court Actions, Cross Noticing and Avoidance of Duplicative Depositions**

1.     *Coordination with State Court Actions.*     In order to avoid duplicative discovery, minimize the number of times that a witness shall appear for a deposition, and to prevent the unnecessary expenditure of judicial resources and the resources of parties, counsel for plaintiffs in the MDL shall use their best efforts to coordinate the scheduling of depositions with counsel for state court plaintiffs.   As the Court indicated at the initial case management conference, this Court intends to work actively to reach out to any State Court that is interested in coordinating discovery activities. The Court expects that counsel for parties in the MDL proceeding will help ensure that such coordination is achieved where it is practicable.

2.     *Cross Noticing.*

a.     <u>Plaintiff Position</u>:   Any deposition in this MDL may be cross-noticed by any party in any _____--related action pending in state court, and any deposition in any _____--related action pending in state court may be cross-noticed by any party in this MDL.   Each deposition notice shall include the information described in section I.B.2., supra. If a state court deposition has been cross-noticed in this MDL, then state court plaintiffs represented by counsel with actions filed in this MDL may not take a subsequent deposition of that witness except for good cause shown as determined by the judge presiding over the proceeding in which the deposition is sought.   In that case, any subsequent deposition shall be restricted to such additional inquiry permitted by the judge presiding over the proceeding in which the deposition is sought.

b.     <u>Defense Position</u>:  Any deposition in this MDL may be cross-noticed by any party in any _____ related action pending in state court, and any deposition in any _____-related action pending in state court may be cross-noticed by any party in this MDL.  Each deposition notice shall include the information described in section I.B.2., supra. If a state court deposition has been cross-noticed in this MDL, then state court defendants represented by counsel with actions filed in this MDL may not take a subsequent deposition of that witness except for good cause shown as determined by the Magistrate Judge, in that case, any subsequent deposition shall be restricted to such additional inquiry permitted by the Magistrate Judge.

3.     Nothing in F.1-2 shall be construed as an injunctive or equitable order affecting state court proceedings.  Rather this provision is intended to reflect this Court's desire for voluntary state-federal coordination.

4.     Unless it is jointly noticed by plaintiffs in both the class action and personal injury matters, the noticing of a deposition by plaintiffs' counsel for personal injury matters shall not count against the limitation on numbers of deposition prescribed under the Federal Rules of Civil Procedure for plaintiffs in any consolidated class action, and vice versa.

**G.     Early Depositions**

If the parties become aware of persons who possess relevant information but, who, by reason of age, ill health, or termination of employment with defendants may become unavailable for deposition, the deposition may be taken as soon as possible, as permitted by the Federal Rules of Civil Procedure.

H.    **Telephonic Depositions and Participation**

The parties shall comply with Fed. R. Civ. P. 30(b)(4) regarding remote depositions. Non-examining counsel may attend depositions telephonically but are not permitted to participate absent extenuating circumstances, such as weather delay or physical restriction on travel.

I.    **Disputes During Depositions**

Disputes arising during depositions that cannot be resolved by agreement and that, if not immediately resolved, will significantly disrupt the discovery schedule or require rescheduling of the deposition, or might result in the need to conduct a supplemental deposition, shall be presented to the Court. If the Court is not available, or to the extent the parties are still unable to resolve the dispute, the deposition shall continue with full reservation of rights for a ruling at the earliest possible time.

If the nature of the dispute would not stop the deposition from going forward, the parties may elect to either present the matter to the Court by telephone, or to present the dispute to the Court in writing.

In the event the Court is unavailable by telephone to resolve disputes arising during the course of the deposition, the deposition shall nevertheless continue to be taken as to matters not in dispute. Nothing in this Order shall deny counsel the right to 1) suspend a deposition pursuant to Fed. R. Civ. P. 30(d)(3); 2) file an appropriate motion with the Court after the deposition, and appear personally before the Court, or 3) file a motion to prevent any decision or recommendation of the Court from taking effect as may be otherwise permitted.

### J.       Video Depositions

By so indicating in its notice of a deposition, a party may, at its expense, record a deposition by videotape or digitally-recorded video pursuant to Fed. R. Civ. P. 30(b)(3) subject to the following rules:

1.       *Video Operator.*  The operator(s) of the video recording equipment shall be subject to the provisions of Fed. R. Civ. P. 28(c).  At the commencement of the deposition, the operator(s) shall swear or affirm to record the proceedings fairly and accurately.

2.       *Attendance.*  Each witness, attorney and other person attending the deposition shall be identified on the record at the commencement of the deposition.

3.       *Interruptions.*  No attorney or party shall direct instructions to the video operator as to the method of operating the equipment.  The video camera operation will be suspended during the deposition only upon agreement of counsel.

### K.       Correcting and Signing Deposition Transcripts

Unless waived by the deponent, the transcript of a deposition shall be submitted to the deponent for correction and signature within thirty (30) days after the end of the deposition.  The deposition may be signed by the deponent before any notary within thirty (30) days after the transcript is submitted to the deponent. If no corrections are made during this time, the transcript will be presumed accurate.

### IV.    USE OF DEPOSITIONS

Depositions conducted in this MDL may be used in related cases in any state court to the extent permitted by that state's laws and rules.  Depositions may, under the conditions prescribed in Fed. R. Civ. P. 32(a) (1)-(4) or as otherwise permitted by the

Federal Rules of Evidence, be used by or against any party (including parties later added and parties in cases subsequently filed in, removed to or transferred to this Court as part of this litigation):

1. who is a party to this litigation;

2. who was present or represented at the deposition;

3. who was served with prior notice of the deposition or otherwise had reasonable notice thereof; or

4. who, within thirty (30) calendar days after the transcriptions of the deposition (or, if later, within sixty (60) calendar days after becoming a party in this court in any action that is a part of this MDL proceeding), fails to show just cause why such deposition should not be useable against such party.

## V. FEDERAL RULES OF CIVIL PROCEDURE APPLICABLE

Unless specifically modified herein, nothing in this order shall be construed to abrogate the Federal Rules of Civil Procedure.

**So Ordered.**

_____
F. Dennis Saylor IV
United States District Judge

Dated: _____, 2013

HIPAA COMPLIANT AUTHORIZATION FOR THE RELEASE OF PATIENT
INFORMATION PURSUANT TO 45 CFR 164.508

TO: _____

Name of Healthcare Provider/Physician/Facility/Medicare Contractor

_____

Street Address

_____

City, State and Zip Code

RE:    Patient Name: _____

Date of Birth: _____   Social Security Number: _____

I authorize and request the disclosure of all protected information for the purpose of review and
evaluation in connection with a legal claim. I expressly request that the designated record custodian of all
covered entities under HIPAA identified above disclose full and complete protected medical information
including the following:

All medical records, meaning every page in my record, including but not limited to:
office notes, face sheets, history and physical, consultation notes, inpatient, outpatient
and emergency room treatment, all clinical charts, reports, order sheets, progress notes,
nurse's notes, social worker records, clinic records, treatment plans, admission records,
discharge summaries, requests for and reports of consultations, documents,
correspondence, test results, statements, questionnaires/histories, correspondence,
photographs, videotapes, telephone messages, and records received by other medical
providers.

All physical, occupational and rehab requests, consultations and progress notes.

All disability, Medicaid or Medicare records including claim forms and record of denial
of benefits.

All employment, personnel or wage records.

All autopsy, laboratory, histology, cytology, pathology, immunohistochemistry records
and specimens; radiology records and films including CT scan, MRI, MRA, EMG, bone
scan, myleogram; nerve conduction study, echocardiogram and cardiac catheterization
results, videos/CDs/films/reels and reports.

All pharmacy/prescription records including NDC numbers and drug information
handouts/monographs.

All billing records including all statements, insurance claim forms, itemized bills, and
records of billing to third party payers and payment or denial of benefits for the period
_____ to _____.

I specifically EXCLUDE authorization for the release of information relating to sexually
transmitted diseases, acquired immunodeficiency syndrome (AIDS), or human immunodeficiency virus
(HIV), and alcohol and drug abuse.

I also specifically EXCLUDE authorization for ex parte discussions with my treating physicians.

This authorization solely applies to release of medical and billing records.

    1.    This protected health information is disclosed for the following purposes of: <u>(i) investigating, litigating and resolving potential claims involved in this litigation; (ii) litigating and resolving potential claims in the chapter 11 case of NECP (the "Chapter 11 Case"); and (iii) the administration of the Chapter 11 Case, and not for any other purpose.</u>

You are authorized to release the above records to the following representatives of defendants in the above-entitled matter who have agreed to pay reasonable charges made by you to supply copies of such records:

    Eric Schwarz,
Name of Representative

    Vice President, Rust Consulting/Omni Bankruptcy
Representative Capacity (e.g. attorney, records requestor, agent, etc.)

  5955 Desoto Avenue, Suite 100
Street Address

  Woodland Hills, CA 91367
City, State and Zip Code

I understand the following: See CFR §164.508(c)(2)(1-iii)

    a.  I have a right to revoke this authorization in writing at any time, except to the extent information has been released in reliance upon this authorization.

    b.  The information released in response to this authorization may be re-disclosed to other parties.

    c.  My treatment or payment for my treatment cannot be conditioned on the signing of this authorization.

Any facsimile, copy or photocopy of the authorization shall authorize you to release the records requested herein. This authorization shall be in force and effect until two years from date of execution at which time this authorization expires.

_____    _____
Signature of Patient or Legally Authorized Representative    Date
(See 45CFR § 164.508(c)(1)(vi))

_____
Name and Relationship of Legally Authorized Representative to Patient
(See 45CFR §164.508(c)(1)(iv))

_____    _____
Witness Signature    Date

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ) | |
| ) | |
| IN RE:  NEW ENGLAND ) | MDL No. 1:13-md-2419-FDS |
| COMPOUNDING PHARMACY, INC. ) | |
| PRODUCTS LIABILITY ) | |
| LITIGATION ) | |
| ) | |
| All Actions ) | |

## MDL Order
### No. 8
#### November 25, 2013

### CASE MANAGEMENT ORDER

This Order establishes a discovery overview procedure in *In re New England Compounding Pharmacy, Inc., Products Liability Litigation*, MDL No. 1:13-md-2419-FDS ("the MDL").  This Order modifies or establishes certain deadlines for discovery and certain other events, and is based in part on the Court's previous Orders and proposals submitted by the Plaintiffs' Steering Committee ("PSC").  This Order amends and supersedes MDL Order No. 7.

1.    **Definitions.**  For purposes of this order, (a) the term "NECC" shall mean New England Compounding Pharmacy, Inc.; (b) the term "Affiliated Defendants" shall mean Barry Cadden, Lisa Cadden, Doug Conigliaro, Carla Conigliaro, Gregory Conigliaro, Glenn Chin,  Alaunus  Pharmaceutical,  LLC,  Ameridose,  LLC,  GDC  Properties Management, Inc., Medical Sales Management and Medical Sales Management SW; (c) the term "Unaffiliated Defendants" shall mean all Defendants other than NECC or the Affiliated Defendants; (d) the term "National Defendants" shall mean all Unaffiliated Defendants who had service or consulting agreements or arrangements with NECC or the

1

Affiliated Defendants, but who did not purchase compounded product from NECC; and (e) the Plaintiff Profile Form shall mean the Confidential Personal Injury or Wrongful Death Claim Information Form required to be filed with the claim form ordered by the Bankruptcy Court in *In re New England Compounding Pharmacy, Inc.*, United States Bankruptcy Court for the District of Massachusetts, Case No. 12-19882-HJB along with a HIPAA-compliant medical release to be negotiated between the parties.

2.   **Discovery from NECC and Affiliated Defendants.**   This Order does not provide for discovery from NECC, which remains subject to the protections of the Bankruptcy Court, or the Affiliated Defendants.   The Court recognizes that fairness requires that discovery be mutual and reciprocal, and expects to set a schedule for such discovery at a future date.

3.   **Participants in Mediation Program.**   The Court's Order on Mediation Program of August 15, 2013, exempts participating Defendants from various discovery obligations. In order to ensure that the litigation process is fair should attempts at mediation prove unsuccessful, the Court may find it appropriate to modify the deadlines in this Order, grant additional stays, or take such other action as justice may require.

4.   **Discovery—Governing Rules.**   Discovery shall be governed by the applicable Federal Rules of Civil Procedure and the Local Rules for the District of Massachusetts.

5.   **Expert Discovery and Completion of Fact Discovery.**   The Court will set deadlines for expert discovery and completion of fact discovery at a future date.

6.   **Stipulated Protocols and Proposals.**   As to the deadlines below for the parties to submit "stipulated proposals" or "stipulated protocols," the Court intends and expects that the parties will work together to address these matters.   In the event, the parties are unable to

agree a stipulated proposal or protocol, they are to submit alternative proposals or

protocols to the Court for resolution by the deadline provided below, absent agreement of

the parties to extend those dates or further order of the Court.

7. **Schedule**. The Court sets the schedule below for the following events in this matter:

| Event | Dates/Deadline |
|---|---|
| Fact discovery of (1) NECC and (2) the Affiliated Defendants. | Stayed until further order of the Court. |
| Master Fact discovery of (1) the Unaffiliated Defendants, (2) non-parties, and (3) Plaintiffs. | Such discovery may continue, subject to the Mediation Order of August 15, 2013, as it may apply as to any participating Defendant. |
| Response of Objecting Subpoena Recipients to PSC Subpoenas per Magistrate Judge Boal's November 13, 2013 Order (Dkt. No. 572) | December 13, 2013, or, for an objecting subpoena recipient who files a subsequent appeal of Judge Boal's November 13, 2013 order, 30 days after any District Court ruling directing them to comply with the subpoena. |
| Filing of Master Complaint against Affiliated Defendants | December 20, 2013 |
| Filing of Short Form Complaint (naming Unaffiliated Defendants) joining the Master Complaint by any individual plaintiff in (1) any previously filed case and (2) any case where the plaintiff wishes to be considered for selection as a Bellwether Case. | December 20, 2013 |
| Filing of Master Answers, Motions to Dismiss the Master Complaint, or other omnibus, generic pleadings responsive to the Master Complaint by the Unaffiliated Defendants. | January 10, 2014, or, for Unaffiliated Defendants not yet served, thirty days from the date of service. |
| Responses to Motions to Dismiss or other responsive pleadings seeking to dismiss a party entirely from the Master Complaint. | Sixty days from the filing of the motion. |
| Filing of Answers, Motions to Dismiss, or other responsive pleadings by any Unaffiliated Defendants to Short Form Complaints | Stayed pending selection of the case as a bellwether case and filing of long form complaint. |
| Unaffiliated Defendants to provide list of cases where it alleges: 1) insufficiency of process; 2) non-compliance with state-specific pre-suit notice and expert | December 11, 2013, or, for Unaffiliated Defendants not yet served, sixty days from the filing of a short form complaint |

| Event | Dates/Deadline |
|---|---|
| requirements (including identifying the alleged deficiency); and 3) comparative fault (including identifying the parties alleged to be at fault). | |
| Parties to submit a stipulated protocol for Unaffiliated Defendants to have access to discovery previously obtained from NECC and Affiliated Defendants, additional discovery as permitted by this Court and the Bankruptcy Court from NECC and the Affiliated Defendants, and discovery from the National Defendants. | January 10, 2014 |
| Parties to submit a stipulated protocol for the discovery of electronically stored information (ESI), if ESI will be requested in discovery, that should include agreements reached as to: (i) the retention and production of ESI; (ii) the use of search terms or other means of forensic searches for ESI; (iii) the manner in which ESI subject to privilege and work product protection will be handled; and (iv) whether a court order will be requested (either on stipulation or otherwise) to address ESI. | December 13, 2013 |
| Parties to submit a stipulated Deposition Protocol. | December 13, 2013 |
| Service of Plaintiff Profile Form | January 29, 2014 |
| Parties to negotiate form of HIPAA release to be provided as part of Plaintiff Profile Form | December 13, 2014 |
| Parties to negotiate form of Plaintiffs' and Defendant's Fact Sheet for use after case is selected as a bellwether case. | February 28, 2014 |
| Parties to negotiate Bellwether Trial Selection protocol and discovery protocol to govern bellwether discovery | April 1, 2014 |
| Selection of six potential Bellwether Cases | May 1, 2014 |

**So Ordered.**

_____

F. Dennis Saylor IV
United States District Judge

Dated: November ___, 2013

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC., PROCUCTS LIABILITY LITIGATION | )<br>)<br>)<br>) MDL No.:  2419<br>) Master Docket No.: 1:13-md-2419-FDS |
| THIS DOCUMENT RELATES TO: | )<br>)<br>) |
| All actions. | )<br>) |

## PROPOSED ESI PROTOCOL

This protocol shall apply to all discovery of electronically stored information.  It may be supplemented or amended by subsequent agreement of the Parties in light of further developments.

## I.   DEFINITIONS

**A.**    "Electronically stored information" or "ESI," as used herein, means and refers to computer generated information or data of any kind, stored in or on any storage media located on computers, file servers, disks, tape, or other real or virtualized devices or media.  The examples of ESI set forth below are not an admission that a type of ESI exists, that a Party is obligated to preserve it, or that it should be produced in this litigation pursuant to a Party's discovery requests.  Non-limiting examples of ESI (which are provided without waiving the right of any Party to object to the production of a specific type of ESI in this case, including but not limited to objections for relevance, undue burden, and/or inaccessibility) include:

- Digital communications (e.g., voicemail, instant messaging);

- All server-based e-mail communications (e.g., Lotus Domino .NSF,  Microsoft Exchange .EDB. .PST, .OST);

- All web-based e-mail communications (e.g., Gmail, Yahoo, Hotmail);

- Word processed documents (e.g., Word or WordPerfect files and drafts);

- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);

- Accounting application data (e.g., QuickBooks, Money, Peachtree data);

- Image and facsimile files (e.g., .PDF, .TIFF, .JPG, .GIF images);

- Sound recordings (e.g., .WAV and .MP3 files);

- Video and animation (e.g., .AVI and .MOV files);

- Databases (e.g., Access, Oracle, SQL Server data, SAP);

- Contact and relationship management data (e.g., Outlook, ACT!);

- Calendar and diary application data (e.g., Outlook PST, blog entries);

- Notes, notepads, and reminders;

- Online access data (e.g., Temporary Internet Files, History, Cookies);

- Presentations (e.g., PowerPoint, Corel Presentations);

- Network access and server activity logs;

- Project management application data;

- Computer aided design/drawing files;

- Archival/compression files (e.g., .RAR, .ZIP, .7z);

- Backup files (e.g., Veritas, GHO); and

- Virtualized ESI or remote storage devices (e.g., cloud-based, internet-based), including application, infrastructure, and data.

**B.**     "Incremental Costs" are the reasonable costs of transferring data to Production Media (e.g., CD-ROM, DVD, external hard drive, etc.) and the reasonable cost of the Production Media itself.  For costs charged by a vendor, the producing Party will request and provide a

separate invoice detailing the Incremental Costs being taxed to the receiving Party.

     **C.**    "Native format" means and refers to the format of ESI in which it was generated and/or as used by the producing Party in the usual course of its business and in its regularly conducted activities.

     **D.**    "Metadata" means and refers to information about information or data about data, and includes without limitation (i) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, usage, and/or validity of the electronic file and/or (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

     **E.**    "Static Image" means or refers to a representation of ESI produced by converting a native file into a standard image format capable of being viewed and printed on standard computer systems.

     **F.**    "Documents" has the meaning contemplated in the Federal Rules of Civil Procedure and applicable case law and includes, but is not limited to, writings, drawings, graphs, charts, photographs, sound recordings, images, and other data, data records, or data compilations.

     **G.**    "Media" means an object or device, including but not limited to a disc, tape, drive, computer or other device, whether or not in the producing Party's physical possession, on which data is or was stored.

     **H.**    "Parties" means or refers to the named Plaintiff and Defendant in the above-captioned matter, as well as any later added plaintiffs and defendants.

**II.**    **SCOPE**

     **A.**    General.  The procedures and protocols set forth in this Agreement shall govern

the production of ESI in this matter, unless the Parties agree in writing to change them or they are changed by the Court.  Without limiting the generality of the foregoing, the Parties will confer in good faith regarding proposed changes to the Agreement in view of specific discovery requests made during the course of this litigation and/or in view of issues arising after a Party commences collection of ESI and other documents and information.  In the absence of agreement between the Parties to change this Agreement, any Party may apply to the Court for relief. Nothing in this Agreement constitutes the waiver or estoppel of a Party's right to seek amendments to this Agreement for good cause, including changed circumstances not known to the Party at the time the Parties entered this Agreement.  Nor does anything in this Agreement waive the right of any Party to object to the production of certain documents or ESI, including on the basis of relevance, undue burden, and/or inaccessibility.

      **B.**      Disputes.  The Parties shall meet and confer in good faith on any issues regarding ESI that arise under this Agreement or otherwise, including any relating to custodians and data sources.  In the event the Parties cannot reach an agreement on a disputed matter, the Parties shall submit the matter to the Court.  For any disputes regarding the most effective way to retrieve requested material from a database, server, computer, service provider, or similar Electronic Storage Facility (ESF), before filing a motion, the Parties must include in their meet and confer discussions a representative knowledgeable about the relevant ESF.  Both sides should be prepared to discuss specifically the relevance of the information sought, other sources of similar information, the burden of producing the information, and the parameters of the search.

## III.     SEARCH TERMS AND PROTOCOL FOR ELECTRONIC DOCUMENTS

      Contemporaneously with serving responses and objections to another Party's requests for production (the "Responding Party"), the Responding Party shall identify:

1. The types of programs or systems in which the Responding Party's potentially discoverable ESI is generally stored, including whether such format is anticipated to pose any technological challenges to implementing a search protocols.

2. The categories of ESI, if any, that are accessible.  Examples of such categories could include electronically stored data that is already segregated such that an electronic search is not necessary or electronically stored data that is kept in such a manner that the use of search terms would not be effective or would not be the most efficient manner to locate and produce the relevant ESI.  All other categories of potentially responsive ESI shall be searched through the use of search terms, following the process identified below.

3. The custodians whose documents the Responding Party intends to search for responsive ESI and a list of custodians that the Responding Party intends not to search.  The Responding Party's list of proposed custodians will include each such custodian's job title.  Each Party shall retain the right, upon reviewing documents actually produced in the litigation and conducting other investigation and discovery, to request that files from additional custodians be searched later in the litigation.  The Parties agree to meet and confer in good faith concerning any such requests.

4. The sources of data that the producing Party intends to search for responsive ESI, along with a list of any known sources likely to contain potentially discoverable information that it does not intend to search.

Within seven days of serving their objections and responses to another Party's requests for production, the Parties will also provide any existing organizational charts relating to

departments within their organizations in which any of the custodians referred to in paragraph (3) above, work.

Within fourteen days of serving their objections and responses to another Party's requests for production, the parties shall meet and confer regarding the previously exchanged lists and information referred to above and:

1. Proposed keyword search terms (including semantic synonyms, code words, acronyms, abbreviations, non-language alphanumeric associational references to relevant ESI, etc.) to be used when searching for ESI.

2. Proposed exclusion criteria (including, but not limited to date restrictions) related to ESI searches.

Any objections to a proposed custodian or a proposed search term shall be made prior to or during this conference. Furthermore, if a Party does not object to the inclusion of a search term proposed by another Party, and is aware of any semantic synonyms of that term, such synonyms shall be provided to all Parties prior to or during this conference. Notwithstanding the foregoing, if any producing Party believes that additional search terms would be necessary to identify its own responsive documents, that Party shall recommend such additional term(s) be added to the list.

Within twenty-one days of serving their objections and responses to another Party's requests for production, the Parties shall circulate lists of agreed and disputed custodians and sources, agreed and disputed search terms, and agreed and disputed exclusion criteria. Notwithstanding the foregoing, in the event that a producing Party subsequently determines in good faith that an agreed term should not have been included, the Parties shall cooperate in good faith to resolve the matter. Any Party proposing such modifications to the agreed search terms

must demonstrate good cause for such modification. In the absence of a mutually acceptable agreement to modify the agreed searched terms, the Responding Party may submit the dispute to the Court.

No later than this point shall each Party begin collecting documents, ESI, and information in the possession of each agreed custodian and/or additional locations such as shared drives, distribution lists, department files, etc. (the "Collected Documents").

To the extent reasonably possible, the producing Party shall apply all agreed search terms to all Collected Documents, including all related metadata. All queries shall be run in a non-case sensitive manner, unless otherwise agreed by the Parties. Queries of family groups (e.g., email and attachments) will be run against all members of a family group, and if any is responsive, the entire family group shall be treated as responsive. The application of the agreed search terms to the agreed custodians shall be done on a rolling basis, and need not await the identification of all Collected Documents or all custodians. If the Collected Documents include non-searchable documents, the producing Party shall disclose this fact, and the Parties shall cooperate in good faith to determine the basis for review and potential production of such non-searchable documents. Each producing Party may, at its election, review ESI that contains any agreed-upon search terms for responsiveness and privilege prior to production to the receiving Party.

The producing Party shall also apply all disputed search terms to a reasonable sample of the Collected Documents, including all related metadata; provided, however, that the producing Party reserves the discretion not to run searches and provide data for those terms which it believes, in good faith, are obviously and unreasonably overbroad (the "Refused Terms"). Nothing herein shall preclude an opposing Party from challenging another Party's assessment of reasonableness. The Parties agree to meet and confer regarding any disputes that arise

concerning the reasonableness of the sampling, including disputes concerning the methodology used to determine the sample.

On a rolling basis thereafter, each Party shall disclose, for each source of sampled documents, the number of aggregate and unique "hits" for each of the disputed search terms. The Parties shall, within one (1) week of such disclosures, meet and confer to discuss the utility of adding any, or all, of the disputed search terms. The Parties shall continue to meet and confer in good faith regarding any search process issues that arise throughout this process, including any appropriate sampling of the documents with disputed search term "hits" to determine the utility of particular disputed search terms.

If, at the end of the process described above, disputed search terms remain, the Parties will submit those terms to the Magistrate Judge in the form of a joint discovery letter with a discussion of the relevance and/or burden associated with each such term.

Once the files of a custodian are searched for all agreed terms (including any formerly disputed terms which, by agreement of the Parties or order of the Court, are encompassed therein), the producing Party shall not be under any obligation, absent a Court order, to re-search that custodian's files for additional search terms. Any Party proposing such additional search terms will have to demonstrate good cause for re-searching a custodian's files.

The Parties will continue to meet and confer regarding any search process issues as necessary and appropriate throughout this process.

This ESI protocol does not address or resolve any objection to the scope of the Parties' respective discovery requests, and it does not prevent any Party from undertaking additional searches of its own ESI for its own purposes at any time.

IV.    **FORMAT OF PRODUCTION**

    **A.**    Document Image Format. Unless otherwise agreed to in writing by a requesting

Party, the producing Party shall have the option of (a) producing documents electronically in native file format, or (b) electronically as a single-page Group IV "TIFF" image that reflects how the source document would have appeared if printed out to a printer attached to a computer viewing the file, along with the associated files and fields of metadata set forth below. A Party electing to produce documents in TIFF format pursuant to V.A.(b) shall bear the costs of producing the TIFF files, with such costs non-reimbursable and non-taxable pursuant to 28 U.S.C. § 1920 or any other state or federal cost-recovery provision. For those documents that a Party can establish could not reasonably be produced as an initial matter in their native file format, the producing Party shall not be precluded from seeking recovery or taxation of costs for conversion to TIFF format of such documents, provided that nothing in this section or the remainder of this protocol precludes the requesting Party from opposing any applications for shifting of costs.

1.      If ESI has hidden text (e.g., track changes, hidden columns, comments, notes, markups, etc.) associated with it, the Parties shall produce the ESI in a form showing such hidden text to the extent reasonably practicable. When processing ESI for review and for production, to the extent reasonably practicable, the producing Party will instruct its vendor to force off Auto Date and force on hidden columns or rows, hidden worksheets, speaker notes, track changes, and comments. If producing hidden text is not reasonably practicable, the parties shall meet and confer regarding possible alternatives.

2.      Accompanying a TIFF production shall be a multipage text (.TXT) file containing searchable text from the native file, including, with regard to email, the email header text, and the metadata as discussed later in this document.

3.      Load files of the Static Images shall be created and produced together with

their associated Static Images to facilitate the use of the produced images by a document management or litigation support database system.

4.      The Parties shall meet and confer to the extent reasonably necessary to facilitate the import and use of the produced materials with commercially available document management or litigation support software.

**B.**     Native File Format.  Spreadsheets (e.g., Excel, Lotus), video/audio files (e.g., .wav, .mp3, .aiff, .wmv), and such other document types upon which the Parties may agree, will be produced in native format, except where such files are redacted in accordance with applicable law or Court order.  If production in native format is necessary to decipher the meaning, context, or content of a document produced in the document image format agreed to pursuant to paragraph V.A., the producing Party will honor reasonable requests made in good faith for either the production of the original document for inspection and copying or production of the document in native format.  All documents produced solely in native format should (i) have an assigned document level Bates number, (ii) be renamed according to the assigned Bates number, and (iii) have a "nativepath" populated along with the metadata load file pursuant to the guidelines outlined in paragraph V.J.  To the extent that a producing Party is also producing TIFF images of certain ESI, native file productions shall also be accompanied by a TIFF placeholder with the Bates number and original filename endorsed ("burned") onto the image, as well as any confidentiality designation associated with that document.  The Parties agree that compliance with these provisions shall not constitute spoliation.

**C.**     Production of Hard Copy Documents.  If a producing Party has or intends to convert any hard-copy documents or records to Static Images, the producing Party shall provide the Static Image files and corresponding load files to the requesting Party pursuant to Section

V.A. and the protocols set forth herein, or as otherwise agreed to by the Parties. A producing Party shall identify responsive hard-copy documents in accordance with its duties and obligations under the Federal Rules of Civil Procedure. Unless otherwise agreed to by the Parties, the requesting Party shall pay the reasonable Incremental Costs, if any, of creating its copy of the Static Images and corresponding load files.

**D.**     Document Unitization. For files produced as TIFF images, each page of a document shall be electronically saved as an image file. If a document consists of more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as it existed in the original when creating the image files. The producing Party shall produce a unitization file ("load file") for all produced documents in accordance with paragraph V.L.

**E.**     Duplicates. The Parties shall use reasonable, good faith efforts to avoid the production of duplicate ESI. To the extent that exact duplicate documents (based on MD5 or SHA-1 hash values) reside within a Party's ESI data set, each Party may produce only a single copy of a responsive document or record ("Single Production Copy"), but the Parties are not required to do so. Exact duplicate shall mean bit-for-bit identicality of the document content. For exact duplicate documents, the producing Party will produce the metadata described in section V.J herein for the Single Production Copy, as well as any such metadata that differs for the duplicate document(s). The producing Party shall populate a field of data that identifies each custodian who had a copy of the produced document in addition to a separate field of data identifying the custodian whose document is produced. The Parties shall provide periodic updates to their load files if the Dup_Custodian field must be updated to account for newly processed data. No Party shall identify and eliminate duplicates by manual review or some

method other than by use of the technical comparison using MD5 or SHA-1 hash values outlined above.

**F.**     Color.  At the producing Party's option, hard copy documents and documents reduced to TIFF may be produced in black and white in the first instance.  Notwithstanding the foregoing, the producing Party will endeavor to produce in a color format any documents reduced to TIFF that contain color in instances where the Producing Party is aware that the color is necessary to the meaning, context, or content of the document.  In addition, the producing Party will honor reasonable requests made in good faith for either the production of the original document for inspection and copying or production of a color image of the document (and, in the case of a hard copy document, a color hard copy) where the requesting Party determines the color is reasonably necessary to decipher the meaning, context, or content of the document.  Color production when reasonably necessary or requested will be at the non-reimbursable and non-taxable cost of the producing Party, unless otherwise agreed to in writing by the requesting Party.

**G.**     Bates Numbering and Other Unique Identifiers. For files produced in the document image format agreed to pursuant to paragraph V.A., each page of a produced document, at the sole option and non-reimbursable and non-taxable cost of the producing Party unless otherwise agreed to in writing by a requesting Party, shall have a legible, unique page identifier ("Bates Number") electronically "burned" onto the image in such a manner that information from the source document is not obliterated, concealed, or interfered with.  There shall be no other legend or stamp placed on the document image unless a document qualifies for confidential treatment pursuant to the terms of a protective order entered by this Court in this litigation, or has been redacted in accordance with applicable law or Court order.  In the case of

confidential information or highly confidential information, as defined in a protective order, or

materials redacted in accordance with applicable law or Court order, a designation may be

"burned" onto the document's image at a location that does not obliterate or obscure any

information from the source document.  Any Party producing ESI in a native format shall

produce the document in the format agreed to pursuant to paragraph V.B.

     **H.**    Production Media.  Documents shall be produced on CD-ROM, DVD, external

hard drive (with standard PC compatible interface), or such other readily accessible computer or

electronic media as the Parties may hereafter agree upon (the "Production Media").

     **I.**    Electronic Text Files.  Where documents maintained in the ordinary course of

business contain searchable text, text files shall be produced reflecting the full text that has been

electronically extracted from the documents ("Extracted Text"), including any hidden text.

Where such documents are no longer searchable because they have been converted to Static

Images by the producing Party, the producing Party shall provide OCR text files at its own

expense.  Where documents do not contain searchable text as they are maintained in the ordinary

course of business, the requesting Party shall pay the reasonable Incremental Costs, if any,

associated with obtaining its own copy of the OCR text files generated by the Producing Party, if

any.  With respect to emails, the Extracted Text shall include email header information,

including to, from, cc, bcc, subject, date, and the names of attachment files.  The Extracted Text

shall be labeled and produced on Production Media in accordance with the provisions of

paragraph V.H above, "Production Media."  The text files shall be produced in multi-page text

file format and will be named in such a way that they can be associated with their corresponding

Static Images in databases utilized by commercially available document management or

litigation support software.

**J.**     Metadata.  The Parties agree to produce the following metadata fields (to the extent available) to accompany each produced ESI file.  Unless otherwise specified, by producing metadata, the producing Party affirms that such metadata came from its records, with the exception of vendor-entered source/custodian and document/production number fields.

- BegDoc (beginning Bates number of the first page of a document)
- EndDoc (ending Bates number of the last page of the document)
- BegAttach (Bates number associated with the first page of a parent document)
- EndAttach (Bates number associated with the last page of the last attachment to a parent document)
- Attach Count (number of attachments to an email or e-doc)
- DocTitle (e-docs only)
- ThreadID (emails only)
- Thread_in_Reply_to (emails only)
- Thread_references (emails only)
- File/folder path (the full path to the file at its original location)
- ParentID (beginning Bates number for the parent email or e-doc)
- Attchids (beginning Bates number(s) for the attachment(s) associated with a parent e-mail of e-doc)
- FamilyID (An ID that is unique to the entire family group (email and attachments)
- Family Date (for emails and attachments only, corresponding to the sent or received date of the email to which the attachment is linked)
- MessageID (emails only)
- Sent Date (for emails and calendar invitations)
- Sent Time (for emails and calendar invitations)
- Last Modified Date (all documents)
- Last Modified Time (all documents)
- Created Date (all documents)
- Created Time (all documents)
- Received Date (for emails only)
- Received Time (for emails only)

- Call Start (start date and time of a calendar or appointment)
- Last Accessed Date (all documents)
- Last Accessed Time (all documents)
- Last Print Date (for e-docs)
- Author (e-docs only)
- From ("From" field in emails)
- Recipients ("To" field in emails)
- cc: (for emails only)
- bcc: (for emails only)
- Subject ("Subject" field in emails)
- Participants (names included in a meeting invitation)
- Attach Title (email attachments title list)
- Application (type of application used to generate the document)
- Custodian
- Duplicate custodian (the name of any custodian whose duplicate file was removed during production)
- MD-5 Hash Value
- SHA-1 Hash Value
- Page Count (number of pages in a document)
- Original File Name (the original file name of an e-doc or attachment to an email)
- Doc extension (the file extension of a document)
- Full Text (the full path to the OCR/extracted text file on Production Media)
- NativeLink (the full path to the native file produced)

Notwithstanding the foregoing, the Parties will meet and confer in good faith prior to the production of documents, with technical experts as needed, to clarify or resolve any issues (e.g., definitions of metadata fields, inconsistencies, burden) concerning the production of metadata.

**K.**     Attachments.  Email attachments and embedded files or links must be mapped to their parent by the Document or Production number.  If attachments and embedded files are combined with their parent documents, then "BeginAttach" and "EndAttach" fields (or the

functional equivalent, depending on the production format chosen) listing the unique beginning and end number for each attachment or embedded document must be included, when possible.

    **L.**    Load Files. The Parties agree to produce the following load files to accompany each production volume:

OCR and Extracted Text Files (.TXT Files):
- Single text file per document containing all the document's pages
- Pages separated by form feed character (decimal 12, hex 0xC)
- Filenames should be of the form:

  <Bates num>.txt

  Where <Bates num> is the BATES number of the first page in the document.
- Text must be encoded in UTF-8.

Image Files:
- Single page per image
- TIFF is Group IV compression, 300 dpi unless color or grayscale image is necessary, then .JPG would be acceptable
- Filenames should be of the form:

  "<Bates num>.<ext>," where <Bates num> is the BATES number of the page, and <ext> is the appropriate extension for the image format (.jpg, .tif).

Index Files:
- "Concordance Default" delimited text file utilizing the following characters:
  - The "comma" delimiter is "¶" (020)
  - The "quote" delimiter is "þ" (254)
  - The "new line" delimiter is "®" (174)
- First line must contain the column/field names (set forth in Paragraph 1(c) herein)
- Every row must have the same number of columns/fields (empty values are acceptable)
- All records must contain the quote "þ" character and the comma "¶" character for every entry.
- DATE Fields (cannot contain zeros such as, 00/00/0000 or 11/00/2012 value)
- Text must be encoded in UTF-8

**M.**     Structured data.  To the extent a response to discovery requires production of discoverable ESI contained in a database, in lieu of producing the database, the Parties agree to meet and confer, with an understanding of which fields are relevant, regarding queries to be made for discoverable information or upon the sets of data or fields to be included and generate a report in a reasonably usable and exportable electronic file (e.g., Excel or CSV format) for review by the requesting Party or counsel.  Upon review of the report(s), the requesting Party may make reasonable requests for additional information to explain the database schema, codes, abbreviations, and different report formats or to request specific data from identified fields.

## V.     OBJECTIONS TO ESI PRODUCTION

**A.**     Documents that present imaging or form production problems (including encrypted and/or protected files identified during the process of ESI) shall be promptly identified and disclosed to the requesting Party; the Parties shall then meet and confer to attempt to resolve the problems.

**B.**     If either Party objects to producing the requested ESI on the grounds that such information is not reasonably accessible because of undue burden or cost, or because production in the requested format is asserted to be not reasonably accessible because of undue burden or cost, the Party, at or before the time the production is due under the Federal Rules of Civil Procedure, agreement of the Parties, or order of the Court, shall describe the nature of the objection with reasonable particularity and indicate whether the producing Party is willing to offer an alternative.  The Parties will promptly meet and confer in an attempt to resolve the objections if necessary.

**C.**     If a producing Party learns that responsive ESI that once existed was lost, destroyed, or is no longer retrievable as a result of acts or circumstances not occurring in the

ordinary course of business or not occurring in accordance with the Party's document retention policies, the producing Party shall comply with its obligations under the Federal Rules of Civil Procedure to explain where and when the responsive ESI was last retrievable in its original format and to disclose the circumstances surrounding the change in status of that responsive ESI, whether that information is available from other sources, and whether any backup or copy of such original responsive ESI exists. Nothing in this paragraph is intended to expand or limit the obligations under the Federal Rules of Civil Procedure.

## VI.   Miscellaneous

A.      Cooperation. The Parties shall, as necessary, meet and confer to exchange information regarding issues associated with any electronic production of ESI, including, but not limited to, database field definitions and structure or document delivery mechanisms.

B.      Variance. Any practice or procedure set forth herein may be varied by agreement of the Parties without order of the Court. Failure of the Parties to agree on any modifications may be raised with the Court as necessary and in accordance with the Federal Rules of Civil Procedure and the Local Civil Rules.

## IN RE: NEW ENGLAND COMPOUNDING PHARMACY INC.

### Confidential Personal Injury or Wrongful Death Claim Information Form (the "PITWD Addendum")

**CLAIMANT NAME:** _____

### IMPORTANT - DO NOT FILE THIS DOCUMENT WITH THE COURT – SEE SPECIAL INSTRUCTIONS TITLED "NOTICE OF DEADLINES FOR FILING CLAIMS AND CLAIM PROCEDURES."

Please provide the following information **TO THE BEST OF YOUR ABILITY** for each individual making a claim about exposure to New England Compounding Pharmacy, Inc. d/b/a New England Compounding Center ("NECC") products. More information, including a list of NECC products, is available at http://www.cdc.gov/hai/outbreaks/meningitis-facilities-map.html and http://www.donlinrecano.com/necp. **SEE SPECIAL INSTRUCTIONS TITLED "NOTICE OF DEADLINES FOR FILING CLAIMS AND CLAIMS PROCEDURES."** You will need to submit this Form and your proof of claim by **January 15, 2014 at 4:00 p.m. (prevailing Eastern Time).**

- The "You" used in this Form means the person who was exposed to NECC products.

- "Product" means any medication or solution compounded by NECC.

- In filling out any section or sub-section of this Form, please submit additional sheets as necessary to provide complete information.

- If, at a later date, you learn that any of your responses are incomplete or incorrect, please submit that information as soon as you become aware of it. In addition, supplemental information and documentation will likely be requested after you submit this initial Form.

In completing this Form, you are considered to have done so under oath. You must provide information that is true and correct to the best of your knowledge, information, and belief. If information is not known, remembered, or available indicate that in the appropriate location.

After reviewing your Form, additional information and documentation will likely be requested from you. Please contact the Chapter 11 Trustee immediately if you need to correct any of your answers or can provide more complete information. You may and should consult with your attorney regarding completing this Form. **IF YOU ARE NOT REPRESENTED BY COUNSEL OR OTHERWISE ARE UNABLE TO FURNISH ANY OF THE INFORMATION REQUESTED, PLEASE PROVIDE AS MUCH OF THE INFORMATION AS YOU CAN.**

**Please Do Not Contact The Court With Any Questions Or For Additional Information**.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## I.  CASE INFORMATION

1.  Name of person on whose behalf a claim is being made (first, middle name or initial, last), including maiden or other names used: _____

    a.  Were you (or the person identified above) administered the steroid methylprednisolone acetate?

        [ ] Yes    [ ] No    [ ] Do Not Know

2.  Name of person signing this form, if different than above: _____

    a.  Relationship of signer to party on behalf of whom claim is being made: (such as spouse, parent, family member, adult child, guardian): _____

    b.  If you are filling this out on behalf of an individual who is deceased, please state the date of death, and attach a copy of a death certificate, if you have it.

3.  Please check the injuries you sustained as a result of exposure to the NECC Product(s):

    a.    [ ] Death

    b.    [ ] Fungal Meningitis

    c.    [ ] Epidural Abscess

    d.    [ ] Stroke or stroke like symptoms (Cerebral Vascular Accident)

    e.    [ ] Lumbar Puncture  (Spinal Tap), No Subsequent Treatment

    f.    [ ] Lumbar Puncture  (Spinal Tap), Subsequent Treatment

    g.    [ ] Infection of any kind, describe if known: _____

    h.    [ ] Injection only, no symptoms or treatment

    i.    [ ] Other (describe): _____

    (Attach additional sheets if necessary to describe.)

4.  Was any lawsuit or civil action started based on your exposure to an NECC Product, including any claiming wrongful death or claiming on behalf of an estate or survivors?

    [ ] Yes    [ ] No

2

If yes, please state:

a.     Case caption: _____

b.     Court and Docket number: _____

c.     Name, address, telephone number, fax number and e-mail address of attorney representing you, if you know:

      Attorney Name: _____

      Firm: _____

      Address: _____

      City, State, Zip Code: _____

      Telephone Number: _____

      Fax Number: _____

      E-mail Address: _____

*THE REST OF THIS FORM REQUESTS INFORMATION ABOUT THE PERSON EXPOSED TO THE PRODUCT*

## II.     Personal Information

5.     Current address and date(s) when you lived at this address:

_____

6.     Social Security Number (*LAST 4 DIGITS* ONLY): <u>XXX-XX-</u>_____

7.     Date of birth:_____

8.     Are you married?  [ ] Yes    [ ] No

## III.     Medical Information

9.     Date(s) you were administered or used an NECC Product:

_____

3

10. Hospital / clinic / physician's office where you were administered the Product:

(Name / Full Address) _____

_____

a. Name of physician who administered the Product:_____

11. What was the medical condition for which you were treated with the NECC Product (for example, osteoarthritis, back injury, etc.)?

_____

12. Have you been tested for meningitis or fungal infection?    [ ] Yes      [ ] No

a. If yes, provide:

1. Where? Name and full address of the facility

_____

2. When? Date(s) of test(s) (mm/dd/yyyy):

_____

3. Have you had a lumbar puncture/spinal tap since your exposure to an NECC Product? [ ] Yes          [ ] No

13. Are any of the previously described physical conditions, referred to in paragraph 3, still affecting you?

[ ] Yes    [ ] No

a. If Yes, please list and describe.

_____

_____

## IV. EMPLOYMENT INFORMATION

14. Are you making a claim for past lost wages or future lost earning capacity or other economic loss, other than for medical bills?

[ ] Yes      [ ] No

15. Have you filed a disability claim with any private insurance company or local/state/federal agency?

[ ] Yes      [ ] No

4

If yes, when? _____

16.    Did you have medical insurance for treatment rendered?  [ ] Yes          [ ]   No

    a.   If yes, please provide the following information for each insurance company.  If more than one, please provide information for all:
Name of Health Insurance: _____

        Policy No.: _____

        Name of Subscriber: _____

    b.   If you have Medicare or Medicaid coverage, please state your ID number:

    c.   Has any insurance company asserted a lien on your recovery?  [ ] Yes  [ ] No
If yes, please provide the name of the lienholder: _____

Signature[1]:          _____

Print or Type Name: _____

•

---

[1] Please note that your signature is deemed to be under oath.

5