UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
IN RE: NEW ENGLAND :
COMPOUNDING PHARMACY, INC. :
PRODUCTS LIABILITY LITIGATION : MDL No. 1:13-md-2419-FDS
:
:
This Document Relates to: :
    All Cases :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**STATEMENT OF INSIGHT HEALTH CORP.
(A) IN SUPPORT OF CHAPTER 11 TRUSTEE'S
RENEWED AND SUPPLEMENTAL MOTION TO
TRANSFER ADDITIONAL PERSONAL INJURY TORT AND
WRONGFUL DEATH CASES TO THIS COURT PURSUANT
TO 28 U.S.C. §§ 157(b)(5) AND 1334 (DOCKET NO. 732) AND (B) IN
RESPONSE TO OPPOSITIONS TO SAME (DOCKET NOS. 764, 766, 792, 799)**

Insight Health Corp. ("Insight") hereby submits this statement (the "Statement") (a) in support of the Chapter 11 Trustee's Renewed and Supplemental Motion to Transfer Additional Personal Injury Tort and Wrongful Death Cases to this Court Pursuant to 28 U.S.C. §§ 157(b)(5) and 1334 (Docket No. 732) (the "Motion") and (b) in response to oppositions to the Motion (Docket Nos. 764, 766, 792, 799) (collectively, the "Responses"). With respect to the Motion, Insight respectfully represents as follows:

**Preliminary Statement**

1.      Insight is a company that operates imaging centers nationwide, including a facility located in Roanoke, Virginia. Insight has been named as a defendant in 22 lawsuits filed in the Circuit Court for the City of Roanoke, Virginia (collectively, the "Roanoke Suits"), alleging injuries and, in some cases, death, resulting from the administration of injections containing

contaminated MPA[1] that was marketed, manufactured, produced, and shipped by New England Compounding Pharmacy, Inc. ("NECC" or the "Debtor").  The Roanoke Suits seek over $100 million in damages and, as described below, could have a substantial effect on NECC's estate.  Insight supports the Trustee's Motion to transfer each of the Roanoke Suits to this Court, and believes that the Motion is consistent with this Court's well-reasoned decision last summer that (1) there was related-to jurisdiction over state court cases "in which a party has made a claim against NECC or any affiliated entity or individual, including third-party claims for contribution or indemnity," (2) mandatory abstention did not apply to any of the cases at issue, and (3) this Court need not permissively abstain from exercising its related-to jurisdiction, except with respect to a subset of state-court cases where no claims had actually been asserted against NECC.  See  In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig., 496 B.R. 256, 264, 272-74 (D. Mass. 2013).  Importantly, the Plaintiffs' Steering Committee also supports the Trustee's Motion as to each Roanoke Suit other than Wingate v. Insight Health Corp., which case is no longer relevant to this analysis because the court has entered an order today dismissing the case.  See Exhibit A.

     2.      The parties are caught in a whirlwind of litigation because NECC's actions have resulted in tremendous physical suffering (even death) and economic harm.  The Roanoke Suits (and all other related plaintiffs' and defendants' claims) exist because NECC falsely marketed, carelessly manufactured, and shipped adulterated MPA.  Consolidating the Roanoke Suits in one forum furthers the purpose of the MDL and reduces the inefficiency and uncertainty that would result from multiple proceedings in Virginia state court, this Court, and the Bankruptcy Court.  In advance of the Bar Date, Insight filed its proof of claim, pursuant to which Insight has asserted

---

[1]    Capitalized terms used but not defined in this Preliminary Statement are defined below.

claims against NECC related to the Roanoke Suits for contribution, indemnification, actual fraud, constructive fraud, negligence, gross negligence, breach of express warranty, and breach of implied warranty. Moreover, the Trustee has reported that all of the plaintiffs in the Roanoke Suits have also filed proofs of claim against NECC. Transferring the remaining Roanoke Suits is appropriate because any cases remaining in state court could not only result in large judgments (and corresponding claims against NECC), but may lead to inconsistent rulings that would greatly complicate the resolution of these matters and frustrate all sense of judicial economy. In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig., 496 B.R. at 263-64. Accordingly, this Court should exercise its related-to jurisdiction to transfer and consolidate the remaining Roanoke Suits into the MDL.

   3.  A total of four Responses have been filed in connection with the Motion.[2] While the Responses advance a variety of argument, several themes appear repeatedly:

- Insight's claims against NECC will be subordinated to the claims of NECC's tort creditors or simply disallowed and therefore Insight's claims have no conceivable effect on the bankruptcy estate. (See, e.g., Gentry Locke Response at 10-11, Frith Ellerman Response at 10, LichtensteinFischwick Response at 5; cf. PSC Response at 14.)

- Under Pacor and its progeny, Insight's claims against NECC are insufficient to confer related-to jurisdiction over the Roanoke Suits because Insight lacks an existing right to contribution or a contractual right to indemnity. (See, e.g., Gentry Locke Response at 8, Frith Ellerman Response at 5, LichtensteinFischwick Response at 2.)

---

[2]  The responding parties are the Gentry Locke Plaintiffs (Docket No. 764) (the "Gentry Locke Response"), the Roanoke Frith & Ellerman Plaintiffs (Docket No. 766) (the "Frith Ellerman Response"), the Roanoke-Area LichtensteinFischwick and Brown & Jennings Intervenors (Docket No. 792) (the "LichtensteinFischwick Response"), and the Plaintiffs' Steering Committee (Docket Nos. 789, 799) (as amended, the "PSC Response"). The PSC Response supports the transfer of each Roanoke Suit other than the Wingate v. Insight Health Corp. case (see PSC Response at 4), which case had been set for trial in April prior to the court entering an order earlier today dismissing the case. The Official Committee of Unsecured Creditors (the "Committee") also filed a joinder to the Trustee's Motion (Docket No. 743).

- Even if related-to jurisdiction exists, this Court should (or must) abstain from exercising such jurisdiction. (See, e.g., Gentry Locke Response at 14, Frith Ellerman Response at 12, LichtensteinFischwick Response at 2.)

4. Insight respectfully submits that these Responses should be overruled and the Trustee's Motion granted. First, this Court has ample authority to grant the Motion because (a) Insight has asserted claims against NECC and (b) all of the Roanoke plaintiffs have filed proofs of claim against NECC. If the Motion is not granted, there is considerable risk that the Roanoke Suits—each of which share factual questions relating to injuries arising from MPA produced by NECC and which seek over $100 million in damages from Insight—result in significant claims against NECC's estate, to the detriment of all creditors in NECC's pending chapter 11 case. Second, while Insight's claims against NECC are certainly meritorious, the short answer to arguments that Insight must have an "automatic" right to contribution in order to find related-to jurisdiction is that neither this Court's prior ruling nor other ample case authority requires such a finding with respect to tort-related contribution and indemnification claims. Moreover, each of the plaintiffs in the Roanoke Suits timely filed proofs of claim against NECC, which in these circumstances provides an independent basis to exercise related-to jurisdiction.[3] Finally, the plaintiffs' arguments as to mandatory and permissive abstention are simply invitations to reargue this Court's prior determination that it should not abstain from exercising related-to jurisdiction where a nondebtor defendant had actually asserted a claim for contribution or indemnity against NECC. These considerations weigh strongly in favor of the relief requested in the Motion.

---

[3] Regardless, it is well established that an alleged joint tortfeasor may file a proof of claim as a codebtor under Rule 3005 in those situations in which the injured party does not file.

**Relevant Background**

A.     **Events Leading to NECC's Chapter 11 Filing**

5.     On or about September 18, 2012, the Centers for Disease Control ("CDC") traced the first case of fungal meningitis to an epidural steroid injection of preservative-free compounded methylprednisolone acetate ("MPA") produced by NECC and administered to a patient in Tennessee. By late September 2012, NECC informed the Food and Drug Administration ("FDA") that 17,500 vials of MPA had been sent to 75 facilities in 23 states.

6.     The FDA and CDC investigated the outbreak and identified fungus and/or other impurities in samples taken from multiple lots of MPA. The FDA and CDC identified NECC as the source of the contaminated MPA and instituted a recall of certain identified lots of MPA that had been prepared and sold by NECC. On September 26, 2012, NECC recalled three MPA lots, numbered 05212012@68, 06292012@26, and 08102012@51. This recall was the first public notice of any problems with those lots.

7.     On October 6, 2012, the FDA and CDC instituted a recall of all NECC products. Healthcare professionals and clinics around the country, including Insight, were told to stop using all NECC products immediately until further notice from the FDA.

B.     **NECC's Chapter 11 Filing and Multidistrict Litigation**

8.     On December 21, 2012 (the "Petition Date"), NECC filed a voluntary petition for relief under chapter 11 of title 11 of the United States Bankruptcy Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Massachusetts (the "Bankruptcy Court"). On January 24, 2013, the Bankruptcy Court entered an order authorizing the appointment of a chapter 11 trustee (the "Trustee"). On January 25, 2013, Paul D. Moore was appointed as the Trustee of NECC's bankruptcy estate.

9.      On February 12, 2013, the Judicial Panel on Multidistrict Litigation issued an order centralizing certain civil actions in this Court under the caption <u>In re: New England Compounding Pharmacy, Inc., Products Liability Litigation</u>, Case No. 13-md-2419 (FDS) (D. Mass.).  These actions share factual questions relating to injuries arising from the contamination of the injectable steroid MPA at NECC's facility in Framingham, Massachusetts, which resulted in a multistate outbreak of hundreds of cases of fungal meningitis and other infections.

**C.     The Roanoke Suits**

10.     After NECC sought chapter 11 protection, Insight was named as a defendant in the Roanoke Suits.  These 22 lawsuits were filed in the Circuit Court for the City of Roanoke, Virginia, alleging injuries and, in some cases, death, resulting from the administration of injections containing contaminated MPA that was marketed, manufactured, produced, and shipped by NECC.[4]

11.     Three of the Roanoke Suits include wrongful death claims. Twenty of the 22 complaints in the Roanoke Suits seek compensatory damages of $5 million or more (the remaining two seek $2 million and $500,000, respectively).  All but one of the 22 Roanoke Suits also seeks punitive damages of $350,000.  Combined, the Roanoke Suits seek over $100 million in damages.

**D.     The Trustee's Initial Transfer Motion and this Court's Prior Ruling**

12.     On March 10, 2013, the Trustee filed his initial Motion to Transfer Personal Injury Tort and Wrongful Death Cases to this Court Pursuant to 28 U.S.C. §§ 1334 and 157(b)(5) (Docket No. 37) (the "Initial Transfer Motion").  On June 12, 2013, this Court issued its ruling with respect to the Initial Transfer Motion.  See <u>In re New England Compounding Pharmacy, Inc.</u>

---

[4]   In addition to the Roanoke Suits, upon information and belief, there may be additional potential claimants who may have received injections of MPA from NECC at Insight's facility in Roanoke who may allege damages, injuries, and/or death resulting from such injections (the "Potential Roanoke Claims").

6

Prods. Liab. Litig., 496 B.R. 256 (D. Mass. 2013). This Court granted the Trustee's Initial Transfer Motion as to those cases (1) against NECC or any affiliated entity or individual pending in federal courts, (2) against NECC or any affiliated entity or individual in the process of being removed from state court, and (3) "pending in state courts in which any party has asserted a claim (including a claim for contribution or indemnity) against NECC or any affiliated entity or individual." Id. at 277. The court denied the Trustee's Initial Transfer Motion (without prejudice) as to those cases "pending in state courts in which no claim against NECC or an affiliated entity or individual has been asserted." Id.

### E. The Bar Date and Insight's Proof of Claim

13. On September 27, 2013, the Bankruptcy Court entered an order (Docket No. 582) (the "Bar Date Order") establishing January 15, 2014, at 4 p.m. (prevailing Eastern Time) as the general bar date for filing proofs of claim against NECC (the "Bar Date"). On December 20, 2013, Insight timely filed a proof of claim against NECC, which proof of claim was timely amended on December 30, 2013, and again on January 15, 2014 (as amended, the "Insight Proof of Claim"). A copy of the Insight Proof of Claim is attached hereto as Exhibit B. The Insight Proof of Claim asserts claims against NECC for contribution, indemnification, actual fraud, constructive fraud, negligence, gross negligence, breach of express warranty, and breach of implied warranty.

14. Upon information and belief, each of the plaintiffs in the Roanoke Suits have filed proofs of claim against NECC.

### F. The Trustee's Motion

15. On December 27, 2013, the Trustee filed the Motion, seeking to transfer the Roanoke Suits to this Court. The Committee filed a joinder supporting the Motion. As set forth

above, three of the four Responses have been filed opposing the transfer of the Roanoke Suits, and the Plaintiffs' Steering Committee supports the transfer of the remaining Roanoke Suits.

<u>**Argument**</u>

I. <u>THE ROANOKE SUITS HAVE A CONCEIVABLE IMPACT ON NECC'S BANKRUPTCY ESTATE</u>

16. The remaining Roanoke Suits have a conceivable, and potentially significant, impact on NECC's bankruptcy estate and should be transferred to the MDL. Last summer, the Bar Date Order had not been entered and it was unclear whether any of the parties to the Roanoke Suits would assert claims against NECC. The intervening months have clarified the picture—for each of the Roanoke Suits, both Insight and the respective plaintiffs have asserted claims against NECC. Nevertheless, several of the Responses assert that Insight's Claim against NECC will have "no conceivable effect on the bankruptcy estate," apparently on the theory that Insight's claim against NECC should be disallowed under section 502(e)(1)(B) of the Bankruptcy Code. (<u>See, e.g.</u>, Gentry Locke Plaintiffs' Response at 2, 11.) This argument misses the mark.

17. Even assuming that Insight's contribution claims were subject to disallowance pursuant to section 502(e)(1)(B), the Gentry Locke Plaintiffs misunderstand the meaning and import of such a disallowance. As the case law cited by the Gentry Locke Plaintiffs makes clear, (<u>see</u> Gentry Locke Response at 11 (citing <u>Sorenson v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.)</u>, 146 B.R. 92 (S.D.N.Y. 1992))), "[a] claim disallowed under [section 502(e)(1)(B)] may later be reconsidered under [section] 502(j) if the contingency is resolved." <u>In re Drexel Burnham Lambert Grp., Inc.</u>, 146 B.R. at 94. Section 502(j) of the Bankruptcy Code ensures that if Insight compensates a plaintiff after the Insight Proof of Claim had been disallowed, Insight could seek reconsideration of its no-longer-contingent contribution claim. Indeed, plans of reorganization commonly include reserves for contingent or disputed

claims to address this reality.  Cf. In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig., 496 B.R. at 263 (noting that "the threat of contingent contribution or indemnity claims becoming fixed after judgment or settlement of the MDL plaintiffs' claims would likely require the plan of reorganization to reserve specific funds").  But as a practical matter here, it is entirely possible that Insight's claims will be liquidated and allowed before any plan is confirmed by the Bankruptcy Court.

18. Moreover, for the reasons set forth below, the Gentry Locke Plaintiffs' assertion that Insight's claims would be subject to disallowance because "the entity asserting the claim (Insight) must be liable with the debtor [NECC] on the claim of a creditor (the Roanoke Gentry Locke Plaintiffs)" (Gentry Locke Response at 11), does little to show that the Roanoke Suits have no conceivable effect on NECC's bankruptcy.  The question of co-liability turns on whether the injury alleged in the underlying lawsuit is one for which, if proven, both the debtor and the claimant could be liable.  See In re Wedtech Corp., 87 B.R. 279, 284 (Bankr. S.D.N.Y. 1988).  Having argued that, on the one hand, Insight's claims against NECC should be disallowed as contingent contribution claims for which Insight and NECC are liable as codebtors, the Gentry Locke Plaintiffs cannot, on the other hand, credibly argue that the Roanoke Suits have no conceivable effect on NECC's bankruptcy estate while at the same time filing their own proofs of claim against NECC for the same injuries.  To the extent that any plaintiff in the Roanoke Suits prevails, either that plaintiff or Insight could have an allowed claim against NECC, which allowed claim may impact NECC's bankruptcy.

19. The Gentry Locke Plaintiffs also assert that Insight's claims should be disallowed entirely, arguing that under Virginia law, "active" negligence prevents a party from seeking indemnity.  (Gentry Locke Response at 9.)  But at this point in time, the plaintiffs' allegations of active negligence are simply that—allegations.  No court has concluded that Insight acted with

active negligence.  Whether Insight's indemnity claims should be considered for purposes of determining related-to jurisdiction should require more than simply conclusory allegations.  See Lindsey v. O'Brien, Tanski, Tanzer & Young Health Care Providers of Conn. (In re Dow Corning Corp.), 86 F.3d 482, 494 (6th Cir. 1996) (potential for debtor to be "held liable to the nondebtors in claims for contribution and indemnification, or vice versa, suffices to establish a conceivable impact on the estate in bankruptcy").

20.     The Gentry Lock Plaintiffs also observe that Virginia "is one of only five jurisdictions in the United States that retain pure contributory negligence." (Gentry Locke Response at 9.)  The purported significance (if any) of the fact that Virginia is a pure contributory negligence jurisdiction—rather than a comparative fault jurisdiction—is far from clear, but under Virginia law it is well established that "[c]ontribution among wrongdoers may be enforced when the wrong results from negligence and involves no moral turpitude."  See Va. Code Ann. § 8.01-34.  One possible outcome of the Roanoke Suits could be a judicial determination that Insight was negligent but its conduct did not involve moral turpitude.[5]  If that were the case, Insight would be entitled to pursue contribution claims against NECC under Virginia law.  Insight's claims therefore have a conceivable impact on NECC's bankruptcy estate, notwithstanding the Gentry Locke Plaintiffs' observation that "active" negligence precludes a claim for indemnity or their implied argument that a judicial determination of moral turpitude could result in the disallowance of Insight's claim for contribution.  Cf. In re Dow Corning Corp., 86 F.3d at 494.[6]

---

[5]    Make no mistake, Insight does not concede liability or that it was negligent in any respect as it pertains to the Roanoke Suits.

[6]    The Gentry Locke Plaintiffs' assertion that inchoate (contingent) claims are insufficient to support the exercise of related-to jurisdiction is addressed below.  See ¶ 28 infra.

21. Arguments that Insight's claims should be subordinated to the claims of NECC's tort-victims are similarly misplaced, but in any event need not be adjudicated here for this Court to exercise related-to jurisdiction over the Roanoke Suits. The Gentry Locke Plaintiffs, for example, assert that Insight's claim will be subordinated to general unsecured claims either under section 509(c) or 510(c) of the Bankruptcy Code. (Gentry Locke Response at 11-12.) Specifically, they argue that an allowed contribution claim would be subordinated "to the underlying creditor's claim [i.e., to the Roanoke plaintiffs' claims against NECC]," (id.), until the Roanoke plaintiffs' claims are "paid in full, either through payments under this title or otherwise." 11 U.S.C. § 509(c). But if the Roanoke plaintiffs' claims were paid in full, their claim against NECC would be disallowed and Insight's contribution claim would no longer be subordinated. This is because under Virginia law, plaintiffs may not seek multiple recoveries in different lawsuits for a single injury, even if the injury was the result of different kinds of negligence. See Va. Code Ann. § 8.01-443. Said differently, if Insight were to be found liable to a Roanoke plaintiff and satisfy a judgment against one of the Roanoke plaintiffs, such plaintiff's claim would be disallowed and there would be no grounds to subordinate Insight's contribution claim under section 509(c).

22. Similarly, the Roanoke plaintiffs' assertions that Insight's contribution claim should be equitably subordinated under section 510(c) of the Bankruptcy Code do not establish that Insight's claim against NECC has no conceivable impact NECC's bankruptcy. Equitable subordination is an "extraordinary remedy" that is to be used sparingly. Cf. In re LandAmerica Fin. Grp., Inc., 470 B.R. 759, 806 (Bankr. E.D. Va. 2012). Where the claimant is not an insider or a fiduciary of the debtor, the party seeking subordination must demonstrate—not simply allege—egregious conduct "such as gross misconduct tantamount to fraud, misrepresentation, overreaching or spoliation." In re Hedged-Investments Assocs., Inc., 380 F.3d 1292, 1301-02

(10th Cir. 2004). Contribution claims are not automatically subject to equitable subordination, and bankruptcy courts "must exercise their equitable discretion to decide whether or not to subordinate particular claims on a case-by-case basis." In re Merrimac Paper Co., Inc., 420 F.3d 53, 63 (1st Cir. 2005).

23. And even if parts of Insight's claim were somehow subordinated, it would likely be because the Roanoke plaintiffs' claims—that each has asserted against NECC—have not been satisfied in full. But as explained below, the very fact that the plaintiffs have asserted such claims against NECC is itself sufficient to support this Court's exercise of related-to jurisdiction over the Roanoke Suits.

24. Each of the plaintiffs in the Roanoke Suits filed their own proofs of claim against NECC—knowing of this Court's prior ruling and determination to exercise related-to jurisdiction over pending state-court cases where plaintiffs had asserted claims against NECC. In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig., 496 B.R. at 269. Where a plaintiff-creditor is already participating in a debtor's bankruptcy, given that a plaintiff may not recover multiple times for the same injury, the plaintiff's suit against a nondebtor "will, if successful, change its status vis-a-vis other creditors." See TD Bank, N.A. v. Sewall, 419 B.R. 103, 108 (D. Me. 2009) (asserting related-to jurisdiction over secured creditor's suit against nondebtor guarantor where creditor had also asserted a claim against debtor's bankruptcy estate). Similar to the circumstances in Sewall, now that each of the Roanoke Suit plaintiffs have filed proofs of claim against NECC, related-to jurisdiction exists because the outcome of these lawsuits against Insight "could alter, reduce, or eliminate one of the debtor's liabilities" by reducing the plaintiff's claim against NECC, thereby impacting the amount of claims against NECC and the allocation of NECC's estate. Id. at 109. The remaining Roanoke Suits could be transferred on that basis alone.

25. Whether through the allowance of Insight's claim against NECC or through the allowance of claims filed by or on behalf of the Roanoke plaintiffs, the remaining Roanoke Suits could have a substantial impact on NECC's bankruptcy estate and should therefore be transferred to this Court.

## II. GRANTING THE MOTION IS CONSISTENT WITH 28 U.S.C. § 157(B)(5)'S PURPOSE OF CENTRALIZING BANKRUPTCY-RELATED PERSONAL INJURY CLAIMS IN A SINGLE FORUM

26. Section 1334(b) of Title 28 provides that district courts "shall have original but not exclusive jurisdiction of all civil proceedings . . . related to cases under title 11." 28 U.S.C. § 1334(b). Section 157(b)(5) of Title 28 provides that "[t]he district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in which the claim arose, as determined by the district court in which the bankruptcy case is pending." 28 U.S.C. § 157(b)(5). Section 157(b)(5) has the "obvious purpose of giving particular priority to the centralization of bankruptcy-related personal injury claims in a single forum." Alcantar v. Twin Labs. Inc. (In re Twin Labs. Inc.), 300 B.R. 836, 840-41 (S.D.N.Y. 2003); see also A.H. Robins Co. v. Piccinin, 788 F.2d 994, 1011 (4th Cir. 1986) (purpose of section 157(b)(5) is to "centralize the administration of the estate and to eliminate the 'multiplicity of forums for the adjudication of parts of a bankruptcy case'" (citation omitted)).

27. Several of the Responses note that the definition of a "related to" proceeding was first articulated by the Third Circuit in Pacor, namely that "the test for whether a civil proceeding is related to a bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984). The First Circuit has followed the majority of appellate courts and has adopted

13

the Pacor test for "related to" jurisdiction. In re G.S.F. Corp., 938 F. 2d 1467, 1475 (1st Cir. 1991).[7]

28. Since Pacor was decided, a number of courts following Pacor have clarified that "'automatic' liability [with respect to nondebtor defendants' contribution and indemnification claims] is not necessarily a prerequisite for a finding of 'related to' jurisdiction." In re Dow Corning Corp., 86 F.3d 482, 491 (6th Cir. 1996); see also In re Twinlabs Personal Injury Cases, No. 03-civ-9169, 2004 WL 435083, at *1 (S.D.N.Y. Mar. 8, 2004) (related-to jurisdiction found where defense of suit against nondebtor defendants would "invariably involve the Debtors and some or all of the issues raised in the already-transferred suits" and where nondebtor defendants would "undoubtedly seek indemnity from the Debtors following any judgments against them"). Rather than requiring "automatic" liability, the potential for a chapter 11 debtor to be "held liable to the nondebtors in claims for contribution and indemnification, or vice versa, suffices to establish a conceivable impact on the estate in bankruptcy." In re Dow Corning Corp., 86 F.3d at 494. This is particularly true in these circumstances, involving suits where the cause of action arises out of a defective product manufactured by NECC. Cf. In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig., 496 B.R. at 272. The Roanoke Suits, in both number and potential economic impact on NECC's estate, are more like the large number of cases at issue in the Dow Corning case than the single allegedly related suit in Pacor. As explained above, on these facts there can be no doubt that the Roanoke Suits—commenced against Insight following

---

[7] In what was presumably simply an oversight in the Frith Ellerman Response, it should be noted that the Sixth Circuit has also adopted the Pacor test. Compare Frith Ellerman Response at 7 ("The Pacor test has been expressly adopted by the First, Third, Fourth, Fifth, Eighth, Ninth, and Eleventh Circuits."), with In re Dow Corning Corp., 86 F.3d 482, 489 (6th Cir. 1996) ("Our Circuit adopted the Pacor test for determining whether a civil proceeding is 'related to' a bankruptcy proceeding under [s]ection 1334(b) in [Robinson v. Mich. Consol. Gas Co., Inc., 918 F.2d 579 (6th Cir. 1990)]").

the Petition Date and where all of the plaintiffs have asserted claims against NECC—have a conceivable impact, and could have a significant impact, on NECC's bankruptcy estate.

### III. ABSTENTION IS NOT REQUIRED

29. Each of the Responses filed by the Roanoke plaintiffs argue that even if related-to jurisdiction exists, this Court should (or must) abstain from exercising such jurisdiction. This Court's prior ruling with respect to the mandatory and discretionary abstention, see In re New England Compounding Pharmacy, Inc. Products Liability Litigation, 496 B.R. at 271-74, applies with equal force to the Roanoke Suits. "[D]ecisions on factual and legal issues as to liability and damages in all of the state-court cases will likely have tremendous import on the bankruptcy proceedings and the reorganization plan." Id. Not only has Insight actually asserted claims against NECC, but each plaintiff in the Roanoke Suits has also asserted claims against NECC. Accordingly, Insight submits that this Court should not abstain from exercising its related-to jurisdiction over the Roanoke Suits.

## Conclusion

30.    For the foregoing reasons, the Trustee's Motion should be granted and all outstanding objections in opposition overruled.

Dated:  January 27, 2014  
        Boston, Massachusetts

Respectfully submitted,

/s/ Matthew J. Matule  
Matthew J. Matule (BBO # 632075)  
SKADDEN, ARPS, SLATE,  
   MEAGHER & FLOM LLP  
One Beacon Street  
Boston, Massachusetts 02108  
(617) 573-4800  
Matthew.Matule@skadden.com

-and-

Albert L. Hogan, III (admitted *pro hac vice*)  
Ron E. Meisler (admitted *pro hac vice*)  
Carl T. Tullson  
SKADDEN, ARPS, SLATE,  
   MEAGHER & FLOM LLP  
155 N. Wacker Drive  
Chicago, IL 60606  
(312) 407-0700  
Al.Hogan@skadden.com  
Ron.Meisler@skadden.com  
Carl.Tullson@skadden.com

-and-

Stephen D. Busch  
Diane Flannery  
Samuel T. Towell  
McGUIRE WOODS LLP  
One James Center  
901 East Cary Street  
Richmond, VA 23219  
(804) 775-1000  
sbusch@mcguirewoods.com  
dflannery@mcguirewoods.com  
stowell@mcguirewoods.com

Counsel for Insight Health Corp.

---

**CERTIFICATE OF SERVICE**

    I, Matthew J. Matule, hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on January 27, 2014.

Dated: January 27, 2014    /s/ Matthew J. Matule  
                                      Matthew J. Matule