IN THE FIFTH CIRCUIT COURT FOR DAVIDSON COUNTY, TENNESSEE

| | |
|---|---|
| WAYNE A. REED, individually and as husband and next of kin of decedent, DIANA E. REED,<br><br>Plaintiff,<br><br>v.<br><br>ST. THOMAS OUTPATIENT NEUROSURGICAL CENTER, LLC, HOWELL ALLEN CLINIC, a Professional Corporation, SAINT THOMAS NETWORK, SAINT THOMAS HEALTH, and SAINT THOMAS HOSPITAL<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 13C417<br>)   Jury Demand<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## ST. THOMAS OUTPATIENT NEUROSURGICAL CENTER, LLC'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Tennessee Rules of Civil Procedure, St. Thomas Outpatient Neurosurgical Center, LLC ("STOPNC"), by and through undersigned counsel, provides the following responses to Plaintiff Wayne Reed's First Set of Interrogatories.

2. Identify each communication (including face-to-face, telephone, email, or other communications) between NECC (including its agents, employees or representatives) and Saint Thomas Neurosurgical (including its agents, employees or representatives). For each communication identified, please provide the following information:

    a) the names, job titles, and contact information for each person involved in the communication;

    b) the date, time, length, mode and location of each communication or discussion;

    c) whether any notes, memoranda, recordings, writings or other records were kept of any of those conversations or communications; and

    d) state as specifically as possible what each party to the communication or conversation said and state what actions Saint Thomas Neurosurgical took, if any, as a result of each communication or conversation.

RESPONSE:

**OBJECTION. Counsel for STOPNC objects to this Interrogatory on the grounds that it is overbroad. Furthermore, Counsel for STOPNC objects to this Interrogatory on the grounds that it seeks information privileged from discovery by the Tennessee Peer Review Law of 1967, Tenn. Code Ann. § 63-6-219 and/or the Tennessee Patient Safety and Quality Improvement Act of 2011, Tenn. Code Ann. §§ 63-1-150, 68-11-272. Specifically, STOPNC's discussions with its pharmacist consultant and any outside pharmacist regarding NECC are privileged from discovery and protected from use in this lawsuit as communications with a quality improvement committee. Subject to and without waiving said objections, the Defendant states that the following are believed to be the communications with NECC:**

4

### 2010 FASCA Conference in Franklin, TN

Debra Schamberg spoke with John Notarianni as described in Response to Interrogatory #1. Ms. Schamberg remembers few specific details about the conversation, but she does recall specifically discussing Omnipaque with Mr. Notarianni. Ms. Schamberg can be contacted through counsel for STOPNC. STOPNC's last known contact information for Mr. Notarianni is below. Ms. Schamberg did not make any record of the conversation. Ms. Schamberg believes she gave a business card to Mr. Notarianni.

John L. Notarianni
Regional Sales Manager
Medical Sales Management
Representing: NECC
Cell Phone: (508)454-0779
jnotarianni@medicalsalesmgmt.com

### Periodic Calls from Notarianni

Mr. Notarianni called every couple months to see whether NECC could offer anything to STOPNC. Ms. Schamberg did not make any records of these calls or take any actions based on them.

### Phone call on May 4, 2011

Mr. Notarianni contacted Ms. Schamberg by telephone on May 4, 2011, as he typically would every couple months, to solicit STOPNC's business. The substance of the conversation is covered in Response to Interrogatory # 1.

### Emails in May & June 2011

Ms. Schamberg and Mr. Notarianni exchanged emails through May and June 2011 negotiating on pricing. The emails have been produced in STOPNC's Responses to the Plaintiff's First Set of Requests for Production and speak for themselves regarding the content of the conversations. Ms. Schamberg did not create any additional records regarding the emails. See Response to Interrogatory # 1 for additional information.

### Second Phone Call

It appears from the emails described above that a second phone conversation took place between Ms. Schamberg and Mr. Notarianni regarding pricing of the MPA. Ms. Schamberg made notes on the pricing guide initially provided by Mr. Notarianni. Those handwritten notes have been produced in STOPNC's Responses to Plaintiff's First Set of Requests for Production and speak for themselves. See Response to Interrogatory # 1 for additional information.

### June 10, 2011 Email

On June 10, 2011, Debra emailed Mr. Notarianni to initiate the process of placing an order with NECC. The email has been produced in STOPNC's Responses to Plaintiff's First Set of Requests for Production, and it speaks for itself. See Response to Interrogatory # 1 for additional information.

### June 10, 2011 Phone Call

On June 10, 2011, Mr. Notarianni called Ms. Schamberg to discuss the mechanics of placing an order. The credit application and order have been produced in STOPNC's Responses to Plaintiff's First Set of Requests for Production and speak for themselves. No additional records were created by Ms. Schamberg as a result of the call. See Response to Interrogatory # 1 for additional information.

### 2011 FASCA Conference

On September 15 or 16, 2011, Ms. Schamberg attended a FASCA conference in Gatlinburg, TN. Ms. Schamberg recalls briefly speaking with Mario Giamei, Mr. Notarianni's successor sales rep at NECC, but she does not recall anything specific about the conversation. Below is the most recent contact information STOPNC has for Mr. Giamei.

Mario G. Giamei Jr.
Regional Sales Manager
NECC (New England Compounding Center)
Toll Free: (800) 994-6322
Cell Phone: (508) 454-0219
mgiamei@medicalsalesmgmt.com

### Betamethasone Orders

On or about December 12, 2011, Ms. Littleton contacted Mr. Giamei for a price quote on a 2 mL vial of preservative-free betamethasone injectable steroid. Mr. Giamei stated that NECC could provide it for $18 per 2mL vial or that NECC could provide it for $16 per 2 mL vial for orders of at least 100 vials.

Ms. Littleton made some notes during or after the call, which have been produced in STOPNC's Responses to Plaintiff's First Set of Requests for Production. The notes speak for themselves.

Ms. Littleton placed an order for ten (10) 2 mL vials of betamethasone on December 12, 2011. STOPNC continued to order betamethasone from NECC up until the fungal meningitis outbreak.

Ms. Littleton can be contacted through counsel for STOPNC.

### Faxed Orders

Ms. Littleton faxed the orders to NECC. NECC called Ms. Schamberg and confirmed receipt of the orders. No records were made of those calls, and STOPNC took no actions as a result of the calls. Ms. Schamberg does not remember the name of the individual who called to confirm receipt of the orders. The order forms have been produced in STOPNC's Responses to Plaintiff's First Set of Requests for Production and speak for themselves.

### Phone Calls in February 2012

On February 9, 2012, Ms. Schamberg contacted Mr. Giamei, to determine whether NECC could put different colored tops on the 2 mL vials of MPA to help distinguish them from the 1 mL vials.

On February 10, 2012, Mr. Giamei called Ms. Schamberg and informed her that he was working on her request. Mr. Giamei stated that another facility had made a similar request.

On February 13, 2012, Mr. Giamei called Ms. Schamberg and informed her that it would cost $13.50 per 2 mL vial to change the color of the vial cap.

7

> Ms. Schamberg made notes from all three calls which have been produced in STOPNC's Responses to Plaintiff's First Set of Requests for Production. The notes speak for themselves.
>
> STOPNC did not place any orders for 2 mL MPA from NECC after February 15, 2012.

### Conversation about needing 500 vials to keep pricing

> On April 3, 2012, Ms. Littleton placed an order for 400 1mL vials of MPA. Mr. Giamei contacted Ms. Schamberg and informed her that in order to maintain pricing at $6.50 per vial, STOPNC needed to order at least 500 vials.
>
> Ms. Schamberg made a handwritten note regarding the call which has been produced in STOPNC's Responses to Plaintiff's First Set of Requests for Production. The note speaks for itself.
>
> On April 9, 2012, Ms. Littleton resubmitted the order for 500 vials, and STOPNC ordered 500 vials from that point on.

### June 20, 2012 Phone Call and Email with Julia Kinkel re: Omnipaque

> On June 20, 2012, Ms. Schamberg contacted NECC to inquire about NECC providing Omnipaque to STOPNC. Ms. Schamberg spoke with Julia Kinkel. Ms. Kinkel emailed advertising information regarding Omnipaque and Isovue to Ms. Schamberg. The email has been produced in STOPNC's Responses to Plaintiff's First Interrogatories and speaks for itself.

### Patient Lists

> Mr. Giamei stopped by STOPNC in early to mid-2012 and spoke with Ms. Schamberg. He informed Ms. Schamberg that NECC needed STOPNC to submit a list of patients with each order. Debra informed Mr. Giamei that STOPNC would not be able to predict which patients would actually receive the MPA, and Mr. Giamei said that that was fine because NECC just needed a list of patient names. Mr. Giamei stated that the requirement came from the Massachusetts Board of Pharmacy.

8

> Ms. Schamberg consulted with Dr. Culclasure and a pharmacist prior to sending the list of names.
>
> Ms. Schamberg spoke with receptionist Sherri DeZwaan to determine the best way for STOPNC to provide such a list. Ms. DeZwaan suggested printing off the daily patient schedule. For the next several orders, when STOPNC needed to order MPA, Ms. Littleton asked Ms. DeZwaan to print off a list of names, which she did. On at least one occasion, Ms. DeZwaan was not at STOPNC when Ms. Littleton placed an order. Ms. Littleton submitted the order to NECC without a list, and NECC filled the order. The lists have been produced in STOPNC's Responses to Plaintiff's First Set of Requests for Production with patient names and addresses redacted.

September 20, 2012 Call to NECC regarding Lot Numbers and Sterility Testing

> Cindy McClendon called Mr. Giamei on September 20, 2012 (along the suppliers of other medications used during epidural steroid injections) at Dr. Culclasure's request, to check and see whether there had been any other reports of patients with meningitis. Mr. Giamei emailed Ms. McClendon sterility testing results for all three recalled lots to Ms. McClendon. The email and testing results have been produced in STOPNC's Responses to Plaintiff's First Set of Requests for Production. Ms. McClendon can be contacted through counsel for STOPNC.

Mr. Giamei's visit to STOPNC in September 2012

> On September 24, 2012, Mr. Giamei was on his way to a FASCA conference in Memphis and stopped in at STOPNC. Ms. Schamberg and Dr. Culclasure spoke with Mr. Giamei about the fungal meningitis outbreak. Mr. Giamei was adamant that the problem could not have come from NECC. He assured Dr. Culclasure and Ms. Schamberg that "this could not possibly be coming from us." Mr. Giamei stated that NECC complied with applicable sterility procedures and had a state-of-the-art facility. He even invited Ms. Schamberg and Dr. Culclasure to Massachusetts for a tour.

## VERIFICATION

**STATE OF TENNESSEE**   )
                         )
**COUNTY OF DAVIDSON**   )

I, John W. Culclasure, M.D., Medical Director of Saint Thomas Outpatient Neurosurgical Center, LLC swear and affirm that:

1. I am the Medical Director of STOPNC.

2. I have read the said interrogatories, and the foregoing answers thereto are true according to the best of my knowledge, information, and belief.

SAINT THOMAS OUTPATIENT
NEUROSURGICAL CENTER, LLC

By: John W. Culclasure, M.D.

Its: Medical Director

Sworn to and subscribed before me this 30th day of April, 2013.

_____
**Notary Public**

My Commission Expires:

March 14, 2017

[Notary Seal: CHRISTA MCCLASKEY, STATE OF TENNESSEE NOTARY PUBLIC, MONTGOMERY COUNTY]

39

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on the following via hand delivery and Email, on this 30th day of April, 2013:

William D. Leader
George H. Nolan
Leader, Bulso & Nolan
414 Union Street, Suite 1740
Nashville, TN  37219
*Attorneys for Plaintiff*

William H. Lassiter, Jr.
John Overton Belcher
Lassiter Tidwell & Davis
150 4th Avenue North, Ste. 1850
Nashville, TN  37219
*Attorneys for Plaintiff*

Lela M. Hollabaugh
Amy D. Hampton
Bradley Arant Boult Cummings, LLP
1600 Division Street, Suite 700
Nashville, TN  37203
*Attorneys for Defendant Saint Thomas Hospital*

Mary M. Bers
Joseph Ahillen
Office of the Attorney General
PO Box 20207
Nashville, TN  37202-0207
*Attorneys for State of Tennessee*

_____Chris J. Tardio_____ // by permission // MHC
**Chris J. Tardio**

40