UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | )  |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) ) ) ) |
| This Document Relates to: All Cases | MDL No. 1:13-md-2419-FDS |

**LIMITED OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO PLAINTIFFS' STEERING COMMITTEE'S MOTION FOR ENTRY OF CASE MANAGEMENT ORDER ESTABLISHING ASSESSMENT PROCEDURES TO FUND COMMON BENEFIT ACCOUNT**

The Official Committee of Unsecured Creditors (the "Official Committee")[1] of New England Compounding Pharmacy, Inc. d/b/a New England Compounding Center ("NECC"), by and through its undersigned counsel, respectfully objects on a limited basis to the *Plaintiffs' Steering Committee's* ("PSC") *Motion for Entry of Case Management Order Establishing Assessment Procedures to Fund Common Benefit Account* [Dkt. No. 790] (the "CBF Motion") and accompanying memorandum of law [Dkt. No. 791].

1. Through the CBF Motion, the PSC seeks to establish procedures to fund a common benefit fund account (the "CBF Account"), specifically via an assessment of eight (8) percent to be held back from every recovery by plaintiffs in these MDL proceedings and other proceedings. The Official Committee does not here take a position on the central aspect of the CBF Motion, *i.e.*, whether there should be an MDL common benefit assessment approved against tort victim recoveries (which the Official Committee understands is proposed to be part

---

[1] The following creditors currently serve as members of the Official Committee: (1) Katrina Eldreth; (2) Meghan A. Handy (3) Brenda Bansale; (4) Robert Cole; (5) Victor Davis; (6) Kathleen Distler; (7) Danny Swartzell; (8) Bertram Walker Bryant, Jr.; and (9) NStar Electric Company.  With respect to each of the eight individual members of the Official Committee, all of whom are asserting personal injury or wrongful death claims against NECC, he or she is represented on the Official Committee by his or her attorney.

of and not in addition to the attorneys' fee agreed-to between the plaintiff and his or her lawyer) and what the amount of that assessment should be.[2]  Rather, the Official Committee submits this Limited Objection for the limited purpose of ensuring that any such assessment does not apply to any property of NECC's bankruptcy estate.

2. The PSC's proposed *MDL Order No. __ Establishing Assessment Procedures to Fund Common Benefit Account* (the "Proposed CBF Order"), attached to the CBF Motion, provides that

> Participating Parties[3] who, on or after April 9, 2013, settle, compromise, dismiss, or reduce the amount of a claim against Defendants, with or without trial, with or without that claim being filed, or recover a judgment for monetary damages or other monetary relief, including compensatory and punitive damages, with respect to any NECC-related claims against Defendants, ***including through any settlement related to any bankruptcy proceedings***, are subject to an assessment of the gross monetary recovery on the claims as provided [herein].

Proposed CBF Order at 3 (emphasis added).[4]    By seeking an assessment on the proceeds of settlements entered into by the chapter 11 trustee of NECC's bankruptcy estate (the "Trustee"), the PSC impermissibly seeks to seize or otherwise interfere with property of the NECC estate without the required leave of the Bankruptcy Court to do so.

3. As this Court is aware, the Trustee has reached preliminary settlements with

---

[2]  Although the Official Committee will not be taking a position on these issues, certain of it members' representatives, in their capacity as plaintiffs' attorneys in the MDL proceedings, will be submitting a substantive pleading in connection with the CBF Motion, and they also will be submitting a proposed order that may contain additional suggested red-line changes than the proposed order being submitted by the Committee with this pleading.

[3]  "Participating Parties" is defined as "all plaintiffs and their counsel of record in any MDL 2419 Cases . . . or those in non-MDL cases who elect to participate in this agreement"

[4]  The Proposed CBF Order also requires Defendants (as defined therein) to inform the PSC ten (10) days before paying any amounts to, *inter alia*, 1) escrow accounts intended to benefit plaintiffs in the MDL or Participating Parties or 2) any other account intended to hold funds for the purposes of distributing funds to plaintiffs in the MDL or Participating Parties (among others).  See Proposed CBF Order at 4-5.

NECC's insiders and insurers,[5] who will make significant contributions to the NECC's estate to benefit NECC's creditors, including primarily, but not exclusively, the victims of NECC's tainted steroidal injections, in exchange for releases and injunctions in aid thereof, to be embodied in and effectuated pursuant to a Chapter 11 Plan (the "Plan").  See Preliminary Settlement Agreements Establish $100M Fund for Victims of Tainted Steroids Traced to NECC, Reuters (Dec. 23, 2013).[6]  As disclosed at the status conference held before this Court on January 10, 2014, the Trustee and the Official Committee are diligently seeking to finalize the documentation of these preliminary agreements with the settling parties.  See Transcript of Proceedings Held Jan. 10, 2014 at 24:23-25:3.  It is anticipated that additional settlements will be obtained with other parties, through mediation or otherwise, that will be paid to the Trustee for the chapter 11 estate under similar terms, *i.e.*, in exchange for plan releases and injunctions in aid thereof.

4. Once executed, the settlement agreements will first need to be approved on an initial basis by the Bankruptcy Court administering NECC's chapter 11 case, pursuant to Federal Rule of Bankruptcy Procedure 9019, after which it is contemplated that the settlement proceeds will be paid to the Trustee and escrowed.  The funds will remain escrowed until the time when the settlement agreements are again approved by the Bankruptcy Court, this time in connection with its confirmation of the Plan, with the Plan containing the releases and injunctions in aid thereof that are material terms of the settlements.  The Plan, in turn, will provide for the creation

---

[5] For the avoidance of any confusion, the Official Committee notes that these settlements compromise the NECC estate's claims against the relevant insiders and insurers, and do not comprise or otherwise affect any individual plaintiffs' claims against the NECC estate, and it is contemplated that the plaintiffs' claims will be resolved pursuant to a distribution (claims resolution) scheme applying to a "Tort Claimants' Trust" that will be created as part of the Chapter 11 Plan and funded on or after the effective date of the Confirmation Order confirming and implementing the Plan.

[6] Available at http://www.reuters.com/article/2013/12/23/ma-necc-settlement-idUSnPnNEg2mBD+ 163+ PRN20131223.

of a Tort Claimants' Trust and the release of the certain (and likely a material sum of) monies obtained from these settlements from the NECC estate into that Trust for distribution to victims. Unless and until that transfer occurs, any monies delivered to and escrowed with the Trustee pursuant to such settlements will remain property of the NECC estate under the supervision of the Bankruptcy Court. See In re Darden, 474 B.R. 1, 7-8 (Bankr. D. Mass. 2012) (settlement proceeds in which the debtor acquires a legal and/or equitable interest during the course of its bankruptcy case constitute property of the estate). It is likely, under the present circumstances, that most of these monies will be used to fund the Tort Claimants' Trust; nevertheless, certain portions of those monies will be used to pay, *inter alia*, the administrative expenses of the estate and the allowed claims of non-tort creditors.

5. The Bankruptcy Code governs, and limits, the compensation of professionals from funds constituting property of the estate. See 11 U.S.C. § 328. Compensation is subject to the Bankruptcy Court's approval, as well as for notice, hearing, and an opportunity for parties to be heard. In addition, the automatic stay prohibits, *inter alia*, "any act to obtain possession of property of the estate or of property of the estate or to exercise control over property of the estate." See 11 U.S.C. § 362(a)((3). Applications for relief from the stay are likewise subject to the Bankruptcy Court's approval. As such, to the extent the PSC seeks an assessment on and compensation from estate property, the appropriate procedure is to apply to the Bankruptcy Court, either for compensation as an estate professional or for relief from the automatic stay. Of course, the Committee reserves its rights in connection with any such application.

6. Alternatively, the PSC could, at the proper time (after confirmation of that Plan), seek to place a levy for an MDL common benefit assessment or holdback on that part of those monies that have been transferred out of the estate pursuant to the Plan exclusively for payment

to tort claimants (and therefore no longer constitute "property of the estate"), *i.e.*, on monies in or distributions from the Tort Claimants' Trust.[7] The Committee also reserves its rights in connection any such application.

7.  As such, the Official Committee respectfully requests that the Proposed CBF Order be modified to clarify that the percentage assessment does not apply to property of the estate, including the proceeds of any settlements (escrowed or otherwise) related to bankruptcy proceedings that will be paid to the Trustee and into the estate, so long as the proceeds are and remain property of the estate.

8.  The Official Committee also respectfully draws this Court's attention to a letter agreement dated June 6, 2013 (together with exhibits thereto, the "June 6 Letter", relevant portions of which are attached hereto as Exhibit A) entered into by Lead Counsel to the PSC and the Official Committee. In the June 6 Letter, Lead Counsel and the Official Committee each agreed to seek this Court's approval of a proposed case management order (the "Proposed CMO"), which was attached as Exhibit A to the June 6 Letter. The Proposed CMO provided in pertinent part that

> [t]he Plaintiffs' Steering Committee will file a motion (the "Common Fund Motion") requesting a common fund fee in this Court (the "Common Fund"). Common Fund participants may include members of the Plaintiffs' Steering Committee and any lawyer performing services for the benefit of multiple tort victims on reasonable terms, including work connected to resolution pursuant to a chapter 11 plan in the Chapter 11 Case, whose common benefit work is made available to the Plaintiffs' Steering Committee and the Official Committee. ***Common Fund participants may include member representatives serving on the Official Committee, to the extent the services they perform are for the common benefit of multiple tort victims***.

---

[7] The Official Committee also notes that the Motion purports only to assess monies paid to plaintiffs or "Participating Parties", but the Proposed CBF Order does not limit assessments only to monies paid to plaintiffs or "Participating Parties."

Proposed CMO at 17 (emphasis added).

9. The Official Committee's members' representatives have been actively engaged in work for the common benefit of multiple tort victims, including, without limitation, through their leadership and/or participation in the ongoing mediation processes being supervised by this Court. However, as currently drafted, the CBF Motion and Proposed CBF Order does not expressly incorporate Lead Counsel's agreement with the Official Committee, nor does it expressly contemplate the Official Committee members' representatives' participation in any distributions from the CBF Account. The Official Committee respectfully requests that the Proposed CBF Order be corrected to provide for the Committee Members' representatives' ratable participation in any distributions from any CBF Account approved by this Court, as previously agreed-to by the PSC.

10. A revised Proposed CBF Order, reflecting, in redline, the modifications requested by the Official Committee herein, is attached hereto as <u>Exhibit B</u>.

*[Remainder of this page intentionally left blank]*

Dated: January 31, 2014
      Boston, Massachusetts

Respectfully submitted,

**BROWN RUDNICK LLP**

By: /s/ David J. Molton
David J. Molton, Esq.
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801
dmolton@brownrudnick.com

and

William R. Baldiga, Esq.
Kiersten A. Taylor, Esq.
One Financial Center
Boston, Massachusetts 02111
Telephone: (617) 856-8200
Facsimile: (617) 856-8201
wbaldiga@brownrudnick.com
ktaylor@brownrudnick.com

*Counsel to the Official Committee of Unsecured Creditors of New England Compounding Pharmacy, Inc.*

**CERTIFICATE OF SERVICE**

    I, Carol S. Ennis, hereby certify that on January 31, 2014, I caused a copy of the foregoing Limited Objection to be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants, by first class mail, postage prepaid.

Dated: January 31, 2014
        Boston, Massachusetts                                   /s/ Carol S. Ennis
                                                                           Carol S. Ennis

61590713 v9-WorksiteUS-030764/0001