UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | )<br>)<br>)<br>) MDL No. 1:13-md-2419-FDS<br>)<br>) |
| This Document Relates to:<br>    All Cases | )<br>)<br>) |

**LIMITED OBJECTION OF CHAPTER 11 TRUSTEE OF NEW ENGLAND
COMPOUNDING PHARMACY, INC. TO PLAINTIFFS' STEERING COMMITTEE'S
MOTION FOR ENTRY OF CASE MANAGEMENT ORDER ESTABLISHING
ASSESSMENT PROCEDURES TO FUND COMMON BENEFIT ACCOUNT**

Paul D. Moore, the Chapter 11 Trustee ("Trustee") of New England Compounding

Pharmacy, Inc. ("NECC"), hereby objects on a limited basis to the Plaintiffs' Steering

Committee's ("PSC") Motion for Entry of Case Management Order Establishing Assessment

Procedures to Fund Common Benefit Account ("Motion") [Docket No. 790] and accompanying

memorandum [Docket No. 791], and respectfully submits as follows:

## I.   INTRODUCTION AND SUMMARY OF OBJECTION

1.    The Motion (at page 1) seeks to establish a common benefit fund from "every

recovery by plaintiffs in the MDL No. 2419 and Participating Parties in non-MDL cases."  On its

face this is not objectionable.  However, the PSC's proposed order goes farther, and seeks to

establish the common benefit fund from the proceeds payable not to plaintiffs and "Participating

Parties"[1] but instead from funds recovered by the Trustee:

> Participating Parties who, on or after April 9, 2013, settle,
> compromise, dismiss, or reduce the amount of a claim against
> Defendants, with or without trial, with or without that claim

---

[1]    "Participating Parties" is defined as "all plaintiffs and their counsel of record in any MDL
2419 Cases . . . or those in non-MDL cases who elect to participate in this agreement."

> being filed, or recover a judgment for monetary damages or other
> monetary relief, including compensatory and punitive damages,
> **_with respect to any NECC-related claims against Defendants,_**
> **_including through any settlement related to any bankruptcy_**
> **_proceedings,_** are subject to an assessment of the gross monetary
> recovery on the claims as provided [herein].

Proposed *MDL Order No. __ Establishing Assessment Procedures to Fund Common Benefit Account* at 3 (emphasis added).  Such settlement funds are property of NECC's bankruptcy estate, available for distribution to all of its creditors, including administrative and general unsecured creditors, including holders of personal injury claims.  The Motion is overbroad to the extent the PSC seeks to assess monies other than funds paid directly to plaintiffs if, as and when those funds are paid to plaintiffs pursuant to NECC's plan.  It invades the jurisdiction of the bankruptcy court with respect to property of NECC's bankruptcy estate, and violates the automatic stay provisions of the Bankruptcy Code to assess property that is property of NECC's bankruptcy estate, rather than just the funds distributed by the Trustee to personal injury claimants.

2.      Moreover, it is unnecessary for any portion of the settlement funds to be segregated, since, as property of NECC's bankruptcy estate under Section 541 of the Bankruptcy Code, those funds are not going anywhere prior to confirmation of the Trustee's contemplated chapter 11 plan (the "Plan") without bankruptcy court approval.  After confirmation of a plan, the portion of the bankruptcy estate's property dedicated solely to payment of personal injury claimants can be assessed if that is this Court's preferred method of compensating members of the PSC.  Indeed, the settlements contemplate that payment will be due upon entry by the bankruptcy court of the order approving the settlement, and distributed in accordance with the Plan and the bankruptcy court's related confirmation order.

DM3\2804144.6

## II.   STATEMENT OF REASONS WHY THE MOTION SHOULD BE DENIED

### A.   *The Trustee's Contemplated Settlements With NECC's Insiders, Affiliates and Insurers are Property of NECC's Bankruptcy Estate, and the Bankruptcy Court Has Exclusive Jurisdiction Over Property of the Estate*

3.       As this Court is aware, the Trustee has reached preliminary settlements with NECC's insiders and insurers,[2] who will make significant contributions to NECC's estate to benefit NECC's creditors, including primarily, but not exclusively, the victims of NECC's allegedly tainted steroidal injections, in exchange for releases and injunctions in aid thereof, to be embodied in and effectuated pursuant to the Plan. *See Framingham Compounding Pharmacy Owners, Insurers Tentatively Agree To Contribute More Than $100m To Fund For Victims, Creditors.*[3]  As disclosed at the status conference held before this Court on January 10, 2014, the Trustee and the Official Committee of Unsecured Creditors ("Committee") are diligently seeking to finalize the documentation of these preliminary agreements with the settling parties.  *See Transcript of Proceedings Held Jan. 10, 2014 at 24:23-25:3.*  It is anticipated that additional settlements will be obtained with other parties, through mediation or otherwise, that will be paid to the Trustee for the chapter 11 estate under similar terms, *i.e.*, in exchange for plan releases and injunctions in aid thereof.

4.       Once executed, the settlement agreements will first need to be approved on an initial basis by the Bankruptcy Court administering NECC's chapter 11 case, pursuant to Federal

---

[2]     These settlements compromise the NECC estate's claims against the relevant insiders and insurers, and do not comprise or otherwise affect any individual plaintiffs' claims against the NECC estate, and it is contemplated that the plaintiffs' claims likely will be resolved pursuant to a distribution (claims resolution) scheme applying to a "Tort Claimants' Trust" that will be created as part of the Chapter 11 Plan and funded on or after the effective date of the Confirmation Order confirming and implementing the Plan.

[3]     Available at http://www.boston.com/news/local/massachusetts/2013/12/23/meningitis/o5e3zbofITVcicPdDvgfpI/story.html.

Rule of Bankruptcy Procedure 9019, after which it is contemplated that the settlement proceeds

will be paid to the Trustee and escrowed.  The funds will remain escrowed until the time when

the settlement agreements are again approved by the Bankruptcy Court, this time in connection

with its confirmation of the Plan, with the Plan containing the releases and injunctions in aid

thereof that are material terms of the settlements.  The Plan, in turn, likely will provide for the

creation of a Tort Claimants' Trust and the release of the certain monies obtained from these

settlements from the NECC estate into that Trust for distribution to creditors holding allowed

claims for personal injury or death.  Unless and until that transfer occurs, any monies delivered

to and escrowed with the Trustee pursuant to such settlements will remain property of the NECC

estate under the supervision of the Bankruptcy Court.  *See In re Darden*, 474 B.R. 1, 7-8 (Bankr.

D. Mass. 2012) (settlement proceeds in which the debtor acquires a legal and/or equitable

interest during the course of its bankruptcy case constitute property of the estate).[4]

     5.       Thus, upon consummation of the settlement, the funds to be paid by the settling

defendants will remain property of the NECC bankruptcy estate, under the direction and control

of the bankruptcy court and subject to the exclusive jurisdiction of the bankruptcy court pursuant

to 28 U.S.C. § 1334(e).  NECC's creditors' claims will continue unaffected by the settlement,

---

[4]      11 U.S.C. § 541 defines what is and what is not property of the estate.  Section 541(a)(2) provides that estate property "is comprised of all of the following property, wherever located and by whomever held. . . (2) [With exceptions not relevant here], all legal or equitable interests of [NECC] in property as of the commencement of [NECC's bankruptcy case]."  The Trustee's fraudulent transfer claims that are being settled are property of the estate.  *Morley v. Ontos, Inc. (In re Ontos, Inc.)*, 478 F.3d 427 431 (1st Cir. 2007).  The Trustee's claims for harm caused by the settling defendants to NECC by their pre-bankruptcy conduct also are property of the estate.  *Id.; Walsh v. Quabbin Timber*, 199 B.R. 224, 229 (D. Mass. 1996) ("a cause of action is a property right which passes to the trustee in bankruptcy. . . ."); *see, e.g., Hathaway v. Huntley,* 284 Mass. 587, 591 (1933) (claim against corporate insider "is an asset of the corporation and passed to its trustee in bankruptcy").

DM3\2804144.6

until payment of those claims occurs pursuant to confirmation of the Plan.[5]  *Accord Morley v. Ontos, Inc. (In re Ontos, Inc.),* 478 F.3d 427, 430 (1st Cir. 2007) (court "importantly" distinguishes bankruptcy trustee settlement of estate claims against third parties from settlement of claims held by creditors).

6.     The Bankruptcy Code contains very explicit and strict provisions regarding the payment of professionals from property of the bankruptcy estate.  Compensation is subject to the Bankruptcy Court's approval, after notice, hearing, and an opportunity for parties to be heard.  *See* 11 U.S.C. § 330; Fed. R. Bankr. P. 2002, 2016.  In addition, the automatic stay prohibits, *inter alia,* "any act to obtain possession of property of the estate or of property of the estate or to exercise control over property of the estate."  *See* 11 U.S.C. § 362(a)(3).  Applications for relief from the stay are likewise subject to the Bankruptcy Court's approval.  *See* 11 U.S.C. § 362(d).  As such, to the extent the PSC seeks an assessment on and compensation from estate property, the appropriate procedure is to apply to the Bankruptcy Court, either for compensation as an estate professional or for relief from the automatic stay.  In short, by seeking an assessment on the proceeds of settlements entered into by the Trustee, the PSC impermissibly seeks to seize or otherwise interfere with property of the NECC estate (and with the bankruptcy court's jurisdiction of property of the estate), in violation of the automatic stay and without the required leave of the Bankruptcy Court to do so.

7.     The defects in the Motion can be cured, however.  For example, the PSC could seek, at the proper time (after confirmation of the Plan), to place a levy for an MDL common

---

[5]     Federal Rule of Bankruptcy Procedure 3021 makes clear that distribution to creditors whose claims have been allowed "shall" be made "after a plan is confirmed."  Thus, there is no need to segregate any portion of the settlement proceeds as the proceeds will remain undistributed absent bankruptcy court approval pending confirmation of the Trustee's chapter 11 plan.

DM3\2804144.6

benefit assessment or holdback on that part of those monies that have been transferred out of the estate pursuant to the Plan exclusively for payment to tort claimants (and therefore no longer constitute "property of the estate"), *i.e.*, on monies in or distributions from the Tort Claimants' Trust.[6]  Alternatively, the proposed order could be modified to clarify that the percentage assessment will not be made upon and does not apply to property of the estate, including the proceeds of any settlements (escrowed or otherwise) related to bankruptcy proceedings that will be paid to the Trustee and into the estate, so long as the proceeds are and remain property of the estate.  However, as structured, the Motion seeks relief that is improper and premature, and thus as structured, the Motion should be denied.

**B.    *The Authorities Cited in the Motion Are Distinguishable***

8.    None of the authorities relied upon by the PSC allow a district court to establish a common fund from property of a bankruptcy estate over which a bankruptcy court has exclusive jurisdiction.  Moreover, the authorities relied upon by the PSC make clear that a common fund may be created only from funds recovered by a creditor for the common benefit of all creditors, and not from funds recovered by a different party – the Trustee – by settlement of claims by the Trustee.  For example, in *Trustees v. Greenough*, 105 U.S. 527 (1881), a railroad case, a bondholder brought suit against a trustee of a trust holding collateral securing the bonds.  The bondholder prevailed, and established a fund from which other, similarly situated bondholders also benefited.  The prevailing party sought payment of costs and fees in excess of amounts ordinarily taxed as costs in litigation, and sought recovery of these amounts from the fund created in the litigation.  The Supreme Court held that the bondholder could be paid the

---

[6]    As noted, the Motion purports only to assess monies paid to plaintiffs or "Participating Parties" but the proposed order does not limit assessments only to monies paid to plaintiffs or "Participating Parties."

DM3\2804144.6

additional amounts from the fund created by the prevailing bondholder.  Since the fund was

created by the prevailing bondholder's efforts, who was acting like a trustee, and at the

prevailing bondholder's sole cost and expense, and benefited all of the bondholders, the Court

reasoned that it was equitable that the prevailing bondholder's fees and expenses, in addition to

the narrowly allowed costs taxed in litigation, should be paid from the fund.[7]  Here, the Trustee,

and not an individual creditor, is acting as a trustee for the benefit of NECC's bankruptcy estate.

9.     Similarly, in *Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116 (1885),

another case heavily relied upon by the PSC, only where a creditor actually recovered funds for

the benefit of others was the creditor entitled to the establishment of a common fund for fees and

expenses.  There, a creditor of a predecessor railroad sued the successor railroad to establish an

equitable lien on the property of the successor to satisfy the debts of the predecessor.  The

successor failed and plaintiffs forced a sale of the successor's assets, creating a fund that was

---

[7]     The Court reasoned

> As the point made by the appellants, that the complainant is only a
> creditor, seeking satisfaction of his debt, and cannot be regarded in
> the light of a trustee, and therefore is not entitled to an allowance
> for any expenses or counsel fees beyond taxed costs as between
> party and party, a great deal may be said.  In ordinary cases the
> position of the appellants may be correct. But in a case like the
> present, where the bill was filed not only in behalf of the
> complainant himself, but in behalf of the other bondholders having
> an equal interest in the fund; and where the bill sought to rescue
> that fund from waste and destruction arising from the neglect and
> misconduct of the trustees, and to bring it into court for
> administration according to the purposes of the trust: and where all
> this has been done; and done at great expense and trouble on the
> part of the complainant; and the other bondholders have come in
> and participated in the benefits resulting from his proceedings, -- if
> the complainant is not a trustee, he has at least acted the part of a
> trustee in relation to the common interest.

105 U.S. at 531-32.

brought into the court by the diligence of the plaintiff's efforts.  Plaintiff sought recovery of costs and fees associated with bringing suit on behalf of other creditors of the predecessor.  The Court held they were entitled to those costs and fees, as the sale proceeds were "brought under the direct control of the court to be administered for all entitled to share the fruits of the litigation." *Id.* at 124.  Unlike the settlement proceeds to be paid to the Trustee, the suit in *Pettus* "was an equitable levy [by an individual plaintiff] upon the property, and the lien arising therefrom remained until discharged by order of the court."  *Id.*

10.     *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161 (1939), cited by the PSC in support of the Motion, similarly is distinguishable from this case.  In *Sprague*, a creditor of an insolvent bank successfully sued to establish a lien in her favor on the funds in the hands of the bank's receiver.  The creditor argued that by vindicating her claim to a lien, she had established as a matter of law the right to recovery of similarly situated creditors.  The creditor sought reasonable counsel fees and litigation expenses to be paid out of the proceeds of the liens in favor of these other creditors.  The Supreme Court held that the district court had equitable power to award such costs, and remanded to the district court for the court to determine whether to exercise that power.  In this case, neither the PSC nor any other entity obtained a final court order that establishes a right to recovery for any other entity.  The Trustee, not the PSC, will settle claims to recover funds, but the settlement agreement by its terms makes clear none of the settling defendants are deemed to admit liability.

11.     *In re Air Crash Disaster at Florida Everglades*, 549 F.2d 1006 (5th Cir. 1977), also heavily relied upon by the PSC, is equally inapposite.  A small group of plaintiff's attorneys who were in a position in that case similar to the position of the members of the PSC sought fees from amounts payable to other plaintiffs' counsel not members of the committee.  The court held

8

"that the district judge had the power to award compensation to the Committee to be paid by other plaintiff counsel out of the fees they were entitled to receive." *Id.* at 1008. Here, the PSC does not seek to establish the common fund from fees other plaintiff's counsel are entitled to receive, but instead asks this Court to invade property of the bankruptcy estate subject to the exclusive jurisdiction of the bankruptcy court, specifically, proceeds of settlements of claims held exclusively by the Trustee.

12.     The PSC cites a number of cases for the proposition that the First Circuit has adopted the common fund doctrine. However, nothing in those First Circuit cases authorizes a district court to divest the bankruptcy court of property of a bankruptcy estate over which the bankruptcy court has exclusive jurisdiction. For example, *In re San Juan DuPont Plaza Hotel Fire Litigation*, 111 F.3d 220 (1st Cir. 1997) had nothing to do with property of a bankruptcy estate, but held only that members of the plaintiff's steering committee were culpable for failing to alert the court that certain plaintiffs' attorneys participating in the common fund had overcharged for their services. The First Circuit in *In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295 (1st Cir. 1995) and *In re Nineteen Appeals Arising out of San Juan Dupont Plaza Hotel Fire Litig.*, 982 F.2d 603 (1st Cir. 1992), reversed the awards from a common fund to various attorneys because it found the methodology for calculating the awards improper.

## III.   <u>CONCLUSION</u>

13.     The Motion and the relief the PSC requests is overbroad (it seeks to assess property beyond that paid to plaintiffs and Participating Parties), improper (it would divest the bankruptcy court of its exclusive jurisdiction of property of the estate, and it violates the automatic stay by seeking to take possession of property of the estate) and premature (unless the

bankruptcy court orders otherwise, none of the settlement proceeds will be distributed to

plaintiffs until after confirmation of the Plan).


   **WHEREFORE**, the Trustee respectfully requests that this Court deny the Motion to the

extent requested herein and grant the Trustee such other and further relief as this Court deems

just and proper.

Dated: January 31, 2014                    Respectfully submitted,

                                           DUANE MORRIS LLP

                                           */s/ Michael R. Gottfried*
                                           Michael R. Gottfried
                                           (BBO# 542156)

                                           100 High Street
                                           Suite 2400
                                           Boston, MA 02110-1724
                                           Phone: (857) 488-4200
                                           Email: mrgottfried@duanemorris.com

                                           *Counsel for the Chapter 11 Trustee*

61591819 v1-WorksiteUS-030764/0001

DM3\2804144.6

## <u>CERTIFICATE OF SERVICE</u>

I, Michael R. Gottfried, hereby certify that the foregoing document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on January 31, 2014.

/s/ Michael R. Gottfried
Michael R. Gottfried

DM3\2804144.6