IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br>   All Cases | ) Master File No. 1:13-MD-2419-FDS<br>) MDL Docket No.<br>)<br>)<br>)<br>)<br>) |
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY CASES<br><br>This Document Relates to:<br>All Cases | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**ROANOKE GENTRY LOCKE PLAINTIFFS' REPLY TO THE OMNIBUS REPLY AND OPPOSITION OF THE CHAPTER 11 TRUSTEE AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS [ECF NO. 818] AND THE STATEMENT OF INSIGHT HEALTH CORP. [ECF NO. 820]**

In their submissions, the Trustee, the Official Committee of Unsecured Creditors, and Insight Health Corp. ("Insight"), all overlook two basic issues. First, the relevant procedural facts of this case are very different now than they were when this Court decided the Trustee's initial transfer motion last year, and they continue to change by the day. NECC and its insiders have reached an agreement in principle regarding settlement with the Trustee, the Official Committee, and the Plaintiffs' Steering Committee. As a result, there will almost certainly be no litigation against NECC, rendering the essential purpose of the MDL—to consolidate proceedings for pretrial purposes—irrelevant.

Second, there is no available procedural mechanism that will allow the Court to transfer the Roanoke State Court Cases directly to this Court for purposes of discovery only. Those cases

have not been removed to federal court; Insight tried that already and failed. The Trustee has not suggested an established procedural vehicle that would let this Court transfer the cases directly from state court in Roanoke, Virginia to federal court in Boston, Massachusetts. His motion plainly asks this Court to assert related-to jurisdiction over the Roanoke Gentry Locke Plaintiffs' cases and then use 28 U.S.C. §157(b)(5) to transfer them. That would require the Court to stretch the outer boundaries of related-to jurisdiction past their breaking point, then wield § 157(b)(5) more aggressively than any Court has done before.

But, if this Court accepts the Trustee's invitation to use § 157(b)(5) in this manner, it must do so with knowledge that 157(b)(5) is a one way street. It only allows transfer to the District Court where the cases "shall be tried." Thus, even if some yet unknown procedure were to be developed and the cases were somehow transferred, the Court would be left with no alternative but to preside over the separate trials of the Roanoke Gentry Locke Plaintiffs' cases. Conversely, the Roanoke Gentry Locke Plaintiffs would be left with no alternative but to proceed with their cases in Massachusetts District Court. For almost all of these plaintiffs, that is simply not an option. Accordingly, before being drawn into such an untenable situation, they would have to exhaust all options available for preserving their right to a jury trial. This would undoubtedly include voluntary dismissal of the cases.

## BACKGROUND

The Court is familiar with the complex facts of this case. We highlight four points about the evolving situation:

*First*, NECC's owners and insurers have reached an agreement in principle regarding settlement with the Trustee, the Official Committee of Unsecured Creditors, and the Plaintiffs'

2

23347/1/6556471v1

Steering Committee. As a result, there is almost no chance that claims against NECC or its insiders will ever go to trial. *See* ECF No. 764-2.

*Second*, the Trustee has already determined that "Insight's claim is unlikely to participate in any distribution from NECC's estate to unsecured creditors" because it will be released, disallowed, or subordinated. *See* ECF No. 764-3. The Trustee's scholarly analysis speaks for itself, and parts of his reasoning are summarized in our primary brief at pages 10-12.

*Third*, the Roanoke Gentry Locke Plaintiffs each filed a proof of claim against NECC. They did so under duress, because the Bar Date Notice (Exhibit A to the Bar Date Order) asserted that, if a claimant did not submit a claim against NECC before the bar date, then that claimant may never be able to recover from any person or entity—including healthcare providers—related in any way to the use of an NECC product.[1] Accordingly, the Roanoke Gentry Locke Plaintiffs filed the proofs of claim with attached addenda simultaneously objecting to this requirement, making it clear that they were filing proofs of claim only to preserve previously asserted claims against non-debtor third parties. A representative example of one of these proof of claim forms is attached as **Exhibit 2**.

*Fourth*, the Circuit Court for the City of Roanoke has dismissed *Wingate v. Insight Health Corp.*, Case No. CL12-2547. Sharon Wingate is, therefore, no longer one of the Roanoke Gentry Locke Plaintiffs.

## PRINCIPLES OF LAW, ARGUMENT, AND AUTHORITIES

1. **MDL transfer of these cases is not possible; and transferring these cases will not serve the fundamental purpose of the MDL—consolidating *pretrial* proceedings involving NECC—in any way.**

---

[1] The Plaintiffs' Steering Committee also sent emails to all plaintiffs' counsel advising that failure to file a proof of claim against NECC would jeopardize claims against pain clinics, hospitals, doctors or other medical providers. **(Exhibit 1).**

3

23347/1/6556471v1

28 U.S.C. §1407(a) "provides for the transfer of actions pending in different districts for the purpose of coordinated and consolidated pretrial proceedings." *In re New England Compounding Pharmacy Prods. Liab. Litig.*, No. 13-2419-FDS, 2013 U.S. Dist. LEXIS 161652, at * 18 (D. Mass. Nov. 13, 2013). "When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings." 28 U.S.C. §1407(a). Further, the "transfers . . . will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." Id. The statute expressly directs that each action transferred "be remanded . . . at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated . . . ." Id.

### a. The MDL's basic goal is to advance pretrial judicial economy.

Section 1407's basic purpose is to "permit the centralization in one district of all pretrial proceedings 'when civil actions involving one or more common questions of fact are pending in different districts.'" *In re New York City Mun. Sec. Litig.*, 572 F.2d 49, 51 (2d Cir. 1978) (quoting statute); *see also In re Peanut Crop Ins. Litig.*, 342 F. Supp. 2d 1353, 1354 (J.P.M.L. 2004); *Risely v. Davol, Inc.*, No. 07-1856ML, 2008 U.S. Dist. LEXIS 1990, at * 2 (D.R.I. Jan. 10, 2008). Centralizing cases that share common facts works to eliminate the potential for conflicting pretrial rulings.[2] *Good v. Prudential Ins. Co. of Am.*, 5 F. Supp. 2d 804, 809 (N.D. Cal. 1998). Avoiding such conflicts advances judicial economy in the federal courts. Id. Under the plain language of the statute, however, cases must be remanded to the district courts of origin for trial. 28 U.S.C. §1407(a).

---

[2] Here, of course, there is little chance of conflicting rulings on common questions of fact. No one expects NECC to mount a liability defense, particularly in light of its agreement regarding settlement.

4

23347/1/6556471v1

Although the present transfer motion is filed within the MDL, the Trustee's motion is <u>not</u> an MDL transfer. It is a § 157(b)(5) transfer. Therefore, the request is for transfer to the District Court of Massachusetts, not the MDL.[3] As the plaintiffs understand this procedure, the transfer would have to go to the District Court in Massachusetts as a separate docket number, then be transferred into the MDL by tag-along. Accordingly, the future remand of the cases after discovery would simply be back to the District Court in Massachusetts.

### b. There is no reason to consolidate the Roanoke state-court cases with pretrial proceedings involving NECC.

Here, there is no reason to consolidate the Roanoke state-court cases with pretrial proceedings involving NECC. NECC's owners and insurers have reached an agreement in principle regarding settlement with the Trustee, the Official Committee, and the Plaintiffs' Steering Committee. There will never be a trial or any discovery against NECC or its insiders.

By extension, there is no reason to transfer these cases to facilitate pretrial proceedings against NECC. The cases subject to the present transfer motion involve claims against local non-debtor defendants, not NECC. There are no "national" claims associated with the defendants in the Roanoke Gentry Locke Plaintiff cases. Transferring them will in no way serve judicial economy; it will only foster further litigation, motions practice, appeals, and delay. For this and other valid reasons, the other three defendants in the Roanoke Gentry Locke Plaintiff cases are all opposed to the Trustee's renewed transfer motion.

Leaving the Roanoke state-court cases in Roanoke state court, does not strip this Court of its authority to manage aspects of those cases that may impact upon the debtor, NECC. Were such difficulties to somehow arise in these state-court cases, this Court would have the authority

---

[3] For the reasons noted below, transfer to the District Court in Virginia is not an option. However, transfer directly to this Court also appears to be an option for which there are no procedural tools within the Rules. Such an attempted direct transfer will undoubtedly raise issues of comity and federalism with the Virginia state courts.

5

23347/1/6556471v1

under 11 U.S.C. §105(a)[4] to resolve any discovery issue that threatens to disrupt the bankruptcy process. For example, this Court may extend a stay to relevant insiders, *see A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986), and may lift the stay subject to certain conditions and procedures that would protect the debtor and its insiders/related parties on discovery-related matters while still allowing reasonable access to relevant information. Any state court party seeking discovery of this information would then be required to go through that designated process to obtain the information.

### 2. There is no removal mechanism to transfer the Roanoke Gentry Locke Plaintiffs' actions to this Court.

#### a. The Roanoke Gentry Locke Plaintiffs' state-court cases must first be removed to the federal court in the region where they are pending before they may be transferred by the JPML.

Under existing and established procedures and rules, before the Roanoke Gentry Locke Plaintiffs' cases can be transferred to the MDL, they must be removed to district court in the Western District of Virginia. Section 1407 is not a jurisdictional statute. The transfer of pretrial proceedings under § 1407 is just a change of venue. *Goldman Phipps PLLC v. Gray, Ritter & Graham, P.C.*, No. 2:13-cv-00049, 2013 U.S. Dist. LEXIS 36482, at * 5 (S.D. Tex. Mar. 15, 2013) (noting that "[n]othing about [the MDL] procedural statute purports to confer jurisdiction over state law claims pending in state court"). The JPML therefore cannot transfer an action under section 1407 unless the district court where the action is originally pending can assert subject-matter jurisdiction over the case. *BancOhio Corp. v. Fox*, 516 F.2d 29, 32 (6th Cir. 1975); *accord Sherwood v. Microsoft Corp.*, 91 F. Supp. 2d 1196, 1199 (M.D. Tenn. 2000) (observing that without subject matter jurisdiction, there cannot be any action to transfer).

---

[4] Section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this Title [11]."

6

Thus, when a plaintiff files a complaint predicated upon state law in state court, a defendant will often attempt to remove the case to the corresponding regional district court. The district court must then determine whether removal was proper. *See, e.g., In re Zyprexa Prods. Liab. Litig.*, 594 F.3d 113, 116 (2d Cir. 2010); *Delaventura*, 417 F. Supp. 2d at 158-59; *In re Nat'l Century Fin. Enters., Inc. Inv. Litig.*, 323 F. Supp. 2d 861, 866 (S.D. Ohio 2004); *Allen v. Rite-Aid, Inc.*, No. 91-3835, 1991 U.S. Dist. LEXIS 10552, 1991 WL 148272, at * 1 (E.D. Pa. July 30, 1991) ("[T]he only issue we must resolve is whether this action was properly removed to this federal court so as to allow its potential transfer [to the MDL] as a tag-along case"). Once a case is properly removed, the JPML may then transfer the case to the MDL transferee district.

How this procedure *should* work, however, is a far cry from how it often *does* work. Many times, a defendant will file a notice of removal of a state court case simply to "secure a transfer order or conditional transfer order before the original federal district court determines, and in some cases even hears, the anticipated motion to remand." *Delaventura,* 417 F. Supp. 2d at 155-56 (citation omitted).

Insight and the Trustee attempted to employ this very tactic in April of 2013 when Insight removed the Roanoke Gentry Locke Plaintiffs' cases to the United States District Court for Western District of Virginia. Their gambit failed when Judge Wilson promptly remanded the cases to state court, holding that even assuming that he had jurisdiction, he could not exercise it. *See Wingate v. Insight Health Corp.*, No. 7:13-cv-00142, 2013 U.S. Dist. LEXIS 67358 (W.D. Va. May 10, 2013).

That ruling foreclosed one traditional path to the MDL.

### b. 28 U.S.C. § 1452 cannot provide the basis for removal to this Court.

Section 1452 is another common basis for removal, but it won't work here, either. Section 1452 provides that "a party may remove any claim or cause of action in a civil action . . . to the district court where the civil action is pending" if the district court has jurisdiction over the claim or cause of action under 28 U.S.C. §1334. The statute, however, provides no procedure for removal *directly to this Court*. Nor does it describe any procedure for removal by a party that is not a participant in the state court action. Even if it did, the Trustee's time for removal has expired, just as Insight's has.

Accordingly, even if §1452 could be stretched to apply to the Roanoke Gentry Locke Plaintiffs' cases, a removal under that statute would be untimely under Federal Rule of Bankruptcy Procedure 9027[5] because NECC received copies of filed complaints by the Roanoke Gentry Locke Plaintiffs long ago. *See* Declarations of J. Scott Sexton, ECF Nos. 110, 112-114, 116-117, 119-121, 123-124. While the Trustee sought and obtained an emergency order in the bankruptcy court tolling the time for removal on all post-petition cases in which such time had not expired as of March 21, 2012, the time had indeed expired for these cases prior to that date. Therefore, § 1452 cannot provide an avenue to this Court. *See Wingate*, 2013 U.S. Dist. LEXIS 67358, at * 11 (remanding the Roanoke Gentry Locke Plaintiffs' cases to state court "as untimely removed"); *see id.* at *15-17 (remanding under § 1452 on equitable grounds).

### 3. Related-to Jurisdiction under §1334(b) and subsequent transfer pursuant to 28 U.S.C. § 157(b)(5) provide the only avenue to this Court.

The Trustee is now left with a truly dubious path to the MDL: (1) first, he must convince this Court to assert related-to jurisdiction over the Roanoke Gentry Locke Plaintiffs' suits; (2)

---

[5] Rule 9027(a)(3) states: "If a claim or cause of action is asserted in another court after the commencement of a case under the Code, a notice of removal may be filed with the clerk only within the shorter of (A) 30 days after receipt, through service or otherwise, of a copy of the initial pleading setting forth the claim or cause of action sought to be removed, or (B) 30 days after receipt of the summons if the initial pleading has been filed with the court but not served with the summons."

second, he must persuade the Court to transfer the actions under § 157(b)(5); and, (3) third, he must somehow convince the Court to ignore the fact that once it transfers the cases under this process, they will remain in the Massachusetts District Court forever because there is no way to remand them back to Virginia.

### a. This Court does not have related-to jurisdiction over the Roanoke Gentry Locke Plaintiffs' claims.

For the reasons explained a paged 6-14 of our primary brief, this Court lacks related-to jurisdiction over the Roanoke Gentry Locke Plaintiffs' state-court cases against non-debtor defendants. Further, as the Trustee has recognized, Insight's claim poses no threat to recovery by other unsecured creditors and—contrary to prior representations—certainly will not be treated *pari passu* with other creditors' claims. *See* ECF No. 764, Ex. 3. The Trustee has demonstrated gymnastic ability to approbate and reprobate on this issue, but he cannot escape the plain language of his very recent letter of January 7, 2014 ("in the Trustee's judgment, it is likely Insight's claim will be disallowed, thereby obviating the need to commence litigation to subordinate that claim") (*Id.*). Thus, his present efforts to tap dance around his own conclusions as "premature" or "speculative"[6] stand in stark and unconvincing contradiction to his words and legal analysis of January 7, 2014.

### b. Section 157(b)(5) provides this Court with only limited authority to fix the venue of the Roanoke Gentry Locke Plaintiffs' lawsuits—not to remove and transfer them.

Section 157(b)(5) does not give this Court authority to remove and transfer the Roanoke state-court cases in the first place. Rather, the section limits the reach of a bankruptcy court by directing that "[t]he district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court

---

[6] ECF No. 818, Trustee's Omnibus Reply at 5.

in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending." 28 U.S.C. 157(b)(5). Thus, only a district court may hear suits for personal injury. *See Bertholet v. Harman*, 126 B.R. 413, 414 (D. N.H. 1991).

Section 157(b)(5) applies only to actions involving the debtor. It is a venue provision with a specific purpose. *Stern v Marshall*, 131 S. Ct. 2594, 2607 (2011) ("§157(b)(5) simply specifies where a particular category of cases should be tried"). Section 157(b)(5) "was drafted to cover the procedure in connection with a special group of cases, to wit, personal injury tort claims *against the debtor* in Chapter 11 proceedings wherever pending ..." *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1011 (4th Cir. 1986) (emphasis added)[7]; *see also In re Pan Am Corp.*, 16 F.3d 513, 516 (2d Cir. 1994) (stating that a debtor-defendant in a personal injury or wrongful death action may move under §157(b)(5) to transfer the action to only one of two venues).

The First Circuit has also indicated that §157(b)(5) only applies to actions involving the debtor, explaining that the section exemplifies "Congress's recognition that most personal injury tort and wrongful death victims stand in a somewhat different relationship <u>with the bankruptcy debtor</u> because they did not voluntarily enter into dealings <u>with the debtor</u> (and accept the risk of loss) in the same sense as traditional bankruptcy claimants." *Adams v. Cumberland Farms*, No. 95-1763, 1996 U.S. App. LEXIS 10458, at * 7 (1st Cir. May 7, 1996) (emphasis added); *see also In re Dow Corning Corp.*, 187 B.R. 919, 924-25 (E.D. Mich. 1995) (observing that §157(b)(5) "treats personal injury claims as a special class within the realm of bankruptcy law" and thus the district court where the bankruptcy petition was filed has the "sole authority" to fix trial venue for "personal injury actions <u>against the bankruptcy debtor</u>") (emphasis added).

---

[7] The Fourth Circuit concluded that "[i]n all other cases related to the bankruptcy proceedings . . . the general [change of venue] statute (i.e., section 1412) would govern." *Id.*

Therefore, as a threshold matter, any case transferred under §157(b)(5) must involve the debtor. The Roanoke Gentry Locke Plaintiffs' cases do not.

Some courts have used §157(b)(5) to transfer lawsuits against non-debtor third parties—but they have done so <u>only</u> when that party has been sued along with the debtor. *See, e.g., In re Dow Corning Corp.*, 86 F.3d 482, 496 (6th Cir. 1996) ("*Dow I*"). In *Dow I*, the Sixth Circuit framed the issue unequivocally: "The question for our consideration is whether Section 157(b)(5) allows for the transfer of personal injury and wrongful death claims pending <u>against nondebtor defendants who have been sued with a debtor</u> under a claim of joint and several liability." *Id.* (emphasis added); *see also Arnold v. Garlock, Inc.*, 278 F.3d 426, 440 (5th Cir. 2001) (observing that the Court in *Dow I* ordered the transfer under §157(b)(5) of only a "relatively small number of non-debtor co-defendants" who had worked alongside the debtor to manufacture the product that was the source of the tort suits); *Hopkins v. Plant Insulation Co.*, 342 B.R. 703, 712 (D. Del. 2006) (noting that non-debtor transfer requests were only made in cases where the debtor was also a defendant).

While the *Dow I* court held that the district court could transfer the cases, it qualified that holding by directing the district court to first "determine in each individual case whether hearing it would promote or impair the efficient and fair adjudication of the bankruptcy cases." *Id.* The district court did so and promptly remanded the cases to state court. *See In re Dow Corning Corp.*, No. 95-CV-72397-DT, 1996 U.S. Dist. LEXIS 16754 (E.D. Mich. July 30, 1996) (citation omitted). In the vast majority of cases where non-debtors like Insight have requested transfers, courts have likewise remanded the case or abstained from exercising jurisdiction in the first place. *See Hopkins*, 342 B.R. at 716.

11

And at any rate, *Dow I* did not address the transfer of cases like these, which were brought solely against non-debtors. Insight's relationship with NECC cannot be analogized to the strong affiliations shared between the debtor and the non-debtor defendants in *Dow I*. Consequently, section 157(b)(5) does not provide sufficient authority to transfer the Roanoke Gentry Locke Plaintiffs' cases to this Court. The Trustee's motion asks this Court to expand § 157(b)(5)'s scope, venturing farther than the broadest reaches of prior cases.

### c. If the Roanoke Gentry Locke Plaintiffs' state court cases are transferred under § 157(b)(5), they will stay in Boston for trial.

Finally, if the Court transfers these cases under § 157(b)(5), then they must be tried in either the Western District of Virginia or this Court under the plain language of the statute. *Adams*, 1996 U.S. App. LEXIS 10458, at * 7. There is no 157(b)(5) process for initially transferring the cases to the Massachusetts District Court where they "shall be tried," and then dropping them back in the lap of the Western District of Virginia for trial. Even if there were such a procedure, it would be particularly problematic here where the Western District of Virginia has already indicated that it will not be hearing them. *See generally Wingate*, 2013 U.S. Dist. LEXIS 67358. Therefore, the task of trying the Roanoke Gentry Locke Plaintiffs' cases will fall on this Court. There is absolutely nothing about §157(b)(5) that indicates any other outcome. Unfortunately, this also means that the plaintiffs will likely be *de facto* deprived of their right to a jury trial, which the Virginia Constitution declares to be "held sacred." Virginia Constitution, Article I, Sec. 11.

### 4. This Court does not have related-to jurisdiction over the Roanoke Gentry Locke Plaintiffs' claims against Insight just because those plaintiffs have filed a proof of claim against NECC.

Both Insight and the Trustee argue that simply by filing a proof of claim against NECC, the Roanoke Gentry Locke Plaintiffs have given this Court jurisdiction over their claims against

Insight. ECF No. 818 at 6-8; ECF No. 820 at 12-13. Both rely primarily on *TD Bank, N.A. v. Sewall*, 419 B.R. 103 (Bankr. D. Me. 2009). They are mistaken for three reasons.

First, the Roanoke Gentry Locke Plaintiffs filed their proofs of claim under protest, specifically to protect their claims against Insight—not to avail themselves of bankruptcy jurisdiction. Where parties are forced to file proofs of claim as defensive maneuvers to preserve their rights, they are not "consenting" to jurisdiction by the bankruptcy court. *Cf. In re Castlerock Props.*, 781 F.2d 159 (9th Cir. 1986) ("[F]iling the proof of claim should not be deemed consent.")

Second, *Sewall* simply confirms that *Pacor* is the proper guide for analyzing related-to jurisdiction. *See Pacor v. Higgins*, 743 F.2d 984 (3d Cir. 1984) (cited in *Sewall*, 419 B.R. at 106). *Sewall* does not announce a bright line of jurisdiction that the Roanoke Gentry Locke Plaintiffs automatically crossed by filing proofs of claim. Instead, it compels a careful look at the facts and relative positions of the parties to determine whether a case's outcome will have an impact on the administration of the bankruptcy estate.

The *Sewall* court expressly acknowledged *Pacor*'s flexibility, noting that its earlier decision in *Central Maine Restaurant Supply v. Omni Hotels Management Corporation*, 73 B.R. 1018, 1024 (D. Me. 1987), held "that where an indemnification provision is subject to a number of conditions that render the right to indemnification uncertain, there is an insufficient nexus between bankruptcy proceedings and the guarantee litigation." *Id.* at 106-07 (internal quotation omitted). The *Sewall* court also explained that "[r]elated-to jurisdiction is protean. What is related to a proceeding under title 11 in one context may be unrelated in another because the bankruptcy court's jurisdiction depends on the actual effect of a proceeding on the restructuring of debtor-creditor relations." *Sewall*, 419 B.R. at 106 (quoting *In re Boston Reg'l Med. Ctr., Inc.*,

13

410 F.3d 100, 107 (1st Cir. 2005)) (internal quotations omitted). *See, e.g., CIT Communications Financial Corp. v. Level 3 Communications, LLC*, 483 F. Supp. 2d 380 (D. Del. 2007) (plaintiff's action against bankrupt corporation for breach of lease, and against corporation's new owner, too attenuated for related-to jurisdiction, despite common lease obligations); and *Transamerica Fin. Life Ins. Co. v. Merrill Lynch & Co.*, 302 B.R. 620 (N.D. Iowa 2003) (rejecting argument that participation in and filing of proofs of claim in Enron's bankruptcy proceeding conferred "related to" jurisdiction).

Third, even if this Court did enjoy related-to jurisdiction, it would still not have any way to transfer cases to the MDL solely for purposes of discovery.

## CONCLUSION

The Court should deny the Trustee's motion and/or abstain from exercising jurisdiction.

ROANOKE GENTRY LOCKE PLAINTIFFS

/s/ J. Scott Sexton
Of Counsel

J. Scott Sexton, Esq. (VSB No. 29284)
Anthony M. Russell, Esq. (VSB No. 44505)
Charles H. Smith, III (VSB No. 32891)
H. David Gibson (VSB No. 40641)
Benjamin D. Byrd (VSB No. 76560)
Daniel R. Sullivan (VSB No. 81550)
GENTRY LOCKE RAKES & MOORE, LLP
10 Franklin Road, S.E., Suite 800
P. O. Box 40013
Roanoke, Virginia 24022-0013
(540) 983-9300
FAX (540) 983-9400
sexton@gentrylocke.com
russell@gentrylocke.com
smith@gentrylocke.com

23347/1/6556471v1

gibson@gentrylocke.com
byrd@gentrylocke.com
sullivan@gentrylocke.com

*Counsel for Roanoke Gentry Locke Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2014, I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF system, which then sent a notification of such filing (NEF) to all counsel of record.

/s/ J. Scott Sexton

23347/1/6556471v1