# Exhibit A

# GIDEON, COOPER & ESSARY

A PROFESSIONAL LIMITED LIABILITY COMPANY

315 DEADERICK STREET, SUITE 1100

NASHVILLE, TENNESSEE 37238

(615) 254-0400

FAX (615) 254-0459

www.gideoncooper.com

C. J. GIDEON, JR.[1]
DIXIE W. COOPER[2]
BRYAN ESSARY[3]
CHRIS J. TARDIO[4]
CHRISTOPHER A. VRETTOS
ALAN S. BEAN
JAMES C. SPERRING
JOSHUA R. ADKINS
KIM J. KINSLER[5]
RANDA VON KANEL
J. BLAKE CARTER[1]
MARK A. HAMMERVOLD[1]
MATT H. CLINE
JOHN-MARK ZINI[6]

[1]LICENSED IN TN & FL
[2]LICENSED IN TN, AL & TX
[3]LICENSED IN TN & GA
[4]LICENSED IN TN & KY
[5]LICENSED IN TN & WI
[6]LICENSED IN TN & KS

CHRIS TARDIO
chris@gideoncooper.com

February 5, 2014

*Via e-mail only:  gerards@branstetterlaw.com*

J. Gerard Stranch, IV
BRANSTETTER, STRANCH & JENNINGS
227 Second Avenue North
Nashville, TN 37201

Dear Gerard:

We reviewed and considered the Plaintiffs' Steering Committee's ("PSC") proposed CMO regarding discovery and bellwether selection. The proposed deadlines may seem plausibly achievable in the abstract, but, when considered in the context of the amount of work required at each step, it is readily apparent that the deadlines simply are not manageable. Frankly, we believe that the proposal does not reflect serious consideration of the amount of work required at each step of the discovery and bellwether selection process.

Throughout this litigation, the PSC has consistently sought extensions to the deadlines in CMOs the PSC itself asked the Court to enter.[1] Extensions to meet deadlines in litigation of this size and complexity are understandable. But, setting deadlines that inevitably require repeated extensions contributes to rushed work, sacrifices efficiency, and leads to serial motions to alter the deadlines.

---

[1] *See, e.g.*, Motion for Extension of Time to File Mediation Order [Dkt. 363]; Request for Extensions to File Master Complaint and Short Form Complaint [Dkt. 395]; Motion to Extend Deadlines in Previous CMO and to Revise CMO [Dkt. 421]; Motion to Extend Deadlines Set Forth in Mediation Program [Dkt. 487]; Motion for Extension of Time to File Master Complaint as to Affiliated Defendants [Dkt. 540]; Motion to Extend Deadline for Filing List of Subpoena Recipients Named as Defendants [Dkt. 574]; Motion for Extension of Time to Respond to Traveler's Motion to Quash [Dkt. 737]; Motion to Extend Deadline for Filing Master Complaint Against Affiliated Defendants [Dkt. 741]; Motion for Extension of Deadline to Respond to Trustee's Renewed Motion to Transfer [Dkt. 760]; Motion for Additional Extension of Time to Respond to Traveler's Motion to Quash [Dkt. 765].

Mr. Stranch
February 5, 2014
Page 2

We prefer to plan on the front-end, setting out a reasonable and manageable progression of this litigation specific to the Tennessee defendants rather than unworkable deadlines, in the hope of avoiding unnecessary expenditure of time and resources.

With that in mind, we set forth the changes that we believe *must* be made to the proposed discovery and bellwether CMO for it to serve as an actual scheduling order for these cases, rather than another CMO requiring serial *post hoc* modifications. Attached please find our counterproposal incorporating these changes into the CMO we received from you on January 24, 2013.

Of course, we are willing (and expecting) to meet and confer on the now competing proposals. Our general position, however, is outlined below.

## I.        Separate Order for Common Discovery

First and foremost, this CMO needs to be split into (at least) two separate orders. One order should address common fact and expert discovery with hard deadlines. If you insist on entering a CMO on bellwether selection, at this point, the order(s) should only set forth a basic framework, without deadlines, for bellwether selection and case-specific discovery.

At this stage, there are simply too many unknowns (*e.g.*, the status of NECC, the status of other Affiliated Defendants, the form and substance of the Plaintiff Profile Form, the ease or difficulty with which certain discovery will occur, which legal claims will survive dismissal, *etc.*) to set deadlines for case-specific discovery and bellwether selection.

We should, at this point, concentrate on establishing a realistic plan for conducting common discovery, which will efficiently usher us into case-specific discovery and bellwether selection.

### A.        Tennessee-Specific Mediation

At the conclusion of common discovery, when reciprocal discovery has occurred sufficient to more fully evaluate factual issues, liability issues, and potential exposure, time should be allotted to explore a Tennessee-specific mediation. We anticipate that the mediation would be contingent upon participation by *all* Tennessee Plaintiffs and the use of a single mediator familiar with Tennessee law. Given the number of moving parts, it is safe to assume that such a mediation will take a significant amount of time and planning, which the CMO should take into account.

Mr. Stranch
February 5, 2014
Page 3

### B.    Unknowns in Common Discovery

There are simply too many unknowns in the common discovery phase to accurately predict how much time that phase will actually take, such that bellwether selection and case-specific discovery hard deadlines cannot be set now. For example, without knowing how many expert depositions need to be taken, setting a *reasonable* deadline for completion of common expert discovery and initiation of bellwether selection requires nothing less than pointless speculation.

Similarly, common discovery of the Affiliated Defendants must also occur at this stage, but there is currently a stay in place. The settlement with NECC has not been submitted to the bankruptcy court for approval, indicating that details are still being hammered out. Without knowing when the stay will be lifted or the status of NECC, setting a reasonable timetable to complete common discovery and start case-specific discovery presents challenges, and setting deadlines for selection of trial cases and pretrial deadlines is virtually impossible to do with any degree of accuracy.

### C.    Premature Bellwether CMO

Finally, the Court ordered us to begin discussing a discovery plan, not a bellwether process. The Court has given no indication that it is ready to establish a bellwether scheduling order, which Judge Saylor tabled only 45 days ago.[2] While there might be some utility in having a bellwether selection *framework* in place in the near future, setting deadlines that will inevitably be changed is inefficient and premature.

## II.    Material Omissions

Several important items are omitted from the PSC's proposal, as outlined below.

### A.    Discovery of Affiliated and National Defendants

The proposed CMO fails to address discovery as to the Affiliated Defendants.

At this point, the _Un_affiliated Defendants do not even know who the parties to the proposed settlement are, much less when and how discovery of the Affiliated Defendants will progress. NECC's status in this litigation – and that of the Affiliated Defendants – must be resolved before constructing a complaint-to-trial schedule for this litigation. Specifically, the status of NECC and the Affiliated Defendants will drastically shape the common discovery process.

The same issue exists with respect to the National Defendants, at least one of which, UniFirst, appears to be actively litigating, but is totally omitted from this CMO.

---

[2] [Dkt. 721].

Mr. Stranch
February 5, 2014
Page 4

### B.    PSC's Initial Disclosures

There is no deadline for common initial disclosures from the PSC. We have been asked to produce initial disclosures, which we stand ready and willing to do, but fairness dictates a reciprocal common production from the PSC. We have discussed this on multiple occasions, including at the meet and confer at your office on October 25, 2013, and our understanding was that the PSC agreed to produce common initial disclosures. We can only assume that there are common documents and witnesses that have not been disclosed to this point due to the lack of common discovery requests directed to the PSC. Initial disclosures are the logical beginning of this process.

### C.    Defendants' Common Discovery Requests

Likewise, the CMO does not allow us to serve common discovery requests on the PSC, which we have discussed on multiple occasions during meet and confers at your office and by phone. We have held our master set of discovery for months out of respect for the Court's intent to enter an organized discovery plan before launching into discovery. The discovery process cannot be one-sided. There are questions we wish to direct in a common fashion and common facts we need to establish. The CMO should include deadlines to accomplish these tasks.

### D.    Case-Specific Discovery Stay

The CMO does not stay case-specific discovery pending completion of common discovery and selection of the initial trial pool. We do not expect the Plaintiffs to respond to case-specific discovery for the time being, and we should not be subjected to discovery from individual Plaintiffs in addition to the PSC.

### E.    Elements Required by FRCP

The CMO affirmatively states that it complies with FRCP 26(f), but it actually fails to do so.

The CMO omits several elements of a FRCP 26(f) discovery plan, including (1) limitations on the number of discovery requests; (2) parameters for production of electronically-stored information ("ESI"); and (3) privilege logs.

Similarly, the CMO purports to satisfy FRCP 16 but fails to do so. The order contains no deadline for joining parties and/or amending complaints. Both are expressly required by FRCP 16(b)(3)(A).

Additionally, FRCP 16(b)(3)(A) requires a scheduling order to include deadlines for filing motions. Section II. of the CMO is titled "Common Issue Discovery and Common Dispositive Motions Deadlines," but it does not actually set any deadlines for dispositive motions.

Mr. Stranch
February 5, 2014
Page 5

The CMO should also include a supplementation deadline for discovery responses and initial disclosures.

### F.      Rebuttal Experts

The CMO fails to define "rebuttal expert." Frankly, we see no reason the PSC needs rebuttal experts in this case. The PSC's position before the Court is that these cases are not complex.[3] Such a simple case should require no rebuttal experts. If the PSC feels that it needs rebuttal experts after receiving the Defendants' expert disclosures, the PSC should have to demonstrate good cause as to why those experts were not already retained and/or disclosed, especially in light of the fact that the common issue fact discovery will be complete by that time. If rebuttal experts are to be contemplated by the CMO, the term should be defined, and a mechanism for surrebuttal experts included in the CMO.

### III.      Overarching Issues with Deadlines

The PSC sent this proposal to us on a Friday afternoon (January 24), suggested a meet and confer on Monday (January 27), and unilaterally proposed that any competing proposal be filed by January 31. A meaningful discovery plan governing hundreds of cases in this complex litigation with dozens of moving parts and the status of the primary wrongdoer unresolved, cannot be thrown together in a week.

### A.      Attorney Calendars Not Considered

Attached is an affidavit we will file with our counterproposal outlining C.J. Gideon's current trial calendar for 2014. The PSC can often substitute another attorney if one of the members is unavailable on a given date since all members of the PSC have the same interests. That is not true for the various Defendants. Each Defendant's interests are different and must be independently represented during the discovery process.

As Mr. Gideon represents at least one client in all of the roughly 150 cases from Tennessee currently pending in the MDL, he intends to take an active role in the discovery process, particularly for depositions. Simply put, to craft a fair and reasonable discovery plan, calendars of the primary attorneys involved in these cases must be considered in setting deadlines.

### B.      Time for Review of Plaintiff Profile Forms

A prime example of the PSC's unreasonable deadlines is the CMO's requirement that Defendants notify Plaintiffs of any "material deficiencies" with the Plaintiff Profile Forms ("PPF") within *15* days of receipt of the PPFs.

---

[3] PSC's Resp. to Tennessee Defendants' and Saint Thomas Entity's [*sic*] Proposals Regarding Profile Form and Authorizations, p. 3 [Dkt. 835].

Mr. Stranch
February 5, 2014
Page 6

First, at this point, Magistrate Judge Boal has not ruled uopon the form and substance of the PPF.

Second, regardless of the ultimate form and substance, more than *100* Plaintiffs will be completing the PPF. The PPFs will need to be crosschecked against the records of each Plaintiff to ensure the completeness of disclosures regarding, for example, treating health care providers and underlying health conditions. That comparison cannot even begin until (1) the Plaintiffs return the records releases with the PPFs, (2) the Plaintiffs' records are obtained using the releases, and (3) the records are reviewed.

Put simply, 15 days is barely enough time to *read* all 100+ PPFs, let alone conduct any meaningful analysis and provide a substantive description to the PSC or individual Plaintiffs' attorneys of the perceived deficiencies.

Similar, unreasonable time considerations pervade the proposed CMO. Some are mentioned herein. Others are addressed with proposed edits in our counterproposal.

## C.      Common Discovery Deadlines[4]

In light of the extensive discovery necessary from the Affiliated Defendants, the common discovery deadlines are much too short.

The PSC has a major head-start on this discovery due to its access to the roughly 40,000 documents received informally from NECC, which are completely ignored by the CMO, and the documents previously produced by our clients in the four (4) state court cases filed and nonsuited in early 2013. The PSC has had many months to review and analyze those documents and will also have time during the common discovery phase to continue to work through them.

Accordingly, we will need adequate time to analyze the 40,000 NECC documents, in addition to other discovery from the Affiliated Defendants and various third parties. We have tried for months to access the NECC documents, but the PSC has refused to grant us access, citing a still unseen agreement with the Trustee.

---

[4] The unreasonableness of the PSC's proposed deadlines is equally pervasive in the portion of the CMO pertaining to bellwethers and case-specific discovery. For example, the deadline for disclosing case-specific experts mirrors the unreasonably short deadline to disclose common experts discussed in Section III., C. However, as discussed above, setting reasonable deadlines for those phases of the case is pure guesswork at this point. We do not specifically address the case-specific deadlines here, as we believe case-specific discovery deadlines should be addressed after the completion of common discovery (or, at least, after significant common discovery has occurred) and the nature of the litigation has taken a more defined form.

Mr. Stranch
February 5, 2014
Page 7

We do not know the form, searchability, accessibility, or substance of these 40,000 documents, some or all of which are presumably crucial to the litigation. The common discovery deadlines need to account for the time necessary for us to review those thousands of documents.

## D.    Common Expert Deadlines

Obviously, fact discovery from the Affiliated and National Defendants is necessary to provide our experts the information they need to support their opinions. Your proposed CMO provides a mere *30 days* from the conclusion of common fact discovery to:

(1) Analyze the information obtained during discovery,

(2) Send it to experts,

(3) Allow the experts time to review the information,

(4) Meet with the experts to discuss their opinions, and

(5) Draft FRCP 26(a)(2)(B) reports outlining the experts' opinions.

That is simply not enough time to complete expert reports, and it will result in barebones expert reports that will need to be extensively supplemented or, more likely, a request for additional time to complete them. Setting these unreasonable deadlines now only guarantees revisions and extensions later.

## E.    Removal of Specific Dates

All deadlines in the order need to be expressed by number of days from an event because we do not know when the discovery plan will be entered.

## IV.    Bellwether Framework

The prudent course is to enter a common discovery plan at this point and stop there. To the extent the PSC insists on putting a bellwether framework in place at this stage, there are several issues with the proposal.

7

Mr. Stranch
February 5, 2014
Page 8

## A.      Meet and Confer on Appropriateness of Bellwether Trials

There is no procedure or timeframe for determining whether bellwethers are even appropriate. Until we aggregate the data from the Plaintiff Profile Forms, we do not know whether representative cases can be identified or whether bellwether trials can assist in resolving the litigation. Once we have aggregated the data and reviewed the Plaintiffs' records, we will need to confer regarding whether bellwethers are appropriate. If we disagree, the Court will need to resolve our disagreement. The CMO should include a procedure and schedule for this process.

## B.      One-Sided Bellwether Process

The PSC's proposed bellwether process omits the intermediate stage of creating an initial bellwether pool for case-specific discovery, which we thought the parties had agreed to in principle during the meet and confer process regarding the Plaintiff Profile Form.[5] We proceeded on the understanding that we would have the opportunity to conduct case-specific discovery before choosing proposed bellwether trial cases. Many of the concessions we agreed to make regarding the Plaintiff Profile Form were based on that understanding. The PSC's proposal omits the intermediate level of discovery and requires us to choose bellwether trial cases based only on the Plaintiff Profile Forms.

To remedy this issue, we propose:

(1)      Populating the Initial Trial Pool using the Plaintiff Profile Forms with more than the number of cases that will become the First Bellwether Trials,[6]

(2)      Conducting case-specific discovery for those cases, and

(3)      Conferring regarding a procedure for selecting the First Bellwether Trials from the Initial Trial Pool[7].

---

[5] This intermediate stage of discovery is also specifically advocated by Judge Eldon E. Fallon's article regarding bellwether trials which the PSC cited and attached to its Memorandum in Support of its Bellwether Trial and Pre-Trial Scheduling Order [Dkt. 838, Ex. 2]. Eldon E. Fallon, et al, *Bellwether Trials in Multidistrict Litigation*, 82 TUL. L. REV. 2323 (2008) [hereinafter "Fallon"]. Judge Fallon cautions that skipping this intermediate step "is problematic because, as can often happen, a case that appears to be favorable or representative early in the litigation process (when the pool is initially filled) may be eventually determined to be unrepresentative or grossly unfavorable once case-specific discovery is complete." Fallon at 2347.

[6] Fallon at 2347 ("[A] pool consisting of twenty cases should be satisfactory for situations in which the transferee court intends to hold approximately six trials....").

[7] We intend for this procedure to be put in place before conclusion of case-specific discovery.

8

Mr. Stranch
February 5, 2014
Page 9

The numbers and deadlines can be set later, but the general framework makes sense. It provides Defendants the opportunity to learn what the PSC already knows about the individual Plaintiffs in the bellwether pool so that the bellwether process is not a one-sided affair. We can limit the number of cases in the Initial Trial Pool to minimize burden and expense while providing the parties options in choosing bellwethers.

We think it is simply too soon to set deadlines for case-specific discovery and the bellwether selection process but recognize that putting a framework in place could be useful.

\* \* \* \* \* \* \*

We propose setting a meet and confer after all parties have had the chance to consider our respective proposals. Please contact me once you have considered our proposal so that we can schedule a time to meet and confer.

Thank you.

Very truly yours,

Chris. J. Tardio

MHC/cjt

Enc. Affidavit of C.J. Gideon, Jr.; Proposed CMO for Common Discovery; Proposed CMO for Bellwether Selection and Case-Specific Discovery