UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br>    All Cases | MDL No. 1:13-md-2419-FDS |

**JOINT RESPONSE OF THE CHAPTER 11 TRUSTEE AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE ROANOKE GENTRY LOCKE PLAINTIFFS' REPLY TO THE OMNIBUS REPLY AND OPPOSITION OF THE CHAPTER 11 TRUSTEE AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND THE STATEMENT OF INSIGHT HEALTH CORP.**

On December 27, 2013, Paul D. Moore, the Chapter 11 Trustee for the bankruptcy Estate of New England Compounding Pharmacy, Inc. ("NECC" or the "Debtor"), filed a renewed and supplemental motion (the "Renewed Motion to Transfer")[1] to transfer to this Court, pursuant to 28 U.S.C. §§ 1334 and 157(b)(5), certain personal injury and wrongful death cases pending in Virginia state court in which the defendant, Insight Health Corp. ("Insight"), recently asserted claims for indemnity and contribution against NECC. The Official Committee of Unsecured Creditors of NECC (the "Official Committee") filed a joinder supporting the Renewed Motion for Transfer [Dkt. 743].

In opposition to the Renewed Motion to Transfer, the Roanoke Gentry Locke Plaintiffs (the "RGL Plaintiffs") filed their *Renewed Motion for Mandatory or Permissive Abstention under 28 U.S.C. § 1334* [Dkt. No. 763] (the "Renewed Abstention Motion"), together with a

---

[1] On March 10, 2013, the Chapter 11 Trustee filed a *Motion to Transfer Personal Injury Tort and Wrongful Death Cases Pursuant to 28 U.S.C. §§ 157(b)(5) and 1334* (the "Original Transfer Motion") [Dkt. No. 37], which this Court granted in part and denied in a Memorandum and Order [Dkt. 170], dated May 31, 2013

memorandum of law in support therof [Dkt. No. 764].  On January 27, 2014, in opposition to the Renewed Abstention Motion, the Trustee and the Official Committee filed the *Omnibus Reply of the Chapter 11 Trustee and the Official Committee of Unsecured Creditors in Further Support of the Trustee's Renewed and Supplemental Motion to Transfer Additional Personal Injury Tort and Wrongful Death Cases to This Court Pursuant to 28 U.S.C. §§ 1334 and 157(b)(5) and Opposition to the Roanoke Gentry Locke Plaintiffs' Renewed Motion for Mandatory or Permissive Abstention Under 28 U.S.C. § 1334* [Dkt. 818] (the "Omnibus Reply").[2]

On February 3, 2014, the Roanoke Gentry Locke Plaintiffs filed the *Roanoke Gentry Locke Plaintiffs' Reply to the Omnibus Reply and Opposition of the Chapter 11 Trustee and the Official Committee of Unsecured Creditors and the Statement of Insight Health Corp.* [Dkt. 844]. Although characterized as a reply, this latter submission (the "RGLP Sur-Reply") is a thinly disguised sur-reply to the Renewed Motion to Transfer, which offers new arguments, reargues matters already decided by this Court and generally exceeds the scope of a proper reply in further support of their Renewed Abstention Motion.  Indeed, many of the RGL Plantiffs' arguments should have been raised in their opposition to the Original Transfer Motion.

## ARGUMENT

**A.     157(b)(5) Authorizes this Court to Transfer the Roanoke State Court Cases Directly to this Court**

In their submission, the RGL Plaintiffs contend that there is no available procedural mechanism that will allow this Court to transfer the Roanoke State Court Cases directly from state court in Virginia to this Court.  RGLP Sur-Reply at 2.  Specifically, the RGL Plaintiffs

---

[2]     Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Omnibus Reply.

assert that 28 U.S.C. § 157(b)(5) "does not give this Court authority to remove and transfer the Roanoke state-court cases in the first place." RGLP Sur-Reply at 9.

As an initial matter, this Court has already determined that it has the authority to transfer cases pending in state court to this Court, and has done so. *See In re New Eng. Compounding Pharm. Prods. Liab. Litig.*, 496 B.R. 256, 277 (D. Mass. 2013) (ordering the transfer to this Court of, *inter alia*, "those cases **pending in state courts** in which any party has asserted a claim (including a claim for contribution or indemnity) against NECC or any affiliated entity or individual") (emphasis added).

In addition, 28 U.S.C. § 157(b)(5) explicitly authorizes this Court to transfer state court actions to this Court. In pertinent part, § 157(b)(5) provides that "[t]he district court **shall** order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending." 28 U.S.C. § 157(b)(5) (emphasis supplied). By its terms, section 157(b)(5) plainly bestows upon the district court the actual authority to transfer actions pending in state court. *See*, *e.g.*, *In re Pan Am Corp.*, 16 F.3d 513, 516 (2d Cir. 1994) (observing that the "plain language" of section 157(b)(5) authorizes a district court to transfer state court actions to a federal court, and transferring Florida state court cases directly to the Southern District of New York); *In re Metabolife Int'l, Inc.*, Case No. 05cv1802-IEG(RBB) [Dkt. No. 29] (Nov. 3, 2005) (ordering the direct transfer of actions pending in state court to federal court) (attached hereto as Exhibit 1); *In re United States Lines, Inc.*, No. 90 M 47(MP), 1990 WL 451981, at *1-2 (S.D.N.Y. Nov. 6, 1990) (same); *In re Nutraquest, Inc.*, Civ. No. 03-5869 (GEB), 2004 U.S. Dist. LEXIS 29143, at *46 (D.N.J. Mar. 5, 2004) (noting the "clear authority of this Court to transfer the [state court] personal injury and wrongful death actions pursuant to 28 U.S.C. § 157(b)(5)") (attached hereto as Exhibit 2).

Notably, in *Nutraquest*, the debtor, who had filed its bankruptcy petition in New Jersey, requested that the District Court for the District of New Jersey transfer several cases pending in various state and federal courts pursuant to § 157(b)(5). *Id*. The court granted the motion with respect to all but one case (which case was pending in another federal district court and in which the debtor was not a defendant). *Id*. The debtor subsequently moved the court to reconsider with respect to the one case not transferred, arguing that, *inter alia*, transfer pursuant to § 157(b)(5) is not limited to claims against the debtor. *See Brief of Nutraquest, Inc. in Support of Motion Pursuant to L. Civ. R. 7.1(G) to Reconsider Denial of Transfer, Pursuant to 28 U.S.C. § 157(B)(5), of Coberly v. Cytodyne Technologies, et al.*, *In re Nutraquest, Inc.*, Civil Action No. 03-5869 [Dkt. No. 24] (Feb. 5, 2004), at 10 (attached hereto as <u>Exhibit 3</u>). The court granted the motion to reconsider, and transferred the action to the New Jersey District Court pursuant to § 157(b)(5). *See Order Granting Motion Pursuant to L. Civ. R. 7.1(G) to Reconsider Denial of Transfer, Pursuant to 28 U.S.C. § 157(B)(5), of Coberly v. Cytodyne Technologies, et al.*, *In re Nutraquest, Inc.*, Civil Action No. 03-5869 [Dkt. No. 34] (Mar. 3, 2004) (attached hereto as <u>Exhibit 4</u>).

Moreover, logic and black-letter principles of statutory construction mandate that by making section 157(b)(5) transfer of personal injury tort and wrongful death claims the default with limited exceptions ("[t]he district court **shall** order . . ."), Congress imbued the district courts with the ability and the authority to effectuate the mandated transfer. *See FTC v. Anheuser-Busch*, 363 U.S. 536, 553 80 S.Ct. 1267 (1960) ("the primary function of statutory construction is to effectuate the intent of Congress"); *Washington Market Co. v. Hoffman*, 101 U.S. 112, 115 (1879) ("We are not at liberty to construe any statute so as to deny effect to any part of its language. It is a cardinal rule of statutory construction that significance and effect

shall, if possible, be accorded to every word. . . . [A] statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word, shall be superfluous, void, or insignificant.") (quotations omitted); *cf. Air Transp. Assoc. v. Federal Energy Office*, 382 F. Supp. 437, 449 (D.D.C. 1974) ("A ***mandate*** to prescribe prices, necessarily implies ***authority*** to limit prices") (emphasis added).

Accordingly, this Court has the authority, which it has indeed already embraced, to transfer the State Court Actions to this Court.

**B.     <u>157(b)(5) Also Authorizes This Court to Return the Roanoke State Court Cases to Virginia for Trial</u>**

The RGL Plaintiffs argue that if the Court does transfer the State Court Actions to this Court pursuant to § 157(b)(5), the cases then "must" be tried in this Court. *See* RGLP Sur-Reply at 12. To the contrary, § 157(b)(5) explicitly provides this Court with the authority and discretion to, in its discretion and at an appropriate time, transfer the cases to the District Court for the Western District of Virginia for trial.

Section 157(b)(5) provides that

> [t]he district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, ***or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending***.

28 U.S.C. § 157(b)(5) (emphasis added); *see Podkolzin v. Amboy Bus Co.*, 402 B.R. 539, 543 (E.D.N.Y. 2009) ("[u]nder Section 157(b)(5) . . . a district court judge must set the venue" for where the personal injury case will be tried); *Hopkins v. Plant Insulation Co.*, 342 B.R. 703, 708 (D.Del. 2006) (explaining that under § 157(b)(5), the district court has the sole authority to determine the venue for a personal-injury action). In particular, the *Hopkins* court observed that under § 157(b)(5), "[i]n making a determination as to venue, the Court has three options. The Court may try the case in this jurisdiction, ***transfer the case to the district in which the claim***

shall, if possible, be accorded to every word. . . . [A] statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word, shall be superfluous, void, or insignificant.") (quotations omitted); *cf. Air Transp. Assoc. v. Federal Energy Office*, 382 F. Supp. 437, 449 (D.D.C. 1974) ("A ***mandate*** to prescribe prices, necessarily implies ***authority*** to limit prices") (emphasis added).

Accordingly, this Court has the authority, which it has indeed already embraced, to transfer the State Court Actions to this Court.

**B.     <u>157(b)(5) Also Authorizes This Court to Return the Roanoke State Court Cases to Virginia for Trial</u>**

The RGL Plaintiffs argue that if the Court does transfer the State Court Actions to this Court pursuant to § 157(b)(5), the cases then "must" be tried in this Court. *See* RGLP Sur-Reply at 12. To the contrary, § 157(b)(5) explicitly provides this Court with the authority and discretion to, in its discretion and at an appropriate time, transfer the cases to the District Court for the Western District of Virginia for trial.

Section 157(b)(5) provides that

> [t]he district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, ***or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending***.

28 U.S.C. § 157(b)(5) (emphasis added); *see Podkolzin v. Amboy Bus Co.*, 402 B.R. 539, 543 (E.D.N.Y. 2009) ("[u]nder Section 157(b)(5) . . . a district court judge must set the venue" for where the personal injury case will be tried); *Hopkins v. Plant Insulation Co.*, 342 B.R. 703, 708 (D.Del. 2006) (explaining that under § 157(b)(5), the district court has the sole authority to determine the venue for a personal-injury action). In particular, the *Hopkins* court observed that under § 157(b)(5), "[i]n making a determination as to venue, the Court has three options. The Court may try the case in this jurisdiction, ***transfer the case to the district in which the claim***

*arose*, or abstain from adjudicating the issue." 342 B.R. at 708 (emphasis added).

Accordingly, contrary to the RGL Plaintiffs' assertions that this Court *must* try the Roanoke State Court Cases, that "absolutely nothing about [§] 157(b)(5) . . . indicates any other outcome," RGLP Sur-Reply at 12, the plain language of § 157(b)(5) provides this Court with discretion to transfer the Roanoke State Court Cases to the Western District of Virginia for trial if it so decides that such a transfer would be appropriate at the conclusion of pretrial administration.

In addition, it must be noted that this Court has the authority pursuant to existing statutory vehicles to deny abstention now without prejudice to renewal (in the same way it denied the Trustee's request to transfer the Roanoke State Court Cases earlier this year, without prejudice to renewal, *see New Eng. Compounding Pharm. Prods. Liab. Litig.*, 496 B.R. at 264) and to revisit the issue under different circumstances at an appropriate time.  Specifically, 28 U.S.C. § 1334 provides that "nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11," and 28 U.S.C. § 1452 provides that although a party may remove any claim in a civil action to the district court for the district where such civil action in pending, "[t]he court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground."

C. **<u>Transfer Will Not and Cannot Deprive Plaintiffs of their Rights to a Jury Trial</u>**

The RGL Plaintiffs assert, without explanation, that transfer of the State Court Actions to this Court would effectively waive the plaintiffs' right to a jury trial.  *See* RGLP Sur-Reply at 12 (transfer to this Court "means that the plaintiffs will likely be *de facto* deprived of their right to a jury trial").

6

The Virginia plaintiffs are entitled to a jury trial in federal court by the Seventh Amendment to the United States Constitution. *See* U.S. Const. amend. VII. In addition, Rule 38 of the Federal Rules of Civil Procedure and Federal Rule of Bankruptcy Procedure 9015 (incorporating Rule 38), provides that "[t]he right of trial by jury as declared by the Seventh Amendment to the Constitution—or as provided by a federal statute—is preserved to the parties inviolate." *See* Fed. R. Civ. P. 38(a); Fed. R. Bankr. P. 9015.

Significantly and dispositively, 28 U.S.C. § 1411 provides that, with an exception not relevant here "***this chapter and title 11 do not affect any right to trial by jury that an individual has under applicable non-bankruptcy law with regard to a personal injury or wrongful death tort claim***." 28 U.S.C. § 1411(a) (emphasis supplied); *see Adams v. Cumberland Farms*, No. 95-1736, 1996 U.S. App. LEXIS 10458, at *14 (1st Cir. May 7, 1996) (noting that § 1411(a) may restrict, with respect to personal injury and wrongful death claims, the general rule that filing a proof of claim generally waives jury trial right).

Simply put, transfer pursuant to § 157(b)(5) will not and cannot deprive the Virginia plaintiffs of their right to a jury trial.

**D.**     **The RGL Plaintiffs' Proofs of Claim Create an Additional Basis for Jurisdiction.**

The RGL Plaintiffs assert in the RGLP Sur-Reply that this Court does not have related-to jurisdiction over the Roanoke Gentry Locke Plaintiffs' claims against Insight just because those plaintiffs have filed a proof of claim against NECC. *See* RGLP Sur-Reply at 12. However, as set forth more fully in the Omnibus Reply, the RGL Plaintiffs' proofs of claim do in fact provide an additional and dispositive basis for jurisdiction over the State Court Actions. *See* Omnibus Reply at 6-7 (citing *In re New Eng. Compounding Pharm. Prods. Liab. Litig.*, 496 B.R. at 267 n.3; *TD Bank, N.A. v. Sewall*, 419 B.R. 103 (Bankr. D. Me. 2009); *In re Baptist Found. of Arizona*, 2000 WL 35575676, at *1 (D. Ariz. June 30, 2000); *In re Curran*, 157 B.R. 500 (Bankr.

7

D. Mass. 1993)). Seeking to have their cake and eat it too, the RGL Plaintiffs assert that they may elect to file a proof of claim and participate in the Debtor's chapter 11 proceedings (and the distributions contemplated to flow to victims and creditors therefrom) with no jurisdictional consequences. Specifically, they contend that they filed their proofs of claim under the "duress" of the Bar Date Order and that this "duress" defeats the Trustee and Official Committee's jurisdictional arguments. RGLP Sur-Reply at 13.

The RGL Plaintiffs rely on *In re Castlerock Properties*, 781 F.2d 159 (9th Cir. 1986), for the proposition that "[w]here parties are forced to file proofs of claim as defensive maneuvers to preserve their rights, they are not 'consenting' to jurisdiction by the bankruptcy court." RGLP Sur-Reply at 13. The *Castlerock* court's narrow ruling was based upon unique facts not present here. In Castlerock, the debtor ("Castlerock") and a non-debtor ("Piambo") were involved in a breach of contract dispute. Pre-petition, Piambo filed a state court action based on the alleged breach. . After Castlerock filed a petition for relief under chapter 11 of the Bankruptcy Code, Piambo moved the Bankruptcy Court for relief from the automatic stay, pursuant to 11 U.S.C. § 362(d), to continue to pursue its state court action.

Although the Bankruptcy Court never granted that relief, it permitted the debtor, Castlerock, to pursue its own breach of contract claims against Piambo in Bankruptcy Court. In order to preserve its claims and affirmative defenses, Piambo filed a proof of claim. The issue presented to the *Castlerock* court was whether the Bankruptcy Court could enter a final judgment on Castlerock's state law claims against Piambo. Under the Bankruptcy Code, a Bankruptcy Court may only enter a final judgment in "core" cases. Castlerock argued that its claims were "core" under 28 U.S.C. § 157(b)(2)(C) (characterizing "counterclaims by the estate against person filing claims against the estate" as "core"). The United States Court of Appeals for the

8

Ninth Circuit rejected this reasoning, concluding that since Castlerock's adversary proceeding against Piambo in the Bankruptcy Court was filed *before* Piambo filed its proof of claim, Castlerock's adversary proceeding could not be characterized as a "counterclaim" to Piambo's proof of claim.

The debtor also argued that, by filing a proof of claim, Piambo had consented to the bankruptcy court's jurisdiction. Under the unique facts of this case, where the Bankruptcy Court had permitted the debtor to pursue claims while refusing to lift the automatic stay to permit Piambo to assert Piambo's claims, the Castlerock court refused to find such consent. The *Castlerock* holding, which has been characterized as "narrow,"[3] has no application to the instant case.[4]

---

[3] The court in *In BKW Systems, Inc.*, 66 B.R. 546 (Bankr. D.N.H. 1986), noted:

> [*In re Castlerock*] does not hold that creditors seeking to share in a bankruptcy estate, and any counterclaims that a bankruptcy debtor may have against such claimants, are outside the core jurisdiction of the bankruptcy courts. It dealt instead with a unique situation in which the creditor involved was not given an opportunity to freely elect whether or not to assert a claim in the bankruptcy proceeding. The bankruptcy court simply moved forward precipitously to assert jurisdiction over debtor's "counterclaim" against the creditor when the creditor had not yet filed a claim against the bankruptcy estate. The creditor had simply filed a motion for relief from the automatic stay, which was never acted upon by the bankruptcy court.

66 B.R. 546, 547-48 (Bankr. D.N.H. 1986) (internal citation omitted). That court further explained:

> The *Castlerock* decision I believe is best explained in terms of its actual narrow holding based upon the specific and rather peculiar procedural posture in which the issue was presented to the court of appeals.

*Id*.

[4] The RGL Plaintiff's reliance on *CIT Communications Financial Corp. v. Level 3 Communications, LLC*, F. Supp. 2d 380 (D. Del. 2007), is similarly misplaced. That case

(Continued…)

**CONCLUSION**

For all the foregoing reasons, the Trustee and the Official Committee respectfully request that this Court: (i) grant the Renewed Motion to Transfer; (ii) deny the Renewed Motion to Abstain; and (iii) enter an order transferring the State Court Actions to this Court for further proceedings.

Dated: February 6, 2014
Respectfully submitted,

| | |
|---|---|
| BROWN RUDNICK LLP | DUANE MORRIS LLP |
| By: /s/ David J. Molton | /s/ Michael R. Gottfried |
| David J. Molton, Esq. | Michael R. Gottfried (BBO #542156) |
| Seven Times Square | 100 High Street |
| New York, New York 10036 | Suite 2400 |
| Telephone: (212) 209-4800 | Boston, MA 02110-1724 |
| Facsimile: (212) 209-4801 | Phone: (857) 488-4200 |
| dmolton@brownrudnick.com | Email: mrgottfried@duanemorris.com |
| | |
| and | *Counsel for Paul D. Moore, Chapter 11 Trustee of New England Compounding Pharmacy, Inc. d/b/a New England Compounding Center* |
| William R. Baldiga, Esq. | |
| Kiersten A. Taylor, Esq. | |
| One Financial Center | |
| Boston, Massachusetts 02111 | |
| Telephone: (617) 856-8200 | |
| Facsimile: (617) 856-8201 | |
| wbaldiga@brownrudnick.com | |
| ktaylor@brownrudnick.com | |

and

---

(Continued…)

    addressed the scope of "post-confirmation" jurisdiction. In that context, the *Pacor* analysis is inapplicable. *Id*. at 386. Post-confirmation, the scope of jurisdiction is narrower, and only arises where a matter affects "the interpretation, implementation, consummation, execution, or administration of [a] confirmed plan." *Id*. at 386, citing *Binder v. Price Waterhouse & Co. (In re Resorts Int'l)*, 372 F.3d 154, 167 (3d Cir. 2004)).

Rebecca L. Fordon, Esq.
2211 Michelson Drive, 7th Floor
Irvine, California 92612
Telephone: (949) 752-7100
Facsimile: (949) 252-1514
rfordon@brownrudnick.com

*Counsel to the Official Committee of
Unsecured Creditors of New England
Compounding Pharmacy, Inc.*