**<u>Exhibit 3</u>**

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

In re:

    NUTRAQUEST, INC.,

               Debtor.

Civil Action No. 03-5869 (GEB)

United States Bankruptcy Court
Chapter 11 Case No. 03-44147 (RTL)

ORAL ARGUMENT REQUESTED

---

**BRIEF OF NUTRAQUEST, INC. IN SUPPORT OF MOTION
PURSUANT TO L. CIV. R. 7.1(G) TO RECONSIDER DENIAL OF
TRANSFER, PURSUANT TO 28 U.S.C. § 157(B)(5), OF *COBERLY V.
CYTODYNE TECHNOLOGIES, ET AL.***

 

**STERNS & WEINROTH**
**A Professional Corporation**
Simon Kimmelman, Esq. (SK-3654)
Jeffrey S. Posta, Esq.
50 West State Street, Suite 1400
P.O. Box 1298
Trenton, New Jersey 08607-1298
(609) 392-2100

Attorneys for Nutraquest, Inc., Debtor
and Debtor-in Possession

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT ........................................................................ 1

STATEMENT OF FACTS ................................................................................ 2

ARGUMENT ..................................................................................................... 6

POINT I ............................................................................................................. 6

      RECONSIDERATION OF THE DENIAL OF THE COBERLY
      ACTION IS WARRANTED UNDER THE CIRCUMSTANCES ............. 6

POINT II ........................................................................................................... 7

      11 U.S.C. § 157(B)(5) COMPELS THE TRANSFER OF THE
      COBERLY ACTION TO THIS COURT ALONG WITH THE
      PERSONAL INJURY ACTIONS ALREADY TRANSFERRED .............. 7

          A.    There Can be No Doubt that the Coberly Action Involves
                  Personal Injury Tort Claims against the Debtor and GNC
                  Which are Related to the Debtor's Chapter 11 Case and
                  Should be Transferred to this Court ....................................... 9

          B.    The Coberly Action Furthers the Same Goals of
                  Centralization of the Litigation in a Single Forum as the
                  Personal Injury Actions Heretofore Transferred to This
                  Court Pursuant to 11 U.S.C. § 157(b)(5) ............................. 13

CONCLUSION ................................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

A.H. Robins Co. v. Piccinin,
  788 F.2d 994 (4th Cir. 1986) .................................................................8, 12, 14

Apex Inv. Assocs., Inc. v. TJX Cos., Inc.,
  121 B.R. 522 (N.D. Ill. 1990) ......................................................................... 12

Arnold v. Gerlock, Inc.,
  278 F.3d 426 (5th Cir. 2001) ......................................................................... 15

Ass'n of St. Croix Condo. Owners v. St. Croix Hotel,
  682 F.2d 446 (3d Cir. 1982) ............................................................................9

Baumgart v. Fairchild Aircraft Corp.,
  981 F.2d 824 (5th Cir. 1993) ............................................................................8

Belcufine v. Aloe,
  112 F.3d 633 (3d Cir. 1997) .......................................................................... 11

Bowers v. NCAA,
  130 F. Supp. 2d 610 (D.N.J. 2001) ...................................................................7

Calumet Nat'l Bank v. Levine,
  179 B.R. 117 (N.D. Ind. 1995) ...................................................................... 14

Diversified Mortgage Co., Inc. v. Gold, et al. (In re Gold),
  247 B.R. 574 (Bankr. D. Mass.) ..................................................................... 12

Dogpatch Props., Inc. v. Dogpatch U.S.A., Inc. (In re Dogpatch
  U.S.A., Inc.),
  810 F.2d 782 (8th Cir. 1987) ......................................................................... 12

Ellis v. Consol. Diesel Elec. Corp.,
  894 F.2d 371 (10th Cir. 1990) ..........................................................................9

Harsco Corp. v. Zlotnicki,
  779 F.2d 906 (3d Cir. 1985), cert. denied, 476 U.S. 1171 (1986) .......................7

In re Brentano's, Inc.,
  27 B.R. 90 (Bankr. S.D.N.Y. 1983) ................................................................ 11

In re Pan Am. Corp.,
  950 F.2d 839 (2d Cir. 1991) ...................................................................... 14

Kelly S. Coberly v. Cytodyne Technologies, Inc. and General
  Nutrition Corp.,
  Civil Action No. 03-C-89 ...................................................................... 1, 3, 5

Lindsey v. O'Brien, Tanski, Tanzer, and Young Health Care
  Providers of Connecticut, et al. (In re Dow Corning Corp.),
  86 F.3d 482 (6th Cir. 1996) ...................................................................... passim

Maritime Elec. Co., Inc. v. United Jersey Bank,
  959 F.2d 1194 (3d Cir. 1991) ...................................................................... 9

McCartney v. Integra Nat'l Bank N.,
  106 F.3d 506 (3d Cir. 1997) ...................................................................... 13

P. Schoenfeld Asset Mgmt., LLC v. Cendant Corp.,
  161 F. Supp. 2d 349 (D.N.J. 2001) ...................................................................... 6

Pacor v. Higgins,
  743 F.2d 984 (3d Cir. 1984) ...................................................................... 11, 12

Philippe v. Shape, Inc.,
  103 B.R. 355 (D. Me. 1989) ...................................................................... 12

Pittston Co. v. Sedgwick James of N.Y., Inc.,
  971 F. Supp. 915 (D.N.J. 1997) ...................................................................... 7

Pope v. Manville Forest Prods. Corp.,
  778 F.2d 238 (5th Cir. 1985) ...................................................................... 9

Triffin v. 611 Machine Sales, Inc., et al.,
  1992 WL 392620, at *1 (E.D. Pa. Dec. 16, 1992) ...................................................................... 9

United States v. Nat'l City Lines,
  334 U.S. 573 (1948) ...................................................................... 8

## STATUTES

11 U.S.C. § 362(a)(1) ...................................................................... 9

28 U.S.C. § 1334(b) ...................................................................... 12

28 U.S.C. § 157(b)(5) ...................................................................... passim

U.C.C. § 2-105(1) .................................................................................. 5

**OTHER AUTHORITIES**

130 Cong. Rec. H7492 (June 29, 1984) ................................................. 14

**RULES**

Fed. R. Civ. P. 41(a) ............................................................................ 9

L. Civ. R. 7.1(g) ................................................................................... 4

## PRELIMINARY STATEMENT

By Order dated January 22, 2004, this Court ordered, pursuant to 28 U.S.C. § 157(b)(5), that fifty-two (52) personal injury tort and wrongful death actions (collectively, the "Personal Injury Actions") pending in various federal and state courts be transferred to this Court. The Personal Injury Actions assert numerous claims arising out of the formulation, manufacture, distribution, marketing and/or sale of *Xenadrine RFA-1*, a dietary supplement which was distributed by Nutraquest, Inc. (the "Debtor") until early 2003. The Court's ruling was a critical step in facilitating the Debtor's efforts to successfully reorganize by ensuring an orderly and efficient disposition of the disputed litigation claims that are at the heart of the Debtor's reorganization case.

While ordering the transfer of the Personal Injury Actions to this Court, the Court declined to transfer the personal injury action entitled <u>Kelly S. Coberly v. Cytodyne Technologies, Inc. and General Nutrition Corp.</u>, Civil Action No. 03-C-89, pending in the United States District Court for the Northern District of West Virginia (the "Coberly Action"), on the ground that the Debtor was not a defendant therein. However, the plaintiff's voluntary "without prejudice" dismissal of the Debtor from her lawsuit on or about January 9, 2004 (in an apparent tactical maneuver in response to the Debtor's Motion to Transfer Personal Injury Tort and Wrongful Death Claims to This Court Pursuant to 28 U.S.C. § 157(b)(5) served on or about December 12, 2004) does not change the fact that, like a number of the Personal Injury Actions that have been transferred to this Court, the Debtor's chapter 11 estate (the "Debtor's Estate") will be adversely impacted by any judgment entered in the Coberly Action against defendant General Nutrition Corp.

1

("GNC"). This adverse consequence would be caused by the Debtor's obligation to fully indemnify GNC for any judgment entered against it pursuant to the terms of the express contractual indemnification agreement between the Debtor and GNC. This effect on the Debtor's Estate alone compels the transfer of the Coberly Action to this Court.

As discussed more fully below, the same reasons that justified the transfer of the Personal Injury Actions to this Court equally apply to the Coberly Action and militate in favor of this Court exercising its broad discretion to transfer the Coberly Action pursuant to 28 U.S.C. § 157(b)(5). Those reasons include not only the impact of a judgment against GNC upon the Debtor's assets, but also the need to liquidate plaintiff's claims against the Debtor in a manner that fosters judicial economy, uniformity of administration of multiple similar lawsuits, cost efficiencies and avoidance of inconsistent findings of fact and results. The Debtor, therefore, respectfully seeks reconsideration of the Court's denial of the transfer of the Coberly Action.

## STATEMENT OF FACTS

### The Debtor and Its Business

On October 16, 2003 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the bankruptcy court. The Debtor continues to operate its business as a debtor-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code.

The Debtor, formerly known as Cytodyne Technologies, Inc. ("Cytodyne"), was founded in April of 1997, to market and distribute sports nutrition/dietary

supplement products, including *Xenadrine RFA-1*, a dietary supplement designed
to help people lose weight and increase energy.

## *Xenadrine* Actions

*Xenadrine RFA-1* contained the herbal equivalents of caffeine and ephedra
(ma huang), substances that have been used safely for centuries. As noted in
numerous of the Debtor's filings in its bankruptcy case, ephedra increasingly has
been the subject of public criticism and allegedly has been connected to various
adverse reactions. Accordingly, the Debtor has been the subject of numerous
lawsuits in various states and Canada, primarily products liability cases alleging
personal injury tort or wrongful death claims resulting from the consumption of
*Xenadrine RFA-1* (the "*Xenadrine* Actions"). The Debtor vigorously defended all
*Xenadrine* Actions until the Petition Date, at which time the actions were stayed as
against the Debtor. On January 22, 2004, this Court granted the Debtor's Motion
to Transfer Personal Injury Tort and Wrongful Death Claims to This Court
Pursuant to 28 U.S.C. § 157(b)(5) [Docket No. 1] (the "Transfer Motion") and
ordered that 52 of the *Xenadrine* Actions involving personal injury tort or wrongful
death claims be transferred to this Court, pursuant to 28 U.S.C. § 157(b)(5). See
Order Granting Motion to Transfer Personal Injury Tort and Wrongful Death
Claims to this Court Pursuant to 28 U.S.C. § 157(b)(5) [Docket No. 16] (the
"Transfer Order").

## The Coberly Action

Like the 52 cases heretofore transferred to this Court, the Coberly Action is
an "ephedra-related" personal injury tort action asserting claims based upon the
design, manufacture and/or sale of *Xenadrine.* Kelly S. Coberly ("Coberly")
alleges that she purchased the Debtor's ephedrine-based *Xenadrine* product from
GNC in West Virginia in late June 2001, and, as a result of her later ingestion of

3

this product, she suffered personal injury. Coberly initiated the Coberly Action by filing a Complaint against Cytodyne and GNC on October 20, 2003, in the circuit court of Upshur County, West Virginia. In her Complaint, Coberly alleges, *inter alia*, that both the Debtor and GNC are responsible for the injuries she sustained as a result of her consumption of *Xenadrine.*

On or about October 24, 2003, Shane Freedman, general counsel of the Debtor, informed Coberly's attorney that the Debtor had filed a chapter 11 petition on October 16, 2003, and that the automatic stay prevented her from further prosecuting her action against the Debtor. See Certification of Shane H. Freedman, Esq., in Support of Motion Pursuant to L. Civ. R. 7.1(g) to Reconsider Denial of Transfer, Pursuant to 28 U.S.C. § 157(b)(5), of Coberly v. Cytodyne Technologies, et al. ("Freedman Cert."), ¶ 4. On November 19, 2003, GNC removed the Coberly Action to the United States District Court for the Northern District of West Virginia.

On January 9, 2004, some *seventy-seven (77) days after* Coberly was first notified of the Debtor's bankruptcy filing and *approximately twenty-eight (28) days after* the Debtor served Coberly with the Transfer Motion (see Debtor's Certificate of Service of Transfer Motion, dated December 12, 2003) [Docket No. 3], Coberly filed Plaintiff's Notice of Dismissal of Defendant Cytodyne Technologies in the United States District Court for the Northern District of West Virginia, purporting to dismiss Cytodyne Technologies, Inc. without prejudice and leaving GNC, a non-debtor, as the only remaining defendant.

On that very same day (and, notably, three days after the deadline for objections to the Transfer Motion), Coberly filed and served[1] her opposition to the

---

[1] According to Coberly's counsel's certificate of service, the Debtor's counsel was served on January 9, 2004 by United States certified mail service. Since Debtor's

Transfer Motion, wherein she argued that since she had "no pending action against Debtor, transfer of her remaining causes of action against other defendants [sic] was not appropriate." <u>See</u> Memorandum of Creditor Kelly S. Coberly's Opposition to Motion to Transfer Personal Injury Tort to This Court Pursuant to 28 U.S.C. § 157(b)(5) (copy attached as Exhibit A), at p.2.

**The Indemnification Agreement**

GNC was one of the retailers that contracted with the Debtor to sell its products, including *Xenadrine RFA-1*. In furtherance of their business alliance, the Debtor agreed to indemnify (the "Indemnification Agreement") GNC against, among other things, costs and judgments arising out of third-parties' use of the Debtor's goods sold to the public by GNC. Specifically, the Indemnification Agreement provides as follows:

> INDEMNITY. The [Debtor] agrees to defend, indemnify, and hold [GNC] and [its] affiliates and subsidiaries harmless from and against all claims, expense, liability, loss and damage, including reasonable attorney's fees, resulting from or arising in connection with (i) the failure of the Goods[2] to conform in any respect to the representations and warranties contained in any part of this purchase order; (ii) the failure of the Goods to meet label claim or [GNC's] quality control standards; (iii) with the promotion, sale, purchase, resale, or use of the Goods or any litigation or threatened litigation

---

counsel had not reviewed Coberly's opposition by the time the Debtor's Reply Brief was being drafted, it was not addressed therein. However, as noted herein, Coberly's opposition raises nothing that would make this Court's findings in entering the Transfer Order inapplicable to Coberly, or warranting a different result as to the Coberly Action.

[2] The Indemnification Agreement ascribes to "Goods" the definition provided for by the Uniform Commercial Code. The U.C.C. defines "Goods" generally to mean "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale." U.C.C. § 2-105(1). Therefore, the Goods referenced in the Indemnification Agreement include *Xenadrine RFA-1*.

> based thereon; and (iv) all intellectual property, trademark,
> trade dress, and patent infringement claims. This indemnity
> and defense shall be in addition to other remedies afforded
> [GNC] or its affiliates at law or in equity. This indemnity
> and defense shall survive acceptance of the Goods and
> payment therefore by Buyer. The [Debtor] further agrees to
> assume [GNC's] contractual obligations to defend and
> indemnify its affiliates from all claims, expense, liability
> loss, and damage, including reasonable attorney's fees,
> resulting from the promotion, sale, purchase, resale, or use
> of the Goods.

See Freedman Cert., Ex. D, at p.9 ¶ 10.

Clearly, the terms of the Indemnification Agreement render the Debtor responsible for any judgment entered against GNC in the Coberly Action as well as for the costs of defending such action. A judgment entered against GNC is, therefore, effectively a judgment entered against the Debtor, and will necessarily impact the Debtor's Estate and its assets. See Lindsey v. O'Brien, Tanski, Tanzer, and Young Health Care Providers of Connecticut, et al. (In re Dow Corning Corp.), 86 F.3d 482, 494 (6th Cir. 1996) ("Dow Corning I").

## ARGUMENT

## POINT I

### RECONSIDERATION OF THE DENIAL OF THE COBERLY ACTION IS WARRANTED UNDER THE CIRCUMSTANCES

Under Local Civil Rule 7.1(g), reconsideration may be granted upon a showing that the Court "overlooked" a dispositive factual matter or a controlling decision of law that was presented to the Court on the underlying application. The "'purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence.'" P. Schoenfeld Asset Mgmt., LLC v. Cendant Corp., 161 F. Supp. 2d 349, 352 (D.N.J. 2001) (quoting Harsco Corp. v.

Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985), cert. denied, 476 U.S. 1171 (1986)).[3]
Where matters were overlooked, which, if considered by the Court, might
reasonably have resulted in a different conclusion, the Court is required to grant
such a motion.  See Bowers v. NCAA, 130 F. Supp. 2d 610 (D.N.J. 2001); Pittston
Co. v. Sedgwick James of N.Y., Inc., 971 F. Supp. 915 (D.N.J. 1997).  Based upon
the unique circumstances herein, this Court should grant the Debtor's Motion, as
the Court overlooked the facts that (i) even though Coberly voluntarily "dismissed"
the Debtor, the Indemnification Agreement with GNC is an equally compelling
basis for transfer of the Coberly Action; and (ii) Coberly's untimely objection to
the Transfer Motion made it impossible for the Debtor to properly address the
arguments contained therein regarding the effect (or, more accurately in this
instance, the lack thereof), of the voluntary dismissal of the Debtor from the
Coberly Action.

## POINT II

### 11 U.S.C. § 157(B)(5) COMPELS THE TRANSFER OF THE COBERLY ACTION TO THIS COURT ALONG WITH THE PERSONAL INJURY ACTIONS ALREADY TRANSFERRED

Section 157(b)(5) provides:

---

[3] While the Schoenfeld and Harsco courts ultimately denied the movants' motions
for reconsideration, they did so based upon the specific circumstances of each case.
In Schoenfeld, the court reasoned that the motion for reconsideration could not be
granted because, inter alia, the motion was merely an attempt to have the court
consider matters that could have been previously raised by the movant but were
not.  Schoenfeld, 161 F. Supp. 2d at 355.  In Harsco, the Third Circuit reviewed the
district court's denial of the movant's motion for reconsideration and concluded
that the district court did not err in entering summary judgment in favor of the
respondent to the motion for reconsideration.  Harsco, 779 F.2d at 912.  Unlike
those present in Schoenfeld and Harsco, the factual circumstances described in this
brief compel a finding that reconsideration is warranted.

> The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

28 U.S.C. § 157(b)(5). The mandatory language of § 157(b)(5) reflects Congress' clear intent that the plaintiff's choice of forum give way in a bankruptcy case. A.H. Robins Co. v. Piccinin, 788 F.2d 994, 1010 (4th Cir. 1986); Baumgart v. Fairchild Aircraft Corp., 981 F.2d 824, 834 (5th Cir. 1993) (§ 157(b)(5) was intended to permit "the district court in which the bankruptcy case is pending to qualify the choice of venue made by a plaintiff, and was not enacted 'to vest the power of choice in the plaintiff'"), cert. denied, 508 U.S. 973 (1993) (quoting United States v. Nat'l City Lines, 334 U.S. 573, 597 (1948)). This Court has already held that this District is a proper district to which to transfer the Personal Injury Actions pursuant to section 157(b)(5). See Transfer Order at ¶ 2. However, because the Debtor had been voluntarily "dismissed" as a defendant to the Coberly Action, at the hearing held on January 20, 2004, the Court excluded the Coberly Action from the Transfer Order. For the reasons noted below, the Debtor respectfully submits that such determination by the Court overlooked both the dispositive factual matters and the controlling decisions of law which caused this Court to grant the Transfer Motion as to the 52 other Personal Injury Actions -- that are equally applicable to the Coberly Action.

**A.  There Can be No Doubt that the Coberly Action Involves Personal Injury Tort Claims against the Debtor and GNC Which are Related to the Debtor's Chapter 11 Case and Should be Transferred to this Court.**

As noted in the factual recitation above, the Coberly Action was commenced as a suit against <u>both</u> the Debtor and one of its retailer contracting parties, GNC.[4] However, contemporaneous with the filing of Coberly's opposition to the Transfer Motion on January 9, 2004, Coberly filed a "Notice of Dismissal of Defendant Cytodyne Technologies" in the Coberly Action pursuant to Fed. R. Civ. P. 41(a).[5]

_____

[4] Because the Coberly Action was commenced against the Debtor in violation of the automatic stay, it is void as against the Debtor (although Coberly remains free to file a claim in the Debtor's Chapter 11 case for the relief it sought therein). Nonetheless, as set forth above, the Coberly Action is appropriate for transfer to this District because, among other things, the personal injury claims asserted against the non-debtor GNC therein are related to the Debtor's bankruptcy case and the transfer would facilitate the administration of the Debtor's Estate.  In addition, Coberly has not waived her right to file a proof of claim in the Debtor's proceeding.

[5] Fed. R. Civ. P. 41(a) allows a plaintiff to file a notice of dismissal "at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs…."  However, where a party to an action files a petition for bankruptcy, "'if either of the parties takes any step to obtain dismissal, …there is clearly a continuation of the judicial proceeding [in contravention of the automatic stay provision contained in 11 U.S.C. § 362(a)(1)]'…[T]he automatic stay is not avoided simply because the district court might find for the debtor." <u>Triffin v. 611 Machine Sales, Inc., et al.</u>, 1992 WL 392620, at *1 (E.D. Pa. Dec. 16, 1992) (citing <u>Pope v. Manville Forest Prods. Corp.</u>, 778 F.2d 238, 239 (5th Cir. 1985); <u>Maritime Elec. Co., Inc. v. United Jersey Bank</u>, 959 F.2d 1194, 1206 (3d Cir. 1991)); <u>see also</u> <u>Ellis v. Consol. Diesel Elec. Corp.</u>, 894 F.2d 371, 373 (10th Cir. 1990) (citing <u>Ass'n of St. Croix Condo. Owners v. St. Croix Hotel</u>, 682 F.2d 446, 449 (3d Cir. 1982)) (holding that "[t]he operation of the stay should not depend upon whether the district court finds *for* or *against* the debtor.").  The post-petition dismissal of the Debtor from the Coberly Action is, thus, a clear violation of the automatic stay.  <u>Ellis</u>, 894 F.2d at 372.  Importantly, however, because Coberly *intended* to file an action against the Debtor and thereafter attempted to dismiss the Debtor in response to the Debtor's Transfer Motion, it is clear that

9

Coberly, therefore, argued in her opposition to the Transfer Motion that since she
had "no pending action against Debtor, transfer of her remaining causes of action
against other defendants is not appropriate." See Exhibit A at p. 2.[6]  As noted
above, the only remaining defendant in the Coberly Action is GNC, the retailer
from whom Coberly alleges she purchased the Debtor's *Xenadrine* product, see id.,
and a party that the Debtor expressly has agreed to indemnify, defend and hold
harmless from all claims, expenses, liabilities, losses and damages resulting from
the use of such products.

Despite Coberly's suggestions to the contrary, transfer pursuant to 28 U.S.C.
§ 157(b)(5) is not limited to claims against a debtor.  This point was made clear by
the oft-cited decision of the Sixth Circuit Court of Appeals in the Chapter 11 case
of Dow Corning.  See Dow Corning I, 86 F.3d at 497 (§ 157(b)(5) allows the
transfer of claims against non-debtor defendants that are related to the debtor's
bankruptcy case).  As set forth above, there can be no dispute that the claims
asserted against GNC in the Coberly Action arise out of the same facts and
circumstances that this Court found to be compelling in ordering the transfer of the
similar "related to" claims and causes of action against the non-debtor defendants
in the Personal Injury Actions.

---

Coberly's without prejudice "dismissal" was a tactical maneuver intended to
circumvent the congressional mandate of section 157(b)(5).

[6] Coberly also argued that this Court should abstain from granting the Transfer
Motion as to the Coberly Action, relying in substantial part on the fact that she had
dismissed her case against the Debtor and that plaintiff had a "fundamental right to
have a jury trial of her peers in" West Virginia as the forum where she alleges to
have purchased the Debtor's product and suffered damages from ingestion thereof.
However, the Court found such arguments unpersuasive in granting the Transfer
Motion.

The Indemnification Agreement entered into by and between the Debtor and GNC expressly provides that the Debtor is obligated to indemnify GNC for any *Xenadrine*-related judgment entered against GNC, which would include a judgment entered in the Coberly Action. Accordingly, the Coberly Action is unquestionably "related to" the Debtor's bankruptcy and should be transferred to this Court pursuant to section 157(b)(5), as the Debtor is contractually obligated to indemnify GNC in the event it is found liable to Coberly.

> A proceeding is "related to" a bankruptcy if
>
>> the outcome of the proceeding could <u>conceivably</u> have <u>any</u> effect on the estate being administered in bankruptcy…
>
> * * *
>
>> [or, stated otherwise, if] the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

<u>Pacor v. Higgins</u>, 743 F.2d 984, 994 (3d Cir. 1984) (emphasis added).

In <u>Pacor</u>, the Third Circuit held that a contingent common law claim for indemnification against the debtor held by a non-debtor defendant in a state court lawsuit did not render the suit between two non-debtors "related to a bankruptcy case." <u>Pacor</u>, 743 F.2d at 995-95. However, in so holding, the court distinguished <u>In re Brentano's, Inc.</u>, 27 B.R. 90 (Bankr. S.D.N.Y. 1983), noting that the non-debtor party in Brentano's had a contractual right of indemnification against the debtor and that a judgment against the non-debtor party would have automatically resulted in an indemnification liability against Brentano's. <u>Pacor</u>, 743 F.2d at 995. Moreover, in <u>Belcufine v. Aloe</u>, 112 F.3d 633, 636-37 (3d Cir. 1997), a case in which the Debtor's indemnification obligation to its officers was expressly provided for in the Debtor's by-laws, the Third Circuit explicitly held that an

action by the Debtor's employees against the Debtor's officers was related to the
Debtor's bankruptcy case.  The Court went so far as to note that "Pacor specifically
notes that contractual indemnity claims can have an effect on a bankruptcy estate
and thus provide a basis for the exercise of 'related to' jurisdiction." Id. at 636
(citing Pacor, 743 F.2d at 995; A.H. Robins, 788 F.2d at 1001).

In addition, there is ample authority for the proposition that this Court has
'related to' jurisdiction over proceedings where neither the debtor nor the estate is
a named defendant if the defendant has indemnification rights against the debtor or
the estate." Diversified Mortgage Co., Inc. v. Gold, et al. (In re Gold), 247 B.R.
574, 578 (Bankr. D. Mass.) (citing Philippe v. Shape, Inc., 103 B.R. 355 (D. Me.
1989); Dogpatch Props., Inc. v. Dogpatch U.S.A., Inc. (In re Dogpatch U.S.A.,
Inc.), 810 F.2d 782 (8th Cir. 1987); A.H. Robins Co., Inc. v. Piccinin (In re A.H.
Robins Co., Inc.), 788 F.2d 994 (4th Cir. 1986), cert. denied, 479 U.S. 876 (1986));
see also 28 U.S.C. § 1334(b) (vesting jurisdiction in this Court over, inter alia,
proceedings that are "related to" a bankruptcy case).

Significantly, courts in other jurisdictions have found proceedings in which
the debtor was never a party to the litigation to be related to the debtor's
bankruptcy case so as to provide the bankruptcy court with jurisdiction over the
litigation.  See Apex Inv. Assocs., Inc. v. TJX Cos., Inc., 121 B.R. 522 (N.D. Ill.
1990).  In Apex, the plaintiff brought an action against TJX, the defendant-
corporation, as the guarantor for the debtor-corporation's lease payments.  Id.
However, TJX and the debtor had previously entered into an express
indemnification agreement, whereby the debtor was contractually obligated to
indemnify TJX for "'any…liability…suffered or incurred by [TJX] to the extent
arising from…(iii) any obligations of liabilities of [TJX]…pertaining to the
[debtor]....'" Id. at 526.  The court ultimately held that because there existed

12

explicit, contractual indemnification obligations on the part of the debtor, "[t]he resolution of this case will affect the arrangement of the creditors, and alter the debtor's rights and liabilities with respect to the claims against the estate. Consequently, this case falls within the jurisdiction of the bankruptcy court." Id. at 526-27; accord Dow Corning I, 86 F.3d at 494 ("The potential for Dow Corning's being held liable to the nondebtors in claims for…indemnification…suffices to establish a conceivable impact on the estate in bankruptcy. Claims for indemnification…, whether asserted against or by Dow Corning, obviously would affect the size of the estate and the length of time the bankruptcy proceedings will be pending, as well as Dow Corning's ability to resolve its liability and proceed with reorganization.").

Therefore, despite Coberly's procedural maneuvering to avoid transfer of the Coberly Action to this Court, both Third Circuit law and factually apposite decisions of other jurisdictions compel the finding that, notwithstanding the "dismissal" (without prejudice) of the Debtor as a named defendant, the Coberly Action is nonetheless "related to" the Debtor's chapter 11 case and is, thus, clearly subject to this Court's jurisdiction.[7]

## B.  The Coberly Action Furthers the Same Goals of Centralization of the Litigation in a Single Forum as the Personal Injury Actions Heretofore Transferred to This Court Pursuant to 11 U.S.C. § 157(b)(5).

"[T]he manifest purpose of § 157(b)(5) [is] 'to centralize the administration of the estate and to eliminate the multiplicity of forums for the adjudication of parts of a bankruptcy case.'" In re Pan Am. Corp, 950 F.2d 839, 845 (2d Cir.

---

[7] The Third Circuit has also recognized that jurisdiction over claims against non-debtors is appropriate where the non-debtor's liability was "directly attributable to the debtor." McCartney v. Integra Nat'l Bank N., 106 F.3d 506, 510 (3d Cir. 1997).

1991) ("Pan Am. I") (quoting 130 Cong. Rec. H7492 (June 29, 1984); citing A.H.
Robins, 788 F.2d at 1011); In re Pan Am. Corp., 16 F.3d 513, 516 (2d Cir. 1994)
("Pan Am. II") (citations omitted) ("Congress enacted section 157(b)(5) to expand
the district court's venue-fixing powers with an eye to centralizing the adjudication
of a bankruptcy case."); Dow Corning I, 86 F.3d at 496-97 (centralized
adjudication under section 157 allows "'all interests [to] be heard" and "the interest
of all claimants [to] be harmonized'" and ensures a "prompt, fair and complete
resolution of all claims 'related to' bankruptcy proceedings"). Transfers create a
"single focal point" for developing a reasonable plan of reorganization. See A.H.
Robins, 788 F.2d at 1011; see also Calumet Nat'l Bank v. Levine, 179 B.R. 117,
121 (N.D. Ind. 1995) ("Moreover, a purpose behind section 157(b)(5) is making it
possible for a single forum to oversee the many claims and proceedings that might
arise in or affect a bankruptcy case.").

This Court recognized the need to centralize the Personal Injury Actions
when it entered the Transfer Order. Specifically, transfer of the Personal Injury
Actions will enable the Court to centralize the adjudication of the direct and
indirect (including indemnification) claims against the Debtor so as to (i) further
the efficient administration of the Debtor's Estate, (ii) ensure that the Personal
Injury Actions are resolved so as to minimize the burden on the Debtor and
conserve its limited assets, (iii) ensure that inconsistent results based upon the
factually analogous circumstances in the Personal Injury Actions do not occur, and
(iv) ensure that similarly situated creditors are treated equitably. Therefore, the
principles and intent of section 157(b)(5) make clear that transfer is manifestly
appropriate in the case of all of the *Xenadrine* Actions, including the Coberly
Action.

Moreover, where, as here, the claims asserted against GNC, the non-debtor defendant, arise solely out of its association with the Debtor and its products, courts have recognized that transfer of those claims is appropriate. As the Sixth Circuit noted:

> it makes little practical sense to transfer the claims against Dow Corning while refusing to transfer those against the shareholders. The claims against the shareholders arise from an identical set of facts and are merely duplicates of those against Dow Corning. The shareholders have never manufactured a silicone-implant product and are only named in the suits because of their association with Dow Corning. Thus, the actions against Dow Corning's shareholders are essentially the same exact cases that have already been transferred to the Eastern District of Michigan. The district court's decision to transfer only the claims against Dow Corning basically expanded an already overwhelming litigation burden.

<u>Lindsey v. The Dow Chem. Co.</u> (<u>In re Dow Corning Corp.</u>), 113 F.3d 565, 570 (6th Cir. 1997); <u>see also</u> <u>Arnold v. Gerlock, Inc.</u>, 278 F.3d 426, 435, 440 (5th Cir. 2001).

Similarly, since the Court transferred Personal Injury Actions in which non-debtor retailer defendants are also present, it makes sense to transfer Coberly's claims filed against GNC, which are based upon a similar association with the Debtor and a similar sale of the Debtor's ephedra products as the other non-debtor defendants. As amply noted above, under the circumstances presented, it is simply irrelevant to the issue of transfer pursuant to 157(b)(5) that the Debtor is not now a defendant in the action. Moreover, the goals inherent in centralizing the Personal Injury Actions will be hindered by a decision to leave the Coberly Action in the Northern District of West Virginia, due to the adverse impact that continued prosecution of the Coberly Action outside this Court will have on the Debtor's Estate.

## CONCLUSION

Therefore, (i) as the Coberly Action involves the same core facts concerning the Debtor's products and the potential liabilities arising therefrom as the Personal Injury Actions, and (ii) as the goals of centralization that this Court found to be compelling so as to allow for transfer of the Personal Injury Actions pursuant to section 157(b)(5) will also be furthered by the transfer of the Coberly Action, we respectfully request that this Court reconsider its denial and order the transfer of the Coberly Action to this Court.

Dated:  February 5, 2004         Respectfully submitted,
        Trenton, New Jersey

                                        By:  /s/ Simon Kimmelman
                                            STERNS & WEINROTH
                                            A Professional Corporation
                                            Simon Kimmelman, Esq. (SK-3654)
                                          Jeffrey S. Posta, Esq.
                                          50 West State Street, Suite 1400
                                            P.O. Box 1298
                                          Trenton, New Jersey  08607-1298
                                          (609) 392-2100

                                            Attorneys for Nutraquest, Inc., Debtor
                                          and Debtor-in-Possession