**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | MDL No. 2419<br>Dkt. No. 1:13-md-2419 (FDS) |
| THIS DOCUMENT RELATES TO:<br>All Actions | Leave to file granted Feb. 6, 2014 [Dkt. 872] |

**PLAINTIFFS' STEERING COMMITTEE'S REPLY IN
SUPPORT OF MOTION FOR ENTRY OF COMMON BENEFIT ORDER**

**I.    INTRODUCTION**

The Plaintiffs' Steering Committee ("PSC") respectfully files this reply to address three issues raised by the responses to the PSC's Motion for Entry of Common Benefit Order.[1] First, the PSC's motion merely asks this Court to segregate, as an initial hold back, a percentage of any funds payable to tort claimants who have filed claims in the MDL or are otherwise beneficiaries of the common benefit work done in this litigation. The held back funds would be placed in escrow, and would only be distributed by express order of this Court after all interested parties have an opportunity to be heard on (and, potentially, object to) distribution at some future time. The Motion does not address who is entitled to these funds, under what criteria, or how the funds will ultimately be distributed. The PSC is committed to a fair and inclusive process if and when it comes time for the Court to distribute any common benefit funds. But any request to address the issue of entitlement to these funds now is premature and unnecessary.

Second, as to the manner in which the segregation of these funds is accomplished, the PSC does not take a position, but does point out the possible alternatives for the Court's

---

[1] Limited Objections filed by the Chapter 11 Trustee of the New England Compounding Pharmacy, Inc. ("Trustee Br.") (Dkt. No. 834), Limited Objections filed by the Official Committee of Unsecured Creditors ("OCC Br.") (Dkt. No. 833), Response Filed by Certain Members of the Official Committee of Unsecured Creditors ("Members' Br.") (Dkt. No. 830), Opposition Filed by Plaintiffs Dale and Allison Devilli (Dkt. No. 836), and Response of Interested Plaintiffs' Counsel (Dkt. No. 839).

1

consideration.  The PSC does not seek to "seize or otherwise interfere with property of the NECC estate without the required leave of the bankruptcy court" *see, e.g.,* OCC Br. at p. 2, ¶ 2; rather, the PSC merely seeks to segregate these funds in the most efficient manner.

Third, the OCC's request – echoed by some members of the OCC – that the Court declare that members of the OCC are entitled to payment of common benefit fees in the MDL for work done in their role as members of the OCC is antithetical to both the law and the policy of the United States Trustee.  The express provisions of the bankruptcy code prohibit OCC members from obtaining payment of fees by their individual attorneys.  The United States Trustee informed each applicant to the OCC of this fact before appointing them to the creditor's committee.

The PSC does not object to members of the OCC applying for reimbursement for their efforts in the MDL litigation that adhere to this Court's established procedures for reporting common benefit work.  But the OCC members' request that they be exempt from the requirements of MDL Order No. 3 regarding eligibility for common benefit work should be denied.  This Court established procedures, set forth in MDL Order No. 3, intended to ensure that this litigation is conducted efficiently, with the goal of maximizing funds available to NECC's victims.  To achieve this end, common benefit work must be performed in an orderly and coordinated fashion –without needless duplication of effort.  The procedures adopted by the Court apply, of course, not only to OCC members but to all lawyers, including PSC members and designees.  They ensure efficiency and maximize victim recovery and should be strictly enforced, not abandoned.

## II.     FACTUAL BACKGROUND

On February 12, 2013, the Judicial Panel on Multidistrict Litigation issued its Transfer Order centralizing all actions pending in federal court related to injuries arising from the alleged contamination of drugs compounded at New England Compounding Pharmacy in this Court for coordinated or consolidated pre-trial proceedings.

In its April 9, 2013, MDL Order No. 2 (Dkt. No. 82), this Court appointed Plaintiffs' Lead Counsel and a Plaintiffs' Steering Committee.  These counsel have spearheaded the MDL litigation for the common benefit of all Plaintiffs.  Given the potentially limited-fund nature of this case, and the desire to maximize the amount of recovery for victims, the PSC made it its mission to limit fees and expenses and run a streamlined litigation.[2]

In its April 11, 2013, MDL Order No. 3 (Dkt. No. 85), this Court authorized Lead Counsel to establish a bank account for the collection and deposit of assessments into a Common Benefit Fund.  MDL Order No. 3 also set out the standards and procedures to apply to all activities and expenses incurred by counsel that relate to matters common to all claimants and requires that all claims for time and expenses for common benefit work must be authorized by Lead Counsel.  It also requires that any counsel who intends to seek fees from a common benefit fund submit their time and expenses to Lead Counsel on a monthly basis.   These procedures apply to all plaintiffs' counsel, including PSC members and the PSC's designees.

In the ten months since entry of MDL Order No. 3, Lead Counsel, members of the PSC, and others have engaged in intensive and sustained activity, including extensive fact investigation, informing and coordinating activities among claimants nationwide, engaging in motion practice, establishing a Court-sanctioned mediation program, drafting and filing a Master Complaint and Short Form Complaints, and conducting formal discovery against over 70 clinics and other national defendants.

On January 17, 2014, Lead Counsel and the PSC filed its motion seeking establishment of an assessment procedure by which a percentage assessment would be held back from every recovery in MDL No. 2419 and, by agreement, those parties not in the MDL who choose to participate.[3]  Various parties made limited objections or otherwise responded.[4]

---

[2] *See* Feb. 27, 2013, Letter to Court re Proposed Plaintiffs' Structure [ECF No. 20]; Mar. 19, 2013, Proposal for PSC Slate [ECF No. 64].

[3] Motion for Entry of Case Management Order Establishing Assessment Procedures to Fund Common Benefit Account (the "Motion") (Dkt. No.790).

[4] *See* n.1, *supra*.

### III.     ARGUMENT

#### A.     The Court need not decide, now, what common benefit work is compensable.

It is premature for the Court to consider whether any attorney's efforts are compensable at this juncture. The question of who, if anyone, is entitled to recover common benefit time and expense reimbursement is not before the Court. All interested parties will have an opportunity to be heard on those subjects at the appropriate time. The PSC's proposal is simply to establish a percentage amount to be held back from payment of claims, or any settlement, to form a fund from which the Court may order, at the appropriate time, that funds be allocated as compensation for common benefit efforts. There is no motion pending at this time that would direct any funds be paid as compensation or reimbursement to anyone. Nor is such an order necessary.

#### B.     Application of the holdback to funds of the bankruptcy estate.

Responses to the Motion question the correct procedural mechanism to accomplish the sequestration of common benefit funds, and whether it is appropriate to levy a common benefit assessment on funds paid pursuant to a Chapter 11 bankruptcy plan. The expressed concern is that imposition of a holdback on funds in the bankruptcy estate might assess monies other than those to be paid to tort plaintiffs.[5]

The PSC sees three possible procedural mechanisms through which the Court might accomplish the sequestration of common benefit funds. First, the Court could require that a percentage of the funds to be paid into the bankruptcy estate pursuant to any settlement with NECC Affiliated Defendants (or others) be set aside in a common benefit fund. Second, the Court could require the claims of attorneys in the MDL who are or may become entitled to payment of fees from a common benefit fund be recognized as a valid claim in the bankruptcy

---

[5] The PSC does not seek to levy an assessment on payments from the bankruptcy estate to non-tort creditors – a position communicated to the Trustee as well as counsel for the OCC prior to their filing of oppositions to the Motion. By e-mail exchange dated January 27, 2014 Lead Counsel explained to counsel for the OCC that any hold-back was intended to apply only to tort-creditors of the bankruptcy estate. This same position was communicated to the Trustee in an e-mail exchange with Lead Counsel on January 28, 2014.

proceedings itself and paid in due course into a common benefit account.[6] The final possibility is that if there is a tort trust created as part of an approved bankruptcy plan, the Court require that a percentage of those funds be set aside and paid into a common benefit account for later distribution.

The PSC's proposed common benefit order simply seeks to ensure that a small percentage of the funds is segregated for a later payment of common benefit attorney's fees and costs by this Court. The first option would appear to be most efficient in accomplishing this goal as there has been no settlement agreement yet signed with NECC affiliated entities or individuals, no bankruptcy plan presented for confirmation and no bankruptcy plan yet confirmed. However, the PSC takes no position with respect to which of these mechanisms is ultimately most appropriate and leaves that to the discretion of the Court.

      **C.    Members of the OCC are not entitled to reimbursement of attorney's fees for counsel retained to represent them individually.**

Members of the OCC are not entitled to reimbursement of attorney's fees for the separate attorneys they hired to represent their individual interests in the bankruptcy proceedings.

The Bankruptcy Code allows the OCC to employ professionals, such as attorneys, to perform work on behalf of the committee as a whole.[7] The Code further provides that the OCC may recover from the bankruptcy estate reimbursement of reasonable attorney's fees for such counsel employed by the committee as a whole.[8] Here, the OCC has retained Brown Rudnick as counsel for the committee as a whole, and thus the OCC may recover reimbursement for attorney's fees charged by Brown Rudnick from the estate, provided they are found "reasonable."

---

[6] In an abundance of caution, on January 14, 2014 Lead Counsel filed a Proof of Claim with the claims administrator appointed in the NECC bankruptcy proceedings on behalf of "all counsel who are or may become entitled to payment of common benefit fees by order of Judge Saylor in MDL No. 2419." A copy of that Proof of Claim is attached hereto as Exhibit A.

[7] 11 U.S.C. § 1103(a).

[8] 11 U.S.C. § 503(b)(4).

5

The Bankruptcy Code does not provide for recovery by individual members of the OCC for fees generated by their own separate counsel.  The Code specifically excludes individual committee members from the list of those who may receive reimbursement for attorney's fees under § 503(b)(4).  That exclusion was intended by Congress.[9]  This is because there is typically no need for individual members of a committee to have separate counsel in addition to the counsel employed by the committee as a whole.  Such a situation creates a risk of duplicative legal work and conflicts of interest.[10]

The fact that the attorney fees of individual attorneys acting in their role as counsel for members of the OCC are non-reimbursable was clearly communicated to potential members of the OCC by the Office of the United States Trustee.  In the very correspondence soliciting parties interested in serving on the OCC, the United States Trustee indicated that while actual expenses of individual committee members may be reimbursed, this "does not include[e] the professional fees of its individual counsel which is specifically prohibited under the Bankruptcy Code."[11]

---

[9] *See, e.g., In re FirstPlus Fin., Inc.*, 254 B.R. 888, 894 (Bankr. N.D. Tex. 2000) (finding legislative history showed Congress did not intend to allow every member of the committee to be reimbursed for his or her individually hired attorney as an administrative expense from the estate).

[10] *See*, *e.g.*, *In re FirstPlus*, 254 B.R. at 894 (holding § 503(b)(3)(F) did not include reimbursement of fees of counsel for each individual member of the committee in addition to those of the committee's counsel where creditor's attorney, in essence, served as a substitute for the committee member, because legal services often duplicated the efforts of the committee's attorneys, the situation was ripe for a conflict of interest between the creditor's attorney and the committee's counsel, and the fees were not necessary or justified because the services were only of value to the creditor and were of no value to the estate and the other creditors); *In re Worldwide Direct, Inc.*, 259 B.R. 56 (Bankr. D. Del. 2001) (a committee member was denied compensation for the cost of its separate counsel after the court found such expense was not necessary for the committee member to perform the member's duties); *In re S & T Indus., Inc*. 63 BR 656 (Bankr. W.D. Ky) (holding creditor was not entitled under § 503(b)(3)(D) to legal fees and related expenses it incurred during service on unsecured creditors' committee where creditor failed to obtain prior court approval for employment of their attorney).

[11] *See* January 3, 2013 Letter from Office of the United States Trustee soliciting interest for serving on OCC, attached hereto as Exhibit B, p. 2.

### D. The rules governing common benefit work should apply to all lawyers seeking compensation.

While counsel for OCC members cannot recover for work done in their role as counsel for members of the OCC, they could recover for work done for the common benefit in the MDL that is done pursuant to MDL Order #3.

MDL Order No. 3, entered after the Court considered briefing and heard argument, sets out a mechanism for the efficient conduct of this case. It is consistent with Fed. R. Civ. P. 1's mandate that the Rules be administered to secure "the just, speedy, and inexpensive determination of every action and proceeding." With regard to common benefit time and expenses, order states:

1. These standards and procedures are intended to apply to all activities performed and expenses incurred by counsel that relate to matters common to all claimants in this litigation. *Any* claimants' counsel who seeks reimbursement or compensation for common-benefit time and expenses (including any state-court counsel) shall comply with these guidelines and any submission by such counsel shall be in accordance with this order.

2. *All claims for time and expenses submitted must be incurred only for work authorized in advance by the Lead Counsel.* Prior to the appointment of Lead Counsel, such work may only be authorized by Lead Counsel or the Court.

3. Counsel who intend to seek reimbursement shall submit time and expense reports to Lead Counsel monthly. These reports shall include both time and expenses and should summarize, with back-up detail, the submissions of all firms.[12]

The PSC's proposed Order Establishing Assessment Procedures to Fund Common Benefit Account incorporates this fundamental principle:

> This Order is entered pursuant to this Court's April 9, 2013 Order Appointing Lead Counsel, Federal-State Liaison Counsel, and Plaintiffs' Steering Committee (MDL Order No. 2, Dkt. No. 82) and

---

[12] MDL Order No. 3, dated April 11, 2013, at sec. 2.A.1-3. (Dkt. No. 85) (emphasis added).

7

> April 11, 2013 Order Concerning Sharing and Funding of Plaintiffs'
> Pretrial Expenses and Costs (MDL Order No. 3, Dkt. No. 85) to
> establish a reasonable prospective contingent assessment of eight
> percent (8%) upon recoveries on Plaintiffs' claims in or related to this
> litigation, and to provide a procedure for the fair and equitable sharing
> among Plaintiffs of the cost of services performed and expenses
> incurred by Lead Counsel and the Plaintiffs' Steering Committee
> (collectively, "PSC") and other attorneys designated by that Order
> acting for the MDL administration and common benefit of all
> plaintiffs in this complex litigation ("Designated Counsel").[13]

Consistent with the PSC's proposed order, Lead Counsel and the PSC do not object to any lawyer, including members of the OCC, seeking reimbursement for work performed that is in conformity with MDL Order No. 3 and which inures to the common benefit of all claimants (as opposed to work performed in furtherance of the interests of the OCC itself). The terms of MDL Order No. 3 apply to all plaintiffs' lawyers, including PSC members and their designees. But, for an attorney to have an expectation of compensation, that common benefit work must be coordinated and approved by Lead Counsel.

The June 6, 2013 letter agreement the OCC and some members of the OCC cite in their papers in no way suggests an agreement that lawyers may be compensated for common benefit work outside of the Court's established rules. In recognition that there are talented and dedicated attorneys on the OCC, Lead Counsel entered into the June 6, 2013 letter agreement with the understanding that some members of the OCC may be called on to do work in the MDL that is non-duplicative and that inures to the common benefit of all claimants. The letter, and attached draft proposed case management order, are consistent with MDL Order No. 3 which was entered almost two months before the letter agreement. The proposed CMO attached to the letter states:

> Common Fund participants *may* include members of the Plaintiffs'
> Steering Committee and any lawyer performing services for the
> benefit of multiple tort victims on reasonable terms, including work
> connected to resolution pursuant to a chapter 11 plan in the Chapter 11
> Case, whose common benefit work is made available to the Plaintiffs'
> Steering Committee and the Official Committee. Common Fund

---

[13] Proposed Common Benefit Order (emphasis added).

8

>participants *may* include member representatives serving on the
>Official Committee, to the extent the services they perform are for the
>common benefit of multiple tort victims.[14]

Nowhere in the June 6, 2013 letter or the proposed CMO attached to that letter is there an agreement that members of the OCC could operate independently of the PSC – with the attendant risk of duplication of efforts and cumulative work – and expect compensation for that work.  The letter agreement was never intended to create an expectation of reimbursement among OCC members for common benefit work not coordinated or approved by Lead Counsel – either beforehand or *nunc pro tunc* – in a manner that would circumvent orders of this Court meant to avoid duplication of effort and preserve limited funds for NECC's victims.

### E. The proposed holdback amount of 8% is appropriate.

Certain responses suggest that an 8% holdback is not consistent with the amount held back in other MDLs or is not justified here.  While the PSC acknowledges that 8% is at the higher side of assessment amounts, the hold back is justified here for several reasons.  First, the amount is within the range of assessments in other large MDLs.[15]

Second, the amount sought is merely a hold back – that is, the PSC is not suggesting that the final amount of common benefit time and expense reimbursements will consume the full amount of the hold back.  Any funds above the amount ultimately approved by the Court for common benefit time and expense reimbursements will be refunded to claimants.  This was precisely the circumstance in *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.*, where 3% of the initial 9% holdback was returned to claimants once it was

---

[14] *See* Limited Objection of the OCC at Ex. A (Dkt. No. 833-1) (emphasis added).

[15] *See, e.g., In re Fosamax Prods. Liab. Litig.*, MDL 1789, No. 1:06-md-1789 (S.D.N.Y. Apr. 28, 2011) (approving 9% assessment) (Order attached as Exhibit C; *In re Genetically Modified Rice Litig.*, No. 4:06 MD 1811, 2010 U.S. Dist. LEXIS 19168 (E.D. Mo.) (approving 11% assessment); *In re Diet Drugs*, 582 F.3d at 554 (initially 9% held back, later lowered to 6%); *Turner v. Murphy Oil USA, Inc.*, 422 F. Supp. 2d 676 (E.D. La. 2006) (approving 12% assessment); *In re MGM Grand Hotel Fire Litig.* (MDL No. 453), 660 F. Supp. 522 (D. Nev. 1987) (approving 7% assessment); *see also* William B. Rubenstein, "*On What a 'Common Benefit Fee' Is, Is Not, and Should Be,*" 3 Class Action Attorney Fee Digest 87, 92-93 (March 2009) (hereinafter "Rubenstein") (attached hereto as Exhibit D).

determined that the funds held back were more than adequate to compensate common benefit counsel. 582 F.3d 524, 534 n.17 (3d Cir. Pa. 2009).

Third, the number of claimants in this MDL, while significant, is lower than in many MDLs. For example, in the *Diet Drugs* MDL, over 105,000 plaintiffs filed lawsuits, and over 35,000 plaintiffs' cases were transferred to the MDL; similarly the *Vioxx* and *Zyprexa* MDLs both consolidated tens of thousands of cases filed in state and federal court.[16] Given that almost all defendants except for the entities and individuals related to NECC, have opted, so far, not to participate in the Court-established mediation program, the amount of common benefit work and expenses may be considerable. Where the number of claimants is in the hundreds, rather than in the tens of thousands, a larger amount is required to be held back initially to ensure there will be sufficient funds to compensate lawyers expending time and advancing expenses for the common benefit of litigants– albeit, at a greatly reduced rate.

This is, again, a motion for holdback only. The amount, if any, actually allocated to counsel for common benefit work requires much thought (and briefing) and is a decision for another day.

## IV.   CONCLUSION

For the foregoing reasons, the PSC requests that the Court grant the PSC's Motion for Entry of Case Management Order Establishing Assessment Procedures to Fund Common Benefit Account and the Proposed Revised Order filed herewith.

Dated:  February 6, 2014          Respectfully submitted,

                                          By:  /s/ *Thomas M. Sobol*
                                                 Thomas M. Sobol

                                        Thomas M. Sobol
                                        Kristen Johnson Parker
                                        HAGENS BERMAN SOBOL SHAPIRO LLP

---

[16] *See* Rubenstein.

55 Cambridge Parkway, Suite 301
Cambridge, MA  02142
Telephone:  (617) 482-3700
Facsimile:  (617) 482-3003
tom@hbsslaw.com
kristenjp@hbsslaw.com

*Plaintiffs' Lead Counsel*

Elizabeth J. Cabraser
Mark P. Chalos
Annika K. Martin
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
150 Fourth Avenue North, Suite 1650
Nashville, TN 37219
Telephone:  (615) 313-9000
Facsimile:  (615) 313-9965
ecabraser@lchb.com
mchalos@lchb.com
akmartin@lchb.com

*Federal/State Liaison*

Marc E. Lipton
LIPTON LAW
18930 W. 10 Mile Road
Southfield, MI  48075
Telephone:  (248) 557-1688
Facsimile:  (248) 557-6344
marc@liptonlawcentercom

Kim Dougherty
JANET, JENNER & SUGGS, LLC
31 St. James Avenue
Suite 365
Boston, MA  02116
Telephone:  (617) 933-1265
kdougherty@myadvocates.com

Patrick T. Fennell
CRANDALL & KATT
366 Elm Avenue, S.W.
Roanoke, VA  24016
Telephone:  (540) 342-2000
pfennel@crandalllaw.com

11

Mark Zamora
ZAMORA FIRM
6 Concourse Way, 22nd Floor
Atlanta, GA  30328
Telephone:  (404) 451-7781
Facsimile:  (404) 506-9223
marc@markzamora.com

J. Gerard Stranch, IV
Benjamin A. Gastel
BRANSETTER, STRANCH & JENNINGS PLLC
227 Second Avenue North
Nashville, TN  37201
Telephone:  (615) 254-8801
Facsimile:  (615) 255-5419
gerards@branstetterlaw.com

*Plaintiffs' Steering Committee*

## **CERTIFICATE OF SERVICE**

I, Thomas Sobol, hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on February 6, 2014.

Dated: February 6, 2014 */s/ Thomas M. Sobol*
                                                                            Thomas M. Sobol