UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                            )
IN RE: NEW ENGLAND                          )
COMPOUNDING PHARMACY, INC.     )
PRODUCTS LIABILITY LITIGATION   )        MDL No. 13-2419-FDS
                                                            )
This Document Relates To:                    )
                                                            )
         All Actions                                  )
                                                            )
_____)

ORDER ON MOTIONS TO QUASH SUBPOENA
[Docket Nos. 633, 793]

February 7, 2014

Boal, M.J.

        Defendant Liberty Industries, Inc. ("Liberty") and third-party Travelers Property

Casualty Company of America ("Travelers") have moved to quash a subpoena directed to

Travelers.  Docket Nos. 633, 793.[1]  For the following reasons, this Court grants in part and

denies in part the motions.

I.        FACTUAL AND PROCEDURAL BACKGROUND

        This litigation involves claims for wrongful death and personal injury arising out of the

administration of an injectable steroid, methylprednisolone acetate ("MPA"), manufactured by

defendant New England Compounding Pharmacy, Inc. ("NECC").  The complaints allege, in

substance, that NECC produced contaminated MPA that led to serious fungal infections and, in

some cases, death.

_____

        [1] The District Court referred the motions to the undersigned for resolution.  See Docket
Nos. 730, 815.

In its Master Complaint, the Plaintiffs' Steering Committee ("PSC") alleges that in 2005, 2006, and 2008, Liberty manufactured, constructed, installed and/or designed cleanrooms used to compound, mix, prepare and assemble the contaminated products.  Docket No. 545 at ¶¶ 4, 20, 126.  The PSC also alleges that the cleanrooms manufactured, installed and/or designed by Liberty contained defects that made them unsuitable for their intended use and vulnerable to manufacture of contaminated products.  Id. at ¶¶ 4, 20, 128, 130.  Subsequent room additions, rework or repair and/or system upgrades, done by Liberty, took place within each of the cleanrooms after certification had been issued.  Id. at ¶ 127.  In addition, the PSC alleges that NECC requested and was denied repair of Liberty's defective work.  Id. at ¶ 131.

Prior to 2012, Travelers provided liability insurance coverage to Liberty for a number of years.  Docket No. 633 at 2.  Travelers' last and most recent Commercial General Liability Policy to Liberty covered the period November 1, 2010 to November 1, 2011.  Id.  Travelers cancelled the policy effective January 20, 2011.  Id.; Docket No. 633-2 at 159-61.  As reasons for the cancellation, Travelers stated:

> * CATALOG PRODUCTS WHICH WE DID NOT THINK WERE MADE BY LIBERTY INDUSTRIES HAVE "LIBERTY MADE" STICKERS ON THEM, AND ARE DESCRIBED AS BEING MANUFACTURED BY LIBERTY INDUSTRIES IN THEIR CATALOG; POSSIBLE PRODUCTS EXPOSURE.
>
> * SUPERVISION/MONITORING OF CLEAN ROOM CONSTRUCTION COULD BECOME A PROFESSIONAL LIABILITY ISSUE IF CONSTRUCTED INCORRECTLY.

Docket No. 633-2 at 161.

On December 4, 2013, the PSC issued a subpoena to Travelers seeking the production of the following categories of documents:

> 1.  Any and all applications for policies related to Liberty from 2006 to the present.

      2.  Any and all policies related to Liberty from 2006 to the present.

      3.  Any and all changes to or requests for changes to policy coverage related to Liberty from 2006 to the present.

      4.  Any and all policy related documents related to Liberty, including any reservation of rights statements and claims submissions, from 2006 to the present.

Docket No. 633-1.  Travelers produced its last and most recent policy to Liberty to the PSC but had otherwise declined, at the time of its motion, to produce documents responsive to the subpoena.

Travelers filed the instant motion to quash the subpoena directed to it on December 18, 2013.  Docket No. 633.  The PSC filed its opposition on January 17, 2014.  Docket No. 785.  On January 20, 2014, Liberty filed a motion to quash the subpoena to Travelers.  Docket No. 793. The PSC filed an opposition on January 22, 2014.  Docket No. 801.  The Court heard oral argument on February 6, 2014.

II.    <u>ANALYSIS</u>

    A.    <u>Standard Of Review</u>

"Discovery procedures set forth in the Federal Rules of Civil Procedure seek to further the interests of justice by minimizing surprise at trial and ensuring wide-ranging discovery of information."  <u>Cartel Asset Mgmt. v. Ocwen Fin. Corp.</u>, No. 01-cv-01644, 2010 WL 502721, at *9 (D. Colo. Feb. 8, 2010) (citing <u>United States ex rel. Schwartz v. TRW, Inc.</u>, 211 F.R.D. 388, 392 (C.D. Cal. 2002)).  To that end, Rule 26(b) permits "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . ." or discovery of any information that "appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b).  Rule 26(b)(1) generally permits liberal discovery of relevant information.  <u>Baker v.</u>

<u>Liggett Group, Inc.</u>, 132 F.R.D. 123, 125 (D. Mass. 1990).  As the Supreme Court has instructed, because "discovery itself is designed to help define and clarify the issues," the limits set forth in Rule 26 must be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." <u>Oppenheimer Fund, Inc. v. Sanders</u>, 437 U.S. 340, 351 (1978).

There are limits, however, on the scope of discovery.  A court must limit discovery if it determines that the discovery sought is (1) unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the projected discovery in resolving the issues.  <u>See</u> Fed. R. Civ. P. 26(b)(2)(c).

A Rule 45 subpoena must fall within the scope of proper discovery under Fed. R. Civ. P. 26(b)(1).  <u>Miller v. Allstate Fire & Cas. Ins. Co.</u>, No. 07-260, 2009 WL 700142, at *2 (W.D. Pa. Mar. 17, 2009) (citation omitted).  Thus, the information sought by a subpoena must be: (1) not privileged; (2) relevant to the claim or defense of any party; and (3) either admissible or reasonably calculated to lead to the discovery of admissible evidence.  Fed. R. Civ. P. 26(b)(1).

Rule 45 provides that a person subject to a subpoena may within a specified time period avoid or limit compliance in a number of ways: (1) by serving written objections pursuant to Rule 45(c)(2)(B); (2) by moving to quash or modify pursuant to Rule 45(c)(3); or (3) by moving for a protective order under Rule 26(c).  Fed. R. Civ. P. 45(c).  An order compelling compliance

with a subpoena "must protect a person who is neither a party nor a party's officer from

significant expense resulting from compliance."[2]  Fed. R. Civ. P. 45(c)(2)(B)(ii).

      B.      <u>The Subpoena Seeks Some Discoverable Information But It Is Overly Broad</u>

      Both Travelers and Liberty argue that the subpoena seeks irrelevant information beyond

the discovery of insurance information authorized by Rule 26(a)(1)(A)(iv) of the Federal Rules

of Civil Procedure.  Docket No. 633 at 3-4; Docket No. 794 at 3-4.  Rule 26(a)(1)(A)(iv)

requires a party to produce, without awaiting a discovery request, "any insurance agreement

under which an insurance business may be liable to satisfy all or part of a possible judgment in

the action or to indemnify or reimburse for payments made to satisfy the judgment."  Fed. R.

Civ. P. 26(a)(1)(A)(iv).  Generally, district courts do not allow pre-judgment discovery regarding

a defendant's ability to satisfy a judgment, aside from the initial disclosures required by Rule

26(a)(1)(A)(iv).  <u>Sierrapine v. Refiner Prods. Mfg., Inc.</u>, 275 F.R.D. 604, 609 (E.D. Cal. 2011)

(collecting cases).  However, Rule 26(a)(1)(A)(iv) does not prohibit the discovery of other

insurance related information provided that information may lead to the discovery of admissible

evidence regarding the claims and defenses in an action.  <u>See</u>, <u>e.g.</u>, <u>Honeywell Intern., Inc. v.</u>

<u>ICM Controls Corp.</u>, No. 11-cv-569, 2013 WL 6169671, at *12 (D. Minn. Nov. 22, 2013) ("Rule

26(a)(1)(A)(iv) is not the ceiling for insurance-related discovery.").

      The PSC argues that it is entitled to discover information about the policies Travelers

issued to Liberty in addition to the most recent policy because some of the negligent conduct for

---

      [2] Rule 45(c)(1) also protects a responding party from undue burden or expense.  Pursuant
to Rule 45(c)(1), a "party or attorney responsible for issuing and serving a subpoena must take
reasonable steps to avoid imposing undue burden or expense on a person subject to the
subpoena."  Fed. R. Civ. P. 45(c)(1).

which the PSC alleges Liberty to be responsible occurred during the time periods that Liberty

was an insured of Travelers.  Docket No. 785 at 2.  As such, the PSC argues that it is entitled to

review those policies to determine whether coverage exists for occurrences during those periods.

Id.  In addition, the PSC argues that information in the possession, custody or control of

Travelers regarding Liberty may lead to the discovery of admissible evidence of liability.  Id.

The PSC points to Travelers' cancellation of the 2010-2011 policy, which cited as a reason that

"supervision/monitoring of clean room construction could become a professional liability issue if

constructed incorrectly."  Id.  The facts relied upon by Travelers in making the decision to cancel

Liberty's coverage, such as claims submitted by Liberty or others or investigations performed,

may support the PSC's claims against Liberty.  Id.

      Liberty also argues that the subpoenas are beyond the scope of the mediation order and

prejudicial to Liberty.  Docket No. 794 at 3-4.  However, the mediation order did not prohibit the

issuance of subpoenas to third parties not engaged in mediation.  In addition, the fact that the

information sought from Travelers may be prejudicial to Liberty is of no significance so long as

the information is relevant to the case.  Of course, the PSC will be seeking discovery to support

its claims, which may be prejudicial to the defendants in this litigation.

      At oral argument, Travelers acknowledged that any policies issued to Liberty from 2005

to 2011 may be relevant and agreed to produce those policies.  Travelers also acknowledged that

documents concerning the reasons for the cancellation of the 2010-2011 policy may also be

relevant in this case but argued that the subpoena was otherwise overly broad.  This Court

agrees.  Accordingly, the Court will order Travelers to produce any policies issued to Liberty

from 2005 to 2011 and all documents concerning the reasons for the cancellation of the 2010-

2011 policy.  The subpoena is otherwise quashed.

III.     ORDER

For the following reasons, this Court grants in part and denies in part Travelers and
Liberty's motions to quash.  No later than two weeks after the date of this Order, Travelers shall
produce to the PSC any policies issued to Liberty between 2005 and 2011 and all documents
concerning the reasons for the cancellation of the 2010-2011 policy.


/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge