```
 1                UNITED STATES DISTRICT COURT
                   DISTRICT OF MASSACHUSETTS
 2

 3

 4   IN RE:  NEW ENGLAND            )  MDL NO.  13-02419-FDS
     COMPOUNDING                    )
 5   PHARMACY CASES LITIGATION      )
                                    )
 6                                  )
                                    )
 7                                  )
                                    )
 8
                 BEFORE:  THE HONORABLE F. DENNIS SAYLOR, IV
 9

10

11
                       STATUS CONFERENCE
12

13

14

15       John Joseph Moakley United States Courthouse
                       Courtroom No. 2
16                    One Courthouse Way
                       Boston, MA 02210
17

18                     February 6, 2014
                         1:30 p.m.
19

20

21

22

23            Valerie A. O'Hara, FCRR, RPR
                   Official Court Reporter
24       John Joseph Moakley United States Courthouse
              One Courthouse Way, Room 3204
25                    Boston, MA 02210
                E-mail: vaohara@gmail.com
```

1    APPEARANCES:

2    For The Plaintiffs:

3       Hagens, Berman, Sobol, Shapiro LLP, by THOMAS M.
     SOBOL, ESQ. and KRISTEN JOHNSON PARKER, ATTORNEY,
4    55 Cambridge Parkway, Suite 301, Cambridge,
     Massachusetts  02142;

5
        Janet, Jenner & Suggs, LLC, KIMBERLY A. DOUGHERTY,
6    ATTORNEY, 75 Arlington Street, Suite 500, Boston,
     Massachusetts  02116;

7
        Crandall & Katt, by PATRICK THOMAS FENNELL, ESQ.,
8    366 Elm Avenue, SW, Roanoke, VA 24016;

9       Gentry, Locke, Rakes & Moore, by J. SCOTT SEXTON,
     ESQ., P.O. BOX 40013, Roanoke, Virginia 24022-0013;
10
        Branstetter, Stranch & Jennings, PLLC, by BEN GASTEL,
11   ESQ., and J. GERARD STRANCH, IV, ESQ., ESQ., 227 Second
     Avenue North, Nashville, Tennessee 37201-1631;
12
        Law Offices of Mark Zamora and Associates,
13   MARK ZAMORA, ESQ., 5 Concourse Parkway, Suite 2350
     Atlanta, Georgia  30328
14
        Ellis & Rapacki LLP, by FREDERIC L. ELLIS, ESQ.,
15   85 Merrimac Street, Suite 500, Boston, Massachusetts
     02114;
16
     FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS:
17
        Brown Rudnick, by DAVID J. MOLTON, ESQ., Seven Times
18   Square, New York, New York 10036;

19      Brown Rudnick, by KIERSTEN A. TAYLOR, ATTORNEY,
     One Financial Center, Boston, Massachusetts  02111;
20
        Harris Beach PLLC, by FREDERICK H. FERN, ESQ.,
21   100 Wall Street, New York, New York  10005;

22      Tucker, Saltzman & Dyer, LLP, by PAUL SALTZMAN, ESQ.,
     50 Congress Street, Boston, Massachusetts  02109;
23
        Michaels, Ward & Rabinovitz LLP, by DAN RABINOVITZ,
24   ESQ., One Beacon Street, Boston, Massachusetts 02108;

25

1    FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS:

2        Todd & Weld LLP, by CORRINA L. HALE, ATTORNEY, and
     CHRISTOPHER WELD, JR., ESQ., 28 State Street, 31st
3    Floor, Boston, Massachusetts 02109;

4        Ulmer & Berne LLP, by JOSHUA A. KLARFELD, ESQ.,
     1660 West 2nd Street, Suite 1100, Cleveland, OH
5    44113-1448;

6        Cohen, Placitella & Roth, P.C., by MICHAEL COREN,
     ESQ., 2 Commerce Square, 2001 Market Street, Suite 2900,
7    Philadelphia, Pennsylvania  19103;

8    For the Defendants(CONTINUED):

9        Donovan & Hatem, LLP, by KRISTEN R. RAGOSTA, ESQ.,
     Two Seaport Lane, Boston, Massachusetts  02210;
10
         Nutter, McClennen & Fish LLP, by SARAH P. KELLY,
11   ATTORNEY, World Trade Center West, 155 Seaport
     Boulevard, Boston, Massachusetts  02210-2604;
12
         Curley & Curley, P.C., by LISABETH RYAN KUNDERT,
13   ATTORNEY, 27 School Street, Boston, Massachusetts
     02108;
14
         Sloane and Walsh, ROBERT A. GAYNOR, ESQ.,
15   Three Center Plaza, Boston, Massachusetts
     02108;
16
         Goodwin Procter, LLP, by JAMES REHNQUIST, ESQ.,
17   Exchange Place, 53 State Street, Boston, Massachusetts
     02109;
18
     FOR PAUL D. MOORE, IN HIS CAPACITY AS CHAPTER 11 TRUSTEE
19   OF NECP, INC.:

20       Duane Morris LLP by MICHAEL R. GOTTFRIED,
     ESQ. and JEFFREY STERNKLAR, ESQ., 100 High Street, Suite
21   2400, Boston, Massachusetts 02110-1724;

22

23

24

25

<u>VIA PHONE FOR THE PLAINTIFFS</u>:

1

2  Alyson Oliver
   Anne Andrews
3  Bridget Stratton
   Chris Cain
4  Clint Daniel
   Daniel L. Clayton
5  Daniel Myers
   David Gibson
6  Deborah Gresco-Blackburn
   Douglas Mulvaney
7  Will Riley
   Evan Baker
8  Forest Horne
   Harry Roth
9  Jaime Kendall
   James Girards
10 James Stephen King
   Jeff Keiser
11 John Alexander
   Jonathan Krohnfeldt
12 Karen Schaeffer
   Kyle Roby
13 Lauren Ellerman
   Leslie Muse
14 Lisa Thomas
   Mark Abramowitz
15 Mark Dancer
   Mary T. Gidaro
16 Melvin B. Wright
   Ned Mulligan
17 Nicole Kreklau
   Patrick Montoya
18 Randy L. Kinnard
   Rick Morgan
19 Rob Briley
   Robert Randall
20 Amanda Williams
   Scott Sexton
21 Sean Roth
   Sharon Houston
22 Stephanie Arndt
   Steven Resnick
23 Ted Corvey
   Terry Cochran
24 Terry Dawes
   William Riley
25 Frank Federico
   Steve Mullins

 1   <u>VIA PHONE FOR THE PLAINTIFFS</u> (CONTINUED):

 2   Kristi Osterday
     Amanda Rhodes
 3   Nolan Nicely
     Jason Denton
 4   Alston Peek
     Greg Lyons
 5   Brent Brown
     Bryan Bleichner
 6   Rebbeca Blair
     Rob Sickels
 7   Tim Housholder

 8

     <u>VIA PHONE FOR THE DEFENDANTS</u>:
 9
     Yvonne Puig, Marcy Greer
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>PROCEEDINGS</u>

1

2      THE CLERK:  All rise.  Thank you.  You can

3 all be seated.  Court is now in session in the matter of

4 In re:  New England Compounding Pharmacy, Incorporated

5 Products Liability litigation.  This is

6 Case 13-md-02419.

7      Counsel, please note your appearances for

8 the record.

9      MS. PARKER:  Good afternoon, your Honor,

01:33PM 10 Kristen Johnson Parker for the plaintiffs' steering

11 committee.

12      MR. SOBOL:  Good afternoon, your Honor,

13 Tom Sobol for the PSC.

14      MR. CHALOS:  Good afternoon, your Honor,

15 Mark Chalos for the PSC.

16      MR. FENNELL:  Good afternoon, your Honor,

17 Patrick Fennell for the PSC.

18      MS. DOUGHERTY:  Good afternoon, your Honor,

19 Kim Dougherty from Janet, Jenner & Suggs on behalf of

01:33PM 20 the plaintiffs' steering committee.

21      MR. ZAMORA:  Hello, Judge, Mark Zamora for

22 the PSC.

23      MR. GASTEL:  Ben Gastel for the PSC.

24      MR. STRANCH:  Gerard Stranch for the PSC.

25      MR. NOLAN:  Your Honor, George Nolan from

```
 1    Nashville.  I represent several plaintiffs.
 2              THE COURT:  All right.
 3              THE CLERK:  In the back.
 4              MR. SEXTON:  Your Honor, Scott Sexton for
 5    the Roanoke plaintiffs.
 6              MS. TAYLOR:  Kiersten Taylor.
 7              MR. COREN:  Good afternoon, your Honor,
 8    Michael Coren, Cohen, Placitella & Roth, P.C., co-chair,
 9    official creditors' committee.
10              MR. ELLIS:  Rick Ellis for various
11    plaintiffs.
12              MR. MOLTON:  Good afternoon, Judge,
13    David Molton, Brown Rudnick, counsel for the creditors'
14    committee.
15              MR. GOTTFRIED:  Mike Gottfried for
16    Paul Moore, the trustee.
17              MR. STERNKLAR:  Good afternoon, your Honor,
18    Jeffrey Sternklar for the trustee, New England
19    Compounding Pharmacy.
20              MR. KLARFELD:  Good afternoon, your Honor,
21    Joshua Klarfeld on behalf of GDC.
22              MR. SALTZMAN:  Paul Saltzman for Ameridose,
23    your Honor.
24              MR. GAYNOR:  Robert Gaynor on behalf of the
25    so-called individuals.
```

01:33PM (line 10)
01:34PM (line 20)

1          MR. RABINOVITZ:  Dan Rabinovitz on behalf of

2     Medical Sales Management.

3          MR. FERN:  Good afternoon, Judge,

4     specially-retained counsel for the trustee.

5          THE COURT:  Good afternoon, all.  This is a

6     status conference in this case.  We have about 40 people

7     listening on the telephone as well.  I want to begin by

8     making the following announcement.

9          On Wednesday, two lawyers from my or

01:34PM   10     actually more than two, but lawyers from my former law

11     firm, Goodwin Procter, entered an appearance on behalf

12     of UniFirst.  The two lead lawyers are not just former

13     colleagues of mine but actually good personal friends,

14     and I'm, therefore, going to recuse myself from this

15     matter.  I don't really see a way around that.

16          As I understand it, the case is going to be

17     reassigned internally, not going back to the MDL panel,

18     and my expectation and understanding is that it's going

19     to be reassigned to Judge Rya Zobel, which is a big

01:35PM   20     trade-up.  You all should be happy with that, but,

21     obviously, this involves some considerable inconvenience

22     and possibility of delay, although those of you who have

23     dealt with Judge Zobel know that she is in addition to

24     being an intelligent and fair and thoughtful person is

25     also very efficient.

1          What I propose to do going forward today is

2     I guess I'll group things into three categories.  I do

3     want to hear various status reports because I want to

4     know where things stand as part of transitioning to a

5     new Judge.

6          Second, we have some substantive matters.

7     We have, for example, the trustee's renewed and

8     supplemental motion to transfer, which I don't think I

9     can take up under the circumstances.  I think we have

01:36PM   10     some dispositive motions brought by St. Thomas, Premier

11     and others, which I don't think I can take up, and I

12     also will leave the common benefit account motion to one

13     side as well.

14          I don't see any reason why I can't as part

15     of the transition issue some relatively minor orders to

16     keep things on track.  There's a motion concerning a

17     briefing schedule, the clarifying motion on central

18     enforcement of subpoenas and some other odds and ends

19     that seems to me are relatively administrative or

01:37PM   20     administerial.  They can certainly be undone by another

21     Judge if for some reason I have it wrong, but they're

22     not substantive.

23          I recognize that a number of you came from

24     other parts of the country during a time when travel is

25     difficult and appreciate what must be a feeling of

1    frustration, particularly if you've prepared to argue

2    motions or to deal with issues that I'm putting to one

3    side, but this is, as I see it, a conflict or an

4    appearance of conflict under 28 U.S.C., 455(a) that is

5    not really waivable.

6            Again, the lawyers in question are not

7    simply former colleagues or people I know or people I've

8    dealt with but good personal friends, and I think under

9    the circumstances, again, I have no real option but to

01:38PM  10   bow out.

11           So that's an overview, and I think what I'd

12   like to do is to go down the agenda and at least touch

13   on each item to make sure that this is being orderly.  I

14   don't want any period of time, as I said, to go by

15   without addressing what I consider to be minor or

16   ministerial issues, and unless someone has an objection,

17   I'm going to try to clean up some odds and ends on my

18   way out, so to speak.

19           I guess let me start, does anyone have any

01:38PM  20   questions or requests for clarification on what I've

21   discussed so far, Ms. Parker?

22           MS. PARKER:  No, your Honor.

23           THE COURT:  Okay.  Anything from the

24   creditors' committee, trustee?

25           MR. MOLTON:  No, your Honor.

1          MR. GOTTFRIED:  No, your Honor.

2          THE COURT:  Defendants?

3          MR. RABINOVITZ:  No, your Honor.

4          MR. SOBOL:  If I may, your Honor?

5          THE COURT:  Yes.

6          MR. SOBOL:  I think you can sort of sense

7    the wind going out of the sail in a lot of people here,

8    so you should appreciate that, at least.  I think that's

9    apparent.

01:39PM    10          THE COURT:  I understand.  As I'm sure all

11   of you have, on multiple occasions in my career as a

12   lawyer, I got all prepared for something, flew to some

13   location to argue my motion or appeal and had it delayed

14   or worse, so I certainly understand the feeling, and,

15   again, I do this with considerable reluctance, but I

16   don't view it as being particularly a close call, so

17   that's what it is.

18          I guess I should add by way of parentheses,

19   it's no secret that every Judge, including me, has cases

01:40PM    20   that they fervently would like to get rid of and are

21   thrilled when the case disappears, and this is not such

22   a case, and one of the things that has made it

23   pleasurable is what I consider to be high quality

24   lawyering and cooperative lawyering.  Certainly you all

25   have made things as easy as they could be from my

1   perspective, and I very much appreciate that.

2          All right.  Let's get going and accomplish

3   whatever can be accomplished here.  Ms. Parker, short

4   form complaints.

5          MS. PARKER:  Mr. Gastel will be addressing

6   that.

7          THE COURT:  All right.  Yes, sir.

8          MR. GASTEL:  Thank you, your Honor.

9          THE COURT:  I'm sorry, Mr. Gastel.

01:40PM  10          MR. GASTEL:  Mr. Gastel, Branstetter,

11   Stranch & Jennings in Nashville on behalf of the PSC.  I

12   believe on January 28th, we filed what best could be

13   described as a census of the short form complaints that

14   had been filed on or before December 20th.

15          Just to give a quick summary of that

16   document, your Honor, 330 unique cases were on file in

17   the MDL at that time constituting about 400 individual

18   plaintiffs excluding those with derivative claims like

19   loss of consortium claims.  Of those 330 unique cases,

01:41PM  20   253 filed short form complaints.

21          UniFirst is named on every single one of

22   those, Liberty is named in 11, and approximately 149

23   cases has short form complaints that named a

24   clinic-related defendant, which are obviously those

25   clinics that injected or provided NECC products to

1    patients.

2              THE COURT:  Does that mean there are 77

3    cases in which the short form complaint, and, therefore,

4    the master complaint had not been adopted, that is, the

5    complaint is whatever the complaint was as filed by

6    plaintiff's counsel?

7              MR. GASTEL:  That is correct, sir, but I

8    believe that the number is 80.  There are 330 unique

9    cases with 253 short form complaints filed.  Being a

01:42PM  10    lawyer and being bad at math, I believe that that's 78.

11              THE COURT:  I came up with 77, whatever,

12    call it 77 and a half.

13              [Laughter]

14              MR. GASTEL:  Like I said, being a lawyer, I

15    am bad at math.  I believe you're right, your Honor, I

16    apologize for that, and then of those 253 short form

17    complaints, 149 in addition to naming UniFirst and/or

18    Liberty also name a clinic-related defendant.

19              In that filing, there is a chart of who

01:42PM  20    those clinics are.  I don't think anybody in the

21    courtroom will be surprised that the clinics with the

22    most cases against them at the moment are the Tennessee

23    clinics.

24              After that, the next clinics is the two

25    New Jersey clinics, Premier, being one, and the

1    South Jersey Health or Hospital entity being the other.

2    Premier has ten cases where they've been specifically

3    named, and South Jersey has nine.

4              Now, there is one oddity in that one of

5    those cases names both of those entities, and so that

6    case has been essentially counted twice in that chart.

7              THE COURT:  Okay.

8              MR. GASTEL:  Unless you have any other

9    questions about how I sort of put that census together,

01:43PM  10    and I'm very happy to answer those questions, that's

11    sort of the summary of where we are.

12              THE COURT:  No, it's a very useful exercise,

13    and I very much appreciate it.

14              MR. GASTEL:  Thank you.

15              THE COURT:  All right.  Anything else on

16    that topic?

17              (No response)

18              THE COURT:  All right.  Status of mediation

19    efforts.  Ms. Parker.

01:43PM  20              MS. PARKER:  Thank you, your Honor.  We

21    currently have the following entities that are

22    participating in the Court-ordered mediation program,

23    Liberty, Victory, ARL, Orlando, West Orange, as well as

24    one unnamed entity.  Those mediations are proceeding,

25    documents are being exchanged, and dates have been

1    scheduled for most, if not all, of those mediations.

2              In addition, Inspira -- I need to figure out

3    actually whether it's Inspira or Inspira because I think

4    we all say it both ways, I'll say Inspira -- is

5    participating in a private mediation.

6              THE COURT:  All right.

7              MR. COREN:  Your Honor, on the Inspira is

8    the way I pronounce it, we have a mediation scheduled

9    with Eric Green, so there's overlap with the Court's

01:44PM  10   mediation program to gain the economies there.  The

11   explanation for the dual on Inspira-Premier is doctors

12   at Premier have mission privileges at Inspira, which is

13   the former South Jersey Medical, and the information is

14   being exchanged in earnest, and we think both sides are

15   making good progress to get to the table with Mr. Green.

16   Thank you, your Honor.

17             THE COURT:  Okay.  Thank you.

18             MR. MOLTON:  Your Honor, David Molton for

19   the creditor's committee.  I just want to let your Honor

01:45PM  20   know that in reference to what Ms. Parker said and

21   Mr. Coren, Professor Green and Carmen Reese from

22   Professor Green's firm are both providing terrific

23   stewardship of the mediation programs that they're

24   running, and just to add to what Ms. Parker said, we do

25   have dates certain in the next 60 to 90 days when we're

```
 1   actually going to be in active mediation seeking
 2   resolution, so I just wanted your Honor to know in
 3   connection with your mediation order and the appointment
 4   of Professor Green's firm that they're doing a terrific
 5   job.
 6               THE COURT:  Great.  Anything else on
 7   mediation?
 8               (No response)
 9               THE COURT:  Status of proposed settlement.
10   Who's going to take the lead?  Mr. Sobol.
11               MR. SOBOL:  Good afternoon, your Honor.
12   Slowly, "glacially" used to be a word that would be apt,
13   but I think the glacials are moving faster than the
14   settlement of this case.
15               THE COURT:  I think the glacials are moving
16   backwards actually.
17               MR. SOBOL:  Oh, that's right, backwards.  It
18   depends where you're standing actually.  I hope that
19   we're able to make more progress next month.  There's
20   nothing really to say, otherwise it would not be
21   accurate to say we're moving along, just it's moving
22   slowly.  There are perhaps some good reasons for it,
23   there are probably maybe not good reasons, but,
24   whatever, the parties will do what they can over the
25   next month.
```

01:46PM (line 10)

01:46PM (line 20)

1          THE COURT:  All right.  I had a deadline

2    which may be a placeholder.  Is it March 10th?  Is that

3    right?

4          MR. SOBOL:  Yes.

5          THE COURT:  In other words, if nothing

6    happens to extend that deadline, I suppose that is the

7    deadline, isn't it, March 10th by which you'd have to

8    answer the master complaint, if nothing else, they would

9    have to answer the master complaint?

01:47PM  10          MR. SOBOL:  Yes.

11          THE COURT:  Mr. Gottfried.

12          MR. GOTTFRIED:  Your Honor, I think from our

13    perspective, I think we're being more optimistic than

14    the PSC.  We think good progress is being made.  Drafts

15    have been exchanged.  Comments were returned last

16    evening.  We're certainly hopeful that what would have

17    been done the next status conference in front of your

18    Honor, that we would be where we want to be and that

19    we're certainly working hard toward that end.

01:47PM  20          I think in that regard with respect to the

21    master complaints, you know, our thought would be today

22    to ask for you to kick that down the road just a little

23    bit past whenever the next status conference would be.

24    I don't know what Judge Zobel's calendar will be.

25          THE COURT:  Actually, I don't know as well.

1    I think we had conferences in place up through May.  I'm

2    going to leave all those dates in place and let her deal

3    with it as she wishes.

4            MR. GOTTFRIED:  So our thought, that should

5    be extended, and certainly progress is being made.  As

6    you can appreciate, I'll let Mr. Molton, who's been

7    actively involved in this, add to this as well.  There's

8    a lot of parties involved, there's a lot of lawyers

9    involved, this is very complex, there's a lot of

01:48PM   10    interrelationships between the agreements and what we

11    were perhaps overly optimistic at the last status

12    conference about the timing, we're still optimistic.

13            MR. MOLTON:  If I may, your Honor, to drool

14    down on some of the substance, Mr. Gottfried is right,

15    these are very complex lien agreements.  We not only

16    have an insider settlement agreement, we've got two

17    insurance agreements, one of which contains a number of

18    policies, actually three insurance agreements, all of

19    which have been reduced to writing.

01:48PM   20            Those drafts were circulated a number of

21    weeks ago.  They are in the iterative process.

22    Mr. Gottfried is correct that these are very complex

23    agreements.  We also have circulated, the trustee and

24    the committee have circulated, the insiders to the

25    proposed 9019 motion and order for the bankruptcy court

         1    in connection with the insider agreement, so it is -- we

         2    are also, you know, frustrated that it's taken a little

         3    bit longer than we thought, but I don't want your Honor

         4    to think that things aren't moving, they are moving.

         5             We are working on agreements, and I'll join

         6    Mr. Gottfried in saying that it was our intention to be

         7    able to announce at the next status conference that

         8    those agreements have been inked and are ready to be

         9    teed in front of the bankruptcy court.

01:49PM  10             And I do also want to say, your Honor, in

        11    light of what's been said earlier, that it's no small

        12    matter that your Honor's stewardship in connection with

        13    Judge Boroff, who led us to a point where we are able to

        14    report to you the slow but moving progress of

        15    significant settlement agreements for the benefit of the

        16    tort claimants in this matter.

        17             THE COURT:  Thank you for the kind words.

        18    Walk me through, suppose you do have an ink settlement,

        19    it goes to the Bankruptcy Judge first, what's your

01:50PM  20    expectation of how it would be approved or implemented,

        21    I guess?

        22             MR. MOLTON:  Our expectation, your Honor, in

        23    accordance with the actual draft iterations of the

        24    settlement agreement is that they call for a Bankruptcy

        25    Court 9019 approval, Rule 9019 approval, which is the

1   approval process for settlement agreements reached by

2   the trustee with parties which must be approved by the

3   Bankruptcy Judge.

4          I think, your Honor, in one of the pleadings

5   that was in front of your Honor that was going to be

6   argued today, I think it was related to the PSC's motion

7   for common benefit allocation.  We kind of went through

8   what the process is going to be, but once the 9019

9   motion is approved by the Bankruptcy Judge, at that

01:51PM  10  point, it's at least in our contemplation, again, these

11  are iterative drafts of the agreements, that funding

12  will happen into escrow, into an escrow supervised and

13  under the control of the trustee and the bankruptcy

14  court.

15         What will then happen, your Honor, is that

16  those monies will remain in escrow because each of the

17  settlement agreements will contain as conditions for

18  their effectuation, basically a confirmation of a

19  bankruptcy plan that will contain the sort of releases

01:51PM  20  and injunctions that your Honor has heard about since we

21  first appeared in front of you, so it's our hope that we

22  will be building on these settlement agreements with

23  other settlement agreements with other third-party pain

24  clinics and medical care providers so that at the

25  appropriate time that it would be our hope, again, and I

```
 1   don't want this to be used to come back at me because
 2   this is a very complicated case with a lot of moving
 3   pieces, but it would be our hope at some point in the
 4   second half of 2014, Judge Saylor, that those settlement
 5   agreements, the ones that had been reached and had been
 6   agreed to and had been approved by the Bankruptcy Judge,
 7   will then be offered up for final approval in front of
 8   the Bankruptcy Court in a Chapter 11 plan, which upon
 9   the entry of a confirmation order and certain other
10   conditions would then result in the allocation of those
11   proceeds to various places, including, as I think we
12   stated in the committee's pleading, a significant
13   portion of those proceeds to a tort trust for
14   distribution to tort claimants in this MDL and otherwise
15   in accordance with a claim's facility that will be
16   agreed to by the plaintiffs themselves, and that's how
17   we look at the next half year, nine months, Judge.
18             THE COURT:  All right.  Good.  Anything else
19   on that topic?  All right.  Number 4, master complaint.
20   Mr. Gottfried, you said you wanted to kick that deadline
21   past our next status conference.  When is the next
22   status conference?
23             MR. SOBOL:  The next status conference is
24   March 13th on your calendar, your Honor.  We're not sure
25   about Judge Zobel's docket.
```

```
 1                    THE COURT:  Why don't I kick that March 10th
 2     date, the filing of the master complaint to --
 3                    MR. SOBOL:  The 31st.
 4                    THE COURT:  Why don't we make it March 31st.
 5     Will that work, Mr. Gottfried?  That's a placeholder,
 6     obviously.
 7                    MR. GOTTFRIED:  Yes, understood.
 8                    THE COURT:  All right.  I will enter an
 9     order to that effect.  As far as the extension of time
10     for UniFirst, I think I granted that, notwithstanding
11     the appearance of conflict.
12                    Mr. Sobol, do you want to be heard on that?
13                    MR. SOBOL:  No, your Honor.
14                    THE COURT:  I'm doing favors for me friends
15     here.
16                    [Laughter]
17                    THE COURT:  All right.  Number 5, the PSC's
18     motion to partially lift the discovery stay is, as it
19     has been in limbo, and hopefully it will never get out
20     of limbo.  Am I right about that, assuming the
21     settlement works?
22                    MR. SOBOL:  Well, no, quite the opposite,
23     your Honor.  That's a feeling of advocacy on my part.
24     Before I go ahead, I do think that while technically the
25     issues involving this motion don't directly involve
```

01:53PM (line 10)

01:54PM (line 20)

1   UniFirst, it's probably a pretty fundamental decision

2   for the case as to when formal discovery starts

3   regarding NECC.

4                    THE COURT:  Oh, yes.

5                    MR. SOBOL:  Before I talk, I'm not trying to

6   do anything other than responding.

7                    THE COURT:  In any event, that's going to be

8   put on hold for the time being.

9                    MR. SOBOL:  That needs to be put on hold,

01:54PM  10   but just to be clear with you, and perhaps if Judge

11   Zobel is reading this before our next hearing, there are

12   two different issues with respect to NECC.  Of course,

13   one issue is whether there's liability for it, and,

14   obviously, if there's a settlement, you don't need

15   discovery with respect to that.

16                    Second, however, and, more importantly, is

17   that there is still an enormous amount of formal

18   discovery that needs to be taken with respect to NECC

19   and the affiliated defendants regarding the liability or

01:55PM  20   not of many other parties, and, frankly, the one way to

21   discharge the obligations on behalf of this MDL would be

22   to create a set of discovery that's relevant to all

23   those other issues so at least the common discovery has

24   been concluded.

25                    Having said that, whether and when to begin

1    that, I, under these circumstances, it won't be for you,

2    it will be for Judge Zobel, so I'll hold my powder in

3    terms of my arguments as to why I'd like to move forward

4    with that now and leave it for her.

5              THE COURT:  Give me an update on the

6    informal, or whatever we want to call it, discovery to

7    date.

8              MR. SOBOL:  Right.  So on the informal

9    discovery, until fairly recently, I think our report has

01:56PM  10    always been very good, and that there's been informal

11    discovery, that Mr. Fern's office and the trustee's

12    office have worked with us on an ad hoc basis depending

13    upon the issue and the actual potential defendants or

14    the matter you're looking into trying to find

15    information and get information.

16              In addition, there are the mediations that

17    are underway regarding a handful of actual or potential

18    defendants.  There's been informal efforts with respect

19    to those.

01:56PM  20              One of the hiccups we've had recently, and

21    I'm not going to try to make any more of it, but it is a

22    hiccup, and it's a frustration is that because it's an

23    informal process, there is this sort of, "Well, I want

24    this from you" and "You haven't given this to me," so

25    we've had some hiccups in the past several weeks in

1    terms of trying to get some information, and those

2    hiccups can either be expressed in pretty frustrating

3    ways, or we can sugarcoat it as much as we'd like and

4    make a good presentation to you.

5              One way or the other, the point is it's an

6    informal process, it's not a formal process, it is

7    moving forward, it has its issues, the lawyers continue

8    to try to work those out, that kind of thing.

9              But in discussing this with some of my

01:57PM  10    colleagues here, I criticized my own presentation of

11    that issue at the last status hearing as basically being

12    I think I overdid it in terms of recognizing how -- the

13    process works fine, but it has its shortcomings

14    regardless of what the lawyers are doing, meaning the

15    formal discovery process has to kick in at some point --

16              THE COURT:  I certainly do think --

17              MR. SOBOL:  -- as a practical matter.

18              THE COURT:  -- from my viewpoint, there's no

19    realistic alternative, and I guess to, you know -- go

01:57PM  20    ahead.

21              MR. SOBOL:  Just to give you one example, so

22    when we, the PSC, receive information in this informal

23    process from the trustee or Mr. Fern, Mr. Gottfried, our

24    rules of the game are we're not allowed to share it with

25    anybody else.  We abide by that.  Of course, that makes

1   frustrations then when people say we want this

2   information when they're making demands of us for it,

3   right, or the trustee is then working out arrangements

4   to give it to somebody.

5           Again, it's a source of difficulty of

6   actually trying to move things along when things are in

7   an informal way, not to cast aspersions on any persons'

8   good faith at all, which I'm not doing.

9           THE COURT:  Well, just, again, perhaps to

01:58PM   10   state the obvious, from my perspective, first off, I

11   agree that this needs to be formalized, that I don't

12   think informal discovery is ever a substitute for formal

13   discovery.  It has its virtues, not waiting long periods

14   of time before people can begin to process information,

15   but it has its shortcomings.

16           From my perspective, it's been intertwined

17   with this settlement issue.  I didn't want a relatively

18   small company and a relatively small number of people to

19   be bombarded with discovery if there's questions about

01:59PM   20   who's going to pay for or who's going to store the

21   documents, all these kinds of things that I hope would

22   become if not resolved, at least teed up, once that

23   process was done, and, obviously, it's been hung up by

24   that, but to state the obvious, this episode, these

25   episodes happened, what, a year and a half ago now, and

1    discovery really needs to get underway as quickly as

2    possible.

3              Mr. Gottfried, do you want to add anything

4    to this?

5              MR. GOTTFRIED:  I think, quite frankly, the

6    stay has been in place, has salutary effects, it's

7    allowed parties to get where we are.  I think de facto

8    even perhaps it's going to be in place until the next

9    status conference with Judge Zobel, and that would give

01:59PM  10   the parties time to complete, hopefully, the settlement

11   agreements, and then I think we need to see where we are

12   and what's left and what makes sense, so I think the

13   process that you outlined, quite frankly, at the last

14   status conference, that that would start a meet and

15   confer process at that time when we see what the lay of

16   the land is, you know, made good sense, and so I think

17   the process at this stage has been salutary, I think we

18   cooperated fully in informal discovery in a reasonable

19   way consistent with, you know, our obligations, quite

02:00PM  20   frankly, to preserve the assets of the estate, and so

21   I'm comfortable with where we are and look forward to

22   discussing it with Judge Zobel at the next status

23   conference.

24             THE COURT:  All right.  I guess, you know,

25   it may not be on the front burner, but it shouldn't be

1    on the back burner anymore, maybe it's a big stove,

2    middle row of burners.

3              MR. FERN:  Judge, if I may.

4              THE COURT:  Yes, Mr. Fern.

5              MR. FERN:  Thank you.  You've gotten some

6    analysis from both Mr. Sobol and Mr. Gottfried in which

7    I don't disagree with anything that's been said.  The

8    informal process though has been working.  Other than

9    these hiccups, and those hiccups are not of anyone's

02:01PM    10    making except the deal that the PSC cut with the trustee

11    early on to take the information as quickly as possible

12    so they could dig into the documents on an informal

13    basis.

14              Now that's coming back to haunt, but that

15    also is being resolved because the other parties are

16    getting access to the documents that the trustee through

17    my office has provided to the PSC.

18              We continued to cooperate.  This goes back

19    to April of 2013, when we had our first negotiations.

02:01PM    20    We continue to make productions.  As we sit here, I

21    believe a production is being made to the PSC and the

22    OCC regarding additional documents from InSight down in

23    the Philadelphia Belt Jersey area.

24              There are, especially with these mediations,

25    or these anticipated mediations, we have moved those

1    things expeditiously to get the documents to the PSC for

2    their analysis prior to going to the mediation table.

3            We have made 13 productions, 5200 documents,

4    42,000 pages.  There's a search being conducted as we

5    speak for Victory documents and Liberty documents where

6    mediation is scheduled.  We anticipate those productions

7    would be made last week.  The searches are being done by

8    my office often without negotiating or suggested search

9    terms from the other side.

02:02PM  10            We are doing our search terms that are as

11   all inclusive as they can be to get the relevant and

12   responsive documents to the PSC or the OCC as need be

13   for their mediation use and whatever due diligence they

14   may need as part of the agreement that's put in place

15   with the insiders, so I don't disagree with the Court's

16   analysis that we do need formal discovery, but I just

17   wanted to advise that things have been moving along.

18            The PSC is getting everything they've asked

19   for, so there's really nothing to hurdle, to stop this

02:03PM  20   process from moving forward.

21            THE COURT:  All right.  And that was my

22   understanding and expectation.  I guess I'll leave it

23   there.  At some point, like I say, it does need to be

24   regularized, access needs to be shared with everyone who

25   has a right to know and so on, but it may be still a

1    little early to do that.

2             I can remember when 42,000 pages was a big

3    case, by the way, that's how old I am.  It seems like a

4    small number now compared to what I usually deal with.

5             Anything else on informal discovery?  I

6    guess we're on item 6.  Item Number 7, well, Ms. Parker.

7             MS. PARKER:  I would expect that your Honor

8    would not want to hear argument on that issue today, but

9    I can give you a --

02:04PM    10             THE COURT:  I guess I want to hear on this

11    point.  Is this something that is properly referred to

12    the Magistrate Judge or should it remain with the

13    District Judge, whether with me or Judge Zobel?

14             MS. PARKER:  We would have no objection to

15    it being referred to Magistrate Judge Boal.

16             THE COURT:  Is anyone here from Baltimore

17    Pain Management that wants to be heard?

18             MS. MARZULLO:  Your Honor,

19    Michelle Marzullo representing Baltimore Pain

02:04PM    20    Management.

21             THE COURT:  Yes.

22             MS. MARZULLO:  I have no objection to this

23    being referred to Judge Boal.

24             THE COURT:  All right.  I will do that.  I

25    think it's Number 786 and 787, is that right, the PSC's

```
 1   motions to compel?

 2             MS. PARKER:  That's correct, your Honor.

 3             THE COURT:  All right.  That's referred to

 4   Magistrate Judge Boal.

 5             MS. DOUGHERTY:  Your Honor, if we may, could

 6   we ask just that we do this as expeditiously as

 7   possible?  The PSC has a lot of issues related to the

 8   violation of the order that relate not only to Baltimore

 9   Pain but also several other clinics and hospitals,

10   including some that are defendants in this litigation

11   that have failed to comply with the order that are

12   holding us up in the process from moving forward with

13   respect to motions to dismiss and also with respect to

14   whether or not they even have wasting policies and other

15   issues, so we were prepared to have this heard today,

16   your Honor, given the fact that it has nothing related

17   to UniFirst, and it's fully briefed, we're happy to have

18   you hear it, your Honor, if you're able to hear it

19   today, but if you'd like to refer it, we just ask that

20   it be something that gets referred very quickly and ask

21   to be heard as quickly as possible.

22             THE COURT:  I think the better course is to

23   refer it.  I'll ask Mr. Cicolini to give a heads-up to

24   Judge Boal's clerk, that it is fully briefed and the

25   parties expected to argue it today and there is an
```

```
 1    expedition.

 2                MS. DOUGHERTY:  Thank you, your Honor.

 3                MS. MARZULLO:  Your Honor, this is

 4    Michelle Marzullo.

 5                THE COURT:  Yes.

 6                MS. MARZULLO:  If I could just interject, as

 7    this nonparty, who is part of this discussion, I was not

 8    prepared to argue this today, and I do not believe

 9    that --

10                THE COURT:  You're in luck then because I'm

11    not going to ask you to do that.

12                MS. MARZULLO:  Thank you.  I disagree that

13    it's been fully briefed.  I'm preparing to request leave

14    to file a sur-reply.

15                THE COURT:  Okay.

16                MS. PARKER:  While we're speaking of giving

17    a heads-up, your Honor --

18                THE COURT:  Yes, Ms. Parker.

19                MS. PARKER:  -- I want to give a heads-up to

20    the Court, as well as all counsel who are present, that

21    the PSC intends to file additional motions to compel in

22    very short order, in particular, one against Premier and

23    probably an omnibus motion to compel that addresses

24    particular issues and groups them in some sort of

25    logical way.
```

02:06PM (line 10)

02:06PM (line 20)

1          To the extent that your Honor may find it

2    appropriate to issue an order that refers all motions to

3    compel that are derived from Judge Boal's earlier order

4    on the issue, sort of in a one fell swoop, that may be

5    appropriate.

6          THE COURT:  Again, I'm not going to do that.

7    I'll leave that to Judge Zobel.  What you say makes

8    sense, it's just hard to think it through in advance,

9    and you'll wind up not referring something that ought to

02:07PM  10   be and referring something that ought not to be, so, in

11   any event, I take the comment, I'm going to leave it the

12   Baltimore Pain Management motion or the motions related

13   to that entity will be referred, and it sounds like

14   other motions are coming down the pike.

15          Anything else on Number 7 on subpoenas and

16   objections?

17          (No response)

18          THE COURT:  All right.  Number 8 I propose

19   to put on hold.  I guess I should ask is it fully

02:07PM  20   briefed and ready to be argued?

21          MR. SOBOL:  From the PSC's point of view,

22   yes, your Honor.

23          THE COURT:  Has every interested party had

24   an opportunity to respond?

25          MR. COREN:  Your Honor, speaking from the

1    point of view of the OCC, out of the lawyers who sit as

2    proxy, in view of the submission that we received about

3    an hour or two before this hearing, we would like to

4    submit a reply to that reply.

5              THE COURT:  All right.  How soon can you get

6    that on file?

7              MR. COREN:  In one week, your Honor, we

8    believe.

9              THE COURT:  I'll give you leave to file I

02:08PM  10   guess is it a sur-reply by February the 13th?

11             MR. COREN:  Thank you, your Honor.

12             MR. GOTTFRIED:  Your Honor, can I request

13   that the trustee get the same order?  I want to have the

14   opportunity to confer with Mr. Coren about that.

15             THE COURT:  Again, February 13th.

16             MR. SOBOL:  Your Honor, in light of I think

17   it's fair to say that UniFirst and no defendant has any

18   interest in the Court's ruling one way or the other with

19   respect to this issue, including, obviously, than

02:09PM  20   UniFirst, and also since it has some history in your

21   overview of the case to date, I think it makes sense,

22   and I would perhaps ask that you at least hear the

23   parties on it, receive the submissions and make a

24   decision on the basis of what you hear today and the

25   submissions as to whether it's something you want to

1    make a decision on or refer to Judge Zobel.

2              THE COURT:  I thought about that, and I

3    think what I would prefer to do is while it doesn't

4    directly affect UniFirst, or, arguably, any defendant,

5    it does have an effect on I guess the ultimate course

6    and outcome of the case, and I think it ought to be left

7    to the Judge who's going to put the final signature on

8    the final document to decide, but I think that I would

9    expect to weigh in on it as appropriate with Judge Zobel

02:10PM  10   in terms of, you know, to the extent she wants history

11   or my view of what's happened to date, I think that's

12   appropriate for me to do that, but I think the issue

13   itself is best left for her.

14             All right.  Unless there's anything on 8 or

15   9, an order setting a briefing schedule, I think I can

16   rule on this.  My only question was there was quite a

17   gap here.  It takes us all the way out to May 7th for

18   the Tennessee defendants to file their replies, which

19   is, I guess, six weeks or so after March 28th.  Does the

02:11PM  20   briefing schedule need to be that long?

21             MR. STRANCH:  Your Honor, this is

22   Gerard Stranch on behalf of the PSC.

23             THE COURT:  Yes.

24             MR. STRANCH:  I'm going to start by saying

25   we're going to miss you, but we do need that time.

1          THE COURT:  I feel a bond because we have a

2    roman numeral in common, Mr. Stranch.

3          MR. STRANCH:  There's not very many of us,

4    your Honor.

5          THE COURT:  We're a believer of minority.

6          [Laughter]

7          MR. STRANCH:  Your Honor, the problem we've

8    got is there's a large amount of briefing.  It's over 80

9    pages on just one of the motions alone.  We've not seen

02:11PM  10    two of the other briefs yet, and so we expect this is

11    literally going to be 300 to 400 pages of briefing.

12    Before we start filing our responses to it, we're going

13    to need that period.

14          THE COURT:  I'm feeling better already about

15    the recusal.

16          MR. STRANCH:  We haven't even gotten to the

17    appendices or exhibits, your Honor, so it is going to be

18    a complex, long brief that's going to have to be

19    written, and so we built the time in so that we wouldn't

02:12PM  20    end up a week beforehand having to ask for extra time or

21    having to rush through.

22          I do take to heart the comments of

23    Mark Twain that, "If I had more time, I would have

24    written less," and so that we hope by having more time

25    on the front end, we can write a more compact, coherent

1   brief that addresses the main issues, but we think we're

2   going to need that time just because of the amount of

3   briefing that's done.

4        THE COURT:  All right.  Does anybody else

5   want to be heard on that issue?

6        (No response)

7        THE COURT:  All right.  I'm going to grant

8   the motion then and set the timetable that's set forth

9   in the document, which is Number 845, which, again, sets

02:12PM   10   a briefing schedule that takes us all the way out to

11   early May.

12        MS. PARKER:  If I may, your Honor.

13        THE COURT:  Yes, Ms. Parker.

14        MS. PARKER:  If it has not already been

15   filed, I understand we'll be filing a similar

16   stipulation for a briefing schedule with Premier either

17   today or possibly tomorrow.  It's a similar timetable,

18   not exactly the same, but just to alert you to the fact

19   that that is likely coming as well.

02:13PM   20        THE COURT:  If you want my quick pass at it,

21   get it on file quickly.  I don't know how long this

22   transition is going to take, but please don't delay.

23        MS. PARKER:  We will do that.  Thank you,

24   your Honor.

25        THE COURT:  Dispositive motions I'm going to

 1    hold in abeyance, obviously.  That's Number 10.

 2    Number 11, matters referred to Judge Boal, who is

 3    prepared to give me an update on that?

 4              MS. PARKER:  I will address that, your

 5    Honor.  There was a meeting this morning before

 6    Judge Boal to address the plaintiffs' fact sheet or

 7    plaintiffs' profile form as well as the releases that

 8    the parties had proposed accompany that fact sheet.  The

 9    hearing went very well.  I think Judge Boal had some

02:14PM 10    very pointed questions about specific questions proposed

11    by either side.

12              One of the issues that arose is that the

13    plaintiffs had included in the submission to Judge Boal

14    an ESI protocol and a deposition protocol, and we had

15    done that in light of your Honor's comments at the

16    previous status conference that we should meet and

17    confer and we should submit those to the Court.

18              We did not, however, as I gather, formally

19    present those in the form of a motion, so we intend to

02:14PM 20    do that, again, in short order.  Our suggestion would be

21    that those matters then be formally referred to

22    Magistrate Boal, that Magistrate Boal may be deciding

23    ESI protocol, deposition protocol and the plaintiff fact

24    sheet and releases at the same time.

25              THE COURT:  All right.  Remind me, is that

1    all defendants as opposed to just St. Thomas?

2              MS. PARKER:  Yes, your Honor.

3              THE COURT:  All right.

4              MS. PARKER:  They are documents that were

5    primarily negotiated with St. Thomas, that all

6    defendants were invited to participate in the meet and

7    confers.  I believe that the majority of the comments

8    and the submissions came from St. Thomas and other

9    Tennessee defendants, but the purpose of those

02:15PM  10   documents, in particular, the ESI protocol and the

11   deposition protocol are to set parameters that then

12   would apply to all defendants in the MDL moving forward.

13             THE COURT:  All right.  When would you

14   expect to file that motion?

15             MS. PARKER:  It may have been done already,

16   your Honor.

17             THE COURT:  Again, if it's something you

18   want me to act on, it needs to be on file quickly.  All

19   right.  Anything else on matters referred to Judge Boal?

02:15PM  20   All right.  Number 12, bellwether scheduling process.

21   What's the status of that?

22             MR. CHALOS:  Your Honor, I can address this

23   on behalf of the PSC.  This is Mark Chalos.  We have

24   been engaged in a process of developing a bellwether and

25   trial plan with an accompanying schedule and discovery

1    schedule.

2            We sent a proposed plan to the defendants

3    several weeks ago.  We proposed a meet and confer

4    session for the following Monday.  We sent it to them on

5    Friday, proposed to meet and confer session for the

6    Monday.  They weren't able to make that work, so we

7    moved it to Wednesday.  On Wednesday, they were not able

8    in a position to have any meaningful discussion about

9    it, so we said we'll plan to file it on Friday, the

02:16PM   10   31st.

11            We proposed a future meet and confer either

12   before the 31st or after we had put it on file with the

13   Court on the 31st, and we've heard nothing in writing or

14   verbally until yesterday when we saw a filing from one

15   group of the St. Thomas defendants, and then this

16   morning, there's another filing from the other group of

17   St. Thomas defendants wherein they have proposed some

18   schedules of their own that are counterproposals to

19   ours.

02:17PM   20          It looks like there's some areas of overlap,

21   it looks like there's some areas that I think we'll be

22   able to negotiate and agree on resolution for, and I

23   think there's some areas where we may need some court

24   intervention.

25            What I was planning to propose to your Honor

1    is doing some sort of expedited basis wherein the Court

2    would set a deadline for a week or so from now for the

3    parties to file a joint submission or competing

4    submissions or some blend of the two with a telephone

5    hearing at some point before the next scheduled status

6    conference.

7             We preferred not to let this slip another

8    five weeks, if possible.  Of course, in light of your

9    Honor's news from today, I'm not sure if we can do that

02:17PM  10    today, but if we can, I certainly would like to set up

11    at least a schedule for dealing with this issue and

12    getting it before Judge Zobel, if possible, before the

13    next status conference.

14             THE COURT:  All right.  Specifically what do

15    you propose by way of schedule?

16             MR. CHALOS:  What I was planning to propose

17    is next Friday is the deadline, which would give us the

18    deadlines for the parties to file either jointly or

19    separately a document that identifies the areas of

02:18PM  20    agreement and sets forth the areas of disagreement by

21    next Friday, which would give us about a week to

22    continue meeting and conferring.

23             Following that, I would suggest the

24    following Wednesday for any replies to the other side's

25    briefs with, you know, strict page limits, maybe a

```
 1   five-page limit for the first briefs and a three-page
 2   limit for the reply briefs or something like that, and
 3   then set up a telephone hearing maybe a week after the
 4   replies are due to give the Court ample time to review
 5   all the filings.
 6            THE COURT:  Mr. Rehnquist.
 7            MR. REHNQUIST:  Your Honor, Jim Rehnquist
 8   for UniFirst.  We just got here, and we object to any
 9   kind of an expedited briefing schedule, thus we have not
10   been part of any meet and confers, and we think this
11   matter is best left for Judge Zobel.
12            THE COURT:  All right.  I think under the
13   circumstances, I'll need to do that.  I will, again,
14   attempt to let her know that the PSC at least thinks
15   that this is a matter that needs to be expedited and
16   leave it to her judgment to decide what she wants to do
17   in that regard.
18            All right.  Does anyone want to be heard
19   from St. Thomas or anyone else who's been participating
20   in this process?
21            MS. GREER:  Your Honor, this is Marcy Greer.
22            THE COURT:  Yes, Ms. Greer.
23            MS. GREER:  Obviously in light of the
24   current circumstances, we don't have to brief these
25   issues to you, but I do want to correct the record that
```

02:19PM (line 10)

02:19PM (line 20)

```
 1   we have been exchanging written correspondence about

 2   this, and the presentation made, it sounds as if we

 3   weren't participating.  That's not in fact the case.

 4            We are concerned about expediting this and

 5   setting it on a very short basis, which I'm glad the

 6   Court is not going to do because obviously we've got a

 7   lot of mental work to do to educate this new sitting

 8   Judge about the interaction of all these different

 9   things, so I just wanted to correct the record on that

10   point.

11            THE COURT:  Okay.  Anything else on that

12   topic?

13            (No response)

14            THE COURT:  All right.  Number 13, PSC

15   notice of instructions for accessing legal repository.

16            MS. PARKER:  Yes, your Honor.

17            THE COURT:  Ms. Parker.

18            MS. PARKER:  The PSC filed a document

19   providing instructions on how parties in the MDL may

20   access the U.S. legal repository.  To date, no one has

21   taken us up on our offer of access.  One participant is

22   in mediation and claims that cost is an issue for them,

23   and that's something we're working through.

24            THE COURT:  Is that Liberty?

25            MS. PARKER:  Yes, your Honor.
```

02:20PM (lines 10)

02:20PM (lines 20)

```
 1              MR. FERN:  Judge, I will say on behalf of
 2    the trustee, we were given access this week through the
 3    FTP file transferred as work, and Ms. Maura tells me
 4    last night that everything that is in the U.S. Legal
 5    Repository but for one new delivery within the last 24
 6    hours we have already been funded to, so the process is
 7    working.
 8              THE COURT:  Okay.
 9              MR. SOBOL:  At our own expense, too, we took
10    care of the bill for them.
11              MR. FERN:  We offered to pay our fair share,
12    Judge.
13              THE COURT:  That's a dispute that I'm glad I
14    won't have to work through.  All right.  Unless there's
15    anything else on that, the motion to amend the order on
16    central enforcement of subpoenas, I've reviewed this.
17    It's not clear to me there's any opposition.  Was one
18    filed?  If so, I couldn't find it.
19              MS. PARKER:  No, your Honor.
20              THE COURT:  I'm going to go ahead and enter
21    that order.  I may tweak it somewhat.  I'll grant that
22    motion and enter it.  It's really in the nature of a
23    clarifying motion as much as anything else.  The
24    trustee's renewed and supplemental motion to transfer,
25    which is I think one of the big headline items, I'm
```

1    going to defer on.  My understanding is that it is fully

2    briefed; is that right?  Does anyone disagree?

3         MR. GOTTFRIED:  We submitted our final paper

4    this morning actually, your Honor.

5         THE COURT:  All right.  So that will be

6    deferred, as will the renewed motion for mandatory or

7    permissive abstention.  Item 17, what is this,

8    Ms. Parker?

9         MS. PARKER:  This is 17A is just a

02:22PM   10    recognition that the Court has entered a third-amended

11    protective order since the last status conference.

12         THE COURT:  Yes, there was an ambiguity or

13    inconsistencies I think that I corrected so that there's

14    now a new protective order.

15         MS. PARKER:  17B refers to the fact that the

16    PSC filed an amendment to the master complaint that

17    added some additional factual and legal allegations that

18    were specific to St. Thomas.  That was an additional.

19    We drafted it as a subparagraph under the existing

02:23PM   20    conspiracy count.  We anticipate that we may have, I

21    can't say will have, but may have similar amendments

22    that are specific to other clinics as we continue

23    forward in this litigation.

24         THE COURT:  All right.  Remind me, what, if

25    any, amendments to the complaint, I don't remember how

```
 1    this is addressed.  In other words, do you need to file
 2    a motion?  Can you do it on your own?  What is the
 3    protocol for this?  I've forgotten.
 4              MS. PARKER:  Under Federal Rule 15.
 5              THE COURT:  Right.
 6              MS. PARKER:  I can't tell you which subpart,
 7    which is embarrassing, but under Federal Rule 15, you
 8    are permitted to amend the complaint within a certain
 9    number of days receiving a motion to dismiss.
10              THE COURT:  Right.
11              MS. PARKER:  So this particular amendment
12    was done within that time period.
13              THE COURT:  Okay.  It's within rubric of
14    Rule 15.  You talk about future amendments to the master
15    complaint, the master complaint is itself not a
16    complaint, it's something that people adopt by
17    reference, and so it's not clear to me whether any of my
18    existing orders addressed this, but presumably you could
19    amend it at any time, but then the question is do you
20    now need to file a new short form complaint adopting the
21    new master complaint?  If that hasn't been thought
22    through, that ought to be.  Ms. Dougherty.
23              MS. DOUGHERTY:  Your Honor, we did think
24    about that in advance of the short form complaint.
25    Actually, in the first paragraph, it adopts all the
```

1    references in the master complaint and any amendments

2    thereto, so our effort at that point in time was to

3    encapsulate any further amendments so that the short

4    form complaint itself would not have to continuously be

5    amended every single time there's a change.

6              THE COURT:  All right.  What I'm going to do

7    is note the existence of the issue.  If some defendants

8    as this process violates Rule 15 or somehow it tangles

9    up their Rule 46 motion, I'll leave that to be so argued

02:25PM  10    at the time.  I express no opinion as to whether that

11    works or not.

12              All right.  Status of bankrupt proceedings.

13              MR. GOTTFRIED:  Yes, your Honor.

14              THE COURT:  Quiet, I would think, yes?

15              MR. GOTTFRIED:  I have a couple things,

16    Judge, I wanted to report to the Court.  I think at the

17    last status conference, we talked a little bit about

18    account receivable collections and wanted to make a more

19    and full complete report to the Court.

02:25PM  20              On the 12-31-2012, the accounts receivable

21    for NECC was approximately $2,250,000.  Obviously,

22    there's an issue with some of those accounts receivable,

23    but to date, the trustee has collected nearly $800,000

24    against those accounts receivable and continues to work

25    through the amounts, and he's had to issue credits of

about 300,000 already but is continuing to work through

the accounts receivable issues and has had excellent

success to date in collecting nearly $800,000, so I

wanted to put some numbers forth from the last status

conference.

THE COURT:  So there's about a million one

still outstanding that he must think are at least quasi

collectable?

MR. GOTTFRIED:  We hope.  We're working

through that.

THE COURT:  All right.

MR. GOTTFRIED:  Two, as the Court is well

aware, the bar date has now passed, and I wanted to give

you at least a preliminary report that there were

approximately 3100 patient claims filed.  I thought that

would be important to know.

A number of clinics and some of the

so-called national defendants have also filed claims, so

we're in the process of going through those and getting

our numbers together, but there's a preliminary report

for the Court that the bar date is passed, and that's

where we are.

THE COURT:  Okay.  Anything further on

bankruptcy?  All right.  Status of appeals.

MR. FENNELL:  Your Honor, there's an appeal

1    pending in the First Circuit on I believe it was a

2    motion for abstention, the original motion for

3    abstention that's on appeal, and the Appeals Court just

4    issued a scheduling order on that.  The opening briefs

5    are due March 10th.

6         THE COURT:  All right.  And status of

7    insurer's declaratory judgment actions.  I have two of

8    these.  I guess I don't want -- I don't need a final

9    binding position at this point, but if it looks like

02:28PM  10  there is a recusal issue there, which would not be

11   obvious to me, I would like it to be flagged sooner

12   rather than later, but what is the status of those

13   actions?  Mr. Sobol.

14        MR. SOBOL:  Well, the only thing I can

15   indicate, your Honor, is that the PSC is in the process

16   of drafting papers in order to intervene.  I think I've

17   seen some recent answers and some appearances by the

18   individuals as well, too, so it probably makes sense for

19   the PSC to make sure that it's trying to get involved in

02:28PM  20  the case soon and for you to schedule a scheduling

21   conference with respect to both of them, I should say.

22        THE COURT:  All right.  There have been

23   answers filed in both the cases drawn to me?

24        MR. SOBOL:  That's my understanding, yes.

25        THE COURT:  I'll have Mr. Cicolini take a

1    look at that, and if it looks like there's answers and

2    it's ready to be teed up, we'll set it for a scheduling

3    conference.  Again, I don't know whether any of that

4    affects UniFirst, but obviously the time to raise those

5    issues is now.

6              MR. SOBOL:  I think --

7              THE COURT:  Go ahead.

8              MR. SOBOL:  I think that the answer to that

9    might rest with Ameridose and whether or not Ameridose

02:29PM  10   is going to take the position that its liability is in

11   some way affected one way or the other by UniFirst, and

12   you should probably know that sooner rather than later.

13             THE COURT:  All right.  I'll let that work

14   its way through in the normal course.  Anything else

15   that anyone wants to take up?

16             MR. FERN:  Judge, you may have seen this

17   week that a number of stipulations of dismissal without

18   prejudice were filed on cases.

19             THE COURT:  Yes, I saw that.

02:29PM  20             MR. FERN:  Can I explain to the Court there

21   were approximately 18 duplicate filings, Judge.  Some of

22   them or most of them were lawsuits filed against NECC

23   before the bankruptcy petition was filed last

24   December of 2012.  Subsequently, those same firms on

25   behalf of those same plaintiffs filed lawsuits against

```
 1    either affiliated defendants or the nonaffiliated
 2    clinics in their perspective jurisdictions.
 3              When they were filed, most of them in
 4    Tennessee, they were either removed or brought here by a
 5    tag-along action, so we had duplicate plaintiffs with
 6    two lawsuits in the MDL.  We were cognizant of that.
 7              We worked with the various law firms in
 8    Tennessee and a couple in Ohio.  We offered them various
 9    options as to how to basically clean up the docket.
10    They've chosen to file these stips of dismissal without
11    prejudice, therefore, it's basically avoiding these
12    cases so when we get to a mediation process, no
13    plaintiff gets to double-dip in any kind of recovery.  I
14    anticipate you'll see more of those stipulations filed
15    within the next week to 10 days.
16              THE COURT:  All right.  Thank you.  Actually
17    I have another housekeeping matter.  There's been a
18    motion hanging out there since last July.  That's ARL
19    Bio Pharma's motion for a protective order that I think
20    the relief they're seeking either has been superseded by
21    subsequent events or some are caught up in what I expect
22    to happen over the next couple months.
23              Is anyone here -- what I was going to
24    suggest is that I deny it without prejudice under the
25    circumstances.  Let me hear from counsel.
```

1          MS. RAGOSTA:  Your Honor, Kristen Ragosta

2     for ARL.  To be honest, I do not even remember the basis

3     for the motion at this point.  I wasn't prepared to

4     speak on it today.

5          THE COURT:  It suggests it's not the most

6     compelling motion possible.

7               [Laughter]

8          THE COURT:  It may have been when you filed

9     it.  Mr. Ellis.

02:31PM  10          MR. ELLIS:  I think it had to do with case

11     management.  I think it's moot at this point, Judge.

12          THE COURT:  It's 276.  I'm going to deny it

13     without prejudice.  If there are issues raised in there,

14     they can brought up again, but, again, I want to clear

15     the docket for the new Judge ought to have, if not a

16     clean slate, a slate that's not any dirtier than

17     necessary.

18          MS. RAGOSTA:  Thank you, your Honor.

19          THE COURT:  Anything else?

02:32PM  20          (No response)

21          THE COURT:  All right.  Thank you, all.  I,

22     again, I've very much appreciated working with all of

23     you.  The in-state lawyers I'll see again.  I'm sorry we

24     dragged you up here, but it has been a pleasure, and

25     thank you, all.

1          MS. PARKER:  Thank you, your Honor.

2              (Whereupon, the hearing was adjourned at

3    2:33 p.m.)

4

5                  C E R T I F I C A T E

6

7    UNITED STATES DISTRICT COURT )

8    DISTRICT OF MASSACHUSETTS ) ss.

9    CITY OF BOSTON )

10

11       I do hereby certify that the foregoing

12   transcript, Pages 1 through 53 inclusive, was recorded

13   by me stenographically at the time and place aforesaid

14   in MDL NO. 13-02419-FDS, IN RE:  NEW ENGLAND COMPOUNDING

15   PHARMACY CASES LITIGATION and thereafter by me reduced

16   to typewriting and is a true and accurate record of the

17   proceedings.

18       Dated this February 11, 2014.

19                  s/s Valerie A. O'Hara

20              _____

21              VALERIE A. O'HARA

22              OFFICIAL COURT REPORTER

23

24

25