UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN RE NEW ENGLAND COMPOUNDING )
PHARMACY, INC. PRODUCTS LIABILITY )
LITIGATION )
                                          )   MDL No. 2419
_____ )   Dkt. No 1:13-md-2419 (FDS)
                                          )
THIS DOCUMENT RELATES TO:          )
                                          )
Suits Identified in Docket 898       )
                                          )

## AFFIDAVIT OF CHRIS TARDIO

STATE OF TENNESSEE
COUNTY OF DAVIDSON

Comes Chris Tardio, after first being duly sworn, and states as follows:

Introduction

1.  I am over 18 years of age, have personal knowledge of the facts contained herein, and am competent to testify to same.

2.  I am a member with the law firm of Gideon, Cooper & Essary in Nashville, Tennessee.

3.  I represent the following Tennessee Defendants in multiple lawsuits that have been transferred to this Court for pretrial proceedings in the MDL:

    a. Saint Thomas Outpatient Neurosurgical Center, LLC,
    b. Howell Allen Clinic, a Professional Corporation,
    c. John W. Culclasure, MD,
    d. Debra V. Schamberg, RN,
    e. Specialty Surgery Center, Crossville, PLLC,
    f. Kenneth R. Lister, MD,
    g. Kenneth Lister, MD, PC, and
    h. Donald E. Jones, MD.

4.  I submit this affidavit in response to requests by three lawyers for further information related to a previously-submitted affidavit and to acknowledge confusing and, in part, erroneous language used in the initial affidavit.

Original affidavit

5. On February 7, 2014, we filed, on behalf of our clients, a "global" memorandum of law in support of our previously-filed motion to dismiss. The memorandum of law is at Dkt. 898. The previously-filed motion to dismiss is at Dkt. 770.

6. The motion to dismiss and memorandum of law assert that various plaintiffs in the MDL failed to comply with Tennessee's pre-suit notice requirements. Tennessee's pre-suit requirements include the requirement that the potential plaintiff provide the potential defendant pre-suit with a HIPAA-compliant medical records authorization allowing the potential defendant to obtain records from other potential defendants.[1]

7. With the memorandum of law at Dkt. 898, I also completed and signed an affidavit (Exhibit C). The affidavit listed at paragraph 6 a non-exhaustive list of 27 cases in which we received a HIPAA authorization pre-suit but were unable to obtain records.

8. During the course of this lawsuit, we have kept numerous charts to keep track of various aspects of the 100+ lawsuits and even more noticed or threatened actions. One such chart documented the status of our scores of records requests that we sent and whether they had been accepted or rejected. The patients identified in paragraph 6 of the affidavit were identified from this internal chart as having had our records request rejected.

Lovelace, Martin, and Williams

9. On February 11 and 12, I received letters from three lawyers representing plaintiffs in the MDL requesting further information regarding the facts stated at paragraph 6 of the affidavit. Collectively, the lawyers asked for further information regarding the pre-suit medical records releases provided in the cases brought by Kathy Chambers, Eddie Lovelace, Mary Martin, Earline Williams, Travis Besaw, and Rosemary Ferguson, and our requests for records with those releases.

10. After receiving the letters requesting additional information, we returned to the files and located the "original source" documentation relating to medical records requests made pre-suit (*e.g.*, requesting letters and responsive letters).

11. We confirmed that, for all of the patients we listed in paragraph 6 of the affidavit, our original records requests were denied when sent. In that sense, paragraph 6 of the affidavit was accurate.

---

[1] TENN. CODE ANN. § 29-26-121(a)(2)(E).

12. However, when we re-reviewed the underlying documents, we discovered that, when we requested the medical records of Eddie Lovelace, Mary Martin, and Earline Williams, we did not attach the certificates of death for the patients. We had the certificates of death, but we failed to submit them with the requests.[2] Thus, these requests were apparently rejected because of our error, not because of a stated deficiency of the HIPAA authorization.[3]

13. In the chart attached as Exhibit A to the Memorandum of Law [Dkt. 898], we did not identify Lovelace, Martin, or Williams as having deficient authorizations beyond the fact that they did not allow the defendant to obtain records from NECC and other affiliated defendants. However, that is admittedly confusing when read in conjunction with the affidavit, which identifies these cases as being ones in which the HIPAA authorization was rejected as deficient. To the extent it can, this affidavit hopefully resolves the issue.

Chambers request

14. Kathy Chambers provided a HIPAA release permitting St. Thomas Hospital to disclose her medical records to Saint Thomas Outpatient Neurosurgical Center.[4] When we requested her St. Thomas Hospital medical records on behalf of Saint Thomas Outpatient Neurosurgical Center, we mistakenly sent a HIPAA release that permitted a different provider to disclose her medical records to Saint Thomas Outpatient Neurosurgical Center. We simply erred in submitting the request. We did not identify Chambers in Exhibit A to the Memorandum of Law [Dkt. 898] as having a deficient HIPAA authorization, but that is admittedly confusing when read in conjunction with the affidavit.

Other patients on list

15. Because of this confusion, we re-reviewed the underlying documentation, to the extent we have it available, on all of the 27 patients listed in paragraph 6 of the affidavit. The findings on Lovelace, Martin, Williams, and Chambers are listed above. One additional clarification is necessary.

16. Joyce McKinney provided a HIPAA release authorizing health care providers on an attached list to disclose her medical records to Saint Thomas Outpatient Neurosurgical Center. When we requested her medical records on behalf of Saint Thomas Outpatient Neurosurgical Center, we did not include the attached list.

---

[2] Attached as Exhibit 1 to this affidavit is our original records request.
[3] Attached as Exhibit 2 to this affidavit is the responsive letter from Bradley Arant Boult Cummings rejecting our records requests.
[4] As demonstrated in our July 12, 2013, letter requesting the medical records from St. Thomas Hospital, the HIPAA release submitted for the medical records of Kathy Chambers authorized Howell Allen to disclose Kathy Chambers' medical records to Saint Thomas Outpatient Neurosurgical Center. It did not permit St. Thomas Hospital to disclose Kathy Chambers' medical records to Saint Thomas Outpatient Neurosurgical Center. The July 12, 2013, letter is attached as Exhibit 1 to this affidavit.

17. Based on our review of Exhibit 2 to this affidavit, the HIPAA releases that were utilized when requesting records for the other patients identified in the affidavit were denied for failure to comply with HIPAA.

Summary

18. In summary:

a. The HIPAA releases submitted for the medical records of Eddie Lovelace, Mary Martin, and Earline Williams were specifically denied because our office failed to include the certificates of death with the request. This was likely an error on our part in submitting the request.

b. The HIPAA release that we used to request the medical records of Kathy Chambers had an incorrect facility on the authorization. This mistake was likely made by us in submission of the request.

c. The HIPAA release that we used to request the medical records of Joyce McKinney did not have the list of health care providers that Ms. McKinney attached to her HIPAA release. This mistake was likely made by us in submission of the request.

d. The other requests, as reflected in the letter attached as Exhibit 2 to this affidavit, were rejected because the receiving facility deemed the authorization deficient.

e. While the previous affidavit was correct in stating that the records requests for the patients were denied, it was mistaken in that it failed to state that the requests for the records of Kathy Chambers, Eddie Lovelace, Mary Martin, Joyce McKinney, and Earline Williams were denied due to apparent submission errors by our office. The chart, which formed the basis for the assertions in the previous affidavit, did not denote the submission errors. I take personal responsibility for the confusing language in the original affidavit and submit this affidavit to clarify the record.

_____
(Signature of Affiant)

STATE OF TENNESSEE )
)
COUNTY OF DAVIDSON )

Sworn to and subscribed by me on this 18th day of February, 2014.

_____
(Notary Public)

My Commission Expires: 07/03/2017

[Notary Seal: LINDA DEBAUN, STATE OF TENNESSEE NOTARY PUBLIC, DAVIDSON COUNTY, MY COMMISSION EXPIRES July 3, 2017]