UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
IN RE: NEW ENGLAND                              )
COMPOUNDING PHARMACY, INC.       )
PRODUCTS LIABILITY LITIGATION        )
                                                                       )        MDL No. 13-md-2419-FDS
v.                                                                     )
                                                                       )
This Document Relates to:                       )
                                                                       )
All Cases                                                      )
_____)

**OPPOSITION OF DEFENDANT LIBERTY INDUSTRIES, INC. TO
PLAINTIFFS' STEERING COMMITTEES' JOINT DEPOSITION PROTOCOL**

Defendant, Liberty Industries, Inc., ("Liberty") submits this Opposition to Plaintiffs' Steering Committees' Motion to Establish a Joint Deposition Protocol (Dkt. #876-1). Plaintiffs' Steering Committee's ("PSC") proposed Joint Deposition Protocol ("Deposition Protocol") may have the effect of limiting Liberty's exercise of its right as a party defendant to conduct discovery into matters potentially relevant to its defenses in this case.

Liberty is in a unique position in this action. In the Master Complaint filed on November 5, 2013, it is alleged that Liberty "designed, manufactured, and installed the clean rooms used to compound, mix, prepare and assemble the contaminated products." Complaint, ¶ 4. No other party named in the Master Complaint is alleged to have designed, manufactured or installed the clean rooms. Therefore, there is no other party named as a defendant in the Master Complaint whose interests are aligned with Liberty with respect to the proof of liability on its part, although there admittedly may be a commonality of interest with respect to some issues relating to damages.

Although Liberty currently has elected to participate in mediation and, therefore, has certain protections with respect to discovery, if depositions go forward in this litigation, Liberty

must have the opportunity to participate in those depositions in order to protect its unique interests. Further, for the reasons set forth below, certain provisions of the Deposition Protocol impermissibly infringe upon Liberty's ability to protect its interests. Therefore, Liberty opposes the PSC's Motion and requests that the Court deny that motion as presented.

## FACTUAL BACKGROUND

On February 6, 2014, PSC filed the Joint Deposition Protocol relating to all actions. The proposed Joint Deposition Protocol provides, in relevant part:

II.   GENERAL PROVISIONS

D.   Attendance

1.   *Who May Be Present*.  Unless otherwise ordered under Fed. R. Civ. P. 26 (c), depositions may be attended by counsel of record, members and employees of their firms, members of the Plaintiffs' Steering Committee, attorneys specially engaged by a party for purposes of the deposition, the parties or the representative of a party, court reporters, videographers, the deponent, and counsel for the deponent.  While the deponent is being examined about any material designated Confidential, persons to whom disclosure is not authorized under the Second Amended Protective Order (Dkt. No. 784, or any additional amendments made by the Court thereto, the "Protective Order") shall be excluded from the deposition, except that counsel for any plaintiff or the deponent shall not be so excluded.  Any portion of the deposition transcript containing documents or information subject to the Protective Order entered in this case shall be sealed in accordance with the terms of the Protective Order.

III.  CONDUCT OF DEPOSITIONS

A.   Examination

Except in depositions that have been cross-noticed in actions pending in state court and without reference to the participation of coordinating counsel from the state court litigations, questioning should ordinarily be conducted by no more than two attorneys for all MDL plaintiffs. **Lead Deposition Counsel for plaintiffs may designate at least two attorneys representing personal injury plaintiffs to participate in the questioning during each deposition**.  MDL counsel for Plaintiffs may designate others for specific subject areas.  Counsel for plaintiffs should endeavor to avoid asking the same or substantially the same questions.

2

> **Lead Deposition Counsel for defendants may designate at least two attorneys representing defendants to participate in defending a deposition**. Counsel for defendants should endeavor to avoid asking the same or substantially same questions and lodging the same or substantially the same objections. **Counsel for the Deponent shall "defend" the deposition**. An objection by one party reserves the objection for all parties.

Joint Deposition Protocol at 3. (Emphasis added.)

Specific provisions of the Deposition Protocol to which Liberty objects are as follows:

1. Under II (General Provisions) D. (Attendance): The Deposition Protocol contains certain limits on the disclosure of material designated as confidential. The Deposition Protocol should be clear that attorneys for Liberty and any Liberty representative at the deposition shall have the right to review and examine the witness with respect to such confidential material.

2. III (Conduct of Depositions) A. (Examination): (a) Lead Deposition Counsel for defendants may designate two attorneys to represent defendants in defending a deposition. To the extent that such designation implicitly limits the participation of Liberty's counsel, Liberty objects to it. To the extent that such designation implicitly can be read to allow counsel designated by Lead Deposition Counsel for defendants to participate in the preparation of Liberty witnesses for a deposition, such provision impermissibly impinges upon the attorney-client privilege and Liberty's ability to defend itself; (b) This provision of the Deposition Protocol also contains no provisions concerning how counsel for defendants may question plaintiffs at their depositions. Liberty requests that any Deposition Protocol recognize its right, given its unique position, to question each plaintiff at deposition concerning those matters that are or may be relevant to Liberty's claimed liability and which is not obviated by a given plaintiff's binding responses in either Profile Forms or other discovery responses. Liberty, of course, recognizes that questioning of plaintiffs with respect to matters of defendants' common interests should not be duplicative.

In the alternative to denying the PSC's Motion, Liberty requests that the Deposition Protocol be revised to include provisions ensuring Liberty's right to participate fully in all depositions and to question witnesses with respect to matters that could reasonably lead to discovery of information relevant to Liberty's defenses in the case.

3

**ARGUMENT**

I. **The Plaintiffs' Claims Against Liberty Are Unique**

The claims against Liberty in the Master Complaint (Dkt. #545) differ significantly from the allegations against the other parties involved in this case, particularly the claims against the Clinic Related Defendants. The bulk of the claims in the Master Complaint relate to the distribution, purchase and administration of NECC or Ameridose products by the Clinic Related Defendants. See Master Complaint at ¶¶ 226-271, 296-357. In contrast, the claims against Liberty relate to Liberty's design and construction of Cleanrooms in which NECC and Ameridose products allegedly were compounded. See Master Complaint at ¶¶ 211-217, 272-283). Liberty is not and never was involved in the production, manufacture, distribution, purchase or administration of MPA or any other kind of drug. Plaintiffs did not include Liberty in numerous allegations against other defendants, such as the claims of battery (Count VII), failure to warn (Count VIII), products liability (Count IX), agency (Count X) and civil conspiracy (Count XI). Although some of the causes of action against Liberty are the same as those against other defendants -- such as negligence, wrongful death and loss of consortium -- the facts giving rise to those allegations are materially different and relate solely to Liberty's alleged design and installation of Cleanrooms, not the compounding, preparation and/or administration of contaminated drugs.

Because the claims against Liberty differ from the claims against other defendants, it follows that Liberty's defenses also will differ from those of the other defendants. Liberty and the other defendants, then, do not have mutual interests in this case and one cannot rely on the other to develop their respective liability defenses through the discovery process. As discussed *infra* in Sections II and III, the Joint Deposition Protocol contains language that could be used to

4

limit Liberty's participation in depositions and, in some cases, completely exclude Liberty. To the extent such language could be used by other parties to limit Liberty's participation in depositions, Liberty urges this Court to reject the language in Section III(A) of the Joint Deposition Protocol.

**II.     Liberty Should Not Be Excluded from Participating in Depositions**

Parties are permitted to attend depositions unless the court orders otherwise. Picard v. City of Woonsocket, 2011 WL 3740673, *3 (D.R.I. 2011). Under Fed. R. Civ. P. 26(c)(1)(E), the court, for good cause, may issue an order excluding persons from a deposition to protect a party or person from, *inter alia*, undue burden or expense. Id. The "good cause" standard is flexible and requires the court to balance the individualized interests involved in a case. Id., quoting Gill v. Gulfstream Park Racing Ass'n., Inc., 399 F. 3d 391, 402 (1st Cir. 2005). Absent "compelling or exceptional circumstances," courts are reluctant to exclude parties from depositions, as opposed to non-parties, because of the parties' greater interest in attending depositions. Id., quoting Dade v. Willis, 1998 WL 260270, *1 (E.D. Pa. 1998); see Galella v. Onassis, 487 F. 2d 986, 997 (2nd Cir. 1973) ("[I]t is clear that the court has the power to exclude even a party, although such an exclusion should be ordered rarely indeed."). While, in multidistrict proceedings under 28 U.S.C. § 1407(b), the transferee judge's power extends to pre-trial proceedings, including depositions, In re Neurontin Marketing, Sales Practices, and Products Liability Litigation, 245 F.R.D. 55, 58 (D. Mass. 2007), here Liberty and its counsel should determine whether it will attend and participate in depositions. Allowing Liberty to exercise its right to do so does not open the door to participation of a multitude of additional attorneys, only one.

PSC has not demonstrated why this Court should exercise that power to provide PSC or any other party with the ability to exclude Liberty from depositions. Liberty's attendance at depositions, without more, certainly cannot amount to an undue burden or expense for the plaintiffs or any other interested party. Liberty, on the other hand, would face a great burden if the Court were to adopt the Joint Deposition Protocol in its current form due to the risk that the language in the Joint Deposition Protocol would allow PSC or Lead Deposition Counsel for defendants to prevent Liberty's attorneys from attending depositions and consequently constraining its ability to develop its case.[1] Indeed, Lead Deposition Counsel for defendants has an incentive to exclude Liberty – the claims against Liberty are unique and the other defendants would derive little benefit from Liberty's participation. The non-Liberty defendants have something to gain and Liberty has much to lose if it is excluded. The balance of interests weighs in favor of Liberty and no party can show good cause as to why Liberty should be excluded from any deposition. Liberty urges this Court to prevent any party from using the Joint Deposition Protocol to exclude Liberty from any depositions in this case and to direct PSC to revise the Joint Deposition Protocol to provide for Liberty's right to attend and participate in depositions.

### III.    Liberty Should Not Be Precluded from Questioning Deponents

The Federal Rules of Civil Procedure provide that a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Courts should refrain from actions that "deprive a party of discovery necessary to the preparation of its case." Compagnie Francaise D'Assurance Pour Le Commerce Exterieur v. Phillips Petroleum Company, 105 F.R.D. 16, 44 (S.D.N.Y. 1984), citing Hickman v. Taylor, 329 U.S. 495, 507 (1947).

---

[1] Liberty's participation in plaintiffs' depositions, to the degree not obviated by binding plaintiffs' disclosures, likely would be limited to confirming that no plaintiff had any contact whatsoever with Liberty and has no evidence or information or documents leading to admissible evidence relative to the claims against Liberty.

The language in Section III(A) of the Joint Deposition Protocol provides guidelines for plaintiffs' attorneys to "participate in the questioning during each deposition," but does not provide corresponding guidelines for questioning by defendants' attorneys of plaintiffs, plaintiffs' witnesses or co-defendants.  Instead, it provides only that Lead Deposition Counsel may select certain attorneys for defendants to "participate in defending a deposition" and that "Counsel for the Deponent shall 'defend' the deposition."  This language might allow PSC and/or Liberty's co-defendants to attempt to limit Liberty's role in depositions to "defending" its own witnesses and/or exclude Liberty altogether.  If the Court allows the language of the Joint Deposition Protocol to be employed in this manner, Liberty will be deprived of the ability to prepare its case through participation in depositions.  PSC has not provided any justification for restricting Liberty's access to the discovery process in such a manner because there is no justification.  Liberty requests that the Court reject the Joint Deposition Protocol in its current form in order to prevent other parties in this case from limiting Liberty's access to depositions and/or its ability to question the plaintiffs, plaintiffs' witnesses and co-defendants.

## **CONCLUSION**

In sum, PSC's submitted Joint Deposition Protocol contains language that could be used to limit Liberty's access to depositions and, as a result, its ability to develop its case through the discovery of information potentially relevant to its case.  PSC has not and cannot provide any rational reason for the necessity of such restrictive language that would justify the resulting harm to Liberty in preparing its case.  Accordingly, PSC's Joint Deposition Protocol should be rejected and the Court should direct PSC to revise the Protocol to remove language that could be used to

limit Liberty's access to depositions and to include a provision allowing Liberty to question deponents, including the plaintiff, the plaintiff's witnesses and Liberty's co-defendants.

Respectfully submitted,
LIBERTY INDUSTRIES, INC.,
By its attorney,

Dated: February 20, 2014

*/s/ Peter G. Hermes*
Peter G. Hermes, BBO No. 231840
phermes@hermesnetburn.com
Scott S. Spearing, BBO No. 562080
sspearing@hermesnetburn.com
HERMES NETBURN O'CONNOR
   & SPEARING, P.C.
265 Franklin Street, 7th Floor
Boston, MA 02110
(617) 728-0050 (T)
(617) 728-0052 (F)

## CERTIFICATE OF SERVICE

Pursuant to Local Rules 5.2(b)(2) and 5.4 of the Local Rules of the United States District Court for the District of Massachusetts, I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that paper copies will be sent by first-class mail to those indicated as non-registered participants, if any, on February 20, 2014.

*/s/ Peter G. Hermes*
Peter G. Hermes

G:\DOCS\PGH\clients\Great Am\Liberty Indus\Pleadings\Opposition to PSC Joint Deposition Protocol.docx