# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| IN RE:  NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | ) ) ) ) | MDL No. 2419 Dkt. No. 1:13-md-2419-FDS |
| _____ | ) ) | |
| This Document Relates to: | ) ) ) | |

| | |
|---|---|
| May et al. v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12234-FDS |
| Carman et al. v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12238-FDS |
| Wiley et al. v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12305-FDS |
| Schulz et al. v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12311-FDS |
| Hester et al. v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12315-FDS |
| Davis et al. v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12426-FDS |
| Bequette et al. v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12429-FDS |
| Norwood et al. v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12430-FDS |
| Ziegler et al. v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12588-FDS |
| Martin v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12624-FDS |
| Reed v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12565-FDS |
| Brinton v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12612-FDS |
| Lovelace v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12772-FDS |
| Ragland v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12778-FDS |
| Slatton et al. v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12618-FDS |
| Rybinski v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12818-FDS |
| Lemberg et al. v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12617-FDS |
| Ruhl et al. v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12670-FDS |
| McElwee v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12625-FDS |
| Robnett et al. v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12613-FDS |
| Sharer et al. v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12577-FDS |
| Johnson et al. v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12621-FDS |
| Knight v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12563-FDS |
| Knihtila v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12576-FDS |
| Sellers et al. v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12620-FDS |
| Barger et al. v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12619-FDS |
| Lodowski et al. v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12572-FDS |
| Skelton et al. v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12575-FDS |
| Chambers et al. v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12591-FDS |
| Hill et al. v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12622-FDS |
| Mathias v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12574-FDS |
| Settle et al. v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12569-FDS |
| Miller v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12570-FDS |
| Noble et al. v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12606-FDS |
| Eggleston et al. v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12589-FDS |
| Meeker et al. v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12616-FDS |

| | | |
|---|---|---|
| Scott et al. v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12578-FDS |
| McCulloch et al. v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12610-FDS |
| McKee et al. v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12779-FDS |
| Kirby v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12592-FDS |
| Richards v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12603-FDS |
| Youree et al. v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12566-FDS |
| Koonce et al. v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12590-FDS |
| Pelters et al. v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12780-FDS |
| Besaw et al. v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12604-FDS |
| Ferguson et al. v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12571-FDS |
| Hurt et al. v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12605-FDS |
| Wanta et al. v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12623-FDS |
| Russell et al. v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12794-FDS |
| Pruitt et al. v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12573-FDS |
| Young v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12594-FDS |
| Sullivan et al. v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12781-FDS |
| Barnard v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12738-FDS |
| Berry v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12838-FDS |
| Alexander v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12428-FDS |
| Bland v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-11881-FDS |
| Brock v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12731-FDS |
| Bryant v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12668-FDS |
| Burns v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12697-FDS |
| Demps v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12840-FDS |
| Denson v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12729-FDS |
| Deol v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12841-FDS |
| Devine v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12667-FDS |
| Gobble v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12480-FDS |
| Higdon v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12718-FDS |
| Kirkwood v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12431-FDS |
| McKinney v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12692-FDS |
| Minor v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12836-FDS |
| Garland v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12736-FDS |
| Neely v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12842-FDS |
| O'Brien v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12759-FDS |
| Osborne v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12739-FDS |
| Parman v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12433-FDS |
| Peay v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12843-FDS |
| Pellicone v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12916-FDS |
| Pierce v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12733-FDS |
| Redkevitch v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12666-FDS |
| Siler v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12489-FDS |
| Temple v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12696-FDS |
| Adamson v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12734-FDS |
| Williams v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12434-FDS |
| Wray v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12737-FDS |

| Judd v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-13120-FDS |
|---|---|---|
| Patel v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12061-FDS |

### SAINT THOMAS OUTPATIENT NEUROSURGICAL CENTER, LLC, HOWELL ALLEN CLINIC, A PROFESSIONAL CORPORATION, JOHN W. CULCLASURE, M.D., AND DEBRA V. SCHAMBERG, R.N.'S RESPONSES TO THE PLAINTIFFS' STEERING COMMITTEE'S FIRST SET OF REQUESTS FOR ADMISSIONS AND CORRESPONDING INTERROGATORY

Pursuant to Rules 26, 33, and 36 of the Federal Rules of Civil Procedure and the Local Rules for the District of Massachusetts, Saint Thomas Outpatient Neurosurgical Center, LLC ("STOPNC"), Howell Allen Clinic, a Professional Corporation ("Howell Allen"), John W. Culclasure, M.D. ("Dr. Culclasure"), and Debra V. Schamberg, R.N. ("Ms. Schamberg") (collectively, "these Defendants") provide the following responses to the Plaintiffs' Steering Committee's First Set of Requests for Admissions and Corresponding Interrogatory.

### GENERAL OBJECTION

At the status conference on December 13, 2013, the Court took under advisement these Defendants' Motion to Stay Discovery Pending Entry of a Discovery Plan.[1][2] The Court directed that certain matters related to discovery would be referred to Magistrate Judge Boal, including the establishment of a discovery plan. On December 23, 2013, the Court entered various orders, including referring to Judge Boal issues related to the entry of protective orders to be utilized during the discovery process.[3] The Court has not ruled upon the Defendants' Motion to Stay Discovery Pending Entry of a Discovery Plan. At the status conference, the Court suggested that the parties not file motions for protective order or motions to compel while entry of a discovery plan is considered. Out of an abundance of caution, these Defendants serve the below responses to the pending requests for admission, to the extent they do not fall within the Court's directive.

---

[1] Dkt. 594, 598.
[2] This is, in essence, a motion for protective order pursuant to FRCP 26(c).
[3] Dkt. 722.

## INTERROGATORY

1.      If your response to any of the following Requests for Admission is other than an unqualified admission, for each such Request for Admission state all facts (not opinions) that you contend support in any manner your refusal to admit or your qualification of your admission, identify all documents, notes, reports, memoranda, electronic and/or tape recordings, photographs, oral statements, or any other tangible or intangible thing that supports in any manner your refusal to admit or your qualification of your admission, the name and address of the custodian of all tangible things identified above, and the name and address of all persons, including consultants and experts, purporting to have knowledge or factual data upon which you base your refusal to admit or the qualification of your admission.

RESPONSE:

**Objection. This Interrogatory is overbroad, unduly burdensome, seeks the disclosure of expert opinions before the Court has set a schedule for such disclosures, seeks information that is irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, and seeks information that is privileged from discovery by attorney-client privilege, the work-product doctrine, and the Tennessee Peer Review Law of 1967, Tenn. Code Ann. § 63-6-219 and/or the Tennessee Patient Safety and Quality Improvement Act of 2011, Tenn. Code Ann. §§ 63-1-150, 68-11-272.**

**Subject to and without waiving said objections, in response to this Interrogatory, these Defendants have incorporated into any denials or qualifications of these Requests for Admissions the basis or reason for the denial or qualification. Where the Response does not directly refer to non-privileged documents relied upon in making the denial or qualification, the Response provides a citation to the relevant supporting documentation.**

## REQUESTS FOR ADMISSIONS

1.      Admit that in 2002, the CDC published a report regarding at least two cases of fungal meningitis arising from contaminated medication used in epidural injections. The report stated that "purchasers of pharmaceuticals should determine if supplies are provided from a compounding pharmacy that . . . follows appropriate measures to ensure that injectable products are free of contamination."   A copy of that published report is attached as Exhibit 1.

RESPONSE:

**These Defendants admit that the United States Centers for Disease Control ("CDC") published a report regarding at least two cases of fungal meningitis arising from contaminated medication used in epidural injections in 2002 and that the "Editorial Note" section states that "[p]urchasers of pharmaceuticals should determine if supplies are provided from a compounding pharmacy that is licensed in their state and that follows appropriate measures to ensure that injectable products are free of contamination." These Defendants deny that this is the entirety of the publication. These Defendants object, under Federal Rule of Evidence 106, to the admission of this limited excerpt from the CDC publication. These Defendants admit that Exhibit 1 appears to be a true and correct copy of the report referenced in Request for Admission #1.**

2.      Admit that Exhibit 1 is "a record or statement of a public office" as that term is used in Federal Rule of Evidence 803(8).

RESPONSE:

**Denied. The article is not written by governmental employees. Roughly half of the authors are private and public university professors, physicians, and researchers. The presumption of trustworthiness, which is the basis for the public records exception to the hearsay rule, does not apply to documents created wholly or in part by non-governmental employees, and Rule 803(8) is not a means to admit otherwise inadmissible hearsay statements of non-governmental employees. *See Toole v. McClintock*, 999 F.2d 1430, 1435 (11th Cir. 1993).**

3.     Admit that Exhibit 1 sets out "factual findings from a legally authorized investigation" as that term is used in Federal Rule of Evidence 803(8).

RESPONSE:

**Denied. The article is not written by governmental employees. Roughly half of the authors are private and public university professors, physicians, and researchers. The presumption of trustworthiness, which is the basis for the public records exception to the hearsay rule, does not apply to documents created wholly or in part by non-governmental employees, and Rule 803(8) is not a means to admit otherwise inadmissible hearsay statements of non-governmental employees.** *See Toole v. McClintock***, 999 F.2d 1430, 1435 (11th Cir. 1993).**

4.     Admit that Exhibit 1's source of information does not "indicate a lack of trustworthiness" as that term is used in Federal Rule of Evidence 803(8).

RESPONSE:

**Denied. The article is not written by governmental employees. Roughly half of the authors are private and public university professors, physicians, and researchers. The presumption of trustworthiness, which is the basis for the public records exception to the hearsay rule, does not apply to documents created wholly or in part by non-governmental employees, and Rule 803(8) is not a means to admit otherwise inadmissible hearsay statements of non-governmental employees.** *See Toole v. McClintock***, 999 F.2d 1430, 1435 (11th Cir. 1993).**

5.     Admit that, as to Exhibit 1, no other circumstance "indicate[s] a lack of trustworthiness" as that term is used in Federal Rule of Evidence 803(8).

RESPONSE:

**Denied. The article is not written by governmental employees. Roughly half of the authors are private and public university professors, physicians, and researchers. The presumption of trustworthiness, which is the basis for the public records exception to the hearsay rule, does not apply to documents created wholly or in part by non-governmental employees, and Rule 803(8) is not a means to admit otherwise inadmissible hearsay statements of non-governmental employees.** *See Toole v. McClintock***, 999 F.2d 1430, 1435 (11th Cir. 1993).**

6.      Admit that on March 24, 2005, USA Today published a front page article with the following headline:  **"Safety concerns grow over pharmacy-mixed drugs."** A true and correct copy of the text from that article is attached as <u>Exhibit 2</u>.

RESPONSE:

**These Defendants admit that USA Today published an article titled "Safety concerns grow over pharmacy-mixed drugs." These Defendants insist that Federal Rule of Evidence 106 requires that the recipient of this Response also be informed that article also notes that (1) "regulators have long allowed [compounding] because 'the vast majority of pharmacies . . . provide a valuable medical service,'" (2) "proponents say compounding pharmacies overall are safe," (3) "several states are tightening their rules overseeing firms that compound drugs," and (4) "the FDA has stepped in when it decides a pharmacy has crossed the line and become a drug manufacturer." Based on information known or readily attainable, and after making reasonable inquiry, these Defendants lack sufficient information to admit or deny that the article was a front page story. These Defendants admit that Exhibit 2 appears to be a true and correct copy of the article referenced in Request for Admission #6.**

7

7.    Admit that in 2006, the FDA conducted a survey of compounded drug products. They collected thirty-six samples from compounding pharmacies across the United States during unannounced visits. Twelve of the 36 samples (33%) failed analytical testing. The FDA survey stated "poor quality compounded drugs are a serious public health concern, as improperly compounded products have been linked to grave adverse events, including deaths."  A true and correct copy of the FDA's report titled *2006 Limited FDA Survey of Compounded Drug Products* is attached as <u>Exhibit 3</u>.

RESPONSE:

**These Defendants admit that the FDA reported conducting a survey of compounded drug products in 2006. These Defendants admit that the study reported that the FDA collected 73 finished drug products from compounding pharmacies across the country during unannounced visits, but the FDA excluded 37 of the samples from the study because they were deemed unusable for various reasons. These Defendants admit that the study reported that, of the 36 samples tested, 12 (33%) failed analytic testing, but note under Federal Rule of Evidence 106, that "[m]ost of the products that failed analysis did so due to sub or super-potency . . . or a lack of uniformity of individual dosage units." These Defendants affirmatively state that the FDA did not test for sterility and that the study indicates that "[t]he majority of the finished compounded product samples analyzed in th[e] survey were hormone therapy products." The article also states that the "FDA has long recognized that traditional pharmacy compounding serves an important public health function." These Defendants admit that Exhibit 3 appears to be a true and correct copy of the report titled *2006 Limited FDA Survey of Compounded Drug Products*.**

8.    Admit that Exhibit 3 is "a record or statement of a public office" as that term is used in Federal Rule of Evidence 803(8).

RESPONSE:

**Denied in part. The article draws conclusions regarding sterility and contamination from articles in medical journals that were written by non-governmental employees. The presumption of trustworthiness, which is the basis for the public records exception to the hearsay rule, does not apply to documents created wholly or in part by non-governmental employees and is not a means to admit otherwise inadmissible hearsay medical journal articles. *See Toole v. McClintock*, 999 F.2d 1430, 1435 (11th Cir. 1993). References to issues with contamination and sterility are inferred and cited from inadmissible medical journal articles, which do not meet the public records exception of Federal Rule of Evidence 803(8). To the extent that the survey does not rely upon or draw conclusions from medical journal articles, it meets the hearsay exception codified at Federal Rule of Evidence 803(8).**

9.      Admit that Exhibit 3 sets out "factual findings from a legally authorized investigation" as that term is used in Federal Rule of Evidence 803(8).

RESPONSE:

**Denied in part. The article draws conclusions regarding sterility and contamination from articles in medical journals that were written by non-governmental employees. The presumption of trustworthiness, which is the basis for the public records exception to the hearsay rule, does not apply to documents created wholly or in part by non-governmental employees and is not a means to admit otherwise inadmissible hearsay medical journal articles. *See Toole v. McClintock,* 999 F.2d 1430, 1435 (11th Cir. 1993). References to issues with contamination and sterility are inferred and cited from inadmissible medical journal articles, which do not meet the public records exception of Federal Rule of Evidence 803(8). To the extent that the survey does not rely upon or draw conclusions from medical journal articles, it meets the hearsay exception codified at Federal Rule of Evidence 803(8).**

10.      Admit that Exhibit 3's source of information does not "indicate a lack of trustworthiness" as that term is used in Federal Rule of Evidence 803(8).

RESPONSE:

**Denied in part. The article draws conclusions regarding sterility and contamination from articles in medical journals that were written by non-governmental employees. The presumption of trustworthiness, which is the basis for the public records exception to the hearsay rule, does not apply to documents created wholly or in part by non-governmental employees and is not a means to admit otherwise inadmissible hearsay medical journal articles. *See Toole v. McClintock,* 999 F.2d 1430, 1435 (11th Cir. 1993). References to issues with contamination and sterility are inferred and cited from inadmissible medical journal articles, which do not meet the public records exception of Federal Rule of Evidence 803(8). To the extent that the survey does not rely upon, cite, or draw conclusions from medical journal articles, it meets the hearsay exception codified at Federal Rule of Evidence 803(8).**

11.    Admit that, as to Exhibit 3, no other circumstance "indicate[s] a lack of trustworthiness" as that term is used in Federal Rule of Evidence 803(8).

RESPONSE:

**Denied in part. The article draws conclusions regarding sterility and contamination from articles in medical journals that were written by non-governmental employees. The presumption of trustworthiness, which is the basis for the public records exception to the hearsay rule, does not apply to documents created wholly or in part by non-governmental employees and is not a means to admit otherwise inadmissible hearsay medical journal articles.** *See Toole v. McClintock*, **999 F.2d 1430, 1435 (11th Cir. 1993). References to issues with contamination and sterility are inferred and cited from inadmissible medical journal articles, which do not meet the public records exception of Federal Rule of Evidence 803(8). To the extent that the survey does not rely upon or draw conclusions from medical journal articles, it meets the hearsay exception codified at Federal Rule of Evidence 803(8).**

12.    In May 2007, the FDA published an article titled "The Special Risks of Pharmacy Compounding."  A true and correct copy of that article is attached as <u>Exhibit 4</u>.

RESPONSE:

**These Defendants admit that the FDA published an article titled "The Special Risks of Pharmacy Compounding" in May 2007. These Defendants admit that Exhibit 4 appears to be a true and correct copy of the report referenced in Request for Admission #12.**

13.     Admit that Exhibit 4 is "a record or statement of a public office" as that term is used in Federal Rule of Evidence 803(8).

RESPONSE:

**Denied. The article is not (1) drafted pursuant to a legally authorized investigation, (2) a final agency action, or (3) a binding document upon the FDA. *Genendo Pharmaceutical NV v. Thompson*, 308 F. Supp. 2d 881 (N.D. Ill. 2003) ("Statements of lower-level agency officials likewise do not rise to the level of final agency action-even when they are contained in warning letters or other official regulatory correspondence."); 21 C.F.R. § 10.85(k) ("[a] statement or advice given by an FDA employee. . . is an informal communication that represents the best judgment of that employee at that time but does not constitute an advisory opinion, does not necessarily represent the formal position of FDA, and does not bind or otherwise obligate or commit the agency to the views expressed."); *Schering-Plough Healthcare v. Schwarz Pharma*, 547 F. Supp. 2d 939 (E.D. Wis. 2008); *see, e.g., Western Ill. Home Health Care v. Herman*, 150 F.3d 659, 662 (7th Cir. 1998); *Schering Corp. v. Heckler*, 779 F.2d 683, 686 n. 18 (D.C. Cir. 1985); *Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1378 (9th Cir. 1983); *Clinical Reference Laboratory, Inc. v. Sullivan*, 791 F. Supp. 1499, 1503-04 (D. Kan. 1992).**

14.     Admit that Exhibit 4 sets out "factual findings from a legally authorized investigation" as that term is used in Federal Rule of Evidence 803(8).

RESPONSE:

**Denied. The article is not (1) drafted pursuant to a legally authorized investigation, (2) a final agency action, or (3) a binding document upon the FDA. *Genendo Pharmaceutical NV v. Thompson*, 308 F. Supp. 2d 881 (N.D. Ill. 2003) ("Statements of lower-level agency officials likewise do not rise to the level of final agency action-even when they are contained in warning letters or other official regulatory correspondence."); 21 C.F.R. § 10.85(k) ("[a] statement or advice given by an FDA employee. . . is an informal communication that represents the best judgment of that employee at that time but does not constitute an advisory opinion, does not necessarily represent the formal position of FDA, and does not bind or otherwise obligate or commit the agency to the views expressed."); *Schering-Plough Healthcare v. Schwarz Pharma*, 547 F. Supp. 2d 939 (E.D. Wis. 2008); *see, e.g., Western Ill. Home Health Care v. Herman*, 150 F.3d 659, 662 (7th Cir. 1998); *Schering Corp. v. Heckler*, 779 F.2d 683, 686 n. 18 (D.C. Cir. 1985); *Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1378 (9th Cir. 1983); *Clinical Reference Laboratory, Inc. v. Sullivan*, 791 F. Supp. 1499, 1503-04 (D. Kan. 1992).**

15.    Admit that Exhibit 4's source of information does not "indicate a lack of trustworthiness" as that term is used in Federal Rule of Evidence 803(8).

RESPONSE:

**Denied. The article is not (1) drafted pursuant to a legally authorized investigation, (2) a final agency action, or (3) a binding document upon the FDA. *Genendo Pharmaceutical NV v. Thompson*, 308 F. Supp. 2d 881 (N.D. Ill. 2003) ("Statements of lower-level agency officials likewise do not rise to the level of final agency action-even when they are contained in warning letters or other official regulatory correspondence."); 21 C.F.R. § 10.85(k) ("[a] statement or advice given by an FDA employee. . . is an informal communication that represents the best judgment of that employee at that time but does not constitute an advisory opinion, does not necessarily represent the formal position of FDA, and does not bind or otherwise obligate or commit the agency to the views expressed."); *Schering-Plough Healthcare v. Schwarz Pharma*, 547 F. Supp. 2d 939 (E.D. Wis. 2008); *see, e.g., Western Ill. Home Health Care v. Herman,* 150 F.3d 659, 662 (7th Cir. 1998); *Schering Corp. v. Heckler,* 779 F.2d 683, 686 n. 18 (D.C. Cir. 1985); *Biotics Research Corp. v. Heckler,* 710 F.2d 1375, 1378 (9th Cir. 1983); *Clinical Reference Laboratory, Inc. v. Sullivan,* 791 F. Supp. 1499, 1503-04 (D. Kan. 1992).**

16.    Admit that, as to Exhibit 4, no other circumstance "indicate[s] a lack of trustworthiness" as that term is used in Federal Rule of Evidence 803(8).

RESPONSE:

**Denied. The article is not (1) drafted pursuant to a legally authorized investigation, (2) a final agency action, or (3) a binding document upon the FDA. *Genendo Pharmaceutical NV v. Thompson*, 308 F. Supp. 2d 881 (N.D. Ill. 2003) ("Statements of lower-level agency officials likewise do not rise to the level of final agency action-even when they are contained in warning letters or other official regulatory correspondence."); 21 C.F.R. § 10.85(k) ("[a] statement or advice given by an FDA employee. . . is an informal communication that represents the best judgment of that employee at that time but does not constitute an advisory opinion, does not necessarily represent the formal position of FDA, and does not bind or otherwise obligate or commit the agency to the views expressed."); *Schering-Plough Healthcare v. Schwarz Pharma*, 547 F. Supp. 2d 939 (E.D. Wis. 2008); *see, e.g., Western Ill. Home Health Care v. Herman,* 150 F.3d 659, 662 (7th Cir. 1998); *Schering Corp. v. Heckler,* 779 F.2d 683, 686 n. 18 (D.C. Cir. 1985); *Biotics Research Corp. v. Heckler,* 710 F.2d 1375, 1378 (9th Cir. 1983); *Clinical Reference Laboratory, Inc. v. Sullivan,* 791 F. Supp. 1499, 1503-04 (D. Kan. 1992).**

17.    Admit that in 2010, the FDA posted an educational video on YouTube regarding compounded drugs. That educational video is found on the World Wide Web at http://www.youtube.com/watch?v=kif_rmtIQb0.

RESPONSE:

**These Defendants admit that the FDA posted an educational video on YouTube in 2010 regarding concerns over the quality of compounded drugs.**

18.    Admit    that    on    November    5,    2010,    the    American    Society    of Anesthesiologists, the American Society of Health-System Pharmacists ("ASHP") and other medical societies published a joint report regarding drug shortages. That report included an article written by the ASHP stating as follows:

Compounding pharmacies have also pursued the production of drugs that are in short supply. Caution is warranted because preparations from these pharmacies may not meet applicable state or federal standards (*e.g.*, United States Pharmacopeia chapter 797 or FDA labeling requirements). The sources of raw materials used by compounding pharmacies have been questioned, and apparent lapses in quality control have resulted in serious patient injury, including death.

. . .

Compounding pharmacies may also present patient risks; several deaths have been associated with improperly sterilized compounded products.

An excerpt from that joint report is attached as Exhibit 5.

RESPONSE:

**These Defendants admit that the American Society of Anesthesiologists, the American Society of Health-System Pharmacists ("ASHP"), and other medical societies published a joint report regarding drug shortages, and that the report included an article written by the ASHP with the quote included in Request for Admission #18. These Defendants deny this is the entire report or that it applies to them.**

**These Defendants admit that Exhibit 5 is a nine (9) page excerpt from the 52 page report. These Defendants object to introduction of excerpts from a nine (9) page document embedded in a 52 page report pursuant to Federal Rule of Evidence 106. These Defendants deny that the report was published on November 5, 2010. The report was created for a Drug Shortages Summit that occurred on November 5, 2010, but the report was not published until on or about January 10, 2011.[4]**

_____
[4]    http://www.asahq.org/For-Members/Advocacy/Washington-Alerts/Drug-Shortages-Summit-Summary-Released.aspx.

20. Admit that Exhibit 6 is "a record or statement of a public office" as that term is used in Federal Rule of Evidence 803(8).

RESPONSE:

**Denied. The article is not written by governmental employees. At least three of the authors are non-governmental healthcare providers. The presumption of trustworthiness, which is the basis for the public records exception to the hearsay rule, does not apply to documents created wholly or in part by non-governmental employees, and Rule 803(8) is not a means to admit otherwise inadmissible hearsay statements of non-governmental employees. *See Toole v. McClintock*, 999 F.2d 1430, 1435 (11th Cir. 1993).**

**Additionally, the article is not (1) a final agency action or (2) a binding document upon the CDC. *Genendo Pharmaceutical NV v. Thompson*, 308 F. Supp. 2d 881 (N.D. Ill. 2003) ("Statements of lower-level agency officials likewise do not rise to the level of final agency action-even when they are contained in warning letters or other official regulatory correspondence."); *Schering-Plough Healthcare v. Schwarz Pharma*, 547 F. Supp. 2d 939 (E.D. Wis. 2008); *see, e.g., Western Ill. Home Health Care v. Herman*, 150 F.3d 659, 662 (7th Cir. 1998); *Schering Corp. v. Heckler*, 779 F.2d 683, 686 n. 18 (D.C. Cir. 1985); *Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1378 (9th Cir. 1983); *Clinical Reference Laboratory, Inc. v. Sullivan*, 791 F. Supp. 1499, 1503-04 (D. Kan. 1992).**

21.    Admit that Exhibit 6 sets out "factual findings from a legally authorized investigation" as that term is used in Federal Rule of Evidence 803(8).

RESPONSE:

**Denied. The article is not written by governmental employees. At least three of the authors are non-governmental healthcare providers. The presumption of trustworthiness, which is the basis for the public records exception to the hearsay rule, does not apply to documents created wholly or in part by non-governmental employees, and Rule 803(8) is not a means to admit otherwise inadmissible hearsay statements of non-governmental employees. *See Toole v. McClintock*, 999 F.2d 1430, 1435 (11th Cir. 1993).**

**Additionally, the article is not (1) a final agency action or (2) a binding document upon the CDC. *Genendo Pharmaceutical NV v. Thompson*, 308 F. Supp. 2d 881 (N.D. Ill. 2003) ("Statements of lower-level agency officials likewise do not rise to the level of final agency action-even when they are contained in warning letters or other official regulatory correspondence."); *Schering-Plough Healthcare v. Schwarz Pharma*, 547 F. Supp. 2d 939 (E.D. Wis. 2008); *see, e.g., Western Ill. Home Health Care v. Herman*, 150 F.3d 659, 662 (7th Cir. 1998); *Schering Corp. v. Heckler*, 779 F.2d 683, 686 n. 18 (D.C. Cir. 1985); *Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1378 (9th Cir. 1983); *Clinical Reference Laboratory, Inc. v. Sullivan*, 791 F. Supp. 1499, 1503-04 (D. Kan. 1992).**

22.    Admit that Exhibit 6's source of information does not "indicate a lack of trustworthiness" as that term is used in Federal Rule of Evidence 803(8).

RESPONSE:

**Denied. The article is not written by governmental employees. At least three of the authors are non-governmental healthcare providers. The presumption of trustworthiness, which is the basis for the public records exception to the hearsay rule, does not apply to documents created wholly or in part by non-governmental employees, and Rule 803(8) is not a means to admit otherwise inadmissible hearsay statements of non-governmental employees. See Toole v. McClintock, 999 F.2d 1430, 1435 (11th Cir. 1993).**

**Additionally, the article is not (1) a final agency action or (2) a binding document upon the CDC. Genendo Pharmaceutical NV v. Thompson, 308 F. Supp. 2d 881 (N.D. Ill. 2003) ("Statements of lower-level agency officials likewise do not rise to the level of final agency action-even when they are contained in warning letters or other official regulatory correspondence."); Schering-Plough Healthcare v. Schwarz Pharma, 547 F. Supp. 2d 939 (E.D. Wis. 2008); see, e.g., Western Ill. Home Health Care v. Herman, 150 F.3d 659, 662 (7th Cir. 1998); Schering Corp. v. Heckler, 779 F.2d 683, 686 n. 18 (D.C. Cir. 1985); Biotics Research Corp. v. Heckler, 710 F.2d 1375, 1378 (9th Cir. 1983); Clinical Reference Laboratory, Inc. v. Sullivan, 791 F. Supp. 1499, 1503-04 (D. Kan. 1992).**

23.   Admit that, as to Exhibit 6, no other circumstance "indicate[s] a lack of trustworthiness" as that term is used in Federal Rule of Evidence 803(8).

RESPONSE:

**Denied. The article is not written by governmental employees. At least three of the authors are non-governmental healthcare providers. The presumption of trustworthiness, which is the basis for the public records exception to the hearsay rule, does not apply to documents created wholly or in part by non-governmental employees, and Rule 803(8) is not a means to admit otherwise inadmissible hearsay statements of non-governmental employees.** *See Toole v. McClintock***, 999 F.2d 1430, 1435 (11th Cir. 1993).**

**Additionally, the article is not (1) a final agency action or (2) a binding document upon the CDC.** *Genendo Pharmaceutical NV v. Thompson***, 308 F. Supp. 2d 881 (N.D. Ill. 2003) ("Statements of lower-level agency officials likewise do not rise to the level of final agency action-even when they are contained in warning letters or other official regulatory correspondence.");** *Schering-Plough Healthcare v. Schwarz Pharma***, 547 F. Supp. 2d 939 (E.D. Wis. 2008);** *see, e.g., Western Ill. Home Health Care v. Herman,* **150 F.3d 659, 662 (7th Cir. 1998);** *Schering Corp. v. Heckler,* **779 F.2d 683, 686 n. 18 (D.C. Cir. 1985);** *Biotics Research Corp. v. Heckler,* **710 F.2d 1375, 1378 (9th Cir. 1983);** *Clinical Reference Laboratory, Inc. v. Sullivan,* **791 F. Supp. 1499, 1503-04 (D. Kan. 1992).**

24.   Admit that in 2010, the American Society of Health System Pharmacists published the "ASHP Guidelines on Outsourcing Sterile Compounding Services." A true and correct copy of that publication is attached as Exhibit 7.

RESPONSE:

**These Defendants admit that Exhibit 7 appears to be a true and correct copy of the guidelines referenced in Request to Admit #24 but deny that the guidelines apply to them. The guidelines were developed to assist health care organizations in deciding whether to outsource sterile pharmacy compounding performed within a hospital.**

25.    Admit that the American Society of Health System Pharmacists developed a "Contractor Assessment Tool" for healthcare organizations to use in conjunction with assessing compounding pharmacies. A true and correct copy of that assessment tool is attached as Exhibit 8.

RESPONSE:

**Denied. The "Outsourcing Sterile Products Preparation: Contractor Assessment Tool" was developed by the ASHP Foundation and PharMEDium Services, LLC for health-system pharmacy departments that choose to outsource the preparation of sterile parenteral medications.[5] Based on information known or readily attainable, and after making reasonable inquiry, these Defendants lack sufficient information to admit or deny that the "Contractor Assessment Tool" was developed for use "in conjunction with assessing compounding pharmacies." These Defendants admit that Exhibit 8 appears to be a true and correct copy of the document referenced in Request for Admission # 25 but deny that it applies to them.**

26. – 128.

RESPONSE:

**These Defendants object to Requests for Admissions #'s 26 through 128 as they exceed the maximum number of requests for admissions permissible under Local Rule 26.1(c), absent a Court order.**

---

[5] http://www.ashpfoundation.org/sterileproductstool

Respectfully submitted,

**GIDEON, COOPER & ESSARY, PLC**

*C𝒥T with permission MHC*

**C.J. Gideon, Jr., #6034**
**Chris J. Tardio, #23924**
**Matthew H. Cline, #31076**
**John-Mark Zini, #31769**
Suite 1100
315 Deaderick Street
Nashville, TN 37238
(615) 254-0400

*Attorneys for STOPNC, John W.*
*Culclasure, M.D., Debra Schamberg,*
*R.N., and Howell Allen.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of December, 2013, a true and accurate

copy of the foregoing was served upon the following via the methods indicated below:

**_Via Hand Delivery_**
J. Gerard Stranch, IV
BRANSTETTER, STRANCH & JENNINGS, PLLC
227 Second Avenue North
Nashville, TN  37201

*Representative of the Plaintiffs' Steering*
*Committee*

**_Via U.S. Mail_**
Marcy H. Greer
Yvonne K. Puig
Eric J. Hoffman
FULBRIGHT & JAWORSKI, LLP
98 San Jacinto Blvd., Suite 1100
Austin, TX 78701

*Attorneys for the Saint Thomas Entities*

*C𝒥T with permission MHC*

**Chris J. Tardio**

20

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN RE:  NEW ENGLAND               )
COMPOUNDING PHARMACY, INC.        )   MDL No. 2419
PRODUCTS LIABILITY LITIGATION     )   Dkt. No. 1:13-md-2419-FDS
                                  )
_____   )
                                  )
This Document Relates to:         )
                                  )

| | |
|---|---|
| May et al. v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12234-FDS |
| Carman et al. v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12238-FDS |
| Wiley et al. v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12305-FDS |
| Schulz et al. v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12311-FDS |
| Hester et al. v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12315-FDS |
| Davis et al. v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12426-FDS |
| Bequette et al. v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12429-FDS |
| Norwood et al. v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12430-FDS |
| Ziegler et al. v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12588-FDS |
| Martin v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12624-FDS |
| Reed v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12565-FDS |
| Brinton v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12612-FDS |
| Lovelace v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12772-FDS |
| Ragland v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12778-FDS |
| Slatton et al. v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12618-FDS |
| Rybinski v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12818-FDS |
| Lemberg et al. v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12617-FDS |
| Ruhl et al. v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12670-FDS |
| McElwee v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12625-FDS |
| Robnett et al. v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12613-FDS |
| Sharer et al. v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12577-FDS |
| Johnson et al. v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12621-FDS |
| Knight v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12563-FDS |
| Knihtila v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12576-FDS |
| Sellers et al. v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12620-FDS |
| Barger et al. v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12619-FDS |
| Lodowski et al. v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12572-FDS |
| Skelton et al. v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12575-FDS |
| Chambers et al. v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12591-FDS |
| Hill et al. v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12622-FDS |
| Mathias v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12574-FDS |
| Settle et al. v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12569-FDS |
| Miller v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12570-FDS |
| Noble et al. v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12606-FDS |
| Eggleston et al. v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12589-FDS |
| Meeker et al. v. Ameridose, LLC et al. | Dkt. No. 1:13-cv-12616-FDS |

Collective Exhibit 1                                                        Ex. 1-B

| | |
|---|---|
| Scott et al. v. Ameridose, LLC et al. | ) Dkt. No. 1:13-cv-12578-FDS |
| McCulloch et al. v. Ameridose, LLC et al. | ) Dkt. No. 1:13-cv-12610-FDS |
| McKee et al. v. Ameridose, LLC et al. | ) Dkt. No. 1:13-cv-12779-FDS |
| Kirby v. Ameridose, LLC et al. | ) Dkt. No. 1:13-cv-12592-FDS |
| Richards v. Ameridose, LLC et al. | ) Dkt. No. 1:13-cv-12603-FDS |
| Youree et al. v. Ameridose, LLC et al. | ) Dkt. No. 1:13-cv-12566-FDS |
| Koonce et al. v. Ameridose, LLC et al. | ) Dkt. No. 1:13-cv-12590-FDS |
| Pelters et al. v. Ameridose, LLC et al. | ) Dkt. No. 1:13-cv-12780-FDS |
| Besaw et al. v. Ameridose, LLC et al. | ) Dkt. No. 1:13-cv-12604-FDS |
| Ferguson et al. v. Ameridose, LLC et al. | ) Dkt. No. 1:13-cv-12571-FDS |
| Hurt et al. v. Ameridose, LLC et al. | ) Dkt. No. 1:13-cv-12605-FDS |
| Wanta et al. v. Ameridose, LLC et al. | ) Dkt. No. 1:13-cv-12623-FDS |
| Russell et al. v. Ameridose, LLC et al. | ) Dkt. No. 1:13-cv-12794-FDS |
| Pruitt et al. v. Ameridose, LLC et al. | ) Dkt. No. 1:13-cv-12573-FDS |
| Young v. Ameridose, LLC et al. | ) Dkt. No. 1:13-cv-12594-FDS |
| Sullivan et al. v. Ameridose, LLC et al. | ) Dkt. No. 1:13-cv-12781-FDS |
| Barnard v. Ameridose, LLC et al. | ) Dkt. No. 1:13-cv-12738-FDS |
| Berry v. Ameridose, LLC et al. | ) Dkt. No. 1:13-cv-12838-FDS |
| Alexander v. Ameridose, LLC et al. | ) Dkt. No. 1:13-cv-12428-FDS |
| Bland v. Ameridose, LLC et al. | ) Dkt. No. 1:13-cv-11881-FDS |
| Brock v. Ameridose, LLC et al. | ) Dkt. No. 1:13-cv-12731-FDS |
| Bryant v. Ameridose, LLC et al. | ) Dkt. No. 1:13-cv-12668-FDS |
| Burns v. Ameridose, LLC et al. | ) Dkt. No. 1:13-cv-12697-FDS |
| Demps v. Ameridose, LLC et al. | ) Dkt. No. 1:13-cv-12840-FDS |
| Denson v. Ameridose, LLC et al. | ) Dkt. No. 1:13-cv-12729-FDS |
| Deol v. Ameridose, LLC et al. | ) Dkt. No. 1:13-cv-12841-FDS |
| Devine v. Ameridose, LLC et al. | ) Dkt. No. 1:13-cv-12667-FDS |
| Gobble v. Ameridose, LLC et al. | ) Dkt. No. 1:13-cv-12480-FDS |
| Higdon v. Ameridose, LLC et al. | ) Dkt. No. 1:13-cv-12718-FDS |
| Kirkwood v. Ameridose, LLC et al. | ) Dkt. No. 1:13-cv-12431-FDS |
| McKinney v. Ameridose, LLC et al. | ) Dkt. No. 1:13-cv-12692-FDS |
| Minor v. Ameridose, LLC et al. | ) Dkt. No. 1:13-cv-12836-FDS |
| Garland v. Ameridose, LLC et al. | ) Dkt. No. 1:13-cv-12736-FDS |
| Neely v. Ameridose, LLC et al. | ) Dkt. No. 1:13-cv-12842-FDS |
| O'Brien v. Ameridose, LLC et al. | ) Dkt. No. 1:13-cv-12759-FDS |
| Osborne v. Ameridose, LLC et al. | ) Dkt. No. 1:13-cv-12739-FDS |
| Parman v. Ameridose, LLC et al. | ) Dkt. No. 1:13-cv-12433-FDS |
| Peay v. Ameridose, LLC et al. | ) Dkt. No. 1:13-cv-12843-FDS |
| Pellicone v. Ameridose, LLC et al. | ) Dkt. No. 1:13-cv-12916-FDS |
| Pierce v. Ameridose, LLC et al. | ) Dkt. No. 1:13-cv-12733-FDS |
| Redkevitch v. Ameridose, LLC et al. | ) Dkt. No. 1:13-cv-12666-FDS |
| Siler v. Ameridose, LLC et al. | ) Dkt. No. 1:13-cv-12489-FDS |
| Temple v. Ameridose, LLC et al. | ) Dkt. No. 1:13-cv-12696-FDS |
| Adamson v. Ameridose, LLC et al. | ) Dkt. No. 1:13-cv-12734-FDS |
| Williams v. Ameridose, LLC et al. | ) Dkt. No. 1:13-cv-12434-FDS |
| Wray v. Ameridose, LLC et al. | ) Dkt. No. 1:13-cv-12737-FDS |

| Judd v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-13120-FDS |
| Patel v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12061-FDS |

### SAINT THOMAS OUTPATIENT NEUROSURGICAL CENTER, LLC, HOWELL ALLEN CLINIC, A PROFESSIONAL CORPORATION, JOHN W. CULCLASURE, M.D., AND DEBRA V. SCHAMBERG, R.N.'S GENERAL OBJECTION TO THE PLAINTIFFS' STEERING COMMITTEE'S WRITTEN DISCOVERY

Saint Thomas Outpatient Neurosurgical Center, LLC ("STOPNC"), Howell Allen Clinic, a Professional Corporation ("Howell Allen"), John W. Culclasure, M.D. ("Dr. Culclasure"), and Debra V. Schamberg, R.N. ("Ms. Schamberg") (collectively, "the Defendants") provide the following general objection to the Plaintiffs' Steering Committee's Interrogatories and Requests for Production.

At the status conference on December 13, 2013, the Court took under advisement these Defendants' Motion to Stay Discovery Pending Entry of a Discovery Plan.[1] [2] The Court directed that certain matters related to discovery would be referred to Magistrate Judge Boal, including the establishment of a discovery plan. On December 23, 2013, the Court entered various orders, including referring to Judge Boal matters related to the entry of protective orders to be utilized during the discovery process.[3] The Court has not ruled upon the Defendants' Motion to Stay Discovery Pending Entry of a Discovery Plan.

At the status conference, the Court suggested that the parties not file motions for protective order or motions to compel.

Out of an abundance of caution, these Defendants serve this objection to the Plaintiffs' Steering Committee's ("PSC") set of "common" written discovery to these Defendants. The Defendants object to responding to the pending interrogatories and requests for production until and before (1) initial disclosures are exchanged pursuant to FRCP 26(a)(1) and (2) a FRCP 26(f) plan is put in place.

Local Rule 26.2, which has *not* been waived by the Court or by the parties, specifically states that a party cannot initiate discovery until that party has provided initial disclosures pursuant to FRCP 26(a)(1). The PSC (nor any plaintiff) has provided initial disclosures.

---

[1] Dkt. 594, 598.
[2] This is, in essence, a motion for protective order pursuant to FRCP 26(c).
[3] Dkt. 722.

3

Contemporaneous with the above objections, the Defendants have sent, on a CD, 846 pages of documents already produced in the state court actions. The Defendants have also responded to pending requests for admission and formally objected to responding to the subpoena pending implementation of a discovery plan. The Defendants have done so in a good faith attempt to engage in the discovery process while still maintaining that any and all written discovery should proceed pursuant to a discovery plan, beginning with initial disclosures.[4]

Respectfully submitted,

**GIDEON, COOPER & ESSARY, PLC**

_CJT with permission MHC_

**C.J. Gideon, Jr., #6034**
**Chris J. Tardio, #23924**
**Matthew H. Cline, #31076**
**John-Mark Zini, #31769**
Suite 1100
315 Deaderick Street
Nashville, TN 37238
(615) 254-0400

*Attorneys for STOPNC, John W. Culclasure, M.D., Debra Schamberg, R.N., and Howell Allen.*

---

[4] *See* Dkt. 594, 598.

4

Collective Exhibit 1                                                                                          Ex. 1-B

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of December, 2013, a true and accurate copy of the foregoing was served upon the following via the methods indicated below:

**_Via Hand Delivery_**
J. Gerard Stranch, IV
BRANSTETTER, STRANCH & JENNINGS, PLLC
227 Second Avenue North
Nashville, TN 37201

_Representative of the Plaintiffs' Steering Committee_

**_Via U.S. Mail_**
Marcy H. Greer
Yvonne K. Puig
Eric J. Hoffman
FULBRIGHT & JAWORSKI, LLP
98 San Jacinto Blvd., Suite 1100
Austin, TX 78701

_Attorneys for the Saint Thomas Entities_

CJT  with permission MHG
**Chris J. Tardio**

5

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN RE NEW ENGLAND COMPOUNDING          )
PHARMACY, INC. PRODUCTS LIABILITY      )
LITIGATION                             )
                                       )      MDL No. 2419
_____      )      Dkt. No 1:13-md-2419 (FDS)
                                       )
THIS DOCUMENT RELATES TO:              )
                                       )
All Cases                              )
_____      )

**RESPONSE AND OBJECTIONS OF
SAINT THOMAS OUTPATIENT NEUROSURGICAL CENTER, LLC
TO THE PLAINTIFFS' STEERING COMMITTEE'S REVISED SUBPOENA**

On November 13, 2013, Magistrate Judge Boal ordered, "To the extent that written discovery requests overlap with the Rule 45 subpoenas, they would violate Rule 26's prohibition on duplicative discovery. Accordingly, the Court finds that any respondent who is a party need not answer to the same requests twice."[1] All of the requests below are covered by (1) initial disclosures and/or (2) the pending requests for production.

At the status conference on December 13, 2013, the Court took under advisement the Defendant's Motion to Stay Discovery Pending Entry of a Discovery Plan.[2][3] The Court directed that certain matters related to discovery would be referred to Magistrate Judge Boal, including the establishment of a discovery plan. On December 23, 2013, the Court entered various orders, including referring to Judge Boal matters related to the entry of protective orders to be utilized during the discovery process.[4] The Court has not ruled on the Defendant's Motion to Stay Discovery Pending Entry of a Discovery Plan.

At the status conference, the Court suggested that the parties not file motions for protective order or motions to compel.

---

[1] Dkt. 572, page 12.
[2] Dkts. 594, 598.
[3] This is, in essence, a motion for protective order pursuant to FRCP 26(c).
[4] Dkt. 722.

Out of an abundance of caution, the Defendant serves the below objections to the most recent revised subpoena. Contemporaneous with the below objections, the Defendant has sent, on a CD, 820 pages of documents already produced in the state court litigation. The Defendant has done so in a good faith attempt to engage in the discovery process while still maintaining the position that any and all written discovery should wait until the discovery plan is implemented.[5]

As further specific response to each request of the exhibit to the subpoena, the Defendant states:

1.    This request is covered by the Defendant's initial disclosures and/or pending requests for production of documents. The Defendant, consistent with Judge Boal's directive in her November 13, 2013, order, will provide these responses with initial disclosures and/or responses to requests for production. Consistent with the pending motion to stay discovery pending entry of a discovery order, the Defendant objects to responding to the discovery until a discovery plan is put in place and/or initial disclosures are served. Regardless, a reasonable response to this request was provided in the responses to discovery in the state court litigation.

2.    Magistrate Judge Boal held that health care providers do not have to provide information in response to this item as it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

3.    The Defendant does not possess any responsive documents.

4.    This request is covered by the Defendant's initial disclosures and/or pending requests for production of documents. The Defendant, consistent with Judge Boal's directive in her November 13, 2013, order, will provide these responses with initial disclosures and/or responses to requests for production. Consistent with the pending motion to stay discovery pending entry of a discovery order, the Defendant objects to responding to the discovery until a discovery plan is put in place and/or initial disclosures are served. Regardless, a reasonable response to this request was provided in the responses to discovery in the state court litigation.

5.    This request was omitted from the revised subpoena exhibit.

6.    This request was omitted from the revised subpoena exhibit.

---

[5] *See* Dkts. 594, 598.

7.    This request is covered by the Defendant's initial disclosures and/or pending requests for production of documents. The Defendant, consistent with Judge Boal's directive in her November 13, 2013, order, will provide these responses with initial disclosures and/or responses to requests for production. Consistent with the pending motion to stay discovery pending entry of a discovery order, the Defendant objects to responding to the discovery until a discovery plan is put in place and/or initial disclosures are served. Regardless, a reasonable response to this request was provided in the responses to discovery in the state court litigation.

8.    This request is covered by the Defendant's initial disclosures and/or pending requests for production of documents. The Defendant, consistent with Judge Boal's directive in her November 13, 2013, order, will provide these responses with initial disclosures and/or responses to requests for production. Consistent with the pending motion to stay discovery pending entry of a discovery order, the Defendant objects to responding to the discovery until a discovery plan is put in place and/or initial disclosures are served. Regardless, a reasonable response to this request was provided in the responses to discovery in the state court litigation.

9.    This request is covered by the Defendant's initial disclosures and/or pending requests for production of documents. The Defendant, consistent with Judge Boal's directive in her November 13, 2013, order, will provide these responses with initial disclosures and/or responses to requests for production. Consistent with the pending motion to stay discovery pending entry of a discovery order, the Defendant objects to responding to the discovery until a discovery plan is put in place and/or initial disclosures are served. Regardless, a reasonable response to this request was provided in the responses to discovery in the state court litigation.

10.   This request is covered by the Defendant's initial disclosures and/or pending requests for production of documents. The Defendant, consistent with Judge Boal's directive in her November 13, 2013, order, will provide these responses with initial disclosures and/or responses to requests for production. Consistent with the pending motion to stay discovery pending entry of a discovery order, the Defendant objects to responding to the discovery until a discovery plan is put in place and/or initial disclosures are served. Regardless, a reasonable response to this request was provided in the responses to discovery in the state court litigation.

11.   This request was omitted from the revised subpoena exhibit.

12.  This request is covered by the Defendant's initial disclosures and/or pending requests for production of documents. The Defendant, consistent with Judge Boal's directive in her November 13, 2013, order, will provide these responses with initial disclosures and/or responses to requests for production. Consistent with the pending motion to stay discovery pending entry of a discovery order, the Defendant objects to responding to the discovery until a discovery plan is put in place and/or initial disclosures are served. Regardless, a reasonable response to this request was provided in the responses to discovery in the state court litigation.

13.  The Defendant does not possess any responsive documents.

14.  This request is covered by the Defendant's initial disclosures and/or pending requests for production of documents. The Defendant, consistent with Judge Boal's directive in her November 13, 2013, order, will provide these responses with initial disclosures and/or responses to requests for production. Consistent with the pending motion to stay discovery pending entry of a discovery order, the Defendant objects to responding to the discovery until a discovery plan is put in place and/or initial disclosures are served. Regardless, a reasonable response to this request was provided in the responses to discovery in the state court litigation.

15.  This request is covered by the Defendant's initial disclosures and/or pending requests for production of documents. The Defendant, consistent with Judge Boal's directive in her November 13, 2013, order, will provide these responses with initial disclosures and/or responses to requests for production. Consistent with the pending motion to stay discovery pending entry of a discovery order, the Defendant objects to responding to the discovery until a discovery plan is put in place and/or initial disclosures are served. Regardless, a reasonable response to this request was provided in the responses to discovery in the state court litigation.

16.  This request is covered by the Defendant's initial disclosures and/or pending requests for production of documents. The Defendant, consistent with Judge Boal's directive in her November 13, 2013, order, will provide these responses with initial disclosures and/or responses to requests for production. Consistent with the pending motion to stay discovery pending entry of a discovery order, the Defendant objects to responding to the discovery until a discovery plan is put in place and/or initial disclosures are served. Regardless, a reasonable response to this request was provided in the responses to discovery in the state court litigation.

17.   This request is covered by the Defendant's initial disclosures and/or pending requests for production of documents. The Defendant, consistent with Judge Boal's directive in her November 13, 2013, order, will provide these responses with initial disclosures and/or responses to requests for production. Consistent with the pending motion to stay discovery pending entry of a discovery order, the Defendant objects to responding to the discovery until a discovery plan is put in place and/or initial disclosures are served. While awaiting entry of a discovery plan, the Defendant is gathering responsive documents for production.

Respectfully submitted,

GIDEON, COOPER & ESSARY, PLC

_with permission MHC_

C.J. Gideon, Jr., #6034
Chris J. Tardio, #23924
Matthew H. Cline, #31076
John-Mark Zini, #31769
Suite 1100
315 Deaderick Street
Nashville, TN 37238
(615) 254-0400

**Attorneys for STOPNC**

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of December, 2013, a true and accurate

copy of the foregoing was served upon the following via the methods indicated below:


***Via Hand Delivery***
J. Gerard Stranch, IV
BRANSTETTER, STRANCH & JENNINGS, PLLC
227 Second Avenue North
Nashville, TN  37201

*Representative of the Plaintiffs' Steering
Committee*

with permission MHC

**Chris J. Tardio**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | ) ) ) | |
| | ) | MDL No. 2419 |
| | ) | Dkt. No 1:13-md-2419 (FDS) |
| THIS DOCUMENT RELATES TO: | ) ) | |
| All Cases | ) ) | |

RESPONSE AND OBJECTIONS OF
HOWELL ALLEN CLINIC, A PROFESSIONAL CORPORATION
TO THE PLAINTIFFS' STEERING COMMITTEE'S REVISED SUBPOENA

On November 13, 2013, Magistrate Judge Boal ordered, "To the extent that written discovery requests overlap with the Rule 45 subpoenas, they would violate Rule 26's prohibition on duplicative discovery. Accordingly, the Court finds that any respondent who is a party need not answer to the same requests twice."[1] All of the requests below are covered by (1) initial disclosures and/or (2) the pending requests for production.

At the status conference on December 13, 2013, the Court took under advisement the Defendant's Motion to Stay Discovery Pending Entry of a Discovery Plan.[2][3] The Court directed that certain matters related to discovery would be referred to Magistrate Judge Boal, including the establishment of a discovery plan. On December 23, 2013, the Court entered various orders, including referring to Judge Boal matters related to the entry of protective orders to be utilized during the discovery process.[4] The Court has not ruled on the Defendant's Motion to Stay Discovery Pending Entry of a Discovery Plan.

At the status conference, the Court suggested that the parties not file motions for protective order or motions to compel.

---

[1] Dkt. 572, page 12.
[2] Dkts. 594, 598.
[3] This is, in essence, a motion for protective order pursuant to FRCP 26(c).
[4] Dkt. 722.

Collective Exhibit 1                                                                                          Ex. 1-D

Out of an abundance of caution, the Defendant serves the below objections to the most recent revised subpoena. Contemporaneous with the below objections, the Defendant has sent, on a CD, 26 pages of documents already produced in the state court litigation. The Defendant has done so in a good faith attempt to engage in the discovery process while still maintaining the position that any and all written discovery should wait until the discovery plan is implemented.[5]

As further specific response to each request of the exhibit to the subpoena, the Defendant states:

1.    The Defendant did not purchase medication from NECC. Therefore, the Defendant does not possess any responsive documents.

2.    Magistrate Judge Boal held that health care providers do not have to provide information in response to this item as it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

3.    The Defendant did not purchase medication from NECC. Therefore, the Defendant does not possess any responsive documents.

4.    The Defendant did not purchase medication from NECC. Therefore, the Defendant does not possess any responsive documents.

5.    This request was omitted from the revised subpoena exhibit.

6.    This request was omitted from the revised subpoena exhibit.

7.    The Defendant did not communicate with NECC. Therefore, no responsive documents exist.

8.    This request is covered by the Defendant's initial disclosures and/or pending requests for production of documents. The Defendant, consistent with Judge Boal's directive in her November 13, 2013, order, will provide these responses with initial disclosures and/or responses to requests for production. Consistent with the pending motion to stay discovery pending entry of a discovery order, the Defendant objects to responding to the discovery until a discovery plan is put in place and/or initial disclosures are served. Regardless, a reasonable response to this request was provided in the responses to discovery in the state court litigation.

9.    The Defendant did not purchase medication from NECC. Therefore, the Defendant does not possess any responsive documents.

_____

[5] *See* Dkts. 594, 598.

2

10. This request is covered by the Defendant's initial disclosures and/or pending requests for production of documents. The Defendant, consistent with Judge Boal's directive in her November 13, 2013, order, will provide these responses with initial disclosures and/or responses to requests for production. Consistent with the pending motion to stay discovery pending entry of a discovery order, the Defendant objects to responding to the discovery until a discovery plan is put in place and/or initial disclosures are served. Regardless, a reasonable response to this request was provided in the responses to discovery in the state court litigation.

11. This request was omitted from the revised subpoena exhibit.

12. This request is covered by the Defendant's initial disclosures and/or pending requests for production of documents. The Defendant, consistent with Judge Boal's directive in her November 13, 2013, order, will provide these responses with initial disclosures and/or responses to requests for production. Consistent with the pending motion to stay discovery pending entry of a discovery order, the Defendant objects to responding to the discovery until a discovery plan is put in place and/or initial disclosures are served. Regardless, a reasonable response to this request was provided in the responses to discovery in the state court litigation.

13. The Defendant does not possess any responsive documents.

14. The Defendant does not possess any responsive documents.

15. This request is covered by the Defendant's initial disclosures and/or pending requests for production of documents. The Defendant, consistent with Judge Boal's directive in her November 13, 2013, order, will provide these responses with initial disclosures and/or responses to requests for production. Consistent with the pending motion to stay discovery pending entry of a discovery order, the Defendant objects to responding to the discovery until a discovery plan is put in place and/or initial disclosures are served. Regardless, a reasonable response to this request was provided in the responses to discovery in the state court litigation.

16. This request is covered by the Defendant's initial disclosures and/or pending requests for production of documents. The Defendant, consistent with Judge Boal's directive in her November 13, 2013, order, will provide these responses with initial disclosures and/or responses to requests for production. Consistent with the pending motion to stay discovery pending entry of a discovery order, the Defendant objects to responding to the discovery until a discovery plan is put in place and/or initial disclosures are served. Regardless, a reasonable response to this request was provided in the responses to discovery in the state court litigation.

17.   This request is covered by the Defendant's initial disclosures and/or pending requests for production of documents. The Defendant, consistent with Judge Boal's directive in her November 13, 2013, order, will provide these responses with initial disclosures and/or responses to requests for production. Consistent with the pending motion to stay discovery pending entry of a discovery order, the Defendant objects to responding to the discovery until a discovery plan is put in place and/or initial disclosures are served. While awaiting entry of a discovery plan, the Defendant is gathering responsive documents for production.

Respectfully submitted,

**GIDEON, COOPER & ESSARY, PLC**

*with permission MHC*

**C.J. Gideon, Jr., #6034**
**Chris J. Tardio, #23924**
**Matthew H. Cline, #31076**
**John-Mark Zini, #31769**
Suite 1100
315 Deaderick Street
Nashville, TN 37238
(615) 254-0400

***Attorneys for Howell Allen***

4

**CERTIFICATE OF SERVICE**

I hereby certify that on the 30th day of December, 2013, a true and accurate copy of the foregoing was served upon the following via the methods indicated below:

***Via Hand Delivery***
J. Gerard Stranch, IV
BRANSTETTER, STRANCH & JENNINGS, PLLC
227 Second Avenue North
Nashville, TN  37201

*Representative of the Plaintiffs' Steering Committee*

*CDT with permission MHC*

**Chris J. Tardio**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE:   NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | ) ) ) ) | MDL No. 2419 Dkt. No. 1:13-md-2419-FDS |
| | ) ) | |
| This Document Relates to: | ) ) | |
| | ) | |
| Nealon v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12491-FDS |
| Dingess v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12490-FDS |
| Willis v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12597-FDS |
| Collins v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12580-FDS |
| Graham v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12581-FDS |
| Savercool v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12583-FDS |
| Bray v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12596-FDS |
| Rhind v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12740-FDS |
| Fuelling v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12741-FDS |
| McDavid v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12742-FDS |
| Bumgarner v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12679-FDS |
| Weaver v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12681-FDS |
| Smith v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12684-FDS |
| Palmer v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12688-FDS |
| Norris v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12682-FDS |
| Foster v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12686-FDS |
| Reed v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12917-FDS |
| Cox v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12918-FDS |
| Hubbard v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12922-FDS |
| Jackson v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12923-FDS |
| Lapiska v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12914-FDS |
| Johnson v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12915-FDS |
| Keyes v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12998-FDS |
| Carter v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12187-FDS |

**SPECIALTY SURGERY CENTER, CROSSVILLE, PLLC, AND KENNETH LISTER, M.D.'S GENERAL OBJECTION TO THE PLAINTIFFS' STEERING COMMITTEE'S WRITTEN DISCOVERY**

Specialty Surgery Center, Crossville PLLC ("SSC"), and Kenneth Lister, M.D. ("Dr. Lister"), provide the following general objection to the Plaintiffs' Steering Committee's Interrogatories and Requests for Production.

At the status conference on December 13, 2013, the Court took under advisement this Defendants' Motion to Stay Discovery Pending Entry of a Discovery Plan.[1] [2] The Court directed that certain matters related to discovery would be referred to Magistrate Judge Boal, including the establishment of a discovery plan. On December 23, 2013, the Court entered various orders, including referring to Judge Boal matters related to the entry of protective orders to be utilized during the discovery process.[3] The Court has not ruled upon the Defendants' Motion to Stay Discovery Pending Entry of a Discovery Plan.

At the status conference, the Court suggested that the parties not file motions for protective order or motions to compel.

Out of an abundance of caution, the Defendants serve this objection to the Plaintiffs' Steering Committee's ("PSC") set of "common" written discovery to the Defendants. The Defendants object to responding to the pending interrogatories and requests for production until and before (1) initial disclosures are exchanged pursuant to FRCP 26(a)(1) and (2) a FRCP 26(f) plan is put in place.

Local Rule 26.2, which has *not* been waived by the Court or by the parties, specifically states that a party cannot initiate discovery until that party has provided initial disclosures pursuant to FRCP 26(a)(1). The PSC (nor any plaintiff) has provided initial disclosures.

Contemporaneous with the above objections, the Defendants have responded to pending requests for admission and formally objected to responding to the subpoena pending implementation of a discovery plan. The Defendants have done so in a good faith attempt to engage in the discovery process while still maintaining that any and all written discovery should proceed pursuant to a discovery plan, beginning with initial disclosures.[4]

---

[1] Dkt. 594, 598.
[2] This is, in essence, a motion for protective order pursuant to FRCP 26(c).
[3] Dkt. 722.
[4] *See* Dkt. 594, 598.

Respectfully submitted,

**GIDEON, COOPER & ESSARY, PLC**

*C JT with permission MHC*

**C.J. Gideon, Jr., #6034**
**Chris J. Tardio, #23924**
**Matthew H. Cline, #31076**
**John-Mark Zini, #31769**
Suite 1100
315 Deaderick Street
Nashville, TN 37238
(615) 254-0400

*Attorneys for Specialty Surgery Center, Crossville, PLLC, and Kenneth Lister, M.D.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of December, 2013, a true and accurate copy of the foregoing was served upon the following via the methods indicated below:

***Via Hand Delivery***
J. Gerard Stranch, IV
BRANSTETTER, STRANCH & JENNINGS, PLLC
227 Second Avenue North
Nashville, TN 37201

*Representative of the Plaintiffs' Steering Committee*

*C JT with permission MHC*

**Chris J. Tardio**

3

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE:   NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | )<br>)<br>)<br>) | MDL No. 2419<br>Dkt. No. 1:13-md-2419-FDS |

This Document Relates to:

| | | |
|---|---|---|
| Nealon v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12491-FDS |
| Dingess v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12490-FDS |
| Willis v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12597-FDS |
| Collins v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12580-FDS |
| Graham v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12581-FDS |
| Savercool v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12583-FDS |
| Bray v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12596-FDS |
| Rhind v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12740-FDS |
| Fuelling v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12741-FDS |
| McDavid v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12742-FDS |
| Bumgarner v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12679-FDS |
| Weaver v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12681-FDS |
| Smith v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12684-FDS |
| Palmer v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12688-FDS |
| Norris v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12682-FDS |
| Foster v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12686-FDS |
| Reed v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12917-FDS |
| Cox v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12918-FDS |
| Hubbard v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12922-FDS |
| Jackson v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12923-FDS |
| Lapiska v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12914-FDS |
| Johnson v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12915-FDS |
| Keyes v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12998-FDS |
| Carter v. Ameridose, LLC et al. | ) | Dkt. No. 1:13-cv-12187-FDS |

**SPECIALTY SURGERY CENTER, CROSSVILLE, PLLC, AND KENNETH LISTER, M.D.'S RESPONSES TO THE PLAINTIFFS' STEERING COMMITTEE'S FIRST SET OF REQUESTS FOR ADMISSIONS AND CORRESPONDING INTERROGATORY**

Pursuant to Rules 26, 33, and 36 of the Federal Rules of Civil Procedure and the Local Rules for the District of Massachusetts, Specialty Surgery Center, Crossville, PLLC ("SSC"), and Kenneth Lister, M.D. ("Dr. Lister"), provide the following responses to the Plaintiffs' Steering Committee's First Set of Requests for Admissions and Corresponding Interrogatory.

## GENERAL OBJECTION

At the status conference on December 13, 2013, the Court took under advisement these Defendants' Motion to Stay Discovery Pending Entry of a Discovery Plan.[1] [2] The Court directed that certain matters related to discovery would be referred to Magistrate Judge Boal, including the establishment of a discovery plan. On December 23, 2013, the Court entered various orders, including referring to Judge Boal issues related to the entry of protective orders to be utilized during the discovery process.[3] The Court has not ruled upon the Defendants' Motion to Stay Discovery Pending Entry of a Discovery Plan. At the status conference, the Court suggested that the parties not file motions for protective order or motions to compel while entry of a discovery plan is considered. Out of an abundance of caution, these Defendants serve the below responses to the pending requests for admission, to the extent they do not fall within the Court's directive.

---

[1] Dkt. 594, 598.
[2] This is, in essence, a motion for protective order pursuant to FRCP 26(c).
[3] Dkt. 722.

## INTERROGATORY

1.      If your response to any of the following Requests for Admission is other than an unqualified admission, for each such Request for Admission state all facts (not opinions) that you contend support in any manner your refusal to admit or your qualification of your admission, identify all documents, notes, reports, memoranda, electronic and/or tape recordings, photographs, oral statements, or any other tangible or intangible thing that supports in any manner your refusal to admit or your qualification of your admission, the name and address of the custodian of all tangible things identified above, and the name and address of all persons, including consultants and experts, purporting to have knowledge or factual data upon which you base your refusal to admit or the qualification of your admission.

RESPONSE:

**Objection. This Interrogatory is overbroad, unduly burdensome, seeks the disclosure of expert opinions before the Court has set a schedule for such disclosures, seeks information that is irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, and seeks information that is privileged from discovery by attorney-client privilege, the work-product doctrine, and the Tennessee Peer Review Law of 1967, Tenn. Code Ann. § 63-6-219 and/or the Tennessee Patient Safety and Quality Improvement Act of 2011, Tenn. Code Ann. §§ 63-1-150, 68-11-272.**

**Subject to and without waiving said objections, in response to this Interrogatory, these Defendants have incorporated into any denials or qualifications of these Requests for Admissions the basis or reason for the denial or qualification. Where the Response does not directly refer to non-privileged documents relied upon in making the denial or qualification, the Response provides a citation to the relevant supporting documentation.**

3

Collective Exhibit 1                                                                                          Ex. 1-F

<u>**REQUESTS FOR ADMISSIONS**</u>

    1.    Admit that in 2002, the CDC published a report regarding at least two cases of fungal meningitis arising from contaminated medication used in epidural injections. The report stated that "purchasers of pharmaceuticals should determine if supplies are provided from a compounding pharmacy that . . . follows appropriate measures to ensure that injectable products are free of contamination."   A copy of that published report is attached as <u>Exhibit 1</u>.

    RESPONSE:

**These Defendants admit that the United States Centers for Disease Control ("CDC") published a report regarding at least two cases of fungal meningitis arising from contaminated medication used in epidural injections in 2002 and that the "Editorial Note" section states that "[p]urchasers of pharmaceuticals should determine if supplies are provided from a compounding pharmacy that is licensed in their state and that follows appropriate measures to ensure that injectable products are free of contamination." These Defendants deny that this is the entirety of the publication. These Defendants object, under Federal Rule of Evidence 106, to the admission of this limited excerpt from the CDC publication. These Defendants admit that Exhibit 1 appears to be a true and correct copy of the report referenced in Request for Admission #1.**

    2.    Admit that Exhibit 1 is "a record or statement of a public office" as that term is used in Federal Rule of Evidence 803(8).

    RESPONSE:

**Denied. The article is not written by governmental employees. Roughly half of the authors are private and public university professors, physicians, and researchers. The presumption of trustworthiness, which is the basis for the public records exception to the hearsay rule, does not apply to documents created wholly or in part by non-governmental employees, and Rule 803(8) is not a means to admit otherwise inadmissible hearsay statements of non-governmental employees. *See Toole v. McClintock*, 999 F.2d 1430, 1435 (11th Cir. 1993).**

4

3.      Admit that Exhibit 1 sets out "factual findings from a legally authorized investigation" as that term is used in Federal Rule of Evidence 803(8).

RESPONSE:

**Denied. The article is not written by governmental employees. Roughly half of the authors are private and public university professors, physicians, and researchers. The presumption of trustworthiness, which is the basis for the public records exception to the hearsay rule, does not apply to documents created wholly or in part by non-governmental employees, and Rule 803(8) is not a means to admit otherwise inadmissible hearsay statements of non-governmental employees.** *See Toole v. McClintock*, **999 F.2d 1430, 1435 (11th Cir. 1993).**

4.      Admit that Exhibit 1's source of information does not "indicate a lack of trustworthiness" as that term is used in Federal Rule of Evidence 803(8).

RESPONSE:

**Denied. The article is not written by governmental employees. Roughly half of the authors are private and public university professors, physicians, and researchers. The presumption of trustworthiness, which is the basis for the public records exception to the hearsay rule, does not apply to documents created wholly or in part by non-governmental employees, and Rule 803(8) is not a means to admit otherwise inadmissible hearsay statements of non-governmental employees.** *See Toole v. McClintock*, **999 F.2d 1430, 1435 (11th Cir. 1993).**

5.      Admit that, as to Exhibit 1, no other circumstance "indicate[s] a lack of trustworthiness" as that term is used in Federal Rule of Evidence 803(8).

RESPONSE:

**Denied. The article is not written by governmental employees. Roughly half of the authors are private and public university professors, physicians, and researchers. The presumption of trustworthiness, which is the basis for the public records exception to the hearsay rule, does not apply to documents created wholly or in part by non-governmental employees, and Rule 803(8) is not a means to admit otherwise inadmissible hearsay statements of non-governmental employees.** *See Toole v. McClintock*, **999 F.2d 1430, 1435 (11th Cir. 1993).**

6.      Admit that on March 24, 2005, USA Today published a front page article with the following headline:  **"Safety concerns grow over pharmacy-mixed drugs."** A true and correct copy of the text from that article is attached as <u>Exhibit 2</u>.

RESPONSE:

**These Defendants admit that USA Today published an article titled "Safety concerns grow over pharmacy-mixed drugs." These Defendants insist that Federal Rule of Evidence 106 requires that the recipient of this Response also be informed that article also notes that (1) "regulators have long allowed [compounding] because 'the vast majority of pharmacies . . . provide a valuable medical service,'" (2) "proponents say compounding pharmacies overall are safe," (3) "several states are tightening their rules overseeing firms that compound drugs," and (4) "the FDA has stepped in when it decides a pharmacy has crossed the line and become a drug manufacturer." Based on information known or readily attainable, and after making reasonable inquiry, these Defendants lack sufficient information to admit or deny that the article was a front page story. These Defendants admit that Exhibit 2 appears to be a true and correct copy of the article referenced in Request for Admission #6.**

7.      Admit that in 2006, the FDA conducted a survey of compounded drug products. They collected thirty-six samples from compounding pharmacies across the United States during unannounced visits. Twelve of the 36 samples (33%) failed analytical testing. The FDA survey stated "poor quality compounded drugs are a serious public health concern, as improperly compounded products have been linked to grave adverse events, including deaths." A true and correct copy of the FDA's report titled *2006 Limited FDA Survey of Compounded Drug Products* is attached as <u>Exhibit 3</u>.

RESPONSE:

**These Defendants admit that the FDA reported conducting a survey of compounded drug products in 2006. These Defendants admit that the study reported that the FDA collected 73 finished drug products from compounding pharmacies across the country during unannounced visits, but the FDA excluded 37 of the samples from the study because they were deemed unusable for various reasons. These Defendants admit that the study reported that, of the 36 samples tested, 12 (33%) failed analytic testing, but note under Federal Rule of Evidence 106, that "[m]ost of the products that failed analysis did so due to sub or super-potency . . . or a lack of uniformity of individual dosage units." These Defendants affirmatively state that the FDA did not test for sterility and that the study indicates that "[t]he majority of the finished compounded product samples analyzed in th[e] survey were hormone therapy products." The article also states that the "FDA has long recognized that traditional pharmacy compounding serves an important public health function." These Defendants admit that Exhibit 3 appears to be a true and correct copy of the report titled *2006 Limited FDA Survey of Compounded Drug Products*.**

8.      Admit that Exhibit 3 is "a record or statement of a public office" as that term is used in Federal Rule of Evidence 803(8).

RESPONSE:

**Denied in part. The article draws conclusions regarding sterility and contamination from articles in medical journals that were written by non-governmental employees. The presumption of trustworthiness, which is the basis for the public records exception to the hearsay rule, does not apply to documents created wholly or in part by non-governmental employees and is not a means to admit otherwise inadmissible hearsay medical journal articles. *See Toole v. McClintock*, 999 F.2d 1430, 1435 (11th Cir. 1993). References to issues with contamination and sterility are inferred and cited from inadmissible medical journal articles, which do not meet the public records exception of Federal Rule of Evidence 803(8). To the extent that the survey does not rely upon or draw conclusions from medical journal articles, it meets the hearsay exception codified at Federal Rule of Evidence 803(8).**

7

9.    Admit that Exhibit 3 sets out "factual findings from a legally authorized investigation" as that term is used in Federal Rule of Evidence 803(8).

RESPONSE:

**Denied in part. The article draws conclusions regarding sterility and contamination from articles in medical journals that were written by non-governmental employees. The presumption of trustworthiness, which is the basis for the public records exception to the hearsay rule, does not apply to documents created wholly or in part by non-governmental employees and is not a means to admit otherwise inadmissible hearsay medical journal articles. *See Toole v. McClintock,* 999 F.2d 1430, 1435 (11th Cir. 1993). References to issues with contamination and sterility are inferred and cited from inadmissible medical journal articles, which do not meet the public records exception of Federal Rule of Evidence 803(8). To the extent that the survey does not rely upon or draw conclusions from medical journal articles, it meets the hearsay exception codified at Federal Rule of Evidence 803(8).**

10.    Admit that Exhibit 3's source of information does not "indicate a lack of trustworthiness" as that term is used in Federal Rule of Evidence 803(8).

RESPONSE:

**Denied in part. The article draws conclusions regarding sterility and contamination from articles in medical journals that were written by non-governmental employees. The presumption of trustworthiness, which is the basis for the public records exception to the hearsay rule, does not apply to documents created wholly or in part by non-governmental employees and is not a means to admit otherwise inadmissible hearsay medical journal articles. *See Toole v. McClintock,* 999 F.2d 1430, 1435 (11th Cir. 1993). References to issues with contamination and sterility are inferred and cited from inadmissible medical journal articles, which do not meet the public records exception of Federal Rule of Evidence 803(8). To the extent that the survey does not rely upon, cite, or draw conclusions from medical journal articles, it meets the hearsay exception codified at Federal Rule of Evidence 803(8).**

11.     Admit that, as to Exhibit 3, no other circumstance "indicate[s] a lack of trustworthiness" as that term is used in Federal Rule of Evidence 803(8).

RESPONSE:

**Denied in part. The article draws conclusions regarding sterility and contamination from articles in medical journals that were written by non-governmental employees. The presumption of trustworthiness, which is the basis for the public records exception to the hearsay rule, does not apply to documents created wholly or in part by non-governmental employees and is not a means to admit otherwise inadmissible hearsay medical journal articles.** *See Toole v. McClintock***, 999 F.2d 1430, 1435 (11th Cir. 1993). References to issues with contamination and sterility are inferred and cited from inadmissible medical journal articles, which do not meet the public records exception of Federal Rule of Evidence 803(8). To the extent that the survey does not rely upon or draw conclusions from medical journal articles, it meets the hearsay exception codified at Federal Rule of Evidence 803(8).**

12.     In May 2007, the FDA published an article titled "The Special Risks of Pharmacy Compounding."  A true and correct copy of that article is attached as <u>Exhibit 4</u>.

RESPONSE:

**These Defendants admit that the FDA published an article titled "The Special Risks of Pharmacy Compounding" in May 2007. These Defendants admit that Exhibit 4 appears to be a true and correct copy of the report referenced in Request for Admission #12.**

13.    Admit that Exhibit 4 is "a record or statement of a public office" as that term is used in Federal Rule of Evidence 803(8).

RESPONSE:

**Denied. The article is not (1) drafted pursuant to a legally authorized investigation, (2) a final agency action, or (3) a binding document upon the FDA.** *Genendo Pharmaceutical NV v. Thompson*, **308 F. Supp. 2d 881 (N.D. Ill. 2003) ("Statements of lower-level agency officials likewise do not rise to the level of final agency action-even when they are contained in warning letters or other official regulatory correspondence."); 21 C.F.R. § 10.85(k) ("[a] statement or advice given by an FDA employee. . . is an informal communication that represents the best judgment of that employee at that time but does not constitute an advisory opinion, does not necessarily represent the formal position of FDA, and does not bind or otherwise obligate or commit the agency to the views expressed.");** *Schering-Plough Healthcare v. Schwarz Pharma*, **547 F. Supp. 2d 939 (E.D. Wis. 2008);** *see, e.g., Western Ill. Home Health Care v. Herman*, **150 F.3d 659, 662 (7th Cir. 1998);** *Schering Corp. v. Heckler*, **779 F.2d 683, 686 n. 18 (D.C. Cir. 1985);** *Biotics Research Corp. v. Heckler*, **710 F.2d 1375, 1378 (9th Cir. 1983);** *Clinical Reference Laboratory, Inc. v. Sullivan*, **791 F. Supp. 1499, 1503-04 (D. Kan. 1992).**

14.    Admit that Exhibit 4 sets out "factual findings from a legally authorized investigation" as that term is used in Federal Rule of Evidence 803(8).

RESPONSE:

**Denied. The article is not (1) drafted pursuant to a legally authorized investigation, (2) a final agency action, or (3) a binding document upon the FDA.** *Genendo Pharmaceutical NV v. Thompson*, **308 F. Supp. 2d 881 (N.D. Ill. 2003) ("Statements of lower-level agency officials likewise do not rise to the level of final agency action-even when they are contained in warning letters or other official regulatory correspondence."); 21 C.F.R. § 10.85(k) ("[a] statement or advice given by an FDA employee. . . is an informal communication that represents the best judgment of that employee at that time but does not constitute an advisory opinion, does not necessarily represent the formal position of FDA, and does not bind or otherwise obligate or commit the agency to the views expressed.");** *Schering-Plough Healthcare v. Schwarz Pharma*, **547 F. Supp. 2d 939 (E.D. Wis. 2008);** *see, e.g., Western Ill. Home Health Care v. Herman*, **150 F.3d 659, 662 (7th Cir. 1998);** *Schering Corp. v. Heckler*, **779 F.2d 683, 686 n. 18 (D.C. Cir. 1985);** *Biotics Research Corp. v. Heckler*, **710 F.2d 1375, 1378 (9th Cir. 1983);** *Clinical Reference Laboratory, Inc. v. Sullivan*, **791 F. Supp. 1499, 1503-04 (D. Kan. 1992).**

15.    Admit that Exhibit 4's source of information does not "indicate a lack of trustworthiness" as that term is used in Federal Rule of Evidence 803(8).

RESPONSE:

Denied. The article is not (1) drafted pursuant to a legally authorized investigation, (2) a final agency action, or (3) a binding document upon the FDA. *Genendo Pharmaceutical NV v. Thompson*, 308 F. Supp. 2d 881 (N.D. Ill. 2003) ("Statements of lower-level agency officials likewise do not rise to the level of final agency action-even when they are contained in warning letters or other official regulatory correspondence."); 21 C.F.R. § 10.85(k) ("[a] statement or advice given by an FDA employee. . . is an informal communication that represents the best judgment of that employee at that time but does not constitute an advisory opinion, does not necessarily represent the formal position of FDA, and does not bind or otherwise obligate or commit the agency to the views expressed."); *Schering-Plough Healthcare v. Schwarz Pharma*, 547 F. Supp. 2d 939 (E.D. Wis. 2008); *see, e.g., Western Ill. Home Health Care v. Herman*, 150 F.3d 659, 662 (7th Cir. 1998); *Schering Corp. v. Heckler*, 779 F.2d 683, 686 n. 18 (D.C. Cir. 1985); *Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1378 (9th Cir. 1983); *Clinical Reference Laboratory, Inc. v. Sullivan*, 791 F. Supp. 1499, 1503-04 (D. Kan. 1992).

16.    Admit that, as to Exhibit 4, no other circumstance "indicate[s] a lack of trustworthiness" as that term is used in Federal Rule of Evidence 803(8).

RESPONSE:

Denied. The article is not (1) drafted pursuant to a legally authorized investigation, (2) a final agency action, or (3) a binding document upon the FDA. *Genendo Pharmaceutical NV v. Thompson*, 308 F. Supp. 2d 881 (N.D. Ill. 2003) ("Statements of lower-level agency officials likewise do not rise to the level of final agency action-even when they are contained in warning letters or other official regulatory correspondence."); 21 C.F.R. § 10.85(k) ("[a] statement or advice given by an FDA employee. . . is an informal communication that represents the best judgment of that employee at that time but does not constitute an advisory opinion, does not necessarily represent the formal position of FDA, and does not bind or otherwise obligate or commit the agency to the views expressed."); *Schering-Plough Healthcare v. Schwarz Pharma*, 547 F. Supp. 2d 939 (E.D. Wis. 2008); *see, e.g., Western Ill. Home Health Care v. Herman*, 150 F.3d 659, 662 (7th Cir. 1998); *Schering Corp. v. Heckler*, 779 F.2d 683, 686 n. 18 (D.C. Cir. 1985); *Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1378 (9th Cir. 1983); *Clinical Reference Laboratory, Inc. v. Sullivan*, 791 F. Supp. 1499, 1503-04 (D. Kan. 1992).

17.    Admit that in 2010, the FDA posted an educational video on YouTube regarding compounded drugs. That educational video is found on the World Wide Web at http://www.youtube.com/watch?v=kif_rmtlQb0.

RESPONSE:

**These Defendants admit that the FDA posted an educational video on YouTube in 2010 regarding concerns over the quality of compounded drugs.**

18.    Admit that on November 5, 2010, the American Society of Anesthesiologists, the American Society of Health-System Pharmacists ("ASHP") and other medical societies published a joint report regarding drug shortages. That report included an article written by the ASHP stating as follows:

> Compounding pharmacies have also pursued the production of drugs that are in short supply. Caution is warranted because preparations from these pharmacies may not meet applicable state or federal standards (*e.g.*, United States Pharmacopeia chapter 797 or FDA labeling requirements). The sources of raw materials used by compounding pharmacies have been questioned, and apparent lapses in quality control have resulted in serious patient injury, including death.
>
>                                          . . .
>
> Compounding pharmacies may also present patient risks; several deaths have been associated with improperly sterilized compounded products.

An excerpt from that joint report is attached as <u>Exhibit 5</u>.

RESPONSE:

**These Defendants admit that the American Society of Anesthesiologists, the American Society of Health-System Pharmacists ("ASHP"), and other medical societies published a joint report regarding drug shortages, and that the report included an article written by the ASHP with the quote included in Request for Admission #18. These Defendants deny this is the entire report or that it applies to them.**

**These Defendants admit that Exhibit 5 is a nine (9) page excerpt from the 52 page report. These Defendants object to introduction of excerpts from a nine (9) page document embedded in a 52 page report pursuant to Federal Rule of Evidence 106. These Defendants deny that the report was published on November 5, 2010. The report was created for a Drug Shortages Summit that occurred on November 5, 2010, but the report was not published until on or about January 10, 2011.[4]**

---

[4]    http://www.asahq.org/For-Members/Advocacy/Washington-Alerts/Drug-Shortages-Summit-Summary-Released.aspx.

19.    Admit that on [sic] May 2012, the CDC published a report regarding fungal infections arising from medications obtained from a compounding pharmacy. That report advised that "contamination of compounded sterile preparations has caused outbreaks. Since 1990, FDA has learned of approximately 200 adverse events associated with 71 compounded products." Portions of that report are attached as <u>Exhibit 6</u>.

RESPONSE:

**These Defendants admit that the CDC published a report in May 2012 regarding fungal infections arising from medications obtained from a compounding pharmacy and that the report states that "contamination of compounded sterile preparations has caused outbreaks." The article noted that, in 22 years, the "FDA has learned of approximately 200 adverse events associated with 71 compounded products." The report further states that "[c]ompounded sterile preparations must be prepared according to aseptic practices recommended by organizations such as the United States Pharmacopeia, as stated in United States Pharmacopeia-National Formulary (3)" These Defendants affirmatively state that NECC represented that it complied with the relevant standards of the United States Pharmacopeia. These Defendants admit that Exhibit 6 appears to be a true and correct copy of the report referenced in Request for Admission #19. These Defendants deny that this is the entirety of the publication. These Defendants object, under Federal Rule of Evidence 106, to the admission of this limited excerpt from the CDC publication.**

14

20.    Admit that Exhibit 6 is "a record or statement of a public office" as that term is used in Federal Rule of Evidence 803(8).

RESPONSE:

**Denied. The article is not written by governmental employees. At least three of the authors are non-governmental healthcare providers. The presumption of trustworthiness, which is the basis for the public records exception to the hearsay rule, does not apply to documents created wholly or in part by non-governmental employees, and Rule 803(8) is not a means to admit otherwise inadmissible hearsay statements of non-governmental employees. See *Toole v. McClintock*, 999 F.2d 1430, 1435 (11th Cir. 1993).**

**Additionally, the article is not (1) a final agency action or (2) a binding document upon the CDC. *Genendo Pharmaceutical NV v. Thompson*, 308 F. Supp. 2d 881 (N.D. Ill. 2003) ("Statements of lower-level agency officials likewise do not rise to the level of final agency action-even when they are contained in warning letters or other official regulatory correspondence."); *Schering-Plough Healthcare v. Schwarz Pharma*, 547 F. Supp. 2d 939 (E.D. Wis. 2008); see, e.g., *Western Ill. Home Health Care v. Herman*, 150 F.3d 659, 662 (7th Cir. 1998); *Schering Corp. v. Heckler*, 779 F.2d 683, 686 n. 18 (D.C. Cir. 1985); *Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1378 (9th Cir. 1983); *Clinical Reference Laboratory, Inc. v. Sullivan*, 791 F. Supp. 1499, 1503-04 (D. Kan. 1992).**

21.    Admit that Exhibit 6 sets out "factual findings from a legally authorized investigation" as that term is used in Federal Rule of Evidence 803(8).

RESPONSE:

**Denied. The article is not written by governmental employees. At least three of the authors are non-governmental healthcare providers. The presumption of trustworthiness, which is the basis for the public records exception to the hearsay rule, does not apply to documents created wholly or in part by non-governmental employees, and Rule 803(8) is not a means to admit otherwise inadmissible hearsay statements of non-governmental employees. *See Toole v. McClintock*, 999 F.2d 1430, 1435 (11th Cir. 1993).**

**Additionally, the article is not (1) a final agency action or (2) a binding document upon the CDC. *Genendo Pharmaceutical NV v. Thompson*, 308 F. Supp. 2d 881 (N.D. Ill. 2003) ("Statements of lower-level agency officials likewise do not rise to the level of final agency action-even when they are contained in warning letters or other official regulatory correspondence."); *Schering-Plough Healthcare v. Schwarz Pharma*, 547 F. Supp. 2d 939 (E.D. Wis. 2008); *see, e.g., Western Ill. Home Health Care v. Herman*, 150 F.3d 659, 662 (7th Cir. 1998); *Schering Corp. v. Heckler*, 779 F.2d 683, 686 n. 18 (D.C. Cir. 1985); *Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1378 (9th Cir. 1983); *Clinical Reference Laboratory, Inc. v. Sullivan*, 791 F. Supp. 1499, 1503-04 (D. Kan. 1992).**

22.    Admit that Exhibit 6's source of information does not "indicate a lack of trustworthiness" as that term is used in Federal Rule of Evidence 803(8).

RESPONSE:

**Denied. The article is not written by governmental employees. At least three of the authors are non-governmental healthcare providers. The presumption of trustworthiness, which is the basis for the public records exception to the hearsay rule, does not apply to documents created wholly or in part by non-governmental employees, and Rule 803(8) is not a means to admit otherwise inadmissible hearsay statements of non-governmental employees.** *See Toole v. McClintock***, 999 F.2d 1430, 1435 (11th Cir. 1993).**

**Additionally, the article is not (1) a final agency action or (2) a binding document upon the CDC.** *Genendo Pharmaceutical NV v. Thompson***, 308 F. Supp. 2d 881 (N.D. Ill. 2003) ("Statements of lower-level agency officials likewise do not rise to the level of final agency action-even when they are contained in warning letters or other official regulatory correspondence.");** *Schering-Plough Healthcare v. Schwarz Pharma***, 547 F. Supp. 2d 939 (E.D. Wis. 2008);** *see, e.g., Western Ill. Home Health Care v. Herman,* **150 F.3d 659, 662 (7th Cir. 1998);** *Schering Corp. v. Heckler,* **779 F.2d 683, 686 n. 18 (D.C. Cir. 1985);** *Biotics Research Corp. v. Heckler,* **710 F.2d 1375, 1378 (9th Cir. 1983);** *Clinical Reference Laboratory, Inc. v. Sullivan,* **791 F. Supp. 1499, 1503-04 (D. Kan. 1992).**

23.    Admit that, as to Exhibit 6, no other circumstance "indicate[s] a lack of trustworthiness" as that term is used in Federal Rule of Evidence 803(8).

RESPONSE:

**Denied. The article is not written by governmental employees. At least three of the authors are non-governmental healthcare providers. The presumption of trustworthiness, which is the basis for the public records exception to the hearsay rule, does not apply to documents created wholly or in part by non-governmental employees, and Rule 803(8) is not a means to admit otherwise inadmissible hearsay statements of non-governmental employees. See Toole v. McClintock, 999 F.2d 1430, 1435 (11th Cir. 1993).**

**Additionally, the article is not (1) a final agency action or (2) a binding document upon the CDC. Genendo Pharmaceutical NV v. Thompson, 308 F. Supp. 2d 881 (N.D. Ill. 2003) ("Statements of lower-level agency officials likewise do not rise to the level of final agency action-even when they are contained in warning letters or other official regulatory correspondence."); Schering-Plough Healthcare v. Schwarz Pharma, 547 F. Supp. 2d 939 (E.D. Wis. 2008); see, e.g., Western Ill. Home Health Care v. Herman, 150 F.3d 659, 662 (7th Cir. 1998); Schering Corp. v. Heckler, 779 F.2d 683, 686 n. 18 (D.C. Cir. 1985); Biotics Research Corp. v. Heckler, 710 F.2d 1375, 1378 (9th Cir. 1983); Clinical Reference Laboratory, Inc. v. Sullivan, 791 F. Supp. 1499, 1503-04 (D. Kan. 1992).**

24.    Admit that in 2010, the American Society of Health System Pharmacists published the "ASHP Guidelines on Outsourcing Sterile Compounding Services." A true and correct copy of that publication is attached as Exhibit 7.

RESPONSE:

**These Defendants admit that Exhibit 7 appears to be a true and correct copy of the guidelines referenced in Request to Admit #24 but deny that the guidelines apply to them. The guidelines were developed to assist health care organizations in deciding whether to outsource sterile pharmacy compounding performed within a hospital.**

25.     Admit that the American Society of Health System Pharmacists developed a "Contractor Assessment Tool" for healthcare organizations to use in conjunction with assessing compounding pharmacies. A true and correct copy of that assessment tool is attached as Exhibit 8.

RESPONSE:

**Denied. The "Outsourcing Sterile Products Preparation: Contractor Assessment Tool" was developed by the ASHP Foundation and PharMEDium Services, LLC for health-system pharmacy departments that choose to outsource the preparation of sterile parenteral medications.[5] Based on information known or readily attainable, and after making reasonable inquiry, these Defendants lack sufficient information to admit or deny that the "Contractor Assessment Tool" was developed for use "in conjunction with assessing compounding pharmacies." These Defendants admit that Exhibit 8 appears to be a true and correct copy of the document referenced in Request for Admission # 25 but deny that it applies to them.**

26. – 70.

RESPONSE:

**These Defendants object to Requests for Admissions #'s 26 through 70 as they exceed the maximum number of requests for admissions permissible under Local Rule 26.1(c), absent a Court order.**

---

[5] http://www.ashpfoundation.org/sterileproductstool

Respectfully submitted,

**GIDEON, COOPER & ESSARY, PLC**

**C.J. Gideon, Jr., #6034**
**Chris J. Tardio, #23924**
**Matthew H. Cline, #31076**
**John-Mark Zini, #31769**
Suite 1100
315 Deaderick Street
Nashville, TN 37238
(615) 254-0400

*Attorneys for Specialty Surgery*
*Center, Crossville, PLLC, and*
*Kenneth Lister, M.D.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of December, 2013, a true and accurate copy of the foregoing was served upon the following via the methods indicated below:

*Via Hand Delivery*
J. Gerard Stranch, IV
BRANSTETTER, STRANCH & JENNINGS, PLLC
227 Second Avenue North
Nashville, TN 37201

*Representative of the Plaintiffs' Steering Committee*

**Chris J. Tardio**

20

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | ) ) ) |
| | ) MDL No. 2419 |
| | ) Dkt. No 1:13-md-2419 (FDS) |
| THIS DOCUMENT RELATES TO: | ) ) |
| All Cases | ) ) |

## RESPONSE AND OBJECTIONS OF
## SPECIALTY SURGERY CENTER, CROSSVILLE, PLLC
## TO THE PLAINTIFFS' STEERING COMMITTEE'S REVISED SUBPOENA

On November 13, 2013, Magistrate Judge Boal ordered, "To the extent that written discovery requests overlap with the Rule 45 subpoenas, they would violate Rule 26's prohibition on duplicative discovery. Accordingly, the Court finds that any respondent who is a party need not answer to the same requests twice."[1] All of the requests below are covered by (1) initial disclosures and/or (2) the pending requests for production.

At the status conference on December 13, 2013, the Court took under advisement this Defendant's Motion to Stay Discovery Pending Entry of a Discovery Plan.[2] [3] The Court directed that certain matters related to discovery would be referred to Magistrate Judge Boal, including the establishment of a discovery plan. On December 23, 2013, the Court entered various orders, including referring to Judge Boal matters related to the entry of protective orders to be utilized during the discovery process.[4] The Court has not ruled on the Defendant's Motion to Stay Discovery Pending Entry of a Discovery Plan.

At the status conference, the Court suggested that the parties not file motions for protective order or motions to compel.

---

[1] Dkt. 572, page 12.
[2] Dkts. 594, 598.
[3] This is, in essence, a motion for protective order pursuant to FRCP 26(c).
[4] Dkt. 722.

Out of an abundance of caution, this Defendant serves the below objections to the most recent revised subpoena. In the interest of good faith participation in the discovery process, the Defendant is, while the Court is considering its motion for entry of a discovery plan and the implementation of a plan to efficiently manage discovery, gathering documents responsive to the outstanding discovery requests. The Defendant has done so in a good faith attempt to engage in the discovery process while still maintaining the position that any and all written discovery should wait until the discovery plan is implemented.[5]

As further specific response, the Defendant states:

1.    This request is covered by the Defendant's initial disclosures and/or pending requests for production of documents. The Defendant, consistent with Judge Boal's directive in her November 13, 2013, order, will provide these responses with initial disclosures and/or responses to requests for production. Consistent with the pending motion to stay discovery pending entry of a discovery order, the Defendant objects to responding to the discovery until a discovery plan is put in place and/or initial disclosures are served. While awaiting entry of a discovery plan, the Defendant is gathering responsive documents for production.

2.    Magistrate Judge Boal held that health care providers do not have to provide information in response to this item as it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

3.    The Defendant does not possess any responsive documents.

4.    The Defendant does not possess any responsive documents.

5.    This request was omitted from the revised subpoena exhibit.

6.    This request was omitted from the revised subpoena exhibit.

7.    This request is covered by the Defendant's initial disclosures and/or pending requests for production of documents. The Defendant, consistent with Judge Boal's directive in her November 13, 2013, order, will provide these responses with initial disclosures and/or responses to requests for production. Consistent with the pending motion to stay discovery pending entry of a discovery order, the Defendant objects to responding to the discovery until a discovery plan is put in place and/or initial disclosures are served. While awaiting entry of a discovery plan, the Defendant is gathering responsive documents for production.

---

[5] *See* Dkts. 594, 598.

8.    This request is covered by the Defendant's initial disclosures and/or pending requests for production of documents. The Defendant, consistent with Judge Boal's directive in her November 13, 2013, order, will provide these responses with initial disclosures and/or responses to requests for production. Consistent with the pending motion to stay discovery pending entry of a discovery order, the Defendant objects to responding to the discovery until a discovery plan is put in place and/or initial disclosures are served. While awaiting entry of a discovery plan, the Defendant is gathering responsive documents for production.

9.    This request is covered by the Defendant's initial disclosures and/or pending requests for production of documents. The Defendant, consistent with Judge Boal's directive in her November 13, 2013, order, will provide these responses with initial disclosures and/or responses to requests for production. Consistent with the pending motion to stay discovery pending entry of a discovery order, the Defendant objects to responding to the discovery until a discovery plan is put in place and/or initial disclosures are served. While awaiting entry of a discovery plan, the Defendant is gathering responsive documents for production.

10.   This request is covered by the Defendant's initial disclosures and/or pending requests for production of documents. The Defendant, consistent with Judge Boal's directive in her November 13, 2013, order, will provide these responses with initial disclosures and/or responses to requests for production. Consistent with the pending motion to stay discovery pending entry of a discovery order, the Defendant objects to responding to the discovery until a discovery plan is put in place and/or initial disclosures are served. While awaiting entry of a discovery plan, the Defendant is gathering responsive documents for production.

11.   This request was omitted from the revised subpoena exhibit.

12.   This request is covered by the Defendant's initial disclosures and/or pending requests for production of documents. The Defendant, consistent with Judge Boal's directive in her November 13, 2013, order, will provide these responses with initial disclosures and/or responses to requests for production. Consistent with the pending motion to stay discovery pending entry of a discovery order, the Defendant objects to responding to the discovery until a discovery plan is put in place and/or initial disclosures are served. While awaiting entry of a discovery plan, the Defendant is gathering responsive documents for production.

13.   The Defendant does not possess any responsive documents.

14.    This request is covered by the Defendant's initial disclosures and/or pending requests for production of documents. The Defendant, consistent with Judge Boal's directive in her November 13, 2013, order, will provide these responses with initial disclosures and/or responses to requests for production. Consistent with the pending motion to stay discovery pending entry of a discovery order, the Defendant objects to responding to the discovery until a discovery plan is put in place and/or initial disclosures are served. While awaiting entry of a discovery plan, the Defendant is gathering responsive documents for production.

15.    This request is covered by the Defendant's initial disclosures and/or pending requests for production of documents. The Defendant, consistent with Judge Boal's directive in her November 13, 2013, order, will provide these responses with initial disclosures and/or responses to requests for production. Consistent with the pending motion to stay discovery pending entry of a discovery order, the Defendant objects to responding to the discovery until a discovery plan is put in place and/or initial disclosures are served. While awaiting entry of a discovery plan, the Defendant is gathering responsive documents for production.

16.    This request is covered by the Defendant's initial disclosures and/or pending requests for production of documents. The Defendant, consistent with Judge Boal's directive in her November 13, 2013, order, will provide these responses with initial disclosures and/or responses to requests for production. Consistent with the pending motion to stay discovery pending entry of a discovery order, the Defendant objects to responding to the discovery until a discovery plan is put in place and/or initial disclosures are served. While awaiting entry of a discovery plan, the Defendant is gathering responsive documents for production.

17.    This request is covered by the Defendant's initial disclosures and/or pending requests for production of documents. The Defendant, consistent with Judge Boal's directive in her November 13, 2013, order, will provide these responses with initial disclosures and/or responses to requests for production. Consistent with the pending motion to stay discovery pending entry of a discovery order, the Defendant objects to responding to the discovery until a discovery plan is put in place and/or initial disclosures are served. While awaiting entry of a discovery plan, the Defendant is gathering responsive documents for production.

Respectfully submitted,

**GIDEON, COOPER & ESSARY, PLC**

CJT with permission MHC

**C.J. Gideon, Jr., #6034**
**Chris J. Tardio, #23924**
**Matthew H. Cline, #31076**
**John-Mark Zini, #31769**
Suite 1100
315 Deaderick Street
Nashville, TN 37238
(615) 254-0400

*Attorneys for SSC*

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of December, 2013, a true and accurate copy of the foregoing was served upon the following via the methods indicated below:

***Via Hand Delivery***
J. Gerard Stranch, IV
BRANSTETTER, STRANCH & JENNINGS, PLLC
227 Second Avenue North
Nashville, TN 37201

*Representative of the Plaintiffs' Steering Committee*

CJT with permission MHC

**Chris J. Tardio**

5

Collective Exhibit 1                                                                                          Ex. 1-H

# GIDEON, COOPER & ESSARY
### A PROFESSIONAL LIMITED LIABILITY COMPANY
315 DEADERICK STREET, SUITE 1100

NASHVILLE, TENNESSEE 37238

(615) 254-0400

FAX (615) 254-0459

www.gideoncooper.com

C. J. GIDEON, JR.[1]
DIXIE W. COOPER[2]
BRYAN ESSARY[3]
CHRIS J. TARDIO[4]
CHRISTOPHER A. VRETTOS
ALAN S. BEAN
JAMES C. SPERRING
JOSHUA R. ADKINS
KIM J. KINSLER[3]
RANDA VON KANEL
J. BLAKE CARTER[1]
MARK A. HAMMERVOLD[1]
MATT H. CLINE
JOHN-MARK ZINI[6]

[1]LICENSED IN TN & FL
[2]LICENSED IN TN, AL & TX
[3]LICENSED IN TN & GA
[4]LICENSED IN TN & KY
[5]LICENSED IN TN & WI
[6]LICENSED IN TN & KS

CHRIS TARDIO
chris@gideoncooper.com

December 30, 2013

**_Via hand delivery_**
J. Gerard Stranch, IV
BRANSTETTER, STRANCH & JENNINGS
227 Second Avenue North
Nashville, TN 37201

Dear Gerard:

        As you have probably noticed, while Judge Saylor has issued various orders out of the December 13, 2013, status conference, he has yet to rule on our Motion to Stay Discovery Pending Entry of a Discovery Plan and Motion for Entry of a Discovery Plan [Dkt. 598].

        Our understanding from the status conference was that Judge Saylor would refer those issues to Judge Boal, and that no further action was needed on these two motions. We reached out to Judge Saylor's office on Friday to ask if rulings on these motions and/or referrals to Judge Boal were coming. His clerk notified us that Judge Saylor was still "working through the discovery issues." He instructed us to check back on January 3 if there was no order issued.

        I do not think we are going to be able to resolve our disagreements on the way written discovery should be conducted without ruling(s) on these two motions. However, I write one last time in an attempt to reach an agreement on how to proceed while these motions remain pending.

Mr. Stranch
December 30, 2013
Page 2

First, I enclose:

1.  STOPNC's response/objection to the PSC's revised subpoena
2.  Howell Allen's response/objection to the PSC's revised subpoena
3.  SSC's response/objection to the PSC's revised subpoena
4.  CD with STOPNC and Howell Allen state court document production[1]
5.  STOPNC, *et al.* responses to first 25 RFAs pursuant to Local Rule 26.1(c)
6.  SSC responses to first 25 RFAs pursuant to Local Rule 26.1(c)
7.  Objection to further responding to written discovery to STOPNC, *et al.* while the Motion to Stay Discovery is pending and while the Motion for Entry of a Discovery Plan is pending
8.  Objection to further responding to written discovery to SSC/Lister while the Motion to Stay Discovery is pending and while the Motion for Entry of a Discovery Plan is pending.

The CD should resolve the petty dispute about whether the documents you have from the state court litigation were served in "this" litigation. It should also, frankly, resolve virtually all of the outstanding document requests to STOPNC, *et al.*

Second, we are still willing to agree to the written discovery protocol we proposed with Dkt. 598, which I thought was very reasonable. However, at this point, if we plan to travel under the limits in the FRCP and the local rules, as the PSC has proposed, we are limited in all forms of discovery and cannot serve any discovery until initial disclosures are made. I propose, again, that we mutually exchange initial disclosures (a "common" PSC set for STOPNC cases and SSC cases, and "common" sets from STOPNC, *et al.* and SSC/Lister) in short order. We would then proceed to answer the "common" discovery that is outstanding to us, and we will serve the "common" set of written discovery on the PSC that we have been withholding pending entry of a plan setting reasonable limits on written discovery. I also think our limits of 200 RFAs/40 ROGs/60 RFPs are reasonable.

Otherwise, I suppose we can wait for Judge Boal to work through these issues and enter a discovery protocol, which will take time, and we will probably end up with something that looks like what we proposed with Dkt. 598. Under our proposal with Dkt. 598, you would already have our initial disclosures, and complete responses to the written discovery (to the extent not covered by the initial disclosures) would be forthcoming after the holidays.

Please take another look at our proposed written discovery plan with Dkt. 598. Without it, we would both launch into discovery with no limits or protocols except the FRCP and local rules, which do not contemplate this complicated and unique litigation. Let's see if we can put a reasonable agreed protocol in place while the motion to stay written discovery and motion for discovery plan are still pending.

---

[1] We have omitted the patient-specific documents from the state court cases.

Mr. Stranch
December 30, 2013
Page 3

I look forward to hearing from you.

Thank you.

Very Truly Yours,

*CJT*   with permission MHC

Chris J. Tardio

CJT/lao
Enc.
cc:     Marcy Greer (with enclosures)