UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION ) ) ) ) THIS DOCUMENT RELATES TO: ) ) All Actions ) ) | MDL No. 2419 Dkt. No 1:13-md-2419 (RWZ) |

**SAINT THOMAS ENTITIES' PARTIAL OPPOSITION TO PLAINTIFF STEERING COMMITTEE'S MOTION FOR ENTRY OF ESI AND DEPOSITION PROTOCOLS**

Saint Thomas West Hospital, formerly known as St. Thomas Hospital, Saint Thomas Network, and Saint Thomas Health (collectively referred to as the "Saint Thomas Entities") file this Partial Opposition to the *Plaintiffs' Steering Committee's Motion for Entry of Deposition and ESI Protocols* (Docket #876) ("Motion"),[1] and in support show as follows:

**INTRODUCTION**

Several months ago, at a time when all proceedings against NECC and its affiliated parties ("Affiliated Defendants") were stayed and most of the "Unaffiliated Defendants"[2] had yet to be brought into the MDL, the PSC requested the Court to enter case management orders permitting the PSC to commence discovery "immediately" against the Unaffiliated Defendants without any discovery plan or reciprocal provisions for the Plaintiffs.[3] To the knowledge of

---

[1] Since the time the PSC filed its motion, the parties were able to negotiate an ESI protocol that is contemporaneously being filed with the Court. As a result, this opposition is limited to the PSC's motion to the extent it requests entry of the PSC's proposed deposition protocol.

[2] The "Unaffiliated Defendants" are a nebulous group of hospitals, clinics, and other healthcare providers, many of whom have not yet appeared in the MDL, although a few have made limited appearances for the purpose of objecting to third-party subpoenas, and the Court has made provision for these limited appearances.

[3] *See, e.g.*, MDL Order No. 6 (Docket #209) at 13-14, 18; MDL Order No. 7 (Docket #438) ("MDL Order No. 7") at 3.

1

these defendants, there has *never* been any conference for a pretrial schedule or "plan of discovery" as required by Federal Rules of Civil Procedure 16 and 26 and Local Rules 16.1 & 26.1, involving any of the Unaffiliated Defendants.  Instead, the PSC has repeatedly demanded full discovery from the Unaffiliated Defendants, while at the same time, resisting all but very limited discovery from the Plaintiffs, with a goal of determining bellwether cases for initial trials on an expedited basis.[4]

After the Saint Thomas Entities were brought into the MDL, they immediately sought reconsideration of MDL Order No. 7, demonstrating, among other things, that it was premature and that a bilateral plan for case management and discovery should be put in place before bellwether trials should be considered.[5]  They have repeatedly requested that appropriate case management orders and a discovery plan be put in place before further formal discovery is conducted.  At the January 10, 2014, status conference in this matter, Judge Saylor directed the parties to meet and confer about a "discovery plan."[6]  The Court indicated that the discovery plan should include an overview of the discovery elements in the case, such as sequencing written discovery and depositions, and an "order that directs and sets deadlines and so on . . . ."[7]  Since that time, the PSC has taken the position that its Second Bellwether Proposal and the ESI and deposition protocols it seeks to have the Court enter are all that are needed to constitute a "discovery plan."  The Saint Thomas Entities strongly disagree that anything submitted by the PSC comports with Federal Rules of Civil Procedure 16(b) and 26(f) and Local Rules 16.1, 16.3,

---

[4] *See, e.g.*, *Memorandum in Support of Plaintiffs' Steering Committee's Motion and Memo in Support of Motion for Entry of Bellwether Trial and Pre-Trial Scheduling Order* (Docket ##837 & 838) ("PSC's Second Bellwether Proposal").

[5] *Saint Thomas Entities' Motion to Reconsider the Court's Entry of MDL Order No. 7* (Docket #457) ("Motion to Reconsider").

[6] *See* Excerpts from transcript from Jan. 10, 2014, hearing ("Tr.") at 39-41, 47-50 (Exhibit E).

[7] *See id.* 48-50.

26.1, and 26, and have submitted the *Saint Thomas Entities' Proposed Discovery Plan* (Docket #863-3) to accomplish this objective, anticipating that such a plan will include protocols for depositions and electronically stored information ("ESI").

While the matter of a discovery plan is still being debated, the parties have had a number of conferences on proposed ESI and deposition protocols and have made a great deal of progress in arriving at joint proposals for each. As noted above, they have reached agreement as to the ESI protocol, but there are a few issues left to be resolved as to the deposition protocol, as outlined below. The Saint Thomas Entities request that the Court adopt their proposal, "clean" and redlined copies of which are attached as <u>Exhibit A</u> and <u>Exhibit B</u>, respectively, and order that this proposal be incorporated into a discovery plan to guide and govern the parties with respect to discovery in this matter.

## ARGUMENT AND AUTHORITIES

The PSC has provided no briefing or argument to support its request to enter its proposal for a deposition protocol, which it simply attaches to the Motion. *See [Proposed MDL Order No. ___ (Joint Deposition Protocol)* (Docket #876-1) ("PSC Proposed Deposition Protocol"). The PSC's Motion refers solely to the Declaration of Benjamin A. Gastel (Docket #811) ("Gastel Declaration"), which chronicles some of the history of the parties' communications around these proposals. The only place where any suggestion of why these protocols should be adopted is in the *Plaintiff Steering Committee's Memorandum of Law in Support of Proposals for Plaintiffs' Profile Form, Discovery Protocols, and Releases* (Docket #810) ("PSC's Memo"), which fails to demonstrate any good reason why the PSC's unilateral proposal is appropriate.

Since the time the PSC filed its Motion, the parties have held a number of productive meetings and conferences in an attempt to narrow the gaps between their proposals, and they have made substantial progress. Thus, the Saint Thomas Entities' proposal, attached as <u>Exhibit</u>

A, reflects numerous agreements between the parties and sets forth additional terms for a deposition protocol for this case. As noted above, the Saint Thomas Entities request that this proposal be entered with an order that it will be entered as part of a larger discovery plan governing this litigation.

The remaining areas of disagreement between the PSC and the Saint Thomas Entities are set forth below.

I.      **The Limits and Rules of Engagement for Depositions Should Be Set Out in Advance**

The sum total of the PSC's argument in support of its Deposition Protocol is that:

> **Deposition Protocol**: The PSC first circulated this document to defense counsel on November 27, 2013. The PSC received only two meaningful responses to this document, the most substantive of which was received on January 16, 2013. The PSC incorporated some of the requested [changes] in the attached deposition protocol.

PSC Memo at 10. The PSC never explains why it rejected any of the other proposals nor why its chosen provisions were superior to other alternatives. In meetings and conferences, the PSC has maintained that the provisions requested by the Saint Thomas Entities go beyond what the Federal Rules of Civil Procedure require. That is of course true. As the Federal Judicial Conference has counseled:

> Discovery control in complex litigation may take a variety of forms, including time limits, restrictions on scope and quantity, and sequencing. . . .
>
> ***Presumptive limits*** should be set early in the litigation, before discovery has begun. Information about the litigation will be limited at that time, so limits may need to be revised in the light of later developments. But they ***should be imposed on the basis of the best information available at the time, after full consultation with counsel, and with the understanding that they will remain binding until further order. In determining appropriate limits, the court will need to balance efficiency and economy against the parties' need to develop an adequate record for summary judgment or trial***. This task further underlines the importance of clarifying and understanding the issues in the case before imposing limits.

FEDERAL JUDICIAL CENTER MANUAL FOR COMPLEX LITIGATION (FOURTH) § 11.422 at 53-54 (emphasis added) (citing William W Schwarzer & Alan Hirsch, *Summary Judgment After Eastman Kodak*, 45 HASTINGS L.J. 1 (1993)) (attached as <u>Exhibit C</u>).  Those limitations include: (i) time limits and schedules; (ii) limits on quantity; (iii) phased, sequenced, or targeted discovery; (iv) subject matter priorities; (v) sequencing by parties; and (vi) forms of discovery. *Id.* at 53-55.

In particular, with respect to depositions, limitations on scheduling, attendance, and the number of questioners, provisions for advance notice, and rules of conduct are appropriate to set forth in a deposition protocol, MANUAL FOR COMPLEX LITIGATION at § 11.45, as the Saint Thomas Entities have proposed.  *See* <u>Exhibit B</u> (redlined STE Proposed Deposition Protocol showing proposed additions and changes to PSC Proposed Deposition Protocol).  Many of these same provisions are contained in the Federal Judicial Center's recommended "Deposition Guidelines."  *See* MANUAL FOR COMPLEX LITIGATION at § 40.29 at 756-761 (attached as <u>Exhibit D</u>).  These recommendations have been made after careful vetting by a diverse group of federal judges, practitioners, scholars, and others whose collective experience and research led them to conclude that such guidelines were not only appropriate but advisable on complex MDL proceedings.  *See id.* at xvii ("Preface") and xix ("Acknowledgments").  Although not every provision of every proposal is necessarily appropriate in every MDL, *see id.* at 1-3, the items below are clearly important considerations that the PSC has simply rejected out of hand.  The PSC's Proposed Deposition Protocol is acceptable to the Saint Thomas Entities as far as it goes, but it is incomplete.  The following provisions should be added for the reasons set forth below.

## II. The PSC's Proposed Deposition Protocol Lacks Critical Elements

### A. The Protocol Should Not Be Presumed to Cover Later Discovery Phases, Including Experts

The parties did not negotiate a protocol for the deposition of experts and later discovery phases, and so the Defendants proposed the following language to clarify the scope of this proposal:

> The Court has not yet entered an overall discovery plan to govern discovery in this case through case-specific and expert discovery. Should this deposition plan need to be amended or additional provisions included to address issues with case-specific discovery and expert discovery, the parties shall meet and confer to amend or add to this protocol. If the parties cannot agree, they may submit any remaining disputes to the Court

This language is appropriate to confirm the extent of the parties' agreement and avoid a later characterization of this order as presumptively applicable to discovery proceedings that the Defendants never intended it to govern.

In addition, the deposition protocol adopted by the Court—if adopted in advance of any discovery plan, should make clear that:

> For purposes of this deposition protocol, depositions of "Common Witnesses" and depositions on "Common Issues" shall refer to depositions of fact witnesses with knowledge of issues that affect all or a large subset of the cases in the MDL, as opposed to depositions of witnesses with knowledge on issues related to single cases or a small subset of cases.

The PSC's own proposal uses these terms, but the PSC refuses to define them. Defining common discovery cannot await the entry of a yet-to-be determined discovery plan because it impacts the timing and sequence and particularly, some of the necessary limitations of depositions in this matter.

### B. Designation of Lead Deposition Counsel

The PSC is hesitant to create a procedure to streamline the deposition scheduling and logistics by designating a Lead Deposition Counsel to coordinate. The Defendants should not

have to make multiple telephone calls to various members of the PSC in order to resolve logistical and other issues related to fact witness depositions that will inevitably arise—often on a time-sensitive basis. Further, the Saint Thomas Entities have a concern, based on past experience, that the PSC will not authorize any agreements between counsel without a full vetting by the entire PSC, which further and unnecessarily delays the process. The Saint Thomas Entities propose the following provision to address this concern:

> The MDL Plaintiffs shall designate a Lead Deposition Counsel to serve as Lead Deposition Counsel for the MDL Plaintiffs for all depositions. For each deposition or set of related depositions, to the extent possible, the Defendants will designate Lead Deposition Counsel to assist in coordinating the deposition(s). Lead Deposition Counsel for the MDL Plaintiffs, Lead Deposition Counsel for the Defendants, and counsel for the deponent, or their respective designees, shall coordinate, to the extent possible, all plaintiff depositions, third-party depositions, and depositions of employees, representatives, and former employees of the defendants in this MDL action, and matters related to the conduct of these depositions. The name and contact information for Lead Deposition Counsel for the Plaintiffs, Lead Deposition Counsel for the Defendants, and counsel for the deponent shall be promptly communicated to the other parties as soon as practicable, prior to the deposition.

### C.     The Deposition Notices Should Provide Some Identifying Information

The Saint Thomas Entities originally proposed that the parties provide a brief description of the deponent in connection with noticing a deposition so that the non-noticing parties will be able to determine who the witness is and be in a position to make decisions about whether and in what capacity to attend. For example, if the PSC notices the deposition of "John Smith," the parties will likely not be in a position to know which of the thousands of John Smiths the PSC wants to depose or what his connection is to the litigation. The PSC has steadfastly refused to provide any such information, but it is necessary when considering the national scope and breadth and sheer numbers of witnesses expected in this litigation.

### D. Guidelines for Scheduling Are Needed

The PSC has also rejected out of hand the Saint Thomas Entities' proposal for rules of engagement regarding the scheduling of depositions, specifically, the following:

> 1. The parties and the Court desire to minimize the expense and inconvenience of this litigation. Accordingly, all depositions of fact and expert witnesses taken in this MDL will be treated as if cross-noticed and taken in each of the individual cases in this MDL and all actions prosecuted by the undersigned counsel. In no event shall witnesses be deposed on multiple occasions on the same subjects in connection with these MDL proceedings without agreement of the parties or leave of Court for good cause shown.
>
> 2. Plaintiffs' and Defendants' Lead Counsel shall attempt to establish by mutual agreement a schedule for depositions in this MDL that reflects a sequencing consistent with (a) the availability of documents from among those produced by the parties and third parties; (b) the objective of not subjecting any party to repeated depositions; (c) the need to preserve relevant testimony; and (d) the schedule established by this Court.
>
> 3. If a party decides to take a deposition before all of the documents have been produced, they do so at their own risk and will not be allowed to re-depose the witness simply because additional documents were produced after the deposition absent agreement of the parties or permission from the Court for good cause shown. Production of additional documents alone shall not constitute good cause.
>
> 4. For Common Depositions, counsel intending to take the deposition of a party in the MDL, including employees, agents, former employees, and former agents, shall request the deposition at least forty-five (45) days in advance of the anticipated deposition date, absent agreement by the parties otherwise, time constraints due to orders of the Court, or by leave of Court. For depositions of nonparties, counsel issuing the deposition subpoena shall notify the other parties of the deposition at least thirty (30) days in advance of the anticipated deposition date, absent agreement by the parties otherwise, time constraints due to orders of the Court, or by leave of Court.

These provisions are standard in MDL litigation and allow the parties to have sufficient notice and information to plan their discovery schedules. *See, e.g.*, MANUAL FOR COMPLEX LITIGATION § 40.29, ¶ 3.

The provision limiting the parties to one deposition of each witness on the same subjects absent "agreement of the parties or leave of Court for good cause shown" is critical to this MDL

8

proceeding. The good cause shown provision affords the Court and the parties flexibility to take a subsequent deposition if the circumstances make that necessary. But it also creates a necessary presumption that the parties will complete the deposition when the witness is made available and not subject any witness to repeat performances of the same questions and material. *See* MANUAL FOR COMPLEX LITIGATION § 40.29 ¶ 3 ("As a general rule, no witness should be deposed on the same subject more than once in this litigation. . . . Second depositions on new subject matter shall be permitted only upon consent of the parties or an order of the Court issued for good cause shown."). The PSC has agreed to a "one deposition" rule for national defendants, but not for the Unaffiliated Defendants, although it has never articulated any legitimate reason for such uneven treatment.

There are also provisions for sequencing of discovery (paragraphs 2 & 3) that have not been contained in any of the PSC's discovery proposals and are consistent with establishing a traditional order to these proceedings. The sequencing is important, as it does not make sense to begin deposing witnesses before the completion of document production. And to the extent that one or more parties seeks to do so, it should not be permitted to re-depose the witness after document production is complete. Although Judge Saylor indicated that he expected written discovery to precede depositions, *see* Transcript ("Tr.") of Jan. 10, 2014, Proceedings (Exhibit E) at 49-50, the PSC has repeatedly taken the position that it can start deposing defense witnesses whenever it deems necessary. Its full-court press to have the Court adopt a deposition protocol—before a discovery plan has been entered or written discovery has been significantly underway—further underscores the need for these sequencing ground rules.

Finally, the advance notice provision is vital to the parties' ability to plan for and present party and company witnesses:

> 4. For Common Depositions, counsel intending to take the deposition of a party in the MDL, including employees, agents, former employees, and former agents, shall request the deposition at least forty-five (45) days in advance of the anticipated deposition date, absent agreement by the parties otherwise, time constraints due to orders of the Court, or by leave of Court. For depositions of nonparties, counsel issuing the deposition subpoena shall notify the other parties of the deposition at least thirty (30) days in advance of the anticipated deposition date, absent agreement by the parties otherwise, time constraints due to orders of the Court, or by leave of Court.

For the Saint Thomas Entities, such preparation simply cannot be done on an expedited basis. The coordination of schedules for deposition preparation and the actual deposition takes time and involves multiple parties. Nor should these Defendants be required to do so. The advance-notice provision is limited to parties, which term includes "employees, agents, former employees, and former agents," not third parties, so there is ample reason to order this requirement.

### E. Meeting and Conference for Objections to 30(b)(6) Notices

The Saint Thomas Entities also proposed a meet and conference for resolving any objections prior to any Rule 30(b)(6) deposition:

> The parties shall meet and confer regarding the objections. If they are unable to agree, the parties may submit the dispute to the Court for a decision prior to the deposition.

The PSC's response was that it would create unnecessary conferences between the parties and that any motions would require meetings and conferences, so the requirement was already handled by local rule. The proposal, however, is designed to *avoid* resort to motion practice by setting up a dispute-resolution protocol in advance. Contrary to the PSC's suggestion, it does not foster unnecessary meetings and conferences because, to the extent a motion need be filed, the pre-deposition conference will in most cases suffice.

F. **The PSC Should Coordinate Questioning**

The Saint Thomas Entities also proposed that Lead Counsel for the PSC and affected plaintiffs' attorneys confer and designate a total of two questioners for each deposition. There is also a provision for allowing the designation of additional counsel if the "MDL Plaintiffs believe additional or different attorneys are needed to question on specific issues. . . .," with a process for allowing the deponent's counsel to object and have the matter resolved before the deposition. The goal of this provision is to avoid repetitive questioning. The PSC again rejected this proposal without providing adequate measures to avoid repetitious and inefficient questioning. It is noteworthy that the Federal Judicial Center's proposal is for only one questioner: "Each side should ordinarily designate one attorney to conduct the principal examination of the deponent, and examination by other attorneys should be limited to matters not previously covered." MANUAL ON COMPLEX LITIGATION § 40.29 at 757. A coordinated questioner provision cannot be entirely bilateral due to the sheer numbers and divergent interests of the many Defendants. But coordination is a very important goal, and so these parties propose the following language:

> Counsel for the unaffiliated defendants shall endeavor to designate two attorneys to represent the unaffiliated defendants during each deposition and participate in the deposition on behalf of all unaffiliated defendants. However, given the disparate interests of all unaffiliated defendants, this may not be possible.

Finally, the PSC has provided no reasonable explanation for its rejection of language reciting the objective of any such limitations:

> The goals behind this section of the protocol are to (1) minimize the number of questioning/objecting attorneys while allowing all parties in the MDL to have their interests protected and (2) minimize attorneys, particularly those with the same or similar interests, posing the same or substantially the same questions to witnesses and objections during depositions.

### G. Most Objections Should Be Expressly Reserved to Make the Depositions More Efficient

The Saint Thomas Entities propose language to eliminate the need for deposition objections except for form and foundation of the question:

> All deposition objections are reserved, except as to the form and foundation of the question. Counsel shall otherwise comply with FED. R. CIV. P. 30(c)(2) concerning objections at depositions.

This provision simply streamlines the process and avoids potentially wasteful time preserving objections on the record to afford more opportunity to complete substantive questioning—which is a significant concern, considering the number of parties and potential witnesses.

### H. There Should Be Court-Ordered Limitations on the Duration and Number of Depositions

The Saint Thomas Entities also proposed durational and timing limits:

> 1. Absent permission from the Court or agreement of the parties, depositions shall be limited to one (1) day of seven (7) hours pursuant to FRCP 30(d)(1). Depositions should not typically begin before 9:00 a.m. and should typically conclude by 5:30 p.m. in the local time zone.
>
> 2. The PSC and each Defendant shall meet and confer to discuss a limit to the number of "common" depositions from that Defendant's employees, agents, former employees, and/or former agents. If the parties cannot agree on a limit, the Defendant may move for a protective order.
>
> 3. After the "common" deposition phase, parties shall be limited to ten depositions per party during discovery in the individual cases in the bellwether discovery pool.

The PSC's response that these matters are covered by the Federal Rules of Civil Procedure is no answer. As noted above, these are precisely the kinds of limitations that the Federal Judicial Center's Manual for Complex Litigation recommends be put in place in advance of the deposition phase. *See* MANUAL FOR COMPLEX LITIGATION (FOURTH) 11.422 at 53-54.

### I. Each Deponent Should Have Only One Deposition

As noted above, the Saint Thomas Entities request that their witnesses be subject to only one deposition for purposes of the MDL:

> 5. The involved parties and counsel will make every effort to depose persons once. A second deposition either before or after the selection of bellwether discovery cases will require the agreement of the parties or, in the absence of an agreement, leave of the Court for good cause shown.

There is no justification for subjecting witnesses to multiple depositions on the same topics, and the "good cause shown/agreement of the parties" provides all parties with ample protection to seek a supplemental deposition if circumstances change. *See* MANUAL FOR COMPLEX LITIGATION § 40.29 ¶ 3 ("As a general rule, no witness should be deposed on the same subject more than once in this litigation. . . . Second depositions on new subject matter shall be permitted only upon consent of the parties or an order of the Court issued for good cause shown."). But the ordinary presumption should be that they are deposed only once in connection with this MDL proceeding.

### J. The Provision for Correcting and Signing Deposition Transcripts Is Imbalanced

Finally, the "correction" provision of the PSC's Proposed Protocol is skewed in that it creates a presumption that a deposition transcript is accurate if the deponent does not make corrections within 30 days of receipt, but does not provide for any possible relief from that presumption. It is therefore necessary to add language making clear that either an agreement of the parties or leave of Court to correct the transcript "for good cause shown" will allow a deponent or party to obtain relief after the 30-day window.

### CONCLUSION AND PRAYER

For these reasons, Saint Thomas West Hospital, formerly known as St. Thomas Hospital, Saint Thomas Network, and Saint Thomas Health respectfully request that the Court: (i) deny the

PSC's Motion; (ii) order the parties to continue to meet and confer regarding a proposed discovery plan and return to the Court with a joint proposal, if possible, or alternatives; (iii) enter the proposed protocol attached to this memorandum as Exhibit A; and (iv) grant such other and further relief to which the Saint Thomas Entities are entitled.

Respectfully submitted,

SAINT THOMAS WEST HOSPITAL, FORMERLY KNOWN AS ST. THOMAS HOSPITAL, SAINT THOMAS NETWORK, AND SAINT THOMAS HEALTH

By its attorneys,
*/s/ Sarah P. Kelly*
Sarah P. Kelly (BBO #664267)
skelly@nutter.com
NUTTER McCLENNEN & FISH LLP
Seaport West
155 Seaport Boulevard
Boston, Massachusetts 02210
(617) 439-2000

Dated: March 7, 2014

OF COUNSEL:

Yvonne K. Puig*
Texas State Bar No. 16385400
Eric J. Hoffman*
Texas State Bar No. 24074427

FULBRIGHT & JAWORSKI L.L.P.
98 San Jacinto Blvd. Suite 1100
Austin, Texas 78701
(512) 536-2450
(512) 536-4598 (FAX)

Marcy Hogan Greer*
Texas Bar No. 08417650
ALEXANDER DUBOSE JEFFERSON
& TOWNSEND L.L.P.
515 Congress Ave., Suite 2350
Austin, Texas 78701
(512) 482-9300
(512) 482-9303 (FAX)

*Appearing *Pro Hac Vice*

## CERTIFICATE OF SERVICE

This certifies that a true and accurate copy of the foregoing was served on all parties of record by virtue of the Court's electronic filing system this 7th day of March, 2014.

           ___/s/ Sarah Kelly_____
            SARAH KELLY

2397864.1