# Manual for Complex Litigation, Fourth

Federal Judicial Center 2004

Cite as

Manual for Complex Litigation,

Fourth, § _____

or

MCL 4th § _____

# Manual for Complex Litigation, Fourth

*Board of Editors*

Judge Stanley Marcus (Ct. of App., 11th Cir.), *chair*

Judge John G. Koeltl (S.D.N.Y.)       Judge Barefoot Sanders (N.D. Tex.)

Judge J. Frederick Motz (D. Md.)       Sheila Birnbaum, Esq. (N.Y., N.Y.)

Judge Lee H. Rosenthal (S.D. Tex.)       Frank A. Ray, Esq. (Columbus, Ohio)

Judge Fern M. Smith (N.D. Cal.),
*director, Federal Judicial Center 1999–2003*

Federal Judicial Center 2004

The *Manual for Complex Litigation, Fourth* has been produced under the auspices of the Federal Judicial Center. The analyses and recommendations are those of the *Manual*'s Board of Editors.

Blank page inserted for correct pagination
when printing double-sided copies.

# Contents

Preface  xvii

Acknowledgments  xix

Introduction  1

Part I:  Overview  5
  10. General Principles  7
     .1 Judicial Supervision  8
        .11 Early Identification and Control  9
        .12 Assignment Plan  9
           .121 Recusal/Disqualification  10
           .122 Other Judges  11
           .123 Related Litigation  11
        .13 Effective Management  12
        .14 Supervisory Referrals to Magistrate Judges and Special Masters  13
        .15 Sanctions  15
           .151 General Principles  15
           .152 Sources of Authority  16
           .153 Considerations in Imposing  17
           .154 Types  18
           .155 Procedure  21
     .2 Role of Counsel  22
        .21 Responsibilities in Complex Litigation 22
        .22 Coordination in Multiparty Litigation—Lead/Liaison Counsel and Committees  24
           .221 Organizational Structures  24
           .222 Powers and Responsibilities  26
           .223 Compensation  26
           .224 Court's Responsibilities  26
           .225 Related Litigation  28
        .23 Withdrawal and Disqualification  28

  11. Pretrial Procedures  31
     .1 Preliminary Matters  32
        .11 Scheduling the Initial Conference  32
        .12 Interim Measures  33
        .13 Prediscovery Disclosure  34
     .2 Conferences  36
        .21 Initial Conference and Orders  36
           .211 Case-Management Plan  36
           .212 Scheduling Order  39
           .213 Class Actions  40
           .214 Settlement  40
        .22 Subsequent Conferences  40
        .23 Attendance  41
     .3 Management of Issues  42
        .31 Relationship to Discovery  42
        .32 Pleading and Motion Practice  43
        .33 Identifying, Defining, and Resolving Issues  44
        .34 Summary Judgment  46

*Manual for Complex Litigation, Fourth*

.4 Discovery  49
   .41 Relationship to Issues  50
   .42 Planning and Control  51
      .421 Discovery Plan/Scheduling Conference  51
      .422 Limitations  53
      .423 Other Practices to Save Time and Expense  56
      .424 Resolution of Discovery Disputes  59
   .43 Privilege Claims and Protective Orders  62
      .431 Claims of Privilege/Full Protection  63
      .432 Limited Disclosure/Protective Orders  64
      .433 Allocation of Costs  69
   .44 Documents  71
      .441 Identification System  71
      .442 Preservation  72
      .443 Rule 34 Requests/Procedures for Responding  74
      .444 Document Depositories  75
      .445 Evidentiary Foundation for Documents  77
      .446 Discovery of Computerized Data  77
      .447 Discovery from Nonparties  82
   .45 Depositions  83
      .451 Limitations and Controls  83
      .452 Cost-Saving Measures  85
      .453 Deferred Supplemental Depositions  87
      .454 Scheduling  88
      .455 Coordination with Related Litigation  89
      .456 Control of Abusive Conduct  89
   .46 Interrogatories  90
      .461 Purposes  90
      .462 Limitations  91
      .463 Responses  92
      .464 Other Practices to Save Time and Expense  92
   .47 Stipulations of Fact/Requests for Admission  94
      .471 Stipulations of Fact  94
      .472 Requests for Admission  95
      .473 Statements of Contentions and Proof  96
      .474 Requests for Judicial Notice  97
   .48 Disclosure and Discovery of Expert Opinions  97
      .481 Trial Experts  97
      .482 Consulting Experts  99
      .483 Court-Appointed Experts  100
   .49 Special Problems  100
      .491 Government Investigations/Grand Jury Materials  100
      .492 Summaries  101
      .493 Sampling/Opinion Surveys  102
      .494 Extraterritorial Discovery  104
.5 Special Referrals  111
   .51 Court-Appointed Experts and Technical Advisors  111
   .52 Special Masters  114
   .53 Magistrate Judges Under 28 U.S.C. § 636(b)(1)  117
   .54 Other Referrals  118
.6 Final Pretrial Conference/Preparation for Trial  118
   .61 Date and Place of Trial  119
   .62 Reevaluation of Jury Demands  120
   .63 Structure of Trial  121
      .631 Consolidation  121

*Contents*

.632 Separate Trials 122
.633 Special Verdicts and Interrogatories 123
.64 Procedures to Expedite Presentation of Evidence 124
.641 Statements of Facts and Evidence 124
.642 Pretrial Rulings on Objections 124
.643 Disclosure of and Objections to Digital Evidence and Illustrative Aids 126
.644 Limits on Evidence 127
.645 Use of Courtroom Technology to Facilitate Evidence Presentation 127
.65 Proposed Jury Instructions 128
.66 Briefs and Final Pretrial Motions 129
.67 Final Pretrial Order 129

12. Trial 131
.1 Administration 132
.11 Trial Schedule 132
.12 Courthouse Facilities 133
.13 Managing Exhibits 134
.14 Transcripts 135
.15 Conferences During Trial 135
.2 Conduct of Trial 136
.21 Opening Statements 136
.22 Special Procedures for Multiparty Cases 137
.23 Advance Notice of Evidence and Order of Proof/Preclusion Orders 138
.24 The Judge's Role 139
.3 Presentation of Evidence 139
.31 Glossaries/Indexes/Demonstrative Aids 140
.32 Use of Exhibits 141
.33 Depositions 143
.331 Summaries 143
.332 Editing, Designations, and Extracts 143
.333 Presentation/Videotaped Depositions 144
.334 Alternative Means of Presenting Testimony 145
.34 Sequencing of Evidence and Arguments 146
.35 Judicial Control/Time Limits 147
.4 Jury Trials 150
.41 Impaneling the Jury 150
.411 Size of the Venire and Panel 150
.412 Voir Dire 151
.413 Peremptory Challenges 152
.42 Juror Note Taking/Notebooks/Questions 152
.421 Note Taking 152
.422 Juror Notebooks 153
.423 Juror Questions 153
.43 Jury Instructions 154
.431 General Principles 154
.432 Preliminary Instructions 154
.433 Interim and Limiting Instructions 156
.434 Final Instructions 156
.435 Jurors' Use of Exhibits During Deliberations 158
.436 Supplemental Instructions and Readbacks 158
.44 Avoiding Mistrial 159
.45 Verdicts 160
.451 Special Verdicts and General Verdicts with Interrogatories 160
.452 Judgment as a Matter of Law 162
.453 Return of Verdict 163

*Manual for Complex Litigation, Fourth*

.5 Nonjury Trials  164
 .51 Adopted Prepared Statements of Direct Testimony  164
 .52 Findings of Fact and Conclusions of Law  165
 .53 Procedures When Combined with Jury Trial  166
.6 Inability of Judge to Proceed  166

13. Settlement 167
.1 Trial Judge's Role  167
 .11 General Principles  167
 .12 Timing/Relationship to Discovery  169
 .13 Specific Techniques to Promote Settlement  169
 .14 Review and Approval  172
 .15 Alternative Processes to Encourage Settlement  174
.2 Special Problems  174
 .21 Partial Settlements  174
 .22 Agreements Affecting Discovery  176
 .23 Side Agreements  176
 .24 Ethical Considerations  180

14. Attorney Fees  183
.1 Eligibility for Court-Awarded Fees  184
 .11 Types of Cases—Overview  184
 .12 Common-Fund Cases  186
  .121 Percentage-Fee Awards  186
  .122 Lodestar-Fee Awards  193
 .13 Statutory-Fee Cases  196
.2 Proceedings to Award Fees  199
 .21 Setting Guidelines and Ground Rules  199
  .211 Selecting Counsel and Establishing Fee Guidelines  200
  .212 Staffing  201
  .213 Maintaining Adequate and Comprehensible Records  202
  .214 Submission of Periodic Reports  202
  .215 Compensation for Designated Counsel  202
  .216 Reimbursement of Expenses  203
 .22 Motion for Attorney Fees  203
  .221 Contents of the Fee Motion  203
  .222 Timing  204
  .223 Supporting Documentation and Evidence  204
  .224 Discovery  205
 .23 Judicial Review/Hearing and Order  205
  .231 Judicial Review  205
  .232 Hearing and Order  207

15. Judgments and Appeals  208
.1 Interlocutory Appeals  208
 .11 When Permitted  208
 .12 Proceedings While Appeal Pending  212
.2 Entry of Final Judgment  212
.3 Disposition of Materials  213

Part II: Special Problems  215

20. Multiple Jurisdiction Litigation  217
.1 Related Federal Civil Cases  218
 .11 Cases in Same Court  218

*Contents*

.12 Cases in Different Federal Courts  219
.13 Multidistrict Transfers Under Section 1407  219
   .131 Requests for Transfer  219
   .132 During Period of Transfer  221
   .133 Remand  225
.14 Coordination Between Courts  227
.2 Related Criminal and Civil Cases  228
.3 Related State and Federal Cases  229
   .31 Coordination  229
      .311 Identifying the Need and Opportunity  231
      .312 Threshold Steps  232
      .313 Specific Forms of Coordination  235
   .32 Jurisdictional Conflicts  238

21. Class Actions  242
.1 Precertification Case Management  245
   .11 Initial Case-Management Orders  245
   .12 Precertification Communications with the Proposed Class  247
   .13 Standards for Class Certification and Precertification Discovery  250
      .131 Certifying a Litigation Class  250
      .132 Certifying a Settlement Class  250
      .133 Timing of the Certification Decision  252
   .14 Precertification Discovery  255
      .141 Precertification Discovery into the Rule 23(a) Requirements  257
      .142 Precertification Discovery into the Rule 23(b) Requirements  260
   .15 Relationship with Other Cases Pending During the Precertification Period  263
.2 Deciding the Certification Motion  266
   .21 Certification Hearings and Orders  266
   .22 Type and Definition of Class  268
      .221 Type of Class  268
      .222 Definition of Class  270
   .23 Role of Subclasses  272
   .24 Role of Issues Classes  272
   .25 Multiple Cases and Classes: The Effect on Certification  274
   .26 Appointment of the Class Representatives  276
   .27 Appointment of Class Counsel  278
      .271 Criteria for Appointment  278
      .272 Approaches to Selecting Counsel  279
      .273 Procedures for Appointment  282
   .28 Interlocutory Appeals of Certification Decisions  282
.3 Postcertification Communications with Class Members  284
   .31 Notices from the Court to the Class  285
      .311 Certification Notice  287
      .312 Settlement Notice  293
      .313 Other Court Notices  296
   .32 Communications from Class Members  298
      .321 Class Members' Right to Elect Exclusion  298
      .322 Communications Relating to Damage or Benefit Claims  299
      .323 Other Communications from Class Members  299
   .33 Communications Among Parties, Counsel, and Class Members  300
.4 Postcertification Case Management  302
   .41 Discovery from Class Members  302
   .42 Relationship with Other Cases  303
.5 Trials  306

*Manual for Complex Litigation, Fourth*

.6 Settlements  308
   .61 Judicial Role in Reviewing a Proposed Class Action Settlement  308
     .611 Issues Relating to Cases Certified for Trial and Later Settled  312
     .612 Issues Relating to Cases Certified and Settled at the Same Time  313
   .62 Criteria for Evaluating a Proposed Settlement  315
   .63 Procedures for Reviewing a Proposed Settlement  318
     .631 Obtaining Information  318
     .632 Preliminary Fairness Review  320
     .633 Notice of Fairness Hearing  321
     .634 Fairness Hearing  322
     .635 Findings and Conclusions  322
   .64 Role of Other Participants in Settlement Review  323
     .641 Role of Class Counsel in Settlement  323
     .642 Role of Class Representatives in Settlement  325
     .643 Role of Objectors in Settlement  326
     .644 Role of Magistrate Judges, Special Masters, and Other Judicial Adjuncts in
        Settlement  329
   .65 Issues Raised by Partial or Conditional Settlements  329
     .651 Partial Settlements  329
     .652 Conditional Settlements  330
   .66 Settlement Administration  331
     .661 Claims Administrator or Special Master  332
     .662 Undistributed Funds  333
.7 Attorney Fee Awards  334
   .71 Criteria for Approval  336
   .72 Procedure for Reviewing Fee Requests  338
     .721 Motions  338
     .722 Notice  338
     .723 Objections  338
     .724 Information Supporting Request and Discovery for Fee Requests  338
     .725 Required Disclosures  339
     .726 Hearing and Findings  339
     .727 Use of Special Masters or Magistrate Judges  340

**22. Mass Torts  341**
   .1 Introduction  342
   .2 Initial Issues in Mass Tort Suits  348
   .3 Multiple Filings in Federal District Courts  355
     .31 Aggregating Claims  355
       .311 Criteria  357
       .312 Advantages and Disadvantages of Aggregation  357
       .313 Timing of Aggregation Decisions  358
       .314 Obtaining Information About Common Issues and Case Values  358
       .315 Test Cases  360
       .316 Case Characteristics  360
       .317 Role of Different State Laws  361
       .318 Trial Plans  362
     .32 Intradistrict Assignment to a Single Judge  362
     .33 Interdistrict Transfer (Including MDL)  366
     .34 Denial of Transfer  368
       .341 Insufficient Common Facts  368
       .342 Procedural Alternatives  369
       .343 Geographical Diversity and Economy  369
       .344 Maturity of Litigation  370
     .35 Authority of a Judge Pending Decision by the MDL Panel  371

*Contents*

.36 The Tasks of an MDL Transferee Judge  372
.37 The Task of the Transferor Judge Following Remand After MDL Proceedings  376
.4 Multiple Filings in State and Federal Courts  376
.5 Multiple Filings in District and Bankruptcy Courts  378
   .51 Venue, Transfer, and Consolidation  380
      .511 Venue and Transfer  380
      .512 Consolidation and Reassignment  380
   .52 Withdrawing the Reference  381
   .53 Dividing the Labor Among Judges  383
      .531 MDL Transferee Judge  383
      .532 Other Judges  384
      .533 Bankruptcy Appeals  384
   .54 Coordinating and Consolidating Tort Claims and Related Cases  385
      .541 Claims Against the Debtor  386
      .542 Claims Against Other Defendants  388
      .543 Consolidation of Cases  388
      .544 Transfer of Related Cases of Nondebtor Defendants  389
      .545 Expanding the Automatic Stay or Enjoining Related Cases  391
   .55 Providing Representation for Future Mass Tort Claimants  393
   .56 Estimating the Value of Mass Tort Claims  397
   .57 Negotiating a Reorganization Plan  398
   .58 Discharging Future Claims  399
   .59 Confirming a Reorganization Plan  401
.6 Case-Management Orders  403
   .61 Initial Orders  403
   .62 Organization of Counsel  405
   .63 Subsequent Case-Management Orders  408
      .631 Adding Parties  408
      .632 Pleadings and Motions  409
      .633 Deferred Docketing  410
      .634 Issue Identification and Development  410
      .635 Electronic Communications  413
.7 Class Actions in Mass Tort Cases  413
   .71 Background  414
   .72 Post-*Amchem* Class Certification  416
   .73 Post-*Ortiz* Mandatory Limited Fund Class Settlements  421
   .74 Medical Monitoring Class Actions  424
   .75 Issues Classes  429
      .751 Identify the Issues  430
      .752 Determine Applicable Law  431
      .753 Identify a Limited Set of Laws  432
      .754 Subclasses to Reflect Differences in State Law  432
      .755 Determine Separability of Common Issue  433
      .756 Establish a Trial Plan  434
      .757 Assess the Overall Impact  435
.8 Discovery  435
   .81 Sampling  436
   .82 Initial Disclosures  437
   .83 Interrogatories  438
   .84 Depositions: New Parties  438
   .85 Documents  439
   .86 Physical Evidence  439
   .87 Experts and Scientific Evidence  440
.9 Settlement and Trial  446
   .91 Judicial Role and Settlement  446

*Manual for Complex Litigation, Fourth*

.92 Review of Settlement in Mass Tort Class Actions  449
.921 Class Certification in a Settlement Context  450
.922 Fairness, Adequacy, and Reasonableness of the Settlement  453
.923 Criteria for Evaluating the Merits of a Proposed Settlement  454
.924 Gathering Information and Conducting a Fairness Hearing  456
.925 Evaluating Nonmonetary Benefits  460
.926 Presenting the Decision  460
.927 Awarding and Allocating Attorney Fees  461
.93 Trial  463

23. Expert Scientific Evidence  469
.1 Introduction  469
.2 The Use of Scientific Evidence in Complex Litigation  472
.21 The Federal Rules of Evidence  472
.22 The *Daubert* Trilogy  474
.23 The *Daubert* Criteria  476
.24 Opinions and Conclusions Under *Daubert*  478
.25 The *Daubert* "Fit" Test  480
.26 The Scope of Appellate Review  482
.27 Emerging Issues in the Use of Scientific Evidence  484
.271 The Validity of Toxicological Evidence Versus Epidemiological Evidence  485
.272 Aggregation of Scientific Evidence  485
.273 Clinical Medical Judgment  487
.274 Research as a Result of Litigation  489
.3 Case Management  491
.31 Preliminary Considerations in Assessing Expert Testimony  491
.32 The Initial Conference  494
.33 Disclosures  499
.34 Discovery Control and Management  503
.341 Discovery of Testifying Experts  503
.342 Discovery of Nontestifying Experts  504
.343 Discovery of Nonretained Experts  504
.344 Discovery of Court-Appointed Experts  505
.345 Use of Videotaped Depositions  505
.35 Motion Practice  506
.351 Initiating a *Daubert* Inquiry  507
.352 Timing of Challenges to Expert Testimony  508
.353 Handling a Challenge to Expert Testimony  509
.354 Summary Judgment  512
.36 Final Pretrial Conference  513
.37 Trial  514

Part III:  Particular Types of Litigation  517

30. Antitrust  519
.1 Managing the Issues  519
.2 Transactional and Economic Data, and Expert Opinions  522
.3 Conflicts of Interest  524
.4 Related Proceedings  524

31. Securities  527
.1 Introduction  527
.2 Statutory Framework  528
.3 The Private Securities Litigation Reform Act  529
.31 Class Representatives and Lead Plaintiffs  531

*Contents*

.32 Pleading Requirements  540
.33 Safe Harbor  543
.34 Discovery Stays  544
.4 Initial Pretrial Conference  545
.5 Class Actions and Derivative Actions  550
.6 Discovery  553
.7 Takeover Litigation  554
.71 Initial Conference  554
.72 Injunctive Relief  556
.73 Discovery  558
.8 Trial and Settlement  558

32. Employment Discrimination  561
.1 Introduction  561
.2 The Statutory Framework  562
.21 Title VII: Discrimination in Employee Hiring and Advancement  564
.22 The Civil Rights Act of 1964: Discrimination in Contracting  567
.23 Age Discrimination in Employment Act  568
.24 Americans with Disabilities Act  570
.25 Family and Medical Leave Act  571
.3 Developments in the Law of Employment Discrimination  572
.4 Case Management  576
.41 Initial Pretrial Conference  576
.42 Class Actions  579
.43 Discovery  586
.431 Identification of Source Materials  586
.432 Computerized Records  587
.433 Confidential Information  588
.434 Preservation of Records  589
.435 Statistical Evidence and Expert Testimony  589
.436 Discovery from Class Members  590
.44 Summary Judgment  591
.45 Trial  592
.46 Settlement  596
.461 Timing  596
.462 Affirmative Relief  596
.463 Attorney Fees  597
.464 Settlement Hearing  597
.465 Implementation  597

33. Intellectual Property  599
.1 Introduction  599
.2 Patent Law  600
.21 The Statutory Framework  600
.22 Claim Construction Under *Markman v. Westview Instruments*  602
.221 Holding a *Markman* Hearing  604
.222 Structuring the *Markman* Hearing  606
.223 Timing the *Markman* Hearing  607
.224 Requesting a *Markman* Hearing  610
.225 Appeal  611
.23 Defining the Issues in Patent Litigation  611
.24 Injunctive Relief  619
.25 Discovery  622
.26 Experts  625
.27 Trial  627

*Manual for Complex Litigation, Fourth*

.3 Copyright and Trademark Law  628
    .31 Copyright  628
        .311 Discovery  637
        .312 Motions  639
        .313 Experts  640
    .32 Trademarks  640

## 34. CERCLA (Superfund)  643
.1 Introduction  643
    .11 Statutory Framework  646
    .12 The Three Phases of CERCLA Litigation  650
.2 Case Management  654
    .21 Setting Up the Case  662
    .22 Special Masters and Magistrate Judges  664
    .23 Related Litigation  665
    .24 Organizing Counsel  667
    .25 Centralized Document Management  669
    .26 Narrowing the Issues  670
    .27 Joinder  672
    .28 Managing Discovery  674
    .29 Scientific and Technical Expert Testimony  676
.3 Settlement and Trial  677
    .31 Allocation  677
    .32 Settlement  682
    .33 Approval of Consent Decrees  686
    .34 Structuring the Trial  687

## 35. Civil RICO  689
.1 Introduction  689
.2 Statutory Framework  692
.3 Case Management  702
    .31 Pleadings  702
    .32 Initial Conference  708
    .33 Discovery  720
    .34 Motion Practice  721
    .35 Trial  722

## Part IV: Sample Orders  725

## 40. Sample Orders  727
.1 Order Setting Initial Conference  730
.2 Sample Case-Management Orders  734
    .21 General  734
    .22 Responsibilities of Designated Counsel  741
    .23 Attorneys' Time and Expense Records  743
    .24 Scheduling Order  744
    .25 Preservation of Documents, Data, and Tangible Things  746
    .26 Document Depositories  749
        .261 Order to Meet and Confer to Establish Joint Document Depository  749
        .262 Order to Establish Separate Document Depositories  751
    .27 Confidentiality Order  752
    .28 Referral of Privilege Claims to Special Master  754
    .29 Deposition Guidelines  756
.3 Order Creating a Web Site  762

*Contents*

.4 Class Actions Orders  763
    .41 Order Certifying Class  763
    .42 Order Setting Hearing on Proposed Class Settlement  765
    .43 Combined Certification and Proposed Settlement Order  766
    .44 Order Approving Settlement/Claims Procedure  768
.5 Orders in Special Cases  770
    .51 Coordinating Proceedings in Different Courts  770
    .52 Mass Tort Case-Management Order  773
    .53 CERCLA Case-Management Order  779
    .54 Civil RICO Case-Statement Order  783
.6 Sample Final Pretrial Orders  786
.7 Jury Questionnaire  786

Index  787

Blank page inserted for correct pagination
when printing double-sided copies.

# Preface

This fourth edition of the *Manual for Complex Litigation* stands on the shoulders of the three previous editions and in the debt of the following: Judge William W Schwarzer, director of the Federal Judicial Center from 1990 to 1995, and primarily responsible for the third edition (1995); Judge Sam C. Pointer, who chaired the Board of Editors for the second edition (1985); Judge Alfred P. Murrah, the Center director who was the driving force behind the inaugural edition; Judge Thomas J. Clary, the chair of the initial Board of Editors; and the members of that Board.

The fourth edition of the *Manual* is adapted to new conditions and demands of federal litigation and reflects the work, experience, and insight of its Board of Editors. The Chief Justice, as chairman of the Board of the Federal Judicial Center, appointed the Board of Editors in 1999. He asked Judge Stanley Marcus, then a member of the Center's Board, to chair the Board of Editors. Judge Marcus has continued to oversee the *Manual*'s completion even though his term as a Center Board member ended in 2002. His insight and experience as a federal district judge and now as a member of the court of appeals are reflected on every page of the *Manual*. So, too, does this edition reflect the many hours dedicated to the project by individual members of the Board of Editors. A complete list of individuals who worked on the *Manual* can be found at Acknowledgments, page xix.

This *Manual* is one of the flagship services of the Federal Judicial Center. It has been my pleasure, as director of the Center, to have worked with Judge Marcus and the Board of Editors, and with the staff of the Center and others, to bring this fourth edition into being.

Fern M. Smith
*Director, Federal Judicial Center 1999–2003*

Blank page inserted for correct pagination
when printing double-sided copies.

# Acknowledgments

As with all Federal Judicial Center publications, this work is a tribute to the teamwork of its staff. In particular, thanks go to Meghan A. Dunn, Jill E. Evans, Elizabeth C. Wiggins, Thomas E. Willging, and Kenneth J. Withers for substantial assistance in drafting portions of the *Manual*. In addition, thanks go to the following: Linda Beavers, Joe Cecil, James Eaglin, Geoffrey Erwin, Richard Gibson, Jason Gilbert, Kristina Gill, Linda B. Gill, David Guth, Andrea Henson-Armstrong, Laural Hooper, Gil Hopenstand, Ilisa Horowitz, Martha Kendall, Gregory Langadinos, Marie Leary, Angelia N. Levy, Preston Manning, David Marshall, Dean Miletich, and Russell Wheeler.

We greatly appreciate the work of the many judges, professors, practitioners, and law clerks who offered their enthusiastic review and helpful comments: John Aldock, Esq., Hon. William Alsup, David Aman, John E. Ballow, Esq., David Barkan, Hon. Louis C. Bechtle, Hon. Edward R. Becker, John Beisner, Esq., Professor Margaret Berger, Kenneth J. Brown, Hon. Robert J. Bryan, Arthur Bryant, Esq., Professor Stephen B. Burbank, Elisabeth Cabraser, Esq., Professor Dan Capra, Stanley Chesley, Esq., Edward Cloutman, Esq., Professor Edward H. Cooper, Professor Jill Fisch, Hon. James C. Francis IV, Theodore L. Garrett, Esq., Professor S. Elizabeth Gibson, Hon. John F. Grady, Hon. Wm. Terrell Hodges (Judicial Panel on Multidistrict Litigation), Gregory P. Joseph, Esq., Terrence M. Kalahurka, Esq., Bruce Keller, Esq., Professor Kenneth Kreiling, Michael C. LeVine, Professor Richard L. Marcus, Hon. Jed S. Rakoff, Deborah Reyher, Paul Rheingold, Esq., Anthony Z. Roisman, Esq., Hon. Barbara Jacobs Rothstein, Hon. Patti B. Saris, Hon. Shira Scheindlin, Hon. William W Schwarzer, Hon. Milton Shadur, Hon. Walter K. Stapleton, Hon. Ben F. Tennile, North Carolina Business Court, Rebecca Tushnet, Esq., Melvyn I. Weiss, Esq., and Brian Wolfman, Esq.

Blank page inserted for correct pagination
when printing double-sided copies.

# Introduction

The impetus for this fourth edition of the *Manual for Complex Litigation* was, as with the previous editions, significant change in the landscape of federal litigation and the increasing responsibilities of federal trial judges. A recommendation of the Mass Tort Working Group, appointed by the Chief Justice, served as a catalyst for this project.[1] Major changes include, but are hardly limited to, the growth in class action and mass tort litigation, and the trial judge's heightened role imposed by *Daubert v. Merrell Dow Pharmaceuticals*[2] and cases following it, and by *Markman v. Westview Instruments, Inc.*[3] The *Manual*'s orientation, however, differs little from the first incarnation. It "contains neither a simplified outline for the easy disposition of complex litigation nor an inflexible formula or mold into which all trial or pretrial procedure must be cast."[4]

Users should keep in mind several things about this edition. First, it is not, and should not be cited as, authoritative legal or administrative policy. As noted at page iii, it contains analyses and recommendations of the Board of Editors, but each member of the Board does not necessarily subscribe to all parts of the *Manual*. It was produced under the auspices of the Federal Judicial Center, but the Center has no authority to prescribe practices for federal judges. The *Manual*'s recommendations and suggestions are merely that. As always, the management of any matter is within the discretion of the trial judge.

Second, although federal trial judges are the *Manual*'s primary audience, the techniques and procedures discussed may be useful in state courts as well, particularly in view of the convergence that is occurring in related litigation pending in both state and federal court systems. Reference to the *Manual* may assist in the coordination of such litigation. The *Manual* will also assist lawyers, who share with judges the responsibility for managing complex litigation in which they are involved.

Third, as with the previous editions, this edition's "organization . . . belies the fact that its subject matter is not neatly divisible into distinct topics."[5] Nor is the term "complex litigation" susceptible to any bright-line definition. Part I

---

1. Mass Tort Working Group, Report on Mass Tort Litigation, 187 F.R.D. 293, 324 (1999).

2. 509 U.S. 579 (1993).

3. 517 U.S. 370 (1996).

4. Handbook of Recommended Procedures for the Trial of Protracted Cases, 25 F.R.D. 351, 355 (1960) (quoted in Manual for Complex Litigation, Second, § 10 (1985)).

5. Manual for Complex Litigation, Third, § 10.2 (1995).

*Manual for Complex Litigation, Fourth*

treats generic topics in complex (and other) litigation, such as pretrial and trial procedures and attorney fees. Part II analyzes special problems in complex litigation, such as class actions and expert scientific evidence. Part III has separate sections on complex litigation in various subject areas, such as antitrust and intellectual property. Part IV includes sample orders and forms. As the *Manual for Complex Litigation, Third* said, however, "[a] topic, such as settlement or class actions, will be relevant to the discussion at different points."[6] Thus, this edition too contains extensive cross-references. This fourth edition contains much new and revised material and has a somewhat different format and numbering system than that of the *MCL 3d*. However, because civil and criminal case management differ significantly, and in order to keep this volume to a manageable size, this edition deals only with civil litigation.

Finally, it could go without saying that changes in statutes, case law, regulations, and technology will quickly date some specific references in the *Manual*, and users need to exercise standard research practices when using the *Manual*. For example, prospective legislative changes in class action rules remained pending as the *Manual* went to press, and the precise changes could not be forecast. Before this edition went to press, significant changes in Federal Rules of Civil Procedure 23 and 53 were approved by the Supreme Court[7] and were before Congress pursuant to the Rules Enabling Act.[8] Because congressional acceptance of the amendments seemed likely, and the amended rules differed significantly from those in effect prior to December 1, 2003, the *Manual*, when treating class actions, uses the amended rules and the committee notes about those amendments.

In offering an array of litigation management techniques and procedures, the *Manual* does not recommend that every complex litigation necessarily employ any such procedures or follow a standard pattern. Choices will depend on the needs of the litigation and many other considerations. What the *Manual* does urge is that choices be made, and that they be made starting early in the litigation. While those decisions are largely the responsibility of the court, the judge should not take the case from the lawyers, but rather provide guidance and direction, setting limits and applying controls as needed. Additional Center publications on litigation management can be found at http://www.fjc.gov.

Complex litigation should not be viewed as monolithic. In some areas of law, such as antitrust and securities litigation, substantive and procedural rules

---

6. *Id.*

7. See letters of the Chief Justice to the Speaker of the House and the President of the Senate, March 27, 2003, and amendments adopted by the Supreme Court, in "2002 Term Court Orders," at http://www.supremecourtus.gov (last visited Nov. 10, 2003).

8. 28 U.S.C. § 2074 (2000).

2

*Introduction*

are relatively well settled, as are management techniques. In others, such as environmental, civil rights, and mass tort litigation, rules are still emerging or undergoing change. While all complex litigation challenges courts, the unsettled areas present the greatest challenges.

Much complex litigation, therefore, will take the judge and counsel into sparsely charted terrain with little guidance on how to respond to pressing needs for effective management. Practices and principles that served in the past may not be adequate, their adaptation may be difficult and controversial, and novel and innovative ways may have to be found. While this *Manual for Complex Litigation, Fourth* should be helpful within the limits of its mission, it should be viewed as open-ended, and judges are encouraged to be innovative and creative to meet the needs of their cases while remaining mindful of the bounds of existing law and any variations within their own circuits.

all disclosures and discovery responses are complete and correct when made, and that requests, objections, and responses conform to the requirements of the Federal Rules;

- providing for compliance with the supplementation requirements of Rules 26(e)(1) and (2)[111] by setting periodic dates for additional reports;
- requiring periodic status reports to monitor the progress of discovery (which can be informal, by letter or telephone); and
- issuing an order, which may be a part of the scheduling order required by Rule 16(b) (see section 11.212), which incorporates the discovery plan (for a sample order, see section 40.24).

## 11.422 Limitations

Discovery control in complex litigation may take a variety of forms, including time limits, restrictions on scope and quantity, and sequencing. The Federal Rules and the court's inherent power provide the court with broad authority. Among other provisions, Federal Rule of Civil Procedure 16(b) directs the court to limit the time for discovery, and Rule 26(b) empowers the court to limit the "frequency or extent of use of the discovery methods" under the rules, including the length of depositions. Rule 30(a) imposes a presumptive limit of ten depositions per side. Rule 30(d) has a presumptive durational limit of one 7-hour day for any deposition. Rule 33 establishes a presumptive limit of twenty-five interrogatories per party (see sections 11.451, 11.462). Rule 26(f)(3) requires the parties to address discovery limits in their proposed discovery plan.

Presumptive limits should be set early in the litigation, before discovery has begun. Information about the litigation will be limited at that time, so limits may need to be revised in the light of later developments. But they should be imposed on the basis of the best information available at the time, after full consultation with counsel, and with the understanding that they will remain binding until further order. In determining appropriate limits, the court will need to balance efficiency and economy against the parties' need to develop an adequate record for summary judgment or trial. This task further underlines the importance of clarifying and understanding the issues in the case before

---

111. Rule 26(e)(2) does not apply to deposition testimony, but when the deposition of an expert from whom a report was required under Rule 26(a)(2)(B) reveals changes in the expert's opinion, it triggers the duty of supplementation imposed by Rule 26(e)(1). *See* Fed. R. Civ. P. 26 committee note; Fed. R. Civ. P. 26(a)(2)(C).

imposing limits.[112] The following are examples of discovery limits that a judge might consider:

- *Time limits and schedules.* The discovery plan should include a schedule for the completion of specified discovery, affording a basis for judicial monitoring of progress. Setting a discovery cutoff date[113] is an important objective, but may not be feasible at the initial conference in complex litigation. The discovery cutoff should not be so far in advance of the anticipated trial date that the product of discovery becomes stale and the parties' preparation outdated. Time limits impose valuable discipline on attorneys, forcing them to be selective and helping to move the case expeditiously, but standing alone they may be insufficient to control discovery costs. Unless time limits are complemented by other limitations, attorneys may simply conduct multi-track discovery, thereby increasing expense and prejudicing parties with limited resources. To prevent time limits from being frustrated, the judge should rule promptly on disputes so that further discovery is not delayed or hampered while a ruling is pending. Although attorneys will sometimes argue over "priorities," the rules provide for no such presumptive standing.

- *Limits on quantity.* Time limits may be complemented by limits on the number and length of depositions, on the number of interrogatories, and on the volume of requests for production. Imposing such limitations only after hearing from the attorneys makes possible a reasonably informed judgment about the needs of the case. Limitations are best applied sequentially to particular phases of the litigation, rather than as aggregate limitations. When limits are placed on discovery of voluminous transactions or other events, consider using statistical sampling techniques to measure whether the results of the discovery fairly represent what unrestricted discovery would have been expected to produce (section 11.493 discusses statistical sampling).

- *Phased, sequenced, or targeted discovery.* Counsel and the judge will rarely be able to determine conclusively early in the litigation what discovery will be necessary; some discovery of potential relevance at the outset may be rendered irrelevant as the litigation proceeds, and the need for other discovery may become known only through later developments. For effective discovery control, initial discovery should focus on matters—witnesses, documents, information—that appear

---

112. *See* Schwarzer & Hirsch, *supra* note 97.
113. *See In re* Fine Paper Antitrust Litig., 685 F.2d 810 (3d Cir. 1982).

pivotal. As the litigation proceeds, this initial discovery may render other discovery unnecessary or provide leads for further necessary discovery. Initial discovery may also be targeted at information that might facilitate settlement negotiations or provide the foundation for a dispositive motion; a discovery plan may call for limited discovery to lay the foundation for early settlement discussions. Targeted discovery may be nonexhaustive, conducted to produce critical information rapidly on one or more specific issues. In permitting this kind of discovery, it is important to balance the potential savings against the risk of later duplicative discovery should it be necessary to resume the deposition of a witness or the production of documents. Targeted discovery may in some cases be appropriate in connection with a motion for class certification; however, matters relevant to such a motion may be so intertwined with the merits that targeting discovery would be inefficient. See sections 11.41 and 21.2.

- *Subject-matter priorities.* Where the scope of the litigation is in doubt at the outset—as, for example, in antitrust litigation—the court should consider limiting discovery to particular time periods or geographical areas, until the relevance of expanded discovery has been established. See section 11.41.

- *Sequencing by parties.* Although discovery by all parties ordinarily proceeds concurrently, sometimes one or more parties should be allowed to proceed first. For example, if a party needs discovery to respond to an early summary judgment motion, that party may be given priority. Some judges establish periods in which particular parties have exclusive or preferential rights to take depositions, and in multiple litigation, those judges direct that discovery be conducted in some cases before others. Sometimes judges order "common" discovery to proceed in a specified sequence, without similarly limiting "individual" discovery in the various cases.

- *Forms of discovery.* Some judges prescribe a sequence for particular types of discovery—for example, interrogatories may be used to identify needed discovery and documents, followed by requests for production of documents, depositions, and finally requests for admission.

If the court directs that discovery be conducted in a specified sequence, it should grant leave to vary the order for good cause, as when emergency depositions are needed for witnesses in ill health or about to leave the country.

den or expense on the person subpoenaed.[174] Objections to production must be made in writing by the subpoenaed person; the requesting party must then move for an order to compel production.[175] If granted, the order must protect the nonparty from significant expense resulting from the inspection or copying[176]—the order may also protect against disclosure of privileged, confidential, or otherwise protected material and undue burden.[177]

## 11.45  Depositions

.451 Limitations and Controls  83
.452 Cost-Saving Measures  85
.453 Deferred Supplemental Depositions  87
.454 Scheduling  88
.455 Coordination with Related Litigation  89
.456 Control of Abusive Conduct  89

Depositions are often overused and conducted inefficiently, and thus tend to be the most costly and time-consuming activity in complex litigation. The judge should manage the litigation so as to avoid unnecessary depositions, limit the number and length of those that are taken, and ensure that the process of taking depositions is as fair and efficient as possible.

### 11.451  Limitations and Controls

The court has broad authority to limit depositions. Federal Rules of Civil Procedure 30(a)(2)(A) and 31(a)(2)(A) impose a presumptive limit of ten depositions each for plaintiffs, defendants, and third-party defendants (local rules may also restrict the number of depositions). Rule 30(d)(2) presumptively limits a deposition to one 7-hour day. While the parties may stipulate around the presumptive limit (unless prohibited to do so by the court), the court always has final authority under Rule 26(b)(2) to limit the number and length of depositions. Limits on depositions may also be imposed indirectly by the setting of the trial date or a discovery cutoff date. In large-stake cases, such limits can be evaded by multitrack discovery (concurrent depositions) in the absence of a further order by the court. Despite their cost and the potential for unfairness, such multitrack depositions may be a practical necessity to expedite cases in which time is of the essence. See section 11.454.

---

174. Fed. R. Civ. P. 45(c)(1).
175. Fed. R. Civ. P. 45(c)(2)(B).
176. *Id.*
177. Fed. R. Civ. P. 45(c)(3).

In exercising its authority to limit depositions, the court should use the information provided by the parties about the need for the proposed depositions, the subject matter to be covered, and the available alternatives. The extent to which the judge considers each particular deposition, categories of depositions, or only the deposition program as a whole will depend on the circumstances of the litigation. The judge may, for example, condition the taking of certain depositions, such as those of putative class members, on prior court approval. The judge's involvement in the development of this phase of the discovery plan should be sufficient to establish meaningful control over the time and resources to be expended. Aside from setting appropriate limits, the judge should also be concerned with the time and place of the depositions, including proposed travel and the recording methods.[178]

To ensure that abusive practices do not frustrate the limits placed on depositions in the discovery plan, the judge should insist on observance of rules for the fair and efficient conduct of depositions. Rule 30(d)(1) requires that objections be stated "concisely and in a non-argumentative and non-suggestive manner"; local rules or standing orders may also establish guidelines for objections.[179] Under Rule 30(d)(1), counsel may instruct a deponent to not answer only for the purpose of enforcing a court-imposed limitation on evidence, or if preparing a motion under Rule 30(d)(3) to limit or terminate the examination for bad faith or harassment or to preserve a privilege (to the extent possible, disputed claims of privilege should be resolved in advance of the deposition). More stringent limitations may be imposed by local rule or by court order when necessary.[180] In addition, some judges issue guidelines covering the following matters:

- who may attend depositions;

- where the depositions are to be taken;

- who may question the witness;

---

178. Authority for judicial management of deposition discovery can be found in the federal rules. *E.g.*, Fed. R. Civ. P. 30(d) committee note (2000 amendment); Fed. R. Civ. P. 30(b), 30(d) committee notes (1993 amendment). For an example of comprehensive guidelines for deposition discovery not having the force of local rules or orders, but strongly encouraged by the court, see Civil Practice Fed. Court Comm., *Introduction to Civil Discovery Practice in the Southern District of Alabama* 11–16 (S.D. Ala. 1998), at http://www.als.uscourts.gov/district-court/forms/discprat.pdf (last visited Jan. 7, 2004).

179. *See, e.g.*, D.S.C. Civ. R. 30.04; N.D. Ohio Civ. R. 30.1. For a discussion of attorney conduct in depositions and citations to a number of cases construing local rules and standing orders, see *Hall v. Clifton Precision*, 150 F.R.D. 525, 527 (E.D. Pa. 1993). *But see In re* Stratosphere Corp. Sec. Litig., 182 F.R.D. 614, 621 (D. Nev. 1998) (noting that deposition conduct orders should be narrowly drawn to avoid interfering with the deponent's right to counsel).

180. *See* Hall v. Clifton Precision, 150 F.R.D. 525 (E.D. Pa. 1993).

- how the parties are to allocate the costs; and
- how the attorneys are to conduct themselves.[181]

Rule 30(d)(3) expressly authorizes sanctions for "impediment, delay or other conduct that has frustrated the fair examination of the deponent."

Inefficient management of documents at a deposition can interfere with the deposition's proper conduct. The discovery plan should establish procedures for marking deposition exhibits, handling copies and originals, and exchanging in advance all papers about which the examining party intends to question the witness (except those to be used for genuine impeachment).[182]

## 11.452 Cost-Saving Measures

In addition to the general discovery practices discussed in section 11.42, there are numerous techniques used to streamline deposition discovery:

- *Informal interviews.* Informal interviews of potential witnesses may be arranged with the agreement of counsel. However, an attorney may not communicate with a represented party without the consent of that party's counsel. If the represented party is an organization, the prohibition extends to persons with managerial responsibility and any other person whose act or omission may be imputed to the organization or whose statement may constitute an admission on the part of the organization.[183] The prohibition does not extend to former corporate employees.[184] Informal interviews may be useful for persons who have only limited knowledge or involvement and who are unlikely to be called as witnesses at trial. The witness may be sworn and the interview recorded electronically for possible use later in the case; by agreement or court order, the interview may also be converted into a nonstenographic deposition.

- *Nonstenographic depositions.* The party taking a deposition may record it on audio or videotape instead of stenographically without having it transcribed. With prior notice to the deponent and other parties, any other party may make its own recording of the deposition.[185] Video-taped depositions offer a number of advantages: They help deter mis-

---

181. *See* sample order *infra* section 40.22.

182. *See, e.g., In re* San Juan Dupont Plaza Hotel Fire Litig., MDL No. 721, 1989 WL 168401, at *43–44 (D.P.R. Dec. 2, 1988) (five days' advance notice).

183. Model Rules of Prof'l Conduct R. 4.2 & cmt. (2002).

184. ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 91-359 (1991). The law of the circuit should be consulted for recent developments in this area of the law.

185. Fed. R. Civ. P. 30(b)(3).