# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY CASES LITIGATION | MDL No. 2419<br><br>Master Dkt.: 1:13-md-02419-FDS |
| THIS DOCUMENT RELATES TO:<br><br>All Actions | |

**PLAINTIFFS' STEERING COMMITTEE'S REPLY IN SUPPORT OF
BELLWETHER TRIAL PLAN AND PRE-TRIAL SCHEDULING ORDER**

### I. INTRODUCTION

On January 31, 2014, the Plaintiffs Steering Committee (PSC) filed a Motion for Entry of Bellwether Trial Plan and Pre-Trial Schedule (dkt. no. 837). The motion asked the Court to set bellwether trials to begin in May 2015, which would be approximately two-and-a-half years after news of the deadly outbreak became public and almost a year-and-a-half after this MDL was created. The PSC plan includes key proposed deadlines, efficient sequencing of discovery and motion practice, proposed process for selecting trial pool candidates, and a process for selecting bellwether trials. The PSC also provided a detailed explanation of the guiding principles behind their proposed plan.

Three groups of defendants opposed the PSC's plan.[1] None offered a comprehensive alternative bellwether trial plan. Two offered no proposed alternative pre-trial schedule. The oppositions raise a host of meritless criticisms of the PSC plan, with much of their argument

---

[1] The defendants filing oppositions are: Unifirst Corp (dkt. no. 965); St. Thomas Outpatient Neurosurgical Center, LLC, Howell Allen Clinic, John W. Culclasure, M.D., Debra Schamberg, RN, (collectively "St. Thomas Clinic Defendants"), Specialty Surgery Center, Crossville, PLLC, Kenneth Lister, MD, Kenneth Lister, MD, PC (dkt. no. 858); St. Thomas West Hospital f/k/a St. Thomas Hospital, St. Thomas Network, and St. Thomas Heath (collectively "St. Thomas Hospital Defendants") (dkt. no. 964).

focused on their advocacy of "no." Before addressing defendants' criticisms, the PSC will outline core principles embodied in the PCS's plan and on which there is apparent agreement – or near- agreement.[2]

## II.     ARGUMENT

### A.     There is No Disagreement as to the Core Principles of Bellwether Plan and Pre-Trial Schedule

#### 1.     A Bellwether Trial Plan Should be Crafted

With the exception of the St. Thomas Clinic Defendants, which did not express a position on whether they believe bellwether trials would be appropriate in this MDL, the responding parties agree that the Court should establish a bellwether trial process. All parties cite to Judge Fallon's article, Bellwether Trials in Multidistrict Litigation, 82 Tul. L. Rev. 2323, 2325 (June, 2008) (hereinafter "Fallon") (dkt. no. 837-2), as authoritative on the issue of the usefulness and logistics of a bellwether trial process. Although there is some disagreement as to the application of Judge Fallon's principles, the following principles, at least, are beyond dispute:

- Bellwether trials can help MDL courts maximize the "once-in-a-lifetime" opportunity for resolution of mass disputes created by MDL centralization of a litigation. Fallon at 2340-2341.

- Bellwether trials can be effectively employed for . . . testing various theories and defenses in a trial setting. *Id.* at 2337;

- Bellwether trials . . . can lead to the development of "trial packages" for use by local counsel upon the dissolution of MDLs. *Id.* at 2338; and

- Bellwether trials can precipitate and inform settlement negotiations by . . . providing guidance on how similar claims may fare before subsequent juries. *Id.* at 2338.

---

[2] If defendants have changed their position or otherwise contend that there is not agreement on these issues, these are nevertheless core principles rooted in the Federal Rules and precedent.

1164414.2

Judge Saylor also expressed, on multiple occasions, his intention to create a bellwether trial process. See MDL Order No. 7 (dkt. no. 438) (setting forth a deadline of January 24, 2014, for selecting six potential bellwether cases; deadline later extended, shortly before Judge Saylor's recusal, by Order on Timetable for Determining "Bellwether" Cases (dkt. no. 721). The PSC's proposed bellwether plan sets forth an effective and efficient structure for realizing the benefits of a bellwether process.

2. **Discovery Should be Sequenced with Common Issues Discovery Conducted First**

This MDL has been pending more than a year. There is presently a discovery stay in place with respect to the "Affiliated Defendants" – that is, those persons and entities related to New England Compounding Center ("NECC"), either as owners or companies sharing common ownership with NECC. The PSC has a pending motion to lift that stay, originally filed on October 23, 2013 (dkt. no. 534). The PSC has served subpoenas on multiple clinics nationwide and propounded common discovery requests on the St. Thomas Clinic Defendants and St. Thomas Hospital Defendants. Discovery on common issues should continue to proceed apace.[3]

It appears that there is agreement, at least among the parties filing papers in connection with the PSC's motion, that case-specific discovery, beyond completing Plaintiffs Fact Sheets

---

[3] One set of defendants contend that the PSC plan does not meet the requirements for a "discovery plan" under Fed. R. Civ. P 26(f) and Local Rule 16.1. See St. Thomas Entities' Opp. To PSC Mot at 2-3 (dkt no. 964). This argument ignores that the parties have been negotiating and intend to submit to the Court a largely agreed-upon proposed deposition protocol and electronically-stored information protocol. Moreover, defendants have never identified any material impact that any allegedly missing elements of a required "discovery plan" would have on the proposed schedule or bellwether trial plan. This complaint by defendants is nothing more than elevating form over substance.

("PFS"),[4] should be conducted only after cases are selected for inclusion in the trial pool and only in the cases selected for the trial pool. This sequencing would apply to both fact and expert discovery, including disclosure of experts. In other words, case-specific experts would not be disclosed and deposed in all cases, but only in a subset of cases of either those included in the trial pool or, as the PSC proposed, those selected as bellwether trial cases. This sequenced approach is efficient and conserves resources,[5] while allowing the parties to proceed to trial in appropriate cases, all of which is consistent with MDL practice, the dictates of Fed. R. Civ. P. 1 (The rules should be "construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding."), and the approach outlined by Judge Fallon. Fallon at 2360.

### B. Defendants' Criticisms Are Without Merit

Beyond the areas of apparent agreement, Defendants have raised a series of non-meritorious objections to the PSC plan. Because these sprawling objections range from fundamental to niggling, rather than address each specific objection, the PSC has attempted to group the objections for purposes of this Reply into three basic categories: discovery should not continue; it is premature to design a bellwether process; and the PSC's proposed deadlines are too soon.

---

[4] After considering briefing and oral arguments, Magistrate Judge Boal approved the form for the PFS on February 14, 2014 (dkt. no. 923).

[5] The Court has also expressed an intention that "global" or common issues motions to dismiss would be heard first and that case-specific motions to dismiss would be deferred until a later time. Tr. of Status Hearing, December 13, 2013 at p. 23.

-4-

1164414.2

1.  **The Cases Should Move Forward Now**

The PSC's proposed bellwether trial plan and pre-trial scheduling order sets forth a schedule for moving the cases toward trial in May 2015. To reach this goal, discovery as to common issues must continue. A recurring theme in the oppositions is that it would be inefficient to conduct common discovery now because there are some "national" defendants engaged in mediation or other settlement processes. This argument is without merit. First, there is no reason that written discovery materials, including mandatory initial disclosures and fulsome responses to interrogatories, request to admit, and requests for documents, cannot be provided by defendants now. Second, the potential "national" defendants are all aware of the ongoing litigation and their role in it. They all have access to the electronic filings in this case and should be monitoring them. If discovery progresses, including depositions, the national defendants in mediation can choose (1) to conclude their mediation, with a resolution or without; (2) participate in the litigation process to protect their interests, while continuing their settlement process; or (3) if they do not settle the claims against them, ask the court later to permit them to take their own discovery at that time. This is a decision that litigants make in the civil justice system daily. The alternative urged by the defendants here, to delay the discovery process indefinitely until all settlement talks with all defendants have concluded, is inefficient and would violate Rule 1's mandate of bringing proceedings to a speedy conclusion.

2.  **Now is the time to Establish a Bellwether Trial Plan**

Another recurring theme in the defendants' oppositions is that it is premature to craft a bellwether trial plan. The argument is based on a flawed conflation of crafting the process with selecting the actual cases for inclusion in the process. The PSC plan sets forth a structure by which the parties would:

1164414.2

    (1)  gather data about the individual cases through Plaintiff Fact Sheets and document discovery, which will enable the parties to identify key variables in the gathered data;

    (2)  establish a process for populating a pool of cases from which trial cases will be selected;[6]

    (3)  sequence and schedule discovery in a way that allows the parties and the Court efficiently to marshal resources to best achieve a meaningful resolution process; and

    (4)  select the bellwether trial cases.

See Fallon at 2344-2347.

To ensure that the cases tried would be sufficiently representative of the cases in the MDL, the PSC plan restricted potential trial pool cases only to cases involving the administration of NECC's methylprednisolone acetate. Otherwise, nothing in the PSC's plan prejudges the number or nature of the key variables that would be identified by the parties, or any other substantive fact that would impact the bellwether trial selection.[7] If, as common discovery

---

[6] Defendants also complain that the PSC plan suffers from a "critical defect" in that it provides that counsel for each side – rather than the Court - would select their proposed bellwether trial pool candidates, with the Court later selecting the order that the cases would be set for trials. Defendant Unifirst Corp.'s Mem. In Opp. To PSC's Mot. at 16 (dkt. no. 965). In fact, this is an approach specifically discussed by Judge Fallon as an appropriate approach, in part because "attorneys are in the best position to know, or ascertain, the true census of the litigation," and attorneys "have the most staff resources available." Fallon at 2349.

[7] The universe contemplated by the initial bellwether plan is limited to patients who purchased the contaminated medication at clinics in Tennessee. This initial scope is because, by far, Tennessee claimants make up the vast majority of the cases presently filed in the MDL (__x__ of the total __y__ cases presently in the MDL are filed by Tennessee claimants). The Centers for Disease Control report that Tennessee has the second highest number of cases of fungal infections related to the outbreak (153), behind Michigan (264). Tennessee has a one-year statute of limitations applicable to personal injury and products liability claims. Michigan

(continued…)

progresses or as defendants review PFS's, defendants learn of new variables that they believe are important for a bellwether process - a highly unlikely outcome - they can incorporate that knowledge in their decisions as to which cases they select into the trial pool. Defendants could then make their arguments to the Court as to why their trial pool case or cases should be tried as initial bellwether cases. In short, there is no good reason to delay the establishment of a bellwether trial process.

### 3. The PSC's Proposed Deadlines are Realistic and Fair

Defendants complain that the deadlines set forth in the PSC plan are unrealistic and would somehow prejudice the defendants. This argument is also without merit. The schedule proposed by the PSC is intended to get a single case to trial by May 2015 – almost three years after most of the plaintiffs were injured or killed and about two-and-a-half years after the MDL was created. There is nothing about this timetable that is unusual or prejudicial to defendants. On the contrary, the interminable delay advocated by defendants is unfairly prejudicial to plaintiffs in that it would excessively delay justice. Moreover, to the extent that some discrete deadlines might require modification to accommodate busy counsel or for other good cause, those modifications can be made by agreement or by the Court at the appropriate time. In any event, the schedule proposed by the PSC is both realistic and fair.

---

(…continued)

claimants, on the other hand, have filed only ____ of the total cases in the MDL, which is likely due, in large part, to the three-year Michigan statute of limitation applicable to personal injury and products liability cases. So, as it stands today, the MDL is primarily composed of Tennessee cases and trying representative cases would significantly move the litigation forward. To accommodate future filed cases – which, for example, in the case of Michigan claimants, might not be filed until September 2015, the PSC plan contemplates that there would be additional bellwether trial pools created, with schedules running in parallel, but behind, the initial bellwether track. In short, there is no good reason to stop progress in the MDL because future additional cases might be filed years from now.

1164414.2

## III. CONCLUSION

For the foregoing reasons, the PSC requests that the Court enter its Bellwether Trial Plan and Pre-Trial Scheduling Order.

Dated: March __, 2014

/s/ Thomas M. Sobol
Thomas M. Sobol
Kristen Johnson Parker
HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Phone: (617) 482-3700
Fax: (617) 482-3003
tom@hbsslaw.com
kristenjp@hbsslaw.com

*Plaintiffs Lead Counsel*

Elizabeth J. Cabraser
Mark P. Chalos
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Phone: (415) 956-1000
Fax: (415) 956-1008
ecabraser@lchb.com
mchalos@lchb.com

*Federal/State Liaison*

Marc E. Lipton
LIPTON LAW
18930 W. 10 Mile Road
Southfield, MI 48075
Phone: (248) 557-1688
Fax: (248) 557-6344
marc@liptonlawcenter.com

1164414.2

Kim Dougherty
JANET, JENNER & SUGGS, LLC
75 Arlington St.
Suite 500
Boston, MA 02116
Phone: (617) 933-1265
kdougherty@myadvocates.com

Patrick T. Fennell
CRANDALL & KATT
366 Elm Avenue, S.W.
Roanoke, Virginia 24016
Phone: (540) 342-2000
pfennell@crandalllaw.com

J. Gerard Stranch, IV
Benjamin A. Gastel
BRANSETTER, STRANCH & JENNINGS PLLC
227 Second Avenue North
Nashville, TN 37201
Phone: (615) 254-8801
Fax: (615) 255-5419
gerards@branstetterlaw.com

Mark Zamora
ZAMORA FIRM
6 Concourse Parkway, 22nd Floor
Atlanta, GA 30328
Phone: (404) 451-7781
Fax: (404) 506-9223
mark@markzamora.com

*Plaintiffs Steering Committee*

1164414.2

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served via the Court's electronic filing system on March __, 2014.

/s/ *Thomas M. Sobol*
Thomas M. Sobol

1164414.2