# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br>    All Cases | )<br>)<br>)<br>)    MDL No. 1:13-md-2419-RWZ<br>)<br>)<br>)<br>) |

**JOINT REPLY OF THE CHAPTER 11 TRUSTEE AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS AS TO CERTAIN BANKRUPTCY ISSUES RAISED IN THE PLAINTIFFS' STEERING COMMITTEE'S PROPOSED SUR-SUR REPLY IN SUPPORT OF MOTION FOR ENTRY OF COMMON BENEFIT ORDER**

Paul D. Moore, the Chapter 11 Trustee (the "Trustee") for the bankruptcy Estate of New England Compounding Pharmacy, Inc. ("NECC" or the "Debtor"), and the Official Committee of Unsecured Creditors of NECC (the "Official Committee"), by and through their undersigned counsel, respectfully submit this joint reply to the *Plaintiffs' Steering Committee's* ("PSC") *Sur-Sur-Reply in Support of Motion for Entry of Common Benefit Order* (the "Proposed CBF Sur-Sur-Reply"), attached as **Exhibit 1** to the PSC's Motion for leave to file same [Dkt. No. 1008].

1.      As this Court is aware, the Trustee has reached settlements in principle with NECC's insiders and insurers that are projected to provide for the payment of settlement funds in excess of $100 million, and the Trustee and the Official Committee anticipate that final, executed settlement agreements will be completed shortly.  It is contemplated that additional settlements will be subsequently reached with other parties, through mediation or otherwise, that will result in additional funds paid to the Trustee for the benefit of NECC's bankruptcy estate.  Once executed, the settlement agreements will first need to be approved on an initial basis by the Bankruptcy Court administering NECC's chapter 11 case, pursuant to Federal Rule of Bankruptcy Procedure 9019, after which it is contemplated that the settlement proceeds will be

paid into escrow. The funds will be released to the Trustee from escrow after the Bankruptcy Court's confirmation of a Chapter 11 plan for NECC embodying the terms of the settlements (the "Plan"). The Plan, in turn, will provide for the creation of a "Tort Claimants' Trust" that will distribute the settlement funds to victims with allowed claims against the Debtor.

2.      On January 17, 2014, the PSC filed the *Plaintiffs' Steering Committee's Motion for Entry of Case Management Order Establishing Assessment Procedures to Fund Common Benefit Account* [Dkt. No. 790] (the "CBF Motion") and an accompanying memorandum of law [Dkt. No. 791]. Through the CBF Motion, the PSC seeks to establish procedures to fund a common benefit fund account (the "CBF Account"), specifically via an assessment of eight (8) percent to be held back from every recovery by plaintiffs in these MDL proceedings and other proceedings, including recoveries through any settlement related to any bankruptcy proceedings.

3.      On February 6, 2014, the PSC filed the *Plaintiffs' Steering Committee's Reply in Support of Motion for Entry of Common Benefit Order* [Dkt. No. 873] (the "CBF Reply") in response to the Trustee's and the Official Committee's limited objections to the CBF Motion.[1] In the CBF Reply, the PSC offered three possible procedural mechanisms through which this Court might accomplish the sequestration of common benefit funds:

> First, the Court could require that a percentage of the funds to be paid into the bankruptcy estate pursuant to any settlement with NECC Affiliated Defendants (or others) be set aside in a common benefit fund [("Option 1")]. Second, the Court could require the claims of attorneys in the MDL who are or may become entitled to payment of fees from a common benefit fund be recognized as a valid claim in the bankruptcy proceedings itself and paid in due course into a common benefit account [("Option 2")]. The final possibility is that if there is a tort trust created as part of an approved bankruptcy plan, the Court require that a percentage of those funds be set aside and paid into a common benefit account for later distribution [("Option 3")].

---

[1]      See Dkt. Nos. 833 (the "Official Committee's Limited Objection"), 834 (the "Trustee's Limited Objection").

2

CBF Reply at 4-5.  In the February 6, 2014 CBF Reply, the PSC did not take a position as to which of these Options would ultimately be most appropriate.  See id.

4. The Trustee and the Committee have repeatedly pointed out that any attempt to set aside the proceeds of settlements entered into by the Trustee on behalf of NECC's bankruptcy estate would violate the Bankruptcy Code by improperly invading the jurisdiction of the bankruptcy court over all property of NECC's bankruptcy estate.  See Official Committee's Limited Objection ¶ 5; Trustee's Limited Objection ¶ 1.  Accordingly, in their joint sur-reply filed with leave of this Court on February 13, 2014, the Trustee and the Official Committee set forth their position that both Options 1 and 2 violate the Bankruptcy Code by, *inter alia*, interfering with and taking property of the estate.  See *Sur-Reply of the Chapter 11 Trustee and the Official Committee of Unsecured Creditors to the Plaintiffs' Steering Committee's Reply in Support of Motion for Entry of Common Benefit Order* [Dkt. No. 914] ¶ 4.  The Trustee and the Official Committee also noted, with full reservation of rights, that Option 3 would not raise the same issues.  See id. ¶ 5.

5. Almost one month after the filing of the Trustee's and the Official Committee's sur-reply and the evening before this Court's March 13, 2014 MDL hearing, the PSC filed the Proposed CBF Sur-Sur-Reply.  In the Proposed CBF Sur-Sur-Reply, the PSC abandons the agnostic position taken in the CBF Reply as to which assessment Option is appropriate, and now affirmatively seeks implementation of Option 1.  See Proposed Sur-Sur-Reply at 1.  The PSC argues that Option 1 does not interfere with property of the estate, as Option 1 "would simply require a small, single-digit percentage of any funds *about to be paid* into the NECC bankruptcy estate be held back in a common benefit account *before* funds are actually paid into the bankruptcy estate."  Id. (emphasis in original).  However, for the purposes of the Bankruptcy

3

Code, this Option is wholly improper, and the PSC's distinction between settlement funds "*about to be paid* into the NECC bankruptcy estate" and settlement funds *actually held* by the estate is one without a difference.

6. Bankruptcy Code Section 541 defines what is and what is not property of the estate. Section 541(a)(2) provides that estate property "is comprised of all of the following property, *wherever located and by whomever held. . .* (2) [With exceptions not relevant here], all legal or equitable interests of [NECC] in property as of the commencement of [NECC's bankruptcy case]" (emphasis supplied). "[E]very conceivable interest of the debtor, *future, nonpossessory, contingent, speculative, and derivative*, is within the reach of § 541," including NECC's contingent interest in future income. Wood v Premier Capital, Inc. (In re Wood), 291 B.R. 219, 224 (B.A.P. 1st Cir. 2003) (quoting In re Yonikus, 996 F.2d 866, 869 (7th Cir. 1993)) (emphasis supplied). In turn, the automatic stay of Bankruptcy Code Section 362 prohibits parties from interfering with or seeking to exercise control over property of the estate. See, e.g., 11 U.S.C. § 362(a)(3) (the filing of a voluntary Chapter 11 petition "operates as a stay, applicable to all entities, of . . . any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate").

7. The Bankruptcy Court for the District of Massachusetts has directly addressed an estate's interest in settlement proceeds, including where those proceeds are held in trust for the debtor's benefit. In In re Darden, a chapter 13 debtor commenced an action (the "State Court Action") against GMAC Mortgage Corporation ("GMAC") and others to prosecute claims under, *inter alia*, the Massachusetts Consumer Protection Act. 474 B.R. 1 (Bankr. D. Mass. 2012). After its bankruptcy filing, the debtor entered into a settlement with GMAC pursuant to which GMAC paid $20,000 "for the benefit of [the debtor,] [which] shall be held in trust by [the

4

debtor's] attorney" pending resolution of the State Court Action.  Id. at 7.  The chapter 13 trustee moved for a turnover of the settlement proceeds from the debtor for payment to general unsecured creditors.  Id. at 6.  The court held that "[b]ecause the Debtor acquired a legal and/or equitable interest in this sum during the court [sic] of her bankruptcy case, the $20,000 of GMAC Settlement proceeds is property of the estate" and accordingly ordered the settlement proceeds turned over to the trustee.  Id. at 8; see also In re Rothwell, 159 B.R. 374, 380 (Bankr. D. Mass. 1993) (settlement proceeds held by law firm on behalf of debtor belonged to bankruptcy estate and were subject to turnover).

8. By the same token, NECC's estate will acquire a "legal and/or equitable interest" in the proceeds of settlements with NECC's insiders and insurers, or with any other parties, *immediately upon the Trustee's execution of settlement agreements on NECC's behalf, irrespective of whether the settlement proceeds have yet to be delivered into escrow (or to the Trustee)*.  The fact that the estate's interest in those funds is a "future, nonpossessory [or] contingent" interest is sufficient to render those funds property of NECC's estate under Bankruptcy Code Section 541.  See Wood, 291 B.R. at 224; Darden, 474 B.R. 1.  Accordingly, any attempt to tax those funds at any time, including "*before* funds are actually paid into the bankruptcy estate," will constitute an improper attempt to interfere with property of NECC's bankruptcy estate.

9. Furthermore, as the Committee and the Trustee have noted, some of the settlement monies to be paid into escrow as part of the subject settlements, and then to the Trustee, will be used to pay, *inter alia*, non-tort creditors and other administrative costs and claims of the estate.  See Committee's Limited Objection ¶ 4; Trustee's Limited Objection ¶ 1.  Accordingly, the PSC's Option 1 would also improperly and unfairly exact a "common benefit"

5

tax (for the PSC's benefit) on monies that are not being paid to the tort claimants.

10. As noted above, the PSC proffered three Options with respect to the relief requested. The Trustee and the Committee, with reservation of rights, have not identified any bankruptcy obstacle to Option 3, which is directed solely to those funds (i) that leave the estate (and only after they leave the estate), and (ii) are directed to payment to tort claimants. To the extent that this Court deems it necessary or appropriate at this time, any such assessment could be effectuated by directing that a percentage of whatever funds are distributed at confirmation to the Tort Claimants' Trust established under the Plan be set aside then and paid into a common benefit account for later distribution.

*[Remainder of page intentionally left blank]*

Dated: March __, 2014

Respectfully submitted,

| | |
|---|---|
| BROWN RUDNICK LLP | DUANE MORRIS LLP |
| By: _____<br>David J. Molton, Esq.<br>Seven Times Square<br>New York, New York 10036<br>Telephone: (212) 209-4800<br>Facsimile: (212) 209-4801<br>dmolton@brownrudnick.com | By: _____<br>Michael R. Gottfried (BBO #542156)<br>100 High Street<br>Suite 2400<br>Boston, MA 02110-1724<br>Phone: (857) 488-4200<br>Email: mrgottfried@duanemorris.com |
| and | *Counsel for Paul D. Moore, Chapter 11 Trustee of New England Compounding Pharmacy, Inc. d/b/a New England Compounding Center* |
| William R. Baldiga, Esq.<br>Kiersten A. Taylor, Esq.<br>One Financial Center<br>Boston, Massachusetts 02111<br>Telephone: (617) 856-8200<br>Facsimile: (617) 856-8201<br>wbaldiga@brownrudnick.com<br>ktaylor@brownrudnick.com | |
| *Counsel to the Official Committee of Unsecured Creditors of New England Compounding Pharmacy, Inc.* | |

## CERTIFICATE OF SERVICE

     I hereby certify that on _____, 2014, I caused a copy of the foregoing Motion to File Joint Reply to be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants, by first class mail, postage prepaid.

Dated: _____, 2014
       Boston, Massachusetts                              _____

61617608 v