UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION _____ This Document Relates to: All Cases _____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

MDL No. 2419
Dkt. No. 1:13-md-2419-RWZ

**The Tennessee Clinic Defendants'
Memorandum in Support of their
Motion to Reconsider and Revise MDL Order No. 6
to Allow All Parties Equal Access to
the Documents Produced by NECC to the PSC**

Saint Thomas Outpatient Neurosurgical Center, LLC; Howell Allen Clinic, a Professional Corporation; John W. Culclasure, MD; Debra V. Schamberg, RN; Specialty Surgery Center, Crossville, PLLC; Kenneth R. Lister, MD; Kenneth Lister, MD, PC; and Donald E. Jones, MD (collectively "the Tennessee Clinic Defendants") hereby file this Memorandum in Support of their Motion to Reconsider and Revise MDL Order No. 6.

The Order precludes the Clinic Defendants from accessing roughly 40,000 documents produced by the New England Compounding Center ("NECC") to the Plaintiffs' Steering Committee ("PSC"), now housed in an electronic repository. While MDL Order No. 6's initial protection of these NECC documents may have been justified, its application is no longer equitable. The Court should end the PSC's monopoly on access to these NECC documents by providing all parties with equal access to this critically important information.

Thus, the Tennessee Clinic Defendants move to grant *all* parties *equal* access to the NECC documents in the U.S. Legal document repository.

## Background

### 1. MDL Order No. 6

On June 18, 2013, the PSC, NECC, the Affiliated Defendants,[1] and the Official Committee of Unsecured Creditors jointly moved the Court for entry of MDL Order No. 6.[2] Notably, the Tennessee Clinic Defendants, as well as many other Clinic Defendants, did not participate in negotiation of the Order as they were not yet parties to the MDL.

The Order requires the PSC to maintain an online document repository to provide all parties access to documents produced during discovery.[3] However, the Order creates an exception for documents the NECC Trustee produces to the PSC or the Creditors' Committee:

> Materials produced informally or pursuant to a confidentiality or protective order by the trustee to the Plaintiffs' Steering Committee or the Creditors' Committee shall not be made available through the repository.[4] [5]

Neither the joint motion nor the Order explains the justification for this affirmative preclusion of other parties' access to these documents.

---

[1] The parties to this MDL consistently refer to NECC's owners and the other Defendants sharing common ownership with NECC as "the Affiliated Defendants."

[2] [Dkt. 185].

[3] MDL Order No. 6 § III.D.5.

[4] *Id.*

[5] The Tennessee Clinic Defendants note that MDL Order No. 6 also stayed discovery of NECC. MDL Order No. 6 § III.D.1. The Tennessee Clinic Defendants do not request any discovery from NECC. They only request access to discovery *already informally produced* by NECC. If the Court finds that the relief requested requires the Court to lift the discovery stay, the Tennessee Clinic Defendants hereby request that the Court reconsider and revise MDL Order No. 6 to lift the discovery stay as to NECC for the limited purpose of granting all parties equal access to the documents in the U.S. Legal document repository already produced by NECC, for the reasons set forth in Section 2. below.

2. **The NECC Documents and the Clinic Defendants' Multiple Requests for Access to the Documents**

The Tennessee Clinic Defendants learned as early as September 2013 that the Trustee has produced *over 40,000* NECC documents "informally" to the PSC.[6] These documents are critical to both assessing NECC's liability in these cases and defending the lawsuits against the Clinic Defendants.[7] At this point, the PSC has enjoyed over six months of unfettered, unilateral access to this enormous cache of information, while affirmatively blocking others' access.

On September 17, 2013, counsel for the Tennessee Clinic Defendants wrote to the PSC requesting equal access to the NECC documents in the repository.[8] [9] The PSC refused, citing a confidentiality agreement it entered into with NECC's Trustee.[10] The Trustee likewise rejected the request, claiming that a confidentiality agreement prohibited the PSC from providing equal access to the NECC documents, but provided no justification for the asserted prohibition.[11]

At the January 10, 2014 status conference, the Trustee advised the Court that all requests for documents from NECC had been "addressed promptly and appropriate productions made."[12] While this was surprising given the rejection of the Tennessee Clinic Defendants' September request, the Tennessee Clinic Defendants nonetheless requested the documents again, this time directly from NECC on January 28, 2014, via

---

[6] Hr'g Tr. 29:3-4 (Feb. 6, 2014 status conference).
[7] The Tennessee Clinic Defendants will assert comparative fault against NECC.
[8] The Tennessee Clinic Defendants' letter is attached as Exhibit A.
[9] Counsel for the Tennessee Clinic Defendants also verbally requested that the PSC grant them access to the NECC documents on *numerous* other occasions.
[10] The PSC's response letter is attached as Exhibit B.
[11] The Trustee's response letter is attached as Exhibit C.
[12] Hr'g Tr. 36:7-8 (Jan. 10, 2014 status conference).

letter to the Trustee and counsel for NECC.[13] The Trustee again denied the request, boldly stating that access would only come if these Defendants agreed to mediation.[14][15]

At this point, the PSC has prosecuted lawsuits against the Tennessee Clinic Defendants and other Clinic Defendants for more than six months with one-sided access to this critical information from NECC. NECC has likewise produced nothing informally or formally to the Clinic Defendants.

After several unsuccessful attempts to resolve this dispute informally without court intervention, the Tennessee Clinic Defendants must now move the Court to formally revise MDL Order No. 6 to grant *all* parties *equal* access to the documents in the U.S. Legal document repository, specifically the documents NECC has produced to the PSC.[16]

---

[13] The Tennessee Clinic Defendants' letter is attached as Exhibit D.

[14] The Trustee's email is attached as Exhibit E.

[15] No explanation was given as to why participation in mediation was the determining factor in NECC granting access to their documents to a select few entities.

[16] The Tennessee Clinic Defendants anticipate parties accessing the NECC documents in the repository will pay a reasonable fee as provided by MDL Order No. 6 § IV.D.5.

## Law and Argument

### 1.  Fed. R. Civ. P. 54(b) and Fed. R. Civ. P. 26

The Court has general, inherent discretion to reconsider any interlocutory order.[17]

Specifically, pursuant to Rule 54(b), the Court has the power to afford relief from

interlocutory orders "as justice requires."[18] Rule 54(b) states:

> (b) JUDGMENT ON MULTIPLE CLAIMS OR INVOLVING MULTIPLE PARTIES. When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. <u>Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.</u>[19]

Whether to reconsider a previous order is "within the sound discretion of the

Court."[20] Such requests often "do not necessarily fall within any specific Federal Rule"

but "rely on 'the inherent power of the rendering district court to afford such relief from

interlocutory judgments…as justice requires.'"[21]  The Court can reconsider any

interlocutory order or ruling.[22]

---

[17] *Greene v. Union Mut. Life Ins. Co. of Am.*, 764 F.2d 19, 22 (1st Cir. 1985).

[18] *Homeowner Options for Massachusetts Elders, Inc. v. Brookline Bancorp, Inc.*, 789 F. Supp. 2d 242, 243 (D. Mass. 2011) (citing *Greene*, 764 F.2d at 22).

[19] Fed. R. Civ. P. 54(b) (emphasis added).

[20] *Homeowner*, 789 F. Supp. 2d at 243 (citing *Campos v. P.R. Sun Oil Co., Inc.*, 536 F.2d 970, 972 n.6 (1st Cir. 1976)).

[21] *Greene*, 764 F.2d at 22 (additional cites omitted).

[22] *See Moses Cone Mem'l Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 12 n. 14 (1983) (citing Rule 54(b) as support for notion that "every order short of a final decree is subject to reopening at the discretion of the district judge"); *see, e.g., Inetianbor v. Cashcall, Inc.*, Case No. 13-600-66-CIV-COHN/SELTZER (S.D. Fla. Aug. 19, 2013) ("Order Denying Motion for Reconsideration" of order compelling arbitration); *Arias v. Dyncorp.*, 856 F. Supp. 2d 46, 51 (D.D.C. 2012) (citing Rule 54(b) and finding "Courts may reconsider any interlocutory decision such as a discovery ruling 'at any time before the entry of a judgment adjudicating…all the parties' rights and liabilities'") (additional cites omitted); *City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 886-97 (9th Cir. 2001) (citing Rule 54(b) in analyzing reconsideration of order rescinding previous order); *see generally Fayetteville Investors v. Commercial Builders, Inc.*, 936

Various courts have described the standard by which a motion to reconsider a previous interlocutory order should be considered:

- Relief upon reconsideration should be granted "as justice requires."[23]

- When the trial court has misunderstood a party, has made a decision outside the issues presented by the parties, has made an error of apprehension, or where the controlling law or facts have changed.[24]

- Relief should be afforded where reconsideration is necessary under the circumstances.[25]

- Relief should be afforded for cause determined by the trial court to be sufficient.[26]

- A less exacting standard than Rule 59(e) and Rule 60(b).[27]

- Whether there has been an intervening change in the law, new evidence, or the need to correct error or prevent injustice.[28]

Additionally, as this Court is well-aware, a district court has a "broad measure of discretion in managing pretrial affairs, including the conduct of discovery [under Rule 26]."[29] This broad discretion includes allowing access to documents produced in discovery.[30]

Regardless of the particular standard or factors applied, the Court should exercise its broad discretion and grant equal access to the NECC documents. Justice requires this revision to the Order based on the change of facts and circumstances since the initial Order was entered and for the multitude of reasons explained below.

---

F.2d 1462, 1469-73 (4th Cir. 1991) (noting that Rule 54(b), not Rule 60(b), should be used when analyzing motions to reconsider previous interlocutory orders).

[23] *Greene*, 764 F.2d at 22; *Botvin v. Islamic Republic of Iran*, 772 F. Supp. 2d 218, 223 (D.D.C. 2011).

[24] *Ficken v. Golden*, 696 F. Supp. 2d 21, 35 (D.D.C. 2010).

[25] *Bryant v. Central Intelligence Agency*, No. 09-0940 (EGS) (D.D.C. Oct. 14, 2011).

[26] *Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. 1981).

[27] *Wells' Dairy, Inc. v. Travelers Indemnity Co. of Illinois*, No. C01-4097-MWB (N.D. Iowa Sept. 23, 2004).

[28] *Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1369 (S.D. Fla. 2002).

[29] *Mack v. Great Atl. & Pac. Tea Co., Inc.*, 871 F.2d 179, 186-87 (1st Cir. 1989) (additional citations omitted).

[30] *See generally Fed. Trade Comm'n v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 408 (1st Cir. 1987).

### 2. Denying Equal Access to Critical Documents from NECC at this Stage is Unjust and Contrary to the Well-Established Principles of Discovery.

#### a. Access to the documents is necessary to allow fair, mutual access to this relevant information.

First, access to the documents is necessary to allow fair, mutual access to relevant information as discovery in this litigation gets underway.

Magistrate Judge Boal succinctly set forth the central tenets of discovery in ruling on a motion to quash in this case:

> "Discovery procedures set forth in the Federal Rules of Civil Procedure seek to further the interests of justice by minimizing surprise at trial and ensuring wide-ranging discovery of information."[31] To that end, Rule 26(b) permits "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . ." or discovery of any information that "appears reasonably calculated to lead to the discovery of admissible evidence."[32] Rule 26(b)(1) generally permits liberal discovery of relevant information.[33] As the Supreme Court has instructed, because "discovery itself is designed to help define and clarify the issues," the limits set forth in Rule 26 must be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case."[34] [35]

"Mutual knowledge of all the relevant facts gathered by both parties is *essential* to proper litigation."[36]

For over six months, the parties to this MDL have *not* been afforded "mutual knowledge." Instead, the PSC has enjoyed unilateral access to over 40,000 pages that are absolutely critical to this litigation.

Access to these documents ensures that all involved parties have available the knowledge necessary to fairly litigate these cases.

---

[31] (quoting *Cartel Asset Mgmt. v. Ocwen Fin. Corp.*, No. 01-cv-01644, 2010 WL 502721, at *9 (D. Colo. Feb. 8, 2010) (citing *United States ex rel. Schwartz v. TRW, Inc.*, 211 F.R.D. 388, 392 (C.D. Cal. 2002))).
[32] (quoting Fed. R. Civ. P. 26(b)).
[33] (quoting *Baker v. Liggett Group, Inc.*, 132 F.R.D. 123, 125 (D. Mass. 1990)).
[34] (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).
[35] Order on Motions to Quash Subpoena at 2-3 [Dkt. 890].
[36] *Hickman v. Taylor*, 329 U.S. 495, 507 (1947) (emphasis added).

### b. The protection of the documents to facilitate settlement is no longer necessary.

Second, any benefit derived from restricting access to the documents related to prior settlement negotiations has abated.

When MDL Order No. 6 was entered in June 2013, NECC and the PSC were involved in settlement negotiations. At the time, nurturing the prospects of a settlement through those negotiations may have justified withholding key NECC documents from other parties.

However, that protection was only meant to be a temporary measure, to be amended as time and circumstances evolved, as evidenced by Judge Saylor's comments during the December 12, 2013 status conference:

> Even the affiliated companies, or for that matter, at some point the bankrupt entity itself are going to have to produce discovery somehow in some form, and I don't see any reason why that process cannot at least get underway in some rational form.[37]

Then, on December 23, 2013, the Plaintiffs announced a settlement in principle with NECC and the Affiliated Defendants.[38] At the March 13, 2014 status conference, the Trustee made the following announcement:

> We're very close to having, we think, signed agreements. I can report to you that the final settlement agreements for the two NECC insurers are out for signature. The insiders' insurers, that agreement is final as well, subject to buttoning up the last issue, really, with the insiders.[39]

---

[37] Hr'g Tr. 57:20-24 (Dec. 12, 2013 status conference).
[38] http://www.reuters.com/article/2013/12/23/ma-necc-settlement-idUSnPnNEg2mBD+163+PRN20131223
[39] Hr'g Tr. 25:19-25 (Mar. 13, 2014 status conference).

If the justification for limited access to NECC's documents was to facilitate a settlement with NECC, the finalization of the settlement eliminates the need to limit access to the documents. Because the information NECC produced since June 2013 was presumably known when the settlement was reached, sharing that same information with the other parties will not endanger the viability of the settlement agreements, even if some have not yet been executed.

### c. The PSC agrees that discovery of the Affiliated Defendants and the NECC documents should move forward.

Third, as further proof that the uneven limitation in MDL Order No. 6 has outlived its usefulness, the PSC itself has filed a Motion to Partially Lift the Discovery Stay as to the Affiliated Defendants.[40] The PSC's justification for that request – that discovery should be opened up and the litigation should move forward – also applies in this context.[41] And, the PSC has stated that it does not oppose the Clinic Defendants' access to these documents.[42]

### d. The documents are necessary to defend the cases.

Fourth, the documents are crucial to the parties in this litigation who either have or may assert comparative fault defenses against NECC, the Affiliated Defendants, and others, and to the defense of the cases against the Clinic Defendants.

---

[40] [Dkt. 534].
[41] Hr'g Tr. 30:2-15 (Jan. 10, 2014 status conference).
[42] *See* email from PSC related to request for access to repository, and stating the PSC "believes that all parties should have access to NECC-related documents," attached as Exhibit F.

Reportedly, NECC and the Affiliated Defendants have settled all lawsuits pending against them in this MDL. Now, the PSC has shifted focus to UniFirst and the Clinic Defendants. The PSC has even moved the Court to enter a pretrial scheduling order against some of the Tennessee Clinic Defendants with an anticipated trial date in early 2015.[43]

However, the PSC's proposed discovery plan contains no provision for granting the Clinic Defendants access to these critical documents from NECC. The Tennessee Clinic Defendants and others will assert comparative fault against NECC. With the settlement, the PSC now has no incentive to develop a case against NECC. This burden now falls entirely on the Clinic Defendants asserting comparative fault. The Tennessee Clinic Defendants will be required to present proof, including expert testimony, of NECC's wrongdoing. The documents produced by NECC will likely form part of the foundation of that proof.

The Tennessee Clinic Defendants also need the documents to defend themselves. The PSC seeks to depose key witnesses of the Tennessee Clinic Defendants but refuses to provide access to the NECC documents in the repository prior to the depositions. There is likely information in the documents produced by NECC that will arise during those depositions. The mutual discovery process is designed to eliminate such opportunities to conduct a deposition by ambush through cross-examination with inaccessible information.[44]

---

[43] [Dkt. 837].
[44] *Hickman*, 329 U.S. at 507.

The Tennessee Clinic Defendants must have access to the documents to assess the relative strength of the cases filed against them. The PSC continues to push for a global resolution of these suits through mediation. Without access to this readily-available but crucial information regarding the central party in the MDL, the Tennessee Clinic Defendants cannot fully evaluate the cases against them.

**e.  Review of the documents now promotes efficiency.**

Fifth, access now is necessary to ensure efficient movement through the initial stages of discovery. Review of 40,000 documents by numerous parties will take time. Specifically, the Tennessee Clinic Defendants must have adequate time to review the over 40,000 pages of documents, conduct any additional, necessary investigation, and obtain expert opinions. Likewise, there may well be additional at-fault parties identified in the NECC documents. The Tennessee Clinic Defendants will require time to develop their proof against those parties, too. There is no reason to delay the Tennessee Clinic Defendants from beginning this process any longer.

**f.  Providing access to the documents costs the bankrupt estate nothing.**

Lastly, access to the documents requires NECC to do absolutely nothing, and it costs the debtor's estate nothing. It simply requires the PSC to provide the other parties with log-in information to a document repository.

**Conclusion**

Allowing the PSC and NECC to continue to hide behind a confidentiality agreement and agreed case management order they negotiated without the Tennessee Clinic Defendants' input no longer serves any legitimate purpose, and instead only deprives the Tennessee Clinic Defendants of a full and fair opportunity to utilize the documents to defend themselves.

The documents being withheld have been produced by NECC, the central party in this MDL. Those documents are crucial to other parties. Withholding that critical, discoverable information from certain parties, whether strategic or not, is prejudicial to the Tennessee Clinic Defendants. Depriving all parties of equal access to discovery produced by NECC is no longer equitable and directly conflicts with the central tenets of the discovery process.

Respectfully, the Court should reconsider MDL Order No. 6 and level the playing field by granting all parties equal access to the U.S. Legal document repository, specifically the documents produced "informally" to the PSC by NECC.

Respectfully submitted,

**GIDEON, COOPER & ESSARY, PLC**

/s/ Chris J. Tardio
**C.J. Gideon, Jr.**[45]
**Chris J. Tardio**[45]
**Alan S. Bean**[46]
**Matthew H. Cline**[45]
**John-Mark Zini**[45]
315 Deaderick Street, Suite
Nashville, TN 37238
Ph: (615) 254-0400
Fax: (515) 254-0459
chris@gideoncooper.com

*Attorneys for the Tennessee
Clinic Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be served electronically to the registered participants identified on the Notice of Electronic Filing and copies will be e-mailed or mailed via regular U.S. mail to those participants identified as unregistered this 27th day of March, 2014.

/s/ Chris J. Tardio
**Chris J. Tardio**

---

[45] Admitted pursuant to MDL Order No. 1.
[46] Admitted *pro hac vice*.

13