UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | ) | MDL No. 2419<br>Dkt. No. 1:13-md-2419-RWZ |
| This Document Relates to:<br><br>All Suits | ) | |

**The Tennessee Clinic Defendants'**
**Joinder in the Plaintiffs' Steering Committee's**
**Motion to Partially Lift the Discovery Stay**

Saint Thomas Outpatient Neurosurgical Center, LLC; Howell Allen Clinic, a Professional Corporation; John W. Culclasure, MD; Debra V. Schamberg, RN; Specialty Surgery Center, Crossville, PLLC; Kenneth R. Lister, MD; Kenneth Lister, MD, PC; and Donald E. Jones, MD (collectively "the Tennessee Clinic Defendants") hereby join in the Plaintiffs' Steering Committee's ("PSC") Motion to Partially Lift the Discovery Stay [Dkt. 534].

## Introduction

The Tennessee Clinic Defendants join the PSC in moving the Court to lift the discovery stay as to the Affiliated Defendants. Once a settlement was reached with NECC and the Affiliated Defendants in December 2013, the stay had outlived its purpose.

This MDL cannot progress unless and until all parties have equal and full access to information, including discovery from the Affiliated Defendants[1] and NECC. The

[1] The parties to this MDL consistently refer to NECC's owners and the other Defendants sharing common ownership with NECC as "the Affiliated Defendants." These individuals and entities have *not* declared bankruptcy.

Tennessee Clinic Defendants and other Defendants who choose to contest the allegations against them need discovery from the Affiliated Defendants to (1) prove the comparative fault of the true wrongdoers, NECC and the Affiliated Defendants; (2) identify other potentially at-fault parties; (3) defend against the Plaintiffs' claims; and (4) fully understand the strength of the cases against them.

Therefore, the Tennessee Clinic Defendants respectfully request the Court enter an order (1) lifting the discovery stay as to the Affiliated Defendants and (2) ordering the parties to meet and confer regarding a cost-effective and efficient plan for discovery of the Affiliated Defendants to include initial disclosures, standardized discovery requests or an Affiliated Defendant Fact Sheet, targeted follow-up discovery requests, and depositions of key witnesses.

**Background**

From the very first status conference of this MDL, well before the Tennessee Clinic Defendants were made parties, there has been a stay of discovery of NECC and the Affiliated Defendants.[2] MDL Order No. 6 formalized the discovery stay,[3] which was negotiated by the PSC, NECC, the Affiliated Defendants, and the Official Committee of Unsecured Creditors, without input from the Tennessee Clinic Defendants, who were not yet parties to the MDL.

The purpose of the stay was to facilitate settlement with all then-current Defendants, which would have resolved the MDL entirely and eliminated the need for discovery. Subsequently, additional Defendants were added to the MDL, and the Court

---

[2] *See* Clerk's Note from Mar. 12, 2013 status conference, located between Dkts. 45 and 46.
[3] MDL Order No. 6 § III.D.1. [Dkt. 209].

recognized that the litigating Defendants were entitled to discovery from NECC and the Affiliated Defendants even if they settled.[4]

After four months without a settlement, the PSC filed a motion to lift the discovery stay of the Affiliated Defendants.[5] The motion was opposed by the Trustee,[6] the Official Committee of Unsecured Creditors,[7] and, of course, the Affiliated Defendants.[8] A definitive ruling on the PSC's motion was repeatedly put off by agreement of the parties or order of the Court.

On December 23, 2013, the PSC announced a settlement in principle with NECC and the Affiliated Defendants.[9] At the January 10, 2013, status conference the Trustee advised that intended to file a motion to approve the settlement with the bankruptcy court within "30 days or so."[10] More than twice that time has now passed. The Affiliated Defendants have yet to finalize the settlement, let alone present it to the bankruptcy court for approval.[11]

There is no compelling justification for depriving other parties of necessary discovery simply because the settlement with the Affiliated Defendants has not been finalized

---

[4] Hr'g Tr. 31:10-13 (Jan. 10, 2014) ("We're going to have to [lift the stay] eventually anyway unless every single defendant settles….").
[5] [Dkt. 534].
[6] [Dkt. 758].
[7] [Dkt. 762].
[8] [Dkt. 757].
[9] http://www.reuters.com/article/2013/12/23/ma-necc-settlement-idUSnPnNEg2mBD+163+PRN20131223
[10] Tr. Jan. 10, 2014 Status Conf. 25:2-7.
[11] The Trustee announced at the Mar. 13, 2014 status conference, that the settlement agreements are in various stages of finalization but had not been signed by many of the settling parties. Hr'g Tr. 26:16-25 (Mar. 13, 2014 status conference).

## Law and Argument

### I. Well-settled discovery principles direct lifting the discovery stay of the Affiliated Defendants.

Rule 26 provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any claim or defense…."[12] The Supreme Court has further held that "the deposition-discovery rules are to be accorded a broad and liberal treatment."[13] "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation."[14]

These principles of discovery lead to the inescapable conclusion that the remaining Defendants are entitled to commence discovery of the Affiliated Defendants.

There is no compelling reason for the discovery stay to remain in place. The purpose of the stay was to allow the Affiliated Defendants to settle the case. On December 23, 2013, the Trustee announced that purpose had been accomplished. The stay is no longer necessary and should be lifted.

---

[12] Fed. R. Civ. P. 26(b)(1).

[13] *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).

[14] *Id.*

## II. Lifting the discovery stay of the Affiliated Defendants is the next logical step in resolving this litigation.

Now that settlement has been reached with NECC and the Affiliated Defendants, the next step is to proceed with litigation against the non-settling parties. Motions to dismiss are in various stages of briefing. The Court has already entered an order governing discovery of the Plaintiffs.[15] Various proposals regarding discovery of the non-settling Defendants are pending before the Court.[16] Remaining is a plan to proceed with formal discovery of NECC and the Affiliated Defendants.

Discovery of these individuals and entities is crucial to the Tennessee Clinic Defendants. With the settlement of the Affiliated Defendants, the primary burden of proving their wrongdoing at trial shifts from the PSC to the other Defendants, including the Tennessee Clinic Defendants, who will assert comparative fault against the Affiliated Defendants. To develop this proof, the Tennessee Clinic Defendants need discovery from the Affiliated Defendants.

The Tennessee Clinic Defendants know little about the factual basis for the allegations against the Affiliated Defendants. The little information they obtained thus far has been publicly reported by newspapers and various government agencies. The PSC has the benefit of information exchanged during settlement discussions. With the PSC pushing for an accelerated schedule at every turn of this MDL, the Tennessee Clinic Defendants will be prejudiced by the inability to fully develop factual and expert proof of the Affiliated Defendants' fault unless the Court lifts the stay in the immediate future.

---

15 [Dkt. 722].
16 [Dkts. 837, 858, 964, 965].

Similarly, discovery of the Affiliated Defendants may lead to the identification of new at-fault parties. The Tennessee Clinic Defendants will also need adequate time to develop proof against those individuals and/or entities.

The Tennessee Clinic Defendants also need the discovery to defend the cases against them. The PSC already served more than 100 discovery requests on each of the Tennessee Clinic Defendants associated with Saint Thomas Outpatient Neurosurgical Center and Specialty Surgery Center, Crossville. In a typical case, the Tennessee Clinic Defendants would have the benefit of *at least* initial disclosures from the primary defendants before being required to respond to written discovery.

Likewise, the PSC requested deposition dates for individuals associated with the Tennessee Clinic Defendants before it even moved to lift the discovery stay. The Tennessee Clinic Defendants cannot be expected to fairly and fully defend themselves in a deposition without *some* discovery from the Affiliated Defendants.

Finally, the Tennessee Clinic Defendants cannot adequately assess the strength of the cases filed against them without discovery from the Defendants at the center of this MDL. The PSC aggressively pushed the Tennessee Clinic Defendants to participate in the Court-sanctioned mediation program. But, without so much as initial disclosures from the Affiliated Defendants, it has been next to impossible for the Tennessee Clinic Defendants to envision what a trial in this case will even look like, let alone predict the probable outcome. The Tennessee Clinic Defendants need a full picture of the scope of the wrongdoing of the other Defendants before they can even consider resolving these cases through settlement.

**III. The Court should order the parties to meet and confer on a discovery plan for NECC and the Affiliated Defendants.**

The Tennessee Clinic Defendants are sensitive to the problems presented by discovery in a case of this magnitude. Significant planning and forethought will help minimize wasted time and expense. The Tennessee Clinic Defendants echo Judge Saylor's plan for lifting the discovery stay:

> When I do lift the stay…it's not going to start with the issuance of Rule 34 requests, it's going to start with a meet and confer, and we're going to have a plan, and we're going to talk about what makes sense going forward….[17]

The Tennessee Clinic Defendants respectfully request that the Court lift the discovery stay of the Affiliated Defendants and order the parties to meet and confer to develop a discovery plan that includes efficient discovery mechanisms like initial disclosures, standardized discovery requests or defendant fact sheets, targeted follow-up discovery requests, and depositions that will apply to all cases in the MDL.

**IV. The arguments against lifting the discovery stay are meritless.**

The PSC's motion to lift the stay was opposed by the Trustee,[18] the Official Committee of Unsecured Creditors,[19] and the Affiliated Defendants.[20] Their arguments against lifting the stay fall into three categories:

1. Lifting the stay will jeopardize the settlement.
2. Good cause for lifting the stay does not exist.
3. Discovery is expensive and will take funds away from the settlement.

Upon closer examination, these arguments are without merit.

---

[17] Hr'g Tr. 36:24-37:5 (Jan. 10, 2014 status conference).
[18] [Dkt. 758].
[19] [Dkt. 762].
[20] [Dkt. 757].

Lifting the discovery stay will in no way jeopardize the settlement because the settlement has already been reached. The Trustee announced at the last status conference that the settlement agreements were in various stages of finalization.[21] There is no reason to expect that lifting the stay as to the Affiliated Defendants and requiring the parties to meet and confer on a discovery plan will affect the settlement.

MDL Order No. 6 requires *the PSC* to demonstrate good cause to lift the stay.[22] However, the order does not require *any other parties* to show good cause to lift the stay, probably because the PSC negotiated MDL Order No. 6 with the Affiliated Defendants without input from the Tennessee Clinic Defendants. The Tennessee Clinic Defendants would not have agreed to a stay of discovery of the Affiliated Defendants, let alone a required showing of good cause to obtain discovery they are entitled to as a matter of course under Fed. R. Civ. P. 26. In fact, Rule 26(c) requires a showing of good cause to stay discovery, not the other way around.

Regardless, the Tennessee Clinic Defendants *have* demonstrated good cause for lifting the stay, as discussed in Section II. Requiring the Tennessee Clinic Defendants to defend the cases against them without discovery from the individuals and entities at the center of this MDL is extremely prejudicial.

Finally, the argument that discovery will reduce settlement funds ignores the reality of this litigation. The Tennessee Clinic Defendants are entitled to discovery from the Affiliated Defendants, whether they settle or not. As Judge Saylor observed when discussing lifting the stay, "[w]e're going to have to do this eventually anyway unless

---

[21] Hr'g Tr. 26:16-25 (Mar. 13, 2014 status conference).
[22] MDL Order No. 6 § II.H. [Dkt. 209].

every single defendant settles, and it's been a while, and we ought to get going on it."[23] However, to minimize the financial impact and make discovery as efficient as possible, the Tennessee Clinic Defendants propose that the Court order the parties to meet and confer on a discovery plan, rather than simply lifting the stay and allowing any party in the MDL to bombard the Affiliated Defendants with discovery requests.

**Conclusion**

For the foregoing reasons, the Tennessee Clinic Defendants hereby join in the PSC's Motion to Partially Lift the Discovery Stay and move the Court to (1) lift the discovery stay, and (2) order the parties to meet and confer regarding a discovery plan for the Affiliated Defendants.

Respectfully submitted,

**GIDEON, COOPER & ESSARY, PLC**

/s/ Chris J. Tardio
**C.J. Gideon, Jr.**[24]
**Chris J. Tardio**[23]
**Alan S. Bean**[25]
**Matthew H. Cline**[23]
**John-Mark Zini**[23]
315 Deaderick Street, Suite
Nashville, TN 37238
Ph: (615) 254-0400
Fax: (515) 254-0459
chris@gideoncooper.com

*Attorneys for the Tennessee Clinic Defendants*

[23] Hr'g Tr. 31:10-13 (Jan. 10, 2014).
[24] Admitted pursuant to MDL Order No. 1.
[25] Admitted *pro hac vice*.

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be served electronically to the registered participants identified on the Notice of Electronic Filing and copies will be e-mailed or mailed via regular U.S. mail to those participants identified as unregistered this 28th day of March, 2014.

/s/ Chris J. Tardio
**Chris J. Tardio**