UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | MDL No. 2419 Case No. 1:13-md-2419-RWZ |
| THIS DOCUMENT RELATES TO: The cases listed in Exhibit A | |

**THE PLAINTIFFS' STEERING COMMITTEE'S MEMORANDUM OF LAW IN OPPOSITION TO THE SAINT THOMAS ENTITIES' GLOBAL MOTION TO DISMISS[1]**

---

[1] The Plaintiffs' Steering Committee, on behalf of the plaintiffs in MDL 2419 whose cases are listed in Exhibit A ("Plaintiffs"), respectfully submits this opposition to the Global Motion to Dismiss filed by Saint Thomas West Hospital, formerly known as St. Thomas Hospital ("St. Thomas Hospital"), Saint Thomas Network, and Saint Thomas Health (all three collectively, the "St. Thomas Entities," or "Defendants").

-1-

# TABLE OF CONTENTS

**Page**

I.      FACTUAL BACKGROUND ............................................................... 2

II.     STANDARD OF REVIEW ............................................................... 5

III.    ARGUMENT ............................................................................ 7

    A.      Plaintiffs Sufficiently Allege that St. Thomas Clinic, Dr. Culclasure,
        and Ms. Schamberg Were Agents of Defendants. ....................................... 8

        1.      *Actual Agency* ........................................................... 9

        2.      *Apparent Agency* .........................................................12

    B.      Plaintiffs Sufficiently Allege that the St. Thomas Entities and St.
        Thomas Clinic Are Alter Egos of Each Other. ...........................................14

    C.      Plaintiffs State Valid Claims against St. Thomas Clinic. ............................16

IV.     CONCLUSION ..........................................................................20

# TABLE OF AUTHORITIES

**Page**

## Cases

*Abshure v. Methodist Healthcare-Memphis Hosps.*,
    325 S.W.3d 98 (Tenn. 2010) ............................................................. 6, 13, 14

*Ashcroft v. Iqbal*,
    129 S.Ct. 1937 (2009) ............................................................................ 5, 6

*Bell Atlantic v. Twombly*,
    550 U.S. 544 (2007) .............................................................................. 5, 6, 7

*Boren ex rel. Boren v. Weeks*,
    251 S.W.3d 426 (Tenn. 2008) ............................................................... 11, 12

*Cont'l Bankers Life Ins. Co. v. Bank of Alamo*,
    578 S.W.2d 625 (Tenn. 1979) ................................................................. 14

*Delta Refining Co. v. Procon, Inc.*,
    552 S.W.2d 387 (Tenn. Ct. App. 1976) ..................................................... 19

*Edmonds v. Chamberlain Memorial Hosp.*,
    629 S.W.2d 28 (Tenn. App. 1981) ......................................................... 10, 15

*Electric Power Bd. v. St. Joseph Valley Structural Steel Corp.*,
    691 S.W.2d 522 (Tenn. 1985) ................................................................. 6, 14

*FDIC v. Allen*,
    584 F. Supp. 386 (E.D. Tenn. 1984) ......................................................... 15

*Givens v. Mullikin*,
    75 S.W.3d 383 (Tenn. 2002) ................................................................. 8, 10

*Hartford Fire Ins. Co. v. CMC Const. Co.*,
    No. 3:06-cv-11, 2010 U.S. Dist. LEXIS 86826 (E.D. Tenn. 2010) ........................... 13, 15

*Hester v. United Healthcare Ins. Co.*,
    Case No. 1:08-cv-105, 2009 U.S. Dist. LEXIS 3378 (E.D. Tenn. Jan. 16, 2009) .............. 8

*Knight v. Hosp. Corp. of Am.*,
    No. 01A01-9509-CV-00408, 1997 Tenn. App. LEXIS 11 (Tenn. Ct. App. Jan. 8, 1997).... 9

*Meyer v. Snyders Lance, Inc.*,
    No. 4:12-cv-215, 2012 U.S. Dist. LEXIS 175537 (M.D. Ga. Dec. 12, 2012) .................... 5

*Milliken Grp., Inc. v. Hays Nissan, Inc.*,
    86 S.W.3d 564 (Tenn. Ct. App. 2001) ......................................................... 13

*Pamperin v. Streamline Mfg.*,
    276 S.W.3d 428 (Tenn. Ct. App. 2008) ....................................................... 15

*Parker v. Warren*,
    503 S.W.2d 938 (Tenn. Ct. App. 1973) ..................................................... 19, 20

*Ruiz v. Bally Total Fitness Holding Corp.*,
    496 F.3d 1 (1st Cir. 2007) ....................................................................... 5

*Shelburne v. Frontier Health*,
    126 S.W.3d 838 (Tenn. 2003) ................................................................. 13

## TABLE OF AUTHORITIES
### (continued)

Page

*Southeast Tex. Inns, Inc. v. Prime Hospitality Corp.*,
    462 F.3d 666 (6th Cir. 2006) ................................................................. 14, 15
*Stigall v. Wickes Mach.*,
    801 S.W.2d 507 (Tenn. 1990) ...................................................................... 14
*Sword v. NKC Hosps., Inc.*,
    714 N.E.2d 142 (Ind. 1999) ......................................................................... 12
*Tenn. Racquetball Investors, Ltd. v. Bell*,
    709 S.w.2d 617 (Tenn. Ct. App. 1986) ........................................................ 15
*Thomas v. Oldfield*,
    No. M2007-01693-COA-R3-CV, 2008 Tenn. App. LEXIS 335 (June 2, 2008) ............. 9, 10
*Union Leasing, Inc. v. Advantage, Inc.*,
    Case No. 3-12-0666, 2012 U.S. Dist. LEXIS 154056 (M.D. Tenn. Oct. 26, 2012) ............. 8
*White v. Revco Disc. Drug Ctrs., Inc.*,
    33 S.W.3d 713 (Tenn. 2000) ........................................................... 6, 8, 9, 10

**Statutes**
Tennessee Healthcare Liability Act,
    Tenn. Code Ann. § 29-26-101 *et seq.* ........................................................ 17
Tennessee Products Liability Act of 1978,
    Tenn. Code Ann. § 29-28-101, *et seq.* ............................................ 16, 17, 18

**Rules**
Fed. R. Civ. P. 8 ............................................................................................ 2
Fed. R. Civ. P. 8(a) ...................................................................................... 5
Fed. R. Civ. P. 12(b)(6) ................................................................................ 5

**Treatises**
7 Tenn. Juris. Corporations § 3 .................................................................. 14
Restatement (Second) of Torts § 429 ......................................................... 12

1166869.6

This litigation arises out of a deadly fungal infection outbreak that killed over 64 innocent people and inflicted severe, life-changing illnesses on more than 750 other patients. Tennesseans were among the most severely impacted by the outbreak – 153 people died or suffered illnesses across the state – largely due to the decisions of the Tennessee defendants[2] to purchase injectable steroids (MPA) from an unlicensed drug manufacturer (NECC) with a known history of serious sterility problems and regulatory violations.

One Tennessee clinic, the corporate-owned St. Thomas Clinic, made the decision to purchase injectable steroids in bulk from NECC based solely on its goal of maximizing profits, ultimately purchasing more than 2,500 vials using phony prescriptions and without conducting any reasonable due diligence as to the sterility of the drugs or the safety practices of NECC. As a result, St. Thomas patients died and suffered life-changing severe illnesses.

The patients did nothing wrong; they merely sought pain relief and trusted that St. Thomas would select and use in their treatment safe medicines made by law-abiding manufacturers. The patients did not expect that St. Thomas would recklessly endanger their lives for financial gain by choosing the cheapest medicines available regardless of who made them and whether they were safe.

As detailed in Plaintiffs' complaints, St. Thomas Clinic and its principals, agents, and related entities, including Defendants, bear legal responsibility for their misconduct that caused these deaths and illnesses. St. Thomas Clinic and the St. Thomas Entities engaged in wrongful conduct that harmed Plaintiffs, both by acting through their agents and by

---

[2] For the purposes of this memorandum, the "Tennessee defendants" includes the Defendants here (the St. Thomas Entities) as well as those defendants who filed the motion to dismiss at [Dkt. Nos. 771 and 772]: Saint Thomas Outpatient Neurosurgical Center, LLC ("St. Thomas Clinic"), Howell Allen Clinic, a Professional Corporation ("Howell Allen"), John W. Culclasure, M.D. ("Dr. Culclasure"), Debra V. Schamberg, R.N., ("Ms. Schamberg"), and certain other unrelated Tennessee medical entities and medical professionals.

operating as alter egos of each other and other commonly-owned and -operated entities. The operative complaints[3] set forth the legal and factual bases for these allegations and fully satisfy the pleading requirements of Fed. R. Civ. P. 8 and relevant case law. The Court should reject Defendants' attempts to escape liability for their wrongful conduct and should deny Defendants' motion to dismiss.

## I.   FACTUAL BACKGROUND

Plaintiffs allege that St. Thomas Clinic is inextricably intertwined with – and thus identical to, or at least indistinguishable from – the other St. Thomas Entities, specifically Saint Thomas Network, Saint Thomas Health, and St. Thomas Hospital, and Howell Allen.[4] St. Thomas Clinic is co-owned by Saint Thomas Network and Howell Allen.[5] Saint Thomas Network, which has no employees and appears to be an empty shell,[6] is itself

---

[3] In MDL Order No. 6, the Court required the PSC to file a Master Complaint and a form of short form complaint. The Master Complaint was meant as an administrative tool, allowing the allegations and claims against all defendants to be stated in one document. Plaintiffs who already had cases on file or who wished to file in the MDL could then file a short form complaint to assert facts and claims set out in the Master Complaint, streamlining the process of filing claims in the MDL. The overwhelming majority of cases against the Tennessee defendants were on file by the time the PSC filed the Master Complaint. Many Tennessee plaintiffs filed short-form complaints. Thus the full universe of Plaintiffs' allegations in this case are drawn from the Master Complaint [Dkt. 545], the Amended Master Complaint [Dkt. 832], the underlying complaints filed by individual Plaintiffs (listed in Exhibit A), and the "short form" complaints filed by individual Plaintiffs, which, in most instances, incorporate by reference all the foregoing pleadings.

[4] *See, e.g.,* Compl. ¶¶ 275, 276, *Reed v. Ameridose, LLC, et al.*, No. 1:13-cv-12565 (D. Mass Sept. 19, 2013) [Dkt. 1] ["*Reed* Compl."]

[5] *See, e.g., Reed* Compl. ¶ 41; Compl. ¶¶ 238, 251, 281-84, 290-93, *Bryant v. Ameridose, LLC, et al.*, No. 1:13-cv-12668 (D. Mass. Sept. 19, 2013) [Dkt. 1] ["*Bryant* Compl."]; Compl. ¶¶ 31-32, 222-29, 232-35, 239-40, *Russell v. Ameridose, LLC, et al.*, No. 1:13-cv-12794 (D. Mass. Dec. 19, 2013) [Dkt. 1] ["*Russell* Compl."]

[6] St. Thomas Network's response to Interrogatory No. 8 in *Reed v. Saint Thomas Outpatient Neurosurgical Center, LLC, et al.*, No. 13C417 (Davidson Cnty. Cir. Ct.). This interrogatory response is part of a very small amount of discovery that the Reed plaintiffs were able to get before their case, which was originally filed in Tennessee state court, was non-suited, refiled in federal court and ultimately transferred to MDL 2149.

-2-

owned by Saint Thomas Health (which also owns St. Thomas Hospital).[7] Saint Thomas Health is in turn owned by Ascension Health.[8]

The employees and leadership of the St. Thomas Entities, Howell Allen, and St. Thomas Clinic are intertwined as well. For example, the CEO of St. Thomas Hospital is on the Board of Governors of St. Thomas Clinic.[9] The Medical Director of St. Thomas Hospital regularly attended St. Thomas Clinic's Board of Governors meetings.[10] St. Thomas Clinic conducts its Board of Governors meetings in the St. Thomas Hospital boardroom.[11] Dr. Culclasure was an employee of Howell Allen and the Medical Director of St. Thomas Clinic, where he was involved in day-to-day operations, including the injection of MPA into patients.[12] Ms. Schamberg, a registered nurse, was an employee of Howell Allen and the Facilities Director of St. Thomas Clinic, where she too was involved in day-to-day operations.[13] Both Dr. Culclasure and Ms. Schamberg, acting as agents of Defendants, made the decision for St. Thomas Clinic to purchase MPA from NECC.[14]

The St. Thomas Entities and St. Thomas Clinic hold themselves out to the public as one singular entity, further blurring any distinctions between or among them. In addition to

---

[7] St. Thomas Network's response to Interrogatory No. 9 and St. Thomas Hospital's response to Interrogatory No. 11 in *Reed v. Saint Thomas Outpatient Neurosurgical Center, LLC, et al.*, No. 13C417 (Davidson Cnty. Cir. Ct.). See note on these interrogatory responses *supra* n.6.

[8] Ascension Health states in its federal tax filings that it is the "direct controlling entity" of Saint Thomas Health. *See* Compl. ¶ 247, *Brinton v. Ameridose, LLC, et al.*, No. 1:13-cv-12612 (D. Mass. Sept. 12, 2013) [Dkt. 1] ["*Brinton* Compl."]; *see also* PSC's Opposition to the Ascension Entities' Global Motion to Dismiss, filed concurrently with this brief.

[9] *See, e.g., Reed* Compl. ¶ 276.

[10] *See, e.g., id.*

[11] *See, e.g., id.*

[12] *See, e.g., Bryant* Compl. ¶¶ 22-23.

[13] *See, e.g., id.*

[14] *See, e.g., Reed* Compl. ¶ 252.

sharing the St. Thomas name and location on the St. Thomas campus,[15] they intentionally foster the public perception that they are one united entity through a large scale marketing campaign. Advertisements highlighting the tag line "*Saint Thomas Health: One Name, One Healing Community*" are prominently placed throughout the Nashville area, including on billboards at the Nashville International Airport and plastered across the sides of Nashville city buses, as depicted below:



Presenting a united face to the public, the St. Thomas Entities – as one, or at least as an indistinguishable tangle – own, manage, control, and operate St. Thomas Clinic.[16] In so doing, the St. Thomas Entities knowingly ordered, directed, authorized, and/or permitted physicians, nurses, staff, and other personnel to procure injectable steroids from NECC without conducting basic due diligence and without using patient-specific prescriptions, and

---

[15] *See, e.g.,* Compl. ¶¶ 233, 237(i), 240, *Ziegler v. Ameridose, LLC, et al.*, No. 1:13-cv-12588 (D. Mass. Sept. 11, 2013) [Dkt. 1] ["*Ziegler* Compl."]
[16] *See, e.g., id.* ¶¶ 31-32, 36-37, 39, 232-235.

to sell and inject into patients those steroids, including Plaintiffs, the resulting actions of which were authorized and intended by Defendants.[17]

Plaintiffs further allege that, at all times while providing treatment to Plaintiffs at St. Thomas Clinic, the physicians, nurses, staff, and other personnel were agents, employees, and/or representatives of St. Thomas Hospital, and were acting within the course and scope of their employment and/or agency with St. Thomas Hospital, and for this reason St. Thomas Hospital is vicariously liable for any negligent acts and omissions of its employees, agents, and/or representatives committed in the course and scope of their employment and/or agency while treating Plaintiffs.[18] More specifically, Plaintiffs allege that Dr. Culclasure and Ms. Schamberg, acting as agents of Defendants, made the decision for St. Thomas Clinic to purchase MPA from NECC.[19]

Based upon those interrelationships and other facts, Plaintiffs assert several liability claims against the St. Thomas Entities. Those causes of action include claims under agency, apparent agency, alter ego, and *respondeat superior* theories, among other claims.

## II.   **STANDARD OF REVIEW**

A claim for relief must be supported by "a short and plain statement showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court "must assume the truth of all well-plead[ed] facts and give plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007).

---

[17] *See, e.g., id.* ¶ 237(a)-(o).

[18] *See, e.g., id.* ¶¶ 26, 27, 39, 232-235, 238.

[19] *See, e.g., Reed* Compl. ¶ 252.

The plaintiff need only plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Bell Atlantic v. Twombly*, 550 U.S. 544, 556 (2007); *see also Meyer v. Snyders Lance, Inc.*, No. 4:12-cv-215, 2012 U.S. Dist. LEXIS 175537, at *3 (M.D. Ga. Dec. 12, 2012) ("[M]any lawyers fail to appreciate the distinction between determining whether a claim for relief is 'plausibly stated,' the inquiry required by *Twombly/Iqbal*, and divining whether actual proof of that claim is 'improbable,' a feat impossible for a mere mortal, even a federal judge."). Thus, at the pleading stage, a plaintiff need not demonstrate that the defendant's conduct is "probably" unlawful; it need only allege facts (taken as true) that raise a right to relief 'above the speculative level.'" *Twombly*, 550 U.S. at 555.

On this motion to dismiss, the Court is asked to consider the sufficiency of Plaintiffs' claims against Defendants, which are premised on Plaintiffs' allegations that the St. Thomas Entities were not separate legal entities from each other or from St. Thomas Clinic, but were in fact alter-egos of each other; and that St. Thomas Clinic, Dr. Culclasure, and Ms. Schamberg acted as agents of the St. Thomas Entities. In other words, the question here is whether Plaintiffs have alleged a plausible alter ego or agency relationship between and among the St. Thomas Entities and St. Thomas Clinic, Dr. Culclasure, and Ms. Schamberg.

The determination of whether to pierce the corporate veil to hold parent companies vicariously liable for their subsidiaries/agents is a case-specific and highly fact-intensive inquiry that is a question for the jury to decide based on evidence gleaned during discovery. *See, e.g. Electric Power Bd. v. St. Joseph Valley Structural Steel Corp.*, 691 S.W.2d 522, 526 (Tenn.

1985); *White v. Revco Disc. Drug Ctrs., Inc.*, 33 S.W.3d 713, 723 (Tenn. 2000); *Abshure v. Methodist Healthcare-Memphis Hosps.*, 325 S.W.3d 98, 104 n.5 (Tenn. 2010). At the pleading stage, Plaintiffs' hurdle is a low one: their complaint must simply "contain allegations from which an inference may fairly be drawn that evidence on these material points [i.e. alter ego and/or agency relationships] will be introduced at trial." *White*, 33 S.W.3d at 725-26 (citation omitted) (denying motion to dismiss plaintiff's claims for vicarious liability against defendant that were rooted in allegations of agency).[20] It remains the role of discovery, not the pleadings, to "reveal [that] evidence." *Twombly*, 550 U.S. at 556. Here, at the pre-discovery pleading stage, Plaintiffs have cleared their low hurdle.[21]

## III.   **ARGUMENT**

Defendants' motion should be denied in its entirety. First, Plaintiffs make sufficient allegations to support their vicarious liability claims against the St. Thomas Entities under either an agency theory or an alter ego theory. Plaintiffs allege that the St. Thomas Entities knowingly ordered, managed, directed, authorized, and/or permitted the negligent and unlawful actions by St. Thomas Clinic, Dr. Culclasure, and Ms. Schamberg that proximately caused Plaintiffs' injuries. Plaintiffs further allege that St. Thomas Hospital held itself out to the public as a provider of medical services, and did not notify Plaintiffs or the public otherwise, such that Plaintiffs reasonably believed their medical services were provided to them by St. Thomas Hospital or an employee or agent thereof. And Plaintiffs allege that

---

[20] By contrast, nearly all the authorities cited by Defendants in support of their motion are decisions made on a fully developed factual record (e.g., on a summary judgment motion or the factual findings of a jury), where the plaintiffs' claims are held to a higher standard than they are here at the early pleading stage. *See, e.g., infra* n.37.

[21] Defendants' comparison of Plaintiffs' allegations here to Plaintiffs' alter ego allegations against NECC and its affiliates is misleading and immaterial. Plaintiffs' allegations against the NECC entities were made with the benefit of facts gleaned from governmental investigations of the NECC entities as well as filings made by NECC in its bankruptcy proceeding. Moreover, as explained in detail throughout this brief, Plaintiffs have met their pleading burden here.

Defendants and St. Thomas Clinic were all essentially indistinguishable from one another, and that Defendants used their complete control over St. Thomas Clinic to commit a wrong that proximately caused Plaintiffs' injuries. These allegations are facts sufficient to pierce the relevant corporate veils. Second, Plaintiffs' underlying claims against St. Thomas Clinic, for which the other St. Thomas Entities are liable, are valid.[22]

### A.   Plaintiffs Sufficiently Allege that St. Thomas Clinic, Dr. Culclasure, and Ms. Schamberg Were Agents of Defendants.

Tennessee recognizes two forms of agency: actual and apparent. As noted above, whether an agency exists "is a question of fact under the circumstances of the particular case," and is to be determined by examining the facts of the relationship between the parties based on their agreements or their actions. *White*, 33 S.W.3d at 723. Numerous courts in Tennessee have held that, at the pleading stage, Plaintiffs are not required to plead with particularity the factual basis for their agency claims. *See, e.g., Givens v. Mullikin*, 75 S.W.3d 383, 398-99 (Tenn. 2002) (overturning grant of motion to dismiss based on two paragraphs in complaint alleging agency relationship between insurer and law firm because "a complaint need not contain in minute detail the facts that give rise to the claim so long as the complaint does contain allegations from which an inference may fairly be drawn that evidence on these material points will be introduced at trial."); *see also Union Leasing, Inc. v. Advantage, Inc.*, Case No. 3-12-0666, 2012 U.S. Dist. LEXIS 154056, at *5-6 (M.D. Tenn. Oct. 26, 2012) (denying motion to dismiss where claim merely alleged that party was the agent of

---

[22] Defendants argued their motion under Tennessee law, and for the sake of conformity, Plaintiffs follow suit here. That said, however, Plaintiffs do not necessarily contend at this point that Tennessee law applies to all relevant issues. The Court need not determine which state's substantive law applies at this stage, as the choice-of-law analysis is a fact-intensive inquiry inappropriate at the pleading stage prior to discovery. *See, e.g., Mill's Pride v. Cont'l Ins. Co.*, 300 F.3d 701, 706 (6th Cir. 2002) (choice of law controversies are "fact driven and each case has to be analyzed within its own factual context"). At the very least, Plaintiffs state valid claims under Tennessee law, and as such Plaintiffs' claims against Defendants should not be dismissed.

a third party and that conduct giving rise to liability was "within the scope of the agency");

*Hester v. United Healthcare Ins. Co.*, Case No. 1:08-cv-105, 2009 U.S. Dist. LEXIS 3378, at

*10-11 (E.D. Tenn. Jan. 16, 2009) (denying motion to dismiss where complaint contained an

allegation that defendant's "personnel" committed negligence because on motion to dismiss

"plaintiff is not required to plead specific facts, he must only give the defendant fair notice

of what the claim is and the grounds upon which it rests.") (internal quotations omitted).

Further, a plaintiff is not required to name in his complaint the agents or employees of the

entity against which he asserts a claim of vicarious liability for the negligence of those

agents or employees. *See Knight v. Hosp. Corp. of Am.*, No. 01A01-9509-CV-00408, 1997

Tenn. App. LEXIS 11, at *9 (Tenn. Ct. App. Jan. 8, 1997). Here Plaintiffs allege facts

sufficient to support an inference of an agency relationship under either theory.

### 1.    *Actual Agency*

In its broadest sense, the concept of agency "includes every relation in which one

person acts for or represents another." *White,* 33 S.W.3d at 723 (citation omitted). An agency

relationship does not require an explicit agreement or understanding between the parties;

when "the facts establish the existence of an agency relationship, it will be found to exist

whether the parties intended to create one or not." *Id*. (citations omitted). A principal is

generally "bound by its agent's acts done in its behalf and within the actual or apparent

scope of the agency;" but the focus of the inquiry should be on the actions and consent of

the principal, not the agent. *Id*. (citations omitted). Whether an agency relationship exists

depends on the amount of control by the principal over the "means and method" of the

work of the agent. *Thomas v. Oldfield*, No. M2007-01693-COA-R3-CV, 2008 Tenn. App.

LEXIS 335, at *6 (June 2, 2008).

-9-

Here, Plaintiffs adequately allege that St. Thomas Clinic was an agent of Defendants in that Defendants own, manage, control, and operate St. Thomas Clinic,[23] including knowingly ordering, directing, authorizing, and/or permitting St. Thomas Clinic to procure injectable steroids from NECC without conducting adequate due diligence and without using patient specific prescriptions, the results of which were thus authorized and intended by Defendants.[24] Moreover, in addition to operating St. Thomas Clinic, Defendants manage the contracting and finances of St. Thomas Clinic and share with it the St. Thomas name and location on the St. Thomas campus.[25] Thus, as in *White*, the Court here "may reasonably infer from the allegations contained in the complaints that the plaintiffs plan to introduce (1) evidence concerning the course and scope of [St. Thomas Clinic's agency relationship] with [Defendants]; and (2) evidence that [St. Thomas Clinic's] actions giving rise to [Plaintiffs'] wrongful death[, personal injury, and related claims] were within the course and scope of that [agency relationship] with [Defendants]. 33 S.W.3d at 725-26. That is all that is required at this stage.

Plaintiffs also adequately allege agency with regard to Dr. Culclasure and Ms. Schamberg. Contrary to Defendants' contention, whether the principal has the legal right to control the agent is irrelevant; the determinative factor is whether the principal *actually* exercised control over the agent. *See Edmonds v. Chamberlain Memorial Hosp.*, 629 S.W.2d 28, 30-31 (Tenn. App. 1981) (rejecting defendant's argument that a hospital must have the legal right to control the physician before the physician can be considered the hospital's agent); *see also Givens*, 75 S.W.3d at 395 (holding that although a principal may lack the legal right to

---

[23] *See, e.g., Ziegler* Compl. ¶¶ 26, 27, 31-32, 36-37, 39, 232-235.

[24] *See, e.g., id.* ¶ 237(a)-(o).

[25] *See, e.g., id.* ¶¶ 233, 237(i), 240.

control its agent, "we simply cannot ignore the practical reality that the [principal] may seek to exercise actual control over its [agent]").[26] Thus Defendants can be held vicariously liable for the tortious actions of their agents, including Dr. Culclasure and Ms. Schamberg.

Here Plaintiffs allege that Dr. Culclasure and Ms. Schamberg are employees, managers, and/or directors of St. Thomas Clinic and Howell Allen,[27] and that, at all times while providing treatment to Plaintiffs at St. Thomas Clinic, the physicians, nurses, staff, and other personnel (necessarily including Dr. Culclasure and Ms. Schamberg) were agents, employees, and/or representatives of Defendants and were acting within the course and scope of their employment and/or agency.[28] Moreover, Plaintiffs allege that Defendants own, manage, control, and operate St. Thomas Clinic,[29] including knowingly ordering, directing, authorizing, and/or permitting physicians, nurses, staff, and other personnel to procure injectable steroids from NECC without conducting adequate due diligence and without using patient specific prescriptions, and inject those steroids into patients, including Plaintiffs, the resulting actions of which were authorized and intended by Defendants.[30] More specifically, Plaintiffs allege that Dr. Culclasure and Ms. Schamberg, acting as agents of Defendants, made the decision for St. Thomas Clinic to purchase MPA from NECC.[31] Plaintiffs sufficiently allege that Culclasure and Schamberg were agents of Defendants.

---

[26] Despite Defendants' implication, *Oldfield* does not hold to the contrary. 2008 Tenn. App. LEXIS 335, at *10 (holding only that, despite the fully developed factual record on summary judgment, there was no evidence that the doctor was an agent).

[27] *See, e.g.,* Compl. ¶¶ 24-25, 127, *Kirkwood v. Ameridose, LLC, et al.*, No. 1:13-cv-12431 (D. Mass. Dec. 19, 2013) [Dkt. 1] ["*Kirkwood* Compl."]; Master Compl. ¶¶ 346-48 [Dkt. 545].

[28] *See, e.g.,* *Ziegler* Compl. ¶¶ 26, 27, 39, 232-235, 238.

[29] *See, e.g., id.* ¶¶ 31-32, 36-37, 39, 232-235.

[30] *See, e.g., id.* ¶ 237(a)-(o).

[31] *See, e.g., Reed* Compl. ¶ 252.

2.    *Apparent Agency*

In addition to actual agency, Tennessee also recognizes a separate theory of "apparent agency." In *Boren ex rel. Boren v. Weeks*, the Tennessee Supreme Court examined the issue of whether a hospital can be held vicariously liable for the negligence of an independent contractor physician through the doctrine of apparent agency. 251 S.W.3d 426, 432 (Tenn. 2008). After analyzing case law from other states, the Tennessee Supreme Court adopted the apparent agency analysis derived from the Restatement (Second) of Torts § 429, i.e., a hospital may be held vicariously liable for the negligent or wrong acts of another if: (1) the hospital held itself out to the public as providing medical services; (2) the plaintiff looked to the hospital rather than to the individual physician or agent to perform those services; and (3) the patient accepted those services in the reasonable belief that the services were provided by the hospital or a hospital employee or agent. *Id.* at 433-436.

One way a hospital can hold itself out as a provider of medical services is through an extensive advertising campaign; there is no requirement that the representation be directly or expressly made to the patient. *Id.* at 433 (citing *Sword v. NKC Hosps., Inc.*, 714 N.E.2d 142, 151 (Ind. 1999)). A hospital will be deemed to have held itself out as the provider of care unless it gives meaningful notice to the patient that it is not the provider of care and that the care is actually being provided by a physician who is an independent contractor and not subject to the control and supervision of the hospital. *Id.* at 434. The *Boren* court ultimately held as a matter of law that even a disclaimer written in boldfaced type and signed by the patient did not constitute such meaningful notice. *Id.* at 437.

Contrary to Defendants' contention, there is no significance to the fact that the *Boren* plaintiff was treated in the hospital emergency room while Plaintiffs here were treated at an

outpatient neurosurgical clinic. *Boren* did not specifically limit its holding to inpatient or emergency room settings, and numerous courts have allowed apparent agency claims to proceed in non-ER as well as non-medical settings. *See, e.g., Shelburne v. Frontier Health*, 126 S.W.3d 838 (Tenn. 2003); *Milliken Grp., Inc. v. Hays Nissan, Inc.*, 86 S.W.3d 564 (Tenn. Ct. App. 2001).[32]

Here, Plaintiffs allege that Defendants – and specifically St. Thomas Hospital – held itself out to the public as providing medical services, for example through extensive advertising and self-identification as "*One Name, One Healing Community*." Moreover, at no point were patients of St. Thomas Clinic given any notice whatsoever that St. Thomas Hospital was not the provider of their medical care or services, or that St. Thomas Hospital was not controlling, managing, directing, and/or authorizing all actions and decisions made by St. Thomas Clinic and/or their treating physicians (including Drs. Culclasure and Schamberg) with regard to their medical care.[33] Accordingly, Plaintiffs reasonably believed that the medical care and services they received were provided by St. Thomas Hospital or its employees and/or agents.[34] Thus Plaintiffs adequately allege that St. Thomas Clinic, Dr. Culclasure, and Ms. Schamberg were the apparent agents of Defendants, and specifically St. Thomas Hospital.

Again, Plaintiffs' burden is not heavy at the pleading stage. For example, in *Abshure*, the court found that a single paragraph alleging that the defendant "Hospital was negligent in not seeing that proper care was furnished to Plaintiff Abshure, and further [the] *Hospitals'*

---

[32] Defendants' reliance on *Hartford Fire Ins. Co. v. CMC Const. Co.* here is inapposite: that was a decision on a summary judgment motion concerning a claim for vicarious liability on a reverse-piercing alter ego theory (i.e. piercing the veil of the corporation to reach the assets of the individual(s) in control of the corporation), which failed because Tennessee courts do not recognize the reverse-piercing doctrine in the corporation/shareholder context. No. 3:06-cv-11, 2010 U.S. Dist. LEXIS 86826, at *66-68 (E.D. Tenn. 2010).

[33] *See, e.g., Ziegler* Compl. ¶ 233.

[34] *See, e.g., id.*

*agents and/or employees were negligent in the medical care and attention rendered to Plaintiff* and did

not exercise the degree of care, skill, and diligence used by medical facilities and their staff

generally and under the circumstances which presented themselves…" was sufficient to "lay

a foundation for a claim based on the apparent agency relationship between the hospital and

[a physician]." 325 S.W.3d 98, 104 n.5 (Tenn. 2010). Plaintiffs allege more than this here.

> **B.    Plaintiffs Sufficiently Allege that the St. Thomas Entities and St. Thomas Clinic Are Alter Egos of Each Other.**

Tennessee law recognizes several theories for piercing the corporate veil, including

that the entities operated as alter egos. *See, e.g.*, 7 Tenn. Juris. Corporations § 3. As with

agency, the determination of whether a corporation is a mere instrumentality – or alter ego

– of an individual or parent corporation is fact-intensive inquiry appropriately left for the

jury. *See, e.g., Electric Power Bd.*, 691 S.W.2d at 526. Nevertheless, a parent company may be

held liable for its subsidiary if:

> (1) The parent corporation, at the time of the transaction complained of, exercises complete dominion over its subsidiary, not only of finances, but of policy and business practice in respect to the transaction under attack, so that the corporate entity, as to that transaction, had no separate mind, will or existence of its own.
>
> (2) Such control must have been used to commit fraud or wrong, to perpetuate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of third parties' rights.
>
> (3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

*Cont'l Bankers Life Ins. Co. v. Bank of Alamo*, 578 S.W.2d 625, 632 (Tenn. 1979).[35] Other,

nonessential factors that courts have considered include: the use of the same office or

---

[35] Notwithstanding the wayward interpretations occasioned by certain federal court opinions, "the Tennessee Supreme Court has not abandoned the [thirty-five] year old *Continental Bankers* standard, nor given much, if any, indication of an intention to do so. *See Southeast Tex. Inns, Inc. v. Prime Hospitality Corp.*, 462 F.3d 666, 683

business location; the employment of the same employees; the use of the corporation as an

instrumentality or business conduit for an individual or another corporation; and the failure

to maintain arm's length relationships among related entities. *See FDIC v. Allen,* 584 F. Supp.

386 (E.D. Tenn. 1984). A court may also impose liability on a parent corporation where the

parent and its subsidiary "are in fact identical or indistinguishable." *Edmunds v. Delta*

*Partners, LLC*, 403 S.W.3d 812, 829 (Tenn. App. 2012).[36]

Contrary to Defendants' contention, no finding of fraud is required in the alter ego

determination for tort cases – courts usually apply a less stringent standard for piercing the

corporate veil in tort cases than in contract cases. *See Southeast Tex. Inns, Inc. v. Prime*

*Hospitality Corp.*, 462 F.3d 666, 679 n.16 (6th Cir. 2006). Nor are commingling of property,

undercapitalization, and diversion of assets "the real indicia of alter ego" – those are simply

a few of the nonessential factors that courts have used in the alter ego determination in

other cases, and they are certainly not required elements here.

Plaintiffs allege that Defendants were essentially indistinguishable from each other

and from St. Thomas Clinic in holding themselves out to the public, for example through

sharing the St. Thomas name and location on the St. Thomas campus and through

advertising and self-identification as "*One Name, One Healing Community*."[37] Patients and the

public were not informed of any distinctions between Defendants themselves or between

---

(6th Cir. 2006) (Oberdorfer, J., dubitante) (citing *Stigall v. Wickes Mach.*, 801 S.W.2d 507, 510-11 (Tenn. 1990) and *Electric Power Bd.*, 691 S.W.2d at 526).

[36] The majority of Defendants' authorities on the alter ego theory are inapposite here, as they are all decisions made on a fully developed factual record, such as decisions made on summary judgment, and/or they are factually distinguishable. *See, e.g., Hartford Fire*, 2010 U.S. Dist. LEXIS 86826 (decision on summary judgment and factually distinguishable because concerned a claim for vicarious liability of shareholder for corporation on a reverse piercing alter ego theory); *Southeast Tex. Inns.*, 462 F.3d 666 (dismissal decision based on factual record gleaned during discovery; also factually distinguishable because concerned contract dispute not tort claim); *Pamperin v. Streamline Mfg.*, 276 S.W.3d 428 (Tenn. Ct. App. 2008) (decision on summary judgment and factually distinguishable because it did not concern parent/subsidiary and was contract dispute, not tort claim); *Tenn. Racquetball Investors, Ltd. v. Bell*, 709 S.w.2d 617 (Tenn. Ct. App. 1986) (same).

[37] *See, e.g., Zeigler* Compl. ¶¶ 233, 237(i), 240.

Defendants and St. Thomas Clinic.[38] Further, Plaintiffs allege that St. Thomas Clinic is grossly undercapitalized, and was used solely as a business conduit to enrich the St. Thomas Entities and Howell Allen.[39]

In sum, Plaintiffs allege that Defendants and Howell Allen wholly own, manage, control, and operate St. Thomas Clinic;[40] in other words, that they "exercise complete dominion over" St. Thomas Clinic, managing its contracting and finances as well as its policies and business practices, including the procurement injectable steroids from NECC without conducting adequate due diligence and without using patient specific prescriptions, and the sale to and injection into patients of those steroids, including Plaintiffs,[41] such that St. Thomas Clinic had "no separate mind, will, or existence of its own." Defendants' control over St. Thomas Clinic was used to commit a wrong, i.e. to negligently and unlawfully procure MPA from NECC and inject the contaminated MPA into patients, including Plaintiffs, proximately causing Plaintiffs' injuries.[42] Thus Plaintiffs' allegations are sufficient to raise an inference that Plaintiffs will present evidence at trial that St. Thomas Clinic and Defendants were alter egos of each other, which satisfies Plaintiffs' burden here.

## C.   Plaintiffs State Valid Claims against St. Thomas Clinic.

As the PSC argues in more detail in its opposition to the Tennessee Defendants' Global Motion to Dismiss [Dkt. 1040], Plaintiffs state valid claims against St. Thomas Clinic under the Tennessee Products Liability Act of 1978, Tenn. Code Ann. § 29-28-101, *et seq.* ("PLA"). All businesses that sell products in Tennessee, including healthcare providers,

---

[38] *See, e.g., id.* ¶ 233.

[39] *See, e.g., Reed* Compl. ¶ 286.

[40] *See, e.g., id.* ¶¶ 31-32, 36-37, 39, 232-235.

[41] *See, e.g., id.* ¶¶ 233, 237, 240.

[42] *See, e.g., id.* ¶¶ 237, 241.

-16-

are required to stand behind those products. The PLA authorizes claims for strict tort liability against sellers of defective or unreasonably dangerous products if and when a product manufacturer is judicially declared insolvent.[43] In the PLA, the Tennessee legislature enacted important public policy: the risk that a product maker will become defunct rightfully falls upon sellers who choose to do business with product manufacturers who later prove financially unsound. That risk should not fall upon innocent tort victims.

Defendants' argument that Plaintiffs' claims are governed instead by the Health Care Liability Act is misguided. To the contrary, Plaintiffs' product liability claims are in fact supported by the plain language of the Tennessee Healthcare Liability Act, Tenn. Code Ann. § 29-26-101 *et seq.* ("HLA"). By its own terms, the HLA applies only to claims based upon negligently rendered healthcare *services*.[44] The HLA does not encompass, or even mention, claims based on defective or dangerous *products*. *Id.* The express language of the HLA covers a broad range of healthcare *services*, but the statute says absolutely nothing about harm caused by *goods or products*. *Id.* In fact, those words never appear in the entire act.

In contrast to the HLA, the plain language of the PLA indicates that healthcare providers are required to stand behind products that they choose to sell to the same extent required of any other Tennessee business. The PLA contains a unique statutory provision clearly indicating the legislature's intent that healthcare providers can be product sellers: its terms include an express statutory carve-out indicating that there is one circumstance, and ***only one circumstance***, in which healthcare providers are not considered product sellers: when

---

[43] Tenn. Code Ann. § 29-28-106(5).
[44] Tenn. Code Ann. § 29-26-101(a)(1).

they sell silicone breast implants.[45] In all other instances, healthcare providers are required to stand behind products made by defunct manufacturers to the same extent as any other seller.[46] And there is no case law to the contrary – it does not appear that the PLA has ever been interpreted to mean that providers of professional services are immune from liability under the PLA when they also sell a product to a consumer in connection with the provided service.

As explained in more detail in the PSC's opposition to the Tennessee Defendants' Global Motion to Dismiss [Dkt. 1040], when the St. Thomas Clinic sold and administered contaminated MPA to patients, it charged its patients separately for that steroid. The clinic sent invoices charging for the steroid injections separate and apart from invoices charging for the service of having physicians administer those steroids to patients. In other words, the clinic charged separately for the product (an injectable steroid) and separately for the service (a physician injecting the steroid into the patient).[47] St. Thomas Clinic cannot have it both ways – it cannot tell third-party payers, like Medicare and private health insurance companies, that the product (an injectable steroid) is separate and apart from the service (administration by a physician) for billing purposes, while simultaneously telling this Court that the same steroid is part and parcel of a singular service.

---

[45] Tenn. Code Ann. § 29-28-103(c) ("*For purposes of this subsection (c) only [which relates solely to silicone breast implants]*, 'seller' does not include a hospital or other medical facility where the procedure took place, nor does 'seller' include the physician or other medical personnel involved in the procedure.") (emphasis added).

[46] *See* Tenn. Code Ann. §§ 29-28-103(c) & -106(5).

[47] For example, in the case of a patient named Diana Reed, Saint Thomas Clinic charged Mrs. Reed's health insurer, United Healthcare, $1,034 for each epidural steroid injection that she received. *See Reed* Compl. ¶ 233 and Exhibit R. Simultaneously with those charges, Howell Allen (co-owner of St. Thomas Clinic) charged United Healthcare $642 for Dr. Culclasure's services each time that he administered an epidural steroid injection to Mrs. Reed. *Id.* ¶ 234 and Exhibit S. Simply stated, St. Thomas Clinic charged United Healthcare for the product (an epidural steroid injection), and Howell Allen (co-owner of St. Thomas Clinic) charged United Healthcare for the service (a doctor injecting the product into the patient's spinal column). Howell Allen's liability is arises from its own conduct as well as vicariously under agency and alter ego theories.

Plaintiffs did not undergo epidural steroid injections in order to acquire the service of acupuncture. They desired to receive a specific product, a steroid that would relieve their pain. MPA was the only active ingredient contained in the injections administered to Tennessee patients, and St. Thomas Clinic, regardless of its status as a medical service provider, must be considered a product seller under Tennessee law.

Defendants cite two Tennessee opinions in support of their incorrect assertion that "Tennessee Courts have *specifically* concluded that providers of professional services are not sellers." Defs' Br. 17 (citing *Parker v. Warren*, 503 S.W.2d 938 (Tenn. Ct. App. 1973) and *Delta Refining Co. v. Procon, Inc.*, 552 S.W.2d 387 (Tenn. Ct. App. 1976)). But that assertion is false, and neither *Parker* nor *Delta Refining* holds that "providers of professional services" cannot be considered sellers if and when such providers actually select and sell the products used during the course of the service they provide. Rather, in each of those cases, the Tennessee Court of Appeals, based on the particular case-specific facts before it, held that certain defendants were not "sellers" because, unlike St. Thomas Clinic here, they neither selected nor sold the products used in the provision of their services. *Parker,* 503 S.W.2d at 945 (refusing to consider carpenters who constructed bleachers "sellers" of the lumber they used to build the bleachers, where lumber was separately purchased by one defendant from another party, also a named defendant); *Delta Refining*, 552 S.W.2d at 389 (refusing to hold general contractor who installed pump strictly liable where another party, also a named defendant, manufactured the pump according to plaintiff's specifications).

The facts in *Parker* and *Delta Refining* are not similar or analogous to this case. Here, St. Thomas Clinic, through its agents Dr. Culclasure and Ms. Schamberg, selected MPA

-19-

manufactured by NECC as its injectable steroid of choice.[48] The injured Plaintiffs played absolutely no role in that decision. Moreover, St. Thomas Clinic charged patients for the steroid separate and apart from the physicians' injection services. To the contrary, the *Parker* carpenters and the *Delta Refining* contractor did not select the lumber or pump nor did they charge their customers separately for them.

## IV.    CONCLUSION

Plaintiffs adequately state claims for relief that are plausible on their face. Nothing more is required of Plaintiffs at this stage. As detailed in the operative complaints, these Defendants are liable for their wrongful conduct, effected through their agents and their alter egos. Moreover, the claims against the St. Thomas Clinic are legally viable. Therefore, for the reasons given above, Defendants' Global Motion to Dismiss should be denied.

Should the Court determine that Plaintiffs have not sufficiently alleged their claims against Defendants, Plaintiffs request leave to amend their Complaint in order to incorporate information that will be gleaned from discovery of the St. Thomas Entities.

Dated:  March 28, 2014                    Respectfully submitted,

                                          LIEFF CABRASER HEIMANN &
                                          BERNSTEIN LLP

                                          By: _____
                                                Mark P. Chalos

---

[48] *See, e.g., Bryant* Compl. ¶¶ 182-204; *Reed* Compl. ¶¶ 128-52.

Thomas M. Sobol
Kristen Johnson Parker
HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA  02142
Telephone:  (617) 482-3700
Facsimile:  (617) 482-3003
tom@hbsslaw.com
kristenjp@hbsslaw.com

*Plaintiffs' Lead Counsel*

Elizabeth J. Cabraser
Mark P. Chalos
Annika K. Martin
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
One Nashville Place
150 Fourth Ave. North, Suite 1650
Nashville, TN 37219-2423
Telephone:  (615) 313-9000
Facsimile:  (615) 313-9965
ecabraser@lchb.com
mchalos@lchb.com
akmartin@lchb.com

*Federal / State Liaison*

Marc E. Lipton
LIPTON LAW
18930 W. 10 Mile Road
Southfield, MI  48075
Telephone:  (248) 557-1688
Facsimile:  (248) 557-6344
marc@liptonlawcenter.com

Kim Dougherty
JANET, JENNER & SUGGS, LLC
31 St. James Ave., Suite 365
Boston, MA  02116
Telephone:  (617) 933-1265
Facsimile:  (410) 653-6903
kdougherty@myadvocates.com

1166869.6

Patrick T. Fennell
CRANDALL & KATT
366 Elm Avenue, S.W.
Roanoke, VA  24016
Telephone:  (540) 342-2000
pfennel@crandalllaw.com

Mark Zamora
ZAMORA FIRM
6 Concourse Way, 22nd Floor
Atlanta, GA  30328
Telephone:  (404) 451-7781
Facsimile:  (404) 506-9223
marc@markzamora.com

J. Gerard Stranch, IV
Benjamin A. Gastel
BRANSETTER, STRANCH & JENNINGS
PLLC
227 Second Avenue North
Nashville, TN  37201
Telephone:  (615) 254-8801
Facsimile:  (615) 255-5419
gerards@branstetterlaw.com

*Plaintiffs' Steering Committee*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was served via the Court's electronic filing system on March 28, 2014.

/s/ *Mark P. Chalos*

Mark P. Chalos

1166869.6

EXHIBIT A

**Exhibit A to Saint Thomas Entities' Global Motion to Dismiss***

| Plaintiff | Case Style | Original Complaint Filed | Amended Short Form Complaint Filed | MDL Case No. | Plaintiff's Counsel |
|---|---|---|---|---|---|
| Adamson, Barbara L., surviving daughter of Margaret B. White, Deceased | Adamson v. Ameridose, LLC, et al | 09/19/13 | 12/19/13 | 1:13-cv-12734 | Kinnard, Clayton & Beveridge |
| Barger, Vickie; Peggy Sumner; Lisa Maddox; Shenia Altom; Wayne McWhorter; John Edward Jones; Claudia Ellis; Virginia Swann; Angela May; Anthony Clay Morris; Gary Wayne Waddey; Samuel Groves; Betty Smiley | Barger, et al v. Ameridose, LLC, et al | 09/17/13 | 12/20/13 | 1:13-cv-12619 | English, Lucas, Priest & Owsley |
| Barnard, Robert | Barnard v. Ameridose, LLC, et al | 09/20/13 | 12/19/13 | 1:13-cv-12738 | Branstetter, Stranch & Jennings |
| Bequette, Ann and Walter L., Jr. | Bequette, et al v. Ameridose, LLC, et al | 09/09/13 | 12/19/13 | 1:13-cv-12429 | Leader, Bulso & Nolan |
| Berry, Fredia | Berry v. Ameridose, LLC, et al | 09/20/13 | 12/19/13 | 1:13-cv-12838 | Branstetter, Stranch & Jennings |
| Besaw, Travis; Donna Branham; Ben Bratcher; Barbara Campbell; Theresa Carroll; Billy Joe Coleman; Danny Evans; Ellen Glatman; Dorris Jordan; Melanie Miller; Dorothy Naseef; Larry Ken Pierce; Melanie Stinson; Blake Taylor; Rondal Turner; Krissy Wilkinson | Besaw, et al v. Ameridose, LLC, et al | 09/17/13 | 12/20/13 | 1:13-cv-12604 | English, Lucas, Priest & Owsley |
| Bland, Carolyn and Leon | Bland, et al v. Ameridose, LLC, et al | 07/17/13 | 12/19/13 | 1:13-cv-11881 | Leader, Bulso & Nolan |
| Brinton, Laura | Brinton v. Ameridose, LLC, et al | 09/12/13 | 12/19/13 | 1:13-cv-12612 | Kinnard, Clayton & Beveridge |
| Brock, Denis and Jerry Brandt Brock | Brock, et al v. Ameridose, LLC, et al | 09/19/13 | 12/26/13 | 1:13-CV-12731 | Galligan & Newman |
| Bryant, Bertrum Walker, Jr. individually and as husband and next kin of decendant [sic] Margaret Rhea Bryant | Bryant v. Ameridose, LLC, et al | 09/19/13 | 12/26/13 | 1:13-cv-12668 | Galligan & Newman |
| Burns, Ronda and Larry | Burns, et al v. Ameridose, LLC, et al | 09/19/13 | 12/26/13 | 1:13-cv-12697 | Galligan & Newman |

**Exhibit A to Saint Thomas Entities' Global Motion to Dismiss\***

| Plaintiff | Case Style | Original Complaint Filed | Amended Short Form Complaint Filed | MDL Case No. | Plaintiff's Counsel |
|---|---|---|---|---|---|
| Carman, Cindy A. and Billy | Carman, et al v. Ameridose, LLC, et al | 08/21/13 | 12/19/13 | 1:13-cv-12238 | Donoho, Taylor & Taylor |
| Chambers, Kathy J. | Chambers, et al v. Ameridose, LLC, et al | 09/16/13 | 12/19/13 | 1:13-cv-12591 | Kinnard, Clayton & Beveridge |
| Davis, Thomas Randy and Naomi | Davis, et al v. Ameridose, LLC, et al | 09/06/13 | 12/19/13 | 1:13-cv-12426 | Rochelle, McCulloch & Aulds |
| Demps, Jerry | Demps v. Ameridose, LLC, et al | 09/26/13 | 12/26/13 | 1:13-cv-12840 | Galligan & Newman |
| Denson, Bobbie | Denson v. Ameridose, LLC, et al | 09/20/13 | 12/18/13 | 1:13-cv-12729 | Lieff, Cabraser, Heimann & Bernstein |
| Deol, Amarjit K. and Satnam | Deol, et al v. Ameridose, LLC, et al | 09/30/13 | 12/19/13 | 1:13-cv-12841 | Leader, Bulso & Nolan |
| Devine, Willie May Toney | Devine v. Ameridose, LLC, et al | 09/20/13 | 12/18/13 | 1:13-cv-12667 | Law Office of Blair P. Durham/Lieff Cabraser Heimann & Bernstein |
| Eggleston, Sue C. and Richard A. | Eggleston, et al v. Ameridose, LLC, et al | 09/16/13 | 12/19/13 | 1:13-cv-12589 | Kinnard, Clayton & Beveridge |
| Ferguson, Rosemary; Jon Kinsey; Charles Lankford | Ferguson, et al v. Ameridose, LLC, et al | 09/17/13 | 12/20/13 | 1:13-cv-12571 | English, Lucas, Priest & Owsley |
| Garland, Virginia, individually and as daughter and next of kin of Effie Estalene C. Morris | Garland v. Ameridose, LLC, et al | 09/18/13 | 12/19/13 | 1:13-cv-12736 | Leader, Bulso & Nolan |
| Gobble, Gayla and Robert | Gobble v. Ameridose, LLC, et al | 10/04/13 | 12/24/13 | 1:13-cv-12480 | Law Office of Jon M. Adler |
| Hester, Robert Scott, administrator of the estate of Helen Marie Prince Hester, deceased; Robert Scott Hester, Jerry Ray Hester, Michael Prince Hester, Helen Louise Burchett, Dianna Marie Thomas, Melba Jo Scott, as surviving children of Helen Marie Prince Hester | Hester, et al v. Ameridose, LLC, et al | 08/30/13 | 12/19/13 | 1:13-cv-12315 | The Blair Law Firm |
| Higdon, Shirley and Henry B. | Higdon, et al v. Ameridose, LLC, et al | 09/20/13 | 12/20/13 | 1:13-cv-12718 | Kramer Crone/Evans Petree |
| Hill, Joanne L. and Philliip E., Sr. | Hill, et al v. Ameridose, LLC, et al | 09/16/13 | 12/19/13 | 1:13-cv-12622 | Kinnard, Clayton & Beveridge |

**Exhibit A to Saint Thomas Entities' Global Motion to Dismiss***

| Plaintiff | Case Style | Original Complaint Filed | Amended Short Form Complaint Filed | MDL Case No. | Plaintiff's Counsel |
|---|---|---|---|---|---|
| Hurt, Glenda J. and Robert J. | Hurt, et al v. Ameridose, LLC, et al | 09/17/13 | 12/19/13 | 1:13-cv-12605 | Leader, Bulso & Nolan |
| Johnson, William E., Sr. and Sandra J. | Johnson, et al v. Ameridose, LLC, et al | 09/13/13 | 12/19/13 | 1:13-cv-12621 | Kinnard, Clayton & Beveridge |
| Judd, Kenneth and Judy | Judd, et al v. Ameridose, LLC, et al | 11/14/13 | 12/19/13 | 1:13-CV-13120 | Leader, Bulso & Nolan |
| Kirby, Kelly A. | Kirby v. Ameridose, LLC, et al | 09/16/13 | 12/19/13 | 1:13-cv-12592 | Kinnard, Clayton & Beveridge |
| Kirkwood, Joshua and Vanessa | Kirkwood, et al v. Ameridose LLC, et al | 09/05/13 | 12/19/13 | 1:13-cv-12431 | Leader, Bulso & Nolan |
| Knight, Betty L. | Knight v. Ameridose, LLC, et al | 09/13/13 | 12/19/13 | 1:13-cv-12563 | Kinnard, Clayton & Beveridge |
| Knihtila, James R. | Knihtila v. Ameridose, LLC, et al | 09/13/13 | 12/18/13 | 1:13-cv-12576 | Law Office of Blair P. Durham/Lieff Cabraser Heimann & Bernstein |
| Koonce, Carole B. and K. Terry | Koonce, et al v. Ameridose, LLC, et al | 09/16/13 | 12/19/13 | 1:13-cv-12590 | Kinnard, Clayton & Beveridge |
| Lemberg, Sondra R. and Daniel S. | Lemberg, et al v. Ameridose, LLC, et al | 09/12/13 | 12/19/13 | 1:13-cv-12617 | Kinnard, Clayton & Beveridge |
| Lodowski, Patricia S. and Charles A. | Lodowski, et al v. Ameridose, LLC, et al | 09/13/13 | 12/19/13 | 1:13-cv-12572 | Kinnard, Clayton & Beveridge |
| Lovelace, Joyce J. surviving spouse of Eddie C. Lovelace | Lovelace v. Ameridose, LLC, et al | 09/12/13 | 12/19/13 | 1:13-cv-12772 | Kinnard, Clayton & Beveridge |
| Martin, Patricia and Lary Martin, individually and as children and next kin of Mary Neal Martin, deceased | Martin v. Ameridose, LLC, et al | 09/11/13 | 12/19/13 | 1:13-cv-12624 | Leader, Bulso & Nolan |
| Mathias, Herman M. | Mathias v. Ameridose, LLC, et al | 09/16/13 | 12/19/13 | 1:13-cv-12574 | Kinnard, Clayton & Beveridge |
| May, Frederick and Loduska | May, et al v. Ameridose, LLC, et al | 08/21/13 | 12/19/13 | 1:13-cv-12234 | Leader, Bulso & Nolan |
| McCulloch, Patricia C. and Larry J. | McCulloch, et al v. Ameridose, LLC, et al | 09/16/13 | 12/19/13 | 1:13-cv-12610 | Kinnard, Clayton & Beveridge |
| McElwee, Basil J. and Carla | McElwee, et al v. Ameridose, LLC, et al | 09/13/13 | 12/19/13 | 1:13-cv-12625 | Leader, Bulso & Nolan |
| McKee, Mary E. and Fred T. | McKee, et al v. Ameridose, LLC, et al | 09/16/13 | 12/19/13 | 1:13-cv-12779 | Kinnard, Clayton & Beveridge |

**Exhibit A to Saint Thomas Entities' Global Motion to Dismiss\***

| Plaintiff | Case Style | Original Complaint Filed | Amended Short Form Complaint Filed | MDL Case No. | Plaintiff's Counsel |
|---|---|---|---|---|---|
| McKinney, Joyce | McKinney v. Ameridose, LLC, et al | 09/20/13 | 12/20/13 | 1:13-cv-12692 | Butler Vines & Babb |
| Meeker, Mary L. and John O. | Meeker, et al v. Ameridose, LLC, et al | 09/16/13 | 12/19/13 | 1:13-cv-12616 | Kinnard, Clayton & Beveridge |
| Miller, Stella M. | Miller v. Ameridose, LLC, et al | 09/16/13 | 12/19/13 | 1:13-cv-12570 | Kinnard, Clayton & Beveridge |
| Minor, Michelle R. and Billy J., Jr. | Minor, et al v. Ameridose, LLC, et al | 09/27/13 | 12/19/13 | 1:13-cv-12836 | Kinnard, Clayton & Beveridge |
| Neely, Virginia Lois | Neely v. Ameridose, LLC, et al | 10/03/13 | 12/20/13 | 1:13-cv-12842 | Schulman, LeRoy & Bennett |
| Noble, Janet M. and Charles E. | Noble, et al v. Ameridose, LLC, et al | 09/16/13 | 12/19/13 | 1:13-cv-12606 | Kinnard, Clayton & Beveridge |
| Norwood, Marjorie and Jerry C. | Norwood, et al v. Ameridose, LLC, et al | 09/10/13 | 12/18/13 | 1:13-cv-12430 | Law Office of Blair P. Durham/Lieff Cabraser Heimann & Bernstein |
| O'Brien, Dennis | O'Brien v. Saint Thomas Outpatient Neurosurgical Center, LLC, et al | 09/12/13 | 12/20/13 | 1:13-cv-12759 | Branstetter, Stranch & Jennings |
| Osborne, Clark Kenneth and Sherry | Osborne, et al v. Ameridose, LLC, et al | 09/24/13 | 12/19/13 | 1:13-cv-12739 | Leader, Bulso & Nolan |
| Parman, Mae L. | Parman v. Ameridose, LLC, et al | 09/06/13 | 12/19/13 | 1:13-cv-12433 | Leader, Bulso & Nolan |
| Patel, Pinal individually, as personal representative of the estate of Gokulbhai Maganbhai Patel, deceased, and on behalf of the beneficiaries of the estate | Patel v. Ameridose, LLC, et al | 08/26/13 | 12/20/13 | 1:13-cv-12061 | Janet Jenner & Suggs LLC |
| Peay, Joan M. | Peay v. Ameridose, LLC, et al | 09/27/13 | 12/20/13 | 1:13-cv-12843 | Gilreath & Associates |
| Pellicone, Joseph M. and Patricia C. | Pellicone, et al v. Ameridose, LLC, et al | 09/30/13 | 12/19/13 | 1:13-cv-12916 | Leader, Bulso & Nolan |
| Petlers, Paul H. and Judith | Pelters, et al v. Ameridose, LLC, et al | 09/16/13 | 12/19/13 | 1:13-cv-12780 | Kinnard, Clayton & Beveridge |
| Pierce, Terry | Pierce v. Ameridose, LLC, et al | 09/20/13 | 12/19/13 | 1:13-cv-12733 | Branstetter, Stranch & Jennings |
| Pruitt, Dana Scott, Lesa C. Shadowhawk, surviving children of Elizabeth A. Pruitt, deceased | Pruitt, et al v. Ameridose, LLC, et al | 09/17/13 | 12/19/13 | 1:13-cv-12573 | Kinnard, Clayton & Beveridge |

**Exhibit A to Saint Thomas Entities' Global Motion to Dismiss\***

| Plaintiff | Case Style | Original Complaint Filed | Amended Short Form Complaint Filed | MDL Case No. | Plaintiff's Counsel |
|---|---|---|---|---|---|
| Ragland, Becky W. (surviving spouse of J.W. Ragland) | Ragland v. Ameridose, LLC, et al | 09/12/13 | 12/19/13 | 1:13-cv-12778 | Kinnard, Clayton & Beveridge |
| Redkevitch, Ella M. and Neil Z. | Redkevitch, et al v. Ameridose, LLC, et al | 09/18/13 | 12/19/13 | 1:13-cv-12666 | Kinnard, Clayton & Beveridge |
| Reed, Wayne A. individually as husband and next kin of descendant [sic] Diana E. Reed | Reed v. Ameridose, LLC, et al | 09/12/13 | 12/19/13 | 1:13-cv-12565 | Leader, Bulso & Nolan |
| Richards, Kevin R. | Richards v. Ameridose, LLC, et al | 09/16/13 | 12/19/13 | 1:13-cv-12603 | Leader, Bulso & Nolan |
| Robnett, Reba June and Troy L. | Robnett, et al v. Ameridose, LLC, et al | 09/13/13 | 12/19/13 | 1:13-cv-12613 | Kinnard, Clayton & Beveridge |
| Ruhl, Annette S. and William F. | Ruhl, et al v. Ameridose, LLC, et al | 09/12/13 | 12/19/13 | 1:13-cv-12670 | Kinnard, Clayton & Beveridge |
| Russell, Janet M. and Robert P. | Russell, et al v. Ameridose, LLC, et al | 09/17/13 | 12/19/13 | 1:13-cv-12794 | Kinnard, Clayton & Beveridge |
| Rybinski, S. Colette (surviving spouse of Thomas W. Rybinski) | Rybinski v. Ameridose, LLC, et al | 09/12/13 | 12/19/13 | 1:13-cv-12818 | Kinnard, Clayton & Beveridge |
| Schulz, Martha F. and Stuart P. | Schulz, et al v. Ameridose, LLC, et al | 09/19/13 | 12/20/13 | 1:13-cv-12311 | Hagens, Berman, Sobol, Shapiro LLP |
| Scott, Jimmy M. and Gwendolyn S. | Scott, et al v. Ameridose, LLC, et al | 09/16/13 | 12/19/13 | 1:13-cv-12578 | Kinnard, Clayton & Beveridge |
| Sellers, Harold G. and Patricia S. | Sellers, et al v. Ameridose, LLC, et al | 09/13/13 | 12/18/13 | 1:13-cv-12620 | Law Office of Blair P. Durham/Lieff Cabraser Heimann & Bernstein |
| Settle, Harvell A. and Glenda W. | Settle, et al v. Ameridose, LLC, et al | 09/16/13 | 12/19/13 | 1:13-cv-12569 | Kinnard, Clayton & Beveridge |
| Sharer, Lewis Ray and Barbara J. | Sharer, et al v. Ameridose, LLC, et al | 09/13/13 | 12/19/13 | 1:13-cv-12577 | Kinnard, Clayton & Beveridge |
| Skelton, Reba M. and Roy H. | Skelton, et al v. Ameridose, LLC, et al | 09/16/13 | 12/19/13 | 1:13-cv-12575 | Kinnard, Clayton & Beveridge |
| Slatton, John Jay and Leann | Slatton, et al v. Ameridose, LLC, et al | 09/12/13 | 12/19/13 | 1:13-cv-12618 | Kinnard, Clayton & Beveridge |
| Sullivan, Anna M. and C. Dale | Sullivan et al v. Ameridose, LLC, et al | 09/17/13 | 12/19/13 | 1:13-cv-12781 | Kinnard, Clayton & Beveridge |
| Taylor, Barbara and Lanny | Taylor, et al v. Ameridose, LLC, et al | 09/19/13 | 12/20/13 | 1:13-cv-12673 | Shuttleworth Williams, PLLC |

**Exhibit A to Saint Thomas Entities' Global Motion to Dismiss***

| Plaintiff | Case Style | Original Complaint Filed | Amended Short Form Complaint Filed | MDL Case No. | Plaintiff's Counsel |
|---|---|---|---|---|---|
| Temple, John L., administrator of the Estate of Reba Chessor Temple, deceased and as surviving child of Reba Chessor Temple, deceased | Temple v. Ameridose, LLC, et al | 09/18/13 | Short Form Complaint Not Filed | 1:13-cv-12696 | Griffith & Roberts PLLC |
| Wanta, Steven R. and Kelley S. | Wanta, et al v. Ameridose, LLC, et al | 09/17/13 | 12/19/13 | 1:13-cv-12623 | Kinnard, Clayton & Beveridge |
| Williams, Matthew, individually and as son and next kin of Earline T. Williams, deceased | Williams v. Ameridose, LLC, et al | 09/10/13 | 12/19/13 | 1:13-cv-12434 | Leader, Bulso & Nolan |
| Wray, Jane R. (a/k/a Beverly Jane Wray) and Gerald W. | Wray, et al v. Ameridose, LLC, et al | 09/20/13 | 12/18/13 | 1:13-cv-12737 | Lieff, Cabraser, Heimann & Bernstein |
| Wylie, Elfreida Hunt and Elton Lee | Wylie, et al v. Ameridose, LLC, et al | 09/04/13 | 12/19/13 | 1:13-cv-12305 | Leader, Bulso & Nolan |
| Young, Annette G. | Young v. Ameridose, LLC, et al | 09/17/13 | 12/19/13 | 1:13-cv-12594 | Kinnard, Clayton & Beveridge |
| Youree, Edna and Ralph | Youree, et al v. Ameridose, LLC, et al | 09/16/13 | 12/19/13 | 1:13-cv-12566 | Kinnard, Clayton & Beveridge |
| Ziegler, Adam C. and Sarah D. | Ziegler, et al v. Ameridose, LLC, et al | 09/11/13 | 12/18/13 | 1:13-cv-12588 | Patton & Pittman/Lieff Cabraser Heimann & Bernstein |

* There may be additional cases that raise the same vicarious liability/agency claims against these defendants that are not included in this list because they are: (i) in the process of being transferred to the MDL; (ii) duplicative or misfiled cases; (iii) have not yet been served on these defendants; or (iv) were inadvertently left off due to logistical issues. The Saint Thomas Entities intend their Global Motions to Dismiss to cover all pending cases asserting claims against them stemming from steroids compounded by NECC and reserve the right to amend these lists.