UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | MDL No. 2419<br>Case No. 1:13-md-2419-RWZ |
| THIS DOCUMENT RELATES TO:<br><br>The cases listed in Exhibit A to the Ascension Health Entities' Global Motion to Dismiss [Dkt. 895] | |

**THE PLAINTIFFS' STEERING COMMITTEE'S MEMORANDUM OF LAW IN OPPOSITION TO THE ASCENSION ENTITIES' GLOBAL MOTION TO DISMISS**

The Plaintiffs' Steering Committee, on behalf of the plaintiffs in MDL 2419 whose cases are listed in Exhibit A to Defendants' motion [Dkt. 895-1] ("Plaintiffs"), respectfully submits this opposition to the Global Motion to Dismiss [Dkt. 895] filed by Ascension Health and Ascension Health Alliance ("Ascension Health Entities").

These cases arise out of the deadly fungal infection outbreak that took over 64 innocent lives and caused severe, life-changing illnesses in over 750 other patients. Tennesseans were among the most severely impacted by the outbreak – suffering deaths and illnesses to 153 Tennesseans.  As detailed in the operative complaints, St. Thomas Clinic, its principals, agents, and related entities, including the Defendant Ascension Health Entities, bear legal responsibility for the conduct that led to these deaths and illnesses. The Ascension Health Entities, operating through entities it directly controlled, engaged in wrongful conduct that harmed Plaintiffs.  The operative complaints[1] set forth the legal and factual bases for these allegations and more than

---

[1] In MDL Order No. 6, the Court required the PSC to file a Master Complaint and a form of short form complaint. The Master Complaint was meant as an administrative tool, allowing the allegations and claims against all defendants to be stated in one document. Plaintiffs who already had cases on file or who wished to file in the MDL could then file a short form complaint to assert facts and claims set out in the master complaint, streamlining the

satisfy the requirements of Rule 12 and relevant case law. These defendants' attempts to escape liability entirely for their wrongful conduct should be rejected and the Court should deny their motion to dismiss.

In its Motion, Defendants adopted and incorporated by reference the Saint Thomas Entities' Memorandum in Support of Global Motion to Dismiss Under Rule 12(b)(6) ("Saint Thomas Entities' Memo – Dkt. 894). Plaintiffs adopt and incorporate by reference the Plaintiffs' Steering Committee's Memorandum of Law in Opposition to the Saint Thomas Entities' Global Motion to Dismiss [Dkt. 1042]. As such, it is not necessary to recite the factual background.

## I. STANDARD OF REVIEW

A claim for relief must be supported by "a short and plain statement showing that the pleader is entitled to relief."[2] When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court "must assume the truth of all well-plead[ed] facts and give plaintiff the benefit of all reasonable inferences therefrom."[3]

The plaintiff need only plead enough facts "to state a claim to relief that is plausible on its face"[4] This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element."[5] Thus, at the pleading stage, a plaintiff need not demonstrate

---

process of filing claims in the MDL. The overwhelming majority of cases against the Tennessee defendants were on file by the time the PSC filed the Master Complaint. Many Tennessee plaintiffs filed a short-form complaint. In addition to allegations in the Short Form Complaint, because of the unique requirements of Tennessee law, many Plaintiffs also opted to re-assert by reference the claims in their originally filed complaint. The full universe of Plaintiffs' allegations in this case are drawn from the Master Complaint [Dkt. 545], the Amended Master Complaint [Dkt. 832], the underlying complaints filed by individual Plaintiffs (listed in [Dkt. 895-1]), and the "short form" complaints filed by individual Plaintiffs, which incorporate by reference all the foregoing pleadings. For a representative complaint containing specific allegations related to Ascension, *see Brinton v. Ameridose, LLC, et al.,* No. 1:13-cv-12612 (D. Mass Sept. 12, 2013) [Dkt. 1] ["Brinton Compl."].

[2] Fed. R. Civ. P. 8(a).
[3] *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007).
[4] *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).
[5] *Bell Atlantic v. Twombly*, 550 U.S. 544, 556 (2007); *see also Meyer v. Snyders Lance, Inc.*, No. 4:12-cv-215, 2012 U.S. Dist. LEXIS 175537, at *3 (M.D. Ga. Dec. 12, 2012) ("[M]any lawyers fail to appreciate the distinction

that the defendant's conduct is "probably" unlawful; it need only allege facts (taken as true) that raise a right to relief "above the speculative level."[6]

On this motion to dismiss, the Court is asked to consider the sufficiency of Plaintiffs' claims against Defendants, which are premised on Plaintiffs' allegations that the Ascension Health Entities and the St. Thomas Entities were not separate legal entities from each other or from St. Thomas Clinic, but were in fact alter-egos of each other; and that St. Thomas Clinic, Howell Allen, Dr. Culclasure, and Ms. Schamberg acted as agents of the St. Thomas Entities, which was under the direct control and ownership of the Ascension Health Entities.  In other words, the question here is whether Plaintiffs have alleged a plausible relationship between and among the Defendants.

The determination of whether to pierce the corporate veil to hold parent company vicariously liable for subsidiaries/agents is a case-specific and highly fact-intensive inquiry that is ordinarily a question for the jury to decide based on evidence gleaned during discovery.[7] At the pleading stage, Plaintiffs' hurdle is a low one: their complaint must simply "contain allegations from which an inference may fairly be drawn that evidence on these material points [i.e. alter ego and/or agency relationships] will be introduced at trial."[8]  It remains the role of discovery, not the

---

between determining whether a claim for relief is 'plausibly stated,' the inquiry required by *Twombly/Iqbal*, and divining whether actual proof of that claim is 'improbable,' a feat impossible for a mere mortal, even a federal judge.").

[6] *Twombly*, 550 U.S. at 555.

[7] *See, e.g. Electric Power Bd. v. St. Joseph Valley Structural Steel Corp.*, 691 S.W.2d 522, 526 (Tenn. 1985); *White v. Revco Disc. Drug Ctrs., Inc.*, 33 S.W.3d 713, 723 (Tenn. 2000); *Abshure v. Methodist Healthcare-Memphis Hosps.*, 325 S.W.3d 98, 104 n.5 (Tenn. 2010); *see also See CAO Holdings, Inc. v. Trost,* 333 S.W.3d 73, 89 (Tenn. 2010) (stating that "[i]ssues relating to piercing the corporate veil are not ordinarily appropriate for resolution by summary judgment"). "[T]he question is usually a fact-intensive one." *WYCQ, Inc. v. Nat'l Music Mktg., Inc.,* No. 3:05-cv-0979, 2008 WL 56027, at *11 n.19 (M.D. Tenn. January 3, 2008).  In the instant matter, discovery has yet to begin on the inner working relationship among the Defendants.

[8] *White*, 33 S.W.3d at 725-26 (citation omitted) (denying motion to dismiss plaintiff's claims for vicarious liability against defendant that were rooted in allegations of agency).

pleadings, to "reveal [that] evidence."[9] Here, at the pre-discovery pleading stage, Plaintiffs have cleared their low hurdle.

## II. Plaintiffs Have Sufficiently Alleged that the Ascension Entities and the St. Thomas Entities Are Alter Egos of Each Other.

Tennessee has recognized several theories for piercing the corporate veil, including that the entities operated as alter egos.[10] Here, Plaintiffs have alleged facts sufficient to pierce the corporate veil on either of these theories, as explained below.

As with agency, the determination of whether a corporation is a mere instrumentality – or alter ego – of an individual or a parent corporation is fact-intensive inquiry appropriately left for the jury.[11] Nevertheless, a parent company may be held liable for its subsidiary if:

> (1) The parent corporation, at the time of the transaction complained of, exercises complete dominion over its subsidiary, not only of finances, but of policy and business practice in respect to the transaction under attack, so that the corporate entity, as to that transaction, had no separate mind, will or existence of its own.
>
> (2) Such control must have been used to commit fraud or wrong, to perpetuate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of third parties' rights.
>
> (3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.[12]

Other, nonessential factors that courts have considered include: the use of the same office or business location; the employment of the same employees; the use of the corporation as an instrumentality or business conduit for an individual or another corporation; and the failure to

---

[9] *Twombly*, 550 U.S. at 556.
[10] *See, e.g.*, 7 Tenn. Juris. Corporations § 3.  Strictly for purposes of the issues raised in this brief, the PSC maintains that Tennessee law will apply, but the PSC takes no further position as to what law may apply to other claims brought in this action, including claims against any other Tennessee defendant.
[11] *See, e.g., Electric Power Bd.*, 691 S.W.2d at 526.
[12] *Cont'l Bankers Life Ins. Co. v. Bank of Alamo*, 578 S.W.2d 625, 632 (Tenn. 1979).  Notwithstanding the wayward interpretations occasioned by certain federal court opinions, "the Tennessee Supreme Court has not abandoned the [thirty-five] year old *Continental Bankers* standard, nor given much, if any, indication of an intention to do so. *See Southeast Tex. Inns, Inc. v. Prime Hospitality Corp.*, 462 F.3d 666, 683 (6th Cir. 2006) (Oberdorfer, J., dubitante) (citing *Stigall v. Wickes Mach.*, 801 S.W.2d 507, 510-11 (Tenn. 1990) and *Electric Power Bd.*, 691 S.W.2d at 526).

maintain arm's length relationships among related entities.[13] A court may also impose liability on a parent corporation where the parent and its subsidiary "are in fact identical or indistinguishable."[14]

Contrary to Defendants' contention, no finding of fraud is required in the alter ego determination for tort cases – courts usually apply a less stringent standard for piercing the corporate veil in tort cases than in contract cases.[15] Nor are commingling of property, undercapitalization, and diversion of assets "the real indicia of alter ego" – those are simply a few of the nonessential factors that courts have used in the alter ego determination in other cases, and they are certainly not required elements here.

Plaintiffs have alleged Ascension Health Entities owned, operated and managed the Saint Thomas Entities.[16] Per its website, Ascension Health lists Saint Thomas Health as one of its "Hospitals and Facilities."[17] Furthermore, on its IRS Form 990, Schedule R, Part 1, Ascension Health held itself out as the "**direct controlling entity**" of Saint Thomas Health.[18] On Part III of IRS form 990, Ascension Health listed Saint Thomas Outpatient Neurosurgical Center, LLC is among the entities listed under "Identification of Related Organizations Taxable as a Partnership".[19] Finally, Plaintiffs allege "[t]hrough its relationship with Saint Thomas Health, and/or Saint Thomas Network, and/or Saint Thomas West Hospital, formerly known as St. Thomas Hospital, and Saint Thomas Outpatient Neurosurgical Center, LLC, the "Ascension Health" Defendants are liable for the conduct and the liability on any and all matters contained herein of Saint Thomas Health, and/or Saint Thomas Network, and/or Saint Thomas West Hospital, formerly

---

[13] *See FDIC v. Allen,* 584 F. Supp. 386 (E.D. Tenn. 1984).
[14] *Edmunds v. Delta Partners, LLC*, 403 S.W.3d 812, 829 (Tenn. App. 2012).
[15] *See Southeast Tex. Inns, Inc. v. Prime Hospitality Corp.*, 462 F.3d 666, 679 n.16 (6th Cir. 2006).
[16] *Brinton* Compl. ¶ 246
[17] *Id.*
[18] *Id.,* at ¶ 247
[19] *Id.,* Para 248

known as St. Thomas Hospital and/or Saint Thomas Outpatient Neurosurgical Center, LLC. To the extent that the Ascension Health Defendants may claim that a corporate veil may exist to preclude liability, justice and equity require that any such alleged veil be pierced." [20]

Thus, Plaintiffs sufficiently allege Defendants dominion and control of the Saint Thomas Entities. These allegations are sufficient because under Tennessee law, the parent may be held liable for the actions of a subsidiary if the parent exercises such control over the subsidiary as to render it a puppet, and where necessary to accomplish justice.[21]

In sum, with the allegations against the Ascension Health Entities, Plaintiffs have sufficiently alleged that the Ascension Defendants wholly owned, managed, controlled, and operated Saint Thomas Health, which owns St. Thomas Hospital and Saint Thomas Network. Saint Thomas Network, which has no employees and appears to be an empty shell, co-owns St. Thomas Clinic.[22] Plaintiffs have additionally alleged that a wrong was committed proximately causing Plaintiffs' injuries. Thus Plaintiffs' allegations are sufficient to raise an inference that Plaintiffs will present evidence at trial that Ascension and all St. Thomas Entities were alter egos of each other, which satisfies Plaintiffs' burden at this stage. No discovery has been conducted at this point. Plaintiffs should, at a minimum, be allowed to conduct discovery in order to shed greater light on the relationship between the Ascension and Saint Thomas entities.

### III. CONCLUSION

Defendants Ascension Health and Ascension Health Alliance seek complete immunity from Plaintiffs' claims even though Plaintiffs have stated viable alter ego claims against Ascension Parties sufficient to withstand a motion to dismiss under Rule 12(b)(6). Because alter

---

[20] *Id.*, Para 249
[21] *See Rogers v. Louisville Land Co.,* 367 S.W.3d 196, 214-216 (Tenn. 2012); *Neese v. Fireman's Fund Ins. Co.,* 386 S.W.2d 918, 921 (Tenn. Ct. App. 1964).
[22] Saint Thomas Network's response to Interrogatory No. 8 in *Reed v. Saint Thomas Outpatient Neurosurgical Center, LLC et al*; Davidson County Circuit Court No. 13C417.

ego liability depends on the facts of each case, Plaintiffs claims should proceed to the discovery stage of this litigation. As to any and all other claims contained or referenced through incorporation of Saint Thomas Entities Memo [Dkt. 894], Plaintiffs rely on PSC's Response to that Motion to Dismiss [Dkt. 1042].

Date:  March 28, 2014

Respectfully submitted:

**/s/ J. Gerard Stranch, IV**
J. Gerard Stranch, IV
Benjamin A. Gastel
BRANSTETTER, STRANCH & JENNINGS, PLLC
227 Second Avenue North
Nashville, TN 37201
Telephone:  615/254-8801
Facsimile:  615/255-5419
gerards@branstetterlaw.com

*Plaintiffs' Steering Committee and Tennessee State Chair*

Thomas M. Sobol
Kristen Johnson Parker
HAGENS BERMAN SOBOL SHAPIRO, LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Telephone:  617/482-3700
Facsimile:  617/482-3003
tom@hbsslaw.com
kristenjp@hbsslaw.com

*Plaintiffs' Lead Counsel*

Elizabeth J. Cabraser
Mark P. Chalos
LIEFF CABRASER, HEIMANN & BERNSTEIN
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone:  415/956-1000
Facsimile:  415/956-1008

ecabraser@lchb.com
mchalos@lchb.com

*Federal/State Liaison*

Marc E. Lipton
LIPTON LAW
18930 W. 10 Mile Road
Southfield, MI 48075
Telephone:  248/557-1688
Facsimile:  248/557-6344
marc@liptonlaw.com

Kimberly A. Dougherty
JANET, JENNER & SUGGS, LLC
31 St. James Avenue, Suite 365
Boston, MA 02116
Telephone:  617/933-1265
kdougherty@myadvocates.com

Mark Zamora
ZAMORA FIRM
6 Concourse Parkway, 22nd Floor
Atlanta, GA 30328
Telephone:  404/451-7781
Facsimile:  404/506-9223
mark@markzamora.com

Patrick T. Fennell
CRANDALL & KATT
366 Elm Avenue, S.W.
Roanoke, VA 24016
Telephone:  540/342-2000
Facsimile:  540/400-0616
pfennell@crandalllaw.com

*Plaintiffs' Steering Committee*

## **CERTIFICATE OF SERVICE**

      I, J. Gerard Stranch, IV, hereby certify that I caused a copy of the foregoing to be filed electronically via the Court's electronic filing system.  Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system, and notice of these filings will be sent to these parties by operation of the Court's electronic filing system.

Date:   March 28, 2014

                                             /s/J. Gerard Stranch, IV
                                             J. Gerard Stranch, IV