UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION<br><br>v.<br><br>This Document Relates to:<br><br>All Cases | MDL No. 13-md-2419-RWZ |

**DEFENDANT LIBERTY INDUSTRIES, INC.'S
MEMORANDUM IN SUPPORT OF ITS
MOTION TO MODIFY THE ORDER ON MEDIATION PROGRAM**

Defendant, Liberty Industries, Inc. ("Liberty") hereby files this Memorandum in Support of its Motion to Modify the Order on Mediation Program ("Motion"). Liberty seeks to modify the Order to allow those Unaffiliated Defendants participating in mediation access to documents produced by the Chapter 11 Trustee to the Plaintiffs' Steering Committee.[1] The lack of such access prejudices Liberty, which has no other source of comparable information such that it is unable to make a meaningful evaluation of liability and settlement.

**BACKGROUND**

On August 15, 2013 Judge Saylor entered the Order on Mediation Program (Dkt. No. 394) ("Mediation Order"). The Mediation Order provides guidelines for parties participating in mediation, namely, those non-debtor defendants that are not affiliated with New England Compounding Pharmacy, Inc. d/b/a New England Compounding Center ("NECC") (collectively, "Unaffiliated Defendants"), that are defending against personal injury and wrongful death claims relating to NECC products, and have or may have claims against NECC for contribution,

---

[1] Liberty also joins in the motion filed by Tennessee Clinic Defendants seeking to modify MDL Order No. 6 to permit access of the NECC documents to all defendants (Dkt. No. 1037), as reflected by Liberty's separate filing which presents arguments similar to those stated herein. *See* Dkt No. 1063.

indemnification, or reimbursement.  *See* Mediation Order at Section I.  The Mediation Order required the parties to engage in "informal discovery," which exclusively required the confidential production of certain categories of documents be produced by Unaffiliated Defendants to the Chapter 11 Bankruptcy Trustee ("Trustee"), the Official Committee of Unsecured Creditors ("Creditors Committee") and the Plaintiffs' Steering Committee ("PSC").  *See* Dkt. No. 394 at Section II(H)(1)-(2), (5).   Nothing in the Mediation Order calls for the production of documents that were maintained by NECC while it was operating.  Participation in the Mediation Program also stayed discovery with respect to its participants, but parties (*i.e.* defendants) could voluntarily choose to produce documents in response to any subpoenas with which they had been served.  *See id.* at Section II(L)(2).

     Liberty is an Unaffiliated Defendant participating in mediation.  It has provided documents to the PSC in compliance with the Mediation Order and also received <u>some</u> documents voluntarily produced by the PSC (960 pages).  However, in contrast to what it has received, it has become aware from representations made to the Court of a document repository containing in excess of 42,000 pages of documents from NECC ("NECC Production").  The NECC Production was made available by the for the Chapter 11Trustee, or Specially Retained Coordinating Defense Counsel for the Trustee ("Special Litigation Counsel"), to the PSC, but not to Liberty or any other Unaffiliated Defendants, and the PSC has not provided access to these documents to Liberty.  The documents are believed to contain critical evidence that is essential for fully evaluating liability and settlement, and therefore the Mediation Order must be modified to require access to the NECC Production by the mediating Unaffiliated Defendants.

**ARGUMENT**

This Court has the authority to review its own interlocutory orders. *See* Fed. R. Civ. P.54(b). The Rule expressly provides:

> [ ] [A]ny order other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end to action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b). *See also Greene v. Union Mutual Life Ins. Co. of Am.*, 764 F.2d 19, 22 (1st Cir. 1985) (motion "should have been viewed as a routine request for reconsideration of an interlocutory district court decision"); *Homeowner Options for Massachusetts Elders, Inc. v. Brookline Bancorp, Inc.*, 789 F.Supp.2d 242, 243 (D. Mass. 2011) (district court has the ability to reconsider its interlocutory orders). The ability to review such orders is discretionary, and relief may be afforded "as justice requires." *Greene*, 764 F.2d at 22; *Homeowner Options*, 789 F.Supp.2d at 243.

The Mediation Order also expressly permits for its modification to allow for the exchange of "additional information or documents [ ] in order to facilitate a mediated settlement or resolution and the timing and manner of the production." Mediation Order at Section II(H)(3). The terms of the Mediation Order may be modified by the Court "as necessary or appropriate to facilitate the mediation process [ ]." Mediation Order at Section II(T).

Justice requires the Mediation Order be modified to allow the mediating Unaffiliated Defendants – or at least Liberty – access to the NECC Production. The Court's intervention is required because efforts to secure voluntary access to the production have proven unsuccessful. Also, Liberty is unable to make a meaningful evaluation for settlement purposes since it does not have access to the body of evidence that either implicates or exonerates Liberty.

A.     **Requests to Voluntarily Provide Access to the NECC Production Have Not Been Successful.**

Liberty has repeatedly requested documents supporting the allegations of the Master Complaint, and in particular, documents pertaining to the operation of NECC before it closed in October 2012. The allegations against Liberty are based on its limited role in constructing three of the five clean rooms at NECC. Because the two largest sources of contamination are the people in the clean rooms and the materials brought into the clean rooms, information and documents regarding NECC's operations are relevant. *See* United States Pharmacopeia, 35 <797> "Pharmaceutical Compounding-Sterile Preparations" ("USP 797").[2] The PSC has received approximately 5,900 documents and 42,000 pages from NECC ("NECC Production"). Presumably, the NECC Production contains documents concerning the clean rooms, including their construction and/or modification, among other documents related to the operation of NECC, such as the sterilization practices used by NECC personnel.

On January 2, 2014, counsel for Liberty requested the PSC produce documents supporting its claims.[3] However, Liberty has not yet received any documents that pre-date the closure of NECC.[4]

On March 5, 2014, the Chapter 11 Trustee and Official Committee of Unsecured Creditors ("Creditors Committee") represented that "the Trustee…has provided informal discovery to the PSC **and non-affiliated defendants** through sixteen separate productions, encompassing over 5,900 documents and 42,000 pages." *See* Joint Status Report of the Chapter

---

[2] A true copy of an excerpt of the USP 797 is attached to the Affidavit of Peter G. Hermes ("Hermes Aff."), submitted in support of this Motion, as Exhibit 1. A complete copy of the USP 797 is attached as an exhibit to the Declaration of Abigail Hemai in Support of Defendant Unifirst Corporation's Global Motion to Dismiss (Dkt. No. 1052-1).

[3] *See* Jan. 2, 2014 letter from Nicole Dorman to Marc Lipton, a true copy of which is attached to the Hermes Aff. as Exhibit 2.

[4] As a part of confidential mediation communications, counsel for Liberty received 960 pages of documents. However, none of them pertain to the operation of NECC prior to its filing for bankruptcy.

4

11 Trustee and Official Committee of Unsecured Creditors, at 13, n.11. (Dkt. No. 971) (emphasis added).

In light of this representation, on March 7, 2014, counsel for Liberty sent correspondence to counsel for the Creditors Committee, inquiring of the means and methods it may employ to access the NECC Production.[5]  Liberty was redirected to counsel for the Chapter 11 Trustee and Special Litigation Counsel, but did not receive a substantive response from either. *See id.* Likewise, although Liberty is a non-affiliated defendant belonging to the group of defendants who purportedly received the NECC Production, it still has not received access, despite the representation to the Court that production was made to "non-affiliated defendants."

On March 31, 2014, Liberty again inquired of the PSC regarding the NECC Production.[6] This time, Liberty was informed that the NECC Production is subject to an agreement between the PSC and Trustee preventing its production.  *See id.*  Liberty has been unable to secure universal agreement with the PSC, counsel for the Trustee, Special Litigation Counsel, or the Creditors Committee for access to the NECC Production, and therefore must turn to this Court for assistance.

    **B.**    **Participating in Mediation Without the Benefit of Access to NECC's Production Puts Liberty at a Significant Disadvantage.**

Liberty is participating in mediation without knowing the extent of any alleged evidence that exists to support the PSCs' claims.  It is essentially negotiating a settlement with blinders on. Liberty, like many Unaffiliated Defendants, needs to know what evidence exists to support the claims against which it is defending.  However, unlike other defendants, the Master Complaint (and 18 other Complaints to date) allege that Liberty designed, manufactured and constructed three of the five cleanrooms at the NECC's Framingham, Massachusetts facility in which it is

---

[5] *See* Mar. 7, 2014 e-mail chain, a true copy of which is attached to the Hermes Aff. as Exhibit 3.
[6] *See* Mar. 31, 2014 e-mail chain, a true copy of which is attached to the Hermes Aff. as Exhibit 4.

5

alleged the tainted MPA was compounded. Review of the NECC production may reveal that the MPA was in fact compounded in the clean rooms in which Liberty was uninvolved, demonstrating there is no basis for a finding of liability for Liberty, and hence no reason to settle at mediation. The NECC Production may also reveal that work was performed subsequent to Liberty's work on the three clean rooms for which it contracted. Similarly, the NECC Production may (likely) show that the procedures used by NECC during its operation were the sole cause of the contamination and widespread outbreak. Such information is critical in evaluating whether to settle the claims at mediation.

In short, it is essential for Liberty to review the NECC Production to determine in which clean rooms the tainted MPA was created, whether any subsequent work was performed to the rooms for which Liberty contracted to install, and the operation of NECC prior to its filing of the bankruptcy petition. Furthermore, any access granted to NECC's Production would be kept confidential as already provided by the Mediation Order. *See* Mediation Order at Section II(H)(5).

## **CONCLUSION**

For all of the foregoing reasons, Liberty respectfully requests this Court modify the Order on Mediation Program and allow access to the NECC Production by the Unaffiliated Defendants participating in mediation.

WHEREFORE, Defendant Liberty Industries, Inc., respectfully requests that its Motion to Modify the Order on Mediation Program be ALLOWED.

                                          Respectfully submitted,
                                          LIBERTY INDUSTRIES, INC.,
                                          By its attorneys,

                                          */s/ Peter G. Hermes*
                                          Peter G. Hermes, BBO No. 231840
                                          phermes@hermesnetburn.com
                                          Scott S. Spearing, BBO No. 562080
                                          sspearing@hermesnetburn.com
                                          Dianne E. Ricardo, BBO No. 675586
                                          dricardo@hermesnetburn.com
                                          HERMES, NETBURN, O'CONNOR
                                                & SPEARING, P.C.
                                          265 Franklin Street, 7th Floor
                                          Boston, MA 02110
                                          (617) 728-0050 (T)
Dated:  April 7, 2014                  (617) 728-0052 (F)

## CERTIFICATE OF SERVICE

      Pursuant to Local Rules 5.2(b)(2) and 5.4 of the Local Rules of the United States District Court for the District of Massachusetts, I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that paper copies will be sent by first-class mail to those indicated as non-registered participants, if any, on April 7, 2014.

                                          */s/ Peter G. Hermes*
                                          Peter G. Hermes

## LOCAL RULE 7.1 CERTIFICATION

      I hereby certify that counsel for Liberty Industries, Inc. conferred with counsel for the Plaintiffs' Steering Committee, Chapter 11 Trustee, and Official Committee of Unsecured Creditors and the parties were unable to reach agreement with respect to the issues raised herein.

                                          */s/ Peter G. Hermes*
                                          Peter G. Hermes

*G:\DOCS\DER\Cases\Great American\Liberty Industries\Pleadings & Motions\MLAW for MTN to Modify Mediation Order.docx*