UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | ) ) ) | |
| _____ | ) ) | MDL No. 2419 Dkt. No 1:13-md-2419 (RWZ) |
| THIS DOCUMENT RELATES TO: | ) ) | |
| All Cases. | ) ) ) | |
| _____ | ) | |

## SAINT THOMAS ENTITIES AND ASCENSION PARTIES' MEMORANDUM IN SUPPORT OF MOTION TO MODIFY MDL ORDER NO. 6 TO ALLOW EQUAL ACCESS TO NECC DOCUMENT PRODUCTION

Defendants Saint Thomas West Hospital, formerly known as St. Thomas Hospital, Saint Thomas Network, and Saint Thomas Health (collectively referred to as the "Saint Thomas Entities") and defendants Ascension Health and Ascension Health Alliance (collectively referred to as the "Ascension Parties") file this Memorandum ("Memorandum") in Support of Motion to Modify MDL Order No. 6 to Allow Equal Access to NECC Document Production ("Motion") and in support, show the Court the following:

### PRELIMINARY STATEMENT

The Case Management Order ("CMO") proposed by the Plaintiffs' Steering Committee ("PSC") that became MDL Order No. 6 was prepared prior to the transfer of many, if not most, of the cases now pending in this MDL. Accordingly, the CMO was not entered after consultation from all appearing parties as required by Rule 16 and, consequently, contains discovery provisions precluding fair and equal access to documents, requiring CMO revision.

In particular, the CMO provides for disparate treatment of plaintiffs and defendants regarding access to information produced by the Chapter 11 Trustee of the NECC bankruptcy estate; and without revising the CMO, as a result of the automatic bankruptcy stay, non-insider

1

defendants—known as the "Unaffiliated Defendants"[1]—have no reasonable or cost-effective means to review the documents, which have been in the possession of the PSC for more than five months, thus impairing the Unaffiliated Defendants' ability to participate in these proceedings on equal footing.  Therefore, good cause exists to revise the CMO and allow all parties access to the PSC-controlled document repository such that NECC documents are reviewable by all.

### RELEVANT BACKGROUND FACTS AND PROCEDURE

### I.      The Case Management Order.

On June 28, 2013, the PSC, NECC, the Affiliated Defendants,[2] and the Official Committee of Unsecured Creditors ("Committee") jointly moved the Court for entry of MDL Order No. 6 [Dkt. No. 209].  The CMO was principally negotiated and drafted by the PSC, and zero or minimal input was sought from or afforded the Unaffiliated Defendants in these cases, including the Saint Thomas Entities and Ascension Parties, many of which were not, at the time, parties to the MDL.

Among other things, the CMO requires the PSC to maintain an online document repository to initially provide only the Committee, Trustee, and all Plaintiffs' counsel access to documents produced during discovery.  CMO § IV.D.5 (The PSC "shall create and maintain an online document repository accessible (at minimum) by the Creditors' Committee, the trustee, and plaintiffs' counsel of record . . . .").  The CMO requires, however, that the PSC meet and

---

[1] The "Unaffiliated Defendants" include the hospitals, clinics, and other healthcare providers who have no corporate relationship with NECC or the Affiliated Defendants.  Many of the Unaffiliated Defendants were not served in the MDL until after a number of case management orders, including the CMO, had been entered.

[2] The "Affiliated Defendants" means "other entities or individuals affiliated with" New England Compounding Pharmacy, Inc. ("NECC"), but does not include bankruptcy debtor NECC.  CMO § I.  The Affiliated Defendants include Barry Cadden; Lisa Cadden; Doug Conigliaro; Carla Conigliaro; Gregory Conigliaro; Glenn Chinn; Alaunus Pharmaceutical, LLC; Ameridose, LLC; GDC Properties Management, Inc.; Medical Sales Management; and Medical Sales Management SW.  *See* Further Case Management Order, MDL Order No. 7, ¶ 1 [Dkt. No. 438].

confer with "the trustee and the defendants with the goal of creating a single document repository *that is accessible to all of those entities* in order to minimize costs." *Id*. (emphasis added).

The CMO also creates an exception to accessing certain documents "informally produced" by the Trustee to the PSC or the Creditors' Committee:

> Materials produced informally or pursuant to a confidentiality or protective order by the trustee to the Plaintiffs' Steering Committee or the Creditors' Committee shall not be made available through the repository.

*Id*. The CMO does not explain why parties are excluded from accessing information produced by NECC, nor does it contain any provision for parties to gain such access (whether by entering into a confidentiality agreement, petition to the Court, or otherwise).

## II.     The Non-Global Settlement and the Limited Mediation Program.

As reported to this Court by the Trustee and the Committee in their Joint Status Report [Dkt. No. 971], on December 23, 2013, the Trustee, Committee, NECC owners, insurers and affiliates, and the PSC reached a settlement in principle whereby certain parties will contribute in excess of $100 million into a fund for distribution to NECC's creditors.  Joint Status Report at ¶¶ 30-32.  On information and belief, no third-party defendant, including the Saint Thomas Entities and Ascension Parties, are parties to the settlement.  *Id*. (describing the settlement as "Settlement with NECC's Insiders").

Mediation is also pending pursuant to this Court's Order on Mediation [Dkt. No. 394]. The Trustee and Committee describe the program as follows:

> [The mediation program] will seek to resolve the claims of those parties other than the NECC Affiliated Defendants or Insiders (1) who have or may have claims asserted against them as defendants by personal-injury and wrongful-death plaintiffs that arise out of or relate to NECC products; and (2) who, as a result of claims or potential claims against them, have or may have indemnification, contribution, reimbursement or other claims against the NECC estate (the "Non-Affiliated Defendants").

*Id.* at ¶ 35.  However, exceedingly few parties opted in to the program.  In fact, only five MDL

defendants are currently participating.  *Id.* at ¶ 37.[3]

## BRIEF IN SUPPORT OF RELIEF REQUESTED

**I.      The Court Has Broad Discretion to Modify the CMO to Promote Fairness.**

Scheduling and case management orders may be modified at any time for good cause.

FED. R. CIV. P. 16(b)(4); *see also* LR 16.1(g) (providing that scheduling orders "can be modified

only by order of the judge, or the magistrate judge if so authorized by the judge, and only upon a

showing of good cause supported by affidavits, other evidentiary materials, or references to

pertinent portions of the record.").

As stated by the First Circuit Court of Appeals,

> CMOs are designed to serve a variety of pragmatic objectives.  These include not
> only expediting and focusing the litigation, *see* FED. R. CIV. P. 16(a)(1)-(4), but
> also, as the current version of the rule recognizes, facilitating settlement, *see* FED.
> R. CIV. P. 16(a)(5).  We think it follows that case management is an area in which
> the district court has "considerable discretion."  *Geremia v. First Nat'l Bank*, 653
> F.2d 1, 5 (1st Cir. 1981).  Although a CMO will ordinarily "control the
> subsequent course of the action," FED. R. CIV. P. 16(e), it may be modified by
> subsequent order at the district court's pleasure, *see Ramirez Pomales v. Becton
> Dickinson & Co.*, 839 F.2d 1, 3 (1st Cir. 1988), or, in the case of a final CMO, to
> prevent manifest injustice, *see* FED. R. CIV. P. 16(e).

*United States v. Charles George Trucking, Inc.*, 34 F.3d 1081, 1090 (1st Cir. 1994).  Particularly

in the absence of unfair prejudice to litigants, the Court has "very broad discretion" under Rule

---

[3] The mediation participants, other than the PSC and Trustee, are limited to (a) ARL BioPharma,
d/b/a Analytical Research Laboratories (which provided product sample testing services to
NECC); (b) Victory Mechanical Services, Inc. and the related entity Victory Heating & Air
Conditioning Co., Inc. (which installed ventilation systems at NECC); (c) Liberty Industries, Inc.
(which designed, manufactured, and installed the cleanrooms used to compound, mix, and
prepare NECC's contaminated products); (d) Orlando Center for Outpatient Surgery, LP (a
Florida clinic that administered tainted MPA); and (e) Pain Management Center of West Orange
(a Florida pain management clinic that administered tainted MPA).  Joint Status Report at ¶ 37.
The Joint Status Report also indicates that "private mediation" is pending with Inspira Health
Network, Inc. and Inspira Medical Centers, Inc.  *Id.*

16 to modify its preexisting CMO.  *Id.* (citing 6A CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1525.1, at 253-54 (1990)).

Additionally, the Court has general inherent discretion to reconsider interlocutory orders. *Greene v. Union Mut. Life Ins. Co. of Am.*, 764 F.2d 19, 22 (1st Cir. 1985).  Specifically, pursuant to Rule 54(b), the Court has the power to afford relief from interlocutory orders "as justice requires."  *Homeowner Options for Mass. Elders, Inc. v. Brookline Bancorp, Inc.*, 789 F. Supp. 2d 242, 243 (D. Mass. 2011) (citing *Greene*, 764 F.2d at 22).[4]

Whether to reconsider a previous order also lies "within the sound discretion of the Court."  *Id.* (citing *Campos v. P.R. Sun Oil Co.*, 536 F.2d 970, 972 n.6 (1st Cir. 1976)).  A district court has a "broad measure of discretion in managing pretrial affairs, including the conduct of discovery [under Rule 26]."  *Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 186 (1st Cir. 1989) (citations omitted).  This broad discretion includes allowing access to documents produced in discovery.  *See generally FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 408 (1st Cir. 1987).

As set forth below, good cause exists for the Court to exercise its broad discretion and grant equal access to the NECC documents compiled in the repository, and no prejudice will befall any party as a result of the Court's revision of the CMO.

---

[4] *See, e.g.,* FED. R. CIV. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.").

## II.   Denial of Equal Access to NECC Documents is Unfair and Serves No Justifiable Purpose.

### A.   Circumstances Have Changed Since Entry of the CMO That Warrant Revision.

As provided above, the CMO was entered in the relative infancy of these cases, before the time that a substantial numbers of the Unaffiliated Defendants, including the Saint Thomas Entities and Ascension Defendants, became parties to the MDL.  As such, these Defendants were not able to participate in drafting the order or the negotiation of its contents.  *See* FED. R. CIV. P. 16(b)(1) (requiring issuance of a scheduling order either after receipt of ***all*** parties' Rule 26 disclosures or after consulting ***all*** parties' attorneys and any unrepresented parties at a scheduling conference).  Nearly all of the parties affected by NECC's wrongdoings are now before this Court and are entitled to a revised case management order that provides equal access to information, as opposed to what is presently a clear informational advantage to the PSC.

Moreover, the stated purpose for restriction of informal discovery has been realized, rendering disparate treatment unnecessary.  The PSC and the Trustee[5] have argued that the discovery stay and access limitations to the document repository were designed to foster cooperation and settlement.  In large part, those goals have been realized through the Trustee and Committee's announced settlement with NECC insiders and insurers (although settlement terms have yet to be formally presented and remain contingent on plan confirmation and third-party releases).  Also, despite negligible participation as a result of the PSC's lack of defendant

---

[5] *See, e.g., Chapter 11 Trustee's Opposition to Tennessee Clinic Defendants' Motion to Reconsider and Revise Specific Provision in MDL Order No. 6 to Allow All Parties Equal Access to the Documents Produced by NECC to the PSC and Response to Tennessee Clinic Defendants' Joinder in the Plaintiffs' Steering Committee's Motion to Partially Lift the Discovery Stay* ("Trustee Discovery Opposition") [Dkt. No. 1065].

collaboration and restricted information flow, the mediation program is underway and has been described as "productive."  Joint Status Report at ¶ 38.

The Trustee, Committee, and PSC have had nine months to operate under the current CMO.  It is time for revision by this Court after all parties—as required by Rule 16—have had an opportunity to consult and propose a fair and nondiscriminatory procedure.  Settlement and mediation goals have been (or are being) realized as much as possible in the wake of information restriction, and it is inconceivable that the Unaffiliated Defendants, including the Saint Thomas Entities and Ascension Parties, would be prohibited from accessing the NECC documents in perpetuity.  Therefore, as a result of the changed circumstances since the entry of the CMO, good cause exists to grant this Motion and allow all parties equal access to the document repository.

**B.   Making Vital NECC Documents Available to All Defendants Fosters Fairness and Efficiency.**

The substantive cases before this Court continue to progress while nearly all of the Unaffiliated Defendants are restricted from reviewing basic NECC documents that (a) have been provided to the PSC by the Trustee, a fiduciary to all NECC creditors; (b) are electronically stored and readily available to all parties; and (c) are vital to assessing exposure, if any, preparing a defense, and participating in future settlement negotiations.

First, fairness dictates that all parties have equal access to informally produced NECC documents.  The CMO's *limited* restriction for "informal discovery" from NECC is particularly troubling in this case because it is anything but limited.  NECC is a chapter 11 bankruptcy debtor, subject to and protected by the automatic bankruptcy stay.  11 U.S.C. § 362.  Without relief from the bankruptcy stay, formal discovery cannot commence.  The Trustee has repeatedly asserted that seeking relief from the stay at this stage of the proceedings and in light of the pending settlement would be time consuming, inefficient, and unnecessary.  *See, e.g.,*

*Memorandum of Law of Chapter 11 Trustee in Response to Plaintiffs' Steering Committee's Motion to Partially Lift Discovery Stay* at 2 [Dkt. No. 758] ("Generating litigation activity for formal discovery and for costly document processing and production before the settlement is completed, and the scope of the issues in dispute clarified or narrowed, is not cost-effective, and outright wasteful of the precious available resources [of the bankruptcy estate].").

The Trustee has repeatedly sought to conserve resources and settle as many issues as possible before formal discovery and expensive widespread litigation ensues. But at this point in these proceedings, the CMO's existing restriction of informal NECC document production flies in the face of this objective, results in unequal treatment of NECC creditors, and should be accordingly revised.

Second, the Saint Thomas Entities and Ascension Parties and similarly situated defendants are unable to prepare a defense or meaningfully participate in these proceedings without basic and equal discovery from NECC. Unquestionably, NECC, as the compounder and distributor of the tainted MPA, is the wrongdoer in these cases. Accordingly, the Saint Thomas Entities and Ascension Parties have, *inter alia*, important comparative fault, indemnity, and/or contribution rights against NECC.[6] Without basic discovery from NECC, the Saint Thomas Entities and Ascension Parties are generally unable to preserve and enforce those rights.

Similarly, without equal access to NECC documents, the Saint Thomas Entities and Ascension Parties face the likely prospect of trial by ambush. In light of the settlement between the PSC and NECC, the Unaffiliated Defendants are the only remaining parties with any incentive to prove a case against NECC and the Affiliated Defendants, which are at the core of

---

[6] The Saint Thomas Entities and Ascension Parties timely filed Proofs of Claim in the bankruptcy case. *See* Case No. 12-19882-HJB, Proof of Claim Nos. 2897, 2899, 2900, 2901, and 2902.

Plaintiffs' alleged injuries.  As these cases continue to progress and the PSC presses for depositions from key employees of the Unaffiliated Defendants, the PSC will assuredly attempt to use information gained from NECC against them.  Without revision of the CMO, the Saint Thomas Entities and Ascension Parties must defend with hands tied in contravention of the spirit and letter of the discovery rules.

Moreover, revising the CMO to allow the Saint Thomas Entities and Ascension Parties access to previously produced NECC documents provides these Defendants with a cost-effective opportunity to assess Plaintiffs' cases against them (*i.e.*, to catch up to the PSC's base of knowledge), estimate liability (if any), and make meaningful decisions regarding the ultimate resolution of these claims.

For these reasons, among others, fairness, equality, and the circumstances of these cases satisfy the good cause requirement for revising the CMO.

### C.   No Party Will be Prejudiced by Granting Access to the Document Repository.

Finally, and importantly, no party will be harmed by revising the CMO and allowing full transparency in regard to NECC's informal document production.  The Saint Thomas Entities and Ascension Parties are not seeking formal, costly discovery against NECC.[7]  They simply

---

[7] In the Trustee Discovery Opposition, the Trustee argues that permitting access to informally produced NECC documents is the "least efficient, least targeted and most expensive way to proceed with discovery." *Id*. at 4.  He states that, because of the proposed settlement with NECC insiders, "[p]arties would waste countless hours and funds reviewing documents that may be completely irrelevant to their cases . . . ," suggesting, instead, that the Defendants wait until the settlement is finalized in the Bankruptcy Case to meet and confer regarding the discovery process.  *Id*. at 4-5.  The Saint Thomas Entities and Ascension Parties disagree.  Defendants' review of documents already produced to Plaintiffs is completely free to the NECC bankruptcy estate and substantially less costly to the Defendants than acquiring the documents from the Trustee through formal discovery methods and after lifting the automatic bankruptcy stay. Moreover, withholding NECC produced documents until the settlement—now reached in principle—with insiders is finalized through the bankruptcy process ignores the fact that (a) the proposed settlement is contingent upon successfully prosecuting a Bankruptcy Rule 9019 motion

desire access to over 40,000 documents produced to only one side of the bar. Revising the CMO will not burden the bankruptcy estate to the detriment of personal injury plaintiffs, will not impact substantially completed settlement efforts with NECC insiders and insurers, and will not negatively impact pending mediations.[8]

## CONCLUSION AND PRAYER

Therefore, the Saint Thomas Entities and Ascension Parties respectfully request that the Court enter an order (1) revising the CMO (MDL Order No. 6), (2) permitting the Saint Thomas Entities and Ascension Parties equal access to the document repository and any other formal or informal discovery produced by the Trustee, and (3) granting such other and further relief to which the Saint Thomas Entities and Ascension Parties are entitled.

Dated: April 9, 2014

---

*and* confirming a chapter 11 plan, which the Trustee does not plan to file until the end of the year; and (b) these MDL proceedings will continue against the Unaffiliated Defendants irrespective of settlement with the Affiliated Defendants.

[8] To the extent confidential information is contained in the document repository, the Saint Thomas Entities and Ascension Parties and any other accessing party may be required to enter into a reasonable confidentiality agreement with the Trustee.

By its attorneys,


 */s/ Marcy Hogan Greer*
Sarah P. Kelly (BBO #664267)
skelly@nutter.com

NUTTER McCLENNEN & FISH LLP
Seaport West
155 Seaport Boulevard
Boston, Massachusetts  02210
(617) 439-2000
(617) 310-9000 (FAX)

Yvonne K. Puig*
Texas State Bar No. 16385400
yvonne.puig@nortonrosefulbright.com
Eric J. Hoffman*
Texas State Bar No. 24074427
eric.hoffman@nortonrosefulbright.com

FULBRIGHT & JAWORSKI LLP
98 San Jacinto Blvd., Suite 1100
Austin, Texas 78701
(512) 536-2450
(512) 536-4598 (FAX)

Marcy Hogan Greer*
Texas State Bar No. 08417650
mgreer@adjtlaw.com

ALEXANDER DUBOSE JEFFERSON &
    TOWNSEND LLP
515 Congress, Suite 2350
Austin, Texas  78701
(512) 482-9300
(512) 428-9303 (FAX)

*Appearing *Pro Hac Vice*

## CERTIFICATE OF SERVICE

This certifies that a true and accurate copy of the foregoing was served on all parties of record by virtue of the Court's electronic filing system this 9th day of April, 2014.

_/s/ Marcy Hogan Greer_
MARCY HOGAN GREER