# EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

*ELECTRONICALLY FILED*                    DOCKET NO. 1:14-cv-10434-RWZ

NORMA KING,

               *Plaintiff*

v.

NEW ENGLAND COMPOUNDING PHARMACY,
INC. A/K/A AND/OR D/B/A NEW ENGLAND
COMPOUNDING CENTER; AMERIDOSE, LLC;
ALAUNUS PHARMACEUTICAL, LLC;
HAHNEMANN UNIVERSITY HOSPITAL; TENET
HEALTHSYSTEM HAHNEMANN, LLC; AND PAIN
CARE PROFESSIONALS- PAIN CENTER AT
HAHNEMANN,

               *Defendants*

<u>DEFENDANTS TENET HEALTHSYSTEM HAHNEMANN, LLC, HAHNEMANN
UNIVERSITY HOSPITAL AND PAIN CARE PROFESSIONALS-PAIN CENTER AT
HAHNEMANN'S[1] OPPOSITION TO PLAINTIFF'S COUNSEL'S
MOTION TO WITHDRAW AS COUNSEL</u>

     Now come Defendants Tenet HealthSystem Hahnemann, LLC, Hahnemann University

Hospital and Pain Care Professionals-Pain Center at Hahnemann and hereby request that this

---

[1] Counsel for Tenet HealthSystem Hahnemann, LLC and Hahnemann University Hospital do not represent Pain
Care Professionals-Pain Center at Hahnemann in this action but have filed this Opposition on behalf of the three
Defendants named in the Opposition.

Honorable Court deny Plaintiff's counsel's Motion to Withdraw as Counsel and his request for a

90-day stay based upon the facts and law set forth below.


I.      FACTS AND PROCEDURAL HISTORY

Plaintiff's counsel filed the above action on January 15, 2014 in the Court of Common

Pleas of Philadelphia, Pennsylvania alleging that Defendants Tenet HealthSystem Hahnemann,

LLC and Hahnemann University Hospital (hereinafter, together, "Hahnemann") and Pain Care

Professionals-Pain Center at Hahnemann (hereinafter, "PCP") caused the Plaintiff to contract

meningitis via tainted steroid injections administered to her at Hahnemann and PCP. Plaintiff's

action was initially removed to the U.S. District Court for the Eastern District of Pennsylvania

and then transferred to the U.S. Judicial Panel on Multidistrict Litigation. Both Hahnemann and

PCP are located in Pennsylvania.

Plaintiff alleges that Hahnemann and PCP acquired the steroid injections administered to

her from Defendant New England Compounding Center (hereinafter, "NECC"); however,

Hahnemann and PCP neither purchased nor administered NECC steroids to the Plaintiff. See

Affidavit of Andrea Mokrzycki, ¶6, attached as Exhibit A; Declaration of Wes Prokop, M.D., ¶4,

attached as Exhibit B. On October 23, 2013, the Centers for Disease Control (hereinafter,

"CDC") published a list of healthcare facilities that purchased the tainted steroids from NECC

that are associated with the multistate outbreak of fungal meningitis and other infections. The

CDC's list does not identify Hahnemann or PCP as having purchased the steroids from NECC.

See Centers for Disease Control's Healthcare Facilities List, attached as Exhibit C. In fact, only

two Pennsylvania entities appear on the CDC's list of purchasers, neither of which are

Hahnemann or PCP. See Exhibit C. Accordingly, based upon the documentation provided to this Court, Hahnemann and PCP are not proper defendants in this case.

Plaintiff's counsel has determined that his action against the Defendants lacks viability under the law, and he seeks to withdraw as Plaintiff's counsel immediately and has requested a 90-day stay[2]. Plaintiff has not retained successor counsel.


II.   ARGUMENT

Plaintiff's counsel's Motion to Withdraw as Counsel and request for a 90-day stay must be denied because 1) allowing Plaintiff's counsel to withdraw and implementing a 90-day stay until successor counsel can be retained would prejudice the Defendants and unduly burden this Court, and 2) Plaintiff should not be required to proceed pro se.

A.   Allowing Plaintiff's Counsel's Motion will Prejudice the Defendants and Unduly Burden this Court.

Allowing Plaintiff's counsel's Motion to Withdraw as Counsel and implementing a 90-day stay will unfairly prejudice the Defendants and will unduly burden this Court. In determining whether to permit an attorney to withdraw representation, "a judge may consider the impact of a withdrawal on the timely and fair adjudication of the case and the reasonable expectation of the opposing party to have a case efficiently adjudicated". In re Kiley, 459 Mass. 645, 650 (2011)(internal citation omitted). "An attorney who agrees to represent a client in a court proceeding assumes a responsibility to the court as well as to the client." Miller v. Dunn & Phillips, P.C., 839 F. Supp. 2d 383, 387 (D. Mass. 2011)(internal citation omitted). "[O]nce an

---

[2] Plaintiff's counsel did not certify his Motion pursuant to Local Rule 7.1(A)(2).

attorney has noted his or her appearance in this court on behalf of a litigant, the court requires control over whether the litigant should continue to be represented by that attorney. Without such control, the court's ability to manage its calendar, and to administer justice, would unavoidably suffer." Id. at 387-388)(internal citation omitted). "[E]ven where good cause for withdrawal may exist, it is [in]cumbent on the court to assure that the prosecution of the lawsuit before it is not disrupted by the withdrawal of counsel." Id. at 388(internal citation omitted).

The Defendants' and the Court's interests would be ill served if counsel is permitted to withdraw and his request for a 90-day stay is granted. Granting a stay would result in delay and disruption in multidistrict litigation that involves hundreds of plaintiffs. Staying the Defendants' case while hundreds of others proceed with discovery and move toward resolving the many cases that are part of this multidistrict litigation would tie the hands of the Defendants who would be unable to defend the action brought against them. A stay would also drive up costs for the Defendants who would be unable to participate in discovery but would be required to attend monthly status conferences. The Defendants would be prejudiced by not being permitted to attend depositions that occurred during the stay, and reopening depositions that were taken during the stay would be costly both in time and expense and would result in duplicative discovery. Interest would continue to run during the stay, further prejudicing the Defendants.

Granting a stay in this action would also burden this Court because a stay would defeat the purpose of multidistrict litigation which is judicial economy and the desire for consistent rulings. A stay would result in the Defendants being placed on a discovery track different from the other litigants in the multidistrict litigation which could result in this Court hearing duplicative motions concerning similar issues that had been previously decided. If the Defendants were required to take duplicative depositions, this Court might need to make

additional rulings concerning those depositions.  Court personnel would be burdened with additional filings resulting from the stay.  Granting the stay would complicate the multidistrict litigation in that Defendant NECC's defense would be stayed for this case alone while it would continue to defend itself in the other cases in this multidistrict litigation in which it is named. Staying all of the cases involved in the multidistrict litigation until the Plaintiff finds successor counsel would burden the many plaintiffs and defendants who have nothing to do with the Plaintiff's action.  As a stay would waste judicial resources, unfairly burden the Defendants and undermine the objective of multidistrict litigation, Plaintiff counsel's Motion to Withdraw and request for a 90-day stay should be denied.

B.      Multidistrict Litigation is Too Complex to be Properly Tried by a Pro Se Plaintiff and the Massachusetts Rules of Professional Conduct Require Plaintiff's Counsel to Allow Plaintiff Time to Obtain Successor Counsel.

The Plaintiff should not be required to proceed pro se until she is able to retain successor counsel. The Plaintiff's case is one of hundreds consolidated in a multidistrict action involving sophisticated product liability claims.  Without counsel, the Plaintiff will be required to manage voluminous discovery and prepare for a lengthy, complex trial involving scientific matters and complicated expert testimony.  The Plaintiff does not have the requisite training to proceed pro se, and she, like any layperson, would have great difficulty prosecuting a case of this nature and scope.  Requiring the Plaintiff to proceed pro se would complicate and prolong both the litigation and administration of justice.

Further, Plaintiff's counsel should not be permitted to withdraw without taking steps to protect his client upon terminating his representation.  See Mass.R.Prof.C. 1.16(d).  Plaintiff's counsel must give reasonable notice to his client and allow his client time to retain successor

counsel. Id. As of the date of Plaintiff's counsel's Motion, Plaintiff had not retained successor

counsel. Permitting Plaintiff's counsel to withdraw without providing time for the Plaintiff to

obtain successor counsel would contravene the letter and spirit of the Massachusetts Rules of

Professional Conduct.


III.     CONCLUSION AND REQUEST FOR HEARING

Plaintiff's counsel's Motion to Withdraw and request for a 90-day stay should be denied

as granting his motion will unduly prejudice the Defendants, burden this Court and subvert the

goals and purpose of multidistrict litigation. The Defendants respectfully request that they be

permitted to proceed in the defense of their action without the imposition of a stay and that this

Court fashion a remedy that it deems just and appropriate. Tenet HealthSystem Hahnemann,

LLC, Hahnemann University Hospital and Pain Care Professionals-Pain Center at Hahnemann

also request that they be heard in oral arguments with regard to Plaintiff counsel's Motion.


/s/      Barbara Hayes Buell
BARBARA HAYES BUELL, ESQUIRE
BBO #063480
SMITH DUGGAN BUELL & RUFO LLP
Attorney for Defendants,
       *Tenet HealthSystem Hahnemann, LLC and*
       *Hahnemann University Hospital*
55 Old Bedford Road
Lincoln, Massachusetts 01773-1125
Telephone: 617-228-4460
Fax: 781-259-1112
Dated: April 4, 2014                 Barbara.Buell@SmithDuggan.com

6

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing Notice of Appearance was electronically filed with the Clerk of the United States District Court for the District of Massachusetts and a copy was electronically served by ECF to:

Kathleen Kirkpatrick, Esq.
The Tucker Law Group
One Penn Center, Suite 1700
1617 JFK Boulevard
Philadelphia, PA 19103
kkirkpatrick@tlgattorneys.com

Susan Marie Audey
Tucker Ellis LLP
950 Main Ave, Suite 1100
Cleveland, OH 44113-7213
Susan.audey@tuckerellis.com

/s/      Barbara Hayes Buell

Dated: April 4, 2014

OBERMAYER REBMANN MAXWELL & HIPPEL LLP
BY:     Ruth R. Wessel, Esquire
        Tara B. Dickerman, Esquire
Identification Nos. 31391/80217
1617 John F. Kennedy Boulevard, 19th Floor
Philadelphia, PA  19103-1895
(215) 665-3000

Attorneys for Defendant,
Tenet HealthSystem Hahnemann, LLC
d/b/a Hahnemann University Hospital

---

| | | |
|---|---|---|
| Norma King | : | PHILADELPHIA COUNTY COURT OF COMMON PLEAS |
| v. | : | |
| | : | JANUARY TERM, 2014 |
| New England Compounding Pharmacy, Inc., a/k/a and/or d/b/a New England Compounding Center, Ameridose, LLC, Alaunus Pharmaceutical, LLC, Hahnemann University Hospital, Tenet HealthSystem Hahnemann, LLC and Pain Care Professionals – Pain Center at Hahnemann | : | NO. 01468 |

## AFFIDAVIT OF ANDREA MOKRZYCKI

On behalf of defendant, Tenet HealthSystem Hahnemann, LLC d/b/a Hahnemann University Hospital, in the above captioned matter, I, Andrea Mokrzycki, do herby swear and affirm:

1.     I am currently the Director of Risk Management for Tenet HealthSystem Hahnemann, LLC d/b/a Hahnemann University Hospital.

2.     Tenet HealthSystem Hahnemann, LLC d/b/a Hahnemann University Hospital has no affiliation with Pain Care Professionals, LLC.

3.     Pain Care Professionals, LLC is a separate legal entity that simply leases space at the hospital one or two days a week.

4.     Pain Care Professionals, LLC was never authorized to use letterhead from Hahnemann University Hospital.

5.     Dr. Nasr, who authored the record in question, was not employed by Tenet HealthSystem Hahnemann, LLC and has his own insurance.

4805616

6.     Furthermore, I have confirmed that Hahnemann University Hospital never purchased any methylprednisolone injections from NECC.


These statements are true and correct to the best of my knowledge, information and belief and are said under perjury of law.


_____
Andrea Mokrzycki


Sworn to and subscribed before me this
_21_ day of _February_, 2014
_____
Notary Public

NOTARIAL SEAL
BARBARA MANNINO
Notary Public
PHILADELPHIA CITY, PHILADELPHIA CNTY
My Commission Expires Jul 25, 2015

4805616

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MASSACHUSETTS

NORMA KING

        v.

NEW ENGLAND COMPOUNDING
PHARMACY, INC. A/K/A AND/OR
D/B/A NEW ENGLAND COMPOUNDING
CENTER; AMERIDOSE, LLC' ALAUNUS
P H A R M A C E U T I C A L ,    L L C ;
HAHNEMANN UNIVERSITY HOSPITAL;
T E N E T   H E A L T H S Y S T E M
HAHNEMANN, LLC AND PAIN CARE
PROFESSIONALS - PAIN CENTER AT
HAHNEMANN

CIVIL ACTION

No. 13-MD-02419

## DECLARATION OF WES PROKOP, M.D.

Wes Prokop, M.D., deposes and says:

1.     I am the President of Pain Care Professionals Inc. (PCP). This affidavit is based on my personal knowledge as well as information obtained from company records kept in the ordinary course of business and publications from the federal Centers for Disease Control (CDC).

2.     Norma King was a patient seen in the office of PCP located at Hahnemann University Hospital on October 12, 2010. This was the only time she was seen as a patient of PCP. A true and correct copy of PCP's patient records on Ms. King is appended as Exhibit A.

3.     On that day Mrs. King received a lumbar epidural steroid injection. The steroid medication injected was Kenalog, which is a brand for Triamcinolone steroid medication manufactured by Bristol-Myers Squibb. The use of Kenalog is shown on the Patient Ledger which is the last page of Exhibit A.

4.     PCP has never bought or used any medication from New England Compounding Pharmacy, Inc. or its affiliates. Ms. King could not and did not receive steroid from New England Compounding Pharmacy, Inc. as a patient at PCP. PCP purchases and uses Kenalog steroid, as shown in purchasing records from our supplier, Henry Schein Co, for orders in July, August, September and October 2010, a true and correct copy of which are appended as Exhibit B.

5.     The steroids implicated in the 2012 outbreak involving New England Compounding Pharmacy, Inc. steroid did not involved Kenalog. *See* CDC Bulletin appended as Exhibit C. To the best of my knowledge, no Kenalog steroid from Bristol-Myers Squibb has ever been implicated in any outbreak of meningitis infection in 2010 or after.

6.     More than 100 other PCP patients also received Kenalog from the same Kenalog lot used in the PCP office. More than 90 percent of these patients returned to the office for follow-up visits. None of them reported any infection.

7.     PCP is privately owned, and not owned or affiliated with Hahnemann Hospital or Tenet Healthcare.  PCP's only business relationship with Hahnemann Hospital is leasing office space on the fourth floor of the hospital building.  PCP does not use any medical supplies from Hahnemann.  Rather, it buys its supplies from the Henry Schein Co., as shown in Exhibit B.

8.     It is alleged in her Complaint that Ms. King suffered from herpes encephalitis which could be caused by viral meningitis.  However, it is my understanding that it was a fungal meningitis that was implicated in all of the cases related to steroid from New England Compounding Pharmacy, Inc.  *See* Exhibit C.

9.     PCP is not on the list promulgated by the CDC of the medical centers implicated in injecting New England Compounding Pharmacy, Inc. steroid in the outbreak in 2012.  A true and correct copy of a bulletin from the CDC web site with that list is appended as Exhibit D.

10.    Ms. King was injected in October 2010, two years prior to the outbreak involving New England Compounding Pharmacy steroid, which started in the fall of 2012.  *See* Exhibits C and D.

11.    According to her Complaint, Ms. King was seen for the first time in an emergency room shortly after she developed symptoms on November 16, 2010.  This was 35 days after her injection at PCP on October 12, 2010.  It is my medical understanding that the incubation for viral meningitis is typically about one week.  *See also* New York Department of Health Bulletin, appended as Exhibit E.  Thus, the development of symptoms is inconsistent with the time of the injection.

12.    For all these reasons, it would appear medically impossible that Ms. King developed meningitis as the result of the steroid injection administered at PCP.

I declare pursuant to 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

WES PROKOP, M.D.

 Centers for Disease Control and Prevention
CDC 24/7: Saving Lives, Protecting People.™

# Multistate Outbreak of Fungal Meningitis and Other Infections –Healthcare Facilities

Although **further updates to the case counts are not anticipated at this time,** patients affected by tainted steroid injections from the New England Compounding Center continue to receive treatment for their infections and clinicians should continue to monitor patient recovery.

CDC will update the relevant clinical materials on this page if there is a significant development in clinical disease management.  All relevant materials for patients (/hai/outbreaks/patients/index.html) and clinicians (/hai/outbreaks/clinicians/index.html) concerning the multistate outbreak of fungal meningitis and other infections are located on this page.

## Map of Healthcare Facilities that Received Three Recalled Lots of Methlyprednisolone Acetate (MPA) from NECC associated with the Multistate Outbreak of Fungal Meningitis and other Infections

OCTOBER 23, 2013 FURTHER UPDATES TO THE CASE COUNTS ARE NOT ANTICIPATED AT THIS TIME.

See table (#facilities_table) for a complete list of health care facilities.



## Recalled Lots of MPA

Lot #05212012@68, BUD 11/17/2012
Lot #06292012@26, BUD 12/26/2012
Lot #08102012@51, BUD 2/6/2013

List of Healthcare Facilities that Received Lots of Methylprednisolone Acetate Recalled from
NECC associated with the Multistate Outbreak of Fungal Meningitis and other Infections

| Facility Name | Phone Number | City | State |
|---|---|---|---|
| **California** | | | |
| CYPRESS SURGERY CENTER | 559-740-4094 | VISALIA | CA |
| ENCINO OUTPATIENT SURGICENTER | 818-986-1037 | ENCINO | CA |
| UKIAH VALLEY MEDICAL CENTER | 707-463-7345 | UKIAH | CA |
| UNIVERSAL PAIN MANAGEMENT | 661-267-6876 x166 | PALMDALE | CA |
| **Connecticut** | | | |
| INTERVENTIONAL SPINE AND SPORTS MED | 203-598-7246 | MIDDLEBURY | CT |
| **Florida** | | | |
| FLORIDA PAIN CLINIC | 352-237-5906 | OCALA | FL |
| INTERVENTIONAL REHABILITATION CENTER | 850-484-8800 | PENSACOLA | FL |
| MARION PAIN MANAGEMENT CENTER | 352-622-1845 | OCALA | FL |
| NORTH COUNTY SURGICENTER | 561-626-6446 | PALM BEACH GARDENS | FL |
| ORLANDO CENTER FOR OUTPATIENT SURGERY | 407-426-8331 | ORLANDO | FL |
| PAIN CONSULTANTS OF WEST FLORIDA | 850-494-0000 | PENSACOLA | FL |
| SURGERY CENTER OF OCALA | 352-237-5906 | OCALA | FL |
| SURGICAL PARK CENTER | 305-271-9100 x226 | MIAMI | FL |
| **Georgia** | | | |
| FORSYTH STREET AMBULATORY SURGURY CENTER | 478-749-1610 | MACON | GA |
| **Idaho** | | | |
| PAIN SPECIALISTS OF IDAHO | 208-522-7246 | IDAHO FALLS | ID |
| WALTER KNOX MEMORIAL HOSPITAL | 208-365-3561 x3342 | EMMETT | ID |
| **Illinois** | | | |
| APAC CENTERS FOR PAIN MANAGEMENT | 708-483-7007 | WESTCHESTER | IL |
| APAC CENTERS FOR PAIN MANAGEMENT | 773-935-2760 | CHICAGO | IL |
| THOREK MEMORIAL HOSPITAL | 773-975-6734 | CHICAGO | IL |
| **Indiana** | | | |

| | | | |
|---|---|---|---|
| AMBULATORY CARE CENTER LLC | 812-475-1800 | EVANSVILLE | IN |
| FORT WAYNE PHYSICAL MEDICINE | 260-436-9337 | FORT WAYNE | IN |
| OSMC OUTPATIENT SURGERY CENTER | 574-266-4173 | ELKHART | IN |
| SOUTH BEND CLINIC | 574-237-9372 | SOUTH BEND | IN |
| UNION HOSPITAL | 812-238-4964 | TERRE HAUTE | IN |
| WELLSPRING | 812-376-0700 | COLUMBUS | IN |

## Maryland

| | | | |
|---|---|---|---|
| BALTIMORE PAIN MANAGEMENT | 410-682-5040 | BALTIMORE | MD |
| BERLIN INTERVENTIONAL PAIN MANAGEMENT | 410-641-3759 | BERLIN | MD |
| BOX HILL SURGERY CENTER | 410-877-8141 | ABINGDON | MD |
| GREENSPRING SURGERY CENTER | 410-653-0077 | BALTIMORE | MD |
| HARFORD COUNTY ASC, LLC | 410-538-7000 | EDGEWOOD | MD |
| PAIN MEDICINE SPECIALISTS | 410-825-6945 | TOWSON | MD |
| SURGCENTER OF BEL AIR | 410-638-5523 | BEL AIR | MD |

## Michigan

| | | | |
|---|---|---|---|
| MICHIGAN NEUROSURGICAL INSTITUTE | 810-606-7112 | GRAND BLANC | MI |
| MICHIGAN PAIN SPECIALISTS | 734-995-7246 | BRIGHTON | MI |
| NEUROMUSCULAR & REHABILITATION | 231-935-0860 | TRAVERSE CITY | MI |
| SOUTHEAST MICHIGAN SURGICAL HOSPITAL | 586-427-1000 | WARREN | MI |

## Minnesota

| | | | |
|---|---|---|---|
| MAPS-EDINA MEDICAL PAIN CLINIC | 763-537-6000 | MINNEAPOLIS | MN |
| MAPS-MEDICAL ADVANCED PAIN | 763-537-6000 | FRIDLEY | MN |
| MEDICAL ADVANCED PAIN SPECIALISTS | 763-537-6000 x238 | SHAKOPEE | MN |
| MEDICAL ADVANCED PAIN SPECIALISTS. | 763-537-6000 | MAPLE GROVE | MN |
| MINNESOTA SURGERY CENTER | 763-767-7139 | EDINA | MN |
| MINNESOTA SURGERY CENTER- | 763-537-6000 | MAPLE GROVE | MN |

## North Carolina

| | | | |
|---|---|---|---|
| HIGH POINT SURGERY | 336-878-6048 | HIGH POINT | NC |
| NORTH CAROLINA ORTHOPAEDIC CLINIC | 919-403-5148 | DURHAM | NC |
| SURGERY CENTER OF WILSON | 252-237-5649 | WILSON | NC |

## New Hampshire

| | | | |
|---|---|---|---|
| DR. O'CONNELL'S PAIN CARE CENTER | 603-335-5070 | MERRIMACK | NH |
| DR. O'CONNELL'S PAIN CARE CENTERS, INC | 603-692-3166 | SOMERSWORTH | NH |

## New Jersey

| | | | |
|---|---|---|---|
| CENTRAL JERSEY ORTHOPEDICS SPECIALISTS PC | 908-561-2122 | SOUTH PLAINFIELD | NJ |
| EDISON SURGICAL CENTER | 732-452-0123 | EDISON | NJ |
| IF PAIN ASSOCIATES / ISAIAH FLORENCE | 201-287-1100 | TEANECK | NJ |
| PREMIER ORTHOPEDICS SURG. ASSOC., LLC | 856-690-1500 | VINELAND | NJ |

| | | | |
|---|---|---|---|
| COMPREHENSIVE PAIN MANAGEMENT | 973-796-5216 | SPARTA | NJ |
| SOUTH JERSEY HEALTH CARE | 856-363-1558 | ELMER | NJ |
| SOUTH JERSEY HEALTHCARE | 856-641-7557 | VINELAND | NJ |

## Nevada **

| | | | |
|---|---|---|---|
| SAHARA SURGERY CENTER | 702-362-7874 | LAS VEGAS | NV |

## New York

| | | | |
|---|---|---|---|
| BUTANI, SUNIL H., PHYSICIAN PC | 516-747-5042 | MINEOLA | NY |
| OBOSA MEDICAL SERVICES | 914-530-2323 | MOUNT VERNON | NY |
| ROCHESTER BRAIN AND SPINE | 585-334-5560 | ROCHESTER | NY |

## Ohio

| | | | |
|---|---|---|---|
| BKC PAIN SPECIALISTS, LLC | 740-387-7246 | MARION | OH |
| CINCINNATI PAIN MANAGEMENT | 513-891-0022 | CINCINNATI | OH |
| MARION PAIN CLINIC | 740-375-0200 | MARION | OH |
| ORTHO-SPINE REHABILITATION CENTER, INC. | 614-793-8817 | DUBLIN | OH |

## Pennsylvania

| | | | |
|---|---|---|---|
| ALLEGHENY PAIN MANAGEMENT | 814-940-2000 | ALTOONA | PA |
| SOUTH HILLS PAIN & REHAB ASSOCIATES | 412-469-7722 | JEFFERSON HILLS | PA |

## Rhode Island

| | | | |
|---|---|---|---|
| NEW ENGLAND ANESTHESIOLOGY (NEA) | 401-490-7530 | WARWICK | RI |
| OCEAN STATE PAIN MANAGEMENT | 401-766-7700 | WOONSOCKET | RI |
| OCEAN STATE PAIN MANAGEMENT | 401-884-6070 | EAST GREENWICH | RI |

## South Carolina

| | | | |
|---|---|---|---|
| INTERVENE MD | 843-216-4844 | MOUNT PLEASANT | SC |

## Tennessee

| | | | |
|---|---|---|---|
| PCA PAIN CARE CENTER | 865-835-5196 | OAK RIDGE | TN |
| SPECIALTY SURGERY CENTER | 931-484-2500 x125 | CROSSVILLE | TN |
| ST. THOMAS OUTPATIENT NEUROSURGICAL | 615-341-3425 | NASHVILLE | TN |

## Texas

| | | | |
|---|---|---|---|
| DALLAS BACK PAIN MANAGEMENT | 214-445-5077 | DALLAS | TX |
| HARRIS METHODIST SOUTHLAKE CENTER | 817-748-8778 | SOUTHLAKE | TX |

## Virginia

| | | | |
|---|---|---|---|
| INSIGHT IMAGING-ROANOKE | 540-581-0882 | ROANOKE | VA |
| NEW RIVER VALLEY SURGERY CENTER | 540-639-5888 | CHRISTIANSBURG | VA |

## West Virginia

| | | | |
|---|---|---|---|
| PARS INTERVENTIONAL PAIN | 304-865-7277 | PARKERSBURG | WV |

** All vials of methylprednisolone acetate that were sent to Nevada were recalled prior to use.

Page last reviewed: October 23, 2013
Page last updated: October 23, 2013
Content source: Centers for Disease Control and Prevention

National Center for Emerging and Zoonotic Infectious Diseases (NCEZID)
Division of Healthcare Quality Promotion (DHQP)

Centers for Disease Control and Prevention  1600 Clifton Rd. Atlanta, GA 30333, USA
800-CDC-INFO (800-232-4636) TTY: (888) 232-6348 - Contact CDC-INFO

