UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEW ENGLAND COMPOUNDING ) <br> PHARMACY, INC. PRODUCTS LIABILITY ) <br> LITIGATION ) <br> ———————————————————————— ) <br> ) <br> THIS DOCUMENT RELATES TO: ) <br> ) <br> The cases listed in Exhibit A to the ) <br> Saint Thomas Entities' Global Motion ) <br> to Dismiss ) <br> ———————————————————————— ) | MDL No. 2419 <br> Dkt. No 1:13-md-2419 (RWZ) |

**SAINT THOMAS ENTITIES' REPLY IN FURTHER SUPPORT OF THEIR GLOBAL MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

**PRELIMINARY STATEMENT**

The Saint Thomas Entities[1] demonstrated in their Motion to Dismiss that the claims against them are vicarious—based on purported action by entirely separate defendants, the Tennessee Clinic Defendants.[2] Each theory requires allegations of an agency or misused corporate relationship between the Tennessee Clinic Defendants and the Saint Thomas Entities. Yet the Tennessee Plaintiffs' Complaints fail to allege facts to support the necessary nexus.

In their Opposition,[3] the Tennessee Plaintiffs go to great lengths to avoid alleging facts tying the Saint Thomas Entities to any purported wrongdoing because such facts do not exist. For example, they define "Tennessee Defendants" to include both the Saint Thomas Entities and the Tennessee Clinic Defendants.[4] In this purely circular fashion, the Tennessee Plaintiffs thus

---

[1] For consistency, the Saint Thomas Entities will continue to use the terms they defined in their *Saint Thomas Entities' Global Motion to Dismiss Under Federal Rule of Civil Procedure 12(B)(6)* (Docket #893); *Saint Thomas Entities' Memorandum in Support of Global Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)* (Docket #894) ("Memo") (together referred to as "Motion to Dismiss").

[2] Saint Thomas Outpatient Neurosurgical Center, LLC ("STOPNC"), Howell Allen Clinic, a Professional Corporation ("Howell Allen"), John W. Culclasure, M.D., and Debra V. Schamberg, R.N. Plaintiffs refer to "STOPNC" as the "St. Thomas Clinic."

[3] *The Plaintiffs' Steering Committee's Memorandum of Law in Opposition to the Saint Thomas Entities' Global Motion to Dismiss* (Docket #1042) ("Opposition").

[4] *See The Plaintiffs' Steering Committee's Memorandum of Law In Opposition to the Saint Thomas Entities' Global Motion To Dismiss* (Docket #1042) ("Opposition") at 1 n.2.

1

focus on their allegations against the Tennessee Clinic Defendants to argue their case against the Saint Thomas Entities. That is no response to a challenge to the lack of sufficient pleadings to support alter ego and agency.

The Court should not have to review the hundreds of complaints of the Tennessee Plaintiffs. The sum total of their allegations is contained in the Opposition, and these are simply insufficient as a matter of law to support the "extreme" remedy of piercing the corporate veil[5] or imposing agency liability. As demonstrated in the Motion to Dismiss, allegations of a common name, geographic proximity, overlap of directors, and the provision of some administrative services are entirely insufficient to demonstrate the complete dominance necessary to support an alter ego claim—much less do they evidence a misuse of the corporate form.[6] The suggestion that an advertisement on city buses and billboards evidences an alter ego relationship between the Saint Thomas Entities and STOPNC is specious. That advertisement relates to the member hospitals of Saint Thomas Health that were renamed in July 2013. Notably, the "One Healing Community" of "Saint Thomas Health" does ***not*** include STOPNC.[7] Under Tennessee law, the starting assumption "is a presumption that a corporation is a distinct legal entity, wholly separate and apart from its shareholders, officers, directors, or affiliated corporations."[8] Plaintiffs have not alleged facts—as opposed to conjecture and conclusory labels—to overcome this presumption and so cannot pierce the corporate veil.

Further, the Tennessee Plaintiffs have not pled facts to support an agency relationship between the individual actors and the Saint Thomas Entities. The references to the multiple roles of John W. Culclasure, M.D. ("Culclasure") and Debra V. Schamberg, R.N. ("Schamberg") with Howell Allen and STOPNC have absolutely no bearing on any potential vicarious liability of the

---

[5] *Pamperin, v. Streamline Mfg. Inc.*, 276 S.W.3d 428, 437, 438 (Tenn. Ct. App. 2008).

[6] Memo at 10-14.

[7] *See, e.g.*, http://www.saintthomashealth.com/media/article/175/saint-thomas-health-renames-member-hospitals (last visited May 6, 2014).

[8] *Edmunds v. Delta Partners, L.L.C.*, 403 S.W.2d 812, 828 (Tenn. Ct. App. 2012) (perm app. denied May 9, 2013).

Saint Thomas Entities; Plaintiffs do not and cannot allege that these individuals held any role or responsibility for the Saint Thomas Entities. In fact, their allegations that Dr. Culclasure and Nurse Schamberg were employees of Howell Allen and held positions with STOPNC reinforces their roles as agents of the Tennessee Clinic Defendants—not the Saint Thomas Entities. The claims against the Saint Thomas Entities should be dismissed.

## ARGUMENT AND AUTHORITIES

In remarkable contrast to the very specific allegations of wrongdoing against other defendants, the Tennessee Plaintiffs' pleadings allegations against the Saint Thomas Entities are almost entirely conclusions. *See Tex. Inns, Inc. v. Prime Hospitality Corp.*, 462 F.3d 666, 679 (6th Cir. 2006) (dismissing conclusory allegations of alter ego under Tennessee law). Their Opposition is more of same. In the interest of space, the Saint Thomas Entities will focus only on the specific factual allegations raised in the Opposition.

### A. There Is No Basis on Which to Pierce the Corporate Veil

First, ownership is entirely insufficient—especially when considering that Saint Thomas Network does not even have a majority ownership interest in STOPNC. *See* Memo at 13-14. Even if the Court credits the allegation that Saint Thomas Hospital's CEO sits on the Board of Governors of STOPNC and its Medical Director "regularly attended" STOPNC's Board meetings, Opposition at 3, those circumstances would not support piercing any veils. Even a few common directors or officers are not sufficient to show complete domination and control. *See, e.g.*, *United States v. Bestfoods*, 524 U.S. 51, 69 (1998) ("[I]t is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary" without incurring liability for the subsidiary.). These allegations do not support an inference of "complete dominion" by the Saint Thomas Entities such that STOPNC had "no separate mind, will or existence of its own." *Cont'l Bankers Life Ins. Co. of the South v. Bank of Alamo*, 578 S.W.2d 625, 632 (Tenn. 1979).

3

Even where a corporation was shown to have "no separate mind, will or existence" apart from its sole owner, the evidence was held to be insufficient to support an alter ego finding where there was no showing that the dominion and control was used to perpetuate a fraud or wrong. *Edmunds v. Delta Partners, L.L.C.*, 403 S.W.2d 812, 830-31, 834-35 (Tenn. Ct. App. 2012) (perm. app. denied May 9, 2013) (reversing trial court's finding of fact on alter ego for lack of sufficient evidence). Here, the Tennessee Plaintiffs have not alleged anything close to a nexus between any supposed misuse of the corporate form and the injuries they claim. *See Cont'l Bankers*, 578 S.W. at 631-32 (requiring **use of control to commit a fraud or wrong** and proximate cause of the injury or unjust loss to the plaintiff). As to other possible indicators of alter ego, there is absolutely nothing to suggest that STOPNC is undercapitalized, much less grossly undercapitalized. Further, the Saint Thomas Entities are going concerns with purposes far beyond Saint Thomas Network's partial ownership of STOPNC.[9] There is no evidence of diversion of STOPNC's corporate assets, use of STOPNC's corporate form "as a subterfuge in illegal actions" or other wrongdoing, or transfer of existing liabilities to STOPNC by any of the Saint Thomas Entities. *See Edmunds*, 403 S.W.3d at 833; *S.E.A., Inc. v. Southside Leasing Co.*, 2000 WL 1449852, at *8-9 (Tenn. Ct. App. Sept. 29, 2000). In short, this is not an alter ego case.

**B.     The Allegations of Agency Fail to State a Colorable Claim**

As to agency, the Tennessee Plaintiffs need to identify at a minimum the alleged actors who purportedly occasioned injury on them and allege a basis for authority to tie those actors to the Saint Thomas Entities, the vicarious defendants. And they must plead a basis for their conclusion that the Saint Thomas Entities actually exercised control over the supposed agents. *White v. Revco Disc. Drug Ctrs., Inc.*, 33 S.W.3d 713, 723 (Tenn. 2000). The only actors specifically identified in the Opposition (and the pleadings) are Dr. Culclasure and Nurse

---

[9] The Tennessee Plaintiffs do ***not*** assert that Howell Allen, the other owner of STOPNC, is an alter ego or otherwise intertwined with the Saint Thomas Entities. Yet Howell Allen is also alleged to be an alter ego of STOPNC— further evidence of the attenuation between STOPNC and the Saint Thomas Entities.

4

Schamberg. But the Tennessee Plaintiffs never allege any specific basis for assuming that the Saint Thomas Entities controlled the actions of these individuals, both of whom they specifically allege were acting *on behalf of Howell Allen and STOPNC* by virtue of their employment relationship and "Director" positions. These individuals held no such employee or executive status with *any* of the Saint Thomas Entities. The key is authority, and none is alleged in anything more than highly conclusory terms.

The Tennessee Plaintiffs never state any factual basis from which this Court or a fact-finder could conclude that Dr. Culclasure or Nurse Schamberg had any authority to act on behalf of the Saint Thomas Entities *in any respect*—much less do they allege facts that would support a finding that these individuals were acting on behalf of the Saint Thomas Entities in purchasing compounded steroids from NECC. Indeed, the allegations that Dr. Culclasure and Nurse Schamberg were acting on behalf of Howell Allen and/or STOPNC undermine, rather than support, their agency and alter ego conclusions with respect to the Saint Thomas Entities.

Plaintiffs' argument that *Boren ex rel. Boren v. Weeks*, 251 S.W.3d 426 (Tenn. 2008), is indistinguishable from these facts, *see* Opposition at 12-13, lacks any support. The *Boren* court did not have to limit its discussion to the facts presented because it is self-evident that individuals offering health care services in a hospital will be perceived as employees or agents *of that hospital*. But the Tennessee Plaintiffs do not allege as much. Instead, they claim that the geographic proximity between Saint Thomas West Hospital and STOPNC and the fact that they both include the venerable "Saint Thomas" in their names means that they must take affirmative steps to disavow any perceived relationship—despite their corporate and geographic separateness (STOPNC is in a different building with its own signage, staff, and operations) and lack of any shared employees or staff. They cite no authority for such an extraordinary proposition.[10]

---

[10] The Saint Thomas Entities have previously briefed the reasons why the Tennessee Plaintiffs' claims against STOPNC that form the basis for the vicarious liability claims against them are not actionable under Tennessee law. Memo at 16-17. In deference to the space constraints, the Saint Thomas Entities refer the Court to their prior

SAINT THOMAS WEST HOSPITAL,
FORMERLY KNOWN AS ST. THOMAS
HOSPITAL, SAINT THOMAS NETWORK,
AND SAINT THOMAS HEALTH

By its attorneys,
*/s/ Marcy Hogan Greer*
Sarah P. Kelly (BBO #664267)
skelly@nutter.com
NUTTER McCLENNEN & FISH LLP
Seaport West
155 Seaport Boulevard
Boston, Massachusetts 02210
(617) 439-2000
(617) 310-9461 (FAX)

Dated: May 7, 2014

OF COUNSEL:

Yvonne K. Puig*
Texas State Bar No. 16385400
yvonne.puig@nortonrosefulbright.com
Eric J. Hoffman*
Texas State Bar No. 24074427
eric.hoffman@nortonrosefulbright.com
FULBRIGHT & JAWORSKI L.L.P.
98 San Jacinto Blvd. Suite 1100
Austin, Texas 78701
(512) 536-2450
(512) 536-4598 (FAX)

Marcy Hogan Greer*
Texas Bar No. 08417650
mgreer@adjtlaw.com
ALEXANDER DUBOSE JEFFERSON
& TOWNSEND L.L.P.
515 Congress Ave., Suite 2350
Austin, Texas 78701
(512) 482-9300
(512) 482-9303 (FAX)

---

briefing and join the arguments of the Tennessee Clinic Defendants in their reply, filed contemporaneously, insofar as these arguments apply to the Saint Thomas Entities as vicarious defendants. The Tennessee Plaintiffs failed to respond to the argument that Tennessee's prohibition on the corporate practice of medicine precludes the Saint Thomas Entities from being vicariously liable for the actions of Dr. Culclasure—an independent basis for granting the Motion to Dismiss. *See* Memo at 17-18.

6

*Appearing *Pro Hac Vice*

**CERTIFICATE OF SERVICE**

      This certifies that a true and accurate copy of the foregoing was served on all parties of record by virtue of the Court's electronic filing system this 7th day of May, 2014.

                                            */s/ Marcy Hogan Greer*
                                            Marcy Hogan Greer