UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEW ENGLAND COMPOUNDING ) <br> PHARMACY, INC. PRODUCTS LIABILITY ) <br> LITIGATION ) <br> _____ ) <br> ) <br> THIS DOCUMENT RELATES TO: ) <br> ) <br>    The cases listed in Exhibit A to the ) <br>    Ascension Parties' Global Motion ) <br>    to Dismiss ) <br> _____ ) | MDL No. 2419 <br> Dkt. No 1:13-md-2419 (RWZ) |

**ASCENSION PARTIES' REPLY IN FURTHER SUPPORT OF THEIR GLOBAL MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

**PRELIMINARY STATEMENT**

The Ascension Parties[1] demonstrated in their Motion to Dismiss that the claims against them are vicarious—based on purported action by entirely separate defendants, the Tennessee Clinic Defendants.[2] Each theory requires allegations of an agency or misused corporate relationship between the Tennessee Clinic Defendants and the Ascension Parties. As the claimed link is purportedly through the Saint Thomas Entities, the Tennessee Plaintiffs must prove sufficient facts to pierce each of the corporate veils between the following: (i) STOPNC and Saint Thomas Network, (ii) Saint Thomas Network and Saint Thomas Health; (iii) Saint Thomas Health and Ascension Health. They must also allege facts to support disregarding the corporate forms of affiliates Saint Thomas West Hospital and Ascension Health Alliance. Yet the Tennessee Plaintiffs' Complaints fail to allege facts to support the necessary findings to do so.

---

[1] For consistency, the Ascension Parties will continue to use the terms they defined in their *Ascension Parties' Global Motion to Dismiss Under Federal Rule of Civil Procedure 12(B)(6)* (Docket #895), which adopted and incorporated by reference the *Saint Thomas Entities' Memorandum in Support of Global Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)* (Docket #894) ("Memo") (together referred to as "Motion to Dismiss").

[2] Saint Thomas Outpatient Neurosurgical Center, LLC ("STOPNC"), Howell Allen Clinic, a Professional Corporation ("Howell Allen"), John W. Culclasure, M.D., Debra V. Schamberg, R.N. Plaintiffs refer to "STOPNC" as the "St. Thomas Clinic."

1

z

In the *Saint Thomas Entities' Reply in Further Support of Their Global Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)* ("Saint Thomas Entities' Reply"), filed contemporaneously and incorporated by reference, the Saint Thomas Entities have demonstrated why the agency and alter ego claims against those parties are insufficient as a matter of law to withstand dismissal at this time.  The same holds at least as true for the Ascension Parties for whom the Tennessee Plaintiffs have alleged even more attenuation from the purported actors, who were employees and agents of the Tennessee Clinic Defendants.  The claims against all of these defendants should be dismissed at this time.

## ARGUMENT AND AUTHORITIES

In reviewing the sufficiency of the Tennessee Plaintiffs' Complaints, the Court need not credit mere conclusions, but should only consider the "well-pled facts."  *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951 (2009) (The court need not accept as true pleadings that are no more than legal conclusions or the "formulaic recitation of the elements" of a cause of action.).  In remarkable contrast to the very specific allegations of wrongdoing against other defendants, the Tennessee Plaintiffs' pleadings allegations against the Ascension Parties are almost entirely conclusions.  *See Tex. Inns, Inc. v. Prime Hospitality Corp.*, 462 F.3d 666, 679 (6th Cir. 2006) (dismissing conclusory allegations of alter ego under Tennessee law).  Their Opposition[3] is more of same.  Accordingly, and in the interest of space, the Ascension Parties will focus only on the specific factual allegations raised in the Opposition.

---

[3] *See The Plaintiffs' Steering Committee's Memorandum of Law In Opposition to the Ascension Parties' Global Motion To Dismiss* (Docket #1043) ("Opposition").

### A.     There Is No Basis on Which to Pierce the Corporate Veil

The sole specific allegations in the Opposition appear on page 5.  The Tennessee Plaintiffs can point only to entirely out-of-context statements contained in Ascension's Form 990 tax return.  All tax-exempt (charitable) organizations having 501(c) status, including Ascension, must file a special Form 990 return.  *See* Treas. Reg. § 1.6033-2(a).  If merely being listed as a "direct control[ed] entity" or "related company" on a Form 990 were sufficient to impose vicarious liability against the filing party, then it is indeed remarkable that neither the Tennessee Plaintiffs nor the undersigned could find a single reported decision in state or federal court that found such a representation even to be a factor in an alter ego analysis.

The U.S. Supreme Court has explained that "the Form 990 returns are merely information returns in furtherance of a congressional program to secure information useful in a determination whether legislation should be enacted to subject to taxation certain tax-exempt corporations competing with taxable corporations."  *Auto. Club of Mich. v. Commissioner*, 353 U.S. 180, 188 (1957).  There are special rules and regulations governing what information is reported and how.  Although the Tennessee Plaintiffs attempt to read great importance into the term "direct controlling entity" in terms of the relationship between Ascension Health and Saint Thomas Health, the governing regulations do not support it.  Rather, "control" for purposes of a Form 990 report is defined as one or more individuals or organizations owning 50% or more of the stock of the corporation.  26 U.S.C. § 512(b)(13)(D)(i)(I).  Considering that Saint Thomas Health is wholly owned by Ascension Health, it meets this definition.  The fact that Ascension Health reports STOPNC as a "related organization" is even more meaningless in the context of alter ego.  Notably, the Tennessee Plaintiffs cite only their own pleadings as authority.

It bears mention that the standard urged by the Tennessee Plaintiffs for piercing the corporate veil on page 6 of their Opposition significantly and impermissibly lessens their burden.

3

As previously briefed, there are three required elements for alter ego liability under Tennessee law:  (i) **complete domination** by the parent of the subsidiary/affiliate; (ii) **use of that control to commit a fraud or wrong**; and (iii) proximate cause of the injury or unjust loss to the plaintiff. *Cont'l Bankers Life Ins. Co. of the South v. Bank of Alamo*, 578 S.W.2d 625, 631-32 (Tenn. 1979).  The Tennessee Plaintiffs have failed to allege facts to support an inference of dominion by the Ascension Parties such that **both** the Saint Thomas Entities **and** STOPNC had "no separate mind, will or existence of [their] own."  *Id.* at 632.

Even where a corporation was shown to have "no separate mind, will or existence" apart from its sole owner, the evidence is insufficient to support an alter ego finding where there was no showing that the control was used to perpetuate a fraud or wrong.  *Edmunds v. Delta Partners, L.L.C.*, 403 S.W.2d 812, 830-31, 834-35 (Tenn. Ct. App. 2012) (perm. app. denied May 9, 2013) (reversing trial court's finding of fact on alter ego after bench trial for lack of sufficient evidence). The Tennessee Plaintiffs have not alleged anything close to a nexus between any supposed misuse of the corporate form and the injuries they claim.  Their assertion "that a wrong was committed proximately causing [their] injuries," Opposition at 6, is not the type of allegation that supports the "extreme" remedy of disregarding corporate separateness. The wrong has to be committed through misuse of the corporate form.

Further, as to other possible indicators of alter ego, there is absolutely nothing to suggest that STOPNC or the Saint Thomas Entities are undercapitalized, much less grossly undercapitalized.  STOPNC and each of the Saint Thomas Entities are going concerns with business purposes far beyond Saint Thomas Network's partial ownership of STOPNC.[4]  There is no evidence of diversion of STOPNC's corporate assets, use of STOPNC's corporate form "as a

---

[4] The Tennessee Plaintiffs do **not** assert that Howell Allen, the other owner of STOPNC, is an alter ego or otherwise intertwined with the Saint Thomas Entities.  Yet Howell Allen is also alleged to be an alter ego of STOPNC—further evidence of the attenuation between STOPNC and the Saint Thomas Entities.

4

subterfuge in illegal actions," or transfer of existing liabilities to STOPNC by any of the Saint Thomas Entities, much less by the Ascension Parties. *See Edmunds*, 403 S.W.3d at 833; *S.E.A., Inc. v. Southside Leasing Co.*, 2000 WL 1449852, at *8-9 (Tenn. Ct. App. Sept. 29, 2000). Nor is there any allegation in any of the Tennessee Plaintiffs' papers tending to show that any of these defendants has misused the corporate form of STOPNC to "commit fraud or wrong, to perpetuate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of third parties' rights." *Cont'l Bankers*, 578 S.W.2d at 632. Put simply, this is not an alter ego case.

### B. The Agency and Substantive Counts Fail to State a Colorable Claim

The Ascension Parties incorporate by reference part B of the Argument of the Saint Thomas Entities' Reply (including joinder in the arguments by the Tennessee Clinic Defendants' reply, filed contemporaneously, insofar as these arguments apply to the Ascension Parties as vicarious defendants). As to the agency allegations, here again, the Tennessee Plaintiffs allege this basis for vicarious liability in only conclusory terms, and their Opposition adds no specific discussion in this regard. Notably, the Tennessee Plaintiffs do not and cannot allege that they were misled into believing they were dealing with the Ascension Parties as to any of the events giving rise to their claims. The agency claims against the Ascension Parties have no factual grounding and should be dismissed at this time.

### CONCLUSION AND PRAYER

For these reasons and those set forth in their Motion to Dismiss, Ascension Health and Ascension Health Alliance respectfully request that the Court: (i) grant their Global Motion to Dismiss and dismiss all putative claims against the Ascension Parties by the Tennessee Plaintiffs; and (ii) grant such other and further relief to which the Ascension Parties are entitled.

ASCENSION HEALTH AND ASCENSION HEALTH ALLIANCE

By its attorneys,
*/s/ Marcy Hogan Greer*
Sarah P. Kelly (BBO #664267)
skelly@nutter.com
NUTTER McCLENNEN & FISH LLP
Seaport West
155 Seaport Boulevard
Boston, Massachusetts  02210
(617) 439-2000
(617) 310-9461 (FAX)

Dated:  May 7, 2014

OF COUNSEL:

Yvonne K. Puig*
Texas State Bar No. 16385400
yvonne.puig@nortonrosefulbright.com
Eric J. Hoffman*
Texas State Bar No. 24074427
eric.hoffman@nortonrosefulbright.com
FULBRIGHT & JAWORSKI L.L.P.
98 San Jacinto Blvd. Suite 1100
Austin, Texas 78701
(512) 536-2450
(512) 536-4598 (FAX)

Marcy Hogan Greer*
Texas Bar No. 08417650
mgreer@adjtlaw.com
ALEXANDER DUBOSE JEFFERSON
& TOWNSEND L.L.P.
515 Congress Ave., Suite 2350
Austin, Texas  78701
(512) 482-9300
(512) 482-9303 (FAX)


*Appearing *Pro Hac Vice*

## **CERTIFICATE OF SERVICE**

This certifies that a true and accurate copy of the foregoing was served on all parties of record by virtue of the Court's electronic filing system this 7th day of May, 2014.

                                                                */s/ Marcy Hogan Greer*
                                                                Marcy Hogan Greer