# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS
### (at Boston)

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>All Actions | Master File No. 1:13-md-2419-FDS<br><br>MDL Docket No. 2419 |

## AMERIDOSE LLC'S REPLY TO THE TENNESSEE CLINIC DEFENDANTS' JOINDER IN THE PSC'S MOTION TO PARTIALLY LIFT THE DISCOVERY STAY
### (Leave to File Granted on May 13, 2014 (Doc. 1121))

Defendant Ameridose LLC – through its counsel, with leave of court, and on behalf of the Affiliated Defendants[1] – files its opposition to the Tennessee Clinic Defendants' Joinder (Doc. 1041) in the Plaintiffs' Steering Committee's ("PSC") Motion to Partially Lift the Discovery Stay (Doc. 534) because (1) there is still no "good cause" to lift the discovery stay, (2) Ameridose and the pending settlement will be prejudiced if the stay is lifted, and (3) the MDL litigation can continue without discovery from Ameridose.[2]

## INTRODUCTION

The most recent and perhaps most significant event in the NECC MDL occurred last week: three settlement agreements were signed and filed on behalf of the Insiders (the four owners), GDC and its insurers, and NECC and its insurers. Regarding the discovery stay, back in October 2013, the PSC moved to partially lift the stay ordered in Case Management Order 6. *See*

---

[1] For purposes of this Reply Brief, Ameridose LLC and the Affiliated Defendants will be collectively referred to as "Ameridose," except where specifically noted.

[2] The Affiliated Defendants filed their Brief in Opposition to the Plaintiffs' Steering Committee's Motion to Partially Lift the Discovery Stay ("Brief in Opposition") on January 8, 2014. *See* Doc. 757.

Doc. 534.  Paragraph II.H. of CMO 6 requires "good cause" be shown before the discovery stay

against Ameridose can be lifted. *See* CMO 6, Doc. 209, at p. 8. Neither the PSC nor the

Tennessee Clinic Defendants can show "good cause" sufficient to lift the stay. Quite the

opposite, the facts actually support maintaining the stay:

- This is a limited asset case. Discovery cannot increase the asset pool, and the time to add new parties has long since expired so discovery will not identify any new deep pockets.

- The goal of a cost-effective settlement coordinated with the bankruptcy court has always been to extinguish NECC's and Ameridose's liability – for all time – as to any claimant. A settlement agreement on behalf of NECC and its insurers was filed last week. Once a final settlement with Ameridose is reached, there will be no reason to pursue discovery against Ameridose. Further, the Tennessee Clinic Defendants have no pending claims against Ameridose.

- A fishing expedition does not qualify as "good cause" to lift a purposeful discovery stay. The tort claims against the Tennessee Clinic Defendants involve what those clinics and their employees knew or should have known about MPA and/or the company that compounded it, NECC. No depositions, written discovery, or document productions have occurred in the Tennessee cases. Unless and until such discovery is substantially advanced, there is no "good cause" for discovery against Ameridose – a peripheral defendant that never compounded, sold, or distributed MPA.

- Discovery under the FRCP 26 standard, broad as it may be, is not inevitable in this case.

## LAW AND ARGUMENT

### I.   There Is Still No Good Cause To Lift the Discovery Stay.

The PSC's Motion – and any joinders in their Motion – should be denied because there is

still no "good cause" to lift the stay as to Ameridose. Contrary to the PSC's and Tennessee Clinic

Defendants' arguments, discovery against Ameridose is neither necessary nor helpful at this

stage of the litigation. Per CMO 6, this Court should consider five factors to determine whether

"good cause" exists to warrant lifting a discovery stay:

(1) the interests of the plaintiff in proceeding expeditiously with the litigation, including the avoidance of any prejudice to the plaintiff should a delay transpire; (2) the burden that any particular aspect of the proceedings may impose on the defendant; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of third parties; and (5) the public interest.

*Microfinancial, Inc. v. Premier Holidays Int., Inc.*, 385 F.3d 72, 77 (1st Cir. 2004); *see also* Affiliated Defendants' Brief in Opposition, Doc. 757, pp. 5-6. Balancing these factors is the hallmark of a "good cause" analysis, "with the basic goal being to avoid prejudice." *Volmar Distributors, Inc. v. New York Post Co., Inc.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993). Based on the above factors, it's clear that the stay should not be lifted: (i) if the stay is lifted, Ameridose will be burdened with significant discovery costs that may negatively impact settlement proceeds, while doing little to advance these cases; (ii) engaging Ameridose in discovery at this stage of the litigation is a waste of the parties' and the Court's resources; and (iii) there is no "good cause" to lift the stay because the parties can proceed without discovery from Ameridose.

## A. Lifting the Discovery Stay Will Prejudice Affiliated Defendants and May Negatively Impact Settlement Proceeds.

The PSC and Tennessee Clinic Defendants argue that discovery is essential to the process but fail to answer the question of who will pay for this discovery (i.e., lawyers, document vendors who would be involved in the massive document preparation projects), and what effect those payments would have on the limited pool of assets available for claimants. In fact, the burden and prejudice of lifting the stay would fall squarely on Ameridose and has the potential to negatively impact the amount available for an Ameridose settlement. For example, routine discovery tasks have been deferred as a result of the stay – specifically, the processing, organization, and review of electronic documents has been postponed. Deciding whether to lift the stay requires a cost-benefit analysis which, in this case, weighs heavily in favor of

maintaining the stay: lifting the stay and requiring Ameridose to proceed with these tasks will likely cost Ameridose, specifically for example, in excess of $500,000; it's unlikely that any discovery obtained from Ameridose will aid the PSC in the pursuit of their tort claims or the Tennessee defendants in defense of them. In fact, the PSC previously acknowledged that such routine discovery tasks would lead to "expending great sums of money," and it would be "hard to understand" why the parties would do that – especially when Ameridose did not compound, sell, or distribute the MPA at issue in this litigation. Affiliated Defendants' Brief in Opposition, Doc. 757, p. 8.

Proceeding now with discovery will require Ameridose to allocate resources to discovery which negates entirely the parties' overall goal of this discovery stay: to preserve financial resources for contribution to any potential settlement agreement. A finalized settlement agreement would likely dispose of the need for much, if not all, discovery from Ameridose as such an agreement would extinguish any current and future claims against Ameridose.

### B. Initiating Discovery During Settlement Negotiations is an Inefficient Use of Judicial Resources.

Proceeding with discovery at this time, or in the near future, has the potential to distract from the parties' efforts to achieve the common goal: settlement. Currently, there is no Master Complaint against Ameridose, and even the PSC agrees there may be no need for one if a settlement agreement with Ameridose can be reached.[3] Without knowing what the litigation will look like until a Master Complaint is filed, any discovery propounded on Ameridose will likely invoke a myriad of discovery disputes, wasting this Court's and the parties' time and resources.

---

[3] *See* Joint Emergency Motion of the Chapter 11 Trustee and PSC, Doc. 741, at ¶ 5 (stating that at the December 23, 2013 Status Conference, "[t]he PSC and Trustee believe that a postponement of the filing of a Master Complaint against the Affiliated Defendants is appropriate in order to provide the parties sufficient time to formalize and execute a full settlement agreement.").

And just as there may be no need for a Master Complaint if an Ameridose settlement agreement is finalized, there may be no need for discovery against Ameridose. At the very least, however, any necessary discovery may be very limited due to the fact that Ameridose did not compound, sell, or distribute MPA.

## C. **No Good Cause Exists to Lift the Discovery Stay Because the Litigation Can Continue Without Discovery from the Affiliated Defendants.**

Proceeding with discovery against non-mediating, non-affiliated defendants is part of the parties' coordinated MDL plan. As stated above, the PSC and the Tennessee Clinic Defendants have done nothing to advance the Tennessee tort cases. How do they know that discovery from Ameridose will be of any benefit at all? Ameridose should not be burdened with the costs of discovery, when neither the PSC nor the Tennessee Clinic Defendants have shown how such discovery would benefit their cases. Absent a showing that this discovery has advanced, no good cause exists to lift the discovery stay as to Ameridose because the litigation can successfully continue without any prejudice to the PSC or the Tennessee Clinic Defendants.

## **CONCLUSION**

For the foregoing reasons and those set forth in the Affiliated Defendants' Brief in Opposition, Ameridose LLC respectfully requests that this Court deny PSC's Motion to Partially Lift the Discovery Stay and the Tennessee Clinic Defendants' joinder in that Motion.

| | |
|---|---|
| */s/ Matthew P. Moriarty* | */s/ Robert H. Gaynor* |
| Richard A. Dean, Esq. | William J. Dailey, Jr., Esq. |
| Matthew P. Moriarty, Esq. | Robert H. Gaynor, Esq. |
| TUCKER ELLIS LLP | SLOANE & WALSH, LLP |
| 950 Main Avenue | Boston, MA 02108 |
| Suite 1100 | (617) 523-6010 |
| Cleveland, OH 44113 | wdaileyjr@sloanewalsh.com |
| matthew.moriarty@tuckerellis.com | rgaynor@sloanewalsh.com |
| | |
| *Counsel for Ameridose, LLC* | *Counsel for Individual Defendants Barry* |

*Cadden, Lisa Conigliaro-Cadden, Doug Conigliaro, Carla Conigliaro, Greg Conigliaro, and Glenn Chin*

**/s/ Joseph P. Thomas**
Joseph P. Thomas, Esq.
ULMER & BERNE, LLP
600 Vine Street, Suite 2800
Cincinnati, OH 45202
(513) 698-5000
jthomas@ulmer.com

*Counsel for GDC Properties Management, LLC*

**/s/ Dan Rabinovitz**
Dan Rabinovitz, Esq.
MICHAELS WARD & RABINOVITZ, LLP
One Beacon Street, 2nd Floor
Boston, MA 02108
(617) 350-4040
dmr@michaelsward.com

*Counsel for Medical Sales Management, Inc.*

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing has been filed with the Clerk of the Court on May 15, 2014 using the ECF system that sent notification of this filing to all ECF-registered counsel of record via e-mail generated by the Court's ECF system.

/s/ Matthew P. Moriarty
One of the Attorneys for Attorney for
Defendant Ameridose, LLC
