UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 13-02419-RWZ

IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC.,
PRODUCTS LIABILITY LITIGATION

MEMORANDUM OF DECISION

May 15, 2014

ZOBEL, D.J.

This matter is before the court on the Chapter 11 trustee's renewed and supplemental motion to transfer additional personal injury tort and wrongful death cases to this court pursuant to 28 U.S.C. §§ 1334 and 157(b)(5) (Docket # 732) and the Roanoke Gentry Locke Plaintiffs' renewed motion for mandatory or permissive abstention under 28 U.S.C. § 1334 (Docket # 763). For the reasons articulated below, the trustee's motion to transfer is ALLOWED and the Roanoke Gentry Locke Plaintiffs' motion for abstention is DENIED.

## I. Background

A detailed account of the background and circumstances of this case is set forth in the court's prior memorandum and order on the trustee's first transfer motion. See In re New Eng. Compounding Pharm., Inc. Prods. Liab. Litig., 496 B.R. 256, 260-63 (D. Mass. 2013). I presume familiarity with that opinion and summarize here only the background essential to the resolution of the pending motions.

### A. Case Overview

This litigation involves claims for wrongful death and personal injury arising out of

the administration of an injectable steroid, methylprednisolone acetate ("MPA"), manufactured by defendant New England Compounding Pharmacy, Inc. ("NECC"). The complaints allege that NECC produced contaminated MPA that led to serious fungal infections and, in some instances, death. Lawsuits alleging death or injury based on contaminated MPA were filed in multiple state and federal jurisdictions around the country beginning in November 2012. Most of these cases name NECC, and affiliated entities or individuals, as defendants. Some, however, name only the healthcare providers who actually distributed or administered the MPA.

In February 2013, the Judicial Panel on Multidistrict Litigation ("JPML") issued an order under 28 U.S.C. § 1407 transferring various federal court matters to this court for coordinated and consolidated pretrial proceedings; subsequent JPML orders also transferred other "tag-along" cases here. In the meantime, NECC filed for bankruptcy protection in December 2012, and a United States Trustee, Paul Moore, was appointed to administer the bankruptcy estate.

### B. The Court's First Transfer Order

The trustee moved to transfer all personal injury and wrongful death cases, wherever filed, to this court to facilitate centralized management of the litigation and claim process in order to create the largest possible pool of funds for victims and distribute those funds fairly, equitably, and with a minimum of expense and delay.[1] On

---

[1] A group of plaintiffs with cases pending in state court in Roanoke, Virginia (referred to as the "Roanoke Gentry Locke Plaintiffs" after the law firm representing them) filed a motion for mandatory abstention under 28 U.S.C. 1334(c)(2).

2

June 12, 2013, Judge F. Dennis Saylor, my predecessor in this case,[2] allowed the transfer motion as to:

> (1) any case pending in federal court against NECC or any affiliated entity or individual, (2) any such case that is in the process of removal to federal court, and (3) any case pending in any state court in which a party has made a claim against NECC or any affiliated entity or individual, including third-party claims for contribution or indemnity.

In re New Eng. Compounding Pharm., Inc., 496 B.R. at 264. As to a fourth category of cases, state court proceedings not naming NECC or any affiliated entity or individual, the motion was denied without prejudice to its renewal.

With regard to federal subject matter jurisdiction over the state court cases, particularly those with no claims against NECC or its affiliates, Judge Saylor turned to 28 U.S.C. § 1334, which confers on district courts "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." Given the lack of clarity and controlling authority on the subject, the court took a cautious approach. Judge Saylor concluded that related-to jurisdiction applied to any state court case in which any plaintiff had asserted a claim, or any defendant had asserted a claim for contribution or indemnity, against NECC or any affiliated entity or individual, since such claims would clearly have an effect on the bankruptcy estate. Judge Saylor also assumed, without deciding, that jurisdiction existed over state court cases in which a claim against NECC or its affiliates was *possible* but had not yet been asserted; however, he abstained from exercising such jurisdiction as a matter of discretion. In so doing, he noted:

---

[2] Judge Saylor recused himself on February 7, 2014, and the action was thereafter reassigned to me.

3

> The transfer of some, but not all, state-court cases might be something of a pointless exercise if the possibility remains that a state-court defendant could make a future claim in the bankruptcy case for contribution or indemnity, upsetting the effort to make an equitable distribution to the victims and other creditors. Indeed, that is the essential basis of the trustee's motion: that the Court *must* transfer *all* state-court cases to foreclose that very possibility.
>
> The Court is not convinced, at least at this stage, that such a step is necessary. Other possible courses of action might produce the desired consolidation and finality, without resolving difficult issues of jurisdiction and abstention and without intruding unnecessarily into the proceedings of state courts. For example, if the Bankruptcy Court were to set a relatively early bar date for the filing of claims against the estate, it would appear that any defendant in a state-court action would be effectively forced to decide whether it wanted to file a claim for contribution or indemnity against the estate. Such a claim, in turn, would probably permit the exercise of federal jurisdiction over the underlying matter. Any defendant who did not file a claim would be barred, and the state-court case could proceed to judgment without interference from the federal court. Either way, the desired goals would be achieved with a relatively minimal degree of risk or intrusion.
>
> In any event, the Court does not need to reach the issue at this juncture. If the balance of factors shifts over time, the Court can revisit the issue, and if necessary (and appropriate) can issue further orders concerning the exercise of related-to jurisdiction.

In re New Engl. Compounding Pharm., Inc., 496 B.R. at 269-70.

In a subsequent analysis of abstention questions, Judge Saylor held that mandatory abstention under 28 U.S.C. § 1334(c)(4) was not applicable to the state court cases at issue, thus denying the Roanoke Gentry Locke Plaintiffs' motion for mandatory abstention. Nevertheless, Judge Saylor elected to exercise discretionary abstention under § 1334(c)(1) as to those state court cases involving only state law claims against defendants other than NECC and its affiliates and where there was no third-party claim for contribution or indemnity. He observed, however, that the court "may, in the future, assert jurisdiction over any such case should the third-party defendant actually assert

4

such a claim." Id. at 274.

## C. Post-Order Developments

Among the state court cases exempted from the transfer order were twenty-two personal injury and wrongful death lawsuits pending in Virginia state court against various non-debtor defendants allegedly involved in the distribution and administration of contaminated MPA from NECC (the "Roanoke cases."). These matters – comprised of nineteen cases brought by the Roanoke Gentry Locke Plaintiffs and three cases represented by the Frith & Ellerman law firm ("Roanoke Frith & Ellerman Plantiffs") (collectively, "Roanoke Plaintiffs") – assert state law claims against two physicians, their professional corporation, and Insight Health Corp. ("Insight"), a company which operates a Virginia clinic that received and administered a number of tainted MPA injections. At the time of the court's transfer order, none of the parties in the Roanoke cases had asserted any claim against NECC or its affiliates.

Following the entry of the court's transfer order, the bankruptcy court entered an order fixing January 15, 2014, as the deadline for filing claims against the estate. In response, Insight filed a proof of claim on December 20, 2013, asserting claims against NECC for indemnity and contribution with respect to any liability incurred in the Roanoke cases.[3] See Docket # 733, Ex. 2. The trustee then filed a renewed and supplemental motion seeking transfer of the Roanoke cases to this court (Docket # 732). The Roanoke Gentry Locke Plaintiffs oppose the trustee's renewed motion and, in turn, have

---

[3] Due to the entry of an automatic stay in the bankruptcy court pursuant to 11 U.S.C. § 362, which prohibits the naming of NECC as a defendant in any civil action, the filing of a proof of claim became the only appropriate vehicle for asserting indemnity and contribution claims against NECC.

5

filed a renewed motion requesting that the court abstain (citing both mandatory and permissive grounds) from exercising jurisdiction (Docket # 763).[4] In early January, before the claims bar date, the Roanoke Plaintiffs filed their own proofs of claim in the NECC bankruptcy case. See Docket # 818, Ex. A. Several additional personal injury and wrongful cases have since been filed against Insight in Virginia state court. See Docket # 1119.[5] The trustee seeks the transfer of those cases in addition to the twenty-two previously identified.

## II. Discussion

28 U.S.C. § 157(b)(5) provides, in pertinent part, that:

> The district court shall order that personal injury tort and wrongful death claims shall be tried in the district in which the bankruptcy case is pending or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

Because the NECC bankruptcy case is pending in the District of Massachusetts, this court has the authority to determine the appropriate venue for such tort claims. In order to determine whether to transfer the Roanoke cases (and other state court cases like them) here, I must assess whether the court has subject matter jurisdiction and, if so, whether I should nonetheless abstain from asserting such jurisdiction under the mandatory abstention provisions of § 1334(c)(2) or the discretionary ones of §

---

[4] Other individuals and entities related to this litigation have responded with briefs in support of or in opposition to the trustee's renewed motion to transfer. The Official Committee of Unsecured Creditors supports the motion to transfer, as does the Plaintiffs' Steering Committee, albeit on slightly different legal grounds. Insight has also filed a memorandum in support of transfer. The Roanoke Frith & Ellerman Plaintiffs, as well as group of intervenors that expected to file similar state court actions against Insight in Virginia, oppose the motion to transfer and advocate for abstention. Image Guided Pain Management, one of Insight's co-defendants in the Roanoke cases, likewise opposes transfer.

[5] At least some of the plaintiffs in these new cases have filed proofs of claim in the bankruptcy court. See Docket # 818, Ex. A.

6

1334(c)(1). Judge Saylor's thoughtful and thorough prior order on transfer provides a helpful starting point for the analysis.

## A. Subject Matter Jurisdiction

The first transfer order was inconclusive as to whether the court had related-to jurisdiction over state court cases with possible, but unasserted, claims against NECC or its affiliates. Judge Saylor suggested, however, that should a party later assert a claim for contribution or indemnity against the bankruptcy estate, "such a claim, in turn, would probably permit the exercise of federal jurisdiction over the underlying matter." In re New Engl. Compounding Pharm., Inc., 496 B.R. at 270. Perhaps taking the hint, Insight did in fact file a proof of claim in the NECC bankruptcy case. As a result, the trustee argues, the connection to the bankruptcy necessary for related-to jurisdiction – previously missing in the Roanoke cases – has now been made. The Roanoke Plaintiffs contend that, even with the proof of claim, Insight's contingent contribution and indemnity claims against NECC are not sufficient to confer jurisdiction.

The scope of related-to jurisdiction under § 1334 is "quite broad." In re Boston Reg'l Med. Ctr., 410 F.3d 100, 105 (1st Cir. 2005). "[A] civil proceeding is related to bankruptcy [if] the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." In re G.S.F. Corp., 938 F.2d 1467, 1475 (1st Cir. 1991), overruled on other grounds by Connecticut Nat'l Bank v. Germain, 503 U.S. 249 (1992) (quoting Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984), overruled on other grounds by Things Remembered v. Petrarca, 516 U.S. 124 (1995)). Thus, courts may exercise related-to jurisdiction over a proceeding, even if not against the debtor or its property, "so long as the outcome of the litigation potentially could have

7

some effect on the bankruptcy estate, such as altering debtor's rights, liabilities, options, or freedom of action, or otherwise have an impact upon the handling and administration of the bankrupt estate." In re Boston Reg'l, 410 F.3d at 105 (internal citations and textual alterations omitted).

The limits of related-to jurisdiction are hotly debated in the present case. The Roanoke Plaintiffs and their supporters urge the court to follow the Third Circuit's lead in Pacor. There, the court held that related-to jurisdiction did not exist over a suit by an employee against an asbestos distributor, even though the employee's success in that suit would likely cause the distributor to seek indemnification from the debtor, an asbestos manufacturer. Pacor, 743 F.2d at 994-95. The Third Circuit found that the primary action between the employee and distributor "would have no effect on the [debtor's] bankruptcy estate" and was, at best, "a mere precursor to the potential third party claim for indemnification by [the distributor] against [the debtor]." Id. at 995. The court distinguished the circumstances in Pacor from those of another case, In re Brentano's, 27 B.R. 90 (Bankr. S.D.N.Y. 1983), where the debtor's landlord sued the guarantor of the debtor's lease. Since the debtor was contractually obligated to indemnify the guarantor for any liability or judgments due to the guarantee agreement, a judgment in favor of the landlord would automatically result in indemnification liability against the estate, thereby creating related-to jurisdiction. Pacor, 743 F.2d at 995. In contrast, in Pacor, "there would be no automatic creation of liability against [the debtor] on account of a judgment against [the distributor]," and "[a]ny judgment obtained would thus have no effect on the arrangement, standing, or priorities of [the debtor's] creditors." Id. In the wake of Pacor, some courts have held that related-to jurisdiction exists over a

8

case against a non-debtor, third-party defendant only where there is some existing contribution or indemnity obligation (e.g., a contractual duty to indemnify).

However, decisions in In re Dow Corning Corp., 86 F.3d 481 (6th Cir. 1996), and In re Twinlabs Personal Injury Cases, No. 03 Civ. 9169, 2004 WL 435083, *1 (S.D.N.Y. Mar. 8, 2004) present more expansive and pragmatic views of related-to jurisdiction.[6] The courts in Dow Corning and Twinlabs asserted jurisdiction over cases against third-party defendants with only contingent claims for contribution or indemnification against the debtor, chiefly because of the large potential impact of such liability on the bankruptcy estate. Judge Saylor, while ultimately not deciding jurisdiction, opined that the situation presented in this case implicates many of the same concerns that motivated the Sixth Circuit to assert jurisdiction over claims against non-debtor defendants in Dow Corning. See In re New Engl. Compounding Pharm., Inc., 496 B.R. at 269. I agree. Damages in the Roanoke cases alone will potentially total over $100 million, a sum which – if applied against the bankruptcy estate through Insight's indemnity and contribution claims – would greatly deplete the limited funds available for other claimants. The outcome of the state court cases, then, carries more than the potential of "some effect on the bankruptcy estate," In re Boston Reg'l, 410 F.3d at 105, but rather poses a significant threat to the estate and the claims of its creditors. And with the filing of Insight's proof of claim, that threat is not only possible, but clearly "conceivable."

---

[6] The First Circuit has yet to address the issue of whether related-to jurisdiction would exist over claims against non-debtors without contractual or "automatic" indemnity or contribution arrangements with the debtor.

9

The Roanoke Plaintiffs argue that the potential impact of their cases on the bankruptcy estate is illusory because Insight does not have valid claims for contribution or indemnity. Under Virginia law, active negligence or moral turpitude will disqualify a party from seeking contribution or indemnification. See VA. CODE § 8.01-34; Philip Morris, Inc. v. Emerson, 368 S.E.2d 268, 285 (Va. 1988). The Roanoke Plaintiffs also point out that to obtain contribution from a joint tortfeasor, a defendant has the burden of proving that the concurring negligence of the other party was the proximate cause of injury. See Carr v. Home Ins. Co., 463 S.E.2d 457, 458 (Va. 1995). These arguments presume too much, resting on assumptions that the Roanoke Plaintiffs will prevail on their allegations of active negligence and moral turpitude, or that Insight will be unable to show that the alleged injuries were caused by NECC. Moreover, the Roanoke Plaintiffs also seek recovery under a theory of negligence per se under Virginia Code §§ 8.01-221 and 54.1-3400 et seq., for which proof of actual negligence is unnecessary. Thus, it is entirely possible that Insight could be found liable in the Roanoke cases yet still be entitled to pursue contribution or indemnification from the estate.

The Roanoke Plaintiffs also contend that Insight's claims will be disallowed or subordinated under the bankruptcy code and therefore will have no effect on the estate. These conclusions, too, are premature. Although the trustee has identified ways in which Insight's claims may be subject to disallowance and subordination, such issues are by no means settled and will be addressed by the bankruptcy court in due course. It is not my role to speculate now on how the bankruptcy code might apply to these questions or how the bankruptcy court may ultimately rule. As it currently stands, Insight's proof of claim continues to pose a real threat to the assets and administration

of the estate.

The trustee asserts another basis for subject matter jurisdiction beyond Insight's proof of claim: the proofs of claim filed by the Roanoke Plaintiffs themselves. All the Roanoke Plaintiffs submitted proofs of claim against the bankruptcy estate for the same damages asserted in their state court actions. See Docket # 818, Ex. A. The trustee argues that these claims, each seeking millions of dollars, also confer related-to jurisdiction because the Roanoke Plaintiffs' success in their underlying lawsuits "could reduce or eliminate [their] existing claim in the bankruptcy case and thus increase the amount of money available to other creditors participating in the bankruptcy." TD Bank, N.A. v. Sewall, 419 B.R. 103, 104 (Bankr. D. Me. 2009). Judge Saylor, in his transfer order, similarly noted that courts have found related-to jurisdiction pursuant to Pacor "when recovery under an action by a creditor against a third party could reduce the amount that the creditor can claim from the estate directly." In re New Engl. Compounding Pharm., Inc., 496 B.R. at 267 n.7 (citing TD Bank, supra; In re Baptist Foundation of Arizona, No. CIV 00-557-PHX-ROS, 2000 WL 35575676, at *1 (D. Ariz. June 30, 2009); In re Curran, 157 B.R. 500 (Bankr. D. Mass. 1993)). If the Roanoke Plaintiffs recover all or part of their damages from Insight and other defendants, "their claims against the bankruptcy estate would be wholly or partially satisfied, thereby affecting their status in relation to other creditors." In re Baptist Foundation of Arizona, 2000 WL 35575676, at *3. Thus, the outcome of the Roanoke cases "could conceivably have an[] effect on the estate being administered in bankruptcy." Pacor, 743 F.2d at 994.

In light of the proofs of claim filed by Insight and the Roanoke Plaintiffs against

11

the bankruptcy estate, I conclude that related-to jurisdiction exists over the Roanoke cases under 29 U.S.C. § 1334.

## B. Mandatory Abstention

The Roanoke Gentry Locke Plaintiffs insist that, even if subject matter jurisdiction exists over the state court cases, the court must abstain from exercising it under 28 U.S.C. § 1334(c)(2):

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

The Roanoke Gentry Locke Plaintiffs assert that their cases meet all the elements needed to trigger mandatory abstention.

However, the court already considered and rejected this argument in its prior transfer order and related denial of the Roanoke Gentry Locke Plaintiffs' first mandatory abstention motion. Section 1334(c)(2) must be read in conjunction with 28 U.S.C. § 157(b)(4), which excepts "[n]on-core proceedings under section 157(b)(2)(B)" from the mandatory abstention provisions of § 1334(c)(2). Section 157(b)(2)(B), in turn, describes "the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11" as non-core. 18 U.S.C. § 157(b)(2)(B).

Judge Saylor determined that claims for indemnity or contribution arising from personal injury or wrongful death claims fall within the scope of § 157(b)(2)(B) and are not subject to mandatory abstention. While acknowledging that some courts have held

12

otherwise under a strict textual reading of the statutes, Judge Saylor found that in light of Congress's motivation for crafting the exception – that "the unpredictable and substantial verdicts that are often produced in personal injury tort and wrongful death claims could have potentially deleterious effects on a debtor's estate," Beck v. Victor Equipment Co., Inc., 277 B.R. 179, 180-81 (S.D.N.Y. 2002) – and the practical threat posed to the estate by contribution and indemnity claims in this case, the phrase "personal injury tort or wrongful death claims against the estate," as used in § 157(b)(2)(B), "can fairly be read to encompass not only personal injury and wrongful death claims, but also claims for contribution or indemnity that derive from personal injury or wrongful death claims." In re New Engl. Compounding Pharm., Inc., 496 B.R. at 272.[7]

I decline the invitation to revisit or disturb Judge Saylor's prior ruling with respect to mandatory abstention. The court has already decided the issue, and that decision stands as the law of the case. See Naser Jewelers, Inc. v. City of Concord, 538 F.3d 17, 20 (1st Cir. 2008) ("[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.") (quoting Arizona v. California, 460 U.S. 605, 618 (1983)). The Roanoke Gentry Locke Plaintiffs identify no new arguments or circumstances justifying reconsideration of this issue. Cf.

---

[7] Judge Saylor explained:

> Contribution or indemnity claims are simply procedural vehicles for asserting liability against the estate for some underlying harm. If the underlying harm giving rise to the estate's potential liability involves personal injury or wrongful death, the claim against a third-party concerning that harm is, in substance, a 'personal injury tort or wrongful death claim action against the estate' and therefore covered by the exception in s. 157(b)(2)(B). This reading is more congruent with Congress's motivation in crafting the exception to mandatory abstention. A narrower reading would create a potentially gaping loophole in the carefully crafted system for the orderly administration of bankruptcy estates."

In re New Engl. Compounding Pharm., Inc., 496 B.R. at 272.

13

Naser Jewelers, id. ("Narrow exceptions to the [law of the case] doctrine exist if the initial ruling was made on an inadequate record or was designed to be preliminary; if there has been a material change in controlling law; if there is newly discovered evidence bearing on the question; and if it is appropriate to avoid manifest injustice."). Mandatory abstention does not apply to the Roanoke cases.

### C. Permissive Abstention

Even where not required to abstain from exercising related-to jurisdiction by § 1334(c)(2), district courts have discretion to do so under §1334(c)(1) "in the interest of justice, or in the interest of comity with State courts or respect for State law." Relevant factors to consider include:

> (1) the effect of abstention on the efficient administration of the bankruptcy estate; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the basis of bankruptcy jurisdiction (if any) other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than the form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden of the bankruptcy court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to jury trial; (12) the presence in the proceeding of non-debtor parties.

In re Cox, 247 B.R. 556, 569-70 (Bankr. D. Mass. 2000) (citations omitted).

I agree with Judge Saylor that the balance of these factors generally weighs against permissive abstention in this matter. The consolidation and centralization of all related cases would facilitate the fair and efficient administration of the NECC

14

bankruptcy estate and protect the estate's limited funds from the significant burdens and consequences of piecemeal litigation. Although the Roanoke Plaintiffs are correct that their claims primarily involve issues of state law, the outcomes of those cases, as already discussed, are likely to have considerable impact on the bankruptcy proceedings and reorganization plan.

Judge Saylor's primary reason for abstaining from exercising jurisdiction over the Roanoke cases was uncertainty that such jurisdiction existed absent any claims against NECC, its affiliates, or the estate. See In re New Engl. Compounding Pharm., Inc., 496 B.R. at 274. However, with the parties' filing of proofs of claim in the bankruptcy case, that uncertainty has now been resolved. As such, and in light of the circumstances, I find permissive abstention to be inappropriate and refrain from applying it here.[8]

### III. Conclusion

The trustee's renewed motion to transfer (Docket # 732) is ALLOWED. The Roanoke Gentry Locke Plaintiffs' renewed motion for abstention (Docket # 763) is DENIED. Counsel shall inform the court regarding any steps necessary to effectuate the transfer of cases pursuant to this opinion.

May 15, 2014
DATE

RYA W. ZOBEL
UNITED STATES DISTRICT JUDGE

---

[8] The Roanoke Gentry Locke Plaintiffs warn that once the state court cases are transferred to this court, there is no procedural mechanism for sending them back to the federal district court in Virginia for trial, leaving the court and parties no alternative but to proceed with the cases in Boston. But as the trustee points out, 28 U.S.C. § 157(b)(5) not only authorizes this court to transfer the state court cases here, but to return them to Virginia for trial. See 28 U.S.C. § 157(b)(5) (providing that the district court can order that personal injury tort and wrongful death claims be tried "in district court in the district in which the claim arose").