# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 13-02419-RWZ

IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC.
PRODUCTS LIABILITY LITIGATION

## DECLARATION OF CHRISTOPHER E. TRIBLE

I, Christopher E. Trible, declare as follows:

1.   I am over the age of eighteen years and am competent to make this Declaration.

2.   I have personal knowledge of the facts set forth herein.

3.   I am counsel of record for Insight Health Corp. ("Insight"), a defendant in twenty (20) cases docketed in the Circuit Court of the City of Roanoke, Virginia.[1]

4.   Eighteen (18) of the twenty (20) cases docketed in the Circuit Court of the City of Roanoke were filed by the law firm of Gentry Locke Rakes & Moore LLP.

5.   The names of the eighteen (18) plaintiffs represented by the law firm of Gentry Locke Rakes & Moore LLP ("GLRM cases") and the case numbers assigned to their lawsuits filed in the Circuit Court of the City of Roanoke are listed below:

> Dana Marlene Bradley v. Insight Health Corp., et al. (CL12-2576)
> Trudy R. Epperly v. Insight Health Corp., et al. (CL12-2571)
> Barbara J. Filson v. Insight Health Corp., et al. (CL12-2575)
> Zachary Lucas Foutz v. Insight Health Corp., et al. (CL13-0009)
> Robert Earl Harris v. Insight Health Corp., et al. (CL13-55)
> Chester T. Kalinoski v. Insight Health Corp., et al. (CL12-2574)
> Pauline R. McFarlane v. Insight Health Corp., et al. (CL 12-2573)
> James Wirt Smith, Jr. v. Insight Health Corp., et al. (CL12-2572)
> Randolph E. Smith v. Insight Health Corp., et al. (CL13-57)
> Richard A. Whitlow v. Insight Health Corp., et al. (CL13-54)
> Ronald R. Courtney v. Insight Health Corp., et al. (CL13-417)
> Ronnie A. Brown v. Insight Health Corp., et al. (CL13-538)
> Sandra F. Artis v. Insight Health Corp., et al. (CL13-1105)

---

[1]      As Exhibit A to the Trustee's Proposed Supplemental Order (MDL Docket Number 1137) indicates, 30 cases had been filed against Insight in the Circuit Court for the City of Roanoke as of the time of this Court's May 15, 2014 decision. One, *Wingate*, has settled and been dismissed. Ameridose LLC, a third party defendant, removed nine (9) other cases to the United States District Court for the Western District of Virginia. Accordingly, the files of the twenty (20) other cases remain in the state court in Roanoke.

> Julian D. Holbrook v. Insight Health Corp., et al. (CL13-370)
> Estate of Ralph Irace v. Insight Health Corp., et al (CL13-577)
> Odessa M. Shuck v. Insight Health Corp., et al. (CL13-584)
> Estate of Louise Spicer v. Insight Health Corp., et al. (CL13-607)
> Rose M. White v. Insight Health Corp., et al. (CL13-606)

6. On Thursday, May 15, 2014, this Court issued a Memorandum of Decision ("Decision"), MDL Docket Number 1131, allowing the Chapter 11 Trustee's renewed and supplemental motion to transfer additional personal injury tort and wrongful death cases to MDL 2419. In the Decision, this Court exercised its related-to jurisdiction over the cases then pending in the Circuit Court for the City of Roanoke, Virginia, including the GLRM cases.

7. J. Scott Sexton, lead counsel for the plaintiffs in the GLRM cases, is listed as receiving Notifications of Electronic Filings of entries in MDL 2419.

8. On Friday, May 16, 2014, my colleague, Stephen D. Busch, received an email from Ms. Lauren W. Daly, a legal assistant employed by the law firm of Gentry Locke Rakes & Moore LLP, that was sent to Ms. Diana Osborne, who is employed as an administrative assistant to the Honorable Charles N. Dorsey, Judge of the Circuit Court of the City of Roanoke, who has been presiding over the GLRM cases identified above. Ms. Daly indicated that "we would like to request a hearing in front of Judge Dorsey to present orders in the following matters: [the GLRM cases]." *See* Email dated 5/16/14 from L. Daly to S. Busch, a true and accurate copy of which is attached hereto as Exhibit 1.

9. In response to this communication, Mr. Busch asked Ms. Daly via electronic mail to identify the proposed orders that her firm desires to present to Judge Dorsey on behalf of the plaintiffs in the GLRM cases. Ms. Daly responded that "We plan on presenting Orders on all of the Demurrers and Motions to Amend Request for Admission Responses in the remaining cases based on the Court's ruling in Wingate (per Scott Sexton)." *See* Exhibit 1.

10. The "ruling in Wingate" to which Ms. Daly apparently referred was a letter opinion dated October 31, 2013 issued in the *Wingate* case, and which was embodied in an order entered November 13, 2013 in the *Wingate* case only. *See* Exhibits 2 and 3, respectively. The *Wingate* case has settled and been dismissed with prejudice. While Insight has filed demurrers in the other GLRM cases, none of those demurrers have been noticed or argued.

11. Thus, any request to extend the *Wingate* ruling and order to eighteen other cases that were never noticed for hearing and not specifically mentioned in the letter opinion or order would be a substantive issue and not a "ministerial" or "housekeeping" matter.

12. On May 19, 2014, my colleague, Samuel T. Towell, emailed to Mr. Sexton Notices of Assertion of Bankruptcy Jurisdiction and Transfer to MDL 2419. A true and accurate copy of that email is attached hereto as Exhibit 4. Attached to that email were Notices

of Assertion of Bankruptcy Jurisdiction and Transfer to MDL 2419 for each of the GLRM cases, as well as a copy of the Decision.[2]  An exemplar, from the *Shuck* case, is attached hereto as Exhibit 5.  These Notices of Assertion of Bankruptcy Jurisdiction and Transfer to MDL 2419, along with a copy of the Decision, were filed by the Circuit Court for the City of Roanoke, Virginia, on May 20, 2014.

13. On May 21, 2014, my colleague James F. Neale received a copy of a filing made by Benjamin D. Byrd of the law firm of Gentry Locke Rakes & Moore LLP, dated May 19, 2014, presenting proposed orders for entry by the Circuit Court for the City of Roanoke, Virginia in the GLRM cases.  Mr. Byrd's cover letter and an exemplar proposed order from the *White* case are attached hereto as Exhibit 6.

14. On May 22, 2014, pursuant to the Decision requesting that counsel "inform the court regarding any steps necessary to effectuate the transfer" of the GLRM cases, the Chapter 11 Trustee filed a Proposed Supplemental Order Granting Chapter 11 Trustee's Motion to Transfer Personal Injury Tort and Wrongful Death Cases in this Court ("Proposed Order").  (MDL Docket Number 1137.)

15. On May 22, 2014, plaintiffs in the GLRM cases filed a Notice of Intent to Respond.  (MDL Docket Number 1140.)  In that Notice, they requested that this Court refrain from entering the Proposed Order "until they have had a chance to provide the *transfer information* as directed by" the Decision, as they "intend[ed] to provide the *requested information* to the Court." *Id.* (emphasis added).)

16. On May 22, 2014, plaintiffs in the GLRM cases filed a Motion and Memorandum in this Court (MDL Docket Numbers 1141 and 1142, respectively) addressing multiple issues.  In response to the Court's request for information regarding transfer, Plaintiffs reiterated their argument that transfer was inappropriate, and asked the Court to reconsider its position.  In the alternative, Plaintiffs requested a stay until the resolution of their appeal pending in the First Circuit.  They also objected to individual aspects of the Chapter 11 Trustee's Proposed Order.

17. As part of their Motion and Memorandum, plaintiffs in the GLRM cases seek an exception to the Proposed Order that would allow them to engage in "any pre-transfer ministerial acts."  The "ministerial acts" set forth include entry by the Circuit Court for the City of Roanoke, Virginia, of plaintiffs' proposed orders.

18. In none of the GLRM cases have Insight's demurrers (motions to dismiss) been noticed for a hearing, a requirement under Rule 4:15 of the Supreme Court of Virginia.  Nor have the demurrers been argued in any of the GLRM cases.

19. Judge Dorsey's opinion and order in the *Wingate* case (Exs. 2 and 3) do not purport to have any impact on the remaining eighteen (18) GLRM cases.

20. In their Memorandum in support of their Motion, plaintiffs in the GLRM cases state

---

[2]     In an effort to reduce the volume of the attachments, the Decision has been removed from the exhibits to this Declaration.

that "pre-trial proceedings were routinely heard together."  MDL Docket Number 1142, at 7.  Such consolidation of pretrial proceedings involving six or more plaintiffs, as these cases do, is permitted only through the Virginia Multiple Claimant Litigation Act, Va. Code § 8.01-267.1 *et seq.*  However, at no time have these cases been so consolidated.

21. Despite these substantive and procedural shortcomings, the plaintiffs in the GLRM cases seek entry of orders in state court that, if valid, would overrule, without hearing, Insight's legal defenses in all eighteen (18) cases.

22. On May 23, 2014, the GLRM plaintiffs noticed their hearings on the entry of their orders in state court.  *See* Plaintiffs' cover letter to Judge Dorsey enclosing exemplar cover letter for Notice of Presentment of Order and Status Report, attached hereto as Exhibit 7.

23. For each of the eighteen (18) cases, the plaintiffs in the GLRM cases sent for filing a Notice of Presentment of Order, setting the hearing date at June 27, 2014.  *See* Notice of Presentment of Order in the *Harris* case, provided as an exemplar, attached hereto as Exhibit 8.

24. Each of the plaintiffs in the GLRM cases also sent for filing a "Status Report."  *See* Plaintiff's Status Report in the *Harris* case, provided as an exemplar, attached hereto as Exhibit 9.  In this "Status Report," each plaintiff sets forth his argument supporting the entry of the proposed order without a notice of hearing or opinion by Judge Dorsey.  Further, each plaintiff characterizes this Court's Decision as an opinion indicating that this Court "would grant the Trustee's motion," rather than exercising jurisdiction over the GLRM cases. Ex. 9, at 2.  Each plaintiff also states that he or she "disagrees entirely with the activities and rulings that have occurred in Boston" relating to the GLRM cases.  *Id.* at 3.  Each plaintiff also states in his or her "Status Report" that he or she "believes that [the state] court still has jurisdiction." *Id.* at 4.

25. Insight will be harmed if it is forced to prosecute the same matter concurrently in different forums.

I declare under penalty of perjury under the laws of the Commonwealth of Virginia and the Commonwealth of Massachusetts that the foregoing is true and correct to the best of my knowledge, and that this declaration was executed in Richmond, Virginia on this 27th day of May, 2014.

_____
Christopher E. Trible

57359094_3

# EXHIBIT 1

**Towell, Samuel T.**

| | |
|---|---|
| **From:** | Daly, Lauren W. <Daly@gentrylocke.com> |
| **Sent:** | Friday, May 16, 2014 3:52 PM |
| **To:** | Busch, Stephen D. |
| **Cc:** | Sexton, Scott; Viar, Leslie A. |
| **Subject:** | RE: Scheduling Request |

We plan on presenting Orders on all of the Demurrers and Motions to Amend Request for Admission Responses in the remaining cases based on the Court's ruling in Wingate (per Scott Sexton).

Thanks,

Lauren



web  |  map

**Lauren W. Daly**

Legal Assistant

Direct Dial:  540.983.9394

This email may contain confidential or privileged information. If you are not the intended recipient, please advise by return email and delete immediately without reading/forwarding to others.

**From:** Busch, Stephen D. [mailto:sbusch@mcguirewoods.com]
**Sent:** Friday, May 16, 2014 3:49 PM
**To:** Daly, Lauren W.
**Cc:** Sexton, Scott; Viar, Leslie A.
**Subject:** RE: Scheduling Request

Lauren – what orders?  Thanks Steve Busch

**From:** Daly, Lauren W. [mailto:Daly@gentrylocke.com]
**Sent:** Friday, May 16, 2014 3:45 PM
**To:** dosborne@courts.state.va.us
**Cc:** Viar, Leslie A.; Sexton, Scott; john.jessee@leclairryan.com; nancy.reynolds@leclairryan.com; Busch, Stephen D.; Neale, James F.
**Subject:** Scheduling Request

Diane:

We would like to request a hearing in front of Judge Dorsey to present Orders in the following matters:

Dana Marlene Bradley v. Insight Health Corp., *et al.* (CL12-2576)
Trudy R. Epperly v. Insight Health Corp., *et al.* (CL12-2571)
Barbara J. Filson v. Insight Health Corp., *et al.* (CL12-2575)
Zachary Lucas Foutz v. Insight Health Corp., *et al.* (CL13-0009)
Robert Earl Harris v. Insight Health Corp., *et al.* (CL13-55)
Chester T. Kalinoski v. Insight Health Corp., *et al.* (CL12-2574)
Pauline R. McFarlane v. Insight Health Corp., *et al.* (CL 12-2573)
James Wirt Smith, Jr. v. Insight Health Corp., *et al.* (CL12-2572)

Randolph E. Smith v. Insight Health Corp., *et al.* (CL13-57)
Richard A. Whitlow v. Insight Health Corp., *et al.* (CL13-54)
Ronald R. Courtney v. Insight Health Corp., *et al.* (CL13-417)
Ronnie A. Brown v. Insight Health Corp., *et al.* (CL13-538)
Sandra F. Artis v. Insight Health Corp., *et al.* (CL13-1105)
Julian D. Holbrook v. Insight Health Corp., *et al.* (CL13-370)
Estate of Ralph Irace v. Insight Health Corp., *et al* (CL13-577)
Odessa M. Shuck v. Insight Health Corp., *et al.* (CL13-584)
Estate of Louise Spicer v. Insight Health Corp., *et al.* (CL13-607)
Rose M. White v. Insight Health Corp., *et al.*  (CL13-606)

Can you please provide us with the Court's available dates and times?  Thank you for your assistance.

Lauren



web  |  map

**Lauren W. Daly**

Legal Assistant

Direct Dial:  540.983.9394

This email may contain confidential or privileged information. If you are not the intended recipient, please advise by return email and delete immediately without reading/forwarding to others.

---

This email has been scanned for email related threats and delivered safely by Mimecast.
For more information please visit http://www.mimecast.com

---

This email has been scanned for email related threats and delivered safely by Mimecast.
For more information please visit http://www.mimecast.com

# EXHIBIT 2

# TWENTY-THIRD JUDICIAL CIRCUIT
## OF VIRGINIA

CHARLES N. DORSEY, JUDGE
SALEM CITY COURTHOUSE
2 EAST CALHOUN STREET
SALEM, VIRGINIA 24153
(540) 387-6218 or (540) 853-2437
FAX (540) 375-4036
E-MAIL: CDORSEY@COURTS.STATE.VA.US



COMMONWEALTH OF VIRGINIA

CIRCUIT COURT FOR THE COUNTY OF ROANOKE
CIRCUIT COURT FOR THE CITY OF ROANOKE
CIRCUIT COURT FOR THE CITY OF SALEM

October 31, 2013

J. Scott Sexton, Esquire
Gentry Locke Rakes & Moore, L.L.P.
P.O. Box 40013
Roanoke, VA 24022-0013

Christopher E. Hassell, Esquire
Bonner Kiernan Trebach & Crociata, L.L.P.
1233 20th Street, NW, 8th Floor
Washington, D.C. 20036

John T. Jessee, Esquire
LeClairRyan, P.C.
1800 Wells Fargo Tower, Drawer 1200
Roanoke, VA 24006

      Re:    Sharon G. Wingate
              v.
              Insight Health Corp., *et al.*
              In the Circuit Court for the City of Roanoke
              <u>Case Number:  CL12002547-00</u>

Dear Counsel:

      The parties are before the Court on the defendants' demurrers, motions, and pleas in bar, and on the plaintiff's motion for partial summary judgment.

      Defendant Insight Health Corp. ("IHC") has demurred to all of the plaintiff's claims. It also requests an extension of time to join or bring a third-party complaint against a nonparty. Defendants John M. Mathis, M.D.; Robert F. Obrien, M.D.; and Image Guided Pain Management, P.C. (collectively the "IGPM defendants") have demurred to Counts II, IV, and V, and to the claim for punitive damages. These defendants have also raised a plea in bar to each of the

1

plaintiff's claims. Finally, plaintiff argues that Va. Code § 8.01-581.15's damages cap does not apply to IHC, and she asks for partial summary judgment on this issue. IHC opposes her motion and requests leave to amend certain admissions.

Having considered the persuasive arguments made by each of you, the Court is prepared to rule. For the reasons that follow, the Court sustains the demurrers to the fraud claim, granting the plaintiff leave to amend her complaint accordingly. The Court denies the remaining demurrers, motions, and pleas in bar. Finally, the Court denies IHC's request to amend its admissions and grants the plaintiff's motion for partial summary judgment.

## FACTS

The plaintiff, Sharon G. Wingate, filed this wrongful-death action on December 27, 2012, alleging that her husband died of fungal meningitis caused by an epidural injection of a contaminated steroid. According to the complaint, New England Compounding Pharmacy, Inc. ("NECC"), a nonparty to this suit, produced the steroid.[1] The complaint describes the NECC-produced steroid as a "knock-off" version of Depo-Medrol, which is Pfizer's brand name of methylprednisolone acetate.[2] This lawsuit is one of several meningitis cases brought against the defendants in this Court alleging injuries caused by NECC-produced drugs.

According to the complaint, IHC procured and provided the contaminated steroid to Mr. Wingate.[3] Dr. O'Brien injected Mr. Wingate with the drug at a facility known as Insight Imaging-Roanoke.[4] According to the plaintiff, Dr. Mathis was the facility's medical director.[5] IHC owned, operated, and controlled the facility at all times and places pertinent to the action.[6]

The complaint alleges that Insight Imaging-Roanoke is Image Guided Pain Management, P.C. ("IGPM")'s registered trade name,[7] and that IHC also transacts business in Virginia as Insight Imaging-Roanoke.[8] The plaintiff asserts

---

[1] Compl. ¶ 1. Instead, the plaintiff separately filed suit against NECC in the United States District Court for the Western District of Virginia on November 20, 2012. NECC is currently in bankruptcy proceedings, and faces potential liability for many similar claims arising from its alleged production of contaminated steroids.

[2] Id. ¶ 71.

[3] Id. ¶ 25. IHC is a Delaware corporation with its principal place of business in California. Id. ¶¶ 13-14.

[4] Id. ¶ 41. The complaint states that references to "Insight Imaging-Roanoke" include both IHC and IGPM. Id. ¶ 11. Unfortunately, this shorthand can be confusing. In paragraph 41, for instance, by stating that the injection occurred "at" Insight Imaging-Roanoke, the plaintiff is clearly alleging *where* the injection took place, rather than which legal entity performed it. Drawing reasonable inferences in favor of the plaintiff, as it must for the purposes of these demurrers, the Court reads "Insight Imaging-Roanoke" to include both IHC and IGPM wherever possible. Where the complaint appears to refer to the location where the injection took place, the Court substitutes the word "facility."

[5] Id. ¶ 27.

[6] Id. ¶ 10.

[7] Id. ¶ 6. IGPM is a Virginia corporation with its principal place of business in Virginia. Id. ¶¶ 47-48.

[8] Id. ¶ 7.

that Dr. Mathis and Dr. O'Brien were employees and/or agents of both IHC and IGPM at all times and places pertinent to the action.[9]

The plaintiff alleges that Defendants IHC, IGPM, O'Brien, and Mathis knew or should have known that the epidural steroid injection was dangerous for several reasons. First, NECC was an unaccredited compounding pharmacy, and its drugs and production processes were unsanitary, unsterile, and lacked adequate quality-control measures.[10] In addition, the defendants purchased over 600 batches of methylprednisolone acetate from NECC in two months, even though bulk production of methylprednisolone acetate by compounding pharmacies is "very risky" and illegal.[11] Finally, the plaintiff alleges that the risk of contamination was even greater because NECC produced the drug without preservatives.[12]

Based on these allegations, the plaintiff asserts the following claims against all the defendants:

- "Count I – Negligence *Per Se*": the defendants breached duties they owed to Mr. Wingate by receiving, holding, offering for sale, and then delivering for pay an adulterated drug, all in violation of Virginia's Drug Control Act.[13]
- "Count II – Virginia Consumer Protection Act": the defendants violated Va. Code § 59.1-200 by failing to tell Mr. Wingate that he was being administered "a knock-off drug . . . from a compounding pharmacy" and by misrepresenting the tainted steroid as one produced by FDA-regulated manufacturers.[14]
- "Count III – Negligence": the defendants breached a duty to Mr. Wingate to exercise reasonable care to purchase drugs from companies that complied with Virginia's Drug Control Act and produced drugs under safe conditions. The plaintiff enumerates several additional duties that the defendants allegedly breached, including the duty to exercise reasonable care not to inject Mr. Wingate with adulterated drugs and the duty to obtain his informed consent by describing the risks of the procedure.[15]
- "Count IV – Gross Negligence": the defendants' acts and omissions, which proximately caused Mr. Wingate's death, were in utter disregard of his rights.[16]
- "Count V – Fraud": the defendants engaged in a "pattern of deception" by providing Mr. Wingate and other patients with documentation alternately misrepresenting the steroid as Pfizer's

---

[9]   *Id.* ¶¶ 37, 42.
[10]  *Id.* ¶ 119.
[11]  *Id.* ¶¶ 74, 86-87.
[12]  *Id.* ¶¶ 95-97.
[13]  *Id.* ¶¶ 181-94.
[14]  *Id.* ¶¶ 130-51, 195-202.
[15]  *Id.* ¶¶ 203-16.
[16]  *Id.* ¶¶ 217-22.

Depo-Medrol and a generic version produced by Teva, another FDA-regulated manufacturer. The defendants continued this pattern by deceiving Mr. Wingate's primary-care physician and insurer. What the defendants actually sold Mr. Wingate was a compounded steroid manufactured in unsafe, loosely regulated conditions. Mr. Wingate relied on the misrepresentation and died as a result.[17]

## PROCEDURAL HISTORY

The plaintiff filed this action in December 2012. The defendants responded on time, demurring and asserting various pleas in bar. IHC also moved for more time to join NECC as a codefendant, and IGPM, Dr. Mathis, and Dr. O'Brien (collectively "the IGPM defendants") cross-claimed IHC. On February 13, 2013, IHC moved for more time to assert a third-party claim against NECC.

After IHC responded to the plaintiff's requests for admissions, she moved for partial summary judgment against IHC.

The parties planned to argue the outstanding demurrers and motions in April 2013. The day before that hearing, however, IHC filed a notice of removal in the United States District Court for the Western District of Virginia. The parties still appeared before this Court as scheduled, but the Court stated that the removal deprived it of jurisdiction over the case. Nevertheless, the Court heard arguments in ten other meningitis cases that remained in this Court and raised similar legal issues. This Court's proceedings in this matter stopped while the federal court considered the plaintiff's motion to remand.

In May 2013, the federal court remanded this matter to this Court.[18] IHC then asked for leave to amend the admissions on which the plaintiff based her motion for partial summary judgment. The parties argued the plaintiff's summary-judgment motion in July 2013.

Therefore, the following items are pending before the Court:

- IHC's demurrers;
- IHC's motions for extensions of time to bring NECC into this case;
- The IGPM defendants' demurrers;
- The IGPM defendants' pleas in bar; and
- The plaintiff's motion for partial summary judgment.

---

[17]   *Id.* ¶¶ 223-52.

[18]   *Wingate v. Insight Health Corp.*, No. 7:13cv00142, 2013 U.S. Dist. LEXIS 67358 (W.D. Va. May 10, 2013) (remanding the case to this Court).

**ANALYSIS**

## I.   IHC's demurrers are denied in part and granted in part.

IHC demurs to each of the plaintiff's claims, asserting seven reasons why she is not entitled to relief. It argues that:

- (A) The action cannot proceed without joining NECC;
- (B) IHC cannot be found negligent *per se* because Virginia's Drug Control Act does not apply to IHC;
- (C) The Virginia Consumer Protection Act does not apply to the transaction at issue or to IHC;
- (D) IHC cannot be found negligent because the plaintiff does not allege that IHC owed a duty to Mr. Wingate;
- (E) IHC cannot be found grossly negligent because the plaintiff does not allege a duty owed by IHC, and because the plaintiff does not plead specific facts as to IHC;
- (F) The allegations do not support a claim for fraud; and
- (G) Punitive damages are not available because the plaintiff has not alleged that IHC acted with malice or in willful and wanton disregard of the rights of others.

A demurrer challenges the legal sufficiency of claims by asserting that a pleading does not state a cause of action or fails to state facts upon which relief can be granted.[19] "While a demurrer does not admit the correctness of the pleading's conclusions of law, it admits the truth of all material facts that are properly pleaded, facts which are impliedly alleged, and facts which may be fairly and justly inferred."[20]

Applying these principles, the Court sustains the demurrer to Count V (fraud) and overrules the remainder of IHC's demurrers.

## A. NECC is not an indispensable party.

First, IHC asserts that NECC is an indispensable party under Supreme Court of Virginia Rule 3:12(a) & (c).[21] Accordingly, IHC asserts that the Court must dismiss the complaint.[22]

Initially, a demurrer cannot remedy the nonjoinder of a necessary party. Whether a party is absent has no bearing on whether a plaintiff can state a claim against the named defendants. IHC seems to recognize this, asking to join its codefendants' plea in bar for nonjoinder if its demurrer is unsuccessful.[23] Neither

---

[19]   Va. Code § 8.01-273(A).
[20]   *Thompson v. Skate Am., Inc.*, 261 Va. 121, 127, 540 S.E.2d 123, 126 (2001).
[21]   IHC Reply Br. at 6 (citing Va. Sup. Ct. R. 3:12(a) & (c)).
[22]   Va. Sup. Ct. R. 3:12(c) (allowing dismissal if a party is indispensable).
[23]   IHC Reply. Br. at 3 n.1.

a demurrer, nor a plea in bar, however, may be used to remedy the nonjoinder of indispensable parties.[24] When a plaintiff does not join a necessary party, the remedy under Rule 3:12 is a motion to join that party made within 21 days after service of the complaint.[25]

Notwithstanding these procedural defects, IHC's argument fails because NECC is not a necessary and indispensable party. A joint tortfeasor is not always a necessary party. Virginia Code § 8.01-443 provides that "[a] judgment against one of several joint wrongdoers shall not bar the prosecution of an action against any or all the others, but the injured party may bring separate actions against the wrongdoers and proceed to judgment in each." Citing this provision, *Hogan v. Miller* allowed a passenger injured in a traffic accident to sue her driver without joining the driver who had caused the accident as a codefendant.[26] Notably, the Supreme Court allowed the plaintiff to choose her defendant even though that defendant could not assert a third-party claim against joint tortfeasors under the rules of civil procedure then in effect.[27]

Today, of course, the Rules allow a defendant to assert third-party claims against joint tortfeasors.[28] A joint tortfeasor may also seek contribution from other joint tortfeasors in a separate action.[29] These mechanisms allow defendants to distribute the burden of liability among joint tortfeasors.

IHC asserts that being required to file a third-party action or seek contribution "is not fair or just."[30] Nevertheless, those are the options available to IHC under the Rules. IHC's demurrer is denied.

## B. IHC is not exempted from Virginia's Drug Control Act.

Next, IHC demurs to the negligence-*per-se* claim, asserting that "the sections of the [Virginia Drug Control Act[31]] relied upon by Plaintiff do not apply to IHC" because Va. Code § 54.1-3410.2 places the burden on pharmacists to ensure the safety of compounded drugs.[32] Because it is not a pharmacist, IHC argues, it could not have violated any duty imposed by that statute and cannot be found negligent *per se*.[33] The Court disagrees.

---

[24] Va. Code § 8.01-276.
[25] *Id.*; Va. Sup. Ct. R. 3:12(b).
[26] *Hogan v. Miller*, 156 Va. 166, 157 S.E. 540 (1931).
[27] *Id.* at 172-73, 157 S.E. at 542.
[28] Va. Sup. Ct. R. 3:13.
[29] Va. Code § 8.01-34.
[30] IHC Reply Br. at 10.
[31] Va. Code § 54.1-3400 et seq.
[32] IHC Dem. at 2. Va. Code § 54.1-3410.2(D) requires pharmacists to "perform or personally supervise the compounding process, which shall include a final check for accuracy and conformity to the formula of the product being prepared, correct ingredients and calculations, accurate and precise measurements, appropriate conditions and procedures, and appearance of the final product." Va. Code § 54.13410.2(E) requires pharmacists to "ensure compliance with USP-NF standard for both sterile and non-sterile compounds."
[33] *Id.*

6

IHC's argument presents a question of statutory interpretation that the Court decides based on well-settled principles of review. "The primary objective of statutory construction is to ascertain and give effect to legislative intent. The plain, obvious, and rational meaning of a statute is to be preferred over any curious, narrow, or strained construction."[34]

Here, the plaintiff alleges violations of Va. Code § 54.1-3457(1) and (3), which prohibit—among other things—the sale and receipt of misbranded and adulterated drugs.[35] Both subsections are found in Va. Code § 54.1-3457, titled "Prohibited acts." These subsections' plain language broadly bans the manufacture and distribution of adulterated drugs. Nothing in Va. Code § 54.1-3457 restricts its application to a particular group or class.  Indeed, Va. Code § 54.1-3458 states that "[a]ny person" who commits a prohibited act is guilty of a misdemeanor. "Person" is a defined term under the Act, and it includes—without restriction—"an individual, partnership, corporation, association, governmental agency, trust, or other institution or entity."[36]

To find that this statute holds only pharmacists liable would be an unreasonably restrictive interpretation that contradicts the plain, obvious, and rational meaning of the statute. The fact that pharmacists must perform a "final check" on the drugs they compound under Va. Code § 54.1-3410.2 does not relieve IHC or any other party of the responsibility to refrain from engaging in the acts prohibited by Va. Code § 54.1-3457.

The Court also rejects IHC's argument that the negligence-*per-se* claim must be dismissed because "there is no stand-alone or separate cause of action for negligence *per se* under Virginia law."[37] This argument elevates form over substance, and is not a valid basis on which to sustain a demurrer. A negligence *per se* cause of action

> requires a showing that the tortfeasor had a duty of care to the plaintiff, the standard of care for that duty was set by statute, the tortfeasor engaged in acts that violated the standard of care set out in the statute, the statute was enacted for public health and safety reasons, the plaintiff was a member of the class protected by the statute, the injury was of the sort intended to be covered by the statute, and the

---

[34]    *Commonwealth v. Zamani*, 256 Va. 391, 395, 507 S.E.2d 608, 609 (1998) (citing *Turner v. Commonwealth*, 226 Va. 456, 459, 309 S.E.2d 337, 338 (1983)).

[35]    Virginia Code § 54.1-3457(1) prohibits "the manufacture, sale, delivery, holding, or offering for sale of any drug, device, or cosmetic that is adulterated or misbranded." Virginia Code § 54.1-3457(3) prohibits "the receipt in commerce of any drug, device, or cosmetic that is adulterated or misbranded, and the delivery or proffered delivery thereof for pay or otherwise."

[36]    Va. Code § 54.1-3401.

[37]    IHC Reply Br. at 12.

violation of the statute was a proximate cause of the injury.[38]

The plaintiff's complaint makes out a prima facie negligence-*per-se* claim based on alleged violations of Virginia's Drug Control Act. IHC's demurrer to the claim for negligence *per se* is accordingly overruled.

## C. The defendants' demurrers to the plaintiff's Virginia Consumer Protection Act claim are denied.

Both IHC and the IGPM defendants demurrer to the plaintiff's Virginia Consumer Protection Act ("VCPA")[39] claim,[40] and the Court addresses both demurrers here.

### IHC is a statutory supplier.

IHC initially argues that it is not subject to the Act because it is not a "supplier," and its sale of steroids to Mr. Wingate is not a "consumer transaction," as those terms are defined in Code § 59.1-198.[41]

This argument fails. The plaintiff alleges that IHC sold the compounded steroid to Mr. Wingate.[42] This sale is a "sale . . . of goods" constituting a "consumer transaction" within the meaning of the Act.[43] Likewise, as alleged in the complaint, IHC is a seller who engages in consumer transactions and is therefore a "supplier" under the statute.[44]

### (1) The VCPA applies to the aspect of the transaction at issue.

All the defendants assert that "the manufacture and sale of compounded drugs are authorized and/or sanctioned by both federal and state statutes."[45] Under Va. Code § 59.1-199, aspects of consumer transactions authorized by federal and state law are exempt from the Act.[46] The defendants insist that the transaction in this case is excluded from the Act because the compounding and sale of prescription drugs is "authorized" by the Federal Food, Drug, and Cosmetic Act[47] and by Virginia's Drug Control Act.[48]

---

[38]   *Steward v. Holland Family Props., LLC,* 284 Va. 282, 287, 726 S.E.2d 251, 254 (2012).
[39]   Va. Code § 59.1-196 et seq.
[40]   IHC Dem. at 3; IGPM Mem. Supp. Dem. at 4.
[41]   IHC Dem. at 3.
[42]   Compl. ¶¶ 188-89, 196.
[43]   Va. Code § 59.1-198.
[44]   *Id.*
[45]   IHC Reply Br. at 13 (citing *Manassas Auto Cars Inc. v. Couch,* 274 Va. 82, 90 (2007); *Deane v. Novacare Orthotics & Prosthetics East, Inc.,* 50 Va. Cir. 418, 420 (1988)); IGPM Mem. Supp. Dem. at 4.
[46]   Va. Code § 59.1-199(A).
[47]   21 U.S.C. § 301 et seq.
[48]   Va. Code § 54.1-3400 et seq.

*Manassas Autocars, Inc. v. Couch* guides the Court's analysis of this issue.[49] *Couch* held that the Act is not displaced when an aspect of a consumer transaction is merely regulated, rather than authorized, by state or federal law.[50] In *Couch*, two car buyers claimed that a dealer violated the Act by failing to advertise the limited availability of a particular vehicle model, causing the buyers to purchase a lower-quality vehicle.[51] The defendant countered that dealer advertising was regulated and therefore "authorized" under Virginia law. Thus, the dealer asserted that Va. Code § 59.1-199 excluded the advertisement from the Act.[52] The Court disagreed, finding that the dealer improperly equated the words "authorized" and "regulated."[53] "Authorized actions are those sanctioned by statute or regulation. [The dealer] was not entitled to exemption from a VCPA claim on the sole ground that motor vehicle dealer advertising is regulated by other statutory provisions and regulations."[54]

In this case, therefore, the Court must determine whether state or federal laws genuinely *authorized* any aspect of the transaction at issue. The parties disagree about which aspects of the transaction, if any, are authorized by law.

The plaintiff argues that the relevant aspect is the alleged "misrepresent[ation of] a cheap compounded drug as a more expensive and FDA-approved one."[55] Because no law authorizes this misrepresentation, the plaintiff argues, the alleged misrepresentation is not excluded from the Act pursuant to Code § 59.1-199.[56] The IGPM defendants argue that this interpretation of the statute would eliminate the exclusion.[57] According to the IGPM defendants, "no Virginia or federal law 'authorizes' or 'sanctions' wrongful acts. Because plaintiffs will always plead that defendants committed wrongful acts [under the VCPA], defendants will never find a statute that authorizes plaintiffs' allegations."[58]

The Court agrees with the IGPM defendants that the aspect at issue in this case cannot be narrowly restricted to the alleged misrepresentation, since no law would authorize misrepresentation. The Court does not agree, however, that the aspect at issue is as broad as "the formulation, compounding and sale of drugs."[59] The plaintiff's VCPA claim hinges on the defendants' representations to Mr. Wingate regarding the treatment he received.

---

[49]   274 Va. 82, 645 S.E.2d 443 (2007).
[50]   *Id.* at 90, 447.
[51]   *Id.* at 86, 445.
[52]   *Id.*
[53]   *Id.* at 90, 447.
[54]   *Id.*
[55]   Pl.'s Resp. Dem. IGPM at 4.
[56]   *Id.* at 3-4 (citing *Humphrey v. Leewood Healthcare Ctr.*, 73 Va. Cir. 346 (Fairfax 2007)).
[57]   IGPM Reply Br. at 3.
[58]   *Id.* at 3-6.
[59]   *Id.* at 5.

In this respect, the present case resembles *Beaty v. Manor Care, Inc.*,[60] a federal case in which the plaintiffs brought a VCPA claim against an assisted-living facility that allegedly misrepresented the types of care that it offered.[61] Denying the defendant's motion to dismiss the VCPA claim, the court observed that the plaintiffs' VCPA claim was that the facility advertised services it did not provide, and not that the care it did provide was deficient.[62] According to that court, a statute "authorizing" the facility's representations would be a statute dealing with advertising and sales.[63]

Similarly, the defendants in this case must show that there is a statute authorizing advertising and sales of drugs by practitioners. The authorizing statute need not, of course, authorize misrepresentations—but it must at least address communications by practitioners to their patients in order to have an exclusionary effect in this case.

The IGPM defendants assert that several statutes "authorize" their actions. Two of those statutes, however, deal solely with the compounding process. First, Virginia Code § 54.1-3410.2 "sanctions drug compounding, permitting it only when certain criteria are met."[64] Second, 21 U.S.C § 353a(b) provides that "[a] drug product may be compounded" under certain conditions.[65] Neither of these provisions deals with the sale, representation, advertisement, or administration of drugs, and neither prevents the application of the VCPA in this case.

The IGPM defendants also rely on Virginia Code § 54.1-3408(A).[66] This statute provides that "[a] practitioner of medicine . . . shall only prescribe, dispense, or administer controlled substances in good faith for medicinal or therapeutic purposes within the course of his professional practice."[67] The IGPM defendants assert that the provision "is not a regulation governing *how* medicine is prescribed, dispensed or administered; rather, this provision *sanctions* the prescription, administration or dispensing of medicine within the course of a practitioner of medicine's professional practice and prohibits the same in all other circumstances."[68]

Assuming that Va. Code § 54.1-3408(A) "authorizes" the prescription, administration, or dispensing of medicine, however, the statute is silent about what practitioners may tell patients in the course of those transactions. In contrast to the statute at issue in *Couch*, which regulated (without authorizing)

---

[60]  No. 02-1720-A, 2003 U.S. Dist LEXIS 25044 (E.D. Va. Feb. 10, 2003) (denying a motion to dismiss a VCPA claim arising from injuries sustained in an assisted-living facility).

[61]  *Id.* at *3-4.

[62]  *Id.* at *15.

[63]  *Id.* at *16.

[64]  IGPM Mem. Supp. Dem. at 5.

[65]  The defendants also point to the federal statute's prohibition against the introduction of adulterated drugs into interstate commerce, but this provision clearly does not "authorize" such an act. 21 U.S.C. § 331.

[66]  IGPM Mem. Supp. Dem. at 5.

[67]  Va. Code § 54.1-3408(A).

[68]  IGPM Mem. Supp. Dem. at 5 (emphasis added).

advertising, section 54.1-3408(A) does not cover advertising or any other communications between medical practitioners and their patients. Although other sections of Virginia's Drug Control Act prohibit false advertising,[69] there are no provisions authorizing certain communications by practitioners.

None of the statutes or regulations invoked by the defendants authorize a relevant aspect of the transaction in this case. Hence, Va. Code § 59.1-199's exclusion does not apply.

### (2) "Actual" damages available under the Virginia Consumer Protection Act include emotional-distress damages.

Finally, the IGPM defendants argue that the Court must dismiss plaintiff's VCPA claim because she is entitled only to economic damages under the VCPA.[70] The Court disagrees.

Virginia's wrongful-death statutes do not set forth specific causes of action that might give rise to recoverable damages; they require only that—had he lived—Mr. Wingate would have had a right to recover for his injuries.[71] Thus, wrongful-death damages are recoverable in many types of actions, including civil-rights claims,[72] products-liability claims,[73] and medical-malpractice claims.[74] The wrongful-death statutes often apply in conjunction with others, and the two statutory schemes do not conflict simply because both address damages.

The VCPA allows a plaintiff to recover "actual damages" resulting from VCPA violations.[75] Under Virginia law, "actual damages" include all "damages in satisfaction of, or in recompense for, loss or injury sustained," "all loss recoverable as a matter of right," and "all damages other than punitive or exemplary damages."[76] Put simply, actual damages compensate injured parties.

Two circuit courts, however, have ruled that under the VCPA, "actual damages" means *economic* damages.[77] Reversing course, one of those courts later took the position that "'actual damages' as used in the VCPA is not limited to out-of-pocket pecuniary losses."[78] This Court finds the reasoning of that later

---

[69]   Va. Code §§ 54.1-3433, -3457.
[70]   IGPM Mem. Supp. Dem. at 7.
[71]   Va. Code § 8.01-50.
[72]   *See, e.g.,* O'Connor v. Correctional Officers, 523 F. Supp. 1345 (1981) (holding that an admnistratrix was entitled to pursue constitutional claims under 42 U.S.C. § 1983 through a wrongful-death action).
[73]   *See, e.g.,* Funkhouser v. Ford Motor Co., No. 111207, 2011 Va. LEXIS 230 (Albermarle Co. Nov. 2, 2011), *rev'd on other grounds,* 285 Va. 272, 736 S.E.2d 309 (2013).
[74]   *See, e.g.,* Bolling v. D'amato, 259 Va. 299, 526 S.E.2d 257 (2000); *see also* Code § 8.01-50.1 (setting forth special requirements for commencing a wrongful-death action against a health care provider).
[75]   Va. Code § 59.1-204.
[76]   *News Leader Co. v. Kocen,* 173 Va. 95, 108, 3 S.E.2d 385, 391 (1995) (quotations and citations omitted).
[77]   *Deane v. Novacare Orthotics,* 50 Va. Cir. 418 (Rockbridge Co. 1999); *Devonshire v. Eurapair Int'l,* 40 Va. Cir. 149 (Fairfax Co. 1996).
[78]   *Humphrey v. Leewood Healtcare Ctr.,* 73 Va. Cir. 346 (Fairfax Co. 2007).

11

decision persuasive and presumes that "in the absence of limiting language, the General Assembly intended no unusual restriction on the term 'actual damages' as used in the VCPA."[79]

Virginia's wrongful-death statutes provide that beneficiaries are entitled to fair and just damages for sorrow, mental anguish, and the loss of the decedent's companionship.[80] Just as much as economic damages, these noneconomic damages are intended to compensate beneficiaries for their loss. The compensatory nature of such damages is obvious from the reasoning of *Rice v. Charles*.[81] There, the Supreme Court of Virginia held that a jury verdict in the exact amount of a decedent's funeral expenses was inadequate as a matter of law, since "the evidence at trial clearly supported the conclusion that [the] beneficiaries experienced sorrow, mental anguish, and loss of solace as a result of [her] death. Thus, they were entitled to compensation for these elements of damage."[82]

Defining "actual damages" in the ordinary sense, damages for sorrow, mental anguish, and solace constitute actual damages. The Court holds that the plaintiff's claim for actual damages under the VCPA includes the items of noneconomic damage allowed under the Virginia's wrongful-death statutes. The demurrers to the VCPA claim are overruled.

**D. The plaintiff has stated a prima facie case for negligence.**

IHC demurs to the negligence claim, asserting that because it does not state that a doctor-patient relationship existed between IHC and Mr. Wingate, the complaint fails to allege IHC owed a duty to the plaintiff.[83]

The complaint alleges that "[a]t all times and places pertinent to this action, Insight Imaging-Roanoke and its employees and agents had a healthcare provider-patient relationship with Mr. Wingate."[84] The complaint uses "Insight Imaging-Roanoke" as a defined term that refers to both IGPM and IHC.[85]

IHC maintains that although the complaint alleges a doctor-patient relationship between "Insight Imaging-Roanoke" and Mr. Wingate, it fails to allege there was any such relationship between Mr. Wingate and IHC.[86] It asks

---

[79]     *Id.* at 349; *see also Barnette v. Brooke Rd., Inc.*, 429 F. Supp. 2d 741 (E.D. Va. 2006) ("Had the General Assembly intended to limit 'actual damages' to economic damages or out-of-pocket expenses, thereby altering the existing court definition, it must have done so expressly.")

[80]     Va. Code § 8.01-52(1).

[81]     260 Va. 157, 532 S.E.2d 318 (2000).

[82]     *Rice*, 260 Va. at 169, 532 S.E.2d at 325; *see also Johnson v. Smith*, 241 Va. 396, 400-01, 403 S.E.2d 685, 687 (1991) (holding that a verdict in a wrongful-death action was incorrect as a matter of law because it did not include any sum for sorrow, mental anguish, and solace for the decedent's beneficiaries).

[83]     IHC Dem. at 4.

[84]     Compl. ¶ 53.

[85]     Compl. ¶ 11 ("Unless otherwise specified in this Compliant, references to Insight Imaging – Roanoke include Image Guided and Insight Health.").

[86]     IHC Dem. at 4.

the Court to take judicial notice of the fact that "Insight Imaging-Roanoke" is IGPM's registered trade name.[87] Based on this fact, IHC reasons that grouping IHC and IGPM together under the label "Insight Imaging-Roanoke" is inappropriate.[88] Therefore, IHC argues, the allegation that Mr. Wingate had a doctor-patient relationship with "Insight Imaging-Roanoke" is insufficient to allege a doctor-patient relationship with IHC.[89]

The Court is not persuaded by IHC's argument. A demurrer "admits the truth of all material facts that are properly pleaded, facts which are impliedly alleged, and facts which may be fairly and justly inferred from alleged facts."[90] Regardless of whether "Insight Imagining-Roanoke" is IGPM's registered trade name, the complaint alleges that IHC also uses "Insight Imaging-Roanoke" as an unregistered trade name.[91] When the plaintiff refers to "Insight Imaging-Roanoke", she is referring to IGPM and IHC.[92]

Because the plaintiff alleges that "Insight Imaging-Roanoke" had a doctor-patient relationship with Mr. Wingate, she is alleging that IGPM and IHC had doctor-patient relationships with Mr. Wingate, owing him certain duties.[93] Among those duties was "a duty to exercise reasonable care to avoid injecting Mr. Wingate with adulterated drugs."[94] The plaintiff has pleaded the elements of negligence with respect to IHC, and its demurrer to the negligence claim is overruled.

## E. The plaintiff has sufficiently alleged gross negligence.

IHC demurs to the gross-negligence claim on two grounds. First, it asserts that the complaint does not allege IHC owed a duty to Mr. Wingate.[95] As stated above, this argument fails because the complaint alleges that IHC owed Mr. Wingate multiple duties.

Second, IHC asserts that the complaint merely recites the elements of gross negligence without pleading any specific facts as to IHC.[96] Gross negligence is "the utter disregard of prudence amounting to complete neglect of the safety of another. It is a heedless and palpable violation of legal duty respecting the rights of others which amounts to the absence of slight diligence,

---

[87]  *Id.*
[88]  *Id.*
[89]  *Id.*
[90]  *Delk v. Columbia/HCA Healthcare Corp.*, 259 Va. 125, 129, 523 S.E.2d 826, 829 (2000).
[91]  Compl. ¶ 7.
[92]  *Id.* ¶ 11.
[93]  *Id.* ¶¶ 54, 204-13.
[94]  *Id.* ¶ 209.
[95]  IHC Dem. at 4-5.
[96]  *Id.* at 5.

or the want of even scant care."[97] "Ordinarily, the question whether gross negligence has been established is a matter of fact to be decided by a jury."[98]

The gross-negligence claim specifically incorporates by reference all preceding paragraphs in the complaint.[99] In summary, these paragraphs allege the following facts:

- Insight Imaging-Roanoke purchased adulterated steroids from NECC, an unaccredited compounding pharmacy company IHC knew or should have known operated in a facility surrounded by a garbage and waste center that stored products such as used mattress from prisons, hospitals, and dormitories;[100]
- Insight Imaging-Roanoke knew or should have known NECC's drugs and production process were unsanitary, unsterile, and lacked adequate quality control measures;[101]
- Insight Imaging-Roanoke provided Mr. Wingate with invoices and literature that falsely labeled the adulterated steroid as "Depo-Medrol," a trademarked brand name drug manufactured by Pfizer;[102]
- Insight Imaging-Roanoke intentionally withheld all the knowledge it had about NECC and the steroid from Mr. Wingate and the doctors that practiced in IHC's Roanoke facility;[103]
- Insight Imaging-Roanoke injected the adulterated steroid it purchased from NECC into Mr. Wingate's spinal cavity;[104] and
- The steroid contained fungus, mold, and/or other contaminates that caused Mr. Wingate to develop meningitis that eventually killed him.[105]

"Insight Imaging-Roanoke" is a defined term that includes IHC and IGPM.[106] These specific factual allegations against Insight Imaging-Roanoke go beyond a mere recital of elements and support a gross-negligence claim against IHC. IHC's demurrer to the gross-negligence claim is accordingly overruled.

## F.  The plaintiff failed to plead fraud with specificity.

Both IHC and the IGPM defendants attack the plaintiff's fraud claim. Both assert that the plaintiff has failed to plead a prima facie claim,[107] and the IGPM

---

[97]   *Burns v. Gagnon*, 283 Va. 657, 678, 727 S.E.2d 634, 647 (2012) (internal citations and quotations omitted).

[98]   *Id.*

[99]   Compl. ¶ 217.

[100]  *Id.* ¶¶ 100-03

[101]  *Id.* ¶ 107

[102]  *Id.* ¶¶ 131-34.

[103]  *Id.* ¶ 130.

[104]  *Id.* ¶¶ 120, 158-160.

[105]  *Id.* ¶¶ 151, 158, 174-78.

[106]  *Id.* ¶ 11.

[107]  IHC Reply Br. at 15; IGPM Mem. Supp. Dem. at 14.

defendants argue that the plaintiff failed to plead her claim with the required specificity.[108] The Court addresses both attacks below.

### (1) The plaintiff has alleged all of fraud's elements against IHC and the IGPM defendants.

IHC asserts that the plaintiff has failed to properly plead fraud. To plead actual fraud in Virginia, a plaintiff must allege "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled."[109] "Constructive fraud differs from actual fraud in that the misrepresentation of material fact is not made with the intent to mislead, but is made innocently or negligently although resulting in damage to the one relying on it."[110]

IHC contends that the plaintiff has not made out a prima facie case for actual or constructive fraud because there are no allegations that IHC "made a representation of any kind, intentionally or otherwise, regarding the steroids at issue to Mr. Wingate or that [he] relied on any such representation before he received treatment."[111] Since the plaintiff does not expressly allege that a misrepresentation occurred *before* the treatment, IHC argues, she has not established the element of reliance.[112] In addition, it asserts that "the allegations that an insurance company would rely on the reference to the brand name of the steroid for billing purposes cannot be imputed to Mr. Wingate to satisfy this requirement."[113]

To accept IHC's arguments would require the Court to apply the wrong standard of review, draw all inferences in favor of IHC, and disregard the plaintiff's allegations regarding constructive fraud. The plaintiff expressly alleges that the defendants concealed from Mr. Wingate that he was being administered a "knock-off drug obtained from an unaccredited compounding pharmacy, unregistered to distribute wholesale in Virginia."[114] IHC allegedly concealed information regarding the source of the steroid "knowing Mr. Wingate acted on the belief that no such facts existed, and that Mr. Wingate relied upon [the defendants] to obtain and inject safe drugs."[115] In addition to this concealment, the plaintiff alleges that the defendants actively misrepresented the compounded drug as a commercially-available drug produced by FDA-regulated

---

[108]   IGPM Reply Br. at 14–18.
[109]   *Winn v. Aleda Constr. Co.*, 227 Va. 304, 308, 315 S.E.2d 193, 195 (1984) (citations omitted).
[110]   *Nationwide Mut. Ins. Co. v. Hargraves*, 242 Va. 88, 92, 405 S.E.2d 848, 851 (1991); *Moore v. Gregory*, 146 Va. 504, 523, 131 S.E. 692, 697 (1925) ("Constructive fraud is a breach of legal or equitable duty, which, irrespective of moral guilt of the fraud feasor, the law declares fraudulent, because of its tendency to deceive others, to violate public or private confidence, or to injure public interests." (citation omitted)).
[111]   IHC Reply Br. at 15.
[112]   *Id.* at 15–16.
[113]   *Id.* at 16.
[114]   Compl. ¶ 231.
[115]   Compl. ¶ 232.

manufacturers.[116] She asserts that this misrepresentation was made to Mr. Wingate directly.[117] Thus, the complaint alleges that IHC committed a false representation of material fact on which Mr. Wingate relied, resulting in his death.

Next, the IGPM defendants also assert that the plaintiff has not made out a prima facie fraud claim against them. First, they argue that the plaintiff has not alleged that the doctors knew the dubious source of the drug, or that they misrepresented it as Depo-Medrol prior to the procedure.[118] The plaintiff, however, alleges that IHC, IGPM, and Drs. Mathis and O'Brien knew that the methylprednisolone acetate was potentially dangerous.[119] She also claims that Dr. O'Brien's medical literature misrepresented the drug as Depo-Medrol.[120] These statements amount to an allegation that the IGPM defendants knew that the drug was unsafe.

Second, the IGPM defendants argue that fraud by concealment requires a knowing and deliberate decision not to disclose a material fact, and the doctors "could not have engaged in a knowing and deliberate decision not to disclose facts about which they had no knowledge."[121] The Court agrees that "proof of misrepresentation by nondisclosure requires 'evidence of a knowing and a deliberate decision not to disclose a material fact,'" where there is a duty to disclose the concealed fact.[122] Again, however, the plaintiff alleges that the doctors knew that the steroid was a potentially dangerous knock-off drug.[123] She has not merely alleged non-disclosure but also affirmative misrepresentation in the form of misleading literature distributed to Mr. Wingate.

Third, the IGPM defendants contend that the plaintiff may not use the defendants' statements to Mr. Wingate's primary-care physician or insurer to establish that Mr. Wingate personally relied on any misrepresentation.[124] Because Plaintiff alleges direct reliance by Mr. Wingate, the Court declines to address the parties' arguments regarding reliance by and through third parties.

### (2) The plaintiff has not stated her fraud claim with specificity.

The IGPM defendants' final attack on the plaintiff's fraud claim is that her allegations lack the specificity required to plead fraud in Virginia.[125] On this final point, the Court agrees.

Fraud must be pleaded with particularity.[126] It is a longstanding rule of pleading in Virginia that a complaint alleging fraud "must show specifically in

---

116   *Id.* ¶¶ 228-29.
117   *Id.*
118   IGPM Mem. Supp. Dem. at 15.
119   Compl. ¶¶ 100, 107-110.
120   *Id.* ¶¶ 228-29.
121   IGPM Mem. Supp. Dem. at 15.
122   *Lambert v. Downtown Garage*, 262 Va. 707, 714, 553 S.E.2d 714, 718 (2001).
123   Compl. ¶¶ 74-77, 100, 107-110.
124   IGPM Mem. Supp. Dem. at 15-16.
125   IGPM Reply Br. at 14-18.

what the fraud consists, so that the defendant may have the opportunity of shaping his defence accordingly."[127]   Overly vague, indefinite, and conclusory allegations are insufficient.[128]   A plaintiff fails to state a claim for fraud against a business organization where the plaintiff does not reveal the identities of the organization's agents, officers, and employees of who are alleged to have perpetrated the fraud, or the details of the time and place where the fraud occurred.[129]

The fraud claim in its current form is too vague, indefinite, and conclusory. Of course, th
(or failed to disclose a fact they were required to).[130]

Because the plaintiff did not plead fraud with the requisite specificity, the demurrers as to Count V are sustained. The plaintiff is granted leave to re-plead.

## G. The allegations of gross negligence, if proved, constitute willful and wanton conduct supporting a claim for punitive damages.

IHC contends that punitive damages are not available because the plaintiff has not alleged that IHC acted with malice or in willful and wanton disregard of Mr. Wingate's rights.[131] The Court disagrees.

Punitive damages are exemplary in nature and are for the protection of the public.[132]   Punitive damages are proper in a negligence action when the negligence "is so willful or wanton as to evince a conscious disregard of the rights of others."[133] Willful or wanton negligence means consciously disregarding another's rights or "acting with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another."[134]

The Court is not persuaded by IHC's argument that "[t]here was simply no way for IHC to know that NECC had provided to the Defendants a Steroid that may have caused the Plaintiff's husband's death."[135] A finding of willful or wanton negligence requires that a defendant be "aware . . . that his conduct *probably* would cause injury to another."[136] Plaintiff alleges that despite state laws prohibiting bulk compounding of commercially available drugs, IHC's Roanoke clinic purchased large quantities of compounded methylprednisolone acetate

---

[126]   *Mortarino v. Consultant Eng'g Servs.*, 251 Va. 289, 295, 467 S.E.2d 778, 782 (1996).
[127]   *Id.*
[128]   *Tuscarora v. B.V.A.*, 218 Va. 849, 858, 241 S.E.2d 778, 783 (1978).
[129]   *Id.*
[130]   *Id.*
[131]   IHC Dem. at 6.
[132]   *Zedd v. Jenkins*, 194 Va. 704, 74 S.E.2d 791 (1953); 1 CHARLES E. FRIEND, PERSONAL INJURY LAW IN VIRGINIA, § 13.5 (2013).
[133]   *Booth v. Robertson*, 236 Va. 269, 273, 374 S.E.2d 1, 3 (1998); *see also Green v. Ingram,* 269 Va. 281, 292, 608 S.E.2d 917, 923 (2005).
[134]   *Griffin v. Shively*, 227 Va. 317, 321, 315 S.E.2d 210, 213 (1984).
[135]   IHC Reply Br. at 17.
[136]   *Griffin*, 227 Va. 317, 321, 315 S.E.2d 210, 213 (1984) (emphasis added).

17

from NECC.[137] The plaintiff alleges that IHC knew that the steroid was preservative-free and therefore more likely to be contaminated. Furthermore, the plaintiff claims that "other image guided pain management clinics in the Roanoke area recognized NECC as a dangerous source of [the steroid]. These other clinics chose to pay more to obtain [the steroid] from reliable sources, specifically rejecting" NECC's lower prices.[138] These allegations, if proved, could support a finding that IHC was aware that its conduct probably would cause injury to another, constituting reckless indifference.

The plaintiff has sufficiently alleged that IHC committed negligence so willful or wanton as to evince a conscious disregard of the rights of others. The Court accordingly overrules the demurrer to her punitive damages claim.

## II.   IHC's motions for extensions of time are denied.

IHC asks for more time to bring NECC into this suit as a codefendant[139] or third-party defendant.[140]

The plaintiff served IHC with her complaint on January 4, 2013. IHC demurred on January 24, 2013, filing its motion for an extension of time to join NECC on the same day. IHC subsequently filed a motion for an extension of time to file a third-party complaint against NECC. The Court denies both motions.

For the reasons previously stated,[141] NECC is not necessary party to this action under Rule 3:12. Accordingly, the motion for an extension of time to join NECC is denied as moot.

Next, IHC requests more time to assert a third-party claim against NECC. A defendant may assert a third-party claim without leave of court within 21 days after responding to the original complaint.[142] "Otherwise the third-party plaintiff must obtain leave therefore on motion after notice to all parties to the action."[143] IHC could have filed a third-party complaint without leave of this Court on or before February 14, 2013. Instead, it moved for an extension of time to do so on February 13, 2013, asking to wait to assert a claim against NECC until the Court rules on its demurrers.[144] IHC adopted this wait-and-see approach "[i]n the interests of the Court's economy" and "the logical sequence of pleadings and rulings thereon."[145] IHC asked the Court to extend the deadline to 21 days after its ruling on IHC's demurrers.[146]

---

[137]   Compl. ¶¶ 84-86.
[138]   Compl. ¶¶ 109-10.
[139]   IHC Jan. 24, 2013 Mtn.
[140]   IHC Feb. 13, 2013 Mtn.
[141]   *See* Part I.A., *supra* (holding that NECC is not a necessary party).
[142]   Va. Sup. Ct. R. 3:13(a).
[143]   *Id.*
[144]   IHC Feb. 13, 2013 Mtn. at 2.
[145]   *Id.* at 3.
[146]   *Id.*

The Court may extend the time for filing a pleading in its discretion, but it declines to do so in this case.[147] First, IHC's attempt to justify the delay in the name of judicial economy is unpersuasive. For the Court's purposes, it is more efficient for parties to file pleadings in a timely manner, even if those pleadings may subsequently become moot.

Second, NECC is in the midst of lengthy bankruptcy proceedings and enjoys the protections of 11 U.S.C. § 362's automatic stay. At this point, IHC cannot assert a third-party claim against it unless the bankruptcy court lifts the stay. Should that happen, IHC may seek leave of court to file a third-party complaint "at any time."[148]

Thus, to the extent IHC asks for an extension of time to assert a third-party claim without leave of court, that request is denied. Should the situation change, IHC may seek leave from this Court at that time.

### III.   The IGPM defendants' demurrers are denied in part and granted in part.

The IGPM defendants present two additional arguments in support of their demurrers:

- (A) The complaint fails to plead a gross-negligence claim against the IGPM defendants;[149] and
- (B) The plaintiff's allegations would not support an award of punitive damages against the IGPM defendants.[150]

### A.   The plaintiff has stated a gross-negligence claim against IGPM.

The IGPM defendants demur to the gross-negligence claim on two grounds.

First, they assert that the complaint failed to allege facts supporting the plaintiff's claim that IGPM was grossly negligent.[151] The IGPM defendants argue that because the complaint alleges IHC controlled the Roanoke facility, the allegation that "Insight Imaging-Roanoke" negligently selected, procured, received, and offered the adulterated drug applies only to IHC, and not to the IGPM defendants.[152]

---

[147]   Va. Sup. Ct. R. 1:9.
[148]   *Id.*
[149]   IGPM Mem. Supp. Dem. at 9-14.
[150]   *Id.* at 16-17.
[151]   *Id.* at 9-10.
[152]   *Id.*

Again, however, an allegation against "Insight Imaging-Roanoke" is an allegation against IHC and IGPM,[153] and the allegations against Insight Imaging-Roanoke are sufficient to support the plaintiff's gross-negligence claim.[154]

Next, the IGPM defendants argue that they are not liable for negligent acts associated with adulterated drugs because Virginia's Drug Control Act requires pharmacists and compounding facilities to ensure drugs are safe.[155] The Act's prohibitions, however, apply to everyone.[156]

The IGPM defendants' demurrer to the gross-negligence claim is overruled.

## B. The plaintiff's gross-negligence claim supports an award of punitive damages.

The IGPM defendants assert that punitive damages are not available in this case because the plaintiff does not allege that they knew that NECC's drugs would injure Mr. Wingate.[157] In addition, they contend that the sheer volume of drugs purchased from NECC and fact that no meningitis occurred until 2012 belies any suggestion that they consciously disregarded any risk.[158]

The Court is not persuaded that the plaintiff's punitive-damages claim requires an allegation that the defendants knew that a particular batch of steroid was tainted. A defendant is liable for punitive damages if he acted with reckless indifference to the consequences, while "aware . . . that his conduct *probably* would cause injury to another."[159] Here, the plaintiff has alleged facts indicating that the defendants were aware that their conduct would probably injure another,[160] and the Court denies the demurrer.

## IV. The IGPM defendants' pleas in bar are denied.

The IGPM defendants' pleas in bar assert that:

- (A) The complaint does not set forth a viable negligence-*per-se* claim;[161]
- (B) The plaintiff does not allege that IGPM sold the steroid, but merely that IGPM provided a service;[162]
- (C) The complaint fails to state a negligence claim;[163]

---

153    Part I.E., *supra.*
154    *Id.*
155    IGPM Mem. Supp. Dem. at 9-10; Va. Code §§ 54.1-3410.2(D)-(E).
156    Part I.B., *supra.*
157    IGPM Mem. Supp. Dem. at 17.
158    IGPM Reply Br. 19-20.
159    *Griffin*, 227 Va. 317, 321, 315 S.E.2d 210, 213 (1984) (emphasis added).
160    Part. I.B., *supra.*
161    IGPM Plea in Bar at 7-8.
162    *Id.* at 8-9.
163    *Id.* at 9.

20

- (D) The complaint fails to state a gross-negligence claim;[164] and
- (E) The complaint fails to state a fraud claim.[165]

A plea in bar asserts a single issue, which, if proved, creates a bar to a plaintiff's recovery.[166] The party asserting a plea in bar bears the burden of proof on the issue presented.[167]

The issue raised by a plea in bar may be submitted to the circuit court for decision based on a discrete body of facts identified by the parties through their pleadings, or developed through the presentation of evidence supporting or opposing the plea.[168]

If the facts underlying the plea in bar are contested, a party may demand that a jury decide the factual issues raised by the plea.[169] Conversely, if the parties do not dispute the facts or demand for a jury, the "whole matter of law and fact" may be decided by the Court.[170]

## A. The defendants have not met their burden on their plea in bar to the plaintiff's negligence *per se* claim.

The IGPM defendants assert that the plaintiff fails to plead a viable negligence *per se* claim because "they did not manufacture, sell, deliver, hold, offer for sale or receive in commerce adulterated drugs, but merely provided the service, as interventional radiologists, of injecting the medication."[171] The complaint, however, alleges that "Insight Imaging-Roanoke and its employees and agents" violated the Act by receiving, holding, and selling an adulterated drug.[172] Because neither party submitted additional evidence or demanded a jury, the Court resolves this question on the pleadings.

Assuming plaintiff's factual allegations are true, the IGPM defendants violated Virginia's Drug Control Act. The burden is upon the IGPM defendants to prove that they did not. Without additional evidence persuading the Court that the IGPM defendants' facts are more credible than the plaintiff's, the IGPM defendants cannot meet their burden. Their plea in bar to the negligence *per se* claim is denied.

---

[164]   *Id.* at 10.
[165]   *Id.* at 10-11.
[166]   *Hawthorne v. VanMarter*, 279 Va. 566, 577, 692 S.E.2d 226, 233 (2010).
[167]   *Id.*
[168]   *Id.*
[169]   *Id.*
[170]   *Id.* at 578, 234 (quoting Va. Code § 8.01-336(B)).
[171]   IGPM Plea in Bar at 8.
[172]   Compl. ¶¶ 188-89.

**The defendants have not met their burden on their plea in bar to the plaintiff's VCPA claim.**

The IGPM defendants claim they could not have violated the VCPA because they did not sell goods to Mr. Wingate, but merely provided a medical service.[173]

The Court is not persuaded that the defendants merely provided a service and were not "suppliers" of "goods" within the Act's meaning. This plea in bar to the VCPA claim is denied.

## B. The defendants have not met their burden on their plea in bar to the plaintiff's negligence claim.

The IGPM defendants contend that the negligence claim against them is a medical-malpractice claim governed by the Virginia Medical Malpractice Act ("VMMA"), and that the complaint fails to plead a breach of the standard of care established by the Act.[174]

The Act governs negligence claims brought against health care providers. "Health care provider" is a defined term that includes "a person, corporation, facility or institution *licensed* by this Commonwealth to provide health care or professional services as a physician or hospital, dentist, pharmacist, registered nurse or licensed practical nurse."[175] Neither the complaint, nor the IGPM defendants' plea in bar alleges that the IGPM defendants are licensed by Virginia in any medical field.

Assuming without deciding, however, that the Act governs the negligence claim, the Court finds that the complaint sufficiently pleads a cause of action for medical malpractice. Under the Act, health care providers must use the "degree of skill and diligence practiced by a reasonably prudent practitioner in the field of practice or specialty in this Commonwealth."[176] A complaint must only allege facts demonstrating that a defendant breached this standard of care.[177]

The plaintiff alleges that the IGPM defendants owed Mr. Wingate numerous duties, including "the duty to provide Mr. Wingate reasonable care and treatment."[178] It further alleges that the IGPM defendants breached these duties when they treated Mr. Wingate with an adulterated steroid.[179] These facts sufficiently allege a gross breach of the duty to exercise the Act's standard of care. The IGPM defendants' plea in bar to the negligence claim is denied.

---

[173]   IGPM Plea in Bar at 8.
[174]   Va. Code § 8.01-581.20(A).
[175]   *Id.* § 8.01-581.1 (emphasis added).
[176]   *Id.* § 8.01-581.20(A).
[177]   Va. Sup. Ct. R. 3:18 ("An allegation of negligence or contributory negligence is sufficient without specifying the particulars of the negligence.").
[178]   Compl. ¶¶ 54, 204-13.
[179]   *Id.* ¶ 214.

**C. The defendants have not met their burden on their plea in bar to the plaintiff's gross-negligence claim.**

The IGPM defendants' plea in bar to the gross-negligence claim repeats the argument that any claim of negligence against the IGPM defendants is governed by the VMMA, and the complaint fails to plead a breach of the Act's standard of care.[180] For the reasons stated above, the IGPM defendants' plea in bar to the gross-negligence claim is denied.[181]

**D. The defendants have not met their burden on their plea in bar to the plaintiff's fraud claim.**

The final plea in bar makes two attacks on the plaintiff's fraud claim. First, the IGPM defendants allege that they did not purchase or sell the drug but merely provided a service.[182] Because the plaintiff alleges that these defendants did sell the drug to Mr. Wingate[183] and because the Court lacks any evidence otherwise, the first attack on the plaintiff's fraud claim fails.

Second, the IGPM defendants allege that they had no duty to inform Mr. Wingate that NECC produced the steroid.[184] Their bare assertion, which seems to address the constructive-fraud claim, does not meet the IGPM defendants' burden of proof. The plaintiff's allegation that the defendants had a duty to inform their patients about the source of the drug is sufficient, and the IGPM defendants' plea in bar to the plaintiff's fraud claim is denied.

**V.    The plaintiff's motion for partial summary judgment is granted.**

The final motion before the Court is the plaintiff's motion for partial summary judgment on the limit of damages applicable to IHC under the VMMA.

On February 22, 2013, the plaintiff served IHC with several requests for admission. The plaintiff requested IHC to "[a]dmit you are not a health care provider as defined in Virginia Code § 8.01-581.1," and IHC did admit so.[185]

Based on IHC's admission, the plaintiff moved for partial summary judgment. The Court heard argument on April 5, 2013, the day after IHC removed the action to federal district court. Despite the removal, arguments were heard regarding the other meningitis cases raising similar legal issues, including the application of Va. Code § 8.01-581.1.

---

[180]   IGPM Plea in Bar at 10.
[181]   Part. IV.C., *supra*.
[182]   IGPM Plea in Bar at 11.
[183]   Compl. ¶ 190.
[184]   IGPM Plea in Bar at 11.
[185]   Pl.'s Mtn. for SJ Ex. 1.

23

At the hearing, the plaintiff urged the Court to grant the motion and find that IHC is not a health care provider under Va. Code § 8.01-581.1, thereby establishing that there is no statutory limit or "cap" on damages recoverable against IHC under Va. Code § 8.01-581.15. Counsel for IHC confirmed that IHC admitted it was not a health care provider under the statute and doubted the necessity of an order "when by operation of law we've already been found to be not a health care provider."[186] He then stated that IHC was "not subject to the cap. We can't use that as an affirmative defense or a defense to damages."[187] Noting the apparent agreement between the parties, the Court directed counsel to prepare an order conclusively establishing that IHC was not a health care provider entitled to the damages cap. The parties never presented that order to the Court.

On June 25, IHC made an about-face and requested to amend its admissions. IHC now claims that it is a statutory health care provider entitled to the Act's damages cap. It argues that an amendment will not prejudice the plaintiff, and it urges the Court to deny the plaintiff's motion for partial summary judgment.

Rule 4:11 governs requests for admissions. The rule aims "to expedite a trial by narrowing the contested facts and issues,"[188] and it provides that any matter admitted in response to a request "is conclusively established unless the court on motion permits withdrawal or amendment of the admission."[189]

The decision to allow amendment of an admission is within the Court's discretion,[190] and the Court "may" permit amendment when two conditions are satisfied. First, the moving party must show "upholding the admissions would practically eliminate any presentation of the merits of the case."[191] And second, the amendment must not prejudice the other party's ability to prove its case.[192]

IHC has not met its burden under the first prong of Rule 4:11(b). IHC admitted that it does not fall within the statutory definition of "health care provider." In doing so, it conceded that Va. Code § 8.01-581.15 imposes no limitation on the damages for which it may be liable if the plaintiff prevails. This does not impair IHC's ability to prove that it was not negligent or deceitful when it treated Mr. Wingate. With or without the damages cap, IHC is equally capable of disproving the elements of the plaintiff's claims, and refusing amendment will not practically eliminate IHC's ability to challenge the plaintiff's case.

---

[186] Hr'g Tr. 29:13-15, Apr. 5, 2013.
[187] Hr'g Tr. 30:9-10, Apr. 5, 2013.
[188] *Shaheen v. County of Mathews*, 265 Va. 462, 475, 579 S.E.2d 162, 170 (2003).
[189] Va. Sup. Ct. R. 4:11(b); *State Farm Mut. Auto. Ins. Co. v. Haines*, 250 Va. 71, 76, 458 S.E.2d 285, 287 (1995).
[190] *Perel v. Brannan*, 267 Va. 691, 704, 594 S.E.2d 899, 907 (2004).
[191] *Id.* at 474, 169; Va. Sup. Ct. R. 4:11(b).
[192] Va. Sup. Ct. R. 4:11(b).

Because IHC's motion to amend does not satisfy the first requirement of Rule 4:11(b), the Court denies IHC's motion to amend its admissions. The Court grants the plaintiff's motion for partial summary judgment. For this case's purposes, it is conclusively established that IHC is not a Va. Code § 8.01-581.1 "health care provider."

## CONCLUSION

For the reasons stated, the Court sustains the demurrers to the fraud claim, granting the plaintiff leave to re-plead. The remaining demurrers, motions, and pleas in bar are overruled and denied. The Court denies the request of Insight Health Corp. to amend its admissions and grants the plaintiff's motion for partial summary judgment.

The Court asks Mr. Sexton to circulate and submit an appropriate order, including an order from the April 5, 2013 hearing.

With best regards, I am

Very truly yours,

Charles N. Dorsey

CND/skb

25

# EXHIBIT 3



**VIRGINIA:**

### IN THE CIRCUIT COURT FOR THE CITY OF ROANOKE

| | |
|---|---|
| **SHARON G. WINGATE,** )<br>**EXECUTOR OF THE ESTATE OF** )<br>**DOUGLAS GRAY WINGATE,** )<br>**DECEASED,** )<br> )<br> *Plaintiff,* )<br> )<br>**v.** )<br> )<br>**INSIGHT HEALTH CORP.,** *et al.,* )<br> )<br> **Defendants.** ) | **Case No: CL12-2547** |

### <u>ORDER</u>

Upon motion, argument of counsel, and consideration of the pleadings and arguments before the Court, all as more particularly set forth in the Court's Letter Opinion of October 31, 2013, the contents of which are incorporated herein, the Court makes the following rulings:

1.  Defendant Insight Health Corporation ("IHC")'s demurrers to all Plaintiff's claims and causes of action except the fraud claim (Count V) are OVERRULED;

2.  The demurrers filed by Defendants John M. Mathis, M.D., Robert F. O'Brien, M.D., and Image Guided Pain Management, P.C. (collectively the "IGPM Defendants") to all Plaintiff's claims and causes of action except the fraud claim (Count V) are OVERRULED;

3.  IHC's and the IGPM Defendants' demurrers to Plaintiff's Fraud claim (Count V) are SUSTAINED on the grounds of specificity set forth in the Court's letter opinion, and Plaintiff is granted leave to amend her complaint within 21 days of entry of this Order;

4.  IHC's motions for extension of time to join or bring a third-party complaint against a

NECC

~~non-party~~ are DENIED;

5. IHC's Special Pleas are DENIED;

6. IHC's Motion to amend its responses to requests for admissions related to health care provider status as defined under Va. Code §8.01-581.1 is DENIED;

7. Correspondingly, the Plaintiff's Motion for Partial Summary Judgment against IHC seeking a declaration that, for purposes of this case, IHC is not a "health care provider" as defined by Va. Code § 8.01-581.1, is GRANTED; and, accordingly, IHC. is not entitled to the provisions of Chapter 21.1 (Medical Malpractice) of Title 8.01 of the Code of Virginia, including the limitation on damages set forth in Va. Code § 8.01-581.15.

8. For the purposes of the rulings set forth in the Court's Letter Opinion, to the extent that IGPM's Special Pleas were submitted on the pleadings, such Special Pleas are DENIED, without prejudice to IGPM bringing those Special Pleas by evidentiary hearing.

9. IHC must file an answer to the Plaintiff's Complaint within 21 days of entry of this Order.

The Clerk is requested to certify copies of this Order to all counsel of record.

Entered this 13th day of November 2013.

_____
Honorable Charles N. Dorsey

A COPY TESTE BRENDA S. HAMILTON, CLERK
By_____ Deputy Clerk

2

Seen and Agreed, except as to the Court's ruling as to Plaintiff's Fraud Count:

J. Scott Sexton, Esq. (VSB No. 29284)
Anthony M. Russell, Esq. (VSB No. 44505)
Charles H. Smith, III, Esq. (VSB No. 32891)
H. David Gibson, Esq. (VSB No. 40641)
Benjamin D. Byrd, Esq. (VSB No. 76560)
Daniel R. Sullivan, Esq. (VSB No. 81550)
GENTRY LOCKE RAKES & MOORE, LLP
10 Franklin Road, S.E., Suite 800
P. O. Box 40013
Roanoke, Virginia 24022-0013
(540) 983-9300
FAX (540) 983-9400
sexton@gentrylocke.com
russell@gentrylocke.com
smith@gentrylocke.com
gibson@gentrylocke.com
byrd@gentrylocke.com
sullivan@gentrylocke.com

Counsel for Plaintiff Sharon G. Wingate,
Executor of the Estate of Douglas Gray Wingate, deceased

Seen and objected to:

John Jessee, Esq.
Nancy F. Reynolds, Esq.
Michael P. Gardner, Esq.
1800 Wells Fargo Tower
Drawer 1200, Roanoke, Virginia 24006
john.jessee@leclairryan.com
nancy.reynolds@leclairryan.com
michael.gardner@leclairryan.com

Counsel for Defendants Image Guided Pain Management,
John Mathis, M.D., and Robert O'Brien, M.D.

3

23347/1/6468482v1

*CL12-2547*

Seen and objected to:



Christopher E. Hassell, Esq.
Heather S. Dean, Esq.
Brian J. Gerling, Esq.
Clinton R. Shaw, Esq.
Bonner Kiernan Trebach & Crociata LLP
1233 20th Street NW
8th Floor
Washington, D.C.  20036
chassell@bonnerkiernan.com
bgerling@bonnerkiernan.com
cshaw@bonnerkiernan.com

Counsel for Defendant Insight Health Corp.

23347/1/6468482v1

# EXHIBIT 4

## Towell, Samuel T.

| | |
|---|---|
| **From:** | Towell, Samuel T. |
| **Sent:** | Monday, May 19, 2014 5:49 PM |
| **To:** | 'sexton@gentrylocke.com'; john.jessee@leclairryan.com |
| **Cc:** | Busch, Stephen D.; Prior, Terry Jean |
| **Subject:** | Insight Corp - Notices of Assertion of Bankruptcy Jurisdiction |
| **Attachments:** | 20140519170744633.pdf; EX A.pdf |

Gentlemen,

Attached please find materials sent today to the Roanoke City Circuit Court via Federal Express.  For ease of delivery, note that the attached Exhibit A is referenced by all notices.

Regards,

Sam Towell

Samuel T. Towell
McGuireWoods LLP
One James Center
901 East Cary Street
Richmond, VA 23219-4030
804.775.1368 (Direct Line)
804.698.2181 (Direct FAX)
stowell@mcguirewoods.com
http://www.mcguirewoods.com

This e-mail may contain confidential or privileged information. If you are not the intended recipient, please advise by return e-mail and delete immediately without reading or forwarding to others.

1

# EXHIBIT 5

McGuireWoods LLP
One James Center
901 East Cary Street
Richmond, VA 23219-4030
Tel 804.775.1000
Fax 804.775.1061
www.mcguirewoods.com

Stephen D. Busch
Direct: 804.775.4378

# McGuireWoods

sbusch@mcguirewoods.com
Facsimile: 804.698.2024

May 19, 2014

**VIA FEDERAL EXPRESS**

Brenda S. Hamilton, Clerk
Circuit Court for the City of Roanoke
315 Church Avenue, S.W.
Courthouse - 3rd Floor
Roanoke, Virginia 24016

     Re:    ***Odessa M. Shuck v. Insight Health Corp., et al.***
           **Circuit Court for the City of Roanoke**
           **CL13-584**

Dear Ms. Hamilton:

    Enclosed please find Defendant Insight Health Corp.'s Notice of Assertion of Bankruptcy Jurisdiction and Transfer to MDL 2419 in the above-styled case.  Please file Insight's Notice with the other papers associated with the case.

    A copy of the Notice is also enclosed, along with a self-addressed envelope, postage pre-paid.  Would you kindly date-stamp the enclosed copy to confirm the filing, and return this to me via U.S. Mail in the enclosed envelope?  Thank you for your assistance.

           Sincerely yours,

           Stephen D. Busch

SDB/tjp
Enclosures
cc:    J. Scott Sexton, Esquire (via e-mail and First Class Mail)
       John T. Jessee, Esquire (via e-mail and First Class Mail)

57225165_1.DOCX

VIRGINIA:

IN THE CIRCUIT COURT FOR THE CITY OF ROANOKE

ODESSA M. SHUCK,                              )
                                             )
                    *Plaintiff,*              )
v.                                            )
                                             )     Case No. CL13-584
INSIGHT HEALTH CORP., *et al.*                )
                                             )
                    *Defendants.*             )

## NOTICE OF ASSERTION
## OF BANKRUPTCY JURISDICTION AND TRANSFER TO MDL 2419

Defendant Insight Health Corp. ("Insight") hereby informs the Court of the transfer of the above-entitled action from this Court pursuant to the May 15, 2014 Memorandum of Decision in *In re: New England Compounding Pharmacy, Inc., Products Liability Litigation*, Civil Action No. 1:13-md-02419-RWZ (D. Mass. May 15, 2014) (the "Order"), a copy of which is attached hereto as Exhibit A. In conformance with the Order, Insight states as follows:

1.     In the late summer and early fall of 2012, the Centers for Disease Control identified an outbreak of fungal meningitis. The outbreak was allegedly traced back to lots of methylprednisolone acetate compounded by New England Compounding Pharmacy, Inc. d/b/a New England Compounding Center ("NECC").

2.     In the wake of the outbreak, dozens of lawsuits were filed against NECC, its owners, several companies affiliated with NECC or its owners, and other companies and health care providers.

3.     On December 21, 2012, NECC filed a voluntary petition seeking relief under Chapter 11 of Title 11 of the United States Bankruptcy Code in the United States Bankruptcy

Court for the District of Massachusetts ("the Bankruptcy Proceeding"), automatically staying all actions against NECC.

4.      On February 12, 2013, the Judicial Panel on Multidistrict Litigation created MDL 2419, *In re: New England Compounding Pharmacy, Inc., Products Liability Litigation* in the United States District Court for the District of Massachusetts.

5.      The MDL Transfer Order centralized all cases "relating to injuries arising from the alleged contamination of injectable steroid . . . at the New England Compounding Pharmacy facility in Framingham, Massachusetts" in the District of Massachusetts for coordinated and consolidated proceedings pursuant to 28 U.S.C. § 1407.

6.      Thereafter, on March 10, 2013, Paul D. Moore, the Chapter 11 Trustee, moved for an order of the District Court for the District of Massachusetts to transfer all related personal injury and wrongful death actions to the District Court for the District of Massachusetts pursuant to 28 U.S.C. §§ 157 and 1334.

7.      Initially, the District Court for the District of Massachusetts declined to exercise jurisdiction over cases filed in state court unless a plaintiff asserted a claim, or any defendant asserted a claim for contribution or indemnity, against NECC or any affiliated entity or individual, *see In re New England Compounding Pharm., Inc., Prods. Liab. Litig.*, 496 B.R. 256, 269 (D. Mass. 2013).

8.      On December 27, 2013, the Chapter 11 Trustee renewed his request for a transfer of additional personal injury tort and wrongful death cases pending in state court in which Insight was a defendant and had asserted claims for indemnity and contribution against NECC.

9.      On May 15, 2014, Judge Zobel of the District Court for the District of Massachusetts found that related-to jurisdiction exists under the United States Bankruptcy Code,

and on that basis allowed the Chapter 11 Trustee's motion. She transferred this case and all

other state court cases in which Insight is a defendant to MDL 2419, the multi-district proceeding

for the NECC litigation, *In re: New England Compounding Pharmacy, Inc., Products Liability

Litigation* in the United States District Court for the District of Massachusetts. *See* Exhibit A.

      10.     In addition to exercising its related-to jurisdiction, the District Court for the

District of Massachusetts concluded that mandatory abstention did not apply, and the Court

refrained from applying permissive abstention. *Id.* Judge Zobel denied a renewed motion for

abstention filed by the law firm of Gentry, Locke, Rakes & Moore, LLP.

      11.     In this case, Plaintiff has asserted claims against Insight for which Insight, in turn,

has asserted a claim for contribution and indemnity against NECC through its Proof of Claim. In

addition, Plaintiff also has filed a Proof of Claim against NECC in the Bankruptcy Proceeding,

which was a further basis upon which Judge Zobel found the existence of related-to jurisdiction.

      12.     Accordingly, this is a case which has been transferred to the District Court for the

District of Massachusetts.

INSIGHT HEALTH CORP.

BY COUNSEL

Stephen D. Busch, Esq. (VSB No. 19580)
Robert F. Redmond, Esq. (VSB No. 32292)
Diane Flannery, Esq. (VSB No. 85286)
Christopher E. Trible, Esq. (VSB No. 48847)
Clement D. Carter, Esq. (VSB No. 46038)
S. Virginia Bondurant, Esq. (VSB No. 76516)
McGUIREWOODS LLP
One James Center
901 East Cary Street
Richmond, VA  23219
Telephone: (804) 775-1000
Facsimile: (804) 775-1061
sbusch@mcguirewoods.com
dflannery@mcguirewoods.com
rredmond@mcguirewoods.com
ctrible@mcguirewoods.com
ccarter@mcguirewoods.com
vbondurant@mcguirewoods.com

James F. Neale, Esq. (VSB No. 43060)
Heather L. Carlton, Esq. (VSB No. 84752)
McGUIREWOODS LLP
Court Square Building
310 Fourth Street, N.E.
Suite 300
Charlottesville, VA 22902-1288
Tel: (434) 977-2500
Fax: (434) 980-2222
jneale@mcguirewoods.com
hcarlton@mcguirewoods.com

*Attorneys for Defendant* Insight Health Corp.

4

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Notice was served on the following via First

Class U.S. Mail and via electronic mail on this 19th day of May, 2014:

J. Scott Sexton, Esq.
Gentry Locke Rakes & Moore, LLP
10 Franklin Road, S.E., Suite 800
P.O. Box 40013
Roanoke, Virginia 24022-0013
Tel: (540) 983-9300
Fax: (540) 983-9400
sexton@gentrylocke.com

*Counsel for Plaintiff*

John T. Jessee, Esq.
LeClair Ryan
1800 Wells Fargo Tower, Drawer 1200
Roanoke, Virginia 24006
Tel: (540) 510-3018
Fax: (540) 510-3050
john.jessee@leclairryan.com

*Counsel for Defendants,*
Image Guided Pain Management, P.C.,
John M. Mathis, M.D.,
Robert F. O'Brien, M.D.

57225457_1

5

# EXHIBIT 6

# GENTRY LOCKE
## RAKES & MOORE LLP
### *Attorneys*

Benjamin D. Byrd

(540) 983-9397

byrd@gentrylocke.com

Facsimile 540-983-9400

Post Office Box 40013

Roanoke, Virginia  24022-0013

May 19, 2014

Brenda S. Hamilton, Clerk
Roanoke City Circuit Court
315 West Church Avenue
Roanoke, Virginia 24011

Re:   Dana Marlene Bradley v. Insight Health Corp., *et al.* (CL12-2576)
Trudy R. Epperly v. Insight Health Corp., *et al.* (CL12-2571)
Barbara J. Filson v. Insight Health Corp., *et al.* (CL12-2575)
Zachary Lucas Foutz v. Insight Health Corp., *et al.* (CL13-0009)
Robert Earl Harris v. Insight Health Corp., *et al.* (CL13-55)
Chester T. Kalinoski v. Insight Health Corp., *et al.* (CL12-2574)
Pauline R. McFarlane v. Insight Health Corp., *et al.* (CL 12-2573)
James Wirt Smith, Jr. v. Insight Health Corp., *et al.* (CL12-2572)
Randolph E. Smith v. Insight Health Corp., *et al.* (CL13-57)
Richard A. Whitlow v. Insight Health Corp., *et al.* (CL13-54)
Ronald R. Courtney v. Insight Health Corp., *et al.* (CL13-417)
Ronnie A. Brown v. Insight Health Corp., *et al.* (CL13-538)
Sandra F. Artis v. Insight Health Corp., *et al.* (CL13-1105)
Julian D. Holbrook v. Insight Health Corp., *et al.* (CL13-370)
Estate of Ralph Irace v. Insight Health Corp., *et al* (CL13-577)
Odessa M. Shuck v. Insight Health Corp., *et al.* (CL13-584)
Estate of Louise Spicer v. Insight Health Corp., *et al.* (CL13-607)
Rose M. White v. Insight Health Corp., *et al.* (CL13-606)

Dear Ms. Hamilton:

Enclosed please find Orders we plan on presenting to the Court on the Demurrers and Motions to Amend Request for Admission Responses based upon the Court's ruling in the case of *Sharon Wingate, Executor of the Estate of Douglas Gray Wingate, deceased v. Insight Health Corp., et al.* We have requested by email dates and times that the Court is available to docket these matters.

24439/1/6675817v1

GENTRY LOCKE
RAKES & MOORE LLP

Brenda S. Hamilton, Clerk
May 19, 2014
Page 2


As always, thank you for your assistance.  Please do not hesitate to contact me should you have
any questions.

Very truly yours,

GENTRY LOCKE RAKES & MOORE, LLP

Benjamin D. Byrd

BDB:lwd
Enclosures
cc:     John Jessee, Esq.  (w/enc.)
        Nancy F. Reynolds, Esq. (w/enc.)
        Stephen D. Busch, Esq. (w/enc.)
        James F. Neale, Esq. (w/enc.)

VIRGINIA:

## IN THE CIRCUIT COURT FOR THE CITY OF ROANOKE

ROSE M. WHITE          )
          )
   *Plaintiff,*      )
          )
v.          )   **Case No: CL13-606**
          )
INSIGHT HEALTH CORP., *et al.*  )
          )
   Defendants.    )

## ORDER

Upon Motion, argument of counsel, and consideration of the pleadings and arguments before the Court, all of which is more particularly set forth and the Court's letter opinion of October 31, 2013 in the case of *Sharon G. Wingate, Executor of the Estate of Douglas Gray Wingate, deceased v. Insight Health Corp., John M. Mathis, M.D., Robert F. O'Brien, M.D., and Image Guided Pain Management, P.C.*, the contents of which are incorporated herein as applicable, the Court makes the following rulings:

1.   Defendant Insight Health Corporation's demurrers to all plaintiff's claims and causes of action except the fraud claim (Count V) are OVERRULED;

2.   The demurrers filed by defendants John M. Mathis, M.D., Robert F. O'Brien, M.D., and Image Guided Pain, P.C. (collectively the IGP defendants) to all plaintiff's claims and causes of action except for the fraud claim (Count V) are OVERRULED;

3.   Insight Health Corporation's and the IGPM defendants' demurrers to plaintiff's fraud claim (Count V) are SUSTAINED on the grounds of specificity set forth in the Court's letter opinion, and plaintiff is granted leave to amend her Complaint within 21 days of entry of this order.

The Clerk is directed to send certified copies of this Order to all counsel of record.

Entered this _____ day of _____, 2014.

_____
Honorable Charles M. Dorsey

SEEN AND OBJECTED TO IN PART:

_____
J. Scott Sexton, Esq. (VSB No. 29284)
Anthony M. Russell, Esq. (VSB No. 44505)
Charles H. Smith, III, Esq. (VSB No. 32891)
H. David Gibson, Esq. (VSB No. 40641)
Benjamin D. Byrd, Esq. (VSB No. 76560)
Daniel R. Sullivan, Esq. (VSB No. 81550)
GENTRY LOCKE RAKES & MOORE, LLP
10 Franklin Road, S.E., Suite 800
P. O. Box 40013
Roanoke, Virginia 24022-0013
(540) 983-9300
FAX (540) 983-9400
sexton@gentrylocke.com
russell@gentrylocke.com
smith@gentrylocke.com
gibson@gentrylocke.com
byrd@gentrylocke.com
sullivan@gentrylocke.com

*Counsel for Plaintiff Rose M. White*

2

SEEN AND _____ :


_____
John Jessee, Esq. (VSB No. 18745)
Nancy F. Reynolds, Esq.  (VSB No. 38236)
1800 Wells Fargo Tower
Drawer 1200
Roanoke, Virginia 24006
john.jessee@leclairryan.com
nancy.reynolds@leclairryan.com
*Counsel for Defendants Image Guided Pain Management,*
*John Mathis, M.D. and Robert F. O'Brien, M.D.*


SEEN AND _____ :


_____
Stephen D. Busch, Esq.
McGuire Woods, LLP
One James Center
901 E. Cary Street
Richmond, VA  23219
sbusch@mcguirewoods.com

James F. Neale, Esq.
McGuire Woods, LLP
Court Square Building
310 Fourth Street, N.E.
Suite 300
Charlottesville, VA  22902
jneale@mcguirewoods.com
*Counsel for Defendant Insight Health Corp.*

3

# EXHIBIT 7

# GENTRY LOCKE
## RAKES & MOORE LLP
*Attorneys*

Benjamin D. Byrd

(540) 983-9397

byrd@gentrylocke.com

Facsimile 540·983·9400

Post Office Box 40013

Roanoke, Virginia 24022-0013

May 23, 2014

Honorable Charles N. Dorsey
Roanoke City Circuit Court
315 West Church Avenue
Roanoke, VA 24010

Re:   Dana Marlene Bradley v. Insight Health Corp., *et al.* (CL12-2576)
Trudy R. Epperly v. Insight Health Corp., *et al.* (CL12-2571)
Barbara J. Filson v. Insight Health Corp., *et al.* (CL12-2575)
Zachary Lucas Foutz v. Insight Health Corp., *et al.* (CL13-0009)
Robert Earl Harris v. Insight Health Corp., *et al.* (CL13-55)
Chester T. Kalinoski v. Insight Health Corp., *et al.* (CL12-2574)
Pauline R. McFarlane v. Insight Health Corp., *et al.* (CL 12-2573)
James Wirt Smith, Jr. v. Insight Health Corp., *et al.* (CL12-2572)
Randolph E. Smith v. Insight Health Corp., *et al.* (CL13-57)
Richard A. Whitlow v. Insight Health Corp., *et al.* (CL13-54)
Ronald R. Courtney v. Insight Health Corp., *et al.* (CL13-417)
Ronnie A. Brown v. Insight Health Corp., *et al.* (CL13-538)
Sandra F. Artis v. Insight Health Corp., *et al.* (CL13-1105)
Julian D. Holbrook v. Insight Health Corp., *et al.* (CL13-370)
Estate of Ralph Irace v. Insight Health Corp., *et al* (CL13-577)
Odessa M. Shuck v. Insight Health Corp., *et al.* (CL13-584)
Estate of Louise Spicer v. Insight Health Corp., *et al.* (CL13-607)
Rose M. White v. Insight Health Corp., *et al.* (CL13-606)

Dear Judge Dorsey:

Enclosed is a courtesy copy of a status report that we have filed today in the Harris case. It is representative of the status reports we have also filed in the other 17 cases currently pending in the Roanoke City Circuit Court in which our firm is serving as plaintiff's counsel. Also enclosed is a notice of hearing for presentment of orders that is also representative of the ones we have filed in the other 17 cases as well.



GENTRY LOCKE
RAKES & MOORE LLP

May 23, 2014
Page 2

Very truly yours,

GENTRY LOCKE RAKES & MOORE, LLP

J. Scott Sexton

JSS:lav
Enclosure
cc:    John Jessee, Esq
       Nancy F. Reynolds, Esq.
       Stephen D. Busch, Esq.
       James F. Neale, Esq.

# EXHIBIT 8

# GENTRY LOCKE
## RAKES & MOORE LLP
### *Attorneys*

**J. Scott Sexton**

(540) 983-9379

sexton@gentrylocke.com

Facsimile 540-983-9400

Post Office Box 40013

Roanoke, Virginia 24022-0013

May 23, 2014

Brenda S. Hamilton, Clerk
Roanoke City Circuit Court
315 West Church Avenue
Roanoke, Virginia 24010-2610

Re:   Robert Earl Harris, Jr. v. Insight Health Corp., *et al.*; CL13000055-00

Dear Ms. Hamilton:

Enclosed is a Notice of Presentment of Order and Plaintiff's Status Report for filing in the above-styled matter.

As always, thank you for your assistance. Please do not hesitate to contact me should you have any questions.

Very truly yours,

GENTRY LOCKE RAKES & MOORE, LLP

J. Scott Sexton

JSS:lav
Enclosure
cc:   Stephen D. Busch, Esq. (w/encs. – via email & U.S. Mail)
      James F., Neale, Esq. (w/encs. – via email & U.S. Mail)
      John Jessee, Esq. (w/encs. – via email & U.S. Mail)
      Nancy F. Reynolds, Esq. (w/enc. – via email & U.S. Mail)
      Michael P. Gardner, Esq. (w/encs. – via email & U.S. Mail)

**VIRGINIA:**

## IN THE CIRCUIT COURT FOR THE CITY OF ROANOKE

| | | |
|---|---|---|
| **ROBERT EARL HARRIS, JR.,** | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| **v.** | ) | **Case No: C13000055-00** |
| | ) | |
| **INSIGHT HEALTH CORP.,** *et al.* | ) | |
| | ) | |
| *Defendants.* | ) | |

### <u>NOTICE OF PRESENTMENT OF ORDER</u>

PLEASE TAKE NOTICE that on the 27th day of June, 2014, beginning at 2:30 p.m.

before the Honorable Charles N. Dorsey, Roanoke City Circuit Court, Courthouse, 315 West

Church Avenue, Roanoke, Virginia 24010, plaintiff, by counsel, will present the Order attached

hereto to Judge Dorsey and request entry of same.

You must be present if you wish to be heard.

ROBERT EARL HARRIS, JR.

By Counsel

J. Scott Sexton, Esq. (VSB No. 29284)
Anthony M. Russell, Esq. (VSB No. 44505)
Charles H. Smith, III, Esq. (VSB No. 32891)
H. David Gibson, Esq. (VSB No. 40641)
Benjamin D. Byrd, Esq. (VSB No. 76560)
Daniel R. Sullivan, Esq. (VSB No. 81550)
GENTRY LOCKE RAKES & MOORE, LLP
10 Franklin Road, S.E., Suite 800
P. O. Box 40013
Roanoke, Virginia 24022-0013
(540) 983-9300
FAX (540) 983-9400
sexton@gentrylocke.com
russell@gentrylocke.com
smith@gentrylocke.com

gibson@gentrylocke.com
byrd@gentrylocke.com
sullivan@gentrylocke.com

*Counsel for Robert Earl Harris, Jr.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 23 day of May, 2014, the foregoing was served via electronic

and regular mail upon:

Stephen D. Busch, Esq.
McGuire Woods, LLP
One James Center
901 E. Cary Street
Richmond, VA 23219
sbusch@mcguirewoods.com

James F., Neale, Esq.
McGuire Woods, LLP
Court Square Building
310 Fourth Street, N.E.
Suite 300
Charlottesville, VA  22902-1288
jneale@mcguirewoods.com

Counsel for Defendant Insight Health Corp.

John Jessee, Esq.
Nancy F. Reynolds, Esq.
Michael P. Gardner, Esq.
1800 Wells Fargo Tower
Drawer 1200
Roanoke, Virginia 24006
john.jessee@leclairryan.com
nancy.reynolds@leclairryan.com
michael.gardner@leclairryan.com

Counsel for the defendants Image Guided Pain Management,
John Mathis, M.D., and Robert O'Brien, M.D.

By Counsel

23506/1/6683471v1

**VIRGINIA:**

## IN THE CIRCUIT COURT FOR THE CITY OF ROANOKE

**ROBERT EARL HARRIS, JR.,**                    )
                                                )
    *Plaintiff,*                               )
                                                )
v.                                              )          **Case No: CL13-55**
                                                )
**INSIGHT HEALTH CORP.,** *et al.*              )
                                                )
    **Defendants.**                            )

## <u>ORDER</u>

Upon Motion, argument of counsel, and consideration of the pleadings and arguments before the Court, all of which is more particularly set forth and the Court's letter opinion of October 31, 2013 in the case of *Sharon G. Wingate, Executor of the Estate of Douglas Gray Wingate, deceased v. Insight Health Corp., John M. Mathis, M.D., Robert F. O'Brien, M.D., and Image Guided Pain Management, P.C.*, the contents of which are incorporated herein as applicable, the Court makes the following rulings:

    1.    Defendant Insight Health Corporation's demurrers to all plaintiff's claims and causes of action except the fraud claim (Count V) are OVERRULED;

    2.    The demurrers filed by defendants John M. Mathis, M.D., Robert F. O'Brien, M.D., and Image Guided Pain, P.C. (collectively the IGPM defendants) to all plaintiff's claims and causes of action except for the fraud claim (Count V) are OVERRULED;

    3.    Insight Health Corporation and the IGPM defendants demurrers to plaintiff's fraud claim (Count V) are SUSTAINED on the grounds of specificity set forth in the Court's letter opinion, and plaintiff is granted leave to amend his Complaint within 21 days of entry of this order; and

4.     Insight Health Corporation's Motion to Amend its Responses to Request for Admissions Related to Health Care Provider Status as defined under Va. Code Section 8.01-581.1 is DENIED.

The Clerk is directed to send certified copies of this Order to all counsel of record.

Entered this _____ day of _____, 2014.


_____
The Honorable Charles M. Dorsey

SEEN AND OBJECTED TO IN PART:


_____
J. Scott Sexton, Esq. (VSB No. 29284)
Anthony M. Russell, Esq. (VSB No. 44505)
Charles H. Smith, III, Esq. (VSB No. 32891)
H. David Gibson, Esq. (VSB No. 40641)
Benjamin D. Byrd, Esq. (VSB No. 76560)
Daniel R. Sullivan, Esq. (VSB No. 81550)
GENTRY LOCKE RAKES & MOORE, LLP
10 Franklin Road, S.E., Suite 800
P. O. Box 40013
Roanoke, Virginia 24022-0013
(540) 983-9300
FAX (540) 983-9400
sexton@gentrylocke.com
russell@gentrylocke.com
smith@gentrylocke.com
gibson@gentrylocke.com
byrd@gentrylocke.com
sullivan@gentrylocke.com

*Counsel for Plaintiff Robert Earl Harris*

2

SEEN AND _____:


_____
John Jessee, Esq. (VSB No. 18745)
Nancy F. Reynolds, Esq.  (VSB No. 38236)
1800 Wells Fargo Tower
Drawer 1200
Roanoke, Virginia 24006
john.jessee@leclairryan.com
nancy.reynolds@leclairryan.com

*Counsel for Defendants Image Guided Pain Management and
John Mathis, M.D.*


SEEN AND _____:


_____
Stephen D. Busch, Esq.
McGuire Woods, LLP
One James Center
901 E. Cary Street
Richmond, VA  23219
sbusch@mcguirewoods.com

James F. Neale, Esq.
McGuire Woods, LLP
Court Square Building
310 Fourth Street, N.E.
Suite 300
Charlottesville, VA  22902
jneale@mcguirewoods.com

*Counsel for Defendant Insight Health Corp.*

3

# EXHIBIT 9

VIRGINIA:

## IN THE CIRCUIT COURT FOR THE CITY OF ROANOKE

ROBERT EARL HARRIS, JR., )
 )
 Plaintiff, )
 )
v. )  Case No. CL13-55
 )
INSIGHT HEALTH CORP., *et al.*, )
 )
 Defendants. )

### PLAINTIFF'S STATUS REPORT

COMES NOW the plaintiff, by counsel, and provides a status report to the Court.  This Court has devoted substantial attention to this case either directly or through rulings in the related Wingate case where identical legal issues were presented.  Accordingly, this status report is offered to explain the present procedural posture and briefly explain how we got to this point.

1.  This case involves claims by the plaintiff against Insight Health Corp. ("Insight"), Image Guided Pain Management, and its physician owners (collectively, "IGPM"). New England Compounding Company ("NECC") has never been a party and no claims are asserted by the plaintiff against NECC in this case.

2.  In March 2013, the bankruptcy Trustee for NECC moved the federal court in Boston to remove and transfer this case (and all others) pending in Virginia against Insight and/or IGPM.  The stated basis for such a transfer extrapolates that, since these defendants may one day have a claim for contribution against the bankrupt NECC estate, the plaintiff's case against these defendants is "related to" the NECC bankruptcy.

3.  The plaintiff opposed the Trustee's motion, asserting that: (a) there is no jurisdiction under the facts of this case; and, (b) even if such jurisdiction exists, the law mandates that the

federal court abstain where a case is filed in state court, could not have been brought in
federal court in the first place, and can be adjudicated timely in state court.

4.  On April 8, 2013, a month after the Trustee's motion in Boston, Insight noticed the removal
    of this case (and the others like it) to the federal court in Roanoke. Judge Wilson promptly
    heard the plaintiff's motion to remand, and then issued a strongly worded opinion on May
    10, 2013, remanding the cases back to this court. **(Exhibit 1)**. Judge Wilson agreed with the
    plaintiff that mandatory abstention was required under the plain language of the applicable
    statute. He also agreed that the time limit for removal had expired.

5.  A month later, the federal court in Boston issued its decision on the same issues, rejecting the
    plaintiff's statutory mandatory abstention motion, and opting instead for a broader
    interpretation of "congressional intent."  However, the Boston court noted the dubious nature
    of the alleged jurisdiction and <u>voluntarily</u> abstained.  The victory for the Virginia plaintiffs
    was hollow, however, because the Boston court made it clear that it would be inclined to
    grant a renewed motion if the defendants filed proofs of claim in the NECC bankruptcy.
    However, it also stated that if the defendants did not file a proof of claim, then the state court
    cases would proceed to judgment without interference from the federal court.

6.  IGPM elected not to file a proof of claim.  But, Insight chose the opposite path and filed a
    proof of claim in the NECC bankruptcy on December 20, 2013.  The Trustee immediately
    renewed his motion to remove and transfer this case (and the others like it) from Virginia to
    Boston. Insight filed papers in Boston in support of the Trustee's motion.

7.  The issues were subsequently re-briefed and oral argument occurred on March 13, 2014. The
    judge in Boston issued her opinion on May 15, 2014 indicating that she would grant the
    Trustee's motion.  However, contrary to Insight's recent "Notice of Assertion of Bankruptcy

2

Jurisdiction and Transfer" filed in this court, the Boston court has not yet entered an order. In fact, she has solicited input from all counsel as to what steps will be necessary to implement her Memorandum of Decision. A copy of her opinion has already been filed by Insight with this court, so it is not attached hereto.

8.  On May 22, 2014, the plaintiff responded by filing the attached **Exhibit 2**.  Therein, the plaintiff explained that the Boston court would have to follow the procedures outlined in the applicable Rule 9072.  The plaintiff further noted that the Boston court should not remove or transfer the plaintiff's case because such an action is time-barred; and, the plaintiff further objected to the Trustee's proposed order.  It is unclear when or how the Boston court will respond to these pending issues.

9.  While the plaintiff disagrees entirely with the activities and rulings that have occurred in Boston relating to this state court case, he has asked that any order by the Boston court should at least expressly allow the flexibility for this court to enter orders relating to prior decisions.

10. For example, this court has already heard the demurrers of Insight and IGPM relating to this case and the other identically worded cases.  The decision of this court on those issues is set forth in letter opinion dated October 31, 2013 in the Wingate case.  The plaintiff, however, had not presented an order to the court denying those demurrers until recently.  Similarly, this court has already ruled on the cases where Insight moved to withdraw its admission that it is not a health care provider, but those orders have not been entered either.

11. The earliest date that the plaintiff could schedule presentment of the outstanding orders on those issues is June 27, 2014 due to scheduling conflicts with opposing counsel.  Insight has

objected to scheduling these presentment hearings, but the plaintiff believes that this court still has jurisdiction.

12. As further developments occur in Boston, the plaintiff will attempt to apprise the court.

ROBERT EARL HARRIS, JR.,

By Counsel

J. Scott Sexton, Esq. (VSB No. 29284)
Anthony M. Russell, Esq. (VSB No. 44505)
Charles H. Smith, III, Esq. (VSB No. 32891)
H. David Gibson, Esq. (VSB No. 40641)
Benjamin D. Byrd, Esq. (VSB No. 76560)
Daniel R. Sullivan, Esq. (VSB No. 81550)
GENTRY LOCKE RAKES & MOORE, LLP
10 Franklin Road, S.E., Suite 800
P. O. Box 40013
Roanoke, Virginia 24022-0013
(540) 983-9300
FAX (540) 983-9400
sexton@gentrylocke.com
russell@gentrylocke.com
smith@gentrylocke.com
gibson@gentrylocke.com
byrd@gentrylocke.com
sullivan@gentrylocke.com

*Counsel for Robert Earl Harris, Jr.*

4

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of May, 2014, the foregoing was served via electronic and regular mail upon:

Stephen D. Busch, Esq.
McGuire Woods, LLP
One James Center
901 E. Cary Street
Richmond, VA 23219
sbusch@mcguirewoods.com

James F., Neale, Esq.
McGuire Woods, LLP
Court Square Building
310 Fourth Street, N.E.
Suite 300
Charlottesville, VA  22902-1288
jneale@mcguirewoods.com

      Counsel for Defendant Insight Health Corp.

John Jessee, Esq.
Nancy F. Reynolds, Esq.
Michael P. Gardner, Esq.
1800 Wells Fargo Tower
Drawer 1200
Roanoke, Virginia 24006
john.jessee@leclairryan.com
nancy.reynolds@leclairryan.com
michael.gardner@leclairryan.com

      Counsel for the defendants Image Guided Pain Management,
      John Mathis, M.D., and Robert O'Brien, M.D.

                      By Counsel

5

Get a Document - by Citation - 2013 U.S. Dist. LEXIS 67358

Case 1:13-md-02419-RWZ   Document 1150-1   Filed 05/27/14   Page 72 of 95

Page 1 of 6

# Lexis®

| **Search** | **Get a Document** | *Shepard's*® | **More** | | **History** | **Alerts** |

FOCUS™ Terms [_____] Go   Advanced... **Get a Document** [_____] Go

View Tutorial

Service: **Get by LEXSEE®**
Citation: **2013 U.S.Dist. LEXIS 67358**

*2013 U.S. Dist. LEXIS 67358, \**

SHARON G. WINGATE, Plaintiff, v. INSIGHT HEALTH CORP. et al., Defendants.

Civil Action No. 7:13cv00142

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF VIRGINIA, ROANOKE DIVISION

2013 U.S. Dist. LEXIS 67358

May 10, 2013, Decided
May 10, 2013, Filed

**SUBSEQUENT HISTORY:** Related proceeding at Bender v. Insight Health Corp., 2013 U.S. Dist. LEXIS 67357 (W.D. Va., May 10, 2013)
On remand at Wingate v. Insight Health Corp., 2013 Va. Cir. LEXIS 105 (Va. Cir. Ct., Oct. 31, 2013)
Related proceeding at Med. Mut. Ins. Co. v. Image Guided Pain Mgmt., P.C., 2014 U.S. Dist. LEXIS 54733 (W.D. Va., Apr. 18, 2014)

**CORE TERMS:** removal, notice—, abstention, mandatory, untimely, abstain, equitable grounds, cause of action, state-court, non-debtor, lawsuit, pain, summary judgment, oral argument, discovery, state-law, grounded, bankruptcy proceeding, jury trial, initial pleading, civil proceedings, procedural defect, right to object, personal injury tort, wrongful death claims, practical effect, abstention-exception, personal-injury, indemnification, wrongful-death

**COUNSEL: [\*1]** For Sharon G. Wingate, Executor of the Estate of Douglas Gray Wingate, Deceased, Plaintiff: Anthony Marc Russell, Benjamin DeKalb Byrd, Charles H. Smith, III, Daniel Robert Sullivan, Harold David Gibson, J. Scott Sexton, LEAD ATTORNEYS, GENTRY LOCKE RAKES & MOORE, ROANOKE, VA.

For Insight Health Corp., Defendant: Christopher E. Hassell, William H. White, Jr., PRO HAC VICE, LEAD ATTORNEYS, Clinton Robert Shaw, Jr., Bonner, Kiernan, Trebach & Crociata, L.L.P., Washington, DC.

For John M Mathis, M.D., Robert F. O'Brien, M.D., Image Guided Pain Management, P.C., Defendants: John Thomas Jessee, Michael Preston Gardner, Nancy Fuller Reynolds, LeClair Ryan, A Professional Corporation, Roanoke, VA.

**JUDGES:** Samuel G. Wilson ▾, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Samuel G. Wilson ▾

**EXHIBIT 1**

Get a Document - by Citation - 2013 U.S. Dist. LEXIS 67358

Case 1:13-md-02419-RWZ   Document 1150-1   Filed 05/27/14   Page 73 of 95

Page 2 of 6

**OPINION**

**MEMORANDUM OPINION**

**By: Samuel G. Wilson** ▾

**United States District Judge**

Plaintiff Sharon G. Wingate, acting as the executor of her husband's estate, brought this action in the Circuit Court for the City of Roanoke against defendants Insight Health Corp. ("IHC"), two IHC physicians, and Image Guided Pain Management. Ms. Wingate's state-court complaint alleges that the defendants acted negligently, fraudulently, and in violation of the Virginia **[*2]** Consumer Protection Act by obtaining contaminated methylprednisolone acetate ("MPA"—an injectable steroid commonly used to treat swelling and pain) from the New England Compounding Center ("NECC") and administering it to her husband, causing him to develop a strain of fungal meningitis that proved fatal. Ms. Wingate's claims are similar to those that a number of plaintiffs have recently asserted in sixteen other state-court lawsuits against IHC. After more than three months of state-court proceedings, IHC removed this action (and the sixteen others like it) to federal court pursuant to 28 U.S.C. § 1334, based on the claims' purported relation to NECC's ongoing Chapter 11 bankruptcy in the District of Massachusetts. Ms. Wingate has filed a motion to remand this action to state court in which she argues that IHC's removal petition was untimely and jurisdictionally deficient. Failing that, Ms. Wingate argues, the court should abstain from exercising related-to jurisdiction, or should remand the action on equitable grounds. IHC's codefendants, Dr. John Mathis, Dr. Robert O'Brien, and Image Guided Pain Management, have joined in Ms. Wingate's motion. The court assumes without deciding that **[*3]** it has related-to jurisdiction over this matter, but finds that IHC's notice of removal was untimely and remands the action on that basis. In the alternative, the court abstains from hearing this matter pursuant to the mandatory abstention provision that Congress included in 28 U.S.C. § 1334. Were that not enough, the court remands the action on equitable grounds pursuant to 28 U.S.C. § 1452(b). Accordingly, the court grants Ms. Wingate's motion to remand.

**I.**

In an effort to alleviate his chronic shoulder pain, Ms. Wingate's husband consulted his family doctor, who in turn referred Mr. Wingate to IHC [1] for a steroid injection. There, a doctor gave Mr. Wingate an epidural injection of MPA. According to Ms. Wingate's complaint, that MPA was part of a large, non-sterile batch that NECC had manufactured in mid-2012. Over the next twelve days, Mr. Wingate suffered headaches, seizures, and a series of strokes that led to his death. The medical examiner reported that Mr. Wingate's cause of death was fungal meningitis.

**FOOTNOTES**

[1] IHC was doing business as Insight Imaging-Roanoke.

On November 20, 2012, Ms. Wingate brought a diversity-based lawsuit against NECC in this court, asserting various negligence **[*4]** and products-liability theories. Other MPA-affected individuals (and the estates of those who had died from the contaminated MPA) also began bringing suit against NECC in various state and federal fora. Little more than a month later, NECC filed for bankruptcy in Massachusetts—an event that stayed, pursuant to 11 U.S.C. § 362, the plaintiffs' claims against NECC. Ms. Wingate then filed a December 27, 2012, complaint against IHC in the Circuit Court for the City of Roanoke, claiming medical negligence, negligence per se, gross negligence, fraud, and violations of the Virginia Consumer Protection Act. Other plaintiffs soon filed similar complaints against IHC. Ms. Wingate provided IHC's counsel with a copy of her complaint on the same day she filed it, and she served IHC's registered agent eight days later. The state court scheduled the matter for a seven-day jury trial to begin on April 21, 2014. IHC filed a demurrer to the complaint (which the parties argued in

Get a Document - by Citation - 2013 U.S. Dist. LEXIS 67358

Case 1:13-md-02419-RWZ   Document 1150-1   Filed 05/27/14   Page 74 of 95

Page 3 of 6

February), the parties engaged in discovery, and Ms. Wingate moved for partial summary judgment. The state court set that motion for an April 5, 2013, hearing.

Meanwhile, the Judicial Panel on Multidistrict Litigation ("MDL **[*5]** Panel") began consolidating the various lawsuits against NECC. The MDL Panel consolidated the first of those lawsuits on February 12, 2013, in the United States District Court for the District of Massachusetts. On March 10th, the Chapter 11 Bankruptcy Trustee in the ongoing NECC bankruptcy proceeding filed a motion to transfer more than fifty personal-injury and wrongful-death cases to the multidistrict litigation pursuant to 28 U.S.C. §§ 157(b)(5) and 1334. The Bankruptcy Trustee took the position that a number of those cases (including this one) were "related to" NECC's bankruptcy, even though the complaints named no debtor parties.

Back in state court, IHC took that development as an opportunity to remove Ms. Wingate's claims to federal court. On the April 5th morning of oral argument on Ms. Wingate's pending summary judgment motion, IHC's counsel appeared in state court and informed the judge that IHC had removed the matter. The same day, the state judge entered partial summary judgment in ten similar cases against IHC, but IHC's counsel began removing those cases to federal court as well. Altogether, IHC has removed seventeen cases that assert nearly identical claims. Ms. Wingate **[*6]** has moved this court to remand the action or abstain from exercising jurisdiction in this case, and the other plaintiffs have followed suit. IHC has responded, the court has heard oral argument, and the matter is ripe for decision.

## II.

As an initial matter, the court assumes without deciding that it has related-to jurisdiction over Ms. Wingate's claims. Section 1334 of Title 28 establishes subject matter jurisdiction in the United States District Courts for all cases "under title 11," and extends it as well to "all civil proceedings . . . related to cases under title 11." 28 U.S.C. § 1334(a)-(b). In the Fourth Circuit, "'the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.'" Valley Historic Ltd. P'ship v. Bank of N.Y., 486 F.3d 831, 836 (4th Cir. 2007) (emphasis removed) (quoting In re Celotex Corp., 124 F.3d 619, 625 (4th Cir. 1997)). There is conflicting authority, however, on the question of whether a state-law cause of action between non-debtors passes that test. On one hand, the Third Circuit has held that "there is no related-to jurisdiction **[*7]** over a third-party claim if there would need to be another lawsuit before the third-party claim could have any impact on the bankruptcy proceedings." In re W.R. Grace & Co., 591 F.3d 164, 172 (3d Cir. 2009). On the other hand, the Sixth Circuit has held that a non-debtor defendant's potential but as-yet unasserted claim against a bankruptcy estate was sufficient to establish related-to jurisdiction. See In re Dow Corning Corp., 86 F.3d 482, 494 (6th Cir. 1996).

Though the court is mindful that "common sense cautions against an open-ended interpretation of the 'related to' statutory language 'in a universe where everything is related to everything else,'" Matter of FedPak Sys., Inc., 80 F.3d 207, 214 (7th Cir. 1996) (quoting Gerald T. Dunne, The Bottomless Pit of Bankruptcy Jurisdiction, 112 Banking L.J. 957, 957 (Nov.—Dec. 1995)), the court is also mindful that it need not resolve the question here. If the court has related-to jurisdiction, it nevertheless abstains from exercising it and remands the action to state court on procedural and equitable grounds. And if the court lacks related-to jurisdiction, the remand is equally justified.

## III.

In its notice of removal, IHC asserted that **[*8]** this action became removable under 28 U.S.C. § 1446 (b)(3) on March 10, 2013, when the NECC Bankruptcy Trustee filed his motion to transfer and asserted related-to jurisdiction over Ms. Wingate's claims. According to IHC, that motion "constituted such 'other paper from which it may first be ascertained that the case is one which is or has become removable.'" Notice 4, ECF No. 1 (quoting § 1446(b)(3)). From the outset, Ms. Wingate has argued that IHC's notice of removal was untimely because IHC's removal window was not measured by the "other paper" provision in § 1446(b)(3), but by Federal Rule of Bankruptcy Procedure 9027(a)(3),

Get a Document - by Citation - 2013 U.S. Dist. LEXIS 67358

Case 1:13-md-02419-RWZ   Document 1150-1   Filed 05/27/14   Page 75 of 95

Page 4 of 6

which provides that the removal notice is due within thirty days of receiving the complaint. At oral argument on Ms. Wingate's motion to remand, IHC conceded that "on further study" Rule 9027 indeed governed, rendering its removal notice untimely. Nevertheless, IHC argued that the court should overlook its untimely notice because Ms. Wingate had waived any objections to the procedural defect in removal. The court rejects that argument and remands the action as untimely removed.

Section 1452 of Title 28 provides that "a party may remove any claim or cause of action **[*9]** in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of [Title 28]." Federal Rule of Bankruptcy Procedure 9027 describes the timing of the removal notice:

> If a claim or cause of action is asserted in another court after the commencement of a case under the Code, a notice of removal may be filed with the clerk only within the shorter of (A) 30 days after receipt, through service or otherwise, of a copy of the initial pleading setting forth the claim or cause of action sought to be removed, or (B) 30 days after receipt of the summons if the initial pleading has been filed with the court but not served with the summons.

Fed. R. Bankr. P. 9027(a)(3); see also In re Celotex Corp., 124 F.3d at 629 (noting that the Bankruptcy Rules apply to cases grounded on related-to jurisdiction).

Here, Ms. Wingate filed her state-court action on December 27, 2012, and IHC's counsel received a copy of the complaint "through service or otherwise" on the same day. [2] Consequently, IHC's April 4, 2013, removal notice was more than two months late. Despite that patent untimeliness, **[*10]** IHC argues that Ms. Wingate waived any objection to the removal's procedural defects by (1) invoking federal jurisdiction in her November 2012 lawsuit *against NECC*, and (2) engaging in limited discovery after IHC removed this action. The first argument is wholly frivolous. As to the second argument, it is indeed true that a plaintiff may waive her right to object to the timeliness of removal through her "affirmative activity in federal court." In re Mutual Funds Inv. Litig., 767 F. Supp. 2d 542, 546 (D. Md. 2011) (citing Payne *ex rel.* Estate of Calzada v. Brake, 439 F.3d 198, 203-04 (4th Cir. 2006)). In the Fourth Circuit, however, "diligent objection [to removal] renders the waiver doctrine inapplicable." King v. Marriott Int'l Inc., 337 F.3d 421, 425 (4th Cir. 2003); see also Caterpillar, Inc. v. Lewis, 519 U.S. 61, 74, 117 S. Ct. 467, 136 L. Ed. 2d 437 (1996) (noting that that the plaintiff, "by timely moving for remand, did all that was required to preserve his objection to removal."). Here, Ms. Wingate filed her motion to remand, a brief in support, and nearly a dozen exhibits a mere eleven days after removal, and she has done little in this court but press the matter since that time. The court therefore finds **[*11]** that Ms. Wingate did not waive her right to object to IHC's untimely removal notice and, accordingly, remands the action to state court as untimely removed.

### FOOTNOTES

2 Ms. Wingate's counsel has filed a sworn affidavit and a copy of the e-mail to IHC's counsel, both of which indicate that IHC received a copy of the complaint on December 27, 2012. See Aff. 2, ECF No. 10-1.

### IV.

Ms. Wingate argues that the court must abstain from exercising jurisdiction over this matter pursuant to the mandatory abstention provision that Congress included in 28 U.S.C. § 1334, the very code section that provides federal courts with related-to jurisdiction. IHC contends that the mandatory abstention provision does not actually apply to tort claims like Ms. Wingate's. The court rejects that premise, agrees with Ms. Wingate, and grants her motion to abstain.

Section 1334 establishes federal courts' related-to jurisdiction, but also mandates that "upon timely motion" the district court abstain from entertaining a case grounded only on "related to" jurisdiction if

Get a Document - by Citation - 2013 U.S. Dist. LEXIS 67358

Case 1:13-md-02419-RWZ   Document 1150-1   Filed 05/27/14   Page 76 of 95

Page 5 of 6

"an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction." § 1334(c)(2); see also In re Celotex Corp., 124 F.3d at 627 n.4. **[*12]** A plain reading of that rule reveals six elements: (1) a party must file a timely motion to abstain; (2) the proceeding must be based on state-law claims; (3) the proceeding must be grounded on related-to jurisdiction; (4) there must not be any basis for federal court jurisdiction other than § 1334; (5) a parallel action must have been commenced in state court; and (6) the state-court action can be timely adjudicated. See § 1334 (c)(2); In re Butterfield, 339 B.R. 366, 373 (E.D. Va. 2004).

This action satisfies all six of those elements. Ms. Wingate filed a motion to abstain less than two weeks after IHC removed; the proceeding is based on state-law negligence, fraud, and Virginia Consumer Protection Act claims; the only basis for federal court jurisdiction is § 1334(b)'s "related to" provision; Ms. Wingate commenced her state-court action several months ago; and the state court has set the matter for an April 21, 2014, jury trial and has even "advised the parties that it would be reluctant to grant any continuance." Aff. 2, ECF No. 10-1.

IHC argues that § 1334's mandatory abstention provision does not apply. Generally, IHC contends that § 1334(c)(2)'s mandatory abstention provision is **[*13]** not applicable to personal-injury or wrongful-death claims. Cf. A.H. Robins Co. v. Piccinin, 788 F.2d 994, 1010 n.14 (4th Cir. 1986) (quoting Walter J. Taggart, The New Bankruptcy Court System, 59 Am. Bankr. L.J. 231, 253 (1985)). Specifically, IHC points to 28 U.S.C. § 157(b)(4), which provides that "non-core proceedings under section 157(b)(2) (B) . . . shall not be subject to the mandatory abstention provisions of section 1334(c)(2)." Section 157(b)(2)(B), in turn, defines those "non-core proceedings" as "the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11." There is an obvious problem with IHC's argument, however: Ms. Wingate's claims are not "against the estate" of NECC—they are against IHC and other non-debtors. Thus, on its face, § 157's abstention-exception is inapplicable. See, e.g., Nase v. TECO Energy, Inc., No. 09-7659, 2010 U.S. Dist. LEXIS 36409, 2010 WL 924290, at *4 n.7 (E.D. La. March 9, 2010) ("Section 157(b)(4) has no application in this case because [the plaintiff's] personal injury tort claim is not 'against' his estate."). [3]

---

**FOOTNOTES**

[3] The court notes that the Fourth Circuit's **[*14]** statement in A.H. Robins Co. v. Piccinin ("[m] andatory abstention under section 1334(c)(2) is not applicable to personal injury claims") was a general explanatory statement. There is no indication that the A.H. Robins court intended to lay down a broad rule.

---

"[I]t is a far step" indeed to find "that a claim against a non-debtor is actually a claim directly against the estate for the purposes of section 157(b)(2)(B)." In re Federal-Mogul Global, Inc., 282 B.R. 301, 313 (D. Del. 2002). And the cases IHC cites in support of extending § 157's personal-injury-and-wrongful-death exception to a non-debtor's claim—Abbatiello v. Monsanto, No. 1:06cv266, 2007 U.S. Dist. LEXIS 19790, 2007 WL 747804 (S.D.N.Y. March 8, 2007) and Berry v. Pharmacia Corp., 316 B.R. 883, 889 (S.D. Miss. 2004)—are unpersuasive. In both of those cases the court extended the exception to a non-debtor third party because the debtor and the third party had negotiated an indemnification agreement. See Abbatiello, 2007 U.S. Dist. LEXIS 19790, 2007 WL 747804, at *2; Berry, 316 B.R. at 886. In fact, those two cases involved *the very same trio of defendants*: Monsanto Co.; Pharmacia Corp.; and Solutia, Inc. Those three defendants were "corporations formed from portions of Old Monsanto **[*15]** by a series of divisions and mergers." Abbatiello, 2007 U.S. Dist. LEXIS 19790, 2007 WL 747804, at *1. The Berry court summarized the decisions' rationale:

[G]iven the nature of the relationship and degree of identity between the debtor [and the third party], the rationale for exempting personal injury and wrongful death claims against the debtor's estate from the mandatory abstention provision applies fully to the claims against [the third party]. [A] judgment against [the third party] is, in practical effect, a judgment against [the debtor].

Case 1:13-md-02419-RWZ  Document 1150-1  Filed 05/27/14  Page 77 of 95

Berry, 316 B.R. at 889. No such indemnification agreement or entity-nexus exists in this case; a judgment against one or more of the third parties is not in practical effect a judgment against NECC. Consequently, the court abides by the plain language of the statute, finds that Ms. Wingate's claims are not "against the estate" and therefore not subject to § 157's abstention-exception, and grants Ms. Wingate's motion for mandatory abstention.

### V.

Finally, Ms. Wingate argues that the court should remand this action on equitable grounds. The court agrees and remands the action on that alternative basis.

Section 1452, which provides for the removal of claims related to bankruptcy **[\*16]** cases, also gives the court discretion to "remand such claim or cause of action on any equitable ground." § 1452(b). Here, a number of equitable considerations urge remand. First, this action proceeded in state court for more than three months before IHC removed it. Both sides had filed motions and argued them, the parties had engaged in discovery, and the state court had set the matter for trial. IHC's removal notice—which was clearly untimely and stood on dubious jurisdictional footing—put the brakes on those fast-evolving proceedings and essentially halted litigation on the merits. Second, and by the same token, the state court has invested substantial time and other resources into this matter. Third, this matter involves potentially thorny questions of state law and no discernible questions of federal law, bankruptcy or otherwise. And fourth, of the five named parties (one plaintiff and four defendants), four seek remand. Though the rules governing bankruptcy removal do not require unanimity, see In re Asbestos Litig., 271 B.R. 118, 120 n.2 (S.D.W. Va. 2001), the circumstances present here do not suggest a need to detain five parties at the behest of one. Accordingly, the court **[\*17]** grants Ms. Wingate's motion to remand on equitable grounds.

### VI.

For the reasons stated, the court grants Ms. Wingate's motion and remands this action to state court.

**ENTER:** May 10, 2013.

/s/ Samuel G. Wilson ⌄

UNITED STATES DISTRICT JUDGE

    Service: **Get by LEXSEE®**
    Citation: **2013 U.S.Dist. LEXIS 67358**
        View: Full
Date/Time: Thursday, May 22, 2014 - 7:13 PM EDT

\* Signal Legend:
🔴 - Warning: Negative treatment is indicated
🅀 - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
🅐 - Citing Refs. With Analysis Available
🅘 - Citation information available
\* Click on any *Shepard's* signal to *Shepardize®* that case.

 LexisNexis®   About LexisNexis | Privacy Policy | Terms & Conditions | Contact Us
Copyright © 2014 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 10 2013

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| PAULINE R. McFARLANE, | ) | Civil Action No. 7:13cv00146 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| INSIGHT HEALTH CORP. *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| DANA MARLENE BRADLEY, | ) | Civil Action No. 7:13cv00147 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| INSIGHT HEALTH CORP. *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| ROBERT EARL HARRIS, JR., | ) | Civil Action No. 7:13cv00148 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| INSIGHT HEALTH CORP. *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

RANDOLPH E. SMITH,                    )      Civil Action No. 7:13cv00149
                                      )
        Plaintiff,                    )
                                      )
v.                                    )
                                      )
INSIGHT HEALTH CORP. *et al.*,        )
                                      )
        Defendants.                   )


RICHARD A. WHITLOW,                   )      Civil Action No. 7:13cv00150
                                      )
        Plaintiff,                    )
                                      )
v.                                    )
                                      )
INSIGHT HEALTH CORP. *et al.*,        )
                                      )
        Defendants.                   )


BARBARA J. FILSON,                    )      Civil Action No. 7:13cv00151
                                      )
        Plaintiff,                    )
                                      )
v.                                    )
                                      )
INSIGHT HEALTH CORP. *et al.*,        )
                                      )
        Defendants.                   )


CHESTER T. KALINOSKI,                 )      Civil Action No. 7:13cv00152
                                      )
        Plaintiff,                    )
                                      )
v.                                    )
                                      )
INSIGHT HEALTH CORP. *et al.*,        )
                                      )
        Defendants.                   )

| | |
|---|---|
| **JAMES WIRT SMITH, JR.,** ) | **Civil Action No. 7:13cv00153** |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **INSIGHT HEALTH CORP.** *et al.,* ) | |
| ) | |
| **Defendants.** ) | |

| | |
|---|---|
| **TRUDY R. EPPERLY,** ) | **Civil Action No. 7:13cv00154** |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **INSIGHT HEALTH CORP.** *et al.,* ) | |
| ) | |
| **Defendants.** ) | |

| | |
|---|---|
| **ZACHARY LUCAS FOUTZ** *et al,* ) | **Civil Action No. 7:13cv00155** |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **INSIGHT HEALTH CORP.** *et al.,* ) | |
| ) | |
| **Defendants.** ) | |

| | |
|---|---|
| **RONNIE A. BROWN,** ) | **Civil Action No. 7:13cv00156** |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **INSIGHT HEALTH CORP.** *et al.,* ) | |
| ) | |
| **Defendants.** ) | |

| | | |
|---|---|---|
| RONALD T. COURTNEY, | ) | Civil Action No. 7:13cv00163 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| INSIGHT HEALTH CORP. *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| JULIAN D. HOLBROOK, | ) | Civil Action No. 7:13cv00164 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | <u>MEMORANDUM OPINION</u> |
| | ) | |
| INSIGHT HEALTH CORP. *et al.*, | ) | |
| | ) | By: Samuel G. Wilson |
| Defendants. | ) | United States District Judge |

The plaintiffs in these thirteen separate civil actions originally filed their claims in the Circuit Court for the City of Roanoke against Insight Health Corp. ("IHC"), IHC physicians, and Image Guided Pain Management. Just as in <u>Wingate v. Insight Health Corp.</u>, 7:13cv00142 (W.D. Va. May 10, 2013), the plaintiffs' state-court complaints allege that the defendants acted negligently, fraudulently, and in violation of the Virginia Consumer Protection Act by obtaining contaminated methylprednisolone acetate (an injectable steroid commonly used to treat swelling and pain) from the New England Compounding Center ("NECC") and administering it via injections that caused fungal meningitis. After the plaintiffs filed their complaints in state court, IHC removed the actions to federal court based on the claims' purported relation to NECC's ongoing Chapter 11 bankruptcy in the District of Massachusetts. Each plaintiff has filed a motion to remand his or her cause of action to state court, each arguing that IHC's removal petition was untimely and jurisdictionally deficient. Failing that, they argue, the court should

abstain from exercising related-to jurisdiction, or should remand the action on equitable grounds. IHC's codefendants, Dr. John Mathis, Dr. Robert O'Brien, and Image Guided Pain Management, have joined in the plaintiffs' motions. As in Wingate v. Insight Health Corp., the court assumes without deciding that it has related-to jurisdiction over these matters, but finds that the notice of removal in each case was untimely[1] and remands the claims on that basis. See 28 U.S.C. § 1334(a) (extending federal jurisdiction to proceedings that are "related to" cases under Title 11); § 1452 (providing for removal of claims based on related-to jurisdiction); Fed. R. Bankr. P. 9027(a)(3) (establishing the timing of removal); In re Celotex Corp., 124 F.3d 619, 629 (4th Cir. 1997) (noting that the Bankruptcy Rules apply to cases grounded on related-to jurisdiction). In the alternative, and essentially for the reasons the court stated in Wingate v. Insight Health Corp., the court abstains from hearing these matters pursuant to the mandatory abstention provision in

---

[1] See McFarlane v. Insight Health Corp., 7:13cv00146 (complaint filed in state court and e-mailed to opposing counsel December 28, 2012; removed to federal court April 8, 2013); Bradley v. Insight Health Corp., 7:13cv00147 (complaint filed in state court and e-mailed to opposing counsel December 28, 2012; removed to federal court April 8, 2013); Harris v. Insight Health Corp., 7:13cv00148 (complaint filed in state court January 7, 2013; complaint e-mailed to opposing counsel on January 8, 2013; removed to federal court April 8, 2013); Smith v. Insight Health Corp., 7:13cv00149 (complaint filed in state court and e-mailed to opposing counsel January 8, 2013; removed to federal court April 8, 2013); Whitlow v. Insight Health Corp., 7:13cv00150 (complaint filed in state court January 7, 2013; complaint e-mailed to opposing counsel on January 8, 2013; removed to federal court April 8, 2013); Filson v. Insight Health Corp., 7:13cv00151 (complaint filed in state court and e-mailed to opposing counsel December 28, 2012; removed to federal court April 8, 2013); Kalinoski v. Insight Health Corp., 7:13cv00152 (complaint filed in state court and e-mailed to opposing counsel December 28, 2012; removed to federal court April 8, 2013); Smith v. Insight Health Corp., 7:13cv00153 (complaint filed in state court and e-mailed to opposing counsel December 28, 2012; removed to federal court April 8, 2013); Epperly v. Insight Health Corp., 7:13cv00154 (complaint filed in state court and e-mailed to opposing counsel December 28, 2012; removed to federal court April 8, 2013); Foutz v. Insight Health Corp., 7:13cv00155 (complaint filed in state court January 2, 2013; complaint e-mailed to opposing counsel January 3, 2013; removed to federal court April 8, 2013); Brown v. Insight Health Corp., 7:13cv00156 (complaint filed in state court and e-mailed to opposing counsel March 1, 2013; removed to federal court April 8, 2013); Courtney v. Insight Health Corp., 7:13cv00163 (complaint filed in state court February 15, 2013; complaint e-mailed to opposing counsel February 18, 2013; removed to federal court April 8, 2013); Holbrook v. Insight Health Corp., 7:13cv00164 (complaint filed in state court and e-mailed to opposing counsel February 11, 2013; removed to federal court April 8, 2013).

28 U.S.C. § 1334(c)(2)[2] and also remands them on equitable grounds pursuant to 28 U.S.C.

§ 1452(b).  Accordingly, the court grants the plaintiffs' motions to remand.

> **ENTER**: May 10, 2013.

_____

UNITED STATES DISTRICT JUDGE

---

[2] All indications are that the state court will timely adjudicate these matters, along with Wingate v. Insight Health Corp..  In any event, the "correct inquiry is not where litigation would move the fastest, but whether it can be timely adjudicated in state court at all."  Power Plant Entm't Casino Resort Ind., LLC v. Mangano, 484 B.R. 290, 297 (D. Md. 2012).  Plaintiffs' counsel represented during oral argument that the parties had conducted a lengthy conference with the state judge and had formulated a plan in which the court would use Wingate as the lead case to address the legal and factual issues and would consolidate the rest of the cases for discovery.  The affidavits and other filings in these cases show that the state proceedings were moving quickly and that the state judge had made clear his intention to move the cases forward and had even entered partial summary judgment in a number of them. In fact, it appears that the only thing impeding timely adjudication on the merits is this detour to federal court.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | ) Master File No. 1:13-MD-2419-FDS<br>) MDL Docket No. 2419 |
| This Document Relates to:<br>  All Cases | |
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY CASES | |
| This Document Relates to:<br>All Cases | |

**ROANOKE GENTRY LOCKE PLAINTIFFS' MOTION TO RECONSIDER AND**
**MOTION TO STAY PENDING APPEAL**

The Roanoke Gentry Locke Plaintiffs ("Plaintiffs"), by counsel, appear specially and

respectfully request that this court reconsider all or part of its May 16, 2014 Memorandum of

Decision (the "Decision") and that the Court to stay any removal under the Decision until after

resolution of the appeal pending in the First Circuit Court of Appeals.  The grounds in support of

the Plaintiffs Motions are contained in the Memorandum filed herewith and previous memoranda

at Case 1:12-cv-12052-FDS, Nos. 210, Case 1:13-md-02419-FDS Nos. 157, 197, 763, 764, and

844. The Plaintiffs also request that the Court reject the proposed order tendered by the Trustee

(ECF. No. 1137) for the reasons set forth in the Memorandum filed herewith.

**EXHIBIT 2**

ROANOKE GENTRY LOCKE PLAINTIFFS

/s/ J. Scott Sexton
Of Counsel

J. Scott Sexton, Esq. (VSB No. 29284)
Anthony M. Russell, Esq. (VSB No. 44505)
Charles H. Smith, III (VSB No. 32891)
H. David Gibson (VSB No. 40641)
Benjamin D. Byrd (VSB No. 76560)
Daniel R. Sullivan (VSB No. 81550)
GENTRY LOCKE RAKES & MOORE, LLP
10 Franklin Road, S.E., Suite 800
P. O. Box 40013
Roanoke, Virginia 24022-0013
(540) 983-9300
FAX (540) 983-9400
sexton@gentrylocke.com
russell@gentrylocke.com
smith@gentrylocke.com
gibson@gentrylocke.com
byrd@gentrylocke.com
sullivan@gentrylocke.com

*Counsel for Roanoke Gentry Locke Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 22, 2014, I electronically filed the foregoing with the Clerk

of the Court, using the CM/ECF system, which then sent a notification of such filing (NEF) to all

counsel of record.

/s/ J. Scott Sexton

2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | ) Master File No. 1:13-MD-2419-FDS<br>) MDL Docket No. 2419<br>) |
| This Document Relates to:<br>  All Cases | )<br>)<br>) |
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY CASES | )<br>)<br>) |
| This Document Relates to:<br>All Cases | )<br>)<br>) |

## ROANOKE GENTRY LOCKE PLAINTIFFS' MEMORANDUM: (1) IN RESPONSE TO QUESTIONS POSED BY COURT BY MEMORANDUM OF DECISION DATED MAY 16, 2014 [ECF NO. 1131]; (2) IN OBJECTION AND RESPONSE TO TRUSTEE'S PROPOSED ORDER [ECF NO. 1137]; (3) IN SUPPORT OF MOTION TO RECONSIDER; AND (4) IN SUPPORT OF MOTION TO STAY PENDING APPEAL

The Roanoke Gentry Locke Plaintiffs ("Plaintiffs") appear specially for the purposes of responding to questions posed by the Court in its May 16, 2014 Memorandum of Decision (the "Decision"), objecting to the Trustee's proposed order in relation thereto, requesting the Court to reconsider certain aspects of the Decision; and moving the Court to stay any removal under the Decision until after an appeal. In so doing, the Plaintiffs focus the Court's attention on certain limited issues, without waiver of previously asserted legal positions and arguments directly or indirectly rejected by the Decision. Those previous arguments and related Memoranda are, however, incorporated by reference. [Case 1:12-cv-12052-FDS, Doc. No. 210, Case 1:13-md-02419-FDS Doc. Nos. 157, 197, 763, 764, 844].

## I.    Introduction

### Response to Court's Inquiry and Motion to Reconsider

The Decision asks that counsel inform the court regarding any steps necessary to effectuate the transfer of cases pursuant to the court's opinion.  For purposes of this response to that inquiry and their related Motion to Reconsider, the Plaintiffs re-direct the Court's attention only to 2 issues which are illuminated by the Court's Decision:

1.   28 U.S.C. § 157(b)(5) is a venue statute.  Under the Decision, it is being used as a mechanical removal tool. When applied to state court proceedings, it is subject to the removal procedures set forth in 28 U.S.C. § 1452 (only a party may so remove); and Fed. R. Bankr. P. 9027 ("Rule 9027"), which requires that such notice of removal must be filed within 30 days.  The procedures set forth in Rule 9027 must be followed to notice removal of any cases pending in state court;

2.   Here, the time deadlines under Rule 9027 have long passed for the vast majority of the Roanoke Gentry Locke Cases.  Thus, those time-barred cases may not be removed under the plain terms of Rule 9027, regardless of whether the removal is made under 28 U.S.C. § 1452 or 28 U.S.C. § 157(b)(5).

### Objection and Response to Trustee's Proposed Order

There are notable problems with the Trustee's proposed order: (1) it bypasses the procedures of Rule 9027; (2) it provides no specific time deadlines for the removal (ECF. No. 1137, ¶3); (3) it includes the Wingate case which was long ago dismissed in Virginia (Id., ¶4, Ex. B); (4) it violates any number of rights and procedures (including Due Process under the Constitution) by purporting to enjoin the Roanoke Plaintiffs and their counsel "to take any and all actions" without any motion, hearing or proof of the need for such extraordinary relief (Id., ¶

2

5); and (5) it fails to allow the state courts an opportunity to handle ministerial tasks (such as entering orders denying previously ruled upon motions to dismiss by the defendants).

### Motion to Stay

The Plaintiffs also request that this court stay any order removing and transferring these cases pending resolution of the appeal to the First Circuit.

**II.    Even as this Court finds 28 U.S.C. § 157(b)(5) applicable for venue selection of cases against non-debtors, removal of the majority of the Roanoke Gentry Locke Cases is precluded under Fed. R. Bankr. P. 9027:**

Under the analysis of the Trustee's Motion as accepted by the Decision, this Court asserts subject matter jurisdiction over these Roanoke Plaintiffs pursuant to 28 U.S.C. § 1334. The removal process for cases asserting jurisdiction under 28 U.S.C. § 1334 is contained in 28 U.S.C. § 1452.[1] Rule 9027 governs any bankruptcy-related removal from state court, specifying the form, timing and notice required for such removals.  For personal injury and wrongful death cases against the debtor, 28 U.S.C. § 157(b)(2)(B) specifically prohibits trial of such cases in the bankruptcy court. So, 28 U.S.C. § 157(b)(5) provides the special venue[2] tools that allow the home district court for the bankruptcy to then transfer venue for trial to either itself or the district in which the claim arose. This is substantially different from typical practice under 28 U.S.C. § 1412 that vests venue selection authority in the removal court.[3]

Here, the Trustee's Motion and the Decision purport to use 28 U.S.C. § 157(b)(5) as the tool for both the mechanical removal and the venue designation (which would otherwise be

---

[1] "A party may remove any claim or cause of action in a civil action … to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title."

[2] *Stern v. Marshall*, 131 S. Ct. 2594, 2606 - 2607 (2011) (section 157(b)(5) is just a venue provision).

[3] See, e.g., In Re Vencor, Inc., 284 B.R. 79, 84 (Bankr. D. Del. 2002) ("Sections 1404 and 1406 do not permit one court to transfer venue of a case to itself from another court.").

3

accomplished by "transfer" or the case from the local district court to the bankruptcy home

district court). For all the reasons noted in previous filings, the Plaintiffs object to this use and

application of § 157(b)(5).[4] However, setting aside those fundamental disagreements, there is no

denying that the relief requested by the Trustee and granted by the Decision is <u>removal</u>. As such,

even if § 157(b)(5) is properly seen as a removal tool for cases against only non-debtors, such

removal must comply with Rule 9027. Therefore, in response to the Court's request that counsel

inform the Court as to steps necessary for effectuating the Decision, those steps are precisely set

forth in Rule 9027.

Rule 9027 also sets out time limits for removing bankruptcy-related cases. For cases such

as the Plaintiffs', filed <u>after</u> the bankruptcy petition, the deadline is the shorter of 30 days after

---

[4] See In re United States Lines, Inc., 128 B.R. 339, 341 (S.D.N.Y. 1991)("[I]t is apparent that
subsection b(5) is meant to designate which court, as between the bankruptcy court and the
district court, should hear personal injury claims against the debtor, and, secondarily, to identify
which court should determine the venue for such claims. Nothing in either the language of the
statute or its legislative history indicates that Congress intended to extend the district court's
removal power."); In Re Dow Corning Corp., 1995 Bankr. LEXIS 1123 at *15 (Bankr. E.D.
Mich. August 9, 1995)( "What nowhere appears [in 28 U.S.C. § 157] is the word 'transfer.' For
the reasons which follow, I believe that this omission was intended since the statute was meant
solely to allocate the responsibility of liquidating a qualifying claim filed in the bankruptcy case
between the bankruptcy and district judges."); Id.("it is obvious that § 1452(a) is directed at non-
bankruptcy proceedings, and that it provides a mechanism to transfer those proceedings to the
appropriate district court... Section 157(b)(5), on the other hand, makes no allusion to the forum
in which the claim is being asserted. Nor does that statute say anything about claims being
'transferred' or 'removed' to the bankruptcy forum."); Kadel v. Thompson, 84 B.R. 878, 881
(N.D. Ga. 1988)("Section 157(b)(5) was not intended to expand federal court jurisdiction nor
strip state court jurisdiction but rather was intended to specifically limit what the bankruptcy
court shall have the power to hear."); In re White Motor Credit, 761 F.2d 270 (6th Cir.
1985)(Section 157(b)(5) was not intended to confer jurisdiction on federal district courts to hear
cases that they would not otherwise have the power to hear); Kinder v. Wisconsin Barge Line,
Inc., 69 B.R. 11, 13 (E.D. Mo. 1986)( "This court...concludes that...§157(b)(5) should not be
read to divest state courts of jurisdiction over personal injury claims already pending before
them...Section 157 sets forth the parameters of jurisdiction of the newly-established bankruptcy
courts; subsection (b)(5) delimits the scope of jurisdiction as between those courts and Article III
courts...without stripping state courts of traditional jurisdictional powers.").

4

receipt of a copy or service of the state court complaint. *Fed. R. Bankr. P. 9027(a)(3)*.[5] A longer

period is provided for cases pending before the bankruptcy is commenced. *Fed. R. Bank. P.*

*9027(a)(2)*. Here, all of the 18 Roanoke Gentry Locke Plaintiffs filed their state court cases after

the NECC bankruptcy petition (December 21, 2012); and 12 filed and served their state court

cases well before February 20, 2013.[6]  Four[7] of the remaining 6 cases were filed and served in

March 2013; one[8] was filed and served in May 2013; and one[9] was filed in March but served in

June, 2013.

The Trustee is very sophisticated and understands the time deadlines for removal of state

court cases under bankruptcy jurisdiction. Accordingly, on March 20, 2013, he filed an

Emergency Motion for Entry of an Interim Order in the bankruptcy court to extend the Rule

9027 deadlines ("Trustee's Extension Motion"). (Case 12-19882 ECF No. 141). As to post-

petition actions like the Roanoke cases, the Trustee sought only an order extending the removal

deadline on all cases filed after the Petition date (December 21, 2012) *"as to which the period*

*for removal ha[d] not expired"* as of March 21, 2013. (Id. at 1). The Trustee had no choice but

to phrase his request in this manner because Fed. R. Bankr. P. 9006(b)(1) prohibits a court from

---

[5] Rule 9027(a)(3) states: "If a claim or cause of action is asserted in another court after the
commencement of a case under the Code, a notice of removal may be filed with the clerk only
within the shorter of (A) 30 days after receipt, through service or otherwise, of a copy of the
initial pleading setting forth the claim or cause of action sought to be removed, or (B) 30 days
after receipt of the summons if the initial pleading has been filed with the court but not served
with the summons."

[6] References to 10 of these were presented in response to the Trustee's Motion which originally
named those 10 cases as the object of the motion. (See discussion at ECF No. 157, at 11; and
previously filed Declarations of J. Scott Sexton, ECF Nos. 110, 112-114, 116-117, 119-121, 123-
124). The facts regarding two of the twelve not included therein (Courtney and Holbrook) are set
forth in ECF No. 140-1, Judge Wilson Opinion and Order on non-Wingate cases, at 5, fn. 1.

[7] Brown, Irace (dec.), Shuck, and White.

[8] Artis.

[9] Spicer (dec.).

entering such an extension order after the time has expired, unless there is a specific motion establishing excusable neglect.

The bankruptcy court granted the Trustee's Extension Motion on March 21, 2013, extending the removal deadlines on all post-petition actions for which the removal period had not yet expired. (Case 12-19882 ECF No. 142). Those Interim Orders have since been extended on four subsequent occasions. (Case 12-19882 ECF No. 171, 270, 600, and 702). (Case 12-19882 ECF No. 698). As with previous motions, the Trustee's last Extension Motion limited the relief sought to only post-petition actions for which the period for removal had not already expired.

Accordingly, removal of 12 of the cases[10] is plainly time-barred under Rule 9027 --- even if the Trustee has authority to request and/or execute such removals. If such removal is to be executed by any other party, such actions are time barred as to all 18 cases. This Court should not issue any order purporting to remove or transfer the 12 time-barred Roanoke cases in violation of or the requirements of Rule 9027.[11] Doing so would not only be improper, but also a likely violation of the Anti-Injunction Act. 28 U.S.C. § 2283. Moreover, the Court should reconsider and revise its Decision so as to all cases in which the time has expired for removal under bankruptcy-related jurisdiction.

**III.    The Trustee's proposed order (ECF No. 1137) should not be entered:**

The problems with the Trustee's proposed order are numerous. At a core level, it wholly bypasses the procedures of Rule 9027. It is also alarming in its effort to convert his removal and transfer motion into an injunction. The Trustee's proposed paragraph 5 would enjoin "plaintiffs,

---

[10] Bradley, Courtney, Epperly, Filson, Foutz, Harris, Holbrook, Kalinoski, McFarlane, J. Smith, R. Smith, and Whitlow.

[11] So too, 11 U.S.C. § 105(a) (equitable powers clause) does not allow a court to disregard the plain language and meaning of bankruptcy statutes and rules. *Official Comm. Of Equity Sec. Holders v. Mabey*, 832 F.2d 299, 302 (4th Cir. 1987).

defendants, and their counsel" to "take any and all actions necessary to immediately effectuate the transfer ..."  Yet, the underlying motion says nothing about requesting such injunctive relief. (ECF Nos. 37, original motion, and 732, renewed motion). The Trustee's original proposed order (ECF No. 38-3) likewise contains no language purporting to impose such obligations on the plaintiffs, defendants, or their counsel.[12] The Trustee has further never purported to argue or show the extraordinary requirements of such injunctive relief in this case (e.g., no adequate remedy at law, etc.).  Obviously, due process requires substantially more respect for the parties and their counsel than to have such injunctive relief granted without motion, hearing, or evidence supporting it.

Similarly, the proposed injunctive language of the Trustee's order contains absolutely no detail or limitations on the requirements imposed on the parties and their counsel.  Rule 65(d) requires that "every" order granting an injunction must: "(A) state the reasons why it is issued; (B) state its terms specifically; and (C) describe in reasonable detail – and not by referring to the complaint or other document – the act or acts restrained or required." F.R.C.P. 65(d). No such detail is offered by the Trustee's proposed order.

The Trustee's order also fails to allow room for any pre-transfer ministerial acts necessary at the state court level to protect the interests of the plaintiffs.  Here, the 19 cases have identical substantive allegations, except for those portions relating to the individual medical conditions of the respective plaintiffs.  Accordingly, hearings on the defendants' demurrers (motions to dismiss) and other pre-trial proceedings were routinely heard together.  In particular, the hearings on the demurrers were docketed on these cases for argument on the same day.

---

[12] Notably, even though the Trustee has responded to any such suggestions by the Plaintiffs with incredulity, his original proposed order also would have expressly ordered that these cases were removed and transferred "to this Court for all purposes, including trial ..." (ECF No. 38-3, ¶2).

7

Thereafter, the circuit court issued a substantial 25 page opinion denying all but one point raised by the defense --- and allowing leave to amend to make the easily corrected problem. Similarly, issues relating to the defendant's request to withdraw critical responses to requests for admission were already resolved by the Roanoke court, but require orders. However, because the focus was on the "lead" Wingate case, the orders in the other cases were never presented for entry. Those are now before the Roanoke Circuit Court; but, a presentment hearing is required under Virginia procedure when all parties do not endorse the proposed order.

Therefore, without waiving any objections to the Decision or the removal and transfer generally, the Plaintiffs request that any removal and transfer order should allow for the Roanoke City Circuit Court to address these housekeeping matters before removal. Otherwise, defendant Insight has advised that it intends to ask this court to revisit the substance of all of those prior rulings. That would be unfair to the plaintiffs and would unnecessarily burden this court. Since any "related to" jurisdiction by this court is not exclusive under 28 U.S.C. § 1334(b), there appears to be no reason why an order could not allow for this type of flexibility. This is also consistent with the Trustee's underlying motion that seeks removal and transfer that "will not affect any substantive rights that the plaintiffs and other non-debtor parties have or assert in the Pending Actions." (ECF No. 37, at 2).

Of less significance, there is a typographical error in the list of cases attached to the Trustee's order. That list of cases includes the Wingate case which was dismissed from the Roanoke court's docket long ago.

## IV. The Plaintiffs request that this court stay the removal and transfer of these cases pending appeal.

The Plaintiffs currently have an appeal pending in the First Circuit Court of Appeals, arising from Judge Saylor's original Memorandum and Order (ECF No. 176). That appeal

focuses largely on the denial of the Plaintiff's mandatory abstention motion.  The Decision declines to revisit that prior ruling.  Accordingly, it is not entirely clear whether it is necessary to notice a new appeal from any ultimate order entered on the Decision, or proceed with only the existing appeal. Either way, the briefing schedule for the present appeal has been postponed repeatedly in anticipation of this court's Decision.  Now that it has been issued, the Plaintiffs anticipate filing their initial brief in the very near future.

As to the merits of that appeal, the Plaintiffs are unaware of any court that has extended the § 157(b)(4) exception to mandatory abstention to parties unrelated to the debtor.[13]  In this sense, Judge Saylor's Memorandum and Order appears to represent a previously unknown high-water mark for the interpretation of 28 U.S.C. § 157(b)(4).  Also, the District Court for the Western District of Virginia  has considered this precise issue in these cases, finding exactly opposite to Judge Saylor's Memorandum and Order. *Wingate v. Insight Health Corp.*, 2013 U.S. Dist. LEXIS 67358 at \*15 (W.D. Va. May 10, 2013) (incorporated by reference in orders pertaining to these cases at ECF No. 140-1). Practically anyone would have to at least agree that this determinative issue is at least *highly* unsettled. And, it is also of paramount importance to the rights of the Plaintiffs.  Accordingly, the Plaintiffs request that this court stay the effectiveness of any removal and transfer order pending the First Circuit Appeal.

## V.    **Conclusion**

The Plaintiffs ask that the Court grant the relief requested herein for the reasons stated and for those previously briefed to this Court.

---

[13] See, *Berry v. Pharmacia Corp.*, 316 B.R. 883, 889 (S.D. Miss. 2004); and *Abbatiello v. Monsanto*, 2007 U.S. Dist LEXIS 19790 (S.D.N.Y. March 8, 2007) (both cases involving a trio of defendants formed from portions of Old Monsanto and with cross indemnification contracts making a lawsuit against one effectively the same as a lawsuit against the other).

ROANOKE GENTRY LOCKE PLAINTIFFS

/s/ J. Scott Sexton
Of Counsel

J. Scott Sexton, Esq. (VSB No. 29284)
Anthony M. Russell, Esq. (VSB No. 44505)
Charles H. Smith, III (VSB No. 32891)
H. David Gibson (VSB No. 40641)
Benjamin D. Byrd (VSB No. 76560)
Daniel R. Sullivan (VSB No. 81550)
GENTRY LOCKE RAKES & MOORE, LLP
10 Franklin Road, S.E., Suite 800
P. O. Box 40013
Roanoke, Virginia 24022-0013
(540) 983-9300
FAX (540) 983-9400
sexton@gentrylocke.com
russell@gentrylocke.com
smith@gentrylocke.com
gibson@gentrylocke.com
byrd@gentrylocke.com
sullivan@gentrylocke.com

*Counsel for Roanoke Gentry Locke Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2014, I electronically filed the foregoing with the Clerk

of the Court, using the CM/ECF system, which then sent a notification of such filing (NEF) to all

counsel of record.

/s/ J. Scott Sexton

10