**Exhibit A**

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MASSACHUSETTS
### EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| NEW ENGLAND COMPOUNDING PHARMACY, INC., | Case No. 12-19882 (HJB) |
| Debtor. | |

## CHAPTER 11 TRUSTEE'S MOTION TO APPROVE SETTLEMENT AGREEMENT WITH THE TENNESSEE BOARD OF PHARMACY AND TENNESSEE DEPARTMENT OF HEALTH, AND REQUEST TO LIMIT NOTICE

Paul D. Moore, the duly appointed chapter 11 Trustee (the "Trustee") of New England Compounding Pharmacy, Inc. (the "Debtor" or "NECC"), hereby moves this Court (this "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A, approving a Proposed Settlement Agreement and Order (the "Settlement Agreement") by and among, the Trustee, Barry J. Cadden ("Mr. Cadden"), the Division of Health Related Boards of the Tennessee Department of Health (the "Division") and the Tennessee Board of Pharmacy (the "Pharmacy Board"), and requesting that this Court limit notice of this Motion consistent with the notice procedures requested by the Trustee in connection with certain other motions pending before this Court. In support of this Motion, the Trustee respectfully states as follows:

### PRELIMINARY STATEMENT

1.      If approved and consummated, the Settlement Agreement will finally resolve parallel administrative proceedings through which the Pharmacy Board and the Division seek civil penalties against NECC and Mr. Cadden for alleged violations of certain Tennessee statutes and regulations governing the practice of pharmacy and will liquidate claims that otherwise would have required (likely expensive and protracted) litigation.    Most importantly, the

Settlement Agreement subordinates the Pharmacy Board and Division's allowed claim to those of, *inter alia*, the individuals who have suffered death, grievous injuries and illnesses from the administration of allegedly contaminated medications compounded by NECC, resolving the Tennessee proceedings without diminishing the funds available to those persons. Accordingly, the Trustee submits that the proposed settlement is fair and equitable and decidedly in the best interests of NECC, its creditors and its estate. Similarly, the Pharmacy Board and the Division sought to impose substantial fines personally against Mr. Cadden which would have directly impacted his ability to fund his proposed settlement with the Trustee. After reviewing Mr. Cadden's pending settlement agreement and satisfying themselves that Mr. Cadden has committed substantial resources to the settlement with the Trustee, the Pharmacy Board and the Division agreed, in the Settlement Agreement with the Trustee, to release their claims against Mr. Cadden rather than impair the Trustee's settlement with Mr. Cadden or otherwise divert from that settlement sums which otherwise would be paid to individuals who suffered those deaths and injuries.

## JURISDICTION AND VENUE

2.   This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory predicates for the relief requested herein are Bankruptcy Code Sections 105 and 363 and Federal Rule of Bankruptcy Procedure 9019.

## BACKGROUND

3.   On December 21, 2012 (the "Petition Date"), NECC filed a voluntary petition for relief pursuant to chapter 11 of the United States Bankruptcy Code.

4.   On January 24, 2013, this Court entered an order [Docket No. 92] appointing a chapter 11 trustee pursuant to section 1104(a) of the Bankruptcy Code.

2

5.      On January 25, 2013 (the "Appointment Date"),  the United States Trustee (the "UST") filed an Application for and Certificate of Appointment of Chapter 11 Trustee [Docket No. 98] (the "UST Application") requesting the appointment of the Chapter 11 Trustee.  The UST Application was granted by order of this Court [Docket No. 99] entered the same day. Thereafter, on February 1, 2013, the Chapter 11 Trustee filed his Verified Statement Pursuant to Rule 2007.1 of Paul D. Moore in Support of Application for and Certificate of Chapter 11 Trustee [Docket No. 111] (the "Statement").

## A.      The Debtor's Prepetition Operations

6.      Prior to the Petition Date, NECC operated as a compounding pharmacy. Beginning in September 2012, reports began to surface of several patients who contracted fungal meningitis (the "Outbreak") after receiving injections of preservative-free methylprednisolone acetate ("MPA") compounded by NECC.  An investigation was initiated by the Massachusetts Department of Public Health ("MDPH") and, two days later, on September 26, 2012, NECC issued a voluntary recall of three suspect lots, containing 17,646 doses of MPA that NECC had distributed to over 14,000 patients.  The Centers for Disease Control and Prevention ("CDC") reported that, as of October 23, 2013, 64 people had died and 751 individuals had fallen ill.[1] Among all the states affected, Tennessee suffered the second highest number of casualties, with 16 deaths and more than 150 reported illnesses.  *Id.*

7.      Upon information and belief, on October 1, 2012, the MDPH issued a formal quarantine notice pursuant to M.G.L. ch. 94C, §§ 13 & 189A, and M.G.L. ch. 112, §§ 30 & 42A, requiring NECC to preserve all products used to compound MPA, including products returned

---

[1]      Reported at http://www.cdc.gov/HAI/outbreaks/meningitis-map-large.html#casecount_table.  The CDC has not updated the case counts since October 23, 2013 and indicates that further updates to the case counts are not anticipated.

from pharmacies.

8.      Upon information and belief, in response to October 2, 2012 findings from the United States Food and Drug Administration ("FDA") and the MDPH, the Massachusetts Board of Registration in Pharmacy (the "MA Board") voted to request a voluntary surrender of NECC's pharmacy license.  NECC surrendered its license effective at noon on October 3, 2012 and further instituted a voluntary recall of all of its intrathecal medications, which are designed for injection near the spinal cord or brain.

9.      The FDA and the CDC recommended that all health care providers cease using, and remove from inventory, any NECC products.  At the behest of the MDPH, NECC issued an immediate recall of all of its products, and Mr. Barry Cadden (president and a director of NECC, who served as Head Pharmacist and Director of Pharmacy at NECC prior to October 2012) and Mr. Glenn Chin (a pharmacist and former employee of NECC) surrendered their Massachusetts pharmacist licenses pending the outcome of the investigation.

10.     Proceedings were soon commenced in other states, including Tennessee, to revoke the licenses of, or otherwise take action against, NECC, Mr. Cadden and other (former) NECC employees.  On October 12, 2012, NECC voluntarily surrendered its Tennessee pharmacy license.  Mr. Cadden followed suit shortly thereafter, surrendering his Tennessee pharmacist license on October 20, 2012.  The Pharmacy Board approved the surrender of their licenses at specially-called meetings on October 15 and 23, 2012, respectively.

11.     Shortly prior to the Petition Date, NECC suspended the operation of its business. NECC also surrendered its Massachusetts pharmacy license and laid off most of its employees. Mr. Cadden agreed at that time to a voluntary surrender of his Massachusetts pharmacist license. There are ongoing proceedings at the MA Board to revoke the licenses of, or otherwise take

4

action against, Mr. Cadden, Mr. Chin and others. The MDPH also has temporarily barred former NECC pharmacists from practicing pharmacology.

12.    On December 11, 2012, the Division and the Pharmacy Board, through the Office of General Counsel of the Tennessee Department of Health, commenced administrative proceedings against both NECC and Mr. Cadden seeking civil penalties for alleged violations of Tennessee regulations and statutes in connection with the Outbreak.

13.    Upon information and belief, there remain ongoing criminal investigations involving some or all of the former owners and employees of NECC. Additionally, upon information and belief, multiple state regulatory agencies are seeking to compel former NECC pharmacists to surrender, permanently, their licenses. The proposed Settlement Agreement seeks to resolve the claims asserted by the Division and the Pharmacy Board against the Trustee and Mr. Cadden on account of the alleged regulatory and statutory violations.

14.    In addition to the criminal investigations and regulatory proceedings, the Outbreak resulted in potentially tens of thousands of claims from personal injury claimants against NECC and others. NECC claims it initiated this Chapter 11 case in response to the volume and wide geographic distribution of cases it confronted. As of March 5, 2014, 322 separate lawsuits have been joined in the multi-district litigation pending in the United States District Court for the District of Massachusetts, and are pending before Judge Zobel ("MDL Action").[2] In addition, prior to the January 15, 2014 bar date for filing of claims in this case, some 3,300 claims asserting injury from injections of MPA have been submitted to the Trustee's claims and noticing agent, Donlin, Recano & Co. (generally, collectively with the pending lawsuits, the "Civil Actions").

---

[2]    Case No. 1:13-md-02419-FDS, *In re New England Compounding Pharmacy, Inc. Products Liability Litigation.*

DM3\2909164.2

15.     The Trustee hopes to achieve a global settlement of the Civil Actions through a chapter 11 plan that would distribute estate assets to personal injury claimants and other creditors.  The Trustee has recently filed motions seeking this Court's approval of the proposed settlement of estate claims against certain NECC insiders, NECC's insurers, and NECC's landlord and its insurer, which, if approved, are projected to bring approximately $100 million into the estate.  This represents an important first step in the plan process.  Approval of the Settlement Agreement would facilitate the Trustee's efforts by resolving claims against the estate while preserving the funds that will ultimately be made available to victims of the Outbreak.

## PROPOSED COMPROMISE

16.     The Trustee, in consultation with the Official Committee of Unsecured Creditors (the "Committee") and the  Plaintiffs' Steering Committee established in the MDL Action (the "PSC"), has entered into the Settlement Agreement to resolve the proceedings commenced by the Division and the Pharmacy Board against NECC's bankruptcy estate and Mr. Cadden.  A copy of the Settlement Agreement is attached hereto as Exhibit B.  The essential terms of the Settlement Agreement, which is subject to entry of an order approving this Motion, are summarized as follows:[3]

- Permanent Surrender of Licenses:  Any and all licenses granted by the Pharmacy Board to NECC or Mr. Cadden shall be deemed to be voluntarily and irrevocably surrendered.

- Resolution of Proceedings:  Any and all proceedings against NECC and Mr. Cadden and available to the Division, the Pharmacy Board or the State of Tennessee relating to the subject matter of the currently pending administrative proceedings, shall be, and are, conclusively resolved pursuant to the terms of the Settlement Agreement.

---

[3]     The description of the Settlement Agreement in this Motion is only a summary.  The Settlement Agreement controls in all instances to the extent the summary is incomplete, inaccurate or conflicts with the Settlement Agreement.  Parties in interest should review the Settlement Agreement in its entirety as to all of its terms and conditions.

DM3\2909164.2

- <u>Allowed Claim</u>:  In full satisfaction of any and all fines, penalties or assessments available to the Pharmacy Board against NECC or Mr. Cadden, the Pharmacy Board shall receive an allowed general unsecured claim in the amount of $5,000,000 (the "<u>Settlement Amount</u>"), **which claim shall be subordinate, for purposes of voting and distribution, to the claims of tort claimants and other general unsecured creditors of NECC**.  Additionally, to the extent other states assert claims under their applicable regulatory schemes and such claims are settled for an allowed general unsecured claim subject to the same subordination as described in the immediately preceding sentence, such claims will be satisfied from the Settlement Amount on a pro rata basis.[4]

- <u>Dismissal of Administrative Proceedings</u>:  The administrative proceedings commenced by the Pharmacy Board and the Division, which currently remain pending, shall be dismissed with prejudice.  Each party shall bear its own costs.

## ARGUMENTS AND AUTHORITIES

A.   **Standard for Determining Motion**

17.   Pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure, this Court has authority to approve a compromise or settlement.  *See* Fed. R. Bankr. P. 9019(a).  The decision to approve a settlement or compromise lies within the discretion of the bankruptcy court, and is warranted when the settlement is found to be reasonable and fair in light of the particular circumstances of the case.  *See Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968).  In evaluating whether a settlement is fair and reasonable, a bankruptcy court need not be convinced that the settlement is the best possible compromise.  Rather a settlement or compromise should be approved as fair and reasonable as long as it does not "fall below the lowest point in the range of reasonableness."  *In re Healthco Int'l, Inc.*, 136 F.3d 45, 51 (1st Cir. 1998) (quoting *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983)).  The Trustee is better situated than is any individual creditor to determine whether a settlement is in the best interests of the estate, and his informed judgment,

---

[4] The Trustee believes that the only such claim was filed by the Tennessee authorities.

7

after reasonable investigation, to settle and avoid the inherent risks, delays and expense of prolonged litigation is entitled to "wide latitude" from an inquiring court. *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 212 F.3d 632, 635 (1st Cir. 2000) (citing *Hicks, Muse & Co. v. Brandt (In re Healthco Int'l., Inc.)*, 136 F.3d 45, 50 – 52 (1st Cir. 1998); *Kowal v. Malkemus (In re Thompson)*, 965 F.2d 1136, 1145 (1st Cir. 1992)).

18.     When evaluating a proposed compromise, a bankruptcy court must assess and balance the value of the claim that is being compromised against the value to the estate by virtue of the compromise proposed.  Bankruptcy courts consider the following factors in determining whether the proposed settlement is in the best interest of the debtor's estate:  (1) the probability of success in the litigation being compromised; (2) the difficulties to be encountered in the matter of collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay in pursuing the litigation; and (4) the paramount interests of the creditors, and a proper deference to their views.  *Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, supra; Jeffrey v. Desmond*, 70 F.3d 183, 185 (1st Cir. 1995); *see also In re Martin*, 91 F.3d 289 (3d Cir. 1996).

**B.      The Proposed Compromise is Fair and Reasonable and Should be Approved**

19.     The Trustee submits that the proposed compromise embodied in the Settlement Agreement is fair and reasonable and should be approved.  The Settlement Agreement is the product of good faith, arm's-length negotiations, resolves pending administrative proceedings against NECC, and provides certainty as to the amount of the claim to be allowed against NECC's estate.  It also resolves competing claims against Mr. Cadden which likely would have impaired his proposed settlement with the Trustee or, in any event, significantly reduced the amount available to Mr. Cadden to fund a settlement with the Trustee for the benefit of NECC's creditors.

8

20.     In considering the specific *TMT* and *Jeffrey v. Desmond* factors, and the circumstances of this case, the Trustee submits that the first factor (likelihood of success on the merits) and fourth factor ("paramount" interests of creditors) weigh particularly strongly in support of the proposed settlement.[5]   The Trustee believes that a substantial risk exists that NECC could incur penalties or fines in an amount that exceeds the Settlement Amount if he were to litigate the claims asserted by the Pharmacy Board and the Division.   Moreover, the Trustee is mindful that creditors' interests are "paramount," particularly in a case such as this, in which the vast majority of creditors are personal injury claimants who have suffered grievous harm and have incurred and continue to incur substantial medical expenses.   The Settlement Agreement is undoubtedly in the best interest of creditors, as it resolves claims against the NECC estate without diminishing the funds available for distribution to victims or diluting the distribution of such funds, and indeed, enhancing them by releasing competing claims against Mr. Cadden. Absent the Settlement Agreement, any claim for amounts awarded to the Division or the Pharmacy Board via administrative proceedings or other litigation would rank *pari passu* with the claims of unsecured creditors, and accordingly would share on a pro rata basis in any distributions made on account of all other general unsecured claims.

21.     The contemplated settlement also eliminates the substantial risk to the estate that the pending administrative proceedings, as well as any ongoing criminal investigations or civil litigation, may have collateral consequences that reduce, if not eliminate, the estate's ability to recover on various insurance policies.   NECC's insurers already have raised difficult coverage

---

[5]     The second factor (difficulties of collection) is not as relevant here, as the Trustee is not seeking to collect funds, but rather to minimize the diminution of estate assets an dilution of distributions to personal injury claimants on account of regulatory claims such as those asserted by the Pharmacy Board and the Division. Further, the Pharmacy Board and Division have agreed to subordinate the allowed claim that they would receive pursuant to the Settlement Agreement, thereby agreeing that they shall only receive a distribution on account of such claim only if personal injury claimants and other general unsecured creditors have recovered in full.

issues that might reduce or eliminate the insurers' obligations under the applicable policies. The Trustee has reached agreements, subject to this Court's approval, pursuant to which NECC's insurers will pay in excess of $25 million in the aggregate to NECC's bankruptcy estate and settle the coverage disputes. The Settlement Agreement eliminates any coverage risks that may otherwise be posed by the pending administrative proceedings.

22.    Finally, as noted above, the Settlement Agreement was reached in consultation with the Committee and the PSC, and the Committee and the PSC support this Motion and assent to the requested relief. Thus, the Trustee's "proper deference" to the views of the creditors further supports the determination that the contemplated settlement is fair and reasonable and that this Motion should be allowed. *See Jeffery v. Desmond, supra.*

### REQUEST TO LIMIT NOTICE

23.    As noted above, the Trustee has recently filed motions seeking this Court's approval of the proposed settlement of estate claims against certain NECC insiders, NECC's insurers, and NECC's landlord and its insurer. If approved, the proposed settlements are projected to bring approximately $100 million into the NECC estate, representing an important first step in the process through which the Trustee intends to confirm a plan providing for meaningful distributions to personal injury claimants and other creditors.

24.    In connection with such motions, the Trustee also filed the Chapter 11 Trustee's Motion for Order Designating Manner of Service of 9019 Motions and Approving Form and Manner of Service of Notice of Hearings on 9019 Motions [Docket No. 715] (the "Service Motion"). Pursuant to the Service Motion, the Trustee has requested that this Court limit the administrative and financial burden on the estate by permitting the Trustee to serve full copies of the lengthy settlement motions and related agreements by electronic ECF service only, and to

DM3\2909164.2

serve notice of the motions and the hearing thereon upon all known creditors, and certain other specified parties, by mail.[6] The Trustee respectfully requests that this Court limit service of this Motion on the same terms requested in the Service Motion. This Court has scheduled a hearing on the Service Motion for May 30, 2014 at 10:00 a.m. EDT. Accordingly, the Trustee requests that his request to limit notice of this Motion (but not the substantive motion to approve the Settlement Agreement) also be heard at that time.

## CONCLUSION

25.     In summary, the Trustee submits that approval of the Settlement Agreement is both beneficial to the estate in resolving the administrative proceedings and appropriate as reflecting the paramount interest of the Debtor's creditors by prioritizing the claims of tort claimants and other general unsecured creditors. The Trustee, therefore, requests that this Court enter an Order in the form attached hereto approving the Settlement Agreement. In an effort to reduce the costs incurred by the estate, thereby preserving funds for ultimate distribution to creditors, the Trustee also requests that this Court limit notice of this Motion as requested herein, and consider such request together with the Trustee's Service Motion at the May 30, 2014 hearing.

**WHEREFORE**, the Trustee respectfully requests that this Court (i) approve this Motion and the Settlement Agreement, attached hereto as Exhibit B, and grant the related relief requested herein, by entering an order substantially in the form attached hereto as Exhibit A, (ii) hear the Trustee's request to limit notice of this Motion at the May 30, 2014 hearing, (iii) limit notice of this Motion on the same terms as set forth in the Trustee's previously filed

---

[6]     As detailed in the Service Motion, such notice would advise parties how they may obtain full copies of the pending settlement motions and related agreements.

DM3\2909164.2

Service Motion, and (iv) grant the Trustee such other and further relief as this Court deems just

and proper.

Dated:          May 19, 2014                    Respectfully submitted,
                Boston, Massachusetts

                                **DUANE MORRIS LLP**

                                By: */s/ Jeffrey D. Sternklar*
                                Jeffrey D. Sternklar  (BBO #549561)
                                100 High Street, Suite 2400
                                Boston, MA 02110-1724
                                Phone: (857) 488-4200
                                Fax: (857) 488-4201
                                Email: jdsternklar@duanemorris.com

DM3\2909164.2

# EXHIBIT A

*PROPOSED ORDER*

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MASSACHUSETTS
## EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>NEW ENGLAND COMPOUNDING PHARMACY, INC.,<br><br>               Debtor. | Chapter 11<br><br>Case No. 12-19882-HJB |

### ORDER APPROVING SETTLEMENT AGREEMENT BETWEEN CHAPTER 11 TRUSTEE AND TENNESSEE BOARD OF PHARMACY AND TENNESSEE DEPARTMENT OF HEALTH AND GRANTING RELATED RELIEF

Upon the motion (the "Motion")[1] of Paul D. Moore, the duly appointed and acting chapter 11 Trustee (the "Trustee") in the pending bankruptcy case of New England Compounding Pharmacy, Inc. (the "Debtor") for an order pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and sections 105 and 363 of the U.S. Bankruptcy Code (11 U.S.C. § 101, et seq.) authorizing the Trustee to enter into, and approving, a Settlement Agreement (the "Settlement Agreement") among the Trustee, Mr. Barry J. Cadden, the Tennessee Board of Pharmacy (the "Board"), and the Division of Health Related Boards of the Tennessee Department of Health (the "Division") filed on or about May ___, 2014 [Docket No. _____]; a hearing having been held before this Court regarding the Motion and any objections thereto (the "Objections") on _____, 2014 (the "Hearing"); this Court having reviewed and considered (i) the Motion and the Objections (if any) and (ii) the arguments of counsel, and (iii) the evidence proffered or adduced, at the Hearing, and the Objections (if any) having been otherwise resolved, overruled, or withdrawn; and all parties in interest having been heard, or having had the opportunity to be heard, regarding the matters raised by the Motion and

---

[1]     Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

relief related thereto; and after due deliberation thereon, this Court hereby concludes, finds and orders that:[2]

## Jurisdiction, Final Order and Statutory Predicates

A.     This Court has jurisdiction over the Motion pursuant to 28 U.S.C. 157(b)(1) and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

B.     Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.     The predicates for the relief sought in the Motion are Bankruptcy Rule 9019 and Bankruptcy Code Sections 105 and 363.

## Notice

D.     Notice of the Motion and the Hearing (the "Notice of Hearing") was served upon each of the Debtor's creditors (or their counsel) known to the Trustee, all parties in this case who receive electronic service in this case through this Court's Electronic Case Filing ("ECF") system, all parties to the multidistrict litigation in the United States District Court for the District of Massachusetts currently pending under the caption *In re New England Compounding Pharmacy Cases Litigation*, MDL No. 2419, Case No. 13-cv-02419 (D. Mass.) (the "MDL Proceeding") who receive electronic service through its ECF system, all state and federal agencies with jurisdiction or with oversight authority over the Debtor's business, and all other known creditors of the Debtor and its estate through service by the Trustee or his agents of the Notice of Hearing by first class mail.  Therefore, due, adequate and sufficient notice of the Motion and the Hearing has been given to all parties entitled to receive notice as of the date

---

[2]     The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rule of Bankruptcy Procedure, as made applicable to this proceeding pursuant to Rule 9014 of the Federal Rule of Bankruptcy Procedure.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

hereof pursuant to Bankruptcy Rule 2002(a)(2), no other or further notice is required, and a reasonable opportunity to object to the Motion and to be heard at the Hearing was given as required by the Bankruptcy Code and the Bankruptcy Rules to all persons entitled to or who received notice.

### Settlement Agreement

E.   The Settlement Agreement was the product of arm's-length negotiations among the parties, was negotiated and proposed, and entered into by the parties in good faith and without fraud or collusion.

F.   The Settlement Agreement represents the exercise of the Trustee's sound business judgment, is fair and reasonable, and is in the best interests of creditors, the estate, and all parties in interest. The compromise set forth in the Settlement Agreement is fair and reasonable and otherwise satisfies the requirements of Bankruptcy Rule 9019.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.   The Motion is **GRANTED** subject to the provisions of this Order.

2.   Any Objections to the Motion and the relief requested therein that have not been withdrawn, waived, or settled, are denied and overruled on the merits.

3.   The Settlement Agreement attached to the Motion as <u>Exhibit B</u> and the settlements, compromises, and transactions embodied therein, are **APPROVED** in all respects.

4.   Pursuant to the Settlement Agreement, the Board shall have an allowed general unsecured claim against NECC in the amount of $5,000,000, which claim shall be subordinate to the claims of tort claimants and other general unsecured creditors of NECC for purposes of distributions and voting under any Chapter 11 plan in this case. Additionally, to the extent other states assert claims under their applicable regulatory schemes and such claims are settled for an

allowed general unsecured claim subject to the same subordination as described in the immediately preceding sentence, such claims will be satisfied from the Settlement Amount on a pro rata basis.

5.    The Parties are authorized and directed to take all necessary or appropriate steps required to effectuate the terms of the Settlement Agreement.

6.    This Order shall become effective immediately upon its entry.

7.    This Court shall retain jurisdiction to determine any and all disputes concerning the interpretation, implementation or enforcement of this Order or the Settlement Agreement.

8.    The terms and provisions of this Order shall be binding in all respects upon the Debtor, its estate, and its creditors, and all parties served with the Notice of Hearing.

9.    To the extent there is a conflict between the provisions of this Order and the Settlement Agreement, the terms of the Settlement Agreement shall govern the interpretation of the salient provision or term.



_____
Honorable Henry J. Boroff
United States Bankruptcy Judge

Dated: _____, 2014

DM3\2909168.2

4

# EXHIBIT B

*PROPOSED SETTLEMENT AGREEMENT AND ORDER*

BEFORE THE TENNESSEE BOARD OF PHARMACY

IN THE MATTER OF:                          )
                                           )
NEW ENGLAND COMPOUNDING                    )
CENTER, FORMER LICENSE                     )
NUMBER 00004144                            )
697 WAVERLY STREET                         )
FRAMINGHAM, MA  01702; and                 )      DOCKET NO. 17.56-119363A
                                           )      and
                                           )      DOCKET NO. 17.56-119364A
BARRY JAMES CADDEN, FORMER                 )
LICENSE NUMBER 22971                       )
697 WAVERLY STREET                         )
FRAMINGHAM, MA  01702                      )
                                           )
RESPONDENTS                                )

## PROPOSED SETTLEMENT AGREEMENT AND ORDER

This settlement agreement ("Agreement") is made this 16th day of May, 2014, by,

between and among Paul D. Moore, the Chapter 11 Trustee (the "Trustee") for the Estate of New

England Compounding Pharmacy, Inc. ("NECC" or the "Debtor"), and Barry James Cadden

("Cadden") on the one hand, and the Division of Health Related Boards of the Tennessee

Department of Health (the "Division") and the Tennessee Board of Pharmacy (the "Board"), on

the other hand.

This Agreement is subject to the approval of the Board, and the United States Bankruptcy

Court for the District of Massachusetts (the "Bankruptcy Court").

## PROCEDURAL BACKGROUND

1.      NECC operated a compounding pharmacy headquartered at 697 Waverly Street,

Framingham, Massachusetts 01702.   NECC previously held Tennessee Pharmacy License

No. 00004144, but has no existing Tennessee license.

2.      Barry James Cadden ("Mr. Cadden") previously held Tennessee Pharmacist

License No. 22971, but has no existing Tennessee license.

DM3\2858970.3

Case 1:13-md-02419-RWZ Document 1175-1 Filed 06/06/14 Page 21 of 26
Case 12-19882 Doc 729-2 Filed 05/19/14 Entered 05/19/14 16:10:07 Desc Exhibit
B (Proposed Settlement Agreement and Order) Page 3 of 8

3.  On October 3, 2012, NECC voluntarily surrendered its license in its home State of Massachusetts.

4.  On October 12, 2012, NECC executed a Voluntary Surrender Agreement in which it voluntarily surrendered its license to operate a pharmacy licensed by the State of Tennessee; the Board approved NECC's surrender of its Tennessee license at a specially called meeting of the Board on October 15, 2012.

5.  On October 20, 2012, Cadden executed a Voluntary Surrender Agreement whereby he voluntarily surrendered his license to practice Pharmacy in the State of Tennessee. The Board approved this Agreement at a specially called meeting of the Board on October 23, 2012.

6.  On December 11, 2012, prior to the Petition Date (as defined below), the Division and the Board, through the Office of General Counsel of the Tennessee Department of Health, filed a Notice of Hearing and Charges before the Board in the matter styled in *In the Matter of: New England Compounding Center, Former License Number 00004144, 697 Waverly Street, Framingham, MA 01702, Respondent,* Docket No. 17.56-119363A, and a Notice of Hearing and Charges against Cadden styled *In the Matter of: Barry James Cadden, Former License Number 22971, 397 Waverly Street, Framingham, MA 07102,* Docket No. 17.56-119364A (collectively, the "Administrative Proceedings"), pursuant to T.C.A § 63-10-309.

7.  In the Administrative Proceedings, the Division and the Board sought a civil penalty assessment pursuant to T.C.A. § 63-1-134(a) and T.C.A. § 63-10-305, as well as assessment of costs pursuant to T.C.A. § 63-1-144, pursuant to T.C.A. § 63-10-309, for asserted violations of Tenn. Comp. R. & Regs. No. 1140-01-08, Tenn. Comp. R. & Regs. Nos. 1140-03-.08, 1140-03-.03, 1140-03-.14(8), 1140-03-.14(14), 1140-03-.06, and 1140-01-07-.05.

2

Case 1:13-md-02419-RWZ   Document 1175-1   Filed 06/06/14   Page 22 of 26

Case 12-19882   Doc 729-2   Filed 05/19/14   Entered 05/19/14 16:10:07   Desc Exhibit
B (Proposed Settlement Agreement and Order)   Page 4 of 8

8.      On December 21, 2012 (the "Petition Date"), the Debtor filed a voluntary petition

seeking relief under chapter 11 of title 11 of the United States Bankruptcy Code (the

"Bankruptcy Code") in the Bankruptcy Court.

9.      On January 24, 2013, the Bankruptcy Court entered an order authorizing the

appointment of a Chapter 11 Trustee in NECC's bankruptcy case (the "Bankruptcy Case").

10.     On January 25, 2013, Paul D. Moore was appointed to serve as the Chapter 11

Trustee of the Debtor's estate.

11.     Pursuant to an agreement among the parties, voluntary mediation sessions were

held, with Administrative Judge Lynn England as mediator, on July 22, 2013 and August 12,

2013. At the same time, the Trustee engaged in lengthy negotiations with Cadden and various

other principals and affiliates of NECC in an effort to conclude a settlement with them that

maximized sums available to the bankruptcy estate of NECC to those who suffered death or

injury alleged to have resulted from products compounded by NECC, while at the same time

avoiding the expense, delay and uncertainty of protracted litigation. Those efforts resulted in this

proposed settlement as well as a proposed settlement with Mr. Cadden and various NECC

principals and affiliates.

## SETTLEMENT TERMS

12.     Upon the approval of this Agreement by the Board, Mr. Cadden, and the

Bankruptcy Court:

(a)     Any and all licenses granted by the Board to NECC or Mr. Cadden shall

be deemed to be irrevocably voluntarily surrendered;

(b)     Any and all proceedings against NECC and Mr. Cadden and available to

the Division, the Board and the State of Tennessee relating to the subject matter of the

DM3\2888970.3

Case 1:13-md-02419-RWZ   Document 1175-1   Filed 06/06/14   Page 23 of 26
Case 12-19882   Doc 729-2   Filed 05/19/14   Entered 05/19/14 16:10:07   Desc Exhibit
B (Proposed Settlement Agreement and Order)   Page 5 of 8

Administrative Proceedings shall be, and are, conclusively resolved pursuant to the terms set forth herein;

      (c)    The Board shall have an allowed general unsecured claim against NECC (the "Claim") in the Bankruptcy Case in the amount of $5 million (the "Settlement Amount"), subordinate for purposes of distribution and voting, to the claims of tort claimants and other general unsecured creditors of NECC.  Allowance of the Claim in the Bankruptcy Case shall represent payment in full satisfaction and release of any and all fines, penalties and assessments of any kind or nature against NECC and Mr. Cadden available to the Board, including claims pursuant to T.C.A. § 63-1-134(a), T.C.A. § 63-1-144, T.C.A. § 63-10-305, T.C.A. § 63-10-208 and any other Tennessee statutes or regulations as to which the Board has authority or jurisdiction.  In the event that other states assert claims against NECC or Mr. Cadden under their respective regulatory schemes and those claims are settled in exchange for an allowed general unsecured claim against NECC subject to the same subordination provisions set forth above, those claims will be satisfied pro rata from the Settlement Amount; and

      (d)    The Administrative Proceedings shall be dismissed, with prejudice, with each party to bear its own costs.

    13.    Nothing herein shall be deemed to be an admission of liability by NECC or Mr. Cadden for any of the claims that were raised or that could have been raised in the Administrative Proceedings.  Likewise, nothing herein shall be deemed to be an admission of fact or liability by NECC or Mr. Cadden relating to any of the Division and Board's allegations in the Administrative Proceedings.

    14.    This Agreement contains the entire agreement of the parties and there is no other agreement of any kind which varies this Agreement.

4

Case 1:13-md-02419-RWZ   Document 1175-1   Filed 06/06/14   Page 24 of 26

Case 12-19882   Doc 729-2   Filed 05/19/14   Entered 05/19/14 16:10:07   Desc Exhibit
B (Proposed Settlement Agreement and Order)   Page 6 of 8

APPROVED FOR ENTRY:

By: _____          By: _____
William West, B.P.R. No. 005543              Jane Young, B.P.R. No. 009709
Baker, Donelson, Bearman,                    General Counsel
Caldwell & Berkowitz, PC                      Tennessee Department of Health
Baker Donelson Center, Suite 800         710 James Robertson Parkway
211 Commerce Street                          5th Floor
Nashville, Tennessee 37201                  Nashville, Tennessee 37243
(615) 726-5561                                  (615) 741-1611
bwest@bakerdonelson.com                   Jane.Young@tn.gov

Counsel for Respondents, Paul D. Moore,
Chapter 11 Trustee of the Estate of New
England Compounding Pharmacy, Inc.
d/b/a New England Compounding
Pharmacy, Inc., and Barry James Cadden

Dated: ___5/1/2014___                       Dated: ___5-1-14___

DM3\2888970.3

Case 1:13-md-02419-RWZ Document 1175-1 Filed 06/06/14 Page 25 of 26
Case 12-19882 Doc 729-2 Filed 05/19/14 Entered 05/19/14 16:10:07 Desc Exhibit
B (Proposed Settlement Agreement and Order) Page 7 of 8

## APPROVAL BY THE BOARD

Upon the agreement of the parties and the record as a whole, this Settlement Agreement and Order was approved by a majority of a quorum of the Tennessee Board of Pharmacy at a public meeting of the Board and signed this _12th_ day of _May_____, 2014.

Nina Smothers DPh

~~Jason Kizer, Pharm. D.~~ Nina Smother PPl

Acting Chairperson
Tennessee Board of Pharmacy

6

DM3\2888970.3

Case 1:13-md-02419-RWZ   Document 1175-1   Filed 06/06/14   Page 26 of 26

Case 12-19882   Doc 729-2   Filed 05/19/14   Entered 05/19/14 16:10:07   Desc Exhibit
B (Proposed Settlement Agreement and Order)   Page 8 of 8

## CERTIFICATE OF FILING

This Order was received for filing in the Office of the Tennessee Secretary of State, Administrative Procedures Division, and became effective on the 12 day of May, 2014.

Richard Collier, Director
Administrative Procedures Division

7