UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


IN RE:  NEW ENGLAND COMPOUNDING   )  MDL NO. 13-02419-RWZ
PHARMACY CASES LITIGATION         )
                                  )
                                  )
                                  )
                                  )
                                  )
                                  )


BEFORE:  THE HONORABLE RYA W. ZOBEL


**MOTION HEARING**


John Joseph Moakley United States Courthouse
Courtroom No. 12
One Courthouse Way
Boston, MA 02210


June 3, 2014
9:30 a.m.


Catherine A. Handel, RPR-CM, CRR
Official Court Reporter
John Joseph Moakley United States Courthouse
One Courthouse Way, Room 5205
Boston, MA 02210
E-mail: hhcatherine2@yahoo.com

1      APPEARANCES:

2      For The Plaintiffs:

3          Hagens, Berman, Sobol, Shapiro LLP, by THOMAS M. SOBOL,
       ESQ., 55 Cambridge Parkway, Suite 301, Cambridge, MA 02142;

4

5          Gentry Locke Rakes & Moore, by J. SCOTT SEXTON, ESQ.,
       10 Franklin Road, S.E., P.O. Box 40013, Roanoke, VA 24022-0013;

6      (Appearing telephonically.)

7

8      FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS:

9          Brown Rudnick, by DAVID J. MOLTON, ESQ., Seven Times Square,
       New York, NY 10036;

10

11         Brown Rudnick, by KIERSTEN A. TAYLOR, ESQ., One Financial
       Center, Boston, MA  02111;

12

13

14     For the Defendants:

15         McGuire Woods LLP, by STEPHEN D. BUSCH, ESQ., One James
       Center, 901 East Cary Street, Richmond, VA 23219-4030;

16

17         Skadden, Arps, Slate, Meagher & Flom LLP, by MATTHEW J.
       MATULE, ESQ., 500 Boylston Street, Boston, MA 02116;

18

19         Tucker & Ellis LLP, by MATTHEW P. MORIARTY, ESQ.,
       1150 Huntington Building, 925 Euclid Avenue, Cleveland, OH

20     44115-1414 (Appearing telephonically);

21

22

23     FOR PAUL D. MOORE, IN HIS CAPACITY AS CHAPTER 11 TRUSTEE OF
       NECP, INC.:

24         Duane Morris LLP by MICHAEL R. GOTTFRIED, ESQ., 100 High
       Street, Suite 2400, Boston, MA 02110-1724.

25

```
1                        P R O C E E D I N G S

2         (The following proceedings were held in open court before

3   the Honorable Rya W. Zobel, United States District Court Judge,

4   United States District Court, District of Massachusetts, at the

5   John J. Moakley United States Courthouse, One Courthouse Way,

6   Boston, Massachusetts, on June 3, 2014.)

7              THE COURT:  Good morning.  Please be seated.

8              COURTROOM DEPUTY CLERK URSO:  Good morning.  This is

9   the New England Compound Cases, MD-13-2419.

10             THE COURT:  Would anybody who expects to argue by

11  telephone please identify him or herself.

12             MR. SEXTON:  Your Honor, this is Scott Sexton calling

13  from Roanoke, Virginia.

14             THE COURT:  Do you anticipate arguing?

15             MR. SEXTON:  Yes.

16             THE COURT:  By the way, your affidavit, as it was

17  filed in the Court, is missing Pages 2 and 3.

18             MR. SEXTON:  We filed a corrected declaration hours

19  later, your Honor, and hopefully that was brought to your

20  attention as well.

21             THE COURT:  Well, I'll look it up on the docket.  I

22  hadn't looked for a supplement yet.

23             Okay.  So, we have Mr. Sobol for plaintiffs'

24  committee, or whatever you call yourself, and for --

25             MR. BUSCH:  Your Honor, my name is Stephen Busch.
```

```
1    I'm with McGuire Woods and I represent Insight Health Corp.,
2    and will be presenting the argument in support of their motion
3    this morning.
4              MR. MATULE:  My name, your Honor, is Matthew Matule,
5    Skadden Arps, also on behalf of Insight Health Corp.
6              THE COURT:  Your last name?
7              MR. MATULE:  Matule, M-a-t-u-l-e.
8              MR. MOLTON:  Your Honor --
9              THE COURT:  Mr. Sexton, was that for the Roanoke
10   plaintiffs?
11             MR. SEXTON:  Yes, your Honor.
12             THE COURT:  And, I'm sorry, somebody else announced
13   himself on the telephone.
14             MR. MORIARTY:  Matthew Moriarty for Ameridose, your
15   Honor.
16             THE COURT:  And whom do you represent?
17             MR. MORIARTY:  Ameridose LLC.
18             THE COURT:  That's your law firm?
19             MR. MORIARTY:  We're Tucker & Ellis LLP, is the law
20   firm.
21             THE COURT:  And Ameridose LLC is the client?
22             MR. MORIARTY:  Yes, one of the main affiliated
23   defendants.
24             THE COURT:  But you don't expect to argue?
25             MR. MORIARTY:  It's remotely possible because my
```

1    client has ten cases in Virginia, but they don't fall under

2    the same procedural category as Mr. Sexton's cases, because

3    the ten --

4              THE COURT:  You're the Lipton something firm?

5              MR. MORIARTY:  -- are in federal court, not state

6    court.

7              THE COURT:  Okay.  I think Mr. Busch has the floor

8    since it's his motion that we're hearing first.

9              MR. BUSCH:  May it please --

10             THE COURT:  There are a number of people who intend

11   to argue.  I hope that we can keep this to ten minutes apiece.

12             MR. BUSCH:  Thank you, your Honor.  I'll certainly

13   endeavor to do that.

14             COURTROOM DEPUTY CLERK URSO:  Sir, I'm so sorry, but

15   could you argue at the microphone?  Because no one on the

16   telephone can hear you unless you're at the microphone.

17             THE COURT:  And you can sit down if you want to do

18   that because the microphones aren't really long enough for

19   standing.  I know it's difficult for some lawyers, but try.

20             MR. BUSCH:  Very difficult, your Honor, but I'll do

21   my best.

22             THE COURT:  We also have Mr. Gottfried.

23             MR. GOTTFRIED:  Yes, for the trustee.

24             THE COURT:  And for the trustee -- you're not for the

25   trustee?

```
 1              MR. GOTTFRIED:  I am for the trustee.

 2              THE COURT:  You're for the trustee?

 3              MR. GOTTFRIED:  Yes, your Honor.

 4              MR. MOLTON:  Your Honor, Mr. Molton, David Molton,

 5    for the committee, here with Kiersten Taylor.

 6              THE COURT:  The creditor's committee?

 7              MR. MOLTON:  Yes, the creditor's committee.  We're on

 8    mic now, I understand, your Honor.

 9              THE COURT:  Okay.  And you are here -- I'm sorry.

10              MR. MOLTON:  Ms. Taylor is with me for the creditor's

11    committee.

12              THE COURT:  Ms. Taylor, okay.  All right.

13              Mr. Busch, proceed.  I'm sorry.

14              MR. BUSCH:  May it please the Court.  Again, Stephen

15    Busch on behalf of Insight Health Corporation.

16              We're before the Court on Insight's emergency motion

17    for entry of an order in aid of the Court's decision

18    transferring additional personal injury and wrongful death

19    cases from Roanoke, Virginia and seeking to enjoin the

20    plaintiffs represented by Gentry Locke Rakes & Moore.

21              We seek the Court's intervention caused by ongoing

22    actions by the Gentry Locke law firm representing 18

23    plaintiffs, your Honor, whose cases are pending in the circuit

24    court of the City of Roanoke and that are subject to the

25    trustee's supplemental motion to transfer dated December 27,
```

1    2013.

2           Your Honor granted the motion to set forth in your

3    memorandum of decision dated May 15th, asserting jurisdiction

4    over those cases and directing that the cases be transferred

5    to MDL-2419 pursuant to 28 --

6           THE COURT:  Is the issue that animates your motion

7    the -- I don't know exactly what the status of it is -- the

8    status of motions to dismiss by defendants that were ruled on,

9    but not docketed by the Judge in Roanoke?

10          MR. BUSCH:  Your Honor --

11          THE COURT:  That's what I understand to be the status

12    of those motions.

13          MR. BUSCH:  It is Insight's position -- and we had a

14    declaration available to be tendered to the Court this

15    morning -- that our position is that in these 18 cases, that

16    the legal motions to dismiss -- we call them "Demurrers" in

17    state court procedure in Virginia -- that they were not

18    noticed for a hearing, they were not argued, and that they're

19    not mature for the Court's entry of orders and there's a

20    dispute on that, and Mr. Sexton's declaration indicates that

21    their position is that they were subject to this decision in

22    *Wingate*.  Your Honor --

23          THE COURT:  Well, isn't this an issue that the Judge

24    down there should decide?  I mean, if the Judge, in fact,

25    decided these for all -- with respect to all plaintiffs, but

1    failed -- but somehow they didn't get on the docket, should

2    not that happen if the Judge says -- he decides it?  I mean,

3    why should I decide as to what the Judge decided when the

4    Judge can do that directly?

5         MR. BUSCH:  Judge Zobel, we think that the issue

6    before the Court is where the jurisdiction of the cases lie at

7    this time.  We do not believe that jurisdiction lies in the

8    Circuit Court of Roanoke, given the fact that your memorandum

9    decision granted the trustee's motion on May 15th and --

10        THE COURT:  Yes, but until I give an order to

11   transfer, they're there.  I mean, I just think -- I'm

12   wondering whether the Judge should not be given an opportunity

13   to be heard on what it is that the Judge thinks he did.

14        MR. BUSCH:  Your Honor, I think -- in essence, I

15   think it begs the question of where the jurisdiction lies.

16   When you entered your memorandum decision, you transferred the

17   cases, and it is very well established in the law that we

18   cited in our brief, your Honor, that under the All Writs Act,

19   that this Court has the ability and is authorized to issue an

20   injunction in aid of its jurisdiction.

21        The case that we cited, Judge Zobel, which is

22   directly on point with this particular issue is that where you

23   have the opportunity for the state court to enter a judgment

24   that's inconsistent potentially with the duration of the

25   litigation, that the Court is authorized to move forward and

1    take appropriate action.  We think that is the case.

2         Mr. Sexton, apparently, thinks that these are

3    uncontested motions and he even terms it "ministerial."

4    Ministerial, I think, in trying to skirt the jurisdiction

5    issue.

6         Our position is unequivocal, Judge.  These are

7    disputed, controverted orders that go to the heart of the

8    case.  We do not believe that they have been noticed.  We

9    don't think they have been argued, and we don't think it's

10   appropriate for the Court to enter the order.

11        If you allow the Circuit Court of Roanoke to sort

12   this out, there are other motions in other cases that are

13   being transferred from Virginia and you've set up a perfect

14   opportunity for there to be a conflict between the state court

15   order and any future order that this Court enters.  If it were

16   true that the parties agree --

17        THE COURT:  Why is there a conflict?  I'm assuming

18   that these motions to dismiss were denied.

19        MR. BUSCH:  Well, your Honor, we are mindful of the

20   fact that you did not authorize the filing of a reply and,

21   therefore, we did not tender a reply to the plaintiff's brief.

22        Mr. Sexton has a detailed declaration.  He states

23   unequivocally in that declaration that there was an agreement

24   off the record in chambers with Judge Dorsey that his ruling

25   in one case, *Wingate*, would apply to all the rest of the

1  cases.

2          We were not there, your Honor.  McGuire Woods was not

3  counsel for Insight on February 27th of 2013.  However, we

4  reached out to Mr. Clinton Shaw of the Bonner Kiernan law firm

5  in Washington, D.C.  We shared Mr. Sexton's -- our declaration

6  with him.  We asked him, in representing Insight, what is your

7  recollection of what occurred off the record.  I have that

8  declaration.  We circulated it by email to all counsel

9  yesterday.  With the Court's indulgence, I would be happy to

10  tender it to the Court.

11          THE COURT:  Well, I would like to have it.

12          (Attorney Busch hands document to the Court.)

13          THE COURT:  Now, we have a conflict as to what

14  happened, which is a conflict that I guess you would agree

15  goes to the heart of the case.

16          MR. BUSCH:  That's exactly right, Judge, and that's

17  why we believe it should be sorted out here where the cases

18  are now transferred and that the idea --

19          THE COURT:  How can I sort it out, short of putting

20  the Judge on the stand and saying what happened?

21          MR. BUSCH:  Well --

22          THE COURT:  I mean, you believe one lawyer more than

23  another?

24          MR. BUSCH:  -- it's interesting, Judge Zobel, because

25  as to your memorandum of decision, the plaintiffs have told

1    you courts only speak through their orders.

2            So, here we have an off-the-record discussion that

3    counsel for Insight says there was no agreement that an order

4    entered and a decision made in one case when only 11 of these

5    18 cases were even filed with the Court would apply for all

6    time in all the other cases.

7            Now, our declaration that my partner Christopher

8    Trible filed with the Court indicates that the *Wingate*

9    decision doesn't reference these other cases.  The order that

10   was entered in *Wingate* doesn't say it applies to any other

11   cases.  Furthermore, Judge, there was no order entered that

12   consolidated the cases.

13           So, it's interesting that while they say you can only

14   speak through an order and, therefore, jurisdiction still

15   exists in Roanoke, apparently an off-the-record discussion

16   that's disputed by counsel for Insight -- former client for

17   Insight and our client at this time, that that court doesn't

18   need to speak through its orders.

19           So, we believe, Judge, that having transferred these

20   cases and issued your memorandum of decision, and with the

21   follow-on to that by Insight, Judge, which we did several

22   things.  Number one is when Mr. Sexton sought a hearing date,

23   we sent a letter to him saying the cases have been

24   transferred.  We suggest that you stand down and ask that you

25   stand down and not move forward.  Jurisdiction is now

1    MDL-2419.

2            Second, we filed a notice of assertion of bankruptcy

3    jurisdiction and transfer to MDL-2419 in each of these 18

4    cases.  We provided the Roanoke court with a copy of your

5    memorandum and decision.  We believe that having granted the

6    motion -- and you used the term "allowed" in there -- that

7    that effectuated a transfer of the cases.

8            We believe that nothing further need be done for

9    these cases to be in Boston other than the administrative

10   issue, which is to the fact that you mention -- you solicited

11   the input of counsel, what needs to be done to follow on to

12   your decision.

13           And as far as we're concerned, Judge, jurisdiction

14   has been transferred and under 28 U.S.C. Section 157(b)(5),

15   the cases are now MDL-2419 and that administratively all that

16   need be done is the entry of an order that requests that the

17   Circuit Court of Roanoke physically transfer the files, but

18   the physical possession of a court file is not equivalent to

19   the concept of jurisdiction.

20           You found, pursuant to the trustee's renewed motion,

21   that there is related-to jurisdiction based upon the filing of

22   a proof of claim by Insight and also based upon the filing of

23   proofs of claim by all 18 of these plaintiffs.

24           So, your Honor, our position is that under the law

25   that we've cited under the All Writs Act, that this Court has

1    the -- all that's necessary in terms of issuing an injunction

2    naming this jurisdiction because the -- there's a lot of

3    litigation left to be done in these cases and it's a game --

4    this isn't a ministerial act, Judge.  It's a hotly disputed

5    issue, as you can tell from these declarations, as to whether

6    a single decision in *Wingate* does not say it's pursuant to any

7    agreement or a consolidation and the order that was entered in

8    *Wingate* does not indicate that it was either, that under those

9    circumstances, that we think that this Court should enter the

10   injunction.

11           I would also add, Judge, quickly, mindful of your

12   admonition on the amount of time, that the plaintiffs filed a

13   so-called status report in the Roanoke Circuit Court.  There's

14   no pleading in our Title 18 Form of the Code of Virginia that

15   refers to the filing of the status report.  There's no rule of

16   the court that talks about the filing of a status report.

17           Mr. Sexton's clients filed this status report in each

18   of these 18 cases and Mr. Sexton directly sent to the Court an

19   exemplar of the status report and in that he said two things

20   that I think are of particular interest, Judge.

21           As to your memorandum and decision, he says, "The

22   Judge in Boston issued her opinion on May 15th, 2014,

23   indicating that she would grant the trustee's motion," that

24   you would.  You would.  We read your memorandum decision to

25   say unequivocally that you "allowed" the motion.  That's a

1    completed act.

2            And the second issue in this so-called status report

3    is that -- and this is at Paragraph 11 where they specifically

4    say -- Mr. Sexton, "Plaintiff believes that this Court still

5    has jurisdiction."

6            Well, your Honor, we think that the Circuit Court of

7    Roanoke does not have jurisdiction.  You have transferred the

8    cases.  You have sought the input of counsel that has been

9    provided in terms of an orderly process for the court file to

10   be transferred.  We filed with each -- with this Court the

11   notice of the assertion of bankruptcy jurisdiction and

12   transfer of these cases and we believe that's all that need be

13   done to notify the local state court that these cases are now

14   in MDL-2419.  We believe --

15           THE COURT:  What do you say is the meaning of the

16   very last sentence in my opinion which says that, "Counsel

17   shall inform the Court regarding any steps necessary to

18   effectuate the transfer"?

19           MR. BUSCH:  Judge, from our perspective -- and we

20   feel 100 percent confident in telling you this.  We think that

21   means how do I get the court file.  There are 20 court files

22   in the Circuit Court of Roanoke.  What needs to be done to

23   notify the clerk to send those court files to us?

24           And I would say one other thing, Judge, and that is

25   that the plaintiffs confuse the concept of Rule 58 in terms of

1    an appealable order with what you have done.  The creditor's

2    committee, Mr. Molton, filed an excellent brief with the Court

3    in response to the plaintiffs' filing, making it clear that

4    this is interlocutory.  Judge Saylor said it was interlocutory.

5            THE COURT:  I'm not concerned about the appeal,

6    frankly.  I'm concerned about where we are now.

7            MR. BUSCH:  But the --

8            THE COURT:  I have two issues.  One is whether, in

9    fact, a transfer occurred at the moment I said the motion is

10   allowed.

11           MR. BUSCH:  We believe, yes, your Honor.

12           THE COURT:  That the motion --

13           MR. BUSCH:  You granted the motion.

14           THE COURT:  I know you do, but that's one issue to be

15   decided.

16           MR. BUSCH:  Yes.

17           THE COURT:  Particularly in light of the last

18   sentence about "effectuating transfer."

19           And the other issue is who should decide whether, in

20   fact, the Virginia Judge made the ruling with respect to all

21   plaintiffs or not?

22           MR. BUSCH:  Judge, again, I think that -- that

23   because you granted the motion --

24           THE COURT:  I understand that.

25           MR. BUSCH:  -- and you found that there's related-to

1    jurisdiction, that at that point in time that -- and I believe

2    that the trustee's position is the same.  We certainly

3    contacted the trustee yesterday and spoke with him -- that

4    this is a self-effectuating order or decision --

5        THE COURT:  So, what happens next?  Assuming you're

6    right.  What happens next?  The cases come here and the

7    plaintiffs will say that the motion to dismiss was denied and

8    you're going to file another motion to dismiss and the

9    plaintiffs are saying it's already been decided by the court

10   in Virginia.

11       MR. BUSCH:  Judge, the first thing --

12       THE COURT:  So, what do I do?  I bring the Judge up

13   here and put him on the stand?

14       MR. BUSCH:  Judge Zobel, the first thing that's going

15   to happen is already on the way, and that is that Insight is

16   in discussions with the creditor's committee about

17   participating in the mediation.

18       So, this -- keep in mind that we're backing up all

19   the way to Judge Dorsey entering -- issuing a letter opinion

20   on October 31 of 2013 and entering an order in November.

21       Why do you think, Judge Zobel, that after all of

22   those months pass, you issue your opinion or your memorandum

23   of decision and, all of a sudden, lickety-split, the

24   plaintiffs are racing to Roanoke to try to get orders entered.

25   They had no problem having other orders --

1          THE COURT:  You're arguing the substance of this

2     issue.  That is that I should disregard their suggestion that

3     the Judge had decided this question but just hadn't been

4     docketed.  That's how I understand the plaintiffs' position.

5     And you're just saying, well, you know, you decided it, in

6     essence, or it wasn't decided.

7          MR. BUSCH:  Judge, I think that any substantive

8     ruling on these cases from this point -- or, actually, from

9     the point of the issuance of your memorandum of decision, we

10    think should be in MDL-2419, and if the Circuit Court of

11    Roanoke has jurisdiction to issue a decision on these 18

12    cases, as the plaintiffs have presented, does that mean that

13    there's jurisdiction for depositions to go forward?  Does that

14    mean that there's -- we certainly had deposition dates that

15    have been reserved.

16         THE COURT:  Okay.  Let me hear from other counsel.

17         MR. BUSCH:  Thank you.

18         THE COURT:  Who wants to argue next?

19         MR. SEXTON:  Your Honor, this is Scott Sexton.  If I

20    may speak, I would like to address these issues.

21         THE COURT:  Did you hear the recent colloquy with Mr.

22    Busch?

23         MR. SEXTON:  Yes, your Honor, I heard every word of it.

24         THE COURT:  Okay.

25         MR. SEXTON:  And I'm prepared to address it.

```
1              THE COURT:  Tell me, Mr. Sexton, why the May 15th
2    opinion did not effect the transfer right then and there.
3              MR. SEXTON:  Well, your Honor, we believe that like
4    every other memorandum opinion that's issued by courts every
5    day and it expresses the reasoning of the court, it expresses
6    a decision by the court and it lets the parties and the
7    appellate court know the rationale for that decision.
8              It is informative and it was informative to us.  It,
9    however, is not an order, and the court speaks for its order,
10   and we cited First Circuit cases that establish that the First
11   Circuit is just like the Fourth where I practice, and that is
12   absolutely required.
13             We cannot imagine how a memorandum decision would
14   ever be considered an order in and of itself.  We received
15   your order.  We took it to be what it was, a memorandum
16   decision issuing an opinion that was contrary to our asserted
17   positions, but also asking for the parties to provide guidance
18   as to how it should be effectuated, and then we did provide
19   that guidance by subsequent filing.
20             So, that is -- we view it as any other memorandum
21   opinion and I think it's only due to an overzealous desire to
22   have it effectuated immediately, that someone, you know, as
23   skilled as Mr. Busch would argue that it is somehow an order
24   as well.  It's not an order.  So, we have shown no disrespect
25   to this Court and we intend to show no disrespect to this
```

1     Court, but --

2          THE COURT:  So what, Mr. Sexton, is your view of the

3     status of the cases in Virginia?

4          MR. SEXTON:  Okay, your Honor.  In that regard, I

5     think it's unfortunate that you're missing Pages 2 and 3 of my

6     declaration, but --

7          THE COURT:  You said you had filed them.

8          MR. SEXTON:  -- on Page 5 of the declaration, it sets

9     out the three categories of outstanding orders that are needed

10    in Roanoke.  There are ten cases that require orders denying

11    leave to amend requests for admissions and denying

12    reconsideration of partial summary judgment.  Those were all

13    noticed and heard and are awaiting order.  The Judge has

14    already indicated his ruling on that vis-à-vis the *Wingate*

15    opinion.

16          So, that is -- those have been noticed and heard and

17    argued, and there's no argument, as Insight advances on

18    another category, that they were never noticed.

19          The second category is --

20          THE COURT:  What does being "noticed" mean?  I mean,

21    are they part of the -- have they been recorded in some way?

22    I mean, I understand there was a decision in the *Wingate* case.

23    Has that decision by a written order been made applicable to

24    all of the other cases?

25          MR. SEXTON:  No.  That is the point.  They were all

1  argued on the same day.

2          When I say "pursuant to written notice" -- in

3  Virginia procedure we typically, although we are not required

4  to do so in every instance, provide a notice that alerts the

5  Court as to what case is going to be called when we arrive for

6  the hearing.

7          THE COURT:  And what cases did that order include?

8          MR. SEXTON:  Well, in this instance, these were

9  noticed on that first category in all eleven cases that were

10  at issue and --

11          THE COURT:  Now, the opinion apparently has only

12  "Wingate" in the title.  Was that decision in any way

13  docketed?

14          MR. SEXTON:  The *Wingate* decision was docketed in the

15  *Wingate* case.  And, otherwise, the orders need to be entered

16  as to these other issues.

17          And I would mention that Insight's motion does not

18  affirmatively take issue with any aspect of this category of

19  orders.  They only talk about the orders on Demurrers, which

20  are motions to dismiss, that they filed.  So, they have not

21  complained about my first category, which is a very

22  substantial category that we've asked the Roanoke court to

23  deal with.

24          THE COURT:  And what's that?

25          MR. SEXTON:  Pardon me?

```
1              THE COURT:  What category?

2              MR. SEXTON:  The first category -- the first category

3    of orders that are outstanding, which is on Page 5 of my

4    declaration, Paragraph 18(A), the ones that deny Insight's

5    motion for leave to amend admissions and to reconsider partial

6    summary judgment that's been granted against it.

7              So, that's one category on which Insight has advanced

8    no contrary argument.  They have not briefed and they have not

9    asserted any position that those were not fully briefed and

10   argued in court.

11             THE COURT:  Yes, but were they decided?  I mean, my

12   problem is I don't understand what the Judge did.

13             MR. SEXTON:  Well, the issues are identical in each

14   case.

15             THE COURT:  Yes, but just because one case is

16   decided, if an identical issue comes up, are you saying that

17   the decision in one case automatically without more applies to

18   all the other cases?

19             MR. SEXTON:  Your Honor, what I'm saying is that in

20   this instance, all of the issues were identical and they were

21   all argued on the exact same day.

22             THE COURT:  But orders were -- an order was only

23   entered in one case.

24             MR. SEXTON:  Right.  And that was due to our neglect.

25   I mean, that's simply a housekeeping matter.  The Judge
```

1    certainly indicated -- I mean, believed he was ruling on all

2    ten.

3              THE COURT:  How do we know that?  How do we know

4    that?

5              MR. SEXTON:  Because we began this whole process,

6    your Honor -- if I go back to my declaration, which Mr. Busch

7    takes issue with, but --

8              THE COURT:  I have it here.  Page 5 you're looking

9    at?

10             MR. SEXTON:  Oh, my declaration.  I'm now describing

11   on Page 2, 2 of the declaration.

12             THE COURT:  Well, Page 2 is one of those I think I

13   don't have.

14             MR. SEXTON:  You would have it on 1161.

15             COURTROOM DEPUTY CLERK URSO:  Judge, do you want me

16   to print this?

17             MR. SEXTON:  All right.  Your Honor, let me just

18   briefly summarize what happened.

19             When we arrived in court on February 27th -- and this

20   is on the record at the end of the hearing -- the Court

21   explained to us that they had lost two judges in the circuit

22   and that these were going to require some procedural and

23   administrative issues, which he invited us back to talk about,

24   and he said there was no need to do it on the record.  He

25   wanted to do it off the record.

1          So, we all go back, all counsel go back -- and, by

2     the way, my recount of this is contained in the declaration

3     and I also sent this declaration to counsel for the other

4     three defendants, IGPM and the two doctors, days ago, days

5     before I filed it, and I asked them to verify it and make sure

6     that it was consistent with their recollection.  They

7     confirmed that by email to me.  And so, I have a great deal of

8     confidence that my memory on these issues is correct.

9          Having prefaced his statements with the fact that the

10    Court was down -- understaffed now by two full-time judges, he

11    asked us to try to be efficient in this case.  We explained

12    that we would have 18 or 19 identical cases.  He explained

13    that he was going to be the judge on all the cases that we

14    filed, Gentry Locke, and all the other meningitis filed that

15    were filed in Roanoke Valley.

16         He explained also that because they were short

17    staffed, he was going to need us to help him be efficient as

18    the judge on these things.

19         Now, the declaration by Mr. Shaw tries to assert that

20    this was only about discovery issues.  I would say that that

21    does not pass the common sense test because obviously the

22    Court is not worried about how we conduct discovery.

23    Certainly, we may have talked about discovery at that time,

24    but the reason the Court invited us back was because he was

25    concerned about his docket and how he could be efficient.  At

1    that point in time --

2              THE COURT:  By mucking up my docket.

3              MR. SEXTON:  Pardon me?

4              THE COURT:  No, nothing.

5              MR. SEXTON:  At that point in time we proposed that

6    we would handle matters in a way that was very efficient and

7    did not require duplicate actions by the Court.

8              Again, this is very consistent with common sense.

9    When you have 18 identical cases, twelve as of that day, but

10   we had informed him we were going to have another six or seven

11   that were being filed imminently and, of course, the Court is

12   not going to want to hear 18 or 19 separate motions on the

13   same identical hearing.  I'm talking about identical facts

14   pled in the complaint and identical Demurrers filed by the

15   defendants.  So, that is the context in which this arose.

16             Now, when the *Wingate* opinion did come out -- I

17   notice that Mr. Shaw's declaration says after Judge Dorsey's

18   ruling, Insight did not agree to entry of orders in the other

19   18 cases.

20             That may be true in his memory, but if lead counsel

21   at that time, whose name is Heather Dean, asked me in the

22   presence of counsel for the other defendants if we were going

23   to file all 19 amendments at the same time, all 19 amended

24   complaints, and they expressed their concern that that would

25   be overwhelming.  We all agreed as three groups of counsel not

1    to do that.

2         So, while he may in his mind be able to justify

3    saying that there were -- there was no agreement -- they

4    certainly asked me if I was going to file all 19 amendments at

5    the same time, and I would say that certainly implies that

6    they were confirming the understanding we had with the Court

7    at the very beginning, that these matters would be handled in

8    an efficient way so that the Court would not have to have

9    serial hearings on the same exact issue in each case.

10         THE COURT:  Excuse me, Mr. Sexton.

11         How do I decide what you have now created as a

12    question of fact?  How do I decide this?

13         MR. SEXTON:  Well, your Honor, I believe your

14    inclination to have Judge Dorsey in Roanoke, Virginia review

15    these things just for the purpose of entering orders where he

16    believes he has already ruled on the issues of substance --

17         THE COURT:  Well, I don't know what he believes,

18    frankly, but defendants certainly don't think that they argued

19    all 18 cases or that the argument on *Wingate* applied to all

20    18.  And to the extent that the Judge signed his *Wingate*

21    opinion, but then did nothing with the other 18, what's the

22    significance of that?

23         I mean, the main question I have is both of you are

24    raising an issue of fact as to what the Judge down there did,

25    and unless I agree with Mr. Busch that my opinion effected a

```
1    transfer immediately, the issue still has to be decided before

2    the transfer can take place, I think, unless I short circuit

3    and say transfer, okay, now.

4              MR. SEXTON:  I believe that -- if I could go back to

5    what I was walking you through initially, which is that there

6    are two -- I mean, there are three categories of these orders,

7    and the second category are the Demurrers by the defendant

8    IGPM, the other defendant.  I've spoken with those counsel.

9    They fully agree that the orders should be entered in all

10   those cases because the Judge has already decided them.

11             THE COURT:  What counsel?

12             MR. SEXTON:  So, they have no -- that's not even this

13   defendant who is complaining to you.  That's the other group

14   of --

15             THE COURT:  Who agreed -- excuse me, Mr. Sexton.

16             Who agreed that the other -- that there should be

17   docket entries as to all?

18             MR. SEXTON:  Counsel for Image Guided Pain Management

19   agreed with me on the phone last week --

20             THE COURT:  But that's not this defendant.

21             MR. SEXTON:  But that is one of the categories of

22   orders that needs to be administratively answered, and that is

23   my point.

24             THE COURT:  Okay.  Is there anything else that you

25   wish to add?
```

1            MR. SEXTON:  Yes.

2            THE COURT:  Quickly.

3            MR. SEXTON:  As to the third category of orders, they

4    are the motions to dismiss filed by this defendant and as to

5    those, we believe we have set out why those issues have

6    already been decided, but that is, again, just --

7            THE COURT:  Those are not before me, are they?  Those

8    particular cases are not now before me, are they?

9            MR. SEXTON:  They are not before you, but those are

10   the ones that animate the motion that has been filed by

11   Insight.

12           As to the larger points, your Honor, I believe the

13   most important thing for you to understand in this motion is

14   that there is no emergency to this Court's jurisdiction, which

15   is the way that Insight had to cloak its motion in order to

16   plausibly bring it to you as an emergency injunction against

17   attorneys and plaintiffs 700 miles away.  Under that standard

18   for the Anti-Injunction Act, it has to be absolutely necessary

19   in aid of this Court's jurisdiction.  It is very limited.

20   It's very narrow and it's very strictly construed.

21           And the plaintiffs' steering committee has joined in

22   and supports the notion that the Roanoke court should be

23   allowed to handle what it -- this housekeeping issue and enter

24   appropriate orders that it believes it has already decided.

25           There is no emergency.  We gave 47 days' notice

1    before we selected the hearing date that Insight chose for the

2    presentment hearing, and as an accommodation of that, I won't

3    even be there.  I'll be out of the country.

4            We also advised this Court at the same time that we

5    were presenting orders to the Roanoke court.  There has no

6    rush and there has been nothing but transparency.

7            I believe that the absolute foundation for Insight's

8    argument rests on the false underpinning that the May 15th,

9    2014 decision by this Court is an order.  It accomplishes the

10   exclusive jurisdiction.  It accomplishes removal and transfer

11   all in one package, and it is precisely not any of those.

12           So, here presentment to the Roanoke court would aid

13   this Court and would aid any court to know what the Roanoke,

14   Virginia Judge has already decided about Virginia state law

15   issues.

16           So, I think in this sense, Insight is picking a fight

17   with the Roanoke court when none is needed and certainly no

18   need has been demonstrated.

19           If Insight is correct, just play it out and Insight

20   is correct in all that it says, then -- and this Court has

21   already done all the things that Insight heaps onto the

22   decision on May 15th, then an order by the state court in

23   Roanoke is meaningless and it would be void, in any event.

24   Certainly, no one needs to be enjoined.

25           So, we tried to lay these out as best we can in our

1    papers on short notice.  Again, I direct your attention to

2    Pages 2 and 3 of our declaration and also particularly to the

3    plaintiffs' steering committee's response, which I believe

4    brings a very common sense and pragmatic approach to this.

5            So, your Honor, with all of -- for those reasons, we

6    just respectfully request that the emergency motion be

7    declined.

8            THE COURT:  Okay.  Who would like to be next, Mr.

9    Sobol, Mr. Gottfried or Mr. Molton?

10           MR. SOBOL:  May I, your Honor?  Is that all right?

11           MR. MOLTON:  Go ahead, Tom.

12           MR. SOBOL:  Thank you.  Good morning, your Honor.

13   I'll try to be brief.

14           THE COURT:  For those on the phone, Mr. Sobol for the

15   plaintiffs' committee is speaking.

16           MR. SOBOL:  Thank you.

17           The threshold issue is whether or not your memorandum

18   opinion effectuated the transfer right then and there.  The

19   only two things I'll add is this:

20           First, of course, you at the end of a very thorough

21   memorandum indicate that you want guidance from the parties as

22   to how to effectuate it.  I think you couldn't be more clear

23   as a result of that, that it's not self executing.  I think if

24   we peal behind that, though, there are reasons why it's not

25   self executing.  The parties had briefed the issue of

1    jurisdiction.  Is there related-to jurisdiction?  Is there

2    ascension that's necessary?

3         The parties had not briefed -- I'm going to make an

4    effort to educate the Court regarding tricky issues, frankly,

5    in these circumstances.

6         How does the case get removed?  How do we effectuate

7    it?  We look at the jurisdictional statute.  I mean, there are

8    many cases in federal court where the federal court has

9    jurisdiction that is not exclusive to the state courts and

10   where even though the federal court has jurisdiction over it,

11   for some reason or another, the case hasn't been properly

12   removed or something like that in a timely way and the state

13   court simply goes forward.

14        And if you look at these statutes, they're tricky

15   right now, which is why the PSC has -- we've punted on these

16   issues for a couple of days.  We filed a memorandum regarding

17   what the Court should do on this.

18        THE COURT:  I noticed that.

19        MR. SOBOL:  Well, because -- you know, you look at --

20   there's a jurisdictional statute.  It only tells you about

21   jurisdiction.  You look at 157(b), it sort of looks like it's

22   transferring things within the federal court system, and you

23   sort of say to yourself how is this going to work.  So, I just

24   don't think that the memorandum can be looked at as being self

25   executing, number one.

1          The second thing is that the PSC looked hard at the

2    declarations and at the emails that Mr. Sexton sent us from

3    other defense counsel to at least make sure that there wasn't

4    some kind of monkey business going on here.  We would not, in

5    other words, want to be a part of something if there were

6    state court lawyers trying to effectuate some kind of

7    substantive ruling, you know, behind the scenes or without any

8    kind of transparent way and try and basically get away with

9    something.

10          We're not saying that Mr. Sexton is right and the

11   other guys are wrong.  We don't know that, right.  But we just

12   didn't know that -- more than passes the smell test.  In fact,

13   Mr. Sexton's declaration has a ring of truth to it in the

14   sense that you have lawyers trying to be practical with an

15   overburdened state court system, moving forward and not doing

16   a bunch of ministerial things, like filing amended complaints,

17   to then have Demurrers filed on them, to then have the Court

18   issue the orders, because Mr. Sexton is getting ready for the

19   trial of the *Wingate* matters and the lawyers want to spend

20   their time dealing with that, and there are many situations,

21   frankly, and I think that Mr. Sexton is overdoing it, you

22   know.  I don't think it's neglect.  Although in retrospect, it

23   might be neglect, but there are lots of things that are just

24   sort of practical rule of law taken care of, you know, the

25   details don't get followed through.

1            But my final point is simply this:

2            If you allow the state court judge to determine

3    whether or not he should enter these rulings or not, you will

4    at least have that information, when and if these cases get to

5    you.  If you don't, then you won't know what was intended, at

6    least by the state court judge.

7            Also, there's a little bit of irony here.  Even if

8    these cases are brought up right now and we don't have any of

9    this procedural mishegas going on and the Demurrers are before

10   you or the question as to whether or not the admission by

11   these defendants that they are not healthcare providers and,

12   therefore, aren't subject to any medical malpractice caps,

13   that's the kind of question which you might say, Well, gee,

14   why don't we go ask the state court judge what he thinks about

15   the -- you know, the strengths of the state law claims or

16   whether or not these things that were stated to him or filed

17   in his court should bind you.  So, you'd probably be asking

18   him, anyway.

19           So, I think the practical thing is -- oh, and also,

20   by the way, if you do let this go forward and if the Judge

21   does enter an order one way or another, you'll still be able

22   to revisit it here as to whether or not there are some

23   shenanigans that went on in connection with that or not.

24           So, I just think that the practical solution to --

25   oh, then also this:  Your memoranda asks for guidance as to

1  what you should do under these circumstances.  My view would

2  have been -- before this whole hullabaloo came along, my view

3  would have been, well, does the state court judge have any

4  tidying up of his docket to do before it gets here?

5  Particularly if there are things that are not yet finished and

6  which the Court might -- it might help the Court be educated

7  about what happened there.  So, my position would have been,

8  if there's any housekeeping to be done, let the couch be

9  cleaned before it gets sent here, anyway.

10         THE COURT:  Thank you.  Mr. Gottfried or Mr. Molton.

11         MR. GOTTFRIED:  Thank you, your Honor.  Michael

12  Gottfried for the trustee, Paul Moore.

13         Your Honor, you posed two questions.  The first

14  question is:  What was the impact of your order?

15         The trustee attempted to answer that question with

16  its proposed supplemental order, which was Docket 1137.  In

17  that proposed order, which was in response to the last

18  sentence of your ruling, we suggested that you grant the

19  motion effective as of May 15th, 2014, and our position is you

20  have the power to do that, and we urge you after you have a

21  chance to consider our order to enter it.  We think that that

22  is the appropriate way to effectuate your memorandum of

23  decision pursuant to 28 U.S.C. 157(b)(5).

24         THE COURT:  And leave any disputes about what

25  happened in Virginia in Virginia?  Or maybe it will come

1    along.

2             MR. GOTTFRIED:  As to your second question, the

3    trustee really expresses no opinion.  We weren't there.  We

4    don't know what happened.  We think the parties have presented

5    that to you for decision and obviously you will have to decide

6    that issue.

7             But our dog in this fight is we would like to get

8    these cases here as soon as possible.  We'd like you to

9    consider our proposed order and enter it so we can proceed

10   forward in the MDL.

11            You heard that there's a great interest, perhaps, in

12   mediation.  We would like to get those cases here and get

13   going with that just as soon as we can, and obviously no

14   position on what happened in Roanoke.  We weren't there.

15   Thank you, your Honor.

16            THE COURT:  Mr. Molton.

17            MR. MOLTON:  Your Honor, I'm not going to repeat what

18   Mr. Gottfried said, but a number of things.

19            We, again, join Mr. Gottfried in urging the Court

20   enter an order as soon as possible.  We leave it to your Honor

21   in that order whether to leave it to the Virginia Judge or not

22   or to yourself to deal with certain, as Mr. Sobol said, house-

23   cleaning items, but I do want to make an important point.

24            Without divulging confidential discussions, there is

25   significant interest in getting these parties into mediation.

1    That has to happen sooner rather than later.  We've got

2    planned discussions coming down the line over the summer.  It

3    is the intent of the trustee and the committee to see if we

4    can file a disclosure statement with a plan by the end of the

5    summer, end of August, early September.

6         Any delay on not only this case, but other cases,

7    creates a number of ripples that delays the ultimate.  So,

8    what we're concerned about, looking at how your Honor

9    formulates the order, is that -- we're informed by Mr. Sexton

10   that there is a hearing now for June 27th.  I wish that

11   hearing would have been earlier in Virginia so that if your

12   Honor was inclined for the Virginia Judge to deal with these

13   issues, it could be dealt with and the cases could be

14   transferred.

15        THE COURT:  This is a hearing on what?

16        MR. MOLTON:  My understanding is there is a

17   conference in front of the Virginia Judge on this matter that

18   has been set by Mr. Busch on behalf of his clients as well as

19   by Mr. Sexton on behalf of his clients for June 27th.

20        Our fear from the committee -- and I'm presuming that

21   the trustee will join with us -- is that that will create

22   ancillary litigation that would drag on the summer.

23        So, to the extent that these issues, you know -- and,

24   as Mr. Sobol said, you know, let the Virginia Judge do

25   housekeeping.  We're also fearful that -- what that term

1    means, because the term "housekeeping" can be a loophole

2    through which armies can march and issues that aren't even

3    discussed here can be presented.

4         So, we're urging your Honor in formulating an order,

5    and if your Honor decides to let the Virginia state court

6    Judge deal with this, to be very exact in exactly what has to

7    be dealt with and the timeframe with which that should be

8    dealt with, because, as Mr. Gottfried says, it's in the

9    interest of all the victims to get these cases here in front

10   of you as soon as possible.

11        And just one point that Mr. Sobol raised that goes

12   to, really, Mr. Sexton's reconsideration motion that really

13   isn't teed up for today.  I know that the trustee and the

14   committee wanted to file --

15        THE COURT:  I've had some briefing on that.  Motion

16   for reconsideration is denied.

17        MR. MOLTON:  Thank you.

18        In any event, Judge, I just wanted to say that these

19   -- the issue of transfer pursuant to 157 isn't rocket science.

20   Article III judges deal with them all the time, effectuating

21   orders that transfer cases from state courts to their courts,

22   most of the time MDL's like this Court.  It's done all the

23   time.  It's not unusual.  And we have full faith that your

24   Honor will be able to craft an order in accordance with the

25   trustee's proffered order that will do that.  Thank you.

```
1              THE COURT:  Thank you.
2              Is there anyone on the telephone who needs to be
3    heard?  Needs to be heard.
4              (No response.)
5              THE COURT:  I take that silence as nobody.
6              Mr. Sobol, you didn't want to anything, did you?
7              MR. SOBOL:  Well, I just wanted to make it clear,
8    your Honor, that it's the PSC and the Roanoke plaintiffs and
9    the creditor's committee and the trustee and Insight who are
10   all getting ready to participate in the mediation.  The issues
11   before you have nothing whatsoever to deal with in terms of
12   whether there's mediation or the timing of it.
13             THE COURT:  You mean if the cases stay in Virginia,
14   there will still be mediation?
15             MR. SOBOL:  Of course, there will.
16             THE COURT:  Okay.
17             MR. SOBOL:  Your Honor, unless Insight decides it
18   doesn't want to for some reason, right?  The plaintiffs are
19   ready to -- you know, the plaintiffs would like to have a
20   mediation, right, just like you do in every other mass tort
21   when there are state cases and there are federal cases.  It's
22   got nothing to do with this, and whether the Judge takes this
23   up tomorrow or the end of June, we're ready to roll.
24             THE COURT:  Okay.  Mr. Busch, you can have one
25   minute.  That's all.
```

1      MR. BUSCH:  Your Honor, this is not a housekeeping

2 matter.

3      Second, the notices of hearing are crucial.  The

4 February 27th hearing, there were no notices of hearing as to

5 Insight.  The --

6      THE COURT:  I think you've told me that.

7      MR. BUSCH:  The *Wingate* case was the only one noticed

8 for that day and had been removed.

9      Your Honor, Mr. Sexton went through several different

10 categories of orders.  There is no reason why if our co-

11 defendants don't object to the entry of an order, that they

12 can't just present an order to this Court based upon the

13 transfer of the cases.  So, there's no immediacy with respect

14 to our co-defendants.

15      If they believe that the Court has made a decision,

16 fine, you can enter into a consent order and that can be

17 entered in the MDL, but, your Honor, this is a hotly contested

18 issue.  There are 128 plaintiffs.  There are 30 cases.  There

19 are many cases in which the Demurrers have not been argued.

20 There is a dispute on whether this *Wingate* ruling should be

21 applied to these other 18 cases.  If you allow this to go

22 forward with Judge Dorsey, you're setting this Court up for

23 the opportunity for inconsistent rulings.

24      We do intend at some point, if we don't resolve the

25 cases through mediation, to bring these motions on in the

1    other cases that have been transferred pursuant to your order.

2         Again, there are 30 cases.  There are 128 plaintiffs,

3    and you just simply have to ask yourself -- and I know you

4    have -- why -- if this order was entered in *Wingate* in

5    November and there have been other hearings, why is there no

6    record that there was an agreement or a decision by Judge

7    Dorsey that his ruling in *Wingate* would apply?

8              THE COURT:  Okay.

9              MR. BUSCH:  Courts speak through their orders, your

10   Honor, and I think that it's important to note that there is

11   no documentation of this putative agreement.

12             THE COURT:  Thank you all.  I will take the papers

13   and give you as fast a decision as I can manage.

14             MR. MOLTON:  Your Honor, can I raise one issue?

15             Your Honor just on the record denied the motion for

16   reconsideration.  I want to be clear.  The motion was for

17   reconsideration and a stay pending appeal.  Is the motion for

18   stay pending appeal --

19             THE COURT:  The stay is denied.  The motion for

20   reconsideration is denied.

21             MR. MOLTON:  Thank you.

22             THE COURT:  Of course, counsel can go to the Court of

23   Appeals and seek a stay there.

24             MR. SOBOL:  Thank you, your Honor.

25             THE COURT:  Thank you all.

```
 1          MR. MATULE:  Thank you.

 2          MR. BUSCH:  Thank you, your Honor.

 3          (Adjourned, 10:28 a.m.)

 4

 5

 6               C E R T I F I C A T E

 7          I, Catherine A. Handel, Official Court Reporter of

 8     the United States District Court, do hereby certify that the

 9     foregoing transcript, from Page 1 to Page 40, constitutes to

10     the best of my skill and ability a true and accurate

11     transcription of my stenotype notes taken in the matter of No.

12     13-md-2419-RWZ, In Re: New England Compounding Pharmacy, Inc.,

13     Products Liability Litigation.

14

15

16     June 8, 2014          /s/Catherine A. Handel
       Date                  Catherine A. Handel, RPR-CM, CRR
17

18

19

20

21

22

23

24

25
```