NO. _____

## IN THE
# United States Court of Appeals
## FOR THE FIRST CIRCUIT

IN RE:  SANDRA F. ARTIS; DANA MARLENE BRADLEY; RONNIE A. BROWN; RONALD T. COURTNEY; TRUDY R. EPPERLY; BARBARA J. FILSON; ROBERT EARL HARRIS, JR.; JULIAN D. HOLBROOK; ROSE M. WHITE; CHESTER T. KALINOSKI; PAULINE R. MCFARLANE; ODESSA M. SHUCK; JAMES WIRT SMITH, JR.; RANDOLPH E. SMITH; RICHARD A. WHITLOW; PATRICIA S. BROWN, Executor of the Estate of Louis B. Spicer, Deceased; JOHN D. SPICER, Executor of the Estate of Louis B. Spicer, Deceased; JENAE S. PATSELL, Executor of the Estate of Louis B. Spicer, Deceased; Z.L.F., a minor, by his parents and next friends, Benjamin T. Foutz and Andrea L. Foutz; ROBERT DANA BENDER, Executor of the Estate of Ralph James Irace, Jr., Deceased,

*Petitioners*

ON PETITION FOR EXTRAORDINARY WRIT TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

DISTRICT COURT CASE NO. 1:13-MD-02419-RWZ

HON. RYA W. ZOBEL, UNITED STATES DISTRICT JUDGE, PRESIDING

### PETITION FOR WRIT OF MANDAMUS

James J. O'Keeffe, IV (1st Cir. Bar # 1159567)
GENTRY LOCKE RAKES & MOORE, LLP
800 SunTrust Plaza
P. O. Box 40013
Roanoke, Virginia 24022-0013
(540) 983-9300
(540) 983-9400 Fax
okeeffe@gentrylocke.com
*Counsel for Petitioners*

LANTAGNE LEGAL PRINTING 801 East Main Street Suite 100 Richmond, Virginia  23219 (804) 644-0477
A Division of Lantagne Duplicating Services

**EXHIBIT A**

# TABLE OF CONTENTS

Table of Authorities ............................................................................... iii

Introduction ............................................................................................ 1

Relief Sought........................................................................................... 3

Issue Presented........................................................................................ 3

1. Did the District Court err when it ruled that the mandatory-abstention provisions of 28 U.S.C. §1334(c)(2) did not bar it from exercising jurisdiction of this case?........................................... 3

Facts Necessary to Understand the Issue Presented .................................. 3

1. Insight  injected tainted steroids directly into the spinal columns of Virginia patients, maiming or killing them. .............................. 3

2. NECC, which produced the steroids, declared bankruptcy........................ 5

3. The Roanoke Plaintiffs sued Insight and local physicians in Virginia, asserting state-law claims............................................ 5

4. The Roanoke cases proceeded swiftly in state court. ................................ 9

5. Insight tried to remove the Roanoke Plaintiffs' cases to federal court, but was rebuffed by the Virginia district court, which determined that 28 U.S.C. § 1334(c)(2) barred it from exercising jurisdiction. ................................................................. 10

6. The Massachusetts District Court then reached exactly the opposite conclusion. It assumed that it had jurisdiction, denied the mandatory-abstention motion, and temporarily abstained pending the filing of proofs of claim against NECC.............................. 11

7. Insight filed a proof of claim, and the Trustee filed a renewed motion to transfer. ................................................................... 15

i

8. The District Court ruled that the Roanoke Plaintiffs' cases should be transferred to Boston...........................................................................16

Reasons Why the Writ Should Issue.........................................................................17

1. Governing Standard ...............................................................................17

2. The Roanoke Plaintiffs have no other adequate means of relief..............18

3. The Roanoke Plaintiffs are clearly entitled to the writ............................20

4. This case involves elemental issues of judicial authority........................27

CONCLUSION.........................................................................................................28

CERTIFICATE OF SERVICE ................................................................................29

ADDENDUM

Memorandum & Order on Trustee's Motion to Transfer Case & Related
Motions
entered May 31, 2013 (dkt170) ............................................................ADD – 1

Docket Entry 340 Text-only Ruling Denying Motion to Alter or Amend
Judgment under Rule 59(e) and Motion to Certify for Interlocutory
Appeal under 28 U.S.C § 1292(b)
Entered July 18, 2013 (dkt340) ...........................................................ADD – 34

Memorandum of Decision
Entered May 15, 2014 (dkt1131)..........................................................ADD – 36

Order on Miscellaneous Relief with Attached Exhibit A
Entered June 5, 2014 (dkt1173)...........................................................ADD – 51
Ex. A: List of Pending Actions transferred to the United States
District Court for the District of Massachusetts
(dkt1173-1) ........................................................................ADD – 54

TABLE OF AUTHORITIES

**Cases**

*Abbatiello v. Monsanto,*
No. 06-civ-266, 2007 U.S. Dist. LEXIS 19790
(S.D.N.Y. March 8, 2007)........................................................................ 22, 23

*Beck v. Victor Equipment Company, Inc.,*
277 B.R. 179 (S.D.N.Y. 2002)........................................................................ 23

*Berry v. Pharmacia Corp.,*
316 B.R. 883 (S.D. Miss. 2004)..................................................................... 23

*Cheney v. United States District Court,*
542 U.S. 367 (2004).................................................................................... 17

*Christopher v. Stanley-Bostitch,*
240 F.3d 95 (1st Cir. 2001)........................................................................... 18

*Connecticut Nat'l Bank v. Germain,*
503 U.S. 249 (1992).................................................................................... 22

*Corley v. United States,*
556 U.S. 303 (2009).................................................................................... 24

*Glover v. Johns-Manville Corp.,*
525 F.Supp. 894 (E.D. Va. 1979) ................................................................. 26

*In re Continental Airlines,*
91 F.3d 553 (3d Cir. 1996)........................................................................... 19

*In re Dow Corning Corp.,*
86 F.3d 482 (6th Cir. 1996)........................................................................... 21

*In re Federal-Mogul Global, Inc.,*
282 B.R. 301 (D. Del. 2002)......................................................................... 25

*In re GSF Corp.*,
938 F.2d 1467 (1st Cir. 1991) ........................................................ 12

*In re Healthco Int'l, Inc.*,
136 F.3d 45 (1st Cir. 1998) ............................................................ 19

*In re Pub. Serv. Co. of New Hampshire*,
963 F.2d 469 (1st Cir. 1992) .......................................................... 19

*McFarlane v. Insight Health Corp.*,
No. 7:13-cv-146, 2013 U.S. Dist. Lexis 67375
(W.D. Va. May 10, 2013) ............................................................... 21

*Nationwide Mut. Ins. Co. v. Jewell Tea Co.*,
202 Va. 527, 118 S.E.2d 646 (1961) ............................................. 26

*Pacor v. Higgins*,
743 F.2d 984 (3d Cir. 1984) ........................................................... 12

*Philip Morris, Inc. v. Emerson*,
235 Va. 380, 368 S.E.2d 268 (Va. 1988) ...................................... 26

*Sullivan v. Robertson Drug Co.*,
273 Va. 84, 639 S.E.2d 250 (2007) ............................................... 26

*Sykes v. Bayer Pharm. Corp.*,
548 F. Supp. 2d 208 (E.D. Va. 2008) ............................................ 25

*United States v. Horn*,
29 F.3d 754 (1st Cir. 1994) ............................................................ 18

*Wingate v. Insight Health Corp.*,
No. 7:13-cv-142, 2013 U.S. Dist. LEXIS 67358 (W.D. Va.
May 10, 2013) ......................................................................... passim

**Statutes**

28 U.S.C. § 157(b) ................................................................................ 13

28 U.S.C. § 157(b)(2)(B) ...................................................................... 22

28 U.S.C. §157(b)(4) ............................................................................. 21

28 U.S.C. § 1292(b) .............................................................................. 20

28 U.S.C. § 1334 ................................................................................... 12

28 U.S.C. § 1334(b) .............................................................................. 11

28 U.S.C. § 1334(c)(1) ........................................................................... 13

28 U.S.C. § 1334(c)(2) ..................................................................... passim

28 U.S.C. § 1452 ................................................................................... 11

28 U.S.C. § 1651 ..................................................................................... 3

Va. Code § 8.01-34 ............................................................................... 26

Virginia Code §§ 8.01-267.1 through 8.01-267.8 ......................................... 10

**Rules**

Fed. R. App. P. 21 ................................................................................... 3

Fed. R. Civ. P. 59(e) .............................................................................. 14

**Other**

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* (2012) ............................................................................ 24

Centers for Disease Control, Multistate Outbreak of Fungal Meningitis
and Other Infections – Case Count,
http://www.cdc.gov/hai/outbreaks/meningitis-map-large.html, (last visited
June 18, 2014) ................................................................................................ 5

Official Creditors' Committee Powerpoint, *In re New England
Compounding Pharmacy, Inc.* (June 2013) .................................................. 14

## Introduction

This Petition arises in the context of a multidistrict litigation pending in Boston, which has consolidated mass-tort cases against a bankrupt defendant, New England Compounding Pharmacy, Inc. ("NECC"). The District Court has purported to exercise "related-to" bankruptcy jurisdiction over a set of state-law tort cases from Roanoke, Virginia against non-debtor defendants, and has ordered their transfer to the MDL. It has done so in violation of a statute, 28 U.S.C. § 1334(c)(2), that plainly directs it to abstain from exercising any such jurisdiction.

The Roanoke Plaintiffs[1] ask the Court to issue a writ of mandamus directing the District Court to abstain from exercising jurisdiction in accordance with this explicit Congressional directive.

Mandamus may be an extraordinary remedy, but it is warranted here for three reasons. First, the Roanoke Plaintiffs have no other adequate means of relief; the bankruptcy Trustee and other bankruptcy-related parties have assured them that

---

[1] The Roanoke Plaintiffs are Sandra F. Artis; Dana Marlene Bradley; Ronnie A. Brown; Ronald T. Courtney; Trudy R. Epperly; Barbara J. Filson; Z. L. F., a Minor, by His Parents and Next Friends, Benjamin T. Foutz and Andrea L. Foutz; Robert Earl Harris, Jr.; Julian D. Holbrook; Robert Dana Bender, Executor of the Estate of Ralph James Irace, Jr., Deceased; Chester T. Kalinoski; Pauline R. McFarlane; Odessa M. Shuck; James Wirt Smith, Jr.; Randolph E. Smith; Patricia S. Brown, John D. Spicer, and Jenae S. Patsell, Executors of the Estate of Louis B. Spicer, Deceased; Rose M. White; and Richard A. Whitlow. They previously included Sharon G. Wingate, Executor of the Estate of Douglas Gray Wingate, Deceased, but she has voluntarily dismissed her claims.

1

any traditional appeal would be equitably moot before it saw the light of day, and they are sure to challenge this Court's appellate jurisdiction over an interlocutory appeal.

Second, the Roanoke Plaintiffs are clearly entitled to the writ. The District Court itself acknowledged that a strict textual reading of the relevant statutes would require it to abstain from exercising jurisdiction. ADD 20. But it declined to adopt that textual reading, deciding instead that Congress meant to impose a much more limited (if not practically nonexistent) mandatory-abstention requirement than the text of the statutes would indicate. ADD 20-23. Just weeks earlier, however, the Roanoke Plaintiffs' home district court in Virginia had applied the same statutes to the same facts, and had come to the opposite conclusion: Congress's plain language forbids district courts from exercising bankruptcy jurisdiction over their state-law claims against non-debtor defendants. *Wingate v. Insight Health Corp.*, No. 7:13-cv-142, 2013 U.S. Dist. LEXIS 67358, *11-14 (W.D. Va. May 10, 2013).

And third, issuance of the writ is appropriate. The District Court's exercise of jurisdiction and transfer of the Roanoke Plaintiffs' cases to the MDL, notwithstanding Congress's direction to abstain, amounts to a judicial usurpation of power. It threatens the Roanoke Plaintiffs with irreparable harm—the loss of

2

any meaningful day in court—and raises elemental questions of judicial authority that are sure to arise again.

The Roanoke Plaintiffs are simultaneously pursuing an interlocutory appeal involving the same issue, *Artis v. Alaunus Pharm., LLC,* Case No. 13-2007. The Court has stated that this Petition and the appeal in Record No. 13-2007 will be consolidated to the extent possible.

## Relief Sought

The Roanoke Plaintiffs seek a writ of mandamus under the All Writs Act, 28 U.S.C. § 1651, and Rule 21 of the Federal Rules of Appellate Procedure directing the District Court to abstain from exercising jurisdiction of their cases under the mandatory-abstention provision of 28 U.S.C. § 1334(c)(2).

## Issue Presented

1. Did the District Court err when it ruled that the mandatory-abstention provisions of 28 U.S.C. §1334(c)(2) did not bar it from exercising jurisdiction of this case?

## Facts Necessary to Understand the Issue Presented

**1.     Insight injected tainted steroids directly into the spinal columns of Virginia patients, maiming or killing them.**

Insight Health Corp. operates imaging centers nationwide, including a facility located in Roanoke, Virginia. It provides various services to patients,

3

including image-guided pain therapy.[2] Insight contracted with Image Guided Pain

Management, P.C., and two local doctors, John Mathis and Robert O'Brien (the

"Physician Defendants"), to offer these services in Roanoke.[3]

Since it acquired the Roanoke clinic, Insight has purchased a drug called

"methylprednisolone acetate," or "MPA," from NECC.[4] Insight used this MPA to

provide epidural steroid injections for patients suffering from chronic pain.[5] It

injected the MPA directly into its patients' spinal columns.[6]

Insight did not have a contribution or indemnification agreement with

NECC.

In September 2012, an outbreak of fungal meningitis swept the nation. The

Centers for Disease Control traced the fungal meningitis to MPA produced by

NECC.[7] As of May 6, 2013, the CDC had reported 53 deaths and 733 cases of

fungal-meningitis infection across twenty states.[8] Fifty-four fungal-meningitis

---

[2] Addendum to Proof of Claim by Insight Health Corp. at 2, *In re New England Compounding Pharmacy, Inc.*, No. 12-19882 (Bankr. D. Mass. Jan. 15, 2014), ECF No. 820-2.

[3] Am. Compl., *Wingate v. Insight Health Corp.*, No. CL12002547 (Roanoke City Cir. Ct. Dec. 6, 2013) at 2, ECF No. 764-1.

[4] Addendum to Proof of Claim by Insight Health Corp. at 2, ECF No. 820-2.

[5] *Id.*

[6] *Id.*

[7] *Id.* at 2-3.

[8] ADD 1.

4

cases have been traced to the Insight clinic in Roanoke, Virginia.[9] While the

fungal-meningitis outbreak spanned the country, the harm caused by Insight was

highly localized; only plaintiffs in Roanoke, Virginia, received tainted MPA from

Insight. The Petitioners comprise a substantial subset of those plaintiffs.

**2.      NECC, which produced the steroids, declared bankruptcy.**

Some of the Roanoke Plaintiffs sued NECC in federal court, asserting

traditional products-liability theories based on the tainted MPA they'd received.[10]

Faced with similar lawsuits from across the nation, NECC soon filed for

bankruptcy.[11] This triggered the automatic stay, and no further cases could be filed

against NECC.[12]

**3.      The Roanoke Plaintiffs sued Insight and local physicians in Virginia,
         asserting state-law claims.**

The Roanoke Plaintiffs also filed separate state-court complaints against

Insight, Image Guided Pain Management, and the Physician Defendants.[13] With

---

[9] Centers for Disease Control, Multistate Outbreak of Fungal Meningitis and Other
Infections – Case Count, http://www.cdc.gov/hai/outbreaks/meningitis-map-
large.html, (last visited June 18, 2014).
[10] *E.g.*, Compl., *Wingate v. New England Compounding Pharmacy, Inc.*, No. 7:12-
cv-576 (W.D. Va. Nov. 20, 2012), ECF No. 110-1.
[11] ADD 1-2.
[12] Decl. by J. Scott Sexton at 2, ECF No. 110; Notice of Stay, *Wingate v. New
England Compounding Pharmacy, Inc.*, No. 7:12-cv-576 (W.D. Va. Dec. 26,
2012), ECF No. 110-2.
[13] *E.g.*, Compl., *Wingate v. Insight Health Corp.*, No. CL12002547 (Roanoke City
Cir. Ct. Dec. 27, 2012), ECF No. 110-3.

5

the exception of allegations about the individual plaintiffs' injuries, the pleadings in these state-court cases are substantially identical. The Roanoke Plaintiffs are in the process of amending their state-court complaints, and eventually all of them will file pleadings in substantially the form of this amended complaint.[14]

While the Roanoke Plaintiffs' complaints against NECC were based on traditional products-liability theories,[15] their complaints against Insight asserted fraud, violations of the Virginia Consumer Protection Act, negligence, gross negligence, and negligence per se.[16] These are all state-law claims, and they are all supported by careful, individualized allegations about the state-court defendants' own misconduct—not the faulty product supplied by NECC.

For example, the Roanoke Plaintiffs allege that Insight conducted no due diligence whatsoever in selecting the source of its MPA.[17] Insight had access to numerous safer, alternative sources for the steroid, including sources regulated by the Food and Drug Administration.[18] It chose not to use them. Instead, it opted to

---

[14] *E.g.,* Am. Compl., *Wingate v. Insight Health Corp.*, No. CL12002547 (Roanoke City Cir. Ct. Dec. 6, 2013), ECF No. 764-1.

[15] Compl., *Wingate v. New England Compounding Pharmacy, Inc.*, No. 7:12-cv-576 (W.D. Va. Nov. 20, 2012) at 9-18, ECF No. 110-1.

[16] Am. Compl., *Wingate v. Insight Health Corp.*, No. CL12002547 (Roanoke City Cir. Ct. Dec. 6, 2013) at 42-65.

[17] Am. Compl. at 22.

[18] *Id.* at 18-19.

6

purchase MPA, a knockoff of the federally regulated Pfizer drug Depo-Medrol, from NECC.[19]

A little background puts that choice in context. As alleged in the amended complaints, compounding pharmacies like NECC have emerged over the past decade or so as a lightly regulated shadow market for pharmaceuticals.[20] They typically offer lower prices than larger, FDA-regulated drug companies.[21] Traditionally, compounding pharmacies have operated within hospitals or on a very small scale, mixing or "compounding" special pharmaceutical products to meet the specific needs of individual patients, pursuant to a valid prescription.[22] Because they are expected to produce only small quantities of drugs for prompt use in forms that are not commercially available, compounding pharmacies are not regulated by the FDA.[23]

These distinctions were lost on Insight, which purchased MPA in bulk from NECC. Insight's clinic manager now insists that he did not know that NECC was a compounding pharmacy, or even what a compounding pharmacy was in the first

---

[19] *Id.* at 18-19, 46-51.
[20] *Id.* at 17.
[21] *Id.*
[22] *Id.*
[23] *Id.*

7

place.[24] He claims that he didn't appreciate the difference between a compounding pharmacy and an FDA-regulated "Big Pharma" manufacturer like Pfizer.[25]

The slightest bit of inquiry, however, would have shown Insight that NECC was a dangerous mess.[26] Its facilities were housed in a sprawling complex of old buildings, located next to some railroad tracks and surrounded by a garbage dump.[27]

This is not to say that Insight was somehow duped by NECC. Far from it; the Roanoke Plaintiffs' complaints (and their exhibits) show that Insight played an active role in the debtor's misconduct. For example, to purchase its steroids, Insight prepared and sent "Prescription Order Forms" to NECC.[28] But instead of providing a prescription to obtain drugs for an individual patient, Insight completed the form by attaching the names and protected health information of roughly forty *prior* patients who had already received treatment at the Roanoke clinic.[29] In exchange for those forty names, Insight would receive 200 vials of

---

[24] *Id.* at 25.
[25] *Id.*
[26] *Id.* at 22.
[27] *Id.*
[28] *Id.* at 20.
[29] *Id.*

8

steroids with each order.[30] This use of historical patient information to order future doses in bulk violated patient privacy expectations, rules, and regulations.[31]

Once it had purchased the MPA, Insight stored it at room temperature for weeks at a time, even though the MPA did not contain any preservatives.[32]

Although Insight knew that it was purchasing knockoff drugs from a compounding pharmacy, rather than an FDA-approved and -regulated pharmaceutical company, it never informed its patients of this fact.[33] Just the opposite, Insight advertised that it used the trademarked, name-brand, FDA-approved steroids Depo-Medrol and Celestone Soluspan.[34] It gave its patients literature explaining that they'd received injections of Depo-Medrol, a drug produced by Pfizer.[35] In fact, Insight even billed its patients for Depo-Medrol rather than the imitations that it provided them.[36]

## 4.     The Roanoke cases proceeded swiftly in state court.

Once filed, the Roanoke Plaintiffs' state-court cases against Insight and the Physician Defendants moved forward quickly. The state court entered a scheduling order and granted motions for partial summary judgment in ten of these eighteen

---

[30] *Id.*
[31] *Id.* at 21.
[32] *Id.* at 26.
[33] *Id.* at 17, 34.
[34] *Id.* at 6.
[35] *Id.* at 34-35, Ex. C.
[36] *Id.* at 36, Ex. B.

cases. The bellwether case, *Wingate v. Insight,* was set for trial starting on April 21, 2014. Discovery in that case was essentially complete when it was voluntarily dismissed.[37] The parties had taken the depositions of the relevant local parties and Insight corporate representatives, and the plaintiff had disclosed her experts' opinions.[38]

Given the common allegations among the Roanoke lawsuits, the only material difference between the completed discovery in the bellwether *Wingate* case and the discovery in the remaining cases concerns the specific injuries suffered by the other Roanoke Plaintiffs. In other words, discovery is nearly complete for all of the cases. If forced to proceed in state court, Insight has indicated that it intends to consolidate all pretrial procedures in these cases under the Virginia Multiple Claimant Litigation Act, Virginia Code §§ 8.01-267.1 through 8.01-267.8.

**5.    Insight tried to remove the Roanoke Plaintiffs' cases to federal court, but was rebuffed by the Virginia district court, which determined that 28 U.S.C. § 1334(c)(2) barred it from exercising jurisdiction.**

While the Trustee's removal and transfer motion was pending in

Massachusetts, Insight began filing notices of removal in the Virginia state-court

---

[37] Nonsuit Order, *Wingate v. Insight Health Corp.*, No. CL12002547 (Roanoke City Cir. Ct. Jan. 27, 2014), ECF No. 820-1.

[38] Opp'n to Chapter 11 Trustee's Renewed and Supplemental Mot. to Transfer at 2-3, ECF No. 764.

actions, automatically transferring them to the United States District Court for the

Western District of Virginia.[39] The Roanoke Plaintiffs promptly moved to

remand.[40]

In a sternly worded opinion, the Virginia district court granted their motions

and remanded the cases. It assumed without deciding that it had related-to

jurisdiction under 28 U.S.C. § 1334(b).[41] Even so, it held that the mandatory-

abstention provisions of 28 U.S.C. § 1334(c)(2) barred it from exercising that

jurisdiction.[42] The Virginia district court also held that Insight's efforts at removal

were untimely,[43] and that it would alternatively remand the cases under the

equitable remand provisions of 28 U.S.C. § 1452.[44]

**6.      The Massachusetts District Court then reached exactly the opposite
conclusion. It assumed that it had jurisdiction, denied the mandatory-
abstention motion, and temporarily abstained pending the filing of
proofs of claim against NECC.**

Just three weeks after the Virginia district court decision, the District Court

in Massachusetts reached exactly the opposite conclusion, based on the same facts

and the same law.[45] The District Court granted the Trustee's motion to transfer in

---

[39] *Wingate v. Insight Health Corp.*, No. 7:13-cv-142, 2013 U.S. Dist. LEXIS at *5.
[40] *Id.* at *5-6.
[41] *Id.* at *2, *6.
[42] *Id.* at *11-15.
[43] *Id.* at *10-11.
[44] *Id.* at *15-17.
[45] ADD 1-33.

11

large part, but denied it with regard to the Roanoke Plaintiffs' claims.[46] It

specifically cited a concern that, if all unsecured creditors were paid *pari passu*,

even a single large contribution or indemnity claim could "greatly diminish, or

virtually eliminate" the amount available to be paid to other victims.[47]

The District Court began by analyzing its subject-matter jurisdiction, and

specifically whether it enjoyed "related-to" bankruptcy jurisdiction under 28

U.S.C. § 1334.[48] After noting a split among the federal circuits as to whether

related-jurisdiction applies to the potential contribution or indemnification claims

of non-debtor defendants like Insight, and recognizing that such jurisdiction

remains an open question in this Circuit, the District Court acknowledged that its

jurisdiction was "unclear at best."[49] It nonetheless assumed that it had related-to

jurisdiction over the Roanoke Plaintiffs' state-court cases, but declined to exercise

that jurisdiction under its permissive-abstention authority.[50]

---

[46] ADD 31.

[47] ADD 7.

[48] District courts have original, but not exclusive, jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334. A civil proceeding is "related to" a bankruptcy matter in this context if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *In re GSF Corp.*, 938 F.2d 1467, 1475 (1st Cir. 1991), *overruled on other grounds by Connecticut Nat'l Bank v. Germain*, 503 U.S. 249 (1992) (quoting *Pacor v. Higgins,* 743 F.2d 984, 994 (3d Cir. 1984)).

[49] ADD 25.

[50] *Id.*

12

The District Court further determined, however, that it would have related-to jurisdiction over any state-court case where *any* party—plaintiff or defendant—had asserted a claim against NECC.[51] At the same time, it advised the parties that "[a]ny defendant who did not file a claim would be barred [from asserting contribution claims against NECC], and the state-court case could proceed to judgment without interference from the federal court."[52]

The District Court thus told the parties, in essence, that the only thing that Insight needed to do to facilitate the transfer of the cases was to file a proof of claim—and that if it failed to file such a proof of claim, Insight would forfeit any right to contribution.[53] Pending that proof of claim, the District Court temporarily abstained from asserting jurisdiction under 28 U.S.C. § 1334(c)(1).[54] It asked the bankruptcy court to "set a relatively early bar date for the filing of claims against the estate."[55] The District Court thus basically invited the Trustee and Insight to renew their transfer efforts once Insight had filed a proof of claim—which Insight would surely do in light of the District Court's ruling.

With regard to mandatory abstention, the District Court acknowledged that a literal reading of the relevant statutes—28 U.S.C. §§ 1334(c)(2) and 157(b)—

---

[51] ADD 18.

[52] ADD 19.

[53] ADD 19, 25-27.

[54] ADD 25.

[55] ADD 19.

13

would compel it to abstain from exercising jurisdiction, just as the Virginia district court had concluded.[56] The District Court nonetheless reasoned that Congress' exemption of "personal injury or wrongful death claims *against the estate*" also included claims against non-debtor defendants who might potentially, in turn, bring contribution or indemnification claims against the estate.[57] Thus, the lower court concluded, mandatory abstention did not apply to the Roanoke Plaintiffs' claims, because non-debtor defendant Insight might one day bring a contribution or indemnification claim against NECC.[58]

The Roanoke Plaintiffs asked the District Court to reconsider, filing a Rule 59(e) motion to alter or amend the judgment.[59] The District Court declined.[60]

---

[56] ADD 20.
[57] ADD 22-23.
[58] ADD 23. After the District Court's ruling, and in a document that is not included in the Record, the Official Creditors' Committee invited Insight to file a proof of claim against NECC, offering to include a non-debtor discharge in the NECC bankruptcy plan for any state-court defendant that agreed to contribute sufficient funds to the NECC bankruptcy pot. Official Creditors' Committee Powerpoint, *In re New England Compounding Pharmacy, Inc.* at 17 (June 2013). While noting the uncertain authority for such a discharge in this Circuit, *id.* at 21-22, the Committee suggested that appellate review would be unavailable because the issue would have become "equitably moot" by the time an appeal was filed. *Id.* at 24. The doctrine of equitable mootness is discussed in the text below at pages 18-20.
[59] Mot. to Alter or Amend Judgment Under Rule 59(e), ECF No. 195.
[60] ADD 34-35.

14

7.     **Insight filed a proof of claim, and the Trustee filed a renewed motion to transfer.**

On December 24, 2013, Insight accepted the District Court's invitation and filed a proof of claim against NECC.[61] The District Court acknowledges that it prodded Insight to file that document.[62]

Three days later, the Trustee filed a renewed motion to transfer the Roanoke Plaintiffs' cases to the District of Massachusetts to be tried as part of the NECC bankruptcy proceeding.[63] The Roanoke Plaintiffs, in turn, renewed their motions for mandatory or permissive abstention.[64]

Of all of the parties in the Roanoke Plaintiffs' state-court lawsuits, only Insight wants to be in federal court in Massachusetts. The physician defendants did not file proofs of claim, and Image Guided Pain Management actually filed a formal opposition to the Trustee's transfer motion.[65]

Ultimately, the Roanoke Plaintiffs each filed a proof of claim against NECC.[66] They did so under duress, because the applicable Bar Date Notice asserted that, if a claimant did not submit a claim against NECC before the bar

---

[61] ADD 42.
[62] *See* ADD 42 ("Perhaps taking the hint, Insight did in fact file a proof of claim in the NECC bankruptcy case.").
[63] ADD 40.
[64] ADD 40-41.
[65] Insight's Mem. in Opp'n to Chapter 11 Trustee's Renewed and Supplemental Mot. to Transfer, ECF No. 846.
[66] ADD 41.

date, then that claimant may never be able to recover from any person or entity—

including healthcare providers—related in any way to the use of a NECC

product.[67] The Plaintiffs' Steering Committee also emailed all plaintiffs' counsel in

the MDL, advising them that their failure to file a proof of claim against NECC

would jeopardize their claims against pain clinics, hospitals, doctors, and other

medical providers.[68] Accordingly, the Roanoke Plaintiffs filed proofs of claim with

addenda specifically objecting to this requirement, making it clear that they were

filing proofs of claim only to preserve previously asserted claims against non-

debtor third parties.[69]

**8.     The District Court ruled that the Roanoke Plaintiffs' cases should be transferred to Boston.**

On February 6, 2014, United States District Judge F. Dennis Saylor, IV, who

had been presiding over the MDL, determined that he had to recuse himself.[70] A

new judge, the Honorable Rya A. Zobel, was assigned.[71]

Judge Zobel granted the Trustee's motion to transfer and denied the

Roanoke Plaintiff's motion for mandatory abstention.[72] Judge Zobel unequivocally

---

[67] *See* Proof of Claim by Insight Health Corp., *In re New England Compounding Pharmacy, Inc.*, No. 12-19882 (Bankr. D. Mass. Jan. 15, 2014), ECF No. 820-2.
[68] Reply to Resp. to Chapter 11 Trustee's Mot. to Transfer, Ex. 1, ECF No. 844-1.
[69] Reply to Resp. to Chapter 11 Trustee's Mot. to Transfer, Ex. 2, ECF No. 844-2.
[70] Recusal Order, Feb. 7, 2014, ECF No. 889.
[71] Notice of Reassignment, Feb. 11, 2014, ECF No. 905.
[72] ADD 36-50.

16

determined that she had related-to jurisdiction over the Roanoke Plaintiffs' cases.[73]
With regard to the abstention issues, she summarized Judge Saylor's reasoning,
and "decline[d] to revisit or disturb [his] prior ruling with respect to mandatory
abstention."[74] Judge Zobel did not adopt, endorse, or elaborate upon Judge Saylor's
reasoning; she simply chose not to reconsider the issue. In light of the parties'
proofs of claims, Judge Zobel found permissive abstention to be inappropriate and
refrained from applying it.[75] She entered an order transferring the cases.[76]

## Reasons Why the Writ Should Issue

### 1.    Governing Standard

Three conditions must be satisfied before a writ of mandamus may issue.
*Cheney v. United States District Court*, 542 U.S. 367, 380 (2004). First, the
Petitioners must have no other adequate means to attain the relief they desire—"a
condition designed to ensure that the writ will not be used as a substitute for the
regular appeals process." *Id.* at 380-81. Second, the Petitioners must show that
their entitlement to the writ is clear and indisputable. *Id.* at 381. Third, the issuing
court must be satisfied that the writ is appropriate. *Id.* Mandamus is an
extraordinary remedy; only exceptional circumstances amounting to a judicial

---

[73] ADD 47.
[74] ADD 47-48.
[75] ADD 50.
[76] ADD 51.

17

usurpation of power or a clear abuse of discretion will justify its invocation. *Id.* at 380. This Court has thus recognized that mandamus is appropriate "in those rare cases in which the issuance of an order presents a question about the limits of judicial power, poses a risk of irreparable harm to the appellant, and is plainly erroneous, and the case for mandamus is particularly compelling where the order poses an elemental question of judicial authority." *Christopher v. Stanley-Bostitch*, 240 F.3d 95, 99-100 (1st Cir. 2001). Mandamus is also properly used to address issues that can significantly affect "other jurists, parties or lawyers" practicing in the federal courts. *United States v. Horn*, 29 F.3d 754, 769-70 (1st Cir. 1994).

This case meets all three of these conditions.

## 2.     The Roanoke Plaintiffs have no other adequate means of relief.

First, the Roanoke Plaintiffs have no other adequate means of relief. Among them, they have eighteen cases. While those cases have proceeded swiftly in state court, they have also proceeded separately and serially, and the District Court has now ruled that they must be transferred to Massachusetts. Meanwhile, the Trustee has reached an agreement in principle settling all claims against the Debtor, and he is a crafting a plan to distribute the Debtor's assets. Once that plan is confirmed, the distribution of assets will proceed swiftly. If the Roanoke Plaintiffs are forced to wait until a plan is confirmed before they can object to the abstention ruling,

18

they face the real danger that their appeal could be rendered moot. *See, e.g. In re Pub. Serv. Co. of New Hampshire*, 963 F.2d 469 (1st Cir. 1992).

That's because the doctrine of equitable mootness permits the dismissal of an appeal, "even though effective relief could conceivably be fashioned," when implantation of that relief would be imprudent and/or inequitable. *In re Continental Airlines*, 91 F.3d 553, 559 (3d Cir. 1996). While the doctrine relies on both equitable and pragmatic principles, see *In re Healthco Int'l, Inc.*, 136 F.3d 45, 48 (1st Cir. 1998), courts of this Circuit have hesitated to grant review when analyzing the relief requested would require unwinding extensive transactions. *See, e.g.*, *In re Pub. Serv. Co.*, 963 F.2d at 475 ("[U]nraveling the substantially consummated . . . plan would work incalculable inequity to many thousands of innocent third parties who have extended credit, settled claims, relinquished collateral and transferred or acquired property in legitimate reliance on the unstayed order of confirmation.").

As the Trustee and the Creditors' Committee anticipate, the prospect of unraveling a fast-moving distribution in a case of this complexity could well bar appellate review of the District Court's ruling. If the Roanoke Plaintiffs are forced to wait until the end of this case to appeal, their only chance for appellate review may have slipped away. They are not using mandamus to end-run the normal appeals process. Just the opposite, they have pursued a traditional appeal, which is

19

pending as Record No. 13-2007. They also sought certification for a permissive appeal under 28 U.S.C. § 1292(b), but the District Court denied their request. The Roanoke Plaintiffs seek mandamus only because they recognize that the appellees may challenge the Court's jurisdiction, and the risk of equitable mootness prevents them from waiting until the end of litigation in the trial court to bring an appeal. Indeed, this Court has already ordered briefing on certain jurisdictional issues. Mandamus is thus necessary to prevent irreparable harm.

### 3.     The Roanoke Plaintiffs are clearly entitled to the writ.

Second, the Roanoke Plaintiffs are clearly entitled to the writ under the plain terms of the relevant statutes. Even assuming that the District Court had related-to jurisdiction, which the Roanoke Plaintiffs dispute, it was barred from exercising that jurisdiction over their state-law claims by 28 U.S.C. § 1334(c)(2). Section 1334(c)(2) states:

> Upon timely motion of a party in a proceeding based upon a state law claim or state law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a state forum of appropriate jurisdiction.

20

28 U.S.C. §1334(c)(2). This provision serves important federalism policies by limiting the federal courts' intrusion into traditional state-law matters under the cloak of related-to bankruptcy jurisdiction.

The Roanoke Plaintiffs showed that they met the terms of this section 1334(c)(2), and the District Court did not question them. *E.g.*, ADD 20 & n.10. Likewise, Judge Wilson analyzed these factors in the context of a remand motion brought in the Western District of Virginia and concluded that the Roanoke Plaintiffs had met each element of the statute. *Wingate v. Insight Health Corp.*, No. 7:13-cv-142, 2013 U.S. Dist. LEXIS 67358, *12-13 (W.D. Va. May 10, 2013); *McFarlane v. Insight Health Corp.,* No. 7:13-cv-146, 2013 U.S. Dist. Lexis 67375 (W.D. Va. May 10, 2013).[77]

As the District Court recognized, the scope of section 1334(c)(2) is cabined by 28 U.S.C. §157(b)(4), which states that "[n]on-core proceedings under section 157(b)(2)(B) … shall not be subject to the mandatory abstention provisions of section 1334(c)(2)." ADD 20. Section 157(b)(2), in turn, states that non-core claims include "the liquidation or estimation of contingent or unliquidated personal

---

[77] If the Court has any questions about whether the Roanoke Plaintiffs meet the requirements of this statute, the appropriate solution is a remand to the District Court for an evidentiary hearing on the matter. *See In re Dow Corning Corp.,* 86 F.3d 482, 497-98 (6th Cir. 1996) (remanding for initial consideration of abstention issues "[b]ecause we believe that the district court is in a better position to make the necessary abstention determinations . . . .").

21

injury tort or wrongful death claims *against the estate* for purposes of distribution in a case under title 11." 28 U.S.C. § 157(b)(2)(B) (emphasis added).

Section 157(b)(2)(B)'s exemption is thus, by its plain terms, limited to actions *against the estate*. Sections 1334, 157(b)(4), and 157(b)(2)(B) are unambiguous. A straightforward reading of the statutes shows that section 157(b)'s exception to the mandatory abstention rule does not apply to Roanoke Plaintiffs' claims against Insight, because those claims are not claims against the Debtor's estate. That should have been the end of the analysis. *See Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 254 (1992) ("Where the words of a statute are unambiguous, then this first canon is also the last: 'judicial inquiry is complete.'"). It should have led the District Court to abstain from exercising jurisdiction. In fact, that's exactly what Judge Wilson did when applying the same statutes to the same facts earlier in the case. *Wingate,* 2013 U.S. Dist. LEXIS at *11-15.

The District Court itself acknowledged that a "strict textual reading of the statutes" could lead to this result. ADD 20. But it then came to the opposite conclusion, finding that the Roanoke Plaintiffs' state-law claims against Insight were not subject to mandatory abstention. ADD 20-21. It noted that other district courts had extended section 157(b)(4)'s exemption from mandatory abstention to claims against non-debtor third parties where those third parties had indemnification agreements with the debtor. *Id.* (citing *Abbatiello v. Monsanto,*

22

No. 06-civ-266, 2007 U.S. Dist. LEXIS 19790 (S.D.N.Y. March 8, 2007), and *Berry v. Pharmacia Corp*., 316 B.R. 883 (S.D. Miss. 2004)).

But *Abbatiello* and *Berry* offer little help here. Those cases both involved the same defendants, which were formed as spin-offs of old Monsanto and which operated with cross-indemnity agreements. *Abbatiello,* 2007 U.S. Dist. LEXIS at *9-11; *Berry,* 316 B.R. at 885-86. Insight has no such indemnification agreement with NECC. Thus, Judge Wilson correctly distinguished those cases, observing that "a judgment against [Insight] is not in practical effect a judgment against [the Debtor]." *Wingate*, 2013 U.S. Dist. LEXIS at *15.

The District Court ignored this distinction, and then looked past the plain language of the statutes to divine the congressional intent behind them. Citing *Beck v. Victor Equipment Company, Inc.,* 277 B.R. 179, 180-81 (S.D.N.Y. 2002), it determined that Congress was motivated by the potential negative effects that a substantial personal-injury or wrongful-death verdict could have on a debtor's estate, and therefore concluded that section 1334(c)(2)'s mandatory-abstention provisions should not apply to those cases. ADD 21-23. It noted that "[i]n many, if not all, jurisdictions, under ordinary circumstances, the debtor would be strictly liable for the harm caused by the defective product, even if there may have been a third-party interposed between the debtor and the tort claimant in the supply chain." ADD 22.

23

The District Court decided that, in light of these practicalities, the phrase "personal injury tort or wrongful death claims against the estate," as used in section 157(b)(2)(B), "can fairly be read to encompass not only personal injury and wrongful death claims, but also claims for contribution or indemnity that derive from personal injury or wrongful death claims." ADD 23. It concluded that such derivative claims are just procedural vehicles for asserting liability against the estate. *Id.*

This reasoning is seriously flawed. To begin with, it reads the limiting phrase "against the estate" out of section 157(b)(2)(B) altogether, rendering those words meaningless.[78] That violates the time-honored canon against surplusage. A statute should be interpreted so that all of its provisions are given effect, and none will be rendered inoperative, superfluous, or void. *E.g., Corley v. United States,* 556 U.S. 303, 315 (2009) (noting that this is "one of the most basic interpretative canons"); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 174-79 (2012) (discussing surplusage canon). Worse, the District Court's reading of the exceptions to mandatory abstention is so broad that those exceptions swallow the rule. If the District Court's interpretation were correct, it would be hard to imagine any situation where a district court would abstain from

---

[78] Alternatively, the District Court's reading adds to the statute the phrase "or any party that might have an inchoate claim for contribution or indemnity against the estate," which is equally improper.

24

exercising related-to jurisdiction under section 1334(c)(2). This, too, runs afoul of the longstanding canon against surplusage.

The District Court's mandatory-abstention holding also stands in irreconcilable tension with the remainder of its opinion. On the one hand, the District Court appropriately doubts whether a potential contribution or indemnity claim can ever render a personal-injury claim against a non-debtor "related to" a bankruptcy proceeding for purposes of bankruptcy jurisdiction, ADD 14-15—but at the same time, it characterizes such a claim against a non-debtor as being, in substance, an actual claim against the Debtor's estate, *id*. at 23. These two holdings are fundamentally at odds. As Judge Wilson correctly pointed out, "'[I]t is a far step' indeed to find 'that a claim against a non-debtor is actually a claim directly against the estate for the purposes of section 157(b)(2)(B).'" *Wingate*, 2013 U.S. Dist. LEXIS at *14 (quoting *In re Federal-Mogul Global, Inc*., 282 B.R. 301, 313 (D. Del. 2002)). Under any analysis, it must be easier for one item to be related to another than it is for that item to be *equivalent to* it; by definition, the former sets a lower threshold than the latter.

Finally, the District Court's concerns about strict liability are unfounded. Virginia law does not recognize strict liability for products-liability claims. *Sykes v. Bayer Pharm. Corp*., 548 F. Supp. 2d 208, 214 (E.D. Va. 2008). The District

25

Court's reliance on law from California and Michigan on this topic is thus misplaced.

Nor is there any basis for the District Court's evident concern that a judgment against Insight would automatically render NECC liable. ADD 23. Insight has no indemnification agreement with NECC. Further, under Virginia indemnity law, "active negligence prevents a party from seeking indemnity altogether." *Glover v. Johns-Manville Corp.*, 525 F.Supp. 894, 906 (E.D. Va. 1979); *see Philip Morris, Inc. v. Emerson*, 235 Va. 380, 411, 368 S.E.2d 268, 285 (Va. 1988).

As to contribution, Virginia law will enforce that right only where the wrong results from negligence and involves no moral turpitude. Va. Code § 8.01-34. Even then, contribution among joint tortfeasors responsible for an indivisible injury to a plaintiff is based on a pro rata allocation, not comparative fault. *See Sullivan v. Robertson Drug Co.,* 273 Va. 84, 91-92, 639 S.E.2d 250, 255 (2007). In Virginia, if a defendant is found liable and then seeks contribution from a joint tortfeasor, it has the burden of proving that the concurring negligence of the other party was proximate cause of the injury for which damages were paid. *Nationwide Mut. Ins. Co. v. Jewell Tea Co.,* 202 Va. 527, 531, 118 S.E.2d 646, 649 (1961). The potential contributing tortfeasor—here, NECC—would have the right to trial as to that and other defenses. *Id.* Thus, before Insight's potential contribution claim could have

26

any effect on the bankruptcy estate, Insight would have to (1) lose a lawsuit (2) have judgment entered against it (3) pay more than its pro rata share of the judgment (4) bring an entirely separate lawsuit against NECC, in which NECC would have to right to litigate any contested issues, and (5) win that lawsuit against NECC.

4.    **This case involves elemental issues of judicial authority.**

This case involves fundamental issues of judicial authority that will surely arise again in this and future mass-tort cases, as the flood of claims associated with mass torts often drives the primary defendant into bankruptcy. Recognizing this, in 28 U.S.C. § 1334(c)(2), Congress expressly proscribed the exercise of bankruptcy jurisdiction over state-law claims under the circumstances presented here. The District Court, however, ignored that prohibition and asserted jurisdiction over the Roanoke Plaintiffs' state-law cases. That exceeds the limits of its authority, as expressly set by Congress, and amounts to a judicial usurpation of power over state-court claims in a distant forum. It tramples on the traditional right of plaintiffs to choose their defendants and their forum, and threatens to rob the Roanoke Plaintiffs of any meaningful day in court. Simply put, courts are bound by the words that Congress uses, not some indeterminate intent that may (or may not) lurk behind them.

27

## Conclusion

Section 1334(c)(2) required the District Court to abstain from exercising jurisdiction over the Roanoke Plaintiff's claims. The Court should vacate the District Court's Order and remand this case for entry of an order of mandatory abstention.

ROANOKE PLAINTIFFS

By: /s/ James J. O'Keeffe, IV
Of counsel

James J. O'Keeffe (1st Cir. Bar #
1159567)
GENTRY LOCKE RAKES & MOORE LLP
800 SunTrust Plaza
P.O. Box 40013
Roanoke, Virginia  24022-0013
(540) 983-9459
Fax: (540) 983-9400
okeeffe@gentrylocke.com
*Counsel for Appellants*

28

CERTIFICATE OF SERVICE

I, James J. O'Keeffe, certify that on June 26, 2014, I caused Lantagne Legal Printing to file the required number of copies of this Petition for Writ of Mandamus in the Office of the Clerk of Court, via first class mail, and that I also caused Lantagne Legal Printing to serve a copy of the Petition on every party in the trial court and to provide a copy to the trial court judge via first class mail in accordance with Federal Rule of Appellate Procedure 21(a)(1). In addition, a copy of the Petition was filed electronically in the trial court and served on the parties via ECF, to assure prompt notice.


 /s/ James J. O'Keeffe
James J. O'Keeffe (1st Cir. Bar #115967)
GENTRY LOCKE RAKES & MOORE LLP
800 SunTrust Plaza
P.O. Box 40013
Roanoke, Virginia 24022-0013
(540) 983-9300
okeeffe@gentrylocke.com
*Counsel for Petitioners*


**Honorable Rya W. Zobel**
Judge, U.S. District Court,
District of Massachusetts
1 Courthouse Way – Suite 2300
Boston, MA 02210

**Franklin H. Levy**
**Ryan A. Ciporkin**
Lawson & Weitzen
88 Black Falcon Avenue
Suite 345
Boston, MA 02210
617–439–4990
Email: fhlevy@gmail.com
rciporkin@lawson–weitzen.com

**Frederick H. Fern**
**Alan M. Winchester**
Harris Beach PLLC
23rd Floor
New York, NY 10005
hbnecc@harrisbeach.com

**Geoffrey M. Coan**
**Daniel E. Tranen**
Hinshaw & Culbertson LLP
28 State Street
24th Floor
Boston, MA 02109
617–213–7000
Email: dtranen@hinshawlaw.com
Email: gcoan@hinshawlaw.com

29

**Jessica Saunders Eichel**
**Judi Abbott Curry**
Harris Beach PLLC
New York City Office
100 Wall Street
New York, NY 10005
Email: jeichel@harrisbeach.com
Email: hbnecc@harrisbeach.com

**Matthew P. Moriarty**
**Richard A. Dean**
**Thomas W. Coffey**
Tucker Ellis, LLP
925 Euclid Ave
Suite 1150
Cleveland, OH 44115−1414
Email:
matthew.moriarty@tuckerellis.com
richard.dean@tuckerellis.com
thomas.coffey@tuckerellis.com

**Matthew E. Mantalos**
**Paul Saltzman**
**Scott J. Tucker**
Tucker, Saltzman &Dyer, LLP
50 Congress Street
Boston, MA 02109
Email: mantalos@tsd−lawfirm.com
Email: saltzman@tsd−lawfirm.com
Email: tucker@tsd−lawfirm.com

**Scott H. Kremer**
Tucker, Heifetz &Saltzman
Three School Street
Boston, MA 02108
Email: kremer@tsd−lawfirm.com

**Daniel M. Rabinovitz**
**Nicki Samson**
**Brady J. Hermann**
Michaels &Ward, LLP
One Beacon Street
2nd Floor
Boston, MA 02108
Email: dmr@michaelsward.com
Email: ns@michaelsward.com
Email: bjh@michaelsward.com

**Robert H. Gaynor**
**John P. Ryan**
**William J. Dailey , Jr.**
Sloane &Walsh LLP
Three Center Plaza
Boston, MA 02108
Email: rgaynor@sloanewalsh.com
Email: jryan@sloanewalsh.com
Email: wdaileyjr@sloanewalsh.com

**Bruce A. Singal**
**Michelle R. Peirce**
**Callan G. Stein**
Donoghue, Barrett &Singal, PC
Suite 1320
One Beacon Street
Boston, MA 02108−3113
Email: bsingal@dbslawfirm.com
Email: mpeirce@dbslawfirm.com
Email: cstein@dbslawfirm.com

**Joseph P. Thomas**
Ulmer &Berne LLP
600 Vine Street
Suite 2800
Cincinnati, OH 45202
Email: jthomas@ulmer.com

**Joshua A. Klarfeld**
Ulmer &Berne LLP
1600 W. 2nd Street
Suite 1100
Cleveland, OH 44113
Email: jklarfeld@ulmer.com

**Robert A. Curley , Jr.**
Curley &Curley P.C.
27 School Street
6th Fl.
Boston, MA 02108
Email: rac@curleylaw.com

**Kenneth B. Walton**
**Kristen R. Ragosta**
**Pamela C. Selvarajah**
Donovan &Hatem, LLP
Two Seaport Lane
Boston, MA 02210
Email: kwalton@donovanhatem.com
Email: kragosta@donovanhatem.com
pselvarajah@donovanhatem.com

**Melinda L. Thompson**
Todd &Weld
28 State Street
31st Floor
Boston, MA 02109
Email: mthompson@toddweld.com

**Christopher R. O'Hara**
**Christopher Weld , Jr.**
Todd &Weld LLP
27th Floor
One Federal Street
Boston, MA 02110
Email: cohara@toddweld.com
Email: cweld@toddweld.com

**Kristin Muir Mykulak**
**Louis R. Moffa, Jr.**
**Stephen A. Grossman**
Montgomery, McCracken, Walker
&Rhoads, LLP
Liberty View
457 Haddonfield Rd.
Suite 600
Cherry Hill, NJ 08002
Email: kmykulak@mmwr.com
Email: lmoffa@mmwr.com
Email: sgrossman@mmwr.com

**Michael B. Hayes**
Montgomery, McCracken, Walker
&Rhoads, LLP
123 South Broad St
Philadelphia, PA 19109
Email: mhayes@mmwr.com

**John M. Lovely**
Cashman &Lovely
60 Austin Street
Suite 210
Newtonville, MA 02460
Email: jlovely@cashmanlovely.com

**Joseph R. Lang**
Lenox, Socey, Formidoni, Giordano,
Cooley, Lang &Casey, LLC
3131 Princeton Pike
Building 1B
Suite 104
Lawrenceville, NJ 08648
Email: jlang@lenoxlaw.com

**Michael Preston Gardner**
Leclair Ryan, A Professional
Corporation
18th Floor, Wells Fargo Tower
10 South Jefferson Street
Roanoke, VA 24011
michael.gardner@leclairryan.com

**Nancy Fuller Reynolds**
Leclair Ryan, A Professional
Corporation
18th Floor, Wells Fargo Tower
10 South Jefferson Street
Roanoke, VA 24011
nancy.reynolds@leclairryan.com

**Christopher M. Wolk**
**Jay J. Blumberg**
Law Offices of Jay J. Blumberg, ESQ.
158 Delaware St.
P.O. Box 68
Woodbury, NJ 08096
Email:
jjblumberg@blumberglawoffices.com

**Alan S. Bean**
**Chris J. Tardio**
**C. J. Gideon , Jr.**
**John−Mark Zini**
Gideon, Cooper &Essary, PLLC
315 Deaderick St.
Suite 1100
Nashville, TN 37238
Email: alan@gideoncooper.com
Email: chris@gideoncooper.com
Email: cj@gideoncooper.com
Email:john−mark@gideoncooper.com

**Matthew H. Cline**
Gideon, Cooper &Essary, PLC
315 Deaderick St
Suite 1100
Nashville, TN 37238
Email: matt@gideoncooper.com

**Sean E. Capplis**
**Matthew R. Connors**
Ficksman &Conley LLP
98 N. Washington Street
Suite 500
Boston, MA 02114
scapplis@capplisandconnors.com
mconnors@capplisandconnors.com

**Albert L. Hogan, III**
**Ron E. Meisler**
SKADDEN, ARPS, SLATE,
MEAGHER
&FLOM, LLP
155 N. Wacker Drive
Chicago, IL 60606
Email: al.hogan@skadden.com
Email: ron.meisler@skadden.com

**Diane Flannery**
**Samuel T. Towell**
**Stephen D. Busch**
MCGUIREWOODS LLP
One James Center
901 E. Cary St.
Richmond, VA 23219
Email:
dflannery@mcguirewoods.com
stowell@mcguirewoods.com
sbusch@mcguirewoods.com

32

**Christopher E. Trible**
MCGUIREWOODS LLP
One James Center
901 E. Cary St.
Richmond, VA 23219
Email: ctrible@mcguirewoods.com

**Matthew J. Matule**
Skadden, Arps, Slate, Meagher
&Flom LLP
500 Boylston Street
Boston, MA 02116
matthew.matule@skadden.com

**Eric J. Hoffman**
**Yvonne K. Puig**
**Adam T. Schramek**
FULBRIGHT &JAWORSKI, LLP
98 San Jacinto Blvd
Suite 1100
Austin, TX 78701
Email:
eric.hoffman@nortonrosefulbright.co
m
yvonne.puig@nortonrosefulbright.co
m
adam.schramek@nortonrosefulbright.
com

**Marcy H. Greer**
Alexander Dubose Jefferson
&Townsent
515 Congress Ave.
Suite 2350
Austin, TX 78701
Email: mgreer@adjtlaw.com

**Sarah P. Kelly**
**Stephen J. Brake**
Nutter, McClennen &Fish, LLP
Seaport West
155 Seaport Boulevard
Boston, MA 02210−2604
Email: skelly@nutter.com
Email: sbrake@nutter.com

**Tory A. Weigand**
**Anthony E. Abeln**
Morrison, Mahoney, &Miller LLP
250 Summer Street
Boston, MA 02210−1181
tweigand@morrisonmahoney.com
aabeln@morrisonmahoney.com

**James M. Campbell**
**David M. Rogers**
**Robert L. Boston**
Campbell, Campbell, Edwards
&Conroy,
One Constitution Plaza
Boston, MA 02129
jmcampbell@campbell−trial−lawyers.
com
drogers@campbell−trial−lawyers.com
rboston@campbell−trial−lawyers.com

James Rehnquist
Abigail K. Hemani
Josh L. Launer
Michael K. Murray
Roberto M. Braceras
Damian W. Wilmot
Goodwin Procter, LLP
Exchange Place
53 State Street
Boston, MA 02109
jrehnquist@goodwinprocter.com
ahemani@goodwinprocter.com
 jlauner@goodwinprocter.com
mmurray@goodwinprocter.com
rbraceras@goodwinprocter.com
DWilmot@goodwinprocter.com

Maura K. Monaghan
Debevoise &Plimpton LLP
919 Third Avenue
New York, NY 10022
Email: mkmonagh@debevoise.com

Barbara Hayes Buell
Smith Duggan Buell &Rufo LLP
Lincoln North
55 Old Bedford Road
Lincoln, MA 01773
Email:
barbara.buell@smithduggan.com

Elizabeth Masters Fraley
Fraley &Fraley LLP
901 Main St
Suite 6300
Dallas, TX 75202
Email: efraley@fraley−law.com

Daniel J. Divis
Frank A. Gerolamo
Gerolamo, McNulty, Divis &Lewbart
121 South Broad Street
Suite 1400
Philadelphia, PA 19107
Email: ddivis@gmdlfirm.com

Lauren Ellerman
Frith &Ellerman Law Firm, P.C.
P.O. Box 8248
Roanoke, VA 24014
Email: lellerman@frithlawfirm.com

David J. Molton
Brown Rudnick LLP
Seven Times Sq
New York, NY 10036
Email: dmolton@brownrudnick.com

Anne Andrews
Andrews &Thornton
2 Corporate Park
Suite 100
Irvine, CA 92606
Email: aa@andrewsthornton.com

Rebecca L. Fordon
William R. Baldiga
Brown Rudnick LLP
One Financial Center, 18th floor
Boston, MA 02111
Email: rfordon@brownrudnick.com
Email: wbaldiga@brownrudnick.com

34

**Christine J. Wichers**
United States Attorney's Office MA
Suite 9200
1 Courthouse Way
Boston, MA 02210
Email: christine.wichers@usdoj.gov

**Gregory Lee Lyons**
LICHTENSTEINFISHWICK PLC
PO BOX 601
ROANOKE, VA 24004−0601
Email: gll@vatrials.com

**Michael J. Pineault**
Clements &Pineault, LLP
24 Federal Street
Boston, MA 02110
Email:
mpineault@clementspineault.com

**Paul W. Shaw**
K &L Gates LLP − MA
One Lincoln Street
State Street Financial Center
Boston, MA 02111
Email: pshaw@verrilldana.com

**Mark David Smith**
Laredo &Smith, LLP
101 Federal Street, Suite 650
Boston, MA 02110
Email: smith@laredosmith.com

**Theresa A. Domenico**
McCumber, Daniels, Buntz, Hartig
&Puig,
PA
204 S. Hoover Blvd
Suite 130
Tampa, FL 33609
tdomenico@mccumberdaniels.com

**Robert James Durant**
Edwards Angell Palmer &Dodge LLP
2800 Financial Plaza
Providence, RI 02903
Email: rdurant@eapdlaw.com

**Michael P. Sams**
Kenney &Sams, P.C.
492 Old Connecticut Path
Framingham, MA 01701
Email: mpsams@KandSlegal.com

**Richards H. Ford**
Wicker, Smith, O'Hara, McCoy
&Ford,
P.A.
P.O. Box 2753
Orlando, FL 32802
Email: rford@wickersmith.com

**Arthur P. Brock**
**Cara E. Weiner**
**John B. Bennett**
Spears, Moore, Rebman &Williams,
PC
801 Broad Street
6th Floor
Chattanooga, TN 37402

**Nicole D. Dorman**
Law Office of Nicole D. Dorman,
LLC
P.O. Box 1142
Glastonbury, CT 06033
ndorman@nicoledormanlaw.com

**Peter G. Hermes**
**Scott S. Spearing**
**Dianne E. Ricardo**
Hermes, Netburn, O'Connor
&Spearing
265 Franklin Street
7th Floor
Boston, MA 02110
phermes@hermesnetburn.com
sspearing@hermesnetburn.com
dricardo@hermesnetburn.com

**Kathryn J. Humphrey**
Attorneys for Southeast Michigan
Surgical Hospital
400 Renaissance Center
Detroit, MI 48243−1668
Email: khumphrey@dykema.com

**Steven Weiss**
Shatz, Schwartz &Fentin P.C.
1440 Main Street
Springfield, MA 01103
413−737−1131
Fax: 413−736−0375
Email: SWeiss@ssfpc.com

**Cari A. Wint**
**Mark P. Goodman**
Debevoise &Plimpton, LLP
919 Third Ave
New York, NY 10022
Email: cawint@debevoise.com
Email: mpgoodma@debevoise.com

**C. Mark Hoover**
**Randy J. Hackney**
Hackney, Grover, Hoover &Bean
1715 Abbey Road
Suite A
East Lansing, MI 48823

**David M. Thomas**
RUTLEDGE, MANION, RABAUT,
TERRY &THOMAS, P.C.,
Fort Washington Plaza
333 West Fort Street
Suite 1600
Detroit, MI 48226
Email: dthomas@rmrtt.com

**Kip J. Adams**
Lewis Brisbois Bisgaard &Smith LLP
75 Arlington Street
Suite 500
Boston, MA 02116
Email: kip.adams@lewisbrisbois.com

**Scott C. Bentivenga**
Lewis Brisbois Bisgaard &Smith,
LLP
550 West Adams St
Suite 300
Chicago, IL 60661

36

**Thomas J. Schlesinger**
Lewis Brisbois Bisgaard &Smith LLP
Suite 2100
77 Water Street
New York, NY 10005
Email: tschlesinger@lbbslaw.com

**Carrie A. Hanger**
**Terrill J. Harris**
Smith, Moore, Leatherwood, LLP
300 N. Greene St
Suite 1400
P.O. Box 21927 (27420)
Greensboro, NC 27401
Email:
carrie.hanger@smithmoorelaw.com
terri.harris@smithmoorelaw.com

**Michelle J. Marzullo**
Marks, O'Neill, O'Brien, Doherty
&Kelly,
P.C.
600 Baltimore Ave
Suite 305
Towson, MD 21204
Email: mmarzullo@moodklaw.com

**Mark E. Anderson**
McGuireWoods LLP
434 Fayetteville St
Suite 2600
P.O. Box 27507 (27611)
Raleigh, NC 27601
manderson@mcguirewoods.com

**David E. Fialkow**
Nelson Mullins
One Post Office Square
30th Floor
Boston, MA 02109
Email:
david.fialkow@nelsonmullins.com

**C. Houston Foppiano**
**David H. Batten**
**G. Adam Moyers**
Batten Lee PLLC
4141 Parklake Ave
Suite 350
Raleigh, NC 27612
Email: hfoppiano@battenlee.com
Email: dbatten@battenlee.com
Email: amoyers@battenlee.com

**Emmitee H. Griggs**
**Jason D. Lewis**
Chambless Higdon Richardson Katz
&Griggs
3920 Arkwright Rd.
Suite 405
Macon, GA 31210
Email: sharden@chrkglaw.com
Email: jlewis@chrkglaw.com

**Brett J. Bean**
**Timothy J. Dardas**
Hackney, Grover, Hoover &Bean
1715 Abbey Rd
Suite A
East Lansing, MI 48823
Email: tdardas@hghblaw.com

37

**Clinton R. Shaw**
Bonner, Kiernan, Trebach &Crociata,
LLP
1233 20th St, N.W.
Suite 800
Washington, DC 20036

**John T. Sly**
Waranch &Brown, LLC
1301 York Rd.
Suite 300
Lutherville, MD 21093

**William E. Christie**
**Benjamin T. Siracusa Hillman**
Shaheen &Gordon, P.A.
107 Storrs Street
P.O. Box 2703
Concord, NH 03302−2703
wchristie@shaheengordon.com
bsiracusahillman@shaheengordon.co
m

**Alan J. Bozer**
Phillips Lytle, LLP
One Canalside
125 Main Street
Buffalo, NY 14203
Email: abozer@phillipslytle.com

**Joanna J. Chen**
Phillips Lytle, LLP
3400 HSBC Center
Buffalo, NY 14203
Email: jchen@phillipslytle.com

**Michael E. Hager**
11 Beacon Street
Suite 1200
Boston, MA 02108
Email: mehager175@hotmail.com

**Halley M. Stephens**
Fuller, Mitchell, Hood &Stephens,
LLC
2565 Barrington Circle
Tallahassee, FL 32308
Email: hstephens@fmhslaw.com

**John B. Reiss**
Doylestown Hospital
595 West State St
Doylestown, PA 18901

**Allen P. Neely**
McQuaide, Blasko, Inc.
811 University Dr
State College, PA 16801
Email: apneely@mqblaw.com

**Cynthia A. Palin**
Prindle, Amaro, Goetz, Hillyard,
Barnes
&Reinholtz
310 Golden Shore
4th Floor
Long Beach, CA 90802
Email: cpalin@prindlelaw.com

**Thomas J. Althauser**
Eccleston and Wolf, P.C.
7240 Parkway Dr
4th Floor
Hanover, MD 21076−1378
Email: althauser@ewmd.com

38

**Martin S. Hyman**
**Matthew C. Daly**
Golenbock Eiseman Assor Bell
&Peskoe
LLP
437 Madison Ave
New York, NY 10022
Email: mhyman@golenbock.com
Email: mdaly@golenbock.com

**Robert Homes Hood , Jr.**
Hood Law Firm
172 Meeting Street
Charleston, SC 29401
Email: bobbyjr.hood@hoodlaw.com

**Paul M. Corson**
Law, Brandmeyer Packer, LLP
245 S. Los Robles Ave
Suite 600
Pasadena, CA 91101
Email: pcorson@lawbrandmeyer.com

**Gregory K. Kirby**
Pessin Katz Law, P.A.
901 Dulaney Valley Rd
Suite 400
Towson, MD 21204
Email: gkirby@pklaw.com

**Brian M. Cullen**
Law Offices of Steven B. Stein
Two Financial Center
60 South Street
Suite 1000
Boston, MA 02111
Email: bcullen@stpaultravelers.com

**Jennifer Mikels**
**Michael R. Gottfried**
Duane Morris LLP
100 High Street
Suite 2400
Boston, MA 02110−1724
Email: jlmikels@duanemorris.com
Email: mrgottfried@duanemorris.com

**Thomas B.K. Ringe , III**
Duane Morris LLP
30 South 17th Street
Philadelphia, PA 01903−4196
Email: tbkringe@duanemorris.com

**Joseph Ahillen**
**Mary M. Bers**
Office of Attorney General (TN)
Civil Rights and Claims Div.
P.O. Box 20207
Nashville, TN 20207
Email: joe.ahillen@ag.tn.gov

**Zachary A. Cunha**
US Attorney's Office
1 Courthouse Way
Suite 9200
Boston, MA02110
Zachary.Cunha@usdoj.gov

**Thomas K. McCraw, Jr.**
LeClairRyan
One International Place
Boston, MA 02110
mccraw@leclairryan.com

39

# ADDENDUM

Page

Memorandum & Order on Trustee's Motion to Transfer Case & Related
Motions
    entered May 31, 2013 (dkt170) ............................................................. ADD – 1

Docket Entry 340 Text-only Ruling Denying Motion to Alter or Amend
Judgment under Rule 59(e) and Motion to Certify for Interlocutory Appeal
under 28 U.S.C § 1292(b)
    Entered July 18, 2013 (dkt340) ........................................................... ADD – 34

Memorandum of Decision
    Entered May 15, 2014 (dkt1131).......................................................... ADD – 36

Order on Miscellaneous Relief with Attached Exhibit A
    Entered June 5, 2014 (dkt1173).......................................................... ADD – 51
        Ex. A:  List of Pending Actions transferred to the United States District
            Court for the District of Massachusetts (dkt1173-1)........... ADD – 54

## UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| IN RE:  NEW ENGLAND | ) | MDL No. 1:13-md-2419-FDS |
| COMPOUNDING PHARMACY, INC. | ) | |
| PRODUCTS LIABILITY LITIGATION | ) | |
| | ) | |
| This Document Relates To: | ) | |
| | ) | |
| All Cases | ) | |
| | ) | |

## MEMORANDUM AND ORDER ON TRUSTEE'S
## MOTION TO TRANSFER CASES AND RELATED MOTIONS

**SAYLOR, J.**

### I.    Introduction

This litigation involves claims for wrongful death and personal injury arising out of the

administration of an injectable steroid, methylprednisolone acetate ("MPA"), manufactured by

defendant New England Compounding Pharmacy, Inc. ("NECC").  The complaints allege, in

substance, that NECC produced contaminated MPA that led to serious fungal infections and, in

some instances, death.  As of May 6, 2013, the Centers for Disease Control and Prevention had

reported 53 deaths and 733 incidents of fungal infection across 20 states related to injections of

contaminated MPA manufactured by NECC since October 2012.

Lawsuits alleging death or injury based on contaminated MPA have been filed in

multiple federal and state jurisdictions around the country, including the District of

Massachusetts, beginning in November 2012.  In February 2013, the Judicial Panel on

Multidistrict Litigation ("JPML") issued an order under 28 U.S.C. § 1407 transferring various federal-court proceedings to this Court for coordinated and consolidated pretrial proceedings. Subsequent orders of the JPML have transferred other "tag-along" cases to this Court. The matters transferred to this Court typically name additional defendants other than NECC, including certain of its officers and shareholders and certain affiliated corporations.

In the meantime, NECC filed for bankruptcy protection in December 2012.  A United States Trustee, Paul Moore, was subsequently appointed to administer the bankruptcy estate.

There are likely to be a large number of victim-claimants in this matter, and it appears undisputed that many of them have suffered death or serious personal injury as a result of the administration of contaminated MPA.  It also appears to be undisputed that the pool of available assets to pay claims is likely to be limited; NECC was a fairly small company with relatively few assets, although it appears that there are at least some insurance policies available to cover claims.  The trustee, and counsel representing parties in this litigation, essentially agree that it is highly desirable to maximize the resources available to victims and to keep expenditures reasonably low.  The trustee, and most counsel, also appear to agree that centralized management of the litigation and claim process is desirable to create the largest possible pool of funds for victims and to distribute those funds fairly, equitably, and with a minimum of expense and delay.

The trustee has moved to transfer *all* personal injury and wrongful death cases, wherever filed, to this Court, in order to facilitate that process and achieve that desirable end. The trustee thus seeks the transfer not only of all federal cases, but of all related state cases, regardless of the identity of the defendants.  In substance, the trustee contends that this Court can

2

exercise "related-to" jurisdiction over all such matters under 28 U.S.C. §§ 1334 and 157(b), and should transfer the matters to this District.

Consolidation of all NECC litigation in this Court is greatly complicated by the existence of the parallel state-court cases. Some of those cases, particularly those filed after the bankruptcy petition and the automatic stay, name only local healthcare providers (such as pain clinics and individual physicians), and do not name NECC or any affiliates. Some of those plaintiffs object to a centralized proceeding, preferring instead to proceed against those defendants in state court. The trustee, however, contends that those cases could ultimately result in huge claims for contribution or indemnity against the bankruptcy estate, and that such claims could greatly affect or upset the fair administration of the estate, in particular preventing the treatment of all victims fairly and equitably.

Whether, and to what extent, this Court has the power to exercise jurisdiction over state-court litigation, and to transfer it to this District, raises complex and difficult issues of jurisdiction, abstention, and federal-state comity. After careful consideration, and for the reasons set forth below, the trustee's motion to transfer personal injury tort and wrongful death cases will be granted in part and denied in part without prejudice to its renewal. In substance, the Court will assert jurisdiction over, and transfer, all federal cases against NECC and its affiliates, and all state-court cases against NECC and its affiliates, including cases where the claims are third-party claims for contribution or indemnity. The Court will not, however, transfer any state-court cases at this time that do not involve claims against NECC or its affiliates. Any related motions, such as motions to remand or for mandatory abstention, will be treated in a consistent fashion.

3

II.   **Background**

NECC operated a compounding pharmacy in Framingham, Massachusetts, that combined

and mixed ingredients to create specific formulations of pharmaceutical products.  NECC was

owned and operated by a small group of officers and directors, many of whom were related.

NECC is affiliated with a number of other companies; it is unclear what, if any, role those

entities played in the events underlying this litigation.[1]

In fall 2012, health officials traced a number of cases of fungal meningitis to injections in

and around the patients' spinal cords (known as intrathecal administration) of MPA that had

been manufactured by NECC.  In response, NECC initiated a recall of several contaminated

batches of MPA.  As the scope of the problem became evident, NECC eventually surrendered its

pharmacy license and ceased production of all pharmaceutical products.

The first complaint against NECC in this Court alleging personal injury from

contaminated MPA was filed on November 2, 2012.  The complaint names NECC, two affiliated

entities, and various individual officers as defendants.  In the ensuing months, similar cases were

filed in this District, other federal districts, and in various state courts.  Most of those cases name

NECC, and affiliated entities or individuals, as defendants.  Some, however, name only the

healthcare providers who actually distributed or administered the MPA.

On December 21, 2012, NECC filed a petition under chapter 11 of the bankruptcy code.

Among other things, that triggered an automatic stay of proceedings against NECC pursuant to

---

[1] The individuals who have been named in cases before this Court due to their positions within NECC or
affiliated entities include Barry J. Cadden, Lisa Conigliaro Cadden, Gregory Conigliaro, Douglas Conigliaro, Carla
Conigliaro, and Glenn A. Chin.  As of the date of this order, the following entities have been alleged to be affiliated
with NECC in cases before this Court:  Ameridose, LLC; Medical Sales Management, Inc.; Alaunus Pharmaceutical,
LLC; GDC Properties Management, LLC; GDC Holdings, Inc.; and ARL BioPharma, Inc.

4