11 U.S.C. § 362(a).  Although filed as a chapter 11 petition, there is little, if any, likelihood that the company will resume operations.  As noted, the company appears to have relatively limited assets, other than insurance policies.  The company also, however, has no significant secured creditors.

On February 12, 2013, the JPML created an MDL proceeding and transferred all actions pending in federal court against NECC to this district for coordinated pretrial proceedings before this Court.  The JPML has since transferred multiple "tag-along" actions to this Court.

After the bankruptcy filing, certain plaintiffs filed state-court actions that did not name NECC as a defendant, presumably in order to avoid the operation of the automatic stay.[2]  Of particular note are 17 Virginia cases where a Virginia healthcare provider is now the sole defendant.  *See, e.g., Wingate v. Insight Health Corp.*, 2013 U.S. Dist. LEXIS 67358 (W.D. Va. May 10, 2013).  After the defendant in those actions attempted to have the cases removed to federal court, on May 10, 2013, Judge Wilson of the United States District Court for the Western District of Virginia remanded the cases to state court.  *See id.*

As the schedules attached to the trustee's motion acknowledge, there are now four different categories of cases based on personal injuries resulting from the administration of tainted MPA that are not yet before this Court as part of the MDL:  (1) cases pending in other federal courts that have not yet been transferred here; (2) cases pending in state courts where removal is in process; (3) cases pending in state courts that name NECC or affiliated entities as defendants; and (4) cases pending in state courts that do not name NECC or affiliated entities as

---

[2] Other state-court plaintiffs dismissed their claims against NECC after the bankruptcy filing.

defendants.[3]  The trustee's motion asks the Court to assert jurisdiction over cases in all four

categories, whether or not the non-NECC-affiliated defendants have made claims for

contribution or indemnity from NECC.  The Plaintiffs' Steering Committee ("PSC") appointed

by the Court in the MDL proceeding agrees as to the first three categories of cases, but requests

that the Court abstain from exercising jurisdiction over what it refers to as a "narrow subset" of

cases in the fourth category—pending state-court cases that do not name NECC or affiliated

entities as defendants—"where the sole articulated basis for 'related to' jurisdiction is a

potential—but as yet unasserted—indemnification or contribution claims against NECP."  A

small number of such state-court plaintiffs have filed oppositions to the trustee's motion, as well

as their own motions requesting the Court to abstain from exercising jurisdiction over their

cases.[4]

## III.   Analysis

The difficulties presented by the trustee's motion are significant and implicate a wide

range of concerns.  Unfortunately, no solution can equally address all of these concerns, and

each comes with its own troublesome set of questions.

If the Court were to decline to assert jurisdiction over the state-court cases, it might make

---

[3] Which court has jurisdiction over a case in which removal has not yet been perfected is not entirely settled.  Pursuant to 28 U.S.C. 1446(d) removal is effected after the defendant takes three procedural steps: (1) filing a notice of removal in federal court, (2) filing notice of removal in state court, and (3) giving prompt written notice to all adverse parties.  *See* 14C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3736 (4th ed. 2009).  Some courts have held that after notice has been filed with the federal court, but before notice has been filed with the state court, both courts retain concurrent jurisdiction over the case until such notice is filed.  *Resolution Trust Corp. v. Nernberg*, 3 F.3d 62, 69 (3d Cir. 1993) ("The requirement of notice to the state court is an important part of the removal process and has been held necessary to terminate the state court's jurisdiction.") (citing *Stephens v. Portal Boat Co.*, 781 F.2d 481, 482 n.1 (5th Cir. 1986)).

[4] *See, e.g.,* Opposition filed by Roanoke Area Lichtenstein Fishwick Intervenors (Virginia); Opposition filed by Tracy Maccoux (Minnesota); Opposition filed by Chance Baker, Patrick Johnston, Ferman Wertz (Virginia); Opposition filed by Roanoke Gentry Locke Plaintiffs (Virginia);  Roanoke Gentry Locke Plaintiffs' Motion for Mandatory Abstention.

it difficult or impossible to resolve the entire litigation in an equitable or efficient manner.  Any

cases that remain pending in state court could ultimately result in large judgments and

corresponding claims for contribution or indemnity against the estate of NECC.  Pursuant to the

bankruptcy code, such claims would normally have to be considered on equal footing with the

claims of injured plaintiffs against the estate as claims of unsecured creditors.  Because all

unsecured creditors are normally paid *pari passu* (that is, proportionally and without preference)

based on the amount of their claims, even one large contribution or indemnity claim against the

estate could greatly diminish, or virtually eliminate, the amount available to be paid to the

remaining claimants.  *See* 11 U.S.C. § 1123(a)(4) (any reorganization plan must "provide the

same treatment of each claim or interest of a particular class, unless the holder of a particular

claim or interest agrees to a less favorable treatment of such particular claim or interest"); *In re

Combustion Engineering, Inc.*, 391 F.3d 190, 239-42 (3d Cir. 2004) (reversing confirmation of a

plan of reorganization which provided for disparate treatment of subcategories of personal injury

claims); *In re Congoleum Corp.*, 2010 U.S. Dist. LEXIS 72431, 12-13 (D.N.J. July 19, 2010)

(affirming bankruptcy court's finding that prejudgment personal injury claimants and breach of

contract claimants were similarly situated and therefore must receive similar treatment under a

plan of reorganization).  In addition, the threat of contingent contribution or indemnity claims

becoming fixed after judgment or settlement of the MDL plaintiffs' claims would likely require

the plan of reorganization to reserve specific funds.  *See* 11 U.S.C. § 502(e) and (j).

 Furthermore, allowing some state-court cases to proceed without consolidation in the

MDL creates the possibility of inconsistent rulings or judgments on factual or scientific issues

that may greatly complicate the resolution of these matters.  And litigation in multiple courts also

7

threatens to impose significant discovery burdens, as discovery from many of the same people and entities may be sought on multiple occasions.

If, however, the Court were to assert jurisdiction over all the cases listed by the trustee—including state-court cases where no claims against NECC or its affiliates have yet been asserted—it would have to do so based on a very broad reading of federal subject-matter jurisdiction. As will be discussed, the boundaries of that jurisdiction are very far from clear, and it is therefore uncertain whether the Court even has the authority to act. Even if subject-matter jurisdiction exists, the Court must then consider issues of both mandatory and discretionary abstention. And assuming those hurdles are overcome, in order to effect a transfer of state cases, the Court might be required to enjoin state-court proceedings—a highly disfavored judicial remedy, the use of which is explicitly restricted by the Anti-Injunction Act, 28 U.S.C. § 2283.

Under the circumstances, the Court has concluded that a somewhat cautious approach is appropriate. In substance, the Court will grant the motion to transfer (1) any case pending in federal court against NECC or any affiliated entity or individual, (2) any such case that is in the process of removal to federal court, and (3) any case pending in any state court in which a party has made a claim against NECC or any affiliated entity or individual, including third-party claims for contribution or indemnity. However, as to state-court proceedings not naming NECC or any affiliated entity or individual, the motion will be denied without prejudice to its renewal.

A.      **Cases Against NECC Affiliates Only**

The Court must first determine whether it has subject-matter jurisdiction over cases filed by plaintiffs against NECC affiliates but not against NECC. As noted, such cases are pending in

8

both federal and state courts.

According to the trustee, NECC has express contractual indemnification obligations to many of the affiliated defendants, including, but not limited to, Barry Cadden, Greg Conigliaro, Lisa Conigliaro, Carla Conigliaro, Glenn Chin, GDC, and MSM. The individual defendants are also additional insureds under at least one of NECC's insurance policies.

The trustee contends that cases against affiliated entities and individuals are subject to the Court's bankruptcy jurisdiction under 28 U.S.C. § 1334. Section 1334 provides district courts with original, but not exclusive, jurisdiction over "all civil proceedings arising under title 11, or arising in or *related to* cases under title 11." 28 U.S.C. § 1334 (emphasis added). As discussed below, courts have held that related-to jurisdiction exists over cases against non-debtor defendants whom the debtor has an automatic obligation to indemnify or defend. *See, e.g., Cambridge Place Inv. Mgmt. v. Morgan Stanley & Co.*, 2010 U.S. Dist. LEXIS 142954 (D. Mass. 2010); *City of Ann Arbor Empls. Ret. Sys. v. Citigroup Mortg. Loan Trust Inc.*, 572 F. Supp. 2d 314 (E.D.N.Y. 2008); *In Re Brentano's*, Inc., 27 Bankr. 90 (S.D.N.Y. 1983). The trustee has asserted (and no party has disputed) that NECC owes such an obligation to the affiliated entities and individual defendants. Indeed, no party appears to dispute the Court's power to assert subject-matter jurisdiction over cases naming any NECC-affiliated entity or individual as a defendant.

Accordingly, the Court has subject-matter jurisdiction over any cases pending in federal or state court against entities or individuals affiliated with NECC, whether or not NECC is named as a defendant.

**B.**   **Motion to Transfer – Federal Cases**

The potential transfer of cases presently pending in other federal courts, and those now pending in state courts where removal is in process, does not appear to present any significant jurisdictional or venue-related issues.  Indeed, no party has opposed the transfer of these categories of cases, and the JPML's initial transfer order establishing the MDL specifically contemplates the transfer of such "tag-along" actions pending in various district courts.

Since the date of the initial transfer order, the JPML has transferred to this Court more than 100 "tag-along" cases that had been pending in other federal district courts.  The Court has no reason to believe that any federal cases that are the subject of the trustee's transfer motion will not receive similar treatment from the JPML and be transferred to this Court in due course.  However, should the situation arise that a case pending in federal court, over which this Court could properly exercise related-to jurisdiction, is not transferred by an order of the JPML, this Court will presumably act to assert jurisdiction over it.  Until the Court is made aware of such a situation, it will simply await the JPML's transfer orders for any cases now pending in other federal courts or that are in the process of being removed.

**C.**   **Motion to Transfer – State Cases**

The more difficult set of issues concerns the potential transfer of the state-court cases in which no NECC affiliate is named as a defendant, or in which an NECC affiliate is named only as a third-party defendant in a claim for contribution or indemnity.

**1.**   **Subject-Matter Jurisdiction**

The Court must first determine whether it has subject-matter jurisdiction over the cases that the trustee seeks to have transferred here.  If the Court lacks subject-matter jurisdiction over

10

*any* case, it cannot constitutionally adjudicate that case, regardless of the practical considerations
or efficiency benefits.

a.      28 U.S.C. § 157(b)(5)

The trustee has cited 28 U.S.C. § 157(b)(5) as the primary basis for the authority to
transfer the state-court personal injury and wrongful death actions to this Court.  Section
157(b)(5) provides as follows:

> The district court shall order that personal injury tort and wrongful death claims shall be
> tried in the district court in which the bankruptcy case is pending, or in the district court
> in the district in which the claim arose, as determined by the district court in which the
> bankruptcy case is pending.

28 U.S.C. § 157(b)(5).

The trustee's reliance on this provision as the basis for subject-matter jurisdiction is
misguided.  The Supreme Court recently held that "§ 157(b)(5) is not jurisdictional," but rather a
venue provision.  *See Stern v. Marshall*, 131 S. Ct. 2594, 2606 (2011).  In reaching that
conclusion, the Supreme Court reasoned as follows:

> Section 157(b)(5) does not have the hallmarks of a jurisdictional decree. To begin, the
> statutory text does not refer to either district court or bankruptcy court 'jurisdiction,'
> instead addressing only where personal injury tort claims 'shall be tried.'

> The statutory context also belies [the] jurisdictional claim. Section 157 allocates the
> authority to enter final judgment between the bankruptcy court and the district court. *See*
> §§ 157(b)(1), (c)(1).  That allocation does not implicate questions of subject matter
> jurisdiction. *See* § 157(c)(2) (parties may consent to entry of final judgment by
> bankruptcy judge in non-core case).  By the same token, § 157(b)(5) simply specifies
> where a particular category of cases should be tried.

*Id.* at 2607.

Accordingly, this provision does not confer any additional jurisdiction on the district
courts, and thus the Court must find an alternative basis for the assertion of subject-matter

11

jurisdiction if it is to order the transfer of any state-court cases to this Court.[5]

### b.   28 U.S.C. § 1334

If § 157(b)(5) cannot itself provide the basis for federal jurisdiction over the state-court

cases, the Court must look elsewhere for a statutory grant of jurisdiction. As the parties

acknowledge, jurisdiction over the vast majority of these cases depends on the Court's

interpretation of its bankruptcy jurisdiction under 28 U.S.C. § 1334.

Section 1334 provides district courts with original, but not exclusive, jurisdiction over

"all civil proceedings arising under title 11, or arising in or *related to* cases under title 11." 28

U.S.C. § 1334. The scope of related-to jurisdiction is "quite broad." *In re Boston Reg'l Med.*

*Ctr.*, 410 F.3d 100, 105 (1st Cir. 2005). "[A] civil proceeding is related to bankruptcy [if] the

outcome of that proceeding could conceivably have any effect on the [bankruptcy] estate." *In re*

*G.S.F. Corp.*, 938 F.2d 1467, 1475 (1st Cir. 1991) (internal quotations omitted), *overruled on*

*other grounds by Connecticut Nat'l Bank v. Germain*, 503 U.S. 249 (1992); *Pacor, Inc. v.*

*Higgins*, 743 F.2d 984 (3d Cir. 1984), *overruled on other grounds by Things Remembered v.*

*Petrarca*, 516 U.S. 124 (1995); *TD Bank, N.A. v. Sewall*, 419 B.R. 103, 105-06 (D. Me. 2009);

*In re Twinlabs Personal Injury Cases,* 2004 WL 435083, 1 (S.D.N.Y. 2004) ("The standard for

'related to' jurisdiction over a suit in the posture of [an action against non-debtor third parties] is

"whether its outcome might have any 'conceivable effect' on the bankrupt estate." (quoting

---

[5] To be clear, transfer of the federal cases that are currently before the Court (whether filed here or
transferred under the JPML) is squarely addressed by § 157(b)(5). Section 157(b)(5) states that "personal injury tort
and wrongful death claims" are to be tried by a federal district court either in the district where the claim arose or the
district where the bankruptcy case is pending, giving the district court in the district where the bankruptcy case is
pending discretion to choose between the two venue options. NECC filed for bankruptcy in the District of
Massachusetts, which gives this Court the discretion under § 157(b)(5) to determine the appropriate venue for
personal injury and wrongful death cases pending in the federal courts related to contaminated MPA manufactured
and/or sold by NECC or its affiliates.

12

*Cuyahoga Equip. Corp. v. Publicker Indus. Inc.*, 980 F.2d 110, 114 (2d Cir.1992))).[6]

Such jurisdiction is not unlimited, however.  There must be some nexus between the "related" proceeding and the bankruptcy case, such that "the outcome of the litigation potentially could have some effect on the bankruptcy estate, such as altering debtor's rights, liabilities, options, or freedom of action, or otherwise have an impact upon the handling and administration of the bankrupt estate." *In re Boston Reg'l*, 410 F.3d at 105 (internal citations and textual alterations omitted); *see Pacor*, 743 F.2d at 994.

As noted, there are two general categories of state-court cases that are the subject of the trustee's motion:  those that name NECC or affiliated entities as defendants, and those that do not.  It is undisputed that the Court has related-to jurisdiction over cases in the former category. The outcome of such suits against the debtor and its affiliates certainly "could have some effect on the bankruptcy estate." *In re Boston Reg'l*, 410 F.3d at 105 (internal citations and textual alterations omitted).

The more difficult question is whether the Court has related-to jurisdiction over cases currently pending in state court that do *not* name NECC or affiliated entities as defendants, but rather name *only* third-parties (such as physicians or pain clinics), or in which NECC affiliates are named only in third-party claims for contribution or indemnity.

In *Pacor*, the Third Circuit held that related-to jurisdiction did not exist over a suit by an employee against a distributor of asbestos, even though the employee's success in that suit

---

[6] The First Circuit, along with most other circuits, has adopted the standard set forth in *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984).  *See, e.g., In Re Boston Reg'l*, 410 F.3d at 105 (citing *Pacor*); *In re G.S.F. Corp.*, 938 F.2d at 1475 (same); *In re Santa Clara Cnty. Child Care Consortium*, 223 B.R. 40, 45 n.8 (1st Cir. B.A.P. 1998) (collecting cases); *see also Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.6 ("The First, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth, and Eleventh Circuits have adopted the *Pacor* test with little or no variation.").

13

would likely cause the distributor to seek indemnification from the debtor, an asbestos

manufacturer. *Pacor*, 743 F.2d at 986. The court concluded that the action was, at best, a "mere

precursor to the potential third party claim for indemnification by [the distributor] against [the

manufacturer]." *Id.* at 995. The court contrasted these facts with those in *In re Brentano's, Inc.*,

27 B.R. 90 (Bankr. S.D.N.Y. 1983), where the debtor's landlord sued the guarantor of the

debtor's lease. *Pacor*, 743 F.2d at 995. Because the debtor had agreed to indemnify the

guarantor, any recovery against the guarantor would result in automatic liability to the estate,

creating related-to jurisdiction. *Id.* In contrast, the employee in *Pacor* was not a creditor of the

asbestos manufacturer, and "[a]ny judgment obtained would thus have no effect on the

arrangement, standing, or priorities of [the asbestos manufacturer's] creditors." *Id.* at 995-96.

Applying *Pacor*, courts have held that related-to jurisdiction exists over suits by tort

plaintiffs, who are potential creditors, against non-debtor third-party defendants in only limited

circumstances. One such situation is when a judgment against the third party would

automatically convert that third party into a creditor due to an existing contribution or indemnity

obligation. *See, e.g., Cambridge Place Inv. Mgmt. v. Morgan Stanley & Co.*, 2010 U.S. Dist.

LEXIS 142954 (D. Mass. 2010); *City of Ann Arbor Empls. Ret. Sys. v. Citigroup Mortg. Loan

Trust Inc.*, 572 F. Supp. 2d 314 (E.D.N.Y. 2008); *In Re Brentano's*, Inc., 27 Bankr. 90 (S.D.N.Y.

1983).[7]

It remains an open question of law, at least in the First Circuit, whether there is related-to

---

[7] Another situation is when recovery under an action by a creditor against a third party could reduce the amount that the creditor can claim from the estate directly. *See, e.g., TD Bank, N.A. v. Sewall*, 419 B.R. 103 (D. Me. 2009); *In re Baptist Foundation of Arizona*, 2000 WL 35575676, at *1 (D. Ariz. June 30, 2000); *In re Curran*, 157 B.R. 500 (Bankr. D. Mass. 1993). None of the cases that the trustee seeks to have transferred to this Court present that situation.

14

jurisdiction over a case against a non-debtor, third-party defendant who has a *potential* (as opposed to an actual) claim for contribution or indemnity against the debtor.  *See Cambridge Place*, 2010 U.S. Dist. LEXIS 142954 (noting that "[t]he First Circuit has not yet addressed the appropriate standard to be applied in evaluating whether contractual indemnification obligations give rise to 'related to' bankruptcy jurisdiction."); *see also In re Santa Clara County Care Consortium*, 223 B.R. 40 (B.A.P. 1st Cir. 1998) ("[T]he determination of whether a removed state court proceeding is sufficiently related to a debtor's bankruptcy to confer subject matter jurisdiction is complicated by what appears to be contradictory opinions.").

The Third Circuit, in a line of cases after *Pacor*, has clarified its view that related-to jurisdiction does not exist over a case against a non-debtor defendant if another lawsuit would be necessary before the bankruptcy estate would be impacted.  *See, e.g., In re W.R. Grace & Co.*, 591 F.3d 164, 169 (3d Cir. 2009) (finding no related-to jurisdiction where there would first have to be a finding in the state-court action and then a separate suit to pursue a claim for indemnification before there could be any impact on the bankruptcy estate); *In re Combustion Eng'g*, 391 F.3d 190, 231-32 (3d Cir. 2004) ("[A]ny indemnification claims against Combustion Engineering . . . would require the intervention of another lawsuit to affect the bankruptcy estate, and thus cannot provide a basis for 'related to' jurisdiction."); *In re Federal-Mogul Global, Inc.*, 300 F.3d 368, 382 (3d Cir. 2002) ("The test articulated in *Pacor* for whether a lawsuit could 'conceivably' have an effect on the bankruptcy proceeding inquires whether the allegedly related lawsuit would affect the bankruptcy proceeding without the intervention of yet another lawsuit.").

The Fifth Circuit, taking a slightly more expansive view of related-to jurisdiction, has

15

emphasized the difference between "tort contribution" principles and "contractual indemnification rights," asserting jurisdiction over a case based on the latter. *Lone Star Fund V (US), LP v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. Tex. 2010). At least one bankruptcy court in this circuit has adopted a similar requirement for related-to jurisdiction—that the debtor have "an unconditional duty to indemnify" the third-party defendant. *TD Bank, N.A. v. Sewall*, 419 B.R. 103, 106 (D. Me. 2009) (explaining the basis and rationale for this rule).

The Fourth Circuit, in *A.H. Robins Co. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986), has read *Pacor* to establish a distinction between a potential claim for contribution from a third-party defendant and a contractual duty to indemnify that defendant. *Id.* at 1001 ("The clear implication of the [*Pacor*] decision is that, if there had been a contract to indemnify, a contrary result would have been in order."). Although the court ultimately remanded for a hearing on the motion to transfer in that case, citing due process concerns, it clearly intimated that related-to jurisdiction over the claims against non-debtor defendants could exist under § 1334. *See id.* at 1016, 999-1001 (affirming the district court's extension of the mandatory stay to suits against non-debtor defendants based in part on the court's interpretation of related-to jurisdiction).

The Sixth Circuit, in *In re Dow Corning Corp.*, 86 F.3d 482 (6th Cir. 1996), took a more pragmatic approach to related-to jurisdiction, asserting jurisdiction over thousands of claims against non-debtor defendants. In doing so, the court distinguished the potential impact on the estate of the large number of cases before it from that of the single allegedly related suit involved in *Pacor*; noting that "[a] single possible claim for indemnification or contribution simply does not represent the same kind of threat to a debtor's reorganization plan as that posed by the

16

thousands of potential indemnification claims at issue here." *Dow Corning*, 86 F.3d at 494.

The court in *In re Twinlabs Personal Injury Cases*, 2004 WL 435083, 1 (S.D.N.Y. 2004), cited that decision, and took a similar approach, in asserting jurisdiction over personal injury cases against non-debtor defendants. The personal-injury cases at issue were all based on products-liability claims surrounding the manufacture and sale of the diet pill ephedra. Twinlabs, the manufacturer at issue, filed for bankruptcy. In a brief opinion granting the debtor's motion to transfer a state court case against retailers of ephedra, Judge Rakoff noted that "the retailer defendants . . . will undoubtedly seek indemnity from the Debtors following any judgments against them. Accordingly, from many perspectives, the . . . action against the retailers will have more than a 'conceivable effect' on the bankrupt estate of the Debtors." *Id.*[8]

The situation presented here implicates many of the same concerns that motivated the Sixth Circuit's decision to assert jurisdiction over the claims against non-debtor defendants in *Dow Corning*. Although *Dow Corning* did not distinguish between state-court cases against third-party defendants who had already asserted claims against the debtor and cases against those who merely "intend[ed] to file claims for contribution and indemnification," that may be a relevant, indeed important, distinction. *See* 86 F.3d at 494; *In re Santa Clara*, 223 B.R. at 49 (finding "an insufficient nexus to confer 'related to' subject matter jurisdiction on the bankruptcy court, in state court actions involving non-debtor parties, which *may result in contribution/substitution of creditors without a change in the classification of a claim as it relates to the debtor*.") (emphasis added).

In any event, the issue of subject-matter jurisdiction is far from clear, and there appears

---

[8] The court in *Twinlabs* did not discuss the jurisdictional issues in any greater depth.

17

to be no controlling authority. Unfortunately, the consequences of an incorrect judgment may be very substantial indeed; if the Court does not have subject-matter jurisdiction over a matter, any action it may undertake in that matter will be entirely void. Under the circumstances, the Court will take a two-step approach.

First, the Court concludes that it has related-to subject-matter jurisdiction under § 1334 over any state-court case in which any plaintiff has asserted a claim, or any defendant has asserted a claim for contribution or indemnity, against NECC or any affiliated entity or individual. Such a claim could clearly have an effect, indeed a substantial effect, on the bankruptcy estate.

However, as to state-court cases in which a claim against NECC or an affiliated entity or individual is possible, but has not yet been asserted, the Court will assume the existence of subject-matter jurisdiction, but will abstain from exercising any such jurisdiction. The factors governing the exercise of discretionary abstention, and the reasoning of the Court, are addressed below.

The transfer of some, but not all, state-court cases might be something of a pointless exercise if the possibility remains that a state-court defendant could make a future claim in the bankruptcy case for contribution or indemnity, upsetting the effort to make an equitable distribution to the victims and other creditors. Indeed, that is the essential basis of the trustee's motion: that the Court *must* transfer *all* state-court cases to foreclose that very possibility.

The Court is not convinced, at least at this stage, that such a step is necessary. Other possible courses of action might produce the desired consolidation and finality, without resolving difficult issues of jurisdiction and abstention and without intruding unnecessarily into

18

the proceedings of state courts. For example, if the Bankruptcy Court were to set a relatively early bar date for the filing of claims against the estate, it would appear that any defendant in a state-court action would be effectively forced to decide whether it wanted to file a claim for contribution or indemnity against the estate. Such a claim, in turn, would probably permit the exercise of federal jurisdiction over the underlying matter. Any defendant who did not file a claim would be barred, and the state-court case could proceed to judgment without interference from the federal court. Either way, the desired goals would be achieved with a relatively minimal degree of risk or intrusion.

In any event, the Court does not need to reach the issue at this juncture. If the balance of factors shifts over time, the Court can revisit the issue, and if necessary (and appropriate) can issue further orders concerning the exercise of related-to jurisdiction.

### 2.   Abstention

If this Court has subject-matter jurisdiction over cases now pending in state courts, the question arises whether it should abstain from asserting such jurisdiction, either pursuant to the mandatory abstention provisions of § 1334(c)(2), or the discretionary abstention provisions of § 1334(c)(1).[9]

### a.   Mandatory Abstention Under § 1334(c)(2)

Section 1334(c)(2) requires district courts to abstain from asserting related-to jurisdiction over state-law claims in certain circumstances. The statute provides as follows:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a

---

[9] Certain Virginia state-court plaintiffs have likewise moved to compel the Court to abstain from transferring their specific cases pursuant to § 1334(c)(2).

case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2).[10]

Section 1334(c)(2) must be read in conjunction with 28 U.S.C. § 157(b)(4), which states that "[n]on-core proceedings under section 157(b)(2)(B) . . . shall not be subject to the mandatory abstention provisions of section 1334(c)(2)." And § 157(b)(2), in turn, provides that "the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims *against the estate* for purposes of distribution in a case under title 11" are non-core claims. 28 U.S.C. § 157(b)(2)(B) (emphasis added).

A strict textual reading of the statutes may lead to the conclusion that personal injury and wrongful death claims asserted against non-debtor third parties (for example, against various healthcare providers), and not against the bankruptcy estate, are subject to the mandatory abstention provisions of § 1334(c)(2). This is the reading afforded the statutory language by Judge Wilson in *Wingate*. 2013 U.S. Dist. LEXIS 67358.

Other district courts, however, have extended the exception of § 157(b)(4) from mandatory abstention to claims against non-debtor third-parties where indemnification

---

[10] This provision has been read to establish five criteria that must be present to trigger mandatory abstention: (1) a timely motion requesting abstention; (2) an essentially state-law cause of action; (3) a non-core proceeding—one that is only "related to" the bankruptcy case; (4) a lack of federal jurisdiction absent the existence of the bankruptcy case; and (5) an ongoing state-court proceeding that be timely adjudicated. *In re Southmark Corp.*, 163 F.3d 925, 929 n. 2 (5th Cir. 1999). There is some dispute as to whether the state-court proceeding must have already been commenced at the time of the bankruptcy filing for mandatory abstention to apply. *Compare In re Container Transport, Inc.*, 86 B.R. 804, 805 (E.D.Pa.1988) ("Consistent with all known authority and our proclivity to exercise our jurisdiction over matters related to our bankruptcy cases to expedite their disposition, we hold that the presence of a state court action is a necessary condition to invoke 28 U.S.C. § 1334(c)(2).") with *Langston Law Firm v. Mississippi*, 410 B.R. 150, 155 (S.D.N.Y. 2008) ("The language of § 1334(c)(2)—that an 'action is commenced . . . in a State forum'—does not on its face require the commencement of the state action prior to the bankruptcy action.").

agreements existed between those third-parties and the debtor. *See Abbatiello v. Monsanto,* 2007
WL 747804, 3 (S.D.N.Y. March 8, 2007) ("the exception to mandatory abstention also applies to
litigation against [third-party defendants], because [debtor] is obligated to indemnify [third-party
defendants] for any judgment awarded against them."); *Berry v. Pharmacia Corp.,* 316 B.R. 883
(S.D. Miss. 2004) ("[G]iven the nature of the relationship and degree of identity between the
debtor [and the third-party defendant], the rationale for exempting personal injury and wrongful
death claims against the debtor's estate from the mandatory abstention provision applies fully to
the claims against [third-party defendant]. Under the terms of the Distribution Agreement,
[third-party defendant] claims a right to absolute indemnity from [debtor] for any judgment that
might be rendered against it, so that a judgment against [third-party defendant] is, in practical
effect, a judgment against [third-party defendant].").

Judge Wilson acknowledged these cases and their reasoning, but found that no such
indemnification agreement existed between NECC and the third-party defendant. He therefore
concluded that the mandatory abstention provision of § 1334(c)(2) required that the matter be
remanded to state court. *See Wingate*, 2013 U.S. Dist. LEXIS 67358.

The trustee argues that Judge Wilson ignored Congress's motivation for crafting an
exception from mandatory abstention for personal injury and wrongful death claims and
interpreted the statute too narrowly. That motivation has been aptly summarized as follows:

> In short, Congress, recognizing that the unpredictable and substantial verdicts that are
> often produced in personal injury tort and wrongful death claims could have potentially
> deleterious effects on a debtor's estate—particularly when, because of the automatic stay
> provisions of the Bankruptcy Code, a debtor-defendant may not have participated in the
> underlying trial—concluded that, in non-core proceedings such as the one at bar, the
> mandatory abstention provision of § 1334(c)(2) should not apply.

*Beck v. Victor Equipment Co., Inc.,* 277 B.R. 179, 180 -181 (S.D.N.Y. 2002) (Rakoff, J.).

21

Those same concerns are present here. Even in the absence of contractual indemnity agreements, the third-party defendants in the pending state-court actions may have claims for contribution or common-law indemnity from NECC in the event that they are found liable in state court. Those potential state-court verdicts pose the type of threat Congress had in mind when it crafted the exception to § 1334(c)(2)—they can be "unpredictable and substantial" and even being required to contribute to their satisfaction "could have potentially deleterious effects on a debtor's estate." *Beck,* 277 B.R. at 180 -181. This is particularly true in circumstances such as this, where the cause of action arises out of an allegedly defective product manufactured by the debtor. In many, if not all, jurisdictions, under ordinary circumstances, the debtor would be strictly liable for the harm caused by the defective product, even if there may have been a third-party interposed between the debtor and the tort claimant in the supply chain. *See, e.g., Brown v. Superior Court*, 751 P.2d 470, 482-483 (Cal. 1988) (finding that, "in accord with almost all our sister states that have considered the issue . . . a manufacturer is not strictly liable for [side effects] caused by a prescription drug so long as the drug was properly prepared and accompanied by warnings of its dangerous propensities. . . . [However, a manufacturer is] subject to liability for manufacturing defects"); *Ayyash v. Henry Ford Health Sys.*, 210 Mich. App. 142, 147 (Mich. Ct. App. 1995) ("'the essence of the relationship' between the hospital and the patient and the physician and the patient is the provision of a service, not the sale of a product, and, therefore, products liability theories [are] inapplicable. . . . Further, whereas imposing strict liability on manufacturers arguably may promote greater care in manufacturing safer products, imposing strict liability on hospitals and physicians would not.").

The Court must interpret the statutory language in the context of those practicalities. The

22

phrase "personal injury tort or wrongful death claims against the estate," as used in §

157(b)(2)(B), can fairly be read to encompass not only personal injury and wrongful death

claims, but also claims for contribution or indemnity that derive from personal injury or

wrongful death claims.  Contribution or indemnity claims are simply procedural vehicles for

asserting liability against the estate for some underlying harm.  If the underlying harm giving rise

to the estate's potential liability involves personal injury or wrongful death, the claim against a

third-party concerning that harm is, in substance, a "personal injury tort or wrongful death claim

against the estate" and therefore covered by the exception in § 157(b)(2)(B).  This reading is

more congruent with Congress's motivation in crafting the exception to mandatory abstention.

A narrower reading would create a potentially gaping loophole in the carefully crafted system for

the orderly administration of bankruptcy estates.  Section 157(b)(2)(B), therefore, provides an

exception from mandatory abstention for personal injury and wrongful death claims against non-

debtor third-parties for contribution or indemnification.

Accordingly, this Court finds that the mandatory abstention provision of § 1334(c)(2)

does not apply to any of the state-court cases at issue.

      **b.**     **Discretionary Abstention Under § 1334(c)(1)**

In circumstances where § 1334(c)(2) does not strictly require abstention, § 1334(c)(1)

nonetheless gives district courts discretion to abstain from asserting related-to jurisdiction over

state-law claims.  The statute provides as follows:

> Except with respect to a case under chapter 15 of title 11, nothing in this section prevents
> a district court in the interest of justice, or in the interest of comity with State courts or
> respect for State law, from abstaining from hearing a particular proceeding arising under
> title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1).

Courts have articulated twelve factors that should be considered when deciding whether

or not to abstain under § 1334(c)(1).  Those factors are as follows:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court
>       recommends abstention;
> (2) the extent to which state law issues predominate over bankruptcy issues;
> (3) the difficulty or unsettled nature of the applicable state law;
> (4) the presence of a related proceeding commenced in state court or other
>       nonbankruptcy court;
> (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334;
> (6) the degree of relatedness or remoteness of the proceeding to the main
>       bankruptcy case;
> (7) the substance rather than form of an asserted "core" proceeding;
> (8) the feasibility of severing state law claims from core bankruptcy matters to allow
>       judgments to be entered in state court with enforcement left to the bankruptcy
>       court;
> (9) the burden [on] the court's docket;
> (10) the likelihood that the commencement of the proceeding in bankruptcy court
>       involves forum shopping by one of the parties;
> (11) the existence of a right to a jury trial; and
> (12) the presence in the proceeding of nondebtor parties.

*In re Twin Laboratories, Inc.,* 300 B.R. 836, 841 (S.D.N.Y. 2003).

Here, the Court finds that the balance of those factors weighs against discretionary

abstention, except as those cases pending in state courts that do not involve any claims against

NECC-affiliated entities or individuals.

As noted, the most efficient use of the limited resources of the judicial system, and the

fairest and most efficient distribution of the assets of the estate, would be for all of the related

cases to be consolidated in one court.  Abstention would be counterproductive to that end.  In

addition, the state-law claims in the cases at issue are primarily based on well-settled principles

of tort and product liability; a federal court could likely adjudicate them without being required

to decide unresolved issues of state law.  This is especially true considering the currently limited

scope of the consolidation to pre-trial matters.

24

Furthermore, the bankruptcy here is somewhat unusual. The debtor, NECC, had relatively few assets and no secured creditors of any significance. As a result, the primary focus of the plan will likely be satisfying, to the maximum extent possible, the unsecured claims of injured plaintiffs for damages and possibly of third parties for contribution or indemnity. Thus, decisions on factual and legal issues as to liability and damages in all of the state-court cases will likely have tremendous import on the bankruptcy proceedings and the reorganization plan. This is particularly true—indeed, determinative—with respect to cases against third-party defendants who have already asserted their own claims against NECC.

However, a number of factors suggest that abstention is warranted as to some of the cases that the trustee is seeking to have transferred. The issues that will decide the debtor's liabilities and the validity of claims against the estate primarily involve state law. State-court plaintiffs, as well as the states themselves, certainly have a strong interest in having state-law claims adjudicated by the state-court system. Most importantly, the basis for asserting jurisdiction over the state-court cases at issue is confined entirely to § 1334, and that jurisdiction is unclear at best. The potential harm to federal-state comity is potentially at its greatest where the basis for federal jurisdiction is uncertain.

In light of these considerations, the Court will exercise its discretion and abstain from asserting jurisdiction—again, assuming that it exists—over those cases currently pending in state courts involving only state-law claims against defendants other than NECC and its affiliates, and where there is no third-party claim for contribution or indemnity. The Court may, in the future, assert jurisdiction over any such case should the third-party defendant actually assert such a claim, but it will refrain from deciding that issue at this time.

### 3.    Anti-Injunction Act

The parties acknowledge that the assertion of jurisdiction by this Court over cases pending in state court cases could, under some circumstances, require the issuance of injunctions staying proceedings or otherwise mandating the transfer of state cases.  The Anti-Injunction Act provides that a federal court "may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  28 U.S.C. § 2283.

The trustee contends that enjoining the state-court proceedings against third-party non-debtor defendants would not run afoul of the Anti-Injunction Act because the granting of such an injunction would be "necessary in aid of [the Court's] jurisdiction."  § 2283.  The Supreme Court has interpreted this exception to the rule as follows:

> [w]hile this language is admittedly broad, we conclude that it implies something similar to the concept of injunctions to "protect or effectuate" judgments. Both exceptions to the general prohibition of § 2283 imply that some federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case.

*Atlantic C. L. R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 295 (1970).

The trustee also points to the All Writs Act, 28 U.S.C. § 1651, as well as a few MDL cases from other circuits where injunctions in aid of jurisdiction were upheld.  *See, e.g., Newby v. Enron Corp.*, 302 F.3d 295, 300 (5th Cir. 2002).

It may well be the case that this Court could be forced to issue injunctive relief in aid of its related-to jurisdiction in order to effectuate the necessary transfers.  But even assuming that the Court has the power to issue an injunction in aid of jurisdiction, it is not immediately apparent such an action is necessary or appropriate at this stage.  Such an injunction is something

26

of a weapon of last resort, and the Court will not lightly undertake to employ it, particularly

when other alternatives may be available.  For example, in *Twinlabs*, Judge Rakoff simply

directed "[c]ounsel for the Debtors . . . to distribute copies of [his order granting the motion to

transfer] to all affected counsel within two business days hereof and to work with them to

arrange the expeditious transfer of the *Acuff* case to this Court."  *In re Twinlabs*,  2004 WL

435083 at 2.  Rather than reach a final decision as to the issue at this stage, the Court will in the

first instance work with counsel and ascertain if less drastic measures will achieve the desired

goal.

### 4.       Conclusion

For the foregoing reasons, the Court will grant the trustee's motion to transfer as to (1)

those cases against NECC or any affiliated entity or individual pending in federal courts, (2)

those cases against NECC or any affiliated entity or individual in the process of being removed

from state court, and (3) those cases pending in state courts in which any party has asserted a

claim (including a claim for contribution or indemnity) against NECC or any affiliated entity or

individual.[11]  The Court will deny the trustee's motion as to those cases pending in state courts in

which a claim against NECC or an affiliated entity or individual is possible, but has not yet been

asserted, without prejudice to its renewal.  The precise mechanics of effectuating the transfer of

cases pursuant to this memorandum and order, including the form of any further order that may

be required, will be determined at a later time.

---

[11] The Court assumes, without deciding, that a claim for contribution or indemnity filed in the bankruptcy
action would render the underlying state-court action subject to this Court's jurisdiction.

27

### B.   Motions to Withdraw Reference

Defendants Ameridose and GDC have filed motions to withdraw the reference of certain personal injury and wrongful death cases from the Bankruptcy Court to this Court. All parties before this Court, except the plaintiffs in those specific actions, support the motions to withdraw.

The relevant statute, 28 U.S.C. § 157(d), provides that "[t]he district court may withdraw, in whole or in part, any case or proceeding referred under this section . . . on timely motion of any party, for cause shown." *See United States v. Kaplan*, 146 Bankr. Rptr. 500, 503 (D. Mass. 1992) (motion is timely if made as promptly as possible in light of the developments in the bankruptcy proceeding or at the first reasonable opportunity).

Consolidation before this Court offers the same practical benefits for these few isolated cases pending before the Bankruptcy Court as it does for all of the other cases that were the subject of the trustee's motion to transfer. However, simply withdrawing the reference to the Bankruptcy Court presents none of the complicated jurisdictional questions discussed at length above. Instead, this Court undoubtedly has related-to jurisdiction over these matters and the discretion to withdraw the reference from the Bankruptcy Court upon a showing of good cause. This Court finds that the benefits of consolidation with the hundreds of other personal injury and wrongful death cases currently before it constitutes the requisite good cause for withdrawal.

Accordingly, the Court will withdraw the reference of all adversary proceedings against NECC and affiliated entities involving personal injury and wrongful death claims from the Bankruptcy Court.

28

C.     **Motions to Remand in New Jersey Cases**

Plaintiffs in certain New Jersey actions that have been consolidated before this Court

pursuant to the JPML's transfer order have recently moved for their specific cases to be

remanded to New Jersey state courts.

As an initial matter, the Court finds that it has related-to jurisdiction over these cases by

nature of the fact that they all name NECC and/or at least one NECC-affiliated entity as a

defendant.[12] For the reasons outlined above, the Court finds that "the outcome of th[ese]

proceeding[s] could conceivably have [an] effect on the [bankruptcy] estate." *In re G.S.F.*

*Corp.*, 938 F.2d 1467, 1475 (1st Cir. 1991). Accordingly, the Court will deny the motion to

remand the New Jersey cases.

In the alternative, some parties have proposed that the state-law claims against non-

NECC-affiliated third-party defendants be severed and remanded. At oral argument, Ameridose

endorsed this solution only as an alternative to simply denying the motions to remand outright.

In the original motions to remand, the New Jersey plaintiffs opposed severance. However, some

plaintiffs, likely realizing the futility of the motions to remand in light of NECC's bankruptcy,

have very recently taken the position that severance is appropriate.

With regard to the issue of severance, Fed. R. Civ. P. 21 indeed gives the Court power to

"sever any claim against a party." However, in light of the conflicted positions taken by the

various New Jersey plaintiffs, and the benefits of consolidation, at least for pre-trial purposes,

discussed above, the Court does not find a compelling reason to exercise its discretion and sever

---

[12] Most of these motions to remand were filed prior to NECC's bankruptcy, and consequently much of the
argument against federal jurisdiction was based on the lack of complete diversity between the parties. However,
related-to jurisdiction now provides an alternative basis for subject-matter jurisdiction. Indeed, it does not appear
from the briefing on these motions that any plaintiff has challenged the Court's § 1334 jurisdiction.

the claims against third-party defendants in the New Jersey actions. Accordingly, to the extent that the motions to remand seek severance as an alternative, they will also be denied.

### D.   Motions to Remand Massachusetts Cases

Plaintiffs in three Massachusetts actions have moved for their cases to be remanded to Massachusetts state courts. They filed these motions prior to the bankruptcy of NECC and the consolidation of cases before this Court in the MDL. Accordingly, for substantially the same reasons noted above with respect to the New Jersey cases, the Court will deny the motions to remand.

### E.   Motions to Remand Virginia Cases

Plaintiffs in two Virginia actions have moved for their cases to be remanded to Virginia state courts.[13] They filed these motions prior to the consolidation of cases before this Court in the MDL. Accordingly, for substantially the same reasons articulated above with respect to the New Jersey and Massachusetts cases, the Court will deny the motions to remand.

### F.   Motion for Mandatory Abstention in Virginia Cases

Plaintiffs in certain other Virginia actions that were the subject of Judge Wilson's decision in *Wingate*, 2013 U.S. Dist. LEXIS 67358, filed a motion for mandatory abstention pursuant to § 1334(c)(2).[14] For the reasons set forth above, the Court finds that the mandatory abstention provision of § 1334(c)(2) does not apply to these cases, and therefore will deny the motion. However, to the extent that these cases do not yet involve claims against NECC or

---

[13] The cases originating in Virginia that have been removed to this court in which the plaintiffs have filed motions to remand are *Radford v. New England Compounding Pharmacy, Inc., et al.*, 1:13-cv-10688-FDS, and *Rhodes v. New England Compounding Pharmacy, Inc.*, 1:13-cv-10504-FDS.

[14] This motion was filed in *Erkan v. New England Compounding Pharmacy, Inc. et al.*, 1:12-cv-12052-FDS and is referred to by the parties and herein as "Roanoke Gentry Locke Plaintiffs' Motion for Mandatory Abstention."

affiliated entities or individuals, the Court will exercise its discretion to abstain from asserting

jurisdiction over them consistent with this memorandum and order.

**III.**   **Conclusion**

For the foregoing reasons:

(1)The Trustee's Motion to Transfer Personal Injury Tort and Wrongful Death Cases is

GRANTED as to (1) those cases against NECC or any affiliated entity or individual pending in

federal courts, (2) those cases against NECC or any affiliated entity or individual in the process

of being removed from state court, and (3) those cases pending in state courts in which any party

has asserted a claim (including a claim for contribution or indemnity) against NECC or any

affiliated entity or individual.  A list of the pending cases to which this transfer order applies will

be entered separately on the docket.  The motion is DENIED as to those cases pending in state

courts in which no claim against NECC or an affiliated entity or individual has been asserted,

without prejudice to its renewal with as to those cases;

(2)      Roanoke Gentry Locke Plaintiffs' Motion for Mandatory Abstention is DENIED;

(3)      Defendants' Motions to Withdraw the Reference in the following cases are

GRANTED:

*Shaffer et al v. Cadden*, 1:13-cv-10226-FDS

*Schroder et al v. New England Compounding Pharmacy, Inc.*,
1:13-cv-10227-FDS

*Cary v. New England Compounding Pharmacy, Inc.,* 1:13-cv-10228-FDS

*Adams v. Cadden*, 1:13-cv-10229-FDS

(4)      Plaintiffs' Motions to Remand in the following cases are DENIED:

*Thompson v. New England Compounding Pharmacy, Inc.*,

31

1:12-cv-12074-FDS

*Armstrong v. New England Compounding Pharmacy, Inc.*,
    1:12-cv-12077-FDS

*Guzman v. New England Compounding Pharmacy, Inc.*,
    1:12-cv-12208-FDS

*Devilli, et al. v. Ameridose*, LLC, *et al.*, 1:13-cv-11167-FDS

*Marko v. New England Compounding Pharmacy, Inc., et al.,*
    1:13-cv-10404-FDS

*Pennington v. New England Compounding Pharmacy, Inc., et al.,*
    1:13-cv-10406-FDS

*Hannah v. New England Compounding Pharmacy, Inc., et al.*,
    1:13-cv-10407-FDS

*Leaverton v. New England Compounding Pharmacy, Inc., et al.*,
    1:13-cv-10408-FDS

*Jones v. New England Compounding Pharmacy, Inc., et al.*,
    1:13-cv-10409-FDS

*Ramos v. New England Compounding Pharmacy, Inc., et al.*,
    1:13-cv-10410-FDS

*Rios v. New England Compounding Pharmacy, Inc., et al.*,
    1:13-cv-10411-FDS

*Rivera v. New England Compounding Pharmacy, Inc., et al.*,
    1:13-cv-10412-FDS

*Tolotti v. New England Compounding Pharmacy, Inc., et al.*,
    1:13-cv-10413-FDS

*Tayvinsky v. New England Compounding Pharmacy, Inc., et al.*,
    1:13-cv-10414-FDS

*Zavacki v. New England Compounding Pharmacy, Inc., et al.*,
    1:13-cv-10441-FDS

*Letizia v. New England Compounding Pharmacy, Inc.*,

1:13-cv-10442-FDS

*Gould v. New England Compounding Pharmacy, Inc.*,
1:13-cv-10444-FDS

*Tisa v. New England Compounding Pharmacy, Inc., et al.*,
1:13-cv-10446-FDS

*Normand v. New England Compounding Pharmacy, Inc., et al.*,
1:13-cv-10447-FDS

*Radford v. New England Compounding Pharmacy, Inc., et al.*,
1:13-cv-10688-FDS

*Rhodes v. New England Compounding Pharmacy, Inc.*,
1:13-cv-10504-FDS

(5)     The Court will issue separate orders in the dockets of the specific cases just

referenced as to the  motions affected by this order.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: May 31, 2013

33

|  |  | Response by Paul D. Moore, in his capacity as Chapter 11 Trustee of the Defendant New England Compounding Pharmacy, Inc. d/b/a New England Compounding Center to 289 Response to Court Order . (Gottfried, Michael) (Entered: 07/18/2013) |
| --- | --- | --- |
| 07/18/2013 | 331 | Withdrawal of 250 MOTION to Quash and Objection filed by Surgery Center Associates of High Point, LLC. (Cicolini, Pietro) (Entered: 07/18/2013) |
| 07/18/2013 | 340 | ELECTRONIC Clerk's Notes for proceedings held before Judge F. Dennis Saylor, IV: Status Conference held on 7/18/2013. Case called. (1) The PSC advised the Court on ongoing discovery efforts, including subpoenas to third parties for production of medical and business records.(2) The Court heard a report on the status of bankruptcy proceedings. The PSC reported that a hearing on the motion for entry of a bar date is set before the bankruptcy court on July 24, 2013.(3) The parties will file a proposed mediation order, as described in the 209 Case Management Order on pages 10-11, by July 29, 2013. (4) The PSC requested that the Court appoint a liaison counsel for the unaffiliated defendants. The Court ordered that any proposals concerning the framework, structure and selection of such counsel shall be filed no later than 12:00 PM (noon) on August 7, 2013. (5) The PSC reported to the Court on the mechanism, including likely vendors, for collecting and sharing HIPAA and non-HIPAA medical records. The Court expects to take the issue up again at the August status conference. (6) The Court heard argument on pending oppositions to the Case Management Order. Construing the oppositions to the Case Management Order (CMO) as motions to modify the CMO, the Court DENIED them without prejudice (see docket numbers 188 , 189 , 201 , 210 , 223 , 226 ) for the reasons stated on the record. If any issues remain outstanding, the parties may file motions to modify the Case Management Order after a meet-and confer with the PSC and other parties to attempt to resolve or narrow the dispute. (7) Preservation Order shall remain in place without modification. (8) The motions of certain Virginia plaintiffs seeking certification for interlocutory appeal or to amend the judgment 195 , 196 , 211 , 212 are DENIED for reasons stated on the record.(9) The Court GRANTED the request to take up ARL Bio Pharmas pending 276 motion for a protective order at the August conference. (10) The Court heard from non-party objectors and the parties regarding the various motions to quash and objections to the PSCs subpoenas. Pursuant to 28 U.S.C. § 1407(b) and for the reasons stated on the record, the Court ordered that all objections concerning the jurisdiction or centralized authority of the Court to issue and enforce the subpoenas will be DENIED. The Court heard argument as to whether under Fed R. Civ. P. 26 and 45, or otherwise, it may enforce a subpoena seeking non-party patient and medical information intended to obtain information to assist in the provision of notice to potential claimants in the bankruptcy court. The Court ordered that any supplemental memoranda concerning that issue shall be filed by July 26, 2013. To the extent that any issues concerning any pending motions to quash and/or objections to the subpoenas (see docket nos. 218 , 219 , 220 , 221 , 222 , 231 , 236 , 241 , 244 , 246 , 250 , 252 , 254 , 256 , 257 , 259 , 260 , 261 , 263 , 266 , 269 , 273 , 275 , 279 , 288 , 298 , 300 , 303 , 304 , 305 , 306 , 307 , 308 , 311 , 314 , 317 , 327 ) remain once that issue is resolved, the Court expects to refer them to the Magistrate Judge for final resolution. (11) Various deadlines were extended to the date of the next status conference, as |

2/27/2014                                    CM/ECF - USDC Massachusetts - Version 6.1 as of 03/11/2013

| | | |
|---|---|---|
| | | follows: (a) response deadlines to the pending motions to dismiss filed by Alaunus Pharmaceutical, LLC, Image Guided Pain Management and Carilion Surgery Center New River Valley are extended until August 9, 2013; and (b) deadlines for all answers or other pleadings responsive to a complaint are also extended until August 9, 2013. (12) Further status conferences are set for August 9, 2013, at 1:30 PM in Courtroom 2; and September 12, 2013, at 1:30 PM; and October 8, 2013, at 1:30 PM before Judge F. Dennis Saylor IV.(13) All parties are reminded to docket all pleadings in the lead MDL docket (13-md-02419-FDS) and, when appropriate, in the corresponding individual case docket as well. (Court Reporter: Valerie OHara at vaohara@gmail.com.)(Attorneys present: Sobol, K. Parker, Dougherty, Stranch, Chalos, Zamora, Lipton (T), Fennell, Molton, Ellis, Coren, Gottfreid, Sternklar Moriarty, Nadel, Trannen, Rabinovitz, Fern, Ciporkin, Sampson, Thomas, Tardio, Grossman (T), Humphrey (T), Bozer (T), Cunha, Stephens (T)) (Cicolini, Pietro) Modified on 7/24/2013 (Cicolini, Pietro). Modified on 7/25/2013 to correct the date of the October Status conference(Cicolini, Pietro). Modified on 8/5/2013 to add motion # 212 to the entry (Cicolini, Pietro). (Entered: 07/24/2013) |
| 07/19/2013 | 332 | *Corrected* Objection to PSC's Subpoena by Doylestown Hospital. See also Document 327 . (Cicolini, Pietro) (Entered: 07/19/2013) |
| 07/19/2013 | 333 | NOTICE of *Limited* Appearance by Allen P. Neely on behalf of Allegheny Pain Management, P.C. (Cicolini, Pietro) (Entered: 07/19/2013) |
| 07/19/2013 | 334 | Objection to PSC's Subpoena by Allegheny Pain Management, P.C.. (Attachments: # 1 Exhibit A)(Cicolini, Pietro) (Entered: 07/19/2013) |
| 07/22/2013 | 335 | Transcript of Status Conference held on July 18, 2013, before Judge F. Dennis Saylor IV. The Transcript may be purchased through the Court Reporter, viewed at the public terminal, or viewed through PACER after it is released. Court Reporter Name and Contact Information: Valerie OHara at vaohara@gmail.com Redaction Request due 8/12/2013. Redacted Transcript Deadline set for 8/22/2013. Release of Transcript Restriction set for 10/21/2013. (Scalfani, Deborah) (Entered: 07/22/2013) |
| 07/22/2013 | 336 | NOTICE is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above-captioned matter. Counsel are referred to the Court's Transcript Redaction Policy, available on the court website at http://www.mad.uscourts.gov/attorneys/general-info.htm (Scalfani, Deborah) (Entered: 07/22/2013) |
| 07/23/2013 | 337 | NOTICE of *Limited* Appearance by Cynthia A. Palin on behalf of Encino Outpatient Surgery Center (Cicolini, Pietro) (Entered: 07/23/2013) |
| 07/23/2013 | 338 | MOTION to Quash and Objections to PSC's Subpoena by Encino Outpatient Surgery Center. (Attachments: # 1 Exhibit A)(Cicolini, Pietro) (Entered: 07/23/2013) |
| 07/23/2013 | 339 | MEMORANDUM regarding Right to Privacy under California law in Support of 338 MOTION to Quash filed by Encino Outpatient Surgery Center. (Attachments: # 1 CA Authority in support of motion to quash)(Cicolini, Pietro) (Entered: 07/23/2013) |

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 13-02419-RWZ

IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC.,
PRODUCTS LIABILITY LITIGATION

MEMORANDUM OF DECISION

May 15, 2014

ZOBEL, D.J.

This matter is before the court on the Chapter 11 trustee's renewed and supplemental motion to transfer additional personal injury tort and wrongful death cases to this court pursuant to 28 U.S.C. §§ 1334 and 157(b)(5) (Docket # 732) and the Roanoke Gentry Locke Plaintiffs' renewed motion for mandatory or permissive abstention under 28 U.S.C. § 1334 (Docket # 763). For the reasons articulated below, the trustee's motion to transfer is ALLOWED and the Roanoke Gentry Locke Plaintiffs' motion for abstention is DENIED.

I. Background

A detailed account of the background and circumstances of this case is set forth in the court's prior memorandum and order on the trustee's first transfer motion. See In re New Eng. Compounding Pharm., Inc. Prods. Liab. Litig., 496 B.R. 256, 260-63 (D. Mass. 2013). I presume familiarity with that opinion and summarize here only the background essential to the resolution of the pending motions.

A. Case Overview

This litigation involves claims for wrongful death and personal injury arising out of

the administration of an injectable steroid, methylprednisolone acetate ("MPA"),

manufactured by defendant New England Compounding Pharmacy, Inc. ("NECC").  The

complaints allege that NECC produced contaminated MPA that led to serious fungal

infections and, in some instances, death.  Lawsuits alleging death or injury based on

contaminated MPA were filed in multiple state and federal jurisdictions around the

country beginning in November 2012.  Most of these cases name NECC, and affiliated

entities or individuals, as defendants.  Some, however, name only the healthcare

providers who actually distributed or administered the MPA.

In February 2013, the Judicial Panel on Multidistrict Litigation ("JPML") issued an

order under 28 U.S.C. § 1407 transferring various federal court matters to this court for

coordinated and consolidated pretrial proceedings; subsequent JPML orders also

transferred other "tag-along" cases here.  In the meantime, NECC filed for bankruptcy

protection in December 2012, and a United States Trustee, Paul Moore, was appointed

to administer the bankruptcy estate.

### B. The Court's First Transfer Order

The trustee moved to transfer all personal injury and wrongful death cases,

wherever filed, to this court to facilitate centralized management of the litigation and

claim process in order to create the largest possible pool of funds for victims and

distribute those funds fairly, equitably, and with a minimum of expense and delay.[1]  On

---

[1] A group of plaintiffs with cases pending in state court in Roanoke, Virginia (referred to as the "Roanoke Gentry Locke Plaintiffs" after the law firm representing them) filed a motion for mandatory abstention under 28 U.S.C. 1334(c)(2).

2

June 12, 2013, Judge F. Dennis Saylor, my predecessor in this case,[2] allowed the transfer motion as to:

> (1) any case pending in federal court against NECC or any affiliated entity or individual, (2) any such case that is in the process of removal to federal court, and (3) any case pending in any state court in which a party has made a claim against NECC or any affiliated entity or individual, including third-party claims for contribution or indemnity.

In re New Eng. Compounding Pharm., Inc., 496 B.R. at 264. As to a fourth category of cases, state court proceedings not naming NECC or any affiliated entity or individual, the motion was denied without prejudice to its renewal.

With regard to federal subject matter jurisdiction over the state court cases, particularly those with no claims against NECC or its affiliates, Judge Saylor turned to 28 U.S.C. § 1334, which confers on district courts "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." Given the lack of clarity and controlling authority on the subject, the court took a cautious approach. Judge Saylor concluded that related-to jurisdiction applied to any state court case in which any plaintiff had asserted a claim, or any defendant had asserted a claim for contribution or indemnity, against NECC or any affiliated entity or individual, since such claims would clearly have an effect on the bankruptcy estate. Judge Saylor also assumed, without deciding, that jurisdiction existed over state court cases in which a claim against NECC or its affiliates was possible but had not yet been asserted; however, he abstained from exercising such jurisdiction as a matter of discretion. In so doing, he noted:

---

[2] Judge Saylor recused himself on February 7, 2014, and the action was thereafter reassigned to me.

The transfer of some, but not all, state-court cases might be something of a pointless exercise if the possibility remains that a state-court defendant could make a future claim in the bankruptcy case for contribution or indemnity, upsetting the effort to make an equitable distribution to the victims and other creditors. Indeed, that is the essential basis of the trustee's motion: that the Court *must* transfer *all* state-court cases to foreclose that very possibility.

The Court is not convinced, at least at this stage, that such a step is necessary. Other possible courses of action might produce the desired consolidation and finality, without resolving difficult issues of jurisdiction and abstention and without intruding unnecessarily into the proceedings of state courts. For example, if the Bankruptcy Court were to set a relatively early bar date for the filing of claims against the estate, it would appear *that any defendant in a state-court action would be effectively forced to* decide whether it wanted to file a claim for contribution or indemnity against the estate. Such a claim, in turn, would probably permit the exercise of federal jurisdiction over the underlying matter. Any defendant who did not file a claim would be barred, and the state-court case could proceed to judgment without interference from the federal court. Either way, the desired goals would be achieved with a relatively minimal degree of risk or intrusion.

In any event, the Court does not need to reach the issue at this juncture. If the balance of factors shifts over time, the Court can revisit the issue, and if necessary (and appropriate) can issue further orders concerning the exercise of related-to jurisdiction.

In re New Engl. Compounding Pharm., Inc., 496 B.R. at 269-70.

In a subsequent analysis of abstention questions, Judge Saylor held that

mandatory abstention under 28 U.S.C. § 1334(c)(4) was not applicable to the state court

cases at issue, thus denying the Roanoke Gentry Locke Plaintiffs' motion for mandatory

abstention.  Nevertheless, Judge Saylor elected to exercise discretionary abstention

under § 1334(c)(1) as to those state court cases involving only state law claims against

defendants other than NECC and its affiliates and where there was no third-party claim

for contribution or indemnity.  He observed, however, that the court "may, in the future,

assert jurisdiction over any such case should the third-party defendant actually assert

4

such a claim." Id. at 274.

### C. Post-Order Developments

Among the state court cases exempted from the transfer order were twenty-two personal injury and wrongful death lawsuits pending in Virginia state court against various non-debtor defendants allegedly involved in the distribution and administration of contaminated MPA from NECC (the "Roanoke cases."). These matters – comprised of nineteen cases brought by the Roanoke Gentry Locke Plaintiffs and three cases represented by the Frith & Ellerman law firm ("Roanoke Frith & Ellerman Plantiffs") (collectively, "Roanoke Plaintiffs") – assert state law claims against two physicians, their professional corporation, and Insight Health Corp. ("Insight"), a company which operates a Virginia clinic that received and administered a number of tainted MPA injections. At the time of the court's transfer order, none of the parties in the Roanoke cases had asserted any claim against NECC or its affiliates.

Following the entry of the court's transfer order, the bankruptcy court entered an order fixing January 15, 2014, as the deadline for filing claims against the estate. In response, Insight filed a proof of claim on December 20, 2013, asserting claims against NECC for indemnity and contribution with respect to any liability incurred in the Roanoke cases.[3]  See Docket # 733, Ex. 2. The trustee then filed a renewed and supplemental motion seeking transfer of the Roanoke cases to this court (Docket # 732). The Roanoke Gentry Locke Plaintiffs oppose the trustee's renewed motion and, in turn, have

---

[3] Due to the entry of an automatic stay in the bankruptcy court pursuant to 11 U.S.C. § 362, which prohibits the naming of NECC as a defendant in any civil action, the filing of a proof of claim became the only appropriate vehicle for asserting indemnity and contribution claims against NECC.

5

filed a renewed motion requesting that the court abstain (citing both mandatory and permissive grounds) from exercising jurisdiction (Docket # 763).[4]  In early January, before the claims bar date, the Roanoke Plaintiffs filed their own proofs of claim in the NECC bankruptcy case.  See Docket # 818, Ex. A.  Several additional personal injury and wrongful cases have since been filed against Insight in Virginia state court.  See Docket # 1119.[5]  The trustee seeks the transfer of those cases in addition to the twenty-two previously identified.

## II. Discussion

28 U.S.C. § 157(b)(5) provides, in pertinent part, that:

The district court shall order that personal injury tort and wrongful death claims shall be tried in the district in which the bankruptcy case is pending or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

Because the NECC bankruptcy case is pending in the District of Massachusetts, this court has the authority to determine the appropriate venue for such tort claims.  In order to determine whether to transfer the Roanoke cases (and other state court cases like them) here, I must assess whether the court has subject matter jurisdiction and, if so, whether I should nonetheless abstain from asserting such jurisdiction under the mandatory abstention provisions of § 1334(c)(2) or the discretionary ones of §

---

[4] Other individuals and entities related to this litigation have responded with briefs in support of or in opposition to the trustee's renewed motion to transfer.  The Official Committee of Unsecured Creditors supports the motion to transfer, as does the Plaintiffs' Steering Committee, albeit on slightly different legal grounds.  Insight has also filed a memorandum in support of transfer.  The Roanoke Frith & Ellerman Plaintiffs, as well as group of intervenors that expected to file similar state court actions against Insight in Virginia, oppose the motion to transfer and advocate for abstention.  Image Guided Pain Management, one of Insight's co-defendants in the Roanoke cases, likewise opposes transfer.

[5] At least some of the plaintiffs in these new cases have filed proofs of claim in the bankruptcy court.  See Docket # 818, Ex. A.

6

1334(c)(1). Judge Saylor's thoughtful and thorough prior order on transfer provides a helpful starting point for the analysis.

## A. Subject Matter Jurisdiction

The first transfer order was inconclusive as to whether the court had related-to jurisdiction over state court cases with possible, but unasserted, claims against NECC or its affiliates. Judge Saylor suggested, however, that should a party later assert a claim for contribution or indemnity against the bankruptcy estate, "such a claim, in turn, would probably permit the exercise of federal jurisdiction over the underlying matter." In re New Engl. Compounding Pharm., Inc., 496 B.R. at 270. Perhaps taking the hint, Insight did in fact file a proof of claim in the NECC bankruptcy case. As a result, the trustee argues, the connection to the bankruptcy necessary for related-to jurisdiction – previously missing in the Roanoke cases – has now been made. The Roanoke Plaintiffs contend that, even with the proof of claim, Insight's contingent contribution and indemnity claims against NECC are not sufficient to confer jurisdiction.

The scope of related-to jurisdiction under § 1334 is "quite broad." In re Boston Reg'l Med. Ctr., 410 F.3d 100, 105 (1st Cir. 2005). "[A] civil proceeding is related to bankruptcy [if] the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." In re G.S.F. Corp., 938 F.2d 1467, 1475 (1st Cir. 1991), overruled on other grounds by Connecticut Nat'l Bank v. Germain, 503 U.S. 249 (1992) (quoting Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984), overruled on other grounds by Things Remembered v. Petrarca, 516 U.S. 124 (1995)). Thus, courts may exercise related-to jurisdiction over a proceeding, even if not against the debtor or its property, "so long as the outcome of the litigation potentially could have

some effect on the bankruptcy estate, such as altering debtor's rights, liabilities, options, or freedom of action, or otherwise have an impact upon the handling and administration of the bankrupt estate." In re Boston Reg'l, 410 F.3d at 105 (internal citations and textual alterations omitted).

The limits of related-to jurisdiction are hotly debated in the present case. The Roanoke Plaintiffs and their supporters urge the court to follow the Third Circuit's lead in Pacor. There, the court held that related-to jurisdiction did not exist over a suit by an employee against an asbestos distributor, even though the employee's success in that suit would likely cause the distributor to seek indemnification from the debtor, an asbestos manufacturer. Pacor, 743 F.2d at 994-95. The Third Circuit found that the primary action between the employee and distributor "would have no effect on the [debtor's] bankruptcy estate" and was, at best, "a mere precursor to the potential third party claim for indemnification by [the distributor] against [the debtor]." Id. at 995. The court distinguished the circumstances in Pacor from those of another case, In re Brentano's, 27 B.R. 90 (Bankr. S.D.N.Y. 1983), where the debtor's landlord sued the guarantor of the debtor's lease. Since the debtor was contractually obligated to indemnify the guarantor for any liability or judgments due to the guarantee agreement, a judgment in favor of the landlord would automatically result in indemnification liability against the estate, thereby creating related-to jurisdiction. Pacor, 743 F.2d at 995. In contrast, in Pacor, "there would be no automatic creation of liability against [the debtor] on account of a judgment against [the distributor]," and "[a]ny judgment obtained would thus have no effect on the arrangement, standing, or priorities of [the debtor's] creditors." Id. In the wake of Pacor, some courts have held that related-to jurisdiction exists over a

8

case against a non-debtor, third-party defendant only where there is some existing contribution or indemnity obligation (e.g., a contractual duty to indemnify).

However, decisions in In re Dow Corning Corp., 86 F.3d 481 (6th Cir. 1996), and In re Twinlabs Personal Injury Cases, No. 03 Civ. 9169, 2004 WL 435083, *1 (S.D.N.Y. Mar. 8, 2004) present more expansive and pragmatic views of related-to jurisdiction.[6] The courts in Dow Corning and Twinlabs asserted jurisdiction over cases against third-party defendants with only contingent claims for contribution or indemnification against the debtor, chiefly because of the large potential impact of such liability on the bankruptcy estate. Judge Saylor, while ultimately not deciding jurisdiction, opined that the situation presented in this case implicates many of the same concerns that motivated the Sixth Circuit to assert jurisdiction over claims against non-debtor defendants in Dow Corning. See In re New Engl. Compounding Pharm., Inc., 496 B.R. at 269. I agree. Damages in the Roanoke cases alone will potentially total over $100 million, a sum which – if applied against the bankruptcy estate through Insight's indemnity and contribution claims – would greatly deplete the limited funds available for other claimants. The outcome of the state court cases, then, carries more than the potential of "some effect on the bankruptcy estate," In re Boston Reg'l, 410 F.3d at 105, but rather poses a significant threat to the estate and the claims of its creditors. And with the filing of Insight's proof of claim, that threat is not only possible, but clearly "conceivable."

---

[6] The First Circuit has yet to address the issue of whether related-to jurisdiction would exist over claims against non-debtors without contractual or "automatic" indemnity or contribution arrangements with the debtor.

The Roanoke Plaintiffs argue that the potential impact of their cases on the bankruptcy estate is illusory because Insight does not have valid claims for contribution or indemnity.  Under Virginia law, active negligence or moral turpitude will disqualify a party from seeking contribution or indemnification.  See VA. CODE § 8.01-34; Philip Morris, Inc. v. Emerson, 368 S.E.2d 268, 285 (Va. 1988).  The Roanoke Plaintiffs also point out that to obtain contribution from a joint tortfeasor, a defendant has the burden of proving that the concurring negligence of the other party was the proximate cause of injury.  See Carr v. Home Ins. Co., 463 S.E.2d 457, 458 (Va. 1995).  These arguments presume too much, resting on assumptions that the Roanoke Plaintiffs will prevail on their allegations of active negligence and moral turpitude, or that Insight will be unable to show that the alleged injuries were caused by NECC.  Moreover, the Roanoke Plaintiffs also seek recovery under a theory of negligence per se under Virginia Code §§ 8.01-221 and 54.1-3400 et seq., for which proof of actual negligence is unnecessary.  Thus, it is entirely possible that Insight could be found liable in the Roanoke cases yet still be entitled to pursue contribution or indemnification from the estate.

The Roanoke Plaintiffs also contend that Insight's claims will be disallowed or subordinated under the bankruptcy code and therefore will have no effect on the estate.  These conclusions, too, are premature.  Although the trustee has identified ways in which Insight's claims may be subject to disallowance and subordination, such issues are by no means settled and will be addressed by the bankruptcy court in due course.  It is not my role to speculate now on how the bankruptcy code might apply to these questions or how the bankruptcy court may ultimately rule.  As it currently stands, Insight's proof of claim continues to pose a real threat to the assets and administration

10

of the estate.

The trustee asserts another basis for subject matter jurisdiction beyond Insight's
proof of claim: the proofs of claim filed by the Roanoke Plaintiffs themselves. All the
Roanoke Plaintiffs submitted proofs of claim against the bankruptcy estate for the same
damages asserted in their state court actions. See Docket # 818, Ex. A. The trustee
argues that these claims, each seeking millions of dollars, also confer related-to
jurisdiction because the Roanoke Plaintiffs' success in their underlying lawsuits "could
reduce or eliminate [their] existing claim in the bankruptcy case and thus increase the
amount of money available to other creditors participating in the bankruptcy." TD Bank,
N.A. v. Sewall, 419 B.R. 103, 104 (Bankr. D. Me. 2009). Judge Saylor, in his transfer
order, similarly noted that courts have found related-to jurisdiction pursuant to Pacor
"when recovery under an action by a creditor against a third party could reduce the
amount that the creditor can claim from the estate directly." In re New Engl.
Compounding Pharm., Inc., 496 B.R. at 267 n.7 (citing TD Bank, supra; In re Baptist
Foundation of Arizona, No. CIV 00-557-PHX-ROS, 2000 WL 35575676, at *1 (D. Ariz.
June 30, 2009); In re Curran, 157 B.R. 500 (Bankr. D. Mass. 1993)). If the Roanoke
Plaintiffs recover all or part of their damages from Insight and other defendants, "their
claims against the bankruptcy estate would be wholly or partially satisfied, thereby
affecting their status in relation to other creditors." In re Baptist Foundation of Arizona,
2000 WL 35575676, at *3. Thus, the outcome of the Roanoke cases "could conceivably
have an[] effect on the estate being administered in bankruptcy." Pacor, 743 F.2d at
994.

In light of the proofs of claim filed by Insight and the Roanoke Plaintiffs against

11

the bankruptcy estate, I conclude that related-to jurisdiction exists over the Roanoke

cases under 29 U.S.C. § 1334.

### B. Mandatory Abstention

The Roanoke Gentry Locke Plaintiffs insist that, even if subject matter jurisdiction

exists over the state court cases, the court must abstain from exercising it under 28

U.S.C. § 1334(c)(2):

> Upon timely motion of a party in a proceeding based upon a State law
> claim or State law cause of action, related to a case under title 11 but not
> arising under title 11 or arising in a case under title 11, with respect to
> which an action could not have been commenced in a court of the United
> States absent jurisdiction under this section, the district court shall abstain
> from hearing such proceeding if an action is commenced, and can be
> timely adjudicated, in a State forum of appropriate jurisdiction.

The Roanoke Gentry Locke Plaintiffs assert that their cases meet all the elements

needed to trigger mandatory abstention.

However, the court already considered and rejected this argument in its prior

transfer order and related denial of the Roanoke Gentry Locke Plaintiffs' first mandatory

abstention motion.  Section 1334(c)(2) must be read in conjunction with 28 U.S.C. §

157(b)(4), which excepts "[n]on-core proceedings under section 157(b)(2)(B)" from the

mandatory abstention provisions of § 1334(c)(2).  Section 157(b)(2)(B), in turn,

describes "the liquidation or estimation of contingent or unliquidated personal injury tort

or wrongful death claims against the estate for purposes of distribution in a case under

title 11" as non-core.  18 U.S.C. § 157(b)(2)(B).

Judge Saylor determined that claims for indemnity or contribution arising from

personal injury or wrongful death claims fall within the scope of § 157(b)(2)(B) and are

not subject to mandatory abstention.  While acknowledging that some courts have held

12

otherwise under a strict textual reading of the statutes, Judge Saylor found that in light of

Congress's motivation for crafting the exception – that "the unpredictable and substantial

*verdicts that are often produced in personal injury tort and wrongful death claims could*

have potentially deleterious effects on a debtor's estate," Beck v. Victor Equipment Co.,

Inc., 277 B.R. 179, 180-81 (S.D.N.Y. 2002) – and the practical threat posed to the estate

by contribution and indemnity claims in this case, the phrase "personal injury tort or

wrongful death claims against the estate," as used in § 157(b)(2)(B), "can fairly be read

to encompass not only personal injury and wrongful death claims, but also claims for

contribution or indemnity that derive from personal injury or wrongful death claims." In re

New Engl. Compounding Pharm., Inc., 496 B.R. at 272.[7]

I decline the invitation to revisit or disturb Judge Saylor's prior ruling with respect

to mandatory abstention.  The court has already decided the issue, and that decision

stands as the law of the case.  See Naser Jewelers, Inc. v. City of Concord, 538 F.3d

17, 20 (1st Cir. 2008) ("[W]hen a court decides upon a rule of law, that decision should

continue to govern the same issues in subsequent stages in the same case.") (quoting

Arizona v. California, 460 U.S. 605, 618 (1983)).  The Roanoke Gentry Locke Plaintiffs

identify no new arguments or circumstances justifying reconsideration of this issue.  Cf.

---

[7]  Judge Saylor explained:

Contribution or indemnity claims are simply procedural vehicles for asserting liability
against the estate for some underlying harm.  If the underlying harm giving rise to the
estate's potential liability involves personal injury or wrongful death, the claim against a
third-party concerning that harm is, in substance, a 'personal injury tort or wrongful death
claim action against the estate' and therefore covered by the exception  in s. 157(b)(2)(B).
This reading is more congruent with Congress's motivation in crafting the exception to
mandatory abstention.  A narrower reading would create a potentially gaping loophole in
the carefully crafted system for the orderly administration of bankruptcy estates."

In re New Engl. Compounding Pharm., Inc., 496 B.R. at 272.

13

Naser Jewelers, id. ("Narrow exceptions to the [law of the case] doctrine exist if the initial

ruling was made on an inadequate record or was designed to be preliminary; if there has

been a material change in controlling law; if there is newly discovered evidence bearing

on the question; and if it is appropriate to avoid manifest injustice."). Mandatory

abstention does not apply to the Roanoke cases.

### C. Permissive Abstention

*Even where not required to abstain from exercising related-to jurisdiction by §*

1334(c)(2), district courts have discretion to do so under §1334(c)(1) "in the interest of

justice, or in the interest of comity with State courts or respect for State law."  Relevant

factors to consider include:

> (1) the effect of abstention on the efficient administration of the
> bankruptcy estate; (2) the extent to which state law issues predominate
> over bankruptcy issues; (3) the difficulty or unsettled nature of the
> applicable law; (4) the presence of a related proceeding commenced in
> state court or other non-bankruptcy court; (5) the basis of bankruptcy
> jurisdiction (if any) other than 28 U.S.C. § 1334; (6) the degree of
> relatedness or remoteness of the proceeding to the main bankruptcy
> case; (7) the substance rather than the form of an asserted "core"
> proceeding; (8) the feasibility of severing state law claims from core
> *bankruptcy matters to allow judgments to be entered in state court with*
> enforcement left to the bankruptcy court; (9) the burden of the bankruptcy
> court's docket; (10) the likelihood that the commencement of the
> proceeding in bankruptcy court involves forum shopping by one of the
> parties; (11) the existence of a right to jury trial; (12) the presence in the
> proceeding of non-debtor parties.

In re Cox, 247 B.R. 556, 569-70 (Bankr. D. Mass. 2000) (citations omitted).

I agree with Judge Saylor that the balance of these factors generally weighs

against permissive abstention in this matter.  The consolidation and centralization of all

related cases would facilitate the fair and efficient administration of the NECC

14

bankruptcy estate and protect the estate's limited funds from the significant burdens and consequences of piecemeal litigation. Although the Roanoke Plaintiffs are correct that their claims primarily involve issues of state law, the outcomes of those cases, as already discussed, are likely to have considerable impact on the bankruptcy proceedings and reorganization plan.

Judge Saylor's primary reason for abstaining from exercising jurisdiction over the Roanoke cases was uncertainty that such jurisdiction existed absent any claims against NECC, its affiliates, or the estate. See In re New Engl. Compounding Pharm., Inc., 496 B.R. at 274. However, with the parties' filing of proofs of claim in the bankruptcy case, that uncertainty has now been resolved. As such, and in light of the circumstances, I find permissive abstention to be inappropriate and refrain from applying it here.[8]

### III. Conclusion

The trustee's renewed motion to transfer (Docket # 732) is ALLOWED. The Roanoke Gentry Locke Plaintiffs' renewed motion for abstention (Docket # 763) is DENIED. Counsel shall inform the court regarding any steps necessary to effectuate the transfer of cases pursuant to this opinion.

May 15, 2014
_____
DATE

Ryan Zobel
_____
RYA W. ZOBEL
UNITED STATES DISTRICT JUDGE

---

[8] The Roanoke Gentry Locke Plaintiffs warn that once the state court cases are transferred to this court, there is no procedural mechanism for sending them back to the federal district court in Virginia for trial, leaving the court and parties no alternative but to proceed with the cases in Boston. But as the trustee points out, 28 U.S.C. § 157(b)(5) not only authorizes this court to transfer the state court cases here, but to return them to Virginia for trial. See 28 U.S.C. § 157(b)(5) (providing that the district court can order that personal injury tort and wrongful death claims be tried "in district court in the district in which the claim arose").

15

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


MDL NO. 13-02419-RWZ


IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC.
PRODUCTS LIABILITY LITIGATION


ORDER

June 5, 2014


ZOBEL, D.J.

Upon consideration of the Chapter 11 Trustee's renewed and supplemental

motion (the "Motion") to transfer to this court additional personal injury tort and wrongful

death cases pursuant to 28 U.S.C. §§ 157(b)(5) and 1334 (Docket # 732), and the

memorandum in support thereof, the court found that notice of the Motion is proper and

the relief requested in the Motion is in the best interests of the debtor, its estate,

creditors, claimants, and other parties-in-interest.  After due deliberation and sufficient

cause appearing thereof, and for the reasons set forth in this court's memorandum of

decision (Docket # 1131) dated May 15, 2014, the court allowed the Motion.

Accordingly, it is hereby

1.     **ORDERED** that, pursuant to 28 U.S.C. § 157(b)(5), the personal injury and

wrongful death cases identified on Exhibit A attached hereto (the "Pending

Actions") are removed and transferred to this court from the Roanoke City Circuit

Court in which they are currently pending; and it is further


ADD - 51

2.   **ORDERED** that a Notice of Removal and Transfer, pursuant to 28 U.S.C. § 157(b)(5), of each of the Pending Actions, in the form of Exhibit B hereto, and a copy of this Order shall be filed in the Roanoke City Circuit Court and provided to all parties-in-interest in each of the Pending Actions; and it is further

3.   **ORDERED** that, pursuant to 28 U.S.C. § 157(b)(5), the clerk of the Roanoke City Circuit Court shall thereafter promptly transfer the case file pertaining to each Pending Action to the clerk of the District Court for the District of Massachusetts; and it is further

4.   **ORDERED** that plaintiffs, defendants, and their counsel shall promptly take any and all actions necessary to effectuate the transfer of the Pending Actions pursuant to this Order; and it is further

5.   **ORDERED** that this Order shall not modify or in any way affect the automatic stay that applies to the Pending Actions under 11 U.S.C. § 362 and which shall remain in full force and effect pending further order of this court or the bankruptcy court; and it is further

6.   **ORDERED** that this Order is entered without prejudice to any position that the Trustee may take regarding whether 11 U.S.C. §§ 105 and 362 operate to stay any Pending Action or to render null and void the post-petition filing of any Pending Action.

| | |
|---|---|
| _____June 5, 2014_____ | _____/s/Rya W. Zobel_____ |
| DATE | RYA W. ZOBEL |
| | UNITED STATES DISTRICT JUDGE |

2

Case 1:13-md-02419-RWZ   Document 1173   Filed 06/05/14   Page 3 of 3

**EXHIBIT B**

(Form of Notice of Removal and Transfer to be filed in the Roanoke City Circuit Court)

[APPROPRIATE CAPTION WITH PARTIES' NAMES AND CASE NUMBER]

**NOTICE OF REMOVAL AND TRANSFER PURSUANT TO 28 U.S.C. § 157(b)(5)**

In accordance with the Memorandum of Decision entered on May 15, 2014, and the Order entered on June 5, 2014, by the Honorable Rya W. Zobel, United States District Court for the District of Massachusetts, notice is hereby given as follows:

Pursuant to 28 U.S.C. § 157(b)(5), the entire court case file pertaining to this action shall be transferred from the Roanoke City Circuit Court to the clerk of the District of Massachusetts.  A copy of the Order is attached as Exhibit A.

Dated:       [DATE OF REMOVAL]
             [LOCATION]

                                    Respectfully submitted,

                                    _____
                                    [REMOVING COUNSEL]

                                    Attorneys for [REMOVING DEFENDANT]

3

## EXHIBIT A

The following is a list of the Pending Actions transferred to the United States District Court for the District of Massachusetts,

pursuant to 28 U.S.C. § 157(b)(5):

| Case | Docket No. | Filed | Court |
|---|---|---|---|
| 1. *Trudy R. Epperly v. Insight Health Corp., et al.* | CL12002571 | 12/28/2012 | Roanoke City Circuit Court |
| 2. *James Wirt Smith v. Insight Health Corp., et al.* | CL12002572 | 12/28/2012 | Roanoke City Circuit Court |
| 3. *Pauline R. McFarlane v. Insight Health Corp., et al.* | CL12002573 | 12/28/2012 | Roanoke City Circuit Court |
| 4. *Chester T. Kalinoski v. Insight Health Corp., et al.* | CL12002574 | 12/28/2012 | Roanoke City Circuit Court |
| 5. *Barbara J. Filson v. Insight Health Corp., et al.* | CL12002575 | 12/28/2012 | Roanoke City Circuit Court |
| 6. *Dana Marlene Bradley v. Insight Health Corp., et al.* | CL12002576 | 12/28/2012 | Roanoke City Circuit Court |
| 7. *Zachary Lucas Foutz, a Minor, by His Parents and Next Friends, Benjamin T. Foutz and Andrea L. Foutz v. Insight Health Corp., et al.* | CL13000009 | 1/2/2013 | Roanoke City Circuit Court |
| 8. *Richard A. Whitlow v. Insight Health Corp., et al.* | CL13000054 | 1/7/2013 | Roanoke City Circuit Court |
| 9. *Robert Earl Harris, Jr. v. Insight Health Corp., et al.* | CL13000055 | 1/7/2013 | Roanoke City Circuit Court |
| 10. *Randolph E. Smith v. Insight Health Corp., et al.* | CL13000057 | 1/8/2013 | Roanoke City Circuit Court |
| 11. *Julian Delano Holbrook v. Insight Health Corp., et al.* | CL13000370 | 2/11/2013 | Roanoke City Circuit Court |

Case 1:13-md-02419-RWZ   Document 1173-1   Filed 06/05/14   Page 2 of 2

| Case | Docket No. | Filed | Court |
|---|---|---|---|
| 12. Ronald T. Courtney v. Insight Health Corp., et al. | CL13000417 | 2/15/2013 | Roanoke City Circuit Court |
| 13. Ferman W. Wertz v. Alaunus Pharmaceutical, LLC, et al. | CL13000452 | 2/21/2013 | Roanoke City Circuit Court |
| 14. Patrick O. Johnston v. Alaunus Pharmaceutical, LLC, et al. | CL13000453 | 2/21/2013 | Roanoke City Circuit Court |
| 15. Ronald A. Brown v. Insight Health Corp., et al. | CL13000538 | 3/1/2013 | Roanoke City Circuit Court |
| 16. Robert Dana Bender, Executor of the Estate of Ralph James Irace, Jr., Deceased v. Insight Health Corp., et al. | CL13000577 | 3/6/2013 | Roanoke City Circuit Court |
| 17. Odessa M. Shuck v. Insight Health Corp., et al. | CL13000584 | 3/7/2013 | Roanoke City Circuit Court |
| 18. Rose M. White v. Insight Health Corp., et al. | CL13000606 | 3/8/2013 | Roanoke City Circuit Court |
| 19. Patricia S. Brown, et al. v. Insight Health Corp., et al. | CL13000607 | 3/8/2013 | Roanoke City Circuit Court |
| 20. Sandra F. Artis v. Insight Health Corp., et al. | CL13001105 | 5/10/2013 | Roanoke City Circuit Court |