FILED by  PG  D.C.

MAR 2 5 2013

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

## AMENDED
## CIVIL RIGHTS COMPLAINT FORM
### FOR USE IN ACTIONS UNDER 42 U.S.C. § 1983

### IN THE UNITED STATES DISTRICT COURT FOR THE
### SOUTHERN DISTRICT OF FLORIDA

DARREL CUMMINGS
Inmate # 088532

Vs.

CASE NUMBER: **9:12-CV-81413-WPD**
**DEMAND FOR JURY TRIAL**

NEW ENGLAND COMPOUNDING CENTER, CEO., BARRY CADEN,
GEO GROUP INC., MS. N. FINNISSE, MSM, HSA,
DR. J. DAUPHIN, D.O.,
DR. JULES HELLER, M.D.,
OFFICER MCINTIRE, CO1,
        Defendant(s)
_____/

### ANSWER ALL QUESTIONS ON THE FOLLOWING PAGES:

## I.  PLAINTIFFS:

State your <u>full name</u>, inmate number, and full mailing address in the lines below.  Include the name of the institution in which you are confined.  Do the same for any additional Plaintiffs:

| | | |
|---|---|---|
| (A) | Plaintiff's name: | <u>Darrel Cummings</u> |
| | Plaintiff's inmate number: | <u># 088532</u> |
| | Prison or jail: | <u>South Bay Correctional Facility</u> |
| | Mailing address: | <u>600 U.S. Hwy 27</u> |
| | | <u>South Bay, FL. 33493</u> |

## II.  DEFENDANTS:

State the <u>full name</u> of the defendant, official position, mailing address, and place of employment.  Do the same for <u>every</u> defendant.

| | | |
|---|---|---|
| (1) | Defendant's name: | <u>New England Compounding Center</u>, Ceo., Barry    Caden |
| | Official position: | <u>Pharmaceutical Company</u> |
| | Mailing address: | <u>697 Waverly St.</u> |
| | | <u>Framingham, Mass. 01702</u> |

| | | |
|---|---|---|
| (2) | Defendant's name: | <u>Ms. N. Finisse</u> |
| | Official position: | <u>Health Service Administrator</u> |
| | Mailing address: | <u>600 U.S. Hwy 27</u> |
| | | <u>South Bay, FL 33493</u> |

| | | |
|---|---|---|
| (3) | Defendant's name: | <u>Dr. J. Dauphin</u> |
| | Official position: | <u>Physician</u> |
| | Employed at: | <u>South Bay Correctional Facility</u> |
| | Mailing address: | <u>600 U.S. Hwy 27</u> |
| | | <u>South Bay, FL 33493</u> |

| | | |
|---|---|---|
| (4) | Defendant's name: | <u>Dr. Jules Heller</u> |
| | Official position: | <u>Medical Director</u> |
| | Employed at: | <u>South Bay Correctional Facility</u> |

Mailing address:  <u>600 U.S. Hwy 27</u>

<u>South Bay, FL 33493</u>

(5)   Defendant's name:  <u>Officer McIntire</u>

Official position:  <u>Correctional Officer</u>

Employed at:  <u>South Bay Correctional Facility</u>

Mailing address:  <u>600 U.S. Hwy 27</u>

<u>South Bay, FL 33493</u>

---

## III.   EXHAUSTION OF ADMINISTRATIVE REMEDIES:

NOTE:   THE COURT WILL NOT ACCEPT THE COMPLAINT FOR FILING UNTIL PLAINTIFF(S) FILL OUT THE FOLLOWING REGARDING EXHAUSTION OF ADMINISTRATIVE REMEDIES.  UNDER THE PRISON LITIGATION REFORM ACT OF 1995, 42 U.S.C. § 1997e (AS AMENDED), THIS COMPLAINT IS SUBJECT TO <u>DISMISSAL</u> IF THE CLAIMS PRESENTED HAVE NOT BEEN PROPERLY EXHAUSTED.

A.   DOES YOU COMPLAINT CONCERN EVENTS OCCURRING WITHIN THE FLORIDA DEPARTMENT OF CORRECTIONS?

Yes ( **x** )      No ( )

[If your answer is YES, answer all the questions in this subsection.
If your answer is NO, proceed to subsection III B.]

Exhaustion of administrative remedies pursuant to Fla. Admin. Code Chapter 33-103 is required prior to pursuing a civil rights action concerning events occurring within the Florida Department of Corrections.  Any required grievance, appeals, and responses must be submitted to the Court to verify exhaustion.  Each plaintiff must complete a separate Section III.

**EXHAUSTION STEPS REQUIRED**:

*      Emergency Grievance, Grievance of Reprisal, Grievance of a Sensitive Nature, Medical Grievance, Grievance Concerning Violation of Americans with Disabilities Act (ADA), Medical Grievance, Grievance Involving Admissible Reading Material, Grievance Governed by Fla. Admin. Code Rule 33-601.101 Incentive Gain Time, Grievance Involving Disciplinary Action.

3

      a.  Formal Grievance to Warden or to the Office of
           Secretary (Form DC1-303)
      b.  Appeal to the Office of Secretary (Form DC1-303)

\*       General Grievance

      a.  Informal Grievance (Form DC6-236)
      b.  Formal Grievance (Form DC1-303)
      c.  Appeal to the Office of Secretary (Form DC1-303)

## EXHAUSTION STEPS TAKEN:

1.      Emergency Grievance, Grievance of Reprisal, Grievance of a Sensitive Nature, Medical Grievance, Grievance Concerning Violation of Americans with Disabilities Act (ADA), Grievance Involving Admissible Reading Material, Grievance Governed by Fla. Admin. Code Rule 33-601.101 Incentive Gain Time, Grievance Involving Disciplinary Action (these are requests for Administrative Remedy or Appeal, by-passing the informal grievance step).

      a.      Did you submit your grievance directly to the Warden and/or to the Office of Secretary (Form DC1-303) ?

               Yes ( **x** )          No ( )

      b.      If so, you must attach a copy of the grievance and response to this complaint form.

               Yes ( **x** )          No ( )

      c.      Were you denied emergency status or otherwise required to first file an informal grievance?

               Yes ( **x** )          No ( )

      d.      Did you have a disciplinary hearing concerning this matter?

               Yes ( )          No ( **x** )

      e.      If so, you must attach a copy of the disciplinary report and disciplinary committee's findings and decision to this complaint form.

2.      Informal Grievance (Request for Interview)

      a.      Did you submit an informal grievance (Form DC6-236)?

               Yes ( **x** )          No ( )

      b.      If so, you must attach a copy of the grievance and response to this

complaint form.

3.  Formal Grievance (Request for Administrative Remedy or Appeal)

    a.  Did you submit a formal grievance (Form DC1-303)?

        Yes ( **x** )            No ( )

    b.  If so, you must attach a copy of the grievance and response to this complaint form.

4.  Appeal to the Office of the Secretary (Request for Administrative Remedy or Appeal)

    a.  Did you submit an appeal to the Office of the Secretary (Form DC1-303)?
        Yes ( **x** )            No ( )
    b.  If so, you must attach a copy of the appeal and response to this complaint form.

B.  DOES YOU COMPLAINT CONCERN EVENTS OCCURRING WITHIN A COUNTY JAIL?

        Yes ( )            No ( **x** )

If your answer is YES, answer the following questions.

1.  Is there a grievance procedure at your institution or jail?

        Yes ( )            No ( **x** )

2.  Did you present the facts relating to your complaint in the prison grievance procedure?

        Yes ( )            No ( **x** )

3.  If your answer is YES:

    a.  What steps did you take?

    b.  What were the results?

4.  If your answer is NO, explain why not:

## IV.  PREVIOUS LAWSUITS

NOTE: UNDER THE PRISON LITIGATION REFORM ACT OF 1995, 28 U.S.C. § 1915 (AS AMENED), NO PRISONER SHALL BRING A CIVIL ACTION OR APPEAL A JUDGMENT IN A CIVIL ACTION UNDER 28 U.S.C. § 1915 IF THE PRISONER HAS, ON 3 OR MORE

PRIOR OCCASIONS, WHILE INCARCERATED OR DETAINED IN ANY FACILITY, BROUGHT AN ACTION OR APPEAL IN A COURT OF THE UNITED STATES THAT WAS DISMISSED ON THE GROUNDS THAT IT IS FRIVOLOUS, MALICIOUS, OR FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED, UNLESS THE PRISONER IS UNDER IMMINENT DANGER OF SERIOUS PHYSICAL INJURY. THEREFORE, IT IS EXTREMELY IMPORTANT THAT THIS SECTION BE COMPLETED IN **THE MOST TRUTHFUL AND COMPLETE MANNER POSSIBLE**.  FAILURE TO GIVE COMPLETE AND TRUTHFUL INFORMATION ABOUT PRIOR CASES CAN RESULT IN THE **DISMISSAL** OF THIS ACTION.

A.    Have you initiated other actions in **state** court dealing with the same or <u>similar</u> facts or issues as involved in this action?

Yes ( )                    No ( **x** )

B.    Have you initiated other actions in **federal** court dealing with the same or <u>similar</u> facts or issues as involved in this action?

Yes ( **x** )                No ( )

C.    If your answer to either (A) or (B) is YES, describe each action in the space provided below.  If there is more than one action, describe all additional actions on a separate piece of paper, using the same format as below.

(1)    Parties to previous action:

Plaintiff(s):    Cummings
Defendant(s):  Harrison

(2)    Court (if federal court, name the district; if state court, name the county):

Northern District of Florida

(3)    Docket Number:        4:07CV 248 WCS

(4)    Name of Judge:        Honorable William C. Sherrill, Jr.

(5)    Briefly describe the facts and basis of the action: Excessive use of force,

Deliberate indifference, Retaliation . . .

(6)    Disposition (Was the case dismissed?  If so, why? No Did you appeal?  What result): Trial, Appeal No# 11-13507-AA

(7)    Approximate filing date: 10/14/07, verdict rendered.

(8)    Approximate disposition date:

D.   Have you initiated other actions (other than those listed in (A) or (B)) in state or federal court relating to the fact or manner of your imprisonment or the conditions of your imprisonment?

Yes ( **x** )            No ( )

E.   If your answer to (D) is YES, describe each action in the spaces below.  Attach additional pages if necessary.

(1)   Court (if federal court, name the district; if state, name the county):

Southern Dicrict of Florida

(2)   Docket Number: 06-61122 CIV-COHN/SNOW

(3)   Parties to the previous action

(a).   Plaintiff(s): Tabatha Thompson, Darrel Cummings
(b).   Defendant(s): Progressive Auto Insurance et. al.

(4)   Basis of action: Insurance claim malicious prosecution

(5)   Is it still pending? Dismissed criminal case was not overturned.

Yes ( )            No ( **x** )

## V.   STATEMENT OF FACTS:

Using numbered paragraphs, state as briefly as possible the **FACTS** of your case.  Describe how each defendant was involved and what each did or did not do to give rise to your claim.  Include the names of persons involved, dates, times, and places.  State exactly what happened.  **DO NOT make any legal arguments or cite any cases or statutes**.  You may make copies of these pages and attach additional sheets of paper if needed:

(1) Approximately on March of 2010, I arrived at South Bay Correctional Facility, and initially reported to the interviewing nurse complication of back and side pains gait favoring left side, limited range movement.

(2) On April 10, 2010, Dr. Jean Dauphin was deliberately indifferent where he conducted an examination of my back and side to which abnormalities were found. Further, my medical file, history of x-rays taken on August 10, 2007, indicated spinal impressions, mild degenerative disc change at L5 S1 . . . no treatment provided.

(3) Nothing was done until August 5, 2011, based upon numerous complaint of back pains that radiated to left leg. I reported medication did not work, x-rays ordered tried to return clinoril 200mg and indocin 50mg medication.

7

(4) On August 11, 2011, x-rays was done again and unlike the initial x-rays taken of the spine, here it was revealed by Dr. Robert Smalley that there was [a] bilateral defective pars interarticulars of L5 with a third-degree spondylolisthesis and degenerate disc . . .

(5) It would seem as if the findings by Dr. Robert Smalley M.D., differed from those that were initially found by Dr. Barry Smith M.D., on August 10, 2007. It is apparent that, Dr. Smith, indicated, ". . . [A] GRADE 1 spondylolisthesis at L5. S1 level mild degenerative disc change L5 S1 . . ."

(6) Where as Dr. Robert Smalley indicated, "Bilateral defective pars interarticularsis of L5 with a third-degree spondylolisthesis and degenerate disc . . ." So there was a significant change in my spine.

(7) Dr. Dauphin was deliberately indifferent to my medical needs where he was knowledgeable that this change had became or could have been causing chronic pain. However, he intentionally delayed and prolonged adequate treatment for said injury and pain for years.

(8) Dr. Dauphin, August 15, 2011, clearly documented this result change where he stated on the chronological record of health care report that, x-ray results . . . c/o persistant pain . . . A/P 1- Chronie back pain . . . 3rd degree spondyllolisthesis . . . Roboxin 750g . . . ortho referral . . ."

(9) Dr. Bradford A. Slutsky orthopedic specialist on August 26, 2011, conducted examination recorded that, "patient has lower pains since altercation about 4 years ago. . . . He has been treated with anti-inflammatory and muscle relaxers. The pain is made worse with standing. Nothing appears to relieve it."

(10) Further, Dr. Slutsky found from the radiographic examination: "Ap x-rays of the spine showed a Grade 2, spondylolisthesis at L5-S1 with some significant DDD at L5-S1 . . . Impression: lower back with a Grade 2., spondylolisthesis of the spine."

(11) Finally, Dr Slutsky instituted a plan that, "The patient had signs of nerve impingement, which would be expected with this type of spondylolisthesis. He had conservative treatment with no improvement. I think it would be best to do an MRI, and I will see him back after that is completed. Cc: Jean R. Dauphin D.D. (South Bay Correctional Facility)"

(12) On August 29, 2011, it is indicative from the chronological health report that Dr. Dauphin was cognizant of the increased Grade of 2., in the spondylolisthesis of the L-spine, from a previous one. Further, evaluation revealed nerve impingement, to which only conservative treatment was offered with no improvements . . . requested MRI.

(13) On September 1, 2011, I [Plaintiff] instituted a sick call request back pain problems, the pain level at that point was a level nine (9) out of ten (10) as indicated in back pain protocol sheet.

8

(14) On September 2, 2011, it is apparent from the chronological report that, Dr. Dauphin discontinued chinoril 200mg., which didn't work and then prescribed ibuprofen 600mg. Awaiting MRI.

(15) On September 16, 2011, the MRI., was conducted at Lakeside Medical Center of the Lumbar Spine, Reason: Back Pain. Dr. Scott Ruehrmund M.D., was the reading physician and found; ". . . lumbarization of S1. There is approximately 25% anterior subluxation of L5 on S1. There is decreased disc signal with degenerative marrow signal changes in the end plates . . . circumferential disc bulge and osteophyte . . . severe bilateral facet hypertrophy . . . severe bilateral foraminal narrowing."

(16) Further Dr. Ruehrmund, found as it relates to impressions: "at L5-S1, there is grade II (2) spondylolisthesis . . ."

(17) On September 25, 2011, Dr. Dauphin himself read the results where it was clearly indictive that, the grade of injury escalated from a one to a two.

(18) Additional information provided to Dr. Dauphin was lumerization of S1., 25% subluxation of L5 on S1, decreased disc signal with degenerative marrow signal changes in end plates . . . disc bulge . . . severe bilateral facet hypertrophy . . . severe foraminal narrowing . . ."

(19) On October 10, 2011, I [Plaintiff] return to Dr. Slutsky office with MRI, initial complaint was my back is getting worse, nothing is helping. The radiographic examination, showed the spondyrolisthesis at L5 with significate spinal stenosis. Impression: low back pain with spondylolisthesis and lateral spinal stenosis.

(20) Dr, Slutsky plan was . . . "trying a course of physical therapy and epidural injections . . . prior to proceed with surgery which would be a large fusion . . . he wants to consider surgery. That definitely is up to him . . ." cc: Jean Dauphin.

(21) Contrary to Dr. Slutsky's recommendation that it was definitely up to me as to whether I wanted surgery or not. Dr. Dauphin was deliberately indifferent to serious medical need for surgery where he gave me absolutely no options of receiving surgery, considering the severe damage.

All following deprivations occurred under color of state law as promise by the U.S. constitution:

(22) Dr. Dauphin acted maliciously and sadistically for the very purpose of causing harm where, he did not consider viewing the actual x-rays which clearly displayed the extent of damage which was visibly enormous and extensive considering the disc was totally out of line and nerve being pinch between disc. Of which no epidural injection shot or physical therapy could remedy. This injury was clear and plain to where even a layman could understand its significance.

(23) Dr. Dauphin acted maliciously and sadistically for the very purpose of causing harm where he indicated on September 10, 2011 from his chronological record that, "I question the validity

9

of the recommendation given by the orthopedic surgon saying that "it will not work." Contrary to this barren assertions Dr. Slutsky gave me the option of surgery.

(24) In retrospection of this comment Dr. Dauphin also stated I said "that shit does not work." In specific regards to ibuprofen 600mg for pain, shots and physical therapy.

(25) Dr. Dauphin acted maliciously and sadistically for the very purpose of causing harm where he still prescribed me more ibuprofen 800mg and wrote a consultation for epidural injection, despite my request for surgery an option afford to me by the orthopedic specialist slutsky.

(26) Dr. Dauphin was deliberately indifferent to my serious medical need by intentionally delaying and prolonging surgery, which had caused unnecessary, wanton infliction of excruciating pain. Pain occurred over an extremely long period of time, which has caused permanent damage, do to his conservative form of treatment.

(27) On September 8, 2011, I [Plaintiff] submitted grievance Log # 11-2773, ". . . In regards to unexplained and intentional delay in the treatment of serious and painful injuries and/or outright refusal to treat diagnosed injuries. Even though a court of competent jurisdiction has previously determine actual physical injuries to my lower back and side in Cummings v. Harrison, 695 F.Supp.2d 1263; 2010 U.S. Dist. Lexis 11054 . . ." Exhibit "A" (Log # 11-2773), Reiterated and incorporated in Plaintiff attachment of Grievances, Previously submitted.

(28) Dr. Dauphin acted maliciously and sadistically for the very purpose of causing harm and causing me to suffer unnecessary and wanton infliction of pain and he retaliated against me where he lied to me about the results of the x-rays which I never actually seen at that time. He advised me accordingly from the x-ray report that I only had arthritic . . .

(29) Contrary to Dr. Dauphine's prognosis, Dr. Slutsky on August 26, 2011 displayed an actual visual of x-rays themselves on a lighted screen which clearly showed my entire spinal column. Dr. Slutsky, explained that there was no way the therapy or shot would cure the damage.

(30) Dr. Slutsky, further pointed out on the screen to myself, Inmate Kerr, Ofc. Howard, Ofc. Crayton, and Ofc. Petway who were all present in his office that ". . . the disc of your lower back had vertically came a good portion out of the spinal column. And do to the degree of this abnormality, your nerves which were indicated on the x-ray [screen] as lined circles connected to each disc separately, were not intacted where [my] disc had seemingly came out in my lower back. The nerves are trapped between disc."

(31) From my view of x-rays the lower portion of my spine didn't seem connected to the upper portion which shocked everyone. Especially me actually seeing the extent of injury with my own eyes, and the damage was far worse than the big medical terms that were used on x-ray reports which I didn't understand.

(32) Dr. Dauphin acted maliciously and sadistically for the very purpose of causing harm and suffering and he retaliated against me for the submission of grievance where my nerves (line circle) were trapped between the disc and being pinched which explained the chronic and severe pain that I was experiencing." To which he delayed treatment.

10

(33) Dr. Slutsky asked me, "what type of medication did Dr. Dauphin prescribe? I informed him that it was ibuprofen 600mg and sulindac [200mg]. He stated he didn't think this would do much for the type of injury I had or pain."

(34) Here it should be pointed out that Ofc. Howard and Ofc. Crayton had to strenuously assist me in and off the van, and during transport to orthopedic office in Okeechobee, Fl., do to chronic and severe pain that I was in at that time.

(35) Dr. Dauphin acted maliciously and sadistically for the very purpose of causing harm which caused me to suffer unnecessary and wanton infliction of pain and he retaliated against me where he never even considered a consult for surgery or that specialist would provide me with a medication or treatment that would relieve chronic pain at that time.

(36) Dr. Dauphin was deliberately indifferent to my serious medical needs and he retaliated against me where he stated to me that, he didn't see why I was in pain all of a sudden when I had injury for sometime" Had Dr. Dauphin been paying attention to the previous x-rays, and current x-rays to include MRI,. He would have discovered that the injury was progressing. He further accused me of lying and wanting narcotics.

(37) Dr. Dauphin acted maliciously and sadistically for the very purpose of causing harm and retaliated against me where, he was denying me surgery and adequate treatment because despite all the examinations and tests conducted by specialist in the field, he didn't believe I was in pain. So he intentionally delayed and prolonged surgery and adequate treatment to my detriment , dismay, and causing me to suffer extensively, and excruciatingly.

(38) Dr. Dauphin was deliberately indifferent to my serious medical needs and retaliated against me where it took approximately two months before I went back to Dr. Slutsky's office on October 10, 2011 for only consult and no treatment all this time I was in pain , constantly making complaints. This has not only been physically exhausting, but also psychologically draining. Essentially where no surgery is being consulted or adequate medication provided for pain.

(39) Nevertheless, when Dr. Slutsky and I discussed options for treatment, the x-rays were very much a part of that discussion. From the outset I requested surgery from what I sough with my own eyes. Dr. Slutsky stated that most likely that's what I will need to fix it.

(40) Dr. Dauphin was deliberately indifferent to my serious medical needs and retaliated against me where I could not get anything for relief at that time, as it was not authorized again by Dr. Dauphin. Dr. Slutsky informed me that he had adequate medication for pain but had to be authorized by the facility who refused to give it.

(41) In regards to Dr. Slutsky's recommendation of: 1. physical therapy; 2. Epidural injections, and; 3. Surgery by fusion of spine.

11

(42) Dr. Dauphin acted maliciously and sadistically for the very purpose of causing harm and retaliated against me where, out of anger he advised me that "surgery was out of the question because the budget was not going to allow it." Thus, I was denied imminent surgery.

(43) In response to grievance Log# 11-2773, Ms. N. Finisse, MSM., the health Service Administrator of S.B.C.F., On September 21, 2011 clearly stated that;

> "Record indicate you were seen by the specialist on October 10, 2011 for back pain. It was recommended you should try course of physical therapy, epidural injections before considering surgery. You were seen by Doctor [Dauphin] on 11-10-11 which increased your ibuprofen from 600mg to 800mg., and wrote a consultation request for epidural injections. You are scheduled for an evaluation for epidural injection." Grievance Denied for Imminent Surgery.

(44) Ms. N. Finisse, was deliberate indifferent to my serious medical needs and acted maliciously and sadistically for the very purpose of causing harm where she intentionally ignored where it states, 1. Recommended you should try course . . ., and 2. Before considering surgery. This language provided an option afforded to me by Dr. Slutsky. However, in the interest of the budget I was denied imminent treatment, via surgery.

(45) There was absolute noting to consider before surgery. Because I had made my decision for surgery upon viewing of x-rays immediate which was definitely up to me, not Ms. Finisse, as indicated by Dr. Slutsky.

(46) Ms. Finisse M.S.M. was deliberately indifferent to my serious medical need and retaliated against me for filing grievances by causing excruciating pain over a long period of time. A pain that in its ordinary meaning surely includes a notion of psychological harm, and cruel and unusual punishment.

(47) Contrary to Ms. Finisse's response on grievance log# 11-2773 submitted on September 8, 2011 in direct regards to receiving treatment for back pains. In Grievance Log# 11-3042, Ms. Finisse directly contradicted herself where she stated in this response that, "Your sick call visit on 11-8-11 for joint pains, is not a condition that you are being seen in chronic clinic or initiated by a physician. Exhibit "B" (Log # 11-3042).

(48) Dr. Dauphin, in Grievance Log# 1112-405-042 supported this lie even where nurse Dixon RN., indicated on the chronological record of health care report that on 11-8-11, 0955am, "Sick call for c/o back/leg pains concern about follow up s/p ortho. Consult . . ." Exhibit "C" (Log # 1112-405-042).

(49) The secretary for the Department of Corrections in Grievance Log# 12-6-02095 "determined that the response given by Dr. Dauphin on 1-5-12 appropriately addresses the issue [I] presented." It's obvious they never investigated grievance, based on officers statements. Exhibit "D" (Log #12-6-02095).

(50) Ms. Finisse acted maliciously and sadistically for the very purpose of causing harm and retaliated against me where the issue is the cost of providing surgery which is the adequate treatment for condition, so she's prolonging adequate treatment at the expense of human torture which is equivalent to cruel and unusual punishment.

(51) I wasn't seen by Dr. Robert Lins M.D. orthopedic specialist, until 11-22-11, the specific recommendation was for epidural injections in the consultation requested by Dr. Dauphin. Again authorization for pain medication was not authorized by him.

(52) Dr. Dauphin was deliberately indifferent and retaliated against me where he did not include MRI for examination, and my blood pressure was 176/102 caused by his increase of ibuprofen 800mg, which neither helped pain. I was admitted into the infirmary until pressure dropped. The trip to Dr. Lins office in West Palm Beach was a total waste and had to be rescheduled while I waited in pain.

(53) On 11-28-11, I [Plaintiff] submitted specifically to the Warden Grievance Log# 11-1088 in regards to Ms. Finisse's response to Grievance Log# 11-2773. The Warden refered grievance back to Ms. Finisse and even though I had made numerous complaints of chronic and severe pain, and that the medication was not working were totally being ignored by Ms. Finisse and Dr. Dauphin. Ms. Finisse was deliberate indifferent and retaliated against me where she did absolutely nothing to prevent further damage and pain.

(54) By the intentional prolonging and delaying of adequate treatment, Ms. Finisse, and Dr. Dauphin has cause me to suffer by the unnecessary and wanton infliction of pain which has become 3x worse than before, and injury caused to deteriorate. Exhibit "E" (Log #11-1088).

(55) Dr. Robert Lins knew from his own x-rays taken, and MRI., that more extensive and imminent treatment was needed. Also which was conveyed to him by Dr. Slutsky.

(56) Dr. Lins, advised me that epidural injections would not work on my condition, and was not a cure for the pinch nerves in my back, but it may provide temporary relief. However, he never explain the adverse effects of that relief were the pain came back 3x worse, and I was infected in the process with contaminated medication.

(57) Ms. Finisse and Dr. Dauphin was deliberate indifferent and retaliated where they totally disregarded proper procedure, and did absolutely nothing to prevent further pain and damage to existing injury which has crippled me and put me in a wheel chair.

(58) Ms. Finisse, and Dr. Dauphin acted maliciously and sadistically for the very purpose of causing harm where, they omitted from there responses' the facts that the specialist I seen on 10-10-2011 was Dr. Slutsky who also specifically stated that, ". . . the patient says he wants to see a spine surgeon. He wants to consider surgery. That definitely is up to him, but that is an option. . ."

(59) Ms. Finisse, and Dr. Dauphin were deliberately indifferent to my serious medical need and retaliated against me where they exercised an unauthorized use of authority in accepting the former portions of Dr. Slutsky's report to their benefit.

13

(70) And Dr. Lins reported that, ". . . the spondylolisthesis at L5 showed significate lateral spinal stenosis . . ."

(71) Dr. Lins, as the specialist in the field where even though he reported my critical condition and the potential that if left untreated it could paralyze me. Ms. Finisse, Dr. Dauphin, and Dr. Heller should have equally knew that the epidural injection would not remedy my condition or pain.

(72) The fact of the matter is even though Dr. Lins informed them that the epidural injections would only provide temporary relief from pain, of which I disputed while Ofc. Alverez, Ofc. Petway, Ofc. Crayton were present. In that, visualizing the x-rays he displayed. My position was, "you need to fix this! Dr. Slutsky recommended fusion."

(73) Dr. Lins further stated, "He could not fix it without authorization of the facility. Dr. Lins is the orthopedic specialist and could have had the fusion to be conducted where he reported the damage to the facility that my spine was to extensive for shots to be of any substantive value.

(74) Dr. Lins had to leave this extensive damage unsubstantially treated where he knew it would cause further excruciating pain, and crippling results. Because Ms. Finisse, Dr. Dauphin, and Dr. Heller would not authorize surgery or adequate pain medication.

(75) Dr. Lins conducted follow up examination on August 31, 2012 at which time I was still unusually numb from the last shot I took on August 22, 2012 which was unusual because the other two previous shot never numb me pass three days and the pain would return worse every-time. Ofc. Alverez and Ofc. Amazon almost had to carry me to the after the shot, my feelings in my legs were gone.

(76) The last shot for some strange reason had me sick and blacking out. I knew it wasn't normal because it was a very unusual feeling, something I had not experience with the other shots. Thereafter the shots, Officer Coleman had to hold me up to keep from falling, and had to assist me, upon my return to the facility, as the pain had returned, which was extremely drastic and unbearable, with getting up to medical.

(77) Approximately on 9-5-2012, I was seen by Dr. Jules Heller, the Medical Director was deliberately indifferent to my serious medical need despite his expressed indifference. I told him that, my back and spinal pains had become much worse. Further, that I had normally felt the pains in my legs not directly in my spine. Now I felt extreme pain all over, but receive no imminent treatment for pain he ignored me.

(78) Dr. Heller, advised me that a facet injection had been recommended by Dr. Lins, (who should have recommended <u>surgery</u>) and that he was going to initiate the consult for lumber injection. But I received absolutely nothing for pain.

(79) Thereafter, I started experiencing very unusual symptoms that I had not experience previous; for instance, headaches, left-side of spine back pain, direct pain from my spine generating around both sides of my lower body, and legs.

15

(80) Even though, I was already experiencing pain in my left leg. This was different, I am now experiencing excruciating pain in both legs and spine. As if that wasn't enough, what's even more severe the pain in my ankles is unlike anything that I ever felt. It seems as if they were engulfed in flames from my ankle to my knee. For which I am continually suffering greatly in pain, and currently temporary disabled.

(81) My once God given ability to move about and walk freely has been virtually diminished. I can't even stand unassisted, and at the rate of my deterioration, I am virtually disabled.

(82) Officer McIntire was deliberately indifferent to my serious medical need which caused unnecessary and wanton infliction of pain where on 10-4-2012, at 8:45, when I collapsed from excruciating and unbearable pain. G-Dormitory Sergeant Scott, notified medical of an emergency. Officer McIntire, would not notified medical after I declare an emergency, she then forced me to move out of the chair and I fell flat into a steel door.

(83) Officer McIntire acted maliciously and sadistically for the very purpose of causing harm where upon being told that I had recent surgery something was wrong. She nefariously ordered me to get the hell out of her chair. When I told her I couldn't stand or walk, she stated, "I don't give a damn, get your "ass" out of my chair." I fell into a steel door aggravating injury and causing more pain, as she watched with her hands on her hips.

(84) I later was picked up by Nurse(s) Jones, Bennet, and Trimble, placed into a wheel chair and taken to the medical infirmary. I was not treated or seen by Dr. Heller until 1:30 pm., 4½ hours I sat in pain. Contrary to Ofc. McIntire's response in Grievance Log# 12-2102 (she never notified medical of emergency). Exhibit "H" (Log #1210-2102, 1211-405-006 (Sgt. Scott notified medical).

(85) On January 9, 2013, Officer McIntire stated, that she was not aware of Plaintiff's condition at the time or that another officer advised him to sit in a chair. Further, McIntire stated, that when Plaintiff advised her of his condition after he attempted to get up and walk and could not. She claim she was not deliberate indifferent because she did not have full knowledge. See "Here Attached" Exhibit "N" Grievance Log# 12-6-40195, Belatedly responded to after submission of Plaintiff's Civil Complaint.


(86) Officer McIntire was deliberate indifferent to my serious medical needs, and exhibited cruel and unusual punishment where these allegation are refuted: In attached Initial Grievance Log# 12-2102, dated October 4, 2012, and responded to on October 26, 2012 Plaintiff specifically informed Officer McIntire before he was ordered to get up and fell into a steal door, aggravating injury and excruciating pain.

(87) Officer McIntire was deliberate indifferent to my serious medical needs, and exhibited cruel and unusual punishment where she stated "McIntire contrary to declared emergency re-ordered

me to get the hell out of her chair" when [I] informed [Her] . . . I couldn't walk or stand maybe do to previous surgery. She nefariously stated, "she didn't give a damn and get your ass out of my chair . . ."

(88) Further, Her response to grievance" was [she] followed protocol in notifying medical of your [Plaintiff] emergency you received treatment in a timely manner . . ." Id attached Grievance Log# 12-2102.

(89) Here, Officer McIntire never stated she was not aware of my condition, was advised after I couldn't walk or that she did not have full knowledge. However, Officer McIntire concedes that I had an emergency, and she notified medical in a timely manner.

(90) Officer McIntire was deliberate indifferent to my serious medical needs, and exhibited cruel and unusual punishment where, the fact of the matter is Officer McIntire did not follow protocol, essentially where she did not notify medical of Plaintiff's emergency which interfered, delayed and prolonged treatment in a timely manner.

(91) Because Officer McIntire statement here that, she notified medical is directly contradicted by attached Grievance Log# 1211-405-006 where in pertinent part Sgt. Scott stated that ". . . he notified medical . . ." Thus, she failed to respond to a known medical problem.

(92)   It is clearly evident that not only was Officer McIntire, uncandid with the exhaustion of this administrative proceedings before resulting to judicial resolution. More importantly, she was deliberate indifferent to Plaintiff's known and serious medical needs, and exhibited cruel and unusual punishment. Because she interference and delay of treatment and caused unnecessary and wanton infliction of pain by the serious aggravation of Plaintiff's injury.

(93) Plaintiff was ordered, "to get the hell out of her chair" and when she was advised by Plaintiff that he could not walk or stand do to previous surgical procedural (of epidural injection). She became so grossly incompetent, inadequate, and excessively indifferent to be intolerable to the fundamental fairness of human decency.

(94) In regardless disregard of a substantial risk of harm, Officer McIntire stated after being informed of condition and previous surgery that "[she] didn't give a damn and to get my butt (ass) out of her chair." Id. Grievance Log# 2102.

(95) Dr. Heller maliciously and sadistically for the very purpose of causing harm has previously shown a nefarious attitude towards me, and surgery to elevate the painful symptoms I'm experiencing and repairing my lower spinal column. By stating, "He didn't think it would help me," as if his recommendation for epidural injections was a better solution. The fact of the matter is the epidural injections did not work; however, the pain became worse.

17

(96) Dr. Heller, was deliberately indifferent in that he has misdiagnosed any adequate treatment, has made numerous inadequate prescriptions for pain. He has made numerous insufficient prognosis for recommended treatments, and consults all in a effort to delay and prolong adequate treatment, which has caused paralyzing damage and put me in a wheelchair.

(97) Dr. Heller maliciously and sadistically for the very purpose of causing harm, denied plan for diagnosed injury and course of treatments recommended by Dr. Slutsky on 10-10-2011. The second phase of that treatment plan was, "Physical therapy prior to proceeding with surgery, which would be a large fusion."

(98) But it should be pointed out here that I absolutely disagreed with the delay and prolonging of surgery do to the critical stages of my condition, which has paralyzed me, and caused me to suffer the equivalent of human torture, which could only be deemed as cruel and unusual punishment.

(99) For Dr. Heller denied the remaining established course of treatments to remedy the condition and pain, is further an act that is maliciously and sadistically for the very purpose of causing more pain and permanent disability.

(100) Dr. Heller superseded Dr. Dauphin and it was then Dr. Heller's responsibility to honor, appropriately address, and submit consultation for established treatment plan, to imminently attempt to relieve chronic and severe pain, and remedy condition from deterioration.

(101) However, the first epidural injection wasn't conducted until approximately April 11, 2012, last conducted August 22, 2012. It took approximately 8 months for Dr. Heller to complete this inadequate prognosis, and misdiagnosed source of treatment that did not elevate pain or remedy condition, which was deliberately indifference, and cruel and unusual punishment.

(102) By Dr. Heller maliciously and sadistically for the very purpose of causing harm by intentionally prolonging and delaying of the proper treatment for diagnosed condition. Dr. Heller was deliberately indifferent to my serious medical need for surgery where he knew or should have known that, to leave this substantive injury unsubstantially and timely treated, there would be a potential risk of being paralyzed or permanent damage.

(103) Dr. Heller's caused unnecessary and wanton infliction of pain by his actions and/or inactions has caused me to suffer unnecessary and wanton infliction of pain which is three times worse than when treatment begun. Even moreso, the adverse affects have virtually paralyzed me from the waist down.

(104) These facts bring into question: The nationwide outbreak of fungal meningitis of the tainted epidural injections for back pains that was distributed by New England Compound Center, to various States to included Florida, to which a number of illness from various symptoms were recorded and actual deaths from this disease.

18

(114) Dr. Heller, to make matters even worse, acted maliciously and sadistically for the very purpose of causing me harm and permanent disability. He further advised me in front of inmates Albert McCall and Steven Bohannan , who were inside of the infirmary at the time, that "He was not going to provide me with any surgery at all," In clear deviation from the established treatment plan.

(115) Dr. Heller, further acted maliciously and sadistically for the very purpose of causing harm excruciating pain and permanent disability where he advise me that, "He would not be providing me with anymore treatments for my spine. There was nothing else he could do.

(116) Dr. Heller, continued to act maliciously and sadistically which was a shock to the conscious of an otherwise just society where he stated that, "I would just have to live with it as he does." Referring to condition, excruciating pain, and deadly infection.

(117) When I pointed out to Dr. Heller that his condition was in no way to be compared to mine he walked and stood perfectly fine, he wasn't in any pain, and hadn't taken any contaminated shots. On the other hand I can't walk or even stand for a considerable period.

(118) Dr. Heller responded maliciously and sadistically which was a shock to the conscious of an otherwise just society where he stated that, "If you don't like it write it up."

(119) He literally had me thrown out of the medical infirmary in a wheel chair, provided me with no treatment, medication for pain at all, and when I was escorted to the dorm he instructed them to take the wheelchair.

(120) I did write it up, by the submission of Grievance Log# 1210-405-031, which are referencing the above mention facts. However, the response on 10-9-2012 was just as malicious and sadistic for the very purpose of causing harm where they did nothing, took no action. This grievance was totally ignored. Exhibit "I" (Log #1210-405-031, 12-6-34642). He knew of complaint.

(121) I further submitted Grievance Log# 1210-405-048 on 10-11-2012 again they continued to act maliciously and sadistically for the very purpose of causing harm, which here was a shock to an otherwise just society where, Ms. Finisse totally disregarded Dr. Heller's excessive risk to my health, safety and life. As CDC was never even contacted. He again did nothing. Exhibit "J" Log #1210-405-048, 12-6-34640).

(122) But here, Dr. Heller was again deliberately indifferent causing unnecessary and wanton infliction of pain where, on 10-8-2012, after being previously thrown out of the infirmary, I clasped almost hitting the medal railing of my bed, was assisted into bed but couldn't get out. Had to be taken back to the infirmary and this time admitted. Office Jenkins, and Sgt. Lewis, allowed me to stay seated and timely declared medical emergency, unlike Office McIntire.

(123) Dr. Heller, again never conducted any examinations, tests, or, ordered that any blood be taken. As a matter of fact I never even sought Dr. Heller, or received any treatment from him

until 10-17-2012, do to his maliciously and sadistically display of unethical behavior which has caused harm, and excruciating, chronic and severe pain.

(124) The only way Dr. Heller came and seen me was because I received a letter from Dr. Lins on 10-16-2012, but dated 10-5-2012, the guise of that letter as it related to me was, "I am writing in response to the recent national outbreak of fungal meningitis after lumbar spine injections . . . as a safety precaution, if you develop headaches, worsen spine pain or any unusual symptoms, it is safe to report to the nearest emergency room for evaluation."

(125) These are the three symptoms that I am still experiencing out of the eight listed, and have never been tested. I explained this to Ms. Finisse, and she reviewed letter and contacted Dr. Heller to see me. He never came on his own and he admitted me upon this declared emergency, after throwing me out of medical 4 days earlier to which I suffered every day.

(126) Ms. Finisse, and Dr. Heller acted maliciously and sadistically for the very purpose of causing harm, where neither official as a safety precaution contacted the emergency room, CDC, or the Palm Beach Health Department when they themselves had taken no tests. Yet, the symptom persists, and the pain is unbearable.

(127) On 10-16-2012, I responded back to Dr. Lins, specialist who gave me the shots and informed him I was exhibiting symptoms Ms. Finisse, and Dr. Heller would not test me I was in excruciating pain I needed to be tested and helped.

(128) Ms. Finisse and Dr. Heller acted maliciously and sadistically for the very purpose of causing harm where they made me take all three epidural injections during contaminated period, and did not assure me that I wasn't infected, as my lower body seems paralyzed.

(129) These concerns were strongly expressed in Grievance Log# 1210-405-066 on 10-16-2012 directly to the Warden, titled, "Emergency Medical Exhibit "K" (Log # 1210-405-066, 12-6-35831-non-Responsive within 30 days requirement ).

(130) Ms. Finisse and Dr. Heller, also in response acted maliciously and sadistically for the very purpose causing harm, permanent disability or death where they determined without any laboratory work, blood testing, current x-rays or MRI that my condition was not an emergency. There was absolutely no substantial basis for this naferious and egregious determination other than retaliation, as a result of oral complaint on 10-4-2012, written grievance on 10-7-2012, 10-11-2012, and 10-16-2012.

(131) Ms. Finisse and Dr. Heller retaliated against me for the filing of Grievance Log# 1210-405-031, on 10-7-2012 against then, where they denied me any laboratory work, blood testing for deadly infection of fungal meningitis. Additional, x-rays or MRI to reaffirm excruciating and paralyzing pain for purpose of surgery, which they denied. They then determined unsubstantially it was not an emergency.

(132) However, contrary to this determination, Ms. Finisse and Dr. Heller had me admitted on 10-8-2012, into the medical infirmary as a result of a declared medical emergency for pain and where I was been house for approximately a month. They further retaliated against me for filing Griev. #1210-405-048 prolonging of treatment.

(133) Ms. Finisse and Dr. Heller retaliated against me for the filing of Grievance Log# 1210-405-066, on 10-16-2012, against him where they further after the third consecutive grievance never responded to excruciating pain. Essentially where I point out that they, "cancelled and denied . . . spinal procedures to be conducted in an attempt to keep me in the same painful condition I'm in . . ." which was also malicious and sadistic.

(134) Ms. Finisse and Dr. Heller, retaliated against me further where "[They] denied surgery and physical therapy which was critical to being relieved of chronic severe pain. Essentially where, no medication he has prescribed out of numerous has relieved <u>any</u> pain over the period of his tenure as my physician.

(135) Ms. Finisse and Dr. Heller was deliberately indifferent to my serious medical need for physical therapy, "which is unusually an important part of treatment, given in conjunction with shot." Says Dr. Timothy Deer, member of the American Academy of pain . . .

(136) The period for physical therapy to be effective has passed do to the maliciously and sadistically actions of Ms. Finisse and Dr. Heller, for the very purpose of causing harm, who ordered no physical therapy in conjunction with shots

(137) Ms. Finisse and Dr. Heller, retaliated against me where initially the long delays and prolonging of treatment contributed extremely to my deterioration condition. But when I started initiating complaints they discontinued the previously established treatment plan, of which he does not respond, to in his respond to grievance.

(138) In denial of grievance, Dr. Heller, acted maliciously and sadistically for the very purpose of causing harm where he did not specify the medication that led to infection, which has recently been discovered to have allegedly been (NECC) methylpredac (PF) 800mg/mc. A discovery that was not conclusive, although 17,700 single dose vials were recalled.

(139) Ms. Finisse and Dr. Heller acted maliciously and sadistically for the very purpose of causing harm where, the only medications recalled were from (NECC) Framingham facility, there were <u>three</u> recalled lots of steroids, says J. Todd Weber a doctor with the CDC's division of healthcare quality promotion.

(140) Dr. Weber, warned that patient and doctor's will need to be vigilant for at least several months following the injections. He added that the first person who received an injection . . . began to develop meningitis in <u>the ankle</u>. Which I've complained of repetitively.

(141) On October 5, 2012 when Dr. Lins forwarded letter there were 45 case of infection, and 5 deaths. On October 11, 2012, there were 137 illnesses reported, and 10 deaths. One day later, 10-12-2012, 170 illnesses and 14 deaths. Apparently, Dr. Weber's warning was correct, need to be vigilant. And on 11-14-2012, there were 451 illnesses and 32 deaths reported. . . . As of March 11, 2013, there are 670 illnesses and 50 deaths.

(142) Ms. Finisse and Dr. Heller acted maliciously and sadistically for the very purpose of causing harm which is shocking to the conscious of otherwise a just society where, he conclusively determined based upon insufficient facts that there is no emergency and denied me any treatment for deadly infection or excruciating and extensive pain , in retaliation for filing grievances.

(143) On 11-29-2012, Dr. Heller, denied my grievance based on the retaliation. Moreover, Dr. Heller further ignored my complaint of excruciating pain and failed to repair my injury, again. Exhibit "L" (Log #1211-405-407).

(144) The CEO Barry Caden of New England compounding Center (NECC). Whereas here, this corporations is being sued regarding, "the nationwide outbreak of the deadly fungal meningitis disease," from contaminated medication used to conduct the epidural steroid injections procedures for serious back pains. During the period between July, through September 2012.

(145) This corporation with its principle place of business in Framingham, Massachusetts, and unincorporated in the State of Florida, circumvented inspectors of The Food and Drug Administrative (FDA). They distributed their tainted and contaminated medication all over the United States. The results of which was a nationwide disease.

(146) Reports from the U.S.A. Today and World News stated there were approximately 670 illness and 50 deaths. Plaintiff received epidural injections approximately on April 11, 2012, August 1, 2012, and the last and must fatal on August 22, 2012.

(147) These dates are evident from Plaintiff's inmate medical files during the exact period of contaminated months of July thur September 2012. These contaminated injections left Plaintiff in excruciating pain 3× worse, disable and confine to a wheel chair. This issue, however, is a product liability and/or negligent State tort claim coupled with severity of injury, the interference, delay, prolonging and denial of adequate treatment.

(148) Plaintiff has filed claim against NECC, Corporation in the United States District Court of Florida. because the opposing party principle place of business is diversely in Massachusetts.

(149) Further, the matter of controversy exceeds the sum or value of 75,000.00 exclusive of interest and cost. More specifically, the Plaintiff in the instant case has requested damages in the amount of $250,000.00 compensatory damages alone, and $750,000.00 punitive, totaling $1,000,000.00 in damages.

(150) This most Honorable Court could retain diversity jurisdiction over all possible state law claims and liberally accept Plaintiff allegations in complaint

23

(151) New England Compounding Center was negligent where, it distributed epidural steroids contaminated with fungal meningitis. Which I was injected with approximately on April 11, 2012, August 1, 2012 and August 22, 2012 between the effected months of contamination. Distributing 17,700 vials to 23 States.

(152) New England Compounding Center was negligent, which caused unnecessary and wanton infliction of pain. They caused me to suffer the various symptoms, headaches, extremely worsen by the spinal pains, excruciating leg and ankle pains, which caused me to feel severe burning in my body from my ankle to my knee.

(153) New England Compounding Center was negligent, which caused unnecessary and wanton infliction of pain where the epidural steroid injection in my spine has lead to meningitis.

(154) New England Compounding Center was negligent, which caused unnecessary and wanton infliction of pain where steroid injections did not decrease inflammation around the irritated nerve roots. But instead extremely increase pain to that of paralyzing, and crippling results.

(155) New England Compounding Center was negligent, which caused unnecessary and wanton infliction of pain where  the entire left side of my spine became inflamed. Most extreme where shots were injected in L5. S1, which also generated around both sides of my lower body, legs and ankles.

(156) New England Compounding Center was negligent, which caused unnecessary and wanton infliction of pain where the contaminated steroid injections has virtually paralyzed me. I can't walk, stand, or move about without the assistance of a temporary aide.

(157) New England Compounding Center was negligent, which caused unnecessary and wanton infliction of pain where contaminated injections will inadvertently do to excruciating pain and rate of deterioration will cause me to be currently temporary disabled.

(158) New England Compounding Center was negligent, which caused unnecessary and wanton infliction of pain where do to contaminated injections which had me in so much pain immediately after the last shot and follow up on August 31, 2012. I reported excruciating pain to medical director on September 5, 2012.

(159) New England Compounding Center was negligent, which caused unnecessary and wanton infliction of pain where contaminated injections pains became more intense and so extreme I again reported chronic aid severe pains to the clinician on September 28, 2012.

(160) New England Compounding Center was negligent for the very purpose of causing harm where it violated state and federal rules by manufacturing bulk quantities of drugs without underlying prescriptions which allegedly caused contamination and my actual clasped on 10-4-2012 from a sudden lower body shut down.

24

(161) New England Compounding Center was negligent for the very purpose of causing harm. It violated state and federal rules by manufacturing bulk quantities of drugs without underlying prescriptions, which allegedly caused contamination and my I total clasped on 10-8-2012 from a complete lower body shut down, with virtually crippling and paralyzing effects, which put me in a wheelchair.

(162) New England Compounding Center, was negligent for the very purpose of causing harm where after I received deadly infection of which I'm currently disabled, NECC, recalled three lots of steroid to include Methylpred AC (PF) 80mg/ml., lots were contaminated. Whatever the determination may be the medication I received during the contaminated period of July-September 2012 were contaminated.

(167) New England Compounding Center was negligent for the very purpose of causing harm where, NECC has crossed the manufacturing threshold and its operations failed to meet the tough standards set by the food and drug administration (FDA) for commercial manufactures. This has placed me at a substantial risk of death or being permanently disabled.

(168) New England Compounding Center acted maliciously and sadistically for the very purpose of causing harm where. NECC is operating under state regulated pharmacy boards, while doing commercial drugs manufacturing and avoiding FDA, tough standards. A standard that should have applied federally when that drugs left Mass., where no one was reportedly effected. However, do to the profit associated with it I'm substantially effected mentally and physically in Florida.

## VI.   STATEMENT OF CLAIM:

State as briefly as possible what rights under the constitution, laws, or treaties of the United States you claim have been violated. Be specific. Number each separate claim, and relate each claim to the facts in the complaint. If the claims are not related to the same basic incident or issue, they must be addressed in a separate civil rights complaint.

### Under The Color of State Law:

(1) First constitutional amendment violation for retaliation for the filing of grievance and lawsuit.

(2) Eighth constitutional amendment violation for deliberate indifference, cruel and unusual punishment for deliberate delay and prolonging of surgery, and excruciating pain and suffering for a long period of time, which could only be deemed as human torture.

### State Tort Law Claim:

(1) Against New England Compounding Center for product liability, and negligent.

(2) Damages in the amount of $1,000.000.00

## VII.    RELIEF REQUESTED:

State briefly what relief you seek from this court.  Do not make any legal arguments or cite any cases.  You may, if you wish, cite statutes which authorize the relief requested, but need not do so.

**Against GEO Incorporated Correctional Officials:**

1. Compensatory damages of $250.000 per Defendant.

2. Punitive damages of $1,000.000.00 per Defendant.

3. Preliminary injunction issued for imminent surgery, which had already been previously established, but is now being denied when my condition is at such a critical stage, and when I am constantly in excruciating pain.

4. Cost of incarceration, litigation of this complaint and all other expenses.

## VIII.    I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING STATEMENTS OF FACT, INCLUDING ALL CONTINUATION PAGES, ARE TRUE AND CORRECT.

Signed this **22**nd day of **March**, 2013.

Darrel Cummings pro se
DC# 088532
South Bay Corr. Fac.
P. O. Box 7171
South Bay, FL 33493

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

DARREL CUMMINGS
Inmate # 088532

Vs.

CASE NUMBER: _____
(To be assigned by Clerk)

NEW ENGLAND COMPOUNDING CENTER, CEO., BARRY CADEN,
GEO GROUP INC.,TOM LEVINS, WARDEN,
MS. N. FINNISSE, MSM, HAS,
DR. J. DAUPHIN, D.O.,
DR. JULES HELLER, M.D.,
DR. ROBERT LINS, M.D.,
OFFICER MCINTIRE, CO1,
     Defendant(s)
_____/

## ATTACHMENT OF GRIEVANCES

Grievance are in Sequence of numbered paragraphs and claims as follows:

A. Grievance Log# 11-2773

B. Grievance Log# 11-3042

C. Grievance Log# 1112-405-042

D. Grievance Log# 12-6-02095

E. Grievance Log# 11-1088

F. Grievance Log# 12-6-01054

G. Grievance Log# 12-0293

H. Grievance Log# 12-2102, 1211-405-006

I. Grievance Log# 1210-405-031, 12-6-34642

J. Grievance Log# 1210-405-048, 12-6-34640

K. Grievance Log# 1210-405-066, 12-6-35831(Non-Responsive within 30 days requirement.

L. Grievance Log# 1211-405-047

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

DARREL CUMMINGS
Inmate # 088532

Vs.                                    CASE NUMBER: 9:12-CV-81413WPD

NEW ENGLAND COMPOUNDING CENTER, CEO., BARRY CADEN,
GEO GROUP INC., MS. N. FINNISSE, MSM, HAS,
DR. J. DAUPHIN, D.O.,
DR. JULES HELLER, M.D.,
OFFICER MCINTIRE, CO1,
        Defendant(s)
_____/

## **SUPPLEMENTAL ATTACHMENT OF GRIEVANCES**

Supplemental Grievance are in Sequence of numbered paragraphs to Initial
Attachments and claims as follows:

**N. Grievance Log# 12-6-40195**

Darrell Cummings DC# 088532
South Bay Corr. Facility
P. O. Box 7171
South Bay, FL 33493

Case 9:13-md-02419-RWZ Document 1244-5 Filed 07/03/14 Page 27 of 33

# EXHIBIT - "N"

MAILED/FILED
WITH AGENCY CLERK

JAN 10 2013

Department of Corrections
Bureau of Inmate Grievance Appeals

**PART B - RESPONSE**

| CUMMINGS, DARREL | 088532 | 12-6-40195 | SOUTH BAY C.F. | B2103L |
|---|---|---|---|---|
| INMATE | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your administrative appeal has been reviewed and evaluated.  The response that you received at the institutional level has been reviewed and is found to appropriately address the concerns that you raised at the institutional level as well as the Central Office level.

Furthermore, the institution was contacted and B. Williams advised the Colonel misunderstood the word "hell" for "fell" and that is why he answered that way.

According to Office McIntyre she did tell you to get out of the chair, without using profanity, because she was not aware of your condition at the time or that another officer had advised you to sit in the chair.  However, when you advised her of your condition after you attempted to get up and walk and could not she provided you another chair.  She did not treat you with deliberate indifference; she did not have full knowledge of the situation.

Your administrative appeal is denied.

E. Stine

_____
SIGNATURE AND TYPED OR PRINTED NAME
OF EMPLOYEE RESPONDING

E. Stine
_____
SIGNATURE OF WARDEN, ASST. WARDEN, OR
SECRETARY'S REPRESENTATIVE

1/7/13
_____
DATE

COPY DISTRIBUTION -INSTITUTION / FACILITY
(2 Copies) Inmate
(1 Copy) Inmate's File
(1 Copy) Retained by Official Responding

COPY DISTRIBUTION - CENTRAL OFFICE
(1 Copy) Inmate
(1 Copy) Inmate's File - Inst./Facility
(1 Copy) C.O. Inmate File
(1 Copy) Retained by Official Responding

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**

**RECEIVED**

DEC 17 2012

**REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL**

DEPARTMENT OF CORRECTIONS
INMATE GRIEVANCES

O: ☐ Warden   ☐ Assistant Warden   ☑ Secretary, Florida Department of

rom: _Cummings_  _Dabael_   088532   _SBCF_
Last   First   Middle Initial   Number   Institution

Part A – Inmate Grievance   12-6-40195

CONTRARY TO P. CARDENAS, CHIEF OF SECURITY RESPONSE AND WARDEN
LEVINS, THAT SGT. SCOTT WAS INTERVIEWED AND STATED THAT ALL
MY ALLEGATIONS ARE UNTRUE...

WHAT IS CLEARLY APPARENT IS THAT SGT. SCOTT'S RESPONSE
CONTRADICTS OFFICER MCINTIRE STATEMENT TAKEN ON 10/20/12,
IN GRIEVANCE LOG # 12-2102, OFFICER MCINTIRE BY HER OWN
STATEMENT SAID, "[SHE] NOTIFIED MEDICAL OF[M]EMERGENCY..."
SGT. SCOTT, ON THE OTHER HAND STATED THAT, "IMMEDIATELY
UPON BEING NOTIFIED BY OFFICER MCINTIRE, HE NOTIFIED
MEDICAL..."

FURTHER I NEVER STATED "I FELL OUT OF CHAIR." I SPECIFICALLY
STATED SHE RE-ORDERED ME TO GET THE HELL OUT OF HER CHAIR."
THIS WAS DONE AFTER I DECLARED MEDICAL EMERGENCY TO
SGT. SCOTT, I FELL INTO CHAIR AND HE THEN NOTIFIED MEDICAL
OF EMERGENCY. SGT. SCOTT ORDERED ME TO STAY IN CHAIR.
WHEN I INFORMED OFC. MCINTIRE OF THIS ORDER SHE AGAIN STATED
"SHE DIDN'T GIVE A DAMN AND TO GET MY BUTT(ASS) OUT OF HER
CHAIR," AND I ALMOST FELL TO THE FLOOR BUT RATHER FELL
INTO THE DOOR AGGRAVATING MY INJURY AND CAUSING ME
EXCRUCIATING PAIN.

ITS OBVIOUS THAT WARDEN LEVINS, AND COL. CARDENAS ARE
IGNORING THE CLEAR FACTS OF DELIBERATE INDIFFERENCE OF OFFICERS
MCINTIRE, WHICH WERE WANTON AND UNNECESSARY.
ACTS OF WHICH WARRANTS ADMINISTRATIVE REMEDY AT THIS LEVEL.

12/10/12   088532
DATE   SIGNATURE OF GRIEVANT AND D.C. #

INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:

STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS

# INMATE REQUEST

(Instructions on Back)

Mail Number: _____
Team Number: _____
Institution: S.B.C.F

12 2109

**RECEIVED**

OCT 24 2012

GRIEVANCE CLERK
12-1-12

TO:
(Check One)

[✓] Warden
[ ] Asst. Warden
[ ] Classification
[ ] Security
[ ] Medical
[ ] Dental
[ ] Other

| FROM: | Inmate Name | DC Number | Quarters | Job Assignment | Date |
|---|---|---|---|---|---|
| | Cummings, Darrel | 068532 | G2 102 L | House man | 10-1-12 |

**REQUEST** Informal Grievance                                    Pursuant 33-103.015(4)

Ofc. McIntire, at 6:00am at approximate 8:15a.m.* After a Declared Medical Emergency* to Dorm Sgt. who advised me to sit down in chair before I fell from chronic and severe back and leg pains. Ofc. McIntire, contrary to declare emergency and Sgt. orders very belligerantly re-ordered me to,"get the hell out of "her" chair." When informed that the Sgt. ordered me to sit because I could't walk or stand maybe do to previous surgery, she then viciously stated,"she didn't give a damn, and to get my black out of her chair." So I struggled to get out of the chair in chronic pain, unassisted by her, and with her hands on her hips I almost fell! This officers behavior was deliberate indifference to my serious medical need and a danger to my health and safety. She put me at substantial risk of further injury unneccesarily, and is a risk to security, Normal Care Custody and Civil Control. Lt. G. Buss, Approved the writing of this grievance.

All requests will be handled in one of the following ways:  1) Written Information or  2) Personal Interview. All informal grievances will be responded to in writing.                    _Darrel Cummings_ # 068532

___

## DO NOT WRITE BELOW THIS LINE

**RESPONSE**                                        DATE RECEIVED: _____

Officer McIntyre was interviewed and by her statement. Officer McIntyre followed protocol in notifying medical of your emergency. You recieved treatment in a timely manner. Thank you for using DC forms.

The following pertains to informal grievances only:

Based on the above information, your grievance is _____ (Returned, Denied, or Approved). If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.

Official (Signature): _____ Lieutenant | Date: Oct 26 2012

Distribution:    White    -Returned to Inmate              Pink  -Retained by official responding, or if the response is to an
                 Canary   -Returned to Inmate                     informal grievance then forward to be placed in inmate's file.

DC6-236 (Revised 8-00)

**PART B - RESPONSE**

| CUMMINGS, DARREL | 088532 | 1211-405-006 | SOUTH BAY C.F. | B2103L |
|---|---|---|---|---|
| INMATE | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

YOUR REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL HAS BEEN RECEIVED AND EVALUATED.

YOUR COMPLAINT IS THAT OFFICER MCINTYRE WAS DELIBERATELY INDIFFERENT TO YOUR SERUIOUS MEDICAL NEEDS WHICH PUT YOU AT A SUBSTANTIAL RISK OF FURTHER INJURY.

SGT. SCOTT WAS INTERVIEWED AND STATED THAT ALL YOUR ALLEGATIONS ARE UNTRUE; THAT IMMEDIATELY UPON BEING NOTIFIED BY OFFICER MCINTYRE, HE NOTIFIED MEDICAL AND MEDICAL WAS DISPATCHED. HE FURTHER STATED THAT YOU NEVER FELL OFF THE CHAIR AND THAT OFFICER MCINTYRE WAS VERY PROFESSIONAL DURING THE ENTIRE INCIDENT.

BASED ON THE ABOVE INFORMATION, YOUR GRIEVANCE IS DENIED.

YOU MAY OBTAIN FURTHER ADMINISTRATIVE REVIEW OF YOUR COMPLAINT BY OBTAINING FORM DC1-303, REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL, COMPLETING THE FORM, PROVIDING ATTACHMENTS AS REQUIRED BY 33-103.007(3)(A) AND (B), F.A.C., AND FORWARDING YOUR COMPLAINT TO THE BUREAU OF POLICY MANAGEMENT AND INMATE APPEALS, 501 SOUTH CALHOUN STREET, TALLAHASSEE, FLORIDA 32399-2500.

P. Cardenas, Chief of Security

| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | 12/6/2012 /DATE |
|---|---|---|

COPY DISTRIBUTION -INSTITUTION / FACILITY
(2 Copies) Inmate
(1 Copy) Inmate's File
(1 Copy) Retained by Official Responding

COPY DISTRIBUTION - CENTRAL OFFICE
(1 Copy) Inmate
(1 Copy) Inmate's File - Inst./Facility
(1 Copy) C.O. Inmate File
(1 Copy) Retained by Official Responding

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**

RECEIVED

NOV 01 2012

GRIEVANCE COORDINATOR

**REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL**

1211-405-886
Col.

TO: ☑ Warden ☐ Assistant Warden ☐ Secretary, Florida Department of Corrections

From: _Cummings Darrel_     _088532_     _S.B.C.F_
Last   First   Middle Initial     Number     Institution

---

Part A – Inmate Grievance

I DISAGREE WITH RESPONSE IN REGARDS TO OFFICER MCINTIRE CONDUCT IN GRIEVANCE LOG # 12-2102, BASICLY BECAUSE IT IS ABSOLUTELY UNTRUE, WHERE IT IS STATED THAT "... BY HER STATEMENT, OFFICER MCINTIRE FOLLOWED PROTOCOL IN NOTIFYING MEDICAL OF YOUR EMERGENCY YOU RECEIVED TREATMENT IN A TIMELY MANNER..." WHEN CERTAIN THINGS OR STATEMENT CAN BE PROVEN LIES, BECAUSE OF OTHER OFFICIAL'S INVOLVEMENT, ALL EMERGENCY SITUATIONS ARE AS WELL DOCUMENTED UPON THE INITIAL DISPATCH WITH CENTRAL CONTROL, AND THE MEDICAL DEPT., WHICH BY LAW MUST BE RECORDED. AND THOSE RECORDS ARE GOING TO SHOW THAT THE G-DORMARY SERGEANT (SCOTT), PERSONALLY NOTIFIED MEDICAL OF MY EMERGENCY, AND THAT I WAS SPECIFICALLY TAKEN TO MEDICAL BY NURSE JONES, NURSE BENNETT AND NURSE TRIMBLE ALL OF WHICH WILL CONFIRM THAT AT NO TIME ON 10-4-12 AT APPROXIMATELY 8:45AM, DID OFFICER MCINTIRE NOTIFY THE MEDICAL DEPARTMENT IN THE CASE OF MY EMERGENCY. IT IS A LIE THAT I WILL NOT TOLERATE BY THE WAY SHE TREATED ME LIKE AN ANIMAL WHEN I WAS SUFFERING AND IS CURRENTLY STILL SUFFER INSIDE OF THE MEDICAL INFIRMARY. THIS GRIEVANCE IS BEING SUBMITTED TO EXHAUST ADMINISTRATIVE REMEDY BECAUSE OFFICER MCINTIRE WAS DELIBERATELY INDIFFERENT TO MY SERIOUS MEDICAL NEEDS WHICH CAUSED ME UNNECESSARY AND WANTON INFLICTION OF PAIN, EXCRUCIATING WHICH CAUSED CLAPSE. SHE WAS FURTHER MALICIOUSLY AND SADISTICALLY ACTING FOR THE VERY PURPOSE OF CAUSING MORE HARM WHICH PUT ME AT A SUBSTANTIAL RISK OF FURTHER INJURY. SEEK ADMINISTRATIVE REMEDY A.S.A.P. TO PURSUE CIVIL LITIGATIONS.

_10-29-12_
DATE

_____
SIGNATURE OF GRIEVANT AND D.C. #

**BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:** _1_
_#_     Signature

INSTRUCTIONS

Case 9:12-cv-81413-RWZ Document 1244-5 Filed 07/03/14 Page 33 of 33

# United States District Court
## Southern District of Florida

Case Number: *12 CV 81413 WPD.*

# SUPPLEMENTAL ATTACHMENT(S)

Please refer to the supplemental paper "court file" in the division where the Judge is chambered. These attachments must <u>not</u> be placed in the "chron file".

☐ **NOT SCANNED**

    ☐ Due to Poor Quality

    ☐ Bound Extradition Papers

    ☐ Photographs

    ☐ Surety Bond (Original <u>or</u> Letter of Understanding)

    ☐ CD or DVD (Court Order <u>or</u> Trial Purposes only)

    ☐ Other:_____

☑ **SCANNED**

    ☑ But Poor Quality *(Exhibits).*

    ☐ Habeas Cases (State Court Record/Transcript)

Date: *3/25/2013*