# EXHIBIT A

```
 1                  UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS
 2


 3


 4   IN RE:  NEW ENGLAND            )  MDL NO. 13-02419-FDS
     COMPOUNDING                    )
 5   PHARMACY CASES LITIGATION      )
                                    )
 6                                  )
                                    )
 7                                  )
                                    )
 8
                BEFORE:  THE HONORABLE F. DENNIS SAYLOR, IV
 9


10


11
                         STATUS CONFERENCE
12


13


14


15       John Joseph Moakley United States Courthouse
                       Courtroom No. 2
16                    One Courthouse Way
                       Boston, MA 02210
17


18                    January 10, 2014
                         1:30 p.m.
19


20


21


22


23           Valerie A. O'Hara, FCRR, RPR
                  Official Court Reporter
24       John Joseph Moakley United States Courthouse
               One Courthouse Way, Room 3204
25                    Boston, MA 02210
             E-mail: vaohara@gmail.com
```

```
 1   APPEARANCES:

 2   For The Plaintiffs:

 3      Hagens, Berman, Sobol, Shapiro LLP, by THOMAS M.
     SOBOL, ESQ. and KRISTEN JOHNSON PARKER, ATTORNEY,
 4   55 Cambridge Parkway, Suite 301, Cambridge,
     Massachusetts  02142;
 5
        Janet, Jenner & Suggs, LLC, KIMBERLY A. DOUGHERTY,
 6   ATTORNEY, 75 Arlington Street, Suite 500, Boston,
     Massachusetts  02116;
 7
        Crandall & Katt, by PATRICK THOMAS FENNELL, ESQ.,
 8   366 Elm Avenue, SW, Roanoke, VA 24016;

 9      Branstetter, Stranch & Jennings, PLLC, by BEN GASTEL,
     ESQ., ESQ., 227 Second Avenue North, Nashville,
10   Tennessee 37201-1631;

11      Law Offices of Mark Zamora and Associates,
     MARK ZAMORA, ESQ., 5 Concourse Parkway, Suite 2350
12   Atlanta, Georgia  30328

13
     FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS:
14
        Brown Rudnick, by DAVID J. MOLTON, ESQ., Seven Times
15   Square, New York, New York 10036;

16      Brown Rudnick, by KIERSTEN A. TAYLOR, ATTORNEY,
     One Financial Center, Boston, Massachusetts  02111;
17
        Harris Beach PLLC, by FREDERICK H. FERN, ESQ.,
18   100 Wall Street, New York, New York  10005;

19      Tucker & Ellis LLP, by MATTHEW P. MORIARTY, ESQ.,
     1150 Huntington Building, 925 Euclid Avenue, Cleveland,
20   Ohio 44115-1414;

21      Michaels, Ward & Rabinovitz LLP, by DAN RABINOVITZ,
     ESQ., One Beacon Street, Boston, Massachusetts 02108;
22
        Todd & Weld LLP, by CHRISTOPHER R. O'HARA, ESQ. and
23   CORRINA L. HALE, ATTORNEY, 28 State Street, 31st Floor,
     Boston, Massachusetts 02109;
24
        Ulmer & Berne LLP, by JOSHUA A. KLARFELD, ESQ.,
25   1660 West 2nd Street, Suite 1100, Cleveland, OH
     44113-1448;
```

```
 1   For the Defendants(CONTINUED):

 2       Donoghue, Barrett & Singal, P.C., by MICHELLE R.
     PEIRCE, ATTORNEY, ESQ., One Beacon Street, Boston,
 3   Massachusetts  02108-3106;

 4       Donovan & Hatem, LLP, by KRISTEN R. RAGOSTA, ESQ.,
     Two Seaport Lane, Boston, Massachusetts  02210;
 5
         Nutter, McClennen & Fish LLP, by SARAH P. KELLY,
 6   ATTORNEY, World Trade Center West, 155 Seaport
     Boulevard, Boston, Massachusetts  02210-2604;
 7
         Fulbright & Jaworski, LLP, by MARCY H. GREER,
 8   ATTORNEY and YVONNE K. PUIG, ATTORNEY, 98 San Jacinto
     Blvd, Suite 1100, Austin, Texas 78701;
 9
         Law Offices of Jay J. Blumberg, ESQ., by JAY J.
10   BLUMBERG, ESQ., 158 Delaware Street, P.O. Box 68,
     Woodbury, New Jersey  08096;
11
         Curley & Curley, P.C., by LISABETH RYAN KUNDERT,
12   ATTORNEY, 27 School Street, Boston, Massachusetts
     02108;
13
         Sloane and Walsh, ROBERT A. GAYNOR, ESQ.,
14   Three Center Plaza, Boston, Massachusetts
     02108;
15
     FOR PAUL D. MOORE, IN HIS CAPACITY AS CHAPTER 11 TRUSTEE
16   OF NECP, INC.:

17       Duane Morris LLP by MICHAEL R. GOTTFRIED,
     ESQ., 100 High Street, Suite 2400, Boston, Massachusetts
18   02110-1724;

19
     VIA PHONE FOR THE PLAINTIFFS:
20
     Melvin B. Wright
21   David Gibson
     John Fishwick
22   Greg Lyons
     James Stephen King
23   Mary Gidaro
     Matthew Barsenas
24   Frank Federico
     Michael Coren
25   Harry Roth
     Will Riley
```

```
 1   VIA PHONE FOR THE PLAINTIFFS (CONTINUED):

 2   Terry Dawes
     Robert Briley
 3   Edward (Ned) Mulligan
     Karren Schaeffer
 4   Deborah Gresco-Blackburn
     Chris Cain
 5   Laura Pittner
     Jonathan Griffith
 6   Sharon Houston
     Leslie Muse
 7   Jonathan Krohnfeldt
     Sean Roth
 8   Mark Dancer
     Dan Myers
 9   Ann Mandt
     Steven Resnick
10   Alex Apostolou
     Patrick Montoya
11   Frederick (Rick) Ellis
     Nolan Nicely
12   S. James Boumil
     Robert Randall
13   Brent Brown
     Amanda Williams
14   George Nolan
     Evan Baker
15   Lauren Ellerman
     Nicole Kreklau
16   Daniel Clayton
     Lisa Esser-Weidenfeller
17   Scott Kaminski
     Kristi Osterday
18   Douglas Mulvaney`
     Ed Jazlowiecki
19   Stephen W. Mullins
     Bill Leader
20   Daniel Frith
     Bryan Bleichner
21   Rebbecca Blair
     Elliot Olsen
22   Mark Abramowitz
     Stephanie Arndt
23   Robert Young
     Bridget Stratton
24   J. Kyle Roby
     Mark Chalos
25   Ted Corvey
     Nolan Nicely
```

```
 1   VIA PHONE FOR THE PLAINTIFFS (CONTINUED):

 2   Steffani Cochran
     Rick Morgan
 3   Anthony Agudelo
     Steffani Cochran
 4
     VIA PHONE FOR THE DEFENDANTS:
 5
     Stephen A. Grossman
 6   Nichole Dorman
     Jason D Lewis
 7   Joseph R. Lang
     Chris J. Tardio
 8   Matthew Cline

 9   ALSO APPEARING VIA TELEPHONE:

10   Jacqueline Palank, Wall Street Journal

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
             1   On November 13 last year, Judge Boal entered a discovery
             2   order requiring all subpoena recipients to produce
             3   documents pursuant to the PSC subpoena if they have a
             4   patient who has sued them or a patient who has a case
             5   pending in the MDL or given notice of a claim against a
             6   clinic in the NECC litigation.
             7              So far, 21 clinics have deposited documents
             8   into the PSC repository at U.S. Legal Support.  That
             9   includes approximately 1300 documents and approximately
02:15PM     10   7,000 pages.  There are 15, approximately 15 clinics
            11   that have taken the position that they do not have any
            12   such patients and are not required to produce any
            13   documents except for a limited request, which Judge Boal
            14   ruled applied to everybody.
            15              Interestingly, some of the clinics who have
            16   received notice of a claim, a standard letter saying we
            17   represent the following individuals who have claims
            18   against your healthcare provider in the NECC litigation,
            19   some of the clinics who have received those notices
02:15PM     20   still feel that they don't have to respond to the
            21   subpoena because the notice has not been properly given
            22   under certain aspects of state law.
            23              The PSC's position is that Judge Boal used
            24   the term "notice of a claim" in its most commonly
            25   understood form and didn't say anything about whether
```

```
           1   that notice has to be done in compliance with the
           2   particular requirements of one state or another.
           3              So the PSC is conducting meet and confers
           4   and will be also preparing to file a motion to compel
           5   with respect to one such clinic here very shortly.
           6              THE COURT:  All right.  Anyone else want to
           7   be heard on this topic?  That's item Number 6.
           8              Item Number 7, matters referred to by
           9   Judge Boal.  Before we get into that, there are a couple
02:16PM   10   of dangling issues raised by the St. Thomas entities.
          11   Back at the end of November, St. Thomas had as part of
          12   their -- a number of motions that it filed to
          13   reconsider, my MDL order and so forth, there was a
          14   motion to amend the protective order.
          15              I have finally resolved that.  I had hoped
          16   to have it filed before today so that you could see it.
          17   I'm technically granting it in part and denying it in
          18   part.  I'm going to make some minor tweaks to that
          19   protective order, but most of the issues raised by
02:17PM   20   St. Thomas, I think, are either covered in the order or
          21   I think it's not necessary to amend the order to
          22   address.  That we'll get out shortly, hopefully even
          23   today.
          24              Part of what St. Thomas raised was also a
          25   motion to stay discovery pending a discovery plan.  I do
```

```
         1  want to take this up at some point today.  What I said
         2  about having a discovery plan for the affiliated
         3  defendants obviously applies to the unaffiliated
         4  defendants as well, some degree of planning and
         5  coordination needs to be done here.  You know, even in a
         6  simple case, we have a scheduling conference where the
         7  parties have to meet and confer.  That needs to be
         8  discussed as well.
         9            We don't necessarily need to resolve it
02:18PM 10  today, but that issue does need to be resolved, and with
        11  that as an introduction, who's going to take the lead on
        12  item 7, Ms. Parker?
        13            MS. PARKER:  Actually Ms. Dougherty I
        14  believe and Mr. Zamora will be addressing that.
        15            THE COURT:  Ms. Dougherty.
        16            MS. DOUGHERTY:  Thank you, your Honor.
        17  Travellers' motion to quash at this point in time is
        18  being negotiated by the PSC with Travellers.  Travellers
        19  is the insurer for Liberty party in the mediation.  At
02:19PM 20  this point, some compromises have been made and reached.
        21            THE COURT:  I thought Liberty said it had no
        22  insurance?  Well, whatever.  Go ahead.
        23            MS. DOUGHERTY:  Interesting, yes, and so at
        24  this point, the plaintiffs' steering committee sought an
        25  extension of time to respond, and your Honor granted
```

|  |  |
|---|---|
|  | 1 that extension of time, and hopefully we'll be able to |
|  | 2 resolve these issues with Travellers without having to |
|  | 3 seek further Court intervention, but if we are unable to |
|  | 4 resolve it, that's been referred to Judge Boal, and we |
|  | 5 anticipate that there may be argument on that on |
|  | 6 February 6th. |
|  | 7            THE COURT:  What is the status before |
|  | 8 Judge Boal of dealing with the fact sheets, releases, |
|  | 9 protective order, that process?  Is there a hearing set |
| 02:20PM | 10 for that as well? |
|  | 11            MR. ZAMORA:  Judge, there is.  This is |
|  | 12 Mark Zamora for the plaintiffs' steering committee. |
|  | 13 It's set for February 6th, and, Judge, Ms. Greer and I |
|  | 14 had a cordial conversation before today's hearing.  I |
|  | 15 think if you looked at it in terms of complexity from |
|  | 16 least to most, perhaps contentious from least to most, |
|  | 17 we are mindful of a final meet and confer that's to be |
|  | 18 completed on the 17th, so I think if you look at the |
|  | 19 order, the first issue is going to be best protocol, and |
| 02:20PM | 20 she may disagree, I think we can both find agreement on |
|  | 21 probably 90 percent of the nuts and bolts procedure. |
|  | 22            A few of the other items I don't think are |
|  | 23 road blocks, and I don't think Judge Boal would want to |
|  | 24 be troubled with some of those issues, and so I think |
|  | 25 we'll progress there and may not even have anything to |

```
         1   discuss.
         2              The second component would be the medical
         3   releases.  There still is some language that we are
         4   discussing, but I am hopeful, I think, that in substance
         5   that we'll have agreement, and if there's a real issue
         6   that's significant, that will be the only thing that
         7   Judge Boal considers.
         8              The next item, I think we have made
         9   substantial progress this week has been the fact sheet.
02:21PM 10   I'm mindful of your comments at the last hearing.
        11              THE COURT:  As you can tell, I took
        12   something of a Goldilocks approach, which is I wanted
        13   this to be not too detailed and not too simple.
        14              MR. ZAMORA:  I think we're getting to right
        15   about to the middle, and so there are ongoing disputes
        16   that mainly relate to how far back certain requests go.
        17   In truth, we handed her material today, and so I am
        18   hopeful that more likely than not Judge Boal will be
        19   handling that, but those are the most substantial
02:21PM 20   issues.  I think we probably lean a little more to the
        21   detail as opposed to where we were.
        22              With respect to the ESI, I think we're
        23   mindful that that's going to guide some other entities
        24   as well.  There's still some more to be done, but I'm
        25   pretty confident that we're going to get there.  To that
```

|  |  |
|---|---|
|  | 1  end, we're going to have a call, we'll invite all |
|  | 2  participants who are parties to the litigation on the |
|  | 3  15th, which is currently set for 4:30, which is 30 |
|  | 4  minutes after the proof of claim forms are going to be |
|  | 5  put to bed.  If folks aren't blurry-eyed, we'll have the |
|  | 6  call, and I think what Ms. Parker's view is we'll |
|  | 7  circulate a number on the 15th, and Ms. Greer and I and |
|  | 8  others will be involved in the discussion of the nuts |
|  | 9  and bottles of those issues. |
| 02:22PM | 10             THE COURT:  All right.  Anything else on |
|  | 11  item 7? |
|  | 12             (No response) |
|  | 13             THE COURT:  All right.  Item 8. |
|  | 14             MR. SOBOL:  So on item 8, your Honor, and |
|  | 15  you flagged it at least twice already today, the |
|  | 16  question is what's going to be the plan from here on in. |
|  | 17  The long and short of it, what I would like to suggest, |
|  | 18  your Honor, is that before the next status conference -- |
|  | 19  well, should I first put in context what will we be |
| 02:22PM | 20  talking about? |
|  | 21             There's still going to be litigation with |
|  | 22  St. Thomas, we don't know with Virginia, and then we've |
|  | 23  got, whatever, a couple of dozen other clinics that are |
|  | 24  out there.  Obviously, we can't put together a plan |
|  | 25  regarding all of that all at once.  We've got to start |

```
        1    picking.  Where are we going to start?
        2              Well, it seems to me we're going to start
        3    from the plaintiffs' steering committee point of view,
        4    we'll start with St. Thomas, and what I'd like us to do
        5    is to meet and confer with St. Thomas.  If we can agree
        6    on a plan, we'll submit an agreed plan; if we can't
        7    agree on a plan, we'll submit counterproposals and hash
        8    it out at the next status conference.
        9              In that context, too, it's not that the
02:23PM 10   plaintiffs' steering committee is looking exclusively at
       11    St. Thomas, but we have to do the census that we'll do
       12    next week on a proposed, some lawyers outside the PSC,
       13    it's what they think makes sense in terms of other
       14    litigation activities we engage in, but from the
       15    plaintiffs' steering committee point of view, we'd like
       16    to be at the next status conference either talking about
       17    an agreed schedule or disagreement on a schedule to tee
       18    up a trial for St. Thomas.
       19              THE COURT:  All right.  This raises a
02:23PM 20   question.  The Roanoke Gentry, Locke plaintiffs in their
       21    papers talking about the transfer of cases raise the
       22    issue of, and I'm paraphrasing here, but the thrust of
       23    it was that a case arising in southwest Virginia ought
       24    to be tried to a southwest Virginia and not up here in
       25    far away, cold Boston.
```

```
                 1              My assumption from day one has been that
                 2   when cases are ready for trial, they get spun out to the
                 3   individual home districts where they first arose.
                 4   Again, this seems to me putting aside the so-called
                 5   national defendants that if what the case is is against
                 6   a pain clinic and a doctor, that probably those cases
                 7   ought to be spun out for trial to where they originated.
                 8              I have not done any sophisticated thinking
                 9   on that topic, and it obviously depends on what the
02:25PM         10   cases look like and so on, but that's going to affect
                11   what cases are selected as bellwethers.  All this by way
                12   of saying, this is not a typical case where, you know,
                13   you have pharmaceutical product X, and the question is
                14   did it cause injury Y, and was appropriate testing done
                15   and so forth.
                16              I think that's not going to be the central
                17   issue in these cases, so it's not clear to me what this
                18   is going to look like, where these cases are going to be
                19   tried, and what the stage in the process we need to
02:25PM         20   begin talking about that, but certainly it was too soon
                21   to be thinking about it a month ago, at least when we
                22   were issuing orders, and it's one more thing.  I think
                23   we ought to formulate a step at a time.  It depends very
                24   much what these cases look like, who the defendants are
                25   and what happens from there.
```

```
 1            MR. SOBOL:  Right.  And how many defendants
 2   there are, whether or not you've got a national
 3   defendant or just a local defendant.
 4            THE COURT:  Right.  Presence or absence of a
 5   national defendant may make a difference.
 6            MR. SOBOL:  And our proposal will consider
 7   that.  I don't think necessarily people have to land on
 8   a final decision on that issue on February 6th or
 9   whatever the next status conference is, and we'll also
10   look into whether or not it makes sense for this Court
11   to sit on a trial down in the middle of Tennessee or
12   not.
13            THE COURT:  Well, I'd be amenable to
14   anyplace warmer than here, which excludes then the
15   midwest at this point in time.  I think somewhere we
16   have lawyers from Traverse City, Michigan, and my mother
17   lives in Traverse City, Michigan, and it was 10, 15
18   below zero for long stretches.  She didn't even go
19   outside to the mailbox.
20            All right.  Anything else on item 8?  Yes,
21   Ms. Greer.
22            MS. GREER:  It's not clear where the
23   deposition protocol and ESI and discovery plans stand at
24   this point.  There hasn't been an order on that
25   referring it to Judge Boal, and so we just would ask for
```

Timestamps: 02:26PM (line 10), 02:26PM (line 20)

```
 1  some clarification as to whether you're going to be
 2  handling that because we're hearing a lot about meet and
 3  confer.  We are working on protocols, we are exchanging
 4  them, but they're kind of in no man's land right now.
 5              THE COURT:  Why don't I do this.  Certainly
 6  as to the St. Thomas entities that you represent, I'm
 7  going to direct the parties to meet and confer on the
 8  discovery plan.  I may spin some of this off to
 9  Magistrate Judge Boal, I may keep it, I don't know, but
10  certainly it makes sense for you all to get together and
11  talk about what you think makes sense to see if you can
12  agree, and we'll handle it that way.  Okay.
13              MS. GREER:  Okay.
14              THE COURT:  Does that work?
15              MS. GREER:  Does that go for the deposition
16  protocol and my protocol are kind of --
17              THE COURT:  I was thinking of discovery
18  protocol, which, in other words, discovery from
19  plaintiffs are going to be dealt with in the short term,
20  the fact sheets and so forth.  Discovery from your
21  client's perspective, I want you to meet and confer and
22  talk about a possible plan.  I don't know what the ESI
23  issues are, I don't know what the volume of documents
24  are.  I don't have any idea what the issues are, and
25  step 1 is for you to confer with one another, and as
```

02:27PM (line 10)
02:27PM (line 20)

```
          1   Mr. Sobol suggested, if you can agree on a plan, that's
          2   great, if you can't, let's tee it up, I may decide it, I
          3   may refer it to Magistrate Judge Boal, and we'll go from
          4   there.
          5             MS. GREER:  Our thinking, right or wrong,
          6   was that the discovery plan we talked about in sequence,
          7   you had talked about having written discovery first and
          8   then depositions, et cetera.
          9             THE COURT:  That's usually the way it works.
02:28PM  10             MS. GREER:  Usually in my experience, and
         11   then separate from that would be an ESI protocol that
         12   just deals with the ESI issue which would be cumbersome
         13   documents and just deals with the separate protocol, and
         14   we have been working on drafts of those, so I just
         15   wanted to make sure that you understood how this is
         16   playing out kind of in the real world, and we're okay
         17   with that.
         18             THE COURT:  All right.  That's fine.  Again,
         19   from my perspective, what I want is I want there to be
02:29PM  20   some degree of planning, I want it to be fair, I want
         21   this to be as organized as it can be under the
         22   circumstances.  Obviously, I'm doing a lot of this kind
         23   of ad hoc, but as in any case before you take discovery
         24   from the other side, there needs to be some kind of plan
         25   in place or order that directs and sets deadlines and so
```

```
         1   on, so why don't we get working on that.
         2            If your client is in the cross-hairs and it
         3   looks like it is, you need to meet and confer with the
         4   plaintiffs' counsel and try to come up with either a
         5   joint plan or a pair of proposals that I can choose
         6   between.
         7            MS. GREER:  Will do.
         8            THE COURT:  If you want intelligent
         9   commentary on any ESI protocol, you may have to find
02:29PM 10   another Judge.  I'm not sure I'm the right person for
        11   that.
        12            Item 9, notice of instructions for accessing
        13   repository.
        14            MS. PARKER:  Yes, your Honor, the
        15   plaintiffs' steering committee sent a letter to all
        16   defendants in the MDL, both unaffiliated and affiliated,
        17   sharing information about the document repositories and
        18   also providing some instructions for how access to those
        19   repositories can be gained.  Out of an abundance of
02:30PM 20   caution, we also took the liberty of ECFing a notice of
        21   those instructions to make sure that every participant
        22   in the MDL understood how those repositories could be
        23   accessed.
        24            THE COURT:  Okay.  Anything else on that?
        25            (No response)
```

```
 1                    C E R T I F I C A T E
 2
 3    UNITED STATES DISTRICT COURT )
 4    DISTRICT OF MASSACHUSETTS ) ss.
 5    CITY OF BOSTON )
 6
 7         I do hereby certify that the foregoing
 8    transcript, Pages 1 through 70 inclusive, was recorded
 9    by me stenographically at the time and place aforesaid
10    in MDL NO. 13-02419-FDS, IN RE:  NEW ENGLAND COMPOUNDING
11    PHARMACY CASES LITIGATION and thereafter by me reduced
12    to typewriting and is a true and accurate record of the
13    proceedings.
14         Dated this January 22, 2014.
15                        s/s Valerie A. O'Hara
16                        _____
17                        VALERIE A. O'HARA
18                        OFFICIAL COURT REPORTER
19
20
21
22
23
24
25
```