UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING<br>PHARMACY, INC. PRODUCTS LIABILITY<br>LITIGATION<br><br>This Document Relates to:<br>    All Cases | )<br>)<br>) MDL No. 1:13-md-2419-RWZ<br>)<br>)<br>)<br>)<br>) |

**INSIGHT HEALTH CORP.'S OPPOSITION TO PLAINTIFFS' STEERING COMMITTEE'S MOTION FOR ENTRY OF CASE MANAGEMENT ORDER**

REQUEST FOR ORAL ARGUMENT

Insight Health Corp. ("Insight"), by and through its undersigned counsel, states as follows in opposition to Plaintiffs' Steering Committee's ("PSC") Motion for Entry of Case Management Order (MDL Doc. No. 1188) ("Motion"), and supporting memorandum (MDL Doc. No. 1189) ("Memorandum").

**INTRODUCTION**

Despite the title of its Motion, the PSC is not seeking entry of a Case Management Order ("CMO") at all.  Rather, the Motion seeks to bind Insight and its co-defendants to substantive rulings on demurrers (motions to dismiss), motions for partial summary judgment, and the availability of certain legal defenses, without hearing or argument, in all pending or future litigation involving Insight.  These are not the types of procedural matters that are properly addressed in a CMO.  The PSC also did not engage in a meaningful meet and confer conference with counsel for Insight as required by Local Rule 7.1(a)(2).  For these reasons alone, the Court should deny the Motion.

In addition, the suggestion in the PSC's Motion about needing the production of voluminous information by Insight as part of an orderly and efficient exchange of information

for *mediation* purposes fails to stand up under minimal scrutiny. In fact, this Court already has addressed the exchange of information in mediation through various Orders. *See* MDL Doc. Nos. 394, 581, and 631. Rather, the Motion amounts to an attempt to bootstrap rulings by one state court in one case to deprive Insight of its fundamental rights to assert legal defenses and obtain rulings from this Court in all pending and future cases involving Insight.

Specifically, the PSC seeks entry of orders in all pending or future cases filed by any Virginia plaintiff to the same extent entered in a prior state court case, *Wingate v. Insight Health Corp.*, No. CL12-2547 (Cir. Ct. for City of Roanoke, Va. filed Dec. 27, 2012). This would include orders entered that denied Insight's demurrer (motion to dismiss) challenging the sufficiency of the *Wingate* Complaint, denied Insight's motion for leave to amend certain responses to requests for admission, and granted partial summary judgment to Mrs. Wingate on the issue of whether Insight was a health care provider subject to Virginia's cap on damages for medical malpractice actions. The intent of the proposed CMO is obvious – to prevent Insight from pursuing its legal defenses including motions to dismiss in any pending or future cases, and to prevent Insight from invoking Virginia's medical malpractice cap on damages available to the Virginia plaintiffs.

The PSC's Motion is not merely overreaching; it is an "over the top" request lacking any legal precedent to support the extraordinary relief requested. Among other relief, the PSC asks this Court to:

- Adopt opinions and orders of the Circuit Court for the City of Roanoke, Va., in *Wingate*, and a second case, *Baker v. Insight Health Corp.*, No. CL13-451 (Cir. Ct. for City of Roanoke, Va. filed Feb. 21, 2013), and <u>apply those orders as if entered in each case</u> filed by more than 150 individual plaintiffs from Virginia (per the PSC) whose claims may be transferred to the MDL 2419 and any future cases;[1]

---

[1] Insight is unfamiliar with the PSC's tally of 151 Virginia plaintiffs. Insight is currently a

2

- "Incorporate" – without further explanation – all discovery, depositions, and responses to requests for admission in the *Wingate* and *Baker* cases to every existing or future case filed by any Virginia plaintiff. This would bind Insight to since-disregarded responses to two requests for admission on whether it is a health care provider subject to Virginia's medical malpractice damages cap;

- Provide "unfettered access" to "unredacted copies" of documents in Insight's responses to Plaintiffs' requests for production in *Wingate* and *Baker*;

- Void the protections afforded Insight by the agreed Protective Orders entered in the *Wingate* and *Baker* cases; and

- Require a substantial, overly broad, and unduly burdensome document production by Insight within ten (10) days, at a time when almost none of the Virginia plaintiffs have provided discovery to Insight, including basic information about the nature of their alleged injuries.

The PSC's Motion should be denied because the PSC improperly seeks to deny Insight its right to substantive and procedural due process of law. Although the PSC does not mention issue preclusion in the Motion or supporting Memorandum, the PSC actually seeks to impose non-mutual offensive collateral estoppel through adoption of prior rulings by the Circuit Court for the City of Roanoke, Va., thereby preventing Insight from asserting certain legal defenses. The PSC is not entitled to pursue this goal under the guise of a CMO and, in any event, the PSC has failed to establish (or even identify) any of the required elements to support issue preclusion. Entry of the proposed "CMO" is unnecessary for mediation purposes and would violate Insight's fundamental rights to a full and fair hearing of its defenses in litigation.

## ARGUMENT

The Court should deny the Motion on the following grounds:

---

defendant in thirty (31) pending cases involving a total of 129 Virginia plaintiffs who are represented by five (5) different law firms. All of these cases were initially filed in the Circuit Court for the City of Roanoke, Va.

**I.     The PSC Failed to Make the Required Meet-and-Confer Certification.**

Under Local Rule 7.1(a)(2), "no motion shall be filed unless counsel certify that they have conferred and have attempted in good faith to resolve or narrow the issue." The PSC failed to make this necessary certification in the Motion or Memorandum. Furthermore, the parties have not engaged in a meaningful meet-and-confer regarding the issues raised in the Motion. While one member of the PSC did send a letter to Insight's counsel at 11:05 a.m. on June 11, 2014, regarding the PSC's intention to file the Motion, the letter also announced the intention to file the Motion less than four hours later by 3:00 p.m. that same day. *See* Ex. 1, ltr. from P. Fennell to S. Busch and J. Neale (June 11, 2014). Insight's counsel responded that he could not substantively respond by the 3 p.m. deadline, and the PSC filed its Motion later that day. *See* Ex. 2, e-mail from S. Busch to P. Fennell (June 11, 2014 at 12:13 p.m.).

Significantly, the PSC's letter did not mention mediation or the proposed incorporation of prior state court orders on dismissal and summary judgment motions. The proposed Order filed with the Motion would require "all circuit court opinions and orders" in *Wingate* to be used in all other cases "to the same extent as if served, prepared, produced, given, **rendered** and/or **entered** in each such other case." *See* [Proposed] MDL Order 8 ¶ 5 (MDL Doc. No. 1188-1) (emphasis added). The words "rendered" and "entered" are not included in the corresponding paragraph 5 of the proposed Order sent with the PSC's letter to Insight Health Corp.'s counsel on June 11, 2014. *See* Ex. 1. The PSC's failure to engage in a proper meet and confer further is demonstrated by its incorrect statement that Insight's co-defendants Image Guided Pain Management, John Mathis, M.D., and Robert O'Brien, M.D. support its Motion. In fact, these defendants filed a response the PSC's Motion opposing the extension of "pleadings, orders, opinions or other papers" from the *Wingate* and *Baker* cases to all pending and future cases. *See*

4

Resp. of J. Mathis, M.D., R. O'Brien M.D., and Image Guided Pain Management to Pls.' Steering Comm.'s June 11, 2014 Mot. for Entry of Case Management Order, 2 (June 17, 2014) (MDL Doc. No. 1203).

The filing of the Motion without satisfaction of the meet and confer requirement (which may have resulted in a better considered motion) is alone a persuasive basis to deny the Motion and the requested relief in its entirety.

## II.   A Case Management Order Is Not a Proper Vehicle for the Substantive Relief that the PSC Seeks in Its Motion.

Fundamentally, the PSC's proposed "CMO" is neither necessary nor proper given the purpose of such orders in multi-district litigation as compared to the relief the PSC seeks. CMOs are intended to address administrative and procedural issues common to all cases. *See Manual for Complex Litigation* (Fourth), Pt. 2, §§ 22.6 and 22.63 (2004). The Court need look no deeper than CMOs previously entered in MDL 2419, including:

- The appointment of lead counsel, liaison counsel, and the PSC in MDL Order No. 2 (Apr. 9, 2013) (MDL Doc. No. 82);

- Attendance and participation of counsel by telephone in MDL Order No. 4 (Apr. 11, 2014) (MDL Doc. No. 86); and,

- Waiver of service of process by certain parties in MDL Order No. 6 (June 28, 2013) (MDL Doc. No. 209).

The purpose of a CMO in complex litigation is to govern the *conduct* of the parties. *Hynix Semiconductor, Inc. v. Rambus, Inc.*, 250 F.R.D. 452, 457–58 (N.D. Cal. 2008) (emphasis added). The PSC cites no provisions in the *Manual for Complex Litigation*, or any case authority, to support entry of a CMO that mandates entry of substantive rulings against a single party in cases that had not been filed when the rulings were made in the *Wingate* case, and even in other future litigation. In short, a CMO is intended for use as a procedural tool, and not a

5

substantive sword.

### III. The PSC Actually Seeks to Impose Issue Preclusion on Insight but Fails to Establish Any of the Required Elements.

Although the PSC ostensibly has styled its Motion as one seeking entry of a Case Management Order, the PSC actually asks the Court to adopt rulings and orders by the Circuit Court for the City of Roanoke, Va. and incorporate them into the record of MDL 2419. The adoption and incorporation of these state court orders could have a preclusive effect and prevent Insight from filing or arguing the merits of certain legal defenses in all existing and future lawsuits involving Virginia plaintiffs, thereby violating Insight's right to due process of law. The Motion should be denied with respect to the prior state court orders, opinions, and rulings because the PSC failed to cite any legal authority in support of its extraordinary request or establish the elements necessary for such wholesale issue preclusion.

For issue preclusion to apply, the party asserting it must establish that (1) the issue sought to be precluded is the same as that involved in the prior action; (2) the issue must have been actually litigated; (3) the issue was determined by a valid and binding final judgment; and (4) the determination of the issue was essential to the judgment. *Ridley v. Bankowski*, No. 11-10439-RWZ, 2011 U.S. Dist. LEXIS 134213, *9-12 (D. Mass. Nov. 21, 2011) (citing *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 30 (1st Cir. 1994)). The PSC has made no such showing in its Motion or supporting Memorandum.

#### A. Extending the Ruling on Insight's Demurrer (Motion to Dismiss) in the *Wingate* Case to All Existing and Future Cases Is Improper.

The most significant of the state court rulings are a letter opinion and an order by the Circuit Court for the City of Roanoke, Va., relating to the *Wingate* plaintiff's motion for partial summary judgment on the applicability of Virginia's cap on damages in medical malpractice

actions and Insight's demurrer (motion to dismiss) on a number of legal defenses.  *See* Letter Op. (Oct. 31, 2013); Order (Nov. 13, 2013).  The PSC has not identified these particular rulings from *Wingate* or bothered to establish any of the elements necessary to bind Insight to any of the state court orders in *Wingate* or *Baker*.  Nor has the PSC recounted the full procedural history of the demurrers or the motion for partial summary judgment or informed the Court of the substance of the rulings.  Consequently, it would be improper to adopt or incorporate the rulings or orders of the Circuit Court for the City of Roanoke, Va. in MDL 2419.

The demurrers (motion to dismiss) in *Wingate* were decided under Virginia's state law standards.  Notably, Virginia state courts have not adopted the federal standard from *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009).  For this reason alone, it is improper to enforce the *Wingate* ruling to other cases, which must be decided under federal pleading standards.  *See* Fed. R. Civ. P. 8 (General Rules of Pleading) and 9 (Pleading Special Matters).  In addition, the arguments were briefed in early 2013, less than two months after the initial lawsuit was filed, at a preliminary stage of the NECC meningitis litigation.  Insight was represented by its former counsel, and the issues concerned only those allegations raised in the original *Wingate* complaint by one plaintiffs' firm.

Since early 2013, Insight has been named as a defendant in meningitis cases filed by four additional law firms.  Although plaintiffs in the thirty-one cases allege some sort of injury arising from healthcare services provided by Insight, each plaintiffs' firm's complaints include different factual allegations, and in some cases, different causes of action.  Therefore, incorporating the *Wingate* demurrer ruling into all of these cases "to the same extent it was…rendered and/or entered in each such other case" is illogical.  It would deprive Insight of its right to file and argue the merits of Complaints filed by different law firms alleging different factual and legal

7

allegations. It would also overrule defenses to pleadings for cases that have not even been filed. The PSC provides the Court with no basis for granting such extraordinary and far-reaching relief.

> **B.     The PSC's Motion Would Moot Insight's Actual Responses to Requests for Admission and Impose an Admission in the *Wingate* Case on All Other Cases, Thereby Depriving Insight of the Protections of Virginia's Medical Malpractice Cap on Damages.**

Approximately twenty cases were pending in Roanoke City Circuit Court at the time of entry of the Court's Transfer Order on June 5, 2014 (MDL Doc. No. 1173). *Wingate* was not among the transferred cases because it was no longer pending. In the *Wingate* case, Insight sought to withdraw its original responses to certain requests for admission on the legal issue whether Insight was a "health care provider" under Va. Code § 8.01-581.1 and therefore subject to the protections of the medical malpractice damages cap of Va. Code § 8.01-581.15. The state court refused to allow Insight to modify its original response, and granted partial summary judgment to Mrs. Wingate on this issue. The Roanoke Court also entered separate orders in ten other cases granting partial summary judgment to plaintiffs on the "health care provider" issue and the medical malpractice damages cap.[2] The Roanoke Court did not issue any further orders relating to the applicability of the malpractice damages cap in any of the now-transferred cases, until after this Court exercised its exclusive jurisdiction over the cases.[3] Regardless, in twenty (20) of the thirty-one (31) pending cases there has been no admission that Insight is not a health care provider, and there has not been any motion for summary judgment filed by plaintiffs seeking such a ruling. Significantly, these twenty cases account for 119 of the 129 Virginia

---

[2] Insight will file a separate motion relating to these ten cases and addressing the requests for admissions and orders on the plaintiffs' motions for partial summary judgment.

[3] These orders should be considered a nullity. Insight will file a separate motion addressing the Orders entered by the Roanoke Circuit Court more than three weeks after this Court ordered transfer pursuant to its exclusive jurisdiction over the Insight cases.

8

plaintiffs with pending cases against Insight.

For more than a year, Insight has persistently stated in response to requests for admission that it is a health care provider under Virginia law and is therefore subject to the medical malpractice cap.[4] Notably, the PSC does not seek directly to incorporate Insight's responses to requests for admission in *Wingate* into all of the other cases. Rather, they seek the same result indirectly through the provisions of the proposed CMO. The PSC does not explain to the Court why Insight's responses to requests for admission and other discovery in non-*Wingate* cases must be disregarded and replaced by discovery in a case that is no longer pending, and it cites no legal authority to support such legal maneuvering.

Granting the PSC's Motion would deny Insight the right to challenge the sufficiency of any existing or future Complaints, would overrule certain legal defenses that Insight is entitled to assert, and would bind Insight to an admission which it has disavowed repeatedly as erroneous as a matter of law. Incredibly, the proposed CMO would grant substantive relief on legal issues in cases that have not even been filed. For existing cases, it would deny Insight the right to argue – or even file – motions challenging the sufficiency of plaintiffs' factual and legal allegations. It would moot existing, pending dismissal motions in cases involving more than one hundred Virginia plaintiffs.[5] The Court should deny the PSC this unprecedented and unwarranted relief.

---

[4] Insight specifically admitted it <u>was</u> a health care provider in the following pending cases: *Courtney*, *R. Brown*, *Holdbrook*, *Bender (Estate of Irace)*, *Shuck*, and *White*.

[5] Excluding the Gentry Locke cases, Insight filed demurrers (motions to dismiss) in state court in twelve (12) cases, involving 110 plaintiffs. Insight also filed a motion to dismiss in *Baker* after the matter was removed the U.S. District Court for the Western District of Virginia. *See* Insight's Motion to Dismiss Amended Complaint, Case No. 1:14-cv-12421-RWZ, (D. Mass. Doc. No. 14) (Mar. 17, 2014). These responsive pleadings and dispositive motions remain pending.

## IV. The PSC's Motion Is Premature and Unnecessary in Light of Insight's Efforts to Participate in Mediation with the Virginia Plaintiffs.

Fundamentally, the PSC's Motion is not about the need to obtain certain information as part of an agreed mediation process. If that were the case, there would be no need to extend orders on motions to dismiss and summary judgment motions from one case, *Wingate*, to every pending or future case against Insight. If the PSC believes it needs certain information for mediation purposes, there are far more efficient means of resolving that issue than entry of the sweeping CMO it proposes. For example, paragraph H.3 of the Order on Mediation Program entered on August 15, 2013 (MDL Doc. No. 394), specifically allows the mediator or Court to "determine whether any additional information or documents should be produced or exchanged in order to facilitate a mediated settlement or resolution and the timing and manner of the production." Furthermore, the Court's Mediation Guidelines (MDL Doc. No. 581) were approved by Order dated November 27, 2013 (MDL Doc. No. 631). The Guidelines also provide for the exchange of information by parties engaging in mediation. (MDL Doc. No. 581-1, at 3). Thus, the entry of the proposed CMO is unnecessary for the upcoming mediation process.

As the PSC admits in its Memorandum, Insight and plaintiffs' counsel in the Virginia cases have been conferring regarding the possibility and structure of mediation to resolve the Virginia cases. Mem., 2-3. Since that time, Insight has prepared the necessary papers for a conditional notice of participation in this Court's formal mediation process. Therefore, any issues regarding what information the parties will exchange in mediation can be addressed by the parties and the mediator. This has not yet occurred; as explained more fully above, the PSC did not have a meaningful meet and confer with Insight over these issues before filing the Motion. The PSC's letter to Insight's counsel regarding the proposed CMO does not mention the need to

obtain specific discovery as part of the mediation process.  In fact, the letter makes no mention of mediation at all.  *See* Ex. 1, ltr. from P. Fennell to S. Busch and J. Neale (June 11, 2014) (attaching a proposed order).

Nonetheless, the PSC now claims that the ability to use all discovery and orders from the *Wingate* and *Baker* cases is "an essential step in promoting the success of any mediation."  Mem. 4.  If so, then the parties and the mediator should engage in a meaningful meet and confer process to identify what information, if any, that all parties need for mediation purposes.  For example, the PSC makes no mention of the fact that, to date, the overwhelming majority of the Virginia plaintiffs have produced no discovery to Insight, and Insight lacks basic information about these plaintiffs including their alleged injuries.  Insight objects to entry of a CMO that vitiates legal defenses in the guise of seeking information for mediation purposes.

**V.     The PSC's Motion Seeks Relief That Is Inconsistent with Prior Court Orders, and Unduly Burdensome to Insight.**

The MDL is not the sole vehicle for consolidation of litigation for discovery purposes. Virginia law permits parties to consolidate litigation under the Multiple Claimant Litigation Act, Va. Code § 8.01-267.1 *et seq.* ("MCLA").  All of the cases against Insight were filed in Virginia, and twenty-one cases were litigated in Virginia state court for more than a year.  Certain of the Virginia plaintiffs served separate written discovery on Insight, apart from any discovery taken in *Wingate*.  Additionally, parties in Virginia may also choose to cross-notice depositions for use in more than one pending case, but the Gentry Locke firm did not do so when deposing Insight's corporate representatives in the *Wingate* case.  Rather, the Gentry Locke firm stated in their notices for deposition of Insight's corporate representatives that such depositions may apply in other cases "as shall be mutually agreed upon by the parties."  *See* Ex. 3, Corrected Third Am. and Restated Rule 4:5(B)(6) Dep. Not. to Insight Health Corp (Nov. 11, 2013), attached without

exhibits. The plaintiff's very own language in the deposition notice is inconsistent with the unilateral relief the PSC now seeks.

At no time did any Virginia plaintiffs move to consolidate their cases with *Wingate* or *Baker* under the MCLA. Nonetheless, the PSC seeks relief that essentially would retroactively consolidate cases that were filed individually and not consolidated for discovery or any other purpose under the MCLA, or other order entered by a court. Ironically, the Virginia plaintiffs chose not to invoke this procedural device when the litigation they seek to bootstrap to all other cases was actually taking place. The effect of the request, if granted, would be that plaintiffs are given the full benefit of a consolidation they never asked for at the expense of depriving Insight of specific rights under the MCLA. For example, if all of the cases had been consolidated under the MCLA, then Insight, having lost in *Wingate* its demurrer arguments, its motion for leave to file an amended response to the request for admission that it was a health care provider entitled a statutory cap on damages, and entry of the order granting a motion for partial summary judgment on this issue, could have sought an interlocutory appeal of these rulings to the Virginia Supreme Court. *See* Va. Code § 8.01-267.8.

Finally, the relief sought by PSC's Motion is inconsistent with the state court's protective orders governing discovery, and compliance would impose unreasonable burdens on Insight.

> **A.    The Express Terms of the State Court Protective Orders Prohibit Disclosure of Certain Protected Discovery Material to the PSC.**

While requesting the Court to adopt and incorporate all rulings, orders and opinions from the *Wingate* and *Baker* cases, the PSC simultaneously and contradictorily demands that the Court void the state-court protective order by granting the PSC access to "Protected Discovery Material." The protective orders in *Wingate* and *Baker*, however, expressly limit the use of "Protected Discovery Material" as follows:

12

> 2. "Protected Discovery Material" may be used solely for the purpose of prosecuting or defending this action and other actions on which counsel for the Plaintiff heretofore have been retained to pursue the same legal claims and substantially similar factual claims presented in this action against the same parties hereto with the same defense counsel (herein referenced collectively as "the Meningitis Litigations"), *but not for any other purpose whatsoever*.

*See Wingate* Protective Order, ¶ 2 (Apr. 5, 2013) (Ex. B to PSC's Memorandum, MDL Doc. No. 1189-2); *Baker* Protective Order, ¶ 2 (Aug. 8, 2013) (Ex. B to PSC's Memorandum, MDL Doc. No. 1189-2) (emphasis added). However, contrary to the provisions of the protective orders entered in *Wingate* and *Baker*, there is no identity of counsel, either from the plaintiffs' side or from Insight's side. Thus, the express terms of the state-court protective orders prohibit sharing any documents or information marked as "protected discovery material" with the PSC. The Court should not allow the PSC to cherry-pick which orders should be incorporated into the record of MDL 2419 and those that should not.

### B. The PSC Improperly Seeks Access to Information and Documents Which Are Privileged, Protected, or Beyond the Proper Scope of Discovery.

In the Motion, the PSC seeks "unfettered access to all documents and things (including but not limited to answers, cross-claims, answers to interrogatories, responses to requests for admissions, responses to requests for production, and deposition testimony) previously served, prepared, produced, and/or given by, for, or on behalf of" Insight. Mot., 1. The PSC's Proposed Order would command Insight to "provide unredacted copies of all such documents and things," including all "responses to request for production." Proposed Order, 2 (MDL Order No. 8) (MDL Doc. No. 1188-1). Such unfettered access to unredacted documents threatens Insight's right to protect information and documents that are shielded from disclosure by the attorney-client privilege and/or the work product doctrine. Insight redacted privileged information from

13

responsive documents and produced redacted versions of those documents to plaintiff in *Wingate*, and the PSC now seeks access to that privileged information. For example, many of these redacted documents are internal communications to and from Insight's in-house legal counsel, seeking or reflecting legal guidance. The PSC, however, has not challenged Insight's privilege designations or taken issue with any particular documents or redactions. Insight respectfully asks the Court to preserve its privilege and deny the Motion.

### C. The Proposed Case Management Order Would Impose Unduly Burdensome Deadlines upon Insight.

In addition to due process concerns, the proposed Order also would place an unreasonable burden on Insight. First, the Motion would purport to require Insight at its own expense to process and produce thousands of pages of documents within ten (10) days to the PSC's Lead Counsel. *See* Ex. A. to Motion (Proposed Order) (MDL Doc. No. 1188-1) (June 11, 2014). However, all of the pleadings equally are available to the PSC through publicly accessible court files. Second, and for the reasons outlined above, certain of the discovery materials are subject to protective orders, and Insight should not be ordered to produce such information. Third, the request to have the subject information produced within a ten (10) day time frame is unreasonable. Fourth, the scope of the proposed production is overly broad, seeking documents such as medical records and materials acquired through non-party subpoenas with no relationship to the claims of the other Virginia plaintiffs.

### D. The Proposed Order Will Not Serve the MDL's Purposes to Promote Efficiency and Avoid Piecemeal Litigation.

As proposed, the PSC's Order would not ensure the orderly and efficient conduct of this litigation. The PSC argues that the Order is necessary to avoid piecemeal litigation, but the proposed CMO raises several unanswered questions. For example, if prior discovery is "incorporated" into all existing and future cases, are the plaintiffs prohibited from taking further

14

depositions of Insight fact witnesses and corporate representatives?  Will future plaintiffs agree to forego additional depositions of fact witnesses deposed in *Wingate* or *Baker*?   If not, then incorporating prior testimony into current cases will not avoid duplicative discovery.

Insight will participate in a meaningful meet and confer process on the possible use of discovery in previous litigation, should mediation prove unsuccessful.  However, the PSC's Motion has put the cart before the horse.  Granting the PSC's Motion is not necessary for mediation purposes, and not consistent with the proper use of a CMO.

## CONCLUSION

For the foregoing reasons, the Court should deny the PSC's Motion for Entry of Case Management Order.

Dated: July 9, 2014
Richmond, VA

Respectfully submitted,

/s/ Samuel T. Towell
Stephen D. Busch (admitted *pro hac vice*)
Christopher E. Trible (admitted *pro hac vice*)
Samuel T. Towell (admitted *pro hac vice*)
McGUIREWOODS LLP
One James Center
901 East Cary Street
Richmond, VA 23219
(804) 775-1000
sbusch@mcguirewoods.com
ctrible@mcguirewoods.com
stowell@mcguirewoods.com

Counsel for Insight Health Corp.

-and-

Matthew J. Matule (BBO # 632075)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Beacon Street
Boston, Massachusetts 02108
(617) 573-4800
Matthew.Matule@skadden.com

-and-

Albert L. Hogan, III (admitted *pro hac vice*)
Ron E. Meisler (admitted *pro hac vice*)
Carl T. Tullson
155 N. Wacker Drive
Chicago, IL 60606
(312) 407-0700
Al.Hogan@skadden.com
Ron.Meisler@skadden.com
Carl.Tullson@skadden.com

---

**CERTIFICATE OF SERVICE**

I, Samuel T. Towell, hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on July 10, 2014.

Dated: July 9, 2014

/s/ Samuel T. Towell
Samuel T. Towell