# Exhibit 11

# GIDEON, COOPER & ESSARY
A PROFESSIONAL LIMITED LIABILITY COMPANY

315 DEADERICK STREET, SUITE 1100
NASHVILLE, TENNESSEE 37238
(615) 254-0400
FAX (615) 254-0459
www.gideoncooper.com

C. J. GIDEON, JR.[1]
DIXIE W. COOPER[2]
BRYAN ESSARY[3]
CHRIS J. TARDIO[4]
CHRISTOPHER A. VRETTOS
ALAN S. BEAN
JAMES C. SPERRING
JOSHUA R. ADKINS
KIM J. KINSLER[5]
RANDA VON KANEL
J. BLAKE CARTER[1]
MARK A. HAMMERVOLD[1]
MATT H. CLINE
SPENCER T. THOMAS[6]

[1]LICENSED IN TN & FL
[2]LICENSED IN TN, AL & TX
[3]LICENSED IN TN & GA
[4]LICENSED IN TN & KY
[5]LICENSED IN TN & WI
[6]LICENSED IN TN & MT

April 25, 2014

Chris J. Tardio
chris@gideoncooper.com

**<u>Via Electronic Mail Only</u>**
**<u>[gerards@branstetterlaw.com]</u>**
J. Gerard Stranch, IV
BRANSTETTER, STRANCH & JENNINGS
227 Second Avenue North
Nashville, TN 37201

**Re: *NECC litigation***

Dear Gerard:

I respond to your April 17, 2014, letter.

*Our position*

First, let me make clear our position, a position that has not changed since October 2013. We believe:

1. The ongoing motion to dismiss process should resolve at the outset of this litigation.

2. Before launching into common written discovery, which we consider to include both (1) "common" initial disclosures from both sides (the PSC and our clients) and (2) a master set of "common" written discovery from both sides[1], a "discovery plan" should be agreed upon or entered by the Court.

---

[1] I understand that you consider your requests served in October 2013 to be the "common" set from the PSC. We have withheld ours pending entry of a discovery plan.

1

3. Such a discovery plan would include provisions addressing, at a minimum, the following:

   a. Reasonable timeframes for reciprocal production of initial disclosures.

   b. Reasonable limits on the numbers of interrogatories, requests for production, and requests for admission.

   c. Reasonable deadlines for the service of and answering of the initial set of common written discovery from the PSC to the Tennessee Clinic Defendants and from the Tennessee Clinic Defendants to the PSC.

   d. Now, given the entry of the standard plaintiff profile form ("PPF"), reasonable deadlines for completion of the PPF, raising of objections to the completed PPFs, and supplementation of the incomplete PPFs.[2]

At no time have we said we do not believe you are entitled to written discovery from our clients or to take their depositions. We are ready and willing to engage in common written discovery so long as a reasonable plan is put in place. We may disagree on what constitutes a reasonable discovery plan. That is what the meet and confer process is designed for. But, our position has simply been that *a plan* should be in place before launching into costly and time-consuming written discovery.[3][4]

---

[2] Such a plan would also include reasonable deadlines for disclosure of and depositions of common experts and for common dispositive motion practice not done during this initial motion to dismiss phase. But, the portion of the discovery plan addressing written discovery is the focus of this letter.

[3] Frankly, such a plan protects both sides. I am sure that the PSC, just like us, wants to avoid answering hundreds of repetitive discovery requests or facing unrealistic deadlines.

[4] You mischaracterize our position in your letter as "discovery is not open because a 'discovery plan' is not in place because of a previously filed Motion to Stay Discovery." This is not accurate. We have produced limited documents and information and engaged in meet and confers on discovery issues. Our position, as outlined in this letter, is simply that a plan must be put in place consistent with FRCP 16 and 26 before full-fledged common written discovery begins. The Court has consistently agreed with us.

2

Judge Saylor *repeatedly* agreed with our position that this MDL should include an orderly progression of (1) briefing motions to dismiss, (2) putting a discovery plan in place, (3) completing written and then oral discovery[5][6]:

- "I do need to, as in any case, resolve motions to dismiss, get discovery underway to the extent appropriate and so on. I think the time has come to get organized along those lines **beginning with the resolution of motions to dismiss, creating a framework for that so that they can be decided and we can move on.** What I hope to accomplish in some reasonable short term is exactly that, to know what the universe of short complaints are and **to permit defendants who so intend to have their 12(b)(6) motions or other preliminary motions resolved, either they win or they lose, and we go on from there.**"[7]

- "**[C]onceptually, we'll do motions to dismiss, we'll do discovery**, we'll do summary judgment, we'll have a trial...."[8]

- "I'm certainly going to adopt the bellwether process, but I think we're a ways from that at this point."[9]

- "12(b)(6), again, we're going to basically follow the Rules of Civil Procedure. Right upfront, **if you're a defendant, you have a right to file a motion that says this does not state a claim upon [which] relief can be granted.** I may deny them all, I don't know what I am going to do, but you have that right, and I'm going to give them [that] right...."[10]

- "**I'm not sure we can truly avoid 26(f) conferences** at least, I mean, we have defendants who are individual physicians, and we have defendants who are multi-national corporations, and there are a lot of different types of defendants here, and they may be in very different positions, and **it has to be sensible and tailored as makes sense under the circumstances.**"[11]

---

[5] Emphasis added to all of the following quotes.
[6] Notably, the PSC seems to outwardly agree that the motion to dismiss process represents the first step in the litigation against the pain clinics. [Parker, April 10, 2014, Status Conference, 37: 12-15]
[7] December 13, 2013, Status Conference, 16: 10-23
[8] December 13, 2013, Status Conference, 23: 12-14.
[9] December 13, 2013, Status Conference, 23: 19-21.
[10] December 13, 2013, Status Conference, 29: 7-13.
[11] December 13, 2013, Status Conference, 78: 16-22.

3

- **"What I said about having a discovery plan for the affiliated defendants obviously applies to the unaffiliated defendants as well, some degree of planning and coordination needs to be done here. You know, even in a simple case, we have a scheduling conference where the parties have to meet and confer. That needs to be discussed as well.** We don't necessarily need to resolve it today, but that issue does need to be resolved...."[12]

- **"[B]efore you take discovery from the other side, there needs to be some kind of plan in place** or order that directs and sets deadlines and so on...."[13]

Resolution of the legal issues in the motions to dismiss will have a significant impact on the course of this litigation, particularly the product liability claim. The same holds true for the theories attempting to hold the Tennessee health care providers liable for the actions of NECC. While it generally makes sense to resolve motions to dismiss at the outset of cases before the cost and time of written and oral discovery, it makes even more sense in this MDL where the resolution of legal issues will have a tangible impact on the course of the litigation.

That being said, even though the most cost-effective option is to stay all discovery until the motions to dismiss are resolved, we are willing to begin the "common" discovery phase of the lawsuits while the motions to dismiss are briefed, argued, and decided. We just do not agree to do so without some reasonable parameters put in place, as contemplated by Judge Saylor and Federal Rules of Civil Procedure 26 and 16. Our position on this has not changed.

We have operated consistent with the directives of Judge Saylor and the policy behind the federal rules in our attempts to set a plan with reasonable parameters for discovery.[14] We wrote on October 10, October 18, and December 30, addressing discovery issues. Each time, we proposed a reasonable plan to establish a timetable for reciprocal initial disclosures, deadlines for reciprocal written common discovery, and limits on the numbers of interrogatories, RFPs, and RFAs. We filed what I sincerely believe are reasonable proposals at 598-2 and 858-3 to govern common discovery. Some variation of these proposals must be entered before launching into common written discovery.

---

[12] January 10, 2014, Status Conference, 40: 24-25; 41: 1-8.
[13] January 10, 2014, Status Conference, 49: 23-25.
[14] Your continued assertion that the confidentiality orders, ESI protocol, and (forthcoming) deposition protocol constitute a sufficient discovery plan is disingenuous. While I concede those orders are components of an overall discovery plan, they do nothing to address initial disclosures, deadlines for responding to written discovery, or limits on numbers of requests.

4

*Motion to Stay Discovery*

Second, let me specifically address a point in your letter.

Although it may not be particularly relevant to the resolution of the instant issues, you are incorrect about the status of our motion to stay discovery.[15] St. Thomas filed its motion to stay discovery at Dkt. 595. We joined it at Dkt. 598, at the same time requesting the Court enter our proposed discovery plan filed at Dkt. 598-2. Our request to join in Dkt. 598 was granted at Dtk. 599. Thus, we have, with judicial approval, joined in St. Thomas's request to stay discovery pending entry of a discovery plan, which we proposed at Dkt. 598-2.

You contend in your letter that the Court denied the motions to stay discovery and cite Dkt. 783. I looked at Dkt. 783. The Order at Dkt. 783 addresses St. Thomas's motion at Dkt. 594 (its motion for amendment of the protective order at Dkt. 397). The Order at Dkt. 783 that you contend denied the motions to stay does not even address them.

Thus, our motions to stay discovery pending entry of a discovery plan are still pending, and they remain pending with the directive to us that we meet and confer to establish such a plan. Judge Saylor addressed the motions specifically at the January 10, 2014, status conference:

- "Part of what St. Thomas raised was also a motion to stay discovery pending a discovery plan. I do want to take this up at some point today. What I said about having a discovery plan for the affiliated defendants obviously applies to the unaffiliated defendants as well, some degree of planning and coordination needs to be done here. You know, even in a simple case, we have a scheduling conference where the parties have to meet and confer. That needs to be discussed as well. We don't necessarily need to resolve it today, but that issue does need to be resolved...."[16]

- "Why don't I do this. Certainly as to the St. Thomas entities that you represent[17], I'm going to direct the parties to meet and confer on this discovery plan. I may spin some of this off to Magistrate Judge Boal, I may keep it, I don't know, but certainly it makes sense for you all to get together and talk about what you think makes sense to see if you can agree, and we'll handle it that way."[18]

---

[15] Dkt. 598.
[16] January 10, 2014, Status Conference, 40: 24-35; 41: 1-8, 17-22.
[17] The Court was speaking to Marcy at this point. Although STOPNC and St. Thomas are separate legal entities, the two have been lumped together at the various hearings.
[18] January 10, 2014, Status Conference, 48: 5-12.

5

- "I was thinking of a discovery protocol, which, in other words, discovery from plaintiffs [is] going to be dealt with in the short term, the fact sheets and so forth. Discovery from your client's perspective.[19] I want you to meet and confer to talk about a possible plan."[20]

The clerk's notes from the status conference specifically reflect the Court's "ruling" on the motions to stay discovery:

> The parties were ordered to meet and confer on drafting ESI and deposition protocols as to the St. Thomas entities. Any unresolved issues should be submitted to the Court through appropriate motion practice. The motions of the St. Thomas entities [595] to stay discovery and the related motion for entry of a discovery plan [598] will remain pending until the parties have had an opportunity to propose such protocols.[21]

This directive was consistent with Judge Saylor's previous specific Order vacating the initial bellwether deadlines:

> The Court will set a timetable for identification of potential bellwether cases, **further discovery in those cases**, and selection of actual cases for trial at a future date.[22]

Thus, while your letter states conclusively that "[t]he Court denied in relevant part [the motion to stay discovery] back in January" at Dkt. 783, that is simply incorrect. The motion is still pending, and the Court has directed us to meet and confer on it.

*Proposed course of action*

Third, let me suggest where we go from here. I will not reargue the points made in the original motions to stay and the briefing at Dkt. 858. I will also not reargue the points we have made in opposition to the PSC's bellwether proposal. I will only propose what I believe to be a reasonable compromise on the common written discovery issues.

I propose that the PSC reconsider Section I of our filing at 858-3. Section I comprises a discovery plan for written discovery, *i.e.*, (1) a timeframe for reciprocal initial disclosures, (2) reasonable limits on the number of interrogatories, RFPs, and RFAs, (3) deadlines for completion and supplementation of the PPFs, and (4) a reasonable timeframe for exchange of written common discovery requests. I enclose another copy of 858-3. Provision "I" can be amended to allow for the Trustee's agreement that the PSC can allow us access to the NECC documents.

---

[19] Again, the Court was specifically addressing Marcy.
[20] January 10, 2014, Status Conference, 48:17-22.
[21] Dkt. 862.
[22] Dkt. 721.

I propose that we meet and confer on the discovery plan, using 858-3's Section I as a starting point, as directed by Judge Saylor in mid-January. In the several months since the directive to meet and confer on the discovery plan, the parties have reached agreement on the ESI protocol and concluded the meet/confer and argument process on the deposition protocol.[23] I propose we do the same on the written discovery plan.

In the interim, while we negotiate the written discovery portion of the discovery plan contemplated by Judge Saylor, we will continue the process of gathering documents and information from our clients to send initial disclosures and answer the discovery sent in October, and Plaintiffs can begin the process of completing the PPFs.

Please let me know your thoughts. I am available to confer in person or by phone on these issues April 30 (afternoon), May 1 (anytime), or May 5 (anytime).

Thank you.

Very truly yours,

Chris J. Tardio

CJT/lao
Enc.: Proposed Discovery Plan (Dkt. 858-3)
cc: Kristen Parker (by email)
    Mark Chalos (by email)
    Daniel Clayton (by email)
    George Nolan (by email)

---

[23] In addition, much of the last 90 days has been spent on a motion to dismiss briefing.

7

# Exhibit C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | MDL No. 2419 Dkt. No. 1:13-md-2419 (FDS) |
| THIS DOCUMENT RELATES TO: Suits Naming Saint Thomas Outpatient Neurosurgical Center, LLC | |

**MDL ORDER No. __
COMMON ISSUE DISCOVERY
FOR THE SAINT THOMAS-RELATED DEFENDANTS**

This Order specifically addresses Common Issue[1] Discovery Deadlines for the Saint Thomas-Related Defendants.[2] Common Issue Discovery Deadlines for other MDL Defendants will be subject to a separate Case Management Order.

Pursuant to Federal Rules of Civil Procedure 16(b) and 26(f), the Court hereby sets the following deadlines related to common issue discovery:

I.  **Common Issue Fact Discovery**

   A.   Fact discovery of common issues is open subject to the following:

   B.   The Defendants[3] and the PSC will serve initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1) regarding common issues within 30 days of entry of this Order.

---

[1] "Common issue" for purposes of this Order means an issue that potentially impacts all or a substantial number of cases against a particular Defendant. An example of a common issue would be a parent company's liability for a subsidiary company's conduct. "Case-specific issues" are issues that impact a single case or a small number of cases. Examples of case-specific issues would be the amount of physical harm an individual Plaintiff claims to have suffered as a result of a Defendants' alleged wrongdoing and statements allegedly made by Defendants to a particular Plaintiff.

[2] The "St. Thomas-Related Defendants, for purposes of this Order, include: Saint Thomas Outpatient Neurosurgical Center, LLC, Howell Allen Clinic A Professional Corporation, John Culclasure, M.D., Debra Schamberg, R.N., Saint Thomas West Hospital Formerly Known As St. Thomas Hospital, Saint Thomas Network, Saint Thomas Health, Ascension Health Alliance, and Ascension Health.

[3] The Court understands that the Defendants have not had access to the roughly 40,000 documents produced informally by NECC. To the extent Fed. R. Civ. P. 26(a)(1) can be construed as requiring the

C.  The Plaintiffs' Steering Committee ("PSC") and the Defendants may serve Master Common Written Discovery, subject to the limits set forth below:

1. 200 Requests for Admissions
2. 40 Interrogatories
3. 60 Requests for Production.

D.  If a party wishes to exceed these limitations, it must seek leave of the Court or enter into an agreement with the party from which discovery is sought.

E.  Parties will provide a "privilege log" with discovery responses describing the nature of the documents, communications, or tangible things not produced or disclosed pursuant to a claim of privilege or trial preparation material, in a manner that will enable other parties to assess the claim, without revealing the information claimed to be privileged or protected.

F.  Plaintiffs in every action naming one or more St. Thomas-Related Defendants will serve completed Plaintiff Profile Forms ("PPF") and medical authorizations within 60 days after a form PPF and medical authorizations are approved by the Court or entry of this Order, whichever is later. In cases where a complaint naming one or more St. Thomas-Related Defendants is filed after the PPF and medical authorizations are approved by the Court, any plaintiff not named in a prior pending suit must serve a completed PPF and medication authorizations within 60 days of filing suit.

---

Defendants to identify with specificity these unseen NECC documents in their initial disclosures, the Court excuses that requirement since the Plaintiffs already have those documents in their possession.

2

G. The Defendants will notify Plaintiffs of any claimed material deficiencies in the PPFs within 90 days of receipt of the completed PPF and executed records releases. Plaintiffs will have 30 days from notification to cure any claimed material defect of the PPF.

H. If the Defendants discover material deficiencies with PPFs after the expiration of the 90 day period, they will meet and confer with the Plaintiffs to seek agreement on curing the deficiencies. If an agreement cannot be reached, the Defendants may move to compel the Plaintiffs to cure the deficiencies.

I. No later than ten (10) days from the date of entry of this Order, the Plaintiffs will provide the Defendants with access to all of the documents NECC has informally produced, maintained in tangible paper form or in any document repository.

J. No later than 30 days from the date of entry of this Order, the Saint Thomas-Related Defendants will provide full and complete substantive responses to the Master Discovery served by the Plaintiffs on October 4, 2013.[4][5]

K. No later than 30 days from service of the Defendants' Master Discovery, the Plaintiffs will provide full and complete substantive responses to such discovery.

L. The Parties shall have 270 days[6] from entry of this Order to complete all common issue fact discovery related to Initial Trial Pool cases.

M. Depositions of fact witnesses regarding common issues will be addressed by a separate order entering a deposition protocol.

---

[4] Electronically Stored Information "ESI" will be addressed by a separate order setting forth an ESI protocol and is not covered by this deadline.
[5] The Court is aware that the PSC has issued subpoenas to many of the Defendants that are duplicative of the Master Discovery the PSC has also served. Once the Defendants respond to the Master Discovery, the Defendants shall be deemed to have responded to duplicative subpoena requests.
[6] Assuming the discovery stay as to the Affiliated Defendants is lifted at or near the time of entry of this Order.

3

II.  **Joinder and Amendment**

Pursuant to Fed. R. Civ. P. 16(b), the Court hereby sets the following deadlines for amending complaints and joining new parties:

A.  Any amendments to complaints must occur within 60 days of completion of common fact discovery.

B.  Joinder of new parties must occur within 60 days of completion of common fact discovery.

III.  **Common Issue Expert Discovery**

A.  Pursuant to Fed. R. Civ. P. 26(a)(2)(A) and (B), Plaintiffs shall serve expert reports for experts who will testify on common issues related to Initial Trial Pool Cases within 90 days of the deadline for completion of common issue fact discovery. At least three proposed deposition dates for each expert will be provided with the expert's disclosure.

B.  Pursuant to Fed. R. Civ. P. 26(a)(2)(A) and (B), Defendants shall serve expert reports for experts who will testify on common issues related to Initial Trial Pool cases within 60 days of receipt of the Plaintiffs' Common Expert Disclosures. At least three proposed deposition dates for each expert will be provided with the expert's disclosure.

C.  If the Plaintiffs believe rebuttal experts are warranted, within 30 days of receipt of the Defendants' expert reports, the Plaintiffs shall file a motion demonstrating good cause as to why rebuttal experts are necessary. If the Court grants the Plaintiffs' motion, the Defendants may propose a corresponding deadline for surrebuttal experts.

D.  Depositions of the Plaintiffs' experts shall be scheduled and completed first, to be followed by the depositions of the Defendants' experts.

E.  Depositions of Common Issues experts will be complete 120 days after Defendants' expert reports or rebuttal reports, if any, are served.

## IV. Common Dispositive Motion Deadline

A.  Dispositive motions covering common issues may be filed at any time, but shall be filed no later than 90 days after completion of all common issue expert depositions.

B.  Responses to dispositive motions are due 60 days after the motions are filed.

C.  Replies to responses are due 30 days after responses are filed.

## V. Tennessee-Specific Mediation

A.  After the Court enters the order on the final outstanding dispositive motion, the litigation will be stayed for 30 days so that the parties can confer on the possibility of a Tennessee-specific mediation.

B.  The mediation will include all Tennessee plaintiffs, and a mutually-agreeable mediator familiar with Tennessee law will preside.

C.  Upon completion of the 30 day period, the parties will advise the Court as to whether they will pursue such a mediation program.

D.  If the parties decide not to mediate or are unable to reach a settlement during mediation, the suits will proceed with bellwether selection and case-specific discovery, and the Court will set additional deadlines as necessary at that time.

SO ORDERED:

                                                                  Honorable F. Dennis Saylor IV
                                                                   United States District Judge

_____, 2014

5