UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>All Actions | Master File No. 1:13-md-2419-RWZ<br><br>MDL Docket No. 2419 |

### DEFENDANT AMERIDOSE LLC'S BRIEF IN OPPOSITION TO DEFENDANT LIBERTY INDUSTRIES, INC.'S MOTION TO LIFT THE STAY OF DISCOVERY

Defendant Ameridose LLC ("Ameridose") opposes Liberty Industries, Inc.'s Motion to Lift the Discovery Stay with respect to the Affiliated Defendants ("Liberty's Motion"). *See* Docs. 1229, 1229-1.[1] While Ameridose reserves the right to object to any formal discovery requests Liberty might propound if this Court permits discovery, Ameridose states as follows in general opposition to Liberty's Motion:

This Court wisely imposed a stay on all discovery in June 2013[2] because discovery was not necessary in this limited asset case, in which discovery would not increase the asset pool available to claimants, and in which the cost of discovery would exceed its benefit. That was the case in June 2013 and remains the case today. Even the Plaintiffs' Steering Committee ("PSC") has acknowledged, and other parties have represented to this Court, that this litigation involves "a highly limited fund." *See* Joint Status Report of Chapter 11 Trustee, Doc. 971, p. 21.   While many Affiliated Defendants have entered into Settlement Agreements, Ameridose has not. Those discussions are continuing. So all the reasons for granting the stay of discovery still apply to

---

[1] Ameridose has previously submitted oppositions to motions to lift the discovery stay filed by other parties. *See, e.g.,* Doc. 757 (Affiliated Defendants' Opposition to the PSC's Motion to Partially Lift the Stay), and Doc. 1130 (Ameridose's Reply to Tennessee Clinic Defendants' Joinder to Lift the Stay).
[2] On June 28, 2013, this Court entered MDL Order No. 6 which, in part, stayed all discovery in all actions filed in, transferred or removed to this Court. *See* MDL Order No. 6 ("CMO 6"), Doc. 209, pp. 1, 13.

Ameridose. Permitting discovery to go forward will only inure to the benefit of third-party document vendors and attorneys, but will do nothing to increase the amounts of money available to claimants. At the same time, however, Ameridose would most assuredly incur significant costs responding to any discovery Liberty would propound on Ameridose, only to confirm it has no relevant documents to provide to Liberty beyond what it has already informally provided. And the documents Ameridose already provided to Liberty did not contain any information relevant to the condition of the clean rooms at NECC's Framingham facility after 2008 when Ameridose moved to another location. As a result, the discovery stay should therefore remain in effect.

## I. BACKGROUND

The claims against Defendant Liberty Industries, Inc. are based on its alleged design, manufacture, construction, and/or installation of various cleanrooms at New England Compounding Pharmacy, Inc.'s ("NECC") Framingham facility. *See* Liberty's Memo. in Support of its Motion to Lift the Stay ("Liberty's Memo. in Support"), Doc. 1229-1, p. 1. Liberty maintains that discovery from Ameridose and the other Affiliated Defendants is "critical to Liberty's defenses and affirmative claims for indemnity." *Id.* That is demonstrably not the case as to Ameridose, because the records Liberty seeks from Ameridose will not lead to the discovery of admissible evidence. *See* Fed. R. Civ. P. 26(b)(1).

Defendant Ameridose LLC is a separate legal entity from NECC. It operated out of its own facility in Westborough, Massachusetts, approximately 30 minutes away from NECC's facility. It manufactured and distributed drugs different from those NECC compounded (and never compounded MPA), and it operated and maintained its own cleanrooms in its Westborough facility. The documents and information Liberty seeks to discover from Ameridose and the other Affiliated Defendants are specifically related to NECC's facility at 697 Waverly

Street, Framingham, Massachusetts (the "Property"). *See* Liberty's Memo. in Support, Doc. 1229-1, p. 1. Although Ameridose did conduct business at the Framingham facility for a period of time early in the corporate history, Ameridose moved to Westborough in late-2008 and early-2009 – three to four years ***before*** NECC compounded the allegedly contaminated MPA at the heart of this litigation. Furthermore, Liberty acknowledges in its Motion that it seeks documents and information relating to the condition of the Property and work performed at the Property "***after*** Liberty was last at the Property in 2008." *Id.* at p. 5 (emphasis added). Ameridose moved from the Property to its new Westborough location at approximately the same time Liberty last performed work at the Property, in late-2008. Ameridose would not have had any opportunity after 2008 to participate in the operation and/or maintenance of the cleanrooms Liberty designed, manufactured, installed, and/or maintained at the Property because Ameridose did not operate at the Framingham property after 2008. Ameridose was not on those premises for four years before NECC compounded and dispensed the allegedly contaminated MPA in 2012.

During the pendency of the stay, Ameridose and others have cooperated to respond to limited informal discovery requests made by Liberty and other non-affiliated defendants. In fact, on April 24, 2014, Liberty informally requested that Ameridose provide documents evidencing certain construction work Liberty performed at the Property. Liberty apparently has its own construction records but seeks to discover what, if any, changes may have been made after it finished construction at the end of 2008. *See* Liberty's Memo. in Support, Doc. 1229-1, p. 5. Ameridose searched its available database, comprised of approximately 1.4 million emails and attachments and found only a handful of documents (approximately twenty pages) meeting Liberty's requests, which it informally produced to Liberty on May 12, 2014. Many of the documents resulting from Ameridose's database searches related to Ameridose's operations at

3

Westborough (after its move from Framingham in late-2008), or identified "Liberty" in a way totally unrelated to Liberty Industries, Inc. For example, a query of the entire Ameridose database using only the word "Liberty" returned dozens of Ameridose Visitor Attendance Logs that identified visitors driving Jeep Liberty vehicles, as well as customer contact lists in which customers' offices were located on Liberty Street or in Liberty city/town. What was not found were documents regarding the cleanrooms in Framingham after Ameridose moved to Westborough.

Ameridose's available database consists of only a small portion of its records; the majority of the company's records have not been processed – and therefore are not searchable – for document production purposes because of the extraordinary discovery costs associated with such processing. *See* Ameridose's Reply to Tennessee Clinic Defts.' Joinder in the PSC's Motion to Partially Lift the Discovery Stay ("Ameridose's Reply to Tenn. Clinic Defts.' Joinder"), Doc. 1130, p. 3.

## II. LEGAL ARGUMENT

### A. The Discovery Stay Should Remain in Effect Since Not All the Affiliated Defendants Have Settled.

Liberty's assertion that all Affiliated Defendants have "already agreed to settle for almost $100 million, executed the necessary documents, and are awaiting approval of the settlement by the Bankruptcy Court" is incorrect. *See* Liberty's Memo. in Support, Doc. 1229-1, p. 4. Ameridose has not yet settled with the NECC Estate, but continues to engage in good faith discussions that may lead to a settlement as it relates to Ameridose. Furthermore, Liberty's argument that it was not a party to this litigation when CMO 6 was entered and all discovery stayed is irrelevant. *Id.* at p. 5. Settlement discussions have been ongoing, with the common goal

4

to attempt to preserve financial resources for the benefit of a settlement. *See, e.g.,* Ameridose's Reply to Tenn. Clinic Defts.' Joinder, Doc. 1130, pp. 3-4.

Ameridose's primary concern with efforts to lift the discovery stay has been, and continues to be, that forcing Ameridose to participate in costly and time-consuming discovery would deplete its limited resources and potentially disrupt the effort to achieve a settlement with the NECC estate. Routine discovery tasks – specifically, the processing, organization, and review of electronic documents – have been deferred as a result of the stay and requiring Ameridose to perform these tasks will likely negatively impact and disrupt settlement efforts. Proceeding now with discovery will require Ameridose to allocate resources to discovery, which negates entirely the parties' overall goal of the discovery stay: to preserve limited financial resources for contribution to any potential settlement agreement.

> **B.    The Documents and Information Liberty Seeks Are Not Likely to Lead to the Discovery of Admissible Evidence.**

In its Motion, Liberty argues that the stay should be lifted to give Liberty access to documents and information relating to the Property – and specifically relating to the cleanrooms Liberty designed, constructed, installed, and/or maintained. *See* Liberty's Memo. in Support, Doc. 1229-1, p. 1. Liberty also argues it "will be prejudiced if it is unable to discover information from those believed to be the most knowledgeable about the information critical to Liberty." *Id.* at p. 4. But the facts are that:

- Ameridose ceased its operations at the Property in late-2008 or early-2009, which is three to four years before NECC compounded and distributed the allegedly contaminated MPA;

- Ameridose has had no opportunity to participate in the maintenance of the Liberty-designed and -installed cleanrooms about which Liberty now seeks documents and information;

- The documents Ameridose recently informally produced to Liberty confirm that it

5

    does not have relevant documents and/or information bearing on the clean rooms at the Framingham facility after 2008.

There is no reason the discovery stay should be lifted as to Ameridose.

   **C.** **If the Stay is Lifted, Ameridose Would Incur Significant Costs to Respond to Any Discovery Propounded By Liberty.**

   Liberty asserts that there would be no significant cost issues if the discovery stay is lifted, but it offers no support for this assertion. *See* Liberty's Memo. in Support, Doc. 1229-1, p. 4.  In fact, there would be significant expenses borne by Ameridose should the stay be lifted and Ameridose be required to process, organize, review for privilege, and prepare for production its entire document repository. In its Reply to the Tennessee Clinic Defendants' Motion to Partially Lift the Discovery Stay, Ameridose suggested that the costs of performing those document-related tasks would exceed $500,000. *See* Ameridose's Reply to Tenn. Clinic Defts.' Joinder, Doc. 1130, p. 4. Although Ameridose can present more detail if the Court allows discovery to proceed, more recent estimates put that figure at well over $1 million. That is an extraordinary sum to spend to prepare and produce documents that likely will shed no more light on the post-2008 condition of the Property than those already provided to Liberty in May 2014. A cost-benefit balancing of these factors only confirms that the stay should remain in effect. Permitting formal discovery to go forward would be unduly burdensome to Ameridose at this juncture.

**III. CONCLUSION**

   For the reasons stated above, Defendant Ameridose LLC requests that Defendant Liberty Industries, Inc,'s Motion to Lift the Discovery Stay with Respect to the Affiliated Defendants (Doc. 1229, 1229-1) be DENIED, and the stay set forth in MDL Order No. 6 (Doc. 209) remain in effect until further order of this Court.

Dated: July 11, 2014                           Respectfully submitted,

                                               TUCKER ELLIS LLP

                                               */s/ Richard A. Dean*
                                               Richard A. Dean
                                               Matthew P. Moriarty
                                               TUCKER ELLIS LLP
                                               950 Main Avenue, Suite 1100
                                               Cleveland, OH  44113-7213
                                               Telephone:    216.592.5000
                                               Facsimile:    216.592.5009
                                               richard.dean@tuckerellis.com
                                               matthew.moriarty@tuckerellis.com

                                               *Counsel for Defendant Ameridose LLC*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July 11, 2014, a true and exact copy of the foregoing was filed with this Court's CM/ECF filing system, thereby providing electronic notice to those counsel of record listed who are registered users of the system and that paper copies will be sent by first-class mail to those indicated as non-registered participants, if any.

*/s/ Richard A. Dean*
Richard A. Dean

*One of the Attorneys for Defendant Ameridose LLC*