UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEW ENGLAND COMPOUNDING PHARMACY, INC.  PRODUCTS LIABILITY LITIGATION | MDL No. 2419<br>Dkt. No. 1:13-md-2419-RWZ |
| THIS DOCUMENT RELATES TO:<br><br>All Actions | |

**OPPOSITION TO LIBERTY INDUSTRIES' MOTION TO LIFT DISCOVERY STAY**

Medical Sales Management Inc., GDC Properties Management LLC, Douglas Conigliaro, Carla Conigliaro, Gregory Conigliaro, Glenn A. Chin, Barry Cadden and Lisa Cadden (collectively the "Defendants") hereby oppose Liberty Industries Inc.'s ("Liberty") Motion to Lift the Discovery Stay ("Liberty's Motion"). As more fully set forth below, Liberty has failed to show that good cause exists warranting the lifting of the stay.

Rather than unnecessarily adding to the volume of filings before the Court by repeating arguments other parties have made in support of their oppositions to Liberty's Motion, Defendants incorporate by reference Defendant Ameridose, LLC's Brief in Opposition to Defendant Liberty Industries, Inc.'s Motion to the Stay of Discovery [Dkt. No. 1262], and also request that the Court consider the following four additional reasons why Liberty's Motion should be denied.

First, perhaps the most significant motivating factor behind the stay of discovery (as set forth in CMO 6) is the notion that before discovery proceeds, the scope of necessary discovery

1

should be known. That has been an important factor because all parties agree that available resources should not be depleted by the costs associated with the drafting, serving and objecting to discovery requests that may ultimately prove unnecessary. That overarching basis is as valid today as it was when the discovery stay first was entered. During the pendency of the stay, Defendants have worked diligently towards resolving claims—while at the same time either directly, or indirectly, participating in informal discovery. As the Court is aware, if the Bankruptcy Court approves the Trustee's motion for approval of the various settlement agreements that have been reached, the need for a substantial portion of what ordinarily would be necessary discovery will be eliminated. Thus, until the Bankruptcy Court rules on the Trustee's various motions relating to the proposed settlement agreements, this Court's initial desire to ascertain the scope of necessary discovery, before considering whether to lift the stay, and if so, to what extent to lift it, should continue to guide the Court's approach.

Second, Liberty's claim that the existence of a declaratory judgment action (seeking a ruling that there is no insurance coverage for the claims brought against Liberty) warrants Liberty being treated differently than other parties is wholly unsupported. In fact, Liberty's own description of the expected timetable of disposition of the declaratory judgment action supports Defendants' position that the stay should remain in effect. Specifically, on page 2 of Liberty's Memorandum of Law in Support of its Motion to Stay, Liberty states that it expects that "the DJ Action will be resolved **within 15 months** after issue is joined…." [Dkt. No. 1229-1, p. 2 (Emphasis supplied). Therefore, while Defendants recognize Liberty's concern as to the possible consequences of the declaratory judgment action generally, the date on which that matter will be disposed is hardly imminent. Thus, even accepting Liberty's 15-month assessment, Liberty's own argument supports the proposition that there is no need to rush ahead of the proceedings in

the Bankruptcy Court by singling out Liberty as requiring special treatment in discovery. If the declaratory judgment action will be resolved in 15 months, waiting until the Bankruptcy Court rules on the proposed settlement agreements, before permitting discovery of Defendants, certainly will not prejudice Liberty.  Accordingly, and for the reasons addressed in Ameridose, LLC's brief, Liberty has failed to show good cause for lifting the stay at this time.

Third, Liberty proposes lifting the stay now – before the Bankruptcy Court rules on the Trustee's motion for approval of the settlement agreements.  This would place the Affiliated Defendants in the untenable position of responding to discovery, before knowing whether they were defendants in the underlying cases, with substantial potential exposure, or whether they were released nonparties.  The difference between those two statuses is stark, and significantly affects strategy and preparation.  It would be unfair to the Affiliated Defendants, and premature, to require them to provide discovery when they did not know whether they were doing so as defendants or as released nonparties. [1]

Fourth, Liberty's attempt to distinguish the line of cases previously cited by the Affiliated Defendants (in support of a previously filed Opposition to the PSC's efforts to lift the Discovery Stay-*See* Docket 757) and Liberty's argument relating to the potential invocation of 5th Amendment rights are both misplaced. At this juncture, the stay should remain in place so that the Court can ascertain the universe of necessary discovery before allowing any discovery to proceed against Defendants. But that rationale has no relation to the state of the law regarding invocation of 5th Amendment rights and permissible adverse inferences. In other words, the five

---

[1] Although there is substantial support by disparate parties for approval of the settlement by the Bankruptcy Court, there are also numerous objections that have been filed.  Although the Affiliated Defendants do not believe those objections should prevail, the Bankruptcy Court will consider them all.  Until the Bankruptcy Court does so, and rules on the motion, there is inherent uncertainty as to whether the Defendants will remain defendants, or become released nonparties, in these proceedings.

factors previously cited by Defendants, used by courts to evaluate whether good cause exists to grant or lift a stay, are completely applicable to this matter.[2]

However, even at this stage, Liberty should not be allowed to leave the Court with the impression that staying discovery turns on whether Indictments have been returned. While it may be more common to grant stays of civil actions after an indictment has been returned, it is not uncommon to issue one pending a grand jury investigation, so long as the court is satisfied that the possibility of an indictment is not remote. *See* Zavatsky v. O'Brien, 902 F. Supp. 2d 135, U.S. Dist. (D. Mass. 2012) (in civil case relating to Probation Department's corrupt hiring practices, court allowed unindicted defendant's motion for stay where co-defendant had already been indicted); *See* Nage v. Mulligan, 849 F. Supp. 2d 167, 2012 (D. Mass. 2012) (in a second case relating to Probation Department's hiring practices, the court concluded that the "interests of justice" would be promoted if the action were stayed "pending the outcome of state and federal grand jury investigations and any prosecutions which may follow").

Numerous courts in other jurisdictions have concluded that the lack of an indictment does not preclude a stay where there is reason to believe that an indictment will issue. "A stay in a civil proceeding prior to an indictment remains within a 'court's inherent powers.'" *See* Doe v. Sipper, 869 F. Supp. 2d 113, 116-117 (D.D.C. 2012) (citing S.E.C. v. Healthsouth Corp., 261 F. Supp. 2d 1298, 1327 (N.D. Ala. 2003)). "The fact that an indictment has not yet been returned—while it may be a factor counseling against a stay of civil proceedings—does not make

---

[2] (Those factors are: (1) the interests of the plaintiff in proceeding expeditiously with the litigation, including the avoidance of any prejudice to the plaintiff should a delay transpire; (2) the burden that any particular aspect of the proceedings may impose on the defendant; (3) the convenience of the court in the  management of its cases, and the efficient use of judicial resources; (4) the interests of third parties; and (5) the public interest. Microfinancial, Inc., v. Premier Holidays Int., Inc., 385 F.3d 72, 77 (1st Cir. 2004).

consideration of the stay motion any less appropriate." *See* Brock v. Tolkow, 109 F.R.D. 116, at 129=0 n.2 6 Employee Benefits Cas. (BNA) 2673 (E.D.N.Y. 1985) . Circumstances where a stay is appropriate despite the absence of an indictment include those where, as here, "the Government is conducting an active parallel criminal investigation." *See* Walsh Sec. v. Cristo Prop. Mgmt., 7 F. Supp. 2d 523, 1998 D.N.J. 1998). Because a party may appropriately invoke the Fifth Amendment whenever there is a "realistic threat of incrimination" as opposed to a mere "imaginary" or "fanciful" threat or prosecution, a stay is appropriate even absent an actual indictment. *See* United States v. Certain Real Property & Premises, 751 F. Supp. (E.D.N.Y. 1989) (although no indictment, "[t]he possibility that Laura Newton might be forced to incriminate herself in the forfeiture action strikes the court as being neither 'fanciful' nor 'imaginary.'"). In Chao v. Fleming, 498 F. Supp. 2d 1034, (W.D. Mich. 2007), the court "declined to consider [the lack of an indictment] as weighing against a stay." *Chao*, 498 F. Supp. 2d at 1038.  *See* SEC v. Healthsouth Corp., 261 F. Supp. 2d 1298, (N.D. Ala. 2003) (granting pre-indictment stay where the indictment was "an eventuality" and "the harm to defendant… from blindly pushing ahead with this matter [would] greatly outweigh the prejudice to the SEC from a stay of this civil proceeding"); Walsh Securities, Inc., 7 F. Supp. 2d at 527 (granting pre-indictment stay where government had executed search warrants and issued subpoenas to several defendants, and defendant informed that they were targets of criminal investigation).  The District of Colorado allowed a defendant's motion for a stay of his deposition until the grand jury determined whether to indict him, so as to permit him to "make an informed decision as to whether to assert his Fifth Amendment privilege" rather than having to "blindly choose whether to assert his constitutional right and thereby impair his civil defense, or waive his right and risk a criminal indictment." *See* S.E.C. v. Power Securities Corp., 142

5

F.R.D. 321, 323 (D. Colo. 1992). Thus, Liberty's suggestion that the issue of lifting the stay turns on whether Indictments have been returned is unpersuasive.

Finally, Defendants request the court take no action on Liberty's Motion until oral argument is heard at the next scheduled status conference on August 7, 2014.

WHEREFORE, Defendants pray that Liberty's Motion be DENIED.

/s/ Dan Rabinovitz
Dan Rabinovitz, Esq.
MICHAELS, WARD & RABINOVITZ, LLP
One Beacon Street, 2nd Floor
Boston, MA 02108
(617) 350-4040
dmr@michaelsward.com

*Counsel for Medical Sales Management, Inc and Medical Sales Management SW, Inc.*

/s/ Robert H. Gaynor
William J. Dailey, Jr., Esq.
Robert H. Gaynor, Esq.
SLOANE & WALSH, LLP
Boston, MA 02108
(617) 523-6010
wdaileyjr@sloanewalsh.com
rgaynor@sloanewalsh.com

*Counsel for Individual Defendants Barry Cadden, Lisa Conigliaro-Cadden, Doug Conigliaro, Carla Conigliaro, Greg Conigliaro, and Glenn A. Chin*

/s/ Joshua A. Klarfeld
Joseph P. Thomas, Esq.
Joshua A. Klarfeld, Esq.
ULMER & BERNE, LLP
600 Vine Street, Suite 2800
Cincinnati, OH 45202
(513) 698-5000
jthomas@ulmer.com
jklarfeld@ulmer.com

*Counsel for GDC Properties Management, LLC*

6

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 11, 2014, a true copy of the foregoing was filed in accordance with the Court's Electronic Filing Guidelines and will be sent to all counsel of record by operation of the Court's electronic filing system.

/s/ Daniel M. Rabinovitz