UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

In re:

NEW ENGLAND COMPOUNDING PHARMACY, INC.,

Chapter 11
Case No. 12-19882-HJB

Debtor

**CREDITOR'S REPLY TO CHAPTER 11 TRUSTEE'S RESPONSE TO MOTION TO TRANSFER DEFENDANT(S) CEO BARRY CADEN, AND NEW ENGLAND COMPOUNDING CENTER, TO THE MULTI-DISTRICT LITIGATION COURT IN THE DISTRICT OF MASSACHUSETTS**

COMES NOW the, Creditor, Darrel Cummings, pro se, pursuant to Chapter 11 Trustee's Response and hereby submits his **Reply Motion to Transfer** Defendant(s) CEO Barry Caden and New England Compounding Center to the United States District Court in and for the District of Massachusetts, Eastern Division, from the United States District Court, Southern District of Florida, and states the following in support:

## STATEMENT OF FACTS

On February 12, 2013, the JPML entered an order transferring action to the District Court. The ("District Court") for consolidated pretrial proceedings in the MDL proceeding. See: In re New England Compounding Pharmacy, Inc., Products Liability LITG., "MDC" No. 2419 (JPML)(The "JPML" proceedings [MDL No. 2419, Dkt. No. 119].

If the Court would review the "Florida Court's" docket for the "Cummings Action" Case No. 9:12-cv-81413-Dimitrouleas-White, it would discover that on February 15, 2013, prior to the

"JPML" evaluation of the "Cummings Action," The Honorable Magistrate Judge P.A. White dismissed the CEO of the New England Compounding Center [Doc. 11].

On February 21, 2013, it was alleged by the Chapter 11 Trustee's Office: "the 'Cummings Action' was subsequently included in a notice of potential tag-alone actions submitted to the 'JPML,' but the 'JPML' denied the 'Cummings Action' sua sponte, having concluded that his action was not appropriate for inclusion in the MDL pursuant to Rule 7.1(b)(i).'"

However, it is undetermined how the "Cummings Action" was considered a tag-alone action, when it was actually a pre-petition action filed in the Southern District of Florida (The "Florida Court"), prior to the petition date of December 21, 2012. Moreover, it is further undetermined what type of evaluation was made upon the "Cummings Action" by the "JPML," in denying the action as not being appropriate for inclusion into the "MDL". Nonetheless, what is apparent is the date of the "JPML" evaluation of the "Cummings Action" taken on February 21, 2013.

The "JPML" dismissed the "Cummings Action" as not being appropriate for inclusion in the MDL, during the relevant period of February 12, 2013 thru February 21, 2013 of the evaluation of all pending actions to be transferred in to the MDL. "The Cummings Action" had been recommended to be dismissed for lack of jurisdiction by the Florida Court on February 15, 2013; yet, this was only a recommendation, not a dismissal.

Thus, immediately after Creditor received the response, from the United States Chapter 11 Trustee, on March 5, 2014, forwarding Creditor document [971], regarding his inquiry about the status of the case. Creditor, on March 14, 2014, after the first notice of Transfer Motions,

immediately filed his Motion to Remove and/or Transfer Defendants CEO, New England Compounding Center to the Bankruptcy Court in the District of Massachusetts.

On May 15, 2014, Creditor received a notice, Dated May 8, 2014, from the Chapter 11 Trustee stating, ". . . 9019 Motions [Docket No. 715] will be held on Friday, May 30, 2014 at 10:00 am." Further, the notice stated, "the above-referenced order modifies and supersedes the prior notice of none-evidentiary hearing entered by the Bankruptcy Court on May 7, 2014 [Docket No. 717], scheduling the hearing for May 27, 2014 at 2: pm. Accordingly, the May 27, 2014 hearing has been cancelled."

Creditor neither received [Docket No. 715], [Docket No. 717], nor any other notice of hearings to be held on May 27, 2014. [Docket No. 718], which Creditor received was forwarded incomplete (Simply one page of a thirty-five (35) page document)). This is the issue in which Creditor has been subjected to and has created controversies, prohibiting Creditor's claims from being removed and/or transferred to the multi-district litigation court in the District Court of Massachusetts.

On May 20, 2014, the Creditor Darrel Cummings filed Objections to the Chapter 11 Trustee's Motion for Order Designating Manner of Service of 9019 Motions and Approving Form and Manner of Service of Notice of Hearings on 9019 Motions.

On May 30, 2014, a hearing was held in the United States Bankruptcy Court where the United States Trustee presented his objections to the Court in regards to Creditor's Transfer Motion. However, none of the Trustee's objections was of any merits, with the exception of the venue pertaining to the Transfer of the "Cummings Action" from the United States District Court of Florida, to the United States District Court of Massachusetts.

At the hearing, Creditor appeared telephonically, on the face of the record, and informed the Court the U.S. Chapter 11 Trustee was **not** serving him notice pertaining to all the pleadings and proceeding, which the Transfer Motions became the topic of debate. This created a plethora of controversy about the removal and transfer of Creditor's case to the Multidistrict Court in the District of Massachusetts.

At the hearing, the Creditor sternly refuted the trustee's objections to his motion [Doc. 704]. On the face of the record, the Honorable U.S. Bankruptcy Judge Henry Boroff referred the "Cummings Action" to the Multi-District Litigation. He then ordered the Chapter 11 Trustee to forward Creditor all appropriate documents pertaining to the pending litigation to include the mailing address and telephone number for the chamber of Judge Rya Zobel of the United States District Court for the District of Massachusetts, presiding over NECC'S MDL. Last, he ordered the Creditor to submit the proper motion to have his case transferred to the United States Multi-District Court for the District of Massachusetts. **(See Exhibit "A" Certificate of Compliance with Bankruptcy Court Direction as to Creditor Darrel Cummings).**

## ARGUMENT

### I. Plaintiff Filing Against NECC Does Not Violates the Automatic Stay Imposed

On December 20, 2012, Creditor commenced his civil rights action under 28 USC §1983 with an incorporated Florida State Law Tort claim ("The Cummings Action"). The "Cummings Action" filed prior to the subsequent shutdown of operations and the magnitude of the personal injury claims against NECC, which resulted in the company filing for relief under Chapter 11, on December 21, 2012. In ***Haag v. State, 591 So. 2d 614, 617 (Fla. 1992),*** the Supreme Court

held, ("The mail box Rule of Florida that, when a prisoner place legal mail into the hands of correctional official for mailing, that mail is deemed filed at that time, not from the time the court receives the mail."). Thus, the Creditor's claim was filed on December 20, 2014.

Shortly thereafter, on December 26, 2012, the United States District Court for the Southern District of Florida received and docketed "The Cummings Action" against CEO Barry Caden and the New England Compounding Center under Florida State Law Tort, and certain other correctional officials, under §1983, in Case No. 12-81413 (S.D. Fla. December 27, 2012)("The Florida Court") [Doc. 1].

On December 28, 2012, the Florida Court issued a Notice of Stay by Reason of Bankruptcy by New England Compounding Center (Bavol, Charles). (Doc. 6).

On February 15, 2013, the Florida Court Magistrate Judge issued a Report and Recommendations on 42 USC 1983 case re 1 Complaint, filed by Darrel Cummings. Recommending 1. Claims for denial of adequate medical treatment continue against Drs. Dauphin and Heller, and against Dr. Heller for retaliation. 2. Claims against Warden Levins, Finnisse, Dr. Lins and Officer McIntire, and the CEO of New England Compounding Center be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted. Objections to R&R due by 3/4/2013 Signed by Magistrate Judge Patrick A. White on 2/5/2013. (Doc. 11).

On March 1, 2013, Creditor/Plaintiff filed objections to the Magistrates Report and Recommendation stating in part, "The contaminated injections left Plaintiff in excruciating pain 3× worse, disable and confine to a wheel chair. This issue is coupled with severity of injury, the interference, delay, prolonging and denial of adequate treatment. Plaintiff has filed claim against NECC, Corporation in the United States District Court of Florida, because the opposing party

principle place of business is diversely in Massachusetts. Further, the matter of controversy exceeds the sum or value of 75,000.00 exclusive of interest and cost. . . . **This most Honorable Court could retain diversity jurisdiction over all possible state law claims and liberally grant Plaintiff leave to construe allegations in complaint by amendment**. Because as the magistrates report has correctly pointed out, this is "a State tort for negligence . . . However, relief could be found in the United States Court if permitted to incorporate claims, if the U.S. Court respectfully retained jurisdiction. . . ." [Doc. 14].

In response to Plaintiff's objection, on March 13, 2013, the Honorable District Court Judge W.P. Dimitrouleas stated, The ***Honorable United States District Judge W.P. Dimitrouleas*** stated in part:

> ". . . Judge White dismissed the claim against the New England Compounding Center, the Company potentially liable for contaminating the epidural shot with fungal meningitis. [Magistrate] Judge White said that the claim was a state law claim. That is true, but this court can have jurisdiction over state law claims under 28 U.S.C. §1332 for diversity or 28 U.S.C. 1367 for supplement claims. The court therefore finds that the claim should not be dismissed for lack of jurisdiction, but does continued to stay the action as to New England Compounding center due to its bankruptcy. See: [DE 6]". Doc. 18 p. #9. Leave was then **granted** to amend.

Thereafter, on March 25, 2013, Plaintiff submitted an amended complaint adding a Tort Claim for negligence against NECC. This filing against NECC did not violate the automatic stay imposed by 11 U. S. C. § 362(a), and is thus not void. See: In re Harrow Leasing Corp. (1983, BC ED Pa) 32 BR 688 ( . . . motion for leave to amend . . .seeking relief from automatic stay imposed by 11 USCS § 362(a) . . . shall be freely granted when justice so requires . . .); United States Abatement Corp. v. Mobile Exploration & Prod, 39 F. 3d 563 (Nov. 23, 1994)("The automatic stay of 11 U. S. C. S. § 362 (a) extends only to actions 'against the debtor,' which are subject to the automatic stay. If a debtor's offensive claims are not subject to the automatic stay,

a fortiori a creditor's motion to reinstate and seek summary judgment of such non-stayed claims is not subject to the automatic stay . . .).

***Pursuant to Fed. R. Civ. Proc. Rule 15(c):***

> **(c) Relation Back of Amendments.**
>
> (1) When an Amendment Relates Back. An amendment to a pleading relates back to the date of the original pleading when:
> (A) the law that provides the applicable statute of limitations allows relation back;
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out-or attempted to be set out-in the original pleading; or
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

Even were Creditor's complaint to be considered a post-petition filed after the "Petition Date" of December 26, 2012, Creditor will still have a valid claim against NECC where hundreds of petitions were filed after the "Petition Date" and were included in the MDL for the purpose of judicial resolution.

In re NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION. 2013 U.S. Dist. LEXIS 76739 MDL No. 1:13-md-2419-FDS

May 31, 2013,the Honorable Judge Saylor held the following in

> "Since the date of the initial transfer order, the JPML has transferred to this Court more than 100 "tag-along" cases that had been pending in other federal district courts. The Court has no reason to believe that any federal cases that are the subject of the trustee's transfer motion will not receive similar treatment from the JPML and be transferred to this Court in due course. However, should the situation arise that a case pending in federal court, over which this Court could properly exercise related-to jurisdiction, is not transferred by an order of the JPML, this Court will presumably act to assert jurisdiction over it. Until the Court is made aware of such a situation, it will simply await the JPML's transfer orders

for any cases now pending in other federal courts or that are in the process of being removed."

The "Cummings Action" pending in the Southern District Court of Florida, presents such a situation.

Therefore, Creditor/Plaintiff amended complaint pled a viable cause of action against NECC and Barry Caden to which the Southern District Court of Florida retains jurisdiction. (Doc. 18). Creditor's claims are still currently pending in the "Florida Court" and are valid, which does not violate the automatic stay, but supports a legitimate basis for transfer to the MDL, as Creditor has asserted viable claims of product liability and negligence against the above named defendants. Therefor, as Creditor's pleading against NECC and Barry Caden are valid. There is a substantial basis for transfer to the MDL as Creditor has a valid Complaint pending in the United States Southern District Court of Florida, which has retained jurisdiction to litigate this complaint.

## II. The MDL Court is the Proper Venue to Litigate Plaintiff's State Law Tort Claim for Product Liability and Negligence

Plaintiff seeks to transfer his action from the Florida Court to the MDL Court to litigate his ***State Law Tort claims***. Because the MDL Court is the proper forum in which to litigate his State Law Tort claims for product liability and negligence, which consist of the following allegations:

The orthopedic specialist, Dr. Robert Lin, M.D., who was **not** a correctional physician, but outside specialists, contracted by South Bay Correctional Facility, administered three (3) epidural steroid injections on Creditor. These epidural injections were administered on April 11, 2012, **August 1, 2012** and on **August 22, 2012** at the Wellington Regional Medical Center.

First, the plausible connection to NECC is the dates of August 1, 2012 and August 22, 2012. These last two injections were administered during the contaminated periods of **July-September 2012**.

Second, the medical records obtained from Wellington Regional Medical Center, which were in regards to the administered medication used in the epidural injections for the above-mentioned dates, disclosed: ***Methylprednosolone acetate/Depo-medrol***. On August 1, 2012 and August 22, 2012, this was the contaminated medication distributed by NECC, and the exact medication that Dr. Lins informed Creditor was recalled by the company out of an abundance of precaution.

In Re: New England Compounding Pharmacy Inc., Products Liability Litigation. 2013 U.S. Dist. Lexis 76739 MDL No.1:13-md-2419-FDS, May 31, 2013, the Court held,

> "In February 2013, the Judicial Panel on Multidistrict Litigation ("JPML") issued an order under 28 U.S.C. 1407 transferring various federal-court proceedings to this Court for coordinated and consolidated pretrial proceedings. Subsequent orders of the JPML have transferred other "tag-along" cases to this Court. The matters transferred to this Court typically named additional defendants other than NECC, including certain of its officers and shareholders and certain affiliated corporations. 28 U.S.C.§1407(a), Specifically provides that, "(a) When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions. Each action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated. . . ."

Further, 28 U.S.C. § 1407, Specifically provides in section (c) "Proceedings for the transfer of an action under this section may be initiated by--(i) the judicial panel on multidistrict litigation upon its own initiative, or (ii) motion filed with the panel by a party in any action in which transfer for coordinated or consolidated pretrial proceedings under this section may be appropriate. A copy of such motion shall be filed in the district court in which the moving party's action is pending. The panel shall give notice to the parties in all actions in which transfers for coordinated or consolidated pretrial proceedings are contemplated, and such notice shall specify the time and place of any hearing to determine whether such transfer shall be made. Orders of the panel to set a hearing and other orders of the panel issued prior to the order either directing or denying transfer shall be filed in the office of the clerk of the district court in which a transfer hearing is to be or has been held. The panel's order of transfer shall be based upon a record of such hearing at which material evidence may be offered by any party to an action pending in any district that would be affected by the proceedings under this section, and shall be supported by findings of fact and conclusions of law based upon such record. Orders of transfer and such other orders as the panel may make thereafter shall be filed in the office of the clerk of the district court of the transferee district and shall be effective when thus filed. The clerk of the transferee district court shall forthwith transmit a certified copy of the panel's order to transfer to the clerk of the district court from which the action is being transferred. An order denying transfer shall be filed in each district wherein there is a case pending in which the motion for transfer has been made."

It was evident from this belated notification that the "Cummings Action" would have squarely fell into category **(1) cases pending in other federal courts that have not yet been transferred [to the multidistrict litigation court in Massachusetts].** See: 28 USC §§1334 and

157(b)(5); In re New England Compounding Pharm. Prods. Liab. Litig., 496 B.R. 256, 262 (D. Mass. 2013)(The transfer motion was granted as to cases falling within the following categories: (1) Cases against NECC or its affiliated defendants pending in other federal courts…).

The instant case is actually titled: Cummings v. New England Compounding Center et. al., Case No. 12-81413 (SD FLA. 2012). This Caption also includes CEO Barry Caden, which affiliated defendants are pending before the United States Southern District Court of Florida.

However, Creditor was never notified of the proceedings held on the transfer motions submitted by the Trustee on March 10, 2013, and was further excluded from the transfer opinion issued by this court on March 31, 2013. [MDL Doc. No. 170].

This was done despite the fact that he was a known Creditor whose identity and claim was known to the debtor who served him a stay as early as December 28, 2012. See: [Doc. 6 "The Florida Court"].

In the instant case, it is undisputed that creditor was "known" for the purpose of receiving notice of transfer motions from the Trustee, opinions from the "JPML", the Bankruptcy and the District courts in a timely manner. However to the contrary very material and relevant documents were excluded from notice and has cause extreme prejudice to the creditors' claims, transfer to the MDL, and to be considered as part of the settlement plan.

Contrary to the Trustee's assertions, "*inclusion in the MDL is not appropriate simply because a plaintiff names NECC or an affiliated party in their lawsuit*," the Creditor submits that his State Law Tort claims are of the same subject matter as those pending in the MDL. Specifically, where he was administered the contaminated: **Methylprednosolone acetate/Depo-medrol** on the following dates August 1, 2012 and August 22, 2012.

The Creditor clearly stated that the he was experiencing three (3) of the symptoms listed in the above medication upon reception of the letter, October 5, 2012, received from Dr. Lins: burning in the ankles and legs, headaches, worsen spine pain, and unusual symptoms.

Nevertheless, on May 15, 2013, Dr. Robert Lins misconduct became evident that he was not being candid about the medication in question that led to infections of the fungal meningitis disease. In that he knew, he had administered the contaminated methylprednosolone acetate/depo-medrol in Creditor's lumber injection shots and concealed these facts. As these facts were clearly apparent from the medical records obtained from the Wellington Regional Medical Center on May 15, 2013. **(See Exhibit "B" Creditor's Medical Records from the Wellington Regional Medical Center).**

Moreover, although Dr. Lins was dismissed, previously, from (Doc. 18), he's been renamed as a defendant in light of the new evidence discovered: On May 15, 2013, that misconduct became clear evident that Dr. Robert Lins was not being candid about the medication in question that led to infections of the fungal meningitis disease. In that he knew, he had utilized the methylprednosolone acetate/depo-medrol in the Creditor/Plaintiff's lumber injections and negligently concealed those facts.

Ironically, considering that the Trustee used sham-speculations and unfounded allegations to object to the Creditor's transfer motion, the above facts refute and contradict those accusations.

Dr. Lins on October 5, 2012 informed the Creditor that there were no documented infections with (the medication) use. There was no way Dr. Lins could have known the Creditor was not injected with the contaminated medication because based on the data released on October 1, 2012, the MDPH issued a formal quarantine notice pursuant to M.G.L. ch. 94C, §§ 13

& 189a, and M.G.L. ch. 112, §§ 30 & 42A, requiring NECC to preserve all products used to compound MPA, including products returned from pharmacies.

Further, upon information and belief, in response to October 2, 2012 findings from the United States Food and drug Administration ("FDA") and the MDPH, the Massachusetts Board of Registration in Pharmacy the (the "Board") voted to request a voluntary surrender of NECC'S pharmacy license. NECC surrendered its Massachusetts license, effective at noon on **October 3, 2012**, and further instituted a voluntary recall of all of its intrathecal medications, which are designed for injection near the spinal cord or brain.

NECC, recalled three lots of steroid to include Methylprednosolone acetate in a effort to determine which vial lots were contaminated. The Center for Disease Control had not discovered which lot of medication was contaminated for Dr. Lins to have made a determination about the injection medication in question not being contaminated.

Upon reception of Dr. Lins' letter on October 16, 2012 dated on October 5, 2012, Plaintiff was previously being housed in the facilities medical infirmary as he had collapsed on October 4, 2012 and on October 8, 2012, as he had lost all his ability to stand or walk, and was experiencing excruciating pains do to the contaminated medication.

Yet, Dr. Lins concealment of the fact that he had not administer the contaminated medication to Creditor/Plaintiff, hindered the Creditor/Plaintiff from receiving treatment for the deadly disease for months, leaving him to borderline paralysis.

The State Tort Law claims asserted by the Creditor does bear substantial relation to the personal injury cases properly joined in the MDL, and thus should be permitted to join.

The District Court is overseeing efforts to resolve claims against [NECC] for serious personal injury or wrongful death claims and compensate victims like Mr. Cummings who have suffered significant damage and pain for years and is still suffering. Creditor/Plaintiff's Amended Complaint, specifically, asserts a state tort, for negligence/product liability [Doc. 48], to which "The Florida Court" retained jurisdiction [Doc. 18]. The Creditor should be permitted to be joined into the MDL, with the other Chapter 11 case through which the limited estate resources will be distributed to him. As he has suffered, equal to, or as greater than most of the victims, with the exception of those who died and their families, because of this disaster to which the estate resources should have been in excess, considering all the people that were hurt and killed. See e.g., Jeremiah v. Richardson, 148 F.3d 17 (1st Cir. 1998); In re Genesis Health Ventures, Inc., 266 B.R. 591, 619 (BankR. D. Del. 2001)(settlements are favored because they serve to minimize litigation, provide a means for efficient resolution of disputes, and help to expedite the administration of the bankruptcy estate).

**Conclusion**

For all the foregoing reasons, the Creditor respectfully request this Honorable Court **grant** his Motion and Transfer this case to the MDL in the interest of justice, or in the alternative remove the stay so that this case may proceed in "the Florida Court," and/or any other relief the court deems just and/or proper. See Id. NECC n5:

Respectfully Submitted,

Darrel Cummings DC# 088532

I HEREBY CERTIFY that a true and correct copy was furnished to Counsel for Paul D. Moore (Frederick H. Fern, Esq. and Judi Abbott Curry, Esq.) at 100 Wall Street, 23rd Floor, New York, New York 10005 on this 10th day of July 2014 by Placement into the hands of Correctional Official for mailing via U.S. Mail.

cc: United States District Court
Southern District of Florida

Darrel Cummings, #088532
South Bay Corr. Fac.
P. O. Box 7171
South Bay, FL 33493