# **EXHIBIT D**

```
                       UNITED STATES DISTRICT COURT
                        DISTRICT OF MASSACHUSETTS



IN RE:  NEW ENGLAND COMPOUNDING   )  MDL NO. 13-02419-RWZ
PHARMACY CASES LITIGATION         )
                                  )
                                  )
                                  )
                                  )
                                  )



         BEFORE:   THE HONORABLE RYA W. ZOBEL
```

**STATUS CONFERENCE**

```
          John Joseph Moakley United States Courthouse
                       Courtroom No. 12
                      One Courthouse Way
                       Boston, MA 02210


                       June 19, 2014
                         2:40 p.m.



            Catherine A. Handel, RPR-CM, CRR
                    Official Court Reporter
          John Joseph Moakley United States Courthouse
                One Courthouse Way, Room 5205
                       Boston, MA 02210
                E-mail: hhcatherine2@yahoo.com
```

```
 1   can do --
 2           THE COURT:  We have some holidays then, too.
 3           COURTROOM DEPUTY CLERK URSO:  Thanksgiving would be
 4   -- no, it's not.  So, we can do the 16th.  We can do October
 5   16th, at 2:00, or October 23rd, at 2:00.  That's both
 6   Thursdays, either or.
 7           MR. SOBOL:  16th is National Boss Day, your Honor.
 8           THE COURT:  National Boss Day?  You'd rather be here,
 9   would you?
10           MR. SOBOL:  I would.  Anywhere other than the office.
11           COURTROOM DEPUTY CLERK URSO:  All right.  So, do you
12   want to do 10/16, at 2:00?
13           MR. SOBOL:  Yes.
14           MR. KLARFELD:  That's actually the end of one of the
15   Jewish holidays.  Is it possible to --
16           COURTROOM DEPUTY CLERK URSO:  How about 10/23, at
17   2:00?  So, we're going 10/23 at 2:00, okay?
18           THE COURT:  That's probably the beginning of another.
19           MR. KLARFELD:  No.  That's the end.
20           THE COURT:  10/23, at 2:00, Lisa?
21           COURTROOM DEPUTY CLERK URSO:  Yes, Judge.
22           THE COURT:  Okay.
23           MS. JOHNSON:  Thank you, your Honor.
24           Turning then to fully-briefed motions.  No. 8 is to
25   be decided.  8(a) is to be decided on the papers.  8(b) Mr.
```

1  Sobol previously addressed.
2          THE COURT: Let me talk about 8(a) for a moment.
3          As I understand it, the issue -- one of the issues
4  has to do with some reference to the bankruptcy court, and I
5  wonder why it would not be possible to allow the rest of the
6  motion subject to the trustee and the plaintiffs working out a
7  procedure for dealing with the settlement funds in the
8  bankruptcy case.
9          MR. SOBOL: If I may, your Honor. I want to make
10 sure we identify the issues and then I think I'll answer your
11 question.
12         So, one of the two fundamental issues in that motion
13 is at what point are funds segregated from contributions to be
14 set aside for a common-benefit fate.
15         A separate issue has been raised by the creditor's
16 committee as to whether or not they want to be entitled to
17 some money and have a shadow of the PSC or something like
18 that. So, I'm not going to address the second of those two.
19         With respect to the first of those two issues, as a
20 practical matter, since we're this far down the road, I
21 think -- speaking candidly, I think that it almost makes
22 inevitable, at least as to the funds that are being made
23 available by NECC and the insiders, that those funds will
24 likely be set aside from a tort trust created as a part of the
25 bankruptcy plan.

```
 1              So, my earlier view that -- much early on that we
 2   should segregate the money before it even pours into the
 3   bankruptcy at all, but given the pendency of time, I think
 4   that's the way it should now go.  So, I think you're right.
 5   With respect to the first of those two issues, the PSC would
 6   work out with the -- with Mr. Moore and his office how -- an
 7   agreement about how that money should be set aside in the tort
 8   trust for those purposes.
 9              THE COURT:  Right.
10              MR. SOBOL:  The second of those two issues remains
11   under advisement with you and I won't address unless you would
12   like to.  So, the second issue on this issue being -- which,
13   again, has been raised by the creditor's committee, the
14   creditor's committee sees itself as wanting to have some -- a
15   ruling by you now that they have some entitlement to the
16   money, and the PSC's position being --
17              THE COURT:  Well, I don't think that has anything to
18   do with this particular issue.  I mean, the amount of money
19   that is being set aside under this motion, as I understand it,
20   is something like eight percent.
21              MR. SOBOL:  Correct.
22              THE COURT:  It is not a final determination that
23   eight percent will be used for these purposes.  It's simply a
24   set-aside with the final judgment to be made later so that it
25   ultimately becomes available.  So, I don't understand why
```

```
 1   anybody should object to that.
 2           And I understand that certain rules as to how this
 3   was to be done and what needed to be done in order to be a
 4   proper claimant for the eight percent, or whatever, has
 5   already been made, and I would think that everybody who wants
 6   to make a claim to this money will need to follow those rules.
 7           MR. SOBOL:  That is the position of the PSC.  In
 8   order words --
 9           THE COURT:  Well, I don't know who objects to that.
10           MR. COREN:  Your Honor, Michael Coren, on behalf
11   creditor's committee.
12           Your Honor, in working out the different -- one,
13   we're not a shadow of PSC.  We're a statutory committee with
14   statutory obligations by Congress.  We have equal dignity to
15   the Article III PSC in terms of the issues that we have to
16   address.
17           There is overlap.  There are times that the lawyer
18   representatives of the committee members do work that is
19   common-benefit work and that should have the same, equal
20   consideration before the Court on that allocation.  If it's a
21   common benefit bestowed, it's a common benefit bestowed.
22           As I argued before, there is some overlap.  It's
23   unfortunately necessary, but there are obligations that the
24   committee has to do and that committee member is one of the
25   attorneys, such as myself or Anne Andrews, the other co-chair,
```

1   and many other committee members that were doing work and it
2   gives a common benefit.  It bestows a common benefit.
3           For example, the affidavit that was presented to you
4   yesterday in connection with that Premier rose out of
5   committee obligations.  That's why I was the affiant or the
6   declarant --
7           THE COURT:  I don't understand exactly what you want.
8           MR. COREN:  What it is, is that where we -- that our
9   time that bestows a common benefit gets equal consideration to
10  the PSC members.
11          The difference that we have between Mr. Sobol and the
12  committee is who assigns the committee members.  The committee
13  has a statutory obligation and the members of the committee
14  allocate who does what and, therefore, to the extent that we
15  are doing work consistent with the obligations that we have as
16  committee members, that is the assignment of the work and that
17  gets equal consideration.
18          THE COURT:  But -- I mean, this motion isn't asking
19  for a distribution of this fund.  It is simply asking for a
20  set-aside so that money will be available for distribution on
21  whatever basis is the appropriate basis to make such
22  distribution to counsel.
23          MR. COREN:  Yes, and I agree with you there.
24          There's a couple of wrinkles, though, in the PSC's
25  order where our time -- the common-benefit work by the

1  committee doesn't get considered unless Mr. Sobol is the one
2  who assigns it, and that infringes upon the statutory
3  committee's obligation to do its management and that's why we
4  object.
5         THE COURT:  I don't understand why that has to be
6  resolved now in connection with the set-aside and if there's
7  language in the order setting aside that says that, which I
8  didn't see, frankly, then maybe that should come out.  I mean,
9  the set-aside is simply to make sure the money is there.
10         I do think, however, to the extent that the
11  creditor's committee adds to the funds and does various things
12  that would entitle it ultimately to a recovery from that fund,
13  I think that they need to follow the already-existing order as
14  to the documentation of their claim.
15         MR. COREN:  In terms of time keeping, that's fine, as
16  long as we're able to do a catch-up, your Honor, and we would
17  ask for that leave.
18         MR. SOBOL:  If I may, your Honor.
19         THE COURT:  Well, the order as to how it's to be done
20  has been in existence for some long period of time, early
21  orders of Judge Saylor.
22         MR. COREN:  At a time where we were working -- where
23  we were working out how the two committees were going to work
24  together.  There was an operating agreement there and we feel
25  that -- what we're suggesting is that we do our own

```
1    assignments and submit the time.  It's consistent with the
2    agreement that was worked out with the PSC.  It's part of the
3    motion papers submitted to your Honor.
4             THE COURT:  Okay.  Well, it seems to me that it's
5    time to set aside, and to the extent that there are particular
6    funny little wrinkles, let me know within a week or two how
7    you want me to handle those, but I think they need to be
8    handled and I do believe that Judge Saylor's order made very
9    early in this litigation should probably cover the manner in
10   which ultimately distributions are done and the underlying
11   reason for getting distribution should be in accordance with
12   that order.
13            So, I am in general allowing the motion, which is
14   Docket No. 790.  I will not now sign an order until you
15   present one that you can all agree to.
16            MR. COREN:  Very well, your Honor.  Thank you.
17            THE COURT:  Okay.  Ms. Johnson, you're next.
18            MS. JOHNSON:  So, we've dealt with 8(a) and 8(b),
19   your Honor.
20            I think for today's purposes, there are a series of
21   motions that you heard yesterday.  We don't need to address
22   those, unless your Honor --
23            THE COURT:  And 8(a) we've already dealt with, too,
24   haven't we?
25            MS. JOHNSON:  Yes, that's correct.
```