UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>1:14-cv-12905-RWZ: Epperly v. Insight Health Corp., *et al.*<br>1:14-cv-12908-RWZ: McFarlane v. Insight Health Corp., *et al.*<br>1:14-cv-12910-RWZ: Smith v. Insight Health Corp., *et al.*<br>1:14-cv-12916-RWZ: Kalinoski v. Insight Health Corp., *et al.*<br>1:14-cv-12917-RWZ: Filson v. Insight Health Corp., *et al.*<br>1:14-cv-12919-RWZ: Bradley v. Insight Health Corp., *et al.*<br>1:14-cv-12924-RWZ: Foutz v. Insight Health Corp., *et al.*<br>1:14-cv-12927-RWZ: Whitlow v. Insight Health Corp., *et al.*<br>1:14-cv-12928-RWZ: Harris v. Insight Health Corp., *et al.*<br>1:14-cv-12929-RWZ: Smith v. Insight Health Corp., *et al.* | MDL No. 1:13-md-2419-RWZ |

**MEMORANDUM IN SUPPORT OF INSIGHT HEALTH CORP.'S RENEWED MOTION FOR LEAVE TO AMEND ITS RESPONSES TO REQUESTS FOR ADMISSION AND TO SUPPLEMENT INSIGHT HEALTH CORP.'S MOTION FOR RECONSIDERATION OF PARTIAL SUMMARY JUDGMENT**

**ORAL ARGUMENT REQUESTED**

**PROCEDURAL POSTURE**

As currently postured, ten (10) plaintiffs out of the one hundred and forty (140) who have filed suit against Defendant Insight Health Corp. ("Insight") are artificially exempt from the statutory cap on recoverable damages applicable to medical malpractice cases under Virginia law. Insight submits this Memorandum to ensure that all Plaintiffs are appropriately and fairly situated with respect to Insight and one another going forward in MDL 2419 and thereafter.

One hundred and forty (140) Plaintiffs in thirty-three (33) cases have filed suit against Insight Health Corp. ("Insight"). While the Complaints in all thirty-three (33) cases are not uniform, each complaint alleges that these Plaintiffs received health care services at Insight's

1

facility in Roanoke, Virginia. *See generally* Compls. Bradley ¶ 45; Epperly ¶ 50 Filson ¶ 50; Foutz ¶ 46; Harris ¶ 50; Kalinoski ¶ 45; McFarlane ¶ 50; Smith, J. ¶ 50; Smith, R. ¶ 50; and Whitlow ¶ 45 ("At all times and places pertinent to this action, Insight Imaging Roanoke and its employees and agents had a healthcare provider-patient relationship with" Plaintiffs). Each Plaintiff alleges that the cause of his or her injury was a physician's injection of contaminated methylprednisolone acetate (MPA) at Insight.

All one hundred and forty (140) Plaintiffs are either before this Court in MDL 2419 or are in the process of being transferred to this Court. While most of the Plaintiffs are involved in cases that are currently subject to conditional transfer orders from the Judicial Panel on Multidistrict Litigation, eighteen (18) Plaintiffs are involved in suits that have been transferred directly to this Court from the Circuit Court for the City of Roanoke, Virginia ("State Court") by order dated June 5, 2014. Of these eighteen (18) Plaintiffs, ten (10) are the subject of this motion—Bradley, Epperly, Filson, Foutz, Harris, Kalinoski, McFarlane, Smith, J., Smith, R., and Whitlow ("Ten Outlier Plaintiffs" or "Ten Outlier Cases").

The Ten Outlier Plaintiffs served requests for admission ("RFAs") on Insight in State Court seeking admissions from Insight that Insight was not a health care provider. These RFAs were diametrically opposed to allegations made in all Ten Outlier Cases that "[a]t all times and places pertinent to this action, Insight Imaging Roanoke[1] and its employees and agents had a healthcare provider-patient relationship with" Plaintiffs. *See, e.g.*, Bradley Compl. ¶ 45. Insight responded to Plaintiff's RFAs in those ten (10) cases admitting that it was not a health care

---

[1] In the Complaints of the Ten Outlier Plaintiffs (as well as the other Complaints filed by the same counsel), the term "Insight Imagining Roanoke" is defined to include Insight. *See, e.g.*, Bradley Compl. ¶ 8.

provider.[2]  In no other pending cases, including eight (8) others filed by the same law firm, did Insight make any such admissions.[3]  Based exclusively on Insight's responses to the RFAs, the Ten Outlier Plaintiffs filed motions for partial summary judgment in State Court, which the court granted on April 5, 2013.  This effectively exempted the Ten Outlier Cases, and only the Outlier Cases, from Virginia's medical malpractice cap set forth in Virginia Code Section 8.01-581.15.[4]

Insight subsequently determined that its responses to the RFAs admitting that it was not a health care provider were incorrect.  In response to RFAs served in eight subsequent cases, Insight correctly admitted that it was a health care provider, which accorded with the Answers Insight filed in the Ten Outlier Cases and with the facts the Plaintiffs alleged in the Ten Outlier Cases.  Accordingly, Insight opposed the entry of partial summary judgment later in the *Wingate* case—which has since been resolved—and moved (1) to amend its RFA responses in *Wingate* and the Ten Outlier Cases and (2) for reconsideration of the partial summary judgments in the Ten Outlier Cases.

In an opinion in the *Wingate* case dated October 31, 2013 and its Order of November 13, 2013, the State Court denied Insight's motion to amend its RFA responses in the *Wingate* case and entered partial summary judgment in favor of the plaintiff in that case.  With respect to the Ten Outlier Cases, Insight presented argument on its motions for reconsideration and motions to amend its RFA responses, but the State Court entered no orders in those cases prior to this

---

[2] At the time, Insight was represented by different counsel.  Subsequent to Insight's response to these Requests for Admission, Insight retained the undersigned and substituted counsel.

[3] Insight also admitted in the *Wingate* case, which has since been resolved, that it was not a health care provider.

[4] That statute establishes a cap on recoverable damages in medical malpractice cases that increases annually.  For cases filed between July 1, 2013, and June 30, 2014, the cap was $2.1 million.  *See* Va. Code Ann. § 8.01-581.15.

Court's June 6, 2014 Order transferring the Ten Outlier Cases to MDL 2419 and Insight's filing of a Notice of Removal and Transfer in each of these cases on June 7, 2014.[5]  Accordingly, Insight's motions to amend its RFA responses in the Ten Outlier Cases and its motions for reconsideration of the grants of partial summary judgment remain unresolved and are now subject to the Federal Rules of Civil Procedure.

## ARGUMENT

The Virginia General Assembly in 1976 "determined that the increase in medical malpractice claims was directly affecting the cost and availability of medical malpractice insurance, and that without such insurance, health care providers could not be expected to continue providing medical care for the Commonwealth's citizens."  *Simpson v. Roberts*, 752 S.E.2d 801, 803 (Va. 2014) (citations omitted).

> One component of the Act is the statutory cap on damages in any verdict returned against a health care provider, which is set out in Code § 8.01-581.15.  The purpose of the statutory cap is to provide a 'security blanket' to health care providers and their insurers, to know what limits in coverage should be carried and to keep insurance available and affordable.

*Id.* at 804 (citing Gen. Assem. J. Subcomm. Studying Virginia's Medical Malpractice Laws, Interim Report, H. Doc. No. 21, at 12 (1985)).

As detailed below, Insight is a healthcare provider and the Ten Outlier Plaintiffs' five causes of action are subsumed by the Virginia Medical Malpractice Act such that the statutory medical malpractice cap is applicable to these Ten Outlier cases.  This Court should grant both Insight's motion to withdraw and/or amend its responses to RFAs in the Ten Outlier Cases and

---

[5] Although it was without jurisdiction to do so, the State Court purported to enter "orders" in the Ten Outlier Cases denying Insight's motions to amend its responses to the RFAs on June 27, 2014—three weeks after jurisdiction vested in this Court.  However, even those "orders" left unaddressed Insight's motions to reconsider the granting of partial summary judgment.

vacate the Orders granting partial summary judgment to the Ten Outlier Plaintiffs to remedy both manifest errors of law and the clear unjustness created if the Orders stand.  Absent leave to amend and vacatur of the Orders granting the Ten Outlier Plaintiffs' partial summary judgment, the Virginia cases are in an untenable position:  Insight will enjoy no protection from Virginia's statutory medical malpractice cap in the Ten Outlier Cases, while simultaneously being a health care provider subject to the cap in the other twenty-three cases.  This is not only anolmous but significantly hinders any negotiations and inequitably benefits one group of Plaintiffs at the expense of all others.

      **I.    THIS COURT SHOULD GRANT INSIGHT LEAVE TO WITHDRAW AND/OR AMEND ITS RESPONSES TO TWO REQUESTS FOR ADMISSION IN THE TEN OUTLIER CASES**

"District courts have considerable discretion over whether to permit withdrawal or amendment of admissions made pursuant to Rule 36," and a court "may permit withdrawal or amendment when (1) the presentation of the merits of the action will be subserved thereby and (2) the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits." *Farr Man & Co. v. M/V Rozita*, 903 F.2d 871, 875-76 (1st Cir. 1990) (quoting Rule 36(b)).[6]  The First Circuit has established that if permitting the withdrawal or amendment would "'facilitate the development of the case in reaching the truth,'" then the first prong has been met. *Id.* (citing 4A J. Moore & J. Lucas *Moore's Federal Practice* para. 36-08 at 36-79 (2d ed. 1990)).  Additionally, as to the second prong, the First Circuit has stated that

---

[6] Rule 36 of the Federal Rules of Civil Procedure and Rule 4:11 ("Requests for Admission") of the Rules of the Supreme Court of Virginia are "virtually identical." *Shaheen v. Cnty. of Mathews*, 579 S.E.2d 162, 169 n.6 (Va. 2003) (affirming the trial court's decision to allow a defendant to amend its responses to requests for admission and citing numerous Federal cases, including *Farr Man & Co.*, 903 F.2d 871 from the First Circuit Court of Appeals).

> Rule 36(b)'s second part essentially requires that, prior to allowing withdrawal of admissions, the district court be convinced that the party who obtained the admission will not be prejudiced by its withdrawal. As this court has previously stated,
>
>> the prejudice contemplated by the Rule is not simply that the party who initially obtained the admission will now have to convince the fact finder of its truth. Rather, it relates to the difficulty a party may face in proving its case, *e.g.*, caused by the unavailability of key witnesses, because of the sudden need to obtain evidence with respect to the questions previously answered by the admissions.
>
> *Brook Village N. Assocs. v. General Elect. Co.*, 686 F.2d at 70. *See Westmoreland v. Triumph Motorcycle Corp.*, 71 F.R.D. 192 (D. Conn. 1976).

*Farr Man & Co.*, 903 F.2d at 876. Here, both of these prongs are satisfied, and therefore, this Court should allow Insight to withdraw and/or amend its responses to the two requests for admission at issue in the Ten Outlier Cases.

Rule 36(a)(1)(A) and (B) of the Federal Rules of Civil Procedure states: "A party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to: (A) *facts, the application of law to fact, or opinions about either*; and (B) the genuineness of any described documents. Fed. R. Civ. P. 36(a)(1) (emphasis added). "Under Rule 36, the parties to litigation may request from their adversaries admissions regarding purely factual matters or the application of law to facts, but not matters of law." *Adventis, Inc. v. Consol. Prop. Holdings, Inc.*, 124 Fed. Appx. 169, 172-73 (4th Cir. 2005) (citing *In re Carney*, 258 F.3d 415, 418 (5th Cir. 2001)). "A district court is not bound by a party's admission that addresses a purely legal matter. *Cf. Carney*, 258 F.3d at 418 (collecting cases for the proposition that 'Rule 36 allows litigants to request admissions as to

a broad range of matters, including ultimate facts, as well as applications of law to fact,' but not conclusions of law)." *Id.*

Determining whether a person or entity is a health care provider as defined under Virginia Code Section 8.01-581.1 is a matter of statutory interpretation—a pure question of law in Virginia—that should be decided by a Court. *See Simpson*, 752 S.E.2d at 803 (determining the issue whether someone is a "patient" and whether an act or service is "health care," as defined in the Virginia Medical Malpractice Act (Code § 8.01-581.1), is a question of statutory interpretation which is a pure question of law) (citations omitted); *see also Alcoy v. Valley Nursing Homes, Inc.* 630 S.E.2d 301 (Va. 2006).

Here, the two requests for admission at issue in the Ten Outlier Cases asked Insight:

> 1. Admit you are a health care provider as defined in Virginia Code § 8.01-581.1.
>
> 2. Admit you are not a health care provider as defined in Virginia Code § 8.01-581.1.

(Plaintiffs' Requests for Admissions served in Bradley, Epperly, Filson, Foutz, Harris, Kalinoski, McFarlane, Smith, J., Smith, R., and Whitlow, **Exhibit A**.) These two requests for admission the responses to which Insight seeks to withdraw and/or amend are clearly asking Insight to admit or deny an issue of law, which is inappropriate for requests for admissions. *See* Fed. R. Civ. P. 36; *Adventis, Inc.*, 124 Fed. Appx. at 172-73; *Simpson*, 752 S.E.2d at 803.

Additionally, Insight meets one or more of the statutory definitions of "health care provider" pursuant to Virginia Code Section 8.01-581.1, which defines a health care provider as:

> (i) a person, corporation, facility or institution licensed by this Commonwealth to provide health care or professional services as a physician or hospital, dentist, pharmacist, registered nurse or licensed practical nurse or a person who holds a multistate privilege to practice such nursing under the Nurse Licensure Compact, optometrist, podiatrist, physician assistant, chiropractor,

7

> physical therapist, physical therapy assistant, clinical psychologist, clinical social worker, professional counselor, licensed marriage and family therapist, licensed dental hygienist, health maintenance organization, or emergency medical care attendant or technician who provides services on a fee basis; (ii) a professional corporation, all of whose shareholders or members are so licensed; (iii) a partnership, all of whose partners are so licensed; (iv) a nursing home as defined in § 54.1-3100 except those nursing institutions conducted by and for those who rely upon treatment by spiritual means alone through prayer in accordance with a recognized church or religious denomination; (v) a professional limited liability company comprised of members as described in subdivision A 2 of § 13.1-1102; (vi) a corporation, partnership, limited liability company or any other entity, except a state-operated facility, which employs or engages a licensed health care provider and which primarily renders health care services; or (vii) a director, officer, employee, independent contractor, or agent of the persons or entities referenced herein, acting within the course and scope of his employment or engagement as related to health care or professional services.

Specifically, Insight is a corporation that "employees or engages a licensed health care provider and which primarily renders health care services."

In light of the Ten Outlier Plaintiffs' requests for admission seeking an admission on an issue of pure law, coupled with Insight meeting the statutory definition of a health care provider pursuant to Virginia Code Section 8.01-581.1, this Court should allow Insight to withdraw and/or amend its responses in these Ten Outlier Cases. Specifically, Insight meets prong 1 – " the presentation of the merits of the action will be subserved" because the withdrawal and amendment will "'facilitate the development of the case in reaching the truth,'" as Insight is a health care provider under Virginia Code Section 8.01-581.1. *See generally Farr Man & Co.*, 903 F.2d at 875-76. Additionally, as to prong 2, the Ten Outlier Plaintiffs are not prejudiced by these two responses being withdrawn or amended. There has been very little discovery, these cases are very early in the litigation, trial is not imminent, and Plaintiffs have plenty of time to develop their theories and strategies for their cases. *See generally id* at 876. Therefore, this

Court should allow Insight to withdraw and/or amend its responses to the two requests for admission at issue in the Ten Outlier Cases.

## II. THIS COURT SHOULD VACATE THE ORDERS GRANTING PARTIAL SUMMARY JUDGMENT IN THE TEN OUTLIER CASES

The First Circuit has clearly established that "[i]nterlocutory orders, including denials of motions to dismiss, remain open to trial court reconsideration, and do not constitute the law of the case." *Perez-Ruiz v. Crespo-Guillen*, 25 F.3d 40, 42 (1st Cir. 1994) (citation omitted). "As an interlocutory order, the order granting summary judgment [is] subject to the district court's discretionary power to alter it at any time prior to the entry of the final decree. The district court [is] under no stricture to comply with the requirements of Rule 60(b), and [can] reconsider the motion for summary judgment as to all issues and parties." *Farr Man & Co.*, 903 F.2d at 875. Additionally,

> "While the Federal Rules do not provide for a motion to reconsider, a district court has the inherent power to reconsider its interlocutory orders . . . ." . . . . However, "[m]otions for reconsideration are not to be used as 'a vehicle for a party to undo its own procedural failures [or] allow a party to advance arguments that could and should have been presented to the district court prior to judgment.'" *United States v. Allen*, 573 F.3d 42, 53 (1st Cir. 2009) (quoting *Iverson v. City of Boston*, 452 F.3d 94, 104 (1st Cir. 2006)). "Instead, motions for reconsideration are appropriate only in a limited number of circumstances: if the moving party presents newly discovered evidence, if there has been an intervening change in the law, or if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust." *Id.* (citing *Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 7 n.2 (1st Cir. 2005)).

*Tomon v. Entergy Nuclear Operations, Inc.*, C.A. No. 05-12539-MLW, 2011 U.S. Dist. LEXIS 95425, at *6-7 (D. Mass. Aug. 25, 2011).

Whether the Court allows Insight to withdraw and/or amend its responses to the two requests for admission at issue in the Ten Outlier Cases, this Court should grant Insight's Motion

to Reconsider the Orders granting partial summary judgment that the statutory cap under the Virginia Medical Malpractice Act does not apply to the Ten Outlier Cases for two reasons. First, the State Court's Orders contain manifest errors of law in that the Virginia Medical Malpractice Act subsumes these cases, and Insight is a health care provider as defined by the Virginia Medical Malpractice Act such that the medical malpractice statutory cap applies to these Ten Outlier Cases. Second, the State Court's Orders are clearly unjust, and equity requires that the Ten Outlier Plaintiffs be treated the same as the rest of the Virginia Plaintiffs.

>   **A.    Plaintiffs' Claims Are Covered by Virginia's Medical Malpractice Act, and Thereby, the Statutory Damages Cap Applies to the Ten Outlier Cases.**

The Virginia Medical Malpractice Act defines medical malpractice and health care. *See* Va. Code § 8.01-581.1. "Malpractice," as defined under the Virginia Medical Malpractice Act, is "any tort action or breach of contract action for personal injuries or wrongful death, based on health care or professional services rendered, or which should have been rendered, by a health care provider to a patient." *Id*. "Health care" is defined as "any act, professional services in nursing homes, or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical diagnosis, care, treatment, or confinement." *Id*. When considering whether a plaintiff's allegations fall within the meaning of the Medical Malpractice Act, the Supreme Court of Virginia analyzes whether the plaintiff's allegations as a matter of law describe conduct by the defendant "'based on health care or professional services rendered, or which should have been rendered,' within the meaning of the Act." *Alcoy*, 630 S.E.2d at 304.

In *Alcoy*, the plaintiff alleged causes of action against a nursing home for negligence, sexual assault, and battery. While the defendant nursing home argued that all of plaintiff's

allegations arose from the patient-health care provider relationship, the plaintiff argued that the allegations were unrelated to medical care and instead involved building security and hiring practices. *Id.* at 302. The Supreme Court of Virginia, after analyzing the statutory definitions of "malpractice" and "health care" under Virginia Code Section 8.01-581.1, determined that the plaintiff's allegations did not involve the provision of health care or professional services as contemplated by the Act because the allegations "do not involve torts committed during the course of a medical procedure or treatment administered on a patient's behalf during the course of patient care." *Id.* at 303-04. Instead, the Court held that plaintiff's allegations involved omissions of administrative, personnel, and security decisions, such that plaintiff's claims were not subject to the Medical Malpractice Act. *Id.*

Additionally, not only does the definition of malpractice within the Medical Malpractice Act make clear that it covers torts and breach of contract actions based on health care or professional services rendered, there are also several cases in which causes of action other than negligence were deemed to be subsumed in the Medical Malpractice Act. *See Hagan v. Antonio*, 397 S.E.2d 810 (Va. 1990) (holding that an alleged intentional tort of battery that involved an improper touching during a physical examination fell within the statutory definition of "malpractice"); *Langford v. Kelly*, 54 Va. Cir. 310, 311 (Va. Cir. Ct. 2000) ("any tort which occurred during the treatment of a patient by a health care provider must be brought pursuant to the medical malpractice statutes of Virginia. Since the fraud alleged is a tort claim against a health care provider, it comes under the Medical Malpractice Act and cannot be treated as a separate and independent claim").

In ruling on the partial summary judgment that the statutory medical malpractice cap does not apply in these Ten Outlier Cases, the State Court failed to take into consideration that each of

11

the Ten Outlier Plaintiffs assert five causes of action against Insight, all of which fall under the Virginia Medical Malpractice Act: (1) negligence per se, (2) Virginia Consumer Protection Act ("VCPA"), (3) negligence, (4) gross negligence, and (5) fraud. Thus, regardless of the theory pursuant to which Plaintiffs seek recovery, all of Plaintiffs' causes of action arise under the Virginia Medical Malpractice Act because the factual bases for the causes of action are dependent upon each Plaintiff being a patient at Insight's Roanoke facility and are based upon "health care or professional services rendered" that each Plaintiff allegedly received while he or she was a patient at Insight. *See generally* Bradley, Epperly, Filson, Foutz, Harris, Kalinoski, McFarlane, Smith, J., Smith, R., and Whitlow Compls.

Examining each of the Ten Outlier Plaintiffs' five causes of action, it is clear that all five causes of against Insight meet the statutory definition of "malpractice" under Code Section 8.01-581.1, as all five causes of action are based on health care or professional services each of the Ten Outlier Plaintiffs allegedly received at Insight. For example:

1. <u>Negligence Per Se</u>: Plaintiffs' claims for negligence per se are based on alleged violations of Virginia Code § 54.1-3400 *et seq.* ("the Drug Control Act"). Plaintiffs' specific allegations are that Insight violated the Drug Control Act "[b]y receiving an adulterated drug in commerce and then delivering the drug for pay to its patients, including" Plaintiffs. (Compls.: Bradley ¶¶ 153-66, 161; Epperly ¶¶ 158-71, 166; Filson ¶¶ 165-78, 173; Foutz ¶¶ 159-72, 167; Harris ¶¶175-88, 183; Kalinoski ¶¶ 164-77, 172; McFarlane ¶¶ 161-74, 169; Smith, J. ¶¶ 159-72, 167; Smith, R. ¶¶ 161-74, 169; and Whitlow ¶¶ 158-71, 166. ) Clearly, the bases for the negligence per se claims arise out of the health care or professional services Plaintiffs allegedly received at Insight.

12

2. <u>VCPA</u>:  Plaintiffs unmistakably allege in their VCPA counts that Insight was the "supplier of the tainted methylprednisolone acetate injected into [Plaintiffs'] spinal canal[s]" further demonstrating that Plaintiffs' allegations are based on health care and professional services rendered to Plaintiffs as patients at Insight.  (Compls.:  Bradley ¶ 169; Epperly ¶ 174; Filson ¶ 181; Foutz ¶ 175; Harris ¶ 191; Kalinoski ¶ 180; McFarlane ¶ 177; Smith, J. ¶ 175; Smith, R. ¶ 177; and Whitlow ¶ 174.)

3. <u>Negligence</u>:  Plaintiffs include numerous allegations on how Insight purportedly was negligent based on health care and professional services by Insight to its patients, Plaintiffs.  (Compls.:  Bradley ¶¶ 174-87; Epperly ¶¶ 179-92; Filson ¶¶ 186-99; Foutz ¶¶ 181-94; Harris ¶¶ 197-210; Kalinoski ¶¶ 186-99; McFarlane ¶¶ 182-95; Smith, J. ¶¶ 181-94; Smith, R. ¶¶ 183-96; and Whitlow ¶¶ 180-93.)  For example:  "Insight Imaging-Roanoke and its employees and agents had a duty to know what they were injecting into patients, including" Plaintiffs.  (Compls.:  Bradley ¶ 181; Epperly ¶ 186; Filson ¶ 193; Foutz ¶ 188; Harris ¶ 204; Kalinoski ¶ 193; McFarlane ¶ 189; Smith, J. ¶ 188; Smith, R. ¶ 190; and Whitlow ¶ 187.)

4. <u>Gross Negligence</u>:  The allegations in Plaintiffs' gross negligence claims also are based on health care or professional services rendered to Plaintiffs as patients at Insight.  (Compls.:  Bradley ¶¶ 188-94; Epperly ¶¶ 193-99; Filson ¶¶ 200-06; Foutz ¶¶ 195-200; Harris ¶¶ 211-16; Kalinoski ¶¶ 200-05; McFarlane ¶¶ 196-202; Smith, J. ¶¶ 195-200; Smith, R. ¶¶ 197-202; and Whitlow ¶¶ 194-99.)  Specifically, Plaintiffs allege that Insight and its employees and agents "did not meet even the most minimal diligence to ensure that they were not injecting adulterated and tainted drugs directly into the bodies of their patients, including" Plaintiffs.  (Compls.:  Bradley ¶ 190; Epperly ¶ 195; Filson

¶ 202; Foutz ¶ 197; Harris ¶ 213; Kalinoski ¶ 202; McFarlane ¶ 198; Smith, J. ¶ 197; Smith, R. ¶ 199; and Whitlow ¶ 196.)

5. <u>Fraud</u>:  Finally, Plaintiffs' allegations supporting their fraud claims are also based on health care or professional services allegedly rendered to Plaintiffs as a patient at Insight.  (Compls.:  Bradley ¶¶ 195-224; Epperly ¶¶ 200-29; Filson ¶¶ 207-36; Foutz ¶¶ 201-30; Harris ¶¶ 217-46; Kalinoski ¶¶ 206-35; McFarlane ¶¶ 203-32; Smith, J. ¶¶ 201-30; Smith, R. ¶¶ 203-32; and Whitlow ¶¶ 200-29.)  Plaintiffs allege that Insight and its employees and agents "did not inform [its] patients, including [Plaintiffs], that [it] was providing drugs produced from a compounding pharmacy, much less a compounding pharmacy with the characteristics and problems described in the preceding paragraphs." (Compls.:  Bradley ¶ 196; Epperly ¶ 201; Filson ¶ 208; Foutz ¶ 202; Harris ¶ 218; Kalinoski ¶ 207; McFarlane ¶ 204; Smith, J. ¶ 202; Smith, R. ¶ 204; and Whitlow ¶ 201.)

Clearly, these cases are similar to the *Hagan* and *Langford* cases in that Plaintiffs' allegations are based upon on a patient relationship and Plaintiffs receiving health care and/or professional services from Insight.  In fact, all of the Ten Outlier Plaintiffs' Complaints undoubtedly demonstrate that their five causes of action assert factual and legal allegations that are dependent upon Plaintiffs having been patients at Insight where they allegedly received health care and/or professional services from Insight.  Therefore, the Virginia Medical Malpractice Act subsumes all Ten Outlier Plaintiffs' Complaints.  The State Court's Orders granting partial summary judgment contained a manifest error of law by overlooking that these Ten Outlier Cases are subsumed by the Virginia Medical Malpractice Act and thereby are subject to the medical malpractice cap.

The second manifest error of law in the State Court Orders is that the State Court did not conduct an independent legal analysis of whether Insight met the statutory definition of a health care provider under Virginia Code Section 8.01-581.1 in determining whether the statutory medical malpractice cap applied.  Instead, the State Court relied solely on the erroneous admission by Insight that it was not a health care provider in entering partial summary judgment that the medical malpractice statutory cap did not apply in these Ten Outlier Cases.  (Partial Summary Judgment Orders in Bradley, Epperly, Filson, Foutz, Harris, Kalinoski, McFarlane, Smith, J., Smith, R., and Whitlow, **Exhibit B**.)  As described in Section I, whether an entity like Insight is a health care provider under Virginia Code Section 8.01-581.1 is a pure question of law, which is inappropriate for a request for admission and should have been decided as in issue of law by a court.  *See generally* FRCP 36; *Adventis, Inc.*, 124 Fed. Appx. at 172-73; *Simpson*, 752 S.E.2d at 803.

Regardless whether the Court permits Insight to amend its erroneous responses to the two requests for admission, the ruling of Circuit Court of Roanoke City, Virginia granting partial summary judgment in these Ten Outlier Cases was a manifest error of law.  Insight is a health care provider under Virginia Code Section 8.01-581.1 and the Virginia Medical Malpractice Act subsumes these Ten Outlier Cases, and thereby, the Virginia medical malpractice cap applies to the Ten Outlier Cases and Plaintiffs.  This Court should vacate the State Court's Orders granting partial summary judgment.

>            **B.      Equity Demonstrates that These Ten Outlier Cases Should Be Treated the Same as the Other Cases**

Motions to reconsider should be granted if the original decision is clearly unjust.  *Tomon*, 2011 U.S. Dist. LEXIS 95425, at *6-7 (citing *Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 7 n.2 (1st Cir. 2005)).  Additionally, the purpose of multidistrict litigation under 28 U.S.C. § 1407

is to manage mass tort claims and provide a forum for the parties involved to have a level playing field in which to avoid conflicting rulings and duplicative discovery, as well as reduce litigation costs.  *See Delaventura v. Columbia Acorn Trust*, 417 F. Supp. 2d 147, 148 (D. Mass. 2006) (citing James M. Wood, The Judicial Coordination of Drug and Device Litigation, 54 Food & Drug L.J. 325, 337 (1999)); Desmond T. Barry, Jr., A Practical Guide to the Ins and Outs of Multidistrict Litigation, 64 Def. Couns. J. 58, 66, 59 (1997).

Now that at least the eighteen plaintiffs involved in cases that were pending in the Circuit Court of Roanoke City, Virginia have been transferred on the Trustee's motion to MDL 2419 and others are making their way to MDL 2419 through JPML ordered transfers or other mechanisms, it would be clearly unjust for ten of the cases to have a conflicting ruling that the Virginia medical malpractice cap does not apply.  This is especially true given that the Ten Outlier Plaintiffs themselves affirmatively pled that Insight was a healthcare provider in each of their Complaints.  *See, e.g.*, Bradley Compl. ¶ 45.  If this ruling is allowed to stand in those ten cases, the conflicting ruling on the applicability of the statutory cap creates a potential benefit for ten (10) of the one hundred and forty (140) Plaintiffs and creates an inequity among the Virginia cases that MDL 2419 was supposed to help these cases avoid.  There is a clear unjustness and conflict created by the State Court's rulings on partial summary judgment in the Ten Outlier Cases when the other twenty-three (23) cases and one hundred and thirty (130) Plaintiffs are put in a different posture.  This Court should grant Insight's Motion for Reconsideration and vacate the State Court's Orders granting partial summary judgment to the Ten Outlier Plaintiffs.

## **CONCLUSION**

For each of the above reasons, or any one of them, Insight respectfully requests that this Court allow it to withdraw and/or amend its responses to the two requests for production at issue

in the Ten Outlier Cases and grant its motions to reconsider and vacate the State Court's Orders granting partial summary judgment in the Ten Outlier Cases.

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1(a)(2)

Pursuant to Local Rule 7.1(a)(2), Insight hereby certifies that its counsel met and conferred with opposing counsel in good faith to resolve and narrow the issues before filing this motion.

Dated: July 21, 2014
Richmond, Virginia

Respectfully submitted,

/s/ *Samuel T. Towell*
Stephen D. Busch (admitted *pro hac vice*)
Christopher E. Trible (admitted *pro hac vice*)
Samuel T. Towell (admitted *pro hac vice*)
McGUIREWOODS LLP
One James Center
901 East Cary Street
Richmond, VA 23219
(804) 775-1000
sbusch@mcguirewoods.com
ctrible@mcguirewoods.com
stowell@mcguirewoods.com

James F. Neale (*pro hac vice* pending)
McGuireWoods LLP
Court Square Building
310 Fourth Street, N.E.
Suite 300
Charlottesville, VA 22902-1288
Tel: (434) 977-2500
Fax: (434) 980-2222
jneale@mcguirewoods.com

Counsel for Insight Health Corp.

---

**CERTIFICATE OF SERVICE**

I, Samuel T. Towell, hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on July 21, 2014.

Dated: July 21, 2014      /s/ *Samuel T. Towell*
                          Samuel T. Towell