UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>1:14-cv-12905-RWZ: Epperly v. Insight Health Corp., *et al*.<br>1:14-cv-12908-RWZ: McFarlane v. Insight Health Corp., *et al*.<br>1:14-cv-12910-RWZ: Smith v. Insight Health Corp., *et al*.<br>1:14-cv-12916-RWZ: Kalinoski v. Insight Health Corp., *et al*.<br>1:14-cv-12917-RWZ: Filson v. Insight Health Corp., *et al*.<br>1:14-cv-12919-RWZ: Bradley v. Insight Health Corp., *et al*.<br>1:14-cv-12924-RWZ: Foutz v. Insight Health Corp., *et al*.<br>1:14-cv-12927-RWZ: Whitlow v. Insight Health Corp., *et al*.<br>1:14-cv-12928-RWZ: Harris v. Insight Health Corp., *et al*.<br>1:14-cv-12929-RWZ: Smith v. Insight Health Corp., *et al*.<br>1:14-cv-12930-RWZ: Holbrook v. Insight Health Corp., *et al*.<br>1:14-cv-12931-RWZ: Courtney v. Insight Health Corp., *et al*.<br>1:14-cv-12938-RWZ: Brown v. Insight Health Corp., *et al*.<br>1:14-cv-12939-RWZ: Shuck v. Insight Health Corp., *et al*.<br>1:14-cv-12940-RWZ: White v. Insight Health Corp., *et al*.<br>1:14-cv-12941-RWZ: Brown v. Insight Health Corp., *et al*.<br>1:14-cv-12942-RWZ: Artis v. Insight Health Corp., *et al*.<br>1:14-cv-12978-RWZ: Bender v. Insight Health Corp., *et al*. | MDL No. 1:13-md-2419-RWZ |

**DEFENDANT INSIGHT HEALTH CORP.'S MEMORANDUM IN SUPPORT OF**
**ITS MOTION TO STRIKE EIGHTEEN STATE COURT ORDERS AS VOID AB INITIO**

**ORAL ARGUMENT REQUESTED**

Defendant Insight Health Corp. ("Insight") states as follows in support of its Motion to Strike Eighteen State Court Orders as Void *ab initio*:

**CERTIFICATION PURSUANT TO LOCAL RULE 7.1(a)(2)**

Pursuant to Local Rule 7.1(a)(2), Insight hereby certifies that its counsel met and conferred with opposing counsel in good faith to resolve and narrow the issues before filing its motion.

1

**INTRODUCTION**

On June 27, 2014, the Circuit Court for the City of Roanoke, Va. ("Roanoke court") entered orders (the "State Court Orders") in eighteen (18) personal injury and wrongful death cases, three weeks after Insight filed a Notice of Removal and Transfer Pursuant to 28 U.S.C. § 157(b)(5) in the Roanoke court for each of those eighteen cases.  These State Court Orders are null, void *ab initio*, and without legal effect because they purport to adjudicate substantive rights of the parties after removal and involve the exercise of judicial discretion after the U.S. District Court for the District of Massachusetts had exercised federal bankruptcy jurisdiction.  The State Court Orders contravene 28 U.S.C. § 1446(d)'s statutory command that the Roanoke court "proceed no further" upon removal and violate the automatic stay of 11 U.S.C. § 362.  If the State Court Orders were not considered void *ab initio* on their merits, they would deny Insight basic fairness and constitutional Due Process, transgress Virginia law on consolidation, violate the bankruptcy stay that this Court noted was in place as of June 5, 2014, and most importantly, undermine this Court's assertion of exclusive jurisdiction.  Consequently, the State Court Orders should be stricken and expunged from the record.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

**I.      The State Court Orders Were Entered after Insight Filed Its Notices of Removal in the Roanoke Court.**

On May 15, 2014, this Court issued its Memorandum of Decision (MDL Doc. No. 1131) allowing NECC's Chapter 11 Bankruptcy Trustee's renewed and supplemental motion (MDL Doc. No. 732) for entry of an order transferring to this Court twenty-nine (29) personal injury and wrongful death cases brought by 127 plaintiffs (the "Virginia Plaintiffs") against Insight and certain other defendants on the basis of related-to bankruptcy jurisdiction.  *See* Mem. of Decision, 6, 15; *see also* Not. of Second Am. and Supp. Ex. 1 to the Chapt. 11 Trustee's

Renewed and Supp. Mot. to Transfer Additional Personal Injury Tort and Wrongful Death Cases to This Court (May 12, 2014) (MDL Doc. No. 1119). The law firm of Gentry Locke Rakes & Moore LLP ("Gentry Locke") represents Virginia Plaintiffs ("Gentry Locke Plaintiffs") in eighteen (18) meningitis cases ("Gentry Locke Cases") subject to the Memorandum of Decision. All Gentry Locke Plaintiffs filed their cases in the Circuit Court for the City of Roanoke, Va., and all their cases were assigned to the Hon. Charles N. Dorsey.

One day after entry of the Memorandum of Decision, May 16, 2014, the Gentry Locke Plaintiffs requested a hearing before Judge Dorsey to present orders in the Gentry Locke Cases which were subject to removal and transfer pursuant to the Memorandum of Decision. *See* Ex. 1, e-mails between L. Daly and D. Osborne (May 16, 2014 at 3:45 p.m.). The Gentry Locke Plaintiffs sought entry of orders in each of their eighteen cases adopting and incorporating rulings from Judge Dorsey's letter opinion of October 31, 2013, and Order of November 13, 2013, in another NECC-related meningitis case, *Wingate v. Insight Health Corp.*, No. CL12-2547 (Cir. Ct. for City of Roanoke, Va. filed Dec. 27, 2012 and dismissed on Jan. 27, 2014), in which Gentry Locke also represented the plaintiff. *See* Ex. 2, Letter Opinion (Oct. 31, 2013); Ex. 3, Order (Nov. 13, 2013). The Gentry Locke Plaintiffs submitted proposed orders in all eighteen Gentry Locke Cases to Judge Dorsey on May 19, 2014, and served a Notice of Presentment of Order in each of the eighteen cases on May 23, 2014, setting a hearing for June 27, 2014. *See* Ex. 4, letter from B. Byrd to B. Hamilton and proposed orders (May 19, 2014); Ex. 5, letter from S. Sexton to B. Hamilton and Notices of Presentment (May 23, 2014).

Insight opposed entry of the proposed orders in the eighteen Gentry Locke Cases because the issues to be ruled upon had not been properly noticed or argued, there was no order of consolidation or written agreement in the Roanoke court's record to apply the *Wingate* rulings to

3

the other Gentry Locke Cases, and this Court had already exercised "related to" bankruptcy jurisdiction in the Memorandum of Decision.  Insight communicated its jurisdictional objections to counsel for the Gentry Locke Plaintiffs and notified the Roanoke court of the same.  Insight filed a Notice of Assertion of Bankruptcy Jurisdiction and Transfer to MDL 2419 on May 20, 2014, in the Roanoke court to alert the state court that the U.S. District Court for the District of Massachusetts had decided to exercise "related to" jurisdiction.  *See* Ex. 6, Notice of Assertion of Bankruptcy Jurisdiction and Transfer to MDL 2419 (May 19, 2014).  Insight also filed an emergency motion ("Emergency Motion") in MDL 2419 on May 28, 2014, to enjoin entry of the proposed orders of the Gentry Locke Plaintiffs.  *See* Emergency Mot. of Insight Health Corp. for Entry of an Order in Aid of This Court's Mem. of Decision Transferring Additional Personal Injury Tort and Wrongful Death Cases to This Court, Dated May 15, 2014 Enjoining Gentry Locke Plaintiffs (MDL Doc. No. 1149) (May 28, 2014).  This Court conducted a hearing on the Emergency Motion on June 3, 2014.  *See* Hr'g. Tr. (June 3, 2014) (MDL Doc. No. 1177).

Two days after the hearing on the Emergency Motion, on June 5, 2014, the Court entered an order implementing the Memorandum of Decision.  Significantly, the Court ordered:

1. [T]hat, pursuant to 28 U.S.C. § 157(b)(5), the personal injury and wrongful death cases identified in Exhibit A attached here (the "Pending Actions") **are removed and transferred** to this court from the Roanoke City Circuit Court in which they are currently pending; and it is further

2. Ordered that a Notice of Removal and Transfer, pursuant to 28 U.S.C. § 157 (b)(5) of each of the Pending Actions, in the form of Exhibit B hereto, and a copy of this order shall be filed in the Roanoke City Circuit Court and Provided to all parties in interest in each of the pending actions; and it is further

3. Ordered that, pursuant to 28 U.S.C. § 157(b)(5), the clerk of the Roanoke City Circuit Court shall thereafter **promptly transfer** the case file pertaining to each Pending Action to the Clerk of the District Court for the District of Massachusetts.

Order, 1-2 (MDL Doc. No. 1173) (June 5, 2014) (emphasis added).

As required by the Order of June 5, 2014, Insight served a Notice of Removal and Transfer Pursuant to 28 U.S.C. § 157(b)(5) in the Roanoke court in each of the Pending Actions, including the eighteen (18) cases involving the Gentry Locke Plaintiffs, on June 5, 2014. Each such notice was received, date-stamped, and filed by the state court in Roanoke on June 6, 2014. *See* Ex. 7, Notice of Removal and Transfer Pursuant to 28 U.S.C. § 157(b)(5) (date stamped June 6, 2014).

Judge Dorsey knew about the Order of June 5, 2014, removing and transferring the Gentry Locke Cases to MDL 2419, before entering the State Court Orders. He conducted a telephone conference call regarding the Gentry Locke Plaintiffs' proposed orders on June 17, 2014, during which the Notice of Removal and the Order of June 5, 2014, were discussed, along with jurisdictional issues. *See* Ex. 8, letter from S. Busch to C. Dorsey (June 24, 2014). Insight's counsel also sent a letter to Judge Dorsey on June 24, 2014, explaining that the Roanoke court lacked jurisdiction to enter the Gentry Locke Plaintiffs' proposed orders following Insight's filing of the Notices of Removal. *Id.*

Judge Dorsey acknowledged Insight's arguments that the Roanoke court lacked jurisdiction, writing a letter to counsel dated June 20, 2014, stating that:

> These [eighteen case] files are presently incomplete due to orders not having been tendered on certain rulings that were previously made. Mr. Neale and Mr. Busch [counsel for Insight] argue that this Court is now without jurisdiction to enter orders, even orders reflecting prior rulings, without which these files are incomplete.

Ex. 9, Letter from C. Dorsey to S. Sexton *et al.* (June 20, 2014). In the same letter, Judge Dorsey cancelled the hearing which the Gentry Locke Plaintiffs had noticed for the presentment of orders on June 27, 2014, and announced that "[a]ppropriate orders would be entered on June 27,

5

2014, and placed with the files being transferred" to MDL 2419. *Id*. at 2. Judge Dorsey entered the eighteen orders in the Gentry Locke Cases on June 27, 2014, twenty-two days after this Court ordered that that Gentry Locke Cases "are removed and transferred," Order, at 1-2 (MDL Doc. No. 1173) (June 5, 2014), and three weeks after Insight had filed the Notice of Removal and transfer. *See* Ex. 10, Orders (June 27, 2014) (State Court Orders). Counsel for Insight did not endorse the State Court Orders, and, when Judge Dorsey entered the State Court Orders, he wrote "waived pursuant to notice – Rule 1:13" beside the blank signature designation for Insight's counsel. *Id*. at 3.

## II.     The State Court Orders Purport to Rule on Insight's Substantive Defenses to the Gentry Locke Plaintiffs' Claims for Liability and Damages.

All eighteen of the State Court Orders purport to incorporate Judge Dorsey's rulings as "particularly set forth . . . [in] the Court's letter opinion of October 31, 2013 in the case of *Sharon G. Wingate, Executor of the Estate of Douglas Gray Wingate, Deceased, v. Insight Health Corp.*" regarding Insight's Demurrers (motions to dismiss) to the Gentry Locke Plaintiffs' complaints. *Id.* Each State Court Order states that "Defendant Insight Health Corp.'s demurrers to all plaintiffs' claims and causes of action except for the fraud claim (Count V) are OVERRULED." *Id*. The State Court Orders also sustain Insight's demurrers to the Gentry Locke Plaintiffs' fraud counts. *Id*.

By incorporation, the State Court Orders purport to impose the following rulings from *Wingate* on Insight through incorporation of the letter opinion of October 31, 2013:

- "NECC is not an indispensable party." Ex. 2, at 5-6.

- "IHC is not exempt from Virginia's Drug Control Act," and each complaint "makes out a *prima facie* negligence *per se* claim [against Insight] based on alleged violations of the Virginia Drug Control Act." *Id.* at 6-8.

6

- The Virginia Consumer Protection Act "applies to the aspect of the transaction at issue;" emotional distress damages are available to plaintiffs under the Virginia Consumer Protection Act; and Insight "is a statutory supplier." *Id.* at 8.

- Plaintiffs have "stated a *prima facie* case for negligence." *Id.* at 12.

- Plaintiffs have "sufficiently alleged gross negligence." *Id.* at 13.

- Plaintiffs' "allegations of gross negligence, if proved, constitute willful and wanton conduct supporting a claim for punitive damages." *Id.* at 17.

Ten of the State Court Orders also state that "Insight Health Corporation's Motion to Amend Its Responses to Request for Admissions to Health Care Provider Status as defined under Va. Code Section 8.01-581.1 is DENIED." Ex. 10, ¶ 4 (orders in *Bradley*, *Epperly*, *Filson*, *Foutz*, *Harris*, *Kalinoski*, *McFarlane*, *J. Smith*, *R. Smith*, and *Whitlow*). This ruling denying leave to amend discovery responses relates to ten Orders granting partial summary judgment to the same ten Gentry Locke Plaintiffs. Each of the orders granting partial summary judgment states that:

> It is hereby ORDERED that the defendant, Insight Health Corp., is not a "health care provider" as defined by Va. Code § 8.01-581.1; and, accordingly, Insight Health Corp. is not entitled to the provisions of Chapter 21.1 (Medical Malpractice) of Title 8.01 of the Code of Virginia, including the limitation on damages set forth in Va. Code § 8.01-581.15.[1]

Ex. 11, Order Granting Partial Summary Judgment (June 6, 2013) (orders in (*Bradley*, *Epperly*, *Filson*, *Foutz*, *Harris*, *Kalinoski*, *McFarlane*, *J. Smith*, *R. Smith*, and *Whitlow*).

### III. The Roanoke Court Entered the State Court Orders without Any Order, Written Stipulation, or Agreement on the Record Binding Insight's Interests in the Remaining Gentry Locke Cases to the *Wingate* Rulings.

The *Wingate* letter opinion of October 31, 2013, and the Order of November, 13, 2013, do not state or otherwise indicate that they also apply to the eighteen other Gentry Locke Cases

---

[1] Under Va. Code § 8.01-581.15, the limitation on damages in a medical malpractice lawsuit applicable to these cases could range between $2 million and $2.05 million.

or that the demurrers and motions pending in the eighteen other Gentry Locke Cases had been heard or decided.  *See* Exs. 2 and 3.  Indeed, the record in the state court reflects that Judge Dorsey entered the State Court Orders without conducting a hearing on Insight's demurrers in the eighteen Gentry Locke Cases or hearing full argument on all of the issues raised by Insight's demurrers in those cases.  *See* Ex. 12, Declaration of Christopher E. Trible, ¶ 18 (May 27, 2014) (previously filed at MDL Doc. No. 1150-1).  Notices of hearing were not issued or served for the demurrers in the eighteen Gentry Locke Cases, and the demurrers in those cases were never presented at a hearing for oral argument.  Although Insight did notice and argue one issue from its demurrer in *Wingate* at a hearing on February 27, 2013, the Roanoke court did not call the other eighteen Gentry Locke Cases for hearing at that time.  *See* Ex. 13, H'rg Tr., 1-6 (Feb. 27, 2013).  Some of the cases in which Judge Dorsey entered the State Court Orders were not even filed or served on Insight when Judge Dorsey considered the demurrer in *Wingate*.

     Insight raised these due process concerns in the Emergency Motion when seeking to enjoin entry of the State Court Orders.  *See* Emergency Motion and Supporting Memorandum (MDL Doc. Nos. 1149 and 1150).  When the Gentry Locke Plaintiffs responded in opposition, they asserted that Judge Dorsey and counsel for the parties in *Wingate* and the other eighteen Gentry Locke Cases had met informally and off-the-record and agreed that any rulings in the *Wingate* case would apply to the other eighteen Gentry Locke Cases.  *See* Declaration of J. Scott Sexton (MDL Doc. No. 1161-1) (signed and filed on May 31, 2014).  Judicial efficiency and the burden of managing nineteen separate cases were the reasons offered for this alleged arrangement.

     There is no record of this alleged informal, off-the-record agreement in any of the Roanoke court case files, however.  The Gentry Locke Plaintiffs have failed to identify or

present any written stipulations or agreements showing that Insight agreed that substantive rulings in *Wingate* would bind it in the eighteen other Gentry Locke Cases. Moreover, there is no order from the Roanoke court memorializing any such arrangement or consolidating the eighteen remaining Gentry Locke Cases with *Wingate,* pursuant to Virginia Code Section 8.01-267.1, or otherwise. The only "evidence" of this agreement that the Gentry Locke Plaintiffs have offered is the declaration of Gentry Locke attorney J. Scott Sexton, which has been flatly disputed by Insight's former counsel, Clinton R. Shaw. *See* Ex. 14, Declaration of Clinton R. Shaw, ¶¶ 4, 7 (June 2, 2014) (presented to the Court at the hearing on June 3, 2014); *see* H'rg Tr., 10 (June 3, 2014).

## ARGUMENT

The Court should grant Insight's Motion to Strike Eighteen State Court Orders as Void *ab initio* for the following reasons:

**I.      Insight's Filing the Notice of Removal Divested the State Court of Jurisdiction.**

By filing the Notices of Removal in the Roanoke court on June 6, 2014, Insight divested that court of jurisdiction in the Gentry Locke Cases. Under 28 U.S.C. § 1446(d), the removing party "shall give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such State court, which shall effect removal." Once the notice has been filed with the state court, "the State court ***shall proceed no further*** unless and until the case is remanded." *Id*. (emphasis added). Consequently, the State Court Orders are a nullity and lack any legal effect.

**A.      The State Court Orders Are Void *ab initio*.**

"Proceed no further" means that actions taken by a state court, other than purely ministerial actions, after the filing of the Notice of Removal with the clerk of that state court are

void *ab initio* and without legal effect.  The First Circuit applied this rule in *Sweeny v. Resolution Trust Corp.*, 16 F.3d 1, 4 (1st Cir. 1994), when it affirmed the District of Massachusetts' refusal to recognize a judgment which the Superior Court for Middlesex County entered almost three weeks after removal.  In *Sweeney*, the parties tried their case in the superior court and a special verdict was rendered in March 1990, awarding $65,000 to one plaintiff for intentional infliction of emotional distress and $2,069,586.33 to the defendant on a counter claim for breach of contract.  The superior court, however, reserved judgment on two counts.  After the trial but before the superior court had entered judgment on the two counts upon which it had reserved judgment, the Resolution Trust Corporation was appointed conservator for the defendant and removed the case to the U.S. District Court for the District of Massachusetts on January 11, 1991.  On January 30, 1991, the superior court judge purported to enter a judgment on the remaining two counts, awarding the plaintiffs over $3 million in damages and attorney fees.

After learning of the post-removal entry of judgment by the superior court on the two counts, the Resolution Trust Corp. moved in the U.S. District Court to expunge the record of the judgment on those two counts and sought summary judgment.  The federal court granted the Resolution Trust Corporation's motions.  On the plaintiffs' appeal, the First Circuit affirmed, holding that:

> [T]he district court supportably found that this case had been removed to the federal court on January 11, 1991.  "At that point, the jurisdiction of the state court 'absolutely ceased, and that of the [federal court] immediately attached,'" *Hyde Park Partners. L.P. v. Connolly*, 839 F.2d 837, 841 (1st Cir. 1988) (quoting *Steamship Co. v. Tugman*, 106 U.S. 118, 122 (1882)), and the state court was under an obligation to "proceed no further unless and until the case was remanded," 28 U.S.C. § 1446(e); *see also Tugman*, 106 U.S. at 122 (once case removed, state court had "duty . . . to proceed no further").  Consequently, the purported judgment of the state court was "void *ab initio*," *Hyde Park Partners*, 839 F.2d at 842, and the district court committed no error in refusing to enter judgment in accord with it.

*Sweeney*, 16 F.3d at 4.

The Roanoke court's State Court Orders are very much like the superior court's judgment in *Sweeney*—they were entered three full weeks after removal and directly affected the substantive interest of the parties. As such, the State Court Orders violate the prohibition to "proceed no further" and should be stricken and expunged from the record.

### B. The State Court Orders Affect the Parties' Substantive Rights, and Entering Those Orders Is Not a Ministerial Act.

The Gentry Locke Plaintiffs and the Plaintiffs' Steering Committee ("PSC") have already argued that entry of the State Court Orders in the Gentry Locke Cases would be proper because it would be merely a ministerial function memorializing decisions that the Roanoke court had already made. *See e.g.* Mot. to Reconsider and Mot. to Stay Pending Appeal (MDL Doc. No. 1141) (May 22, 2014); The Plaintiffs Steering Committee's Op. to Insight's Emergency Mot. for Entry of Order Enjoining Gentry Locke Plaintiffs (June 2, 2014) (MDL Doc. No. 1162). Although state courts are allowed to perform "ministerial acts" after the removing party has filed an appropriate notice of removal, "ministerial acts . . . do not affect the merits of the dispute between the parties." *Preferred Rehabilitation, Inc. v. Spine, Sports and Occupational Medicine, Inc.*, Case No. 09-CV-11409, 2010 U.S. Dist. LEXIS 90433, *15-16 (E.D. Mich., Sept. 1, 2010) (citing 16 Moore's Fed. Practice ¶ 107.31[2]). Thus, orders that affect the "substantive rights of the parties" are not ministerial. *Id.*

The eighteen State Court Orders in the Gentry Locke Cases undoubtedly affect the substantive rights of the parties. The State Court Orders purport to dispose of Insight's demurrers (motions to dismiss), establish Insight's status under the Virginia's Drug Control Act and Virginia Consumer Protection Act, and state that Plaintiffs have stated a *prima facie* case of negligence. *See* Exs. 2 and 10. These State Court Orders also find that the Gentry Locke

Plaintiffs failed to state fraud claims with specificity and sustain Insight's demurrer as to fraud. *Id.* Additionally, ten of the State Court Orders deny Insight's motions for leave amend its responses to request for admission, thereby removing the cap on damages otherwise applicable to medical providers under Virginia Code Section 8.01-581.15.

Moreover, nothing in the record shows that these issues had been decided by the Roanoke court in the eighteen Gentry Locke Cases before removal or that the entry of the State Court Orders three weeks after removal was a ministerial act as simple as signing a previously submitted order on an already-decided decided matter.  This Court has already noted that the October 31, 2013 letter opinion and November 15, 2013 Order in *Wingate* do not refer to the other eighteen Gentry Locke cases.  H'rg Tr. 20: 7, 11-13; 21:22-23 (June 3, 2014) (MDL Doc. No. 1177).  Nowhere in the record is there an order consolidating the eighteen Gentry Locke Cases with *Wingate* or imposing the *Wingate* rulings in the other cases.  Arguments that there was an off-the-record, informal request from Judge Dorsey to the parties to lighten his court's burden by agreeing to apply decisions *Wingate* to the other Gentry Locke Cases must fail as a matter of law because the Supreme Court of Virginia has repeatedly stated that a court speaks only through its written orders.  *Moreau v. Fuller*, 276 Va. 127, 137-138, 661 S.E.2d 841, 487 (2008); *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 103, 639 S.E.2d 174, 177 (2007); *Rose v. Jaques*, 268 Va. 137, 147, 597 S.E.2d 64, 70 (2004); *Upper Occoquan Sewage Authority v. Blake Construction Co.*, 266 Va. 582, 588, 587 S.E.2d 721, 724 (2003).

Although Judge Dorsey circulated a letter dated June 20, 2014, mentioning "certain rulings that were previously made," he does not state when those rulings were made or where they were memorialized with respect to removal and notes that orders had not been tendered. Ex. 9, 1.  The letter makes no reference to the *Wingate* case, which had been dismissed five

months earlier and was no longer pending. Regardless, this letter has no legal effect because, as the Gentry Locke Plaintiffs have already conceded, "[a] court speaks through its orders," only. *See* Roanoke Gentry Locke Pls.' Resp. in Opp. to the Emergency Mot. of Insight Health Corp. for Entry of an Order in Aid of this Court's Mem. of Decision Transferring additional Personal Injury Tort and Wrongful Death Cases to This Court, Dated May 15, 2014, 3-4, 12 at n.12 [MDL Doc. No. 1131] Enjoining Gentry Locke Plaintiffs (MDL Doc. No. 1160) (May 31, 2014) (citing *Negron-Almeda v. Santiago*, 528 F.3d 15, 22-23 (1st Cir. 2008), and *In re: Thinking Machines Corp.*, 67 F.3d 1021, 1026 (1st Cir. 1995), while noting that "[d]ecades of being told that 'a court speaks through its orders' are hard to forget overnight.").

## II. The Orders Violate the Automatic Stay of 11 U.S.C. § 362 and Are Therefore Void.

In this Court's Order of June 5, 2013, the Court affirmed that the automatic stay applies to the Gentry Locke Cases in which the post-removal State Court Orders were entered. Three weeks after the automatic stay was triggered in these cases, the Roanoke court issued these State Court Orders which required judicial discretion and judgment before being entered. Within the First Circuit, state-court judicial actions taken in contravention of the automatic stay are void. *See, e.g., In re Soares*, 107 F.3d 969, 976 (1st Cir. 1997). The State Court Orders constitute judicial actions, rendering them legally void. They should be stricken from the record, expunged, or otherwise declared void.

### A. The State Court Orders Constitute the Exercise of the Roanoke Court's Judgment.

Courts in Virginia "speak only through their orders," and orders speak "as of the day they were entered." *Davis v. Mullins*, 251 Va. 141, 148 (1996) (internal quotation marks and further citation omitted). A letter opinion may provide information about how the court intends to exercise its discretion, but is not in itself the exercise of discretion—the entry of the order is the

discretionary act. Here, the judicial act of determining the State Court Orders was not done until after the case was removed, and in violation of the automatic stay of bankruptcy.

Even if the Court were to adopt somehow the assertion that the State Court Orders reflect prior judicial decisions on the matters set forth in the numerated paragraphs, each paper also contains a purported judicial determination that Insight waived its right provided by Virginia Supreme Court Rule 1:13. *See* Ex. 10 (State Court Orders); *see also* Va. Sup. Ct. R. 1:13 ("Drafts of orders and decrees shall be endorsed by counsel or record, or reasonable notice of the time and place of presenting such drafts together with copies thereof shall be served pursuant to Rule 1:12 upon all counsel of record who have not endorsed them. Compliance with this Rule and with Rule 1:12 may be modified or dispensed with by the court in its discretion."). That determination is a quintessential judicial act necessary to the execution of the State Court Orders, which was never forecast in any prior writing by the court, and which was unambiguously done without regard to the automatic stay. Consequently, the State Court Orders are nullities that should be stricken from the record.

### B. The Exception for "Ministerial" Actions Does Not Apply Here.

Similar to the law on permissible post-removal actions by state courts, the automatic stay of 11 U.S.C. § 362 permits a state court to complete a ministerial act without violating the stay. These State Court Orders, however, are far from ministerial. Within the First Circuit:

> [a] ministerial act is one that is essentially clerical in nature. Thus, when an official's duty is delineated by, say, a law or a judicial decree with such crystalline clarity that nothing is left to the exercise of the official's discretion or judgment, the resultant act is ministerial. Such acts can usefully be visualized as the antithesis of judicial acts, inasmuch as the essence of a judicial act is the exercise of discretion or judgment.

*In re Soares*, 107 F.3d at 974 (internal citations omitted). In the *Soares* case, Napoleon Soares faced foreclosure on his home by the Brockton Credit Union, which held his mortgage. Soares

did not file an answer in the foreclosure proceedings in state court. The credit union sent a letter to the court clerk seeking an order of default and a judgment authorizing foreclosure. Two days later, Soares filed for bankruptcy protection and gave immediate notice to the credit union, but neither party alerted the state court. Two weeks after Soares' bankruptcy filing and while the automatic stay was in place, the state court issued the requested default order, and a week after that, authorized the entry of a foreclosure judgment. *Id.* at 972. Soares missed some post-petition mortgage payments and the credit union moved for relief from the automatic stay, which the bankruptcy court granted because it was unopposed. *Id.* The credit union then purchased the property at the foreclosure sale. Soares sought relief from the state court with the argument that the foreclosure judgment violated the automatic stay. The state court denied the motion on grounds that its post-petition actions had been "ministerial." *Id.*

On appeal, the First Circuit disagreed. It determined that a state court's entry of a default judgment order "possesses a distinctly judicial, rather than a ministerial, character." *Id.* at 975. In reaching its decision, the panel explained that, "a judicial proceeding does not conclude until the judicial function is completed, that is, until the judicial decision is made." *Id.* at 974. In *Soares*, the state court judge "waited to confirm Soares' nonmilitary status before directing the entry of judgment. This indicates deliberativeness and a concomitant willingness to exercise discretion." *Id.* at 975.

The record reflects a similar "deliberativeness" by the state court judge in the matter at bar. Instead of merely endorsing the State Court Orders and directing their entry by the clerk, the court exercised discretion in determining how the Orders would read, how they would determine Insight's rights under Va. Sup. Ct. R. 1:13, and when they would be entered. *See* Exs.

15

8 and 9. Accordingly, the state court's actions cannot be characterized as "ministerial," and the State Court Orders should be recognized as such and stricken from the record.

## CONCLUSION

This Motion does not arise from a situation where a set of plaintiffs seek to preserve a litigation advantage fairly fought and won in state court before their cases became subject to transfer, removal, and the automatic stay. Quite differently, plaintiffs seek to create a litigation advantage that would violate Virginia law if it ever existed—by leveraging a state court's disinclination to relinquish control over these cases with certain silence in the cases' records. The Court should strike the State Court Orders and expunge them from the record.

Respectfully submitted,

Dated: July 21, 2014
Richmond, Virginia

/s/ *Samuel T. Towell*
Stephen D. Busch (admitted *pro hac vice*)
Christopher E. Trible (admitted *pro hac vice*)
Samuel T. Towell (admitted *pro hac vice*)
McGUIREWOODS LLP
One James Center
901 East Cary Street
Richmond, VA 23219
(804) 775-1000
sbusch@mcguirewoods.com
ctrible@mcguirewoods.com
stowell@mcguirewoods.com

James F. Neale (*pro hac vice* pending)
McGuireWoods LLP
Court Square Building
310 Fourth Street, N.E.
Suite 300
Charlottesville, VA 22902-1288
Tel: (434) 977-2500
Fax: (434) 980-2222
jneale@mcguirewoods.com

Counsel for Insight Health Corp.

### CERTIFICATE OF SERVICE

I, Samuel T. Towell, hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on July 22, 2014.

Dated: July 21, 2014

/s/ *Samuel T. Towell*
Samuel T. Towell