# EXHIBIT 2

# TWENTY-THIRD JUDICIAL CIRCUIT
## OF VIRGINIA

CHARLES N. DORSEY, JUDGE
SALEM CITY COURTHOUSE
2 EAST CALHOUN STREET
SALEM, VIRGINIA 24153
(540) 387-6218 or (540) 853-2437
FAX (540) 375-4036
E-MAIL: CDORSEY@COURTS.STATE.VA.US



COMMONWEALTH OF VIRGINIA

CIRCUIT COURT FOR THE COUNTY OF ROANOKE
CIRCUIT COURT FOR THE CITY OF ROANOKE
CIRCUIT COURT FOR THE CITY OF SALEM

October 31, 2013

J. Scott Sexton, Esquire
Gentry Locke Rakes & Moore, L.L.P.
P.O. Box 40013
Roanoke, VA 24022-0013

Christopher E. Hassell, Esquire
Bonner Kiernan Trebach & Crociata, L.L.P.
1233 20th Street, NW, 8th Floor
Washington, D.C. 20036

John T. Jessee, Esquire
LeClairRyan, P.C.
1800 Wells Fargo Tower, Drawer 1200
Roanoke, VA 24006

      Re:   Sharon G. Wingate
             v.
             Insight Health Corp., *et al.*
             In the Circuit Court for the City of Roanoke
             <u>Case Number:  CL12002547-00</u>

Dear Counsel:

     The parties are before the Court on the defendants' demurrers, motions, and pleas in bar, and on the plaintiff's motion for partial summary judgment.

     Defendant Insight Health Corp. ("IHC") has demurred to all of the plaintiff's claims. It also requests an extension of time to join or bring a third-party complaint against a nonparty. Defendants John M. Mathis, M.D.; Robert F. Obrien, M.D.; and Image Guided Pain Management, P.C. (collectively the "IGPM defendants") have demurred to Counts II, IV, and V, and to the claim for punitive damages. These defendants have also raised a plea in bar to each of the

1

plaintiff's claims. Finally, plaintiff argues that Va. Code § 8.01-581.15's damages cap does not apply to IHC, and she asks for partial summary judgment on this issue. IHC opposes her motion and requests leave to amend certain admissions.

Having considered the persuasive arguments made by each of you, the Court is prepared to rule. For the reasons that follow, the Court sustains the demurrers to the fraud claim, granting the plaintiff leave to amend her complaint accordingly. The Court denies the remaining demurrers, motions, and pleas in bar. Finally, the Court denies IHC's request to amend its admissions and grants the plaintiff's motion for partial summary judgment.

## FACTS

The plaintiff, Sharon G. Wingate, filed this wrongful-death action on December 27, 2012, alleging that her husband died of fungal meningitis caused by an epidural injection of a contaminated steroid. According to the complaint, New England Compounding Pharmacy, Inc. ("NECC"), a nonparty to this suit, produced the steroid.[1] The complaint describes the NECC-produced steroid as a "knock-off" version of Depo-Medrol, which is Pfizer's brand name of methylprednisolone acetate.[2] This lawsuit is one of several meningitis cases brought against the defendants in this Court alleging injuries caused by NECC-produced drugs.

According to the complaint, IHC procured and provided the contaminated steroid to Mr. Wingate.[3] Dr. O'Brien injected Mr. Wingate with the drug at a facility known as Insight Imaging-Roanoke.[4] According to the plaintiff, Dr. Mathis was the facility's medical director.[5] IHC owned, operated, and controlled the facility at all times and places pertinent to the action.[6]

The complaint alleges that Insight Imaging-Roanoke is Image Guided Pain Management, P.C. ("IGPM")'s registered trade name,[7] and that IHC also transacts business in Virginia as Insight Imaging-Roanoke.[8] The plaintiff asserts

---

[1]     Compl. ¶ 1. Instead, the plaintiff separately filed suit against NECC in the United States District Court for the Western District of Virginia on November 20, 2012. NECC is currently in bankruptcy proceedings, and faces potential liability for many similar claims arising from its alleged production of contaminated steroids.

[2]     Id. ¶ 71.

[3]     Id. ¶ 25. IHC is a Delaware corporation with its principal place of business in California. Id. ¶¶ 13-14.

[4]     Id. ¶ 41. The complaint states that references to "Insight Imaging-Roanoke" include both IHC and IGPM. Id. ¶ 11. Unfortunately, this shorthand can be confusing. In paragraph 41, for instance, by stating that the injection occurred "at" Insight Imaging-Roanoke, the plaintiff is clearly alleging *where* the injection took place, rather than from which legal entity performed it. Drawing reasonable inferences in favor of the plaintiff, as it must be for the purposes of these demurrers, the Court reads "Insight Imaging-Roanoke" to include both IHC and IGPM wherever possible. Where the complaint appears to refer to the location where the injection took place, the Court substitutes the word "facility."

[5]     Id. ¶ 27.

[6]     Id. ¶ 10.

[7]     Id. ¶ 6. IGPM is a Virginia corporation with its principal place of business in Virginia. Id. ¶¶ 47-48.

[8]     Id. ¶ 7.

that Dr. Mathis and Dr. O'Brien were employees and/or agents of both IHC and IGPM at all times and places pertinent to the action.[9]

The plaintiff alleges that Defendants IHC, IGPM, O'Brien, and Mathis knew or should have known that the epidural steroid injection was dangerous for several reasons. First, NECC was an unaccredited compounding pharmacy, and its drugs and production processes were unsanitary, unsterile, and lacked adequate quality-control measures.[10] In addition, the defendants purchased over 600 batches of methylprednisolone acetate from NECC in two months, even though bulk production of methylprednisolone acetate by compounding pharmacies is "very risky" and illegal.[11] Finally, the plaintiff alleges that the risk of contamination was even greater because NECC produced the drug without preservatives.[12]

Based on these allegations, the plaintiff asserts the following claims against all the defendants:

- "Count I – Negligence *Per Se*": the defendants breached duties they owed to Mr. Wingate by receiving, holding, offering for sale, and then delivering for pay an adulterated drug, all in violation of Virginia's Drug Control Act.[13]
- "Count II – Virginia Consumer Protection Act": the defendants violated Va. Code § 59.1-200 by failing to tell Mr. Wingate that he was being administered "a knock-off drug . . . from a compounding pharmacy" and by misrepresenting the tainted steroid as one produced by FDA-regulated manufacturers.[14]
- "Count III – Negligence": the defendants breached a duty to Mr. Wingate to exercise reasonable care to purchase drugs from companies that complied with Virginia's Drug Control Act and produced drugs under safe conditions. The plaintiff enumerates several additional duties that the defendants allegedly breached, including the duty to exercise reasonable care not to inject Mr. Wingate with adulterated drugs and the duty to obtain his informed consent by describing the risks of the procedure.[15]
- "Count IV – Gross Negligence": the defendants' acts and omissions, which proximately caused Mr. Wingate's death, were in utter disregard of his rights.[16]
- "Count V – Fraud": the defendants engaged in a "pattern of deception" by providing Mr. Wingate and other patients with documentation alternately misrepresenting the steroid as Pfizer's

---

[9]     *Id.* ¶¶ 37, 42.
[10]    *Id.* ¶ 119.
[11]    *Id.* ¶¶ 74, 86-87.
[12]    *Id.* ¶¶ 95-97.
[13]    *Id.* ¶¶ 181-94.
[14]    *Id.* ¶¶ 130-51, 195-202.
[15]    *Id.* ¶¶ 203-16.
[16]    *Id.* ¶¶ 217-22.

Depo-Medrol and a generic version produced by Teva, another FDA-regulated manufacturer. The defendants continued this pattern by deceiving Mr. Wingate's primary-care physician and insurer. What the defendants actually sold Mr. Wingate was a compounded steroid manufactured in unsafe, loosely regulated conditions. Mr. Wingate relied on the misrepresentation and died as a result.[17]

### PROCEDURAL HISTORY

The plaintiff filed this action in December 2012. The defendants responded on time, demurring and asserting various pleas in bar. IHC also moved for more time to join NECC as a codefendant, and IGPM, Dr. Mathis, and Dr. O'Brien (collectively "the IGPM defendants") cross-claimed IHC. On February 13, 2013, IHC moved for more time to assert a third-party claim against NECC.

After IHC responded to the plaintiff's requests for admissions, she moved for partial summary judgment against IHC.

The parties planned to argue the outstanding demurrers and motions in April 2013. The day before that hearing, however, IHC filed a notice of removal in the United States District Court for the Western District of Virginia. The parties still appeared before this Court as scheduled, but the Court stated that the removal deprived it of jurisdiction over the case. Nevertheless, the Court heard arguments in ten other meningitis cases that remained in this Court and raised similar legal issues. This Court's proceedings in this matter stopped while the federal court considered the plaintiff's motion to remand.

In May 2013, the federal court remanded this matter to this Court.[18] IHC then asked for leave to amend the admissions on which the plaintiff based her motion for partial summary judgment. The parties argued the plaintiff's summary-judgment motion in July 2013.

Therefore, the following items are pending before the Court:

- IHC's demurrers;
- IHC's motions for extensions of time to bring NECC into this case;
- The IGPM defendants' demurrers;
- The IGPM defendants' pleas in bar; and
- The plaintiff's motion for partial summary judgment.

---

[17]   *Id.* ¶¶ 223-52.

[18]   *Wingate v. Insight Health Corp.*, No. 7:13cv00142, 2013 U.S. Dist. LEXIS 67358 (W.D. Va. May 10, 2013) (remanding the case to this Court).

ANALYSIS

I.    **IHC's demurrers are denied in part and granted in part.**

IHC demurs to each of the plaintiff's claims, asserting seven reasons why she is not entitled to relief. It argues that:

- (A) The action cannot proceed without joining NECC;
- (B) IHC cannot be found negligent *per se* because Virginia's Drug Control Act does not apply to IHC;
- (C) The Virginia Consumer Protection Act does not apply to the transaction at issue or to IHC;
- (D) IHC cannot be found negligent because the plaintiff does not allege that IHC owed a duty to Mr. Wingate;
- (E) IHC cannot be found grossly negligent because the plaintiff does not allege a duty owed by IHC, and because the plaintiff does not plead specific facts as to IHC;
- (F) The allegations do not support a claim for fraud; and
- (G) Punitive damages are not available because the plaintiff has not alleged that IHC acted with malice or in willful and wanton disregard of the rights of others.

A demurrer challenges the legal sufficiency of claims by asserting that a pleading does not state a cause of action or fails to state facts upon which relief can be granted.[19] "While a demurrer does not admit the correctness of the pleading's conclusions of law, it admits the truth of all material facts that are properly pleaded, facts which are impliedly alleged, and facts which may be fairly and justly inferred."[20]

Applying these principles, the Court sustains the demurrer to Count V (fraud) and overrules the remainder of IHC's demurrers.

**A. NECC is not an indispensable party.**

First, IHC asserts that NECC is an indispensable party under Supreme Court of Virginia Rule 3:12(a) & (c).[21] Accordingly, IHC asserts that the Court must dismiss the complaint.[22]

Initially, a demurrer cannot remedy the nonjoinder of a necessary party. Whether a party is absent has no bearing on whether a plaintiff can state a claim against the named defendants. IHC seems to recognize this, asking to join its codefendants' plea in bar for nonjoinder if its demurrer is unsuccessful.[23] Neither

---

[19]   Va. Code § 8.01-273(A).
[20]   *Thompson v. Skate Am., Inc.*, 261 Va. 121, 127, 540 S.E.2d 123, 126 (2001).
[21]   IHC Reply Br. at 6 (citing Va. Sup. Ct. R. 3:12(a) & (c)).
[22]   Va. Sup. Ct. R. 3:12(c) (allowing dismissal if a party is indispensable).
[23]   IHC Reply. Br. at 3 n.1.

a demurrer, nor a plea in bar, however, may be used to remedy the nonjoinder of indispensable parties.[24] When a plaintiff does not join a necessary party, the remedy under Rule 3:12 is a motion to join that party made within 21 days after service of the complaint.[25]

Notwithstanding these procedural defects, IHC's argument fails because NECC is not a necessary and indispensable party. A joint tortfeasor is not always a necessary party. Virginia Code § 8.01-443 provides that "[a] judgment against one of several joint wrongdoers shall not bar the prosecution of an action against any or all the others, but the injured party may bring separate actions against the wrongdoers and proceed to judgment in each." Citing this provision, *Hogan v. Miller* allowed a passenger injured in a traffic accident to sue her driver without joining the driver who had caused the accident as a codefendant.[26] Notably, the Supreme Court allowed the plaintiff to choose her defendant even though that defendant could not assert a third-party claim against joint tortfeasors under the rules of civil procedure then in effect.[27]

Today, of course, the Rules allow a defendant to assert third-party claims against joint tortfeasors.[28] A joint tortfeasor may also seek contribution from other joint tortfeasors in a separate action.[29] These mechanisms allow defendants to distribute the burden of liability among joint tortfeasors.

IHC asserts that being required to file a third-party action or seek contribution "is not fair or just."[30] Nevertheless, those are the options available to IHC under the Rules. IHC's demurrer is denied.

## B. IHC is not exempted from Virginia's Drug Control Act.

Next, IHC demurs to the negligence-*per-se* claim, asserting that "the sections of the [Virginia Drug Control Act[31]] relied upon by Plaintiff do not apply to IHC" because Va. Code § 54.1-3410.2 places the burden on pharmacists to ensure the safety of compounded drugs.[32] Because it is not a pharmacist, IHC argues, it could not have violated any duty imposed by that statute and cannot be found negligent *per se*.[33] The Court disagrees.

---

[24] Va. Code § 8.01-276.
[25] *Id.*; Va. Sup. Ct. R. 3:12(b).
[26] *Hogan v. Miller*, 156 Va. 166, 157 S.E. 540 (1931).
[27] *Id.* at 172-73, 157 S.E. at 542.
[28] Va. Sup. Ct. R. 3:13.
[29] Va. Code § 8.01-34.
[30] IHC Reply Br. at 10.
[31] Va. Code § 54.1-3400 et seq.
[32] IHC Dem. at 2. Va. Code § 54.1-3410.2(D) requires pharmacists to "perform or personally supervise the compounding process, which shall include a final check for accuracy and conformity to the formula of the product being prepared, correct ingredients and calculations, accurate and precise measurements, appropriate conditions and procedures, and appearance of the final product." Va. Code § 54.13410.2(E) requires pharmacists to "ensure compliance with USP-NF standard for both sterile and non-sterile compounds."
[33] *Id.*

IHC's argument presents a question of statutory interpretation that the Court decides based on well-settled principles of review. "The primary objective of statutory construction is to ascertain and give effect to legislative intent. The plain, obvious, and rational meaning of a statute is to be preferred over any curious, narrow, or strained construction."[34]

Here, the plaintiff alleges violations of Va. Code § 54.1-3457(1) and (3), which prohibit—among other things—the sale and receipt of misbranded and adulterated drugs.[35] Both subsections are found in Va. Code § 54.1-3457, titled "Prohibited acts." These subsections' plain language broadly bans the manufacture and distribution of adulterated drugs. Nothing in Va. Code § 54.1-3457 restricts its application to a particular group or class.  Indeed, Va. Code § 54.1-3458 states that "[a]ny person" who commits a prohibited act is guilty of a misdemeanor. "Person" is a defined term under the Act, and it includes—without restriction—"an individual, partnership, corporation, association, governmental agency, trust, or other institution or entity."[36]

To find that this statute holds only pharmacists liable would be an unreasonably restrictive interpretation that contradicts the plain, obvious, and rational meaning of the statute. The fact that pharmacists must perform a "final check" on the drugs they compound under Va. Code § 54.1-3410.2 does not relieve IHC or any other party of the responsibility to refrain from engaging in the acts prohibited by Va. Code § 54.1-3457.

The Court also rejects IHC's argument that the negligence-*per-se* claim must be dismissed because "there is no stand-alone or separate cause of action for negligence *per se* under Virginia law."[37] This argument elevates form over substance, and is not a valid basis on which to sustain a demurrer. A negligence *per se* cause of action

> requires a showing that the tortfeasor had a duty of care to the plaintiff, the standard of care for that duty was set by statute, the tortfeasor engaged in acts that violated the standard of care set out in the statute, the statute was enacted for public health and safety reasons, the plaintiff was a member of the class protected by the statute, the injury was of the sort intended to be covered by the statute, and the

---

[34]  *Commonwealth v. Zamani*, 256 Va. 391, 395, 507 S.E.2d 608, 609 (1998) (citing *Turner v. Commonwealth*, 226 Va. 456, 459, 309 S.E.2d 337, 338 (1983)).

[35]  Virginia Code § 54.1-3457(1) prohibits "the manufacture, sale, delivery, holding, or offering for sale of any drug, device, or cosmetic that is adulterated or misbranded." Virginia Code § 54.1-3457(3) prohibits "the receipt in commerce of any drug, device, or cosmetic that is adulterated or misbranded, and the delivery or proffered delivery thereof for pay or otherwise."

[36]  Va. Code § 54.1-3401.

[37]  IHC Reply Br. at 12.

violation of the statute was a proximate cause of the injury.[38]

The plaintiff's complaint makes out a prima facie negligence-*per-se* claim based on alleged violations of Virginia's Drug Control Act. IHC's demurrer to the claim for negligence *per se* is accordingly overruled.

## C. The defendants' demurrers to the plaintiff's Virginia Consumer Protection Act claim are denied.

Both IHC and the IGPM defendants demurrer to the plaintiff's Virginia Consumer Protection Act ("VCPA")[39] claim,[40] and the Court addresses both demurrers here.

### *IHC is a statutory supplier.*

IHC initially argues that it is not subject to the Act because it is not a "supplier," and its sale of steroids to Mr. Wingate is not a "consumer transaction," as those terms are defined in Code § 59.1-198.[41]

This argument fails. The plaintiff alleges that IHC sold the compounded steroid to Mr. Wingate.[42] This sale is a "sale . . . of goods" constituting a "consumer transaction" within the meaning of the Act.[43] Likewise, as alleged in the complaint, IHC is a seller who engages in consumer transactions and is therefore a "supplier" under the statute.[44]

### *(1) The VCPA applies to the aspect of the transaction at issue.*

All the defendants assert that "the manufacture and sale of compounded drugs are authorized and/or sanctioned by both federal and state statutes."[45] Under Va. Code § 59.1-199, aspects of consumer transactions authorized by federal and state law are exempt from the Act.[46] The defendants insist that the transaction in this case is excluded from the Act because the compounding and sale of prescription drugs is "authorized" by the Federal Food, Drug, and Cosmetic Act[47] and by Virginia's Drug Control Act.[48]

---

[38]   *Steward v. Holland Family Props., LLC,* 284 Va. 282, 287, 726 S.E.2d 251, 254 (2012).
[39]   Va. Code § 59.1-196 et seq.
[40]   IHC Dem. at 3; IGPM Mem. Supp. Dem. at 4.
[41]   IHC Dem. at 3.
[42]   Compl. ¶¶ 188-89, 196.
[43]   Va. Code § 59.1-198.
[44]   *Id.*
[45]   IHC Reply Br. at 13 (citing *Manassas Auto Cars Inc. v. Couch,* 274 Va. 82, 90 (2007); *Deane v. Novacare Orthotics & Prosthetics East, Inc.,* 50 Va. Cir. 418, 420 (1988)); IGPM Mem. Supp. Dem. at 4.
[46]   Va. Code § 59.1-199(A).
[47]   21 U.S.C. § 301 et seq.
[48]   Va. Code § 54.1-3400 et seq.

*Manassas Autocars, Inc. v. Couch* guides the Court's analysis of this issue.[49] *Couch* held that the Act is not displaced when an aspect of a consumer transaction is merely regulated, rather than authorized, by state or federal law.[50] In *Couch*, two car buyers claimed that a dealer violated the Act by failing to advertise the limited availability of a particular vehicle model, causing the buyers to purchase a lower-quality vehicle.[51] The defendant countered that dealer advertising was regulated and therefore "authorized" under Virginia law. Thus, the dealer asserted that Va. Code § 59.1-199 excluded the advertisement from the Act.[52] The Court disagreed, finding that the dealer improperly equated the words "authorized" and "regulated."[53] "Authorized actions are those sanctioned by statute or regulation. [The dealer] was not entitled to exemption from a VCPA claim on the sole ground that motor vehicle dealer advertising is regulated by other statutory provisions and regulations."[54]

In this case, therefore, the Court must determine whether state or federal laws genuinely *authorized* any aspect of the transaction at issue. The parties disagree about which aspects of the transaction, if any, are authorized by law.

The plaintiff argues that the relevant aspect is the alleged "misrepresent[ation of] a cheap compounded drug as a more expensive and FDA-approved one."[55] Because no law authorizes this misrepresentation, the plaintiff argues, the alleged misrepresentation is not excluded from the Act pursuant to Code § 59.1-199.[56] The IGPM defendants argue that this interpretation of the statute would eliminate the exclusion.[57] According to the IGPM defendants, "no Virginia or federal law 'authorizes' or 'sanctions' wrongful acts. Because plaintiffs will always plead that defendants committed wrongful acts [under the VCPA], defendants will never find a statute that authorizes plaintiffs' allegations."[58]

The Court agrees with the IGPM defendants that the aspect at issue in this case cannot be narrowly restricted to the alleged misrepresentation, since no law would authorize misrepresentation. The Court does not agree, however, that the aspect at issue is as broad as "the formulation, compounding and sale of drugs."[59] The plaintiff's VCPA claim hinges on the defendants' representations to Mr. Wingate regarding the treatment he received.

---

[49]   274 Va. 82, 645 S.E.2d 443 (2007).
[50]   *Id.* at 90, 447.
[51]   *Id.* at 86, 445.
[52]   *Id.*
[53]   *Id.* at 90, 447.
[54]   *Id.*
[55]   Pl.'s Resp. Dem. IGPM at 4.
[56]   *Id.* at 3-4 (citing *Humphrey v. Leewood Healthcare Ctr.*, 73 Va. Cir. 346 (Fairfax 2007)).
[57]   IGPM Reply Br. at 3.
[58]   *Id.* at 3-6.
[59]   *Id.* at 5.

In this respect, the present case resembles *Beaty v. Manor Care, Inc.*,[60] a federal case in which the plaintiffs brought a VCPA claim against an assisted-living facility that allegedly misrepresented the types of care that it offered.[61] Denying the defendant's motion to dismiss the VCPA claim, the court observed that the plaintiffs' VCPA claim was that the facility advertised services it did not provide, and not that the care it did provide was deficient.[62] According to that court, a statute "authorizing" the facility's representations would be a statute dealing with advertising and sales.[63]

Similarly, the defendants in this case must show that there is a statute authorizing advertising and sales of drugs by practitioners. The authorizing statute need not, of course, authorize misrepresentations—but it must at least address communications by practitioners to their patients in order to have an exclusionary effect in this case.

The IGPM defendants assert that several statutes "authorize" their actions. Two of those statutes, however, deal solely with the compounding process. First, Virginia Code § 54.1-3410.2 "sanctions drug compounding, permitting it only when certain criteria are met."[64] Second, 21 U.S.C § 353a(b) provides that "[a] drug product may be compounded" under certain conditions.[65] Neither of these provisions deals with the sale, representation, advertisement, or administration of drugs, and neither prevents the application of the VCPA in this case.

The IGPM defendants also rely on Virginia Code § 54.1-3408(A).[66] This statute provides that "[a] practitioner of medicine . . . shall only prescribe, dispense, or administer controlled substances in good faith for medicinal or therapeutic purposes within the course of his professional practice."[67] The IGPM defendants assert that the provision "is not a regulation governing *how* medicine is prescribed, dispensed or administered; rather, this provision *sanctions* the prescription, administration or dispensing of medicine within the course of a practitioner of medicine's professional practice and prohibits the same in all other circumstances."[68]

Assuming that Va. Code § 54.1-3408(A) "authorizes" the prescription, administration, or dispensing of medicine, however, the statute is silent about what practitioners may tell patients in the course of those transactions. In contrast to the statute at issue in *Couch*, which regulated (without authorizing)

---

[60]   No. 02-1720-A, 2003 U.S. Dist LEXIS 25044 (E.D. Va. Feb. 10, 2003) (denying a motion to dismiss a VCPA claim arising from injuries sustained in an assisted-living facility).
[61]   *Id.* at *3-4.
[62]   *Id.* at *15.
[63]   *Id.* at *16.
[64]   IGPM Mem. Supp. Dem. at 5.
[65]   The defendants also point to the federal statute's prohibition against the introduction of adulterated drugs into interstate commerce, but this provision clearly does not "authorize" such an act. 21 U.S.C. § 331.
[66]   IGPM Mem. Supp. Dem. at 5.
[67]   Va. Code § 54.1-3408(A).
[68]   IGPM Mem. Supp. Dem. at 5 (emphasis added).

advertising, section 54.1-3408(A) does not cover advertising or any other communications between medical practitioners and their patients. Although other sections of Virginia's Drug Control Act prohibit false advertising,[69] there are no provisions authorizing certain communications by practitioners.

None of the statutes or regulations invoked by the defendants authorize a relevant aspect of the transaction in this case. Hence, Va. Code § 59.1-199's exclusion does not apply.

### (2) "Actual" damages available under the Virginia Consumer Protection Act include emotional-distress damages.

Finally, the IGPM defendants argue that the Court must dismiss plaintiff's VCPA claim because she is entitled only to economic damages under the VCPA.[70] The Court disagrees.

Virginia's wrongful-death statutes do not set forth specific causes of action that might give rise to recoverable damages; they require only that—had he lived—Mr. Wingate would have had a right to recover for his injuries.[71] Thus, wrongful-death damages are recoverable in many types of actions, including civil-rights claims,[72] products-liability claims,[73] and medical-malpractice claims.[74] The wrongful-death statutes often apply in conjunction with others, and the two statutory schemes do not conflict simply because both address damages.

The VCPA allows a plaintiff to recover "actual damages" resulting from VCPA violations.[75] Under Virginia law, "actual damages" include all "damages in satisfaction of, or in recompense for, loss or injury sustained," "all loss recoverable as a matter of right," and "all damages other than punitive or exemplary damages."[76] Put simply, actual damages compensate injured parties.

Two circuit courts, however, have ruled that under the VCPA, "actual damages" means *economic* damages.[77] Reversing course, one of those courts later took the position that "'actual damages' as used in the VCPA is not limited to out-of-pocket pecuniary losses."[78] This Court finds the reasoning of that later

---

[69]     Va. Code §§ 54.1-3433, -3457.

[70]     IGPM Mem. Supp. Dem. at 7.

[71]     Va. Code § 8.01-50.

[72]     *See, e.g.*, *O'Connor v. Correctional Officers*, 523 F. Supp. 1345 (1981) (holding that an admnistratrix was entitled to pursue constitutional claims under 42 U.S.C. § 1983 through a wrongful-death action).

[73]     *See, e.g.*, *Funkhouser v. Ford Motor Co.*, No. 111207, 2011 Va. LEXIS 230 (Albermarle Co. Nov. 2, 2011), *rev'd on other grounds*, 285 Va. 272, 736 S.E.2d 309 (2013).

[74]     *See, e.g.*, *Bolling v. D'amato*, 259 Va. 299, 526 S.E.2d 257 (2000); *see also* Code § 8.01-50.1 (setting forth special requirements for commencing a wrongful-death action against a health care provider).

[75]     Va. Code § 59.1-204.

[76]     *News Leader Co. v. Kocen*, 173 Va. 95, 108, 3 S.E.2d 385, 391 (1995) (quotations and citations omitted).

[77]     *Deane v. Novacare Orthotics*, 50 Va. Cir. 418 (Rockbridge Co. 1999); *Devonshire v. Eurapair Int'l*, 40 Va. Cir. 149 (Fairfax Co. 1996).

[78]     *Humphrey v. Leewood Healtcare Ctr.*, 73 Va. Cir. 346 (Fairfax Co. 2007).

11

decision persuasive and presumes that "in the absence of limiting language, the General Assembly intended no unusual restriction on the term 'actual damages' as used in the VCPA."[79]

Virginia's wrongful-death statutes provide that beneficiaries are entitled to fair and just damages for sorrow, mental anguish, and the loss of the decedent's companionship.[80] Just as much as economic damages, these noneconomic damages are intended to compensate beneficiaries for their loss. The compensatory nature of such damages is obvious from the reasoning of *Rice v. Charles*.[81] There, the Supreme Court of Virginia held that a jury verdict in the exact amount of a decedent's funeral expenses was inadequate as a matter of law, since "the evidence at trial clearly supported the conclusion that [the] beneficiaries experienced sorrow, mental anguish, and loss of solace as a result of [her] death. Thus, they were entitled to compensation for these elements of damage."[82]

Defining "actual damages" in the ordinary sense, damages for sorrow, mental anguish, and solace constitute actual damages. The Court holds that the plaintiff's claim for actual damages under the VCPA includes the items of noneconomic damage allowed under the Virginia's wrongful-death statutes. The demurrers to the VCPA claim are overruled.

**D. The plaintiff has stated a prima facie case for negligence.**

IHC demurs to the negligence claim, asserting that because it does not state that a doctor-patient relationship existed between IHC and Mr. Wingate, the complaint fails to allege IHC owed a duty to the plaintiff.[83]

The complaint alleges that "[a]t all times and places pertinent to this action, Insight Imaging-Roanoke and its employees and agents had a healthcare provider-patient relationship with Mr. Wingate."[84] The complaint uses "Insight Imaging-Roanoke" as a defined term that refers to both IGPM and IHC.[85]

IHC maintains that although the complaint alleges a doctor-patient relationship between "Insight Imaging-Roanoke" and Mr. Wingate, it fails to allege there was any such relationship between Mr. Wingate and IHC.[86] It asks

---

[79]   *Id.* at 349; *see also Barnette v. Brooke Rd., Inc.*, 429 F. Supp. 2d 741 (E.D. Va. 2006) ("Had the General Assembly intended to limit 'actual damages' to economic damages or out-of-pocket expenses, thereby altering the existing court definition, it must have done so expressly.")

[80]   Va. Code § 8.01-52(1).

[81]   260 Va. 157, 532 S.E.2d 318 (2000).

[82]   *Rice*, 260 Va. at 169, 532 S.E.2d at 325; *see also Johnson v. Smith*, 241 Va. 396, 400-01, 403 S.E.2d 685, 687 (1991) (holding that a verdict in a wrongful-death action was incorrect as a matter of law because it did not include any sum for sorrow, mental anguish, and solace for the decedent's beneficiaries).

[83]   IHC Dem. at 4.

[84]   Compl. ¶ 53.

[85]   Compl. ¶ 11 ("Unless otherwise specified in this Compliant, references to Insight Imaging – Roanoke include Image Guided and Insight Health.").

[86]   IHC Dem. at 4.

the Court to take judicial notice of the fact that "Insight Imaging-Roanoke" is IGPM's registered trade name.[87] Based on this fact, IHC reasons that grouping IHC and IGPM together under the label "Insight Imaging-Roanoke" is inappropriate.[88] Therefore, IHC argues, the allegation that Mr. Wingate had a doctor-patient relationship with "Insight Imaging-Roanoke" is insufficient to allege a doctor-patient relationship with IHC.[89]

The Court is not persuaded by IHC's argument. A demurrer "admits the truth of all material facts that are properly pleaded, facts which are impliedly alleged, and facts which may be fairly and justly inferred from alleged facts."[90] Regardless of whether "Insight Imagining-Roanoke" is IGPM's registered trade name, the complaint alleges that IHC also uses "Insight Imaging-Roanoke" as an unregistered trade name.[91] When the plaintiff refers to "Insight Imaging-Roanoke", she is referring to IGPM and IHC.[92]

Because the plaintiff alleges that "Insight Imaging-Roanoke" had a doctor-patient relationship with Mr. Wingate, she is alleging that IGPM and IHC had doctor-patient relationships with Mr. Wingate, owing him certain duties.[93] Among those duties was "a duty to exercise reasonable care to avoid injecting Mr. Wingate with adulterated drugs."[94] The plaintiff has pleaded the elements of negligence with respect to IHC, and its demurrer to the negligence claim is overruled.

## E. The plaintiff has sufficiently alleged gross negligence.

IHC demurs to the gross-negligence claim on two grounds. First, it asserts that the complaint does not allege IHC owed a duty to Mr. Wingate.[95] As stated above, this argument fails because the complaint alleges that IHC owed Mr. Wingate multiple duties.

Second, IHC asserts that the complaint merely recites the elements of gross negligence without pleading any specific facts as to IHC.[96] Gross negligence is "the utter disregard of prudence amounting to complete neglect of the safety of another. It is a heedless and palpable violation of legal duty respecting the rights of others which amounts to the absence of slight diligence,

---

[87] *Id.*
[88] *Id.*
[89] *Id.*
[90] *Delk v. Columbia/HCA Healthcare Corp.*, 259 Va. 125, 129, 523 S.E.2d 826, 829 (2000).
[91] Compl. ¶ 7.
[92] *Id.* ¶ 11.
[93] *Id.* ¶¶ 54, 204-13.
[94] *Id.* ¶ 209.
[95] IHC Dem. at 4-5.
[96] *Id.* at 5.

or the want of even scant care."[97] "Ordinarily, the question whether gross negligence has been established is a matter of fact to be decided by a jury."[98]

The gross-negligence claim specifically incorporates by reference all preceding paragraphs in the complaint.[99] In summary, these paragraphs allege the following facts:

- Insight Imaging-Roanoke purchased adulterated steroids from NECC, an unaccredited compounding pharmacy company IHC knew or should have known operated in a facility surrounded by a garbage and waste center that stored products such as used mattress from prisons, hospitals, and dormitories;[100]
- Insight Imaging-Roanoke knew or should have known NECC's drugs and production process were unsanitary, unsterile, and lacked adequate quality control measures;[101]
- Insight Imaging-Roanoke provided Mr. Wingate with invoices and literature that falsely labeled the adulterated steroid as "Depo-Medrol," a trademarked brand name drug manufactured by Pfizer;[102]
- Insight Imaging-Roanoke intentionally withheld all the knowledge it had about NECC and the steroid from Mr. Wingate and the doctors that practiced in IHC's Roanoke facility;[103]
- Insight Imaging-Roanoke injected the adulterated steroid it purchased from NECC into Mr. Wingate's spinal cavity;[104] and
- The steroid contained fungus, mold, and/or other contaminates that caused Mr. Wingate to develop meningitis that eventually killed him.[105]

"Insight Imaging-Roanoke" is a defined term that includes IHC and IGPM.[106] These specific factual allegations against Insight Imaging-Roanoke go beyond a mere recital of elements and support a gross-negligence claim against IHC. IHC's demurrer to the gross-negligence claim is accordingly overruled.

## F. The plaintiff failed to plead fraud with specificity.

Both IHC and the IGPM defendants attack the plaintiff's fraud claim. Both assert that the plaintiff has failed to plead a prima facie claim,[107] and the IGPM

---

[97]   *Burns v. Gagnon*, 283 Va. 657, 678, 727 S.E.2d 634, 647 (2012) (internal citations and quotations omitted).
[98]   *Id.*
[99]   Compl. ¶ 217.
[100]  *Id.* ¶¶ 100-03
[101]  *Id.* ¶ 107
[102]  *Id.* ¶¶ 131-34.
[103]  *Id.* ¶ 130.
[104]  *Id.* ¶¶ 120, 158-160.
[105]  *Id.* ¶¶ 151, 158, 174-78.
[106]  *Id.* ¶ 11.
[107]  IHC Reply Br. at 15; IGPM Mem. Supp. Dem. at 14.

14

defendants argue that the plaintiff failed to plead her claim with the required specificity.[108] The Court addresses both attacks below.

### (1) The plaintiff has alleged all of fraud's elements against IHC and the IGPM defendants.

IHC asserts that the plaintiff has failed to properly plead fraud. To plead actual fraud in Virginia, a plaintiff must allege "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled."[109] "Constructive fraud differs from actual fraud in that the misrepresentation of material fact is not made with the intent to mislead, but is made innocently or negligently although resulting in damage to the one relying on it."[110]

IHC contends that the plaintiff has not made out a prima facie case for actual or constructive fraud because there are no allegations that IHC "made a representation of any kind, intentionally or otherwise, regarding the steroids at issue to Mr. Wingate or that [he] relied on any such representation before he received treatment."[111] Since the plaintiff does not expressly allege that a misrepresentation occurred *before* the treatment, IHC argues, she has not established the element of reliance.[112] In addition, it asserts that "the allegations that an insurance company would rely on the reference to the brand name of the steroid for billing purposes cannot be imputed to Mr. Wingate to satisfy this requirement."[113]

To accept IHC's arguments would require the Court to apply the wrong standard of review, draw all inferences in favor of IHC, and disregard the plaintiff's allegations regarding constructive fraud. The plaintiff expressly alleges that the defendants concealed from Mr. Wingate that he was being administered a "knock-off drug obtained from an unaccredited compounding pharmacy, unregistered to distribute wholesale in Virginia."[114] IHC allegedly concealed information regarding the source of the steroid "knowing Mr. Wingate acted on the belief that no such facts existed, and that Mr. Wingate relied upon [the defendants] to obtain and inject safe drugs."[115] In addition to this concealment, the plaintiff alleges that the defendants actively misrepresented the compounded drug as a commercially-available drug produced by FDA-regulated

---

[108]   IGPM Reply Br. at 14–18.
[109]   *Winn v. Aleda Constr. Co.*, 227 Va. 304, 308, 315 S.E.2d 193, 195 (1984) (citations omitted).
[110]   *Nationwide Mut. Ins. Co. v. Hargraves*, 242 Va. 88, 92, 405 S.E.2d 848, 851 (1991); *Moore v. Gregory*, 146 Va. 504, 523, 131 S.E. 692, 697 (1925) ("Constructive fraud is a breach of legal or equitable duty, which, irrespective of moral guilt of the fraud feasor, the law declares fraudulent, because of its tendency to deceive others, to violate public or private confidence, or to injure public interests." (citation omitted)).
[111]   IHC Reply Br. at 15.
[112]   *Id.* at 15–16.
[113]   *Id.* at 16.
[114]   Compl. ¶ 231.
[115]   Compl. ¶ 232.

manufacturers.[116] She asserts that this misrepresentation was made to Mr. Wingate directly.[117] Thus, the complaint alleges that IHC committed a false representation of material fact on which Mr. Wingate relied, resulting in his death.

Next, the IGPM defendants also assert that the plaintiff has not made out a prima facie fraud claim against them. First, they argue that the plaintiff has not alleged that the doctors knew the dubious source of the drug, or that they misrepresented it as Depo-Medrol prior to the procedure.[118] The plaintiff, however, alleges that IHC, IGPM, and Drs. Mathis and O'Brien knew that the methylprednisolone acetate was potentially dangerous.[119] She also claims that Dr. O'Brien's medical literature misrepresented the drug as Depo-Medrol.[120] These statements amount to an allegation that the IGPM defendants knew that the drug was unsafe.

Second, the IGPM defendants argue that fraud by concealment requires a knowing and deliberate decision not to disclose a material fact, and the doctors "could not have engaged in a knowing and deliberate decision not to disclose facts about which they had no knowledge."[121] The Court agrees that "proof of misrepresentation by nondisclosure requires 'evidence of a knowing and a deliberate decision not to disclose a material fact,'" where there is a duty to disclose the concealed fact.[122] Again, however, the plaintiff alleges that the doctors knew that the steroid was a potentially dangerous knock-off drug.[123] She has not merely alleged non-disclosure but also affirmative misrepresentation in the form of misleading literature distributed to Mr. Wingate.

Third, the IGPM defendants contend that the plaintiff may not use the defendants' statements to Mr. Wingate's primary-care physician or insurer to establish that Mr. Wingate personally relied on any misrepresentation.[124] Because Plaintiff alleges direct reliance by Mr. Wingate, the Court declines to address the parties' arguments regarding reliance by and through third parties.

### (2) The plaintiff has not stated her fraud claim with specificity.

The IGPM defendants' final attack on the plaintiff's fraud claim is that her allegations lack the specificity required to plead fraud in Virginia.[125] On this final point, the Court agrees.

Fraud must be pleaded with particularity.[126] It is a longstanding rule of pleading in Virginia that a complaint alleging fraud "must show specifically in

---

[116] *Id.* ¶¶ 228-29.
[117] *Id.*
[118] IGPM Mem. Supp. Dem. at 15.
[119] Compl. ¶¶ 100, 107-110.
[120] *Id.* ¶¶ 228-29.
[121] IGPM Mem. Supp. Dem. at 15.
[122] *Lambert v. Downtown Garage*, 262 Va. 707, 714, 553 S.E.2d 714, 718 (2001).
[123] Compl. ¶¶ 74-77, 100, 107-110.
[124] IGPM Mem. Supp. Dem. at 15-16.
[125] IGPM Reply Br. at 14-18.

what the fraud consists, so that the defendant may have the opportunity of shaping his defence accordingly."[127]   Overly vague, indefinite, and conclusory allegations are insufficient.[128]   A plaintiff fails to state a claim for fraud against a business organization where the plaintiff does not reveal the identities of the organization's agents, officers, and employees of who are alleged to have perpetrated the fraud, or the details of the time and place where the fraud occurred.[129]

The fraud claim in its current form is too vague, indefinite, and conclusory. Of course, th (or failed to disclose a fact they were required to).[130]

Because the plaintiff did not plead fraud with the requisite specificity, the demurrers as to Count V are sustained. The plaintiff is granted leave to re-plead.

## G. The allegations of gross negligence, if proved, constitute willful and wanton conduct supporting a claim for punitive damages.

IHC contends that punitive damages are not available because the plaintiff has not alleged that IHC acted with malice or in willful and wanton disregard of Mr. Wingate's rights.[131] The Court disagrees.

Punitive damages are exemplary in nature and are for the protection of the public.[132]  Punitive damages are proper in a negligence action when the negligence "is so willful or wanton as to evince a conscious disregard of the rights of others."[133] Willful or wanton negligence means consciously disregarding another's rights or "acting with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another."[134]

The Court is not persuaded by IHC's argument that "[t]here was simply no way for IHC to know that NECC had provided to the Defendants a Steroid that may have caused the Plaintiff's husband's death."[135] A finding of willful or wanton negligence requires that a defendant be "aware . . . that his conduct *probably* would cause injury to another."[136] Plaintiff alleges that despite state laws prohibiting bulk compounding of commercially available drugs, IHC's Roanoke clinic purchased large quantities of compounded methylprednisolone acetate

---

[126]   *Mortarino v. Consultant Eng'g Servs.*, 251 Va. 289, 295, 467 S.E.2d 778, 782 (1996).
[127]   *Id.*
[128]   *Tuscarora v. B.V.A.*, 218 Va. 849, 858, 241 S.E.2d 778, 783 (1978).
[129]   *Id.*
[130]   *Id.*
[131]   IHC Dem. at 6.
[132]   *Zedd v. Jenkins*, 194 Va. 704, 74 S.E.2d 791 (1953); 1 CHARLES E. FRIEND, PERSONAL INJURY LAW IN VIRGINIA, § 13.5 (2013).
[133]   *Booth v. Robertson*, 236 Va. 269, 273, 374 S.E.2d 1, 3 (1998); *see also Green v. Ingram*, 269 Va. 281, 292, 608 S.E.2d 917, 923 (2005).
[134]   *Griffin v. Shively*, 227 Va. 317, 321, 315 S.E.2d 210, 213 (1984).
[135]   IHC Reply Br. at 17.
[136]   *Griffin*, 227 Va. 317, 321, 315 S.E.2d 210, 213 (1984) (emphasis added).

from NECC.[137] The plaintiff alleges that IHC knew that the steroid was preservative-free and therefore more likely to be contaminated. Furthermore, the plaintiff claims that "other image guided pain management clinics in the Roanoke area recognized NECC as a dangerous source of [the steroid]. These other clinics chose to pay more to obtain [the steroid] from reliable sources, specifically rejecting" NECC's lower prices.[138] These allegations, if proved, could support a finding that IHC was aware that its conduct probably would cause injury to another, constituting reckless indifference.

The plaintiff has sufficiently alleged that IHC committed negligence so willful or wanton as to evince a conscious disregard of the rights of others. The Court accordingly overrules the demurrer to her punitive damages claim.

## II.   IHC's motions for extensions of time are denied.

IHC asks for more time to bring NECC into this suit as a codefendant[139] or third-party defendant.[140]

The plaintiff served IHC with her complaint on January 4, 2013. IHC demurred on January 24, 2013, filing its motion for an extension of time to join NECC on the same day. IHC subsequently filed a motion for an extension of time to file a third-party complaint against NECC. The Court denies both motions.

For the reasons previously stated,[141] NECC is not necessary party to this action under Rule 3:12. Accordingly, the motion for an extension of time to join NECC is denied as moot.

Next, IHC requests more time to assert a third-party claim against NECC. A defendant may assert a third-party claim without leave of court within 21 days after responding to the original complaint.[142] "Otherwise the third-party plaintiff must obtain leave therefore on motion after notice to all parties to the action."[143] IHC could have filed a third-party complaint without leave of this Court on or before February 14, 2013. Instead, it moved for an extension of time to do so on February 13, 2013, asking to wait to assert a claim against NECC until the Court rules on its demurrers.[144] IHC adopted this wait-and-see approach "[i]n the interests of the Court's economy" and "the logical sequence of pleadings and rulings thereon."[145] IHC asked the Court to extend the deadline to 21 days after its ruling on IHC's demurrers.[146]

---

[137]   Compl. ¶¶ 84-86.
[138]   Compl. ¶¶ 109-10.
[139]   IHC Jan. 24, 2013 Mtn.
[140]   IHC Feb. 13, 2013 Mtn.
[141]   *See* Part I.A., *supra* (holding that NECC is not a necessary party).
[142]   Va. Sup. Ct. R. 3:13(a).
[143]   *Id.*
[144]   IHC Feb. 13, 2013 Mtn. at 2.
[145]   *Id.* at 3.
[146]   *Id.*

The Court may extend the time for filing a pleading in its discretion, but it declines to do so in this case.[147] First, IHC's attempt to justify the delay in the name of judicial economy is unpersuasive. For the Court's purposes, it is more efficient for parties to file pleadings in a timely manner, even if those pleadings may subsequently become moot.

Second, NECC is in the midst of lengthy bankruptcy proceedings and enjoys the protections of 11 U.S.C. § 362's automatic stay. At this point, IHC cannot assert a third-party claim against it unless the bankruptcy court lifts the stay. Should that happen, IHC may seek leave of court to file a third-party complaint "at any time."[148]

Thus, to the extent IHC asks for an extension of time to assert a third-party claim without leave of court, that request is denied. Should the situation change, IHC may seek leave from this Court at that time.

## III.   The IGPM defendants' demurrers are denied in part and granted in part.

The IGPM defendants present two additional arguments in support of their demurrers:

- (A) The complaint fails to plead a gross-negligence claim against the IGPM defendants;[149] and
- (B) The plaintiff's allegations would not support an award of punitive damages against the IGPM defendants.[150]

## A.  The plaintiff has stated a gross-negligence claim against IGPM.

The IGPM defendants demur to the gross-negligence claim on two grounds.

First, they assert that the complaint failed to allege facts supporting the plaintiff's claim that IGPM was grossly negligent.[151] The IGPM defendants argue that because the complaint alleges IHC controlled the Roanoke facility, the allegation that "Insight Imaging-Roanoke" negligently selected, procured, received, and offered the adulterated drug applies only to IHC, and not to the IGPM defendants.[152]

---

147   Va. Sup. Ct. R. 1:9.
148   *Id.*
149   IGPM Mem. Supp. Dem. at 9-14.
150   *Id.* at 16-17.
151   *Id.* at 9-10.
152   *Id.*

19

Again, however, an allegation against "Insight Imaging-Roanoke" is an allegation against IHC and IGPM,[153] and the allegations against Insight Imaging-Roanoke are sufficient to support the plaintiff's gross-negligence claim.[154]

Next, the IGPM defendants argue that they are not liable for negligent acts associated with adulterated drugs because Virginia's Drug Control Act requires pharmacists and compounding facilities to ensure drugs are safe.[155] The Act's prohibitions, however, apply to everyone.[156]

The IGPM defendants' demurrer to the gross-negligence claim is overruled.

## B. The plaintiff's gross-negligence claim supports an award of punitive damages.

The IGPM defendants assert that punitive damages are not available in this case because the plaintiff does not allege that they knew that NECC's drugs would injure Mr. Wingate.[157] In addition, they contend that the sheer volume of drugs purchased from NECC and fact that no meningitis occurred until 2012 belies any suggestion that they consciously disregarded any risk.[158]

The Court is not persuaded that the plaintiff's punitive-damages claim requires an allegation that the defendants knew that a particular batch of steroid was tainted. A defendant is liable for punitive damages if he acted with reckless indifference to the consequences, while "aware . . . that his conduct *probably* would cause injury to another."[159] Here, the plaintiff has alleged facts indicating that the defendants were aware that their conduct would probably injure another,[160] and the Court denies the demurrer.

## IV. The IGPM defendants' pleas in bar are denied.

The IGPM defendants' pleas in bar assert that:

- (A) The complaint does not set forth a viable negligence-*per-se* claim;[161]
- (B) The plaintiff does not allege that IGPM sold the steroid, but merely that IGPM provided a service;[162]
- (C) The complaint fails to state a negligence claim;[163]

---

153  Part I.E., *supra.*
154  *Id.*
155  IGPM Mem. Supp. Dem. at 9-10; Va. Code §§ 54.1-3410.2(D)-(E).
156  Part I.B., *supra.*
157  IGPM Mem. Supp. Dem. at 17.
158  IGPM Reply Br. 19-20.
159  *Griffin*, 227 Va. 317, 321, 315 S.E.2d 210, 213 (1984) (emphasis added).
160  Part. I.B., *supra.*
161  IGPM Plea in Bar at 7-8.
162  *Id.* at 8-9.
163  *Id.* at 9.

- (D) The complaint fails to state a gross-negligence claim;[164] and
- (E) The complaint fails to state a fraud claim.[165]

A plea in bar asserts a single issue, which, if proved, creates a bar to a plaintiff's recovery.[166] The party asserting a plea in bar bears the burden of proof on the issue presented.[167]

The issue raised by a plea in bar may be submitted to the circuit court for decision based on a discrete body of facts identified by the parties through their pleadings, or developed through the presentation of evidence supporting or opposing the plea.[168]

If the facts underlying the plea in bar are contested, a party may demand that a jury decide the factual issues raised by the plea.[169] Conversely, if the parties do not dispute the facts or demand for a jury, the "whole matter of law and fact" may be decided by the Court.[170]

## A. The defendants have not met their burden on their plea in bar to the plaintiff's negligence *per se* claim.

The IGPM defendants assert that the plaintiff fails to plead a viable negligence *per se* claim because "they did not manufacture, sell, deliver, hold, offer for sale or receive in commerce adulterated drugs, but merely provided the service, as interventional radiologists, of injecting the medication."[171] The complaint, however, alleges that "Insight Imaging-Roanoke and its employees and agents" violated the Act by receiving, holding, and selling an adulterated drug.[172] Because neither party submitted additional evidence or demanded a jury, the Court resolves this question on the pleadings.

Assuming plaintiff's factual allegations are true, the IGPM defendants violated Virginia's Drug Control Act. The burden is upon the IGPM defendants to prove that they did not. Without additional evidence persuading the Court that the IGPM defendants' facts are more credible than the plaintiff's, the IGPM defendants cannot meet their burden. Their plea in bar to the negligence *per se* claim is denied.

---

[164] *Id.* at 10.
[165] *Id.* at 10-11.
[166] *Hawthorne v. VanMarter*, 279 Va. 566, 577, 692 S.E.2d 226, 233 (2010).
[167] *Id.*
[168] *Id.*
[169] *Id.*
[170] *Id.* at 578, 234 (quoting Va. Code § 8.01-336(B)).
[171] IGPM Plea in Bar at 8.
[172] Compl. ¶¶ 188-89.

**The defendants have not met their burden on their plea in bar to the plaintiff's VCPA claim.**

The IGPM defendants claim they could not have violated the VCPA because they did not sell goods to Mr. Wingate, but merely provided a medical service.[173]

The Court is not persuaded that the defendants merely provided a service and were not "suppliers" of "goods" within the Act's meaning. This plea in bar to the VCPA claim is denied.

**B. The defendants have not met their burden on their plea in bar to the plaintiff's negligence claim.**

The IGPM defendants contend that the negligence claim against them is a medical-malpractice claim governed by the Virginia Medical Malpractice Act ("VMMA"), and that the complaint fails to plead a breach of the standard of care established by the Act.[174]

The Act governs negligence claims brought against health care providers. "Health care provider" is a defined term that includes "a person, corporation, facility or institution *licensed* by this Commonwealth to provide health care or professional services as a physician or hospital, dentist, pharmacist, registered nurse or licensed practical nurse."[175] Neither the complaint, nor the IGPM defendants' plea in bar alleges that the IGPM defendants are licensed by Virginia in any medical field.

Assuming without deciding, however, that the Act governs the negligence claim, the Court finds that the complaint sufficiently pleads a cause of action for medical malpractice. Under the Act, health care providers must use the "degree of skill and diligence practiced by a reasonably prudent practitioner in the field of practice or specialty in this Commonwealth."[176] A complaint must only allege facts demonstrating that a defendant breached this standard of care.[177]

The plaintiff alleges that the IGPM defendants owed Mr. Wingate numerous duties, including "the duty to provide Mr. Wingate reasonable care and treatment."[178] It further alleges that the IGPM defendants breached these duties when they treated Mr. Wingate with an adulterated steroid.[179] These facts sufficiently allege a gross breach of the duty to exercise the Act's standard of care. The IGPM defendants' plea in bar to the negligence claim is denied.

---

[173] IGPM Plea in Bar at 8.
[174] Va. Code § 8.01-581.20(A).
[175] *Id.* § 8.01-581.1 (emphasis added).
[176] *Id.* § 8.01-581.20(A).
[177] Va. Sup. Ct. R. 3:18 ("An allegation of negligence or contributory negligence is sufficient without specifying the particulars of the negligence.").
[178] Compl. ¶¶ 54, 204-13.
[179] *Id.* ¶ 214.

22

## C. The defendants have not met their burden on their plea in bar to the plaintiff's gross-negligence claim.

The IGPM defendants' plea in bar to the gross-negligence claim repeats the argument that any claim of negligence against the IGPM defendants is governed by the VMMA, and the complaint fails to plead a breach of the Act's standard of care.[180] For the reasons stated above, the IGPM defendants' plea in bar to the gross-negligence claim is denied.[181]

## D. The defendants have not met their burden on their plea in bar to the plaintiff's fraud claim.

The final plea in bar makes two attacks on the plaintiff's fraud claim. First, the IGPM defendants allege that they did not purchase or sell the drug but merely provided a service.[182] Because the plaintiff alleges that these defendants did sell the drug to Mr. Wingate[183] and because the Court lacks any evidence otherwise, the first attack on the plaintiff's fraud claim fails.

Second, the IGPM defendants allege that they had no duty to inform Mr. Wingate that NECC produced the steroid.[184] Their bare assertion, which seems to address the constructive-fraud claim, does not meet the IGPM defendants' burden of proof. The plaintiff's allegation that the defendants had a duty to inform their patients about the source of the drug is sufficient, and the IGPM defendants' plea in bar to the plaintiff's fraud claim is denied.

## V.    The plaintiff's motion for partial summary judgment is granted.

The final motion before the Court is the plaintiff's motion for partial summary judgment on the limit of damages applicable to IHC under the VMMA.

On February 22, 2013, the plaintiff served IHC with several requests for admission. The plaintiff requested IHC to "[a]dmit you are not a health care provider as defined in Virginia Code § 8.01-581.1," and IHC did admit so.[185]

Based on IHC's admission, the plaintiff moved for partial summary judgment. The Court heard argument on April 5, 2013, the day after IHC removed the action to federal district court. Despite the removal, arguments were heard regarding the other meningitis cases raising similar legal issues, including the application of Va. Code § 8.01-581.1.

---

[180] IGPM Plea in Bar at 10.
[181] Part. IV.C., *supra*.
[182] IGPM Plea in Bar at 11.
[183] Compl. ¶ 190.
[184] IGPM Plea in Bar at 11.
[185] Pl.'s Mtn. for SJ Ex. 1.

At the hearing, the plaintiff urged the Court to grant the motion and find that IHC is not a health care provider under Va. Code § 8.01-581.1, thereby establishing that there is no statutory limit or "cap" on damages recoverable against IHC under Va. Code § 8.01-581.15. Counsel for IHC confirmed that IHC admitted it was not a health care provider under the statute and doubted the necessity of an order "when by operation of law we've already been found to be not a health care provider."[186] He then stated that IHC was "not subject to the cap. We can't use that as an affirmative defense or a defense to damages."[187] Noting the apparent agreement between the parties, the Court directed counsel to prepare an order conclusively establishing that IHC was not a health care provider entitled to the damages cap. The parties never presented that order to the Court.

On June 25, IHC made an about-face and requested to amend its admissions. IHC now claims that it is a statutory health care provider entitled to the Act's damages cap. It argues that an amendment will not prejudice the plaintiff, and it urges the Court to deny the plaintiff's motion for partial summary judgment.

Rule 4:11 governs requests for admissions. The rule aims "to expedite a trial by narrowing the contested facts and issues,"[188] and it provides that any matter admitted in response to a request "is conclusively established unless the court on motion permits withdrawal or amendment of the admission."[189]

The decision to allow amendment of an admission is within the Court's discretion,[190] and the Court "may" permit amendment when two conditions are satisfied. First, the moving party must show "upholding the admissions would practically eliminate any presentation of the merits of the case."[191] And second, the amendment must not prejudice the other party's ability to prove its case.[192]

IHC has not met its burden under the first prong of Rule 4:11(b). IHC admitted that it does not fall within the statutory definition of "health care provider." In doing so, it conceded that Va. Code § 8.01-581.15 imposes no limitation on the damages for which it may be liable if the plaintiff prevails. This does not impair IHC's ability to prove that it was not negligent or deceitful when it treated Mr. Wingate. With or without the damages cap, IHC is equally capable of disproving the elements of the plaintiff's claims, and refusing amendment will not practically eliminate IHC's ability to challenge the plaintiff's case.

---

[186]   Hr'g Tr. 29:13-15, Apr. 5, 2013.
[187]   Hr'g Tr. 30:9-10, Apr. 5, 2013.
[188]   *Shaheen v. County of Mathews*, 265 Va. 462, 475, 579 S.E.2d 162, 170 (2003).
[189]   Va. Sup. Ct. R. 4:11(b); *State Farm Mut. Auto. Ins. Co. v. Haines*, 250 Va. 71, 76, 458 S.E.2d 285, 287 (1995).
[190]   *Perel v. Brannan*, 267 Va. 691, 704, 594 S.E.2d 899, 907 (2004).
[191]   *Id.* at 474, 169; Va. Sup. Ct. R. 4:11(b).
[192]   Va. Sup. Ct. R. 4:11(b).

Because IHC's motion to amend does not satisfy the first requirement of Rule 4:11(b), the Court denies IHC's motion to amend its admissions. The Court grants the plaintiff's motion for partial summary judgment. For this case's purposes, it is conclusively established that IHC is not a Va. Code § 8.01-581.1 "health care provider."

## CONCLUSION

For the reasons stated, the Court sustains the demurrers to the fraud claim, granting the plaintiff leave to re-plead. The remaining demurrers, motions, and pleas in bar are overruled and denied. The Court denies the request of Insight Health Corp. to amend its admissions and grants the plaintiff's motion for partial summary judgment.

The Court asks Mr. Sexton to circulate and submit an appropriate order, including an order from the April 5, 2013 hearing.

With best regards, I am

Very truly yours,

Charles N. Dorsey

CND/skb

25