<pre>
 1                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MASSACHUSETTS
 2

 3

 4   IN RE:  NEW ENGLAND           )  MDL NO. 13-2419-RWZ
     COMPOUNDING                   )
 5   PHARMACY CASES LITIGATION     )
                                   )
 6                                 )
                                   )
 7                                 )
                                   )
 8

 9

      BEFORE:  MAGISTRATE JUDGE JENNIFER C. BOAL
10

11

                         MOTION HEARING
12

13

14

            John Joseph Moakley United States Courthouse
15                    Courtroom No. 2
                     One Courthouse Way
16                    Boston, MA 02210

17

                       JULY 17, 2014
18                       2:30 p.m.

19

20

21

22

23            Valerie A. O'Hara, FCRR, RPR
                 Official Court Reporter
24   John Joseph Moakley United States Courthouse
             One Courthouse Way, Room 3204
25                Boston, MA 02210
             E-mail: vaohara@gmail.com
</pre>

```
1    APPEARANCES:

2    For The Plaintiffs:

3        Hagens, Berman, Sobol, Shapiro LLP, by
     KRISTEN JOHNSON PARKER, ATTORNEY,
4    55 Cambridge Parkway, Suite 301, Cambridge,
     Massachusetts  02142;
5
         Lieff, Cabraser, Heimann & Bernstein, LLP, by
6    MARK P. CHALOS, ESQ., 150 Fourth Ave North,
     Suite 1650, Nashville, Tennessee 37219;
7
         Lieff, Cabraser, Heimann & Bernstein, LLP, by
8    ANNIKA K. MARTIN, ESQ., 250 Hudson Street, New York,
     New York  10013-1413;
9
         Branstetter, Stranch & Jennings, PLLC, by J. GERARD
10   STRANCH, IV, ESQ., 227 Second Avenue North, 4th Floor,
     Nashville, Tennessee 37201;
11
         Robinson & Cole, LLP, KIMBERLY A. DOUGHERTY,
12   ATTORNEY, One Boston Place, Suite 2500, Boston,
     Massachusetts  02108;
13
     For the Defendants:
14
         Duane Morris LLP by MICHAEL R. GOTTFRIED,
15   ESQ., 100 High Street, Suite 2400, Boston, Massachusetts
     02110-1724;
16
         Hermes, Netburn, O'Connor & Spearing, by DIANNE E.
17   RICARDO, ATTORNEY, 265 Franklin Street, 7th Floor,
     Boston, Massachusetts 02110;
18
         Gideon, Cooper & Essary, PLC, by C.J. GIDEON, JR.,
19   ESQ. and CHRIS J. TARDIO, ESQ., 315 Deaderick Street,
     Suite 1100, Nashville, Tennessee 37238;
20
         Law Offices of Jay Blumberg, by JAY J. BLUMBERG,
21   ESQ., 158 Delaware Street, P.O. Box 68, Woodbury,
     New Jersey 08096;
22
         Alexander Dubose Jefferson & Townsent, by MARCY H.
23   GREER, ATTORNEY, 515 Congress Avenue,
     Suite 2350, Austin, Texas 78701;
24

25
```

1   APPEARANCES (CONTINUED):

2       Nutter, McClennen & Fish, LLP, by SARAH P. KELLY,
    ATTORNEY, Seaport West, 155 Seaport Boulevard,
3   Boston, Massachusetts 02210-2604;

4       Fulbright & Jaworski LLP, by ADAM T. SCHRAMEK, ESQ.,
    98 San Jacinto Boulevard, Suite 1100, Austin, Texas
5   78701-4255;

6       Goodwin Procter, LLP, by ROBERTO M. BRACERAS, ESQ.
    and JAMES REHNQUIST, ESQ., Exchange Place, 53 State
7   Street, Boston, Massachusetts 02109;

8   <u>VIA PHONE</u>:

9   Marc Lipton, Esq.
    Patrick Fennell, Esq.
10  Mark Zamora, Esq.
    Ben Gastel, Esq.
11  Yvonne Puig, Atty.
    Eric Hoffman, Esq.
12  Joshua Klarfeld, Esq.
    Matthew Cline, Esq.
13  George Nolan, Esq.
    Dan Clayton, Esq.

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                      PROCEEDINGS
 2              THE CLERK:  All rise.  You may be seated.
 3   Today is July 17th, 2014.  We're on the record in the
 4   matter of New England England Compounding Pharmacy,
 5   Incorporated, et al.  The case number is 13-md-2419, and
 6   can I have counsel please identify themselves for the
 7   record starting with the plaintiffs' steering committee.
 8              MS. PARKER:  Good afternoon, your Honor,
 9   Kristen Johnson for the plaintiffs' steering committee.
10              MR. STRANCH:  Good morning, your Honor,
11   Gerard Stranch on behalf of the plaintiffs' steering
12   committee.
13              MR. CHALOS:  Mark Chalos for the plaintiffs.
14              MS. GREER:  Marcy Greer for the St. Thomas
15   entities and the Ascension parties.
16              MR. SCHRAMEK:  Adam Schramek for the same
17   parties.
18              MS. KELLY:  Sarah Kelly for the St. Thomas
19   entities.
20              MR. GIDEON:  C.J. Gideon on behalf of the
21   Tennessee Clinic Defendants.
22              MR. TARDIO:  Chris Tardio for the Tennessee
23   Clinic Defendants.
24              MR. BLUMBERG:  Jay Blumberg for the Premier
25   defendants.
```

02:44PM (line 10)

02:45PM (line 20)

1          MR. REHNQUIST:  Good afternoon, your Honor,

2    Jim Rehnquist for Unifirst.

3          MR. BRACERAS:  Good afternoon, your Honor,

4    Roberto Braceras for Unifirst.

5          THE COURT:  All right.  Is there anyone else

6    who is in the courtroom who anticipates speaking today

7    who wants to identify themselves?

8          (No response)

9          THE COURT:  No.  All right.  So for purposes

02:45PM   10   of the people on the phone, I would just ask that the

11   counsel stay seated and actually just pull the

12   microphones, if you can, towards you.  I found that that

13   is the best way to communicate the most effectively with

14   the people on the phone, and I also apologize, we were a

15   little slow getting here and particularly Mr. York

16   getting here.

17          I'm on emergency criminal duty, and we had

18   an unexpected visitor just before we got here so we

19   needed to take care of that gentleman before we could

02:46PM   20   get over to this courtroom.

21          Let me first start by asking, I don't know

22   if there's anyone here from the trustee's office or if

23   anyone can bring us up to speed on what's happening in

24   the bankruptcy proceedings with respect to the

25   settlement, and you probably need to come up to the

1    podium so that the people on the phone can hear you.

2            MR. GOTTFRIED:  Michael Gottfried.  I

3    represent the trustee, Paul Moore.  There was a hearing

4    in front of Judge Boroff on Monday in the bankruptcy

5    court in Springfield where the trustees' motions to

6    approve the settlement with the affiliated defendants

7    and the insiders was presented.

8            Judge Boroff indicated on the record that he

9    was going to approve that settlement.  A form of

02:46PM  10   proposed order I believe may be submitted as soon as

11   this afternoon, and that's the status.

12           THE COURT:  All right.  Then as I understand

13   it, and this relates to motions that aren't necessarily

14   before me but that there's framework set up in the

15   settlement agreement to allow for discovery of the

16   defendants that are in the bankruptcy court proceeding

17   but at a certain point after the settlement has been

18   approved.  Is that correct?

19           MR. GOTTFRIED:  The settlement agreement

02:47PM  20   provides that within 10 business days after the entry of

21   an order, the trustee will file a motion which addresses

22   the scope of discovery as laid out in the settlement

23   agreement specifically, and that settlement agreement

24   was filed in the MDL.

25           One of the conditions, for example, in

Section 3.2, sub A, III is that that motion will address
the permissibility of discovery against the estate
parties, the contributors and the contributor and
affiliate-released parties but only to the extent that
discovery is relevant to the prosecution or defense of
claims against defendants other than the estate parties,
the contributors and the contributor and
affiliate-released parties.

The position that I took on behalf of the
trustee at the last MDL status conference with
Judge Zobel was that the stay as it relates to these
parties would be best addressed in the context of the
filing of this motion should Judge Boroff approve the
settlements, and that's still our position.

THE COURT:  All right.  Thank you.  Does
anyone else wish to address what's going on in the
bankruptcy court?

MS. PARKER:  Briefly, your Honor, if I may.
Let me start by saying I don't disagree with anything
that Mr. Gottfried just said.  I will clarify though
that fundamentally the settlement agreement contemplates
that there will be discovery taken from NECC, the other
affiliated entities and the insiders who are parties to
those settlement agreements.

The details in terms of what that discovery

1   would be and the timing to some extent was left for

2   another day, but it is contemplated by that agreement

3   that discovery will occur.

4           THE COURT:  All right.  Does anyone else

5   wish to speak to the bankruptcy proceedings?

6           (No response)

7           THE COURT:  My next question is what is the

8   status with respect to the parties that elected to go to

9   mediation?

02:49PM  10           MS. PARKER:  As to -- so, there's a number

11  of parties, your Honor, I'll go through them.  As to

12  ARL, there is a settlement in principal, and I believe

13  the papers have been signed.  That is proceeding apace.

14           As to Inspira, which is a New Jersey clinic,

15  that mediation is ongoing.  As to Liberty, Liberty is

16  the designer and builder of the clean rooms.  Liberty

17  has opted out of mediation, so the PSC is in the process

18  of shifting from a mediation interaction with Liberty to

19  a full-blown litigation posture, and that's in progress

02:49PM  20  as well.

21           There are two Florida pain clinics that are

22  participating in mediation.  There's a medication

23  scheduled with those clinics for later this month, and

24  as to Victory, which is the HVAC company, mediation

25  briefing is in process, and there's a mediation

1    scheduled for Monday.

2           THE COURT:  Thank you.  So, does anyone else

3    want to speak to the mediation process?  All right.

4    That's all very helpful to me in terms of what's going

5    on.  So I have two referrals right now.  One is the

6    motion to stay discovery by St. Thomas.  That was filed

7    in November, and then I also have the PSC motion for

8    entry of the various protocols and discovery timelines,

9    which I believe was filed in January.

02:50PM  10          Obviously, the cases have moved on since

11   then, and there have been a lot of related motions filed

12   as well, so it seems to me -- I'm going to hear from the

13   parties, but I'll also have a conversation with

14   Judge Zobel to see if she's interested in referring more

15   of the related motions to me so that I can decide them

16   all at once, or if she doesn't want to, but it seemed to

17   me for me to decide these issues, it touches on a lot of

18   the other motions that were filed, and, in particular, I

19   was thinking the plaintiffs' steering committee had a

02:51PM  20   motion to partially lift the stay, Liberty interests has

21   filed a motion for a Rule 16.1 conference, Liberty

22   interests has also filed a motion to lift the discovery,

23   there are various oppositions to the discovery, and it

24   goes on from there.

25           They all seem to be related to the need to

1    set a discovery schedule.  I also think, and I'm happy

2    to hear from the parties, that at least the motions that

3    are before me, in particular, the PSC's motion for entry

4    of a bellwether trial would allow me to set a discovery

5    schedule, so I do think a number of the parties have

6    asked for a formal Rule 16 conference, and I absolutely

7    agree that is the normal way to proceed.

8         What I would like to also hear from the

9    parties as we go around the room to discuss a potential

02:52PM  10    schedule is whether there's any objection to me

11    considering this to be the Rule 16 conference, and let

12    me say I understand that a lot of people have not put

13    forth a proposed framework, so what I was thinking of

14    doing, and, of course, this may change based on what I

15    hear today and perhaps during my conversation with

16    Judge Zobel is that I would like -- the PSC has done a

17    very nice job of putting charts together for me with the

18    different variations and proposals.

19         In particular, the three groups that have

02:52PM  20    put together quite detailed proposals are the PSC, the

21    St. Thomas related defendants and the Tennessee

22    defendants, and so on other issues, I've gotten charts

23    from the PSC that outline what the differences are

24    between the various proposals, so what I was thinking of

25    doing was having the PSC put together such a chart and

1    have that filed within a week from today, and then two

2    weeks thereafter, if anyone else who has not put forward

3    discovery framework or wants to add anything to file

4    something two weeks after that, and I was thinking of

5    limiting it to five pages because I think a lot of the

6    arguments have been made already.

7           That's not to say there are not other

8    arguments out there to be made, but I certainly don't

9    need to have arguments rehashed that have been presented

02:53PM  10    on the many filings on this topic, and then I would

11    propose to issue a schedule for discovery and a

12    framework for the bellwether trials.

13           So I'll hear from the PSC both on their

14    motion, I know that we've moved on from the

15    January motion and then also the framework that I

16    proposed.

17           MS. PARKER:  Thank you, your Honor.  I

18    suspect that Judge Zobel will only be too pleased to

19    refer those additional matters to you given her comments

02:54PM  20    at the last status conference to the extent that she

21    dislikes discovery matters.  We think that makes a lot

22    of sense.

23           I'm going to turn things over to my

24    colleague, Mr. Stranch, to address some of the specifics

25    there.  One thing I would want to stress to the Court is

1    that there's a lot of work that could be done and should

2    be done in the interim between today's possible Rule 16

3    conference and a formal setting of discovery that it

4    sounds like given the timelines we've articulated may

5    come a month, month and a half down the road.

6              MR. STRANCH:  Thank you, your Honor.

7    Gerard Stranch on behalf of the PSC.  I wanted to bring

8    one thing to the Court's attention.  You refer -- you

9    reference that there were two motions that had been

02:55PM  10    referred to the Court.  There's a third, the deposition

11    protocol is still outstanding.

12              THE COURT:  Yes.  I'm sorry I didn't mention

13    that.  That's a curiosity based on the court's docketing

14    system, and I realize I still need to issue a deposition

15    protocol, so thank you for raising that.

16              One of the ways we tell whether there are

17    motions outstanding is there's a little hammer or gavel

18    next to it, and once we decide it, it goes away.  For

19    some reason, there's no hammer or gavel next to that,

02:55PM  20    perhaps because I issued the ESI protocol.  That may

21    have cleared it from being on the reminder system, but I

22    do recognize that I have to issue the deposition

23    protocol, so thank you.

24              MR. STRANCH:  That's good, and the other

25    thing is, your Honor, we, as the PSC, have no objection

1   to considering this a Rule 16 conference.

2         The guiding light that you're going to hear

3   from us during this hearing today is going to be we need

4   discovery to get started so we can get to a trial date

5   as quickly as possible.  Two years have already gone

6   past.  You know, many of our clients were older, to

7   begin with, and are very sick and have been very sick,

8   and we'd like those people to have their day in court

9   before they pass on, your Honor.

02:56PM   10         I'll turn it over to Mr. Chalos who will

11   address the bellwether selection process and the

12   schedule that gets us through that process that we've

13   worked with the defendants on, and if you have any

14   specific questions about the discovery and that process,

15   I'd be happy to discuss that with the Court.

16         THE COURT:  I do have some actual specific

17   questions about what was proposed by the PSC.  If I

18   read, and I know there have been various versions of the

19   proposal, it looked as if in your schedule that you had

02:56PM   20   a date for the defendants to serve the initial

21   disclosures but not the plaintiffs, so have plaintiffs

22   provided initial disclosures, or what is the status, and

23   also the fact sheets?

24         MR. CHALOS:  Right.  Well, your Honor, let

25   me step back, if I may, Mark Chalos on behalf of the

1   plaintiffs.  We have over the last 24 hours had two meet

2   and confer sessions with the St. Thomas Hospital

3   defendants, which includes the Ascension parties and the

4   St. Thomas Clinic defendants.  We had a lengthy phone

5   call last night and an in-person meeting today.

6          We were able to make substantial progress, I

7   think, on a number of the issues that were raised in the

8   pleadings, the motions and the responses and the

9   supplements thereto.

02:57PM   10          We have some issues that we have not come to

11   a full agreement on yet.  I think we can probably work

12   through those, and then there are going to be probably

13   at least one big issue that we're going to need your

14   Honor's guidance on, so with your Honor's permission,

15   I'd like to run through a few of the areas where we do

16   have agreement, and then we can talk about the areas

17   where we will probably come to agreement, and then we

18   can talk about the area where we'll probably need your

19   Honor's guidance and ruling.

02:57PM   20          We have, and this is not intended to be the

21   entire universe of areas where we do have agreement, but

22   we do have an agreement that both the defendants and the

23   PSC will serve initial disclosures related to common

24   issues within 20 days of your Honor's entering an order.

25          Given your Honor's suggestion that there's

1  going to be some further filings, we would like to do

2  that within 20 days of today, and we don't have an

3  agreement yet on that, but we'd ask your Honor to order

4  that the defendants, the St. Thomas defendants, the

5  clinic defendants and the PSC to serve initial

6  disclosures within 20 days of the hearing today.

7        We have agreed on some presumptive limits

8  for in terms of numbers for requests for admissions,

9  interrogatories and requests for production.  Those are

02:58PM  10  200 for requests for admissions, 40 for interrogatories,

11  100 for requests for production, and the defendants have

12  agreed that they would answer the outstanding

13  interrogatories irrespective of the presumptive limits

14  that we've agreed on.

15        We've also agreed that the privilege logs

16  would be produced no later than 30 days after

17  substantial completion of production of responsive

18  documents.  We've agreed that there is a deadline for

19  amending complaints and joining new parties relating to

02:59PM  20  common issues of 60 days after the completion of common

21  fact discovery, and that includes amendments and joinder

22  of new parties related to common issues.

23        We have also discussed a bellwether

24  selection process that would include, and it's something

25  like what the plaintiffs propose, although it includes

1    some features that we didn't actually propose, and what

2    it would include is designating a category, and this

3    would run in parallel with the common fact discovery.

4         At some point after the plaintiff profile

5    forms were produced to the defendants, along with

6    medical records authorizations and other records

7    authorizations your Honor has already approved, the

8    parties would each propose some number of cases between

9    10 and 15 that would total, you know, somewhere 20 to

03:00PM   10    30.

11        Now we don't have an exact yet agreement on

12   whether it's 10 or 15 or somewhere in between, and we're

13   going to continue to discuss that, and for that group of

14   cases, between 20 and 30, there would be some limited

15   case specific discovery, and we had discussed doing

16   depositions of the plaintiffs, you know, the injured

17   person, and then if there's a loss of consortium claim,

18   the spouse and possibly the treating physicians, but it

19   would be some limited number of depositions, and in

03:00PM   20    those cases, those plaintiffs would not be ordinarily

21   subject to a second deposition later, but there would be

22   a limited -- for that pool, the initial trial pool or

23   potential trial case pool, there would be some limited

24   discovery, and then at some point after that discovery

25   was concluded, the parties would select or propose some

1    smaller number of cases that would then serve as the

2    bellwether trial pegs.

3            In other words, we'd create a discovery pool

4    where there would be some limited discovery, and out of

5    that pool, the parties would each propose some number of

6    cases for a bellwether trial, and a feature of that plan

7    would include some number of strikes that each side

8    would have to strike one or two of the other side's

9    proposed picks, with the notion being that of that

03:01PM  10    group, we would get the bellwether cases that would

11    proceed to trial.

12            In the area where there is still some

13    disagreement, but I think it's something we can probably

14    work through, is the schedule for common expert

15    discovery.  The St. Thomas Hospital defendants have

16    proposed a schedule whereby the experts, the parties

17    would disclose their reports, then the expert would be

18    deposed, then the defendants would produce their

19    reports, and then those experts would be deposed, and

03:02PM  20    then the plaintiffs would have rebuttal experts, and

21    then they'd give their reports, then they'd be deposed.

22            That's the St. Thomas Hospital's proposal.

23    Our proposal is that the reports are done, all three

24    sets of reports, then depositions would occur of those

25    experts so to avoid having more than one deposition of

1   given expert if that expert gives rebuttal reports --

2   rebuttal opinions.

3           I understand that, and I'm sure they will

4   speak for themselves, but I understand that the

5   St. Thomas Clinic defendants think there ought not be

6   any rebuttal reports, period.  That's an area we are

7   still working on.  We may need your Honor's guidance on

8   that, we may not.

9           Then the issue on which I think we'll

03:02PM   10   probably need your Honor's ruling is where we're headed

11   with this and what the end point is.  We, the PSC,

12   believe that, as our schedule delineates, that we can

13   move these cases to a trial in 2015, that we can be

14   ready for trial in August or September of 2015.

15           We have in the spirit of compromise

16   discussed moving that date back to something that we

17   could all live with, and we had talked about March of

18   2016, February or March, and we've agreed with the

19   St. Thomas Hospital defendants that March of 2016 seems

03:03PM   20   like a reasonable end point as an aspirational goal.

21           We understand that your Honor may not today

22   be able to peg it to a particular date, given

23   Judge Zobel's calendar and other unknowns, but with a

24   target date I think we can then fill in some of the

25   other deadlines and agree on those.  I don't think we're

1    going to have trouble agreeing on intermediate deadlines

2    if we know where we're shooting for.

3            We think leaving it open-ended is not in the

4    interests of justice.  I think these folks have been

5    injured now two years ago, they are still suffering,

6    and, you know, pushing it into '16 is probably longer

7    than we'd like, but beyond that I think serves a real

8    injustice to our clients and also to the defendants,

9    who, I'm sure, want a resolution as well.

03:04PM  10            I understand that the St. Thomas Clinic

11    defendants think that these cases cannot be tried until

12    February or March of 2017.  That's a position we

13    disagree with.  We think that's unreasonable, and while

14    we think we can do it in '15, we'd be willing to agree

15    for the sake of compromise to start in February or

16    March of '16, and we have an agreement with St. Thomas

17    Hospital defendants on that issue.

18            We don't have an agreement with the

19    St. Thomas Clinic defendants on that issue, so we think

03:04PM  20    we'll probably need your Honor's guidance on that,

21    recognizing that it's our position that we can do it in

22    '15.  We'll have to work hard, and it can be done in

23    that.

24            So what we would propose then, your Honor,

25    is, you know, given those issues, we could put together

1    a -- and we have, St. Thomas Hospital lawyers went and

2    after our meet and confer session this morning went and

3    created a redline of their order that reflects a number

4    of these agreements, and we think we're pretty close on

5    this.

6             We'd like to spend a little more time with

7    it, and we can submit to your Honor certainly with the

8    St. Thomas Hospital defendants a joint proposal if there

9    remains any area of disagreement, for example, with the

03:05PM  10   common expert discovery schedule, we can outline our

11   various positions there and ask your Honor to rule on

12   that.

13            I don't know, given the position I've just

14   learned about 30 minutes ago or less that St. Thomas

15   Clinic thinks that we need another two years, two and a

16   half years before we can get to the first trial, I don't

17   know that they're going to participate in that joint

18   submission.

19            They may have to submit their own and

03:05PM  20   explain why we need to wait four and a half years after

21   the outbreak before Trial Number 1.  With that said, I

22   think that's at least for the St. Thomas Hospital

23   defendants, we can submit a joint proposed order that

24   may have some disagreement but would be largely agreed

25   upon, and we can do that within a week.

1           THE COURT:  So that's all welcome that you

2      have done so much work and agreed on many areas.  Are

3      you proposing this framework to apply just to the

4      St. Thomas -- I may have captured that wrong, but the

5      St. Thomas defendants and the Tennessee defendants,

6      because obviously we have other groups of defendants?

7           MR. CHALOS:  Right.  Yes, your Honor, our

8      notion is that this order would serve as a framework

9      specifically for the St. Thomas defendants.  There are

03:06PM  10  other clinics where they had a number of patients died

11     or suffered serious injury, so, and those are Virginia

12     and Michigan and New Jersey and Florida.  They may need

13     their own orders in those cases.

14          THE COURT:  It sounds as if I would need to

15     convene a separate Rule 16 conference, I mean, if

16     Judge Zobel would like me to do that, that a separate

17     Rule 16 conference would need to be convened for those

18     clinics?

19          MR. CHALOS:  I think so, and we don't know

03:06PM  20  to what extent those cases will be resolved, and I

21     understand there may or may not be discussions with

22     groups, I don't want to disclose anything confidential,

23     but you may or may not have to do that, I guess.

24          THE COURT:  What is your view with respect

25     to what are the so-called national defendants?

1        MR. CHALOS:  Well, the schedule as we've

2   proposed it and in particular the schedule that we're

3   now coming to some agreement with the St. Thomas

4   Hospital defendants on would allow for those defendants

5   to decide whether they're going to continue mediating

6   and resolve the claims against them or they're going to

7   get into litigation, and if they're in litigation, some

8   of these cases also named them as parties, so to the

9   extent there are any remaining national defendants, they

03:07PM  10   would be subject to, you know, these deadlines, and

11   they'd be part of these cases.

12        Now, it remains to be seen how many of those

13   will still be in the case.  You know, the bankruptcy

14   settlement will resolve the claims against a majority, a

15   vast majority of the national defendants.  We've

16   resolved through mediation some of the other defendants,

17   claims against some of the other defendants, but, yeah,

18   they would be subject to this, and, you know, if they

19   for some reason felt -- well, let me back up.  They have

03:08PM  20   an opportunity now through the MDL courts, mediation

21   program to resolve the claims.

22        If they choose not to, then, you know, we

23   have to go to trial, and we shouldn't wait any longer,

24   and we've already waited two years, and we shouldn't

25   wait any longer because they can't decide to settle or

1    not settle.  Everybody has been aware of this litigation

2    for two years.  They say they are just now parties, but

3    we know they hired lawyers two years ago, so we think we

4    ought to move forward and not delay because there's a

5    possibility there may be additional defendants.

6              MS. PARKER:  If I may, your Honor.

7              THE COURT:  Yes.

8              MS. PARKER:  I agree with Mr. Chalos, the

9    framework that we have set forward we expect will be a

03:08PM  10    helpful reference point for talking about the scheduling

11    with other defendants.  There are certainly other

12    defendants out there who, in particular, I'm thinking of

13    Liberty who is trying to aggressively push for

14    discovery.

15              I don't see counsel for Liberty in the

16    courtroom today.  I'm sure they want to be heard on

17    these subjects, so while we think this plan will be

18    helpful as perhaps a benchmark or sample, I think we

19    want to make sure all defendants are heard from on these

03:09PM  20    issues.

21              I wouldn't want to paint all of the

22    defendants with this particular Tennessee centric brush.

23    That said, we do think it would be a mistake at this

24    point in time to wait to address some of these Tennessee

25    issues on which there has been meeting and conferring

1    and agreement and some forward progress until all other

2    defendants could come into this court and comment on

3    what they would like their discovery plans to be.

4              THE COURT:  Have the plaintiffs provided

5    completed fact sheets?

6              MS. PARKER:  We have not, your Honor.  It

7    occurred to me that it might actually be helpful to

8    describe for you what discovery has been done so far to

9    give you sort of the broader framework.

03:10PM  10              THE COURT:  Yes.

11              MS. PARKER:  So as of now, all defendants in

12   the MDL have been provided the opportunity to access the

13   document repository that contains all formal discovery

14   produced so far in the MDL.  That includes primarily

15   documents that were produced by clinics and doctors in

16   response to subpoenas served by the PSC early on.  It

17   also includes materials that were informally produced by

18   the trustee from NECC's files.  I believe the last

19   figure Mr. Fern gave us at the status conference was

03:10PM  20   that there were about 44,000 pages of documents that had

21   been informally produced by NECC.

22              The PSC has also provided access to --

23   produced, we've formally produced it, the PSC formally

24   produced materials relating to our original inspection

25   of the NECC facility back in December of 2012.  Those

1    materials include some testing results from sampling the

2    PSC had done at that time as well as other materials

3    relating to that inspection process.

4         The PSC is in the process of producing still

5    photographs that were taken during that inspection.  The

6    PSC has already provided access to video footage that

7    was taken by the PSC during that inspection.

8         The St. Thomas Clinics have served at least

9    three third-party subpoenas.  I believe responses,

03:11PM  10   productions in response to those subpoenas has started

11   to occur, and in terms of the fact sheet, your Honor,

12   you may see on the docket today shortly before court,

13   the PSC actually formally filed the fact sheet and the

14   releases that this Court had agreed upon.

15        As a formal matter, those had not been

16   docketed for the information of all plaintiffs' counsel

17   out there.  They had, however, been produced to counsel

18   in Tennessee, counsel who represented Tennessee victims

19   a long time ago, and counsel in Tennessee, as I'm sure

03:12PM  20   Mr. Chalos and Mr. Stranch can speak to, are aware that

21   those fact sheets will need to be completed soon.

22        THE COURT:  As well as the authorizations.

23        MS. PARKER:  As well as the authorizations

24   and releases, and one final point of discovery, NECC

25   made the NECC facility available to defendants in this

1    action recently for additional inspections, so, for

2    example, I know that defendant Unifirst and defendant

3    InSight, which is a Virginia clinic that is relatively

4    new to the MDL, conducted inspections of the facility

5    yesterday.

6              THE COURT:  All right.  Thank you.

7              MR. CHALOS:  With respect to the plaintiff

8    profile form, we have in our contemplation and in an

9    agreement with I think both sets of St. Thomas

03:13PM   10    defendants that the plaintiffs would provide those 60

11    days, no later than 60 days after your Honor enters a

12    scheduling order.

13              We also had some discussions that we would

14    provide those on a rolling basis and we wouldn't

15    necessarily wait 60 days to dump all of those at once.

16    We have agreed to encourage the plaintiffs' lawyers to

17    get them done as soon as possible, and I know many have

18    them started, or at least some of them have started that

19    process, for example, my firm has, Mr. Stranch's firm

03:13PM   20    has and some other firms have, so we don't intend to

21    wait the full 60 days to provide completed clinic

22    profile forms and medical authorizations.

23              That statement or those agreements are made

24    with the understanding that we would be moving toward,

25    you know, completing both common fact discovery and case

1   specific fact discovery for a smaller group of cases and

2   do so with the idea of getting to a reasonable trial

3   date, so we stand ready to honor that, and we will

4   continue to prepare those plaintiff profile forms and

5   get the medical authorizations signed on a rolling basis

6   short of this 60-day deadline that would begin to run

7   when your Honor enters her order or sooner if your Honor

8   decides that we want to start that clock running today,

9   we stand ready to comply with that.

03:14PM   10         MR. STRANCH:  If the Court would like to get

11   that and discovery started today, we stand ready,

12   willing and able to do that.  I know most of the firms

13   that have a large number of cases in Tennessee have

14   already -- are well underway with getting the plaintiff

15   profile forms completed, and so we're ready, willing and

16   able to go forward.  We'd like full discovery to go

17   forward on the common issues as quickly as possible.

18         MR. BRACERAS:  Your Honor, if I may, on

19   behalf of Unifirst?

03:14PM   20         THE COURT:  Yes.

21         MR. BRACERAS:  Thank you.  My client would

22   certainly be pretty happy to be such an afterthought in

23   this case, and we're happy to continue that roll of

24   being an afterthought, especially, you know, perhaps

25   we're not going to be a defendant in the Tennessee cases

1    at all, but just to update your Honor on where we stand,

2    we are looking to mediate the case in October, and we

3    have dates to do that in October, and we have a motion

4    to dismiss that's still pending that plaintiffs haven't

5    responded to.

6            While we have this mediation outstanding,

7    we've agreed to stay discovery, but we still, we

8    believe, need to be a part of this discussion in the

9    event that mediation is either not successful or also,

03:15PM   10  as your Honor is probably aware, in the bankruptcy

11   proceedings if the bankruptcy court is unwilling or

12   unable to issue releases that would cover all potential

13   possible claimants, and that's a real issue that the

14   Bankruptcy Judge really left open.

15           Even though he approved the settlement

16   amounts, he made very clear that he was only addressing

17   the settlement amounts and the approval of the plan, and

18   whether he actually would authorize releases that went

19   to nondebtors is a question for another day, and that

03:16PM   20  will be addressed during the approval of the plan, and

21   the trustee, I believe, committed to providing a draft

22   of the plan in August, but, still, by the time that plan

23   is actually submitted, imbedded and the Bankruptcy Judge

24   actually rules on whether to issue injunctions that

25   would authorize releases of nondebtor parties is

1      certainly an open question.

2              So for all the defendants, not just

3      Unifirst, there's a question as to whether, even if

4      mediation is successful in terms of reaching an amount,

5      whether it would be successful in obtaining an actual

6      settlement that would gain the releases that would be

7      the necessary consideration for any settlement.

8              So while we have committed to the mediation

9      in October, it's still a very real possibility that we

03:17PM   10   will be continuing to litigate this case, and I believe

11     when we appeared before your Honor some months ago, it

12     may have been my suggestion that there are a number of

13     parties mediating, let's wait to see where those go, and

14     then we can get back together.

15             We're not suggesting that we not engage in

16     common discovery.  It seems like a good idea to engage

17     in common discovery while the mediations are going on,

18     but we were not invited to this meet and confer, so

19     certainly we would need to have that input.  Some of the

03:17PM   20   suggestions by counsel seem reasonable, and they're

21     consistent with much of what we argued in our bellwether

22     briefing long ago, but a central point that is being

23     completely overlooked here is that this is an MDL that

24     is a nationwide MDL, this is not a Tennessee MDL, and

25     the bellwether process, and we've cited to some of the

1    leading works and authorities on bellwether trials, and

2    I'll refer your Honor to the Judge Fallon piece in the

3    *Tulane Law Review*, which is really the leading piece on

4    this, and he conducted some MDLs on this.  I have extra

5    copies if the Court would like.

6              THE COURT:  I've actually read it.

7              MR. BRACERAS:  You've read it?

8              THE COURT:  Yes, a number of parties had

9    cited to it, so it was very useful.

03:18PM   10              MR. BRACERAS:  So, your Honor is probably

11   familiar, our proposal really tracks Judge Fallon.  We

12   weren't that creative.  We more or less tracked

13   Judge Fallon's suggestions, both in timing and in the

14   amount of cases to select, but what plaintiffs here

15   today are focusing on are just Tennessee, and what

16   Judge Fallon emphasizes throughout his piece, and it's a

17   central aspect of an MDL, otherwise you wouldn't have an

18   MDL in the first place.  It has to be represented.

19              A bellwether trial is worth nothing if it's

03:19PM   20   not representative, so that's why Judge Fallon goes

21   through all the different categories that you have to

22   collect information on, and there's such a difficult

23   process of the parties selecting maybe 20 cases each.

24              Our proposal, frankly, was to involve the

25   Court more in that selection process so that you don't

1   have each side proposing 20 outliers that are not as

2   represented.  What needs to be done here if we are going

3   to talk about the bellwether process right now is a

4   process that would apply to all of the cases in all of

5   the MDLs.

6           Now, we think that it's perfectly

7   appropriate to start talking about common discovery.

8   Frankly, I don't have an objection to considering this a

9   Rule 16 conference, and we can talk about, just like we

03:19PM   10   could any routine civil litigation before your Honor, we

11   could start talking about deadlines for written

12   discovery, for common discovery, for the plaintiff fact

13   sheets, for executing the medical releases, but until

14   we -- if we're going to start talking about the

15   bellwether process, we need all of the other defendants

16   involved as well, and we need to talk about other

17   jurisdictions because to be truly representative, we

18   need to be representative of Indiana, Michigan.

19           Before I left for the court today, we

03:20PM   20   received five brand new filings from Indiana.  So, while

21   counsel says, you know, understandably, and you would

22   expect plaintiff's counsel to talk about it's been two

23   years since the date of the injury, and he also

24   referenced that Unifirst was brought into this case in

25   January.

1          We continue to be brought into new cases

2     every day, including four new cases or five new cases

3     just this afternoon after lunch, so for us to engage in

4     an MDL, it has to capture all of the jurisdictions, all

5     of the cases.  The bellwether process has to be

6     represented, not just of a select clinic in Tennessee.

7          So I'm happy to go forward, your Honor, and

8     discuss other aspects of common discovery in some of

9     what we would suggest, even in terms of common

03:21PM  10     discovery, frankly, I think a trial -- and, again, we

11     weren't invited, we weren't part of the meet and confer.

12          We think a trial in early 2016 is

13     aggressive, if not unrealistic.  If you just think of

14     all the different stages of common discovery, then after

15     common discovery, and your Honor is familiar with all

16     we're talking about the written discovery, we're talking

17     about completing the plaintiff profile sheets, we're

18     talking about executing the medical releases and just

19     collecting those medical records, which would all have

03:21PM  20     to come before the ultimate selection and proposal of 20

21     cases per side, and then I would suggest the Court's

22     role between those 40 cases, selecting the 20 most

23     representative of those 40 cases, then we're talking

24     about depositions, and there would be many depositions,

25     not only of the national defendants, but in common

1   discovery, it would be of the clinic defendants and

2   other parties as well.

3           Then after all that common discovery is

4   involved, then you have the selection of the bellwether

5   process.  You have the expert selection -- I'm sorry, I

6   would have forgotten about the expert discovery.  That's

7   usually about 18 months going up to summary judgment, as

8   your Honor is familiar.

9           If we were to do that, 18 months here, then

03:22PM   10   you get into the selection process, then you take the

11   case specific discovery, which plaintiffs have suggested

12   and we agree would have to go in.  One thing plaintiffs

13   didn't indicate is each case would then be subjected to

14   a summary judgment process.  By the time -- that would

15   take you beyond 2016 is all I'm saying.

16          Now, I don't know if we have to set -- we're

17   not here to argue about what the trial date is because

18   it's so far out, it might not be worth our time right

19   now.  In a way, I think we can get started, just get

03:23PM   20   engaged in common discovery.  We'll be back before your

21   Honor, whether it's every month or every couple of

22   months, and we can talk about the end dates down the

23   road.

24          I don't know if we have to spend much time

25   arguing whether, you know, June, 2017 or February, 2017

1    or June, 2016 is the most realistic.  I'm just sharing

2    my experience from other, you know, more straightforward

3    single civil cases in this district, which are much

4    longer than a February, 2016 trial would permit, but

5    what we would suggest is that we could start common

6    discovery, which would involve written discovery, to

7    begin with.  We haven't considered plaintiffs' limits on

8    that written discovery.  We heard it for the first time

9    here, but we obviously would be open to consider

03:24PM   10    whatever limits there are.

11          While we're starting with that written

12    discovery, the plaintiffs could complete the fact sheets

13    and the medical authorizations.  Once we got those in,

14    then we could start collecting medical records, we'll be

15    back before your Honor, and we can, you know, report

16    where we are, whether it's three months down the road

17    after we get the releases and we get the written

18    discovery going, and we could talk about other deadlines

19    beyond that, then, again, you're talking about the

03:24PM   20    depositions after the written discovery, then you're

21    talking about expert selection.

22          I just envision, just thinking about all the

23    events that have to occur, that that in itself is

24    probably an 18-month process before we even get to

25    selecting what are the 20 bellwether cases for

1    case-specific discovery.

2              THE COURT:  So that's helpful, Mr. Braceras,

3    and what about the framework that I had -- I know you

4    said you didn't object to this being a Rule 16

5    conference but then providing I know you, in particular,

6    your client, has not had the ability to comment on the

7    proposed schedule.  I know you had asked for a Rule 16

8    conference, I believe.

9              MR. BRACERAS:  I thought your Honor's

03:25PM 10   suggestion was fine, in terms of submitting it, then

11   giving us two weeks after that to respond.  I think

12   that's fine.  Again, I would repeat, trying to target a

13   trial date might not be the most productive thing at

14   this stage of the litigation, just because there's so

15   many steps and so many cases to go forward with,

16   especially while we continue to get new cases filed

17   every day, but I certainly think the preliminary steps

18   for common discovery, that, absolutely, we should

19   submit, as your Honor suggested, a draft discovery

03:26PM 20   schedule to which we can respond.

21             THE COURT:  All right.

22             MS. GREER:  Your Honor, if I may, on behalf

23   of the St. Thomas entities and the Ascension parties?

24             THE COURT:  Yes.

25             MS. GREER:  We did not intend to co-opt the

1  discovery process, we were simply dealing with the

2  problem that was presented to us of outstanding

3  discovery that we have already responded to.  We have

4  started some production, et cetera, and we agree that

5  this schedule is extremely ambitious and very

6  aggressive, and everything is going to have to break

7  just right for it to stay on course, including getting

8  the fact sheets, the authorizations timely, including

9  the third parties who own these documents, producing

03:26PM  10  them to us timely including, you know, getting some

11  resolution fairly quickly on the lift stay issues that

12  are outstanding, so there are a number of contingencies

13  that we recognize need to occur for this to stay on

14  track, and we want to be very, very clear about that.

15          We don't think that the 2017 dates that are

16  being proposed by our co-defendants are unreasonable.

17  They're probably much more realistic, but we are trying

18  to be clear to the Court that we are trying to move this

19  case forward, but I do want to speak to the discovery

03:27PM  20  that we have only recently received because it sounds

21  like we have all these barrels of discovery.  That's

22  been in the last few weeks, frankly.

23          The repository was not available to us.

24  There was some resistance to that ahead of time, and

25  there were issues over the access fees.  Those have only

1    recently been resolved, and we have not yet seen any of

2    those documents, but we are moving forward to do that.

3            The inspection was last week.  We were given

4    dates by the trustee.  We had to get people up here, get

5    experts up here on a very, very expedited basis.  We

6    were not given the video before the inspection.  We just

7    received it.  We were not given many of the documents

8    before the inspection.  I think there may have been some

9    fire wall issues, but we had to kind of go in basically

03:27PM   10   blind to the inspection, which, again, was last week, so

11   we are just now getting a lot of these documents.

12           I want to be very clear about the

13   authorizations that we received at the time of suit, and

14   your Honor has addressed this issue before.  Those were

15   limited authorizations.  They were not the kind of thing

16   that we need for the bellwether cases.

17           We need those urgently, so we are trying to

18   compromise.  We're trying to move these cases forward.

19   We certainly did not intend to bind anyone, and if the

03:28PM   20   Court prefers to do a bellwether, I mean, excuse me, a

21   discovery plan that involves everyone, we're open to

22   whatever suggestions.

23           We're just trying to kind of get ourselves

24   into a position because right now the PSC has been

25   taking the position since we got in the case that we're

1    open season for discovery, that there are no limits in

2    place, and we've been asking, as the Court knows, since

3    October that something be put in place, so we are open

4    to working together, and we have no objection to the

5    Rule 16 conference and your proposal.

6            THE COURT:  All right.

7            MR. GIDEON:  Your Honor, C.J. Gideon on

8    behalf of the St. Thomas Clinic defendants.  First, I'd

9    like to make it clear that we fully accept the Court's

03:29PM  10    invitation to treat this as a Rule 16 conference.

11            We also invite the Court to expand your role

12    to preside over a discovery schedule.  I want to

13    apologize to counsel for Unifirst, we should have

14    included them, and we didn't simply because there has

15    been so much pressure placed on us to respond to what we

16    thought would be a completely unrealistic schedule

17    proposed by the PSC.

18            We are sensitive to the individuals who

19    received this product.  We do not wish to delay their

03:29PM  20    day in court, but we are also interested in making sure

21    that the process leads to thorough preparation for

22    trial, which is one of the explicit purposes behind

23    Rule 16.

24            How did we get to March of 2017?  May I just

25    outline that for you.  Assuming that your Honor entered

 1  an order on August 1st beginning the organized process

 2  of common discovery, and I join with counsel for

 3  Unifirst, and I join with what Ms. Greer just said, we

 4  have allocated 270 days to complete all of the common

 5  discovery, and in many respects, it is an unknown as to

 6  how many depositions and how many people must be

 7  contacted in that process.

 8              Let me give you an idea.  While we did

 9  recently receive access to the 40,000 documents in a

03:30PM  10  database produced by the trustee to the PSC, which

11  they've had a long time, counsel for NECC, Harris Beach,

12  and I'm sure staffed with a number of talented people

13  had 28 lawyers responding to these informal requests in

14  the second quarter of 2013 at a cost of $466,000.  In

15  the final quarter of 2013, they had 22 lawyers tasked

16  with responding to those requests.  Total cost,

17  approximately $700,000.

18              Some lawyers are better than others, but

19  that tells me that those 40,000 documents are going to

03:31PM  20  take some time to evaluate and assess.  The 270 days

21  we've allocated for common discovery is inclusive of all

22  of the common discovery:  ARL, Unifirst, NECC, Medical

23  Sales Management.  We think that's ambitious.

24              Then we allocated a period of 270 days for

25  the process of expert disclosures and depositions of all

1    those experts.  To give you an example of how

2    unrealistic the PSC has been in their initial proposal,

3    which I hope they shared with you, after the third round

4    of disclosures with their rebuttal experts being made on

5    May 28th, 2015, we are going to, according to them,

6    complete all of the depositions of all the experts by

7    June 20th.  That's not going to happen.

8              If your Honor orders it, we'll do our best,

9    but it's just not realistic, so we ultimately allow 60

03:32PM  10   days in between the completion of common discovery and

11   the completion of the common expert discovery to look

12   into and implement a Tennessee-specific mediation, which

13   we've proposed long ago, discussed informally on a few

14   occasions, and then we get into the case specific

15   discovery, total of 16 cases, all that discovery done in

16   270 days.  That would take us to January to March of

17   2017.

18             I respectfully suggest that is not

19   unrealistic.  It doesn't deny anyone justice, but it

03:32PM  20   assures that the cases that are tried are tried on an

21   informed basis.

22             A couple of additional points to mention,

23   I'm sensitive to what is frequently repeated by the PSC

24   that the defendants are not cooperating, are not moving

25   this case along quickly enough.  The completed fact

1      sheet was approved by this Court, I believe, on

2      February 14th.  It has existed in its final form now for

3      five months.  We haven't received a single one.  Last

4      night we suggested in the meet and confer, surely you

5      can get this done in less than 60 days.

6               Well, part of this 270 days we've allocated

7      is because they were unwilling to do that last night, 60

8      full days to send us sheets that were approved since

9      February of this year.  It is correct, we did have an

03:33PM   10   opportunity to inspect the NECC facility for the first

11     time on July 9th, this month, and we were given two days

12     to choose from.  We were there on the second day, and we

13     were told we had to do it in three hours.

14               We had indeed issued some third-party

15     subpoenas, and those have been responded to, but the

16     point is we understand that there are a number of

17     unknowns taking into consideration past experience.  We

18     believe we can get all of this done in a sensible

19     fashion in what appears to be a long time, but when you

03:34PM   20   parse out section by section, it is not.

21               The last thing I'd like to say is this.  It

22     is perhaps easy for us, as the Tennessee defendants, not

23     to be mindful of the fact that this is an MDL.

24     According to the October 24, 2013 publication by the

25     CDC, there are 91 cases, 91 people infected in Indiana

1    with a two-year statute of limitations, 239 in Michigan,

2    151 in Tennessee, 54 in Virginia, 12 in Minnesota, 50 in

3    New Jersey, 18 in North Carolina, 20 in Ohio.  Virginia

4    and Tennessee, one-year statutes of limitation, but the

5    commentary made by counsel for Unifirst is certainly on

6    target, and that is I would expect in addition to the

7    recent addition of a number of cases from Virginia, your

8    Honor will also be dealing with cases from Indiana, from

9    Michigan, Florida, which has 25 infected individuals,

03:35PM  10   and the net result will be while it's okay for me to

11   ignore discovery of Unifirst and discovery of NECC and

12   ARL, the fact of the matter is that by doing that, it

13   guarantees that the Michigan defendants and the

14   New Jersey defendants and the Maryland defendants, the

15   North Carolina defendants, the Ohio defendants will want

16   to do the same thing.

17           They won't necessarily be satisfied with the

18   work we do, so while I recognize he's right from the

19   Tennessee standpoint alone, I have as much interest as

03:35PM  20   the people ahead of me in getting the discovery done, I

21   want to make sure it's done correctly, and I want to

22   have the time to prepare it, to prepare for it, to do it

23   well.  Thank you.

24           THE COURT:  Yes, you're from Liberty,

25   representing Liberty?

1          MS. RICARDO:  Yes.

2          THE COURT:  Representing Liberty, yes.

3          MS. RICARDO:  Good afternoon, your Honor,

4    Dianne Ricardo for Defendant Liberty Industries.  I

5    apologize for not getting a spot at the table.  I would

6    like to say that Liberty agrees that this be considered

7    a Rule 16 conference.  We did file a motion looking for

8    such a conference.

9          I do agree with my Sister, Kristen Johnson

03:36PM   10   Parker, that Liberty would like an opportunity to weigh

11   in on the timing and the framework of discovery.  We

12   certainly are interested in moving ahead with discovery

13   and moving towards a speedy trial, so we are certainly

14   on board with moving that process along.

15         We do not wish to create any kind of delay

16   or anything of that nature, naturally.  We do have a

17   pending motion on our motion to lift the discovery stay

18   of affiliated defendants.  A ruling on that motion will

19   have an impact on the discovery that we're able to seek,

03:37PM   20   so we do look for the Court's direction in that regard.

21         It is correct that we also, Liberty, had

22   access to the trustee's document production of

23   approximately 40,000 documents.  I would like to clarify

24   for the Court that that was in connection with the

25   mediation, and, therefore, those documents are

1    confidential, they are not admissible in court, and they

2    need to be returned unless the parties are able to reach

3    an agreement.

4            I can state that Liberty has sought such an

5    agreement from the trustee.  We have been unable to

6    reach an agreement.  The trustee has insisted on a

7    return of those documents and that they be re-requested

8    and then they will be reproduced.  That may be the

9    subject of another motion on another day, but we do look

03:38PM  10   for the Court's guidance in what discovery we're able to

11   obtain and when, and just further to the point of input

12   on the schedule, similarly, we did not have an

13   opportunity to meet and confer, and it may be that

14   one-size-fits-all, but it is difficult to make that

15   determination.

16           For Liberty, there are fewer cases against

17   Liberty than against some other defendants.  Liberty,

18   although referred to as a national defendant is a very

19   small company in Connecticut.  There's only -- I would

03:38PM  20   say there's less than 50 cases at this time filed

21   against Liberty, so it may be that the schedule that

22   works best for defendants facing a multitude of

23   lawsuits, Liberty may not require as much time for

24   discovery.  Thank you.

25           THE COURT:  All right.  Thank you.  Anyone

1   else in the gallery that wants to speak?  All right.  It

2   looks like the PSC wanted to say something further.

3         MR. CHALOS:  Your Honor, briefly, two points

4   I want to raise with respect to this notion of other

5   states and clinics in other states.  I think there are

6   really two issues there.  One, through the hundreds of

7   pages of briefing, I don't see a serious suggestion that

8   there should be one bellwether process that encompasses

9   all of the states and all of the clinics.  That's

03:39PM  10   unworkable and really doesn't help very much.

11         The liability of St. Thomas and those

12   entities under Tennessee law will not tell us very much

13   about Virginia and Ohio and Indiana and what have you,

14   so I think, Number 1, there has to be a state-by-state

15   bellwether process, I think, in order to yield any

16   information that would be valuable to any of the clinic

17   defendants in terms of evaluating the cases and the

18   plaintiffs.

19         The second issue is whether we should wait

03:39PM  20   and do no common discovery until the last statute of

21   limitation has run and the last state of the 20 states

22   that are potentially impacted in this.

23         THE COURT:  I don't actually hear anyone

24   suggesting that.

25         MR. CHALOS:  Well, I don't know if they are

1    overtly suggesting it, but certainly that's their logic

2    in that until you know the entire universe of the MDL,

3    you can't possibly do a bellwether selection process.  I

4    think that's what these guys are saying.

5         THE COURT:  I think I heard everyone say

6    they were interested in common discovery starting now, I

7    mean, unless I misheard things.

8         MR. CHALOS:  Let me finish my point.  So

9    there is no reason to wait any longer to start certain

03:40PM  10    common discovery and case specific discovery.  We ought

11    to just move toward a trial.

12         THE COURT:  I mean, my only purpose and

13    because, unfortunately, it has dragged on, and it's a

14    relatively recent referral to me.  What I'd like to do

15    and why I'd like to talk to Judge Zobel is that there

16    are a number of motions, like I said, in the beginning

17    that are not referred to me that impact this decision,

18    and what I'd like to do if it's okay with Judge Zobel,

19    and she may have very different ideas, is try and deal

03:41PM  20    with it all at once, so that's why I'd like to set the

21    framework of giving anyone else who hasn't had the

22    opportunity to respond with the hope that I can set

23    forth a framework for common discovery, at the least,

24    for everybody.  That is my goal.  I don't know if I'll

25    get there, but that's what I'm trying to do.

1              MR. STRANCH:  Your Honor --

2              THE COURT:  Yes.

3              MR. STRANCH:  -- I have a proposal for how

4    we should move forward from here based on what I'm

5    hearing the Court saying and what I'm hearing from the

6    parties in the courtroom today.  I think if we get an

7    order today from the Court, from the bench or something

8    in writing that says the 60 days starts running on the

9    plaintiff profile forms for the Tennessee plaintiffs so

03:41PM  10   that we can get those in no later than 60 days from now,

11   that would start giving the defendants their medical

12   authorizations and other things that they want so that

13   we can start that process of collecting the records and

14   gathering them, and it will start moving that portion of

15   the case along.

16              Also, order that 20 days from today initial

17   disclosures be exchanged between the Tennessee

18   defendants, which is big St. Thomas, little St. Thomas,

19   the other clinics in Tennessee and the plaintiffs, that

03:42PM  20   those be done within --

21              THE COURT:  Can I just say, I don't see why,

22   now that we've had the Rule 16 conference, right, so the

23   parties that at least who have had a discussion, I don't

24   think you need an order for me to exchange automatic

25   disclosure.

1           There's no reason why you can't start that

2   process, and you may well be right that we end up with a

3   Tennessee-specific order.  I'd like to try at this point

4   to develop a more common order, so I'm hesitant to order

5   that the PSC sheets just for Tennessee get going.

6           What I'd like to do is hopefully develop a

7   framework where everything gets going, and maybe that

8   means we have to wait three more weeks, but in the

9   scheme of this case, I don't think it's that much time,

03:43PM 10   so I appreciate the suggestion, and there's no reason

11   why you can't exchange automatic disclosure now that, as

12   far as I see it, I understand some people might say you

13   have to wait to have the Rule 26 conference, but since I

14   haven't heard any objection to this being the Rule 26

15   conference, I don't see why that can't getting going on

16   a voluntarily basis anyway.

17           MR. REHNQUIST:  From the perspective of the

18   national defendants like Unifirst, I mean, I couldn't

19   agree with you more.  We are going to have a big problem

03:43PM 20   and a big fight if the PSC continues to insist on a

21   bellwether process for each state with a prospect of 140

22   cases on a national basis that have to be individually

23   fact discovered, 70 instead of 10 bellwether trials, so

24   I think it's very important, and I couldn't agree more,

25   to put the brakes right now on this prospect of

1    state-by-state-by-state bellwethers.

2              THE COURT:  My gut -- obviously both of them

3    need to be addressed, right, the bellwether process and

4    the common discovery.  I'd like to get the common

5    discovery going as soon as I can, and then we can deal

6    with the bellwether process, and I'm not anticipating

7    that there's a long time between the two, but it seems

8    to me it could actually be in two steps.

9              MR. STRANCH:  As long as common discovery is

03:44PM   10    open and we can start moving because we're running into

11    the problem where witnesses are leaving jobs and moving

12    on, it's being over two years, memories are changing,

13    you know, documents are getting lost.  We need to start

14    getting down what's going on in the case, and if that

15    means we need to wait three more months before the Court

16    puts down an order of here exactly how the bellwether

17    process is going to go, that's okay as long as we're

18    doing discovery in the interim on a common basis because

19    the case needs to move.

03:44PM   20              Yes.

21              MS. PARKER:  I don't want to belabor the

22    point, your Honor, but I do think it bears mention that

23    the PSC can only litigate the cases that have been filed

24    and are in the MDL.  Right now it happens that there are

25    100-plus Tennessee cases that have been filed.

1            The only other "chunk," to use an informal

2     word, I couldn't come up with better than "chunk," the

3     only other chunk of cases that are filed in the MDL

4     involve New Jersey clinic defendants.  The primary

5     New Jersey clinic defendant is mediating, so it may be

6     that in the future going forward, as we get to states

7     with two-year statute of limitations filing cases and

8     three-year statute of limitations, there certainly may

9     be some grouping beyond just single states, but, for

03:45PM  10   now, I think we are actually, the PSC is trying to heed

11    Judge Fallon's suggestion that the transferee court

12    should first catalogue the entire universe of cases that

13    comprise the MDL and attempt to divide the cases into

14    categories based on those variables.

15            MR. BRACERAS:  Your Honor, just some clarity

16    on that.

17            THE COURT:  Yes.

18            MR. BRACERAS:  Is that we have received

19    dozens of cases filed against Unifirst served on

03:45PM  20   Unifirst from Indiana, so that certainly is a very big

21    chunk, and we're talking approaching 30, 40, 50 new

22    cases just in the last year, and also at the same time,

23    the PSC has approached us repeatedly about tolling

24    agreements, so there's a little contradiction here that

25    they're talking about they can only litigate the cases

1    that have been filed, but at the same time, they're

2    asking us about tolling agreements.

3              The broader point, your Honor, we agree that

4    common discovery, we support going forward with common

5    discovery.  The fact is I don't think common discovery

6    could be completed in less than 18 months, as it would

7    in a regular case, and if you look at the matter as a

8    matter of practice, by that time all the statute of

9    limitations would have run in every jurisdiction, and

03:46PM  10   unless the PSC is still seeking tolling agreements from

11   the defendants, then we won't have to struggle with this

12   issue, so after common discovery is over in what I

13   believe would be at least 18 months after expert

14   discovery, by that time when we're selecting

15   bellwethers, all of the selections will have run, and

16   we'll be able to get truly representative bellwethers,

17   as Judge Fallon has done in every other bellwether

18   process, which was multi-jurisdiction, not limited to a

19   single state.  Thank you.

03:47PM  20              THE COURT:  Yes.

21              MR. GIDEON:  Your Honor, it's C.J. Gideon

22   again on behalf of the clinic defendants.  I wanted to

23   just address three points.  The first one was one of the

24   elements of Rule 16 is the Court's sitting down with

25   parties and taking the steps to formulate and simplify

1    the issues, which as you well know also means putting

2    the pressure on the parties to say is this really an

3    issue that we're going to spend any time on in this

4    litigation?

5            One of the complaints that's repeated over

6    and over again in each of the master complaints is the

7    notion that everybody who purchased any products should

8    have gone to this place and done a walk-about and

9    inspected it the same they should do for any other

03:47PM  10   compound or all 3,360 purchasers.

11           The third-party discovery mentioned by

12   counsel for the PSC reflects that one of the finest

13   hospitals in the United States right here took a

14   consultant, did the inspection, did the inspection in

15   2012 and continued purchasing from NECC.

16           My point behind this example is at some

17   point in time, your Honor might well be well-served to

18   schedule a conference to formulate and simplify the

19   issues that actually need to be addressed in common

03:48PM  20   discovery at a savings in time and expense.

21           From our standpoint as well, we respectfully

22   submit that there should be consideration of a remand of

23   the Tennessee cases after the common discovery is

24   finished.

25           THE COURT:  Well, I assume you'll file that

1    motion if you think it's appropriate at a later time.

2            MR. GIDEON:  We will, but as you noted, we

3    suggested, really we are the only ones that suggested

4    just a completion of common discovery first, then

5    consideration of Tennessee mediation specifically.  We

6    will propose remand of the cases at that stage if all

7    the common discovery is completed and it is time to try

8    an appropriate number of Tennessee cases in Tennessee.

9            THE COURT:  Thank you.

03:49PM  10            MR. GIDEON:  Thank you.

11            THE COURT:  Well, thank you very much.  This

12    has all been very helpful, and I share your enthusiasm

13    for getting moving with discovery.  Thank you very much.

14            MS. GREER:  Your Honor, may I address one

15    point?

16            THE COURT:  Yes.

17            MS. GREER:  It's kind of a housekeeping

18    point, but it is an important one because the deposition

19    protocol issue was raised.

03:49PM  20            THE COURT:  Yes, and I know I have to issue

21    that, yes.

22            MS. GREER:  I understand that, but my

23    concern is that if you issue the deposition protocol

24    before a plan is in place, we have sequenced it as

25    Judge Saylor advised us he expected it to be done with

1    the written discovery to occur first and then the

2    deposition.  If the protocol is issued in the absence of

3    an order, we don't want all of a sudden to get

4    deposition notices, which has happened in the past.

5              THE COURT:  Well, I had the same concern,

6    and I read over, I have a draft deposition protocol, and

7    I was worried about the same thing, whether it should be

8    issued.  I could be wrong.

9              I didn't see anything in the protocol that

03:50PM  10    was specifically linked to any decision on timing.  I

11    could be wrong about that, but I don't remember it.  I

12    understand your concern that typically there's written

13    discovery before there's deposition notices or

14    depositions taken, but I don't think the protocol

15    influences that at all, I think it just sets frameworks

16    for taking the depositions when they are going to taken.

17              MS. GREER:  Well, I just want to be very,

18    very clear about that because that has been the subject

19    of misunderstandings in the past, and one of the things

03:50PM  20    that we're relying on is that we envision the protocol,

21    just like the ESI protocol, as being a piece that

22    supports a plan.

23              THE COURT:  Yes.

24              MS. GREER:  But without the plan --

25              THE COURT:  And you're absolutely right,

1    usually I don't issue a deposition protocol or an ESI

2    protocol before we have a schedule, but this case has a

3    lot of unusual things in it.

4              MS. GREER:  Sure, absolutely, as long as we

5    all understand that that doesn't mean it's open season

6    on depositions.

7              THE COURT:  Yes.  Anything further from the

8    PSC?

9              MR. STRANCH:  No, your Honor, we're ready to

03:51PM  10    go forth and do discovery.

11              THE COURT:  Thank you very much.

12              MR. STRANCH:  Thank you, your Honor.

13              THE CLERK:  All rise.  The Court is in

14    recess.

15              (Whereupon, the hearing was adjourned at

16    3:54 p.m.)

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3   UNITED STATES DISTRICT COURT )

4   DISTRICT OF MASSACHUSETTS ) ss.

5   CITY OF BOSTON )

6

7          I do hereby certify that the foregoing

8   transcript, Pages 1 through 56 inclusive, was recorded

9   by me stenographically at the time and place aforesaid

10  in MDL NO. 13-02419-RWZ, IN RE:   NEW ENGLAND COMPOUNDING

11  PHARMACY CASES LITIGATION and thereafter by me reduced

12  to typewriting and is a true and accurate record of the

13  proceedings.

14          Dated this July 23, 2014.

15                      s/s Valerie A. O'Hara

16                      _____

17                      VALERIE A. O'HARA

18                      OFFICIAL COURT REPORTER

19

20

21

22

23

24

25