UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | MDL No. 2419<br>Master Dkt. 1:13-md-02419-FDS |
| THIS DOCUMENT RELATES TO:<br><br>All Actions | |

## PLAINTIFFS' STEERING COMMITTEE'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR ENTRY OF CASE MANAGEMENT ORDER

### Introduction

The Plaintiffs' Steering Committee proposes a Case Management Order that simply opens common access among the Virginia plaintiffs to the pre-trial case records from the substantially completed *Wingate* and *Baker* cases. The CMO's objective is to affect the MDL's primary goal of efficient and fair resolution of all common issues among the Virginia plaintiffs.

Insight's real reason for opposing this simple, straightforward, and routine administrative motion is this: Insight made devastating admissions in the state court litigation that blew Virginia state law damages caps wide open. Insight now faces the very real prospect of paying substantial sums to injured Virginia plaintiffs.

Insight is now trying to use the change of venue from state to federal court to get a "do over." But Insight's recourse to address this colossal error is to sue its original counsel for malpractice, not to undermine this MDL's central goals of efficiency, reduced cost, and coordination between federal and state litigation. The earliest orders in this MDL contemplated a free exchange of discovery between the MDL and state court litigation. Now that the Virginia cases have been transferred from state court to this MDL, those principles of efficiency,

coordination, and free exchange of information should be embraced, not (as Insight urges) disregarded.

Argument

I. **<u>The Case Management Order achieves the MDL's primary goal of efficient and fair case resolution through common, protected access to discovery from the Virginia cases.</u>**

"A primary objective of consolidating pretrial proceedings into an MDL under 28 U.S.C. § 1407 is to 'avoid or minimize conflict and duplication in discovery and other pretrial procedures in related cases by providing centralized management under court supervision.'"[1] "Avoidable discovery delays ... clearly frustrate[] this process."[2] One of the central tools that MDL courts employ to achieve this goal is a joint depository for discovery available to all transferred parties.

For the 153[3] cases against Insight, the proposed Case Management Order requests the typically uncontroversial procedure "allow[ing] discovery completed in any action to be made available to all interested parties in the other actions."[4] Indeed, one of the advantages of making prior discovery available to all in a joint depository is that the "parties involved [in stayed actions] may be able to use discovery conducted in their absence to quickly catch up in the

---

[1] *In re Baycol Products Litigation,* MDL1431, 2003 WL 22023449 (D. Minn. Mar. 21, 2003) (citation omitted).
[2] *In re Orthopedic Bone Screw Products Liab. Litig.*, MDL 1014, 1997 WL 805219 (E.D. Pa. Dec. 11, 1997) ("primary goal in these pretrial proceedings is to complete the discovery process in a timely and efficient manner.").
[3] Insight is correct that there are approximately 130 Virginia plaintiffs currently arrayed against it. The PSC is informed that there are additional individuals currently represented by counsel who will be filing claims shortly, bringing the total number of claimants against Insight to 153.
[4] *In re Motion Picture Licensing Antitrust Litigation*, 468 F. Supp. 837, 842 (J.P.M.L. 1979) (citing *Manual for Complex Litigation*, Parts I & II, § 3.11 (1973)).

2

pretrial proceedings."[5] Ensuring a quicker, less expensive, and egalitarian discovery procedure promotes prompt resolution of the MDL.

On this foundation, federal courts have routinely made prior discovery from collateral litigation available to requesting parties with common issues of fact. The presumption of the availability of prior discovery "should operate with all the more force when litigants seek to use discovery in aid of collateral litigation on similar issues, for in addition to the abstract virtues of sunlight as a disinfectant, access in such cases materially eases the tasks of courts and litigants and speeds up what may otherwise be a lengthy process."[6]

Early orders entered in this MDL contemplate, and sometimes require, broad coordination between ongoing state court litigation and this MDL.

MDL Order No. 2 charged Lead Counsel with "coordinat[ing], with the assistance of the Federal-State Liaison Counsel, with counsel in related state-court litigation, in order to avoid duplicative discovery, including minimizing the number of depositions taken of each witness, minimizing the number of lawyers who question witnesses at depositions, and reducing duplicative questioning." MDL Order No. 2 also appointed a Federal-State Liaison charged with "help[ing] coordinate discovery and litigation efforts between state and federal proceedings to avoid, where possible, duplicative or conflicting efforts."

---

[5] *In re Uranium Indus. Antitrust Litig.*, 458 F. Supp. 1223, 1231 (J.P.M.L. 1978). *In re Uranium Indus. Antitrust Litig.*, 458 F. Supp. 1223, 1231 (J.P.M.L. 1978).
[6] *Wilk v. Am. Med. Ass'n*, 635 F.2d 1295, 1299 (7th Cir. 1980) (New York collateral litigants were presumptively entitled to access to completed discovery in comparable, Illinois action on same terms as the Illinois litigants, unless parties opposing access could prove it would "tangibly prejudice a legitimate interest" or information would be "immune" from discovery in collateral action).

MDL Order No. 6 announced the Court's intention to coordinate with state courts presiding over NECC-related cases,[7] and went so far as to require that MDL parties produce in the MDL any discovery that had been produced elsewhere:

> Any formal discovery produced by any plaintiff, defendant or non-parties in any of the MDL cases or any other civil actions involving allegations of injury from use of an NECC product, must also be produced to the Plaintiffs' Steering Committee no later than seven days after production elsewhere.[8]

MDL Order No. 6 also contemplated a single document repository accessible to any plaintiffs' counsel (whether litigating in federal or state court):

> The Plaintiffs' Steering Committee shall create and maintain an online document repository accessible (at minimum) by the Creditors' Committee, the trustee, and plaintiffs' counsel of record in any action alleging injury related to a plaintiff's use of a product sold by NECC…[9]

Insight's brief never addresses this overarching priority. Similarly, Insight never mentions the standards that apply to the Court's consideration of such motions for common access. *See Wilk, supra.* Nor does Insight dispute that the information and documents developed in the *Baker* and *Wingate* cases involve common, factual matters relevant to the other Virginia cases. Insight simply makes the bald request to block any access to its prior discovery answers and documents for its own strategic reasons, guaranteeing delays and inconsistencies for the Virginia plaintiffs. But Insight offers no legitimate reason why this Court should subvert an MDL's primary goals and ensure delay, expense, and inconsistency by ruling that the discovery already developed is entirely off limits.

---

[7] MDL Order No. 6 at p. 14.
[8] *Id.* at p. 14.
[9] *Id.* at p. 15.

II. **<u>Insight cannot demonstrate tangible prejudice to substantial rights in expanding access to completed discovery, and has offered no legitimate reason to frustrate the primary goals of the MDL by denying access.</u>**

In opposing prompt and unfettered access by all Virginia plaintiffs to completed discovery, Insight proffers three specious justifications directed at blocking discovery:

a) granting access to the discovery as requested in the CMO would "[v]oid the protections afforded Insight by the agreed Protective Orders entered in the *Wingate* and *Baker* cases," Insight Brief at 3, 11-14;

b) as drafted, the CMO would "[r]equire a substantial, overly broad, and unduly burdensome document production by Insight within ten (10) days, at a time when almost none of the Virginia plaintiffs have provided discovery to Insight." Insight Brief at 10-12; and

c) producing the discovery is "premature" given the parties' discussions of a possible but unconfirmed mediation. Insight Brief at 10.

None of these is a valid excuse to block access and engage instead in a costly, pointlessly duplicative discovery process that frustrates judicial economy and promises inconsistency and delay.

Insight's first argument as to the necessary "voiding" of protections from the state court protective orders regarding the discovery is a red herring, because the MDL's protective order will step in to address any valid concerns Insight has as to sufficient protection of its documents or information from public disclosure.[10] Cases considering the expansion of discovery access to collateral litigants require Insight to prove tangible prejudice to substantial rights, which it has

---

[10] See this Court's Third Amended Protective Order of Confidentiality (Doc. 814), which provides protection to designated documents substantially similar to that provided in the Circuit Court Protective Orders.

5

not done. But Insight suggests only that common access to the MDL's Virginia plaintiffs will technically compromise the state court protective orders, because they originally contemplated access exclusive to their individual cases. Insight Brief at 12. Insight does not acknowledge the substitution of the MDL's own protections; indeed, it is unclear what protections Insight believes this Court is less likely to ensure than a Virginia state court.

Courts have weighed the modification of a protective order prohibiting disclosure against the crucial priority of efficiency that comes from common access to discovery, and resolved the issue in favor of common access. One of the most well-established and analogous precedents is *Wilk v. American Medical Association*, 635 F.2d 1295 (7th Cir. 1980)[11], in which the Seventh Circuit overturned a district court's refusal to allow intervening New York plaintiffs access to the discovery completed in Illinois. Because the pre-trial proceedings of the Illinois cases were almost complete, the Joint Panel declined to transfer in the New York intervenors' cases. But the Panel recognized that there were common questions of fact involved in the cases.[12] When the New York plaintiffs sought to modify the MDL's protective order to allow them full access to the discovery, the district court sustained the AMA's objection.[13]

Reversing, the Seventh Circuit announced a rule presuming a protective order should always be modified to expand access to discovery to collateral litigants on the same issues, unless the objecting party could demonstrate "tangible prejudice" to "substantial rights":

> This presumption should operate with all the more force when litigants seek to use discovery in aid of collateral litigation on similar issues, for in addition to the abstract virtues of sunlight as a disinfectant, access in such cases materially eases the tasks of courts and litigants and speeds up what may otherwise be a lengthy

---

[11] The Seventh Circuit has observed that another aspect of *Wilk* irrelevant to this holding, and relating to standing of intervenors, may have been superseded by Rule 24. *See Bond v. Utreras*, 585 F.3d 1061, 1068 (7th Cir. 2009).
[12] *Id.* at 1297.
[13] *Id.*

6

> process. Particularly in litigation of this magnitude, we, like the Multidistrict Panel, are impressed with the wastefulness of requiring the State of New York to duplicate discovery already made…. We therefore agree with the result reached by every other appellate court which has considered the issue, and **hold that where an appropriate modification of a protective order can place private litigants in a position they would otherwise reach only after repetition of another's discovery, such modification can be denied only where it would tangibly prejudice substantial rights of the party opposing modification.**[14]

*Wilk* also swatted aside the AMA's arguments of prejudice similar to those advanced by Insight here: that opening the discovery to collateral litigants would risk violations of attorney-client privilege, afford less protection generally, or "encourage others to file similar suits in hopes of obtaining a similar access to the discovery material."[15] Finding "no merit whatever" in these arguments, the Court ruled that a desire to avoid additional litigation was "no reason to erect gratuitous roadblocks in the path of a litigant who finds a trail blazed by another. Any legitimate interests in secrecy can be accommodated by amendment of the protective order to include the new litigants within its restrictions, rather than simply vacating it."[16]

In protesting that the proposed CMO would "[r]equire a substantial, overly broad, and unduly burdensome document production" from Insight on a ten-day timetable, Insight gives a basic but thin objection to performing the "work" of producing already-prepared and organized discovery, while simultaneously proposing an alternative of allowing Insight to generate discovery from scratch on identical factual matters. Obviously, of the two alternatives, it is less "burdensome" to simply expand access to the discovery already developed, rather than start over.

---

[14] *Wilk v. Am. Med. Ass'n*, 635 F.2d at 1299 (citations omitted, emphasis added).

[15] *Wilk*, 635 F.2d at 1300.
[16] *Id.* at 1301; *see also United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1428, 1990 WL 80026 (10th Cir. 1990) (adopting *Wilk* rule in similar posture, holding that "Defendants' desire to make it more burdensome for Intervenors to pursue their collateral litigation is not legitimate prejudice… any legitimate interest the defendants have in continued secrecy as against the public at large can be accommodated by placing Intervenors under the restrictions on use and disclosure contained in the original protective order.").

7

If the defense has specific proposals to the Court for a timeline tied to legitimate concerns about burdens related to schedules or organization, this Court certainly has the discretion to adopt whatever production schedule it deems legitimate. But at this point, Insight has offered no specific information as to why it is difficult to turn over what has already been developed and produced on the requested timeline.

Insight's other argument—that it simply does not want to produce this information to the plaintiffs prior to a mediation—likewise fails to meet a burden of proving "tangible prejudice" to substantial rights under *Wilk*. In essence, Insight argues that it would prefer—for no reason other than a transparent, self-serving strategy—to withhold certain information from the Virginia claimants prior to a mediation. Federal courts frequently recognize the utility of maximizing the production of discovery prior to a mediation, "giving maximum effect to" such a proceeding.[17] While Insight may believe that it can argue for a lower value of the Virginia claims at any eventual mediation if certain discovery is not yet disclosed, that is not a legitimate reason to delay an orderly, commonplace production to the other claimants. Indeed, if the parties intend to approach the mediation with a good faith interest in the fair resolution of the cases, full disclosure of the evidence bearing upon liability and damages is an essential ingredient.

### III. The CMO does not effect issue preclusion on any rulings from the *Wingate* or *Baker* cases. The Court will have the discretion to make its own dispositive rulings on pending cases, and the claimants certainly may utilize those orders as instructive precedent.

Insight complains at length that the proposed CMO's extension of access to the *Wingate* and *Baker* records necessarily includes two inconvenient admissions in discovery, as well as "circuit court opinions and orders" denying dismissal and partial summary judgment on a

---

[17] *E.g., Smith v. Reynolds Transp. Co.*, 3:11-CV-2728-CMC, 2013 WL 247714 (D.S.C. Jan. 23, 2013).

damages cap. Insight Brief, at 6-12. The PSC's motion requests access to the discovery and the circuit court orders, and then requests a CMO "allowing all such documents and things to be used in all other cases in the MDL involving a Virginia plaintiff to the same extent as if served, prepared, produced, given, rendered, and/or entered in each such other case." Focusing on this language, Insight states that the PSC is asking the Court to rule Insight is precluded from re-litigating any encapsulated issues—and principally the damages cap ruling—by collateral estoppel. In essence, Insight argues that because it has re-thought its legal strategy on the admissions—no doubt because of the adverse rulings in state court—it does not want to be bound to those in future cases, and has also taken inconsistent positions in other litigation. Insight Brief, at 8-9.[18]

The PSC submits that the CMO serves the valid and primary purpose of opening access to the developed records of the *Wingate* and *Baker* cases to all of the Virginia plaintiffs, including those on which Insight would now prefer to be able to take inconsistent positions. This Court has the discretion to affect its primary goal of orderly and efficient pre-trial administration of these cases by evaluating the factual and legal issues in order to determine if they are indeed common. This includes now-inconvenient documents and admissions that Insight would prefer to conceal or contradict. The Court has the discretion to consider whether Insight should be estopped from taking inconsistent positions within the litigation, but Insight does not get to block common access and use of its completed discovery simply because some of it is damaging. That is not the type of "tangible prejudice" contemplated by *Wilk* or its progeny.

---

[18] Insight has recently filed its Motion to Strike Eighteen State Court Orders as Void ab Initio (Doc. 1284), and supporting memorandum (Doc. 1285). The factual and legal issues raised in all eighteen of the state court cases that are the subject of that motion are virtually identical. It is apparent in the actions of the Roanoke City Circuit Court Judge that his intent was to promote the very same efficiencies that were sought by the JPML in the formation of this MDL, and by the PSC in its present motion for entry of this CMO.

9

As for making dispositive rulings on the issues that Insight identifies, the PSC does not maintain that this Court is precluded by prior rulings in the active cases. But this Court is certainly entitled to consider those as instructive in all of these cases to the extent they have addressed common issues, and those orders and rulings should be available for the use and argument of all claimants in order to affect the goals of the MDL and to ensure fairness to all litigants. The CMO affects this goal. If the Court deems it necessary, it can be tailored in such a way to preserve the implied authority of this Court to make further dispositive rulings in the other cases on the same matters.

### IV. The PSC made a good faith attempt to confer on the proposed order in compliance with Local Rule 7.1(a)(2), and the District of Massachusetts does not deny motions for lack of certification in these circumstances.

As Insight concedes, counsel for the PSC sent their counsel a letter attempting to reach agreement on the proposed Case Management Order, though its motion does not formally certify attempted resolution. Insight Brief, at 4. Insight protests that this letter did not provide counsel enough time to review and discuss it, a violation of Local Rule 7.1(a)(2) that "alone is a persuasive basis to deny" the motion. Insight Brief, at 5. But the circumstances parallel those in which this Court has held that "the spirit of the Rule is satisfied, in that the Defendants could anticipate that this discovery dispute would be placed before the court, and noncompliance is not prejudicial in any event.[19]

In addition, Insight's brief demonstrates that its position is wholesale and vehement refusal to provide access to or incorporation of any of the requested discovery into the other 153 cases, directly obstructing the efficient administration of the Virginia cases in the MDL. Where

---

[19] *See Travelers Prop. Cas. Co. of Am. v. Noveon, Inc.*, 248 F.R.D. 87, 91-92, 2008 WL 435499 (D. Mass. 2008) (where noncompliance "is not prejudicial [it] will not be a bar to the success of this motion.").

10

a party "opposes [the] motion in its entirety," as Insight does, "it does not appear that any of the issues in contention would have been resolved or narrowed," eliminating the utility of the local rule's prior conference requirements.[20]

## Conclusion

The PSC's proposed Case Management Order is a straightforward and commonplace mechanism to ensure the primary goals of this MDL. Insight's objections amount to little more than self-serving efforts to change various factual and legal positions after the original discovery process proved damaging. Beyond this, Insight advances no legitimate reason why this MDL should not order common access to completed, prior discovery, let alone tangible prejudice to substantial rights. The PSC requests this Court enter the Case Management Order.

Dated: July 23, 2014

                RESPECTFULLY SUBMITTED,

                <u>/s/ Patrick T. Fennell</u>
                Patrick T. Fennell
                CRANDALL & KATT
                366 Elm Avenue, S.W.
                Roanoke, VA 24016
                Telephone: 540/342-2000
                Facsimile: 540/400-0616
                pfennell@crandalllaw.com

                *Plaintiffs' Steering Committee*


                Thomas M. Sobol
                Kristen Johnson
                HAGENS BERMAN SOBOL SHAPIRO, LLP
                55 Cambridge Parkway, Suite 301
                Cambridge, MA 02142

---

[20] *See Laporte v. Lab. Corp. of Am. Holdings*, CIV. 13-12084-FDS, 2014 WL 2818591 (D. Mass. June 20, 2014) ("In cases where 'conferral between the parties ... would have been unlikely to resolve or narrow the issues in contention and ... [p]laintiff would have opposed the motion ... in any event,' summary dismissal of the motion is inappropriate.").

Telephone: 617/482-3700
Facsimile: 617/482-3003
tom@hbsslaw.com
kristenjp@hbsslaw.com

*Plaintiffs' Lead Counsel*

Elizabeth J. Cabraser
Mark P. Chalos
LIEFF CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: 415/956-1000
Facsimile: 415/956-1008
ecabraser@lchb.com
mchalos@lchb.com

*Federal/State Liaison*

Marc E. Lipton
LIPTON LAW
18930 W. 10 Mile Road
Southfield, MI 48075
Telephone: 248/557-1688
Facsimile: 248/557-6344
marc@liptonlaw.com

Kimberly A. Dougherty
JANET, JENNER & SUGGS, LLC
31 St. James Avenue, Suite 365
Boston, MA 02116
Telephone: 617/933-1265
kdougherty@myadvocates.com

Mark Zamora
ZAMORA FIRM
6 Concourse Parkway, 22nd Floor
Atlanta, GA 30328
Telephone: 404/451-7781
Facsimile: 404/506-9223
mark@markzamora.com

J. Gerard Stranch, IV
Benjamin A. Gastel
BRANSTETTER, STRANCH &
JENNINGS, PLLC

227 Second Avenue North
Nashville, TN 37201
Telephone: 615/254-8801
Facsimile: 615/255-5419
gerards@branstetterlaw.com

*Plaintiffs' Steering Committee*

13

## CERTIFICATE OF SERVICE

I, Patrick T. Fennell, hereby certify that I caused a copy of the above *Plaintiffs' Steering Committee's Reply Memorandum in Support of Motion for Entry of Case Management Order* to be filed electronically via the Court's electronic filing system. Those attorneys who are registered with the Court's electronic filing system may access this filing through the Court's system, and notice of this filing will be sent to those parties by operation of the Court's CM/ECF system.

Dated: July 23, 2014                                   /s/Patrick T. Fennell
                                                       Patrick T. Fennell, VSB 40393