# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | MDL No. 2419<br>Master Dkt. 1:13-md-02419-RWZ |
| THIS DOCUMENT RELATES TO:<br><br>All Actions | |

**PLAINTIFFS' STEERING COMMITTEE'S REPLY TO JOINT OBJECTION OF THE CREDITORS' COMMITTEE AND MEMBER REPRESENTATIVES REGARDING 8% HOLDBACK ORDER [ECF NO. 1279]**

## I.     INTRODUCTION

The PSC's motion, like the court's oral order, is not intended to create any entitlement to fees; the proposed written order simply establishes a set aside for attorneys' fees in a manner that the Trustee accepts. The objection filed by six disgruntled lawyers for Creditors' Committee members[1] repeatedly tries to side step Judge Saylor's requirements for reimbursement of common benefit work and permits free-for-all lawyering. When, as, and if there is a dispute about a late request for approval of attorney time *nunc pro tunc*, it can be dealt with when ripe. But this is the last case where lawyers should be grabby for fees or concerned about pinning down their "right" to be paid out of victims' pockets.

## I.     PROCEDURAL HISTORY

The PSC's overwhelming concern in this litigation has always been litigating this case

---

[1] There are nine members of the Creditors' Committee (8 infected individuals and one trade creditor); each has his or her own attorney acting as their representative on the Committee. Six attorneys for members of the Creditors' Committee signed the objection (Anne Andrews, Michael Coren, Melvin Wright, Michael Galligan, Gregory Skikos, and Terry Dawes). Three did not. Of those who did sign, four were part of a proposed PSC slate rejected by Judge Saylor (Anne Andrews; Melvin Wright; Michael Galligan; and Chris Placitella/Michael Coren). Of those who did not sign, two attorneys also serve on the PSC (Thomas M. Sobol and Marc Lipton). Neither Mr. Sobol nor Mr. Lipton were aware of or consulted about the objection before or since its filing.

1

efficiently, in a streamlined manner, with little to no duplication of efforts and no "over-lawyering."[2] The PSC believes that our outright obsession with implementing this ideal was a factor in Judge Saylor's decision to appoint us in the first place:[3]

> The proposed leadership, although hopeful and determined, recognizes that given the likely potential for a limited fund expected to be available to compensate victims for the harm they suffered, along with the transactional costs associated with the efforts to maximize the bankruptcy estate, this MDL must be prosecuted in an efficient and strictly cost-effective manner. To effectuate these principles, the proposed leadership will enforce rules, including:
> (1) all common benefit work must be expressly approved by Lead/Liaison Counsel in advance;
> (2) all common benefit work must be conducted as efficiently as possible, with no duplicative work to be authorized;
> (3) all expenses must be pre-approved by Lead/Liaison Counsel;
> (4) counsel who intend to seek reimbursement for common benefit time or expenses must submit detailed time and expense records monthly to Lead/Liaison Counsel.

Shortly after Judge Saylor appointed the PSC (and rejected the slate of attorneys that included four of the six members of the Creditors' Committee who signed the objection regarding the 8% holdback order),[4] the PSC submitted proposed orders instituting procedures for any and all attorneys who wished to – in the future – be considered for an award stemming from their work done for the common benefit of all plaintiffs in the MDL. MDL Order No. 3, entered by Judge Saylor over a year ago, set the rules:[5]

---

[2] *See*, *e.g.*, Letter from Thomas M. Sobol and Others Proposing Slate for Plaintiffs' Steering Committee, March 19, 2013 [ECF No. 64] ("The proposed Plaintiffs' Steering Committee's overall objective is to get the most recovery for the victims with the least expense and in the shortest amount of time. The slate believes it is critical to understand that this may well be a very limited fund situation and that this is the last case that should suffer from over-lawyering.").

[3] *Id.* at 18.

[4] Anne Andrews of Andrews & Thorton; Melvin Wright of The Florida Firm; Michael Galligan of Galligan & Newman; and Chris Placitella/Michael Coren of Cohen, Placitella, & Roth (misidentified as "Coren Placitella & Roth" in the letter to the Court). Letter Proposing Plaintiffs Steering Committee Structure and Slate, March 19, 2013 [ECF No. 63].

[5] MDL Order No. 3, Order Concerning Sharing and Funding Plaintiffs' Pretrial Expenses and Costs, April 11, 2013 [ECF No. 85].

2

- "These standards and procedures are intended to apply to all activities performed and expenses incurred by counsel that relate to matters common to all claimants in this litigation."

- "The following general standards and procedures are to be utilized by any counsel seeking fees and/or expense reimbursement."

- "All claims for time and expenses submitted must be incurred only for work authorized in advance by the Lead Counsel."

- "Any claimants' counsel who seeks reimbursement or compensation for common-benefit time and expenses (including any state-court counsel) shall comply with these guidelines and any submission by such counsel shall be in accordance with this order."

- "Counsel who intends to seek reimbursement shall submit time and expense reports to Lead Counsel monthly. These reports should include both time and expenses and should summarize, with back-up detail, the submissions of all firms."

## II.     ARGUMENT

Sure, the PSC and the Creditors' Committee have equal dignity.[6] Sure, the Creditors' Committee has statutory obligations to ensure protection of all creditors in the Chapter 11 bankruptcy. But attorney representatives of creditors on an unsecured Creditors' Committee in the Bankruptcy Court generally have no right to reimbursement for services rendered as counsel for a member of that committee, as made clear by the U.S. Trustee's initial solicitation for committee members.[7] And if attorneys for members of the Creditors' Committee wished to be considered – in the future – for an award from a common benefit fund created in the MDL, then they were required to comply with MDL Order No. 3. Put simply, they stand in the same shoes as all other attorneys who request reimbursement: They need to follow the rules if they want to

---

[6] *See* Transcript of the June 19, 2014 Status Conference, remarks of Michael Coren, 47:10-16.

[7] *See* January 3, 2013 Solicitation of Interest for Serving on an Unsecured Creditors' Committee and/or Tort Claimants' Committee from U.S. Trustee at p. 2, attached as Exhibit A ("Further, actual expenses of committee members (*not including the professional fees of its individual counsel which is specifically prohibited under the Bankruptcy Code*) may be reimbursed from available estate assets.") (emphasis added). *See also In re Lehman Bros. Holdings Inc.*, 2014 U.S. Dist. LEXIS 48102 (S.D.N.Y. Mar. 31, 2014); 11 U.S.C. §503(b). There is nothing magical about wearing solely the hat of counsel for a member of the Creditors' Committee that entitles one to payment.

3

get paid.

The Creditors' Committee is taking the Court's request for a written order (made during the June status conference) as another opportunity to propose language that contradicts MDL Order No. 3, gives Creditors' Committee members' attorneys carte blanche approval for an unstated amount of time spent on unstated efforts with unstated results, and accomplishes an end run around the Bankruptcy Code and the U.S. Trustee's admonition. The Creditors' Committee's proposed order provides:[8]

- "The Court also recognizes that the PSC and OCC are independent of each other, and therefore that OCC assignments of work to OCC Member Representatives which may be compensable Common Benefit Work are not dependent on authorization by the PSC and vice versa with respect to the PSC and PSC member or delegate assignments."

- "All attorneys representing plaintiffs in the MDL and acting for the common benefit of all plaintiffs (all such attorneys, including those serving as PSC members and delegates or OCC Member Representatives, collectively, the "Designated Counsel") shall have the right to a reasonable common benefit compensation from this Court for the Common Benefit Work provided by them as set forth below;"

- "Notwithstanding any provision of any previous order, the OCC Member Representatives shall not require, per MDL Order No. 3, PSC authorization for their work and may, where assigned work or tasks by the OCC, pursue and receive compensation for their Common Benefit Work from the Common Benefit Fund."

- "OCC Member Representatives will make certain of their work product created solely for and in their capacity as Designated Counsel in connection with their Common Benefit Work available to all participating parties in coordination with the PSC; however, this provision does not apply to the work product of the OCC and its counsel, Brown Rudnick, LLP."[9]

- "The OCC Member Representatives shall have 90 days from the date of this order to submit time and expense submissions for their Common Benefit Work

---

[8] Creditors' Committee's Proposed Order Establishing Assessment for Common Benefit Fund, July 21, 2014 [ECF No. 1279-1].

[9] The Creditors' Committees' refusal to share the work product of the committee and its counsel suggests that the Creditors' Committee values the ability to drape its machinations in a veil of secrecy over maximizing the returns to victims through the efficient coordination of all counsel across the MDL and the bankruptcy.

4

>previously undertaken, and thereafter will submit contemporaneous time and expense submission in coordination with the PSC."

Their attempts to write entitlements into a court order are not new; this Court has already rejected them or decided that they need not be addressed now.

More to the point, the question of whether the Creditors' Committee members' attorneys are entitled to compensation for their professed Common Benefit work is not before this Court. Nor is the question of whether time spent on common benefit work performed by the Creditors' Committee *nunc pro tunc* that was not pre-authorized by Lead Counsel and was not documented by monthly submission of contemporaneous time sheets may be considered for a common benefit award. In fact, since the Court verbally granted the PSC's motion of the 8% holdback order during the last status conference, there is *no* question before the Court; only a request from the Court that the parties submit a written order granting the PSC's motion for a holdback.

Sensible lawyers who were concerned that they had not followed MDL Order No. 3 to the letter (and who wanted to address whether some *post hoc* authorization of common benefit work is appropriate) would lay out what they think is appropriate common benefit work, provide detailed time records showing that common benefit work, offer an explanation as to why they did not comply with MDL Order No. 3, and formally request – from both Lead Counsel and the Court – after-the-fact permission to deviate from the Court's MDL Order No. 3. None of that has happened here.

As to the allegations that the PSC failed to adequately meet and confer before filing its proposed order, the PSC has spent more time hearing about, reading about, emailing about, and talking about the Creditors' Committee's gripes regarding MDL Orders No. 2 and 3 than we care to admit. It was immediately apparent from the Creditor's Committee's comments on the PSC's latest proposed order that the parties were still at an impasse. Futility, thy name is yet-another-

pointless-meet-and-confer.[10]

Finally, it is unseemly for plaintiffs' lawyers to be squabbling over who will, one day, get paid here. This is the last case where lawyers should be trying to line their own pockets, or assert an entitlement to line their pockets down the road, particularly lawyers who have also reserved their right to recover fees through bankruptcy channels. Nothing has changed since these same lawyers wrote, "In this case, in particular, efficient and focused allocation of efforts and the management of cost expenditures is crucial, given the number and nature of the injury cases and the limited recoverable assets and liability insurance that is available."[11]

### III.   CONCLUSION

The PSC hereby asks the Court to enter the proposed order submitted by the PSC as Exhibit A to its Notice.[12]

Dated: July 24, 2014

Respectfully submitted,

**/s/ Thomas M. Sobol**
Thomas M. Sobol (BBO # 471770)
Kristen A. Johnson (BBO # 667261)
HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003
tom@hbsslaw.com
kristenj@hbsslaw.com

*Plaintiffs' Lead Counsel*

---

[10] The PSC did meet and confer with the Trustee and included language that addressed his concerns about potentially interfering with the bankruptcy court's jurisdiction and the point in the process when the 8% assessment occurs.

[11] Letter Proposing Plaintiffs' Steering Committee Structure and Slate, March 19, 2013 [ECF No. 63]. *See also id.* ("We believe that strong coordination of the Chapter 11 bankruptcy proceeding and the MDL 2419 proceeding has a realistic ability to most judiciously generate a compensation fund and then equitably distribute compensation to the NECP tort victims.").

[12] Plaintiffs' Steering Committee's Notice of Filing of Jointly Proposed Order Granting Motion for Entry of Case Management Order Establishing Assessment Procedures to Fund Common Benefit Account [ECF No. 790], July 18, 2014 [ECF No. 1274].

Elizabeth J. Cabraser
Mark P. Chalos
Annika K. Martin
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
150 Fourth Avenue North, Suite 1650
Nashville, TN 37219-2417
Telephone: 615.313.9000
Facsimile: 615.313.9965
ecabraser@lchb.com
mchalos@lchb.com
akmartin@lchb.com

*Federal/State Liaison*

Marc E. Lipton
LIPTON LAW
18930 W. 10 Mile Road
Southfield, MI 48075
Telephone: (248) 557-1688
Facsimile: (248) 557-6344
marc@liptonlawcentercom

Kim Dougherty
JANET, JENNER & SUGGS, LLC
31 St. James Avenue, Suite 365
Boston, MA 02116
Telephone: (617) 933-1265
kdougherty@myadvocates.com

Patrick T. Fennell
CRANDALL & KATT
366 Elm Avenue, S.W.
Roanoke, VA 24016
Telephone: (540) 342-2000
pfennel@crandalllaw.com

Mark Zamora
ZAMORA FIRM
6 Concourse Way, 22nd Floor
Atlanta, GA 30328
Telephone: (404) 451-7781
Facsimile: (404) 506-9223
marc@markzamora.com

        J. Gerard Stranch, IV
        Benjamin A. Gastel
        BRANSETTER, STRANCH & JENNINGS PLLC
        227 Second Avenue North
        Nashville, TN 37201
        Telephone: (615) 254-8801
        Facsimile: (615) 255-5419
        gerards@branstetterlaw.com
        beng@branstetterlaw.com
        *Plaintiffs' Steering Committee*

# EXHIBIT A

## to Plaintiffs' Steering Committee's Reply

**U.S. Department of Justice**

Office for United States Trustees
*Districts of Maine, Massachusetts,
New Hampshire and Rhode Island*

---

*John P. McCormack Post Office and Courthouse
5 Post Office Square, Suite 1000
Boston, MA  02109-3934
Phone: 617-788-0400
Fax:  617-565-6368*

January 3, 2013

RE:   SOLICITATION OF INTEREST FOR SERVING ON AN UNSECURED
          CREDITORS' COMMITTEE AND/OR TORT CLAIMANTS' COMMITTEE

**New England Compounding Pharmacy, Inc., Chapter 11 Case No. 12-19882-HJB
United States Bankruptcy Court for the District of Massachusetts**

Dear Creditor or Claimant:

The above named debtor filed for reorganization under chapter 11 of the Bankruptcy Code and has identified you as one of their largest creditors or as a potential claim holder (or representative of same).  The Bankruptcy Code requires the United States Trustee to appoint a committee of unsecured creditors to participate in the case and to represent the interests of all unsecured creditors, if there is sufficient interest, or such other committees as appropriate.

If you are willing to serve on a committee, please complete the enclosed questionnaire and return it to the Office of the United States Trustee at your earliest convenience but no later than **JANUARY 16, 2013**.  Return of the questionnaire, however, does not guarantee appointment to a committee – only that you will be considered by the United States Trustee for appointment to a committee, if the United States Trustee decides to appoint one.

Please take this opportunity to consider serving on a committee.  The members of a committee act on behalf of all similarly situated creditors or claimants.  Under the Bankruptcy Code, committees have the right to demand that the debtor consult with the committee prior to making major decisions or changes, to request the appointment of a trustee or examiner, to participate in the formation of a plan of reorganization, and in some cases, to propose its own plan of reorganization.  If appropriate, committees may request that the Bankruptcy Court convert a chapter 11 case to one under chapter 7, at which time the debtor's operations would cease and its assets would be liquidated.

We will have a meeting for purposes of forming a committee(s) on **FRIDAY, JANUARY 18, 2013 AT 10:00 A.M.** at the **Office of the United States Trustee, John W. McCormack Post Office and Courthouse, 5 Post Office Square, Suite 1000, Boston, MA.** If, however, a sufficient number of creditors do not elect to serve on the committee, a committee may not be formed, and these rights may go unexercised.

Official committees are authorized by the Bankruptcy Code, subject to court approval, to select and employ an attorney and other necessary professionals.  Fees of professionals

January 3, 2013
Page 2

employed by committees may be paid from available assets, if any, of the bankruptcy estate after court approval.  Further, actual expenses of committee members (not including the professional fees of its individual counsel which is specifically prohibited under the Bankruptcy Code) may be reimbursed from available estate assets.

    Thank you for your assistance, and we hope that you will choose to participate.

                Sincerely,

                WILLIAM K. HARRINGTON
                United States Trustee, Region 1

By:    */s/ Jennifer L Hertz*
           Trial Attorney
           Jennifer.L.Hertz@USDOJ.gov

Attachments
(questionnaire and information sheet)

**Official Committee of Unsecured Creditors' Committee**
**Information Sheet**

**Purpose of Unsecured Creditors' Committees**. To increase participation in the chapter 11 proceeding, section 1102 of the Bankruptcy Code requires that the United States Trustee appoint a committee of unsecured creditors (the "Committee") as soon as practicable after the order for relief has been entered. The Committee ordinarily consists of the persons, willing to serve, who hold the seven largest unsecured claims of the kinds represented on such committee. The debtor has filed a list indicating that your claim may be among the largest unsecured claims against the debtor, and for that reason, you may be eligible to serve on the Committee. Generally, there must be at least three unsecured creditors willing to serve in order to form a Committee.

**Powers and Duties of Unsecured Creditors' Committees.** Members of the Committee are fiduciaries who represent all unsecured creditors as a group without regard to the types of claims which individual unsecured creditors hold against the debtor. Section 1103 of the Bankruptcy Code provides that the Committee may consult with the debtor, investigate the debtor and its business operations and participate in the formulation of a plan of reorganization. The Committee may also perform such other services as are in the interests of the unsecured creditors whom it represents.

**Employment of Professionals.** Section 1103 of the Bankruptcy Code provides that the Committee may, subject to the bankruptcy court's approval, employ one or more attorneys, accountants or other professionals to represent or perform services for the Committee. The decision to employ particular professionals should occur at a scheduled meeting of the Committee where a majority of the Committee is present. All professionals retained by the Committee may be compensated from assets of the debtor's estate pursuant to section 330 of the Bankruptcy Code. Applications for the payment of professional fees may be monitored by the Office of the United States Trustee and are subject to the Court's approval. However, the Committee should carefully review all applications and not rely on the Court or the United States Trustee to discover and object to excessive professional fees or costs.

**Other Matters**. The Committee should elect a chairperson and may adopt bylaws. As a party in interest, the Committee may be heard on any issue in the bankruptcy proceeding. Federal Bankruptcy Rule 2002(i) requires that the Committee (or its authorized agent) receive all notices concerning motions and hearings in the bankruptcy proceeding.

**Creditors wishing to serve on any official committee are advised that they may not purchase, sell or otherwise trade in or transfer claims against the debtor while they are committee members absent an order of the Court. By submitting the enclosed Questionnaire and accepting membership on an official committee of creditors, you agree to this prohibition. The United States Trustee reserves the right to take appropriate action, including removing a creditor from any committee, if the information provided in the Questionnaire is inaccurate, if the foregoing prohibition is violated, or otherwise. You are hereby notified that the United States Trustee may share this information with the Securities and Exchange Commission if deemed appropriate.**

Should you have any additional questions concerning the Committee or your membership on the Committee, please contact **Attorney Jennifer L. Hertz** at the **Office of the United States Trustee, John W. McCormack Post Office and Courthouse, 5 Post Office Square, Suite 1000, Boston, MA 02109-3934, (617) 788-0412 or Jennifer.L.Hertz@usdoj.gov.**