UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br>    All Cases | )<br>)<br>)<br>) MDL No. 1:13-md-2419-RWZ<br>)<br>)<br>)<br>)<br>) |

**CHAPTER 11 TRUSTEE'S OMNIBUS RESPONSE TO**
**PRESERVATION REQUESTS AND REQUEST FOR HEARING**

On December 13, 2012, this Court entered its *Order as to the Preservation of Potential Evidence by New England Compounding Pharmacy, Inc.* [Doc. No. 110 in Case No. 12-12052] (the "Preservation Order"), which required the preservation of potential evidence within the possession, custody and/or control of New England Compounding Pharmacy, Inc. d/b/a New England Compounding Center ("NECC"). On May 13, 2013, Paul D. Moore, the Chapter 11 Trustee (the "Trustee") for the NECC estate, filed a motion [Doc. No. 147] and memorandum in support thereof [Doc. No. 148] (collectively, the "Motion") seeking relief from the Preservation Order to, among other things, facilitate the Trustee's rejection of leases in the chapter 11 case.

The United States submitted a statement of interest in response to the Motion on May 14, 2013, in which the United States did not object to the relief sought by the Trustee, but proposed certain notice procedures in the event that the Motion were granted [Doc. No. 149]. Following a hearing, the Trustee and the United States submitted a joint proposed order [Doc. No. 173], which, among other things, established certain notice procedures should the Trustee subsequently seek to dispose of additional NECC property that may be subject to the Preservation Order. This Court entered the order [Doc. No. 177] (the "Modifying Order") and thereby established an orderly process for the disposition of any of the remaining property of the

NECC estate, and the premises leased by NECC in Framingham, Massachusetts, that are, or may be, subject to the Preservation Order.

> Specifically, the Modifying Order provided as follows:
>
> From time to time hereafter, the Trustee may seek further relief from the Preservation Order with respect to any of the remaining property of the estate that is or may be subject to the Preservation Order. Notice of any such further requests shall be provided in the manner and to the parties in interest, persons and entities described in paragraphs 1 and 2 [herein] (a "Further Notice"). Absent the filing with this Court of a Preservation Request within 14 days after the date of any such Further Notice, any such property that is not the subject of a Preservation Request may, without further order of this Court, be moved, relocated, sold or otherwise disposed of by the Trustee in such manner as he deems necessary or appropriate and in the best interest of NECC's bankruptcy estate. As to any such property which is subject to a timely Preservation Request, such property shall be dealt with as determined by further order of this Court.

Modifying Order, ¶ 5. The Modifying Order further provides that "[a]ny such Preservation Request must identify the property that the requestor seeks to have preserved under the Preservation Order. The submission of a Preservation Request shall not impose upon the Trustee an obligation to pay storage and related costs for further preservation of such property." Modifying Order, ¶ 3.

On June 5, 2014, in accordance with the Modifying Order, the Trustee filed his Notice Regarding Further Relief from Preservation Order [Doc. No. 1174] (the "Notice"). Pursuant to the Notice, the Trustee notified all parties in interest of the Trustee's intention to sell or otherwise dispose of all remaining NECC property "to maximize the amount of funds available to creditors (particularly the personal injury tort and wrongful death claimants)" and to vacate, in whole or in part, the premises leased by NECC to reduce the estate's administrative costs. Notice, at 2. Prior to filing the Notice, the Trustee conferred with the United States Attorney's Office, which indicated that it had no objection to the relief sought by the Trustee.

In response to the Trustee's Notice, three parties—Liberty Industries, Inc. ("Liberty"), UniFirst Corp. ("UniFirst") and the so-called Tennessee Clinic Defendants (collectively, the "Requesting Parties")—filed Preservation Requests.  See Defendant Liberty Industries, Inc.'s Preservation Request [Doc. No. 1214] (the "Liberty Request"); Defendant UniFirst Corporation's Preservation Request in Response to the Chapter 11 Trustee's Notice Regarding Further Relief from the Preservation Order [Doc. No. 1215] (the "UniFirst Request"); Tennessee Clinic Defendants' Preservation Request in Response to the Chapter 11 Trustee's Notice Regarding Further Relief from the Preservation Order [Doc. No. 1219] (the "Tennessee Request").[1]  The Plaintiffs' Steering Committee (the "PSC") did not object to the Trustee's Notice and has since indicated that it would file a joinder in support of it.

In their Preservation Requests, the Requesting Parties generally objected to the sale or other disposition of any NECC property until the Requesting Parties had the opportunity to inspect the NECC premises.  See, e.g., Liberty Request, at 2-3 ("Liberty therefore requests the Property be preserved until such time as Liberty is afforded an opportunity to inspect the Property . . . . After Liberty has completed its inspection, it has no objection to, and does not intend to interfere with, the Trustee's disposition of the Property"); UniFirst Request, at 4 ("UniFirst does not object to the sale of NECC's assets *after* UniFirst has had the opportunity to

---

[1] The Trustee also received a letter from counsel to Saint Thomas West Hospital, Saint Thomas Network and Saint Thomas Health, and Ascension Health and Ascension Health Alliance (collectively, the "St. Thomas and Ascension Entities") "seeking clarification regarding, and in hopes of avoiding the need to file a formal preservation request relating to," the Notice.  The letter raised issues similar to those addressed in the Requesting Parties' Preservation Requests. In addition, the Trustee was also contacted by Insight Health Corp. ("Insight"), which was seeking an opportunity to inspect the NECC premises before this Court considered the Trustee's Notice.  Ultimately, neither the St. Thomas and Ascension Entities nor Insight filed a Preservation Request as required by the Modifying Order.  Accordingly, the Trustee's position is that they have waived their right to assert that additional NECC property must be preserved.

DM3\2948502.9

inspect NECC's facilities . . .") (emphasis in original); Tennessee Request, at 4 ("Provided the Tennessee Clinic Defendants are given the opportunity to inspect the NECC facility and 'all remaining NECC property,' including computers and hard drives on which electronic data may be stored, the Tennessee Clinic Defendants do not object to the subsequent disposal of the NECC property that is not designated for preservation").

The Requesting Parties' Preservation Requests did not comply with the procedures established by the Modifying Order because they failed to identify the specific property that each of the Requesting Parties wanted preserved. Nor did they provide for a means to preserve the property that would "not impose upon the Trustee an obligation to pay storage and related costs for further preservation of such property." *See* Modifying Order, ¶ 3. Notwithstanding these deficiencies, the Trustee, in an effort to resolve the Requesting Parties' objections, permitted the Requesting Parties (as well as the St. Thomas and Ascension Parties and Insight) to inspect the NECC premises.[2] Specifically, they, with their experts, were afforded up to 3 hours each to inspect the premises and the property remaining thereon, including the ability to take photographs and video. Counsel to the Trustee and a representative of the PSC were present for each of the inspections.

The Requesting Parties also have access to the video of the PSC's four-day inspection of the NECC facility in December 2012.[3] The Trustee understands that the PSC has also formally produced some testing results from its December 2012 inspection and is in the process of

---

[2] The parties conducted inspections of the NECC premises on the following dates: Tennessee Clinic Defendants – July 8; Liberty – July 9; St. Thomas and Ascension Entities – July 9; Insight – July 15; and UniFirst – July 15.

[3] To the extent that any of the Requesting Parties indicated that they did not have access to such video at the time they filed their Preservation Request, the Trustee has assisted them in gaining access to the video and understands that all Requesting Parties have now received access.

DM3\2948502.9

producing still photographs taken during that inspection as well. *See* Hearing Transcript at 24-25, July 17, 2014, *In re New England Compounding Pharmacy Cases Litigation* (MDL No. 13-2419)

Additionally, the Trustee is not seeking to destroy relevant documents and electronically stored information ("ESI"), and indeed will continue to retain relevant documents and ESI. Specifically, Harris Beach PLLC ("Harris Beach"), special litigation counsel to the Trustee in the chapter 11 case, previously collected all ESI that it was able to identify from the NECC database as well as tangible documents dating from 2010 through October 2012. These materials have been made available to the parties in the MDL in response to informal discovery requests. Thus, the Trustee has taken steps to preserve ESI and tangible documentation from the relevant time period and has provided the Requesting Parties the opportunity to view the property remaining at the NECC premises. The Requesting Parties' primary objections to the relief requested by the Trustee have therefore been addressed.

Since the completion of the inspections, the Trustee has asked counsel for the Requesting Parties whether they would withdraw their Preservation Requests now that they have had the opportunity to inspect the NECC facility. To date, two of the Requesting Parties have responded to the Trustee's inquiry. UniFirst indicated that it would be willing to withdraw its Preservation Request provided that certain documents and materials are preserved and that it be permitted to obtain them. Specifically, UniFirst is seeking: (i) the papers, documents and logs which remain throughout the NECC offices; (ii) any computer data, hard drives and other ESI; (iii) any data from environmental testing, clean room certifications, clean room entry log books, HVAC certifications, etc.; (iv) video footage from security cameras on the NECC premises; (v) customer files and data that remain on the premises; and (vi) "any other relevant documents,

5

computer discs, or materials." As indicated above, the Trustee has preserved the documents and materials that he believes may have evidentiary value.[4] To the extent any additional documents remain on the premises, they will be preserved until further order of this Court.

However, the Trustee does not believe it is proper for UniFirst, or any other Requesting Party, to condition the withdrawal of its Preservation Request on the production of documents and materials. A Preservation Request is not meant to serve as an end run around formal discovery procedures, or the discovery stay currently in place. That issue is governed by the stay of discovery currently in place in this MDL proceeding and should be resolved by the current and to-be-filed motions addressing modification of the stay. To the extent that the Trustee preserves certain documents and materials, he reserves all rights with respect to whether or not such documents and materials are relevant, discoverable and/or subject to any privilege or immunity.

The Tennessee Clinic Defendants also recently responded to the Trustee's inquiry and declined to withdraw their Preservation Request. Although the Tennessee Clinic Defendants indicated that they may be willing to withdraw their Preservation Request as to certain categories of property (e.g., documents that have been scanned and preserved by Harris Beach, standard office furniture, and supplies used to compound medications other than methylprednisolone acetate), they have stated that they will not withdraw their Preservation Request until the Trustee

---

[4] Specifically, Harris Beach has preserved: all documents that it was able to locate and identify relating to NECC dating from 2010 through October 2012, including environmental testing results, clean room certifications and HVAC certifications; all NECC computer hard drives, servers, and other ESI; video from NECC security cameras; and all NECC customer files dating from 2010 through October 2012. Much of this information has been produced as part of informal discovery in the MDL. It should be noted that federal investigators also confiscated substantial amounts of NECC property, some of which may have been confiscated before Harris Beach had an opportunity to preserve it.

answers certain fact questions relating to NECC's compounding operations. At no time did the Trustee operate NECC's compounding business. In fact, NECC ceased operations more than three months prior to the Trustee's appointment. Thus, the Trustee does not have any first-hand knowledge that would allow him to answer technical questions about NECC's compounding operations. Moreover, the Tennessee Clinic Defendants have received access to the four days of video footage from the PSC's December 2012 inspection as well as the more than 40,000 pages of documents produced by the Trustee in the MDL. The Tennessee Clinic Defendants therefore have a substantial amount of information which they can use to determine whether they want to preserve any additional property. Yet they still have not identified any specific property that they wish to preserve or indicated that they will cover the costs associated with any requested preservation, as required under the Modifying Order.

For the foregoing reasons, the Trustee respectfully requests that he be granted relief from the Preservation Order to sell or otherwise dispose of the remaining NECC property and to vacate, in whole or in part, the Framingham facility leased by NECC. Nearly two years have passed since NECC ceased operations, and no purpose is served by requiring the Trustee and NECC's bankruptcy estate to continue to bear the burden and expense of retaining property which now retains little, if any, remaining evidentiary value. To the extent that this Court is inclined to grant any Preservation Request and order that certain NECC property be preserved, the Trustee further requests that this Court order that, in accordance with the Modifying Order, such property be specifically identified and the costs of such preservation be borne by the relevant Requesting Party (or, if requested by more than one, by the relevant Requesting Parties).

Lastly, the Trustee further requests that this matter be included on the agenda for the August 7, 2014 MDL status conference for further argument and determination.

Dated: August 5, 2014

          Respectfully submitted,

          DUANE MORRIS LLP

          */s/ Michael R. Gottfried*
          Michael R. Gottfried (BBO #542156)
          100 High Street
          Suite 2400
          Boston, MA 02110-1724
          Phone: (857) 488-4200
          Email: mrgottfried@duanemorris.com

*Counsel for Paul D. Moore, Chapter 11 Trustee of New England Compounding Pharmacy, Inc. d/b/a New England Compounding Center*

**Certificate of Service**

I, Michael R. Gottfried, hereby certify that on August 5, 2014, I caused a copy of the foregoing document, which was filed using this Court's ECF system, to be served electronically upon those parties registered to receive ECF service.

                                                        /s/ *Michael R. Gottfried*
                                                       Michael R. Gottfried