UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | MDL No. 2419<br><br>Master Dkt. No. 1:13-md-2419- RWZ |
| This Document Relates To:<br>All Cases | |

**DEFENDANT UNIFIRST CORPORATION'S RESPONSE TO PLAINTIFF STEERING COMMITTEE'S PROPOSED CASE SCHEDULE AND <u>BELLWETHER PROTOCOL</u>**

Defendant UniFirst Corporation ("UniFirst") objects to the discovery plan and bellwether protocol proposed by the Plaintiffs' Steering Committee ("PSC"), as the PSC's flawed plan would undermine the very purpose of an MDL—namely, the orderly resolution of cases representative of the thousands of claims spread throughout the country. As discussed during the July 17 hearing before Your Honor, there are three overarching defects in the PSC's plan that render it unrealistic and, worse yet, directly inconsistent with the goals of an MDL. *First*, and most important, the PSC's plan makes it impossible to litigate cases representative of *all* the claims in the MDL. The PSC's plan suggests that this MDL includes only cases from Tennessee, rather than cases from across the country. Indeed, it excludes from its scope completely the more than 350 cases that originated in more than 15 other states.[1] *Second*, and relatedly, limiting the proposed schedule to just Tennessee cases means that the Court, UniFirst, and the other national defendants will have to repeat the entire pretrial process over and over for claims arising in other jurisdictions—precisely the type of inefficiency that MDLs are designed to avoid. *Third*, the PSC's proposal ignores the inevitable fact that pretrial proceedings in MDLs such as this necessarily are "relatively slow."[2] *Id*. The PSC proposes unworkable deadlines that would require the Court and the parties to complete the bulk of discovery in less than one year—which is shorter than most "routine" cases in this district involving only one plaintiff and one defendant. The Court should reject the PSC's proposal as both unrealistic and counter-productive.

UniFirst proposes that the Court address discovery in phases, setting a limited number of near-term deadlines that would apply to *all* parties, regardless of whether they are mediating.[3] The Court could

---

[1] By doing so, the PSC proposal ignores the directive of Judge Fallon that, to be effective, bellwether trials must be representative. *See* Section II, *infra*.

[2] As Judge Fallon has recognized, because a court presiding over an MDL like this one "is burdened with thousands of claims that would otherwise be spread throughout courts across the country," by its very nature, "MDL practice is relatively slow." Eldon E. Fallon, et al, *Bellwether Trials in Multidistrict Litigation*, 82 TUL. L. REV. 2323, 2330 (June, 2008) (hereinafter, "Fallon").

[3] UniFirst understands that one of this Court's earlier orders (Dkt. No. 394) stayed certain discovery for parties participating in court-sponsored mediation. UniFirst believes that given the passage of time and the duration of the mediations, this prior Order (Dkt. No. 394) —issued more than eleven months ago—should be revisited. For purposes of efficiency, uniformity, and to avoid needless delay, the discovery plan that the Court ultimately adopts should apply equally to *all* parties, regardless of whether they are participating in mediation.

1

then monitor the parties' progress with regular status conferences that would (1) ensure that the process is moving forward at an appropriate pace, (2) address whatever issues or disputes may arise, and (3) set additional deadlines for subsequent stages of discovery at the appropriate time. More to the point, the Court could set a schedule now for common-issue written fact discovery for all parties, along with a deadline for plaintiffs to complete and produce the Plaintiff Profile Forms ("PPFs") and accompanying medical releases (which were approved by this Court nearly six months ago, but which not a single plaintiff has yet submitted). Such a schedule would enable the parties to move forward sequentially with the first stage of discovery. There is little reason why the Court should, today, set subsequent deadlines for fact depositions, common expert discovery, bellwether selection, case-specific fact discovery, summary judgment motions, and bellwether trials, when there are numerous variables in play that will undoubtedly impact the propriety and feasibility of such deadlines.

To the extent the Court does wish to adopt a more comprehensive pretrial schedule and bellwether protocol at this time, it should adopt the proposal attached hereto as Exhibit 1, which (1) sets forth a framework for the bellwether selection process that is consistent with Judge Fallon's guidance and, thus, is far more likely to facilitate an efficient and comprehensive resolution of the hundreds of cases currently pending in this proceeding,[4] (2) applies to all cases pending in this MDL, and not just to Tennessee cases not currently in mediation, and (3) includes aggressive but realistic deadlines.

### I. The PSC's Proposed Schedule Is Inefficient, Unworkable, And Self-Defeating.

The PSC's attempt to limit the pretrial schedule and the bellwether pool to cases arising in Tennessee is fundamentally flawed and inconsistent with the very purpose of a nationwide MDL involving injuries that occurred in 17 different states, and in which plaintiffs across the country have brought claims against numerous national defendants such as UniFirst.

Notably, the PSC's proposed schedule applies to less than one quarter of the cases in the MDL. The whole point of joining the cases in an MDL is to allow for consolidated pretrial proceedings and trials

---

[4] UniFirst also has attached as Exhibit 2, a chart comparing UniFirst's proposed schedule to that proposed by the PSC. Exhibit 2 also discusses the numerous problems with the PSC's proposal.

of representative cases to facilitate resolution of *all* claims—not just those from Tennessee. Both common discovery and the proposed bellwether process (including completion of the PPF forms) must proceed with respect to all 400-plus cases in the MDL. Indeed, the discovery plan and bellwether protocol should be sufficiently flexible to apply to *all* current *and* anticipated claims, which is easily accomplished as the statutes of limitations will run for nearly all jurisdictions in approximately one year—well *before* the selection of individual cases for case-specific discovery.

Moreover, as a practical matter, the PSC's proposed schedule is simply unworkable, as it proposes that the parties complete all common issue fact and expert discovery in less than one year. This proposal would be unrealistic even in a routine civil case between a small number of plaintiffs and defendants.[5] It is nothing short of impossible here, where there are more than 400 cases filed by more than 800 plaintiffs in 17 states (each with its own set of applicable laws) asserting claims against more than 65 different defendants—claims based on different sets of facts, different theories, and different alleged violations.[6] Given the number of plaintiffs, defendants, jurisdictions, claims, and theories involved—and that each defendant will need to take discovery not only from the plaintiffs, but also from the other defendants as well as NECC and the NECC insiders—undoubtedly it will take far longer to get through the discovery process here than in routine civil litigation.[7]

An MDL such as this one imposes significant additional burdens on the discovery process: among other things, to select cases for case-specific discovery and (potentially) bellwether trials, every one of the plaintiffs who claims to have been injected with contaminated NECC product must complete and submit a PPF and a medical records release form. Upon receipt of the PPFs and the release forms, defendants must then review the forms, follow up with individual plaintiffs to obtain any missing

---

[5] Both this Court and the District Court routinely grant longer discovery schedules in individual cases involving a small number of plaintiffs and defendants that raise claims similar to those raised here. *See, e.g.*, *Fox et al v. Omron Healthcare, Inc. et al.*, Civ. No. 13-11976-JCB, ECF Nos. 15, 26 (personal injury case, fact discovery completed 13 months after scheduling conference).

[6] Even if the initial round of discovery were limited to the Tennessee cases, the PSC's proposal would still be unworkable, given that there are currently more than 110 Tennessee-based cases.

[7] Exhibit 2 identifies numerous additional problems with the PSC's proposed deadlines.

3

information, and secure and review all relevant medical records for each plaintiff.  This is no small undertaking: securing medical records of a single plaintiff can take months, if not longer.  Yet the PSC's proposal would give the defendants just *30 days* to review hundreds of PPFs and medical records releases and to identify any and all deficiencies in each form; and it would allow for only *60 additional days* for these deficiencies to be resolved, for defendants to collect and review each plaintiff's medical records, and for the parties to identify cases to propose for the bellwether pool.

Although UniFirst believes it would be most efficient to set a case schedule in stages, should the Court wish to impose a full pretrial schedule at this time, UniFirst offers the alternative schedule proposed in Exhibit 1 as a more realistic, fair, and reasonable option.  ***Notably, UniFirst's proposal tracks Judge Fallon's guidance.***  UniFirst's proposed schedule would allow for approximately 18 months of common discovery (including, sequentially, written fact discovery, fact depositions, and expert discovery), followed by common-issue motions for summary judgment and the selection of an initial pool of cases for case-specific discovery (the "bellwether pool").  Once the bellwether pool is selected, the schedule provides for case-specific motions to dismiss, discovery, and motions for summary judgment, culminating in the selection of a final set of cases for bellwether trials in late 2017.[8]

## II. The PSC's Proposed Bellwether Selection Protocol Is Flawed and Directly Contradicts Judge Fallon's Advice.

As Judge Fallon has recognized, "'bellwether' or 'representative' trials . . . can enhance and accelerate both the MDL process itself and the global resolutions that often emerge from that process." *Fallon*, 82 TUL. L. REV. at 2325.  But to promote efficiency and global resolution, bellwether cases must

---

[8] The PSC has suggested that UniFirst's proposed schedule would be unfair to the plaintiffs, who have been "waiting for justice" since they were first injured in late 2012.  *See* PSC Resp. to Supplemental Briefing on Discovery Issues, at 2 (ECF No. 1267).  But, for the past several years, the PSC (understandably) has been focused on resolving plaintiffs' claims against NECC and its affiliates through the bankruptcy proceeding, locating and adding unaffiliated defendants to the MDL, and engaging in mediation with willing parties.  Put another way, the prior delay may be well deserved, but it was largely caused by plaintiffs themselves and should not be a basis to prejudice defendants' rights to full and fair discovery.  Moreover, UniFirst was added as a defendant only 8 months ago, and the universe of cases in this proceeding is still very much evolving:  within the last three months alone, more than 130 new cases have been filed against UniFirst. UniFirst's proposed schedule certainly would impose no "delay" on cases that are still being filed on a near-daily basis and that will continue to be filed for another year.  In short, the PSC's complaints of unfair delay ring hollow.

be representative. And to ensure the selection of representative cases, the parties must engage in a three step process, the first step of which is to "catalogue ***the entire universe of cases that comprise the MDL***."[9] The PSC's proposal skips this step entirely. The universe of cases is still evolving, with new cases filed nearly daily against UniFirst. But eighteen months from now, virtually all applicable statutes of limitations will have run,[10] the universe of cases will be defined, and the parties and the Court will be in a position to complete their cataloguing and analysis to select a truly representative nationwide bellwether pool. Accordingly, UniFirst's alternative proposal—to allow 18 months for common discovery *and* to refrain from selecting the bellwether pool until common discovery is complete—both promotes efficiency and significantly increases the chance of a global resolution.[11]

Instead of adopting the flawed bellwether protocol proposed by plaintiffs, the Court should either (1) defer adopting a bellwether selection protocol until the PPFs and medical records have been collected and reviewed, and the parties and the Court have a better handle on the full universe of cases, or (2) adopt the protocol proposed by UniFirst in Exhibit 1, which provides for modest judicial involvement in the selection process to ensure a representative bellwether pool, while not overburdening the Court.[12]

---

[9] Fallon, 82 TUL. L. REV. at 2343 (emphasis added); *see also id.* at 2343 ("Ideally, the trial-selection process should accurately reflect the individual categories of cases that comprise the MDL *in toto* . . . . Any trial-selection process that strays from this path will likely resolve only a few independent cases and have a limited global impact.").

[10] Of the relevant states, only Florida has a statute of limitations that arguably may extend beyond 18 months of common-issue discovery. *See Marek v. State*, 14 So. 3d 985, 995 (Fla. 2009).

[11] The PSC's proposed bellwether process runs afoul of Judge Fallon's advice in other ways. For example, by proposing that plaintiffs and defendants each select ten cases for the bellwether pool—***with absolutely no input from the Court***—the PSC's proposal would all but guarantee that the bellwether trials will be unrepresentative: each side would select the handful of cases that are most advantageous to its position, and the Court would have no choice but to try these outlier cases first. As explained by Judge Fallon, verdicts in such unrepresentative cases "have little predictive value," and, thus, "will do little to resolve the entire litigation." *Id.* at 2349.

[12] Specifically, UniFirst proposes that (1) after defendants have had a meaningful opportunity to review the PPFs, collect the medical records, and review the relevant discovery, the parties (with guidance from the Court), determine the categories of cases that must be adequately represented in the bellwether pool; (2) once the relevant categories have been determined, the Court, with the assistance of the parties, determines the number of cases to proceed into case-specific discovery, likely approximately 20 cases; and (3) after case-specific discovery of those 20 cases is complete, the Court (with input from the parties) selects a subset of representative cases from the bellwether pool to be set for trial.

**CONCLUSION**

The PSC's Bellwether and Scheduling Motion should be denied.  Instead, this Court should set a limited number of near-term deadlines for discovery and schedule regular status conferences to help move the litigation forward at an appropriate pace, or, in the alternative, adopt the pretrial scheduled proposed by UniFirst in Exhibit 1.

Respectfully submitted,

DEFENDANT UNIFIRST CORPORATION

By its attorneys,


*/s/ James C. Rehnquist*

James C. Rehnquist (BBO #552602)
Roberto M. Braceras (BBO # 566816)
Abigail K. Hemani (BBO # 650721)
Michael K. Murray (BBO # 563804)
**GOODWIN PROCTER LLP**
Exchange Place
53 State Street
Boston, Massachusetts 02109-2881
Telephone: 617.570.1000
Facsimile: 617.523.1231
jrehnquist@goodwinprocter.com
rbraceras@goodwinprocter.com
ahemani@goodwinprocter.com
mmurray@goodwinprocter.com

Dated:  August 7, 2014

## **CERTIFICATE OF SERVICE**

I, James C. Rehnquist, hereby certify that a copy of this document, filed through the CM/ECF system will be accessible to those attorneys who are registered with the Court's electronic filing system and Notice of Electronic filing (NEF) will be sent to these parties by operation of the CM/ECF system on August 7, 2014.

*/s/ James C. Rehnquist*