# Exhibit 9

3

Whereupon, the following cause came to be heard before the Honorable Charles Dorsey, Judge of the Circuit Court of Roanoke, Virginia, sitting in Roanoke, Virginia, on the 5th day of April, 2013, in the presence of those listed under "Appearances" on Page 2 herein.

The Court Reporter, Cynthia N. Stiles, CCR, was duly sworn.

---

V I R G I N I A:

IN THE CIRCUIT COURT
FOR THE CITY OF ROANOKE

- - - - - - - - - - - - -

SHARON G. WINGATE,
Executor of the Estate of
DOUGLAS GRAY WINGATE,
Deceased,

      Plaintiff,

vs.                 Case No.: C112-2547

INSIGHT HEALTH CORP.,

      Defendant/
      Cross-Claim Defendant,

vs.

JOHN M. MATHIS, M.D., ROBERT
F. O'BRIEN, M.D., and IMAGE
GUIDED PAIN MANAGEMENT, PC,

      Defendant/
      Cross-Claim Plaintiff,

- - - - - - - - - - - - -

APRIL 5, 2013
10:00 A.M.

HEARD BEFORE:
THE HONORABLE CHARLES N. DORSEY

CENTRAL VIRGINIA REPORTERS
P.O. BOX 12628
ROANOKE, VA 24027
(540) 380-5017

---

2

APPEARANCES:

GENTRY, LOCKE, RAKES & MOORE
Roanoke, Virginia
BY:  J. SCOTT SEXTON, ESQ.
     DANIEL SULLIVAN, ESQ.

     Counsel on behalf of the Plaintiff

LECLAIR RYAN
Roanoke, Virginia
BY:  NANCY REYNOLDS, ESQ.
     MICHAEL P. GARDNER, ESQ.
     Counsel on behalf of Dr. Mathis,
     Dr. O'Brien, and Image Guided Pain
     Management
BONNER, KIERNAN, TREBACH & CROCIATA
Washington, DC
BY:  CLINTON R. SHAW, JR., ESQ.
     Counsel on behalf of Insight Health
     Corporation

* * * * *

---

4

1   (10:35 a.m.)

2          PROCEEDINGS

3

4     THE COURT:  All right.  In no particular

5   order, we have circuit court civil file, and these

6   are all city cases being heard in the City:

7   CL13-0057, Smith versus Mathis and others;

8   CL13-0055, Harris versus Insight and others;

9   CL13-0009, Foutz versus Insight and others;

10  CL12-2571, Epperly versus Insight and others.

11     Just for the purpose of getting to it:  We

12  also have CL12-2547, Wingate versus Insight and

13  others; CL12-2573, McFarlane versus Insight and

14  others; CL12-2574, Kalinoski versus Insight and

15  others; CL12-2575, Filson versus Insight and

16  others; CL12-2576, Bradley versus Insight and

17  others; and CL12-2572, Smith versus Insight and

18  others.

19     First of all, are there any -- And I have the

20  oath of the Court Reporter, and it's been entered

21  as to all those matters for the purposes of today's

22  hearing.

23     What I'd like to do is get each counsel to

24  identify themselves on the record, announce whether

5

1  they're ready or not, announce who they represent,
2  and specifically let me know if there are any other
3  files that should have been read that were not
4  included for the purposes of this hearing that you
5  think are included. And let me start, Mr. Sexton,
6  with you.
7      MR. SEXTON: Yes, Your Honor. Scott Sexton
8  and Dan Sullivan from Gentry Locke, representing
9  the Plaintiffs in each of the cases that you named.
10     I tried to keep a careful listen, but did you
11  name the matter CL13-0054, which is Whitlow versus
12  Insight?
13     THE COURT: I do not think I did.
14     MR. SEXTON: The Court Reporter is indicating
15  that you did not; and so that's an additional case
16  that is set for hearing today as well on a motion
17  for partial summary judgment.
18     THE COURT: All right. If I need that, I'll
19  have it brought in. Otherwise, I assume that these
20  issues are shared by all or most of these,
21  dependent upon the issue.
22     MR. SEXTON: They're identical in each case.
23     THE COURT: All right. So 13, what was it,
24  0054?

6

1      MR. SEXTON: Yes, sir.
2      THE COURT: Is also included.
3      MR. SEXTON: Right. That's Richard A. Whitlow
4  versus Insight and others.
5      THE COURT: I'm sorry, your co-counsel is?
6      MR. SEXTON: Daniel Sullivan. Goes by Dan.
7      THE COURT: And I know Mr. Sullivan, but I've
8  reached an age where if I have more than one file,
9  I sometimes forget names.
10     MR. SEXTON: I'm right with you.
11     THE COURT: No offence intended, Mr. Sullivan.
12  Thank you.
13     All right, Miss Reynolds?
14     MS. REYNOLDS: Your Honor, Nancy Reynolds here
15  for John M. Mathis, MD, Robert F. O'Brien, MD, and
16  Image Guided Pain Management, PC.
17     THE COURT: And do we have all the files that
18  you think we're supposed to have?
19     MS. REYNOLDS: Yes, sir.
20     THE COURT: And Mr. Gardner, you're with Miss
21  Reynolds?
22     MR. GARDNER: Yes, sir, on behalf of the same
23  Defendants.
24     THE COURT: And Mr. Shaw?

7

1      MR. SHAW: Your Honor, Clinton R. Shaw, Jr. on
2  behalf of Insight Health Corp.
3      THE COURT: All right.
4      MR. SHAW: And the only thing I would add,
5  Your Honor, is I don't believe the Wingate case is
6  before the Court anymore.
7      THE COURT: Okay, and just knowing that we've
8  all discussed this, but just for the record, would
9  you briefly state why you believe that to be the
10  case?
11     MR. SHAW: Yes, Your Honor. Last night we
12  filed a notice of removal to the Western District
13  of Virginia electronically, and this morning that
14  was perfected by a notice to the Clerk of the
15  notice of removal at 9:10 a.m. this morning. It's
16  effectively removed to that court.
17     THE COURT: All right. And I believe I
18  understood in the very, very brief -- it wasn't a
19  pretrial conference, it wasn't really even hardly a
20  conference, but a very brief discussion off the
21  record just prior to going on the record that Miss
22  Reynolds, you would beg to differ with that, and I
23  think Mr. Sexton you would too. Is that correct?
24     MR. SEXTON: Yes, Your Honor.

8

1      MS. REYNOLDS: Yes, sir.
2      THE COURT: We'll hear from you first, Miss
3  Reynolds.
4      MS. REYNOLDS: Well, I believe Mr. Gardner is
5  the one more qualified to respond to that.
6      THE COURT: I'll be happy to hear from Mr.
7  Gardner.
8      MR. GARDNER: Thank you, Your Honor.
9      Our understanding of the removal, not having
10  seen it at this point, is that the grounds for
11  removal are not diversity of citizenship nor
12  federal question, which are the two valid grounds
13  to remove a case.
14     Instead, the ground is stated as an acceptance
15  of an invitation by the bankruptcy trustee for the
16  New England Compounding Clinic to bring the state
17  matters into federal court in the District of
18  Massachusetts.
19     The trustee for NECC has moved the District of
20  Massachusetts to consolidate a number of actions,
21  including state actions where NECC is not a named
22  party, into the District of Massachusetts in Boston
23  for consolidation.
24     We would argue that that is a motion for a

9

1  court to issue a ruling upon.  It is not an
2  invitation for a party to accept.  Even if it were
3  an invitation for a party to accept, the proper
4  means of acceptance would not be to remove the case
5  to the Western District of Virginia.  This seems
6  instead a tactic designed to delay a hearing, on
7  the eve of the hearing.
8      THE COURT:  Okay.  Mr. Sexton?
9      MR. SEXTON:  Your Honor, I agree.  I agree
10  with what Mr. Gardner has said.  To put -- I was
11  intending at some point today to tell the Court
12  about what has been going on in the federal cases.
13      As you know -- I believe you know -- Mrs.
14  Wingate and all the other Plaintiffs in the initial
15  wave of these cases, she filed a case separately
16  against New England Compounding, a federal case in
17  federal court in Roanoke.
18      That case has been removed as part of a
19  multidistrict litigation panel, and it's going to
20  be heard up in the district court sitting in
21  Boston.  So that is, that's all exactly going
22  according to how it should.
23      In the meantime, New England Compounding has
24  filed for Chapter 11 bankruptcy in the Boston

10

1  bankruptcy court.  Recently the trustee in that
2  case sought to, did file the motion that Mr.
3  Gardner mentioned, asking the district court judge
4  to issue an order transferring --
5      THE COURT:  Which district court judge?
6      MR. SEXTON:  Saylor.
7      MR. GARDNER:  Judge Saylor of the District of
8  Massachusetts.
9      THE COURT:  I'm sorry, I did phrase it as to
10  the identity of the judge.  I really meant which
11  district.  So Massachusetts.
12      MR. SEXTON:  Right, a Massachusetts judge
13  under the bankruptcy rules, which are kind of
14  different for us used to state court practice.
15      But the bankruptcy court rules allow the
16  district court sitting in the district in which the
17  bankruptcy is proceeding to handle all of that;
18  because as you probably remember, the bankruptcy
19  court sits deriving its authority from the --
20      THE COURT:  It's not an Article III court.
21      MR. SEXTON:  Right -- district court anyway.
22  So he can just withdraw the reference, and then he
23  sits there and hears that.
24      So the trustee has made a motion.  It is a

11

1  very bold motion.  It seeks to expand the authority
2  of the bankruptcy court far beyond what it has
3  traditionally held, to have state court claims
4  against nondebtors -- solely against nondebtors.
5  Bear in mind New England is not a party here -- but
6  solely against nondebtors and try to bring those
7  all into federal court.
8      I was on a conference call, the very week
9  after this occurred the judge had a conference
10  call, and he invited us all to be there and have
11  all the cases in the nation.  There are only 15
12  listed that had only nondebtor defendants that the
13  trustee had listed.  We were 11 of those.
14      And so not surprisingly the judge commented
15  that he did not believe -- It was a hearing that
16  we participated in by conference call, and the
17  judge did comment that he did not believe he had
18  the jurisdiction over a pain management clinic in
19  Roanoke, Virginia.  So out of all the ones in the
20  nation, he made that comment.
21      So in response to that he set up a briefing
22  schedule, and he told all the parties to brief by
23  April 16.  We briefed well in advance of that.  I
24  think we filed ours on March 19.  We filed a motion

12

1  for extension and a large brief.
2      Basically our points in that are that in a
3  state court only case that is already proceeding
4  and can be tried expeditiously, the Court must
5  abstain.
6      And then secondarily, the Court has no
7  jurisdiction against nondebtors, like the doctors.
8  Dr. Mathis and Dr. O'Brien, they've never been to
9  Boston to do business.  They do business in
10  Roanoke.  They're entitled to have a Roanoke jury
11  hear their case.
12      So all those issues are up there.  And then
13  there's, in addition to whether he has jurisdiction
14  or not, which this would be a huge expansion, then
15  he can also voluntarily abstain, just in the
16  interest of fairness and what he thinks is right.
17      So it's entirely up to him, and no court
18  sitting in the Western District of Virginia can
19  force him to take a case.  His permission has been
20  sought, and he has told us that he wants briefing
21  on it, and he'll make that decision in May or June
22  probably.
23      And I think there's a very, very low
24  likelihood that he is going to yank the state

13

1  course cases from Virginia and put them up there in
2  Boston on his already crowded docket.  But that's
3  the "invitation" to which Mr. Shaw has responded by
4  filing a notice of removal.
5      THE COURT:  And the notice of removal, Mr.
6  Shaw, is to the Western District?
7      MR. SHAW:  Yes, sir.
8      THE COURT:  Of Virginia?
9      MR. SHAW:  Yes, sir.
10      THE COURT:  All right.
11      MR. SEXTON:  And we have not received a copy
12  of the notice.
13      THE COURT:  I understand.  I haven't either.
14      MR. SEXTON:  And neither did Miss Reynolds or
15  her clients.  So we are operating somewhat in the
16  dark as to that issue.  But as you'll probably
17  recall, removal in federal court requires that you
18  act within a certain number of days.  My
19  recollection it's 30.  And in this instance --
20      THE COURT:  My recollection is that the
21  federal rules have changed, in the 11 years I
22  haven't been practicing.
23      MR. SEXTON:  But my recollection is 30, and I
24  think somebody will correct me, if I'm wrong.

14

1      But my point is that's long expired, and I
2  think there's some obtuse and very, very incorrect
3  argument going on here that the "invitation" by the
4  trustee to the judge in Boston somehow set a new
5  clock for Mr. Shaw and his client to file a notice
6  of removal in the Western District, when there is
7  no federal question here and there is no diversity.
8      So we would like to rather stridently place on
9  the record our objection to this.  We believe it is
10  part of an ongoing scheme to delay this case.
11      We would remind Counsel that there is an
12  obligation that there be good faith basis and law
13  in fact for every pleading filed in the court.  We
14  don't believe there is such a one.  We believe that
15  is why we were not told about this.
16      My office has been consulting with Mr. Shaw's
17  office all week to try to get dates rescheduled for
18  Miss Reynolds' doctors.  She has cooperated, and
19  John Jessee has provided us dates.  The doctors
20  have provided us dates.  We're trying to
21  accommodate their request to reschedule
22  depositions, and meanwhile we get absolute silence
23  out of Mr. Shaw's office.  And then instead of
24  using e-mail like we have done with everything

15

1  else, we get no notice of this until today?
2      I can tell the Court this is at some degree of
3  personal sacrifice.  As I believe you're aware,
4  there's been a lot of personal medical problems in
5  my family this week, and we've been dealing with
6  that.  But yet -- And thankfully everything is
7  going well.
8      THE COURT:  Good.
9      MR. SEXTON:  But to prepare for this hearing
10  meant sacrificing availability to those family
11  members, and that is a very troubling thing to me.
12      And so I want to inform the Court that we will
13  seek every sanction possibly available, if it is
14  determined this is bad faith, because this type of
15  expense and delay -- We have yet to receive one
16  single document from Mr. Shaw's clients, even
17  though discovery went out with the complaint.  Miss
18  Reynolds has discovery due on Monday.
19      And so this seems to be just a grand scheme to
20  just throw anything up at the last minute to keep
21  us from advancing this ball.  It is, it is very
22  important that if these Roanoke citizens are going
23  to get a trial before a jury of their peers, that
24  these cases do need to move expeditiously.  That is

16

1  one of the requirements of the mandatory
2  abstention, is that they can be "timely
3  adjudicated" where they are in the state court.
4      I've assured the judge in Boston that that is
5  exactly what they will be, is timely adjudicated.
6  As you know, we have a trial date in this case next
7  April.  I think a year from today we'll be in
8  trial.
9      So that's the situation.  So games really
10  don't have that kind of a role in this case.  And
11  there are personal issues in this case.  I have a
12  14 year old who is sitting in Salem High School,
13  and if he wants to go to college in a few years, we
14  have to get these cases moving so that there will
15  be a resolution.  These are real lives, and so when
16  games are played, that just has a price tag.
17      And that's the point that I would like to
18  make, and I'm here I understand to argue the other
19  ten motions for summary judgment, so I'll do that
20  at your pleasure.
21      THE COURT:  Well, let me --
22      MS. REYNOLDS:  Your Honor, May I --
23      THE COURT:  Both of you sit down.  Let me just
24  clarify a couple of things, and I'll hear from you,

17

1     Miss Reynolds and Mr. Shaw.
2         Let me -- I appreciate and I understand and I
3     believe and I had cases and I have cases now; in
4     fact, my very firm belief is that with rare
5     exceptions, and there are those rare exceptions,
6     but with rare exception every case I have, criminal
7     or civil, has a direct impact on somebody.
8     Otherwise, we wouldn't be here.
9         The system that has been set up for centuries
10    since the foundation of the Republic has been
11    continually tweaked and modified, tested against
12    the Constitution; when found wanting corrected,
13    when not implemented.  And the suggestion that any
14    practicing lawyer in Virginia would intentionally
15    abuse or misuse the system for improper purposes is
16    something that I take very seriously.
17        Having said that; and I've imposed sanctions.
18    It is not the habit nor the tradition nor the
19    custom in this part of the state usually to
20    entertain sanctions.  I have imposed sanctions on
21    my own.  The Supreme Court has made clear in the
22    Benitez case that 801.271.1 is self implementing.
23    If the Court finds a violation, it doesn't have to
24    be on a motion.  It's done sua sponte, and I've

18

1     done that.  I've had that upheld on appeal.
2         On the other hand, Judge Trebue, the former
3     chief judge of this circuit, once said decades ago
4     frankly I guess now, in a case in which we had a
5     number of litigants, more litigants than you all
6     have here, and some attorneys from outside the area
7     brought in a motion for sanctions, and Judge Trebue
8     reminded them that in his view that litigation was
9     to be between the parties, not between the lawyers,
10    and that if they wanted to change that, he needed
11    to be ruling on it.  And I'm still of the same
12    belief.
13        The fact that people adhere to rules, rules of
14    court, statutes, case law, in the interest of their
15    clients may cause disadvantage, pain or harm to the
16    other side because of the human nature or the human
17    circumstances of the other side is always
18    regrettable, but it is nonetheless a necessary and
19    concomitant part of the system.
20        So while I realize, and I told you all last
21    time, I know there's a lot of emotion in this case,
22    and I can appreciate that.  This is not the only
23    case in which there's a lot of emotion.  In fact, I
24    just finished dealing with some murder cases this

19

1     morning, and when family members are lost, that
2     creates a lot of emotion.  But there's a procedure
3     and a system by which those cases are dealt with.
4         There's a procedure and system in which these
5     cases are dealt with, and we're going to stick to
6     that.  And if it becomes necessary at any stage to
7     impose sanctions against anybody; a party, counsel,
8     local counsel, out-of-town counsel, foreign
9     counsel, unlicensed counsel or anybody else; I'm
10    certainly going to do it.
11        But I don't have anything to my knowledge at
12    this time that would suggest that anybody in this
13    courtroom who is practicing law has done anything
14    inappropriate or otherwise.  I'm not going to be
15    involved in collateral discussion at this time
16    about motivation or otherwise, which is why I asked
17    Miss Reynolds and Mr. Shaw to sit down,
18    anticipating that they might want to respond to
19    some of that.  I will hear responses on substance,
20    but not on the ad hominem issues.
21        And I have been in Mr. Sexton's not identical
22    position but very close.  When you have other
23    things going on and nerves get drawn tight and
24    wires get a little tight, sometimes you take

20

1     positions or express an appropriate position in
2     ways that you might not express when things aren't
3     so tight.  I appreciate and understand that, and
4     that's not a problem.  My point is I want to stick
5     to my knitting, and all I want to do is deal with
6     what I have.
7         So with that, Miss Reynolds, if you have
8     something of substance, I absolutely will hear you,
9     and then thereafter, Mr. Shaw, I'll hear you.
10        MS. REYNOLDS:  Your Honor, there's really only
11    one little thing I wanted to comment on that Mr.
12    Sexton brought up, and that is we're trying to move
13    this case along, and we've got discovery going.
14    We've got responses to our written discovery due
15    from Insight on Monday.  We've got depositions
16    scheduled for the end of April and into May.
17        We would like this case to proceed forward, so
18    that we can get the documents we need to take the
19    discovery depositions in April and May.  And I
20    guess we kind of need a sense of can we go forward,
21    you know, with discovery.  I don't think that
22    there's anything that's been entered indicating
23    that we shouldn't.
24        THE COURT:  I don't -- Are you asking me?

21

1    MS. REYNOLDS: Yes, sir, because --
2    THE COURT: What have I done to stop
3  discovery?
4    MS. REYNOLDS: I don't want to come back to
5  the Court on a motion to compel because, because
6  Mr. Shaw filed a removal notice with the Court,
7  when the discovery is due next week and it hasn't
8  been decided on.
9    THE COURT: Miss Reynolds, frankly, I
10  apologize. I don't understand your question. If
11  you need to file a motion to appeal, file it. I'm
12  not stopping anybody from filing anything.
13    I was specifically talking about ad hominem
14  comments being made and the allusion, alluding to
15  sanctions. That's all I'm talking about.
16    If discovery isn't done, you know, I'll tell
17  everybody right now, as I told some lawyers the
18  other day; in 11 years on the bench I probably
19  haven't had four discovery disputes, maybe five.
20    The rules I think are remarkably clear.
21  They've been in existence for years. You all use
22  them all the time. You're familiar with them,
23  probably more familiar with them than I am. But
24  I'm familiar enough with them that I don't have any

22

1  real problem with it. And I don't have any real
2  problem with discovery disputes, and I haven't.
3  And I don't intend to have any problems with
4  discovery disputes in this case.
5    But if I'm wrong about all of that and there's
6  a discovery issue that needs to be dealt with, set
7  it for hearing. I'll deal with it.
8    Now, Mr. Shaw, your turn.
9    MR. SHAW: Your Honor, I'm here to respond to
10  the motions for partial summary judgment. This
11  case --
12    THE COURT: No, we're still on the removal
13  issue. Anything else on that?
14    MR. SHAW: On the removal issue, I would stand
15  by my client's position that this case has been
16  removed to federal court. All the arguments that
17  have been made today about the removal are moot.
18  This case is no longer in the jurisdiction of this
19  court, at this time.
20    Perhaps it will be moved back on remand. I
21  don't know. We're going to fight that, because we
22  believe that we should be in the multidistrict
23  litigation. For one thing, NECC is in the
24  multidistrict litigation, and we'll have a chance

23

1  to get some documents that NECC has that everybody
2  would want. I would imagine the doctors would want
3  the documents from NECC, the company that produced
4  the adulterated steroids that injured their
5  patients, Miss Wingate's husband and countless
6  others.
7    I don't understand it, frankly. It's baffling
8  to me why everybody doesn't want to be -- except
9  Plaintiff's Counsel perhaps -- why everybody
10  doesn't want to be in the multidistrict litigation,
11  because NECC has a lot of information that we would
12  like to get hold of.
13    But be that as it may, I'm just going to say
14  the Court said what it did on ad hominem attacks,
15  and I'm not going to respond to each and every one
16  of those.
17    THE COURT: All right. I'm going to deal with
18  that issue first, then we'll get to the rest of
19  this. And I can handle this in a number of
20  different ways, but all of them will take time.
21  And I don't want to -- I agree with everybody. I
22  don't want to take time. I can get briefing, I can
23  get a lot of things. It's just I don't really
24  think I need to know too much about the law to deal

24

1  with this, because this to me is frankly common
2  sense.
3    And I'm going to start with the observation,
4  particularly for the clients who are present, that
5  it's very clear that state trial courts, circuit
6  courts in Virginia and federal trial courts,
7  district courts, are of equal dignity at law.
8    So we have different jurisdiction. There are
9  some things I can do that a district court federal
10  judge can't do, and some things the federal
11  district court judge can do that I can't do. Other
12  than that, the trial courts are in two parallel
13  systems.
14    I have been very recently briefed by an
15  outstanding bankruptcy practitioner, who mistakenly
16  thought that when he had a date in a bankruptcy
17  court, that he could just tell me that he didn't
18  need to be in state trial court. I asked him to
19  explain why bankruptcy court was a court of higher
20  dignity than the state trial court, and he very
21  professionally and very nicely noted that in fact
22  it was not, and there was no authority and he was
23  wrong, and we worked all that out and everything
24  was fine.

1    So I'm not at all concerned or worried or
2    otherwise about where all of us rank in the
3    relative scheme of things, in terms of federal and
4    state courts.
5        All that having been said; obviously there are
6    statutes. Obviously you all are familiar with
7    them. I'm not, and like Miss Reynolds and Mr.
8    Sexton, I haven't seen and don't need to see
9    anything pertaining to removal.
10       I take that back. At my request, not engaged
11   in ex parte, I was actually forgetting that since
12   the time that I practiced that the federal courts
13   have gotten into electronic practice, and I was
14   primarily, for the reasons that I might find some
15   humor in it, to see which district judge locally
16   had entered the order.
17       I asked Mr. Shaw just to give me the order,
18   and he handed me a packet and then reminded me that
19   it was all done electronically, at which stage I
20   handed the packet back and looked at him.
21       So I have actually seen it, but I haven't seen
22   it in any beneficial or productive way and don't
23   need to, because the simple realty is this: I can
24   say yeah, you all are right and Mr. Shaw is wrong,

1    I'm going to go ahead and proceed, and then in all
2    likelihood -- engaging in just appropriate cynicism
3    -- the federal district court will say yeah, we've
4    got jurisdiction too. And we're going to have two
5    courts in essence either competing or directing
6    orders at each other or otherwise.
7        It would create I would think inordinate
8    problems for appellate review. It would look
9    horrible from the standpoint of public perception,
10   and would not in any way enhance the sense of
11   legitimacy that taxpayers and citizens who use the
12   court system ought to have. And the fact whether
13   they agree or disagree with what happens in court,
14   they ought to agree it's been handled fairly and in
15   a deliberative fashion.
16       And so I just don't think I can in any fair
17   way -- Mr. Gardner may be entirely correct and Mr.
18   Sexton and Miss Reynolds may be entirely correct,
19   but the Court that needs to say that they're
20   correct I think is the federal court for the
21   Western District of Virginia, and if they remand
22   it, they remand it. If they don't remand it, then
23   apparently until the Fourth Circuit rules on it Mr.
24   Gardner, Miss Reynolds and Mr. Sexton may be

1    incorrect.
2        So I'm just not going to deal with it. I'm
3    going to take it as today on the record and without
4    prejudice to anyone, because if after seeing it or
5    otherwise you all are advised that it hasn't been
6    removed, for example, or that Mr. Shaw is mistaken
7    -- and I'm not suggesting, Mr. Shaw, that would be
8    an intentional mistake, but I'm just trying to
9    flush out the intellectual hypothetical
10   possibilities -- then set it for hearing and we'll
11   expedite the hearing. That's not a problem.
12   Otherwise, I think it would needlessly muddy the
13   water and create consternation that doesn't need to
14   be created, when I'm advised by Counsel that, by
15   one counsel that the matter had been removed.
16       So I'm just going to cut that out. If you all
17   for the purposes of the order want to say it's
18   taken under advisement, that's fine too. It
19   doesn't really matter to me how you phrase it. I'm
20   just not going to deal with it today. If there's a
21   need to deal with it later, I'm happy to deal with
22   it.
23       If it gets remanded, obviously I'll deal with
24   it. If it doesn't get remanded, then there's some

1    way we can continue to exercise state jurisdiction,
2    under whatever the terms of the removal are. That
3    too can be done. Otherwise, I think we're just
4    wasting time going over issues, when Mr. Shaw says
5    it's been removed. So I'm not going to deal with
6    that.
7        Now that leaves I know Mr. Sexton's motion for
8    partial summary judgment, which in essence is, if I
9    understand correctly, is that through request for
10   admissions that Mr. Shaw's client and perhaps
11   others admitted that they're not healthcare
12   providers under the statute, and as a result of
13   which Mr. Sexton urges that partial summary
14   judgment ought be granted to make clear that they
15   do not fall under the malpractice cap. Is that in
16   essence?
17       MR. SEXTON: That's it. I would only add that
18   just a motion for summary judgment, that they are
19   not healthcare providers as well, because it has
20   greater ramifications as we're picking witnesses,
21   for example.
22       THE COURT: I understand, but --
23       MR. SEXTON: So they're not a healthcare
24   provider, and therefore are not subject to the cap.

29

1      THE COURT: So where are you on that, Mr.
2   Shaw?
3      MR. SHAW: Your Honor, thank you.
4      We were given requests for admissions in each
5   one of the cases that were listed, the Bradley,
6   Epperly, Filson, Foutz, et cetera cases. We
7   responded to all of them the requests for
8   admissions timely, admitting that we --
9      THE COURT: That you're not a healthcare
10  provider.
11     MR. SHAW: -- that we're not a healthcare
12  provider. So what I don't understand is why we're
13  seeking an advisory opinion from the Court, when by
14  operation of law we've already been found to be not
15  a healthcare provider.
16     THE COURT: Well, I don't think it's an
17  advisory opinion. I think what they're asking for,
18  obviously you can have partial summary judgment.
19  Obviously, although it's not exactly analogous,
20  it's more commonly done.
21     I don't think, I can't recall I've ever had it
22  come up in this particular context, but it more
23  frequently comes up in the context of striking
24  partial summary judgment to strike punitive claims,

30

1   if willfulness and wanton or intentional disregard
2   or otherwise hasn't been made out or been admitted
3   not to be present under the pleading and we do
4   that, then I don't see how this is markedly
5   different from that.
6      MR. SHAW: Well, Your Honor, actually what
7   they're asking essentially is are we or are we not
8   a healthcare provider. We're saying we're not.
9   We're not subject to the cap. We can't use that as
10  an affirmative defense or a defense to damages.
11     It's entered by operation of law. I don't see
12  that there's any reason for any more than that.
13  This is --
14     THE COURT: I don't think he's asking for any
15  more than that.
16     MR. SHAW: Well, it's already been done.
17  We've admitted that by operation of law.
18     THE COURT: So we have an order that you've
19  admitted it by operation of law, and that they're
20  not under the cap.
21     MR. SHAW: And the request for admissions is
22  admitted.
23     THE COURT: All right. Well, put it in the
24  order as admitted.

31

1      MR. SEXTON: We will, Your Honor. I think
2   it's not surprising that sometimes parties do amend
3   their answer to requests for admission.
4      THE COURT: I understand that.
5      MR. SEXTON: And it would be very unfair in
6   this case to get all the way up to the 11th hour of
7   trial and then get an amended answer, which would
8   mean disqualifying --
9      THE COURT: You're getting what you want.
10     MR. SEXTON: I agree. Thank you, but I was
11  just explaining why.
12     THE COURT: I --
13     MR. SEXTON: Thank you, Judge. We'll submit
14  the order.
15     THE COURT: You don't need to persuade me.
16  I'm trying to get you where you want.
17     MR. SEXTON: Since they are simple, can we
18  dispense with endorsement and just submit a copy?
19     THE COURT: No. I get very concerned about
20  the integrity of the record. You all are certainly
21  free, and your firm frankly does it probably more
22  often than others, which is fine, to get Counsel to
23  waive or to permit endorsement by you all.
24     I frankly have talked to some of -- When you

32

1   get the number of lawyers that we have here and/or
2   more, I think all of us start getting a little, a
3   little concerned, you know, when I start getting 13
4   or 14 lawyers, that one person endorses for all of
5   them.
6      Now, I've not yet had a problem with that,
7   however. So all I'm going to say is I get
8   sensitive about that. But no, I don't like that.
9   And I will accept, though, Mr. Sexton, particularly
10  in today's world in this kind of case and with
11  where the offices are and that sort of thing, I
12  will accept fax'ed endorsements, if that will
13  simplify matters, so it doesn't take two months to
14  send something around by mail. I agree with you; I
15  want to get the orders in and get them entered.
16     Any way you all want to do it is fine. Yeah,
17  I'm not going to compel people to give up rights to
18  endorsement. I don't like that personally.
19     So that takes care of that. And Miss
20  Reynolds, you've got demurrers?
21     MS. REYNOLDS: Yes, sir.
22     THE COURT: All right.
23     MS. REYNOLDS: Mr. Gardner and I have
24  demurrers on behalf of Dr. Mathis, Dr. O'Brien,

33

1  Image Guided Pain Management, which we'll refer to
2  as IGPM collectively.
3       The demurrers, first stating the standard for
4  demurrer, admits the truth of all properly pled
5  material facts in the complaint, and all reasonable
6  factual inferences fairly and justly drawn from the
7  facts alleged.
8       THE COURT: Yeah, and I understand that. I
9  know where the demurrers are, and I understand what
10  a demurrer is.
11       MS. REYNOLDS: We are demurring to Count 2,
12  Consumer Protection Act, Count 4, gross negligence,
13  Count 5, fraud, and to the punitive damages claim.
14       Your Honor, I don't see that it's necessary to
15  go through the specific facts, unless the Court
16  wants to hear. I think you heard sufficiently the
17  last time we were here.
18       Suffice it to say that Mr. Wingate went to the
19  Insight Imaging Roanoke location on September 6 of
20  2012 for an epidural steroid injection in his C
21  spine for shoulder pain. Dr. O'Brien administered
22  that injection. Subsequent to that, he was found
23  to have meningitis and passed.
24       The steroid used was methylprednisolone

34

1  acetate, compounded and supplied by NECC, purchased
2  by Insight Health for the Roanoke location. And I
3  turn it over to Mr. Gardner, who will argue the
4  Consumer Protection Act and gross negligence count.
5       THE COURT: I don't usually split up
6  arguments, like I don't usually split up
7  cross-examination; but sure, go ahead, Mr. Gardner.
8       MS. REYNOLDS: Well, Your Honor, he's --
9       THE COURT: Go ahead, Mr. Gardner.
10       MR. GARDNER: Thank you, Your Honor. There
11  are two aspects to IGPM's demurrer to the Virginia
12  Consumer Protection Act claim.
13       The first is that the claim of violation of
14  VCPA, which I will abbreviate the Virginia Consumer
15  Protection Act as, for misrepresenting the drug's
16  quality during IGPM's treatment of the Decedent is
17  expressly excluded under the language of the
18  statute; and the second aspect is that damages for
19  wrongful death and personal injury are not
20  available under the VCPA.
21       First, the claim is expressly excluded under
22  Section 59.1-199(A) of the act of the VCPA. That
23  section states that the VCPA shall not apply to,
24  "any aspect of a consumer transaction, which aspect

35

1  is authorized under the laws and regulations of
2  this Commonwealth or the United States."
3       In other words, if the aspect complained of is
4  authorized under another section of Virginia or
5  federal law, then the VCPA does not apply, and the
6  claim cannot be brought for it under the VPCA.
7       The Virginia Supreme Court examined this
8  provision in Manassas Auto Parts, Inc. v. Couch,
9  274 Va. 82. They held that, "Authorized actions,"
10  meaning actions which are excluded, are those that
11  are "sanctioned by statute or regulation." In
12  other words, actions that are sanctioned by
13  Virginia or federal law cannot be complained of
14  under the Virginia Consumer Protection Act.
15       Conversely, actions that are merely regulated
16  by Virginia or federal law can be actionable under
17  the Virginia Consumer Protection Act. Here the
18  formulation, compounding, sale, prescription,
19  dispensing and administration of prescription drugs
20  are sanctioned under Virginia and federal law, and
21  therefore are expressly excluded from the Virginia
22  Consumer Protection Act.
23       Section 54.1-3408(A) of Virginia's Drug
24  Control Act states that, "A practitioner of

36

1  medicine shall only prescribe, dispense or
2  administer controlled substances in good faith, for
3  medicinal or therapeutic purposes, within the
4  course of his professional practice."
5       There are Virginia Code sections that prohibit
6  the compounding of drugs, unless certain criteria
7  are met. Similarly, the federal Food, Drug and
8  Cosmetic Act prohibits the introduction or delivery
9  for introduction in interstate commerce of any
10  food, drug, device, tobacco product or cosmetic
11  that is adulterated or misbranded -- the exact
12  allegations in this case.
13       These provisions, these federal and Virginia
14  provisions are not mere regulations by which an
15  already permissible action are undertaken. In --
16       MR. SEXTON: I'm sorry, Mr. Gardner. I may be
17  the only one in the courtroom that's confused, but
18  I thought Your Honor ruled that you accepted the
19  removal by Mr. Shaw of the Wingate matter, and the
20  demurrers are only set in the Wingate matter. And
21  then I thought you explained to us --
22       THE COURT: I still have to hear them. If
23  they're here, I'll hear them on whatever.
24       MR. SEXTON: Okay. I heard you to say that

37

1 you would then not want to be in conflict with the
2 federal court and so forth.
3     THE COURT: You heard me entirely correctly.
4     MR. SEXTON: Okay. I just misunderstood the
5 import of that.
6     THE COURT: No no no. And what one of my
7 questions was and what I wasn't clear on is, is
8 this only on the Wingate matter?
9     MR. GARDNER: This is noticed for Wingate, but
10 as with the motions for partial summary judgment,
11 they will be basically identical through all of
12 these cases.
13     MR. SEXTON: It is only noticed on Wingate,
14 but again, there's a trickle.
15     THE COURT: Well, I mean --
16     MR. SEXTON: We don't have any objection. I
17 just wanted to make sure that I understood that you
18 want to go ahead and hear the argument.
19     Right. It is, it is only briefed as to
20 Wingate. There are some instances where the facts
21 may be different; for example, Mr. Wingate is dead,
22 and we don't know exactly when he got these
23 brochures. Some of the clients are not dead. Some
24 of the clients got three shots, and so they would

38

1 have received them on multiple occasions. So that
2 will apply to one aspect, but --
3     THE COURT: But you don't --
4     MR. SEXTON: We could educate you as to --
5     THE COURT: But you don't have any objection
6 to, you know, on lack of formal notice. Yeah, I
7 don't intend to deal with demurrer on Wingate, but
8 my understanding is like your partial summary
9 judgment, that this was common to all cases.
10     MR. SEXTON: In essence --
11     THE COURT: Mutatis mutandis, as we say.
12     MR. GARDNER: And I'd be willing to stipulate
13 that these motions don't turn on some of the minute
14 factual differences between the cases. To the
15 extent that they do, please let me know if I
16 mention something that is unique and it turns on
17 it, please do.
18     THE COURT: I'm sure they will. I'll let you
19 know.
20     MR. SEXTON: Your Honor, I have no objection
21 to any of that, if it does avoid a waste of time
22 today, and it allows us to --
23     THE COURT: That was my point. I just thought
24 we'd go ahead and put on everything we can put on.

39

1     MR. SEXTON: That's excellent.
2     THE COURT: And then as I'm going through
3 this, and because of the number of files, I don't
4 think I'm going to be able to rule from the bench
5 on the demurrers, but I want to hear everybody.
6 Then I'm going to have Miss Reynolds or both of you
7 or however you want to allocate costs order the
8 portion of the transcript that deals with their
9 argument on demurrers and your responses to
10 demurrers.
11     Then I'm going to review the written
12 submissions, and if either of you wish to -- this
13 is not either a mandate, a dictate, nor even a
14 request for additional written authority -- but if
15 there is any that you wish to submit following
16 today's hearing, if it's done timely I'll be happy
17 to receive that as well.
18     So thank you, Mr. Sexton. I think that clears
19 up the only little matter confusing perhaps that I
20 have, but I'm assuming that's where we were going.
21 Go right ahead.
22     MR. GARDNER: Thank you, Your Honor. Just a
23 five second summary of where we are.
24     THE COURT: Take as long as you want.

40

1     MR. GARDNER: The legislature states that
2 actions that are authorized under laws or
3 regulations of the Commonwealth of the United
4 States are excluded from the Virginia Consumer
5 Protection Act. The Virginia Supreme Court has
6 interpreted the word "authorized" to mean
7 sanctioned. There are federal and Virginia laws
8 that sanction the claims at issue in this case.
9 Therefore, we claim that they are excluded under
10 the VCPA.
11     One of the issues is whether the laws federal
12 and Virginia that are on point are instead of
13 sanctioning the action are merely regulating the
14 action, and the Virginia Supreme Court has said
15 that if it's mere regulations, the claims are not
16 excluded from the VCPA.
17     The one case that the Virginia Supreme Court
18 has heard that deals with this issue is Manassas
19 Auto Cars v. Couch, 274 Va. 82. In that case the
20 plaintiff alleged that an automobile dealer
21 violated Virginia's automobile advertising
22 standards code, provision 46.2-1581, and such
23 violation constituted a fraudulent act under the
24 practice -- or a fraudulent act or practice under

41

1    the VCPA.
2        The Court examined that and said no. This
3    claim can go forward under the VCPA, because it is
4    a mere regulation, and it's not a sanctioning of an
5    action.
6        And the distinction that the Court drew there
7    is critical for this case. In Manassas Auto Cars,
8    the plaintiff said you can't advertise cars this
9    way. And the Court said that the law that says you
10   can't advertise cars this way was a mere
11   regulation.
12       Here the allegations are you can't sell drugs
13   this way, and that therefore you're violating the
14   VCPA. The difference is this: The law does not
15   permit or deny me or anyone else the right to
16   advertise a vehicle, but the law does deny or
17   permit people the right to compound and sell and
18   prescribe and administer drugs.
19       I can go place an ad in the Roanoke Times for
20   my car and not run afoul of any laws. I don't need
21   a statute to authorize me to go place an ad in the
22   Roanoke Times to sell my car. But if I started
23   compounding and selling drugs in my basement, I'll
24   be running afoul of some pretty serious laws and

43

1    They're saying the consumer transaction at issue is
2    drug misbranding, not drug prescription or drug
3    selling.
4        The problem with that is if you define the
5    Consumer Protection -- if you define the
6    transaction at issue as the wrong act, the
7    wrongdoing that is alleged in the complaint, well
8    then of course no federal or state law is ever
9    going to authorize that. No federal or state law
10   is going to authorize the allegations of
11   malfeasance that's in the complaint.
12       So if you categorize the consumer transaction
13   as the wrongful conduct alleged, then what is
14   alleged would never ever be excluded from the
15   Virginia Consumer Protection Act. Clearly the
16   Legislature intended for certain claims to be
17   excluded, and an interpretation which excludes none
18   must be wrong.
19       And so the consumer transaction at issue as to
20   IGPM is the prescription and administration of
21   drugs that is sanctioned under Virginia and federal
22   law. It is excluded from the Virginia Consumer
23   Protection Act. Those claims cannot proceed, and
24   therefore we respectfully request that you grant

42

1    regulations. Laws. I should not say regulations.
2    Excuse me.
3        That is the difference. That's why this is
4    not mere regulation. Virginia law sanctions the
5    prescription and administration of drugs. It does
6    not sanction the advertisement of automobiles, and
7    that's where Manassas Auto Cars shows that this
8    case is different and that these claims are
9    sanctioned under Virginia law, and that therefore
10   they are expressly excluded from the Virginia
11   Consumer Protection Act.
12       Now in the Plaintiff's response, she claims
13   that the transaction at issue is not selling or
14   prescribing drugs. She claims that the transaction
15   at issue is misrepresentation of the drug to the
16   Decedent. And then Plaintiff contends that the
17   Virginia Code or federal law would never authorize
18   a party to misrepresent or misbrand a drug, and
19   therefore it's not sanctioned under the Virginia
20   Code, and therefore it can be claimed under the
21   Virginia Consumer Protection Act.
22       The Plaintiff's mistake here is to classify
23   the consumer transaction at issue as the
24   malfeasance that's alleged in the complaint.

44

1    our demurrer on that aspect.
2        The second aspect of our demurrer to the
3    Virginia Consumer Protection Act is that personal
4    injury and wrongful death damages are not available
5    under that act. We understand that that is not the
6    entirety of the expenses that Plaintiff has
7    claimed, but we seek a demurrer to the effect that
8    any personal injury or wrongful death damages that
9    are sought under the Virginia Consumer Protection
10   Act aren't unavailable.
11       The Virginia Consumer Protection Act states
12   that, "Only actual damages for any person who
13   suffers loss as a result of violation of this
14   chapter are available."
15       Now, there's a split in Virginia law on this.
16   Some Virginia circuit courts rightly hold that,
17   "The General Assembly intended to permit recovery
18   for pecuniary losses only, not damages for bodily
19   injuries." That's a quote from a case called
20   Devonshire v. Euraupair International, Inc., 40 Va.
21   Cir. 149, Fairfax County 1996.
22       Likewise, another case, Deane v. Novacare
23   Orthotics, states that, "Even considering the
24   remedial nature of the statute and the fact that it

45

1  should be broadly construed, this Court feels that
2  a fair reading of the VCPA indicates that the
3  actual damages language allowed by it are limited
4  only to the pecuniary out-of-pocket losses that the
5  Plaintiff has sustained."
6      The Court elaborated that, "Damages can be and
7  should be" -- excuse me.  The Court stated that it
8  would not allow the VCPA to be turned into a torts
9  claim for products liability.
10     Likewise, in this case they're asking for an
11 expansive reading of the Virginia Consumer
12 Protection Act to apply in a sense that would
13 override Virginia's wrongful death statute.
14 Essentially they're seeking a rule that the
15 Virginia Consumer Protection Act trumps Virginia's
16 Wrongful Death Act, which has an entire scheme
17 established for apportioning damages and setting
18 beneficiaries.  It's an entire scheme within
19 itself, and if the Virginia Consumer Protection Act
20 were to intrude upon that, it would gum up the
21 works.  And the Court should not issue a ruling
22 that conflates the two acts and subverts the will
23 of the Legislature.
24     And in their response, Plaintiff indicated

46

1  that a case called Humphrey v. Leewood Healthcare
2  Center, which is a circuit court case, overturned
3  the precedent which we cited.  And that's actually
4  incorrect.
5      Humphrey v. Leewood Healthcare Center simply
6  illustrates the fact that Virginia courts are split
7  on this issue.  Humphrey is issued from the same
8  court that issued one of the cases that we cited in
9  support.  And so the Fairfax County court is split
10 on this.  It doesn't mean that the previous Fairfax
11 County ruling issued by another judge has been
12 overruled.
13     In fact, in the case to which Plaintiff cites,
14 they reference these cases that Plaintiff says are
15 bad law as good law.  There's good law.  There's a
16 split in Virginia courts.  We believe that better
17 recent opinion keeps the Virginia Consumer
18 Protection Act within its appropriate confines.
19     For those reasons we would respectfully
20 request that the Court sustain our demurrer to the
21 damages available under the Virginia Consumer
22 Protection Act.
23     The second aspect of our demurrer is
24 Plaintiff's gross negligence claim.  There are a

47

1  number of issues, and I'll try to keep them
2  organized.  They'll bleed together, and I'll try to
3  proceed expeditiously.
4      In Count 4 of her complaint the Plaintiff
5  asserts that Image Guided Pain Management was
6  grossly negligent in its treatment of her, and in
7  reference they simply state, "based on the
8  foregoing acts and omissions in the complaint."
9      The foregoing allegations are quite lengthy,
10 but they fail to set forth a viable ground for
11 gross negligence against IGPM.  Most of those
12 allegations are directed against Insight Health
13 Corporation.
14     Early in the complaint these ground rules are
15 set.  "At all times and places pertinent to this
16 action, Insight Health" -- not IGPM -- "made the
17 actual decisions and arrangements relating to the
18 selection, procurement and preparation of drugs
19 administered at Insight Imaging Roanoke, including
20 the epidural steroid drug which is at issue in this
21 case."  Also, "Insight Health procured, received
22 and provided to Mr. Harris the epidural" -- sorry
23 -- "Mr. Wingate the epidural steroid injection
24 which is at issue in this case.

48

1      "IGPM would allege that this purchasing
2  decision was made without their advice, consent or
3  knowledge.  IGPM would allege that at times and
4  places pertinent to this action they never knew
5  that Insight Imaging Roanoke and its employees and
6  agents were purchasing the methylprednisolone
7  acetate from NECC.
8      "Thus, under the express factual allegations
9  in the complaint, IGPM was not responsible for the
10 selection, procurement, receipt, preparation of the
11 drug at issue, and is not vicariously responsible
12 for the actions of Insight."
13     In response, Plaintiff contends that she has
14 sufficiently pleaded her cause of action, because
15 she threw all the Defendants into the same pot and
16 referenced us collectively as Insight Imaging
17 Roanoke -- but this abrogates her responsibility to
18 identify in basic terms who did what.
19     The Defendants have a right to know, the right
20 to be put on notice what claims are being brought
21 against them.  When you set ground rules and say
22 this Defendant didn't engage in this practice, and
23 then over the course of an extraordinarily long
24 complaint take numerous contradictory stances that

49

1  you can retreat to whenever a demurrer is made,
2  then the complaint becomes an object against which
3  no arguments can be made.
4      The Virginia Code does sanction pleading in
5  the alternative, but it shouldn't be used as a
6  vehicle for the complaint to turn into this
7  chameleon-like object against which nothing can
8  stick, against which no arguments can stick,
9  because you can say well, in this section I pleaded
10 in the alternative that you did do this, and in
11 this section I pleaded in the alternative that you
12 didn't do this.  It doesn't give us the notice that
13 we're entitled to, and it abuses the right to plead
14 in the alternative.
15     So under the facts set forth in the complaint
16 as we read and as they are put on notice to the
17 Defendant, there is no gross negligence claim to be
18 made against Image Guided Pain Management, because
19 it falls well short of the standard that the
20 Virginia Supreme Court has set.
21     That standard states that gross negligence is,
22 "The utter disregard of prudence, amounting to
23 complete neglect of the safety of another, needless
24 and palpable violation of legal duty respecting

50

1  the rights of others, which amounts to the absence
2  of slight diligence, or the want of even scant
3  care."
4      Plaintiff's allegation that Image Guided Pain
5  Management should have in some specified way tested
6  the steroid at issue for contamination before using
7  it or inspect the facilities that another entity
8  was ordering this drug from would impose an
9  incredible burden on the healthcare system.
10     They're asking that doctors be held
11 responsible for the purchasing decision made by
12 another entity, that doctors have a standard of
13 care placed upon them that they inspect drugs that
14 come into their facility, that they have a
15 fully-functioning inspection lab in their facility
16 and are somehow able to complete this task in their
17 office -- which as an aside would require them to
18 open sealed vials and contaminate things even
19 further -- or that they go out and tour the country
20 from wherever they're ordering drugs from.
21     The Plaintiff says well, they could have just
22 ordered them from Pfizer.  But Pfizer is subject to
23 lawsuits.  Pfizer is subject to recalls.  The only
24 way to be sure that what they're getting is clean

51

1  would be to place an incredibly onerous burden on
2  them, or to employ the services of an independent
3  party who does that action.
4      In fact that's what actually exists.  The
5  Virginia Legislature has stated that the obligation
6  for final checks for accuracy and for appropriate
7  conditions, appearance, and procedures for the
8  final product in pharmacies and drug compounding,
9  that responsibility lies with the pharmacists.
10 That is Section 54.1-3410.2(D) of the Virginia
11 Code.  The Legislature consciously made a decision
12 not to impose this incredibly onerous burden on
13 healthcare practitioners.  They would not have used
14 the words "final check" if that wasn't their
15 intent.
16     This court should not impose a common law
17 burden where the Virginia Legislature has expressly
18 chosen not to do the same thing.  And no court in
19 the country has ever imposed this kind of burden on
20 healthcare practitioners.  It may well be an
21 appropriate standard for an entity like Insight
22 Health to know where it's purchasing drugs from,
23 but for doctors who don't engage in the purchase of
24 drugs, this would grind their practice to a

52

1  complete halt.
2      For those reasons, we respectfully request
3  that the Court sustain our demurrer on the gross
4  negligence count in Plaintiff's complaint.  Thank
5  you, Your Honor.
6      THE COURT:  Thank you.
7      MS. REYNOLDS:  Your Honor, all of the
8  demurrers, the claims --
9      THE COURT:  What are you addressing now?
10     MS. REYNOLDS:  I'm addressing fraud and
11 punitive damages.  But with regard to all the
12 demurrers, Your Honor, the claims made in the
13 complaint are the same.  So it should, these
14 arguments apply equally to the other lawsuits that
15 have been filed.
16     THE COURT:  Has Mr. Gardner finished what he's
17 doing?
18     MS. REYNOLDS:  Yes, sir.
19     MR. GARDNER:  Yes, Your Honor.
20     THE COURT:  So you're not going to be coming
21 back?  So I'm not going to hear from Miss Reynolds
22 and then hear from you?
23     MR. GARDNER:  I apologize.  I'm done.
24     THE COURT:  No no, there's nothing to

53

1    apologize for. Go ahead.
2        MS. REYNOLDS: Your Honor, I'm arguing the
3    demurrers on the fraud count and the punitive
4    damages.
5        Your Honor knows that a fraud, in order to
6    claim fraud the elements are false representation
7    of a material fact, made intentionally or knowingly
8    with intent to mislead the Plaintiff. The
9    Plaintiff relied on the misrepresentation, which
10   led to the injury or damages.
11       Your Honor, in this case, and I cited to the
12   Court actually that fraud must be pled or must be
13   distinctly stated. Generalized, nonspecific
14   allegations are insufficient. It cannot be vague
15   or indefinite or conclusory.
16       The Virginia Supreme Court has ruled and
17   actually sustained a demurrer on a fraud count in
18   Tuscarora, Inc. v. B.V.A. Credit Corporation, 218
19   Va. 849, where the Court held that the complaint
20   didn't have allegations specific enough, because it
21   didn't say the who, what, when and where of the
22   fraud that was complained.
23       The complaints in this case and the complaint
24   in all of the other meningitis cases before the

54

1    Court, the Plaintiffs have claimed that the doctors
2    did not know -- Actually I'll identify exactly.
3    "On information and belief, the doctors would
4    allege that the purchasing decisions were made
5    without their advice, consent or knowledge; that
6    they never knew that Insight Imaging Roanoke and
7    its employees and agents were purchasing from NECC;
8    never knew that the steroid drug they were
9    injecting came from NECC, came from NECC with the
10   kinds of conditions that existed at that time."
11       And so Plaintiff has set forth the fact that
12   the doctors did not know about this. So those are
13   the facts we're operating under in these demurrers,
14   and yet the Plaintiff then comes along and says
15   well, because Dr. O'Brien had in his procedure
16   note, or the other doctor, Dr. Mathis, when he
17   injected for the other plaintiffs, had in their
18   procedure notes Depo-Medrol, and when the doctors
19   identified Depo-Medrol in their procedure notes,
20   the Court will look at the procedure notes that
21   were attached to each and every one of the
22   complaints.
23       You will note that all of the language in it
24   is in past tense; that it was administered, and at

55

1    the end they all say the patient tolerated the
2    procedure well and left the department in a stable
3    condition, which implies that this note was
4    prepared after the patient had come and gone.
5        So the patient can't rely on that procedure
6    note, after the patient has come and gone. So that
7    aspect of a fraud claim, the patient relied on the
8    misrepresentation, does not exist with regard to
9    the claim in the fraud count that the doctor's
10   procedure notes identified Depo-Medrol.
11       What is not in the complaint is anything
12   indicating that Dr. Mathis or Dr. O'Brien spoke
13   with the Plaintiffs and told them what Depo Medrol
14   is and how that is different from other types of
15   steroids, whether or not it had -- the integrity of
16   the medication, nothing in the complaints indicate
17   that any literature provided to the Plaintiffs was
18   provided to them from the doctors. For all we know
19   in the complaints, they picked it up in the lobby.
20       Nothing indicating -- Well, the complaints
21   also indicate that actions such as sending the
22   procedure note to the primary care physician, such
23   as billing for Teva Parenteral Medicines, billing
24   the wrong medication to the insurance company; all

56

1    of the billing allegations, all of the sending
2    procedure notes out to other, other medical
3    providers, all of that stuff occurred after the
4    patient would have had the opportunity to rely.
5        Billing occurs after the procedure. Procedure
6    note preparation and sending off to a primary care
7    physician occurs after the procedure is performed.
8    So there isn't necessarily, the necessary reliance.
9        Plaintiff claims that oh, yes, but there's
10   such a thing called a fraud via intermediary claim
11   that can be asserted here. That is not so, Your
12   Honor. Fraud via intermediary does not work here.
13       First off, the Virginia courts have not
14   recognized a fraud via intermediary claim; but
15   secondly, in order for that claim to succeed, you
16   have to articulate a misstatement of material fact
17   to an intermediary, with the anticipation that the
18   intermediary will then tell the intended target,
19   and that person will rely and be injured.
20       That's not the case here, because the intended
21   third party to be injured has already had their
22   injection. The procedure note, the billing
23   records, all of that occurred after the patient
24   would have had the opportunity to rely.

57

1        So there is no fraud via intermediary claim
2    here in any of these cases. And for those reasons,
3    as far as the fraud claim is concerned, Your Honor,
4    we argue that there was no reliance, there's no
5    indication that the patients relied on anything
6    from the doctors.
7        And then, Your Honor, with regard to the
8    punitive damages claim; we would argue that for
9    punitive damages it is required that there be
10   actual malice, recklessness, negligence that is a
11   conscious disregard of the rights of others. And
12   in order to have a conscious disregard for the
13   rights of others, the Defendant must be aware that
14   the conduct would cause injury to another.
15       And for this particular case Plaintiff has
16   stated in their brief that for punitive damages
17   they are asserting that as to the gross negligence
18   and the fraud claim.
19       Well, first off, we don't believe there are
20   valid gross negligence or fraud claims, so there's
21   no punitive damages; but also with regard to the
22   conscious disregard, there's no conscious disregard
23   here, Your Honor. And the reason why we would
24   state that is because if you look at these

58

1    meningitis cases, they all occurred in the fall of
2    2012. This is when, when the tainted batch of
3    steroid was distributed by NECC.
4        And what was the response to that? It was to
5    stop injecting. When they became knowledgeable,
6    when they became knowledgeable that this steroid
7    was tainted, they didn't continue to inject.
8    That's when they became knowledgeable, and if they
9    had moved forward and continued to inject, then
10   there would be a conscious disregard.
11       This Plaintiff claims there were over 600
12   doses that were ordered by Insight for this
13   particular facility. We don't have 600 cases.
14   Which dose -- I mean when does the doctor's
15   knowledge become triggered, so that they can have a
16   conscious disregard? Which dose is the one that's
17   tainted that's going to injure somebody? The
18   doctors cannot know that. It's absolutely
19   impossible for the doctors to be able to discern
20   what is going to be the harmful lot of steroid, so
21   they can consciously inject that in someone with
22   knowledge that they would be injured.
23       That's just not this case. Once they became
24   aware that there was an adulterated product, it was

59

1    no longer used. So we would argue to the Court
2    that since there were no cases prior to September
3    2012, since there were all of these doses
4    administered by the doctors and when they became
5    aware after -- we don't know how far through those
6    600 doses -- after they became aware that there was
7    a harmful effect of these steroids, then they no
8    longer used it.
9        So Your Honor, we would argue that the
10   conscious disregard aspect of a punitive damages
11   claim simply does not exist here. Thank you.
12       THE COURT: Thank you.
13       MR. SULLIVAN: Your Honor, may I retrieve the
14   podium over here?
15       THE COURT: Sure, if you want it.
16       MR. SULLIVAN: Sorry.
17       THE COURT: That's the reason we don't use it.
18   I'll allow you, Mr. Sullivan, as has already been
19   done. Is Mr. Sexton going to be involved in this
20   or anybody or just you?
21       MR. SULLIVAN: Just me, Your Honor.
22       THE COURT: All right. And Mr. Shaw, are you
23   going to be desirous of participating in this
24   aspect at all?

60

1        MR. SHAW: No, Your Honor.
2        THE COURT: All right. I would assume not,
3    but I thought it best to ask. And also, Counsel,
4    where are we on all these -- Have you all appeared
5    in all these files? Everybody has appeared?
6        MR. SEXTON: Yes, of the 11 that you read out.
7        THE COURT: Right, okay, and including the one
8    you, that I didn't read out that you mentioned?
9        MR. SEXTON: Right.
10       THE COURT: All right.
11       MR. SULLIVAN: May it please the Court, Your
12   Honor; my name is Dan Sullivan.
13       THE COURT: I know who you are. Just go
14   ahead.
15       MR. SULLIVAN: Thank you. We're here today,
16   Your Honor, about a case in which these Defendants
17   injected Mr. Wingate with an adulterated drug, and
18   12 days later after a series of strokes and
19   seizures he was mercifully dead.
20       Today the local doctors and their clinic are
21   seeking to discharge four counts -- well, three
22   counts and the punitive damages claim.
23       We received their brief in this demurrer in
24   late February. We sent them our response on March

61

1    18, and just this Wednesday we received a second 20
2    page brief two days before the hearing.
3        The first challenge I'd like to address is the
4    Virginia Consumer Protection Act. I'll refer to it
5    as the VCPA, if that's all right with Your Honor.
6        Now, Defendant's argument on this particular
7    count has morphed a few times in their multiple
8    briefs. They stated in their demurrer, the only
9    grounds stated in their demurrer is, I quote, that,
10   "The formulation, compounding and sale of drugs is
11   authorized under the federal, under various federal
12   and state laws."
13       Now it's not just the formulation, compounding
14   and sale of drugs. Now they're saying and really
15   their only argument now is that it's the
16   prescribing, dispensing and administering drugs is
17   authorized under Virginia Code Section 54.1-3408.
18       Your Honor, that ground for their demurrer
19   doesn't appear anywhere in the actual demurrer.
20   And as Your Honor is aware, under Virginia Code
21   8.01-273 no grounds other than those stated
22   specifically in the demurrer shall be considered by
23   the Court.
24       A demurrer may be amended, as may any other

62

1    pleading, but they haven't done that. Again, let
2    me just point out that formulating, compounding and
3    selling the drug, in other words, making a drug or
4    selling a drug, are completely different in kind
5    than prescribe --
6        THE COURT: You're saying that they didn't
7    comply with Rule 415 in the last submission anyway.
8        MR. SULLIVAN: Yes, Your Honor. So we would
9    move to strike their entire last brief from
10   consideration and the arguments made, most of which
11   were made to the --
12       THE COURT: So do you want me to set this over
13   to a later date, so that would be timely and we
14   could deal with their, have this argument later?
15       MR. SULLIVAN: I'll defer to --
16       THE COURT: No, you're handling it. You can
17   decide.
18       MR.SULLIVAN: No, Your Honor.
19       THE COURT: All right. Go ahead.
20       MR. SULLIVAN: We would also move to strike
21   any grounds that are not stated in their demurrer
22   for the Virginia Consumer Protection Act. It's
23   essentially that prescribing, dispensing and
24   administering drugs is authorized. But regardless

63

1    of whether Your Honor chooses to strike that
2    argument as not being contained within their
3    original demurrer, it's a faulty argument
4    regardless.
5        Your Honor, the Defendants have demurred,
6    saying that 59.1-199(A) excludes prescribing,
7    administering and dispensing a drug. The problem
8    with this is that they're referring to the overall
9    transaction level. They're saying the focus of
10   199(A) is the overall transaction in which we
11   injected this adulterated drug into Mr. Wingate for
12   payment. They're focusing on the transaction
13   itself.
14       Now, you didn't hear them quote 199(A), so if
15   you don't mind, I'll do that right now. It states,
16   "Nothing in this chapter shall apply to any aspect
17   -- any aspect -- of a consumer transaction, which
18   aspect is authorized under laws or regulations of
19   this Commonwealth of the United States."
20       So we see the word "aspect" emphasized and
21   repeated in the very first sentence of this
22   statute, Your Honor. In other words, the Virginia
23   Legislature is saying we don't want you to focus on
24   the entire transaction. We don't want you to focus

64

1    on the injection of this adulterated drug. We want
2    you -- in exchange for payment. We want you to
3    focus on the aspects of the transaction that are
4    challenged under the VPCA.
5        And indeed, we're not challenging the entire
6    transaction under the VCPA. The aspects of the
7    transaction that Mrs. Wingate is challenging, as
8    she has said repeatedly from her complaint through
9    all of her briefing, is that they misrepresented
10   the drug in medical records, bills, and a handout
11   or handouts across these several cases.
12       Those are the aspects. And even taking a step
13   back from the malfeasance, as Mr. Gardner states,
14   even if you take a step back from the actual
15   malfeasance, think of it from this point; the
16   aspect of the transactions that we challenge are
17   handouts which state what drug you're receiving,
18   bills which state what drug you received, and
19   medical records wherein the doctor states I gave
20   him this drug.
21       Those are the aspects of the transaction that
22   violate the VCPA, Your Honor, and those are the
23   aspects of the transaction that 199(A) focuses on.
24   They have not pointed to any statute that

1   authorizes any one of those things.  Doctors have
2   been writing medical records and using them to
3   treat patients since a doctor in ancient Greece
4   coined the Hippocratic Oath, Your Honor.  They do
5   it to treat patients and to track treatment, not
6   because the statute says you can use medical
7   records in your treatment.  That is the aspect that
8   is under scrutiny under 199(A).
9       And the same with bills; no statute says you
10  can bill a patient for a drug you've given them.
11  And again with the handout; they have not pointed
12  to any statute that says you may or must hand out
13  literature to your patients telling them what drug
14  they're receiving.  That's because none exists,
15  Your Honor.
16      Now, even if you set aside the incorrect
17  focus, and again, they're focusing on the overall
18  transaction for the purposes of 199(A), when it
19  says twice in the first sentence it's the aspect of
20  the challenged transaction.
21      Even if you set aside the incorrect focus,
22  Your Honor, the Achilles heel that cripples their
23  argument is that no statute authorizes them to
24  inject Mr. Wingate with an adulterated drug.  In

1   fact, the Virginia Drug Control Act specifically
2   forbids them from injecting Mr. Wingate with a
3   adulterated drug for payment.
4       Section 54.1-3457 of the Virginia Drug Control
5   Act, which Mrs. Wingate has briefed in her
6   complaint and in her briefs, states and I quote,
7   "The following acts shall be prohibited; the
8   manufacture, sale, delivery, holding or offering
9   for sale of any drug, device or cosmetic that is
10  adulterated or misbranded," and again in (3), "the
11  receipt in commerce of any drug, device or cosmetic
12  that is adulterated and the delivery or proffered
13  delivery thereof for pay or otherwise."
14      Injecting someone with an adulterated drug in
15  exchange for payment, the overall transaction is
16  explicitly forbidden by Virginia law, and they're
17  trying to say that it's specifically authorized by
18  Virginia law.  That's just not true.  So even if
19  you take it from the overall transaction level that
20  they've claimed it to be at, which is incorrect
21  under 199(A), they're wrong.
22      We've heard a few arguments from Mr. Gardner
23  earlier about what the Manassas Auto Cars case
24  means.  Here's what it means.  It means regulating

1   something does not meaning authorizing something.
2   That's the argument that the Defendant made in
3   Manassas Auto Cars, and that's quite frankly the
4   argument that the entire defense bar in Virginia
5   was making in the buildup to that case back in 2007
6   and the years prior.
7       They were basically all saying well, this
8   aspect of a transaction -- again aspect -- is
9   heavily regulated, Your Honor.  This is a
10  healthcare industry or what may it be, so it's
11  authorized.
12      The Manassas court slapped that argument down,
13  and it was a huge blow to the defense bar.  So it's
14  somewhat ironic that the Defendants today are
15  attempting to use Manassas Auto Cars as a sword,
16  when the Court in Manassas Auto Cars specifically
17  held for the plaintiff, and it was a huge blow for
18  the defense bar.
19      So regulating something does not equal
20  authorizing something.  And the Defendants claim
21  they've got a statute authorizing the dispensing of
22  an adulterated drug, and again there are several
23  layers of disconnect here.
24      First of all, this wasn't in their original

1   demurrer.  Second of all, it's incorrect focus.
2   Third of all, there's another section that strictly
3   prohibits this very action at the transactional
4   level -- injecting him with an adulterated drug for
5   payment.  Even fourth of all, this analysis is
6   incorrect.  This statute that they've cited as
7   authorizing or sanctioning actually is a regulating
8   statute, Your Honor.  It states, and I quote;
9   "54.1-3408, Professional Use by Practitioners," and
10  this is part of the Virginia Drug Control Act.
11      "A practitioner of medicine," and I will omit
12  all the other forms of medicine, "A practitioner of
13  medicine shall only prescribe, dispense or
14  administer controlled substances, A, in good faith"
15  -- It doesn't say these letter, but -- "A, in good
16  faith; B, for medicinal or therapeutic purposes;
17  and C, within the course of his professional
18  practice."
19      In other words, practitioners of medicine may
20  only dispense these drugs.  That's, we'll call that
21  X.  They may only dispense this drug when A, B and
22  C are, they check the boxes on A, B, and C.  And
23  that's exactly, Your Honor, the type of regulation
24  that was referred to in the Manassas Auto Cars.

69

1    Mr. Gardner stated today, using a fairly
2  colorful example, that he can go and advertise a
3  car without running afoul of Virginia law. Well,
4  he can advertise one car, but he can't advertise
5  more than five cars in one location, because in
6  order to do so you need licensing under the very
7  statutory scheme that was at issue in Manassas Auto
8  Cars.
9    They said you can advertise for more than five
10  vehicles in more than one location, as long as you
11  obtain licensing and other, and other requirements,
12  one of which is I believe having a marquee that
13  says you sell used cars or whatever. So the point
14  is this is a regulated statute, the one that
15  they're claiming.
16    THE COURT: Let me, and I hate to interrupt
17  you, but let me interrupt you. I didn't restrict
18  them on time, and I'm not going to restrict you on
19  time.
20    The simple reality is I have a docket in
21  Roanoke County. Since I presently preside in
22  Roanoke County and the City of Salem and Roanoke
23  City, sometimes I have days when I'm in two
24  different places. This is one of those.

70

1    I will come back this afternoon after I finish
2  that docket. I should be back I anticipate around
3  3:30, and request that you take up any further
4  argument at that time.
5    I hate to do that to you, but I want to give
6  you time to complete your argument. But I just,
7  I'm out of time, almost out of time this morning.
8    So I don't want to work any inconvenience on
9  you. As I say, if I had been able to anticipate or
10  been aware ahead of time exactly how long each side
11  needed, I would have allocated time evenly and held
12  everybody to it.
13    But I don't like to do that, so I rarely,
14  rarely do that. And I'm not going to, I won't cut
15  your argument time, I'm just going to bifurcate
16  here. But I want to give you enough time to kind
17  of conclude for now, without making any awkward
18  transitions later, or if you can conclude now.
19    MR. SULLIVAN: I can make an attempt to get
20  moving, if you just cut me off --
21    THE COURT: No, I'm not trying to rush you.
22    MR. SULLIVAN: If you don't mind, I'll just
23  finish up the VCPA.
24    THE COURT: That's fine.

71

1    MR. SULLIVAN: So two last, there are really
2  just two -- Okay, so just to briefly recap. One;
3  the grounds that they basically based their entire
4  argument today on are not included in their
5  demurrer, and therefore they should be stricken.
6    Two; they're focused on the wrong aspect of
7  the transaction. In fact, they're focused on the
8  global transaction, which is injecting Mr. Wingate
9  with an adulterated drug for payment. 199(A) says
10  it's the aspect of the transaction in question.
11    Three, they're incorrect that, well, they're
12  incorrect that that act in the overall transaction
13  is authorized. In fact, it's prohibited strictly
14  by Virginia law to inject someone with an
15  adulterated drug for payment. It's strictly
16  prohibited, so there's no argument that that is
17  authorized by law.
18    And four, even if that statute didn't exist,
19  3408 is the regulating statute. It says you can do
20  A or you can do X, which is as a practitioner of
21  medicine dispense or prescribe a drug when you
22  check the box on B, doing so in good faith, C, for
23  medicinal purposes, and D, in the course of your
24  professional practice. And I mutilated the

72

1  headings, and I apologize for that.
2    Lastly, just two last things on this, and then
3  I can go real briefly into the damages argument.
4  First of all -- and excuse me, just one last thing,
5  and that's that the VCPA is a remedial statute,
6  Your Honor, meaning that an exclusion such as
7  199(A) is meant to be construed strictly. And the
8  Defendant's argument would balloon the exclusion to
9  swallow the rule. In other words, any transaction
10  -- not any aspect of the transaction, but any
11  transaction that's authorized, which this one is
12  not -- would then be excluded.
13    As for the damages, Your Honor, this is
14  statutory interpretation 101. Actual damages, the
15  term "actual damages" is not in any way defined or
16  limited in the VCPA anywhere. Therefore, we assume
17  that the Virginia Legislature when it enacted the
18  VCPA in 1977 was aware of and amenable to existing
19  case law at the time.
20    The Virginia court in 1937 said actual damages
21  includes all damages that flow from injury. Those
22  would include personal injury damages. This would
23  include emotional anguish for loss of Mr. Wingate
24  by his family members. They've not made one

73

1 argument that that's a faulty interpretation of the
2 statute. Instead they quibble about the stare
3 decisis principles.
4     Your Honor, I would argue just briefly to
5 that. If one court holds exactly one way on a
6 particular issue and then 10 years later the exact
7 same court revisits the exact same issue, cites the
8 prior case and says we choose to hold the exact
9 opposite position in this case, I would argue
10 that's overturning the prior case's law.
11     THE COURT: But that's in a circuit. Those
12 are court cases, aren't they?
13     MR. SULLIVAN: They're circuit court.
14     THE COURT: So it's not stare decisis on me
15 anyway, is it?
16     MR. SULLIVAN: No.
17     THE COURT: Only to the extent it's
18 persuasive. So none of that really matters to me,
19 does it?
20     MR. SULLIVAN: You've made my argument better
21 than me. Thank you.
22     Essentially they don't give any reason why the
23 older cases they cited which don't provide any
24 reason for this new definition of actual damages

74

1 that don't mean what it's meant since the 1930s is
2 a better definition than the one we just stated and
3 those in Mrs. Wingate's brief. And as Mr. Gardner
4 said, she has claimed continuing damages
5 regardless.
6     So we would respectfully request that you
7 overrule their demurrer on both of these aspects of
8 the Virginia Consumer Protection Act. And if it's
9 all right with Your Honor, we can stop and continue
10 later on. Otherwise, if you have more time we'll
11 continue on.
12     THE COURT: No. All right. Mr. Shaw?
13     MR. SHAW: I'm sorry; we're going to reconvene
14 at 3:30 here?
15     THE COURT: I'll excuse you. You don't have a
16 dog in this fight at this stage, I don't think.
17 I've already said all I'm going to hear is the rest
18 of his argument. I'm going to order or have you
19 all order or Miss Reynolds order the transcript on
20 the argument as to the demurrers, and of course you
21 can get a copy of that, if you like.
22     MR. SHAW: And then be permitted to respond.
23     THE COURT: I'm sorry?
24     MR. SHAW: Be permitted to respond, because

75

1 none of this was noticed for today.
2     THE COURT: I'm sorry, that's why I was asking
3 you earlier if you wanted to be -- Yeah,
4 absolutely. Of course I'll allow you to respond.
5 I just thought you were not desirous of argument
6 today.
7     MR. SHAW: No, certainly not. As I removed
8 the case today, I was not prepared to --
9     THE COURT: Well, on that case.
10     MR. SHAW: Right, because --
11     THE COURT: Well, I'm not dealing with, I'm
12 not doing anything with that case.
13     MR. SHAW: Right. Understandably this was
14 noticed, this whole argument today was noticed in
15 the Wingate case, and the Court has kindly allowed
16 everybody to put forth their arguments.
17     THE COURT: I thought we'd just get to it, to
18 the extent we can.
19     MR. SHAW: We would want to have the same
20 opportunity to respond, once we get the transcript.
21 Thank you.
22     THE COURT: Sure. And I don't, I don't
23 typically, because I haven't found it necessary,
24 and I think it unintentionally oftentimes infringes

76

1 on lawyers' schedules and workload and whatnot. So
2 if I start drawing lines, invariably either people
3 will not say that it chafes given their trial
4 schedule or otherwise, or they say it does and I've
5 got to go back and revisit everything and get
6 involved in a lot of details and nuances I don't
7 want to get involved in.
8     So I typically don't set any -- What I would
9 like is you all just, you know, I don't care
10 whether you all send something in at one time or
11 whether somebody sends something in and somebody
12 else responds. I don't want, you know, something
13 sent in 60 days and something else in four months
14 and something else ten months after that, and then
15 we're going to be talking about continuing the
16 trial date.
17     So some reasonable period of time that suits
18 everybody. You all work it out. All I ask is once
19 everybody's submitted whatever it is you want to
20 submit, let me know; otherwise the file won't be
21 brought to my attention, and then you'll be
22 wondering and your clients will be wondering why
23 you haven't got a ruling.
24     Just let me know when it's all in, and I'll

77

1    hear and say.  Given your travel distance and
2    whatnot, you're excused.  I'm sorry to bifurcate
3    things like this, but that's just my present world.
4        MR. SHAW: So the Court has ruled we'll get a
5    copy of the transcript?  Miss Reynolds is ordering?
6        THE COURT: I don't rule on copies of
7    transcripts.  You all order transcripts and get
8    them.
9        MR. SHAW: Got it.  Yes.
10       THE COURT: Yeah.  And I know I'm sure things
11   are done differently the further north you get, but
12   no.
13       MR. SHAW: I understand.
14       THE COURT: Miss Stiles will prepare it, and
15   anybody who wants it can get it.  Anybody sitting
16   in the audience can get it, as long as you pay for
17   it.  I don't pay for it, and I don't ordinarily ask
18   for them, except when I want them -- but I want
19   them in this case.
20       MR. SHAW: Thank you, Your Honor.
21       THE COURT: Certainly.  Now, for purposes of
22   where we are right now; Miss Reynolds and Mr.
23   Gardner, likewise, although I realize you may wish
24   to appear and respond further to whatever Mr.

78

1    Sullivan concludes with, you don't have to.  I will
2    excuse you.
3        Again, it's a fairly lengthy recess, so I
4    don't want to impose on your schedules needlessly.
5    And I hate to impose on your schedule, Mr.
6    Sullivan.  I excuse you as well, Mr. Sexton.  Or
7    Mr. Sexton, if you don't want to make the rest of
8    the argument, I'll hear Mr. Sullivan.  But it'll be
9    around 3:30.  I'll do the best I can.  Thank you
10   all.  Stand in recess.
11       MR. GARDNER: Thank you, Your Honor.
12       THE BAILIFF: Court stands in recess.
13
14       (A recess was taken at 12:06 p.m., and the
15   hearing resumed at 3:45 p.m.  All Counsel were present,
16   excluding Mr. Shaw.)
17
18       THE COURT: All right.  Following recess, show
19   the presence of Plaintiff's Counsel and Counsel,
20   Mr. Gardner and Miss Reynolds.  Mr. Shaw has been
21   excused.
22       Mr. Sullivan, again, thank you.  I apologize
23   for having interrupted.  You may proceed.
24       MR. SULLIVAN: Thank you, Your Honor.  We have

79

1    just finished discussing the damages aspect on the
2    VCPA claim.  I just had one other thing to add to
3    that.
4        While Mr. Gardner was discussing this issue he
5    mentioned, well, he argued that our approach forces
6    the VCPA to trump the wrongful death statute.  And
7    that's just not true, Your Honor.  The wrongful
8    death statute is our vehicle for recovery of
9    damages.  It would be VCPA is our, that's our
10   claim.  That's our cause of action.
11       And so because actual damages in a case that
12   involves a death, just as you'll find in Humphrey,
13   the Humphrey case from Fairfax County court, in
14   that case it was a wrongful death as well.  And I
15   believe just for edification purposes they have a
16   good discussion of this issue in there.
17       The other thing is that the rest of these
18   cases though, which were nominal and we're here on
19   it now, is none of those wrongful death statutes
20   apply to any of those.  So that entire argument
21   does not cover any of the rest of these cases,
22   since these aren't death cases.
23       Moving forward to the gross negligence claim;
24   Your Honor, it's impossible to believe that the

80

1    facts of the case as we pled them cannot constitute
2    gross negligence.  You have -- we have the
3    Defendants here saying essentially the following.
4        Dr. O'Brien walks into a room.  There's a
5    needle sitting on a table.  He's never seen before.
6    He didn't draw the needle, he didn't draw the
7    syringe, he didn't look at the vial, he had nothing
8    to do with it.  All he knows is that there's a
9    needle sitting there.  He doesn't know who drew it,
10   and all he can tell is it's some sort of aqueous
11   solution inside the syringe.
12       He proceeds to then inject it into his
13   patient, essentially hoping for the best but
14   shooting blind, Your Honor.  And that is their best
15   case scenario of what these doctors did.
16       Meanwhile, in not supervising whoever it was
17   that chose these drugs and whoever it was that
18   filled these drugs with or filled -- excuse me --
19   filled these syringes with the drugs in question,
20   the doctors delegated a vital medical decision to
21   unsupervised personnel.
22       They're unsupervised because the doctors don't
23   know who put them in there, so they couldn't be
24   supervised, and they therefore are violating

81

1   Virginia regulations 18 VAC 85-20-29, which says
2   that, "Practitioners shall delegate patient care
3   only to subordinates who are properly trained and
4   supervised."
5       And again, that's the doctor's best case
6   scenario, Your Honor. The other scenario is that
7   they are the ones acting as medical director, in
8   Dr. Mathis' case, acting as medical director,
9   choosing these drugs, purchasing them directly from
10  NECC, and pawning them off as a Pfizer, the gold
11  standard of sterility, Your Honor, of
12  pharmaceuticals.
13      And just one brief bit about this talk that
14  somehow we in our complaint, that Miss Wingate
15  alleges that the doctors did not know about these
16  situations. That's simply not true. The
17  allegations in the complaint and the allegations
18  which span dozens of paragraphs state, "Upon
19  information and belief, Drs. Mathias and O'Brien
20  would allege."
21      So what we're alleging is that they will
22  allege these facts. We're not actually giving
23  those facts as Mrs. Wingate's pleadings or as her
24  allegation. So when Mrs. Wingate says that, she's

82

1   anticipating the doctors' argument.
2       She's not claiming that all those facts inside
3   there are true. So therefore when she makes these
4   claims, these factual claims about all parties and
5   includes the doctors in them, that's alternative
6   pleading, Your Honor.
7       While Mr. Gardner provides a colorful
8   description of the complaint and essentially claims
9   that there's too much detail, there's too much in
10  there, the fact is that the complaint clearly sets
11  out that these Defendants, if the facts as alleged
12  in the complaint are taken to be true, which they
13  must for the purposes of the demurrer, that these
14  Defendants are responsible for choosing these drugs
15  and for pawning them off as the Pfizer drug, and
16  for billing people for the Pfizer and/or the Teva
17  Parenteral drug.
18      Again, and it's a good thing Mrs. Wingate did
19  plead in the alternative, Your Honor, because now
20  both Defendants have crossed -- well, the local
21  Defendants have cross-claimed against the doctor --
22  against the Insight Health, saying that you were
23  the one that made these decisions. You were the
24  one that decided to bill people for a drug they

83

1   didn't receive.
2       Insight Health Corp. has denied those
3   allegations and essentially says we bought your
4   practice in late 2010. You guys were doing this
5   stuff when we got here. You're the only ones in
6   the country that we know that provide this service.
7       So we've got both Defendants pointing fingers
8   at each other, Your Honor, which essentially proves
9   the prudence of Mrs. Wingate in pleading these
10  facts in the alternative.
11      As for this argument about the onerous duty
12  that Mrs. Wingate would force upon all healthcare
13  providers to establish their own labs, their own
14  testing labs in their own facilities and test and
15  open up these vials and test them themselves; Your
16  Honor, none of that is necessary. None of that is
17  anywhere said in any of the pleadings or briefs
18  that Mrs. Wingate has filed. It's purely a straw
19  man argument.
20      What Mrs. Wingate is asking or is saying that
21  these doctors should have done was exercise the
22  least bit of diligence in ensuring that what was
23  being injected into the most delicate space in the
24  human body of their patient had some assurance of

84

1   sterility and quality.
2       And while Mr. Gardner does also state that no
3   court in the country requires these sorts of
4   duties, he's not given any case law to support that
5   allegation. I'm not sure what that is.
6       Fraud, Your Honor; the fraud defense or the
7   fraud demurrer from these Defendants essentially
8   says you can't prove that we gave you this
9   information. We did give you false information.
10  We did give Mrs. Wingate false information. We
11  gave his insurance company false information. We
12  gave his primary care physician false information.
13      You can't approve at the stage of a demurrer
14  that he received this information before he
15  received his injection. Therefore, according to
16  their argument, you can't have a fraud claim.
17      Your Honor, inherent in any fraud claim is the
18  idea that the Defendants have already practiced
19  deception. And Mr. Wingate, we would ask him if he
20  received the handout telling him that he was
21  getting a Pfizer drug before the injection, but
22  he's dead, Your Honor.
23      So we're forced with what the Defendants have
24  given us, and at that point -- this point we're at

85

1 the outset of discovery. We don't have any
2 information on that, when he discovered. Your
3 Honor, if he received -- And they've said
4 themselves in their last brief that for all the
5 Defendants know and today Miss Reynolds restated
6 for all these defendants know, Mr. Wingate received
7 this handout saying you're getting Depo-Medrol as
8 he was walking out the door or from some brochure.
9     Well, it's just as likely, Your Honor, that he
10 received it while he was sitting in the waiting
11 room, waiting to get an injection. If he had a
12 smartphone you could look up Depo-Medrol on there.
13     But it's pure speculation on the part of both
14 sides, at this point. The fact is we're at the
15 outset of discovery, and it's simply too soon to
16 sustain a demurrer simply because the Plaintiff has
17 not constructed a detailed second by second
18 timeline of when he received this handout.
19     But Your Honor, there is a very disturbing
20 aspect to this case, in addition to what I've just
21 discussed. It's very hard to believe that a
22 national corporation and a local, respected local
23 clinic would engage in a sweeping pattern of
24 deception to trick the gatekeeping insurers and

86

1 primary care physician into allowing them to
2 provide patients with a substandard compounded drug
3 and bill them for an FDA approved Pfizer drug, or
4 it's also FDA approved generic copy made by Teva
5 Parenteral, but that's the facts we have, Your
6 Honor. We've reviewed over 30 patients' files.
7 Your Honor, in each and every one of them --
8     THE COURT: But none of this deals with facts,
9 does it? Isn't it all on demurrer?
10     MR. SULLIVAN: Well, many of these facts, the
11 facts that we have here are that in these cases,
12 Your Honor, we have alleged that they uniformly --
13     THE COURT: What you've alleged is what's
14 important, not the investigation you've done.
15 That's my point.
16     MR. SULLIVAN: Sure.
17     THE COURT: I don't need to hear about the
18 investigation. Tell me what you've alleged.
19     MR. SULLIVAN: We've alleged in all ten of
20 these cases that we're dealing with right now,
21 every single one of them it's the same factual
22 situation, and that's that these Defendants
23 uniformly miscoded this drug.
24     And this isn't just an accident, Your Honor.

87

1 The question is why would they do this. The answer
2 is very simple: Money, your Honor. The --
3     THE COURT: Did you allege that too?
4     MR. SULLIVAN: We did, Your Honor.
5     THE COURT: Okay.
6     MR. SULLIVAN: What we have and what we, what
7 Mrs. Wingate did include in her -- excuse me for a
8 moment -- what she did include in her complaint is
9 a statement from Anthem, her husband's insurer,
10 that says, "Due to the lack of, due to the lack of
11 data to adequately review the compounded
12 medications, compounded medications are considered
13 nonpreferred and are placed at the highest coverage
14 here; i.e, highest co-pay or coinsurance for
15 nonformulary medication. They may also require
16 prior authorization of benefits for coverage
17 through a participating network pharmacy."
18     Your Honor, what that means is that the
19 Defendants would have had to call Anthem up, say
20 Anthem, we are going to inject Mrs. Wingate with a
21 compounded drug. Will you pay for this? Do you
22 give us authorization to do so -- prior to the
23 injection.
24     But that would have involved a lot of work,

88

1 Your Honor, and Anthem probably would have said no.
2 So what they did instead is they didn't say
3 anything. They withheld that information before
4 the injection, and they misrepresented it after.
5     They told Anthem and they told these doctors
6 that we've provided this patient with a Pfizer
7 drug, or in other circumstances, we've provided
8 this patient with the FDA approved generic of the
9 Pfizer drug.
10     So you have a pattern of deception, you have a
11 motive. So the question is, Your Honor -- And we
12 acknowledge this is an issue of first impression
13 under Virginia law, this fraud by intermediary.
14 But what we have is the question of whether
15 Virginia law, if it's okay for these insurance
16 companies to lie to everyone and for these
17 Defendants to lie to everyone, lie -- If I said
18 insurance companies, which I'm pretty sure I did,
19 that's not what I meant -- if it's okay for these
20 Defendants to lie to insurance companies, which are
21 the gatekeepers for these patients, to lie to the
22 patient's doctors who are also the gatekeepers, and
23 engage in that pattern on a massive scale for
24 literally years, as long as they don't do so, as

89

1   long as they don't provide mr. Wingate himself with
2   a statement that he could rely on before he is
3   done, is it okay under Virginia law.  We would
4   submit this is exactly the sort of case where the
5   fly by intermediary theory should be considered in
6   Virginia.
7        Your Honor, fraud by intermediary isn't some
8   newfangled plaintiff's bar idea.  It comes from the
9   Second Restatement of Torts, and it's been applied
10  in jurisdictions across the country.  While Miss
11  Reynolds is correct that no Virginia case or court
12  has accepted it, no Virginia court that the
13  Plaintiffs have been able to locate has rejected it
14  either.
15       THE COURT:  That's what case of first
16  impression means, doesn't it?
17       MR. SULLIVAN:  It is.  I just wanted to be
18  clear.
19       THE COURT:  All right.  I just want to let you
20  know I do understand some things.
21       MR. SULLIVAN:  Your Honor, the facts will come
22  out in discovery.  They claim in their demurrer for
23  all we know he got it on the way out, for this
24  handout.

90

1        The facts will come out in the discovery, and
2   we would submit this is the type of case where a
3   demurrer is simply not appropriate, especially
4   where they have the option for a motion to strike
5   the evidence or a motion for summary judgment at a
6   later time.
7        Lastly, Your Honor, we come to the punitive
8   damages argument.  Essentially the Defendants --
9        THE COURT:  If you've got fraud, you've got
10  punitives, don't you?
11       MR. SULLIVAN:  Exactly.  The Defendants are
12  arguing -- I want to address one thing.  The
13  Defendants are arguing that somehow they need to
14  have conscious disregard, and that means they need
15  to have known that these drugs were adulterated.
16  And that's simply not true.
17       What we've alleged is that these Defendants
18  knew they were purchasing -- these Defendants,
19  that's in the allegations, knew they were
20  purchasing drugs from a cut rate, illegal,
21  sprawling pharmacy surrounded by a dump that shreds
22  used mattresses from prisons and hospitals, Your
23  Honor.
24       THE COURT:  Yeah, I've heard about all that.

91

1        MR. SULLIVAN:  Your Honor, we would submit
2   that's conscious disregard of your patient's
3   rights.  Thank you.
4        THE COURT:  And on the issues other than the
5   punitive damage and fraud issues, do you agree or
6   concede that if the demurrer is granted, that
7   there's no need to replead, because you've pled
8   everything that could be pled?  It's just a
9   question that it's not sufficient?
10       MR. SULLIVAN:  Your Honor, we believe we've
11  adequately pled our argument.
12       THE COURT:  That's what I'm saying.  So you
13  wouldn't need leave to replead, if the demurrer was
14  sustained?
15       MR. SULLIVAN:  I don't believe so.
16       THE COURT:  All right.  I think that's right.
17  All right.
18       I don't really want to hear a whole lot, but
19  Mr. Gardner or Miss Reynolds; and I'm sorry, Mr.
20  Gardner, but since you've switched positions on me
21  where he's closer, where I would normally assume
22  lead counsel was.  In any event, if either of you,
23  or given the way we've done today, if both of you
24  want to briefly respond, I'll certainly permit

92

1   that.
2        MR. GARDNER:  I won't need that.  Thank you.
3   I got a promotion in the interim.
4        THE COURT:  Good for you.  Battle field
5   promotions are always good.
6        MR. GARDNER:  Very quickly, in regard to the
7   argument that our stance has shifted from the
8   filing of our demurrer to the argument or reply; in
9   the motion we say that, "The Virginia Consumer
10  Protection Act excludes from provisions any aspect
11  of consumer transaction which is authorized under
12  the laws and regulations of the laws of the
13  Commonwealth of Virginia in the United States," and
14  we cite to the Virginia Drug Control Act 54.1-3400,
15  that set.
16       In our brief in support we say that, "The
17  formulation, compounding, and sale of drugs are
18  sanctioned under Virginia and federal law, and
19  therefore excluded under the VPCA," and then he
20  quotes the language of that exact provision where
21  we say that, "A practitioner of medicine shall only
22  prescribe, dispense or administer controlled
23  substances in good faith for medicinal or
24  therapeutic purposes, during the course of his

93

1  professional practice."
2      And then in our reply we state that the proper
3  determination for the Court is whether the
4  prescription, administration and dispensing of
5  drugs is sanctioned by Virginia or federal law.
6      If that constitutes inconsistent pleading, I'm
7  going to have a very hard time writing briefs in
8  the future. I think that we put it in issue in the
9  motion, we raised it in our initial brief, we
10  continue that argument in our reply, as applied to
11  the response the Plaintiff made.
12      Now, I think the real issue with this argument
13  is how do we define the transaction at issue, for
14  the purposes of the exclusionary language of the
15  Virginia Consumer Protection Act. They want to
16  focus on a very discrete aspect, citing the
17  language that any aspect of a consumer transaction
18  which aspect is authorized under separate statutes
19  is excluded. They say we are focusing too broadly,
20  that we look at the whole transaction, and that we
21  need to focus more narrowly.
22      I say that we just look at what the Virginia
23  Supreme Court has done in the only case where they
24  consider this provision, Manassas Auto Cars v.

94

1  Couch, and there the complaint alleged fraudulent
2  motor vehicle advertising.
3      The Court classified the aspect of the
4  transaction at issue as pure motor vehicle
5  advertising. And I want to make sure that I get
6  the exact language, so if you'll just give me two
7  seconds. Yes; "motor vehicle dealer advertising,"
8  that's how they classified the transaction at
9  issue.
10      We could go very broadly here. The
11  transaction that resulted in the tragedy of Mr.
12  Wingate's death and the injuries in all the related
13  cases start at the New England Compounding center,
14  and it involved a chain of distribution,
15  administration and dispensation that ended at the
16  clinic in Roanoke.
17      We're only focusing on Image Guided Pain
18  Management's aspect of that transaction, the
19  administration and prescription of the drug, and
20  that aspect is authorized by Virginia law as
21  described in our earlier brief, and therefore
22  excluded from the VCPA.
23      And then finally on the VCPA, the notion that
24  we are not -- that the Plaintiff is not asking you

95

1  to take the VCPA and trump the Wrongful Death Act;
2  we would simply refer to the analysis in the cases
3  we cited, both of the cases that we have cited and
4  that Plaintiff cited are persuasive authority.
5  They're Virginia circuit court cases.
6      Our position is they're all good law. It's
7  for the Court to decide the best position in the
8  split. We've respectfully submitted that the cases
9  we've cited are better reasoned, and they make
10  clear that their express worry is that the Virginia
11  Consumer Protection Act can slowly expand tendrils
12  into other aspects in discrete sections of the
13  Virginia Code that are meant to be read
14  independently. And we would respectfully request
15  that the Court sustain the demurrer on those
16  grounds. Thank you.
17      THE COURT: All right. Gentlemen, if you all
18  would get me the portion of the transcript dealing
19  with your argument here today and submit anything
20  further in conjunction with whatever Mr. Shaw has
21  suggested that he wanted to submit, and then one of
22  you or all of you or any of you let me know that
23  it's, it's ripe and ready for everything you want
24  me to have and it's ready for ruling, then I will

96

1  get you a ruling.
2      And with that, then is there anything further
3  today, Mr. Sexton, from your viewpoint?
4      MR. SEXTON: There's one thing. We did a
5  protective order about a month ago and forwarded it
6  to Your Honor, and it was endorsed by everybody.
7  We were just wondering if you had a problem with it
8  or had any questions for us about it.
9      THE COURT: If I did, it would have been the
10  first time I've ever had a problem with a
11  protective order. Take it when it's endorsed. And
12  you say you sent --
13      MR. SEXTON: Well, Miss Reynolds, she sent it.
14      THE COURT: Wait a minute, wait a minute. I'm
15  sorry, here's -- Typically what the Clerk does is
16  the Clerk places the protective order on the
17  outside of the file, so that the clerk's office and
18  everyone else can handle it correctly.
19      What they've done in this was even though it
20  wasn't entered, they placed it on the outside of
21  the file. I thought it was entered, but it's
22  entered. It's entered as of today.
23      MR. SEXTON: Okay.
24      THE COURT: Or will be momentarily. And it

97

1       was also with the letter where you all were telling
2       me I couldn't add NECC as a nominal party, and I
3       wrote back on that. So I think we're all squared
4       away.
5           Anything further, Mr. Gardner?
6           MR. GARDNER: No, Your Honor.
7           THE COURT: Miss Reynolds?
8           MS. REYNOLDS: No, Your Honor.
9           THE COURT: Mr. Sullivan?
10          MR. SULLIVAN: No, Your Honor.
11          THE COURT: All right. Thank you all. That
12      concludes the matter for today. We'll stand in
13      recess.
14
15  (4:10 p.m.)
16
17              * * * * *
18
19
20
21
22
23
24

98

CERTIFICATE
COMMONWEALTH OF VIRGINIA
COUNTY OF FRANKLIN
    I, Cynthia N. Stiles, CCR, Notary Public in and for the
Commonwealth of Virginia, at Large, do hereby certify that
the foregoing hearing was by me reduced to machine shorthand
in the presence of the witness, afterwards transcribed by me
by means of computer, and that to the best of my ability the
foregoing is a true and correct transcript of the hearing as
aforesaid.
    I further certify that this hearing was taken at the
time and place specified in the foregoing caption.
    I further certify that I am not a relative, counsel or
attorney for either party, or otherwise interested in the
outcome of this action.
    IN WITNESS WHEREOF, I have hereunto set my hand at Rocky
Mount, Virginia on the 14th day of April, 2013.


                    _____
                    CYNTHIA N. STILES, CCR
                    NOTARY PUBLIC


My Commission expires December 31, 2014


Notary Registration Number: 266666

**A**

abbreviate 34:14
ability 98:8
able 39:4 50:16
58:19 70:9 89:13
abrogates 48:17
absence 50:1
absolute 14:22
absolutely 20:8
58:18 75:4
abstain 12:5,15
abstention 16:2
abuse 17:15
abuses 49:13
accept 9:2,3 32:9
32:12
acceptance 8:14
9:4
accepted 36:18
89:12
accident 86:24
accommodate
14:21
accuracy 51:6
acetate 34:1 48:7
achilles 65:22
acknowledge 88:12
act 13:18 33:12
34:4,12,15,22
35:14,17,22,24
36:8 40:5,23,24
42:11,21 43:6,15
43:23 44:3,5,10
44:11 45:12,15
45:16,19 46:18
46:22 61:4 62:22
66:1,5 68:10
71:12 74:8 92:10
92:14 93:15 95:1
95:11
acting 81:7,8
action 36:15 40:13
40:14 41:5 47:16
48:4,14 51:3
68:3 79:10 98:15
actionable 35:16
actions 8:20,21
35:9,10,12,15
40:2 48:12 55:21
acts 45:22 47:8
66:7
actual 44:12 45:3
47:17 57:10
61:19 64:14
72:14,15,20
73:24 79:11
ad 19:20 21:13
23:14 41:19,21
add 7:4 28:17 79:2
97:2
addition 12:13
85:20
additional 5:15
39:14
address 61:3 90:12
addressing 52:9,10

adequately 87:11
91:11
adhere 18:13
adjudicated 16:3,5
administer 36:2
41:18 68:14
92:22
administered
33:21 47:19
54:24 59:4
administering
61:16 62:24 63:7
administration
35:19 42:5 43:20
93:4 94:15,19
admission 31:3
admissions 28:10
29:4,8 30:21
admits 33:4
admitted 28:11
30:2,17,19,22,24
admitting 29:8
adulterated 23:4
36:11 58:24
60:17 63:11 64:1
65:24 66:3,10,12
66:14 67:22 68:4
71:9,15 90:15
advance 11:23
advancing 15:21
advertise 41:8,10
41:16 69:2,4,4,9
advertisement 42:6
advertising 40:21
94:2,5,7
advice 48:2 54:5
advised 27:5,14
advisement 27:18
advisory 29:13,17
affirmative 30:10
aforesaid 98:10
afoul 41:20,24 69:3
afternoon 70:1
age 6:8
agents 48:6 54:7
ago 18:3 96:5
agree 9:9,9 23:21
26:13,14 31:10
32:14 91:5
ahead 26:1 34:7,9
37:18 38:24
39:21 53:1 60:14
62:19 70:10
allegation 50:4
81:24 84:5
allegations 36:12
41:12 43:10 47:9
47:12 48:8 53:14
53:20 56:1 81:17
81:17 83:3 90:19
allege 48:1,3 54:4
81:20,22 87:3
alleged 33:7 40:20
42:24 43:7,13,14
82:11 86:12,13
86:18,19 90:17

94:1
alleges 81:15
alleging 81:21
allocate 39:7
allocated 70:11
allow 10:15 45:8
59:18 75:4
allowed 45:3 75:15
allowing 86:1
allows 38:22
alluding 21:14
allusion 21:14
alternative 49:5,10
49:11,14 82:5,19
83:10
amenable 72:18
amend 31:2
amended 31:7
61:24
amounting 49:22
amounts 50:1
analogous 29:19
analysis 68:5 95:2
ancient 65:3
announce 4:24 5:1
anquish 72:23
answer 31:3,7 87:1
anthem 87:9,19,20
88:1,5
anticipate 70:2,9
anticipating 19:18
82:1
anticipation 56:17
anybody 19:7,9,12
21:12 59:20
77:15,15
anymore 7:6
anyway 10:21 62:7
73:15
apologize 21:10
52:23 53:1 72:1
78:22
apparently 26:23
appeal 18:1 21:11
appear 61:19 77:24
appearance 51:7
appearances 2:1
3:5
appeared 60:4,5
appellate 26:8
applied 89:9 93:10
apply 34:23 35:5
38:2 45:12 52:14
63:16 79:20
apportioning 45:17
appreciate 17:2
18:22 20:3
approach 79:5
appropriate 20:1
26:2 46:18 51:6
51:21 90:3
approve 84:13
approved 86:3,4
88:8
april 1:17 3:4
11:23 16:7 20:16

20:19 98:17
aqueous 80:10
area 18:6
arent 20:2 44:10
73:12 79:22
argue 8:24 16:18
34:3 57:4,8 59:1
59:9 73:4,9
argued 79:5
arguing 53:2 90:12
90:13
argument 14:3
37:18 39:9 61:6
61:15 62:14 63:2
63:3 65:23 67:2
67:4,12 70:4,6,15
71:4,16 72:3,8
73:1,20 74:18,20
75:5,14 78:8
79:20 82:1 83:11
83:19 84:16 90:8
91:11 92:7,8
93:10,12 95:19
arguments 22:16
34:6 49:3,8
52:14 62:10
66:22 75:16
arrangements
47:17
article 10:20
articulate 56:16
aside 50:17 65:16
65:21
asked 19:16 24:18
25:17
asking 10:3 20:24
29:17 30:7,14
45:10 50:10 75:2
83:20 94:24
aspect 34:18,24,24
35:3 38:2 44:1,2
44:23 55:7 59:10
59:24 63:16,17
64:13,14 67:5
65:7,19 67:8,8
71:6,10 72:10
79:1 85:20 92:10
93:16,17,18 94:3
94:18,20
aspects 34:11 64:3
64:6,12,21,23
74:7 95:12
assembly 44:17
asserted 56:11
asserting 57:17
asserts 47:5
assume 5:19 60:2
72:16 91:21
assuming 39:20
assurance 83:24
assured 16:4
attached 54:21
attacks 23:14
attempt 70:19
attempting 67:15
attention 76:21

attorney 98:14
attorneys 18:6
audience 77:16
authority 10:19
11:1 24:22 39:14
95:4
authorization
87:16,22
authorize 41:21
42:17 43:9,10
authorized 35:1,4
35:9 40:2,6
61:11,17 62:24
63:18 66:17
67:11 71:13,17
72:11 92:11
93:18 94:20
authorizes 65:1,23
authorizing 67:1
67:20,21 68:7
auto 35:8 40:19
41:7 42:7 66:23
67:3,15,16 68:24
69:7 93:24
automobile 40:20
40:21
automobiles 42:6
availability 15:10
available 15:13
34:20 44:4,14
46:21
avoid 38:21
aware 15:3 57:13
58:24 59:5,6
61:20 70:10
72:18
awkward 70:17

**B**

b 53:18 68:16,21
68:22 71:22
back 21:4 22:20
25:10,20 52:21
64:13,14 67:5
70:1,2 76:5 97:3
bad 15:14 46:15
baffling 23:7
bailiff 78:12
ball 15:21
balloon 72:8
bankruptcy 8:15
9:24 10:1,13,15
10:17,18 11:2
24:15,16,19
bar 67:4,13,18 89:8
based 47:7 71:3
basement 41:23
basic 48:18
basically 12:2
37:11 67:7 71:3
basis 14:12
batch 58:2
battle 92:4
bear 11:5
beg 7:22
behalf 2:4,8,12

6:22 7:2 32:24
belief 17:4 18:12
54:3 81:19
believe 7:5,9,17 8:4
9:13 11:15,17
14:9,14,14 15:3
17:3 22:22 46:16
57:19 69:12
79:15,24 85:21
91:10,15
bench 21:18 39:4
beneficial 25:22
beneficiaries 45:18
benefits 87:16
benitez 17:22
best 60:3 78:9
80:13,14 81:5
95:7 98:8
better 46:16 73:20
74:2 95:9
beyond 11:2
bifurcate 70:15
77:2
bill 65:10 82:24
86:3
billing 55:23,23
56:1,5,22 82:16
bills 64:10,18 65:9
bit 81:13 83:22
bleed 47:2
blind 80:14
blow 67:13,17
bodily 44:18
body 83:24
bold 11:1
bonner 2:10
boston 8:22 9:21
9:24 12:9 13:2
14:4 16:4
bought 83:3
box 1:23 71:22
boxes 68:22
bradley 4:16 29:5
brief 7:18,20 11:22
12:1 57:16 60:23
61:2 62:9 74:3
81:13 85:4 92:16
93:9 94:21
briefed 11:23
24:14 37:19 66:5
briefing 11:21
12:20 23:22 64:9
briefly 7:9 71:2
72:3 73:4 91:24
briefs 61:8 66:6
83:17 93:7
bring 8:16 11:6
broadly 45:1 93:19
94:10
brochure 85:8
brochures 37:23
brought 5:19 18:7
20:12 35:6 48:20
76:21
buildup 67:5
burden 50:9 51:1

51:12,17,19
business 12:9,9

**C**

c 33:20 68:17,22,22
71:22 98:1,1
call 11:8,10,16
68:20 87:19
called 44:19 46:1
56:10
cant 24:10,11
29:21 30:9 41:8
41:10,12 55:5
69:4 84:8,13,16
cap 28:15,24 30:9
30:20
caption 98:12
car 41:20,22 69:3,4
care 32:19 50:3,13
55:22 56:6 76:9
81:2 84:12 86:1
careful 5:10
cars 40:19 41:7,8
41:10 42:7 66:23
67:3,15,16 68:24
69:5,8,13 93:24
case 1:7 5:15,22
7:5,10 8:13 9:4
9:15,16,18 10:2
12:3,11,19 14:10
16:6,10,11 17:6
17:22 18:4,14,21
18:23 20:13,17
22:4,11,15,18
31:6 32:10 36:12
40:8,17,19 41:7
42:8 44:19,22
45:10 46:1,2,13
47:21,24 53:11
53:23 56:20
57:15 58:23
60:16 66:23 67:5
72:19 73:8,9
75:8,9,12,15
77:19 79:11,13
79:14 80:1,15
81:5,8 84:4
85:20 89:4,11,15
90:2 93:23
cases 4:6 5:9 9:12
9:15 11:11 13:1
15:24 16:14 17:3
17:3 18:24 19:3
19:5 29:5,6
37:12 38:9,14
46:8,14 53:24
57:2 58:1,13
59:2 64:11 73:10
73:12,23 79:18
79:21,22 86:11
86:20 94:13 95:2
95:3,5,8
categorize 43:12
cause 3:1 18:15
48:14 57:14
79:10

ccr 3:7 98:4,19
center 46:2,5 94:13
central 1:23
centuries 17:9
certain 13:18 36:6
43:16
certainly 19:10
31:20 75:7 77:21
91:24
certify 98:5,11,13
cetera 29:6
chafes 76:3
chain 94:14
challenge 61:3
64:16
challenged 64:4
65:20
challenging 64:5,7
chameleonlike
49:7
chance 22:24
change 18:10
changed 13:21
chapter 9:24 44:14
63:16
charles 1:19 3:2
check 51:14 68:22
71:22
checks 51:6
chief 18:3
choose 73:8
chooses 63:1
choosing 81:9
82:14
chose 80:17
chosen 51:18
cir 44:21
circuit 1:2 3:2 4:5
18:3 24:5 26:23
44:16 46:2 73:11
73:13 95:5
circumstances
18:17 88:7
cite 92:14
cited 46:3,8 53:11
68:6 73:23 95:3
95:3,4,9
cites 46:13 73:7
citing 93:16
citizens 15:22
26:11
citizenship 8:11
city 1:2 4:6,6 69:22
69:23
civil 4:5 17:7
cl122547 1:7 4:12
cl122571 4:10
cl122572 4:17
cl122573 4:13
cl122574 4:14
cl122575 4:15
cl122576 4:16
cl130009 4:9
cl130054 5:11
cl130055 4:8
cl130057 4:7

claim 33:13 34:12
34:13,21 35:6
40:9 41:3 45:9
46:24 49:17 53:6
55:7,9 56:10,14
56:15 57:1,3,8,18
59:11 60:22
67:20 79:2,10,23
84:16,17 89:22
claimed 42:20 44:7
54:1 66:20 74:4
claiming 69:15
82:2
claims 11:3 29:24
40:8,15 42:8,12
42:14 43:16,23
48:20 52:8,12
56:9 57:20 58:11
82:4,4,8
clarify 16:24
classified 94:3,8
classify 42:22
clean 50:24
clear 17:21 21:20
24:5 28:14 37:7
89:18 95:10
clearly 43:15 82:10
clears 39:18
clerk 7:14 96:15,16
clerks 96:17
client 14:5 28:10
clients 13:15 15:16
18:15 22:15 24:4
37:23,24 76:22
clinic 8:16 11:18
60:20 85:23
94:16
clinton 2:11 7:1
clock 14:5
close 19:22
closer 91:21
cocounsel 6:5
code 36:5 40:22
42:17,20 49:4
51:11 61:17,20
95:13
coined 65:4
coinsurance 87:14
collateral 19:15
collectively 33:2
48:16
college 16:13
colorful 69:2 82:7
come 21:4 29:22
50:14 55:4,6
70:1 89:21 90:1
90:7
comes 29:23 54:14
89:8
coming 52:20
comment 11:17,20
20:11
commented 11:14
comments 21:14
commerce 36:9
66:11

commission 98:21
common 24:1 38:9
51:16
commonly 29:20
commonwealth
35:2 40:3 63:19
92:13 98:2,5
companies 88:16
88:18,20
company 23:3
55:24 84:11
compel 21:5 32:17
competing 26:5
complained 35:3
35:13 53:22
complaint 15:17
33:5 42:24 43:7
43:11 47:4,8,14
48:9,24 49:2,6,15
52:4,13 53:19,23
55:11 64:8 66:6
81:14,17 82:8,10
82:12 87:8 94:1
complaints 53:23
54:22 55:16,19
55:20
complete 49:23
50:16 52:1 70:6
completely 62:4
comply 62:7
compound 41:17
compounded 34:1
86:2 87:11,12,21
compounding 8:16
9:16,23 35:18
36:6 41:23 51:8
61:10,13 62:2
92:17 94:13
computer 98:8
concede 91:6
concerned 25:1
31:19 32:3 57:3
conclude 70:17,18
concludes 78:1
97:12
conclusory 53:15
concomitant 18:19
condition 55:3
conditions 51:7
54:10
conduct 43:13
57:14
conference 7:19,20
11:8,9,16
confines 46:18
conflates 45:22
conflict 37:1
confused 36:17
confusing 39:19
conjunction 95:20
conscious 57:11,12
57:22,22 58:10
58:16 59:10
90:14 91:2
consciously 51:11
58:21

consent 48:2 54:5
consider 93:24
consideration
62:10
considered 61:22
87:12 89:5
considering 44:23
consolidate 8:20
consolidation 8:23
consternation
27:13
constitute 80:1
constituted 40:23
constitutes 93:6
constitution 17:12
constructed 85:17
construed 45:1
72:7
consulting 14:16
consumer 33:12
34:4,12,14,24
35:14,17,22 40:4
42:11,21,23 43:1
43:5,12,15,19,22
44:3,9,11 45:11
45:15,19 46:17
46:21 61:4 62:22
63:17 74:8 92:9
92:11 93:15,17
95:11
contained 63:2
contaminate 50:18
contamination
50:6
contends 42:16
48:13
context 29:22,23
continually 17:11
continue 28:1 58:7
74:9,11 93:10
continued 58:9
continuing 74:4
76:15
contradictory
48:24
control 35:24 66:1
66:4 68:10 92:14
controlled 36:2
68:14 92:22
conversely 35:15
cooperated 14:18
copay 87:14
copies 77:6
copy 13:11 31:18
74:21 77:5 86:4
corp 1:9 7:2 83:2
corporation 2:12
47:13 53:18
85:22
correct 7:23 13:24
26:17,18,20
89:11 98:9
corrected 17:12
correctly 28:9 37:3
96:18
cosmetic 36:8,10

66:9,11
costs 39:7
couch 35:8 40:19
94:1
couldnt 80:23 97:2
counsel 2:4,8,12
4:23 14:11 19:7
19:8,8,9,9 23:9
27:14,15 31:22
60:3 78:15,19,19
91:22 98:13
count 33:11,12,13
34:4 47:4 52:4
53:3,17 55:9
61:7
countless 23:5
country 50:19
51:19 83:6 84:3
89:10
counts 60:21,22
county 44:21 46:9
46:11 69:21,22
79:13 98:3
couple 16:24
course 13:1 36:4
43:8 48:23 68:17
71:23 74:20 75:4
92:24
court 1:2 3:3,7 4:4
4:5,20 5:13,14,18
5:23 6:2,5,7,11
6:17,20,24 7:3,6
7:7,16,17 8:2,6
8:17 9:1,8,11,17
9:20 10:1,3,5,5,9
10:14,15,16,19
10:20,20,21 11:2
11:3,7 12:3,4,6
12:17 13:5,8,10
13:13,17,20
14:13 15:2,8,12
16:3,21,23 17:21
17:23 18:14
20:24 21:2,5,6,9
22:12,16,19
23:14,17 24:9,11
24:17,18,19,19
24:20 26:3,12,13
26:19,20 28:22
29:1,9,13,16
30:14,18,23 31:4
31:9,12,15,19
32:22 33:8,15
34:5,9 35:7
36:22 37:2,3,6,15
38:3,5,11,18,23
39:2,24 40:5,14
40:17 41:2,6,9
45:1,6,7,21 46:2
46:8,9,20 49:20
51:16,18 52:3,6,9
52:16,20,24
53:12,16,19 54:1
54:20 59:1,12,15
59:17,22 60:2,7
60:10,11,13

61:23 62:6,12,16
62:19 67:12,16
69:16 70:21,24
72:20 73:5,7,11
73:12,13,14,17
74:12,15,23 75:2
75:9,11,15,17,22
77:4,6,10,14,21
78:12,18 79:13
84:3 86:8,13,17
87:3,5 89:11,12
89:15,19 90:9,24
91:4,12,16 92:4
93:3,23 94:3
95:5,7,15,17 96:9
96:14,24 97:7,9
97:11
courtroom 19:13
36:17
courts 24:5,6,6,7
24:12 25:4,12
26:5 44:16 46:6
46:16 56:13
cover 79:21
coverage 87:13,16
create 26:7 27:13
created 27:14
creates 19:2
credit 53:18
criminal 17:6
cripples 65:22
criteria 36:6
critical 41:7
crociata 2:10
crossclaim 1:10,15
crossclaimed 82:21
crossed 82:20
crossexamination
34:7
crowded 13:2
custom 17:19
cut 27:16 70:14,20
90:20
cynicism 26:2
cynthia 3:7 98:4,19

D

d 1:12,13 51:10
71:23
damage 91:5
damages 30:10
33:13 34:18 44:4
44:8,12,18 45:3,6
45:17 46:21
52:11 53:4,10
57:8,9,16,21
59:10 60:22 72:3
72:13,14,15,20
72:21,22 73:24
74:4 79:1,9,11
90:8
dan 5:8 6:6 60:12
daniel 2:3 6:6
dark 13:16
data 87:11
date 16:6 24:16

62:13 76:16
dates 14:17,19,20
day 3:4 21:18
98:17
days 13:18 60:18
61:2 69:23 76:13
de 2:10
dead 37:21,23
60:19 84:22
deal 20:5 22:7
23:17,24 27:2,20
27:21,21,23 28:5
38:7 62:14
dealer 40:20 94:7
dealing 15:5 18:24
75:11 86:20
95:18
deals 39:8 40:18
86:8
dealt 19:3,5 22:6
deane 44:22
death 34:19 44:4,8
45:13,16 79:6,8
79:12,14,19,22
94:12 95:1
decades 18:3
deceased 1:6
decedent 34:16
42:16
december 98:21
deception 84:19
85:24 88:10
decide 62:17 95:7
decided 21:8 82:24
decision 12:21 48:2
50:11 51:11
80:20
decisions 47:17
54:4 82:23
decisis 73:3,14
defendant 1:10,10
1:14 48:22 49:17
57:13 67:2
defendants 6:23
11:12 48:15,19
60:16 61:6 63:5
67:14,20 72:8
80:3 82:11,14,20
82:21 83:7 84:7
84:18,23 85:5,6
86:22 87:19
88:17,20 90:8,11
90:13,17,18
defense 30:10,10
67:4,13,18 84:6
defer 62:15
define 43:4,5 93:13
defined 72:15
definition 73:24
74:2
degree 15:2
delay 9:6 14:10
15:15
delegate 81:2
delegated 80:20
deliberative 26:15

delicate 83:23
delivery 36:8 66:8
66:12,13
demurred 63:5
demurrer 33:4,10
34:11 38:7 44:1
44:2,7 46:20,23
49:1 52:3 53:17
60:23 61:8,9,18
61:19,22,24
62:21 63:3 68:1
71:5 74:7 82:13
84:7,13 85:16
86:9 89:22 90:3
91:6,13 92:8
95:15
demurrers 32:20
32:24 33:3,9
36:20 39:5,9,10
52:8,12 53:3
54:13 74:20
demurring 33:11
denied 83:2
deny 41:15,16
department 55:2
dependent 5:21
depo 55:13
depomedrol 54:18
54:19 55:10 85:7
85:12
depositions 14:22
20:15,19
deriving 10:19
described 94:21
description 82:8
designed 9:6
desirous 59:23
75:5
detail 82:9
detailed 85:17
details 76:6
determination 93:3
determined 15:14
device 36:10 66:9
66:11
devonshire 44:20
dictate 39:13
didnt 24:17 48:22
49:12 53:20,21
58:7 60:8 62:6
63:14 69:17
71:18 80:6,6,7
83:1 88:2
differ 7:22
difference 41:14
42:3
differences 38:14
different 10:14
23:20 24:8 30:5
37:21 42:8 55:14
62:4 69:24
differently 77:11
dignity 24:7,20
diligence 50:2
83:22
direct 17:7

directed 47:12
directing 26:5
directly 81:9
director 81:7,8
disadvantage
18:15
disagree 26:13
discern 58:19
discharge 60:21
disconnect 67:23
discovered 85:2
discovery 15:17,18
20:13,14,19,21
21:3,7,16,19 22:2
22:4,6 85:1,15
89:22 90:1
discrete 93:16
95:12
discussed 7:8 85:21
discussing 79:1,4
discussion 7:20
19:15 79:16
dispensation 94:15
dispense 31:18
36:1 68:13,20,21
71:21 92:22
dispensing 35:19
61:16 62:23 63:7
67:21 93:4
disputes 21:19 22:2
22:4
disqualifying 31:8
disregard 31:5
49:22 57:11,12
57:22,22 58:10
58:16 59:10
90:14 91:2
distance 77:1
distinction 41:6
distinctly 53:13
distributed 58:3
distribution 94:14
district 7:12 8:17
8:19,22 9:5,20
10:3,5,7,11,16,16
10:21 12:18 13:6
14:6 24:7,9,11
25:15 26:3,21
disturbing 85:19
diversity 8:11 14:7
docket 13:2 69:20
70:2
doctor 54:16 64:19
65:3 82:21
doctors 12:7 14:18
14:19 23:2 50:10
50:12 51:23 54:1
54:3,12,18 55:9
55:18 57:6 58:14
58:18,19 59:4
60:20 65:1 80:15
80:20,22 81:5,15
82:1,5 83:21
88:5,22
document 15:16
documents 20:18

23:1,3
doesnt 17:23 23:8
23:10 27:13,19
27:24 32:13
46:10 49:12
61:19 68:15 80:9
89:16
dog 74:16
doing 52:17 71:22
75:12 83:4
dont 7:5 14:14
16:10 19:11
20:21,24 21:4,10
21:24 22:1,3,21
23:7,21,22,23
25:8,22 26:16,22
29:12,16,21 30:4
30:11,14 31:15
32:8,18 33:14
34:5,6 37:16,22
38:3,5,7,13 39:3
41:20 51:23
57:19 58:13 59:5
59:17 63:15,23
63:24 70:8,13,22
73:22,23 74:1,15
74:16 75:22,22
76:6,8,9,12 77:6
77:17,17 78:1,4,7
80:22 85:1 86:17
88:24 89:1 90:10
91:15,18
door 85:8
dorsey 1:19 3:2
dose 58:14,16
doses 58:12 59:3,6
douglas 1:5
dozens 81:18
dr 2:8,8 12:8,8
32:24,24 33:21
54:15,16 55:12
55:12 80:4 81:8
draw 80:6,6
drawing 76:2
drawn 19:23 33:6
drew 41:6 80:9
drs 81:19
drug 35:23 36:7,10
42:15,18 43:2,2,2
47:20 48:11 50:8
51:8 54:8 60:17
62:3,3,4 63:7,11
64:1,10,17,18,20
65:10,13,24 66:1
66:3,4,9,11,14
67:22 68:4,10,21
71:9,15,21 82:15
82:17,24 84:21
86:2,3,23 87:21
88:7,9 92:14
94:19
drugs 34:15 35:19
36:6 41:12,18,23
42:5,14 43:21
47:18 50:13,20
51:22,24 61:10

61:14,16 62:24
68:20 80:17,18
80:19 81:9 82:14
90:15,20 92:17
93:5
due 15:18 20:14
21:7 87:10,10
duly 3:8
dump 90:21
duties 84:4
duty 49:24 83:11

E

e 87:14 98:1,1
earlier 66:23 75:3
94:21
early 47:14
edification 79:15
educate 38:4
effect 44:7 59:7
effectively 7:16
either 13:13 26:5
39:12,13 76:2
89:14 91:22
98:14
elaborated 45:6
electronic 25:13
electronically 7:13
25:19
elements 53:6
email 14:24
emotion 18:21,23
19:2
emotional 72:23
emphasized 63:20
employ 51:2
employees 48:5
54:7
enacted 72:17
ended 94:15
endorsed 96:6,11
endorsement 31:18
31:23 32:18
endorsements
32:12
endorses 32:4
engage 48:22 51:23
85:23 88:23
engaged 25:10
engaging 26:2
england 8:16 9:16
9:23 11:5 94:13
enhance 26:10
ensuring 83:22
entered 4:20 20:22
25:16 30:11
32:15 96:20,21
96:22,22
entertain 17:20
entire 45:16,18
62:9 63:24 64:5
67:4 71:3 79:20
entirely 12:17
26:17,18 37:3
entirety 44:6
entitled 12:10

49:13
entity 50:7,12
  51:21
epidural 33:20
  47:20,22,23
epperly 4:10 29:6
equal 24:7 67:19
equally 52:14
especially 90:3
esq 2:3,3,6,7,11
essence 26:5 28:8
  28:16 38:10
essentially 30:7
  45:14 62:23
  73:22 80:3,13
  82:8 83:3,8 84:7
  90:8
establish 83:13
established 45:17
estate 1:5
et 29:6
euraupair 44:20
eve 9:7
evenly 70:11
event 91:22
everybody 21:17
  23:1,8,9,21 39:5
  60:5 70:12 75:16
  76:18 96:6
everybodys 76:19
evidence 90:5
ex 25:11
exact 36:11 73:6,7
  73:8 92:20 94:6
exactly 9:21 16:5
  29:19 37:22 54:2
  68:23 70:10 73:5
  89:4 90:11
examined 35:7
  41:2
example 27:6
  28:21 37:21 69:2
excellent 39:1
exception 17:6
exceptions 17:5,5
exchange 64:2
  66:15
excluded 34:17,21
  35:10,21 40:4,9
  40:16 42:10
  43:14,17,22
  72:12 92:19
  93:19 94:22
excludes 43:17
  63:6 92:10
excluding 78:16
exclusion 72:6,8
exclusionary 93:14
excuse 42:2 45:7
  72:4 74:15 78:2
  78:6 80:18 87:7
excused 77:2 78:21
executor 1:5
exercise 28:1 83:21
exist 55:8 59:11
  71:18

existed 54:10
existence 21:21
existing 72:18
exists 51:4 65:14
expand 11:1 95:11
expansion 12:14
expansive 45:11
expedite 27:11
expeditiously 12:4
  15:24 47:3
expense 15:15
expenses 44:6
expired 14:1
expires 98:21
explain 24:19
explained 36:21
explaining 31:11
explicitly 66:16
express 20:1,2 48:8
  95:10
expressly 34:17,21
  35:21 42:10
  51:17
extension 12:1
extent 38:15 73:17
  75:18
extraordinarily
  48:23

F

f 1:13 6:15 98:1
facilities 50:7
  83:14
facility 50:14,15
  58:13
fact 14:13 17:4
  18:13,23 24:21
  26:12 44:24 46:6
  46:13 51:4 53:7
  54:11 56:16 66:1
  71:7,13 82:10
  85:14
facts 33:5,7,15
  37:20 49:15
  54:13 80:1 81:22
  81:23 82:2,11
  83:10 86:5,8,10
  86:11 89:21 90:1
factual 33:6 38:14
  48:8 82:4 86:21
fail 47:10
fair 26:16 45:2
fairfax 44:21 46:9
  46:10 79:13
fairly 26:14 33:6
  69:1 78:3
fairness 12:16
faith 14:12 15:14
  36:2 68:14,16
  71:22 92:23
fall 28:15 58:1
falls 49:19
false 53:6 84:9,10
  84:11,12
familiar 21:22,23
  21:24 25:6

family 15:5,10 19:1
  72:24
far 11:2 57:3 59:5
fashion 26:15
faulty 63:3 73:1
faxed 32:12
fda 86:3,4 88:8
february 60:24
federal 8:12,17
  9:12,16,17 11:7
  13:17,21 14:7
  22:16 24:6,9,10
  25:3,12 26:3,20
  35:5,13,16,20
  36:7,13 37:2
  40:7,11 42:17
  43:8,9,21 61:11
  61:11 92:18 93:5
feels 45:1
field 92:4
fight 22:21 74:16
file 4:5 6:8 10:2
  14:5 21:11,11
  76:20 96:17,21
filed 7:12 9:15,24
  11:24,24 14:13
  21:6 52:15 83:18
files 5:3 6:17 39:3
  60:5 86:6
filing 13:4 21:12
  92:8
filled 80:18,18,19
filson 4:15 29:6
final 51:6,8,14
finally 94:23
find 25:14 79:12
finds 17:23
fine 24:24 27:18
  31:22 32:16
  70:24
fingers 83:7
finish 70:1,23
finished 18:24
  52:16 79:1
firm 17:4 31:21
first 4:19 8:2 23:18
  33:3 34:13,21
  56:13 57:19 61:3
  63:21 65:19
  67:24 72:4 88:12
  89:15 96:10
five 21:19 39:23
  69:5,9
flow 72:21
flush 27:9
fly 89:5
focus 63:9,23,24
  64:3 65:17,21
  68:1 93:16,21
focused 71:6,7
focuses 64:23
focusing 63:12
  65:17 93:19
  94:17
following 3:1 39:15
  66:7 78:18 80:3

food 36:7,10
forbidden 66:16
forbids 66:2
force 12:19 83:12
forced 84:23
forces 79:5
foregoing 47:8,9
  98:6,9,12
foreign 19:8
forget 6:9
forgetting 25:11
formal 38:6
former 18:2
forms 68:12
formulating 62:2
formulation 35:18
  61:10,13 92:17
forth 37:2 47:10
  49:15 54:11
  75:16
forward 20:17,20
  41:3 58:9 79:23
forwarded 96:5
found 17:12 29:14
  33:22 75:23
foundation 17:10
four 21:19 60:21
  71:18 76:13
fourth 26:23 68:5
foutz 4:9 29:6
franklin 98:3
frankly 18:4 21:9
  23:7 24:1 31:21
  31:24 67:3
fraud 33:13 52:10
  53:3,5,6,12,17,22
  55:7,9 56:10,13
  56:14 57:1,3,18
  57:20 84:6,6,7,16
  84:17 88:13 89:7
  90:9 91:5
fraudulent 40:23
  40:24 94:1
free 31:21
frequently 29:23
fullyfunctioning
  50:15
further 50:19 70:3
  77:11,24 95:20
  96:2 97:5 98:11
  98:13
future 93:8

G

g 1:1,4
games 16:9,16
gardner 2:7 6:20
  6:22 8:4,7,8 9:10
  10:3,7 26:17,24
  32:23 34:3,7,9,10
  36:16 37:9 38:12
  39:22 40:1 52:16
  52:19,23 64:13
  66:22 69:1 74:3
  77:23 78:11,20
  79:4 82:7 84:2

91:19,20 92:2,6
  97:5,6
gatekeepers 88:21
  88:22
gatekeeping 85:24
general 44:17
generalized 53:13
generic 86:4 88:8
gentlemen 95:17
gentry 2:2 5:8
getting 4:11 31:9
  32:2,3 50:24
  84:21 85:7
give 25:17 32:17
  49:12 70:5,16
  73:22 84:9,10
  87:22 94:6
given 29:4 65:10
  76:3 77:1 84:4
  84:24 91:23
giving 81:22
global 71:8
go 16:13 20:20 26:1
  33:15 34:7,9
  37:18 38:24
  39:21 41:3,19,21
  50:19 53:1 60:13
  62:19 69:2 72:3
  76:5 94:10
goes 6:6
going 7:21 9:12,19
  9:21 12:24 14:3
  15:7,22 19:5,10
  19:14,23 20:13
  22:21 23:13,15
  23:17 24:3 26:1
  26:4 27:2,3,16,20
  28:4,5 32:7,17
  39:2,4,6,11,20
  43:9,10 52:20,21
  58:17,20 59:19
  59:23 69:18
  70:14,15 74:13
  74:17,18 76:15
  87:20 93:7
gold 81:10
good 14:12 15:8
  36:2 46:15,15
  68:14,15 71:22
  79:16 82:18 92:4
  92:5,23 95:6
gotten 25:13
grand 15:19
grant 43:24
granted 28:14 91:6
gray 1:5
greater 28:20
greece 65:3
grind 51:24
gross 33:12 34:4
  46:24 47:11
  49:17,21 52:3
  57:17,20 79:23
  80:2
grossly 47:6
ground 8:14 47:10

47:14 48:21
  61:18
grounds 8:10,12
  61:9,21 62:21
  71:3 95:16
guess 18:4 20:20
guided 1:13 2:8
  6:16 33:1 47:5
  49:18 50:4 94:17
gum 45:20
guys 83:4

H

habit 17:18
halt 52:1
hand 18:2 65:12
  98:16
handed 25:18,20
handle 10:17 23:19
  96:18
handled 26:14
handling 62:16
handout 64:10
  65:11 84:20 85:7
  85:18 89:24
handouts 64:11,17
happens 26:13
happy 8:6 27:21
  39:16
hard 85:21 93:7
harm 18:15
harmful 58:20 59:7
harris 4:8 47:22
hasnt 21:7 27:5
  30:2
hate 69:16 70:5
  78:5
havent 13:13,22
  21:19 22:2 25:8
  25:21 62:1 75:23
  76:23
headings 72:1
health 1:9 2:12 7:2
  34:2 47:12,16,21
  51:22 82:22 83:2
healthcare 28:11
  28:19,23 29:9,11
  29:15 30:8 46:1
  46:5 50:9 51:13
  51:20 67:10
  83:12
hear 8:2,6 12:11
  16:24 19:19 20:8
  20:9 33:16 36:22
  36:23 37:18 39:5
  52:21,22 63:14
  74:17 77:1 78:8
  86:17 91:18
heard 1:19 3:1 4:6
  9:20 33:16 36:24
  37:3 40:18 66:22
  90:24
hearing 4:22 5:4,16
  9:6,7 11:15 15:9
  22:7 27:10,11
  39:16 61:2 78:15

98:6,9,11
hears 10:23
heavily 67:9
heel 65:22
held 11:3 35:9
  50:10 53:19
  67:17 70:11
hell 12:21
heres 66:24 96:15
hereunto 98:16
hes 30:14 34:8
  52:16 80:5 84:4
  84:22 91:21
high 16:12
higher 24:19
highest 87:13,14
hippocratic 65:4
hold 23:12 44:16
  73:8
holding 66:8
holds 73:5
hominem 19:20
  21:13 23:14
honor 5:7 6:14 7:1
  7:5,11,24 8:8 9:9
  16:22 20:10 22:9
  29:3 30:6 31:1
  33:14 34:8,10
  36:18 38:20
  39:22 52:5,7,12
  52:19 53:2,5,11
  56:12 57:3,7,23
  59:9,13,21 60:1
  60:12,16 61:5,18
  61:20 62:8,18
  63:1,5,22 64:22
  65:4,15,22 67:9
  68:8,23 72:6,13
  73:4 74:9 77:20
  78:11,24 79:7,24
  80:14 81:6,11
  82:6,19 83:8,16
  84:6,17,22 85:3,9
  85:19 86:6,7,12
  86:24 87:2,4,18
  88:1,11 89:7,21
  90:7,23 91:1,10
  96:6 97:6,8,10
honorable 1:19 3:2
hoping 80:13
horrible 26:9
hospitals 90:22
hour 31:6
huge 12:14 67:13
  67:17
human 18:16,16
  83:24
humor 25:15
humphrey 46:1,5,7
  79:12,13
husband 23:5
husbands 87:9
hypothetical 27:9

___ I ___

id 4:23 38:12 61:3

idea 84:18 89:8
identical 5:22
  19:21 37:11
identified 54:19
  55:10
identify 4:24 48:18
  54:2
identity 10:10
igpm 33:2 43:20
  47:11,16 48:1,3,9
igpms 34:11,16
iii 10:20
ill 5:18 8:6 16:19
  16:24 20:9 21:16
  22:7 27:23 36:23
  38:18 39:16
  41:23 47:1,2
  54:2 59:18 61:4
  62:15 63:15
  70:22 74:15 75:4
  76:24 78:8,9
  91:24
illegal 90:20
illustrates 46:6
im 6:5,10 10:9
  13:24 16:18
  18:11 19:9,14
  21:11,15,24 22:5
  22:9 23:13,15,17
  24:3 25:1,7 26:1
  27:2,2,7,8,14,16
  27:19,21 28:5
  31:16 32:7,17
  36:16 38:18 39:2
  39:4,6,11,20
  52:10,21,23 53:2
  69:18,23 70:7,14
  70:15,21 74:13
  74:17,18,23 75:2
  75:11,11 77:2,10
  84:5 88:18 91:12
  91:19 93:6 96:14
image 1:13 2:8
  6:16 33:1 47:5
  49:18 50:4 94:17
imagine 23:2
imaging 33:19
  47:19 48:5,16
  54:6
impact 17:7
implemented 17:13
implementing
  17:22
implies 55:3
import 37:5
important 15:22
  86:14
impose 19:7 50:8
  51:12,16 78:4,5
imposed 17:17,20
  51:19
impossible 58:19
  79:24
impression 88:12
  89:16
improper 17:15

inappropriate
  19:14
include 72:22,23
  87:7,8
included 5:4,5 6:2
  71:4
includes 72:21 82:5
including 8:21
  47:19 60:7
inconsistent 93:6
inconvenience 70:8
incorrect 14:2 27:1
  46:4 65:16,21
  66:20 68:1,6
  71:11,12
incredible 50:9
incredibly 51:1,12
indefinite 53:15
independent 51:2
independently
  95:14
indicate 55:16,21
indicated 45:24
indicates 45:2
indicating 5:14
  20:22 55:12,20
indication 57:5
industry 67:10
inferences 33:6
inform 15:12
information 23:11
  54:3 81:19 84:9
  84:9,10,11,12,14
  85:2 88:3
infringes 75:24
inherent 84:17
initial 9:14 93:9
inject 58:7,9,21
  65:24 71:14
  80:12 87:20
injected 54:17
  60:17 63:11
  83:23
injecting 54:9 58:5
  66:2,14 68:4
  71:8
injection 33:20,22
  47:23 56:22 64:1
  84:15,21 85:11
  87:23 88:4
injure 58:17
injured 23:4 56:19
  56:21 58:22
injuries 44:19
  94:12
injury 34:19 44:4,8
  53:10 57:14
  72:21,22
inordinate 26:7
inside 80:11 82:2
insight 1:9 2:12 4:8
  4:9,10,12,13,14
  4:15,16,17 5:12
  6:4 7:2 20:15
  33:19 34:2 47:12
  47:16,19,21 48:5

inspect 50:7,13
inspection 50:15
instance 13:19
instances 37:20
insufficient 53:14
insurance 55:24
  84:11 88:15,18
  88:20
insurer 87:9
insurers 85:24
integrity 31:20
  55:15
intellectual 27:9
intend 22:3 38:7
intended 6:11
  43:16 44:17
  56:18,20
intending 9:11
intent 51:15 53:8
intentional 27:8
  30:1
intentionally 17:14
  53:7
interest 12:16
  18:14
interested 98:14
interim 92:3
intermediary
  56:10,12,14,17
  56:18 57:1 88:13
  89:5,7
international 44:20
interpretation
  43:17 72:14 73:1
interpreted 40:6
interrupt 69:16,17
interrupted 78:23
interstate 36:9
introduction 36:8
  36:9
intrude 45:20
invariably 76:2
investigation 86:14
  86:18
invitation 8:15 9:2
  9:3 13:3 14:3
invited 11:10
involved 19:15
  59:19 76:6,7
  87:24 94:14
involves 79:12
ironic 67:14
isnt 21:16 56:8
  86:9,24 89:7
issue 5:21 9:1 10:4
  13:16 22:6,13,14
  23:18 40:8,18
  42:13,15,23 43:1
  43:6,19 45:21
  46:7 47:20,24
  48:11 50:6 69:7
  73:6,7 79:4,16
  88:12 93:8,12,13

94:4,9
issued 46:7,8,11
issues 5:20 12:12
  16:11 19:20 28:4
  40:11 47:1 91:4
  91:5
itll 78:8
ive 6:7 16:4 17:17
  17:24 18:1 29:21
  32:6 74:17 76:4
  85:20 90:24
  96:10

___ J ___

j 2:3
jessee 14:19
john 1:12 6:15
  14:19
jr 2:11 7:1
judge 3:2 10:3,5,7
  10:10,12 11:9,14
  11:17 14:14 16:4
  18:2,3,7 24:10,11
  25:15 31:13
  46:11
judgment 5:17
  16:19 22:10 28:8
  28:14,18 29:18
  29:24 37:10 38:9
  90:5
june 12:21
jurisdiction 11:18
  12:7,13 22:18
  24:8 26:4 28:1
jurisdictions 89:10
jury 12:10 15:23
justly 33:6

___ K ___

kalinoski 4:14
keep 5:10 15:20
  47:1
keeps 46:17
kiernan 2:10
kind 10:13 16:10
  20:20 32:10
  51:19 62:4 70:16
kindly 75:15
kinds 54:10
knew 48:4 54:6,8
  90:18,19
knitting 20:5
know 5:2 6:7 9:13
  9:13 16:6 18:21
  20:21 21:16
  22:21 23:24 28:7
  32:3 33:9 37:22
  38:6,15,19 48:19
  51:22 54:2,12
  55:18 58:18 59:5
  60:13 76:9,12,20
  76:24 77:10 80:9
  80:23 81:15 83:6
  85:5,6 89:20,23
  95:22
knowing 7:7

knowingly 53:7
knowledge 19:11
  48:3 54:5 58:15
  58:22
knowledgeable
  58:5,6,8
known 90:15
knows 53:5 80:8

___ L ___

lab 50:15
labs 83:13,14
lack 38:6 87:10,10
language 34:17
  45:3 54:23 92:20
  93:14,17 94:6
large 12:1 98:5
lastly 72:2 90:7
late 60:24 83:4
law 14:12 18:14
  19:13 23:24 24:7
  29:14 30:11,17
  30:19 35:5,13,16
  35:20 41:9,14,16
  42:4,9,17 43:8,9
  43:22 44:15
  46:15,15,15
  51:16 66:16,18
  69:3 71:14,17
  72:19 73:10 84:4
  88:13,15 89:3
  92:18 93:5 94:20
  95:6
laws 35:1 40:2,7,11
  41:20,24 42:1
  61:12 63:18
  92:12,12
lawsuits 50:23
  52:14
lawyer 17:14
lawyers 18:9 21:17
  32:1,4 76:1
layers 67:23
lead 91:22
leave 91:13
leaves 28:7
leclair 2:5
led 53:10
leewood 46:1,5
left 55:2
legal 49:24
legislature 40:1
  43:16 45:23 51:5
  51:11,17 63:23
  72:17
legitimacy 26:11
lengthy 47:9 78:3
letter 68:15 97:1
level 63:9 66:19
  68:4
liability 45:9
licensing 69:6,11
lie 88:16,17,17,20
  88:21
lies 51:9
likelihood 12:24

26:2
likewise 44:22
  45:10 77:23
limited 45:3 72:16
lines 76:2
listed 3:4 11:12,13
  29:5
listen 5:10
literally 88:24
literature 55:17
  65:13
litigants 18:5,5
litigation 9:19 18:8
  22:23,24 23:10
little 19:24 20:11
  32:2,3 39:19
lives 16:15
lobby 55:19
local 19:8 60:20
  82:20 85:22,22
locally 25:15
locate 89:13
location 33:19 34:2
  69:5,10
locke 2:2 5:8
long 14:1 39:24
  48:23 69:10
  70:10 77:16
  88:24 89:1
longer 22:18 59:1,8
look 26:8 54:20
  57:24 80:7 85:12
  93:20,22
looked 25:20
loss 44:13 72:23
losses 44:18 45:4
lost 19:1
lot 15:4 18:21,23
  19:2 23:11,23
  58:20 76:6 87:24
  91:18
low 12:23

M

m 1:12,12,13,17
  4:1 6:15 7:15
  78:14,15 97:15
machine 98:6
mail 32:14
making 62:3 67:5
  70:17
malfeasance 42:24
  43:11 64:13,15
malice 57:10
malpractice 28:15
man 83:19
management 1:13
  2:9 6:16 11:18
  33:1 47:5 49:18
  50:5
managements
  94:18
manassas 35:8
  40:18 41:7 42:7
  66:23 67:3,12,15
  67:16 68:24 69:7

93:24
mandate 39:13
mandatory 16:1
manufacture 66:8
march 11:24 60:24
markedly 30:4
marquee 69:12
massachusetts 8:18
  8:20,22 10:8,11
  10:12
massive 88:23
material 33:5 53:7
  56:16
mathias 81:19
mathis 1:12 2:8 4:7
  6:15 12:8 32:24
  54:16 55:12 81:8
matter 5:11 27:15
  27:19 36:19,20
  37:8 39:19 97:12
matters 4:21 8:17
  32:13 73:18
mattresses 90:22
mcfarlane 4:13
md 6:15,15
mean 31:8 37:15
  40:6 46:10 58:14
  74:1
meaning 35:10
  67:1 72:6
means 9:4 66:24,24
  66:24 87:18
  89:16 90:14 98:8
meant 10:10 15:10
  72:7 74:1 88:19
  95:13
medical 15:4 56:2
  64:10,19 65:2,6
  80:20 81:7,8
medication 55:16
  55:24 87:15
medications 87:12
  87:12
medicinal 36:3
  68:16 71:23
  92:23
medicine 36:1
  68:11,12,13,19
  71:21 92:21
medicines 55:23
medrol 55:13
members 15:11
  19:1 72:24
meningitis 33:23
  53:24 58:1
mention 38:16
mentioned 10:3
  60:8 79:5
mercifully 60:19
mere 36:14 40:15
  41:4,10 42:4
merely 35:15 40:13
met 36:7
methylprednisol...
  33:24 48:6
michael 2:7

mind 11:5 63:15
  70:22
minute 15:20 38:13
  96:14,14
misbrand 42:18
misbranded 36:11
  66:10
misbranding 43:2
miscoded 86:23
mislead 53:8
misrepresent 42:18
misrepresentation
  42:15 53:9 55:8
misrepresented
  64:9 88:4
misrepresenting
  34:15
misstatement
  56:16
mistake 27:8 42:22
mistaken 27:6
mistakenly 24:15
misunderstood
  37:4
misuse 17:15
modified 17:11
moment 87:8
momentarily 96:24
monday 15:18
  20:15
money 87:2
month 96:5
months 32:13
  76:13,14
moore 2:2
moot 22:17
morning 7:13,15
  19:1 70:7
morphed 61:7
motion 5:16 8:24
  10:2,24 11:1,24
  17:24 18:7 21:5
  21:11 28:7,18
  90:4,5 92:9 93:9
motions 16:19
  22:10 37:10
  38:13
motivation 19:16
motive 88:11
motor 94:2,4,7
mount 98:17
move 15:24 20:12
  62:9,20
moved 8:19 22:20
  58:9
moving 16:14
  70:20 79:23
muddy 27:12
multidistrict 9:19
  22:22,24 23:10
multiple 38:1 61:7
murder 18:24
mutandis 38:11
mutatis 38:11
mutilated 71:24

N

n 1:1,19 3:7 98:4
  98:19
name 5:11 60:12
named 5:9 8:21
names 6:9
nancy 2:6 6:14
narrowly 93:21
nation 11:11,20
national 85:22
nature 18:16 44:24
necc 8:19,21 22:23
  23:1,3,11 34:1
  48:7 54:7,9,9
  58:3 81:10 97:2
necessarily 56:8
necessary 18:18
  19:6 33:14 56:8
  75:23 83:16
need 5:18 15:24
  20:18,20 21:11
  23:24 24:18 25:8
  25:23 27:13,21
  31:15 41:20 69:6
  86:17 90:13,14
  91:7,13 92:2
  93:21
needed 18:10 70:11
needle 80:5,6,9
needless 49:23
needlessly 27:12
  78:4
needs 22:6 26:19
neglect 49:23
negligence 33:12
  34:4 46:24 47:11
  49:17,21 52:4
  57:10,17,20
  79:23 80:2
negligent 47:6
neither 13:14
nerves 19:23
network 87:17
never 12:8 42:17
  43:14 48:4 54:6
  54:8 80:5
new 8:16 9:16,23
  11:5 14:4 73:24
  94:13
newfangled 89:8
nicely 24:21
night 7:11
nominal 79:18 97:2
nondebtor 11:12
nondebtors 11:4,4
  11:6 12:7
nonformulary
  87:15
nonpreferred
  87:13
nonspecific 53:13
normally 91:21
north 77:11
notary 98:4,20,22
note 54:16,23 55:3
  55:6,22 56:6,22

noted 24:21
notes 54:18,19,20
  55:10 56:2
notice 7:12,14,15
  13:4,5,12 14:5
  15:1 21:6 38:6
  48:20 49:12,16
noticed 37:9,13
  75:1,14,14
notion 94:23
novacare 44:22
nuances 76:6
number 8:20 13:18
  18:5 23:19 32:1
  39:3 47:1 98:22
numerous 48:24

O

o 1:23
oath 4:20 65:4
object 49:2,7
objection 14:9
  37:16 38:5,20
obligation 14:12
  51:5
obrien 1:13 2:8
  6:15 12:8 32:24
  33:21 54:15
  55:12 80:4 81:19
observation 24:3
obtain 69:11
obtuse 14:2
obviously 25:5,6
  27:23 29:18,19
occasions 38:1
occurred 11:9 56:3
  56:23 58:1
occurs 56:5,7
offence 61:1
offering 66:8
office 14:16,17,23
  50:17 96:17
offices 32:11
oftentimes 75:24
oh 56:9
okay 7:7 9:8 36:24
  37:4 60:7 71:2
  87:5 88:15,19
  89:3 96:23
old 16:12
older 73:23
omissions 47:8
omit 68:11
once 18:3 58:23
  75:20 76:18
onerous 51:1,12
  83:11
ones 11:19 81:7
  83:5
ongoing 14:10
open 50:18 83:15
operating 13:15
  54:13
operation 29:14
  30:11,17,19
opinion 29:13,17

46:17
opportunity 56:4
  56:24 75:20
opposite 73:9
option 90:4
order 4:5 10:4
  25:16,17 27:17
  30:18,24 31:14
  39:7 53:5 56:15
  57:12 69:6 74:18
  74:19,19 77:7
  96:5,11,16
ordered 50:22
  58:12
ordering 50:8,20
  77:5
orders 26:6 32:15
ordinarily 77:17
organized 47:2
original 63:3 67:24
orthotics 44:23
ought 26:12,14
  28:14
outcome 98:15
outofpocket 45:4
outoftown 19:8
outset 85:1,15
outside 18:6 96:17
  96:20
outstanding 24:15
overall 63:8,10
  65:17 66:15,19
  71:12
override 45:13
overrule 74:7
overruled 46:12
overturned 46:2
overturning 73:10

P

p 1:23 2:7 78:14,15
  97:15
packet 25:18,20
page 3:5 61:2
pain 1:13 2:8 6:16
  11:18 18:15 33:1
  33:21 47:5 49:18
  50:4 94:17
palpable 49:24
panel 9:19
paragraphs 81:18
parallel 24:12
parenteral 55:23
  82:17 86:5
part 9:18 14:10
  17:19 18:19
  68:10 85:13
parte 25:11
partial 5:17 22:10
  28:8,13 29:18,24
  37:10 38:8
participated 11:16
participating 59:23
  87:17
particular 4:4
  29:22 57:15

58:13 61:6 73:6
particularly 24:4
  32:9
parties 11:22 18:9
  31:2 82:4
parts 35:8
party 8:22 9:2,3
  11:5 19:7 42:18
  51:3 56:21 97:2
  98:14
passed 33:23
patient 55:1,4,5,6,7
  56:4,23 65:10
  80:13 81:2 83:24
  88:6,8
patients 23:5 57:5
  65:3,5,13 86:2,6
  88:21,22 91:2
pattern 85:23
  88:10,23
pawning 81:10
  82:15
pay 66:13 77:16,17
  87:21
payment 63:12
  64:2 66:3,15
  68:5 71:9,15
pc 1:13 6:16
pecuniary 44:18
  45:4
peers 15:23
people 18:13 32:17
  41:17 76:2 82:16
  82:24
perception 26:9
perfected 7:14
performed 56:7
period 76:17
permissible 36:15
permission 12:19
permit 31:23 41:15
  41:17 44:17
  91:24
permitted 74:22,24
person 32:4 44:12
  56:19
personal 15:3,4
  16:11 34:19 44:3
  44:8 72:22
personally 32:18
personnel 80:21
persuade 31:15
persuasive 73:18
  95:4
pertaining 25:9
pertinent 47:15
  48:4
pfizer 50:22,22,23
  81:10 82:15,16
  84:21 86:3 88:6
  88:9
pharmaceuticals
  81:12
pharmacies 51:8
pharmacists 51:9
pharmacy 87:17

90:21
phrase 10:9 27:19
physician 55:22
  56:7 84:12 86:1
picked 55:19
picking 28:20
place 14:8 41:19,21
  51:9 98:12
placed 50:13 87:13
  96:20
places 47:15 48:4
  69:24 96:16
plaintiff 1:7,15 2:4
  40:20 41:8 42:16
  44:6 45:5,24
  46:13,14 47:4
  48:13 50:21 53:8
  53:9 54:11,14
  56:9 57:15 58:11
  67:17 85:16
  93:11 94:24 95:4
plaintiffs 5:9 9:14
  23:9 42:12,22
  46:24 50:4 52:4
  54:1,17 55:13,17
  78:19 89:8,13
played 16:16
plead 49:13 82:19
pleaded 48:14 49:9
  49:11
pleading 14:13
  30:3 49:4 62:1
  82:6 83:9 93:6
pleadings 81:23
  83:17
please 38:15,17
  60:11
pleasure 16:20
pled 33:4 53:12
  80:1 91:7,8,11
podium 59:14
point 8:10 9:11
  14:1 16:17 20:4
  38:23 40:12 62:2
  64:15 69:13
  84:24,24 85:14
  86:15
pointed 64:24
  65:11
pointing 83:7
points 12:2
portion 39:8 95:18
position 19:22 20:1
  22:15 73:9 95:6
  95:7
positions 20:1
  91:20
possibilities 27:10
possibly 15:13
pot 48:15
practice 10:14
  25:13 36:4 40:24
  40:24 48:22
  51:24 68:18
  71:24 83:4 93:1
practiced 25:12

84:18
practicing 13:22
  17:14 19:13
practitioner 24:15
  35:24 68:11,12
  71:20 92:21
practitioners 51:13
  51:20 68:9,19
  81:2
precedent 46:3
prejudice 27:4
preparation 47:18
  48:10 56:6
prepare 15:9 77:14
prepared 55:4 75:8
prescribe 36:1
  41:18 62:5 68:13
  71:21 92:22
prescribing 42:14
  61:16 62:23 63:6
prescription 35:18
  35:19 42:5 43:2
  43:20 93:4 94:19
presence 3:4 78:19
  98:7
present 24:4 30:3
  77:3 78:15
presently 69:21
preside 69:21
pretrial 7:19
pretty 41:24 88:18
previous 46:10
price 16:16
primarily 25:14
primary 55:22
  56:6 84:12 86:1
principles 73:3
prior 7:21 59:2
  67:6 73:8,10
  87:16,22
prisons 90:22
probably 10:18
  12:22 13:16
  21:18,23 31:21
  88:1
problem 20:4 22:1
  22:2 27:11 32:6
  43:4 63:7 96:7
  96:10
problems 15:4 22:3
  26:8
procedure 19:2,4
  54:15,18,19,20
  55:2,5,10,22 56:2
  56:5,5,7,22
procedures 51:7
proceed 20:17 26:1
  43:23 47:3 78:23
proceeding 10:17
  12:3
proceedings 4:2
proceeds 80:12
procured 47:21
procurement 47:18
  48:10
produced 23:3

product 36:10 51:8
  58:24
productive 25:22
products 45:9
professional 36:4
  68:9,17 71:24
  93:1
professionally
  24:21
proffered 66:12
prohibit 36:5
prohibited 66:7
  71:13,16
prohibits 36:8 68:3
promotion 92:3
promotions 92:5
proper 9:3 93:2
properly 33:4 81:3
protection 33:12
  34:4,12,15 35:14
  35:17,22 40:5
  42:11,21 43:5,15
  43:23 44:3,9,11
  45:12,15,19
  46:18,22 61:4
  62:22 74:8 92:10
  93:15 95:11
protective 96:5,11
  96:16
prove 84:8
proves 83:8
provide 73:23 83:6
  86:2 89:1
provided 14:19,20
  47:22 55:17,18
  88:6,7
provider 28:24
  29:10,12,15 30:8
providers 28:12,19
  56:3 83:13
provides 82:7
provision 35:8
  40:22 92:20
  93:24
provisions 36:13
  36:14 92:10
prudence 49:22
  83:9
public 26:9 98:4,20
punitive 29:24
  33:13 52:11 53:3
  57:8,9,16,21
  59:10 60:22 90:7
  91:5
punitives 90:10
purchase 51:23
purchased 34:1
purchasing 48:1,6
  50:11 51:22 54:4
  54:7 81:9 90:18
  90:20
pure 85:13 94:4
purely 83:18
purpose 4:11
purposes 4:21 5:4
  17:15 27:17 36:3

65:18 68:16
  71:23 77:21
  79:15 82:13
  92:24 93:14
put 9:10 13:1 30:23
  38:24,24 48:20
  49:16 75:16
  80:23 93:8

          Q
qualified 8:5
quality 34:16 84:1
question 8:12 14:7
  21:10 71:10
  80:19 87:1 88:11
  88:14 91:9
questions 37:7 96:8
quibble 73:2
quickly 92:6
quite 47:9 67:3
  63:14 66:6 68:8
quotes 92:20

          R
r 1:1 2:11 7:1 98:1
raised 93:9
rakes 2:2
ramifications
  28:20
rank 25:2
rare 17:4,5,6
rarely 70:13,14
rate 90:20
reached 6:8
read 5:3 49:16 60:6
  60:8 95:13
reading 45:2,11
ready 5:1 95:23,24
real 16:15 22:1,1
  72:3 93:12
reality 69:20
realize 18:20 77:23
really 7:19 10:10
  16:9 20:10 23:23
  27:19 61:14 71:1
  73:18 91:18
realty 25:23
reason 30:12 57:23
  59:17 73:22,24
reasonable 33:5
  76:17
reasoned 95:9
reasons 25:14
  46:19 52:2 57:2
recall 13:17 29:21
recalls 50:23
recap 71:2
receipt 48:10 66:11
receive 15:15 39:17
  83:1
received 13:11
  38:1 47:21 60:23
  61:1 64:18 84:14
  84:15,20 85:3,6
  85:10,18

receiving 64:17
  65:14
recess 78:3,10,12
  78:14,18 97:13
recklessness 57:10
recognized 56:14
recollection 13:19
  13:20,23
reconvene 74:13
record 4:24 7:8,21
  7:21 14:9 27:3
  31:20
records 56:23
  64:10,19 65:2,7
recovery 44:17
  79:8
reduced 98:6
refer 33:1 61:4
  95:2
reference 10:22
  46:14 47:7
referenced 18:14
referred 68:24
referring 63:8
regard 52:11 55:8
  57:7,21 92:6
regardless 62:24
  63:4 74:5
registration 98:22
regrettable 18:18
regulated 35:15
  67:9 69:14
regulating 40:13
  66:24 67:19 68:7
  71:19
regulation 35:11
  41:4,11 42:4
  68:23
regulations 35:1
  36:14 40:3,15
  42:1,1 63:18
  81:1 92:12
rejected 89:13
related 94:12
relating 47:17
relative 25:3 98:13
reliance 56:8 57:4
relied 53:9 55:7
  57:5
rely 55:5 56:4,19
  56:24 89:2
remand 22:20
  26:21,22,22
remanded 27:23
  27:24
remarkably 21:20
remedial 44:24
  72:5
remember 10:18
remind 14:11
reminded 18:8
  25:18
removal 7:12,15
  8:9,11 13:4,5,17
  14:6 21:6 22:12
  22:14,17 25:9

28:2 36:19
remove 8:13 9:4
removed 7:16 9:18
  22:16 27:6,15
  28:5 75:7
repeated 63:21
repeatedly 64:8
replead 91:7,13
reply 92:8 93:2,10
reporter 3:7 4:20
  5:14
reporters 1:23
represent 5:1
representation
  53:6
representing 5:8
republic 17:10
request 14:21
  25:10 28:9 30:21
  39:14 43:24
  46:20 52:2 70:3
  74:6 95:14
requests 29:4,7
  31:3
require 50:17
  87:15
required 57:9
requirements 16:1
  69:11
requires 13:17
  84:3
reschedule 14:21
rescheduled 14:17
resolution 16:15
respected 85:22
respectfully 43:24
  46:19 52:2 74:6
  95:8,14
respecting 49:24
respond 8:5 19:18
  22:9 23:15 74:22
  74:24 75:4,20
  77:24 91:24
responded 13:3
  29:7
responds 76:12
response 11:21
  42:12 45:24
  48:13 58:4 60:24
  93:11
responses 19:19
  20:14 39:9
responsibility
  48:17 51:9
responsible 48:9
  48:11 50:11
  82:14
rest 23:18 74:17
  78:7 79:17,21
restated 85:5
restatement 89:9
restrict 69:17,18
result 28:12 44:13
resulted 94:11
resumed 78:15
retreat 49:1

retrieve 59:13
review 26:8 39:11
  87:11
reviewed 86:6
revisit 76:5
revisits 73:7
reynolds 2:6 6:13
  6:14,14,19,21
  7:22 8:1,3,4
  13:14 14:18
  15:18 16:22 17:1
  19:17 20:7,10
  21:1,4,9 25:7
  26:18,24 32:20
  32:21,23 33:11
  34:8 39:6 52:7
  52:10,18,21 53:2
  74:19 77:5,22
  78:20 85:5 89:11
  91:19 96:13 97:7
  97:8
richard 6:3
right 4:4 5:18,23
  6:3,10,13 7:3,17
  10:12,21 12:16
  13:10 21:17
  23:17 25:24
  30:23 32:22
  37:19 39:21
  41:15,17 48:19
  48:19 49:13
  59:22 60:2,7,9,10
  61:5 62:19 63:15
  74:9,12 75:10,13
  77:22 78:18
  86:20 89:19
  91:16,16,17
  95:17 97:11
rightly 44:16
rights 32:17 50:1
  57:11,13 91:3
ripe 95:23
roanoke 1:2,24 2:2
  2:6 3:3,3 9:17
  11:19 12:10,10
  15:22 33:19 34:2
  41:19,22 47:19
  48:5,17 54:6
  69:21,22,22
  94:16
robert 1:12 6:15
rocky 98:16
role 16:10
room 80:4 85:11
rule 39:4 45:14
  62:7 72:9 77:6
ruled 36:18 53:16
  77:4
rules 10:13,15
  13:21 18:13,13
  21:20 26:23
  47:14 48:21
ruling 9:1 18:11
  45:21 46:11
  76:23 95:24 96:1
run 41:20

running 41:24 69:3
rush 70:21
ryan 2:5

S

sacrifice 15:3
sacrificing 15:10
safety 49:23
sale 35:18 61:10,14
  66:8,9 92:17
salem 16:12 69:22
sanction 15:13
  40:8 42:6 49:4
sanctioned 35:11
  35:12,20 40:7
  42:9,19 43:21
  92:18 93:5
sanctioning 40:13
  41:4 68:7
sanctions 17:17,20
  17:20 18:7 19:7
  21:15 42:4
saying 30:8 43:1
  61:14 62:6 63:6
  63:9,23 67:7
  80:3 82:22 83:20
  85:7 91:12
saylor 10:6,7
says 28:4 41:9
  46:14 50:21
  54:14 65:6,9,12
  65:19 69:13 71:9
  71:19 73:8 81:1
  81:24 83:3 84:8
  87:10
scale 88:23
scant 50:2
scenario 80:15
  81:6,6
schedule 11:22
  76:4 78:5
scheduled 20:16
schedules 76:1
  78:4
scheme 14:10
  15:19 25:3 45:16
  45:18 69:7
school 16:12
scott 2:3 5:7
scrutiny 65:8
sealed 50:18
second 34:18 39:23
  44:2 46:23 61:1
  68:1 85:17,17
  89:9
secondarily 12:6
secondly 56:15
seconds 94:7
section 34:22,23
  35:4,23 49:9,11
  51:10 61:17 66:4
  68:2
sections 36:5 95:12
see 25:8,15 30:4,11
  33:14 63:20
seeing 27:4

seek 15:13 44:7
seeking 29:13
  45:14 60:21
seeks 11:1
seen 8:10 25:8,21
  25:21 80:5
seizures 60:19
selection 47:18
  48:10
self 17:22
sell 41:12,17,22
  69:13
selling 41:23 42:13
  43:3 62:3,4
send 32:14 76:10
sending 55:21 56:1
  56:6
sends 76:11
sense 20:20 24:2
  26:10 45:12
sensitive 32:8
sent 60:24 76:13
  96:12,13
sentence 63:21
  65:19
separate 93:18
separately 9:15
september 33:19
  59:2
series 60:18
serious 41:24
seriously 17:16
service 83:6
services 51:2
set 5:16 11:21 14:4
  17:9 22:6 27:10
  36:20 47:10,15
  48:21 49:15,20
  54:11 62:12
  65:16,21 76:8
  92:15 98:16
sets 82:10
setting 45:17
sexton 2:3 5:5,7,7
  5:14,22 6:1,3,6
  6:10 7:23,24 9:8
  9:9 10:6,12,21
  13:11,14,23 15:9
  20:12 25:8 26:18
  26:24 28:13,17
  28:23 31:1,5,10
  31:13,17 32:9
  36:16,24 37:4,13
  37:16 38:4,10,20
  39:1,18 59:19
  60:6,9 78:6,7
  96:3,4,13,23
sextons 19:21 28:7
shared 5:20
sharon 1:4
shaw 2:11 6:24 7:1
  7:1,4,11 13:3,6,7
  13:9 14:5 17:1
  19:17 20:9 21:6
  22:8,9,14 25:17
  25:24 27:6,7

28:4 29:2,3,11
  30:6,16,21 36:19
  59:22 60:1 74:12
  74:13,22,24 75:7
  75:10,13,19 77:4
  77:9,13,20 78:16
  78:20 95:20
shaws 14:16,23
  15:16 28:10
shes 81:24 82:2
shifted 92:7
shooting 80:14
short 49:19
shorthand 98:6
shots 37:24
shoulder 33:21
shouldnt 20:23
  49:5
show 78:18
shows 42:7
shreds 90:21
side 18:16,17 70:10
sides 85:14
silence 14:22
similarly 36:7
simple 25:23 31:17
  69:20 87:2
simplify 32:13
simply 46:5 47:7
  59:11 81:16
  85:15,16 90:3,16
  95:2
single 15:16 86:21
sir 6:1,19,22 8:1
  13:7,9 21:1
  32:21 52:18
sit 16:23 19:17
sits 10:19,23
sitting 3:3 9:20
  10:16 12:18
  16:12 77:15 80:5
  80:9 85:10
situation 16:9
  86:22
situations 81:16
slapped 67:12
slight 50:2
slowly 95:11
smartphone 85:12
smith 4:7,17
solely 11:4,6
solution 80:11
somebody 13:24
  17:7 58:17 76:11
  76:11
somewhat 13:15
  67:14
soon 85:15
sorry 6:5 10:9
  36:16 47:22
  59:16 74:13,23
  75:2 77:2 91:19
  96:15
sort 32:11 80:10
  89:4
sorts 84:3

sought 10:2 12:20
  44:9
space 83:23
span 81:18
specific 33:15
  53:20
specifically 5:2
  21:13 61:22 66:1
  66:17 67:16
specified 50:5
  98:12
speculation 85:13
spine 33:21
split 34:5,6 44:15
  46:6,9,16 95:8
spoke 55:12
sponte 17:24
sprawling 90:21
squared 97:3
stable 55:2
stage 19:6 25:19
  74:16 84:13
stance 92:7
stances 85:24
stand 22:14 78:10
  97:12
standard 33:3
  49:19,21 50:12
  51:21 81:11
standards 40:22
standpoint 26:9
stands 78:12
stare 73:2,14
start 5:5 24:3 32:2
  32:3 76:2 94:13
started 41:22
state 7:9 8:16,21
  10:14 11:3 12:3
  12:24 16:3 17:19
  24:5,18,20 25:4
  28:1 43:8,9 47:7
  57:24 61:12
  64:17,18 81:18
  84:2 93:2
stated 8:14 45:7
  51:5 53:13 57:16
  61:8,9,21 62:21
  69:1 74:2
statement 87:9
  89:2
states 34:23 35:2
  35:24 40:1,4
  44:11,23 49:21
  63:15,19 64:13
  64:19 66:6 68:8
  92:13
stating 33:3
statute 28:12 34:18
  35:11 41:21
  44:24 45:13
  63:22 64:24 65:6
  65:9,12,23 67:21
  68:6,8 69:14
  71:18,19 72:5
  73:2 79:6,8
statutes 18:14 25:6

79:19 93:18
statutory 69:7
72:14
step 64:12,14
sterility 81:11 84:1
steroid 33:20,24
47:20,23 50:6
54:8 58:3,6,20
steroids 23:4 55:15
59:7
stick 19:5 20:4 49:8
49:8
stiles 3:7 77:14
98:4,19
stipulate 38:12
stop 21:2 58:5 74:9
stopping 21:12
straw 83:18
stricken 71:5
strictly 68:2 71:13
71:15 72:7
stridently 14:8
strike 29:24 62:9
62:20 63:1 90:4
striking 29:23
strokes 60:18
stuff 56:3 83:5
sua 17:24
subject 28:24 30:9
50:22,23
submission 62:7
submissions 39:12
submit 31:13,18
39:15 76:20 89:4
90:2 91:1 95:19
95:21
submitted 76:19
95:8
subordinates 81:3
subsequent 33:22
substance 19:19
20:8
substances 36:2
68:14 92:23
substandard 86:2
subverts 45:22
succeed 56:15
suffers 44:13
suffice 33:18
sufficient 91:9
sufficiently 33:16
48:14
suggest 19:12
suggested 95:21
suggesting 27:7
suggestion 17:13
suits 76:17
sullivan 2:3 5:8 6:6
6:7,11 59:13,16
59:18,21 60:11
60:12,15 62:8,15
62:18,20 70:19
70:22 71:1 73:13
73:16,20 78:1,6,8
78:22,24 86:10
86:16,19 87:4,6

89:17,21 90:11
91:1,10,15 97:9
97:10
summary 5:17
16:19 22:10 28:8
28:13,18 29:18
29:24 37:10 38:8
39:23 90:5
supervised 80:24
81:4
supervising 80:16
supplied 34:1
support 46:9 84:4
92:16
supposed 6:18
supreme 17:21
35:7 40:5,14,17
49:20 53:16
93:23
sure 34:7 37:17
38:18 50:24
59:15 75:22
77:10 84:5 86:16
88:18 94:5
surprising 31:2
surprisingly 11:14
surrounded 90:21
sustain 46:20 52:3
85:16 95:15
sustained 45:5
53:17 91:14
swallow 72:9
sweeping 85:23
switched 91:20
sword 67:15
sworn 3:8
syringe 80:7,11
syringes 80:19
system 17:9,15
18:19 19:3,4
26:12 50:9
systems 24:13

T

t 98:1,1
table 80:5
tactic 9:6
tag 16:16
tainted 58:2,7,17
take 12:19 17:16
19:24 20:18
23:20,22 25:10
27:3 32:13 39:24
48:24 64:14
66:19 70:3 95:1
96:11
taken 27:18 78:14
82:12 98:11
takes 32:19
talk 81:13
talked 31:24
talking 21:13,15
76:15
target 56:18
task 50:16
taxpayers 26:11

tell 9:11 15:2 21:16
24:17 56:18
80:10 86:18
telling 65:13 84:20
97:1
ten 16:19 76:14
86:19
tendrils 95:11
tense 54:24
term 72:15
terms 25:3 28:2
48:18
test 83:14,15
tested 17:11 50:5
testing 83:14
teva 55:23 82:16
86:4
thank 6:12 8:8 29:3
31:10,13 34:10
39:18,22 52:4,6
59:11,12 60:15
73:21 75:21
77:20 78:9,11,22
78:24 91:3 92:2
95:16 97:11
thankfully 15:6
thats 5:15 6:3 9:21
13:2 14:1 16:9
16:17 20:4,22
21:15 27:11,18
28:17 36:17 39:1
39:20 42:3,7,24
43:11 44:19 46:3
51:4 56:20 58:8
58:16,17,23
59:17 61:5 65:14
66:18 67:2,3
68:20,23 70:24
72:5,11 73:1,10
73:11 75:2 77:3
79:7,9,10 81:5,16
82:5 86:5,15,22
88:19 89:15
90:16,19 91:2,12
91:16 94:8
theory 89:5
therapeutic 36:3
68:16 92:24
thereof 66:13
theres 12:13,23
14:2 15:4 18:21
18:23 19:2,4
20:10,22 22:5
27:20,24 30:12
37:14 44:15
46:15,15 52:24
56:9 57:4,20,22
68:2 71:16 80:4
80:8 82:9,9 91:7
96:4
theyll 47:2
theyre 5:1,22 12:10
26:19 28:11,23
29:17 30:7,19
36:23 43:1 45:10
45:14 50:10,20

50:24 61:14 63:8
63:9,12 65:14,17
66:16,21 69:15
71:6,7,11,11
73:13 80:22 95:5
95:6
theyve 12:8 21:21
66:20 67:21 68:6
72:24 85:3 96:19
thing 7:4 15:11
20:11 22:23
32:11 51:18
56:10 72:4 79:2
79:17 82:18
90:12 96:4
things 16:24 19:23
20:2 23:23 24:9
24:10 25:3 50:18
65:1 72:2 77:3
77:10 89:20
think 5:5,13 6:18
7:23 11:24 12:23
13:24 14:2 16:7
20:21 21:20
23:24 26:7,16,20
27:12 28:3 29:16
29:17,21 30:14
31:1 32:2 33:16
39:4,18 64:15
74:16 75:24
91:16 93:8,12
97:3
thinks 12:16
third 56:21 68:2
thought 24:16
36:18,21 38:23
60:3 75:5,17
96:21
three 37:24 60:21
71:11
threw 48:15
throw 15:20
tight 19:23,24 20:3
time 18:21 19:12
19:15 21:22
22:19 23:20,22
25:12 28:4 33:17
38:21 54:10
69:18,19 70:4,6,7
70:7,10,11,15,16
72:19 74:10
76:10,17 90:6
93:7 96:10 98:12
timeline 85:18
timely 16:2,5 29:8
39:16 62:13
times 41:19,22
47:15 48:3 61:7
tobacco 36:10
today 5:16 9:11
15:1 16:7 22:17
27:3,20 38:22
60:15,20 67:14
69:1 71:4 75:1,6
75:8,14 85:5
91:23 95:19 96:3

96:22 97:12
todays 4:21 32:10
39:16
told 11:22 12:20
14:15 18:20
21:17 55:13 88:5
88:5
tolerated 55:1
torts 45:8 89:9
tour 50:19
track 65:5
tradition 17:18
traditionally 11:3
tragedy 94:11
trained 81:3
transaction 34:24
42:13,14,23 43:1
43:6,12,19 63:9
63:10,12,17,24
64:3,6,7,21,23
65:18,20 66:15
66:19 67:8 71:7
71:8,10,12 72:9
72:10,11 92:11
93:13,17,20 94:4
94:8,11,18
transactional 68:3
transactions 64:16
transcribed 98:7
transcript 39:8
74:19 75:20 77:5
95:18 98:9
transcripts 77:7,7
transferring 10:4
transitions 70:18
travel 77:1
treat 65:3,5
treatment 34:16
47:6 65:5,7
trebach 2:10
trebue 18:2,7
trial 15:23 16:6,8
24:5,6,12,18,20
31:7 76:3,16
trick 85:24
trickle 37:14
tried 5:10 12:4
triggered 58:15
troubling 15:11
true 66:18 79:7
81:16 82:3,12
90:16 98:9
trump 79:6 95:1
trumps 45:15
trustee 8:15,19
10:1,24 11:13
14:4
truth 33:4
try 11:6 14:17 47:1
47:2
trying 14:20 20:12
27:8 31:16 66:17
70:21
turn 22:8 34:3
38:13 49:6
turned 45:8

turns 38:16
tuscarora 53:18
tweaked 17:11
twice 65:19
two 8:12 24:12
26:4 32:13 34:11
45:22 61:2 69:23
71:1,2,6 72:2
94:6
type 15:14 68:23
90:2
types 55:14
typically 75:23
76:8 96:15

U

unavailable 44:10
understand 13:13
16:18 17:2 20:3
21:10 23:7 28:9
28:22 29:12 31:4
33:8,9 44:5
77:13 89:20
understandably
75:13
understanding 8:9
38:8
understood 7:18
37:17
undertaken 36:15
unfair 31:5
uniformly 86:12,23
unintentionally
75:24
unique 38:16
united 35:2 40:3
63:19 92:13
unlicensed 19:9
unsupervised
80:21,22
upheld 18:1
urges 28:13
use 21:21 26:11
30:9 59:17 65:6
67:15 68:9
usually 17:19 34:5
34:6
utter 49:22

V

v 1:1 35:8 40:19
44:20,22 46:1,5
53:18,18 93:24
va 1:24 35:9 40:19
44:20 53:19
vac 81:1
vague 53:14
valid 8:12 57:20
various 61:11
vepa 34:14,20,22
34:23 35:5 40:10
40:16 41:1,3,14
45:2,8 61:5 64:6
64:22 70:23 72:5
72:16,18 79:2,6,9
94:22,23 95:1

vehicle 41:16 49:6
79:8 94:2,4,7
vehicles 69:10
versus 4:7,8,9,10
4:12,13,14,15,16
4:17 5:11 6:4
viable 47:10
vial 80:7
vials 50:18 83:15
vicariously 48:11
view 18:8
viewpoint 96:3
violate 64:22
violated 40:21
violating 41:13
80:24
violation 17:23
34:13 40:23
44:13 49:24
virginia 1:23 2:2,6
3:3,3 7:13 9:5
11:19 12:18 13:1
13:8 17:14 24:6
26:21 34:11,14
35:4,7,13,14,16
35:17,20,21 36:5
36:13 40:4,5,7,12
40:14,17 42:4,9
42:10,17,19,21
43:15,21,22 44:3
44:9,11,15,16
45:11,15,19 46:6
46:16,17,21 49:4
49:20 51:5,10,17
53:16 56:13 61:4
61:17,20 62:22
63:22 66:1,4,16
66:18 67:4 68:10
69:3 71:14 72:17
72:20 74:8 81:1
88:13,15 89:3,6
89:11,12 92:9,13
92:14,18 93:5,15
93:22 94:20 95:5
95:10,13 98:2,5
98:17
virginias 35:23
40:21 45:13,15
vital 80:20
voluntarily 12:15
vpca 35:6 64:4
92:19
vs 1:8,11

W

wait 96:14,14
waiting 85:10,11
waive 31:23
walking 85:8
walks 80:4
want 15:12 19:18
20:4,5 21:4 23:2
23:2,8,10,21,22
27:17 31:9,16
32:15,16 37:1,18
39:5,7,24 50:2

59:15 62:12
63:23,24 64:1,2
70:5,8,16 75:19
76:7,12,19 77:18
77:18 78:4,7
89:19 90:12
91:18,24 93:15
94:5 95:23
wanted 18:10
20:11 37:17 75:3
89:17 95:21
wanting 17:12
wanton 30:1
wants 12:20 16:13
33:16 77:15
washington 2:10
wasnt 7:18,19 37:7
51:14 67:24
96:20
waste 38:21
wasting 28:4
water 27:13
wave 9:15
way 25:22 26:10,17
28:1 31:6 32:16
41:9,10,13 50:5
50:24 72:15 73:5
89:23 91:23
ways 20:2 23:20
wed 38:24 75:17
wednesday 61:1
week 11:8 14:17
15:5 21:7
went 15:17 33:18
western 7:12 9:5
12:18 13:6 14:6
26:21
weve 7:7 15:5
20:13,14,15 26:3
29:14 30:17
66:22 83:7 86:6
86:19 88:6,7
90:17 91:10,23
95:8,9
whatnot 76:1 77:2
whats 86:13
whereof 98:16
whitlow 5:11 6:3
willfulness 30:1
willing 38:12
wingate 1:4,5 4:12
7:5 9:14 33:18
36:19,20 37:8,9
37:13,20,21 38:7
47:23 60:17
63:11 64:7 65:24
66:2,5 71:8
72:23 75:15
81:14,24 82:18
83:9,12,18,20
84:10,19 85:6
87:7,20 89:1
wingates 23:5 74:3
81:23 94:12
wires 19:24
wish 39:12,15

77:23
withdraw 10:22
withheld 88:3
witness 98:7,16
witnesses 28:20
wondering 76:22
76:22 96:7
wont 70:14 76:20
92:2
word 40:6 63:20
words 35:3,12
51:14 62:3 63:21
68:19 72:9
work 56:12 70:8
76:18 87:24
worked 24:23
workload 76:1
works 45:21
world 32:10 77:3
worried 25:1
worry 95:10
wouldnt 17:8 91:13
writing 65:2 93:7
written 30:11
39:11,14
wrong 13:24 22:5
24:23 25:24 43:6
43:18 55:24
66:21 71:6
wrongdoing 43:7
wrongful 34:19
43:13 44:4,8
45:13,16 79:6,7
79:14,19 95:1
wrote 97:3

X

x 68:21 71:20

Y

yank 12:24
yeah 25:24 26:3
32:16 33:8 38:6
75:3 77:10 90:24
year 16:7,12
years 13:21 16:13
21:18,21 67:6
73:6 88:24
youll 13:16 76:21
79:12 94:6
youre 6:20 15:3
21:22 29:9 31:9
41:13 52:20 62:6
62:16 64:17 77:2
83:5 85:7
youve 30:18 32:20
65:10 73:20
86:13,14,18 90:9
90:9 91:7,20

Z

Z

0

00 1:17
0054 5:24
01273 61:21

06 78:14

1

1 17:22
10 1:17 4:1 7:15
73:6 97:15
101 72:14
11 9:24 11:13 13:21
21:18 60:6
1199 34:22 63:6
11th 31:6
12 60:18 78:14
12628 1:23
13 5:23 32:3
13400 92:14
13408 35:23 61:17
68:9
13410 51:10
13457 66:4
14 16:12 32:4
149 44:21
14th 98:17
15 11:11
16 11:23
18 61:1 81:1
19 11:24
1930s 74:1
1937 72:20
1977 72:18
199 63:10,14 64:23
65:8,18 66:21
71:9 72:7
1996 44:21

2

2 3:5 33:11 51:10
20 61:1
2007 67:5
2010 83:4
2012 33:20 58:2
59:3
2013 1:17 3:4 98:17
2014 98:21
21581 40:22
218 53:18
24027 1:24
266666 98:22
271 17:22
274 35:9 40:19

3

3 66:10 70:3 74:14
78:9,15
30 13:19,23 70:3
74:14 78:9 86:6
31 98:21
3408 71:19
35 4:1
3805017 1:24

4

4 33:12 47:4 97:15
40 44:20
415 62:7
45 78:15
46 40:22

5

5 1:17 33:13
54 35:23 51:10
61:17 66:4 68:9
92:14
540 1:24
59 34:22 63:6
5th 3:4

6

6 33:19
60 76:13
600 58:11,13 59:6

7

7

8

8 61:21
801 17:22
82 35:9 40:19
849 53:19
852029 81:1

9

9 7:15