# Exhibit 14

V I R G I N I A:

IN THE CIRCUIT COURT FOR THE CITY OF ROANOKE

SHARON G. WINGATE, Executor of the Estate of DOUGLAS GRAY WINGATE, Deceased,

Plaintiff

-vs-

INSIGHT HEATH CORP., et al.,

Defendants

JULY 9, 2013
3:00 P.M.

HEARD BEFORE:
THE HONORABLE CHARLES N. DORSEY

CENTRAL VIRGINIA REPORTERS
PO BOX 12628
ROANOKE, VIRGINIA
(540)380-5017

APPEARANCES:

GENTRY, LOCKE, RAKES & MOORE
Roanoke, Virginia
By: BENJAMIN D. BYRD, ESQ.
J. SCOTT SEXTON, ESQ.

Counsel on behalf of the Plaintiff

BONNER KIERNAN TREBACH & CROCIATA
Washington, DC
By: CLINTON R. SHAW, JR., ESQ.
CHRISTOPHER HASSELL, ESQ.
Counsel on behalf of Insight Heath Corp.

LECLAIR RYAN
Roanoke, Virginia
By: NANCY F. REYNOLDS, ESQ.
Counsel on behalf of Dr. Mathis, Dr. O'Brien and Image Guided Pain Management

* * * * *

E X H I B I T S

| NUMBER | DESCRIPTION | PAGE |
|---|---|---|
| | (None) | |

* * * * *

The following cause came on to be heard on July 9, 2013, before the Honorable Charles N. Dorsey, Judge of the Circuit Court of the City of Roanoke, sitting at Roanoke, Virginia, when the following proceedings were had:

THE COURT: We have Wingate versus Insight, CL12254771 through 76, 13, 9 and 54, 57, and the Clerk has been kind enough to bring me a whole rack of files, which I haven't brought in here. I did bring one hoping it would be a sample of what's involved. I have the oath of the court reporter that's been entered. As to all those matters will be spread appropriately. Is the plaintiff ready?

MR. BYRD: Yes, Your Honor.

THE COURT: All right. The defendant ready?

MR. SHAW: Yes, we are, Your Honor.

THE COURT: Gentlemen, I apologize — due to some other matters going on, including the fact that we continue to be short of judges, not because of so much of the

legislature now but because of health reasons -- I have not reviewed what we are doing. So what is it we are doing?

MR. BYRD: Your Honor, we are here on two matters. Well, technically, three. One is the motion for partial summary judgment as it relates to the affability of the Medical Malpractice Act to the defendant Insight Health Care.

THE COURT: I thought that was already conceded or entered, an order on that?

MR. BYRD: There was no order entered because of the removal that took place the night before the hearing on that. The related matter to that --

THE COURT: But there was an order entered, wasn't there, Mr. Sexton, on that?

MR. SEXTON: Your Honor, what happened, as you recall --

THE COURT: I don't recall. That's why I am asking.

MR. SEXTON: Let me refresh you. The day we were last before you, there were 11 motions for summary judgment set. The

defendant removed the Wingate matter to federal court the evening before, and so when we showed up the Wingate matter was not technically before Your Honor, but the other 10 were. And on those 10 you have entered orders.

So we took a little detour in this through federal court with Judge Wilson, and now we are back here.

THE COURT: He sent them all back?

MR. SEXTON: He sent everything back, yeah. I think all 19 of ours went over there at one point, and then they came back.

THE COURT: Okay. Mr. Shaw, is this any different than the ones we have already done?

MR. SHAW: No, it's not different in any way except that it wasn't entered and hasn't been.

THE COURT: Anybody have any objection to getting that done?

MR. SHAW: We are objecting to it, because we filed a motion or opposition to this motion for partial summary judgment and

motion for leave to amend our answers.

THE COURT: I thought you had already conceded on the Record before that you are not a healthcare provider.

MR. SHAW: Well, we were talking about that, and when we said that -- we answered the request for admissions that we were not a healthcare provider, but we since in discovery have learned that we --

THE COURT: That you are.

MR. SHAW: That we are. You know, we are --

THE COURT: So you are in a sort of weird position to have one set of cases where you have been -- an order has been entered that you have been not found to be a healthcare provider, but you are going to contend in these that you are.

MR. SHAW: Yes, and we are going to ask the Court to revisit the order and allow us to vacate those orders and allow the issue to be decided as to whether or not we are a healthcare provider on the merits of that issue as opposed to --

THE COURT: Well, you can understand from my standpoint how that would really seem like we are not making any progress at all. It seems like we are going backwards if we are going to revisit everything.

MR. SHAW: I don't know that we have to revisit everything.

THE COURT: I thought you said you wanted to revisit.

MR. SHAW: See, we have been involved in discovery, so we have been moving forward. Depositions have taken place of a number of Insight witnesses. And in so doing, various witnesses have testified from Insight, radiology technologists, that they do have very specialized skills that fall within that rubric of being a healthcare provider.

When we signed onto this, Your Honor, when we got this case back in early January, the Court needs to know that we were retained by an insurance company. Insight Health Corp wasn't our longstanding client, and we have been in the -- we have been in the throws of learning about their history, getting

acquainted with them and learning about their business. And also during the course of discovery and the testimony of Doctors Mathis and O'Brien, we have learned more about the roles of the various people that work at Insight.

When we answered, Your Honor, the request for admissions, we looked to what little discovery we had. But more importantly what we had was the management services agreement, which is the contract between Insight Health Corp and IGPM, the corporate name for Doctors Mathis and O'Brien. And we --

THE COURT: Let me interrupt you for a second. That's one issue. But I understood, Mr. Byrd, there were two issues?

MR. BYRD: Right, Your Honor. It's actually three. Their motion to amend the request for admission, which a notice of hearing was filed --

THE COURT: Which is still going back to the same issue about the healthcare provider.

MR. BYRD: Correct, Your Honor. And then the other was a pretrial -- just a Rule 4:13 conference just to let you know what all had happened since the cases have come back and what all we needed to get the cases moving.

THE COURT: All right. I'm sorry, Mr. Shaw, but now let me just ask you the same thing. Are those three things, from your perspective, why we are here?

MR. SHAW: Yes.

THE COURT: Okay. Now go ahead with what you have got.

MR. SHAW: We are not asking the Court to determine today whether Insight Corp is or is not covered by the malpractice cap.

THE COURT: What are you asking?

MR. SHAW: We are just asking that this issue be dealt with at a later time. During the course of discovery, various information is going to come forward that it's either going to show that we are a healthcare provider or we are not. We contend that there is plenty of evidence now that we are a

healthcare provider under the definition as is described in the act. And that's what -- that's what my -- the pleadings are that I have submitted to the Court, but I would be happy to discuss them.

The other thing is that plaintiff's counsel in this case is changing its gears a little, too. In the course of discovery they have learned that there was a thing called a microbiology report and that some of them were missing, and that various employees of Insight, radiology techs, were looking for those reports, but in the course of getting those reports had not -- had not notified the doctors about this and they were looking for them. And now there is a -- there is sort of a negligence spin. They are putting an emphasis on this inaction by the radiology tech and not saying there was a missing report and saying that, basically, our licensed technologist made a big mistake. And under those circumstances, we would say, yeah, we need coverage under the malpractice act because they are going to be alleging

that this person didn't live up to their duties.

THE COURT: You have got all that in your motion.

MR. SHAW: Yes.

THE COURT: Okay.

MR. SHAW: And there are two motions. There is one -- there is one motion, Your Honor --

THE COURT: To amend admissions and for reconsideration of partial summary judgment.

MR. SHAW: Right, exactly.

THE COURT: Those are the two motions.

MR. SHAW: And those are for the ten cases where the summary judgment has been entered.

MR. BYRD: Well, Your Honor, I hate to interrupt, but I did not receive any notices of hearing for those ten cases.

THE COURT: Don't worry about it.

MR. BYRD: Okay.

THE COURT: We will sort all that out. I am just trying to figure out what the parameters are right now.

MR. SHAW: Your Honor, the bottom line is when we answered this the case was in a different place, and we were looking at a management services agreement --

THE COURT: It was on its way to federal court.

MR. SHAW: We were trying to get into federal court. We were trying to find a way to bring NECC, the maker of the tainted steroid, into the case. We were getting, basically, a new case every day. We have since been given -- six more cases have been filed where we have answered this particular question the other way, that we are in fact a healthcare provider, where in fact before we admitted that we were not a healthcare provider.

So now we are in a situation where there is some instances where we are and some instances where we are not. And it's very early on in the case law -- I mean, the Court has discretion, clearly. In some of the cases that we have submitted to the Court, this has been permitted, this amendment has

been permitted, within three months of trial. We are over nine months away from trial and discovery has not gone that far. We would submit that there has been no prejudice. And the burden of having to address this issue does not amount to prejudice. Inconvenience is not a prejudice, and that's taken right out of the case law that we have submitted to the Court.

THE COURT: But you don't want me to do anything today. You just want me to read it and decide it later.

MR. SHAW: That would be fine, Your Honor.

THE COURT: I'm just asking what you want.

MR. SHAW: Give us the chance to -- give us the leave to amend our answers to request for admissions so that they can be consistent with the last six that we have answered. And, you know, Your Honor, under the circumstances --

THE COURT: I have to tell you, I have never had that request made, but I like it,

and I certainly appreciate the candor and give -- and compliment the candor. When is the trial date set?

MR. SHAW: In late April of next year.

THE COURT: Okay.

MR. SHAW: And Your Honor, I'd also like to introduce you to Chris Hassell. He is the partner -- lead counsel in the case.

THE COURT: All right.

MR. SHAW: I inadvertently did not do that.

THE COURT: That's all right. I will meet him -- and I apologize -- since I met you and I knew Ms. Reynolds down there. He is in good company, so I figured he must be all right, too.

So in terms of those issues, is that all you have today?

MR. SHAW: Yes.

THE COURT: And you said that with a good deal of hesitation, so do you got something else?

MR. SHAW: Well, we were hopefully going to get -- hope to get a scheduling

order.

THE COURT: Yeah, we are going to do all that separate.

MR. SHAW: That would be great.

THE COURT: I want to get this one finished first. Then Mr. Byrd, on this -- and Mr. Sexton, you were lead counsel last time, and I am assuming by seating and by -- you don't usually give up the roster to anyone easily, and since you have been doing it, I assume this is with your blessing.

MR. SEXTON: It's out of desperation. The trial that just got canceled that you are probably aware of has had me otherwise occupied.

THE COURT: It didn't get canceled, Mr. Sexton. It just got set over.

MR. SEXTON: Can we negotiate about that? I am open to making deals at this point.

THE COURT: Mr. Byrd?

MR. BYRD: Yes, Your Honor.

THE COURT: Do you have any -- and I understand -- I don't mean to make light of

it. I am not disparaging the numbers in the notice, but, really, at this juncture if I am going to do it I am going to do it for everybody in every case, and if I am not going to do it I am not going to do it for any cases. I mean, the notice, vis-a-vis notices, seems to me doesn't really matter.

MR. BYRD: I understand, Your Honor. I just wanted to -- I only prepared for the Wingate matter, specifically.

THE COURT: The issue is the same regardless, isn't it?

MR. BYRD: They are. However, procedurally as far as when things were filed and when they were sent to Mr. Hassell is a little bit different that I hadn't looked at.

THE COURT: And that -- if that becomes necessary, then I agree with you and I will take a look at it. But, you know, it seems to me that it's -- seems to me that it's probably a larger issue than one that needs to get dealt with on a purely procedural basis. But maybe not, so --

MR. BYRD: Sure.

THE COURT: Have you stated everything that you want in terms of authority and writing that you want to say?

MR. BYRD: No, Your Honor, I have not. We didn't file a reply to their motion because it was going to be before you anyway and we would just say it all here regardless.

THE COURT: Okay.

MR. BYRD: If I may, Your Honor, I think it's important to go back through a procedural history of the case so that all of this and what's been discussed is in the proper context. So if I am longwinded, I apologize in advance.

THE COURT: You-all got it set for hearing. Ms. Butenschoen is taking it down, so it's all fine.

MR. BYRD: As you know, Your Honor, Mr. Wingate received an ESI at Insight up on Franklin Road on September 6 last year and died 12 days later. Ms. Wingate then qualified as executor of Mr. Wingate's estate and filed suit in this Court on December 27 of last year. The same day, Mr. Sexton

e-mailed the complaint in that case to Mr. Hassell.

And the reason I bring this up is because the complaint contains five counts, as well as a number of pertinent allegations regarding the provision of healthcare services that would put Insight on notice that allegations had been made, that they would be a healthcare provider, and that they would need to look into that issue more fully, especially when they respond to the complaint, which has not been done as of yet because of the pending demurrer that's before the Court.

The counts are negligence per se, violation of Virginia Consumer Protection Act, negligence gross, negligence in fraud. Then there are contained within the complaint a number of allegations, including a certification pursuant to Virginia Code Section 8.01-50.1, which Your Honor is very well familiar with.

Paragraph 15 alleges that Insight Health advertised to the public that it was a

national provider of diagnostic imaging services, which squarely would put Insight on notice that an allegation had been made pertaining to the practice of medicine.

Paragraph 22, Insight advertised to the public that it offered the highest quality of care through a network of outpatient imaging centers. Paragraph 24 mentions the provision of pain management image guided therapeutics. Paragraph 28 mentions that Doctor Mathis, one of Ms. Reynolds' clients, had allegedly been designated by Insight as a medical director. There are also allegations as to the employment relationship between Insight Health and Ms. Reynolds' clients, two of Ms. Reynolds' clients, Doctors Mathis and O'Brien.

Paragraph 45, among other things, mentions that Insight Health acted through secretaries, nurses, technicians, staff and personnel. And the technologists are the type of people that we are referring to there that were mentioned by Insight in its argument.

Now, of interest, Paragraph 54 mentions that Insight had a duty to act as reasonable and prudent healthcare providers, and it goes on from there. There is allegations about informed consent and the duty to provide reasonable care to Mr. Wingate.

Now, from that, that would begin research in looking into whether Insight Health Corp qualifies as healthcare provider, is or is not a healthcare provider.

Now, shortly after the complaint was filed and then served upon Insight Health Corp, Mr. Sexton received a phone call from counsel for Insight Health Corp in which it was stated that Insight Health Corp was not a healthcare provider and that we should make some changes to our -- Ms. Wingate should make changes to her complaint as a result of that.

The request for admissions were served the following day on February 1. And there is two that are at issue and before the Court. And they are very specific, Your Honor. The first one says -- it gave Insight

21

a choice. Insight could choose what it wanted to be. The first request for admissions says --

THE COURT: They don't have any argument about that. They said they weren't.

MR. BYRD: That's right, Your Honor.

THE COURT: They changed their mind is all.

MR. BYRD: That's what -- I will jump ahead then, Your Honor. When answering a request for admission and responding to it, an obligation is on the party to conduct reasonable inquiry. You cannot say you don't have knowledge or you are unable to admit or deny it without conducting reasonable inquiry. Based upon the information --

THE COURT: If you say you don't have knowledge, you don't have knowledge.

MR. BYRD: Right. But that's got to be based on the information known or readily attainable to you.

Now, what is at issue in Insight's motion and its reason to amend its request for admission responses is that Insight

22

learned apparently for the first time what its employees actually do on a day-to-day basis and what their role is. Now, Insight Health Corp entered into the management services agreement that was referenced by Insight on the 8th of July of 2010, well before Mr. Wingate presented to Insight, well before the complaint was filed, and well before the request for admissions were served and responded to. I believe Insight officially took over sometime around December of 2010. And at that time, as the parties have testified to during depositions, Insight trained the staff, Insight put in a new computer system. Insight knew what the employees, Sharon Boros and Karen DeLong, whose testimony is at issue as far as a reason to change or amend the request for admission responses, all of that was known to Insight at the time they responded to the request for admissions, which are at issue. So there is no new information here that would justify an amendment. None of this is new to Insight. Under agency law, the

23

knowledge of what Ms. Boros and Ms. DeLong did while working for Insight in the course and scope of their employment is imputed and attributable to Insight. None of that is new.

There are federal cases, which I am sure Your Honor is aware. The Court can look to federal cases and decide -- in interpreting the scope of Rule 4:11, because I believe it was the Shakeen case which noted a similarity to the federal rule in the federal case or instruction. When Courts have permitted amendments of --

THE COURT: It's unusual that you would go to federal cases.

MR. BYRD: In this case.

THE COURT: In any case.

MR. BYRD: That's right.

THE COURT: Okay. Go ahead.

MR. BYRD: But when courts have permitted amendments is when truly new information has been learned. I remember there was one case where it was a trademark dispute and the U.S. Trademark and Patent

24

Office had issued an opinion saying that the trademark wouldn't cause confusion, and one of the parties said, well, based upon this we would ask the Court for permission to change our response, and that was granted.

Other times where courts have permitted a change in the request for admission responses has been when upholding the request for admission responses would essentially eliminate any trial on the merits. Any defense to any of the merits of the case.

And in fact, Rule 4:11 itself states that the Court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the Court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits.

Before you get to the prejudice problem, Your Honor, before the Court could permit an amendment, there has to be a showing that somehow the trial of the merits of the case will be prejudiced as a result of

the standing request for admission responses. And that simply cannot be done in this case, Your Honor. Insight Health Corp is still free on every ground to defend all of the allegations that Ms. Wingate has made against it, and the same is true in all the other cases. Insight Health Corp can defend on liability, say it did not violate Virginia Consumer Protection Act, can say it did not commit fraud, it can defend on causation, it can defend on the amount of damages.

What Ms. Wingate is seeking relief on is procedural matters only. Namely, what sort of witnesses she can call. We are trying to eliminate things like the active clinical practice test at trial, and, Your Honor, I will represent to the Court that as a result of the request for admission responses Ms. Wingate has retained a consultant she would not have otherwise obtained but for the admissions given. And specifically, Your Honor, the statements that were made at the last hearing that we had by Insight Health Corp in which it was stated

that we are not a healthcare provider so I don't understand -- what I don't understand is why we are seeking advisory opinion from the Court when by operation of law we have already been found to be not a healthcare provider. Insight said we are saying we are not a healthcare provider. We are not subject to the cap. We can't use that as an affirmative defense or a defense to damages. It's entered by operation of law.

Now, nothing has changed at this time. There is no evidence before the Court except that Insight Health Corp is not a healthcare provider. All we are asking for is what Your Honor was going to give us at the last hearing -- was going to give us, Wingate, at the last case before the case was ultimately moved to federal court and then, of course, returned, and now we are back here.

There is no basis to permit a withdrawal or an amendment at this time, because again, Your Honor, the trial on the merits will in no way be impacted as a result of upholding the request for admissions here.

In no way will it change Insight's ability to defend the case on whatever ground or whatever theory it would so choose. Thank you, Your Honor.

THE COURT: Anything else on those issues?

MR. SHAW: Yes, Your Honor.

THE COURT: I figured.

MR. SHAW: Your Honor, we are not talking about whether we are not on notice or whether we were put on notice by the complaint. That's a smoke screen. The bottom line is that Rule 4:11(b) sets forth the standard, and the standard is simply this: A trial court may exercise its discretion to permit such withdrawal or amendment, one, when the presentation of the merits of the action will be subserved thereby. In other words, would be consistent with the true facts of the case.

THE COURT: And.

MR. SHAW: And the party who obtained the admission fails to satisfy the Court that withdrawal or amendment will prejudice him in

maintaining his action or defense on the merits. And there is no prejudice. We haven't progressed so far in this case that there is some sort of deep prejudice or any kind of prejudice that's been suffered by the plaintiff in this case, other than perhaps the inconvenience of having to deal with this issue again.

THE COURT: The prejudice isn't meant in terms of the remedy sought, though.

MR. SHAW: No. Actually, the case law, and I am hoping that the Court will read before making a decision on this --

THE COURT: I will try and do that.

MR. SHAW: Thank you, Your Honor. The case law is very clear. The amendment won't prejudice the plaintiff. Under the second prong, a party is prejudiced by amendment or withdrawal if that party is now any less able to obtain the evidence required to prove the matter which was admitted that it would have been at the time the admission was made. The case should be decided on whether we are a healthcare provider or not under the law. We

have in discovery and in looking at this case -- and not just looking at the management services agreement, which states in very bold language that we don't provide medical care services -- and perhaps that was the problem. As we were looking at it we were looking at are we doctors or not. Perhaps that was a mistake that I made, Your Honor, in looking at this. But the bottom line is, whether or not we are a healthcare provider, the case law is very broad in this area, and it's been getting broader by -- as the cases have progressed over the years since the statute and the act was entered.

Your Honor, we have technologists who have very specialized training. They have learned how to use this equipment, they have to get it -- they have to be certified by the state. Virginia has to certify them in order to use this equipment. We did not know this when we entered -- when we answered this. There is no prejudice to the plaintiff that that issue is now reopened.

We are not saying we want the Court to

flip around and say yes, you know, enter a summary judgment motion for us right now saying that we are a healthcare provider. We are asking that this remain open and be elucidated in the facts of the case as we progress along.

Now, if somewhere along the way in the course of discovery and more depositions are taken plaintiff's counsel wants to make a motion later on -- we might want to make a motion later on on the same -- to say that we are a healthcare provider. The bottom line is it's just too early. We are nine months away from trial, and we have just barely really begun discovery. At this point they were asking us to do all these things at the same time. We haven't even answered the complaint, and we are busy trying to get this thing removed to federal court, we are trying to find a way to bring in the true party in the case that caused this terrible meningitis outbreak, the maker of the steroid.

THE COURT: What's the status of that?

MR. SHAW: Excuse me?

THE COURT: What's the status of that?

MR. SHAW: It's in bankruptcy, Your Honor. Mr. Sexton knows people on the steering committee, and we are awaiting word from the MDL and the judges up there. The steering committee is working on a way to try to invite us into that.

THE COURT: Okay.

MR. SHAW: But for right now, Your Honor, we are dealing with this here and now, and we are in state court, and that's the way we are pursuing this. And, Your Honor --

THE COURT: You don't have any other choice.

MR. SHAW: Perhaps, and that's fine, because we really -- we really think this case could proceed forward on the truth. And the truth is we are a healthcare provider, and we are because we have licensed technologists and radiologists. And more over, we have physicians -- we are an independent contractor to the physicians in this practice, and that's something else that we have argued in our brief. And I would ask

that the Court take a look at it and decide on that.

THE COURT: All right.

MR. BYRD: May I, Your Honor?

THE COURT: Sure.

MR. BYRD: Regarding the argument that the responses to these were due before their answer was due, before Insight's answer was due, Insight chose not to answer the complaint. Insight could have demurred and answered, which is precisely what Ms. Reynolds' clients did. Ms. Reynolds' clients filed pleas, demurrers, and answered the complaint. So if there is prejudice to Insight as a result of a failure to answer the complaint, that prejudice is entirely of Insight's making and could not be used as an excuse, I would submit, to allow them to change the request for admission responses.

Now, there seems to have been some statement that there was some confusion about we are not doctors and look at the management services agreement and so that's why we answered the way that we answered, Judge.

But you have the request for admission before you, and the request for admissions were very specific. There was nothing there designed to trick anybody. It didn't say just admit you are a healthcare provider. Admit you are not a healthcare provider. It said admit you are a healthcare provider as defined in Virginia Code Section 8.01-581.1. Admit you are not a healthcare provider as defined in Virginia Code Section 8.01-581.1. Those requests told Insight precisely where to look to begin answering and responding to the request for admissions and where the reasonable inquiry ought to begin.

Now, I guess they are conceding that they did not -- Insight is conceding that it did not look at the code section as it should have. Regardless, even looking at the management services agreement, Your Honor, the argument that's being made now about the independent contractor relationship was equally available to Insight at the time that it responded as it is now in the pleadings that are filed.

Now, to address the prejudice impact, Your Honor, again, I would note Ms. Wingate has retained a consultant she would not otherwise have retained as a result of this. This decision is going to have some impact and ramifications as far as what witnesses may be called and procedural elements about what witnesses may be qualified to testify as to what matters.

There is also an ongoing issue with a change in litigation strategies and keeping Ms. Wingate from being able to prepare her case and know what to expect. Judge, when we were here the last time, although I myself was not here, the case had already been set for trial. There was a hearing on a motion for partial summary judgment and there was some hearings on some pleadings filed by Ms. Reynolds' clients. And all of a sudden without any notice to anyone, the case was jerked up to federal court.

Now, the Western District of Virginia didn't take too kindly to the case coming up there. It was conceded that that removal was

untimely, and I am getting a little bit aside, but, again, Judge, the sand seemed to keep shifting. We are going to be here in state court, we are going to set for trial; no, now we are going up to federal court. Now Ms. Wingate has to spend a lot of money and resources fighting against the multi-district litigation, the bankruptcy court, the Western District of Virginia, all to bring the case back on a removal which was conceded by Insight at oral argument to be untimely.

Now, in addition to that, Insight has said we are not a healthcare provider. As a result of that, Ms. Wingate relied on it and retained someone she would not otherwise have retained. Now, oh, sorry, we are a healthcare provider. Ms. Wingate needs to be able to have some understanding of the order and procedure under which her case will be tried, and it needs to be set. And what she is asking for is exactly what the Court was going to give her at the hearing on April 5 before the case was removed untimely. Thank

you, your Honor.

THE COURT: Thank you. Want to respond to that?

MR. SHAW: No, Your Honor.

THE COURT: Fair enough. Gentlemen, I will take a look at that and get back with you as to that. I am assuming, Ms. Reynolds, you have nothing on --

MS. REYNOLDS: I have nothing.

THE COURT: Well, like Mr. Sexton, you typically make yourself heard if you want to be heard, and since I hadn't heard anything I assumed you had no issues there. All right.

So far as the scheduling order, it's probably helpful in these cases to have one. I'd like to have one unless it's just impossible to have the same apply to all cases. It would make more sense to me to do it that way.

As a general proposition, Mr. Shaw, I will say to you because I don't think I have had one with you, I frankly don't really care what's in them as long as you-all agree on them. But whatever you agree on I am going

to enforce strictly. This notion that pretrial orders don't get enforced because nobody cares doesn't make any sense to me. And if we are going to have them, we are going to enforce them. So I encourage and want to get as much of a consensus as possible in the pretrial order, but all I am trying to say is, you know, make sure you know what you are doing because I am going to enforce them.

Now, I say I am going to enforce them strictly. That is, if anybody wants them enforced. If you-all agree no matter what it says, if no one objects or if everyone agrees we are not going to proceed with one aspect or the other, that's fine. I mean, I am not going to independently enforce anything if no one wants it enforced. But if there is objection or there is an issue about enforcement of the order, then I typically try and enforce them strictly, but with the understanding ahead of time that I'd like to get as much consensus as possible to even -- to get there.

Now, in terms of particulars and details that we need to take up today, I will just -- let me just start over here.

MR. BYRD: The only thing that I wanted to bring up, Your Honor, is we had -- I think we are making headway. We had talked this morning in some depositions about discovery and getting those things answered, so we are not really going to talk about outstanding interrogatories or anything like that.

THE COURT: Good. I don't want to hear about it.

MR. BYRD: I am sure you don't. The only thing is, of course, as you know, the cases have come back. All of them have come back. Mr. Sexton got the pleasure of going to Boston and arguing before the bankruptcy court up there, and they have all come back.

The only thing really at this time -- we had talked about the terms of a scheduling order this morning as well, and I think Ms. Reynolds' office is circulating one for us to review. The only thing we had talked about this morning is just to -- I guess the

only thing we would need is the rulings on the outstanding demurrers and pleas and bars since those things are all now back before the Court so that we can get all the appropriate claims before the appropriate parties. And if the complaint needs to be amended in any way get that done sooner rather than later so that, as you had said earlier, just keep the case moving forward.

THE COURT: So when do you want those rulings?

MR. BYRD: I won't be so presumptuous to put time --

THE COURT: I am just asking you when you need them.

MR. BYRD: I am left without words as far as providing a date, Judge. I have to be full of candor here. But that was the only thing that I had wanted to bring up today as far as the Rule 4:13.

MR. SEXTON: I have a couple of things to add to that. Judge, I don't -- do you recall the meeting we had back at the first hearing where we talked with how you do 19

cases that all have some of the same facts?

I believe we are still on track to do what we said we would do then, which was try the Wingate case as the lead case. There is a lot of reasons for that, because, one, Mr. Wingate is deceased, so you don't have ongoing medical questions, which is a big, big, question in some of these other cases. Some of these people are very, very sick still. Still on IV therapy and, you know --

THE COURT: I am not going to rule on any of that right now.

MR. SEXTON: But I am just saying -- I just wanted to say that there is a reason why we picked this one. But on those other ones, we have already gone through a number of the depositions of the local people. We have hit -- I think after today -- Ben took two of the depositions. I think we have taken all of the local -- the local representatives once in the Wingate case.

On the next round, what I am thinking we would do is present an order consolidating for discovery purposes those other 17 or 18

41

cases so that any depositions that are taken subsequently would be pretty much effective so we don't have to take 18 more depositions of Doctor O'Brien or Doctor Mathis. And I suspect that in doing that the parties may just decide to adopt some of the Wingate depositions as -- like, for example, Doctor O'Brien and Doctor Mathis. I don't think their stories are going to change. There may be some questions as to whether they remember the particular patient or whatever.

So anyway, I just wanted to alert you to the fact that I think we are still on target for that, and we may submit some type of agreed order consolidating those things for discovery. And if you are interested, I could bring you up-to-date with the various things that have happened on the other level.

Mr. Byrd said that I was arguing in bankruptcy court. It was actually in the federal district court up there in Boston, the MDL court, and it was really -- it was kind of a circus there for a while, because we had the cases in front of Your Honor.

42

Then they got moved to federal court, so we were over in front of Judge Wilson with motions to remand, and at the same time we had motions to transfer to the multi-district litigation that were automatic that kicked in in that process, and then we also were fighting the bankruptcy trustees sort of magnet motion to suck us up there. So we were fighting this on all different kind of fronts.

We argued the exact same issues in front of Judge Wilson on May 7, and he issued an opinion within a week ruling squarely in favor of Mrs. Wingate's position and the other plaintiffs on all those issues that there was no federal jurisdiction, that if there was, it was too late, and, you know -- and notwithstanding all that, he said that the federal court needed to mandatorily abstain under the statute that's at issue, that there was mandatory abstention.

So then I had the awkward position of going up the next week, May 14, and arguing in front of the Boston district court on the

43

very same issues, and, of course, he knew about Judge Wilson's ruling at that time. So he is hearing all those same issues, and he ends up issuing an opinion that is at odds with the substance of Judge Wilson's opinion. He says I don't have to mandatorily abstain, I think there is related to jurisdiction, but I am going to discretionarily abstain on these cases at the moment because there has been no claim made against New England Compounding, and I am not even sure I really have jurisdiction, and it's a difficult opinion because he goes all over the place. He basically says he doesn't have jurisdiction, he doesn't think he has, but maybe he has it, and he is going to voluntarily abstain.

So what I think that did, the way I interpreted it, is it left a big loophole, potential loophole, that if Insight Health Corp takes certain actions like pursues a claim against New England Compounding aggressively for like contribution, then the judge would want to revisit that.

44

So we are in a really strange situation where at any moment there might be another motion by the trustee up there to drag us back up there again, even though the judge has not done so yet and has said proceed here.

And to be honest, there is -- that raises a remarkably bizarre procedural issue as to how that would happen, because Judge Wilson has already said those cases are not coming through me, because he literally said the words I am not a conduit. So he has made it clear that he doesn't ever want to see these cases again and he is not going to be the conduit to take these Roanoke cases up to this far jurisdiction, and he doesn't think that's the law.

So you have got a federal judge in Boston who may at one point attempt to issue an order to this Court to have it transfer a case under some absolutely undefined federal procedure. There is no federal procedure we can find. So I just -- I just alert you to this comedy crisis that is potentially on the

horizon. And I -- I don't know whether it will or will not. I think a lot of people who thought they might want to be up there in that mess of bankruptcy and MDL have perhaps decided maybe they don't want to be there. And Insight may be one of those.

But that's -- that's the status, and it is -- it's more federal and bankruptcy procedure than I ever wanted to know in my life we have had to figure out with regard to these things. It has been very academically interesting in this, but it hasn't given us a lot of comfort that we are firmly on any foundation in this Court, but we are going to proceed to trial, so...

THE COURT: All right. Mr. Shaw, what do you want in terms of specifics in a scheduling order?

MR. SHAW: Your Honor, we do need to sit down and discuss it, but one of the things we really need to look at is to give us plenty of time to get experts and respond to plaintiff's choice on experts in a normal 90/60/30 discovery order, which just won't

work in a case like this.

THE COURT: I would tend to agree with that, and I think we typically have, like you good lawyers who work with these things understand the practicalities of them, and I am not going to -- you know, I want you-all to tailor make something that will work for both of you. That's exactly what I was saying before. I am not going to get involved in micromanaging that sort of stuff. You-all know it better than I do, you work with it every day more than I do, and I want you to reach a consensus on that.

MR. SHAW: We will work together to get consensus, Your Honor.

THE COURT: Ms. Reynolds?

MS. REYNOLDS: Your Honor, may I just comment on the demurrers and the --

THE COURT: Sure.

MS. REYNOLDS: I don't know what the effect of the ruling will -- or rulings will be, but it may be --

THE COURT: It depends on what they are.

MS. REYNOLDS: I know, exactly. But it may be that there are -- there will be an amended complaint, and, certainly, Insight will file their answer, and we are going to have to file another answer so there is -- you know, once the Court does that then there will be a series of pleadings again, and that may require a little bit more in the way of discovery. So I would just say that to the Court because we do have -- you know, if we do set deadlines, we will certainly need to know what our pleadings are. Thank you.

THE COURT: Certainly.

MR. SEXTON: Judge, can I comment on that as well?

THE COURT: Sure. Why not?

MR. SEXTON: At the hearing on the demurrers, you asked -- I don't know if it was me. I think it might have been Mr. Sullivan directly and then he looked to me or something. But I think the point was on the fraud count if you ruled in the way that the defendants were asking, would we want to amend, and I think it somehow had

this impression that there was a suggestion that we had pled all the facts. We have certainly learned some additional facts that we think would apply to those. So to the extent that there ever was going to be a ruling on the fraud case in that regard, we would probably definitely want the opportunity to amend, to assert just a handful of additional facts that have come out in discovery.

THE COURT: All right. Anything else from anyone?

MR. SHAW: No, Your Honor.

THE COURT: All right. Thank you-all. That concludes this matter. We will stand in recess.

THE BAILIFF: Court stands in recess.

(3:51 p.m.)

* * * * *

CERTIFICATE

COMMONWEALTH OF VIRGINIA
CITY OF ROANOKE

I, Mary J. Butenschoen, RPR, Notary Public in and for the Commonwealth of Virginia, at Large, do hereby certify that the proceedings were by me reduced to machine shorthand, afterwards transcribed by me by means of computer, and that to the best of my ability the foregoing is a true and correct transcript of the proceedings as aforesaid.

I further certify that these proceedings were taken at the time and place specified in the foregoing caption.

I further certify that I am not a relative, counsel or attorney for either party, or otherwise interested in the outcome of this action.

IN WITNESS WHEREOF, I have hereunto set my hand at Roanoke, Virginia, on the 13th day of February, 2014.

____________________________

MARY J. BUTENSCHOEN, RPR
NOTARY PUBLIC

My Commission expires May 31, 2016.
Number 228402

A
ability 27:1 49:8
able 28:19 34:12 35:19
absolutely 44:21
abstain 42:20 43:6 43:8,17
abstention 42:21
academically 45:11
acquainted 8:1
act 4:8 10:2,24 18:17 20:2 25:9 29:14
acted 19:19
action 24:15,19 27:18 28:1 49:16
actions 43:21
active 25:15
add 39:22
addition 35:13
additional 48:3,9
address 13:5 34:1
admission 8:20 21:11,24 22:19 24:7,9,16 25:1,18 27:23 28:22 32:19 33:1
admissions 6:7 8:8 11:10 13:19 20:20 21:3 22:9 22:21 25:21 26:24 33:2,13
admit 21:14 33:4,5 33:6,8
admitted 12:16 28:21
adopt 41:6
advance 17:14
advertised 18:24 19:5
advisory 26:3
affability 4:7
affirmative 26:9
aforesaid 49:10
agency 22:24
aggressively 43:23
agree 16:18 36:23 36:24 37:13 46:2
agreed 41:15
agreement 8:11 12:4 22:5 29:3 32:23 33:19
agrees 37:14
ahead 9:12 21:10 23:19 37:22
al 1:10
alert 41:12 44:23
allegation 19:3
allegations 18:5,8 18:19 19:13 20:4 25:5
allegedly 19:11
alleges 18:23
alleging 10:24
allow 6:20,21 32:18
amend 6:1 8:19 11:10 13:18 21:23 22:18 47:24 48:8
amended 39:7 47:3
amendment 12:24 22:23 24:14,18 24:22 26:21 27:17,24 28:16 28:18
amendments 23:13 23:21
amount 13:6 25:11
answer 32:8,8,9,15 47:4,5
answered 6:6 8:7 12:2,13 13:21 29:21 30:17 32:11,13,24,24 38:8
answering 21:10 33:12
answers 6:1 13:18
anybody 5:20 33:4 37:12
anyway 17:6 41:12
apologize 3:21 14:13 17:14
apparently 22:1
appearances 2:1
apply 36:17 48:4
appreciate 14:1
appropriate 39:5,5
appropriately 3:15
april 14:4 35:23
area 29:12
argued 31:24 42:11
arguing 38:17 41:19 42:23
argument 19:24 21:5 32:6 33:20 35:11
aside 35:2
asked 47:18
asking 4:21 9:14,17 9:18 13:15 26:14 30:4,16 35:22 39:14 47:23
aspect 37:15
assert 48:8
assume 15:11
assumed 36:13
assuming 15:8 36:7
attainable 21:21
attempt 44:19
attorney 49:15
attributable 23:4
authority 17:2
automatic 42:5
available 33:22
awaiting 31:4
aware 15:14 23:7
awkward 42:22

B
b 2:20 27:13
back 5:9,10,11,13 7:19 8:22 9:4 17:10 26:19 35:10 36:6 38:15 38:16,18 39:3,23 44:4
backwards 7:4
bailiff 48:17
bankruptcy 31:2 35:8 38:17 41:20 42:7 45:4,8
barely 30:14
bars 39:2
based 21:16,20 24:3
basically 10:20 12:11 43:14
basis 16:23 22:3 26:20
begun 30:15
behalf 2:5,9,12
believe 22:10 23:10 40:2
ben 40:18
benjamin 2:4
best 49:8
better 46:11
big 10:21 40:7,8 43:19
bit 16:16 35:1 47:8
bizarre 44:8
blessing 15:11
bold 29:4
bonner 2:6
boros 22:16 23:1
boston 38:17 41:21 42:24 44:19
bottom 12:1 27:13 29:9 30:12
box 1:20
brief 31:24
bring 3:10,11 12:9 18:3 30:20 35:10 38:5 39:19 41:17
broad 29:11
broader 29:12
brought 3:11
burden 13:5
business 8:2
busy 30:18
butenschoen 17:16 49:4,22
byrd 2:4 3:17 4:4 4:12 8:17,18 9:1 11:17,21 15:6,21 15:22 16:8,13,24 17:4,9,18 21:6,9 21:19 23:16,18 23:20 32:4,6 38:4,13 39:12,16 41:19

C
c 49:1,1
call 20:13 25:14
called 10:9 34:7
canceled 15:13,16
candor 14:1,2 39:18
cant 26:8
cap 9:16 26:8
caption 49:13
care 4:9 19:7 20:6 29:5 36:22
cares 37:3
case 7:19 10:7 12:2 12:10,11,21 13:8 14:8 16:4 17:11 18:1 23:10,12,16 23:17,23 24:11 24:24 25:2 26:17 26:17 27:2,20 28:3,6,11,16,23 29:2,11 30:5,21 31:17 34:13,15 34:20,23 35:10 35:20,24 39:9 40:4,4,21 44:21 46:1 48:6
cases 6:14 9:4,5 11:15,19 12:12 12:23 16:6 23:6 23:8,15 25:7 29:13 36:15,18 38:15 40:1,8 41:1,24 43:9 44:10,14,15
causation 25:10
cause 3:1 24:2
caused 30:21
centers 19:8
central 1:20
certain 43:21
certainly 14:1 47:3 47:11,13 48:3
certification 18:20
certified 29:18
certify 29:19 49:6 49:11,14
chance 13:17
change 22:18 24:4 24:7 27:1 32:19 34:11 41:9
changed 21:7 26:11
changes 20:17,18
changing 10:7
charles 1:17 3:2
choice 21:1 31:14 45:23
choose 21:1 27:3
chose 32:9
chris 14:7
christopher 2:8
circuit 1:3 3:3
circulating 38:22
circumstances 10:22 13:22
circus 41:23
city 1:4 3:3 49:3
cl12254771 3:8
claim 43:10,22
claims 39:5
clear 28:16 44:13
clearly 12:22
clerk 3:9
client 7:22
clients 19:11,15,16 32:12,13 34:19
clinical 25:16
clinton 2:7
code 18:20 33:8,10 33:17
come 9:4,21 38:15 38:15,18 48:9
comedy 44:24
comfort 45:13
coming 34:23 44:11
comment 46:18 47:14
commission 49:23
commit 25:10
committee 31:4,6
commonwealth 49:2,5
company 7:21 14:15
complaint 18:1,4 18:12,18 20:11 20:18 22:8 27:12 30:18 32:10,14 32:16 39:6 47:3
compliment 14:2
compounding 43:11,22
computer 22:15 49:8
conceded 4:11 6:3 34:24 35:11
conceding 33:15,16
concludes 48:15
conduct 21:12
conducting 21:15
conduit 44:12,15
conference 9:3
confusion 24:2 32:21
consensus 37:6,23 46:13,15
consent 20:5
consistent 13:20 27:19
consolidating 40:23 41:15
consultant 25:20 34:3
consumer 18:16 25:9
contained 18:18
contains 18:4
contend 6:18 9:23
context 17:13
continue 3:23
contract 8:11
contractor 31:22 33:21
contribution 43:23
corp 1:10 2:9 7:21 8:12 9:15 20:9 20:13,14,15 22:4 25:3,7,24 26:13 43:21
corporate 8:13
correct 9:1 49:9
counsel 2:5,9,12 10:7 14:8 15:7 20:14 30:9 49:15
count 47:22
counts 18:4,15
couple 39:21
course 8:2 9:20 10:8,13 23:2 26:18 30:8 38:14 43:1
court 1:3 3:3,7,13 3:18,21 4:10,16 4:20 5:2,8,10,14 5:20 6:2,10,13,20 7:1,8,20 8:15,22 9:7,12,14,17 10:4 11:3,6,10,13,20 11:22 12:5,6,8,21 12:23 13:9,10,15 13:23 14:5,9,12 14:20 15:2,5,16 15:21,23 16:11 16:17 17:1,8,15 17:23 18:14 20:23 21:4,7,17 23:7,14,17,19 24:4,13,17,21 25:17 26:4,12,18 27:5,8,15,21,23 28:9,12,14 29:24 30:19,23 31:1,8 31:11,13 32:1,3,5 34:21 35:4,5,9,22 36:2,5,10 38:11 38:18 39:4,10,14 40:11 41:20,21 41:22 42:1,19,24 44:20 45:14,16 46:2,16,19,23 47:6,10,13,16 48:11,14,17
courts 23:12,20 24:6
coverage 10:23
covered 9:16
crisis 44:24
crociata 2:6

D
d 2:4
damages 25:11 26:9
date 14:3 39:17
day 4:23 12:11 17:24 20:21 46:12 49:18
days 17:21
daytoday 22:2
dc 2:7
deadlines 47:11
deal 14:21 28:7
dealing 31:10
deals 15:19
dealt 9:19 16:22
deceased 1:7 40:6
december 17:23 22:11
decide 13:12 23:8 32:1 41:6
decided 6:22 28:23

45:5
decision 28:13 34:5
deep 28:4
defend 25:4,7,10
    25:11 27:2
defendant 3:18 4:8
    5:1
defendants 1:11
    47:23
defense 24:11,19
    26:9,9 28:1
defined 33:7,9
definitely 48:7
definition 10:1
delong 22:16 23:1
demurred 32:10
demurrer 18:13
demurrers 32:13
    39:2 46:18 47:18
deny 21:15
depends 46:23
depositions 7:12
    22:13 30:8 38:7
    40:17,19 41:1,3,7
described 10:2
description 2:21
designated 19:12
designed 33:3
desperation 15:12
details 38:2
determine 9:15
detour 5:7
diagnostic 19:1
didnt 11:1 15:16
    17:5 33:4 34:23
died 17:21
different 5:15,17
    12:3 16:16 42:9
difficult 43:12
directly 47:20
director 19:12
discovery 6:9 7:11
    8:3,9 9:20 10:8
    13:3 29:1 30:8
    30:15 38:7 40:24
    41:16 45:24 47:9
    48:10
discretion 12:22
    27:16
discretionarily
    43:8
discuss 10:5 45:20
discussed 17:12
disparaging 16:1
dispute 23:24
district 34:22 35:9
    41:21 42:24
doctor 19:10 41:4,4
    41:7,8
doctors 8:3,13
    10:15 19:16 29:7
    32:22
doesnt 16:7 37:3
    43:14,15 44:13
    44:16
doing 4:3,3 7:13
    15:10 37:9 41:5
dont 4:20 7:6 11:20

13:10 15:9,24
    21:4,13,17,18
    26:2,2 29:4
    31:13 36:21,22
    37:2 38:11,13
    39:22 40:6 41:3
    41:8 43:6 45:1,5
    46:20 47:18
dorsey 1:17 3:2
douglas 1:7
dr 2:12,12
drag 44:3
due 3:22 32:7,8,9
duties 11:2
duty 20:2,5

E
e 2:20 49:1,1
earlier 39:9
early 7:19 12:21
    30:13
easily 15:10
effect 46:21
effective 41:2
either 9:21 49:15
elements 34:7
eliminate 24:10
    25:15
elucidated 30:5
emailed 18:1
emphasis 10:18
employees 10:11
    22:2,16
employment 19:14
    23:3
encourage 37:5
ends 43:4
enforce 37:1,5,10
    37:11,17,21
enforced 37:2,13
    37:18
enforcement 37:20
england 43:10,22
enter 30:1
entered 3:14 4:11
    4:12,17 5:5,18
    6:15 11:16 22:4
    26:10 29:14,21
entirely 32:16
equally 33:22
equipment 29:17
    29:20
esi 17:19
especially 18:11
esq 2:4,4,7,8,11
essentially 24:9
estate 1:7 17:22
et 1:10
evening 5:2
everybody 16:4
evidence 9:24
    26:12 28:20
exact 42:11
exactly 11:12 35:22
    46:8 47:1
example 41:7
excuse 30:24 32:18
executor 1:6 17:22

exercise 27:15
expect 34:13
experts 45:22,23
expires 49:23
extent 48:5

F
f 2:11 49:1
fact 3:23 12:14,15
    24:12 41:13
facts 27:20 30:5
    40:1 48:2,3,9
fails 24:16 27:23
failure 32:15
fair 36:5
fall 7:16
familiar 18:22
far 13:3 16:14
    22:17 28:3 34:6
    36:14 39:17,20
    44:16
favor 42:14
february 20:21
    49:18
federal 5:2,8 12:6,8
    23:6,8,11,12,15
    26:18 30:19
    34:21 35:5 41:21
    42:1,16,19 44:18
    44:21,22 45:8
fighting 35:7 42:7
    42:9
figure 11:23 45:10
figured 14:15 27:8
file 17:5 47:4,5
filed 5:23 8:21
    12:13 16:14
    17:23 20:12 22:8
    32:13 33:24
    34:18
files 3:10
find 12:8 30:20
    44:23
fine 13:13 17:17
    31:15 37:16
finished 15:6
firmly 45:13
first 15:6 20:24
    21:2 22:1 39:23
five 18:4
flip 30:1
following 3:1,4
    20:21
foregoing 49:9,12
forth 27:13
forward 7:11 9:21
    31:17 39:9
found 6:16 26:5
foundation 45:14
franklin 17:20
frankly 36:22
fraud 18:17 25:10
    47:22 48:6
free 25:4
front 41:24 42:2,12
    42:24
fronts 42:10
full 39:18

fully 18:11
further 49:11,14

G
g 1:1,6
gears 10:7
general 36:20
gentlemen 3:21
    36:5
gentry 2:3
getting 5:21 7:24
    10:13 12:10
    29:12 35:1 38:8
give 13:17,18 14:2
    15:9 26:15,16
    35:23 45:21
given 12:12 25:21
    45:12
go 9:12 17:10 23:15
    23:19
goes 20:3 43:13
going 3:22 6:17,19
    7:4,5 8:22 9:21
    9:22 10:24 14:24
    15:2 16:3,3,5,5
    17:6 26:15,16
    34:5 35:3,4,5,23
    36:24 37:4,5,9,11
    37:15,17 38:9,16
    40:11 41:9 42:23
    43:8,16 44:14
    45:14 46:6,9
    47:4 48:5
good 14:15,21
    38:11 46:4
granted 24:5
gray 1:7
great 15:4
gross 18:17
ground 25:4 27:2
guess 33:15 38:24
guided 2:12 19:9

H
h 2:20
hadnt 16:16 36:12
hand 49:17
handful 48:9
happen 44:9
happened 4:18 9:4
    41:18
happy 10:5
hasnt 5:19 45:12
hassell 2:8 14:7
    16:15 18:2
hate 11:17
havent 3:11 28:3
    30:17
headway 38:6
health 4:1,9 7:21
    8:12 18:24 19:15
    19:19 20:9,12,14
    20:15 22:4 25:3
    25:7,24 26:13
    43:20
healthcare 6:4,8,17
    6:23 7:17 8:23
    9:22 10:1 12:15

12:16 18:6,9
    20:3,9,10,16 26:1
    26:5,7,13 28:24
    29:10 30:3,12
    31:18 33:5,6,7,9
    35:14,18
hear 38:11
heard 1:16 3:1
    36:11,12,12
hearing 4:14 8:21
    11:19 17:16
    25:23 26:16
    34:16 35:23
    39:24 43:3 47:17
hearings 34:18
heath 1:10 2:9
helpful 36:15
hereunto 49:17
hesitation 14:21
highest 19:6
history 7:24 17:11
hit 40:18
honest 44:7
honor 3:17,20 4:4
    4:18 5:4 7:18 8:7
    8:18 9:1 11:9,17
    12:1 13:14,21
    14:6 15:22 16:8
    17:4,9,18 18:21
    20:24 21:6,10
    23:7 24:21 25:3
    25:17,22 26:15
    26:22 27:4,7,9
    28:15 29:9,15
    31:3,10,12 32:4
    33:19 34:2 36:1
    36:4 38:5 41:24
    45:19 46:15,17
    48:13
honorable 1:17 3:2
hope 14:24
hopefully 14:23
hoping 3:12 28:12
horizon 45:1

I
id 14:6 36:16 37:22
igpm 8:12
im 9:7 13:15
image 2:12 19:9
imaging 19:1,7
impact 34:1,5
impacted 26:23
important 17:10
importantly 8:10
impossible 36:17
impression 48:1
imputed 23:3
inaction 10:18
inadvertently
    14:10
including 3:22
    18:19
inconvenience 13:6
    28:7
independent 31:22
    33:21
independently

37:17
information 9:20
    21:16,20 22:22
    23:22
informed 20:5
inquiry 21:13,16
    33:14
insight 1:10 2:9 3:8
    4:8 7:13,14,21
    8:6,12 9:15
    10:12 17:19 18:7
    18:23 19:2,5,12
    19:14,19,23 20:2
    20:8,12,14,15,24
    21:1,24 22:3,6,7
    22:10,13,14,15
    22:20,24 23:2,4
    25:3,7,24 26:6,13
    32:9,10,15 33:11
    33:16,22 35:11
    35:13 43:20 45:6
    47:3
insights 21:22 27:1
    32:8,17
instances 12:19,20
instruction 23:12
insurance 7:21
interest 20:1
interested 41:16
    49:16
interesting 45:12
interpreted 43:19
interpreting 23:9
interrogatories
    38:10
interrupt 8:15
    11:18
introduce 14:7
invite 31:7
involved 3:13 7:10
    46:10
isnt 16:12 28:9
issue 6:21,24 8:16
    8:23 9:19 13:5
    16:11,21 18:10
    20:22 21:22
    22:17,21 28:8
    29:23 34:10
    37:19 42:20 44:8
    44:19
issued 24:1 42:12
issues 8:17 14:17
    27:6 36:13 42:11
    42:15 43:1,3
issuing 43:4
iv 40:10

J
j 2:4 49:4,22
january 7:19
jerked 34:21
jr 2:7
judge 3:2 5:8 32:24
    34:13 35:2 39:17
    39:22 42:2,12
    43:2,5,24 44:4,9
    44:18 47:14
judges 3:24 31:5

judgment 4:6,24 5:24 11:11,15 30:2 34:17
july 1:13 3:1 22:6
jump 21:9
juncture 16:2
jurisdiction 42:16 43:7,12,15 44:16
justify 22:23

K

karen 22:16
keep 35:3 39:9
keeping 34:11
kicked 42:5
kiernan 2:6
kind 3:9 28:5 41:23 42:9
kindly 34:23
knew 14:14 22:15 43:1
know 6:11 7:6,20 9:3 13:21 16:19 17:18 29:20 30:1 34:13 37:8,9 38:14 40:10 42:17 45:1,9 46:6,11,20 47:1,6 47:10,12,18
knowledge 21:14 21:18,18 23:1
known 21:20 22:19
knows 31:3

L

language 29:4
large 49:5
larger 16:21
late 14:4 42:17
law 12:21 13:8 22:24 26:4,10 28:11,16,24 29:11 44:17
lawyers 46:4
lead 14:8 15:7 40:4
learned 6:9 8:4 10:9 22:1 23:22 29:17 48:3
learning 7:24 8:1
leave 6:1 13:18
leclair 2:10
left 39:16 43:19
legislature 4:1
level 41:18
liability 25:8
licensed 10:21 31:19
life 45:10
light 15:24
line 12:1 27:13 29:10 30:12
literally 44:11
litigation 34:11 35:8 42:5
little 5:7 8:9 10:8 16:16 35:1 47:8
live 11:1
local 40:17,20,20
locke 2:3
long 36:23
longstanding 7:22
longwinded 17:13
look 16:19 18:10 23:7 32:1,22 33:11,17 36:6 45:21
looked 8:8 16:16 47:20
looking 10:12,15 12:3 20:8 29:1,2 29:6,7,9 33:18
loophole 43:19,20
lot 35:6 40:5 45:2 45:13

M

m 1:13 48:19
machine 49:7
magnet 42:8
maintaining 24:18 28:1
maker 12:9 30:22
making 7:3 15:19 28:13 32:17 38:6
malpractice 4:8 9:16 10:23
management 2:12 8:10 12:4 19:9 22:4 29:3 32:22 33:19
mandatorily 42:19 43:6
mandatory 42:21
mary 49:4,22
mathis 2:12 8:3,13 19:10,16 41:4,8
matter 4:15 5:1,3 16:7,10 28:21 37:13 48:15
matters 3:15,22 4:5 25:13 34:9
mdl 31:5 41:22 45:4
mean 12:21 15:24 16:6 37:16
means 49:8
meant 28:9
medical 4:7 19:12 29:5 40:7
medicine 19:4
meet 14:13
meeting 39:23
meningitis 30:21
mentioned 19:23
mentions 19:8,10 19:19 20:1
merits 6:23 24:10 24:11,14,19,23 26:23 27:18 28:2
mess 45:4
met 14:13
microbiology 10:10
micromanaging 46:10
mind 21:7
missing 10:11,19
mistake 10:21 29:8
moment 43:9 44:2
money 35:6
months 13:1,2 30:13
moore 2:3
morning 38:7,21 38:24
motion 4:6 5:23,24 6:1 8:19 11:4,8 17:5 21:23 30:2 30:10,11 34:16 42:8 44:3
motions 4:24 11:7 11:13 42:3,4
moved 26:18 42:1
moving 7:11 9:6 39:9
multidistrict 35:8 42:4

N

n 1:1,17 3:2
name 8:13
nancy 2:11
national 19:1
necc 12:9
necessary 16:18
need 10:23 18:10 38:2 39:1,15 45:19,21 47:11
needed 9:5 42:19
needs 7:20 16:21 35:18,21 39:6
negligence 10:17 18:15,17,17
negotiate 15:18
network 19:7
never 13:24
new 12:11 22:14,22 22:24 23:5,21 43:10,22
night 4:14
nine 13:2 30:13
normal 45:23
notary 49:4,22
note 34:2
noted 23:10
notice 8:20 16:2,6 18:7 19:3 27:10 27:11 34:20
notices 11:18 16:7
notified 10:14
notion 37:1
notwithstanding 42:18
number 2:21 7:12 18:5,19 40:16 49:24
numbers 16:1
nurses 19:20

O

oath 3:13
objecting 5:22
objection 5:20 37:19
objects 37:14
obligation 21:12
obrien 2:12 8:4,14 19:17 41:4,8
obtain 28:20
obtained 24:16 25:21 27:22
occupied 15:15
odds 43:4
offered 19:6
office 24:1 38:22
officially 22:11
oh 35:17
okay 5:14 9:12 11:6,21 14:5 17:8 23:19 31:8
once 40:21 47:6
ones 5:15 40:15
ongoing 34:10 40:7
open 15:19 30:4
operation 26:4,10
opinion 24:1 26:3 42:13 43:4,5,13
opportunity 48:8
opposed 6:24
opposition 5:23
oral 35:11
order 4:11,12,16 6:15,20 15:1 29:19 35:19 36:14 37:7,20 38:21 40:23 41:15 44:20 45:18,24
orders 5:6 6:21 37:2
ought 33:14
outbreak 30:22
outcome 49:16
outpatient 19:7
outstanding 38:9 39:2

P

p 1:13 48:19
page 2:21
pain 2:12 19:9
paragraph 18:23 19:5,8,10,18 20:1
parameters 11:24
partial 4:6 5:24 11:11 34:17
particular 12:13 41:11
particulars 38:1
parties 22:12 24:3 39:6 41:5
partner 14:8
party 21:12 24:16 27:22 28:18,19 30:20 49:15
patent 23:24
patient 41:11
pending 18:13
people 8:5 19:22 31:3 40:9,17 45:2
permission 24:4
permit 24:13,22 26:20 27:16
permitted 12:24 13:1 23:13,21 24:6
person 11:1
personnel 19:21
perspective 9:10
pertaining 19:4
pertinent 18:5
phone 20:13
physicians 31:21 31:22
picked 40:15
place 4:13 7:12 12:3 43:13 49:12
plaintiff 1:8 2:5 3:16 28:6,17 29:22
plaintiffs 10:6 30:9 42:15 45:23
pleadings 10:3 33:23 34:18 47:7 47:12
pleas 32:13 39:2
pleasure 38:16
pled 48:2
plenty 9:24 45:22
po 1:20
point 5:13 15:20 30:15 44:19 47:21
position 6:14 42:14 42:22
possible 37:7,23
potential 43:20
potentially 44:24
practicalities 46:5
practice 19:4 25:16 31:23
precisely 32:11 33:11
prejudice 13:4,6,7 24:18,20 27:24 28:2,4,5,9,17 29:22 32:14,16 34:1
prejudiced 24:24 28:18
prepare 34:12
prepared 16:9
present 40:23
presentation 24:14 27:17
presented 22:7
presumptuous 39:12
pretrial 9:2 37:2,7
pretty 41:2
probably 15:14 16:21 36:15 48:7
problem 24:21 29:6
procedural 16:22 17:11 25:13 34:7 44:8
procedurally 16:14
procedure 35:20
44:22,22 45:9
proceed 31:17 37:15 44:5 45:15
proceedings 3:4 49:6,10,11
process 42:6
progress 7:3 30:6
progressed 28:3 29:13
prong 28:18
proper 17:13
proposition 36:20
protection 18:16 25:9
prove 28:20
provide 20:5 29:4
provider 6:4,8,17 6:23 7:17 8:24 9:23 10:1 12:15 12:17 18:9 19:1 20:9,10,16 26:1,6 26:7,14 28:24 29:11 30:3,12 31:18 33:5,6,7,9 35:14,18
providers 20:3
providing 39:17
provision 18:6 19:8
prudent 20:3
public 18:24 19:6 49:4,22
purely 16:22
purposes 40:24
pursuant 18:20
pursues 43:21
pursuing 31:12
put 18:7 19:2 22:14 27:11 39:13
putting 10:17

Q

qualified 17:22 34:8
qualifies 20:9
quality 19:6
question 12:14 40:8
questions 40:7 41:10

R

r 1:1 2:7 49:1
rack 3:10
radiologists 31:20
radiology 7:15 10:12,18
raises 44:8
rakes 2:3
ramifications 34:6
reach 46:13
read 13:11 28:12
readily 21:20
ready 3:16,19
really 7:2 16:2,7 30:15 31:16,16 36:22 38:9,19 41:22 43:11 44:1 45:21

**reason** 18:3 21:23 22:18 40:14
**reasonable** 20:2,6 21:13,15 33:14
**reasons** 4:2 40:5
**recall** 4:19,20 39:23
**receive** 11:18
**received** 17:19 20:13
**recess** 48:16,17
**reconsideration** 11:11
**record** 6:3
**reduced** 49:6
**referenced** 22:5
**referring** 19:22
**refresh** 4:22
**regard** 45:10 48:6
**regarding** 18:6 32:6
**regardless** 16:12 17:7 33:18
**related** 4:15 43:7
**relates** 4:7
**relationship** 19:14 33:21
**relative** 49:14
**relied** 35:15
**relief** 25:12
**remain** 30:4
**remand** 42:3
**remarkably** 44:8
**remedy** 28:10
**remember** 23:22 41:10
**removal** 4:13 34:24 35:10
**removed** 5:1 30:19 35:24
**reopened** 29:23
**reply** 17:5
**report** 10:10,20
**reporter** 3:14
**reporters** 1:20
**reports** 10:13,14
**represent** 25:17
**representatives** 40:20
**request** 6:7 8:8,20 13:19,24 20:20 21:2,11,23 22:9 22:18,21 24:7,8 25:1,18 26:24 32:19 33:1,2,13
**requests** 33:11
**require** 47:8
**required** 28:20
**research** 20:8
**resources** 35:7
**respond** 18:11 36:2 45:22
**responded** 22:10 22:20 33:23
**responding** 21:11 33:12
**response** 24:5
**responses** 21:24
22:19 24:8,9 25:1,19 32:7,19
**result** 20:18 24:24 25:18 26:23 32:15 34:4 35:15
**retained** 7:20 25:19 34:3,4 35:16,17
**returned** 26:19
**review** 38:23
**reviewed** 4:2
**revisit** 6:20 7:5,7,9 43:24
**reynolds** 2:11 14:14 19:11,15 19:16 32:12,12 34:19 36:7,9 38:22 46:16,17 46:20 47:1
**right** 3:18 8:18 9:7 11:12,24 13:7 14:9,12,16 21:6 21:19 23:18 30:2 31:9 32:3 36:13 40:12 45:16 48:11,14
**road** 17:20
**roanoke** 1:4,21 2:3 2:10 3:3,4 44:15 49:3,18
**role** 22:3
**roles** 8:5
**roster** 15:9
**round** 40:22
**rpr** 49:4,22
**rubric** 7:17
**rule** 9:2 23:9,11 24:12 27:13 39:20 40:11
**ruled** 47:22
**ruling** 42:13 43:2 46:21 48:6
**rulings** 39:1,11 46:21
**ryan** 2:10

**S**

**s** 2:20 23:24
**sample** 3:12
**sand** 35:2
**satisfy** 24:17 27:23
**saying** 10:19,20 24:1 26:6 29:24 30:3 40:13 46:9
**says** 20:24 21:3 37:14 43:6,14
**scheduling** 14:24 36:14 38:20 45:18
**scope** 23:3,9
**scott** 2:4
**screen** 27:12
**se** 18:15
**seating** 15:8
**second** 8:16 28:17
**secretaries** 19:20
**section** 18:21 33:8 33:10,17
**see** 7:10 44:13
**seeking** 25:12 26:3
**sense** 36:18 37:3
**sent** 5:10,11 16:15
**separate** 15:3
**september** 17:20
**series** 47:7
**served** 20:12,20 22:9
**services** 8:11 12:4 18:7 19:2 22:5 29:3,5 32:23 33:19
**set** 4:24 6:14 14:3 15:17 17:15 34:15 35:4,21 47:11 49:17
**sets** 27:13
**sexton** 2:4 4:17,18 4:22 5:11 15:7 15:12,17,18 17:24 20:13 31:3 36:10 38:16 39:21 40:13 47:14,17
**shakeen** 23:10
**sharon** 1:6 22:16
**shaw** 2:7 3:20 5:14 5:17,22 6:5,11,19 7:6,10 9:8,11,14 9:18 11:5,7,12,14 12:1,7 13:13,17 14:4,6,10,19,23 15:4 27:7,9,22 28:11,15 30:24 31:2,9,15 36:4,20 45:16,19 46:14 48:13
**shifting** 35:3
**short** 3:23
**shorthand** 49:7
**shortly** 20:11
**show** 9:22
**showed** 5:3
**showing** 24:23
**sick** 40:9
**signed** 7:18
**similarity** 23:11
**simply** 25:2 27:14
**sit** 45:20
**sitting** 3:3
**situation** 12:18 44:1
**six** 12:12 13:20
**skills** 7:16
**smoke** 27:12
**sooner** 39:7
**sorry** 9:7 35:17
**sort** 6:13 10:16 11:22 25:14 28:4 42:7 46:10
**sought** 28:10
**specialized** 7:16 29:16
**specific** 20:23 33:3
**specifically** 16:10 25:22
**specifics** 45:17
**specified** 49:12
**spend** 35:6
**spin** 10:17
**spread** 3:15
**squarely** 19:2 42:13
**staff** 19:20 22:14
**stand** 48:15
**standard** 27:14,14
**standing** 25:1
**standpoint** 7:2
**stands** 48:17
**start** 38:3
**state** 29:19 31:11 35:4
**stated** 17:1 20:15 25:24
**statement** 32:21
**statements** 25:22
**states** 24:12 29:3
**status** 30:23 31:1 45:7
**statute** 29:14 42:20
**steering** 31:4,6
**steroid** 12:10 30:22
**stories** 41:9
**strange** 44:1
**strategies** 34:11
**strictly** 37:1,12,21
**stuff** 46:10
**subject** 26:8
**submit** 13:4 32:18 41:14
**submitted** 10:4 12:23 13:8
**subsequently** 41:2
**subserved** 24:15 27:18
**substance** 43:5
**suck** 42:8
**sudden** 34:19
**suffered** 28:5
**suggestion** 48:1
**suit** 17:23
**sullivan** 47:20
**summary** 4:6,24 5:24 11:11,15 30:2 34:17
**sure** 16:24 23:7 32:5 37:8 38:13 43:11 46:19 47:16
**suspect** 41:5
**system** 22:15

**T**

**t** 2:20 49:1,1
**tailor** 46:7
**tainted** 12:9
**take** 16:19 32:1 34:23 36:6 38:2 41:3 44:15
**taken** 7:12 13:7 30:9 40:19 41:1 49:12
**takes** 43:21
**talk** 38:9
**talked** 38:6,20,23 39:24
**talking** 6:5 27:10
**target** 41:14
**tech** 10:19
**technically** 4:5 5:4
**technicians** 19:20
**technologist** 10:21
**technologists** 7:15 19:21 29:15 31:20
**techs** 10:12
**tell** 13:23
**ten** 11:14,19
**tend** 46:2
**terms** 14:17 17:2 28:10 38:1,20 45:17
**terrible** 30:21
**test** 25:16
**testified** 7:14 22:13
**testify** 34:8
**testimony** 8:3 22:17
**thank** 27:3 28:15 35:24 36:2 47:12 48:14
**thats** 3:14 4:20 8:16 10:2,3 13:7 14:12 18:13 21:6 21:9,19 23:18 27:12 28:5 31:11 31:15,23 32:23 33:20 37:16 42:20 44:17 45:7 45:7 46:8
**theory** 27:3
**therapeutics** 19:9
**therapy** 40:10
**thing** 9:9 10:6,9 30:19 38:4,14,19 38:23 39:1,19
**things** 9:9 16:14 19:18 25:15 30:16 38:8 39:3 39:21 41:15,18 45:11,21 46:4
**think** 5:12 17:10 31:16 36:21 38:5 38:21 40:18,19 41:8,13 43:7,15 43:18 44:16 45:2 46:3 47:19,21,24 48:4
**thinking** 40:22
**thought** 4:10 6:2 7:8 45:3
**three** 4:5 8:19 9:9 13:1
**throws** 7:23
**time** 9:19 15:8 22:1 22:12,20 26:11 26:21 28:22 30:17 33:22 34:14 37:22 38:19 39:13 42:3 43:2 45:22 49:12
**times** 24:6
**today** 9:15 13:11 14:18 38:2 39:19 40:18
**told** 33:11
**track** 40:2
**trademark** 23:23 23:24 24:2
**trained** 22:14
**training** 29:16
**transcribed** 49:7
**transcript** 49:9
**transfer** 42:4 44:20
**trebach** 2:6
**trial** 13:1,2 14:3 15:13 24:10,23 25:16 26:22 27:15 30:14 34:16 35:4 45:15
**trick** 33:4
**tried** 35:21
**true** 25:6 27:20 30:20 49:9
**truly** 23:21
**trustee** 44:3
**trustees** 42:7
**truth** 31:17,18
**try** 28:14 31:6 37:21 40:3
**trying** 11:23 12:7,8 25:15 30:18,19 37:8
**two** 4:5 8:17 11:7 11:13 19:15 20:22 40:18
**type** 19:22 41:14
**typically** 36:11 37:20 46:3

**U**

**u** 23:24
**ultimately** 26:17
**unable** 21:14
**undefined** 44:21
**understand** 7:1 15:24 16:8 26:2 26:2 46:5
**understanding** 35:19 37:22
**understood** 8:16
**untimely** 35:1,12 35:24
**unusual** 23:14
**upholding** 24:8 26:24
**uptodate** 41:17
**use** 26:8 29:17,20
**usually** 15:9

**V**

**v** 1:1
**vacate** 6:21
**various** 7:13 8:5 9:20 10:11 41:17
**versus** 3:7
**violate** 25:8
**violation** 18:16
**virginia** 1:20,21 2:3,10 3:4 18:16 18:20 25:8 29:19

33:8,10 34:22 35:9 49:2,5,18
**visavis** 16:6
**voluntarily** 43:17
**vs** 1:9

**W**

**want** 13:10,11,16 15:5 17:2,3 29:24 30:10 36:2 36:11 37:6 38:11 39:10 43:24 44:13 45:3,5,17 46:6,12 47:24 48:7
**wanted** 7:9 16:9 21:2 38:4 39:19 40:14 41:12 45:9
**wants** 30:9 37:12 37:18
**washington** 2:7
**wasnt** 4:17 5:18 7:22
**way** 5:18 12:5,8,14 26:23 27:1 30:7 30:20 31:6,11 32:24 36:19 39:7 43:18 47:8,22
**week** 42:13,23
**weird** 6:14
**went** 5:12
**western** 34:22 35:9
**whats** 3:12 17:12 30:23 31:1 36:23
**whereof** 49:17
**wilson** 5:8 42:2,12 44:10
**wilsons** 43:2,5
**wingate** 1:6,7 3:7 5:1,3 16:10 17:19,21 20:6,17 22:7 25:5,12,19 26:16 34:2,12 35:6,15,18 40:4,6 40:21 41:6
**wingates** 17:22 42:14
**withdrawal** 24:13 24:17 26:21 27:16,24 28:19
**witness** 49:17
**witnesses** 7:13,14 25:14 34:6,8
**wont** 28:16 39:12 45:24
**word** 31:4
**words** 27:19 39:16 44:12
**work** 8:5 46:1,4,7 46:11,14
**working** 23:2 31:6
**worry** 11:20
**wouldnt** 24:2
**writing** 17:3

**X**

**x** 2:20

**Y**

**yeah** 5:12 10:23 15:2
**year** 14:4 17:20,24
**years** 29:13
**youall** 17:15 36:23 37:13 46:6,11 48:14

**Z**

**0**

**00** 1:13
**0150** 18:21
**01581** 33:8,10

**1**

**1** 18:21 20:21 33:8 33:10
**10** 5:5,5
**11** 4:23 23:9 24:12 27:13
**12** 17:21
**12628** 1:20
**13** 3:8 9:3 39:20
**13th** 49:18
**14** 42:23
**15** 18:23
**17** 40:24
**18** 40:24 41:3
**19** 5:12 39:24

**2**

**2010** 22:6,12
**2013** 1:13 3:2
**2014** 49:19
**2016** 49:23
**22** 19:5
**228402** 49:24
**24** 19:8
**27** 17:23
**28** 19:10

**3**

**3** 1:13 48:19
**30** 45:24
**31** 49:23
**3805017** 1:21

**4**

**4** 9:3 23:9 24:12 27:13 39:20
**45** 19:18

**5**

**5** 35:23
**51** 48:19
**54** 3:8 20:1
**540** 1:21
**57** 3:9

**6**

**6** 17:20
**60** 45:24

**7**

**7** 42:12
**76** 3:8

**8**

**8** 18:21 33:8,10
**8th** 22:6

**9**

**9** 1:13 3:2,8
**90** 45:24