UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | )<br>)<br>)MDL No. 1:13-md-2419-RWZ<br>)<br>) |
| THIS DOCUMENT RELATES TO: | )<br>) |
| 1:14-cv-12905-RWZ: Epperly v. Insight Health Corp., *et al.*<br>1:14-cv-12908-RWZ: McFarlane v. Insight Health Corp., *et al.*<br>1:14-cv-12910-RWZ: Smith v. Insight Health Corp., *et al.*<br>1:14-cv-12916-RWZ: Kalinoski v. Insight Health Corp., *et al.*<br>1:14-cv-12917-RWZ: Filson v. Insight Health Corp., *et al.*<br>1:14-cv-12919-RWZ: Bradley v. Insight Health Corp., *et al.*<br>1:14-cv-12924-RWZ: Foutz v. Insight Health Corp., *et al.*<br>1:14-cv-12927-RWZ: Whitlow v. Insight Health Corp., *et al.*<br>1:14-cv-12928-RWZ: Harris v. Insight Health Corp., *et al.*<br>1:14-cv-12929-RWZ: Smith v. Insight Health Corp., *et al.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM IN OPPOSITION TO INSIGHT IMAGING'S RENEWED MOTION FOR LEAVE TO AMEND ITS RESPONSE TO REQUESTS FOR ADMISSION AND TO SUPPLEMENT INSIGHT HEALTH CORP.'S MOTION FOR RECONSIDERATION OF PARTIAL SUMMARY JUDGMENT**

Insight argued in its state court demurrers (motions to dismiss) that it had no healthcare provider-patient relationship with the plaintiffs. It then responded to two separately worded Requests for Admissions, admitting that it was not a healthcare provider and denying that it was a healthcare provider. It then stipulated to the Roanoke Circuit Court that it was not a healthcare provider and waived entitlement to the benefits (including damages cap) of the Virginia Medical Malpractice Act. It thus had four chances to arrive at the answer upon which the Roanoke Circuit Court based its award of partial summary judgment. Insight then strategically changed its mind, and sought a fifth chance to convince the Roanoke Court that it should be allowed to make "an about-face"[1] and change its admissions on this issue. That motion was flatly rejected as not satisfying the applicable standards

---

[1] As described by the Roanoke Circuit Court's letter opinion, MDL Doc. #1326-16, at 24.

of Rule 4:11(b). The Court should decline Insight's invitation to resurrect already-adjudicated issues, and should instead advance these cases forward.

## Statement of Relevant Facts and Procedure

Plaintiffs represented by Gentry, Locke, Rakes, & Moore, LLP (the "Gentry Locke Plaintiffs") filed nineteen cases[2] asserting state law claims in Roanoke, Virginia against Insight Health Corporation, Inc. ("Insight"), Image Guided Pain Management, and its physician owners and employees, Dr. Mathis and Dr. O'Brien (collectively "IGPM"). Insight is one of the nation's largest medical imaging organizations. It is a sophisticated company, owned by a multi-billion dollar private equity firm, Black Diamond Capital Management. (MDL Doc. #1326-1). In 2010, it purchased a hospital-owned imaging clinic in Roanoke, Virginia and then contracted with IGPM to provide radiological services at its Insight Imaging-Roanoke facility. (Case 12917, Doc. #6, ¶ 9, 14).

The Gentry Locke Plaintiffs' state court complaints contain a negligence count and were accompanied by a certification under Virginia Code Section 8.01-581.1—the Virginia medical malpractice statute. The complaints plainly alleged that Insight and IGPM had a "healthcare provider-patient relationship" with each plaintiff (e.g., MDL Doc. # 1326-2, ¶ 50).[3] Similarly, the allegations included the following:

- Insight advertised to the public that it was a national provider of diagnostic imaging services (*see*, *e.g.*, Barbara Filson Compl. (*Id.*, at ¶ 12);

- Insight advertised to the public that it offered the highest quality of care through a network of outpatient imaging centers (*Id.*, at ¶ 19);

- Insight advertised to the public that it provided pain management guided therapeutics (*Id.*, at ¶ 21);

- Insight allegedly designated and held out Dr. John M. Mathis, M.D., as its medical director for the Roanoke Insight clinic (*Id.*, at ¶¶ 24–25);

---

[2] One of which, *Wingate v. Insight Health Corp., et al.*, has already been resolved.

[3] Amended Complaints have since been filed restructuring these allegations in light of the contrary position taken by Insight. (e.g., MDL Case 12917, Doc. #6 – Filson Amended Complaint).

- Insight employed Dr. Mathis and Dr. Robert F. O'Brien, M.D. at its Roanoke clinic (*Id.*, at ¶¶ 34, 39);

- Insight acted through secretaries, nurses, radiological technicians, staff and personnel (*Id.*, at ¶ 42);

- Insight had a duty to act as a reasonable and prudent health care provider would (including the duties to provide reasonable care and treatment to its patients and obtain informed consent) (*Id.*, at ¶¶ 187–195).

The first 11 Gentry Locke Plaintiffs' cases were filed in rapid succession between December 27, 2012 and January 8, 2013. The remaining 8 complaints followed shortly thereafter, but <u>all</u> of the cases contained <u>exactly</u> the same factual allegations and legal causes of action, differentiated only by specific medical information relating to each individual plaintiff.

Insight promptly filed substantively identical demurrers (motions to dismiss) to each of the Gentry Locke Plaintiff Complaints denying the existence or proper allegation of a patient relationship with the Plaintiffs (e.g., MDL Doc. # 1326-3, at 4).[4] In February 2013, Insight fleshed-out this non-provider defense theory by announcing to counsel for all parties (including co-defendant IGPM) that it was <u>not</u> a "healthcare provider." It did so for two reasons that it deemed strategic at the time for purposes of avoiding liability: (1) it sought to place all blame for medical decisions solely on IGPM, the physician defendants (as it still does); and (2) it sought to deny that it had any patient-provider relationship (and corresponding duty) with the plaintiffs.  Rather, it took the position that it was simply a manager for <u>IGPM's</u> medical practice.  Being a "healthcare provider" under Virginia law is a privileged status, providing a cap on damages liability <u>and</u> increased evidentiary standards for expert testimony.  However, this status also comes with specialized duties.  Insight purposefully sought to pass those duties off on IGPM and deny the existence of any such duties to the plaintiffs.

---

[4] "The Complaint further alleges that the epidural steroid injection was administered by Dr. O'Brien …. the Plaintiff's Complaint fails to allege any facts that would support a contention that there was a duty owed by [Insight] to the decedent."

3

Insight's calculated decision to shun "provider" status in these cases had nothing to do with any level of ignorance regarding its own business.

After Insight announced its non-healthcare provider status, 11 of the Gentry Locke Plaintiffs sent Requests for Admission to Insight on February 7, 2013, asking it to correspondingly either admit that it was a healthcare provider or admit that it was not. (MDL Doc. #1326-4). Meanwhile, Insight filed a Memorandum in support of its demurrer in Wingate, asserting that the Plaintiffs' negligence cause of action should be dismissed against Insight because there was no provider-patient relationship. (MDL Doc. #1326-5, at 14). It then also responded to the healthcare provider Requests for Admission (in the first 11 cases) by both denying that it was a healthcare provider, and admitting that it was not healthcare provider. (e.g., MDL Doc. # 1326-6). It then stipulated to the Roanoke Court that it was not a healthcare provider and was not subject to the corresponding malpractice cap in Virginia; and, it waived any right to rely on the malpractice act as a defense to damages. Insight now regrets these strategic decisions. But, its motions for leave to amend the admissions at issue have already been flatly denied by the Roanoke City Circuit Court.

Procedural History:

On March 7, 2013, 11 of the Gentry Locke Plaintiffs moved for partial summary judgment as to Insight's healthcare provider status. (MDL Doc. # 1326-8).[5] Each of those motions was noticed and heard on April 5, 2013. Hours prior to the hearing on April 5, 2013 (and, without prior notice or warning), Insight filed a notice of removal to federal court in the Wingate case, but not the other 10 cases noticed that day for hearing on partial summary judgment. Accordingly, the Circuit Court called the 10 non-Wingate cases for hearing on the issue of partial summary judgment. (Decl. of Sexton, MDL Doc. # 1161, ¶ 10; MDL Doc. #1326-9, at 1 - 5). At that hearing, Insight objected only

---

[5] To avoid unnecessary duplication, references to representative documents in this Memorandum will refer to the Filson case. Identical pleadings exist in Bradley, Epperly, Filson, Foutz, Harris, Kalinoski, McFarlane, Smith, J., Smith, R., and Whitlow. These cases are also referenced as the "10 non-Wingate cases."

that the requested relief was "advisory," but otherwise plainly stipulated that it was not a healthcare provider and waived benefit of the damages cap:

> Insight Counsel: **"Well, Your Honor, actually what they're asking essentially is are we or are we not a healthcare provider. We're saying we're not a healthcare provider. We're not subject to the cap. We can't use that as an affirmative defense or a defense to damages."**

(*Id.*, at 30, emphasis added). Immediately prior to this stipulation and waiver, the Circuit Court had clarified the damages cap consequence of Insight's position:

> Now that leaves I know Mr. Sexton's motion for partial summary judgment, which in essence is, if I understand correctly, is that through request for admissions that [Insight] and perhaps others admitted that they're not healthcare providers under the statute, and as a result of which Mr. Sexton urges that partial summary judgment ought be granted to make clear that they do not fall under the malpractice cap.

(*Id.* at 28, emphasis added). Insight knew its admissions, stipulations and waivers held weight of law:

> We responded to all of them the requests for admissions timely, admitting that we . . . that we're not a healthcare provider. So what I don't understand is why we're seeking an advisory opinion from the Court, when by operation of law we've already been found to be not a healthcare provider.

(*Id.*, at 29). Naturally, the Circuit Court then granted the motions for partial summary judgment from the bench, and orders were subsequently tendered and entered.

In the next days, Insight noticed the removal of the remaining non-Wingate cases. But, the federal court in Roanoke remanded all the cases a month later on May 10, 2013. (Decl. of Sexton, MDL Doc. # 1161, ¶ 13). In the meantime, numerous key fact depositions were taken, essentially insuring Insight's culpability for the injuries at issue. Thereafter, on June 26, 2013, Insight filed Motions for Leave to Amend its Admissions (in 11 cases) and for Reconsideration of Partial

Summary Judgment (in the 10 non-Wingate cases). (MDL Doc. # 1326-10–11).[6] Those motions were noticed for hearing in all of those cases on July 9, 2013.[7]

Insight's motions asserted that it had only recently learned that it was a healthcare provider due to facts that it discovered about its employees and their functions during depositions that occurred in May, 2013. (Id. at 4).[8] No one believed Insight's excuse for a litany of reasons, such as: (a) Insight's company name prominently features the word "Health"; (b) Insight maintains "Healthcare Professional Liability" insurance policies to whom Insight gave immediate notice of these complaints (e.g., MDL Doc. #1326-13); and (c) Insight advertises to the public as a healthcare provider to "patients" (MDL Doc. #1326-14). Insight knew who it was and what it did before and after any depositions in these cases. What Insight actually had learned in the interim was that it was in trouble on liability.

At that July 9, 2013 Roanoke hearing, Insight's oral argument tracked the incredible "new information learned through discovery" arguments contained within its motions. (MDL Doc. #1326-15). The Roanoke Court expressly indicated on the record that its ruling on one such case would apply to all:

> THE COURT: … I don't mean to make light of it. I am not disparaging the numbers in the notice, but, really, at this juncture if I *am* going to do it I am going to do it for *everybody in every case*, and if I am *not* going to do it I am *not going to do it for any cases*. I mean, the notice, *vis-à-vis* notices, seems to me doesn't really matter… The issue is the same regardless, isn't it?

(Id., at 15:23 – 16:12, emphasis added). Accordingly, there can be no credible argument by Insight that the Roanoke Court's subsequent letter opinion (issued in the Wingate case, as described below)

---

[6] Even in its Motions, Insight still maintained that it was an independent contractor of the physicians, rather than the other way around.

[7] MDL Doc. #1326-12. Identical notices were filed in all 10 non-Wingate cases.

[8] Bear in mind, IGPM has only two employees, Dr. Mathis and Dr. O'Brien. Everything that they do not do is done by Insight --- as Insight plainly knew all along.

6

did not apply to the motions pending in these cases. The Court had already announced on the record that a ruling in one would apply to all.

On October 31, 2013, the Roanoke Circuit Court issued its rulings on the outstanding motions by letter opinion styled in the Wingate case, denying Insight's motions to withdraw and change its admissions, and necessarily rejecting Insight's related and dependent Motions to Reconsider partial summary judgments previously entered on the healthcare provider issue. (MDL Doc. #1326-16, at 23-25). It found that Insight had "not met its burden under the first prong of Rule 4:11(b),"[9] and denied its motion to amend admissions.

For reasons explained in prior briefing (MDL Doc. #1326), counsel agreed to hold off on entering orders in the non-Wingate cases. Among other things, this left orders to be entered in 10 cases on Insight's Motion to Amend Requests for Admissions and Motion to Reconsider Partial Summary Judgment (to which Insight factually cannot argue that such issues were not previously argued in a hearing where Judge Dorsey said **on the record** that his rulings as to one would apply to all).

In late December 2013, the Trustee renewed his motion to transfer these cases to Boston; and, the Wingate case was resolved shortly thereafter.  After the Wingate case was resolved and dismissed in February 2014, the parties were focused primarily on whether the Trustee's motion as to the other cases would be successful.  Insight's counsel objected to setting any Roanoke trial dates until after the Plaintiffs filed amended complaints.  In so doing, Insight's counsel acknowledged the effect of the prior rulings by the Court as well as expectation that corresponding orders would be entered (entry of the outstanding demurrer orders was a necessary condition precedent to the filing of any

---

[9] (b) *Effect of Admission.* – Any matter admitted under this Rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission … the court may permit withdrawal or amendment when the presentation of the merits will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits. Rule 4:11(b) (emphasis added).

7

amended complaints in these cases). Throughout this process, Insight never indicated any notion of re-arguing the previously addressed motions.

After Judge Zobel announced on May 13, 2014 that she would be granting the Trustee's Motion, Insight's counsel revealed Insight's previously undisclosed plan to have the Boston court revisit issues on which orders were not yet entered in the Roanoke City Circuit Court. (Id. at 22). This conversation alerted plaintiffs' counsel to the need to present outstanding orders on these issues in the Roanoke Circuit Court. (Id. at 23).

Gentry Locke immediately prepared orders on the Roanoke Court's previous rulings, filed them with the Roanoke City Circuit Court, and sought a hearing for presentment. Defendant IGPM had no objection to the orders, but Insight did. Moreover, Insight's schedule prevented prompt presentation of the orders during the requested time frame (May 16, 2014), requiring instead that the presentment hearing be delayed for 6 weeks until June 27, 2014. (Id. at ¶ 24-25). Meanwhile, this Court entered an Order on June 5, 2014, granting the Trustee's renewed motion to transfer pursuant to 28 U.S.C. §§ 157(b)(5) and 1334. Because neither of those statutes supplies a removal or transfer process, the June 5 Order essentially enjoined the Roanoke Court to transfer the cases "promptly." The Notice of Removal required by the June 5 Order and filed with the Roanoke City Circuit Court states only that "[p]ursuant to 20 U.S.C. § 157(b)(5), the entire court case file pertaining to this action shall be transferred from the Roanoke City Circuit Court to the clerk of the District of Massachusetts." (e.g., MDL Doc. # 1326-17).

After conducting a telephone conference with all counsel on June 17, 2014, the Roanoke Circuit Court issued a letter/order on June 20, 2014, noting that the files were "presently incomplete due to orders not having been tendered on certain rulings that were previously made." (MDL Doc. #1326-18). Judge Dorsey's letter acknowledged argument by Insight that the Court was "without

8

jurisdiction to enter orders, even orders reflecting prior rulings, without which these files are incomplete." (Id.).  The same letter ordered the Clerk of the Roanoke City Circuit Court to transfer the cases after receipt of the orders that he would enter on June 27, 2014. On June 27, 2014, Judge Dorsey entered orders in each of these cases denying Insight's Motion for Leave to Amend the admissions at issue, specifically incorporating the Court's October 31, 2013 letter opinion in the Wingate case. (e.g., MDL Doc. #1326-19).  The cases were thereafter transferred, complying with the injunctive Order of this Court. Whether the Roanoke Court's orders in this regard were proper and timely is the subject of a companion motion filed by Insight (MDL Doc. # 1285), and the Gentry Locke Plaintiffs have responded separately as to those issues.

**Argument and Authority**

1.  **Insight's Virginia law admissions have been adjudicated, and Virginia law applies to them.**

   a.   <u>Virginia law applies to Insight's admissions.</u>

These are Insight's <u>second</u> motions to reconsider partial summary judgment and second motions for leave to amend its previous admissions.  Having had its motions denied under Virginia law, Insight now seeks to revisit the issue under Federal Rule of Civil Procedure 36.  Insight does not articulate why these admissions, made in Virginia state court under Virginia state law, should be governed by Federal Rule 36.  Instead, Insight glosses over that question by asserting that Virginia Supreme Court Rule 4:11 is "virtually identical" to Federal Rule 36.  But, there are differences in the text of the two rules.  The Virginia Rule requires a 'first prong' showing that the "presentation of the merits will be subserved" by such a withdrawal.  Virginia interprets this to require that admissions may only be withdrawn or amended if <u>not</u> doing so would "practically eliminate any presentation of the merits of the case." *Shaheen v. County of Mathews*, 265 Va. at 473 (Va. 2003).

9

Federal Rule of Civil Procedure 36 states the first prong standard differently, allowing amendments that "promote the presentation of the merits of the action." Notwithstanding the textual difference, it appears the federal rule has been interpreted to be somewhat similar in substance. See *Pritchard v. Dow Agro Scis.*, 255 F.R.D. 164 (W.D. Pa. 2009). In *Pritchard*, the court found that Federal Rule 36 will only allow withdrawal or amendment if "'upholding the admissions would be to practically eliminate any presentation of the merits . . .'" *Id.* at 172 (quoting SCHWARZER, TASHIMA, & WAGSTAFFE, FEDERAL CIVIL PROCEDURE BEFORE TRIAL 11:2094 (2008)).

Regardless, and especially given the difference in statutory language, Virginia law still applies. Insight's effort to apply First Circuit case law and Rule 36 would confound the principles of judicial efficiency underlying multi-district litigation. According to Insight's argument, if a case is removed or otherwise moved from state court to federal court, federal law would apply retroactively to every pleading, motion, or discovery proceeding that took place in the state court. For that same reason, Federal Rule of Civil Procedure 81(c)(1) states that the Federal Rules only "apply to a civil action after it is removed from a state court." (emphasis added). In other words, the Federal Rules do not apply retroactively to every document, proceeding, and piece of discovery conducted in the originating state court. Nonetheless, Insight asks this Court to find that Federal Rule 36 applies to admissions it previously made in Virginia, according to Virginia law, and which were deemed binding by a Virginia court. Such a result is untenable. Virginia Rule 4:11 applies to these admissions. But, even if Rule 36 were applied, the result would be no different.

    b. The Roanoke City Circuit Court already considered these motions, and properly denied them.

Virginia law commands that "[a]ny matter admitted under this Rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission." Va. Sup. Ct. R. 4:11 (2013). As shown above, withdrawal or amendment is only permissible "**when the**

10

**presentation of the merits of the action will be subserved thereby** and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits." *Id.* (emphasis added).  As is evident from the Rule, Insight's initial burden was to show the presentation of the action's <u>merits</u> would be subserved by amending Insight's admission and denial. *Shaheen v. County of Mathews*, 265 Va. 462, 473 (2003).

This is a substantial burden, requiring a showing that upholding the admissions "would practically eliminate any presentation of the merits of the case." *Id.* at 474.  In other words, Insight would have to show it had admitted away the case. *Id.*  In *Shaheen*, for example, the County admitted it had not recorded a final order in the land records and that there was no index reference in the land records reflecting its ownership interest in the land at issue in the case.  The Virginia Supreme Court found that this admission, made as a result of a failure to timely respond, "admitted by default matters that were at the core of its case." *Id.  See also Erie Ins. Group v. Emert*, 33 Va. Cir. 269 (Fairfax 1994) (permitting amendment of only one of the defendant's many admissions that because it would have hindered presentation on the merits and denying amendment of the remainder).

Here, the Roanoke Circuit Court considered Insight's motion under applicable law, noting that <u>the question of healthcare status is unrelated to the merits of the case</u>: "[w]ith or without the damages cap, [Insight] is equally capable of disproving the elements of the plaintiff's claims, and refusing amendment will not practically eliminate [Insight]'s ability to challenge the plaintiff's case." (MDL Doc. #1326-16, at 24).  Both the requests and Insight's responses were made under Rule 4:11 of the Virginia Supreme Court Rules. Insight couldn't (and didn't try to) meet the heavy burden required by Rule 4:11, so the Roanoke court rightly denied Insight's motion. The Roanoke court was well within its discretion in making that decision. *Shaheen*, 265 Va. at 475.

Even if the standard was Federal Rule 36, the result would be the same, requiring that failure to amend would "practically eliminate any presentation of the merits . . ." *Pritchard*, 255 F.R.D. at 172; see also *Le v Cheesecake Factory Rests., Inc.*, 2007 US App LEXIS 5232 (5th Cir. 2007) (where parties failed to show their admissions affected the merits of their case, it would be improper to allow amendment or withdrawal of their admissions under Rule 36(b)). Applying this "merits" criterion, the *Pritchard* court allowed the amendment of admissions that admitted away the plaintiffs' entire causation argument and went straight to the substance of the plaintiffs' claims. *Id.* In contrast, the admissions at issue here relate only to a procedural issue that has nothing to do with the merits of the plaintiffs' claims or Insight's substantive defenses. The fact that Insight may have to pay more money does not affect the merits of these cases. Under either the Virginia or the federal standard, Insight did not meet — and could never meet — its burden for setting aside the admissions under Virginia law. The Court should decline to revisit this issue, which was properly decided under Virginia Rule 4:11.

2. **Even if the Roanoke Circuit Court had not already dealt with this issue, nothing has changed that would justify amendment or withdrawal of Insight's admissions, so Insight cannot meet its burden.**

   a. <u>Insight knew and had every reason to know it was a healthcare provider back in December, 2012.</u>

When Insight <u>Health</u> Corporation received the first complaint from the Roanoke Gentry Locke Plaintiffs, it had the same knowledge it did on July 9, 2013, and as it does now. It took over the Roanoke facility in 2010, and knew that it employed people engaged in providing diagnostic imaging services to its patients. It also received full and complete notice that its status as a healthcare provider was an issue when it received the complaints (each of which makes myriad allegations about Insight's duties and breaches as a healthcare provider). Likewise, when Insight provided notice to its insurance carrier under its "*Healthcare* Professional Liability" insurance policy, it knew of its status

12

(just as it did when it spent 100's of thousands of dollars procuring such "*Healthcare*" insurance). Insight's lack of knowledge or professed error in this regard is simply incredible, wholly unsupported by <u>any</u> evidence, and wholly contradicted by <u>all</u> evidence.

Insight had the obligation in responding to requests for admission under Virginia law to conduct reasonable inquiry as to whether it would qualify as a healthcare provider under Virginia Code § 8.01-581.1. Virginia Rule 4:11 states: "An answering party may not give lack of information or knowledge as a reason for failure to admit or deny <u>unless he states that he has made reasonable inquiry and that the information known or readily obtainable by him is insufficient</u> to enable him to admit or deny" (emphasis added). Insight chose not to state that it lacked the necessary information after reasonable inquiry. Instead, it asserted through its admissions and denials that it did have such information readily available to it. Insight could not have represented more certainty when its counsel waived the damages cap to the Roanoke Court, **"We're saying we're not a healthcare provider. We're not subject to the cap. We can't use that as an affirmative defense or a defense to damages."** (MDL Doc. #1326-9, at 30). Insight has since learned nothing about its business or its employees' functions that it did not know when it made those stipulations and waivers to the Roanoke Court on April 5, 2013 in each of these cases.

For good reason, Insight offers no affidavit or declaration from any Insight employee (or attorney) stating that Insight did not know it was a healthcare provider, or that such information was not readily available to it. Insight's prior counsel sought to persuade the Roanoke Court that Insight had only learned of these facts during depositions. (MDL Doc. #1326-10, at 4). To its credit, Insight's current motion stops short of this profoundly incredible argument by asserting a lesser version --- that "Insight subsequently determined that its [admissions] … were incorrect." (MDL Doc. #1282, at 3). However, even the current toned-down excuse is incorrect and unsupportable.

Insight actually just determined that its prior intentional and strategic admissions were *ill-advised*. Insight made an informed, strategic decision to answer the requests for admissions in the manner that it did, to stipulate to the Roanoke Court the way it did, and to waive damages defenses the way it did. Having changed its mind as to strategy, it now wants this Court to allow it to take all of these back.

     3.     **The admissions at issue do not relate to pure matters of law; and, even if they did, Insight waived such objection when it responded to the requests and when it stipulated to the Roanoke Court.**

Insight argues incorrectly that its admissions and stipulations relate to pure questions of law. (MDL Doc. # 1282, at 7). Simultaneously, Insight's memorandum asserts that it meets the same law's definition of "health care provider" because it "employs or engages a licensed health care provider and … primarily renders health care services." (*Id.* at 8). In performing this exercise, Insight apparently does not realize it is doing exactly what it was asked to do 18 months ago in the Plaintiffs' requests for admission—applying law to facts. It is matching up the facts which it knows (i.e., that it employs or engages licensed health care providers) — with the law, which is plain (that such persons or entities meet the statutory definition). Va. Code § 8.01-581.1. The Gentry Locke Plaintiffs' requests for admission asked for nothing more. Virginia law (as with federal procedure) specifically allows requests for admission regarding just this sort of application of law to facts.[10]

While resolving disputes over statutory interpretation in Virginia (as everywhere else) is a matter of law, no dispute has been presented in these cases over the meaning of Va. Code § 8.01-581.1. Unlike the *Simpson v. Roberts*[11] case cited by Insight, there is no controversial statutory exercise required here—as demonstrated by Insight's conclusions. By contrast, in *Simpson*, the Virginia Supreme Court was faced with a truly undecided issue as to whether an unborn fetus (not considered a person under Virginia law) could otherwise still be considered a "patient" under the

---

[10] Compare Virginia Rule 4:11(a) and FRCP 36(a)(1)(A).
[11] 287 Va. 34, 752 S.E.2d 801 (2014).

statutory definition of malpractice. Contrary to Insight's implication, there is no sweeping proclamation in *Simpson* that all considerations of the malpractice act definitions present pure issues of law. Plainly they do not. Insight is similarly unaided by its citations to *Alcoy v. Valley Nursing Homes, Inc.*, 272 Va. 37, 43, 630 S.E.2d 301, 304 (2006)[12] and *Adventis, Inc. v. Consol. Prop. Holdings, Inc.*, 124 Fed Appx. 169 (4th Cir. 2005).[13] As demonstrated aptly by Insight's memorandum, all that was required for the admissions here was the application or law to facts, an exercise approved under both Virginia law and federal procedure.

4. **Insight makes no argument to avoid the impact of its admissions, waivers and stipulations made to the Roanoke Court.**

In addition to its responses to requests for admission, Insight's attorney made even stronger admissions and waivers to the Roanoke Court that were deliberate, clear and unambiguous: ***"We're saying we're not a healthcare provider. We're not subject to the cap. We can't use that as an affirmative defense or a defense to damages."*** (MDL Doc. #1326-9, at 30). While there is no basis for disregarding or amending the underlying admissions provided to the Gentry Locke Plaintiffs, Insight has not even presented argument for setting aside the effect of these deliberate stipulations/waivers upon which the Roanoke Court was plainly invited to rely. Unquestionably, Insight's attorney **waived** the benefit of the malpractice cap, which is the underlying purpose for Insight's motion.

5. **Insight cannot satisfy the requirements for reconsideration of partial summary judgment, even if its admissions are not set aside.**

    a. The case law cited by Insight conclusively prevents the relief requested.

---

[12] Virginia Court was required to interpret whether the statutory definition of "health care" applied to the rape of an elderly patient committed outside the scope of any medical procedure or treatment).

[13] Holding that district court erred in disregarding the parties Rule 36 admissions, the Fourth Circuit simply noted in *dicta* that parties may not request pure admissions of law from each other. *Id.* at 172. The Fourth Circuit did not consider the parties' respective admissions (that their marks were confusingly similar) to meet such criterion; and it did not even discuss this possibility.

Insight relies upon *Tomon v. Entergy Nuclear Operations, Inc.*, C.A. No. )5-12539-MLW, 2011 U.S. Dist. LEXIS 95425, at *6-7 (D. Mass. Aug. 25, 2011). There, this Court stated a fundamental prohibition that motions to reconsideration "are not to be used as 'a vehicle for a party to undo its own procedural failures or allow a party to advance arguments that could and should have been presented to the district court prior to its judgment.'" *Id.*, (emphasis added), citing *United States v. Allen*, 573 F.3d 42, 53 (1st Cir. 2009). This threshold requirement must be met before any consideration as to other matters such as newly discovered evidence, manifest error of law, or clear injustice. And, Insight cannot meet it. Insight cannot deny that its admissions, stipulations and waivers of non-provider status were and are the result of its own deliberate choices. Its regret over those choices is only that—and, this Court should not serve as Insight's "Re-Do" button. Everything about Insight's original and now-renewed motion for reconsideration proclaims that it is merely advancing arguments that it could and should have made at the summary judgment hearing on April 5, 2013. It is seeking to "undo its own procedural failures" (e.g., admissions, stipulations and waivers). This is why Insight's prior counsel attempted the impossible task of couching Insight's first motion to reconsider based on newly discovered evidence. But, Insight has been the captain of its own destiny; and it has nobody else to blame.

      b.  <u>Although the Court need not reach such an inquiry, there is no manifest error of law here</u>.

In support of its demand to reverse the partial summary judgment orders in these ten cases, Insight claims the orders establish a *manifest error of law*. This standard of review is not even reachable here for the reasons noted above. But, if it were, it is formidable and not satisfied under the facts at issue. Insight claims — with absolutely no support — that the Roanoke Court failed to take into consideration that the Plaintiffs "assert five causes of action against Insight, all of which fall under the Virginia Medical Malpractice Act . . ." (MDL Doc. # 1282, 11–12). That assertion is

16

demonstrably incorrect.  Judge Dorsey explicitly listed and described the five counts in question in his October 31, 2013, opinion underpinning his ruling that rejected Insight's motion to reconsider the partial summary judgment motions.  (MDL Doc. #1326-16, at 3–4).

In that opinion Judge Dorsey also makes it clear that at least two counts (Virginia Consumer Protection Act and Fraud) are based not on the treatment itself but on the representations made to plaintiffs about the source and quality of the methylprednisolone acetate.  (*Id.*, at 9) ("The plaintiff's VCPA claim is based on the representations made to [a decedent] regarding the treatment he received.").  Similarly, the fraud claim was based on allegations that Insight "actively misrepresented the compounded drug . . ."  (*Id.* at 15).  In other words, these counts are based on misrepresentations—not substandard or negligent treatment.  The Roanoke Court's logic is sound when one explores the nature of these claims, and the same logic applies to the negligence *per se* claims by all Gentry Locke plaintiffs.

### i. **Virginia Consumer Protection Act**

The Gentry Locke plaintiffs' Virginia Consumer Protection Act ("VCPA") claims are unrelated to allegations of medical negligence or medical treatment.  In order to show Insight violated the VCPA,  the plaintiffs have asserted that they engaged in consumer transactions with Insight, that Insight supplied goods—in this case, the methylprednisolone acetate ("MPA"), and that that Insight misrepresented goods as those of another, misrepresented the source of the goods, and misrepresented the goods were of a particular standard, quality, grade or model (MDL Doc. #1326-2, ¶¶ 179–183). These allegations would not change even if Insight was selling the plaintiffs used cars.  The VCPA claims, therefore, are not based on medical treatment, but rather on the misrepresentations Insight intentionally made about the MPA and its provenance.

### ii. **Fraud**

17

The elements of fraud in Virginia are: "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *Spence v. Griffin*, 236 Va. 21, 28, 372 S.E.2d 595, 598 (1988) (quotation omitted). Plaintiffs' complaints set out those elements in full detail, and those elements are essentially unrelated to the question of medical treatment or the healthcare patient-provider relationship. Much like the VCPA, the Gentry Locke plaintiffs' fraud claims are based on misrepresentations Insight made in its billing and other documentation, in order to make the plaintiffs and their insurers and personal care providers believe that they had received a higher quality drug made by a reputable source.

### iii. Negligence *per se*

In Virginia, a negligence *per se* is imposed where the defendant (1) violated a statute enacted for public safety, (2) the plaintiff belongs to the class of persons for whose benefit the statute was enacted, (3) the harm suffered was of the type against which the statute was designed to protect, and (4) that the statutory violation was a proximate cause of the injury. *Halterman v. Radisson Hotel Corp.*, 259 Va. 171, 176-77, 523 S.E. 2d 823, 825 (2000). The plaintiffs' negligence *per se* counts derive from the Virginia Drug Control Act ("VDCA"), Va. Code § 54.1-3400, *et seq.*, which itself requires no showing of medical treatment. The VDCA prohibits (in pertinent part):

1. The manufacture, sale, or delivery, holding or offering for sale of any drug, device, or cosmetic that is adulterated or misbranded.
   . . .

3. The receipt in commerce of any drug, device, or cosmetic that is adulterated or misbranded, and the delivery or proffered delivery thereof for pay or otherwise.

Va. Code §§ 54.1-3457(1) and (3) (see also, e.g., MDL Doc. #1326-2, ¶¶ 172–173) (alleging Insight violated both these sections of the VDCA). As is evident, neither of the above sections of the VDCA

18

require a medical healthcare status, a patient-provider relationship, or any of the other hallmarks of an action based on medical negligence.

### iii. **Judge Dorsey did not protect Insight from its own actions.**

Insight also argues that Judge Dorsey committed a second "manifest error of law" by accepting its waiver and admissions and failing "to conduct an independent legal analysis of whether Insight met the statutory definition of a health care provider under Virginia Code Section 8.01-581.1 . . ." (MDL Doc. # 1282, at 13). In other words, Insight believes that Judge Dorsey did not serve as an effective referee in Insight's battle with itself.[14] Setting aside the propriety of this dubious position, Insight provides no case law or evidentiary record to support this factual premise. Insight is essentially engaging in rank speculation and second-guessing, asking this Court to re-examine the issue *de novo*.

c. Insight's motion is not concerned with equity, and there is no injustice in disallowing Insight's efforts at approbating and reprobating.

Insight made a considered litigation strategy designed to cast blame on the physician co-defendants and deny duties to the injured plaintiffs. It now professes concern for the same injured plaintiffs, asserting that it does not want certain of those plaintiffs to be favored over others with regard to the damages cap. Thus, Insight argues that failing to vacate these ten orders would be "clearly unjust"—to the other plaintiffs who have sued Insight. But the question under relevant case law is whether failing to vacate the partial summary judgment orders would be clearly unjust to the party seeking to vacate the order, not to other plaintiffs in an MDL. *See*, *e.g.*, *Tomon*, 2011 U.S. Dist. LEXIS 95425, at *8 (the district court's denial of a class action defendant's motion to dismiss was not clearly unjust to the defendant where it had failed to file the motion timely). Insight's effort to apply this analysis to other similarly situated plaintiffs in an MDL is misplaced.

---

[14] This is a bold argument coming from one of the nation's largest medical imaging companies that is owned by a multi-billion dollar private equity fund and maintains an office of general counsel.

As to prejudice for Insight, there is none. It had all the information at its disposal to determine whether it was a healthcare provider at the time it answered the admissions. *See, e.g.*, *State Bank of Pamplin v. Payne*, 156 Va. 837 (1931) (knowledge of a corporations employees is imputed to the employer). It made purposeful and strategic decisions that it now regrets. There is no injustice to Insight in rejecting its efforts to abandon the bed that it made.

### Conclusion

Insight has not shown a single reason why the Court should allow it to amend the admissions at issue, let alone retract the admissions, stipulations and waivers made to the Roanoke Court. These admissions do not impact the merits of the case—much less "practically eliminate the presentation of evidence," as required under Virginia law.  In fact, Insight's admissions will not impact the presentation of a single piece of evidence at trial. With or without withdrawal of its admissions, Insight cannot revoke its stipulations and waivers to the Roanoke Court. Even if it could, Insight cannot succeed on a Motion to Reconsider because it cannot even clear the fundamental hurdle of establishing that such motion is not being used as a vehicle to undo its own procedural failures or allow a party to advance arguments that could and should have been presented to the district court prior to its judgment.  Further, the summary judgment orders from June 27, 2013 contain no manifest errors of law and they are not clearly unjust to Insight (who strategically chose to represent in open court that it could not claim the medical malpractice cap).  The Court should decline Insight's invitation to vacate the Orders.

WHEREFORE, the Roanoke Gentry Locke Plaintiffs in the above-captioned cases respectfully ask the Court to deny Defendant Insight Health Corporation's Renewed Motion for Leave to Amend its Responses to Requests for Admission and to Supplement Insight Health Corporation's Motion for Reconsideration of Partial Summary Judgment.

23347/1/6764214v5

Dated: August 11, 2014

RESPECTFULLY SUBMITTED,


/s/ J. Scott Sexton
J. Scott Sexton, Esq. (VSB No. 29284)
H. David Gibson (VSB No. 40641)
James J. O'Keeffe (VSB No. 48620)
GENTRY LOCKE RAKES & MOORE, LLP
10 Franklin Road, S.E., Suite 800
P. O. Box 40013
Roanoke, Virginia 24022-0013
(540) 983-9300
FAX (540) 983-9400
sexton@gentrylocke.com
gibson@gentrylocke.com
okeeffe@gentrylocke.com

Counsel for Roanoke Gentry Locke Plaintiffs



## CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of the foregoing to be filed electronically via the Court's electronic filing system. Those attorneys who are registered with the Court's electronic filing system may access this filing through the Court's system, and notice of this filing will be sent to those parties by operation of the Court's CM/ECF system.


Dated: August 11, 2014                    /s/ J. Scott Sexton

23347/1/6764214v5