UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br>    All Cases | )<br>)<br>)<br>) MDL No. 1:13-md-2419-RWZ<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM IN SUPPORT OF CHAPTER 11 TRUSTEE'S MOTION FOR ENTRY OF AN ORDER LIMITING DISCOVERY AND STAYING THESE PROCEEDINGS WITH RESPECT TO NECC INSIDERS AND RELATED SETTLING PARTIES**

Paul D. Moore, the chapter 11 trustee (the "Trustee") of New England Compounding Pharmacy, Inc. d/b/a New England Compounding Center ("NECC"), respectfully submits this memorandum in support of his motion (the "Motion") for entry of an order limiting discovery of, and staying actions in this multidistrict litigation against, (i) those parties defined in the Plan Support and Funding Agreement dated May 2, 2014 executed by the Trustee and certain insiders of NECC as "Contributors"[1] and as "Contributor and Affiliate Released Parties"[2] (collectively, the "Insider Settling Parties"), (ii) NECC's affiliated landlord, and (iii) their respective insurers who have settled with the Trustee in the pending chapter 11 case (collectively, the Insider Settling Parties, NECC's landlord and the settling insurers shall be referred to as the "Settling

---

[1] The "Contributors" are Barry Cadden, Lisa Cadden, Carla Conigliaro and Gregory Conigliaro.

[2] The "Contributor and Affiliate Released Parties" are the Contributors and each of their respective spouses, children, parents, and other nuclear family members of each Contributor, all trusts under which the Contributors or their spouses or family members are settlors, trustees, or beneficiaries, the Affiliated Entities, and any other entities in which the Contributors or their spouse, children or other nuclear family members hold an interest, and those entities' successors, assigns, and predecessors.

Parties"), as described in further detail below.  In support of the Motion, the Trustee states as follows:

## I. Background

### A. Commencement of Chapter 11 Case and Appointment of Trustee

On December 21, 2012 (the "Petition Date"), NECC filed a voluntary petition for relief pursuant to chapter 11 of the United States Bankruptcy Code with the United States Bankruptcy Court for the District of Massachusetts (the "Bankruptcy Court").  The Bankruptcy Court subsequently entered an order authorizing the appointment of a chapter 11 trustee pursuant to section 1104(a) of the Bankruptcy Code.  *See* Bankruptcy Doc. No. 92.  Mr. Moore was thereafter appointed chapter 11 trustee of the NECC estate.  *See* Bankr. Doc. Nos. 98, 99.

### B. NECC's Prepetition Operations

Prior to the Petition Date, NECC operated as a compounding pharmacy.  Beginning in September 2012, reports began to surface of several patients who contracted fungal meningitis (the "Outbreak") after receiving injections of preservative-free methylprednisolone acetate ("MPA") compounded by NECC.  An investigation was initiated by the Massachusetts Department of Public Health ("MDPH") and, two days later, on September 26, 2012, NECC issued a voluntary recall of three suspect lots, containing 17,646 doses of MPA that NECC had distributed to over 14,000 patients.  The Centers for Disease Control and Prevention ("CDC") reported that, as of October 23, 2013, 64 people had died and 751 individuals had fallen ill.[3]

The Outbreak has resulted in thousands of claims from personal injury claimants against NECC and others.  NECC asserts that it initiated its chapter 11 case in response to the volume

---

[3] Reported at http://www.cdc.gov/HAI/outbreaks/meningitis-map-large.html#casecount_table. The CDC has not updated the case counts since October 23, 2013 and indicates that further updates to the case counts are not anticipated.

and wide geographic distribution of cases it confronted.  Indeed, more than 300 separate lawsuits have been joined in this multidistrict litigation (the "MDL").  In addition, more than 3,300 claims asserting injury from injections of MPA have been submitted in the NECC chapter 11 case.

Approximately three months prior to the Petition Date, NECC suspended the operation of its business.  NECC also surrendered its Massachusetts pharmacy license and laid off most of its employees.  The MDPH also has temporarily barred former pharmacists for NECC from practicing pharmacology.

### C. The Adversary Proceeding

On January 24, 2013, the Official Committee of Unsecured Creditors in the NECC chapter 11 case (the "Committee"), on behalf of NECC's bankruptcy estate, commenced an adversary proceeding in the Bankruptcy Court (Adv. Proc. No. 13-01040) (the "Adversary Proceeding").  In its complaint, the Committee sought to avoid certain payments to or for the benefit of NECC insiders as preferential and constructively fraudulent transfers.  The Committee also sought to disallow claims that NECC insiders might assert against NECC and to recover damages attributable to alleged breaches of fiduciary duties of loyalty and care that the insiders allegedly owed to NECC in their capacity as directors of NECC.  Following his appointment, the Trustee was substituted for the Committee as the plaintiff in the Adversary Proceeding.

### D. Other Actions

In separate actions distinct from the Adversary Proceeding, numerous creditors have alleged that certain Insider Settling Parties are liable to them for various acts and omissions that resulted in the alleged contamination of NECC's products that allegedly caused grievous personal injury and death.  Many of those actions have been consolidated in this MDL.  The theories of liability are varied; at bottom, certain Insider Settling Parties are alleged to have caused the Outbreak or to have been complicit with those who caused the Outbreak in ways that

3

render them civilly liable for the Outbreak. To the extent that any Insider Settling Parties caused, are responsible for or are complicit with those who caused or are responsible for the Outbreak, the Trustee believes he also has claims against those Insider Settling Parties for damage caused to NECC as a result of claims against NECC and its estate on account of death or personal injury, allegedly resulting from the Outbreak.

Upon information and belief, in addition to the potential and actual civil actions naming some or all of the Insider Settling Parties as defendants, there are ongoing criminal investigations involving some of the Insider Settling Parties. Moreover, upon information and belief, multiple state regulatory agencies are seeking to compel the former NECC pharmacists to permanently surrender their licenses.

### E.     The Settlements

The Trustee previously reported to this Court that he had reached an agreement in principle with certain insiders of NECC, NECC's landlord, and their respective insurers settling claims that the NECC estate had asserted against those parties in exchange for substantial cash contributions to the estate. The Trustee and the respective settlement counterparties subsequently finalized and entered into the following agreements:

(i) that certain Plan Support and Funding Agreement (the "Insiders Settlement Agreement") by and among the Trustee and Barry and Lisa Cadden, Carla Conigliaro and Gregory Conigliaro, all insiders of NECC;

(ii) that certain GDC Insurance Settlement and Release Agreement (the "GDC Settlement Agreement") by and among the Trustee and GDC Properties Management, LLC ("GDC"), its insurer, Preferred Mutual Insurance Company ("Preferred Mutual"), and certain individuals covered under GDC's insurance policies (the "Individual GDC Insureds"); and

(iii) that certain Plan Support and Settlement Agreement (the "<u>Insurers Settlement Agreement</u>") by and among the Trustee and NECC's primary and excess liability insurance carriers, Pharmacists Mutual Insurance Company ("<u>PMIC</u>") and Maxum Indemnity Company ("<u>Maxum</u>," and together with PMIC, the "<u>Insurers</u>"), and certain NECC insiders insured under the relevant insurance policies (the "<u>Individual Insureds</u>").

In early May 2014, the Trustee filed motions in the Bankruptcy Court seeking approval of the three settlements (collectively, the "<u>Settlements</u>").  *See* Notice of Chapter 11 Trustee's Motions for Bankruptcy Court Approval of Settlements with NECC "Insiders", NECC Insurers, and GDC Properties Management, LLC and its Insurer [Doc. No. 1106].  Each of the Settlements is briefly summarized below.

### a. The Insiders Settlement

The Trustee's investigation of, and settlement negotiations with, the Insider Settling Parties spanned many months and focused on many complex issues and theories.  After painstaking review of the results of his investigation, and in consultation with his financial advisors, the Committee, and the Plaintiffs' Steering Committee (the "<u>PSC</u>"), the Trustee concluded that the contemplated settlement, as set forth in the Insiders Settlement Agreement, will provide recovery of more funds than likely would have been available under applicable law if the Trustee succeeded in bringing suit against the Insider Settling Parties for their alleged acts and omissions related to the prepetition operations at NECC and the alleged harm caused by the Outbreak, without the burden, expense, delay and uncertainty of protracted litigation and likely appeals.

Pursuant to the Insiders Settlement Agreement, the Insider Settling Parties will contribute $47.75 million in cash to the NECC estate and assign 75% of the net funds realized from the sale

of their respective interests in certain NECC affiliates, 100% of any "Non-Disclosed Assets" (as that term is defined in the Insiders Settlement Agreement), 90% of anticipated federal, state and local tax refunds, as well as the Insider Settling Parties' interests in certain insurance policies. The Insiders Settlement Agreement further provides that, in exchange for these payments and assignments, NECC's chapter 11 plan shall grant the Insider Settling Parties releases of all claims against them relating to NECC, NECC's operations or its activities, including, but not limited to, those operations and activities alleged to have resulted in the Outbreak.  The Insider Settling Parties also have agreed to support (to the extent they are entitled to vote), or at least not oppose or object to, the Trustee's chapter 11 plan.  *See* Insiders Settlement Agreement, Section 4.  Additionally, both the Committee and the PSC executed an Addendum to Plan Support and Funding Agreement stating that they are in favor of the Insiders Settlement Agreement and support the compromise and settlement embodied therein.

### b. *The GDC Settlement*

GDC is NECC's landlord at NECC's former principal place of business in Framingham, Massachusetts (the "Facility").  The GDC Settlement Agreement resolves claims (i) by the Trustee against GDC and the Individual GDC Insureds relating to the conditions at the Facility and operations by affiliates of GDC at the Facility that may have contributed to the alleged contamination of products compounded by NECC, (ii) claims by GDC and the Individual GDC Insureds against NECC, including claims related to the conditions at the Facility and NECC's and the estate's lease, use, and occupancy of the facility, and (iii) coverage disputes between and among GDC, Preferred Mutual and the Individual GDC Insureds regarding the existence and scope of Preferred Mutual's obligations if any, under two insurance policies issued to GDC.  The GDC Settlement is a complete settlement of all claims between and among the Trustee, GDC, Preferred Mutual and the Individual GDC Insureds (collectively, the "GDC Settlement Parties").

Subject to the terms and conditions thereof, the GDC Settlement Agreement will result in a waiver and release of all claims among the GDC Settlement Parties and the payment of $3,750,000 by Preferred Mutual to the Trustee for the benefit of NECC's estate.

### c. The Insurers Settlement

The Insurers Settlement Agreement provides that the Insurers will pay to the Trustee, within one month following Bankruptcy Court approval thereof, the aggregate amount of $25.2 million, which amounts will be used by the Trustee to pay administrative expenses, as well as to provide partial funding for the Trustee's contemplated chapter 11 plan. Further, PMIC will continue, until the effective date of the chapter 11 plan, to fund costs of defense for NECC and other insureds under certain policies. Although the Trustee and the Insurers have never reached agreement as to the Insurers' liability under the relevant policies, the Insurers Settlement Agreement provides the estate with, among other things, substantial additional funds, without the need for costly, complex and protracted litigation regarding the Insurers' alleged coverage defenses. In exchange for these payments, and the funding of the additional defense costs, the Insurers shall receive releases upon the effective date of NECC's chapter 11 plan.

### d. Approval of the Settlements

On July 14, 2014, the Bankruptcy Court held a hearing on the proposed Settlements. Thereafter, on July 31, 2014, the Bankruptcy Court entered orders approving each of the Settlements [Bankruptcy Doc. Nos. 970, 971, and 972].

Collectively, the three Settlements stand to bring approximately $100 million of assets and cash into the NECC estate and represent a significant step towards funding a chapter 11 plan that will furnish a mechanism to provide meaningful compensation to personal injury claimants with allowed claims who have suffered death, grievous injuries and illnesses from the administration of allegedly contaminated medications compounded by NECC. The Settlements

serve as the centerpiece of a chapter 11 plan, which the Trustee hopes to propose and confirm before the end of 2014, that will maximize the recovery of all creditors on account of their allowed claims.

The Settlements call for the Trustee to seek a stay of these MDL proceedings with respect to the Settling Parties, and to address the scope of discovery permitted against the Settling Parties, once the Settlements have been approved.  *See, e.g.*, Insiders Settlement Agreement [Doc. No. 1106-1]; Chapter 11 Trustee's Motion to Compromise Controversies and to Approve Plan Support and Funding Agreement, and Related Escrow Agreement, with Certain Insiders and Affiliates of Debtor, and for Certain Related Relief [Bankruptcy Doc. No. 712], at 12-13.  The Insiders Settlement Agreement specifically provides that, within ten business days of entry of an order by the Bankruptcy Court approving the Settlements, the Trustee shall file a motion with this Court seeking an order staying litigation against the Insider Settling Parties but permitting discovery of the Insider Settling Parties in connection with the prosecution or defense of claims against third parties.  Insiders Settlement Agreement, Section 3.2.  Similarly, the GDC Settlement Agreement and the Insurers Settlement Agreement call for the Trustee to use reasonable efforts to extend the stays currently in place for the benefit of the remaining Settling Parties.

Approval of the Settlements obviates the need for the continuation of litigation against the Settling Parties.  *See* Hearing Transcript at 47, May 13, 2014, *In re New England Compounding Pharmacy Cases Litigation* (MDL No. 13-2419).[4]  Although the Settlements resolve claims against the Settling Parties, the Trustee acknowledges that discoverable

---

[4] "Ms. Johnson: [G]iven the settlement, while the settlement has not been approved, it does appear that it will not be necessary for the PSC to file a master complaint against the affiliated
(Continued…)

information within the possession or control of the Settling Parties still may be relevant to actions against third party, unaffiliated defendants.

## II.     Relief Requested

The Trustee respectfully requests that this Court grant the Motion and enter an order staying the MDL proceeding, and limiting discovery therein, with respect to the Settling Parties. Specifically, the Trustee requests that such order provide for:

(i)   a prohibition against any party to the MDL seeking dispositive relief against the Settling Parties;

(ii)  a prohibition against any party to the MDL seeking any form of prejudgment security from or against the Insider Settling Parties or their assets, including, but not limited to, any attachments, injunctions, writs or orders of any nature; and

(iii) the permissibility of discovery against the Estate Parties and the Insider Settling Parties, but only to the extent the discovery is relevant to the prosecution, or defense, of claims against defendants other than the Estate Parties or the Insider Settling Parties.

Throughout the course of the MDL, this Court has effectively stayed all litigation pertaining to the so-called "Affiliated Defendants," which includes, among others, the Insider Settling Parties and GDC, in order to afford the Trustee and the Settling Parties the ability to focus on and negotiate a settlement without the burden and expense of discovery and to defer determining the scope and manner of discovery that would be appropriate until it was known if a settlement could be achieved, and with whom. This was accomplished through a stay of

---

(Continued…)

defendants."

discovery as to the Affiliated Defendants and the continuance of the deadline by which the PSC must file a master complaint against the Affiliated Defendants.  *See, e.g.*, MDL Order No. 6, at 13, June 28, 2013, MDL No. 13-2419 [Doc. No. 209] ("Formal discovery of NECC and the affiliated defendants shall remain temporarily stayed"); Hearing Transcript at 47, May 13, 2014, *In re New England Compounding Pharmacy Cases Litigation* (MDL No. 13-2419) (continuing PSC's deadline to file master complaint against Affiliated Defendants to September 2, 2014).

In objecting to prior requests by the PSC and others to lift the discovery stay in the MDL, the Trustee noted that his objection was "with respect to when the discovery stay will be lifted and the scope of discovery, not whether it will be lifted at all."  Chapter 11 Trustee's Opposition to Defendant Liberty Industries, Inc.'s Motion to Lift the Discovery Stay with Respect to the Affiliated Defendants [Doc. No. 1263], at 2; *see also* Hearing Transcript at 17-19, June 19, 2014, *In re New England Compounding Pharmacy Cases Litigation* (MDL No. 13-02419) ("The Trustee's position has been and continues to be that lifting the discovery stay is premature . . . the appropriate time to take this up is after Judge Boroff has either approved the settlement or not approved the settlement").  The Trustee's goal was to finalize and obtain approval of the Settlements before proceeding with potentially unnecessary, time consuming and costly discovery and litigation in the MDL.

The Bankruptcy Court has now approved the Settlements.  Accordingly, the Trustee respectfully requests that this Court stay these MDL proceedings as they pertain to the Settling Parties and condition discovery of the Settling Parties in accordance with the terms of their respective settlement agreements.

### A. A Stay of the MDL as to the Insider Settling Parties is Necessary and Appropriate

In accordance with Section 3.2 of the Insiders Settlement Agreement, the Trustee respectfully requests that this Court enter an order staying the MDL as it pertains to the Insider

Settling Parties through the earlier of (a) the Plan Effective Date, as that term is defined in the Insiders Settlement Agreement, or (b) termination of the Insiders Settlement Agreement pursuant to Section 11 thereof.  The Insiders Settlement Agreement further provides that the requested stay order is to include:

    (i)    a prohibition against any party to the MDL seeking dispositive relief;

    (ii)    a prohibition against any party to the MDL seeking any form of prejudgment security, including, but not limited to, any attachments, injunctions, writs or orders of any nature with regard to the Insider Settling Parties; and

    (iii)    the permissibility of discovery against the Estate Parties[5] and the Insider Settling Parties, but only to the extent the discovery is relevant to the prosecution, or defense, of claims against defendants other than the Estate Parties or the Insider Settling Parties.

*See* Insiders Settlement Agreement, Section 3.2.

The granting of the stay contemplated by the Insiders Settlement Agreement is critical to the implementation and consummation of the settlement terms agreed to by the Trustee and the Insider Settling Parties.  Specifically, the Insiders Settlement Agreement provides that the Insider Settling Parties will fund their respective "Initial Plan Deposits," which total, in the aggregate, nearly $50 million, only after an order staying these MDL proceedings has been entered.  *See* Insiders Settlement Agreement, Section 2.1.

Additionally, the requested relief will preserve the benefits of the Insider Settlement Agreement without impeding the progress (and hopeful resolution) of those actions in the MDL

---

[5] The Insiders Settlement Agreement defines "Estate Parties" as "the Trustee, the Debtor, the Debtor's bankruptcy estate in the Chapter 11 case, the Committee, the Estate Representative, and

(Continued…)

11

that have not settled. Notwithstanding the stay of discovery to date, the Trustee agreed to provide some informal discovery to certain parties in the MDL. The Trustee provided, and continues to provide, informal discovery to parties participating in the mediation program established in this MDL. The Trustee likewise has informally produced more than 40,000 pages of documents which are generally available to all litigants in the MDL in the document repository maintained by the PSC. With a stay in place, the Court and the parties can address what additional discovery is appropriate, if any, and from which parties.

Absent such a stay, the Insider Settling Parties would be forced to proceed with litigation (and to incur the associated costs), thereby depriving them of an important benefit they obtained as an incentive for them to settle. The failure to grant the stays would adversely impact the Trustee's ability to settle with other parties. Additionally, by permitting discovery to proceed with respect to claims against other parties, the Trustee limits the burden upon the Insider Settling Parties while ensuring that no third party is precluded from seeking discovery necessary for it to prosecute or defend claims against individuals and entities that are not Insider Settling Parties. Thus, those actions that have not settled will not be delayed on account of the settlement. The Trustee asserts that the requested stay of litigation and limitation of discovery against the Insider Settling Parties is both necessary and appropriate.

B.  <u>A Stay as to the Other Settling Parties is Also Necessary and Appropriate</u>

The GDC Settlement Agreement provides that the GDC Settlement Parties "shall each use good faith commercially reasonable efforts to permit (including in connection with relief sought by any such Party in proceedings in the MDL Court and the Bankruptcy Case) GDC,

---

(Continued…)

each of their respective successors and assigns."

Preferred Mutual and the Individual GDC Insureds to continue to have the benefit of the stays of litigation and discovery now applicable to them in connection with the Settled Claims pending the Plan Effective Date (with corresponding, continuing and permanent relief to be provided thereafter by the Plan itself)." GDC Settlement Agreement, at III.f.

Similarly, the Insurers Settlement Agreement provides that the Trustee and the Insurers "shall each use good faith commercially reasonable efforts to permit (including in connection with relief sought by any such Party in proceedings in the MDL Court and the Bankruptcy Case) the Settling Insurers to have the benefit of the stays of litigation and discovery now applicable to them in connection with the Released Tort Matters pending the Plan Effective Date (with corresponding and continuing relief to be provided thereafter by the Plan itself)." Insurers Settlement Agreement, Section 10(d).

The rationale for the continuance of such stays is the same as for the stay of litigation, and allowance of limited discovery, with respect to the Insider Settling Parties pursuant to the Insiders Settlement Agreement: to preserve the benefits of the settlements negotiated by the Trustee while permitting other litigation to go forward. Accordingly, the Trustee requests that this Court stay the MDL with respect to GDC, Preferred Mutual, the Individual GDC Insureds, the Insurers and the Individual Insureds. Additionally, discovery of such entities should be permitted, but only to the extent the discovery is relevant to the prosecution, or defense, of claims against defendants other than GDC, Preferred Mutual, the Individual GDC Insureds, the Insurers and the Individual Insureds.

### III. CONCLUSION

For all of the foregoing reasons, the Trustee respectfully requests that this Court grant the Motion and enter an order, substantially in the form attached hereto as <u>Exhibit A</u>, staying the MDL proceeding, and limiting discovery therein, with respect to the Settling Parties. Specifically, the Trustee requests that such order provide:

(i) a prohibition against any party to the MDL seeking dispositive relief against the Settling Parties;

(ii) a prohibition against any party to the MDL seeking any form of prejudgment security from or against the Insider Settling Parties or their assets, including, but not limited to, any attachments, injunctions, writs or orders of any nature; and

(iii) the permissibility of discovery against the Estate Parties and the Insider Settling Parties, but only to the extent the discovery is relevant to the prosecution, or defense, of claims against defendants other than the Estate Parties or the Insider Settling Parties.

Dated: August 14, 2014

                                                Respectfully submitted,

                                                DUANE MORRIS LLP

                                                */s/ Michael R. Gottfried*
                                                Michael R. Gottfried (BBO #542156)
                                                100 High Street
                                                Suite 2400
                                                Boston, MA 02110-1724
                                                Phone: (857) 488-4200
                                                Email: mrgottfried@duanemorris.com

                                                *Counsel for Paul D. Moore, Chapter 11 Trustee of New England Compounding Pharmacy, Inc. d/b/a New England Compounding Center*

**CERTIFICATE OF SERVICE**

I, Michael R. Gottfried, hereby certify that on August 14, 2014, I caused a copy of the foregoing document, which was filed using this Court's ECF system, to be served electronically upon those parties registered to receive ECF service.  This document was also served by first class mail, postage prepaid, upon the entities listed on the attached Service List.

/s/ *Michael R. Gottfried*
Michael R. Gottfried

## SERVICE LIST

Darrel Cummings, DC# 088532
South Bay Correctional Facility
P.O. Box 7171
South Bay, FL 33493

Alan M. Winchester
Harris Beach, PLLC
100 Wall Street
New York, NY 10005

Arthur P. Brock
Spears, Moore, Rebman & Williams, PC
801 Broad Street, 6th Floor
Chattanooga, TN 37402

Brett J. Bean
Hackney, Grover, Hoover & Bean
1715 Abbey Road, Suite A
East Lansing, MI 48823

C. Mark Hoover
Hackney, Grover, Hoover & Bean
1715 Abbey Road, Suite A
East Lansing, MI 48823

Cara E. Weiner
Spears, Moore, Rebman, & Williams, PC
801 Broad Street, 6th Floor
Chattanooga, TN 37402

Chad Trudeau
29 B Bellingham Road
Blackstone, Ma 01504

Christopher M. Wolk
Law Offices of Jay J. Blumberg, ESQ.
P.O. Box 68
Woodbury, NJ 08096

Clinton R. Shaw
Bonner, Kiernan, Trebach & Crociata, LLP
1233 20th St, N.W., Suite 800
Washington, DC 20036

Frank A. Gerolamo
Gerolamo, McNulty, Divis & Lewbart
121 South Broad Street, Suite 1400
Philadelphia, PA 19107

John B. Bennett
Spears, Moore, Rebman & Williams, PC
801 Broad Street, 6th Floor
Chattanooga, TN 37402

John T. Sly
Waranch & Brown, LLC
1301 York Road, Suite 300
Lutherville, MD 21093

Joseph R. Lang
Lenox, Socey, Formidoni, Giordano,
Cooley, Lang & Casey, LLC
3131 Princeton Pike
Building 1B, Suite 104
Lawrenceville, NJ 08648

Mary M. Bers
Office of Attorney General (TN)
P.O. Box 20207
Nashville, TN 37202

Randy J. Hackney
Hackney, Grover, Hoover & Bean
1715 Abbey Road, Suite A
East Lansing, MI 48823

Scott C. Bentivenga
Lewis Brisbois Bisgaard & Smith, LLP
550 West Adams Street, Suite 300
Chicago, IL 60661

Christopher T. Cain, Esq.
Thomas S. Scott, Jr., Esq.
Scott & Cain
Bank of America Building
550 W. Main Avenue, Suite 601
Knoxville, TN 37902

DM3\2968820.6