# Exhibit # 3

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| IN RE:<br><br>NEW ENGLAND COMPOUNDING PHARMACY, INC.,<br><br>Debtor. | Chapter 11<br><br>Case No. 12-19882-HJB |

### CREDITOR LIBERTY INDUSTRIES, INC.'S
### MOTION TO MODIFY THE AUTOMATIC STAY

Creditor, Liberty Industries, Inc. ("Liberty") hereby requests, pursuant to 11 U.S.C. § 362(d), Fed. R. Bankr. P. 4001(a)(1), 9006(d)-(f), 9014, and MLRB 4001-1(a) and 9013-1, that this Court modify the automatic stay to permit Liberty to seek limited discovery from New England Compounding Pharmacy, Inc. d/b/a New England Compounding Center ("NECC"). The discovery Liberty seeks is limited to information relevant to the allegedly defective construction performed by Liberty at the facility at which NECC operated, and whether and to what extent NECC followed protocols for cleaning, maintenance, testing, and inspection of its cleanrooms and cleanroom equipment and systems. Liberty also seeks, out of an abundance of caution, relief from the automatic stay in order to include allegations against NECC in answers to complaints as required in relevant jurisdictions that permit a defendant to assert allegations against a nonparty for allocation of fault purposes. As grounds in support of modifying the stay, Liberty states as follows:

1. On December 21, 2012, NECC filed for chapter 11 protection and an order staying all lawsuits or other actions against NECC was entered pursuant to 11 U.S.C. § 362(a).

2. On January 14, 2014, Liberty filed a proof of claim against NECC, and an amended proof of claim on March 27, 2014, as an unsecured creditor seeking contribution and

indemnification in connection with the multi-district litigation pending in the District of Massachusetts arising from tort claimants' use of NECC's products. *See* Claim Nos. 65-1 and 65-2; *see also* Case No. 1:13-md-002419-RWZ, *In Re: New England Compounding Pharmacy, Inc. Products Liability Litigation* ("MDL Action").

3. As of June 27, 2014, Liberty is a defendant in thirty-three (33) complaints filed in the MDL Action ("Complaints"). The claims against Liberty are based on its alleged design, manufacture, construction, and/or installation of cleanrooms at NECC's facility located at 697 Waverly Street, Framingham, Massachusetts ("Property"). *See e.g.* MDL Action, Dkt. No. 545 at ¶¶ 125 – 135 (Master Complaint).

## JURISDICTION

4. The subject matter of this motion is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(A), (G), and (O).

## STANDARD FOR RELIEF

5. 11 U.S.C. § 362(d)(1) permits relief from the automatic stay "for cause." *In re Wang Laboratories*, 1996 WL 87050 at *5 (D. Mass. Jan. 4, 1996) identified several factors to evaluate when deciding whether to lift an automatic stay in order to "allow adjudication of related matters, [including]: (1) whether the underlying litigation is connected to or might interfere with the bankruptcy case; (2) whether the hardship to the [party] by maintenance of the stay considerably outweighs the hardship to the debtor; and (3) whether the [party] has a probability of prevailing on the merits." As shown below, application of these factors conclusively supports granting the relief sought in this motion.

## ARGUMENT

### I. GOOD CAUSE EXISTS TO MODIFY THE AUTOMATIC STAY

6. Liberty is a "creditor" within the meaning of 11 U.S.C. § 101(10) and is a "party in interest" within the meaning of 11 U.S.C. § 1109(b).

7. Although the bankruptcy is connected to the underlying litigation, permitting Liberty to seek discovery and include allegations in its responsive pleadings will not interfere with the bankruptcy. Any hardship to NECC is outweighed by the hardship to Liberty if the automatic stay is not modified because, in that event, Liberty may not be able to prove its defenses.

8. Notably, Liberty is not seeking to modify the stay with respect to property of NECC or its estate. Rather, Liberty, as a third party, is seeking this relief to protect its own interests, including its ability to defend itself at trial, to pursue its contribution and indemnification claims against parties <u>other than</u> NECC, and to include <u>allegations only</u> against NECC as a nonparty in Liberty's answers to the Complaints. Furthermore, NECC is covered by policies of insurance which, even after the insurers participate in a settlement, will continue to provide defense costs to other insureds. *See* Dkt. No. 713-2 at 1, 9. Seeking discovery from NECC will not impair operations – there are none. NECC is not currently operating and its Trustee has indicated in its filings that NECC will not be reopening its doors. Pleading allegations against NECC as a nonparty likewise will have no bearing on NECC, because such allegations are only statements of fact that Liberty expects to prove to alleviate its own attributable fault. The allegations will not result in a liquidated claim against NECC or its estate.

9. As demonstrated below, good cause exists to permit Liberty to modify the automatic stay.

A. <u>**Liberty Should be Permitted to Seek Discovery from NECC**</u>

10. NECC is the entity that hired Liberty and contracted for the construction of three cleanrooms in 2006, 2006, and 2008, respectively, at 697 Waverly Street, Framingham (the "Property"). All of the allegations against Liberty are based on allegedly defective construction by Liberty for NECC at the Property. However, Liberty is not the only company that performed work at the Property. In fact, the limited information known to date indicates that other companies repaired and replaced the roof, and performed maintenance and repair work to the HVAC system (among other work performed since 2008 when Liberty was last at the Property). Liberty is defending claims against it based on the condition of the roof and the functioning of the HVAC system. Liberty requires access to NECC's records and an ability to seek testimony from NECC's corporate designee to determine whether NECC possesses any evidence that supports or refutes such claims.[1] NECC's corporate records, and a corporate designee, will likely provide evidence regarding not only the work that Liberty was hired to perform, but also the work performed by other contractors and subcontractors, the condition of the roof, the functionality of the HVAC system, and maintenance and repair work performed at the Property. Discovery regarding work performed by other contractors and subcontractors of NECC is critical to Liberty's defense in the MDL Action, as such records (and possibly testimony) may demonstrate that additional parties performed work subsequent to Liberty, and may have modified or damaged Liberty's work at the Property. Such evidence is critical to Liberty's

---

[1] A deposition of NECC is only a possibility because it is not clear whether NECC even has or can have a corporate designee pursuant to Fed. R. Civ. P. 36(b)(6). Even if it does, a deposition of NECC may be obviated by depositions of its former employees, officers, and directors.

ability to defend against the claims asserted against it, as well as identifying those responsible parties that may owe indemnity to Liberty.[2]

11. Discovery from NECC should also reveal whether and to what extent NECC followed its own internal protocols regarding cleaning and maintenance of the Property, as well as whether NECC performed required testing, inspection, and calibration of cleanroom equipment and systems. Cleanrooms require such tasks be performed regularly and on schedule. Liberty will be prejudiced if it cannot seek discovery from NECC regarding the extent to which it may have followed its own quality control procedures. Such evidence would be offered in support of allegations of fault of NECC as a nonparty as permitted in other jurisdictions (see *infra*).

12. Although Liberty received documents from NECC via the Plaintiffs' Steering Committee in connection with the Mediation Program in the MDL Action, the use of such documents is limited to settlement purposes only and therefore none of the "evidence" gleaned from those documents is admissible in court. *See* MDL Action Dkt No. 394 at ¶ II.H.5. Liberty requested that the Trustee and PSC mutually agree to waive the confidentiality provisions that apply to such documents, but Liberty has not yet received a response to that request as of the time of this filing. Should Liberty be unable to utilize those documents by agreement, it seeks relief to request production of such documents. It would be more efficient and less costly to waive the confidentiality provisions that apply to such documents, rather than to bear the cost of producing them again. Any additional documents that have not yet been produced could likely be provided at a lesser cost than what has been produced to date in connection with the Medication Program in the MDL Action.

---

[2] Liberty's Proof of Claim for indemnity is in excess of $25 million based on the claims asserted against Liberty to date in the MDL Action.

13.   Liberty needs to compile admissible evidence to offer in support of its defenses, its claims for contribution and indemnification, and its allegations that attribute fault to nonparties as permitted in a variety of jurisdictions. An inability to compile such evidence will unduly prejudice Liberty at trial and would amount to depriving Liberty of due process of law. Such prejudice is "cause" to modify the stay. *See Wang, supra. See also In re Johns-Manville Corp.*, 41 B.R. 926, 932 (Bankr. S.D.N.Y. 1984) (permitting discovery from debtor).

14.   Under the circumstances described herein, it is manifest that the hardship upon Liberty of maintaining the stay outweighs vastly the hardship to NECC of modifying the stay. Further, it is clear that permitting the discovery sought by Liberty will not interfere with this bankruptcy. Any time or expense incurred by NECC will have no measurable impact on distribution to creditors nor on the administration of the estate. Accordingly, the automatic stay should be modified to permit Liberty to seek discovery from NECC.

**B.   Liberty May Plead Allegations Against Nonparties to Reduce its Liability.**

15.   Out of an abundance of caution, Liberty is also seeking leave to include allegations against NECC as a nonparty in certain of Liberty's answers to the Complaints, although it is not believed that such allegations would violate 11 U.S.C. § 362. The Complaints were filed in Florida, Indiana, Massachusetts, New Jersey, and Texas and consolidated in the MDL Action. Liberty must file and serve answers to each of the Complaints, which must include affirmative defenses, cross-claims, and third-party claims as permitted and governed by the substantive law in each of the relevant jurisdictions, or risk waiving them. Such responsive pleadings begin to become due on July 14, 2014.

16.   To determine what law applies to the Complaints, the MDL Court applies the choice of law rules of the transferor court. *See e.g. In re Volkswagon and Audi Warranty*

*Extension Litig.*, 692 F.3d 4, 18-19 (1st Cir. 2012). The jurisdiction of each of the transferor courts applies one of three rules: 1) a presumption or rule of *lex loci*, or the law of the state where the injury occurred; 2) the "most significant relationship" test found in the Restatement (Second) of Conflict of Laws; or 3) the "functional approach" similar to the Restatement test.[3] Under each of these tests, the state where the plaintiff was injured is the relevant jurisdiction. Notably, none of the plaintiffs were injured in Massachusetts. Rather, they were injured in Florida, Indiana, New Jersey, and Ohio.[4]

17. The law that applies to <u>all</u> of the Complaints permits a defendant to assert allegations against a nonparty for purposes of allocating fault, thereby reducing that defendant's share of liability ("nonparty defense"). *See e.g.* FLA. STAT. § 768.81(3)(a)(1) (2011), IND. CODE §§ 34-51-2-8 and 34-51-2-14 (1998), N.J. COURT RULE 4:7-5(c) (1994), OHIO REV. CODE. ANN. § 2307.23(C) (2005), and TEX. CIV. PRAC. & REM. CODE ANN. § 33.004 (2011). These jurisdictions typically require the defendant to prove its case against the nonparty in order to be able to present the jury with the option of allocating some percentage of fault to the nonparty. *See e.g.* FLA. STAT. § 768.81(3)(a)(2) and IND. CODE §§ 34-51-2-15. Liberty must identify NECC as a nonparty in its responsive pleadings or be prejudiced from later asserting the defense

---

[3] Indiana applies a rebuttable presumption of *lex loci*. *See Simon v. United States*, 805 N.E.2d 798, 805-805 (Ind. 2004). When plaintiffs' domicile and place of injury are the same, there is no reason to disregard the presumption. *See Alli v. Eli Lilly & Co.*, 854 N.E.2d 372, 379 (Ind. Ct. App. 2006). Massachusetts utilizes the "functional" approach. *See e.g. Lou v. Otis Elevator Co.*, 933 N.E.2d 140, 150 (Mass. App. Ct. 2010) ("Massachusetts generally follows a functional approach to resolving choice of law questions on substantive matters, eschewing reliance on any particular choice of law doctrine…Though we do not tie our analysis to any single doctrine, examination of our cases reveals that we often find useful guidance in the Restatement (Second) of Conflict of Laws."). The Restatement states that the applicable law is that of the place where the injury occurred unless "some other state has a more significant relationship []." Restatement (Second) of Conflict of Laws § 146 (1971). The remainder of jurisdictions – Florida, New Jersey, Ohio, and Texas – follow the Restatement (Second) of Conflict of Laws § 146 (1971). *See Tune v. Phillip Morris, Inc.*, 766 So.2d 350, 353 (Fla. Dist. Ct. App. 2000); *Fu v. Fu*, 733 A.2d 1133, 1138 (N.J. 1999); *Morgan v. Biro Mfg. Co.*, 474 N.E.2d 286, 288 (Ohio 1984); *Thomas v. N.A. Chase Manhattan Bank*, 994 F.2d 236, remanded after appeal, 1 F.3d 320 (5th Cir. 1993) (Texas).

[4] One class action case was filed in Texas and does not identify where the plaintiffs were injured. Presumably, in light of the lack of information, they were injured in Texas where plaintiffs chose to file suit.

in the relevant jurisdictions. As set forth below (*infra* ¶¶ 30 – 32), no judgment would be entered against NECC as a nonparty, and NECC would not be bound by any allocation of fault found by the trier of fact. Accordingly, maintenance of the automatic stay would severely prejudice Liberty while modifying the stay will not hurt NECC. Under the *Wang* test, the stay should therefore be modified.

### i. Florida

18. Florida law allows a defendant to assert a "nonparty defense," but a defendant who wishes to raise the defense must "affirmatively plead the fault of a nonparty." *See* FLA. STAT. § 768.81(3)(a)(1) (2011). The defendant must identify the known nonparty, absent a showing of good cause, either by motion or in the initial responsive pleading "when defenses are first presented." *Id.* The nonparty's fault must be proven at trial by a preponderance of the evidence in order to include the nonparty on the verdict form "for the purpose of apportioning damages." *See id.* at § 768.81(3)(a)(2).

19. Liberty is currently defending against six (6) cases in which Florida law applies. Liberty seeks relief from the stay to assert the allegations contained in the exemplar answer attached hereto as Exhibit 1 at pp. 18 – 27, and referenced in footnote 1 (p. 7), footnote 2 (p. 17), and the Thirteenth Affirmative Defense (p. 17), and to assert similar if not identical allegations in all current and future suits filed against Liberty in which Florida law applies.[5]

### ii. Indiana

20. In Indiana, IND. CODE § 34-51-2-14 permits a defendant to assert the nonparty defense. A defendant who wishes to raise this defense must also "affirmatively plead" the nonparty defense in the defendant's first responsive pleading. IND. CODE §§ 34-51-2-15 and 34-

---

[5] A table indicating all suits filed to date against Liberty, and the law that applies in each respective suit, is attached hereto as Appendix A.

51-2-16 (1998). At the time of trial, the jury will be instructed to reach a verdict by determining the percentage of fault of the plaintiff, defendants, and any nonparty. *See* IND. CODE § 34-51-2-8. The jury is not permitted to know of any immunity the nonparty may have. *See id.* Instead, the jury is instructed to "consider the fault of all persons who caused or contributed to cause the alleged injury, death, or damage to property, tangible or intangible, regardless of whether the person could have been named as a party." *See id* at § 34-51-2-8(b)(1). A verdict is entered only with respect to the defendants' in accord with their percentage of fault. *See id.*

21.  Liberty is currently defending against twenty-three (23) cases in which Indiana law applies. Liberty seeks relief from the stay to assert the allegations contained in the exemplar answer attached hereto as Exhibit 2 at pp. 5 – 16, and referenced in footnote 1 and the Seventeenth Affirmative Defense (both at p. 4), and to assert similar if not identical allegations in all current and future suits filed against Liberty in which Indiana law applies.

### iii. New Jersey

22.  New Jersey statutes require a fact finder to determine each party's percentage of fault. *See* N.J. STAT. ANN. § 2A:15-5.2. A defendant who is less than sixty percent negligent is only responsible for damages that are proportional to its percentage of fault. *See* N.J. STAT. ANN. § 2A:15-5.3(c). New Jersey state court rules permit a defendant to assert at trial that an allocation of a percentage of fault should be allocated to a defendant that settled with the plaintiff. *See* N.J. COURT RULE 4:7-5(c) (1994). This Rule also applies to one against whom a plaintiff had a potential claim but who is protected by bankruptcy law. *See Town of Kearny v. Brandt*, 67 A.3d 601, 616 (N.J. 2013); *Brodsky v. Grinnell Haulers, Inc.*, 853 A.2d 940, 948 (N.J. 2004). Fairness dictates that a jury be provided an opportunity to determine the percentage of fault to each responsible party. *See Brandt*, 67 A.3d at 616. Otherwise, the non-settling

defendant is "deprived of the benefits of the Comparative Negligence Act, namely their right to be held accountable only for their percentage of fault, provided that portion is less than sixty percent." *Id.* The non-settling defendant must notify the plaintiff that a percentage allocation to a settling defendant will be an issue at trial. *See* N.J. COURT RULE 4:7-5(c) (1994).

23. Liberty is currently defending against two (2) cases in which New Jersey law applies. Liberty seeks relief from the stay to assert the allegations contained in the exemplar answer attached hereto as Exhibit 3 at the Thirteenth Affirmative Defense and footnote 1 (p. 11), and to assert similar if not identical allegations in all current and future suits filed against Liberty in which New Jersey law applies.

### iv. Ohio

24. Ohio similarly permits a defendant to raise as an "affirmative defense" that a nonparty caused a plaintiff's damages. *See* OHIO REV. CODE. ANN. § 2307.23(C) (2005). Thereafter, the finder of fact will determine the percentage of responsibility of each party and the nonparty. *See id.* at § 2307.23(A).

25. Liberty is currently defending against one (1) case in which Ohio law applies. Liberty seeks relief from the stay to assert the allegations contained in the exemplar answer attached hereto as Exhibit 4 at pp. 11 – 22, and referenced at footnote 1 and the Twenty-Third Affirmative Defense (both at p. 6), and to assert similar if not identical allegations in any future suits filed against Liberty in which Ohio law applies.

### iv. Texas

26. In Texas, a defendant may also "designate" a nonparty to whom a percentage of responsibility may be attributed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 33.004 (2011). The statute requires a defendant to file a motion for leave to make such a designation. *See id.* If the

motion is granted, then at the time of trial the jury will determine the percentage of responsibility of the plaintiff, defendants, and "each responsible third party who has been designated under Section 33.004." *See id.* at § 33.003 (2003). Neither the motion, nor a finding of fault against the nonparty, imposes liability on the nonparty. *See id.* at §33.004(i). It also may not be used in any other proceeding under any legal theory to impose liability on the nonparty. *See id.*

27.    Although Texas does not require the nonparty defense to be pled in a defendant's first responsive pleading, Liberty included it in its answer to avoid any prejudice that might arise if Liberty failed to so plead. Liberty seeks to ensure it is not later precluded from raising the nonparty defense on motion.

28.    Liberty is currently defending against one (1) case in which Texas law applies. Liberty seeks relief from the stay to assert the allegations contained in the exemplar answer attached hereto as <u>Exhibit 5</u> at the Twenty-Fourth Affirmative Defense and footnote 1 (p. 6), and to assert similar if not identical allegations in any future suits filed against Liberty in which Texas law applies.

29.    Liberty's ability to assert allegations against NECC as a nonparty is critical to Liberty's defense of all of the Complaints in which it is named. Such a defense will likely permit Liberty to reduce its proportional share of responsibility before a finder of fact. It is significant that all of the cases against Liberty permit Liberty to try the "empty chair," and Liberty will be unduly prejudiced if it is unable to assert allegations against the primary entity that holds the greatest (if not only) responsibility for plaintiffs' alleged injuries.

30.    In contrast, the allegations do not result in any claim or other action against NECC. The allegations that Liberty proposes to include in its Answers are expressly intended only for the purposes described herein, and <u>not</u> to commence or continue a judicial action against

NECC that could have been commenced before the bankruptcy petition was filed, to obtain possession or exercise control over any property of NECC, to create a lien against NECC or its estate, or to collect, assess or recover a claim against NECC that arose pre-petition. They are only designed to preserve Liberty's ability to raise the nonparty defense at trial, the result of which will not have an impact on NECC because such findings are only for the limited purposes of reducing the amount of fault and damages attributable to Liberty. *See* FLA. STAT. § 768.81(3)(a)(2) (2011); IND. CODE § 34-51-2-8 (1998); N.J. COURT RULE 4:7-5(c) (1994); OHIO REV. CODE. ANN. § 2307.23(C) (2005); TEX. CIV. PRAC. & REM. CODE ANN. § 33.004 (2011).

31. An allocation of fault to a nonparty that was not sued by the plaintiff does not result in an actionable claim against the nonparty. *See e.g. Allied-Signal, Inc. v. Fox*, 623 So.2d 1180, 1182 (Fla. 1993) (an entity that is immune from suit may be named as a nonparty for allocation of fault purposes); *Bondex Intern. v. Ott*, 774 N.E.2d 82, 87 (Ind. 2002) ("allocation of fault to nonparties does not create an award of damages, money judgment, or 'liquidated claim' against the bankrupt nonparties or their property and does not affect the bankruptcy estates."); *Brodsky v. Grinnell Haulers, Inc.*, 853 A.2d 940, 948 (N.J. 2004) (neither a plaintiff nor a defendant can recover from one who receives a discharge in bankruptcy, regardless of any allocation of fault to the bankrupt party); *Fisher v. Beazer E., Inc.*, No. 99662, 2013 WL 6221367 *7 (Ohio, Nov. 27, 2013) (slip opinion) (an entity that is immune from suit may be named as a nonparty for allocation of fault purposes); *see also* OHIO REV. CODE. ANN. § 2307.11(C) (2005) (" 'Persons from whom the plaintiff does not seek recovery in this action' includes [ ] (4) Persons who are not a party to the tort action whether or not that person was or could have been a party to the tort action if the name of the person has been disclosed prior to trial' "); and TEX. CIV. PRAC. & REM. CODE ANN. § 33.004(i) (2003) (the designation of a

responsible third party "does not by itself impose liability on the person" and "may not be used in any other proceeding.").

32. Because the allegations against NECC do not in any way affect the property of NECC or its estate, no hardship will come to NECC as a result of such allegations. The assertion of such allegations will also not interfere with the bankruptcy because NECC will remain a nonparty to these actions. Therefore, it does not need to answer or otherwise respond to the allegations. In contrast, Liberty will be unduly prejudiced if it is not permitted to assert such allegations. Liberty is also likely to prevail in demonstrating to a jury that the nonparty NECC is the party most responsible for the meningitis outbreak. It is anticipated that the evidence will demonstrate that NECC had primary responsibility for maintaining the cleanrooms and that NECC's failure to do so, and failure to follow proper protocols and procedures, is what caused plaintiffs' injuries, not any alleged negligence by Liberty. This is particularly likely in light of the fact that the outbreak occurred many years after Liberty was last at the Property.

33. Liberty believes that the automatic stay does not preclude the filing of pleadings that contain allegations against NECC as a nonparty, but Liberty seeks relief to do so out of an abundance of caution. In the alternative, this Court may find that the automatic stay is not implicated by such allegations and therefore find that no relief from the stay is required. *See e.g. McCartney v. Integra Nat. Bank North*, 106 F.3d 506 (3d Cir. 1997) (holding that relief from stay was not required to name debtor as a necessary party in a foreclosure action where adjudication of deficiency would not prejudice debtor). Either way, Liberty will be unfairly prejudiced if it is unable to assert such allegations against NECC.

## II.   CONCLUSION

For all of the foregoing reasons, good cause exists to modify the automatic stay such that creditor Liberty Industries, Inc.'s motion must be ALLOWED.

WHEREFORE, Defendant Liberty Industries, Inc. respectfully requests this Honorable Court enter an order in the form attached at Appendix B.

                                  Respectfully submitted,

                                  Creditor,
                                  LIBERTY INDUSTRIES, INC.,
                                  By its attorneys,

                                  */s/ Peter G. Hermes*
                                  Peter G. Hermes, BBO No. 231840
                                  phermes@hermesnetburn.com
                                  Scott S. Spearing, BBO No. 562080
                                  sspearing@hermesnetburn.com
                                  Dianne E. Ricardo, BBO No. 675586
                                  dricardo@hermesnetburn.com
                                  HERMES, NETBURN, O'CONNOR
                                      & SPEARING, P.C.
                                  265 Franklin Street, 7th Floor
                                  Boston, MA 02110
                                  (617) 728-0050 (T)
Dated: June 27, 2014                (617) 728-0052 (F)

### MLBR 9013-1 CERTIFICATION

I hereby certify that counsel for Liberty Industries, Inc. conferred with counsel for the debtor and the trustee to make a reasonable and good faith effort to determine whether or not the motion is unopposed.

                                  */s/ Peter G. Hermes*
                                  Peter G. Hermes

## CERTIFICATE OF SERVICE

      Pursuant to Rule 9013-3 of the Local Rules of the United States Bankruptcy Court for the District of Massachusetts, I hereby certify that this document is served on all parties who have filed their appearances and requested service of all notices in this case. The foregoing document was filed through the ECF system, and served electronically on all parties of record registered with the Court's electronic filing system, on June 27, 2014, and served by first-class mail on all parties so designated in the following service list.

                                                                               */s/ Peter G. Hermes*
                                                                               Peter G. Hermes

G:\DOCS\DER\Cases\Great American\Liberty Industries\Bankruptcy\Lift Stay of NECC\MTN Lift Stay of NECC.final.docx

### SERVICE LIST VIA FIRST-CLASS MAIL:

Internal Revenue Service
Special Procedures Function
STOP 20800 P.O. Box 9112, JFK Building
Boston, MA  02203

Internal Revenue Service
Centralized Insolvency Operation
P.O. Box 7346
Philadelphia, PA  19101-7346

Office of the Attorney General
Commonwealth of Massachusetts
One Ashburton Place, 18th Floor
Boston, MA  02108-1518

Securities and Exchange Commission
100 F Street, NE
Washington, DC  20549

Securities and Exchange Commission
Boston Regional Office
33 Arch Street, 23rd Floor
Boston, MA  02110-1424

U.S. Department of Treasury
ATTN: Timothy Geithner
1500 Pennsylvania Avenue, NW
Washington, DC  20020

Internal Revenue Service
Centralized Insolvency Operation 11601
Roosevelt Blvd., Mal Drop N781
Philadelphia, PA  19154

Massachusetts Department of Revenue
Bankruptcy Unit
P.O. Box 9564
100 Cambridge Street, 7th Floor
Boston, MA  02114-9464

Evan M. Goldman, Esquire
Goldman & Goldman, P.A.
The Foxleigh Building
2330 West Joppa Road, Suite 300
Lutherville, MD  21093

Thomas Hardin
102 West 7th Street
P.O. Box 929
Columbia, TN  38402

Phillips Murrah P.C.
Corporate Tower 13th Floor
101 North Robinson Avenue
Oklahoma City, OK  73102

Frank Prokos, Esquire
Law Office of Frank Prokos, LLC
1600 Providence Highway/Rte 1
Walpole, MA  02081

United States Attorney
John Joseph Moakley U.S. Federal Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210

BMW Financial Services Na, LLC
P.O. Box 201347
Arlington, TX 76006

Patrick M. Carter
102 West 7th Street
P.O. Box 929
Columbia, TN 38402

Darrel Cummings
South Bay Correctional Facility
P.O. Box 7171
South Bay, FL 33493

Daimler Trust
c/o Bk Servicing LLC
P.O. Box 131265
Roseville, MN 55113

H. David Gibson, Esquire
Gentry, Locke, Rakes & Moore, LLP
10 Franklin Road, Suite 800
Roanoke, VA 24011

Donald J. Walsh, Esquire
Offit Kurman P.A.
8 Park Center Court, Suite 200
Owings Mills, MD 21117

Terrill Johnson Harris
Carrie A. Hanger
Smith Moore Leatherwood LLP
300 N. Greene Street, Suite 1400
P.O. Box 21927 (27420)
Greensboro, NC 27401

Steven Weiss, Esquire
Shatz, Schwartz and Fentin, P.C.
1441 Main Street
Springfield, MA 01103

Daniel Tradden, Esquire
Hinshaw & Culbertson
28 State Street, 24th Floor
Boston, MA 02109-1775

Scott J. Tucker, Esquire
Tucker, Heifetz & Saltzman, LLP
50 Congress Street
Boston, MA 02109

Richard A. Whitlow, Esquire
Gentry Locke Rakes & Moore
P.O. Box 40013
Roanoke, VA 24022

Thomas W. Lawless, Esquire
Lawless & Associates, P.C.
The Customs House, Suite 403
701 Broadway
Nashville, TN 37203

Patrick T. Fennell, Esquire
Drandall & Katt
366 Elm Avenue, S.W.
Roanoke, VA 24016

Robert A. Young, Esquire
Brett A. Reynolds, Esquire
English, Lucas, Priest & Owsley, LLP
1101 College Street
Bowling Green, KY 42102-0770

Michael D. Galligan, Esquire
Galligan & Newman
309 West Main Street
McMinnsville, TN 37110

Robert J. Durant, Jr.
Edwards Wildman Palmer LLP
2800 Financial Plaza
Providence, RI 02903

Michael Rhodes-Devey
Towne, Ryan & Partners, P.C.
450 New Karner Road
P.O. Box 15072
Albany, NY 12212-5072

James M. Rubin, Esquire
Wingate, Russotti, Shapiro & Halperin, LLP
420 Lexington Avenue, Suite 2750
New York, NY  10170

Joseph A. Ziemianski, Esquire
Cozen O'Connor
LyondellBasell Tower
1221 McKinney Street, Suite 2900
Houston, TX  77010

Eric D. Freed, Esquire
Cozen O'Connor
1900 Market Street
Philadelphia, PA  19103

Renay S. Smallcomb, Esquire
DiGruscia Law Offices
302 Broadway
Methuen, MA  01844