UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ THIS DOCUMENT RELATES TO: All Cases. ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) ) ) ) ) ) ) ) ) ) ) MDL No. 2419 Dkt. No 1:13-md-2419 (RWZ) |

**PARTIAL OPPOSITION OF SAINT THOMAS ENTITIES AND ASCENSION PARTIES TO CHAPTER 11 TRUSTEE'S MOTION FOR ENTRY OF AN ORDER LIMITING DISCOVERY AND STAYING THESE PROCEEDINGS WITH RESPECT TO NECC INSIDERS AND RELATED SETTLING PARTIES**

Defendants Saint Thomas West Hospital, formerly known as St. Thomas Hospital, Saint Thomas Network, and Saint Thomas Health (collectively referred to as the "Saint Thomas Entities") and Defendants Ascension Health and Ascension Health Alliance (collectively referred to as the "Ascension Parties") file this Partial Opposition ("Opposition") to the Chapter 11 Trustee's Motion for Entry of an Order Limiting Discovery and Staying these Proceedings with respect to NECC Insiders and Related Settling Parties ("Motion"), and in support, show the Court the following:

**I.  The Ability to Seek Dispositive Relief Should Not Be Limited Against the Settling Parties**

The Chapter 11 Trustee ("Trustee") for New England Compounding Pharmacy, Inc. d/b/a New England Compounding Center ("NECC") asks this Court to order a "prohibition" against any party to the MDL from seeking dispositive relief against the Settling Parties[1]—a group that

---

[1]  As defined in the Trustee's Motion and Memorandum in Support, the "Settling Parties" include, *inter alia*, Barry Cadden, Lisa Cadden, Carla Conigliaro, and Gregory Conigliaro; GDC Properties Management, LLC, its insurer, and certain individuals covered under GDC's insurance policies; and NECC's primary and excess liability insurance carriers, and certain NECC Insiders insured under NECC's insurance policies. As explained below, the

includes some of the most important potential parties and witnesses to every case pending in this MDL—during the pendency of the stay sought by the Motion. At the outset, the Trustee's Motion is unreasonably vague regarding the prohibition of "dispositive relief." Nowhere in the Trustee's Motion, Memorandum in Support, or underlying settlement agreements is the term "dispositive relief" defined, and the Saint Thomas Entities and Ascension Parties are left to guess as to what "dispositive relief" the Trustee is seeking to prohibit.

Assuming that "dispositive relief" refers to the assertion of third-party claims against the Settling Parties, and not merely the assertion of comparative fault allegations, the Motion, Memorandum in Support, and Proposed Order contain **no** provisions regarding the tolling of applicable statutes of limitations during the pendency of the requested stay. Although the Trustee "hopes" to propose and confirm a chapter 11 liquidating plan before the end of 2014, it is highly unlikely that a plan—as contemplated and which has not yet been filed by the Trustee—will be confirmed in the foreseeable future.

First, to have any chance for success in proposing a confirmable plan with third-party channeling injunctions, the Trustee must garner "overwhelming" support from all "impacted classes" of creditors, including indemnity and contribution claimants such as the Saint Thomas Entities and Ascension Parties. *See, e.g.*, *In re Mahoney Hawkes, LP*, 289 B.R. 285, 297–98 (Bankr. D. Mass. 2002) (citing I*n re Master Mtg. Inv. Fund, Inc.*, 168 B.R. 930, 935 (Bankr. W.D. Mo. 1994)). At present, the Trustee has a settlement framework with Insiders, Insiders' insurers, and nothing more. No settlement has been reached with any non-NECC insider plaintiff or defendant in these proceedings, and the ongoing Mediation Program has increasingly limited participation. Moreover, chapter 11 plan confirmation requires filing and approval of a

---

"Settling Parties" include several individuals and entities that are neither making contributions to the settlement nor parties to the MDL.

2

disclosure statement, plan solicitation, and voting, and confirmation.  *See* 11 U.S.C. §§ 1125–1129.

These procedures, particularly in a contentious case and relating to a plan premised on controversial third-party releases, will take many months, if not years, to conclude.  If the Saint Thomas Entities and Ascension Parties are prohibited from asserting third-party claims against the Settling Parties during the pendency of the requested stay, without corresponding tolling provisions, such prohibition could preclude the Saint Thomas Entities and Ascension Parties from *ever* asserting third-party claims against the Settling Parties in the event that the stay period lasts longer than the applicable statutes of limitations.  To the extent that the Trustee seeks such a result, the Trustee cites no case law or other authority to suggest that an agreement between two parties can operate to extinguish the Settling Parties' liability to non-signatory third parties.

The Trustee's Motion fails to address the fact that the limitations periods and state-law suit requirements applicable to the parties participating in the Mediation Program are currently tolled during the pendency of the Mediation "until further order of th[e] Court," as provided by the Order on Mediation Program ("Mediation Order").  *See* Dkt No. 394 at 9–11, ¶¶ L.3–L.4.  The Mediation Program has not been terminated [*see id.* at 12, ¶ O], and the Court has not otherwise modified the tolling of limitations or the stay and extension of state-law suit requirements.  To the extent that this Court determines that a prohibition is warranted precluding any party to the MDL from seeking dispositive relief against the Settling Parties during the pendency of the stay sought by the Trustee's Motion, the Saint Thomas Entities and Ascension Parties respectfully request that the Court reincorporate the tolling/state law extension provisions contained within Paragraphs L.3 and L.4 of the Mediation Order into its Order on the Trustee's Motion.

3

Additionally, the undersigned parties request that the Court include a provision in its Order stating that the Order is subject to modification as the Bankruptcy Case and individual MDL cases progress and as the facts and circumstances may warrant. The inclusion of these or similar provisions would allow the Court to grant the Trustee's requested relief while ensuring that the rights of non-settling Defendants are preserved, and would also achieve the Trustee's stated goal of preserving the benefits of the Insider Settlement Agreement "without impeding the progress (and hopeful resolution) of those actions in the MDL that have not settled." *See* Memorandum in Support of Motion at pp. 11–12 [Dkt No. 1343]; *see also* Joinder of the Official Committee of Unsecured Creditors to Chapter 11 Trustee's Motion for Entry of an Order Limiting Discovery and Staying These Proceedings with Respect to NECC Insiders and Related Settling Parties, p. 6 [Dkt No. 1350] (stating that the goal of the requested stay is to "preserve the limited assets of the [NECC] estate pending plan confirmation," and that the requested stay is intended to be "narrowly tailored to achieve that goal without undue prejudice to the rights of third parties.").

## II. Discovery Should Not Be Limited Against the Settling Parties

The Trustee also asks this Court to "limit" discovery against the Settling Parties to matters "relevant to the prosecution, or defense, of claims against defendants other than" the Settling Parties. The Trustee provides no discussion, explanation or example of what this limitation means. As explained in the Saint Thomas Entities' and Ascension Parties' limited objection to the settlements, "this exception is entirely unclear and risks protracted, collateral discovery disputes." *See* Limited Objection and Reservation of Rights of Saint Thomas Entities and Ascension Parties to Chapter 11 Trustee's Motions Concerning Proposed Compromises of Certain Controversies, Case No. 12-19882 (Bankr. D. Mass. 2012) ("Bankruptcy Case") [Bankruptcy Dkt. No. 733]. Indeed, in the Trustee's memorandum in support of his Motion, he

4

states that "[w]ith a stay in place, the Court and the parties can address *what additional discovery is appropriate, if any,* and from which parties." *See* Memorandum in Support of Motion at p. 12 (emphasis added). But it is abundantly clear that the Trustee will rely on any such stay order to try to cut off as much discovery as possible.

The proposed discovery limitation would cover NECC and its Insiders—the parties clearly responsible for the tragedies at root of the MDL proceeding. Given the fact that the Saint Thomas Entities and Ascension Parties, along with other Defendants like Liberty Industries, Inc. ("Liberty"), will be seeking evidence of comparative negligence against many, if not all, of the Settling Parties, the undersigned parties oppose this uncertain limitation on discovery against a party merely because that party has settled a claim brought by the Trustee (a procedure entirely premised on confirmation of what will likely be a controversial chapter 11 plan with third party releases[2]). In fact, the Bankruptcy Court has already lifted the bankruptcy stay for Liberty to (a) plead the requisite facts and defenses against NECC such that its conduct may be presented to any trier of fact for consideration of NECC's proportionate liability at trial and (b) conduct discovery in furtherance of those pleadings. *See* Order on Motion to Modify the Automatic Stay [Bankruptcy Dkt. No. 969]. The Saint Thomas Entities and Ascension Parties now have a motion pending before the Bankruptcy Court seeking the same relief. *See* Bankruptcy Dkt. No. 991.

It is neither fair nor equitable for the Saint Thomas Entities and Ascension Parties to be denied discovery from NECC, its Insiders, and any other settling party with relevant information

---

[2] In his statement in support of the compromise motions, the Trustee, filed jointly with the Official Committee of Unsecured Creditors, clarified that "[t]he releases and injunctions [embodied in the compromise motions] will become effective only when a plan that includes them is approved and confirmed by [the Bankruptcy] Court after an evidentiary hearing is held addressing all confirmation issues (including the releases and injunctions) and a corresponding confirmation order of [the Bankruptcy] Court is entered – not upon entry of an order approving the 9019 Motions." Bankruptcy Dkt. No. 904, p. 2.

necessary to establish full defenses or to preserve the merits of their third-party claims. Moreover, as stated in Liberty's Limited Opposition to the Trustee's Motion [*see* Dkt. No. 1349], the Trustee's Motion seeks the entry of a stay that would apply to parties who are not defendants in any of the MDL cases and who have made no settlement payments. *See* Trustee's Motion at p. 1 (requesting that the stay be entered for the benefit of NECC's affiliated landlord, the settling insurers, the "Contributors," and "Contributor and Affiliate Released Parties," as those terms are defined in the Plan Support and Funding Agreement); Plan Support and Funding Agreement [Bankruptcy Dkt. No. 712-2] at p. 44 (identifying as "Affiliated Entities," in addition to four parties to the MDL, 203 Flanders Road, LLC; 205 Flanders Road, LLC; Cadden Family-2012, LLC; Cardo Properties, LLC; Conigliaro Block, Inc.; Conigliaro Family Investments, LLC; Conigliaro Industries, Inc.; GDC Holdings, Inc.; Hunter Holdings, LLC; L & S Creations, Inc.; Nationwide Foam, Inc.; Nationwide Recycling Sales Management, Inc.; Physicians Choice Medical Marketing, LLC; and Stone House Realty Group, LLC).  The Trustee has not demonstrated sufficient grounds for the granting of such extraordinary relief, nor has he cited to any authority suggesting that this Court has the ability to enter a stay to prevent litigation proceedings or discovery against non-parties that have neither appeared nor consented to this Court's jurisdiction.  Therefore, the Trustee's Motion must be denied to the extent it seeks the entry of a stay on behalf of parties that are in no way subject to this Court's jurisdiction.

That said, perhaps narrowly tailoring a discovery prohibition to information concerning settlement amounts and funding may be appropriate under the circumstances.  For instance, prohibiting discovery that could only be relevant to a collateral attack on the settlements, such as inquiries about NECC's insurance coverage/policy limits, may be properly stayed inasmuch as collection and distribution-related inquiries are squarely within the purview of the Bankruptcy

Court.  But promising the Settling Parties, including NECC and its Insiders, an unchecked safe haven from discovery and dispositive relief in this Court is another matter entirely.

### III. Allowing Full Discovery Against the Settling Parties Does Not Affect or Impair the Settlements

The settlement agreements in question obligated the Trustee to seek a stay of the MDL proceedings.  *See, e.g.,* Plan Support and Funding Agreement [Bankrutpcy Dkt. No. 712-2],  p. 14.[3]  The settlement agreements are not, however, conditioned upon this Court entering such a stay order.  In particular, failure to obtain an MDL stay or to obtain an order limiting discovery is not one of the enumerated grounds for "automatic termination" and is not a basis for the Settling Parties to terminate the settlement.  *See id.* at p. 29.

### IV. The Bankruptcy Court Has Not Approved Third-Party Releases, and Allowing Full Discovery Now Preserves Important Evidence for Claims Currently Asserted as Well as Those Which May be Asserted in the Future

The Trustee also fails to provide the Court with important context regarding the stay—and limitation on discovery—for which he has asked.  The entire notion of staying claims against Settling Parties and limiting discovery is a precursor to a fight that has yet to come: the ability and willingness of the Bankruptcy Court to release all claims relating to NECC against anyone who settles with the Trustee as part of a bankruptcy plan of reorganization.  In other words, the Settling Parties seek to stay claims against them, limit discovery against them, and then obtain full releases from the Trustee.  And while the Bankruptcy Court has approved the "amount" of

---

[3] In his omnibus reply to various objections to the compromise motions, the Trustee explained that "an order or orders of [the Bankruptcy] Court approving the Settlement Agreements will neither effectuate nor preserve the MDL Stays, but will only oblige the Trustee to seek or to make efforts to preserve those Stays, in both cases before the MDL Court."  Further, the Trustee stated that the "MDL Stay, if approved by the MDL Court, will in fact permit discovery to be taken from the Shareholders and Affiliates [of NECC] to the extent such discovery is relevant to the prosecution of claims or defenses against parties other than the Shareholders and Affiliates and the 'Estate Parties'."  Bankruptcy Dkt. No. 936, pp. 13-14.

settlements, it has refused to provide any approval to the notion that Settling Parties will be released of their potential liability to third parties.

Judge Boroff was crystal clear at the hearing on the compromise motions on July 14, 2014 that the viability of any future releases was not being approved and was not before him. In particular, he stated:

> There are significant problems here, but those problems go, not so much to the settlements -- to the settlement amounts, as to the likelihood of confirmation. ***There are some significant problems with the third-party releases that are being contemplated.*** And there are issues that are associated with how classifications would be set up in order to bring the victims here into an inclusive posture with the trustee, but those questions go to confirmation. They will be far more difficult -- far more thorny problems then the settlement which I approve today.
>
> ***Similarly, third-party releases of clinics are troubling.*** All of these issues involve due process, and they involve an examination of the factors that various courts have struggled with in approving or denying third-party releases, both in this district, in the First Circuit, and throughout the country. ***I express no judgment whatsoever, no inclination whatsoever, with respect to the likelihood that I could confirm a plan with those third-party releases. But that is not an issue for today.***

*See* Transcript at 7:19–8:12 (emphasis added).

Stated differently, it is far from a foregone conclusion that the claims of third parties against any settling party will be wiped clean by releases in a bankruptcy plan. By permitting full discovery now, the third parties will be able to preserve the evidence they need to assert those claims should – as the Saint Thomas Entities and Ascension Parties believe – the third party releases be rejected (either by the Bankruptcy Court or during the appellate process).

In addition, preserving evidence now provides important protection for third parties with claims against Settling Parties (such as contribution, indemnity, or product liability claims). One of the main reasons for civil statutes of limitations is to make sure parties bring their claims while evidence is still fresh and collectible. This is particularly important where claims involve testimonial evidence, as memories are prone to fade as time passes. *See, e.g.*, *U.S. v. Kubrick*,

444 U.S. 111, 117 (1979) (explaining that statutes of limitation "protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise") (internal quotation marks and citations omitted)); *Giese v. Pierce Chem. Co.*, 29 F. Supp. 2d 33, 38 (D. Mass. 1998) ("Evidentiary prejudice consists of harm to the defendant's ability to present a full and fair defense on the merits by reason of loss of records, the death of witnesses, or the fading of memories." (citing *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1033 (Fed. Cir. 1992))). As much as Barry Cadden or the Conigliaros may hope to avoid third-party claims, the Bankruptcy Court has noted that such an outcome has "significant problems," and the evidence against them and other settling defendants needs to be collected and preserved now.

**V.    The Bankruptcy Court's Approval of the Settlements Did Not Approve the Concept of Third Party Releases or the Limiting of Any Discovery in the MDL Proceeding**

During the July 14, 2014 hearing in Bankruptcy Court, counsel for the Saint Thomas Entities and Ascension Parties further clarified the scope of the settlement approval:

> I listened to the Court's comments about -- I believe I wrote it down correctly -- you said you expressed no judgment or implication on what you will do next in connection with third-party releases or tailoring injunctions or whatever. I also heard in Mr. Sternklar's initial remarks that one of the objections that a lot of parties had raised would be to *insert language in the proposed order* that the Court has just called for, *that would specify what the compromise doesn't do, largely in connection with discovery or participation by nonsettling defendants* or other parties like the clinics, in connection with the MDL litigation.
>
> [. . . .]
>
> That would be wonderful, *because the Court's ratification, affirmation of the settlement implies that the things that* Mr. Sternklar and *the trustee would do in the MDL litigation*, in keeping their deal with the settling parties, *has basically the underscore or the affirmation of this Court*. I think to the extent that *that is not the case*, I think that needs to be set forth in -- would make our -- would make it an even playing field in the MDL litigation.

9

*See* Transcript at 10:19–11:21(emphasis added).

>  The Trustee's counsel agreed, noting:
>
> I think it would be appropriate at most to say that your -- nothing you're saying or doing in this order is meant to affect or impair what Judge Zobel does in the MDL on any issue.

*Id.*

The Court, wanting to be clear that it was not ruling on the viability of third-party releases or suggesting that the MDL Court should permit a stay or limit discovery merely because the Bankruptcy Court approved the settlement agreement, included the following paragraph in all of the orders approving the various settlements:

> The Court expresses and intends ***no judgment, inclination or implication whatsoever regarding*** (i) ***the confirmability of a chapter 11 plan containing third party releases***, (ii) the validity of any third party releases that may appear in any chapter 11 plan hereafter filed in this case, (iii) the terms of or the treatment resulting from classification of creditors pursuant to 11 U.S.C. § 1122(a) in any such plan, ***or*** (iv) ***the extent to which, if at all, the MDL Stay should be modified or instead remain in place.***

*See* Bankruptcy Dkt. Nos. 970 at p. 5 (insurers compromise order); 971 at p. 5 (facility lessor and related parties compromise order); and 972 at p. 8 (Insiders compromise order) (emphasis added).

**VI.   The Stay and Discovery Limitations are Neither Necessary Nor Appropriate**

The Trustee provides no legal citation or other authority to support his claim that this Court should cut off the parties' discovery rights, and stay all claims against certain parties, merely because they have settled. The Trustee says that the stay is "necessary and appropriate." To the extent it is necessary, it is a self-created "necessity." After all, it is as easy to negotiate away other people's rights as it is to negotiate what orders a Court "must" enter. The requested stay should not be used as a shield to prevent the dissemination, in connection with the Federal Rules of Civil Procedure, of information on the compounding activities, business affairs, safety

compliance, obligations, liabilities, and similar issues for the NECC Insiders and Settling Parties. This Court should reject any limitations on discovery predicated on the fact that a party has settled claims brought against them by the Trustee.

The Saint Thomas Entities and Ascension Parties respectfully request that the Court deny in part the Trustee's motion, and make the following revisions to his proposed order: 1) remove all limitations on discovery against Settling Parties or, alternatively, narrowly tailor any discovery limitations such that only discovery that collaterally attacks the approved compromise orders is stayed; 2) condition the stay on dispositive relief to all claims against Insiders and Settling Parties being tolled; and 3) make the order subject to modification by the Court as the Bankruptcy Case and individual MDL Cases progress and as the facts and circumstances may warrant.

Dated:  August 27, 2014

By its attorneys,

 /s/ Sarah P. Kelly
Sarah P. Kelly (BBO #664267)
skelly@nutter.com

NUTTER McCLENNEN & FISH LLP
Seaport West
155 Seaport Boulevard
Boston, Massachusetts  02210
(617) 439-2000
(617) 310-9000 (FAX)

Yvonne K. Puig*
Texas State Bar No. 16385400
yvonne.puig@nortonrosefulbright.com
Adam T. Schramek*
Texas State Bar No. 24033045
adam.schramek@nortonrosefulbright.com
Eric J. Hoffman*
Texas State Bar No. 24074427
eric.hoffman@nortonrosefulbright.com

FULBRIGHT & JAWORSKI LLP
98 San Jacinto Blvd., Suite 1100
Austin, Texas 78701
(512) 536-2450
(512) 536-4598 (FAX)

Marcy Hogan Greer*
Texas State Bar No. 08417650
mgreer@adjtlaw.com

ALEXANDER DUBOSE JEFFERSON &
    TOWNSEND LLP
515 Congress, Suite 2350
Austin, Texas  78701
(512) 482-9300
(512) 428-9303 (FAX)

*Appearing *Pro Hac Vice*

## **CERTIFICATE OF SERVICE**

      This certifies that a true and accurate copy of the foregoing was served on all parties of record by virtue of the Court's electronic filing system this 27th day of August, 2014

                                                  */s/ Sarah P. Kelly*
                                                  SARAH P. KELLY