VIRGINIA:

IN THE CIRCUIT COURT FOR THE CITY OF ROANOKE

ROBERT EARL HARRIS, JR., )
      )
   *Plaintiff*, )
      )
v. ) Case No: C13000055-00
      )
INSIGHT HEALTH CORP., *et al.* )
      )
   *Defendants.* )

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF PRESENTMENT OF ORDER**

COMES NOW the plaintiff, by counsel, and provides this Memorandum in Support of Presentment of Order, stating as follows.

**A. Update on Procedural Status Relative to the federal court in Boston:**

1. Following the plaintiffs' last status report to this Court, defendant Insight Health Corp. ("Insight"), filed a Motion in the Boston federal court asking that Court for an Emergency Injunction prohibiting this plaintiff and Gentry Locke from taking any action in the Roanoke City Circuit Court relating to this case or the 17 other identical cases against Insight, Image Guided Pain Management, and its physician owners (collectively, "IGPM").

2. The primary reason Insight asserted in support of its Emergency Motion was its desire that orders should not be presented to this court memorializing rulings that have already occurred.

3. This plaintiff (and the other 17 plaintiffs) filed an opposition to Insight's Emergency Motion by special appearance in the Boston court. **Exhibit 1**. The plaintiff's Opposition Response contains a Declaration of J. Scott Sexton that sets forth the plaintiff's understanding of the procedural history of this case and the other 18 that have substantively identical allegations and defenses. That Declaration is incorporated by reference. Plaintiffs understand that Insight disputes certain portions of the Declaration, but IGPM does not.

4. The Plaintiff's Steering Committee for the Boston MDL joined in supporting this plaintiff's position and opposing Insight's Emergency Motion.

5. On June 3, 2014, the federal court in Boston heard Insight's Emergency Motion. The court indicated that it would rule promptly, but has not yet done so.

6. Presently, this Court is scheduled to consider the presentment of an order in this case as well as orders in the other 17 remaining cases on June 27, 2014 at 2:30 PM.

### B. Procedural History Related to Orders Presented:

7. The first case filed by Gentry Locke alleging liability against Insight and IGPM was Wingate v. Insight, et al. That was quickly followed by another 11 cases and an additional 7 shortly after those. As the Court knows, the Wingate case has been dismissed.

8. The complaints in each case are substantively identical with the exception of individual medical facts relating to the particular plaintiff. Correspondingly, the demurrers and other responsive pleadings by the defendants were substantively identical in each case.

9. On February 27, 2013, counsel for all parties met with this Court for a hearing on Insight's Demurrer in the Wingate case. Afterwards, the Court asked counsel to come to chambers to discuss administration of the cases, particularly in light of the loss of two judges from the Circuit. (**Exhibit 2**, 2/27/13 Hrg. Tr., at 45-6).

10. In chambers, the Court explained that the Circuit Court was short-staffed with the loss of judges. Plaintiff's counsel informed the court that there were presently 12 or so pending cases and there would ultimately be 20, all with identical core factual and legal allegations. Judge Dorsey indicated that he would be hearing all of the Insight-related cases due to the efficiencies that this would allow. He requested cooperation from the parties and their counsel; and, he indicated that he did not want to duplicate work on these cases.

11. At that time, the plaintiffs proposed a plan to use the Wingate case as the "lead" case and conduct matters in a way that would not needlessly duplicate work. All of the counsel indicated their consent to this general plan; and the cases proceeded in this manner.

12. In Wingate and 10 other non-Wingate cases, Insight took the position that it was not a "healthcare provider" under Va. Code § 581.15. Insight answered Requests for Admission denying that it was a "healthcare provider" as defined in the Virginia statute; and, it stated on the record to this court that it was not a healthcare provider. Accordingly, the plaintiffs moved the Court for partial summary judgment as to this issue of Insight's status.

13. On April 5, 2013, the Court called the 10 non-Wingate cases for hearing on the issue of partial summary judgment. On the same day, Insight notified the Court that it had filed a notice removing the Wingate case to federal court in Roanoke. The hearing proceeded just as to the non-Wingate cases. The Court granted the motions for partial summary judgment from the bench, and orders were subsequently tendered and entered.

14. April 5, 2013 had also been reserved as a hearing date for the IGPM demurrers. Since Insight filed the Wingate notice of removal immediately prior to the hearing, the Circuit Court indicated a desire to go forward with the substantively identical demurrer hearing as to the other cases that had not been removed. The Court asked if there was any objection to such a process. Insight offered no objection; and IGPM advocated for proceeding with argument on the other cases because they were "basically identical." **(Exhibit 3,** 4/5/13 Hrg. Tr., at 1-5, 32-39).

15. Judge Dorsey stated his understanding that the issues were "common to all cases," and he asked the parties if there were any objections to proceeding with argument that would apply to all of the other pending cases. With no objection, the Court then heard oral argument on the demurrer's filed and briefed by IGPM. Insight's counsel indicated that he would like the

opportunity to review the transcript of the hearing and possibly offer supplemental submissions if he felt those were necessary. The Circuit Court agreed to Insight's request, provided that any supplemental submissions were to be filed within a reasonable time. Insight never filed such a submission nor did it ever indicate a desire to do so.

16. In the next days, Insight noticed the removal of the remaining non-Wingate cases. But, the federal court in Roanoke remanded all the cases on May 10, 2013.

17. After its failed attempt to remove the Roanoke Gentry Locke Cases to federal court, Insight later sought to withdraw its "healthcare provider" admissions and have the Circuit Court reconsider the summary judgments that had been granted. All of those motions were noticed and heard in Wingate <u>and the other 10 partial summary judgment cases</u> on July 9, 2013. Insight scheduled and noticed those motions to be heard jointly at one hearing; and, they were argued and presented in that manner.

18. On October 31, 2013, the Circuit Court issued its rulings on the outstanding motions by letter opinion styled in the Wingate case, but substantively resolving the identical issues raised by the demurrers and motions in all of the cases. **(Exhibit 4)**. That 25 page single-spaced opinion methodically addresses all of the issues raised by the parties. There, the Court indicated that it would deny Insight's motions to withdraw and change its admissions and to reconsider summary judgments previously entered on the healthcare provider issue. Specifically, the Court found that Insight had failed to meet its required showing that "upholding the admissions would practically eliminate any presentation of the merits of the case." Id. at 24, *("With or without the damages cap, IHC is equally capable of disproving the elements of the plaintiff's claims, and refusing amendment will not practically eliminate IHC's ability to challenge the plaintiff's case.)* The Court also denied all but one of the demurrers, granting it in part to the fraud count (with leave to amend).

19. Thereafter, only the Wingate order was entered as to these issues. But discussions occurred with IGPM's counsel and Insight's counsel about delaying the entry of orders in the other cases so as to somewhat lessen the already large burden on all of the lawyers. IGPM, particularly, expressed a concern about not being flooded with 19 amended complaints that would require simultaneous substantive responses. Delaying the orders in the other cases allowed a temporary delay of the amended complaints required in order to cure the demurrer that the Court had sustained as to the plaintiffs' fraud count (additional specificity). This also allowed focus to remain on the lead Wingate case, which was in full speed with depositions, expert disclosures, and an amended complaint. In all that followed, orders were simply never presented in the other cases.

20. In January 2014, McGuire Woods entered an appearance and thereafter was substituted as Insight's defense counsel in all 19 cases.

21. After the Wingate case was dismissed, plaintiffs Filson and Harris sought to set trial dates in their cases. This resulted in a pre-trial conference with the Court on February 20, 2014. At that hearing, Insight objected to setting the trial dates in the non-Wingate cases until after the plaintiffs filed <u>Amended</u> Complaints. Plainly, Insight's demand suggested its continued understanding and agreement that this Court's prior substantive legal rulings applied in all of these cases. <u>The only way that the plaintiffs could have filed the anticipated amended complaints was if the outstanding orders were entered in each of the cases ruling on the demurrers and allowing amendment</u>.

22. Recently, progress in these cases has been delayed by a renewed Motion to Transfer filed in late December 2013 by the NECC Trustee in the Boston MDL proceeding. After the Wingate case was resolved and dismissed in February 2014, the parties were focused primarily on whether the Trustee's motion would be successful.

23. Meanwhile, the plaintiffs' counsel sought updated medical records and expenses for each of the plaintiffs. This information had previously been supplied in response to discovery requests from IGPM, but Insight rightfully requested updated information and specific responses to the independent discovery that it had previously tendered. Work on these proceeded. During this process, counsel became aware that protective orders had not been entered in the non-Wingate cases, and Insight agreed to prepare those so that confidential medical information could be provided. Previously, counsel for the plaintiffs had mistakenly believed that the Wingate protective order applied in all cases. Such orders have still not been circulated by Insight.

24. With the cooperation of Insight, the plaintiffs also scheduled and noticed Insight corporate depositions in all of the remaining cases for July, 2014. Similarly, plaintiffs' counsel and defense counsel worked to obtain mutually agreeable deposition dates for the plaintiffs' treating physicians. This proved to be a cumbersome and time-consuming task, but dates were ultimately set for early June, 2014.

**Outstanding Orders Needed**

25. This Court has already considered and decided all of the issues necessary for orders of the following:

   a. Denying Insight's Motion for Leave to Amend Admissions and for Reconsideration of Partial Summary Judgment in 10 cases argued on July 10, 2013. The Court's decision on these matters is reflected in the October 31, 2013 Opinion Letter (**Exhibit 4**). Nothing in the Opinion Letter relates uniquely to the Wingate case as the Court's reasoning focused instead on the fact that upholding Insight's admissions would not eliminate its presentation of the merits of its defenses. Hearings on those matter were fully noticed and heard on July 9, 2013;

    b. Denying IGPM's identical demurrers in all cases. On this point, IGPM has indicated its understanding that the Court has already ruled on these demurrers that were argued at the April 5, 2013 hearing. The plaintiffs understand that IGPM has no objection to the entry of corresponding orders, provided that it is clear that no rulings are being made on IGPM's Special Pleas. The proposed orders specifically include no ruling on IGPM's demurrers and the plaintiffs expressly do not seek orders relating to IGPM's demurrers; and

    c. Denying Insight's identical demurrers in all cases. Insight apparently now objects that it has not been fully heard on the identical demurrers that it filed to the identical complaints in the non-Wingate matters. This is in contrast to Insight's initial agreement with counsel expressed before this Court that it would not insist on duplicative hearings. This is also in contrast to Insight's refusal to schedule trial dates in non-Wingate cases until after the plaintiffs filed <u>amended</u> complaints (something that would make no sense if this Court had not already ruled on Insight's demurrers).

26. As this Court knows, the federal court in Boston issued a memorandum opinion on May 15, 2014, informing the parties that she would grant the Trustee's renewed motion to transfer. This, however, leaves many things unclear. These are outlined in the Status Report filed by these parties on May 23.

27. At about the same time that the Boston Court issued its opinion, Insight's counsel informed plaintiffs' counsel that Insight intended to ask the Boston court to revisit all of the issues for which orders are still needed from this Court (¶ 25 above). Prior to this time, plaintiffs' counsel had been unaware of any such plan by Insight.

28. This conversation with Insight counsel alerted plaintiffs' counsel to the need to present outstanding orders on these issues in this Court. Accordingly, counsel for the plaintiffs prepared orders on the matters identified in ¶ 25 above, and filed them with this Court.

29. Since the issuance of the Boston court's opinion, Insight has also unilaterally cancelled its agreement to proceed with the scheduled depositions of the plaintiffs' treating physicians. Insight has also indicated that it has taken the July 10-11 scheduled corporate depositions off of its calendar. Again, no motion ensued.

30. Within this context, Insight then filed an "Emergency" motion in Boston to enjoin the plaintiffs and this law firm from even presenting the orders that reflect the reasoned decisions already made by this Court. Plaintiff does not anticipate that such an injunction will be issued, as this Court is in the best position to know and effectuate decisions it has already made.

ROBERT EARL HARRIS, JR.

_____
By Counsel

J. Scott Sexton, Esq. (VSB No. 29284)
Anthony M. Russell, Esq. (VSB No. 44505)
Charles H. Smith, III, Esq. (VSB No. 32891)
H. David Gibson, Esq. (VSB No. 40641)
Benjamin D. Byrd, Esq. (VSB No. 76560)
Daniel R. Sullivan, Esq. (VSB No. 81550)
GENTRY LOCKE RAKES & MOORE, LLP
10 Franklin Road, S.E., Suite 800
P. O. Box 40013
Roanoke, Virginia 24022-0013
(540) 983-9300
FAX (540) 983-9400
sexton@gentrylocke.com
russell@gentrylocke.com
smith@gentrylocke.com
gibson@gentrylocke.com
byrd@gentrylocke.com
sullivan@gentrylocke.com
    *Counsel for Robert Earl Harris, Jr.*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 3rd day of June, 2014, the foregoing was served via electronic and regular mail upon:

Stephen D. Busch, Esq.
McGuire Woods, LLP
One James Center
901 E. Cary Street
Richmond, VA 23219
sbusch@mcquirewoods.com

James F., Neale, Esq.
McGuire Woods, LLP
Court Square Building
310 Fourth Street, N.E.
Suite 300
Charlottesville, VA  22902-1288
jneale@mcguirewoods.com

    Counsel for Defendant Insight Health Corp.

John Jessee, Esq.
Nancy F. Reynolds, Esq.
Michael P. Gardner, Esq.
1800 Wells Fargo Tower
Drawer 1200
Roanoke, Virginia 24006
john.jessee@leclairryan.com
nancy.reynolds@leclairryan.com
michael.gardner@leclairryan.com

    Counsel for the defendants Image Guided Pain Management,
    John Mathis, M.D., and Robert O'Brien, M.D.

                                                /s/
                                              By Counsel