# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LAIBILITY LITIGATION<br><br>This Document Relates to:<br>  All Cases | ) Master File No. 1:13-MD-2419-FDS<br>) MDL Docket No. 2419 |
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY CASES<br><br>This Document Relates to:<br>All Cases | ) Master Docket No. 12-12052-FDS |

### Declaration of J. Scott Sexton

1. My name is J. Scott Sexton; and I am competent to make this declaration.

2. I am a lawyer serving as lead counsel representing 18 plaintiffs in cases pending in state court in Roanoke, Virginia against Insight Health Corp. ("Insight"), Image Guided Pain Management and its affiliated physicians (collectively, "IGPM"), (the "Roanoke Gentry Locke Cases").

3. I have personal knowledge of the matters set forth in this Declaration; and have been present at all substantive hearings in the Roanoke Gentry Locke Cases.

4. Throughout this Declaration, references are made to counsel for Insight. Insight was originally represented by Bonner Kiernen. In mid-January, 2014, Bonner Kiernan was replaced by McGuire Woods. Accordingly, references in this Declaration to

1

those were necessary. The Circuit Court agreed to Insight's request, with the limitation that any supplemental submissions were to be filed within a reasonable time. Insight never filed such a submission nor did it ever indicate a desire to do so.

13. In the next days, Insight noticed the removal of the remaining non-Wingate cases. But, the federal court in Roanoke remanded all the cases on May 10, 2013.

14. After its failed attempt to remove the Roanoke Gentry Locke Cases to federal court, Insight later sought to withdraw its "healthcare provider" admissions and have the Circuit Court reconsider the summary judgments that had been granted. All of those motions were noticed and heard in Wingate and the other 10 partial summary judgment cases on July 9, 2013. Insight scheduled and noticed those motions to be heard jointly at one hearing; and, they were argued and presented in that manner.

15. Prior to the beginning of the July 9, 2013 hearing, counsel for all of the parties discussed the need to have rulings on the outstanding demurrer issues impacting the cases. Accordingly, counsel reminded the Court that the parties were anxious to receive those rulings. Similar exchanges occurred with the Court on September 24, 2013 at a discovery hearing. The judge indicated that he was working on the outstanding motions and would have his rulings to the parties in the near term.

16. On October 31, 2013, the Circuit Court issued its rulings on the outstanding motions by letter opinion styled in the Wingate case, but substantively resolving the identical issues raised by the demurrers and motions in all of the cases. That 25 page single-spaced opinion methodically addresses all of the issues raised by the parties. There, the Court indicated that it would deny Insight's motions to withdraw and change its admissions and to reconsider summary judgments previously entered on the healthcare provider issue. It

also denied all but one of the demurrers, granting it in part to the fraud count (with leave to amend).

17. Thereafter, only the Wingate order was entered as to these issues. But discussions occurred with IGPM's counsel and Insight's counsel about delaying the entry of orders in the other cases so as to somewhat lessen the already large burden on all of the lawyers. IGPM, particularly, expressed a concern about not being flooded with 19 amended complaints that would require simultaneous substantive responses. Delaying the orders in the other cases allowed a temporary delay of the amended complaints required in order to cure the demurrer that the Court had sustained as to the plaintiffs' fraud count (additional specificity). This also allowed focus to remain on the lead Wingate case, which was in full speed with depositions, expert disclosures, and an amended complaint. In all that followed, orders were simply never presented in the other cases.

**Outstanding Orders Needed in Roanoke Circuit Court**

18. Accordingly, state court orders remain un-entered on the following:

   a. Denying Insight's Motion for Leave to Amend Admissions and for Reconsideration of Partial Summary Judgment in 10 cases argued on July 10, 2013. On these orders, Insight has advanced no objection to the ministerial act necessary to implement the Court's decision on these matters that have been fully noticed and heard and on which the Court has indicated its decision;

   b. Denying IGPM's identical demurrers in all cases. On this point, Insight has also advanced no objection to the ministerial acts necessary to implement the Court's previously announced decisions; and

5

   c. Denying Insight's identical demurrers in all cases. Insight apparently now objects that it has not been fully heard on the identical demurrers that it filed to the identical complaints in the non-Wingate matters. This is in contrast to Insight's initial agreement with the Roanoke Circuit Court that it would not insist on duplicative hearings.

19. In late December 2013, the Trustee renewed his motion to transfer these cases to Boston. After the Wingate case was resolved and dismissed in February 2014, the parties were focused primarily on whether the Trustee's motion would be successful. Insight's counsel objected to setting any trial dates until after amended complaints were filed; but, they never indicated any notion of re-arguing the previously addressed motions. In fact, the entry of the outstanding demurrer orders was a necessary condition precedent to the filing of any amended complaints in these cases.

20. Meanwhile, the plaintiffs' counsel sought updated medical records and expenses for each of the plaintiffs. This information had previously been supplied in response to discovery requests from IGPM, but Insight rightfully requested updated information and specific responses to the independent discovery that it had previously tendered. Work on these proceeded. During this process, counsel became aware that protective orders had not been entered in the non-Wingate cases, and Insight agreed to prepare those so that confidential medical information could be provided. Previously, counsel for the plaintiffs had mistakenly believed that the Wingate protective order applied in all cases. Such orders have still not been circulated by Insight.

21. With the cooperation of Insight, the plaintiffs also scheduled and noticed Insight corporate depositions in all of the remaining cases for July, 2014. Similarly, plaintiffs'

6

counsel and defense counsel worked to obtain mutually agreeable deposition dates for the plaintiffs' treating physicians. This proved to be a cumbersome and time-consuming task, but dates were ultimately set for early June, 2014.

**Presentment Hearing in Roanoke Circuit Court**

22. Approximately mid-week during the week of May 12 (after Judge Zobel announced on May 13, 2014 that she would be granting the Trustee's Motion), opposing counsel communicated Insight's plan to have the Boston court revisit issues on which orders were not yet entered in the Roanoke City Circuit Court. Prior to this time, plaintiffs' counsel had been unaware of any such plan.

23. This conversation with Insight counsel alerted plaintiffs' counsel to the need to present outstanding orders on these issues in the Roanoke Circuit Court. Additionally, the announced prospect of re-litigating already decided issues in a distant city posed certain added delay and unnecessary expense for the Roanoke plaintiffs.

24. Accordingly, counsel for the plaintiffs prepared orders on the matters identified in ¶ 18 above, and filed them with the Roanoke City Circuit Court. As a rule, that Court will not enter orders that are not endorsed by all counsel, absent a specific presentment hearing heard with a minimum of 14 day notice to opposing counsel. Accordingly, plaintiffs' counsel and defense counsel cooperated in obtaining available dates from the Roanoke Court for such hearing.

25. Of the dates provided by the Court, Insight's counsel indicated that they were not available until June 27, 2014. Accordingly, Insight's preferred date was selected even though lead counsel for the plaintiffs will be out of the country on that date. This scheduling process (like all other dealings with McGuire Woods in these matters) was

7

never contentious or discourteous. Plaintiffs' counsel did not choose the option of simply "noticing" the hearings for the first available date outside the required 14 day window. Rather, this scheduling was handled precisely in the manner that all such matters are typically handled between these firms on a regular basis.

26. Meanwhile, the plaintiffs simultaneously alerted the Massachusetts District Court that these orders were pending before the Roanoke Court and requested that any order should allow the Roanoke Court the opportunity to address these lingering orders.

27. Following the Boston Court's May 15, 2014 Decision, Insight unilaterally cancelled its agreement to proceed with the scheduled depositions of the plaintiffs' treating physicians, citing this Court's May 15, 2014 Decision as the reason. Those depositions, which were very difficult to schedule, have now been cancelled as a result. The plaintiffs accepted Insight's position in this regard without filing a motion with the Roanoke Circuit Court attempting to compel Insight to maintain the prior agreed-upon schedule. Insight has also indicated that it has taken the July 10-11 scheduled corporate depositions off of its calendar. Again, no motion ensued.

28. Insight has also filed papers in each of the cases in the Roanoke City Circuit Court calling the May 15, 2014 Memorandum of Decision an "order" and telling that Court that each case "has been transferred to the District Court for the District of Massachusetts."

29. Within this context, Insight has filed an "Emergency" motion to enjoin this law firm from what it describes as "flagrant" behavior.

### Insight's Declaration of Trible

30. While Insight's proffered declaration of attorney Trible asserts personal knowledge of the facts, I have never seen him at any of the hearings in the Roanoke cases. To my

knowledge, none of the attorneys at our firm have even had any conversations with him about these cases.

31. As lead counsel, my involvement with McGuire Woods relating to these cases has been limited to Stephen Busch and James Neale, both of whom have been professional and friendly. To my knowledge, attorneys at our firm have behaved similarly.

32. All quotations contained within this declaration are taken directly from transcripts for the hearings referenced. Transcripts of those hearings are available, but are not attached hereto.

33. The plaintiffs and their counsel are harmed by having to drop everything to respond to a purported "emergency" when none exists.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed on May 31, 2014.

*[signature]*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LAIBILITY LITIGATION<br><br>This Document Relates to:<br>  All Cases | Master File No. 1:13-MD-2419-FDS<br>MDL Docket No. 2419 |
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY CASES<br><br>This Document Relates to:<br>All Cases | Master Docket No. 12-12052-FDS |

**Declaration of J. Scott Sexton**

1. My name is J. Scott Sexton; and I am competent to make this declaration.

2. I am a lawyer serving as lead counsel representing 18 plaintiffs in cases pending in state court in Roanoke, Virginia against Insight Health Corp. ("Insight"), Image Guided Pain Management and its affiliated physicians (collectively, "IGPM"), (the "Roanoke Gentry Locke Cases").

3. I have personal knowledge of the matters set forth in this Declaration; and have been present at all substantive hearings in the Roanoke Gentry Locke Cases.

4. Throughout this Declaration, references are made to counsel for Insight. Insight was originally represented by Bonner Kiernen. In mid-January, 2014, Bonner Kiernan was replaced by McGuire Woods. Accordingly, references in this Declaration to

1

communications with Insight counsel prior to mid-January 2014 refer to Bonner Kiernan, while later communications refer to McGuire Woods.

**Procedural History of the Roanoke Cases**

5. Wingate v. Insight was another case that served as the lead case for the Roanoke Gentry Locke Cases. The Wingate case has been dismissed.

6. The complaints in each case are substantively identical with the exception of individual medical facts relating to the particular plaintiff. Correspondingly, the demurrers (motions to dismiss) and other responsive pleadings by the defendants are substantively identical in each case.

7. On February 27, 2013, counsel for all parties met with the Roanoke City Circuit Court Judge and conducted a preliminary planning conference. The Judge explained that the Circuit Court was short-staffed with the loss of judges. He indicated that he would be hearing all of the Insight-related cases due to the efficiencies that this would allow. He requested cooperation from the parties and their counsel; and, he indicated that he did not want to duplicate work on these cases. At that time, the plaintiffs proposed a plan to use the Wingate case as the "lead" case and conduct matters in a way that would not needlessly duplicate work. All of the counsel indicated their consent to this general plan; and the cases proceeded in this manner.

8. On February 27, 2013, Insight also argued its noticed demurrers in the Wingate case. At the hearing, Insight began by noting that the complaint was well-pleaded. Insight's arguments then focused on whether NECC was a necessary party. As to the merits of its demurrers, Insight simply referred the Court to its written submissions.

5002/684/6686473v1

9. In the first 10 non-Wingate cases, Insight took the position that it was not a "healthcare provider" under Va. Code § 581.15. This is significant due to certain procedural and substantive privileges that are associated with status as a healthcare provider, including a cap on liability. Insight answered Requests for Admission denying that it was a "healthcare provider" as defined in the Virginia statute; and, it stated on the record in court that it was not a healthcare provider. Accordingly, the plaintiffs moved the Circuit Court for partial summary judgment as to this issue of Insight's status.

10. On April 5, 2013, the Circuit Court called the 10 non-Wingate cases for hearing on the issue of partial summary judgment. On the same day, Insight notified the Circuit Court that it had filed a notice removing the Wingate case to federal court in Roanoke. The hearing proceeded just as to the non-Wingate cases. The Circuit Court granted the motions for partial summary judgment from the bench, and orders were subsequently tendered and entered.

11. April 5, 2013 had also been reserved as a hearing date for the IGPM demurrers. Since Insight filed the Wingate notice of removal immediately prior to the hearing, the Circuit Court indicated a desire to go forward with the substantively identical demurrer hearing as to the other cases that had not been removed. The Court asked if there was any objection to such a process. Insight offered no objection; and IGPM advocated for proceeding with argument on the other cases because they were "basically identical."

12. The Circuit Court Judge stated his understanding that the issues were "common to all cases." With no objection, the Court then heard oral argument on the demurrer's filed and briefed by IGPM. Insight's counsel indicated that he would like the opportunity to review the transcript of the hearing and possibly offer supplemental submissions if he felt

3

those were necessary. The Circuit Court agreed to Insight's request, with the limitation that any supplemental submissions were to be filed within a reasonable time. Insight never filed such a submission nor did it ever indicate a desire to do so.

13. In the next days, Insight noticed the removal of the remaining non-Wingate cases. But, the federal court in Roanoke remanded all the cases on May 10, 2013.

14. After its failed attempt to remove the Roanoke Gentry Locke Cases to federal court, Insight later sought to withdraw its "healthcare provider" admissions and have the Circuit Court reconsider the summary judgments that had been granted. All of those motions were noticed and heard in Wingate and the other 10 partial summary judgment cases on July 9, 2013. Insight scheduled and noticed those motions to be heard jointly at one hearing; and, they were argued and presented in that manner.

15. Prior to the beginning of the July 9, 2013 hearing, counsel for all of the parties discussed the need to have rulings on the outstanding demurrer issues impacting the cases. Accordingly, counsel reminded the Court that the parties were anxious to receive those rulings. Similar exchanges occurred with the Court on September 24, 2013 at a discovery hearing. The judge indicated that he was working on the outstanding motions and would have his rulings to the parties in the near term.

16. On October 31, 2013, the Circuit Court issued its rulings on the outstanding motions by letter opinion styled in the Wingate case, but substantively resolving the identical issues raised by the demurrers and motions in all of the cases. That 25 page single-spaced opinion methodically addresses all of the issues raised by the parties. There, the Court indicated that it would deny Insight's motions to withdraw and change its admissions and to reconsider summary judgments previously entered on the healthcare provider issue. It

4

also denied all but one of the demurrers, granting it in part to the fraud count (with leave to amend).

17. Thereafter, only the Wingate order was entered as to these issues. But discussions occurred with IGPM's counsel and Insight's counsel about delaying the entry of orders in the other cases so as to somewhat lessen the already large burden on all of the lawyers. IGPM, particularly, expressed a concern about not being flooded with 19 amended complaints that would require simultaneous substantive responses. Delaying the orders in the other cases allowed a temporary delay of the amended complaints required in order to cure the demurrer that the Court had sustained as to the plaintiffs' fraud count (additional specificity). This also allowed focus to remain on the lead Wingate case, which was in full speed with depositions, expert disclosures, and an amended complaint. In all that followed, orders were simply never presented in the other cases.

**Outstanding Orders Needed in Roanoke Circuit Court**

18. Accordingly, state court orders remain un-entered on the following:

   a. Denying Insight's Motion for Leave to Amend Admissions and for Reconsideration of Partial Summary Judgment in 10 cases argued on July 10, 2013. On these orders, Insight has advanced no objection to the ministerial act necessary to implement the Court's decision on these matters that have been fully noticed and heard and on which the Court has indicated its decision;

   b. Denying IGPM's identical demurrers in all cases. On this point, Insight has also advanced no objection to the ministerial acts necessary to implement the Court's previously announced decisions; and

5

    c. Denying Insight's identical demurrers in all cases. Insight apparently now objects that it has not been fully heard on the identical demurrers that it filed to the identical complaints in the non-Wingate matters. This is in contrast to Insight's initial agreement with the Roanoke Circuit Court that it would not insist on duplicative hearings.

19. In late December 2013, the Trustee renewed his motion to transfer these cases to Boston. After the Wingate case was resolved and dismissed in February 2014, the parties were focused primarily on whether the Trustee's motion would be successful. Insight's counsel objected to setting any trial dates until after amended complaints were filed; but, they never indicated any notion of re-arguing the previously addressed motions. In fact, the entry of the outstanding demurrer orders was a necessary condition precedent to the filing of any amended complaints in these cases.

20. Meanwhile, the plaintiffs' counsel sought updated medical records and expenses for each of the plaintiffs. This information had previously been supplied in response to discovery requests from IGPM, but Insight rightfully requested updated information and specific responses to the independent discovery that it had previously tendered. Work on these proceeded. During this process, counsel became aware that protective orders had not been entered in the non-Wingate cases, and Insight agreed to prepare those so that confidential medical information could be provided. Previously, counsel for the plaintiffs had mistakenly believed that the Wingate protective order applied in all cases. Such orders have still not been circulated by Insight.

21. With the cooperation of Insight, the plaintiffs also scheduled and noticed Insight corporate depositions in all of the remaining cases for July, 2014. Similarly, plaintiffs'

counsel and defense counsel worked to obtain mutually agreeable deposition dates for the plaintiffs' treating physicians. This proved to be a cumbersome and time-consuming task, but dates were ultimately set for early June, 2014.

**Presentment Hearing in Roanoke Circuit Court**

22. Approximately mid-week during the week of May 12 (after Judge Zobel announced on May 13, 2014 that she would be granting the Trustee's Motion), opposing counsel communicated Insight's plan to have the Boston court revisit issues on which orders were not yet entered in the Roanoke City Circuit Court. Prior to this time, plaintiffs' counsel had been unaware of any such plan.

23. This conversation with Insight counsel alerted plaintiffs' counsel to the need to present outstanding orders on these issues in the Roanoke Circuit Court. Additionally, the announced prospect of re-litigating already decided issues in a distant city posed certain added delay and unnecessary expense for the Roanoke plaintiffs.

24. Accordingly, counsel for the plaintiffs prepared orders on the matters identified in ¶ 18 above, and filed them with the Roanoke City Circuit Court. As a rule, that Court will not enter orders that are not endorsed by all counsel, absent a specific presentment hearing heard with a minimum of 14 day notice to opposing counsel. Accordingly, plaintiffs' counsel and defense counsel cooperated in obtaining available dates from the Roanoke Court for such hearing.

25. Of the dates provided by the Court, Insight's counsel indicated that they were not available until June 27, 2014. Accordingly, Insight's preferred date was selected even though lead counsel for the plaintiffs will be out of the country on that date. This scheduling process (like all other dealings with McGuire Woods in these matters) was

7

never contentious or discourteous. Plaintiffs' counsel did not choose the option of simply "noticing" the hearings for the first available date outside the required 14 day window. Rather, this scheduling was handled precisely in the manner that all such matters are typically handled between these firms on a regular basis.

26. Meanwhile, the plaintiffs simultaneously alerted the Massachusetts District Court that these orders were pending before the Roanoke Court and requested that any order should allow the Roanoke Court the opportunity to address these lingering orders.

27. Following the Boston Court's May 15, 2014 Decision, Insight unilaterally cancelled its agreement to proceed with the scheduled depositions of the plaintiffs' treating physicians, citing this Court's May 15, 2014 Decision as the reason. Those depositions, which were very difficult to schedule, have now been cancelled as a result. The plaintiffs accepted Insight's position in this regard without filing a motion with the Roanoke Circuit Court attempting to compel Insight to maintain the prior agreed-upon schedule. Insight has also indicated that it has taken the July 10-11 scheduled corporate depositions off of its calendar. Again, no motion ensued.

28. Insight has also filed papers in each of the cases in the Roanoke City Circuit Court calling the May 15, 2014 Memorandum of Decision an "order" and telling that Court that each case "has been transferred to the District Court for the District of Massachusetts."

29. Within this context, Insight has filed an "Emergency" motion to enjoin this law firm from what it describes as "flagrant" behavior.

**Insight's Declaration of Trible**

30. While Insight's proffered declaration of attorney Trible asserts personal knowledge of the facts, I have never seen him at any of the hearings in the Roanoke cases. To my

8

knowledge, none of the attorneys at our firm have even had any conversations with him about these cases.

31. As lead counsel, my involvement with McGuire Woods relating to these cases has been limited to Stephen Busch and James Neale, both of whom have been professional and friendly. To my knowledge, attorneys at our firm have behaved similarly.

32. All quotations contained within this declaration are taken directly from transcripts for the hearings referenced.  Transcripts of those hearings are available, but are not attached hereto.

33. The plaintiffs and their counsel are harmed by having to drop everything to respond to a purported "emergency" when none exists.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed on May 31, 2014.

[signature]