IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br>   All Cases | ) Master File No. 1:13-MD-2419-FDS<br>) MDL Docket No. 2419 |
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY CASES<br><br>This Document Relates to:<br>All Cases | |

**ROANOKE GENTRY LOCKE PLAINTIFFS' RESPONSE IN OPPOSITION TO THE EMERGENCY MOTION OF INSIGHT HEALTH CORP. FOR ENTRY OF AN ORDER IN AID OF THIS COURT'S MEMORANDUM OF DECISION TRANSFERRING ADDITIONAL PERSONAL INJURY TORT AND WRONGFUL DEATH CASES TO THIS COURT, DATED MAY 15, 2014 [MDL DOC. NO. 1131] ENJOINING GENTRY LOCKE PLAINTIFFS**

COME NOW, the Roanoke Gentry Locke Plaintiffs[1], by counsel, and specially appear to note their opposition to Insight's Emergency Motion as follows:

**Introduction**

First, there is no emergency. Insight's motion was apparently prompted by the scheduling of a presentment hearing for orders on motions already heard by the Roanoke Circuit

---

[1] Sandra F. Artis; Dana Marlene Bradley; Ronnie A. Brown; Ronald T. Courtney; Trudy R. Epperly; Barbara J. Filson; Zachary Lucas Foutz, a Minor, by His Parents and Next Friends, Benjamin T. Foutz and Andrea L. Foutz; Robert Earl Harris, Jr.; Julian D. Holbrook; Robert Dana Bender, Executor of the Estate of Ralph James Irace, Jr., Deceased; Chester T. Kalinoski; Pauline R. McFarlane; Odessa M. Shuck; James Wirt Smith, Jr.; Randolph E. Smith; Patricia S. Brown, John D. Spicer, and Jenae S. Patsell, Executors of the Estate of Louis B. Spicer, Deceased; Rose M. White; and Richard A. Whitlow (the "Roanoke Gentry Locke Plaintiffs")

1

Court. In order to accommodate Insight's "schedule," that hearing was put off **47 days** and is not noticed to be heard until June 27, 2014 (the earliest date Insight said it was available).[2] The plaintiffs' deference to Insight's remarkably tight calendar cannot fairly be described as a *"rush"* to the Roanoke Circuit Court. Also, the plaintiffs advised this Court of the presentment of those orders and their request that an ultimate order implementing this Court's Memorandum of Decision ("Decision") should allow the flexibility for entry of the Roanoke orders. (ECF Doc. No. 1142). There has been no effort by the plaintiffs to rush or be anything but transparent.

Meanwhile, Insight's reaction to this Court's Decision has been to unilaterally cancel June depositions of the plaintiffs' treating physicians that were extraordinarily difficult to schedule in the first place. (**Exh. 1** at ¶ 27). It has also taken long-scheduled corporate depositions off of its calendar for July 10-11. Insight is using the Decision as an excuse for an instant vacation from the litigation duties in these cases.

The problem with Insight's actions is that the cases are not currently in Boston, as they have neither been removed nor transferred. (*See* ECF No. 1142). Insight acts as though the cases are not in Roanoke, either, despite the lack of any order or the prerequisites necessary for removal. From Insight's perspective, there is no sheriff in town to punish its misbehavior (or compel its attendance at depositions). While behaving in this manner, Insight now seeks to enjoin Gentry Locke from doing the job that 18 injured plaintiffs have entrusted to it by filing this Henny Penny "Emergency" Motion. If the motion was appropriate at all, it should have been filed by the plaintiffs. But, this is not an "emergency" for this Court, nor Insight, nor the plaintiffs. It is, instead, just a foolish tempest in a teapot.

As to the merits, Insight's Motion is built on at least four false characterizations:

---

[2] The accurate procedural history of these cases is summarized in the attached Exhibit 1, Declaration of J. Scott Sexton, which is incorporated herein without restatement. **Ex. 1, at ¶ 22-25.**

2

1. This Court's May 15, 2014 Memorandum of Decision ("Decision") is actually an order;
2. This Court has already accomplished the exercise of exclusive jurisdiction[3] over the Roanoke state court cases (ECF Doc. No. 1150, at 3);
3. These state court cases have already been removed (Id. at 8); and
4. These state court cases have already been transferred (Id. at 7).

Upon these incorrect theories, Insight adds an incomplete and misleading recital of facts. Then, it adds an erroneous and inapplicable recital of the law under the Anti-Injunction Act. And, finally, it attempts to recast its own desire to re-litigate already decided issues and motions as a crisis relating to this Court's jurisdiction. It does not acknowledge the actual requirements for the extraordinary relief of enjoining state court proceedings, much less satisfy those stringent criteria.

### A. The May 15, 2014 Decision is not an order.

Insight's whole argument is premised on the false notion that this Court's May 15, 2014, Decision is an order accomplishing the removal and transfer of the Roanoke Gentry Locke Plaintiff cases to this Court. In its filings with the Roanoke Circuit Court, Insight has called the Decision an "order." It has represented to that court that each case "has been transferred to the District Court for the District of Massachusetts." Its Emergency Motion to this Court stops short of such labeling liberties, but still assumes order status for the Decision. It should not do either because the Decision in no way purports to be an "order."

1. A court speaks through its orders.

It is well-settled that a court speaks through its orders, not through a memorandum yet to be reduced to an order. *See Negron-Almeda v. Santiago*, 528 F.3d 15, 22-23 (1st Cir. 2008). "District court orders are documents of considerable import. A district court speaks to the parties

---

[3] Jurisdiction under 28 USC § 1334(b) is not exclusive, and no order has been entered in any event.

3

and the court of appeals primarily through its orders." *Id.;* see also, *In re: Thinking Machines Corp.*, 67 F.3d 1021, 1026 (1st Cir. 1995). In *Thinking Machines*, the First Circuit ruled that a debtor's rejection of a lease took effect on the date of the bankruptcy court's approval order, not the date of the trustee's motion. *Id.* at 1024-26. The First Circuit reasoned:

> Court orders are customarily important events in the life of a judicial proceeding; they are the primary means through which courts speak, and they should carry commensurate weight. We see no reason for allowing a trustee to substitute his voice for that of the court. The <u>trustee may sing all he wants, but it is the court that must call the tune.</u>

*Id.* at 1026. (quotations omitted) (emphasis added). So, too, here. No court can enforce either the Decision or a party's interpretation of the Decision unless or until it is reduced to an order.

2. <u>A separate order is required under Rule 58.</u>

Even if the Decision purported also to be an order (which it does not), a separate order is required under Fed. R. Civ. P. 58(a). Rule 58 requires that "[e]very judgment and amended judgment must be set out in a separate document." Fed. R. Civ. P. 58(a). The federal rules define "judgment" as "a decree and any order from which an appeal lies." Fed. R. Civ. P. 54(a). The district court's Decision, which grants the trustee's renewed motion to transfer (ECF No. 723), sets forth an appealable issue. Therefore, it is a judgment under Rule 54 and subject to Rule 58's "separate order" requirement.

The purpose of Rule 58 is to "clarify when the time for appeal begins to run." *Bankers Trust Co. v. Mallis*, 435 U.S. 381, 384 (1978) (per curiam). Such clarification is essential to pursuing an appeal, since the appellate rules require a notice of appeal in a civil case to be filed with the district clerk "within 30 days after the judgment or order appealed from is entered." Fed. R. App. P. 4(a)(1)(A). A judgment or order is "entered" for Rule 4(a) purposes when it is placed in the civil docket under Rule 79(a) and "the judgment or order is set forth on a separate

4

document." Fed. R. App. P. 4(a)(7). *See Colon-Santiago v. Rosario*, 438 F.3d 101, 106-08 (1st Cir. 2006) (holding that the time to appeal did not begin to run until judgment was entered by separate document under Rule 58, even though the district court had issued its memorandum of opinion over three months earlier).

Rule 58 eliminates uncertainties about the timeline for appeals by "requiring that there be a judgment set out on a separate document – <u>distinct from any opinion or memorandum</u> …" *Bankers Trust Co.*, 435 U.S. at 384 (quoting Fed. R. Civ. P. 58 advisory committee notes on 1963 amendments) (emphasis added). *See In re: Cendant Corp Sec. Lit.*, 454 F.3d 234, 243 (3d Cir. 2006) ("The goal of Rule 58(a) is to impose a <u>clear line of demarcation</u> between a judgment and an opinion or memorandum."). To satisfy Rule 58, the Court must enter judgment by a separate order and thereby draw the necessary "clear line of demarcation" setting forth the timeline for appeal.

3. <u>The Decision plainly contemplates further action to "effectuate" the planned removal and transfer.</u>

Finally, and most importantly, the Decision itself contemplates further action by the parties to "effectuate" (i.e., *make effective*) its intent. It instructs counsel to "inform the court regarding any steps necessary to effectuate the transfer of cases pursuant to this <u>opinion</u>." (ECF No. 1131 at 15, emphasis added.) The <u>only</u> parties who have done so in this case are the Roanoke Gentry Locke Plaintiffs. (ECF Doc. No. 1142, at 2, 4: *"The procedures set forth in Rule 9027 must be followed to notice removal of any cases pending in state court."*) Neither Insight nor the Trustee has responded to the Court's request, except for the Trustee's bare proposed order. Presumably, this Court is considering the points raised by the Roanoke Gentry Locke Plaintiffs and will issue appropriate order(s) conforming to the rules. Until it does, the Decision is not an enforceable or appealable order.

5002/642/6689035v1

### B. The Anti-Injunction Act cannot be used in the manner requested by Insight

1. <u>Federal courts cannot enjoin state court proceedings unless one of the three limited and strictly construed exceptions is met.</u>

District courts are empowered by the All Writs Act (AWA) to "issue all writs necessary or appropriate in the aid of their respective jurisdictions <u>and agreeable to the usages and principles of law.</u>" 28 U.S.C. § 1651 (emphasis added).[4] Curtailing the AWA, the Anti-Injunction Act (AIA) <u>prohibits</u> injunctions to stay proceedings in state courts with three very limited and strictly construed exceptions:

> A court of the United States may not grant an injunction to stay proceedings in a State court except [1] as expressly authorized by Act of Congress, or [2] where necessary in aid of its jurisdiction, or [3] to protect or effectuate its judgments.

28 U.S.C. § 2283 (1982). While Insight categorizes the AIA as a "complement" to the All Writs Act (AWA), the AIA actually serves as a crucial restraint to the power articulated in the AWA. The animating purpose of the AIA is to prevent federal courts from enjoining state courts without proper (and precise) rationale. *See generally Atlantic Coast Line R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281 (1970). Moreover, the AIA "cannot be evaded by addressing the order to the parties" in lieu of addressing the order to the state court itself. *Gloucester M. R. Corp. v. Charles Parisi, Inc.*, 848 F.2d 12, 15 (1st Cir. 1988) (quotation omitted).

Due to important federalism concerns, the Supreme Court disfavors federal injunctions against state courts. "'[A]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed.'" *Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2371 (2011) (quoting *Atlantic Coast*, 398 U.S. at 287). In interpreting the limited injunction exceptions of the AIA, the Supreme Court holds that because

---

[4] Although not at issue in the present "Emergency" Motion, the AWA <u>cannot</u> be used to remove a case from state court. *Sygenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, 34 (2002) ("Removal is governed by statute, and invocation of ancillary jurisdiction, like the All Writs Act, does not dispense with the need for compliance with statutory requirements.")

6

"the [AIA's] prohibition against such injunctions in part rests on the fundamental constitutional independence of the States and their courts, the exceptions <u>should not be enlarged by loose statutory construction</u>." *Atlantic Coast*, 398 U.S. at 287 (emphasis added); *see also Charles Parisi, Inc.*, 848 F.2d at 15 (discussing the three exceptions to the AIA, rejecting the movant's arguments on all three, and denying the motion for injunction).

2. Necessary means *necessary*.

Here, Insight seeks a broad injunction of state court proceedings based on the second statutory exception to the AIA—the "necessary in aid of" exception (although Insight repeatedly omits the "necessary" from its argument, *e.g.*, ECF Doc. 1150, pg. 8: "The 'in aid of its jurisdiction' exception…"). Because of the federalism concerns articulated above, "courts construe the "necessary in aid of its jurisdiction" exception narrowly." *Bussler v. Eagle Express Charters, LLC*, No. 12-000687-KD-C, 2013 U.S. Dist. LEXIS 86327, *2 (S.D. Ala. June 19, 2013) (quotations omitted); *see also Billy Jack for Her, Inc.*, 515 F. Supp. 456, 459 (S.D.N.Y 1981) (denying the requested injunction because the "necessary in aid of" exception did not apply).

Courts interpreting the "necessary in aid of" exception to the AIA's restrictions have applied it narrowly, generally granting injunctions in situations where: (1) the federal district court has exclusive jurisdiction over the action because it had already been removed to federal court; or, (2) the state court is presiding over an in rem action involving a res that was already subject to another in rem action in the federal court. *See, e.g., Rhodes v. Advanced Prop. Mgmt.*, No. 3:10-cv-826, 2011 U.S. Dist. LEXIS 81636, *4 (D. Conn. July 26, 2011) (distinguishing facts in its case from the two scenarios above and denying a motion for injunction); *Charles*

7

*Parisi, Inc.*, 848 at 15; *Retirement Systems*, 386 F.3d at 428–31. Neither scenario is present here.[5]

While a limited number of courts have applied the "necessary in aid of" exception to MDL proceedings (based on the idea that a fully litigated MDL proceeding, once at its end, is conceptually similar to a piece of property in an in rem proceeding), they have done so on a limited basis and involving factual circumstances that do not arise here. For instance, Insight cites the Fifth Circuit case of *Newby v. Enron Corp.*, 338 F.3d 467 (5th Cir. 2003). There, a long term pattern of vexatious litigation tactics was combined with conflicting and duplicative motions for injunctive relief that were filed in both state and federal court proceedings, (causing a significant and unnecessary risk of inconsistent injunctions). The *Newby* court found "a serious and systematic abuse of the courts" that occurred over the course of three years as counsel for one of the parties filed harassing injunctions in "an attempt to taunt the parties and the court and to undermine the district court's ability to control the consolidated litigation ." *Newby*, 338 F.3d at 475.[6] There is no such behavior or danger here.

Instead of explaining how an injunction would be <u>necessary</u> in aid of the Court's jurisdiction, Insight vaguely asserts that an injunction against the Gentry Locke plaintiffs and attorneys "would aid this Court's jurisdiction over the MDL generally and requests to *enforce the Decision* specifically." (ECF No. 1150, pg. 8, emphasis added). As noted above, memorandum opinions are not enforced. They exist to explain the reasoning of the court for the parties and

---

[5] Insight does cite *Billy Jack for Her, Inc. v. New York Coat, Suit, Dress, etc.*, 515 F. Supp. 456 (S.D.N.Y. 1981), in support of its proposition that the "necessary in aid of" exception is met here, but Insight's reliance is misplaced. The district court in *Billy Jack for Her* denied the requested injunction based on §2283, and specifically held the "necessary in aid of" exception <u>did not apply</u>.

[6] See also, *Castro v. United States*, 775 F.2d 399, 409 (1st Cir. 1985) (enjoining serial vexatious and frivolous lawsuits).

8

appellate courts. Orders are enforced. *See In re: Dehon*, 334 B.R. 55, 59 n.8 (Bankr. D. Mass. 2005).[7]

Standing alone, it makes no difference whether an injunction of state court proceedings "would aid" jurisdiction. The crucial question is whether an injunction is necessary in aid of the court's jurisdiction. The plain language of the statute imposes a strict requirement that the injunction be indispensable in aid of the federal court's jurisdiction. 28 U.S.C. § 2283; *see, e.g., Retirement Systems of Alabama v. J.P. Morgan Chase & Co.*, 386 F.3d 419, 425-30 (2d Cir. 2004) (lengthy discussion of the "necessary in aid of" exception, reversing and vacating the district court's injunction for error); *Atlantic Coast*, 398 U.S. at 295 (finding that the "necessary in aid of" exception applies where an injunction would be "necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case.").

On pages 4 and 7 of Insight's Memorandum, it argues that enjoining the Gentry Locke plaintiffs and attorneys would "provide clarity to the parties and to the Roanoke City Circuit Court" and "protect the integrity of [the Court's] Decision." This is not the applicable standard for injunctions. Additionally, the Court may revise, alter, supplement or amend its Decision at any time and for any reason prior to the entry of an order. The Decision is not an order.

Obviously, there are any number of ways this Court could "provide clarity to the parties and to the Roanoke City Circuit Court" short of the extreme measures requested by Insight (e.g., entry of an order). For its part, Insight could assist this Court by responding to its specific request: "Counsel shall inform the court regarding any steps necessary to effectuate the transfer

---

[7] In *Dehon*, the bankruptcy judge ruled from the bench as to which matters were core and non-core, but no order was ever entered. The court proceeded to revise its pronouncement as to which matters were non-core, and only then issued a separate order fixing its ruling. *Id.*

9

of cases pursuant to this opinion."[8] More to it, the Roanoke plaintiffs have not taken any action that threatens the Decision. But, if the Decision needs protecting, then an order effectuating the intent of the Decision is the way to do it --- not a 700 mile injunction.[9] Insight's failure to explain how an injunction is necessary here is likely not a matter of neglect, but one of conscious avoidance --- because the standards for establishing these criteria are so high.

Similarly, it is no surprise that Insight also advocates omitting the requirements[10] necessary for injunctive relief generally. (ECF Doc. No. 1150, at 9). Insight's argument for an unrestrained application of the AWA was rejected forty years ago by the First Circuit Court of Appeals in *David v. Trevisono*, 495 F. 2d 562, 563-64 (1st Cir. 1974). In *David*, the district court in Rhode Island issued an injunction under the AWA, without findings of fact or reasoning, believing the AWA was free from the "ordinary requirements" under the Federal Rules of Civil Procedure for protective orders or preliminary injunctions. *Id.* at 563. The First Circuit disagreed, holding the procedural requirements for issuing injunctions could not be ignored, regardless of whether the court proceeded under the AWA or not. *Id.*[11] This should come as no surprise given the specific requirement of the AWA that actions taken thereunder must be "agreeable to the usages and principles of law." Injunction standards are *applicable principles of law* for an injunction. In any event, under the standards applicable in the First Circuit, Insight

---

[8] If Insight really believes that the Decision is an <u>order</u>, then it has certainly disregarded the mandate imposed therein. This is likely due to the patent logical obstacles that prevent a disregard of Rule 9027 as explained in the plaintiffs' other filings. (ECF 1142).
[9] Here, it is the Roanoke plaintiffs who actually need protection from the expensive and delaying vacation that Insight has unilaterally declared on account of the Decision.
[10] The traditional requirements for injunctions are: irreparable injury, inadequate legal remedy, a balance of equities, and the public interests. *Global NAPs, Inc. v. Verizon New England, Inc.*, 706 F.3d 8, 13 (1st Cir. 2013)
[11] The First Circuit upheld the protective order section of the District Court's order (because it had found sufficient facts to support it), but struck the section of the order it considered to be an injunction (because the requisite preliminary injunction findings had not been made). *David*, 495 F.2d at 564-65.

10

must prove facts satisfying the injunction standards of Rule 65 before an injunction can issue. Its motion and memorandum do not attempt to meet this burden.

Insight relies on *Klay v. United Healthgroup, Inc.* to support its contrary assertion. 376 F.3d 1092, (11th Cir. 2004). There, the Eleventh Circuit reversed the district court's injunction as failing to meet the "necessary in aid of jurisdiction" test. *Id.*, at 1111. No court within the First Circuit has cited *Klay* for the theory that injunction analysis does not apply to the AWA.

More importantly, the actual holding in *Klay* decimates Insight's argument. *Klay* acknowledges that the AWA does not allow federal courts to enjoin state court proceedings to protect its ability to render judgment in ongoing in personam proceedings. 376 F. 3d at 1102-03. "The simple fact that litigation involving the same issues is occurring in another forum does not sufficiently threaten the court's jurisdiction as to warrant an injunction under this act." *Id.* The *Klay* court cites *Atlantic Coast* as expressly prohibiting a district court from interfering in state court proceedings "simply to protect is ability to render a judgment in a pending case free of potential *res judicata* or collateral estoppel effects." *Id.* at 1102 n.15. Thus, even if the state court proceedings in Roanoke involved the same issues as the MDL proceedings in this Court, they would not be subject to injunction under the AWA "necessary in aid of jurisdiction" requirements.

### C. The Roanoke Court has already ruled on the matters at issue and should enter corresponding orders.

1. Insight's complaints prove that no injunction is appropriate or required here.

Insight provides no explanation of how an injunction would "aid" this Court's jurisdiction. What is really at issue is Insight's desire to re-litigate matters and motions on Virginia law that have already been decided. Much of its Emergency Motion is devoted to arguing that certain orders should not be entered in the Roanoke Court. But, the entry of orders

11

in that court would not hurt this Court's jurisdiction in any way. In fact, it would help the process wherever the cases finally rest. So, as a matter of logical integrity, Insight cannot equate its own hopes for a second chance at these issues with a threat to this Court. This Court's authority and jurisdiction are what they are; orders entered in state court in Roanoke, Virginia are not capable of changing them. Orders *erroneously* entered in Roanoke are not even capable of hurting Insight (even if harm to Insight was the standard here – which it is not).

Consider that, if Insight's premises were correct, then (1) no order would be needed to effectuate the Decision, (2) this Court would already have exclusive jurisdiction, (3) the Roanoke Court would have no jurisdiction, and (4) the cases would already be removed and transferred. Under those facts, any order by the Roanoke Court would be null and void by operation of law; orders by the Roanoke Court would mean nothing. If Insight is correct, then all it would have to do after the cases are actually removed and transferred is ask this Court to rule that the orders entered by the Roanoke Court between the Decision and actual removal should be disregarded and reversed. The end. Certainly that negates any "necessity" for an injunction. The problem is that Insight does not really believe its own underlying premises any more than the plaintiffs do.[12]

2. Insight is wrong on the substance of its complaints regarding the proposed orders.

The procedural history of these cases is set forth in the attached declaration. **Exhibit 1**. That declaration explains exactly the orders needed in the Roanoke Court and why. There are three categories of orders. First, there are orders needed denying Insight's Motion for Leave to Amend its Admissions and for Reconsideration of Partial Summary Judgment. (Id. at ¶¶ 9, 10, 14, 16, 17 and 18a). Insight neither mentions these orders in its motion, nor does it have any argument as to why these orders should not be entered on the motions that Insight noticed for hearing on July 9, 2013. Second, there are orders denying in part and granting in part the

---

[12] Decades of being told that "a court speaks through its orders" are hard to forget overnight.

demurrers (motions to dismiss) filed by the other defendants, IGPM. Those have all been noticed, heard and ruled upon. (Id. at ¶¶ 11, 12, 16, 17 and 18b). Insight does not mention or offer objection to these orders. Third, there are orders needed on Insight's demurrers. These substantively identical motions were advanced in each of the 19 substantively identical Roanoke Gentry Locke cases. These are the ones that Insight mentions in its motion, claiming that they have never been heard by the Roanoke Court.

As to this third category, Insight is technically correct (and just barely so), in that these orders for substantively identical demurrers were never *noticed* for hearing separately in each of the 19 cases. The issues were noticed and heard in the Wingate case on February 27, 2013. (Id. at ¶ 8). But, Insight leaves Hamlet out of the play when it complains of this technical issue because, on the very same day, Insight agreed that the Roanoke Court's determination of substantive issues would apply to all of the cases without duplicate hearings. (Id. at ¶7). This logical and reasonable stipulation came at the urging of the Roanoke Court at the very beginning of these cases. It was made during a conference in the Judge's chambers with counsel for all parties. There, the parties all agreed that multiple substantive hearings would not be required in these cases out of respect for common sense and the limited judicial resources then existing in the Circuit. (Id. at ¶7). Thus, when the Roanoke Court issued its opinion in Wingate on October 31, 2013, it was in effect ruling on the Insight demurrers in all of the cases.[13]

Everyone knew this then, and everyone still does. But, for reasons mutual to all of the parties, counsel for all the parties agreed to delay the entry of the demurrer orders on the non-Wingate cases after the Court's October 31, 2013 ruling on the demurrer issues. (Id. at ¶17).

---

[13] Insight's present counsel were not at that meeting, but they have been informed of it. Defense counsel for IGPM (who have not changed during the course of these cases) were there and can confirm any suspicions Insight may have as to plaintiffs' counsel's account of this. Presumably, Insight's present counsel have sought that clarity from their fellow defense lawyers.

13

Entry of those orders would have required amended complaints (and corresponding defensive pleadings) in all of the cases and counsel for the plaintiffs and the defendants were otherwise overwhelmed with pressing matters in the lead Wingate case. Of course, the orders should have been entered within the past few months, but plaintiffs' counsel were focused on other concerns.

Now, within this context, Insight makes the most internally inconsistent aspect of its argument. First, it claims that the Roanoke Court has not really ruled on these motions so the presentment of orders to the Roanoke Court is not ministerial. (ECF Doc. No. 1150, at 2). Second, it claims that these plaintiffs are trying to trick this court and take advantage of its lack of familiarity with the history of the Roanoke cases. (Id. at 3). Third, it advocates that the only way to protect this Court (translated, protect *Insight*) is to make sure that the one judge on the whole planet who knows exactly what he has and has not done cannot possibly enter the orders reflecting what he has and has not already done. Rather than allowing that Roanoke Court to "provide clarity" for this Court as to its prior substantive rulings on Virginia substantive law, Insight suggests that he cannot be trusted to know what is and is not ministerial or what he has or has not ruled upon.

Insight's accusations of trickery are misplaced. Rather, it is obvious that Insight just wants a second bite at the apple. As an alternative to hearing what it knows the Roanoke Court has to say, it prefers its odds of convincing this Court that it should get that second chance (or 18 second chances– if the Court honors Insight's notion that 18 separate hearings would be required for the identical motions).

WHEREFORE, the Roanoke Gentry Locke Plaintiffs ask the Court to deny the Emergency Motion filed by Insight and grant such additional relief to the plaintiffs as may be just.

ROANOKE GENTRY LOCKE PLAINTIFFS

/s/ J. Scott Sexton
Of Counsel

J. Scott Sexton, Esq. (VSB No. 29284)
H. David Gibson (VSB No. 40641)
James J. O'Keeffe (VSB No. 48620)
GENTRY LOCKE RAKES & MOORE, LLP
10 Franklin Road, S.E., Suite 800
P. O. Box 40013
Roanoke, Virginia 24022-0013
(540) 983-9300
FAX (540) 983-9400
sexton@gentrylocke.com
gibson@gentrylocke.com
okeeffe@gentrylocke.com

*Counsel for Roanoke Gentry Locke Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on May 31, 2014, I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF system, which then sent a notification of such filing (NEF) to all counsel of record.

/s/ J. Scott Sexton

5002/642/6689035v1