```
V I R G I N I A:

                    IN THE CIRCUIT COURT
                   FOR THE CITY OF ROANOKE


- - - - - - - - - - - - - - - -
SHARON G. WINGATE,              :
Executor of the Estate of       :
DOUGLAS GRAY WINGATE,           :
Deceased,                       :
                                :
       Plaintiff,               :
                                :   Case No.: Cl12-2547
vs.                             :
                                :
INSIGHT HEALTH CORP.,           :
                                :
       Defendant/               :
       Cross-Claim Defendant,   :
                                :
vs.                             :
                                :
JOHN M. MATHIS, M.D., ROBERT    :
F. O'BRIEN, M.D., and IMAGE     :
GUIDED PAIN MANAGEMENT, PC,     :
                                :
       Defendant/               :
       Cross-Claim Plaintiff,   :
- - - - - - - - - - - - - - - -
```

APRIL 5, 2013
10:00 A.M.


HEARD BEFORE:
THE HONORABLE CHARLES N. DORSEY




CENTRAL VIRGINIA REPORTERS
P.O. BOX 12628
ROANOKE, VA 24027
(540) 380-5017

**EXHIBIT 3**

2

APPEARANCES:

        GENTRY, LOCKE, RAKES & MOORE
        Roanoke, Virginia
        BY:    J. SCOTT SEXTON, ESQ.
               DANIEL SULLIVAN, ESQ.

             Counsel on behalf of the Plaintiff

        LECLAIR RYAN
        Roanoke, Virginia
        BY:    NANCY REYNOLDS, ESQ.
               MICHAEL P. GARDNER, ESQ.

             Counsel on behalf of Dr. Mathis,
             Dr. O'Brien, and Image Guided Pain
             Management

        BONNER, KIERNAN, TREBACH & CROCIATA
        Washington, DC
        BY:    CLINTON R. SHAW, JR., ESQ.

             Counsel on behalf of Insight Health
             Corporation

                    * * * * *

3

        Whereupon, the following cause came to be heard before the Honorable Charles Dorsey, Judge of the Circuit Court of Roanoke, Virginia, sitting in Roanoke, Virginia, on the 5th day of April, 2013, in the presence of those listed under "Appearances" on Page 2 herein.

        The Court Reporter, Cynthia N. Stiles, CCR, was duly sworn.

4

1  (10:35 a.m.)

2                    PROCEEDINGS

3

4        THE COURT:  All right.  In no particular

5   order, we have circuit court civil file, and these

6   are all city cases being heard in the City:

7   CL13-0057, Smith versus Mathis and others;

8   CL13-0055, Harris versus Insight and others;

9   CL13-0009, Foutz versus Insight and others;

10  CL12-2571, Epperly versus Insight and others.

11       Just for the purpose of getting to it:  We

12  also have CL12-2547, Wingate versus Insight and

13  others; CL12-2573, McFarlane versus Insight and

14  others; CL12-2574, Kalinoski versus Insight and

15  others; CL12-2575, Filson versus Insight and

16  others; CL12-2576, Bradley versus Insight and

17  others; and CL12-2572, Smith versus Insight and

18  others.

19       First of all, are there any --  And I have the

20  oath of the Court Reporter, and it's been entered

21  as to all those matters for the purposes of today's

22  hearing.

23       What I'd like to do is get each counsel to

24  identify themselves on the record, announce whether

1   they're ready or not, announce who they represent,
2   and specifically let me know if there are any other
3   files that should have been read that were not
4   included for the purposes of this hearing that you
5   think are included.  And let me start, Mr. Sexton,
6   with you.
7       MR. SEXTON:  Yes, Your Honor.  Scott Sexton
8   and Dan Sullivan from Gentry Locke, representing
9   the Plaintiffs in each of the cases that you named.
10      I tried to keep a careful listen, but did you
11  name the matter CL13-0054, which is Whitlow versus
12  Insight?
13      THE COURT:  I do not think I did.
14      MR. SEXTON:  The Court Reporter is indicating
15  that you did not; and so that's an additional case
16  that is set for hearing today as well on a motion
17  for partial summary judgment.
18      THE COURT:  All right.  If I need that, I'll
19  have it brought in.  Otherwise, I assume that these
20  issues are shared by all or most of these,
21  dependent upon the issue.
22      MR. SEXTON:  They're identical in each case.
23      THE COURT:  All right.  So 13, what was it,
24  0054?

32

1  get the number of lawyers that we have here and/or
2  more, I think all of us start getting a little, a
3  little concerned, you know, when I start getting 13
4  or 14 lawyers, that one person endorses for all of
5  them.
6       Now, I've not yet had a problem with that,
7  however.  So all I'm going to say is I get
8  sensitive about that.  But no, I don't like that.
9  And I will accept, though, Mr. Sexton, particularly
10 in today's world in this kind of case and with
11 where the offices are and that sort of thing, I
12 will accept fax'ed endorsements, if that will
13 simplify matters, so it doesn't take two months to
14 send something around by mail.  I agree with you; I
15 want to get the orders in and get them entered.
16      Any way you all want to do it is fine.  Yeah,
17 I'm not going to compel people to give up rights to
18 endorsement.  I don't like that personally.
19      So that takes care of that.  And Miss
20 Reynolds, you've got demurrers?
21      MS. REYNOLDS:  Yes, sir.
22      THE COURT:  All right.
23      MS. REYNOLDS:  Mr. Gardner and I have
24 demurrers on behalf of Dr. Mathis, Dr. O'Brien,

33

1    Image Guided Pain Management, which we'll refer to
2    as IGPM collectively.
3         The demurrers, first stating the standard for
4    demurrer, admits the truth of all properly pled
5    material facts in the complaint, and all reasonable
6    factual inferences fairly and justly drawn from the
7    facts alleged.
8         THE COURT:  Yeah, and I understand that.  I
9    know where the demurrers are, and I understand what
10   a demurrer is.
11        MS. REYNOLDS:  We are demurring to Count 2,
12   Consumer Protection Act, Count 4, gross negligence,
13   Count 5, fraud, and to the punitive damages claim.
14        Your Honor, I don't see that it's necessary to
15   go through the specific facts, unless the Court
16   wants to hear.  I think you heard sufficiently the
17   last time we were here.
18        Suffice it to say that Mr. Wingate went to the
19   Insight Imaging Roanoke location on September 6 of
20   2012 for an epidural steroid injection in his C
21   spine for shoulder pain.  Dr. O'Brien administered
22   that injection.  Subsequent to that, he was found
23   to have meningitis and passed.
24        The steroid used was methylprednisolone

1   acetate, compounded and supplied by NECC, purchased
2   by Insight Health for the Roanoke location.  And I
3   turn it over to Mr. Gardner, who will argue the
4   Consumer Protection Act and gross negligence count.
5           THE COURT:  I don't usually split up
6   arguments, like I don't usually split up
7   cross-examination; but sure, go ahead, Mr. Gardner.
8           MS. REYNOLDS:  Well, Your Honor, he's --
9           THE COURT:  Go ahead, Mr. Gardner.
10          MR. GARDNER:  Thank you, Your Honor.  There
11  are two aspects to IGPM's demurrer to the Virginia
12  Consumer Protection Act claim.
13          The first is that the claim of violation of
14  VCPA, which I will abbreviate the Virginia Consumer
15  Protection Act as, for misrepresenting the drug's
16  quality during IGPM's treatment of the Decedent is
17  expressly excluded under the language of the
18  statute; and the second aspect is that damages for
19  wrongful death and personal injury are not
20  available under the VCPA.
21          First, the claim is expressly excluded under
22  Section 59.1-199(A) of the act of the VCPA.  That
23  section states that the VCPA shall not apply to,
24  "any aspect of a consumer transaction, which aspect

```
 1        is authorized under the laws and regulations of
 2        this Commonwealth or the United States."
 3             In other words, if the aspect complained of is
 4        authorized under another section of Virginia or
 5        federal law, then the VCPA does not apply, and the
 6        claim cannot be brought for it under the VPCA.
 7             The Virginia Supreme Court examined this
 8        provision in Manassas Auto Parts, Inc. v. Couch,
 9        274 Va. 82.  They held that, "Authorized actions,"
10        meaning actions which are excluded, are those that
11        are "sanctioned by statute or regulation."  In
12        other words, actions that are sanctioned by
13        Virginia or federal law cannot be complained of
14        under the Virginia Consumer Protection Act.
15             Conversely, actions that are merely regulated
16        by Virginia or federal law can be actionable under
17        the Virginia Consumer Protection Act.  Here the
18        formulation, compounding, sale, prescription,
19        dispensing and administration of prescription drugs
20        are sanctioned under Virginia and federal law, and
21        therefore are expressly excluded from the Virginia
22        Consumer Protection Act.
23             Section 54.1-3408(A) of Virginia's Drug
24        Control Act states that, "A practitioner of
```


36

1  medicine shall only prescribe, dispense or
2  administer controlled substances in good faith, for
3  medicinal or therapeutic purposes, within the
4  course of his professional practice."
5      There are Virginia Code sections that prohibit
6  the compounding of drugs, unless certain criteria
7  are met.  Similarly, the federal Food, Drug and
8  Cosmetic Act prohibits the introduction or delivery
9  for introduction in interstate commerce of any
10 food, drug, device, tobacco product or cosmetic
11 that is adulterated or misbranded -- the exact
12 allegations in this case.
13     These provisions, these federal and Virginia
14 provisions are not mere regulations by which an
15 already permissible action are undertaken.  In --
16     MR. SEXTON:  I'm sorry, Mr. Gardner.  I may be
17 the only one in the courtroom that's confused, but
18 I thought Your Honor ruled that you accepted the
19 removal by Mr. Shaw of the Wingate matter, and the
20 demurrers are only set in the Wingate matter.  And
21 then I thought you explained to us --
22     THE COURT:  I still have to hear them.  If
23 they're here, I'll hear them on whatever.
24     MR. SEXTON:  Okay.  I heard you to say that

37

1  you would then not want to be in conflict with the
2  federal court and so forth.
3       THE COURT:  You heard me entirely correctly.
4       MR. SEXTON:  Okay.  I just misunderstood the
5  import of that.
6       THE COURT:  No no no.  And what one of my
7  questions was and what I wasn't clear on is, is
8  this only on the Wingate matter?
9       MR. GARDNER:  This is noticed for Wingate, but
10 as with the motions for partial summary judgment,
11 they will be basically identical through all of
12 these cases.
13      MR. SEXTON:  It is only noticed on Wingate,
14 but again, there's a trickle.
15      THE COURT:  Well, I mean --
16      MR. SEXTON:  We don't have any objection.  I
17 just wanted to make sure that I understood that you
18 want to go ahead and hear the argument.
19      Right.  It is, it is only briefed as to
20 Wingate.  There are some instances where the facts
21 may be different; for example, Mr. Wingate is dead,
22 and we don't know exactly when he got these
23 brochures.  Some of the clients are not dead.  Some
24 of the clients got three shots, and so they would

38

1   have received them on multiple occasions. So that
2   will apply to one aspect, but --
3          THE COURT: But you don't --
4          MR. SEXTON: We could educate you as to --
5          THE COURT: But you don't have any objection
6   to, you know, on lack of formal notice. Yeah, I
7   don't intend to deal with demurrer on Wingate, but
8   my understanding is like your partial summary
9   judgment, that this was common to all cases.
10         MR. SEXTON: In essence --
11         THE COURT: Mutatis mutandis, as we say.
12         MR. GARDNER: And I'd be willing to stipulate
13  that these motions don't turn on some of the minute
14  factual differences between the cases. To the
15  extent that they do, please let me know if I
16  mention something that is unique and it turns on
17  it, please do.
18         THE COURT: I'm sure they will. I'll let you
19  know.
20         MR. SEXTON: Your Honor, I have no objection
21  to any of that, if it does avoid a waste of time
22  today, and it allows us to --
23         THE COURT: That was my point. I just thought
24  we'd go ahead and put on everything we can put on.