Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

For Prothonotary Use Only (Docket Number)

JANUARY 2014    001472

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| WILLIAM LEWIS | NEW ENGLAND COMPOUNDING PHARMACY, INC., ALIAS: NEW ENGLAND COMPOUNDING CENTER |
| **PLAINTIFF'S ADDRESS**<br>826 E. RITTENHOUSE STREET<br>PHILADELPHIA PA 19138 | **DEFENDANT'S ADDRESS**<br>697 WAVERLY STREET<br>FRAMINGHAM MA 01701 |
| **PLAINTIFF'S NAME**<br>NANCY LEWIS | **DEFENDANT'S NAME**<br>AMERIDOSE, LLC |
| **PLAINTIFF'S ADDRESS**<br>826 E. RITTENHOUSE STREET<br>PHILADELPHIA PA 19138 | **DEFENDANT'S ADDRESS**<br>205 FLANDERS ROAD<br>WESTBOROUGH MA 01581 |
| **PLAINTIFF'S NAME** | **DEFENDANT'S NAME**<br>ALAUNUS PHARMACEUTICAL, LLC |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS**<br>697 WAVERLY STREET<br>FRAMINGHAM MA 01701 |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 2 | 7 | ☒ Complaint  ☐ Petition Action  ☐ Notice of Appeal<br>☒ Writ of Summons  ☐ Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | | |
|---|---|---|---|---|
| ☐ $50,000.00 or less<br>☒ More than $50,000.00 | ☐ Arbitration<br>☒ Jury<br>☐ Non-Jury<br>☐ Other: | ☐ Mass Tort<br>☐ Savings Action<br>☐ Petition | ☐ Commerce<br>☐ Minor Court Appeal<br>☐ Statutory Appeals | ☐ Settlement<br>☐ Minors<br>☐ W/D/Survival |

CASE TYPE AND CODE

2P - PRODUCT LIABILITY

STATUTORY BASIS FOR CAUSE OF ACTION

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | IS CASE SUBJECT TO COORDINATION ORDER?<br>YES      NO |
|---|---|

FILED
PRO PROTHY

JAN 15 2014

J. OSTROWSKI

TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: WILLIAM LEWIS  , NANCY LEWIS

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY<br>KATHLEEN KIRKPATRICK | ADDRESS<br>TUCKER LAW GROUP LLC<br>1617 JFK BLVD SUITE 1700<br>PHILADELPHIA PA 19103 |
|---|---|
| **PHONE NUMBER**<br>(215) 875-0609 | **FAX NUMBER**<br>(215) 875-8143 |
| **SUPREME COURT IDENTIFICATION NO.**<br>87240 | **E-MAIL ADDRESS**<br>kkirkpatrick@tlgattorneys.com |
| **SIGNATURE OF FILING ATTORNEY OR PARTY**<br>*KATHLEEN KIRKPATRICK* | **DATE SUBMITTED**<br>Wednesday, January 15, 2014, 02:44 pm |

FINAL COPY (Approved by the Prothonotary Clerk)

## COMPLETE LIST OF DEFENDANTS:

1. THE ROTHMAN INSTITUTE
   ALIAS: THE ROTHMAN INSTITUTE AT NAZARETH HOSPITAL
   2630 HOLME AVENUE 2ND FLOOR
   PHILADELPHIA PA 19152
2. WILLIAM A.. ANDERSON MD
   2630 HOLME AVENUE 2ND FLOOR
   PHILADELPHIA PA 19152
3. MERCY HEALTH SYSTEM
   ONE WEST ELM STREET SUITE 100
   PHILADELPHIA PA 19428
4. NAZARETH HOSPITAL
   2601 HOLME AVE.
   PHILADELPHIA PA 19152
5. ALAUNUS PHARMACEUTICAL, LLC
   697 WAVERLY STREET
   FRAMINGHAM MA 01701
6. AMERIDOSE, LLC
   205 FLANDERS ROAD
   WESTBOROUGH MA 01581
7. NEW ENGLAND COMPOUNDING PHARMACY, INC.
   ALIAS: NEW ENGLAND COMPOUNDING CENTER
   697 WAVERLY STREET
   FRAMINGHAM MA 01701

**TUCKER LAW GROUP, LLC**
Bernard W. Smalley, Esquire
Kathleen Kirkpatrick, Esquire
One Penn Center at Suburban Station
1617 JFK Blvd., Suite 1700
Philadelphia, PA  19103
(215) 875-0609

Attorneys for Plaintiff 

---

William Lewis and Nancy Lewis, h/w
826 E. Rittenhouse Street
Philadelphia PA  19138
              Plaintiff,

          v.

New England Compounding Pharmacy, Inc.
a/k/a and/or d/b/a New England Compounding
Center
697 Waverly Street
Framingham, MA 01701
            and

Ameridose, LLC
205 Flanders Road
Westborough, MA  01581
            and

Alaunus Pharmaceutical, LLC
697 Waverly Street
Framingham, MA 01701
            and

Nazareth Hospital
2601 Holme Ave.
Philadelphia, PA 19152
            and

Mercy Health System
One West Elm Street
Suite 100
Conshohocken, PA 19428
            and

William A. Anderson, M.D.
2630 Holme Avenue, 2nd Floor
Philadelphia, PA 19152
            and

The Rothman Institute a/k/a and/or d/b/a The
Rothman Institute at Nazareth Hospital

**COURT OF COMMON PLEAS
PHILADELPHIA COUNTY**

**JANUARY TERM, 2014**

**No. _____**

**JURY TRIAL DEMANDED**

Case ID: 140101472

2630 Holme Avenue, 2nd Floor                    :
Philadelphia, PA 19152                          :
_____Defendants._____ :

## NOTICE TO DEFEND

| NOTICE | AVISO |
|---|---|
| You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney, and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you. | Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo Angie Y. Lugo partir dela fecha de la demanda y la notificacion. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus o objectiones a las demandas en contra de su persona. Sea a visado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sim previo a viso o notification. Ademas, la corte puede cumpla con todas las provisiones de esta demanda. Usted puede perer dinero o sus propiedades u otros derechos imporatantes para usted. |
| *You should take this paper to your lawyer at once. If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.* | *Lleva esta demanda a un abogado immediatamente. Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servico. Vaya en personal o llame por telefono Angie Y. Lugo la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistensia legal.* |
| Philadelphia Bar Association<br>Lawyer Referral and Information Service<br>1101 Market Street-11th Floor<br>Philadelphia, Pennsylvania 19107<br>(215) 238-6333 | Asociacion de Licenciados de Filadelphia<br>Servicio de Referencia e Informacion Legal<br>1101 Market Street-11th Floor<br>Filadelfia, Pennsylvania 19107<br>(215) 238-6333 |

## COMPLAINT – PRODUCTS LIABILITY

### PARTIES

1.     Plaintiffs, William Lewis ("Mr. Lewis") and Nancy Lewis (collectively referred to as "Plaintiffs"), are adult individuals residing at 826 E. Rittenhouse Street, Philadelphia, PA.

2.     At all times relevant hereto, Plaintiffs were lawfully married.

Case ID: 140101472

3.      Defendant, New England Compounding Pharmacy, Inc. a/k/a and/or d/b/a New England Compounding Center ("NECC"), was at all material times hereto a corporation organized and existing under the laws of the Commonwealth of Massachusetts for purposes of manufacturing, compounding, developing, producing, supplying, delivering, distributing, marketing and/or selling pharmaceutical products to medical facilities and pharmacies, including injectable steroids, for use on patients for services such as injections into the lumbar spine.  At all material times hereto, NECC operated at 697 Waverly Street, Framingham, MA 01701.

4.      Defendant, Ameridose, LLC ("Ameridose"), was at all times relevant hereto a corporation organized and existing under the laws of the Commonwealth of Massachusetts for purposes of manufacturing, compounding, developing, producing, supplying, delivering, distributing, marketing and/or selling pharmaceutical products to medical facilities and pharmacies, including injectable steroids, for use on patients for services such as injections into the lumbar spine.  At all material times hereto, Ameridose, LLC operated at 205 Flanders Road, Westborough, MA  01581.

5.      Defendant, Alaunus Pharmaceutical, LLC ("Alaunus") , was at all times relevant hereto a corporation organized and existing under the laws of the Commonwealth of Massachusetts for purposes of manufacturing, compounding, producing, supplying, delivering, distributing, marketing and/or selling pharmaceutical products to medical facilities and pharmacies, including injectable steroids, for use on patients for services such as injections into the lumbar spine.  At all material times hereto, Alaunus Pharmaceutical, LLC, operated at 697 Waverly Street, Framingham, MA 01701.

6.      At all times herein mentioned, NECC, Ameridose and Alaunus were acting by and through their actual, apparent and/or ostensible agents, servants, contractors and employees, all of whom were acting within the course and scope of their agency, service and

3

employment, and all of whom participated in or were involved in the selling, distributing and/or supplying of steroid material that was utilized on Plaintiff.

7.      Defendants, NECC, Ameridose and Alanus, are vicariously liable for the actions and/or omissions of their agents, servants, contractors and employees who participated or were involved in the manufacturing, compounding, developing, supplying, producing and/or distributing pharmaceutical steroid material that was utilized on Plaintiff.

8.      Defendant, Nazareth Hospital ("Nazareth"), was at all times relevant hereto a corporation and/or other entity organized and existing under and by virtue of the laws of the Commonwealth of Pennsylvania, and maintains, operates, controls, and employs physicians, nurses, physician assistants, technicians and other various agents and employees for the purpose of rendering medical services to the general public maintaining its place of business at 2601 Holme Ave., Philadelphia, PA.  Plaintiff is asserting a professional liability claim against this defendant.

9.      Defendant, Mercy Health System ("Mercy"), was at all times relevant hereto a corporation, limited liability company and/or other entity organized and existing under and by virtue of the laws of the Commonwealth of Pennsylvania and owns and/or operates a medical facility at 2601 Holme Ave., Philadelphia, PA. Plaintiff is asserting a professional liability claim against this defendant.

10.     Defendant, William A. Anderson, M.D. ("Dr. Anderson"), was at all times relevant hereto, an individual licensed to practice medicine in the Commonwealth of Pennsylvania who held himself out to the public and to Plaintiff as a specialist in physical medicine and rehabilitation.  Dr. Anderson has an office address of 2630 Holme Avenue, 2nd Floor, Philadelphia, PA. Plaintiff is asserting a professional liability claim against this defendant.

11.     Defendant, The Rothman Institute a/k/a and/or d/b/a The Rothman Institute at Nazareth Hospital ("Rothman"), is and was at all times relevant hereto, a corporation organized

4

Case ID: 140101472

and existing under the laws of the Commonwealth of Pennsylvania for purposes of providing

physician and health care services.  At all relevant times hereto, Rothman rendered medical

services at 2601 Holme Ave., Philadelphia, PA. Plaintiff is asserting a professional liability claim

against this defendant.

      12.    At all times material hereto, Nazareth, Mercy, Dr. Anderson and Rothman were

acting individually and/or by and through their actual, apparent and/or ostensible agents,

servants and employees, all of whom were acting within the course and scope of their agency,

service and employment, and all of whom participated in or were involved in the care and

treatment of Plaintiff.

      13.    Defendants, Nazareth, Mercy, Dr. Anderson and Rothman, are vicariously liable

for the actions and/or omissions of their agents, servants, contractors and employees, including

thier physicians, nurses and/or other health care personnel who participated in or were involved

in the care and treatment of Plaintiff.

### Factual Background

      14.    Plaintiff, an otherwise healthy 73 year old individual, underwent an L5

transforaminal epidural steroid injection at Nazareth by Dr. Anderson on September 25, 2012

("steroid injection").

      15.    Upon information and belief, the steroid material utilized during Plaintiff's steroid

injection was developed, produced, created, manufactured, compounded, supplied, delivered,

distributed, sold, marketed and/or promoted by NECC, Ameridose and/or Alaunnus.

      16.    Shortly after the steroid injection, Plaintiff developed symptoms of constant,

sharp pain in the head, blurred vision and pain in the eyeS.

      17.    On approximately October 11, 2012, Dr. Anderson contacted Plaintiff and

advised that the steroid material utilized during the steroid injection was contaminated and

Plaintiff should present to the emergency room immediately.

Case ID: 140101472

18.     On October 11, 2012, Plaintiff presented to the emergency room at Einstein Medical Center complaining of headaches. He was prescribed vicodin and cephalexin.  A spinal tap was not performed.

19.     Plaintiff continued to suffer from headaches, burred vision and pain in the eyes.

20.     In October 2012, the U.S. Food and Drug Administration began investigating an outbreak of fungal meningitis linked to products manufactured by NECC.

21.     In October 2012, it was realized for the first time that the steroid products manufactured, compounded, produced and sold by NECC, Ameridose and/or Alaunus, were contaminated with the fungus of aspergillus fumigatus and exserohilum.

22.     On October 18, 2012, Plaintiff received a letter from Nazareth stating that Nazareth purchased and used triamcinolone acetonide injection from NECC ("steroid material") and that Plaintiff received this medication during the time that the FDA warned it could be contaminated.

23.     Plaintiff had previously undergone steroid injections with Dr. Anderson and other physicians without incident and without the symptoms of head pain, blurred vision and pain in the eyes.

24.     Plaintiff received no relief from the pain in his back from the September 25, 2012 steroid injection, although he received relief from his prior injections.

25.     In fact, the steroid injection of 9/25/12 caused Plaintiff more bodily pain and caused him to need vicodin pain reliever.

26.     In approximately October 2012, NECC recalled all of its products due to fungal contamination, including the steroid materials that it had manufactured, compounded, produced, created and/or developed and thereafter caused to be distributed across the country and upon information and belief to Nazareth.

Case ID: 140101472

27.   The contaminated products manufactured, compounded, produced and sold by NECC, Ameridose and/or Alaunnus were sold all across the country, and within the Commonwealth of Pennsylvania.

28.   NECC has been closed by state and federal officials.

29.   Upon information and belief, and unbeknownst to Plaintiff at the time, he received contaminated steroid material that had been manufactured, compounded, produced and sold by NECC, Ameridose and/or Alaunus during his aforementioned steroid injection.

30.   Defendants, NECC, Ameridos and/or Alaunus, maintained an unsterile, uncleanly and unsafe environment in which the manufacture, compounding and/or development of its products occurred, including the steroid material injected into Plaintiff's back.

31.   Defendants' unsterile, uncleanly and unsafe environment caused great risk of contamination of its products, including steroid material, which rendered the products unsafe, hazardous and unfit for the purpose intended.

32.   Defendants, NECC, Ameridos and/or Alaunus, failed to disclose the unsterile, uncleanly and unsafe environment of its facility(ies) to the hospitals, physicians, consumers and end-users that their products were ultimately distributed to.

33.   As a direct and proximate result of Defendants' conduct as stated more fully herein, Plaintiff suffered pain, suffering, mental anguish, anxiety and fear of further harm or contamination.

34.   As a direct and proximate result of Defendants' conduct as stated more fully herein, Plaintiff has incurred and may incur in the future, reasonable and necessary expenses for services and hospital, medical, surgical, nursing, therapeutic, rehabilitative and other care, medical supplies, appliances and other services.

35.   As a direct and proximate result of Defendants' conduct as stated more fully herein, Plaintiff has undergone, and in the future may undergo, hospitalization, surgery, therapy

7

Case ID: 140101472

and other medical care and treatment and has required, and in the future may require physical, emotional, occupational and rehabilitative therapy, and special care throughout his lifetime.

36. As a direct and proximate result of Defendants' conduct as stated more fully herein, Plaintiff has suffered injuries that are or may be permanent in nature and character and which have precluded, and will preclude him, from enjoying the ordinary pleasures of life and participating in ordinary activities.

37. As a direct and proximate result of Defendants' conduct as stated more fully herein, Plaintiff has sustained, and may sustain in the future, a loss of earnings and earning capacity and an inability to engage in his normal activities, duties, avocations and occupations, together with other tangible and intangible losses.

38. As a direct and proximate result of Defendants' conduct as stated more fully herein, Plaintiff has suffered and will in the future suffer pain, embarrassment, humiliation, loss of well-being, loss of dignity, anxiety, mental anguish, fear of further harm or contamination and other physical, emotional and mental injuries.

## COUNT I – PRODUCT LIABILITY
### PLAINTIFF V. ALL DEFENDANTS

39. Plaintiff incorporates by reference the above allegations as if more fully set forth at length herein.

40. Defendants manufactured, compounded, designed supplied, sold and placed on the market and into the stream of commerce a defective and unreasonably dangerous product, knowing that the steroid material would reach patients without substantial change to the condition in which it was sold and that, at the time the steroid material left Defendants' control, it was defective and in an unreasonably dangerous condition and was sold in the ordinary course of Defendants' businesses.

8

Case ID: 140101472

41.     The steroid material was defectively designed, manufactured, compounded or produced in that it was developed, mixed and/or created in an insanitary and unsafe environment that contained or promoted the development of harmful organisms such as fungus which was unnecessary, unreasonably dangerous, faulty and flawed.

42.     The steroid material was not developed with every element necessary to make it safe for its reasonably foreseeable use.

43.     The steroid material was defective and unreasonably dangerous to foreseeable users and consumers, including Plaintiff, in one or more of the following ways:

a.     the steroid material was defectively designed;

b.     the steroid material was defectively manufactured;

c.     the steroid material was defectively and unreasonably dangerous in the absence of adequate warnings or instructions, and Defendants failed to provide such warnings or instructions;

d.     failing to adequately test the steroid material;

e.     failing to adequately inspect the steroid material;

f.     deviating from applicable specifications and standards when manufacturing and compounding the steroid material;

g.     utilizing an inappropriate production process when developing the steroid material;

h.     failing to provide timely and adequate post-marketing warnings and instructions after they knew of the risk of harm from the steroid material;

i.     failing to ensure the manufacture and/or compounding of the steroid material in a sterile environment;

j.     failing to inspect the manufacturing and/or compounding environment to ensure that it is sterile, clean and safe;

k.      failing to design, manufacture, compound and/or sell the steroid material in a manner so as to render it safe for its intended purpose;

l.      providing the steroid material with a manufacturing defect resulting in Plaintiff suffering head pain, pain in the eyes, blurred vision and fear of further contamination;

m.      failing to warn users of the defective and/or hazardous condition(s) of the steroid material of which Defendants were aware or should have been aware;

n.      failing to correct, remedy, repair, and/or eliminate the defective and/or hazardous condition(s) of the steroid material when Defendants were aware or should have been aware;

o.      failure to provide sufficient warnings as to the foreseeable defects in the steroid material;

p.      failing to test and/or inspect the steroid material to determine whether it could be used for its intended purpose without injury to those persons who would foreseeably use it;

q.      manufacturing, compounding, selling and distributing steroid material that was unsafe and contaminated with a harmful fungus.

44.     At all times relevant hereto, the steroid material was defective and unreasonably dangerous when put to a reasonably anticipated use, resulting in the injuries averred in the preceding paragraphs.

45.     The steroid material was used in a manner reasonably anticipated by the Defendants.

46.     Defendants are strictly liable to the Plaintiff pursuant to §402A of the Pennsylvania Restatement (Second) of Torts and all other applicable strict liability laws.

10

Case ID: 140101472

47.     At the time the Defendants placed the steroid material into the stream of commerce, it was in a defective condition by reason of a manufacturing defect or a design defect.

48.     Upon information and belief, at the time the Defendants placed the steroid material into the stream of commerce, it was in a defective condition by reason of its potential fungal contamination and absence of proper warnings, notice and/or instruction to foreseeable end users.

49.     The defective condition of the steroid material was a proximate cause of Plaintiff's injuries and damages.

50.     The defective condition of the steroid material was a substantial factor in causing Plaintiff's injuries and damages.

51.     By engaging the above conduct, Defendants manifested a conscious or reckless disregard for the rights of others and a conscious or reckless imposition of the risk of serious bodily injury upon users of its product.

**WHEREFORE**, Plaintiff demands damages of the Defendants solely, jointly and/or severally in a sum in excess of Fifty Thousand ($50,000.00) Dollars together with interest, costs, damage for delay, punitive damages and such other relief as the court may deem appropriate.

### COUNT II - BREACH OF IMPLIED WARRANTIES
### PLAINTIFF WILLIAM LEWIS MV. ALL DEFENDANTS

52.     Plaintiff incorporates by reference the above allegations as if more fully set forth at length herein.

53.     At all material times hereto, Defendants were manufacturers and/or merchants with respect to the goods at issue, including the subject steroid material, and placed the steroid material into the stream of commerce.

54.     In manufacturing, compounding, processing, developing, testing, inspecting, packaging, selling, labeling, distributing, advertising, supplying, promoting, and/or marketing the

11

steroid material, Defendants knew the specific use for which the product was sold, and thus, impliedly warranted that the steroid material was merchantable, fit and safe for the ordinary and particular purpose for its intended use.

55. Plaintiff reasonably relied upon the expertise, skill, judgment, and knowledge of Defendants, and upon their implied warranty that the steroid material was of merchantable quality, safe and fit for its intended use.

56. If Plaintiff knew that the steroid material was unsafe, dangerous, defective, not merchantable, unfit for the ordinary purpose for which it was to be used, and/or not in conformity with the representations and/or promises appearing on its label and container, Plaintiff would not have undergone the steroid injection procedure and allowed Defendants' steroid material to be injected into his lumbar spine.

57. Defendants breached these implied warranties by manufacturing, compounding, processing, developing, testing, inspecting, packaging, selling, labeling, distributing, supplying, advertising, promoting, and/or marketing the steroid material in an unsafe, defective, hazardous, harmful and unmerchantable condition, not fit for its intended use, and not in conformance with the representations and/or promises appearing on the label and container.

58. As a direct and proximate result of the aforesaid breach of warranties, Plaintiff sustained severe and permanent injuries as alleged above.

**WHEREFORE**, Plaintiff demands damages of the Defendants solely, jointly and/or severally in a sum in excess of Fifty Thousand ($50,000.00) Dollars together with interest, costs, damage for delay, punitive damages and such other relief as the court may deem appropriate.

### COUNT III - BREACH OF EXPRESS WARRANTIES
### PLAINTIFF WILLIAM LEWIS V. ALL DEFENDANTS

59. Plaintiff incorporates by reference the above allegations as if more fully set forth at length herein.

Case ID: 140101472

60.     At all material times hereto, Defendants were merchants with respect to the goods at issue, including the subject steroid material, and placed the steroid material into the stream of commerce.

61.     Defendants expressly warranted that the steroid material was safe and appropriate for its intended application, and non-hazardous to the consumers, patients and end-users.

62.     Plaintiff, in reliance upon the express warranties made by Defendants, agreed to allow the steroid material to be injected into his lumbar spine.

63.     Defendants breached the express warranty contained on their labeling and/or containers, and the product was defectively manufactured, compounded, designed, tested and inspected.

64.     Defendants breached these warranties by manufacturing, compounding, developing, inspecting, testing, packaging, selling, supplying, labeling, distributing, advertising, promoting and/or marketing the steroid material in an unsafe, defective, hazardous harmful and unmerchantable condition.

65.     As a direct and proximate result of the aforesaid breach of warranties, Plaintiff sustained severe and permanent injuries as alleged above.

**COUNT IV – NEGLIGENCE**
**PLAINTIFF WILLIAM LEWIS V. NECC, AMERIDOSE AND ALAUNUS**

66.     Plaintiff incorporates by reference the above allegations as if more fully set forth at length herein.

67.      Defendants had a duty to exercise reasonable care in the manufacturing, compounding, producing, developing, inspecting, testing, marketing, sale and/or distribution of the steroid material.

68.     Defendants breached their duty in one or more of the following ways:

13

Case ID: 140101472

a.    failing to ensure the manufacture and/or compounding of the steroid material was in a sterile environment;

b.    failing to inspect the manufacturing and/or compounding environment to ensure that it is sterile, clean and safe;

c.    failing to manufacture, compound and/or sell the steroid material in a manner so as to render it safe for its intended purpose;

d.    providing the steroid material with a manufacturing defect resulting in Plaintiff suffering head pain, pain in the eyes, blurred vision and fear of further contamination;

e.    providing the steroid material with a design defect;

f.    failing to manufacture, compound, design and sell the steroid material in a manner so as to render it safe for its intended purpose;

g.    failing to warn users of the unsafe, defective and/or hazardous condition(s) of the steroid material of which Defendants were aware or should have been aware;

h.    failing to correct, remedy, repair, and/or eliminate the defective and/or hazardous condition of the steroid material when Defendants were aware or should have been aware;

i.    failure to provide sufficient warnings as to the foreseeable defects in the steroid material;

j.    failing to test and/or inspect the steroid material to determine whether it could be used for its intended purpose without injury to those persons who would foreseeably use it;

k.    manufacturing, compounding, selling and distributing steroid material that was unsafe and potentially contaminated with a harmful fungus;

14

Case ID: 140101472

l.      failing to use due care in manufacturing, designing, compounding, testing, inspecting and selling the steroid material;

m.      failing to provide timely and adequate post-marketing warnings and instructions after Defendants knew of the risk of harm from the steroid  material;

n.      failing to retain competent and sufficiently trained employees to manufacture, compound, inspect, clean, and undertake quality assurance with respect to the steroid material;

o.      failing to properly train employees involved in the manufacturing, compounding, inspecting, cleaning, and/or quality control with respect to the steroid material;

p.      failing to implement sufficient and effective quality control policies with respect to the manufacturing, compounding, inspecting and testing of the steroid material;

q.      manufacturing, compounding and selling a product that was below the standard of care and increased the risk of harm to Plaintiff;

r.      representing that the steroid material was of a particular standard, quality, or grade when it in fact was not;

s.      suppressing, concealing and/or failing to disclose material information concerning the unsterile and unsanitary conditions of the manufacturing and/or compounding environment;

t.      suppressing, concealing and/or failing to disclose material information concerning the condition of the steroid material and whether it was safe and effective, merchantable, fit for the ordinary purpose for which it was to be used;

u.      marketing the steroid material as safe and of a particular quality or grade when Defendants knew or should have known that it was not;

15

Case ID: 140101472

v. deceiving hospitals, physicians, buyers, consumers and patients by advertising, marketing and/or warranting that the steroid material was safe and of a particular quality when it was not;

w. deceiving hospitals, physicians, buyers, consumers and patients by withholding material information concerning the unsterile and unsanitary conditions of the manufacturing and compounding environment;

x. failing to heed complaints of mold, bacteria and/or unsterile conditions within the manufacturing and/or compounding environment with respect to the steroid material.

69. At all times relevant hereto the Defendants acted recklessly by placing corporate profits over public safety and by recklessly disregarding the interests of persons, patients and consumers who would use or be exposed to their product.

70. As a direct and proximate cause of Defendants' breach of duty, Plaintiff suffered the injuries and damages alleged above.

**WHEREFORE**, Plaintiff demands damages of the Defendants solely, jointly and/or severally in a sum in excess of Fifty Thousand ($50,000.00) Dollars together with interest, costs, damage for delay, punitive damages and such other relief as the court may deem appropriate.

## COUNT V – NEGLIGENCE PER SE
### PLAINTIFF WILLIAM LEWIS V. NECC, AMERIDOSE AND ALAUNUS

71. Plaintiff incorporates by reference the above allegations as if more fully set forth at length herein.

72. Defendants violated various State and Federal standards, regulations and requirements with respect to the practice of pharmacy and the practice of professional pharmacy and all other applicable federal and state regulations.

16

Case ID: 140101472

73.     As a direct and proximate cause of Defendants' violations, Plaintiff suffered the injuries and damages alleged above.

**WHEREFORE**, Plaintiff demands damages of the Defendants solely, jointly and/or severally in a sum in excess of Fifty Thousand ($50,000.00) Dollars together with interest, costs, damage for delay, punitive damages and such other relief as the court may deem appropriate.

### COUNT VI - FRAUD, DECEIT AND MISREPRESENTATION
### PLAINTIFF WILLIAM LEWIS V. NECC, AMERIDOSE AND ALAUNUS

74.     Plaintiff incorporates by reference the above allegations as if more fully set forth at length herein.

75.     Defendants, through their advertising, labels, representations on containers, distribution, packaging, supplying, marketing and/or promoting, made public misrepresentations or non-disclosures of material facts concerning the character, safety, contents and/or quality of pharmaceutical products, including the subject steroid material.

76.     The steroid material was in a defective, hazardous and unsafe condition at the time that it was administered to Plaintiff and was not substantially changed at the time of administration.

77.     The aforesaid injuries  and resulting damages to Plaintiff  were proximately caused by the conduct of Defendants, acting directly or through their agents and/or authorized representatives in that Defendants manufactured, compounded, researched, developed, tested, inspected, distributed, packaged, labeled, sold, supplied, marketed, promoted and/or advertised that the steroid material was safe for its intended use, for which Defendants are strictly liable to Plaintiff as a matter of law under the provisions of 402B of the Pennsylvania Restatement (Second) of Torts and all other applicable State and Federal laws.

78.     The conduct of Defendants constitutes fraud, deceit and misrepresentation in that Defendants knowingly, willfully and/or recklessly misrepresented and/or failed to disclose

17

Case ID: 140101472

material facts regarding the defective, harmful, unsafe, and dangerous conditions and qualities of the steroid material with the sole purpose of acting with self interest.

79. Defendants knew or should have known that the consumer public, including Plaintiff, would rely upon its misrepresentations and/or nondisclosures of material facts of Defendants regarding the steroid material.

80. Plaintiff justifiably relied upon the misrepresentations and/or nondisclosures of material facts of Defendants.

81. Defendants, although knowing that their conduct, misrepresentations and/or nondisclosure of material facts created a high degree of risk, nevertheless acted with reckless indifference.

82. The conduct of Defendants described in the foregoing paragraphs is outrageous and unconscionable, and was engaged in with reckless indifference to Plaintiff.

83. As a direct and proximate result of the fraud, deceit, misrepresentations and/or non-disclosure of material facts of the Defendants, Plaintiff suffered the injuries and damages as set forth above.

**WHEREFORE**, Plaintiff demands damages of the Defendants solely, jointly and/or severally in a sum in excess of Fifty Thousand ($50,000.00) Dollars together with interest, costs, damage for delay, punitive damages and such other relief as the court may deem appropriate.

### COUNT VII – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESSS
### PLAINTIFF WILLIAM LEWIS V. NECC, AMERIDOSE AND ALAUNUS

84. Plaintiff incorporates by reference the above allegations as if more fully set forth at length herein.

85. Defendants acted in an extreme and outrageous manner in the following respects:

18

a. suppressing, concealing and/or failing to disclose material information concerning the unsterile and unsanitary conditions of the manufacturing and/or compounding environment;

b. suppressing, concealing and/or failing to disclose material information concerning the condition of the steroid material and whether it was safe and effective, merchantable, fit for the ordinary purpose for which it was to be used;

c. deceiving hospitals, physicians, buyers, consumers and patients by advertising, marketing and/or warranting that the steroid material was safe and of a particular quality when it was not;

d. deceiving hospitals, physicians, buyers, consumers and patients by withholding material information concerning the unsterile and unsanitary conditions of the manufacturing and compounding environment;

e. ignoring and failing to heed complaints of mold, bacteria and/or unsterile conditions within the manufacturing and/or compounding environment with respect to the steroid material;

f. failing to provide timely and adequate post-marketing warnings and instructions after Defendant knew of the risk of harm from the steroid material;

g. placing corporate profits over public safety by recklessly disregarding the interests of patients, persons and consumers who would be exposed to their product.

86. Defendants' conduct went beyond all possible bounds of decency, was atrocious and utterly intolerable.

87. Defendants' conduct intentionally and/or recklessly caused severe emotional distress to Plaintiff, including anxiety, depression, emotional shock, psychological injury, sleeplessness, freight, horror, grief, humiliation, anger, chagrin, disappointment, worry, fear of

19

Case ID: 140101472

further harm or contamination and/or other symptoms, which symptoms will continue in the future.

**WHEREFORE**, Plaintiff demands damages of the Defendants solely, jointly and/or severally in a sum in excess of Fifty Thousand ($50,000.00) Dollars together with interest, costs, damage for delay, punitive damages and such other relief as the court may deem appropriate.

### COUNT VIII – NEGILGENT INFLICTION OF EMOTIONAL DISTRESSS
### PLAINTIFF WILLIAM LEWIS V. NECC, AMERIDOSE AND ALAUNUS

88.     Plaintiff incorporates by reference the above allegations as if more fully set forth at length herein.

89.     Defendants failed to disclose and kept secret the unsafe and unsanitary conditions of manufacturing and/or compounding environment, the contaminants contained within the steroid material and the unsafe and unsuitable condition of the steroid material.

90.     As a result of Defendants' actions, Plaintiff consented to and underwent the aforementioned lumbar steroid procedure and was caused to be contaminated with a harmful fungus and/or suffer a fear of additional harm or contamination.

91.     Upon learning of the contamination in October 2012, Plaintiff became hysterical, unnerved, distraught, fearful of additional contamination and complications, and was caused to experience severe and unnecessary emotional distress.

92.     Plaintiffs' severe emotional distress and fear upon learning of the contamination was reasonably foreseeable by Defendants.

93.     As a result of the wanton, reckless and negligent and tortious conduct and fault of Defendants, Plaintiff suffered severe emotional distress, including anxiety, depression, emotional shock, psychological injury, sleeplessness, freight, horror, grief, fear, humiliation, anger, chagrin, disappointment, worry and/or other symptoms, which symptoms will continue in the future.

20

Case ID: 140101472

**WHEREFORE**, Plaintiff demands damages of the Defendants solely, jointly and/or severally in a sum in excess of Fifty Thousand ($50,000.00) Dollars together with interest, costs, damage for delay, punitive damages and such other relief as the court may deem appropriate.

## COUNT IX – NEGILGENCE
### PLAINTIFF WILLIAM LEWIS V. NAZARETH, MERCY, DR. ANDERSON AND ROTHMAN

94.     Plaintiff incorporates by reference the above allegations as if more fully set forth at length herein.

95.     The aforesaid injuries and conditions were caused by the negligence and carelessness of Defendants, Nazareth, Mercy, Dr. Anderson and Rothman, in the following particular respects:

        a.     failing to adhere to the standard of care in the practice of medicine and in the performance of the aforementioned lumbar steroid injection;

        b.     failing to adhere to the standard of care in the practice of medicine by injecting a contaminated and unsafe steroid material into Plaintiff's lumbar spine;

        c.     failing to inquire, inspect or determine the appropriateness and safeness of the steroid material before recommending it to Plaintiff and injecting it into his lumbar spine;

        d.     utilizing a steroid material manufactured, compounded, developed, sold, supplied and/or distributed by NECC, Ameridose and/or Alaunus when they knew or should have known it may be unsafe, contaminated and/or defective;

        e.     increasing the risk of harm to Plaintiff by injecting the steroid material into Plaintiff's lumbar spine.

96.     Plaintiff relied upon the medical knowledge, diagnosis, treatment, expertise, advice, skill and techniques of Defendants in connection with the performance of the steroid injection and selection of steroid material.

Case ID: 140101472

97.     Defendants undertook and assumed a duty to Plaintiff to render reasonable, competent, prompt and proper medical care, advice, services and treatment and to avoid harm.

98.     Plaintiff relied upon the aforesaid undertaking of Defendants in protecting him from harm.

99.     The negligence and carelessness of Defendants increased the risk of harm, injury and damages of Plaintiff.

100.     The negligence and carelessness of Defendants was a direct and proximate cause of the harm, injury and damages of Plaintiff.

**WHEREFORE**, Plaintiff demands damages of the Defendants solely, jointly and/or severally in a sum in excess of Fifty Thousand ($50,000.00) Dollars together with interest, costs, damage for delay, punitive damages and such other relief as the court may deem appropriate.

## COUNT X – LOSS OF CONSORTIUM
## PLAINTIFF NANCY LEWIS V. ALL DEFENDANTS

101.     Plaintiff incorporates by reference the above allegations as if more fully set forth at length herein.

102.     Plaintiff, Mrs. Lewis, is the wife of Plaintiff, Mr. Lewis, and has suffered and may continue to suffer the loss of her husband's services, companionship, assistance, personal relations and consortium as a direct and proximate result of Defendants' conduct as stated above.

**WHEREFORE**, Plaintiff demands damages of the Defendants solely, jointly and/or severally in a sum in excess of Fifty Thousand ($50,000.00) Dollars together with interest, costs, damage for delay, punitive damages and such other relief as the court may deem appropriate.

Case ID: 140101472

Respectfully submitted,

Dated:    January 15, 2014            **Tucker Law Group, LLC**


_/s/Kathleen Kirkpatrick_____
Bernard W. Smalley, Esquire
Kathleen Kirkpatrick, Esquire
Attorneys for Plaintiff

23

Case ID: 140101472

## VERIFICATION

I, Kathleen Kirkpatrick, do hereby state that I am counsel for Plaintiff in the attached matter and that the factual averments contained in the complaint are true and correct to the best of my knowledge, information and belief.   I understand that statements contained in this pleading are made subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsifications to authorities.


Dated:____1/15/14____                              ___/s/Kathleen Kirkpatrick____
                                                   Kathleen Kirkpatrick

24