UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | )  |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | ) ) ) MDL No. 1:13-md-2419-RWZ |
| This Document Relates to:   All Cases | ) ) ) ) ) |

**INSIGHT HEALTH CORP.'S RESPONSE
IN OPPOSITION TO ASPECTS OF THE DISCOVERY AND
BELLWETHER SCHEDULE PROPOSED BY UNIFIRST CORPORATION**

Insight Health Corp. ("Insight"), by and through its undersigned counsel, respectfully submits this response in opposition to aspects of the proposed discovery and bellwether schedule suggested by UniFirst Corporation ("UniFirst") in its opposition to the schedule being negotiated between the Plaintiffs' Steering Committee ("PSC"), on the one hand, and Saint Thomas West Hospital, formerly known as St. Thomas Hospital, Saint Thomas Network, and Saint Thomas Health, Ascension Health, and Ascension Health Alliance ("St. Thomas Hospital Defendants") and St. Thomas Outpatient Neurosurgical Center, LLC, the Howell Allen Clinic, P.C., John W. Culclasure, M.D., and Debra V. Schamberg, R.N. (the "St. Thomas Clinic Defendants") (together, "Tennessee Defendants"), on the other hand. In support of its opposition, Insight states as follows:

**INTRODUCTION**

The PSC and the Tennessee Defendants had been negotiating the details of discovery and bellwether scheduling between themselves for almost a year before UniFirst presented its alternative. In its opposition to the PSC's motion, UniFirst proposed its own discovery and bellwether schedule. MDL Doc. No. 1319. Insight presents this limited objection to UniFirst's

proposal to the extent that it seeks to sweep within its scope Insight, which is currently engaged in mediation and has not yet participated in a Rule 16(f) conference. Insight does not seek to derail or delay the timing of common discovery against New England Compounding Pharmacy, Inc. d/b/a New England Compounding Center ("NECC") or the group of individuals and entities comprising the Affiliated Defendants for use by the MDL as a whole. Insight's concern is the broad applicability of the proposed schedule with respect to discovery and bellwether scheduling, especially for relatively new entrants to this MDL such as Insight, as well as those currently participating in mediation. This UniFirst schedule is designed to apply to all cases involving all defendants, regardless of their current posture. This is at odds with Judge Saylor's prior order, which stayed discovery for parties engaged in active mediation. MDL Doc. No. 209, at 11 ("[A]ny unaffiliated defendant or non-party who elects to participate in mediation shall, among other things: (1) be exempt from discovery except as required to facilitate participation in mediation."). Accordingly, this Court should not adopt wholesale the schedule proposed by UniFirst, at least as to Insight.

Insight is a relatively new defendant to MDL 2149, with cases removed from Virginia state court. Unlike UniFirst, Insight is not a defendant in cases across jurisdictions. Insight has never been a defendant in the Tennessee litigation, and therefore did not participate in any negotiations relating to the proposed schedule crafted by the PSC and the Tennessee Defendants.

Insight also is an active participant in mediation, with confirmed mediation dates of September 22-23, 2014. Insight and the various mediating parties, including counsel for individual plaintiffs and the PSC, have worked cooperatively to limit motions practice and to stay discovery consistent with Judge Saylor's order. This has allowed the parties to devote the considerable time necessary for a productive mediation.

2

Imposing a discovery and bellwether schedule on Insight in this fashion and at this critical time runs counter to the purpose of the MDL's mediation program. There is no reason to believe that the schedule negotiated by the PSC and Tennessee Defendants is unworkable or inefficient without Insight's participation. The plan was negotiated over many months; if participation by all defendants were necessary or required, then Insight (and other non-Tennessee Defendants) should have been afforded adequate time to negotiate a reasonable schedule and plan. Should mediation prove unsuccessful, Insight will work with the PSC, plaintiffs' counsel, co-defendants, and other parties (including National Defendants such as UniFirst) to negotiate a reasonable discovery schedule. However, such a schedule should not be imposed on Insight, at this stage and with mediation pending, as a result of UniFirst's proposal.

## **PROCEDURAL HISTORY**

The PSC and the Tennessee Defendants have been negotiating the details of discovery and bellwether scheduling for their cases since September 26, 2013. *See* MDL Doc. No. 457. They have engaged in significant motions practice surrounding these issues. *See* MDL Doc. Nos. 597, 837, 858, 964, 987, 1001. During that long course of negotiation and motions practice, those two groups—the PSC and the Tennessee Defendants—have narrowed the differences applicable to their cases. Notably, they have done so among themselves; Insight, for one, has not been a party to any of those negotiations, discussions, or motions.

On May 14, 2014, Judge Zobel referred this process to Magistrate Judge Boal. MDL Doc. No. 1127. Thereafter, the PSC submitted a near-final schedule and protocol for discovery and bellwether selection and trial on August 1, 2014. MDL Doc. No. 1303. That filing indicated that "the *parties* worked together to create an updated comparison chart that *they agree* accurately outlines the *parties'* positions." *Id.* at 2 (emphasis added). As with all prior

3

discussions regarding this protocol and schedule, Insight was not involved for the obvious reason that it was not included in the bellwether scheduling process and contemplated related discovery.

The following week, UniFirst filed an objection to the proposed plan between the PSC and the Tennessee Defendants and—for the first time in a written filing—asserted that any discovery and bellwether schedule should include *all* cases in the MDL. MDL Doc. No. 1319. UniFirst takes the position that parties' participation in mediation should be ignored, and that the relative procedural postures of various cases are immaterial. UniFirst's proposal, an addendum to its opposition to the PSC's filing, was created in a vacuum, without the knowledge or participation of Insight or, upon information and belief, any other clinic defendants. Further, UniFirst's proposed plan purports to impose deadlines and obligations on Insight, even though UniFirst is not a co-defendant, third-party defendant, or third-party plaintiff in any case against Insight.[1]

## ARGUMENT

The Court should decline UniFirst's invitation to include Insight in the previously negotiated discovery and bellwether trial plan for the following reasons:

- UniFirst's "proposal" is not properly before the Court because it was not made in a motion after a meaningful opportunity to meet and confer, and Insight has not participated in any Rule 16(f) planning conference;

- UniFirst's discovery plan would effectively overrule the stay of discovery that applies to mediating parties—a stay that is both a significant incentive to mediation and a practical requirement for a successful mediation;

---

[1] Certain plaintiffs who have sued Insight have filed other separate cases against UniFirst in which Insight is not a defendant. *See* MDL Doc. Nos. 1336 through 1341.

4

- Insight is a relatively new entrant into MDL 2419, and cases continue to be asserted against it and transferred to this Court (unlike the Tennessee Defendants, which are subject to a shorter, one-year statute of limitations); and

- Insight's cases are not ripe for discovery or bellwether selection, as none of its motions to dismiss have been briefed in full, let alone responded to, argued, and ruled upon by this Court (unlike the Tennessee Defendants, whose initial motions to dismiss have been adjudicated by this Court).

UniFirst is not a participant in the Virginia mediation, and UniFirst has not been named as a party in any of the cases pending in MDL 2419 against Insight. In addition, Insight has not asserted any third-party claims against UniFirst. Accordingly, there is no reason for Insight to be swept up into UniFirst's proposed schedule.

## I.     UniFirst's Proposal Is Premature with Respect to Non-Tennessee Defendants

Procedurally, there is no pending motion to impose a discovery and bellwether schedule on Insight. The operative motion before the Court is the plan between the PSC and the Tennessee Defendants which, according to the voluminous briefing between those two parties, is substantially complete. No other clinic defendants have been engaged in—or should be bound by—those negotiations or spinoffs therefrom.

The Federal Rules provide unequivocally that a "request for a court order must be made by motion." Fed. R. Civ. P. 7(b)(1). Local Civil Rule 7.1, which supplement motions practice in this Court, requires that "counsel certify that they have conferred and have attempted in good faith to resolve or narrow the issue" in advance of filing a motion. Loc. Civ. R. 7.1(a)(2). Oppositions to motions, on the other hand, are governed by separate rules. An opposition should set forth the reasons "why the motion should not be granted." *Id.* at 7.1(b)(2). All other papers

5

"whether in the form of a reply brief or otherwise, may be submitted only with leave of court." *Id.* at 7.1(b)(3).

UniFirst did not move this Court to adopt its proposed discovery and bellwether schedule. Rather than file a motion seeking affirmative relief from this Court, UniFirst filed an objection to the proposal set forth by the PSC. However, rather than simply arguing why the PSC "motion should not be granted," UniFirst affirmatively proposed an alternative schedule that would affect every defendant in the MDL, including Insight. The federal and local rules do not countenance such a methodology that purportedly would bypass well-established rules and procedures. If UniFirst wishes to seek action from the Court, UniFirst must affirmatively request such relief. That would allow all interested parties a more conventional avenue to be heard on such an important issue. As counsel for the PSC noted during the July 17, 2014 hearing in this Court, "we want to make sure *all* defendants are heard from on these issues." *See* 7/17/2014 Tr., relevant portions of which are attached hereto as Exhibit A, at 23:18-20. Further, the PSC contemplated that its arrangement with the Tennessee Defendants would be no more than "a helpful reference point for talking about scheduling with other defendants." *Id.* at 23:9-11.

UniFirst cannot transform its objection to the PSC motion into a standalone motion *nunc pro tunc*. UniFirst did not meet and confer with Insight before filing its proposed schedule. Such a meet and confer could have narrowed the areas of dispute or have at least provided a framework for resolution. As it is, UniFirst's August 7 filing was the first notice Insight had of a proposed schedule that purported to affect its rights and obligations. Accordingly, the Court should disregard UniFirst's opposition to the extent it attempts to impact Insight.

**II.     Parties Actively Engaged in Mediation Should Not Be Subject to the Proposed Discovery and Bellwether Plan until Mediation Is Completed**

The Court should reject UniFirst's proposal that would essentially undercut the long-standing practice in MDL 2419 that parties engaged in mediation shoud not be subject to discovery.  Taken at its fullest extent, UniFirst's proposed schedule undermines the mediation process set forth in CMO Nos. 6 and 7.  To this point in MDL 2419, parties participating in mediation—both plaintiffs and defendants—have been protected against costly discovery while they attempt to resolve their cases.  *See* CMO No. 6, MDL Doc. No. 209; CMO No. 7, MDL Doc. No. 438.  The reasonableness of a discovery stay is patent.  Parties participating in mediation should direct their energies towards resolving their disputes with a minimum of cost and distraction.

Practical considerations also support the continued stay of discovery for parties engaged in the mediation process.  If Insight were subject to responding to, objecting to, and challenging propounded discovery, while concurrently issuing written discovery of its own, all while scheduling, defending, and taking depositions, considerable attention would be diverted from the mediation process.  Further, every dollar spent litigating the cases can affect the parties' willingness to resolve the litigation.  There is no reason to subject Insight to the time and costs associated with discovery while it is an active participant in mediation.  There are valid reasons for staying discovery as to mediating parties, and UniFirst has not demonstrated why Insight's mediation planning should be upended, especially when UniFirst is not involved in any of Insight's cases.

Insight is aware that not all parties are currently engaged in mediation and recognizes that the existence of mediations in the MDL ought not cause all litigation to grind to a halt.  Accordingly, Insight offers no objection to the institution of common discovery against NECC

and the Affiliated Defendants.  Discovery involving Insight, however, should await the completion of mediation, a ruling on Insight's dispositive motions, and a Rule 16 conference.  As the PSC and this Court noted during the July 17, 2014 hearing, "a separate Rule 16 conference would need to be convened" for cases originating outside of Tennessee.  7/17/14 Tr. at 21:11-13.

### III. Insight Is Still a Recent Entrant into MDL 2419 and Its Cases Are Not Ripe for Bellwether Discovery

Further, practical reasons strongly weigh against adding Insight into the bellwether trial and discovery proposal negotiated among the PSC and Tennessee Defendants.  First, Insight is a relatively new defendant to MDL 2419, which began in February 2013.  MDL Doc. No. 1.  The NECC Trustee sought transfer of certain state court actions pending in Virginia to the MDL, but nearly all plaintiffs opposed these efforts.  With the exception of one outlier case,[2] Insight was not a defendant in the MDL until June 4, 2014, when one case was transferred to this Court by the J.P.M.L.[3]  MDL Doc. No. 1169.  The primary transfer order involving twenty cases (all of the then-pending Virginia state court cases) was entered on June 5, 2014.  MDL Doc. No. 1173.  Since that time, additional cases have been filed in state court and either have been transferred, removed, or are pending transfer to the MDL.  Therefore, while Insight has engaged in significant motions practice regarding the transfer of its cases to the MDL, its position as an MDL defendant is relatively new.

Second, during its limited time in MDL 2419, Insight has focused its efforts on good-faith participation in mediation.  Insight agreed to participate in this mediation after the Court

---

[2] One case, *Mowles v. New England Compounding Pharmacy Inc. et al.*, 1:13-cv-10558-RWZ, was removed to the MDL back in 2013.  Insight currently has a motion to dismiss pending in that particular matter.

[3] *Baker v. Alaunus Pharmaceutical, LLC, et al.*, 1:14-cv-12421-RWZ.

ordered the transfer of cases then-pending in state court. Much of Insight's time as a defendant in the MDL has been focused on participation in the mediation process, and related coordination with the nine (9) plaintiffs' firms representing the Virginia plaintiffs, the PSC, the Committee for Unsecured Creditors, and the Trustee for the Bankruptcy Estate of NECC. Insight did not participate in negotiations related to the discovery and bellwether proposal for the Tennessee cases, nor was it invited to do so as a non-party. It was not until UniFirst's filing on August 7, 2014 that Insight learned of a proposal to impose a version of the schedule negotiated by the PSC and the Tennessee Defendants onto Insight's recently-transferred cases. By that time, Insight was well into preparation for the upcoming mediation.

Third, new cases continue to be filed against Insight. As UniFirst acknowledges, "the universe of cases is still evolving" and in many states (including Virginia) the statute of limitations has not yet run.[4] MDL Doc. No. 1319, at 5. It is possible, if not likely, that additional actions will be filed in state court and transferred to the MDL in the future. Therefore, the universe of potential claims is not yet defined for litigation against Insight.

Fourth, the Court has not ruled on Insight's dismissal motions. Insight and/or its co-defendants filed dismissal motions in state court prior to removal of these cases. Nearly all of these motions remain pending, but have not been fully briefed by any party or argued. Therefore, Insight is in a different position than those defendants, such as the Tennessee Defendants, whose dismissal motions have been briefed, argued, and adjudicated. It makes little sense to press forward with a discovery schedule and bellwether plan for Insight cases where (1)

---

[4] Virginia law provides a two-year statute of limitations for personal injury actions. Va. Code § 8.01-243(A).

mediation is underway but not complete and (2) the Court has not yet ruled on threshold legal issues that are necessary to determine the scope of proper discovery.

## IV. Adding Insight to the Previously Negotiated Case Schedule and Bellwether Protocol Is Not Required to Avoid Duplicative Discovery or to Litigate Representative Claims

UniFirst's response argues that it will have to repeat "the entire pretrial process over and over again for claims arising in other jurisdictions." MDL Doc. No. 1319, at 1. But these concerns can be remedied with a less extreme solution than to superimpose upon defendants such as Insight a "one size fits all" schedule. As an initial matter, UniFirst is not even a defendant in any of the cases to which Insight is a party, so Insight's schedule has no impact on UniFirst. Even if the Court were to adopt UniFirst's plan, there likely will be parties added to the MDL after common discovery has begun who will want to take additional discovery. Simply, the future risk of potentially duplicative discovery is not enough to warrant imposition of a plan negotiated exclusively by and for the PSC and Tennessee Defendants onto Insight.

Similarly, UniFirst argues that a bellwether plan composed only of Tennessee cases cannot be considered "representative." UniFirst's argument as to "representativeness" relates only to the assignment of cases for bellwether trials. Under the PSC's and Tennessee Defendants' proposal, selection for bellwether cases would not take place until 2015 at the earliest, and even later under UniFirst's proposal. Therefore, there is no reason for the Court to impose the Tennessee case discovery schedule upon Insight at this time, when the selection of representative cases for bellwether trials is contemplated to take place at a point to be determined in 2015.

## CONCLUSION

Insight recognizes the Court's and parties' interests in commencing common discovery and offers no objection to the institution of discovery involving NECC and the Affiliated Defendants. However, Insight does object to UniFirst's opposition to the extent that it purports to expose Insight, a mediating party that has pending dispositive motions and has not participated in a Rule 16 conference, to unbridled discovery and a bellwether schedule.


Dated: September 11, 2014
      Richmond, Virginia

Respectfully submitted,

/s/ *Samuel T. Towell*
Stephen D. Busch (admitted *pro hac vice*)
Christopher E. Trible (admitted *pro hac vice*)
Samuel T. Towell (admitted *pro hac vice*)
McGUIREWOODS LLP
One James Center
901 East Cary Street
Richmond, VA 23219
(804) 775-1000
sbusch@mcguirewoods.com
ctrible@mcguirewoods.com
stowell@mcguirewoods.com

Counsel for Insight Health Corp.


## CERTIFICATE OF SERVICE

I, Samuel T. Towell, hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on September 11, 2014, and that paper copies will be sent to those indicated as non-registered participants on September 12, 2014.


Dated: September 11, 2014   /s/ Samuel T. Towell
                                          Samuel T. Towell