# EXHIBIT A

```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS


IN RE:  NEW ENGLAND            )  MDL NO. 13-2419-RWZ
COMPOUNDING                    )
PHARMACY CASES LITIGATION      )
                               )
                               )
                               )
                               )
                               )


    BEFORE:  MAGISTRATE JUDGE JENNIFER C. BOAL


                         MOTION HEARING



            John Joseph Moakley United States Courthouse
                          Courtroom No. 2
                         One Courthouse Way
                          Boston, MA 02210


                           JULY 17, 2014
                             2:30 p.m.







                 Valerie A. O'Hara, FCRR, RPR
                      Official Court Reporter
          John Joseph Moakley United States Courthouse
                  One Courthouse Way, Room 3204
                        Boston, MA 02210
                   E-mail: vaohara@gmail.com
```

|  |  |
|---|---|
|  | 1  THE COURT: So that's all welcome that you |
|  | 2 have done so much work and agreed on many areas. Are |
|  | 3 you proposing this framework to apply just to the |
|  | 4 St. Thomas -- I may have captured that wrong, but the |
|  | 5 St. Thomas defendants and the Tennessee defendants, |
|  | 6 because obviously we have other groups of defendants? |
|  | 7  MR. CHALOS: Right. Yes, your Honor, our |
|  | 8 notion is that this order would serve as a framework |
|  | 9 specifically for the St. Thomas defendants. There are |
| 03:06PM | 10 other clinics where they had a number of patients died |
|  | 11 or suffered serious injury, so, and those are Virginia |
|  | 12 and Michigan and New Jersey and Florida. They may need |
|  | 13 their own orders in those cases. |
|  | 14  THE COURT: It sounds as if I would need to |
|  | 15 convene a separate Rule 16 conference, I mean, if |
|  | 16 Judge Zobel would like me to do that, that a separate |
|  | 17 Rule 16 conference would need to be convened for those |
|  | 18 clinics? |
|  | 19  MR. CHALOS: I think so, and we don't know |
| 03:06PM | 20 to what extent those cases will be resolved, and I |
|  | 21 understand there may or may not be discussions with |
|  | 22 groups, I don't want to disclose anything confidential, |
|  | 23 but you may or may not have to do that, I guess. |
|  | 24  THE COURT: What is your view with respect |
|  | 25 to what are the so-called national defendants? |

            MR. CHALOS:  Well, the schedule as we've proposed it and in particular the schedule that we're now coming to some agreement with the St. Thomas Hospital defendants on would allow for those defendants to decide whether they're going to continue mediating and resolve the claims against them or they're going to get into litigation, and if they're in litigation, some of these cases also named them as parties, so to the extent there are any remaining national defendants, they would be subject to, you know, these deadlines, and they'd be part of these cases.

            Now, it remains to be seen how many of those will still be in the case.  You know, the bankruptcy settlement will resolve the claims against a majority, a vast majority of the national defendants.  We've resolved through mediation some of the other defendants, claims against some of the other defendants, but, yeah, they would be subject to this, and, you know, if they for some reason felt -- well, let me back up.  They have an opportunity now through the MDL courts, mediation program to resolve the claims.

            If they choose not to, then, you know, we have to go to trial, and we shouldn't wait any longer, and we've already waited two years, and we shouldn't wait any longer because they can't decide to settle or

```
 1   not settle.  Everybody has been aware of this litigation
 2   for two years.  They say they are just now parties, but
 3   we know they hired lawyers two years ago, so we think we
 4   ought to move forward and not delay because there's a
 5   possibility there may be additional defendants.
 6             MS. PARKER:  If I may, your Honor.
 7             THE COURT:  Yes.
 8             MS. PARKER:  I agree with Mr. Chalos, the
 9   framework that we have set forward we expect will be a
10   helpful reference point for talking about the scheduling
11   with other defendants.  There are certainly other
12   defendants out there who, in particular, I'm thinking of
13   Liberty who is trying to aggressively push for
14   discovery.
15             I don't see counsel for Liberty in the
16   courtroom today.  I'm sure they want to be heard on
17   these subjects, so while we think this plan will be
18   helpful as perhaps a benchmark or sample, I think we
19   want to make sure all defendants are heard from on these
20   issues.
21             I wouldn't want to paint all of the
22   defendants with this particular Tennessee centric brush.
23   That said, we do think it would be a mistake at this
24   point in time to wait to address some of these Tennessee
25   issues on which there has been meeting and conferring
```

03:08PM (line 10)
03:09PM (line 20)

```
 1   and agreement and some forward progress until all other
 2   defendants could come into this court and comment on
 3   what they would like their discovery plans to be.
 4            THE COURT:  Have the plaintiffs provided
 5   completed fact sheets?
 6            MS. PARKER:  We have not, your Honor.  It
 7   occurred to me that it might actually be helpful to
 8   describe for you what discovery has been done so far to
 9   give you sort of the broader framework.
10            THE COURT:  Yes.
11            MS. PARKER:  So as of now, all defendants in
12   the MDL have been provided the opportunity to access the
13   document repository that contains all formal discovery
14   produced so far in the MDL.  That includes primarily
15   documents that were produced by clinics and doctors in
16   response to subpoenas served by the PSC early on.  It
17   also includes materials that were informally produced by
18   the trustee from NECC's files.  I believe the last
19   figure Mr. Fern gave us at the status conference was
20   that there were about 44,000 pages of documents that had
21   been informally produced by NECC.
22            The PSC has also provided access to --
23   produced, we've formally produced it, the PSC formally
24   produced materials relating to our original inspection
25   of the NECC facility back in December of 2012.  Those
```