# **Exhibit A**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br>    All Cases | ) ) ) ) MDL No. 1:13-md-2419-RWZ ) ) ) ) ) |

### CHAPTER 11 TRUSTEE'S CONSOLIDATED REPLY TO OPPOSITIONS OF LIBERTY INDUSTRIES, INC., TENNESSEE CLINIC DEFENDANTS, SAINT THOMAS ENTITIES AND ASCENSION PARTIES TO CHAPTER 11 TRUSTEE'S MOTION FOR ENTRY OF AN ORDER LIMITING DISCOVERY AND STAYING THESE PROCEEDINGS WITH RESPECT TO NECC INSIDERS AND RELATED SETTLING PARTIES

Liberty Industries, Inc. ("Liberty"), the Tennessee Clinic Defendants,[1] the Saint Thomas Entities[2] and the Ascension Parties[3] (collectively, the "Opponents") have filed largely overlapping objections to the Chapter 11 Trustee's Motion for Entry of an Order Limiting Discovery and Staying These Proceedings With Respect to NECC Insiders and Related Settling Parties [Doc. No. 1342] ("MDL Stay Motion"). In the main, they argue that the order proposed by Paul D. Moore, the chapter 11 trustee (the "Trustee") of New England Compounding Pharmacy, Inc. d/b/a New England Compounding Center ("NECC"), is overly broad, will prevent them from seeking discovery relating to the defense of claims brought against them, and

---

[1] The "Tennessee Clinic Defendants" are Saint Thomas Outpatient Neurosurgical Center, LLC; Howell Allen Clinic, a Professional Corporation; John W. Culclasure, MD; Debra V. Schamberg, RN; Specialty Surgery Center, Crossville, PLLC; Kenneth R. Lister, MD; Kenneth Lister, MD, PC; and Donald E. Jones, MD.

[2] The "Saint Thomas Entities" are Saint Thomas West Hospital, formerly known as St. Thomas Hospital, Saint Thomas Network and Saint Thomas Health.

[3] The "Ascension Parties" are Ascension Health and Ascension Health Alliance.

would provide an unnecessary shield for parties who have not adequately contributed to the settlement agreements approved by the Bankruptcy Court. These arguments are without merit, and this Court should enter the order proposed by the Trustee.

I.   **The Requested Stay And Limitation On Discovery Does Not Prevent The Discovery Sought By The Opponents**

Despite the Opponents' assertions to the contrary, the stay and discovery limitation proposed by the Trustee will not prevent the Opponents from requesting discovery relating to issues which are relevant to their respective defenses – including their comparative fault affirmative defenses.[4] Indeed, the requested stay and limitation on discovery specifically permit "discovery against the Estate Parties and the Insider Settling Parties . . . to the extent the discovery is relevant to the prosecution, *or defense*, of claims against defendants other than the Estate Parties or the Insider Settling Parties." *See* Doc. No. 1343, p. 9 (emphasis added); Insiders Settlement Agreement, Section 3.2. Accordingly, to the extent any Opponent seeks discovery relevant to defending a claim against it, such discovery would not be barred by either the stay or limitation on discovery.[5]

In actuality, rather than banning discovery, the proposed stay and limitation on discovery will ensure that only focused and necessary discovery will be taken. The Trustee has already provided more than 40,000 pages of documents, which were produced in response to informal discovery requests and are presently available to all litigants in the MDL. To the extent additional discovery is required, once the stay is granted, parties seeking such additional

---

[4] The Tennessee Clinic Defendants do not object to the requested stay or limitation on discovery provided that such relief does not preclude discovery regarding its comparative fault claims. *See* Doc. No. 1356, pp. 8-9.

[5] Of course, it certainly remains possible that disputes may arise as to what discovery is, or is not, relevant to the prosecution or defense of such claims.

2

discovery shall meet their Rule 26 obligations (which will hopefully result in a joint Discovery Plan) and once the Court issues a Discovery Scheduling Order, parties shall serve their specific discovery request(s). If there is an objection to a specific discovery request, the parties shall adhere to the normal Rule 7.1 meet and confer process. To the extent there are discovery disputes remaining after the meet and confer process, the Court will be able to address those issues in the context of specific requests, rather than attempting to make determinations in the abstract.[6]

Conversely, denial of the MDL Stay Motion would have various negative consequences. In the absence of the requested stay and limitation on discovery, the Insider Settling Parties would be deprived of an important benefit they obtained from settling – the ability to reasonably limit the amount of litigation (and associated costs) they are exposed to at this time. Moreover, in the absence of the requested stay and limitation on discovery the estate would be deprived of the "Initial Plan Deposits," which total, in the aggregate, nearly $50 million, and which the Insider Settling Parties must pay only after an order staying these MDL proceedings has been entered. *See* Insiders Settlement Agreement, Section 2.1.

---

[6] In light of the fact that the Trustee has informally produced over 40,000 pages of documents and proposed an order allowing for limited discovery, the Court should give no credence to the Saint Thomas Entities' and Ascension Parties' assertion that "the Trustee will rely on any such stay order to try to cut off as much discovery as possible." Doc. No. 1351, p. 5. The statement is speculative, unsupported and inappropriate.

Additionally, Liberty contends that the MDL Stay Motion seeks to interfere with the order granting Liberty's motion for relief from the automatic stay in NECC's chapter 11 case (the "Liberty Stay Relief Order"). Liberty mischaracterizes the Liberty Stay Relief Order as ordering discovery that "may be sought" in the MDL. In point of fact, the Liberty Stay Relief Order did no such thing. The Liberty Stay Relief Order merely modified the automatic stay, but specifically reserved the Trustee's rights to object to any discovery that Liberty may request. Nothing in the Liberty Stay Relief Order directly or by fair implication "ordered" any discovery to occur whatsoever, or found or determined that any discovery was appropriate, as all discovery in the MDL remains within the purview of this Court.

## II. The Prohibition Against Seeking Dispositive Relief Against A Settling Party Is Appropriate

### A. The Definition of Dispositive Relief is Neither Vague Nor Overly Broad

The MDL Stay Motion seeks, *inter alia*, a prohibition against any party to the MDL seeking dispositive relief against the Settling Parties. The Opponents surprisingly contend that this request is incomprehensible. The phrase "dispositive relief" is neither novel nor vague. "Dispositive" is defined as "bringing about a final determination", and "relief" is defined as "the redress or benefit. . . that a party asks of a court." Black's Law Dictionary 505, 1317 (8th ed. 2004). Accordingly, it should be plain that the prohibition which the Trustee seeks – a "prohibition against any party to the MDL seeking dispositive relief **against the Settling Parties**" – will not, as Opponents suggest, prohibit the Opponents, or other MDL parties, from pressing affirmative defenses or claims against persons or entities who are not Settling Parties.[7] Rather, based on the plain language of the Trustee's request, the relief sought would merely restrain the Opponents, or any other MDL party, from actively pursuing a judgment against the Settling Parties while the stay remains in effect.[8]

---

[7] While the proposed stay would not preclude the Opponents or any other MDL party from pursuing an affirmative defense of comparative fault, the proposed stay would preclude MDL litigants from naming Settling Parties as co-defendants, thereby allowing the MDL litigant to launch an affirmative case against the Settling Parties. Should the MDL litigants be allowed to proceed with affirmative cases against the Settling Parties, the Trustee would effectively end up defending 400 or more suits. Moreover, there is a risk of harm to the bankruptcy estate should any affirmative claim result in an apportionment of fault to the Settling Parties. For instance, there is a risk that any apportionment of fault by a trier of fact could be given preclusive effect (*e.g.*, via *res judicata* or collateral estoppel) in a subsequent proceeding, particularly with respect to the liquidation of a claim in the chapter 11 proceeding.

[8] The Saint Thomas Entities and Ascension Parties raise a concern that the proposed stay could have the unintended effect of precluding third party claims if the applicable statutes of limitation were to lapse while the stay remains in effect and the Settling Parties do not ultimately obtain third party releases via a plan of liquidation. To the extent there are viable third-party claims against the Settling Parties that have not yet been asserted, the Trustee is amenable to the

(Continued…)

4

B.     **The Scope of the Prohibition is Not Overly Broad**

Prohibiting dispositive relief against the Settling Parties does not improperly protect those who have not made a settlement payment. Each party encompassed in the term "Settling Parties" was either a direct party to, or a party contemplated and incorporated into, one of the settlement agreements approved by the Bankruptcy Court. The term "Settling Parties" is used to collectively refer to (1) the "Contributors" and "Contributor and Affiliate Released Parties", which are defined and contemplated in that certain Plan Support and Funding Agreement dated May 2, 2014 (the "<u>Insiders Settlement Agreement</u>"); (2) NECC's affiliated landlord, GDC Properties Management, LLC ("<u>GDC</u>"), its insurer, Preferred Mutual Insurance Company, and certain individuals covered under GDC's insurance policies, which are parties to that certain GDC Insurance Settlement and Release Agreement (the "<u>GDC Settlement Agreement</u>"); and, (3) NECC's primary and excess liability insurance carriers, Pharmacists Mutual Insurance Company and Maxum Indemnity Company, and certain NECC insiders insured under the relevant insurance policies, which are parties to that certain Plan Support and Settlement Agreement (the "<u>Insurers Settlement Agreement</u>"). Each of the foregoing settlement agreements was approved by the Bankruptcy Court on July 31, 2014. *See* Bankruptcy Doc. Nos. 970, 971 and 972.

How the settlement payment amount is allocated between and among these people and entities should have no bearing on whether or not a party to or incorporated into any of the settlement agreements is deemed to have "settled" with the Trustee. Moreover, whether any person or entity falling within the definition of the term "Settling Parties" is presently a party to

---

(Continued…)

inclusion of a provision tolling the applicable statutes of limitations effective as of the date of entry of the order throughout the pendency of the requested stay.

the MDL proceedings is irrelevant to whether or not the relief requested by the Trustee is appropriate. Indeed, to the extent there are no claims pending in the MDL proceedings against the Settling Parties, the prohibition sought by the Trustee will have no prejudicial bearing on the Opponents or any other MDL litigant. Rather, the prohibition sought by the Trustee will do nothing more than restrain MDL litigants from actively pursuing a judgment against the Settling Parties.

## CONCLUSION

For the reasons stated above, as well as the reasons articulated in his Memorandum in Support, the Trustee respectfully requests that this Court grant the MDL Stay Motion and enter an order, substantially in the form attached as <u>Exhibit A</u> to the Memorandum in Support, staying the MDL proceeding, and limiting discovery therein, with respect to the Settling Parties.


Dated:  September 11, 2014

Respectfully Submitted,
DUANE MORRIS LLP

<u>/s/ *Michael R. Gottfried*</u>
Michael R. Gottfried (BBO #542156)
100 High Street
Suite 2400
Boston, MA 02110-1724
Phone (857) 488-4200
Email:  mrgottfried@duanemorris.com

*Counsel for Paul D. Moore, Chapter 11 Trustee of New England Compounding Pharmacy, Inc. d/b/a New England Compounding Center*