```
 1                      UNITED STATES DISTRICT COURT
 2                       DISTRICT OF MASSACHUSETTS
 3

 4
     IN RE:  NEW ENGLAND COMPOUNDING   )  MDL NO. 13-02419-RWZ
 5   PHARMACY CASES LITIGATION         )
                                       )
 6                                     )
                                       )
 7                                     )
                                       )
 8                                     )

 9

10
           BEFORE:  THE HONORABLE RYA W. ZOBEL
11

12

13

14                        MOTION HEARING

15

16         John Joseph Moakley United States Courthouse
                         Courtroom No. 12
17                       One Courthouse Way
                         Boston, MA 02210
18

19                       September 17, 2014
                            2:00 p.m.
20

21
               Catherine A. Handel, RPR-CM, CRR
22                    Official Court Reporter
           John Joseph Moakley United States Courthouse
23              One Courthouse Way, Room 5205
                         Boston, MA 02210
24              E-mail: hhcatherine2@yahoo.com

25
```

1    APPEARANCES:

2

    For The Plaintiffs:

3

4        Saltz Mongeluzzi Barrett & Bendesky PC, by MARY T. GIDARO,
     ESQ., One Liberty Place, 52nd Floor, 1650 Market Street,
5    Philadelphia, PA 19103;

6        Hagens, Berman, Sobol, Shapiro LLP, by KRISTEN JOHNSON,
     ESQ., 55 Cambridge Parkway, Suite 301, Cambridge, MA 02142;
7
         Lieff Cabraser Heimann & Bernstein, LLP, by ANNIKA K.
8    MARTIN, ESQ., 250 Hudson Street, 8th Floor, New York, NY
     10013-1413;
9
         Branstetter, Stranch & Jennings, PLLC, by J. GERARD STRANCH,
10   IV, ESQ., and BEN GASTEL, ESQ., ESQ., 227 Second Avenue North,
     Nashville, TN 37201-1631;

11

12

13

    For the Defendants:

14

15       Lenox, Socey, Formidoni, Giordano, Cooley, Lang & Casey,
     LLC, by JOSEPH R. LANG, ESQ., 3131 Princeton Pike, Building 1B,
16   Suite 104, Lawrenceville, NJ 08648;

17       Harris Beach PLLC, by FREDERICK H. FERN, ESQ., 100 Wall
     Street, New York, NY 10005;
18
         Tucker & Ellis LLP, by MATTHEW P. MORIARTY, ESQ.,
19   1150 Huntington Building, 925 Euclid Avenue, Cleveland, OH
     44115-1414;
20
         Ulmer & Berne LLP, by JOSHUA A. KLARFELD, ESQ., 1660 West
21   2nd Street, Suite 1100, Cleveland, OH 44113-1448;

22       Michaels, Ward & Rabinovitz LLP, by DANIEL M. RABINOVITZ,
     ESQ., One Beacon Street, Second Floor, Boston, MA 02108;
23

24

25

```
1                      P R O C E E D I N G S
2           (The following proceedings were held in open court before
3    the Honorable Rya W. Zobel, United States District Court Judge,
4    United States District Court, District of Massachusetts, at the
5    John J. Moakley United States Courthouse, One Courthouse Way,
6    Boston, Massachusetts, on September 17, 2014.)
7              THE COURT:  Good afternoon.
8           MS. JOHNSON:  Good afternoon, your Honor.
9           COURTROOM DEPUTY CLERK URSO:  Can we just remember to
10   speak into the microphone so counsel on the telephone can
11   hear, please.
12             THE COURT:  I forgot to bring my list of lawyers.
13             I'm not exactly sure what we're going to be doing
14   today.  The session seems to be getting shorter and shorter,
15   but let me review, first of all, who is here.
16             For the plaintiff?
17           MS. GIDARO:  Your Honor, Mary Gidaro, Saltz
18   Mongeluzzi Barrett & Bendesky.
19             THE COURT:  You're not on the -- you're not here from
20   a prior list.  You're here just today?
21           MS. GIDARO:  Yes, your Honor.
22           THE COURT:  I'm sorry.  Tell me your name again.
23           MS. GIDARO:  Mary Gidaro, G-i-d-a-r-o, and I'm with
24   the law firm of Salts Mongeluzzi Barrett & Bendesky.
25             THE COURT:  Okay.
```

1          MS. GIDARO:  And we represent the plaintiffs Mr.

2    Pennington, Mr. Ramos and Ms. Rivera, which are the plaintiffs

3    in the motions to dismiss filed by the defendants.

4          THE COURT:  And Ms. Johnson.

5          MS. JOHNSON:  Good afternoon, your Honor.

6          THE COURT:  And for the defendants?

7          MR. LANG:  Yes, your Honor.  Joseph R. Lang, L-a-n-g,

8    from the Lenox law firm.  I represent Dr. Bhajat in the Ramos

9    case and in the Rivera case and I also represent Dr. Perkins

10   and Professional Pain Management Associates in the Pennington

11   case.

12         THE COURT:  And otherwise, you're not directly

13   involved in the motions, correct?

14         Okay.  Now, as I understand it, what we were

15   originally going to hear today were the defendants' motions to

16   dismiss based on an alleged failure by the plaintiffs to

17   comply with the New Jersey healthcare laws, correct?

18         MR. LANG:  That is correct, your Honor.

19         THE COURT:  Now, as I understand it, it is the law of

20   the case, based on a ruling by Judge Saylor, that these

21   defendants are not at the moment defendants because they were

22   sued in the original complaint, then there was an amendment by

23   way of the short complaint in which they were not named.

24         MS. GIDARO:  That is correct, your Honor.

25         THE COURT:  That is still the status?

1          MS. GIDARO:  Yes, your Honor.

2          THE COURT:  That's what I understood.

3          Now, as I further understand, there is also a motion

4     to amend again to file a new short complaint that would

5     include these defendants.

6          MS. GIDARO:  That's correct, your Honor.

7          THE COURT:  Now, I gather there may be a question as

8     to whether the -- whether there was compliance with the

9     requirement of an affidavit of merit, or whatever they're

10    called, is still an issue in that although the defendants were

11    dismissed, there was an answer and they should have -- those

12    affidavits should have been filed before, and the fact that

13    the defendants were left out of the amended complaint does not

14    toll or do whatever to allow an amended -- second amended

15    complaint to resurrect this requirement and fulfill it.

16         MR. LANG:  Correct, your Honor.

17         THE COURT:  So that part of it may be appropriate

18    now -- I don't know -- but beyond that, to the extent that it

19    is the law of the case that they are not defendants until the

20    complaint is amended again, there really is nothing to decide,

21    and even if I decide -- other than what I just mentioned, and

22    even if the motion to amend is allowed, which I think it

23    probably should be, then I think the motion to dismiss is

24    premature because it is -- these affidavits aren't due until

25    sometime after the answer has been filed.  What's wrong with

1    this scenario?

2            MR. LANG:  I disagree that the law of the case -- do

3    I need to stand or -- so I can be heard.

4            THE COURT:  I think you better sit.  You better sit

5    because we need to use the microphones because there's at

6    least two people on the telephone.

7            MR. LANG:  Great.  Thank you, your Honor.

8            I disagree that that's the law of the case, your

9    Honor, that they are not defendants in the case.  There was

10   never any stipulation entered by the parties to dismiss them

11   from the case.  There was never any order from any court

12   dismissing them from the case.  They were named as defendants

13   in the complaints that were filed in New Jersey and they were

14   never dismissed by any stipulation or order at any point in

15   time.

16           THE COURT:  Well, except that the complaint that

17   named them was superseded by another complaint.

18           MR. LANG:  Well, as I understand the --

19           THE COURT:  The original complaint stayed as to them

20   and all the other people were --

21           MR. LANG:  As I understand it, the short form

22   complaints did nothing more than use the complaint -- the

23   allegations of the master complaint, which was doing nothing

24   more than bringing all the parties and all the allegations

25   together for the complaints that had already been provided.

Case 1:13-md-02419-RWZ   Document 1440   Filed 09/23/14   Page 7 of 28

7

1    There was no order of dismissal.  There was never an order of

2    dismissal of these defendants from this case.

3         So, I disagree with that aspect of what your Honor

4    said, but I do agree that the affidavits of merit were

5    required to be filed and served at a point in time before the

6    plaintiff claims that the -- these particular defendants were

7    no longer defendants in the case.

8         So, I think that your Honor can decide that aspect of

9    the motion and can grant the motions, if your Honor sees fit,

10   based on the caselaw of the State of New Jersey.  It doesn't

11   matter if at -- the plaintiff may be filing a motion to amend

12   the complaint, short form complaint, because the medical

13   malpractice allegations that are currently in existence would

14   be dismissed and could never be brought back again.

15        MS. GIDARO:  Your Honor, I would like to respond to

16   that.  I agree with your Honor's indication that the law of

17   the case was that they were no longer defendants, and I think

18   what's important is if -- an understanding of the factual

19   history.

20        Early on when these cases were first brought and then

21   they were removed to the MDL, it was clear that it was going

22   to be very difficult to obtain discovery from the defendants

23   and -- just so a background.

24        With respect to Dr. Bhajat, he performed these

25   injections at Inspira and Dr. Perkins performed the injections

```
 1    at Premier.  They're both also defendants in these cases.  So,
 2    when the master complaint was filed, they were not -- these
 3    defendants were not --
 4            THE COURT:  Excuse me.  Was an answer filed to the
 5    master complaint?
 6            MS. GIDARO:  To the --
 7            MS. JOHNSON:  No, your Honor.  The --
 8            THE COURT:  Well, if there was no answer to the
 9    master complaint, then how could these -- how could the
10    affidavit be -- have been waived, in essence, because it's not
11    due until after the answer is filed?
12            MR. LANG:  The answer was filed, your Honor,
13    initially to the state court complaints that were filed in New
14    Jersey.  So, the timeframe was running as of the time that
15    those complaints were -- those answers to those complaints
16    were filed.
17            THE COURT:  So, the cases came here fully pleaded?
18            MR. LANG:  Correct.
19            MS. GIDARO:  I'm not so sure that that's correct,
20    your Honor, because there was some point in time when the
21    cases were removed, and I received an answer and I advised Mr.
22    Lang that they had already been removed, but I think that
23    there's other issues that occurred in the interim which are
24    important for the Court to understand.
25            So, you know -- and I agree with the Court these
```

1    identical motions were filed after the plaintiff filed the

2    short form complaints wherein Judge Saylor dismissed them as

3    being moot because these defendants were not named in the

4    short form complaints.

5         But, in any event, I think also defendants' counsel's

6    actions here in the interim -- what the defendants' counsel

7    did, he agreed they were no longer defendants.  So, in the

8    interim, defendants' counsel sent a stipulation to dismiss

9    with prejudice these three defendants, and at that time I

10   contacted Mr. Lang and I indicated to him that there was over

11   a year on the statute of limitations and that I could not in

12   good faith sign stipulations on behalf of my clients to

13   dismiss these physicians with prejudice.

14        At that time I explained to Mr. Lang that although I

15   had the medical records, the issues in the case deal more with

16   what knowledge these physicians had when they injected these

17   contaminated steroids into the plaintiffs, what their roles

18   were in selecting preservative-free steroids and what their

19   role was in selecting New England Compounding Pharmacy as the

20   -- you know, as the entity to provide these medications, and I

21   explained to him that this was information I couldn't obtain

22   from the medical records.

23        I advised him that if he were to send me an affidavit

24   or some form of reliable information with respect to what

25   these defendants' involvement was, that I would certainly

1    consider it, and he was reluctant to do that at that time.

2         Therefore, after that I followed up and I served him

3    with discovery asking him for this same exact type of

4    information, and he sent me a letter and said, We're not

5    defendants in the case and I don't have any obligation to

6    provide you with this information.

7         So, your Honor, you know, all that being said, I

8    think that clearly points to the fact that he agreed he was no

9    longer a defendant in this case.

10        But that being said, your Honor, you know, returning

11   -- you know, should your Honor get to the merits of this

12   case -- you know, the whole purpose of the affidavit of merit

13   statute is to weed out frivolous claims, but it's not to bar

14   claims that have merit and, quite certainly, the parameters

15   allow for a plaintiff to obtain additional information if

16   necessary to obtain and secure the proper affidavits of merit.

17        So, here, we are in a mass tort situation.  We have

18   hundreds of cases filed and we have numerous healthcare

19   providers and physicians sued in these cases, your Honor, and

20   there's clearly an indication that there's merit.  The

21   affidavit of merit statute was never meant to be mechanically

22   applied, and I think in this case here there's unusual

23   circumstances that have taken place where the plaintiff's

24   hands were tied in obtaining the information that they needed.

25        THE COURT:  Well, it sounds all very equitable, but

1    is there any law to support it?

2            MR. LANG:  No.

3            MS. GIDARO:  Well, your Honor, getting to that point,

4    Mr. Lang's point is -- since this time we've been able to

5    obtain and secure affidavits of merit.  We had -- these are

6    second affidavits of merit, and Mr. Lang has advised that, Too

7    late, you're beyond the timeframe, and he's saying 120 days

8    was the timeframe.

9            And I apologize, your Honor, because I did -- it just

10   came to my attention that recently in New Jersey, the

11   appellate division had an opportunity to review very similar

12   issues to what we have in this case and specifically -- and

13   the circumstances were a little different, but basically with

14   respect to that 120 days, the trial court did dismiss the

15   plaintiff's case with prejudice.  The plaintiff then appealed

16   and the appellate division said the purposes of strict

17   enforcement of the affidavit of merit statute are not served

18   in these circumstances, and, your Honor, I would suggest --

19           THE COURT:  Were they reversed?

20           MS. GIDARO:  Yes, your Honor, reversed, and the

21   plaintiff was allowed additional time to obtain an affidavit

22   of merit, and I have --

23           THE COURT:  We have about 120 days, but, as I

24   understand it, it's 60 days and an additional 60 days with

25   leave.

1          MS. GIDARO:  Yes, your Honor.  Yes.

2          And there are also parameters in the statute to apply

3    for additional days if you are unable to get information that

4    you need.

5          THE COURT:  But that's not our case.

6          MS. GIDARO:  Well, your Honor, I suggest that it is

7    our case because I attempted to obtain additional information

8    and Mr. Lang was reluctant to provide any additional

9    information.

10          THE COURT:  But all of that took place when they were

11    not parties.

12          MS. GIDARO:  That's correct, your Honor.  So, you're

13    -- that's correct, but the statute had not run yet, your

14    Honor, and, you know, in good faith plaintiff was attempting

15    to obtain the information that they needed.

16          And just so I may, your Honor, the case that I

17    referred to, it was only decided in New Jersey September 3rd,

18    2014, and it's the *Williams vs. Atlanta Care Regional Medical*

19    *Center*, and it's 2014, New Jersey Super, unpublished, Lexis

20    2157.

21          THE COURT:  What is the appellate division in the New

22    Jersey constellation, New Jersey court constellation?

23          MS. GIDARO:  Well, there's the trial division,

24    appellate division, and then the Supreme Court.

25          THE COURT:  So, it's the intermediate appellate

1    court?

2            MS. GIDARO:  Yes, your Honor.  Yes, your Honor.

3            And the other reason why this case -- this appellate

4    division recent case is important is because in that case, the

5    appellate division reversed -- I mean, if your Honor is

6    inclined to get to the merits of this case, in that case the

7    appellate division reversed and provided the plaintiff with

8    additional time.  Here, we've provided Mr. Lang with proper

9    affidavits of merit, your Honor, at this point.

10           MR. LANG:  Your Honor, there --

11           THE COURT:  I don't understand -- it is the

12    plaintiff's position that the defendants are not defendants?

13           MS. GIDARO:  Correct, your Honor.

14           THE COURT:  But you want me to take cognizance of

15    their having received the affidavits that the New Jersey law

16    requires after they become proper defendants?

17           MS. GIDARO:  Yes, your Honor.

18           THE COURT:  Mr. Lang.

19           MR. LANG:  A couple of things just to directly

20    address what Ms. Gidaro just said, but then I want to take a

21    step back and go over several dates of when things occurred.

22           First of all, this *Williams* case that Ms. Gidaro just

23    cited, it's an unreported decision by the appellate division,

24    which means New Jersey has no legal precedence whatsoever.

25           Second, the facts of the cases are not similar to our

1   case in any shape, way or form.  It dealt with a service of an

2   affidavit of merit back in 2010 and well before the *Nicholas*

3   *vs. Mynster* Supreme Court decision that came down in 2013.

4          Also in that case, the plaintiff had to replace their

5   expert because of some unforeseen circumstances.  That's when

6   the trial court dismissed the case, and the appellate division

7   in an unreported decision allowed them to replace their expert

8   that had to be replaced because of some unforeseen

9   circumstances.  So, it has nothing to do with anything that

10  we're talking about here today.

11         There are provisions under the affidavit of merit

12  statute in New Jersey that if the plaintiff needs additional

13  time to -- whether to obtain records or obtain additional

14  information to get an affidavit of merit, they can do so.

15  They need to apply to the Court.  They need to file a motion,

16  and in this case Ms. Gidaro did not file a motion at all for

17  additional time.

18         My letter to Ms. Gidaro about the defendants not

19  being defendants was not a tongue and cheek.  This was after I

20  had received a letter requesting discovery from my clients in

21  a case -- the cases where Ms. Gidaro said they were no longer

22  defendants, and I didn't think that the plaintiff should have

23  their cake and eat it, too, where they can request discovery

24  from my clients and, yet, say my clients are not defendants.

25  I responded to Ms. Gidaro's letters by filing -- re-filing

1    these motions for dismissal.

2          And the affidavit of merit statute deals with merit:

3    Does the case have any merit to it, meritorious actions, but

4    you can't take cases against defendants that may be

5    meritorious and say, therefore, it's meritorious against other

6    defendants as well.  You can weed out individual defendants in

7    these cases when the cases are not meritorious as to certain

8    individuals, certain defendants in the case.

9          Having said that, I just wanted to take a step back,

10    your Honor.  The Pennington case is a little -- the dates are

11    a little different than the Ramos and the Rivera cases.  So, I

12    wanted to address those separately.

13          The complaint against Dr. Perkins and Professional

14    Pain Management Associates was filed in November of 2012 and

15    an answer was filed in state court on December 21 of 2012.

16    That started the affidavit of merit statute to run, the 60

17    days, plus the additional 60 days for good cause, and the

18    deadline for the plaintiff to produce an affidavit of merit

19    was April 20 of 2013.

20          Recognizing their obligation to do so, the plaintiffs

21    produced an affidavit of merit from a Dr. Brian Curry in

22    January of 2013, within that 60-, 120-day timeline, but Dr.

23    Curry is an infectious disease physician, whereas Dr. Perkins

24    is a specialist, board certified, in anesthesiology and pain

25    management.  So, therefore, the affidavit was insufficient

1    under the affidavit of merit statute.

2              I sent plaintiff's attorney an objection to Dr.

3    Curry's affidavit, letting them know I would not accept it,

4    and the plaintiff did nothing to address that issue until

5    serving an affidavit from another specialist in July of this

6    year, 15 months after the 120 days expired.

7              THE COURT:  When was the case dismissed?  When was

8    the new complaint filed?

9              MR. LANG:  This short form complaint?

10             THE COURT:  Yes.

11             MR. LANG:  The short form complaint against Dr.

12   Perkins was filed on December 19 of 2013.  So, that short

13   form --

14             THE COURT:  A year after the --

15             MR. LANG:  Correct.  So, it's essentially eight

16   months after that 120 days expired, is when the short form

17   complaint was filed.

18             So, under that Pennington case, they didn't provide a

19   proper affidavit from an equally like specialized physician

20   within that 120 days, and in that case the short form

21   complaint was not filed until many, many, many months after

22   the 120-day timeframe expired.

23             So, under those two -- with those two factors in

24   mind, the Pennington case is ripe for summary judgment.  It

25   should be dismissed as to Dr. Perkins and Professional Pain

1    Management Associates.

2         The Ramos and Rivera cases are a little different in

3    their timeline.  The answer on behalf of Dr. Bhajat --

4         THE COURT:  Let me just go back for a moment to

5    Perkins.

6         MR. LANG:  Sure.

7         THE COURT:  So, according to your chronology, then,

8    the issue would be whether the dismissal of the claim against

9    Perkins kills the case such that -- in a way that it can be

10   resurrected, and if resurrected by means of the short form,

11   the amended short form that brings this defendant back in

12   again, do the times begin to run again?  I think that's a

13   question for today, is it not?

14        MR. LANG:  I think, yes, you could -- that could be

15   the question of the day, your Honor, and I think the answer to

16   the question is that once the --

17        THE COURT:  Well, at the moment I'm not so interested

18   in the answer.  I'm trying to figure out what I need to

19   decide.

20        MR. LANG:  Okay.  I think the question was, was this

21   case ripe for dismissal before the short form complaint was

22   filed?  I think that's what -- that's what we're dealing with

23   here in the Pennington case.  Should it --

24        THE COURT:  Ignoring --

25        MR. LANG:  Because their deadline to file the

affidavit was April of 2013.  They served it, but not from a like specialized physician.  Therefore, the case was ripe to be dismissed well before -- eight months before the short form complaint was filed.

THE COURT:  Yes, but nobody moved to dismiss it at that time.

MR. LANG:  There hadn't been a motion filed yet.

THE COURT:  There were, in a sense, procedural failures on both sides.

MR. LANG:  The motion --

THE COURT:  So, it's not clear to me why the plaintiff's procedural failure should inure to the benefit of the defendant, but the defendant's procedural mistake should not inure to the benefit of the plaintiff.

MR. LANG:  Well, I don't think that the plaintiff's procedural failure shouldn't inure to the benefit of the defendant because the filing of the short form complaint in December of last year without Dr. Perkins and her group named as a defendant was a clear effort to circumvent the affidavit of merit statute and in which case the affidavit of merit statute requires a dismissal of the claim against her and her group.

THE COURT:  It seems to me that at the moment the issue to be decided is really what needs to be decided. Whether or not the -- whether there were failures or

1   deliberate strategies, whether the case as amended the second

2   time -- because I'm assuming that I would allow the amendment

3   to the complaint.  I mean, why not, other than it makes more

4   work.  But once the amended complaint is filed and the

5   defendants are named again, Perkins is named again as a

6   defendant, then the question is whether what happened before

7   lets Perkins out based on what happened before and that, I

8   think, is the immediate question to be decided.

9          If Perkins does not get out based on what happened

10  before, then I think the question is whether we are ripe for

11  decision on the new complaint where there has not yet been an

12  answer and, presumably, there will be an affidavit of merit

13  which complies in all respects with the statute.

14          MR. LANG:  Yes, your Honor, I would agree.

15          THE COURT:  Okay.  So that takes care of Perkins.

16          Now, with respect to Bhajat, what's the story there?

17          MR. LANG:  I don't have in front of me when the

18  complaint was filed, but the answer was filed here in federal

19  court in July of last year, July 11th, 2013.

20          THE COURT:  When Judge Saylor had deemed him not to

21  be a party?

22          MR. LANG:  Before.  Before.  He made a decision in

23  late December of 2013.

24          So, the answer -- I was trying to chase the answer --

25  the complaint around.  I filed it in state court in New

```
1    Jersey.  They sent it back after a few months and said, Oh,
2    no, it's been moved to federal court in New Jersey.  So, I
3    filed it in federal court in New Jersey.  They said, Oh, no,
4    it's been moved to federal court in Massachusetts.  So, I kept
5    chasing the complaint around trying to find an answer.
6              I was eventually able to, after being admitted pro
7    hac vice, to file an answer here for both of those cases on
8    July 11th, 2013.  So, when the 120 days -- 60 days, 120 days
9    timeframe began to run.
10             THE COURT:  I'm sorry.  What was the date when you
11   finally got the answer here?
12             MR. LANG:  July 11th, 2013.
13             So, the deadline for the plaintiff to serve an
14   affidavit of merit was November 8 of 2013.
15             In that case, like in Pennington, the plaintiffs had
16   filed -- or served affidavits of merit from the same
17   physician, Dr. Brian Curry, infectious disease doctor.  Dr. --
18             THE COURT:  Wait a minute.
19             You filed this complaint at a time when Judge Saylor
20   had said that you were not a party?
21             MR. LANG:  No.  The complaint was filed in New Jersey
22   long before it came up here.  It was brought here to New
23   Jersey -- to Massachusetts --
24             THE COURT:  This is the short form?
25             MR. LANG:  No.  I'm talking about the initial
```

1    complaint, your Honor.  I'm sorry, I wasn't clear with that.

2    The initial complaint.

3            THE COURT:  Okay.

4            MR. LANG:  Answer to the initial complaint, July 11,

5    2013.  The plaintiff's deadline was November 8 of 2013.

6            Dr. Bhajat is a radiologist with also a subspecialty

7    in neuroradiology.  Dr. Curry is an infectious disease

8    physician, not the same specialty.  I, again, sent a letter

9    objecting in September of 2013.

10           The short form complaint that plaintiffs filed in

11   both of these cases, both Ramos and Rivera, was filed December

12   9th of 2013, a month after their deadline to produce an

13   affidavit of merit.

14           So, if your Honor is looking to see, again, what it

15   is that you need to decide, again, I think it's the same

16   question as in the Pennington case where it was ripe for

17   dismissal before the short form complaint and although they

18   have currently served another affidavit of merit from a

19   different specialist, it's still not the same specialty as Dr.

20   Bhajat.  So, even what they've done to date isn't satisfactory

21   under the affidavit of merit statute, but I think it's the

22   same question as in Pennington that your Honor needs to

23   answer.  It's just different dates as to when things were due.

24           THE COURT:  As I understand it, the New Jersey

25   statute requires the defendant in the answer to detail the

1    specialty of the defendant doctor.

2              MR. LANG:  That's correct.

3              THE COURT:  Was that done in this case?

4              MR. LANG:  It was, your Honor.

5              THE COURT:  And the affidavit filed with respect to

6    Bhajat does not include an affidavit by a specialist of the

7    sort of Dr. Bhajat?

8              MR. LANG:  It does not.

9              THE COURT:  Okay.  All right.

10             Now, Ms. Gidaro, tell me what I need to decide and

11   wherein you disagree with Mr. Lang.

12             MS. GIDARO:  Well, I disagree with Mr. Lang on

13   various steps.  I mean, I think when we look at the whole --

14             THE COURT:  Tell me first what I have to decide.

15             MS. GIDARO:  Well, your Honor, I think you're going

16   to have to -- the first issue is whether or not they are --

17   they continue to be defendants in the case after the short

18   form complaint was filed, and then at that point the issue is

19   -- if they weren't, then there's nothing to decide.  I mean,

20   other than they weren't defendants, and then there was no --

21   there was no timeframe for providing an affidavit of merit.

22             THE COURT:  Unless one counts back, as Mr. Lang also

23   suggests.  I mean, that's the second --

24             MS. GIDARO:  Okay.  And, your Honor, with -- but if

25   we get to the merits of the issue with the affidavit of merit,

```
1    then, your Honor, I believe the case that I've recently
2    provided --
3              THE COURT:  I don't think we're there yet.  I don't
4    know that we are at the point yet of determining the adequacy
5    of any of these certificates of merit.
6              MS. GIDARO:  Okay.  Well, your Honor, we did provide
7    a certificate of merit of Dr. Curry and I would suggest that
8    that was within a sufficient timeframe.
9              THE COURT:  Well, if you have nothing else to argue
10   on what I need to decide -- and I think Mr. Lang has not only
11   outlined what he thinks I need to decide, but also has argued
12   the point -- then I'm not sure what more I need to hear.  I
13   just need to decide what needs to be decided, and the best
14   outcome for the plaintiffs is that they were not defendants,
15   that nothing that happened heretofore bars the plaintiffs from
16   going forward.
17             I would in the interim, I think, allow the motion to
18   amend, just so that we have a full record of what needs to be
19   done, and then ultimately I would need -- if everything goes
20   in the plaintiff's favor, then there would need to be a
21   decision on the motion to dismiss, which I would suppose would
22   not be ripe until after the filing of the affidavits, right?
23             MS. GIDARO:  I agree, your Honor.
24             THE COURT:  So, right now all I can really do is to
25   decide whether we're properly here.
```

1          MS. GIDARO:  Yes, your Honor.

2          And, your Honor, I would suggest that based upon

3     Judge Saylor's prior order, that that is the law of the case,

4     and it's very similar to this recent case in New Jersey where

5     they discussed special circumstances in cases and -- such as

6     in this one where plaintiff's hands were tied --

7          THE COURT:  How about the fact that it's not a

8     reported decision?

9          MS. GIDARO:  Your Honor, it is -- you know, it's true

10    it's an unpublished decision, but in New Jersey these cases

11    are -- you know, it is permissible to cite to these cases and

12    I believe what the appellate division did in that case is very

13    instructive.

14         THE COURT:  Well, that may be, but...

15         Does anybody wish to be heard on the issues of what

16    needs to be decided or do either of the immediate parties wish

17    to submit further writings?

18         MR. LANG:  I don't think further writings, your

19    Honor.  Thank you.

20         THE COURT:  I'm not prepared to decide it right this

21    moment.

22         MR. LANG:  Understood.

23         MS. GIDARO:  Your Honor, I do just want to ask the

24    Court's guidance with respect to the motions to amend.  I

25    don't know if they're being -- you know, at this point the

```
1    statute of limitations is running and I reached out to --
2              THE COURT:  I thought I just allowed it.
3         MS. GIDARO:  Okay.  Thank you, your Honor.
4              I just wanted to confirm that -- so, we are permitted
5    to file those.
6              THE COURT:  What's the docket number of the motion to
7    amend?  Ms. Johnson will know.
8              MR. LANG:  We did submit some opposition to it this
9    week, your Honor.  There was something filed, but I don't have
10   the docket number in front of me.
11             MS. GIDARO:  The only -- I don't have that right
12   handy.
13             Your Honor, the only -- I believe Mr. Lang submitted
14   opposition only to the Ramos and Rivera motions to amend.  Is
15   that correct?
16             MR. LANG:  I think it was to Pennington as well.
17             MS. GIDARO:  These were filed late yesterday and I
18   did see them, but --
19             THE COURT:  Ms. Johnson.
20             MS. JOHNSON:  I, unfortunately, do not have the
21   docket number for you, your Honor, but it's on the agenda for
22   tomorrow, which should have been filed --
23             THE COURT:  So, tomorrow I will know exactly which
24   motion I am allowing today.
25             MS. JOHNSON:  Yes, your Honor.  Thank you.
```

1          MS. GIDARO:  Your Honor, I may have -- if you give me

2     a moment, I may have --

3          THE COURT:  Okay.  Ms. Yang tells me that the motion

4     to amend the short form complaint was filed not in the

5     multidistrict proceeding but in the original case, which is on

6     our Docket No. 51 in case 13-10412, also No. 51 in 13-10410,

7     and Docket No. 64 in 13-10406, which is the Perkins case --

8     the Pennington case.

9          MS. GIDARO:  Yes, Pennington, your Honor.

10         THE COURT:  And those motions are allowed.

11         MS. GIDARO:  Thank you, your Honor.

12         THE COURT:  And your objections to that are noted.

13         So, at least that part is done.  And now I need to

14    figure out what we do about the motion to dismiss those, I

15    guess, new complaints, right?

16         MR. LANG:  (Nodding).

17         THE COURT:  So, does anybody else wish to be heard on

18    any of this today?

19         MS. JOHNSON:  Only to say, your Honor, that we

20    appreciate the Court's scheduling this additional hearing to

21    hear argument.  At the time that we had requested that last

22    month's status conference, there were additional motions that

23    we expected to be heard today.

24         THE COURT:  I know.

25         MS. JOHNSON:  Some of those I understand counsel is

1    deciding whether to submit on the papers or whether to request

2    oral argument.  I understand that the plaintiffs are leaning

3    towards argument because there's an issue of personal

4    jurisdiction that may be raised in other cases down the line,

5    but no decision has been reached on that.  So, we appreciate

6    the Court's time.

7              THE COURT:  And I appreciate all counsel appearing,

8    some from far away.

9              MS. GIDARO:  Thank you, your Honor.

10             MR. LANG:  Thank you, your Honor.

11             THE COURT:  Whoever is engaged in tomorrow's status

12   conference is, of course, welcome to stay, not in the

13   courthouse.

14             MS. GIDARO:  Thank you, your Honor.

15             MR. LANG:  I will not be here tomorrow, your Honor,

16   but you've already made the decision on that motion.  So, it's

17   really not important for me to be here.

18             THE COURT:  But I appreciate your good arguments and

19   will see what I can do as quickly as I can.

20             MS. GIDARO:  Thank you.

21             MR. LANG:  Thank you, Judge.

22             THE COURT:  Thank you very much.  And I'll see you

23   tomorrow.

24             MS. JOHNSON:  Thank you, your Honor.

25             (Adjourned, 2:36 p.m.)

```
1                    C E R T I F I C A T E

2            I, Catherine A. Handel, Official Court Reporter of the

3    United States District Court, do hereby certify that the

4    foregoing transcript, from Page 1 to Page 27, constitutes to the

5    best of my skill and ability a true and accurate transcription of

6    my stenotype notes taken in the matter of Multidistrict

7    Litigation No. 13-02419-RWZ, In Re: New England Compounding

8    Pharmacy Cases Litigation.

9

10

     September 21, 2014        /s/Catherine A. Handel
11   Date                      Catherine A. Handel, RPR-CM, CRR

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```