UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN RE: NEW ENGLAND COMPOUNDING  )
PHARMACY, INC., PROCUCTS LIABILITY )
LITIGATION                      )
                                ) MDL No.: 2419
                                ) Master Docket No.: 1:13-md-2419-FDS
                                )
THIS DOCUMENT RELATES TO:       )
                                )
    All Tennessee Actions against )
    St. Thomas Entities.         )

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' STEERING COMMITTEE'S MOTION TO COMPEL PRODUCTION OF INSURANCE AGREEMENTS**

The Plaintiffs' Steering Committee ("PSC") hereby moves the Court to enter an order (i) compelling Saint Thomas Health, Saint Thomas Network, and Saint Thomas Hospital West f/k/a Saint Thomas Hospital (collectively the "Saint Thomas Entities") to produce all insurance agreements related to claims against them in this litigation as required by Rule 26(a)(1)(A)(iv). The issue is simple. Federal Rule of Civil Procedure 26(a)(1)(A)(iv) requires a defendant to produce insurance policies relevant to claims made by plaintiff. Plaintiffs first asked for insurance information almost 24 months ago. Judge Boal ordered 13 months ago that healthcare clinics that are named defendants in this MDL, like the Saint Thomas Entities, must produce this information. The PSC has met and conferred with the St. Thomas Entities on several occasions specific to this issue. And yet, the Saint Thomas Entities steadfastly refuse to provide their insurance agreements related to claims made by plaintiffs in this litigation.

**General Background**

1.  On or about June 21, 2013, and pursuant to the Order on Central Enforcement of Subpoenas (Doc. 193) and the Order Granting Plaintiffs Leave to Serve Subpoenas and Qualified

1

Protective Order Regarding Protection of Health Information (Doc. 192), attorneys acting on behalf of the PSC served subpoenas on approximately 85 healthcare providers.

2. After receiving many motions to quash and objections to the PSC Subpoena, the PSC met and conferred with many of the movants and objectors, significantly reduced the scope of documents requested in the PSC Subpoena, and on July 17, 2013 filed its Consolidated Response to Subpoena Objections along with a revised subpoena. (Doc. 325).

3. The Revised PSC Subpoena specifically requested the following documents:

> Any and all policies of insurance, including without limitation of the foregoing, professional liability, malpractice, products liability, general liability, and comprehensive or umbrella policies, issued to the Healthcare Provider and/or its principal officers and directors and/or any physician working for or on behalf of the Healthcare Provider, for the policy periods covering any use of NECP medical products identified as contaminated by the CDC.[1]

4. After further conferences between the PSC and counsel for the subpoena recipients and the entry of a scheduling order, Judge Boal heard oral argument on November 7, 2013, and issued the Subpoena Order.

5. In its Subpoena Order, the Court addressed all the previously filed objections and motions to quash, including objections to the production of insurance agreements.[2] The Court's Subpoena Order specifically found that all subpoena recipients that were parties to the MDL were required to produce:

> [A]ny insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment as part of their automatic disclosure obligations.[3]

---

[1] Dkt. No. 464, p. 9.
[2] Subpoena Order, p. 20.
[3] Subpoena Order, p. 21.

2

6.     On July 17, 2014, Judge Boal held a Rule 26 conference related to common discovery plans offered by various parties. On September 18, 2014, Judge Boal issued an order governing common discovery requiring parties who had not previously exchanged initial disclosures to do so no later than October 18, 2014.[4]

**Background Specific to Saint Thomas Entities**

7.     Following the July 17, 2014, Rule 26 conference held by Judge Boal, the Saint Thomas Entities agreed to produce their initial disclosures on August 20, 2014. However, the Saint Thomas Entities did not produce any insurance agreements as part of that disclosure, and instead agreed to make certificates of insurance available for inspection.[5]

8.     The very next day the PSC served a meet and confer letter on the Saint Thomas Entities demanding immediate production of full insurance agreements and indicating that the PSC would not accept mere production of the certificates of insurance because Rule 26 and Judge Boal's Subpoena Order required production of entire insurance agreements.[6]

9.     The following day, August 22, 2014, counsel for the Saint Thomas Entities responded to the PSC's letter of August 21, 2014 stating that "[w]e are hopeful we will be able to work this matter out and think we will be able to send you documents electronically on Monday or Tuesday…"[7]

10.    On August 28, 2014, the Saint Thomas Entities produced only the certificates of insurance and did not produce any applicable insurance policies. The certificates indicate that the Saint Thomas Entities had insurance through an entity called "Ascension Risk Services" with

---

[4] Dkt. No. 1425, p. 3.
[5] Declaration of Benjamin A. Gastel filed contemporaneously herewith (hereinafter "Gastel Decl."), at Ex. 1.
[6] *See id.*
[7] *See* Gastel Decl. at Ex. 2.

an address of PO Box 46944, 11775 Borman Dr., Suite 300, St. Louis, MO 63146. The certificates of coverage also indicate the following:

> This is to certify that the coverage listed below has been issued to the Covered Entity named above for the period indicated. Notwithstanding any requirement, term or condition of any contract or other document with respect to which this certificate may be issued or may pertain, the coverage afforded as described herein is subject to all the terms, exclusions and conditions of such coverage. Limits shown are minimum liability limits required and may have been reduced by defense costs and paid claims…
>
> Except where otherwise required by law, all insureds share the limits of liability.[8]

11. According the Missouri Department of Insurance, an entity called Ascension Health Risk Purchasing Group is a licensed insurance company in the state of Missouri with the same address identified in the Certificates of Coverage produced by the Saint Thomas Entities.[9]

12. Immediately after receiving the email containing the Certificates of Coverage, the PSC sent an email stating "[the PSC] was under the impression the full policies would be produced. As [the PSC] made clear in the [August 21, 2014 letter] we are going to insist on the full policy (including endorsements) as is clearly indicated by the rule and Judge Boal's subpoena order."

13. On September 2, 2014, counsel for the Saint Thomas Entities agreed to provide certain insurance agreements for "buffer and excess insurance policies" but refused to produce a "trust agreement" related to Ascension Risk Services'[10] insurance agreement reflected in the certificates of coverage served on August 28, 2014.[11]

---

[8] *See* Gastel Decl. at ¶ 4 and Ex. 3.
[9] *See* Gastel Decl. at Ex. 4.
[10] Ascension is the parent company of the Saint Thomas Entities.
[11] *See* Gastel Decl. at Ex. 5.

4

## ARGUMENT

14. In the Subpoena Order the Court specifically held that parties to this litigation were required to produce

> "any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment" as part of their automatic disclosure obligations. See Fed. R. Civ. P. 26(a)(1)(A)(iv).[12]

15. Yet, the Saint Thomas Entities claim that their agreement with Ascension Risk Services is a "self-insurance" program and is not an "insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment." In a position that defies the case law on this issue, the Saint Thomas Entities take the position that all they are required to produce are the certificates related to that "self-insurance" program.[13]

16. However, federal courts in virtually every circuit uniformly agree that Rule 26 demands the production of an entire insurance agreement and have categorically refused to limit Rule 26(a)(1)(a)(4) to declaration/certification pages.[14] Since the Subpoena Order clearly relies on Rule 26(a)(1)(A)(4) as its basis to require production of insurance agreements, it is abundantly clear that the Saint Thomas Entities are required to produce in accordance with Rule

---

[12] Subpoena Order at Pg. 21.
[13] *See* Gastel Decl. at Ex. 5.
[14] *See e.g.*, *Cmty. Ass'n Underwriters of Am. v. Queensboro Flooring Corp.*, Case No. 3:10-CV-1559, 2014 U.S. Dist. LEXIS 90939 (M.D. Pa. July 3, 2014) (granting motion to compel entire insurance agreement when party only produced declaration pages); *Kelly v. FedEx Ground Package Sys.*, Case No. 3:10-cv-01265, 2011 U.S. Dist. LEXIS 45180 (S.D. W. Va. Apr. 26, 2011) (Same); *Capozzi v. Atwood Oceanics, Inc.*, Case No. 08-776, 2009 U.S. Dist. LEXIS 91911 (W.D. La. Sept. 20, 2009); *Cessante v. City of Pontiac*, Case No. 08-CV-10497, 2009 U.S. Dist. LEXIS 30217 (E.D. Mich. Apr. 9, 2009) (Same); *Wolk v. Green*, Case No. 06-5025, 2008 U.S. Dist. LEXIS 67759 (N.D. Cal. Jan. 31, 2008); *see also Morock v. Chautauqua Airlines, Inc.*, 2007 U.S. Dist. LEXIS 74009 (M.D.Fla. 2007) (disclosure of declarations page and assurance that policy would adequately cover plaintiff's claims insufficient); *Boyer v. Riverhead Cent. School Dist.*, 2006 U.S. Dist. LEXIS 93917, (E.D.N.Y. 2006) (summaries of policies insufficient).

26's requirements. They have refused to meet that obligation and instead defy the plain language of the Subpoena Order and Rule 26.[15]

17. The entire insurance agreements are necessary because the declaration sheets simply do not provide enough information for the PSC to determine the scope of applicable insurance coverage as questions remain outstanding including, but not limited to: 1) whether the trust agreement would provide coverage for agents of the Saint Thomas Entities, which, under the allegations at issue in this litigation, would include liability of the Saint Thomas Outpatient Neurosurgical Clinic; 2) the amount of insurance coverage applicable to the claims at hand; 3) whether the policies are wasting policies; 4) any exclusions that may apply to the claims brought in this litigation; 5) whether the policies apply to plaintiffs' product liability claims; 6) the source of funds that may be applicable to claims made by plaintiffs in this litigation; and/or 7) whether the Saint Thomas Entities' self-insurance program is stacking or cumulative with respect to liability for each respective entity.

18. Further, from a practical standpoint, the Saint Thomas Entities should want the PSC to have a full understanding of its insurance agreements so that the PSC can properly evaluate any settlement demand. According to the Advisory Committee's Notes on Rule 26(a)(1)(A)(iv), "[d]isclosure of insurance coverage will enable counsel for both sides to make the same realistic appraisal of the case, so that settlement and litigation strategy are based on knowledge and not speculation." In other words, the PSC needs the Ascension Risk Services'

---

[15] Even absent a court order requiring their production, the Tennessee Clinic Defendants would still have to produce their insurance agreements pursuant to Rule 26. Rule 26 states that a party must produce insurance agreements within 14 days of the Rule 26 conference. As the Tennessee Clinic Defendants are aware, the Court held the Rule 26 conference in this case on July 17, 2014. Under the plain language of the rule, the Tennessee Clinic Defendants were required to produce their insurance agreements no later than July 31, 2014. They produced only the relevant declaration pages for those agreements, not the agreements themselves. Accordingly, the Court, at a minimum, should compel the production of these documents, notwithstanding the fact that it has already done so in the Subpoena Order.

insurance agreement to ensure it can properly appraise the value of this case and conduct meaningful settlement discussions.

19. Moreover, the Saint Thomas Entities' claims that the Ascension Risk Services' insurance agreement is not subject to Rule 26's initial disclosure requirements because it is part of a "self-insurance" program rings hollow. It is clear the Saint Thomas Entities are not self-insuring their own loss, but rather are participants in an insurance program offered by Ascension Risk Services, which is a licensed insurance company in Missouri. Various Ascension parties were once a party to this litigation but they obtained a dismissal from this Court on the grounds that they are separate and distinct legal entities from the Saint Thomas Entities.[16] It defies that position previously taken to now claim that documents between an Ascension party and the Saint Thomas Entities are not discoverable because these entities should be considered the same entity as it relates to Ascension offering insurance to the Saint Thomas Entities. Accordingly, any agreement the Saint Thomas Entities have whereby Ascension Risk Services provides insurance is an "insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment."[17]

20. Finally, even if the insurance agreement with Ascension Risk Services is not discoverable under Rule 26(a)(1)(A)(iv), and based on the above it clearly is, the insurance agreement is discoverable under Rule 34 and will have to be produced eventually. Plaintiffs bring vicarious liability claims relating to the Saint Thomas Entities' relationship with its affiliated entity the Saint Thomas Outpatient Neurosurgical Clinic. Those claims allege that the Saint Thomas Entities' structure is merely a corporate shell game in an improper attempt to shield the Saint Thomas Entities from liability of its agent, the Saint Thomas Outpatient

---

[16] *See* Dkt. No. 1360 at P. 51-52.
[17] *See* Subpoena Order at 21 and Rule 26(a)(1)(A)(iv).

Neurosurgical Clinic.  The insurance agreement, to the extent that it provides coverage for agents of the Saint Thomas Entities, is clearly relevant to those vicarious liabilities.  After all, the Certificates of Insurance show that Ascension Risk Services is treating the Saint Thomas Entities as an undifferentiated corporate entity, the exact claims of Plaintiffs in this litigation.[18]

WHEREFORE, the Plaintiffs' Steering Committee hereby moves the court to enter an Order requiring the Saint Thomas Entities produce all applicable insurance agreements related to claims made by plaintiffs in this action.

Date:  October 3, 2014            Respectfully submitted:

**/s/ J. Gerard Stranch, IV**
J. Gerard Stranch, IV
Benjamin A. Gastel
BRANSTETTER, STRANCH & JENNINGS, PLLC
227 Second Avenue North
Nashville, TN 37201
Telephone:  615/254-8801
Facsimile:  615/255-5419
gerards@branstetterlaw.com
beng@branstetterlaw.com

*Plaintiffs' Steering Committee and TN Chair*

Thomas M. Sobol
Kristen Johnson Parker
HAGENS BERMAN SOBOL SHAPIRO, LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Telephone:  617/482-3700
Facsimile:  617/482-3003
tom@hbsslaw.com
kristenjp@hbsslaw.com

*Plaintiffs' Lead Counsel*

Elizabeth J. Cabraser
Mark P. Chalos
LIEFF CABRASER, HEIMANN & BERNSTEIN, LLP

---

[18] *See* Gastel Decl. at Ex. 3.

8

275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: 415/956-1000
Facsimile: 415/956-1008
ecabraser@lchb.com
mchalos@lchb.com

*Federal/State Liaison*

Marc E. Lipton
LIPTON LAW
18930 W. 10 Mile Road
Southfield, MI 48075
Telephone: 248/557-1688
Facsimile: 248/557-6344
marc@liptonlaw.com

Kimberly A. Dougherty
JANET, JENNER & SUGGS, LLC
31 St. James Avenue, Suite 365
Boston, MA 02116
Telephone: 617/933-1265
kdougherty@myadvocates.com

Mark Zamora
ZAMORA FIRM
6 Concourse Parkway, 22nd Floor
Atlanta, GA 30328
Telephone: 404/451-7781
Facsimile: 404/506-9223
mark@markzamora.com

Patrick T. Fennell (VSB 40393)
CRANDALL & KATT
366 Elm Avenue, S.W.
Roanoke, VA 24016
Telephone: 540/342-2000
Facsimile: 540/400-0616
pfennell@crandalllaw.com

*Plaintiffs' Steering Committee*

CERTIFICATE OF SERVICE

      I, J. Gerard Stranch, IV, hereby certify that I caused a copy of the foregoing *Plaintiffs' Steering Committee's Memorandum in Support of Motion to Compel Production of Insurance Agreements* to be filed electronically via the Court's electronic filing system.  Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system, and notice of these filings will be sent to these parties by operation of the Court's electronic filing system.

Date:   October 3, 2014

                                              /s/J. Gerard Stranch, IV
                                              J. Gerard Stranch, IV