UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION ) ) ) ) THIS DOCUMENT RELATES TO: ) ) Suits Naming the Tennessee Clinic ) Defendants and the Saint Thomas Entities ) ) | MDL No. 2419 Dkt. No 1:13-md-2419 (RWZ) |

**SAINT THOMAS ENTITIES' RESPONSE IN OPPOSITION TO PSC'S MOTION TO COMPEL PRODUCTION OF SELF-INSURANCE TRUST DOCUMENTS**

The Saint Thomas Entities[1] ask the Court to deny the PSC's motion to compel production of their self-insurance trust agreement.[2] The Ascension Health Alliance Professional and General Liability Self-Insurance Trust ("Trust") is a pooled self-insurance reserve comprised of a network of health care organization participants. The Trust agreement is not a discoverable "insurance agreement" under Federal Rule of Civil Procedure 26(a)(1)(A)(iv) or this Court's Subpoena Order. Nor are the parties to the Trust or the Trust's administrator "insurance business[es]" that may be liable in this litigation. Further, Saint Thomas Outpatient Neurosurgical Clinic ("STOPNC") is not a party to the Trust and thus the Trust documents are not relevant to the alleged agency relationship between STOPNC and the Saint Thomas Entities and not discoverable under Rule 34. The Saint Thomas Entities urge the Court to follow the reasoning of other cases addressing the issue and deny the PCS's motion to compel.

---

[1] Saint Thomas West Hospital f/k/a St. Thomas Hospital; Saint Thomas Health; and Saint Thomas Network.

[2] The PSC's motion to compel states it seeks an order compelling the Saint Thomas Entities to produce "all insurance agreements." *See* PSC's Motion to Compel Production of Insurance Agreements, p.1 (ECF No. 1468). Such an order would of course not resolve the dispute between the parties because there is no disagreement that insurance agreements are required to be disclosed, and the Saint Thomas Entities have made such disclosure. The issue the PSC attempts to raise, albeit indirectly, is whether the self-insurance trust program discussed herein is an insurance agreement and thus subject to Rule 26.

## I.  BACKGROUND

1. Plaintiffs allege injuries and death based on contaminated epidural injections manufactured and sold by the New England Compounding Center ("NECC").[3] Plaintiffs have made claims against numerous non-NECC parties, including the Saint Thomas Entities and STOPNC.[4] STOPNC allegedly purchased contaminated injections from NECC and administered them to patients.[5] The Saint Thomas Entities include Saint Thomas Health, which is a co-owner of STOPNC.[6] Plaintiffs assert that STOPNC is the agent of one or more of the Saint Thomas Entities and should be held vicariously liable for its actions.[7]

2. Ascension Health Alliance and Ascension Health, which is the sole corporate member of Saint Thomas Health, also had vicarious liability claims asserted against them.[8] But this Court held that Plaintiffs failed to state claims against Ascension Health Alliance and Ascension Health and dismissed those vicarious liability claims.[9] Thus Plaintiffs' remaining vicarious liability claims only involve the Saint Thomas Entities and STOPNC.[10]

3. The Saint Thomas Entities are self-insured through their participation in a Trust with other hospitals and health care organizations.[11] The Trust is a program whereby members participate by funding the Trust and paying its expenses.[12] Each participant—including the Saint Thomas Entities—is a beneficiary of the Trust, which is administered by Ascension Risk

---

[3] Mem. of Decision [re: motions to dismiss] (August 29, 2014), ECF No. 1360.

[4] *Id.* at 2.

[5] *Id.* at 3.

[6] *Id.* at 4.

[7] *Id.*

[8] *Id.*

[9] *Id.* at 51-52.

[10] *Id.*

[11] *See* Decl. of Janet Roth ¶¶ 3-6, attached as Exhibit A.

[12] *Id.* ¶ 4.

Services, LLC.[13] Unlike a situation where an insurance business accepts the risk of coverage in exchange for a premium, Ascension Risk Services charges no premium, accepts no risk, provides no coverage, and thus has no potential liability for a judgment in this lawsuit.[14] It should also be noted that STOPNC is not a member of the Ascension Health Alliance or a participant in the Trust.[15]

4. During the summer of 2013, the PSC issued subpoenas to pain clinics it believed had purchased and received contaminated product from NECC, regardless of whether the clinics were parties to the MDL proceeding or not. Most of the clinics responded by filing objections or motions for protection.[16] In response, Judge Boal issued a Subpoena Order on November 13, 2013.[17] The Order concluded that the PSC had inappropriately attempted to subpoena insurance agreements from clinics that were already parties to the MDL since parties were already required "to produce 'any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment' as part of their automatic disclosure obligations. *See* Fed. R. Civ. P. 26(a)(1)(A)(iv)."[18] None of the subpoenas at issue involved the Saint Thomas Entities, and there was nothing presented to Judge Boal, or decided by her, regarding the Trust dispute currently before the Court.

---

[13] *Id.* ¶¶ 5-6.

[14] *Id.*

[15] *Id.* ¶ 5.

[16] *See* clinic filings at ECF Nos. 218, 219, 220, 221, 222, 236, 241, 244, 254, 259, 261, 269, 275, 279, 288, 298, 303, 304, 305, 306, 307, 308, 311, 314, 317, 334, 338, 342, 345, 347, 348, 353, 354, 355, 356, 358, 360, 361, 368, 372, 383, 400, 405, 451, 508, 524, 527, 528, 530, 532, 533, and 548.

[17] Order on Motions to Quash and Objections to Subpoenas' ("Subpoena Order"), p. 21, ECF No. 572.

[18] *Id.* at 21

5. The Saint Thomas Entities produced insurance agreements for applicable insurance policies on September 5, 2014. It also disclosed the existence of the Trust by providing certificates of insurance reflecting that the Saint Thomas Entities were self-insured through a trust arrangement. Counsel for Saint Thomas Entities not only explained to the PSC that the Trust was not an insurance agreement under which an insurance business may be liable (and thus not discoverable under Rule 26 or Judge Boal's Subpoena Order), it provided the PSC with an appellate decision confirming this fact, issued to another hospital participating in the very same Trust.[19]

6. The PSC notes that an entity named Ascension Health Risk Purchasing Group, Inc. ("Purchasing Group") has the same address as the Trust administrator, Ascension Risk Services, LLC.[20] Ascension Risk Services, LLC, the administrator of the Trust, is not the same entity as the Purchasing Group.[21] Ascension Risk Services, LLC is a Missouri limited liability corporation.[22] The Purchasing Group is a Missouri non-profit corporation.[23] The Purchasing Group has no connection to the Trust or this litigation.[24] There are no insurance agreements between the Saint Thomas Entities and the Purchasing Group.[25] Moreover, contrary to the PSC's allegations, the Purchasing Group is not a licensed insurance company in Missouri.[26]

---

[19] PSC Motion to Compel at Ex. 5, ECF No. 1469.

[20] *Id.* at ¶ 11.

[21] Ex. A ¶ 7.

[22] *Id.*; *see also* Missouri Secretary of State, Missouri Online UCC Filing, https://bsd.sos.mo.gov/BusinessEntity/BusinessEntityDetail.aspx?page=beSearch&ID=3552258.

[23] Ex. A ¶ 7; *see also* Missouri Secretary of State, Missouri Online UCC Filing, https://bsd.sos.mo.gov/BusinessEntity/BusinessEntityDetail.aspx?page=beSearch&ID=3118017.

[24] Ex. A ¶ 7.

[25] *Id*.

[26] *Id*.

## II.     ARGUMENT

### A. The Trust documents are not discoverable "Insurance Agreements" under the Federal Rules or this Court's order

7.      The Trust documents are not discoverable under Federal Rule of Civil Procedure 26 because the Trust is a self-insurance reserve fund rather than insurance as contemplated by the Rule. Neither the Trust participants nor its administrator are an insurance business. And the Rule's advisory committee notes specifically exclude self-insurance from disclosure. Further, the policy reasons supporting the limited disclosure of insurance agreements do not extend to self-insurance arrangements. Rather, federal courts prohibit discovery of a defendant's financial state before a judgment is rendered. Requiring disclosure of self-insurance information would violate this prohibition and go beyond Rule 26's limited disclosure obligations.

*The Trust program is not insurance and the Trust documents are not insurance agreements*

8.      Insurance is defined by the International Risk Management Institute as "[a] contractual relationship that exists when one party (the insurer) for a consideration (the premium) agrees to reimburse another party (the insured) for" a specified loss.[27] An insurer is defined as an "insurance company that undertakes to indemnify for losses and perform other insurance-related operations."[28] The premium is "[t]he amount of money an insurer charges to provide coverage described in the policy."[29] Appleman's treatise on insurance law plainly states that "the primary purpose of [an insurance contract] is *to transfer risk*."[30] And Judge Robert

---

[27] *See* Ex. A ¶ 8 (the IRMI's *Glossary of Insurance and Risk Management Terms* is considered a reliable source of information and definitions in the insurance industry); International Risk Management Institute, Inc., *Glossary of Insurance and Risk Management Terms*, http://www.irmi.com/online/insurance-glossary/terms/i/insurance.aspx.

[28] *Id.* at http://www.irmi.com/online/insurance-glossary/terms/i/insurer.aspx.

[29] *Id.* at http://www.irmi.com/online/insurance-glossary/terms/p/premium.aspx.

[30] *New Appleman on Insurance Law, Library Edition*, vol. 1, ch. 1, § 1.03[2] (emphasis in original).

Keeton wrote in his seminal treatise on the law of insurance that "insurance is an arrangement for the *transfer* and distribution of risk."[31]

9. Clearly, the key component of an insurance agreement is the *transfer of risk* to an insurance business in exchange for a premium. The Trust arrangement does not satisfy this key requirement. The Trust participants have not transferred risk to Ascension Risk Services, LLC or any other third party.[32] The Trust participants have not been charged a premium in exchange for the transfer of risk.[33] Instead, they jointly fund the trust, pay its expenses, and manage their own claims.[34] The Trust participants are responsible for any shortfall in funds and there is no third party with potential liability for claims payments made by the Trust.[35] Risk has not been transferred but rather is retained by Trust participants.

10. The Trust does, however, fit squarely within the definition of self-insurance. Self-insurance is defined as "[a] system whereby a firm sets aside an amount of its monies to provide for any losses that occur—losses that could ordinarily be covered under an insurance program."[36] And this is precisely how the Trust operates. It is a system where the participants set aside funds to provide for any losses that occur—losses that normally could be covered by the purchase of commercial insurance.

*Rule 26 and the policy behind disclosure of insurance agreements does not allow discovery of self-insurance*

11. As Federal Rule of Civil Procedure 26 (along with its advisory committee notes) make clear, a self-insurance reserve program like the Trust is not discoverable. Rule

---

[31] Robert E. Keeton, Insurance Law 2 (1971) (emphasis added).

[32] *See* Ex. A ¶ 8

[33] *Id.*

[34] *Id.* ¶ 4.

[35] *Id.* ¶ 6.

[36] *Id.* at http://www.irmi.com/online/insurance-glossary/terms/s/self-insurance.aspx.

26(a)(1)(A)(iv) specifically provides for disclosure only of "any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment."

12. None of the Trust members, including the Saint Thomas Entities, are insurance businesses. Ascension Risk Services is the Trust administrator and is not potentially "liable to satisfy all or part of a possible judgment" in this action. Further, several courts have concluded that self-insured pools like the Trust are not insurance companies and are not engaged in the business of insurance.[37] As one court explained, there is no "contract to indemnify another," and "the [pool] does not indemnify its member agencies in the traditional sense."[38] Since all of the participants are health care organizations rather than insurance businesses, and the participants have not agreed to indemnify each other like a traditional insurance arrangement, any documents related to the Trust are not discoverable.[39]

13. Additionally, the 1970 Advisory Committee provided further clarity regarding Rule 26 and the policy behind the disclosure of insurance agreements. The advisory committee noted that the reason for requiring the disclosure of insurance agreements was to permit counsel for all parties to make a realistic evaluation of the case and determine settlement and litigation strategy based on that knowledge.[40] But the committee notes make it clear that the rule is "limited to insurance coverage, which should be distinguished from any other facts concerning

---

[37] *See, e.g., Esposito v. Simkins Indus.*, 943 A.2d 456, 468 (Conn. 2008) (self insurer is not an "insurer" excluded from coverage under the Connecticut Insurance Guaranty Association Act); *California Pacific Homes, Inc. v. Scottsdale Ins. Co.* (1999) 70 Cal.App.4th 1187, 1193-1195 (Cal.App. 1 Dist. 1999) (held that self-insured retentions during the period of a continuous loss were not primary insurance that must be exhausted before the insurers could have a duty to indemnify).

[38] *Orange Co. Water Dist. v. Ass'n of Cal. Water etc. Authority*, Cal. Rptr. 2d 182, 185 (Cal. Cat. App. 1997).

[39] *See* Fed. R. Civ. P. 26(a)(1)(A)(iv).

[40] Fed. R. Civ. P. 26(b)(2)- 1970 Notes of Advisory Committee Subdivision (b)(2)—Insurance Policies

defendant's financial status . . . ."[41] And this distinction lines up well with federal case law. It is well-established that the federal discovery rules prohibit a litigant from discovering an opponent's financial status "until after a judgment against the opponent has been rendered."[42] The reasoning is that the defendant's financial status is not relevant to the merits of the lawsuit and therefore not discoverable pre-judgment.[43] The Rules specifically allow for discovery of a judgment debtor's assets after judgment, which stands in stark contrast to the absence of such a provision pre-judgment.[44]

14.     Though the language of the Rule does not address self-insurance, the advisory committee notes go a step further to make it clear that self-insurance reserve funds like the Trust are not discoverable.[45] The advisory committee notes state that, under no uncertain terms, "the provision does not cover the business concern that creates a reserve fund for purposes of self-insurance."[46]

15.     Courts addressing the issue have held that self-insurance agreements are not discoverable.[47] In *Resolution Trust Corp. v. Thornton*, the D.C. Court of Appeals analyzed whether an administrative agency's subpoena for financial documents to ascertain the cost-effectiveness of litigation survives filing suit against the subpoena recipient.[48] In this analysis,

---

[41] *Id*.

[42] *Resolution Trust Corp. v. Thornton*, 41 F.3d 1539, 1547 (D.D.C. 1994); *cf.* Fed. R. Civ. P. 69(a) (allowing discovery in aid of judgment).

[43] *Id*.

[44] *Id*.

[45] Fed. R. Civ. P. 26(b)(2)- 1970 Notes of Advisory Committee Subdivision (b)(2)—Insurance Policies

[46] *Id*.

[47] *See, e.g.,*

[48] *Resolution Trust Corp.*, 41 F.3d at 1541

the court noted that allowing the subpoena to survive filing suit would conflict with the disclosure requirements under the Federal Rules.[49] Specifically, the court stated:

> ". . . the agency still seeks a broad variety of information from Grant Thornton to which it would have no right under the discovery rules. For example, the RTC continues to seek . . . *all* of Grant Thornton's agreements of self-insurance, co-insurance, or re-insurance . . . . Such information is well outside of the bounds of the disclosure required by Rule 26(a)(1)(D) [amended to 26(a)(1)(A)(iv)]."[50]

16. Additionally, the Michigan Court of Appeals recently examined this same issue regarding another participant of the Trust, and came to the same conclusion.[51] Michigan Court Rule 2.302(b)(2) is nearly identical to Federal Rule 26(a)(1)(A)(iv) regarding discovery of insurance agreements. In *Gillette*, the trial court initially granted Plaintiff's motion to compel copies of the same Trust documents at issue here.[52] But the Court of Appeals vacated the trial court's decision and held that "the self-insured trust is not an 'insurance agreement,' nor is defendant hospital a 'person carrying on an insurance business," thus the Trust documents were not discoverable.[53] Here, we have the same question before the Court and the language of the Rule should lead to the same conclusion. The Trust is not an "insurance agreement" and the Trust participants are not insurance businesses. Thus the Saint Thomas Entities should not be required to disclose any Trust documents.

17. It should also be noted that the PSC's mention of the Purchasing Group is a red herring. First, the Purchasing Group is not the same entity as Ascension Risk Services, LLC the Trust administrator. Ascension Risk Services, LLC is a Missouri limited liability corporation.

---

[49] *Id.* at 1547.

[50] *Id*. (emphasis in original)

[51] *Gillette v. Providence Hospital and Medical Centers, Inc.*, 2010-109382-NH (Mich. Ct. App. May 23, 2011), attached as Ex. B.

[52] *Id*.

[53] *Id*.

The Purchasing Group is a Missouri non-profit corporation. The Purchasing Group has no connection to the Trust or this litigation. And while irrelevant, the PSC's allegation that the Purchasing Group is "a licensed insurance company in the state of Missouri" is unsupported by its brief or exhibits. In support, the PSC cites the declaration of one its attorneys that Exhibit 4 was "located on the Missouri Department of Insurance's website." Exhibit 4 is nothing more than a document reflecting that Purchasing Group is an active, domestic corporation organized to purchase group insurance coverage from third-party insurers for physicians.[54] It provides no support for the PSC's groundless allegation that Purchasing Group is a "licensed insurance company." Indeed, when you run a search for a licensed insurance company on the "insurance company" tab of the Missouri Department of Insurance's website, the Purchasing Group does not appear.[55] Notably, the PSC did not disclose the details of the search it ran to find Purchasing Group's company profile sheet.

### B. The Trust is not relevant to Plaintiffs' claims of an agency relationship with STOPNC because STOPNC is not a party to the Trust

18. Plaintiffs also claim that the Trust documents are discoverable because they are related to their vicarious liability claims.[56] More specifically, they allege that the Saint Thomas Entities are liable for the actions of their purported agent, STOPNC.[57] The problem with Plaintiffs' argument is that these agency claims center on the relationship between the Saint Thomas Entities and STOPNC, not the Saint Thomas Entities and Ascension. Ascension—and any vicarious liability claims against it—have been dismissed from the case. The PSC fails to

---

[54] Purchasing groups—companies that purchase insurance on a group basis—register with the department of insurance pursuant to Missouri insurance statutes. *See* Mo. Rev. Stat. § 375.1080(10). Purchasing groups are not licensed insurance companies. Rather they purchase insurance from insurance companies.

[55] *See* Ex. A ¶ 7

[56] PSC Motion to Compel at ¶ 20, ECF No. 1469.

[57] *Id.*

explain how the Trust documents could be evidence of agency between the Saint Thomas Entities and STOPNC when STOPNC is not a party to the Trust. It's clear that these documents are completely unrelated to these agency claims. Moreover, merely acquiring insurance policies for subsidiaries is not evidence supporting vicarious liability.[58]

### III. CONCLUSION

WHEREFORE, the Saint Thomas Entities respectfully request that the Court deny the PSC's motion to compel.

---

[58] *See In re Acushnet River & New Bedford Harbour Proceedings*, 675 F.Supp. 22, 34 (D. Mass. 1987) (holding parent company's purchase of insurance for subsidiaries does not justify piercing the corporate veil); *see also Trinity Industries v. Greenlease Holding Co.*, Civil Action No. 08-1498 (W.D. Pa. May 2, 2014) (holding no reasonable jury could find parent providing insurance policies to subsidiaries warrants piercing the corporate veil).

Respectfully submitted,

/s/ Sarah P. Kelly
Sarah P. Kelly (BBO #664267)
skelly@nutter.com
NUTTER McCLENNEN & FISH LLP
Seaport West
155 Seaport Boulevard
Boston, Massachusetts  02210
(617) 439-2000
(617) 310-9000 (FAX)

**AND**

Yvonne K. Puig*
Texas State Bar No. 16385400
yvonne.puig@nortonrosefulbright.com
Adam T. Schramek*
Texas State Bar No. 24033045
adam.schramek@nortonrosefulbright.com
Eric J. Hoffman*
Texas State Bar No. 24074427
eric.hoffman@nortonrosefulbright.com

FULBRIGHT & JAWORSKI LLP
98 San Jacinto Blvd., Suite 1100
Austin, Texas 78701
(512) 536-2450
(512) 536-4598 (FAX)

Marcy Hogan Greer*
Texas State Bar No. 08417650
mgreer@adjtlaw.com

ALEXANDER DUBOSE JEFFERSON & TOWNSEND LLP
515 Congress, Suite 2350
Austin, Texas  78701
(512) 482-9300
(512) 428-9303 (FAX)

***Attorneys for Saint Thomas West Hospital f/k/a St. Thomas Hospital; Saint Thomas Health; and Saint Thomas Network***

\*Admitted *pro hac vice*

## CERTIFICATE OF SERVICE

I certify that this document filed through the CM/ECF system will be served electronically to the registered participants identified on the Notice of Electronic Filing on October 17, 2014.

                                          /s/ Sarah P. Kelly
                                          Sarah P. Kelly

2663365.1