# EXHIBIT C

# Tucker Ellis LLP

950 Main Avenue, Suite 1100 | Cleveland, OH 44113-7213 | TEL 216.592.5000 | FAX 216.592.5009

October 8, 2014

DIRECT DIAL 216.696.2276 | MMoriarty@tuckerellis.com

Chris J. Tardio, Esq.
Gideon, Cooper & Essary
315 Deaderick Street
Suite 1100
Nashville, TN 37238

Matt Cline
Gideon, Cooper & Essary
315 Deaderick Street
Suite 1100
Nashville, TN 37328

Re: *Ameridose LLC*

Dear Counsel:

    The pending motion of Ameridose LLC ("Ameridose") to permit destruction of its recalled product inventory is now moving forward in the New England Compounding Center ("NECC") multi-district litigation. Ameridose has recently sought leave of the MDL Court to file a reply to the Tennessee Clinic Defendants' Opposition to the Motion. As will be disclosed in that reply, and for your advance information, Ameridose is in the process of conducting a sale of its assets. This sale process is as contemplated by the Plan Support and Funding Agreement that has been approved by U.S. Bankruptcy Court in connection with the NECC bankruptcy ("Bankruptcy") with the support of both the Creditor's Committee in the Bankruptcy and the Plaintiff's Steering Committee in the MDL. As this process progresses, Ameridose must dispose of the recalled product inventory that has been stored at is premises ("Recalled Drugs").

    As part of this process, Leon Barson at Blank & Rome, counsel to Ameridose, has recently issued letters to potentially interested parties soliciting final bids for the purchase of three discreet categories of Ameridose's assets. This final solicitation follows an over year-long marketing effort spearheaded by a nationally known investment banking firm that included extensive diligence and negotiation with two financial buyers as well as the submission of offers from three equipment purchasers. The first category of assets for which final bids are being solicited consists of physical equipment at Ameridose, which ranges from manufacturing equipment to cardboard boxes. The second category consists of certain Ameridose intellectual property. The third category consists of a perpetual, exclusive, royalty-free license to the software that Medical Sales Management ("MSM") developed for Ameridose's business operations. The NECC Trustee has approved the solicitation process. While the sale of Ameridose's assets may not result in the receipt of substantial consideration compared to its contingent liabilities, the management of Ameridose, with the agreement of the NECC Trustee, has concluded that a sale is necessary as Ameridose does not have sufficient cash to continue to operate even in a limited capacity or to pay anticipated expenses associated with recalled drug handling and disposal. Bids are due back to Attorney Barson and the NECC Trustee from potential buyers on October 10, 2014.

    Given this, the need to dispose of the Recalled Drugs is more urgent than ever. The cost of employing a pharmacist in charge, as required by Massachusetts regulation, no longer makes sense. In addition, to fully monetize the company's assets, the space in the building must be cleared of the



drug inventory. In light of the impending sales we intend to take action on this promptly, and thus it is even more urgent that Ameridose and the Tennessee Clinic Defendants determine whether the remaining issues can be resolved.

To that end Ameridose intends to transfer the recalled product inventory to Stericycle, an FDA approved vendor which specializes in the storage and "reverse distribution" of pharmaceutical products. Stericycle will store the Recalled Drugs until such time as the dispute can be resolved or determined by the Court. It will then dispose of the product (assuming our motion is successful). To be clear- in our reply brief we will argue strongly that if the Court is inclined to order retention of the inventory, then it should order that your client pay for it, along with any other parties who want it kept. Thus, we have a proposal for resolving the dispute.

Stericycle's estimate for the storage of the Recalled Drugs is $2,800 per month. In an effort to resolve the on-going dispute with the Tennessee Clinic defendants, Ameridose is willing to pay the cost of storage at Stericycle for one month. During that time anyone who wishes to inspect or test those products may do so, of course with reasonable supervision and restrictions to be established by the parties. That will give the Tennessee Clinic defendants the opportunity to see for themselves the way the products are "organized" and what it will take to find the materials they wish to preserve and test (assuming those defendants continue to believe that such testing would be useful over a year and a half after the product expired). After that month, if the motion is not resolved the Tennessee Clinic defendants could assume the cost of the rental fees. Let us know if this is agreeable. Otherwise, we will ask the Court to order destruction pursuant to our original motion and inform the Court of these new facts.

We would like to hear from you promptly. Thank you for your time and consideration.

Sincerely yours,

Matthew P. Moriarty

MPM:nkg

cc:   Kristen A. Johnson
      Mark Zamora
      David J. Molton
      Peter G. Hermes
      Ingrid S. Martin
      Frederick Fern
      Dan Rabinovitz
      Roberto M. Braceras

013260.000001 2130079.1