

T 617.482.3700   F 617.482.3003

Kristen A. Johnson
HAGENS BERMAN SOBOL SHAPIRO LLP
55 CAMBRIDGE PARKWAY, SUITE 301
CAMBRIDGE, MA 02142
www.hbsslaw.com
Direct (617) 475-1961
kristenj@hbsslaw.com

October 23, 2014

The Honorable Jennifer C. Boal
United States Magistrate Judge
District of Massachusetts
John Joseph Moakley Federal Courthouse
1 Courthouse Way, 5th Floor
Boston, MA 02210

Re:  *In re New England Compounding Pharmacy, Inc. Products Liability Litigation*, Master Dkt.: 1:13-md-02419-FDS; MDL No. 2419

Dear Judge Boal:

I write on behalf of the Plaintiffs' Steering Committee to ask whether Your Honor would be willing to hear potential appeals from the Settlement Administrator's determinations on victims' claims made in the bankruptcy settlement.

The Chapter 11 Trustee for NECC will soon publicly propose a plan of reorganization ("the Plan"). The Plan includes an objective settlement matrix, created with input from physicians who have treated hundreds of victims, that controls the amounts each victim will receive according to specific criteria. Since the rules governing this process are clear, the PSC does not expect a large number of appeals from the Settlement Administrator's awards nor that resolving any appeal will be time consuming.

In our view, Your Honor is best-suited for this role. Your Honor's experience with the case, judicial experience, and temperament cannot be duplicated by a private mediator. The PSC is also concerned about the impact that retaining a private mediator will have on the victims' total recovery.

We recognize that Your Honor may wish to consider this request without a public inquiry. I therefore write privately to gauge Your Honor's interest, copying only Judge Zobel. As none of the settling defendants has an interest in the claim, I do not believe this communication need be docketed nor disclosed.

Let me stake out what our request may entail. As Your Honor is familiar with the litigation proceeding against NECC and other defendants in the MDL, and is aware that a settlement has been reached with NECC, its insiders, its insurers, and some related entities, I focus below on the procedural aspects of how the soon-to-be proposed bankruptcy plan accomplishes the task of getting money to victims. I also lay out the proposed roles of the Settlement Administrator and, if you agree to serve in this capacity, the Magistrate Judge. These

The Honorable Jennifer C. Boal
October 23, 2014
Page 2

descriptions are based on the current draft of the "Claims Resolution Procedures," which will be a publicly available attachment to the Plan.

**Overview of the Settlements.**

The settlements with NECC, its affiliates, owners, and some of their insurance companies provide for about $70M in cash and possibly an additional $30-38M in the future to the Bankruptcy Estate ("NECC Settlements"). The Bankruptcy Court has approved the NECC Settlements.[1]

We expect other multiple national defendants, defendants who are liable to all victims if they are liable to any victims, to contribute additional funds to the Bankruptcy Estate (collectively with the NECC Settlements, the "National Settlements"). We also expect a number of clinic, hospital and doctor defendants that purchased and/or injected the contaminated MPA to contribute additional funds to the Bankruptcy Estate (the "Clinic Settlements").

So how does the money get from Bankruptcy Estate to the victims?

**Plan of Reorganization and Funding the Tort Trust.**

The Chapter 11 Trustee, with the support of the Plaintiffs' Steering Committee and the Creditors' Committee, will file the Plan in the next few weeks. The Plan provides that the Chapter 11 Trustee will fund a Tort Trust that distributes compensation to victims of the outbreak. The sole purpose of the Tort Trust is to serve as a mechanism for liquidating, converting to cash, and distributing the Tort Trust assets for the benefit of the tort claimants.

A substantial portion of the funds from the National Settlements will be transferred from the Bankruptcy Estate to the Tort Trust for distribution to all victims. Funds contributed through Clinic Settlements will also be deposited in the Tort Trust, but those funds will be segregated and will be distributed, after expenses, only to patients who received contaminated MPA injections at each particular settling clinic.

**The Tort Trustee Establishes and Oversees the Tort Trust.**

The Tort Trustee will be responsible for establishing and overseeing the Tort Trust. The Tort Trustee will pay all expenses of the Trust, file tax returns, issue 1099s and make all payments to Claimants after Claims have been finally resolved.

**The Settlement Matrix Governs Claim Awards.**

As is common in mass tort-related bankruptcies, the Plan includes a proposed settlement matrix ("Matrix") for determining the value of tort victims' claims. The Matrix was designed to

---

[1] Orders approving 9019 settlement motions, Dkts. 970-974, *In re New England Compounding Pharmacy, Inc.*, 12-19882 (HJB) (Chapter 11).

The Honorable Jennifer C. Boal
October 23, 2014
Page 3

distinguish among the most serious cases and the less serious cases. The Matrix was created with help from doctors who treated hundreds of patients injured by NECC's contaminated MPA and after a careful review of the published medical literature concerning the outbreak.  Due to the limited funds that will be available to claimants from the National Settlements, a primary goal was balancing the need to compensate distinctly situated claimants differently, while also minimizing the administrative expenses of reviewing and approving claims.





**The Settlement Administrator(s) Allocates Points to Victims Based on the Matrix.**

The Honorable Jennifer C. Boal
October 23, 2014
Page 5



The Honorable Jennifer C. Boal
October 23, 2014
Page 6

**Appeals to the Magistrate.**

All victims receiving a final determination from the Settlement Administrator[13] may appeal the award to the Magistrate within 30 days.[14] The appeal must include a written statement setting forth the basis for the appeal.

In the event of an appeal, the Magistrate will:

(i)   perform a de novo evaluation of each appealed claim in accordance with the Matrix,

(ii)  make a final determination of the number of approved points allowed for each appealed claim,[15] and

(iii) inform both the victim and the Settlement Administrator, in writing, the amount of the final determination.

The Magistrate will *not* have discretion to award points or dollars in a manner that is inconsistent with the Matrix. The Matrix governs the appeal.

The Magistrate's determination will be final and binding. There will not be, for example, an ability to appeal the Magistrate's determination to the MDL Court or Bankruptcy Court.

**The Tort Trustee sends victims another check for the difference between the initial payment and the final compensation amount.**



The Honorable Jennifer C. Boal
October 23, 2014
Page 7



**Conclusion.**

      The PSC hopes Your Honor is willing to hear appeals from victims awarded funds through the bankruptcy settlement Based on the processes described above. We believe Your Honor's skill, experience, temperament, and understanding of the case will bring a unique sense of fairness and public confidence to the process. Thank you for your consideration.

      Sincerely,

      <u>/s/ **Kristen A. Johnson**</u>
      Kristen A. Johnson
      HAGENS BERMAN SOBOL SHAPIRO LLP
      55 Cambridge Parkway, Suite 301
      Cambridge, MA 02142
      (617) 482-3700
      kristenj@hbsslaw.com

      *Plaintiffs' Lead Counsel*

Cc:    The Honorable Rya W. Zobel