UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>All Tennessee Actions Against The St. Thomas Entities | MDL No. 2419<br>Master Docket No.: 1:13-md-2419-RWZ<br><br>Honorable Rya W. Zobel<br><br><u>DEMAND FOR JURY TRIAL</u> |

<u>MEMORANDUM IN SUPPORT OF PSC'S MOTION TO COMPEL THE ST. THOMAS ENTITIES TO RESPOND TO CERTAIN INTERROGATORIES</u>

The Plaintiffs' Steering Committee (the "PSC") moves this Honorable Court, pursuant to Fed. Rule Civ. Pro. 37 and Local Rule 37.1, for an order compelling the St. Thomas Entities[1] to respond to certain interrogatories.  After receiving responses to the PSC's initial common discovery requests from the St. Thomas Entities and conducting two separate conferences with the St. Thomas Entities to narrow any dispute over their responses, the PSC now seeks the Court's intervention concerning those issues still in dispute.  As grounds for this motion, the PSC respectfully states as follows:

I.      **Local Rule 37.1 Discovery Conference**

The PSC originally served its initial common discovery requests on the St. Thomas Entities on October 9, 2013.[2]  The St. Thomas Entities provided initial responses on December 11, 2013.[3]  The PSC sent an initial discovery deficiency letter on April 17, 2014 identifying certain deficiencies in the St. Thomas Entities' December 11, 2013 discovery

---

[1] The Defendants Saint Thomas West Hospital, formerly known as St. Thomas Hospital ("St. Thomas Hospital"), St. Thomas Health ("St. Thomas Health"), and St. Thomas Network ("St. Thomas Network") are collectively referred to as the "St. Thomas Entities".

[2] *See* Declaration of Benjamin A. Gastel filed contemporaneously herewith at ¶ 2 (hereinafter the "Gastel Decl.").

[3] *Id*. at ¶ 2 and Exs. 1-3

responses.[4]

The parties held a telephonic meet and confer on these issues on May 5 and 6, 2014 where Benjamin Gastel appeared on behalf of the PSC and Yvonne Puig and Marcy Greer appeared, amongst other counsel, on behalf of the St. Thomas Entities.  The parties held another telephonic meet and confer on August 4, 2014 attended by Benjamin A. Gastel on behalf of the PSC, and Yvonne Puig and Marcy Greer, amongst other counsel, attended for the St. Thomas Entities.

During these meet and confer sessions, the parties were able to reach agreement on certain items, and the St. Thomas Entities agreed to supplement their initial responses upon the Court entering a common discovery order, which the Court did on September 18, 2014.[5] Thereafter, the St. Thomas Entities supplemented their discovery responses on November 10, 2014.[6]

The PSC now seeks an order compelling the St. Thomas Entities to respond to certain interrogatories.  In their responses to the PSC's initial common discovery, the St. Thomas Entities have taken the position that a substantive response to certain interrogatories is not necessary due to relevancy or breadth.  They have reiterated this position during the two telephonic conferences concerning deficiencies in their discovery responses.  The PSC maintains that these objections are without merit and moves the Court to compel the St. Thomas Entities to provide substantive responses to the disputed interrogatories.

---

[4] *Id.* at ¶ 2 and Ex. 4.
[5] *See* Dkt. No. 1425.
[6] Gastel Decl. ¶ 3.

## II.        Factual and Procedural Background

As the Court knows, this litigation arises from a widespread outbreak of fungal meningitis affecting victims in at least 20 states caused by contaminated pharmaceuticals compounded by the New England Compounding Pharmacy, Inc., d/b/a New England Compounding Center ("NECC") located in Framingham, Massachusetts.

The defendant, St. Thomas Outpatient Neurosurgical Center ("St. Thomas Clinic"), is a pain clinic located on the St. Thomas Hospital campus in Nashville, Tennessee.  Plaintiffs allege that St. Thomas Clinic and its employees and agents knew or should have known of the dangers of using compounded drugs generally, and specifically products compounded by NECC.[7] Nevertheless, they decided to purchase injectable steroids from NECC after undertaking zero due diligence.[8]  They did nothing to ascertain the safety and quality of NECC's products.[9]  Instead, they decided to purchase the cheapest steroid available.[10]  Rather than purchasing purportedly sterile injectable steroids from an under-regulated, out-of-state compounding pharmacy, St. Thomas Clinic should have purchased medications made by an FDA approved drug manufacturer such as Pfizer.[11]

Plaintiffs allege that St. Thomas Clinic is the actual or apparent agent of St. Thomas Hospital, St. Thomas Health and St. Thomas Network.  Plaintiffs assert that all of the St. Thomas Entities use a common name, share common officers, share a common location, and are otherwise so inextricably intertwined as to create an agency relationship with St. Thomas Clinic.[12]

---

[7] *See* Master Complaint, Dkt. No. 545 ¶¶ 152-158, 180.
[8] *Id*. at ¶ 192.
[9] *Id*.
[10] *Id*.
[11] *Id*. at ¶ 180.
[12] The Saint Thomas Entities are not named in the Master Complaint.  For allegations related to the Saint Thomas Entities, the PSC will use the complaint filed in *Reed v. Ameridose*, Case No. 1:13-cv-12565-RWZ, Dkt. No. 1 as a

St. Thomas Clinic is co-owned by St. Thomas Network and defendant, Howell Allen Clinic.[13] St. Thomas Network has zero employees and appears to be an empty shell.  It, in turn, is owned by St. Thomas Health, the same entity that owns St. Thomas Hospital.[14]  St. Thomas Clinic operates on the 9th floor of the Medical Plaza East on the St. Thomas Hospital campus.[15] In other words, patients who visit St. Thomas Clinic must go to St. Thomas Hospital in order to do so.

When patients entered the St. Thomas Clinic, they were greeted by a receptionist wearing a nametag bearing the name:  "Saint Thomas Hospital".  Specifically, below is a copy of the nametag worn by Sherri Dezwaan, the clinic's receptionist[16]:



Ms. Dezwaan was a Howell Allen employee who worked at the St. Thomas Clinic while wearing a Saint Thomas Hospital nametag.[17]  The employees and leadership of the St. Thomas Entities, Howell Allen, and St. Thomas Clinic are likewise intertwined.[18]

---

representative complaint containing allegations against the St. Thomas Entities.  This complaint will hereinafter be referred to as the *Reed* Complaint.  The St. Thomas Entities filed an answer to this complaint on October 1, 2014 (*Reed*, Case No. Dkt. 1:13-cv-12565-RWZ No. 42).
[13] Saint Thomas Clinic Answer to Short Form Complaint, Dkt. No 1459-1 at ¶ 261.
[14] Gastel Decl. ¶ 4 and Ex. 5.
[15] Saint Thomas Clinic Answer to Short Form Complaint, Dkt. No 1459-1 at ¶ 275.
[16] Gastel Decl. at Ex. 6..
[17] *Id*..
[18] *See Reed* Complaint ¶¶ 275-277.

Moreover, the St. Thomas Entities and St. Thomas Clinic hold themselves out to the public as one singular entity, further blurring any distinctions between or among them. The St. Thomas Entities and St. Thomas Clinic share the St. Thomas name and the same location on the St. Hospital Thomas campus. They intentionally foster the public perception that they are one united entity through a large scale marketing campaign highlighting the tag line: "*St. Thomas Health: One Name, One Healing Community.*" An example of that marketing campaign is as follows:



Presenting a united face to the public, the St. Thomas Entities – as one, or at least as an indistinguishable tangle – Plaintiffs allege creates an actual or apparent agency relationship with St. Thomas Clinic.[19]  In so doing, the Plaintiffs allege that the St. Thomas Entities permitted their agent to procure injectable steroids from NECC without conducting basic due diligence and without using patient-specific prescriptions and injected those steroids into patients.[20]

---

[19] *Reed* Complaint ¶¶ 274-286.
[20] *Id.* ¶281.

Based upon the above allegations, and pertinent to the pending motion, Plaintiffs assert, amongst others, claims for agency, apparent agency, and *respondeat superior*.[21]  Additionally, Plaintiffs' substantive claims against the St. Thomas Clinic allege that the St. Thomas Clinic failed to follow the American Society of Health-System Pharmacists' guidelines, which establish due diligence standards healthcare providers should follow when purchasing compounded pharmaceuticals.[22] The Saint Thomas Clinic appears to defend these allegations, in part, on the claim that they satisfied the standard of care in the procurement of compounded pharmaceuticals and well-known industry regulations do not create a duty upon the Saint Thomas Clinic to satisfy those regulations (principally because Saint Thomas Clinic admits that it did not follow ASHP guidelines).[23] Each of the contested interrogatories (as explained in greater detail below) relate to these vicarious liability claims against the St. Thomas Entities and/or the St. Thomas Clinic's decision to purchase from NECC.

## III.   LEGAL STANDARD

"Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party's claim or defense."[24] Relevance is broadly construed to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."[25]  This very court has previously noted that "[t]he scope of discovery is very broad, and information is discoverable if there is

---

[21] *Id.* at ¶¶ 274-286.
[22] *Reed* Complaint ¶ 120; *see also* Master Complaint, Dkt. No. 545 ¶¶ 152-158, 180, 192.
[23] Saint Thomas Clinic Answer to Master Complaint, Dkt. No. 1455, ¶¶ 46, 54, 152-158; Saint Thomas Clinic Answer to Short Form Complaint, Dkt. No. 1459-1 at ¶ 120.  *see also* Tenn. Code Ann. § § 29-26-115*; Mabon v. Jackson-Madison County Gen. Hosp.,* 968 S.W.2d 826 (Tenn. Ct. App. 1997) (holding that Plaintiff's tendered expert must be familiar with the standard of care in the community in which the defendant practices or a similar community, and without such threshold evidence of the locality's standard of practice, plaintiff cannot demonstrate a breach of duty.).
[24] Fed. R. Civ. P 26(b)(1).
[25] *Oppenheimer Fund v. Sanders* 437 U.S. 340, 351 (1978); *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 192 (1st Cir. 2001) ("The Supreme Court has long recognized that the Federal Rules of Civil Procedure are to be construed liberally in favor of discovery.")

any possibility it might be relevant to the subject matter of the action."[26]   "Relevant information includes any matter that is or may become an issue in the litigation."[27]  Because Rule 26(b) sets a "very low threshold for relevancy," courts should "err in favor of discovery rather than against it."[28]

## IV.     The Contested Interrogatories and PSC's Position as to Each Contested Interrogatory

The PSC seeks an order compelling the St. Thomas Entities to substantively respond to the following contested interrogatories.    The number of the interrogatory below corresponds to the numbers in the interrogatories posed to St. Thomas Health, unless otherwise indicated.[29]  For the Court's convenience, the interrogatories have been grouped into seven broad categories.

### 1.    Interrogatories Regarding Saint Thomas Hospital's Use of Compounding Pharmacies.

**SAINT THOMAS HOSPITAL INTERROGATORY NO. 2:**  Has St. Thomas Hospital ever purchased medication from a compounding pharmacy? If so, identify the name of the compounding pharmacy, the name of the medication(s) purchased, the reason for procuring the medication(s) from the compounding pharmacy, and the manner in which St. Thomas Hospital evaluated the compounding pharmacy.

**OBJECTION:** [Saint Thomas Hospital] objects to this interrogatory as it seeks information that is irrelevant, beyond the scope of permissible discovery under

---

[26] *Gulbankian v. MW Mfrs., Inc.*, Case No. 10-10392-RWZ, 2013 U.S. Dist. LEXIS 69773 (D. Mass. 2013, Judge Zobel) (internal quotations omitted); *see also In re Heparin Prods. Liab. Litig.* 273 F.R.D. 399, 406 (N.D. Ohio 2011) ("If there is any possibility that the information may be relevant to the general subject matter of the action.") citing *Oppenheimer*, 437 U.S. at 351.

[27] *Multi-Core, Inc. v. Southern Water Treatment Co.*, 139 F.R.D. 262, 264 n.2 (D. Mass. 1991); s*ee also Chubb Integrated Systems Limited v. National Bank of Washington*, 103 F.R.D. 52, 59 (D.D.C. 1984)("The concept of relevancy is broadly construed at the discovery stage of an action, and discovery rules are to be accorded liberal treatment.").

[28] *Kipperman v. Onex Corp.* (N.D. Ga. Apr. 25, 2008) 2008 U.S. Dist. LEXIS 34519, *28.

[29] In some instances related to the disputed interrogatories, the PSC propounded identical interrogatories to each of the St. Thomas Entities, and the St. Thomas Entities propounded the same responses to the overlapping interrogatories.  For example, Interrogatory No. 12 to St. Thomas Health is the identical interrogatory as Interrogatory No. 17 propounded to Saint Thomas Hospital and those entities had identical objections to that interrogatory.  For the Court's convenience, this memo will simply cite one of the disputed interrogatories and identify in a footnote the identical interrogatory number propounded to the other St. Thomas Entities.

FED. R. CIV. P. 26 and 33, and unlikely to lead to the discovery of relevant or admissible information regarding any allegation in the Complaints. Plaintiffs do not allege, and no facts exist to support an allegation, that [Saint Thomas Hospital] purchased the methylprednisolone acetate ("MPA") injected into any Plaintiff. Specifically, it is undisputed that the MPA injected into some or all of the Plaintiffs was purchased from NECC by STOPNC. [Saint Thomas Hospital] also objects to this interrogatory as overly broad and unduly burdensome because it is not limited in time and [Saint Thomas Hospital] has been in existence since 1905.

**SAINT THOMAS HOSPITAL INTERROGATORY NO. 4**: Has St. Thomas Hospital ever decided not to purchase or continue purchasing medications from NECC or any entity affiliated with NECC?  If so, please state the date of that decision, identify the name of each individual involved with that decision, and please explain all reasons for and circumstances surrounding the decision.

**OBJECTION**: [Saint Thomas Hospital] objects to this interrogatory as it seeks information that is irrelevant, beyond the scope of permissible discovery under FED. R. CIV. P. 26 and 33, and unlikely to lead to the discovery of relevant or admissible information regarding any allegation in the Complaints. Plaintiffs do not allege, and no facts exist to support an allegation, that [Saint Thomas Hospital] purchased the MPA injected into any Plaintiff. Specifically, it is undisputed that the MPA injected into some or all of the Plaintiffs was purchased from NECC by STOPNC. [Saint Thomas Hospital] also objects to this interrogatory as overly broad and unduly burdensome because it is not limited in time and [Saint Thomas Hospital] has been in existence since 1905. [Saint Thomas Hospital] objects to this interrogatory to the extent it seeks information about "any entity affiliated with NECC," as the affiliated entities are not defined.

**SAINT THOMAS HOSPITAL INTERROGATORY NO. 14**: Please describe in detail all systems, policies and procedures used at St. Thomas Hospital in order to evaluate compounding pharmacies from which it purchases medications.

**OBJECTION**: [Saint Thomas Hospital] objects to this interrogatory as its systems, policies, and procedures regarding the evaluation of compounding pharmacies are irrelevant, beyond the scope of permissible discovery under FED. R. CIV. P. 26 and 33, and unlikely to lead to the discovery of relevant or admissible information regarding any allegation in the Complaints. [Saint Thomas Hospital] also objects to this interrogatory as overly broad and unduly burdensome because it is not limited in time and [Saint Thomas Hospital] has been in existence since 1905.

As alleged in the Master Complaint, compounded medications are generally more

dangerous than medications manufactured by FDA regulated pharmaceutical companies.[30] Plaintiffs' negligence claims are premised upon the assertion that St. Thomas Clinic was negligent and reckless in its decision to switch from steroids made by FDA regulated pharmaceutical companies to steroids made by NECC.[31] Accordingly, the PSC propounded the above interrogatories to St. Thomas Hospital requesting information about whether the hospital buys medicines from compounding pharmacies and if so, how it evaluates compounding pharmacies before doing so and whether it has ever chosen to not purchase compounded pharmaceuticals from a compounding pharmacy. The discoverability of such information does not depend on whether the subject steroid was actually purchased by St. Thomas Hospital or by St. Thomas Clinic (as the St. Thomas Entities allege in their objection). Saint Thomas Clinic takes the position that it satisfied the standard of care in its procurement of compounding pharmaceuticals from NECC.[32] The PSC maintains that the Saint Thomas Entities exercised actual and apparent control over this decision, and therefore the policies and procedures used by the Saint Thomas Entities in their own procurement of pharmaceuticals (whether compounded or otherwise) is clearly relevant to the claims at issue in this litigation.[33] For example, if it is shown that the Saint Thomas Entities follow the ASHP guidelines in its procurement of compounding pharmaceuticals but allowed its agent, the Saint Thomas Clinic, to disregard those guidelines, such information is highly probative not only to the Saint Thomas Clinic's liability in this action but also the Saint Thomas Entities' vicarious liability for those actions of its purported

---

[30] Master Complaint Dkt. No. 545, ¶¶ 48-55.
[31] *Id*. at ¶ 234.
[32] Saint Thomas Clinic Answer to Master Complaint, Dkt. No. 1455, ¶ 157 ("The Defendants deny any wrongdoing and affirmatively state that they complied with the recognized standard of acceptable professional practice when choosing to purchase MPA from NECC.")
[33] *Reed* Complaint ¶ 281.

agent.  Accordingly, the information is clearly relevant and should be compelled.[34]

## 2.  Interrogatories Regarding Communications with NECC.

**INTERROGATORY NO. 3**[35]:      Identify each communication (including face-to-face, telephone, email, or other communications) between NECC (including its agents, employees or representatives) and St. Thomas Health (including its agents, employees or representatives).   For each communication identified, please provide the following information:

> a)      the names, job titles, and contact information for each person involved in the communication;
> b)      the date, time, length, mode and location of each communication or discussion;
> c)      whether any notes, memoranda, recordings, writings or other records were kept of any of those conversations or communications; and
> d)      state as specifically as possible what each party to the communication or conversation said and state what actions St. Thomas Health took, if any, as a result of each communication or conversation.

**INTERROGATORY NO. 5**[36]: Please list the date, location, and attendees present at each and every meeting (business or social) between or among NECC (including its agents, employees or representatives) and St. Thomas Health (including its agents, employees or representatives).

**OBJECTION**[37]: [St. Thomas Health] objects to this interrogatory as it seeks information that is irrelevant, beyond the scope of permissible discovery under FED. R. CIV. P. 26 and 33, and unlikely to lead to the discovery of relevant or admissible information regarding any allegation in the Complaints. Plaintiffs do not allege, and no facts exist to support an allegation, that [St. Thomas Health] purchased the methylprednisolone acetate ("MPA") injected into any Plaintiff. Specifically, it is undisputed that the MPA injected into some or all of the Plaintiffs was purchased from NECC by STOPNC. [St. Thomas Health] also objects to this interrogatory as overly broad and unduly burdensome because it is not limited in time.

**INTERROGATORY NO. 10**[38]: Describe in detail every gift, sample, incentive, promotion, thank you gift, and/or discount that St. Thomas Health (or anyone

---

[34] *Gulbankian*, Case No. 10-10392-RWZ, 2013 U.S. Dist. LEXIS 69773 (D. Mass. 2013, Judge Zobel) ("The scope of discovery is very broad, and information is discoverable if there is any possibility it might be relevant to the subject matter of the action, even if it is not directly related to the subject of the underlying litigation.") (internal citations and quotations omitted).
[35] Saint Thomas Hospital Interrogatory No. 3 and St. Thomas Network Interrogatory No. 3.
[36] *See also* Saint Thomas Hospital Int. No. 6; and St. Thomas Network Int. No 5.
[37] St. Thomas Health provided the same response to these two interrogatories, No. 3 and No. 5 (shown above).
[38] Saint Thomas Hospital Int. No. 8 and St. Thomas Network Int. No. 7.

associated with it) ever received from NECC (including its agents, employees or representatives) or any wholesaler or distributor of any injectable steroid.

**OBJECTION**: [Saint Thomas Hospital] objects to this interrogatory as it seeks information that is irrelevant, beyond the scope of permissible discovery under FED. R. CIV. P. 26 and 33, and unlikely to lead to the discovery of relevant or admissible information regarding any allegation in the Complaints. Plaintiffs do not allege, and no facts exist to support an allegation, that [Saint Thomas Hospital] purchased the MPA injected into any Plaintiff. Specifically, it is undisputed that the MPA injected into some or all of the Plaintiffs was purchased from NECC by STOPNC. [Saint Thomas Hospital] also objects to this interrogatory as overly broad and unduly burdensome because it is not limited in time and [Saint Thomas Hospital] has been in existence since 1905. In addition, [Saint Thomas Hospital] objects to this interrogatory to the extent it seeks information regarding "any wholesaler or distributor of any injectable steroid." [Saint Thomas Hospital]'s relationship with wholesalers or distributors of injectable steroids is irrelevant, beyond the scope of permissible discovery under FED. R. CIV. P. 26 and 33, and unlikely to lead to the discovery of relevant or admissible information regarding any allegation in the Complaints. The burden and expense associated with researching, reviewing, and producing information regarding unspecified wholesalers and distributors outweighs any likely benefit to the Plaintiffs. [Saint Thomas Hospital] further objects to this interrogatory as seeking electronically stored information that is not reasonably accessible due to undue burden or cost, and this burden and expense outweighs any likely benefit of the requested information.

As discussed above, the PSC alleges that the St. Thomas Entities improperly supervised the St. Thomas Clinic in its procurement of MPA from NECC. Therefore, the St. Thomas Entities' knowledge about NECC and their communications with that entity easily pass the broad relevancy standard applicable to discovery, and the St. Thomas Entities should be ordered to respond to those questions.[39]

Moreover, and as explained above, the PSC maintains that the Saint Thomas Entities exercised control over St. Thomas Clinic's decision to purchase from NECC, and therefore the Saint Thomas Entities' knowledge concerning NECC and its relationship with NECC

---

[39] *Gulbankian*, Case No. 10-10392-RWZ, 2013 U.S. Dist. LEXIS 69773 (D. Mass. 2013, Judge Zobel) ("The scope of discovery is very broad, and information is discoverable if there is any possibility it might be relevant to the subject matter of the action, even if it is not directly related to the subject of the underlying litigation.") (internal citations and quotations omitted).

are clearly relevant to claims in this litigation.    Accordingly, the information requested by this interrogatory clearly satisfies Rule 26's broad relevancy standard for discoverable information.[40]

The St. Thomas Entities' burden argument seems largely mooted as the parties have agreed to relevant search terms for reviewing and searching under the Court's ESI Protocol.[41]

### 3. St. Thomas Entities' Policies and Procedures Regarding the Purchase of Medications.

**INTERROGATORY NO. 7**[42]: Explain in detail St. Thomas Health's policies and procedures regarding the purchase of medications.

**OBJECTION:** [St. Thomas Health] objects to this interrogatory as it seeks information that is irrelevant, beyond the scope of permissible discovery under FED. R. CIV. P. 26 and 33, and unlikely to lead to the discovery of relevant or admissible information regarding any allegation in the Complaints. Plaintiffs do not allege, and no facts exist to support an allegation, that [St. Thomas Health] purchased the MPA injected into any Plaintiff. Specifically, it is undisputed that the MPA injected into some or all of the Plaintiffs was purchased from NECC by STOPNC.

**INTERROGATORY NO. 8**[43]: Describe in detail the process by which St. Thomas Health procured medications in 2012, including the names and contact information of all buying agents, suppliers, distributors, wholesalers, and sales representatives involved.

**OBJECTION**: [St. Thomas Health] objects to this interrogatory as it seeks information that is irrelevant, beyond the scope of permissible discovery under FED. R. CIV. P. 26 and 33, and unlikely to lead to the discovery of relevant or admissible information regarding any allegation in the Complaints. Plaintiffs do not allege, and no facts exist to support an allegation, that [St. Thomas Health] purchased the MPA injected into any Plaintiff. Specifically, it is undisputed that the MPA injected into some or all of the Plaintiffs was purchased from NECC by STOPNC.

The PSC requests information regarding the St. Thomas Entities' policies and

---

[40] *Gulbankian*, Case No. 10-10392-RWZ, 2013 U.S. Dist. LEXIS 69773 (D. Mass. 2013, Judge Zobel).
[41] *See* Gastel Decl. ¶ 6 and Dkt. No. 1087.
[42] Saint Thomas Hospital Int. No. 11 and St. Thomas Network Int. No. 14.
[43] Saint Thomas Hospital Int. No. 12.

procedures regarding the purchase of medications.   Those policies and procedures are relevant to the claims in this litigation because the PSC alleges that the Saint Thomas Entities exercised control over Saint Thomas Clinic's purchase of compounding pharmaceuticals from NECC.   Further, and as explained above, the policies and procedures of the St. Thomas Entities, particularly their policies regarding buying medicine from compounding pharmacies, will likely illuminate questions surrounding the degree of due diligence which the St. Thomas Clinic should have undertaken before it purchased injectable and purportedly sterile medicines from NECC. Accordingly, the information is relevant and should be compelled.[44]

### 4.  Information Related To Martin Kelvas' Separation Of Employment From Saint Thomas Hospital

**INTERROGATORY NO. 12**[45]**:** Please explain, in detail, all reasons for the termination of Martin Kelvas, and describe each and every fact and/or consideration that lead [sic] to that termination. Please include the identities of each person involved in the termination decision, and describe all conversations leading to the termination decision.

**OBJECTION:** [St. Thomas Health] objects to this interrogatory as it seeks information that is irrelevant, beyond the scope of permissible discovery under FED. R. CIV. P. 26 and 33, and unlikely to lead to the discovery of relevant or admissible information regarding any allegation in the Complaints. [St. Thomas Health] also objects to this interrogatory as it is overly broad, seeks confidential information, and improperly invades the privacy rights of former or current [St. Thomas Health] and/or Saint Thomas West Hospital, formerly known as St. Thomas Hospital ("[Saint Thomas Hospital]"), employees.

At the time that St. Thomas Clinic purchased MPA from NECC, Martin Kelvas was

the Director of Pharmacy for St. Thomas Hospital.[46]   Mr. Kelvas served as the Director of

---

[44] *Gulbankian*, Case No. 10-10392-RWZ, 2013 U.S. Dist. LEXIS 69773 (D. Mass. 2013, Judge Zobel) ("The scope of discovery is very broad, and information is discoverable if there is any possibility it might be relevant to the subject matter of the action, even if it is not directly related to the subject of the underlying litigation.") (internal citations and quotations omitted).
[45] Saint Thomas Hospital Interrogatory No. 17
[46] Gastel Decl. at Ex. 5.

Pharmacy for a period of approximately twelve (12) years.[47]  In October of 2012, almost immediately after news of the fungal meningitis outbreak became public, St. Thomas Hospital ended Mr. Kelvas' employment as Director of Pharmacy.[48]  The timing of Mr. Kelvas' abrupt release by St. Thomas Hospital is, to say the least, suspicious.

During the meet and confer process, the St. Thomas Entities took issue with the interrogatory's characterization of Mr. Kelvas' separation from St. Thomas Hospital as a "termination" but the parties eventually agreed that St. Thomas Hospital could answer the interrogatory by rephrasing their answer to correspond to the St. Thomas Hospital's understanding of this separation, which they characterized as a "reduction in force."[49]

Regardless of how Mr. Kelvas' separation is characterized, either as a "reduction in force" or a "termination," the PSC propounded this interrogatory because Mr. Kelvas has information critical to this litigation.  As Director of Pharmacy for St. Thomas Hospital, Mr. Kelvas surely had contact with representatives from NECC.  Mr. Kelvas was likely involved in decisions about whether St. Thomas Hospital would or would not purchase medicines from NECC.  As the Director of Pharmacy, Mr. Kelvas likely participated in evaluating compounding pharmacies, including NECC, as possible medication suppliers.  In addition, to the extent that Mr. Kelvas approved or rejected NECC as a St. Thomas vendor, such information would be highly probative of numerous contested issues, including negligence and standard of care.

Further, Mr. Kelvas is likely to have intimate knowledge of the medication purchasing procedures within the St. Thomas Health system.  Accordingly, Plaintiffs are

---

[47] Gastel Decl. at Ex. 5.
[48] Gastel Decl. at Ex. 5.
[49] Gastel Decl. ¶ 7.

entitled to information about his separation from St. Thomas Hospital.[50]

### 5. Services, Supplies and Personnel Provided by the St. Thomas Entities to the St. Thomas Clinic.

**INTERROGATORY NO. 15:** Has St. Thomas Health ever paid for or provided any personnel, medications, equipment, medical supplies, medical forms, billing services, telephone services, procurement services, contracting services, websites or other materials/serviced used by Saint Thomas Neurosurgical [Clinic]?  If so, please explain in detail each item provided.

**OBJECTION:**  [St. Thomas Health] objects to this interrogatory as overly broad and unduly burdensome as it is not limited in time.

**ANSWER:**  Subject to and without waiving the foregoing objection, see response to Interrogatory No. 13.

For the Court's reference, St. Thomas Health's Objection and Response to Interrogatory No. 13,

is as follows:

**OBJECTION:** [St. Thomas Health] objects to this interrogatory as overly broad and unduly burdensome because it is not limited in time. STHe also objects to this interrogatory as otherwise overly broad and unduly burdensome. STHe has numerous departmental managers and their identity is irrelevant, beyond the scope of permissible discovery under FED. R. CIV. P. 26 and 33, and unlikely to lead to the discovery of relevant or admissible information. STHe objects to this interrogatory as the contracts or agreements between STHe and STN, STH and Howell Allen Clinic are irrelevant, beyond the scope of permissible discovery under FED. R. CIV. P. 26 and 33, and unlikely to lead to the discovery of relevant or admissible information regarding any allegation in the Complaints. STHe also objects to this interrogatory as overly broad and unduly burdensome because it is not limited to types of contracts, agreements, cost-sharing arrangements or profit-sharing arrangements.

**ANSWER:** Subject to and without waiving the foregoing objection, STHe provides the following current information:

(a) James Bearden, Chairman; Clark Baker, vice-chairman; Michael Schatzlein, M.D., President and CEO; Mary Falls, Secretary; Anthony Heard, Treasurer.

---

[50] *Gulbankian*, Case No. 10-10392-RWZ, 2013 U.S. Dist. LEXIS 69773 (D. Mass. 2013, Judge Zobel) ("The scope of discovery is very broad, and information is discoverable if there is any possibility it might be relevant to the subject matter of the action, even if it is not directly related to the subject of the underlying litigation.") (internal citations and quotations omitted).

(b) See applicable foregoing objections.

(c) Ascension Health is the sole member of STHe.

(d) St. Thomas Health Services was the name of two different entities. Those two entities are now known as St. Thomas Network or St. Thomas Health. STHe has a Services Agreement with STOPNC.

(e) See response to (d) above. The financial arrangements are set forth in this agreement, which has been produced previously in related Tennessee state court litigation, and will also be produced in this litigation.

Because Plaintiffs allege that St. Thomas Clinic was the actual or apparent agent of the St. Thomas Entities, the PSC propounded discovery requesting information about personnel, supplies and services provided by the St. Thomas Entities to St. Thomas Clinic.[51] Specifically, the PSC propounded the above interrogatory.  As the Court can see, this response refers to their response to Interrogatory No. 13.  That response does not answer the question.  The St. Thomas Entities should be compelled to answer the question.

### 6.  Relationship Among the St. Thomas Entities.

**SAINT THOMAS HOSPITAL INTERROGATORY NO. 23:** Explain in detail St. Thomas Hospital's relationship with St. Thomas Network and St. Thomas Health. Please include a complete description of the role played by each of those entities in healthcare and business operations at the Saint Thomas hospital campus on Harding Road in Nashville, Tennessee.

**OBJECTION:**  [Saint Thomas Hospital] objects to this request as vague and ambiguous, as the word "relationship" is undefined. [Saint Thomas Hospital] objects to this interrogatory as it seeks information that is irrelevant, beyond the scope of permissible discovery under FED. R. CIV. P. 26 and 33, and unlikely to ead to the discovery of relevant or admissible information regarding any allegation in the Complaints. The relationship among and between [Saint Thomas Hospital], St. Thomas Health, and St. Thomas Network is not relevant to, and is not likely to lead to any relevant or admissible information, regarding any allegation in the Complaints.

Because Plaintiffs allege that St. Thomas Clinic was the actual or apparent agent of each of the St. Thomas Entities, i.e. St. Thomas Hospital, St. Thomas Health and St.

---

[51] *See* Reed Complaint ¶¶ 282-86.

Thomas Network, Plaintiffs are entitled to discover the relationship among those three St. Thomas Entities.  The relevancy of this information to Plaintiffs' agency claims is readily apparent and the St. Thomas Entities should be compelled to provide a substantive response to this interrogatory.

### 7.   The St. Thomas Entities' Business Relationship with Howell Allen.

**INTERROGATORY NO. 2:**  Please describe in detail St. Thomas Health's relationship to and/or business arrangement with Howell Allen Clinic.

**OBJECTION:** [St. Thomas Health] objects to this request as vague and ambiguous, as the words "relationship" and "business arrangement" are undefined. [St. Thomas Health] objects to this interrogatory as it seeks information that is irrelevant, beyond the scope of permissible discovery under FED. R. CIV. P. 26 and 33, and unlikely to lead to the discovery of relevant or admissible information regarding any allegation in the Complaints.

**INTERROGATORY NO. 17**: Explain in detail all financial transactions that occurred between St. Thomas Health and Howell Allen Clinic in 2012, including dates, amounts and reasons.

**OBJECTION**: [St. Thomas Health] objects to this interrogatory as it seeks information that is irrelevant, beyond the scope of permissible discovery under FED. R. CIV. P. 26 and 33, and unlikely to lead to the discovery of relevant or admissible information regarding any allegation in the Complaints.

Plaintiffs allege that the Defendant Howell Allen is a neurosurgery group that refers patients to the Defendant St. Thomas Clinic for epidural steroid injections.[52]  In addition to referring patients to St. Thomas Clinic, Howell Allen owns 50% of that clinic.[53]  The Defendant St. Thomas Network owns the other 50% interest.[54]

As mentioned above, the St. Thomas Clinic is located on the St. Thomas Hospital campus.  Howell Allen employed all of the people working at the St. Thomas Clinic, and

---

[52] *Reed* Complaint ¶¶ 268-73
[53] Gastel Decl. at Ex. 5.
[54] *Id.*

that clinic is the place where patients received contaminated epidural steroid injections.[55]

Plaintiffs assert claims for direct negligence against Howell Allen.[56]  Those claims include claims premised upon Howell Allen's negligence in operating the St. Thomas Clinic, its negligence in failing to keep abreast of the dangers associated with compounded drugs, and its negligence in selecting NECC as St. Thomas Clinic's supplier of choice for injectable steroids.[57]

Given those claims, Plaintiffs are entitled to discover information about the business relationship between Howell Allen and the St. Thomas Entities.  For example, to the extent that Howell Allen's business relationships create perverse economic incentives to refer its own patients to St. Thomas Clinic while simultaneously encouraging that clinic (of which Howell Allen owns half) to cut costs by purchasing the cheapest steroids available, Plaintiffs are entitled to discover such information.  In addition, the PSC propounded interrogatories requesting details of financial transactions between Howell Allen and the St. Thomas Entities in 2012, the year of the outbreak.  Because Howell Allen's relationship with the St. Thomas Entities may involve information critical to Plaintiffs' direct negligence and vicarious liability claims against Howell Allen, the St. Thomas Entities should be compelled to disclose the information.

## V.    Conclusion

For the foregoing reasons, the PSC respectfully requests that the Court compel the Saint Thomas Entities to provide substantive responses to the following interrogatories:

- St. Thomas Health Interrogatories 2, 3, 5, 7, 8, 10, 12, 15, and 17;

- Saint Thomas Hospital Interrogatories: 2, 4, 6, 8, 11, 12, 14, 17, and 23; and

---

[55] *Reed* Complaint ¶ 273.
[56] *Id*. at ¶ 265.
[57] *Id*.

- St. Thomas Network Interrogatories: 5, 7, and 14.

November 19, 2014                              Respectfully submitted,

                                               s/ J. Gerard Stranch IV

                                               J. Gerard Stranch, IV
                                               Benjamin A. Gastel
                                               BRANSTETTER, STRANCH & JENNINGS
                                               PLLC
                                               227 Second Avenue North
                                               Nashville, TN  37201
                                               Telephone:  (615) 254-8801
                                               Facsimile:  (615) 255-5419
                                               gerards@branstetterlaw.com
                                               beng@branstetterlaw.com

                                               *Plaintiffs' Steering Committee and Tennessee
                                               State Chair*

                                               Thomas M. Sobol
                                               Kristen Johnson Parker
                                               HAGENS BERMAN SOBOL SHAPIRO LLP
                                               55 Cambridge Parkway, Suite 301
                                               Cambridge, MA  02142
                                               Telephone:  (617) 482-3700
                                               Facsimile:  (617) 482-3003
                                               tom@hbsslaw.com
                                               kristenjp@hbsslaw.com

                                               *Plaintiffs' Lead Counsel*

Elizabeth J. Cabraser
Mark P. Chalos
Annika K. Martin
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
150 Fourth Avenue North, Suite 1650
Nashville, TN 37219-2417
Telephone:  615.313.9000
Facsimile:  615.313.9965
ecabraser@lchb.com
mchalos@lchb.com
akmartin@lchb.com

*Federal/State Liaison*

Marc E. Lipton
LIPTON LAW
18930 W. 10 Mile Road
Southfield, MI  48075
Telephone:  (248) 557-1688
Facsimile:  (248) 557-6344
marc@liptonlawcenter.com

Kim Dougherty
JANET, JENNER & SUGGS, LLC
31 St. James Avenue, Suite 365
Boston, MA  02116
Telephone:  (617) 933-1265
kdougherty@myadvocates.com

Patrick T. Fennell
CRANDALL & KATT
366 Elm Avenue, S.W.
Roanoke, VA  24016
Telephone:  (540) 342-2000
pfennel@crandalllaw.com

Mark Zamora
ZAMORA FIRM
6 Concourse Way, 22nd Floor
Atlanta, GA  30328
Telephone:  (404) 451-7781
Facsimile:  (404) 506-9223
marc@markzamora.com

*Plaintiffs' Steering Committee*

### **CERTIFICATE OF SERVICE**

      I, J. Gerard Stranch, IV, hereby certify that I caused a copy of the foregoing to be filed electronically via the Court's electronic filing system.  Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system, and notice of these filings will be sent to these parties by operation of the Court's electronic filing system.

Date:  November 19, 2014                  /s/ J. Gerard Stranch, IV
                                         J. Gerard Stranch, IV