UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE:  NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>1:13-cv-12234-FDS May et al v. Ameridose, LLC et al<br>1:13-cv-12238-FDS Carman et al v. Ameridose, LLC et al<br>1:13-cv-12305-FDS Wiley et al v. Ameridose, LLC et al<br>1:13-cv-12311-FDS Schulz et al v. Ameridose, LLC et al<br>1:13-cv-12315-FDS Hester et al v. Ameridose, LLC et al<br>1:13-cv-12426-FDS Davis et al v. Ameridose, LLC et al<br>1:13-cv-12429-FDS Bequette et al v. Ameridose, LLC et al<br>1:13-cv-12430-FDS Norwood et al v. Ameridose, LLC et al<br>3:13-cv-00918 Ziegler et al v. Ameridose, LLC et al<br>3:13-cv-00919 Martin v. Ameridose, LLC et al<br>3:13-cv-00923 Reed v. Ameridose, LLC et al<br>3:13-cv-00929 Brinton  v. Ameridose, LLC et al<br>3:13-cv-00930 Lovelace v. Ameridose, LLC et al<br>3:13-cv-00931 Ragland  v. Ameridose, LLC et al<br>3:13-cv-00932 Slatton et al v. Ameridose, LLC et al<br>3:13-cv-00933 Rybinski v. Ameridose, LLC et al<br>3:13-cv-00934 Lemberg  et al v. Ameridose, LLC et al<br>3:13-cv-00935 Ruhl et al v. Ameridose, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     MDL No. 1:13-md-2419-FDS |

53075886.3

| | |
|---|---|
| LLC et al | ) |
| 3:13-cv-00938 McElwee v. Ameridose, LLC et al | ) ) |
| 3:13-cv-00940 Robnett et al v. Ameridose, LLC et al | ) ) |
| 3:13-cv-00941 Sharer et al v. Ameridose, LLC et al | ) ) |
| 3:13-cv-00942 Johnson et al v. Ameridose, LLC et al | ) ) |
| 3:13-cv-00943 Knight v. Ameridose, LLC et al | ) ) |
| 3:13-cv-00951 Knihtila v. Ameridose, LLC et al | ) ) |
| 3:13-cv-00952 Sellers et al v. Ameridose, LLC et al | ) ) |
| 3:13-cv-00953 Barger et al v. Ameridose, LLC et al | ) ) |
| 3:13-cv-00954 Lodowski et al v. Ameridose, LLC et al | ) ) |
| 3:13-cv-00961 Skelton et al v. Ameridose, LLC et al | ) ) |
| 3:13-cv-00962 Chambers et al v. Ameridose, LLC et al | ) ) |
| 3:13-cv-00963 Hill et al v. Ameridose, LLC et al | ) ) |
| 3:13-cv-00964 Mathias v. Ameridose, LLC et al | ) ) |
| 3:13-cv-00965 Settle et al v. Ameridose, LLC et al | ) ) |
| 3:13-cv-00966 Miller v. Ameridose, LLC et al | ) ) |
| 3:13-cv-00967 Noble et al v. Ameridose, LLC et al | ) ) |
| 3:13-cv-00968 Eggleston et al v. Ameridose, LLC et al | ) ) |
| 3:13-cv-00969 Meeker et al v. Ameridose, LLC et al | ) ) |
| 3:13-cv-00970 Scott et al v. Ameridose, LLC et al | ) ) |
| 3:13-cv-00971 McCullouch et al v. Ameridose, LLC et al | ) ) |
| 3:13-cv-00972 McKee et al v. Ameridose, LLC et al | ) ) |
| 3:13-cv-00973 Kirby v. Ameridose, LLC et al | ) ) |
| 3:13-cv-00975 Richards v. Ameridose, | ) |

| | |
|---|---|
| LLC et al | ) |
| 3:13-cv-00977 Youree et al v. Ameridose, LLC et al | ) ) |
| 3:13-cv-00978 Koonce et al v. Ameridose, LLC et al | ) ) |
| 3:13-cv-00979 Pelters et al v. Ameridose, LLC et al | ) ) |
| 3:13-cv-00984 Besaw et al v. Ameridose, LLC et al | ) ) |
| 3:13-cv-00985 Ferguson  et al v. Ameridose, LLC et al | ) ) |
| 3:13-cv-00986 Hurt  et al v. Ameridose, LLC et al | ) ) |
| 3:13-cv-00987 Wanta  et al v. Ameridose, LLC et al | ) ) |
| 3:13-cv-00988 Russell et al v. Ameridose, LLC et al | ) ) |
| 3:13-cv-00989 Pruitt et al v. Ameridose, LLC et al | ) ) |
| 3:13-cv-00992 Young v. Ameridose, LLC et al | ) ) |
| 3:13-cv-00993 Sullivan et al v. Ameridose, LLC et al | ) ) |
| 3:13-cv-01033 Barnard v. Ameridose, LLC et al | ) ) |
| 3:13-cv-01032 Berry v. Ameridose, LLC et al | ) ) |

**SAINT THOMAS WEST HOSPITAL'S OBJECTIONS AND ANSWERS TO PLAINTIFFS' STEERING COMMITTEE'S FIRST SET OF INTERROGATORIES**

Pursuant to Federal Rules of Civil Procedure 26 and 33, Defendant Saint Thomas West Hospital, formerly known as St. Thomas Hospital ("STH"), submits its Objections and Answers to Plaintiffs' Steering Committee's First Set of Interrogatories as follows:

53075886.3                                            - 3 -

## **GLOBAL OBJECTIONS**

1. STH generally objects to Plaintiffs Steering Committee's First Set of Interrogatories because STH's Motion to Stay Objections and Responses to Discovery Pending Submission of a Discovery Plan and Amended Protective Order, and Motion for Second Amended Protective Order, is currently pending before the Court. As a result, these Interrogatories are premature.

2. STH objects to the following phrase contained in the caption of the discovery requests propounded to it, which states:

    "This Document Relates to:

    All actions pending against Saint Thomas Outpatient Neurosurgical Center, LLC, and its affiliates . . ."

    STH is not an "affiliate" of Saint Thomas Outpatient Neurosurgical Center, LLC ("STOPNC"); Saint Thomas Network is a 50% owner of STOPNC.

**OBJECTIONS AND ANSWERS TO INTERROGATORIES**

**INTERROGATORY NO. 1:** Was St. Thomas Hospital (including its agents, employees or representatives) involved in any way in the decision to purchase medications from New England Compounding Pharmacy, Inc. d/b/a New England Compounding Center ("NECC") for use at Saint Thomas Outpatient Neurosurgical Center, LLC ("Saint Thomas Neurosurgical)? If so, identify each and every individual involved in the decision, and describe each and every aspect of the involvement.

**ANSWER:** No.

**INTERROGATORY NO. 2:** Has St. Thomas Hospital ever purchased medication from a compounding pharmacy? If so, identify the name of the compounding pharmacy, the name of the medication(s) purchased, the reason for procuring the medication(s) from the compounding pharmacy, and the manner in which St. Thomas Hospital evaluated the compounding pharmacy.

**OBJECTION:** STH objects to this interrogatory as it seeks information that is irrelevant, beyond the scope of permissible discovery under FED. R. CIV. P. 26 and 33, and unlikely to lead to the discovery of relevant or admissible information regarding any allegation in the Complaints. Plaintiffs do not allege, and no facts exist to support an allegation, that STH purchased the methylprednisolone acetate ("MPA") injected into any Plaintiff. Specifically, it is undisputed that the MPA injected into some or all of the Plaintiffs was purchased from NECC by STOPNC. STH also objects to this interrogatory as overly broad and unduly burdensome because it is not limited in time and STH has been in existence since 1905.

**INTERROGATORY NO. 3:** Identify each communication (including face-to-face, telephone, email, or other communications) between NECC (including its agents, employees or representatives) and St. Thomas Hospital (including its agents, employees or representatives). For each communication identified, please provide the following information:

(a) the names, job titles, and contact information for each person involved in the communication;

(b) the date, time, length, mode and location of each communication or discussion;

(c) whether any notes, memoranda, recordings, writings or other records were kept of any of those conversations or communications; and

(d) state as specifically as possible what each party to the communication or conversation said and state what actions St. Thomas Hospital took, if any, as a result of each communication or conversation.

53075886.3 - 5 -

> **OBJECTION**: STH objects to this interrogatory as it seeks information that is irrelevant, beyond the scope of permissible discovery under FED. R. CIV. P. 26 and 33, and unlikely to lead to the discovery of relevant or admissible information regarding any allegation in the Complaints. Plaintiffs do not allege, and no facts exist to support an allegation, that STH purchased the MPA injected into any Plaintiff. Specifically, it is undisputed that the MPA injected into some or all of the Plaintiffs was purchased from NECC by STOPNC. STH also objects to this interrogatory as overly broad and unduly burdensome because it is not limited in time and STH has been in existence since 1905. STH further objects to this interrogatory as seeking electronically stored information that is not reasonably accessible due to undue burden or cost, and this burden and expense outweighs any likely benefit of the requested information.

**INTERROGATORY NO. 4:** Has St. Thomas Hospital ever decided not to purchase or continue purchasing medications from NECC or any entity affiliated with NECC? If so, please state the date of that decision, identify the name of each individual involved with that decision, and please explain all reasons for and circumstances surrounding the decision.

> **OBJECTION**: STH objects to this interrogatory as it seeks information that is irrelevant, beyond the scope of permissible discovery under FED. R. CIV. P. 26 and 33, and unlikely to lead to the discovery of relevant or admissible information regarding any allegation in the Complaints. Plaintiffs do not allege, and no facts exist to support an allegation, that STH purchased the MPA injected into any Plaintiff. Specifically, it is undisputed that the MPA injected into some or all of the Plaintiffs was purchased from NECC by STOPNC. STH also objects to this interrogatory as overly broad and unduly burdensome because it is not limited in time and STH has been in existence since 1905. STH objects to this interrogatory to the extent it seeks information about "any entity affiliated with NECC," as the affiliated entities are not defined.

**INTERROGATORY NO. 5:** Has St. Thomas Hospital ever decided not to purchase or continue purchasing medications from a compounding pharmacy? If so, state the date of that decision, identify the name of each individual involved with that decision, and please explain all reasons for and circumstances surrounding the decision.

> **OBJECTION**: STH objects to this interrogatory as it seeks information that is irrelevant, beyond the scope of permissible discovery under FED. R. CIV. P. 26 and 33, and unlikely to lead to the discovery of relevant or admissible information regarding any allegation in the Complaints. Plaintiffs do not allege, and no facts exist to support an allegation, that STH purchased the MPA injected into any Plaintiff. Specifically, it is undisputed that the MPA injected into some or all of the Plaintiffs was purchased from NECC by STOPNC. STH also objects to this interrogatory as overly broad and unduly burdensome because it is not limited in time and STH has been in existence since 1905.

**INTERROGATORY NO. 6:**  Please list the date, location, and attendees present at each and every meeting (business or social) between or among NECC (including its agents, employees or representatives) and St. Thomas Hospital (including its agents, employees or representatives).

> **OBJECTION:**  STH objects to this interrogatory as it seeks information that is irrelevant, beyond the scope of permissible discovery under FED. R. CIV. P. 26 and 33, and unlikely to lead to the discovery of relevant or admissible information regarding any allegation in the Complaints.  Plaintiffs do not allege, and no facts exist to support an allegation, that STH purchased the MPA injected into any Plaintiff.  Specifically, it is undisputed that the MPA injected into some or all of the Plaintiffs was purchased from NECC by STOPNC.  STH also objects to this interrogatory as overly broad and unduly burdensome because it is not limited in time and STH has been in existence since 1905.

**INTERROGATORY NO. 7:**  Please list every company, manufacturer, compounder or distributor from whom St. Thomas Hospital has ever purchased any steroid used in epidural steroid injections since January 1, 2008, the date of each purchase, the quantity ordered, and how much St. Thomas Hospital paid for each vial of injectable steroid.

> **OBJECTION:**  STH objects to this interrogatory as purchases of steroids used in epidural injections at STH are irrelevant, beyond the scope of permissible discovery under FED. R. CIV. P. 26 and 33, and unlikely to lead to the discovery of relevant or admissible information regarding any allegation in the Complaints.  Plaintiffs do not allege, and no facts exist to support an allegation, that STH purchased the MPA injected into any Plaintiff.  In addition, STH objects to this interrogatory as overly broad and unduly burdensome because it seeks information beyond the relevant time period and is not limited to type of steroid or medical diagnosis.  STH further objects to this interrogatory as seeking electronically stored information that is not reasonably accessible due to undue burden or cost, and this burden and expense outweighs any likely benefit of the requested information.

**INTERROGATORY NO. 8:**  Describe in detail every gift, sample, incentive, promotion, thank you gift, and/or discount that St. Thomas Hospital (or anyone associated with it) ever received from NECC (including its agents, employees or representatives) or any wholesaler or distributor of any injectable steroid.

> **OBJECTION:**  STH objects to this interrogatory as it seeks information that is irrelevant, beyond the scope of permissible discovery under FED. R. CIV. P. 26 and 33, and unlikely to lead to the discovery of relevant or admissible information regarding any allegation in the Complaints.  Plaintiffs do not allege, and no facts exist to support an allegation, that STH purchased the MPA injected into any Plaintiff.  Specifically, it is undisputed that the MPA injected into some or all of the Plaintiffs was purchased from NECC by STOPNC.  STH also objects to this interrogatory as overly broad and unduly burdensome because it is not limited in time and STH has been in existence since 1905.  In addition, STH objects to this interrogatory to the extent it seeks information regarding "any wholesaler or distributor of any injectable steroid."  STH's relationship with wholesalers or distributors of injectable steroids is irrelevant, beyond the scope of

permissible discovery under FED. R. CIV. P. 26 and 33, and unlikely to lead to the discovery of relevant or admissible information regarding any allegation in the Complaints. The burden and expense associated with researching, reviewing, and producing information regarding unspecified wholesalers and distributors outweighs any likely benefit to the Plaintiffs. STH further objects to this interrogatory as seeking electronically stored information that is not reasonably accessible due to undue burden or cost, and this burden and expense outweighs any likely benefit of the requested information.

**INTERROGATORY NO. 9:** Before September 18, 2012, did anyone associated with St. Thomas Hospital ever communicate with anyone associated with Saint Thomas Neurosurgical regarding injectable steroids or NECC? If so, please identify each person involved in those communications, and please explain the date and substance of the communications in detail.

**OBJECTION:** STH objects to this interrogatory as overly broad and unduly burdensome. "Associated with" is overly broad and undefined. STH further objects to this interrogatory as seeking electronically stored information that is not reasonably accessible due to undue burden or cost, and this burden and expense outweighs any likely benefit of the requested information.

**ANSWER:** Subject to and without waiving the foregoing objections, STH is unaware of any such communications.

**INTERROGATORY NO. 10:** Has the hospital pharmacy at St. Thomas Hospital ever supplied medications to Saint Thomas Neurosurgical, and/or has it ever assisted, or declined to assist, Saint Thomas Neurosurgical with acquiring or evaluating medications? In your answer, please explain in detail the hospital pharmacy department's interactions with Saint Thomas Neurosurgical, including the identities of all persons involved and the substance of any communications.

**ANSWER:** Not to STH's knowledge.

**INTERROGATORY NO. 11:** Explain in detail St. Thomas Hospital's policies and procedures regarding the purchase of medications, including but not limited to a description of any applicable policies and procedures from Ascension.

**OBJECTION:** STH objects to this interrogatory as it seeks information that is irrelevant, beyond the scope of permissible discovery under FED. R. CIV. P. 26 and 33, and unlikely to lead to the discovery of relevant or admissible information regarding any allegation in the Complaints. Plaintiffs do not allege, and no facts exist to support an allegation, that STH purchased the MPA injected into any Plaintiff. Specifically it is undisputed that the MPA injected into some or all of the Plaintiffs was purchased from NECC by STOPNC. STH also objects to this interrogatory as overly broad and unduly burdensome because it is not limited in time and STH has been in existence since 1905.

**INTERROGATORY NO. 12:**  Describe in detail the process by which St. Thomas Hospital procured medications in 2012, including the names and contact information of all buying agents, suppliers, distributors, and wholesalers involved.

> **OBJECTION:**  STH objects to this interrogatory as it seeks information that is irrelevant, beyond the scope of permissible discovery under FED. R. CIV. P. 26 and 33, and unlikely to lead to the discovery of relevant or admissible information regarding any allegation in the Complaints.  Plaintiffs do not allege, and no facts exist to support an allegation, that STH purchased the MPA injected into any Plaintiff.  Specifically, it is undisputed that the MPA injected into some or all of the Plaintiffs was purchased from NECC by STOPNC.  STH also objects to this interrogatory as overly broad and unduly burdensome because it is not limited in time and STH has been in existence since 1905.

**INTERROGATORY NO. 13:**  Please describe in detail all systems, policies and procedures used at St. Thomas Hospital in order to supervise and oversee Saint Thomas Neurosurgical.

> **OBJECTION:**  STH objects to this interrogatory for lack of foundation.  STH does not supervise or oversee STOPNC.

**INTERROGATORY NO. 14:**  Please describe in detail all systems, policies and procedures used at St. Thomas Hospital in order to evaluate compounding pharmacies from which it purchases medications.

> **OBJECTION:**  STH objects to this interrogatory as its systems, policies, and procedures regarding the evaluation of compounding pharmacies are irrelevant, beyond the scope of permissible discovery under FED. R. CIV. P. 26 and 33, and unlikely to lead to the discovery of relevant or admissible information regarding any allegation in the Complaints.  STH also objects to this interrogatory as overly broad and unduly burdensome because it is not limited in time and STH has been in existence since 1905.

**INTERROGATORY NO. 15:**  Please describe in detail all systems, policies and procedures used at St. Thomas Hospital in order to evaluate manufacturers, distributors or wholesalers from which it purchases medications.

> **OBJECTION:**  STH objects to this interrogatory as its policies and procedures regarding the evaluation of manufacturers, distributors, and wholesalers from which it purchases medications are irrelevant, beyond the scope of permissible discovery under FED. R. CIV. P. 26 and 33, and unlikely to lead to the discovery of relevant or admissible information regarding any allegation in the Complaints.  STH also objects to this interrogatory as overly broad and unduly burdensome because it is not limited in time and STH has been in existence since 1905.

**INTERROGATORY NO. 16:** Please describe in detail (including names and dates) the extent to which anyone associated with Saint Thomas Neurosurgical consulted with any pharmacist

employed by St. Thomas Hospital or hospital [sic] pharmacy department regarding whether to purchase medications from NECC in particular or compounding pharmacies in general.

> **OBJECTION:**  STH objects to this interrogatory as overly broad and unduly burdensome.  "Associated with" is overly broad and undefined.  STH further objects to this interrogatory as seeking electronically stored information that is not reasonably accessible due to undue burden or cost, and this burden and expense outweighs any likely benefit of the requested information.  STH also objects to this interrogatory as overly broad and unduly burdensome since it is not limited in time and STH has been in existence since 1905.
>
> **ANSWER:**  Subject to and without waiving the foregoing objections, please see the responses to Interrogatory Nos. 1 and 9.  STH further states that it is unaware of any of its pharmacists or hospital pharmacy department staff consulting with STOPNC regarding whether to purchase medications from NECC or compounding pharmacies in general.

**INTERROGATORY NO. 17:**  Please explain, in detail, all reasons for the termination of Martin Kelvas, and describe each and every fact and/or consideration that lead [sic] to that termination.  Please include the identities of each person involved in the termination decision, and describe all conversations leading to the termination decision.

> **OBJECTION:** STH objects to this interrogatory as it seeks information that is irrelevant, beyond the scope of permissible discovery under FED. R. CIV. P. 26 and 33, and unlikely to lead to the discovery of relevant or admissible information regarding any allegation in the Complaints. STH also objects to this interrogatory as it is overly broad, seeks confidential information, and improperly invades the privacy rights of former or current STH employees.

**INTERROGATORY NO. 18:**  Describe in complete detail the business structure of St. Thomas Hospital including but not limited to:

> (a)   provide the names and job title of each officer of St. Thomas Hospital;
>
> (b)   provide the name of each manager of St. Thomas Hospital;
>
> (c)   provide the name of each owner or member of St. Thomas Hospital;
>
> (d)   identify all contracts, agreements, cost-sharing arrangements, profit-sharing arrangements, and patient referral arrangements existing between or among St. Thomas Hospital and Saint Thomas Neurosurgical, Howell Allen Clinic, Saint Thomas Network, Saint Thomas Health and/or Saint Thomas Health Services;
>
> (e)   describe in detail all financial arrangements that presently exist or have previously existed between or among St. Thomas Hospital and Saint Thomas Neurosurgical, Howell Allen Clinic, Saint Thomas Network, Saint Thomas Health and/or Saint Thomas Health Services; and

(f) identify and describe every lease for space occupied by Saint Thomas Neurosurgical.

**OBJECTION:** STH objects to this interrogatory as overly broad and unduly burdensome because it is not limited in time and STH has been in existence since 1905. STH also objects to this interrogatory as otherwise overly broad and unduly burdensome. STH has numerous departmental managers and their identity is irrelevant, beyond the scope of permissible discovery under FED. R. CIV. P. 26 and 33, and unlikely to lead to the discovery of relevant or admissible information. STH objects to this interrogatory as the contracts or agreements between STH and Saint Thomas Network, Saint Thomas Health and Howell Allen Clinic are irrelevant, beyond the scope of permissible discovery under FED. R. CIV. P. 26 and 33, and unlikely to lead to the discovery of relevant or admissible information regarding any allegation in the Complaints. STH also objects to this interrogatory as overly broad and unduly burdensome because it is not limited to types of contracts, agreements, cost-sharing arrangements or profit-sharing arrangements.

**ANSWER:** Subject to and without waiving the foregoing objections, STH provides the following current information:

(a) Michael Schatzlein, M.D., Chairman; Bernie Sherry, President and CEO; Craig Polkow, Vice-president; Karen Springer, Secretary/Treasurer.

(b) See applicable foregoing objections.

(c) Saint Thomas Health is the sole member of STH.

(d) Saint Thomas Health Services was the name of two different entities. Those two entities are now known as Saint Thomas Network or Saint Thomas Health. A Services Agreement between STH and STOPNC exists. STH and STOPNC have an Agreement for Patient Transfer. STH has no other contracts, agreements, cost-sharing arrangements, profit-sharing arrangements or patient referral agreements with STOPNC.

(e) See response to (d) above. The financial arrangements are set forth in these agreements, which have been produced previously in related Tennessee state court litigation, and will also be produced in this litigation.

(f) STH does not lease space to STOPNC.

**INTERROGATORY NO. 19:** Explain in detail all financial transactions that occurred between St. Thomas Hospital and Saint Thomas Neurosurgical in 2012, including dates, amounts and reasons.

**OBJECTION**: STH objects to this interrogatory to the extent is seeks dates and amounts of financial transactions between STH and STOPNC. This information is irrelevant, beyond the scope of permissible discovery under FED. R. CIV. P. 26 and 33, and unlikely to lead to the discovery of relevant or admissible information regarding any allegation in the Complaints.

**ANSWER**: Subject to and without waiving the foregoing objections, all financial transactions that occurred between STH and STOPNC in 2012 occurred pursuant to the Services Agreement, which has been produced previously in related Tennessee state court litigation, and will also be produced in this litigation.

2012 charges to STOPNC: April–Dec 2011 dietary charges – $146.82; March 2012 dietary charges – $16.92; 2010 Tax preparation fees – $5,810; STOPNC paid STH: January 2012, $5900.38; July 2012, $73.26 in July 2012, July 2012, $7,055 2011 Tax preparation fees; August 2012, $524.75 credentialing services.

**INTERROGATORY NO. 20**: Explain in detail all financial transactions that occurred between St. Thomas Hospital and Howell Allen Clinic in 2012, including dates, amounts and reasons.

**OBJECTION**: STH objects to this interrogatory as the financial transactions between STH and Howell Allen Clinic are irrelevant, beyond the scope of permissible discovery under FED. R. CIV. P. 26 and 33, and unlikely to lead to the discovery of relevant or admissible information regarding any allegation in the Complaints.

**INTERROGATORY NO. 21**: Please identify every employee or agent of St. Thomas Hospital who performed any duties or functions for Saint Thomas Neurosurgical, and for each such person, please state:

(a) the person's name, job title and contact information;

(b) a description of the duties or functions performed; and

(c) a statement of whether the person continues to be employed by or affiliated with either St. Thomas Hospital and/or Saint Thomas Neurosurgical.

**OBJECTION**: STH objects to this interrogatory as overly broad and unduly burdensome as it is not limited in time.

**ANSWER**: Subject to and without waiving the foregoing objections, and since January 1, 2010, the following persons may be responsive to this interrogatory:

Current STOPNC board members who are also current or past employees of STH or Saint Thomas Health ("STHe") are Craig Polkow and Dawn Rudolph. Past board members include Dale Batchelor, M.D. and Alan Strauss, who are former employees of STH and STHe, respectively. Both Dr. Bachelor and Mr. Strauss can be contacted through undersigned counsel.

> Jennifer Hendricks, Financial Coordinator and Gary Hearn, Controller, provided accounting services as described in the Services Agreement with STOPNC. Both continue to be employed with STHe.
>
> Cheri Doolin and Felicia Lively, Medical Staff Services Coordinators, provided credentialing services as described in the Services Agreement with STOPNC. Both continue to be employed with STH.
>
> After September 18, 2012, Dr. Robert Latham, Chief of Medicine and Physician, Infectious Disease, worked with the Tennessee Department of Health ("TDOH"), Centers for Disease Control ("CDC"), Food and Drug Administration ("FDA"), and STOPNC to determine the diagnosis, source and cause of the illnesses.
>
> Candace Smith, RN, Director, Infection Control, worked with the TDOH, CDC, FDA and STOPNC to determine the diagnosis, source and cause of the illnesses.
>
> Connie Esper-Kanze, Director, Quality and Risk Management, helped facilitate the typing of a report for STOPNC.
>
> Kelli Lannom, Administrative Assistant-Administration, typed a STOPNC report.
>
> Rhiannon Green, Administrative Assistant-Administration, typed a STOPNC report.

**INTERROGATORY NO. 22:** Has St. Thomas Hospital ever paid for or provided any personnel, medications, consulting services, procurement services, equipment, medical supplies, medical forms, billing services, telephone services, websites or other materials used by Saint Thomas Neurosurgical? If so, please explain detail [sic] each item provided.

> **OBJECTION:** STH objects to this interrogatory as overly broad and unduly burdensome as it is not limited in time.
>
> **ANSWER:** Subject to and without waiving the foregoing objections, please see the response to Interrogatory No. 21.

**INTERROGATORY NO. 23:** Explain in detail St. Thomas Hospital's relationship with Saint Thomas Network and Saint Thomas Health. Please include a complete description of the role played by each of those entities in healthcare and business operations at the Saint Thomas hospital campus on Harding Road in Nashville, Tennessee.

> **OBJECTION:** STH objects to this request as vague and ambiguous, as the word "relationship" is undefined. STH objects to this interrogatory as it seeks information that is irrelevant, beyond the scope of permissible discovery under FED. R. CIV. P. 26 and 33, and unlikely to lead to the discovery of relevant or admissible information regarding any allegation in the Complaints. The relationship among and between STH, Saint Thomas

Health, and Saint Thomas Network is not relevant to, and is not likely to lead to any relevant or admissible information, regarding any allegation in the Complaints.

**INTERROGATORY NO. 24:** Does St. Thomas Hospital contend that any other person or entity was responsible for the injuries and deaths that are the subject of this litigation? If so, identify each such person or entity and state the factual basis for a contention that any other person or entity was responsible for the injuries and deaths forming the basis of this litigation.

> **ANSWER:** NECC, Berry Cadden, Lisa Cadden, Doug Conigliaro, Carla Conigliaro, Gregory Conigliaro, Glenn Chin, Alaumus Pharmaceutical, LLC, Ameridose, LLC, GDC Properties Management, LLC, Medical Sales Management, Inc., and Medical Sales Management SW, Inc. are responsible for Plaintiffs' injuries and/or deaths as outlined in Plaintiffs' Complaints.  At this time, STH is unaware of any other person or entity responsible for Plaintiffs' injuries or deaths but reserves the right to supplement this response as discovery proceeds.

**INTERROGATORY NO. 25:** State the full name, address, telephone number, job title and employer of each and every person believed by St. Thomas Hospital to have knowledge of facts regarding the claims alleged in this litigation, any defenses thereto, and/or any issues germane to this litigation.  Please include any person believed to have knowledge of rebuttal or impeachment evidence, and for each person listed, please identify the subject matter of their knowledge and provide a brief description of their knowledge.

> **OBJECTION:** STH objects to this interrogatory as overly broad and unduly burdensome.
>
> **ANSWER:** Subject to and without waiving the foregoing objections, Plaintiffs are believed to have knowledge of the facts in the Complaints.  Any family members and friends who visited Plaintiffs in the hospital may also have knowledge of the facts in the Complaints.
>
> All persons identified in the medical records of STH and STOPNC are believed to have knowledge of the care and treatment of Plaintiffs.  In accordance with FED. R. CIV. P. 33(d), STH refers Plaintiffs to the STH medical records previously produced.  In addition to the care and treatment of Plaintiffs, Dr. Robert Latham and Candace Smith have knowledge and information related to the investigation of the source and cause of the illnesses.  Dr. John Culclasure, Debra Schamberg and Scott Butler will also have knowledge of this investigation, as well as STOPNC's business relationship with NECC.  The CDC and Massachusetts Board of Public Health ("MBPH") have knowledge of the source and cause of illness and investigations associated with the claims.  The Tennessee Department of Health ("TDOH"), including Dr. Marion Kainer and Dr. April Pettit, have knowledge of the investigation, source and cause of illness, as well as communications with exposed patients.

NECC employees are believed to have knowledge related to the manufacture of MPA and the circumstances of the contamination. STH does not know who those persons are except that the owners have been identified in media reports.

The Defendants have knowledge of their corporate structure and business relationships, including officers identified above.

**INTERROGATORY NO. 26:** When and how did you (or your agents) become aware that Saint Thomas Neurosurgical had received contaminated medication from NECC and how did you respond to that information?

**OBJECTION:** STH objects to answering this interrogatory because FED. R. CIV. P. 33 limits interrogatories to 25 in number unless otherwise stipulated or ordered by the Court. STH has already answered 25 interrogatories.

**INTERROGATORY NO. 27:** What involvement, if any, did St. Thomas Hospital have in contacting patients after learning of the recent meningitis outbreak?

**OBJECTION:** STH objects to answering this interrogatory because FED. R. CIV. P. 33 limits interrogatories to 25 in number unless otherwise stipulated or ordered by the Court. STH has already answered 25 interrogatories.

**INTERROGATORY NO. 28:** Describe every communication and/or conversation St. Thomas Hospital (including its agents, employees or representatives) had with Saint Thomas Neurosurgical regarding the recent fungal meningitis outbreak, and describe what actions St. Thomas Hospital took, if any as a result of each communication or conversation.

**OBJECTION:** STH objects to answering this interrogatory because FED. R. CIV. P. 33 limits interrogatories to 25 in number unless otherwise stipulated or ordered by the Court. STH has already answered 25 interrogatories.

**INTERROGATORY NO. 29:** Did St. Thomas Hospital personnel make or were they requested to make any report to any government bodies, accreditation groups or any other oversight bodies regarding its acquisition of steroids from NECC and/or the fungal meningitis outbreak? If so, please identify and explain all such reports in detail.

**OBJECTION:** STH objects to answering this interrogatory because FED. R. CIV. P. 33 limits interrogatories to 25 in number unless otherwise stipulated or ordered by the Court. STH has already answered 25 interrogatories.

**INTERROGATORY NO. 30:** Please explain in detail St. Thomas Hospital's involvement in the inspection, investigation and closure of Saint Thomas Neurosurgical in connection with the fungal meningitis outbreak, and please identify each person involved.

**OBJECTION:** STH objects to answering this interrogatory because FED. R. CIV. P. 33 limits interrogatories to 25 in number unless otherwise stipulated or ordered by the Court. STH has already answered 25 interrogatories.

- 16 -

Dated:  December 11, 2013

SAINT THOMAS WEST HOSPITAL, FORMERLY KNOWN AS ST. THOMAS HOSPITAL

By its attorneys,
*/s/ Yvonne K. Puig*
Sarah P. Kelly (BBO #664267)
skelly@nutter.com
Dahlia Rin (BBO #674137)
drin@nutter.com
NUTTER McCLENNAN & FISH LLP
Seaport West
155 Seaport Boulevard
Boston, Massachusetts  02210
(617) 439-2000

OF COUNSEL:

Yvonne K. Puig*
Texas State Bar No. 16385400
Marcy Hogan Greer*
Texas State Bar No. 08417650
Eric J. Hoffman*
Texas State Bar No. 24074427

FULBRIGHT & JAWORSKI L.L.P.
98 San Jacinto Blvd. Suite 1100
Austin, Texas 78701
(512) 536-2450
(512) 536-4598 (FAX)

*Appearing *Pro Hac Vice*

## CERTIFICATE OF SERVICE

      I hereby certify that the foregoing document was served via Certified Mail, Return Receipt Requested (*) or electronic mail (**) on the 11th day of December, 2013, to:

J. Gerard Stranch, IV*  
Benjamin A. Gastel  
BRANSETTER, STRANCH & JENNINGS PLLC  
227 Second Avenue North  
Nashville, TN  37201  
Phone:  (615) 254-8801  
Fax:  (615) 255-5419  
gerards@branstetterlaw.com  

C.J. Gideon**  
Chris Tardio**  
Gideon Cooper & Essary  
315 Deadrick St., Suite 1100  
Nashville, TN 37238  
cj@gideoncooper.com  
chris@gideoncooper.com  

Ryan A. Ciporkin**  
Lawson & Weitzen  
88 Black Falcon Avenue, Suite 345  
Boston, MA 02210  
rciporkin@lawson-weitzen.com  

Frederick H. Fern**  
Alan M. Winchester**  
Harris Beach PLLC  
100 Wall Street, 23rd Floor  
New York, NY 10005  
hbnecc@harrisbeach.com  

Matthew P. Moriarty**  
Richard A. Dean**  
Thomas W. Coffey**  
Tucker Ellis, LLP  
950 Main, Suite 1100  
Cleveland, OH 44113  
matthew.moriarty@tuckerellis.com  
richard.dean@tuckerellis.com  
thomas.coffey@tuckerellis.com  

Daniel M. Rabinovitz**  
Nicki Samson**  
Michaels & Ward, LLP  
One Beacon Street, 2nd Floor  
Boston, MA 02108  
dmr@michaelsward.com  
ns@michaelsward.com  

Robert H. Gaynor**  
Sloane & Walsh LLP  
Three Center Plaza  
Boston, MA 02108  
rgaynor@sloanewalsh.com  

Joseph P. Thomas**  
Ulmer & Berne LLP  
600 Vine Street, Suite 2800  
Cincinnati, OH 45202  
jthomas@ulmer.com  

Melinda L. Thompson**  
Todd & Weld  
28 State Street, 31st Floor  
Boston, MA 02109  
mthompson@toddweld.com  

                                                    *Marcy Hogan Greer*  
                                                      Marcy Hogan Greer

## VERIFICATION

STATE OF TENNESSEE                                 )

COUNTY OF DAVIDSON                          )

I, Linda Poteete, being first duly sworn upon oath, depose and say that I am the Claims Coordinator for Saint Thomas West Hospital, formerly known as St. Thomas Hospital ("STH") and that I am authorized to make this Affidavit on its behalf; that I have read the foregoing answers to Interrogatories and know the content thereof; that there is no single person employed by or otherwise connected with STH who has personal knowledge of all the facts and information requested herein; that said Answers were prepared with the assistance and advice of counsel and the assistance of various employees and representatives of the corporation, upon which I have relied; that the Answers set forth herein, subject to inadvertently or undiscovered errors, are based on, and therefore necessarily limited by, the records and information still in existence, presently recollected, and thus far discovered in the course of the preparation of these Answers; that the foregoing Answers are thus based upon corporate knowledge and are true and correct to the best of my knowledge and belief; that consequently, I reserve the right to make any changes in the Answers if it appears at any time that omissions or errors have been made therein or that more accurate information is available and that, subject to the limitations set forth herein, the said Answers are true to the best of my knowledge, information and belief.

SAINT THOMAS WEST HOSPITAL

By: *Linda Poteete*
Linda Poteete
Claims Coordinator

Sworn to and subscribed before me on this
The 11th day of December, 2013.

*Christa McClaskey*
NOTARY PUBLIC

My Commission Expires: March 14, 2017

[Notary Seal: CHRISTA MCCLASKEY, STATE OF TENNESSEE NOTARY PUBLIC, MONTGOMERY COUNTY]

53075886.3

- 18 -