IN THE EIGHTH CIRCUIT COURT FOR DAVIDSON COUNTY, TENNESSEE

| | |
|---|---|
| WAYNE A. REED, individually and as husband and next of kin of decedent, DIANA E. REED,<br><br>Plaintiff,<br><br>v.<br><br>SAINT THOMAS OUTPATIENT NEUROSURGICAL CENTER, LLC, HOWELL-ALLEN CLINIC a Professional Corporation, SAINT THOMAS NETWORK, SAINT THOMAS HEALTH, and ST. THOMAS HOSPITAL,<br><br>Defendants. | Case No. 13C417<br>Jury Demand |

## SAINT THOMAS NETWORK'S ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Defendant, Saint Thomas Network, answers Plaintiff's First Set of Interrogatories as follows:

1. Please describe in detail Saint Thomas Network's relationship to and/or business arrangement with Saint Thomas Outpatient Neurosurgical Center, LLC ("Saint Thomas Neurosurgical").

    RESPONSE:

    Saint Thomas Network ("STN") is a member of Saint Thomas Outpatient Neurosurgical Center, LLC ("STOPNC"). According to the terms of the Operating Agreement, STN provides two board members to the STOPNC Board of Directors.

2. Please describe in detail Saint Thomas Network's relationship to and/or business arrangement with Howell Allen Clinic.

RESPONSE:

Howell Allen Clinic, formerly Neurological Surgeons, P.C., is a member of STOPNC, as is STN. According to the terms of the Operating Agreement, Howell Allen Clinic provides two board members to the STOPNC Board of Directors.

3. Identify each communication (including face-to-face, telephone, email, or other communications) between NECC (including its agents, employees or representatives) and Saint Thomas Network (including its agents, employees or representatives). For each communication identified, please provide the following information:

    a) the names, job titles, and contact information for each person involved in the communication;

    b) the date, time, length, mode and location of each communication or discussion;

    c) whether any notes, memoranda, recordings, writings or other records were kept of any of those conversations or communications; and

    d) state as specifically as possible what each party to the communication or conversation said and state what actions Saint Thomas Network took, if any, as a result of each communication or conversation.

RESPONSE:

STN objects to this interrogatory as it seeks information that is irrelevant, beyond the scope of permissible discovery under Tenn. R. Civ. P. 26.02(1), and unlikely to lead to the discovery of relevant or admissible information regarding any allegation in the Complaint. Plaintiffs do not allege, and no facts exist to support an allegation, that STN purchased the methylprednisolone acetate (PF) injected into Diana Reed. Specifically, it is undisputed that the methylprednisolone acetate (PF) injected into Diana Reed was purchased from NECC by STOPNC. STN also objects to this interrogatory as overly broad and unduly burdensome since it is not limited in time.

4.  Identify each communication (including fact-to-face, telephone, email, or other communications) between Saint Thomas Network (including its agents, employees or representatives) and Saint Thomas Neurosurgical (including its agents, employees or representatives) regarding Saint Thomas Neurosurgical's acquisition of medications. For each communication identified, please provide the following information:

    a) the names, job titles, and contact information for each person involved in the communication;

    b) the date, time, length, mode and location of each communication or discussion;

    c) whether any notes, memoranda, recordings, writings or other records were kept of any of those conversations or communications; and

    d) state as specifically as possible what each party to the communication or conversation said and state what actions Saint Thomas Network took, if any, as a result of each communication or conversation.

RESPONSE:

STN objects to this interrogatory as it seeks information after September 18, 2012 because that is irrelevant, beyond the scope of permissible discovery under Tenn. R. Civ. P. 26.02(1), and unlikely to lead to the discovery of relevant or admissible information regarding any allegation in the Complaint. STN does not interpret the this interrogatory as including STN legal counsel; nor does it interpret this interrogatory as seeking information protected by the attorney–client privilege or work-product doctrine. To the extent Plaintiff uses this interrogatory to seek protected information or to impose an unnecessary and unwarranted privilege-log burden, STN objects to those attempts.

Without waiving these objections, STN is unaware of any such communications prior to September 18, 2012.

5.     Please list the date, location, and attendees present at each and every meeting (business or social) between or among NECC (including its agents, employees or representatives) and Saint Thomas Network (including its agents, employees or representatives).

RESPONSE:

STN objects to this interrogatory as it seeks information that is irrelevant, beyond the scope of permissible discovery under Tenn. R. Civ. P. 26.02(1), and unlikely to lead to the discovery of relevant or admissible information regarding any allegation in the Complaint. Plaintiffs do not allege, and no facts exist to support an allegation, that STN purchased the methylprednisolone acetate (PF) injected into Diana Reed. Specifically, it is undisputed that the methylprednisolone acetate (PF) injected into Diana Reed was purchased from NECC by STOPNC. STN also objects to this interrogatory as overly broad and unduly burdensome since it is not limited in time.

6.     Describe each and every action Saint Thomas Network took to ensure that medication injected into Diana Reed's cervical spine was safe and free from contaminants.

RESPONSE:

STN objects to this interrogatory for lack of foundation. STN did not owe any legal duty to Diana Reed in regard to the treatment she received at STOPNC. STN is not a physician or healthcare provider and is prohibited by law from making medical diagnoses or prescribing medical treatment, including prescribing or administering medicine. Accordingly, STN is legally precluded from controlling or influencing the medical decisions of Diana Reed's physicians. See also, T.C.A. § 48-217-101.

7.     Describe in detail every gift, sample, incentive, promotion, thank you gift, and/or discount that Saint Thomas Network (or anyone associated with it) ever received from NECC (including its agents, employees or representatives) or any wholesaler or distributor of any injectable steroid.

RESPONSE:

STN objects to this interrogatory as it seeks information that is irrelevant, beyond the scope of permissible discovery under Tenn. R. Civ. P. 26.02(1), and unlikely

to lead to the discovery of relevant or admissible information regarding any allegation in the Complaint. Plaintiffs do not allege, and no facts exist to support an allegation, that STN purchased the methylprednisolone acetate (PF) injected into Diana Reed. Specifically, it is undisputed that the methylprednisolone acetate (PF) injected into Diana Reed was purchased from NECC by STOPNC. STN also objects to this interrogatory as overly broad and unduly burdensome since it is not limited in time and includes any wholesaler or distributor of injectible steroids.

8. Identify each Saint Thomas Network employee during 2012 by name and job title, and state whether each such employee is still employed by the company. Please also give a general description of the duties of each such person.

RESPONSE:

STN had no employees in 2012.

9. Describe in complete detail the business structure of Saint Thomas Network including but not limited to:

    a) provide the names and job title of each officer of Saint Thomas Network;

    b) provide the name of each manager of Saint Thomas Network;

    c) provide the name of each owner or member of Saint Thomas Network;

    d) identify all contracts, agreements, cost-sharing arrangements, profit-sharing arrangements, patient referral arrangements existing between or among Saint Thomas Network and Saint Thomas Neurosurgical, Howell Allen Clinic, St. Thomas Hospital, Saint Thomas Health and/or Saint Thomas Health Services; and

    e) describe in detail all financial arrangements that presently exist or have previously existed between or among Saint Thomas Network and Saint Thomas Neurosurgical, Howell Allen Clinic, St. Thomas Hospital, Saint Thomas Health and/or Saint Thomas Health Services.

- 5 -

RESPONSE:

STN objects to this interrogatory as overly broad and unduly burdensome since it is not limited in time. Without waiving this objection, STN provides the following current information:

(a) Michael Schatzlein, M.D., Chairman; Craig Polkow, Vice-chairman; Karen Springer, Secretary/Treasurer
(b) STN does not have any managers
(c) Saint Thomas Health is the sole member of STN.
(d) STN objects to this interrogatory as the contracts or agreements between STN and St. Thomas Hospital and Saint Thomas Health are irrelevant, beyond the scope of permissible discovery under Tenn. R. Civ. P. 26.02(1), and unlikely to lead to the discovery of relevant or admissible information regarding any allegation in the Complaint. Saint Thomas Health Services was the name of two different entities. Those two entities are now known as STN or Saint Thomas Health. STN also objects to this interrogatory as overly broad and unduly burdensome. This interrogatory is not limited to types of contracts, agreements, cost-sharing arrangements or profit-sharing arrangements. Without waiving these objections, an Operating Agreement exists between STN and Howell Allen Clinic, formerly Neurological Surgeons, P.C., for the operation of STOPNC. STN has no other contracts, agreements, cost-sharing arrangements, profit-sharing arrangements or patient referral agreements with STOPNC. STN has no contracts, agreements, cost-sharing arrangements, profit-sharing arrangements or patient referral agreements with the Howell Allen Clinic.
(e) See response to (d) above. The financial arrangements are set forth in the agreement, which is also produced herewith.

10.   Please identify every employee or agent of Saint Thomas Network who performed any duties or functions for Saint Thomas Neurosurgical, and for each such person, please state:

   a)   the person's name, job title and contact information;

   b)   a description of the duties or functions performed; and

    c)    a statement of whether the person continues to be employed by or affiliated with either Saint Thomas Network and/or Saint Thomas Neurosurgical.

RESPONSE:

STN objects to this interrogatory as overly broad and unduly burdensome as it is not limited in time. Without waiving this objection and since January 1, 2010, the following persons may be responsive to this interrogatory:

Two members of the Board of Directors of the STOPNC represent Saint Thomas Network. Current board members are Michael Schatzlein M.D. and Dawn Rudolph. Past board members include Dale Bachelor, M.D. and Alan Strauss. Neither Dr. Bachelor nor Mr. Strauss are employed by St. Thomas Hospital or St. Thomas Health as of the date of these response but both can be contacted through undersigned counsel.

11. Has Saint Thomas Network every paid for or provided any personnel, medications, equipment, medical supplies, medical forms, billing services, telephone services, procurement services, contracting services, websites or other materials/services used by Saint Thomas Neurosurgical? If so, please explain in detail each item provided.

RESPONSE:

No.

12. Explain in detail all financial transactions that occurred between Saint Thomas Network and Saint Thomas Neurosurgical in 2012, including dates, amounts and reasons.

RESPONSE:

STN received distributions from STOPNC, as provided for in the Operating Agreement, in January, April, May and July 2012. STN objects to this interrogatory to the extent it seeks amounts of these financial transactions because that information is irrelevant, beyond the scope of permissible discovery under Tenn. R. Civ. P. 26.02(1), and unlikely to lead to the discovery of relevant or admissible information regarding any allegation in the Complaint.

13. Explain in detail all financial transactions that occurred between Saint Thomas Network and Howell Allen Clinic in 2012, including dates, amounts and reasons.

RESPONSE:

STN objects to this interrogatory as it seeks information that is irrelevant, beyond the scope of permissible discovery under Tenn. R. Civ. P. 26.02(1), and unlikely to lead to the discovery of relevant or admissible information regarding any allegation in the Complaint. Subject to this objection, STN is not aware of any such transactions.

14. Explain in detail Saint Thomas Network's policies and procedures regarding the purchase of medications.

RESPONSE:

STN objects to this interrogatory as it seeks information that is irrelevant, beyond the scope of permissible discovery under Tenn. R. Civ. P. 26.02(1), and unlikely to lead to the discovery of relevant or admissible information regarding any allegation in the Complaint. Specifically, it is undisputed that the methylprednisolone acetate (PF) injected into Diana Reed was purchased from NECC by STOPNC. Plaintiffs do not allege, and no facts exist to support an allegation, that STN purchased the methylprednisolone acetate (PF) injected into Diana Reed. Subject to this objection, STN does not purchase medications and therefore, does not have any policies or procedures related to the purchasing of medications.

15. Please describe in detail all systems, policies and procedures used at Saint Thomas Network in order to supervise and oversee its agent, Saint Thomas Neurosurgical.

RESPONSE:

STN objects to this interrogatory for lack of foundation. STOPNC is not the agent of STN. See T.C.A. § 48-217-101.

16. List in detail each entity which had possession or control of any of the MPA administered to Diana Reed from the time of its production to the time of its injection.

RESPONSE:

STN did not have in its possession or control any methylprednisolone acetate (PF) administered to Diana Reed. Based upon information and belief, STN believes STOPNC and NECC had possession and control of the medication at different times.

17. Identify every person (including but not limited to Wayne Reed, Diana Reed, personnel at St. Thomas Hospital, other physicians, etc.) with whom Saint Thomas Network personnel discussed, consulted or communicated concerning Diana Reed, her procedure(s), her post-procedure(s) condition, treatment, suspected problem(s), symptoms, diagnosis, test results or proposed treatment during the period July 2012 – October 2012. For every person identified, please provide the following information:

    (a)    the date, time and length of any communication or discussion;

    (b)    the location and mode of the communication;

    (c)    the individuals present during each such conversation or communication;

    (d)    whether any notes, memoranda, recordings, writings or other records were kept of any of these conversations or communications; and

    (e)    state as specifically as possible what each party to the communication or conversation said and state what actions Saint Thomas Network took, if any, as a result of each communication or conversation.

RESPONSE:

STN does not interpret this interrogatory as including STN legal counsel; nor does it interpret this interrogatory as seeking information protected by the attorney-client privilege or work-product doctrine. To the extent Plaintiff uses this interrogatory to seek protected information or to impose an unnecessary and unwarranted privilege-log burden, STN objects to those attempts. As stated above, STN did not have any employees in 2012. STN is not aware of anyone acting on its behalf having any such communications. STN is not a healthcare provider and did not provide any care or treatment to Diana Reed.

18. Aside from what is reflected in the medical chart, identify (by stating the date, author and recipient) all written communications, electronic data, e-mails, letters, correspondence, reports, recordings, transcripts, notes, messages, writings or other records of which Saint Thomas Network is aware concerning Diana Reed.

   RESPONSE:

   Other than STOPNC and St. Thomas Hospital's medical charts and documents in their possession, STN is not aware of any written communications, electronic data, e-mails, letters, correspondence, reports, recordings, transcripts, notes, messages, writings or other records specifically concerning Diana Reed. STN does not interpret this interrogatory as including STN legal counsel; nor does it interpret this interrogatory as seeking information protected by the attorney–client privilege or work-product doctrine. To the extent Plaintiff uses this interrogatory to seek protected information or to impose an unnecessary and unwarranted privilege-log burden, STN objects to those attempts.

19. Does Saint Thomas Network contend that Wayne Reed or Diana Reed in any way caused or contributed to Diana Reed's injuries and death that are the subject of this lawsuit? If so, identify all facts supporting a contention that either Wayne Reed or Diana Reed contributed to or caused the injuries forming the basis of this lawsuit and identify all persons with knowledge of such facts.

   RESPONSE:

   At this time, STN is unaware of any facts that suggest that Wayne or Diana Reed are responsible for her injuries or death, but STN reserves the right to supplement this response as discovery proceeds.

20. Does Saint Thomas Network contend that any other person or entity was responsible in any way for the injuries and death that are the subject of this lawsuit? If so, identify each such person or entity and state the factual basis for a contention that any other person or entity was responsible for the injuries and death forming the basis of this lawsuit.

RESPONSE:

NECC and Berry Cadden are responsible for Diana Reed's injuries and death as outlined in Plaintiff's complaint and the Defendants' answers. At this time, STN is unaware of any other person or entity responsible for her injuries or death but reserves the right to supplement this response as discovery proceeds.

21. Identify any individuals that have expressed an opinion concerning what caused and/or contributed to Diana Reed's injuries and death. With respect to each such person identified, provide a summary of the opinion expressed.

RESPONSE:

STN objects to this request to the extent it seeks information protected from discovery by T.C.A. § 29-26-122(d) and/or T.C.A. § 63-1-150(d). STN objects to this interrogatory as overly broad and unduly burdensome. Without waiving this objection, STN believes that Diana Reed's healthcare providers, family, friends, governmental officials and other persons who have read or followed her story have opinions as to what caused or contributed to Diana Reed's illness and death. STN cannot speculate as to those opinions.

22. Does Saint Thomas Network have an opinion and, if so, what in its opinion caused and/or contributed to Diana Reed's injuries and death?

RESPONSE:

Based upon current information and Diana Reed's autopsy report, STN believes that Diana Reed died of complications of fungal meningitis as a result of receiving contaminated medicine manufactured and distributed by NECC. STN reserves the right to alter this belief and more facts and information are discovered.

23. State the full name, address and telephone number of any of Diana Reed's treating physicians, nurses or other health care providers who have offered or who are expected to offer opinions at trial regarding her injuries or condition and/or whether treatment provided to Diana

Reed by healthcare providers during July – October 2012 complied with the applicable standard of care. For each such physician or health care provider, state the substance of their opinions.

> RESPONSE:
>
> STN has not yet determined who it will call to testify at trial and offer opinions regarding Diana Reed's treatment and care. This information will be supplemented as required by the Tennessee Rules of Civil Procedure and/or order of this Court.

24. State the full name, address, telephone number, job title and employer of each and every person believed by Saint Thomas Network to have knowledge of facts regarding the claims alleged in the Complaint, any defenses thereto, and/or any issues germane to this litigation. Please include any person believed to have knowledge of rebuttal or impeachment evidence, and for each person listed, please identify the subject matter of their knowledge and provide a brief description of their knowledge.

> RESPONSE:
>
> STN also objects to this interrogatory as overly broad and unduly burdensome. Subject to this objection, Wayne Reed is believed to have knowledge of the facts in the Complaint. The Reed family members and friends who visited her in the hospital may also have knowledge of the facts in the Complaint.
> All persons identified in the medical records of STH and STOPNC are believed to have knowledge of the care and treatment of Diana Reed. In accordance with Tenn. R. Civ. P. 33.03, STN refers Plaintiff to the STH medical records previously produced. In addition to the care and treatment of Diana Reed, Dr. Robert Latham and Candace Smith have knowledge and information related to the investigation of the source and cause of the illnesses. Dr. John Culclasure, Debra Scahmberg and Scott Butler will also have knowledge of this investigation, as well as STOPNC's business relationship with NECC.
> NECC employees are believed to have knowledge related to the manufacture of Methylprednisolone Acetate (PF) and the circumstances of the contamination. STN does not know who those persons are except that the owners have been identified in media reports.
> The Defendants have knowledge of their corporate structure and business relationship, including officers identified above.

25. Do you contend that Wayne Reed or Diana Reed has made any statements, admissions or declarations against interest regarding the subject matter of this lawsuit? If so, as to each such statement, admission or declaration against interest identify the person(s) who made the statement, admission or declaration, state the date, time and place the statement, admission or declaration was made, identify each person present at the time the statement, admission or declaration was made, state the complete substance and content of the statement, admission or declaration and if the statement, admission or declaration is contained in a document, or if any document refers or relates to the statement, admission or declaration, identify the document and attach a copy.

RESPONSE:

At this time, STN is unaware of any statements by Wayne or Diana Reed regarding her injuries or death except those noted in her medical records. STN reserves the right to supplement this response as discovery proceeds.

26. If you or anyone else has made any type of verbal or written statement to anyone or taken any verbal or written statements pertaining to the acquisition of steroids from NECC, please state for each such statement the date it was given, the name, address and place of employment of the person who took such statement, and the method by which the statement was given.

RESPONSE:

STN does not interpret this interrogatory as including STN legal counsel; nor does it interpret this interrogatory as seeking information protected by the attorney–client privilege or work-product doctrine. To the extent Plaintiff uses this interrogatory to seek protected information or to impose an unnecessary and unwarranted privilege-log burden, STN objects to those attempts. Subject to this statement, STN is unaware of any described statements.

27.  Did Saint Thomas Network personnel create any handwritten notes, emails or electronic data concerning Diana Reed that do not appear in Saint Thomas Neurosurgical's medical chart and/or the chart of Howell Allen Clinic? If so, state the date and time the notes were made, to whom the notes were given, the specific subject matter and purpose of each note and the current whereabouts of all notes or electronic data.

> RESPONSE:
>
> STN does not interpret this interrogatory as including STN legal counsel; nor does it interpret this interrogatory as seeking information protected by the attorney–client privilege or work-product doctrine. To the extent Plaintiff uses this interrogatory to seek protected information or to impose an unnecessary and unwarranted privilege-log burden, STN objects to those attempts. Subject to this statement, STN is unaware of the existence of any handwritten notes, emails or electronic data concerning Diana Reed created on its behalf.

28.  When and how did you (or your agents) become aware of the recent fungal meningitis outbreak?

> RESPONSE:
>
> Board members to the STOPNC were advised by STOPNC of a concern related to fungal meningitis on or about September 20, 2012.

29.  When and how did you (or your agents) become aware that Saint Thomas Neurosurgical had received contaminated medication from NECC and how did you respond to that information?

> RESPONSE:
>
> On October 18, 2013, the CDC and FDA confirmed the presence of Exserohilum rostratum in unopened vials of Methylprednisolone Acetate (PF) from NECC. That information was provided to STN on or shortly after October 18, 2013. Prior to that date, STOPNC advised STN that it purchased Methylprednisolone Acetate (PF) from NECC. STOPNC, with approval of its board of directors, voluntarily closed its premises on September 20, 2012. By October 3, 2013, it was suspected that medication from NECC was contaminated.

30. Did you, or anyone to your knowledge, attempt to contact Diana Reed after you learned that Diana Reed had potentially been injected with contaminated medications compounded by the NECC? If so, identify the name of the person who attempted to contact Diana Reed, the date of each attempt, and the substance of each conversation, if any.

RESPONSE:

STN did not contact patients of STOPNC. STOPNC, at the direction of the Tennessee Department of Heath, contacted patients.

31. When and how did you or your agents become aware that Diana Reed had apparently contracted fungal meningitis and how did you respond to that information?

RESPONSE:

STN was not aware of the medical diagnoses of specific patients. STN now understands that Diana Reed's autopsy report revealed fungal meningitis.

32. Did Saint Thomas Network personnel make or were they requested to make any report to any government bodies, accreditation groups or any other oversight bodies regarding its acquisition of steroids from NECC and/or the fungal meningitis outbreak? If so, please identify and explain all such reports in detail.

RESPONSE:

STN objects to this interrogatory for lack of foundation. Without waiving this objection, STN did not acquire steroids from NECC and has not been requested to make any reports to any governmental bodies.

33. State the name and address of any expert witness as defined by Rule 26.02(4), Tenn. R. Civ. Pro. who you expect to call at the trial of this cause, and for each and every such expert witness, please state the subject matter on which the expert is expected to testify, the

substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion. In addition for each such person so identified, please disclose the witness's qualifications, including a list of all publications published within the past ten years; a list of all other cases in which, during the previous four years, the witness testified as an expert; and a statement of the compensation to be paid for the study and testimony in the case.

    RESPONSE:

    STN has not yet determined who it will call to testify at trial and offer expert opinions regarding her treatment and care. This information will be supplemented as required by the Tennessee Rules of Civil Procedure and/or order of this Court.

    34.    State the name and address of any person who you expect to offer opinion testimony at the trial of this case, irrespective as to whether such individual is an "expert" as defined by Rule 26.02(4), Tenn. R. Civ. Pro. With respect to each such individual, please state their name and address, the subject matter on which the individual is expected to testify, the substance of the facts and opinions to which the individual is expected to testify and a summary of the grounds for each opinion.

    RESPONSE:

    STN has not yet determined who it will call to testify at trial and offer opinion testimony. This information will be supplemented as required by the Tennessee Rules of Civil Procedure and/or order of this Court.

    35.    State the full name, date of birth, business address, job title, position and employer of every individual who provided information used in answering these interrogatories. With respect to each person, detail the information provided and the interrogatory containing the information provided. In addition, where applicable, describe every document, communication

- 17 -

or thing from which information included in the answers to these interrogatories was derived and for each document provide a description including the date, author, etc.

    RESPONSE:

    STN objects to this interrogatory as it seeks information that is irrelevant, beyond the scope of permissible discovery under Tenn. R. Civ. P. 26.02(1), and unlikely to lead to the discovery of relevant or admissible information regarding any allegation in the Complaint. Without waiving this objection, Michael Schatzlein, M.D., Chairman of STN. Documents responsive to this request are identified in each interrogatory.

36.   Has Saint Thomas Network ever been disciplined, sanctioned or reprimanded in any way by any professional organization, licensing body, healthcare provider, government entity or other authority? If so, please provide details of any such action including the nature of the charge and the person or entity initiating the charge, the date of any action and the final disposition.

    RESPONSE:

    STN objects to this interrogatory as it seeks information that is irrelevant, beyond the scope of permissible discovery under Tenn. R. Civ. P. 26.02(1), and unlikely to lead to the discovery of relevant or admissible information regarding any allegation in the Complaint. Without waiving this objection, no.

## **VERIFICATION**

STATE OF TENNESSEE        )

COUNTY OF DAVIDSON    )

 I, Michael Schatzein, M.D., being first duly sworn upon oath, depose and say that I am a Chairman of Saint Thomas Network ("STN") and that I am authorized to make this Affidavit on its behalf; that I have read the foregoing answers to Interrogatories and know the content thereof; that there is no single person employed by or otherwise connected with STN who has personal knowledge of all the facts and information requested herein; that said Answers were prepared with the assistance and advice of counsel and the assistance of various employees and representatives of the corporation, upon which I have relied; that the Answers set forth herein, subject to inadvertently or undiscovered errors, are based on, and therefore necessarily limited by, the records and information still in existence, presently recollected, and thus far discovered in the course of the preparation of these Answers; that the foregoing Answers are thus based upon corporate knowledge and are true and correct to the best of my knowledge and belief; that consequently, I reserve the right to make any changes in the Answers if it appears at any time that omissions or errors have been made therein or that more accurate information is available and that subject to the limitations set forth herein, the said Answers are true to the best of my knowledge, information and belief.

**SAINT THOMAS NETWORK**

By: _____
   Michael Schatzlein, M.D.
Title: Chairman


Sworn to and subscribed before me on this the _____ day of _____, 2013.

_____
NOTARY PUBLIC

My Commission Expires: _____

Respectfully submitted,

*[signature: Lela Hollabaugh]*

Lela M. Hollabaugh (TN B.P.R. # 14894)
Amy D. Hampton (TN B.P.R. # 22826)
BRADLEY ARANT BOULT CUMMINGS LLP
1600 Division Street, Suite 700
Nashville, Tennessee 37203
Telephone: (615) 252-2348

*Attorneys for Saint Thomas Network*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served via First Class United States Mail, postage prepaid, upon:

George Nolan
William D. Leader
LEADER, BULSO & NOLAN, PLC
414 Union St., Suite 1740
Nashville, TN 37219

William H. Lassiter, Jr.
John Overton Belcher
LASSITER TIDWELL & DAVIS, PLLC
One Nashville Place
150 4th Ave., North, Suite 1850
Nashville, TN 37219

C.J. Gideon, Jr.
GIDEON, COOPER & ESSARY, PLC
315 Deaderick Street, Suite 1100
Nashville, TN 37238

Mary M. Bers
Senior Counsel
Office of the Attorney General and Reporter
P.O. Box 20207
Nashville, TN 37202

Joseph Ahillen
Assistant Attorney General
Civil Rights and Claims Division
Office of the Attorney General
P.O. Box 20207
Nashville, TN 37202

This the 9th day of April, 2013.

_____
Lela M. Hollabaugh