UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MDL NO. 13-02419-RWZ

IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC.
PRODUCTS LIABILITY LITIGATION

MEMORANDUM OF DECISION

November 25, 2014

ZOBEL, D.J.

Defendants Abbeselom Ghermay, M.D. and Dallas Back Pain Management/Momentum Pain Management ("DBPM") seek dismissal of all claims against them for failure to comply with Texas law (Docket # 1133) and failure to state a claim under Fed. R. Civ. 12(b)(6) (Docket # 1208). For the reasons that follow, the first motion is DENIED and the second is ALLOWED IN PART and DENIED IN PART.

I. **Background**[1]

A. **The Multidistrict Litigation**

This multidistrict litigation stems from an outbreak of fungal meningitis caused by contaminated methylprednisolone acetate ("MPA") manufactured and sold by the New England Compounding Pharmacy, Inc., d/b/a New England Compounding Center ("NECC"). NECC operated a compounding pharmacy in Framingham, Massachusetts, that combined and mixed ingredients to create specific formulations of pharmaceutical

---

[1] A detailed account of the background of the case is set forth in previous opinions of the court. See, e.g., In re New Eng. Compounding Pharm., Inc. Prods. Liability Litig., 496 B.R. 256, 260-263 (D. Mass. 2013). Only a brief summary is outlined here.

products.  In the fall 2012, health officials traced a number of cases of fungal meningitis to injections in and around patients' spinal cords of MPA that had been manufactured by NECC.  NECC initiated a recall of several contaminated batches of MPA before eventually surrendering its pharmacy license and ceasing production of all pharmaceutical products.  NECC filed for Chapter 11 bankruptcy in December 2012.

Lawsuits alleging death or injury caused by contaminated MPA were filed against NECC, affiliated entities and individuals, and/or health care providers in multiple state and federal jurisdictions around the country beginning in November 2012.  In February 2013, the Judicial Panel on Multidistrict Litigation ("JPML") issued an order under 28 U.S.C. § 1407 transferring a number of cases pending in several federal courts to this court for coordinated and consolidated pretrial proceedings; subsequent JPML orders also transferred "tag-along" cases here.  Other cases pending in both federal and state court were likewise transferred to this court via additional transfer orders.  See In re New Eng. Compounding Pharm., Inc. Prods. Liability Litig., 496 B.R. 256 (D. Mass. 2013) (Docket # 176); In re New Eng. Compounding Pharm., Inc. Prods. Liability Litig., Civil Action No. 13-2419-RWZ, 2014 WL 2040139 (D. Mass. May 15, 2014) (Docket # 1131); June 4, 2014, Transfer Order (Docket # 1173).

On November 5, 2013, in accordance with MDL Order No. 6 (Docket # 209), the court-appointed plaintiffs' steering committee filed a master complaint against numerous non-NECC parties, including hospitals, clinics, and health care facilities (as well as their physicians, staff, agents, and employees) that allegedly obtained

contaminated MPA from NECC and administered it to their patients.[2]  See Master Complaint ("Master Compl."), Docket # 545.  Plaintiffs who already had cases on file or who wished to file in the multidistrict litigation thereafter filed short-form complaints to assert facts and claims as set out in the master complaint.

### B. *Henley v. Unifirst Corporation, et. al.*

Plaintiff Brittany Henley filed a short-form complaint in the U.S. District Court for the Northern District of Texas against several defendants, including Dr. Ghermay and DBPM.  Plaintiff alleges that she was administered contaminated NECC MPA by Dr. Ghermay at DBPM in Dallas, Texas, on September 27, 2012, and that she suffered injuries and damages as a result.  Defendants moved to the dismiss the complaint for failure to state a claim, but before the motion was ripe, the case was transferred to this court by the JPML on February 20, 2014.  Defendants have since re-filed their motion along with an additional motion to dismiss for failure to comply with Texas law regarding health care liability claims.  Plaintiff opposed both motions and both are now ripe for decision.

## II. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Plausibility "is not akin to a probability requirement, but

---

[2] The master complaint was intended to be an administrative tool, allowing the allegations and claims against all defendants to be stated in one document.

[requires] more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court accepts as true all factual allegations contained in the complaint, but not legal conclusions. Id.

## III. Discussion

### A. Motion to Dismiss for Failure to Comply with Texas Civil Practice and Remedies Code Chapter 74 (Docket # 1133)

Texas Civil Practice and Remedies Code Chapter 74 ("Chapter 74") requires a plaintiff bringing a health care liability action to furnish "not later than the 120th day after each defendant's answer is filed . . . one or more expert reports, with a curriculum vitae of each expert listed in the report[,] for each physician or healthcare provider against whom a liability claim is asserted." Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). The expert report must "provide[ ] a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." Id. at § 74.351(r)(6). Failure to timely serve an expert report, or provision of a report which the court determines, after a hearing, "does not represent a good faith effort to comply with the definition of an expert report," requires dismissal. Id. at § 74.351(b) and (l); see also Simonson v. Keppard, 225 S.W.3d 868, 871 (Tex. App. 2007).

4

On April 9, 2014, plaintiff served defendants with an expert report authored by Matthew C. Lee, M.D., R. Ph., M.S., along with a copy of his curriculum vitae. Defendants assert that the report is not a good faith effort to comply with § 74.351 because Dr. Lee is not qualified to render an opinion on the standard of care as to Dr. Ghermay and DBPM and his opinion on causation is inadequate and defective. Defendants argue that the statutory time has now elapsed for filing an appropriate expert report and they are therefore entitled to dismissal and sanctions.[3]

Plaintiff, however, counters that section 74.351's expert report requirement does not apply at all in federal court. Federal courts exercising jurisdiction over state law claims – whether diversity jurisdiction, pendent jurisdiction, or related-to bankruptcy jurisdiction – generally apply state law to substantive issues, but federal law to matters of procedure. See Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938) (diversity jurisdiction); Maternally Yours v. Your Maternity Shop, Inc., 234 F.2d 538, 541 n.1 (2d Cir. 1956) ("[I]t is the source of the right sued upon, and not the ground on which federal jurisdiction is founded, which determines the governing law . . . Thus, the Erie doctrine applies, whatever the ground for federal jurisdiction, to any issue or claim that has its source in state law."); In re KMF Actions, 56 F.R.D. 128, 138 (D. Mass. 1972) (same); in re Johnson, 453 B.R. 433, 436 (Bankr. M.D. Fl. 2011) (jurisdiction under 28

---

[3] A defendant must file and serve any objection to the sufficiency of the report within 21 days after the report is served, failing which all objections are waived. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). Here, defendants' objections and motion to dismiss, though ostensibly dated April 30, 2014, were filed on the court's docket on May 16, 2014, beyond the 21 days prescribed by the statute. Moreover, if an expert report is initially determined to be inadequate, the court can grant a plaintiff a 30-day extension to cure any deficiencies, even after the 120-day report deadline. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c). These provisions suggest that defendants' motion must be denied even if § 74.351 were to apply to this case.

5

U.S.C. § 1334(a) and (b)). Where the state law in question directly conflicts with a federal procedural rule, the court must apply the federal rule unless it is unconstitutional. Hanna v. Plumer, 380 U.S. 460, 463- 471 (1965).

The vast majority of federal courts has held that § 74.351 (or its predecessor) do not apply in federal court. In Poindexter v. Bonsukan, 145 F. Supp. 2d 800, 808-810 (E.D. Tex. 2001), the court found that § 74.351's predecessor, Tex. Rev. Civ. Stat. Ann. Art. 4590i, § 13.01, conflicted with Federal Rules of Civil Procedure 26(a)(2) and 37 because its mandatory expert report requirements abrogate the federal court's discretion to manage the timing and content of discovery, as well as administer sanctions and penalties.[4] Numerous other courts have followed suit, similarly holding that § 74.351 is a procedural statute that directly collides with the Federal Rules and thus does not govern in federal cases. See, e.g. Garza v. Scott & White Mem'l Hosp., 234 F.R.D. 617, 622 (W.D. Tex. 2005) (also finding that § 74.351 conflicts with Fed. R. Civ. P. 11); Guzman v. Memorial Herman Hosp. Sys., Civil Action No. H-07-3973, 2008 WL 5273713, at *15 (S.D. Tex. Dec. 17, 2008); Beam v. Nexion Health Management, Inc., No. 206 CV 231, 2006 WL 2844907, at *2-3 (E.D. Tex. Oct. 2, 2006); Nelson v. Myrick, No. Civ. A. 3:04-cv-0828-G, 2005 WL 723459, at *2-4 (N.D. Tex. Mar. 29, 2005); McDaniel v. United States, No. Civ. A. SA-04-CA-0314, 2004 WL 2616305, at *5-9 (W.D. Tex. Nov. 16, 2004).

---

[4] "What matters is that the federal rule is sufficiently broad that it covers the point in dispute. The timing provisions are different; the expert report requirements are different; and the sanctions for noncompliance are different. In each case, the discretion vested in the federal trial judge is abrogated by the state rule. Under Hanna . . . this is precisely the kind of conflict that forces a choice between applying the federal rule of procedure or the state rule. And in that contest, the federal rules must prevail in federal court." Id. at 810.

In support of their position, defendants cite only three cases, all of which are of limited precedential value. In an unpublished decision, Chapman v. United States, 353 Fed. Appx. 911, 913-14 (5th Cir. 2009) (per curiam), the Fifth Circuit affirmed the dismissal of a medical malpractice claim where the plaintiff failed to file an expert report in accordance with § 74.351. Nevertheless, that holding included no discussion on whether the state statute properly applied and is considered to be only dicta. See, e.g., Yates-Williams v. Nihum, 268 F.R.D. 566, 570 (S.D. Tex. 2010); Robinson v. Baxter Healthcare Corp., 724 F. Supp. 2d 840, 845 n. 6 (N.D. Ohio 2010). Defendants also urge the court to follow Cruz v. Chang, 400 F. Supp 2d. 905, 914-15 (W.D. 2005), which, in disagreement with Poindexter, held that the predecessor to § 74.531 did not conflict with federal law and was a substantive requirement that must be applied by federal courts. Cruz, however, has been rejected by several other Texas district courts, e.g., Garza, 234 F.R.D. at 622-23; Beam, 2006 WL 2844907, at *2 ("Notably, every post-Cruz case dealing with this issue has sided with Poindexter."), and was ultimately distinguished by the same judge in a subsequent medical malpractice case finding that the law's revised form, § 74.531, does not apply in federal court. See Mason v. United States, 486 F. Supp. 2d 621, 623-26 (W.D. Tex. 2007) (acknowledging prior ruling in Cruz, but holding that "in light of the recent change in law and the persuasive reasons provided by every district court in Texas to consider this issue . . . § 74.351 does not apply in federal court."). Finally, defendants cite to Prentice v. U.S., 980 F. Supp. 2d 748, 752 (N.D. Tex. 2013), where the court applied § 74.351's expert report requirements to dismiss a pro se plaintiff's medical malpractice claims. But that

7

decision contains little examination of the issue, relies on dicta in Chapman and another court's evaluation of a different provision of Texas law, and makes no mention of the myriad of other federal cases reaching the opposite conclusion.

I find the analysis of Poindexter and its progeny well reasoned and persuasive and join the majority view that § 74.351 is inapplicable in federal court due to direct conflicts with the Federal Rules. As such, defendants' motion to dismiss for plaintiff's failure to comply with the expert report requirements is DENIED.

### B. Motion to Dismiss for Failure to State a Claim (Docket # 1208)

Plaintiff alleges claims against defendants for negligence and gross negligence, violation of the state consumer protection statute (the Texas Deceptive Trade Practices Act), battery, failure to warn, agency, civil conspiracy, and punitive damages. Defendants assert that all these claims should be dismissed for failure to state a claim upon which relief can be granted.

#### 1. Negligence and Gross Negligence

To prove medical negligence under Texas law, a plaintiff must establish "(1) a legally cognizable duty; (2) a breach of that duty; (3) actual injury; and (4) a reasonably close causal connection between the breach and the alleged harm." In re Norplant Contraceptive Products Liability Litigation, 898 F. Supp. 426, 428 (E.D. Texas 1995). To constitute gross negligence, "the act or omission complained of must depart from the ordinary standard of care to such an extent that it creates an extreme degree of risk of harming others," and "the actor must have actual, subjective awareness of the risk involved and choose to proceed in conscious indifference to the rights, safety, or

8

welfare of others." Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue, 271 S.W.3d 238, 248 (Texas 2008).

Defendants argue that plaintiff has failed to allege any of the elements necessary for negligence or gross negligence. Plaintiff points out, however, that the relevant misconduct is set out in detail in the master complaint, which alleges that defendants had a duty to:

- exercise reasonable care to ensure that the drugs they purchased to administer to their patients were procured from drug companies that complied with pharmaceutical laws, made safe and effective drugs, and utilized proper quality control, safety, and sterility measures;

- exercise reasonable care to avoid administering contaminated drugs, or drugs they knew or should have known to be contaminated, to plaintiff;

- provide plaintiff with reasonable care and treatment;

- obtain informed consent from the plaintiff for the procedure performed, adequately and accurately describing the nature and risks of the procedure, including the drugs that were to be administered; and

- inform plaintiff of the source of the drug (an unaccredited, mass producing, out-of state, compounding pharmacy, unregulated by the FDA) and the dangers associated therewith.

See Master Compl. at ¶¶ 226-232. The master complaint further alleges that defendants breached these duties by, among other things, failing to exercise reasonable and prudent care to ensure that the drug they purchased and provided to plaintiff were made and sold in compliance with all applicable pharmaceutical laws; failing to appropriately investigate NECC prior to procuring drugs from the pharmacy; failing to follow certain policies and procedures to ensure such drugs were safe; failing to adequately supervise and train employees and agents who ordered the drugs; failing

9

to promptly notify plaintiffs that they were injected with potentially contaminated steroids; and generally failing to exercise reasonable care or conduct due diligence to ensure they were not injecting contaminated and dangerous drugs into their patients. See id. at ¶ 234. Plaintiff maintains, via the master complaint, that these breaches proximately caused her injuries and that defendants' actions "went beyond mere thoughtlessness, inadvertence or error of judgment," but rather "constituted such utter disregard for the rights of others, and such utter disregard for prudence, that they amount to complete neglect of the safety of patients." Id. at ¶¶ 236-239.

Such allegations are sufficient to make out claims for negligence and gross negligence under Texas law. Defendants' motion is therefore denied as to these claims.

### 2. Violation of Texas Deceptive Trade Practices Act

Plaintiff alleges that defendants violated Chapter 17 of the Texas Business and Commercial Code, also known as the Deceptive Trade Practices Act ("DTPA"), Tex. Bus. & Com. Code Ann. § 17.41, et seq. Under the DTPA, a consumer can bring an action for economic damages or mental anguish from the use or employment by any person of a false, misleading or deceptive act or practice that is specifically enumerated in the statute and relied on by the consumer to his/her detriment. Id. at § 17.50. The list of "false, misleading, or deceptive acts or practices," includes "causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services," "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have,"

"representing that goods or services are of a particular standard, quality or grade . . . if they are of another," "failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed." Id. at § 17.46(b)(2), (5), (7), and (24).

The master complaint alleges that defendants are suppliers, advertisers, and sellers who engaged in various unfair or deceptive acts with respect to the contaminated NECC drugs. Plaintiff asserts that defendants represented that "the products administered had characteristics, uses and benefits that they did not have," "represented that their products were of a particular, standard, quality and grade that they either knew or should have known was not of the standard, quality or grade described," "failed to provide accurate disclosures of all material information before Plaintiff[ ] agreed to be injected with an NECC Contaminated Drug," willfully and knowingly withheld important safety and product information, concealed the MPA's dangerous properties and risks, represented their patients were receiving FDA-approved Depomedrol instead of NECC's compounded MPA, and "created a likelihood of confusion and misunderstanding." Master Compl. at ¶ 246-252. The master complaint also states that plaintiff relied upon defendants' misrepresentations and omissions in determining which product to use and that, but for the deceptive conduct, plaintiff would not have purchased and allowed for the administration of the NECC MPA. Id. at ¶¶ 260, 251, 263, and 268.

11

Defendants, however, argue that plaintiff's DTPA claim is barred by § 74.004(a) of the Texas Civil Practice & Remedies Code, which provides that:

> Notwithstanding any other law, Sections 17.41-17.63, Business & Commerce code, do not apply to physicians or health care providers with respect to claims for personal injury or death resulting, or alleged to have resulted from negligence on the part of any physician or health care provider.

Defendants maintain that since they are health care providers and plaintiff's allegations flow from medical negligence, the DTPA claim must be dismissed.

Texas courts distinguish between DTPA claims based on negligence from other DTPA claims. MacGregor Medical Ass'n v. Campbell, 985 S.W.2d 38, 40 (Texas 1998). "There can be no DTPA claim against a physician for damages of personal injury or death if the damages result, or are alleged to result, from the physician's negligence; however if the alleged DTPA claim is not based on the physician's breach of the accepted standard of medical care, section [74.004(a)] does not preclude suit for violation of the DTPA." Sorokolit v. Rhodes, 889 S.W.2d 239, 242 (Tex. 1994). To determine whether a DTPA claim is based on negligence, the court must look to the underlying nature of the claim, MacGregor, 985 S.W.2d at 40; "claims that a physician or health care provider was negligent may not be recast as DTPA actions to avoid the standards set forth in [the medical liability statute, Chapter 74]," Sorokolit, 889 S.W.2d at 242.

This case presents a close question: a few of plaintiff's allegations suggest breaches of some standard of care, but most do not involve negligence or lapses in professional judgment and treatment. While there is potential for overlap with health

12

care liability here, the essence of plaintiff's DTPA claim is not that the medical procedure or defendants' performance thereof were deficient but that defendants, as sellers, sold MPA to plaintiff on the basis of knowing and willful misrepresentations and omissions about that product. Plaintiff could arguably prosecute and prove her DTPA claim even absent any medical negligence on the part of defendants. See, e.g., Sorokolit, 889 S.W.2d at 242-43 (permitting DTPA claims that did not require a determination of whether a physician failed to meet a standard of medical care; "each claim, by its nature, concerns intentional deception and intentional breach of express guarantees."). As such, the DTPA claim is sufficiently distinguishable from plaintiff's medical negligence claims and survives defendants' motion to dismiss.

### 3. Battery and Failure to Warn

Plaintiff alleges separate claims for battery and failure to warn against defendants. Under Texas law, a physician who provides treatment without consent commits a battery. Miller ex rel. Miller v. HCA, Inc., 118 S.W.3d 758, 767 (Texas 2003). Here, however, plaintiff does not allege that she did not authorize defendants to perform an epidural steroid injection procedure. Instead, she claims that she was "unaware of the substantial health and safety risk inherent in the use of NECC Contaminated Drugs" and "did not consent to the injection of contaminated drugs into [her body]." Master Compl. at ¶ 297. In short, plaintiff does not indicate a lack of consent to the procedure, but contends that she was not adequately informed of the use of compounded or contaminated medication in that approved procedure.

Plaintiff's "failure to warn" claim contains similar allegations. She asserts that

13

defendants failed to inform her that she was being administered "an unsafe, unreasonably dangerous drug compounded by NECC," and that the consent form she was provided "failed to inform [her] of the risks and benefits of the procedure[] before it was performed." Master Compl. ¶ 301-302.

Such allegations are more appropriately characterized as an informed consent claim under Tex. Civ. Prac. & Rem. Code § 74.01. That section provides:

> In a suit against a physician or health care provider involving a health care liability claim that is based on the failure of the physician or health care provider to disclose or adequately disclose the risks and hazards involved in the medical care or surgical procedure rendered by the physician or health care provider, the only theory on which recovery may be obtained is that of negligence in failing to disclose the risks or hazards that could have influenced a reasonable person in making a decision to give or withhold consent.

Therefore, the battery and failure to warn claims will not be dismissed but rather treated as an informed consent claims under Chapter 74.

### 4. Agency

Plaintiff seeks to hold defendants vicariously liable for the conduct of NECC, alleging that NECC was acting as defendants' agent. Plaintiff claims that a consensual fiduciary relationship arose when defendants contracted with NECC to procure compounded drugs from NECC for their patients, and that NECC consented to act as the defendants' agent, and in their interest, when compounding and delivering its compounded drugs. See Master Compl., at ¶¶ 330-336. The master complaint also alleges that the defendants controlled the procurement of the drugs from NECC and that NECC acted within the scope of its agency when it negligently compounded drugs

14

on behalf of the defendants.  Id.

Plaintiff neither specifies which theory of vicarious liability under Texas law she is asserting nor identifies any elements of such a claim.  Nonetheless, under Texas law, "agency is the consensual relationship between two parties when one, the agent, acts on behalf of the other, the principal, and is subject to the principal's control." Happy Indus. Corp. v. American Specialties, Inc., 983 S.W.2d 844, 852 (Tex. App. 1998).  To prove agency, plaintiff "must establish that the principal has both the right: (1) to assign the agent's task; and (2) to control the means and details of the process by which the agent will accomplish that task."  Id.  Here, plaintiff falls short.  The complaint contains no allegations indicating that defendants exercised any control over NECC or its conduct at all, let alone had the right to assign NECC tasks or control the manner and means by which NECC accomplished such tasks.  Accordingly, defendants' motion to dismiss is allowed as to the agency claim .

### 5. Civil Conspiracy

Plaintiff alleges that defendants acted in concert with the NECC to circumvent Massachusetts law and the requirements of the Massachusetts Board of Registration in Pharmacy by using "bogus" patient lists to obtain bulk orders of MPA instead of providing patient-specific names, information, and prescriptions as required by law. See Master Compl. at ¶¶ 337–339.  Plaintiffs fail, however, to allege facts regarding how these defendants conspired with NECC, beyond generally stating that "upon information and belief" they engaged in conduct similar to specific actions purportedly taken by various clinic defendants from Tennessee.  Master Compl. at ¶ 349.  More

15

importantly, Texas law requires that the alleged wrongful act underlying a civil conspiracy claim be actionable against the individual conspirators. Leigh v. Danek Medical, Inc., 28 F. Supp. 2d 401, 404 (N.D. Tex. 1998) (holding that "[s]ince there is no private right of action under the FDCA, there can be no conspiracy claim based on such a violation"). See also Fisher v. Yates, 953 S.W.2d 370, 381 (Tex. App. 1997) ("The alleged wrongful act must be actionable against the individual conspirators . . . Conspiracy is a derivative tort."); Stroud v. VBFSB Holding Corp., 917 S.W.2d 75, 82 (Tex. App. 1996) ("Generally, if an act by one person cannot give rise to a cause of action, the same act cannot give rise to a cause of action when done pursuant to an agreement between several people."). Even if plaintiff's allegations that the defendants conspired with NECC to violate Massachusetts pharmacy laws are true, it is unclear that such violations give rise to an actionable tort for plaintiff. Plaintiff's civil conspiracy claim is dismissed.

### 6. Punitive Damages

Finally, defendants insist without elaboration, that plaintiff has failed to state a claim for punitive damages. Punitive, or exemplary, damages may be recovered under the Texas law when supported by "express allegations of willfulness, malice, or gross negligence that go beyond the allegations necessary to recover compensatory damages." In re Jacobs, 300 S.W.3d 35, 43 (Tex. App. 2009). See also Andress v. Meah Investments No. 2, Ltd., No. 01-07-00792-CV, 2009 WL 2882930, at *9 (Tex. App. Sept. 10, 2009) ("Exemplary damages are levied against a defendant to punish the defendant for outrageous, malicious, or otherwise morally culpable conduct.")

(internal citation omitted). As noted above, plaintiff has sufficiently alleged a claim for gross negligence. The master complaint also includes various assertions that defendants' actions "went beyond mere thoughtlessness, inadvertence or error of judgment," Master Compl. at ¶ 237, and "constituted such utter disregard for the rights of others, and such utter disregard for prudence, that they amount to complete neglect for the safety of patients," id. at ¶ 239. Plaintiff also alleges that defendants willfully and knowingly failed to abide by consumer safety regulations and withheld important safety information from patients. Id. at ¶ 249-50. Such allegations are enough to sustain plaintiff's punitive damages claims at this early stage.

## IV. Conclusion

Defendants' motion to dismiss for failure to comply with Texas Civil Practice and Remedies Code Chapter 74 (Docket # 1133) is DENIED.

Defendants' motion to dismiss for failure to state a claim (Docket # 1208) is ALLOWED as to plaintiff's claims for agency and civil conspiracy and DENIED as to all other claims. Plaintiff's allegations with respect to battery and failure to warn will be treated as an informed consent claim under Chapter 74.

    November 25, 2014                      /s/Rya W. Zobel
          DATE                                  RYA W. ZOBEL
                                                   UNITED STATES DISTRICT JUDGE