# EXHIBIT A

*JOINT CHAPTER 11 PLAN OF NEW ENGLAND COMPOUNDING PHARMACY, INC.*

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MASSACHUSETTS
### EASTERN DIVISION

|  |  |
|---|---|
| In re:<br>NEW ENGLAND COMPOUNDING<br>PHARMACY, INC.,<br><br>                   Debtor. | Chapter 11<br><br>Case No. 12-19882-HJB |

## JOINT CHAPTER 11 PLAN OF NEW ENGLAND COMPOUNDING PHARMACY, INC.

**DUANE MORRIS LLP**

Paul D. Moore, Esq.
100 High Street
Suite 2400
Boston, MA 02110
Telephone: (857) 488-4200
Facsimile: (857) 401-3057

*Chapter 11 Trustee*

**BROWN RUDNICK LLP**

William R. Baldiga, Esq.
Kiersten A. Taylor, Esq.
One Financial Center
Boston, MA 02111
Telephone: (617) 856-8200
Facsimile: (617) 856-8201


David J. Molton, Esq.
7 Times Square
New York, NY 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801

*Counsel to the Official Committee
of Unsecured Creditors*

Dated: December 3, 2014

<u>**TABLE OF CONTENTS**</u>

**ARTICLE I. DEFINITIONS AND INTERPRETATION** ........................................................ 1

**ARTICLE II. ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS** ........... 18

2.01    Administrative Expense Claims ........................................................ 18

2.02    Deadlines to Assert Administrative Expense Claims. ................................................. 18

2.03    Priority Tax Claims ........................................................ 19

**ARTICLE III. CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS** ................................ 19

3.01    Classification of Claims and Equity Interests ........................................................ 19

**ARTICLE IV. TREATMENT OF CLAIMS AND EQUITY INTERESTS** ........................................ 20

4.01    Class A - Priority Non-Tax Claims ........................................................ 20

4.02    Class B - Miscellaneous Secured Claims ........................................................ 20

4.03    Class C - General Unsecured Claims ........................................................ 20

4.04    Class D - Tort Claims ........................................................ 20

4.05    Class E - Subordinated Claims ........................................................ 21

4.06    Class F - Equity Interests ........................................................ 21

**ARTICLE V. SETTLEMENT OF TORT CLAIMS  AND THE NECC TORT TRUST** ................... 22

5.01    Settlement and Compromise ........................................................ 22

5.02    Exhaustion of Insurance Policies ........................................................ 22

5.03    Execution of Tort Trust Agreement ........................................................ 22

5.04    Purpose of Tort Trust ........................................................ 22

5.05    Assets of the Tort Trust ........................................................ 22

5.06    Governance of the Tort Trust ........................................................ 23

5.07    Role of the Tort Trustee ........................................................ 23

5.08    Investments ........................................................ 23

5.09    Fees, Costs and Expenses of the Tort Trust ........................................................ 24

5.10    Distribution of the Tort Trust Assets ........................................................ 24

5.11    Resolving Liens Other than Imposed by the Medicare Act and States' Medicaid and Worker Compensation Statutes ........................................................ 26

5.12    Time of Tort Trust Distributions ........................................................ 26

5.13    Tax Treatment of Tort Trust ........................................................ 26

5.14    Resolution of the Claims of Minors In Accordance With the Tort Trust ................... 29

5.15    Access to Claims Information ........................................................ 29

5.16    Distribution of Surplus ........................................................ 30

5.17     Payments to Post-Effective Date Debtor ................................................................ 30

**ARTICLE VI. MEANS FOR IMPLEMENTATION AND EXECUTION OF THIS PLAN ........... 30**

6.01     Management of the Post-Effective Date Debtor ................................................ 30

6.02     Duties and Powers of the Post-Confirmation Officer ................................. 31

6.03     Other Actions ................................................................................................ 33

6.04     Expense Fund ................................................................................................ 33

6.05     Distributions Under this Plan ....................................................................... 33

6.06     Disallowance of Multi-Claimant Proofs of Claim ...................................... 34

6.07     Procedures for Treating Disputed Claims. ................................................... 34

6.08     Closing of the Chapter 11 Case ................................................................... 35

6.09     Cancellation of Existing Agreements ........................................................... 35

6.10     Continued Corporate Existence .................................................................... 35

6.11     Effectuating Documents and Further Transactions ...................................... 36

**ARTICLE VII. PROVISIONS GOVERNING DISTRIBUTIONS ........................................................ 36**

7.01     Distribution Record Date ............................................................................. 36

7.02     Delivery of Distributions and Undeliverable Distributions ........................ 36

7.03     De Minimus Distributions. ........................................................................... 37

7.04     Transactions on Business Days .................................................................... 37

7.05     Allocation of Plan Distribution Between Principal and Interest .................. 37

7.06     Withholding and Reporting Requirements ................................................... 37

**ARTICLE VIII. EXECUTORY CONTRACTS AND UNEXPIRED LEASES ................................ 38**

8.01     Executory Contracts and Unexpired Leases ................................................ 38

8.02     Insurance Policies and Agreements ............................................................. 38

8.03     Approval of Rejection of Executory Contracts and Unexpired Leases ....... 38

8.04     Rejection Claims ........................................................................................... 38

8.05     Rejection Claims of Officers and Directors of the Debtor .......................... 39

**ARTICLE IX. EFFECTIVENESS OF THIS PLAN ................................................................................. 39**

9.01     Conditions to Confirmation ......................................................................... 39

9.02     Date of Effective Date ................................................................................. 39

9.03     Satisfaction of Conditions ........................................................................... 39

9.04     Occurrence of Effective Date ...................................................................... 39

9.05     Substantial Consummation Upon Effective Date ........................................ 39

**ARTICLE X. EFFECT OF CONFIRMATION .......................................................................................... 39**

10.01 Vesting of Assets .................................................................................... 39

10.02 Binding Effect ......................................................................................... 40

10.03 Exculpations and Limitation of Liability ................................................ 40

10.04 Preservation and Non-Waiver of Estate Defenses and Objections and Related Rights Reserved for the Debtor, its Successors in Interest, Creditors and Parties in Interest 40

10.05 Releases ................................................................................................... 41

10.06 Injunctions .............................................................................................. 44

10.07 Covenant Not to Sue ............................................................................... 46

10.08 Covenant Not to Sue (Shareholder and Affiliate Released Parties) ......... 46

10.09 Terms of Pre-Plan Injunction and Stays .................................................. 46

**ARTICLE XI. RETENTION OF JURISDICTION** ............................................... **46**

11.01 Jurisdiction of Bankruptcy Court ............................................................ 46

**ARTICLE XII. MISCELLANEOUS PROVISIONS** ............................................. **48**

12.01 Reporting of Shareholder Settlement Payments ...................................... 48

12.02 Tax Information to be Provided to Shareholders ...................................... 48

12.03 Refunds ................................................................................................... 48

12.04 Withdrawal of the Reference ................................................................... 48

12.05 Dissolution of the Official Committee ..................................................... 48

12.06 Quasi-Judicial Immunity ......................................................................... 49

12.07 Payment of Statutory Fees ...................................................................... 49

12.08 Effectuating Documents and Further Transactions .................................. 49

12.09 Exemption from Transfer Taxes ............................................................... 49

12.10 Elimination of Vacant Classes ................................................................. 49

12.11 Nonconsensual Confirmation ................................................................... 49

12.12 Modification of Plan ................................................................................ 49

12.13 Revocation or Withdrawal of Plan ........................................................... 50

12.14 Severability ............................................................................................. 50

12.15 Schedules and Exhibits ........................................................................... 50

12.16 Successors and Assigns ........................................................................... 50

12.17 Notices .................................................................................................... 51

12.18 No Admission .......................................................................................... 51

**ARTICLE XIII. CONFIRMATION REQUEST** ................................................... **51**

Paul D. Moore, as chapter 11 trustee (the "**Chapter 11 Trustee**") of New England Compounding Pharmacy, Inc., a Massachusetts corporation, the above-captioned debtor (the "**Debtor**") and the Official Committee of Unsecured Creditors (the "**Official Committee**" and together with the Chapter 11 Trustee, the "**Plan Proponents**") propose the following chapter 11 plan (the "**Plan**") pursuant to section 1121(a) of title 11 of the United States Code (the "**Bankruptcy Code**"). This Plan proposes to resolve all Claims against and Equity Interests in the Debtor. ***IN PARTICULAR, CREDITORS AND PARTIES IN INTEREST SHOULD REVIEW SECTIONS 10.05 AND 10.06 OF THIS PLAN, WHICH PROVIDE FOR THIRD-PARTY RELEASES AND INJUNCTIONS THAT MAY AFFECT THE RIGHT TO PURSUE CLAIMS AGAINST NON-DEBTOR PARTIES AFTER THE PLAN IS CONFIRMED.*** The Plan Proponents reserve the right to, among other things, alter, amend, modify, revoke or withdraw this Plan prior to the Effective Date as set forth in section 12.12 and 12.13 of this Plan.

## ARTICLE I.
## DEFINITIONS AND INTERPRETATION

### A.  **Definitions.**

The following terms used herein shall have the respective meanings defined below (such meanings to be equally applicable to both the singular and plural):

**1.01** *Additional Tort Trust Assets*. Any Cash or Cash equivalent realized by the Estate Representative, solely in his capacity as such, after the Confirmation Date from or as a result of Settlement Agreements, including, but not limited, to the Tax Contributions (as defined in the Shareholder Settlement Agreement), and the proceeds of the sale, monetization or liquidation of Estate assets or other assets that the Estate Representative is entitled to sell for the benefit of the Estate in accordance with the Settlement Agreements or Section 6.02 hereof, together with all earnings thereon, less the amount the Estate Representative determines should be reserved as Cash.

**1.02** *Administrative Expense Claim.* Any right to payment constituting a cost or expense against either of the Debtor or its Estate, that is given administrative priority status pursuant to sections 503(b) and 507(a)(1) and (2) of the Bankruptcy Code, including, without limitation, the actual and necessary costs and expenses of preserving the Estate from or after the Petition Date, professional fees and expenses incurred by the Debtor, the Chapter 11 Trustee and the Official Committee, any indebtedness or obligations properly incurred or assumed by the Debtor from or after the Petition Date and any fees or charges assessed against the Estate under 28 U.S.C. § 1930.

**1.03** *Adversary Proceeding.* The adversary proceeding in the Bankruptcy Court in which the Chapter 11 Trustee is asserting various claims and causes of action against the Adversary Proceeding Defendants, and certain other defendants, styled as *Moore v. Cadden, et al.*, Adversary Proceeding No. 13-01040 (Bankr. D. Mass.).

**1.04** *Adversary Proceeding Defendants.* The Shareholders and the Affiliate Defendants.

**1.05**    ***Affiliate Defendants.***   Ameridose, LLC, GDC Properties Management, LLC and Medical Sales Management, Inc.

**1.06**    ***Affiliated Entities***.   The Entities set forth in Schedule 1.06 hereto, affiliates of NECC or the Shareholders.

**1.07**    ***Allowed.***  (i) Any Claim against the Debtor which has been listed by the Debtor in the Schedules, as such Schedules may be amended by the Chapter 11 Trustee from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim has been filed, (ii) any timely filed Claim as to which no objection to allowance has been interposed or as to which other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective holder, or (iii) any Claim expressly allowed by a Final Order or under and in accordance with this Plan (only to the extent so allowed).

**1.08**    ***Ameridose***.  Ameridose LLC.

**1.09**    ***Ameridose Excess Policies***.   (i) The Commercial Excess/Umbrella Liability Policy PMIC issued to Ameridose, as named insured, under policy number UCL 0083404 04, for the policy period of March 1, 2011 to March 1, 2012; and (ii) the Commercial Excess/Umbrella Liability Policy PMIC issued to Ameridose, as named insured, under policy number UCL 0083404 05, for the policy period of March 1, 2012 to March 1, 2013.

**1.10**    ***Ameridose Parties.***   Ameridose, and any of its directors, officers, members, shareholders, insurers, owners, principals, employees, attorneys, predecessors, successors and assigns, that are released from Claims under the Ameridose Settlement Agreement.

**1.11**    ***Ameridose Policies***.  The Ameridose Excess Policies and  the Ameridose Primary Policies.

**1.12**    ***Ameridose Primary Policies***.   (i) The Businessowners Special Policy PMIC issued to Ameridose, as named insured, under policy number BOP 0083404 05, for the policy period of March 1, 2011 to March 1, 2012; and (ii) the Businessowners Special Policy PMIC issued to Ameridose, as named insured, under policy number BOP 0083404 06, for the policy period of March 1, 2012 to March 1, 2013.

**1.13**    ***Ameridose Settlement Agreement***.  The Ameridose, LLC, Insurance Settlement, Release and Injunction Agreement dated as of November 24, 2014 by and among the Chapter 11 Trustee, PMIC (but no other Ameridose insurer), and Ameridose, substantially in the form included in the Plan Supplement.

**1.14**    ***Ameridose Settlement Payment***.  Cash  in the amount of $10,000,000 to be paid to the Estate pursuant to the Ameridose Settlement Agreement.

**1.15**    ***Bankruptcy Code.***  Title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Case.

2

**1.16**  ***Bankruptcy Court.***   The United States Bankruptcy Court for the District of Massachusetts, having jurisdiction over the Chapter 11 Case.

**1.17**  ***Bankruptcy Rules.***   The Federal Rules of Bankruptcy Procedure as promulgated by the Supreme Court of the United States under section 2075 of title 28 of the United States Code, as amended from time to time, applicable to the Chapter 11 Case, and any Local Rules of the Bankruptcy Court.

**1.18**  ***Bar Date.***   January 15, 2014 at 4:00 p.m. (Prevailing Eastern Time).

**1.19**  ***Bar Date Order.***   In the Chapter 11 Case, the *Order (I) Establishing Deadline for Submitting Proofs of Claim, (II) Approving Certain Additional Requirements and Procedures for Personal Injury Tort and Wrongful Death Claims and (III) Approving Form and Manner of Notice Thereof* dated September 27, 2013, together with all exhibits thereto [Chapter 11 Case Docket No. 582].

**1.20**  ***Business Day.***   Any day other than a Saturday, a Sunday or any other day on which banking institutions in Boston, Massachusetts are required or authorized to close by law or executive order.

**1.21**  ***Cash.***   Legal tender of the United States of America.

**1.22**  ***Chapter 11 Case.***   The case under chapter 11 of the Bankruptcy Code commenced by the Debtor on December 21, 2012 in the Bankruptcy Court and styled as *In re New England Compounding Pharmacy, Inc.*, Case No. 12-19882.

**1.23**  ***Chapter 11 Trustee.***   Paul D. Moore, solely in his capacity as chapter 11 trustee for the Debtor.

**1.24**  ***Claim.***   The meaning set forth in section 101(5) of the Bankruptcy Code.

**1.25**  ***Claimant***.   A holder of a Claim.

**1.26**  ***Claims Resolution Facility.***   The Personal Injury and Wrongful Death Claims Resolution Facility established by the Claims Resolution Facility Procedures.

**1.27**  ***Claims Resolution Facility Procedures***.   The Claims Resolution Facility Procedures substantially in the form included in the Plan Supplement.

**1.28**  ***Class.***   Any group of Claims or Equity Interests classified by this Plan pursuant to section 1122(a)(1) of the Bankruptcy Code.

**1.29**  ***Class C Cash.***   Cash in an aggregate amount equal to 90% of the Allowed Class C Claims.

**1.30**  ***Class C Claims***.   General Unsecured Claims that are classified under Class C.

3

**1.31** *Class D Claims.* Tort Claims that are classified under Class D, including Tort Claims held by any Entity that is subrogated to the rights of a Tort Claimant pursuant to section 4.04(iii) hereof.

**1.32** *Class D Consortium Claim.* Any Class D Claim arising from loss of consortium.

**1.33** *Class D Estate Claim.* Any Class D Claim filed on behalf of a decedent's estate.

**1.34** *Class E Cash.* The Cash, if any, remaining in the Tort Trust after all Allowed Tort Claims, fees, expenses and any other payments required to be paid or satisfied therefrom have been fully paid or satisfied.

**1.35** *Class E Claims.* Subordinated Claims that are classified under Class E.

**1.36** *Collateral.* Any property or interest in property of the estate of the Debtor subject to a lien, charge or other encumbrance to secure the payment or performance of a Claim, which lien, charge or other encumbrance is not subject to avoidance under the Bankruptcy Code.

**1.37** *Common Benefit Fund.* The common benefit fund to be created pursuant to Order No. 8 of the MDL Court in the MDL Proceeding, dated August 13, 2014 [MDL Proceeding Docket No. 1333].

**1.38** *Conditional Payment.* Any payment made pursuant to Section 1395y(b)(2) of the Medicare Act.

**1.39** *Confirmation Date.* The date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket in the Chapter 11 Case.

**1.40** *Confirmation Hearing.* The hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan.

**1.41** *Confirmation Order.* The order confirming this Plan.

**1.42** *Contributing Parties.* The Shareholders and the Other Contributing Parties.

**1.43** *Contributor and Affiliate Released Claims*. Contributor and Affiliate Released Claims has the meaning set forth in the Shareholder Settlement Agreement.

**1.44** *Creditor.* Creditor has the meaning set forth in section 101(10) of the Bankruptcy Code.

**1.45** *Debtor.* New England Compounding Pharmacy, Inc., as debtor in the Chapter 11 Case.

**1.46** *Disclosure Statement.* The disclosure statement relating to this Plan, including, without limitation, all exhibits thereto, as may be amended or modified from time to time, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code

**1.47** *Disclosure Statement Hearing.* The hearing held by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code to consider approval of the Disclosure Statement.

**1.48** *Disclosure Statement Order.* The order of the Bankruptcy Court entered pursuant to section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017(b) approving the Disclosure Statement.

**1.49** *Disputed.* With respect to any Claim which has not been Allowed pursuant to this Plan or a Final Order:

(a)     if no proof of claim has been filed by the applicable deadline: (i) a Claim that has been or hereafter is listed on the Schedules as disputed, contingent or unliquidated; or (ii) a Claim that has been or hereafter is listed on the Schedules as other than disputed, contingent or unliquidated, but as to which the Chapter 11 Trustee, the Tort Trustee, the Official Committee or any other party in interest has interposed an objection or request for estimation which has not been withdrawn or determined by a Final Order;

(b)     if a proof of claim or request for payment of an Administrative Expense Claim, other than applications by professionals under section 330 of the Bankruptcy Code and fees payable pursuant to 28 U.S.C. § 1930, has been filed by the applicable deadline set by the Bankruptcy Court for the same: (i) a Claim or Administrative Expense Claim for which no corresponding Claim has been or hereafter is listed on the Schedules; (ii) a Claim or Administrative Expense Claim for which a corresponding Claim has been or hereafter is listed on the Schedules as other than disputed, contingent or unliquidated, but the nature or amount of the Claim as asserted in the proof of claim varies from the nature and amount of such Claim as listed on the Schedules; (iii) a Claim or Administrative Expense Claim for which a corresponding Claim has been or hereafter is listed on the Schedules as disputed, contingent or unliquidated; or (iv) a Claim or Administrative Expense Claim for which a timely objection or request for estimation is interposed by the Chapter 11 Trustee, the Official Committee or other party in interest which has not been withdrawn or determined by a Final Order.

**1.50** *Distribution Record Date.* The date of entry of the Disclosure Statement Order, fixed pursuant to Bankruptcy Rule 3018(a).

**1.51** *District Court.* The Article III court in and for the District of Massachusetts, including, but not limited, to the District Court for the District of Massachusetts.

**1.52** *Drugs.* MPA and other products compounded, designed, marketed, sold, distributed, fabricated, advertised, supplied, produced, or formulated by the Debtor.

**1.53** *Effective Date.* The date upon which all conditions to effectiveness set forth in Section 9.02 of this Plan have been satisfied or waived.

**1.54** *Entity.* An individual, corporation, partnership, limited liability company, association, joint stock company, joint venture, estate, trust, unincorporated organization, government or any political subdivision thereof, or other person.

**1.55**  *Equity Holder.*  Holder of an Equity Interest.

**1.56**  *Equity Interest.*  The interest of any holder of an equity security of NECC represented by any issued and outstanding shares evidencing a present ownership interest in NECC, all other interests in NECC of any type (including, without limitation, warranty, options and instruments subject to conversion to interests), and any claims arising out of or pursuant to such interests.

**1.57**  *Escrow Agreement(s).*  The escrow agreement(s), if any, entered into by and between an escrow agent, the Chapter 11 Trustee and one or more of the Contributing Parties.

**1.58**  *Estate.*  The estate of the Debtor created pursuant to section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

**1.59**  *Estate Causes of Action.*  All of the Estate's claims for relief, causes of action, contested matters and lawsuits, whether known or unknown, existing or hereafter arising, in law, equity or otherwise, based in whole or in part on any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Case, including through the Effective Date, including, without limitation, (i) those arising under chapter 5 of the Bankruptcy Code, (ii) any avoidance or fraudulent transfer or conveyance under applicable state law, and (iii) those relating to the compounding, design, marketing, sale, distribution, fabrication, advertising, supply, production, formulation, use, administration, labeling or ingestion of any product produced, sold and/or distributed by the Debtor, including, but not limited to, the Drugs, and all insurance policies owned by the Debtor; *provided, however*, that Estate Causes of Action shall not include any causes of action the Estate may hold against any Estate Representative.

**1.60**  *Estate Parties.*  The Trustee, the Debtor, Estate, the Official Committee, the Estate Representative(s), and each of their respective successors and assigns.

**1.61**  *Estate Representative.*  The Chapter 11 Trustee or any successor in interest to the Chapter 11 Trustee in such capacity, including but not limited to the Post-Confirmation Officer, whether such successor is appointed under this Plan, the Confirmation Order or otherwise.

**1.62**  *Expense Fund.*  The fund that may be established within the Tort Trust under, and subject to the provisions of, Section 6.04 hereof.

**1.63**  *Expense Fund Administrator.*  The person that may be appointed by the Estate Representative to administer the Expense Fund, solely in his or her capacity as such.

**1.64**  *Expense Fund Amount.*  Cash in such amount as the Estate Representative, in consultation with the Official Committee (if the Official Committee has not been dissolved), determines to be necessary or appropriate to be paid to the Expense Fund Administrator to fund any Expense Fund that may be established within the Tort Trust.

**1.65**  *Final Order.*  An order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the applicable subject matter hereof which has not been reversed, stayed, modified or amended and as to which (a) any right to appeal or seek certiorari, review, reargument, stay or rehearing has expired and no appeal or petition for certiorari, review,

reargument, stay or rehearing is pending, or (b) an appeal has been taken or petition for certiorari, review, reargument, stay or rehearing has been filed and (i) such appeal or petition for certiorari, review, reargument, stay or rehearing has been resolved by the highest court to which the order or judgment was appealed or from which certiorari, review, reargument, stay or rehearing was sought or (ii) the time to appeal further or seek certiorari, review, reargument, stay or rehearing has expired and no such further appeal or petition for certiorari, review, reargument, stay or rehearing is pending; provided, however, that the possibility that a motion pursuant to Rules 59 and 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9023 and 9024 may be filed relating to such order shall not cause such order to not be a Final Order.

**1.66** ***GDC.*** GDC Properties Management, LLC, and any of its directors, officers, members, managers, shareholders, owners, principals, employees, attorneys, predecessors, successors and assigns, each acting solely in their respective capacity as such.

**1.67** ***GDC Policies.*** (i) The Commercial Lines Insurance Policy Preferred Mutual issued to GDC, as named insured, under policy number CPP 0150530884 for the policy periods of September 27, 2011 to September 27, 2012, (ii) the Commercial Lines Insurance Policy Preferred Mutual issued to GDC, as named insured, under policy number CPP 0160530884 for the policy periods of September 27, 2012 to September 27, 2013, and (iii) any other known or unknown insurance policies issued by Preferred Mutual to GDC prior to April 30, 2014.

**1.68** ***GDC Released Parties.*** All Persons and Entities released from Claims under the GDC Settlement Agreement.

**1.69** ***GDC Settlement Agreement.*** The GDC Insurance Settlement and Release Agreement dated as of April 30, 2014 by and among the Chapter 11 Trustee, GDC and the Individual GDC Insureds and Preferred Mutual [Chapter 11 Case Docket No. 714-2], as approved by the Bankruptcy Court at Chapter 11 Case Docket No. 970.

**1.70** ***GDC Settlement Payment.*** Cash in the amount of $3,750,000 paid to the Estate pursuant to the GDC Settlement Agreement.

**1.71** ***General Unsecured Claim.*** General unsecured claims that are not Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claim, Miscellaneous Secured Claims, Tort Claims or Subordinated Claims.

**1.72** ***High Point.*** High Point Surgery Center, Surgery Center Associates of High Point, LLC, and High Point Regional Health f/k/a High Point Regional Health System, d/b/a High Point Regional Hospital, and all of their respective directors, officers, members, shareholders, owners, principals, employees, medical staff, contractors, attorneys, affiliates, parents, subsidiaries, predecessors, successors and assigns, each acting in their respective capacity as such.

**1.73** ***High Point Policy.*** The Healthcare Organizations Lead Excess & Umbrella Policy, Policy Number 001220600 issued by Ironshore to High Point Regional Health System, as named insured.

**1.74**    *High Point Settlement Agreement*.  The Settlement and Release Agreement dated as of December 3, 2014 by and among the Chapter 11 Trustee, High Point, and Ironshore.

**1.75**    *High Point Settlement Payment*.  Cash in the amount of $3,500,000 paid to the Estate pursuant to the High Point Settlement Agreement.

**1.76**    *Impaired.*  Any Class that is impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.77**    *Individual GDC Insureds*.    Any of GDC's directors, officers, members, managers, shareholders, owners, principals, employees, attorneys, predecessors, successors and assigns, who are or may be an "insured" under the GDC Policies, including, but not limited to, Gregory Conigliaro and Douglas Conigliaro, each acting solely in his, her, or its respective capacity as such.

**1.78**    *Individual Insureds*.  The Individual NECC Insureds and the Individual GDC Insureds.

**1.79**    *Individual NECC Insureds*.  Barry J. Cadden, Lisa M. Conigliaro Cadden, Gregory Conigliaro, Carla Conigliaro, Glenn Chin, Christopher Leary, Jill Keough, Gene Svirskiy and Kathy Chin, each solely in his or her capacity as an "insured" under the Maxum Policies and/or the PMIC NECC Policies.

**1.80**    *Initial Tort Trust Assets.*  (i) The Shareholder Settlement QSF Monies (less the amount the Tort Trustee, in his capacity as qualified settlement fund administrator, determines should be reserved in the Shareholder Settlement QSF Account), (ii) the National Settlement Payments (less the amount the Estate Representative determines should be reserved as Cash or paid to the Shareholder Settlement QSF Account, which payments shall be deemed to have been made pursuant to this Plan.  As such, these payments will be considered to have been made pursuant to a "court order" necessary to satisfy the requirements of Internal Revenue Code section 468B), (iii) an amount of each of the Provider Settlement Payments to be provided by and in each Provider Settlement Agreement, and (iv) the Estate Causes of Action.

**1.81**    *Inspira.*  Inspira Health Network, Inc.(f/k/a South Jersey Health System, Inc.), Inspira Medical Centers, Inc. (f/k/a South Jersey Hospital, Inc.) and all of their respective directors, officers, members, shareholders, owners, principals, employees, including, but not limited to Joseph Alessandrini and Paul Abrams, attorneys, affiliates, predecessors, parents, subsidiaries, including, but not limited to, Juno Assurance, successors and assigns, each acting in their respective capacity as such. For purposes of this Plan, the affiliates of Inspira  are the following: Inspira Medical Center Woodbury, Inc., Inspira HomeCare & HospiceCare, Inc., Inspira Health Network LIFE, Inc., Inspira Health Network Medical Group, P.C., Inspira Health Network Urgent Care, P.C., Cooper Bone & Joint at Woodbury, P.C., Oak & Main Surgicenter, LLC, Inspira Health Network Foundation Cumberland/Salem, Inc.,  Inspira Health Network Foundation Gloucester County, Inc., The Kidney Center at Vineland, LLC, The Kidney Center at Millville, LLC, Inspira Help Services, Inc., Inspira Health Partners, LLC, Red Bank Development Corporation, Inspira Health Management Corporation, Juno Assurance, Ltd., Inspira Management Services, LLC, Inspira Health

Connections, P.C., Tri-County Cardiovascular Services, P.C., Gloucester County Surgery Center, LLC, Woodbury Medical Center Associates, LLP, Inspira Home Care Services Woodbury, Inc., Advanced MRI II, LLC, Inspira Care Connect, LLC, The Healthy Cumberland Initiative, Inc., and The Healthy Gloucester Initiative, Inc.

**1.82** *Inspira Policies.*  The Ironshore Inspira Policies, the Juno Inspira Policies, and the Lexington Inspira Policies.

**1.83** *Inspira Settlement Agreement.*  The Settlement and Release Agreement dated as of December 3, 2014 by and among the Chapter 11 Trustee, Inspira, Lexington Insurance, and Ironshore Specialty Insurance.

**1.84** *Inspira Settlement Payment.*  Cash in the amount of $16,000,000 paid to the Estate pursuant to the Inspira Settlement Agreement.

**1.85** *Interim Bar Date Order.*  In the Chapter 11 Case, the *Interim Order Regarding Chapter 11 Trustee's Motion for an Order Establishing Bar Dates for Filing Proofs of Claim and for related Relief Concerning Noticing by Notice Intermediaries*, dated July 29, 2013 [Chapter 11 Case Docket No. 412].

**1.86** *Ironshore.*  Ironshore Specialty Insurance Company solely in its capacity as issuer of, or in any other capacity that may arise from or be connected with, the High Point Policy and as an insurer to High Point (and any other person(s) or entity(ies) that may be insured under the High Point Policy) and all of its directors, officers, members, shareholders, owners, principals, employees, attorneys, affiliates, predecessors, parents, subsidiaries, successors and assigns, each acting solely in their respective capacities as such.

**1.87** *Ironshore Inspira Policies.*  (i) The Insurance Policy issued by Ironshore Specialty Insurance to Inspira for the policy period of 11/1/2011 to 11/1/2012 (No. 000791702), and (ii) any other known or unknown insurance policies issued by Ironshore Specialty Insurance to Inspira prior to December 3, 2014.

**1.88** *Ironshore Specialty Insurance.*  Ironshore Specialty Insurance Company solely in its capacity as issuer of, or in any other capacity that may arise from or be connected with, the Ironshore Ironshore Policy and as an insurer to Inspira (and any other person(s) or entity(ies) that may be insured under the Inspira Ironshore Policy) and all of its directors, officers, members, shareholders, owners, principals, employees, attorneys, affiliates, predecessors, parents, subsidiaries, successors and assigns, each acting in their respective capacity as such.  For purposes of this Agreement, the affiliates of Ironshore Specialty Insurance are the following: Ironshore Insurance Services, LLC, Ironshore Holdings, (US), Inc., Ironshore Specialty Insurance Company, IronHealth, and Ironshore Indemnity.

**1.89** *Juno Assurance.*  Juno Assurance, Ltd., solely in its capacity as issuer of the Juno Policy, and all of its directors, officers, members, shareholders, owners, principals, employees, attorneys, predecessors, parents, subsidiaries, successors and assigns, each acting in their respective capacity as such.

**1.90** **_Juno Inspira Policies._** (i) The Healthcare Professional Liability and Healthcare General Liability Insurance Policy issued by Juno Assurance to Inspira for the policy period of 11/1/2011 to 11/1/2012 (No. 2011HPLGL02), and (ii) any other known or unknown insurance policies issued by Juno Assurance to Inspira prior to December 3, 2014.

**1.91** **_Liberty Mutual._** Liberty Mutual Insurance, solely in its capacity as successor-in-interest to Netherlands Insurance and Peerless Insurance

**1.92** **_Lexington Insurance._** Lexington Insurance Company, solely in its capacity as issuer of , or in any other capacity that may arise from or be connected with, the Lexington Policy, and as an insurer to Inspira (and any other additional insured under the Lexington Inspira Policy) and all of Lexington Insurance Company's directors, officers, members, shareholders, owners, principals, employees, attorneys, affiliates, predecessors, parents, subsidiaries, successors and assigns, each acting in their respective capacity as such. For purposes of this Plan, the affiliate of Lexington Insurance is the following: American International Group, Inc. and its direct and indirect subsidiaries.

**1.93** **_Lexington Inspira Policy._** (i) The Excess Healthcare Professional Liability and Healthcare Umbrella Liability Insurance Policy issued by Lexington Insurance to Inspira for the policy period of 11/1/2011 to 11/1/2012 (No. 6796471), and (ii) any other known or unknown insurance policies issued by Lexington Insurance to Inspira prior to the December 3, 2014.

**1.94** **_Local Rules._** The Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Massachusetts, or, in the singular, a specific Local Rule of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Massachusetts.

**1.95** **_Maxum._** Maxum Indemnity Company, solely in its capacity as issuer of the Maxum Policies.

**1.96** **_Maxum Policies._** The Commercial Excess Liability Policies Maxum issued to NECC, as named insured, under policy number EXC 6013127-01 for the period of June 25, 2010 to January 1, 2012, and the Commercial Excess Liability Policy Maxum issued to NECC, as named insured, under policy number EXC 6013127-02 for the period of January 1, 2012 to January 1, 2013.

**1.97** **_MDL Court._** The United States District Court, District of Massachusetts, where the MDL Proceeding is pending.

**1.98** **_MDL Proceeding._** The multidistrict litigation in the MDL Court entitled _In re New England Compounding Pharmacy, Inc., Products Liability Litigation_, designated as Case No. 1:13-md-2419-RWZ, formed pursuant to the Order of February 12, 2013, by the Judicial Panel on Multidistrict Litigation, pending in the MDL Court.

**1.99** **_Miscellaneous Secured Claims._** Any claims against the Debtor secured by Collateral.

10

**1.100** *Medicaid.* Any medical assistance program jointly financed by the federal and state governments, codified at 42 U.S.C. § 1396, *et seq.*, and the regulations promulgated thereunder at 42 C.F.R. § 435.2 *et seq.*

**1.101** *Medicare Act.* The Medicare Secondary Payer Act, codified at 42 U.S.C. § 1395y, and the regulations promulgated thereunder, codified at 42 C.F.R. § 411.1 *et seq.*

**1.102** *MPA.* Methylprednisolone acetate.

**1.103** *National Contributing Parties.* The Entities listed at Schedule 1.103 hereto.

**1.104** *National Settlement Administrator(s).* The person(s) appointed in and by the Claims Resolution Facility Procedures to facilitate, effectuate and implement the purpose and provisions of the Claims Resolution Facility.

**1.105** *National Settlement Agreements.* Any settlement agreement entered into between the Chapter 11 Trustee and one or more National Contributing Parties on or before the date on which the Plan Supplement is filed, including, without limitation the Ameridose Settlement Agreement, GDC Settlement Agreement, and the PMIC/Maxum Settlement Agreement; *provided*, *however*, that National Settlement Agreements shall not include the Shareholder Settlement Agreement.

**1.106** *National Settlement Payments.* Any payment funded or to be paid to the Estate by a National Contributing Party pursuant to a National Settlement Agreement, including, without limitation, the Ameridose Settlement Payment, the GDC Settlement Payment, the PMIC/Maxum Settlement Payment and the Victory Settlement Payment; *provided*, *however*, that National Settlement Payments shall not include the Shareholder Settlement Monies.

**1.107** *NECC.* Debtor New England Compounding Pharmacy, Inc. a/k/a New England Compounding Company.

**1.108** *NECC Claims*. The term NECC Claims shall have the meaning set forth in the Shareholder Settlement Agreement

**1.109** *NECC Parties.* The term NECC Parties shall have the meaning set forth in the Shareholder Settlement Agreement.

**1.110** *NECC Policies.* The Maxum Policies and the PMIC NECC Policies.

**1.111** *Netherlands Insurance.* The Netherlands Insurance Company, solely in its capacity as an issuer of the Netherlands Victory Insurance Policy, and all of its directors, officers, members, shareholders, owners, principals, employees, attorneys, predecessors, successors and assigns, each acting in their respective capacity as such, and Liberty Mutual.

**1.112** *Netherlands Victory Policies.* (i) The Commercial General Liability Insurance Policy issued by Netherlands Insurance to Victory for the policy period of 7/2/12 – 7/2/13 (No. CBP8690539), and (ii) any other known or unknown insurance policies issued by Netherlands Insurance to Victory prior to November 11, 2014.

11

**1.113   Non-Tort Claims.**  Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, Miscellaneous Secured Claims, General Unsecured Claims and Subordinated Claims.

**1.114   Objection Deadline.**  The date set forth in the order of the Bankruptcy Court by which a holder of a Claim or a holder of an Equity Interest or other party in interest may file an objection to confirmation of this Plan.

**1.115   Official Committee.**  The Official Committee of Unsecured Creditors appointed by the U.S. Trustee in the Chapter 11 Case pursuant to section 1102 of the Bankruptcy Code, including the members thereof and each of their respective attorney representatives, each in his or her capacity as such.

**1.116   Other Contributing Parties.**  The National Contributing Parties, the Provider Contributing Parties, and any and all Persons or Entities released under the National Settlement Agreements and the Provider Settlement Agreements, including but not limited to, the Ameridose Parties, the GDC Released Parties, and the PMIC/Maxum Released Parties.

**1.117   Patient Lists.**  The lists required to be provided to the Chapter 11 Trustee, counsel to the Official Committee, and lead counsel to the Plaintiffs' Steering Committee pursuant to paragraph 2 of the Interim Bar Date Order.

**1.118   Peerless Insurance**.  Peerless Insurance Company, solely in its capacity as issuer of the Peerless Victory Insurance Policy, and all of its directors, officers, members, shareholders, owners, principals, employees, attorneys, predecessors, successors and assigns, each acting in their respective capacity as such, and Liberty Mutual

**1.119   Peerless Victory Policies.**  (i) The Commercial Umbrella Liability Insurance Policy issued by Peerless Insurance to Victory for the policy period of 7/2/12 – 7/2/13 (No. CU8691139), and (ii) any other known or unknown insurance policies issued by Peerless Insurance to Victory prior to November 11, 2014.

**1.120   Person.**  Person has the meaning set forth in section 101(41) of the Bankruptcy Code.

**1.121   Petition Date.**  December 21, 2012.

**1.122   PITWD Addendum**.  The confidential Personal Injury or Wrongful Death Claim Information Form required by the Bankruptcy Court pursuant to the Bar Date Order to be submitted by all creditors asserting a personal injury tort or wrongful death claim arising from exposure to NECC products.

**1.123   Plaintiffs' Steering Committee.**  The committee of plaintiffs' counsel appointed pursuant to order of the MDL Court entered on April 9, 2013, as may be amended by the MDL Court.

**1.124   Plan.**  This Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc., as may be amended or modified from time to time.

**1.125** *Plan Proponents.* The Chapter 11 Trustee and the Official Committee.

**1.126** *Plan Supplement*. The supplemental appendix to this Plan, to be filed no later than ten (10) days prior to the Disclosure Statement Hearing, which will contain, among other things, draft documents, forms of documents, term sheets or other instruments or signed copies, as the case may be, of the Plan Supplement Documents.

**1.127** *Plan Supplement Documents*. The documents, forms of documents, term sheets and instruments (including any amendments, supplements or modifications thereto) included in the Plan Supplement and which may be executed, delivered and/or performed in connection with the consummation of this Plan, including, without limitation, the Tort Trust Agreement, the Shareholder Escrow and Control Agreement, the Claims Resolution Facility Procedures, the Provider Claims Resolution Facility Procedures, if any, and the Settlement Agreements.

**1.128** *Policies*. The Ameridose Policies, the GDC Policies, the High Point Policy, the Inspira Policies, the NECC Policies, and the Victory Policies.

**1.129** *Post-Effective Date Debtor*. The Debtor, from and after the Effective Date.

**1.130** *Post-Confirmation Officer*. Paul D. Moore in his capacity as sole post-confirmation officer of the Debtor or the Post-Effective Date Debtor, as applicable.

**1.131** *PMIC*. Pharmacists Mutual Insurance Company, solely in its capacity as issuer of the PMIC NECC Policies or the Ameridose Policies, as applicable.

**1.132** *PMIC/Maxum Released Parties*. All Persons or Entities released from Claims under the PMIC/Maxum Settlement Agreement.

**1.133** *PMIC/Maxum Settlement Agreement*. The Plan Support and Settlement Agreement dated as of May 2, 2014, by and among the Chapter 11 Trustee, PMIC, Maxum and the Individual NECC Insureds [Chapter 11 Case Docket No. 714-2], as approved by the Bankruptcy Court at Chapter 11 Case Docket No. 971.

**1.134** *PMIC/Maxum Settlement Payment*. Cash in the amount of $25,200,000 paid to the Estate pursuant to the PMIC/Maxum Settlement Agreement.

**1.135** *PMIC NECC Policies*. The Special Businessowners Policy PMIC issued to NECC, as named insured, under policy number BOP 0068490 07, the Commercial Umbrella/Excess Liability Policy PMIC issued to NECC as named insured under policy number UCL 0068490 07, both with a policy period of January 1, 2011 to January 1, 2012, the Special Businessowners Policy PMIC issued to NECC as named insured under policy number BOP 0068490 08, the Commercial Umbrella/Excess Liability Policy PMIC issued to NECC as named insured under policy number UCL 0068490 08, both with a policy period of January 1, 2012 to January 1, 2013, and the Individual Pharmacist Professional Liability Policies PMIC issued to Barry J. Cadden (Policy No. PHL 0072481), Lisa M. Conigliaro Cadden (Policy No. PHL 0072480), Glenn Chin (Policy No. PHL 0072483), C. Leary (Policy No. PHL 0122124), G. Svirskiy (Policy No. PHL 0096033), J. Keough (Policy No. PHL 0105223) and K. Chin (Policy No. PHL 0096806) as named insureds.

13

**1.136    Preferred Mutual.**  Preferred Mutual Insurance Company, solely in its capacity as issuer of the GDC Policies, and any of its directors, officers, members, shareholders, owners, principals, employees, attorneys, predecessors, successors and assigns, each acting solely in its respective capacity as such.

**1.137    Priority Non-Tax Claim.**  Any Claim, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment as specified in section 507(a)(3), (4), (5), (6), (7) or (9) of the Bankruptcy Code.

**1.138    Priority Tax Claim.**  Any Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**1.139    Priority Claims.**  Priority Non-Tax Claims and Priority Tax Claims.

**1.140    Pro Rata Share.**  A proportionate share, so that the ratio of the consideration distributed on account of an Allowed Claim in a Class to the amount of such Allowed Claim is the same as the ratio of the consideration distributed on account of all Allowed Claims in such Class to the amount of all Allowed Claims in such Class.

**1.141    Protocol Order.**  The *Agreed-Upon Order Establishing Protocol for Settlement Negotiations and Communication* [Adversary Proceeding Docket No. 96] entered in the Adversary Proceeding.

**1.142    Provider Claims Resolution Facility(s)**.  The claims resolution facility or facilities, if any, established by the Provider Claims Resolution Facility Procedures.

**1.143    Provider Claims Resolution Facility Procedures**.  The Provider Claims Resolution Facility Procedures substantially in the form(s) included in the Plan Supplement.

**1.144    Provider Contributing Parties.**  The Entities listed on Schedule 1.144 hereto.

**1.145    Provider Settlement Administrator(s).**  The person(s) to be appointed in and by the Provider Claims Resolution Facility Procedures to facilitate, effectuate and implement the purpose and provisions of the Provider Claims Resolution Facility(s).

**1.146    Provider Settlement Agreements.**  The settlement agreement(s) entered into between the Chapter 11 Trustee and one or more Provider Contributing Parties on or before the date on which the Plan Supplement is filed, including, but not limited to, the High Point Settlement Agreement and the Inspira Settlement Agreement.

**1.147    Provider Settlement Payments.**  Any payment made or to be made to the Estate by a Provider Contributing Party pursuant to a Provider Settlement Agreement.

**1.148    Resident Tort Trustee.**  The Delaware resident trustee appointed by the Chapter 11 Trustee pursuant to the Tort Trust Agreement, including any successor.

**1.149    Schedules.**  The schedules of assets and liabilities and the statements of financial affairs filed by the Debtor under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007,

and the Official Bankruptcy Forms of the Bankruptcy Rules as such schedules and statements have been or may be supplemented or amended through the Confirmation Date.

    **1.150** *Settlement Administrators*.  The National Settlement Administrator(s) and the Provider Settlement Administrator(s).

    **1.151** *Settlement Agreements.*  The National Settlement Agreements, the Provider Settlement Agreements, and the Shareholder Settlement Agreement.

    **1.152** *Settling National Insurers*.  PMIC, Maxum and Preferred Mutual, collectively, solely in their capacities as insurers of NECC, the Individual Insureds, or GDC, as applicable.

    **1.153** *Shareholder and Affiliate Released Parties*.  The Contributor and Affiliate Released Parties, as that term is defined in the Shareholder Settlement Agreement.

    **1.154** *Shareholder Escrow Accounts*.  The escrow accounts established in the Shareholder Escrow and Control Agreement.

    **1.155** *Shareholder Escrow Agent*.  Citizens Bank, N.A., as escrow agent appointed pursuant to the Shareholder Escrow Agreement.

    **1.156** *Shareholder Escrow and Control Agreement*.  The Escrow and Control Agreement dated as of August 20, 2014, by and among the Chapter 11 Trustee, the Shareholders and the Shareholder Escrow Agent, substantially in the form included in the Plan Supplement.

    **1.157** *Shareholder Settlement Agreement*.  The Plan Support and Funding Agreement dated as of May 2, 2014 by and among the Chapter 11 Trustee, on the one hand, and the Shareholders on the other hand (Chapter 11 Case Docket No. 712-2), as approved by the Bankruptcy Court at Chapter 11 Case Docket No. 972.

    **1.158** *Shareholder Settlement Monies*.  The monies from time to time in the Shareholder Escrow Accounts, including, but not limited to, the Tax Contributions (as defined in the Shareholder Settlement Agreement).

    **1.159** *Shareholder Settlement Non-QSF Accounts*.  The Shareholder Escrow Accounts other than the Shareholder Settlement QSF Account, if any.

    **1.160** *Shareholder Settlement Non-QSF Monies.*  The Shareholder Settlement Monies, if any, from time to time in the Shareholder Settlement Non-QSF Accounts.

    **1.161** *Shareholder Settlement QSF Account*.  The qualified settlement fund, if any, established pursuant to the Shareholder Escrow and Control Agreement, which may pay any expenses permitted to be paid by a qualified settlement fund under applicable law.

    **1.162** *Shareholder Settlement QSF Monies*.  The Shareholder Settlement Monies from time to time in the Shareholder Settlement QSF Account.

**1.163** **_Shareholders._** Barry Cadden, Lisa Conigliaro Cadden, Gregory Conigliaro and Carla Conigliaro.

**1.164** **_Special Master._** The person appointed pursuant to the Claims Resolution Facility Procedures to provide for an appeal process in and for the Claims Resolution Facility.

**1.165** **_Subordinated Claims_.** All general unsecured claims, whenever arising, (i) for reimbursement, contribution or indemnity of an Entity that is liable with the Debtor on, or that has secured, the Claim of a Tort Claimant, or (ii) which are subordinated to other general unsecured claims by agreement or by applicable law

**1.166** **_Supplemental Bar Date._** May 5, 2014.

**1.167** **_Supplemental Bar Date Notice._** The _Notice of Supplemental Deadline for Filing Claims_ in the Chapter 11 Case, dated March 5, 2014.

**1.168** **_Supplemental Bar Dat_**e **_Order._** The endorsed order dated February 24, 2014 [Chapter 11 Case Docket No. 699] establishing the Supplemental Bar Date.

**1.169** **_Tax Code._** Title 26 of the United States Code, as amended from time to time.

**1.170** **_Tennessee Settlement Agreement._** The _Proposed Settlement Agreement and Order_ dated as of May 12, 2014 among the Chapter 11 Trustee and Barry J. Cadden on one hand, and the Tennessee Board of Pharmacy, on the other hand [Chapter 11 Case Docket No. 729-2], as approved by the Bankruptcy Court at Chapter 11 Case Docket No. 973.

**1.171** **_Tort Claims._** Any and all Claims, causes of action, civil actions and demands for or based on personal injury or wrongful death relating to the compounding, preparation, design, marketing, sale, distribution, fabrication, advertising, supply, production, formulation, use, administration, labeling or ingestion of any product produced, sold or distributed by the Debtor, including, but not limited to, the Drugs (notwithstanding the identity of any subsequent marketer, distributor, retailer, wholesaler, other seller or administrator of such product), including, but not limited to, those civil actions pending in the MDL Proceeding or in any state court; _provided_, _however_, that Tort Claims shall not include Estate Causes of Action as against the Shareholders and Affiliate Released Parties, including, without limitation, the Estate Claims asserted against the Shareholders and Affiliate Released Parties in the Adversary Proceeding.

**1.172** **_Tort Claimants._** The holders of Allowed Tort Claims, or, in the singular, one such holder.

**1.173** **_Tort Trust._** The trust established pursuant to Section 5.03 of this Plan.

**1.174** **_Tort Trustee._** The trustee of the Tort Trust appointed by the Official Committee and the Plaintiffs' Steering Committee pursuant to the Tort Trust Agreement in accordance with this Plan, to be identified in the Plan Supplement, or any successor.

**1.175** **_Tort Trust Advisory Board_.** A three (3) member committee comprised of Kimberly Dougherty, Fredric L. Ellis and Harry M. Roth.

16

**1.176** ***Tort Trust Agreement.*** The Tort Trust Agreement to be entered into by the Estate Representative, the Tort Trustee and the Resident Tort Trustee, executed in connection with this Plan, to be included in the Plan Supplement.

**1.177** ***Tort Trust Assets.*** The Initial Tort Trust Assets and the Additional Tort Trust Assets.

**1.178** ***Tort Trust Beneficiaries.*** Holders of Allowed Tort Claims, including Entities that are subrogated to the rights of such a Holder of an Allowed Tort Claim pursuant to section 4.01(iv) hereof.

**1.179** ***Tort Trust Certificate.*** The Certificate of Trust forming the Tort Trust.

**1.180** ***Tort Trust Documents.*** The Tort Trust Agreement, the Tort Trust Certificate, the Claims Resolution Facility Procedures, and the Provider Claims Resolution Facility Procedures.

**1.181** ***Treasury Regulations.*** Regulations (including temporary and proposed) promulgated under the Tax Code by the United States Treasury Department, as amended from time to time.

**1.182** ***Unimpaired.*** Any Class that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

**1.183** ***U.S. Trustee.*** The Office of the United States Trustee for Region 1.

**1.184** ***Victory.*** Victory Mechanical Services, Inc., Victory Heating & Air Conditioning Co., Inc., Victory LLC, Victory Heating and Air Conditioning Business Trust, Victory Mechanical Services Business Trust, and all of their respective directors, officers, members, shareholders, owners, principals, employees, attorneys, predecessors, successors and assigns, each acting in their respective capacity as such.

**1.185** ***Victory Policies.*** The Netherlands Victory Policies and the Peerless Victory Insurance Policies.

**1.186** ***Victory Settlement Agreement.*** That certain Settlement and Release Agreement by and among the Chapter 11 Trustee, Victory, Netherlands Insurance, and Peerless Insurance, dated as of November 11, 2014.

**1.187** ***Victory Settlement Payment.*** Cash in the amount of $5,500,000.00, to be paid to the Estate pursuant to the Victory Settlement Agreement, plus any additional amounts to be paid to the Estate pursuant to the Victory Settlement Agreement.

## B. <u>Interpretation; Application of Definitions and Rules of Construction.</u>

**1.188** ***Rules of Interpretation.*** The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained therein. Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural and

17

pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter. A term used herein that is not defined herein shall have the meaning assigned to that term in the Bankruptcy Code. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to this Plan. The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.

**1.189 *Computation of Time.*** In computing any period of time prescribed or allowed by this Plan, the provisions of the Bankruptcy Rule 9006(a) shall apply.

**1.190 *Governing Law.*** Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, and subject to the provisions of any contract, agreement or other document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the Commonwealth of Massachusetts, without giving effect to the principles of conflicts of law thereof.

## ARTICLE II.
## ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims, as described below, have not been classified.

**2.01 *Administrative Expense Claims.*** Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a different treatment or as otherwise provided herein, on the later of the Effective Date and the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is reasonably practicable, the Chapter 11 Trustee or the Post-Confirmation Officer (as may be applicable from time to time) shall pay to each holder of an Allowed Administrative Expense Claim, in full satisfaction of such Claim, an amount in Cash equal to the Allowed amount of such Claim. Notwithstanding the foregoing, Administrative Expense Claims that represent liabilities incurred by the Chapter 11 Trustee in the ordinary course of the Debtor's business during the Chapter 11 Case shall be paid in the ordinary course of business and in accordance with any terms and conditions of any agreements relating thereto.

**2.02 *Deadlines to Assert Administrative Expense Claims.***

**(i)** **Pre-Confirmation Date Administrative Expense Claims.** Except for applications by professionals under section 330 of the Bankruptcy Code and fees payable pursuant to 28 U.S.C. § 1930, all requests for payment of Administrative Expense Claims for which an earlier deadline has not been previously set or imposed by Local Rule 3002-1 shall be filed and served on each of the Plan Proponents no later than thirty (30) days after entry of the Confirmation Order.

**(ii)** **Professional Fees.** All applications by professionals retained pursuant to sections 327, 328 and 1103 of the Bankruptcy Code for allowance and payment of fees and reimbursement of expenses pursuant to section 330 of the Bankruptcy Code for final compensation for services rendered and reimbursement of expenses incurred in connection with this Chapter 11 Case shall be filed no later than sixty (60) days after the Effective Date. Such fee

applications shall seek approval of all fees and expenses incurred or to be incurred by such professionals on or before the Effective Date and may include an estimate of fees and costs incurred after the Effective Date, including fees and expenses incurred in preparation and resolution of the fee application.  Notwithstanding anything to the contrary contained in this Plan, the Settlement Agreements or the Confirmation Order, the Chapter 11 Trustee's and the Official Committee's post-petition professionals shall have the right to appear and be heard on all matters related to applications for final compensation of professional persons for services rendered and reimbursement of expenses incurred on or before the Effective Date.

          (iii)    **Statutory Fees.**  All fees payable pursuant to 28 U.S.C. § 1930 shall be paid in accordance with Section 12.07 of this Plan without the need to file any request for payment.

          (iv)    **Effect of Failure to Timely File Claim or Request for Payment.**  Any holders of Administrative Expense Claims who are required to file an application or request for payment of such Claims and who do not file such application or request by the applicable deadline shall be forever barred from asserting such Administrative Expense Claim against the Debtor or the Estate, or receiving any distribution on account of such Claim under this Plan.

    **2.03    *Priority Tax Claims.***  Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, on the later of the Effective Date and the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon thereafter as is reasonably practicable, the Post-Confirmation Officer shall pay to each holder of an Allowed Priority Tax Claim, in full satisfaction of such Claim, an amount in Cash equal to the Allowed amount of such Claim.

### ARTICLE III.
### CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

    **3.01    *Classification of Claims and Equity Interests.***  The classification of the Claims and Equity Interests listed below shall be for all purposes, including voting, confirmation and distribution pursuant to this Plan.

| Class | Description | Status | Entitled to Vote |
|---|---|---|---|
| Class A | Priority Non-Tax Claims | Unimpaired | Deemed to have accepted this Plan |
| Class B | Miscellaneous Secured Claims | Unimpaired | Deemed to have accepted this Plan |
| Class C | General Unsecured Claims | Impaired | Entitled to Vote |
| Class D | Tort Claims | Impaired | Entitled to Vote |
| Class E | Subordinated Claims | Impaired | Entitled to Vote |
| Class F | Equity Interests | Unimpaired | Deemed to have accepted this Plan |

# ARTICLE IV.
## TREATMENT OF CLAIMS AND EQUITY INTERESTS

**4.01** *Class A - Priority Non-Tax Claims.* Allowed Priority Non-Tax Claims in Class A are Unimpaired. Except to the extent that a holder of an Allowed Priority Non-Tax Claim agrees to a different treatment of such Claim, on the later of the Effective Date and the date such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, or as soon thereafter as is reasonably practicable, each holder of an Allowed Priority Claim shall receive, in complete settlement, satisfaction and discharge of its Class A Claim, an amount in Cash equal to the Allowed amount of such Priority Non-Tax Claim.

**4.02** *Class B - Miscellaneous Secured Claims.* Allowed Miscellaneous Secured Claims in Class B are Unimpaired. Except to the extent that a holder of an Allowed Miscellaneous Secured Claim agrees to a different treatment of such Claim, on the later of the Effective Date and the date such Miscellaneous Secured Claim becomes an Allowed Miscellaneous Secured Claim, or as soon thereafter as is reasonably practicable, each holder of an Allowed Miscellaneous Secured Claim shall receive, in complete settlement, satisfaction and discharge of its Class B Claim, at the Estate Representative's election, (i) payment in full in Cash of such holder's Allowed Miscellaneous Secured Claim, (ii) the Debtor's interest in the Collateral securing such holder's Allowed Miscellaneous Secured Claim or (iii) such other treatment rendering such holder's Allowed Miscellaneous Secured Claim Unimpaired.

**4.03** *Class C - General Unsecured Claims.* Allowed General Unsecured Claims in Class C are Impaired. On the later of the Effective Date and the date such General Unsecured Claim becomes an Allowed General Unsecured Claim, or as soon thereafter as is reasonably practicable, each holder of an Allowed General Unsecured Claim shall receive, in complete settlement, satisfaction and discharge of its Class C Claim, its Pro Rata Share of the Class C Cash.

**4.04** *Class D - Tort Claims*.

      **(i)** Tort Claims in Class D are Impaired. Each Tort Claimant shall be enjoined from pursuing any Claim against the Debtor, the Estate, the Chapter 11 Trustee and/or the Contributing Parties as set forth in Section 10.06 below, and Allowed Tort Claims shall be channeled to the Tort Trust, and each Tort Claimant shall receive, in complete settlement, satisfaction and discharge of his or her Allowed Tort Claim, a share of the beneficial interests in the Tort Trust.

      **(ii)** Except as otherwise provided herein, each Tort Claimant remains entitled to any recovery from third parties or liability insurance proceeds, to the extent any such third parties are not released by or protected under the injunction pursuant to this Plan, that may be liable on or otherwise available to satisfy such Tort Claims in whole or in part; *provided, however*, that notwithstanding anything herein or in the Tort Trust Documents to the contrary, to the extent that (a) a Tort Claimant realizes a recovery from any third party, other than in accordance with this Plan and pursuant to the Tort Trust Agreement, on account of the Tort Claimant's Tort Claim, and (b) such third party has filed a timely proof of claim against the Estate for contribution or indemnity based in whole or in part on its actual or potential liability

obligations to such Tort Claimant, (x) such third party's payment to such Tort Claimant shall be presumed to be solely on account of that third party's own liability to such Tort Claimant, and shall not be deemed to be a payment of the Tort Claim in full within the meaning of section 509(c) of the Bankruptcy Code until so agreed by the Tort Trustee or otherwise so determined by the Bankruptcy Court, and (y) any distribution from the Tort Trust to which such Tort Claimant would otherwise be entitled shall be reserved until such time as the third party's claim is resolved.

(iii)    An Entity that is liable with the Debtor on, or that has secured, an Allowed Tort Claim, and that pays such Allowed Tort Claim in full, shall, to the extent provided by Section 509 of the Bankruptcy Code, be subrogated to the rights of the holder of such Allowed Tort Claim under and for purposes of this Plan, and such subrogated Claim shall be treated as a Class D Claim in accordance with this Plan, and to the extent that the Entity's payment of the Allowed Tort Claim is not a payment in full, such Entity shall be treated in accordance with Section 509 of the Bankruptcy Code, including, but not limited to, subordination of such Entity's Claim(s) in accordance therewith.

(iv)    *Holders of Class D Claims may be required to submit additional documentation regarding their Claim as provided by the Claims Resolution Facility Procedures and, if applicable, the Provider Claims Resolution Facility Procedures. HOLDERS OF CLASS D CLAIMS SHALL BE SUBJECT TO RELEASES AND INJUNCTIONS PRECLUDING PURSUIT OF ANY CLAIM AGAINST CERTAIN PARTIES IN ACCORDANCE WITH SECTIONS 10.05 AND 10.06 HEREOF.*

4.05    *Class E - Subordinated Claims.*    Claims in Class E are Impaired.  Subordinated Claims in Class E shall be, and hereby are, automatically subordinated by confirmation of this Plan for purposes of distribution under this Plan to other general unsecured claims, specifically, Class D Claims and Class C Claims, without the need for further order or notice.  Each holder of an Allowed Class E Claim shall be deemed to have exchanged such Claim for a Pro Rata Share of Class E Cash, if any, in full satisfaction of such Claim.  It is not anticipated that holders of Class E Claims will receive any distributions under this Plan.  *EXCEPT AS PROVIDED PURSUANT TO SEPARATE ORDER OR AGREEMENT, CERTAIN HOLDERS OF CLASS E CLAIMS SHALL BE SUBJECT TO RELEASES AND INJUNCTIONS PRECLUDING PURSUIT OF ANY CLAIM, INCLUDING CLASS E CLAIMS, AGAINST CERTAIN PARTIES IN ACCORDANCE WITH SECTIONS 10.05 AND 10.06 HEREOF.*

4.06    *Class F - Equity Interests.*    Equity Interests are Unimpaired.  Equity Holders shall (i) retain, albeit without any rights of control over the Debtor, the Post-Effective Date Debtor, the Estate, or any of their officers or directors, including the Post-Confirmation Officer, or any other rights generally afforded to Interests, their respective Interests in the Debtor to the extent they are entitled to retain such interests under the Shareholder Settlement Agreement, but (ii) shall receive no distributions under this Plan on account of the same.

## ARTICLE V.
## SETTLEMENT OF TORT CLAIMS
## AND THE NECC TORT TRUST

**5.01**    *Settlement and Compromise.*    To the extent any Settlement Agreements have not been previously approved by the Bankruptcy Court, the entry of the Confirmation Order shall constitute approval of such Settlement Agreements by the Bankruptcy Court and the Bankruptcy Court's finding that, as required under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules, the Settlement Agreements are in the best interest of the Debtor, the Estate and all holders of Claims in the Chapter 11 Case, are fair, equitable and reasonable, and have been entered into in good faith by all parties thereto.   Upon the occurrence of the conditions to effectiveness set forth in each of the Settlement Agreements, the Settlement Agreements shall be binding and enforceable against the parties to the Settlement Agreements in accordance with their terms.   To the extent not previously approved by the Bankruptcy Court, copies of the Settlement Agreements (without signature pages) will be included in the Plan Supplement, and the provisions thereof are incorporated into this Plan, as if the same were fully set forth herein.

**5.02**    *Exhaustion of Insurance Policies.*

**(i)**    On the Effective Date, the NECC Policies shall be deemed completely exhausted and any and all of PMIC's and Maxum's obligations under the NECC Policies shall be, and are deemed to be, extinguished.

**(ii)**    On the Effective Date, the Ameridose Primary Policies shall be deemed completely exhausted and any and all of PMIC's obligations under the Ameridose Policies shall be, and are deemed to be, extinguished.

**5.03**    *Execution of Tort Trust Agreement.*    On or before the Effective Date, the Estate Representative, on behalf of the Debtor and on behalf of the Tort Trust Beneficiaries and holders of Allowed Class E Claims, the Tort Trustee and the Resident Tort Trustee shall execute the Tort Trust Agreement, and shall perform all other necessary steps to establish the Tort Trust.

**5.04**    *Purpose of Tort Trust.*    The Tort Trust shall be established for the sole purpose of implementing this Plan on behalf of, and for the benefit of, Tort Trust Beneficiaries and holders of Allowed Class E Claims, and to serve as a mechanism for liquidating, converting to Cash and distributing the Tort Trust Assets for the benefit of Tort Trust Beneficiaries and holders of Allowed Class E Claims, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purposes of the Tort Trust. The Tort Trust is organized and established as a trust pursuant to which the Tort Trustee, subject to the terms and conditions contained in the Tort Trust Agreement and in this Plan, is to hold the Tort Trust Assets and dispose of the same in accordance with the Tort Trust Agreement and this Plan in accordance with Treasury Regulation section 301.7701-4(d).

**5.05**    *Assets of the Tort Trust.*    The Tort Trust shall consist of (i) the Initial Tort Trust Assets, which the Estate Representative shall deliver, transfer or cause to be delivered or transferred, as applicable, to the Tort Trust, (ii) the Additional Tort Trust Assets, which,

following the Confirmation Date and as soon after receipt as is reasonably practicable, the Estate Representative shall deliver or cause to be delivered to the Tort Trust, and (iii) any additional assets disbursed to the Tort Trust from the Shareholder Settlement QSF Account or the Shareholder Settlement Non-QSF Accounts.

**5.06** *Governance of the Tort Trust.* The Tort Trust will be administered by the Tort Trustee. Subsequent appointments of Tort Trustee(s) shall be made in accordance with the provisions of the Tort Trust Agreement and this Plan. Decisions with respect to all matters shall be made by the Tort Trustee, subject to the terms of the Tort Trust Agreement. The Tort Trust Agreement shall govern the removal of any Tort Trustee and appointment of any successor Tort Trustee. The Tort Trust Agreement specifies that the Tort Trustee shall be a resident of the United States.

**5.07** *Role of the Tort Trustee.* In furtherance of, and consistent with the purpose of, the Tort Trust and this Plan, the Tort Trustee shall, subject to the terms of this Plan and the Tort Trust Agreement, (i) have the power and authority to hold, manage, sell and distribute the Tort Trust Assets as set forth herein and in the Tort Trust Agreement, (ii) have the power and authority to hold, manage, sell and distribute Cash or non-Cash Tort Trust Assets obtained through the exercise of its power and authority, (iii) have the power and authority to investigate, assert, prosecute and resolve, in the names of the Debtor and/or the name of the Tort Trust, the Estate Causes of Action in its sole and absolute discretion and (iv) have the power and authority to perform such other functions as are provided in this Plan or Tort Trust Agreement. The Tort Trustee shall be responsible for all decisions and duties with respect to the Tort Trust and the Tort Trust Assets, subject to the terms of this Plan and the Tort Trust Agreement. Subject to the provisions of the Tort Trust Agreement, in all circumstances, the Tort Trustee shall act in furtherance of the purpose of the Tort Trust, and shall use commercially reasonable efforts to dispose of the Tort Trust Assets and to make timely distributions and not unduly prolong the duration of the Tort Trust.

**5.08** *Investments.* Investments of all assets, including monies, held in the Tort Trust shall be administered, subject to the limitations and provisions set forth in this Section 5.08, in view of the manner in which individuals of ordinary prudence, discretion and judgment would act in the management of their own affairs, and with the understanding that it is intended that distributions from the Tort Trust to Tort Trust Beneficiaries, which will have the effect of liquidating and terminating the Tort Trust, will commence immediately upon or soon after the Effective Date of the Plan and will be completed soon thereafter. The Tort Trustee shall invest and reinvest the principal and income of the Tort Trust and keep the funds of the Tort Trust invested in interest-bearing accounts at an approved depository institution to be selected from the United States Trustee's List of Authorized Depositories for Bankruptcy Cases filed in Region One, dated July 26, 2013. Each account shall be treated as a single fund without distinction between principal and income. For purposes of this paragraph, "interest-bearing account" may include a money fund whose objectives are current income consistent with liquidity and low risk, the maintenance of a portfolio of high quality, short-term money market instruments, and maintenance of a constant $1.00 net asset value per share, to the extent the Tort Trustee determines that such fund is consistent with provisions for investment set forth in IRS Revenue Procedure 94-45 or any successor guidance issued by the IRS. All investments shall be made so as to at all times provide sufficient liquidity to meet the anticipated cash needs of the Tort Trust

23

as set forth herein. In investing, reinvesting, exchanging, selling and managing the Tort Trust accounts, the Tort Trustee shall discharge its duties with respect to said accounts solely in the interest of the accomplishment of the purposes and objectives of the Tort Trust. Notwithstanding the foregoing, the Tort Trustee shall make continuing efforts to make timely distributions and not unduly prolong the duration of the Trust, consistent with the limitations set forth in IRS Revenue Procedure 94-45 or any applicable successor authority.

**5.09** *Fees, Costs and Expenses of the Tort Trust*.

(i) The Tort Trust shall pay all reasonable fees, costs and expenses of the Tort Trust that are (a) incurred in connection with the administration of the Tort Trust, the protection, preservation, liquidation and distribution of Tort Trust Assets, and the costs of investigating, prosecuting, resolving and/or settling any Claims of Tort Trust Beneficiaries and holders of Allowed Class E Claims (including but not limited to Disputed Claims or any Disputed Ownership Fund under Section 5.12 of this Plan), any tax liability imposed on the Tort Trust rather than on the Disputed Claims Reserve, Disputed Ownership Fund, or the Expense Fund, if any, and any fees, costs and expense of any and all professionals retained by the Tort Trustee and persons to be compensated from the Claims Resolution Facility and the Provider Claims Resolution Facilities), (b) obligations or other liabilities incurred or assumed by the Tort Trust (including but not limited to any Reserves established by the Tort Trust) (c) reasonably necessary to meet contingent liabilities and to maintain the value of the Tort Trust Assets during liquidation, and (d) reasonably necessary to satisfy any other obligations of the Tort Trust set forth in this Plan, the Confirmation Order or the Tort Trust Documents.

(ii) The Tort Trustee shall be entitled to reasonable compensation in an amount consistent with that of similar functionaries in similar types of proceedings, and shall be reimbursed for his or her reasonable expenses, including travel expenses, reasonably required and incurred in the performance of his or her duties, in each case subject to the terms and provisions of this Plan and the Tort Trust Documents.

(iii) Subject to the terms and provisions of this Plan and the Tort Trust Documents, the Tort Trustee may retain and reasonably compensate counsel and other professionals on such ordinary and customary and commercially reasonable terms as the Tort Trust deems appropriate, without Bankruptcy Court approval.

(iv) The Tort Trustee may retain such law firms or attorneys, experts, advisors, consultants, investigators, appraisers, auctioneers, corporate management services, or other persons or professional firms as the Tort Trustee determines, in his or her sole discretion, are necessary, desirable or appropriate to aid in the performance of his or her duties, without the need for further order or notice. The Tort Trustee may pay or appropriate funds necessary to pay the professionals for services rendered and expenses incurred after the Effective Date without any need for filing fee applications under the Bankruptcy Code or approval of any court. The Tort Trustee may retain any professional who represented the Official Committee or the Chapter 11 Trustee in the Chapter 11 Case.

**5.10** *Distribution of the Tort Trust Assets.* The Tort Trustee shall distribute the proceeds of the Tort Trust Assets in accordance with this Plan, the Confirmation Order, the Tort

Trust Documents and the Claims Resolution Facility Procedures. In connection with such distributions, and except as provided below in this Section 5.10, the Tort Trust shall be responsible for all reimbursement and reporting obligations imposed by the Medicare Act for the repayment of any claim related conditional payments made under Medicare Part A, B, C and D ("Conditional Payment") or any state's Medicaid or Workers Compensation statute. Before disbursing any Tort Trust Assets to any Tort Trust Beneficiary, the Tort Trustee may enter into a global resolution with the Centers for Medicare and Medicaid Services ("CMS") to reimburse all Medicare Part A, B, C and D liens that are subject to repayment for Conditional Payments made pursuant to 42 USC 1395y(b) and the accompanying Medicare Part C and Part D statutes and Medicare reporting obligations pursuant to 42 USC 1395y(b)(8).

Pursuant to 42 USC 1395y(b)(8), defined Responsible Reporting Entities ("RREs") must report claims to CMS in the manner and time specified by the statute. If a global resolution with CMS cannot be reached, the Tort Trustee is authorized to enter into a separate agreement with each RRE to report on their behalf and if a separate agreement with an RRE is not reached, the Tort Trustee shall provide all of the information required for proper reporting under 42 USC 1395y(b)(8) to the appropriate RRE(s) or their authorized agent before disbursing any funds to any Tort Trust Beneficiary. If a global resolution is not reached and the Tort Trustee does not enter into an agency agreement with the appropriate RRE(s) before disbursing any funds to any Tort Trust Beneficiary (i) the Tort Trustee will collect the Tort Trust Beneficiary's first name, last name, date of birth, gender, social security number and any other information required for proper reporting of the claim to CMS pursuant to 42 USC 1395y(b)(8) and the Medicare Mandatory Insurer Reporting User Guide; and (ii) the Tort Trustee will provide all of the information required for reporting to the RREs within five (5) days of any Final Determination (as that term is used in the Claims Resolution Facility Procedures) of any claim.

In addition, if a global resolution with CMS cannot be reached, before disbursing any funds to any Tort Trust Beneficiary, (i) the Tort Trustee shall determine, or retain an appropriately qualified firm to determine whether any Conditional Payment has been made to or on behalf of the Tort Trust Beneficiary to whom a distribution of Tort Trust Assets will be made, and if any Conditional Payment has been made to or on behalf of such a Tort Trust Beneficiary, the Tort Trustee shall, within the time period called for by the Medicare Act, (a) reimburse the Medicare Trust fund, the appropriate Medicare plan or their authorized contractor for the appropriate amount and (b) submit the required information for the Tort Trust Beneficiary to the appropriate agency of the United States government; and (ii) the Tort Trustee shall otherwise comply with any requirements (including, but not limited to, any reporting or payment requirements) of any other federal or state governmental health insurance program and any state's Medicaid or Workers Compensation statute. Prior to the Tort Trustee reimbursing any Medicare Part A, B, C and D plan requiring repayment the Tort Trustee shall provide notice of the existence of any Conditional Payment(s) and/or other lien(s) to the Tort Trust Beneficiary and, if applicable, his or her attorney. The Tort Trust Beneficiary and/or his or her attorney may elect to negotiate the amount of the alleged conditional payments within 120 days of notice from the Tort Trustee, or prior to any deadline imposed by the Medicare Part A, B, C and D for reimbursement, whichever is sooner. If the Tort Trust Beneficiary or his or her attorney elect not to negotiate the alleged lien amounts, or the other lien(s) are not resolved within the time periods specified, with the Tort Trust Beneficiary's consent, the Tort Trustee may utilize the firm with experience in resolving liens to satisfy the Tort Trust Beneficiary's obligations represented by

25

the Conditional Payment(s) and/or other lien(s). Upon receiving confirmation of the final Medicare Part A, B, C and D amount requiring repayment, the Tort Trustee will reimburse the appropriate Medicare Part A, B, C and D plan or their authorized contractor. Any payments made to resolve such obligations of the Tort Trust Beneficiary, together with the fees paid to the lien resolution firm, shall be deducted from the Tort Trust Beneficiary's distribution of Tort Trust Assets prior to disbursement of the balance to the Tort Trust Beneficiary or his or her counsel.

The Trustee, the Post-Effective Date Debtor and the Post-Confirmation Officer shall have no responsibility or liability for (i) the creation, existence, operation or administration of the Tort Trust; (ii) any acts or omissions of the Tort Trustee in administering the Tort Trust; (iii) any reimbursement and reporting obligations under the Medicare Act or any state's Medicaid or Workers Compensation statute; or (iv) any payment or non-payment of Claims. The Tort Trust shall indemnify and hold harmless the Trustee, the Post-Effective Date Debtor and the Post-Confirmation Officer from any and all claims, losses, causes of action, demands, liabilities, expenses, fees, including, but not limited to, attorneys' fees, and costs of any kind arising from or relating to (i) the creation, existence, operation or administration of the Tort Trust; (ii) any acts or omissions of the Tort Trustee in administering the Tort Trust; (iii) any reimbursement or reporting obligations under the Medicare Act or any state's Medicaid or Workers Compensation statute or (iv) any payment or non-payment by the Tort Trust to any Tort Trust Beneficiary. Prior to making any Tort Trust Distribution, the Tort Trust shall retain sufficient funds to meet the fees, costs and expenses of the Tort Trust.

**5.11** **_Resolving Liens Other than Imposed by the Medicare Act and States' Medicaid and Worker Compensation Statutes._** Before disbursing any Tort Trust Assets to a Tort Trust Beneficiary, the Tort Trustee shall ensure that other liens that the Tort Trustee has received notice of have been resolved or have been otherwise satisfied. To that end, the Tort Trustee shall provide notice of the existence of any such lien(s) to the Tort Trust Beneficiary and, if applicable, his or her attorney, and it shall be the Tort Trust Beneficiary's (or his or her attorney's) responsibility to resolve such lien(s) against the Tort Trust Beneficiary's anticipated distribution of Tort Trust Assets within 120 days of notice from the Tort Trustee. If the lien has not been settled or otherwise resolved within this 120-day time period, with the Tort Trust Beneficiary's consent, the Tort Trustee may retain a firm with experience in resolving liens to satisfy the Tort Trust's Beneficiary's obligations as represented by the lien(s). Any payments made to resolve such lien(s), together with the fees paid to the lien resolution firm, shall be deducted from the Tort Trust Beneficiary's distribution of Tort Trust Assets prior to disbursement of the balance.

**5.12** **_Time of Tort Trust Distributions._** Subject to the Claims Resolution Facility Procedures and the Provider Claims Resolution Facility Procedures, the Tort Trustee shall have the sole and absolute discretion to determine the timing of distributions of the proceeds of the Tort Trust in the most efficient and cost-effective manner possible; _provided_, _however_, that the Tort Trustee's discretion shall be exercised in a manner consistent with the express requirements of this Plan and the requirements of taxation as a grantor trust under applicable IRS guidelines, rulings or other controlling authorities.

**5.13** **_Tax Treatment of Tort Trust_**.

(i)     **Tort Trust Assets Treated as Owned by Certain Creditors.**   For all United States federal income tax purposes, all parties (including the Post-Confirmation Officer, the Estate Representative, the Tort Trustee, the Resident Tort Trustee, the Settlement Administrator(s), Tort Trust Beneficiaries and holders of Allowed Class E Claims) shall treat the transfer of the Tort Trust Assets to the Tort Trust  as (a) a transfer of the Tort Trust Assets (subject to any obligations related to those assets) directly to the Tort Trust Beneficiaries and holders of Allowed Class E Claims, followed by (b) the transfer by such Tort Trust Beneficiaries and holders of Allowed Class E Claims of such Tort Trust Assets (other than the Tort Trust Assets allocable to a Contested Claims Reserve or a Disputed Ownership Fund, each as described in Section 5.13(v) hereof) to the Tort Trust in exchange for beneficial interests in the Tort Trust.  Accordingly, the Tort Trust Beneficiaries and holders of Allowed Class E Claims shall be treated for federal income tax purposes (and, to the extent permitted, for state and local income tax purposes) as the grantors and owners of their respective shares of the Tort Trust Assets (other than the Tort Trust Assets allocable to an Expense Fund, if any, Contested Claims Reserve or a Disputed Ownership Fund as described in Section 5.13(v) hereof).

(ii)     **Exemption from Transfer Taxes.**   Pursuant to section 1146(a) of the Bankruptcy Code, the making or assignment of any lease or sublease, or the making or delivery of any instrument of transfer from the Estate, the Post-Effective Date Debtor or the Post-Confirmation Officer to the Tort Trust or any other Person or any government, governmental agency or any subdivision, department or other instrumentality thereof, pursuant to this Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.  Without limiting the foregoing, any issuance, transfer or exchange of a security or any making or delivery of an instrument of transfer pursuant to this Plan shall be exempt from the imposition and payment of any and all transfer taxes (including but not limited to any and all stamp taxes or similar taxes and any interest, penalties and addition to the tax that may be required to be paid in connection with the consummation of this Plan) pursuant to sections 1146(a), 505(a), 106 and 1141 of the Bankruptcy Code.

(iii)     **Tax Reporting.**

(1)     The Tort Trustee shall serve as the "Qualified Settlement Fund Administrator" of the Shareholder Settlement QSF Account and in such capacity shall have the exclusive responsibility and obligation to file all required tax returns and to otherwise administer all funds from or deposited into a "Qualified Settlement Fund" for the benefit of Tort Trust Beneficiaries.

(2)     The Tort Trustee shall file returns for the Tort Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a) and in accordance with this Section 5.13(iii).  The Tort Trustee shall also annually send to each record holder of a beneficial interest a separate statement setting forth the holder's share of items of income, gain, loss, deduction or credit and shall instruct all such holders to report such items on their federal income tax returns

or to forward the appropriate information to the beneficial holders with instructions to report such items on their federal income tax returns. The Tort Trustee shall also file (or cause to be filed) any other statements, returns or disclosures relating to the Tort Trust that are required by any Governmental Unit.

(3)    Tort Trust taxable income or loss shall be allocated pro rata based on the total of Allowed and Disputed Claims of the Tort Trust Beneficiaries at the end of the taxable year. Tort Trust taxable income or loss allocated to Disputed Claims shall be allocated to the Contested Claims Reserve or Disputed Ownership Fund (each as described in Section 5.13(v) hereof) (whichever applies), and reported to taxing authorities appropriately, as described further herein.

(4)    As soon as possible after the Effective Date, the Tort Trustee shall make a good faith valuation of the Tort Trust Assets. Such valuation shall be made available from time to time, to the extent relevant, and used consistently by all parties (including the Estate Representative, the Official Committee, the Tort Trustee, the Tort Trust Beneficiaries and holders of Allowed Class E Claims) for all state and federal income tax purposes. The Tort Trust also shall file (or cause to be filed) any other statements, returns or disclosures relating to the Tort Trust that are required by any governmental unit.

(5)    The Tort Trustee may request an expedited determination of taxes of the Tort Trust under Section 505 of the Bankruptcy Code for all returns filed for, or on behalf of, the Tort Trust for all taxable periods through the termination of the Tort Trust.

(iv)    **Withholding of Taxes and Reporting Related to Tort Trust Operations.** The Tort Trustee shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all distributions made by the Tort Trust shall be subject to any such withholding and reporting requirements. The Tort Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with any such withholding, payment, and reporting requirements. All amounts properly withheld from distributions to a Tort Trust Beneficiary or holder of an Allowed Class E Claim as required by applicable law and paid over to the applicable taxing authority for the account of such Claimant shall be treated as part of the distributions to such Tort Trust Beneficiary or holder of an Allowed Class E Claim. To the extent that the operation of the Tort Trust or the liquidation of the Tort Trust Assets creates a tax liability imposed on the Tort Trust, including the Contested Claims Reserve described in Section 5.12(v) hereof, the Tort Trust shall timely pay such tax liability and any such payment shall be considered a cost and expense of the operation of the Tort Trust payable without Bankruptcy Court order. Any federal, state or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from distributions hereunder. All Tort Trust Beneficiaries and holders of Allowed Class E Claims shall be required to provide any information necessary to effect the withholding of such taxes.

(v)    **Reporting Related to Contested Claims Reserve.** Notwithstanding any other provision of the Tort Trust Agreement to the contrary, subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary, the Tort Trustee may treat any Tort Trust Asset allocable to, or retained on account of, a "Contested Claims Reserve" as held by one or more discrete entities for federal, and state and local, income tax

purposes, subject to an allocable share of all expenses and obligations of the Tort Trust, on account of such contested Claims. The Tort Trustee may, in the his sole discretion, file a tax election to treat any Contested Claims Reserve as a "Disputed Ownership Fund" within the meaning of Treasury Regulation Section 1.468B-9 for United States federal income tax purposes rather than to tax such reserve as a part of the Tort Trust. All Tort Trust Beneficiaries, all holders of Allowed Class E Claims, and all holders of Contested Claims, shall be bound by such income tax treatment.

(vi)    **Qualified Settlement Fund Matters.** To the maximum extent permitted by law, all Tort Trust Assets transferred to the Tort Trust from a qualified settlement fund, including without limitation any and all qualified settlement funds established under the Shareholder Escrow and Control Agreement, shall be treated for all purposes as amounts distributed to claimants for which the fund was established in accordance with Treasury Regulation Section 1.468B-4, and shall be reported as excludable from gross income to the extent permitted under section 104(a)(2) of the Tax Code. In no event shall amounts transferred to the Tort Trust under the Shareholder Escrow and Control Agreement be treated as deemed distributions to the transferors to any qualified settlement fund established under the Shareholder Escrow and Control Agreement.

### 5.14   *Resolution of the Claims of Minors In Accordance With the Tort Trust*.

(i)    In connection with any Tort Claims in which the holder is a minor, the Tort Trustee shall notify the parent, guardian, guardian ad litem, adult spouse, next friend, or other representative of the minor of the proposed distribution to such minor. Such parent, guardian, guardian ad litem, adult spouse, next friend, or other representative of the minor shall move for approval of the allocation within ninety (90) days of his or her notification by the Tort Trustee of the proposed distribution.

(ii)    In the event that the parent, guardian, guardian ad litem, adult spouse, next friend, or other representative of the minor does not so move for approval of the allocation within ninety (90) days of his or her notification by the Tort Trustee of the proposed distribution, the Tort Trustee shall submit the proposed distribution to the holder to the District Court for approval in accordance with Section 140C1/2 of Chapter 231 of the Massachusetts General Laws and request that the District Court hold a hearing on the petition, and the petitioner and the Tort Claim holder may attend any such hearing. The Tort Trustee shall request the District Court to determine whether the proposed distribution is in the Tort Claim holder's best interests and, if the proposed distribution is approved, that determination shall be embodied in an order which shall have the effect of a judgment. Upon approval of the proposed distribution to such holder of a Tort Claim, the Tort Trustee shall request the District Court to authorize payment to the counsel of the minor, if any, of fees and disbursements to be paid from the distribution and further shall order that the remainder of the distribution be distributed in a manner that will best protect the interest of the minor.

### 5.15   *Access to Claims Information*. Upon request made to the Estate Representative on or after the Effective Date by the Tort Trustee, the Settlement Administrator(s) or the Special Master, the Estate Representative shall deliver to the Tort Trustee, the Tort Trustee, the Settlement Administrator(s) or the Special Master, as applicable, on an un-redacted basis, the

relevant Patient Lists and all proofs of claim and supporting documentation (including the PITWD Addenda) for purposes of effectuating the Tort Trust and distributions to holders of Allowed Class D Claims or Allowed Class E Claims. The Confirmation Order shall include all findings and orders necessary to permit or facilitate such delivery and access, including with respect to the confidentiality of the Patient Lists and the PITWD Addenda, subject to any further orders of the Bankruptcy Court.

**5.16** *Distribution of Surplus*. The Tort Trustee shall make all payments required to be paid to holders of Allowed Class D Claims or Allowed Class E Claims under this Plan, in accordance with the terms and conditions of the Tort Trust Agreement, the Claims Resolution Facility Procedures and the Provider Claims Resolution Facility Procedures. If, and only if, the Tort Trustee has made distributions to Tort Trust Beneficiaries sufficient to satisfy in full the Claims of each and every Tort Trust Beneficiary (as determined by the Tort Trustee, subject to the MDL Court's review of such determination), then the Tort Trustee shall distribute to the holders of Allowed Class E Claims their Pro Rata Share of the remaining Cash, if any, of the Tort Trust.

**5.17** *Payments to Post-Effective Date Debtor*. The Post-Confirmation Officer may from time to time request that monies be transferred to the Post-Effective Date Debtor from the Tort Trust for use and distribution as he deems appropriate in accordance with this Plan, and the Tort Trustee shall promptly comply with any and all such request(s).

## ARTICLE VI.
## MEANS FOR IMPLEMENTATION AND EXECUTION OF THIS PLAN

**6.01** *Management of the Post-Effective Date Debtor*.

(i) <u>**Post-Confirmation Officer.**</u> On the Effective Date, (a) the authority, power and incumbency of the persons then acting as directors and officers of the Debtor, and that of the Chapter 11 Trustee, shall be terminated, (b) such directors, officers and the Chapter 11 Trustee shall be deemed to have been discharged pursuant to Bankruptcy Code section 350(a) and (c) Paul D. Moore, Esq. shall be appointed as the sole officer and director of NECC to serve in accordance with the certificate of incorporation and the bylaws of NECC, as such may be amended to carry out the provisions of this Plan. The Shareholders shall not have the power or ability to remove the Post-Confirmation Officer or to affect any decision thereof.

(ii) <u>**Compensation.**</u> The Post-Confirmation Officer shall be entitled to reasonable compensation in an amount consistent with that of similar functionaries in similar types of bankruptcy proceedings without any need for filing fee applications under the Bankruptcy Code or approval of any court.

(iii) <u>**Indemnification.**</u> The Post-Confirmation Officer shall have quasi-judicial immunity to the fullest extent allowed by law and shall have no liability to the Debtor or its creditors, except for willful misconduct. The Tort Trustee shall indemnify and hold harmless the Post-Confirmation Officer for any losses incurred in his or her capacity as such, except to the extent such losses were the result of the Post-Confirmation Officer's willful misconduct.

(iv)    **Successor.**  In the event the Post-Confirmation Officer dies, is terminated or resigns for any reason, the Bankruptcy Court shall designate a successor on motion of any party in interest.

6.02    *Duties and Powers of the Post-Confirmation Officer.*  The Post-Confirmation Officer shall have the power and authority to implement and administer this Plan, including:

(i)    **Claims.**  The Post-Confirmation Officer may object to, compromise or settle any or all Claims (with the exception of Class D Claims) against the Debtor or the Estate.

(ii)    **Selling, Monetizing or Liquidating Assets.**  The Post-Confirmation Officer may, but is not required to, sell, monetize or liquidate any assets, including, but not limited to, (a) the Affiliated Entities, (b) any assets transferred to the Estate Representative in accordance with the Settlement Agreements, (c) the Estate Representative's entitlement to receive such assets in accordance with the Settlement Agreements, (d) any assets the Estate Representative is entitled to sell for the benefit of the Estate in accordance with the Settlement Agreements, and (e) any rights of the Estate Representative to sell, monetize, or liquidate any assets in accordance with the Settlement Agreements.

(iii)    **Abandoning Assets.**  The Post-Confirmation Officer may abandon or donate any assets, if he concludes in his sole discretion that they are of no benefit or inconsequential value without the need for further order or notice.

(iv)    **Retention of Professionals.**    After the Effective Date, the Post-Confirmation Officer may retain such law firms or attorneys, experts, advisors, consultants, investigators, appraisers, auctioneers, corporate management services, or other persons or professional firms as the Post-Confirmation Officer determines, in his or her sole discretion, are necessary, desirable or appropriate to aid in the performance of his or her duties, without the need for further order or notice.  The Post-Confirmation Officer may pay or appropriate funds necessary to pay the professionals for services rendered and expenses incurred after the Effective Date without any need for filing fee applications under the Bankruptcy Code or approval of any court.

(v)    **Books and Records.**  The Post-Confirmation Officer shall maintain the Debtor's books and records, maintain accounts, make distributions and take other actions consistent with this Plan and the implementation hereof.  The Post-Confirmation Officer shall have the responsibility of storing and maintaining the Debtor's books and records only until such time as he deems, in his sole discretion and subject to the *Agreed Order Granting Relief from Preservation Order to Permit Chapter 11 Trustee to Sell or Otherwise Dispose of Remaining NECC Property* [MDL Docket No. 1538], such books and records may be abandoned or destroyed, and the Post-Confirmation Officer shall have no liability to any party on account of such abandonment or destruction; *provided*, *however*, that the Post-Confirmation Officer shall neither abandon nor destroy any such books or records a Shareholder or his or her counsel reasonably requests to be maintained pursuant to the Shareholder Settlement Agreement.  In addition to the materials to be provided to the Tort Trustee pursuant to Section 5.14 of this Plan, at the time such materials are provided to the Tort Trustee pursuant to Section 5.14 of this Plan, the Post-Confirmation Officer shall provide the Tort Trustee with such of the Debtor's books and

31

records as the Tort Trustee may reasonably request in connection with the administration of the Claims Resolution Facility and the Provider Claims Resolution Facilities, if any, and the Post-Confirmation Officer shall have no liability to any party on account of such provision. The Post-Confirmation Officer shall retain the right to access and copy any records provided to the Tort Trustee. For purposes of this section, books and records include computer generated or computer maintained books and records and computer data, as well as electronically generated or maintained books and records or data, together with books and records of the Debtor maintained by or in possession of third parties and all of the claims and rights of the Debtor in and to their books and records, wherever located.

(vi)    **Agreements.**    The Post-Confirmation Officer may enter into any agreement or execute any document which he deems to be required by or consistent with this Plan or necessary or appropriate to its implementation and perform all of obligations of the Post-Effective Date Debtor.

(vii)    **Investment Power.**    Management of all assets and investments of the Post-Effective Date Debtor's Cash shall be administered, subject to the limitations and provisions set forth herein, in view of the manner in which individuals of ordinary prudence, discretion and judgment would act in the management of their own affairs. The Post-Confirmation Officer shall invest and reinvest the Post-Effective Date Debtor's Cash and keep the Post-Effective Date Debtor's Cash invested in interest-bearing accounts at an approved depository institution to be selected from the United States Trustee's List of Authorized Depositories for Bankruptcy Cases filed in Region One, dated July 26, 2013. Each account shall be treated as a single fund without distinction between principal and income. For purposes of this paragraph, "interest-bearing account" includes a money fund whose objectives are current income consistent with liquidity and low risk, the maintenance of a portfolio of high quality, short-term money market instruments and maintenance of a constant $1.00 net asset value per share. All investments shall be made so as to at all times provide sufficient liquidity to meet the anticipated cash needs of the Post-Effective Date Debtor as set forth herein.

(viii)    **Tax Obligations.**    The Post-Confirmation Officer shall (a) endeavor to complete and file the Debtor's or the Post-Effective Date Debtor's, as applicable, federal and state tax returns, (b) request, if necessary, an expedited determination of any unpaid tax liability of the Debtor under Bankruptcy Code section 505 for all taxable periods of the Debtor ending after the Petition Date as determined under applicable tax laws and (c) represent the interest and account of the Debtor, its Estate or the Post-Effective Date Debtor, as applicable, before any taxing authority in all matters including, without limitation, any action, suit, proceeding or audit, in all respects consistently with the Shareholder Settlement Agreement and the Shareholder Escrow and Control Agreement.

(ix)    **Reporting Duties.**    The Post-Confirmation Officer shall be responsible for filing informational returns on behalf of the Debtor or the Post-Effective Date Debtor, as applicable, and any other statements, returns or disclosures relating to the Debtor or the Post-Effective Date Debtor, as applicable, that are required by any governmental unit or applicable law.

**(x)** **Reasonable Fees and Expenses.** The Post-Confirmation Officer may incur and pay and satisfy any reasonable and necessary fees and expenses in connection with the performance of his duties under this Plan without the need for further order or notice.

**6.03** *Other Actions.* The Post-Confirmation Officer may take all other actions not inconsistent with the provisions of this Plan which the Post-Confirmation Officer deems reasonably necessary or desirable with respect to administering this Plan.

**6.04** *Expense Fund.* On or after the Confirmation Date, if he deems advisable in his sole discretion, the Estate Representative shall transfer the Expense Fund Amount to the Expense Fund Administrator. The Expense Fund, and earnings thereon, may be used for, *inter alia*, payment of Allowed Class C Claims, Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, the post-confirmation fees and expenses, including applicable income taxes, of the Estate Representative, fees and expenses, including applicable income taxes, of the Expense Fund, and such other fees or expenses of the Debtor and the Estate as determined by the Estate Representative on or before the date he transfers the Expense Fund Amount to the Expense Fund Administrator. The allocation and disbursement of the Expense Fund shall be made in accordance with such determination. To the extent that a portion of the Expense Fund is not disbursed, or otherwise held in reserve to fund the costs and expenses described herein, in the sole judgment of the Expense Fund Administrator, such portion shall be transferred to the Tort Trust, and shall be subject to the terms thereof. In no event shall any amount transferred to the Expense Fund revert to the Debtor or the Estate Representative. The Debtor or the Estate Representative shall have no rights in the Expense Fund except as determined by the Expense Fund Administrator in accordance with this Section 6.04. For all applicable income tax purposes, the Expense Fund Administrator shall file income tax returns for the Expense Fund as a complex trust or other tax entity as determined by the Expense Fund Administrator, and the Expense Fund shall be subject to and shall pay tax on its taxable income, if any.

**6.05** *Distributions Under this Plan*.

**(i)** **Disbursing Agent.** All distributions under this Plan to holders of Allowed Class A, B and C Claims shall be made in accordance with the terms of this Plan by the Post-Confirmation Officer or the Expense Fund Administrator, as applicable. Distributions to holders of Allowed Class D and E Claims shall be made by the Tort Trustee in accordance with the terms and provisions of the Plan and the Tort Trust Documents.

**(ii)** **Effective Date Payments.** On the Effective Date, or as soon thereafter as reasonably practicable, the Post-Confirmation Officer shall remit, to each holder of an Allowed Class A, B or C Claim (as of the Distribution Record Date) the distribution provided for such Claim under this Plan.

**(iii)** **Distribution of Cash.** At the option of the Post-Confirmation Officer or the Tort Trustee, as the case may be, any Cash payment to be made hereunder may be by check or wire transfer.

(iv)    **Currency.**  Where a Claim has been denominated in foreign currency on a proof of claim, the Allowed amount of such Claim shall be calculated in currency of the United States of America based upon the conversion rate in place as of the Petition Date and in accordance with section 502(b) of the Bankruptcy Code.

(v)    **Retention of Cash.**  In making the distributions under this Plan to holders of Allowed Claims in Class A, B or C, the Post-Confirmation Officer shall at all times, and subject to Section 6.04 hereof, and taking into account the Cash, if any, available in the Expense Fund for the purposes set forth in Section 6.04 hereof, retain sufficient Cash as he determines in his sole discretion is reasonably necessary to (a) satisfy all Allowed or Disputed Administrative Expense Claims, Priority Tax Claims and Priority Non-Tax Claims, (b) meet the reasonably necessary administrative expenses of the Post-Effective Date Debtor, including the fees of the Post-Confirmation Officer and (c) satisfy all Disputed Claims (except Disputed Tort Claims).

(vi)    **Distribution of Shareholder Settlement Non-QSF Monies.**  The Estate Representative shall direct the distribution of the Shareholder Settlement Non-QSF Monies, if any, as he determines appropriate in his sole discretion pursuant to this Plan, including, without limitation, for transfer to the Estate and/or for the satisfaction of Administrative Expense Claims.

(vii)    **Interim Distributions.**  The Post-Confirmation Officer may, but shall not be required to, make interim distributions on account of Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims and wind down costs and expenses.  For the avoidance of doubt, the Post-Confirmation Officer shall make no interim distributions to holders of Class D or E Claims, but instead all such interim distributions, if any, shall be made by the Tort Trustee in accordance with the Tort Trust Documents.

(viii)    **Final Distributions.**    As soon as reasonably practicable after the resolution of all Disputed Non-Tort Claims, the Post-Confirmation Officer shall (i) to the extent not previously paid, pay all Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims and wind down costs and expenses; and (ii) to the extent the Post-Effective Date Debtor has remaining Cash after the payments made in accordance with (i) above, distribute such remaining Cash to the Tort Trust.  For the avoidance of doubt, the Post-Confirmation Officer shall make no final distributions to holders of Class D or E Claims, but instead all such final distributions, if any, shall be made in accordance with the Tort Trust Agreement and Claims Resolution Facility Procedures.

6.06    ***Disallowance of Multi-Claimant Proofs of Claim.***  In accordance with paragraph 10 of the Bar Date Order, Claims evidenced by (i) "Multi-Claimant PITWD Claims" (*i.e.*, by proofs of claim joining or on behalf of two (2) or more claimants) submitted without the prior approval of the Bankruptcy Court, or (ii) by proofs of claim purporting to be on behalf of a class of claimants shall be and are hereby disallowed to the extent not previously disallowed; *provided*, *however*, that proofs of claim joining or on behalf of two (2) claimants, one of whose sole Claim is a Class D Consortium Claim, shall not be disallowed pursuant to this Section 6.06.

6.07    ***Procedures for Treating Disputed Claims.***

(i)    **Estimation of Claims.**  The Post-Confirmation Officer may at any time request that the Bankruptcy Court estimate any Claim in Class A, B or C pursuant to section 502(c) of the Bankruptcy Code.  The Tort Trustee may at any time request that the Bankruptcy Court estimate any Claim in Class D or Class E pursuant to section 502(c) of the Bankruptcy Code.  In the event that the Bankruptcy Court estimates any Disputed Claim in Classes A, B, C, D or E, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Post-Confirmation Officer or the Tort Trustee, as applicable, may pursue supplementary proceedings to object to the allowance of such Claim.  All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another.  Claims in Classes A, B, C, D or E may be estimated and subsequently disallowed, reduced, compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

(ii)    **Resolution of Disputed Claims.**

(1)    To the extent that a Disputed Claim in Classes A, B, C or E is not Allowed or becomes an Allowed Claim in an amount less than the amount of the Disputed Claim set forth in the proof of claim, or as previously estimated by the Bankruptcy Court, the excess of the amount of Cash that would have been distributed to the holder of the Disputed Claim in Classes A, B, C or E if the Claim had been Allowed in full over the amount of Cash actually distributed on account of such Disputed Claim shall be available Cash.

(2)    Holders of Disputed Claims in Classes A, B, C or E shall not be entitled to interest if such Disputed Claim becomes an Allowed Claim except to the extent such holder is entitled to interest pursuant to federal or state law.

**6.08    *Closing of the Chapter 11 Case.***  When all Disputed Non-Tort Claims have become Allowed Claims or have been disallowed by Final Order, the Tort Trustee and/or the Post-Confirmation Officer may, if he or she so elects in his or her sole discretion, seek authority from the Bankruptcy Court to close the Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

**6.09    *Cancellation of Existing Agreements.***  Except for purposes of evidencing a right to distributions under this Plan or otherwise provided hereunder, on the Effective Date all of the agreements and other documents, ***except for and other than the Tort Trust Documents, the Settlement Agreements and insurance policies issued to, or insurance agreements entered into by the Debtor prior to the Petition Date (including, without limitation, any policies covering directors' or officers' conduct)***, evidencing the Claims or rights of any holder of a Claim against the Debtor, including any notes evidencing such Claims, shall be deemed cancelled.

**6.10    *Continued Corporate Existence.***  The Post-Effective Date Debtor shall continue to exist after the Effective Date, with all powers of a corporation under the laws of the Commonwealth of Massachusetts except for shareholder management.  The Post-Effective Date Debtor's certificate of incorporation and bylaws shall be deemed amended to include a provision prohibiting the issuance of non-voting equity securities, thereby satisfying the requirements of Bankruptcy Code section 1123(a)(6).  The Post-Confirmation Officer, as the sole officer and

director of the Post-Effective Date Debtor, shall perform each of the actions provided for under this Plan without any requirement of further action by or consent or vote of the Shareholders. At the discretion of the Post-Confirmation Officer, the Post-Effective Date Debtor shall be authorized, only following the completion of all disbursements to holders of Allowed Claims in Classes A, B and C, other transfers and other actions required under this Plan, including without limitation, the sale, monetization or liquidation of the assets, including, but not limited to, any assets transferred to the Estate in accordance with the Settlement Agreements and any assets to which the Estate Representative is entitled to sell for the benefit of the Estate in accordance with the Settlement Agreements, or to file certificates of cancellation or dissolution. The filing of such certificates of cancellation or dissolution shall be deemed authorized and approved in all respects without further action under applicable law, regulation, order or rule, including, without express or implied limitation, any action by the Shareholders. After the Effective Date, the Shareholders shall have no power or authority with respect to the management, operation or other functions of the Post-Effective Date Debtor.

**6.11** *Effectuating Documents and Further Transactions.* Upon the Effective Date, the Estate Representative is authorized and directed to execute, deliver, file or record such contracts, releases and other agreements or documents and take such actions as he may deem to be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

## ARTICLE VII.
## PROVISIONS GOVERNING DISTRIBUTIONS

**7.01** *Distribution Record Date.* (i) As of the close of business on the Distribution Record Date, the claim ledgers for each of the Classes of Claims or Equity Interests shall be deemed closed, and there shall be no further changes in the record holders of any of the Claims or Equity Interests; (ii) the Debtor, the Chapter 11 Trustee, the Post-Confirmation Officer and the Tort Trustee, as the case may be, shall have no obligation to recognize any transfer of Claims or Equity Interests entered on the docket of the Bankruptcy Court on or after the Distribution Record Date; and (iii) the Debtor, the Chapter 11 Trustee, the Post-Confirmation Officer and the Tort Trustee, as the case may be, shall be entitled to recognize and deal for all purposes hereunder only with those record holders stated on the claim and/or their attorneys as of the close of business on the Distribution Record Date, to the extent applicable.

**7.02** *Delivery of Distributions and Undeliverable Distributions.* Subject to Bankruptcy Rule 9010 and the provisions of Section 6.05 hereof, all distributions to any holder of an Allowed Claim in Class A, B or C shall be made at the address of such holder as set forth on the Schedules filed with the Bankruptcy Court or on the books and records of the Debtor unless the Chapter 11 Trustee and/or the Post-Confirmation Officer has been notified in writing of a change of address, including, without limitation, by the filing of a proof of claim by such holder that contains an address for such holder different from the address reflected on such Schedules for such holder. In the event that any distribution to any holder of an Allowed Claim in Class A, B or C is returned as undeliverable, no further distributions to such holder shall be made unless and until the Chapter 11 Trustee and/or the Post-Confirmation Officer is notified of such holder's then-current address, at which time all missed distributions shall be made to such holder, without interest. All demands for undeliverable distributions shall be made on or before

ninety (90) days after the date such undeliverable distribution was initially made.  Thereafter, in accordance with section 347(b) of the Bankruptcy Code, the amount represented by such undeliverable distribution shall irrevocably revert to the Debtor, and any Claim in respect of such undeliverable distribution shall be discharged and forever barred from assertion against the Debtor and its property.  **No distribution shall be made to any Claimant in Class A, B or C and the Claimant's Claim shall be disallowed without further order of the Bankruptcy Court, if such Claimant has not delivered a signed form W-9 to the Post-Confirmation Officer within sixty (60) days of the Effective Date.**

 7.03    *De Minimus Distributions*.  The Post-Confirmation Officer shall not be required to, but may in his sole and absolute discretion, make distributions to any holder of an Allowed Claim in Class A, B, or C of Cash in an amount less than twenty-five (25) dollars.  When distributions do not reach the $25.00 payment threshold, such payment that would have been made will be reserved for the benefit of such claimant until subsequent distribution(s), if any, exceed the threshold on a cumulative basis.

 7.04    *Transactions on Business Days.*  If the Effective Date or any other date on which a transaction may occur under this Plan shall occur on a day that is not a Business Day, the transactions contemplated by this Plan to occur on such day shall instead occur on the next succeeding Business Day but shall be deemed to have been completed as of the required date.

 7.05    *Allocation of Plan Distribution Between Principal and Interest.*  All distributions in respect of any Allowed Claim shall be allocated first to the principal amount of such Allowed Claim, as determined for federal income tax purposes, and thereafter, to the remaining portion of such Claim comprising interest, if any (but solely to the extent that interest is an allowable portion of such Allowed Claim).

 7.06    *Withholding and Reporting Requirements.*  The Post-Confirmation Officer shall comply with all applicable withholding and reporting requirements imposed by any federal, state, local or foreign tax authority but only with respect to Classes A, B or C, and all distributions under this Plan to Class A, B or C shall be subject to any such withholding and reporting requirements.  The Tort Trustee shall comply with all applicable withholding and reporting requirements imposed by any federal, state, local or foreign tax authority but only with respect to Classes D or E, and all distributions under this Plan or the Tort Trust Documents to holders of Allowed Class D or Allowed Class E Claims shall be subject to any such withholding and reporting requirements.  Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution under this Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such distribution, and under no circumstances shall the Chapter 11 Trustee or the Post-Confirmation Officer have or incur any liability with respect to the satisfaction and payment of any such tax obligations, or the non-payment or failure by any such holder to satisfy any such tax obligation.

## ARTICLE VIII.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**8.01** *Executory Contracts and Unexpired Leases*.  On the Effective Date, all executory contracts and unexpired leases to which the Debtor is or may be deemed a party, except for and other than the Tort Trust Documents, the Settlement Agreements (including the insurance policy rights assigned to the Debtor pursuant thereto)and insurance policies issued to, or insurance agreements entered into by, the Debtor prior to the Petition Date (including, without limitation, any policies covering directors' or officers' conduct), shall be deemed rejected as of the Effective Date, without the need for any further action by the Post-Confirmation Officer except for an executory contract or unexpired lease that (i) has been assumed or rejected pursuant to Final Order of the Bankruptcy Court entered prior to the Effective Date or (ii) is the subject of a separate motion to assume or reject filed under section 365 of the Bankruptcy Code by the Debtor prior to the Effective Date.

**8.02** *Insurance Policies and Agreements*.  Except as set forth in the Settlement Agreements or the Confirmation Order, insurance policies issued to, or insurance agreements entered into by, the Debtor prior to the Petition Date (including, without limitation, any policies covering directors' or officers' conduct) shall continue in effect after the Effective Date.  To the extent that such insurance policies or agreements (including, without limitation, any policies covering directors' or officers' conduct) are considered to be executory contracts, then, notwithstanding anything to the contrary herein, this Plan shall constitute a motion to assume or ratify such insurance policies and agreements, and, subject to the occurrence of the Effective Date, the entry of the Confirmation Order shall constitute approval of such assumption pursuant to section 365(a) of the Bankruptcy Code and a finding that each such assumption is in the best interests of the Debtor and its Estate.  Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments shall be required to cure any defaults of the Debtor existing as of the Confirmation Date with respect to each such insurance policy or agreement.  To the extent that the Bankruptcy Court determines otherwise as to any such insurance policy or agreement, the Plan Proponents reserve the right to seek the rejection of such insurance policy or agreement or other available relief.

**8.03** *Approval of Rejection of Executory Contracts and Unexpired Leases.*  Entry of the Confirmation Order shall constitute the approval, pursuant to section 365(a) of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases rejected as of the Effective Date pursuant to this Plan.

**8.04** *Rejection Claims.*  In the event that the rejection of an executory contract or unexpired lease by the Debtor pursuant to this Plan results in damages to the other party or parties to such contract or lease, a Claim for such damages, if not heretofore evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Debtor, or any property to be distributed under this Plan unless a proof of claim is filed with the Bankruptcy Court and served upon the Post-Confirmation Officer on or before the date that is thirty (30) days after the Confirmation Date.

**8.05** *Rejection Claims of Officers and Directors of the Debtor.* Notwithstanding section 8.04 of this Plan, in consideration for the releases and injunctions provided in this Plan and the Settlement Agreements, (i) all contracts or agreements between the Debtor and the former and current officers or directors of the Debtor, with the exception of the Settlement Agreements, are deemed rejected as of the Effective Date, without the need for any further action by the Post-Confirmation Officer and (ii) the claims of such former and current officers or directors of the Debtor, if any, resulting from such rejection are hereby deemed waived.

## ARTICLE IX.
## EFFECTIVENESS OF THIS PLAN

**9.01** *Conditions to Confirmation.* This Plan shall not be confirmed unless the Confirmation Order (i) is in a form and substance satisfactory to the Chapter 11 Trustee and the Official Committee and is otherwise consistent and in accord with the Settlement Agreements, (ii) is in a form acceptable to the Shareholders as to the matters relating to the Shareholder Settlement Agreement, and (iii) approves and implements, among other things, (a) the Settlement Agreements, to the extent any of the Settlement Agreements have not otherwise or previously been approved by the Bankruptcy Court, and (b) the releases and injunctions set forth in sections 10.05 and 10.06 of this Plan. The foregoing conditions to confirmation of this Plan are material and non-waivable.

**9.02** *Date of Effective Date.* The Effective Date shall occur on the later of: (i) the first Business Day following (14) days after the Confirmation Date, provided that a court of competent jurisdiction has not entered a stay of the Confirmation Order as of such date (in which instance, the Effective Date will not occur until such stay is dissolved); and (ii) the first Business Day on which all other conditions to the Effective Date have been satisfied or waived.

**9.03** *Satisfaction of Conditions.* Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

**9.04** *Occurrence of Effective Date.* The Plan Proponents shall cause the Effective Date to occur as soon as is practicable.

**9.05** *Substantial Consummation Upon Effective Date.* On the Effective Date, this Plan will be deemed to be substantially consummated under the applicable sections of the Bankruptcy Code.

## ARTICLE X.
## EFFECT OF CONFIRMATION

**10.01** *Vesting of Assets.*

**(i)** As of the Effective Date, the property of the Estate shall vest in the Post-Effective Date Debtor or such other Entity as provided in this Plan.

**(ii)** From and after the Effective Date, the Post-Confirmation Officer or Tort Trustee, as the case may be, may dispose of, or cause to be disposed of, the assets of the Post-

Effective Date Debtor and the Tort Trust, respectively, free of any restrictions of the Bankruptcy Code, but in accordance with the provisions, as the case may be, of this Plan and the Tort Trust Documents.

**(iii)** As of the Effective Date, all assets of the Post-Effective Date Debtor and the Tort Trust shall be free and clear of all Claims, except as otherwise provided in this Plan or the Confirmation Order.

**10.02** *Binding Effect.* Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, on and after the Effective Date, the provisions of this Plan shall bind any holder of a Claim against, or Equity Interest in, the Debtor and its respective successors and assigns, whether or not the Claim or Equity Interest of such holder is Impaired under this Plan, whether or not such Claim or Equity Interest has been filed or asserted against the Debtor and whether or not such holder has accepted this Plan.

**10.03** *Exculpations and Limitation of Liability.* As of the Effective Date, none of (i) the Chapter 11 Trustee, (ii) the Official Committee or (iii) the members, representatives, accountants, financial advisors, consultants and attorneys of the Entities described in (i) and (ii) of this paragraph shall have or incur any liability to any person for any act taken or omission in connection with or related to the Chapter 11 Case, including but not limited to (i) formulating, preparing, disseminating, implementing, confirming, consummating or administrating this Plan (including soliciting acceptances or rejections thereof), (ii) the Disclosure Statement or any contract, release or other agreement or document entered into or any action taken or omitted to be taken in connection with this Plan or the Disclosure Statement, or (iii) any distributions made pursuant to this Plan, except for any acts determined by Final Order to have constituted willful misconduct, bad faith or gross negligence.

**10.04** *Preservation and Non-Waiver of Estate Defenses and Objections and Related Rights Reserved for the Debtor, its Successors in Interest, Creditors and Parties in Interest.*

**(i)** **No Limitation on Defenses, Set-Off or Right to Subordination as to Claims Against the Estate.** Nothing in this Plan (other than the provisions of sections 10.03 and 10.05 hereof) the Confirmation Order or the Settlement Agreements shall alter, enhance, waive, release or otherwise impair or preclude any of the Estate's defenses, rights to set-off and/or rights to compel subordination as to any Claim or Administrative Expense Claim of any type asserted against the Estate, as otherwise allowed by law, including the right to assert as a defense, set-off or subordination, any claim that would ordinarily or otherwise have to be asserted in or brought by a cross-claim, cross-complaint or separate action.

**(ii)** **No Limitation on Right to Object to Claims or Administrative Expense Claims.**

**(1)** Nothing in this Plan (other than the provisions of Sections 10.03 and 10.05 hereof) the Confirmation Order or the Settlement Agreements shall alter, enhance, waive, release or otherwise impair or preclude the right and ability of (a) the Estate Representative and all his or her successors in interest to object to any Class A, B, C or E Claim or Administrative Expense Claim, (b) the Tort Trustee and all his or her successors in interest to

40

object to any Class E Claim, or (c) the Official Committee or any other Creditor or party in interest to object to any Class A, B, C or E Claim or Administrative Expense Claim (collectively, the "Permitted Objections"). The Permitted Objections may include, as part of any objection to any Class A, B, C or E Claim or Administrative Expense Claim, a prayer for denial or disallowance of the Class A, B, C or E Claim or Administrative Expense Claim, reduction in amount by off-set, disgorgement of amounts previously paid and/or equitable subordination, as otherwise allowed by law, on any ground that could have been brought by way of lawsuit, adversary proceeding or contested matter but for (a) the releases contained in the Settlement Agreements, (b) the exculpation contained in section 10.03 of this Plan (c) the releases and injunctions contained in sections 10.05 and 10.06 of this Plan, (d) the covenant not to sue contained in section 10.08 of this Plan or (e) the Confirmation Order. In addition, the makers of the Permitted Objections may utilize whatever remedies and procedural vehicles are otherwise available under the law, including, if necessary, an adversary proceeding, provided that the makers of the Permitted Objections, consistent with the covenant not to sue contained in section 10.07 of this Plan, shall not seek any affirmative recovery or relief beyond denial, disallowance, disgorgement of amounts previously paid, reduction or subordination of the Class A, B, C or E Claim or Administrative Expense Claim at issue. Objections to Class E Claims shall be heard and determined by the Bankruptcy Court.

(2) Nothing in this Plan (other than the provisions of sections 10.03 and 10.05 hereof) the Confirmation Order or the Settlement Agreements shall alter, enhance, waive, release or otherwise impair or preclude the right and ability of the Chapter 11 Trustee or other Estate Representative, and all his or her successors in interest, to object to any Claim (including any Class D Claim) either for the purpose of determining the holder of such Claim's eligibility to vote on this Plan or the amount of such Claim. For the avoidance of doubt, with respect to a Class D Claim, such objection(s), if any, shall not include a prayer for denial or disallowance of the subject Class D Claim.

**10.05** *Releases.*

(i) <u>**Settlement Agreement Releases Supplemented; No Impact on Rights to Object**</u>. The following releases shall be in addition to and are intended to supplement any releases included in the Settlement Agreements as between the parties to such Settlement Agreements. Except as expressly set forth in the Settlement Agreements, nothing in this Plan or the releases set forth herein shall affect any rights of the Chapter 11 Trustee, the Post-Confirmation Officer, any Estate Representative(s) or the Official Committee to object to the allowance, amount, priority or secured status of the claims of any party receiving a release under this Plan as provided in sections 502, 503, 506, 507, 509 or 510 of the Bankruptcy Code, including with respect to any right of setoff or recoupment.

(ii) <u>**Releases by the Debtor and Estate Representative(s)**</u>. *Except as set forth in section 10.05(i) of this Plan, and subject in all respects to the provisions of section 10.04 of this Plan, on the Effective Date, the Debtor, the Chapter 11 Trustee, the Estate Representative(s) and the Estate shall unconditionally release, and hereby are deemed to forever unconditionally release, the Shareholder and Affiliate Released Parties, the Other Contributing Parties, including, without limitation, GDC, the Individual GDC Insureds and Preferred Mutual, and the Tort Claimants from any and all Claims, debts, obligations,*

41

*demands, liabilities, suits, judgments, damages, rights and Estate Causes of Action, whatsoever (other than the right to enforce the obligations under this Plan, the Settlement Agreements and the contracts, instruments, releases and other agreements and documents delivered thereunder), whether direct or indirect, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part upon any act or omission, transaction, transfer event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor or to the Debtor's products, including, without limitation, the Drugs, the Chapter 11 Case, this Plan, the Disclosure Statement, the Debtor's estate, the Policies, GDC, and the negotiation or funding of the Settlement Agreements.*

(iii)   **Releases in Favor of the Debtor and Estate Representative(s).**  *Subject in all respects to the provisions of section 10.04 of this Plan, on the Effective Date, each of the Debtor, the Chapter 11 Trustee, the Estate Representative(s), and the Estate shall be forever and unconditionally released from any and all Claims, debts, obligations, demands, liabilities, suits, judgments, damages, rights and causes of action, whatsoever by all Entities (other than the right to enforce the obligations under this Plan, the Settlement Agreements and the contracts, instruments, releases and other agreements and documents delivered thereunder), whether direct or indirect, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part upon any act or omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor or to the Debtor's products, including, without limitation, the Drugs, the Chapter 11 Case, this Plan, the Disclosure Statement, any prepetition act or omission of the Debtor, the Debtor's estate, the Policies, GDC and the negotiation or funding of the Settlement Agreements.*

(iv)   **Releases by Shareholder and Affiliate Released Parties.**  *Subject in all respects to the provisions of section 10.04 of this Plan and the Shareholder Settlement Agreement, on the Effective Date, each of the Shareholder and Affiliate Released Parties shall unconditionally release, and hereby are deemed to forever unconditionally release, each of the Debtor, the Debtor's estate, the Chapter 11 Trustee, the Estate Representative(s), the Official Committee, the Official Committee members, the Tort Claimants, the Other Contributing Parties, including, without limitation, GDC, the Individual GDC Insureds, Preferred Mutual, and the foregoing persons' and entities' respective attorneys and advisors (solely in their respective capacities as such) from any and all Claims, debts, obligations, demands, liabilities, suits, judgments, damages, rights, and causes of action, whatsoever, whether direct or indirect, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part upon any act or omission, transaction, transfer, event, or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor or to the Debtor's products, including, without limitation, the Drugs, the Chapter 11 Case, this Plan, the Disclosure Statement, the Debtor's estate, the Policies, GDC and the negotiation or funding of the Settlement Agreements; provided, however, that this release shall not apply to any Claims assigned by the Shareholder and Affiliate Released Parties to the Debtor or to the Chapter 11 Trustee pursuant to a Settlement Agreement, nor shall it apply to the right to enforce the obligations under the Plan, the Settlement Agreements,  and the contracts, instruments, releases and other agreements and documents delivered thereunder.*

(v) **Releases in Favor of Shareholder and Affiliate Released Parties
(Other than Ameridose)**. *Subject in all respects to the provisions of section 10.04 of this
Plan, on the Effective Date, the Shareholder and Affiliate Released Parties (other than
Ameridose), as well as their respective attorneys and advisors (solely in their respective
capacities as such), shall be forever and unconditionally released from any and all Tort
Claims, Estate Causes of Action, Contributor and Affiliate Released Claims, and all other
Claims, debts, obligations, demands, liabilities, suits, judgments, damages, rights and causes
of action, whatsoever, whether direct or indirect, liquidated or unliquidated, fixed or
contingent, matured or unmatured, known or unknown, then existing or thereafter arising, in
law, equity or otherwise that are based in whole or in part upon any act or omission,
transaction, transfer, event or other occurrence taking place on or prior to the Effective Date
in any way relating to the Debtor or to the Debtor's products, including, without limitation, the
Drugs, the Chapter 11 Case, this Plan, the Disclosure Statement, the Debtor's estate, the
Policies, GDC and the negotiation or funding of the Settlement Agreements;* <u>provided,
however,</u> *that the right to enforce the obligations under the Shareholder Settlement
Agreement, the Shareholder Escrow Agreement and this Plan and the contracts, instruments,
releases and other agreements and documents delivered thereunder, and the right to enforce
the provisions of the Shareholder Settlement Agreement with regard to "Non-Disclosed
Assets" (as defined therein), shall be expressly preserved by the Estate Representative in
accordance with the terms of the Shareholder Settlement Agreement.*

(vi) **Releases by Other Contributing Parties**. *Subject in all respects to the
provisions of section 10.04 of this Plan, on the Effective Date, each Other Contributing Party
including, without limitation, GDC, the Individual GDC Insureds and Preferred Mutual,
shall unconditionally release, and hereby are deemed to forever unconditionally release, each
of the Debtor, the Debtor's estate, the Chapter 11 Trustee, the Estate Representative(s) the
Official Committee, the Official Committee members, the Tort Claimants, the Shareholder and
Affiliate Released Parties, each additional Other Contributing Party, and the foregoing
persons' and entities' respective attorneys and advisors (solely in their respective capacities as
such) from any and all Claims, debts, obligations, demands, liabilities, suits, judgments,
damages, rights, and causes of action, whatsoever, whether direct or indirect, liquidated or
unliquidated, fixed or contingent, matured or unmatured, known or unknown, then existing or
thereafter arising, in law, equity or otherwise that are based in whole or in part upon any act
or omission, transaction, event, or other occurrence taking place on or prior to the Effective
Date in any way relating to the Debtor or to the Debtor's products, including, without
limitation, the Drugs, the Chapter 11 Case, this Plan, the Disclosure Statement, the Debtor's
estate, the Policies, GDC, and the negotiation or funding of the Settlement Agreements;*
<u>provided, however,</u> *that this release shall not apply to any Claims assigned by the Other
Contributing Parties to the Debtor pursuant to a Settlement Agreement, nor shall it apply to
the right to enforce the obligations under the Plan, the Settlement Agreements, and the
contracts, instruments, releases and other agreements and documents delivered thereunder in
their favor.*

(vii) **Releases in Favor of Other Contributing Parties (Other than
Ameridose)**. *Subject in all respects to the provisions of section 10.04 of this Plan, on the
Effective Date, each Other Contributing Party (other than Ameridose), including, without
limitation, GDC, the Individual GDC Insureds and Preferred Mutual, shall be forever and*

*unconditionally released from any and all Estate Causes of Action, Tort Claims, NECC Claims, and all other Claims, debts, obligations, demands, liabilities, suits, judgments, damages, rights and causes of action, whatsoever, whether direct or indirect, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part upon any act or omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor or to the Debtor's products, including, without limitation, the Drugs, the Chapter 11 Case, this Plan, the Disclosure Statement, the Debtor's estate, the Policies, GDC and the negotiation or funding of the Settlement Agreements; provided, however, that this release shall not in any way limit the right of the Estate Representative to enforce the obligations under the Plan, the Settlement Agreements, and the contracts, instruments, releases and other agreements and documents delivered thereunder in the Estate's favor.*

(viii)    **Releases by Tort Claimants**. *Subject in all respects to the provisions of section 10.04 of this Plan, on the Effective Date, each Tort Claimant shall unconditionally release, and hereby is deemed to forever unconditionally release each of the Debtor, the Debtor's estate, the Chapter 11 Trustee, the Estate Representative(s), the Official Committee, the Official Committee members, the Other Contributing Parties (other than Ameridose), including, without limitation, GDC, the Individual GDC Insureds and Preferred Mutual, the Shareholder and Affiliate Released Parties (other than Ameridose), all parties released under the Settlement Agreements, and the foregoing persons' and entities' respective attorneys and advisors (solely in their capacities as such) from the Tort Claims, the NECC Claims, the Contributor and Affiliate Released Claims, and any and all claims, debts, obligations, demands, liabilities, suits, judgments, damages, rights and causes of action, whatsoever, whether direct or indirect, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part upon any act or omission, transaction, event, or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor or to the Debtor's products, including, without limitation, the Drugs, the Chapter 11 Case, this Plan, the Disclosure Statement, the Debtor's estate, the Policies, GDC and the negotiation of the Settlement Agreements; provided, however, that this release shall not apply to the right to enforce the obligations under the Plan, the Settlement Agreement, and the contracts, instruments, releases and other agreements and documents delivered thereunder in their favor.*

10.06  *Injunctions.*

(i)    <u>No Impact on the Rights of the Parties to the Settlement Agreements</u>. Nothing in this section 10.06 or otherwise in this Plan or the Confirmation Order, shall affect, release or otherwise limit the rights and duties of the parties to the Settlement Agreements to enforce or comply with the provisions of the Settlement Agreements. The rights and duties of the parties under the Settlement Agreements are set forth in and shall be governed by the Settlement Agreements.

(ii)    <u>Injunction in Favor of the Debtor and Estate Representative(s)</u>. **Except as to the rights and claims created or expressly preserved by this Plan, the**

44

Settlement Agreements the Shareholder Escrow Agreement, and the Confirmation Order, upon the Effective Date, the Debtor, the Chapter 11 Trustee, and the Estate Representative(s) shall have and be entitled to an injunction forever barring and enjoining all Persons and/or Entities from asserting against the Debtor any past, present and future rights, interests, obligations, claims, causes of action, damages (including punitive damages), demands (including demands for contribution, indemnity or otherwise), liabilities, expenses, fees (including, but not limited to, attorneys' fees, expert fees, consulting fees and other professional fees) and costs of any kind or any type whatsoever, whether known or unknown, whether foreseen or unforeseen, whether direct or indirect, contingent or actual, whether liquidated or unliquidated, whether statutory or common law, whether asserted or unasserted and whether based on contract, negligence, bad faith, willful, wanton or malicious conduct, or any other theory in law or equity concerning, arising from or relating to any actual or alleged past, present or future act, omission, defect, incident, event or circumstance from the beginning of the world to the Effective Date, in any way relating to or in connection with (i) the Debtor, the Drugs or any and all products of and/or distributed by the Debtor, or (ii) the Debtor's estate, the Chapter 11 Case, this Plan, the Disclosure Statement, the Settlement Agreements and/or the Policies, except with regard to any claims and rights expressly reserved pursuant to Section 10.05 above.

(iii)    **Injunction in Favor of Shareholder and Affiliate Released Parties.** Upon the Effective Date, all Persons or Entities shall be permanently barred, enjoined, and restrained from commencing, prosecuting, continuing or asserting, either derivatively or on behalf of themselves, in any court, arbitration proceeding, administrative agency, or other forum in the United States of America or elsewhere, any and all Claims released pursuant to Section 10.05 above or under the Shareholder Settlement Agreement, whether the Person or Entity had actual or constructive notice of the terms of the Shareholder Settlement Agreement, Plan or Confirmation Order or otherwise, *except that* this injunction shall not apply to the right of the acting Estate Representative to enforce the Substitute Lien and the obligations and the acting Estate Representative's rights under the Shareholder Settlement Agreement, the Escrow Agreement, the Plan, and the Confirmation Order.

(iv)    **Injunction in Favor of the Other Contributing Parties.** Except as to the rights and claims created or expressly preserved by this Plan, the Settlement Agreements, the Escrow Agreement and the Confirmation Order, upon the Effective Date, the Other Contributing Parties, including, without limitation, GDC, the Individual GDC Insureds and Preferred Mutual, shall have and be entitled to an injunction forever barring and enjoining all Persons and/or Entities from asserting against the Other Contributing Parties any past, present and future rights, interests, obligations, claims, causes of action, damages (including punitive damages), demands (including demands for contribution, indemnity or otherwise), liabilities, expenses, fees (including, but not limited to, attorneys' fees, expert fees, consulting fees and other professional fees) and costs of any kind or any type whatsoever, whether known or unknown, whether foreseen or unforeseen, whether contingent or actual, whether direct or indirect, liquidated or unliquidated, whether statutory or common law, whether asserted or unasserted and whether based on contract, negligence, bad faith, willful, wanton or malicious conduct, or any other theory in law or

equity concerning, arising from or relating to any actual or alleged past, present or future act, omission, defect, incident, event or circumstance from the beginning of the world to the Effective Date, in any way relating to or in connection with (i) the Debtor, the Drugs or any and all products of and/or distributed by the Debtor, or (ii) the Debtor's estate, the Chapter 11 Case, the Plan, the Disclosure Statement, the Settlement Agreements and/or the Policies.

     **10.07** *Covenant Not to Sue.* Except as set forth in sections 10.04 and 10.05 of this Plan and except as to the rights and claims created or expressly preserved by this Plan, neither the Chapter 11 Trustee, the Estate Representative, the Debtor, the Tort Trustee nor any successor in interest will commence or prosecute any lawsuit, adversary proceeding or contested matter that includes a prayer for damages or for equitable relief against the Settling National Insurers or the Shareholders or Affiliate Released Parties relating to, concerning or arising from the (i) the Debtor, the Drugs or any and all products of and/or distributed by the Debtor, or (ii) the Debtor's estate, the Chapter 11 Case, this Plan, the Disclosure Statement, the Settlement Agreements and/or the Policies.

     **10.08** *Covenant Not to Sue (Shareholder and Affiliate Released Parties).* Each of Shareholder and Affiliate Released Parties covenants and agrees not to commence or continue against the Estate Parties any action or proceeding of any nature whatsoever with respect to claims released by the Shareholder and Affiliate Released Parties in section 10.05 above and in the Settlement Agreements, and the Estate Parties covenant and agree not to commence or continue against the Shareholder and Affiliate Released Parties, any action or proceeding of any nature whatsoever with respect to Contributor and Affiliate Released Claims.

     **10.09** *Terms of Pre-Plan Injunction and Stays.* Unless otherwise provided in this Plan, the Confirmation Order or a separate order of the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Case under section 105 or 362 of the Bankruptcy Code, or otherwise under applicable law, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in such applicable order.

**ARTICLE XI.**
**RETENTION OF JURISDICTION**

     **11.01** *Jurisdiction of Bankruptcy Court.* Except as otherwise explicitly set forth in this Plan or the Tort Trust Documents as to those matters which are to be considered and determined by the District Court pursuant to an order withdrawing the reference as to those matters, the Bankruptcy Court shall retain original and exclusive jurisdiction of matters arising under, arising out of or related to the Chapter 11 Case and this Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for all matters, to the maximum extent permitted by law, including for, among other things, the following purposes:

          **(i)** To determine any motion, adversary proceeding, application, contested matter and other litigated matter pending on or commenced after the Confirmation Date, including, without limitation, any proceeding relating to an Estate Cause of Action;

(ii)     To consider Disputed Claims, including objections, allowance, classification, priority, compromise, estimation or payment of any Claim, including Class E Claims;

(iii)     To hear and determine all applications under sections 330, 331 and 503(b) of the Bankruptcy Code for allowance and payment of Administrative Expense Claims, including awards of compensation for services rendered and reimbursement of expenses incurred prior to the Effective Date;

(iv)     To enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated;

(v)     To issue injunctions, enter and implement other orders and take such other actions as may be necessary or appropriate to restrain interference by any person with the consummation, implementation, or enforcement of this Plan, the Settlement Agreements, the Confirmation Order or any other order of the Bankruptcy Court;

(vi)     To hear and determine any application to modify this Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in this Plan, the Disclosure Statement, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(vii)     To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan, the Confirmation Order, any transactions or payments contemplated by any of the foregoing, or any agreement or other document governing or relating to any of the foregoing;

(viii)     To take any action and issue such orders as may be necessary to construe, enforce, implement, execute and consummate this Plan or to maintain the integrity of this Plan following consummation;

(ix)     To recover all assets of the Debtor and property of the Estate, wherever located;

(x)     To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(xi)     To hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including, without limitation, matters with respect to any taxes payable by a trust established in furtherance of this Plan, including the Tort Trust);

(xii)     To hear and determine any motions intended to directly or indirectly transfer venue of all or any part of the Chapter 11 Case;

(xiii)     To hear and determine any other matters related to this Plan, the Disclosure Statement, the Confirmation Order, the Plan Support Funding Agreement, the Estate

Causes of Action, the Tort Trust Documents and related documents and not inconsistent with the Bankruptcy Code and title 28 of the United States Code; and

(xiv)    To enter a final decree closing the Chapter 11 Case.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

**12.01    *Reporting of Shareholder Settlement Payments*.**  Pursuant to Section 10.3(a) of the Shareholder Settlement Agreement, to the fullest extent permitted by law, all Shareholder Settlement Payments shall be characterized and reported for all tax purposes as contributions of capital by the Shareholders in accordance with their respective ownership positions in NECC, and the acting Estate Representative shall timely prepare true and accurate Schedule K-1s containing all information as required by the Tax Code and the IRS to enable the Contributors to apply for and collect tax refunds in accordance with the Shareholder Settlement Agreement.

**12.02    *Tax Information to be Provided to Shareholders*.**  Pursuant to Section 10.3(b) of the Shareholder Settlement Agreement, the Estate Representative shall provide full and accurate copies of any and all income tax returns, as supplemented or amended, filed on behalf of the Debtor to each Shareholder within fourteen (14) days of filing thereof, as well as any additional related information required by the Shareholders to accurately prepare or amend their personal tax returns and receive "Net Tax Refunds" (as defined in the Shareholder Settlement Agreement), with such returns and related information to be maintained as confidential and subject to the provisions of the Protocol Order.

**12.03    *Refunds*.**  Pursuant to Section 10.3(d) of the Shareholder Settlement Agreement, all procedural or computational decisions and judgments related to the "Refund Claims," the "Refunds" and "Net Tax Refunds" (as such terms are defined in the Shareholder Settlement Agreement) shall be made so as to (i) maximize the amount of the Refund Claims, the Refunds and the Net Tax Refunds consistent with applicable laws, including, without limitation, the 10-year loss carryback provisions for product liability matters and (ii) accelerate the timing of the filing of the Refund Claims and the receipt of the Refunds and the Net Tax Refunds to the extent reasonably possible and in compliance with applicable laws.

**12.04    *Withdrawal of the Reference*.**  The rights of the Plan Proponents to move, pursuant to 28 U.S.C § 157(d), Bankruptcy Rule 5011, and Local Rule 5011-1, for a withdrawal of the reference to the Bankruptcy Court of those matters under this Plan or the Tort Trust Documents which are to be considered and determined by the District Court, shall be and hereby are expressly preserved, and such motion may be made at any time subsequent to the filing of this Plan.

**12.05    *Dissolution of the Official Committee*.**  The Official Committee shall dissolve on the Effective Date; *provided*, *however*, that (i) the Official Committee shall continue to exist after the Effective Date for the purposes of opposing any pending appeals of the Confirmation Order and taking any actions related thereto, and the Official Committee's professionals may seek compensation for and reimbursement of expenses related to such opposition and actions, if any, from the Post-Effective Date Debtor, and (ii) after dissolution of the Official Committee, the

Official Committee's professionals shall retain their rights to pursue, review and object to any applications for compensation and reimbursement of expenses filed in accordance with Section 2.01 and 2.02 of this Plan.

12.06 *Quasi-Judicial Immunity*.  The Confirmation Order shall provide that the Post-Confirmation Officer, the Estate Representative, the Tort Trustee, the Settlement Administrator(s) and the Special Master are entitled to quasi-judicial immunity to the fullest extent allowed by law in connection with their implementation of the Confirmation Order, this Plan, the Tort Trust Agreement, the Claims Resolution Facility and the Provider Claims Resolution Facilities.

12.07 *Payment of Statutory Fees.*  On the Effective Date, and thereafter as may be required, the Tort Trustee shall pay all fees payable pursuant to 28 U.S.C. § 1930, including all quarterly fees pursuant to 28 U.S.C. § 1930 that become due after the Effective Date.

12.08 *Effectuating Documents and Further Transactions.*  The Chapter 11 Trustee, up to the Effective Date, and the Post-Confirmation Officer, subsequent to the Effective Date, are authorized to execute, deliver, file or record such contracts, releases and other agreements or documents and take such actions as the Chapter 11 Trustee or the Post-Confirmation Officer, as the case may be, deem to be reasonably necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

12.09 *Exemption from Transfer Taxes.*  Pursuant to section 1146(c) of the Bankruptcy Code, the assignment or surrender of any lease or sublease, or the delivery of any deed or other instrument of transfer under, in furtherance of or in connection with this Plan, including any bills of sale, or assignments executed in connection with any disposition of assets contemplated by this Plan (including transfers of assets to and by the Tort Trust) shall not be subject to any stamp, real estate transfer, mortgage recording, sales, use or other similar tax.

12.10 *Elimination of Vacant Classes.*  Any Class that is not occupied as of the commencement of the Confirmation Hearing by an Allowed Claim or a Claim temporarily allowed under Bankruptcy Rule 3018 or as to which no vote is cast shall be deemed eliminated from this Plan for purposes of voting to accept or reject this Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

12.11 *Nonconsensual Confirmation.*  In the event any Impaired Class of Claims does not accept this Plan in accordance with section 1126 of the Bankruptcy Code, the Plan Proponents shall request that the Bankruptcy Court confirm this Plan in accordance with section 1129(b) of the Bankruptcy Code.  Subject to section 1127 of the Bankruptcy Code, the Plan Proponents reserve the right to modify this Plan to the extent that confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

12.12 *Modification of Plan.*  The Plan may be amended, modified or supplemented by this Plan Proponents in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as the Bankruptcy Court may otherwise direct.  Prior to the Effective Date, the Plan Proponents may make appropriate technical adjustments and modifications to this

Plan without further order or approval of the Bankruptcy Court, provided that such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims or Equity Interests.  In addition, after the Effective Date, so long as such action does not materially adversely affect the treatment of holders of Claims or Equity Interests under this Plan, the Post-Confirmation Officer may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan or the Confirmation Order.  Notwithstanding the foregoing, without the prior express consent of the Contributing Parties, this Plan may not be amended pursuant to this paragraph if after such amendment, this Plan would not include the releases and injunctions in favor of the Contributing Parties.

**12.13   *Revocation or Withdrawal of Plan.***  The Plan Proponents, upon their unanimous consent and agreement, reserve the right to revoke or withdraw this Plan at any time prior to the Confirmation Date.  If the Plan Proponents take such action, this Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claim by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any other person in any further proceedings involving the Debtor.

**12.14   *Severability.***  If, prior to the entry of the Confirmation Order, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Plan Proponents, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation, except to the extent that such holding, alteration or interpretation, invalidates a condition to effectiveness of this Plan, including the releases and injunctions provided for in Sections 10.04 and 10.05.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms, and upon the Effective Date all such provisions are accordingly non-severable.

**12.15   *Schedules and Exhibits.***  The schedules and exhibits to this Plan are incorporated into and are a part of this Plan as if set forth in full herein.

**12.16   *Successors and Assigns.***  All the rights, benefits and obligations of any person named or referred to in this Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such person.

**12.17** *Notices*.   Any notice required or permitted to be provided to the Chapter 11 Trustee or the Official Committee under this Plan to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided in this Plan, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

if to the Chapter 11 Trustee, to:

DUANE MORRIS LLP
100 High Street, Suite 2400
Boston, MA 02110
Attn:         Paul D. Moore, Esq.
Telephone:   (857) 488-4200
Facsimile:   (857) 401-3057
Email:       pdmoore@duanemorris.com

if to the Official Committee, to:

BROWN RUDNICK LLP
One Financial Center
Boston, MA 02111
Attn:         William R. Baldiga, Esq.
             Kiersten A. Taylor, Esq.
Telephone:   (617) 856-8200
Facsimile:   (617) 856-8201
Email:       wbaldiga@brownrudnick.com
             ktaylor@brownrudnick.com
-and-

BROWN RUDNICK LLP
7 Times Square
New York, NY 10036
Attn:         David J. Molton, Esq.
Telephone:   (212) 209-4800
Facsimile:   (215) 209-4801
Email:       dmolton@brownrudnick.com

**12.18** *No Admission.*   Notwithstanding anything herein to the contrary, nothing contained in this Plan shall be deemed as an admission by the Plan Proponents with respect to any matter set forth herein including, without limitation, liability on any Claim or the propriety of any Claim classification.

## ARTICLE XIII.
## CONFIRMATION REQUEST

**13.01**   The Plan Proponents request confirmation of this Plan under section 1129(b) of the Bankruptcy Code.

## Schedule 1.06

## Affiliated Entities

1. 203 Flanders Road, LLC

2. 205 Flanders Road, LLC

3. Alaunus Pharmaceutical, LLC

4. Ameridose, LLC

5. Cadden Family-2012, LLC

6. Cardo Properties, LLC

7. Conigliaro Block, Inc.

8. Conigliaro Family Investments, LLC

9. Conigliaro Industries, Inc.

10. GDC Holdings, Inc.

11. GDC Properties Management, LLC

12. Hunter Holdings, LLC

13. L & S Creations, Inc.

14. Medical Sales Management, Inc.

15. Medical Sales Management, SW, Inc.

16. Nationwide Foam, Inc.

17. Nationwide Recycling Sales Management, Inc.

18. Physicians Choice Medical Marketing, LLC

19. Stone House Realty Group, LLC

**Schedule 1.103**

**National Contributing Parties[1]**

1.  Ameridose, as defined in Section 1.08 of the Plan

2.  GDC, as defined in Section 1.66 of the Plan

3.  The Individual GDC Insureds, as defined in Section 1.77 of the Plan

4.  Maxum, as defined in Section 1.95 of the Plan

5.  Netherlands Insurance, as defined in Section 1.111 of the Plan

6.  Peerless Insurance, as defined in Section 1.118 of the Plan

7.  PMIC, as defined in Section 1.131 of the Plan

8.  Preferred Mutual, as defined in Section 1.136 of the Plan

9.  Victory, as defined in Section 1.184 of the Plan

---

[1]     Each National Contributing Party is a National Contributing Party solely in the capacity indicated in the Plan.

## Schedule 1.144

### Provider Contributing Parties[2]

1. High Point, as defined in Section 1.72 of the Plan

2. Inspira, as defined in Section 1.81 of the Plan

3. Ironshore, as defined in Section 1.86 of the Plan

4. Ironshore Specialty Insurance, as defined in Section 1.88 of the Plan.

5. Juno Assurance, as defined in Section 1.89 of the Plan

6. Lexington Insurance, as defined in Section 1.92 of the Plan

61143946

---

[2]  Each Provider Contributing Party is a Provider Contributing Party solely in the capacity indicated in the Plan.