UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


IN RE:  NEW ENGLAND COMPOUNDING    )  MDL NO. 13-02419-RWZ
PHARMACY CASES LITIGATION          )
                                   )
                                   )
                                   )
                                   )
                                   )
                                   )

        BEFORE:  THE HONORABLE RYA W. ZOBEL AND
                 THE HONORABLE JENNIFER C. BOAL



**MOTION HEARING AND
STATUS CONFERENCE**




John Joseph Moakley United States Courthouse
Courtroom No. 12
One Courthouse Way
Boston, MA 02210


December 4, 2014
2:00 p.m.




Catherine A. Handel, RPR-CM, CRR
Official Court Reporter
John Joseph Moakley United States Courthouse
One Courthouse Way, Room 5205
Boston, MA 02210
E-mail: hhcatherine2@yahoo.com

1    APPEARANCES:

2     For The Plaintiffs:

3         Hagens, Berman, Sobol, Shapiro LLP, by THOMAS M. SOBOL,
     ESQ., KRISTEN JOHNSON, ESQ., and Edward Notargiacomo, 55
4    Cambridge Parkway, Suite 301, Cambridge, Massachusetts 02142;

5         Janet, Jenner & Suggs, LLC, KIMBERLY A. DOUGHERTY, ESQ., 75
     Arlington Street, Suite 500, Boston, Massachusetts  02116;

6
          Crandall & Katt, by PATRICK THOMAS FENNELL, ESQ., 366 Elm
7    Avenue, SW, Roanoke, Virginia 24016;

8         Branstetter, Stranch & Jennings, PLLC, by J. GERARD STRANCH,
     ESQ., 227 Second Avenue North, Nashville, Tennessee 37201-1631;

9
              Ellis & Rapacki LLP, by FREDRIC L. ELLIS, ESQ., 85
10   Merrimac Street, Suite 500, Boston, Massachusetts 02114;

11            Lieff Cabraser Heimann & Bernstein, LLP, by ANNIKA K.
     MARTIN, ESQ., 250 Hudson Street, 8th Floor, New York, New York
12   10013-1413;

13        Lieff Cabraser Heimann & Bernstein, LLP, by MARK P. CHALOS,
     ESQ., 150 Fourth Avenue North, Suite 1650, Nashville, Tennessee
14   37219;

15

16
      FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS:
17
          Brown Rudnick, by KIERSTEN A. TAYLOR, ESQ., One Finncial
18   Center, Boston, Massachusetts 02111;

19        Harris Beach PLLC, by FREDERICK H. FERN, ESQ., 100 Wall
     Street, New York, New York 10005;
20

21
      FOR PAUL D. MOORE, IN HIS CAPACITY AS CHAPTER 11 TRUSTEE OF
22   NECP, INC.:

23        Duane Morris LLP by MICHAEL R. GOTTFRIED, ESQ., 100 High
     Street, Suite 2400, Boston, Massachusetts 02110-1724;
24

25    (Appearances continued on the next page.)

1    <u>FOR THE DEFENDANTS:</u>

2       Tucker & Ellis LLP, by MATTHEW P. MORIARTY, ESQ., 1150
Huntington Building, 925 Euclid Avenue, Cleveland, Ohio
3    44115-1414;

4       Michaels, Ward & Rabinovitz LLP, by DAN RABINOVITZ, ESQ.,
One Beacon Street, Boston, Massachusetts 02108;
5

       Todd & Weld LLP, by CORRINA L. HALE, ESQ., 28 State Street,
6    31st Floor, Boston, Massachusetts 02109;

7         Fulbright & Jaworski, LLP, by YVONNE K. PUIG, ESQ., 98
San Jacinto Blvd, Suite 1100, Austin, Texas 78701;
8

       Goodwin Procter LLP, by JAMES REHNQUIST, ESQ., and ROBERTO
9    M. BRACERAS, ESQ., Exchange Place, 53 State Street, Boston,
Massachusetts 02109;
10

       Smith Duggan Buell & Rufo LLP, by MATTHEW J. WALKO, ESQ.,
11    Lincoln North, 55 Old Bedford Road, Lincoln, Massachusetts 01773;

12       Sloane & Walsh LLP, by ROBERT H. GAYNOR, ESQ., Three Center
Plaza, Boston, Massachusetts 02108;
13

       Hermes, Netburn, O'Connor & Spearing, P.C., by SCOTT
14    SPEARING, ESQ., 265 Franklin Street, 7th Floor, Boston,
Massachusetts 02110-3113;
15

       Blumberg & Wolk LLC, by CHRISTOPHER WOLK, ESQ., 158 Delaware
16    Street, Woodbury, New Jersey 08096;

17

    <u>VIA PHONE FOR THE PLAINTIFFS:</u>
18

19     Lipton Law, by MARC E. LIPTON, ESQ., 18930 West Ten Mile Road,
Suite 3000, Southfield, Michigan 48075;
20

21    <u>VIA PHONE FOR THE DEFENDANTS:</u>

22       Prindle Amaro Goetz Hillyard Barnes & Reinholts, by CYNTHIA
A. PALIN, ESQ., 310 Golden Shore, 4th floor, Long Beach,
23    California 90802;

24       Schmid & Voiles, by STEPHANIE R. HANNING, ESQ., 333 South
Hope Street, Fifth floor, Los Angeles, CA 90071.
25

```
1                       P R O C E E D I N G S

2          (The following proceedings were held in open court before

3      the Honorable Rya W. Zobel, United States District Court Judge,

4      and the Honorable Jennifer C. Boal, Magistrate Judge, United

5      States District Court, District of Massachusetts, at the John J.

6      Moakley United States Courthouse, One Courthouse Way, Boston,

7      Massachusetts, on December 4, 2014.)

8              THE COURT:  Good afternoon.  Please be seated.

9              COURTROOM DEPUTY CLERK URSO:  This is New England

10     Compounding.  It's 13-MD-2419.

11             THE COURT:  Let me propose that -- I think we had

12     agreed that the motions would be heard first.  I would like to

13     give each of the -- there are three motions -- each of the

14     defendants ten minutes.  I assume that the plaintiffs will be

15     perfectly content to rely on their papers and my earlier

16     decisions.  Yes?  Mr. Stranch -- oh, I'm sorry, what is your

17     name, please?

18             MS. DOUGHERTY:  Kim Dougherty, your Honor, from Janet

19     Jenner & Suggs.  I represent the plaintiffs involved in the

20     motions brought on behalf of Dr. Glaser and Encino and we

21     would be happy to rely on your earlier decisions.

22             THE COURT:  Thank you.

23             MS. DOUGHERTY:  Unless there's something else you

24     have questions about.

25             THE COURT:  Okay.  So, those of you who are arguing
```

1    over telephone, each motion should take no more than ten

2    minutes to argue.  The plaintiffs rely on their briefs and the

3    decisions earlier, which they cite in their briefs.  So, we

4    will start with -- I'm not exactly sure of the order.

5            MS. JOHNSON:  Your Honor, if I may.

6            THE COURT:  I guess we'll start with the one filed in

7    the MDL, which is Gururau Sudarshan and Cincinnati Pain

8    Management Consultants, and would counsel please identify

9    yourself.

10           MS. JOHNSON:  Your Honor, I don't believe the

11   Cincinnati Pain motion is on.

12           THE COURT:  It isn't?

13           MS. JOHNSON:  I can hand you what the Plaintiffs'

14   Steering Committee filed, which identified four motions for

15   argument.  Of those, there are really only two that go today.

16   I, unfortunately, only have one copy, but I'll hand this to

17   you in just a moment.

18           THE COURT:  Wait a minute.  I can go back to the

19   December agenda.  Where on the agenda does it appear, Ms.

20   Johnson?

21           MS. JOHNSON:  ECF No. 1563, your Honor, which

22   identified four motions for the Court.  Of those, there are

23   two I would like to briefly address just to explain why they

24   do not need to be argued today.

25           THE COURT:  So, which two do we have to hear?

```
 1            MS. JOHNSON:  Numbers two and three, your Honor.  The

 2   first was resolved by a forthcoming stipulation and the --

 3            THE COURT:  That's one of the new numbers, right?

 4            MS. JOHNSON:  Yes.

 5            THE COURT:  That one we hear?

 6            MS. JOHNSON:  Yes.

 7            THE COURT:  Which is -- here it is.  This is No. 38

 8   in 14-12884, different docket number.

 9            MS. DOUGHERTY:  Yes, your Honor.

10            THE COURT:  And the other one is Glaser?

11            MS. JOHNSON:  Yes, your Honor.

12            MR. STRANCH:  That is correct.  Thank you, your

13   Honor.

14            THE COURT:  Which is Docket No. 27, also in 12884.

15            MS. JOHNSON:  That's correct.

16            THE COURT:  Why don't these cases have -- why don't

17   they have the MD number?

18            MS. JOHNSON:  I believe these are motions to dismiss

19   that were filed in individual dockets because they related to

20   individual cases.  So, that case is a member of the MDL, but

21   it was not filed in the master MDL docket.

22            THE COURT:  Can't we put them all in the master MDL

23   docket?

24            MS. JOHNSON:  I think that's an excellent idea, your

25   Honor.
```

1          THE COURT:  How can we do that?

2          MS. JOHNSON:  We can -- the SPC can file a proposed

3    order that requires all filings be made in the master MDL

4    docket, and we will do that.

5          THE COURT:  All of these independent cases go into

6    the master docket as well.  There's a whole pile of them

7    that's there.

8          MS. JOHNSON:  Yes, that's right.  We will endeavor to

9    put a proposed order in front of you and also speak with the

10   clerks to come up with a solution to this problem.

11         THE COURT:  I appreciate that as always.  Okay.

12         So, who would like to address the motion by Encino

13   Outpatient Surgery to dismiss?

14         MS. PALIN:  Your Honor, Cynthia Palin, appearing on

15   behalf of Encino.  I will address our motion to dismiss.

16         THE COURT:  Okay.  I'll hear you.  Ten minutes, no

17   more.

18         MS. PALIN:  Yes, your Honor.

19         As set forth in our motion to dismiss, without

20   notifying any of the California defendants, and that would be

21   Encino, Dr. Glaser and The Pain Institute, plaintiff filed the

22   action in the federal court in California, and without giving

23   notice and without serving them, transferred the matter to

24   your court in Massachusetts.  Defendants -- or plaintiffs then

25   served defendants with a summons issued by the federal court

1    in Massachusetts.

2         Plaintiffs argue that that's proper because either

3    the bankruptcy rules allow us to do that or there is some

4    basis for nationwide service of process.

5         We disagree.  As cited in my moving papers in the

6    *Omni Capital National Limited vs. Rudolph Wolff & Company*

7    *Limited* case, the Court has made clear that service of a

8    summons is an issue of due process.  Under the Federal Rules,

9    Civil Procedure Rule 4(k), either the state of Massachusetts

10   would have to have jurisdiction over the defendants, which it

11   does not.  These defendants have absolutely no contact with

12   the state of Massachusetts.  They are California residents and

13   California corporations who do not conduct any business or

14   treat anyone in Massachusetts.

15        Likewise, Massachusetts' long-arm statues would not

16   permit service of the summons on California residents who have

17   no contact with that state.  Therefore, there must be a

18   federal statute that authorizes service.

19        All of the causes of action pled in plaintiff's

20   complaint are state causes of action and California

21   substantive law applies, whether we are in federal court or

22   not.  Under Rule 4(k), there is no authorization for service

23   of process or for service using a Massachusetts summons.

24        I don't believe you can use the bankruptcy rule.

25   We're not in the bankruptcy court.  The bankruptcy rules for

```
1    service of process don't apply to this lawsuit.  We've
2    governed by the Federal Rules of Civil Procedure and there's
3    no basis for service of a Massachusetts summons on a
4    California entity under Rule 4(k), and on that basis, I think
5    the motion to dismiss should be granted.
6           Secondly, as noted by Dr. Glaser in his motion to
7    dismiss, NECC is not a party to this lawsuit.  Plaintiffs are
8    relying on the fact that they filed a claim in the bankruptcy
9    action, and we contend that that is not sufficient.  There's
10   no cross-complaint in this lawsuit against NECC.  NECC is
11   clearly not a party.
12          There is also no cause of action in plaintiff's
13   complaint asserting that defendants are vicariously liable for
14   anything that NECC did or didn't do.  Therefore, any recovery
15   here against the California defendant would be on the basis of
16   California defendant's negligence or alleged liability without
17   regard to NECC and -- because there is no allegation in any of
18   the causes of action for vicarious liability.  So, on that
19   basis, I don't believe there is any related-to jurisdiction.
20          The defendants in this case have made a very
21   conscientious decision to not file a claim or file a cross-
22   complaint against NECC for this very reason.  We have walked
23   away from those claims because we know that asserting the
24   claims would confer related-to jurisdiction.
25          I don't think plaintiffs' mere filing of a claim in
```

1    the bankruptcy action gives this Court that related-to

2    jurisdiction.  There is no crossover.  There's no cause of

3    action asserting any kind of vicarious liability on the

4    California defendants' part for the action of NECC.  So, on

5    that basis, I don't think that there is related-to

6    jurisdiction.

7          Also raised by Glaser, the plaintiffs in this action

8    aren't the proper party plaintiff.  California substantive law

9    applies under California law.  The fiancee or live-in partner

10   of a decedent has no cause of action, even if decedent was

11   supporting her, paying all of her expenses and she was

12   completely dependent on him financially.  Under California

13   substantive law, she has no cause of action arising out of his

14   wrongful death.

15         As for his children, no one has appointed as the

16   personal representative.  So, the plaintiffs can't pursue this

17   action as well and for this third reason, we believe the

18   motion to dismiss should be allowed.  I will --

19         THE COURT:  Excuse me.  The title of the case --

20   she's suing as executor.  Why can't she do that?

21         MS. PALIN:  Under California law, she has to be

22   appointed as a personal representative.  The executor of the

23   will doesn't have the procedural right to bring an action

24   until she's been appointed by the probate court as a personal

25   representative, especially when there are other heirs, but I

```
 1    would defer to Dr. Glaser's counsel and give the rest of my
 2    time to her so that she can also be heard.
 3              THE COURT:  Okay.  Thank you.  Ms. Hanning.
 4              MS. HANNING:  Yes, your Honor.  Stephanie Hanning on
 5    behalf of defendants Dr. Glaser and The Pain Institute.
 6              One of the big issues we find is that the state of
 7    the pleadings, it affects the jurisdiction and it affects the
 8    substantive claims.  The complaint was originally filed in
 9    California with Barbara Myer listed as the successor in
10    interest and four of the decedent's heirs.  It also said that
11    Ms. Luna would file papers to be appointed the personal
12    representative.  So, clearly, she has not been appointed the
13    personal representative.
14              THE COURT:  How do I know that?  She says she is.
15              MS. HANNING:  I don't believe she does, your Honor.
16    The original complaint says that she will file papers to be
17    appointed personal representative, which implies that she has
18    not yet done that, and the amended complaint does not
19    reference a personal representative whatsoever.
20              THE COURT:  Okay.
21              MS. PALIN:  And she would have a court order, your
22    Honor, that would be attached.
23              THE COURT:  Okay.  Anything else?
24              MS. HANNING:  Yes.  This causes a problem with the
25    wrongful death claim because the wrongful death can only be
```

1    asserted by personal representative for the heirs.  As

2    plaintiffs point out, if there is a personal representative,

3    then the heirs do not also have a cause of action.  If there

4    is no personal representative, then all of the heirs have to

5    be joined.

6            We don't know, based on the state of the pleadings,

7    what's going on here because the amended complaint in the

8    caption also lists Michelle Luna as executor, and plaintiffs

9    claim that the parties omitted from the caption are

10   incorporated by reference, but we don't have any caselaw that

11   says you can incorporate parties by reference.  You can

12   incorporate facts, but we don't have any authority that says

13   you can omit parties from your caption and still assert claims

14   on behalf of those parties and against those parties.

15           The state of the pleadings also affects the survival

16   claims, all of the claims that are asserted on behalf of

17   decedent, because, again, only -- survival claims can only be

18   asserted by a personal representative or if not, a successor

19   in interest.

20           The original complaint says that Barbara Myer was the

21   successor in interest.  The new complaint -- the amended

22   complaint apparently claims that Michelle Luna is the personal

23   representative.  We don't know who is asserting this claim,

24   and the original complaint does not delineate who is asserting

25   each cause of action.  So, at best, the complaint is uncertain

```
 1   based on the amended pleadings and the failure to comply with
 2   California law.
 3            THE COURT:  Thank you.
 4            That is an issue that I have not previously decided
 5   and I don't think it's really touched on in the plaintiff's
 6   memorandum.  Do you wish to address it briefly?
 7            MS. DOUGHERTY:  Yes, your Honor.  First, I just --
 8            THE COURT:  Could you, please, give me your name
 9   again?
10            MS. DOUGHERTY:  Sure.  Kim Dougherty on behalf of the
11   plaintiffs.
12            THE COURT:  Kim?
13            MS. DOUGHERTY:  Yes, your Honor.  Kim Dougherty on
14   behalf of the plaintiffs in this matter.
15            We do address much of what's discussed here in our --
16            THE COURT:  Personal representative?
17            MS. DOUGHERTY:  In our papers.  We have filed all of
18   the paperwork, your Honor.  Unfortunately, we are waiting on
19   the probate court to make the appointment.
20            But one thing I would like to just note is some of --
21   a reply was filed without seeking leave of court.  We have not
22   had the opportunity to file a sur-reply.  We would like the
23   opportunity, if we are just resting on the papers, to clarify
24   some of these things, but I will clarify here in this court
25   some of the issues that have been raised.
```

1          We have filed for Ms. Luna to be appointed as

2    personal representative of the estate in compliance with both

3    California and Massachusetts law.  We are waiting on the court

4    to appoint her.  That's not something that we really have a

5    lot of control over.  We have to wait for the probate court.

6          However, your Honor, there is caselaw to support

7    specifically that when you are in circumstances like this.

8    There's a case called *Bolles vs. Lebowitz*, and it's One F.

9    Supp. 2d. 67 at Page 72, and this is a District Court of

10   Massachusetts case that basically says that -- holds that when

11   a plaintiff is appointed the administrator of the decedent's

12   estate in an action on behalf of the decedent after the

13   defendant filed its motion for summary judgment, it

14   essentially cures any defect in the plaintiff's original

15   complaint.

16         So, I think courts are aware of the fact that not

17   often are plaintiffs in control of the probate court when they

18   need to file a lawsuit within the timeframe of the statute of

19   limitations.  So, we are in that --

20         THE COURT:  So, what do you want me to do?

21         MS. DOUGHERTY:  At this point I believe that it

22   should be denied because the probate court is who we're

23   waiting on in terms of the pending issues with respect to

24   getting the estate appointed.  It's pretty clear in our papers

25   who we are seeking relief on behalf of.

1    And just to fill in the Court, the -- Ms. Luna is the

2    personal representative who is set forth within the will as

3    the executrix of the estate.  Ms. Myer is the sole beneficiary

4    of the estate.

5    One of the things that my sister counsel has ignored

6    to tell your Honor is the fact that not only can Ms. Myer

7    collect as the sole beneficiary of the estate and Ms. Luna

8    bring the action on behalf of the estate, adult children,

9    which Ms. Luna is one of, can also recover under both the

10   Massachusetts and the California wrongful death statutes for

11   loss of consortium.  So, they are appropriate parties and they

12   are potential beneficiaries if, in fact, a jury decides that

13   we prove our claims.

14   With respect to who is a party and who is not a

15   party, your Honor, the original complaint was very clear.  It

16   named the defendants.  It named New England Compounding

17   Center.  That is why the case got transferred under 1407.

18   In the short form complaint, which is an

19   administrative tool, your Honor, as you're aware, we fully

20   incorporated by reference and attached both the long form

21   original California complaint and the master complaint and we

22   adopted all of that.  Rather than filing a new short form

23   complaint, your Honor, that's another 45 pages, we adopted it,

24   and that was the process that this Court set up in order for

25   us to efficiently move forward and bring this case in the MDL

```
 1    and name all the parties that we need to and serve them.

 2           Sister counsel has not stated anything that has shown

 3    that service has been improper.  When the summons issued --

 4    so, I'll just give you some procedural background.

 5           We filed the complaint in federal court in California

 6    on June 2nd.  Within four weeks it was transferred to the MDL.

 7    At that point in time we can't serve it.  It's not in -- it's

 8    not in California anymore.  Within four weeks it transferred

 9    under 1407.  We filed our short form amended complaint within

10    another four weeks and we properly served within the time

11    allotted.

12           They cannot deny they have been served this

13    complaint, the original complaint, the master complaint, and

14    the short form complaint.  Service is entirely appropriate

15    here, your Honor, and --

16           THE COURT:  Okay.  Let me ask you with respect to the

17    representation.  When were the probate papers filed?

18           MS. DOUGHERTY:  The probate papers -- we have a

19    probate lawyer.  I'll have to double-check that, your Honor.

20           THE COURT:  Approximately.

21           MS. DOUGHERTY:  Approximately -- I'm not exactly

22    sure.

23           THE COURT:  I mean, was it yesterday or was it a

24    month or two?

25           MS. DOUGHERTY:  It was not yesterday, your Honor, no.
```

1   It's been several weeks that they've been pending.

2   THE COURT:  Do you have any notion as to how quickly,

3   as a matter of practice, the probate court acts on those

4   papers?

5   MS. DOUGHERTY:  Well, we anticipate that it should be

6   within a couple of weeks if it goes within the normal course

7   of business that we see.

8   THE COURT:  Well, it seems to me that I should simply

9   hold onto these motions until I hear from counsel that the

10  probate court has acted one way or the other.  It doesn't seem

11  to make sense to throw it out if, in fact, the probate court

12  decides not to appoint Ms. Luna and then start all over again.

13  MS. DOUGHERTY:  Yes.  And I can tell you that there

14  have been absolutely no objections to her appointment.

15  There's no issues over the will.

16  THE COURT:  I know, but it is at the moment not

17  appropriate, I think, for her to act as personal

18  representative unless the probate court says so.  I don't

19  think you disagree with that assertion.

20  MS. DOUGHERTY:  Your Honor, I don't disagree at all.

21  I think it's a good idea.

22  THE COURT:  I will take the papers.  I will not do

23  anything until I'm advised by both counsel in each case to --

24  that the probate matter has now been resolved, okay?

25  How about that, Ms. --

1            MS. PALIN:  Your Honor, Cynthia Palin, again, on

2    behalf of Encino.

3            If those papers are, in fact, filed and served, we

4    would like an opportunity then to submit a further brief that

5    addresses those issues in light of whatever ruling the

6    court -- probate court has issued.

7            THE COURT:  Well, I don't quite understand that

8    because you're saying these papers are defective in one

9    respect, that she has not been appointed personal

10   representative.  If she's appointed personal representative,

11   then that objection goes away and I don't know why we should

12   start over again, right?

13           MS. HANNING:  Your Honor, if I may.  Stephanie

14   Hanning on behalf of the Glaser defendants.

15           One of the other issues, though, is, again, who is a

16   party to this action.  Even if Ms. Luna is appointed personal

17   representative, then Barbara Myer cannot assert survival

18   causes of action.  The survival causes of action then belong

19   to the personal representatives.  The other heirs cannot

20   assert survival cause of action.  If there's one cause of

21   action, it's asserted by the personal representative.  Those

22   claims should be dismissed with the -- along with the wrongful

23   death claim.  Ms. Myer cannot assert a wrongful death claim.

24           THE COURT:  Okay.  Let's do it this way.  That both

25   sides, the plaintiffs and defendants, will file a joint

1    statement when the probate court has acted and tell me what

2    the probate court has decided, and the defendants will have a

3    couple of weeks to file any additional explanation of why the

4    probate court's position doesn't solve the problem.  Maybe

5    counsel can even talk to each other and resolve the problem by

6    agreement.

7              MS. PALIN:  Thank you, your Honor.

8              THE COURT:  Thank you.

9              MS. HANNING:  Thank you, your Honor.

10             THE COURT:  So, we will go off the telephone now and

11   back to the regular agenda.  Thank you all.

12             MS. PALIN:  Thank you, your Honor.

13             MS. HANNING:  Thank you.

14             THE COURT:  And, Ms. Johnson, the -- let's see.  The

15   other motion was Luna against Unifirst.  That one was not on

16   for today?  No, we didn't just hear that one, did we?  We

17   heard Luna against --

18             MS. JOHNSON:  That's not on.

19             THE COURT:  We did hear that.  That was part of --

20             MS. DOUGHERTY:  What we just heard, yes.

21             THE COURT:  Luna against Unifirst and Luna against

22   Encino, right?

23             MS. DOUGHERTY:  Yes, your Honor.

24             THE COURT:  So, those are the two that we dealt with.

25   And let me return to you your document, which I'm sure you

1    will need.

2            MS. JOHNSON:  Thank you, your Honor.

3            THE COURT:  And with respect to Liberty's summary

4    judgment motion, that is not to be heard today?

5            MS. JOHNSON:  Well, we have a bit of a predicament on

6    that one, your Honor.  The plan had been to have that argument

7    heard today.  Mr. Jarnagin was going to argue on behalf of the

8    Plaintiffs' Steering Committee.  As I understand, he was not

9    able to make his flight this morning for some personal

10   reasons.  I think Mr. Jarnagin is on the phone and is prepared

11   to address that by phone if the Court would permit.

12           THE COURT:  That was on for today?

13           MS. JOHNSON:  Yes.

14           MR. SPEARING:  If I may, your Honor.  Scott Spearing

15   for Liberty.

16           I think it was -- what we tried to put on today was

17   oral argument on the PSC's 56(d) motion in opposition.  So,

18   there is no opposition to the motion for summary judgment.

19           Liberty's position is that if the Court were to rule

20   on the plaintiffs' motion, deny the 56(d) motion, then the

21   Court could simply enter judgment on the summary judgment

22   motion because there is no other opposition, but if Mr.

23   Jarnagin can't argue -- if we could set a date for next week

24   to argue that, that would be fine with Liberty.

25           THE COURT:  Well, you might as well do it today if we

```
 1   can do it in the same ten minutes.

 2             MR. SPEARING:  Okay.

 3             THE COURT:  Now, you represent?

 4             MR. SPEARING:  I represent Liberty Industries,

 5   Liberty.

 6             THE COURT:  So, I should hear first from the

 7   proponents of the 56(d) motion.

 8             MR. SPEARING:  Yes, your Honor.

 9             THE COURT:  You're opposing it?

10             MR. SPEARING:  That's correct.

11             THE COURT:  Okay.  Ms. Johnson, are you going to do

12   that?

13             MS. JOHNSON:  I'm hoping that Mr. Jarnagin is on the

14   telephone.

15             THE COURT:  Mr. Jarnagin, are you there?

16             (No response.)

17             THE COURT:  How do we get him?

18             (Discussion off the record at the bench.)

19             MS. JOHNSON:  Your Honor, I suggest that the

20   Plaintiffs' Steering Committee will rest on the papers.

21             THE COURT:  That's Mr. Jarnagin -- no.  He is --

22             MS. JOHNSON:  He was arguing on behalf of the

23   Plaintiffs' Steering Committee.

24             COURTROOM DEPUTY CLERK URSO:  I did send him the

25   number this morning and spoke to his -- well, texted his
```

1  secretary with the number and she sent me a confirmation back

2  saying that he would appear on the telephone to argue and

3  that's why I printed that out for you, Judge, to let you know,

4  but I'm not sure.

5       MS. JOHNSON:  So, we will rest on the papers, your

6  Honor.

7       MR. SPEARING:  If they rest on the papers, we can do

8  so also.

9       I would just like to add for purposes of Liberty's

10  position is that in addition to the 56(d) motion that they

11  filed, our opposition was that the motion was not proper.

12  There was not a proper affidavit to meet the requirements of

13  56(d), and one of the requirements -- or one of the issues

14  that was raised by the Plaintiffs' Steering Committee was that

15  they wanted some discovery from Liberty.

16       That discovery has been had.  Depositions of two

17  Liberty executives were taken on November 18th.  The

18  transcripts have been available since November 24th, and

19  there's been no further filings with respect to the 56(d)

20  motion or the summary judgment motion.

21       So, I would submit to you, your Honor, if the Court

22  will deny the motion for 56(d) and there is no other

23  opposition, the Court could enter judgment in favor of Liberty

24  on the motion for summary judgment.

25       THE COURT:  Okay.  So, I will take that on the papers

1    and decide the 56(d) part of the motion.  And you say that --

2    or the parties are agreed that if the 56(d) motion is denied,

3    then summary judgment should enter for the defendant?

4         MR. STRANCH:  No, your Honor.  That's not what we

5    agreed to.  Your Honor, Gerard Stranch for the Plaintiffs'

6    Steering Committee.

7         The 56(d) that was filed in this case is basically

8    the same one that was filed earlier on in a different

9    matter -- in a different matter in front of the Court that the

10   Court granted, and that's to -- that was against St. Thomas to

11   allow us an opportunity to conduct some discovery.

12        Liberty has agreed to do some discovery, as I

13   understand it, and that some of that discovery has gone

14   forward now, but I'm not positive if it's all gone forward yet

15   or not.  It's supposed to be done, because, frankly, I'm not

16   handling Liberty, but we did do some of the briefing on that

17   in my shop, your Honor, and, you know, if all the discovery

18   has been -- has all of it been done that was agreed to?

19        MR. SPEARING:  All of it has been done with respect

20   to Liberty that I know of.  The depositions were concluded by

21   the Plaintiffs' Steering Committee.

22        MR. STRANCH:  Yes.  Well, then it sounds like if the

23   -- if we've gotten -- no, we have not done all the discovery,

24   your Honor.

25        THE COURT:  Would the plaintiffs kindly consult with

```
1    each other and --
2              MS. JOHNSON:  If we could have a moment, your Honor.
3              THE COURT:  -- and get one uniform response.
4              (Discussion off the record.)
5              THE COURT:  Any reason not to hold this over until
6    January 14th?
7              MS. JOHNSON:  Yes, your Honor.
8              MR. SPEARING:  Yes, your Honor.  Yes, there is.
9              Liberty, as you'll see on the other part of the
10   agenda, it has a declaratory judgment action with its insurer.
11   The date for filing final opposition on the motion for summary
12   judgment against the insurer lapses on the 29th.  Liberty will
13   not be filing an opposition.
14             That motion will enter and we could have lack of
15   insurance coverage by the time that hearing comes around, your
16   Honor.  Liberty will be out of insurance.  And at that point,
17   due to its financials, it's going to have to file bankruptcy.
18             THE COURT:  I thought it was in bankruptcy already.
19             MR. SPEARING:  It has not filed yet, your Honor.  We
20   told the Plaintiffs' Steering Committee that there's been
21   bankruptcy counsel hired.  Schedules have been made.  We were
22   trying to see -- Liberty was trying to get as much as it could
23   out of its insurer before then.  That's the urgency of
24   deciding the motion today, your Honor.
25             Just one last thing.  I'm sorry.
```

1          With respect to discovery, we pushed and we got the

2    Plaintiffs' Steering Committee two depositions they asked for.

3    There was nothing else outstanding to Liberty.

4          It's my understanding that the PSC relied upon the

5    56(d) motion solely.  There is no other opposition.  The time

6    has elapsed to file such an opposition.

7          So, if the 56(d) is not proper, it doesn't meet the

8    requirements, it seems to me that there is no other

9    opposition.  Summary judgment should enter.

10         THE COURT:  Thank you.  Ms. Johnson.

11         MS. JOHNSON:  First, I apologize, your Honor, that

12   the plaintiffs are not better prepared on this issue today.

13         I have asked my colleague to see if they can reach

14   Mr. Jarnagin.  If we're able to get him on the phone, we would

15   like to have him briefly address this.  Perhaps we can

16   continue going through the remainder of the agenda.

17         The second point would be, it's my understanding that

18   the 56(d) asked, in the alternative, for an opportunity to

19   oppose if the 56(d) was denied.  I believe that to be the

20   case.  We can look into it.  If counsel disputes that, we can

21   revisit it, but I believe that to be the pleading.

22         So, with that, perhaps we could return to the agenda.

23         THE COURT:  Yes.

24         MS. JOHNSON:  Well, after that snafu, the good news

25   is I have good news, which is that --

1          THE COURT:  Let me organize my papers first.

2          MS. JOHNSON:  I do have additional copies of the

3    agenda, your Honor, if that would be helpful.

4          THE COURT:  When is Gururau Sudarshan on?  Does that

5    require a hearing?

6          MS. JOHNSON:  It's not currently set for a hearing,

7    your Honor.  I have not spoken with the particular plaintiff's

8    counsel for that case.

9          MR. ABELN:  Your Honor, on behalf of CPM, Anthony

10   Abeln, the moving party on the CPM issue.

11          It's a clinic case that arises out of Ohio issues of

12   law, which we addressed in the last session relative to a

13   different set of clinics, the BKC clinic.  So, I think in

14   discussions with the steering committee, we were going to wait

15   for this Court's decision on that motion to dismiss.  It may

16   moot out all of the remaining issues on --

17          THE COURT:  I'm sorry, which motion to dismiss?

18          MR. ABELN:  The BKC motion to dismiss.

19          THE COURT:  I have that, yes.  All right.  So, this

20   should wait for BKC?

21          MR. ABELN:  Yes, your Honor.

22          THE COURT:  Okay.

23          MR. ABELN:  Thank you.

24          THE COURT:  So, now we go back to the agenda, and I

25   am prepared to hear good news.

```
 1              MS. JOHNSON:  Good.

 2              THE COURT:  Liberty's counsel agree we will come back

 3   to it as soon as they have reconnoitered.

 4              MR. SPEARING:  Thank you, your Honor.

 5              THE COURT:  Thank you.

 6              MS. JOHNSON:  The good news, your Honor, is that the

 7   trustee filed yesterday a plan for reorganization in the

 8   bankruptcy along with the disclosure statement.  Attached to

 9   that disclosure statement was a document I'd like to hand up

10   for the Court's convenience, which is a summary of the Chapter

11   11 plan and disclosure statement.

12              THE COURT:  Do you have two copies of that, by any

13   chance?

14              MS. JOHNSON:  I do.  I have several.

15              (Attorney Johnson hands documents to the Court.)

16              MS. JOHNSON:  I'm going to address the specific

17   contributions that are being made as part of that plan.  Some

18   of those are contributions being made by parties that were

19   participating in this Court's mediation program.  So, this

20   will resolve those mediations.

21              NECC owners and shareholders are contributing between

22   $47.75 million and $70 million.  The --

23              THE COURT:  Is this set out in this summary?

24              MS. JOHNSON:  It is, your Honor, if you turn to the

25   bottom of Page 3.
```

1          THE COURT:  Okay.

2          MS. JOHNSON:  The difference in that range -- the

3    reason it's a range is that the 47.75 is the cash contribution

4    that is being made.  There are also some tax refund dollars

5    that are anticipated, which is estimated to bring that

6    contribution up to in the range of $70 million.

7          There is also PMIC and Maxum contribution -- those

8    are NECC's insurers -- for $25.2 million; an Ameridose

9    settlement of insurance coverage of $10 million; a GDC

10   settlement of $3.75 million; an ARL settlement, who had been

11   participating in the mediation program, of $6.4 million; a

12   Victory settlement, another mediation participant, of $5.5.

13   For a total contribution of this pocket as between $98.6

14   million and $120.85 million.

15         There's then what I'll call the second pocket -- I'm

16   not sure why I picked that noun -- which is a settlement with

17   High Point, also a mediation participant, for $3.5 million;

18   and a settlement with Inspira, also a mediation participant,

19   for $16 million.  The total amount of contribution as between

20   those two clinic participants is $19.5 million.

21         That leaves us, then, with one mediation participant

22   that is not -- has not finalized the settlement, but is

23   continuing to mediate, which is Insight, the clinic in

24   Virginia.  Given the posture with them, there are a few other

25   Insight-related matters on the agenda, but the agreement

1    between the plaintiffs and counsel for Insight is those

2    matters should be held off while that mediation continues.

3         I will pause for a moment, your Honor, because I

4    think it is appropriate to recognize the tremendous amount of

5    hard work that the trustee, his counsel, the creditor's

6    committee and all of the lawyers that have had hands in this.

7    It's many, many hands, your Honor, in pulling this together

8    and from the PSC's perspective, every one is to be commended

9    for the result that's been achieved here.

10        THE COURT:  Well, I thank you for that, including

11   your proposal.  Thank you to all, and those of you who are on

12   the telephone and to the mediator.

13        MS. JOHNSON:  Yes, certainly.

14        Resolutions LLC, both Carmin Reiss and Eric Green

15   have done a tremendous job here, your Honor.  We're very

16   grateful to have them.

17        In terms of the next steps in the plan, I think Mr.

18   Gottfried will address that when we get to the bankruptcy

19   update, but I just want to share the dollars and the results

20   of the mediations up-front with the Court.

21        I think that brings us to agenda No. 2, which is the

22   status of the declaratory judgment actions.  Counsel for

23   Liberty has already referenced that there is some activity in

24   the declaratory judgment action to determine Liberty's

25   insurance coverage.

 1          There is a motion for extension of time filed

 2   extending the time to respond to the summary judgment motion

 3   until December 29th.  So, there may be more to report on that

 4   front at the next status conference.

 5          There's also, in terms of the Ameridose declaratory

 6   judgment action, a status conference before Judge Saylor set

 7   for January 5th, at 2 o'clock.

 8          That then brings us to discovery, Item No. 3.

 9          THE COURT:  The first item there I think pertains to

10   Judge Boal's order, right?

11          MS. JOHNSON:  Yes, your Honor, and that order has

12   been entered, and we wanted to share with the Court that the

13   parties have been working very hard and have so far complied

14   with those deadlines.  Plaintiff profile forms went out for

15   most defendants on schedule on November 17th.  We also have an

16   agreement with Unifirst that relates to the fact that they

17   were in mediation when some of those deadlines were set, such

18   that we agreed with counsel for Unifirst that we may serve

19   plaintiff profile forms by December 22nd.  So, merry Christmas

20   to Unifirst.

21          In terms of 3-b., your Honor, that was set for

22   argument today, but there has been resolution as between the

23   parties.  I understand that St. Thomas has agreed to respond

24   to those interrogatories sometime mid December.  The details

25   are still being worked out.

1          THE COURT:  If there is a hitch in that, it goes to

2    Judge Boal.

3          MS. JOHNSON:  Thank you, your Honor.

4          That actually raises -- the PSC has been wondering

5    whether there might be a process that we could put in place so

6    that certain pleadings were flagged, maybe by the Clerk's

7    Office, as being sent -- referred automatically to Judge Boal.

8          THE COURT:  Whatever you work out, I'm sure she will

9    be happy to accommodate.

10          MS. JOHNSON:  Okay.  Thank you, your Honor.

11          So, we may file something to attempt to expedite that

12    process a bit.  Thank you.

13          MAGISTRATE JUDGE BOAL:  May I just ask on 3-b., so

14    should that motion be denied as moot now?

15          MS. JOHNSON:  I think the preference of the parties

16    would be, because they have not quite worked out all of the

17    details, that it remain open for the time being and pending,

18    but we will let you know as soon as those details have been

19    worked out.  It may be that -- I think the plaintiffs may want

20    to actually have answers in hand before they withdraw that

21    motion.  So, it may be sometime in December.

22          That brings us, then, to the status of litigation

23    track, No. 4.  We've already addressed 4-a., the Liberty

24    motions for summary judgment.

25          4-b., the PSC will be filing, we hope early next

```
 1    week, an amended complaint against Unifirst -- well, I'm
 2    sorry.  We'll be filing a motion for leave to file an amended
 3    complaint against Unifirst.  Counsel for Unifirst has a copy
 4    of that.  We're discussing whether or not they assent to that
 5    or not, but, in any event, we intend to file something next
 6    week.
 7              THE COURT:  You're not going to object to it, are
 8    you?
 9              MR. BRACERAS:  Likely not, your Honor, but we would
10    like to be able to consider it.
11              MS. JOHNSON:  That brings us to 4-c., which is
12    request to be removed from the service list.  I think we even
13    addressed this last time, your Honor.  From the plaintiffs' --
14              THE COURT:  We agreed we would do it, didn't we?
15              MS. JOHNSON:  Yes, we did.  I had thought so.  I'm
16    not sure why we're still talking about it, but we will -- I'm
17    not sure how we --
18              THE COURT:  Is that something we have to do or do you
19    do it?
20              MS. JOHNSON:  I think the Court has to do it, but let
21    me revisit this.  We'll figure out how to take care of that
22    and speak with the Court.
23              THE COURT:  Okay.
24              MS. JOHNSON:  That brings us to 4-d., which is
25    Premier defendant's master answers to the complaint, and this
```

1    is mostly a housekeeping matter, your Honor.  Premier has

2    filed master answers, but the Court has not yet signed the

3    order permitting them to file master answers.  So, that is ECF

4    No. 1553.

5                THE COURT:  I'm sorry, what is 1553?

6                MS. JOHNSON:  1553 was a motion asking for an order

7    that would permit Premier to file master answers and also

8    permit plaintiffs to file master certificates of merit,

9    effectively, and --

10               THE COURT:  Is there objection to that?

11               MS. JOHNSON:  There's no objection to that.  It's

12   completely agreed to, your Honor.

13               MR. WOLK:  Your Honor, good afternoon.  Christopher

14   Wolk on behalf of the Premier defendants.

15               We do agree with the proposed order at Docket 1553.

16   We worked out our differences with the PSC on that.  They have

17   agreed to allow us to file master answers to a representative

18   selection of complaints that include and encompass all of our

19   defendants.  In New Jersey we have a requirement for an

20   affidavit of merit for each individual defendant that must be

21   served.  Rather than having them serve 58 or so of those

22   affidavits, we've agreed to accept one representative on

23   behalf of each defendant.  That's in the order that's at 1553.

24   I think that can be entered by your Honor because there's no

25   objection.

1          THE COURT:  Okay.  So, I should fish out 1553 and

2   allow it?

3          MS. JOHNSON:  Yes, please, your Honor.

4          THE COURT:  Okay.

5          MR. WOLK:  Thank you, your Honor.

6          MS. JOHNSON:  That brings us to 4-e.  MDL Order No.

7   11 has been entered already.  That order governs -- for the

8   sake mostly of the attorneys on the telephone, that order

9   governs automatic replies as right so long as they're ten

10  pages or less, and please use less.  Thank you.

11          THE COURT:  What do you mean by "replies"?  These are

12  replies to the complaint or --

13          MS. JOHNSON:  Replies in general, your Honor, and to

14  briefs --

15          THE COURT:  To briefing?

16          MS. JOHNSON:  Yes.  You've entered --

17          THE COURT:  Ten pages for a reply?

18          MS. JOHNSON:  Well, that's what your order said.

19          THE COURT:  What about sur-replies?

20          MS. JOHNSON:  Ten pages, also.  We could certainly,

21  your Honor --

22          (Laughter.)

23          MS. JOHNSON:  We could certainly revisit that, your

24  Honor.  I had pushed for five pages personally.

25          THE COURT:  Okay.  I can just not read it.

```
1              (Laughter.)

2              THE COURT:  I wouldn't do that.

3              MS. JOHNSON:  Okay.  MDL Order No. 11 also addresses

4    automatic joint extensions and first requests for extensions

5    of no more than ten pages or less.  So, that order has been

6    entered and we should all be abiding by it now.

7              And that brings us to No. 5, the status of the

8    bankruptcy and I'll turn to Mr. Gottfried.

9              MR. GOTTFRIED:  Thank you.

10             Good afternoon, your Honor.  Michael Gottfried for

11   the trustee, Paul Moore.  As you --

12             THE COURT:  You're welcome.  You too have my thanks.

13             MR. GOTTFRIED:  Thank you, your Honor.

14             As you heard earlier, we have -- the trustee and the

15   official creditor's committee jointly filed a Chapter 11 plan

16   and disclosure statement yesterday in the bankruptcy court.

17   We filed our notice with this Court this morning.  So, you

18   have those documents in the record.  You now have the PSC's

19   summary as well.

20             The next steps are for Judge Boroff to schedule a

21   hearing with respect to the adequacy of the disclosure and the

22   notice requirements.  Typically, that can be 30 to 45 days.

23   Obviously, Judge Boroff has discretion as to what it will be.

24   He hasn't set that yet, at least as I am aware of.  So, it

25   could be longer.
```

1          And then, again, typically, after that hearing

2     results in an order with respect to the adequacy of the

3     disclosure statement and the notice required, another period

4     of similar length.  So, we could, knock on wood, be in a

5     situation where the plan is approved in, you know, 90 to 100

6     days.  Again, that's typical.  Judge Boroff has discretion,

7     obviously, to schedule those hearings, as and when he does.

8          I think what's important for this Court to hear is

9     that yesterday before the plaintiffs filed, three of the

10    settlements you heard about were actually signed, and there's

11    still a very -- and I'll emphasize -- a very limited amount of

12    time for the couple of parties that people are still talking

13    with to reach settlements and be included in the plan, but

14    once the disclosure statement is approved, the train has left

15    the track.  It's over.  So, it could be as soon as three or

16    four weeks.  So, now is the time if those parties want to

17    participate in the plan that has now been filed.

18         I guess the last thing I want to say is that I know

19    the PSC certainly -- I thank many of the parties.  I think the

20    trustee also would like to thank the creditor's committee, the

21    PSC and also the settling defendants.  It was a great deal of

22    work done to get this accomplished, and I know the trustee is

23    very pleased to be in a position to provide this relief to the

24    victims.

25         THE COURT:  Thank you.

```
 1              MS. TAYLOR:  Briefly, if I may, your Honor.  Kiersten
 2   Taylor for the creditor's committee.
 3              I would like to echo my colleagues, Mr. Gottfried and
 4   Ms. Johnson.  Kudos, really, to all the parties involved.  It
 5   was a massive effort and really could not have been
 6   accomplished without coordination, really, I've never seen
 7   before.
 8              THE COURT:  Did anybody bring champaign?
 9              MS. TAYLOR:  I would be happy to go fetch some, your
10   Honor.
11              THE COURT:  Thank you.
12              MS. JOHNSON:  I think that brings us to No. 7, your
13   Honor, schedule for future status conferences.
14              I believe we have the January status set for the
15   14th, both at 11:30 with Judge Boal and 2 o'clock with Judge
16   Zobel.
17              THE COURT:  Done.
18              MS. JOHNSON:  And we would ask that we schedule the
19   February status, if we could.
20              (Discussion off the record at the bench.)
21              THE COURT:  When in February did you have in mind?
22   At the end, I assume.  The middle?
23              MS. JOHNSON:  Sometime the second week in February,
24   your Honor, if that works.
25              (Discussion off the record.)
```

```
 1              MS. JOHNSON:  I apologize.  I'm told that doesn't
 2    work.
 3              (Discussion off the record.)
 4              MS. JOHNSON:  Perhaps the first or third week of
 5    February instead, your Honor.
 6              THE COURT:  Well, I think the third because the first
 7    week would be only three weeks after the January one.
 8              MS. JOHNSON:  Yes.  So, the third week.
 9              COURTROOM DEPUTY CLERK URSO:  Okay.  The third week.
10    We could do that Tuesday.  We could do that Tuesday, at 2:00,
11    February 17th, at 2:00.
12              MS. JOHNSON:  Yes, your Honor, that works for the
13    plaintiffs.
14              THE COURT:  Are we likely to have motions again?
15              MS. JOHNSON:  I expect that we will, your Honor, yes,
16    but I think that --
17              THE COURT:  So, we could do the same thing, starting
18    with motions and then continue with the agenda.
19              MS. JOHNSON:  I think that works well.  It's also not
20    likely to be a large number of motions.  I think, given the
21    briefing, it's probably two to three motions.
22              THE COURT:  The number doesn't make any difference.
23    It's my ability to keep counsel to a small number of minutes.
24              MS. JOHNSON:  You do and --
25              THE COURT:  I was totally unsuccessful this morning,
```

1    as you saw.

2          MS. JOHNSON:  My partner and I failed you this

3    morning, although I didn't say a word.  I didn't say a word in

4    my motion.  You didn't want to hear from me this morning.

5          COURTROOM DEPUTY CLERK URSO:  So, 2:00 on the 17th,

6    and that will be it for that afternoon, correct?

7          THE COURT:  Yes.

8          MS. JOHNSON:  And does that also -- not meaning to

9    put you on the spot, Judge Boal, but does that also work for

10   you?

11         MAGISTRATE JUDGE BOAL:  Yes.

12         THE COURT:  Judge Boal will be here if she wants to

13   be, despite the fact that she's also involved in the morning

14   on her own.

15         MS. JOHNSON:  Thank you, both of you.

16         That then brings us to two issues we just wanted to

17   briefly mention with the Court.  I don't think there's

18   anything that needs to be done on them.

19         There have been a series of filings by a pro se

20   plaintiff -- a few pro se plaintiffs.

21         THE COURT:  What does he want?

22         MR. STRANCH:  Money.

23         (Laughter.)

24         MS. JOHNSON:  It's unclear to me, your Honor, but it

25   does raise an issue.  In many MDLs someone is appointed a

1    liaison to the pro se.  By definition, pro se plaintiffs are

2    not represented by counsel.  So, the Plaintiffs' Steering

3    Committee can't truly speak for them.

4            THE COURT:  Did that include King?

5            MS. JOHNSON:  Exactly, your Honor.

6            It has not seemed so far to the PSC as though that

7    were necessary, but as this is starting to become more

8    prevalent in the docket, at least, it's something that the PSC

9    is considering suggesting if the Court appoint a person for

10   that position.

11           THE COURT:  A member of the PSC or somebody else?

12           MS. JOHNSON:  No.  I think, more appropriately, your

13   Honor, it would be someone that has some familiarity with this

14   litigation, but should not be a member of the PSC, and it

15   would not be...

16           THE COURT:  The rest of you can hide.

17           MS. JOHNSON:  I'm looking around.  Can we suggest

18   someone to the Court?

19           THE COURT:  Yes, please do.

20           MS. JOHNSON:  Okay.  Thank you.  We will do that.

21           Finally, that brings us, then, to agenda No. 9.  The

22   Plaintiffs' Steering Committee, actually, me personally, I had

23   written a letter to Judge Boal as part of the bankruptcy plan

24   to ascertain whether or not Judge Boal may be interested in

25   filling a role related to the plan.  That letter was then

1    ECF'ed on the docket in redacted form because it included some

2    details about the plan that were not at that point publicly

3    available.

4          Now that the plan has been filed, we will file an

5    unredacted version of that letter in the docket.  So, for all

6    to see.

7          THE COURT:  And the letter says, in essence, what?

8          MS. JOHNSON:  It asks Judge Boal whether or not she

9    was interested in fulfilling a special master or magistrate

10   function related to the plan settlement.

11         THE COURT:  Is this a proposal that is generally

12   agreed by all parties or do the defendants have no interest in

13   it?  Certainly, the settling defendants may or may not.

14         MS. JOHNSON:  Well, none of the defendants would have

15   an interest in it from this perspective, your Honor.  This is

16   a role that would simply be hearing appeals.

17         THE COURT:  It's a Ken Feinberg role?

18         MS. JOHNSON:  Certainly a role Ken Feinberg has

19   played before, yes.  The role was --

20         THE COURT:  I'm not suggesting that he should be

21   nominated.

22         MS. JOHNSON:  Well, it's funny that you say that.

23         (Laughter.)

24         MS. JOHNSON:  The role would be to have heard appeals

25   from a matrix distribution process that would have been

1    approved as part of the plan.  This would be a person who

2    would then be reviewing point awards and determinations if

3    people chose to appeal.  It is an objective formula, if you

4    will, for how the plan contemplates that awards are made.  So,

5    there's no subjective determination as to which client should

6    get which money.  It's sort of is the math correct, have we

7    counted up the points the right way.

8              THE COURT:  Is it for Judge Boroff or this Court to

9    appoint somebody?

10             MS. JOHNSON:  I'm not sure that it's either, your

11   Honor, in the sense that --

12             MR. ELLIS:  Your Honor, the person is going to be

13   appointed under the plan, under the plan documents itself.

14   So, we asked Judge Boal if she would be interested in serving

15   in that role.  We have also set out requests for proposal to a

16   variety of other former judges.

17             THE COURT:  You will?

18             MR. ELLIS:  We have.  And those proposals are due in

19   on Friday.  So, we have an alternative if Judge Boal does not

20   feel comfortable serving in that role.

21             THE COURT:  Well, I'll discuss it with Judge Boal and

22   see where we are.

23             Is there any -- Judge Boroff has no interest in -- I

24   mean, you know you sent him the letter, but he has no interest

25   in appointing somebody just to sort of monitor and execute the

1    plan?  That's what -- execute the plan with respect to the

2    distribution.

3            MS. JOHNSON:  The specific role as a special master

4    that we had asked Judge Boal to consider is limited to hearing

5    appeals from an award.  There are other appointed entities

6    that will actually do the math, in the first instance, and

7    also oversee the tort trust.  So, this is a cabin position

8    that is specifically hearing those appeals, your Honor.

9            Now, what has been done in the plan is suggestions

10   will be made by parties as to who should fill these particular

11   roles that are necessarily to be appointed by Judge Boroff and

12   Judge Boroff would ultimately okay those suggestions.

13           THE COURT:  For the people who distribute initially,

14   but the appeals would not be included in Judge Boroff's

15   recommendations?

16           MS. JOHNSON:  No.  It would be included, your Honor.

17   So, we would recommend someone to fill that role to Judge

18   Boroff and Judge Boroff would sign off on and accept those

19   recommendations.

20           MR. ELLIS:  Your Honor --

21           COURT REPORTER:  Could you go on mic?  I can't hear

22   you.

23           MR. ELLIS:  I'm sorry.

24           THE COURT:  Why don't you sit down, because the

25   people on the phone, if there are still any left, need to hear

1   you, too.

2           MR. ELLIS:  Rick Ellis for the plaintiff.

3           There will be a settlement administrator appointed in

4   the plan itself named.  They will process all the claims.  If

5   somebody is dissatisfied, they can appeal to a special master.

6   So, there's two separate roles under the plan.

7           THE COURT:  Mr. Rehnquist.

8           MR. REHNQUIST:  Can you hear me?

9           Your Honor, it seems to me that the Plaintiffs'

10  Steering Committee is asking for what is, essentially, a

11  judicial action for Judge Boal to serve as a master.  It's

12  been done by letter.

13          I'm not sure we have an objection or not, but I think

14  it should at least be done by motion so we have a vehicle to

15  object once we've seen it laid out, the legal authority, and

16  so forth.  There's a rule on masters.  I don't know if this is

17  appropriate or not.

18          MR. ELLIS:  Judge, I don't think they have any

19  standing to object to it.

20          THE COURT:  Well, I don't --

21          MR. REHNQUIST:  Well, this is a magistrate that's

22  going to be presiding over things involving us for the next

23  couple of years.  I think --

24          THE COURT:  It won't involve you unless you kick into

25  the fund.

1          (Laughter.)

2          MR. REHNQUIST:  Maybe, maybe not.

3          THE COURT:  All right.  Well, until you've kicked in,

4    I don't know that you have any standing to either approve or

5    not.

6          MR. REHNQUIST:  Well, this is -- Judge Boal is going

7    to be dealing with discovery matters involving us and all

8    kinds of other substantive matters over the next couple of

9    years, at the same time presiding over a settlement process.

10   I'm just not sure that's appropriate.

11         MS. JOHNSON:  I would suggest, your Honor, that the

12   logical starting point for this would be for us to file the

13   unredacted letter, which provides quite a bit of information

14   about what the role does and does not involve.  We will do

15   that as soon as possible.

16         I suggest -- I agree with my colleagues here who are

17   suggesting Unifirst doesn't really have any skin in this

18   particular game one way or the other, but, in any event, let's

19   make it clear what --

20         THE COURT:  Yet.

21         MS. JOHNSON:  Even then, your Honor.  Even

22   optimistically, even then, I don't think they do.

23         But, in any event, I want us to be clear what our

24   position is, so that they can then appropriately respond.

25         MAGISTRATE JUDGE BOAL:  In those papers I think it

```
1    would also be helpful to address -- Mr. Rehnquist is correct
2    that there's a separate rule on special masters.  There's also
3    a provision in there that excerpts out things that are
4    referred to a magistrate judge, depending on whether or not
5    you use the special master title, but, also, I think in
6    thinking about this as well, is whether such an action by
7    someone who was a magistrate judge, whether that might run
8    afoul of the preclusion on magistrate judges rendering
9    dispositive decisions and whether this could be considered
10   dispositive.  And if so, whether it would have to be done in a
11   report and recommendation to Judge Zobel.
12           MS. JOHNSON:  We will address that.
13           (Discussion off the record.)
14           MS. JOHNSON:  I understand that we have not been able
15   to reach Mr. Jarnagin.  Mr. Lipton, his colleague, is on the
16   phone and is able to address the motion if the Court is still
17   interested in hearing argument on the Liberty 56(d) motion.
18           THE COURT:  I thought we were going to postpone it
19   for the time being until you can work it out and let me know
20   where we are and until we know what the court in California --
21   what the probate court is doing.
22           MS. JOHNSON:  This is the Liberty motion, your Honor.
23           THE COURT:  Oh, this is liberty.  Okay.
24           MS. JOHNSON:  If you're interested in hearing
25   argument, Mr. Lipton can do that now.  We're also willing to
```

1    try to re-schedule, perhaps, for telephonic argument next week

2    sometime.

3         THE COURT:  I would prefer to go through the agenda

4    rather than jumping back and forth.  If there's time at the

5    end of it, I have no problem in hearing -- Mr. Lipton, is it?

6         MS. JOHNSON:  Yes.

7         MR. LIPTON:  Lipton.  I'm not sure I can even be

8    heard.

9         THE COURT:  We hear you loudly and clearly, but I

10   think I would prefer to have -- I would prefer to continue

11   with the agenda, which is not a whole lot longer, and then

12   come back to this motion rather than going back and forth

13   between motion and agenda, okay?  So, hang around.

14        MR. LIPTON:  Sure.

15        THE COURT:  Thank you.

16        MS. JOHNSON:  On Item 10, discovery-related motions,

17   this was heard by Judge Boal this morning.

18        Item 11 relates to the Insight matters and,

19   therefore, should be held over until mediation there resolves

20   one way or the other.

21        MAGISTRATE JUDGE BOAL:  Could we just have a moment?

22        (Discussion off the record at the bench.)

23        MAGISTRATE JUDGE BOAL:  Thank you.

24        THE COURT:  Okay.  So, the Virginia matters.  I mean,

25   I see there's objection to it, but I can't imagine why.

1          MS. JOHNSON:  The agreement between the parties is

2     that while the mediation is ongoing, this briefing and all the

3     other briefing on Insight-specific issues should not be

4     addressed by the Court.

5          THE COURT:  Okay.

6          MS. JOHNSON:  Because the mediation may well moot

7     these issues.

8          THE COURT:  All right.  We'll hold pending mediation.

9          MS. JOHNSON:  On 12, I believe all of those are

10    assented-to motions for extension of time that now were taken

11    care of by MDL Order 11.  So, I think we're fine.

12          And on 13, my partner, Mr. Notargiacomo would like to

13    be heard briefly.

14          MR. NOTARGIACOMO:  Your Honor, No. 13 relates to a

15    summary judgment motion by Hahnemann University Hospital

16    against a case filed by a pro se plaintiff, Norma King.

17          THE COURT:  Didn't I say in a prior order that if she

18    didn't have counsel by November 12th, then default would be

19    entered?

20          MR. NOTARGIACOMO:  You did, your Honor, and I'm just

21    here to report that I had a conversation with her to find out

22    exactly, because I knew this would come up.  She's represented

23    that she does not -- she represented to me and asked me to

24    represent to the Court that she does not have counsel.

25          THE COURT:  Well, in that case, file a motion for

1    notice of default.

2              MR. NOTARGIACOMO:  She was aware of the November 12th

3    deadline as well.

4              MR. WALKO:  Your Honor, Matthew Walko for the moving

5    parties in that case, Hahnemann University Hospital.

6              We have a proposed form of order on the pending

7    motions, if your Honor is interested, that might expedite

8    things along.

9              THE COURT:  You have it?

10             MR. WALKO:  I have it to hand up.

11             THE COURT:  Okay.  Let Ms. Urso have it, and I'll

12   allow it.

13             (Attorney Walko hands document to the Court.)

14             MS. JOHNSON:  I think that brings us to No. 14, your

15   Honor, which is Encino.  We've already argued that, as well as

16   15, earlier.

17             16 is Liberty's motion for summary judgment.

18             THE COURT:  Okay.  Which we've also discussed.

19             MS. JOHNSON:  Yes.  And 17, we have the Ascension

20   parties' motion to certify.  I understand the parties have

21   agreed to have that heard next time.

22             THE COURT:  Excuse me.  Hold it one second, please.

23             (Pause.)

24             THE COURT:  Okay.

25             MS. JOHNSON:  Let me correct myself on No. 17.  That

1      motion was briefed by Mr. Gastel, a member of the PSC, who is

2      currently on trial and not here today.  The PSC does not ask

3      that that motion be heard today.

4              THE COURT:  So, 54(b) remains in limbo?

5              MS. JOHNSON:  I don't know whether Ascension's

6      counsel wishes to be heard on that item.

7              MS. PUIG:  Your Honor, we're here.  Yvonne Puig for

8      the Ascension parties.  We're ready to argue it.  There must

9      be some misunderstanding about it.  If the Court wants to

10     defer until January 14th, we'll honor your request, but we are

11     prepared to argue today.

12             THE COURT:  Let's do it on January 14.

13             MS. PUIG:  Thank you, your Honor.

14             THE COURT:  Is it fully briefed by both parties?

15             MS. PUIG:  Yes, it is, your Honor.

16             THE COURT:  Okay.

17             MS. JOHNSON:  That brings us to the briefing in

18     progress, your Honor, none of which I think we need to discuss

19     at this time.

20             THE COURT:  So, that's it?

21             MS. JOHNSON:  That's it.

22             THE COURT:  Except for Mr. Lipton.

23             MS. JOHNSON:  Yes.

24             THE COURT:  And Mr. Lipton had to do with Liberty?

25             MS. JOHNSON:  The Liberty summary judgment -- well,

1    rather, the PSC's 54(d) motion -- 56(d) motion in response to

2    the Liberty summary judgment.

3              THE COURT:  Mr. Lipton, are you there?

4              MR. LIPTON:  I am, your Honor.  Lipton, like the

5    soup.

6              THE COURT:  Lipton, like the tea?

7              MR. LIPTON:  No problem.  Yes, it is tea, too, that

8    of which I have an interest in.

9              THE COURT:  Okay.  So, we were talking earlier about

10   the 56(d) motion concerning Liberty's motion for summary

11   judgment, and you wish to be heard on it.  So, I will hear

12   you, but no more than ten minutes.

13             MR. LIPTON:  Your Honor, I don't really have even ten

14   minutes to say on it.  I apologize for not being on the phone

15   earlier.  I just found out moments ago that my colleague

16   wasn't able to make the call.  So, I don't have the advantage

17   of knowing everything that was said before.  I think the

18   motion speaks for itself.

19             As I understand the procedural posture, Liberty

20   brought a motion for summary judgment.  We filed a response

21   rather than a separate motion, but a response just saying that

22   under 56(d), we are told the discovery.

23             I point out the timeline to the Court, which is that

24   there was a stay of discovery as to all entities, including

25   Liberty.  We did exchange documents that -- we had subpoenaed

1    records from them before -- I think even before the master

2    complaint had been filed.  So, there was definitely an

3    exchange of documents.

4            But as far as taking depositions or formal discovery,

5    there had been a stay for a long time and, literally, on the

6    very first day that the parties -- the PSC was entitled to

7    conduct discovery -- just so I'm clear, your Honor, I am a

8    member of the PSC, and on that first day we had arranged with

9    counsel for Liberty to depose Mr. Ericson and -- I forget the

10   other gentleman's off the top of my head, but, in any event,

11   the current CEO and then one of the gentlemen from Liberty,

12   and those depositions were completed November 18th.

13           So, you know, we -- which was then, I believe, right

14   after -- right before our response to 56(d) motion was -- or

15   the summary judgment motion was due.

16           So, I mean, you know, it's -- I appreciate Liberty's

17   financial circumstances, its desire to bring this to a head as

18   promptly as possibly and to some extent, I'm sympathetic, but

19   at the end of the day, I'm also sympathetic to the thousand

20   people or so that suffered serious injuries in this event, and

21   we have a right to conduct discovery.  The master complaint

22   lays out a valid cause of action, and this motion is really a

23   summary judgment based on fact.

24           THE COURT:  Mr. Lipton, what additional discovery do

25   you need?

1          MR. LIPTON:  Your Honor, all we've done at this point

2    is take the depositions of two people from Liberty --

3          THE COURT:  What additional -- what more discovery do

4    you need?

5          MR. LIPTON:  Your Honor, to be frank, we are not even

6    sure at this point exactly what room the drugs were

7    manufactured in, compounded in.  I mean, we've got a good idea

8    based upon statements made to us by the trustee, but not in

9    any admissible fashion.

10         I've got to share the results of the deposition about

11   what Liberty did with experts.  I have to have them review it.

12   I have to have them determine if there's a basis for

13   establishing causation --

14         THE COURT:  Mr. Lipton, I'm not talking about all the

15   stuff you got to do once you get the information.  What

16   additional information are you looking for?  You know, the

17   56(d) motion says you want time to get additional discovery.

18   What discovery are you looking for besides the depositions and

19   whatever else you have?

20         MR. LIPTON:  Well, your Honor, I mean, I've taken two

21   depositions.  I have taken a deposition of the defendant

22   itself and --

23         THE COURT:  Would you please answer my question, Mr.

24   Lipton.  What additional discovery do you want?  I understand

25   you've taken two depositions.  I understand there's been some

```
1    discovery and some documents, and so on.  What additional
2    deposition discovery do you want?
3              MR. LIPTON:  Your Honor, I apologize.  I have to --
4    if you give me a moment here.
5              (Pause.)
6              MR. LIPTON:  I'm looking at our response and I am --
7    and I'm, frankly -- you know, I guess what I would say is
8    this, your Honor, because this was just put on me in the last
9    ten minutes.
10             My view is that we probably have most of what we
11   need, but it is not -- I'm not in a position -- at the time
12   that our response was due and filed, 56(d) response was
13   October 31st, to be able to tell you at that point and respond
14   to the motion for summary judgment that had been filed by
15   Liberty.
16             Today, having taken the depositions on November 18th,
17   I can go back, consult with my experts and have them tell me
18   if we have enough to establish a cause of action against
19   Liberty.
20             THE COURT:  How much time will it take you to do
21   that?
22             MS. JOHNSON:  I would suggest one week, your Honor,
23   if you could give us one week to do that.
24             THE COURT:  What is the deadline for you?  I'm asking
25   counsel for Liberty.
```

1          MR. LIPTON:  I understand.

2          MR. SPEARING:  Liberty will run out of coverage

3    shortly after December 29th, your Honor, shortly after

4    judgment is entered.

5          THE COURT:  So, if they tell me in a week, that would

6    be January -- December 11th.

7          MR. SPEARING:  Well, your Honor, what are we going to

8    hear in a week?  That they had all these documents for over a

9    year and a half.  All it is in the 56(d) -- and the Court can

10   look at it -- is a mere recitation of what's in the complaint.

11   If there's no good basis to bring the complaint, to begin

12   with, is what it sounds like to me, they don't understand what

13   the case is or what the causation is, then the 56(d) should

14   fail.

15         THE COURT:  Mr. Lipton, tell me by December 9th, in a

16   letter or a statement, or whatever means you want to use, what

17   additional discovery you need and why you need it, and then --

18   and, obviously, counsel for Liberty should be copied on that,

19   and then I will decide whether the 56(d) motion lies.

20         MR. LIPTON:  Your Honor, can I just make one point

21   here?

22         Let me just get the timeline straight here.  On

23   October 31st I did not have the depositions.  I may be able to

24   respond today -- or not today, but over the next week or two

25   weeks, whatever it takes, to Liberty's motion for summary

1    disposition, because -- I mean, it is my view and it's the

2    PSC's view, that there's a question of fact as to elements

3    such as causation and Liberty's damages.  You know, because of

4    the way the motion got filed, at that time we hadn't even done

5    the deps and my response was due, with no right to file even a

6    supplemental brief.  So --

7          THE COURT:  I understand you have a problem.  I

8    understand you have a problem.  But what's wrong with my

9    suggestion that you tell me by next Tuesday, the 9th, where

10   you are?

11         MS. JOHNSON:  Absolutely.

12         THE COURT:  I'm giving you time to do that.

13         MS. JOHNSON:  There is absolutely nothing wrong with

14   that, your Honor.  The Plaintiffs' Steering Committee will let

15   you know by that date.

16         THE COURT:  I understand Mr. Lipton's difficulties,

17   but right now we are all in a problem, particularly Liberty

18   itself.

19         MR. LIPTON:  No one is more sensitive to that than I

20   am.

21         THE COURT:  I'm sorry, I didn't get that.

22         MR. LIPTON:  I understand.  I understand the issues

23   with regards to Liberty.

24         THE COURT:  Okay.  So, by December 9th, which is next

25   Tuesday, you will file some kind of a document that tells us

```
1    exactly where you stand on Liberty's motion for summary
2    judgment and the Rule 56(d) motion, and then we can have
3    further discussion, if necessary, or I can rule or I can do
4    whatever.
5              MR. SPEARING:  Just so I'm clear, he is going to
6    supplement somehow the 56 --
7              THE COURT:  He's going to tell us whether he needs
8    the 56(d) and if so, what he needs it for.
9              MR. SPEARING:  And that we --
10             THE COURT:  He may not need it.  He may have a
11   discussion with each other, deciding that they really don't
12   need it, and in that case, you're free and clear.
13             MR. LIPTON:  Your Honor, just even if -- I don't mean
14   to interrupt, but even if Liberty -- even if it turns out we
15   don't need more discovery, it doesn't mean that -- that we're
16   not in a position to respond to Liberty's summary judgment
17   motion.
18             THE COURT:  I will deal with that at the time once I
19   know where you are.
20             MR. LIPTON:  Okay.
21             THE COURT:  And if, in fact, you decide that you
22   haven't got much of a case against Liberty, you might as well
23   tell me so instead of filing the responsive pleadings.  I
24   think Ms. Johnson will be in charge of this.
25             MS. JOHNSON:  Yes, I will, your Honor.
```

1            MR. SPEARING:  One last thing, your Honor.

2            The 56(d), there was no opposition.  So, under the

3    rules, there is no time to file an opposition to summary

4    judgment motion.  That's not what 56(d) is for.  That's my

5    only point I want to make.

6            THE COURT:  Okay.

7            MS. JOHNSON:  Thank you very much, your Honor.

8            THE COURT:  I think we are all done.  Is there

9    anything else that anybody wishes to discuss?

10            MS. JOHNSON:  Nothing.

11            THE COURT:  Again, I thank you all.  And I guess to

12   the extent that I don't see you, I hope you have some terrific

13   holidays.

14            MR. STRANCH:  Thank you, your Honor.

15            MS. JOHNSON:  Thank you, your Honor.

16            (Adjourned, 3:16 p.m.)

17

18

19

20

21

22

23

24

25

```
 1                C E R T I F I C A T E

 2           I, Catherine A. Handel, Official Court Reporter of the

 3   United States District Court, do hereby certify that the

 4   foregoing transcript, from Page 1 to Page 58, constitutes to the

 5   best of my skill and ability a true and accurate transcription of

 6   my stenotype notes taken in the matter of No. 13-md-2419-RWZ, In

 7   Re: New England Compounding Pharmacy, Inc., Products Liability

 8   Litigation.

 9

10   December 9, 2014          /s/Catherine A. Handel
     Date                      Catherine A. Handel, RPR-CM, CRR
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```