UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                              )
IN RE: NEW ENGLAND                        )
COMPOUNDING PHARMACY, INC.      )
PRODUCTS LIABILITY LITIGATION       )          MDL No. 13-2419-RWZ
                                                              )
This Document Relates To:                     )
                                                              )
    All Tennessee Actions Against       )
    St. Thomas Entities                          )
_____)

ORDER ON PLAINTIFFS' STEERING COMMITTEE'S
MOTION TO COMPEL PRODUCTION OF INSURANCE AGREEMENTS[1]
[Docket No. 1468]

December 9, 2014

Boal, M.J.

The Plaintiffs' Steering Committee ("PSC") moves for an order compelling the Saint Thomas Entities[2] to produce all insurance agreements that may cover claims against them in this litigation. Docket No. 1468. The Saint Thomas Entities oppose the PSC's motion on the ground that they are self-insured and that such self-insurance documents are not discoverable under Rule 26(a)(1)(A)(iv) and not relevant to any claims or defenses in this action. Docket No. 1494. For the following reasons, this Court denies the motion.

I.     FACTUAL AND PROCEDURAL BACKGROUND

This litigation involves claims for wrongful death and personal injury arising out of the

---

[1] The District Court referred the motion to the undersigned on October 23, 2014. Docket No. 1503.

[2] The "Saint Thomas Entities" refers to Saint Thomas Health, Saint Thomas Network, and Saint Thomas Hospital West f/k/a Saint Thomas Hospital.

-1-

administration of an injectable steroid, methylprednisolone acetate ("MPA"), manufactured by defendant New England Compounding Pharmacy, Inc. ("NECC"). The complaints allege, in substance, that NECC produced contaminated MPA that led to serious fungal infections and, in some cases, death. Some plaintiffs have brought claims against numerous non-NECC parties, including the Saint Thomas Entities and Saint Thomas Outpatient Neurosurgical Clinic ("STOPNC"). The plaintiffs allege that STOPNC purchased contaminated injections from NECC and administered them to patients. Docket No. 1494 at ¶ 1. The plaintiffs also allege that the Saint Thomas Entities' structure is devised as "a corporate shell game in an improper attempt to shield the Saint Thomas Entities from the liability of its agent, STOPNC." Docket No. 1469 at ¶ 20.

The Saint Thomas Entities are self-insured through their participation in the Ascension Health Alliance Professional and General Liability Self-Insurance Trust (the "Trust"). Roth Aff. at ¶¶ 3, 5.[3] STOPNC is not a participant in the Trust. Id. at ¶ 5. The Trust is a program whereby members participate by funding the Trust and paying its expenses. Id. at ¶ 4. Each participant, including the Saint Thomas Entities, is a beneficiary of the Trust, which is administered by Ascension Risk Services, LLC ("Ascension Risk"). Id. at ¶¶ 5, 6. Ascension Risk has no potential liability for claims payments made by the Trust. Id. at ¶ 6. If the Trust were to experience a shortfall, the participants would be assessed to cover that shortfall. Id.

The PSC notes that an entity named Ascension Health Risk Purchasing Group, Inc. ("Purchasing Group") has the same address as the Trust administrator, Ascension Risk. Docket No. 1469 at ¶ 11. The PSC also notes that, according to the Missouri Department of Insurance,

---

[3] "Roth Aff." refers to the Declaration of Janet Roth. Docket No. 1494-1.

the Purchasing Group is a licensed insurance company in the state of Missouri. Id. The Saint Thomas Entities allege that the Purchasing Group is not the same entity as Ascension Risk Services, has no connection to the Trust or this litigation, and is not a licensed insurance company in Missouri. Roth Aff. at ¶ 7. Instead, the Purchasing Group facilitates group insurance coverage from third-party insurers for physicians.[4] Id.

The Saint Thomas Entities produced insurance agreements for applicable insurance policies and disclosed the existence of the Trust by providing certificates of insurance. Docket No. 1469 at ¶ 13; Docket No. 1494 at ¶ 5. The Saint Thomas Entities have not produced the Trust documents. Id.

On October 3, 2014, the PSC filed the instant motion, seeking an order compelling the Saint Thomas Entities to produce the Trust documents. Docket No. 1468. The Saint Thomas Entities filed their opposition on October 17, 2014. Docket No. 1494. The Court heard oral argument on December 4, 2014.

II.     ANALYSIS

Rule 26(a) of the Federal Rules of Civil Procedure requires a party to disclose, without awaiting a discovery request, "any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse

---

[4] According to the Saint Thomas Entities, a purchasing group is a company that purchases insurance on a group basis from insurance companies but is not a licensed insurance company itself. Docket No. 1494 at 10, n. 54. A purchasing group must register with the department of insurance pursuant to Missouri insurance statutes. Id. (citing to Mo. Rev. Stat. § 375.1080(10)).

for payments made to satisfy the judgment." Fed. R. Civ. P. 26(a)(1)(A)(iv).[5] The rule applies only to insurance agreements issued by "persons 'carrying on an insurance business.'" Adv. Committee Notes to Rule 26, 1970 Amendment. The rule "does not cover the business concern that creates a reserve fund for purposes of self-insurance." Id.

The Court finds that the Trust Agreement is not discoverable pursuant to Rule 26(a)(1)(A)(iv). The text of the rule explicitly makes it applicable to insurance agreements issued by an "insurance business." In addition, the Advisory Notes to Rule 26 specifically exclude self-insurance agreements from the reach of the rule. Self-insurance has been described as:

> . . . the practice of setting aside a fund to meet losses instead of insuring against such through insurance. Self-insurance is the antithesis of insurance. Insurance shifts the risk of loss from the insured to the insurer. A self-insurer retains the risk of loss imposed by law or contract.

Macdonald v. Pac. Empl'rs Ins. Co., 264 F. Supp. 2d 576, 582 (N.D. Ohio 2002) (internal quotations and citations omitted); see also United States v. Baxter Int'l, Inc., 345 F.3d 866, 894 (11th Cir. 2003) (relying in part on definition from Black's Law Dictionary but suggesting interpretation of term varies with the context). On the record before the Court, the Trust appears to qualify as self-insurance. The Saint Thomas Entities maintain that the Trust participants have not transferred risk to Ascension Risk Services or any other third party. Roth Aff. at ¶ 6. There

---

[5] Contrary to the PSC's suggestion, this Court has not specifically ordered the Saint Thomas Entities to produce the insurance information at issue. See Docket No. 1469 at 1, 2. Rather, in a November 13, 2013 order, the Court found that the PSC had inappropriately attempted to subpoena insurance information from non-parties to this action and noted that parties to the action were already required to provide certain insurance information pursuant to Rule 26(a)(1)(A)(iv). Docket No. 572 at 21. In that order, the Court did not rule on the issues presented by the instant motion.

is no evidence that Ascension Risk or the participants to the Trust are insurance businesses.[6] Id. at ¶¶ 6-7. Accordingly, Rule 26(a)(1)(A)(iv) is not applicable to the Trust.

Nevertheless, insurance documents that are not discoverable under Rule 26(a)(1)(A)(iv) remain discoverable pursuant to Rule 26(b). See Simon v. G.D. Searle & Co., 816 F.2d 397, 404 (8th Cir. 1987). Rule 26(b) permits "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . ." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. Rule 26(b)(1) generally permits liberal discovery of relevant information. Baker v. Liggett Group, Inc., 132 F.R.D. 123, 125 (D. Mass. 1990). As the Supreme Court has instructed, because "discovery itself is designed to help define and clarify the issues," the limits set forth in Rule 26 must be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978).

The PSC argues that the Trust documents are relevant to the plaintiffs' vicarious liability claims relating to the Saint Thomas Entities' relationship with STOPNC. Docket No. 1469 at ¶ 20. They argue that the Trust agreement, to the extent that it provides coverage for agents of the Saint Thomas entities, is relevant to the vicarious liability claims. Id. According to the PSC, the Certificates of Insurance show that Ascension Risk Services is treating the Saint Thomas Entities

---

[6] On the record before the Court, it is unclear whether the Trust Participants share risk with one another and, if so, whether such an arrangement constitutes a transfer of risk. The Saint Thomas Entities have stated only that the Trust Participants jointly fund the trust, pay its expenses, manage their own claims, and are responsible for any shortfall of funds. Roth Aff. at ¶¶ 4, 6. In any event, because there is no evidence that Ascension Risk or any of the Trust participants are an "insurance business," the Court finds that Rule 26(a)(1)(A)(iv) is not applicable.

as an undifferentiated corporate entity.  Id.  However, STOPNC is not a party to the Trust.  Roth Aff. at ¶ 5; Docket No. 1470-3 at 4-6.  The PSC has not explained how the Trust agreement could be evidence of agency between the Saint Thomas Entities and STOPNC when STOPNC is not a party to the Trust.  The PSC, therefore, has not sufficiently shown how the Trust documents are relevant to any claims or defenses in this action.  Accordingly, the Court denies the PSC's motion to compel.

III.   ORDER

For the foregoing reasons, the Court denies the PSC's motion to compel.

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge