UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MDL NO. 13-02419-RWZ

IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC.
PRODUCTS LIABILITY LITIGATION

MEMORANDUM OF DECISION

December 23, 2014

ZOBEL, D.J.

On September 11, 2014, Liberty Industries, Inc. ("Liberty") moved for summary judgment in the Lambert case, Case No. 1:13-cv-10351 (Lambert Docket # 29). On October 6, 2014, Liberty moved for summary judgment in the other 98 cases[1] filed against it (Docket # 1471). For the reasons that follow, the motion is DENIED.

I.  **Background**[2]

  A.  **The Multidistrict Litigation**

This multidistrict litigation stems from an outbreak of fungal meningitis caused by contaminated methylprednisolone acetate ("MPA") manufactured and sold by the New England Compounding Pharmacy, Inc., d/b/a New England Compounding Center

---

[1] See Liberty's Memorandum of Law, Appendix I. (Docket # 1472, Appendix I).

[2] A detailed account of the background of the case is set forth in previous opinions of the court. See, e.g., In re New Eng. Compounding Pharm., Inc. Prods. Liability Litig., 496 B.R. 256, 260-263 (D. Mass. 2013). Only a brief summary is outlined here.

("NECC"). NECC operated a compounding pharmacy in Framingham, Massachusetts, that combined and mixed ingredients to create specific formulations of pharmaceutical products. In the fall 2012, health officials traced a number of cases of fungal meningitis to injections in and around patients' spinal cords of MPA that had been manufactured by NECC. NECC initiated a recall of several contaminated batches of MPA before eventually surrendering its pharmacy license and ceasing production of all pharmaceutical products. NECC filed for Chapter 11 bankruptcy in December 2012.

Lawsuits alleging death or injury caused by contaminated MPA were filed against NECC, affiliated entities and individuals, and/or health care providers in multiple state and federal jurisdictions around the country beginning in November 2012. In February 2013, the Judicial Panel on Multidistrict Litigation ("JPML") issued an order under 28 U.S.C. § 1407 transferring a number of cases pending in several federal courts to this court for coordinated and consolidated pretrial proceedings; subsequent JPML orders also transferred "tag-along" cases here. Other cases pending in both federal and state courts were likewise transferred to this court via additional transfer orders. See In re New Eng. Compounding Pharm., Inc. Prods. Liability Litig., 496 B.R. 256 (D. Mass. 2013) (Docket # 176); In re New Eng. Compounding Pharm., Inc. Prods. Liability Litig., Civil Action No. 13-2419-RWZ, 2014 WL 2040139 (D. Mass. May 15, 2014) (Docket # 1131); June 4, 2014, Transfer Order (Docket # 1173).

On November 5, 2013, in accordance with MDL Order No. 6 (Docket # 209), the

2

court-appointed plaintiffs' steering committee filed a master complaint against numerous non-NECC parties, including hospitals, clinics, and health care facilities (as well as their physicians, staff, agents, and employees) that allegedly obtained contaminated MPA from NECC and administered it to their patients.[3]  See Master Complaint ("Master Compl."), Docket # 545.  Plaintiffs who already had cases on file or who wished to file in the multidistrict litigation thereafter filed short-form complaints to assert facts and claims as set out in the master complaint.

### B. Liberty

Liberty is a small, closely held corporation that constructs aseptic cleanrooms for the pharmaceutical industry.  In 2005 and 2006, Liberty was retained by NECC to construct cleanrooms at its Framingham facility. In 2008, Ameridose, an affiliate of NECC, retained Liberty to construct an additional cleanroom.  NECC compounded the contaminated MPA in the 2006 cleanroom constructed by Liberty.  Liberty's responsibilities did not include the design and installation of the HVAC system, the electrical or fire suppression systems, or the benches, hoods, or other equipment in the cleanrooms.  Liberty was responsible for the construction of the walls and ceilings of each Cleanroom, and their overall design to ensure appropriate conditions for aseptic compounding procedures.  The room was tested by an independent contractor for ISO 14644-1 compliance regularly, and at least the 2006 cleanroom was certified as meeting ISO 14644-1 as recently as June 22, 2012.  In 2013, Liberty was named as a

---

[3] The master complaint was intended to be an administrative tool, allowing the allegations and claims against all defendants to be stated in one document.

co-defendant in 99 cases filed in Indiana state and federal courts and directly filed in this MDL action relating to the outbreak of fungal meningitis caused by NECC's contaminated MPA.

## II.     Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party may show a fact cannot be genuinely disputed by demonstrating that it cannot be established by admissible evidence or by citing material in the record.  Fed. R. Civ. P. 56(c)(1).  The Court "must view the evidence in the light most favorable to the opposing party," Tolan v. Cotton,134 S. Ct. 1861, 1866 (2014), but where the party with the burden of proof at trial cannot establish a necessary element of his claim, summary judgment in favor of the movant is appropriate.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (Summary judgment must enter "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").  The question for the court is whether "a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Anderson v. Liberty-Lobby, Inc., 477 U.S. 424, 452 (1986).

## III.    Applicable Law

The court must apply the choice-of-law rules of the states where the actions were first filed. In re Celexa & Lexapro Mktg. & Sales Practices Litig., 291 F.R.D. 13, 16

4

(D. Mass. 2013); see In re Volkswagen and Audi Warranty Extension Litig., 692 F.3d 4, 18-19 (1st Cir. 2012).  For those matters commenced in Indiana, that is Indiana's choice of law; for those directly filed in this court, Massachusetts choice of law governs.  Indiana applies a rebuttable presumption of *lex loci,* Simon v. U.S., 805 N.E.2d 798, 804-805 (Ind. 2004), while Massachusetts applies a "functional" or pragmatic approach.  Lou v. Otis Elevator Co., 77 Mass. App. Ct. 571, 583 (2010) ("Though we do not tie our analysis to any single doctrine . . . we often find useful guidance in the Restatement (Second) of Conflict of Laws").  Where no "other state has a more significant relationship" with the case, the restatement follows a *lex loci* rule.  Restatement (Second) Conflict of Laws § 146 (1971).

All the plaintiffs were injured in Indiana, and nearly all the Plaintiffs live in Indiana.  While all of Liberty's allegedly tortious activities occurred in Massachusetts, all of the alleged harm accrued in Indiana.  Thus on the facts here, under both Massachusetts and Indiana law, Indiana substantive law applies.

In Indiana, negligence consists of three elements: duty, breach, and proximate cause.  See Kincade v. MAC Corp., 773 N.E. 2d 909, 911 (Ind. Ct. App. 2002).  A party's act is the proximate cause of an injury if the injury is "the natural and probable consequence of the act and should have been reasonably foreseen and anticipated in light of the circumstances."  Vandenbosch v. Daily, 785 N.E.2d 666, 671 (2003).  Even where a breach occurs, the "chain of causation may be broken if an independent agency intervenes between the defendant's negligence and the resulting injury."  Lane

5

v. St. Joseph's Reg'l Med. Ctr., 817 N.E.2d 266, 273 (Ind. Ct. App. 2004).  In such case "[t]he original negligent actor is relieved of any and all liability resulting from the original negligent act if the intervening cause was not reasonably foreseeable."  Id.  Although "proximate cause is often determined by the trier of fact . . . where it is clear that the injury was not foreseeable under the circumstances and that the imposition of liability upon the original negligent actor would not be justified, the determination of proximate cause may be made as a matter of law."  Id.

## IV.  Analysis

Though the question is a close one, summary judgment is not appropriate at this time.  Despite serious questions as to the ability of plaintiffs to prove causation at trial, in light of the declaration of plaintiff's expert highlighting substantial alleged design flaws and testimony given by Liberty's witnesses at their deposition, genuine issues of fact remain for a jury to decide.  Summary judgment would therefore be premature.

## V. Conclusion

Liberty's motion for summary judgment is DENIED.

|      December 23, 2014      |       /s/Rya W. Zobel       |
|:---:|:---:|
| DATE | RYA W. ZOBEL<br>UNITED STATES DISTRICT JUDGE |