UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION )<br>)<br>)<br>)<br>) | |
| | MDL No. 2419 |
| THIS DOCUMENT RELATES TO:<br><br>All Actions | Dkt. No. 1:13-md-2419 (RWZ) |

## PLAINTIFFS' STEERING COMMITTEE'S OBJECTIONS TO MAGISTRATE JUDGE BOAL'S ORDER DENYING ITS MOTION TO COMPEL PRODUCTION OF INSURANCE AGREEMENTS

Pursuant to Federal Rule of Civil Procedure 72(a) and Local Rule 2(b), the Plaintiffs'

Steering Committee (hereinafter "PSC") objects to the Magistrate Judge's Order denying the

PSC's Motion to Compel Production of Insurance Agreements entered on December 9, 2014.

Docket No. 1590. The Magistrate Judge erred in denying the PSC's motion to compel because:

- The Insurance Documents the PSC seeks to compel are subject to mandatory
  disclosure under Fed. R. Civ. P. 26(a)(1)(A)(iv).

- The Insurance Documents are discoverable under Fed. R. Civ. P. 26(b)(1) because the
  PSC has sufficiently shown the Agreements at issue are relevant to this action and
  will reasonably lead to other matters which bear on the bear on the PSC's claims.

- Disclosure of the Insurance Documents will promote settlement and will help the
  parties move this litigation to just, speedy, and inexpensive resolution. Accordingly,

the Court should decline to adopt the Magistrate's Order and compel Defendants to produce the Insurance Documents at issue.

## SUMMARY

Rule 26 requirements for mandatory initial disclosures oblige a party to produce any insurance agreement upon which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy a judgment. Fed. R. Civ. P. 26(a)(1)(A)(iv). The Advisory Committee noted that the rule benefits counsel for both parties by offering them a realistic appraisal of funds available for settlement. This benefit is even more important in an MDL such as this where the damages sought in the approximately 100 cases likely exceed the funds available to Defendants.

The Saint Thomas Entities produced a document that they call a certificate of coverage. Docket No. 1470-3. This document lists several Defendants as "insured" entities under an entity called Ascension Risk Services ("ARS"). Although the document appears to be and has the characteristics of an insurance declarations page, Defendants refused to produce the underlying policies and agreements, claiming they do not fall under the Rule 26 mandatory insurance disclosures because ARS is a "pooled self-insurance reserve." Def. B. para 3. No definition of self-insurance or any relevant case law supports Defendant's claim.

When facing potential future liability, an entity may choose to retain risk or transfer risk. Self-insurance is a *risk retention* approach to risk management where an entity sets aside a sum to protect against the possibility of loss. In contrast to risk retention, an entity may *transfer risk* by paying a firm to cover a loss according to agreed terms. In this way, the entity insures itself from the danger of a loss greater than what it can withstand.

Here, the Saint Thomas Entities have produced no documents showing that they set aside funds to protect against the possibility of their own liability. Rather, as the certificate they produced shows, they regularly paid some amount and entered into an agreement, which is subject to yet unknown terms, where ARS administers a risk-transferring mechanism that indemnifies and/or reimburses participating members against certain forms of liability. "The Trust is a program whereby members of the Ascension Health Alliance participate (*i.e.* fund the trust and pay its expenses)." Decl. of Janet Roth ¶ 4. The certificate Defendants produced refers to the participants as "insureds." However, even if the certificate made no mention of insurance or insureds, the entirety of the Agreement would still be discoverable under Rule 26 because the function and characteristics of the Agreement demonstrate that it is insurance for purposes of Rule 26.  Neither the Advisory Committee notes nor any caselaw supports Defendants' argument that the agreement is self-insurance and therefore not subject to Rule 26 mandatory disclosure.

Although Rule 26 does not define insurance, the Advisory Committee notes state that "insurance is an asset created specifically to satisfy the claim." Defendants cannot dispute that the ARS Agreement exists solely to satisfy potential claims made against its members. Courts in other jurisdictions have found entities with similar agreements to be insurance businesses and ordered the entities to produce the insurance documents.

In addition to being subject to Rule 26 mandatory disclosure, the insurance document is also discoverable under Rule 34. A protective order is in place, and Defendants will suffer no harm by producing the insurance Agreement.

## FACTUAL AND PROCEDURAL BACKGROUND

This litigation involves claims for wrongful death and personal injury caused by an injectable steroid, methylprednisolone acetate ("MPA"), manufactured by Defendant New England Compounding Pharmacy, Inc. ("NECC"). As alleged, NECC produced contaminated MPA that caused serious fungal infections and death.  Claims have also been brought against a number of other parties, including Saint Thomas Health, Saint Thomas Network, and Saint Thomas Hospital West f/k/a Saint Thomas Hospital (collectively the "Saint Thomas Entities") and Saint Thomas Outpatient Neurological Clinic ("STOPNC"). Plaintiffs allege STOPNC purchased contaminated injections from NECC and administered them to patients who suffered injuries. Docket No. 1494 at ¶ 1.

On October 3, 2014, the PSC moved the Court to enter an order compelling the Saint Thomas Entities to produce all insurance agreements related to claims against them in this litigation pursuant to Rule 26(a)(1)(A)(iv). Docket No. 1468. Rule 26 obliges a party to produce any insurance argument under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or to reimburse for payments made to satisfy a judgment. Plaintiffs first asked for the insurance information approximately two years prior to filing this motion.

On June 21, 2013 the PSC served subpoenas on approximately 85 healthcare providers pursuant to the Order on Central Enforcement of Subpoenas. Docket No. 193. The PSC revised its subpoena on July 17, 2013 which requested the following documents:

> Any and all policies of insurance, including without limitation of
> the foregoing, professional liability, malpractice, products liability,
> general liability, and comprehensive or umbrella policies, issued to
> the Healthcare Provider and/or its principal officers and directors

and/or any physician working for or on behalf of the Healthcare
Provider, for the policy periods covering any use of NECP medical
products identified as contaminated by the CDC.

On November 7, 2013, Magistrate Judge Boal noted that Rule 26 required healthcare

clinics which are named defendants in the MDL, including the Saint Thomas Entities, to produce

this insurance information. The PSC met and conferred with the St. Thomas Entities multiple

times regarding this issue. The Saint Thomas Entities refused to provide their insurance

agreements related to claims made by plaintiffs in this litigation.

On July 17, 2014, Judge Boal held a Rule 26 conference related to common discovery

plans offered by various parties. On September 18, 2014, Judge Boal issued an order governing

common discovery requiring parties who had not previously exchanged initial disclosures to do

so no later than October 18, 2014. Docket No. 1425, p. 3.

On August 28, 2014, the Saint Thomas Entities produced only the certificates of

insurance and did not produce any applicable insurance policies. The certificates indicate that the

Saint Thomas Entities had insurance through an entity called "Ascension Risk Services." The

certificates of coverage also state the following:

This is to certify that the coverage listed below has been issued to
the Covered Entity named above for the period indicated.
Notwithstanding any requirement, term or condition of any
contract or other document with respect to which this certificate
may be issued or may pertain, the coverage afforded as described
herein is subject to all the terms, exclusions and conditions of such
coverage. Limits shown are minimum liability limits required and
may have been reduced by defense costs and paid claims…

Except where otherwise required by law, all insureds share the
limits of liability.

Under the ARS agreement, the Saint Thomas Entities do not self-insure their own loss. Rather, the insurance program participants pay a consideration to ARS in exchange for liability insurance up to a limit, which the PSC will not know until Defendants produce the underlying Agreement. Like any other insurer, ARS uses the premiums paid to it by participants to satisfy covered liabilities. As stated in the certificate of coverage, "Except where otherwise required by law, all insureds share the same limits of liability." Docket No. 1470-3.

The PSC immediately notified the Saint Thomas Entities that "[the PSC] was under the impression the full policies would be produced. As [the PSC] made clear in the [August 21, 2014 letter] we are going to insist on the full policy (including endorsements) as is clearly indicated by the rule and Judge Boal's subpoena order." Benjamin A. Gastel Decl. at Ex. 2.

On September 2, 2014, counsel for the Saint Thomas Entities agreed to provide certain insurance agreements for "buffer and excess insurance policies" but refused to produce the "trust agreement" related to ARS insurance agreement reflected in the certificates of coverage served on August 28, 2014. Defendants contend that the agreement represents a Self-Insurance Trust not subject to mandatory disclosure under Federal Rule of Civil Procedure 26(a)(1)(A)(iv). Roth Aff. at ¶¶ 3, 5.

Defendant's refusal to produce this agreement is the subject of the PSC's October 3, 2014 Motion to Compel. In its motion and during oral argument, the PSC disputed Defendant's characterization of the Agreement with Ascension Health Alliance as a "self-insurance trust" as factually and legally false.

**STANDARD OF REVIEW**

The district judge reviews a magistrate judge's report and recommendation de novo. Fed. R. Civ. P. 72(b)(3). "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Id.

**OBJECTIONS**

**I.     THE MAGISTRATE JUDGE ERRED BY CONTRAVENING THE INTENT OF FED. R. CIV. P.  26(a)(1)(A)(iv)**

In its notes, the Advisory Committee states that reasons for amending the previous insurance disclosure rules were 1.) "the amendment resolves this issue [of courts previously ruling against disclosure for procedural reasons] in favor of disclosure;" and 2.) "Disclosure of insurance coverage will enable both sides to make the same realistic appraisal of the case." Fed R. Civ. P. 26(a)(1)(A)(iv) advisory committee's note. The Rule does not obligate parties to disclose self-insurance because that would create a backdoor to discovering a company's financial information, which is beyond the purpose of the provision.

**A.     Rule 26 Exists to Advance Litigation.**

The Advisory Committee made clear that insurance information should be disclosed in order to help settle cases. This policy consideration is especially important in the context of this MDL where it is all but certain that insufficient funds are available to fully compensate the claimants. Knowing what coverage is available to the Saint Thomas Entities as an "insured" under the ARS Agreement will allow the PSC and plaintiffs to evaluate the circumstances of insurance availability, and thereby assist in the settlement of cases, and in the event defendants are later required to pay a judgment.

**B.**     **Disclosure is Necessary for the PSC to Understand the Terms of Coverage.**

The certificate produced refers to "terms, exclusions and conditions of such coverage." It is clear that this section refers to the terms of the Agreement, which will define exclusions, covered liabilities, and the extent of coverage. The PSC requires those underlying insurance documents to understand what may or may not be covered by the agreement, and what may or may not be possible in settlement and litigation.

For example, the document states there is a $10 million limit for each medical incident. With access only to the certificate of coverage, the PSC has no way of knowing whether the Agreement defines "medical incident" as a term. Without the Agreement, there is also no way of knowing whether the $10 million limit is an aggregate amount or whether the limit would apply to each claimant. The PSC is left in the dark as to whether the potential coverage is comparatively small or substantially larger. Meaningful settlement discussions cannot occur when the PSC does not know which of those possibilities exists. This potential disparity in coverage exemplifies the reasons for the Insurance Disclosure amendments and why compelling disclosure in this case is necessary.

**C.**     **Defendants Suffer No Harm By Producing the Documents.**

Evidentiary standards will determine whether the Agreement is later ruled admissible. The Advisory Committee noted this. "In no instance does disclosure make the facts concerning insurance coverage admissible in evidence."  Admissibility is a separate question because the policy reasons for mandating disclosure of insurance documents are distinct from evidentiary standards. Disclosure provides practical benefits for all parties. Furthermore, protective orders

are in place for this litigation that should assuage any concerns about the disclosure of potentially

competitively sensitive information. Docket No. 814 ¶¶ 2-3, 6-11, 17-20.

## II.      THE MAGISTRATE JUDGE ERRED BY CONCLUDING THAT THE AGREEMENT CONSTITUTES SELF-INSURANCE, WHICH FED. R. CIV. P. 26(A)(1)(A)(IV) DOES NOT OBLIGE A PARTY TO PRODUCE.

### A.      Rule 26(a)(1)(A)(iv) Obliges A Party To Produce Any Insurance Agreement Under Which An Insurance Business May Be Liable To Satisfy All Or Part Of A Possible Judgment, In Its Entirety.

The Magistrate Judge correctly recognized that Rule 26(a) requires a party to disclose,

without awaiting a discovery request, "any insurance agreement under which an insurance

business may be liable to satisfy all or part of a possible judgment in the action or to indemnify

or reimburse for payments made to satisfy the judgment." Order 3-4 citing Fed. R. Civ. P.

26(a)(1)(A)(iv). The rule also requires the party to disclose the complete insurance agreement,

not just a summary or, like the defendants have done in this case, a certificate of insurance. See

e.g. Cmty. Ass'n Underwriters of Am. v. Queensboro Flooring Corp., Case No. 3:10-CV-1559,

2014 U.S. Dist. LEXIS 90939 (M.D. Pa. July 3, 2014) (granting motion to compel entire

insurance agreement where party only produced declaration pages); Boyer v. Riverhead Cent.

School Dist., 2006 U.S. Dist. LEXIS 93917, (E.D.N.Y. 2006) (holding that producing summaries

of insurance policies is insufficient; terms and conditions are also relevant and should be

disclosed under 26(a)(1)(d)); Morock v. Chautauqua Airlines, Inc., 2007 U.S. Dist. LEXIS

74009 (M.D.Fla. 2007) (holding disclosure of declarations page and assurance that policy would

adequately cover plaintiff's claims insufficient); Wolk v. Green, Case No. 06-5025, 2008 U.S.

Dist. LEXIS 67759 (N.D. Cal. Jan. 31, 2008) (defendant ordered to produce complete insurance

agreement, not just declarations page).

The insurance certificate Defendants produced, Document 1470-3, which they call a certificate of coverage, appears to be an insurance declarations page and refers to participants as "insureds." Docket No. 1470-3. For this reason alone, the entire Agreement should be disclosed under Rule 26(a).

      B.      **<u>Courts Examine the Characteristics of an Agreement Between Parties to Determine Whether an Indemnification or Reimbursement Relationship Exists, Not Whether the Party Itself Calls the Agreement Insurance.</u>**

The Magistrate Judge erred by concluding that the Saint Thomas Entities are self-insured through their participation in the Ascension Health Alliance pooled trust and that the ARS fund is not an insurance business. In doing so Judge Boal relied solely on an affidavit submitted by the Saint Thomas Entities that declares the ARS Agreement to be "self-insurance;" "the Trust appears to qualify as self-insurance. The Saint Thomas Entities maintain that the Trust participants have not transferred risk to Ascension Risk Services or any other third party." Order at 4 citing Roth Aff. ¶ 4. Under dictionary definitions and various courts defining what constitutes insurance for purposes of Rule 26 disclosures, the ASR agreement should be considered insurance under Rule 26. Furthermore, although the Magistrate Judge is correct that Rule26(a) does not apply to self-insurance reserve funds, neither case law nor the facts of the Agreement support a finding that the ARS Agreement is self-insurance.

The Ninth Circuit in <u>Physicians' Defense Co. v. Cooper</u>, 199 F. 576 (9th Cir. Cal. 1912) has cited the definition of insurance in Webster's and the Standard Dictionary:

> "The act of insuring against loss or damage by a contingent event; a contract whereby one party undertakes to indemnify or guarantee the other against loss by certain specified risks." Webst. Dict. "Insurance."

The Standard Dictionary defines it as:

"An act or system of insuring or assuring against loss; specifically, the system by or under which indemnity or pecuniary payment is guaranteed by one party or several parties to another party, in certain contingencies, upon specified terms." Id. at 578.

"An insurance contract," explained the court, in Shakman v. United States Credit System Co., 92 Wis. 366, 374 (Wis. 1896) "is a contract whereby one party agrees to wholly or partially indemnify another for loss or damage which he may suffer from a specified peril." In the context of analyzing whether a particular commercial practice constitutes the business of insurance in a McCarran-Ferguson Act case, the United States Supreme Court offered a straight-forward test by examining three factors: 1. Whether the practice has the effect of transferring or spreading a policy-holder's risk; 2. whether the practice is an integral part of the policy relationship between the insurer and the insured, and 3. whether the practice is limited to entities within the insurance industry. Union Labor Life Insurance Co. v. Pireno, 458 U.S. 119 (1982). Although the Court did not use the test for determining whether an entity qualifies as insurance business under Rule 26, the purpose of the test, determining whether an entity engages in insurance business, is the same as the analysis required here. Here, ARS undisputedly transfers the total risk from the Saint Thomas Entities to a larger fund; not only is that practice an integral part of the relationship between the Saint Thomas Entities and ARS, it is the only basis of their relationship. Lastly, the practice of spreading risk to a larger fund does not exist outside of an insurer insured relationship.

Defendants merely asserted that the Agreement is a self-insurance trust while offering no case law supporting their argument that the Agreement is self-insurance not subject to Rule 26 disclosure requirements. However, in similar instances where a party claimed an agreement with a third-party did not fall under Rule 26, courts have ordered entities to disclose the agreement

documents if the agreement involved indemnifying or reimbursing in consideration for some form of payment. The courts in these cases ordered disclosure because Rule 26 does not require that the agreement refer to the relationship or association as insurance, or refer to payment as a premium. Rather, the intent of the rule is to bring indemnification and reimbursement agreements to light for the purpose of encouraging a swift resolution to litigation.

In Cessante v. City of Pontiac, Case No. 08-CV-10497, 2009 U.S. Dist. LEXIS 30217 (E.D. Mich. Apr. 9, 2009), the plaintiffs requested all documents related to Defendant City's Membership in the 'Michigan Risk Management Authority.' (MRMA). Even though the city characterized the MMRA as a 'self-insurance pool' the court ordered Defendants to produce all responsive documents relevant to their coverage under Rule 26. Id. 11-12. Similarly, in In re: Asbestos Products Liability Litigation, Civil action No. 2:02-md-875. Docket No. 875, slip op. 1-2 (July 23, 2012 E.D. Pa.)[1] the defendants claimed they were not required to produce insurance information under Rule 26 because they did not maintain general liability insurance, "but are rather participants in one or more mutual protection and indemnity associations." The court disagreed, ordered the defendants to produce the agreements, and found that the agreements "appear[ed] plainly to fall within the language of the Rule referring to agreements to indemnify or reimburse for payments made." Id.; see also Tardiff v. Knox County, 224 F.R.D. 522 (D. Me. 2004) in which the Court ordered disclosure of a reinsurance agreement, finding that a document need not contain the traditional terminologies of an insurance agreement to fall under the scope of Rule 26. Id. 224 F.R.D. 523-24.

---

[1]https://www.paed.uscourts.gov/documents/MDL/MDL875/7.23.12%20Various%20Pls%20Mot%20Compel%20granted%20in%20part.pdf accessed December 22, 2014.

Defendants cite two cases to support their argument that "several courts have concluded that self-insured pools like the Trust are not insurance companies and are not engaged in the business of insurance." Def. B. para 12. Neither of these cases involved any sort of pooled insurance trust or association, or analysis of whether an agreement could be deemed self-insurance. In fact, in <u>Esposito v. Simkins Indus.</u>, 943 A.2d 456 (Conn. 2008), cited by the defendants here, the court specifically distinguished self-insurance from any "reinsurer, insurer, *insurance pool*, or underwriting insurance." <u>Id.</u> at 464. (emphasis added). Furthermore, though it concerns a Connecticut State Law, the <u>Esposito</u> court cites to a definition of "insurance" which plainly applies to the Saint Thomas Entities Agreement. <u>Id.</u> The Connecticut law defines insurance as "any agreement to pay a sum of money, provide services or any other thing of value on the happening of a particular event or contingency or to provide indemnity for loss in respect to a specified subject by specified perils in return for a consideration." Conn. Gen. Stat. § 38a-1(10).

Defendants also cite <u>California Pacific Homes, Inc. v. Scottsdale Ins. Co.</u>, 70 Cal.App.4th 1187 (Cal.App. 1 Dist. 1999), which similarly does not involve any sort of pooled insurance. <u>California Pacific Homes</u> concerned a condominium manufacturer seeking allocation from its insurers after a judgment. <u>Id.</u> at 1189-1190. In addition to not involving Federal discovery rules, the opinion does not address any obligation to disclose insurance agreements, and does not define self-insurance. <u>Id.</u>

In her order, Magistrate Judge Boal quotes <u>Macdonald v. Pac. Empl'rs Ins. Co.</u>, 264 F. Supp. 2d 576, 582 (N.D. Ohio 2002) (internal quotations and citations omitted) to define self-insurance.

> . . . the practice of setting aside a fund to meet losses instead of insuring against such through insurance. Self-insurance is the antithesis of insurance. Insurance shifts the risk of loss from the insured to the insurer. *A self-insurer retains the risk of loss* imposed by law or contract.

(<u>Id.</u> emphasis added).

Here, the Saint Thomas Entities no longer retain the full risk of loss that a judgment or contract may impose, as was the case in <u>Macdonald</u>. Rather, that risk has been shifted to a pooled insurance fund, which indemnifies Defendants subject to terms. Unlike self-insurance, all entities who participate in the Ascension Agreement may be reimbursed or indemnified by the payments the Saint Thomas Entities make to the Ascension fund. It is possible for ARS to indemnify or reimburse participating "insureds" more than the payments they made, less than their total payments, or nothing at all. Such an agreement is the antithesis to the risk of loss a self-insurer bears. For this reason, a pooled arrangement like that at issue here is to all intents and purposes "insurance" under Rule 26. <u>See</u>, e.g., <u>Locke v. Karass</u>, 498 F.3d 49, 64 (1st Cir. Me. 2007) ("As noted in <u>Otto</u>, the pooling arrangement is akin to insurance;" equating a pooled union litigation fund to insurance that may benefit a local unit by providing greater litigation funds than it could raise on its own.) (internal citations omitted).

## III.    <u>THE MAGISTRATE JUDGE ERRED BY FINDING THAT THE AGREEMENT IS NOT DISCOVERABLE PURSUANT TO RULE 26(b)</u>

Rule 26(b) permits "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . ." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." <u>Id.</u> Rule 26(b)(1) generally permits liberal discovery of relevant information. <u>Baker v. Liggett Group, Inc.</u>, 132 F.R.D. 123, 125 (D. Mass. 1990). As the Supreme

Court has instructed, "discovery itself is designed to help define and clarify the issues;" Rule 26 must be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978).

The PSC argued that the Trust documents may be relevant or could reasonably lead to other matters that bear on the issue of plaintiffs' vicarious liability claims relating to the Saint Thomas Entities relationship with STOPNC. Docket No. 1469 at 7-8. The PSC disagrees with Judge Boal's characterization of the PSC's claim that, "the Certificates of Insurance show that Ascension Risk Services is treating the Saint Thomas Entities  as an undifferentiated corporate entity." Order at 6. The Certificates of Insurance need not directly show evidence in support of Plaintiffs' vicarious liability claim; they need only present facts which may lead to other evidence in support of that claim. In this case, the Agreement will likely contain a number of terms and provisions that STOPNC may refer to or rely upon although it is "not a party to the Trust." Order at 6 citing Roth Aff. at ¶ 4.

The PSC further contends that Judge Boal misapplied Rule 26(b) where she claims that "[t]he PSC has not explained how the Trust agreement could be evidence of agency between the Saint Thomas Entities and STOPNC when STOPNC is not a party to the Trust. The PSC, therefore, has not sufficiently shown how the Trust documents are relevant to any claims or defenses in this action." Under the established case-law on Rule 26(b), the PSC does not need to show how the "Trust documents" themselves are relevant to any claims or defenses. Rather, the documents need only have the potential to lead to facts, documents or solicited testimony which

supports the PSC's vicarious liability claim. Accordingly, the PSC submits that the Magistrate

Judge erred when she found that the insurance documents are not discoverable under Rule 26(b).

## **CONCLUSION**

For the foregoing reasons, the Court should reject Magistrate Judge Boal's Order and

grant the PSC's Motion to Compel the Production of Defendant's Insurance Agreements.


Dated:  December 23, 2014                          Respectfully submitted,


                                                     _/s/ Mark P. Chalos_____
                                                   Mark P. Chalos

                                                   Elizabeth J. Cabraser
                                                   Jeremy J. Troxel
                                                   LIEFF CABRASER, HEIMANN  &
                                                   BERNSTEIN, LLP
                                                   150 4th Avenue North, #1650
                                                   Nashville, TN 37219
                                                   Telephone: 415/956-1000
                                                   Facsimile: 415/956-1008
                                                   ecabraser@lchb.com
                                                   mchalos@lchb.com
                                                   jtroxel@lchb.com

                                                   *Federal/State Liaison*

                                                   J. Gerard Stranch, IV
                                                   Benjamin A. Gastel
                                                   BRANSTETTER, STRANCH &
                                                   JENNINGS, PLLC
                                                   227 Second Avenue
                                                   North Nashville, TN 37201
                                                   Telephone: 615/254-8801
                                                   Facsimile: 615/255-5419
                                                   gerards@branstetterlaw.com
                                                   beng@branstetterlaw.com

                                                   *Plaintiffs' Steering Committee and TN Chair*

Thomas M. Sobol
Kristen Johnson Parker
HAGENS BERMAN SOBOL SHAPIRO, LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Telephone: 617/482-3700
Facsimile: 617/482-3003
tom@hbsslaw.com
kristenjp@hbsslaw.com

*Plaintiffs' Lead Counsel*

Marc E. Lipton
LIPTON LAW
18930 W. 10 Mile Road
Southfield, MI 48075
Telephone: 248/557-1688
Facsimile: 248/557-6344
marc@liptonlaw.com

Kimberly A. Dougherty
JANET, JENNER & SUGGS, LLC
31 St. James Avenue, Suite 365
Boston, MA 02116
Telephone: 617/933-1265
kdougherty@myadvocates.com

Mark Zamora
ZAMORA FIRM
6 Concourse Parkway, 22nd Floor
Atlanta, GA 30328
Telephone: 404/451-7781
Facsimile: 404/506-9223
mark@markzamora.com

Patrick T. Fennell (VSB 40393)
CRANDALL & KATT
366 Elm Avenue, S.W.
Roanoke, VA 24016
Telephone: 540/342-2000
Facsimile: 540/400-0616
pfennell@crandalllaw.com

*Plaintiffs' Steering Committee*

## **<u>CERTIFICATE OF SERVICE</u>**

I, Mark P. Chalos, hereby certify that I caused a copy of the foregoing to be filed electronically via the Court's electronic filing system. Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system, and notice of these filings will be sent to these parties by operation of the Court's electronic filing system.

Dated:  December 23, 2014

   _/s/ Mark P. Chalos_____
Mark P. Chalos