UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION ) ) ) ) ) | MDL No. 02419<br>Docket No. 1:13-md-2419-RWZ |
| This document relates to: ) ) | |
| Handy v. Box Hill Surgery Center, LLC, et al.<br>No: 1:14-cv-14019-RWZ ) ) ) | |
| Armetta v. Box Hill Surgery Center, LLC, et al.<br>No. 1:14-cv-14022-RWZ ) ) ) | |
| Torbeck v. Box Hill Surgery Center, LLC, et al.<br>No. 1:14-cv-14023-RWZ ) ) ) | |
| Kashi v. Box Hill Surgery Center, LLC, et al.<br>No. 1:14-cv-14026-RWZ ) ) ) | |
| Bowman v. Box Hill Surgery Center, LLC, et al.<br>No. 1:14-cv-14028-RWZ ) ) ) | |
| Dreisch v. Box Hill Surgery Center, LLC, et al.<br>No. 1:14-cv-14029-RWZ ) ) ) | |
| Davis v. Box Hill Surgery Center, LLC, et al.<br>No. 1:14-cv-14033-RWZ ) ) ) | |
| Farthing v. Box Hill Surgery Center, LLC, et al.<br>No. 1:14-cv-14036-RWZ ) ) | |

**<u>MOTION TO DISMISS NEGLIGENCE, INFORMED CONSENT, BATTERY, RESPONDEAT SUPERIOR,[1] CIVIL CONSPIRACY, STRICT LIABILITY,[2] CONSUMER FRAUD, WRONGFUL DEATH, LOSS OF CONSORTIUM, AND PUNITIVE DAMAGES CLAIMS FOUND IN THE PLAINTIFFS' COMPLAINTS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED ACCORDING TO F.R.C.P. 12b(6).</u>**

---

[1] Plaintiffs in *Handy* do not make a claim for respondeat superior, but Plaintiffs in the other cases do.

[2] Plaintiffs in *Handy* do not make a claim for strict liability, but Plaintiffs in the other cases do.

I. **INTRODUCTION**

Defendants, Box Hill Surgery Center, L.L.C., Ritu T. Bhambhani, M.D., and Ritu T. Bhambhani, M.D., L.L.C. (hereinafter, collectively "Box Hill Defendants"), by undersigned counsel, respectfully move this Honorable court to dismiss the Plaintiffs' claims as outlined below pursuant to Fed. R. Civ. P. 12(b)(6), Local Rule 7.1 and the authority cited in the attached memorandum in Support of the Motion to Dismiss as to *Handy v. Box Hill Surgery Center, LLC, et al.* No: 1:14-cv-14019-RWZ; *Armetta v. Box Hill Surgery Center, LLC, et al.* No. 1:14-cv-14022-RWZ; *Torbeck v. Box Hill Surgery Center, LLC, et al.* No. 1:14-cv-14023-RWZ; *Kashi v. Box Hill Surgery Center, LLC, et al.* No. 1:14-cv-14026-RWZ; *Bowman v. Box Hill Surgery Center, LLC, et al.* No. 1:14-cv-14028-RWZ; *Dreisch v. Box Hill Surgery Center, LLC, et al.* No. 1:14-cv-14029-RWZ; *Davis v. Box Hill Surgery Center, LLC, et al.* No. 1:14-cv-14033-RWZ; and *Farthing v. Box Hill Surgery Center, LLC, et al.* No. 1:14-cv-14036-RWZ (cumulatively, hereinafter "Plaintiffs," "related Plaintiffs," "instant actions," "above cases," or "related cases").[3]

By way of background, over a number of years New England Compounding Pharmacy, Inc. a/k/a New England Compounding Center (hereinafter "NECC"), supplied preservative free Methylprednisolone Acetate (hereinafter, "MPA"), a steroid used in pain medicine, to various physicians, pain clinics, hospitals, and other medical providers, including the Box Hill Defendants. On or about September 26, 2012 a recall of that medication was issued out of concern for fungal contamination of the medication in three "lots" potentially provided to these facilities. Litigation ensued and along with NECC and various other defendants, the Box Hill Defendants were named as defendants. The litigation was consolidated through the Judicial

---

[3] Harry Roth, Esquire, and Michael Coren, Esquire are Plaintiffs' counsel of record in the *Handy* (No: 1:14-cv-14019-RWZ). Patricia Kasputys, Esquire and Sharon Houston, Esquire are Plaintiffs' counsel of record in the remaining seven cases captioned above.

2

Panel on Multi District Litigation in the District Court of Massachusetts, now before the Honorable Rya Zobel.

### Box Hill Defendants

The moving defendants operate an anesthesiology and pain medicine clinic in Abingdon, Maryland, known as the Box Hill Surgery Center, where Dr. Ritu Bhambhani performed epidural steroid injections using MPA obtained from NECC. Box Hill Surgery Center is where the procedures at issue occurred. Dr. Bhambhani, a licensed physician board certified in Anesthesiology and Pain Medicine, was named in the suit as the physician who injected the medication into the patients during her procedures. Ritu T. Bhambhani, M.D., P.A., is the name of Dr. Bhambhani's private practice group. Dr. Bhambhani is the only physician affiliated with the Box Hill Defendants. The Box Hill Defendants had no affiliation with NECC other than to order medications, which they believed to be safe based on various representations of the company and others. There are hundreds of other health care providers across the country who also ordered the same medications.

Plaintiffs allege through Complaints initially filed in the Circuit Court for Baltimore County, Maryland, which were subsequently removed and transferred to the MDL in this Court, that the moving defendants failed to take due care in choosing the appropriate entity from whom to obtain the preservative free MPA. Plaintiffs allege generally that this failure caused injury to the Plaintiffs. The moving defendants deny all allegations of negligence and any and all other allegations of wrong-doing.

### Procedural History

Plaintiffs initially filed these eight (8) actions in the Health Care Alternative Dispute Resolution Office of Maryland ("HCADRO"), pursuant to the requirements of Maryland's Health Care Malpractice Claims Act (hereinafter "HCMCA" or "Act"), codified in Md. Code,

3

Cts. & Jud. Proc. Art., 3-2A-01, *et seq.* The HCMCA also required Plaintiffs to file a Certificate of Qualified Expert and Report and to waive arbitration before they re-filed each Complaint in the Circuit Court for Baltimore County, Maryland against the Box Hill Defendants, as well as other NECC affiliated individuals or entities and other non-NECC entities.[4] The Box Hill Defendants sought dismissal and/or to transfer venue to the Circuit Court for Harford County, Maryland, but that motion was stayed after co-defendant Ameridose had each action removed to the U.S. District Court for the District of Maryland. On or about October 24, 2014, each action was then transferred to this MDL docket for In re: New England Compounding Pharmacy, Inc., Products Liability Litigation, pursuant to a Conditional Transfer Order (1:13-md-2419, Doc. 1507). Plaintiffs assented to a motion for extension of time until January 13, 2015, for the Box Hill Defendants to file this responsive pleading. (1:13-md-2419, Doc. 1542.)

The Box Hill Defendants now move this Court to dismiss Plaintiffs' claims alleging (1) negligence, (2) informed consent, (3) battery, (4) respondeat superior,[5] (5) civil conspiracy, (6) strict liability,[6] (7) violations of Maryland and Massachusetts consumer protection statutes, (8) wrongful death, (9) loss of consortium, and (10) punitive damages, since they fail to state a claim upon which relief can be granted, pursuant to F.R.C.P. 12(b)(6).

---

[4] The other defendants added to the *Handy* action were Barry Cadden, Gregory Conigliaro, Lisa Cadden, Douglas Conigliaro, Carla Conigliaro, Glenn A. Chin, Ameridose, LLC, GDC Properties Management, LLC, Medical Sales Management, Inc. ("MSM"), Medical Sales Management SW, Inc. ("MSMSW"), ARL Bio Pharma, Inc., Liberty Industries, Inc., and UniFirst Corporation. Ameridose, GDC, MSM and MSMSW were the NECC-related corporate defendants responsible for actually manufacturing, marketing, selling, and/or distributing the contaminated products in question. The individual co-defendants are owners, pharmacists, and/or managers of NECC, Ameridose, GDC, MSM and MSMSW. Liberty is an outside company responsible for designing and building the supposedly sterile "clean room" where these products were manufactured. UniFirst is an outside company, which is alleged to have been responsible for cleaning the clean room where the drugs were manufactured. ARL Bio Pharma, Inc. was retained by NECC and Ameridose to provide sterility testing of the drugs at issue. In the other seven actions addressed in this Motion, Plaintiffs only added Ameridose, LLC, and UniFirst Corporation as defendants in addition to the moving Defendants.

[5] Plaintiffs in *Handy* do not make a claim for respondeat superior, but Plaintiffs in the other cases do.

[6] Plaintiffs in *Handy* do not make a claim for strict liability, but Plaintiffs in the other cases do.

## II.  PLAINTIFFS' NEGLIGENCE CLAIMS MUST BE DISMISSED

In order to maintain an action for medical negligence in Maryland, Plaintiffs must prove that a duty (standard of care) exists, that the health care provider breached that standard of care, and that the breach proximately caused injury. Plaintiffs here fail on all counts.

Specifically, Plaintiffs attempt to impose a duty that does not exist as to the Box Hill Defendants. Plaintiffs fail to plead sufficient facts to support bald allegations that health care providers need to visit, inspect, and investigate the facilities, manufacturers, and pharmacies from whom they purchase medication and other products. That duty does not exist. Further, nothing was pleaded as to a breach of the standard of care for a duty that actually exists in this case as to the Box Hill Defendants. Moreover, even if this imaginary duty alleged by Plaintiffs exists and the Box Hill Defendants actually breached the duty (and the same were properly pleaded—which they are not), Plaintiffs' have failed to provide a sufficient causal link between Box Hill's actions and the contamination caused by NECC, which is the cause of the meningitis/deaths. Again, Plaintiffs claims were devoid of any suggestion that Dr. Bhambhani's technique or the way in which she performed the procedure caused any injury, and Plaintiffs do not allege that Dr. Bhambhani caused the MPA to become contaminated. As such, Plaintiff has failed to sufficient plead the elements to maintain a claim of negligence against the Box Hill Defendants and their negligence claims should be dismissed as a matter of law.

## III.  PLAINTIFFS' CLAIMS FOR LACK OF INFORMED CONSENT ARE INSUFFICIENT AND MUST BE DISMISSED

Plaintiffs claim that the Box Hill Defendants failed to properly obtain the informed consent of Plaintiff patients. Plaintiffs admitted, however, that Plaintiff patients read and relied upon consent forms provided to them by the Box Hill Defendants before consenting to the epidural steroid injections. Realizing that their informed consent claims are in jeopardy, Plaintiffs then allege that the Box Hill Defendants did not explain the risks and benefits of the

epidural injection to them. While such a claim is simply not true as shown by the signed consent forms listing 17 risks and numerous alternatives, benefits, and patient signatures, the Defendants will put that aside for purposes of this argument. Maryland law has made clear that health care providers are not required to list or discuss every possible risk in the world, only the "material" ones. Plaintiffs did not sufficiently plead that the Box Hill Defendants withheld "material" risks, nor have they sufficiently pleaded that Dr. Bhambhani knew that the MPA was contaminated and then failed to tell her patients. Accordingly, Plaintiffs' lack of informed consent claims should be dismissed because they have failed to state a claim upon which relief can be granted.

### IV. ALL CLAIMS FOR BATTERY MUST BE DISMISSED

Under Maryland law, the doctrine of Battery and Informed Consent are mutually exclusive of each other, requiring proof of different elements. Informed consent is a negligence concept based upon the duty of a health care provider to give his/her patient appropriate or material information so that the patient can make an informed decision about proceeding with a particular course of medical care. Battery, on the other hand, is an intentional tort. It occurs when a doctor does not obtain the consent of his patient to perform a particular medical procedure. A required element of proving and properly pleading a claim for battery is to allege a touching to which the patient did not consent. In this instance, the "touching" was an epidural steroid injection. Plaintiffs have not only failed to allege that the Plaintiff patients did not consent to the operation, but they actually admit that each patient read and relied on a consent form before consenting to the procedure. While Plaintiffs may question the extent of the information provided, consent to the procedure was given, so the claim for battery must be dismissed.

## V. ALL CLAIMS FOR RESPONDEAT SUPERIOR MUST BE DISMISSED

The relevant Plaintiffs seek to hold the Box Hill Defendants vicariously liable for the conduct of NECC, alleging that NECC was acting as the Box Hill Defendants' agent. Under Maryland law, a principal is vicariously liable for the negligence of its agent when the two share a master-servant relationship, but not when the agent is merely an independent contractor of the principal. At best, NECC was a vendor from whom the Box Hill Defendants ordered medications to be administered to patients, just like the Box Hill Defendants order other products and medications from other companies. NECC maintained the same type of relationship with hundreds (if not thousands) of other medical providers who ordered MPA and other drugs and products from NECC. In addition, Plaintiffs fail to plead sufficient facts to support any part, let alone all, of the three element *Shear* test. Put simply, however, if a principal is to be responsible for the actions or inactions of his or her subordinate, the principal must have ultimate responsibility to control the end result of his or her agent's actions. The Box Hill Defendants did not maintain any kind of control over NECC, so Plaintiffs were unable to plead that in their Complaints. As such, Plaintiffs' allegations are clearly insufficient to support an agency relationship between the Box Hill Defendants and NECC based on Maryland law, and the relevant Plaintiffs' respondeat superior claims should be dismissed.[7]

## VI. ALL CLAIMS FOR CIVIL CONSPIRACY MUST BE DISMISSED

Plaintiffs' claims for civil conspiracy fail to allege with any particularity an intention to agree or conspire to intentionally commit a wrongful act. Plaintiffs allege that a conspiracy was hatched to defraud the Massachusetts Board of Pharmacy and circumvent their regulations and safety requirements. These allegations are not true. However, assuming their truth for the sake of this argument, Plaintiffs claims are still deficient. The alleged fraud was not alleged to have

---

[7] This Court has dismissed respondeat superior or agency claims in other actions in the MDL based on similar legal concepts in other states to what is found in Maryland law. (Doc. 1360.)

7

been directed at the Plaintiffs. Without allegations of an "agreement" to commit an unlawful act or a lawful act by unlawful means the claim is deficient. Furthermore, Plaintiffs do not allege a causal link between the "conspiracy" and the contaminated drugs—namely, that the purported civil conspiracy caused the MPA to become contaminated. Therefore, Plaintiffs' claims fall short and must be dismissed.

## VII. ALL CLAIMS FOR STRICT LIABILITY MUST BE DISMISSED

The relevant Plaintiffs claim strict liability against the Box Hill Defendants because they were in the chain of distribution of a defective product—contaminated MPA. Under Maryland law, however, strict liability cannot be imposed on a highly skilled medical provider who provides a service in which that service predominates the alleged sale of a product. While Defendants disagree that a sale of a product occurred in these situations, it is immaterial to the consideration here. Maryland law is clear that the sale (of goods) is the predominant factor, when there is both a sale of goods and a service provided, only when the thrust and purpose is a transaction of sale with labor <u>incidentally</u> involved. In this situation, it is clear that the service (procedure) provided by Dr. Bhambhani is more than just incidental. It is clear that the patient is not buying the product to consume themselves like someone would when buying Tylenol. The patient is dependent on the skill and expertise of the physician to inject the MPA into the back or neck using a large needle and fluoroscopic guidance to get it to a specific and exact area close to the spine where it is needed. It is highly complicated and a patient is not capable of buying the product and performing the procedure himself or herself, nor is Dr. Bhambhani in the business of selling MPA separately for this purpose. She evaluates and diagnoses patients, and then performs the procedure on them.

While Plaintiffs allege that the Box Hill Defendants can be sued pursuant to Md. Code Ann., Cts & Jud. Proc. Art. ("CJP"), § 5-405(c)(1), since NECC is insolvent or judgment proof,

the premise is misplaced. CJP 5-405(c)(1) does not provide a <u>separate cause of action</u> for Plaintiffs under those circumstances. Rather, 5-405(c)(1) simply eliminates the "sealed container defense" (as it is known) as a possible defense for a defendant who can otherwise be validly sued under some independent cause of action. This assertion by Plaintiffs is irrelevant because the premise ignores Maryland law which precludes any strict liability cause of action against these Defendants as described above.

Accordingly, the relevant Plaintiffs' allegations are clearly insufficient to support claims of strict liability against the Box Hill Defendants and should be dismissed as a matter of law.

## VIII. PLAINTIFFS' CLAIMS FOR CONSUMER FRAUD MUST BE DISMISSED IN ACCORDANCE WITH THE MARYLAND CONSUMER PROTECTION ACT AND MASSACHUSETTS LAW

The Box Hill Defendants are not subject to the Maryland Consumer Protection Act (hereinafter "MCPA") as pleaded by Plaintiffs. As a matter of law and by design, the legislature specifically excluded medical providers from those subject to the MCPA, and Maryland courts have consistently interpreted the MCPA not to apply to medical providers. It is undisputed that the Box Hill Defendants are medical providers. Therefore, the Box Hill Defendants are not subject to the MCPA and all such claims by Plaintiffs must be dismissed.

Further, Plaintiffs allege that the Box Hill Defendants violated consumer protection laws found in Mass. Gen. Laws Ann., Ch. 93A, et seq., which is intended to protect consumers from unfair or deceptive trade practices. Ch. 93A(2). However, that statute specifically states that it only applies to the "sale…of any services and…any trade or commerce directly or indirectly <u>affecting the people of [Massachusetts]</u>." Ch. 93A(1)(b) (emphasis added). It is undisputed that none of the Plaintiff patients are residents of the Commonwealth of Massachusetts. As such, Plaintiffs' claims that the Box Hill Defendants violated Mass. Gen. Laws Ann., Ch. 93A, to the detriment of the Plaintiff patients cannot be maintained and must be dismissed as well.

## IX.  PLAINTIFFS' WRONGFUL DEATH CLAIMS MUST BE DISMISSED BECAUSE THERE IS NO UNDERLYING WRONGFUL ACT

Plaintiffs allege a claim for wrongful death against the Box Hill Defendants for the death of a Plaintiff decedent, pursuant to Md. Code Ann., Cts. & Jud. Proc. Art. ("CJP"), § 3-904 and Maryland Rule 15-1001, in the following cases and corresponding counts:[8]

*Handy* (No: 1:14-cv-14019-RWZ) – Count XIII
*Armetta* (No. 1:14-cv-14022-RWZ) – Count XIII – XV
*Kashi* (No. 1:14-cv-14026-RWZ) – Counts XIII - XVII
*Bowman* (No. 1:14-cv-14028-RWZ) – Count XIII

Wrongful death is defined as "an action…against a person whose wrongful act causes the death of another. CJP 3-902. While it is a separate cause of action, a wrongful death claim is based on some underlying "wrongful act." While Plaintiffs baldly allege that the Box Hill Defendants caused the death of each Plaintiff decedent, they have failed to plead sufficient facts to support any underlying wrongful acts. For example, Plaintiffs have not properly pleaded a claim for negligence, lack of informed consent, battery, respondeat superior, civil conspiracy, strict liability, or violations of consumer protection statutes, which cumulatively address alleged negligence, intentional torts, and fraud. Plaintiffs have also failed to plead facts to support their bald allegations of the elements of these claims.

Further, to maintain a wrongful death claim, Plaintiffs need to prove that the wrongful act caused the injury. Plaintiffs have not sufficiently pleaded that Dr. Bhambhani caused the NECC manufactured MPA to be contaminated, that she intentionally injected steroids that she knew were contaminated, or that her performance of the medical procedure (such as her technique) was actually negligent. At best, Plaintiffs have alleged some sort of conspiracy between Dr. Bhambhani and NECC to circumvent prescription requirements when ordering MPA. Even if

---

[8] This section does not apply to *Torbeck* (No. 1:14-cv-14023-RWZ), *Dreisch* (No. 1:14-cv-14029-RWZ), *Davis* (No. 1:14-cv-14033-RWZ), or *Farthing* (No. 1:14-cv-14036-RWZ). Reference to "Plaintiffs" only refer to the wrongful death Plaintiffs in the cases and Counts identified.

true, which it is not, Plaintiffs have failed to properly plead that such an act actually led to the contamination of the MPA that caused Plaintiff decedents' deaths. This Court has previously dismissed other identical civil conspiracy claims for these reasons, *supra*. Consequently, without properly pleading a "wrongful act" by the Box Hill Defendants <u>and</u> one that "caused" the deaths in these claims, Plaintiffs have failed to state a claim upon which relief can be granted. Accordingly, the relevant Plaintiffs' wrongful death claims should be dismissed.

## X.     LOSS OF CONSORTIUM

Plaintiffs allege a claim for loss of consortium against the Box Hill Defendants in the following cases and corresponding counts:[9]

*Handy* (No: 1:14-cv-14019-RWZ) – Count XIII
*Davis* (No. 1:14-cv-14033-RWZ) – Count XIII
*Farthing* (No. 1:14-cv-14036-RWZ) – Count XIII
*Dreisch* (No. 1:14-cv-14029-RWZ) – Count XIII
*Torbeck* (No. 1:14-cv-14023-RWZ) – Count XIII

A claim for loss of consortium arises from the loss of society, affection, assistance, and conjugal fellowship allegedly suffered by the marital unit as a result of the physical injury to one spouse through the alleged tortious conduct of a third party. Although a loss of consortium claim is an independent action eligible for an independent recovery, it is <u>derivative</u> of an injured spouse's claim for personal injury. As such, a loss of consortium claim cannot stand on its own. To the extent that the other claims in Plaintiffs' Complaints alleging liability against the Box Hill Defendants are dismissed as requested, these loss of consortium claims must also be dismissed for failure to state a claim upon which relief can be granted.

Further, in the *Handy* case, all Plaintiffs claim loss of consortium in Count XIII in accordance with their wrongful death claims. However, loss of consortium damages only accrue

---

[9] This section does not apply to *Armetta* (No. 1:14-cv-14022-RWZ), *Kashi* (No. 1:14-cv-14026-RWZ), or *Bowman* (No. 1:14-cv-14028-RWZ). Reference to "Plaintiffs" only refer to the Plaintiffs in the cases identified.

11

to a spouse of the injured party. Accordingly, the loss of consortium claims made in *Handy* should be dismissed as to all of the non-spouse Plaintiffs for this reason as well.

## XI. PLAINTIFFS' CLAIM FOR PUNITIVE DAMAGES MUST BE DISMISSED AS A MATTER OF LAW

Plaintiffs in all of the above related actions have attempted to assert a punitive damages claim, but failed to support the claim with sufficient pleading. As explained previously, while Plaintiffs may attach numerous other labels to their claims, the actions underlying the instant cases involved the medical care of a patient by a health care provider. As it applies to these cases, Maryland law is clear that plaintiffs are required to show actual malice as a prerequisite to the recovery of punitive damages. Maryland courts have characterized actual malice as "the performance of an act…with an evil or rancorous motive influenced by hate…to deliberately and willfully injure the plaintiff." *Miller*, 80 Md.App. 60, 69, 559 A.2d 813 (quoting *Testerman*, 275 Md. at 43, 338 A.2d 48). While Plaintiffs in the instant actions have used the terms negligent, reckless, and fraudulent in trying to describe the Box Hill Defendants' actions, these superfluous allegations without more do not satisfy the prerequisites of establishing a basis for punitive damages. Further, Plaintiffs have not and cannot point to any evidence that establishes that Dr. Bhambhani actually acted with any evil intent or motive (influenced by hate) to deliberately injure her patients. Not only is such an allegation not made, but it is illogical. Taken a step further, as hundreds of physicians across the country are in the same position and took the same actions as Dr. Bhambhani, one would have to believe that they all acted with the same malice intent—otherwise, it would be too much of a coincidence. For the above reasons, Plaintiffs' claims for punitive damages are unsupported and must be dismissed.

## CONCLUSION AND PRAYER FOR RELIEF

The Box Hill Defendants seeks an order from this Court:

1. Dismissing Plaintiffs' claims for (1) negligence, (2) informed consent, (3) battery, (4) respondeat superior,[10] (5) civil conspiracy, (6) strict liability,[11] (7) violations of Maryland and Massachusetts consumer protection statutes, (8) wrongful death, (9) loss of consortium, and (10) punitive damages, since they fail to state a claim upon which relief can be granted, pursuant to F.R.C.P. 12(b)(6), and;

2. Dismissing the above claims as to Defendants, Box Hill Surgery Center, L.L.C., Ritu T. Bhambhani, M.D., and Ritu T. Bhambhani, M.D., L.L.C., as to all Plaintiffs who allege such claims against the above Defendants including:

   a. *Handy v. Box Hill Surgery Center, LLC, et al.* No: 1:14-cv-14019-RWZ

   b. *Armetta v. Box Hill Surgery Center, LLC, et al.* No. 1:14-cv-14022-RWZ

   c. *Torbeck v. Box Hill Surgery Center, LLC, et al.* No. 1:14-cv-14023-RWZ

   d. *Kashi v. Box Hill Surgery Center, LLC, et al.* No. 1:14-cv-14026-RWZ

   e. *Bowman v. Box Hill Surgery Center, LLC, et al.* No. 1:14-cv-14028-RWZ

   f. *Dreisch v. Box Hill Surgery Center, LLC, et al.* No. 1:14-cv-14029-RWZ

   g. *Davis v. Box Hill Surgery Center, LLC, et al.* No. 1:14-cv-14033-RWZ

   h. *Farthing v. Box Hill Surgery Center, LLC, et al.* No. 1:14-cv-14036-RWZ

   i. Any plaintiff adopting the same or the Master Complaint in the future.

---

[10] Plaintiffs in *Handy* do not make a claim for respondeat superior, but Plaintiffs in the other cases do.
[11] Plaintiffs in *Handy* do not make a claim for strict liability, but Plaintiffs in the other cases do.

Respectfully submitted,

/s/ Gregory K. Kirby
Gregory K. Kirby
Pessin Katz Law, P.A.
901 Dulaney Valley Road, Suite 400
Towson, Maryland 21204
(410) 938-8800
***Attorneys for Box Hill Surgery Center, L.L.C., Ritu T. Bhambhani, M.D., and Ritu T. Bhambhani, M.D., L.L.C.***

## LOCAL RULE 7.1 CERTIFICATION

I hereby certify that I have conferred with Plaintiffs' counsel and attempted in good faith to resolve or narrow the issues.

/s/ Gregory K. Kirby
Gregory K. Kirby

## CERTIFICATE OF SERVICE

I, Gregory K. Kirby, hereby certify that a copy of the foregoing document, filed through the CM/ECF system will be accessible to those attorneys who are registered with the Court's electronic filing system and Notice of Electronic filing (NEF), including the attorneys representing the plaintiffs in the above-referenced individual cases, and will be sent to these parties by operation of the CM/ECF system on January 13, 2015.

/s/ Gregory K. Kirby
Gregory K. Kirby