# EXHIBIT 3

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>1:13-cv-12234-FDS May et al v. Ameridose, LLC et al<br>1:13-cv-12238-FDS Carman et al v. Ameridose, LLC et al<br>1:13-cv-12305-FDS Wiley et al v. Ameridose, LLC et al<br>1:13-cv-12311-FDS Schulz et al v. Ameridose, LLC et al<br>1:13-cv-12315-FDS Hester et al v. Ameridose, LLC et al<br>1:13-cv-12426-FDS Davis et al v. Ameridose, LLC et al<br>1:13-cv-12429-FDS Bequette et al v. Ameridose, LLC et al<br>1:13-cv-12430-FDS Norwood et al v. Ameridose, LLC et al<br>3:13-cv-00918 Ziegler et al v. Ameridose, LLC et al<br>3:13-cv-00919 Martin v. Ameridose, LLC et al<br>3:13-cv-00923 Reed v. Ameridose, LLC et al<br>3:13-cv-00929 Brinton v. Ameridose, LLC et al<br>3:13-cv-00930 Lovelace v. Ameridose, LLC et al<br>3:13-cv-00931 Ragland v. Ameridose, LLC et al<br>3:13-cv-00932 Slatton et al v. Ameridose, LLC et al<br>3:13-cv-00933 Rybinski v. Ameridose, LLC et al<br>3:13-cv-00934 Lemberg et al v. Ameridose, LLC et al<br>3:13-cv-00935 Ruhl et al v. Ameridose, LLC et al | )<br>)<br>)<br>)   MDL No. 1:13-md-2419-FDS<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

53075905.2

| | |
|---|---|
| 3:13-cv-00938 McElwee v. Ameridose, LLC et al | ) |
| 3:13-cv-00940 Robnett et al v. Ameridose, LLC et al | ) |
| 3:13-cv-00941 Sharer et al v. Ameridose, LLC et al | ) |
| 3:13-cv-00942 Johnson et al v. Ameridose, LLC et al | ) |
| 3:13-cv-00943 Knight v. Ameridose, LLC et al | ) |
| 3:13-cv-00951 Knihtila v. Ameridose, LLC et al | ) |
| 3:13-cv-00952 Sellers et al v. Ameridose, LLC et al | ) |
| 3:13-cv-00953 Barger et al v. Ameridose, LLC et al | ) |
| 3:13-cv-00954 Lodowski et al v. Ameridose, LLC et al | ) |
| 3:13-cv-00961 Skelton et al v. Ameridose, LLC et al | ) |
| 3:13-cv-00962 Chambers et al v. Ameridose, LLC et al | ) |
| 3:13-cv-00963 Hill et al v. Ameridose, LLC et al | ) |
| 3:13-cv-00964 Mathias v. Ameridose, LLC et al | ) |
| 3:13-cv-00965 Settle et al v. Ameridose, LLC et al | ) |
| 3:13-cv-00966 Miller v. Ameridose, LLC et al | ) |
| 3:13-cv-00967 Noble et al v. Ameridose, LLC et al | ) |
| 3:13-cv-00968 Eggleston et al v. Ameridose, LLC et al | ) |
| 3:13-cv-00969 Meeker et al v. Ameridose, LLC et al | ) |
| 3:13-cv-00970 Scott et al v. Ameridose, LLC et al | ) |
| 3:13-cv-00971 McCullouch et al v. Ameridose, LLC et al | ) |
| 3:13-cv-00972 McKee et al v. Ameridose, LLC et al | ) |
| 3:13-cv-00973 Kirby v. Ameridose, LLC et al | ) |
| 3:13-cv-00975 Richards v. Ameridose, LLC et al | ) |

53075905.2

| | |
|---|---|
| 3:13-cv-00977 Youree et al v. Ameridose, LLC et al | ) ) |
| 3:13-cv-00978 Koonce et al v. Ameridose, LLC et al | ) ) |
| 3:13-cv-00979 Pelters et al v. Ameridose, LLC et al | ) ) |
| 3:13-cv-00984 Besaw et al v. Ameridose, LLC et al | ) ) |
| 3:13-cv-00985 Ferguson et al v. Ameridose, LLC et al | ) ) |
| 3:13-cv-00986 Hurt et al v. Ameridose, LLC et al | ) ) |
| 3:13-cv-00987 Wanta et al v. Ameridose, LLC et al | ) ) |
| 3:13-cv-00988 Russell et al v. Ameridose, LLC et al | ) ) |
| 3:13-cv-00989 Pruitt et al v. Ameridose, LLC et al | ) ) |
| 3:13-cv-00992 Young v. Ameridose, LLC et al | ) ) |
| 3:13-cv-00993 Sullivan et al v. Ameridose, LLC et al | ) ) |
| 3:13-cv-01033 Barnard v. Ameridose, LLC et al | ) ) |
| 3:13-cv-01032 Berry v. Ameridose, LLC et al | ) ) |

## SAINT THOMAS NETWORK'S OBJECTIONS AND ANSWERS TO PLAINTIFFS' STEERING COMMITTEE'S FIRST SET OF INTERROGATORIES

Pursuant to Federal Rules of Civil Procedure 26 and 33, Saint Thomas Network ("STN") submits its Objections and Answers to Plaintiffs' Steering Committee's First Set of Interrogatories as follows:

## GLOBAL OBJECTIONS

1. STN generally objects to Plaintiffs Steering Committee's First Set of Interrogatories because STN's Motion to Stay Objections and Responses to Discovery Pending Submission of a Discovery Plan and Amended Protective Order, and Motion for Second Amended Protective Order, is currently pending before the Court. As a result, these Interrogatories are premature.

2. STN objects to the following phrase contained in the caption of the discovery requests propounded to it, which states:

   "This Document Relates to:

   All actions pending against Saint Thomas Outpatient Neurosurgical Center, LLC, and its affiliates . . ."

   STN is not an "affiliate" of Saint Thomas Outpatient Neurosurgical Center, LLC; it is a 50% owner of STOPNC.

## OBJECTIONS AND ANSWERS TO INTERROGATORIES

**INTERROGATORY NO. 1:** Please describe in detail Saint Thomas Network's relationship to and/or business arrangement with Saint Thomas Outpatient Neurosurgical Center, LLC ("Saint Thomas Neurosurgical").

> **OBJECTION:** STN objects to this request as vague and ambiguous, as the words "relationship" and "business arrangement" are undefined.
>
> **ANSWER:** STN is a member of Saint Thomas Outpatient Neurosurgical Center, LLC ("STOPNC"). According to the terms of the Operating Agreement, STN nominates two board members to the STOPNC Board of Directors.

**INTERROGATORY NO. 2:** Please describe in detail Saint Thomas Network's relationship to and/or business arrangement with Howell Allen Clinic.

> **OBJECTION:** STN objects to this request as vague and ambiguous, as the words "relationship" and "business arrangement" are undefined.
>
> **ANSWER:** Howell Allen Clinic, formerly Neurological Surgeons, P.C., is a member of STOPNC, as is STN.

**INTERROGATORY NO. 3:** Identify each communication (including face-to-face, telephone, email, or other communications) between NECC (including its agents, employees or representatives) and Saint Thomas Network (including its agents, employees or representatives). For each communication identified, please provide the following information:

> (a) the names, job titles, and contact information for each person involved in the communication;
>
> (b) the date, time, length, mode and location of each communication or discussion;
>
> (c) whether any notes, memoranda, recordings, writings or other records were kept of any of those conversations or communications; and
>
> (d) state as specifically as possible what each party to the communication or conversation said and state what actions Saint Thomas Network took, if any, as a result of each communication or conversation.
>
> **OBJECTION:** STN objects to this interrogatory as it seeks information that is irrelevant, beyond the scope of permissible discovery under FED. R. CIV. P. 26 and 33, and unlikely to lead to the discovery of relevant or admissible information regarding any allegation in the Complaints. Plaintiffs do not allege, and no facts exist to support an allegation, that STN purchased the MPA injected into any Plaintiff. Specifically, it is undisputed that the MPA injected into some or all of the Plaintiffs was purchased from NECC by STOPNC. STN also objects to this interrogatory as overly broad and unduly burdensome because it is not limited in time.

**INTERROGATORY NO. 4:** Identify each communication (including fact-to-face, telephone, email, or other communications) between Saint Thomas Network (including its agents, employees or representatives) and Saint Thomas Neurosurgical (including its agents, employees or representatives) regarding Saint Thomas Neurosurgical's acquisition of medications. For each communication identified, please provide the following information:

(a) the names, job titles, and contact information for each person involved in the communication;

(b) the date, time, length, mode and location of each communication or discussion;

(c) whether any notes, memoranda, recordings, writings or other records were kept of any of those conversations or communications; and

(d) state as specifically as possible what each party to the communication or conversation said and state what actions Saint Thomas Network took, if any, as a result of each communication or conversation.

**OBJECTION:** STN objects to this interrogatory as it seeks information that is irrelevant, beyond the scope of permissible discovery under FED. R. CIV. P. 26 and 33, and unlikely to lead to the discovery of relevant or admissible information regarding any allegation in the Complaints. STN does not interpret this interrogatory as including STN legal counsel; nor does it interpret this interrogatory as seeking information protected by the attorney-client privilege or work-product doctrine. To the extent Plaintiffs use this interrogatory to seek protected information or to impose an unnecessary and unwarranted privilege log burden, STHe objects to those attempts.

**ANSWER:** Subject to and without waiving the foregoing objections, STN is unaware of any such communications prior to September 18, 2012.

**INTERROGATORY NO. 5:** Please list the date, location, and attendees present at each and every meeting (business or social) between or among NECC (including its agents, employees or representatives) and Saint Thomas Network (including its agents, employees or representatives).

**OBJECTION:** STN objects to this interrogatory as it seeks information that is irrelevant, beyond the scope of permissible discovery under FED. R. CIV. P. 26 and 33, and unlikely to lead to the discovery of relevant or admissible information regarding any allegation in the Complaints. Plaintiffs do not allege, and no facts exist to support an allegation, that STN purchased the MPA injected into any Plaintiff. Specifically, it is undisputed that the MPA injected into some or all of the Plaintiffs was purchased from NECC by STOPNC. STN also objects to this interrogatory as overly broad and unduly burdensome because it is not limited in time.

**INTERROGATORY NO. 6:** Describe each and every action Saint Thomas Network took to ensure that medication injected into patients at Saint Thomas Neurosurgical was safe and free from contaminants.

 **OBJECTION:** STN objects to this interrogatory for lack of foundation.

 **ANSWER:** Subject to and without waiving the foregoing objection, STN did not owe any legal duty to patients in regard to treatment they received at STOPNC. In addition, STN is not a physician or healthcare provider and is prohibited by law from making medical diagnoses or prescribing medical treatment, including prescribing or administering medicine. Accordingly, STN is legally precluded from controlling or influencing the medical decisions of STOPNC physicians.

**INTERROGATORY NO. 7:** Describe in detail every gift, sample, incentive, promotion, thank you gift, and/or discount that Saint Thomas Network (or anyone associated with it) ever received from NECC (including its agents, employees or representatives) or any wholesaler or distributor of any injectable steroid.

 **OBJECTION:** STN objects to this interrogatory as it seeks information that is irrelevant, beyond the scope of permissible discovery under FED. R. CIV. P. 26 and 33, and unlikely to lead to the discovery of relevant or admissible information regarding any allegation in the Complaints. Plaintiffs do not allege, and no facts exist to support an allegation, that STN purchased the MPA injected into any Plaintiff. Specifically, it is undisputed that the MPA injected into some or all of the Plaintiffs was purchased from NECC by STOPNC. STN also objects to this interrogatory as overly broad and unduly burdensome because it is not limited in time and includes any wholesaler or distributor of injectable steroids.

**INTERROGATORY NO. 8:** Identify each Saint Thomas Network employee during 2012 by name and job title, and state whether each such employee is still employed by the company. Please also give a general description of the duties of each such person.

 **ANSWER:** STN had no employees in 2012.

**INTERROGATORY NO. 9:** Describe in complete detail the business structure of Saint Thomas Network including but not limited to:

 (a) provide the names and job title of each officer of Saint Thomas Network;

 (b) provide the name of each manager of Saint Thomas Network;

 (c) provide the name of each owner or member of Saint Thomas Network;

 (d) identify all contracts, agreements, cost-sharing arrangements, profit- sharing arrangements, patient referral arrangements existing between or among Saint Thomas Network and Saint Thomas Neurosurgical, Howell Allen Clinic, St. Thomas Hospital, Saint Thomas Health and/or Saint Thomas Health Services; and

(e) describe in detail all financial arrangements that presently exist or have previously existed between or among Saint Thomas Network and Saint Thomas Neurosurgical, Howell Allen Clinic, St. Thomas Hospital, Saint Thomas Health and/or Saint Thomas Health Services.

**OBJECTION:** STN objects to this interrogatory as overly broad and unduly burdensome because it is not limited in time. STN objects to this interrogatory as the contracts or agreements between STN and STH and STHe are irrelevant, beyond the scope of permissible discovery under FED. R. CIV. P. 26 and 33, and unlikely to lead to the discovery of relevant or admissible information regarding any allegation in the Complaints. STN also objects to this interrogatory as overly broad and unduly burdensome. This interrogatory is not limited to types of contracts, agreements, cost-sharing arrangements or profit-sharing arrangements.

**ANSWER:** Subject to and without waiving the foregoing objections, STN provides the following current information:

(a) Michael Schatzlein, M.D., Chairman; Craig Polkow, Vice-Chairman; Karen Springer, Secretary/Treasurer.

(b) STN does not have any managers.

(c) Saint Thomas Health is the sole member of STN.

(d) Saint Thomas Health Services was the name of two different entities. Those two entities are now known as Saint Thomas Network or Saint Thomas Health. A Services Agreement between STH and STOPNC exists. An Operating Agreement exists between STN and Howell Allen Clinic, formerly Neurological Surgeons, P.C., for the operation of STOPNC. STN has no other contracts, agreements, cost-sharing arrangements, profit-sharing arrangements or patient referral agreements with STOPNC. STN has no contracts, agreements, cost-sharing arrangements, profit-sharing arrangements or patient referral agreements with the Howell Allen Clinic.

(e) See response to (d) above. The financial arrangements are set forth in the Operating Agreement, which has been produced previously in related Tennessee state court litigation, and will also be produced in this litigation.

**INTERROGATORY NO. 10:** Please identify every employee or agent of Saint Thomas Network who performed any duties or functions for Saint Thomas Neurosurgical, and for each such person, please state:

(a) the person's name, job title and contact information;

(b) a description of the duties or functions performed; and

    (c)    a statement of whether the person continues to be employed by or affiliated with either Saint Thomas Network and/or Saint Thomas Neurosurgical.

**OBJECTION:** STN objects to this interrogatory as overly broad and unduly burdensome as it is not limited in time.

**ANSWER:** Subject to and without waiving the foregoing objection, current STOPNC board members who are also current or past employees of STHe or STH are Craig Polkow and Dawn Rudolph. Past board members include Dale Batchelor, M.D. and Alan Strauss, who are former employees of STH and STHe, respectively. Both Dr. Bachelor and Mr. Strauss can be contacted through undersigned counsel.

**INTERROGATORY NO. 11:** Has Saint Thomas Network every paid for or provided any personnel, medications, equipment, medical supplies, medical forms, billing services, telephone services, procurement services, contracting services, websites or other materials/services used by Saint Thomas Neurosurgical? If so, please explain in detail each item provided.

**ANSWER:** No.

**INTERROGATORY NO. 12:** Explain in detail all financial transactions that occurred between Saint Thomas Network and Saint Thomas Neurosurgical in 2012, including dates, amounts and reasons.

**OBJECTION:** STN objects to this interrogatory to the extent it seeks amounts of financial transactions because that information is irrelevant, beyond the scope of permissible discovery under FED. R. CIV. P. 26 and 33, and unlikely to lead to the discovery of relevant or admissible information regarding any allegation in the Complaints.

**ANSWER:** Subject to and without waiving the foregoing objections, STN received distributions from STOPNC, as provided for in the Operating Agreement, in January, April, May and July 2012.

**INTERROGATORY NO. 13:** Explain in detail all financial transactions that occurred between Saint Thomas Network and Howell Allen Clinic in 2012, including dates, amounts and reasons.

**OBJECTION:** STN objects to this interrogatory as it seeks information that is irrelevant, beyond the scope of permissible discovery under FED. R. CIV. P. 26 and 33, and unlikely to lead to the discovery of relevant or admissible information regarding any allegation in the Complaints.

**ANSWER:** Subject to and without waiving the foregoing objections, STN is not aware of any such transactions.

**INTERROGATORY NO. 14:** Explain in detail Saint Thomas Network's policies and procedures regarding the purchase of medications, including but not limited to a description of any applicable policies and procedures from Ascension.

> **OBJECTION:** STN objects to this interrogatory as it seeks information that is irrelevant, beyond the scope of permissible discovery under FED. R. CIV. P. 26 and 33, and unlikely to lead to the discovery of relevant or admissible information regarding any allegation in the Complaints. Plaintiffs do not allege, and no facts exist to support an allegation, that STN purchased the MPA injected into any Plaintiff. Specifically, it is undisputed that the MPA injected into some or all of the Plaintiffs was purchased from NECC by STOPNC.
>
> **ANSWER:** Subject to and without waiving the foregoing objections, STN does not purchase medications and, therefore, does not have any policies or procedures related to the purchasing of medications.

**INTERROGATORY NO. 15:** Please describe in detail all systems, policies and procedures used at Saint Thomas Network in order to supervise and oversee Saint Thomas Neurosurgical.

> **OBJECTION:** STN objects to this interrogatory for lack of foundation. STN does not supervise or oversee STOPNC.

**INTERROGATORY NO. 16:** Does Saint Thomas Network contend that any other person or entity was responsible for or caused the injuries and deaths that are the subject of this litigation? If so, identify each such person or entity and state the factual basis for a contention that any other person or entity was responsible for or caused the injuries and deaths forming the basis of this litigation.

> **OBJECTION:** NECC, Berry Cadden, Lisa Cadden, Doug Conigliaro, Carla Conigliaro, Gregory Conigliaro, Glenn Chin, Alaunus Pharmaceutical, LLC, Ameridose, LLC, GDC Properties Management, LLC, Medical Sales Management, Inc., and Medical Sales Management SW, Inc. are responsible for Plaintiffs' injuries and/or deaths as outlined in Plaintiffs' Complaints. At this time, STN is unaware of any other person or entity responsible for Plaintiffs' injuries or deaths but reserves the right to supplement this response as discovery proceeds.

**INTERROGATORY NO. 17:** State the full name, address, telephone number, job title and employer of each and every person believed by Saint Thomas Network to have knowledge of facts regarding the claims alleged in this litigation, any defenses thereto, and/or any issues germane to this litigation. Please include any person believed to have knowledge of rebuttal or impeachment evidence, and for each person listed, please identify the subject matter of their knowledge and provide a brief description of their knowledge.

> **OBJECTION:** STN objects to this interrogatory as overly broad and unduly burdensome.
>
> **ANSWER:** Subject to and without waiving the foregoing objections, Plaintiffs are believed to have knowledge of the facts in the Complaints. Any family members and

friends who visited Plaintiffs in the hospital may also have knowledge of the facts in the Complaints.

All persons identified in the medical records of STH and STOPNC are believed to have knowledge of the care and treatment of Plaintiffs. In accordance with FED. R. CIV. P. 33(d), STN refers Plaintiffs to the STH medical records previously produced. In addition to the care and treatment of Plaintiffs, Dr. Robert Latham and Candace Smith have knowledge and information related to the investigation of the source and cause of the illnesses. Dr. John Culclasure, Debra Schamberg and Scott Butler will also have knowledge of this investigation, as well as STOPNC's business relationship with NECC. The Centers for Disease Control ("CDC") and Massachusetts Board of Public Health ("MBPH") have knowledge of the source and cause of illness and investigations associated with the claims. The Tennessee Department of Health ("TDOH"), including Dr. Marion Kainer and Dr. April Pettit, have knowledge of the investigation, source and cause of illness, as well as communications with exposed patients.

NECC employees are believed to have knowledge related to the manufacture of MPA and the circumstances of the contamination. STN does not know who those persons are except that the owners have been identified in media reports.

The Defendants have knowledge of their corporate structure and business relationship, including officers identified above.

**INTERROGATORY NO. 18:** If you or anyone else has made any type of verbal or written statement to anyone or taken any verbal or written statements pertaining to the acquisition of steroids from NECC, please state for each such statement the date it was given, the name, address and place of employment of the person who took such statement, and the method by which the statement was given.

> **OBJECTION:** STN does not interpret this interrogatory as including STN legal counsel; nor does it interpret this interrogatory as seeking information protected by the attorney-client privilege or work-product doctrine. To the extent Plaintiffs use this interrogatory to seek protected information or to impose an unnecessary and unwarranted privilege log burden, STHe objects to those attempts.
>
> **ANSWER:** Subject to and without waiving the foregoing objection, STN is unaware of any described statements.

**INTERROGATORY NO. 19:** When and how did you (or your agents) become aware that Saint Thomas Neurosurgical had received contaminated medication from NECC and how did you respond to that information?

**ANSWER:** On October 18, 2013, the CDC and FDA confirmed the presence of *exserohilum rostratum* in unopened vials of MPA from NECC. That information was provided to STN on or shortly after October 18, 2013. Prior to that date, STOPNC advised STN that it purchased MPA from NECC. STOPNC, with approval of its board of directors, voluntarily closed its premises on or around September 20, 2012. By October 3, 2013, it was suspected that medication from NECC was contaminated.

Dated: December 11, 2013

SAINT THOMAS NETWORK

By its attorneys,
*/s/ Yvonne K. Puig*
Sarah P. Kelly (BBO #664267)
skelly@nutter.com
Dahlia Rin (BBO #674137)
drin@nutter.com
NUTTER McCLENNAN & FISH LLP
Seaport West
155 Seaport Boulevard
Boston, Massachusetts 02210
(617) 439-2000

OF COUNSEL:

Yvonne K. Puig*
Texas State Bar No. 16385400
Marcy Hogan Greer*
Texas State Bar No. 08417650
Eric J. Hoffman*
Texas State Bar No. 24074427

FULBRIGHT & JAWORSKI L.L.P.
98 San Jacinto Blvd. Suite 1100
Austin, Texas 78701
(512) 536-2450
(512) 536-4598 (FAX)

*Appearing *Pro Hac Vice*

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was served via Certified Mail, Return Receipt Requested (*) or electronic mail (**) on the 11th day of December, 2013, to:

J. Gerard Stranch, IV*
Benjamin A. Gastel
BRANSETTER, STRANCH & JENNINGS PLLC
227 Second Avenue North
Nashville, TN  37201
Phone:  (615) 254-8801
Fax:  (615) 255-5419
gerards@branstetterlaw.com

Ryan A. Ciporkin**
Lawson & Weitzen
88 Black Falcon Avenue, Suite 345
Boston, MA 02210
rciporkin@lawson-weitzen.com

Matthew P. Moriarty**
Richard A. Dean**
Thomas W. Coffey**
Tucker Ellis, LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113
matthew.moriarty@tuckerellis.com
richard.dean@tuckerellis.com
thomas.coffey@tuckerellis.com

Robert H. Gaynor**
Sloane & Walsh LLP
Three Center Plaza
Boston, MA 02108
rgaynor@sloanewalsh.com

Melinda L. Thompson**
Todd & Weld
28 State Street, 31st Floor
Boston, MA 02109
mthompson@toddweld.com

C.J. Gideon**
Chris Tardio**
Gideon Cooper & Essary
315 Deadrick St., Suite 1100
Nashville, TN 37238
cj@gideoncooper.com
chris@gideoncooper.com

Frederick H. Fern**
Alan M. Winchester**
Harris Beach PLLC
100 Wall Street, 23rd Floor
New York, NY 10005
hbnecc@harrisbeach.com

Daniel M. Rabinovitz**
Nicki Samson**
Michaels & Ward, LLP
One Beacon Street, 2nd Floor
Boston, MA 02108
dmr@michaelsward.com
ns@michaelsward.com

Joseph P. Thomas**
Ulmer & Berne LLP
600 Vine Street, Suite 2800
Cincinnati, OH 45202
jthomas@ulmer.com

_Marcy Hogan Greer_
Marcy Hogan Greer

53075905.2

## VERIFICATION

STATE OF TENNESSEE )

COUNTY OF DAVIDSON )

    I, Karen Springer, being first duly sworn upon oath, depose and say that I am a Secretary of Saint Thomas Network ("STN") and that I am authorized to make this Affidavit on its behalf; that I have read the foregoing answers to Interrogatories and know the content thereof; that there is no single person employed by or otherwise connected with STN who has personal knowledge of all the facts and information requested herein; that said Answers were prepared with the assistance and advice of counsel and the assistance of various employees and representatives of the corporation, upon which I have relied; that the Answers set forth herein, subject to inadvertently or undiscovered errors, are based on, and therefore necessarily limited by, the records and information still in existence, presently recollected, and thus far discovered in the course of the preparation of these Answers; that the foregoing Answers are thus based upon corporate knowledge and are true and correct to the best of my knowledge and belief; that consequently, I reserve the right to make any changes in the Answers if it appears at any time that omissions or errors have been made therein or that more accurate information is available and that, subject to the limitations set forth herein, the said Answers are true to the best of my knowledge, information and belief.

**SAINT THOMAS NETWORK**

By: *Karen Springer*
Karen Springer
Secretary

Sworn to and subscribed before me on this
The 11th day of December, 2013.

*Lindsay Kate Owen*
NOTARY PUBLIC

My Commission Expires:   9/9/14



- 14 -

53075905.2