**<u>EXHIBIT 1</u>**

**Tort Trust Agreement**

## TORT TRUST AGREEMENT

THIS TORT TRUST AGREEMENT (the "Agreement") is among (i) Paul D. Moore, as Estate Representative of NECC, as trustor, (ii) [_____] as Tort Trustee; and (iii) [_____] as Resident Tort Trustee.

## RECITALS

WHEREAS, on December 21, 2012 (the "Petition Date"), NECC filed a voluntary petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Massachusetts (the "Bankruptcy Court"), thereby commencing Case No. 12-19882, (the "Chapter 11 Case").

WHEREAS, on _____ the Bankruptcy Court entered the *Findings of Fact, Conclusions of Law and Order Confirming the Chapter 11 Plan of New England Compounding Pharmacy, Inc.* [Dkt. No. __], which confirmed the *Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc. Under Chapter 11 of the Bankruptcy Code Dated [_____], 2014* attached thereto as Exhibit __ (the "Plan");[1]

WHEREAS, the Plan provides, among other things, as of the effective date of the Plan (the "Effective Date"), for (a) the creation of the Tort Trust and the creation of the beneficial interests in the Tort Trust for the benefit of Tort Trust Beneficiaries, (b) the transfer to the Tort Trust of the Tort Trust Assets, (c) the administration and liquidation of the Tort Trust Assets and the distribution of the proceeds therefrom to Tort Trust Beneficiaries and holders of Allowed Class E Claims, if any, in accordance with this Tort Trust Agreement, the Plan and the Confirmation Order, and (d) the creation, at the sole discretion of the Estate Representative, of an

---

[1]   Unless the context otherwise requires, all capitalized terms used in this Agreement and not otherwise defined herein shall have the meanings assigned to them in the Plan.

Expense Fund in connection with the administration of the Plan and this Tort Trust, which Expense Fund may be, but is not required to be, created within the Tort Trust;

WHEREAS, pursuant to Treasury Regulation Section 301.7701-4(d), the Tort Trust is being created for the primary purpose of liquidating the Tort Trust Assets in an expeditious but orderly manner for the benefit of Tort Trust Beneficiaries and holders of Allowed Class E Claims, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to and consistent with the liquidating purpose of the Tort Trust and the Plan;

WHEREAS, the Tort Trust is intended to qualify as a "grantor trust" for U.S. federal income tax purposes, pursuant to Sections 671-677 of the IRC, with Tort Trust Beneficiaries and holders of Allowed Class E Claims to be treated as the grantors of the Tort Trust and deemed to be the owners of the Tort Trust Assets (subject to the rights of creditors of the Tort Trust); and

WHEREAS, the Certificate of Trust of the Tort Trust is being duly executed and filed by the Tort Trustee and/or the Resident Tort Trustee, as trustees, to form a statutory trust under the Delaware Statutory Trust Act (12 Del. C. § 3801 et seq.) (the "Trust Act").

NOW, THEREFORE, this Agreement witnesseth and it is hereby declared, in accordance with the Confirmation Order, as follows:

## ARTICLE I.
## DEFINITIONS

1.01 *Incorporation of Definitions*.   Unless the context otherwise requires, all capitalized terms used in this Agreement and not otherwise defined herein shall have the meanings assigned to them in the Plan.

2

## ARTICLE II.
## DECLARATION OF TRUST

2.01   *Creation and Name*.   There is hereby created the Tort Trust, which shall be known as the Tort Trust.

2.02   *Purpose*.

(a)   The Tort Trust shall be established for the sole purpose of implementing the Plan on behalf of, and for the benefit of, Tort Trust Beneficiaries and holders of Allowed Class E Claims, and to serve as a mechanism for liquidating, converting to Cash and distributing the Tort Trust Assets for the benefit of Tort Trust Beneficiaries and holders of Allowed Class E Claims with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purposes of the Tort Trust.  The Tort Trust is organized and established as a trust pursuant to which the Tort Trustee, subject to the terms and conditions contained herein and in the Plan, is to hold the Tort Trust Assets and dispose of the same in accordance with this Tort Trust Agreement and the Plan in accordance with Treasury Regulation Section 301.7701-4(d).   In furtherance of the foregoing purpose, the Tort Trust shall: (i) assume any and all liabilities of the Debtor and the Contributing Parties with respect to the Tort Claims; (ii) as and to the extent provided in the Plan, the Confirmation Order, Article IX of this Agreement and in Claims Resolution Facility Procedures incorporated herein and annexed hereto as Exhibit A, satisfy from the National Fund (as defined herein) all such allowed Tort Claims; (iii) as and to the extent provided in Article IX of this Agreement and in the Provider Fund Claims Resolution Facility Procedures incorporated herein and annexed hereto as Exhibits B-1 through B-3, satisfy from the Provider Funds (as defined herein) all such allowed Tort Claims qualified for payment from any such Provider Fund; and

(iv) as and to the extent provided in Section 9.03 hereof, satisfy from the Tort Trust Allowed Class E Claims.

(b)     To accomplish the foregoing, the Tort Trustee hereby (i) agrees to conserve, protect, realize and monetize the Tort Trust Assets so as to enable the Tort Trustee to satisfy as fully as possible all Tort Claims and Allowed Class E Claims assumed by and channeled into the Tort Trust and allowed in accordance with the terms of the Plan, this Agreement, and the Claims Resolution Facility Procedures and, as applicable, Provider Claims Resolution Facility Procedures; (ii) agrees to collect, invest and reinvest amounts due to the Tort Trust in accordance with the Plan and this Agreement; and (iii) agrees to manage the Tort Trust and report on its status and activities in accordance with Section 7.05 hereof.

2.03    *Transfer of Assets; Tort Trust Beneficiaries.*

(a)     Pursuant to the Plan and the Confirmation Order, and as soon as is reasonably practicable after the Effective Date of the Plan, the Estate Representative, having heretofore been authorized pursuant to the Plan and Confirmation Order to execute such transfer and assignment, will transfer and assign to the Tort Trust, to be held in trust for Tort Trust Beneficiaries and holders of Allowed Class E Claims, the Initial Tort Trust Assets.

(b)     Following the Effective Date of the Plan, from time to time as the Estate Representative receives Additional Settlement Payments, the Estate Representative shall deliver and shall be deemed to have assigned and transferred to the Tort Trust, as soon after receipt as is reasonably practicable, such Additional Settlement Payments.  Additional assets may also be transferred to the Tort Trust in accordance with the Plan, and the Tort Trust shall receive such assets if so transferred (subject to the limitations described in Section 7.03(b)(i) of this Agreement).

(c)     All assets received by the Tort Trust shall be held, administered and distributed for the benefit of Tort Trust Beneficiaries and holders of Allowed Class E Claims under the terms of the Plan, this Agreement, the Claims Resolution Facility Procedures and, if applicable, the Provider Claims Resolution Facility Procedures.   Upon transfer by the Estate Representative to the Tort Trust of the assets set forth in this Section 2.03, the Estate Representative shall have (i) no further right or interest in or to any of the assets transferred to the Tort Trust, except as otherwise provided herein, and (ii) no further liability, responsibility or obligation relating to the Tort Trust and its assets other than the cooperation set forth in Section 2.04 hereof.

2.04   *Further Assurances; Cooperation.*

(a)     The Estate Representative shall take such actions and deliver such certificates and other documents as the Tort Trustee may reasonably request in order to effectuate, perfect, confirm and evidence the transfer and assignment to the Tort Trust of the assets intended to be transferred and assigned pursuant to Section 2.03 hereof and the validity and efficacy of such transfer and assignment; *provided*, *however*, the Estate Representative may decline any and all such requests if, in the Estate Representative's judgment, compliance with such request is unlawful or would expose the Estate Representative and/or the Post-Effective Date Debtor to liability, and provides further, that any expenses by the Estate Representative incurred in connection with the forgoing actions shall be paid by the Tort Trustee.

(b)     The Estate Representative shall transfer to the Tort Trust such claim files and other documents relating to the Tort Claims which are under his custody or control, to the extent permitted by the Bankruptcy Court.   Upon the written request of the Settlement Administrator(s) and/or the Appeals Administrator designated and appointed pursuant to the

Claims Resolution Facility Procedures and the Provider Claims Resolution Facility Procedures to allocate the Tort Trust Assets to Tort Trust Beneficiaries in accordance with this Agreement and the Claims Resolution Facility Procedures and, if applicable, the Provider Claims Resolution Facility Procedures, the Estate Representative shall make the relevant claim files and documents available for any Settlement Administrator's and/or the Appeals Administrator's inspection, copying and use, to the extent permitted by applicable law or by order of Bankruptcy Court.

**ARTICLE III.**
**TORT TRUSTEE**

3.01   *Number and Appointment*.  Except as provided in Article V hereof with respect to the Resident Tort Trustee, there shall be one Tort Trustee of the Tort Trust.  The Official Committee and the Plaintiffs' Steering Committee shall appoint the individual to serve as Tort Trustee on or before February 23, 2015.

3.02   *Qualifications*.   The Tort Trustee must be a natural person of good moral character and independent of the Debtor, the Estate Representative and the Contributing Parties, and any of their affiliates, present or future, who has attained the age of thirty (30) years, who is a resident of the United States, and whose experience and background are appropriate to the responsibilities of a Trustee hereunder; provided that no individual shall be appointed as Tort Trustee if such individual would be treated as, or would cause the Tort Trust to be treated as, a "related person" (within the meaning of Treasury Regulation section 1.468B-1(d)(2)) to the Debtor.

3.03   *Terms of Service*.

(a)   The Tort Trustee shall serve for the duration of the Tort Trust, subject to his or her earlier death, resignation or removal.

6

(b)    The Tort Trustee may resign at any time by written notice to the District Court,[2] specifying the date when such resignation shall take effect.  The Tort Trustee shall attempt, where possible, to give notice of resignation not less than ninety (90) days before such resignation is to take effect.

(c)    The Tort Trustee may be removed from office by the District Court upon his or her own motion or the motion of at least twenty (20) Tort Trust Beneficiaries represented by at least five (5) independent and unaffiliated attorneys and a determination by the District Court that such removal is appropriate upon good cause shown.

3.04    *Appointment of Successor Tort Trustees.*

(a)    In the event of the death, resignation, incapacity to serve as determined by the District Court or removal of a Tort Trustee prior to the expiration of his or her term, a successor Tort Trustee shall be appointed by the District Court on motion of any party in interest. If the District Court no longer retains jurisdiction, or declines to exercise it, a successor Tort Trustee shall be appointed by such other court of competent jurisdiction as is appropriate under the circumstances.

(b)    Upon the acceptance of office by any successor Tort Trustee, all rights, titles, duties, powers and authority of the predecessor Tort Trustee under this Agreement shall be vested in and undertaken by the successor Tort Trustee without any further act being required. No successor Tort Trustee shall be liable personally for any act or omission of his or her predecessor.

3.05    *Liability of Tort Trustee; Quasi-Judicial Immunity*.  The Tort Trustee is entitled to quasi-judicial immunity to the fullest extent allowed by law in connection with his or her

---

[2]    As used herein, "District Court" refers to the District Court as defined in the Plan, provided that the District Court has not declined to exercise jurisdiction over the relevant matter.  If the District Court has so declined, "District Court", as used herein, shall mean "Bankruptcy Court," as defined in the Plan.

implementation of the Confirmation Order, the Plan, this Agreement, the Claims Resolution Facility and the Provider Claims Resolution Facilities.  The Tort Trustee shall not be liable to the Tort Trust, to any creditors, to any Tort Trust Beneficiary or to any holders of Allowed Class E Claims except for such Trustee's own willful misconduct.  The Tort Trustee shall not be liable for any act or omission of any agent or employee of the Tort Trust, including, but not limited to any Settlement Administrator or the Appeals Administrator, unless the Tort Trustee acted with willful misconduct in the selection or retention of such agent or employee.  All actions taken and determinations made by the Tort Trustee, unless otherwise provided in or unless contrary to the provisions of this Agreement, the Plan, the Confirmation Order, the Claims Resolution Facility Procedures and/or the Provider Claims Resolution Facility Procedures, shall be final and binding upon all Persons having any interest in the Tort Trust.

3.06  *Compensation and Expenses*.  The Tort Trustee shall receive reasonable compensation from the National Fund in an amount consistent with that of similar functionaries in similar types of proceedings.  In addition, the Tort Trustee shall be reimbursed from the National Fund for his or her reasonable expenses, including travel expenses, reasonably required and incurred in the performance of his or her duties.

3.07  *Indemnification*.

(a)  The Tort Trustee or former Tort Trustee, the Resident Tort Trustee or former Resident Tort Trustee, the Chapter 11 Trustee, the Estate Representative, the Settlement Administrator(s), the Appeals Administrator, and each present or former member or attorney representative of a member of the Tort Trust Advisory Board, the Official Committee, or the Plaintiffs' Steering Committee (the Tort Trust Advisory Board members, the Official Committee members and the Plaintiffs' Steering Committee members and their respective attorney

representatives shall be collectively referred to as the "<u>Additional Indemnitees</u>", and the Tort Trustee or former Tort Trustee, the Resident Tort Trustee or former Resident Tort Trustee, the Chapter 11 Trustee, the Estate Representative, the Settlement Administrator(s), the Appeals Administrator and the Additional Indemnities shall be collectively referred to as the "<u>Indemnified Person(s)</u>"), who was or is party, or is threatened to be made a party, to any threatened, pending, or completed action, suit or proceeding of any kind, whether civil, administrative or arbitrative, and whether brought by or against the Tort Trust, (i) with respect to the Tort Trustee or Resident Tort Trustee, by reason of such Tort Trustee or Resident Tort Trustee being or having been an Tort Trustee or Resident Tort Trustee of the Tort Trust, or by reason of such Tort Trustee or Resident Tort Trustee serving or having served in any capacity at the request of and on behalf of the Tort Trust, or, (ii) with respect to the Settlement Administrator(s) or the Appeals Administrator, by reason of any act or omission of the Settlement Administrator(s) or the Appeals Administrator, with respect to this Agreement, the Claims Resolution Facility Procedures and the Provider Claims Resolution Facility Procedures, (iii) with respect to the Chapter 11 Trustee, the Estate Representative, or an Additional Indemnitee, by reason of any act or omission of the Chapter 11 Trustee, the Estate Representative or the Additional Indemnitee with respect to the Debtor, the Plan, the Chapter 11 Case, this Agreement, the Claims Resolution Facility Procedures or the Provider Claims Resolution Facility Procedures, shall be and hereby is indemnified by the Tort Trustee against expenses, costs and fees (including attorneys' fees), judgments, awards, costs, amounts paid in settlement, and liabilities of any kind incurred by such Tort Trustee, Settlement Administrator(s), Appeals Administrator or such Additional Indemnitee in connection with or resulting from such action, suit, or proceeding if he or she acted in good faith and, (i) with respect to the Tort

9

Trustee, in a manner the Tort Trustee reasonably believed to be in or not opposed to the best interests of the Tort Trust, (ii) with respect to the Settlement Administrator(s) or the Appeals Administrator, in a manner the Settlement Administrator(s) or the Appeals Administrator, as applicable, reasonably believed to be implementing and conducting his or her duties in accordance with this Agreement, the Claims Resolution Facility Procedures and the Provider Claims Resolution Facility Procedures, (iii) with respect to an Additional Indemnitee, in a manner such Additional Indemnitee reasonably believed to be in or not opposed to the best interests of the Tort Claimants, and (iv) with respect to the Chapter 11 Trustee or the Estate Representative, in a manner reasonably believed to be in furtherance of, or not opposed to, his or her fiduciary duties.

(b)     In the event that the Cash reserves maintained by the Estate Representative pursuant to the Plan are insufficient to satisfy the expenses, costs and fees (including attorneys' fees), judgments, awards, costs, amounts paid in settlement, or liabilities of any kind incurred in connection with his administration of the Post-Effective Date Debtor, the Estate Representative shall be indemnified by the Tort Trust against such expenses, costs, fees, judgments, awards, amounts paid in settlement, and liabilities, but only to the extent of any shortfall between the total Cash reserves of the Estate on hand at the time Estate Representative seeks indemnity pursuant to this paragraph, and the aforementioned expenses, costs and fees, judgments, awards, costs, amounts paid in settlement, or liabilities.

(c)     Reasonable expenses, costs and fees (including attorneys' fees) incurred by or on behalf of any such Indemnified Person in connection with any such action, suit, or proceeding, whether civil, administrative or arbitrative, including, without limitation expenses, costs and fees (including attorneys fees) incurred by the Estate Representative related to the

indemnity set forth in Section 3.07(b) above, may be paid by the Tort Trustee in advance of the final disposition thereof upon receipt of an undertaking by or on behalf of such Indemnified Person to repay such amount unless it shall be determined ultimately that such Indemnified Person is entitled to be indemnified by the Tort Trustee.

(d)     The Tort Trustee shall have the power, generally or in specific cases, to cause the Tort Trust to indemnify the employees and agents of the Tort Trust to the same extent as provided in this Section 3.07 with respect to the Tort Trustee.

(e)     The Tort Trustee may purchase and maintain customary and commercially reasonable amounts and types of insurance on behalf of an individual who is or was a Tort Trustee, Resident Tort Trustee, Settlement Administrator(s), Appeals Administrator employee, or agent of the Tort Trust against liability asserted against or incurred by such individual in that capacity or arising from his or her status as a Tort Trustee, employee, or agent.

3.08   *Tort Trustee's Lien*.  The Tort Trustee shall have a prior lien upon the Tort Trust estate to secure the payment of any amounts payable (i) to him or her or (ii) to an Indemnified Person or Additional Indemnitee, in each case pursuant to Sections 3.06 and 3.07 hereof.  The lien to secure the payment of any amounts payable to the Tort Trustee referred to in the immediately preceding sentence shall be subordinate to the lien to secure the payment of any amounts payment to an Indemnified Person or Additional Indemnitee referred to in the immediately preceding sentence.

3.09   *Reliance by Persons Dealing with the Tort Trust*.  Any Person dealing with the Tort Trust may rely in good faith upon any certificate or other instrument signed by the Tort Trustee, or upon any certificate or other instrument signed by any officer or agent of the Tort Trust whose authority is evidenced by a certificate or other instrument signed by the Tort

11

Trustee, without the necessity of further inquiry by such Person into the authority of such Tort Trustee, officer or agent to act on behalf of the Tort Trust; *provided, however*, that disbursements or expenditures from the Tort Trust made in respect of investments in accordance with Section 7.02 hereof and the investment policies duly adopted by the Tort Trustee shall not require the approval of the District Court; and *provided, further* that the Tort Trustee may adopt by-laws concerning these matters that are more restrictive than the foregoing.

3.10   *Actions by Tort Trustee*.   Except as otherwise provided in this Agreement or as required by applicable law, all determinations by the Tort Trustee shall be in accordance with this Agreement, the Claims Resolution Facility Procedures and Provider Claims Resolution Facility Procedures.

3.11   *Bond*.   The Tort Trustee shall not be required to post any bond or other form of surety unless otherwise ordered by the Bankruptcy Court or the District Court.

3.12   *Duties.*   In all circumstances (except as set forth in this Agreement with respect to indemnification pursuant to Section 3.07 above), the Tort Trustee shall act in the best interests of all Tort Trust Beneficiaries and holders of Allowed Class E Claims and in furtherance of the purpose of the Tort Trust, and shall use commercially reasonable efforts to dispose of the Tort Trust Assets and to make timely distributions and not unduly prolong the duration of the Tort Trust.

## ARTICLE IV.
## THE RESIDENT TORT TRUSTEE

4.01   *Appointment*.   The Resident Tort Trustee shall act solely for the purpose of complying with the requirement of Section 3807(a) of the Trust Act that the Tort Trust have one trustee, which, in the case of a natural person, is a resident of the State of Delaware, or which in all other cases, has its principal place of business in the State of Delaware.

4.02   *Powers.*

(a)   The duties and responsibilities of the Resident Tort Trustee shall be limited solely to (i) accepting legal process served on the Tort Trust in the State of Delaware, and (ii) the execution of any certificates required to be filed with the office of the Secretary of State of the State of Delaware that the Resident Tort Trustee is required to execute under Section 3811 of the Trust Act (including without limitation the Certificate of Trust).   To the fullest extent permitted by law, the Resident Tort Trustee shall have no management responsibilities or owe any fiduciary duties to the Tort Trust, the Tort Trustee, or Tort Trust Beneficiaries.   The Resident Tort Trustee shall file the Certificate of Trust with the Secretary of State of the State of Delaware as provided under the Trust Act.

(b)   By its execution hereof, the Resident Tort Trustee accepts the trusteeship of the Tort Trust on the terms set forth herein.   Except as otherwise expressly required by Section 4.02(a) hereof, the Resident Tort Trustee shall not have any duty or liability with respect to the administration of the Tort Trust, the investment of the Tort Trust Assets or the distribution of the Tort Trust Assets to Tort Trust Beneficiaries and holders of Allowed Class E Claims, and no such duties shall be implied.   The Resident Tort Trustee shall not be liable for the acts or omissions of the Tort Trustee, nor shall the Resident Tort Trustee be liable for supervising or monitoring the performance of the duties and obligations of the Tort Trustee under this Agreement, except as expressly required by Section 4.01(a) hereof.   The Resident Tort Trustee shall not be obligated to give any bond or other security for the performance of any of its duties hereunder.   The Resident Tort Trustee shall not be personally liable under any circumstances, except for its own willful misconduct.   Without limiting the foregoing:

13

(i)      the Resident Tort Trustee is entitled to quasi-judicial immunity to the fullest extent allowed by law in connection with his service as Resident Tort Trustee.  The Resident Tort Trustee shall not be liable to the Tort Trust, to any creditor or to any Tort Trust beneficiary except for such Resident Tort Trustee's own willful misconduct;

(ii)     no provision of this Agreement shall require the Resident Tort Trustee to expend or risk its personal funds or otherwise incur any financial liability in the performance of its rights or powers hereunder;

(iii)     the Resident Tort Trustee shall not be personally liable for the validity or sufficiency of this Agreement or for the due execution hereof by the other parties hereto;

(iv)     the Resident Tort Trustee may request the Tort Trustee to provide a certificate with regard to any fact or matter the manner of ascertainment of which is not specifically prescribed herein, and such certificate shall constitute full protection to the Resident Tort Trustee for any action taken or omitted to be taken by it in good faith in reliance thereon;

(v)      in the exercise or administration of the Tort Trust hereunder, the Resident Tort Trustee (a) may act directly or through agents or attorneys pursuant to agreements entered into with any of them, and (b) may consult with counsel selected by it in good faith and with due care and employed by it, and it shall not be liable for anything done, suffered or omitted in good faith by it in accordance with the advice or opinion of any such counsel;

(vi)     the Resident Tort Trustee acts solely as Resident Tort Trustee hereunder and not in its individual capacity, and all persons having any claim against the Resident Tort Trustee by reason of the transactions contemplated by this Agreement shall look only to the Tort Trust Assets for payment or satisfaction thereof; and

14

(vii)    the Resident Tort Trustee shall not be personally liable for any representation, warranty, covenant, agreement or indebtedness of the Tort Trust.

4.03    *Compensation and Expenses*.  The Resident Tort Trustee shall receive reasonable compensation from the National Fund in an amount consistent with that of similar functionaries in similar types of proceedings.  In addition, the Resident Tort Trustee shall be reimbursed from the National Fund for his or her reasonable expenses, including travel expenses, reasonably required and incurred in the performance of his or her duties.

4.04    *Duration and Replacement*.   The Resident Tort Trustee shall serve for the duration of the Tort Trust or until the earlier of (i) the effective date of the Resident Tort Trustee's resignation, or (ii) the effective date of the removal of the Resident Tort Trustee.  The Resident Tort Trustee may resign at any time by giving thirty (30) days' written notice to the Tort Trustee; provided, however, that such resignation shall not be effective until such time as a successor Resident Tort Trustee has accepted appointment.  The Resident Tort Trustee may be removed at any time by the Tort Trustee; *provided*, *however*, such removal shall not be effective until such time as a successor Resident Tort Trustee has accepted appointment.   Upon the resignation or removal of the Resident Tort Trustee, the Tort Trustee shall appoint a successor Resident Tort Trustee.  Any successor Resident Tort Trustee appointed pursuant to this Section 4.04 shall be eligible to act in such capacity in accordance with this Agreement and, following compliance with this Section 4.04, shall become fully vested with the rights, powers, duties and obligations of its predecessor under this Agreement, with like effect as if originally named as Resident Tort Trustee.  Any such successor Resident Tort Trustee shall notify the predecessor Resident Tort Trustee of its appointment by providing written notice to the predecessor Resident

Tort Trustee and upon receipt of such notice, the predecessor Resident Tort Trustee shall be discharged of its duties herein.

## ARTICLE V.
## SETTLEMENT ADMINISTRATOR(S) AND APPEALS ADMINISTRATOR

5.01   *Quasi-Judicial Immunity*.   The Settlement Administrator(s) and the Appeals Administrator (provided the Appeals Administrator is not a member of the judiciary) are each entitled to quasi-judicial immunity to the fullest extent allowed by law in connection with their implementation of the Confirmation Order, the Plan, this Agreement, the Claims Resolution Facility Procedures, and the Provider Claims Resolution Facility Procedures.

5.02   *Replacement*.   Except as otherwise provided by the Claims Resolution Facility Procedures or the Provider Claims Resolution Facility Procedures, in the event the Settlement Administrator(s) or Appeals Administrator designated and appointed in the Claims Resolution Facility Procedures or the Provider Claims Resolution Facility Procedures, if applicable, resigns or is removed from office or is otherwise unable to perform the functions of a Settlement Administrator or Appeals Administrator, the District Court shall appoint a successor Settlement Administrator or Appeals Administrator.

5.03   *Compensation and Expenses*.   The Settlement Administrator(s) and the Appeals Administrator (provided the Appeals Administrator is not a member of the judiciary) shall receive reasonable compensation from the National Fund in an amount consistent with that of similar functionaries in similar types of proceedings and pursuant to the provisions of the Claims Resolution Facility Procedures.   In addition, the Settlement Administrator(s) and the Appeals Administrator (provided the Appeals Administrator is not a member of the judiciary)  shall be reimbursed from the National Fund for his, her or their reasonable expenses, including travel

expenses, reasonably required and incurred in the performance of his or her duties and pursuant to the provisions of the Claims Resolution Facility Procedures.

5.04 *Authority to Employ Employees*.   The National Settlement Administrator or Appeals Administrator (provided the Appeals Administrator is not a member of the judiciary) may engage a physician consultant, if necessary, and if such engagement is in accordance with the terms of the retention agreement between the Tort Trustee and the National Settlement Administrator or Appeals Administrator, as applicable, and provided that each such employment or engagement shall be made under commercially reasonable terms.

## ARTICLE VI.
## TORT TRUST ADVISORY BOARD

6.01 *Duties*.  The Tort Trust Advisory Board shall serve as an advisor to the National Settlement Administrator and the Appeals Administrator.  The Tort Trust Advisory Board shall be available to provide information, advice or other aid as may be requested by the National Settlement Administrator or Appeals Administrator in carrying out his, her or their duties and obligations under this Agreement and the Claims Resolution Facility Procedures, none of which information, advice, or other aid shall be binding on the National Settlement Administrator or Appeals Administrator in carrying out his, her or their duties and obligations.

6.02 *Compensation of Tort Trust Advisory Board.*  Each member of the Tort Trust Advisory Board may apply for compensation from the Common Benefit Fund.

## ARTICLE VII.
## FINANCIAL MANAGEMENT

7.01 *Accounts; Segregation*.  The Tort Trustee shall establish such funds and accounts with one of the financial institutions identified below for carrying out the purposes of the Tort Trust.  The Tort Trustee shall segregate each Provider Settlement Payment received from the Estate Representative pursuant to Section 2.03 hereof, and in accordance with the applicable

Provider Settlement Agreement, into a separate account (each a "<u>Provider Fund</u>").  The Tort

Trustee shall maintain a single account for the remainder of the Tort Trust Assets (the "<u>National</u>

<u>Fund</u>").  The Tort Trustee shall maintain a separate account for the Expense Fund, if created

within the Tort Trust, and any Contested Claims Reserve or Disputed Ownership Fund (as

described in Section 8.03 hereof), if applicable.  The Tort Trustee shall maintain a separate

account for such cash reserves as he or she determines reasonable and necessary.

      7.02   *Investments*.  Investments of all assets, including monies, held in the Tort Trust,

and specifically in the National Fund and each Provider Fund, shall be administered, subject to

the limitations and provisions set forth in this Section 7.02, in view of the manner in which

individuals of ordinary prudence, discretion and judgment would act in the management of their

own affairs, and with the understanding that it is intended that distributions from the Tort Trust

to Tort Trust Beneficiaries, which will have the effect of liquidating and terminating the Tort

Trust, will commence immediately upon or soon after the Effective Date of the Plan and will be

completed soon thereafter.  The Tort Trustee shall invest and reinvest the principal and income

of the Tort Trust and keep the funds of the Tort Trust invested in interest-bearing accounts at an

approved depository institution to be selected from the United States Trustee's List of

Authorized Depositories for Bankruptcy Cases filed in Region One, dated July 26, 2013.  Each

account shall be treated as a single fund without distinction between principal and income.  For

purposes of this paragraph, "interest-bearing account" may include a money fund whose

objectives are current income consistent with liquidity and low risk, the maintenance of a

portfolio of high quality, short-term money market instruments, and maintenance of a constant

$1.00 net asset value per share, to the extent the Tort Trustee determines that such fund is

consistent with provisions for investment set forth in IRS Revenue Procedure 94-45 or any

successor guidance issued by the IRS.  All investments shall be made so as to at all times provide sufficient liquidity to meet the anticipated cash needs of the Tort Trust as set forth herein.  In investing, reinvesting, exchanging, selling and managing the Tort Trust accounts, the Tort Trustee shall discharge its duties with respect to said accounts solely in the interest of the accomplishment of the purposes and objectives of the Tort Trust.  Notwithstanding the foregoing, the Tort Trustee shall make continuing efforts to make timely distributions and not unduly prolong the duration of the Trust, consistent with the limitations set forth in IRS Revenue Procedure 94-45 or any applicable successor authority.

      7.03   *Trust Powers*.

      (a)    Pursuant to the Confirmation Order, subject to the limitations set forth in this Agreement, and subject to the provisions and limitations of the Plan and Article VI hereof, including the Claims Resolution Facility Procedures and Provider Claims Resolution Facility Procedures, the Tort Trustee shall have the power to take any and all actions as, in the judgment and discretion of the Tort Trustee, are necessary or advisable to effectuate the purposes of the Tort Trust, including, without limitation, each power expressly granted in Section 7.03(b) of this Agreement and any power reasonably incidental thereto.

      (b)    Without limiting the generality of Section 7.03(a) of this Agreement, and subject to the other provisions of this Agreement, the Tort Trustee shall have the power:

      (i)    to receive cash and other additions to the Tort Trust assets from any source, provided such additions are made pursuant to the Plan, Confirmation Order or another order of the Bankruptcy Court, and to hold, administer, and distribute such additions as a part of the Tort Trust assets;

(ii)      to invest and reinvest the funds of the Tort Trust as provided in this Agreement;

(iii)     to rely upon any affidavit, certificate, letter, notice, telegram, or other paper, or upon any telephone conversation or other oral communication, believed by the Tort Trustee to be genuine and sufficient and upon any other evidence believed by the Tort Trustee to be genuine and sufficient, and to be protected and saved harmless in respect of all payments or distributions made hereunder if made in good faith and without actual notice or knowledge of the changed condition or status of any person receiving payments or other distributions upon a condition;

(iv)     to indemnify the Indemnified Persons, the Additional Indemnitees, and employees and agents of the Tort Trust, in accordance with Sections 3.07(a) and 3.08 hereof, to purchase insurance to effect such indemnification of the Estate Administrator, in accordance with such Sections 3.07(b) and 3.08 hereof, and to meet the obligations of the Tort Trust under Article V hereof and the Claims Resolution Facility Procedures and Provider Claims Resolution Facility Procedures;

(v)      to appoint such officers, hire such employees, and engage such legal, financial and other advisors and agents as are deemed necessary by the Tort Trustee for the proper administration of the Tort Trust and the Claims Resolution Facility and Provider Claims Resolution Facilities (subject in all respects to the provisions and limitations of the Claims Resolution Facility Procedures and Provider Claims Resolution Facility Procedures), and to compensate such officers, employees, advisers and agents for their services from the National Fund; *provided, however*, that all costs of, attributable to, arising from or related to any Provider Claims Resolution Facility, including, without limitation, the cost of any Provider Settlement

Administrator(s) employed or utilized under and for said Provider Claims Resolution Facility, shall be paid solely from the Provider Fund pertaining to said Provider Claims Resolution Facility;

(vi)    to enter into such other arrangements with third parties as are deemed by the Tort Trustee to be useful in carrying out the purposes of the Tort Trust (including, without limitation, engaging a financial institution and/or advisor to act as paying agent, depository, custodian or trustee with respect to funds, reserves or accounts created hereby or established pursuant hereto), and to compensate such third parties for their services;

(vii)    to institute any action or proceeding at law or in equity for the collection of the sums due the Tort Trust, or otherwise to advance the interests of the Tort Trust in a manner not inconsistent with the terms of the Plan or Confirmation Order, prosecute any such action or proceeding to judgment or final decree, enforce any such judgment or final decree, and collect in any manner provided by the law the monies adjudged or decreed to be payable; *provided, however*, that, regardless of any deficiency in the Tort Trust or any other reason, the Tort Trust may not institute any action or proceeding at law or in equity against the Debtor or against any other Person deemed to be released pursuant to the terms of Section 10.05 of the Plan, for the collection of any sums, other than as expressly provided for in the Plan, in respect of the Tort Claims, prosecute any such action or proceeding to judgment or final decree, or collect in the manner provided by law the monies adjudged or decreed to be payable;

(viii)    to assist with the administration of and effectuate the Claims Resolution Facility and Provider Claims Resolution Facilities;

(ix)    to report to the District Court and the Bankruptcy Court as described in  7.05 hereof;

(x)      upon request of the Estate Representative, to transfer monies to the Estate Representative for payment of Claims and expenses as provided for in the Plan, provided such transfers are not paid from the Provider Fund or from any other assets of a Qualified Settlement Fund; for the avoidance of doubt, the Tort Trustee shall transfer such monies upon request of the Estate Representative; and

(xi)      to do all other acts and things not inconsistent with the provisions of this Agreement, the Plan, the Confirmation Order, the Claims Resolution Facility Procedures or the Provider Claims Resolution Facility Procedures which the Tort Trustee may deem reasonably necessary or desirable for the proper management of the Tort Trust, in the same manner and to the same extent as an individual might or could do with respect to his own property, subject to the limitations of applicable law governing the conduct of fiduciaries.

7.04   *Accounting and Reporting.*

(a)      Until the Tort Trust is terminated in accordance with this Agreement, as soon as practicable on or about the commencement of each fiscal year, the Tort Trustee shall cause to be prepared budget and cash flow projections covering such fiscal year and such succeeding fiscal years for which the Tort Trustee determines such projections are practicable and appropriate.

(b)      Until the Tort Trust is terminated in accordance with this Agreement, the Tort Trustee shall cause to be prepared at the end of each fiscal year an annual accounting containing financial statements of the Tort Trust as of the end of such fiscal year, including, without limitation, a balance sheet of the Tort Trust, a statement of receipts and disbursements, a statement of changes in net assets, and a supplementary schedule of investments and assets, listing both principal and income, reported on, subject to normal year-end adjustments, as to

22

fairness of presentation in accordance with generally accepted accounting principles consistently applied, by the Tort Trustee or by an accountant or financial officer or agent employed by the Tort Trust.

(c)     Until the Tort Trust is terminated in accordance with this Agreement, the Tort Trustee shall cause to be prepared, within thirty (30) days of the end of each calendar quarter, a quarterly accounting containing (i) a report of all of the Tort Trustee's significant activities related to the Tort Trust and (ii) unaudited financial statements of the Tort Trust as of the end of such quarter, including, without limitation, a balance sheet of the Tort Trust, a statement of receipts and disbursements, including a statement of the compensation paid and expenses reimbursed to the Tort Trustee for that quarter, a statement of changes in net assets, and a supplementary schedule of investments and assets, listing both principal and income, reported on, subject to normal year-end adjustments, as to fairness of presentation in accordance with generally accepted accounting principles consistently applied, by the Tort Trustee or by an accountant or financial officer or agent employed by the Tort Trust.

(d)     Upon the termination of the Tort Trust in accordance with this Agreement, the Tort Trustee shall cause to be prepared a final accounting consistent with terms of Section 7.04(b) hereof.

(e)     The Tort Trustee shall deliver any and all reports he or she prepares, as and when prepared, pursuant to this Section 7.04 to the Post-Confirmation Officer.

(f)     Notwithstanding the foregoing or anything contained herein to the contrary, the Tort Trustee shall provide copies of all documents prepared pursuant to this Section 7.04, but otherwise, in performing its responsibilities and duties pursuant to this Section 7.04, the

23

Tort Trustee shall observe such confidentiality obligations as may be imposed by the Health Insurance Portability and Accountability Act of 1996 or other applicable law.

(g)     The Tort Trustee shall cause the annual and quarterly accountings, as required by this Section 7.04, to be filed with the Bankruptcy Court and the District Court.  The annual accountings, if any, shall be filed as soon as available, but in no event later than 90 days following the end of each fiscal year.  The quarterly accountings, if any, shall be filed as soon as available, but in no event later than forty-five (45) days following the end of the quarter of the fiscal year to which such accounting relates.  The final accounting shall be filed as soon as available, but in no event later than forty-five (45) days after the date on which the Tort Trust is terminated as provided herein.

(h)     Simultaneously with the filing of each accounting, the Tort Trustee shall cause to be prepared and filed with the Bankruptcy Court and the District Court a report containing a summary of the Tort Claims for which payment or distribution has been made and the total amount paid with respect the Tort Claims from the consummation date to the end of the period covered by the accounting.

(i)     Notwithstanding the foregoing or anything contained herein to the contrary, in performing its responsibilities and duties pursuant to this Section 7.04, the Tort Trustee shall observe such confidentiality obligations as may be imposed by the Health Insurance Portability and Accountability Act of 1996 or other applicable law.

### ARTICLE VIII.
### TAX MATTERS

8.01   *Income Tax Status*.   For United States federal income tax purposes (and for purposes of all state, local and other jurisdictions to the extent applicable), this Tort Trust shall be treated as a liquidating trust pursuant to Treasury Regulation Section 301.7701-4(d) and as a

grantor trust pursuant to IRC Sections 671-677.  The Tort Trust shall at all times be administered so as to constitute a domestic trust for United States federal income tax purposes.  For all United States federal income tax purposes, all parties (including the Post-Confirmation Officer, the Estate Representative, the Tort Trustee, the Resident Tort Trustee, the Settlement Administrator(s), the Appeals Administrator and Tort Trust Beneficiaries and holders of Allowed Class E Claims) shall treat the transfer of the Tort Assets to the Tort Trust as (i) a transfer of the Tort Trust Assets (subject to any obligations related to those assets) directly to Tort Trust Beneficiaries, followed by (ii) the transfer by such Tort Trust Beneficiaries of such Tort Trust Assets (other than the Tort Trust Assets allocable to a Contested Claims Reserve or a Disputed Ownership Fund as described in Section 8.03 hereof) to the Tort Trust in exchange for beneficial interests in the Tort Trust. Accordingly, with respect to such amounts, Tort Trust Beneficiaries shall be treated for federal income tax purposes (and, to the extent permitted, for state and local income tax purposes) as the grantors and owners of their respective shares of the Tort Trust Assets (other than the Tort Trust Assets allocable to a Contested Claims Reserve or a Disputed Ownership Fund as described in Section 8.03 hereof).

8.02    *Tax Returns*.  Except with respect to the Expense Fund, Contested Claims Reserve and the Qualified Settlement Fund, in accordance with IRC Section 6012 and Treasury Regulation Section 1.671-4(a), the Tort Trustee shall file with the IRS annual tax returns on Form 1041 as a grantor trust.  In addition, the Tort Trustee shall file in a timely manner such other tax returns, including any state and local tax returns, as are required by applicable law and pay any taxes shown as due thereon.  The Tort Trustee shall send in a timely manner as required by applicable law to each Tort Trust Beneficiary a separate statement setting forth such Tort Trust Beneficiary's or share of items of income, gain, loss, deduction or credit and will instruct

25

each such Tort Trust Beneficiary to report such items on his/her applicable income tax return. The Tort Trustee shall allocate the taxable income, gain, loss, deduction or credit of the Tort Trust with respect to each Tort Trust Beneficiary as follows: (a) allocations of Tort Trust taxable income shall be determined by reference to the manner in which an amount of Cash equal to such taxable income would be distributed (without regard to any restrictions on distributions described herein) if, immediately prior to such deemed distribution, the Tort Trust had distributed all of its other assets (valued for this purpose at their tax book value) to the holders of the Tort Trust interests, taking into account all prior and concurrent distributions from the Tort Trust; and (b) taxable loss of the Tort Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining Tort Trust Assets.  The tax book value of the Tort Trust Assets for this purpose shall equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the Internal Revenue Code, the Treasury Regulations and other applicable administrative and judicial authorities and pronouncements.

     8.03   *Reporting Related to Contested Claims Reserve*.   Notwithstanding any other provision of this Agreement to the contrary, subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary, the Tort Trustee may treat any Tort Trust Asset allocable to, or retained on account of, a "Contested Claims Reserve" as held by one or more discrete entities for federal, and state and local, income tax purposes, subject to an allocable share of all expenses and obligations of the Tort Trust, on account of such Contested Claims.  The Tort Trustee may, in the his sole discretion, file a tax election to treat any Contested Claims Reserve as a Disputed Ownership Fund within the meaning of Treasury Regulation Section 1.468B-9 for United States federal income tax purposes rather than to tax

such reserve as a part of the Tort Trust.  If such an election is made, the Tort Trust shall comply with all United States federal, and state and local, tax reporting and tax compliance requirements as may be applicable to the Disputed Ownership Fund, including but not limited to, the filing of a separate United States federal income tax return for the Disputed Ownership Fund and the payment of United States federal and/or state or local income tax due.   All Tort Trust Beneficiaries, all holders of Allowed Class E Claims and all holders of Contested Claims, shall be bound by such income tax treatment.

8.04   *Reporting Related to Qualified Settlement Fund*.  The Tort Trustee shall comply with all United States federal, and state and local, tax reporting and tax compliance requirements as may be applicable to the Tax Code section 468B Qualified Settlement Fund, including but not limited to, the filing of a separate United States federal income tax return for the DOF and the payment of United States federal and/or state or local income tax due.   All Tort Trust Beneficiaries, all holders of Allowed Class E Claims and all holders of Contested Claims shall be bound by such income tax treatment.

8.05   *Reporting Related to the Expense Fund (If Any)*.  The Tort Trustee shall comply with all United States federal, and state and local, tax reporting and tax compliance requirements as may be applicable to the Expense Fund, including but not limited to, the filing of a separate United States federal income tax return for the Expense Fund, and the payment of United States federal and/or state or local income tax due.  All Tort Trust Beneficiaries, all holders of Allowed Class E Claims and all holders of Contested Claims shall be bound by such income tax treatment.

8.06   *Withholding of Taxes and Reporting Related to Tort Trust Operations*.  The Tort Trustee shall comply with all withholding and reporting requirements imposed by any federal,

state, local or foreign taxing authority, with respect to the Tort Trust, and all distributions made by the Tort Trustee shall be subject to any such withholding and reporting requirements. The Tort Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with any such withholding, payment, and reporting requirements. All amounts properly withheld from distributions to a Tort Trust Beneficiary or a holder of an Allowed Class E Claim by the Tort Trustee as required by applicable law and paid over to the applicable taxing authority for the account of such Tort Trust Beneficiary shall be treated as part of the distributions to such Tort Trust Beneficiary or holder of a Allowed Class E Claim. To the extent that the operation of the Tort Trust or the liquidation of the Tort Trust Assets creates a tax liability imposed on the Tort Trust, including the Contested Claims Reserve, the Tort Trustee shall timely pay such tax liability and any such payment shall be considered a cost and expense of the operation of the Tort Trust payable without Bankruptcy Court order. Any federal, state or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted by the Tort Trustee from distributions hereunder. All Tort Trust Beneficiaries and holders of Allowed Class E Claims shall be required to provide any information necessary to effect the withholding of such taxes. **No distribution shall be made to a Tort Trust Beneficiary or a holder of an Allowed Class E Claim, and such Tort Trust Beneficiary's or holder's Claim shall be disallowed without further order of the Bankruptcy Court, if such Tort Trust Beneficiary or holder of an Allowed Class E Claim has not delivered a signed, completed form W-9 to the Settlement Administrator or the Tort Trustee within ninety (90) days of the Settlement Administrator's or Tort Trustee's written request for same.**

      8.07 *Valuation*. As soon as possible after the Effective Date, the Tort Trustee shall make a good faith valuation of the Tort Trust Assets. Such valuation shall be made available

from time to time, to the extent relevant, and used consistently by all parties (including the Post-Confirmation Officer, the Estate Representative, the Tort Trustee, the Resident Tort Trustee, the Settlement Administrator(s), theAppeals Administrator, Tort Trust Beneficiaries and holders of Allowed Class E Claims) for all federal income tax purposes.  The Tort Trustee also shall file (or cause to be filed) any other statements, returns or disclosures relating to the Tort Trust that are required by any governmental unit.

8.08   *Expedited Determination of Taxes*.  The Tort Trustee may request an expedited determination of taxes of the Tort Trust, including any Contested Claims Reserve and Qualified Settlement Fund, if applicable, under Section 505 of the Bankruptcy Code for all returns filed for, or on behalf of, the Tort Trust for all taxable periods through the termination of the Tort Trust.

8.09   *Qualified Settlement Fund Matters*.  To the maximum extent permitted by law, all Tort Trust Assets transferred to the Tort Trust from a qualified settlement fund, including without limitation any and all qualified settlement funds established under the Escrow and Control Agreement, shall be treated for all purposes as amounts distributed to Tort Trust Beneficiaries for which the fund was established in accordance with Treasury Regulation Section 1.468B-4, and shall be reported as excludable from gross income to the extent permitted under Section 104(a)(2) of the Tax Code.  In no event shall amounts transferred to the Tort Trust under the Escrow and Control Agreement be treated as deemed distributions to the transferors to any qualified settlement fund established under the Escrow and Control Agreement.

29

## ARTICLE IX.
## DISTRIBUTIONS; CLAIMS RESOLUTION FACILITY
## AND PROVIDER CLAIMS RESOLUTION FACILITIES

9.01 *Required Distributions*.

(a) Prior to any distribution to Tort Trust Beneficiaries, and as soon as practicable after the Effective Date of the Plan, the Tort Trustee shall segregate and reserve from the National Fund sufficient monies to make the following payments:

(i) Except as provided in Section 9.01(b)(iii) hereof, the Tort Trustee, in consultation with the Estate Representative, shall retain sufficient National Fund funds to meet the reasonably anticipated indemnification expenses of the Tort Trust as provided in Section 3.07 hereof;

(ii) The Tort Trustee shall retain sufficient National Fund funds to pay any and all fees of the U.S. Trustee, including fees payable pursuant to 28 U.S.C. § 1930;

(iii) The Tort Trustee shall retain sufficient National Fund funds to pay all the fees and expenses of the Tort Trust, including the Tort Trustee's fees and expenses and the Resident Tort Trustee's fees and expenses; *provided, however* that all fees and expenses incurred in connection with any distribution or allocation to Tort Beneficiaries and holders of Allowed Class E Claims from any Provider Fund shall be paid for solely out of and by such Provider Fund;

(iv) The Tort Trustee shall retain sufficient National Fund funds as are reasonably calculated to meet the ongoing expenses of the Tort Trust, including any anticipated tax liabilities of the Tort Trust, until termination pursuant to Section 10.04 hereof;

(v) If the Expense Fund is created within the Tort Trust, the Tort Trustee shall retain sufficient National Fund funds as are reasonably calculated, in consultation

with the Expense Fund Administrator, to meet the ongoing expenses of the Expense Fund, including any anticipated tax liabilities of the Expense Fund;

(vi)    The Tort Trustee shall retain sufficient National Fund funds to pay the National Settlement Administrator and the Appeals Administrator his, her, or their fees and expenses;

(vii)    The Tort Trustee shall retain sufficient National Fund funds to pay any assessment(s) for the Common Benefit Fund applicable to the National Fund in accordance with any applicable Order of the District Court; and

(viii)    The Tort Trustee, in consultation with the National Settlement Administrator, shall retain sufficient National Fund funds to pay all fees and expenses actually incurred or reasonably anticipated to be incurred in implementing the Claims Resolution Facility Procedures.

The net monies in the National Fund after the amounts required to be paid or retained therefrom in accordance with Section 9.01(a)(i)-(viii) above have been so paid or retained shall be referred to as the "National Fund Net Trust Proceeds".

(b)    Prior to any distribution to Tort Trust Beneficiaries, and as soon as practicable after the Effective Date of the Plan, the Tort Trustee shall segregate and reserve from each of the Provider Funds sufficient monies to make the following payments:

(i)    The Tort Trustee shall retain sufficient Provider Fund funds to pay the applicable Provider Settlement Administrator(s) his, her, or their fees and expenses;

(ii)    The Tort Trustee shall retain sufficient Provider Fund funds to pay any assessment(s) for the Common Benefit Fund applicable to each Provider Fund in accordance with any applicable Order of the District Court; and

(iii)     The Tort Trustee, in consultation with as directed by the Estate Representative, shall retain sufficient Tort Trust funds to meet the reasonably anticipated indemnification expenses of any Provider Settlement Administrator(s) as provided in Section 3.07 hereof;

(iv)     The Tort Trustee, in consultation with the applicable Provider Settlement Administrator(s), shall retain sufficient Provider Fund funds to meet all fees and expenses actually incurred or reasonably anticipated to be incurred in implementing the applicable Provider Claims Resolution Facility (or Facilities).

The net monies in any Provider Fund after the amounts required to be paid or retained therefrom in accordance with Section 9.01(b)(i)-(iv) above have been so paid or retained shall be referred to as the "Provider Fund Net Trust Proceeds".

(c)     As soon as practicable after the Effective Date of the Plan, the Tort Trustee shall (i) distribute to Tort Trust Beneficiaries and holders of Allowed Class E Claims such amounts from the National Fund Net Trust Proceeds as may be allowed and determined by the National Settlement Administrator(s) and/or Appeals Administrator to be paid to any Tort Trust Beneficiary or holder of an Allowed Class E Claim in accordance with Section 9.02 of this Agreement and the Claims Resolution Facility Procedures, and (ii) distribute to Tort Trust Beneficiaries or holder of an Allowed Class E Claim qualified for payment from any Provider Fund in accordance with the Provider Claims Resolution Facility Procedures applicable to that Provider Fund such amounts from the applicable Provider Fund Net Trust Proceeds as may be allowed and determined by the applicable Provider Settlement Administrator(s) to be paid to any said qualified Tort Trust Beneficiary and holders of Allowed Class E Claims in accordance with

Section 9.02 of this Agreement and the applicable Provider Claims Resolution Facility Procedures.

(d)     The Tort Trustee shall make all distributions of income at least annually; provided however, the Trustee may retain income to maintain the value of the Tort Trust Assets or to pay claims and liabilities, including contingent liabilities and contested Claims, of the Tort Trust.

9.02   *Payment of the Tort Claims; Distribution to Minors.*

(a)     Payments shall be made to a Tort Trust Beneficiary from the National Fund Net Trust Proceeds upon written notice to the Tort Trustee from the National Settlement Administrator of the amount of any Initial Payment or Final Payment (as defined in the Claims Resolution Facility Procedures) to which that Tort Trust Beneficiary is allowed and entitled, in the amount of such Initial Payment or Final Payment, in accordance with the Claims Resolution Facility Procedures.

(b)     Payments to any Tort Trust Beneficiary qualified to receive distributions from one or more of the Provider Funds shall be made from the Provider Fund Net Proceeds of the applicable Provider Fund upon written notice to the Tort Trustee from the Provider Settlement Administrator for the applicable Provider Claims Resolution Facility of the amount of the Payment (as defined in said Provider Claims Resolution Facility), in the amount of said Payment to which that Tort Trust Beneficiary is allowed and entitled, in accordance with the applicable Provider Claims Resolution Facility Procedures.

(c)     Distributions to any Tort Trust Beneficiary who has indicated on his or her National Compensation Claim Form that he or she represented by an attorney shall be made

33

jointly to the Tort Trust Beneficiary and the attorney (or law firm).  If a Tort Trust Beneficiary is not represented by an attorney, distributions shall be made payable to the Tort Trust Beneficiary.

(d)      Payment on account of a Claim of a Tort Trust Beneficiary shall also constitute payment on account of the Claims, if any, of that Tort Trust Beneficiary's estate and family members.

(e)      If the Tort Trust Beneficiary is a minor, the Tort Trustee shall withhold and reserve payment of the allocated distribution to such minor Tort Trust Beneficiary until the Tort Trustee receives notice that the District Court has approved said distribution to said minor Tort Trust Beneficiary in accordance with the terms and procedures set forth in Section 5.13 of the Plan, and the Tort Trustee shall make payment of the distribution to the minor Tort Trust Beneficiary in the manner ordered by the District Court pursuant to Section 5.13 of the Plan.

(f)      In the event that the minor Tort Trust Beneficiary's parent, guardian, guardian ad litem, adult spouse, next friend, or other representative of the minor Tort Trust Beneficiary does not so move for approval of the allocated distribution within ninety (90) days of the Confirmation Order, the Tort Trustee shall be invested with authority to move before the District Court for approval of the allocated distribution to such minor Tort Trust Beneficiary in accordance with the terms and procedures set forth in Section 5.13 of the Plan.

(g)      The Tort Trustee shall issue a Form 1099 to each unrepresented Tort Trust Beneficiary and holders of Allowed Class E Claims that receives a distribution pursuant to this Agreement, the Claims Resolution Facility, and/or a Provider Claims Resolution Facility in the amount of such distribution.  If such Tort Trust Beneficiary has indicated on his or her Compensation Claim Form (as defined in the Claims Resolution Facility) that he or she is

represented by an attorney, the Tort Trustee shall issue a Form 1099 to such attorney in the amount of such distribution.

9.03   *Satisfaction of Class E Claims*.   If and only if the Tort Trustee has made distributions to Tort Trust Beneficiaries sufficient to satisfy in full the Claims of each and every Tort Trust Beneficiary (as determined by the Tort Trustee, subject to the District Court's review of such determination), the Tort Trustee shall distribute to the holders of Allowed Class E Claims their Pro Rata Share of the remaining Cash, if any, of the Tort Trust.

9.04   *Delivery of Distributions; Undeliverable Distributions; Uncashed Checks*.

(a)   All distributions to any Tort Trust Beneficiary that has indicated on his or her National Compensation Claim Form that he or she is represented by an attorney, shall be made at the address of the attorney indicated on the National Compensation Claim Form.   All distributions to any Tort Trust Beneficiary that has not indicated on his or her National Compensation Claim Form that he or she is represented by an attorney shall be made at the address of the Tort Trust Beneficiary indicated on the National Compensation Claim Form.   All distributions to any holder of an Allowed Class E Claim shall be made at the address indicated on such holder's proof of claim.

(b)   In the event that any distribution to any Tort Trust Beneficiary or holder of an Allowed Class E Claim is returned as undeliverable, no further distributions to such Tort Trust Beneficiary or holder of an Allowed Class E Claim shall be made unless and until the Tort Trustee is notified of such Tort Trust Beneficiary's, his or her attorney's, or holder of an Allowed Class E Claim's, as applicable, then-current address, at which time all missed distributions shall be made to such Tort Trust Beneficiary, his or her attorney, or such holder of an Allowed Class E Claim, as applicable, without interest.   All demands for undeliverable

35

distributions shall be made on or before one hundred and eighty (180) days after the date such undeliverable distribution was initially made.  Thereafter, the amount represented by such undeliverable distribution shall irrevocably revert to the Tort Trust, and any Claim in respect of such undeliverable distribution shall be discharged and forever barred from assertion against the Tort Trust, the Debtor and its property.

(c)     In the event that any distribution to any Tort Trust Beneficiary or holder of an Allowed Class E Claim remains uncashed for one hundred and eighty (180) days, the amount represented by such undeliverable distribution shall irrevocably revert to the Tort Trust, and any Claim in respect of such uncashed distribution shall be discharged and forever barred from assertion against the Tort Trust, the Debtor and its property.

9.05   *De Minimus Distributions*.  The Tort Trustee shall not be required to, but may in his sole and absolute discretion, make distributions to any Tort Trust Beneficiary or holder of an Allowed Class E Claim of Cash in an amount less than twenty-five ($25) dollars.  When distributions do not reach the $25 payment threshold, such payment that would have been made will be reserved for the benefit of such Tort Trust Beneficiary or holder of an Allowed Class E Claim until subsequent distribution(s), if any, exceed the threshold on a cumulative basis.

## ARTICLE X.
## GENERAL PROVISIONS

10.01 *Irrevocability*.   The Tort Trust is irrevocable.   Neither the Debtor nor the Contributing Parties, nor any affiliate thereof, may hold any beneficial interest in the income or corpus of the Tort Trust.

10.02 *Plan and Confirmation Order Control*.   To the extent of any inconsistency between this Agreement and the Plan, the Plan shall control.  To the extent of any inconsistency between this Agreement and the Confirmation Order, the Confirmation Order shall control.

10.03 *Recordation*.  This Agreement shall be recorded in such places as the Tort Trustee shall deem necessary or advisable.

10.04 *Termination*.   The Tort Trust shall terminate automatically upon the date on which the Tort Claims have been finally allowed, disposed of and paid out, the payments identified in Section 9.01(a) and 9.01(b) hereof have been made and the Tort Trustee has certified that, in his/her judgment, the purposes of the Tort Trust have been fulfilled, but in no event shall the Tort Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion made by a party in interest within the six (6) month period prior to such fifth (5th) anniversary (and, in the event of further extension, at least six (6) months prior to the end of the preceding extension), determines that a fixed period extension (not to exceed three (3) years, together with any prior extensions, without a favorable letter ruling from the IRS that any further extension would not adversely affect the status of the Tort Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery on and liquidation of the Tort Trust Assets.

If at any time the Tort Trustee determines, in reliance upon such professionals as the Tort Trustee may retain, that the expense of administering the Tort Trust so as to make a final distribution to Tort Trust Beneficiaries or holders of Allowed Class E Claims is likely to exceed the value of the assets remaining in the Tort Trust, the Tort Trustee may (i) reserve any amount necessary to dissolve the Tort Trust, (ii) donate any balance to a charitable organization (A) described in section 501(c)(3) of the Tax Code, (B) exempt from United States federal income tax under section 501(a) of the Tax Code, (C) not a "private foundation", as defined in section 509(a) of the Tax Code, and (D) that is unrelated to the Debtor, the Tort Trust, and any insider of the Tort Trustee, and (iii) dissolve the Tort Trust.

10.05 *Severability*.   Should any provision of this Agreement be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of this Agreement.

10.06 *Headings*.   The headings used in this Agreement are inserted for convenience only and shall not affect the construction of any provisions of this Agreement.

10.07 *Amendment*.   When necessary to carry out the purposes of the Tort Trust, this Trust Agreement may be amended by an instrument signed by the Tort Trustee and Post-Confirmation Officer (if any) then in office; *provided, however*, that any such amendment must be consistent with the Plan; and *provided, further*, that any such amendment that affects the rights of Tort Trust Beneficiaries in a material way shall become effective only with the approval of the Bankruptcy Court, and after such notice and hearing as the Bankruptcy Court may direct.

10.08 *Governing Law*.   The laws of the State of Delaware shall govern the interpretation and validity of the provisions of this Agreement and all questions relating to management, administration and investment of the Tort Trust and the Tort Trust Assets.

10.09 *Trust Location*.   The Tort Trust shall maintain its principal offices in ?_____.

10.10 *Notice to Tort Trustee*.   All notices, requests, and demands to or upon the Tort Trustee to be effective shall be in writing (including by facsimile transmission or electronic mail) and unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission or electronic mail, when received and telephonically confirmed, addressed to the Tort Trustee at the following address:

[INSERT TORT TRUSTEE ADDRESS]

10.11 *Retention of Jurisdiction*.  Except as to matters that are reserved to District Court as provided herein and to the extent the reference to the Bankruptcy Court has properly been withdrawn, the Bankruptcy Court shall retain exclusive jurisdiction over any action or proceeding arising out of or relating to this Agreement or the Tort Trust *other* than issues pertaining to the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the Estate for purposes of distribution, and all claims in respect of such action or proceeding may be heard and determined in such Court.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed as an instrument under seal as of _____, 2015.

TRUSTOR

_____

[                              ], in [his/her] capacity as Estate Representative


TORT TRUSTEE

_____

[Name of Tort Trustee]


RESIDENT TORT TRUSTEE

_____

[Name of Resident Tort Trustee]