## EXHIBIT 2

**Ameridose Settlement Agreement**

## AMERIDOSE LLC INSURANCE SETTLEMENT, RELEASE AND INJUNCTION AGREEMENT

This Insurance Settlement, Release and Injunction Agreement (the "Agreement") is made and entered by, between and among (a) Paul D. Moore, in his capacity as chapter 11 trustee and not individually (together with any successors thereto, including any Estate Representative, as hereinafter defined, the "Trustee") for the estate of New England Compounding Pharmacy, Inc. d/b/a New England Compounding Center (the "Debtor" or "NECC") appointed in the chapter 11 case of NECC (the "Chapter 11 Case"), Case No. 12-19882, pending in the United States Bankruptcy Court for the District of Massachusetts (the "Bankruptcy Court"); (b) Pharmacists Mutual Insurance Company ("PMIC"); and (c) Ameridose LLC ("Ameridose").

Each of the Trustee, PMIC and Ameridose is defined as a "Party" and collectively as the "Parties."

## RECITALS

WHEREAS, PMIC issued to Ameridose (i) a Businessowners Special Policy, policy number BOP 0083404 05, with a policy period of March 1, 2011 to March 1, 2012; (ii) a Businessowners Special Policy, policy number BOP 0083404 06, with a policy period of March 1, 2012 to March 1, 2013; (iii) a Commercial Excess/Umbrella Liability Policy, policy number UCL 0083404 04, with a policy period of March 1, 2011 to March 1, 2012; and (iv) a Commercial Excess/Umbrella Liability Policy, policy number UCL 0083404 05, with a policy period of March 1, 2012 to March 1, 2013 (collectively, the "Policies");

WHEREAS, the owners of the membership interests of Ameridose also owned or controlled the stock of NECC;

WHEREAS, on December 21, 2012 (the "Petition Date"), the Debtor filed a voluntary petition in the Bankruptcy Court for relief under chapter 11 of the Bankruptcy Code;

WHEREAS, prior to the Petition Date, NECC allegedly compounded and distributed injectable methylpredinisolone acetate ("MPA") and other drugs (collectively, the "Drugs");

WHEREAS, in September 2012, certain of the Drugs were alleged to have been contaminated and hundreds of patients who were injected with the Drugs allegedly developed injuries or died, such injuries or deaths allegedly giving rise to claims and causes of action against, *inter alia*, NECC and individuals affiliated with NECC or otherwise involved with the Drugs (the "Individuals");

WHEREAS, lawsuits asserting Drug Claims (as defined in Article I herein) were filed against, among others, NECC and certain Individuals in various state and federal courts by certain of said patients alleging, *inter alia*, the negligent design, manufacture, marketing and sale of the Drugs;

WHEREAS, although Ameridose has not had any involvement with the Drugs, or participated in the compounding or distribution of the Drugs, similar lawsuits asserting Drug

Claims were filed against Ameridose under various theories, including claims based on veil piercing and alter ego;

WHEREAS, on January 18, 2013, the Office of the United States Trustee (the "UST") appointed an official committee of unsecured creditors in the Chapter 11 Case (the "Committee");

WHEREAS, on January 24, 2013, the Bankruptcy Court ordered the appointment of a Chapter 11 trustee in the Bankruptcy Case and on January 25, 2015 the UST appointed, and the Bankruptcy Court approved the appointment of, Paul D. Moore to serve as chapter 11 trustee;

WHEREAS, on February 12, 2013, the Judicial Panel on Multidistrict Litigation entered an order transferring certain actions against, among others, NECC and/or the Individuals to the United States District Court for the District of Massachusetts (the "MDL Court") for consolidated pretrial proceedings, which actions are pending under the caption *In re New England Compounding Pharmacy Cases Litigation*, MDL No. 2419, Case No. 13-cv-02419 (D. Mass.) (the "MDL Proceeding");

WHEREAS, on April 9, 2013, the MDL Court entered an order establishing a seven-attorney Plaintiffs' Steering Committee (the "PSC") to organize, simplify, and streamline the handling of the MDL Proceeding on behalf of all plaintiffs to actions therein;

WHEREAS on May 31, 2013, the MDL Court entered an order transferring to the MDL Court three categories of cases based on bodily injuries resulting from the administration of the Drugs: (1) all cases pending in other federal courts that had not yet been transferred to the MDL Court; (2) all cases pending in state courts where removal was in process; and (3) all cases pending in state courts that named NECC or its affiliated entities and individuals, as defendants;

WHEREAS, by Case Management Order dated June 28, 2013, the MDL Court temporarily stayed all discovery (the "MDL Stay") with respect to the cases transferred to the MDL Court;

WHEREAS, the Trustee, NECC, PMIC, Maxum Indemnity Company ("Maxum"), and certain of the Individuals are parties to the Plan Support and Settlement Agreement dated May 2, 2014 (the "Settlement Agreement"), pursuant to which, among other things, and subject to certain conditions, (a) PMIC, Maxum and certain of the Individuals agreed to make certain payments to the Trustee, for the benefit of the Debtor's estate; and (b) the Plan Releases and Plan Injunctions will be implemented;

WHEREAS, *inter alia*, Ameridose and certain of the Individuals assert, and PMIC disputes, the existence of coverage under the Policies for Ameridose and certain of the Individuals for the Drug Claims, which disputes include, but are not limited to, the existence of any duty to defend Ameridose and any individuals that may claim coverage as insureds under the Policies, as well as the scope and amount of available coverage, should coverage be determined to exist (the "Dispute");

2

WHEREAS, PMIC agreed to provide, subject to a full and complete reservation of rights, a defense to Ameridose; and

WHEREAS, the Parties wish to settle their differences and resolve (a) the Dispute and (b) any and all claims, causes of action, demands, disputes, obligations and other matters (i) between them, and (ii) concerning or relating to the Drug Claims;

NOW, THEREFORE, based on these premises, and in consideration of the mutual promises contained herein and other good and valuable consideration, the adequacy and sufficiency of which the Parties hereby acknowledge, the Parties agree as follows:

I. **Definitions.**

a.      "Agreement" shall have the meaning set forth above in the preamble.

b.      "Bankruptcy Code" means Title 11 of the United States Code, 11 U.S. C. §§ 101 et seq., as it may be amended.

c.      "Bankruptcy Court" means the United States Bankruptcy Court for the District of Massachusetts, Eastern Division.

d.      "Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court.

e.      "Claim" means any direct, indirect, past, present or future claim, demand, action, cause of action, suit or liability of any kind or nature whatsoever (including claims for equitable or contractual indemnification or contribution), whether at law or in equity, pursuant to a statute, rule or regulation, known or unknown, asserted or unasserted, anticipated or unanticipated, accrued or unaccrued, fixed or contingent, which has been asserted, or that may in the future be asserted, by or on behalf of any Person, whether seeking damages (including compensatory, punitive or exemplary damages) or equitable, mandatory, injunctive or any other type of relief, including cross-claims, counter-claims, third-party claims, suits, lawsuits, administrative proceedings, notices of liability or potential liability (including Potentially Responsible Party or "PRP" notices), arbitrations, actions, rights, requests, demands for payment, causes of action, orders, or judgments, including without limitation, any "claim" as that term is defined in the Bankruptcy Code, 11 U. S. C. § 101(5).

f.      "Claimants" means any Person asserting a Drug Claim.

g.      "Confirmation Order" means the order confirming the Plan which (i) authorizes and approves this Agreement (as incorporated into the Plan) and (ii) includes the Plan Release and the Plan Injunction, without any material changes or modifications.

h.      "Committee" means the official committee of unsecured creditors appointed in the Chapter 11 Case and any of its retained legal counsel or other professionals.

i.      "Drug Claims" means any and all Claims asserted or that could be asserted by any Person for personal injury, tort, wrongful death, medical monitoring, or any other

3

economic or noneconomic injury or damage, based upon, arising out of or in any way related to the business operations of NECC or Ameridose, including, but not limited to, the actual or alleged compounding, production, sale or distribution of injectable methylpredinisolone acetate or any other drugs or products.

      j.     "Escrow" means the escrow account to be established by the NECC Trustee at an FDIC insured bank listed on the United States Trustee's List of Authorized Depositories for Bankruptcy Cases filed in Region One, dated July 26, 2013, to hold the Settlement Amount pending the satisfaction of all conditions to the effectiveness of this Agreement set forth in Section VII hereof, or the Termination Date of this Agreement, whichever comes first.

      k.     "Execution Date" means the first date upon which all of the following have occurred:  (1) the NECC Trustee, Ameridose and PMIC have executed this Agreement; and (2) a complete copy of the Agreement has been circulated to all Parties.

      l.     "MDL Court" means the United States District Court for the District of Massachusetts (at Boston) presiding over the matter entitled In Re: New England Compounding Pharmacy, Inc. Product Liability Litigation, MDL Docket No. 2419, Master File No. 1: 13-MD-2419.

      m.     "NECC" or "Debtor" means debtor New England Compounding Pharmacy, Inc. d/b/a New England Compounding Center, and any of its predecessors, successors and permitted assigns, each acting in their respective capacity as such.

      n.     "NECC Tort Trust" means a trust created by the Plan which will be funded by, *inter alia*, the Settlement Amount from PMIC, and which establishes procedures for the determination of and distribution towards  Drug Claims.

      o.     "NECC Trustee" or "Trustee" means Paul D. Moore solely in his capacity as the Chapter 11 Trustee for debtor New England Compounding Pharmacy, Inc. d/b/a New England Compounding Center and not individually, and any retained attorneys or other professionals acting on his behalf.

      p.     "Parties" means, collectively, the NECC Trustee, Ameridose and PMIC.

      q.     "Person" means an individual, a corporation, a partnership, an association, a limited liability company, a proprietorship, a joint venture, a trust, an estate, trustee, executor, administrator, legal representative, or any other entity or organization.

      r.     "Plaintiffs' Steering Committee" means the attorneys identified in MDL Order No. 2: Order Appointing Lead Counsel, Federal-State Liaison Counsel and Plaintiffs' Steering Committee.

      s.     "Plan" means the Chapter 11 plan of reorganization or liquidation for NECC prepared, filed, noticed and solicited by the Trustee, at his own cost and expense, which is consistent with, incorporates and effectuates the terms and provisions of this Agreement without

any material changes or modifications with respect to the rights of the Parties hereto and consistent in all material respects with the Plan Support and Funding Agreement that was approved by the Bankruptcy Court by order dated July 31, 2014 (the "Plan Funding Agreement") and which includes and incorporates the NECC Tort Trust, the Plan Release and the Plan Injunction.

        t.    "Plan Effective Date" means the later of (i) the first business day following fourteen (14) days after the Bankruptcy Court's entry of the Confirmation Order, provided that the Confirmation Order is not subject to a stay by any court of competent jurisdiction as of such date, and (ii) the first business day on which all other conditions to the effective date of the Plan as set forth therein have been satisfied or waived.

        u.    "Plan Injunction" means the permanent injunction forever barring and enjoining all Persons from commencing, continuing or prosecuting any Drug Claims against Ameridose and/or PMIC and each of their respective officers, directors, members, managers, employees, attorneys, successors, general partners, insurers, reinsurers, permitted assigns, attorneys, and advisors, each in their respective capacities as such, as shall be incorporated in the Plan and Confirmation Order as described in Section VI herein.

        v.    "Plan Release" means a release to be included in the Plan and Confirmation Order pursuant to which the Drug Claims are deemed to have been waived and/or released by any and all Claimants as described in Section VI herein.

        w.    "Policies" means  (i) a Businessowners Special Policy, policy number BOP 0083404 05, with a policy period of March 1, 2011 to March 1, 2012, issued to Ameridose by PMIC; (ii) a Commercial Excess/Umbrella Liability Policy, policy number UCL 0083404 04, with a policy period of March 1, 2011 to March 1, 2012 issued to Ameridose by PMIC; (iii) a Businessowners Special Policy, policy number BOP 0083404 06, with a policy period of March 1, 2012 to March 1, 2013 issued to Ameridose by PMIC; (iv) a Commercial Excess/Umbrella Liability Policy, policy number UCL 0083404 05, with a policy period of March 1, 2012 to March 1, 2013 issued to Ameridose by PMIC; and (v) any other known or unknown insurance policies issued by PMIC to Ameridose prior to the Execution Date.

        x.    "Settlement Amount" means the sum of Ten Million Dollars ($10,000,000.00) (USD) together with any income or interest earned thereon from the date such amount is paid by PMIC to the Escrow pursuant to Section III hereof.

        y.    "Termination Date" shall have the meaning set forth in Section VIII hereof.

## II.    Compromise.

Ameridose and PMIC agree to resolve the Dispute by PMIC agreeing to pay in immediately available funds the Settlement Amount to the Trustee, for the benefit of the Debtor's estate, to obtain a complete exhaustion of the Policies on the Plan Effective Date subject to and in accordance with the terms of this Agreement, the Settlement

Agreement and the Plan in exchange for releases and injunctions consistent with the terms of this Agreement, the Settlement Agreement and the Plan.

### III.   Payment of Settlement Amount.

On or before five (5) days after entry of the Confirmation Order (the "Default Payment Date"), PMIC shall pay to the Trustee the Settlement Amount in immediately available funds, provided that the Confirmation Order is not subject to a stay by an order entered by any court of competent jurisdiction on or before the Default Payment Date; provided, further, that if the Confirmation Order is subject to such a stay, PMIC shall pay to the Trustee the Settlement Amount in immediately available funds within two (2) days after the date the stay is lifted or terminated. Until the earlier to occur of the Plan Effective Date or the Termination Date, the Trustee shall hold the Settlement Amount in the Escrow separate and apart from any other assets of the Debtor's estate. On the Plan Effective Date, the Settlement Amount, together with all accrued interest thereon, shall be, and shall be deemed, irrevocably and indefeasibly paid to the Trustee for payment of the costs and expenses of administration of the Chapter 11 Case and distribution to creditors under the Plan (including, but not limited to, pursuant to the NECC Tort Trust), and neither Ameridose nor PMIC shall have any further right, claim or interest in or to the Settlement Amount. Notwithstanding the foregoing, if the conditions set forth in Section VIII hereof are not satisfied, the Trustee shall return the Settlement Amount together with all accrued interest thereon to PMIC, and the rights of each of the Trustee, PMIC and Ameridose shall be restored as they existed prior to the Execution Date; provided that, if Ameridose or PMIC has materially breached this Agreement and has failed to cure such breach within ten (10) days' notice thereof, the Trustee shall retain such amounts from the Settlement Amount as necessary to reimburse the Trustee for any calculable damages resulting from such breach.

### IV.   Bankruptcy Related Obligations.

a.   Within a reasonable period of time after the Execution Date, the Trustee shall prepare, file and solicit (following approval of a disclosure statement) approval and confirmation of the Plan and the entry of the Confirmation Order. The Confirmation Order shall (i) approve this Agreement and (ii) include the terms and provisions of the Plan Release and the Plan Injunction, without any material changes or modifications.

b.   The Plan, the Confirmation Order and any other related documents, pleadings, notices or orders (including any disclosure statement), insofar as they effectuate or relate to the rights, benefits and obligations provided for by this Agreement, shall each be in a form that is reasonably satisfactory to Ameridose and PMIC, and shall each be provided to Ameridose and PMIC in draft for review and comment a reasonable time prior to their filing with the Bankruptcy Court or the MDL Court or otherwise being publicly disclosed.

c.  Each of PMIC and Ameridose hereby agrees with respect to any Plan (as defined herein) to:

    i.  so long as its vote has been properly solicited pursuant to sections 1125 and 1126 of the Bankruptcy Code, timely vote any and all Claims (to the extent filed) that it is entitled to vote, now or hereafter beneficially owned by such Party (subject to Section IV hereof), to accept the Plan in accordance with the applicable procedures set forth in the solicitation materials accompanying the Plan, and timely return a duly executed ballot in connection therewith;

    ii.  not withdraw or revoke its tender, consent or vote with respect to the Plan, except as otherwise expressly permitted pursuant to this Agreement; and

    iii.  not:

        1.  oppose or object to the Plan or the solicitation or consummation of the Plan and the transactions contemplated by the Plan, whether directly or indirectly;

        2.  join in or support any objection to the Plan or to the solicitation of the Plan;

        3.  initiate any legal proceedings that are inconsistent with or that would delay, prevent, frustrate or impede the approval, confirmation or consummation of the Plan, or otherwise commence any proceedings to oppose the Plan, or take any other action that is barred by or likely to frustrate this Agreement;

        4.  vote for, consent to, support or participate in the formulation of any other restructuring or settlement of Claims, any other transaction involving any plan of reorganization or liquidation (with the exception of the Plan) under applicable bankruptcy or insolvency laws, whether domestic or foreign, in respect of the Debtor or its affiliates, except as otherwise expressly contemplated pursuant to this Agreement;

        5.  directly or indirectly seek, solicit, or enter into any agreements relating to, any restructuring, plan of reorganization, proposal or offer of dissolution, winding up, liquidation, reorganization, merger, transaction, sale, disposition or restructuring of the Debtor or its affiliates (or substantially all of their assets or stock) other than the Plan or as otherwise set forth in this Agreement (any such plan or other action as described in clauses (4) and (5) immediately above, an "Alternative Plan"); or

6.  enter into any letter of intent, memorandum of understanding or agreement in principle relating to any Alternative Plan.

**V.    Waiver and Release of Claims.**

Upon the Plan Effective Date, and so long as this Agreement has not terminated, each of Ameridose and PMIC hereby (a) waives, relinquishes and releases (i) any and all Claims (whether or not a proof of claim is filed), of any kind or character it holds against the Debtor or its estate, and (ii) any and all rights to distributions or recoveries, of any kind or character, on account of such Claims including, without limitation, pursuant to the Plan.

**VI.    Plan Releases, Plan Injunctions and Assignment of Claims.**

a.    Subject only to the conditions set forth in Section VIII hereof, and without any further action by the Parties, each of Ameridose and the NECC Trustee hereby fully, finally and completely, remises, releases, acquits and forever discharges PMIC, its officers, directors, employees, attorneys, successors, general partners, limited partners, insurers, reinsurers, and permitted assigns and the foregoing entities' respective attorneys and advisors from any and all claims, debts, obligations, demands, liabilities, suits, judgments, damages, rights and causes of action whatsoever, including without limitation any and all Drug Claims and any direct or indirect claims for indemnity, contribution, reimbursement, subrogation, coverage or defense, or similar claim that are in any way related to the Drug Claims (other than the right to enforce the obligations under this Agreement, the Plan and the contracts, instruments, releases and other agreements and documents delivered thereunder), whether known or unknown, whether foreseen or unforeseen, whether contingent or actual, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, whether statutory or common law, whether asserted or unasserted, and whether based on contract, negligence, bad faith, willful, wanton or malicious conduct, or any other theory in law or equity concerning, arising from or relating to any actual or alleged past, present or future act, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part upon any act, omission, defect, incident, transaction, event or circumstance from the beginning of the world to the Plan Effective Date, in any way relating to or in connection with (i) the Debtor, the Drugs, or any and all products of and/or distributed by the Debtor, or (ii) the Debtor's estate, the Chapter 11 Case, the Plan, this Agreement and/or the Policies.  Notwithstanding anything in this Agreement to the contrary, the release by Ameridose or any Individuals as insureds under the Policies shall only become effective as of the Plan Effective Date, and nothing in this Agreement shall be deemed to be a release by Ameridose or any Individual as insureds under the Policies of any claim for defense or indemnification from and against any Drug Claims prior to the Plan Effective Date, and PMIC shall pay any defense costs of insureds in accordance with the terms of the Policies prior to the Plan Effective Date.

8

b.    Subject to the conditions set forth in this Section VI and Section VIII hereof, and without any further action by the Parties, each of the NECC Trustee and PMIC hereby fully, finally and completely, remises, releases, acquits and forever discharges Ameridose, its officers, directors, members, managers, employees, attorneys, successors, general partners, limited partners, insurers, reinsurers, permitted assigns and the foregoing entities' respective attorneys and advisors from any and all claims, debts, obligations, demands, liabilities, suits, judgments, damages, rights and causes of action whatsoever, including without limitation any and all Drug Claims and any direct or indirect claims for indemnity, contribution, reimbursement, subrogation or similar claim that are in any way related to the Drug Claims (other than the right to enforce the obligations under this Agreement, the Plan and the contracts, instruments, releases and other agreements and documents delivered thereunder), whether known or unknown, whether foreseen or unforeseen, whether contingent or actual, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, whether statutory or common law, whether asserted or unasserted, and whether based on contract, negligence, bad faith, willful, wanton or malicious conduct, or any other theory in law or equity concerning, arising from or relating to any actual or alleged past, present or future act, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part upon any act, omission, defect, incident, transaction, event or circumstance from the beginning of the world to the Plan Effective Date, in any way relating to or in connection with (i) the Debtor, the Drugs, or any and all products of and/or distributed by the Debtor, or (ii) the Debtor's estate, the Chapter 11 Case, the Plan, this Agreement and/or the Policies.

c.    Subject only to the conditions set forth in Section VIII hereof, and without any further action by the Parties, each of Ameridose and PMIC hereby fully, finally and completely, remises, releases, acquits and forever discharges the NECC Trustee, the Committee, the Plaintiffs' Steering Committee, the Claimants, and the respective attorneys and advisors of the foregoing parties from any and all claims, debts, obligations, demands, liabilities, suits, judgments, damages, rights and causes of action whatsoever, including without limitation any and all Drug Claims and any direct or indirect claims for indemnity, contribution, reimbursement, subrogation or similar claim that are in any way related to the Drug Claims (other than the right to enforce the obligations under this Agreement, the Plan and the contracts, instruments, releases and other agreements and documents delivered thereunder), whether known or unknown, whether foreseen or unforeseen, whether contingent or actual, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, whether statutory or common law, whether asserted or unasserted, and whether based on contract, negligence, bad faith, willful, wanton or malicious conduct, or any other theory in law or equity concerning, arising from or relating to any actual or alleged past, present or future act, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part upon any act, omission, defect, incident, transaction, event or circumstance from the beginning of the world to the Plan Effective Date, in any way relating to or in connection with (i) the Debtor, the Drugs, or any and all

9

products of and/or distributed by the Debtor, or (ii) the Debtor's estate, the Chapter 11 Case, the Plan, this Agreement and/or the Policies.

d. Except as to the rights and claims created or expressly preserved by the Plan, the Settlement Agreement, this Agreement, and the Confirmation Order, upon the Plan Effective Date, Ameridose and PMIC, and each of their respective officers, directors, members, managers, employees, attorneys, successors, general partners, limited partners, insurers, reinsurers, permitted assigns, attorneys and advisors shall have and be entitled to an injunction forever barring and enjoining all persons and/or entities from asserting any past, present, and future rights, interests, obligations, claims, causes of action, damages (including punitive damages), demands (including demands for contribution, indemnity, or otherwise), liabilities, expenses, fees (including, but not limited to, attorneys' fees, expert fees, consulting fees, and other professional fees) and costs of any kind or any type whatsoever, including without limitation any and all Drug Claims and any direct or indirect claims for indemnity, contribution, reimbursement, subrogation or similar claim that are in any way related to the Drug Claims (other than the right to enforce the obligations under this Agreement, the Plan and the contracts, instruments, releases and other agreements and documents delivered thereunder), whether known or unknown, whether foreseen or unforeseen, whether contingent or actual, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, whether statutory or common law, whether asserted or unasserted, and whether based on contract, negligence, bad faith, willful, wanton or malicious conduct, or any other theory in law or equity concerning, arising from or relating to any actual or alleged past, present or future act, omission, defect, incident, transaction, event or circumstance from the beginning of the world to the Plan Effective Date, in any way relating to or in connection with (i) the Debtor, the Drugs, or any and all products of and/or distributed by the Debtor, or (ii) the Debtor's estate, the Chapter 11 Case, the Plan, this Agreement and/or the Policies.

e. Upon the satisfaction of the conditions set forth in Section VIII hereof, Ameridose and PMIC shall be deemed to have unconditionally assigned to the NECC Trustee any and all Claims that they may have between them and against any Persons not a Party to this Agreement (including any claims for indemnification, contribution or subrogation) that are based upon or arise out of the Drug Claims provided, however, that any such Claim against any Individual shall be deemed released upon the Plan Effective Date pursuant to the Settlement Agreement.

f. Upon the satisfaction of the conditions set forth in Section VIII hereof, the Parties agree that the Policies' liability limits are exhausted and that PMIC has no further defense or indemnity obligations under the Policies.

g. Upon the satisfaction of the conditions set forth in Section VIII hereof, Ameridose shall be deemed to have assigned to the NECC Trustee all of its rights under the Policies, including the Policies' proceeds.

10

h.      Upon the satisfaction of the conditions set forth in Section VIII hereof, Ameridose shall be deemed to have assigned to the NECC Trustee all of its rights with respect to any and all other excess insurance coverage that may provide coverage for the Drug Claims, including those policies' proceeds, whether or not the excess insurance carriers have disputed coverage.  Nothing in this Agreement shall delay, prevent, frustrate or impede the NECC Trustee's efforts to secure such insurance proceeds for the Debtor's estate, and Ameridose agrees to cooperate in any such efforts.

i.      Nothing in this Section VI or any other provision of this Agreement is intended to, nor shall it be construed to, have any effect on, or constitute a release, waiver or discharge of, (i) the Parties' respective rights, obligations, remedies or Claims created under this Agreement or (ii) the NECC Trustee's rights under the Plan Support and Funding Agreement dated as of May 2, 2014 by and among the NECC Trustee and certain insiders of NECC, including without limitation, the NECC Trustee's right to Pharmaceutical Entity Distributions as defined in that agreement.

## VII.   Representations and Warranties of the Parties.

Each of the Parties separately represents and warrants to each of the other Parties as follows:

a.      The Party has the requisite power and authority to enter into this Agreement and to perform the obligations contemplated by this Agreement, subject only to the entry of the Confirmation Order;

b.      The execution and delivery of this Agreement, and the performance of the obligations contemplated by this Agreement, have been approved by duly authorized representatives of the Party, and by all other necessary actions of the Party;

c.      The Party has expressly authorized its undersigned representative to execute this Agreement on the Party's behalf as its duly authorized agent;

d.      The making and performance of this Agreement will not violate any provision of the Party's respective articles of incorporation, membership agreement, charter or bylaws, where applicable;

e.      The Party has read the entire Agreement and knows the contents hereof; it understands that the terms hereof are contractual and not merely recitals; it has signed this Agreement of its own free act and will; and in making this Agreement, it has obtained the advice of its own legal counsel;

f.      The Party has not previously assigned or transferred, or purported to assign or transfer to any other Person, any right or Claim that is the subject matter of this Agreement; and

11

g.    This Agreement has been negotiated, executed and delivered in good faith, with the assistance of its own legal counsel, pursuant to good faith arm's length negotiations, and for good and valuable consideration.

**VIII.   Conditions to Effectiveness of this Agreement.**

Upon the Execution Date, this Agreement shall be binding upon the Parties in accordance with its terms; provided, however, that the obligations of the Trustee and the Debtor's estate under this Agreement are expressly subject to and conditioned upon entry of the Confirmation Order; and provided, further, that the effectiveness and finality of the provisions of this Agreement concerning the payment and release of the Settlement Amount from Escrow to the NECC Trustee (Section III) and the Plan Releases and Plan Injunctions (Section VI) are expressly conditioned upon and subject to the following:

a.    The payment of the Settlement Amount to the Trustee by PMIC in accordance with this Agreement; and

b.    The occurrence of the Plan Effective Date.

For the avoidance of doubt, and without diminishing any other condition to the effectiveness of this Agreement or the Plan, it is expressly understood and agreed by the Parties that the Plan Release and the Plan Injunction are material, non-waivable conditions to the effectiveness of this Agreement, and that they will also be made material, non-waivable conditions to the effectiveness of the Plan.

In the event that: (a) the Plan Effective Date does not occur within one (1) year from the Execution Date; (b) the Bankruptcy Court denies confirmation of the Plan and such denial cannot be cured by amending the Plan in a manner that is either (i) not materially inconsistent with this Agreement and the Plan Funding Agreement or (ii) otherwise agreed to by the Parties hereto and to the Plan Funding Agreement; or (c) the Plan is withdrawn; then this Agreement shall immediately terminate and be of no further force or effect (the date of such termination, the "Termination Date"), and, unless Ameridose or PMIC has materially breached this Agreement and has failed to cure such breach within ten (10) days' notice thereof, in which event the Trustee shall retain such amounts from the Settlement Amount as necessary to reimburse the Trustee for any calculable damages resulting from such breach, the NECC Trustee shall immediately return the Settlement Amount to PMIC, together with any interest accrued thereon without the need for any further order by the Bankruptcy Court, the MDL Court or any other court.  Upon the Termination Date, the Parties shall be restored to the same position they were in immediately prior to the Execution Date without waiver of any rights, claims, defenses or remedies that the Parties may have against each other.

The Parties may agree and consent in a writing signed by the Parties to extend the Termination Date for a reasonable period of time in the sole discretion of the Parties.

## IX.    Other Provisions.

a.    Informed Consent and Knowledge.  The Parties expressly warrant and represent that they have had the benefit of the professional advice of attorneys of their own choosing, that they are fully satisfied with that advice, and that they have not relied on any statement or representation of other Parties to this Agreement regarding the specific matters in dispute. The Parties also represent and acknowledge that, in executing this Agreement, they do not rely and have not relied upon any representation or statement made by any other Party or any of their agents, representatives, or attorneys, with regard to the subject matter, basis or effect of this Agreement or otherwise, other than as specifically stated in this Agreement.

b.    No Precedent.  The Parties stipulate that they have entered into this Agreement only for their own business reasons based on the unique circumstances presented by the Dispute and the Drug Claims, and that this Agreement creates no binding legal or factual precedent for themselves or others in any future case.   This Agreement does not constitute an admission of coverage or noncoverage, and is not based upon language in the Policies.  Nothing in this Agreement shall compromise or be deemed to impair any rights to coverage under any insurance policy assigned to the NECC Trustee pursuant to Section VI.h of this Agreement.

c.    Confidentiality.  The Parties agree, subject to any disclosure obligations imposed by law, to hold this Agreement confidential and not to disclose the terms of this Agreement to any Person, other than the Committee and the Plaintiffs' Steering Committee, until the Trustee files the Plan; provided, however, that after the Execution Date and prior to the filing of the Plan, the Parties may inform the Bankruptcy Court and/or the MDL Court that they have entered into this Agreement; provided, further, that prior to the filing of the Plan, the Parties may disclose the fact that they have reached a settlement, the settlement amount, and such other terms of the Agreement as may be reasonably necessary or appropriate to implement the Agreement.

d.    Cooperation.  Each Party agrees to take such steps and to execute any documents as may be reasonably necessary or proper to effectuate the purpose and intent of this Agreement and to preserve its validity and enforceability. In the event that any action or proceeding of any type whatsoever is commenced or prosecuted by any Person not a Party hereto to invalidate, interpret or prevent the validation, enforcement or carrying out of all or any of the provisions of this Agreement, the Parties mutually agree, represent, warrant and covenant to cooperate in opposing such action or proceeding.

e.    Entire Agreement.  This Agreement sets forth the entire agreement between the Parties and fully supersedes any and all prior agreements and understandings, written or oral, between and among the Parties pertaining to the subject matter hereof.   Except as explicitly set forth in this Agreement, there are no representations, warranties, promises or inducements, whether oral, written,

13

expressed, or implied, that in any way affect or condition the validity of this Agreement or alter or supplement its terms.  Any statements, promises or inducements, whether made by any Party or the agent of any Party, that are not contained in this Agreement shall not be valid or binding.  This Agreement shall have perpetual existence, except as otherwise provided herein.

f.    Amendment/Modification.  No amendment or modification of this Agreement shall be binding or enforceable unless in writing and signed by the Parties and, if required, approved by the Bankruptcy Court.

g.    Construction.  This Agreement is the jointly-drafted product of good faith arm's length negotiations between the Parties with the benefit of advice from their own respective legal counsel and each of them has had sufficient opportunities to propose and negotiate changes to this Agreement prior to its execution.  As such, no Party will claim that any ambiguity in this Agreement shall be construed against any other Party by reason of their identity as a drafter or insurer.  The following rules of construction shall also apply to this Agreement:

1.    The Recitals and Definitions to this Agreement are a material part of this Agreement having the same force and effect as a mutual representation, warranty and covenant of the Parties;

2.    Unless the context of this Agreement otherwise requires, (a) words of any gender include each other gender, and the word "it" may refer to a Person as the context requires; (b) words used in the singular or plural also include the plural or singular number, respectively; (c) the terms "hereof," "herein," "hereby" and derivative or similar words refer to this entire Agreement; (d) the words "include,' "includes" or "including" shall be deemed to be followed by the words "without limitation;" (e) the word "or" shall be disjunctive but not exclusive; (f) the words "any" or "all" shall mean "any and all";

3.    References to policies, agreements and other documents shall be deemed to include all subsequent amendments and other modifications thereto; and

4.    References to statutes shall include all regulations promulgated thereunder and references to statutes or regulations shall be construed as including all statutory and regulatory provisions consolidating or amending or replacing the statute or regulation.

h.    Applicable Law.  This Agreement shall be interpreted and construed in accordance with the laws of the Commonwealth of Massachusetts, without regard to conflict of law principles, except to the extent that any particular provision hereof may be governed by the Bankruptcy Code and Rules.  Each of the Parties hereby irrevocably consents to the exclusive jurisdiction of the Bankruptcy Court with respect to any action to enforce the terms and provisions of this Agreement, and expressly waives any right to commence any such action in any other forum (unless the Bankruptcy Court does not have or refuses to exercise such

14

jurisdiction). In any dispute arising from this Agreement, the Parties hereby waive any right to a jury trial. This Agreement is intended to be and shall have the effect of a document executed under seal in accordance with the laws of the Commonwealth of Massachusetts.

i.  No Admissions/Not Evidentiary. This Agreement is not and shall not be construed as an admission or concession of coverage, responsibility, liability, non-liability or wrongdoing by any Party to this Agreement. No part of this Agreement may be used in any action or proceeding as evidence of the rights, duties or obligations of PMIC under the Policies or otherwise.

j.  Successors and Assigns. This Agreement shall be binding upon and inure to the benefit of the Parties hereto, and their respective successors, permissible assigns, agents, employees and legal representatives, including, without limitation, NECC and its bankruptcy estate, any trust or trustee, responsible Person, estate administrator, representative or similar Person appointed for NECC in connection with the Chapter 11 Case, the Plan or any subsequent Chapter 7 case. Except as expressly provided in this Agreement, neither this Agreement nor any of the rights and obligations set forth herein shall be assigned by any Party without the prior written consent of the other Parties, which consent shall not be unreasonably withheld.

k.  No Rights of Third Parties. All Persons expressly included within the definitions of "Ameridose," "PMIC" and "NECC Trustee," are intended beneficiaries of this Agreement. The Parties agree that, except as set forth in the prior sentence or otherwise expressly set forth in this Agreement, there are no intended third party beneficiaries to this Agreement.

l.  Enforcement of Agreement. The Parties hereby acknowledge that money damages would be both incalculable and an insufficient remedy for any breach of this Agreement by any Party and that such breach shall cause the non-breaching Parties irreparable harm. Accordingly, the Parties agree that in the event of any breach or threatened breach of this Agreement by any of the Parties, the Parties, in addition to any other remedies at law or in equity that they may have, shall be entitled, without the requirement of posting a bond or other security, to equitable relief, including injunctive relief and specific performance.

m.  Captions and Headings. Captions and headings to paragraphs or sections in this Agreement are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof.

n.  Notice. Unless another Person is designated in writing for receipt of notices hereunder, notices to the respective Parties shall be sent to the following Persons to the extent so designated below. All notices shall be sent via email and by either (i) overnight courier or (ii) fax, and shall be deemed effective upon receipt.

15

As to the NECC Trustee:

Paul D. Moore
Duane Morris LLP
100 High Street Ste 2400
Boston, MA 02110
Tel: 857-488-4200
Fax: 857-401-3057
Email: pdmoore@duanemorris.com

With Copy To:

Michael R. Gottfried
Duane Morris LLP
100 High Street Ste 2400
Boston, MA 02110
Tel: 857-488-4200
Fax: 857-401-3057
Email: mrgottfried@duanemorris.com

As to Ameridose:

Ameridose, LLC
205 Flanders Road
Westborough, MA 01581

As to PMIC:

Victor Garman
Pharmacists Mutual Companies
808 HWY 18 W
PO Box 370
Algona, IA 50511
Tel: (800) 247-5930
Fax: (515) 295-4321
E-mail: vic.garman@phmic.com

    <u>With Copy To</u>:

    Richard Mikels, Esq.
    Nancy D. Adams, Esq.
    MINTZ, LEVIN, COHN, FERRIS,
      GLOVSKY AND POPEO, P.C.
    One Financial Center
    Boston, Massachusetts 02111
    Tel: (617) 542-6000
    Fax: (617) 542-2241
    E-mail:  rmikels@mintz.com
       nadams@mintz.com

b.  Execution and Delivery.  This Agreement may be executed in one or more counterparts, all of which together shall constitute one and the same instrument. This Agreement may be executed and delivered by email and facsimile, which shall be deemed the same as originals.

**[Signature Page Follows]**

**IN WITNESS WHEREOF**, and intending to be legally bound hereby, the undersigned Parties have each approved and executed this Agreement.

**Paul D. Moore, in his capacity as Chapter 11 Trustee**
**of New England Compounding Pharmacy, Inc., d/b/a**
**New England Compounding Center and not individually**

Dated as of November 24, 2014

**Pharmacists Mutual Insurance Company**

By: _____
Name Printed:
Its:  Chief Operating Officer

Dated as of November 24, 2014

**Ameridose, LLC**

By: _____
Name Printed: Dennis M. Gerrard
Its:  Restructuring Agent

Dated as of November 24, 2014

18

**IN WITNESS WHEREOF**, and intending to be legally bound hereby, the undersigned Parties have each approved and executed this Agreement.

**Paul D. Moore, in his capacity as Chapter 11 Trustee**
**of New England Compounding Pharmacy, Inc., d/b/a**
**New England Compounding Center and not individually**

_____

Dated as of November 24, 2014


**Pharmacists Mutual Insurance Company**

By: _____
Name Printed: Victor C Garmach
Its:  Chief Claims Officer

Dated as of November 24, 2014


**Ameridose, LLC**

By: _____
Name Printed: Dennis M. Gerrard
Its:  Restructuring Agent

Dated as of November 24, 2014

18

**IN WITNESS WHEREOF**, and intending to be legally bound hereby, the undersigned Parties have each approved and executed this Agreement.

**Paul D. Moore, in his capacity as Chapter 11 Trustee
of New England Compounding Pharmacy, Inc., d/b/a
New England Compounding Center and not individually**

_____

Dated as of November 24, 2014

**Pharmacists Mutual Insurance Company**

By: _____
Name Printed:
Its:  Chief Operating Officer

Dated as of November 24, 2014

**Ameridose, LLC**

By: _____
Name Printed: Dennis M. Gerrard
Its:  Restructuring Agent

Dated as of November 24, 2014

18

## ADDENDUM TO AMERIDOSE, LLC INSURANCE SETTLEMENT, RELEASE AND INJUNCTION AGREEMENT

This Addendum (the "Addendum") to the *Ameridose, LLC Insurance Settlement, Release and Injunction Agreement* dated as of November 24, 2014 (the "Agreement") is made as of November 24, 2014 by:

(i) the Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 case of New England Compounding Pharmacy, Inc., d/b/a New England Compounding Center, Case No. 12-19882, pending in the United States Bankruptcy Court for the District of Massachusetts (the "Bankruptcy Court"); and

(ii) the Plaintiffs' Steering Committee (the "PSC") appointed in the multi-district litigation captioned *In re New England Compounding Pharmacy Cases Litigation*, MDL No. 2419, Case No. 13-cv-02419 (D. Mass.).

Capitalized terms not defined herein shall have the meanings assigned to them in Section 1 of the Agreement.

1.      Each of the Committee and the PSC acknowledges that it has had a sufficient opportunity to discuss and review the Agreement with its counsel, has in fact done so, and fully understands the terms, conditions, and agreements set forth therein.

2.      Each of the Committee and the PSC supports the Agreement and the compromise and settlement embodied therein.

3.      Each of the Committee and the PSC (i) supports, (ii) agrees to take reasonable steps to secure, and (iii) agrees not to oppose or object to the Bankruptcy Court's confirmation of a Plan that incorporates and effectuates the terms and provisions of the Agreement in all material respects. Notwithstanding the foregoing, each of the Committee, the PSC, and their members reserve all rights in connection with any aspect of the Plan that is not the subject of the Agreement, including, without limitation, the right to object and/or negotiate provisions of the Plan that are not the subject of the Agreement.

4.      Nothing in this Addendum is intended to or does modify the Agreement in any respect.

*Signature Page to Addendum to Ameridose, LLC*
*Insurance Settlement, Release and Injunction Agreement*

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF NEW ENGLAND COMPOUNDING PHARMACY, INC., BY AND THROUGH ITS COUNSEL AND CO-CHAIRS**

**BROWN RUDNICK LLP**

By: _____
David J. Molton, Esq. (admitted *pro hac vice*)
Daniel J. Saval, Esq. (BBO #653906)
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801
dmolton@brownrudnick.com
dsaval@brownrudnick.com

and

William R. Baldiga, Esq. (BBO #542125)
Kiersten A. Taylor, Esq. (BBO #681906)
One Financial Center
Boston, Massachusetts 02111
Telephone: (617) 856-8200
Facsimile: (617) 856-8201
wbaldiga@brownrudnick.com
ktaylor@brownrudnick.com

*Counsel to the Official Committee of Unsecured Creditors of New England Compounding Pharmacy, Inc.*

20

ANDREWS & THORNTON

By: _____
Anne Andrews, Esq.
John C. Thornton, Esq.
Karren Schaeffer, Esq.
2 Corporate Park, Ste. 110
Irvine, CA 92606
Telephone: 949 748-1000
aa@andrewsthornton.com
jct@andrewsthornton.com
kschaeffer@andrewsthornton.com

*Counsel for Official Committee of Unsecured
Creditors of New England Compounding
Pharmacy, Inc. Member and Co-Chair, Katrina
Eldreth, obo Ari Gomez*

COHEN PLACITELLA & ROTH P.C.

By:_____
Michael Coren, Esq.
Harry Roth, Esq.
Two Commerce Square
2001 Market Street, Suite 2900
Philadelphia, PA 19103
Telephone: 215 567-3500
mcoren@cprlaw.com
hroth@cprlaw.com

*Counsel for Official Committee of Unsecured
Creditors of New England Compounding
Pharmacy, Inc. Member and Co-Chair,
Meghan Handy*

21

ANDREWS & THORNTON

By: _____
Anne Andrews, Esq.
John C. Thornton, Esq.
Karren Schaeffer, Esq.
2 Corporate Park, Ste. 110
Irvine, CA 92606
Telephone: 949 748-1000
aa@andrewsthornton.com
jct@andrewsthornton.com
kschaeffer@andrewsthornton.com

*Counsel for Official Committee of Unsecured*
*Creditors of New England Compounding*
*Pharmacy, Inc. Member and Co-Chair, Katrina*
*Eldreth, obo Ari Gomez*


COHEN PLACITELLA & ROTH P.C.

By: _____
Michael Coren, Esq.
Harry Roth, Esq.
Two Commerce Square
2001 Market Street, Suite 2900
Philadelphia, PA 19103
Telephone: 215 567-3500
mcoren@cprlaw.com
hroth@cprlaw.com

*Counsel for Official Committee of Unsecured*
*Creditors of New England Compounding*
*Pharmacy, Inc. Member and Co-Chair,*
*Meghan Handy*

21

**THE PLAINTIFF STEERING COMMITTEE,
BY AND THROUGH ITS LEAD COUNSEL**


**HAGENS BERMAN SOBOL SHAPIRO LLP**

By: _____
Thomas M. Sobol, Esq.
Kristen Johnson, Esq.
55 Cambridge Parkway, Suite 301
Cambridge, MA  02142
(617) 482-3700
tom@hbsslaw.com
kristenjp@hbsslaw.com

*Plaintiffs' Lead Counsel, for the PSC*

22