**<u>EXHIBIT 3</u>**

**ARL Settlement Agreement**

## SETTLEMENT AND RELEASE AGREEMENT
### *(ARL Bio Pharma Inc. d/b/a Analytical Research Laboratories)*

This Settlement and Release Agreement (the "Agreement") is made and entered as of the Execution Date (as defined below) by, between and among the NECC Trustee (as defined below), ARL (as defined below) and Landmark (as defined below).

## RECITALS

WHEREAS, ARL has provided a number of services, including testing services, to compounding pharmacies and other companies, including NECC;

WHEREAS, NECC and ARL have been named as defendants in numerous lawsuits asserting Claims (as defined below), and may have additional Claims made against them, seeking damages for injuries arising from the alleged contamination of certain lots of injectable methylprednisolone acetate, cardioplegia solutions, and other products compounded at and distributed by NECC (as more fully defined herein, the "NECC Claims") and allegedly tested by ARL;

WHEREAS, ARL disputes having any liability on the NECC Claims and contends it did not test the final products alleged to have given rise to the NECC Claims;

WHEREAS, ARL sought coverage for the NECC Claims from Landmark under a certain policy of professional liability insurance (as more fully defined herein, the "Policy");

WHEREAS, Landmark agreed to defend the NECC Claims asserted against ARL, subject to a reservation of rights, pursuant to which Landmark reserved all of its rights and defenses regarding the extent of coverage for the NECC Claims under the Policy;

WHEREAS, Landmark and ARL dispute to what extent the Policy has applicability to the NECC Claims and Landmark filed a Petition in the district court of Oklahoma County styled as, Landmark American Insurance Company v. ARL BioPharma, Inc., d/b/a Analytical Research Laboratories, C.A. No. 13-3193 (hereafter referred to the "Declaratory Judgment Action"), seeking a declaratory judgment concerning the Policy;

WHEREAS, the NECC Trustee, ARL and Landmark may have Claims against each other and others as a result of the NECC Claims and based upon subrogation or contractual or equitable indemnification or contribution or other theories;

WHEREAS, Landmark and ARL have engaged in good faith settlement discussions and mediation amongst themselves and with the NECC Trustee, the Creditors' Committee (as defined below) and the Plaintiffs' Steering Committee (as defined below) in an effort to fully and finally compromise and resolve ARL's potential liability for the NECC Claims and Landmark's coverage obligations, if any, for the NECC Claims under the Policy or otherwise;

WHEREAS, Landmark, ARL and the NECC Trustee believe that if their disputes and other remaining issues are not resolved now, future proceedings would be protracted and

expensive, involve complex issues of liability and/or damages, and involve substantial uncertainties and risks inherent in litigation; and

WHEREAS, the Creditors' Committee and the Plaintiffs' Steering Committee (each as defined below) support this Agreement and the compromise and settlement embodied therein. as reflected in the *Addendum to Settlement and Release Agreement* attached hereto.

NOW, THEREFORE, in consideration of the mutual covenants contained herein and other good and valuable consideration, the adequacy and sufficiency of which is hereby acknowledged by the Parties, and intending to be legally bound hereby, the Parties agree as follows:

I.     **Definitions.** The following definitions shall apply to the capitalized terms used in this Agreement:

a.     **"Affiliates"** means DNA Solutions, Inc., The Kupiec Group LLC, Woda Investments LLC, Wasser Investments LLC, Kupiec Family Succession Trust, Kupiec Dakil Investments, LLC, Kreativ LLC, Teal Water Investments LLC, and Green Harvest Investments, LLC, and shall also include all of their directors, officers, members, owners, principals, agents, employees, servants, attorneys, accountants, insiders, purported alter egos, predecessors, successors and assigns.

b.     **"Agreement"** shall have the meaning set forth above in the preamble.

c.     "ARL" means: ARL BioPharma Inc. d/b/a Analytical Research Laboratories.  Solely for purposes of this Agreement and the Plan, and solely with respect to Claims based upon, arising out of, or in some way related to, the actual or alleged design, formulation, compounding, production, labeling, testing, marketing, advertising, supply, dispensing, sale, shipment or distribution of injectable methylprednisolone acetate, cardioplegia solution, or any other drugs or products compounded by NECC, ARL shall also include  all of ARL BioPharma Inc.'s directors, officers, members, ARL Shareholder, the Affiliates, owners, principals, agents, employees, servants, attorneys, accountants, insiders, purported alter egos, predecessors, successors and assigns, and all Persons alleged to be derivatively liable through any of the forgoing, except to the extent that liability of the foregoing persons or entities is based on their relationship to entities other than ARL.

d.     **"ARL Settlement Amount"** means the sum of $828,188.64 (USD), $500,000.00 of which will be loaned to ARL BioPharma, Inc. by the Thomas C. Kupiec Trust.

e.     **"ARL Shareholder"** means the Thomas C. Kupiec Trust.  Solely for purposes of this Agreement and the Plan, and solely with respect to Claims based upon, arising out of, or in some way related to, the actual or alleged design, formulation, compounding, production, labeling, testing, marketing, advertising, supply, dispensing, sale, shipment or distribution of injectable methylprednisolone acetate, cardioplegia solution, or any other drugs or products compounded by NECC, the ARL Shareholder shall also include the ARL Shareholder's settlor, trustee, beneficiaries, Thomas C. Kupiec, his parents, spouse, dependents, children, and other nuclear family members, all other trusts under which the any of them are settlors,

2

trustees, or beneficiaries, and all other entities in which any of them directly or indirectly hold any legal, equitable, or beneficial interest, except to the extent that liability of the foregoing persons or entities is based on their relationship to entities other than ARL.

f.   **"Bankruptcy Case"** means the Chapter 11 case filed by NECC in the Bankruptcy Court captioned as *In Re: New England Compounding Pharmacy, Inc.,* Case No. 12-19882 (HJB).

g.   **"Bankruptcy Code"** means Title 11 of the United States Code, 11 U.S. C. §§ 101 *et seq.*, as it may be amended.

h.   **"Bankruptcy Court"** means the United States Bankruptcy Court for the District of Massachusetts, Eastern Division and, if applicable, the United States District Court for the District of Massachusetts, Eastern Division, exercising jurisdiction under 28 U.S.C. § 1334.

i.   **"Bankruptcy Rules"** means, collectively, the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court.

j.   **"Claim"** means any past, present and future claim, debt, demand, obligation, right, liability, damages, action, cause of action, suit, case, proceeding, and liability of any kind or nature whatsoever (including claims for equitable or contractual indemnification or contribution), whether at law or in equity, or pursuant to a statute, rule or regulation, whether known or unknown, asserted or unasserted, anticipated or unanticipated, accrued or unaccrued, matured or unmatured, fixed or contingent, direct, indirect, or derivative, which has been asserted, or that may in the future be asserted, by or on behalf of any Person, whether seeking damages (including compensatory, punitive or exemplary damages), compensation, costs, or equitable, mandatory, injunctive or any other type of relief, including cross-claims, counter-claims, third-party claims, suits, lawsuits, administrative proceedings, notices of liability or potential liability (including Potentially Responsible Party or "PRP" notices), arbitrations, actions, rights, requests, demands for payment, causes of action, orders, or judgments, including without limitation, any "claim" as that term is defined in the Bankruptcy Code, 11 U. S. C. § 101(5), which are based in whole or in part upon any act or omission, transaction, event, or other activity that occurred prior to the Plan Effective Date, except obligations under this Agreement.

k.   **"Claimants"** mean any Person asserting an NECC Claim against NECC, Landmark, and/or ARL.

l.   **"Confirmation Order"** means the order by a court of competent jurisdiction confirming the Plan and approving and implementing the provisions of this Agreement in all material respects, which order includes the Plan Release and the Plan Injunction without any material changes or modifications thereto.

m.   **"Creditors' Committee"** means the official committee of unsecured creditors appointed in the Bankruptcy Case, any of its retained legal counsel or other professionals, its  members and any of their retained legal counsel or other professionals.

n.   **"Direct Action Claim"** means any Claim asserted or that could be asserted by any Person against Landmark that arises from (i) the activities of ARL that allegedly gave rise to the

Settled Claims, or (ii) ARL's alleged interests in or rights to coverage, whether arising by contract, in tort or under the laws of any jurisdiction, including any statute that gives a third party a direct cause of action against an insurer.

o.    **"District Court"** means the United States District Court for the District of Massachusetts, including, without limitation, the MDL Court.

p.    **"Escrow"** means the escrow account to be established by the NECC Trustee at an FDIC insured bank listed on the United States Trustee's List of Authorized Depositories for Bankruptcy Cases filed in Region One, dated July 26, 2013, to hold the Settlement Amounts in trust pending the satisfaction of all conditions to the effectiveness of this Agreement set forth in Section VIII hereof, or the Termination Date of this Agreement, whichever comes first.  Funds held in the Escrow shall be held *in custodia legis*, shall not be subject to being offset, and shall not be subject to attachment, garnishment, execution, or any other form of legal or equitable process, other than by ARL solely in the event the Settlement Amount is not returned to ARL in accordance with Section II(a) or Section VIII hereof, and may only be disbursed in accordance with this Agreement.

q.    **"Execution Date"** means the first date upon which all of the following have occurred:  (1) Landmark, the NECC Trustee, and ARL have executed this Agreement; and (2) a complete copy of the Agreement has been circulated to all Parties.

r.    **"Extra Contractual Claim"** means any Claim asserted or that could be asserted by any Person against Landmark seeking any type of relief, including compensatory, exemplary or punitive damages on account of alleged bad faith; failure to act in good faith; violation of any duty of good faith and fair dealing; violation of any unfair claims practices act or similar statute, regulation or code; or any other similar type of alleged misconduct or any other act or omission of Landmark of any type for which the Person seeks relief other than coverage or policy benefits.

s.    **"Final Order"** means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the applicable subject matter which has not been reversed, stayed, modified or amended and as to which (a) any right to appeal or seek certiorari, review, reargument, stay or rehearing has expired and no appeal or petition for certiorari, review, reargument, stay or rehearing is pending, or (b) an appeal has been taken or petition for certiorari, review, reargument, stay or rehearing has been filed and (i) such appeal or petition for certiorari, review, reargument, stay or rehearing has been resolved by the highest court to which the order or judgment was appealed or from which certiorari, review, reargument, stay or rehearing was sought or (ii) the time to appeal further or seek certiorari, review, reargument, stay or rehearing has expired and no such further appeal or petition for certiorari, review, reargument, stay or rehearing is pending; provided, however, that the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 may be filed relating to such order shall not cause such order to not be a Final Order.

t.    **"Insurance Coverage Claim"** means any Claim for insurance coverage, whether direct, indirect or derivative, for defense, indemnity, contribution or otherwise.

u.   **"Landmark"** means Landmark American Insurance Company and any of its directors, officers, members, shareholders, owners, principals, employees, attorneys, predecessors, successors and assigns, each acting in their respective capacity as such.

v.   **"Landmark Settlement Amount"** means the sum of $5,571,811.36 (USD).

w.   **"MDL Court"** the District Court presiding over the MDL Proceeding.

x.   **"MDL Proceeding"** means the matter entitled *In Re: New England Compounding Pharmacy, Inc. Product Liability Litigation*, MDL Docket No. 2419, Master File No. 1: 13-MD-2419.

y.   **"MDL Stay Motion"** has the meaning set forth in Section III(a) hereof.

z.   **"MDL Stay Order"** has the meaning set forth in Section III(a) hereof.

aa.  **"NECC"** or **"Debtor"** means the debtor in the Bankruptcy Case, New England Compounding Pharmacy, Inc. d/b/a New England Compounding Center.

bb.  **"NECC Claims"** means any and all Claims asserted or that could be asserted by any Person against NECC or ARL for, without limitation, personal injury, tort, wrongful death, medical monitoring, or any other economic or noneconomic injury or damage, based upon, arising out of, or in any way related to NECC, including, but not limited to, the actual or alleged design, formulation, compounding, production, labeling, testing, marketing, advertising, supply, dispensing, sale, shipment or distribution of injectable methylprednisolone acetate, cardioplegia solution, or any other drugs or products, and including any and all causes of action and any and all avoidance and other proceedings that could have been prosecuted, either directly, derivatively, or otherwise, by the NECC Trustee against ARL by virtue of sections 541, 544, 547, 548, 549, or 550 of the Bankruptcy Code.

cc.  **"NECC Trustee"** or **"Trustee"** means Paul D. Moore solely in his capacity as the Chapter 11 Trustee for debtor New England Compounding Pharmacy, Inc. d/b/a New England Compounding Center and not individually, and any retained attorneys or other professionals acting on his behalf.

dd.  **"Parties"** means, collectively, the NECC Trustee, Landmark, and ARL.

ee.  **"Person"** means an individual, a corporation, a partnership, an association, a limited liability company, a proprietorship, a joint venture, a trust, an estate, trustee, executor, administrator, legal representative, or any other entity or organization.

ff.  **"Plan Proponents"** means the NECC Trustee and the Creditors' Committee.

gg.  **"Tort Trust"** means a trust created by the Plan which will be funded from, *inter alia*, the Settlement Amounts from Landmark and ARL and which will provide for procedures for the resolution and payment of Settled Claims. The Tort Trust (specifically, one of the exhibits thereto, *i.e.*, the claim form) shall, subject to the approval of the Bankruptcy Court, include a provision that the Claimant, by signing and submitting the claim form, understands and

confirms that the Plan provides for a release of all Tort Plaintiff Released Claims against all Tort Plaintiff Released Parties, as those terms are defined in the Plan. ARL and the ARL Shareholder shall be included within the Plan definition of Tort Plaintiff Released Parties. The Plan shall make the Plan Release and the Plan Injunction enforceable against all Persons, regardless whether they execute the acknowledgement described above.

hh.     **"Plaintiffs' Steering Committee"** means the attorneys identified in MDL Order No. 2: Order Appointing Lead Counsel, Federal-State Liaison Counsel and Plaintiffs' Steering Committee and the Committee's designated counsel.

ii.      **"Plan"** means the Chapter 11 plan of reorganization or liquidation for NECC prepared, filed, noticed and solicited by the Trustee, at his own cost and expense (except as provided in Section IV(d) hereof) which is consistent with, incorporates and effectuates the terms and provisions of this Agreement without any material changes or modifications with respect to the rights of the Parties hereto, and which includes and incorporates the Tort Trust, the Plan Release, the Plan Injunction, and implements the provisions of this Agreement in all material respects.

jj.      **"Plan Effective Date"** means the later of (i) the first business day following fourteen (14) days after the Bankruptcy Court's entry of the Confirmation Order, provided that the Confirmation Order is not subject to a stay by any court of competent jurisdiction as of such date, and (ii) the first business day on which all other conditions to the effective date of the Plan as set forth therein have been satisfied or waived.

kk.     **"Plan Injunction"** means the permanent injunction forever barring and enjoining all Persons from commencing, continuing or prosecuting any Settled Claims against ARL and any Settled Claims against Landmark, as incorporated in the Plan and Confirmation Order.

ll.      **"Plan Release"** means a release to be included in the Plan and Confirmation Order pursuant to which all Settled Claims against ARL and all Settled Claims against Landmark are deemed to have been waived and/or released by any and all Claimants.

mm.    **"Policy"** means the professional liability insurance policy, policy number LHM731509, effective 10/1/2011 - 10/1/2012 issued by Landmark, as insurer, to ARL.

nn.     **"Settlement Amounts"** means the sum of $6,400,000.00 (USD), consisting of the ARL Settlement Amount and the Landmark Settlement Amount.

oo.     **"Settled Claims"** means any and all Claims asserted or that could be asserted by or on behalf of any Person in any capacity whatsoever against ARL, Landmark, the NECC Trustee, the Debtor and/or its estate, based upon, arising out of or in any way relating to (i) NECC or the business operations of NECC, including, but not limited to, the actual or alleged design, formulation, compounding, production, labeling, testing, marketing, advertising, supply, dispensing, sale, shipment, or distribution of injectable methylprednisolone acetate, cardioplegia solution, or any other drugs or products, (ii) ARL or the business operations of ARL Bio Pharma, Inc. involving NECC, including, but not limited to, testing, marketing, or advertising of injectable methylprednisolone acetate, cardioplegia solution, or any other

6

drugs or products (iii) the NECC Claims, and/or (iv) the Policy, including, but not limited to, Insurance Coverage Claims, Direct Action Claims and/or Extra Contractual Claims.

pp.  **"Termination Date"** has the meaning set forth in Section VIII hereof.

**II.   Settlement Amounts**

a)   On December 31, 2014, Landmark and ARL shall pay (or cause to be paid) the Landmark Settlement Amount and the ARL Settlement Amount, respectively, in immediately available funds to the Escrow established by the NECC Trustee, in accordance with the wire transfer instructions to be supplied by the NECC Trustee to Landmark and ARL.  On the Plan Effective Date, if an appeal of the Plan Confirmation Order has been taken, $200,000 of the ARL Settlement Amount shall be, and shall be deemed, irrevocably and indefeasibly transferred from the Escrow to the NECC Trustee and the NECC estate, and will be remitted by the NECC Trustee to a "qualified settlement fund" within the meaning of Section 468B of the Internal Revenue Code and the Treasury Regulations established thereunder, and the balance of the Settlement Amounts ($6,200,000) shall continue to be held in Escrow until such time as the Plan Confirmation Order becomes a Final Order or the Plan Confirmation Order is reversed or vacated by an order that is no longer subject to appeal, reconsideration, or rehearing.  If and when the Plan Confirmation Order becomes a Final Order, the balance of the Settlement Amounts remaining in Escrow, including all interest accrued thereon, shall be, and shall be deemed to be, irrevocably and indefeasibly transferred from the Escrow to the NECC Trustee and the NECC Estate or the Tort Trustee for the payment of the costs and expenses of administration of the Bankruptcy Case and distribution to creditors under the Plan (including but not limited to, pursuant to the Tort Trust), provided, however, that the balance of the ARL Settlement Amount will then be remitted by the NECC Trustee to a "qualified settlement fund" within the meaning of Section 468B of the Internal Revenue Code and the Treasury Regulations established thereunder, and Landmark and ARL shall have no further right, claim or interest in or to the Settlement Amounts.  If and when the Plan Confirmation Order is reversed,  vacated, or modified in a manner that would adversely affect the Plan Release or the Plan Injunction insofar as they pertain to Landmark or ARL by an order that is no longer subject to appeal, reconsideration, or rehearing, (a) the balance of the Settlement Amounts remaining in Escrow ($6,200,000), exclusive of interest accrued thereon, shall be returned to ARL Bio Pharma Inc. and Landmark, and (b) any and all interest accrued thereon shall be, and shall be deemed to be, irrevocably and indefeasibly transferred from the Escrow to the NECC Trustee and the NECC estate.

b)   The Parties intend and agree that the Settlement Amounts shall constitute a material part of a fund to be ultimately distributed to personal injury Claimants and other creditors of the Debtor under the Plan and, accordingly, no Person may seek to attach, obtain a lien on, or otherwise reach such funds and such funds shall be held in a legal manner that protects such funds from the reach of others to the full extent permitted by law.

### III.    Stay of MDL Proceeding

a)    On or before December 31, 2014, ARL shall file and prosecute in good faith a motion with the MDL Court (the "MDL Stay Motion") requesting entry of an order of the MDL Court staying the MDL Proceeding as to ARL through the earlier of the Plan Effective Date or the Termination Date ("MDL Stay Order"). The terms of the MDL Stay Order, as requested by the MDL Stay Motion, shall include, but not be limited to, the following terms:

  i)    A prohibition against any party to the MDL Proceeding seeking dispositive relief against ARL;

  ii)    A prohibition against any party to the MDL Proceeding seeking any form of prejudgment security, including, but not limited to, any attachments, injunctions, writs or orders of any nature with regard to ARL; and

  iii)    the permissibility of discovery against ARL, but only to the extent the discovery is relevant to the prosecution, or defense, of claims against defendants other than ARL.

b)    ARL is hereby authorized to recite in the MDL Stay Motion that the NECC Trustee, the Plaintiffs' Steering Committee and the Creditors' Committee each support entry of the MDL Stay Order and, if requested by ARL, the NECC Trustee, the Plaintiffs' Steering Committee, and the Creditors' Committee shall each appear in support of entry of the MDL Stay Order.

c)    Nothing in this Agreement, the MDL Stay Motion, or the MDL Stay Order, shall prevent or prohibit a party from objecting to a discovery request based on any grounds ordinarily available under the Federal Rules of Civil Procedure, with all such rights being expressly reserved.  It is further agreed that so long as the MDL Stay Order contains language consistent with sub-paragraphs (a)(i)-(a)(iii) above, nothing in this Agreement shall provide a basis for ARL to claim that by virtue of entering into this Agreement, there is a general prohibition as to all discovery in the MDL Proceeding; and

d)    Following entry of the MDL Stay Order, ARL may (i) seek to enforce the MDL Stay Order in all courts of competent jurisdiction; and/or (ii) if those enforcement efforts are unsuccessful or such person or entity is not a party to the MDL Proceeding, seek entry of an order from the Bankruptcy Court or such other court of competent jurisdiction, enjoining any person or entity from taking such action or seeking such relief as to ARL that is proscribed by the MDL Stay Order.  Upon request by ARL, the NECC Trustee, the Plaintiffs' Steering Committee, and the Creditors' Committee shall each appear in the Bankruptcy Court and/or the MDL Court (as applicable) in support of any effort by ARL to enforce the MDL Stay Order in those courts.

e)    Should the MDL Court deny ARL's motion for the MDL Stay Order, this Agreement shall become null and void and of no further force or effect, with all

Parties being restored to the positions they held immediately prior to the execution hereof.

**IV.   Bankruptcy Related Obligations.**

a)   As soon as reasonably practicable after the Execution Date, the NECC Trustee shall prepare, file and solicit (following approval of a disclosure statement) approval and confirmation of the Plan and the entry of the Confirmation Order that (i) approves this Agreement and (ii) includes the terms and provisions of the Plan Release and the Plan Injunction, without any material changes or modifications.   The NECC Trustee shall serve, as required by order of the Bankruptcy Court, notice of the time for filing objections and the hearing to consider confirmation of the Plan and approval of the disclosure statement related to it on the parties required by the Bankruptcy Court.   The notice to be sent by the NECC Trustee shall include in conspicuous language (bold, italic, or underlined text) a statement that the Plan proposes an injunction, describe briefly the nature of the injunction, and identify the entities that would be subject to the injunction. Likewise, the Plan and disclosure statement related to it shall, as required by order of the Bankruptcy Court, be served by the NECC Trustee on the parties required by the Bankruptcy Court and shall describe in specific and conspicuous language (bold, italic, or underlined text) all acts to be enjoined and identify the entities that would be subject to the injunction.

b)   The Confirmation Order shall (i) include the terms and provisions of the Plan Release and the Plan Injunction, and implement the terms of this Agreement, all without any material changes or modifications, (ii) include an express finding that the releases and injunctions in favor of ARL and Landmark are being provided in good faith and the release discharges ARL from all liability for contribution to and all other Settled Claims by all alleged joint tortfeasors, (iii) authorize, direct, and order the trustee of the Tort Trust to undertake, for a period of one year following entry of the Confirmation Order, all actions as may be necessary to enforce the provisions of the Plan Release and the Plan Injunction in favor of ARL and Landmark; provided, however, that the Tort Trust trustee shall not be required to incur more in the aggregate than $100,000.00 in doing so, and (iv) provide that any Person determined to be in violation of the Plan Release and Plan Injunction shall pay attorney's fees and costs incurred by ARL and Landmark in connection with efforts to enforce the Plan Release and Plan Injunction or otherwise defending the Settled Claims on and following the Plan Effective Date.

c)   Landmark and ARL hereby agree with respect to any Plan (as defined herein):

i)   so long as their votes have been properly solicited pursuant to sections 1125 and 1126 of the Bankruptcy Code, to timely vote any and all Claims that they are entitled to vote, now or hereafter beneficially owned by such Party (subject to Section V hereof), to accept the Plan in accordance with the applicable procedures set forth in the solicitation materials

accompanying the Plan, and timely return a duly executed ballot in connection therewith;

ii)     not withdraw or revoke their tenders, consents or votes with respect to the Plan, except as otherwise expressly permitted pursuant to this Agreement; and

iii)    not:

    A.    oppose or object to the Plan or the solicitation or consummation of the Plan and the transactions contemplated by the Plan, whether directly or indirectly, so long as Plan confirmation is sought consistently with this Agreement;

    B.    join in or support any objection to the Plan or to the solicitation of the Plan;

    C.    initiate any legal proceedings that are inconsistent with or that would delay, prevent, frustrate or impede the approval, confirmation or consummation of the Plan, or otherwise commence any proceedings to oppose the Plan, or take any other action that is barred by or likely to frustrate this Agreement;

    D.    vote for, consent to, support or participate in the formulation of any other restructuring, any other transaction involving any plan of reorganization or liquidation (with the exception of the Plan) under applicable bankruptcy or insolvency laws, whether domestic or foreign, in respect of the Debtor or its affiliates, except as otherwise expressly contemplated pursuant to this Agreement;

    E.    directly or indirectly seek, solicit, or enter into any agreements relating to, any restructuring, plan of reorganization, proposal or offer of dissolution, winding up, liquidation, reorganization, merger, transaction, sale, disposition or restructuring of the Debtor or its affiliates (or substantially all of their assets or stock) other than the Plan or as otherwise set forth in this Agreement (any such plan or other action as described in clauses (4) and (5) immediately above, an "Alternative Plan"); or

    F.    enter into any letter of intent, memorandum of understanding or agreement in principle relating to any Alternative Plan.

## V.    Waiver and Release of Bankruptcy Claims

Upon the Plan Effective Date, and so long as this Agreement has not terminated, each of ARL and Landmark hereby (a) waives, relinquishes and releases (i) any and all Claims, of any kind or character it holds against the NECC Trustee, the Debtor or its estate, and (ii) any and all rights to distributions or recoveries, of any kind or

character, from the NECC bankruptcy estate on account of such Claims including, without limitation, pursuant to the Plan.

## VI.   Releases

a)   Subject only to the conditions set forth in Section VIII hereof, and without any further action by the Parties, ARL and the NECC Trustee each hereby fully, finally and completely, remises, releases, acquits and forever discharge Landmark of and from the Settled Claims; provided, however, that Landmark shall be so remised, released, acquitted and discharged of and from the Settled Claims solely in its capacity as ARL's insurer, and not in its capacity as an insurer for any other party.

b)   Subject only to the conditions set forth in Section VIII hereof, and without any further action by the Parties, the NECC Trustee hereby fully, finally and completely, remises, releases, acquits and forever discharges ARL of and from the Settled Claims.

c)   Subject only to the conditions set forth in Section VIII hereof, and without any further action by the Parties, Landmark hereby fully, finally and completely, remises, releases, acquits and forever discharges ARL, the NECC Trustee, the Debtor and its estate, the Plaintiffs Steering Committee, and the Creditors Committee of and from the Settled Claims.

d)   Subject only to the conditions set forth in Section VIII hereof, and without any further action by the Parties, ARL hereby fully, finally and completely, remises, releases, acquits and forever discharges the NECC Trustee, the Debtor and its estate, the Plaintiffs Steering Committee, and the Creditors Committee of and from the Settled Claims.

e)   Upon the satisfaction of the conditions set forth in Section VIII hereof, Landmark and ARL shall be deemed to have unconditionally assigned to the NECC Trustee any and all Claims that they may have against any Persons not a Party to this Agreement (including any claims for indemnification, contribution or subrogation) that are based upon or arise out of the Settled Claims.

f)   Nothing in this Section VI or any other provision of this Agreement is intended to, nor shall it be construed to, have any effect on, or constitute a release, waiver, assignment or discharge of, Landmark's rights or Claims for reinsurance in connection with the Policy and/or the Settled Claims, all of which are expressly reserved by Landmark.

g)   Nothing in this Section VI or any other provision of this Agreement is intended to, nor shall it be construed to, have any effect on, or constitute a release, waiver or discharge of, the Parties' respective rights, obligations, remedies or Claims created under this Agreement.

h)  Nothing in this Section VI or any other provision of this Agreement shall preclude ARL or Landmark from asserting a Claim against any Person to defend against that Person's assertion of a Settled Claim against ARL or Landmark in violation of the Plan Release and/or the Plan Injunction; provided, however, that (i) prior to asserting any such Claim, ARL and/or Landmark (as applicable) shall first seek to enforce the Plan Release and Plan Injunction against the Person(s) asserting the Settled Claim, (ii) any such Claim shall only be asserted in the form of a counterclaim or right of setoff, (iii) ARL and Landmark shall not seek an affirmative recovery in asserting any such Claim, and (iv) in no event shall ARL or Landmark assert such a Claim against the Debtor or its estate.

## VII. Representations and Warranties of the Parties

Each of the Parties separately represents and warrants to each of the other Parties as follows:

a)  It has the requisite power and authority to enter into this Agreement and to perform the obligations contemplated by this Agreement, subject only to the entry of the Confirmation Order;

b)  The execution and delivery of this Agreement, and the performance of the obligations contemplated by this Agreement, have been approved by duly authorized representatives of the Party, and by all other necessary actions of the Party, subject only to the entry of the Confirmation Order;

c)  It has expressly authorized its undersigned representative to execute this Agreement on the Party's behalf as its duly authorized agent;

d)  The making and performance of this Agreement will not violate any provision of the Party's respective articles of incorporation, membership agreement, charter or bylaws, where applicable;

e)  It has read the entire Agreement and knows the contents hereof; it understands that the terms hereof are contractual and not merely recitals; it has signed this Agreement of its own free act and will; and in making this Agreement, it has obtained the advice of its own legal counsel;

f)  It has not previously assigned or transferred, or purported to assign or transfer to any other Person, any right or Claim that is the subject matter of this Agreement;

g)  This Agreement has been negotiated, executed and delivered in good faith, with the assistance of its own legal counsel, pursuant to good faith arm's length negotiations, and for good and valuable consideration;

h)  ARL BioPharma Inc. represents that it has conducted good faith searches for any other policy of insurance other than the Policy which could provide coverage for the Settled Claims and that, as of this time, coverage has been denied under all insurance policies other than the Policy;

i)     ARL BioPharma Inc. is a corporation duly organized and in good standing under the laws of the State of Oklahoma; and

j)     ARL BioPharma Inc. represents that Thomas Kupiec, its chief executive officer, has executed a declaration under penalty of perjury certifying that ARL BioPharma Inc. d/b/a Analytical Research Laboratories did not make disbursements or transfers of assets to him or for his benefit to any entity or entities formed by him or at his direction that aggregated more than $4,000,000 from September 2012 through the end of 2012 and that ARL BioPharma, Inc. has made no such disbursements since January 1, 2013 other than disbursements that would be within the ordinary course of a subchapter S corporation's financial affairs, including, but not limited to, disbursements for reasonable salaries, bonuses, and benefits, distributions of profit, and distributions to fund payment of federal and state taxes incurred by the beneficiaries of the ARL Shareholder.

## VIII.   Conditions to Effectiveness of this Agreement.

Upon the Execution Date, this Agreement shall be binding upon the Parties in accordance with its terms; provided, however, that the obligations of the Trustee and the Debtor's estate under this Agreement are expressly subject to and conditioned upon the entry of the Confirmation Order; and provided, further, that the effectiveness and finality of the provisions of this Agreement concerning the Releases (Section VI) are expressly conditioned upon and subject to the following:

a.  The payment of the Settlement Amounts by Landmark and ARL, as applicable, timely and strictly in accordance with the terms and provisions of this Agreement; and

b.  The occurrence of the Plan Effective Date.

For the avoidance of doubt, and without diminishing any other condition to the effectiveness of this Agreement or the Plan, it is expressly understood and agreed by the Parties that the Plan Release and the Plan Injunction are material, non-waivable conditions to the effectiveness of this Agreement, and that they will also be made material, non-waivable conditions to the effectiveness of the Plan.

In the event that: (a) the Plan Effective Date does not occur within one (1) year from the Execution Date; (b) the Bankruptcy Court or other court of competent jurisdiction denies confirmation of the Plan and such denial is not cured by amending the Plan within four-hundred fifty (450) days from the Execution Date in a manner that is either (i) not materially inconsistent with this Agreement or (ii) otherwise agreed to by the Parties; or (c) the Plan is withdrawn, then this Agreement shall immediately terminate and be of no further force or effect (the date of such termination, the "Termination Date"). Upon the Termination Date, (a) the Settlement Amounts, exclusive of any and all interest accrued thereon, shall be transferred from the Escrow to Landmark and ARL Bio Pharma Inc. in the same proportion as the amounts they deposited into Escrow, (b) any and all interest accrued on the Settlement Amounts shall be, and shall be deemed to be, irrevocably and

indefeasibly paid to the NECC Trustee and the NECC Estate or the Tort Trustee, and (c) the Parties shall otherwise be restored to the same position they were in immediately prior to the Execution Date without waiver of any rights, claims, defenses or remedies that the Parties may have against each other. In no event shall any termination of this Agreement be deemed to release a Party from liability for damages to any of the other Parties to the Agreement on account of any breaches of this Agreement, and the Parties expressly reserve all rights, remedies, claims, and defenses on account of any such breach.

The Parties may agree and consent in a writing signed by the Parties to extend the Termination Date for a reasonable period of time in the sole discretion of the Parties.

IX.  **Other Provisions.**

a)  **Informed Consent and Knowledge.**  The Parties expressly warrant and represent that they have had the benefit of the professional advice of attorneys of their own choosing, that they are fully satisfied with that advice, and that they have not relied on any statement or representation of other Parties to this Agreement regarding the specific matters in dispute.   The Parties also represent and acknowledge that, in executing this Agreement, they do not rely and have not relied upon any representation or statement made by any other Party or any of their agents, representatives, or attorneys, with regard to the subject matter, basis or effect of this Agreement or otherwise, other than as specifically stated in this Agreement.

b)  **No Precedent.**  The Parties stipulate that they have entered into this Agreement only for their own business reasons based on the unique circumstances presented by the Settled Claims, and that this Agreement creates no binding legal or factual precedent for themselves or others in any future case.  This Agreement does not constitute an admission of coverage or noncoverage, and is not based upon language in the Policy.

c)  **Confidentiality.**  The Parties agree, subject to any disclosure obligations imposed by law, to hold this Agreement confidential and not to disclose the terms of this Agreement to any Person, other than the Creditors' Committee and the Plaintiffs' Steering Committee, until the Trustee files the Plan with the Bankruptcy Court; provided, however, that after the Execution Date and prior to the filing of the Plan, the Parties may inform the Bankruptcy Court and/or the MDL Court that they have entered into this Agreement; provided, further, however, that the Plan Proponents may disclose the fact that they have reached a settlement, the settlement amount, and such other terms of this Agreement as may be reasonably necessary or appropriate to implement the Agreement and in order to obtain approval of the Disclosure Statement.

d)  **Cooperation.**  Each Party agrees to take such steps and to execute any documents as may be reasonably necessary or proper to effectuate the purpose and intent of this Agreement and to preserve its validity and enforceability. In the event that

any action or proceeding of any type whatsoever is commenced or prosecuted by any Person not a Party hereto to invalidate, interpret or prevent the validation, enforcement or carrying out of all or any of the provisions of this Agreement, the Parties mutually agree, represent, warrant and covenant to cooperate in opposing such action or proceeding.

e)   **Entire Agreement.**  This Agreement sets forth the entire agreement between the Parties and fully supersedes any and all prior agreements and understandings, written or oral, between and among the Parties pertaining to the subject matter hereof.   Except as explicitly set forth in this Agreement, there are no representations, warranties, promises or inducements, whether oral, written, expressed, or implied, that in any way affect or condition the validity of this Agreement or alter or supplement its terms.   Any statements, promises or inducements, whether made by any Party or the agent of any Party, that are not contained in this Agreement shall not be valid or binding.  This Agreement shall have perpetual existence, except as otherwise provided herein.

f)   **Amendment/Modification.**  No amendment or modification of this Agreement shall be binding or enforceable unless in writing and signed by the Parties and, if required, approved by the Bankruptcy Court.

g)   **Construction.**  This Agreement is the jointly-drafted product of good faith arm's length negotiations between the Parties with the benefit of advice from their own respective legal counsel and each of them has had sufficient opportunities to propose and negotiate changes to this Agreement prior to its execution.  As such, no Party will claim that any ambiguity in this Agreement shall be construed against any other Party by reason of their identity as a drafter or insurer.  The following rules of construction shall also apply to this Agreement:

1.   The Recitals and Definitions to this Agreement are a material part of this Agreement having the same force and effect as a mutual representation, warranty and covenant of the Parties;

2.   Unless the context of this Agreement otherwise requires, (a) words of any gender include each other gender, and the word "it" may refer to a Person as the context requires; (b) words used in the singular or plural also include the plural or singular number, respectively; (c) the terms "hereof," "herein," "hereby" and derivative or similar words refer to this entire Agreement; (d) the words "include,' "includes" or "including" shall be deemed to be followed by the words "without limitation;" (e) the word "or" shall be disjunctive but not exclusive; (f) the words "any" or "all" shall mean "any and all";

3.   References to policies, agreements and other documents shall be deemed to include all subsequent amendments and other modifications thereto; and

4.   References to statutes shall include all regulations promulgated thereunder and references to statutes or regulations shall be construed as including all

15

statutory and regulatory provisions consolidating or amending or replacing the statute or regulation.

h)    **Applicable Law.**  This Agreement shall be interpreted and construed in accordance with the laws of the Commonwealth of Massachusetts, without regard to the conflict of laws of the Commonwealth of Massachusetts, except to the extent that any particular provision hereof may be governed by the Bankruptcy Code and Rules. Each of the Parties hereby irrevocably consents to the exclusive jurisdiction of the Bankruptcy Court with respect to any action to enforce the terms and provisions of this Agreement, and expressly waives any right to commence any such action in any other forum (unless the Bankruptcy Court does not have or refuses to exercise such jurisdiction). This Agreement is intended to be and shall have the effect of a document executed under seal in accordance with the laws of the Commonwealth of Massachusetts.

i)    **No Admissions/Not Evidentiary.**  This Agreement is not and shall not be construed as an admission or concession of coverage, responsibility, liability, non-liability or wrongdoing by any Party to this Agreement. No part of this Agreement may be used in any action or proceeding as evidence of the rights, duties or obligations of Landmark under the Policy or otherwise.

j)    **Successors and Assigns.**  This Agreement shall be binding upon and inure to the benefit of the Parties hereto, and their respective successors, permissible assigns, agents, employees and legal representatives, including, without limitation, NECC and its bankruptcy estate, any trust or trustee, responsible Person, estate administrator, representative or similar Person appointed for NECC in connection with the Bankruptcy Case, the Plan or any subsequent Chapter 7 case. Except as expressly provided in this Agreement, neither this Agreement nor any of the rights and obligations set forth herein shall be assigned by any Party without the prior written consent of the other Parties, which consent shall not be unreasonably withheld.

k)    **No Rights of Third Parties.**  All Persons expressly included within the definitions of "ARL," "Landmark" and "NECC Trustee," are intended beneficiaries of this Agreement. The Parties agree that, except as set forth in the prior sentence or otherwise expressly set forth in this Agreement, there are no intended third party beneficiaries to this Agreement.

l)    **Enforcement of Agreement.**  The Parties hereby acknowledge that money damages would be both incalculable and an insufficient remedy for any breach of any Party's obligations under this Agreement and that such breach shall cause the non-breaching Parties irreparable harm. Accordingly, the Parties agree that in the event of any breach or threatened breach of any Party's obligations under this Agreement, the Parties, in addition to any other remedies at law or in equity that they may have, shall be entitled, without the requirement of posting a bond or other security, to equitable relief, including injunctive relief and specific performance.

16

m)   **Captions and Headings**.  Captions and headings to paragraphs or sections in this Agreement are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof.

n)   **Notice**. Unless another Person is designated in writing for receipt of notices hereunder, notices to the respective Parties shall be sent to the following Persons to the extent so designated below.  All notices shall be sent via email <u>and</u> by either (i) overnight courier or (ii) fax, and shall be deemed effective upon receipt.

<u>As to the NECC Trustee</u>:
Paul D. Moore
Duane Morris LLP
100 High Street Ste 2400
Boston, MA 02110
Tel: 857-488-4200
Fax: 857-401-3057
Email: pdmoore@duanemorris.com

<u>With Copy To</u>:
Michael R. Gottfried, Esq.
Duane Morris LLP
100 High Street Ste 2400
Boston, MA 02110
Tel: 857-488-4200
Fax: 857-401-3057
Email: mrgottfried@duanemorris.com

<u>As To Landmark</u>:
Landmark Insurance Company
Robert Orr
Dylan E. Gist
RSUI Group, Inc.
945 E. Paces Ferry Road, Ste. 1800
Atlanta, GA 30326

<u>With Copy To</u>:
J. Richard Harmon, Esq.
THOMPSON COE COUSINS & IRONS, LLP
700 N. Pearl Street, 25th Floor
Dallas, TX  75201
Tel:  214-871-8227
Fax:  214-871-8209
Email: rharmon@thompsoncoe.com

As to ARL:
Thomas Kupiec
Greg Thomas
ARL BioPharma Inc.
840 Research Parkway, Ste. 546
Oklahoma City, OK 73104
Toll Free: 800-393-1595
Phone: 405-271-1144
Fax: 405-271-1174


With Copy To:
Robert J. Haupt, Esq.
Managing Member
National Litigation Law Group, PLLC
42 Shepherd Center
2401 Northwest Twenty-Third Street
Oklahoma City, Oklahoma  73107
Tel: 405-429-7610
Fax: 405-835-6244
rhaupt@nationlit.com


and

Stephen W. Elliott, Esq.
Corporate Tower, Thirteenth Floor
101 North Robinson Avenue
Oklahoma City, Oklahoma  73102
Tel: 405-235-4100
Fax: 405.235.4133
swelliott@phillipsmurrah.com

and

Kenneth B. Walton, Esq.
Kristen Ragosta, Esq.
Donovan Hatem LLP
Exchange Place
53 State Street, 8th Fl.
Boston, MA 02109
Tel: 617-406-4500
Fax: 617-406-4501
kwalton@donovanhatem.com
kragosta@ donovanhatem.com

o) **Execution and Delivery.**  This Agreement may be executed in one or more counterparts, all of which together shall constitute one and the same instrument. This Agreement may be executed and delivered by email and facsimile, which shall be deemed the same as originals.

p) **Statutes of Limitations**.  The Parties agree and consent that all statutes of limitations, statutes of repose, time limited laches or estoppel defenses or any other state law pre-suit requirements, as to any and all Claims and causes of action among the Parties or against any of the Parties by a person who has a NECC Claim and who filed a timely proof of claim in the Bankruptcy Case pertaining to, concerning or related to NECC and/or its products, that had not expired by operation of applicable local, state or federal law prior to September 5, 2013 shall be tolled through and including the earlier of (i) the date of the Plan Confirmation Order becomes a Final Order or (ii) sixty (60) days following the Termination Date.

**[Signature Page Follows]**

**IN WITNESS WHEREOF**, and intending to be legally bound hereby, the undersigned Parties have each approved and executed this Agreement.

**New England Compounding Pharmacy, Inc.**
**d/b/a New England Compounding Center**

By:  Paul D. Moore, as Chapter 11 Trustee and not individually
Date:  December 4, 2014

**Landmark American Insurance Company**

By:  Dylan E. Gist
Date:  December ___, 2014

**ARL BioPharma Inc. d/b/a Analytical Research Laboratories**

By:  Thomas Kupiec, its President
Dated:  December ___, 2014

**IN WITNESS WHEREOF**, and intending to be legally bound hereby, the undersigned Parties have each approved and executed this Agreement.

**New England Compounding Pharmacy, Inc.**
**d/b/a New England Compounding Center**

_____

By:  Paul D. Moore, as Chapter 11 Trustee and not individually
Date:  December ___, 2014

**Landmark American Insurance Company**

_____

By:  Dylan E. Gist
Date:  December ___, 2014

**ARL BioPharma Inc. d/b/a Analytical Research Laboratories**

_Thomas C. Kupiec_

By:  Thomas Kupiec, its President
Dated:  December ___, 2014

20

**IN WITNESS WHEREOF,** and intending to be legally bound hereby, the undersigned Parties have each approved and executed this Agreement.

New England Compounding Pharmacy, Inc.
 d/b/a New England Compounding Center


_____

By:  Paul D. Moore, as Chapter 11 Trustee and not individually
Date:  December ____, 2014


Landmark American Insurance Company


_____

By:  Dylan E. Gist
Date:  December  5 , 2014


ARL BioPharma Inc. d/b/a Analytical Research Laboratories


_____

By:  Thomas Kupiec, its President
Dated:  December  4 , 2014

20

## ADDENDUM TO SETTLEMENT AND RELEASE AGREEMENT

This Addendum (the "Addendum") to the *Settlement and Release Agreement* dated as of December 4, 2014 (the "Agreement") is made as of December 4, 2014 by:

> (i) the Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 case of New England Compounding Pharmacy, Inc., d/b/a New England Compounding Center, Case No. 12-19882, pending in the United States Bankruptcy Court for the District of Massachusetts (the "Bankruptcy Court"); and

> (ii) the Plaintiffs' Steering Committee (the "PSC") appointed in the multi-district litigation captioned *In re New England Compounding Pharmacy Cases Litigation*, MDL No. 2419, Case No. 13-cv-02419 (D. Mass.).

Capitalized terms not defined herein shall have the meanings assigned to them in Section 1 of the Agreement.

1.      Each of the Committee and the PSC acknowledges that it has had a sufficient opportunity to discuss and review the Agreement with its counsel, has in fact done so, and fully understands the terms, conditions, and agreements set forth therein.

2.      Each of the Committee and the PSC supports the Agreement and the compromise and settlement embodied therein.

3.      Each of the Committee and the PSC (i) supports, (ii) agrees to take reasonable steps to secure, and (iii) agrees not to oppose or object to the Bankruptcy Court's confirmation of a Plan that incorporates and effectuates the terms and provisions of the Agreement in all material respects. Notwithstanding the foregoing, each of the Committee, the PSC, and their members reserve all rights in connection with any aspect of the Plan that is not the subject of the Agreement, including, without limitation, the right to object to and/or negotiate provisions of the Plan that are not the subject of the Agreement.

4.      Nothing in this Addendum is intended to or does modify the Agreement in any respect.

*Signature Page to Addendum to Settlement and Release Agreement*

**THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF NEW
ENGLAND COMPOUNDING PHARMACY,
INC., BY AND THROUGH ITS COUNSEL
AND CO-CHAIRS**

**BROWN RUDNICK LLP**

By: *David J. Molton / KAT*
David J. Molton, Esq. (admitted *pro hac vice*)
Daniel J. Saval, Esq. (BBO #653906)
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801
dmolton@brownrudnick.com
dsaval@brownrudnick.com

and

William R. Baldiga, Esq. (BBO #542125)
Kiersten A. Taylor, Esq. (BBO #681906)
One Financial Center
Boston, Massachusetts 02111
Telephone: (617) 856-8200
Facsimile: (617) 856-8201
wbaldiga@brownrudnick.com
ktaylor@brownrudnick.com

*Counsel to the Official Committee of Unsecured
Creditors of New England Compounding
Pharmacy, Inc.*

2

**ANDREWS & THORNTON**

By: _____
Anne Andrews, Esq.
John C. Thornton, Esq.
Karren Schaeffer, Esq.
2 Corporate Park, Ste. 110
Irvine, CA 92606
Telephone: 949 748-1000
aa@andrewsthornton.com
jct@andrewsthornton.com
kschaeffer@andrewsthornton.com

*Counsel for Official Committee of Unsecured
Creditors of New England Compounding
Pharmacy, Inc. Member and Co-Chair, Katrina
Eldreth, obo Ari Gomez*

**COHEN PLACITELLA & ROTH P.C.**

By: _____
Michael Coren, Esq.
Harry Roth, Esq.
Two Commerce Square
2001 Market Street, Suite 2900
Philadelphia, PA 19103
Telephone: 215 567-3500
mcoren@cprlaw.com
hroth@cprlaw.com

*Counsel for Official Committee of Unsecured
Creditors of New England Compounding
Pharmacy, Inc. Member and Co-Chair,
Meghan Handy*

**ANDREWS & THORNTON**

By: _____
Anne Andrews, Esq.
John C. Thornton, Esq.
Karren Schaeffer, Esq.
2 Corporate Park, Ste. 110
Irvine, CA 92606
Telephone: 949 748-1000
aa@andrewsthornton.com
jct@andrewsthornton.com
kschaeffer@andrewsthornton.com

*Counsel for Official Committee of Unsecured
Creditors of New England Compounding
Pharmacy, Inc. Member and Co-Chair, Katrina
Eldreth, obo Ari Gomez*

**COHEN PLACITELLA & ROTH P.C.**

By: _____
Michael Coren, Esq.
Harry Roth, Esq.
Two Commerce Square
2001 Market Street, Suite 2900
Philadelphia, PA 19103
Telephone: 215 567-3500
mcoren@cprlaw.com
hroth@cprlaw.com

*Counsel for Official Committee of Unsecured
Creditors of New England Compounding
Pharmacy, Inc. Member and Co-Chair,
Meghan Handy*

THE PLAINTIFF STEERING COMMITTEE,
BY AND THROUGH ITS LEAD COUNSEL

HAGENS BERMAN SOBOL SHAPIRO LLP

By: _____
Thomas M. Sobol, Esq.
Kristen Johnson, Esq.
55 Cambridge Parkway, Suite 301
Cambridge, MA  02142
(617) 482-3700
tom@hbsslaw.com
kristenjp@hbsslaw.com

*Plaintiffs' Lead Counsel, for the PSC*

61736988 v5-WorksiteUS-030764/0001

4