## EXHIBIT 7

**Victory Settlement Agreement**

## SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement (the "Agreement") is made and entered by, between and among the NECC Trustee (as defined below), Victory (as defined below), Netherlands Insurance (as defined below) and Peerless Insurance (as defined below).

## RECITALS

WHEREAS, on December 21, 2012, NECC (as defined below) filed a voluntary petition under the Bankruptcy Code (as defined below) in the Bankruptcy Court (as defined below), thereby commencing the Bankruptcy Case (as defined below);

WHEREAS, on January 18, 2013, the UST (as defined below) appointed the Creditors' Committee (as defined below);

WHEREAS, upon application by the UST, Paul D. Moore was appointed to serve as chapter 11 trustee for NECC's estate on or about January 25, 2013, with approval of the Bankruptcy Court;

WHEREAS, on February 12, 2013, the Judicial Panel on Multidistrict Litigation entered an order transferring certain litigation actions against NECC and other third-parties to the MDL Court (as defined below) for consolidated pretrial proceedings;

WHEREAS, on April 9, 2013, the MDL Court entered an order establishing the seven-attorney Plaintiffs' Steering Committee (as defined below) to organize, simplify, and streamline the handling of the MDL Proceeding (as defined below) on behalf of all plaintiffs to actions therein, and appointed Thomas Sobol of Hagens Berman Sobol Shapiro LLP as lead counsel for the Plaintiffs' Steering Committee;

WHEREAS, NECC has been named as a defendant in numerous lawsuits asserting Claims (as defined below), and may have additional Claims made against it, seeking damages for injuries arising from certain drugs and other products compounded at and distributed by NECC;

WHEREAS, the Insurers (as defined below), issued, respectively, the Netherlands Policy and the Peerless Policy (each as defined below) to Victory and certain of its affiliates as named insureds;

WHEREAS, the NECC Trustee, Victory and the Insurers may have Claims against each other and others as a result of the NECC Claims and based upon subrogation or contractual or equitable indemnification or contribution or other theories;

WHEREAS, on January 15, 2014, Victory filed proofs of claim in the Bankruptcy Case, asserting contingent and unliquidated Claims against NECC arising from NECC's alleged obligations to Victory as a result of the NECC Claims, including, without limitation, NECC's alleged indemnity obligations to Victory (the "Victory Claims");

WHEREAS, Victory and the Insurers have engaged in good faith settlement discussions among themselves and with the NECC Trustee, the Creditors' Committee and the Plaintiffs'

Steering Committee in an effort to fully and finally compromise and resolve Victory's potential liability and the Insurers' coverage obligations for the NECC Claims;

WHEREAS, Victory, the Insurers and the NECC Trustee believe that, if their disputes and other remaining issues are not resolved now, future proceedings would be protracted and expensive, involve complex issues of liability and/or damages, and involve substantial expense and the uncertainties and risks inherent in litigation; and

WHEREAS, the Creditors' Committee and the Plaintiffs' Steering Committee support this Agreement and the compromise and settlement embodied therein, as reflected in the *Addendum to Settlement and Release Agreement* attached hereto.

NOW, THEREFORE, in consideration of the mutual covenants contained herein and other good and valuable consideration, the adequacy and sufficiency of which are hereby acknowledged by the Parties, and intending to be legally bound hereby, the Parties agree as follows:

I.      **Definitions.** The following definitions shall apply to the capitalized terms used in this Agreement. The word "including" shall be deemed to mean "including without limitation."

a.  **"Agreement"** shall have the meaning set forth above in the preamble.

b.  **"Bankruptcy Case"** means the Chapter 11 case filed by NECC in the Bankruptcy Court captioned as *In Re: New England Compounding Pharmacy, Inc.,* Case No. 12-19882 (HJB).

c.  "**Bankruptcy Code**" means Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as it may be amended.

d.  **"Bankruptcy Court"** means the United States Bankruptcy Court for the District of Massachusetts, Eastern Division.

e.  **"Bankruptcy Rules"** means collectively, the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court.

f.  "**Claim**" means any past, present or future claim, demand, action, cause of action, suit or liability of any kind or nature whatsoever (including claims for equitable or contractual indemnification or contribution), whether at law, or in equity, or pursuant to a statute, rule or regulation, known or unknown, asserted or unasserted, anticipated or unanticipated, accrued or unaccrued, fixed or contingent, which has been asserted, or that may in the future be asserted, by or on behalf of any Person, whether seeking damages (including compensatory, punitive or exemplary damages) or equitable, mandatory, injunctive or any other type of relief, including cross-claims, counter-claims, third-party claims, suits, lawsuits, administrative proceedings, notices of liability or potential liability (including Potentially Responsible Party or "PRP" notices), arbitrations, actions, rights, requests, demands for payment, causes of action, orders, or judgments, including without limitation, any "claim" as that term is defined in the Bankruptcy Code, 11 U.S.C. § 101(5).

2

g.  **"Claimants"** mean any Person asserting an NECC Claim and/or a Settled Claim against NECC, Victory and/or any of the Insurers.

h.  **"Confirmation Order"** means the order confirming the Plan which (i) authorizes and approves this Agreement (as incorporated into the Plan) and (ii) includes the Plan Release and the Plan Injunction, without any material changes or modifications.

i.  **"Creditors' Committee"** means the official committee of unsecured creditors appointed in the Bankruptcy Case and any of its retained legal counsel or other professionals.

j.  **"Direct Action Claim"** means any Claim asserted or that could be asserted by any Person against any Insurer that arises from (i) the activities of Victory that give rise to the Settled Claims under the Policies, or (ii) Victory's alleged interests in or rights to coverage under the Policies, whether arising by contract, in tort or under the laws of any jurisdiction, including any statute that gives a third party a direct cause of action against an insurer.

k.  **"Escrow"** means the interest-bearing escrow account to be established by the NECC Trustee at an FDIC insured bank listed on the United States Trustee's List of Authorized Depositories for Bankruptcy Cases filed in Region One, dated July 26, 2013, to hold the Settlement Amount pending the satisfaction of all conditions to the effectiveness of this Agreement set forth in Section VII hereof, or the Termination Date of this Agreement, whichever comes first.

l.  **"Execution Date"** means the first date upon which all of the following have occurred:  (1) the NECC Trustee, Victory, Netherlands Insurance and Peerless Insurance have executed this Agreement; and (2) a complete copy of the Agreement has been circulated to all Parties.

m.  **"Extra-Contractual Claim"** means any Claim asserted or that could be asserted by any Person against any of the Insurers with respect to any Policies seeking any type of relief, including compensatory, exemplary or punitive damages on account of alleged bad faith; failure to act in good faith; violation of any duty of good faith and fair dealing; violation of any unfair claims practices act or similar statute, regulation or code; or any other similar type of alleged misconduct or any other act or omission of any Insurer of any type for which the Person seeks relief other than coverage or benefits directly provided under the Policies.

n.  **"Final Order"** means an order or judgment of the Bankruptcy Court (or, only if the Bankruptcy Court determines that it lacks jurisdiction or authority to enter final judgment confirming all or any portion of the Plan, the United States District Court) entered by the clerk on the case docket which has not been reversed, vacated or stayed and as to which (i) the time to appeal, petition for certiorari or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari or other proceeding for a new trial, reargument or rehearing shall then be pending, or (ii) if an appeal, writ of certiorari, new trial, reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court (or United States District Court) shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order,

and the time to take any further appeal, petition for certiorari or move for a new trial, reargument or rehearing shall have expired.

o. **"Indemnity Claims"** means any and all Claims asserted or that could be asserted by any Person for indemnification, contribution, subrogation, or any other Claim derivative of that Person's liability to any other Person based upon, arising out of or in any way related to the administration to the other Person of injectable methylpredinisolone acetate, cardioplegia solutions, or any other drugs or products compounded, produced, sold or distributed by NECC.

p. **"Insurance Coverage Claim"** means any Claim for insurance coverage under the Policies, whether direct, indirect or derivative, for defense, indemnity, contribution or otherwise.

q. **"Insurers"** means, collectively, Netherlands Insurance and Peerless Insurance.

r. **"MDL Court"** means the United States District Court for the District of Massachusetts (at Boston) presiding over the MDL Proceeding.

s. **"MDL Proceeding"** means the matter entitled *In Re: New England Compounding Pharmacy, Inc. Product Liability Litigation*, MDL Docket No. 2419, Master File No. 1: 13-MD-2419.

t. **"Medicare Act"** means the Medicare Secondary Payer Act, codified at 42 U.S.C. § 1395y (2010), and the regulations promulgated thereunder, codified at 42 C.F.R. § 411.1 *et seq.*

u. **"NECC"** or **"Debtor"** means the debtor New England Compounding Pharmacy, Inc. d/b/a New England Compounding Center, and any of its directors, officers, members, shareholders, owners, principals, employees, attorneys, predecessors, successors and assigns, each acting in their respective capacity as such.

v. **"NECC Claims"** means any and all Claims asserted or that could be asserted by any Person for personal injury, tort, wrongful death, medical monitoring, and any other economic or noneconomic injury or damage, based upon, arising out of or in any way related to the administration to Persons of injectable methylpredinisolone acetate, cardioplegia solutions, or any other drugs or products compounded, produced, sold or distributed by NECC.

w. **"NECC Tort Trust"** means the trust created by the Plan which will be funded by assets of the NECC estate, including, *inter alia*, the Settlement Amount from the Insurers on behalf of themselves and Victory, and which establishes procedures for the resolution and payment of all NECC Claims, including NECC Claims against Victory and/or any of the Insurers.

x. **"NECC Trustee"** means Paul D. Moore solely in his capacity as the Chapter 11 Trustee for debtor New England Compounding Pharmacy, Inc. d/b/a New England Compounding Center and not individually, and any retained attorneys or other professionals acting on his behalf.

y. **"Netherlands Insurance"** means The Netherlands Insurance Company and all of its directors, officers, members, shareholders, owners, principals, employees, attorneys,

predecessors, successors and assigns, each acting in their respective capacity as such, and Liberty Mutual Insurance.

z. **"Netherlands Policy"** means the Commercial General Liability Insurance Policy issued by Netherlands Insurance to Victory for the policy period of 7/2/12 – 7/2/13 (No. CBP8690539), and any other known or unknown insurance policies issued by Netherlands Insurance to Victory prior to the Execution Date.

aa. **"Parties"** means, collectively, the NECC Trustee, Victory, Netherlands Insurance and Peerless Insurance.

bb. **"Peerless Insurance"** means Peerless Insurance Company and all of its directors, officers, members, shareholders, owners, principals, employees, attorneys, predecessors, successors and assigns, each acting in their respective capacity as such, and Liberty Mutual Insurance.

cc. **"Peerless Policy"** means the Commercial Umbrella Liability Insurance Policy issued by Peerless Insurance to Victory for the policy period of 7/2/12 – 7/2/13 (No. CU8691139), and any other known or unknown insurance policies issued by Peerless Insurance to Victory prior to the Execution Date.

dd. **"Person"** means an individual, a corporation, a partnership, an association, a limited liability company, a proprietorship, a joint venture, a trust, an estate, trustee, executor, administrator, legal representative, and any other entity or organization.

ee. **"Plaintiffs' Steering Committee"** means the attorneys identified in MDL Order No. 2: Order Appointing Lead Counsel, Federal-State Liaison Counsel and Plaintiffs' Steering Committee and such committee's designated counsel.

ff. **"Plan"** means the Chapter 11 plan of reorganization or liquidation for NECC prepared, filed, noticed and solicited by the NECC Trustee, at his own cost and expense, which is consistent with, incorporates and effectuates the terms and provisions of this Agreement without any material changes or modifications with respect to the rights of the Parties hereto, and which includes, incorporates and implements the NECC Tort Trust, the Plan Release and the Plan Injunction.

gg. **"Plan Effective Date"** means the later of (i) the first business day following (a) fourteen (14) days after the Bankruptcy Court's entry of the Confirmation Order, provided that the Confirmation Order is not subject to a stay by any court of competent jurisdiction as of such date, or (b) only if the Bankruptcy Court determines that it lacks jurisdiction or authority to enter final judgment confirming all or any portion of the Plan, then thirty (30) days after the United States District Court's entry of the Confirmation Order, provided that the Confirmation Order is not subject to a stay by any court of competent jurisdiction as of such date, and (ii) the first business day on which all other conditions to the effective date of the Plan as set forth therein have been satisfied or waived.  In the event of a stay of (a) the Bankruptcy Court's Confirmation Order granted within fourteen (14) days of the entry of that Order or (b) the United States District Court's Confirmation Order granted within thirty (30) days of the entry of that order, the Plan Effective Date means the later of (i) the first business day after the date the stay is lifted or terminated, and (ii) the first business day on which all

other conditions to the effective date of the Plan as set forth therein have been satisfied or waived.

hh. **"Plan Injunction"** means the permanent injunction forever barring and enjoining all Persons from commencing, continuing or prosecuting any Settled Claims against Victory and/or the Insurers, as incorporated in the Plan and Confirmation Order.

ii. **"Plan Release"** means a release to be included in the Plan and Confirmation Order pursuant to which the Settled Claims are deemed to have been waived and released by any and all Claimants as to Victory and the Insurers.

jj. **"Policies"** means, collectively, the Netherlands Policy and the Peerless Insurance Policy.

kk. **"Releasing Parties"** means the NECC Trustee, the Debtor and its estate, the Plaintiffs' Steering Committee, the Creditors' Committee, Victory, Netherlands Insurance, and Peerless Insurance.

ll. **"Settlement Amount"** means the sum of $5,500,000.00 (USD) to be paid by the Insurers on behalf of themselves and Victory.

mm. **"Settled Claims"** means any and all Claims asserted or that could be asserted by or on behalf of any Person in any capacity whatsoever against any of the Releasing Parties based upon, arising out of or in any way relating to (i) the NECC Claims, (ii) the Policies, including, but not limited to, Insurance Coverage Claims, Direct Action Claims and/or Extra-Contractual Claims, and/or (iii) the Indemnity Claims.

nn. **"Termination Date"** shall have the meaning set forth in Section VII hereof.

oo. **"UST"** means the Office of the United States Trustee.

pp. **"Victory"** means Victory Mechanical Services, Inc., Victory Heating & Air Conditioning Co., Inc., Victory LLC, Victory Heating and Air Conditioning Business Trust, Victory Mechanical Services Business Trust, and all of their respective directors, officers, members, shareholders, owners, principals, employees, attorneys, predecessors, successors and assigns, each acting in their respective capacity as such.

qq. **"Victory Claims"** shall have the meaning set forth in the Recitals.

## II.     Payment of Settlement Amount

a.     On or before five (5) days after entry of the Confirmation Order, the Insurers on behalf of themselves and Victory shall pay (or cause to be paid) the Settlement Amount in immediately available funds to the NECC Trustee and the NECC estate in accordance with the wire transfer instructions to be supplied by the NECC Trustee to Victory and the Insurers on or before the date of entry of the Confirmation Order. Until the earlier to occur of the Plan Effective Date or the Termination Date, the NECC Trustee shall hold the Settlement Amount in the Escrow separate and apart from any other assets of the Debtor's estate.

b.    Subject to the provisions of subparagraph c immediately below, at 5:00 p.m. Prevailing Eastern Time on the Plan Effective Date, the Settlement Amount, together with all accrued interest thereon, shall be, and shall be deemed, irrevocably and indefeasibly paid to the NECC Trustee, and shall be used by the NECC Trustee for payment of the costs and expenses of administration of the Bankruptcy Case and distribution to creditors under the Plan (including, but not limited to, pursuant to the NECC Tort Trust).

c.    In the event that an appeal of the Confirmation Order has been taken, the Insurers shall have the option to defer the transfer of the Settlement Amount, together with all accrued interest thereon, from the Escrow to the NECC Trustee as provided in Section II.b. above, subject to the following terms and conditions:

   i.    The Insurers must notify the NECC Trustee of their election to defer the transfer in writing electronically transmitted to the NECC Trustee before 5:00 p.m. Prevailing Eastern Time on the Plan Effective Date.

   ii.    The deferral period will end on either (i) the later of (a) the first business day following the date on which the Confirmation Order becomes a Final Order, and (b) the first business day on which all other conditions to the effective date of the Plan as set forth therein have been satisfied or waived, or (ii) the day the Insurers elect to authorize the transfer of the Settlement Amount from the Escrow to the NECC Trustee pursuant to Section II.c.iv. below.

   iii.    For the duration of the deferral period, the Insurers will pay interest on the Settlement Amount as follows:  (a) the interest rate will be one percentage point above the Prime Rate as reported in the Wall Street Journal, and the interest rate will fluctuate as the Prime Rate fluctuates; (b) the minimum amount to be paid by the Insurers in connection with their election to defer the transfer of the Settlement Amount will be $150,000, which minimum amount will be due even if it exceeds the interest computation using the rate stated in clause (a) of this paragraph; and (c) the maximum amount to be paid by the Insurers in connection with their election to defer the transfer of the Settlement Amount will be $350,000, which amount will be the cap on the Insurer's payment even if it is less than the interest computation using the rate stated in subparagraph (a).  Payment will be due at the end of the deferral period; provided, however, if the Termination Date occurs, the Insurers shall pay the Trustee $150,000 on that date and shall have no other payment obligation under Section II.c.

   iv.    The Insurers may, at any time, elect to authorize the transfer of the Settlement Amount from the Escrow to the NECC Trustee, notwithstanding any election to defer such transfer under this Section II.c.

d.    The Parties intend and agree that the Settlement Amount shall constitute a material part of a fund to be ultimately distributed to personal injury Claimants

who have Claims against, and any other creditors of, the Debtor under the Plan and, accordingly, shall be protected from collateral attack and reach by the Debtor's creditors or any other Persons whatsoever; and that such funds shall be therefore held in a legal manner that protects such funds from the reach of others to the full extent permitted by law.  The Insurers shall be jointly obligated to pay the entire Settlement Amount pursuant to this Section II.

**III.**     **Bankruptcy Related Obligations**

a.     As soon as reasonably practicable after the Execution Date, the NECC Trustee shall prepare, file and solicit (following approval of a disclosure statement) approval and confirmation of the Plan and the entry of the Confirmation Order that (i) approves this Agreement, and (ii) includes the terms and provisions of the Plan Release and the Plan Injunction, without any material changes or modifications.

b.     Neither Victory nor either of the Insurers will have any responsibility or liability for (a) the creation, existence, operation or administration of the NECC Tort Trust or (b) any reimbursement and reporting obligations under the Medicare Act for any payment of NECC Claims.

c.     The Plan, the Confirmation Order and any other related documents,  pleadings, notices or orders (including any disclosure statement), insofar as they effectuate or relate to the rights, benefits and obligations provided for by this Agreement, shall each be in a form that is reasonably satisfactory to Victory and each Insurer, and shall each be provided to Victory and each Insurer in draft for review and comment a reasonable time prior to their filing with the Bankruptcy Court or the MDL Court or otherwise being publicly disclosed.

d.     Each of Victory and the Insurers hereby agrees with respect to any Plan (as defined herein) to:

    i.     so long as its vote has been properly solicited pursuant to sections 1125 and 1126 of the Bankruptcy Code, timely vote any and all Claims (to the extent filed) that it is entitled to vote, now or hereafter beneficially owned by such Party (subject to Section IV hereof), to accept the Plan in accordance with the applicable procedures set forth in the solicitation materials accompanying the Plan, and timely return a duly executed ballot in connection therewith;

    ii.     not withdraw or revoke its tender, consent or vote with respect to the Plan, except as otherwise expressly permitted pursuant to this Agreement; and

    iii.     not:

        1.     oppose or object to the Plan or the solicitation or consummation of the Plan and the transactions contemplated by the Plan, whether directly or indirectly;

8

2. join in or support any objection to the Plan or to the solicitation of the Plan;

3. initiate any legal proceedings that are inconsistent with or that would delay, prevent, frustrate or impede the approval, confirmation or consummation of the Plan, or otherwise commence any proceedings to oppose the Plan, or take any other action that is barred by or likely to frustrate this Agreement;

4. vote for, consent to, support or participate in the formulation of any other restructuring or settlement of Claims, any other transaction involving any plan of reorganization or liquidation (with the exception of the Plan) under applicable bankruptcy or insolvency laws, whether domestic or foreign, in respect of the Debtor or its affiliates, except as otherwise expressly contemplated pursuant to this Agreement;

5. directly or indirectly seek, solicit, or enter into any agreements relating to, any restructuring, plan of reorganization, proposal or offer of dissolution, winding up, liquidation, reorganization, merger, transaction, sale, disposition or restructuring of the Debtor or its affiliates (or substantially all of their assets or stock) other than the Plan or as otherwise set forth in this Agreement (any such plan or other action as described in clauses (4) and (5) immediately above, an "Alternative Plan"); or

6. enter into any letter of intent, memorandum of understanding or agreement in principle relating to any Alternative Plan.

e. If any Claimant files a lawsuit or initiates an alternative dispute resolution proceeding asserting an NECC Claim or an Indemnity Claim against Victory and/or either of the Insurers between the Execution Date and the Plan Effective Date, the NECC Trustee will seek to obtain from the Bankruptcy Court an order staying or enjoining such lawsuit or alternative dispute resolution proceeding until the Plan Effective Date.

f. In the event of any appeals of the Confirmation Order, the NECC Trustee will use commercially reasonable efforts to obtain dismissal of the appeals as equitably moot.

## IV.   Waiver and Release of Bankruptcy Claims

Upon the Plan Effective Date, and so long as this Agreement has not terminated, each of Victory and the Insurers hereby (a) waives, relinquishes and releases (i) any and all Claims (whether or not a proof of claim is filed) of any kind or character it holds against the Debtor or its estate (including, without limitation, the Victory Claims), and (ii) any and all rights to distributions or recoveries, of any kind or character, on account of such Claims including, without limitation, pursuant to the Plan.

9

**V.**     **Releases**

a.     Subject only to the conditions set forth in Section VII hereof, and without any further action by the Parties, each of the Releasing Parties hereby fully, finally and completely, remises, releases, acquits and forever discharges every other of the Releasing Parties of and from the Settled Claims.

b.     Upon the satisfaction of the conditions set forth in Section VII hereof, Victory and each Insurer shall be deemed to have unconditionally assigned to the NECC Trustee any and all Claims that they may have between them and against any Persons not a Party to this Agreement (including any claims for indemnification, contribution or subrogation) that are based upon or arise out of the Settled Claims.

c.     Nothing in this Section V or any other provision of this Agreement is intended to, nor shall it be construed to, have any effect on, or constitute a release, waiver, assignment or discharge of, each Insurer's rights or Claims for reinsurance in connection with the Policies and/or the Settled Claims, all of which are expressly reserved by the Insurers.

d.     Nothing in this Section V or any other provision of this Agreement is intended to, nor shall it be construed to, have any effect on, or constitute a release, waiver or discharge of, the Parties' respective rights, obligations, remedies or Claims created under this Agreement.

**VI.**     **Representations and Warranties of the Parties**

Each of the Parties separately represents and warrants to each of the other Parties as follows:

a.     It has the requisite power and authority to enter into this Agreement and to perform the obligations contemplated by this Agreement, subject only to the entry of the Confirmation Order;

b.     The execution and delivery of this Agreement, and the performance of the obligations contemplated by this Agreement, have been approved by duly authorized representatives of the Party, and by all other necessary actions of the Party, subject only to the entry of the Confirmation Order;

c.     It has expressly authorized its undersigned representative to execute this Agreement on the Party's behalf as its duly authorized agent;

d.     The making and performance of this Agreement will not violate any provision of the Party's respective articles of incorporation, membership agreement, charter or bylaws, where applicable;

e.     It has read the entire Agreement and knows the contents hereof; it understands that the terms hereof are contractual and not merely recitals; it has signed this

Agreement of its own free act and will; and in making this Agreement, it has obtained the advice of its own legal counsel;

f.   It has not previously assigned or transferred, or purported to assign or transfer to any other Person, any right or Claim that is the subject matter of this Agreement;

g.   This Agreement has been negotiated, executed and delivered in good faith, with the assistance of its own legal counsel, pursuant to good faith arm's length negotiations, and for good and valuable consideration; and

h.   As to Victory and the Insurers, each has conducted diligent good faith searches for any insurance policies that may have been issued by the Insurers that provide insurance coverage and/or other benefits to Victory for the Settled Claims, and that they are unaware of any such insurance policies other than the Policies specifically identified herein.  The search conducted by Victory consisted of a review of relevant files and documents for copies of insurance policies and a review of available insurance schedules.  The search conducted by each Insurer consisted of searches of internal corporate databases in which extant historical policy information is maintained. Victory and the Insurers each represent that the searches described in the prior sentences constitute "diligent, good faith searches."

## VII.   Conditions to Effectiveness of this Agreement.

Upon the Execution Date, this Agreement shall be binding upon the Parties in accordance with its terms; provided, however, that the obligations of the NECC Trustee and the Debtor's estate under this Agreement are expressly subject to and conditioned upon entry of the Confirmation Order; and provided, further, that the effectiveness and finality of the provisions of this Agreement concerning the Releases (Section V) are expressly conditioned upon and subject to the following:

a.   The payment of the Settlement Amount to the NECC Trustee and the NECC estate by Victory and/or the Insurers; and

b.   The occurrence of the Plan Effective Date.

For the avoidance of doubt, and without diminishing any other condition to the effectiveness of this Agreement or the Plan, it is expressly understood and agreed by the Parties that the grant of the Plan Release and the entry of the Plan Injunction are material, non-waivable conditions to the effectiveness of this Agreement, and that they will also be made material, non-waivable conditions to the effectiveness of the Plan.

In the event that: (a) the Bankruptcy Court denies confirmation of the Plan and such denial cannot be cured within 30 days of the denial by amending the Plan in a manner that is either (i) not materially inconsistent with this Agreement or (ii) otherwise agreed to by the Parties, (b) an appellate court enters an order which (i) either (A) reverses entry of the Confirmation Order or (B) makes any change to the Plan Release and/or the Plan Injunction contained therein that is materially adverse to Victory, Netherlands Insurance

11

or Peerless Insurance, (ii) has become final, and (iii) is not subject to further appeal, or (c) the Plan is withdrawn, then this Agreement shall immediately terminate and be of no further force or effect (the date of such termination, the "Termination Date"); provided, however, that such termination may be waived by unanimous written consent of the Parties.  Upon the Termination Date, (a) the Settlement Amount, plus any and all interest accrued thereon in the Escrow shall be refunded to the Insurers, (b) if the Insurers have exercised the option provided to them in Section II.c. above, the Insurers will make the payment to the NECC Trustee of the $150,000 amount provided in the last sentence of Section II.c.iii. above (and the Insurers shall have no other payment obligation under Section II.c.) which amount shall be, and shall be deemed, irrevocably and indefeasibly paid to the NECC Trustee, and (c) the Parties shall otherwise be restored to the same position they were in immediately prior to the Execution Date without waiver of any rights, claims, defenses or remedies that the Parties may have against each other.

**VIII.**    **Other Provisions.**

    a.    **Informed Consent and Knowledge**.  The Parties expressly warrant and represent that they have had the benefit of the professional advice of attorneys of their own choosing, that they are fully satisfied with that advice, and that they have not relied on any statement or representation of other Parties to this Agreement regarding the specific matters in dispute. The Parties also represent and acknowledge that, in executing this Agreement, they do not rely and have not relied upon any representation or statement made by any other Party or any of their agents, representatives, or attorneys, with regard to the subject matter, basis or effect of this Agreement or otherwise, other than as specifically stated in this Agreement.

    b.    **No Precedent.**  The Parties stipulate that they have entered into this Agreement only for their own business reasons based on the unique circumstances presented by the Settled Claims, and that this Agreement creates no binding legal or factual precedent for themselves or others in any future case.  This Agreement does not constitute an admission of coverage or noncoverage, and is not based upon language in the Policies.

    c.    **Confidentiality.**  The Parties agree, subject to any disclosure obligations imposed by law, to hold this Agreement confidential and not to disclose the terms of this Agreement to any Person, other than the Creditors' Committee and the Plaintiffs' Steering Committee, until the NECC Trustee files the Plan; provided, however, that after the Execution Date and prior to the filing of the Plan, the Parties may inform the Bankruptcy Court and/or the MDL Court that they have entered into this Agreement.

    d.    **Cooperation.**  Each Party agrees to take such steps and to execute any documents as may be reasonably necessary or proper to effectuate the purpose and intent of this Agreement and to preserve its validity and enforceability. In the event that any action or proceeding of any type whatsoever is commenced or prosecuted by any Person not a Party hereto to invalidate, interpret or prevent the validation,

enforcement or carrying out of all or any of the provisions of this Agreement, the Parties mutually agree, represent, warrant and covenant to cooperate in opposing such action or proceeding.

e.   **Entire Agreement.**  This Agreement sets forth the entire agreement between the Parties and fully supersedes any and all prior agreements and understandings, written or oral, between and among the Parties pertaining to the subject matter hereof.   Except as explicitly set forth in this Agreement, there are no representations, warranties, promises or inducements, whether oral, written, expressed, or implied, that in any way affect or condition the validity of this Agreement or alter or supplement its terms.   Any statements, promises or inducements, whether made by any Party or the agent of any Party, that are not contained in this Agreement shall not be valid or binding.  This Agreement shall have perpetual existence, except as otherwise provided herein.

f.   **Amendment/Modification.**  No amendment or modification of this Agreement shall be binding or enforceable unless in writing and signed by the Parties and, if required, approved by the Bankruptcy Court.

g.   **Construction.**  This Agreement is the jointly-drafted product of good faith arm's length negotiations between the Parties with the benefit of advice from their own respective legal counsel and each of them has had sufficient opportunities to propose and negotiate changes to this Agreement prior to its execution.  As such, no Party will claim that any ambiguity in this Agreement shall be construed against any other Party by reason of their identity as a drafter or insurer.  The following rules of construction shall also apply to this Agreement:

1.   The Recitals and Definitions to this Agreement are a material part of this Agreement having the same force and effect as a mutual representation, warranty and covenant of the Parties;

2.   Unless the context of this Agreement otherwise requires, (a) words of any gender include each other gender, and the word "it" may refer to a Person as the context requires; (b) words used in the singular or plural also include the plural or singular number, respectively; (c) the terms "hereof," "herein," "hereby" and derivative or similar words refer to this entire Agreement; (d) the words "include,' "includes" or "including" shall be deemed to be followed by the words "without limitation;" (e) the word "or" shall be disjunctive but not exclusive; (f) the words "any" or "all" shall mean "any and all";

3.   References to policies, agreements and other documents shall be deemed to include all subsequent amendments and other modifications thereto; and

4.   References to statutes shall include all regulations promulgated thereunder and references to statutes or regulations shall be construed as including all statutory and regulatory provisions consolidating or amending or replacing the statute or regulation.

13

h.  **Applicable Law.**  This Agreement shall be interpreted and construed in accordance with the laws of the Commonwealth of Massachusetts, without regard to the conflict of laws of the Commonwealth of Massachusetts, except to the extent that any particular provision hereof may be governed by the Bankruptcy Code and Rules.  Each of the Parties hereby irrevocably consents to the exclusive jurisdiction of the Bankruptcy Court with respect to any action to enforce the terms and provisions of this Agreement, and expressly waives any right to commence any such action in any other forum (unless the Bankruptcy Court does not have or refuses to exercise such jurisdiction).  In any dispute arising from this Agreement, the Parties hereby waive any right to a jury trial.  This Agreement is intended to be and shall have the effect of a document executed under seal in accordance with the laws of the Commonwealth of Massachusetts.

i.  **No Admissions/Not Evidentiary.**  This Agreement is not and shall not be construed as an admission or concession of coverage, responsibility, liability, non-liability or wrongdoing by any Party to this Agreement.  No part of this Agreement may be used in any action or proceeding as evidence of the rights, duties or obligations of any Insurer under the Policies or otherwise.

j.  **Successors and Assigns**.  This Agreement shall be binding upon and inure to the benefit of the Parties hereto, and their respective successors, permissible assigns, agents, employees and legal representatives, including, without limitation, NECC and its bankruptcy estate, any trust or trustee, responsible Person, estate administrator, representative or similar Person appointed for NECC in connection with the Bankruptcy Case, the Plan or any subsequent Chapter 7 case.  Except as expressly provided in this Agreement, neither this Agreement nor any of the rights and obligations set forth herein shall be assigned by any Party without the prior written consent of the other Parties, which consent shall not be unreasonably withheld.

k.  **No Rights of Third Parties.**  All Persons expressly included within the definitions of "Victory", "Netherlands Insurance", "Peerless Insurance" and "NECC Trustee," are intended beneficiaries of this Agreement. The Parties agree that, except as set forth in the prior sentence or otherwise expressly set forth in this Agreement, there are no intended third party beneficiaries to this Agreement.

l.  **Enforcement of Agreement.**  The Parties hereby acknowledge that money damages would be both incalculable and an insufficient remedy for any breach of this Agreement by any Party and that such breach shall cause the non-breaching Parties irreparable harm.  Accordingly, the Parties agree that in the event of any breach or threatened breach of this Agreement by any of the Parties, the Parties, in addition to any other remedies at law or in equity that they may have, shall be entitled, without the requirement of posting a bond or other security, to equitable relief, including injunctive relief and specific performance.

m.   **Captions and Headings**.  Captions and headings to paragraphs or sections in this Agreement are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof.

n.   **Notice.** Unless another Person is designated in writing for receipt of notices hereunder, notices to the respective Parties shall be sent to the following Persons to the extent so designated below.  All notices shall be sent via email and by either (i) overnight courier or (ii) fax, and shall be deemed effective upon receipt.

> As to the NECC Trustee
> Paul D. Moore
> Duane Morris LLP
> 100 High Street Ste 2400
> Boston, MA 02110
> Tel: 857-488-4200
> Fax: 857-401-3057
> Email: pdmoore@duanemorris.com
>
> With Copy To:
> Michael R. Gottfried
> Duane Morris LLP
> 100 High Street Ste 2400
> Boston, MA 02110
> Tel: 857-488-4200
> Fax: 857-401-3057
> Email: mrgottfried@duanemorris.com
>
> As to Victory:
> Michael Dubeau
> Chief Executive Officer
> Victory Heating & Air Conditioning Co., Inc.
> 115 Mendon St.
> Bellingham, MA 02019
> Email:  Mdubeau@victoryhvac.com
>
> With Copy To:
> Michael P. Sams, Esq.
> Kenney & Sams, P.C.
> Southborough Executive Park
> 225 Turnpike Road
> Southborough, MA 01772
> Email: mpsams@KandSlegal.com
>
> As to The Netherlands Insurance Company:
> Brian Robischeau
> Sr. Technical Claims Specialist
> 100 Liberty Way

15

POB 1525
Dover, NH 03820
Email:  brian.robischeau@libertymutual.com

<u>With Copy To</u>:
Patrick Janes
100 Liberty Way
POB 1525
Dover, NH 03820
Email:  patrick.janes@libertymutual.com

<u>As to Peerless Insurance Company</u>:
Brian Robischeau
Sr. Technical Claims Specialist
100 Liberty Way
POB 1525
Dover, NH 03820
Email:  brian.robischeau@libertymutual.com

<u>With Copy To</u>:
Patrick Janes
100 Liberty Way
POB 1525
Dover, NH 03820
Email:  patrick.janes@libertymutual.com

o.     **Execution and Delivery.**  This Agreement may be executed in one or more counterparts, all of which together shall constitute one and the same instrument. This Agreement may be executed and delivered by email and facsimile, which shall be deemed the same as originals.

p.     **Statutes of Limitations**. The Parties agree and consent that all statutes of limitations, statutes of repose, time limited laches or estoppel defenses or any other state law pre-suit requirements, as to any and all Claims and causes of action among the Parties or against any of the Parties by a person who has a NECC Claim and who filed a timely proof of claim in the Bankruptcy Case pertaining to, concerning or related to NECC and/or its products, that had not expired by operation of applicable local, state. or federal law prior to September 5, 2013 shall be tolled through and including the earlier of (i) the Plan Effective Date or (ii) sixty (60) days following the Termination Date.

**[Signature Page Follows]**

**IN WITNESS WHEREOF**, and intending to be legally bound hereby, the undersigned Parties have each approved and executed this Agreement as of November 11, 2014.

**Paul D. Moore, as Chapter 11 Trustee for**
**New England Compounding Pharmacy, Inc.**
**d/b/a New England Compounding Center**
**and not individually**

Dated:

**Victory Mechanical Services, Inc.**
**Victory Heating & Air Conditioning Co., Inc.**

By: _____
Name printed:
Its:
Dated:

**The Netherlands Insurance Company**

By: _____
Name printed:
Its:
Dated:

**Peerless Insurance Company**

By: _____
Name printed:
Its:
Dated:

17

**IN WITNESS WHEREOF**, and intending to be legally bound hereby, the undersigned Parties have each approved and executed this Agreement as of November 11, 2014.

**Paul D. Moore, as Chapter 11 Trustee for**
**New England Compounding Pharmacy, Inc.**
**d/b/a New England Compounding Center**
**and not individually**

_____

Dated:

**Victory Mechanical Services, Inc.**
**Victory Heating & Air Conditioning Co., Inc.**

By: _Michael R Dubeau_
Name printed: _Michael R Dubeau_
Its: _Pres VMS / Sec VHA_
Dated: _11/19/14_

**The Netherlands Insurance Company**

By: _____
Name printed:
Its:
Dated:

**Peerless Insurance Company**

By: _____
Name printed:
Its:
Dated:

17

**IN WITNESS WHEREOF**, and intending to be legally bound hereby, the undersigned Parties have each approved and executed this Agreement as of November 11, 2014.

**Paul D. Moore, as Chapter 11 Trustee for
New England Compounding Pharmacy, Inc.
 d/b/a New England Compounding Center
and not individually**

_____

Dated:

**Victory Mechanical Services, Inc.
Victory Heating & Air Conditioning Co., Inc.**

By: _____
Name printed:
Its:
Dated:

**The Netherlands Insurance Company**

By: _____
Name printed:  Brian Robischeau
Its:  Sr. Technical Claims Specialist
Dated:  11/12/2014

**Peerless Insurance Company**

By: _____
Name printed:  Brian Robischeau
Its:  Sr. Technical Claims Specialist
Dated:  11/12/2014

17

## ADDENDUM TO SETTLEMENT AND RELEASE AGREEMENT

This Addendum (the "Addendum") to the *Settlement and Release Agreement* dated as of November 11, 2014 (the "Agreement") is made as of November 11, 2014 by:

> (i) the Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 case of New England Compounding Pharmacy, Inc., d/b/a New England Compounding Center, Case No. 12-19882, pending in the United States Bankruptcy Court for the District of Massachusetts (the "Bankruptcy Court"); and

> (ii) the Plaintiffs' Steering Committee (the "PSC") appointed in the multi-district litigation captioned *In re New England Compounding Pharmacy Cases Litigation*, MDL No. 2419, Case No. 13-cv-02419 (D. Mass.).

Capitalized terms not defined herein shall have the meanings assigned to them in Section I of the Agreement.

1.      Each of the Committee and the PSC acknowledges that it has had a sufficient opportunity to discuss and review the Agreement with its counsel, has in fact done so, and fully understands the terms, conditions, and agreements set forth therein.

2.      Each of the Committee and the PSC supports the Agreement and the compromise and settlement embodied therein.

3.      Each of the Committee and the PSC (i) supports, (ii) agrees to take reasonable steps to secure, and (iii) agrees not to oppose or object to the Bankruptcy Court's confirmation of a Plan that incorporates and effectuates the terms and provisions of the Agreement in all material respects.  Notwithstanding the foregoing, each of the Committee, the PSC, and their members reserve all rights in connection with any aspect of the Plan that is not the subject of the Agreement, including, without limitation, the right to object to and/or negotiate provisions of the Plan that are not the subject of the Agreement.

4.      Nothing in this Addendum is intended to or does modify the Agreement in any respect.

*Signature Page to Addendum to Settlement and Release Agreement*

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF NEW ENGLAND COMPOUNDING PHARMACY, INC., BY AND THROUGH ITS COUNSEL AND CO-CHAIRS**

**BROWN RUDNICK LLP**

By: _____
David J. Molton, Esq. (admitted *pro hac vice*)
Daniel J. Saval, Esq. (BBO #653906)
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801
dmolton@brownrudnick.com
dsaval@brownrudnick.com

and

William R. Baldiga, Esq. (BBO #542125)
Kiersten A. Taylor, Esq. (BBO #681906)
One Financial Center
Boston, Massachusetts 02111
Telephone: (617) 856-8200
Facsimile: (617) 856-8201
wbaldiga@brownrudnick.com
ktaylor@brownrudnick.com

*Counsel to the Official Committee of Unsecured Creditors of New England Compounding Pharmacy, Inc.*

**ANDREWS & THORNTON**

By: _____

Anne Andrews, Esq.
John C. Thornton, Esq.
Karren Schaeffer, Esq.
2 Corporate Park, Ste. 110
Irvine, CA 92606
Telephone: 949 748-1000
aa@andrewsthornton.com
jct@andrewsthornton.com
kschaeffer@andrewsthornton.com

*Counsel for Official Committee of Unsecured
Creditors of New England Compounding
Pharmacy, Inc. Member and Co-Chair, Katrina
Eldreth, obo Ari Gomez*

**COHEN PLACITELLA & ROTH P.C.**

By: _____

Michael Coren, Esq.
Harry Roth, Esq.
Two Commerce Square
2001 Market Street, Suite 2900
Philadelphia, PA 19103
Telephone: 215 567-3500
mcoren@cprlaw.com
hroth@cprlaw.com

*Counsel for Official Committee of Unsecured
Creditors of New England Compounding
Pharmacy, Inc. Member and Co-Chair,
Meghan Handy*

20

**ANDREWS & THORNTON**

By: _____
Anne Andrews, Esq.
John C. Thornton, Esq.
Karren Schaeffer, Esq.
2 Corporate Park, Ste. 110
Irvine, CA 92606
Telephone: 949 748-1000
aa@andrewsthornton.com
jct@andrewsthornton.com
kschaeffer@andrewsthornton.com

*Counsel for Official Committee of Unsecured*
*Creditors of New England Compounding*
*Pharmacy, Inc. Member and Co-Chair, Katrina*
*Eldreth, obo Ari Gomez*


**COHEN PLACITELLA & ROTH P.C.**

By: _____
Michael Coren, Esq.
Harry Roth, Esq.
Two Commerce Square
2001 Market Street, Suite 2900
Philadelphia, PA 19103
Telephone: 215 567-3500
mcoren@cprlaw.com
hroth@cprlaw.com

*Counsel for Official Committee of Unsecured*
*Creditors of New England Compounding*
*Pharmacy, Inc. Member and Co-Chair,*
*Meghan Handy*

20

THE PLAINTIFF STEERING COMMITTEE,
BY AND THROUGH ITS LEAD COUNSEL


HAGENS BERMAN SOBOL SHAPIRO LLP

By: _____
Thomas M. Sobol, Esq.
Kristen Johnson, Esq.
Edward Notargiacomo, Esq.
55 Cambridge Parkway, Suite 301
Cambridge, MA  02142
(617) 482-3700
tom@hbsslaw.com
kristenjp@hbsslaw.com

*Plaintiffs' Lead Counsel, for the PSC*