```
 1                     UNITED STATES DISTRICT COURT
 2                      DISTRICT OF MASSACHUSETTS
 3

 4
       IN RE:  NEW ENGLAND COMPOUNDING    )  MDL NO. 13-02419-RWZ
 5     PHARMACY CASES LITIGATION          )
                                          )
 6                                        )
                                          )
 7                                        )
                                          )
 8                                        )

 9

10           BEFORE:  THE HONORABLE RYA W. ZOBEL AND
                       THE HONORABLE JENNIFER C. BOAL
11

12

13
                         STATUS CONFERENCE
14

15

16

17        John Joseph Moakley United States Courthouse
                       Courtroom No. 12
18                     One Courthouse Way
                       Boston, MA 02210
19

20                     February 17, 2015
                          2:00 p.m.
21

22
                Catherine A. Handel, RPR-CM, CRR
23                   Official Court Reporter
          John Joseph Moakley United States Courthouse
24             One Courthouse Way, Room 5205
                       Boston, MA 02210
25             E-mail: hhcatherine2@yahoo.com
```

```
 1     APPEARANCES:

 2     FOR THE PLAINTIFFS:

 3

 4        Hagens, Berman, Sobol, Shapiro LLP, by KRISTEN JOHNSON,
       ESQ., THOMAS M. SOBOL, ESQ., and ED NOTARGIACOMO, ESQ., 55
 5     Cambridge Parkway, Suite 301, Cambridge, Massachusetts 02142;

 6

 7        Janet, Jenner & Suggs, LLC, KIMBERLY A. DOUGHERTY, ESQ., 75
       Arlington Street, Suite 500, Boston, Massachusetts  02116;

 8

 9        Crandall & Katt, by PATRICK THOMAS FENNELL, ESQ., 366 Elm
       Avenue, SW, Roanoke, Virginia 24016;

10

11        Ellis & Rapacki LLP, by FREDRIC L. ELLIS, ESQ., 85 Merrimac
       Street, Suite 500, Boston, Massachusetts 02114;

12

13        Lieff Cabraser Heimann & Bernstein, LLP, by ANNIKA K.
       MARTIN, ESQ., 250 Hudson Street, 8th Floor, New York, New York
14     10013-1413;

15

16     FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS:

17        Harris Beach PLLC, by FREDERICK H. FERN, ESQ., 100 Wall
       Street, New York, New York 10005;
18

19

20     FOR PAUL D. MOORE, IN HIS CAPACITY AS CHAPTER 11 TRUSTEE OF
       NECP, INC.:

21        Duane Morris LLP by MICHAEL R. GOTTFRIED, ESQ., 100 High
       Street, Suite 2400, Boston, Massachusetts 02110-1724;
22

23

24     (Appearances continued on the next page.)

25
```

```
1     APPEARANCES: (Cont'd)

2

3      FOR THE DEFENDANTS:

4

5          Michaels, Ward & Rabinovitz LLP, by DAN RABINOVITZ, ESQ.,
       One Beacon Street, Boston, Massachusetts 02108;

6

7          Todd & Weld LLP, by CORRINA L. HALE, ESQ., One Federal
       Street, 27th Floor, Boston, Massachusetts 02110;

8

9          Fulbright & Jaworski, LLP, by ADAM T. SCHRAMEK, ESQ., 801
       Pennsylvania Avenue, Washington, DC 20004;

10

11         Goodwin Procter LLP, by JAMES REHNQUIST, ESQ., and ROBERTO
       M. BRACERAS, ESQ., Exchange Place, 53 State Street, Boston,
       Massachusetts 02109;

12

13         Sloane & Walsh LLP, by ROBERT H. GAYNOR, ESQ., Three Center
       Plaza, Boston, Massachusetts 02108;

14

15         Hermes, Netburn, O'Connor & Spearing, P.C., by PETER G.
       HERMES, ESQ., and KARA A. LORIDAS, ESQ., 265 Franklin Street,
16     7th Floor, Boston, Massachusetts 02110-3113;

17

18

19

20

21

22

23

24

25
```

```
1                        P R O C E E D I N G S
2           (The following proceedings were held in open court before
3    the Honorable Rya W. Zobel, United States District Court Judge,
4    and the Honorable Jennifer C. Boal, Magistrate Judge, United
5    States District Court, District of Massachusetts, at the John J.
6    Moakley United States Courthouse, One Courthouse Way, Boston,
7    Massachusetts, on February 17, 2015.)
8               THE COURT:  Good afternoon.  Please be seated.
9               COURTROOM DEPUTY CLERK URSO:  This is the New England
10   Compounding.  It's MD-13-2419.
11              THE COURT:  Those counsel who are only participating
12   by telephone, I think unless you agree to come up and
13   experience the cold and the intense snow, you're not going to
14   be allowed to talk on the phone anymore.  All of the Boston
15   and present counsel agree to that.
16              (Laughter.)
17              THE COURT:  So, Ms. Johnson, I have here three
18   documents, Plaintiffs' Steering Committee's motion to schedule
19   oral argument, which I have allowed, and will go to Liberty,
20   right?
21              MS. JOHNSON:  It is, your Honor.  Although, actually,
22   in speaking with counsel for Liberty this morning, both sides
23   have agreed to submit that on the papers, unless your Honor
24   would like to hear argument.
25              THE COURT:  Well, it pertains primarily to the
```

1    amended petition of Mr. Austin.

2              MS. JOHNSON:  That's correct.

3              THE COURT:  Okay.  So, I'm happy to do that.  So,

4    that goes by the boards.

5              Then I have the jointly-proposed agenda for the

6    meeting and Plaintiffs' Steering Committee's report for the

7    status conference.

8              MS. JOHNSON:  Yes, your Honor.

9              THE COURT:  Where do you want to start?

10             MS. JOHNSON:  I would start with the agenda.

11             THE COURT:  Okay.  Now, I have one other thing, which

12   is not on the agenda and you don't know about.  I have here

13   two copies, I think, of a letter, one for plaintiff and one

14   for the requisite defendants, who I think -- the South

15   Carolina defendants.  Is there such a thing?

16             MS. JOHNSON:  North Carolina defendants, your Honor?

17             THE COURT:  "SC."

18             Anyhow, here is the letter for you and for -- you can

19   make a whole bunch of copies.  It's a letter that was

20   addressed to me and it is a person who says he was injured and

21   he wants to get paid.  That's the essence of it.  And he

22   should get paid, and it requires a response, and I would

23   appreciate if the plaintiffs' counsel would respond to this

24   letter with a copy to defense counsel and figure out who the

25   defendant is who should get this.

```
1              MS. JOHNSON:  We will do that, your Honor.  Thank
2    you.
3              THE COURT:  Thank you.
4              (Letter handed to Attorney Fennell.)
5              THE COURT:  Now I will hear from you, Ms. Johnson,
6    concerning the agenda.
7              MS. JOHNSON:  Thank you, your Honor.
8              We can skip motions for oral argument, then, and turn
9    to the report to the Court, and we'll start first with the
10   status of mediation efforts.
11             We are pleased to report that the mediation efforts
12   of the Virginia cases was successful and that a final
13   settlement agreement has been executed by the plaintiffs and
14   defendants.  And if I may approach, your Honor.
15             THE COURT:  Well, that relieves me of another burden.
16             (Attorney Johnson hands document to the Court.)
17             THE COURT:  Before the mediator -- one of the two
18   mediators went away on a well-deserved vacation, he left for
19   me a sealed envelope, not to be opened until requested by the
20   mediators, which, as I understand -- and I do not know what
21   the actual document is, but as I understand it, it is the
22   mediator's suggestion for settlement, the figure.  So, I
23   understand I may now give this to the shredders.
24             MS. JOHNSON:  Yes, your Honor, I believe that you
25   may.
```

```
 1              THE COURT:  It will be done.

 2              In this connection, I do wish to thank the mediators,

 3     both of them, Mr. Klein -- Judge Klein and Eric Green, who

 4     worked unbelievably hard and incredibly effectively.  So, I am

 5     happy to hear your report.

 6              MS. JOHNSON:  We would also like to thank the Court,

 7     both Judge Zobel and Judge Boal, for their efforts because we

 8     do think that played a significant role in ultimately bringing

 9     this to conclusion.  So, thanks to you both.

10              We also, on the mediation front, are pleased to

11     report that significant progress has been made in resolving

12     claims against the Unifirst Corporation and that we did spend

13     a considerable amount of time working over the weekend on

14     that.

15              THE COURT:  I'm sorry, who is the defendant?

16              MS. JOHNSON:  Unifirst.

17              THE COURT:  Oh, Unifirst.

18              MR. SOBOL:  These two (indicating).

19              THE COURT:  I should have known because they usually

20     don't hide in the second tier.

21              MR. BRACERAS:  Those seats were taken.

22              (Laughter.)

23              MS. JOHNSON:  That brings us, then, your Honor, to

24     the status of the insurance declaratory judgment actions.

25              The actions before Judge Saylor involving insurance
```

1    coverage for Ameridose are ongoing.  There are also -- in the

2    insurance dec action involving Liberty, Liberty has filed an

3    opposition to the motion for summary judgment there quite

4    recently.  The Court has not yet ruled on that motion,

5    however.

6           Turning to discovery.  The PSC has made a decision,

7    with the Court's permission, that given the number of

8    defendants and parties in this MDL in general, that as a

9    procedural matter, we have started docketing notices of

10   depositions to ensure that everyone is provided with copies of

11   that information, so long as the Court does not object,

12   because it will, I suppose, clutter the docket perhaps a bit,

13   but our thought was that it was better to make sure that

14   everyone was afforded notice of these depositions as they're

15   now being scheduled.

16          THE COURT:  I think that's okay.  It doesn't harm us

17   like sealed documents do.

18          MS. JOHNSON:  We try not to do that.

19          Then that takes us to 3(b), the in-camera review of

20   Saint Thomas Entities' trust agreement, and we did discuss

21   that with -- at the hearing before Judge Boal this morning.

22   So, I don't think there's more that needs to be said there.

23          THE COURT:  Okay.

24          MS. JOHNSON:  3(c), Judge Boal heard argument this

25   morning on both c(i) and c(ii).  On c(iii) is inadvertently

1    listed again.  That motion has already been withdrawn.  So

2    that you don't need to worry about.

3             Which brings us to the status of the litigation

4    track, No. 4.  See how we're flying through this morning, your

5    Honor.  So much easier when everyone settles.

6             THE COURT:  I'm sorry?

7             MS. JOHNSON:  I said we're flying through this

8    morning.  It's much easier when everyone settles.

9             THE COURT:  That's true.  We encourage it.

10            MS. JOHNSON:  We do.

11            In terms of the status report, the PSC did file a

12   status report this morning.  We filed it a little later in

13   time than we hoped because we wanted to update some

14   information in there.  It does do three things:

15            It addresses the status of the mediation efforts,

16   which we've already covered.  And, second, it provides a

17   census of cases on file in the MDL against clinic defendants,

18   and that's at Page 2 of the status report.  I won't read the

19   whole chart, your Honor, but I'll make a few observations

20   about it.

21            The defendant in the -- the clinic defendant in the

22   MDL with the most cases naming it is Saint Thomas.  That is

23   true and has been true for some time.

24            The second-most prevalent clinic is the Premier

25   Clinic.  That's a New Jersey clinic.  That's also been true

1    for some time.

2          We then have another Tennessee clinic, Specialty

3    Surgery Center, and what's different about this chart from the

4    last time that we looked is that you'll see Box Hill Surgery

5    System, a Maryland clinic, now has eight cases on file in the

6    MDL.  Ms. Dougherty may want to address the...

7          (Discussion off the record.)

8          MS. DOUGHERTY:  Good afternoon, your Honor.

9          One thing that I would just mention with respect to

10   the landscape --

11         THE COURT:  I don't think it's on.  You just turned

12   it off.

13         MS. JOHNSON:  There you go.

14         MS. DOUGHERTY:  Good afternoon, your Honor.

15         One thing I would like to just mention with respect

16   to Box Hill and the landscape, as it might change in the

17   future, is that with Maryland being a state that allows for a

18   three-year statute of limitation, what we foresee is the

19   number of cases filed against Box Hill increasing

20   significantly over the next few months.

21         I personally represent 29 victims and have -- since

22   our 93A demand to Box Hill, I believe that's going out today,

23   30 days from then, if we are unable to resolve, which I

24   anticipate given the current information that's been provided

25   by Box Hill's counsel, we will also be filing additional cases

1   there.

2           As you might recall, there was a motion to dismiss

3   that was filed in those cases and it was stayed by your Honor

4   on the record.  Currently the counsel of record in those cases

5   is working on a stipulation with respect to how to move

6   forward given your Court's guidance on your prior decisions

7   that you've made on various counts.

8           So, we anticipate a stipulation will be filed related

9   to that and that there may be some remaining issues that Box

10  Hill may ask to be heard on at the next status conference.

11          THE COURT:  Thank you.

12          MS. DOUGHERTY:  You're welcome.

13          MS. JOHNSON:  Then two more observations about that

14  chart, your Honor.  One is that those clinics who have now

15  settled and where the settlement agreements are finalized and

16  have been submitted as part of the bankruptcy process are not

17  listed in that chart.

18          So, there are, in fact, a large number of cases

19  naming Insight as a defendant, but as those have now been

20  resolved by the settlement agreement, we didn't present those

21  here as well.

22          And, secondly, you'll notice in that chart, your

23  Honor, it very quickly devolves into clinics with three or

24  fewer cases against them.

25          The PSC, in looking at that and also being mindful of

```
1    your Honor's suggestion that we aim for a trial by the end of
2    this year, has made some efforts to engage with defense
3    counsel and plaintiffs' counsel in those actions to suggest
4    that those cases where there are really one or two, perhaps
5    three cases, enter into an agreed-upon -- jointly agreed-upon
6    stay that will temporarily stay those cases while the PSC and
7    others focus on litigating and getting trial-ready.  Some of
8    the cases that we expect will be cases appearing towards the
9    top of the list.
10         THE COURT:  That sounds like a very practical thing
11   to do.
12         MS. JOHNSON:  Glad you approve.
13         And then the third thing that the status report does
14   is to preview two things for your Honor, and understanding
15   that these are issues that we have not yet formally moved the
16   Court on, it really is intended to be a preview.  We
17   understand not all the parties necessarily agree to the PSC's
18   proposals, but we do want to introduce them to you.
19         The first, your Honor had requested at the last
20   status conference that the PSC propose a way to more
21   efficiently coordinate dealing with motions to dismiss.
22         In the process of thinking that through, we've
23   realized there may also be some need for efficiently
24   coordinating summary judgment motions.  So, the PSC has put
25   together a proposed case management order that does a few
```

```
1    things:
2              First, it proposes that the PSC will amend the master
3    complaint to remove certain counts that this Court has already
4    ruled on.
5              Second, it proposes that anyone filing a motion to
6    dismiss or motion for summary judgment would be required to
7    engage in some basic due diligence, meaning reading the
8    Court's earlier orders to consider whether the Court's
9    decisions in those orders may inform the decision to move to
10   dismiss particular causes of action.  Also, to make some
11   efforts to identify cases with similar facts or really
12   questions of law.
13             So, for example, an effort -- if a Tennessee
14   defendant wanted to move to dismiss, they would be required to
15   make an effort to identify other cases involving similar
16   Tennessee state law claims, as an example.
17             That proposed case management order was circulated to
18   all defense counsel in the MDL for comment last week.  We have
19   a meet-and-confer on that matter scheduled for tomorrow.
20             Our hope is that we will then be able to file with
21   the Court a joint proposal for dealing with these matters.  If
22   not joint, though, our suggestion, as will be included in the
23   proposal case management order, is that the parties
24   simultaneously file competing proposals, in the hopes that we
25   could get this moving down the road a bit faster.
```

```
1              THE COURT:  Okay.

2              MS. JOHNSON:  And then, finally, the Court had

3    suggested and the Plaintiffs' Steering Committee heartily

4    agrees that we ought to be looking for an expedited trial in

5    November or no later than December of this year.  The PSC

6    believes that that is doable, your Honor.  It does, however,

7    take some considerable thought into what that case should be,

8    which cases may be appropriate for expedited treatment.

9              THE COURT:  Are you thinking of one plaintiff or a

10   group of plaintiffs?

11             MS. JOHNSON:  I don't have the answer for that for

12   you today, your Honor, but I'll tell you this.  We have

13   certainly thought about which type of case would have an

14   impact on a large number of plaintiffs.  And so, I don't think

15   it would come as a surprise to anyone to suggest that perhaps

16   a case against Saint Thomas may be at the top of the list

17   given the number of cases against Saint Thomas out there.

18             That said, I do not mean to be suggesting that the

19   PSC has formulated a definitive position on that today, but,

20   rather, make the observation, as your Honor is suggesting,

21   we're considering how we can try one case that will have a

22   broad impact.  The PSC intends to have a -- intends to propose

23   a schedule leading to a December trial and propose that

24   schedule by March 1st, your Honor.

25             THE COURT:  Okay.
```

1          MS. JOHNSON:  That brings us to 4(b), which is the

2     PSC's letter to Judges Zobel and Boal regarding Judge Nieman.

3          The PSC ECF'd and also hand delivered copies to the

4     Court of a letter earlier this week -- oh, actually, I'm

5     sorry.  The courtesy copies I think were only sent today and

6     ECF'd over the weekend because ECF had been down on Friday for

7     a while.  That letter --

8          THE COURT:  Maintenance, just like the T.

9          MS. JOHNSON:  Hopefully, it doesn't take 30 days to

10    get it running again.

11         THE COURT:  They did it all on one afternoon this

12    weekend.  It was done this weekend.

13         MS. JOHNSON:  Yes.  So, that letter, to share with

14    those who haven't read it, just an excerpt, the PSC, the

15    Trustee and the Official Creditor's Committee would all be

16    very pleased to have Judge Nieman fill the role of the appeals

17    administrator.

18         That letter also addresses what I think was the

19    Court's conception that Judge Nieman's decisions, which

20    themselves are appeal of an award, would also be reviewed by

21    this Court, and the letter presents, we think, a compelling

22    case for why in this circumstance that additional level of

23    review is neither required by the statute or rules governing

24    magistrate judges, nor as a practical matter appropriate in

25    these circumstances, given the interest of getting money out

1    to victims as soon as possible.

2         So, we present that letter for the Court's

3    consideration and we look forward to hearing from both Judge

4    Zobel, Judge Boal and Judge Nieman on it.

5         MAGISTRATE JUDGE BOAL:  I think -- except I

6    appreciate the letter and dealing with the concerns that I had

7    raised.  I don't think -- well, my concern didn't come from a

8    feeling that the plan required appeal to Judge -- or offered

9    the ability to appeal to Judge Zobel.  The concern was whether

10   Judge Nieman would have the authority or someone else, a

11   private individual appointed in the same position, but I think

12   as a practical matter, the plan makes a lot of sense and is

13   very efficient, and Judge Nieman would be excellent in the

14   role.

15        So, I think -- and we can talk about it, but I think

16   our thought was that -- well, I think my question to you is

17   what would your proposal be going forward in terms of the

18   appointment of Judge Nieman?  Would you be filing a motion to

19   appoint him once the plan is confirmed or how would you

20   attempt to effectuate that?

21        MR. ELLIS:  Your Honor, this is Rick Ellis.

22        I think what the plan envisions --

23        THE COURT:  Would you turn on your microphone,

24   please.

25        COURTROOM DEPUTY CLERK URSO:  It is.

1          MR. ELLIS:  Is that okay?

2          THE COURT:  Yes, thank you.

3          MR. ELLIS:  I think what the plan envisions is after

4    confirmation, we would make a motion under Rule 1636 for his

5    appointment and you would enter that order and then he would

6    be appointed.

7          THE COURT:  Okay.

8          MS. JOHNSON:  That brings us to No. 5, the status of

9    the bankruptcy, and I'll ask Mr. Gottfried to address that.

10         MR. GOTTFRIED:  Good afternoon, your Honor.

11         The status of the bankruptcy is as follows:

12         On Friday the trustee filed a plan supplement, which

13   he also filed a notice of in this Court.  That plan

14   supplement, which is some 700 pages long, contained a tort

15   trust agreement, claims resolution facility procedures, a

16   provider claims resolution facility procedures, a High Point

17   claims resolution facility procedures, the Insight claims

18   resolution facility procedures, and the Inspira claims

19   resolution facility procedures, as well as the Ameridose

20   settlement agreement, ARL settlement agreement, the High Point

21   settlement agreement, the Insight settlement agreement, the

22   Inspira settlement agreement, the Victory settlement

23   agreement, and the shareholder escrow and control agreement.

24         I'll just take a break from the report to say we join

25   in thanking the Court and both Judge Klein and Eric Green for

```
1    their invaluable assistance in settling the Insight Virginia
2    matters.  So, thank you.
3            With that being filed, it's still expected that this
4    week, hopefully, we will file an amended disclosure statement
5    in advance of the hearing on February 24th in front of Judge
6    Boroff, which is to, hopefully, approve the disclosure
7    statement as amended that the trustee expects to file.
8            The objection deadline is today.  There are a couple
9    of objections that have already been filed.  We'll see what
10   the day brings with respect to other objections, and we're
11   hopeful that the plan --
12           THE COURT:  What's the nature of the objections?
13           MR. GOTTFRIED:  There's one objection, for example,
14   by the U.S. trustee, which I think I would let speak for
15   itself.  There's been an objection by Liberty I've seen and --
16   you know, we're hopeful that we'll be able to address those
17   with Judge Boroff and maybe with some of the parties and
18   resolve them even before the hearing, at least some of them.
19           After the disclosure statement, typically, a hearing
20   to confirm the plan would be held maybe 45 to 60 days.
21   Obviously, that's Judge Boroff's call to set that hearing
22   date.  In this case because of the complexity, some of those
23   times have run slightly longer than that and we'll just have
24   to wait and see what he actually decides in terms of what the
25   most appropriate date is for a hearing, and that's the current
```

```
1    status, your Honor.
2              THE COURT:  Thank you.
3              Anybody else wish to add anything to that?
4              (No response.)
5              THE COURT:  Okay.
6              MS. JOHNSON:  In terms of appeals, your Honor, there
7    is one appeal pending before -- it may be styled as two, but
8    involving one substantive set of facts, which is an appeal by
9    the Virginia plaintiffs to orders issued earlier in this case.
10   The Insight settlement now will moot that appeal.
11             I understand the parties are in the process of
12   discussing what appropriate types of withdrawal or
13   stipulations need to be filed to accomplish that end.
14             Similarly -- and you may have noticed on the agenda
15   today, we have removed from the agenda listings of motions
16   filed either by the Virginia plaintiffs or Insight.  Those are
17   still currently technically pending in the docket, but, again,
18   counsel is working through the process to figure out how we
19   effectively withdraw those motions.
20             THE COURT:  Okay.
21             MS. JOHNSON:  And that brings us to the schedule for
22   future status conferences.  We do have conferences scheduled
23   for March and April, but would request that the Court choose a
24   date in May.
25             THE COURT:  Lisa, the end of the month.
```

1          COURTROOM DEPUTY CLERK URSO:  Okay.  So, the 25th
2    will be Memorial Day.  Do you want to have it like that
3    Tuesday after or before that?
4          THE COURT:  Well, to the extent that people are
5    traveling, maybe a couple of days after that.
6          COURTROOM DEPUTY CLERK URSO:  After?
7          THE COURT:  Yes.
8          COURTROOM DEPUTY CLERK URSO:  So, do you want to go
9    with maybe May 28th?  That's a Thursday.  That week is open.
10   So, whatever counsel would prefer, what day of the week it
11   would be.
12         MS. JOHNSON:  The 28th works well for the Plaintiffs'
13   Steering Committee.
14         THE COURT:  Would anybody object to that?
15         (No response.)
16         THE COURT:  And the same drill, that any motions --
17   at 2:00, Lisa?
18         COURTROOM DEPUTY CLERK URSO:  Yes, 2 o'clock, on May
19   28th.
20         THE COURT:  We will have a motion hearing first to
21   the extent that there are any motions that need to be heard
22   and then a status conference after that.
23         Should we include a hearing before Judge Boal at the
24   time?
25         MS. JOHNSON:  I suspect that by then we likely will

1    have additional motions.

2             MAGISTRATE JUDGE BOAL:  So, we'll hold it as a

3    control day and, obviously, if there's nothing pending, we'll

4    cancel it.

5             MS. JOHNSON:  So, that brings us, then, your Honors,

6    to C, fully-briefed motions.  I don't know that any of these

7    need to be addressed today.  We have listed them as they are

8    motions pending on the Court's docket.

9             In terms of item D, briefing in progress, there are

10   two dispositive motions that are in the process of being

11   briefed.  First, the Box Hill motion to dismiss and, as we

12   mentioned earlier, counsel is working on a stipulation that

13   would specifically address how the Box Hill briefing may

14   proceed.

15            And, secondly, Cincinnati Pain Management's motion to

16   dismiss.  I understand -- I don't believe counsel for

17   Cincinnati Pain is present in the courtroom today, but, in any

18   event, the parties do not contemplate arguing them today.

19            THE COURT:  Are you interested in that?

20            MR. ORLANDO:  I am here for Cincinnati, but I agree

21   with the plaintiffs.

22            THE COURT:  Okay.

23            COURT REPORTER:  Can I just have your name, please?

24            MR. ORLANDO:  Steven Orlando for Cincinnati Pain

25   Management.

1          MS. JOHNSON:  My apologies for not seeing Mr.

2     Orlando.

3          MR. ORLANDO:  It's all right.

4          MS. JOHNSON:  And that's it.

5          THE COURT:  Does anyone wish to add anything to Ms.

6     Johnson's report?

7          MS. DOUGHERTY:  Just briefly, your Honor, on No. 9(a)

8     and (b).  You heard argument on the Luna case with respect to

9     a variety of issues that were raised, one particularly being

10    the personal representative being appointed the personal

11    representative of the estate.  That has been resolved.  We've

12    worked with counsel to resolve the remaining issues and we

13    expect -- they have advised us today that they're going to

14    answer the complaint 21 days from today.  And so, I believe

15    the other matters are at this point moot.

16         THE COURT:  Does that mean that the motion has gone

17    by the boards?

18         MS. DOUGHERTY:  I believe that's correct, your Honor.

19    We've entered a stipulation --

20         THE COURT:  This is 9(a) and (b) or 9(a) only?

21         MS. DOUGHERTY:  (a) and (b).

22         THE COURT:  Both of them.

23         MS. DOUGHERTY:  Thank you, your Honor.

24         THE COURT:  Thank you.

25         All right.  I think that I need to deal with Liberty

1    and, otherwise, look forward to the next meeting, unless

2    something else comes up in between.

3          And I would ask you, please, to send some kind of a

4    response to the gentleman who is concerned about getting his

5    money.

6          MS. JOHNSON:  Yes, your Honor.  We will do that.

7          THE COURT:  And I will file that letter -- I guess I

8    don't really want to file it as a public document.  I'll just

9    hold it with my papers, if that's okay.

10         MS. JOHNSON:  No objection from the plaintiffs.

11         THE COURT:  Anything else?  Anybody?

12         (No response.)

13         THE COURT:  Well, thank you all very much.

14         MS. JOHNSON:  Thank you.

15         THE COURT:  Stay warm.

16         (Adjourned, 2:25 p.m.)

17

18

19

20

21

22

23

24

25

```
 1                    C E R T I F I C A T E

 2          I, Catherine A. Handel, Official Court Reporter of the

 3   United States District Court, do hereby certify that the

 4   foregoing transcript, from Page 1 to Page 23, constitutes to the

 5   best of my skill and ability a true and accurate transcription of

 6   my stenotype notes taken in the matter of Multidistrict

 7   Litigation No. 13-02419-RWZ, In Re: New England Compounding

 8   Pharmacy Cases Litigation.

 9

10
     February 18, 2015       /s/Catherine A. Handel
11   Date                    Catherine A. Handel, RPR-CM, CRR

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```