# EXHIBIT 6

**Inspira Settlement Agreement**

## SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement (the "Agreement") is made and entered by, between and among the NECC Trustee (as defined below), Inspira (as defined below), Lexington Insurance (as defined below), and Ironshore Specialty Insurance (as defined below).

## RECITALS

WHEREAS, on December 21, 2012, NECC (as defined below) filed a voluntary petition under the Bankruptcy Code in the Bankruptcy Court, thereby commencing the Bankruptcy Case (each as defined below);

WHEREAS, on January 18, 2013, the UST (as defined below) appointed the Creditors' Committee (as defined below);

WHEREAS, upon application by the UST, Paul D. Moore was appointed to serve as chapter 11 trustee for NECC's estate on or about January 25, 2013, with the approval of the Bankruptcy Court (as defined below);

WHEREAS, on February 12, 2013, the Judicial Panel on Multidistrict Litigation entered an order transferring certain litigation actions against NECC and other third-parties to the MDL Court (as defined below) for consolidated pretrial proceedings;

WHEREAS, on April 9, 2013, the MDL Court entered an order establishing the seven-attorney Plaintiffs' Steering Committee (as defined below) to organize, simplify, and streamline the handling of the MDL Proceeding on behalf of all plaintiffs to actions therein, and appointed Thomas Sobol of Hagens Berman Sobol Shapiro LLP as lead counsel for the Plaintiffs' Steering Committee;

WHEREAS, NECC and Inspira have been named as defendants in numerous lawsuits asserting Claims (as defined below), and may have additional Claims made against them, seeking damages for injuries arising from the alleged contamination of certain lots of injectable methylprednisolone acetate compounded at and distributed by NECC (as more fully defined herein, the "NECC Claims");

WHEREAS, Juno Assurance (as defined below) and the other Insurers (as defined below), issued, respectively, the Juno Policy, the Lexington Policy, and the Ironshore Policy (each as defined below) to Inspira as named insured;

WHEREAS, the NECC Trustee, Inspira, Juno Assurance and the Insurers may have Claims against each other and others as a result of the NECC Claims and based upon subrogation or contractual or equitable indemnification or contribution or other theories;

WHEREAS, on January 14, 2014, Inspira filed a proof of claim in the Bankruptcy Case, asserting a contingent and unliquidated Claim against NECC arising from NECC's alleged obligations to Inspira as a result of the NECC Claims, including, without limitation, NECC's alleged contribution and/or indemnity obligations to Inspira (the "Indemnity Claim");

WHEREAS, Inspira, Juno Assurance and the Insurers have engaged in good faith settlement discussions among themselves and with the NECC Trustee, the Creditors' Committee (as defined below) and the Plaintiffs' Steering Committee (as defined below) in an effort to fully and finally compromise and resolve Inspira's potential liability and the Insurers' coverage obligations for the NECC Claims;

WHEREAS, Inspira, Juno Assurance, the Insurers and the NECC Trustee believe that, if their disputes and other remaining issues are not resolved now, future proceedings would be protracted and expensive, involve complex issues of liability and/or damages, and involve substantial expense and the uncertainties and risks inherent in litigation; and

WHEREAS, the Creditors' Committee and the Plaintiffs' Steering Committee (each as defined below) support this Agreement and the compromise and settlement embodied herein, as reflected in the *Addendum No. 1 to Settlement and Release Agreement* attached hereto.

NOW, THEREFORE, in consideration of the mutual covenants contained herein and other good and valuable consideration, the adequacy and sufficiency of which is hereby acknowledged by the Parties, and intending to be legally bound hereby, the Parties agree as follows:

I.      **Definitions**.  The following definitions shall apply to the capitalized terms used in this Agreement:

a.      **"Agreement"** shall have the meaning set forth above in the preamble.

b.      **"Bankruptcy Case"** means the Chapter 11 case filed by NECC in the Bankruptcy Court captioned as *In Re: New England Compounding Pharmacy, Inc.,* Case No. 12-19882 (HJB).

c.      **"Bankruptcy Code"** means Title 11 of the United States Code, 11 U.S. C. §§ 101 *et seq.*, as it may be amended.

d.      **"Bankruptcy Court"** means the United States Bankruptcy Court for the District of Massachusetts, Eastern Division.

e.      **"Bankruptcy Rules"** means collectively, the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court.

f.      **"Claim"** means any past, present or future claim, demand, action, cause of action, suit or liability of any kind or nature whatsoever (including claims for equitable or contractual indemnification or contribution), whether at law or in equity, pursuant to a statute, rule or regulation, known or unknown, asserted or unasserted, anticipated or unanticipated, accrued or unaccrued, fixed or contingent, which has been asserted, could have been asserted, or that may in the future be asserted, by or on behalf of any Person, whether seeking damages (including compensatory, punitive or exemplary damages) or equitable, mandatory, injunctive or any other type of relief, including cross-claims, counter-claims, third-party claims, suits, lawsuits, administrative proceedings, notices of liability or potential liability (including Potentially Responsible Party or "PRP" notices), arbitrations, actions, rights,

requests, demands for payment, causes of action, orders, or judgments, including without limitation, any "claim" as that term is defined in the Bankruptcy Code, 11 U. S. C. § 101(5).

g. **"Claimants"** mean any Person asserting an NECC Claim against NECC, Inspira and/or any of the Insurers.

h. **"Confirmation Order"** means the order confirming the Plan which (i) authorizes and approves this Agreement (as incorporated into the Plan) and (ii) includes the Plan Release and the Plan Injunction, without any material changes or modifications, or the exclusion of the Claimants.

i. **"Creditors' Committee"** means the official committee of unsecured creditors appointed in the Bankruptcy Case and any of its retained legal counsel or other professionals.

j. **"Direct Action Claim"** means any Claim asserted or that could be asserted by any Person against Inspira or the Insurers that arises from (i) the activities of Inspira that give rise to the Settled Claims under the Policies, or (ii) the NECC Claims, or (iii) Inspira's alleged interests in or rights to coverage under the Policies, whether arising by contract, in tort or under the laws of any jurisdiction, including any statute that gives a third party a direct cause of action against an insurer.

k. **"Escrow"** means the escrow account to be established by the NECC Trustee at an FDIC insured bank listed on the United States Trustee's List of Authorized Depositories for Bankruptcy Cases filed in Region One, dated July 26, 2013, to hold the Settlement Amount pending the satisfaction of all conditions to the effectiveness of this Agreement set forth in Section VIII hereof, or the Termination Date of this Agreement, whichever comes first.

l. **"Execution Date"** means the first date upon which all of the following have occurred:  (1) the NECC Trustee, Inspira, Lexington Insurance and Ironshore Specialty Insurance have executed this Agreement; and (2) a complete copy of the Agreement has been circulated to all Parties.

m. **"Extra-Contractual Claim"** means any Claim, including, but not limited to, NECC Claims, asserted or that could be asserted by any Person against Inspira or any of the Insurers with respect to any Policies seeking any type of relief, including compensatory, exemplary or punitive damages on account of alleged bad faith; failure to act in good faith; violation of any duty of good faith and fair dealing; violation of any unfair claims practices act or similar statute, regulation or code; or any other similar type of alleged misconduct or any other act or omission of any Insurer of any type for which the Person seeks relief other than coverage or benefits directly provided under the Policies.

n. **"Indemnity Claim"** shall have the meaning set forth in the Recitals.

o. **"Inspira"** means Inspira Health Network, Inc. (f/k/a South Jersey Health System, Inc.), Inspira Medical Centers, Inc. (f/k/a South Jersey Hospital, Inc.) and all of their respective directors, officers, members, shareholders, owners, principals, employees, including, but not limited to Joseph Alessandrini and Paul Abrams, attorneys, affiliates, predecessors, parents, subsidiaries, including, but not limited to, Juno Assurance, successors and assigns, each

acting in their respective capacity as such. For purposes of this Agreement, the affiliates of Inspira are the following: Inspira Medical Center Woodbury, Inc., Inspira HomeCare & HospiceCare, Inc., Inspira Health Network LIFE, Inc., Inspira Health Network Medical Group, P.C., Inspira Health Network Urgent Care, P.C., Cooper Bone & Joint at Woodbury, P.C., Oak & Main Surgicenter, LLC, Inspira Health Network Foundation Cumberland/Salem, Inc., Inspira Health Network Foundation Gloucester County, Inc., The Kidney Center at Vineland, LLC, The Kidney Center at Millville, LLC, Inspira Help Services, Inc., Inspira Health Partners, LLC, Red Bank Development Corporation, Inspira Health Management Corporation, Juno Assurance, Ltd., Inspira Management Services, LLC, Inspira Health Connections, P.C., Tri-County Cardiovascular Services, P.C., Gloucester County Surgery Center, LLC, Woodbury Medical Center Associates, LLP, Inspira Home Care Services Woodbury, Inc., Advanced MRI II, LLC, Inspira Care Connect, LLC, The Healthy Cumberland Initiative, Inc., and The Healthy Gloucester Initiative, Inc.

p. **"Insurance Coverage Claim"** means any Claim for insurance coverage under the Policies, whether direct, indirect or derivative, for defense, indemnity, contribution or otherwise.

q. **"Insurers"** means, collectively, Juno Assurance, Lexington Insurance and Ironshore Specialty Insurance, each solely in its respective capacity as defined herein below.

r. **"Ironshore Policy"** means the Insurance Policy issued by Ironshore Specialty Insurance to Inspira for the policy period of 11/1/2011 to 11/1/2012 (No. 000791702), and any other known or unknown insurance policies issued by Ironshore Specialty Insurance to Inspira prior to the Execution Date.

s. **"Ironshore Specialty Insurance"** means Ironshore Specialty Insurance Company solely in its capacity as issuer of, or in any other capacity that may arise from or be connected with, the Ironshore Policy and as an insurer to Inspira (and any other person(s) or entity(ies) that may be insured under the Ironshore Policy) and all of its directors, officers, members, shareholders, owners, principals, employees, attorneys, affiliates, predecessors, parents, subsidiaries, successors and assigns, each acting in their respective capacity as such. For purposes of this Agreement, the affiliates of Ironshore Specialty Insurance are the following: Ironshore Insurance Services, LLC, Ironshore Holdings, (US), Inc., Ironshore Specialty Insurance Company, IronHealth, and Ironshore Indemnity.

t. **"Juno Assurance"** means Juno Assurance, Ltd., solely in its capacity as issuer of the Juno Policy, and all of its directors, officers, members, shareholders, owners, principals, employees, attorneys, predecessors, parents, subsidiaries, successors and assigns, each acting in their respective capacity as such.

u. **"Juno Policy"** means the Healthcare Professional Liability and Healthcare General Liability Insurance Policy issued by Juno Assurance to Inspira for the policy period of 11/1/2011 to 11/1/2012 (No. 2011HPLGL02), and any other known or unknown insurance policies issued by Juno Assurance to Inspira prior to the Execution Date.

v. "**Lexington Insurance**" means Lexington Insurance Company, solely in its capacity as issuer of , or in any other capacity that may arise from or be connected with, the Lexington

Policy, and as an insurer to Inspira (and any other additional insured under the Lexington Policy) and all of Lexington Insurance Company's directors, officers, members, shareholders, owners, principals, employees, attorneys, affiliates, predecessors, parents, subsidiaries, successors and assigns, each acting in their respective capacity as such.  For purposes of this Agreement, the affiliate of Lexington Insurance is the following: American International Group, Inc. and its direct and indirect subsidiaries.

w. **"Lexington Policy"** means the Excess Healthcare Professional Liability and Healthcare Umbrella Liability Insurance Policy issued by Lexington Insurance to Inspira for the policy period of 11/1/2011 to 11/1/2012 (No. 6796471), and any other known or unknown insurance policies issued by Lexington Insurance to Inspira prior to the Execution Date.

x. **"MDL Court"** means the United States District Court for the District of Massachusetts (at Boston) presiding over the MDL Proceeding.

y. **"MDL Proceeding"** means the matter entitled *In Re: New England Compounding Pharmacy, Inc. Product Liability Litigation*, MDL Docket No. 2419, Master File No. 1: 13-MD-2419.

z. **"NECC"** or **"Debtor"** means the debtor New England Compounding Pharmacy, Inc. d/b/a New England Compounding Center, and any of its directors, officers, members, shareholders, owners, principals, employees, attorneys, predecessors, successors and assigns, each acting in their respective capacity as such.

aa. **"NECC Claims"** means any and all Claims asserted or that could be asserted by any Person against Inspira and/or any of the Insurers for personal injury, tort, wrongful death, medical monitoring, or any other economic or noneconomic injury or damage, based upon, arising out of or in any way related to the administration by or on behalf of Inspira to Persons of injectable methylprednisolone acetate or any other drugs or products compounded, produced, sold or distributed by NECC.

bb. **"NECC Tort Trust"** means the trust created by the Plan which will be funded by assets of the NECC estate, including, *inter alia*, portions of the Settlement Amount from Inspira and/or the Insurers and which establishes procedures for the resolution and payment of all NECC Claims, including NECC Claims against Inspira and/or any of the Insurers.

cc. **"NECC Tort Trustee"** means the trustee of the NECC Tort Trust.

dd. **"NECC Tort Trust Agreement"** means the agreement governing the NECC Tort Trust.

ee. **"NECC Trustee"** means Paul D. Moore solely in his capacity as the Chapter 11 Trustee for debtor New England Compounding Pharmacy, Inc. d/b/a New England Compounding Center and not individually, and any retained attorneys or other professionals acting on his behalf.

ff. **"Parties"** means, collectively, the NECC Trustee, Inspira, Lexington Insurance Company and Ironshore Insurance Company.

gg. **"Person"** means an individual, including, but not limited to, Claimants, a corporation, a partnership, an association, a limited liability company, a proprietorship, a joint venture, a trust, an estate, trustee, executor, administrator, legal representative, or any other entity or organization.

hh. **"Plaintiffs' Steering Committee"** means the attorneys identified in MDL Order No. 2: Order Appointing Lead Counsel, Federal-State Liaison Counsel and Plaintiffs' Steering Committee and such committee's designated counsel.

ii. **"Plan"** means the Chapter 11 plan of reorganization or liquidation for NECC prepared, filed, noticed and solicited by the NECC Trustee, at his own cost and expense, which is consistent with, incorporates and effectuates the terms and provisions of this Agreement without any material changes or modifications with respect to the rights of the Parties hereto, and which includes, incorporates and implements in all material respects the NECC Tort Trust, the Plan Release and the Plan Injunction.

jj. **"Plan Effective Date"** means the later of (i) the first business day following fourteen (14) days after the Bankruptcy Court's entry of the Confirmation Order, provided that the Confirmation Order is not subject to a stay by any court of competent jurisdiction as of such date, and (ii) the first business day on which all other conditions to the effective date of the Plan as set forth therein, and to the effective date of this Agreement as set forth in Section VII hereof, have been satisfied or waived.

kk. **"Plan Injunction"** means the permanent injunction forever barring and enjoining all Persons from commencing, continuing or prosecuting any Settled Claims against Inspira and/or the Insurers, as incorporated in the Plan and Confirmation Order.

ll. **"Plan Release"** means a release to be included in the Plan and Confirmation Order pursuant to which the Settled Claims are deemed to have been waived and/or released by any and all Claimants.

mm. **"Policies"** means, collectively, the Ironshore Policy, the Juno Policy and the Lexington Policy.

nn. **"Releasor Parties"** shall have the meaning set forth in Paragraph VI herein.

oo. **"Settlement Amount"** means the sum of $16,000,000.00 (USD) to be paid by Inspira and the Insurers as follows:

    a.  Inspira: $2,973,500.00

    b.  Lexington Insurance:   $10,000,000.00 which is the full amount of the coverage limit of liability under the Lexington Policy

    c.  Ironshore Specialty Insurance: $3,026,500.00

pp. **"Settled Claims"** means any and all Claims asserted or that could be asserted by or on behalf of any Person in any capacity whatsoever against Inspira and/or any of the Insurers based

upon, arising out of or in any way relating to (i) the NECC Claims, and/or (ii) the Policies, including, but not limited to, Insurance Coverage Claims, Direct Action Claims and/or Extra-Contractual Claims.

qq.    **"Termination Date"** shall have the meaning set forth in Section VII hereof.

rr.    **"UST"** means the Office of the United States Trustee.

## II.    Payment of Settlement Amount

A.    On or before five (5) days after entry of the Confirmation Order, Inspira and the Insurers shall each pay (or cause to be paid) their respective portions of the Settlement Amount in immediately available funds to the NECC Trustee and the NECC estate in accordance with the wire transfer instructions to be supplied by the NECC Trustee to Inspira and the Insurers.  Until the earlier to occur of the Plan Effective Date or the Termination Date, the NECC Trustee shall hold the Settlement Amount in the Escrow separate and apart from any other assets of the Debtor's estate.  On the Plan Effective Date, the Settlement Amount, together with all accrued interest thereon, shall be, and shall be deemed, irrevocably and indefeasibly paid to the NECC Trustee, and the Settlement Amount shall be used by the NECC Trustee for payment of the costs and expenses of administration of the Bankruptcy Case and distribution to creditors under the Plan (including, but not limited to, pursuant to the NECC Tort Trust Agreement).  The Parties intend and agree that the Settlement Amount shall constitute a material part of a fund to be ultimately distributed to Claimants and other creditors of the Debtor under the Plan and, accordingly, shall be protected from collateral attack and reach by the Debtor's creditors or any other Persons whatsoever; and that such funds shall be therefore held in a legal manner that protects such funds from the reach of others to the full extent permitted by law.  The Parties agree and acknowledge that the Plan and the NECC Tort Trust Agreement shall provide that $13,600,000 (*i.e.,* an amount equaling 85% of the Settlement Amount) of funds delivered to and held in the NECC Tort Trust shall be segregated and used to satisfy NECC Claims against Inspira; provided, however, that $2,400,000 (*i.e.,* an amount equaling 15% of the Settlement Amount) of the Settlement Amount shall not be so segregated, and may be used for, *inter alia*, the payment of the costs and expenses of the administration of the Bankruptcy Case or distribution to other creditors, including Tort Claimants (as such term is defined in the Plan) and general unsecured creditors, pursuant to the Plan.

B.    Upon payment by Lexington of the full amount of its coverage limit under the Lexington Policy as called for herein, and regardless of any subsequent events other than the refund or repayment to Lexington of any monies paid pursuant to this Agreement, all provisions of this Agreement that govern the rights and duties between Inspira and Lexington will be final and binding.  The Lexington Policy is hereby exhausted and Inspira agrees the Lexington Policy shall be deemed to be bought-out, and Inspira shall have released Lexington from any further payment obligations under the policy, and the Lexington Policy shall be deemed to be

rescinded ab initio by mutual agreement of the parties except if the Plan Release and Plan Injunction are not approved by the Bankruptcy Court.

**III.   Bankruptcy Related Obligations**

a.  As soon as reasonably practicable after the Execution Date, the NECC Trustee shall prepare, file and solicit (following approval of a disclosure statement) approval and confirmation of the Plan and the entry of the Confirmation Order that (i) approves this Agreement, and (ii) includes the terms and provisions of the Plan Release and the Plan Injunction, without any material changes or modifications. The NECC Trustee shall also undertake all commercially reasonable efforts to defend the Confirmation Order in the event of a direct appeal of that order.

b.  The NECC Tort Trust Agreement (specifically, one of the exhibits thereto, *i.e.*, the claim form for distribution from the NECC Tort Trust) shall include a provision that each Claimant, by signing and submitting the claim form, understands and confirms that the Plan provides for a general release of NECC Claims against Other Contributing Parties, as that term is defined in the Plan, which includes Inspira and the Insurers.

c.  The Plan will recognize that the NECC Tort Trustee shall be responsible for all reimbursement and repayment obligations under the Medicare Act for claim related conditional payments made under Medicare Part A, B, C and D prior to disbursing NECC Tort Trust Assets to a Claimant whose Claim has been finally determined. The Plan will provide, in sum and substance, (i) that the NECC Tort Trustee will attempt to enter into a global resolution with CMS on behalf of all Tort Trust Beneficiaries on all Medicare Mandatory Insurer Reporting requirements under 42 USC 1395y(b)(8), and, (ii) in the event that such a global resolution cannot be reached, the NECC Tort Trustee will attempt to enter into an individual agreement with each RRE to report on their behalf, or if an agreement to report is not entered into with Inspira, the NECC Tort Trustee will provide all of the information required for proper reporting under 42 USC 1395y(b)(8) and the User Guide to Inspira, Lexington Insurance and/or Ironshore Specialty Insurance within five (5) days of any Final Determination (as that term is used in the Claims Resolution Facility Procedures) and prior to the distribution of any NECC Tort Trust funds to any Claimant.

d.  The Plan, the Confirmation Order and any other related documents, pleadings, notices or orders (including any disclosure statement), insofar as they effectuate or relate to the rights, benefits and obligations provided for by this Agreement, shall each be in a form that is reasonably satisfactory to Inspira and each Insurer, and shall each be provided to Inspira and each Insurer in draft for review and comment a reasonable time prior to their filing with the Bankruptcy Court or the MDL Court or otherwise being publicly disclosed.

e.      Each of Inspira and the Insurers hereby agrees with respect to any Plan (as defined herein) to:

    i.  so long as its vote has been properly solicited pursuant to sections 1125 and 1126 of the Bankruptcy Code, timely vote any and all Claims (to the extent filed) that it is entitled to vote, now or hereafter beneficially owned by such Party (subject to Section IV hereof), to accept the Plan in accordance with the applicable procedures set forth in the solicitation materials accompanying the Plan, and timely return a duly executed ballot in connection therewith. A copy of the vote solicitation package shall be sent the notice addresses in Section IX(o);

    ii.  not withdraw or revoke its tender, consent or vote with respect to the Plan, except as otherwise expressly permitted pursuant to this Agreement; and

    iii.  not:

        1.  oppose or object to the Plan or the solicitation or consummation of the Plan and the transactions contemplated by the Plan, whether directly or indirectly;

        2.  join in or support any objection to the Plan or to the solicitation of the Plan;

        3.  initiate any legal proceedings that are inconsistent with or that would delay, prevent, frustrate or impede the approval, confirmation or consummation of the Plan, or otherwise commence any proceedings to oppose the Plan, or take any other action that is barred by or likely to frustrate this Agreement;

        4.  vote for, consent to, support or participate in the formulation of any other restructuring or settlement of Claims, any other transaction involving any plan of reorganization or liquidation (with the exception of the Plan) under applicable bankruptcy or insolvency laws, whether domestic or foreign, in respect of the Debtor or its affiliates, except as otherwise expressly contemplated pursuant to this Agreement;

        5.  directly or indirectly seek, solicit, or enter into any agreements relating to, any restructuring, plan of reorganization, proposal or offer of dissolution, winding up, liquidation, reorganization, merger, transaction, sale, disposition or restructuring of the Debtor or its affiliates (or substantially all of their assets or stock) other than the Plan or as otherwise set forth in this Agreement (any such plan or other action as described in clauses (4) and (5) immediately above, an "Alternative Plan"); or

      6.   enter into any letter of intent, memorandum of understanding or agreement in principle relating to any Alternative Plan.

**IV.    Waiver and Release of Bankruptcy Claims**

Upon the Plan Effective Date, and so long as this Agreement has not terminated, each of Inspira and the Insurers hereby (a) waives, relinquishes and releases (i) any and all Claims (whether or not a proof of claim is filed) of any kind or character it holds against the Debtor or its estate (including, without limitation, the Indemnity Claim), and (ii) any and all rights to distributions or recoveries, of any kind or character, on account of such Claims including, without limitation, pursuant to the Plan.

**V.    Releases**

a.    Subject only to the conditions set forth in Section VIII hereof, and without any further action by the Parties, Inspira and the NECC Trustee each hereby fully, finally and completely, remises, releases, acquits and forever discharges the Insurers of and from the Settled Claims; provided, however, that each Insurer shall be so remised, released, acquitted and discharged of and from the Settled Claims solely in its capacity as issuer of, or in any other capacity that may arise from or be connected with, the Juno Policy, the Lexington Policy, or the Ironshore Policy, respectively, and not in its capacity as issuer of any other policies of insurance, or in any other capacity (unless provided in a separate Settlement and Release Agreement).

b.    Subject only to the conditions set forth in Section VIII hereof, and without any further action by the Parties, the NECC Trustee hereby fully, finally and completely, remises, releases, acquits and forever discharges Inspira of and from the Settled Claims.

c.    Subject only to the conditions set forth in Section VIII hereof, and without any further action by the Parties, each of the Insurers hereby fully, finally and completely, remises, releases, acquits and forever discharges Inspira, Juno Assurance, the NECC Trustee, the Debtor, its estate, the Plaintiffs' Steering Committee and the Creditors' Committee of and from the Settled Claims.

d.    Subject only to the conditions set forth in Section VIII hereof, and without any further action by the Parties, each of Inspira and the Insurers hereby fully, finally and completely, remises, releases, acquits and forever discharges all Claims against Claimants, the NECC Trustee, the Debtor, its estate, the Plaintiffs' Steering Committee and the Creditors' Committee that are based upon or arise out of the Settled Claims.

e.    Upon the satisfaction of the conditions set forth in Section VIII hereof, Inspira and each Insurer shall be deemed to have unconditionally assigned to the NECC Trustee any and all Claims that they may have between them (to the extent not otherwise released under this Agreement, the Plan and/or the Confirmation Order) and against any Persons not a Party to this Agreement (including any claims for

indemnification, contribution or subrogation) that are based upon or arise out of the Settled Claims.

f.      Nothing in this Section V or any other provision of this Agreement is intended to, nor shall it be construed to, have any effect on, or constitute a release, waiver, assignment or discharge of, each Insurer's rights or Claims for reinsurance in connection with the Policies and/or the Settled Claims, all of which are expressly reserved by the Insurers.

g.      Nothing in this Section V or any other provision of this Agreement is intended to, nor shall it be construed to, have any effect on, or constitute a release, waiver or discharge of, the Parties' respective rights, obligations, remedies or Claims created under this Agreement.

h.      The Parties hereto acknowledge that they are aware that they may hereafter discover facts different from or in addition to those they now know or believe to be true with respect to the NECC Claims, causes of action, rights, obligations, and liabilities herein released, and each agrees that the within release shall be and remain in effect in all respects as a complete release as to all matters released herein, notwithstanding any such different or additional facts.

i.      For the avoidance of doubt, nothing in this Agreement shall release, impair or otherwise affect any Claims of the NECC Trustee, the Debtor's estate, or any other Person against Premier Orthopaedic Associates Surgical Center, LLC, Premier Orthopaedic, Sports Medicine Associates of South Jersey, LLC, and/or their respective directors, officers, members, shareholders, owners, principals, employees, attorneys, predecessors, successors and assigns. In addition, nothing in this Agreement shall release, impair or otherwise affect any Claims of the NECC Trustee, the Debtor's estate, or any other Person against Richard C. Strauss, M.D., an employee of Inspira, solely in connection with and limited to the coverage provided by policy number PS00024984, issued by Princeton Insurance Company.

**VI.**     **Scope of Release of Claims.**  Any release herein, bar order, or Plan provision, including any Plan Release and/or Plan Injunction, pertaining to any NECC Claim and in favor of Inspira shall be and shall be construed as a joint tortfeasor release under and pursuant to the laws of New Jersey, including the Comparative Negligence Act, N.J. Stat. Ann. 2A:15-5.2, and the Joint Tortfeasors Contribution Law, N.J. Stat. Ann. 2A:53A-2. Without limitation of the generality of the forgoing, and for purposes of avoiding any doubt, any party subject to a reduction of any claim in any way related to the administration by or on behalf of Inspira to Persons of injectable methylpredinisolone acetate or any other drugs or products compounded, produced, sold or distributed by NECC by virtue of any release herein, bar order, or Plan provision, including any Plan Release and/or Plan Injunction, relating to (i) Inspira and (ii) Juno Assurance and the Insurers in connection with the Ironshore Policy, the Juno Policy and the Lexington Policy (the "Releasor Parties"), are not, unless otherwise released in and by the Plan and the Confirmation Order, releasing any claim or demand that he/she/it has or may have against: any other person and/or organization other than (i) Inspira and (ii) Juno Assurance and the Insurers in connection with the Ironshore Policy, the Juno Policy and the Lexington Policy.  Unless otherwise provided in the Plan and the Confirmation Order, the rights of the Releasor Parties are specifically reserved and preserved to make claims against any and every other person and/or organization, specifically reserving to the fullest extent possible any and all rights, claims and remedies against any and all other parties (hereinafter referred to as the "Non-Released Parties"), and to make claims that said Non-Released Parties and not Inspira (or Juno Assurance and the Insurers in connection with the Ironshore Policy, the Juno Policy and the Lexington Policy), are solely liable to Releasor Parties for injuries, losses and damages.  Unless otherwise provided in the Plan and the Confirmation Order, this reservation shall take precedence and be controlling. Without limitation to the generality of the preceding, the following are not members of or part of Inspira (as defined herein) and will not be obtaining or entitled to any of the benefits and considerations that Inspira is or may be receiving under and by this agreement: Thomas F. Mitros, MD, Thomas Dwyer, MD, Kimberly Yvette Smith, MD, a/k/a Kimberley Yvette Smith-Martin, Nitesh Bhagat, MD, Regional Diagnostic Imaging, LLC, Premier Orthopaedics and Sports Medicine Associates of Southern New Jersey, LLC ("Premier Orthopaedics"), Premier Orthopaedic Associates Surgical Center, LLC ("Surgical Center"), Premier Orthopaedics and Surgical Center's respective officers, directors, physicians, purchasing agents, employees, and nurses (collectively and together with Premier Orthopaedics and Surgical Center, "Premier"), and Richard C. Strauss, M.D., an employee of Inspira, provided, however, that Dr. Richard C. Strauss's liability is expressly limited to the coverage provided by policy number PS00024984, issued by Princeton Insurance Company.

**VII.**    **Representations and Warranties of the Parties**

Each of the Parties separately represents and warrants to each of the other Parties as follows:

a.      It has the requisite power and authority to enter into this Agreement and to perform the obligations contemplated by this Agreement, subject only to the entry of the Confirmation Order;

b.      The execution and delivery of this Agreement, and the performance of the obligations contemplated by this Agreement, have been approved by duly authorized representatives of the Party, and by all other necessary actions of the Party, subject only to the entry of the Confirmation Order;

c.      It has expressly authorized its undersigned representative to execute this Agreement on the Party's behalf as its duly authorized agent;

d.      The making and performance of this Agreement will not violate any provision of the Party's respective articles of incorporation, membership agreement, charter or bylaws, where applicable;

e.      It has read the entire Agreement and knows the contents hereof; it understands that the terms hereof are contractual and not merely recitals; it has signed this Agreement of its own free act and will; and in making this Agreement, it has obtained the advice of its own legal counsel;

f.      It has not previously assigned or transferred, or purported to assign or transfer to any other Person, any right or Claim that is the subject matter of this Agreement;

g.      This Agreement has been negotiated, executed and delivered in good faith, with the assistance of its own legal counsel, pursuant to good faith arm's-length negotiations, and for good and valuable consideration; and

h.      As to Inspira and the Insurers, each has conducted diligent good faith searches for any insurance policies that may have been issued by the Insurers that provide insurance coverage and/or other benefits to Inspira for the Settled Claims, and that they are unaware of any such insurance policies other than the Policies specifically identified herein.

**VIII.   Conditions to Effectiveness of this Agreement.**

Upon the Execution Date, this Agreement shall be binding upon the Parties in accordance with its terms; provided, however, that the obligations of the NECC Trustee and the Debtor's estate under this Agreement are expressly subject to and conditioned upon entry of the Confirmation Order; and provided, further, that the effectiveness and finality of the provisions of this Agreement concerning the Releases (Section V) are expressly conditioned upon and subject to the following:

a.      The payment of the Settlement Amount to the NECC Trustee and the NECC estate by Inspira and the Insurers; and

b.      The occurrence of the Plan Effective Date.

For the avoidance of doubt, and without diminishing any other condition to the effectiveness of this Agreement or the Plan, it is expressly understood and agreed by the Parties that the Plan Release and the Plan Injunction are material, non-waivable conditions to the payment of the Settlement Amount and the effectiveness of this

Agreement, and that they will also be made material, non-waivable conditions to the effectiveness of the Plan.

In the event that: (a) the Plan Effective Date does not occur within one (1) year from the Execution Date; (b) the Bankruptcy Court denies confirmation of the Plan and such denial cannot be cured by amending the Plan in a manner that is either (i) not materially inconsistent with this Agreement or (ii) otherwise agreed to by the Parties; or (c) the Plan is withdrawn, then this Agreement shall immediately terminate and be of no further force or effect (the date of such termination, the "<u>Termination Date</u>"); provided, however, that such termination may be waived by unanimous written consent of the Parties. Upon the Termination Date, the Parties shall be restored to the same position they were in immediately prior to the Execution Date without waiver of any rights, claims, defenses or remedies that the Parties may have against each other. Within fifteen (15) days of the Termination Date, the Settlement Amount, plus any and all interest accrued thereon, shall be refunded to Inspira, Lexington Insurance, and Ironshore Specialty Insurance.

## IX.     Other Provisions.

a.     **Informed Consent and Knowledge.**  The Parties expressly warrant and represent that they have had the benefit of the professional advice of attorneys of their own choosing, that they are fully satisfied with that advice, and that they have not relied on any statement or representation of other Parties to this Agreement regarding the specific matters in dispute. The Parties also represent and acknowledge that, in executing this Agreement, they do not rely and have not relied upon any representation or statement made by any other Party or any of their agents, representatives, or attorneys, with regard to the subject matter, basis or effect of this Agreement or otherwise, other than as specifically stated in this Agreement.

b.     **No Precedent.**  The Parties stipulate that they have entered into this Agreement only for their own business reasons based on the unique circumstances presented by the Settled Claims, and that this Agreement creates no binding legal or factual precedent for themselves or others in any future case.  This Agreement does not constitute an admission of coverage or noncoverage, and is not based upon language in the Policies.

c.     **Confidentiality.**  The Parties agree, subject to any disclosure obligations imposed by law, to hold this Agreement confidential and not to disclose the terms of this Agreement to any Person, other than the Creditors' Committee and the Plaintiffs' Steering Committee, until the NECC Trustee files this Agreement with the Bankruptcy Court; provided, however, that after the Execution Date, the Parties may inform the Bankruptcy Court and/or the MDL Court that they have entered into this Agreement; provided, further, that the Plan Proponents may disclose the fact that they have reached a settlement, the settlement amount, and such other terms of this Agreement as may be reasonably necessary or appropriate to implement the Agreement and in order to obtain approval of the disclosure statement.

d.    **Cooperation.**  Each Party agrees to take such steps and to execute any documents as may be reasonably necessary or proper to effectuate the purpose and intent of this Agreement and to preserve its validity and enforceability. In the event that any action or proceeding of any type whatsoever is commenced or prosecuted by any Person not a Party hereto to invalidate, interpret or prevent the validation, enforcement or carrying out of all or any of the provisions of this Agreement, the Parties mutually agree, represent, warrant and covenant to cooperate in opposing such action or proceeding.

e.    **Defense of Plan Release and Injunction**.  The NECC Trustee agrees to undertake reasonable efforts to defend the Confirmation Order and the releases and injunctions contained in the Plan, including, but not limited to, the Plan Release and the Plan Injunction, from any collateral attack or challenge, whether related to NECC Claims or otherwise; provided, however, that the NECC Trustee shall not be required to incur more than $100,000.00 in the aggregate in fees and expenses in doing so; provided, further, however, that as used in this Section IX.e, "collateral attack or challenge" shall not include any direct appeal of the Confirmation Order.

f.    **Entire Agreement.**  This Agreement sets forth the entire agreement between the Parties and fully supersedes any and all prior agreements and understandings, written or oral, between and among the Parties pertaining to the subject matter hereof.  Except as explicitly set forth in this Agreement, there are no representations, warranties, promises or inducements, whether oral, written, expressed, or implied, that in any way affect or condition the validity of this Agreement or alter or supplement its terms.  Any statements, promises or inducements, whether made by any Party or the agent of any Party, that are not contained in this Agreement shall not be valid or binding.  This Agreement shall have perpetual existence, except as otherwise provided herein.

g.    **Amendment/Modification.**  No amendment or modification of this Agreement shall be binding or enforceable unless in writing and signed by the Parties and, if required, approved by the Bankruptcy Court.

h.    **Construction.**  This Agreement is the jointly-drafted product of good faith arm's length negotiations between the Parties with the benefit of advice from their own respective legal counsel and each of them has had sufficient opportunities to propose and negotiate changes to this Agreement prior to its execution.  As such, no Party will claim that any ambiguity in this Agreement shall be construed against any other Party by reason of their identity as a drafter or insurer.  The following rules of construction shall also apply to this Agreement:

    1.  The Recitals and Definitions to this Agreement are a material part of this Agreement having the same force and effect as a mutual representation, warranty and covenant of the Parties;

2. Unless the context of this Agreement otherwise requires, (a) words of any gender include each other gender, and the word "it" may refer to a Person as the context requires; (b) words used in the singular or plural also include the plural or singular number, respectively; (c) the terms "hereof," "herein," "hereby" and derivative or similar words refer to this entire Agreement; (d) the words "include,' "includes" or "including" shall be deemed to be followed by the words "without limitation;" (e) the word "or" shall be disjunctive but not exclusive; (f) the words "any" or "all" shall mean "any and all";

3. References to Policies, agreements and other documents shall be deemed to include all subsequent amendments and other modifications thereto; and

4. References to statutes shall include all regulations promulgated thereunder and references to statutes or regulations shall be construed as including all statutory and regulatory provisions consolidating or amending or replacing the statute or regulation.

i.    **Applicable Law.**   This Agreement shall be interpreted and construed in accordance with  the laws of the Commonwealth of Massachusetts, without regard to the conflict of laws of the Commonwealth of Massachusetts, except to the extent that any particular provision hereof may be governed by the Bankruptcy Code and Rules.  Each of the Parties hereby irrevocably consents to the exclusive jurisdiction of the Bankruptcy Court with respect to any action to enforce the terms and provisions of this Agreement, and expressly waives any right to commence any such action in any other forum (unless the Bankruptcy Court does not have or refuses to exercise such jurisdiction).  In any dispute arising from this Agreement, the Parties hereby waive any right to a jury trial.  This Agreement is intended to be and shall have the effect of a document executed under seal in accordance with the laws of the Commonwealth of Massachusetts.

j.    **No Admissions/Not Evidentiary.**   This Agreement is not and shall not be construed as an admission or concession of coverage, responsibility, liability, non-liability or wrongdoing by any Party to this Agreement.  No part of this Agreement may be used in any action or proceeding as evidence of the rights, duties or obligations of any Insurer under the Policies or otherwise.

k.    **Successors and Assigns.**  This Agreement shall be binding upon and inure to the benefit of the Parties hereto, and their respective successors, permissible assigns, agents, employees and legal representatives, including, without limitation, NECC and its bankruptcy estate, any trust or trustee, responsible Person, estate administrator, representative or similar Person appointed for NECC in connection with the Bankruptcy Case, the Plan or any subsequent Chapter 7 case.  Except as expressly provided in this Agreement, neither this Agreement nor any of the rights and obligations set forth herein shall be assigned by any Party without the prior written consent of the other Parties, which consent shall not be unreasonably withheld.

l.   **No Rights of Third Parties.**   All Persons expressly included within the definitions of "Inspira", "Juno Assurance", "Lexington Insurance", "Ironshore Specialty Insurance"  and "NECC Trustee," are intended beneficiaries of this Agreement.   The Parties agree that, except as set forth in the prior sentence or otherwise expressly set forth in this Agreement, there are no intended third party beneficiaries to this Agreement.

m.   **Enforcement of Agreement**.   The Parties hereby acknowledge that money damages would be both incalculable and an insufficient remedy for any breach of this Agreement by any Party and that such breach shall cause the non-breaching Parties irreparable harm.   Accordingly, the Parties agree that in the event of any breach or threatened breach of this Agreement by any of the Parties, the Parties, in addition to any other remedies at law or in equity that they may have, shall be entitled, without the requirement of posting a bond or other security, to equitable relief, including injunctive relief and specific performance.

n.   **Captions and Headings**.   Captions and headings to paragraphs or sections in this Agreement are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof.

o.   **Notice.** Unless another Person is designated in writing for receipt of notices hereunder, notices to the respective Parties shall be sent to the following Persons to the extent so designated below.   All notices shall be sent via email _and_ by either (i) overnight courier or (ii) fax, and shall be deemed effective upon receipt.

<u>As to the NECC Trustee:</u>

Paul D. Moore
Duane Morris LLP
100 High Street Suite 2400
Boston, MA 02110
Tel: 857-488-4200
Fax: 857-401-3057
Email: pdmoore@duanemorris.com

<u>With Copy To</u>:

Michael R. Gottfried
Duane Morris LLP
100 High Street Ste 2400
Boston, MA 02110
Tel: 857-488-4200
Fax: 857-401-3057
Email: mrgottfried@duanemorris.com

As to Inspira:

Stephen A. Grossman
Montgomery McCracken Walker & Rhoads LLP
457 Haddonfield Road, Suite 600
Cherry Hill, NJ 08002
Tel: 856-488-7767
Fax: 215-731-3849
Email: sgrossman@mmwr.com

With Copy To:

Natalie D. Ramsey
Montgomery McCracken Walker & Rhoads LLp
123 South Broad St.
Philadelphia, PA 19109
Tel:  215-772-7354
Fax:  215-772-7620
Email: nramsey@mmwr.com

and

Robert M. D'Angel, Esq.
Inspira Health Network, Inc.
165 Bridgeton Pike
Mullica Hill, NJ 08062
Tel:  (856)-641-6630
Email: dangelr@ihn.org

As to Lexington Insurance Company:

Stephen Ruocco
Personal & Confidential
AIG Claims Inc – Healthcare
101 Hudson Street
Jersey City, NJ 07302
Tel: 201-631-7769

With Copy To:

Jennifer Schmidt
AIG Claims Inc-Healthcare
500 W Madison St.
Chicago, IL 60661
Tel: 312-930-5547

and

Michael S. Davis
Zeichner Ellman & Krause LLP
1211 Avenue of the Americas
New York, New York 10036
Tel: 212-826-5311
Fax: 866-213-9038
mdavis@zeklaw.com

As to Ironshore Specialty Insurance:

Jordan M. Rubinstein
Troutman Sanders LLP
401 9th Street, NW, Suite 1000
Washington, DC 20004
Tel: 202-274-2995
Fax: 202-654-5726
Email: jordan.rubinstein@troutmansanders.com

With Copy To:
Meg Kyle
IronHealth
175 Powder Forest Drive
Weatogue, CT 06089
Tel: 860-408-7913
Fax: 860-408-7916
Email: meg.kyle@ironshore.com

p.    **Execution and Delivery.**  This Agreement may be executed in one or more counterparts, all of which together shall constitute one and the same instrument. This Agreement may be executed and delivered by email and facsimile, which shall be deemed the same as originals.

q.    **Statutes of Limitations**. The Parties agree and consent that all statutes of limitations, statutes of repose, time limited laches or estoppel defenses or any other state law pre-suit requirements, as to any and all Claims and causes of action among the Parties or against any of the Parties by a person who has a NECC Claim and who filed a timely proof of claim in the Bankruptcy Case pertaining to, concerning or related to NECC and/or its products, that had not expired by operation of applicable local, state. or federal law prior to September 5, 2013 shall be tolled through and including the earlier of (i) the Plan Effective Date or (ii) sixty (60) days following the Termination Date.

**[Signature Page Follows]**

**IN WITNESS WHEREOF**, and intending to be legally bound hereby, the undersigned Parties have each approved and executed this Agreement.

**Paul D. Moore, as Chapter 11 Trustee for**
**New England Compounding Pharmacy, Inc.**
 **d/b/a New England Compounding Center**
**and not individually**

Dated:   December 3, 2014

**Inspira Health Networks, Inc.**
**Inspira Medical Centers, Inc.**

By:
Dated:   December 3, 2014

**Lexington Insurance Company**

By:
Dated:   December 3, 2014

**Ironshore Specialty Insurance Company**

By:
Dated: December 3, 2014

Page 20 of 19

**IN WITNESS WHEREOF**, and intending to be legally bound hereby, the undersigned Parties have each approved and executed this Agreement.

**Paul D. Moore, as Chapter 11 Trustee for
New England Compounding Pharmacy, Inc.
 d/b/a New England Compounding Center
and not individually**

_____

Dated:  December 3, 2014

**Inspira Health Networks, Inc.
Inspira Medical Centers, Inc.**

_____
By:
Dated:  December 3, 2014

**Lexington Insurance Company**

_____
By:
Dated:  December 3, 2014

**Ironshore Specialty Insurance Company**

_____
By:
Dated: December 3, 2014

**IN WITNESS WHEREOF**, and intending to be legally bound hereby, the undersigned Parties have each approved and executed this Agreement.

**Paul D. Moore, as Chapter 11 Trustee for**
**New England Compounding Pharmacy, Inc.**
**d/b/a New England Compounding Center**
**and not individually**

_____
Dated:  December 3, 2014


**Inspira Health Networks, Inc.**
**Inspira Medical Centers, Inc.**

_____
By:
Dated:  December 3, 2014


**Lexington Insurance Company**

_____
By:
Dated:  December 3, 2014

**Ironshore Specialty Insurance Company**

_____
By:
Dated: December 3, 2014

**IN WITNESS WHEREOF**, and intending to be legally bound hereby, the undersigned Parties have each approved and executed this Agreement.

**Paul D. Moore, as Chapter 11 Trustee for**
**New England Compounding Pharmacy, Inc.**
**d/b/a New England Compounding Center**
**and not individually**

_____

Dated:  December 3, 2014


**Inspira Health Networks, Inc.**
**Inspira Medical Centers, Inc.**

_____

By:
Dated:  December 3, 2014


**Lexington Insurance Company**

_____

By:
Dated:  December 3, 2014

**Ironshore Specialty Insurance Company**

_____

By:
Dated: December 3, 2014

**ADDENDUM NO. 1 TO SETTLEMENT AND RELEASE AGREEMENT**

This Addendum No. 1 (the "Addendum No. 1") to the *Settlement and Release Agreement* dated as of December 3, 2014 (the "Agreement") is made as of December 3, 2014 by:

(i)   the Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 case of New England Compounding Pharmacy, Inc., d/b/a New England Compounding Center, Case No. 12-19882, pending in the United States Bankruptcy Court for the District of Massachusetts (the "Bankruptcy Court"); and

(ii)  the Plaintiffs' Steering Committee (the "PSC") appointed in the multi-district litigation captioned *In re New England Compounding Pharmacy Cases Litigation*, MDL No. 2419, Case No. 13-cv-02419 (D. Mass.).

Capitalized terms not defined herein shall have the meanings assigned to them in Section 1 of the Agreement.

1.   Each of the Committee and the PSC acknowledges that it has had a sufficient opportunity to discuss and review the Agreement with its counsel, has in fact done so, and fully understands the terms, conditions, and agreements set forth therein.

2.   Each of the Committee and the PSC supports the Agreement and the compromise and settlement embodied therein.

3.   Each of the Committee and the PSC (i) supports, (ii) agrees to take reasonable steps to secure, and (iii) agrees not to oppose or object to the Bankruptcy Court's confirmation of a Plan that incorporates and effectuates the terms and provisions of the Agreement in all material respects. Notwithstanding the foregoing, each of the Committee, the PSC, and their members reserve all rights in connection with any aspect of the Plan that is not the subject of the Agreement, including, without limitation, the right to object to and/or negotiate provisions of the Plan that are not the subject of the Agreement

4.   Nothing in this Addendum No. 1 is intended to or does modify the Agreement in any respect.

*Signature Page to Addendum No. 1 to Settlement and Release Agreement*

**THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF NEW
ENGLAND COMPOUNDING PHARMACY,
INC., BY AND THROUGH ITS COUNSEL
AND CO-CHAIRS**

**BROWN RUDNICK LLP**

By: _____

David J. Molton, Esq. (admitted *pro hac vice*)
Daniel J. Saval, Esq. (BBO #653906)
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801
dmolton@brownrudnick.com
dsaval@brownrudnick.com

and

William R. Baldiga, Esq. (BBO #542125)
Kiersten A. Taylor, Esq. (BBO #681906)
One Financial Center
Boston, Massachusetts 02111
Telephone: (617) 856-8200
Facsimile: (617) 856-8201
wbaldiga@brownrudnick.com
ktaylor@brownrudnick.com

*Counsel to the Official Committee of Unsecured
Creditors of New England Compounding
Pharmacy, Inc.*

*Signature Page to Addendum No. 1 to Settlement and Release Agreement*

**ANDREWS & THORNTON**

By: _____

Anne Andrews, Esq.
John C. Thornton, Esq.
Karren Schaeffer, Esq.
2 Corporate Park, Ste. 110
Irvine, CA 92606
Telephone: 949 748-1000
aa@andrewsthornton.com
jct@andrewsthornton.com
kschaeffer@andrewsthornton.com

*Counsel for Official Committee of Unsecured
Creditors of New England Compounding
Pharmacy, Inc. Member and Co-Chair, Katrina
Eldreth, obo Ari Gomez*

**COHEN PLACITELLA & ROTH P.C.**

By: _____

Michael Coren, Esq.
Harry Roth, Esq.
Two Commerce Square
2001 Market Street, Suite 2900
Philadelphia, PA 19103
Telephone: 215 567-3500
mcoren@cprlaw.com
hroth@cprlaw.com

*Counsel for Official Committee of Unsecured
Creditors of New England Compounding
Pharmacy, Inc. Member and Co-Chair,
Meghan Handy*

Page 3 of 4

*Signature Page to Addendum No. 1 to Settlement and Release Agreement*

**ANDREWS & THORNTON**

By: _____
Anne Andrews, Esq.
John C. Thornton, Esq.
Karren Schaeffer, Esq.
2 Corporate Park, Ste. 110
Irvine, CA 92606
Telephone: 949 748-1000
aa@andrewsthornton.com
jct@andrewsthornton.com
kschaeffer@andrewsthornton.com

*Counsel for Official Committee of Unsecured
Creditors of New England Compounding
Pharmacy, Inc. Member and Co-Chair, Katrina
Eldreth, obo Ari Gomez*

**COHEN PLACITELLA & ROTH P.C.**

By: _____
Michael Coren, Esq.
Harry Roth, Esq.
Two Commerce Square
2001 Market Street, Suite 2900
Philadelphia, PA 19103
Telephone: 215 567-3500
mcoren@cprlaw.com
hroth@cprlaw.com

*Counsel for Official Committee of Unsecured
Creditors of New England Compounding
Pharmacy, Inc. Member and Co-Chair,
Meghan Handy*

*Signature Page to Addendum No. 1 to Settlement and Release Agreement*

**THE PLAINTIFF STEERING COMMITTEE,
BY AND THROUGH ITS LEAD COUNSEL**

**HAGENS BERMAN SOBOL SHAPIRO LLP**

By: _____

Thomas M. Sobol, Esq.
Kristen Johnson, Esq.
55 Cambridge Parkway, Suite 301
Cambridge, MA  02142
(617) 482-3700
tom@hbsslaw.com
kristenjp@hbsslaw.com

*Plaintiffs' Lead Counsel, for the PSC*

Page 4 of 4

## ADDENDUM NO. 2 TO SETTLEMENT AND RELEASE AGREEMENT

This Addendum No. 2 (the "Addendum No. 2") to the *Settlement and Release Agreement* dated as of December 3, 2014 (the "Agreement") is made as of December 3, 2014 by the NECC Trustee and the Creditors' Committee (collectively, the "Plan Proponents").

Capitalized terms not defined herein shall have the meanings assigned to them in Section 1 of the Agreement.

1.      The Plan Proponents agree that the Plan shall contain the following defined terms, the definitions of which shall not be altered in a way that would be materially adverse to either Inspira, Lexington Insurance or Ironshore Specialty Insurance:

*Entity*.  An individual, corporation, partnership, limited liability company, association, joint stock company, joint venture, estate, trust, unincorporated organization, government or any political subdivision thereof, or other person.

*Person*.  Person has the meaning set forth in section 101(41) of the Bankruptcy Code.

*Other Contributing Parties*.   Entities including, without limitation, Inspira and the Insurers.

*Tort Claims*.  Any and all Claims, causes of action, civil actions and demands for or based on personal injury or wrongful death relating to the compounding, preparation, design, marketing, sale, distribution, fabrication, advertising, supply, production, formulation, use, administration, labeling or ingestion of any product produced, sold or distributed by the Debtor, including, but not limited to, MPA and other drugs compounded, designed, marketed, sold, distributed, fabricated, advertised, supplied, produced, or formulated by the Debtor (notwithstanding the identity of any subsequent marketer, distributor, retailer, wholesaler, other seller or administrator of such product), including, but not limited to, those civil actions pending in the MDL Proceeding or in any state court.

*Tort Claimants*.  The holders of Tort Claims, or, in the singular, one such holder.

2.      The Plan Proponents agree that the Plan and/or the NECC Tort Trust Agreement shall contain the following provisions, which shall not be altered in a way that would be materially adverse to either Inspira, Lexington Insurance or Ironshore Specialty Insurance:

*Distribution of the Tort Trust Assets*.  The Tort Trustee shall distribute the proceeds of the Tort Trust Assets in accordance with this Plan, the Confirmation Order, the Tort Trust Documents and the Claims Resolution Facility Procedures. In connection with such distributions, and except as provided below in this Section 5.10, the Tort Trust shall be responsible for all reimbursement and reporting obligations imposed by the Medicare Act for the repayment of any claim related conditional payments made under Medicare Part A, B, C and D ("Conditional Payment") or any state's Medicaid or Workers Compensation statute. Before disbursing any Tort Trust Assets to any Tort Trust

Beneficiary, the Tort Trustee may enter into a global resolution with the Centers for Medicare and Medicaid Services ("CMS") to reimburse all Medicare Part A, B, C and D liens that are subject to repayment for Conditional Payments made pursuant to 42 USC 1395y(b) and the accompanying Medicare Part C and Part D statutes and Medicare reporting obligations pursuant to 42 USC 1395y(b)(8).

Pursuant to 42 USC 1395y(b)(8), defined Responsible Reporting Entities ("RREs") must report claims to CMS in the manner and time specified by the statute. If a global resolution with CMS cannot be reached, the Tort Trustee is authorized to enter into a separate agreement with each RRE to report on their behalf and if a separate agreement with an RRE is not reached, the Tort Trustee shall provide all of the information required for proper reporting under 42 USC 1395y(b)(8) to the appropriate RRE(s) or their authorized agent before disbursing any funds to any Tort Trust Beneficiary. If a global resolution is not reached and the Tort Trustee does not enter into an agency agreement with the appropriate RRE(s) before disbursing any funds to any Tort Trust Beneficiary (i) the Tort Trustee will collect the Tort Trust Beneficiary's first name, last name, date of birth, gender, social security number and any other information required for proper reporting of the claim to CMS pursuant to 42 USC 1395y(b)(8) and the Medicare Mandatory Insurer Reporting User Guide; and (ii) the Tort Trustee will provide all of the information required for reporting to the RREs within five (5) days of any Final Determination (as that term is used in the Claims Resolution Facility Procedures) of any claim.

In addition, if a global resolution with CMS cannot be reached, before disbursing any funds to any Tort Trust Beneficiary, (i) the Tort Trustee shall determine, or retain an appropriately qualified firm to determine whether any Conditional Payment has been made to or on behalf of the Tort Trust Beneficiary to whom a distribution of Tort Trust Assets will be made, and if any Conditional Payment has been made to or on behalf of such a Tort Trust Beneficiary, the Tort Trustee shall, within the time period called for by the Medicare Act, (a) reimburse the Medicare Trust fund, the appropriate Medicare plan or their authorized contractor for the appropriate amount and (b) submit the required information for the Tort Trust Beneficiary to the appropriate agency of the United States government; and (ii) the Tort Trustee shall otherwise comply with any requirements (including, but not limited to, any reporting or payment requirements) of any other federal or state governmental health insurance program and any state's Medicaid or Workers Compensation statute. Prior to the Tort Trustee reimbursing any Medicare Part A, B, C and D plan requiring repayment the Tort Trustee shall provide notice of the existence of any Conditional Payment(s) and/or other lien(s) to the Tort Trust Beneficiary and, if applicable, his or her attorney. The Tort Trust Beneficiary and/or his or her attorney may elect to negotiate the amount of the alleged conditional payments within 120 days of notice from the Tort Trustee, or prior to any deadline imposed by the Medicare Part A, B, C and D for reimbursement, whichever is sooner. If the Tort Trust Beneficiary or his or her attorney elect not to negotiate the alleged lien amounts, or the other lien(s) are not resolved within the time periods specified, with the Tort Trust Beneficiary's consent, the Tort Trustee may utilize the firm with experience in resolving liens to satisfy the Tort Trust Beneficiary's obligations represented by the Conditional Payment(s) and/or other lien(s). Upon receiving confirmation of the final Medicare Part

A, B, C and D amount requiring repayment, the Tort Trustee will reimburse the appropriate Medicare Part A, B, C and D plan or their authorized contractor. Any payments made to resolve such obligations of the Tort Trust Beneficiary, together with the fees paid to the lien resolution firm, shall be deducted from the Tort Trust Beneficiary's distribution of Tort Trust Assets prior to disbursement of the balance to the Tort Trust Beneficiary or his or her counsel.

The Trustee, the Post-Effective Date Debtor and the Post-Confirmation Officer shall have no responsibility or liability for (i) the creation, existence, operation or administration of the Tort Trust; (ii) any acts or omissions of the Tort Trustee in administering the Tort Trust; (iii) any reimbursement and reporting obligations under the Medicare Act or any state's Medicaid or Workers Compensation statute; or (iv) any payment or non-payment of Claims. The Tort Trust shall indemnify and hold harmless the Trustee, the Post-Effective Date Debtor and the Post- Confirmation Officer from any and all claims, losses, causes of action, demands, liabilities, expenses, fees, including, but not limited to, attorneys' fees, and costs of any kind arising from or relating to (i) the creation, existence, operation or administration of the Tort Trust; (ii) any acts or omissions of the Tort Trustee in administering the Tort Trust; (iii) any reimbursement or reporting obligations under the Medicare Act or any state's Medicaid or Workers Compensation statute or (iv) any payment or non-payment by the Tort Trust to any Tort Trust Beneficiary. Prior to making any Tort Trust Distribution, the Tort Trust shall retain sufficient funds to meet the fees, costs and expenses of the Tort Trust.

***Resolving Liens Other than Imposed By the Medicare Act and States' Medicaid and Worker Compensation Statutes.*** Before disbursing any Tort Trust Assets to a Tort Trust Beneficiary, the Tort Trustee shall ensure that other liens that the Tort Trustee has received notice of have been resolved or have been otherwise satisfied. To that end, the Tort Trustee shall provide notice of the existence of any such lien(s) to the Tort Trust Beneficiary and, if applicable, his or her attorney, and it shall be the Tort Trust Beneficiary's (or his or her attorney's) responsibility to resolve such lien(s) against the Tort Trust Beneficiary's anticipated distribution of Tort Trust Assets within 120 days of notice from the Tort Trustee. If the lien has not been settled or otherwise resolved within this 120 day time period, with the Tort Trust Beneficiary's consent, the Tort Trustee may retain a firm with experience in resolving liens to satisfy the Tort Trust's Beneficiary's obligations as represented by the lien(s). Any payments made to resolve such lien(s), together with the fees paid to the lien resolution firm, shall be deducted from the Tort Trust Beneficiary's distribution of Tort Trust Assets prior to disbursement of the balance.

   3.      Nothing in this Addendum No. 2 is intended to or does modify the Agreement in any respect.

*Signature Page to Addendum No. 2 to Settlement and Release Agreement*

**PAUL D. MOORE, AS CHAPTER 11
TRUSTEE FOR
NEW ENGLAND COMPOUNDING
PHARMACY, INC.
D/B/A NEW ENGLAND COMPOUNDING
CENTER
AND NOT INDIVIDUALLY**

*Signature Page to Addendum No. 2 to Settlement and Release Agreement*

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF NEW ENGLAND COMPOUNDING PHARMACY, INC., BY AND THROUGH ITS COUNSEL AND CO-CHAIRS**

**BROWN RUDNICK LLP**

By:

David J. Molton, Esq.  (admitted *pro hac vice*)
Daniel J. Saval, Esq. (BBO #653906)
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801
dmolton@brownrudnick.com
dsaval@brownrudnick.com

and

William R. Baldiga, Esq.  (BBO #542125)
Kiersten A. Taylor, Esq. (BBO #681906)
One Financial Center
Boston, Massachusetts 02111
Telephone: (617) 856-8200
Facsimile: (617) 856-8201
wbaldiga@brownrudnick.com
ktaylor@brownrudnick.com

*Counsel to the Official Committee of Unsecured Creditors of New England Compounding Pharmacy, Inc.*

Page 5 of 6

*Signature Page to Addendum No. 2 to Settlement and Release Agreement*

**ANDREWS & THORNTON**

By: _____
Anne Andrews, Esq.
John C. Thornton, Esq.
Karren Schaeffer, Esq.
2 Corporate Park, Ste. 110
Irvine, CA 92606
Telephone: 949 748-1000
aa@andrewsthornton.com
jct@andrewsthornton.com
kschaeffer@andrewsthornton.com

*Counsel for Official Committee of Unsecured
Creditors of New England Compounding
Pharmacy, Inc. Member and Co-Chair, Katrina
Eldreth, obo Ari Gomez*


**COHEN PLACITELLA & ROTH P.C.**

By: _____
Michael Coren, Esq.
Harry Roth, Esq.
Two Commerce Square
2001 Market Street, Suite 2900
Philadelphia, PA 19103
Telephone: 215 567-3500
mcoren@cprlaw.com
hroth@cprlaw.com

*Counsel for Official Committee of Unsecured
Creditors of New England Compounding
Pharmacy, Inc. Member and Co-Chair,
Meghan Handy*

61785735 v4-WorkSiteUS-030764/0001

Page 6 of 6

*Signature Page to Addendum No. 2 to Settlement and Release Agreement*

**ANDREWS & THORNTON**

By: _____
Anne Andrews, Esq.
John C. Thornton, Esq.
Karren Schaeffer, Esq.
2 Corporate Park, Ste. 110
Irvine, CA 92606
Telephone: 949 748-1000
aa@andrewsthornton.com
jct@andrewsthornton.com
kschaeffer@andrewsthornton.com

*Counsel for Official Committee of Unsecured
Creditors of New England Compounding
Pharmacy, Inc. Member and Co-Chair, Katrina
Eldreth, obo Ari Gomez*

**COHEN PLACITELLA & ROTH P.C.**

By: _____
Michael Coren, Esq.
Harry Roth, Esq.
Two Commerce Square
2001 Market Street, Suite 2900
Philadelphia, PA 19103
Telephone: 215 567-3500
mcoren@cprlaw.com
hroth@cprlaw.com

*Counsel for Official Committee of Unsecured
Creditors of New England Compounding
Pharmacy, Inc. Member and Co-Chair,
Meghan Handy*

61785735 v4-WorkSiteUS-030764/0001