UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                       )
IN RE: NEW ENGLAND                     )
COMPOUNDING PHARMACY, INC.             )
PRODUCTS LIABILITY LITIGATION          )   MDL No. 13-2419-RWZ
                                       )
This Document Relates To:              )
                                       )
     All Tennessee Actions Against     )
     St. Thomas Entities               )
_____)

ORDER ON PLAINTIFFS' STEERING COMMITTEE'S
MOTION TO COMPEL REGARDING CERTAIN DOCUMENT REQUESTS[1]
[Docket No. 1664]

February 26, 2015

Boal, M.J.

The Plaintiffs' Steering Committee ("PSC") moves for an order compelling the Saint Thomas Entities[2] to produce (1) Saint Thomas Hospital's Approved Formulary; and (2) an index of Saint Thomas Hospital's policies and procedures.[3] Docket No. 1664. For the following reasons, this Court grants in part and denies in part the motion.

I.   FACTUAL AND PROCEDURAL BACKGROUND

This litigation involves claims for wrongful death and personal injury arising out of the

---

[1] The District Court referred all discovery motions to the undersigned on February 24, 2015. Docket No. 1708.

[2] The "Saint Thomas Entities" refers to Saint Thomas Health, Saint Thomas Network, and Saint Thomas Hospital West f/k/a Saint Thomas Hospital.

[3] The PSC's motion papers were unclear regarding which entities' documents it was seeking. At oral argument, the PSC clarified that it was seeking only the Saint Thomas Hospital's formulary and its index of policies. The PSC also stated that it believed that all of the Saint Thomas Entities were in possession, custody, or control of such documents.

-1-

administration of an injectable steroid, methylprednisolone acetate ("MPA"), manufactured by defendant New England Compounding Pharmacy, Inc. ("NECC").  The complaints allege, in substance, that NECC produced contaminated MPA that led to serious fungal infections and, in some cases, death.  Some plaintiffs have brought claims against numerous non-NECC parties, including the Saint Thomas Entities and Saint Thomas Outpatient Neurosurgical Clinic ("STOPNC").  The plaintiffs allege that STOPNC purchased contaminated injections from NECC and administered them to patients.  Docket No. 1665 at 3.  They also allege that STOPNC, its employees and agents decided to buy MPA from NECC without undertaking due diligence because it was the cheapest steroid available.  Id.  According to the Plaintiffs, STOPNC failed to follow the American Society of Health-System Pharmacists' guidelines, which establish due diligence standards healthcare providers should follow when purchasing compounded pharmaceuticals.  Id. at 6.

The plaintiffs allege that STOPNC is the actual or apparent agent of the Saint Thomas Entities.  Id. at 4.  STOPNC is co-owned by Saint Thomas Network and Howell Allen Clinic.  Id.  According to the plaintiffs, Saint Thomas Network is an "empty shell" with no employees.  Id.  Saint Thomas Network is owned by Saint Thomas Health, the same entity that owns Saint Thomas Hospital.  Id.  The plaintiffs allege that the Saint Thomas Entities and STOPNC hold themselves out to be one singular entity.  Id. at 5.  For example, when patients entered STOPNC, they were greeted by a receptionist wearing a nametag bearing the name "Saint Thomas Hospital."  Id. at 4-5.  STOPNC and the Saint Thomas Entities share the same location.  Id. at 5.  In addition, they intentionally foster the public perception that they are one united entity through a marketing campaign highlighting the tag line: "St. Thomas Health: One Name, One Healing

Community." Id.[4]  Based on these allegations, the plaintiffs assert, among others, claims for agency, apparent agency, and respondeat superior.  Id. at 6.

The PSC seeks an order compelling the Saint Thomas Entities to produce a copy of the Saint Thomas Hospital's formulary[5] and an index of all policies and procedures for Saint Thomas Hospital.  Docket No. 1664.  The PSC filed its motion on January 23, 2015.  Id.  The Saint Thomas Entities filed an opposition on February 9, 2015.  Docket No. 1682.  The Court heard oral argument on February 17, 2015.

II.     ANALYSIS

   A.     Standard Of Review

"Discovery procedures set forth in the Federal Rules of Civil Procedure seek to further the interests of justice by minimizing surprise at trial and ensuring wide-ranging discovery of information."  Cartel Asset Mgmt. v. Ocwen Fin. Corp., No. 01-cv-01644, 2010 WL 502721, at *9 (D. Colo. Feb. 8, 2010) (citing United States ex rel. Schwartz v. TRW, Inc., 211 F.R.D. 388, 392 (C.D. Cal. 2002)).  To that end, Rule 26(b) permits "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . ."  Fed. R. Civ. P. 26(b)(1).  "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Id.  Rule 26(b)(1) generally permits liberal discovery of relevant information.  Baker v. Liggett Group, Inc., 132 F.R.D. 123, 125 (D. Mass. 1990).  As the Supreme Court has instructed, because "discovery itself is designed to help define

---

[4] At oral argument, the Saint Thomas Entities represented that this marketing campaign was created after the operative events in this action.

[5] A formulary is a list of prescription medication authorized to be used in the Saint Thomas Hospital's operations.  Docket No. 1665 at 8.

and clarify the issues," the limits set forth in Rule 26 must be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978).

There are limits, however, on the scope of discovery. A court must limit discovery if it determines that the discovery sought is (1) unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the projected discovery in resolving the issues. See Fed. R. Civ. P. 26(b)(2)(C).

Moreover, "[d]iscovery is not a 'fishing expedition.'" Milazzo v. Sentry Ins., 856 F.2d 321, 322 (1st Cir. 1988). Parties must disclose some relevant factual basis for their claim before requested discovery will be allowed. Id.

### B.    The Hospital Formulary

In the course of discovery, the PSC requested that Saint Thomas Hospital produce "a copy of any emails, reports, memoranda, policies, procedures, guidelines or other material that addresses the purchase, administration and/or use of any medications on the St. Thomas Hospital Campus." Docket No. 1665 at 8. Saint Thomas Hospital objected to the request on various grounds, including that it was overly broad and sought irrelevant information. Id.

In addition, the PSC propounded the following interrogatory on Saint Thomas Hospital:

> **INTERROGATORY NO. 11**: Explain in detail St. Thomas Hospital's policies and procedures regarding the purchase of medications, including but not limited to a description of any applicable policies and procedures from Ascension.
>
> **ANSWER**: Subject to and without waiving the foregoing objections, as of 2012, STH generally purchased medications through McKesson, a group purchasing organization, by selecting from among available medications listed by McKesson in an online database. In the event that a medication that STH wanted to purchase was not available from McKesson, STH pharmacists followed the STH Formulary System policy and pharmacy procurement policies, which are being served herewith.

Docket No. 1665 at 9.

Saint Thomas Hospital produced a copy of its formulary policy. Docket No. 1665 at 9. It also produced portions of its formulary that referenced MPA. Id.; Docket No. 1682 at 4. STOPNC has produced a copy of its own formulary. Docket No. 1682 at 3.

The PSC asserts that the full Saint Thomas Hospital's formulary is relevant. Docket No. 1665 at 9-10. According to the PSC, compounded medications are generally more dangerous than medications manufactured by FDA regulated companies. Id. at 9. Plaintiffs' negligence claims are based on their allegations that STOPNC was negligent and reckless in purchasing compounded steroids from NECC. Id. at 9-10. The formulary will show how Saint Thomas Hospital "treats compounded pharmaceuticals as it relates to their FDA regulated equivalents." Id. at 10. In addition, if STOPNC's purchase of MPA from NECC was not in accordance with Saint Thomas Hospital's formulary, "that would be strong evidence of the Saint Thomas Entities' failure to adequately supervise its agent's purchase of MPA." Id.

The Saint Thomas Entities argue that the withheld portions of the Saint Thomas Hospital's formulary are not relevant. First, they argue that the formulary does not contain any information showing how Saint Thomas Hospital treats compounded pharmaceuticals. Docket

-5-

No. 1682 at 6-7.  In addition, they argue that Saint Thomas Hospital's formulary did not apply or govern STOPNC's purchases of medication and, therefore, STOPNC's purchase of MPA could not have been in accordance with Saint Thomas Hospital's formulary.  Id. at 8.

While Saint Thomas' theory may ultimately be proven to be correct at trial, the PSC is entitled to receive evidence that is relevant to its theory of the case.  The formulary is relevant to the PSC's claims based on agency, apparent agency, and respondeat superior against the Saint Thomas Entities.  Although the Saint Thomas Entities argue that the Saint Thomas Hospital's formulary did not apply to STOPNC, it may be evidence regarding what medications Saint Thomas Hospital believed to be safe.  The PSC is also entitled to probe Saint Thomas Hospital's assertion that the formulary did not apply to STOPNC and Saint Thomas Hospital's interpretation that the formulary does not contain any information showing how it treated compounded pharmaceuticals.  Accordingly, the Court grants the motion to compel with respect to Saint Thomas Hospital's formulary.

C.     The Index Of Policies

The PSC seeks an order compelling Saint Thomas Hospital to produce an index of all its policies and procedures.  The PSC had previously requested a copy of all of Saint Thomas Health's written policies, procedures and guidelines.  Docket No. 1665 at 10.[6]  The PSC acknowledges that request was overly broad.  Id.  Nevertheless, the PSC states that because it does not know what policies may be implicated by the request, it proposed that the Saint Thomas Hospital produce an index of all of its policies and procedures so that the PSC may evaluate

---

[6] It appears that the request for policies and procedures was originally directed at Saint Thomas Health, although the PSC now seeks the index of policies and procedures for Saint Thomas Hospital.  See Docket No. 1682 at 9, n. 23.

which policies and procedures may be relevant to the case. Id. The Saint Thomas Entities have refused to comply with this request. Id.

The PSC argues that policies and procedures that "provide system-wide definitions and instructions are highly relevant to establishing the facts supporting vicarious liability claims." Docket No. 1665 at 11. The Saint Thomas Entities argue that they have already produced relevant policies and procedures and the request for an index is simply a "fishing expedition." Docket No. 1682 at 9-11.

Courts have denied similar requests for an index or list of all of a party's policies and procedures. See, e.g., Ortiz v. Baird, No. 10-1753, 2012 WL 1391649, at *3 (W.D. Pa. April 20, 2012) (denying request for a copy of the Pennsylvania Department of Corrections' Master Index Procedural Manual); Perry v. City of Pontiac, No. 07-14036, 2011 WL 4345239, at *4 (E.D. Mich. Sept. 16, 2011) (denying request for a copy of the index to the general operating procedures for Pontiac police officers). The Court finds that the PSC has not shown that the index is relevant itself or an appropriate method for deducing relevant information. If the PSC does not know which policies may be relevant, it could draft a request for policies and procedures concerning those subjects that are relevant to the issues in these cases.

Accordingly, the Court denies the motion to compel with respect to the index of Saint Thomas Hospital's policies and procedures.

III.     ORDER

For the foregoing reasons, the Court grants in part and denies in part the PSC's motion to compel.  Saint Thomas Hospital shall produce a copy of its formulary within two weeks of the date of this Order.

                                                   /s/ Jennifer C. Boal
                                                   JENNIFER C. BOAL
                                                   United States Magistrate Judge