**<u>EXHIBIT A</u>**

Case 1:13-md-02419-RWZ Document 1714-1 Filed 03/03/15 Page 2 of 99

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MASSACHUSETTS
### EASTERN DIVISION

In re:

NEW ENGLAND COMPOUNDING
PHARMACY, INC.,

              Debtor.

Chapter 11

Case No. 12-19882-HJB

## ORDER (I) APPROVING THE ADEQUACY OF THE AMENDED JOINT DISCLOSURE STATEMENT; (II) APPROVING SOLICITATION AND NOTICE PROCEDURES WITH RESPECT TO CONFIRMATION OF THE PLAN PROPONENTS' FIRST AMENDED JOINT PLAN OF REORGANIZATION; (III) APPROVING THE FORM OF VARIOUS BALLOTS AND NOTICES IN CONNECTION THEREWITH; (IV) SCHEDULING CERTAIN DATES WITH <u>RESPECT THERETO; AND (V) GRANTING RELATED RELIEF</u>

Upon the motion (the "Motion") of Paul D. Moore, the Chapter 11 trustee (the "Trustee") for the bankruptcy estate of New England Compounding Pharmacy, Inc., a Massachusetts corporation, the above-captioned debtor ("NECC" or the "Debtor"), and the Official Committee of Unsecured Creditors (the "Committee," and together with the Chapter 11 Trustee, the "Plan Proponents") for entry of this Disclosure Statement Order: (i) approving the adequacy of the Disclosure Statement for the First Amended Joint Chapter 11 Plan of NECC, substantially in the form filed on February 22, 2015 [Docket. No. 1155] (as amended from time to time and including all exhibits and supplements thereto, the "Disclosure Statement"), filed in support of the First Amended Joint Chapter 11 Plan of NECC, substantially in the form filed on February 22, 2015 [Docket No. 1154] (as amended from time to time and including all exhibits and supplements thereto, the "Plan");[1] (ii) approving solicitation and notice procedures (the "Solicitation Procedures") with respect to Confirmation of the Plan; (iii) approving the forms of

---

[1]     Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Plan or in the Motion, as applicable.

Ballot and notices in connection therewith; (iv) scheduling certain dates with respect thereto; and (v) granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference* from the United States District Court for the District of Massachusetts, codified in the District Court's Local Rules at L.R. 201, D. Mass; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtor's estate, its creditors, and other parties in interest; and this Court having found that notice of and opportunity for a hearing on the Motion were appropriate and no other or further notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, and consideration of any and all objections to the Motion and any statements of counsel in support of such objections, it is HEREBY ORDERED THAT:

1.      The Motion is GRANTED as set forth herein.

2.      The Plan Proponents have provided adequate notice of the time fixed for filing objections and the hearing to consider approval of the Disclosure Statement.

3.      The *Disclosure Statement for the First Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc. Dated February 22, 2015*, substantially in the form filed

with the Court on February 22, 2015 (the "Disclosure Statement") is approved pursuant to

section 1125(a)(1) of the Bankruptcy Code and Bankruptcy Rule 3017(b) as containing adequate

information (as defined by section 1125(a) of the Bankruptcy Code). To the extent not

withdrawn, settled, or otherwise resolved, any objections to the approval of the Disclosure

Statement are hereby overruled.

4.     The Plan confirmation timeline set forth below (the "Plan Confirmation

Schedule") is hereby approved:

| Event | Date |
|---|---|
| Voting Record Date | March 6, 2015 |
| Voting Deadline | May 5, 2015 at 4:00 p.m. (prevailing Eastern time) |
| Plan Objection Deadline | May 5, 2015 |
| Deadline to File Confirmation Reply Brief | May 12, 2015 |
| Deadline to File Voting Report | On or before May 12, 2015 |
| Confirmation Hearing | May 19, 2015 at 10:00 a.m. (prevailing Eastern Time) |

5.     The Plan Proponents are authorized to make non-substantive or immaterial

changes to the Disclosure Statement, the Plan, the Solicitation Package and related documents

without further order of the Court, including changes to correct typographical and grammatical

errors and to make conforming changes among the Disclosure Statement, the Plan and related

documents (including the exhibits and appendices thereto).

6.     Pursuant to Bankruptcy Rule 3018(a), March 6, 2015 shall be the Voting Record

Date for determining: (a) holders of Claims that are entitled to vote on the Plan; and (b) whether

Claims have been properly transferred, including pursuant to Bankruptcy Rule 3001(e), such that the assignee may vote on the Plan.

7.     The Solicitation Procedures, substantially in the form attached hereto as <u>Exhibit 1</u> and incorporated by reference herein, are approved.

8.     The Short-Form Notice, substantially in the form attached hereto as <u>Exhibit 2</u>, is approved. Service of the Short-Form Notice as described in the Motion shall satisfy Fed. R. Bankr. P. 3017(f).  The Plan Proponents are authorized to use the Lists (as defined in this Court's *Interim Order Regarding Chapter 11 Trustee's Motion for an Order Establishing Bad Dates for Filing Proofs of Claim and for Related Relief Concerning Notice by Notice Intermediaries* [Docket No. 412]) to effect service of the Short-Form Notice.

9.     The Confirmation Hearing Notice, substantially in the form attached hereto as <u>Exhibit 3</u>, complies with the requirements of Bankruptcy Rules 2002(b), 2002(d) and 3017(d) and is approved.

10.     The Trustee's Letter to the Voting Classes, substantially in the form attached hereto as <u>Exhibit 4-A</u>, is approved.

11.     The Official Committee's Letter to Holders of General Unsecured Claims and Tort Claims, substantially in the form attached hereto as <u>Exhibit 4-B</u>, is approved.

12.     The Plaintiff Steering Committee's Letter to Holders of Tort Claims, substantially in the form attached hereto as <u>Exhibit 4-C</u>, is approved.

13.     The procedures for distributing the Solicitation Packages as set forth in the Motion satisfy the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.  The Plan Proponents shall distribute or cause the Solicitation Packages to be distributed to all Entities entitled to vote to accept or reject the Plan on or before March 11, 2015.

14.    The forms of Ballots (including the voting instructions) for Claims other than Tort
Claims, substantially in the form attached hereto as Exhibit 5-A and Exhibit 5-B, are approved.

15.    The form of Ballot (including the voting instructions) for Tort Claims,
substantially in the form attached hereto as Exhibit 6, is approved.

16.    The Voting Deadline shall be May 5, 2015 at 4:00 p.m. (prevailing Eastern time),
unless otherwise extended by the Plan Proponents.  All votes to accept or reject the Plan must be
cast by using the appropriate Ballot.  All Ballots must be properly executed, completed, and
delivered according to their applicable voting instructions by: (a) first class mail, in the return
envelope provided with each Ballot; (b) overnight delivery; or (c) personal delivery, so that the
Ballots are **actually received** by the Claims and Noticing Agent no later than the Voting
Deadline at the return address set forth in the applicable Ballot.

17.    The Presumed to Accept Notice, substantially in the form attached hereto as
Exhibit 7, is approved.

18.    The Plan Proponents shall cause the Presumed to Accept Notice to be served as
set forth in the Motion.

19.    The Disclosure Statement, the Plan, the Confirmation Hearing Notice, the Ballots
and the Presumed to Accept Notice provide all parties in interest with sufficient notice regarding
the settlement, release, exculpation, and injunction provisions contained in the Plan in
compliance with Bankruptcy Rule 3016(c).

20.    The Plan Proponents shall not be required to solicit votes from the following: (a)
holders of Administrative Expense Claims and Allowed Priority Tax Claims (each in their
capacities as such) because such claims are Unclassified under the Plan and therefore are not
entitled to vote on the Plan; (b) holders of Priority Non-Tax Claims and Miscellaneous Secured

Claims because such Claims are Unimpaired under the Plan and are conclusively presumed to accept the Plan; and (c) holders of Equity Interests because Equity Interests are Unimpaired under the Plan and are conclusively presumed to accept the Plan. In lieu of distributing a Solicitation Package to such Holders of Claims or Interests, the Plan Proponents shall cause the Confirmation Hearing Notice and the Presumed to Accept Notice to be served on such Holders of Claims or Interests that are not entitled to vote.

21. The Plan Proponents shall be excused from mailing Solicitation Packages to those Entities to whom the Plan Proponents caused a notice regarding the Disclosure Statement Hearing to be mailed, but received a notice from the United States Postal Service or other carrier that such notice was undeliverable, unless such Entity provides the Plan Proponents, through the Claims and Noticing Agent, an accurate address no later than ten (10) calendar days before the Solicitation Date. If an Entity has changed its mailing address after the Petition Date, the burden is on that Entity -- not the Plan Proponents -- to advise the Plan Proponents and the Claims and Noticing Agent of the new address.

22. The Assumed Executory Contracts and Unexpired Leases Notice, substantially in the form attached hereto as Exhibit 8, is hereby approved.

23. The Rejected Executory Contracts and Unexpired Leases Notice, substantially in the form attached hereto as Exhibit 9, is hereby approved.

24. The Plan Proponents shall cause to be mailed to non-Debtor counterparties to the Executory Contracts and Unexpired Leases: (a) as applicable, the Assumption Notice or the Rejection Notice notifying such counterparty of the forthcoming assumption or rejection of their Executory Contract or Unexpired Lease (and any amount to cure unpaid obligations under such contract or lease pursuant to section 365 of the Bankruptcy Code (the "Cure Obligation")) no

later than ten days prior to the Plan Objection Deadline; and (b) the Confirmation Hearing Notice.

25.     Unless otherwise ordered by the Court, counterparties to Executory Contracts and Unexpired Leases that are identified to be assumed or rejected pursuant to the Plan (including Executory Contracts or Unexpired Leases identified in the Plan Supplement) shall have until fourteen (14) days from service of the Assumption Notice or Rejection Notice, as applicable, to file an objection to the proposed assumption, Cure Obligation, or rejection.

26.     The Disputed Claim Notice, substantially in the form attached hereto as Exhibit 10, is approved.

27.     The Plaintiffs' Steering Committee's "plain English" explanations regarding the significance of approval of the Disclosure Statement and of the Confirmation Hearing, substantially in the form attached hereto as Exhibit 11, is approved.

28.     The Plan Proponents will publish once in a newspaper of national circulation a notice substantially incorporating the text of the Short-Form Notice, as set forth in Exhibit 2 hereto, no later than thirty (30) days before the Voting Deadline and Plan Objection Deadline (UniFirst shall bear any and all costs related to such publication). Given the prior publication of the Bar Date notice in this case, the Court finds publication of the Short-Form Notice is good and sufficient notice of the relief sought under the Plan.

29.     The Plan Objection Deadline shall be May 5, 2015.

30.     Any objections to the Plan must be filed by the Plan Objection Deadline and must: (a) be in writing; (b) conform to the Bankruptcy Rules and the Local Rules; (c) state the name and address of the objecting party and the amount and nature of such party's Claim or Interest; (d) state with particularity the basis and nature of any objection to the Plan; (e) propose

a modification to the Plan that would resolve such objection (if applicable); and (f) be filed, contemporaneously with a proof of service, with this Court and served so that it is actually received by each of the notice parties identified in the Confirmation Hearing Notice by the Plan Objection Deadline.

31.     The Confirmation Hearing shall be held on May 19, 2015 at 10:00 a.m. (prevailing Eastern time), which hearing may be continued from time to time by this Court or the Plan Proponents, without further notice other than by such adjournment being announced in open court or by a notice of adjournment filed with this Court and served on: (a) all entities that have filed a request for service of filings in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002; and (b) each of the notice parties identified in the Confirmation Hearing Notice.

32.     The Plan Proponents are authorized, without further order of this Court, to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

33.     With the exception of this Court's determination of compliance with 11 U.S.C. § 1125 and related findings in support thereof, nothing herein shall be deemed to have determined or to affect the right of any party in interest to file objections to confirmation of the Plan, including, without limitation, objections to the release and injunction provisions of the Plan.  All such rights are hereby expressly reserved.

34.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Disclosure Statement Order are immediately effective and enforceable upon its entry.

Case 1:13-md-02419-RWZ   Document 1714-1   Filed 03/03/15   Page 10 of 98

35.    This Court retains jurisdiction with respect to all matters arising from or related to

the implementation, interpretation, and enforcement of this Disclosure Statement Order.

Dated: Springfield, Massachusetts
           March 3, 2015

_____
Honorable Henry J. Boroff
United States Bankruptcy Judge

Case 1:13-md-02419-RWZ   Document 1714-1   Filed 03/03/15   Page 11 of 98

# **EXHIBIT 1**

## **Solicitation Procedures**

## IN THE UNITED STATES BANKRUPTCY COURT
## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MASSACHUSETTS
## EASTERN DIVISION

|  |  |
|---|---|
| In re:<br><br>NEW ENGLAND COMPOUNDING PHARMACY, INC.,<br><br>                   Debtor. | Chapter 11<br><br>Case No. 12-19882-HJB |

## SOLICITATION PROCEDURES

On [___], 2015, the United States Bankruptcy Court for the District of Massachusetts (the "Court") entered the *Order (I) Approving the Plan Proponents' Disclosure Statement, (II) Approving Solicitation and Notice Procedures With Respect to Confirmation of the Plan Proponents' Joint Plan of Reorganization, (III) Approving the Form of Various Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates With Respect Thereto, and (V) Granting Related Relief* [Docket No. ___] (the "Disclosure Statement Order") that, among other things: (a) approved the adequacy of the *Disclosure Statement for First Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc.* [Docket No. 1155] (as amended and including all exhibits and supplements thereto, the "Disclosure Statement") filed in support of the *First Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc.* [Docket No. 1154] (as amended and including all exhibits and supplements thereto, the "Plan"); and (b) authorized the Plan Proponents to solicit acceptances or rejections of the Plan from holders of Impaired Claims who are (or may be) entitled to receive distributions under the Plan.[1]

### A.    The Voting Record Date

The Court has approved March 6, 2015, as the record date for purposes of determining which holders of Claims in Class C (General Unsecured Claims), Class D (Tort Claims), and Class E (Subordinated Claims) are entitled to vote on the Plan (the "Voting Record Date").

### B.    <u>The Voting Deadline</u>

The Court has approved May 5, 2015, at 4:00 p.m. (Eastern Prevailing Time), as the voting deadline (the "Voting Deadline") for the Plan. The Plan Proponents may extend the Voting Deadline, at their discretion, without further order of the Court. To be counted as votes to accept or reject the Plan, all ballots sent to holders of Claims ("Ballots") must be properly

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable. Copies of the Plan, the Disclosure Statement, and the Disclosure Statement Order may be obtained from Donlin, Recano & Co., Inc., the Debtor's claims and noticing agent at the address and in the manner provided below.

executed, completed and delivered by: (1) first class mail; (2) overnight courier; or (3) personal delivery, so that they are **actually received** no later than the Voting Deadline by the Claims and Noticing Agent. All Ballots should be sent to Donlin, Recano & Co., Inc., the claims and noticing agent retained by the Debtor in the Chapter 11 Cases (the "Claims and Noticing Agent"), at:

| If by First Class Mail: | If by Hand Delivery or Overnight Mail: |
|---|---|
| Donlin, Recano & Company, Inc.<br>**Re: New England Compounding Pharmacy, Inc.**<br>Attn: Voting Department<br>P.O. Box 2034, Murray Hill Station<br>New York, NY 10156-0701 | Donlin, Recano & Company, Inc.<br>**Re: New England Compounding Pharmacy, Inc.**<br>Attn: Voting Department<br>6201 15th Ave<br>Brooklyn, NY 11219 |

Delivery of a Ballot to the Claims and Noticing Agent by facsimile, email or any other electronic means will not be valid.

**C. Form, Content and Manner of Notices**

1. The Solicitation Package.

The following materials shall constitute the solicitation package (the "Solicitation Package"):

a. the Disclosure Statement, as approved by the Court (with all exhibits thereto, including the Plan and the exhibits to the Plan);

b. the Solicitation Procedures;

c. the *Notice of Order (I) Approving the Plan Proponents' Disclosure Statement, (II) Approving Solicitation and Notice Procedures With Respect to Confirmation of the Plan Proponents' Joint Plan of Reorganization, (III) Approving the Form of Various Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates With Respect Thereto, and (V) Granting Related Relief* [Docket No. ___], in substantially the form attached as Exhibit 3 to the Disclosure Statement Order (the "Confirmation Hearing Notice");

d. a letter from the Trustee, in substantially the form attached as Exhibit 4-A to the Disclosure Statement Order: (i) describing the contents of the Solicitation Package; and (ii) urging the holders of Claims in each of the Voting Classes to vote to accept the Plan;

e. a letter from the Committee, in substantially the form attached as Exhibit 4-B to the Disclosure Statement Order, urging holders of General Unsecured Claims and Tort Claims to vote to accept the Plan;

f. a letter from the Plaintiffs' Steering Committee, in substantially the form attached as Exhibit 4-C to the Disclosure Statement Order, urging holders of Tort Claims to vote

2

to accept the Plan;

g.      an appropriate form of Ballot, in substantially the form of the Ballot attached as <u>Exhibit 5-A</u>, <u>Exhibit 5-B</u>, or <u>Exhibit 6</u> to the Disclosure Statement Order, in accordance with the type of Claim;

h.      any supplemental documents the Plan Proponents file with the Court and any documents that the Court orders to be made available.

2.      **Distribution of the Solicitation Package.**

The Plan Proponents shall cause the Solicitation Package (other than the Ballots) to be provided either in paper form or in CD-ROM format, and the Ballots shall be provided in paper format.  Paper copies of the documents otherwise provided may be obtained: (a) from the Claims and Noticing Agent at no charge by: (i) accessing the website for the Claims and Noticing Agent at http://www.drcdrx.com/cases/caseinfo/necp; (ii) writing to the Claims and Noticing Agent by First Class Mail at P.O. Box 2034, Murray Hill Station, New York, NY 10156-0701, Re: New England Compounding Pharmacy, Inc., Attn: Voting Department; (iii) writing to the Claims and Noticing Agent by Hand Delivery or Overnight Mail at 6201 15th Ave, Brooklyn, NY 11219, Re: New England Compounding Pharmacy, Inc., Attn: Voting Department; (iv) calling the Claims and Noticing Agent at (212) 771-1128; or (b) for a fee via PACER at https://ecf.mab.uscourts.gov/.

The Plan Proponents shall serve, or cause to be served, all of the materials in the Solicitation Package (other than the Ballots) on: (a) the Office of the United States Trustee for the District of Massachusetts; (b) the Internal Revenue Service; and (c) each party that has requested notice pursuant to Bankruptcy Rule 2002.

In addition, the Plan Proponents shall cause the Solicitation Package (including the Ballots) to be mailed to each of the following entities listed in subparagraphs (i) through (v) below:

i.      all entities who, on or before the Voting Record Date, have timely filed a proof of claim (or an untimely proof of claim which has been allowed as timely by the Court under applicable law on or before the Voting Record Date) that: (A) has not been expunged, disallowed, disqualified, withdrawn or superseded prior to the Voting Record Date; and (B) is not the subject of a pending objection on the Voting Record Date; <u>provided</u>, <u>however</u>, that the holder of a Claim that is the subject of a pending objection on a "reduce and allow" basis shall receive a Solicitation Package and be entitled to vote such Claim in the reduced amount contained in such objection;

ii.      all entities that are listed in the Debtor's Schedules as holding a non-contingent, liquidated, undisputed Claim as of the Voting Record Date, except to the extent that such Claim was paid, expunged, disallowed, disqualified or superseded by a timely filed proof of claim prior to the Voting Record Date;

iii.      all entities that hold Claims pursuant to an agreement or settlement with the Debtor executed prior to the Voting Record Date, as reflected in a document filed with the

Court, in an order of the Court, or in a document executed by the Debtor pursuant to authority granted by the Court, in each case regardless of whether a Proof of Claim has been filed;

iv.    holders of any Disputed Claim that has been temporarily Allowed for voting purposes pursuant to Bankruptcy Rule 3018; and

v.    with respect to any entity described in subparagraphs (i) through (iv) above who, on or before the Voting Record Date, has transferred such entity's Claim to another entity, to the assignee of such Claim in lieu of sending such Solicitation Package to the assigning entity, provided, however, that such transfer or assignment has been fully effectuated pursuant to the procedures set forth in Bankruptcy Rule 3001(e) and such transfer is reflected on the Claims Register on the Voting Record Date.

3.    **Resolution of Disputed Claims for Voting Purposes; Resolution Event.**

a.    The holders of a Claim in a Voting Class that is the subject of a pending objection on a "reduce and allow" basis shall be entitled to vote such Claim in the reduced amount contained in such objection.

b.    If a Claim in a Voting Class is subject to an objection other than a "reduce and allow" objection that is filed with the Court on or prior to seven (7) days before the Voting Deadline: (i) the Plan Proponents shall cause the applicable holder to be served with a Disputed Claims Notice substantially in the form attached as Exhibit 10 to the Disclosure Statement Order; and (ii) the applicable holder shall not be entitled to vote to accept or reject the Plan on account of such Claim unless a Resolution Event (as defined herein) occurs as provided by Section C herein.

c.    If a Claim in a Voting Class is subject to an objection other than a "reduce and allow" objection that is filed with the Court less than seven (7) days before the Voting Deadline, the applicable Claim shall be deemed temporarily allowed for voting purposes only, without further action by the holder of such Claim and without further order of the Court, unless the Court orders otherwise.

d.    A "Resolution Event" means the occurrence of one or more of the following events no later than three (3) days prior to the Voting Deadline:

i.    an order of the Court is entered allowing such Claim pursuant to section 502(b) of the Bankruptcy Code, after notice and a hearing;

ii.    an order of the Court is entered temporarily allowing such Claim for voting purposes only pursuant to Bankruptcy Rule 3018(a), after notice and a hearing;

iii.    a stipulation or other agreement is executed between the holder of such Claim and the Plan Proponents resolving the objection and allowing such Claim in an agreed upon amount;

4

     iv.  a stipulation or other agreement is executed between the holder of such Claim and the Plan Proponents temporarily allowing the holder to vote its Claim in an agreed upon amount; or

      v.  the pending objection is voluntarily withdrawn by the objecting party.

  e.  No later than two (2) business days following the occurrence of a Resolution Event, the Plan Proponents shall cause the Claims and Noticing Agent to distribute via email, hand delivery, or overnight courier service a Solicitation Package and a pre-addressed, postage pre-paid envelope to the relevant holder.

  **4.**  **Form of Notice to Classes Presumed to Accept the Plan**. Certain holders of Claims and Interests that are not classified in accordance with section 1123(a)(1) of the Bankruptcy Code or who are not entitled to vote because they are Unimpaired or otherwise presumed to accept the Plan under section 1126(f), will receive only the Presumed to Accept Notice, substantially in the form attached as <u>Exhibit 6</u> to the Disclosure Statement Order.  Such notice will instruct these holders as to how they may obtain copies of the documents contained in the Solicitation Package (excluding Ballots).

  **5.**  **Executory Contracts and Unexpired Leases**. Counterparties to Executory Contracts and Unexpired Leases that are identified in the Plan to be assumed shall be given until fourteen days from the notice of assumption of their applicable Executory Contracts and Unexpired Leases to file an objection to the proposed assumption and/or cure.

  **D.**  <u>**Voting and Tabulation Procedures**</u>

  **1.**  **Holders of Claims Entitled to Vote**. Only the following holders of Claims in the Voting Classes shall be entitled to vote with regard to such Claims:

  a.  holders of Claims who, on or before the Voting Record Date, have timely filed a Proof of Claim (or an untimely Proof of Claim which has been Allowed as timely by the Court under applicable law on or before the Voting Record Date) that (i) has not been expunged, disallowed, disqualified, withdrawn or superseded prior to the Voting Record Date; and (ii) is not the subject of a pending objection, other than a "reduce and allow" objection, filed with the Court at least seven days prior to the Voting Deadline, pending a Resolution Event; <u>provided</u>, <u>however</u>, that the holder of a Claim that is the subject of a pending objection on a "reduce and allow" basis shall receive a Solicitation Package and be entitled to vote such Claim in the reduced amount contained in such objection;

  b.  holders of Claims that are listed in the Debtor's Schedules, <u>other than</u> Claims that are scheduled as contingent, unliquidated or disputed (but excluding such scheduled disputed, contingent, or unliquidated Claims that have been superseded by a timely filed Proof of Claim);

  c.  holders of Claims that arise pursuant to an agreement or settlement with the Debtor, as reflected in a document filed with the Court, in an order of the Court, or in a document executed by the Debtor pursuant to authority granted by the Court, in each case regardless of whether a Proof of Claim has been filed;

d.      holders of any Disputed Claim that has been temporarily Allowed to vote on the Plan pursuant to Bankruptcy Rule 3018; and

e.      the assignee of a timely filed Claim or a Claim listed in the Schedules as noncontingent, undisputed, and liquidated shall be permitted to vote such Claim only if the transfer or assignment has been fully effectuated pursuant to the procedures set forth in Bankruptcy Rule 3001(e) and such transfer is reflected on the Claims Register on the Voting Record Date.

2.      **Establishing Claim Amounts for Voting Purposes for Non-Tort Claims**.  The Claim amount established herein shall control for voting purposes only and shall not constitute the Allowed amount of any Claim.  Moreover, any amounts filled in on Ballots by the Debtor through the Claims and Noticing Agent, as applicable, are not binding for purposes of allowance and distribution.  In tabulating votes, the following hierarchy shall be used to determine the amount of the Claim associated with each claimant's vote:

a.      the Claim amount settled and/or agreed upon by the Plan proponents, as reflected in a document filed with the Court, in an order of the Court, or in a document executed by the Plan Proponents pursuant to authority granted by the Court;

b.      the Claim amount Allowed (temporarily or otherwise) pursuant to a Resolution Event under the procedures set forth herein;

c.      the Claim amount contained in a Proof of Claim that has been timely filed by the Claims Bar Date (or deemed timely filed by the Court under applicable law), except for any amounts asserted on account of any interest accrued after the Petition Date; provided, however, that Ballots cast by holders of Claims who timely file a Proof of Claim in respect of a contingent Claim or in a wholly-unliquidated or unknown amount that is not the subject of an objection will count for satisfying the numerosity requirement of section 1126(c) of the Bankruptcy Code and such a Ballot will count as a Ballot for a Claim in the amount of $1.00 solely for the purposes of satisfying the dollar amount provisions of section 1126(c) of the Bankruptcy Code, and, if a Proof of Claim is filed as partially liquidated and partially unliquidated, such Claim will be Allowed for voting purposes only in the liquidated amount; provided further, however, that to the extent the Claim amount contained in the Proof of Claim is different from the Claim amount set forth in a document filed with the Court as referenced in subparagraph (a) above, the Claim amount in the document filed with the Court shall supersede the Claim amount set forth on the respective Proof of Claim;

d.      the Claim amount listed in the Debtor's Schedules, provided that such Claim is not scheduled as contingent, disputed, or unliquidated and has not been paid; and

e.      in the absence of any of the foregoing, zero.

3.      **Establishing Claim Amounts for Voting Purposes for Tort Claims**.   The Claim amount established herein shall control for voting purposes only and shall not constitute the Allowed amount of any Claim.  Moreover, any designation of injury level by the holder of a Tort Claim or his or her attorney will be for voting purposes only and not be binding upon the

6

holder or Plan Proponents for purposes of allowance and distribution.  In tabulating votes, the following amounts shall be assigned each claimant's vote:

        a.      if no injury has been noted, no Personal Injury Tort or Wrongful Death Addendum has been filed, and no basis for harm has been stated by the holder of the Claim, or the holder of the Claim states that his or her Claim is based solely on a loss of consortium, then the Claim will be assigned a value of 1 point, solely for voting purposes.

        b.      if the basis for the claim is exposure to a contaminated NECC product, but no meningitis, abscess, stroke, or infection has been diagnosed, then the Claim will be assigned a value of 10 points, solely for voting purposes.

        c.      if exposure to a contaminated NECC product has resulted in meningitis, abscess, stroke, or infection, but not death, then the Claim will be assigned a value of 80 points, solely for voting purposes.

        d.      if exposure has resulted in the holder of the Claim's death, then the Claim will be assigned a value of 120 points, solely for voting purposes.

For the purposes of tabulation, each point shall be worth $1.00, <u>solely</u> for voting purposes.

        4.      **General Voting and Ballot Tabulation Procedures**.  The following voting procedures and standard assumptions shall be used in tabulating Ballots, subject to the Plan Proponents' right to waive any of the below specified requirements for completion and submission of Ballots so long as such requirement is not otherwise required by the Bankruptcy Code, Bankruptcy Rules, or Local Rules:

        a.      except as otherwise provided in the Solicitation Procedures, unless the Ballot being furnished is timely submitted on or prior to the Voting Deadline (as the same may be extended by the Plan Proponents), the Plan Proponents shall reject such Ballot as invalid and, therefore, shall not count it in connection with Confirmation of the Plan;

        b.      the Claims and Noticing Agent will date- and time-stamp all Ballots when received, provided the Ballots are received in the year following the Solicitation Date.  The Claims and Noticing Agent shall retain the original Ballots and an electronic copy of the same for a period of two years after the effective date of the Plan, unless otherwise ordered by the Court;

        c.      the method of delivery of Ballots to be sent to the Claims and Noticing Agent is at the election and risk of each holder, and except as otherwise provided, a Ballot will be deemed delivered only when the Claims and Noticing Agent actually receives the original executed Ballot;

        d.      an original executed Ballot is required to be submitted by the Entity submitting such Ballot.  Delivery of a Ballot to the Claims and Noticing Agent by facsimile, email or any other electronic means will not be valid;

e.     no Ballot should be sent to the Plan Proponents, the Plan Proponents' agents (other than the Claims and Noticing Agent), the Plan Proponents' financial or legal advisors, or the Bankruptcy Court and, if so sent, will not be counted;

f.     if multiple Ballots are received from the same holder with respect to the same Claim prior to the Voting Deadline, the last properly executed Ballot timely received will be deemed to reflect that voter's intent and will supersede and revoke any prior Ballot;

g.     holders must vote all of their Claims or Interests within a particular Class either to accept or reject the Plan and may not split any votes.  Accordingly, a Ballot that partially rejects and partially accepts the Plan will not be counted.  Further, to the extent there are multiple Claims within the same Class, the Plan Proponents may, in their discretion, aggregate the Claims of any particular holder within a Class for the purpose of counting votes;

h.     except where otherwise specified in the Order, each holder of a Claim shall be deemed to have voted the full amount of its Claim;

i.     if a party that is entitled to vote has more than one Claim within the same Class based upon different transactions, such party shall be entitled to one vote for numerosity purposes in the aggregate dollar amount of all of said Claims;

j.     to the extent that any creditor entitled to vote in a given Class has filed duplicate Claims (meaning the Claims are in the same amount, with the same classification and asserting the same basis of Claim) to be voted in such Class, such creditor shall be provided, to the extent possible, with only one Solicitation Package and one Ballot, which shall reflect the vote of only one such Claim;

k.     a person signing a Ballot in his or her capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation or otherwise acting in a fiduciary or representative capacity of a holder of a Claim must indicate such capacity when signing;

l.     the Plan Proponents, subject to contrary order of the Court, may waive any defects or irregularities as to any particular Ballot at any time, either before or after the close of voting, and any such waivers will be documented in a voting report filed with the Court which details the results of the Plan voting process (the "Voting Report");

m.     neither the Plan Proponents, nor any other entity, will be under any duty to provide notification of defects or irregularities with respect to delivered Ballots other than as provided in the Voting Report, nor will they incur any liability for failure to provide such notification;

n.     unless waived or as ordered by the Court, any defects or irregularities in connection with deliveries of Ballots must be cured prior to the Voting Deadline or such Ballots will not be counted;

o.     in the event a designation is requested by a party in interest under section 1126(e) of the Bankruptcy Code, the Court will determine whether any vote to accept and/or reject the

8

Plan cast with respect to such Claim will be counted for purposes of determining whether the Plan has been accepted and/or rejected;

p.      subject to any order of the Court, the Plan Proponents reserve the right to reject any and all Ballots not in proper form, the acceptance of which, in the opinion of the Plan Proponents, would not be in accordance with the provisions of the Bankruptcy Code or the Bankruptcy Rules; provided, however, that any such rejections will be documented in the Voting Report;

q.      if a Claim has been estimated or otherwise Allowed for voting purposes only by order of the Court, such Claim shall be temporarily Allowed in the amount so estimated or Allowed by the Court for voting purposes only, and not for purposes of allowance or distribution; provided, however, that if a Claim has been estimated by the Court for purposes of allowance and discharge pursuant to section 502(c) of the Bankruptcy Code, such allowance shall be for both voting and distribution purposes;

r.      where an objection to a Claim has been filed, such Claim shall be treated in accordance with the procedures set forth herein;

s.      the following Ballots shall not be counted in determining the acceptance or rejection of the Plan: (i) any Ballot that is illegible or contains insufficient information to permit the identification of the holder of such Claim; (ii) any Ballot cast by an Entity that does not hold a Claim in a Voting Class; (iii) any Ballot cast for a Claim scheduled as unliquidated, contingent, or disputed for which no Proof of Claim was timely filed; (iv) any unsigned Ballot or Ballot lacking an original signature; (v) any Ballot not marked to accept or reject the Plan; (vi) any Ballot marked both to accept and reject the Plan; and (vii) any Ballot submitted by any entity not entitled to vote pursuant to the procedures described herein;

t.      after the Voting Deadline, no Ballot may be withdrawn or modified without the prior written consent of the Plan Proponents; and

u.      the Plan Proponents are authorized to enter into stipulations with the holder of any Claim agreeing to the amount of a Claim for voting purposes.

*      *      *      *      *

9

## EXHIBIT 2

**Short Form Confirmation Hearing Notice**

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
### EASTERN DIVISION

| | |
|---|---|
| **In re:** | |
| **NEW ENGLAND COMPOUNDING PHARMACY, INC.,** | **Chapter 11** |
| | **Case No. 12-19882-HJB** |
| **Debtor.** | |

## NOTICE OF HEARING TO CONSIDER CONFIRMATION OF CHAPTER 11 PLAN OF LIQUIDATION AND RELATED OBJECTION DEADLINE

**PLEASE TAKE NOTICE** that on December 3, 2014, Paul D. Moore, the chapter 11 trustee of New England Compounding Pharmacy, Inc. d/b/a New England Compounding Center ("NECC" or the "Debtor"), and the Official Committee of Unsecured Creditors of NECC (together, the "Plan Proponents") filed the *Joint Motion of Chapter 11 Trustee and the Official Committee of Unsecured Creditors for Order (I) Approving the Plan Proponents' Disclosure Statement, (II) Approving Solicitation and Notice Procedures with Respect to Confirmation of the Plan Proponents' Joint Plan of Reorganization, (III) Approving the Form of Various Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief* (the "DS Motion"), seeking approval of the Disclosure Statement (as amended, the "Disclosure Statement") for the First Amended Joint Chapter 11 Plan of NECC (as amended, the "Plan").

**PLEASE TAKE FURTHER NOTICE** that on March __, 2015, the United States Bankruptcy Court for the District of Massachusetts (the "Bankruptcy Court") entered an order granting the DS Motion (the "DS Approval Order"), which, among other things, approved the Disclosure Statement and authorized the Plan Proponents to begin soliciting votes for confirmation of the Plan in accordance with the terms of the DS Approval Order.

**PLEASE TAKE FURTHER NOTICE** that the Bankruptcy Court will hold a hearing on May 19, 2015 at 10:00 a.m. before the Honorable Henry J. Boroff to consider confirmation of the Plan. The deadline for filing objections to confirmation of the Plan is May 5, 2015, by which time any and all objections must have been filed electronically or received by the clerk of the Bankruptcy Court.

**YOUR RIGHTS MAY BE AFFECTED BY THE PLAN. THE PLAN CONTAINS RELEASES AND INJUNCTIONS FOR THE BENEFIT OF THE DEBTOR, THE ESTATE REPRESENTATIVE(S) AND CERTAIN THIRD PARTIES, INCLUDING, BUT NOT LIMITED TO, CERTAIN INSIDERS OF NECC AND THE THIRD PARTIES MORE PARTICULARLY DESCRIBED IN SCHEDULES 1.121 AND 1.167 TO THE PLAN AND SECTION 3.4 TO THE DISCLOSURE STATEMENT (COLLECTIVELY, THE "RELEASED PARTIES"). IF THE PLAN IS CONFIRMED, SUCH RELEASES**

**AND INJUNCTIONS WILL BAR ALL PERSONS AND ENTITIES FROM ASSERTING AGAINST THE RELEASED PARTIES ANY AND ALL CLAIMS, DEBTS, OBLIGATIONS, DEMANDS, LIABILITIES, SUITS, JUDGMENTS, DAMAGES, RIGHTS AND CAUSES OF ACTION ARISING FROM ACTS OR OMISSIONS IN ANY WAY RELATED TO NECC OR THE DRUGS IT PRODUCED.  YOU SHOULD READ CAREFULLY SECTIONS 10.05 AND 10.06 OF THE PLAN, SCHEDULES 1.121 AND 1.167 TO THE PLAN, AND SECTIONS 3.4, 12.5, AND 12.6 OF THE DISCLOSURE STATEMENT, AND DISCUSS THE PLAN AND DISCLOSURE STATEMENT WITH YOUR ATTORNEY, IF YOU HAVE ONE (IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE).**

**PLEASE TAKE FURTHER NOTICE** that you can obtain copies of the Plan and Disclosure Statement by accessing the website maintained by the Debtor's claims and noticing agent, Donlin, Recano & Company, Inc. at www.donlinrecano.com/necp.  Copies of the Plan and the Disclosure Statement may also be obtained by mail, free of charge, upon written request made to Donlin, Recano & Company, Inc. at Donlin, Recano & Company, Inc., P.O. Box 2034, Murray Hill Station, New York, NY 10156-0701 or upon calling Donlin, Recano & Company, Inc. at (212) 771-1128.

Dated: _____, 2015

# EXHIBIT 3

## Confirmation Hearing Notice

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MASSACHUSETTS
## EASTERN DIVISION

|  |  |
|---|---|
| In re:<br><br>NEW ENGLAND COMPOUNDING<br>PHARMACY, INC.,<br><br>      Debtor. | Chapter 11<br><br>Case No. 12-19882-HJB |

### NOTICE OF ORDER (I) APPROVING THE PLAN PROPONENTS' DISCLOSURE STATEMENT, (II) APPROVING SOLICITATION AND NOTICE PROCEDURES WITH RESPECT TO CONFIRMATION OF THE PLAN PROPONENTS' JOINT PLAN OF REORGANIZATION, (III) APPROVING THE FORM OF VARIOUS BALLOTS AND NOTICES IN CONNECTION THEREWITH, (IV) SCHEDULING CERTAIN DATES WITH RESPECT THERETO, AND (V) GRANTING RELATED RELIEF

---

**TO ALL HOLDERS OF CLAIMS AND INTERESTS AND PARTIES IN INTEREST:**

1. **Court Approval of the Disclosure Statement and the Solicitation Procedures.** On [___], 2015, the United States Bankruptcy Court for the District of Massachusetts (the "Court") entered the *Order (I) Approving the Plan Proponents' Disclosure Statement, (II) Approving Solicitation and Notice Procedures With Respect to Confirmation of the Plan Proponents' Joint Plan of Reorganization, (III) Approving the Form of Various Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates With Respect Thereto, and (V) Granting Related Relief* [Docket No.___] (the "Disclosure Statement Order") that, among other things: (a) approved the adequacy of the *Disclosure Statement for First Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc.* [Docket No. 1155] (as amended and including all exhibits and supplements thereto, the "Disclosure Statement") filed in support of the *First Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc.* [Docket No.1154] (as amended and including all exhibits thereto, the "Plan"); and (b) authorized the Plan Proponents to solicit acceptances or rejections of the Plan from holders of Impaired Claims who are (or may be) entitled to receive distributions under the Plan.[1]

2. **Voting Record Date.** March 6, 2015 is the Voting Record Date for purposes of determining (a) which holders of Claims are entitled to vote on the Plan and (b) whether

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable. Copies of the Plan, the Disclosure Statement, and the Disclosure Statement Order may be obtained from Donlin, Recano & Co., Inc., the Debtor's Claims and Noticing Agent at the address and in the manner provided below.

Claims have been properly transferred to an assignee pursuant to Bankruptcy Rule 3001(e) such that the applicable assignee can vote as the holder of the Claim.

3.  **Voting Deadline.** If you held a Claim against the Debtor as of the Voting Record Date and are entitled to vote on the Plan, you have received a Ballot and voting instructions appropriate for your Claim(s) or Interest(s).  For your vote to be counted in connection with Confirmation of the Plan, you must follow the appropriate voting instructions, complete all required information on the Ballot, and execute and return the completed Ballot so that it is **actually received** in accordance with the voting instructions by May 5, 2015 at 4:00 p.m. (Eastern Prevailing Time) (the "Voting Deadline").  Any failure to follow the voting instructions included with the Ballot may disqualify your Ballot and your vote on the Plan.

4.  **Objections to the Plan.**  The Court has established May 5, 2015, as the deadline for filing and serving objections to the Confirmation of the Plan (the "Plan Objection Deadline"). Any objection to the Plan must: (a) be in writing; (b) conform to the Bankruptcy Rules and the Local Rules; (c) state the name and address of the objecting party and the amount and nature of the Claim; (d) state with particularity the basis and nature of any objection to the Plan; (e) propose a modification to the Plan that would resolve such objection (if applicable); and (f) be filed, contemporaneously with a proof of service, with the Court and served so that it is actually received by each of the following notice parties by the Plan Objection Deadline:

| Chapter 11 Trustee |
|---|
| Paul D. Moore |
| **DUANE MORRIS LLP** |
| 100 High Street |
| Suite 2400 |
| Boston, MA 02110-1724 |

| Co-Counsel to the Chapter 11 Trustee | |
|---|---|
| **DUANE MORRIS LLP** | **HARRIS BEACH PLC** |
| Michael R. Lastowski | Frederick H. Fern |
| 222 Delaware Avenue | 100 Wall Street |
| Suite 1600 | New York, NY 10005 |
| Wilmington, DE 19801-1659 | |

| Counsel to the Committee | |
|---|---|
| **BROWN RUDNICK LLP** | **BROWN RUDNICK LLP** |
| William R. Baldiga | David J. Molton |
| Kiersten A. Taylor | 7 Times Square |
| One Financial Center | New York, NY 10036 |
| Boston, MA 02111 | |

| U.S. Trustee |
|---|
| John Fitzgerald |
| Office of the US Trustee |
| J.W. McCormack Post Office & Courthouse |
| 5 Post Office Sq., 10th Fl, Suite 1000 |
| Boston, MA 02109 |

5.    **Confirmation Hearing**.  A hearing to confirm the Plan (the "Confirmation Hearing") will commence on **May 19, 2015 at 10:00 a.m. (Eastern Prevailing Time)** before the Honorable Henry J. Boroff, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Massachusetts, 300 State Street, Berkshire Courtroom, Third Floor, Springfield, Massachusetts 01105-2925.   Please be advised that the Confirmation Hearing may be continued from time to time by the Court or the Plan Proponents without further notice other than by such adjournment being announced in open court or by a notice of adjournment being filed with the Court and served on parties entitled to notice under Bankruptcy Rule 2002 and the Local Rules or otherwise.  In accordance with the Plan, the Plan may be modified, if necessary, prior to, during, or as a result of the Confirmation Hearing without further action by the Plan Proponents and without further notice to or action, order, or approval of the Court or any other entity.

6.    **Solicitation Packages.  The Solicitation Package (except the Ballots) may be obtained at no charge from Donlin, Recano & Co., Inc., the claims and noticing agent retained in the Chapter 11 Cases (the "Claims and Noticing Agent") by: (a) accessing the following website: http://www.drcrdrx.com/cases/caseinfo/necp; (b) writing to the Claims and Noticing Agent by First Class Mail at P.O. Box 2034, Murray Hill Station, New York, NY 10156-0701, Re: New England Compounding Pharmacy, Inc., Attn: Voting Department; (c) writing to the Claims and Noticing Agent by Hand Delivery or Overnight Mail at 6201 15th Ave, Brooklyn, NY 11219, Re: New England Compounding Pharmacy, Inc., Attn: Voting Department; or (d) calling the Claims and Noticing Agent at (212) 771-1128.  The Claims and Noticing Agent will answer questions regarding the procedures and requirements for voting to accept or reject the Plan and for objecting to the Plan, provide additional copies of all materials, and oversee the voting tabulation.**

7.    **Temporary Allowance of Claims and Interests for Voting Purposes.**  Holders of Claims that are subject, at least seven days prior to the Voting Deadline, to a pending objection by the Debtor as of the Voting Record Date cannot vote on the Plan; provided, however, that if the Debtor objects to only a portion of a Claim, such Claim may be voted in the undisputed amount.  Moreover, a holder of a disputed Claim cannot vote any disputed portion of its Claim unless one or more of the following events (each, a "Resolution Event") has taken place by April 30, 2015, a date three business days before the Voting Deadline:

   a)    an order of the Court is entered allowing such Claim pursuant to section 502(b) of the Bankruptcy Code, after notice and a hearing;

   b)    an order of the Court is entered temporarily allowing such Claim for voting purposes only pursuant to Bankruptcy Rule 3018(a), after notice and a hearing;

   c)    a stipulation or other agreement is executed between the holder of such Claim and the Debtor resolving the objection and allowing such Claim in an agreed upon amount;

d)    a stipulation or other agreement is executed between the holder of such Claim and the Debtor temporarily allowing the holder of such Claim to vote its Claim in an agreed upon amount; or

e)    the pending objection to such Claim is voluntarily withdrawn by the objecting party.

No later than two (2) business days after a Resolution Event, the Claims and Noticing Agent shall distribute a Solicitation Package and a pre-addressed, postage pre-paid envelope to the relevant holder of such temporarily Allowed Claim that has been Allowed for voting purposes only (or for other purposes as set forth in an applicable order of the Court) by such Resolution Event, which must be returned according to the instructions on the Ballot by no later than the Voting Deadline.

If the holder of a Claim receives a Solicitation Package and the Claim is objected to on a date that is <u>less than</u> seven calendar days before the Voting Deadline, the holder's Claim shall be deemed temporarily allowed for voting purposes without further action by the holder of such Claim and without further order of the Court.

8.    **Release, Exculpation, and Injunction Language in the Plan.** Please be advised that Article X of the Plan contains the following release, exculpation and injunction provisions for the benefit of the Debtor, the Estate Representative(s) and certain third parties, including, but not limited to, certain insiders of NECC and the third parties more particularly described in Schedules 1.121 and 1.167 to the plan:

<u>Releases</u>

**(i)    <u>Releases by the Debtor and Estate Representative(s)</u>.  Except as set forth in section 10.05(i) of this Plan, and subject in all respects to the provisions of section 10.04 of this Plan, on the Effective Date, the Debtor, the Chapter 11 Trustee, the Estate Representative(s) and the Estate shall unconditionally release, and hereby are deemed to forever unconditionally release, the Shareholder and Affiliate Released Parties, the Other Contributing Parties,  including, without limitation, GDC, the Individual GDC Insureds and Preferred Mutual, and the Tort Claimants from any and all Claims, debts, obligations, demands, liabilities, suits, judgments, damages, rights and Estate Causes of Action, whatsoever (other than the right to enforce the obligations under this Plan, the Settlement Agreements and the contracts, instruments, releases and other agreements and documents delivered thereunder), whether direct or indirect, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part upon any act or omission, transaction, transfer event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor or to the Debtor's products, including, without limitation, the Drugs, the Chapter 11 Case, this Plan, the Disclosure Statement, the Debtor's estate, the Policies, GDC, and the negotiation or funding of the Settlement Agreements.**

(ii)  **Releases in Favor of the Debtor and Estate Representative(s).  Subject in all respects to the provisions of section 10.04 of this Plan, on the Effective Date, each of the Debtor, the Chapter 11 Trustee, the Estate Representative(s), and the Estate shall be forever and unconditionally released from any and all Claims, debts, obligations, demands, liabilities, suits, judgments, damages, rights and causes of action, whatsoever by all Entities (other than the right to enforce the obligations under this Plan, the Settlement Agreements and the contracts, instruments, releases and other agreements and documents delivered thereunder), whether direct or indirect, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part upon any act or omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor or to the Debtor's products, including, without limitation, the Drugs, the Chapter 11 Case, this Plan, the Disclosure Statement, any prepetition act or omission of the Debtor, the Debtor's estate, the Policies, GDC and the negotiation or funding of the Settlement Agreements.**

(iii)  **Releases by Shareholder and Affiliate Released Parties.  Subject in all respects to the provisions of section 10.04 of this Plan and the Shareholder Settlement Agreement, on the Effective Date, each of the Shareholder and Affiliate Released Parties shall unconditionally release, and hereby are deemed to forever unconditionally release, each of the Debtor, the Debtor's estate, the Chapter 11 Trustee, the Estate Representative(s), the Official Committee, the Official Committee members, the Tort Claimants, the Other Contributing Parties, including, without limitation, GDC, the Individual GDC Insureds, Preferred Mutual, and the foregoing persons' and entities' respective attorneys and advisors (solely in their respective capacities as such) from any and all Claims, debts, obligations, demands, liabilities, suits, judgments, damages, rights, and causes of action, whatsoever, whether direct or indirect, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part upon any act or omission, transaction, transfer, event, or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor or to the Debtor's products, including, without limitation, the Drugs, the Chapter 11 Case, this Plan, the Disclosure Statement, the Debtor's estate, the Policies, GDC and the negotiation or funding of the Settlement Agreements; provided, however, that this release shall not apply to any Claims assigned by the Shareholder and Affiliate Released Parties to the Debtor or to the Chapter 11 Trustee pursuant to a Settlement Agreement, nor shall it apply to the right to enforce the obligations under the Plan, the Settlement Agreements,  and the contracts, instruments, releases and other agreements and documents delivered thereunder.**

(iv)  **Releases in Favor of Shareholder and Affiliate Released Parties.  Subject in all respects to the provisions of section 10.04 of this Plan, on the Effective Date, the Shareholder and Affiliate Released Parties (other than Ameridose), as well as their respective attorneys and advisors (solely in their respective capacities as such), shall be forever and unconditionally released from any and all Tort Claims, Estate Causes of Action, Contributor and Affiliate Released Claims, and all other Claims, debts,**

obligations, demands, liabilities, suits, judgments, damages, rights and causes of action, whatsoever by all Entities, whether direct or indirect, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part upon any act or omission, transaction, transfer, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor or to the Debtor's products, including, without limitation, the Drugs, the Chapter 11 Case, this Plan, the Disclosure Statement, the Debtor's estate, the Policies, GDC and the negotiation or funding of the Settlement Agreements; provided, however, that the right to enforce the obligations under the Shareholder Settlement Agreement, the Shareholder Escrow Agreement and this Plan and the contracts, instruments, releases and other agreements and documents delivered thereunder, and the right to enforce the provisions of the Shareholder Settlement Agreement with regard to "Non-Disclosed Assets" (as defined therein), shall be expressly preserved by the Estate Representative in accordance with the terms of the Shareholder Settlement Agreement.

(v)     Releases by Other Contributing Parties.  Subject in all respects to the provisions of section 10.04 of this Plan, on the Effective Date, each Other Contributing Party including, without limitation, GDC, the Individual GDC Insureds and Preferred Mutual,  shall unconditionally release, and hereby are deemed to forever unconditionally release, each of the Debtor, the Debtor's estate, the Chapter 11 Trustee, the Estate Representative(s), the Official Committee, the Official Committee members, the Tort Claimants, the Shareholder and Affiliate Released Parties, each additional Other Contributing Party, and the foregoing persons' and entities' respective attorneys and advisors (solely in their respective capacities as such) from any and all Claims, debts, obligations, demands, liabilities, suits, judgments, damages, rights, and causes of action, whatsoever, whether direct or indirect, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part upon any act or omission, transaction, event, or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor or to the Debtor's products, including, without limitation, the Drugs, the Chapter 11 Case, this Plan, the Disclosure Statement, the Debtor's estate, the Policies, GDC, and the negotiation or funding of the Settlement Agreements; provided, however, that this release shall not apply to any Claims assigned by the Other Contributing Parties to the Debtor pursuant to a Settlement Agreement, nor shall it apply to the right to enforce the obligations under the Plan, the Settlement Agreements, and the contracts, instruments, releases and other agreements and documents delivered thereunder in their favor.

(vi)     Releases in Favor of Other Contributing Parties.  Subject in all respects to the provisions of section 10.04 of this Plan, on the Effective Date, each Other Contributing Party (other than Ameridose), including, without limitation, GDC, the Individual GDC Insureds and Preferred Mutual, shall be forever and unconditionally released from any and all Estate Causes of Action, Tort Claims, NECC Claims, and all other Claims, debts, obligations, demands, liabilities, suits, judgments, damages,

rights and causes of action, whatsoever by all Entities, whether direct or indirect, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part upon any act or omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor or to the Debtor's products, including, without limitation, the Drugs, the Chapter 11 Case, this Plan, the Disclosure Statement, the Debtor's estate, the Policies, GDC and the negotiation or funding of the Settlement Agreements; provided, however, that this release shall not in any way limit the right of the Estate Representative to enforce the obligations under the Plan, the Settlement Agreements, and the contracts, instruments, releases and other agreements and documents delivered thereunder in the Estate's favor.

(vii)     **Releases by Tort Claimants**.  Subject in all respects to the provisions of section 10.04 of this Plan, on the Effective Date, each Tort Claimant shall unconditionally release, and hereby is deemed to forever unconditionally release each of the Debtor, the Debtor's estate, the Chapter 11 Trustee, the Estate Representative(s), the Official Committee, the Official Committee members, the Other Contributing Parties (other than Ameridose), including, without limitation, GDC, the Individual GDC Insureds and Preferred Mutual, the Shareholder and Affiliate Released Parties (other than Ameridose), all parties released under the Settlement Agreements, and the foregoing persons' and entities' respective attorneys and advisors (solely in their capacities as such) from the Tort Claims, the NECC Claims, the Contributor and Affiliate Released Claims, and any and all claims, debts, obligations, demands, liabilities, suits, judgments, damages, rights and causes of action, whatsoever, whether direct or indirect, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part upon any act or omission, transaction, event, or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor or to the Debtor's products, including, without limitation, the Drugs, the Chapter 11 Case, this Plan, the Disclosure Statement, the Debtor's estate, the Policies, GDC and the negotiation of the Settlement Agreements; provided, however, that this release shall not apply to the right to enforce the obligations under the Plan, the Settlement Agreement, and the contracts, instruments, releases and other agreements and documents delivered thereunder in their favor.

## Injunctions

(i)     **Injunction in Favor of the Debtor and Estate Representative(s)**.  Except as to the rights and claims created or expressly preserved by this Plan, the Settlement Agreements the Shareholder Escrow Agreement, and the Confirmation Order, upon the Effective Date, the Debtor, the Chapter 11 Trustee, and the Estate Representative(s) shall have and be entitled to an injunction forever barring and enjoining all Persons and/or Entities from asserting against the Debtor any past, present and future rights, interests, obligations, claims, causes of action, damages (including punitive damages), demands (including demands for contribution,

indemnity or otherwise), liabilities, expenses, fees (including, but not limited to, attorneys' fees, expert fees, consulting fees and other professional fees) and costs of any kind or any type whatsoever, whether known or unknown, whether foreseen or unforeseen, whether direct or indirect, contingent or actual, whether liquidated or unliquidated, whether statutory or common law, whether asserted or unasserted and whether based on contract, negligence, bad faith, willful, wanton or malicious conduct, or any other theory in law or equity concerning, arising from or relating to any actual or alleged past, present or future act, omission, defect, incident, event or circumstance from the beginning of the world to the Effective Date, in any way relating to or in connection with (i) the Debtor, the Drugs or any and all products of and/or distributed by the Debtor, or (ii) the Debtor's estate, the Chapter 11 Case, this Plan, the Disclosure Statement, the Settlement Agreements and/or the Policies, except with regard to any claims and rights expressly reserved pursuant to Section 10.05 above.

(ii)     **Injunction in Favor of Shareholder and Affiliate Released Parties.** Upon the Effective Date, all Persons or Entities shall be permanently barred, enjoined, and restrained from commencing, prosecuting, continuing or asserting, either derivatively or on behalf of themselves, in any court, arbitration proceeding, administrative agency, or other forum in the United States of America or elsewhere, any and all Claims released pursuant to Section 10.05 above or under the Shareholder Settlement Agreement, whether the Person or Entity had actual or constructive notice of the terms of the Shareholder Settlement Agreement, Plan or Confirmation Order or otherwise, except that this injunction shall not apply to the right of the acting Estate Representative to enforce the Substitute Lien and the obligations and the acting Estate Representative's rights under the Shareholder Settlement Agreement, the Escrow Agreement, the Plan, and the Confirmation Order.

(iv)    **Injunction in Favor of the Other Contributing Parties.** Except as to the rights and claims created or expressly preserved by this Plan, the Settlement Agreements, the Escrow Agreement and the Confirmation Order, upon the Effective Date, the Other Contributing Parties, including, without limitation, GDC, the Individual GDC Insureds and Preferred Mutual, shall have and be entitled to an injunction forever barring and enjoining all Persons and/or Entities from asserting against the Other Contributing Parties any past, present and future rights, interests, obligations, claims, causes of action, damages (including punitive damages), demands (including demands for contribution, indemnity or otherwise), liabilities, expenses, fees (including, but not limited to, attorneys' fees, expert fees, consulting fees and other professional fees) and costs of any kind or any type whatsoever, whether known or unknown, whether foreseen or unforeseen, whether contingent or actual, whether direct or indirect, liquidated or unliquidated, whether statutory or common law, whether asserted or unasserted and whether based on contract, negligence, bad faith, willful, wanton or malicious conduct, or any other theory in law or equity concerning, arising from or relating to any actual or alleged past, present or future act, omission, defect, incident, event or circumstance from the beginning of the world to the Effective Date, in any way relating to or in connection with (i) the Debtor, the Drugs or any and all products of and/or distributed by the Debtor, or (ii) the Debtor's estate,

**the Chapter 11 Case, the Plan, the Disclosure Statement, the Settlement Agreements and/or the Policies**.

*(Remainder of Page Intentionally Left Blank)*

**YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**DUANE MORRIS LLP**

Paul D. Moore, Esq.
100 High Street
Suite 2400
Boston, MA 02110
Telephone:  (857) 488-4200
Facsimile:  (857) 401-3057


*Chapter 11 Trustee*

**BROWN RUDNICK LLP**

William R. Baldiga, Esq.
Kiersten A. Taylor, Esq.
One Financial Center
Boston, MA 02111
Telephone:  (617) 856-8200
Facsimile:  (617) 856-8201


David J. Molton, Esq.
7 Times Square
New York, NY 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801

*Counsel to the Official Committee
of Unsecured Creditors*


Dated:  [_____], 2015

# **EXHIBIT 4-A**

**Letter to Holders of Claims in the Voting Classes**

# DuaneMorris®

*FIRM and AFFILIATE OFFICES*

*www.duanemorris.com*

NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
SHANGHAI
BOSTON
HOUSTON
LOS ANGELES
HANOI
HO CHI MINH CITY

ATLANTA
BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NEWARK
LAS VEGAS
CHERRY HILL
LAKE TAHOE
MYANMAR
OMAN
A GCC REPRESENTATIVE OFFICE
OF DUANE MORRIS

MEXICO CITY
ALLIANCE WITH
MIRANDA & ESTAVILLO
SRI LANKA
ALLIANCE WITH
GOWERS INTERNATIONAL

To:     Creditors of New England Compounding Pharmacy, Inc.

Re:     **Joint Plan of Reorganization of New England Compounding Pharmacy, Inc.,
        d/b/a New England Compounding Company**

In January of 2013, I was appointed as Chapter 11 Trustee of New England
Compounding Pharmacy, Inc. ("NECC").  Since my appointment, my primary goal has been to
secure the maximum amount available to distribute to holders of allowed claims against NECC,
particularly claims of those who have suffered the death of loved ones, personal injury and
losses, both personally and financially, as a result of this tragic occurrence.  To that end, I
considered it critical to secure compensation from the various responsible parties, including the
owners and operators of NECC, as well as third parties who should have taken appropriate steps
to avoid or minimize the suffering of so many.  Of equal importance, I wanted to ensure that
such compensation was distributed equitably to NECC's creditors, rather than only to those
creditors who succeeded in a race to the courthouse.

Throughout that process, I have worked closely with the Official Committee of
Unsecured Creditors (appointed to represent the interests of general unsecured creditors in the
NECC bankruptcy case) and the Plaintiffs' Steering Committee (appointed to coordinate efforts
by the hundreds of litigants who have brought suits, which are now consolidated in the
Massachusetts Federal Court) and their appointed counsel to secure their assistance, as well as
their input on behalf of NECC's various creditors and to approve the various settlements that are
the foundation of the Joint Plan and the initial recovery for the benefit of NECC's creditors.  The
results of our efforts are embodied in the enclosed Joint Plan.  The Joint Plan is the product of
two years of hard work by all of us.  Subject to the Bankruptcy Court's confirmation of the Joint
Plan, it provides a mechanism whereby the funds available through settlements reached to date
with various potentially responsible parties which aggregate approximately $210,000,000 and
which can be utilized to pay the expenses of NECC's Chapter 11 case and to distribute the
balance on an equitable basis to all of NECC's creditors.  At the same time, it also creates a
mechanism pursuant to which a "Tort Trustee" can pursue further compensation for the benefit
of NECC's creditors from third parties who have chosen not to settle NECC claims against them.



Creditors of New England Compounding Pharmacy, Inc.
Page 2

     I urge you to read the enclosed Disclosure Statement and Joint Plan carefully and to consult with your attorney if you have any questions.  I believe the Joint Plan provides for a substantial initial recovery to those who have suffered greatly.  Accordingly, I urge you to vote to accept the Joint Plan by returning the enclosed ballot in accordance with the enclosed balloting instructions before May 5, 2015 at 4:00 p.m., which is the deadline for submitting votes to accept or reject the Joint Plan.

     Finally, it has been an honor for me to serve as Chapter 11 Trustee of NECC in order to secure compensation for you and to work with your appointed representatives to provide you with some measure of justice as quickly and as economically as possible under the circumstances.  I hope that you are pleased with the results of our joint efforts.

     Sincerely,


     Paul D. Moore, Chapter 11 Trustee


pdm:mmm

# EXHIBIT 4-B

**Letter to Holders of General Unsecured Claims and Tort Claims**

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
**OF NEW ENGLAND COMPOUNDING PHARMACY, INC.**

March [\_\_\_], 2015

TO:   THE HOLDERS OF TORT CLAIMS AND OTHER GENERAL UNSECURED CLAIMS
      AGAINST NEW ENGLAND COMPOUNDING PHARMACY, INC.

FOR THE REASONS DESCRIBED BELOW, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS <u>SUPPORTS</u> THE PLAN, BELIEVES THAT THE PLAN IS IN THE BEST INTERESTS OF TORT CLAIMANTS AND ALL OTHER UNSECURED CREDITORS, AND URGES ALL TORT CLAIMANTS AND OTHER UNSECURED CREDITORS TO VOTE TO ACCEPT THE PLAN.

The Official Committee of Unsecured Creditors (the "<u>Committee</u>") was appointed in the Chapter 11 Case of New England Compounding Pharmacy, Inc. ("<u>NECC</u>")[1] to represent the interests of NECC's unsecured creditors (collectively, the "<u>Unsecured Creditors</u>"), including those who have personal injury or wrongful death claims arising from the administration of tainted products compounded and distributed by NECC.[2]

We write to advise you of the Committee's recommendation regarding the *First Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc.* (the "<u>Plan</u>"). The Plan, described in the *Disclosure Statement for First Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc.* (the "<u>Disclosure Statement</u>"), outlines among other things the treatment of "General Unsecured Claims" (Class C), or non-priority, unsecured claims against NECC, and "Tort Claims" (Class D), or claims for or based on personal injury and/or wrongful death relating to NECC products.[3] The Plan is being proposed jointly by the Committee and the Chapter 11 Trustee appointed to administer NECC's bankruptcy estate (the "<u>Trustee</u>", and together with the Committee, the "<u>Plan Proponents</u>"). Accordingly, the Committee strongly supports acceptance of the Plan and urges all Unsecured Creditors to vote to accept it.

<u>**Treatment of Tort Claims (Class D) Under the Plan**</u>

The primary objective of the Plan is to compensate, to the greatest extent possible under the circumstances, those persons that have suffered personal injury and/or death due to allegedly contaminated drugs compounded by NECC. To that end, holders of Tort Claims (or "<u>Tort Claimants</u>") will receive interests in a "Tort Trust" created pursuant to the Plan. The primary function of the Tort Trust is to distribute funds to individuals that hold personal injury and/or wrongful death claims against NECC.

---

[1]   Case No. 12-19882 (HJB).

[2]   Eight of the nine members of the Committee are tort claimants holding personal injury tort and/or wrongful death claims against the Debtor and others, and the ninth member is the holder of a general unsecured claim which is not a personal injury tort or wrongful death claim. The members of the Committee are: (i) Katrina Eldreth; (ii) Meghan A. Handy; (iii) Robert Cole; (iv) Brenda Bansale; (v) Victor Davis; (vi) Kathleen Distler; (vii) Danny Swartzell; (viii) Bertram Walker Bryant, Jr.; and (ix) NStar Electric Company.

[3]   Capitalized terms used but not otherwise defined in this letter shall have the meanings assigned to them in the Plan or the Disclosure Statement.

### A. Funding of the Tort Trust and Segregation of Monies

The Tort Trust will be funded by the proceeds of settlements (the "Settlements") reached between the Trustee and NECC's shareholders, affiliated entities, their insurers, and clinics and healthcare providers that administered tainted NECC drugs. The Plan Proponents estimate that in total, the Tort Trust will have between approximately $188 million and $210 million available for distribution to Tort Claimants who timely filed proofs of claim and the required supporting documentation, or were deemed to have done so.

Before being distributed to Tort Claimants, the monies in the Tort Trust will be segregated (i) into a "National Fund" holding the net proceeds of the Trustee's settlements with so-called "National Defendants" (*i.e.*, individuals or entities against whom every Tort Claimant may have a claim, such as NECC's owners or the company that provided sterility testing services for NECC products) and, potentially, (ii) into one or more "Provider-Specific Funds" holding the net proceeds of the Trustee's specific settlement with a particular clinic or other healthcare provider that administered tainted NECC drugs.

All Tort Claimants who are deemed to qualify for a distribution from the Tort Trust pursuant to the procedures described below will receive a distribution from the National Fund. The Plan Proponents estimate that the National Fund will have between approximately $135 and $158 million available for distribution to Tort Claimants who timely filed proofs of claim and the required supporting documentation, or were deemed to have done so.

By contrast, each Provider-Specific Fund will be dedicated solely to satisfying the claims of qualified individuals who received injections of NECC drugs from the applicable settling healthcare provider; for example, qualifying Tort Claimants who received injections from Provider X will have a right to recover from the proceeds of the Trustee's settlement with Provider X, while Tort Claimants who did not receive such an injection will not have a right to recover from the proceeds of the settlement payment made by Provider X. The Plan Proponents estimate that the Insight, Inspira and High Point Provider-Specific Funds will each have approximately $40 million, $16 million and $3.5 million, respectively, available for distribution to Tort Claimants who were injected at the applicable healthcare provider and who timely filed proofs of claim and the required supporting documentation, or were deemed to have done so. **The amount (if any) a Tort Claimant may be entitled to receive from a Provider-Specific Fund will not reduce the amount (if any) he or she is entitled to receive from the National Fund.**

### B. Procedures for Determining Amounts of Distributions

To determine the amount of distributions to be made to each holder of a Tort Claim from the National Fund, the Plan establishes a "Claims Resolution Facility" to be administered by a "Settlement Administrator," with a "Special Master" appointed to address any appeals from the Settlement Administrator's determinations. The Settlement Administrator will evaluate the information provided by Tort Claimants (including their proofs of claim, PITWD Addenda, and other supporting documentation) pursuant to the "Claims Resolution Facility Procedures" to determine what distribution, if any, each Tort Claimant is entitled to from the National Fund. In making this determination, the Settlement Administrator will take into account, among other things, the connection of the injury to the NECC product administered and the severity of the injury that each Tort Claimant has suffered as a result of the administration of NECC products. If a Tort Claimant does not agree with the Settlement Administrator's determination, he or she may appeal the determination to the Special Master appointed pursuant to the Plan documents.

The Plan Proponents contemplate that similar procedures will be established with respect to each Provider-Specific Fund.

If the Plan is confirmed, all claims, including those of Tort Claimants, against NECC and the other settling parties related to NECC's products will be released, and individuals will be forever barred from pressing those claims.

The Committee believes that the Settlements and the establishment of the Tort Trust represent a fair and equitable resolution of Tort Claimants' claims against NECC, and moreover believes that the Plan will result in a larger distribution to the holders of Tort Claims than would otherwise result in liquidation under Chapter 7 of the Bankruptcy Code or if any other result were achieved in all of the litigation that the NECC tragedy has engendered.

### Treatment of General Unsecured Claims (Class C) Under the Plan

Holders of General Unsecured Claims will receive a payment in cash of **90%** of their allowed claims, to be paid on the later of (i) the Effective Date of the Plan (presently anticipated to be in or about June, 2015) and (ii) the date such general Unsecured Claim becomes an Allowed General Unsecured Claim, or as soon thereafter as is reasonably practicable.

Given the magnitude of the NECC estate's potential liability to holders of personal injury and/or wrongful death claims against NECC, the Committee believes this percentage recovery is fair and equitable, and is a larger distribution to the holders of General Unsecured Claims than would otherwise result in liquidation under Chapter 7 of the Bankruptcy Code.

The Committee believes that any alternative, other than confirmation of the Plan, could result in extensive delays, in increased administrative expenses, and, most importantly, in the Settlements failing to be consummated (*i.e.*, in the Settlement proceeds not being made available for distribution to Unsecured Creditors). Each of these occurrences would, in turn, result in significantly smaller distributions on account of claims asserted in this Chapter 11 case. In short, the Committee supports approval of the Plan and strongly recommends that you timely vote to accept the Plan in accordance with the procedures that have been established by the Bankruptcy Court.

*THE FOREGOING IS NOT INTENDED AS A SUBSTITUTE FOR THE PLAN AND DISCLOSURE STATEMENT. ALL UNSECURED CREDITORS SHOULD READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY, AND SPEAK TO THEIR OWN LAWYER OR OTHER ADVISOR TO THE EXTENT THEY WISH TO DO SO.*

The Plan Proponents have provided you with a Ballot to vote to accept or reject the Plan. In order to have your vote counted, you must complete and return the Ballot by the deadline identified on the Ballot in accordance with the procedures set forth therein and in the accompanying Disclosure Statement.

PLEASE READ THE DIRECTIONS ON THE BALLOT CAREFULLY AND COMPLETE YOUR BALLOT IN ITS ENTIRETY BEFORE RETURNING IT TO THE DEBTORS' CLAIMS AND NOTICING AGENT SO THAT IT WILL BE RECEIVED BY **MAY 5, 2015 AT 4:00 P.M.**, THE VOTING DEADLINE.

Your timely vote is important, as only those Unsecured Creditors that timely vote on the Plan will have their vote counted for purposes of determining whether the classes of claims in the Plan in which unsecured creditors have been classified have accepted the Plan.

Brown Rudnick LLP serves as counsel to the Committee. If you have any questions as to this recommendation, you may contact Carol Ennis at cennis@brownrudnick.com. If you have any questions as to how to complete the Ballot or how to make delivery of the Ballot or to otherwise vote on the Plan, please contact the Debtor's claims and noticing agent, Donlin, Recano & Company, Inc., at (212) 771-1128 or at balloting@donlinrecano.com.

**THE OFFICIAL COMMITTEE OF**
**UNSECURED CREDITORS**
**OF NEW ENGLAND COMPOUNDING**
**PHARMACY, INC.**

By: [A Co-Chair]

**cc:** **Committee Counsel:**
**BROWN RUDNICK LLP**
Kiersten A. Taylor, Esq.
David J. Molton, Esq.
William R. Baldiga, Esq.
Carol S. Ennis, Paralegal

## EXHIBIT 4-C

**Letter to Holders of Tort Claims**

**PLAINTIFFS' STEERING COMMITTEE IN MDL NO. 2419, *IN RE: NEW ENGLAND COMPOUNDING COMPANY, INC. PRODUCTS LIABILITY LITIGATION***

March__, 2015

**TO:   THOSE WHO SUFFERED INJURY OR DEATH AS A RESULT OF BEING ADMINISTERED A CONTAMINATED DRUG COMPOUNDED BY NEW ENGLAND COMPOUNDING PHARMACY, INC.**

The Plaintiffs' Steering Committee supports the accompanying Plan, believes that the Plan is in the best interests of Tort Claimants, and urges all Tort Claimants to vote to accept the Plan.

The Plaintiffs' Steering Committee (the "PSC")[1] was appointed by the Massachusetts District Court in MDL No. 2419, *In Re: New England Compounding Pharmacy Inc. Products Liability Litigation*[2] to represent the interests of those individuals who suffered injury or death as a result of being administered a contaminated drug compounded and distributed by the New England Compounding Pharmacy Inc. d/b/a New England Compounding Center ("NECC"). Those who have potential personal injury claims against NECC and other potentially liable defendants are known and referred to as "Tort Claimants."

The PSC recommends the First Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc. dated February 22, 2015 (the "Plan"). The Plan, described in the Disclosure Statement for First Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc. dated February 22, 2015 (the "Disclosure Statement") outlines, among other things, the treatment of "Tort Claims" (Class D). Tort Claims are claims based on personal injury and/or wrongful death relating to NECC products. More information is also available in the accompanying Overview of the Joint Chapter 11 Plan and Disclosure Statement (the "Plan Overview") provided by the PSC.

The Plan is being jointly proposed by the Official Committee of Unsecured Creditors of NECC (the "Committee") and the Chapter 11 Trustee appointed to administer NECC's bankruptcy estate (the "Trustee"), collectively, the "Plan Proponents." The Plan Proponents have consulted extensively with the PSC in the crafting of the Plan. The PSC has also been involved in negotiations over each of the Settlements reached. Those Settlements are described in the Plan, the Disclosure Statement and the Plan Overview. The PSC strongly supports acceptance of the Plan and urges all Tort Claimants to vote to accept it.

The PSC believes that the Settlements and the establishment of the Tort Trust represent a fair and equitable resolution of Tort Claimants' claims against NECC. In addition, it believes that the Plan will result in a larger distribution to Tort Claimants than would result from a liquidation of NECC under Chapter 7 of the Bankruptcy Code or through further litigation of the NECC tragedy.

---

[1]   Hagens Berman Sobol Shapiro LLP, Lieff Cabraser Heimann & Bernstein, LLP, Lipton Law, Janet, Jenner & Suggs, LLC, Crandall & Katt, The Orlando Firm, P.C., Branstetter Stranch & Jennings PLLC.

[2]   United States District Court for the District of Massachusetts, Case No. 13-2419.

If you have any questions as to how to complete the Ballot, submit your Ballot, or vote on the Plan, contact the Debtor's claims and noticing agent, Donlin, Recano & Company, Inc., at (212) 771-1128 or email balloting@donlinrecano.com.

If you have any questions about this recommendation, you may contact Mike Barker at mikeb@hbsslaw.com for a referral to someone who can answer your particular questions.

Thomas M. Sobol
Kristen A. Johnson
HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA  02142
Telephone:  (617) 482-3700
Facsimile:  (617) 482-3003
tom@hbsslaw.com
kristenj@hbsslaw.com

*Plaintiffs' Lead Counsel*

Elizabeth J. Cabraser
Mark P. Chalos
Annika K. Martin
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
150 Fourth Avenue, North, Suite 1650
Nashville, TN  37219
Telephone:  (615) 313-9000
Facsimile:  (615) 313-9965
ecabraser@lchb.com
mchalos@lchb.com
akmartin@lchb.com

*Federal/State Liaison*

Marc E. Lipton
LIPTON LAW
18930 W. 10 Mile Road
Southfield, MI  48075
Telephone:  (248) 557-1688
Facsimile:  (248) 557-6344
marc@liptonlawcenter.com

Kim Dougherty
JANET, JENNER & SUGGS, LLC
31 St. James Ave., Suite 365
Boston, MA  02116
Telephone:  (617) 933-1265
kdougherty@myadvocates.com

Patrick T. Fennell
CRANDALL & KATT
366 Elm Avenue, S.W.
Roanoke, VA 24016
Telephone: (540) 342-2000
pfennel@crandalllaw.com

Mark Zamora
THE ORLANDO FIRM, P.C.
6 Concourse Way, 22nd Floor
Atlanta, GA 30328
Telephone: (404) 451-7781
Facsimile: (404) 506-9223
mark@markzamora.com

J. Gerard Stranch, IV
Benjamin A. Gastel
BRANSTETTER, STRANCH & JENNINGS PLLC
227 Second Avenue North
Nashville, TN 37201
Telephone: (615) 254-8801
Facsimile: (615) 255-5419
gerards@branstetterlaw.com
beng@branstetterlaw.com

*Plaintiffs' Steering Committee*

## **EXHIBIT 5-A**

**Class C Ballot**

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MASSACHUSETTS
## EASTERN DIVISION

|  |  |
|---|---|
| In re:<br><br>NEW ENGLAND COMPOUNDING PHARMACY, INC.,<br><br>             Debtor. | Chapter 11<br><br>Case No. 12-19882-HJB |

## BALLOT FOR ACCEPTING OR REJECTING THE
## FIRST AMENDED JOINT CHAPTER 11 PLAN OF NEW ENGLAND COMPOUNDING PHARMACY, INC., PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

---

## CLASS C CLAIMS

---

## PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING BALLOTS CAREFULLY BEFORE COMPLETING THE BALLOT

## THIS BALLOT MUST BE ACTUALLY RECEIVED BY MAY 5, 2015 AT 4:00 P.M. (EASTERN PREVAILING TIME) (THE "VOTING DEADLINE")

---

The Plan Proponents have sent this Ballot to you because our records indicate that you are a holder of a Class C Claim, and accordingly, you have a right to vote to accept or reject the *First Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc.* [Docket No.1154] (as may be amended or supplemented from time to time and including all exhibits or supplements thereto, the "Plan").[1]

Your rights are described in the *Disclosure Statement for First Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc.* [Docket No.1155] (as may be amended or supplemented from time to time and including all exhibits and supplements thereto, the "Disclosure Statement") and the *Order (I) Approving the Plan Proponents' Disclosure Statement, (II) Approving Solicitation and Notice Procedures With Respect to Confirmation of the Plan Proponents' Joint Plan of Reorganization, (III) Approving the Form of Various Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates With Respect Thereto, and (V) Granting Related Relief* [Docket No.___] (the "Disclosure Statement Order"). The Disclosure Statement, the Plan, the Disclosure Statement Order, and certain other materials contained in the Solicitation Package are included in the packet you are receiving with this

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan, Disclosure Statement (as defined herein) or the Disclosure Statement Order (as defined herein), as applicable.

Ballot.  If you need to obtain additional solicitation materials, you may contact Donlin, Recano, & Co., Inc., the claims and noticing agent retained in the Chapter 11 Cases (the "Claims and Noticing Agent") by: (a) accessing the website for the Claims and Noticing Agent at http://www.drcdrx.com/cases/caseinfo/necp; (b) writing to the Claims and Noticing Agent by First Class Mail at P.O. Box 2034, Murray Hill Station, New York, NY 10156-0701, Re: New England Compounding Pharmacy, Inc. , Attn: Voting Department; (c) writing to the Claims and Noticing Agent by Hand Delivery or Overnight Mail at 6201 15th Ave, Brooklyn, NY 11219, Re: New England Compounding Pharmacy, Inc., Attn: Voting Department; or (d) calling the Claims and Noticing Agent at (212) 771-1128.  You may also obtain solicitation materials for a fee via PACER at http://www.mab.uscourts.gov.  The Court has approved the Disclosure Statement as containing adequate information, as required under section 1125 of the Bankruptcy Code.  Court approval of the Disclosure Statement does not indicate approval of the Plan by the Court.  This Ballot may not be used for any purpose other than to vote to accept or reject the Plan.  If you believe you have received this Ballot in error, please contact the Claims and Noticing Agent at the address or telephone number set forth above.

*YOU SHOULD REVIEW THE DISCLOSURE STATEMENT AND THE PLAN BEFORE YOU VOTE.  YOU MAY WISH TO SEEK LEGAL ADVICE CONCERNING THE PLAN AND THE PLAN'S CLASSIFICATION AND TREATMENT OF YOUR CLAIM. YOUR CLAIM HAS BEEN PLACED IN CLASS C UNDER THE PLAN.  IF YOU HOLD CLAIMS IN MORE THAN ONE CLASS, YOU WILL RECEIVE A BALLOT FOR EACH CLASS IN WHICH YOU ARE ENTITLED TO VOTE.*

If the Claims and Noticing Agent does not **actually receive** your Ballot on or before the Voting Deadline, which is May 5, 2015, at 4:00 p.m. (Eastern Prevailing Time), and if the Voting Deadline is not extended, your vote will not count.  **If the Court confirms the Plan, it will bind you regardless of whether you vote.**

<u>Item 1</u>.  **Principal Amount of Class C Claim**

The undersigned hereby certifies that as of the Voting Record Date, March 6, 2015, the undersigned was the holder of a Class C Claim against the Debtor in the following amount (insert amount in box below):

Amount of Claim: $ _____

**Item 2.  Vote on Plan**

The holder of the Class C Claim set forth in Item 1 votes to (please check one):

| **ACCEPT THE PLAN** | **REJECT THE PLAN** |
|:---:|:---:|
| ☐ | ☐ |

Any Ballot that is executed by the holder of a Claim, but that indicates both an acceptance and a rejection of the Plan or does not indicate either an acceptance or rejection of the Plan, will not be counted.

**Item 3.  Certifications**

By signing this Ballot, the undersigned certifies to the Court and the Plan Proponents:

1.     that either: (a) the entity is the holder of the Class C Claim(s) being voted; or (b) the entity is an authorized signatory for an entity that is a holder of the Class C Claim(s) being voted;

2.     that the entity has received a copy of the Disclosure Statement, the Plan, and the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

3.     that the entity has cast the same vote with respect to all Class C Claims;

4.     that no other Ballots with respect to the amount of the Class C Claim(s) identified in Item 1 have been cast or, if any other Ballots have been cast with respect to such Claim(s) that such Ballots dated earlier are hereby revoked;

5.     that the entity acknowledges that a vote to accept the Plan constitutes an acceptance of the treatment of such entity's Class C Claim(s);

6.     that the entity understands and, if accepting the Plan, agrees with the treatment provided for its Claim(s) under the Plan; and

7.     that the entity acknowledges and agrees that the Plan Proponents may make conforming changes to the Plan to the extent provided by Bankruptcy Rule 3019 as may be reasonably necessary; provided, that the Plan Proponents will not re-solicit acceptances or rejections of the Plan in the event of such conforming changes.

Case 1:12-md-02419-RWZ   Document 1714-1   Filed 03/03/15   Page 51 of 98

Name of Holder: _____

(Please print or type)

Social Security or Federal Tax ID Number: _____

Signature: _____

Name of Signatory: _____

Representative Capacity (if other than holder):_____[2]

Title: _____

Address: _____

_____

_____

Date Completed: _____


**PLEASE COMPLETE, SIGN, AND DATE THE BALLOT AND RETURN IT PROMPTLY IN THE RETURN ENVELOPE PROVIDED. YOUR BALLOT MUST BE ACTUALLY RECEIVED BY THE VOTING DEADLINE, WHICH IS 4:00 P.M. (EASTERN PREVAILING TIME) ON MAY 5, 2015.**

---

[2]    If you are completing this Ballot on behalf of another person or entity, indicate your relationship with such person or entity and the capacity in which you are signing.  You may be required to provide additional information or documentation with respect to such relationship.

4

## <u>INSTRUCTIONS FOR COMPLETING BALLOTS</u>

1.    The Plan Proponents are soliciting the votes of holders of Claims with respect to the Plan attached as Exhibit A to the Disclosure Statement.  Capitalized terms used in the Ballot or in these instructions (the "<u>Ballot Instructions</u>") but not otherwise defined therein or herein shall have the meaning set forth in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable.

2.    The Court may confirm the Plan and thereby bind you by the terms of the Plan. Please review the Disclosure Statement for more information.

3.    To ensure that your vote is counted, you must: (a) complete the Ballot; (b) indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Ballot; and (c) sign and return the Ballot to the address set forth on the enclosed pre-addressed envelope.  The Voting Deadline for the receipt of Ballots by the Claims and Noticing Agent is **4:00 p.m. (Eastern Prevailing Time) on May 5, 2015**.  Your completed Ballot must be received by the Claims and Noticing Agent on or before the Voting Deadline.

4.    You must vote all of your Claims within a particular Class either to accept or reject the Plan and may not split your vote.  Accordingly, a Ballot that partially rejects and partially accepts the Plan will not be counted.  Further, if a holder has multiple Claims within the same Class, the Plan Proponents may, in their discretion, aggregate the Claims of any particular holder within a Class for the purpose of counting votes.

5.    If a Ballot is received after the Voting Deadline, it will not be counted unless the Plan Proponents determine otherwise.  The method of delivery of Ballots to the Claims and Noticing Agent is at the election and risk of each holder of a Claim. Except as otherwise provided herein, such delivery will be deemed made only when the Claims and Noticing Agent actually receives the originally executed Ballot.  Instead of effecting delivery by mail, it is recommended, though not required, that holders use an overnight or hand delivery service. In all cases, holders should allow sufficient time to assure timely delivery.  Delivery of a Ballot to the Claims and Noticing Agent by facsimile, e-mail or any other electronic means shall not be valid.  No Ballot should be sent to any of the Debtor, the Debtor's agents (other than the Claims and Noticing Agent), or the Plan Proponents or their financial or legal advisors, and if so sent will not be counted.

6.    If multiple Ballots are received from the same holder of a Claim with respect to the same Claim prior to the Voting Deadline, the last dated valid Ballot timely received will supersede and revoke any earlier dated Ballots.

7.    The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.  Accordingly, at this time, holders of

Claims should not surrender certificates or instruments representing or evidencing their Claims, and neither the Debtor nor the Claims and Noticing Agent will accept delivery of any such certificates or instruments surrendered together with a Ballot. Please be sure to sign and date your Ballot. If you are signing a Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you should indicate such capacity when signing and, if requested by the Claims and Noticing Agent, the Debtor, the Plan Proponents, or the Court, must submit proper evidence to the requesting party to so act on behalf of such holder. In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Ballot.

8.     If you hold Claims in more than one Class under the Plan or in multiple accounts, you may receive more than one Ballot coded for each different Class or account. Each Ballot votes only your Claims indicated on that Ballot. Please complete and return each Ballot you received.

9.     The following Ballots shall not be counted in determining the acceptance or rejection of the Plan: (a) any Ballot that is illegible or contains insufficient information to permit the identification of the holder of the Claim; (b) any Ballot cast by a Party that does not hold a Claim in a Class that is entitled to vote on the Plan; (c) any unsigned Ballot; (d) any Ballot not marked to accept or reject the Plan; (e) any Ballot marked both to accept and reject the Plan; and (f) any Ballot submitted by any entity not entitled to vote pursuant to the Solicitation Procedures.

10.    If you believe you have received the wrong Ballot, you should contact the Claims and Noticing Agent immediately.

### <u>PLEASE MAIL YOUR BALLOT PROMPTLY!</u>

IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING
PROCEDURES, PLEASE CONTACT THE CLAIMS AND NOTICING AGENT AT:

| If by First Class Mail: | If by Hand Delivery or Overnight Mail: |
|---|---|
| Donlin, Recano & Company, Inc.<br>**Re: New England Compounding Pharmacy, Inc.**<br>Attn: Voting Department<br>P.O. Box 2034, Murray Hill Station<br>New York, NY 10156-0701 | Donlin, Recano & Company, Inc.<br>**Re: New England Compounding Pharmacy, Inc.**<br>Attn: Voting Department<br>6201 15th Ave<br>Brooklyn, NY 11219 |
| If by E-Mail | If by Phone |
| balloting@donlinrecano.com | (212) 771-1128 |

## **EXHIBIT 5-B**

**Class E Ballot**

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION**

|  |  |
|---|---|
| In re:<br><br>NEW ENGLAND COMPOUNDING<br>PHARMACY, INC.,<br><br>                  Debtor. | Chapter 11<br><br>Case No. 12-19882-HJB |

**BALLOT FOR ACCEPTING OR REJECTING THE
FIRST AMENDED JOINT CHAPTER 11 PLAN OF NEW ENGLAND COMPOUNDING
PHARMACY, INC., PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

---

**CLASS E CLAIMS**

---

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR
COMPLETING BALLOTS CAREFULLY BEFORE COMPLETING THE BALLOT**

**THIS BALLOT MUST BE ACTUALLY RECEIVED BY MAY 5, 2015 AT 4:00 P.M.
(EASTERN PREVAILING TIME) (THE "VOTING DEADLINE")**

---

       The Plan Proponents have sent this Ballot to you because our records indicate that you are a holder of a Class E Claim, and accordingly, you have a right to vote to accept or reject the *First Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc.* [Docket No.1154] (as may be amended or supplemented from time to time and including all exhibits or supplements thereto, the "Plan").[1]

       Your rights are described in the *Disclosure Statement for First Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc.* [Docket No.1155] (as may be amended or supplemented from time to time and including all exhibits and supplements thereto, the "Disclosure Statement") and the *Order (I) Approving the Plan Proponents' Disclosure Statement, (II) Approving Solicitation and Notice Procedures With Respect to Confirmation of the Plan Proponents' Joint Plan of Reorganization (III) Approving the Form of Various Ballots and Notices in Connection Therewith (IV) Scheduling Certain Dates With Respect Thereto, and (V) Granting Related Relief* [Docket No.___] (the "Disclosure Statement Order"). The

---

[1]     Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan, Disclosure Statement (as defined herein) or the Disclosure Statement Order (as defined herein), as applicable.

Disclosure Statement, the Plan, the Disclosure Statement Order, and certain other materials contained in the Solicitation Package are included in the packet you are receiving with this Ballot. If you need to obtain additional solicitation materials, you may contact Donlin, Recano, & Co., Inc., the claims and noticing agent retained in the Chapter 11 Cases (the "Claims and Noticing Agent") by: (a) accessing the website for the Claims and Noticing Agent at http://www.drcdrx.com/cases/caseinfo/necp; (b) writing to the Claims and Noticing Agent by First Class Mail at P.O. Box 2034, Murray Hill Station, New York, NY 10156-0701, Re: New England Compounding Pharmacy, Inc. , Attn: Voting Department; (c) writing to the Claims and Noticing Agent by Hand Delivery or Overnight Mail at 6201 15th Ave, Brooklyn, NY 11219, Re: New England Compounding Pharmacy, Inc., Attn: Voting Department; or (d) calling the Claims and Noticing Agent at (212) 771-1128. You may also obtain solicitation materials for a fee via PACER at http://www.mab.uscourts.gov. The Court has approved the Disclosure Statement as containing adequate information, as required under section 1125 of the Bankruptcy Code. Court approval of the Disclosure Statement does not indicate approval of the Plan by the Court. This Ballot may not be used for any purpose other than to vote to accept or reject the Plan. If you believe you have received this Ballot in error, please contact the Claims and Noticing Agent at the address or telephone number set forth above.

*YOU SHOULD REVIEW THE DISCLOSURE STATEMENT AND THE PLAN BEFORE YOU VOTE. YOU MAY WISH TO SEEK LEGAL ADVICE CONCERNING THE PLAN AND THE PLAN'S CLASSIFICATION AND TREATMENT OF YOUR CLAIM. YOUR CLAIM HAS BEEN PLACED IN CLASS E UNDER THE PLAN. IF YOU HOLD CLAIMS IN MORE THAN ONE CLASS, YOU WILL RECEIVE A BALLOT FOR EACH CLASS IN WHICH YOU ARE ENTITLED TO VOTE.*

If the Claims and Noticing Agent does not **actually** **receive** your Ballot on or before the Voting Deadline, which is May 5, 2015, at 4:00 p.m. (Eastern Prevailing Time), and if the Voting Deadline is not extended, your vote will not count. **If the Court confirms the Plan, it will bind you regardless of whether you vote.**

<u>Item 1</u>. **Principal Amount of Class E Claim**

The undersigned hereby certifies that as of the Voting Record Date, March 6, 2015, the undersigned was the holder of a Class E Claim against the Debtor in the following amount (insert amount in box below):

| |
|---|
| Amount of Claim: $ _____ |

**Item 2.  Vote on Plan**

The holder of the Class E Claim set forth in Item 1 votes to (please check one):

| **ACCEPT THE PLAN** | **REJECT THE PLAN** |
|:---:|:---:|
| ☐ | ☐ |

Any Ballot that is executed by the holder of a Claim, but that indicates both an acceptance and a rejection of the Plan or does not indicate either an acceptance or rejection of the Plan, will not be counted.

**Item 3.  Certifications**

By signing this Ballot, the undersigned certifies to the Court and the Plan Proponents:

1.     that either: (a) the entity is the holder of the Class E Claim(s) being voted; or (b) the entity is an authorized signatory for an entity that is a holder of the Class E Claim(s) being voted;

2.     that the entity has received a copy of the Disclosure Statement, the Plan, and the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

3.     that the entity has cast the same vote with respect to all Class E Claims;

4.     that no other Ballots with respect to the amount of the Class E Claim(s) identified in Item 1 have been cast or, if any other Ballots have been cast with respect to such Claim(s), that any such Ballots dated earlier are hereby revoked;

5.     that the entity acknowledges that a vote to accept the Plan constitutes an acceptance of the treatment of such entity's Class E Claim(s);

6.     that the entity understands and, if accepting the Plan, agrees with the treatment provided for its Claim(s) under the Plan; and

7.     that the entity acknowledges and agrees that the Plan Proponents may make conforming changes to the Plan to the extent provided by Bankruptcy Rule 3019 as may be reasonably necessary; <u>provided</u>, that the Plan Proponents will not re-solicit acceptances or rejections of the Plan in the event of such conforming changes.

Name of Holder: _____

(Please print or type)

Social Security or Federal Tax Identification Number: _____

Signature: _____

Name of Signatory: _____

Representative Capacity (if other than holder): _____[2]

Title: _____

Address: _____

_____

_____

Date Completed: _____

**PLEASE COMPLETE, SIGN, AND DATE THE BALLOT AND RETURN IT
PROMPTLY IN THE RETURN ENVELOPE PROVIDED.  YOUR BALLOT MUST BE
ACTUALLY RECEIVED BY THE VOTING DEADLINE, WHICH IS
4:00 P.M. (EASTERN PREVAILING TIME) ON MAY 5, 2015.**

---

[2]    If you are completing this Ballot on behalf of another person or entity, indicate your relationship with such
person or entity and the capacity in which you are signing.  You may be required to provide additional
information or documentation with respect to such relationship.

4

## <u>INSTRUCTIONS FOR COMPLETING BALLOTS</u>

1.   The Plan Proponents are soliciting the votes of holders of Claims with respect to the Plan attached as Exhibit A to the Disclosure Statement.  Capitalized terms used in the Ballot or in these instructions (the "<u>Ballot Instructions</u>") but not otherwise defined therein or herein shall have the meaning set forth in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable.

2.   The Court may confirm the Plan and thereby bind you by the terms of the Plan. Please review the Disclosure Statement for more information.

3.   To ensure that your vote is counted, you must: (a) complete the Ballot; (b) indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Ballot; and (c) sign and return the Ballot to the address set forth on the enclosed pre-addressed envelope.  The Voting Deadline for the receipt of Ballots by the Claims and Noticing Agent is **4:00 p.m. (Eastern Prevailing Time) on May 5, 2015**. Your completed Ballot must be received by the Claims and Noticing Agent on or before the Voting Deadline.

4.   You must vote all of your Claims within a particular Class either to accept or reject the Plan and may not split your vote.  Accordingly, a Ballot that partially rejects and partially accepts the Plan will not be counted.  Further, if a holder has multiple Claims within the same Class, the Plan Proponents may, in their discretion, aggregate the Claims of any particular holder within a Class for the purpose of counting votes.

5.   If a Ballot is received after the Voting Deadline, it will not be counted unless the Plan Proponents determine otherwise. The method of delivery of Ballots to the Claims and Noticing Agent is at the election and risk of each holder of a Claim. Except as otherwise provided herein, such delivery will be deemed made only when the Claims and Noticing Agent actually receives the originally executed Ballot.  Instead of effecting delivery by mail, it is recommended, though not required, that holders use an overnight or hand delivery service.  In all cases, holders should allow sufficient time to assure timely delivery.  Delivery of a Ballot to the Claims and Noticing Agent by facsimile, e-mail or any other electronic means shall not be valid.  No Ballot should be sent to any of the Debtor, the Debtor's agents (other than the Claims and Noticing Agent), or the Plan Proponents or their financial or legal advisors, and if so sent will not be counted.

6.   If multiple Ballots are received from the same holder of a Claim with respect to the same Claim prior to the Voting Deadline, the last dated valid Ballot timely received will supersede and revoke any earlier dated Ballots.

7.   The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.  Accordingly, at this time, holders of

Claims should not surrender certificates or instruments representing or evidencing their Claims, and neither the Debtor nor the Claims and Noticing Agent will accept delivery of any such certificates or instruments surrendered together with a Ballot.  Please be sure to sign and date your Ballot.  If you are signing a Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you should indicate such capacity when signing and, if requested by the Claims and Noticing Agent, the Debtor, the Plan Proponents, or the Court, must submit proper evidence to the requesting party to so act on behalf of such holder. In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Ballot.

8.      If you hold Claims in more than one Class under the Plan or in multiple accounts, you may receive more than one Ballot coded for each different Class or account. Each Ballot votes only your Claims indicated on that Ballot.  Please complete and return each Ballot you received.

9.      The following Ballots shall not be counted in determining the acceptance or rejection of the Plan: (a) any Ballot that is illegible or contains insufficient information to permit the identification of the holder of the Claim; (b) any Ballot cast by a Party that does not hold a Claim in a Class that is entitled to vote on the Plan; (c) any unsigned Ballot; (d) any Ballot not marked to accept or reject the Plan; (e) any Ballot marked both to accept and reject the Plan; and (f) any Ballot submitted by any entity not entitled to vote pursuant to the Solicitation Procedures.

10.     If you believe you have received the wrong Ballot, you should contact the Claims and Noticing Agent immediately.

**<ins>PLEASE MAIL YOUR BALLOT PROMPTLY!</ins>**

IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING
PROCEDURES, PLEASE CONTACT THE CLAIMS AND NOTICING AGENT AT:

| **If by First Class Mail:** | **If by Hand Delivery or Overnight Mail:** |
|---|---|
| Donlin, Recano & Company, Inc.<br>**Re: New England Compounding Pharmacy, Inc.**<br>Attn: Voting Department<br>P.O. Box 2034, Murray Hill Station<br>New York, NY 10156-0701 | Donlin, Recano & Company, Inc.<br>**Re: New England Compounding Pharmacy, Inc.**<br>Attn: Voting Department<br>6201 15th Ave<br>Brooklyn, NY 11219 |
| **If by E-Mail** | **If by Phone** |
| balloting@donlinrecano.com | (212) 771-1128 |

# EXHIBIT 6

**Class D Ballot**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

|  |  |
|---|---|
| In re:<br><br>NEW ENGLAND COMPOUNDING<br>PHARMACY, INC.,<br><br>                    Debtor. | Chapter 11<br><br>Case No. 12-19882-HJB |

**BALLOT FOR ACCEPTING OR REJECTING THE**
**FIRST AMENDED JOINT CHAPTER 11 PLAN OF NEW ENGLAND COMPOUNDING**
**PHARMACY, INC., PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

---

**CLASS D TORT CLAIMS**

---

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR**
**COMPLETING BALLOTS CAREFULLY BEFORE COMPLETING THE BALLOT**

**THIS BALLOT MUST BE ACTUALLY RECEIVED BY MAY 5, 2015 AT 4:00 P.M.**
**(EASTERN PREVAILING TIME) (THE "VOTING DEADLINE")**

---

      The Plan Proponents have sent this Ballot to you because our records indicate that you are a holder of a Class D Claim, and accordingly, you have a right to vote to accept or reject the *First Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc.* [Docket No.1154] (as may be amended or supplemented from time to time and including all exhibits or supplements thereto, the "Plan").[1]

      Your rights are described in the *Disclosure Statement for First Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc.* [Docket No.1155] (as may be amended or supplemented from time to time and including all exhibits and supplements thereto, the "Disclosure Statement") and the *Order (I) Approving the Plan Proponents' Disclosure Statement, (II) Approving Solicitation and Notice Procedures With Respect to Confirmation of the Plan Proponents' Joint Plan of Reorganization, (III) Approving the Form of Various Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates With Respect Thereto and (V) Granting Related Relief* [Docket No.___] (the "Disclosure Statement Order").   The Disclosure Statement, the Plan, the Disclosure Statement Order, and certain other materials contained in the Solicitation Package are included in the packet you are receiving with this

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan, Disclosure Statement (as defined herein) or the Disclosure Statement Order (as defined herein).

Ballot.  If you need to obtain additional solicitation materials, you may contact Donlin, Recano, & Co., Inc., the claims and noticing agent retained in the Chapter 11 Cases (the "Claims and Noticing Agent") by: (a) accessing the website for the Claims and Noticing Agent at http://www.drcdrx.com/cases/caseinfo/necp; (b) writing to the Claims and Noticing Agent by First Class Mail at P.O. Box 2034, Murray Hill Station, New York, NY 10156-0701, Re: New England Compounding Pharmacy, Inc., Attn: Voting Department; (c) writing to the Claims and Noticing Agent by Hand Delivery or Overnight Mail at 6201 15th Ave, Brooklyn, NY 11219, Re: New England Compounding Pharmacy, Inc., Attn: Voting Department; or (d) calling the Claims and Noticing Agent at (212) 771-1128.  You may also obtain solicitation materials for a fee via PACER at http://www.mab.uscourts.gov.  The Court has approved the Disclosure Statement as containing adequate information, as required under section 1125 of the Bankruptcy Code.  Court approval of the Disclosure Statement does not indicate approval of the Plan by the Court.  This Ballot may not be used for any purpose other than to vote to accept or reject the Plan.  If you believe you have received this Ballot in error, please contact the Claims and Noticing Agent at the address or telephone number set forth above.

**THE PLAN CONTAINS RELEASES AND INJUNCTIONS FOR THE BENEFIT OF THE DEBTOR AND ITS ESTATE, THE ESTATE REPRESENTATIVE(S) AND CERTAIN THIRD PARTIES DESCRIBED IN SECTION 3.4 OF THE DISCLOSURE STATEMENT AND SCHEDULES 1.121 AND 1.167 TO THE PLAN.  IF THE PLAN IS CONFIRMED, ALL PERSONS AND ENTITIES WILL BE BOUND BY THE RELEASE PROVISIONS OF SECTION 10.05 OF THE PLAN AND THE INJUNCTIONS PROVIDED FOR IN SECTION 10.06 OF THE PLAN.  SUCH RELEASES AND INJUNCTIONS OPERATE TO FOREVER DISCHARGE AND BAR ANY AND ALL PERSONS AND ENTITIES FROM ASSERTING ANY AND ALL CLAIMS, DEBTS, OBLIGATIONS, DEMANDS, LIABILITIES, SUITS, JUDGMENTS, DAMAGES, RIGHTS AND CAUSES OF ACTION ARISING FROM ACTS OR OMISSIONS IN ANY WAY RELATED TO NECC OR THE DRUGS IT PRODUCED AGAINST THE DEBTOR AND ITS ESTATE, THE ESTATE REPRESENTATIVE(S), THE SHAREHOLDER AND AFFILIATE RELEASED PARTIES, AND THE THIRD PARTIES DESCRIBED IN SECTION 3.4 OF THE DISCLOSURE STATEMENT AND SCHEDULES 1.121 AND 1.167 TO THE PLAN.  ALL PARTIES IN INTEREST SHOULD REVIEW CAREFULLY SECTIONS 10.05 AND 10.06 OF THE PLAN, TOGETHER WITH SECTIONS 3.4, 12.5 AND 12.6 OF THE DISCLOSURE STATEMENT, AND PARTIES IN INTEREST ENTITLED TO VOTE ON THE PLAN SHOULD REVIEW THOSE SECTIONS PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN.**

*You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim.  Your Claim has been placed in Class D under the Plan.  If you hold Claims in more than one Class, you will receive a Ballot for each Class in which you are entitled to vote.*

If the Claims and Noticing Agent does not **actually receive** your Ballot on or before the Voting Deadline, which is May 5, 2015, at 4:00 p.m. (Eastern Prevailing Time), and if the

Voting Deadline is not extended, your vote will not count.  **If the Court confirms the Plan, it will bind you regardless of whether you vote.**

<u>**Item 1.**</u>  **Injury Category and Amount of Claim**

For the purposes of voting to accept or reject the plan, the undersigned hereby certifies that as of the Voting Record Date, March 6, 2015, the undersigned was the holder of a Class D Tort Claim against the Debtor based on one of the following categories of injury or loss.  Please check the appropriate basis for your claim.  Check only one box.

☐  **Meningitis, stroke, and/or infection (including vertebral osteomyelitis, discitis, sacroiliitis, phlegmon, abscess, and/or arachnoiditis), RESULTING IN THE DEATH OF THE CLAIMANT WHOSE ESTATE OR OTHER REPRESENTATIVE IS SUBMITTING THIS BALLOT after exposure to a contaminated NECC product.  Weight of claim for voting purposes only: 120 points**

☐  **Meningitis, stroke, and/or infection (including vertebral osteomyelitis, discitis, sacroiliitis, phlegmon, abscess, and/or arachnoiditis), NOT RESULTING IN THE DEATH OF THE CLAIMANT after exposure to a contaminated NECC product. Weight of claim for voting purposes only: 80 points**

☐  **Symptoms of headache, word-finding difficulty, nausea/vomiting, fever, neck stiffness or pain, back pain, photophobia, lack of appetite, urine retention, slurred speech, limb weakness, numbness, and.or pain at injection site and a lumbar puncture, MRI, or CT guided biopsy after exposure to a contaminated NECC product.  Weight of claim for voting purposes only: 10 points**

☐  **Exposure to a contaminated NECC product and other injury or loss.  Weight of claim for voting purposes only: 2 points**

☐  **No exposure to a contaminated NECC product but other loss (i.e., a spouse's loss of consortium).  Weight of claim for voting purposes only:  1 point.**

<u>**Item 2.**</u>  **Vote on Plan**

The holder of the Class D Claim set forth in Item 1 votes to (please check one):

| <u>**ACCEPT THE PLAN**</u> | <u>**REJECT THE PLAN**</u> |
|:---:|:---:|
| ☐ | ☐ |

3

Any Ballot that is executed by the holder of a Claim, but that indicates both an acceptance and a rejection of the Plan or does not indicate either an acceptance or rejection of the Plan, will not be counted.

## <u>Item 3</u>.  **Certifications**

By signing this Ballot, the undersigned certifies to the Court and the Plan Proponents:

1.　　that either: (a) the claimant is the holder of the Class D Claim(s) being voted; or (b) the claimant is an authorized signatory for a claimant that is a holder of the Class D Claim(s) being voted;

2.　　that the claimant has been exposed to a contaminated NECC product or suffered a loss of consortium so that such claimant holds a Tort Claim, as defined in the Plan and described in the Disclosure Statement;

3.　　that the claimant meets the criteria for the injury or loss level asserted on this Ballot;

4.　　that the claimant has received a copy of the Disclosure Statement, the Plan, and the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

5.　　that the claimant has cast the same vote with respect to all Class D Claims;

6.　　that no other Ballots with respect to the amount of the Class D Claim(s) identified in Item 1 have been cast or, if any other Ballots have been cast with respect to such Claim(s), that any such Ballots dated earlier are hereby revoked;

7.　　that the claimant acknowledges that a vote to accept the Plan constitutes an acceptance of the treatment of such Claimant's Class D Claim(s);

8.　　that the claimant understands and, if accepting the Plan, agrees with the treatment provided for its Claim(s) under the Plan; and

9.　　that the claimant acknowledges and agrees that the Plan Proponents may make conforming changes to the Plan to the extent provided by Bankruptcy Rule 3019 as may be reasonably necessary; <u>provided</u>, that the Plan Proponents will not re-solicit acceptances or rejections of the Plan in the event of such conforming changes.

Name of Claimant: _____

(Please print or type)

Social Security or Federal Tax ID Number: _____

Signature: _____

Name of Signatory: _____

Representative Capacity (if other than Claimant)[2]: _____

Title: _____

Address: _____

_____

_____

Date Completed: _____

**PLEASE COMPLETE, SIGN, AND DATE THE BALLOT AND RETURN IT
PROMPTLY IN THE RETURN ENVELOPE PROVIDED. YOUR BALLOT MUST BE
ACTUALLY RECEIVED BY THE VOTING DEADLINE, WHICH IS
4:00 P.M. (EASTERN PREVAILING TIME) ON MAY 5, 2015.**

---

[2]    If you are completing this Ballot on behalf of another person, indicate your relationship with such person and
the capacity in which you are signing.  You must also provide additional information or documentation with
respect to such relationship.  Please see the attached Instructions for Completing Ballots at paragraph 7 and
page [___] of the Disclosure Statement.

## INSTRUCTIONS FOR COMPLETING BALLOTS

1.  The Plan Proponents are soliciting the votes of holders of Claims with respect to the Plan attached as Exhibit A to the Disclosure Statement. Capitalized terms used in the Ballot or in these instructions (the "<u>Ballot Instructions</u>") but not otherwise defined therein or herein shall have the meaning set forth in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable.

2.  The Court may confirm the Plan and thereby bind you by the terms of the Plan. Please review the Disclosure Statement for more information.

3.  To ensure that your vote is counted, you must: (a) complete the Ballot; (b) indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Ballot; and (c) sign and return the Ballot to the address set forth on the enclosed pre-addressed envelope. The Voting Deadline for the receipt of Ballots by the Claims and Noticing Agent is **4:00 p.m. (Eastern Prevailing Time) on May 5, 2015**. Your completed Ballot must be received by the Claims and Noticing Agent on or before the Voting Deadline.

4.  You must vote all of your Claims within a particular Class either to accept or reject the Plan and may not split your vote. Accordingly, a Ballot that partially rejects and partially accepts the Plan will not be counted. Further, if a claimant has multiple Claims within the same Class, the Plan Proponents may, in their discretion, aggregate the Claims of any particular claimant within a Class for the purpose of counting votes.

5.  If a Ballot is received after the Voting Deadline, it will not be counted unless the Plan Proponents determine otherwise. The method of delivery of Ballots to the Claims and Noticing Agent is at the election and risk of each claimant. Except as otherwise provided herein, such delivery will be deemed made only when the Claims and Noticing Agent actually receives the originally executed Ballot. Instead of effecting delivery by mail, it is recommended, though not required, that holders use an overnight or hand delivery service. In all cases, claimants should allow sufficient time to assure timely delivery. Delivery of a Ballot to the Claims and Noticing Agent by facsimile, e-mail or any other electronic means shall not be valid. No Ballot should be sent to any of the Debtor, the Debtor's agents (other than the Claims and Noticing Agent), or the Plan Proponents or their financial or legal advisors, and if so sent will not be counted.

6.  If multiple Ballots are received from the same claimant with respect to the same Claim prior to the Voting Deadline, the last dated valid Ballot timely received will supersede and revoke any earlier dated Ballots.

7.  The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan. Accordingly, at this time, claimants should not surrender certificates or instruments representing or evidencing their

6

Claims, and neither the Debtor nor the Claims and Noticing Agent will accept delivery of any such certificates or instruments surrendered together with a Ballot. Please be sure to sign and date your Ballot.  If you are signing a Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you should indicate such capacity when signing and, if requested by the Claims and Noticing Agent, the Debtor, the Plan Proponents, or the Court, must submit proper evidence to the requesting party to so act on behalf of such claimant.  In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Ballot.

8.      If you hold Claims in more than one Class under the Plan or in multiple accounts, you may receive more than one Ballot coded for each different Class or account. Each Ballot votes only your Claims indicated on that Ballot.  Please complete and return each Ballot you received.

9.      The following Ballots shall not be counted in determining the acceptance or rejection of the Plan: (a) any Ballot that is illegible or contains insufficient information to permit the identification of the claimant; (b) any Ballot cast by a Party that does not hold a Claim in a Class that is entitled to vote on the Plan; (c) any unsigned Ballot; (d) any Ballot not marked to accept or reject the Plan; (e) any Ballot marked both to accept and reject the Plan; and (f) any Ballot submitted by any claimant not entitled to vote pursuant to the Solicitation Procedures.

10.     If you believe you have received the wrong Ballot, you should contact the Claims and Noticing Agent immediately.

## **PLEASE MAIL YOUR BALLOT PROMPTLY!**

IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING
PROCEDURES, PLEASE CONTACT THE CLAIMS AND NOTICING AGENT AT:

| If by First Class Mail: | If by Hand Delivery or Overnight Mail: |
|---|---|
| Donlin, Recano & Company, Inc.<br>**Re: New England Compounding Pharmacy, Inc.**<br>Attn: Voting Department<br>P.O. Box 2034, Murray Hill Station<br>New York, NY 10156-0701 | Donlin, Recano & Company, Inc.<br>**Re: New England Compounding Pharmacy, Inc.**<br>Attn: Voting Department<br>6201 15th Ave<br>Brooklyn, NY 11219 |
| **If by E-Mail** | **If by Phone** |
| balloting@donlinrecano.com | (212) 771-1128 |

Case 1:13-md-02419-RWZ   Document 1714-1   Filed 03/03/15   Page 72 of 98

# EXHIBIT 7

**Presumed to Accept Notice**

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MASSACHUSETTS
## EASTERN DIVISION

|  |  |
|---|---|
| In re:<br><br>NEW ENGLAND COMPOUNDING<br>PHARMACY, INC.,<br><br>Debtor. | Chapter 11<br><br>Case No. 12-19882-HJB |

## NOTICE OF NON-VOTING STATUS WITH
## RESPECT TO CLASSES PRESUMED TO ACCEPT THE FIRST AMENDED JOINT
## CHAPTER 11 PLAN OF NEW ENGLAND COMPOUNDING PHARMACY, INC.

**PLEASE TAKE NOTICE THAT** on [___], 2015, the United States Bankruptcy Court for the District of Massachusetts (the "Court") entered the *Order (I) Approving the Plan Proponents' Disclosure Statement, (II) Approving Solicitation and Notice Procedures With Respect to Confirmation of the Plan Proponents' Joint Plan of Reorganization, (III) Approving the Form of Various Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates With Respect Thereto, and (V) Granting Related Relief* [Docket No.___] (the "Disclosure Statement Order") that, among other things: (a) approved the adequacy of the *Disclosure Statement for First Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc.* [Docket No.1155] (as amended and including all exhibits and supplements thereto, the "Disclosure Statement") filed in support of the *First Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc.* [Docket No.1154] (as amended and including all exhibits and supplements thereto, the "Plan"); and (b) authorized the Plan Proponents to solicit acceptances or rejections of the Plan from holders of Impaired Claims who are (or may be) entitled to receive distributions under the Plan.[1]

**PLEASE TAKE FURTHER NOTICE THAT** the Disclosure Statement, the Disclosure Statement Order, the Plan, and the other documents and materials included in the Solicitation Package, excepting Ballots, may be obtained at no charge from Donlin, Recano & Co., Inc., the claims and noticing agent retained by the Debtor in the Chapter 11 Cases (the "Claims and Noticing Agent") by (a) accessing the website for the Claims and Noticing Agent at http://www.drcdrx.com/cases/caseinfo/necp; (b) writing to the Claims and Noticing Agent by First Class Mail at P.O. Box 2034, Murray Hill Station, New York, NY 10156-0701, Re: New England Compounding Pharmacy, Inc., Attn: Voting Department; (c) writing to the Claims and Noticing Agent by Hand Delivery or Overnight Mail at 6201 15th Ave, Brooklyn, NY 11219, Re: New England Compounding Pharmacy, Inc., Attn: Voting Department; or (d) calling the

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable.

Claims and Noticing Agent at (212) 771-1128.  You may also obtain copies of any pleadings filed in the Chapter 11 Cases for a fee via PACER at: http://www.mab.uscourts.gov.

**PLEASE TAKE FURTHER NOTICE THAT** you are receiving this notice because, pursuant to the terms of the Plan and the applicable provisions of the Bankruptcy Code, your Claim(s) against the Debtor are Unimpaired and, therefore, pursuant to section 1126(f) of the Bankruptcy Code, **you are conclusively presumed to have accepted the Plan and are, therefore, not entitled to vote on the Plan**.

**PLEASE TAKE FURTHER NOTICE THAT** the Court has established **May 5, 2015**, as the deadline for filing and serving objections to the Confirmation of the Plan (the "Plan Objection Deadline").  Any objection to the Plan must: (a) be in writing; (b) conform to the Bankruptcy Rules and the Local Rules; (c) state the name and address of the objecting party and the amount and nature of the Claim; (d) state with particularity the basis and nature of any objection to the Plan; (e) propose a modification to the Plan that would resolve such objection (if applicable); and (f) be filed, contemporaneously with a proof of service, with the Court and served so that it is actually received by each of the following notice parties by the Plan Objection Deadline:

| Chapter 11 Trustee |
|:---:|
| Paul D. Moore |
| **DUANE MORRIS LLP** |
| 100 High Street |
| Suite 2400 |
| Boston, MA 02110-1724 |

| Co-Counsel to the Chapter 11 Trustee | |
|:---:|:---:|
| **DUANE MORRIS LLP**<br>Michael R. Lastowski<br>222 Delaware Avenue<br>Suite 1600<br>Wilmington, DE 19801-1659 | **HARRIS BEACH PLC**<br>Frederick H. Fern<br>100 Wall Street<br>New York, NY 10005 |
| Counsel to the Committee | |
| **BROWN RUDNICK LLP**<br>William R. Baldiga<br>Kiersten A. Taylor<br>One Financial Center<br>Boston, MA 02111 | **BROWN RUDNICK LLP**<br>David J. Molton<br>7 Times Square<br>New York, NY 10036 |

| U.S. Trustee |
|:---:|
| John Fitzgerald |
| Office of the US Trustee |
| J.W. McCormack Post Office & Courthouse |
| 5 Post Office Sq., 10th Fl., Suite 1000 |
| Boston, MA 02109 |

**PLEASE TAKE FURTHER NOTICE THAT** A hearing to confirm the Plan (the "Confirmation Hearing") will commence on **May 19, 2015 at 10:00 a.m. (Eastern Prevailing Time)** before the Honorable Henry J. Boroff, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Massachusetts, 300 State Street, Springfield, MA

01105-2925.  Please be advised that the Confirmation Hearing may be continued from time to time by the Court or the Plan Proponents without further notice other than by such adjournment being announced in open court or by a notice of adjournment being filed with the Court and served on parties entitled to notice under Bankruptcy Rule 2002 and the Local Rules or otherwise.  In accordance with the Plan, the Plan may be modified, if necessary, prior to, during, or as a result of the Confirmation Hearing without further action by the Plan Proponents and without further notice to or action, order, or approval of the Court or any other entity.

**PLEASE TAKE FURTHER NOTICE THAT** if you have any questions about the status of any of your Claims, you should contact the Claims and Noticing Agent in accordance with the instructions provided above.

**DUANE MORRIS LLP**

Paul D. Moore, Esq.
100 High Street
Suite 2400
Boston, MA 02110
Telephone:  (857) 488-4200
Facsimile:  (857) 401-3057

*Chapter 11 Trustee*

**BROWN RUDNICK LLP**

William R. Baldiga, Esq.
Kiersten A. Taylor, Esq.
One Financial Center
Boston, MA 02111
Telephone: (617) 856-8200
Facsimile:  (617) 856-8201


David J. Molton, Esq.
7 Times Square
New York, NY 10036
Telephone: (212) 209-4800
Facsimile:  (212) 209-4801

*Counsel to the Official Committee
of Unsecured Creditors*


Dated:  [_____], 2015

# EXHIBIT 8

**Assumed Executory Contracts and Unexpired Leases Notice**

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MASSACHUSETTS
# EASTERN DIVISION

In re:

NEW ENGLAND COMPOUNDING
PHARMACY, INC.,

                    Debtor.

Chapter 11

Case No. 12-19882-HJB

## NOTICE TO COUNTERPARTIES TO EXECUTORY CONTRACTS
## AND UNEXPIRED LEASES BEING ASSUMED UNDER THE FIRST AMENDED
## JOINT CHAPTER 11 PLAN OF NEW ENGLAND COMPOUNDING PHARMACY, INC.

**PLEASE TAKE NOTICE THAT** on [___], 2015, the United States Bankruptcy Court for the District of Massachusetts (the "Court") entered the *Order (I) Approving the Plan Proponents' Disclosure Statement, (II) Approving Solicitation and Notice Procedures With Respect to Confirmation of the Plan Proponents' Joint Plan of Reorganization, (III) Approving the Form of Various Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates With Respect Thereto, and (V) Granting Related Relief* [Docket No.___] (the "Disclosure Statement Order") that, among other things: (a) approved the adequacy of the *Disclosure Statement for First Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc.* [Docket No.1155] (as amended and including all exhibits and supplements thereto, the "Disclosure Statement") filed in support of the *First Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc.* [Docket No.1154] (as may be amended or supplemented from time to time and including all exhibits and supplements thereto, the "Plan"); and (b) authorized the Plan Proponents to solicit acceptances or rejections of the Plan from holders of Impaired Claims who are (or may be) entitled to receive distributions under the Plan.[1]

**PLEASE TAKE FURTHER NOTICE THAT** the Disclosure Statement, the Disclosure Statement Order, the Plan, and the other documents and materials included in the Solicitation Package, except Ballots, may be obtained at no charge from Donlin, Recano & Co., Inc., the claims and noticing agent retained by the Debtor in the Chapter 11 Cases (the "Claims and Noticing Agent") by (a) accessing the website for the Claims and Noticing Agent at http://www.drcdrx.com/cases/caseinfo/necp; (b) writing to the Claims and Noticing Agent by First Class Mail at P.O. Box 2034, Murray Hill Station, New York, NY 10156-0701, Re: New England Compounding Pharmacy, Inc., Attn: Voting Department; (c) writing to the Claims and Noticing Agent by Hand Delivery or Overnight Mail at 6201 15th Ave, Brooklyn, NY 11219, Re: New England Compounding Pharmacy, Inc., Attn: Voting Department; or (d) calling the

---

[1]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable.

Claims and Noticing Agent at (212) 771-1128.  You may also obtain copies of any pleadings filed in the Chapter 11 Cases for a fee via PACER at: http://www.mab.uscourts.gov.

**PLEASE TAKE FURTHER NOTICE THAT** under the terms of Article VIII of the Plan, all executory contracts and unexpired leases to which the Debtor is or may be deemed a party, except for and other than the Settlement Agreements, shall be deemed rejected as of the Effective Date, without the need for any further action by the Post-Confirmation Officer  except for an executory contract or unexpired lease that (i) has been assumed or rejected pursuant to Final Order of the Bankruptcy Court entered prior to the Effective Date or (ii) is the subject of a separate motion to assume or reject filed under section 365 of the Bankruptcy Code by the Debtor prior to the Effective Date.

You are receiving this notice because you or one of your affiliates is a counterparty to an Executory Contract or an Unexpired Lease[2] listed below with the Debtor:

**[Counterparty Name]        [Contract/Lease]        [Cure Obligation]**

**The Debtor intends to assume the Executory Contracts or Unexpired Leases listed above to which you are a counterparty.**  The Plan Proponents have conducted a review of the Debtor's books and records and has determined that the amount to cure unpaid obligations under such contract or lease is as set forth above (the "Cure Obligation").  Unless otherwise ordered by the Court, any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption and assignment or related Cure Obligation must be Filed with the Court.

**PLEASE TAKE FURTHER NOTICE THAT** in the event of a dispute regarding: (a) any cure obligation; (b) the ability of the Debtor or any assignee, as applicable, to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under any of your Executory Contracts or Unexpired Leases; or (c) any other matter pertaining to assumption or assumption and assignment of any of your Executory Contracts or Unexpired Leases, the satisfaction of any cure obligation will be made following the entry of a Final Order resolving the dispute and approving the assumption and assignment of such Executory Contracts or Unexpired Leases; provided, however, that prior to the Effective Date, the Debtor or any assignee, as applicable, may settle any dispute regarding such cure obligation without further notice to or action, order, or approval of the Court.

**PLEASE TAKE FURTHER NOTICE THAT** assumption and assignment of any Executory Contract or Unexpired Lease pursuant to the Plan, or otherwise, shall result in the full release and satisfaction of any Claims or defaults, subject to satisfaction of any cure obligation, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption and/or assignment.  Anything in the Schedules and any proofs of claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed and assigned shall

---

[2]    This "Notice" is being sent to counterparties to Executory Contracts and Unexpired Leases.  This Notice is not an admission by the Plan Proponents or the Debtor that such contract or lease is executory or unexpired.

be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other entity.

**YOUR STATUS AS A COUNTERPARTY TO AN EXECUTORY CONTRACT AND/OR AN UNEXPIRED LEASE DOES NOT IN AND OF ITSELF ENTITLE YOU TO VOTE ON THE PLAN.** Accordingly, this notice and the *Notice of Order (I) Approving the Plan Proponents' Disclosure Statement, (II) Approving Solicitation and Notice Procedures With Respect to Confirmation of the Plan Proponents' Joint Plan of Reorganization, (III) Approving the Form of Various Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates With Respect Thereto, and (V) Granting Related Relief* [Docket No.___] are being sent to you for informational purposes only.

**PLEASE TAKE FURTHER NOTICE THAT** if you have any questions about this Notice you should contact the Claims and Noticing Agent in accordance with the instructions provided above.

**DUANE MORRIS LLP**

Paul D. Moore, Esq.
100 High Street
Suite 2400
Boston, MA 02110
Telephone:  (857) 488-4200
Facsimile:  (857) 401-3057

*Chapter 11 Trustee*

**BROWN RUDNICK LLP**

William R. Baldiga, Esq.
Kiersten A. Taylor, Esq.
One Financial Center
Boston, MA 02111
Telephone:  (617) 856-8200
Facsimile:  (617) 856-8201

David J. Molton, Esq.
7 Times Square
New York, NY 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801

*Counsel to the Official Committee
of Unsecured Creditors*

Dated:  [_____], 2015

3

# EXHIBIT 9

**Rejected Executory Contracts and Unexpired Leases Notice**

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MASSACHUSETTS
### EASTERN DIVISION

|  |  |
|---|---|
| In re:<br><br>NEW ENGLAND COMPOUNDING<br>PHARMACY, INC.,<br><br>            Debtor. | Chapter 11<br><br>Case No. 12-19882-HJB |

## NOTICE TO COUNTERPARTIES TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES BEING REJECTED BY THE FIRST AMENDED JOINT CHAPTER 11 PLAN OF NEW ENGLAND COMPOUNDING PHARMACY, INC.

**PLEASE TAKE NOTICE THAT** on [___], 2015, the United States Bankruptcy Court for the District of Massachusetts (the "Court") entered the *Order (I) Approving the Plan Proponents' Disclosure Statement, (II) Approving Solicitation and Notice Procedures With Respect to Confirmation of the Plan Proponents' Joint Plan of Reorganization, (III) Approving the Form of Various Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates With Respect Thereto, and (V) Granting Related Relief* [Docket No.___] (the "Disclosure Statement Order") that, among other things: (a) approved the adequacy of the *Disclosure Statement for First Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc.* [Docket No. 1155] (as amended and including all exhibits and supplements thereto, the "Disclosure Statement") filed in support of the *First Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc.* [Docket No. 1154] (as may be amended or supplemented from time to time and including all exhibits and supplements thereto, the "Plan"); and (b) authorized the Plan Proponents to solicit acceptances or rejections of the Plan from holders of Impaired Claims who are (or may be) entitled to receive distributions under the Plan.[1]

**PLEASE TAKE FURTHER NOTICE THAT** the Disclosure Statement, the Disclosure Statement Order, the Plan, and the other documents and materials included in the Solicitation Package, except Ballots, may be obtained at no charge from Donlin, Recano & Co., Inc., the claims and noticing agent retained by the Debtor in the Chapter 11 Cases (the "Claims and Noticing Agent") by (a) accessing the website for the Claims and Noticing Agent at http://www.drcdrx.com/cases/caseinfo/necp; (b) writing to the Claims and Noticing Agent by First Class Mail at P.O. Box 2034, Murray Hill Station, New York, NY 10156-0701, Re: New England Compounding Pharmacy, Inc., Attn: Voting Department; (c) writing to the Claims and Noticing Agent by Hand Delivery or Overnight Mail at 6201 15th Ave, Brooklyn, NY 11219,

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable.

Re: New England Compounding Pharmacy, Inc., Attn: Voting Department; or (c) calling the Claims and Noticing Agent at (212) 771-1128.  You may also obtain copies of any pleadings filed in the Chapter 11 Cases for a fee via PACER at: http://www.mab.uscourts.gov.

**PLEASE TAKE FURTHER NOTICE THAT** under the terms of Article VIII of the Plan, all executory contracts and unexpired leases to which the Debtor is or may be deemed a party, except for and other than the Settlement Agreements, shall be deemed rejected as of the Effective Date, without the need for any further action by the Post-Confirmation Officer  except for an executory contract or unexpired lease that (i) has been assumed or rejected pursuant to Final Order of the Bankruptcy Court entered prior to the Effective Date or (ii) is the subject of a separate motion to assume or reject filed under section 365 of the Bankruptcy Code by the Debtor prior to the Effective Date.

You are receiving this notice because you or one of your affiliates is a counterparty to an Executory Contract or an Unexpired Lease[2] listed below with the Debtor:

**[Counterparty Name]        [Contract/Lease]**

**The Debtor intends to reject the Executory Contracts or Unexpired Leases listed above to which you are a counterparty**.  As a result of the Executory Contracts or Unexpired Leases to which you are a counterparty being rejected, you may be entitled to an unsecured claim for which a proof of claim must be filed.  Pursuant to the Plan, if the rejection of your Executory Contracts or Unexpired Leases gives rise to a Claim by you, unless otherwise provided by an order of the Bankruptcy Court, any proofs of claim based on the rejection of the Debtor's Executory Contracts or Unexpired Leases, pursuant to the Plan or otherwise, must be filed with the Bankruptcy Court and served upon the Post-Confirmation Officer on or before the date that is thirty (30) days after the Confirmation Date.  In addition, any objection to the rejection of an Executory Contract or Unexpired Lease must be filed with the Court and served so as to actually be received by the Debtor before fourteen days after the service of this Notice.

**Any holders of Claims arising from the rejection of an Executory Contract or Unexpired Lease for which proofs of claims are not timely filed as set forth in the paragraph above shall not (1) be treated as a creditor with respect to such Claim, or (2) participate in any distribution in the Chapter 11 Cases on account of such Claim.  Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed with the Court within such time will be automatically disallowed and forever barred from assertion and shall not be enforceable against the Debtor, the Debtor's Estates, or the property of any of the foregoing without the need for any objection by the Debtor or further notice to, or action, order, or approval of the Court or any other entity.  Any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a proof of claim to the contrary.**  All Allowed Claims arising from the rejection of the Debtor's Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims against the Debtor, except as otherwise provided by order of the Court.

---

[2]     This "Notice" is being sent to counterparties to Executory Contracts and Unexpired Leases.  This Notice is not an admission by the Plan Proponents or Debtor that such contract or lease is executory or unexpired.

**YOUR STATUS AS A COUNTERPARTY TO AN EXECUTORY CONTRACT AND/OR AN UNEXPIRED LEASE DOES NOT IN AND OF ITSELF ENTITLE YOU TO VOTE ON THE PLAN.** Accordingly, this notice and the *Notice of Order (I) Approving the Plan Proponents' Disclosure Statement, (II) Approving Solicitation and Notice Procedures With Respect to Confirmation of the Plan Proponents' Joint Plan of Reorganization, (III) Approving the Form of Various Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates With Respect Thereto, and (V) Granting Related Relief* [Docket No.___] are being sent to you for informational purposes only.

**PLEASE TAKE NOTICE THAT** if you file a proof of claim based on the rejection of your Executory Contracts or Unexpired Leases, then no later than two business days thereafter, the Claims and Noticing Agent shall distribute a Ballot, and a pre-addressed, postage pre-paid envelope to you, which must be returned to the Claims and Noticing Agent no later than the Voting Deadline, which is **May 5, 2015 at 4:00 p.m. (Eastern Prevailing Time).**

**PLEASE TAKE FURTHER NOTICE THAT** if you have any questions about this Notice you should contact the Claims and Noticing Agent in accordance with the instructions provided above.

| | |
|---|---|
| **DUANE MORRIS LLP** | **BROWN RUDNICK LLP** |
| | |
| Paul D. Moore, Esq. | William R. Baldiga, Esq. |
| 100 High Street | Kiersten A. Taylor, Esq. |
| Suite 2400 | One Financial Center |
| Boston, MA 02110 | Boston, MA 02111 |
| Telephone: (857) 488-4200 | Telephone: (617) 856-8200 |
| Facsimile: (857) 401-3057 | Facsimile: (617) 856-8201 |
| | |
| *Chapter 11 Trustee* | |
| | David J. Molton, Esq. |
| | 7 Times Square |
| | New York, NY 10036 |
| | Telephone: (212) 209-4800 |
| | Facsimile: (212) 209-4801 |
| | |
| | *Counsel to the Official Committee of Unsecured Creditors* |

Dated: [_____], 2015

**EXHIBIT 10**

**Disputed Claims Notice**

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MASSACHUSETTS
### EASTERN DIVISION

|  |  |
|---|---|
| In re:<br><br>NEW ENGLAND COMPOUNDING<br>PHARMACY, INC.,<br><br>            Debtor. | Chapter 11<br><br>Case No. 12-19882-HJB |

## NON-VOTING STATUS NOTICE WITH RESPECT TO DISPUTED CLAIMS

**PLEASE TAKE NOTICE THAT** on [___], 2015, the United States Bankruptcy Court for the District of Massachusetts (the "Court") entered the *Order (I) Approving the Plan Proponents' Disclosure Statement, (II) Approving Solicitation and Notice Procedures With Respect to Confirmation of the Plan Proponents' Joint Plan of Reorganization (III) Approving the Form of Various Ballots and Notices in Connection Therewith (IV) Scheduling Certain Dates With Respect Thereto, and (V) Granting Related Relief* [Docket No.___] (the "Disclosure Statement Order") that, among other things: (a) approved the adequacy of the *Disclosure Statement for First Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc.* [Docket No. 1155] (as amended and including all exhibits and supplements thereto, the "Disclosure Statement") filed in support of the *First Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc.* [Docket No. 1154] (as may be amended or supplemented from time to time and including all exhibits and supplements thereto, the "Plan"); and (b) authorized the Plan Proponents to solicit acceptances or rejections of the Plan from holders of Impaired Claims who are (or may be) entitled to receive distributions under the Plan.[1]

**PLEASE TAKE FURTHER NOTICE THAT** the Disclosure Statement, the Disclosure Statement Order, the Plan, and the other documents and materials included in the Solicitation Package, except Ballots, may be obtained at no charge from Donlin, Recano & Co., Inc., the claims and noticing agent retained by the Debtor in the Chapter 11 Cases (the "Claims and Noticing Agent") by (a) accessing the website for the Claims and Noticing Agent at http://www.drcdrx.com/cases/caseinfo/necp; (b) writing to the Claims and Noticing Agent by First Class Mail at P.O. Box 2034, Murray Hill Station, New York, NY 10156-0701, Re: New England Compounding Pharmacy, Inc., Attn: Voting Department; (c) writing to the Claims and Noticing Agent by Hand Delivery or Overnight Mail at 6201 15th Ave, Brooklyn, NY 11219, Re: New England Compounding Pharmacy, Inc., Attn: Voting Department; or (d) calling the Claims and Noticing Agent at (212) 771-1128. You may also obtain copies of any pleadings filed in the Chapter 11 Cases for a fee via PACER at: http://www.mab.uscourts.gov.

---

[1]      Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable.

**PLEASE TAKE FURTHER NOTICE THAT** you are receiving this notice because you are the holder of a Claim that is subject to a pending objection by the Debtor or Plan Proponents.  **You are not entitled to vote on the Plan unless one or more of the following (each, a "Resolution Event") has occurred in the timeframe provided by the Solicitation Procedures:**

(a)     an order of the Court is entered allowing such Claim pursuant to section 502(b) of the Bankruptcy Code, after notice and a hearing;

(b)     an order of the Court is entered temporarily allowing such Claim for voting purposes only pursuant to Bankruptcy Rule 3018(a), after notice and a hearing;

(c)     a stipulation or other agreement is executed between the holder of such Claim and the Debtor resolving the objection and allowing such Claim in an agreed upon amount;

(d)     a stipulation or other agreement is executed between the holder of such Claim and the Debtor temporarily allowing the holder of such Claim to vote its Claim in an agreed upon amount; or

(e)     the pending objection to such Claim is voluntarily withdrawn by the objecting party.

Accordingly, this notice and the Disclosure Statement Order, which among other things approved the Disclosure Statement, are being sent to you for informational purposes only.

**PLEASE TAKE FURTHER NOTICE THAT** if a Resolution Event occurs, as provided by the Solicitation Procedures, then no later than two business days thereafter, the Claims and Noticing Agent shall distribute a Ballot, and a pre-addressed, postage pre-paid envelope to you, which must be returned to the Claims and Noticing Agent no later than the Voting Deadline, which is **May 5, 2015 at 4:00 p.m. (Eastern Prevailing Time)**.

**PLEASE TAKE FURTHER NOTICE THAT** if you have any questions about the status of any of your Claims or Interests, you should contact the Claims and Noticing Agent in accordance with the instructions provided above.

**DUANE MORRIS LLP**

Paul D. Moore, Esq.
100 High Street
Suite 2400
Boston, MA 02110
Telephone:  (857) 488-4200
Facsimile:  (857) 401-3057

*Chapter 11 Trustee*

**BROWN RUDNICK LLP**

William R. Baldiga, Esq.
Kiersten A. Taylor, Esq.
One Financial Center
Boston, MA 02111
Telephone:  (617) 856-8200
Facsimile:  (617) 856-8201

David J. Molton, Esq.
7 Times Square
New York, NY 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801

*Counsel to the Official Committee
of Unsecured Creditors*

Dated:  [_____], 2015

**EXHIBIT 11**

**Plaintiffs' Steering Committee's "Plain English" Disclosure Statement**

**New England Compounding Company Bankruptcy**
**Overview of the First Amended Joint Chapter 11 Plan and Disclosure Statement**

**THIS OVERVIEW IS NOT A SOLICITATION OF**
**ACCEPTANCE OR REJECTION OF A PLAN OF REORGANIZATION**

**This overview is intended solely to provide general information and does not constitute legal advice. You should not take any action based on any information in this overview without first consulting legal counsel familiar with your particular circumstances.**

There is a Chapter 11 bankruptcy case involving the New England Compounding Pharmacy Inc. also known as New England Compounding Company ("NECC"). NECC filed for bankruptcy as a result of claims against the company for production of contaminated products that resulted in death and injuries.

**If you were injured as a result of a NECC contaminated product or lost a loved one, and you have filed a timely proof of claim in the NECC bankruptcy case, you have a right to vote on a plan that governs how your claim may be paid.** That plan is called the Plan of Reorganization (the "Plan"). Those who have potential personal injury claims against NECC and other potentially liable defendants are referred to as having a "Tort Claim."

The Plaintiffs' Steering Committee ("PSC") is providing this summary to give those who have a Tort Claim a general overview of the enclosed materials about the Plan.

NECC was a compounding pharmacy. Compounding pharmacies are licensed to create medications tailored to the specialized needs of an individual patient. Ingredients are combined, mixed, or altered by a pharmacist at the request of a physician.

NECC made over 1,900 types of specialty drugs administered by medical personnel in 49 states, DC, and Puerto Rico. The drugs were administered in clinics, hospitals, doctor's offices, or other medical–related facilities. The Centers for Disease Control ("CDC") found evidence that an outbreak of fungal meningitis and fungal infection was traced to three lots of preservative-free methylprednisolone acetate ("MPA"), a steroid made by NECC, resulting in fungal meningitis, other injuries, and, in some cases, death. The CDC also found contamination in other NECC products, but did not find evidence that contaminated products other than the MPA caused any harm or injury.

**What Debtor is involved in this case?**

The Debtor in the case is NECC. At the time the bankruptcy was filed, Barry Cadden, Lisa Conigliaro Cadden, Carla Conigliaro, and Gregory Conigliaro owned NECC and served as the board of directors.

**What is Chapter 11?**

Chapter 11 of the Bankruptcy Code permits a debtor (bankruptcy filer) to reorganize its business or liquidate (sell) its assets for the benefit of its creditors, interest holders, claimants, and other parties involved. The main objectives of Chapter 11 are to: 1) propose a plan of reorganization (to manage debt) or liquidation (selling off assets to pay debt), 2) have eligible claim holders or investors vote to accept or reject the plan, and, if the court approves the plan, 3) carry out the plan.

**What is a Disclosure Statement?**

You received the Disclosure Statement because you filed a proof of claim in the NECC Chapter 11 case. The Disclosure Statement contains a summary of information about the case, including detailed information about the outbreak and significant events that have occurred and are expected to occur during this Chapter 11 case. It also provides more detail about the Plan, what happens if the Plan is confirmed, and how payments will be made to those with claims against the NECC bankruptcy estate, including those who hold a Tort Claim. In addition, the Disclosure Statement discusses the process to confirm the Plan and the voting procedures that holders of claims and equity interests must follow for their votes to be counted. The Disclosure Statement has been approved by the Court as containing information sufficient for you to decide how to cast your vote on the Plan.

**Are there other companies involved in funding the Plan?**

Yes. There are other involved businesses that have entered into settlement agreements with the Chapter 11 Trustee, who administers the NECC bankruptcy estate. Some of the businesses have agreed to make payments into the bankruptcy estate in exchange for a release of liability, which means they can't be sued after the bankruptcy is finalized. These are:

- Pharmacists Mutual Insurance Company ("PMIC") and Maxum Indemnity Company ("Maxum"). These companies were NECC's insurers.
- Ameridose, LLC ("Ameridose") and its insurer Pharmacists Mutual Insurance Company ("PMIC"). Ameridose is owned and operated by some of the same individuals who own and operated NECC.
- GDC Properties Management ("GDC") and its insurer Preferred Mutual Insurance Company. GDC is a company related to NECC which is owned and operated by some of the same individuals and was NECC's landlord.
- ARL BioPharma Inc. also known as Analytical Research Laboratories ("ARL") and its insurer. ARL is a company which provided laboratory testing of drugs for NECC.
- Victory Mechanical Services, Inc. and various affiliated entities ("Victory") and its insurers. Victory is the company that designed and serviced the ventilation systems used by NECC in the rooms where drugs were compounded.

- UniFirst Corporation ("UniFirst") and its insurers National Union Fire Insurance Company of Pittsburgh, PA and North American Elite Insurance Company. UniFirst was hired by NECC to clean portions of the NECC clean rooms, where the contaminated products were manufactured.
- High Point Surgery Center and various affiliated entities ("High Point") and its insurers Lexington Insurance, Ironshore, and June Assurance. High Point is a health clinic in North Carolina that administered contaminated MPA to some of its patients.
- Inspira Health Network, Inc., and various affiliated entities ("Inspira") and its insurers Lexington Insurance and Ironshore. Inspira is a health clinic in New Jersey that administered contaminated MPA to some of its patients.
- Insight Health Corp. ("Insight"), its insurers Lexington Insurance Company and Darwin Select Insurance Company, and Image Guided Pain Management P.C., two affiliated doctors and their insurers, Medical Mutual Insurance Company of North Carolina. Insight is a health clinic in Virginia that administered MPA to some of its patients.

**The NECC Plan**

The primary purpose of the Plan is to compensate victims who have suffered personal injury and/or death due to contaminated drugs compounded by NECC. All affected people and entities are classified by the type of claim they have against the assets of the NECC bankruptcy estate ("Classes"). Some Classes will receive compensation under the Plan while others likely will not, as summarized in the Disclosure Statement.

The Disclosure Statement includes more detailed information about the Classes and the compensation they are expected to receive.

Each Tort Claimant will receive a beneficial interest in the "Tort Trust" created under the Plan. The primary function of the Tort Trust is to distribute funds to individuals that hold personal injury and/or wrongful death claims against NECC and other participating individuals and entities.

**How is the Tort Trust Funded?**

The Tort Trust will be funded by settlements (the "Settlements") between the Chapter 11 Trustee appointed by the Court and NECC's shareholders, affiliated entities, other companies who have agreed to make payments into the bankruptcy estate in exchange for a release of liability, their insurers, and some clinics and healthcare providers that administered contaminated NECC drugs to their patients.

The Tort Trust will be funded by Settlements with National Defendants as follows:

| National Settling Defendant | Expected Contribution |
|---|---|
| NECC Owners/Shareholder Settlement | $47,750,000 – 75,000,000 |
| PMIC/Maxum Settlement | $25,200,000 |

| | |
|---|---|
| Ameridose Settlement | $10,000,000 |
| GDC Settlement | $3,750,000 |
| ARL Settlement | $6,400,000 |
| Victory Settlement | $5,500,000 |
| UniFirst Settlement | $30,500,00 |
| **Total Amount:** | **$128,600,000 - $155,850,000** |

In addition to the Settlements with National Defendants, the Chapter 11 Trustee has entered into the following Settlements with certain clinics, hospitals and doctor's offices that administered tainted NECC drugs (the "Provider Defendants"):

| **Provider Defendant** | **Contribution** |
|---|---|
| High Point Settlement | $3,500,000 |
| Inspira Settlement | $16,000,000 |
| Insight Settlement | $40,000,000 |
| **Total Amount:** | **$59,500,000** |

These Provider-Specific Funds will principally be distributed to the Tort Claimants who were administered contaminated drugs at High Point, Inspira, and Insight. Some portion of the High Point, Inspira, and Insight settlements will be available generally to pay Chapter 11 claims and expenses.

Under the Plan, in exchange for funding these Settlements, claims against the involved parties will be "released," and any future claims barred as further described in the Plan and Disclosure Statement.

Apart from certain payments which will be made to other non-tort creditors of NECC and for administrative costs as required under applicable bankruptcy law, the Settlement Funds will be placed into the Tort Trust for the benefit of Tort Claimants.

**What is the difference between the National Fund and Provider-Specific Funds?**

- "National Defendants" are the individuals or entities against which every holder of a Tort Claim may have a claim, such as NECC's owners or the company that provided laboratory testing services for NECC products. The National Fund will consist of the money received from the Settlements with National Defendants. All Tort Claimants who qualify for a distribution from the Tort Trust under the Plan will receive a payment from the National Fund.

- A Provider-Specific Fund will consist of the money from a settlement with a particular clinic, hospital or doctor's office that administered contaminated NECC drugs. These funds will be distributed, after deduction of certain expenses, to Tort Claimants who were administered contaminated NECC drugs from the specific settling healthcare provider in question.

4

**Can I receive payments from the National Fund and from a Provider-Specific Fund?**

Yes. If you qualify, you can receive payments from both kinds of Funds. For example, if you are a qualifying Tort Claimant who received qualifying injections from Provider XYZ, you will have a right to a payment from the National Fund as well as from the Provider-Specific Fund from the Settlement with Provider XYZ. However, if you did not receive an injection from Provider XYZ, you may qualify for a payment from the National Fund but not from Provider Fund XYZ.

**If I receive a payment from a Provider-Specific Fund will it affect any payment from the National Fund?**

No. The amount (if any) you may be entitled to receive from a Provider-Specific Fund will not reduce the amount (if any) you are entitled to receive from the National Fund.

**Are there other companies that may be held accountable for my claim?**

Yes. It is possible that other companies will be held financially responsible for paying the Claims of those injured. These could include NECC's vendors, and other pain clinics, hospitals, and doctor's offices that injected the contaminated drugs who have not settled. There is a mediation program (called the MDL Mediation Program) that will continue to work to resolve these Claims if additional settlements are reached.

**What if the clinic or health care provider where I received my NECC product has not settled?**

It is important to note that to date only three clinics, hospitals or doctor's offices who may have administered a contaminated NECC product have settled. If you received an injection from a clinic or health care provider who has not settled, you are still eligible for a payment from the National Fund and any claim you have against your health care provider for administration of the drug, if any, is unaffected by confirmation of the Plan.

**How will the lawyers, financial advisors, and other parties involved in the bankruptcy be paid for their services?**

The Bankruptcy Code sets deadlines for attorneys, financial advisors, and other professionals to file for reimbursement for professional fees and costs associated with their work on the bankruptcy case. It also sets guidelines for allowed services and fees as well as caps on expenses and fees. To date, the following firms have disclosed the current amount of professional fees and expenses as well as their estimated fees and expenses from now until the Plan's effective date.

| Firm | Fees and expenses through January 31, 2015 | Additional anticipated fees and expenses through Plan Effective Date |
|---|---|---|
| Chapter 11 Trustee | Not to exceed 3% of monies in excess of $1,000,000 disbursed or turned over to interested parties | Subject to the 3% cap of monies in excess of $1,000,000 |
| Duane Morris LLP | $3,600,000 | $1,500,000 |
| Mesirow Financial Consulting LLC | $435,000 | $635,000 |
| Brown Rudnick LLP | $3,400,000 | $1,250,000 |
| Perkins Coie, LLP | $100,000 | $0.00 |
| Murtha Cullina LLP | $196,000[1] | $0.00 |
| Verdolino & Lowey P.C. | $131,000 | $0.00 |

**How will funds be distributed?**

The Plan establishes a "Claims Resolution Facility" to determine payments for Tort Claimants from the National Fund. A "Settlement Administrator" will administer the Claims Resolution Facility. Using Court-approved procedures, the National Settlement Administrator will evaluate the information provided by Tort Claimants to determine what distribution, if any, each Tort Claimant is entitled to from the National Fund. An "Appeals Administrator" will address any appeals of the National Settlement Administrator's decisions. The Provider-Specific Funds will be distributed using a similar process specific to each Provider-Specific Fund.

**How will the National Settlement Administrator calculate payment amounts from the National Settlement Fund?**

The Settlement Administrator will use a "Settlement Matrix" consisting of seven "Base Point Categories" to calculate the value of claims for payment from the National Fund. The chart below summarizes these categories. More detail is available in the Claims Resolution Facility Procedures, which is part of the supplement to the Plan and is available at www.donlinrecano.com/necp.

| Category | Description | Base Points |
|---|---|---|
| Category 1 | Death after MPA Injection *and* (1) Spinal or Paraspinal Fungal Infection[2] and/or (2) Fungal Meningitis | 55 |
| Category 2 | Non-Death Fungal Meningitis *and* Spinal or Paraspinal Fungal Infection after MPA Injection | 40 |

---

[1] Murtha Cullina LLP currently holds a retainer in the amount of $127,173.88.

[2] Including vertebral osteomyelitis, discitis, sacroiliitis, phlegmon, abscess and/or arachnoiditis.

6

| Category 3 | Non-Death Fungal Meningitis after MPA Injection | 30 |
|---|---|---|
| Category 4 | Non-Death Spinal *or* Paraspinal Fungal Injection after MPA Injection | 20 |
| Category 5 | Peripheral Joint Fungal Infection[3] after MPA Injection | 10 |
| Category 6 | Symptoms of Headache, Word-Finding Difficulty, Nausea/Vomiting, Fever, Neck Stiffness or Pain, Back Pain, Photophobia, Lack of Appetite, Urine Retention, Slurred Speech, Limb Weakness, Numbness and/or Pain at Injection Site *and* a Lumbar Puncture, MRI or CT Guided Biopsy after MPA Injection | 1 |
| Category 7 | No Symptoms or No Lumbar Puncture, MRI, or CT Guided Biopsy after MPA Injection | ½ |

Each Tort Claimant's injury is assigned a minimum point score from the chart above. There are also a number of adjustments that can increase the compensation of the first six categories based on an individual Tort Claimant's circumstances (such as length of hospitalization, length of antifungal treatment, etc.). All of the upward adjustments available in these categories are efforts at providing more compensation for the more serious cases in a particular category.

The payment amount will be based on that Tort Claim's point total. To calculate the amount of each Tort Claimant's payment, a dollar value will be assigned to each point. The exact dollar value of each point cannot be determined until all costs of administering the Tort Trust are known and all Tort Claims have been reviewed and decided by the Settlement Administrator and all appeals of the Settlement Administrator's determination have been decided. Recognizing the need to make payments to Tort Claimants as quickly as possible, the claims procedures provide for both an initial and a final payment to Tort Claimants.

The Settlement Matrix was created with assistance and advice from doctors. Because funds are limited, the Tort Trust must balance the need to compensate Tort Claimants with distinctly different claims, while minimizing the administrative expenses of reviewing and approving claims.

The first five categories of the Settlement Matrix are based on the five categories of conditions/illnesses defined by the CDC. Two additional categories were added to those defined by the CDC to compensate those who received a contaminated drug but were not officially diagnosed with a resulting illness. The final two categories are expected to have the largest number of Claims. A Tort Claimant may apply only for one of the seven

---

[3] *E.g.*, hip, knee, shoulder, elbow and/or ankle.

7

Base Point Categories.

### What is the process for applying for payment?

To receive compensation from the Trust, Tort Claimants must submit a completed and signed Compensation Claim Form applying for one of the Seven Base Point Categories (and any applicable upward adjustments) with all necessary supporting documentation.

The Settlement Administrator will review the claims to determine if they are valid or not. Then the Settlement Administrator will calculate the total points claimed for all valid claims and assign a tentative dollar value of each point, based on the universe of claims and an agreed upon formula. This formula is described in detail in the Claims Resolution Facility Procedures available at www.donlinrecano.com/necp.

If your claim is approved, (and if other conditions are satisfied), you or your attorney if you have retained one, will receive an Initial Payment based on the tentative point value. If your claim is denied in full or in part you will have an opportunity to have the Settlement Administrator revaluate your claim.

### Can I appeal if my Claim is denied or I disagree with the number of points assigned?

Yes. First, you may request that the Claims Administrator reevaluate your Claim. If after such reevaluation your Claim is finally denied in full or in part by the Settlement Administrator, you will have the right to appeal the denial in writing to a neutral Appeals Administrator within 30 days. The Appeals Administrator will review your Claim and make a final decision on its validity and/or the number of approved points. The Appeals Administrator must follow the Settlement Matrix when awarding points and will inform you and the Settlement Administrator of the final decision about your Claim. This decision will be final and binding. The appeal process is described in detail in the Claims Resolution Facility Procedures.

### How and when will the final payment amounts be calculated?

The Settlement Administrator will calculate the final dollar amount of each point after all Tort Claimant appeals are resolved and after any appeals of the order confirming the Plan, if any, are finally resolved. The Settlement Administrator will then determine the final compensation amount for each approved claim by multiplying the approved points by the final point value. If your final point value is greater than your initial payment the Settlement Administrator will send you an additional check for the difference.

### How will the voting process to approve the Plan work?

Some Classes may not receive compensation or may receive less than the full value of their Claim. Tort Claimants and Classes who may receive a payment of less than their full Claim value will receive a ballot to vote (Classes C, D, and E). Classes that will receive payment in full for their Claims (Classes A and B) are assumed to accept the Plan

and will not receive a ballot. Those who own stock in NECC (Class F) are deemed to have accepted the Plan and will not receive a ballot. The Disclosure Statement provides more information on voting rights.

**When must my ballot be received?**

To be counted, the ballot indicating your acceptance or rejection of the Plan must be received by Donlin, Recano & Company, Inc., the appointed voting agent, no later than **4:00 p.m. eastern time, on May 5, 2015**. If you are eligible to vote, a ballot to vote to accept or reject the Plan is included in your packet. If you did not receive a ballot but believe you should have or have any questions about how to submit your vote, call (212) 771-1128 or email balloting@donlinrencano.com.

**What happens if I am a Tort Claimant and I don't file a ballot on time?**

If your ballot is not submitted and received by **May 5, 2015**, and you filed a timely Claim Form with the Settlement Administrator, you will still be entitled to receive the compensation you are entitled to under the Plan. You will also be bound by the terms of any Plan of Reorganization approved by the Court. In addition, your claims against NECC and the other settling parties will be released.

**What if I don't like the Plan? / Can I object to the Plan?**

Yes. If you object to the Plan, you must file your objection by mail or courier on or before **May 5, 2015**. Your objection must be filed on time and must follow the guidelines set in the Bankruptcy Court order approving the Disclosure Statement or it may not be considered by the Bankruptcy Court.

**The Confirmation Hearing**

The Bankruptcy Court will hold a confirmation hearing at **May 19, 2015 at 10:00 a.m.** at the United States Courthouse, 300 State Street, Berkshire Courtroom, Third Floor, Springfield, MA. Judge Henry J. Boroff will oversee the hearing. The Court may adjourn the hearing from time to time without notice except for an announcement of the adjourned date at the hearing or any adjournment of the hearing.

**What happens if the Plan is confirmed?**

If the Plan is confirmed, all claims, including those of Tort Claimants, against NECC and the other settling parties related to NECC's products will be "released," and individuals will be forever barred from pursuing those claims in Court. If the clinic, hospital or doctor's office that administered your injection has reached a settlement and a Provider-Specific Fund has been created, then confirmation of the Plan will also release your claim against that clinic or health care provider.

9

Tort Claimants who received an injection from a clinic, hospital or doctor's office who has not settled are eligible to receive funds from the National Fund and claims they may have against their clinic, hospital or doctor's office for administration of the drug, if any, will NOT be released as a result of confirmation of the Plan and therefore those claims may be pursued.

**Have the owners of NECC faced criminal charges?**

Yes.  On December 16, 2014, after the Bankruptcy Court approved the NECC Owners/Shareholders Settlement, a federal grand jury in the District of Massachusetts indicted 14 individuals connected with NECC on 131 counts.  Barry J. Cadden, Gregory A. Conigliaro and Carla R. Conigliaro, each a former NECC employee, director or shareholder, were among the individuals indicted.  The primary counts in the indictment charged certain of the indicted individuals with racketeering and conspiracy to defraud the United States.

The indictment also alleges that Carla Conigliaro and Douglas Conigliaro violated court orders which dictated that they could not transfer any assets without the permission of the court.  On December 19, 2014, the U.S. Justice Department seized assets held by Carla and Douglas Conigliaro and Barry J. Cadden and his wife Lisa Cadden.  The U.S. Justice Department alleges these funds were subject to forfeiture and allege that Carla and Douglas Conigliaro transferred assets out of certain accounts in violation of a court order.  The Chapter 11 Trustee investigated these claims in order to ensure that none of the funds identified in the indictment and seizure proceedings were undisclosed to the Trustee and others at the time of the negotiation of the NECC Owners/Shareholders Settlement Agreement.  After thorough review it was determined that these accounts and the funds in them were disclosed to the Trustee at the time that settlement agreement was negotiated and before the assets were seized.  Additionally, the seizure of these assets was made after the NECC shareholders paid the full amount of their initial cash contributions under the NECC Owners/Shareholders Settlement Agreement.  The seizure of these accounts will therefore not impact or interfere with the funding of the Settlement.

**How do I get more information?**

This information is only a summary.  It is not intended as a substitute for the Plan, Disclosure Statement, Tort Trust Agreement Claims Resolution Facility Procedures and the other supporting documents that accompany the Plan.  All Tort Claimants should read the Plan, the Disclosure Statement, the Tort Trust Agreement, the Claims Resolution Facility Procedures and other accompanying documents in their entirety.  You should speak to your own lawyer or other advisor to the extent that you wish to do so.