**EXHIBIT A**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>NEW ENGLAND COMPOUNDING PHARMACY, INC.,<br><br>Debtor. | Chapter 11<br><br>Case No. 12-19882-HJB |

**NOTICE OF ORDER (I) APPROVING THE ADEQUACY OF THE AMENDED JOINT DISCLOSURE STATEMENT; (II) APPROVING SOLICITATION AND NOTICE PROCEDURES WITH RESPECT TO CONFIRMATION OF THE PLAN PROPONENTS' FIRST AMENDED JOINT PLAN OF REORGANIZATION; (III) APPROVING THE FORM OF VARIOUS BALLOTS AND NOTICES IN CONNECTION THEREWITH; (IV) SCHEDULING CERTAIN DATES WITH RESPECT THERETO; AND (V) GRANTING RELATED RELIEF**

**TO ALL HOLDERS OF CLAIMS AND INTERESTS AND PARTIES IN INTEREST:**

1. **Court Approval of the Disclosure Statement and the Solicitation Procedures.** On March 3, 2015, the United States Bankruptcy Court for the District of Massachusetts (the "Court") entered the *Order (I) Approving the Adequacy of the Amended Joint Disclosure Statement; (II)Approving Solicitation and Notice Procedures With Respect to Confirmation of the Plan Proponents' First Amended Joint Plan of Reorganization; (III) Approving the Form of Various Ballots and Notices in Connection Therewith;(IV) Scheduling Certain Dates With Respect Thereto; and (V) Granting Related Relief* [Docket No. 1181] (the "Disclosure Statement Order") that, among other things: (a) approved the adequacy of the *Disclosure Statement for First Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc.* [Docket No. 1155] (as amended and including all exhibits and supplements thereto, the "Disclosure Statement") filed in support of the *First Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc.* [Docket No. 1154] (as amended and including all exhibits thereto, the "Plan"); and (b) authorized the Plan Proponents to solicit acceptances or rejections of the Plan from holders of Impaired Claims who are (or may be) entitled to receive distributions under the Plan.[1]

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable. Copies of the Plan, the Disclosure Statement, and the Disclosure Statement Order may be obtained from Donlin, Recano & Co., Inc., the Debtor's Claims and Noticing Agent at the address and in the manner provided below.

2. **Voting Record Date.** March 6, 2015 is the Voting Record Date for purposes of determining (a) which holders of Claims are entitled to vote on the Plan and (b) whether Claims have been properly transferred to an assignee pursuant to Bankruptcy Rule 3001(e) such that the applicable assignee can vote as the holder of the Claim.

3. **Voting Deadline.** If you held a Claim against the Debtor as of the Voting Record Date and are entitled to vote on the Plan, you have received a Ballot and voting instructions appropriate for your Claim(s) or Interest(s).  For your vote to be counted in connection with Confirmation of the Plan, you must follow the appropriate voting instructions, complete all required information on the Ballot, and execute and return the completed Ballot so that it is **actually received** in accordance with the voting instructions by May 5, 2015 at 4:00 p.m. (Eastern Prevailing Time) (the "Voting Deadline").  Any failure to follow the voting instructions included with the Ballot may disqualify your Ballot and your vote on the Plan.

4. **Objections to the Plan.**  The Court has established May 5, 2015 as the deadline for filing and serving objections to the Confirmation of the Plan (the "Plan Objection Deadline").  Any objection to the Plan must: (a) be in writing; (b) conform to the Bankruptcy Rules and the Local Rules; (c) state the name and address of the objecting party and the amount and nature of the Claim; (d) state with particularity the basis and nature of any objection to the Plan; (e) propose a modification to the Plan that would resolve such objection (if applicable); and (f) be filed, contemporaneously with a proof of service, with the Court and served so that it is actually received by each of the following notice parties by the Plan Objection Deadline:

| *Chapter 11 Trustee* ||
|---|---|
| Paul D. Moore<br>**DUANE MORRIS LLP**<br>100 High Street<br>Suite 2400<br>Boston, MA 02110-1724 ||
| *Co-Counsel to the Chapter 11 Trustee* ||
| **DUANE MORRIS LLP**<br>Michael R. Lastowski<br>222 Delaware Avenue<br>Suite 1600<br>Wilmington, DE 19801-1659 | **HARRIS BEACH PLC**<br>Frederick H. Fern<br>100 Wall Street<br>New York, NY 10005 |
| *Counsel to the Committee* ||
| **BROWN RUDNICK LLP**<br>William R. Baldiga<br>Kiersten A. Taylor<br>One Financial Center<br>Boston, MA 02111 | **BROWN RUDNICK LLP**<br>David J. Molton<br>7 Times Square<br>New York, NY 10036 |
| *U.S. Trustee* ||
| John Fitzgerald<br>Office of the US Trustee<br>J.W. McCormack Post Office & Courthouse<br>5 Post Office Sq., 10th Fl, Suite 1000<br>Boston, MA 02109 ||

5. **Confirmation Hearing**. A hearing to confirm the Plan (the "Confirmation Hearing") will commence on **May 19, 2015 at 10:00 a.m. (Eastern Prevailing Time)** before the Honorable Henry J. Boroff, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Massachusetts, 300 State Street, Berkshire Courtroom, Third Floor, Springfield, Massachusetts 01105-2925. Please be advised that the Confirmation Hearing may be continued from time to time by the Court or the Plan Proponents without further notice other than by such adjournment being announced in open court or by a notice of adjournment being filed with the Court and served on parties entitled to notice under Bankruptcy Rule 2002 and the Local Rules or otherwise. In accordance with the Plan, the Plan may be modified, if necessary, prior to, during, or as a result of the Confirmation Hearing without further action by the Plan Proponents and without further notice to or action, order, or approval of the Court or any other entity.

6. **Solicitation Packages. The Solicitation Package (except the Ballots) may be obtained at no charge from Donlin, Recano & Co., Inc., the claims and noticing agent retained in the Chapter 11 Cases (the "Claims and Noticing Agent") by: (a) accessing the following website: http://www.drcdrx.com/cases/caseinfo/necp; (b) writing to the Claims and Noticing Agent by First Class Mail at P.O. Box 2034, Murray Hill Station, New York, NY 10156-0701, Re: New England Compounding Pharmacy, Inc., Attn: Voting Department; (c) writing to the Claims and Noticing Agent by Hand Delivery or Overnight Mail at 6201 15th Ave, Brooklyn, NY 11219, Re: New England Compounding Pharmacy, Inc., Attn: Voting Department; or (d) calling the Claims and Noticing Agent at (212) 771-1128. The Claims and Noticing Agent will answer questions regarding the procedures and requirements for voting to accept or reject the Plan and for objecting to the Plan, provide additional copies of all materials, and oversee the voting tabulation.**

7. **Temporary Allowance of Claims and Interests for Voting Purposes.** Holders of Claims that are subject, at least seven days prior to the Voting Deadline, to a pending objection by the Debtor as of the Voting Record Date cannot vote on the Plan; provided, however, that if the Debtor objects to only a portion of a Claim, such Claim may be voted in the undisputed amount. Moreover, a holder of a disputed Claim cannot vote any disputed portion of its Claim unless one or more of the following events (each, a "Resolution Event") has taken place by April 30, 2015, a date three business days before the Voting Deadline:

   a) an order of the Court is entered allowing such Claim pursuant to section 502(b) of the Bankruptcy Code, after notice and a hearing;

   b) an order of the Court is entered temporarily allowing such Claim for voting purposes only pursuant to Bankruptcy Rule 3018(a), after notice and a hearing;

   c) a stipulation or other agreement is executed between the holder of such Claim and the Debtor resolving the objection and allowing such Claim in an agreed upon amount;

3

    d)    a stipulation or other agreement is executed between the holder of such Claim and the Debtor temporarily allowing the holder of such Claim to vote its Claim in an agreed upon amount; or

    e)    the pending objection to such Claim is voluntarily withdrawn by the objecting party.

No later than two (2) business days after a Resolution Event, the Claims and Noticing Agent shall distribute a Solicitation Package and a pre-addressed, postage pre-paid envelope to the relevant holder of such temporarily Allowed Claim that has been Allowed for voting purposes only (or for other purposes as set forth in an applicable order of the Court) by such Resolution Event, which must be returned according to the instructions on the Ballot by no later than the Voting Deadline.

If the holder of a Claim receives a Solicitation Package and the Claim is objected to on a date that is <u>less than</u> seven calendar days before the Voting Deadline, the holder's Claim shall be deemed temporarily allowed for voting purposes without further action by the holder of such Claim and without further order of the Court.

8. **Release, Exculpation, and Injunction Language in the Plan.** Please be advised that Article X of the Plan contains the following release, exculpation and injunction provisions for the benefit of the Debtor, the Estate Representative(s) and certain third parties, including, but not limited to, certain insiders of NECC and the third parties more particularly described in Schedules 1.121 and 1.167 to the plan:

**Releases**

**(i)** <u>**Releases by the Debtor and Estate Representative(s)**</u>**. Except as set forth in Section 10.05(i) of this Plan, and subject in all respects to the provisions of Section 10.04 of this Plan**, **on the Effective Date, the Debtor, the Chapter 11 Trustee, the Estate Representative(s) and the Estate shall unconditionally release, and hereby are deemed to forever unconditionally release, the Shareholder and Affiliate Released Parties, the Other Contributing Parties, including, without limitation, GDC, the Individual GDC Insureds and Preferred Mutual, and the Tort Claimants from any and all Claims, debts, obligations, demands, liabilities, suits, judgments, damages, rights and Estate Causes of Action, whatsoever (other than the right to enforce the obligations under this Plan, the Settlement Agreements and the contracts, instruments, releases and other agreements and documents delivered thereunder), whether direct or indirect, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part upon any act or omission, transaction, transfer event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor or to the Debtor's products, including, without limitation, the Drugs, the Chapter 11 Case, this Plan, the Disclosure Statement, the Debtor's estate, the Policies, GDC, and the negotiation or funding of the Settlement Agreements.**

4

**(ii)     Releases in Favor of the Debtor and Estate Representative(s).**  Subject in all respects to the provisions of Section 10.04 of this Plan, on the Effective Date, each of the Debtor, the Chapter 11 Trustee, the Estate Representative(s), and the Estate shall be forever and unconditionally released from any and all Claims, debts, obligations, demands, liabilities, suits, judgments, damages, rights and causes of action, whatsoever by all Entities (other than the right to enforce the obligations under this Plan, the Settlement Agreements and the contracts, instruments, releases and other agreements and documents delivered thereunder), whether direct or indirect, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part upon any act or omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor or to the Debtor's products, including, without limitation, the Drugs, the Chapter 11 Case, this Plan, the Disclosure Statement, any prepetition act or omission of the Debtor, the Debtor's estate, the Policies, GDC and the negotiation or funding of the Settlement Agreements.

**(iii)     Releases by Shareholder and Affiliate Released Parties.**  Subject in all respects to the provisions of Section 10.04 of this Plan and the Shareholder Settlement Agreement, on the Effective Date, each of the Shareholder and Affiliate Released Parties shall unconditionally release, and hereby are deemed to forever unconditionally release, each of the Debtor, the Debtor's estate, the Chapter 11 Trustee, the Estate Representative(s), the Official Committee, the Official Committee members, the Tort Claimants, the Other Contributing Parties, including, without limitation, GDC, the Individual GDC Insureds, Preferred Mutual, and the foregoing persons' and entities' respective attorneys and advisors (solely in their respective capacities as such) from any and all Claims, debts, obligations, demands, liabilities, suits, judgments, damages, rights, and causes of action, whatsoever, whether direct or indirect, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part upon any act or omission, transaction, transfer, event, or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor or to the Debtor's products, including, without limitation, the Drugs, the Chapter 11 Case, this Plan, the Disclosure Statement, the Debtor's estate, the Policies, GDC and the negotiation or funding of the Settlement Agreements; **provided**, **however**, that this release shall not apply to any Claims assigned by the Shareholder and Affiliate Released Parties to the Debtor or to the Chapter 11 Trustee pursuant to a Settlement Agreement, nor shall it apply to the right to enforce the obligations under the Plan, the Settlement Agreements, and the contracts, instruments, releases and other agreements and documents delivered thereunder.

**(iv)     Releases in Favor of Shareholder and Affiliate Released Parties (Other than Ameridose).**  Subject in all respects to the provisions of Section 10.04 of this Plan, on the Effective Date, the Shareholder and Affiliate Released Parties (other than Ameridose), as well as their respective attorneys and advisors (solely in their respective capacities as such), shall be forever and unconditionally released from any and all Tort Claims, Estate Causes of Action, Contributor and Affiliate Released

5

**Claims, and all other Claims, debts, obligations, demands, liabilities, suits, judgments, damages, rights and causes of action, whatsoever by all Entities, whether direct or indirect, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part upon any act or omission, transaction, transfer, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor or to the Debtor's products, including, without limitation, the Drugs, the Chapter 11 Case, this Plan, the Disclosure Statement, the Debtor's estate, the Policies, GDC and the negotiation or funding of the Settlement Agreements; provided, however, that the right to enforce the obligations under the Shareholder Settlement Agreement, the Shareholder Escrow Agreement and this Plan and the contracts, instruments, releases and other agreements and documents delivered thereunder, and the right to enforce the provisions of the Shareholder Settlement Agreement with regard to "Non-Disclosed Assets" (as defined therein), shall be expressly preserved by the Estate Representative in accordance with the terms of the Shareholder Settlement Agreement.**

**(v)    Releases by Other Contributing Parties.  Except as to the rights and claims expressly preserved by the Settlement Agreements, and subject in all respects to the provisions of Section 10.04 of this Plan, on the Effective Date, each Other Contributing Party including, without limitation, GDC, the Individual GDC Insureds and Preferred Mutual,  shall unconditionally release, and hereby are deemed to forever unconditionally release, each of the Debtor, the Debtor's estate, the Chapter 11 Trustee, the Estate Representative(s), the Official Committee, the Official Committee members, the Tort Claimants, the Shareholder and Affiliate Released Parties, each additional Other Contributing Party, and the foregoing persons' and entities' respective attorneys and advisors (solely in their respective capacities as such) from any and all Claims, debts, obligations, demands, liabilities, suits, judgments, damages, rights, and causes of action, whatsoever, whether direct or indirect, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part upon any act or omission, transaction, event, or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor or to the Debtor's products, including, without limitation, the Drugs, the Chapter 11 Case, this Plan, the Disclosure Statement, the Debtor's estate, the Policies, GDC, and the negotiation or funding of the Settlement Agreements; provided, however, that this release shall not apply to any Claims assigned by the Other Contributing Parties to the Debtor pursuant to a Settlement Agreement, nor shall it apply to the right to enforce the obligations under the Plan, the Settlement Agreements, and the contracts, instruments, releases and other agreements and documents delivered thereunder in their favor.**

**(vi)    Releases in Favor of Other Contributing Parties (Other than Ameridose).  Except as to the rights and claims expressly preserved by the Settlement Agreements, and subject in all respects to the provisions of Section 10.04 of this Plan, on the Effective Date, each Other Contributing Party (other than Ameridose), including, without limitation, GDC, the Individual GDC Insureds and Preferred Mutual, shall**

6

be forever and unconditionally released from any and all Estate Causes of Action, Tort Claims, NECC Claims, and all other Claims, debts, obligations, demands, liabilities, suits, judgments, damages, rights and causes of action, whatsoever by all Entities, whether direct or indirect, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part upon any act or omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor or to the Debtor's products, including, without limitation, the Drugs, the Chapter 11 Case, this Plan, the Disclosure Statement, the Debtor's estate, the Policies, GDC and the negotiation or funding of the Settlement Agreements; provided, however, that this release shall not in any way limit the right of the Estate Representative to enforce the obligations under the Plan, the Settlement Agreements, and the contracts, instruments, releases and other agreements and documents delivered thereunder in the Estate's favor.

(vii)    **Releases by Tort Claimants**.  Subject in all respects to the provisions of Section 10.04 of this Plan, on the Effective Date, each Tort Claimant shall unconditionally release, and hereby is deemed to forever unconditionally release each of the Debtor, the Debtor's estate, the Chapter 11 Trustee, the Estate Representative(s), the Official Committee, the Official Committee members, the Other Contributing Parties (other than Ameridose), including, without limitation, GDC, the Individual GDC Insureds and Preferred Mutual, the Shareholder and Affiliate Released Parties (other than Ameridose), all parties released under the Settlement Agreements, and the foregoing persons' and entities' respective attorneys and advisors (solely in their capacities as such) from the Tort Claims, the NECC Claims, the Contributor and Affiliate Released Claims, and any and all claims, debts, obligations, demands, liabilities, suits, judgments, damages, rights and causes of action, whatsoever, whether direct or indirect, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part upon any act or omission, transaction, event, or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor or to the Debtor's products, including, without limitation, the Drugs, the Chapter 11 Case, this Plan, the Disclosure Statement, the Debtor's estate, the Policies, GDC and the negotiation of the Settlement Agreements; provided, however, that this release shall not apply to the right to enforce the obligations under the Plan, the Settlement Agreement, and the contracts, instruments, releases and other agreements and documents delivered thereunder in their favor.

**Injunctions**

(i)    **Injunction in Favor of the Debtor and Estate Representative(s)**.  Except as to the rights and claims created or expressly preserved by this Plan, the Settlement Agreements, the Shareholder Escrow Agreement, and the Confirmation Order, upon the Effective Date, the Debtor, the Chapter 11 Trustee, and the Estate Representative(s) shall have and be entitled to an injunction forever barring and enjoining all Persons and/or Entities from asserting against the Debtor any past,

**present and future rights, interests, obligations, claims, causes of action, damages (including punitive damages), demands (including demands for contribution, indemnity or otherwise), liabilities, expenses, fees (including, but not limited to, attorneys' fees, expert fees, consulting fees and other professional fees) and costs of any kind or any type whatsoever, whether known or unknown, whether foreseen or unforeseen, whether direct or indirect, contingent or actual, whether liquidated or unliquidated, whether statutory or common law, whether asserted or unasserted and whether based on contract, negligence, bad faith, willful, wanton or malicious conduct, or any other theory in law or equity concerning, arising from or relating to any actual or alleged past, present or future act, omission, defect, incident, event or circumstance from the beginning of the world to the Effective Date, in any way relating to or in connection with (i) the Debtor, the Drugs or any and all products of and/or distributed by the Debtor, or (ii) the Debtor's estate, the Chapter 11 Case, this Plan, the Disclosure Statement, the Settlement Agreements and/or the Policies, except with regard to any claims and rights expressly reserved pursuant to Section 10.05 above.**

**(ii)      Injunction in Favor of Shareholder and Affiliate Released Parties.  Upon the Effective Date, all Persons or Entities shall be permanently barred, enjoined, and restrained from commencing, prosecuting, continuing or asserting, either derivatively or on behalf of themselves, in any court, arbitration proceeding, administrative agency, or other forum in the United States of America or elsewhere, any and all Claims released pursuant to Section 10.05 above or under the Shareholder Settlement Agreement, whether the Person or Entity had actual or constructive notice of the terms of the Shareholder Settlement Agreement, Plan or Confirmation Order or otherwise, except that this injunction shall not apply to the right of the acting Estate Representative to enforce the Substitute Lien and the obligations and the acting Estate Representative's rights under the Shareholder Settlement Agreement, the Escrow Agreement, the Plan, and the Confirmation Order.**

**(iv)      Injunction in Favor of the Other Contributing Parties.  Except as to the rights and claims created or expressly preserved by this Plan, the Settlement Agreements, the Escrow Agreement and the Confirmation Order, upon the Effective Date, the Other Contributing Parties, including, without limitation, GDC, the Individual GDC Insureds and Preferred Mutual, shall have and be entitled to an injunction forever barring and enjoining all Persons and/or Entities from asserting against the Other Contributing Parties any past, present and future rights, interests, obligations, claims, causes of action, damages (including punitive damages), demands (including demands for contribution, indemnity or otherwise), liabilities, expenses, fees (including, but not limited to, attorneys' fees, expert fees, consulting fees and other professional fees) and costs of any kind or any type whatsoever, whether known or unknown, whether foreseen or unforeseen, whether contingent or actual, whether direct or indirect, liquidated or unliquidated, whether statutory or common law, whether asserted or unasserted and whether based on contract, negligence, bad faith, willful, wanton or malicious conduct, or any other theory in law or equity concerning, arising from or relating to any actual or alleged past, present or future act, omission, defect, incident, event or circumstance from the beginning of the world to the**

**Effective Date, in any way relating to or in connection with (i) the Debtor, the Drugs or any and all products of and/or distributed by the Debtor, or (ii) the Debtor's estate, the Chapter 11 Case, the Plan, the Disclosure Statement, the Settlement Agreements and/or the Policies**.

*(Remainder of Page Intentionally Left Blank)*

9

**YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

| **DUANE MORRIS LLP** | **BROWN RUDNICK LLP** |
|---|---|
| Paul D. Moore, Esq.<br>100 High Street<br>Suite 2400<br>Boston, MA 02110<br>Telephone: (857) 488-4200<br>Facsimile: (857) 401-3057 | William R. Baldiga, Esq.<br>Kiersten A. Taylor, Esq.<br>One Financial Center<br>Boston, MA 02111<br>Telephone: (617) 856-8200<br>Facsimile: (617) 856-8201 |
| *Chapter 11 Trustee* | David J. Molton, Esq.<br>7 Times Square<br>New York, NY 10036<br>Telephone: (212) 209-4800<br>Facsimile: (212) 209-4801<br><br>*Counsel to the Official Committee<br>of Unsecured Creditors* |

Dated: March 3, 2015