UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | MDL No. 2419<br>Master Docket No.: 1:13-md-2419-RWZ |
| THIS DOCUMENT RELATES TO:<br>All Actions | Honorable Rya W.  Zobel |

**PLAINTIFFS' STEERING COMMITTEE'S MEMORANDUM IN SUPPORT OF
MOTION FOR ENTRY OF CASE MANAGEMENT ORDER SETTING SELECTED
<u>CASES FOR EXPEDITED TRIAL</u>**

## TABLE OF CONTENTS

I.   INTRODUCTION .................................................................................................. 3

II.  PROCEDURAL AND FACTUAL BACKGROUND ................................................. 4

   A.  Early scheduling orders contemplated trials in the Summer of 2014. ................. 4

   B.  In mid-2013, the Court stayed discovery against mediating defendants. ............. 5

   C.  By January 2014, over eighty cases named the St. Thomas clinic and St. Thomas entities as defendants. ...................................................................................... 6

   D.  In August 2014, the Court denied the St. Thomas defendants' motions to dismiss and discovery began in earnest. ..................................................................... 6

   E.  All but one National Defendant are participating in the NECC bankruptcy Plan. ................................................................................................................. 7

   F.  Current case counts show more civil actions against the St. Thomas entities than any other Clinic Related Defendant. ............................................................ 8

III. PLAINTIFFS PROPOSE A SINGLE EXPEDITED DECEMBER 2015 TRIAL OF SIX CIVIL ACTIONS NAMING THE ST. THOMAS ENTITIES AS DEFENDANTS .................................................................................................. 9

   A.  An expedited trial will aid the resolution of this MDL. .................................... 9

   B.  The Court should expedite a trial against the St. Thomas entities. .................... 13

IV.  PLAINTIFFS' PROPOSED EXPEDITED TRIAL CASES AND SCHEDULE ...... 14

   A.  Diane Reed .................................................................................................. 16

   B.  Thomas Rybinski ........................................................................................ 16

   C.  Major Adam Ziegler .................................................................................... 17

   D.  BJ McElwee ................................................................................................ 17

   E.  Jane Wray ................................................................................................... 18

   F.  Ann Sullivan ............................................................................................... 18

V.   CONCLUSION ................................................................................................... 19

# I.      INTRODUCTION

This case arises from a national health tragedy caused by tainted compounded pharmaceuticals made by the New England Compounding Pharmacy d/b/a the New England Compounding Clinic ("NECC").  According to the Center for Disease Control (the "CDC") as a result of these contaminated pharmaceuticals at least 751 cases of confirmed meningitis or other infection cases were reported and 64 victims have died.[1]

As of today, almost two-and-a-half years after doctors injected contaminated MPA into patients' spines, not one victim has had his or her day in court.  Not one of the thousand plus patients who were injected.  Not one of the hundreds of victims who developed fungal infections.  Not one family member of the scores of victims who died.  No jury has heard about, let alone deliberated on, the liability of those who contributed to this tragedy.

The time has come to mark up cases for trial.

The Plaintiffs' Steering Committee ("PSC") hereby files this Memorandum in Support of its Motion for Entry of Case Management Order Setting Selected Cases for Expedited Trial (the "Motion").  The Motion requests that the Court enter a case management order setting a schedule for a single trial of six (6) civil actions against the Saint Thomas Outpatient Neurosurgical Center, Dr. John Culclasure, Debra Schamberg, R.N., Saint Thomas Health, Saint Thomas Network, and Saint Thomas Hospital West f/k/a Saint Thomas Hospital (collectively the "Saint Thomas Defendants") beginning on December 4, 2015.[2]  These six cases are emblematic of the types of injuries that form the

---

[1] The Court has already entered a detailed account on the factual background of this case, and as a result the PSC will limit its account of the facts to those providing context for the requested relief.  *See e.g.*, *In re New England Compounding Pharm., Inc. Prods. Liability Litig.*, 496 B.R. 256, 260-3 (D. Mass. 2013).

[2] Currently the only other defendants named in these suits are certain Affiliated Defendants, ARL Bio Pharma, Inc., and Unifirst Corp. a/d/b/a Uniclean Cleanroom Services.  All of these remaining defendants have entered into settlement agreements in connection with the Proposed Amended Plan of Reorganization in the NECC Bankruptcy

core of this MDL: fungal infections caused by contaminated MPA.  The evidence adduced during discovery and trial will aid the resolution of all cases in the MDL, with a particular import for the other approximately 80 cases currently pending against the St. Thomas Defendants in the MDL.

## II.    PROCEDURAL AND FACTUAL BACKGROUND

### A.  Early scheduling orders contemplated trials in the Summer of 2014.

On October 16, 2012 certain plaintiffs filed a motion with the Joint Panel on Multidistrict Litigation (the "JPML") to consolidate all federal cases for pretrial purposes. On February 12, 2013, the JPML granted the motions and consolidated all related federal actions across the county in the United States District Court for the District of Massachusetts.[3]  The cases pending in this MDL named principally three types of defendants: 1) NECC and its employees, owners, directors, managers, and affiliated companies ( "Affiliated Defendants"); 2) vendors that provided services to NECC ("National Defendants") and 3) the clinics/hospitals and their employees, physicians, nurses, staff, and affiliated companies that injected their patients with tainted NECC pharmaceuticals ("Clinic Related Defendants").

While the petition was pending at the JPML, Judge Boal, through a referral from Judge Saylor, granted plaintiffs the right to inspect NECC facility and allowed plaintiffs to conduct a detailed inspection on December 18-21, 2012.  On the last day of this inspection, NECC filed its Chapter 11 bankruptcy petition.[4]

On April 9, 2013, Judge Saylor appointed Thomas M. Sobol and Kristen A. Johnson

---

case.  Liberty Industries, Inc., who has not entered into a settlement agreement, is not a named defendant in the proposed trial cases.
[3] MDL 2419 Dkt. No. 118.
[4] *See* Case No. 12-cv-12052, Dkt. No. 126.

as lead counsel and established the PSC in this MDL.[5]  On Jun 28, 2013, Judge Saylor

formally opened discovery against the National Defendants and the Clinic Related

Defendants while staying discovery against the Affiliated Defendants.[6]  In that same order

Judge Saylor set out a timeline of events to govern cases in the MDL.  That schedule

contemplated trials in the summer of 2014.[7]

### B.  In mid-2013, the Court stayed discovery against mediating defendants.

On August 15, 2013, Judge Saylor issued his Order on Mediation Program, formally

establishing the mediation program and providing a stay of discovery of any defendant that

elected to participate in the program.[8]

On November 5, 2013, the PSC filed the Master Complaint in this action.[9]  It did not

name the Affiliated Defendants and named only two National Defendants, Unifirst

Corporation ("Unifirst") and Liberty Industries, Inc. ("Liberty"), because the Affiliated

Defendants and the other National Defendants had opted into the court-approved mediation

program.[10] The Master Complaint also named the Clinic-Related Defendants,·[11]

In the latter part of 2013, cases against the Clinic Related Defendants began

appearing in the MDL as those cases completed the transfer process through the JMPL.[12]

The Clinic Related Defendants immediately began requesting that Judge Saylor reconsider

his previous orders on case management and specifically his orders related to opening of

---

[5] Dkt. No. 82.

[6] Dkt. No. 209.

[7] *Id*. at P. 18.

[8] Dkt. No. 394.

[9] Dkt. No. 545.

[10] Dkt. No. 545 at P. 8-9.  *See* Dkt. No. 442, ARL Bio Pharma, Inc's consent to join mediation program; Dkt. No. 445, Victory Mechanical Services Inc.'s consent to join mediation program

[11] *See* Dkt. No. 545 at P. 9-19.  Those clinics who had opted into the mediation program were omitted.

[12] *See e.g.* Dkt. No. 453 (original notice of appearance by counsel for Insight Health Corp.) and Dkt. No. 456 (original notice of appearance by counsel for Saint Thomas Hospital, Saint Thomas Health, and the Saint Thomas Network – collectively the "Saint Thomas Entities").

discovery. Significant briefing followed on proposed case management schedules.[13]

### C.  By January 2014, over eighty cases named the St. Thomas clinic and St. Thomas entities as defendants.

By January 28, 2014, the current structure of this MDL began to take shape.  It appeared that a plurality of cases pending in the MDL named Clinic-Related Defendants with an overwhelming majority of the cases also naming UniFirst and a handful of cases also naming Liberty.[14]  As of January 2014, there were 330 cases pending in the MDL and of those cases, 149 named a Clinic Related Defendant.  The overwhelming majority of these cases named Clinic Related Defendants from Tennessee.  Most of the Tennessee cases, 89 in all, named the Saint Thomas Outpatient Neurosurgical Center, LLC (the "Saint Thomas Clinic") and its affiliated companies and joint venturers (the "Saint Thomas Entities").[15]

On February 7, 2014, Judge Saylor recused himself and the MDL was assigned to Judge Zobel.[16]  At that time, Judge Saylor had not yet established the schedule for discovery and other pre-trial matters, a task that ultimately fell to Judge Boal.[17]  Shortly after Judge Saylor's recusal, Judge Boal ruled on the Plaintiff Profile Form to be completed by all plaintiffs.[18]

### D.  In August 2014, the Court denied the St. Thomas defendants' motions to dismiss and discovery began in earnest.

Several months followed in which the Court took up many of the motions to dismiss filed by the Clinic Related Defendants.[19]  On August 29, 2014, Judge Zobel issued her order largely denying these motions and allowing the substantive cases against the Clinic-Related

---

[13] *See e.g.* Dkt. Nos. 457, 837, 838, 858, 964, 965, and 987.
[14] Dkt. No. 822 (summarizing cases filed on this date).
[15] *Id.* at p. 2.  This was largely driven by the fact that Tennessee has a one year statute of limitations for personal injury actions.
[16] Dkt. No. 889.
[17] Dkt. No. 1425.
[18] Dkt. No. 923.
[19] *See* Dkt. No. 1360.

Defendants to move forward.[20]  Although this order applied only to the motions to dismiss filed by the Saint Thomas Clinic, the Saint Thomas Entities, one other Tennessee clinic, and Premier Orthopaedic and Sports Medicine Associates of South Jersey, LLC and certain related defendants (collectively, "Premier").

Following this order, Judge Boal, issued MDL Order No. 9, establishing the schedule regarding common issue discovery.[21]  Following MDL Order No. 9, the Clinic Related Defendants – who up to that point had largely refused to participate in discovery – began responding to discovery requests and began collecting electronically stored information pursuant to the previously issued ESI Protocol.  Discovery remains ongoing pursuant to MDL Order No. 9.

### E.  All but one National Defendant are participating in the NECC bankruptcy Plan.

As the Court is well aware, while litigation in this MDL has been ongoing, NECC's bankruptcy case has been proceeding.  On February 24, 2014, Judge Boroff held a hearing on the Disclosure Statement for the Chapter 11 Plan that has been proposed and approved the Disclosure Statement on March 3, 2015.[22]

The Plan contemplates significant contributions and, if approved, would provide releases for the following:

1.  Affiliated Defendants

2.  National Defendants

    a.  ARL Bio Pharma, Inc.

    b.  Victory Mechanical Services Inc.

---

[20] *Id.*
[21] Dkt. No. 1425.  A "common issue" is defined as "an issue that pertains to all or a substantial number of cases in the MDL.
[22] Dkt. No. 1715.

        c.   Unifirst Corp. a/d/b/a Uniclean Cleanroom Services

     3.  Clinic Related Defendants

        a.   Surgery Center Associates of High Point, LLC

        b.   Insight Health Corp.

        c.   Inspira Medical Centers, Inc.

Given that Judge Boroff has now approved the Disclosure Statement, and a Chapter 11 Plan has largely been developed, the window for defendants to settle through this bankruptcy channel is closed.[23]

The only National Defendant remaining in this MDL is Liberty.  Liberty has produced documents and put up two witnesses for deposition.  The Court denied Liberty's motion for summary judgment.[24]  Liberty's insurers filed a declaration action pending in Connecticut seeking a declaration that Liberty's insurance policies do not cover the claims in this litigation.[25]  Liberty has threatened to file for bankruptcy in the event the Connecticut Court sides with Liberty's insurers.  Liberty also has a pending motion for the Court to reconsider its denial of Liberty's Motion for Summary Judgment and to strike the Amended Austin Declaration.[26]

**F.  Current case counts show more civil actions against the St. Thomas entities than any other Clinic Related Defendant.**

Last month, the PSC provided an update of the cases now pending in this MDL.[27] There are now over 680 cases pending in this MDL with approximately 197 of those cases naming a Clinic Related Defendant.[28]  Saint Thomas Clinic remains the most named Clinic

---

[23] *See* Dkt. No. 1715.
[24] Dkt. No. 1613.
[25] *See Great American E&S Ins. Co. v. Liberty Ind. Inc.*, Case No. 3:14-cv-00499 (D. Conn. 2014), Dkt. No. 1.
[26] Dkt. No. 1619 and 1661.
[27] Dkt. No. 1696.
[28] *Id.*  As explained in that summary, this case count excludes cases pending in the MDL with a Clinic Related

Related Defendant (89 civil actions), Premier Orthopaedic Assoc. Surgical Center follows

(39), with Specialty Surgery Center PLLC (24) and Box Hill Surgery System LLC (8).[29]

### III.   PLAINTIFFS PROPOSE A SINGLE EXPEDITED DECEMBER 2015 TRIAL OF SIX CIVIL ACTIONS NAMING THE ST. THOMAS ENTITIES AS DEFENDANTS

#### A. An expedited trial will aid the resolution of this MDL.

The main issue left for this Court to resolve is the liability of the Clinic-Related

Defendants. Judge Saylor's original timeline for these cases contemplated on or more trials

beginning in the summer of 2014. In January of 2014, the PSC requested that the first trials

in this matter be held in the Spring of 2015.  As of July of 2014, the PSC requested the first

trial be held in the Summer of 2015.[30]  This Court recently echoed the need for trials in this

matter in 2015:

> THE COURT: When would you anticipate you would want
> to have the first set of trials?
>
> MS. JOHNSON: As much as I would like to say 2015, I
> think given the realities of some discovery in these cases, we
> may be looking at early 2016.
>
> THE COURT: Really?
>
> MS. JOHNSON: That's the best answer I can give you
> today, your Honor, but I assure you that in the process of
> sitting down to write this out, we will try and figure out a
> way to get 2015.
>
> THE COURT: You should try to do it before Christmas.
>
> MS. JOHNSON: Absolutely, your Honor.
>
> MR. STRANCH: We will have a case ready before
> Christmas.

---

Defendant that has settled.
[29] *Id.*
[30] Dkt. No. 837 and 1267.

> MS. JOHNSON: Absolutely, your Honor, we will do that.[31]

The Court once again at the last status conference in February restated its desire to have cases tried before the end of the year.[32]

Rule 1 of the Federal Rules of Civil Procedure directs that the rules be employed to secure the just, speedy, and inexpensive determination of the actions centralized in this proceeding. In the MDL context, this is a statutory command as well as a Rule-based goal. The MDL statute specifically directs that achieving such efficiencies is a prerequisite to the creation of an MDL.[33] The Judicial Panel on Multidistrict Litigation centralized these cases because they featured important common questions of fact, and would benefit from coordinated, judicially controlled discovery.  In the context of modern MDL practice the transferee court "can do more than function as a discovery crucible."[34] "By establishing a mechanism for conducting 'representative' trials, the transferee court can enhance and accelerate both the MDL process itself and the global resolutions that often emerge from that process."[35]  As one commentator noted, "MDL judges not only have available to them such traditional settlement–promoting options as mediation and settlement conferences, but an MDL proceeding is often an especially appropriate context for the use of a small number of representative cases are actually tried with the results of those trials serving as a basis for a settlement of a larger number of cases.[36]

---

[31] January 14, 2015 Tr. at P.43-44.

[32] February 17, 2015 Tr. at P. 12.

[33] *See* 28 U.S.C. § 1407 (prior to centralizations, the Panel must determine that centralization will "promote the just and efficient conduct of such actions.").

[34] Eldon E. Fallon, et al, *Bellwether Trials in Multidistrict Litigation*, 82 Tul. L. Rev. 2323, 2325 (June, 2008) (hereafter, "Fallon").

[35] *Id*.

[36] Mark Herrmann, et al, *Statewide Coordinated Proceedings: State Court Analogs to the Federal MDL Process*, 12 (2d ed. 2004) (hereinafter "Herrmann"), *citing* John F. Nangle, *From the Horse's Mouth: The Workings of the Judicial Panel on Multidistrict Litigation*, 66 Def. Couns. J. 341, 345 (1999) (excerpt attached to Motion as

An expeditious trial at this stage will enable parties to better evaluate cases for resolution and focus the attention of the MDL on the main issue now pending in this MDL: whether the clinics who administered tainted NECC pharmaceuticals to their patient are also liable for the harm suffered as a result of those injections.  To the extent that there can be any debate about whether the contaminated MPA caused fungal infections (which, given the evidence appears difficult to contest), expert reports in the proposed expedited trial cases will address that issue.  As Tennessee law provides for comparative fault determinations, these cases will also develop evidence and lead to findings about the alleged comparative fault of other parties (*e.g.*, NECC, the Affiliated Defendants, etc.).  The lessons learned from working up and trying these six cases will unquestionably have bearing on how the parties view (and value) all of the other cases against the Saint Thomas defendants in the MDL.

Although the PSC had previously proposed a formal bellwether selection process, given the settlement of claims against all Affiliated Defendants, all of the National Defendants except one, and some Clinic Related Defendants – and given the time that has now elapsed between plaintiffs' injuries and a potential trial – the PSC believes it will be beneficial to the resolution of this MDL if the Court dispenses with a formal bellwether selection process.  The parties can better use the months that would otherwise go to developing a bellwether plan and selecting cases on preparing cases for trial.  This is a more expeditious and efficient method to bring a successful resolution to the MDL as a whole.

This district's experience with the drawn out "bellwether" selection proceed in the *Granfulo* MDL is illustrative.[37]   There, the court imposed a schedule requiring each side to

---

Ex.3).

[37] *In Re: Fresenius Granuflo/Naturalyte Dialysate Products Liability Litigation*,  Case No. 13-md-2428-DPW (D.

choose ten "bellwether" cases for expedited fact and expert discovery; identifying those "picks" took 5 months. The Plaintiffs' Executive Committee in that case selected cases with "representative" injuries – death and cardiac failure due to defective hemodialysis materials – identified in the *Granuflo* Master Complaint. The Defendants chose ten "outlier" cases that involved difficult to prove causation theories and atypical injuries. As a result, eight of the ten bellwether picks chosen by the Defendant were voluntarily dismissed with prejudice during the course of discovery.[38]

During a hearing Monday, the Judge Woodlock expressed his "considerable concern" that the Defendant's selection of "outlier" cases had undermined the bellwether process.[39] Four times the court reiterated that its primary focus was on selecting a "fair cross-section" of representative cases to proceed to trial;[40] it was not concerned with which party nominated or identified those cases.[41] And the *Granuflo* court made clear that it would not deviate from the bellwether schedule set, reflecting its belief in the importance of expediently bringing exemplar cases to trial.[42]

There is no need to open the door to months of haggling and delay, and multiple rounds of hearings and briefings, the likes of which have mired the *Granuflo* bellwether process. Here, six cases are clear choices to proceed to trial on an expedited basis: those cases elucidate the issues common to all consolidated cases, fairly represent the injuries suffered across the MDL, and would promote a just and speedy resolution of the claims brought by thousands of plaintiffs injected with tainted drugs, and the hundreds of families who lost loved ones as a result of

---

Mass.).
[38] Exhibit A:  Excerpt of Motion Hr'g Tr. at  9:24 – 10:5, 11:13-23, *In re: Fresenius Granuflo/Naturalyte Dialysate Prods. Liab. Litig.*, No. 13-md-2428-DPW (D. Mass.  Mar. 2, 2015).
[39] *Id.* at 13:10-16, 17:3-5.
[40] *Id.* at 16:12-13, 16:24-25, 17:14-16, 19:11-13.
[41] *Id.* at 16:24-25 ("I am less interested in reciprocity than I am in a fair cross-section.").
[42] *Id.* at 17:23-25.

Defendants' gross negligence.

### B.  The Court should expedite a trial against the St. Thomas entities.

The Saint Thomas Clinic and the Saint Thomas Entities are the Clinic-Related Defendants with the most cases pending against them and are a logical choice for the first trials in this matter for several other reasons.[43]

First, Plaintiffs claims against these entities have already withstood extensive briefing on motions to dismiss.

Second, and more importantly, significant discovery has been completed and is scheduled against these entities, including significant document production, written discovery, and the only two depositions completed against a Clinic Related Defendants. Several additional depositions are tentatively scheduled in March.

Third, the cases against St. Thomas do not name Liberty as a defendant, thus streamlining the issues to be tried in these cases.  A trial against the Saint Thomas Clinic and the Saint Thomas Entities will help answer the key remaining question now pending in this MDL: whether the Clinic-Related Defendants share responsibility for the national tragedy brought on by tainted pharmaceuticals compounded by NECC and what is their percentage of comparative fault.

Finally, as can be seen from the chart below, a trial in 2015 is largely consistent with the current schedule, especially when the Court takes into consideration that the individual discovery needed for defendants to prepare a case for trial has largely been completed.

---

[43] The PSC anticipates filing a proposed schedule for a multiple plaintiff trial against Premier Orthopaedic and Sports Medicine Associates of South Jersey, LLC, d/b/a Premier Orthopaedic and Sports Medicine Associates, Kimberley Yvette Smith, M.D. (a/k/a Kimberley Yvette Smith-Martin, M.D.), and Thomas A. Dwyer, M.D., and others, (Wave 2 Trial) within the next 60 days. The PSC also anticipates requesting a multiple plaintiff trial against one or more of the Maryland clinics in the spring of 2016 (Wave 3 Trial).

Under MDL Order No. 9, plaintiffs were required to produce extensive Plaintiff Profile Forms and 5 record releases to the defendants by November 17, 2014, meaning the Saint Thomas Clinic and the Saint Thomas Entities have been in possession of profile forms and relevant records releases for the plaintiffs for over three months.  In fact, plaintiffs in Tennessee also served these defendants with pre-suit notice providing a HIPAA release for medical records even before filing suit, so these defendants have been able to access relevant medical records from the plaintiffs for, in some instances, two and a half years.[44]  Whatever additional discovery necessary to try the proposed cases in December 2015 can be completed in the spring and early summer of this year.

## IV.    PLAINTIFFS' PROPOSED EXPEDITED TRIAL CASES AND SCHEDULE

The PSC's proposed schedule, set against the current schedule created by MDL Order No. 9 is as follows:

### Plaintiffs' Proposed Pretrial and Trial Schedule

|  | MDL Order No. 9 Schedule | New Trial Schedule |
|---|---|---|
| Deadline for Saint Thomas defendants to inform Court of position on *Lexicon*[45] | N/A | May 1, 2015 |
| Close of Fact Discovery | June 15, 2015 | June 15, 2015 |
| Initial Expert Disclosures | July 15, 2015 | July 1, 2015[46] |
| Rebuttal Expert Disclosures | August 14, 2015 | August 1, 2015 |

[44] *See e.g.,* Tenn. Code Ann. 29-26-121.
[45] The need for this deadline is discussed in greater detail in Section III.
[46] The party proffering the expert shall disclose, at the time of serving the report, three dates on which the expert is available for deposition (before the expert deposition deadline).

| | | |
|---|---|---|
| Deadline For Expert Depositions | October 13, 2015 | September 1, 2015 |
| Dispositive Motions and *Daubert* Motions | N/A | September 15, 2015 |
| Oppositions to Dispositive Motions and *Daubert* Motions | N/A | September 30, 2015 |
| Replies in Support of Dispositive Motions and *Daubert* Motions | N/A | October 7, 2015 |
| Hearing on Dispositive Motions and *Daubert* Motions | | Late October 2015 |
| Final Pre-Trial Hearing | N/A | November 15, 2015 |
| Trial | N/A | December 4, 2015 |

Plaintiffs propose trying six civil actions against St. Thomas in a single consolidated trial starting December 4, 2015. The six cases proposed to be tried are as follows:

1. *Reed v. Ameridose*, et al, 1:13-cv-12565

2. *Rybinski v. Ameridose*, et al, 1:13-cv-12818

3. *Ziegler v. Ameridose*, et al, 1:13-cv-12588

4. *McElwee v. Ameridose*, et al, 1:13-cv-12625

5. *Wray v. Ameridose*, et al, 1:13-cv-12737

6. *Sullivan v. Ameridose*, et al, 1:13-cv-12781

These six cases (collectively the "Proposed Trial Cases") involve plaintiffs including those who have died (*Reed* and *Rybinski*) or who have confirmed cases of meningitis and other paraspinal infections (*Wray, Ziegler, McElwee, and Sullivan*) (collectively, the "Proposed Trial Cases"). These are the injuries at the very core of this MDL: deaths and fungal infections caused

by the contaminated MPA.  The evidence adduced at trial, and the outcome of the trial, will necessarily have bearing on each and every case in the MDL.  Particularly for the approximately 80 other cases in the MDL involving the St. Thomas Defendants.

Each of the Proposed Trial Cases originated in the Middle District of Tennessee and was transferred to the MDL for pretrial purposes by the JPML.  Plaintiffs in the Proposed Trial Cases are prepared to waive *Lexicon* and allow these cases to be tried before this Court for the purpose of expediting trial and avoiding further delay in the resolution of their cases.[47]  Alternatively, in the event that the Saint Thomas Defendants do not choose to waive *Lexicon*, Plaintiffs propose that Judge Zobel be appointed temporarily to sit in the Middle District of Tennessee pursuant to 28 U.S.C. 1407(b), in order to try these cases.

As noted above, each plaintiff in the Proposed Trial Cases has completed and served defendants with a Plaintiff Profile Form.  For the Court's benefit, the PSC provides a brief description of each plaintiff:

### A.  Diane Reed

Diane Reed was a 56 year old mother with a husband and two sons.  She is believed to be the third person to have contracted fungal meningitis in Tennessee.  Mrs. Reed was the sole caregiver to her husband Wayne Reed who has ALS, also known as Lou Gehrig's disease.  Diana Reed died of complications from fungal meningitis on October 3, 2012.  She spent eleven days in the hospital.  She received her injections on August 21, 2012, September 4, 2012, and September 18, 2012 at Saint Thomas Clinic by Dr. John Culclasure.[48]

### B.  Thomas Rybinski

---

[47] *See* Declaration of George Nolan, filed contemporaneously herewith as Exhibit A at ¶ 4 (the "Nolan Decl."); Declaration of Daniel Clayton, filed contemporaneously herewith as Exhibit B at ¶ 4 (the "Clayton Decl.") and Declaration of Mark Chalos, filed contemporaneously herewith as Exhibit C at ¶ 4 (the "Chalos Decl.").  These declarations are attached hereto as Exhibits B-D, respectively.

[48] *See* Nolan Decl. ¶ 2.

Thomas Rybinski was a 55 year old married male with three children who was a longtime General Motors employee.   He is believed to be the second person to have contracted fungal meningitis in Tennessee.  He died of complications from fungal meningitis on September 29, 2012 after suffering extensively with excruciating headaches, fever, back pain, chills, confusion and altered mental status.  He spent 23 days at the Vanderbilt University Medical Center receiving treatment for his injuries prior to his death.  He received his injection on July 30, 2012 at Saint Thomas Clinic by Dr. John Culclasure.[49]

### C.  Major Adam Ziegler

Major Adam Ziegler is a 32 year old active duty Army Logistics Officer in the Special Operations Forces stationed at Fort Campbell Army Post in Clarksville, Tennessee.  He has served in the Army since 2002.  On October 7, 2012, after previously submitting to Blanchfield Army Hospital with a complaint of severe back and hip pain, Maj. Ziegler was diagnosed with sacorilitis and abscess at the Vanderbilt University Medical Center.  He spent the next 19 days in the hospital and the next 19 months on anti-fungal treatment.  He received his injection on September 11, 2012 by Dr. John Culclasure.[50]

### D.  BJ McElwee

BJ McElwee is a 75 year old married male.  On October 4, 2012, Mr. McElwee was diagnosed with fungal meningitis.  Following this diagnosis, BJ McElwee was hospitalized at St. Thomas Hospital for approximately 12 weeks (approximately 3 months).  As of April 2014, he had incurred approximately several hundred thousand dollars in medical expenses.  He underwent at least 7 lumbar punctures during his hospitalization.  He continues to have balance difficulties, neuropathy in his legs and feet, lower back pain, chronic kidney disease and other

---

[49] *See* Clayton Decl. ¶ 2.
[50] *See* Chalos Decl. ¶ 2.

ailments.  He received two injections at Saint Thomas Clinic in August and September of 2012.[51]

### E.  Jane Wray

Jane Wray is a 68 year old married woman.  On October 5, 2012, after several previous trips to a hospital for severe headache, Mrs. Wray was diagnosed with fungal meningitis at the St. Thomas Hospital.  Mrs. Wray spent the next 15 days in the hospital where she had three lumbar punctures and she would continue on her anti-fungal treatment for approximately 18 months.  Mrs. Wray is still in physical therapy and has frequent loss of balance, lower back pain and hip pain, which radiates down her leg.  She received her injections on August 10, 2012 and August 31, 2012 at the Saint Thomas Outpatient Neurosurgical Center.[52]

### F.  Ann Sullivan

Anna Sullivan is a 69 year old married mother of three.  On October 2, 2012, she was diagnosed with fungal meningitis.  Following this diagnosis, Ms. Sullivan was hospitalized at St. Thomas Hospital for approximately 12 weeks (approximately 3 months).  Ms. Sullivan continues to suffer from chronic pain in the neck, hips, arms, knees, ankles, feet, back and joints; acute pain in sacrum when walking and standing, speech impairment and slurred speech; poor balance and unsteady gait.  She cannot walk on her own, must use either walker or wheelchair. She received her injection at the Saint Thomas Clinic on August 20, 2012.[53]

---

[51] *See* Nolan Decl. ¶ 3.
[52] *See* Chalos Decl. ¶ 3.
[53] *See* Clayton Decl. ¶ 3.

## V.     CONCLUSION

For the forgoing reasons, the PSC respectfully requests that the Court enter the contemporaneously provided order and set the six above cases for trial in December of 2015 in accordance with the proposed schedule.

March 6, 2015                                        Respectfully submitted,

                                        /s/ J. Gerard Stranch, IV
                                        J. Gerard Stranch, IV
                                        Benjamin A. Gastel
                                        BRANSTETTER, STRANCH & JENNINGS
                                        PLLC
                                        227 Second Avenue North
                                        Nashville, TN  37201
                                        Telephone:  (615) 254-8801
                                        Facsimile:  (615) 255-5419
                                        gerards@branstetterlaw.com
                                        beng@branstetterlaw.com

                                        *Plaintiffs' Steering Committee and Tennessee
                                        State Chair*

                                        Thomas M. Sobol
                                        Kristen Johnson Parker
                                        HAGENS BERMAN SOBOL SHAPIRO LLP
                                        55 Cambridge Parkway, Suite 301
                                        Cambridge, MA  02142
                                        Telephone:  (617) 482-3700
                                        Facsimile:  (617) 482-3003
                                        tom@hbsslaw.com
                                        kristenjp@hbsslaw.com

                                        *Plaintiffs' Lead Counsel*

Elizabeth J. Cabraser
Mark P. Chalos
Annika K. Martin
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
150 Fourth Avenue North, Suite 1650
Nashville, TN 37219-2417
Telephone:  615.313.9000
Facsimile:  615.313.9965
ecabraser@lchb.com
mchalos@lchb.com
akmartin@lchb.com

*Federal/State Liaison*

Marc E. Lipton
LIPTON LAW
18930 W. 10 Mile Road
Southfield, MI  48075
Telephone:  (248) 557-1688
Facsimile:  (248) 557-6344
marc@liptonlawcenter.com

Kim Dougherty
JANET, JENNER & SUGGS, LLC
31 St. James Avenue, Suite 365
Boston, MA  02116
Telephone:  (617) 933-1265
kdougherty@myadvocates.com

Patrick T. Fennell
CRANDALL & KATT
366 Elm Avenue, S.W.
Roanoke, VA  24016
Telephone:  (540) 342-2000
pfennel@crandalllaw.com

Mark Zamora
ZAMORA FIRM
6 Concourse Way, 22nd Floor
Atlanta, GA  30328
Telephone:  (404) 451-7781
Facsimile:  (404) 506-9223
marc@markzamora.com

*Plaintiffs' Steering Committee*

## CERTIFICATE OF SERVICE

      I, J. Gerard Stranch, IV, hereby certify that I caused a copy of the foregoing to be filed electronically via the Court's electronic filing system.  Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system, and notice of these filings will be sent to these parties by operation of the Court's electronic filing system.

Dated: March 6, 2015              /s/ J. Gerard Stranch, IV
                                      J. Gerard Stranch, IV