# EXHIBIT

## Discovery Referenced in Notice

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE:  NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | )  )  MDL No. 2419 )  Dkt. No. 1:13-md-2419-RWZ )  ) |
| This Document Relates to Suits Naming: | )  )  ) |
| Suits Naming the Tennessee Clinic Defendants | )  )  )  ) |

## THE TENNESSEE CLINIC DEFENDANTS'
## FIRST INTERROGATORIES, REQUESTS FOR PRODUCTON OF DOCUMENTS, AND REQUESTS FOR ADMISSION PROPOUNDED TO BARRY CADDEN.

Come the Defendants, Saint Thomas Outpatient Neurosurgical Center, LLC; Howell Allen Clinic, a Professional Corporation; John Culclasure, MD; Debra Schamberg, RN, CNOR; Vaughan Allen, MD; Specialty Surgery Center, Crossville, PLLC; Kenneth R. Lister, MD; Kenneth Lister, MD, PC; and Donald E. Jones, MD (collectively "Tennessee Clinic Defendants") , pursuant to Rules 26, 33, and 34 of the Federal Rules of Civil Procedure and the Local Rules for the District of Massachusetts, and propound the following Interrogatories, Requests for Production of Documents, and Requests for Admission to Barry Cadden.

Each of the following Interrogatories shall be answered under oath, in writing, separately, to the fullest possible detail, and in accordance with the definitions and instructions set forth below. The answers shall be signed by the person making them, and a copy of the answers, together with objections, if any, shall be served within thirty (30) days after the service date of these Interrogatories.

You are under a duty to seasonably supplement your response with respect to any Interrogatory directly addressed to the identity and location of persons having knowledge of discoverable matters. You are under a duty to amend a prior response if you obtain information on the basis of which you know that the response was incorrect when made, or that the response, though correctly made, is no longer true, and the circumstances are such that a failure to amend the response is, in substance, a knowing concealment.

## DEFINITIONS

1.     As used in this document, the terms "person(s)" and "individual(s)" mean any natural individual in any capacity whatsoever or any entity or organization, including divisions, departments, and other units therein, and shall include, but not be limited to, a public or private corporation, partnership, joint venture, voluntary or unincorporated association, organization, proprietorship, trust, estate, governmental agency, commission, bureau, or department.

2.     As used in this document, the term "document" means any medium upon which intelligence or information can be recorded or retrieved, and includes without limitation, the original and each copy, regardless of origin and location, of any book, pamphlet, periodical, letter, memorandum (including any memorandum or report of a meeting or conversation), invoice, bill, order form, receipt, financial statement, accounting entry, diary, calendar, telex, telegram, cable, report, record, contract, agreement, study, handwritten note, draft, working paper, chart, paper, print, laboratory record, drawing or sketch, graph, index, lists, tape, photograph, microfilm, data sheet or data processing card, or any other written, recorded, transcribed, punched, taped, filmed, or graphic matter, however produced or reproduced, which is in your possession, custody, or control, or which <u>was</u>, but is no longer, in your possession, custody, or control.

3.     As used in this document, the terms "identification," "identify," or "identity," when used in reference to a natural individual, require you to state his or her full name and residential and business address. Use of the term "document" in connection with the Interrogatories requires you to state the number of pages and the nature of the document, its title, its date, the name or names of its authors, and recipients, and its present location and custodian.

4.     "You" and "your" refers to Barry Cadden and each of his present and former agents, representatives, and employees, attorneys and accountants, and each person acting or purporting to act on his behalf.

5.     "Communication" means any oral or written utterance, notification, or statement of any nature whatsoever, by and to whomsoever made, including, but not limited to, correspondence, conversation, dialogue, discussions, interviews, consultants, and any other understanding between or among two or more persons.

## INSTRUCTIONS

1.   With respect to each Interrogatory, in addition to answering the question, you are to identify all documents that support, refer to, or evidence the subject matter of each Interrogatory and your answer thereto.

   If any or all identified documents are no longer in your possession, custody, or control because of destruction, loss, or any other reason, then you must do the following with respect to each and every document:

   A.   Describe the nature of the document;

   B.   State the date of the document;

   C.   Identify the persons who sent and received the original and the copy of the document;

   D.   State in as much detail as possible the contents of the documents; and

   E.   State the manner and date of disposition of the document.

   If you contend that you are entitled to withhold from production any or all documents identified herein on the basis of attorney-client privilege, the work-product doctrine, or any other ground, then do the following with respect to each and every document:

   A.   Describe the nature of the document;

   B.   State the date of the document;

   C.   Identify the persons who sent and received the original and a copy of the document;

   D.   State the subject matter of the document; and

   E.   State the basis upon which you contend you are entitled to withhold the document from production.

2.   All documents produced should be organized and labeled to correspond to the specific Request in response to which they are being made available or should be produced as they are kept in the usual course of business.

3.   The terms "and," "or," and "and/or" should be construed either disjunctively or conjunctively so as to bring within the scope of these Interrogatories and Requests any information that might otherwise be construed as outside their scope.

4.      The term "any" should be construed to include the word "all," and "all" should be construed to include "any."

5.      The present tense should be construed to include the past tense, and the past tense should be construed to include the present tense.

6.      The singular should be construed to include the plural, and the plural should be construed to include the singular.

7.      The terms "he" and "his" should be construed to include the words "she" and "her" or "hers," respectively and vice versa.

8.      "Relating to," when referring to a document shall mean mentioning, describing, connected to or with, or discussing the stated subject matter.

# INTERROGATORIES

On March 18, 2015, the Saint Thomas Entities sent their *First Set of Interrogatories, Requests for Production, and Requests for Admission to Barry Cadden*. In order to minimize the impact of discovery on Barry Cadden, these Tennessee Clinic Defendants **hereby adopt and incorporate, as if stated fully herein, Interrogatories 1-6** from the *Saint Thomas Entities' First Set of Interrogatories.* The "new" interrogatories begin at Number 7.

1-6.   [The Tennessee Clinic Defendants adopt and incorporate, as if stated fully herein, Interrogatories 1-11 from the *Saint Thomas Entities' First Set of Interrogatories.*]

**ANSWER:**

7.   Describe in detail your role at NECC and Ameridose, including job title, job description, and a description of your daily duties and activities in 2011 and 2012.

**ANSWER:**

8.   Describe in detail the steps NECC took to compound, process, stopper, seal, package, and ship methylprednisolone acetate ("MPA") in 2011 and 2012, including but not limited to:

   a) The names and job titles of the individuals performing each step;

   b) The specific cleanroom or location in NECC's facility where each step took place;

   c) The tools, equipment, or machinery used for each step;

   d) Any changes to NECC's methods or procedures for compounding MPA, or the location where compounding MPA took place, that occurred in 2011 or 2012.

**ANSWER:**

9.   Identify the total amount of MPA that NECC, and separately Ameridose, produced in each quarter of 2010, 2011, and 2012.

**ANSWER:**

10.   Identify the types of vials and closures NECC used for MPA lots numbered 052122012@68, 06292012@26, and 08102012@51 (collectively "Contaminated Lots"), including whether the vials and enclosures were prewashed or presterilized, and identify their manufacturer(s) and from whom they were purchased by NECC.

**ANSWER:**

11.     Identify any and all complaints that NECC and Ameridose received related to the sterility or safety of their products, including but not limited to complaints by customers, current and former employees, and state and federal government agencies.

**ANSWER:**

12.     Identify any customers of NECC and Ameridose who performed site visits prior to placing orders with either company.

**ANSWER:**

13.     Describe any policies, procedures, or protocols relating to or regarding customer site visits to the NECC facility, including the areas you allowed customers to inspect.

**ANSWER:**

14.     Identify any customers who took the following actions prior to placing orders with NECC or Ameridose:

   a.  Verified whether NECC's quality processes demonstrated that NECC was a reputable and safe supplier of sterile injectable compounds;

   b.  Determined if NECC was an accredited compounding pharmacy;

   c.  At least once annually, unannounced, visited NECC's corporate offices and compounding facilities and conferred with NECC's corporate, pharmacy, and compounding staff;

   d.  Determined whether NECC had any product liability lawsuits filed against it for preparations compounded;

   e.  Determined whether there had ever been recalls of any of NECC's compounded preparations;

   f.  Evaluated NECC's standard operating procedures and manuals;

   g.  Evaluated NECC's pharmacist technician training;

   h.  Evaluated NECC's policies and procedures for sterility testing;

6

i.  Evaluated examples of batch reports for product being considered for outsourcing;

j.  Evaluated examples of quality-control reports;

k.  Obtained and evaluated history of the results of all NECC accreditation or regulatory surveys conducted of NECC's sites, including copies of significant regulatory actions;

l.  Determined if NECC could provide documentation of the end-product testing processes used to determine that compounded sterile preparations are sterile and free of pyrogens and unintended particulate matter;

m.  Evaluated whether NECC could assure that each compounded sterile preparation was sterile and free of pyrogens and unintended particulate matter according to professional established and accepted quality monitoring data;

n.  Determined whether NECC performed nonviable and viable particle testing in primary engineering controls (e.g., laminar flow workbench, biological safety cabinet) and room air according to USP chapter 797 standards;

o.  Determined whether NECC performed routine surface microbiological and fungal environmental monitoring to minimize contamination;

p.  Determined whether NECC had a policy that required validation of new or changed facilities, equipment, processes, or container types, for sterility and repeatability;

q.  Determined whether NECC met ASHP, NIOSH and USP chapter 797 guidelines for the handling of hazardous agents;

r.  Evaluated NECC's quality management program, specifically as it relates to facility cleaning and validation, staff training, and competency assessment;

s.  Evaluated NECC's risk assessment program to ensure that medication errors are not introduced by new or increased outsourced compounding activities; or

t.  Determined whether NECC had a history of disciplinary or punitive actions by any regulatory agency.

**ANSWER:**

15.  Describe any information you, NECC, or Ameridose provided to each customer in response to the inquiries identified in the previous Interrogatory.

**ANSWER:**

7

16.     Identify any and all complaints NECC or Ameridose received related to their compliance with state or federal laws and regulations, including but not limited to complaints by customers, current and former employees, and state and federal government agencies.

        **ANSWER:**

17.     Identify and describe any way in which NECC's cleanrooms were modified, altered, or expanded by NECC or Ameridose.

        **ANSWER:**

18.     Identify any policies, procedures, or guidelines in place at NECC in 2012 that encouraged employees to disclose mistakes in the compounding process, even if the mistakes necessitated destruction of product or halting production.

        **ANSWER:**

19.     Describe all disciplinary or enforcement action taken against NECC or Ameridose by any state or federal government agency.

        **ANSWER:**

20.     Describe in detail Lisa Conigliaro Cadden's role at NECC in 2011 and 2012.

        **ANSWER:**

## VERIFICATION

**STATE OF TENNESSEE** )
)
**COUNTY OF** _____ )

I, _____, after being duly sworn, hereby make oath that the foregoing

answers to interrogatories are true to the best of my knowledge, information, and belief.

_____

Sworn to and subscribed before me this _____ day of _____, 2015.

_____
**Notary Public**

My commission expires on: _____.

9

## REQUESTS FOR PRODUCTION

On March 18, 2015, the Saint Thomas Entities sent their *First Set of Interrogatories, Requests for Production, and Requests for Admission to Barry Cadden*. In order to minimize the impact of discovery on Barry Cadden, these Tennessee Clinic Defendants **hereby adopt and incorporate, as if stated fully herein, Requests for Production 1-39** from the *Saint Thomas Entities' First Requests for Production*. The "new" requests begin at Number 40.

1-39. [The Tennessee Clinic Defendants adopt and incorporate, as if stated fully herein, Requests for Production 1-39 from the *Saint Thomas Entities' First Requests for Production*.]

**RESPONSE:**

40. Produce all correspondence between you and any of the Tennessee Clinic Defendants, their employees, agents, or representatives.

**RESPONSE:**

41. Produce all correspondence and documents referring or relating to the Tennessee Clinic Defendants' purchase of MPA from NECC in 2011 or 2012.

**RESPONSE:**

42. Produce all documents produced by the government to you during any civil, criminal, or administrative proceedings related to NECC's contaminated MPA.

**RESPONSE:**

43. Produce all policies, procedures, guidelines, instructions and training documents referring or relating to the compounding of MPA at the NECC facility.

**RESPONSE:**

44. Produce all documents referring or relating to NECC or Ameridose sending sufficient samples, by size or volume, to comply with USP 71 to ARL or any other testing laboratory.

**RESPONSE:**

45. Produce all correspondence and documents referring or relating to fungal blooms or growth in or near NECC's cleanrooms.

**RESPONSE:**

10

46.     Produce all documents referring or relating to any complaints that NECC or Ameridose received related to the sterility or safety of their products, including but not limited to complaints by customers, current or former employees, or state or federal government agencies.

**RESPONSE:**

47.     Produce all documents referring or relating to any complaints NECC or Ameridose received related to their compliance with state or federal laws and regulations, including but not limited to complaints by customers, current or former employees, or state or federal government agencies.

**RESPONSE:**

48.     Produce all correspondence and documents referring or relating to NECC's response to the meningitis outbreak, including but not limited to, steps NECC took to prepare for any inspections of its facility.

**RESPONSE:**

49.     Produce all training and instructional material for sales staff at NECC or MSM.

**RESPONSE:**

## REQUESTS FOR ADMISSION

On March 18, 2015, the Saint Thomas Entities sent their *First Set of Interrogatories, Requests for Production, and Requests for Admission to Barry Cadden.* In order to minimize the impact of discovery on Barry Cadden, these Tennessee Clinic Defendants **hereby adopt and incorporate, as if stated fully herein, Requests for Admission 1-16** from the *Saint Thomas Entities' First Requests for Admission.* The "new" requests begin at Number 17.

1-16.   [The Tennessee Clinic Defendants adopt and incorporate, as if stated fully herein, Requests for Admission 1-16 from the *Saint Thomas Entities' First Requests for Admission.*]

**ANSWER:**

17.   Admit that you were NECC's pharmacist in charge in 2011 and 2012.

**ANSWER:**

18.   Admit that you signed NECC's application for a pharmacy license in Tennessee representing yourself to be NECC's pharmacist in charge.

**ANSWER:**

19.   Admit that on December 6, 2004, the Tennessee Board of Pharmacy granted you pharmacist license number 22971, permitting you to practice as a pharmacist in the state of Tennessee.

**ANSWER:**

20.   Admit that on or about October 12, 2012, NECC executed a Voluntary Surrender Agreement in which it voluntarily surrendered its license to practice pharmacy in the state of Tennessee.

**ANSWER:**

21.   Admit that on or about October 20, 2012, you executed a Voluntary Surrender Agreement in which you voluntarily surrendered your license to practice as a pharmacist in the state of Tennessee.

**ANSWER:**

22. Admit that as the pharmacist in charge at NECC, you had the authority and responsibility for compliance with the laws and rules pertaining to the practice of pharmacy of NECC at its practice site.

   **ANSWER:**

23. Admit that as NECC's pharmacist in charge, you were responsible for the duties set forth in Tenn. Comp. R & Regs. No. 1140-7-.02 and Tenn. Comp. R & Regs. No. 1140-03-.14

   **ANSWER:**

24. Admit that, had any of the Tennessee Clinic Defendants asked for a copy of NECC's license in 2011, you would have provided a valid and up-to-date Tennessee pharmacy license.

   **ANSWER:**

25. Admit that NECC represented to potential customers, including the Tennessee Clinic Defendants, that it met or exceeded USP 797 standards.

   **ANSWER:**

26. Admit that NECC represented to potential customers, including the Tennessee Clinic Defendants, that its products, including MPA, were safe and sterile.

   **ANSWER:**

27. Admit that the Massachusetts Board of Pharmacy ("Mass. BoP") inspected NECC on or about May 24, 2011.

   **ANSWER:**

28. Admit that as a result of its inspection on or about May 24, 2011 the Mass. BoP issued an inspection report documenting its findings.

   **ANSWER:**

29. Admit that you did not submit a copy of the Mass. BoP's May 24, 2011 inspection report to the Tennessee Board of Pharmacy.

   **ANSWER:**

30.   Admit that you owed a duty to the Plaintiffs to ensure that NECC's MPA was sterile prior to distributing it to customers.

   **ANSWER:**

31.   Admit that the documents attached as Exhibit A are NECC's Logged Formula Worksheets for the MPA lots numbered 052122012@68, 06292012@26, and 08102012@51 (collectively "Contaminated Lots").

   **ANSWER:**

32.   Admit that in each Logged Formula Worksheet in Exhibit A, the pharmacist referred to as "GC" is Glenn Chin.

   **ANSWER:**

33.   Admit that the Logged Formula Worksheet for lot 06292012@26, attached as Exhibit B, states that the MPA was autoclaved for twenty (20) minutes at 121 C. and 15 PSI.

   **ANSWER:**

34.   Admit that NECC's Standard Operating Procedures required that the MPA be autoclaved for fifteen (15) minutes at 121 C. and 15 PSI.

   **ANSWER:**

35.   Admit that the Logged Formula Worksheets in Exhibit B state that Joseph P. Connolly was the technician for MPA lots 052122012@68 and 06292012@26.

   **ANSWER:**

36.   Admit that Glenn Chin compounded lot 08102012@51.

   **ANSWER:**

37.   Admit that Glenn Chin and Joseph Connolly compounded lots 052122012@68 and 06292012@26@51.

   **ANSWER:**

38.   Admit that NECC violated its own standard operating procedures by permitting Joseph Connolly (a technician) to compound two of the three contaminated lots.

   **ANSWER:**

39.    Admit that Exhibit C is NECC's General Overview of Policies & Procedures for Compounding Sterile Products.

**ANSWER:**

40.    Admit that Exhibit C states, in part:

C. Personnel
       a.    All sterile compounding is performed by properly trained and validated pharmacists (*no* technicians).

**ANSWER:**

41.    Admit that the documents attached as Exhibit D are reports from Analytical Research Laboratories ("ARL") related to the sterility and endotoxin testing ARL performed on NECC's MPA from the Contaminated Lots.

**ANSWER:**

42.    Admit that NECC submitted only two 5 mL vials of MPA from each of the Contaminated Lots to ARL for testing.

**ANSWER:**

43.    Admit that USP standards for sterility testing required a larger sample size than two 5 mL vials per lot of MPA.

**ANSWER:**

44.    Admit that USP 797 requires an ISO 5 space for stoppering vials of MPA.

**ANSWER:**

45.    Admit that NECC stoppered the Contaminated Lots in an ISO 7 space.

**ANSWER:**

46.    Admit that the documents attached as Exhibit E are true and accurate copies of emails you sent to Glenn Chin in the normal course of NECC's business.

**ANSWER:**

47.    Admit that in the email you sent Glenn Chin on Wednesday, August 10, attached as Exhibit E, you stated, "I am told that the lots for some drugs almost never coincide with the available test data."

**ANSWER:**

48.    Admit that in the email you sent Glenn Chin on Wednesday, August 10, attached as Exhibit E, you stated, "I was told that we are only testing rarely and dispensing many untested lots."

**ANSWER:**

49.    Admit that Exhibit F is a true and accurate copy of an email you received from Glenn Chin on Monday, December 19, 2011.

**ANSWER:**

50.    Admit that the email in Exhibit F was sent in the normal course of NECC's business.

**ANSWER:**

51.    Admit that in the email attached as Exhibit F, Glenn Chin indicated that he was using "MTX" that had expired in 2007 in NECC's injectable products in 2011.

**ANSWER:**

Respectfully submitted,

**GIDEON, COOPER & ESSARY, PLC**


/s/ Chris J. Tardio

**C.J. Gideon, Jr.***
**Chris J. Tardio***
**Alan S. Bean****
**Matthew H. Cline***
315 Deaderick Street, Suite
Nashville, TN 37238
Ph: (615) 254-0400
Fax: (515) 254-0459
chris@gideoncooper.com

***Attorneys for the Tennessee Clinic***
***Defendants***

\* Admitted pursuant to MDL Order No. 1.
\*\* Admitted *pro hac vice*.

17

## CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of March, 2015, a true and accurate copy of the foregoing was served on Barry Cadden by U.S. mail and on the other parties below electronically via the Court's CM/ECF system:

| | |
|---|---|
| Gerard Stranch, IV<br>Ben Gastel<br>Branstetter, Stranch & Jennings, PLLC<br>227 2nd Ave N<br>Suite 400<br>Nashville, TN 37201<br><br>*Attorneys for the PSC*<br><br>[via hand-delivery, to upload to repository] | Matthew P. Moriarty<br>Thomas W. Coffey<br>Richard A. Dean<br>Tucker Ellis, LLP<br>950 Main Avenue, Suite 1100<br>Cleveland, OH 44113<br><br>Scott H. Kremer<br>Tucker, Heifetz & Saltzman<br>Three School Street<br>Boston, MA 02108<br><br>Scott J. Tucker<br>Paul Saltzman<br>Matthew E. Mantalos<br>Tucker, Saltzman & Dyer, LLP<br>50 Congress Street<br>Boston, MA 02109<br><br>*Attorneys for Defendant Ameridose, LLC* |
| Daniel M. Rabinovitz<br>Brady J. Hermann<br>Nicki Samson<br>Michaels, Ward & Rabinovitz<br>One Beacon Street , 2nd Floor<br>Boston, MA 02108<br><br>*Attorneys for Defendant Medical Sales Management, Inc.* | John P. Ryan<br>Robert H. Gaynor<br>William J. Dailey, Jr.<br>Sloane and Walsh, LLP<br>Three Center Plaza<br>Boston, MA 02108<br><br>*Attorneys for Gregory Conigliaro, Registered Agent for Service of Process for Medical Sales Management SW, Inc.* |

| | |
|---|---|
| Joseph P. Thomas<br>Ulmer & Berne, LLP<br>600 Vine Street, Suite 2800<br>Cincinnati, OH 45202<br><br>Joshua A. Klarfeld<br>Ulmer & Berne, LLP<br>1660 W.2nd Street, Suite 1100<br>Cleveland, OH 44113<br><br>*Attorneys for Defendant*<br>*GDC Properties Management, LLC* | Kenneth B. Walton<br>Kristen R. Ragosta<br>Donovan Hatem, LLP<br>Two Seaport Lane, 8th Floor<br>Boston, MA 02210<br><br>*Attorneys for Defendant*<br>*ARL Bio Pharma* |
| John P. Ryan<br>Robert H. Gaynor<br>William J. Dailey, Jr.<br>Sloane and Walsh, LLP<br>Three Center Plaza<br>Boston, MA 02108<br><br>*Attorneys  for Defendants Barry J. Cadden,*<br>*Lisa Conigliaro Cadden, Gregory Conigliaro,*<br>*Carla Conigliaro, Douglas Conigliaro and*<br>*Glenn A. Chin*<br><br>Bruce A. Singal<br>Michelle R. Peirce<br>Callan G. Stein<br>Donague, Barrett & Singal, P.C.<br>One Beacon Street , Suite 1320<br>Boston, MA 02108<br><br>*Attorneys  for Defendants Barry J. Cadden and*<br>*Lisa Conigliaro Cadden* | Damian W. Wilmot<br>James Rehnquist<br>Abigail K. Hemani<br>Roberto M. Braceras<br>Goodwin Procter LLP<br>Exchange Place<br>53 State Street<br>Boston, MA 02109<br><br>*Attorneys for Unifirst Corporation*<br>*a/d/b/a Uniclean Cleanroom Services*<br><br>Parks Chastain<br>Jason Lee<br>Brewer,  Krause,  Brooks,  Chastain  &<br>Burrow, PLLC<br>611 Commerce St., Suite 2600<br>P.O. Box 23890<br>Nashville, TN  37202<br>615-256-8787<br>Fax:  615-256-8985<br><br>*Attorneys for Specialty Surgery*<br>*Center, Crossville, PLLC* |

| | |
|---|---|
| Frederick H. Fern<br>Judi Abbott Curry<br>Jessica Saunders Eichel<br>Alan M. Winchester<br>Harris Beach PLLC<br>100 Wall Street<br>23rd Floor<br>New York, NY 10005<br><br>Geoffrey M. Coan<br>Daniel E. Tranen<br>Hinshaw & Culbertson LLP<br>28 State Street<br>24th Floor<br>Boston, MA 02109<br><br>Michael R. Gottfried<br>Thomas B.K. Ringe, III<br>Jennifer Mikels<br>Duane Morris LLP<br>100 High Street<br>Suite 2400<br>Boston, MA 02110-1724<br><br>*Attorneys for NECC* | Marcy H. Greer<br>Alexander Dubose Jefferson &<br>Townsent<br>515 Congress Ave.<br>Suite 2350<br>Austin, TX 78701<br><br>Yvonne K. Puig<br>Eric Hoffman<br>Fulbright & Jaworski L.L.P.<br>98 San Jacinto Blvd.<br>Suite 1100<br>Austin, TX 78701<br><br>Sarah P. Kelly<br>Nutter, McClennen & Fish, LLP<br>Seaport West<br>155 Seaport Boulevard<br>Boston, MA 02210-2604<br><br>*Attorneys for the Saint Thomas*<br>*Entities* |

/s/ Chris J. Tardio
**Chris J. Tardio**

# EXHIBIT B

**Logged Formula Worksheet** (standard)
5/21/2012 9:58:08 AM
Page 1

NEW ENGLAND COMPOUNI
697 WAVERLY ST.
697 WAVERLY ST.
FRAMINGHAM, MA 01702 Ph

| N | ___ 17.125 g - 7 |
| N | ___ 82.378 g - 6 |
| N | ___ 28.503 g - 3 |
| N | ___ 352.501 g - 2 |

Log ID: 229933

METHYLPRED. AC (PF) 80MG/ML INJECTABLE

Flavor:
Description:
**Quantity made:** 12500 ML

Schedule: L

**Batch yield:** 12,500.000   **PCCA ID:**
**Qty remaining:** 12,500.000   Route of admin:

Date made: 5/21/2012
Lot number: 05212012@68
Beyond use date: November 17, 2012      9:57 AM
180 days after compounding date
Pharmacist: GC
Technician: JOSEPH P CONNOLLY
NDC1:
Packaging:
Equipment:

**Pricing calculations fr**
Estimated price    $9.
Ingredient cost    $0.
Device cost        $0.
Time cost          $0.
Profit

nccc

15c

05-11-12 A09:05 OUT

SB

nccc

Labeling: SHAKE WELL***SDV***
**Stability information:**

| Chemicals | Sch. | Quantity used | QS |
|-----------|------|---------------|-----|
| 1  METHYLPREDNISOLONE ACETATE USP (STERILE) PI | - | 1000 GM | ☑ |
| Lot #: 78740/A    Mfg: Medisca | | Exp. date: 4/30/2016 | |
| Chemical Code:    Volume:    Potency: | | QS amount: | |
| Balance:  8/13/A | | NDC: 49452-4688-02 | |
| 2  POLYETHYLENE GLYCOL 3350 NF (STERILE) BASE | - | 352.5 GM | ☐ |
| Lot #: 77089/A    Mfg: MEDISCA | | Exp. date: 2/28/2014 | |
| Chemical Code:    Volume:    Potency: | | QS amount: | |
| Balance: | | NDC: | |
| 3  SODIUM CHLORIDE (STERILE) GRANUALE | - | 28.5 GM | ☐ |
| Lot #: 11020203    Mfg: MEDISCA | | Exp. date: 11/10/2013 | |
| Chemical Code:    Volume:    Potency: | | QS amount: | |
| Balance: | | NDC: 51927108700 | |
| 4  WATER FOR INJECTION INJ | - | 12500 ML | ☒ |
| Lot #: J2B670    Mfg: BRAUN | | Exp. date: 8/31/2014 | |
| Chemical Code:    Volume:    Potency: | | QS amount: | |
| Balance: | | NDC: 00409488799 | |
| 5  POLYSORBATE 80 (STERILE) LIQUID | O | 47.5 ML | ☐ |
| Lot #: 79814/C    Mfg: MEDISCA | | Exp. date: 8/31/2013 | |
| Chemical Code:    Volume:    Potency: | | QS amount: | |
| Balance: | | NDC: | |
| 6  SODIUM PHOSPHATE MONOBASIC (STERILE) POWDI | - | 82.375 GM | ☐ |
| Lot #: 11010925    Mfg: LETCO | | Exp. date: 8/11/2013 | |
| Chemical Code:    Volume:    Potency: | | QS amount: | |
| Balance: | | NDC: | |
| 7  SODIUM PHOSPHATE DIBASIC (STERILE) POWDER | - | 17.125 GM | ☐ |
| Lot #: G140892    Mfg: PCCA | | Exp. date: 8/4/2012 | |
| Chemical Code:    Volume: JT Beker   Potency: | | QS amount: 05-31-14 | |
| Balance:  K 32473 | | NDC: | |

|  | | Whlsr: MEDISCA | $7,755.00  07/21/2005 |
|  | | | AWP:   $0.00 |
|  | | | Each ML contains 0.0282 GM or 2.02% |
|  | | | ChemInvID: 0 |
|  | | Whlsr: MEDISCA | $0.56   04/02/2012 |
|  | | | AWP:   $5.13 |
|  | | | Each ML contains 0.00228 GM or 0.228% |
|  | | | ChemInvID: 0 |
|  | | Whlsr: BRAUN | $25,000.00  08/17/2005 |
|  | | | AWP:   $61.13 |
|  | | | Each ML contains 1 ML or 100% |
|  | | | ChemInvID: 300 |
|  | | Whlsr: MEDISCA | $0.00   04/02/2009 |
|  | | | AWP:   $0.00 |
|  | | | Each ML contains 0.0038 ML or 0.38% |
|  | | | ChemInvID: 170 |
|  | | Whlsr: PROFESSIONAL COMPOUN | $82.38  09/30/2008 |
|  | | | AWP:   $0.00 |
|  | | | Each ML contains 0.00659 GM or 0.659% |
|  | | | ChemInvID: 0 |
|  | | Whlsr: PROFESSIONAL COMPOUN | $0.00   11/01/2011 |
|  | | | AWP:   $0.00 |
|  | | | Each ML contains 0.00137 GM or 0.137% |
|  | | | ChemInvID: 289 |

(Added all GM & GMS: 1,480.50)                   $32,837.94

*Log Instructions & Notes*

Originally made as: 12500 METHYLPRED. AC (PF) 80MG/ML INJECTABLE
Calculated lot number: 05212012@68  Beyond use date: 11/17/2012
FORMULA INSTRUCTIONS:

ZEBRA BAR CODES:
99600010504 - 1mL VIAL
99600020504 - 2mL VIAL
99600050504 - 5mL VIAL

Date entered: 5/21/2012 9:57:45 AM   Last modified: 5/21/2012 9:58:06 AM   by: LAB
Checked by: _____   Date: _____

Confidential - Subject to Protective Order

NECC_MDL000005160

```
MODEL No. MLS-3381

OPERATION DATE 2012/06/21
        TIME PM 08:45:12

COURSE    1

        CYCLE STARTED

TIME     TEMP    PRESS   STATUS
ELAPSED  CENT.   kPa     CYCLE

00:11:58 090.0    14     HEAT
00:13:59 100.0    24     HEAT
00:22:01 106.4    30     HEAT

00:25:25 121.0   104     STERI.
00:27:25 121.8   110     STERI.
00:29:25 121.8   111     STERI.
00:31:25 121.6   109     STERI.
00:33:25 121.7   111     STERI.
00:35:25 121.7   111     STERI.
00:37:25 121.6   110     STERI.
00:39:25 121.7   112     STERI.

00:40:29 121.7   112     COOL

01:14:15 064.9     5     COMPLETE

START TIME PM 08:45:12
END TIME   PM 09:59:27
```

Confidential - Subject to Protective Order

NECC_MDL000005161

**Logged Formula Worksheet** (standard)
6/29/2012 9:06:36 AM
Page 1

|||||| LG235896

NEW ENGLAND COMPOUND
697 WAVERLY ST.
697 WAVERLY ST.
FRAMINGHAM, MA 01702 P

N    +    352.504  g
N    +    28.506   g
N    +    82.376   g
N    +    17.125   g

Formula ID: 2228        06-29-2012
Log ID: 235896

**METHYLPRED. AC (PF) 80MG/ML INJECTABLE**

Flavor:
Description:                                                    Schedule: L
Quantity made: 12500 ML          Batch yield: 12,500.000        PCCA ID:
                                  Qty remaining: 12,500.000      Route of admin:

15L

Date made: 6/29/2012
Lot number: 06292012@26                    *Pricing calculations from t*
Beyond use date: December 26, 2012          9:06 AM    Estimated price   $9.00 as
                180 days after compounding date        Ingredient cost   $0.00
Pharmacist:  GC                                        Device cost       $0.00
Technician:  <NONE>                                    Time cost
NDC1:                                                  Profit
Packaging:                                                              *necc*
Equipment:

SB
06-27-12 A11:41 OUT

Labeling: SHAKE WELL***SDV***
Stability information:

teflon

| Chemicals | Sch. | Quantity used | QS (B |
|---|---|---|---|
| 1  METHYLPREDNISOLONE ACETATE USP (STERILE) P | - | 2x 500gm  1000 GM | ☐ Whls |
| Lot #: 78749/A            Mfg:              | | Exp. date: 4/30/2016 | |
| Chemical Code:     Volume:     Potency: | | QS amount: 01-30-17 | B |
| Balance: 82772/8       Medisca | | NDC: 49452-4988-02 | |
| 2  POLYETHYLENE GLYCOL 3350 NF (STERILE) BASE | - | 352.5 GM | Whlsr: MEDISCA |
| Lot #: 77089/A            Mfg: MEDISCA | | Exp. date: 2/28/2014 | |
| Balance:  Chemical Code:     Volume:     Potency: | | QS amount: | |
| 3  SODIUM CHLORIDE (STERILE) GRANUALE | - | 28.5 GM | Whlsr: MEDISCA |
| Lot #: 11020203          Mfg: MEDISCA | | Exp. date: 11/10/2014 | |
| Balance:  Chemical Code:     Volume:     Potency: | | QS amount: | |
| 4  WATER FOR INJECTION INJ | | 12500 ML | ☒ Whlsr: BRAUN |
| Lot #: J2A488            Mfg: BRAUN | | Exp. date: 7/31/2014 | |
| Balance:  Chemical Code:     Volume:     Potency: | | QS amount: | |
| 5  POLYSORBATE 80 (STERILE) LIQUID | O | 47.5 ML | Whlsr: MEDISCA |
| Lot #: 79814/C           Mfg: MEDISCA | | Exp. date: 8/31/2013 | |
| Balance:  Chemical Code:     Volume:     Potency: | | QS amount: | |
| 6  SODIUM PHOSPHATE MONOBASIC (STERILE) POWDI | - | 82.375 GM | Whlsr: PROFESSIONAL COMPOUN |
| Lot #: 1010925          Mfg: LETCO | | Exp. date: 8/11/2013 | |
| Balance:  Chemical Code:     Volume:     Potency: | | QS amount: | |
| 7  SODIUM PHOSPHATE DIBASIC (STERILE) POWDER | | 17.125 GM | Whlsr: PROFESSIONAL COMPOUN |
| Lot #: C140092          Mfg: PCCA | | Exp. date: 8/1/2013  8-31-2013 | |
| Balance: K32473          BAKER   S2T2 | | | |

Estimated price / AWP details (right column):

$7,755.00  07/21/2005
Each ML contains 0.0282 GM or 2.82%    ChemInvID: 0

$0.56  04/02/2012
Each ML contains 0.00228 GM or 0.226%    $8.13
ChemInvID: 0

$25,000.00  06/17/2005
Each ML contains 1 ML or 100%    $61.13
ChemInvID: 300

$0.00  04/27/2009
Each ML contains 0.0038 ML or 0.38%
ChemInvID: 170

$82.38  09/30/2008
Each ML contains 0.00659 GM or 0.659%
ChemInvID: 0

$0.00  11/01/2011
Each ML contains 0.00137 GM or 0.137%    $0.00
ChemInvID: 289

(Added all GM & GMS: 1,480.50)          $32,837.94

**Log Instructions & Notes**

Originally made as: 12500 METHYLPRED. AC (PF) 80MG/ML INJECTABLE
Calculated lot number: 06292012@26  Beyond use date: 12/26/2012
FORMULA INSTRUCTIONS:

Lot # -1070553
EXP - APR'17'

ZEBRA BAR CODES:
99600010504 - 1mL VIAL       pKe 50/0.9pm    S25 (Q)   HT=60'
99600020504 - 2mL VIAL
99600050504 - 5mL VIAL

Date entered: 6/29/2012 9:06:22 AM     Last modified: 6/29/2012 9:06:34 AM     by: LAB
Checked by: _____    Date: 6-29-12

Confidential - Subject to Protective Order

NECC_MDL000005167

*BASE Beaker*

△nεεc

06-22-12 P 03:05 OUT

*BASE $S_0 B_0$*

MODEL No. NLS-3781

OPERATION DATE 2012/06/30
          TIME PM 08:01:18

COURSE    1

        CYCLE STARTED

| TIME ELAPSED | TEMP CENT. | PRESS kPa | STATUS CYCLE |
|---|---|---|---|
| 00:09:53 | 090.0 | 6 | HEAT |
| 00:13:28 | 100.0 | 23 | HEAT |
| 00:21:30 | 101.5 | 10 | HEAT |
| 00:25:41 | 121.0 | 104 | STERI. |
| 00:27:41 | 121.8 | 110 | STERI. |
| 00:29:41 | 121.8 | 110 | STERI. |
| 00:31:41 | 121.8 | 110 | STERI. |
| 00:33:41 | 121.8 | 110 | STERI. |
| 00:35:41 | 121.8 | 112 | STERI. |
| 00:37:41 | 121.7 | 112 | STERI. |
| 00:39:41 | 121.6 | 111 | STERI. |
| 00:40:46 | 121.6 | 114 | COOL |
| 01:15:00 | 064.9 | 4 | COMPLETE |

START TIME PM 08:01:18
END TIME  PM 09:16:18

NECC_MDL000005168

**Logged Formula Worksheet** (standard)
6/29/2012 9:06:36 AM
Page 2



NEW ENGLAND COMPOUNDING CTR
697 WAVERLY ST.
697 WAVERLY ST.
FRAMINGHAM, MA 01702  Ph. 800-994-6322

METHYLPRED. AC (PF) 80MG/ML INJECTABLE

Flavor:
Description:
Quantity made: 12500 ML

Schedule: L                     Active ☑
                        Formula ID: 2228
Batch yield: 12,500.000       PCCA ID:              Log ID: 235896
Qty remaining: 12,500.000     Route of admin:

12/09/09 POLYSORBATE-80 DOUBLED FROM 0.194ML/100ML TO 0.38ML/100ML GC

MATERIALS: STERILE BEAKER, STERILE SPIN BAR, STERILE HOMOGENIZER ELEMENT
    medisca 500gm plastic bottle weighs 98gms, plastic seal ring weighs 0.7gms
    medisca 1kg plastic bottle weighs 145gms, WITH TOP
1) WEIGH CHEMICALS IN STERILE WEIGH CUPS ON ELECTRONIC ANALYTICAL BALANCE
2) IN HOOD DISSOLVE BASE-B, SODIUM PHOSPHATE MONOBASIC, SODIUM PHOSPHATE DIBASIC, SODIUM
CHLORIDE, AND POLYSORBATE -80 IN VORTEX OF 80% FINAL VOLUME OF STERILE WATER.FILTER SOLUTION
THROUGH A 0.22MICRON NALGENE FILTER.
3) SLOWLY ADD METHYLPREDNISOLONE ACETATE TO VORTEX OF ABOVE SOLUTION.
4) HOMOGENIZE AT HIGH SPEED FOR 2-5 MINUTES (VOLUME DEP.)
5) QS TO FINAL VOLUME WITH STERILE WATER FOR INJECTION.
6) COVER WITH MULTIPLE LAYERS OF FOIL AND SEAL WITH AUTOCLAVE INDICATOR TAPE
7) AUTOCLAVE AT 121C-15PSI-20MIN
####SPRAY EXTERIOR OF SEALED BEAKER WITH 70% IPA####
8) RETURN TO HOOD AND REHOMOGENIZE. CREATE VORTEX AND ALLOW TO SOIN TILL COOLED TO ROOM
TEMP.
9) FILL STERILE AMBER VIALS USING BAXA REPEATER PUMP VIA DISPOSABLE STERILE TUBING
10) CAP ,CRIMP, AND LABEL

####PULL RANDOM VIALS FOR APPROPRIATE ANALYSIS####

Date entered: 6/29/2012 9:06:22 AM    Last modified: 6/29/2012 9:06:34 AM    by: LAB
Checked by: _____    Date: ___/___/___

Confidential - Subject to Protective Order

NECC_MDL000005169

**Logged Formula Worksheet** (standard)
8/10/2012 2:43:06 PM
Page 1

LG242264

NEW ENGLAND COMPOUN
697 WAVERLY ST.
697 WAVERLY ST.
FRAMINGHAM, MA 01702

N   →  352.506  g
N   →  28.501   g
N   →  82.377   g
N   →  17.129   g

PB-10-3012

Active ☑
Formula ID: 2228

METHYLPRED. AC (PF) 80MG/ML INJECTABLE

| | |
|---|---|
| Flavor: | Schedule: L |
| Description: | |

**Quantity made:** 12500 ML

Batch yield: 12,500.000
Qty remaining: 12,500.000

**PCCA ID:**
Route of admin:

136

Date made: 8/10/2012
Lot number: 08102012@51
Beyond use date: February 6, 2013                2:42 PM
180 days after compounding date
Pharmacist: GC
Technician: JOSEPH P CONNOLLY
NDC:
Packaging:
Equipment:

*Pricing calculations from the lo*
| | |
|---|---|
| Estimated price | $9.00 as of |
| Ingredient cost | $0.00 |
| Device cost | $0 |
| Time cost | $0 |
| Profit | $9 |

SB

08-07-12 A11:12 OUT

Labeling: SHAKE WELL***SDV***

Stability information:

08-29-12 A11:24 OUT

| Chemicals | Sch. | Quantity used | QS | (Balance) | | | |
|---|---|---|---|---|---|---|---|
| METHYLPREDNISOLONE ACETATE USP (STERILE) P(- 2 × 500 gu = 1000 GM | | | ☐ | Whlsr: | | | |
| Lot #: 78740/A   Mfg: | | QS amount: | | Each | | | |
| Chemical Code:   81/13/C + 80494/B   Medisca   09-30-16 + NDC: 48452-4688-02 | | 09-30-16 | | | | | |
| POLYETHYLENE GLYCOL 3350 NF (STERILE) BASE - | | 352.5 GM | ☐ | Whlsr: | | | |
| Lot #: 76985/A   Mfg: MEDISCA   Exp. date: 8/31/2013 | | | | Each M | | | |
| Balance:   Chemical Code:   Volume:   Potency: | | QS amount: | | ChemInvID: 0 | | | |
| SODIUM CHLORIDE (STERILE) GRANUALE | | 28.5 GM | ☐ | $0.56   4/2/2012 | | | |
| Lot #: 11020203   Mfg: MEDISCA   Exp. date: 11/10/2013 | | | | Whlsr: MEDISCA   AWP:   $5.13 | | | |
| Balance:   Chemical Code:   Volume:   Potency: | | QS amount: | | Each ML contains 0.00228 GM or 0.228% | | | |
| | | | | NDC: 51927108700   ChemInvID: 0 | | | |
| WATER FOR INJECTION INJ | | 12500 ML | ☒ | $25,000.00   6/17/2005 | | | |
| Lot #: J2B670   Mfg: BRAUN   Exp. date: 8/31/2014 | | | | Whlsr: BRAUN   AWP:   $61.13 | | | |
| Balance:   Chemical Code:   Volume:   Potency: | | QS amount: | | Each ML contains 1 ML or 100% | | | |
| | | | | NDC: 00409488799   ChemInvID: 300 | | | |
| POLYSORBATE 80 (STERILE) LIQUID | | O | 47.5 ML | ☐ | $0.00   4/2/2009 | | |
| Lot #: 79814/C   Mfg: MEDISCA   Exp. date: 8/31/2013 | | | | Whlsr: MEDISCA   AWP:   $0.00 | | | |
| Chemical Code:   Volume:   Potency: | | QS amount: | | Each ML contains 0.0038 ML or 0.38% | | | |
| | | | | NDC:   ChemInvID: 170 | | | |
| SODIUM PHOSPHATE MONOBASIC (STERILE) POWDI - | | 82.375 GM | ☐ | $82.38   9/30/2008 | | | |
| Lot #: 11010925   Mfg: LETCO   Exp. date: 8/11/2013 | | | | Whlsr: PROFESSIONAL COMPOUN | | | |
| | | | | Each ML contains 0.00659 GM or 0.659% | | | |
| | | | | ChemInvID: 0 | | | |
| SODIUM PHOSPHATE DIBASIC (STERILE) POWDER | | 17.125 GM | ☐ | $0.00   11/1/2011 | | | |
| Lot #: C140892   Mfg: PCCA   Exp. date: 8/7/2013 | | | | Whlsr: PROFESSIONAL COMPOUN | | | |
| Balance:   K39H00   Volume: J.T.   08-31-7013 | | QS amount: | | Each ML contains 0.00137 GM or 0.137% | | | |
| | BAKER | | NDC: | ChemInvID: 289 | | | |

(Added all GM & GMS: 1,480.50)                $32,837.94

**Log Instructions & Notes**

Originally made as: 12500 METHYLPRED. AC (PF) 80MG/ML INJECTABLE
Calculated lot number: 08102012@51  Beyond use date: 2/6/2013
FORMULA INSTRUCTIONS:

ZEBRA BAR CODES:
99600010504 - 1mL VIAL
99600020504 - 2mL VIAL
99600050504 - 5mL VIAL

1L Methylpred.
10 71293-Lot#
Exp - APR'17

pH = 5w/ pepow   spec = 72'   sys (8)

Date entered: 8/10/2012 2:42:54 PM     Last modified: 8/10/2012 2:43:04 PM     by: LAB
Checked by:                                                      Date: 08/30/2012

Confidential - Subject to Protective Order

NECC_MDL000013151

# EXHIBIT C

Policies & Procedures for Compounding Sterile Products

New England Compounding Center
General Overview of
Policies & Procedures for Compounding Sterile Products

A. Facility/Equipment

    a. Class 10,000 clean room – positive pressure with anteroom for scrubbing & gowning

    b. Class 100 laminar flow hood

    c. Certified by Massachusetts Board of Pharmacy (Tel: 617.727.9953) as a pharmacy with a central venous admixture service (CIVAS) in accordance with Board Regulations

B. Monitoring & Maintenance

    a. Hood validated on yearly basis by Scientific Air Analysis, Inc. of Ashland, MA.  Tel: 508-881-7100

    b. Prefilters changed on monthly basis

    c. Clean room area is cleaned on a weekly basis – floor/walls/fixtures

        A. Sodium hypochlorite 0.5%

        B. 70% isopropyl alcohol

        C. Tightly woven non-shedding wipes

    d. Compounding area is cleaned (all surfaces) using 70% isopropyl alcohol and non-shedding wipes before and after all compounding procedures using proper technique.

Mass BOP-00743

## Policies & Procedures for Compounding Sterile Products

E.  Use by Dating

Each vial is labeled with a use-by date appropriate to the formulation.

F.  Packaging

Compounded preparations are packaged in containers meeting USP standards.  Container used depends on the physical and chemical properties of the compounded preparation.

G.  Dispensing

Product is dispensed by prescription only.  There must be a specific practitioner-patient-pharmacist relationship to dispense to an individual patient or a facility.

H.  Shipping

Medications are shipped overnight (usually FedEx) in a appropriate container to ensure controlled temperatures and product integrity.

Revised Nov 2002

Mass BOP-00745

# EXHIBIT D



# ANALYTICAL RESEARCH LABORATORIES

840 RESEARCH PARKWAY, SUITE 546
OKLAHOMA CITY, OK 73104
PHONE (405) 271-1144
FAX (405) 271-1174

# Certificate Of Analysis

**CLIENT:**  New England Compounding Center-MA

**ARL #:**  176896-01
**LOT #:**  05212012@68
**DESCRIPTION:**  Methylprednisolone AC (PF) 80 mg/mL Injection
**DATE RECEIVED:**  05/22/2012
**STORAGE:**  20°C to 25°C (68°F to 77°F)
**CONTAINER:**  Two 5 mL amber vials

| Analyte / Specifications | Expected Amount | Units | Results | % Of EXP. | Test Method | Date Tested |
|---|---|---|---|---|---|---|
| Methylprednisolone Acetate Specifications = 90% - 110% | 80 | mg/mL | 83.604 | 104.5% | HPLC | 5/23/2012 |

_____                    05/24/2012
alex tang - Laboratory Supervisor                    Date Reported                    *ARL Form QUF-078-V4 03/05/2010*

*Results reported above relate only to the sample that was tested.*
Page 1 of 2

Confidential - Subject to Protective Order



# ANALYTICAL RESEARCH LABORATORIES

840 RESEARCH PARKWAY, SUITE 546
OKLAHOMA CITY, OK 73104
PHONE (405) 271-1144
FAX (405) 271-1174

# Microbiology Report

CLIENT:   New England Compounding Center-MA

ARL #:      176896-01
LOT #:      05212012@68
DESCRIPTION:      Methylprednisolone AC (PF) 80 mg/mL Injection
DATE RECEIVED:   05/22/2012
STORAGE:      20°C to 25°C (68°F to 77°F)
CONTAINER:   Two 5 mL amber vials

| ANALYSIS | Limits | Results | Test Method | Date Tested |
|---|---|---|---|---|
| Sterility | Sterile / Not Sterile | Sterile | USP 71 | 05/22/2012 |
| Endotoxin | 6.25 EU/mg | <0.05 EU/mg | USP 85 | 05/23/2012 |

_____          06/05/2012

Amar Arafat - Microbiologist                        Date Reported

_Sterility - 14 day sterility report. In accordance with the USP guidelines, the samples will be incubated for 14 days._

_Results reported above relate only to the sample that was tested._

Page 1 of 2                                                         _ARL Form QUF-078-V4 03/05/2010_

Confidential - Subject to Protective Order

NECC_MDL000005163



# ANALYTICAL RESEARCH LABORATORIES

840 RESEARCH PARKWAY, SUITE 546
OKLAHOMA CITY, OK 73104
PHONE (405) 271-1144
FAX (405) 271-1174

# Microbiology Report

CLIENT:    New England Compounding Center-MA

ARL #:    176896-01
LOT #:    05212012@68
DESCRIPTION:    Methylprednisolone AC (PF) 80 mg/mL Injection
DATE RECEIVED:    05/22/2012
STORAGE:    20°C to 25°C (68°F to 77°F)
CONTAINER:    Two 5 mL amber vials

| ANALYSIS | Limits | Results | Test Method | Date Tested |
|---|---|---|---|---|
| Sterility (*Preliminary*) | Sterile / Not Sterile | Sterile | USP 71 | 05/22/2012 |
| Endotoxin | 6.25 EU/mg | <0.05 EU/mg | USP 85 | 05/23/2012 |

*Sterility - This preliminary report was issued after approximately 72 hours of incubation. In accordance with the USP guidelines, the samples will be incubated for 14 days; if there is any change in the sample a supplemental report will be issued.*

*Fungal - This preliminary report was issued after 4-5 days of incubation. In accordance with the USP guidelines, the samples will be incubated for 14 days; if there is any change in the sample a supplemental report will be issued.*

*Endotoxin - To calculate the endotoxin limit use the following formulas: EL = K/M where K = tolerance limit (EU/kg) and M = Maximum dose/kg/hour or Maximum dose/kg*
*Parenteral: K is 5 EU/kg for any route of administration /Intrathecal: K is 0.2 EU/kg body weight)*
*Radiopharmaceutical parenteral: K is 175/V or Intrathecal radiopharmaceuticals: K is 14/V, where V is the maximum recommended dose in mL.*
*Dermal Application: K/M, where K = 5 EU/kg and M is the (maximum dose/m2/hour × 1.80 m2)/70 Kg.*

_signature: Amar Arafat_                          05/25/2012

Amar Arafat - Microbiologist                     Date Reported               *ARL Form QUF-078-V4 03/05/2010*

*Results reported above relate only to the sample that was tested.*
Page 2 of 2

Confidential - Subject to Protective Order



# ANALYTICAL RESEARCH LABORATORIES

840 RESEARCH PARKWAY, SUITE 546
OKLAHOMA CITY, OK 73104
PHONE (405) 271-1144
FAX (405) 271-1174

# Certificate Of Analysis

CLIENT:   New England Compounding Center-MA

ARL #:   180509-01
LOT #:   06292012@26
DESCRIPTION:   Methylprednisolone AC (PF) 80 mg/mL Injection
DATE RECEIVED:   07/03/2012
STORAGE:   20°C to 25°C (68°F to 77°F)
CONTAINER:   Two 5 mL amber vials

| Analyte / Specifications | Expected Amount | Units | Results | % Of EXP. | Test Method | Date Tested |
|---|---|---|---|---|---|---|
| Methylprednisolone Acetate Specifications = 90% - 110% | 80 | mg/mL | 81.451 | 101.8% | HPLC | 7/5/2012 |

_____          07/05/2012
Alex Tang - Laboratory Supervisor          Date Reported          *ARL Form QUF-078-V4 03/05/2010*

*Results reported above relate only to the sample that was tested.*
Page 1 of 2

Confidential - Subject to Protective Order

NECC_MDL000005170



# ANALYTICAL RESEARCH LABORATORIES

840 RESEARCH PARKWAY, SUITE 546
OKLAHOMA CITY, OK 73104
PHONE (405) 271-1144
FAX (405) 271-1174

# Microbiology Report

CLIENT:   New England Compounding Center-MA

ARL #:   180509-01
LOT #:   06292012@26
DESCRIPTION:   Methylprednisolone AC (PF) 80 mg/mL Injection
DATE RECEIVED:   07/03/2012
STORAGE:   20°C to 25°C (68°F to 77°F)
CONTAINER:   Two 5 mL amber vials

| ANALYSIS | Limits | Results | Test Method | Date Tested |
|----------|--------|---------|-------------|-------------|
| Sterility | Sterile / Not Sterile | Sterile | USP 71 | 07/03/2012 |
| Endotoxin | 6.25 EU/mg | <0.05 EU/mg | USP 85 | 07/06/2012 |

Sample properties cause turbidity in growth media. Per USP 71; the sample will be inoculated into new growth media after 14 days of incubation and incubated for 4 additional days.

_(signature)_                                          07/17/2012

Amar Arafat - Microbiologist                    Date Reported

*Sterility - 14 day sterility report. In accordance with the USP guidelines, the samples will be incubated for 14 days.*

*Results reported above relate only to the sample that was tested.*
Page 1 of 1                                                                    *ARL Form QUF-078-V4 03/05/2010*

Confidential - Subject to Protective Order                    NECC_MDL000005171



# ANALYTICAL RESEARCH LABORATORIES

840 RESEARCH PARKWAY, SUITE 546
OKLAHOMA CITY, OK 73104
PHONE (405) 271-1144
FAX (405) 271-1174

# Microbiology Report

CLIENT:   New England Compounding Center-MA

ARL #:      180509-01
LOT #:      06292012@26
DESCRIPTION:   Methylprednisolone AC (PF) 80 mg/mL Injection
DATE RECEIVED:   07/03/2012
STORAGE:      20°C to 25°C (68°F to 77°F)
CONTAINER:    Two 5 mL amber vials

| ANALYSIS | Limits | Results | Test Method | Date Tested |
|---|---|---|---|---|
| Sterility (*Preliminary*) | Sterile / Not Sterile | Sterile | USP 71 | 07/03/2012 |
| Endotoxin | 6.25 EU/mg | <0.05 EU/mg | USP 85 | 07/06/2012 |

*Sterility - This preliminary report was issued after approximately 72 hours of incubation. In accordance with the USP guidelines, the samples will be incubated for 14 days; if there is any change in the sample a supplemental report will be issued.*

*Fungal - This preliminary report was issued after 4-5 days of incubation. In accordance with the USP guidelines, the samples will be incubated for 14 days; if there is any change in the sample a supplemental report will be issued.*

*Endotoxin - To calculate the endotoxin limit use the following formulas:  EL = K/M where K = tolerance limit (EU/kg) and M = Maximum dose/kg/hour or Maximum dose/kg*
*Parenteral: K is 5 EU/kg for any route of administration /Intrathecal: K is 0.2 EU/kg body weight)*
*Radiopharmaceutical parenteral: K is 175/V or Intrathecal radiopharmaceuticals: K is 14/V, where V is the maximum recommended dose in ml..*
*Dermal Application: K/M, where K = 5 EU/kg and M is the (maximum dose/m2/hour × 1.80 m2)/70 Kg.*

_Amar Arafat_

Amar Arafat - Microbiologist

07/06/2012

Date Reported

*ARL Form QUF-078-V4 03/05/2010*

*Results reported above relate only to the sample that was tested.*
Page 2 of 2

Confidential - Subject to Protective Order

NECC_MDL000005172



# ANALYTICAL RESEARCH LABORATORIES

840 RESEARCH PARKWAY, SUITE 546
OKLAHOMA CITY, OK 73104
PHONE (405) 271-1144
FAX (405) 271-1174

# Certificate Of Analysis

CLIENT:   New England Compounding Center
697 Waverly Street
Framingham, MA 01702

ARL #:   184460-01
LOT #:   08102012@51
DESCRIPTION:   Methylprednisolone AC (PF) 80 mg/mL Injection
DATE RECEIVED:   08/14/2012
STORAGE:   20°C to 25°C (68°F to 77°F)
CONTAINER:   Two 5 mL clear vials

| Analyte / Specifications | Expected Amount | Units | Results | % Of EXP. | Test Method | Date Tested |
|---|---|---|---|---|---|---|
| Methylprednisolone Acetate Specifications = 90% - 110% | 80 | mg/mL | 81.676 | 102.1% | HPLC | 8/15/2012 |

_____          08/15/2012
Alex Tang - Laboratory Supervisor                Date                    _ARL Form QUF-078-V4 03/05/2010_

_Results reported above relate only to the sample that was tested._
Page 1 of 2

Confidential - Subject to Protective Order          NECC_MDL000013152



# ANALYTICAL RESEARCH LABORATORIES

840 RESEARCH PARKWAY, SUITE 546
OKLAHOMA CITY, OK 73104
PHONE (405) 271-1144
FAX (405) 271-1174

# Certificate Of Analysis

CLIENT:   New England Compounding Center
697 Waverly Street
Framingham, MA 01702

ARL #:   184460-01
LOT #:   08102012@51
DESCRIPTION:   Methylprednisolone AC (PF) 80 mg/mL Injection
DATE RECEIVED:   08/14/2012
STORAGE:   20°C to 25°C (68°F to 77°F)
CONTAINER:   Two 5 mL clear vials

| Analyte / Specifications | Expected Amount | Units | Results | % Of EXP. | Test Method | Date Tested |
|---|---|---|---|---|---|---|
| Methylprednisolone Acetate Specifications = 90% - 110% | 80 | mg/mL | 81.676 | 102.1% | HPLC | 8/15/2012 |

_____   08/15/2012

Alex Tang - Laboratory Supervisor   Date   *ARL Form QUF-078-V4 03/05/2010*

*Results reported above relate only to the sample that was tested.*

Page 1 of 2

Confidential - Subject to Protective Order



# ANALYTICAL RESEARCH LABORATORIES

840 RESEARCH PARKWAY, SUITE 546
OKLAHOMA CITY, OK 73104
PHONE (405) 271-1144
FAX (405) 271-1174

# Microbiology Report

**CLIENT:**   New England Compounding Center

**ARL #:**   184460-01
**LOT #:**   08102012@51
**DESCRIPTION:**   Methylprednisolone AC (PF) 80 mg/mL Injection
**DATE RECEIVED:**   08/14/2012
**STORAGE:**   20°C to 25°C (68°F to 77°F)
**CONTAINER:**   Two 5 mL clear vials

| ANALYSIS | Limits | Results | Test Method | Date Tested |
|---|---|---|---|---|
| Endotoxin | 6.25 EU/mg | <0.05 EU/mg | USP 85 | 08/16/2012 |

Sample properties cause turbidity in growth media. Per USP 71, the sample will be inoculated into new growth media after 14 days of incubation and incubated for 4 additional days.

*Tiffany O. Hyde*

_____          08/17/2012

Tiffany Hyde - Microbiologist                 Date Reported

*Sterility – This preliminary report was issued after approximately 72 hours of incubation. In accordance with the USP guidelines, the sample will be incubated for 14 days; if there is any change in the sample a supplemental report will be issued.*

*Fungal – This preliminary report was issued after approximately 4 days of incubation. In accordance with the USP guidelines, the sample will be incubated for 14 days; if there is any change in the sample a supplemental report will be issued.*

*Endotoxin - To calculate the endotoxin limit use the following formulae:  EL = K/M where K = tolerance limit (EU/kg) and M = Maximum dose/kg/hour or Maximum dose/kg*
*Parenteral: K is 5 EU/kg for any route of administration /Intrathecal: K is 0.2 EU/kg body weight)*
*Radiopharmaceutical parenteral: K is 175/V or Intrathecal radiopharmaceuticals: K is 14/V, where V is the maximum recommended dose in mL.*
*Dermal Application: K/M, where K = 5 EU/kg and M is the (maximum dose/m2/hour × 1.80 m2)/70 kg.*

*Results reported above relate only to the sample that was tested.*

Page 1 of 1                                                              *ARL Form QUF-078-V5 08/20/2012*

Confidential - Subject to Protective Order



# ANALYTICAL RESEARCH LABORATORIES

840 RESEARCH PARKWAY, SUITE 546
OKLAHOMA CITY, OK 73104
PHONE (405) 271-1144
FAX (405) 271-1174

# Microbiology Report

CLIENT:   New England Compounding Center
697 Waverly Street
Framingham, MA 01702

ARL #:   184460-01
LOT #:   08102012@51
DESCRIPTION:   Methylprednisolone AC (PF) 80 mg/mL Injection
DATE RECEIVED:   08/14/2012
STORAGE:   20°C to 25°C (68°F to 77°F)
CONTAINER:   Two 5 mL clear vials

| ANALYSIS | Limits | Results | Test Method | Date Tested |
|---|---|---|---|---|
| Sterility | Sterile / Not Sterile | No Growth at 14 Days | USP 71 | 08/14/2012 |

Sample properties cause turbidity in growth media. Per USP 71, the sample will be inoculated into new growth media after 14 days of incubation and incubated for 4 additional days.

*Tiffany O. Hyde*

_____                    08/28/2012

Tiffany Hyde - Microbiologist                         Date Reported

*Sterility – 14 day sterility report. In accordance with the USP guidelines, the sample was incubated for 14 days.*
*Fungal – 14 day fungal report. In accordance with the USP guidelines, the sample was incubated for 14 days.*

*Results reported above relate only to the sample that was tested.*
Page 1 of 1                                          *ARL Form QUF-078-V5 08/20/2012*

Confidential - Subject to Protective Order

# EXHIBIT E

| | |
|---|---|
| **From:** | Barry Cadden </O=FIRST ORGANIZATION/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=BCADDEN> |
| **Sent:** | Wednesday, August 10, 2011 10:37 AM |
| **To:** | Glenn Chin <gchin@neccrx.com> |
| **Subject:** | |

What's the testing process for the large volume meds currently? I assumed that we have at least sterility testing for "all" lots of large volume injectable lots that we are dispensing but I am told that the lots for some drugs almost never coincide with the available test data. Is this true? You need to run like normal stock meds like beta repos = test  every lot and just fill as you go based on the size vial + # needed or make as many lots as you like "internally" but only label vials with lot# of tested lots to cover our ass =ex.. Avastin. I was told that we are only testing rarely and dispensing many untested lots? Please clear this up + tell me what we are doing + will do. Botton line is we can't be caught with our pants at our ankles....ever.

USAO00035783

| From: | Barry Cadden </O=FIRST ORGANIZATION/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=BCADDEN> |
| Sent: | Tuesday, May 22, 2012 1:50 PM |
| To: | Glenn Chin <gchin@neccrx.com> |
| Subject: | |

This situation is exactly why Scott must be swapped into a less dangerous position! We would be fucked if this was a cardio med!!!......

USAO00082077

| From: | Barry Cadden </O=FIRST ORGANIZATION/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=BCADDEN> |
|---|---|
| Sent: | Tuesday, August 7, 2012 9:16 AM |
| To: | Glenn Chin <gchin@neccrx.com> |
| Subject: | |

The "problem" CP order has my name as sign in for pump!....we need to get Scott out of that room or at least off the sign in by tomorrow. Have him be there , help, train...etc but someone else MUST sign in .....................I have no idea how I am going to explain this situation but it can't continue beyong today........see me later

thanks

USAO00083471

**From:** Barry Cadden
**Sent:** Tuesday, July 03, 2012 2:20 PM
**To:** Glenn Chin
**Subject:**

What's going on with the materials (mops..etc) for the Uniclean, cleaning people? How are they being handled?...I ask because we have another fungal bloom on June-28[th]=day of last cleaning. Are the pharmacists watching these idiots or sleeping? We need to keep an eye on them + make sure that the mops..etc are not contaminated. I am getting the film again so we can check it out......

USA200067868

# EXHIBIT F

| From: | Glenn Chin </O=FIRST ORGANIZATION/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=GCHIN> |
|---|---|
| Sent: | Monday, December 19, 2011 11:36 AM |
| To: | Barry Cadden <bcadden@neccrx.com>; Cory Fletcher <cfletcher@neccrx.com> |
| Subject: | RE: MTX |

We have about 1.25KG of MTX left. It's the old Spectrum bottles. When I say old I mean OLD, it expired in 2007 according to their sticker. We make it for our injectables and we send it out for testing and it comes out pretty close. We generally under QS the lot's we make. I would probably guess that it's at about 90 to 95% potent.

**From:** Barry Cadden
**Sent:** Monday, December 19, 2011 9:32 AM
**To:** Glenn Chin; Gene Svirskiy; Cory Fletcher
**Subject:** MTX

How much MTX powder to we have in house? I am hearing that there is another backorder of commercial inj. MTX + can't find a chemical co. who has any powder in stock

USAO00049156

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE:  NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | )  )  )  )  )  )  )  )  )  )  ) |

MDL No. 2419
Dkt. No. 1:13-md-2419-RWZ

This Document Relates to Suits Naming:

Suits Naming the Tennessee Clinic
Defendants

---

**THE TENNESSEE CLINIC DEFENDANTS'
FIRST INTERROGATORIES, REQUESTS FOR PRODUCTON OF DOCUMENTS,
AND REQUESTS FOR ADMISSION PROPOUNDED TO GLENN CHIN.**

---

Come the Defendants, Saint Thomas Outpatient Neurosurgical Center, LLC; Howell Allen Clinic, a Professional Corporation; John Culclasure, MD; Debra Schamberg, RN, CNOR; Vaughan Allen, MD; Specialty Surgery Center, Crossville, PLLC; Kenneth R. Lister, MD; Kenneth Lister, MD, PC; and Donald E. Jones, MD (collectively "Tennessee Clinic Defendants") , pursuant to Rules 26, 33, and 34 of the Federal Rules of Civil Procedure and the Local Rules for the District of Massachusetts, and propound the following Interrogatories, Requests for Production of Documents, and Requests for Admission to Glenn Chin.

Each of the following Interrogatories shall be answered under oath, in writing, separately, to the fullest possible detail, and in accordance with the definitions and instructions set forth below. The answers shall be signed by the person making them, and a copy of the answers, together with objections, if any, shall be served within thirty (30) days after the service date of these Interrogatories.

You are under a duty to seasonably supplement your response with respect to any Interrogatory directly addressed to the identity and location of persons having knowledge of discoverable matters. You are under a duty to amend a prior response if you obtain information on the basis of which you know that the response was incorrect when made, or that the response, though correctly made, is no longer true, and the circumstances are such that a failure to amend the response is, in substance, a knowing concealment.

## DEFINITIONS

1.    As used in this document, the terms "person(s)" and "individual(s)" mean any natural individual in any capacity whatsoever or any entity or organization, including divisions, departments, and other units therein, and shall include, but not be limited to, a public or private corporation, partnership, joint venture, voluntary or unincorporated association, organization, proprietorship, trust, estate, governmental agency, commission, bureau, or department.

2.    As used in this document, the term "document" means any medium upon which intelligence or information can be recorded or retrieved, and includes without limitation, the original and each copy, regardless of origin and location, of any book, pamphlet, periodical, letter, memorandum (including any memorandum or report of a meeting or conversation), invoice, bill, order form, receipt, financial statement, accounting entry, diary, calendar, telex, telegram, cable, report, record, contract, agreement, study, handwritten note, draft, working paper, chart, paper, print, laboratory record, drawing or sketch, graph, index, lists, tape, photograph, microfilm, data sheet or data processing card, or any other written, recorded, transcribed, punched, taped, filmed, or graphic matter, however produced or reproduced, which is in your possession, custody, or control, or which was, but is no longer, in your possession, custody, or control.

3.    As used in this document, the terms "identification," "identify," or "identity," when used in reference to a natural individual, require you to state his or her full name and residential and business address. Use of the term "document" in connection with the Interrogatories requires you to state the number of pages and the nature of the document, its title, its date, the name or names of its authors, and recipients, and its present location and custodian.

4.    "You" and "your" refers to Glenn Chin and each of his present and former agents, representatives, and employees, attorneys and accountants, and each person acting or purporting to act on his behalf.

5.    "Communication" means any oral or written utterance, notification, or statement of any nature whatsoever, by and to whomsoever made, including, but not limited to, correspondence, conversation, dialogue, discussions, interviews, consultants, and any other understanding between or among two or more persons.

2

**INSTRUCTIONS**

1.      With respect to each Interrogatory, in addition to answering the question, you are to identify all documents that support, refer to, or evidence the subject matter of each Interrogatory and your answer thereto.

If any or all identified documents are no longer in your possession, custody, or control because of destruction, loss, or any other reason, then you must do the following with respect to each and every document:

A.      Describe the nature of the document;

B.      State the date of the document;

C.      Identify the persons who sent and received the original and the copy of the document;

D.      State in as much detail as possible the contents of the documents; and

E.      State the manner and date of disposition of the document.

If you contend that you are entitled to withhold from production any or all documents identified herein on the basis of attorney-client privilege, the work-product doctrine, or any other ground, then do the following with respect to each and every document:

A.      Describe the nature of the document;

B.      State the date of the document;

C.      Identify the persons who sent and received the original and a copy of the document;

D.      State the subject matter of the document; and

E.      State the basis upon which you contend you are entitled to withhold the document from production.

2.      All documents produced should be organized and labeled to correspond to the specific Request in response to which they are being made available or should be produced as they are kept in the usual course of business.

3.      The terms "and," "or," and "and/or" should be construed either disjunctively or conjunctively so as to bring within the scope of these Interrogatories and Requests any information that might otherwise be construed as outside their scope.

4. The term "any" should be construed to include the word "all," and "all" should be construed to include "any."

5. The present tense should be construed to include the past tense, and the past tense should be construed to include the present tense.

6. The singular should be construed to include the plural, and the plural should be construed to include the singular.

7. The terms "he" and "his" should be construed to include the words "she" and "her" or "hers," respectively and vice versa.

8. "Relating to," when referring to a document shall mean mentioning, describing, connected to or with, or discussing the stated subject matter.

## INTERROGATORIES

On March 19, 2015, the Saint Thomas Entities sent their *First Set of Interrogatories, Requests for Production, and Requests for Admission to Glenn Chin.* In order to minimize the impact of discovery on Glenn Chin, these Tennessee Clinic Defendants **hereby adopt and incorporate, as if stated fully herein, Interrogatories 1-6** from the *Saint Thomas Entities' First Set of Interrogatories.* The "new" interrogatories begin at Number 7.

1-6.    [The Tennessee Clinic Defendants adopt and incorporate, as if stated fully herein, Interrogatories 1-11 from the *Saint Thomas Entities' First Set of Interrogatories.*]

**ANSWER:**

7.    Describe in detail your role at NECC and Ameridose, including job title, job description, and a description of your daily duties and activities in 2011 and 2012.

**ANSWER:**

8.    Describe in detail the steps NECC took to compound, process, stopper, seal, package, and ship methylprednisolone acetate ("MPA") in 2011 and 2012, including but not limited to:

a.    The names of the individuals performing each step;

b.    The job titles for the individuals performing each step;

c.    The specific cleanroom or location in NECC's facility where each step took place;

d.    The tools, equipment, or machinery used for each step;

e.    Any changes to NECC's methods or procedures for compounding MPA, or the location where compounding MPA took place, that occurred in 2011 or 2012.

**ANSWER:**

9.    Identify the total amount of MPA that NECC, and separately Ameridose, produced in each quarter of 2010, 2011, and 2012.

**ANSWER:**

10.    Identify the types of vials and closures NECC used for MPA lots numbered 052122012@68, 06292012@26, and 08102012@51 (collectively "Contaminated Lots"), including whether the vials and enclosures were prewashed or

presterilized, and identify their manufacturer(s) and from whom they were purchased by NECC.

**ANSWER:**

11. Identify any and all complaints that NECC and Ameridose received related to the sterility or safety of their products, including but not limited to complaints by customers, current and former employees, and state and federal government agencies.

**ANSWER:**

12. Identify any customers of NECC and Ameridose who performed site visits prior to placing orders with either company.

**ANSWER:**

13. Describe any policies, procedures, or protocols relating to or regarding customer site visits to the NECC facility, including the areas you allowed customers to inspect.

**ANSWER:**

14. Identify any customers who took the following actions prior to placing orders with NECC or Ameridose:

   a. Verified whether NECC's quality processes demonstrated that NECC was a reputable and safe supplier of sterile injectable compounds;

   b. Determined if NECC was an accredited compounding pharmacy;

   c. At least once annually, unannounced, visited NECC's corporate offices and compounding facilities and conferred with NECC's corporate, pharmacy, and compounding staff;

   d. Determined whether NECC had any product liability lawsuits filed against it for preparations compounded;

   e. Determined whether there had ever been recalls of any of NECC's compounded preparations;

   f. Evaluated NECC's standard operating procedures and manuals;

   g. Evaluated NECC's pharmacist technician training;

   h. Evaluated NECC's policies and procedures for sterility testing;

6

i. Evaluated examples of batch reports for product being considered for outsourcing;

j. Evaluated examples of quality-control reports;

k. Obtained and evaluated history of the results of all NECC accreditation or regulatory surveys conducted of NECC's sites, including copies of significant regulatory actions;

l. Determined if NECC could provide documentation of the end-product testing processes used to determine that compounded sterile preparations are sterile and free of pyrogens and unintended particulate matter;

m. Evaluated whether NECC could assure that each compounded sterile preparation was sterile and free of pyrogens and unintended particulate matter according to professional established and accepted quality monitoring data;

n. Determined whether NECC performed nonviable and viable particle testing in primary engineering controls (e.g., laminar flow workbench, biological safety cabinet) and room air according to USP chapter 797 standards;

o. Determined whether NECC performed routine surface microbiological and fungal environmental monitoring to minimize contamination;

p. Determined whether NECC had a policy that required validation of new or changed facilities, equipment, processes, or container types, for sterility and repeatability;

q. Determined whether NECC met ASHP, NIOSH and USP chapter 797 guidelines for the handling of hazardous agents;

r. Evaluated NECC's quality management program, specifically as it relates to facility cleaning and validation, staff training, and competency assessment;

s. Evaluated NECC's risk assessment program to ensure that medication errors are not introduced by new or increased outsourced compounding activities; or

t. Determined whether NECC had a history of disciplinary or punitive actions by any regulatory agency.

**ANSWER:**

15.   Describe any information you, NECC, or Ameridose provided to each customer in response to the inquiries identified in the previous Interrogatory.

   **ANSWER:**

16.   Identify any and all complaints NECC or Ameridose received related to their compliance with state or federal laws and regulations, including but not limited to complaints by customers, current and former employees, and state and federal government agencies.

   **ANSWER:**

17.   Identify and describe any way in which NECC's cleanrooms were modified, altered, or expanded by NECC or Ameridose.

   **ANSWER:**

18.   Identify any policies, procedures, or guidelines in place at NECC in 2012 that encouraged employees to disclose mistakes in the compounding process, even if the mistakes necessitated destruction of product or halting production.

   **ANSWER:**

19.   Describe all disciplinary or enforcement action taken against NECC or Ameridose by any state or federal government agency.

   **ANSWER:**

20.   Describe in detail Lisa Conigliaro Cadden's role at NECC in 2011 and 2012.

   **ANSWER:**

## VERIFICATION

**STATE OF TENNESSEE**                )
                                                          )
**COUNTY OF** _____  )

     I, _____, after being duly sworn, hereby make oath that the foregoing answers to interrogatories are true to the best of my knowledge, information, and belief.

_____

Sworn to and subscribed before me this _____ day of _____, 2015.

_____
                                                    **Notary Public**

My commission expires on: _____.

9

## REQUESTS FOR PRODUCTION

On March 19, 2015, the Saint Thomas Entities sent their *First Set of Interrogatories, Requests for Production, and Requests for Admission to Glenn Chin.* In order to minimize the impact of discovery on Glenn Chin, these Tennessee Clinic Defendants **hereby adopt and incorporate, as if stated fully herein, Requests for Production 1-39** from the *Saint Thomas Entities' First Requests for Production.* The "new" requests begin at Number 40.

1-39.  [The Tennessee Clinic Defendants adopt and incorporate, as if stated fully herein, Requests for Production 1-39 from the *Saint Thomas Entities' First Requests for Production.*]

**RESPONSE:**

40.  Produce all correspondence between you and any of the Tennessee Clinic Defendants, their employees, agents, or representatives.

**RESPONSE:**

41.  Produce all correspondence and documents referring or relating to the Tennessee Clinic Defendants' purchase of MPA from NECC in 2011 or 2012.

**RESPONSE:**

42.  Produce all documents produced by the government to you during any civil, criminal, or administrative proceedings related to NECC's contaminated MPA.

**RESPONSE:**

43.  Produce all policies, procedures, guidelines, instructions and training documents referring or relating to the compounding of MPA at the NECC facility.

**RESPONSE:**

44.  Produce all documents referring or relating to NECC or Ameridose sending sufficient samples, by size or volume, to comply with USP 71 to ARL or any other testing laboratory.

**RESPONSE:**

45.  Produce all documents referring or relating to any sterility, potency, endotoxin, or fungal testing that you received from ARL or any other laboratory related to MPA compounded by NECC or Ameridose in 2011 and 2012.

**RESPONSE:**

46.     Produce all correspondence and documents referring or relating to fungal blooms or growth in or near NECC's cleanrooms.

**RESPONSE:**

47.     Produce all documents referring or relating to any complaints that NECC or Ameridose received related to the sterility or safety of their products, including but not limited to complaints by customers, current or former employees, or state or federal government agencies.

**RESPONSE:**

48.     Produce all documents referring or relating to any complaints NECC or Ameridose received related to their compliance with state or federal laws and regulations, including but not limited to complaints by customers, current or former employees, or state or federal government agencies.

**RESPONSE:**

49.     Produce all correspondence and documents referring or relating to NECC's response to the meningitis outbreak, including but not limited to, steps NECC took to prepare for any inspections of its facility.

**RESPONSE:**

50.     Produce all training and instructional material for sales staff at NECC or MSM.

**RESPONSE:**

## REQUESTS FOR ADMISSION

On March 19, 2015, the Saint Thomas Entities sent their *First Set of Interrogatories, Requests for Production, and Requests for Admission to Glenn Chin.* In order to minimize the impact of discovery on Glenn Chin, these Tennessee Clinic Defendants **hereby adopt and incorporate, as if stated fully herein, Requests for Admission 1-17** from the *Saint Thomas Entities' First Requests for Admission.* The "new" requests begin at Number 18.

1-17.   [The Tennessee Clinic Defendants adopt and incorporate, as if stated fully herein, Requests for Admission 1-17 from the *Saint Thomas Entities' First Requests for Admission.*]

**ANSWER:**

18.   Admit that you compounded the MPA lots numbered 052122012@68, 06292012@26, and 08102012@51 (collectively "Contaminated Lots").

**ANSWER:**

19.   Admit that you supervised the compounding of MPA lots numbered 052122012@68, 06292012@26, and 08102012@51 (collectively "Contaminated Lots").

**ANSWER:**

20.   Admit that as a supervising pharmacist, you owed a duty to the Plaintiffs to ensure that NECC's cleanroom was sterile prior to compounding any medications, including MPA in 2012.

**ANSWER:**

21.   Admit that as a supervising pharmacist, you owed a duty to the Plaintiffs to ensure that the MPA you compounded was sterile before you distributed it to customers.

**ANSWER:**

21.   Admit that, had any of the Tennessee Clinic Defendants asked for a copy of NECC's license in 2011, you would have provided a valid and up-to-date Massachusetts pharmacy license.

**ANSWER:**

22.   Admit that NECC represented to its customers, including the Tennessee Clinic Defendants, that it met or exceeded USP 797 standards.

**ANSWER:**

23.   Admit that NECC represented to its customers, including the Tennessee Clinic Defendants, that its products, including MPA, were safe and sterile.

**ANSWER:**

24.   Admit that the Massachusetts Board of Pharmacy ("Mass. BoP") inspected NECC on or about May 24, 2011.

**ANSWER:**

25.   Admit that as a result of its inspection on or about May 24, 2011 the Mass. BoP issued an inspection report documenting its findings.

**ANSWER:**

26.   Admit that NECC failed to submit a copy of the Mass. BoP's May 24, 2011 inspection report to the Tennessee Board of Pharmacy.

**ANSWER:**

27.   Admit that the documents attached as Exhibit B are NECC's Logged Formula Worksheets for the Contaminated Lots.

**ANSWER:**

28.   Admit that in each Logged Formula Worksheet in Exhibit B, the pharmacist referred to as "GC" is Glenn Chin.

**ANSWER:**

29.   Admit that the Logged Formula Worksheet for lot 06292012@26, attached as Exhibit B, states that the MPA was autoclaved for twenty (20) minutes at 121 C. and 15 PSI.

**ANSWER:**

30.   Admit that NECC's Standard Operating Procedures required that the MPA be autoclaved for fifteen (15) minutes at 121 C. and 15 PSI.

**ANSWER:**

31.    Admit that the Logged Formula Worksheets in Exhibit B state that Joseph P. Connolly was the technician for MPA lots 052122012@68 and 06292012@26.

**ANSWER:**

32.    Admit that Exhibit C is NECC's General Overview of Policies & Procedures for Compounding Sterile Products.

**ANSWER:**

33.    Admit that Exhibit C states, in part:

C. Personnel
       a.     All sterile compounding is performed by properly trained and validated pharmacists (*no* technicians).

**ANSWER:**

34.    Admit that NECC violated its own standard operating procedures by permitting Joseph Connolly (a technician) to compound two of the three contaminated lots.

**ANSWER**

35.    Admit that you owed a duty to NECC's customers to ensure that NECC's MPA was sterile prior to distributing it.

**ANSWER:**

36.    Admit that NECC distributed some of the MPA from the Contaminated Lots prior to receiving final sterility, fungal, endotoxin, or potency testing results from its outside laboratory.

**ANSWER:**

37.    Admit that the documents attached as Exhibit D are reports from Analytical Research Laboratories ("ARL") related to the sterility and endotoxin testing ARL performed on NECC's MPA from the Contaminated Lots.

**ANSWER:**

38.    Admit that NECC submitted only two 5 mL vials of MPA from each of the Contaminated Lots to ARL for testing.

**ANSWER:**

39.   Admit that USP standards for sterility testing required a larger sample size than two 5 mL vials per lot of MPA.

**ANSWER:**

40.   Admit that USP 797 requires an ISO 5 space for stoppering vials of MPA.

**ANSWER:**

41.   Admit that NECC stoppered the Contaminated Lots in an ISO 7 space.

**ANSWER:**

42.   Admit that the documents attached as Exhibit E are true and accurate copies of emails you received from Barry Cadden in the normal course of NECC's business.

**ANSWER:**

43.   Admit that in the email you received from Barry Cadden on Wednesday, August 10, attached as Exhibit E, Barry Cadden stated, "I am told that the lots for some drugs almost never coincide with the available test data."

**ANSWER:**

44.   Admit that in the email you received from Barry Cadden on Wednesday, August 10, attached as Exhibit E, Barry Cadden stated, "I was told that we are only testing rarely and dispensing many untested lots."

**ANSWER:**

45.   Admit that Exhibit F is a true and accurate copy of an email you sent to Barry Cadden on Monday, December 19, 2011.

**ANSWER:**

46.   Admit that the email in Exhibit F was sent in the normal course of NECC's business.

**ANSWER:**

47.   Admit that in the email attached as Exhibit F, you indicated that you were using "MTX" that had expired in 2007 in NECC's injectable products in 2011.

**ANSWER:**

Respectfully submitted,

**GIDEON, COOPER & ESSARY, PLC**

/s/ Chris J. Tardio
**C.J. Gideon, Jr.***
**Chris J. Tardio***
**Alan S. Bean****
**Matthew H. Cline***
315 Deaderick Street, Suite
Nashville, TN 37238
Ph: (615) 254-0400
Fax: (515) 254-0459
chris@gideoncooper.com

***Attorneys for the Tennessee Clinic Defendants***

* Admitted pursuant to MDL Order No. 1.
** Admitted *pro hac vice*.

16

## CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of March, 2015, a true and accurate copy of the foregoing was served on Glenn Chin by U.S. mail and on the other parties below electronically via the Court's CM/ECF system:

| | |
|---|---|
| Gerard Stranch, IV<br>Ben Gastel<br>Branstetter, Stranch & Jennings, PLLC<br>227 2nd Ave N<br>Suite 400<br>Nashville, TN 37201<br><br>*Attorneys for the PSC*<br><br>[via hand-delivery, to upload to repository] | Matthew P. Moriarty<br>Thomas W. Coffey<br>Richard A. Dean<br>Tucker Ellis, LLP<br>950 Main Avenue, Suite 1100<br>Cleveland, OH 44113<br><br>Scott H. Kremer<br>Tucker, Heifetz & Saltzman<br>Three School Street<br>Boston, MA 02108<br><br>Scott J. Tucker<br>Paul Saltzman<br>Matthew E. Mantalos<br>Tucker, Saltzman & Dyer, LLP<br>50 Congress Street<br>Boston, MA 02109<br><br>*Attorneys for Defendant Ameridose, LLC* |
| Daniel M. Rabinovitz<br>Brady J. Hermann<br>Nicki Samson<br>Michaels, Ward & Rabinovitz<br>One Beacon Street , 2nd Floor<br>Boston, MA 02108<br><br>*Attorneys for Defendant Medical Sales Management, Inc.* | John P. Ryan<br>Robert H. Gaynor<br>William J. Dailey, Jr.<br>Sloane and Walsh, LLP<br>Three Center Plaza<br>Boston, MA 02108<br><br>*Attorneys for Gregory Conigliaro, Registered Agent for Service of Process for Medical Sales Management SW, Inc.* |

| | |
|---|---|
| Joseph P. Thomas<br>Ulmer & Berne, LLP<br>600 Vine Street, Suite 2800<br>Cincinnati, OH 45202<br><br>Joshua A. Klarfeld<br>Ulmer & Berne, LLP<br>1660 W.2nd Street, Suite 1100<br>Cleveland, OH 44113<br><br>*Attorneys for Defendant*<br>*GDC Properties Management, LLC* | Kenneth B. Walton<br>Kristen R. Ragosta<br>Donovan Hatem, LLP<br>Two Seaport Lane, 8th Floor<br>Boston, MA 02210<br><br>*Attorneys for Defendant*<br>*ARL Bio Pharma* |
| John P. Ryan<br>Robert H. Gaynor<br>William J. Dailey, Jr.<br>Sloane and Walsh, LLP<br>Three Center Plaza<br>Boston, MA 02108<br><br>*Attorneys  for Defendants Barry J. Cadden,*<br>*Lisa Conigliaro Cadden, Gregory Conigliaro,*<br>*Carla Conigliaro, Douglas Conigliaro and*<br>*Glenn A. Chin*<br><br>Bruce A. Singal<br>Michelle R. Peirce<br>Callan G. Stein<br>Donague, Barrett & Singal, P.C.<br>One Beacon Street , Suite 1320<br>Boston, MA 02108<br><br>*Attorneys  for Defendants Barry J. Cadden and*<br>*Lisa Conigliaro Cadden* | Damian W. Wilmot<br>James Rehnquist<br>Abigail K. Hemani<br>Roberto M. Braceras<br>Goodwin Procter LLP<br>Exchange Place<br>53 State Street<br>Boston, MA 02109<br><br>*Attorneys for Unifirst Corporation*<br>*a/d/b/a Uniclean Cleanroom Services*<br><br>Parks Chastain<br>Jason Lee<br>Brewer, Krause, Brooks, Chastain &<br>Burrow, PLLC<br>611 Commerce St., Suite 2600<br>P.O. Box 23890<br>Nashville, TN 37202<br>615-256-8787<br>Fax: 615-256-8985<br><br>*Attorneys for Specialty Surgery*<br>*Center, Crossville, PLLC* |

| | |
|---|---|
| Frederick H. Fern<br>Judi Abbott Curry<br>Jessica Saunders Eichel<br>Alan M. Winchester<br>Harris Beach PLLC<br>100 Wall Street<br>23rd Floor<br>New York, NY 10005<br><br>Geoffrey M. Coan<br>Daniel E. Tranen<br>Hinshaw & Culbertson LLP<br>28 State Street<br>24th Floor<br>Boston, MA 02109<br><br>Michael R. Gottfried<br>Thomas B.K. Ringe, III<br>Jennifer Mikels<br>Duane Morris LLP<br>100 High Street<br>Suite 2400<br>Boston, MA 02110-1724<br><br>*Attorneys for NECC* | Marcy H. Greer<br>Alexander Dubose Jefferson &<br>Townsent<br>515 Congress Ave.<br>Suite 2350<br>Austin, TX 78701<br><br>Yvonne K. Puig<br>Eric Hoffman<br>Fulbright & Jaworski L.L.P.<br>98 San Jacinto Blvd.<br>Suite 1100<br>Austin, TX 78701<br><br>Sarah P. Kelly<br>Nutter, McClennen & Fish, LLP<br>Seaport West<br>155 Seaport Boulevard<br>Boston, MA 02210-2604<br><br>*Attorneys for the Saint Thomas*<br>*Entities* |

/s/ Chris J. Tardio
**Chris J. Tardio**

# EXHIBIT B

**Logged Formula Worksheet** (standard)

5/21/2012 9:58:08 AM
Page 1

NEW ENGLAND COMPOUNI
697 WAVERLY ST.
697 WAVERLY ST.
FRAMINGHAM, MA 01702 Ph

LG229933

N — 17.125 g -7
N — 82.378 g -6
N — 28.503 g -3
N — 352.501 g -2

Log ID: 2299

METHYLPRED. AC (PF) 80MG/ML INJECTABLE

Flavor:
Description:
Quantity made: 12500 ML          Batch yield: 12,500.000          PCCA ID:
                                 Qty remaining: 12,500.000        Route of admin:

Schedule: L

Date made: 5/21/2012
Lot number: 05212012@68
Beyond use date: November 17, 2012          9:57 AM
                 180 days after compounding date

Pricing calculations fr
Estimated price     $9.
Ingredient cost     $0.
Device cost         $0.
Time cost           $0.
Profit

Pharmacist: GC
Technician: JOSEPH P CONNOLLY
NDC1:
Packaging:
Equipment:

05-11-12 A09:05 OUT

Labeling: SHAKE WELL***SDV***
Stability Information:

| | Chemicals | Sch. | Quantity used | QS | |
|---|---|---|---|---|---|
| 1 | METHYLPREDNISOLONE ACETATE USP (STERILE) P( - | | 1000 GM | ☑ | |
| | Lot #: 782401A          Mfg:          | | Exp. date: 4/30/2016 | | |
| | Chemical Code:          Volume: Medisca          Potency: | | QS amount: | | |
| | | | | | NDC: 49452-4688-02 |
| | Balance: 81113A | | | | $7,755.00 |
| 2 | POLYETHYLENE GLYCOL 3350 NF (STERILE) BASE | | 352.5 GM | ☐ | Whlsr: MEDISCA |
| | Lot #: 77089/A          Mfg: MEDISCA          | | Exp. date: 2/28/2014 | | AWP: $0.00 |
| | Chemical Code:          Volume:          Potency: | | QS amount: | | Each ML contains .0282 GM or 2.02%   ChemInvID: 0 |
| | Balance: | | | | NDC: |
| 3 | SODIUM CHLORIDE (STERILE) GRANUALE | | 28.5 GM | ☐ | Whlsr: MEDISCA |
| | Lot #: 11020203          Mfg: MEDISCA          | | Exp. date: 11/10/2013 | | $5.13 |
| | Chemical Code:          Volume:          Potency: | | QS amount: | | Each ML contains .00228 GM or 0.228%   ChemInvID: 0 |
| | Balance: | | | | NDC: 51927108700 |
| 4 | WATER FOR INJECTION  INJ | | 12500 ML | ☒ | Whlsr: BRAUN |
| | Lot #: J2B670          Mfg: BRAUN          | | Exp. date: 8/31/2014 | | AWP: $61.13 |
| | Chemical Code:          Volume:          Potency: | | QS amount: | | Each ML contains 1 ML or 100%   ChemInvID: 300 |
| | Balance: | | | | NDC: 00409486799 |
| 5 | POLYSORBATE 80 (STERILE) LIQUID | | 47.5 ML | | Whlsr: MEDISCA |
| | Lot #: 79814/C          Mfg: MEDISCA          | | Exp. date: 8/31/2013 | | AWP: $0.00 |
| | Chemical Code:          Volume:          Potency: | | QS amount: | | Each ML contains .0039 ML or 0.38%   ChemInvID: 0 |
| | Balance: | | | | NDC: |
| 6 | SODIUM PHOSPHATE MONOBASIC (STERILE) POWDI - | | 82.375 GM | ☐ | Whlsr: PROFESSIONAL COMPOUN |
| | Lot #: 11010925          Mfg: LETCO          | | Exp. date: 8/11/2013 | | AWP: $0.00 |
| | Chemical Code:          Volume:          Potency: | | QS amount: | | Each ML contains .00659 GM or 0.659%   ChemInvID: 0 |
| | Balance: | | | | NDC: |
| 7 | SODIUM PHOSPHATE DIBASIC (STERILE) POWDER | | 17.125 GM | ☐ | Whlsr: PROFESSIONAL COMPOUN |
| | Lot #: G140892          Mfg: PCCA          | | Exp. date: 8/4/2012 | | AWP: $0.00 |
| | Chemical Code:          Volume:          Potency: | | QS amount: | | Each ML contains .00137 GM or 0.137%   ChemInvID: 289 |
| | Balance: K32YB | | | | NDC: |

(Added all GM & GMS: 1,480.50)          $32,837.94

---

**Log Instructions & Notes**

Originally made as: 12500 METHYLPRED. AC (PF) 80MG/ML INJECTABLE
Calculated lot number: 05212012@68  Beyond use date: 11/17/2012
FORMULA INSTRUCTIONS:

ZEBRA BAR CODES:
99600010504 - 1mL VIAL
99600020504 - 2mL VIAL
99600050504 - 5mL VIAL

Date entered: 5/21/2012 9:57:45 AM          Last modified: 5/21/2012 9:58:06 AM          by: LAB
Checked by: _____                 Date: _____

Confidential - Subject to Protective Order

NECC_MDL000005160

```
MODEL No. MLS-3781

OPERATION DATE 2012/05/21
        TIME PM 08:45:12

COURSE   1

        CYCLE STARTED

TIME  TEMP  PRESS  STATUS
ELAPSED CENT.  kPa  CYCLE

00:11:58 090.0   14   HEAT
00:13:59 100.0   24   HEAT
00:22:01 106.4   30   HEAT

00:25:25 121.0  104   STERI.
00:27:25 121.8  110   STERI.
00:29:25 121.8  111   STERI.
00:31:25 121.6  109   STERI.
00:33:25 121.7  111   STERI.
00:35:25 121.7  111   STERI.
00:37:25 121.6  110   STERI.
00:39:25 121.7  112   STERI.

00:40:29 121.7  112   COOL

01:14:16 064.9    5   COMPLETE

START TIME PM 08:45:12
END TIME  PM 09:59:27
```

Confidential - Subject to Protective Order

NECC_MDL000005161

**Logged Formula Worksheet** (standard)
6/29/2012 9:06:36 AM
Page 1

L2235896

NEW ENGLAND COMPOUND
697 WAVERLY ST.
697 WAVERLY ST.
FRAMINGHAM, MA 01702 PI

METHYLPRED. AC (PF) 80MG/ML INJECTABLE

*handwritten:* N + 352.504 g
N + 28.506 g
N + 82.378 g
N + 17.123 g

Flavor:
Description:
Quantity made: 12500 ML

Schedule: L

Formula ID: 2226
Log ID: 235896

Batch yield: 12,500.000
Qty remaining: 12,500.000

PCCA ID:
Route of admin:

Date made: 6/29/2012
Lot number: 06292012@26
Beyond use date: December 26, 2012
180 days after compounding date
Pharmacist: GC
Technician: <NONE>
NDC1:
Packaging:
Equipment:

9:06 AM

**Pricing calculations from t**
Estimated price    $9.00  as
Ingredient cost    $0.00
Device cost        $0.00
Time cost
Profit

Labeling: SHAKE WELL***SDV***
Stability information:

| Chemicals | Sch. | Quantity used | QS | (B |
|---|---|---|---|---|
| 1  METHYLPREDNISOLONE ACETATE USP (STERILE) PI - Lot #: 28740/A    Mfg: | | 2×500gm = 1000 GM   Exp. date: 4/30/2016 | | Whls |
| Balance: | Chemical Code:     Volume:      Potency: | QS amount: 01-30-17    NDC: 49452-4388-02 | | |
| 2  POLYETHYLENE GLYCOL 3350 NF (STERILE) BASE - Lot #: 77089/A    Mfg: MEDISCA | | 352.5 GM   Exp. date: 2/28/2014 | | Whlsr: MEDISCA |
| Balance: | Chemical Code:     Volume:      Potency: | QS amount:    NDC: | | $7,755.00  07/21/2005  AWP:  $0.60  Each ML contains 0.0282 GM or 2.82%   ChemInvID: 0 |
| 3  SODIUM CHLORIDE (STERILE) GRANULE - Lot #: 11020203    Mfg: MEDISCA | | 28.5 GM   Exp. date: 11/10/2013 | | Whlsr: MEDISCA |
| Balance: | Chemical Code:     Volume:      Potency: | QS amount:    NDC: 51927108700 | | $0.56  04/02/2012  AWP:  $2.13  Each ML contains 0.00228 GM or 0.228%   ChemInvID: 0 |
| 4  WATER FOR INJECTION INJ - Lot #: J2A488    Mfg: BRAUN | | 12500 ML   Exp. date: 7/31/2014 | ☒ | Whlsr: BRAUN |
| Balance: | Chemical Code:     Volume:      Potency: | QS amount:    NDC: 00409488799 | | $25,000.00  06/17/2005  AWP:  $61.13  Each ML contains 1 ML or 100%   ChemInvID: 300 |
| 5  POLYSORBATE 80 (STERILE) LIQUID    O - Lot #: 79814/C    Mfg: MEDISCA | | 47.5 MLL   Exp. date: 8/31/2013 | | Whlsr: MEDISCA |
| Balance: | Chemical Code:     Volume:      Potency: | QS amount:    NDC: | | $0.00  04/02/2009  AWP:  $20.00  Each ML contains 0.0038 ML or 0.38%   ChemInvID: 120 |
| 6  SODIUM PHOSPHATE MONOBASIC (STERILE) POWDI - Lot #: 1010925    Mfg: LETCO | | 82.375 GM   Exp. date: 8/11/2013 | | Whlsr: PROFESSIONAL COMPOUN |
| Balance: | Chemical Code:     Volume:      Potency: | QS amount:    NDC: | | $82.38  09/30/2008  AWP:  Each ML contains 0.00659 GM or 0.659%   ChemInvID: 0 |
| 7  SODIUM PHOSPHATE DIBASIC (STERILE) POWDER - Lot #: C140092    Mfg: PCCA | | 17.125 GM   Exp. date: 8/1/2013 | | Whlsr: PROFESSIONAL COMPOUN |
| Balance: | Chemical Code:     Volume: J. To   Potency:  BAKER | QS amount: 05-31-2013    NDC: | | $0.00  11/01/2011  AWP:  $0.00  Each ML contains 0.00137 GM or 0.137%   ChemInvID: 289 |

(Added all GM & GMS: 1,480.50)                    $32,837.94

**Log Instructions & Notes**

Originally made as: 12500 METHYLPRED. AC (PF) 80MG/ML INJECTABLE
Calculated lot number: 06292012@26  Beyond use date: 12/26/2012
FORMULA INSTRUCTIONS:

ZEBRA BAR CODES:
99600010504 - 1mL VIAL
99600020504 - 2mL VIAL
99600050504 - 5mL VIAL

*handwritten:* 1L Nalgenes
Lot# - 1070553
Exp - Apr'17!

Date entered: 6/29/2012 9:06:22 AM   Last modified: 6/29/2012 9:06:34 AM   by: LAB
Checked by: _____                              Date: _____

Confidential - Subject to Protective Order

NECC_MDL000005167

BASE Beaker

necc

06-22-12 P03:05 OUT

BASE $S_0 B_0$

MODEL No. MLS-3781

OPERATION DATE 2012/06/30
TIME PM 08:01:18

COURSE    1

CYCLE STARTED

| TIME ELAPSED | TEMP CENT. | PRESS kPa | STATUS CYCLE |
|---|---|---|---|
| 00:09:53 | 090.0 | 6 | HEAT |
| 00:13:28 | 100.0 | 23 | HEAT |
| 00:21:30 | 101.5 | 10 | HEAT |
| 00:25:41 | 121.0 | 104 | STERI. |
| 00:27:41 | 121.8 | 110 | STERI. |
| 00:29:41 | 121.8 | 110 | STERI. |
| 00:31:41 | 121.8 | 110 | STERI. |
| 00:33:41 | 121.8 | 110 | STERI. |
| 00:35:41 | 121.8 | 112 | STERI. |
| 00:37:41 | 121.7 | 112 | STERI. |
| 00:39:41 | 121.6 | 111 | STERI. |
| 00:40:46 | 121.6 | 114 | COOL |
| 01:15:00 | 064.9 | 4 | COMPLETE |

START TIME PM 08:01:18
END TIME   PM 09:18:18

NECC_MDL000005168

**Logged Formula Worksheet** (standard)
6/29/2012 9:06:36 AM
Page 2



NEW ENGLAND COMPOUNDING CTR
697 WAVERLY ST.
697 WAVERLY ST.
FRAMINGHAM, MA  01702  Ph. 800-994-6322

METHYLPRED. AC (PF) 80MG/ML INJECTABLE

Flavor:
Description:
Quantity made: 12500 ML

Schedule: L

Active ☑
Formula ID: 2228
Log ID: 235896

Batch yield:  12,500.000
Qty remaining:  12,500.000

PCCA ID:
Route of admin:

12/09/09 POLYSORBATE-80 DOUBLED FROM 0.194ML/100ML TO 0.38ML/100ML GC

MATERIALS: STERILE BEAKER, STERILE SPIN BAR, STERILE HOMOGENIZER ELEMENT
    medisca 500gm plastic bottle weighs 98gms, plastic seal ring weighs 0.7gms
    medisca 1kg plastic bottle weighs 145gms, WITH TOP
1) WEIGH CHEMICALS IN STERILE WEIGH CUPS ON ELECTRONIC ANALYTICAL BALANCE
2) IN HOOD DISSOLVE BASE-B, SODIUM PHOSPHATE MONOBASIC, SODIUM PHOSPHATE DIBASIC, SODIUM
CHLORIDE, AND POLYSORBATE -80 IN VORTEX OF 80% FINAL VOLUME OF STERILE WATER.FILTER SOLUTION
THROUGH A 0.22MICRON NALGENE FILTER.
3) SLOWLY ADD METHYLPREDNISOLONE ACETATE TO VORTEX OF ABOVE SOLUTION.
4) HOMOGENIZE AT HIGH SPEED FOR 2-5 MINUTES (VOLUME DEP.)
5) QS TO FINAL VOLUME WITH STERILE WATER FOR INJECTION.
6) COVER WITH MULTIPLE LAYERS OF FOIL AND SEAL WITH AUTOCLAVE INDICATOR TAPE
7) AUTOCLAVE AT 121C-15PSI-20MIN
####SPRAY EXTERIOR OF SEALED BEAKER WITH 70% IPA####
8) RETURN TO HOOD AND REHOMOGENIZE. CREATE VORTEX AND ALLOW TO SOIN TILL COOLED TO ROOM
TEMP.
9) FILL STERILE  AMBER VIALS USING BAXA REPEATER PUMP VIA DISPOSABLE STERILE TUBING
10) CAP ,CRIMP, AND LABEL

####PULL RANDOM VIALS FOR APPROPRIATE ANALYSIS####

Date entered: 6/29/2012 9:06:22 AM     Last modified:  6/29/2012 9:06:34 AM       by: LAB
Checked by: _____  Date: ____/____/_____

Confidential - Subject to Protective Order

**Logged Formula Worksheet** (standard)
8/10/2012 2:43:06 PM
Page 1

NEW ENGLAND COMPOUN
697 WAVERLY ST.
697 WAVERLY ST.
FRAMINGHAM, MA 01702

METHYLPRED. AC (PF) 80MG/ML INJECTABLE

N + 352.506 g
N + 28.591 g
N + 82.377 g
N + 17.129 g

P8-10-2012
Active ☑
Formula ID: 2228

Flavor:
Description:
**Quantity made:** 12500 ML

Schedule: L

**Batch yield:** 12,500.000
**Qty remaining:** 12,500.000

PCCA ID:
Route of admin:

13L

**Date made:** 8/10/2012
**Lot number:** 08102012@51
**Beyond use date:** February 6, 2013
180 days after compounding date

2:42 PM

*Pricing calculations from the l*
Estimated price     $9.00 as of /
Ingredient cost     $0.00
Device cost         $0
Time cost           $0
Profit              $9

**Pharmacist:** GC
**Technician:** JOSEPH P CONNOLLY
**NDC1:**
**Packaging:**
**Equipment:**

08-07-12 A11:12 OUT

**Labeling:** SHAKE WELL***SDV***
**Stability information:**

| Chemicals | Sch. | Quantity used | QS | (Balance) | | | |
|---|---|---|---|---|---|---|---|
| METHYLPREDNISOLONE ACETATE USP (STERILE) P | - 2 × 500 gu = | 1000 GM | | | | | |
| Lot #: 78740/A    Mfg: | | Exp. date: 4/30/2018 | | Whlsr: | | | |
| Balance: 8113/C + 80494/B  Medisca | | 09-30-16 + | | NDC: 49452-4688-02 | | | |
| POLYETHYLENE GLYCOL 3350 NF (STERILE) BASE | | 352.5 GM ✓ | | | | | |
| Lot #: 76985/A    Mfg: MEDISCA | | Exp. date: 8/31/2013 | | Whlsr: | | | |
| Chemical Code:    Volume:    Potency: | | QS amount: | | NDC: | | | ChemInvID: 0 |
| SODIUM CHLORIDE (STERILE) GRANULAR | | 28.5 GM ✓ | | | $0.56 | 4/2/2012 | |
| Lot #: 11020203    Mfg: MEDISCA | | Exp. date: 11/10/2013 | | Whlsr: MEDISCA | | | |
| Balance:    Chemical Code:    Volume:    Potency: | | QS amount: | ✓ | Each ML contains 0.00228 GM or 0.228% | AWP: $5.13 | | |
| | | | | NDC: 51927108700 | ChemInvID: 0 | | |
| WATER FOR INJECTION  INJ | | 12500 ML | ☒ | | $25,000.00 | 6/17/2005 | |
| Lot #: J2B670    Mfg: BRAUN | | Exp. date: 8/31/2014 | | Whlsr: BRAUN | | | |
| Balance:    Chemical Code:    Volume:    Potency: | | QS amount: | | Each ML contains 1 ML or 100% | AWP: $61.13 | | |
| | | | | NDC: 00409488799 | ChemInvID: 300 | | |
| POLYSORBATE 80 (STERILE)  LIQUID | O | 47.5 ML | | | $0.00 | 4/2/2009 | |
| Lot #: 79814/C    Mfg: MEDISCA | | Exp. date: 8/31/2013 | | Whlsr: MEDISCA | | | |
| Balance:    Chemical Code:    Volume:    Potency: | | QS amount: | | Each ML contains 0.0038 ML or 0.38% | AWP: $0.00 | | |
| | | | | NDC: | ChemInvID: 170 | | |
| SODIUM PHOSPHATE MONOBASIC (STERILE) POWD | - | 82.375 GM | | | $82.38 | 9/30/2008 | |
| Lot #: 11010925    Mfg: LETCO | | Exp. date: 8/11/2013 | | Whlsr: PROFESSIONAL COMPOUN | | | |
| Balance:    Chemical Code:    Volume:    Potency: | | QS amount: | | Each ML contains 0.00659 GM or 0.659% | AWP: | | |
| | | | | NDC: | ChemInvID: 0 | | |
| SODIUM PHOSPHATE DIBASIC (STERILE)  POWDER | | 17.125 GM | | | $0.00 | 11/1/2011 | |
| Lot #: C140802    Mfg: PCCA | | Exp. date: 8/1/2013 | | Whlsr: PROFESSIONAL COMPOUN | | | |
| Balance: K39H001    Chemical Code:    Volume: Jo Jo Potency:  BAKER | | QS amount: 08-31-7013 | | Each ML contains 0.00137 GM or 0.137% | AWP: | | |
| | | | | NDC: | ChemInvID: 289 | | |

(Added all GM & GMS: 1,480.50)                $32,837.94

*Log Instructions & Notes*

Originally made as: 12500 METHYLPRED. AC (PF) 80MG/ML INJECTABLE
   Calculated lot number: 08102012@51  Beyond use date: 2/6/2013
FORMULA INSTRUCTIONS:

1L Medivens
10 71243-Lot#
Exp - APR'17'

ZEBRA BAR CODES:
99600010504 - 1mL VIAL
99600020504 - 2mL VIAL
99600050504 - 5mL VIAL

pH = 5w/ paper    pt = 72°  sy (8)

Date entered: 8/10/2012 2:42:54 PM    Last modified: 8/10/2012 2:43:04 PM    by: LAB
Checked by: _____                    Date: 08/10/2012

Confidential - Subject to Protective Order

NECC_MDL000013151

# EXHIBIT C

Policies & Procedures for Compounding Sterile Products

New England Compounding Center
General Overview of
Policies & Procedures for Compounding Sterile Products

A. Facility/Equipment

   a. Class 10,000 clean room – positive pressure with anteroom for scrubbing & gowning

   b. Class 100 laminar flow hood

   c. Certified by Massachusetts Board of Pharmacy (Tel: 617.727.9953) as a pharmacy with a central venous admixture service (CIVAS) in accordance with Board Regulations

B. Monitoring & Maintenance

   a. Hood validated on yearly basis by Scientific Air Analysis, Inc. of Ashland, MA.  Tel: 508-881-7100

   b. Prefilters changed on monthly basis

   c. Clean room area is cleaned on a weekly basis – floor/walls/fixtures

      A. Sodium hypochlorite 0.5%

      B. 70% isopropyl alcohol

      C. Tightly woven non-shedding wipes

   d. Compounding area is cleaned (all surfaces) using 70% isopropyl alcohol and non-shedding wipes before and after all compounding procedures using proper technique.

Mass BOP-00743

Policies & Procedures for Compounding Sterile Products

E.  Use by Dating

Each vial is labeled with a use-by date appropriate to the formulation.

F.  Packaging

Compounded preparations are packaged in containers meeting USP standards.  Container used depends on the physical and chemical properties of the compounded preparation.

G.  Dispensing

Product is dispensed by prescription only.  There must be a specific practitioner-patient-pharmacist relationship to dispense to an individual patient or a facility.

H.  Shipping

Medications are shipped overnight (usually FedEx) in a appropriate container to ensure controlled temperatures and product integrity.

Revised Nov 2002

Mass BOP-00745

# EXHIBIT D



# ANALYTICAL RESEARCH LABORATORIES

840 RESEARCH PARKWAY, SUITE 546
OKLAHOMA CITY, OK 73104
PHONE (405) 271-1144
FAX (405) 271-1174

# **Certificate Of Analysis**

CLIENT:   New England Compounding Center-MA

ARL #:   176896-01
LOT #:   05212012@68
DESCRIPTION:   Methylprednisolone AC (PF) 80 mg/mL Injection
DATE RECEIVED:   05/22/2012
STORAGE:   20°C to 25°C (68°F to 77°F)
CONTAINER:   Two 5 mL amber vials

| Analyte / Specifications | Expected Amount | Units | Results | % Of EXP. | Test Method | Date Tested |
|---|---|---|---|---|---|---|
| Methylprednisolone Acetate Specifications = 90% - 110% | 80 | mg/mL | 83.604 | 104.5% | HPLC | 5/23/2012 |

_____                    05/24/2012
alex tang - Laboratory Supervisor                    Date Reported        *ARL Form QUF-078-V4 03/05/2010*

*Results reported above relate only to the sample that was tested.*

Page 1 of 2

Confidential - Subject to Protective Order



# ANALYTICAL RESEARCH LABORATORIES

840 RESEARCH PARKWAY, SUITE 546
OKLAHOMA CITY, OK 73104
PHONE (405) 271-1144
FAX (405) 271-1174

# Microbiology Report

CLIENT:   New England Compounding Center-MA

ARL #:      176896-01
LOT #:      05212012@68
DESCRIPTION:      Methylprednisolone AC (PF) 80 mg/mL Injection
DATE RECEIVED:   05/22/2012
STORAGE:      20°C to 25°C (68°F to 77°F)
CONTAINER:      Two 5 mL amber vials

| ANALYSIS | Limits | Results | Test Method | Date Tested |
|---|---|---|---|---|
| Sterility | Sterile / Not Sterile | Sterile | USP 71 | 05/22/2012 |
| Endotoxin | 6.25 EU/mg | <0.05 EU/mg | USP 85 | 05/23/2012 |


_____          06/05/2012
Amar Arafat - Microbiologist          Date Reported

*Sterility - 14 day sterility report. In accordance with the USP guidelines, the samples will be incubated for 14 days.*

*Results reported above relate only to the sample that was tested.*

Page 1 of 2          *ARL Form QUF-078-V4 03/05/2010*



# ANALYTICAL RESEARCH LABORATORIES

840 RESEARCH PARKWAY, SUITE 546
OKLAHOMA CITY, OK 73104
PHONE (405) 271-1144
FAX (405) 271-1174

# Microbiology Report

CLIENT:   New England Compounding Center-MA

ARL #:    176896-01
LOT #:    05212012@68
DESCRIPTION:    Methylprednisolone AC (PF) 80 mg/mL Injection
DATE RECEIVED:   05/22/2012
STORAGE:    20°C to 25°C (68°F to 77°F)
CONTAINER:    Two 5 mL amber vials

| ANALYSIS | Limits | Results | Test Method | Date Tested |
|---|---|---|---|---|
| Sterility (*Preliminary*) | Sterile / Not Sterile | Sterile | USP 71 | 05/22/2012 |
| Endotoxin | 6.25 EU/mg | <0.05 EU/mg | USP 85 | 05/23/2012 |

*Sterility - This preliminary report was issued after approximately 72 hours of incubation. In accordance with the USP guidelines, the samples will be incubated for 14 days; if there is any change in the sample a supplemental report will be issued.*

*Fungal - This preliminary report was issued after 4-5 days of incubation. In accordance with the USP guidelines, the samples will be incubated for 14 days; if there is any change in the sample a supplemental report will be issued.*

*Endotoxin - To calculate the endotoxin limit use the following formula: EL = K/M where K = tolerance limit (EU/kg) and M = Maximum dose/kg/hour or Maximum dose/kg*
*Parenteral: K is 5 EU/kg for any route of administration /Intrathecal: K is 0.2 EU/kg body weight)*
*Radiopharmaceutical parenteral: K is 175/V or Intrathecal radiopharmaceuticals: K is 14/V, where V is the maximum recommended dose in mL.*
*Dermal Application: K/M, where K = 5 EU/kg and M is the (maximum dose/m2/hour × 1.80 m2)/70 Kg.*

_Amar Arafat_

_____    05/25/2012
Amar Arafat - Microbiologist        Date Reported       *ARL Form QUF-078-V4  03/05/2010*

*Results reported above relate only to the sample that was tested.*
Page 2 of 2

Confidential - Subject to Protective Order

NECC_MDL000005164



# ANALYTICAL RESEARCH LABORATORIES

840 RESEARCH PARKWAY, SUITE 546
OKLAHOMA CITY, OK 73104
PHONE (405) 271-1144
FAX (405) 271-1174

# Certificate Of Analysis

CLIENT:   New England Compounding Center-MA

ARL #:   180509-01
LOT #:   06292012@26
DESCRIPTION:   Methylprednisolone AC (PF) 80 mg/mL Injection
DATE RECEIVED:   07/03/2012
STORAGE:   20°C to 25°C (68°F to 77°F)
CONTAINER:   Two 5 mL amber vials

| Analyte / Specifications | Expected Amount | Units | Results | % Of EXP. | Test Method | Date Tested |
|---|---|---|---|---|---|---|
| Methylprednisolone Acetate<br>Specifications = 90% - 110% | 80 | mg/mL | 81.451 | 101.8% | HPLC | 7/5/2012 |

_Alex Tang - Laboratory Supervisor_

07/05/2012
Date Reported

_ARL Form QUF-078-V4 03/05/2010_

_Results reported above relate only to the sample that was tested._

Page 1 of 2

Confidential - Subject to Protective Order

NECC_MDL000005170



# ANALYTICAL RESEARCH LABORATORIES

840 RESEARCH PARKWAY, SUITE 546
OKLAHOMA CITY, OK 73104
PHONE (405) 271-1144
FAX (405) 271-1174

# Microbiology Report

CLIENT:   New England Compounding Center-MA

ARL #:      180509-01
LOT #:      06292012@26
DESCRIPTION:   Methylprednisolone AC (PF) 80 mg/mL Injection
DATE RECEIVED:   07/03/2012
STORAGE:   20°C to 25°C (68°F to 77°F)
CONTAINER:   Two 5 mL amber vials

| ANALYSIS | Limits | Results | Test Method | Date Tested |
|---|---|---|---|---|
| Sterility | Sterile / Not Sterile | Sterile | USP 71 | 07/03/2012 |
| Endotoxin | 6.25 EU/mg | <0.05 EU/mg | USP 85 | 07/06/2012 |

Sample properties cause turbidity in growth media. Per USP 71; the sample will be inoculated into new growth media after 14 days of incubation and incubated for 4 additional days.

_Amar Arafat - Microbiologist_

07/17/2012

Date Reported

_Sterility - 14 day sterility report. In accordance with the USP guidelines, the samples will be incubated for 14 days._

_Results reported above relate only to the sample that was tested._

Page 1 of 1

_ARL Form QUF-078-V4 03/05/2010_

Confidential - Subject to Protective Order

NECC_MDL000005171



# ANALYTICAL RESEARCH LABORATORIES

840 RESEARCH PARKWAY, SUITE 546
OKLAHOMA CITY, OK 73104
PHONE (405) 271-1144
FAX (405) 271-1174

# Microbiology Report

CLIENT:   New England Compounding Center-MA

ARL #:   180509-01
LOT #:   06292012@26
DESCRIPTION:   Methylprednisolone AC (PF) 80 mg/mL Injection
DATE RECEIVED:   07/03/2012
STORAGE:   20°C to 25°C (68°F to 77°F)
CONTAINER:   Two 5 mL amber vials

| ANALYSIS | Limits | Results | Test Method | Date Tested |
|---|---|---|---|---|
| Sterility (*Preliminary*) | Sterile / Not Sterile | Sterile | USP 71 | 07/03/2012 |
| Endotoxin | 6.25 EU/mg | <0.05 EU/mg | USP 85 | 07/06/2012 |

*Sterility - This preliminary report was issued after approximately 72 hours of incubation. In accordance with the USP guidelines, the samples will be incubated for 14 days; if there is any change in the sample a supplemental report will be issued.*

*Fungal - This preliminary report was issued after 4-5 days of incubation. In accordance with the USP guidelines, the samples will be incubated for 14 days; if there is any change in the sample a supplemental report will be issued.*

*Endotoxin - To calculate the endotoxin limit use the following formulae: EL = K/M where K = tolerance limit (EU/kg) and M = Maximum dose/kg/hour or Maximum dose/kg*
*Parenteral: K is 5 EU/kg for any route of administration /Intrathecal: K is 0.2 EU/kg body weight)*
*Radiopharmaceutical parenteral: K is 175/V or Intrathecal radiopharmaceuticals: K is 14/V, where V is the maximum recommended dose in ml..*
*Dermal Application: K/M, where K = 5 EU/kg and M is the (maximum dose/m2/hour × 1.80 m2)/70 Kg.*

Amar Arafat - Microbiologist

07/06/2012
Date Reported

*ARL Form QUF-078-V4 03/05/2010*

*Results reported above relate only to the sample that was tested.*
Page 2 of 2

Confidential - Subject to Protective Order

NECC_MDL000005172



# ANALYTICAL RESEARCH LABORATORIES

840 RESEARCH PARKWAY, SUITE 546
OKLAHOMA CITY, OK 73104
PHONE (405) 271-1144
FAX (405) 271-1174

# Certificate Of Analysis

CLIENT:   New England Compounding Center
697 Waverly Street
Framingham, MA 01702

ARL #:   184460-01
LOT #:   08102012@51
DESCRIPTION:   Methylprednisolone AC (PF) 80 mg/mL Injection
DATE RECEIVED:   08/14/2012
STORAGE:   20°C to 25°C (68°F to 77°F)
CONTAINER:   Two 5 mL clear vials

| Analyte / Specifications | Expected Amount | Units | Results | % Of EXP. | Test Method | Date Tested |
|---|---|---|---|---|---|---|
| Methylprednisolone Acetate Specifications = 90% - 110% | 80 | mg/mL | 81.676 | 102.1% | HPLC | 8/15/2012 |

_____     08/15/2012

Alex Tang - Laboratory Supervisor                 Date          *ARL Form QUF-078-V4 03/05/2010*

*Results reported above relate only to the sample that was tested.*

Page 1 of 2

Confidential - Subject to Protective Order



ANALYTICAL RESEARCH LABORATORIES

840 RESEARCH PARKWAY, SUITE 546
OKLAHOMA CITY, OK 73104
PHONE (405) 271-1144
FAX (405) 271-1174

# Certificate Of Analysis

CLIENT:    New England Compounding Center
           697 Waverly Street
           Framingham, MA 01702

ARL #:        184460-01
LOT #:        08102012@51
DESCRIPTION:  Methylprednisolone AC (PF) 80 mg/mL Injection
DATE RECEIVED: 08/14/2012
STORAGE:       20°C to 25°C (68°F to 77°F)
CONTAINER:     Two 5 mL clear vials

| Analyte / Specifications | Expected Amount | Units | Results | % Of EXP. | Test Method | Date Tested |
|---|---|---|---|---|---|---|
| Methylprednisolone Acetate Specifications = 90% - 110% | 80 | mg/mL | 81.676 | 102.1% | HPLC | 8/15/2012 |

_____          08/15/2012
                                               _____
Alex Tang - Laboratory Supervisor                  Date            *ARL Form QUF-078-V4 03/05/2010*

*Results reported above relate only to the sample that was tested.*
Page 1 of 2

Confidential - Subject to Protective Order



# ANALYTICAL RESEARCH LABORATORIES

840 RESEARCH PARKWAY, SUITE 546
OKLAHOMA CITY, OK 73104
PHONE (405) 271-1144
FAX (405) 271-1174

# Microbiology Report

**CLIENT:**   New England Compounding Center

**ARL #:**   184460-01
**LOT #:**   08102012@51
**DESCRIPTION:**   Methylprednisolone AC (PF) 80 mg/mL Injection
**DATE RECEIVED:**   08/14/2012
**STORAGE:**   20°C to 25°C (68°F to 77°F)
**CONTAINER:**   Two 5 mL clear vials

| ANALYSIS | Limits | Results | Test Method | Date Tested |
|---|---|---|---|---|
| Endotoxin | 6.25 EU/mg | <0.05 EU/mg | USP 85 | 08/16/2012 |

Sample properties cause turbidity in growth media. Per USP 71, the sample will be inoculated into new growth media after 14 days of incubation and incubated for 4 additional days.

*Tiffany O. Hyde*                                    08/17/2012

Tiffany Hyde - Microbiologist                       Date Reported

*Sterility – This preliminary report was issued after approximately 72 hours of incubation. In accordance with the USP guidelines, the sample will be incubated for 14 days; if there is any change in the sample a supplemental report will be issued.*

*Fungal – This preliminary report was issued after approximately 4 days of incubation. In accordance with the USP guidelines, the sample will be incubated for 14 days; if there is any change in the sample a supplemental report will be issued.*

*Endotoxin - To calculate the endotoxin limit use the following formulas:  EL = K/M where K = tolerance limit (EU/kg) and M = Maximum dose/kg/hour or Maximum dose/kg*
*Parenteral: K is 5 EU/kg for any route of administration /Intrathecal: K is 0.2 EU/kg body weight)*
*Radiopharmaceutical parenteral: K is 175/V or Intrathecal radiopharmaceuticals: K is 14/V, where V is the maximum recommended dose in mL.*
*Dermal Application: K/M, where K = 5 EU/kg and M is the (maximum dose/m2/hour × 1.80 m2)/70 Kg.*

*Results reported above relate only to the sample that was tested.*

Page 1 of 1                                          *ARL Form QUF-078-V3 08/20/2012*

Confidential - Subject to Protective Order                    NECC_MDL000013154



# ANALYTICAL RESEARCH LABORATORIES

840 RESEARCH PARKWAY, SUITE 546
OKLAHOMA CITY, OK 73104
PHONE (405) 271-1144
FAX (405) 271-1174

# **Microbiology Report**

CLIENT:   New England Compounding Center
697 Waverly Street
Framingham, MA 01702

ARL #:    184460-01
LOT #:    08102012@51
DESCRIPTION:   Methylprednisolone AC (PF) 80 mg/mL Injection
DATE RECEIVED:   08/14/2012
STORAGE:   20°C to 25°C (68°F to 77°F)
CONTAINER:   Two 5 mL clear vials

| ANALYSIS | Limits | Results | Test Method | Date Tested |
|---|---|---|---|---|
| Sterility | Sterile / Not Sterile | No Growth at 14 Days | USP 71 | 08/14/2012 |

Sample properties cause turbidity in growth media. Per USP 71, the sample will be inoculated into new growth media after 14 days of incubation and incubated for 4 additional days.

*Tiffany O. Hyde*

_____        08/28/2012
Tiffany Hyde - Microbiologist               Date Reported

*Sterility – 14 day sterility report. In accordance with the USP guidelines, the sample was incubated for 14 days.*
*Fungal – 14 day fungal report. In accordance with the USP guidelines, the sample was incubated for 14 days.*

*Results reported above relate only to the sample that was tested.*
Page 1 of 1

*ARL Form QUF-078-V5 08/20/2012*

Confidential - Subject to Protective Order

# EXHIBIT E

| From: | Barry Cadden </O=FIRST ORGANIZATION/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=BCADDEN> |
| Sent: | Wednesday, August 10, 2011 10:37 AM |
| To: | Glenn Chin <gchin@neccrx.com> |
| Subject: | |

What's the testing process for the large volume meds currently? I assumed that we have at least sterility testing for "all" lots of large volume injectable lots that we are dispensing but I am told that the lots for some drugs almost never coincide with the available test data. Is this true? You need to run like normal stock meds like beta repos = test every lot and just fill as you go based on the size vial + # needed or make as many lots as you like "internally" but only label vials with lot# of tested lots to cover our ass =ex.. Avastin. I was told that we are only testing rarely and dispensing many untested lots? Please clear this up + tell me what we are doing + will do. Botton line is we can't be caught with our pants at our ankles....ever.

| From: | Barry Cadden </O=FIRST ORGANIZATION/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=BCADDEN> |
| Sent: | Tuesday, May 22, 2012 1:50 PM |
| To: | Glenn Chin <gchin@neccrx.com> |
| Subject: | |

This situation is exactly why Scott must be swapped into a less dangerous position! We would be fucked if this was a cardio med!!!......

USAO00082077

| From: | Barry Cadden </O=FIRST ORGANIZATION/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=BCADDEN> |
|---|---|
| Sent: | Tuesday, August 7, 2012 9:16 AM |
| To: | Glenn Chin <gchin@neccrx.com> |
| Subject: | |

The "problem" CP order has my name as sign in for pump!....we need to get Scott out of that room or at least off the sign in by tomorrow. Have him be there , help, train...etc but someone else MUST sign in ......................I have no idea how I am going to explain this situation but it can't continue beyong today........see me later

thanks

USAO00083471

**From:** Barry Cadden
**Sent:** Tuesday, July 03, 2012 2:20 PM
**To:** Glenn Chin
**Subject:**

What's going on with the materials (mops..etc) for the Uniclean, cleaning people? How are they being handled?...I ask because we have another fungal bloom on June-28[th]=day of last cleaning. Are the pharmacists watching these idiots or sleeping? We need to keep an eye on them + make sure that the mops..etc are not contaminated. I am getting the film again so we can check it out......

USA200067868

# EXHIBIT F

| | |
|---|---|
| **From:** | Glenn Chin </O=FIRST ORGANIZATION/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=GCHIN> |
| **Sent:** | Monday, December 19, 2011 11:36 AM |
| **To:** | Barry Cadden <bcadden@neccrx.com>; Cory Fletcher <cfletcher@neccrx.com> |
| **Subject:** | RE: MTX |

We have about 1.25KG of MTX left. It's the old Spectrum bottles. When I say old I mean OLD, it expired in 2007 according to their sticker. We make it for our injectables and we send it out for testing and it comes out pretty close. We generally under QS the lot's we make. I would probably guess that it's at about 90 to 95% potent.

**From:** Barry Cadden
**Sent:** Monday, December 19, 2011 9:32 AM
**To:** Glenn Chin; Gene Svirskiy; Cory Fletcher
**Subject:** MTX

How much MTX powder to we have in house? I am hearing that there is another backorder of commercial inj. MTX + can't find a chemical co. who has any powder in stock

USAO00049156

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | ) ) ) ) |
| | |
| This Document Relates to Suits Naming: | ) ) ) |
| Suits Naming the Tennessee Clinic Defendants | ) ) ) ) |

MDL No. 2419
Dkt. No. 1:13-md-2419-RWZ

## THE TENNESSEE CLINIC DEFENDANTS'
### FIRST INTERROGATORIES, REQUESTS FOR PRODUCTON OF DOCUMENTS, AND REQUESTS FOR ADMISSION PROPOUNDED TO CARLA CONIGLIARO.

Come the Defendants, Saint Thomas Outpatient Neurosurgical Center, LLC; Howell Allen Clinic, a Professional Corporation; John Culclasure, MD; Debra Schamberg, RN, CNOR; Vaughan Allen, MD; Specialty Surgery Center, Crossville, PLLC; Kenneth R. Lister, MD; Kenneth Lister, MD, PC; and Donald E. Jones, MD (collectively "Tennessee Clinic Defendants") , pursuant to Rules 26, 33, and 34 of the Federal Rules of Civil Procedure and the Local Rules for the District of Massachusetts, and propound the following Interrogatories, Requests for Production of Documents, and Requests for Admission to Carla Conigliaro.

Each of the following Interrogatories shall be answered under oath, in writing, separately, to the fullest possible detail, and in accordance with the definitions and instructions set forth below. The answers shall be signed by the person making them, and a copy of the answers, together with objections, if any, shall be served within thirty (30) days after the service date of these Interrogatories.

You are under a duty to seasonably supplement your response with respect to any Interrogatory directly addressed to the identity and location of persons having knowledge of discoverable matters. You are under a duty to amend a prior response if you obtain information on the basis of which you know that the response was incorrect when made, or that the response, though correctly made, is no longer true, and the circumstances are such that a failure to amend the response is, in substance, a knowing concealment.

## DEFINITIONS

1.   As used in this document, the terms "person(s)" and "individual(s)" mean any natural individual in any capacity whatsoever or any entity or organization, including divisions, departments, and other units therein, and shall include, but not be limited to, a public or private corporation, partnership, joint venture, voluntary or unincorporated association, organization, proprietorship, trust, estate, governmental agency, commission, bureau, or department.

2.   As used in this document, the term "document" means any medium upon which intelligence or information can be recorded or retrieved, and includes without limitation, the original and each copy, regardless of origin and location, of any book, pamphlet, periodical, letter, memorandum (including any memorandum or report of a meeting or conversation), invoice, bill, order form, receipt, financial statement, accounting entry, diary, calendar, telex, telegram, cable, report, record, contract, agreement, study, handwritten note, draft, working paper, chart, paper, print, laboratory record, drawing or sketch, graph, index, lists, tape, photograph, microfilm, data sheet or data processing card, or any other written, recorded, transcribed, punched, taped, filmed, or graphic matter, however produced or reproduced, which is in your possession, custody, or control, or which was, but is no longer, in your possession, custody, or control.

3.   As used in this document, the terms "identification," "identify," or "identity," when used in reference to a natural individual, require you to state his or her full name and residential and business address. Use of the term "document" in connection with the Interrogatories requires you to state the number of pages and the nature of the document, its title, its date, the name or names of its authors, and recipients, and its present location and custodian.

4.   "You" and "your" refers to Carla Conigliaro and each of his present and former agents, representatives, and employees, attorneys and accountants, and each person acting or purporting to act on his behalf.

5.   "Communication" means any oral or written utterance, notification, or statement of any nature whatsoever, by and to whomsoever made, including, but not limited to, correspondence, conversation, dialogue, discussions, interviews, consultants, and any other understanding between or among two or more persons.

2

## INSTRUCTIONS

1.    With respect to each Interrogatory, in addition to answering the question, you are to identify all documents that support, refer to, or evidence the subject matter of each Interrogatory and your answer thereto.

If any or all identified documents are no longer in your possession, custody, or control because of destruction, loss, or any other reason, then you must do the following with respect to each and every document:

A.    Describe the nature of the document;

B.    State the date of the document;

C.    Identify the persons who sent and received the original and the copy of the document;

D.    State in as much detail as possible the contents of the documents; and

E.    State the manner and date of disposition of the document.

If you contend that you are entitled to withhold from production any or all documents identified herein on the basis of attorney-client privilege, the work-product doctrine, or any other ground, then do the following with respect to each and every document:

A.    Describe the nature of the document;

B.    State the date of the document;

C.    Identify the persons who sent and received the original and a copy of the document;

D.    State the subject matter of the document; and

E.    State the basis upon which you contend you are entitled to withhold the document from production.

2.    All documents produced should be organized and labeled to correspond to the specific Request in response to which they are being made available or should be produced as they are kept in the usual course of business.

3.    The terms "and," "or," and "and/or" should be construed either disjunctively or conjunctively so as to bring within the scope of these Interrogatories and Requests any information that might otherwise be construed as outside their scope.

3

4.   The term "any" should be construed to include the word "all," and "all" should be construed to include "any."

5.   The present tense should be construed to include the past tense, and the past tense should be construed to include the present tense.

6.   The singular should be construed to include the plural, and the plural should be construed to include the singular.

7.   The terms "he" and "his" should be construed to include the words "she" and "her" or "hers," respectively and vice versa.

8.   "Relating to," when referring to a document shall mean mentioning, describing, connected to or with, or discussing the stated subject matter.

## INTERROGATORIES

On March 19, 2015, the Saint Thomas Entities sent their *First Set of Interrogatories, Requests for Production, and Requests for Admission to Carla Conigliaro*. In order to minimize the impact of discovery on Carla Conigliaro, these Tennessee Clinic Defendants **hereby adopt and incorporate, as if stated fully herein, Interrogatories 1-6** from the *Saint Thomas Entities' First Set of Interrogatories.*

1-6.    [The Tennessee Clinic Defendants adopt and incorporate, as if stated fully herein, Interrogatories 1-11 from the *Saint Thomas Entities' First Set of Interrogatories.*]

**ANSWER:**

7.    Describe in detail your role at NECC and Ameridose, including job title, job description, and a description of your daily duties and activities in 2011 and 2012.

**ANSWER:**

8.    Describe in detail the steps NECC took to compound, process, stopper, seal, package, and ship methylprednisolone acetate ("MPA") in 2011 and 2012, including but not limited to:

   a) The names of the individuals performing each step;

   b) The job titles for the individuals performing each step;

   c) The specific cleanroom or location in NECC's facility where each step took place;

   d) The tools, equipment, or machinery used for each step;

   e) Any changes to NECC's methods and procedures for compounding MPA, or the location where compounding MPA took place, that occurred in 2011 or 2012.

**ANSWER:**

9.    Identify the total amount of MPA that NECC, and separately Ameridose, produced in each quarter of 2010, 2011, and 2012.

**ANSWER:**

10.    Identify the types of vials and closures NECC used for MPA lots numbered 052122012@68, 06292012@26, and 08102012@51 (collectively "Contaminated Lots"), including whether the vials and enclosures were prewashed or presterilized, and identify their manufacturer(s).

**ANSWER:**

11.     Identify any and all complaints that NECC and Ameridose received related to the sterility or safety of their products, including but not limited to complaints by customers, current and former employees, and state and federal government agencies.

**ANSWER:**

12.     Identify any customers of NECC and Ameridose who performed site visits prior to placing orders with either company.

**ANSWER:**

13.     Describe any policies, procedures, or protocols relating to or regarding customer site visits to the NECC facility, including the areas you allowed customers to inspect.

**ANSWER:**

14.     Identify any customers who asked for information about prior recalls of NECC and Ameridose products prior to placing orders with either company.

**ANSWER:**

15.     Identify and describe any information you gave customers about recalled NECC and Ameridose products in 2011 and 2012.

**ANSWER:**

16.     Identify any and all complaints NECC or Ameridose received related to their compliance with state or federal laws and regulations, including but not limited to complaints by customers, current and former employees, and state and federal government agencies.

**ANSWER:**

17.     Identify and describe any way in which NECC's cleanrooms were modified, altered, or expanded by NECC or Ameridose.

**ANSWER:**

18.   Identify any policies, procedures, or guidelines in place at NECC in 2012 that encouraged employees to disclose mistakes in the compounding process, even if the mistakes necessitated destruction of product or halting production.

**ANSWER:**

19.   Describe all disciplinary or enforcement action taken against NECC or Ameridose by any state or federal government agency.

**ANSWER:**

20.   Describe in detail Lisa Conigliaro Cadden's role at NECC in 2011 and 2012.

**ANSWER:**

## <u>VERIFICATION</u>

**STATE OF TENNESSEE** )
)
**COUNTY OF** _____ )

I, _____, after being duly sworn, hereby make oath that the foregoing

answers to interrogatories are true to the best of my knowledge, information, and belief.

_____

Sworn to and subscribed before me this _____ day of _____, 2015.

_____
**Notary Public**

My commission expires on: _____.

8

## REQUESTS FOR PRODUCTION

On March 19, 2015, the Saint Thomas Entities sent their *First Set of Interrogatories, Requests for Production, and Requests for Admission to Carla Conigliaro.* In order to minimize the impact of discovery on Carla Conigliaro, these Tennessee Clinic Defendants **hereby adopt and incorporate, as if stated fully herein, Requests for Production 1-39** from the *Saint Thomas Entities' First Requests for Production.* The "new" requests begin at Number 40.

1-39.   [The Tennessee Clinic Defendants adopt and incorporate, as if stated fully herein, Requests for Production 1-39 from the *Saint Thomas Entities' First Requests for Production.*]

**RESPONSE:**

40.   Produce all correspondence between you and any of the Tennessee Clinic Defendants, their employees, agents, or representatives.

**RESPONSE:**

41.   Produce all correspondence and documents referring or relating to the Tennessee Clinic Defendants' purchase of MPA from NECC in 2012.

**RESPONSE:**

42.   Produce all documents produced by the government to you during any civil, criminal, or administrative proceedings related to NECC's contaminated MPA.

**RESPONSE:**

43.   Produce all policies, procedures, guidelines, instructions and training documents referring or relating to the compounding of MPA at the NECC facility.

**RESPONSE:**

44.   Produce all documents referring or relating to NECC or Ameridose sending samples of insufficient size or volume to comply with USP 71 to ARL or any other testing laboratory.

**RESPONSE:**

45.   Produce all documents referring or relating to any sterility, potency, endotoxin, or fungal testing that you received from ARL or any other laboratory related to MPA compounded by NECC or Ameridose in 2011 and 2012.

**RESPONSE:**

9

46.   Produce all correspondence and documents referring or relating to fungal blooms growth in or near NECC's cleanrooms.

**RESPONSE:**

47.   Produce documents referring or relating to complaints or communications with Liberty regarding the design, manufacture, or installation of the clean rooms at the NECC facility.

**RESPONSE:**

48.   Produce all documents referring or relating to any complaints that NECC or Ameridose received related to the sterility or safety of their products, including but not limited to complaints by customers, current or former employees, or state or federal government agencies.

**RESPONSE:**

49.   Produce all documents referring or relating to any complaints NECC or Ameridose received related to their compliance with state or federal laws and regulations, including but not limited to complaints by customers, current or former employees, or state or federal government agencies.

**RESPONSE:**

50.   Produce all correspondence and documents referring or relating to NECC's response to the meningitis outbreak, including but not limited to, steps NECC took to prepare for any inspections of its facility.

**RESPONSE:**

51.   Produce all training and instructional material for sales staff at NECC or MSM.

**RESPONSE:**

## REQUESTS FOR ADMISSION

On March 19, 2015, the Saint Thomas Entities sent their *First Set of Interrogatories, Requests for Production, and Requests for Admission to Carla Conigliaro.* In order to minimize the impact of discovery on Carla Conigliaro, these Tennessee Clinic Defendants **hereby adopt and incorporate, as if stated fully herein, Requests for Admission 1-12** from the *Saint Thomas Entities' First Requests for Admission.* The "new" requests begin at Number 13.

1-12. [The Tennessee Clinic Defendants adopt and incorporate, as if stated fully herein, Requests for Admission 1-12 from the *Saint Thomas Entities' First Requests for Admission.*]

**ANSWER:**

13. Admit that, had any of the Tennessee Clinic Defendants asked for a copy of NECC's license in 2011, you would have provided a valid and up-to-date Tennessee pharmacy license.

**ANSWER:**

14. Admit that NECC represented to its customers, including the Tennessee Clinic Defendants, that it met or exceeded USP 797 standards.

**ANSWER:**

15. Admit that NECC represented to the Tennessee Clinic Defendants that its products, including MPA, were safe and sterile.

**ANSWER:**

16. Admit that the Massachusetts Board of Pharmacy ("Mass. BoP") inspected NECC on or about May 24, 2011.

**ANSWER:**

17. Admit that as a result of its inspection on or about May 24, 2011 the Mass. BoP issued an inspection report documenting its findings.

**ANSWER:**

18. Admit that NECC failed to submit a copy of the Mass. BoP's May 24, 2011 inspection report to the Tennessee Board of Pharmacy.

**ANSWER:**

19.    Admit that you NECC owed a duty to its customers to ensure that its MPA was sterile prior to distributing it.

**ANSWER:**

Respectfully submitted,

**GIDEON, COOPER & ESSARY, PLC**


/s/ Chris J. Tardio
**C.J. Gideon, Jr.***
**Chris J. Tardio***
**Alan S. Bean****
**Matthew H. Cline***
315 Deaderick Street, Suite
Nashville, TN 37238
Ph: (615) 254-0400
Fax: (515) 254-0459
chris@gideoncooper.com

***Attorneys for the Tennessee Clinic Defendants***


* Admitted pursuant to MDL Order No. 1.
** Admitted *pro hac vice*.

12

## CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of March, 2015, a true and accurate copy of the foregoing was served on Carla Conigliaro by U.S. mail and on the other parties below electronically via the Court's CM/ECF system:

| | |
|---|---|
| Gerard Stranch, IV<br>Ben Gastel<br>Branstetter, Stranch & Jennings, PLLC<br>227 2nd Ave N<br>Suite 400<br>Nashville, TN 37201<br><br>*Attorneys for the PSC*<br><br>[via hand-delivery, to upload to repository] | Matthew P. Moriarty<br>Thomas W. Coffey<br>Richard A. Dean<br>Tucker Ellis, LLP<br>950 Main Avenue, Suite 1100<br>Cleveland, OH 44113<br><br>Scott H. Kremer<br>Tucker, Heifetz & Saltzman<br>Three School Street<br>Boston, MA 02108<br><br>Scott J. Tucker<br>Paul Saltzman<br>Matthew E. Mantalos<br>Tucker, Saltzman & Dyer, LLP<br>50 Congress Street<br>Boston, MA 02109<br><br>*Attorneys for Defendant Ameridose, LLC* |
| Daniel M. Rabinovitz<br>Brady J. Hermann<br>Nicki Samson<br>Michaels, Ward & Rabinovitz<br>One Beacon Street , 2nd Floor<br>Boston, MA 02108<br><br>*Attorneys for Defendant Medical Sales Management, Inc.* | John P. Ryan<br>Robert H. Gaynor<br>William J. Dailey, Jr.<br>Sloane and Walsh, LLP<br>Three Center Plaza<br>Boston, MA 02108<br><br>*Attorneys for Gregory Conigliaro, Registered Agent for Service of Process for Medical Sales Management SW, Inc.* |

| | |
|---|---|
| Joseph P. Thomas<br>Ulmer & Berne, LLP<br>600 Vine Street, Suite 2800<br>Cincinnati, OH 45202<br><br>Joshua A. Klarfeld<br>Ulmer & Berne, LLP<br>1660 W.2nd Street, Suite 1100<br>Cleveland, OH 44113<br><br>*Attorneys for Defendant*<br>*GDC Properties Management, LLC* | Kenneth B. Walton<br>Kristen R. Ragosta<br>Donovan Hatem, LLP<br>Two Seaport Lane, 8th Floor<br>Boston, MA 02210<br><br>*Attorneys for Defendant*<br>*ARL Bio Pharma* |
| John P. Ryan<br>Robert H. Gaynor<br>William J. Dailey, Jr.<br>Sloane and Walsh, LLP<br>Three Center Plaza<br>Boston, MA 02108<br><br>*Attorneys for Defendants Barry J. Cadden,*<br>*Lisa Conigliaro Cadden, Gregory Conigliaro,*<br>*Carla Conigliaro, Douglas Conigliaro and*<br>*Glenn A. Chin*<br><br>Bruce A. Singal<br>Michelle R. Peirce<br>Callan G. Stein<br>Donague, Barrett & Singal, P.C.<br>One Beacon Street , Suite 1320<br>Boston, MA 02108<br><br>*Attorneys for Defendants Barry J. Cadden and*<br>*Lisa Conigliaro Cadden* | Damian W. Wilmot<br>James Rehnquist<br>Abigail K. Hemani<br>Roberto M. Braceras<br>Goodwin Procter LLP<br>Exchange Place<br>53 State Street<br>Boston, MA 02109<br><br>*Attorneys for Unifirst Corporation*<br>*a/d/b/a Uniclean Cleanroom Services*<br><br>Parks Chastain<br>Jason Lee<br>Brewer, Krause, Brooks, Chastain &<br>Burrow, PLLC<br>611 Commerce St., Suite 2600<br>P.O. Box 23890<br>Nashville, TN 37202<br>615-256-8787<br>Fax: 615-256-8985<br><br>*Attorneys for Specialty Surgery*<br>*Center, Crossville, PLLC* |

| | |
|---|---|
| Frederick H. Fern<br>Judi Abbott Curry<br>Jessica Saunders Eichel<br>Alan M. Winchester<br>Harris Beach PLLC<br>100 Wall Street<br>23rd Floor<br>New York, NY 10005<br><br>Geoffrey M. Coan<br>Daniel E. Tranen<br>Hinshaw & Culbertson LLP<br>28 State Street<br>24th Floor<br>Boston, MA 02109<br><br>Michael R. Gottfried<br>Thomas B.K. Ringe, III<br>Jennifer Mikels<br>Duane Morris LLP<br>100 High Street<br>Suite 2400<br>Boston, MA 02110-1724<br><br>*Attorneys for NECC* | Marcy H. Greer<br>Alexander Dubose Jefferson &<br>Townsent<br>515 Congress Ave.<br>Suite 2350<br>Austin, TX 78701<br><br>Yvonne K. Puig<br>Eric Hoffman<br>Fulbright & Jaworski L.L.P.<br>98 San Jacinto Blvd.<br>Suite 1100<br>Austin, TX 78701<br><br>Sarah P. Kelly<br>Nutter, McClennen & Fish, LLP<br>Seaport West<br>155 Seaport Boulevard<br>Boston, MA 02210-2604<br><br>*Attorneys for the Saint Thomas<br>Entities* |

/s/ Chris J. Tardio
**Chris J. Tardio**

15

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN RE:  NEW ENGLAND                )
COMPOUNDING PHARMACY, INC.         )     MDL No. 2419
PRODUCTS LIABILITY LITIGATION      )     Dkt. No. 1:13-md-2419-RWZ
                                   )
_____    )
                                   )
This Document Relates to Suits Naming:  )
                                   )
Suits Naming the Tennessee Clinic  )
Defendants                         )
                                   )

## THE TENNESSEE CLINIC DEFENDANTS'
## FIRST INTERROGATORIES, REQUESTS FOR PRODUCTON OF DOCUMENTS,
## AND REQUESTS FOR ADMISSION PROPOUNDED TO DOUGLAS CONIGLIARO.

Come the Defendants, Saint Thomas Outpatient Neurosurgical Center, LLC; Howell Allen Clinic, a Professional Corporation; John Culclasure, MD; Debra Schamberg, RN, CNOR; Vaughan Allen, MD; Specialty Surgery Center, Crossville, PLLC; Kenneth R. Lister, MD; Kenneth Lister, MD, PC; and Donald E. Jones, MD (collectively "Tennessee Clinic Defendants") , pursuant to Rules 26, 33, and 34 of the Federal Rules of Civil Procedure and the Local Rules for the District of Massachusetts, and propound the following Interrogatories, Requests for Production of Documents, and Requests for Admission to Douglas Conigliaro.

Each of the following Interrogatories shall be answered under oath, in writing, separately, to the fullest possible detail, and in accordance with the definitions and instructions set forth below. The answers shall be signed by the person making them, and a copy of the answers, together with objections, if any, shall be served within thirty (30) days after the service date of these Interrogatories.

You are under a duty to seasonably supplement your response with respect to any Interrogatory directly addressed to the identity and location of persons having knowledge of discoverable matters. You are under a duty to amend a prior response if you obtain information on the basis of which you know that the response was incorrect when made, or that the response, though correctly made, is no longer true, and the circumstances are such that a failure to amend the response is, in substance, a knowing concealment.

## **DEFINITIONS**

1.  As used in this document, the terms "person(s)" and "individual(s)" mean any natural individual in any capacity whatsoever or any entity or organization, including divisions, departments, and other units therein, and shall include, but not be limited to, a public or private corporation, partnership, joint venture, voluntary or unincorporated association, organization, proprietorship, trust, estate, governmental agency, commission, bureau, or department.

2.  As used in this document, the term "document" means any medium upon which intelligence or information can be recorded or retrieved, and includes without limitation, the original and each copy, regardless of origin and location, of any book, pamphlet, periodical, letter, memorandum (including any memorandum or report of a meeting or conversation), invoice, bill, order form, receipt, financial statement, accounting entry, diary, calendar, telex, telegram, cable, report, record, contract, agreement, study, handwritten note, draft, working paper, chart, paper, print, laboratory record, drawing or sketch, graph, index, lists, tape, photograph, microfilm, data sheet or data processing card, or any other written, recorded, transcribed, punched, taped, filmed, or graphic matter, however produced or reproduced, which is in your possession, custody, or control, or which <u>was</u>, but is no longer, in your possession, custody, or control.

3.  As used in this document, the terms "identification," "identify," or "identity," when used in reference to a natural individual, require you to state his or her full name and residential and business address. Use of the term "document" in connection with the Interrogatories requires you to state the number of pages and the nature of the document, its title, its date, the name or names of its authors, and recipients, and its present location and custodian.

4.  "You" and "your" refers to Douglas Conigliaro and each of his present and former agents, representatives, and employees, attorneys and accountants, and each person acting or purporting to act on his behalf.

5.  "Communication" means any oral or written utterance, notification, or statement of any nature whatsoever, by and to whomsoever made, including, but not limited to, correspondence, conversation, dialogue, discussions, interviews, consultants, and any other understanding between or among two or more persons.

## INSTRUCTIONS

1.  With respect to each Interrogatory, in addition to answering the question, you are to identify all documents that support, refer to, or evidence the subject matter of each Interrogatory and your answer thereto.

    If any or all identified documents are no longer in your possession, custody, or control because of destruction, loss, or any other reason, then you must do the following with respect to each and every document:

    A.  Describe the nature of the document;

    B.  State the date of the document;

    C.  Identify the persons who sent and received the original and the copy of the document;

    D.  State in as much detail as possible the contents of the documents; and

    E.  State the manner and date of disposition of the document.

    If you contend that you are entitled to withhold from production any or all documents identified herein on the basis of attorney-client privilege, the work-product doctrine, or any other ground, then do the following with respect to each and every document:

    A.  Describe the nature of the document;

    B.  State the date of the document;

    C.  Identify the persons who sent and received the original and a copy of the document;

    D.  State the subject matter of the document; and

    E.  State the basis upon which you contend you are entitled to withhold the document from production.

2.  All documents produced should be organized and labeled to correspond to the specific Request in response to which they are being made available or should be produced as they are kept in the usual course of business.

3.  The terms "and," "or," and "and/or" should be construed either disjunctively or conjunctively so as to bring within the scope of these Interrogatories and Requests any information that might otherwise be construed as outside their scope.

4.      The term "any" should be construed to include the word "all," and "all" should be construed to include "any."

5.      The present tense should be construed to include the past tense, and the past tense should be construed to include the present tense.

6.      The singular should be construed to include the plural, and the plural should be construed to include the singular.

7.      The terms "he" and "his" should be construed to include the words "she" and "her" or "hers," respectively and vice versa.

8.      "Relating to," when referring to a document shall mean mentioning, describing, connected to or with, or discussing the stated subject matter.

## INTERROGATORIES

On March 19, 2015, the Saint Thomas Entities sent their *First Set of Interrogatories, Requests for Production, and Requests for Admission to Douglas Conigliaro.* In order to minimize the impact of discovery on Douglas Conigliaro, these Tennessee Clinic Defendants **hereby adopt and incorporate, as if stated fully herein, Interrogatories 1-6** from the *Saint Thomas Entities' First Set of Interrogatories.*

1-6.     [The Tennessee Clinic Defendants adopt and incorporate, as if stated fully herein, Interrogatories 1-11 from the *Saint Thomas Entities' First Set of Interrogatories.*]

**ANSWER:**

7.     Describe in detail your role at NECC and Ameridose, including job title, job description, and a description of your daily duties and activities in 2011 and 2012.

**ANSWER:**

8.     Describe in detail the steps NECC took to compound, process, stopper, seal, package, and ship methylprednisolone acetate ("MPA") in 2011 and 2012, including but not limited to:

   a) The names of the individuals performing each step;

   b) The job titles for the individuals performing each step;

   c) The specific cleanroom or location in NECC's facility where each step took place;

   d) The tools, equipment, or machinery used for each step;

   e) Any changes to NECC's methods and procedures for compounding MPA, or the location where compounding MPA took place, that occurred in 2011 or 2012.

**ANSWER:**

9.     Identify the total amount of MPA that NECC, and separately Ameridose, produced in each quarter of 2010, 2011, and 2012.

**ANSWER:**

10.    Identify the types of vials and closures NECC used for MPA lots numbered
       052122012@68, 06292012@26, and 08102012@51 (collectively "Contaminated
       Lots"), including whether the vials and enclosures were prewashed or
       presterilized, and identify their manufacturer(s).

       **ANSWER:**

11.    Identify any and all complaints that NECC and Ameridose received related to the
       sterility or safety of their products, including but not limited to complaints by
       customers, current and former employees, and state and federal government
       agencies.

       **ANSWER:**

12.    Identify any customers of NECC and Ameridose who performed site visits prior to
       placing orders with either company.

       **ANSWER:**

13.    Describe any policies, procedures, or protocols relating to or regarding customer
       site visits to the NECC facility, including the areas you allowed customers to
       inspect.

       **ANSWER:**

14.    Identify any customers who asked for information about prior recalls of NECC and
       Ameridose products prior to placing orders with either company.

       **ANSWER:**

15.    Identify and describe any information you gave customers about recalled NECC
       and Ameridose products in 2011 and 2012.

       **ANSWER:**

16.    Identify any and all complaints NECC or Ameridose received related to their
       compliance with state or federal laws and regulations, including but not limited to
       complaints by customers, current and former employees, and state and federal
       government agencies.

       **ANSWER:**

17.    Identify and describe any way in which NECC's cleanrooms were modified, altered,
       or expanded by NECC or Ameridose.

       **ANSWER:**

18.  Identify any policies, procedures, or guidelines in place at NECC in 2012 that encouraged employees to disclose mistakes in the compounding process, even if the mistakes necessitated destruction of product or halting production.

**ANSWER:**

19.  Describe all disciplinary or enforcement action taken against NECC or Ameridose by any state or federal government agency.

**ANSWER:**

20.  Describe in detail Lisa Conigliaro Cadden's role at NECC in 2011 and 2012.

**ANSWER:**

## VERIFICATION

**STATE OF TENNESSEE**       )
                                    )
**COUNTY OF** _____ )

        I, _____, after being duly sworn, hereby make oath that the foregoing answers to interrogatories are true to the best of my knowledge, information, and belief.

_____

Sworn to and subscribed before me this \_\_\_\_\_ day of _____, 2015.

_____
                            **Notary Public**

My commission expires on: _____.

## REQUESTS FOR PRODUCTION

On March 19, 2015, the Saint Thomas Entities sent their *First Set of Interrogatories, Requests for Production, and Requests for Admission to Douglas Conigliaro.* In order to minimize the impact of discovery on Douglas Conigliaro, these Tennessee Clinic Defendants **hereby adopt and incorporate, as if stated fully herein, Requests for Production 1-38** from the *Saint Thomas Entities' First Requests for Production.* The "new" requests begin at Number 39.

1-38.  [The Tennessee Clinic Defendants adopt and incorporate, as if stated fully herein, Requests for Production 1-38 from the *Saint Thomas Entities' First Requests for Production.*]

**RESPONSE:**

39.  Produce all correspondence between you and any of the Tennessee Clinic Defendants, their employees, agents, or representatives.

**RESPONSE:**

40.  Produce all correspondence and documents referring or relating to the Tennessee Clinic Defendants' purchase of MPA from NECC in 2012.

**RESPONSE:**

41.  Produce all documents produced by the government to you during any civil, criminal, and administrative proceedings related to NECC's contaminated MPA.

**RESPONSE:**

42.  Produce all policies, procedures, guidelines, instructions and training documents referring or relating to the compounding of MPA at the NECC facility.

**RESPONSE:**

43.  Produce all documents referring or relating to NECC or Ameridose sending samples of insufficient size or volume to comply with USP 71 to ARL or any other testing laboratory.

**RESPONSE:**

44.  Produce all documents referring or relating to any sterility, potency, endotoxin, or fungal testing that you received from ARL or any other laboratory related to MPA compounded by NECC or Ameridose in 2011 and 2012.

**RESPONSE:**

45.   Produce all correspondence and documents referring or relating to fungal blooms or growth in or near NECC's cleanrooms.

**RESPONSE:**

46.   Produce documents referring or relating to complaints or communications with Liberty regarding the design, manufacture, or installation of the clean rooms at the NECC facility.

**RESPONSE:**

47.   Produce all documents referring or relating to any complaints that NECC or Ameridose received related to the sterility or safety of their products, including but not limited to complaints by customers, current or former employees, or state or federal government agencies.

**RESPONSE:**

48.   Produce all documents referring or relating to any complaints NECC or Ameridose received related to their compliance with state or federal laws and regulations, including but not limited to complaints by customers, current or former employees, or state or federal government agencies.

**RESPONSE:**

49.   Produce all correspondence and documents referring or relating to NECC's response to the meningitis outbreak, including but not limited to, steps NECC took to prepare for any inspections of its facility.

**RESPONSE:**

50.   Produce all training and instructional material for sales staff at NECC or MSM.

**RESPONSE:**

### REQUESTS FOR ADMISSION

On March 19, 2015, the Saint Thomas Entities sent their *First Set of Interrogatories, Requests for Production, and Requests for Admission to Douglas Conigliaro.* In order to minimize the impact of discovery on Douglas Conigliaro, these Tennessee Clinic Defendants **hereby adopt and incorporate, as if stated fully herein, Requests for Admission 1-10** from the *Saint Thomas Entities' First Requests for Admission.* The "new" requests begin at Number 11.

1-10. [The Tennessee Clinic Defendants adopt and incorporate, as if stated fully herein, Requests for Admission 1-10 from the *Saint Thomas Entities' First Requests for Admission.*]

**ANSWER:**

11. Admit that, had any of the Tennessee Clinic Defendants asked for a copy of NECC's license in 2011, you would have provided a valid and up-to-date Tennessee pharmacy license.

**ANSWER:**

12. Admit that NECC represented to its customers, including the Tennessee Clinic Defendants, that it met or exceeded USP 797 standards.

**ANSWER:**

13. Admit that NECC represented its customers, including the Tennessee Clinic Defendants, that its products, including MPA, were safe and sterile.

**ANSWER:**

14. Admit that the Massachusetts Board of Pharmacy ("Mass. BoP") inspected NECC on or about May 24, 2011.

**ANSWER:**

15. Admit that as a result of its inspection on or about May 24, 2011 the Mass. BoP issued an inspection report documenting its findings.

**ANSWER:**

16. Admit that NECC failed to submit a copy of the Mass. BoP's May 24, 2011 inspection report to the Tennessee Board of Pharmacy.

**ANSWER:**

11

17.   Admit that you NECC had a duty to ensure that its MPA was sterile prior to distributing it to customers.

**ANSWER:**

Respectfully submitted,

**GIDEON, COOPER & ESSARY, PLC**

/s/ Chris J. Tardio
**C.J. Gideon, Jr.***
**Chris J. Tardio***
**Alan S. Bean****
**Matthew H. Cline***
315 Deaderick Street, Suite
Nashville, TN 37238
Ph: (615) 254-0400
Fax: (515) 254-0459
chris@gideoncooper.com

***Attorneys for the Tennessee Clinic Defendants***

* Admitted pursuant to MDL Order No. 1.
** Admitted *pro hac vice*.

## CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of March, 2015, a true and accurate copy of the foregoing was served on Douglas Conigliaro by U.S. mail and on the other parties below electronically via the Court's CM/ECF system:

| | |
|---|---|
| Gerard Stranch, IV<br>Ben Gastel<br>Branstetter, Stranch & Jennings, PLLC<br>227 2nd Ave N<br>Suite 400<br>Nashville, TN 37201<br><br>*Attorneys for the PSC*<br><br>[via hand-delivery, to upload to repository] | Matthew P. Moriarty<br>Thomas W. Coffey<br>Richard A. Dean<br>Tucker Ellis, LLP<br>950 Main Avenue, Suite 1100<br>Cleveland, OH 44113<br><br>Scott H. Kremer<br>Tucker, Heifetz & Saltzman<br>Three School Street<br>Boston, MA 02108<br><br>Scott J. Tucker<br>Paul Saltzman<br>Matthew E. Mantalos<br>Tucker, Saltzman & Dyer, LLP<br>50 Congress Street<br>Boston, MA 02109<br><br>*Attorneys for Defendant Ameridose, LLC* |
| Daniel M. Rabinovitz<br>Brady J. Hermann<br>Nicki Samson<br>Michaels, Ward & Rabinovitz<br>One Beacon Street , 2nd Floor<br>Boston, MA 02108<br><br>*Attorneys for Defendant Medical Sales Management, Inc.* | John P. Ryan<br>Robert H. Gaynor<br>William J. Dailey, Jr.<br>Sloane and Walsh, LLP<br>Three Center Plaza<br>Boston, MA 02108<br><br>*Attorneys for Gregory Conigliaro, Registered Agent for Service of Process for Medical Sales Management SW, Inc.* |

Joseph P. Thomas
Ulmer & Berne, LLP
600 Vine Street, Suite 2800
Cincinnati, OH 45202

Joshua A. Klarfeld
Ulmer & Berne, LLP
1660 W.2nd Street, Suite 1100
Cleveland, OH 44113

*Attorneys for Defendant*
*GDC Properties Management, LLC*

Kenneth B. Walton
Kristen R. Ragosta
Donovan Hatem, LLP
Two Seaport Lane, 8th Floor
Boston, MA 02210

*Attorneys for Defendant*
*ARL Bio Pharma*

John P. Ryan
Robert H. Gaynor
William J. Dailey, Jr.
Sloane and Walsh, LLP
Three Center Plaza
Boston, MA 02108

*Attorneys for Defendants Barry J. Cadden,*
*Lisa Conigliaro Cadden, Gregory Conigliaro,*
*Carla Conigliaro, Douglas Conigliaro and*
*Glenn A. Chin*

Bruce A. Singal
Michelle R. Peirce
Callan G. Stein
Donague, Barrett & Singal, P.C.
One Beacon Street , Suite 1320
Boston, MA 02108

*Attorneys  for Defendants Barry J. Cadden and*
*Lisa Conigliaro Cadden*

Damian W. Wilmot
James Rehnquist
Abigail K. Hemani
Roberto M. Braceras
Goodwin Procter LLP
Exchange Place
53 State Street
Boston, MA 02109

*Attorneys for Unifirst Corporation*
*a/d/b/a Uniclean Cleanroom Services*

Parks Chastain
Jason Lee
Brewer, Krause, Brooks, Chastain &
Burrow, PLLC
611 Commerce St., Suite 2600
P.O. Box 23890
Nashville, TN 37202
615-256-8787
Fax: 615-256-8985

*Attorneys for Specialty Surgery*
*Center, Crossville, PLLC*

14

| | |
|---|---|
| Frederick H. Fern<br>Judi Abbott Curry<br>Jessica Saunders Eichel<br>Alan M. Winchester<br>Harris Beach PLLC<br>100 Wall Street<br>23rd Floor<br>New York, NY 10005<br><br>Geoffrey M. Coan<br>Daniel E. Tranen<br>Hinshaw & Culbertson LLP<br>28 State Street<br>24th Floor<br>Boston, MA 02109<br><br>Michael R. Gottfried<br>Thomas B.K. Ringe, III<br>Jennifer Mikels<br>Duane Morris LLP<br>100 High Street<br>Suite 2400<br>Boston, MA 02110-1724<br><br>*Attorneys for NECC* | Marcy H. Greer<br>Alexander Dubose Jefferson &<br>Townsent<br>515 Congress Ave.<br>Suite 2350<br>Austin, TX 78701<br><br>Yvonne K. Puig<br>Eric Hoffman<br>Fulbright & Jaworski L.L.P.<br>98 San Jacinto Blvd.<br>Suite 1100<br>Austin, TX 78701<br><br>Sarah P. Kelly<br>Nutter, McClennen & Fish, LLP<br>Seaport West<br>155 Seaport Boulevard<br>Boston, MA 02210-2604<br><br>*Attorneys for the Saint Thomas*<br>*Entities* |

/s/ Chris J. Tardio
**Chris J. Tardio**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE:  NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | )  MDL No. 2419 )  Dkt. No. 1:13-md-2419-RWZ ) |
| | ) |
| This Document Relates to Suits Naming: | ) |
| | ) |
| Suits Naming the Tennessee Clinic Defendants | ) |

---

**THE TENNESSEE CLINIC DEFENDANTS'**
**FIRST INTERROGATORIES, REQUESTS FOR PRODUCTON OF DOCUMENTS,**
**AND REQUESTS FOR ADMISSION PROPOUNDED TO GREGORY CONIGLIARO.**

---

Come the Defendants, Saint Thomas Outpatient Neurosurgical Center, LLC; Howell Allen Clinic, a Professional Corporation; John Culclasure, MD; Debra Schamberg, RN, CNOR; Vaughan Allen, MD; Specialty Surgery Center, Crossville, PLLC; Kenneth R. Lister, MD; Kenneth Lister, MD, PC; and Donald E. Jones, MD (collectively "Tennessee Clinic Defendants") , pursuant to Rules 26, 33, and 34 of the Federal Rules of Civil Procedure and the Local Rules for the District of Massachusetts, and propound the following Interrogatories, Requests for Production of Documents, and Requests for Admission to Gregory Conigliaro.

Each of the following Interrogatories shall be answered under oath, in writing, separately, to the fullest possible detail, and in accordance with the definitions and instructions set forth below. The answers shall be signed by the person making them, and a copy of the answers, together with objections, if any, shall be served within thirty (30) days after the service date of these Interrogatories.

You are under a duty to seasonably supplement your response with respect to any Interrogatory directly addressed to the identity and location of persons having knowledge of discoverable matters. You are under a duty to amend a prior response if you obtain information on the basis of which you know that the response was incorrect when made, or that the response, though correctly made, is no longer true, and the circumstances are such that a failure to amend the response is, in substance, a knowing concealment.

# DEFINITIONS

1.  As used in this document, the terms "person(s)" and "individual(s)" mean any natural individual in any capacity whatsoever or any entity or organization, including divisions, departments, and other units therein, and shall include, but not be limited to, a public or private corporation, partnership, joint venture, voluntary or unincorporated association, organization, proprietorship, trust, estate, governmental agency, commission, bureau, or department.

2.  As used in this document, the term "document" means any medium upon which intelligence or information can be recorded or retrieved, and includes without limitation, the original and each copy, regardless of origin and location, of any book, pamphlet, periodical, letter, memorandum (including any memorandum or report of a meeting or conversation), invoice, bill, order form, receipt, financial statement, accounting entry, diary, calendar, telex, telegram, cable, report, record, contract, agreement, study, handwritten note, draft, working paper, chart, paper, print, laboratory record, drawing or sketch, graph, index, lists, tape, photograph, microfilm, data sheet or data processing card, or any other written, recorded, transcribed, punched, taped, filmed, or graphic matter, however produced or reproduced, which is in your possession, custody, or control, or which <u>was</u>, but is no longer, in your possession, custody, or control.

3.  As used in this document, the terms "identification," "identify," or "identity," when used in reference to a natural individual, require you to state his or her full name and residential and business address. Use of the term "document" in connection with the Interrogatories requires you to state the number of pages and the nature of the document, its title, its date, the name or names of its authors, and recipients, and its present location and custodian.

4.  "You" and "your" refers to Gregory Conigliaro and each of his present and former agents, representatives, and employees, attorneys and accountants, and each person acting or purporting to act on his behalf.

5.  "Communication" means any oral or written utterance, notification, or statement of any nature whatsoever, by and to whomsoever made, including, but not limited to, correspondence, conversation, dialogue, discussions, interviews, consultants, and any other understanding between or among two or more persons.

## INSTRUCTIONS

1.    With respect to each Interrogatory, in addition to answering the question, you are to identify all documents that support, refer to, or evidence the subject matter of each Interrogatory and your answer thereto.

If any or all identified documents are no longer in your possession, custody, or control because of destruction, loss, or any other reason, then you must do the following with respect to each and every document:

A.    Describe the nature of the document;

B.    State the date of the document;

C.    Identify the persons who sent and received the original and the copy of the document;

D.    State in as much detail as possible the contents of the documents; and

E.    State the manner and date of disposition of the document.

If you contend that you are entitled to withhold from production any or all documents identified herein on the basis of attorney-client privilege, the work-product doctrine, or any other ground, then do the following with respect to each and every document:

A.    Describe the nature of the document;

B.    State the date of the document;

C.    Identify the persons who sent and received the original and a copy of the document;

D.    State the subject matter of the document; and

E.    State the basis upon which you contend you are entitled to withhold the document from production.

2.    All documents produced should be organized and labeled to correspond to the specific Request in response to which they are being made available or should be produced as they are kept in the usual course of business.

3.    The terms "and," "or," and "and/or" should be construed either disjunctively or conjunctively so as to bring within the scope of these Interrogatories and Requests any information that might otherwise be construed as outside their scope.

4.      The term "any" should be construed to include the word "all," and "all" should be construed to include "any."

5.      The present tense should be construed to include the past tense, and the past tense should be construed to include the present tense.

6.      The singular should be construed to include the plural, and the plural should be construed to include the singular.

7.      The terms "he" and "his" should be construed to include the words "she" and "her" or "hers," respectively and vice versa.

8.      "Relating to," when referring to a document shall mean mentioning, describing, connected to or with, or discussing the stated subject matter.

## INTERROGATORIES

On March 19, 2015, the Saint Thomas Entities sent their *First Set of Interrogatories, Requests for Production, and Requests for Admission to Gregory Conigliaro.* In order to minimize the impact of discovery on Gregory Conigliaro, these Tennessee Clinic Defendants **hereby adopt and incorporate, as if stated fully herein, Interrogatories 1-6** from the *Saint Thomas Entities' First Set of Interrogatories.*

1-6.    [The Tennessee Clinic Defendants adopt and incorporate, as if stated fully herein, Interrogatories 1-11 from the *Saint Thomas Entities' First Set of Interrogatories.*]

**ANSWER:**

7.    Describe in detail your role at NECC and Ameridose, including job title, job description, and a description of your daily duties and activities in 2011 and 2012.

**ANSWER:**

8.    Describe in detail the steps NECC took to compound, process, stopper, seal, package, and ship methylprednisolone acetate ("MPA") in 2011 and 2012, including but not limited to:

a)  The names of the individuals performing each step;

b)  The job titles for the individuals performing each step;

c)  The specific cleanroom or location in NECC's facility where each step took place;

d)  The tools, equipment, or machinery used for each step;

e)  Any changes to NECC's methods and procedures for compounding MPA, or the location where compounding MPA took place, that occurred in 2011 or 2012.

**ANSWER:**

9.    Identify the total amount of MPA that NECC, and separately Ameridose, produced in each quarter of 2010, 2011, and 2012.

**ANSWER:**

10.     Identify the types of vials and closures NECC used for MPA lots numbered 052122012@68, 06292012@26, and 08102012@51 (collectively "Contaminated Lots"), including whether the vials and enclosures were prewashed or presterilized, and identify their manufacturer(s).

**ANSWER:**

11.     Identify any and all complaints that NECC and Ameridose received related to the sterility or safety of their products, including but not limited to complaints by customers, current and former employees, and state and federal government agencies.

**ANSWER:**

12.     Identify any customers of NECC and Ameridose who performed site visits prior to placing orders with either company.

**ANSWER:**

13.     Describe any policies, procedures, or protocols relating to or regarding customer site visits to the NECC facility, including the areas you allowed customers to inspect.

**ANSWER:**

14.     Identify any customers who asked for information about prior recalls of NECC and Ameridose products prior to placing orders with either company.

**ANSWER:**

15.     Identify and describe any information you gave customers about recalled NECC and Ameridose products in 2011 and 2012.

**ANSWER:**

16.     Identify any and all complaints NECC or Ameridose received related to their compliance with state or federal laws and regulations, including but not limited to complaints by customers, current and former employees, and state and federal government agencies.

**ANSWER:**

17.     Identify and describe any way in which NECC's cleanrooms were modified, altered, or expanded by NECC or Ameridose.

**ANSWER:**

18.   Identify any policies, procedures, or guidelines in place at NECC in 2012 that encouraged employees to disclose mistakes in the compounding process, even if the mistakes necessitated destruction of product or halting production.

**ANSWER:**

19.   Describe all disciplinary or enforcement action taken against NECC or Ameridose by any state or federal government agency.

**ANSWER:**

20.   Describe in detail Lisa Conigliaro Cadden's role at NECC in 2011 and 2012.

**ANSWER:**

## <u>VERIFICATION</u>

**STATE OF TENNESSEE** )
                                              )
**COUNTY OF _____** )

      I, _____, after being duly sworn, hereby make oath that the foregoing answers to interrogatories are true to the best of my knowledge, information, and belief.


_____


Sworn to and subscribed before me this _____ day of _____, 2015.


_____
                                          **Notary Public**


My commission expires on: _____.

8

## REQUESTS FOR PRODUCTION

On March 19, 2015, the Saint Thomas Entities sent their *First Set of Interrogatories, Requests for Production, and Requests for Admission to Gregory Conigliaro*. In order to minimize the impact of discovery on Gregory Conigliaro, these Tennessee Clinic Defendants **hereby adopt and incorporate, as if stated fully herein, Requests for Production 1-38** from the *Saint Thomas Entities' First Requests for Production*. The "new" requests begin at Number 39.

1-38.   [The Tennessee Clinic Defendants adopt and incorporate, as if stated fully herein, Requests for Production 1-38 from the *Saint Thomas Entities' First Requests for Production*.]

**RESPONSE:**

39.   Produce all correspondence between you and any of the Tennessee Clinic Defendants, their employees, agents, or representatives.

**RESPONSE:**

40.   Produce all correspondence and documents referring or relating to the Tennessee Clinic Defendants' purchase of MPA from NECC in 2012.

**RESPONSE:**

41.   Produce all documents produced by the government to you during any civil, criminal, or administrative proceedings related to NECC's contaminated MPA.

**RESPONSE:**

42.   Produce all policies, procedures, guidelines, instructions and training documents referring or relating to the compounding of MPA at the NECC facility.

**RESPONSE:**

43.   Produce all documents referring or relating to NECC or Ameridose sending samples of insufficient size or volume to comply with USP 71 to ARL or any other testing laboratory.

**RESPONSE:**

44.   Produce all documents referring or relating to any sterility, potency, endotoxin, or fungal testing that you received from ARL or any other laboratory related to MPA compounded by NECC or Ameridose in 2011 and 2012.

**RESPONSE:**

45.    Produce all correspondence and documents referring or relating to fungal blooms or growth in or near NECC's cleanrooms.

**RESPONSE:**

46.    Produce documents referring or relating to complaints or communications with Liberty regarding the design, manufacture, or installation of the clean rooms at the NECC facility.

**RESPONSE:**

47.    Produce all documents referring or relating to any complaints that NECC or Ameridose received related to the sterility or safety of their products, including but not limited to complaints by customers, current or former employees, or state or federal government agencies.

**RESPONSE:**

48.    Produce all documents referring or relating to any complaints NECC or Ameridose received related to their compliance with state or federal laws and regulations, including but not limited to complaints by customers, current or former employees, or state or federal government agencies.

**RESPONSE:**

49.    Produce all correspondence and documents referring or relating to NECC's response to the meningitis outbreak, including but not limited to, steps NECC took to prepare for any inspections of its facility.

**RESPONSE:**

50.    Produce all training and instructional material for sales staff at NECC or MSM.

**RESPONSE:**

## REQUESTS FOR ADMISSION

On March 19, 2015, the Saint Thomas Entities sent their *First Set of Interrogatories, Requests for Production, and Requests for Admission to Gregory Conigliaro.* In order to minimize the impact of discovery on Gregory Conigliaro, these Tennessee Clinic Defendants **hereby adopt and incorporate, as if stated fully herein, Requests for Admission 1-19** from the *Saint Thomas Entities' First Requests for Admission.* The "new" requests begin at Number 20.

1-19.   [The Tennessee Clinic Defendants adopt and incorporate, as if stated fully herein, Requests for Admission 1-19 from the *Saint Thomas Entities' First Requests for Admission.*]

**ANSWER:**

20.   Admit that, had any of the Tennessee Clinic Defendants asked for a copy of NECC's license in 2011, you would have provided a valid and up-to-date Tennessee pharmacy license.

**ANSWER:**

21.   Admit that NECC represented to its customers, including the Tennessee Clinic Defendants, that it met or exceeded USP 797 standards.

**ANSWER:**

22.   Admit that NECC represented to its customers, including the Tennessee Clinic Defendants, that its products, including MPA, were safe and sterile.

**ANSWER:**

23.   Admit that the Massachusetts Board of Pharmacy ("Mass. BoP") inspected NECC on or about May 24, 2011.

**ANSWER:**

24.   Admit that as a result of its inspection on or about May 24, 2011 the Mass. BoP issued an inspection report documenting its findings.

**ANSWER:**

25.   Admit that NECC failed to submit a copy of the Mass. BoP's May 24, 2011 inspection report to the Tennessee Board of Pharmacy.

**ANSWER:**

11

26. Admit that you NECC owed a duty to its customers to ensure that its MPA was sterile prior to distributing it.

**ANSWER:**

Respectfully submitted,

**GIDEON, COOPER & ESSARY, PLC**

/s/ Chris J. Tardio
**C.J. Gideon, Jr.***
**Chris J. Tardio***
**Alan S. Bean****
**Matthew H. Cline***
315 Deaderick Street, Suite
Nashville, TN 37238
Ph: (615) 254-0400
Fax: (515) 254-0459
chris@gideoncooper.com

***Attorneys for the Tennessee Clinic Defendants***

* Admitted pursuant to MDL Order No. 1.
** Admitted *pro hac vice.*

12

## CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of March, 2015, a true and accurate copy of the foregoing was served on Gregory Conigliaro by U.S. mail and on the other parties below electronically via the Court's CM/ECF system:

| | |
|---|---|
| Gerard Stranch, IV<br>Ben Gastel<br>Branstetter, Stranch & Jennings, PLLC<br>227 2nd Ave N<br>Suite 400<br>Nashville, TN 37201<br><br>*Attorneys for the PSC*<br><br>[via hand-delivery, to upload to repository] | Matthew P. Moriarty<br>Thomas W. Coffey<br>Richard A. Dean<br>Tucker Ellis, LLP<br>950 Main Avenue, Suite 1100<br>Cleveland, OH 44113<br><br>Scott H. Kremer<br>Tucker, Heifetz & Saltzman<br>Three School Street<br>Boston, MA 02108<br><br>Scott J. Tucker<br>Paul Saltzman<br>Matthew E. Mantalos<br>Tucker, Saltzman & Dyer, LLP<br>50 Congress Street<br>Boston, MA 02109<br><br>*Attorneys for Defendant Ameridose, LLC* |
| Daniel M. Rabinovitz<br>Brady J. Hermann<br>Nicki Samson<br>Michaels, Ward & Rabinovitz<br>One Beacon Street , 2nd Floor<br>Boston, MA 02108<br><br>*Attorneys for Defendant Medical Sales Management, Inc.* | John P. Ryan<br>Robert H. Gaynor<br>William J. Dailey, Jr.<br>Sloane and Walsh, LLP<br>Three Center Plaza<br>Boston, MA 02108<br><br>*Attorneys for Gregory Conigliaro, Registered Agent for Service of Process for Medical Sales Management SW, Inc.* |

| | |
|---|---|
| Joseph P. Thomas<br>Ulmer & Berne, LLP<br>600 Vine Street, Suite 2800<br>Cincinnati, OH 45202<br><br>Joshua A. Klarfeld<br>Ulmer & Berne, LLP<br>1660 W.2nd Street, Suite 1100<br>Cleveland, OH 44113<br><br>*Attorneys for Defendant*<br>*GDC Properties Management, LLC* | Kenneth B. Walton<br>Kristen R. Ragosta<br>Donovan Hatem, LLP<br>Two Seaport Lane, 8th Floor<br>Boston, MA 02210<br><br>*Attorneys for Defendant*<br>*ARL Bio Pharma* |
| John P. Ryan<br>Robert H. Gaynor<br>William J. Dailey, Jr.<br>Sloane and Walsh, LLP<br>Three Center Plaza<br>Boston, MA 02108<br><br>*Attorneys  for Defendants Barry J. Cadden,*<br>*Lisa Conigliaro Cadden, Gregory Conigliaro,*<br>*Carla Conigliaro, Douglas Conigliaro and*<br>*Glenn A. Chin*<br><br>Bruce A. Singal<br>Michelle R. Peirce<br>Callan G. Stein<br>Donague, Barrett & Singal, P.C.<br>One Beacon Street , Suite 1320<br>Boston, MA 02108<br><br>*Attorneys  for Defendants Barry J. Cadden and*<br>*Lisa Conigliaro Cadden* | Damian W. Wilmot<br>James Rehnquist<br>Abigail K. Hemani<br>Roberto M. Braceras<br>Goodwin Procter LLP<br>Exchange Place<br>53 State Street<br>Boston, MA 02109<br><br>*Attorneys for Unifirst Corporation*<br>*a/d/b/a Uniclean Cleanroom Services*<br><br>Parks Chastain<br>Jason Lee<br>Brewer, Krause, Brooks, Chastain &<br>Burrow, PLLC<br>611 Commerce St., Suite 2600<br>P.O. Box 23890<br>Nashville, TN  37202<br>615-256-8787<br>Fax:  615-256-8985<br><br>*Attorneys for Specialty Surgery*<br>*Center, Crossville, PLLC* |

14

| | |
|---|---|
| Frederick H. Fern<br>Judi Abbott Curry<br>Jessica Saunders Eichel<br>Alan M. Winchester<br>Harris Beach PLLC<br>100 Wall Street<br>23rd Floor<br>New York, NY 10005<br><br>Geoffrey M. Coan<br>Daniel E. Tranen<br>Hinshaw & Culbertson LLP<br>28 State Street<br>24th Floor<br>Boston, MA 02109<br><br>Michael R. Gottfried<br>Thomas B.K. Ringe, III<br>Jennifer Mikels<br>Duane Morris LLP<br>100 High Street<br>Suite 2400<br>Boston, MA 02110-1724<br><br>*Attorneys for NECC* | Marcy H. Greer<br>Alexander Dubose Jefferson &<br>Townsent<br>515 Congress Ave.<br>Suite 2350<br>Austin, TX 78701<br><br>Yvonne K. Puig<br>Eric Hoffman<br>Fulbright & Jaworski L.L.P.<br>98 San Jacinto Blvd.<br>Suite 1100<br>Austin, TX 78701<br><br>Sarah P. Kelly<br>Nutter, McClennen & Fish, LLP<br>Seaport West<br>155 Seaport Boulevard<br>Boston, MA 02210-2604<br><br>*Attorneys for the Saint Thomas<br>Entities* |

/s/ Chris J. Tardio
**Chris J. Tardio**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN RE:  NEW ENGLAND
COMPOUNDING PHARMACY, INC.
PRODUCTS LIABILITY LITIGATION

)
)
)
)
)
)
)
)
)
)
)

MDL No. 2419
Dkt. No. 1:13-md-2419-RWZ

This Document Relates to Suits Naming:

Suits Naming the Tennessee Clinic
Defendants

## THE TENNESSEE CLINIC DEFENDANTS'
## FIRST INTERROGATORIES, REQUESTS FOR PRODUCTON OF DOCUMENTS,
## AND REQUESTS FOR ADMISSION PROPOUNDED TO LISA CONIGLIARO
## CADDEN.

Come the Defendants, Saint Thomas Outpatient Neurosurgical Center, LLC; Howell Allen Clinic, a Professional Corporation; John Culclasure, MD; Debra Schamberg, RN, CNOR; Vaughan Allen, MD; Specialty Surgery Center, Crossville, PLLC; Kenneth R. Lister, MD; Kenneth Lister, MD, PC; and Donald E. Jones, MD (collectively "Tennessee Clinic Defendants"), pursuant to Rules 26, 33, and 34 of the Federal Rules of Civil Procedure and the Local Rules for the District of Massachusetts, and propound the following Interrogatories, Requests for Production of Documents, and Requests for Admission to Lisa Conigliaro Cadden.

Each of the following Interrogatories shall be answered under oath, in writing, separately, to the fullest possible detail, and in accordance with the definitions and instructions set forth below. The answers shall be signed by the person making them, and a copy of the answers, together with objections, if any, shall be served within thirty (30) days after the service date of these Interrogatories.

You are under a duty to seasonably supplement your response with respect to any Interrogatory directly addressed to the identity and location of persons having knowledge of discoverable matters. You are under a duty to amend a prior response if you obtain information on the basis of which you know that the response was incorrect when made, or that the response, though correctly made, is no longer true, and the circumstances are such that a failure to amend the response is, in substance, a knowing concealment.

## DEFINITIONS

1.  As used in this document, the terms "person(s)" and "individual(s)" mean any natural individual in any capacity whatsoever or any entity or organization, including divisions, departments, and other units therein, and shall include, but not be limited to, a public or private corporation, partnership, joint venture, voluntary or unincorporated association, organization, proprietorship, trust, estate, governmental agency, commission, bureau, or department.

2.  As used in this document, the term "document" means any medium upon which intelligence or information can be recorded or retrieved, and includes without limitation, the original and each copy, regardless of origin and location, of any book, pamphlet, periodical, letter, memorandum (including any memorandum or report of a meeting or conversation), invoice, bill, order form, receipt, financial statement, accounting entry, diary, calendar, telex, telegram, cable, report, record, contract, agreement, study, handwritten note, draft, working paper, chart, paper, print, laboratory record, drawing or sketch, graph, index, lists, tape, photograph, microfilm, data sheet or data processing card, or any other written, recorded, transcribed, punched, taped, filmed, or graphic matter, however produced or reproduced, which is in your possession, custody, or control, or which was, but is no longer, in your possession, custody, or control.

3.  As used in this document, the terms "identification," "identify," or "identity," when used in reference to a natural individual, require you to state his or her full name and residential and business address. Use of the term "document" in connection with the Interrogatories requires you to state the number of pages and the nature of the document, its title, its date, the name or names of its authors, and recipients, and its present location and custodian.

4.  "You" and "your" refers to Lisa Conigliaro Cadden and each of his present and former agents, representatives, and employees, attorneys and accountants, and each person acting or purporting to act on his behalf.

5.  "Communication" means any oral or written utterance, notification, or statement of any nature whatsoever, by and to whomsoever made, including, but not limited to, correspondence, conversation, dialogue, discussions, interviews, consultants, and any other understanding between or among two or more persons.

2

## **INSTRUCTIONS**

1.     With respect to each Interrogatory, in addition to answering the question, you are to identify all documents that support, refer to, or evidence the subject matter of each Interrogatory and your answer thereto.

   If any or all identified documents are no longer in your possession, custody, or control because of destruction, loss, or any other reason, then you must do the following with respect to each and every document:

   A.     Describe the nature of the document;

   B.     State the date of the document;

   C.     Identify the persons who sent and received the original and the copy of the document;

   D.     State in as much detail as possible the contents of the documents; and

   E.     State the manner and date of disposition of the document.

   If you contend that you are entitled to withhold from production any or all documents identified herein on the basis of attorney-client privilege, the work-product doctrine, or any other ground, then do the following with respect to each and every document:

   A.     Describe the nature of the document;

   B.     State the date of the document;

   C.     Identify the persons who sent and received the original and a copy of the document;

   D.     State the subject matter of the document; and

   E.     State the basis upon which you contend you are entitled to withhold the document from production.

2.     All documents produced should be organized and labeled to correspond to the specific Request in response to which they are being made available or should be produced as they are kept in the usual course of business.

3.     The terms "and," "or," and "and/or" should be construed either disjunctively or conjunctively so as to bring within the scope of these Interrogatories and Requests any information that might otherwise be construed as outside their scope.

4.    The term "any" should be construed to include the word "all," and "all" should be construed to include "any."

5.    The present tense should be construed to include the past tense, and the past tense should be construed to include the present tense.

6.    The singular should be construed to include the plural, and the plural should be construed to include the singular.

7.    The terms "he" and "his" should be construed to include the words "she" and "her" or "hers," respectively and vice versa.

8.    "Relating to," when referring to a document shall mean mentioning, describing, connected to or with, or discussing the stated subject matter.

## INTERROGATORIES

On March 19, 2015, the Saint Thomas Entities sent their *First Set of Interrogatories, Requests for Production, and Requests for Admission to Lisa Conigliaro Cadden*. In order to minimize the impact of discovery on Lisa Conigliaro Cadden, these Tennessee Clinic Defendants **hereby adopt and incorporate, as if stated fully herein, Interrogatories 1-6** from the *Saint Thomas Entities' First Set of Interrogatories*.

1-6.    [The Tennessee Clinic Defendants adopt and incorporate, as if stated fully herein, Interrogatories 1-11 from the *Saint Thomas Entities' First Set of Interrogatories*.]

   **ANSWER:**

7.    Describe in detail your role at NECC and Ameridose, including job title, job description, and a description of your daily duties and activities in 2011 and 2012.

   **ANSWER:**

8.    Describe in detail the steps NECC took to compound, process, stopper, seal, package, and ship methylprednisolone acetate ("MPA") in 2011 and 2012, including but not limited to:

   a)  The names of the individuals performing each step;

   b)  The job titles for the individuals performing each step;

   c)  The specific cleanroom or location in NECC's facility where each step took place;

   d)  The tools, equipment, or machinery used for each step;

   e)  Any changes to NECC's methods and procedures for compounding MPA, or the location where compounding MPA took place, that occurred in 2011 or 2012.

   **ANSWER:**

9.    Identify the total amount of MPA that NECC, and separately Ameridose, produced in each quarter of 2010, 2011, and 2012.

   **ANSWER:**

5

10.   Identify the types of vials and closures NECC used for MPA lots numbered 052122012@68, 06292012@26, and 08102012@51 (collectively "Contaminated Lots"), including whether the vials and enclosures were prewashed or presterilized, and identify their manufacturer(s).

   **ANSWER:**

11.   Identify any and all complaints that NECC and Ameridose received related to the sterility or safety of their products, including but not limited to complaints by customers, current and former employees, and state and federal government agencies.

   **ANSWER:**

12.   Identify any customers of NECC and Ameridose who performed site visits prior to placing orders with either company.

   **ANSWER:**

13.   Describe any policies, procedures, or protocols relating to or regarding customer site visits to the NECC facility, including the areas you allowed customers to inspect.

   **ANSWER:**

14.   Identify any customers who asked for information about prior recalls of NECC and Ameridose products prior to placing orders with either company.

   **ANSWER:**

15.   Identify and describe any information you gave customers about recalled NECC and Ameridose products in 2011 and 2012.

   **ANSWER:**

16.   Identify any and all complaints NECC or Ameridose received related to their compliance with state or federal laws and regulations, including but not limited to complaints by customers, current and former employees, and state and federal government agencies.

   **ANSWER:**

17.   Identify and describe any way in which NECC's cleanrooms were modified, altered, or expanded by NECC or Ameridose.

   **ANSWER:**

6

18.     Identify any policies, procedures, or guidelines in place at NECC in 2012 that encouraged employees to disclose mistakes in the compounding process, even if the mistakes necessitated destruction of product or halting production.

**<u>ANSWER:</u>**

19.     Describe all disciplinary or enforcement action taken against NECC or Ameridose by any state or federal government agency.

**<u>ANSWER:</u>**

## VERIFICATION

**STATE OF TENNESSEE**     )
                                   )
**COUNTY OF** _____ )

     I, _____, after being duly sworn, hereby make oath that the foregoing answers to interrogatories are true to the best of my knowledge, information, and belief.

_____

Sworn to and subscribed before me this _____ day of _____, 2015.

_____
                                   **Notary Public**

My commission expires on: _____.

8

## REQUESTS FOR PRODUCTION

On March 19, 2015, the Saint Thomas Entities sent their *First Set of Interrogatories, Requests for Production, and Requests for Admission to Lisa Conigliaro Cadden.* In order to minimize the impact of discovery on Lisa Conigliaro Cadden, these Tennessee Clinic Defendants **hereby adopt and incorporate, as if stated fully herein, Requests for Production 1-39** from the *Saint Thomas Entities' First Requests for Production.* The "new" requests begin at Number 40.

1-39. [The Tennessee Clinic Defendants adopt and incorporate, as if stated fully herein, Requests for Production 1-39 from the *Saint Thomas Entities' First Requests for Production.*]

**RESPONSE:**

40.    Produce all correspondence between you and any of the Tennessee Clinic Defendants, their employees, agents, or representatives.

**RESPONSE:**

41.    Produce all correspondence and documents referring or relating to the Tennessee Clinic Defendants' purchase of MPA from NECC in 2012.

**RESPONSE:**

42.    Produce all documents produced by the government to you during any civil, criminal, and administrative proceedings related to NECC's contaminated MPA.

**RESPONSE:**

43.    Produce all policies, procedures, guidelines, instructions and training documents referring or relating to the compounding of MPA at the NECC facility.

**RESPONSE:**

44.    Produce all documents referring or relating to NECC or Ameridose sending samples of insufficient size or volume to comply with USP 71 to ARL or any other testing laboratory.

**RESPONSE:**

45.    Produce all documents referring or relating to any sterility, potency, endotoxin, or fungal testing that you received from ARL or any other laboratory related to MPA compounded by NECC or Ameridose in 2011 and 2012.

**RESPONSE:**

46.   Produce all correspondence and documents referring or relating to fungal blooms or growth in or near NECC's cleanrooms.

**RESPONSE:**

47.   Produce documents referring or relating to complaints or communications with Liberty regarding the design, manufacture, or installation of the clean rooms at the NECC facility.

**RESPONSE:**

48.   Produce all documents referring or relating to any complaints that NECC or Ameridose received related to the sterility or safety of their products, including but not limited to complaints by customers, current or former employees, or state or federal government agencies.

**RESPONSE:**

49.   Produce all documents referring or relating to any complaints NECC or Ameridose received related to their compliance with state or federal laws and regulations, including but not limited to complaints by customers, current or former employees, or state or federal government agencies.

**RESPONSE:**

50.   Produce all correspondence and documents referring or relating to NECC's response to the meningitis outbreak, including but not limited to, steps NECC took to prepare for any inspections of its facility.

**RESPONSE:**

51.   Produce all training and instructional material for sales staff at NECC or MSM.

**RESPONSE:**

## REQUESTS FOR ADMISSION

On March 19, 2015, the Saint Thomas Entities sent their *First Set of Interrogatories, Requests for Production, and Requests for Admission to Lisa Conigliaro Cadden.* In order to minimize the impact of discovery on Lisa Conigliaro Cadden, these Tennessee Clinic Defendants **hereby adopt and incorporate, as if stated fully herein, Requests for Admission 1-17** from the *Saint Thomas Entities' First Requests for Admission.* The "new" requests begin at Number 18.

1-17.   [The Tennessee Clinic Defendants adopt and incorporate, as if stated fully herein, Requests for Admission 1-17 from the *Saint Thomas Entities' First Requests for Admission.*]

**ANSWER:**

18.   Admit that, had any of the Tennessee Clinic Defendants asked for a copy of NECC's license in 2011, you would have provided a valid and up-to-date Tennessee pharmacy license.

**ANSWER:**

19.   Admit that NECC represented to its customers, including the Tennessee Clinic Defendants, that it met or exceeded USP 797 standards.

**ANSWER:**

20.   Admit that NECC represented to its customers, including the Tennessee Clinic Defendants, that its products, including MPA, were safe and sterile.

**ANSWER:**

21.   Admit that the Massachusetts Board of Pharmacy ("Mass. BoP") inspected NECC on or about May 24, 2011.

**ANSWER:**

22.   Admit that as a result of its inspection on or about May 24, 2011 the Mass. BoP issued an inspection report documenting its findings.

**ANSWER:**

23.   Admit that NECC failed to submit a copy of the Mass. BoP's May 24, 2011 inspection report to the Tennessee Board of Pharmacy.

**ANSWER:**

11

24.    Admit that you NECC owed a duty to its customers to ensure that its MPA was sterile prior to distributing it.

**ANSWER:**

Respectfully submitted,

**GIDEON, COOPER & ESSARY, PLC**

/s/ Chris J. Tardio
**C.J. Gideon, Jr.***
**Chris J. Tardio***
**Alan S. Bean****
**Matthew H. Cline***
315 Deaderick Street, Suite
Nashville, TN 37238
Ph: (615) 254-0400
Fax: (515) 254-0459
chris@gideoncooper.com

***Attorneys for the Tennessee Clinic Defendants***

* Admitted pursuant to MDL Order No. 1.
** Admitted *pro hac vice*.

12

## CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of March, 2015, a true and accurate copy of the foregoing was served on Lisa Conigliaro Cadden by U.S. mail and on the other parties below electronically via the Court's CM/ECF system:

| | |
|---|---|
| Gerard Stranch, IV<br>Ben Gastel<br>Branstetter, Stranch & Jennings, PLLC<br>227 2nd Ave N<br>Suite 400<br>Nashville, TN 37201<br><br>*Attorneys for the PSC*<br><br>[via hand-delivery, to upload to repository] | Matthew P. Moriarty<br>Thomas W. Coffey<br>Richard A. Dean<br>Tucker Ellis, LLP<br>950 Main Avenue, Suite 1100<br>Cleveland, OH 44113<br><br>Scott H. Kremer<br>Tucker, Heifetz & Saltzman<br>Three School Street<br>Boston, MA 02108<br><br>Scott J. Tucker<br>Paul Saltzman<br>Matthew E. Mantalos<br>Tucker, Saltzman & Dyer, LLP<br>50 Congress Street<br>Boston, MA 02109<br><br>*Attorneys for Defendant Ameridose, LLC* |
| Daniel M. Rabinovitz<br>Brady J. Hermann<br>Nicki Samson<br>Michaels, Ward & Rabinovitz<br>One Beacon Street , 2nd Floor<br>Boston, MA 02108<br><br>*Attorneys for Defendant Medical Sales Management, Inc.* | John P. Ryan<br>Robert H. Gaynor<br>William J. Dailey, Jr.<br>Sloane and Walsh, LLP<br>Three Center Plaza<br>Boston, MA 02108<br><br>*Attorneys for Gregory Conigliaro, Registered Agent for Service of Process for Medical Sales Management SW, Inc.* |

| | |
|---|---|
| Joseph P. Thomas<br>Ulmer & Berne, LLP<br>600 Vine Street, Suite 2800<br>Cincinnati, OH 45202<br><br>Joshua A. Klarfeld<br>Ulmer & Berne, LLP<br>1660 W.2nd Street, Suite 1100<br>Cleveland, OH 44113<br><br>*Attorneys for Defendant*<br>*GDC Properties Management, LLC* | Kenneth B. Walton<br>Kristen R. Ragosta<br>Donovan Hatem, LLP<br>Two Seaport Lane, 8th Floor<br>Boston, MA 02210<br><br>*Attorneys for Defendant*<br>*ARL Bio Pharma* |
| John P. Ryan<br>Robert H. Gaynor<br>William J. Dailey, Jr.<br>Sloane and Walsh, LLP<br>Three Center Plaza<br>Boston, MA 02108<br><br>*Attorneys  for Defendants Barry J. Cadden,*<br>*Lisa Conigliaro Cadden, Gregory Conigliaro,*<br>*Carla Conigliaro, Douglas Conigliaro and*<br>*Glenn A. Chin*<br><br>Bruce A. Singal<br>Michelle R. Peirce<br>Callan G. Stein<br>Donague, Barrett & Singal, P.C.<br>One Beacon Street , Suite 1320<br>Boston, MA 02108<br><br>*Attorneys  for Defendants Barry J. Cadden and*<br>*Lisa Conigliaro Cadden* | Damian W. Wilmot<br>James Rehnquist<br>Abigail K. Hemani<br>Roberto M. Braceras<br>Goodwin Procter LLP<br>Exchange Place<br>53 State Street<br>Boston, MA 02109<br><br>*Attorneys for Unifirst Corporation*<br>*a/d/b/a Uniclean Cleanroom Services*<br><br>Parks Chastain<br>Jason Lee<br>Brewer,  Krause,  Brooks,  Chastain  &<br>Burrow, PLLC<br>611 Commerce St., Suite 2600<br>P.O. Box 23890<br>Nashville, TN  37202<br>615-256-8787<br>Fax:  615-256-8985<br><br>*Attorneys for Specialty Surgery*<br>*Center, Crossville, PLLC* |

| | |
|---|---|
| Frederick H. Fern<br>Judi Abbott Curry<br>Jessica Saunders Eichel<br>Alan M. Winchester<br>Harris Beach PLLC<br>100 Wall Street<br>23rd Floor<br>New York, NY 10005<br><br>Geoffrey M. Coan<br>Daniel E. Tranen<br>Hinshaw & Culbertson LLP<br>28 State Street<br>24th Floor<br>Boston, MA 02109<br><br>Michael R. Gottfried<br>Thomas B.K. Ringe, III<br>Jennifer Mikels<br>Duane Morris LLP<br>100 High Street<br>Suite 2400<br>Boston, MA 02110-1724<br><br>*Attorneys for NECC* | Marcy H. Greer<br>Alexander Dubose Jefferson &<br>Townsent<br>515 Congress Ave.<br>Suite 2350<br>Austin, TX 78701<br><br>Yvonne K. Puig<br>Eric Hoffman<br>Fulbright & Jaworski L.L.P.<br>98 San Jacinto Blvd.<br>Suite 1100<br>Austin, TX 78701<br><br>Sarah P. Kelly<br>Nutter, McClennen & Fish, LLP<br>Seaport West<br>155 Seaport Boulevard<br>Boston, MA 02210-2604<br><br>*Attorneys for the Saint Thomas*<br>*Entities* |

/s/ Chris J. Tardio
**Chris J. Tardio**