# EXHIBIT B

```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS


IN RE:  NEW ENGLAND COMPOUNDING    )  MDL NO. 13-02419-RWZ
PHARMACY CASES LITIGATION          )
                                   )
                                   )
                                   )
                                   )
                                   )
                                   )

        BEFORE:  THE HONORABLE RYA W. ZOBEL AND
                 THE HONORABLE JENNIFER C. BOAL
```

**STATUS CONFERENCE**

```
     John Joseph Moakley United States Courthouse
                   Courtroom No. 12
                  One Courthouse Way
                   Boston, MA 02210


                   March 25, 2015
                      2:00 p.m.



        Catherine A. Handel, RPR-CM, CRR
               Official Court Reporter
     John Joseph Moakley United States Courthouse
            One Courthouse Way, Room 5205
                   Boston, MA 02210
            E-mail: hhcatherine2@yahoo.com
```

```
 1      APPEARANCES:

 2      For The Plaintiffs:

 3         Hagens, Berman, Sobol, Shapiro LLP, by KRISTEN JOHNSON,
        ESQ., and THOMAS M. SOBOL, ESQ., 55 Cambridge Parkway, Suite 301,
 4      Cambridge, Massachusetts 02142;

 5         Janet, Jenner & Suggs, LLC, KIMBERLY A. DOUGHERTY, ESQ., 75
        Arlington Street, Suite 500, Boston, Massachusetts 02116;
 6
           Crandall & Katt, by PATRICK THOMAS FENNELL, ESQ., 366 Elm
 7      Avenue, SW, Roanoke, Virginia 24016;

 8         Ellis & Rapacki LLP, by FREDRIC L. ELLIS, ESQ., 85 Merrimac
        Street, Suite 500, Boston, Massachusetts 02114;
 9
           Lieff Cabraser Heimann & Bernstein, LLP, by ANNIKA K.
10      MARTIN, ESQ., 250 Hudson Street, 8th Floor, New York, New York
        10013-1413;
11
           Lieff Cabraser Heimann & Bernstein, LLP, by MARK P. CHALOS,
12      ESQ., 150 Fourth Avenue North, Suite 1650, Nashville, Tennessee
        37219;
13

14

15      FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS:

16         Brown & Rudnick, by KIERSTEN A. TAYLOR, ESQ., One Financial
        Center, Boston, Massachusetts 02111;
17

18
        FOR PAUL D. MOORE, IN HIS CAPACITY AS CHAPTER 11 TRUSTEE OF
19      NECP, INC.:

20         Duane Morris LLP by MICHAEL R. GOTTFRIED, ESQ., 100 High
        Street, Suite 2400, Boston, Massachusetts 02110-1724;
21
          Harris Beach PLLC, by FREDERICK H. FERN, ESQ., 100 Wall Street,
22      New York, New York 10005;

23

24      (Appearances continue on the next page.)

25
```

```
 1    APPEARANCES (Cont'd):

 2
      FOR THE DEFENDANTS:
 3
          Tucker & Ellis LLP, by MATTHEW P. MORIARTY, ESQ., 1150
 4    Huntington Building, 925 Euclid Avenue, Cleveland, Ohio
      44115-1414;
 5

 6        Michaels, Ward & Rabinovitz LLP, by DAN RABINOVITZ, ESQ.,
      One Beacon Street, Boston, Massachusetts 02108;
 7

 8        Todd & Weld LLP, by CORRINA L. HALE, ESQ., 28 State Street,
      31st Floor, Boston, Massachusetts 02109;
 9

10        Ulmer & Berne LLP, by JOSHUA A. KLARFELD, ESQ., 1660 West
      2nd Street, Suite 1100, Cleveland, Ohio 44113-1448;
11

12        Alexander Dubose Jefferson & Townsend LLP, by MARCY H.
      GREER, ESQ., 515 Congress Avenue, Suite 2350, Austin, Texas
13    78701;

14
          Fulbright & Jaworski, LLP, by ADAM T. SCHRAMEK, ESQ., 98
15    San Jacinto Boulevard, Suite 1100, Austin, Texas;

16
          Donovan & Hatem, LLP, by COURTNEY LONGO, ESQ., Two Seaport
17    Lane, Boston, Massachusetts 02210;

18
          Goodwin Procter LLP, by JAMES REHNQUIST, ESQ., and ROBERTO
19    M. BRACERAS, ESQ., Exchange Place, 53 State Street, Boston,
      Massachusetts 02109;
20

21        Pessin Katz Law, P.A., by GREGORY K. KIRBY, ESQ., 901
      Dulaney Valley Road, Suite 400, Towson, MD 21204.
22

23

24

25
```

```
 1    are worried about.
 2            MS. LONGO:  And I guess, you know -- at that point,
 3    after the bankruptcy court has issued its injunction, I guess
 4    we would be in a better position to know how to answer these
 5    sort of questions.  Are we -- you know, the injunction is in
 6    place.  Obviously, we -- our representatives are testifying as
 7    a witness and a nonparty.
 8            THE COURT:  So, it's an issue of timing initially?
 9            MS. LONGO:  Yes, your Honor.
10            MR. SOBOL:  Your Honor, may I be heard?
11            THE COURT:  Yes.
12            MR. SOBOL:  I hear three different -- I hear three
13    different issues that are before the Court on this.
14            THE COURT:  This is Mr. Sobol speaking.
15            MR. SOBOL:  Yes.  The first and the simplest is that
16    to the extent that documents have previously been produced in
17    the state court case and ARL has no objection and the trustee
18    has no objection, documents like this should be put in the
19    depository and made available to everyone so that there can be
20    easy access to the appropriate parties under whatever the
21    terms are.  That just seems to be a no-brainer as long as
22    there's no substantive objection on the part of ARL or the
23    trustee.  And, frankly, I don't know whether there is or
24    isn't, and I'm not trying to tee that up right now.  That just
25    seems to be one straightforward issue.
```

1          The second issue -- I should be very clear.  It was
2  made clear before there were negotiations on the bankruptcy
3  deal, during the negotiations of the bankruptcy deal and then
4  once the bankruptcy deal was signed and was teed up, there was
5  nothing that stops anyone from undertaking any form of
6  discovery whatsoever by reason of the bankruptcy court
7  proceedings that deals with anything in this MLD.  Meaning,
8  you've got cases against clinics.  You've got cases against,
9  you know -- we had cases against the national defendants until
10 they all have settled.  There is nothing that the bankruptcy
11 court order now is intended to do that in spirit or text stops
12 any of the process moving forward in this Court and that ought
13 not be a problem.
14         The third issue, then, is:  What is the appropriate
15 scope of ARL discovery?  I'm not going to comment on that
16 right now.  To the extent that documents should or shouldn't
17 be produced, whether they're privileged, whether depositions
18 should occur, that's the usual fodder, I think, of just the
19 case against ARL, and I haven't heard any issue concretely
20 teed up right now about that.  So, I'll just -- I'll leave it
21 like that and leave it.
22         THE COURT:  So, what do you want me to do?
23         MR. SOBOL:  In my view, if you were to enter an order
24 so long as the -- and I don't know whether the trustee or ARL
25 has an objection to the documents being put into the

```
1    depository and made available.  You know, we have to move this
2    case along.  That should be done, frankly.
3             And then, second, whatever discovery disputes there
4    are between ARL and Saint Thomas or some of the national
5    defendants, they should be dealt with on their merits
6    regardless of the fact that the bankruptcy proceeding is
7    ongoing, because there's nothing no longer that inhibits you
8    from doing that.
9             THE COURT:  Is there any reason why these 28,000
10   documents can't be put into the plaintiffs' whatever?
11            MS. LONGO:  I don't believe so, your Honor.
12            THE COURT:  Well, then why don't you do it?
13            MS. LONGO:  Well, I mean, I guess that's part of our
14   suggestion.  Like I said, we are looking for -- we're not
15   trying to be unreasonable or uncooperative, but --
16            THE COURT:  Well, I don't understand why you don't
17   just make these documents available.
18            MS. LONGO:  Well, your Honor, I mean, we were served
19   with interrogatories and admissions and requests for
20   production of documents and requested depositions, you know,
21   within the last couple of weeks.  So, we felt that we needed
22   to come to you and try and figure out what to do here.
23            THE COURT:  Okay.  Well, we're here and you offered
24   to submit all of these documents to the plaintiffs' registry
25   -- or what do you call -- repository.  So, why don't you just
```

```
 1   do that now.  You've been heard.  I'll decide it.  I'll look
 2   at it and see whether there should be additional relief, and
 3   maybe those who want additional relief can have at least a
 4   fast look at the documents and see whether there's -- whether
 5   they need a whole lot more.
 6           MS. LONGO:  I understand, your Honor.
 7           THE COURT:  Okay?
 8           MS. LONGO:  Yes.
 9           MR. SCHRAMEK:  Your Honor, if I could just be heard
10   in a quick response, which is -- I'm not sure I thought I'd
11   ever be saying this, but I believe I would agree with Mr.
12   Sobol on this point because of the fact that the discovery
13   process should go forward as normal.  If we have a dispute --
14   if they think our objections -- our requests are
15   objectionable, they can file their responses in 30 days and
16   this Court has already referred everything to Judge Boal for
17   discovery disputes.
18           What can't happen, though, from our point of view, is
19   we get these 28,000 documents.  We have no idea how they
20   selected them.  There were no requests as what was being
21   requested.  We just have 28,000 documents, kind of like the
22   binders in front of us (indicating).
23           THE COURT:  But there is a bunch of stuff that is now
24   available to you.
25           MR. SCHRAMEK:  No.  It's very helpful, but I just
```

```
 1    wanted to be clear that from our point of view, they need to
 2    respond to our discovery requests, and if they're in the
 3    28,000 documents, that's all they've got to say.  I asked for
 4    all documents and correspondence with NECC on testing.  They
 5    can say, See the 28,000 documents.  They've all been produced.
 6    We just need a record to show we've asked for this and you've
 7    told us they're in the 28,000.  And then, of course, we are
 8    going to need a deposition of someone who we can then, you
 9    know, talk to and present to the jury in admissible form.
10              I do want to address the timing because I also agree
11    about the timing, that we can't let the bankruptcy court stand
12    in the way.
13              Your Honor, yes, in May there's going to be this
14    proceeding where they're going to either approve or reject the
15    plan, et cetera.
16              We anticipate, based on the way everything is
17    currently proceeding, that there will also be an appeal from
18    that decision by somebody.  That's an appeal to the First
19    Circuit that is going to take many months to resolve.  That
20    will be the next excuse that you will hear as to why it's not
21    time yet for comparative fault discovery.
22              We agree those need to be separate tracks.  The order
23    currently in place allows full comparative fault discovery.
24    The order anticipated by the bankruptcy court, if approved,
25    allows full comparative fault discovery.  There's no reason to
```

```
 1   stop it or to delay it from a timing point of view.
 2            THE COURT:  Well, thank you all.  And I hereby refer
 3   to Magistrate Judge Boal tasks of clarifying my earlier order.
 4   So, that will be for her to do.
 5            In the meantime, I would hope that Ms. Longo would
 6   make the 28,000 documents available in the plaintiffs'
 7   repository, in any event.
 8            MS. LONGO:  Yes, your Honor.
 9            THE COURT:  Thank you.
10            MS. LONGO:  Thank you.
11            THE COURT:  Okay.  What next, Ms. Johnson?
12            MS. JOHNSON:  That brings us to the report to the
13   Court portion of the agenda, your Honor, No. 3, status of
14   mediation efforts.
15            Liberty has reported a settlement in principle.  We
16   will have more information about that next time.
17            THE COURT:  I'm sorry, which part of that is settled
18   in principle?
19            MS. JOHNSON:  Liberty has reported a settlement in
20   principle, your Honor.
21            THE COURT:  Okay.
22            MR. GOTTFRIED:  The only thing the trustee would add
23   is they reported the settlement, period.  They filed a motion
24   seeking to stay the DJ case in Connecticut where they
25   represented to the Court and the Court granted a stay based on
```