UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION )<br>)<br>)<br>)<br>)<br>THIS DOCUMENT RELATES TO: )<br>)<br>All Actions )<br>) | MDL No. 2419<br>Dkt. No. 1:13-md-2419 (RWZ) |

**PLAINTIFFS' STEERING COMMITTEE'S REPLY
IN SUPPORT OF MOTION FOR EXPEDITED TRIAL**

The Plaintiffs' Steering Committee (PSC) took to heart this Court's suggestion that trials in this litigation should start in 2015 – more than 3 years after the deadly catastrophe occurred. The PSC has submitted a reasonable, workable plan for moving this litigation toward resolution by bringing cases to trial in 2015, starting with the cases against the St. Thomas defendants[1] (dkt. 1716).

The St. Thomas defendants, on the other hand, have refused to engage in settlement talks and are now refusing to get serious about trying cases. Instead, they appear focused on contradicting the Court's instincts and the PSC's reasonable proposal, all in furtherance of their continued efforts to delay justice for the many victims of their wrongful conduct.[2]

---

[1] "St. Thomas defendants" or "defendants" include: Saint Thomas Outpatient Neurosurgical Center, LLC, Howell Allen Clinic, PC, John Culclasure, MD, Debra Schamberg, RN, Vaughan Allen, MD, Saint Thomas West Hospital, formerly known as St. Thomas Hospital, Saint Thomas Network, and Saint Thomas Health.

[2] Defendants contend that the average age of plaintiffs is 65 years old. Many of the surviving patients remain severely ill as a result of defendants' conduct. Wayne Reed, a plaintiff whose case was proposed by the PSC as an initial trial candidate, suffers from late-stage Amyotrophic

To move this litigation forward,[3] in accordance with the mandates of Federal Rule of Civil Procedure 1, the PSC respectfully requests that this Court enter a schedule consistent with the PSC's prior proposal (dkt.1716), which would include a deadline by which a specified number of trial cases must be trial-ready. In the alternative, the PSC requests that the Court set a trial-ready deadline in late 2015 for a specified number of cases and require the parties to submit, within 10 days of that Order, an agreed pre-trial schedule that includes a streamlined trial case selection process. If the parties cannot reach agreement on all issues, the parties must submit competing proposals.

## I. Trials Arising From The 2012 Catastrophe Should Begin No Later Than 2015.

Aside from defendants' generalized complaint that they are unable to be trial-ready more than three years after the deadly catastrophe that caused the deaths of fourteen of their patients and serious illnesses of more than one hundred of their patients, the defendants rely on three principal arguments in their attempts to avoid trials. First, they claim the Court must require a cumbersome and lengthy bellwether selection process that would inevitably delay trials for another two years. Second, they argue multi-plaintiff trials are impossible to conduct fairly in

---

lateral sclerosis (ALS), a degenerative disease process. For Mr. Reed and other plaintiffs in these cases, justice delayed is justice denied.

[3] Despite the St. Thomas defendants delaying discovery for many months by refusing to participate in common discovery and filing a motion to stay discovery, based on the pedantic position that the Court had not yet conducted a Rule 26(f) conference (see dkt. 595, 598), the parties have now made significant progress on common discovery. The parties have exchanged paper discovery on common issues; Plaintiffs have provided detailed Plaintiff Profile Forms, including providing releases for medical records; Plaintiffs have taken four depositions of principal witnesses associated with the St. Thomas defendants, with additional common issues depositions set for the coming days and weeks; and defendants have served third party subpoenas and requests for depositions.

- 3 -

this circumstance. Third, defendants argue their strategic decision to refuse to waive their venue objections pursuant to Lexecon Inc. v. Milberg Weiss, 523 U.S. 26 (1998), protects them from timely trials. All three of these issues can be managed reasonably and none precludes the parties starting trials in 2015.

### A. A Streamlined Trial Selection Process is Preferable Here.

As an initial matter, given their steadfast denials of any liability and their belief that blaming others will allow them to dodge accountability, it is unclear why these defendants are so adamantly married to implementing a complex bellwether trial selection process. If, as these defendants claim, they will never voluntarily pay money to compensate their patients for the harm defendants caused, all of the 117 pending cases against the St. Thomas defendants will need to be tried eventually. If defendants' statements are to be believed, the parties should get on with trying cases irrespective of any complex bellwether selection process. And the PSC has identified the first six cases to be tried.

Notwithstanding this point, defendants criticize the PSC on various grounds for proposing six cases as candidates for the initial round of trials. First, they argue that the bellwether process must be more complicated and must consume extensive amounts of time. Second, they argue the cases are not representative of the total population of cases against them. Both assertions are wrong.

- 3 -
1224693.1

1. **The Parties Have Made Significant Progress In Nominating Initial Trial Candidates.**

In addition to the PSC's six proposed candidates for the initial trials against St. Thomas defendants, defendants have proposed nine cases as initial trial candidates.[4] So, there is now a pool of fifteen cases that potentially comprise the initial trial pool against St. Thomas defendants. Given the total population of 117 cases involving St. Thomas defendants, the parties have made significant progress toward populating the initial trial pool. Accordingly, the only remaining process would be to select the order of trial cases from among the initial trial pool. To accomplish this, one method could be that the Court select six total cases for the initial trial – three from each side's proposed pools[5] – against St. Thomas defendants. This would give the parties a total of six cases that could begin trials in 2015.

2. **The PSC's Proposed Cases Are Representative.**

In their opposition, defendants rely heavily on the argument that the PSC's proposed trial selections are not representative of the total pool of cases against them. Leaving aside whether defendants' intransigent position that they will never settle cases preemptively undercuts the effectiveness of bellwether trials, the PSC's proposed trial cases are representative of the pending cases. According to defendants, fourteen St. Thomas patients died (12% of filed cases); sixty-three St. Thomas patients were diagnosed with meningitis (54%); thirteen St. Thomas patients

---

[4] St. Thomas clinic defendants argued that the Court should also include initial trial cases against Specialty Surgery Center and related defendants, against whom 24 plaintiffs have filed claims. The PSC would be amenable to beginning trials against SSC, as well, and respectfully request that the Court likewise set a trial-ready deadline for an initial trial pool involving those defendants. The parties would then confer and propose a pre-trial schedule and propose cases for trials.

[5] Given that the defendants have proposed three more cases than the PSC, Plaintiffs ask that either three of the defendants' candidates be stricken or the PSC be given an opportunity to select three additional cases for inclusion in the initial trial pool.

had other infections (11%); and twenty-seven had "no disease"[6] (23%). Tenn. Clinic Defendants' Resp. at 12 (dkt. 1754). Accordingly, the PSC's proposed cases include two death cases (Reed and Rybinski), three meningitis cases (Sullivan, Wray, and McElwee), and one "other infection" case (Ziegler). Defendants' primary objection to these cases seems to be that these cases involve serious injuries with significant damages. For example, defendants complain that the Reed case is "incredibly sad and sympathetic" and that the Ziegler case involves an "Iraq war veteran." Id. Defendants are correct that their conduct has caused unimaginable levels of suffering and harm, both economic and human, to their patients. But, unfortunately, those harms were not limited to the six cases the PSC proposed for initial trials. The PSC's proposed cases are representative of the universe of patients who have also suffered significant harms. That is a reality from which defendants should not be permitted to run.

    B. **Multiple-Plaintiff Trials are Workable.**

Defendants have also claimed that multi-plaintiff trials are impossible to conduct here in a fair manner. Multiple-plaintiff trials are workable and efficient, including conducting a series of consolidated trials on all issues. Manual for Complex Litigation, Fourth, §22.93.

Notwithstanding that multiple-plaintiff trials are feasible, the PSC stands ready to try single-plaintiff cases beginning in 2015.

    C. **Defendants' Refusal to Waive *Lexecon* Does Not Preclude 2015 Trials.**

Defendants also make much of their strategic decision to refuse to waive their venue objections pursuant to Lexecon. Their strategy would not, however, impact this Court's ability to oversee pre-trial proceedings in accordance with the MDL enabling statute. 28 U.S.C. §1407.

---

[6] The PSC disputes defendants' contention that these patients had "no disease" arising from the contaminated steroids sold by the St. Thomas defendants.

Moreover, this Court could nevertheless preside over the initial trials pursuant to an intercircuit appointment 28 U.S.C. §292[7]; <u>see also</u> Manual for Complex Litigation, Fourth, §20.132.

In the alternative, this Court could implement a pre-trial schedule and set a deadline by which the selected cases must be "trial-ready," at which point the Court would file a suggestion of remand with the Judicial Panel for Multidistrict Litigation. J.P.M.L. R.P. 10.1(b). The initial trial cases would be remanded to the appropriate district court for speedy trial – in this instance, the Middle District of Tennessee. To maximize efficiency, the schedule and the remand timing could be coordinated in advance with Chief Judge of the Middle District of Tennessee, United States District Judge Kevin Sharp.

## II.     Conclusion

The PSC has proposed, in accordance with the Court's suggestion, a workable schedule by which trials of MDL cases could begin in 2015. Defendants' arguments in opposition to the PSC's proposal are nothing more than attempts to erect roadblocks to avoid accountability for the harm they have caused. Accordingly, the PSC requests that this Court enter a schedule in accordance with the PSC's proposal, which would include a late-2015 deadline for a specified number of cases in the initial pool to be trial-ready. In the alternative, the PSC requests that this Court set a trial-ready deadline and require the parties to confer on a proposed schedule within 10 days of the Court's order.

---

[7] (d) The Chief Justice of the United States may designate and assign temporarily a district judge of one circuit for service in another circuit, either in a district court or court of appeals, upon presentation of a certificate of necessity by the chief judge or circuit justice of the circuit wherein the need arises.  28 U.S.C. § 292.

Dated:  April 8, 2015                    Respectfully submitted,

/s/ Mark P. Chalos

Elizabeth J. Cabraser
Mark P. Chalos
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
150 Fourth Avenue North, Suite 1650
Nashville, TN 37219-2417
Telephone:  (615) 313.9000
Facsimile:  (615) 313.9965
ecabraser@lchb.com
mchalos@lchb.com

*Federal/State Liaison*

Thomas M. Sobol
Kristen Johnson
Edward Notargiacomo
HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA  02142
Telephone:  (617) 482-3700
Facsimile:  (617) 482-3003
tom@hbsslaw.com
kristenjp@hbsslaw.com
enotargiacomo@hbsslaw.com

*Plaintiffs' Lead Counsel*

Marc E. Lipton
LIPTON LAW
18930 W. 10 Mile Road
Southfield, MI  48075
Telephone:  (248) 557-1688
Facsimile:  (248) 557-6344
marc@liptonlawcenter.com

- 7 -

Kim Dougherty
JANET, JENNER & SUGGS, LLC
31 St. James Avenue, Suite 365
Boston, MA  02116
Telephone:  (617) 933-1265
kdougherty@myadvocates.com

Patrick T. Fennell
CRANDALL & KATT
366 Elm Avenue, S.W.
Roanoke, VA  24016
Telephone:  (540) 342-2000
pfennel@crandalllaw.com

Mark Zamora
ZAMORA FIRM
6 Concourse Way, 22nd Floor
Atlanta, GA  30328
Telephone:  (404) 451-7781
Facsimile:  (404) 506-9223
marc@markzamora.com

J. Gerard Stranch, IV
Benjamin A. Gastel
BRANSETTER, STRANCH & JENNINGS PLLC
227 Second Avenue North
Nashville, TN  37201
Telephone:  (615) 254-8801
Facsimile:  (615) 255-5419
gerards@branstetterlaw.com
beng@branstetterlaw.com

*Plaintiffs' Steering Committee*

- 9 -

**CERTIFICATE OF SERVICE**

I, Mark P. Chalos, hereby certify that I caused a copy of the foregoing to be filed electronically via the Court's electronic filing system. Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system, and notice of these filings will be sent to these parties by operation of the Court's electronic filing system.

Dated: April 8, 2015

       /s/ Mark P. Chalos
Mark P. Chalos

1224693.1