# EXHIBIT 1

**[SUBPOENA TO NECC +
FRCP 30(b)(6) NOTICE OF DEPOSITION +
*DUCES TECUM*]**

AO 88A  (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Massachusetts

| | |
|---|---|
| In Re: New England Compounding Pharmacy, Inc. Products Liability Litigation _Plaintiff_ | ) ) ) ) ) ) ) |
| v. | |
| Tennessee Clinic Defendants _Defendant_ | |

Civil Action No.    MDL No. 1:13-md-02419

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:        New England Compounding Pharmacy, Inc. d/b/a New England Compounding Center ("NECC")

_____
*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: Nutter, McClennen & Fish LLP | Date and Time: |
|---|---|
| 155 Seaport Blvd. Boston, MA 02210 | May 13-14, 2015   9:00 a.m. EDT |

The deposition will be recorded by this method:     Stenographical means and video

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

See attached Notice of 30(b)(6) Deposition and duces tecum

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 4/17/15

CLERK OF COURT

OR

_____        _____
*Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Tennessee Clinic Defendants
_____ , who issues or requests this subpoena, are:

Chris J. Tardio; 315 Deaderick Street, Suite 1100, Nashville, TN 37219; chris@gideoncooper.com; (615) 254-0400

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.   MDL No. 1:13-md-02419

# PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒ I served the subpoena by delivering a copy to the named individual as follows: _____

_____

on *(date)* _____ ; or

❒ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION |  ) ) ) |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ )  | **MDL No. 2419** |
| | ) | **Dkt. No 1:13-md-2419 (RWZ)** |
| **THIS DOCUMENT RELATES TO:** | ) | |
| | ) ) | |
| **All Cases** | ) | |
| | ) | |

## Notice of 30(b)(6) Deposition

Defendants Saint Thomas Outpatient Neurosurgical Center, LLC; Howell Allen Clinic, a Professional Corporation; John Culclasure, MD; Debra Schamberg, RN, CNOR; Vaughan Allen, MD; Specialty Surgery Center, Crossville, PLLC; Kenneth R. Lister, MD; Kenneth Lister, MD, PC; and Donald E. Jones, MD (collectively "Tennessee Clinic Defendants"), pursuant to Federal Rule of Civil Procedure 30(b)(6), come now and give notice that the oral and videotaped deposition of New England Compounding Center (hereinafter "NECC"), as an organization, will be taken on the topics detailed below. NECC shall identify the person(s) who will speak on its behalf on each topic at least seven (7) days before the deposition(s).

The deposition will be taken on May 13-14, 2015, beginning at 9:00 a.m. (EDT) on May 13, and continuing until completed. The deposition will take place at the offices of Nutter, McClennen & Fish LLP, 155 Seaport Blvd., Boston, MA 02210. The deposition will be recorded by stenographical means and by video.

1

Pursuant to Federal Rule of Civil Procedure 30(b)(6), NECC's designee(s) shall be prepared to testify regarding the following subjects[1]:

**Basic corporate structure and background**

1. NECC's basic corporate structure from 2006 to the time of the bankruptcy, including ownership and governing persons, and NECC's relationship to each of the "Affiliated Entities."[2]

2. NECC's licensure and any certifications it held from 2006 to the time of the bankruptcy.

3. NECC's business relationship with ARL from 2006 to the time of the bankruptcy.

4. Identification of NECC's employees from 2006 to the time of the bankruptcy, and their duties.

5. Whether NECC (1) had a duty to the Plaintiffs to comply with the recognized standard of acceptable professional practice for compounding or manufacturing

---

[1] Unless otherwise specifically stated, the timeframe for the topics is 2006 through the time that NECC ceased operations.
[2] These include:
1. Ameridose
2. Medical Sales Management
3. Medical Sales Management, SW
4. 203 Flanders Road, LLC
5. 205 Flanders Road, LLC
6. Alanus Pharmaceuticals
7. AMD
8. Cadden Family – 2012, LLC
9. Cardo Properties, LLC
10. Conigliaro Block, Inc.
11. Conigliaro Family Investments, LLC
12. Conigliaro Industries, Inc.
13. GDC Holdings, Inc.
14. GDC Properties Management, LLC
15. Hunter Holdings, LLC
16. L&S Creations, Inc.
17. MSM, Inc.
18. MSM SW, Inc.
19. Nationwide Foam, Inc.
20. Nationwide Recycling Sales Management, Inc.
21. Physicians Choice Medical Marketing, LLC
22. Stone House Realty Group, LLC.

MPA and to use reasonable care when compounding the MPA at issue and (2) breached that duty, (3) causing injury to Plaintiffs.

6. NECC's compliance with state and federal regulations applicable to drug manufacturers, compounding pharmacies, and/or traditional pharmacies, from 2006 to the time of the bankruptcy.

7. Whether NECC had sufficient and adequate facilities and adequately trained staff to produce sterile, safe MPA from 2006-12.

8. NECC's compounding practices, standard operating procedures, pharmacist training, and risk management protocols.[3]

9. NECC's interactions and communications with UniFirst regarding UniFirst's cleaning of the cleanroom where the MPA at issue was compounded.

**Interactions with federal and state agencies**

10. Investigations and actions by the FDA, Massachusetts Board of Pharmacy, or other federal or state regulatory agencies, specifically:

   a. FDA investigation in March 2002 and subsequent inspection on April 16, 2002 (and related Form 483)

   b. FDA investigation in October 2002 and subsequent inspection (Form 483 issued February 10, 2003)

   c. 2004 inspections of NECC by the FDA and Massachusetts Board of Pharmacy

   d. 2004 private censures by the Massachusetts Board of Pharmacy

   e. FDA investigation and inspection conducted in September 2004 related to NECC production of trypan blue

   f. The 2006 Warning Letter issued to NECC (including the findings underlying the letter as described in the letter)

---

[3] *See* Second Amended Master Complaint, ¶234(I).

g. 2006 audits of NECC by Pharmacy Support, Inc.

h. June 2007 MedWatch reports to FDA about NECC related to re-packaging of Avastin

i. June 2008 complaints to the FDA related to NECC betamethasone

j. October 31, 2008, letter to NECC asserting that FDA has the authority to take action and that FDA will re-inspect NECC

k. Reports from anonymous informants in October 2009 and July 2010 about Ameridose and its leadership (leadership shared with NECC) forging sterility documents and knowingly not following proper sterility procedures

l. 2011 reports from the Colorado Board of Pharmacy regarding NECC's operation

m. May 24, 2011, inspection by Massachusetts Board of Pharmacy.

11. Any other communications or interactions between state or federal regulatory agencies and NECC not specifically referenced in 10(a)-(m).

12. The inspection of NECC by the FDA following the meningitis outbreak and its results.

## NECC's interactions[4] with customers

13. The accuracy of NECC's customer lists as published by the CDC after the outbreak.[5]

14. NECC's marketing of its capabilities and services to Tennessee health care providers from 2006 to the time it ceased operations.

15. NECC's representations to its customers and prospective customers from 2006 to the time of the outbreak regarding its compliance with USP 797, its compliance

---

[4] Herein, when "NECC" is used to describe a topic related to NECC's communications or interactions with customers, "NECC" is intended to include its employees and agents, including employees and agents of its affiliated companies (specifically its marketing arm, Medical Sales Management).
[5] See, e.g., http://www.fda.gov/downloads/Drugs/DrugSafety/FungalMeningitis/UCM325466.pdf.

with industry standards for sterility, and its compliance with industry standards for aseptic compounding.

16. Whether any health care provider customer or prospective customer of NECC, from 2006 to the time NECC ceased operations, performed a site visit of NECC and, if so, identification of the health care provider, date of the inspection, whether it was announced or unannounced, results of the inspection, and whether the customer thereafter purchased medication from NECC.

17. The due diligence generally conducted by health care provider customers of NECC before purchasing medication from NECC.

18. Whether NECC sold MPA to its customers with the expectation it would be resold or whether it sold MPA to customers with the expectation it would be used in the provision of health care services.

19. Representations and recommendations NECC made to its health care provider customers (specifically its Tennessee customers) from 2006 to the time it ceased operations regarding:

    a. Whether it made and sold its medications in compliance with all applicable pharmaceutical laws

    b. Its regulatory history, including recalls, licensure actions, and investigations[6]

    c. Its history of product liability suits[7]

---

[6] *See* Second Amended Master Complaint, ¶234(m), (n).
[7] *See* Second Amended Master Complaint, ¶234(o).

    d. Its ordering process (specifically whether it required patient-specific prescriptions when filling orders for medications and whether this was necessary to comply with state or federal law)

    e. Beyond-use dates for and recommended storage of MPA[8]

    f. Whether NECC was a reputable supplier of medications.[9]

20. Whether NECC expected its customers to rely on the representations it made to them regarding its compounding processes, sterility processes, and compliance with state and federal requirements.

21. Whether NECC expected its customers to rely on the representations it made regarding the legality of its ordering process.

22. Whether NECC, directly or through its marketing employees and agents, honestly and truthfully marketed and sold its products to customers, including the Tennessee Clinic Defendants.

23. The on-site audit of NECC by Brigham & Women's Hospital in May 2012.

24. NECC's relationship with Medical Sales Management[10] and Medical Sales Management's marketing and sale of NECC drugs to customers.

**Interactions with Tennessee Clinic Defendants**

25. Any and all of NECC's interactions, either directly or through its employees, agents, or affiliated companies, with the Tennessee Clinic Defendants.

---

[8] *See* Second Amended Master Complaint, ¶234(r).
[9] *See* Second Amended Master Complaint, ¶234(u).
[10] Or Medical Sales Management, SW.

**Production of MPA and batches at issue**

26. NECC's process for compounding preservative-free MPA from 2010 through the time it ceased operations, including employees involved, their training, and their duties; processes to ensure sterility (including autoclaving of the batches and whether autoclaving was done for the USP-required 20 minutes); procedures to obtain outside testing; procedures to ensure compliance with USP 797 or other industry standards; ingredients used; and recipes used.

27. NECC's process for outside testing of batches of medications (including, specifically, NECC's use of ARL to test the contaminated batches and whether that testing complied with USP standards, specifically USP 71).

28. NECC's process for producing, labeling, and shipping the contaminated batches of MPA.

29. NECC's process for keeping records of production, sterilization, and testing of batches of medications.

30. Whether NECC utilized fictitious labeling, including fictitious expiration dates, on its medications sold to health care providers to conceal the use of expired ingredients.

31. Whether any customer of NECC utilized individual patient-specific prescriptions when ordering medications from NECC.

**Documents**

32. The documents the witness(es) is requested to produce in the *duces tecum* attached as an exhibit to this Notice.

# *DUCES TECUM*

## [DOCUMENTS TO PRODUCE]

*Instructions:*

1. *Produce the documents organized by number or description such that that the documents can be linked to a numbered request.*

2. *To the extent these documents can be provided electronically by posting to a web-based repository or provided on CD or flash drive, that is preferable.*

3. *Should these documents already be housed on a repository for this litigation or some other web-based repository, identification of the Bate-stamp number(s) or range(s) of the responsive documents is sufficient, so long as the Bate-stamp numbers are provided in response to each numbered request to ensure the Defendants can identify which documents are responsive to which request. (Simple reference to a repository or 40,000 documents for each request is not a sufficient response to enable these Defendants to identify specific responsive documents.)*

Documents:

1. The personnel files for:

   a. Barry Cadden
   b. Glenn Chin
   c. Gene Svirskiy
   d. Christopher Leary
   e. Joseph Evanosky
   f. Scott Connolly
   g. Joseph Connolly
   h. Sharon Carter
   i. Alla Stepanets
   j. Greg Conigliaro
   k. Robert Ronzio
   l. Kathy Chin
   m. Michelle Thomas
   n. Carla Conigliaro
   o. Doug Conigliaro
   p. Any other person involved in the manufacture or compounding of batches 05212014@68; 06292012@26; 08102012@51.

2. Documents related to internal or external sterility testing of batches 05212012@68; 06292012@26; 08102012@51.

3. Any corporate minutes, memoranda, or meeting summaries from corporate meetings from 2006 through the outbreak related to:

    a. Problems with NECC's sterility processes

    b. The use of patient-specific prescriptions or patient name lists in the ordering process

    c. The Tennessee Clinic Defendants.

4. Any customer file maintained for any of the Tennessee Clinic Defendants.

5. Any internal communications or memoranda mentioning the Tennessee Clinic Defendants from prior to September 20, 2012.

6. Any letters, emails, faxes, or documentation of phone conversations with the Tennessee Clinic Defendants.

7. Any documents related to site visits or inspections conducted by customers of NECC from 2006 to the time of the outbreak.

8. Any internal documents reflecting NECC's failure to comply with USP 797 in the compounding of sterile medications prior to September 18, 2012.

9. Any internal documents, memoranda, or emails reflecting training or instruction to NECC sales people or discussions among NECC employees related to whether a customer was required to send a patient-specific prescription or a list of patient names.

10. Copies of the emails referenced in Paragraphs 92-101 of the NECC Criminal Complaint.

11. Copies of the emails and external communication referenced in Paragraphs 104-08 of the NECC Criminal Complaint.

12. Any communications from customers or potential customers of NECC from 2006 to the time of the outbreak inquiring as to:

    a. Whether it made and sold its medications in compliance with all applicable pharmaceutical laws

    b. Its regulatory history, including recalls, licensure actions, and investigations[11]

    c. Its history of product liability suits[12]

---

[11] *See* Second Amended Master Complaint, ¶234(m), (n).

    d.  Its ordering process (specifically whether it required patient-specific prescriptions when filling orders for medications and whether this was necessary to comply with state or federal law)

    e.  Beyond-use dates and recommended storage of MPA[13]

    f.  Whether NECC, prior to September 2011, was a reputable supplier of medications.[14]

13. Documents in NECC's possession reflecting the due diligence conducted by the following health care institutions before purchasing from NECC:

    a.  University of Pittsburgh Medical Center - Pittsburgh, PA
    b.  New York Presbyterian – Weill Cornell - New York, NY
    c.  Mayo Clinic Health System in Fairmont - Fairmont, MN
    d.  Massachusetts General Hospital - Boston, MA
    e.  Brigham and Women's Hospital - Boston, MA
    f.  Northwestern Memorial Hospital - Chicago, IL
    g.  University of California, San Francisco Medical Center - San Francisco, CA
    h.  Vanderbilt Medical Group Clinic Pharmacy - Nashville, TN
    i.  Erlanger Health System - Chattanooga, TN
    j.  Centennial Medical Center - Nashville, TN
    k.  Gateway Medical Center - Clarksville, TN
    l.  Summit Surgery Center - Hermitage, TN.

14. Order forms for orders of MPA in 2011-12 by the following NECC customers:

    a.  University of Pittsburgh Medical Center - Pittsburgh, PA
    b.  New York Presbyterian – Weill Cornell - New York, NY
    c.  Mayo Clinic Health System in Fairmont - Fairmont, MN
    d.  Massachusetts General Hospital - Boston, MA
    e.  Brigham and Women's Hospital - Boston, MA
    f.  Northwestern Memorial Hospital - Chicago, IL
    g.  University of California, San Francisco Medical Center - San Francisco, CA
    h.  Vanderbilt Medical Group Clinic Pharmacy - Nashville, TN
    i.  Erlanger Health System - Chattanooga, TN
    j.  Centennial Medical Center - Nashville, TN
    k.  Gateway Medical Center - Clarksville, TN
    l.  Summit Surgery Center - Hermitage, TN.

15. Copies of the Quarterly Assurance Report Cards for all quarters in 2009-12.

16. The cleaning logs for Cleanroom 1 from 2010-12.

---

[12] *See* Second Amended Master Complaint, ¶234(o).
[13] *See* Second Amended Master Complaint, ¶234(r).
[14] *See* Second Amended Master Complaint, ¶234(u).

17. Surface and air testing or sampling results (including gloved fingertip sampling results) from 2010-12.

18. Autoclaving records for batches 05212014@68; 06292012@26; 08102012@51.

19. A copy of NECC's standard operating procedures or other internal policies or procedures related to the following:

    a. The ordering process
    b. Marketing of its medications to health care provider customers
    c. Production of sterile medications
    d. Maintaining the sterility of the NECC environment.

Respectfully submitted,

**GIDEON, COOPER & ESSARY, PLC**

/s/ Chris J. Tardio
**C.J. Gideon, Jr.***
**Chris J. Tardio***
**Alan S. Bean****
**Matthew H. Cline***
315 Deaderick Street, Suite 1100
Nashville, TN 37238
Ph: (615) 254-0400
Fax: (615) 254-0459
chris@gideoncooper.com

*Attorneys for the Tennessee Clinic
Defendants*

* Admitted pursuant to MDL Order No. 1.
** Admitted pro hac vice.

13

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be served electronically to the registered participants identified on the Notice of Electronic Filing and copies will be e-mailed or mailed via regular U.S. mail to those participants identified as unregistered this 17th day of April, 2015. Additionally, the subpoena and notice are being served on the following by email.

Daniel M. Rabinovitz
Michaels, Ward & Rabinovitz, LLP
One Beacon Street
2nd Floor
Boston, MA 02108

*Counsel for Gregory Conigliaro, NECC's Registered Agent*

Paul Moore
Michael Lastowski
Michael R. Gottfried
Duane Morris LLP
100 High Street
Suite 2400
Boston, MA 02110-1724

*Chapter 11 Trustee and counsel for Chapter 11 Trustee*

Geoffrey M. Coan
Hinshaw & Culbertson LLP
28 State Street
24th Floor
Boston, MA 02109

*Counsel for NECC*

Frederick H. Fern
Harris Beach PLLC
100 Wall street
23rd Floor
New York, NY 10005

*Counsel for NECC*

/s/ Chris J. Tardio
**Chris J. Tardio**

14

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION ) ) ) ) | MDL No. 13-2419-RWZ |
| This Document Relates To: ) ) | |
| All Actions ) ) ) ) | |

MDL Order No. 10
DEPOSITION PROTOCOL

September 18, 2014

Boal, M.J.

     This Deposition Protocol shall govern cases transferred to this Court by the Judicial Panel on Multidistrict Litigation pursuant to its order of February 12, 2013, entitled New England Compounding Pharmacy, Inc. Products Liability Litigation, any tag-along actions transferred by the Panel after that date, and any related actions previously assigned to this Court.  This Deposition Protocol is limited in scope to the discovery issues addressed herein.  Additional discovery issues may need to be addressed in subsequent orders.  For purposes of this Deposition Protocol, depositions of "Common Witnesses" and depositions on "Common Issues" shall refer to depositions of fact witnesses with knowledge of issues that pertain to all or a substantial number of cases in the Multidistrict Litigation ("MDL"), as opposed to depositions of witnesses with knowledge on issues pertaining to a single case or a small number of cases.

     Should this Deposition Protocol need to be amended or additional provisions included to address issues with case-specific discovery and expert discovery, the parties shall meet and

confer to amend or add to this protocol. If the parties cannot agree, they may submit any
remaining disputes to the Court.

## I.      GENERAL PROVISIONS

### A.      Lead Deposition Counsel

For purposes of scheduling and coordinating depositions, the MDL Plaintiffs shall
designate a Lead Deposition Counsel for all depositions.  For each deposition or set of related
depositions particular to a Defendant, to the extent possible, the Defendants shall designate Lead
Deposition Counsel for purposes of scheduling and coordination of the deposition(s).[1]  Plaintiff
depositions, third-party depositions, and depositions of employees, representatives, and former
employees of the Defendants in this MDL action, and matters related to the conduct of these
depositions shall be coordinated, to the extent possible, by Lead Deposition Counsel for
Plaintiffs and Lead Deposition Counsel for Defendants, or their designees.  The name and
contact information for any designee shall be promptly communicated to the other parties.
Additionally, counsel for a particular deponent shall be included in coordination of the
deposition of that deponent.  Counsel should consult in advance with opposing counsel and
counsel for proposed deponents in an effort to schedule depositions at mutually convenient times
and locations.   Nothing in the Deposition Protocol shall be construed to allow counsel for other
parties or witnesses to participate in the preparation of a party witness already represented by
counsel.

### B.      Deposition Notices

1.      *Notice of Deposition Procedures.*  A copy of this Order shall be attached to each
notice of deposition and/or any non-party subpoena to testify at a deposition, issued or served in
these MDL proceedings.

---

[1] Representation for purposes of taking and defending depositions is discussed in Section II(A).

2.      *Contents of Notice.* Information shall be provided as required by Fed. R. Civ. P.

30. Each deposition notice shall include the name of each deponent and the date, time and place

of the deposition.  If the notice asks the deponent to produce documents or information, or if the

witness may be asked about documents that may contain confidential information, the witness

shall be provided with a copy of the Third Amended Protective Order (Docket No. 814, or any

additional amendments made by the Court thereto) (the "Protective Order").

### C.      Scheduling

1.      The parties and the Court desire to minimize the expense and inconvenience of

this litigation.  Accordingly, all depositions of fact and expert witnesses taken in this MDL will

be treated as if cross-noticed and taken in each of the individual cases in this MDL and all

actions prosecuted by counsel having made an appearance in the MDL.  In no event shall

witnesses be deposed on multiple occasions on the same subjects in connection with these MDL

proceedings without leave of Court and for good cause shown.

2.      Plaintiffs and Defendants' Lead Deposition Counsel shall attempt to establish by

mutual agreement a schedule for depositions in this MDL that reflects a sequencing consistent

with (a) the availability of documents from among those produced by the parties and third

parties; (b) the objective of not subjecting any party to repeated depositions; (c) the need to

preserve relevant testimony; and (d) the schedule established by this Court.

3.      If a party decides to take a deposition before all of the documents have been

produced, they do so at their own risk and will not be allowed to re-depose the witness simply

because additional documents were produced after the deposition absent agreement of the parties

or permission from the Court for good cause shown.  Production of additional documents alone

shall not constitute good cause.

**D.      Cooperation**

Counsel are expected to cooperate with and be courteous to each other and deponents in both scheduling and conducting depositions.

**E.      Attendance**

Unless otherwise ordered under Fed. R. Civ. P. 26 (c), and subject to the restrictions set forth below, depositions may be attended by counsel of record, members and employees of their firms, members of the Plaintiffs' Steering Committee ("PSC"), attorneys specially engaged by a party for purposes of the deposition, the parties or the representative of a party, court reporters, videographers, the deponent, and counsel for the deponent.  Without agreement of the parties, no more than ten (10) Plaintiffs' counsel, including members of the PSC, may attend in person any deposition.  Nothing in the Joint Deposition Protocol shall be construed to limit the ability of counsel for a defendant to attend a deposition.  While the deponent is being examined about any material designated Confidential, persons to whom disclosure is not authorized under the Protective Order shall be excluded from the deposition, except that counsel for any Plaintiff or the deponent shall not be so excluded.  Any portion of the deposition transcript containing documents or information subject to the Protective Order entered in this case shall be sealed in accordance with the terms of the Protective Order.

**F.      Fed. R. Civ. P. 30(b)(6) Deposition**

A party noticing a deposition of an entity pursuant to Fed. R. Civ. P. 30(b)(6) shall provide a list of topics for the deposition with reasonable particularity at least thirty (30) days in advance of the deposition in order to allow time for the noticed party to object to any of the topics and for the identification and preparation of person(s) designated to testify on such noticed topics.  The noticed party shall submit its objections, if any, within fourteen (14) days of the

receipt of the 30(b)(6) deposition notice.  Counsel for the deponent and the PSC may waive the

aforementioned 30-day notice period.  A party or non-party asked to provide a designee pursuant

to a Fed. R. Civ. P. 30(b)(6) deposition notice shall provide notice of the name(s) of the

individual(s) to be produced for deposition at least 7 days prior to commencement of the

deposition, setting forth the matters upon which each person will testify.

## II.   CONDUCT OF DEPOSITIONS

### A.   Examination

Except in depositions that have been cross-noticed in actions pending in state court and

without reference to the participation of coordinating counsel from the state court actions,

questioning should ordinarily be conducted by no more than two attorneys for all MDL

plaintiffs.  Lead Deposition Counsel for Plaintiffs may designate typically no more than two

attorneys representing personal injury Plaintiffs to participate in the questioning during each

deposition.  As it relates to a deposition conducted under Rule 30(b)(6) only, Lead Deposition

Counsel for Plaintiffs may designate additional counsel for specific subject areas, and Lead

Deposition Counsel shall inform counsel for the deponent at least 5 days before such deposition

whether additional counsel will cover specific subject areas previously noticed and the specific

subject areas additional counsel will cover.  Counsel should endeavor to avoid asking the same

or repetitive questions.

Counsel for the Unaffiliated Defendants[2] shall endeavor to designate two attorneys (not

including, where applicable, the Defendant deponent's counsel) to represent the Unaffiliated

Defendants during each deposition and participate in the deposition on behalf of all Unaffiliated

---

[2] "Unaffiliated Defendants" refers to Defendants who are not affiliated with New England
Compounding Pharmacy, Inc. ("NECC").

5

Defendants. However, given the disparate interests of all Unaffiliated Defendants, this may not be possible.

Counsel for the Deponent shall "defend" the deposition. An objection by one party reserves the objection for all parties. All objections, except those which would be waived if not made at the deposition, are preserved and need not be made during the course of a deposition.

Each Deponent noticed during Common Issue phase discovery may only be deposed one time and his, her or its deposition applies to all cases pending in this MDL. Additional Plaintiffs and/or their counsel in this MDL may not re-notice or take the deposition of any Common Issue phase witness who has already testified except upon a showing before the Court of good cause and consistent with the Federal Rules of Civil Procedure.

**B.   Documents Used in Connection with Deposition.**

1.   *Marking of Deposition Exhibits.* All documents previously produced in the course of this litigation and used as exhibits with witnesses from a particular Defendant or non-party witness shall be referred to by the Bates stamp numbers appearing on the documents submitted to the document repositories. Documents that have not been previously produced in the course of this litigation shall be assigned a Bates stamp number from a range of numbers reserved for this purpose. The first time such a document is introduced as an exhibit at a deposition, it shall be marked with the assigned Bates stamp number and shall be produced at the conclusion of the deposition. Any documents marked as Exhibits during depositions shall be marked consecutively, (i.e. "Plaintiff Exhibit 1"), through the discovery phase such that if the first deposition ends with exhibit 11, then the first exhibit to the second deposition will start with exhibit 12. Whenever possible, previously marked exhibits should be used in subsequent depositions, rather than using a new exhibit number for the same exhibit.

2.      The party who notices a deposition and/or the selected attorneys who will handle the examination shall strive to bring at least seven (7) copies of all non-introduced exhibits anticipated to be used for the deposition.  It is understood that there will be certain instances (such as follow-up or to respond to the deponent's testimony) when the examining attorney(s) may need to introduce an exhibit that he or she did not anticipate and therefore may not have multiple copies available, and failure to bring the relevant copies shall not act as a bar to the introduction of such exhibit.

C.      **Limits on Duration and Number of Depositions**

1.      Absent permission from the Court or agreement of the parties, depositions shall be limited to one (1) day of seven (7) hours pursuant to Fed. R. Civ. P. 30(d)(1). Depositions should not typically begin before 9:00 a.m. and should typically conclude by 5:30 p.m. in the local time zone.

2.      The PSC and each Defendant shall meet and confer to discuss a limit to the number of Common Witness depositions from that Defendant's employees, agents, former employees, and/or former agents.  If the parties cannot agree on a limit, the Defendant may move for a protective order.

D.      **Location for Depositions**

Defense counsel will make reasonable efforts to seek agreement of former employees of defendants to appear at designated locations.  Absent such agreement, depositions will take place either within the federal district in which the former employee resides or at a location mutually agreeable to the former employee and the parties.

E.     **Coordination with State Court Actions, Cross-Noticing and Avoidance of Duplicative Depositions**

1.     *Coordination with State Court Actions.*  In order to avoid duplicative discovery, minimize the number of times that a witness shall appear for a deposition, and to prevent the unnecessary expenditure of judicial resources and the resources of parties, counsel for Plaintiffs in the MDL shall use their best efforts to coordinate the scheduling of depositions with counsel for state court Plaintiffs.  The Court expects that counsel for parties in the MDL proceeding will help ensure that such coordination is achieved where it is practicable.

2.     *Cross-Noticing.*  Any deposition in this MDL may be cross-noticed by any party in any clinic-related action pending in state court, and any deposition in any clinic-related action pending in state court may be cross-noticed by any party in this MDL.  Each deposition notice shall include the information described in section I.B.2., supra.  If a state court deposition has been cross-noticed in this MDL, then state court Plaintiffs represented by counsel with actions filed in this MDL may not take a subsequent deposition of that witness except for good cause shown as determined by the judge presiding over the proceeding in which the deposition is sought.  In that case, any subsequent deposition shall be restricted to such additional inquiry permitted by the judge presiding over the proceeding in which the deposition is sought.

3.     Nothing in Section III.F.1-2 shall be construed as an injunctive or equitable order affecting state court proceedings.  Rather this provision is intended to reflect this Court's desire for voluntary state-federal coordination among the litigants and their counsel.

4.     Unless it is jointly noticed by Plaintiffs in both the class action and personal injury matters, the noticing of a deposition by Plaintiffs' counsel for personal injury matters shall not count against the limitation on numbers of deposition prescribed under the Federal Rules of Civil Procedure for plaintiffs in any consolidated class action, and vice versa.

**F.      Early Depositions**

If the parties become aware of any person who possess relevant information but, who, by reason of age, ill health, or termination of employment with defendants may become unavailable for deposition, the deposition may be taken as soon as possible, using the procedures outlined in Fed. R. Civ. P. 27.

**G.      Telephonic Depositions and Participation**

The parties shall comply with Fed. R. Civ. P. 30(b)(4) regarding remote depositions. Non-examining counsel may attend depositions telephonically but are not permitted to participate absent extenuating circumstances, such as weather delay or physical restriction on travel or by agreement of counsel for the deponent.

**H.      Disputes During Depositions**

If a dispute arises during a deposition that cannot be resolved by agreement, the deposition shall continue to be taken as to matters not in dispute.  The parties shall present the dispute to the Court by motion at the earliest practicable time.  Nothing in this Order shall deny counsel the right to suspend a deposition pursuant to Fed. R. Civ. P. 30(d)(3).

**I.      Video Depositions**

After so indicating in its notice of a deposition, a party may, at its expense, record a deposition by videotape or digitally-recorded video pursuant to Fed. R. Civ. P. 30(b)(3) subject to the following rules:

1.      *Video Operator.*  The operator(s) of the video recording equipment shall be subject to the provisions of Fed. R. Civ. P. 28(c) and/or any protective order issued in the case pertaining to the deposition.  At the commencement of the deposition, the operator(s) shall swear or affirm to record the proceedings fairly and accurately.

2.     *Attendance.*  Each witness, attorney and other person attending the deposition shall be identified on the record at the commencement of the deposition.

3.     *Interruptions.*  No attorney or party shall direct instructions to the video operator as to the method of operating the equipment.  The video camera operation will be suspended during the deposition only upon agreement of counsel.

### J.     Correcting and Signing Deposition Transcripts

Unless waived by the deponent, the transcript of a deposition shall be submitted to the deponent within thirty (30) days after the end of the deposition for correction and signature. Upon receipt of the transcript, the deponent thereafter shall have thirty (30) days to make any corrections to the transcript, sign it, and return the transcript to the deposing party.  If represented by counsel, a deponent need not sign any corrected transcript before a notary.  If no corrections are made during this time, the transcript will be presumed accurate.

## III.     USE OF DEPOSITIONS

Depositions conducted in this MDL may be used in related cases in any state court to the extent permitted by that state's laws and rules.  Depositions may be used by or against any party as permitted by the Federal Rules of Civil Procedure and the Federal Rules of Evidence.

## IV.     FEDERAL RULES OF CIVIL PROCEDURE APPLICABLE

Unless specifically modified herein, nothing in this Deposition Protocol shall be construed to abrogate the Federal Rules of Civil Procedure, including the right of any party or non-party to object to or seek a protective order to prevent the deposition of any witness.

**So Ordered.**

  /s/  Jennifer C. Boal
JENNIFER C. BOAL
UNITED STATES MAGISTRATE JUDGE

10