UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br>    All Cases | MDL No. 1:13-md-2419-RWZ |

**MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS TO APPOINT DAVID J. MOLTON AS TRUSTEE
OF THE NEW ENGLAND COMPOUNDING CENTER TORT TRUST**

The Official Committee of Unsecured Creditors (the "Official Committee") of New England Compounding Pharmacy, Inc. ("NECC" or the "Debtor"), by and through its Co-Chairs, hereby moves (this "Motion") this Court for entry of an order appointing David J. Molton, Esq., as trustee (the "Tort Trustee") of the trust (the "Tort Trust") to be created upon confirmation of the *Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc.* (as amended from time to time, the "Plan").

In support of this Motion, the Official Committee respectfully states as follows:

**SUMMARY**

After the Plan is confirmed in the bankruptcy case, and in addition to all the usual administrative details necessary to close the case, there will be two major and critically important additional things to accomplish. The first is to resolve all of the claims in the case, especially the more than three thousand personal injury and death claims that comprise the great bulk of the creditor body here. The second is to resolve the many claims for indemnification and contribution asserted by NECC's joint tortfeasors.

This Motion concerns the choice of who will serve as the "Tort Trustee" to be appointed (by agreement of the major parties, by this Court) under the Plan. As to the two critically important tasks noted above, the Tort Trustee will have *no* substantive role at all as to the first. Rather, the Tort Trustee will simply hold funds, wait for instructions from other fiduciaries as to the amounts of resolved claims, and cut the appropriate checks. That job can be done by any number of people trusted by the parties to be a fiduciary holding a large amount of money.

The Tort Trustee's role as to the second task is mission critical. As explained in more detail below, the Tort Trustee is the person appointed under the Plan by this Court to be the person who evaluates and resolves the many substantial joint tortfeasor claims for indemnification and contribution. These claims, asserted and to be asserted here in an amount that may exceed the entire $200 million settlement fund that has taken the parties so much hard work to create, are highly complex bankruptcy claims that arise from time to time in mass tort cases involving both bankruptcies and multi-district litigation. The Official Committee, more than two years ago, chose David Molton and his law firm (Brown Rudnick LLP), *inter alia*, in anticipation of needing to resolve these claims here and because Mr. Molton is a nationally recognized expert in the efficient and successful resolution of hundreds of millions of dollars in similar claims in other mass tort insolvency cases in other Districts. The resolution of those claims was deferred by agreement of the parties to after confirmation of the plan, and so the Committee has hereby nominated Mr. Molton to serve as Tort Trustee -- with the benefit of his two years of exemplary service to this case and his intimate knowledge of those claims and all the parties in this case -- to complete the task for which he was appointed in 2013.

**BACKGROUND**

1.      Prior to the Petition Date (as defined herein), NECC operated as a compounding pharmacy that combined and mixed active and inactive ingredients to create formulations of compounded pharmaceutical products. Beginning in September 2012, reports began to surface of several patients diagnosed with a rare strain of fungal meningitis (the "Outbreak") after receiving injections of preservative-free methylprednisolone acetate ("MPA") compounded by NECC.

2.      The Outbreak resulted in hundreds of personal injury and wrongful death claims against NECC and others. The Centers for Disease Control and Prevention ("CDC") reported that, as of October 23, 2013, 751 individuals had fallen ill, 64 of whom had died. NECC therefore surrendered its pharmacy licenses, suspended operations, and terminated its employees.

3.      On December 21, 2012 (the "Petition Date"), NECC filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (commencing the "Chapter 11 Case"). The Chapter 11 Case is pending before the Honorable Henry J. Boroff in the United States Bankruptcy Court for the District of Massachusetts (the "Bankruptcy Court"). Approximately 3,770 individuals and entities have filed proofs of claims against NECC, approximately 3,500 of whom submitted an addendum with their proofs of claim alleging personal injury or wrongful deaths resulting from the administration of NECC products.

4.      On January 18, 2013, the Office of the United States Trustee (the "UST"), pursuant to Bankruptcy Code Section 1102(a)(1), appointed a nine (9) member Official Committee, eight (8) of whom are holders of personal injury tort and/or wrongful death cases against NECC and others (the ninth member of the Official Committee is NStar Electric Company). The Official Committee is charged, by statute, with representing and protecting the

interests of NECC's unsecured creditors, including holders of personal injury and wrongful death claims.

5. On January 25, 2013, the Bankruptcy Court granted the UST's *Certificate of Appointment* appointing Paul D. Moore as Chapter 11 trustee of the Debtor (the "Chapter 11 Trustee").

6. On February 12, 2013, the Judicial Panel on Multidistrict Litigation entered an order establishing this multidistrict litigation and transferring actions against NECC involving the contaminated MPA (which were commenced prior to the filing of NECC's bankruptcy petition), as well as all actions against its affiliates, to this Court for consolidated pretrial proceedings. As this Court is well aware, over five hundred separate lawsuits have been joined before this Court in these MDL Proceedings.

7. On February 22, 2013, the Bankruptcy Court approved the employment and retention of Brown Rudnick LLP as counsel to the Official Committee. David J. Molton, a partner at Brown Rudnick LLP with substantial experience in cases dealing with the interface of mass tort multidistrict litigation with a concurrently pending bankruptcy case, has since served as a principal counsel to the Official Committee. Mr. Molton has extensive experience and expertise in, and is widely recognized as an expert nationally as to, *inter alia*, the creation of plan structures for the resolution of tort claims in bankruptcy cases and the litigation and resolution of claims of purported holders of indemnification and/or contribution claims (hereinafter referred to as "502/509 Claims") asserted by joint tortfeasors in chapter 11 cases (often in the context of mass tort insolvencies with parallel MDL proceedings), including the complex set of defenses to those claims arising under Sections 502(e) and 509 of the Bankruptcy Code (hereinafter referred to as "Specialized 502/509 Litigation").

**I.      The Plan and the Tort Trust**

8.      On December 3, 2014, the Chapter 11 Trustee and the Official Committee jointly filed the Plan as "co-proponents" thereof.  The Bankruptcy Court has scheduled a hearing to consider confirmation of the Plan for May 19, 2015.

9.      The primary objective of the Plan is to compensate those victims that have suffered personal injury and/or death due to the allegedly contaminated drugs compounded by NECC.  To that end, the Plan provides for the establishment of the Tort Trust, governed by the Tort Trust Agreement, which will serve as a mechanism for making distributions to NECC's tort creditors and for pursuing the resolution of any 502/509 Claims of those entities that actually administered tainted drugs to patients or were otherwise allegedly culpable for the Outbreak (to the extent those claims are not settled or otherwise released through the Plan).  The Tort Trust will be funded by the net proceeds of the approximately $200 million in contributions (such net proceeds, the "Victims' Compensation Fund") secured through mediated settlements reached between the Chapter 11 Trustee (with material assistance and the full support of the Official Committee and the Plaintiffs' Steering Committee), on one hand, and, on the other hand, (i) NECC's shareholders and affiliates (and their insurers), (ii) certain of NECC's vendors (and their insurers) and (iii) certain of the clinics and health care providers that administered NECC MPA (and their insurers).  The Victims' Compensation Fund will be distributed through the Tort Trust to injured victims of the Outbreak upon the Plan's confirmation by Judge Boroff.

**II.     The Role of the Tort Trustee**

10.     The Tort Trust will be administered by a Tort Trustee.  Significantly, the Tort Trustee will ***not*** have any authority, discretion or decision-making power over the compensation that will be awarded to victims (NECC's tort claimants) under the various Claims Resolutions

Facilities ("CRFs") that will be set up for that purpose. The CRFs provide for the appointment of separate and independent Claims Administrators (and, in some instances, individuals who will consider appeals), none of whom will be the Tort Trustee. Accordingly, the Tort Trustee will have *no* direct or indirect role in either the allowance or disallowance of any victim claims or the determination of any victim's ultimate recovery.

11. What the Tort Trustee *will* do is (i) manage the Tort Trust assets and make distributions from those assets to holders of allowed tort claims in accordance with written instructions provided to the Tort Trustee by the Claims Administrators (the latter of whom, again, will determine the compensation to be paid to allowed tort claims based on agreed-to criteria in the CRFs), (ii) investigate, assert, prosecute and resolve causes on behalf owned or assigned to the NECC estate and, upon Plan confirmation, transferred to the Tort Trustee for the benefit of holders of allowed tort claims, (iii) attempt to enter into a global resolution, in coordination with the Plaintiffs' Steering Committee and other experienced counsel, with the Centers for Medicare and Medicaid Services ("CMS") to reimburse medical liens that CMS has asserted or may assert tort claimants' recoveries from the Tort Trust, and, most crucially, (iv) develop and implement a strategy to resolve the outstanding 502/509 Claims that clinics, health care providers, and other non-NECC affiliates who have been alleged to be culpable in the Outbreak have asserted against NECC, on the grounds that NECC is partly or entirely liable for the Outbreak and, accordingly, is allegedly obligated to contribute to or indemnify those unaffiliated third parties against any liability imposed on them in connection with the Outbreak. The 502/509 Claims asserted against NECC are unliquidated in amount, but if liquidated and allowed could total tens of millions of dollars or more.

12. Resolution of the 502/509 Claims is a critical responsibility, and the Tort Trustee's success or failure on this point will have a substantial and direct bearing on the ultimate recoveries of NECC's tort claimants. As Judge Saylor recognized, contribution and indemnity claims against a debtor (especially where, as here, those claims arise out of personal injury and wrongful death verdicts against the claimant) "can be 'unpredictable *and substantial'*" -- "even being required to *contribute* to their satisfaction 'could have *potentially deleterious effects on a debtor's estate*.'" In re New Eng. Compounding Pharm. Prods. Liab. Litig., 496 B.R. 256, 272 (quoting Beck v. Victor Equipment Co., Inc., 277 B.R. 179, 180-181 (S.D.N.Y. 2002) (Rakoff, J.)) (emphasis supplied).[1] Here, under the Plan, allowed 502/509 Claims enjoy the same legal priority as the claims of tort victims. Accordingly, it will be important to resolve those claims in the manner that has the least effect on the Victims' Compensation Fund. It is therefore critical that the Tort Trustee have the bankruptcy expertise and case knowledge necessary to do so.

### III.  Procedures for Appointment of the Tort Trustee

13. The Plan provides that the Tort Trustee will be jointly appointed by the Official Committee and the Plaintiffs' Steering Committee. However, the Plan further provides that if those two Committees are unable to reach an agreement as to the selection of the Tort Trustee by thirty (30) days before the Confirmation Hearing (*i.e.*, by April 19, 2015), the selection shall then be made by this Court. Unfortunately, the Official Committee (which has voted in favor of Mr. Molton to serve as Tort Trustee) and the Plaintiffs' Steering Committee were unable to reach a

---

[1] See also In re Dow Corning Corp., 86 F.3d 482, 494 (6th Cir. 1996) (noting the "threat to a debtor's reorganization plan . . . posed by the thousands of potential indemnification claims at issue here."); In re Twin Labs Personal Injury Cases, Case No. 03 Civ. 9169, 2004 WL 435083, at *1 (S.D.N.Y. 2004) (concluding, in the context of product liability claims that "the retailer defendants . . . will undoubtedly seek indemnity from the Debtors following any judgments against them. Accordingly, from many perspectives, the . . . action against the retailers will have more than a 'conceivable effect' on the bankrupt estate of the Debtors.")).

consensus by this date. Accordingly, the Official Committee, through its undersigned Co-Chairs, is now submitting the Official Committee's Tort Trustee selection to this Court.

14. Mr. Molton's proposal to serve as Tort Trustee is attached hereto as <u>Exhibit A</u>. For the reasons set forth therein and herein, the Official Committee believes that Mr. Molton, who as summarized above and described below in more detail has extensive experience with the interface of mass tort litigation with bankruptcy generally and these proceedings specifically, is the individual best qualified to serve as Tort Trustee. The Official Committee therefore respectfully requests that this Court appoint Mr. Molton as Tort Trustee for the Tort Trust.

## BASIS FOR RELIEF REQUESTED

15. Mr. Molton is intimately familiar with these proceedings and uniquely qualified to address the substantive issues the Tort Trustee will be called upon to resolve (in particular the Specialized 502/509 Litigation), and he is thus the individual best qualified to serve as Tort Trustee. Mr. Molton has represented the Official Committee (principally tort victims) before this Court and the Bankruptcy Court since that Committee's appointment over two years ago.[2] In that time, Mr. Molton has spent close to 1,000 hours working hand in hand and in true partnership with the Chapter 11 Trustee, the Official Committee members' attorney representatives and the Plaintiffs' Steering Committee both to create (and fund) the Victims' Compensation Fund and to draft the key documents – *i.e.*, the Plan and the Tort Trust Agreement – that provide the means and mechanisms to finalize the mediated settlements and effectuate distributions of the monies in

---

[2] We understand that the Plaintiffs' Steering Committee has raised a concern that Mr. Molton's role as counsel to the Official Committee, which is made up primarily of tort creditors (who are represented on the Official Committee by their attorneys), may influence his decision making *vis-à-vis* distributions to those attorneys' individual clients. This concern is wholly unfounded, because, *inter alia*, the Tort Trustee has **no authority or ability whatsoever** to influence or decide in any way the compensation awarded to tort claimants under the applicable CRFs.

8

the Victims' Compensation Fund to victims and other creditors of the Debtor. Mr. Molton also has worked with the Official Committee's member representatives tasked with evaluating clinics' responsibility as part of mediation efforts, and through that effort (in which Mr. Molton has been a principal and important participant in every mediation and in the drafting of the settlement agreements with the settling defendants) has gained substantial insight into the clinics' claims and the claims of victims against the clinics. And because the Chapter 11 Trustee will himself continue as the sole post-confirmation officer of NECC, Mr. Molton's service as Tort Trustee would allow the same team that has effectively worked together over the past two years to bring these proceedings to their present place of imminent success to continue their valuable partnership for the continued benefit of tort victims.

16. Mr. Molton's decade of hands-on experience and track record of success in other national mass tort cases (reflected in his full biography, attached hereto as Exhibit B), also makes him uniquely well-qualified to serve as Tort Trustee. Of particular relevance, Mr. Molton represented (i) the Ad Hoc Committee of Tort Claimants in connection with the Muscletech CCAA proceeding in Canada (the foreign ephedra bankruptcy) and Muscletech's Chapter 15 case and related litigation in the Southern District of New York (one of the first Chapter 15 cases), (ii) the Official Committees of Tort Claimants and Creditors in the Chapter 11 cases of Twinlab, Metabolife and NVE (the domestic ephedra bankruptcies) and (iii) all of these Committees in the ephedra MDL in the Southern District of New York presided over by Judge Jed Rakoff. In each of the ephedra bankruptcy cases, Mr. Molton helped create the architecture for global resolution of all tort claims and negotiated multi-million dollar global settlements for the benefit of the tort claimants. It is this very architecture, including the model documents off which the Plan and the Tort Trust Agreement are based, that (as all parties have widely recognized since the outset of

this case) has served as the framework for the successful resolution of the Chapter 11 Case and the establishment of the Victims' Compensation Fund.

17. Mr. Molton also represents or has represented (i) dozens of clergy abuse victims in the Chapter 11 case of the Diocese of San Diego in Bankruptcy Court in California (participating in the negotiation of a significant global settlement with the Diocese and its insurers for the benefit of victims); (ii) diacetyl (artificial popcorn butter flavoring) tort claimants in the Chapter 11 case of Chemtura Corporation in Bankruptcy Court in New York; (iii) with other members of his firm, Lead Counsel (Steve Berman, Elizabeth Cabraser and Bob Hilliard) in the GM Ignition Switch Defect MDL Litigation (S.D.N.Y) as Plaintiffs' Designated Counsel in the Bankruptcy Court (Bankr. S.D.N.Y.), where he and his colleagues are charged with opposing New GM's efforts to use the GM Sale Order injunction to shield New GM from liability for billions of dollars of economic loss damages to plaintiffs; and (iv) the American Association for Justice and the New Jersey Association for Justice in submitting an *Amici Curiae* brief to the US Supreme Court in support of the Petition for a Writ of Certiorari, filed by Dean Erwin Chemerinsky of the University of California Irvine Law School, on behalf of injured diacetyl plaintiffs in connection with the Third Circuit's decision in *Diacetyl Plaintiffs v. Aaroma Holdings (In re Emoral), LLC*, 740 F.3d 845 (3d Cir. 2014), where the Third Circuit held that the injured plaintiffs' claims against a successor to the debtor were property of the estate which could be settled by the bankruptcy trustee. Mr. Molton is also the author of the "Bankruptcies in Mass Tort Cases" section (and annual supplements thereto) of *Litigating Mass Tort Cases*, a leading handbook on the substantive and procedural legal underpinnings of mass tort law authored and edited by Paul Rheingold.

18. As a result of these engagements and others, Mr. Molton has extensive experience dealing with the complicated issues presented by the 502/509 Claims of clinics and health care providers. Here, where personal injury claimants have suffered grievous harm and have incurred and continue to incur substantial medical expenses, and where the ultimate amount of their potential recoveries may be affected by the 502/509 Claims, the resolution of the Specialized 502/509 Litigation demands the retention of the best person for that job. Having Mr. Molton, who is one of the few nationally-recognized experts on the subject and is already fully up to speed on these proceedings, the Chapter 11 Case and the 502/509 Claims, spearhead this important work is critical to having it efficiently and cost-effectively done. (Indeed, it is in major part why Mr. Molton and his firm were chosen to be counsel for the Committee in the Chapter 11 Case, as in many other cases those claims are resolved prior to Plan confirmation by the official committees serving in those other cases.)[3] He has *already*, moreover, demonstrated his ability to do that work here, through his material participation in the mediated settlements with certain of NECC's vendors, clinics and health care providers that administered NECC MPA, and their respective insurers. By those settlements, the tens of millions of 502/509 Claims asserted by the settling parties against the NECC estate have been entirely waived.

19. The Official Committee notes that it understands that the Plaintiffs' Steering Committee has raised concerns that any Tort Trustee's employment of his or her own firm as counsel would result in a lack of oversight over the Tort Trust's operation. The Official Committee respectfully submits that this concern is unfounded. As an initial matter, a

---

[3] By contrast, familiarizing any other potential Tort Trustee with the parties and issues will undoubtedly require an expensive and time-consuming "on-boarding" process, thus delaying eventual distributions to those injured by NECC products, and siphoning funds that should properly be directed to maximizing the recoveries of those individuals.

bankruptcy functionary's retention of his or her own firm is unremarkable; indeed, as this Court is aware, the Chapter 11 Trustee has employed his own firm as his counsel without objection throughout these proceeding, and the Official Committee understands that he intends to continue to do so as the sole post-confirmation officer of NECC.  In addition, Mr. Molton's firm already has significant familiarity with and in-depth knowledge of these proceedings; accordingly, retention of his firm will thus promote the efficient operation of the Tort Trust for the same reasons Mr. Molton's own appointment will do so.  Finally, to ensure that the work that needs to be done (including the work on the Specialized 502/509 Litigation) is both necessary and is performed efficiently, Official Committee member Honor Heath, an attorney with significant bankruptcy experience in Massachusetts and elsewhere, has volunteered to review the fees of the Tort Trustee's counsel and make appropriate reports.

## CONCLUSION

20. In short, Mr. Molton is the individual best poised to maximize the proceeds available to the Tort Trust, and ultimately, to tort victims.  The Official Committee therefore respectfully submits that his appointment as Tort Trustee will best serve the interests of NECC's tort creditors.

*[Remainder of page intentionally left blank]*

**WHEREFORE**, for the reasons set forth herein, the Official Committee respectfully requests that this Court enter an order appointing David J. Molton as Tort Trustee of the Tort Trust.

Dated: April 24, 2015
       Boston, Massachusetts

Respectfully submitted,

**ANDREWS & THORNTON**

By:   /s/ Anne Andrews
Anne Andrews, Esq.
John C. Thornton, Esq.
Karren Schaeffer, Esq.
2 Corporate Park, Ste. 110
Irvine, CA 92606
Telephone: 949 748-1000
aa@andrewsthornton.com
jct@andrewsthornton.com
kschaeffer@andrewsthornton.com

*Counsel for Official Committee of Unsecured Creditors of New England Compounding Pharmacy, Inc. Member and Co-Chair, Katrina Eldreth, obo Ari Gomez*

**COHEN PLACITELLA & ROTH P.C.**

By:   /s/ Michael Coren
Michael Coren, Esq.
Harry Roth, Esq.
Two Commerce Square
2001 Market Street, Suite 2900
Philadelphia, PA 19103
Telephone: 215 567-3500
mcoren@cprlaw.com
hroth@cprlaw.com

*Counsel for Official Committee of Unsecured Creditors of New England Compounding Pharmacy, Inc. Member and Co-Chair, Meghan Handy*

## **CERTIFICATE OF SERVICE**

    I, Michael A. Jackson, hereby certify that on the 24th day of April, 2015, I caused a true and accurate copy of the foregoing Motion to be served by electronic service via the Court's ECF service to those parties registered to receive electronic service.

                                                /s/ Michael A. Jackson
                                                Michael A. Jackson, Paralegal
                                                BROWN RUDNICK LLP
                                                Seven Times Square
                                                New York, NY  10036
                                                (212) 209-4800

61928043