UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEW ENGLAND COMPOUNDING PHARMACY, INC.  PRODUCTS LIABILITY LITIGATION | MDL No. 2419<br>Dkt. No. 1:13-md-2419 (RWZ) |
| THIS DOCUMENT RELATES TO:<br><br>All Actions | |

**PLAINTIFFS' STEERING COMMITTEE'S CROSS MOTION TO APPOINT LYNNE F. RILEY TORT TRUSTEE AND OPPOSITION TO THE CREDITORS' COMMITTEE'S MOTION TO APPOINT DAVID J. MOLTON TORT TRUSTEE [ECF NO. 1791]**

The proposed Chapter 11 Plan contemplates creation of a Tort Trust, to be funded by settlements between the Chapter 11 Trustee and contributing entities (after fees and expenses). The primary function of the Tort Trust is to distribute funds to individuals that hold personal injury and/or wrongful death claims against NECC and other participating individuals and entities.  The Tort Trust is to be overseen by this District Court.  The Plan provides that if the Plaintiffs' Steering Committee and the Official Creditors' Committee are not able to agree on a Tort Trustee by thirty days before the Confirmation hearing, then the selection shall be made by this Court.

The role of the Tort Trustee is largely ministerial.  The Tort Trustee does *not*, for example, determine the amounts of payments to tort victims, nor address or resolve any appeals of awards to victims.  The Tort Trustee primarily holds the tort trust assets and writes checks in accordance with the provisions of the Plan.[1]

To extent that the Tort Trustee has to exercise discretion, it is in resolving liens with public or private payers and dealing with any unresolved contribution and indemnification

---

[1] As set out in the Confirmation Order, the Tort Trust Documents, the Claims Resolution Facility Procedures, and the Provider Claims Resolution Facilities Procedures.

claims. But liens are already being dealt with in an organized fashion, spearheaded by Lead Counsel with a subcommittee comprised of PSC and OCC members. And there is little to no work to be done with respect to the tax refunds.

So there is some, small, chance that the Tort Trustee will be called upon to decide whether to hire professionals to litigate any unresolved contribution and indemnification claims on behalf of the estate (if such claims remain) and, if he or she determines that hiring bankruptcy counsel is necessary, reviewing the time and expenses of those professionals. It is precisely for the reasons cited by the OCC in support of David Molton's candidacy, including Mr. Molton's familiarity with the bankruptcy proceedings in this matter and he and his law firm's qualifications to litigate and/or negotiate claims against the assets of the estate for indemnification, that Mr. Molton and his firm should be the professionals *hired by* the Tort Trustee (if it becomes necessary to litigate any claims of the Estate). Mr. Molton's law firm is the likely candidate to do such work, and the PSC's proposed Tort Trustee candidate is open to hiring Brown Rudnick. And this is precisely why Mr. Molton should *not* be appointed Tort Trustee.

The Plaintiffs' Steering Committee ("PSC") unanimously opposes the appointment of David J. Molton as Tort Trustee for two reasons.

First, given the likely future role of his firm, appointing Mr. Molton Tort Trustee creates a conflict of interest. The Tort Trustee should be focused on minimizing expenses that may dilute the Tort Trust in order to maximize the return to tort claimants, and therefore it is imperative that the Tort Trustee be independent of the professionals hired by the Tort Trustee. How can the Tort Trustee discourage unnecessary expenditures and independently review the time and expenses incurred by partners and associates at his own firm? In order to avoid a

2

conflict, and to ensure that the supervision of the professionals hired and paid out of the proceeds of the Tort Trust are overseen by an independent Tort Trustee, someone other than Mr. Molton should be appointed.

Second, the PSC is concerned about the financial terms set forth in Mr. Molton's submission. Mr. Molton proposes charging a $5,000 flat fee for compensation as Tort Trustee, but "if I retain counsel (my firm or others) to represent me as Trustee in this matter (for example, to resolve legal claims asserted against the Tort Settlement Trust), counsel's fees will not be included in that fixed fee)." The PSC understands that Mr. Molton intends to pay his firm $625 blended hourly rate for his firm's services litigating contribution and indemnification claims. This rate is significantly higher than the $425 blended hourly rate charged for his firm's services as Counsel to the Creditors' Committee.

The PSC hereby moves the Court to appoint Lynne F. Riley of Casner & Edwards as Tort Trustee. Ms. Riley has agreed that, should she be appointed, she will not hire her own firm to litigate claims for indemnity and she is open to retaining Mr. Molton and Brown Rudnick to perform such work (if appropriate financial terms can be reached). Ms. Riley's experience and credentials are discussed below and in her attached response to the Request for Proposal issued jointly by the PSC and OCC.

## I. BACKGROUND

### A. The Tort Trust and the role of the Tort Trustee

On February 22, 2015, the Chapter 11 Trustee filed the First Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc. (the "Plan").[2] The Amended Plan contemplates the creation of a Tort Trust, as provided for in the Plan Supplement filed on

---

[2] Unless otherwise noted, all section numbers cited herein refer to the First Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc. [Dkt. 1706-1].

3

February 13, 2015,[3] into which (after estate expenses and the payment of trade claims) the proceeds of the various settlements with NECC insiders, affiliated entities, their insurers, NECC vendors and clinic related defendants would be held for the benefit of tort victims.[4]  This court, not the bankruptcy court, oversees the Tort Trust:

> For example:
>
> (c) The Tort Trustee may be removed from office by the District Court upon his or her own motion or the motion of at least twenty (20) Tort Trust Beneficiaries represented by at least five (5) independent and unaffiliated attorneys and a determination by the District Court that such removal is appropriate upon good cause shown.
>
> **3.04 *Appointment of Successor Tort Trustees*.**
> (a) In the event of the death, resignation, incapacity to serve as determined by the District Court or removal of a Tort Trustee prior to the expiration of his or her term, a successor Tort Trustee shall be appointed by the District Court on motion of any party in interest.[5]

Matters related to the Tort Trust are governed by the terms of the Plan as well as by a Tort Trust Agreement that has been negotiated and agreed to by the Chapter 11 Trustee, the OCC, and the PSC.

The Tort Trust will be administered by a Tort Trustee.  The Plan provides,

> *5.07 Role of the Tort Trustee.*  In furtherance of, and consistent with the purpose of, the Tort Trust and this Plan, the Tort Trustee shall, subject to the terms of this Plan and the Tort Trust Agreement, (i) have the power and authority to hold, manage, sell and distribute the Tort Trust Assets as set forth herein and in the Tort Trust Agreement, (ii) have the power and authority to hold, manage, sell and distribute Cash or non-Cash Tort Trust Assets obtained through the exercise of its power and authority, (iii) have the power and authority to investigate, assert, prosecute and resolve, in the names of the Debtor and/or the name of the Tort Trust, the Estate Causes of Action in its sole and absolute

---

[3] Notice of Filing of Plan Supplement to the Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc. ("Plan Supplement") [Dkt. 1694].

[4] *See* Article 5, Settlement of Tort Claims and the NECC Tort Trust, sections 5.01 – 5.07.

[5] Tort Trust Agreement, Ex. 1 to Plan Supplement [Dkt. 1694-2] at p.7.

4

> discretion and (iv) have the power and authority to perform such other functions as are provided in this Plan or Tort Trust Agreement. The Tort Trustee shall be responsible for all decisions and duties with respect to the Tort Trust and the Tort Trust Assets, subject to the terms of this Plan and the Tort Trust Agreement. Subject to the provisions of the Tort Trust Agreement, in all circumstances, the Tort Trustee shall act in furtherance of the purpose of the Tort Trust, and shall use commercially reasonable efforts to dispose of the Tort Trust Assets and to make timely distributions and not unduly prolong the duration of the Tort Trust.

In many respects, the role of the Tort Trustee is ministerial. He or she will be responsible for managing and protecting the assets of the Tort Trust and effectuating payments to tort victims from the funds held in trust. But the Tort Trustee has no discretion as to the amount of payments to be made to individual tort claimants. Those decisions are made in the first instance by a court-approved settlement administrator applying an agreed upon and court-approved settlement matrix. Appeals of decisions of the claims administrator are resolved by an Appeals Administrator, whose decisions are final and non-appealable.

> **5.10** *Distribution of the Tort Trust Assets.* The Tort Trustee shall distribute the proceeds of the Tort Trust Assets in accordance with this Plan, the Confirmation Order, the Tort Trust Documents, the Claims Resolution Facility Procedures, and the Provider Claims Resolution Facilities Procedures….

The Tort Trustee is responsible for resolving any remaining insurance liens (if no global settlement of such liens is reached) that may be levied against the tort victims' recovery and for effectuating payments of such amounts to tort victims as determined by this process, but has no input or discretion whatsoever in the amount awarded to tort victims. Efforts to resolve liens are already underway.

> **5.10** *Distribution of the Tort Trust Assets.* . . . the Tort Trust shall be responsible for all reimbursement and reporting obligations imposed by the Medicare Act for the repayment of any claim related conditional payments made under Medicare Part A, B, C and D ("Conditional Payment") or any state's Medicaid or Workers Compensation statute. Before disbursing any Tort Trust Assets to

5

> any Tort Trust Beneficiary, the Tort Trustee may enter into a global resolution with the Centers for Medicare and Medicaid Services ("CMS") to reimburse all Medicare Part A, B, C and D liens that are subject to repayment for Conditional Payments made pursuant to 42 USC 1395y(b) and the accompanying Medicare Part C and Part D statutes and Medicare reporting obligations
>
> . . .
>
> **5.11** *Resolving Liens Other than Imposed by the Medicare Act and States' Medicaid and Worker Compensation Statutes*. Before disbursing any Tort Trust Assets to a Tort Trust Beneficiary, the Tort Trustee shall ensure that other liens that the Tort Trustee has received notice of have been resolved or have been otherwise satisfied. . **. .**

The Tort Trustee will also be responsible for resolving any outstanding claims against the assets of the Tort Trust by clinic-related defendants, doctors, and other non-NECC affiliated entities who are defending against claims by victim and who have asserted claims for contribution and indemnity against NECC. These "Estate Causes of Action" as defined in the Plan and excerpted below, become the responsibility of the Tort Trustee pursuant to § 5.07.

> **1.68** *Estate Causes of Action.* All of the Estate's claims for relief, causes of action, contested matters and lawsuits, whether known or unknown, existing or hereafter arising, in law, equity or otherwise, based in whole or in part on any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Case, including through the Effective Date, including, without limitation, (i) those arising under chapter 5 of the Bankruptcy Code, (ii) any avoidance or fraudulent transfer or conveyance under applicable state law, and (iii) those relating to the compounding, design, marketing, sale, distribution, fabrication, advertising, supply, production, formulation, use, administration, labeling or ingestion of any product produced, sold and/or distributed by the Debtor, including, but not limited to, the Drugs, and all insurance policies owned by the Debtor; *provided, however*, that Estate Causes of Action shall not include any causes of action the Estate may hold against any Estate Representative.

6

While the parties believe and hope that these claims will be resolved before the creation of the Tort Trust, under the Tort Trust agreement, the resolution of any claims not yet resolved will become the responsibility of the Tort Trustee.

B.      **Appointment of a Tort Trustee**

The Plan provides that the Tort Trustee will be jointly appointed by the PSC and the OCC.  If these two committees cannot agree on a candidate, the Plan contemplates that the Tort Trustee shall be appointed by the MDL Court:

> **1.196  *Tort Trustee.*** The trustee of the Tort Trust appointed by the Official Committee and the Plaintiffs' Steering Committee pursuant to the Tort Trust Agreement in accordance with this Plan, to be identified in the Confirmation Order, or any successor. If the Official Committee and the Plaintiffs' Steering Committee are unable to reach an agreement as to the selection of the Tort Trustee by thirty (30) days before the Confirmation Hearing, then the selection shall be made by the District Court.

C.      **Confirmation Hearing**

The Bankruptcy Court has scheduled a hearing to consider the Chapter 11 Trustee's motion to confirm the Plan on May 19, 2015.[6]  The Confirmation hearing is less than thirty days away.

Despite exhaustive good faith efforts by both a subcommittee of individuals from the PSC and the OCC, as well as discussions directly between the two committees over a period of months, the PSC and the OCC have not agreed on a candidate.  The PSC asks that the Court select a Tort Trustee before the Confirmation Hearing so as to not inadvertently delay next steps in effectuating the Plan.

---

[6] Notice of Bankruptcy Court Confirmation Hearing Regarding the First Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc. and Related Deadlines for Voting and Objections [Dkt. 1715].

## II.	ARGUMENT

### A.	Appointing Mr. Molton to supervise his own firm's work creates a conflict.

The disagreement between the two committees stems not from a lack of qualified candidates but on a difference of opinion concerning the need for a Tort Trustee who is separate and independent from the professionals most likely to be used by the Tort Trustee to litigate claims for contribution and indemnification. Both the PSC and the OCC agree that the professionals most qualified to perform this work, should it become necessary, are those at Brown Rudnick, LLP who have to date been most intimately involved in the negotiation of the settlements and drafting and negotiation of the terms of the Plan and Tort Trust Agreement – including Mr. Molton who is the partner at Brown Rudnick who spearheaded these efforts.

This conflict is not created by the PSC; rather, Mr. Molton's own submission contemplates hiring his own firm. And the PSC understands that Mr. Molton is not willing to forgo hiring his own firm to perform any necessary work. The conflict thus cannot be resolved.

In order to avoid a conflict of interest, and to minimize expense to the Tort Trust (and therefore maximize recovery by victims), the PSC strongly believes that that Tort Trustee must be independent from the professionals he or she hires to perform essential work on behalf of the Trust. By this, the PSC does not call into question the integrity of Mr. Molton or his firm. But in order to ensure that the Tort Trustee is able to independently supervise this work, including ensuring that the work is done efficiently and cost effectively, the candidate chosen as Tort Trustee must be someone other than a partner at Brown Rudnick.

While the PSC appreciates the offer of a member of the OCC to volunteer to review the fees of the Tort Trustee's counsel,[7] respectfully, that is the job of the Tort Trustee. The need for yet another layer of review by another professional to ensure efficiency, or to eliminate the

---

[7] Motion of the OCC to Appoint David J. Molton as Trustee [Dkt. 1791] at p. 12.

conflict created by the Tort Trustee hiring and supervising his own firm's work on behalf of the Tort Trust – solely to provide a workaround that would facilitate appointing Mr. Molton as the Tort Trustee – proves the PSC's very point. The Tort Trustee should be independent of the professionals he or she hires to help effectuate the purposes of the Tort Trust.

**B.     The PSC moves the Court to appoint Lynn F. Riley as Tort Trustee**

Over the last six months, the PSC issued a request for proposals to highly qualified and experienced individuals in the Boston bankruptcy bar. These were identified both through research as well as through recommendations from other experienced bankruptcy counsel, including the Chapter 11 Trustee. When the initial RFP garnered only 2 responses (one of which was Mr. Molton), the PSC reached out to other professionals for proposals, including professionals recommended by the Chapter 11 Trustee, local bankruptcy attorneys, and members of the OCC. As a result of this process, the PSC received three additional proposals from highly qualified candidates who are interested in serving at Tort Trustee. Each of the three agreed that if appointed, he or she would *not* hire his or her own firm to perform work on behalf of the Tort Trust and was open to retaining Brown Rudnick (given appropriate financial terms). Each offered lower rates than $625 an hour.

After carefully considering all options, the PSC unanimously moves this Court to appoint Lynne F. Riley of Casner & Edwards as Tort Trustee.

Lynne F. Riley has been a panel bankruptcy trustee for the past 20 years and has significant experience administering large Chapter 7 business liquidation proceedings as well as serving as trustee in Chapter 11 reorganization cases and creditor trustee under confirmed reorganization plans. Ms. Riley teaches bankruptcy as an adjunct professor at Boston College Law School. She is a fellow of the American College of Bankruptcy. She is a member and has served on the executive board of the National Association of Bankruptcy Trustees for many

years, chairing its amicus committee and serving as the liaison to the National Conference of Bankruptcy Judges.  She has served as co-chair of the Boston Bar association's bankruptcy section.  Ms. Riley's proposal, including a representative list of her appointments as Chapter 11 and Chapter 7 trustee and creditor committee counsel, are attached hereto at Exhibit 1.

Ms. Riley proposes charging a $325 blended hourly rate for her services.  Ms. Riley is more experienced than other potential candidates.  And Ms. Riley is open to hiring Brown Rudnick (if it becomes necessary to hire counsel), provided that a reasonable fee arrangement can be agreed upon.  For these and other reasons, Mr. Riley has the full support of the PSC.[8]

### III.  CONCLUSION

For the reasons set forth above, the PSC herby moves the Court to appoint Lynne F. Riley of Casner & Edwards as Tort Trustee and deny the OCC's motion to appoint David Molton and respectfully requests that the Court appoint a Tort Trustee before the May 19, 2015 Confirmation Hearing.

Dated:  April 28, 2015                                  Respectfully submitted,

**/s/ Thomas M. Sobol**
Thomas M. Sobol
Kristen A. Johnson
HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA  02142
Telephone:  (617) 482-3700
Facsimile:  (617) 482-3003
tom@hbsslaw.com
kristenj@hbsslaw.com

*Plaintiffs' Lead Counsel*

---

[8] The PSC has *not* proposed that one of its own members be considered as a potential Tort Trustee.  The PSC is not interested in some (perceived) power grab.  The PSC does recognize, though, that it may be natural for the Court to want to appoint someone familiar with this litigation and the Plan who is experienced with holding and distributing large sums of money to tort victims.  PSC members have considerable experience overseeing multi-million dollar class action and mass tort settlements.  And all PSC members agree that (i) they will not hire their own law firms and are open to hiring Brown Rudnick (given appropriate financial terms) and (ii) while not strictly required by the Plan, they would apply to this Court for approval of any fees and expenses incurred as Tort Trustee.

10

Elizabeth J. Cabraser
Mark P. Chalos
Annika K. Martin
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
150 Fourth Avenue, North, Suite 1650
Nashville, TN  37219
Telephone:  (615) 313-9000
Facsimile:  (615) 313-9965
ecabraser@lchb.com
mchalos@lchb.com
akmartin@lchb.com

Marc E. Lipton
LIPTON LAW
18930 W. 10 Mile Road
Southfield, MI  48075
Telephone:  (248) 557-1688
Facsimile:  (248) 557-6344
marc@liptonlawcenter.com

Kimberly A. Dougherty
JANET, JENNER & SUGGS, LLC
31 St. James Ave., Suite 365
Boston, MA  02116
Telephone:  (617) 933-1265
kdougherty@myadvocates.com

Patrick T. Fennell
CRANDALL & KATT
366 Elm Avenue, S.W.
Roanoke, VA  24016
Telephone:  (540) 342-2000
pfennel@crandalllaw.com

Mark Zamora
ZAMORA FIRM
6 Concourse Way, 22nd Floor
Atlanta, GA  30328
Telephone:  (404) 451-7781
Facsimile:  (404) 506-9223
mark@markzamora.com

J. Gerard Stranch, IV
Benjamin A. Gastel

11

BRANSETTER, STRANCH & JENNINGS PLLC
227 Second Avenue North
Nashville, TN  37201
Telephone:  (615) 254-8801
Facsimile:  (615) 255-5419
gerards@branstetterlaw.com
beng@branstetterlaw.com

*Plaintiffs' Steering Committee*

**CERTIFICATE OF SERVICE**

I, Thomas M. Sobol, hereby certify that I caused a copy of the above *Plaintiffs' Steering Committee's Cross Motion to Appoint a Tort Trustee and Opposition to the Motion of the Official Committee of Unsecured Creditors to Appoint David J. Molton as Trustee* to be filed electronically via the Court's electronic filing system. Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system, and notice of these filings will be sent to these parties by operation of the Court's electronic filing system.

Dated: April 28, 2015     **/s/ Thomas M. Sobol**
                          Thomas M. Sobol, BBO # 471770