# EXHIBIT E

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| NEW ENGLAND COMPOUNDING ) | |
| PHARMACY, INC., ) | Case No. 12-19882-HJB |
| ) | |
| Debtor. ) | |

### DECLARATION OF PATRICK T. FENNELL IN SUPPORT OF CONFIRMATION OF FIRST AMENDED JOINT CHAPTER 11 PLAN OR NEW ENGLAND COMPOUNDING PHARMACY, INC. AND FOR APPROVAL OF INSIGHT SETTLEMENT

1. I, Patrick T. Fennell, declare under penalty of perjury on the date identified below, as follows:

2. I am an attorney at the law firm Crandall & Katt, in Roanoke, Virginia. I have been practicing personal injury and products liability law for over 18 years, and I am lead counsel in Crandall & Katt's mass tort practice group.

3. I am a member of the Plaintiffs' Steering Committee appointed by the Hon. F. Dennis Saylor, IV, then-presiding Judge in the matter *In re:, New England Compounding Pharmacy, Inc. Products Liability Litigation*, MDL No. 1:13-md-2419, pending in the United States District Court for the District of Massachusetts ("MDL").[1]

4. I also represent 68 individual personal injury and wrongful death claimants in this bankruptcy proceeding.[2] As such, I am one of nine (9) attorneys ("Virginia plaintiffs' counsel") representing all of the 153 represented claimants in the MDL and in this bankruptcy proceeding who have claims against both the debtor and the "Virginia Defendants",[3] arising from the injection into claimants' bodies (or the bodies of their decedents) of contaminated MPA compounded and distributed by the debtor (the "represented Virginia claimants").[4] Among the Virginia claims are eight wrongful death claims.

5. On December 27, 2012, Sharon G. Wingate, Executor of the Estate of Douglas Gray Wingate, deceased, filed her complaint against the Virginia defendants for the wrongful death of her husband, in the Circuit Court for the City of Roanoke, in Roanoke, Virginia (Case No. CL12-2547). Mrs. Wingate alleged, in part, that her husband died from an infection caused

---

[1] MDL Doc. 82.
[2] Sixty-three of whom also have claims against Virginia defendants.
[3] The "Virginia Defendants" are Insight Health Corp. ("Insight"), Image Guided Pain Management, P.C. ("IGPM"), John M. Mathis, M.D. ("Dr. Mathis") and Robert F. O'Brien, M.D. ("Dr. O'Brien").
[4] There are an estimated 64 additional claimants not currently represented by counsel, who may also have claims against the debtor and/or Virginia defendants.

by the injection into his body of contaminated MPA compounded and distributed by the debtor. The injection was performed at a facility owned and operated by Insight in Roanoke, Virginia.

6. *Wingate* was pending in Roanoke City Circuit Court when, in February, 2014, a settlement agreement was reached between the plaintiff and Virginia defendant Insight, pursuant to which Insight agreed to pay $4.5 million to Mr. Wingate's estate.

7. Although the merits of the remaining cases against Insight and Dr.'s Mathis and O'Brien were substantially developed in the *Wingate* case, the settlement of *Wingate* also depleted the insurance coverage available to satisfy the remaining Virginia claims, including an additional seven claims for wrongful death, by the significant amount of $4.5 million...

8. Subsequently, from August, 2014 through February, 2015, Virginia plaintiffs' counsel conducted a prolonged mediation with counsel for the Virginia defendants (the "Virginia mediation").  The Virginia mediation included approximately eight full days of "in-person" mediation sessions with two mediators, and one settlement conference in the MDL Court with the direct involvement of the Hon. Rya W. Zobel, presiding Judge, and the Hon. Jennifer C. Boal, Magistrate Judge.

9. I personally participated in all mediation sessions and the settlement conference, as well as many hours of negotiations by telephone and other means of communication over approximately six months.  Additional participants in the Virginia mediation and negotiations included the Chapter 11 Trustee, Paul D. Moore (alternately in person and/or by counsel),  Lead Counsel in the MDL, representatives of the Plaintiffs' Steering Committee (in addition to me), and representatives of the Official Committee of Unsecured Creditors.

10. While participating in the mediation efforts, I and the other Virginia plaintiffs' counsel concluded that uncoordinated, one-off resolutions of the Virginia cases (as in *Wingate*, for example), would not only create a chaotic rush to the courthouse and further deplete available insurance coverage in a haphazard fashion, but would likely leave many Virginia plaintiffs with no source of recovery from Insight and IGPM.  We further concluded that a global resolution was preferable because it would preserve assets for all litigants, create the opportunity for distribution of assets in an organized and equitable fashion, and allow Insight the opportunity to consider contribution of amounts in excess of the available insurance coverage.

11. In February, 2015 the Virginia mediation resulted in a Settlement and Release Agreement between the represented Virginia claimants and Virginia defendants, pursuant to which the Virginia defendants will pay $40 million for the benefit of the Virginia claimants (the "Insight Settlement Agreement").[5]  The $40 million sum consists, in part, of a contribution by Insight alone of $38.5 million, which is $7 million in excess of its stated available insurance coverage.  On information and belief, each and every of the 153 individual represented Virginia claimants has signed the Insight Settlement Agreement.

---

[5] *See* Doc. 1123, Notice of Filing of Plan Supplement Re: Chapter 11 Plan of Reorganization of New England Compounding Pharmacy, Inc., Exhibit 5.

12. The depletion of insurance coverage available to resolve the remaining Virginia claims, resulting from the *Wingate* settlement, was a significant factor in the decision of Virginia counsel to recommend to their clients a settlement with the Virginia defendants involving payment of a total of $40 million.

13. In my opinion, under the foregoing circumstances, along with other facts and circumstances that I anticipate will be presented to the Court, the Insight Settlement Agreement is a fair, reasonable and equitable outcome for the Virginia claimants. Alternatives to this settlement would necessarily mean piecemeal litigation drawn out over many years, an uncertain outcome, and less (potentially much less) money available to satisfy judgments, for a group of plaintiffs many of whom are elderly and need the money this settlement will provide sooner rather than later. I therefore strongly support confirmation of the First Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc. and approval of the Insight Settlement Agreement.

Executed on this 27th day of April, 2015, in Roanoke, Virginia.

Patrick T. Fennell (VSB 40393)
Crandall & Katt
366 Elm Avenue, S.W.
Roanoke, Virginia 24016
Telephone: 540/342-2000
Facsimile: 540/400-0616
pfennell@crandalllaw.com