# EXHIBIT H

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>NEW ENGLAND COMPOUNDING PHARMACY, INC.,<br><br>      Debtor. | Chapter 11<br><br>Case No. 12-19882-HJB |

### DECLARATION OF MATTHEW K. DOONAN, ESQ. IN SUPPORT OF CONFIRMATION OF FIRST AMENDED JOINT CHAPTER 11 PLAN OF NEW ENGLAND COMPOUNDING PHARMACY, INC.

  I, Matthew K. Doonan, Esq., submit this declaration in support of confirmation of the Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc. [Docket No. 1054] (as amended at Docket No. 1154 and thereafter from time to time, and including all exhibits and supplements thereto, the "Plan"), and respectfully state as follows:

  1.  I am the General Counsel of Inspira Health Network, Inc.

  2.  Inspira Health Network, Inc. is incorporated in the State of New Jersey as a non-profit, non-stock, 501(c)(3) charitable organization. Inspira Medical Centers, Inc. is also incorporated in the State of New Jersey as a non-profit, non-stock, membership, 501(c)(3) charitable organization. Inspira Health Network, Inc. is the sole member of Inspira Medical Centers, Inc. (collectively, "Inspira").

  3.  I am authorized on make this declaration on Inspira's behalf.

  4.  Inspira purchased methylprednisolone acetate ("MPA") produced by New England Compounding Pharmacy, Inc. ("NECC").

5. Inspira is included in the definition of "Other Contributing Parties" in the Plan and accordingly will, if the Plan is confirmed, be the beneficiary of certain releases and injunctions in aid thereof contained in the Plan.

6. It is my understanding that courts in this Circuit, when evaluating third-party releases and injunctions (such as the Plan releases and injunctions in favor of Inspira and others), consider the factors set forth in <u>In re Master Mortgage Invest. Fund, Inc.</u>, 168 B.R. 930 (Bankr. W.D. Mo. 1994), including an identity of interest between the debtor and the third party, whether the non-debtor has contributed substantial assets to the estate, and whether the Plan releases and injunction provided in the Plan are essential the success and viability thereof.

7. Inspira is a defendant in over a dozen lawsuits in the consolidated MDL Proceeding, alleging personal injury, product liability and negligence claims due to the administration of NECC products. Dozens of proofs of claim have been submitted in this Bankruptcy case by persons who were administered NECC MPA at Inspira and have not yet filed a lawsuit against Inspira. As a result, to the extent Inspira is or becomes liable to any patient who received an injection of NECC MPA, Inspira has claims against NECC for, among others, contribution and indemnification. To this end, on January 14, 2014, Inspira filed a proof of claim [Claim No. 2516] against the NECC estate on those grounds. Absent confirmation of the Plan and the effectiveness of the releases and injunctions contained therein in favor of Inspira, Inspira intends to vigorously pursue its claims against the NECC estate.

8. In an effort to resolve Inspira's claims against the NECC estate and the alleged claims of tort claimants against Inspira, Inspira and its insurers participated in two days of mediation and extensive additional negotiations with the Trustee, his counsel, and representatives of both the Official Committee and the Plaintiffs' Steering Committee. The

mediation and additional negotiations were supervised by Eric D. Green of Resolutions LLC. After more than a year of good faith, arm's-length negotiation, Inspira and its insurers Juno Assurance Ltd. ("Juno"), Lexington Insurance Company ("Lexington"), and Ironshore Specialty Insurance Company ("Ironshore") agreed to contribute $16 million to the NECC estate.

9. The Inspira settlement represents the full amount and coverage limit of liability of the remaining aggregate, $3 million self-insured retention policy with Juno, the full amount and coverage limit of liability of $10 million of Inspira's second-tier excess insurance policy with Lexington, and a contribution in excess of $3 million by Inspira's third-tier excess carrier Ironshore.

10. Inspira agreed to participate in mediation in part to avoid the expense and delay of protracted litigation relating to Inspira's alleged liability for the harm caused by NECC's products. That being said, Inspira has strong legal and factual defenses to liability in connection with its alleged role in the outbreak, namely that there is absolutely no evidence that Inspira caused or contributed to the contamination of NECC MPA or knew or could have known that NECC produced contaminated MPA.

11. Given Inspira's strong defenses, it is far from certain that NECC's tort creditors would be able to realize through litigation the significant sum that Inspira has contributed to the NECC estate and certainly would not be able to realize any recovery whatsoever from Inspira without incurring the delay, expense and risks of litigation (including the risk that one significant judgment in favor of a tort claimant would significantly deplete the amounts available to pay any others).

12. Under all of these circumstances, Inspira's contribution is substantial.

13. The Plan releases and injunctions apply to Inspira, Juno, Lexington and Ironshore, and the persons and entities related to them as described in the settlement agreement [Docket No. 1141]. The Plan provides for Inspira and its insurers to receive a global release and an injunction protecting them from any and all claims by any Person related in any way to NECC or the drugs NECC compounded.

13. Inspira would not have settled with the Trustee on terms that did not provide for Inspira and its identified employees, affiliates, and agents to be protected from any and all claims arising from or related to the drugs that NECC compounded, including without limitation (i) claims brought or asserted at present or in the future by the tort claimants, who are to be the principal beneficiaries of Inspira's contributions through the Plan, and (ii) any and all claims for contribution or indemnity. In that same vein, Juno, Lexington and Ironshore would not have agreed to any settlement if there was any risk that any person or entity who was an insured under the applicable insurance policies would seek coverage for any claim related to NECC. Inspira, Juno, Lexington and Ironshore would not have contributed the sums each agreed to contribute without the third party releases and injunction. As such, the third party releases are critical to the settlement.

14. Throughout the mediation process, the mutual understanding among Inspira, Juno, Lexington, Ironshore, the mediator, the Trustee, his counsel, and representatives of both the Official Committee and the Plaintiffs' Steering Committee was that Inspira, Juno, Lexington and Ironshore were only willing to negotiate and enter into a settlement on the condition that any settlement was a final settlement of *all* NECC-related liability - not only that of Inspira, Juno, Lexington and Ironshore, but any potential liability of each of their respective related parties that

4

are identified in the settlement agreement. It was with this understanding that Inspira and its insurers agreed to make its significant contribution to the NECC estate.

15. I understand that Inspira's significant contribution will be an important addition to a fund to be distributed to NECC's creditors, the majority of whom are victims of NECC's contaminated product.

16. For all of the reasons set forth above, I believe that the Plan releases and injunction in favor of Inspira, its insurers, and agents and affiliates of each are not only appropriate but are in the best interests of NECC's creditors and are essential to consummation of the proposed Plan.

17. I, on behalf of Inspira, fully support confirmation of the Plan.

I certify and declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Executed on the 27th day of April 2015.

_____
Matthew K. Doonan, Esq.
General Counsel
Inspira Health Network, Inc.