# EXHIBIT I

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
## EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>NEW ENGLAND COMPOUNDING PHARMACY, INC.,<br><br>             Debtor. | Chapter 11<br><br>Case No. 12-19882-HJB |

### DECLARATION OF HENRI G. MINETTE IN SUPPORT OF
### CONFIRMATION OF FIRST AMENDED JOINT CHAPTER 11 PLAN
### OF NEW ENGLAND COMPOUNDING PHARMACY, INC.

I, Henri G. Minette, Esquire, submit this declaration in support of confirmation of the Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc. [Docket No. 1054] (as amended at Docket No. 1154 and thereafter from time to time, and including all exhibits and supplements thereto, the "Plan"), and respectfully state as follows:

1.      I am General Counsel and Secretary of Insight Health Corp. ("Insight"), and I am authorized to make this declaration on Insight's behalf.

2.      Insight is a company that operates imaging centers nationwide, including a facility located in Roanoke, Virginia. Patients at Insight's Roanoke clinic receive, among other services, image-guided pain therapy. Insight performs the clinic administration and operational support functions at the Roanoke facility.

3.      New England Compounding Pharmacy, Inc. ("NECC") compounded and sold many different drugs, including preservative-free methylprednisolone acetate ("MPA"). The initial decision to purchase MPA for use at the Roanoke clinic was made during previous ownership of the facility Center for Advanced Imaging, which had purchased and used preservative-free MPA from NECC beginning in 2007. In 2008 the practice was sold to

Case 1:13-md-02419-RWZ    Document 1799-9    Filed 04/28/15    Page 3 of 9

Carilion, which in turn sold it to Insight in 2010. In summary, MPA was used at the clinic for more than five years by various owners without incident.

4.    At no time during Insight's ownership of the Roanoke clinic and before the outbreak of fungal meningitis in 2012, did Insight know or have any reason to suspect that NECC was not producing quality drugs in a safe and reliable manner and in accordance with all applicable state and federal laws and regulations.

5.    Insight does not believe that it engaged in any act or omission that contributed to the injuries and deaths of any of its patients who were treated with MPA made by NECC. Nonetheless, Insight made a decision to settle all pending litigation on the terms set forth in the Plan because of a concern that its liability insurance coverage was insufficient to protect the company if it might be found liable in the face of 47 lawsuits filed by a total of 153 former patients. In addition, cross-claims for contribution and indemnity were asserted against Insight, which had contracted to provide management services to the practice, by co-defendants Image Guided Pain Management, Inc. and Drs. John Mathis and Robert O'Brien, who had contracted to provide professional services to patients at the Roanoke clinic.

6.    Insight is included in the definition of "Other Contributing Parties" in the Plan and accordingly will, if the Plan is confirmed, be the beneficiary of certain releases and injunctions in aid thereof contained in the Plan.

7.    I understand that courts in this Circuit, when evaluating third-party releases and injunctions (such as the Plan releases and injunctions in favor of Insight and others), consider the factors set forth in In re Master Mortgage Invest. Fund, Inc., 168 B.R. 930 (Bankr. W.D. Mo. 1994). The Master Mortgage factors relevant to my declaration include: (i) whether there is an identity of interest between the debtor and the third party, usually an indemnity relationship, such

that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete assets of the estate; (ii) whether the non-debtor has contributed substantial assets to the estate; and (iii) whether the Plan releases and injunction provided in the Plan are essential to the success and viability thereof and whether, without them, there is little likelihood of success. I respectfully submit that, with respect to the Plan releases and injunctions in favor of Insight, its affiliates, and its insurers, those factors are satisfied.

**A.    There Is an Identity of Interest Between NECC and Insight.**

8.    Insight is presently a defendant in 47 lawsuits involving 153 plaintiffs, originally filed in state court in Virginia and later consolidated in the MDL Proceeding, alleging personal injury or wrongful death due to the administration of NECC products. Insight also is subject to cross-claims asserted by co-defendants for contribution and indemnity in all of the cases. Further, Insight is aware of the risk of other potential claims by other former patients or their families who are not plaintiffs in the suits filed against Insight and pending in the MDL Proceeding.

9.    To the extent Insight is or becomes liable to any patient who received an injection of NECC MPA, Insight has strong and significant claims against NECC for, *inter alia*, contribution and indemnity. On December 20, 2013, Insight filed a proof of claim (Claim No. 323) (subsequently amended on December 30, 2013 (Claim No. 561), and on January 15, 2014 (Claim No. 2817)) against the NECC estate on those grounds. Absent confirmation of the Plan and the effectiveness of the releases and injunctions contained therein in favor of Insight and its affiliates, Insight intends to pursue its claims against the NECC estate. There is plainly an identity of interest between NECC and Insight.

3

Case 12-19882-mdc Doc 1293 Filed 04/28/15 Page 5 of 9

**B.     Insight Has Contributed Substantial Assets to the Estate.**

10.     In an effort to resolve Insight's claims against the NECC estate and the alleged claims of tort claimants against Insight, management of Insight and its counsel participated in multiple days of mediation and extensive additional negotiations with the Trustee and his counsel, representatives of both the Official Committee and the Plaintiffs' Steering Committee, and counsel for the 153 plaintiffs represented by nine law firms.  The mediation and additional negotiations were supervised by Professor Eric D. Green of Resolutions, LLC, and the Honorable Stanley P. Klein of The McCammon Group.  After six months of good faith, arm's-length negotiation, Insight and its insurers, Lexington Insurance Company ("Lexington") and Darwin Select Insurance Company ("Darwin"), agreed to contribute $38.5 million to the NECC estate.  The total settlement amount includes the policy limits of Insight's insurance coverage based upon the coverage positions of Lexington[1] and Darwin, plus a direct contribution by Insight of seven million dollars.

11.     Insight agreed to participate in mediation in part to avoid the expense and delay of protracted litigation relating to Insight's alleged liability for the harm caused by NECC's products, and insufficient insurance coverage as explained above.  That being said, Insight has strong legal and factual defenses to liability in connection with its alleged role in the outbreak.

a.     Insight did not alter the MPA received from NECC.  The vials of MPA were kept unopened, in the original sealed vials as received from NECC, until immediately prior to being used by the physicians in a procedure.  To the extent that any patient in Insight's Roanoke facility received contaminated MPA, such contamination occurred at NECC's facilities, without any knowledge of any potential contaminant by Insight and its staff or the physicians who administered the injections.

---

[1] Insight has reserved its position on an insurance coverage dispute with Lexington.

4

      b.     Insight had no legal duty to protect any NECC victim from the negligent (and potentially criminal) and unforeseeable actions of NECC.

      c.     Insight has asserted solid defenses to all of the various legal claims and causes of action asserted by the plaintiffs, and believes that if any case were to be tried, that a jury would conclude Insight did not engage in any act or omission that contributed to the injuries and deaths of any of its patients who were treated with MPA made by NECC.

12.     It is by no means certain that NECC's tort creditors would be able to realize through litigation the significant sum contributed by and on behalf of Insight to the NECC estate, and certainly would not be able to realize any recovery whatsoever from Insight without incurring the delay, expense and risks of litigation (including the risk that one significant judgment in favor of a tort claimant would significantly deplete the amounts available to pay any others). Under these circumstances and by any measure, the total settlement contribution to the NECC estate by and on behalf of Insight is "substantial." In fact, the contribution by and on behalf of Insight totals about twenty percent (20%) of the entire NECC estate.

**C.    The Plan Releases and Injunction are Essential to the Success of the Plan.**

13.     The Plan releases and injunction apply to Insight, Lexington and Darwin, and the persons and entities related to them as described in the settlement agreement. Insight, Lexington and Darwin are to receive global releases and an injunction protecting them from any and all claims by anyone that was related in any way to NECC or the drugs it compounded. The global releases and injunction required under the Insight settlement agreement are to be achieved through confirmation of a plan of reorganization in NECC's bankruptcy case.

Case 1:13-md-02419-RWZ   Document 1799-9   Filed 04/28/15   Page 7 of 9

14.     Insight, Lexington and Darwin would not have settled with the Trustee if Insight and its direct and indirect affiliates and their officers, directors, agents and employees were not protected from further third party claims brought by the tort claimants who are to be the principal beneficiaries of their substantial contributions through the Plan, and protected from all contribution, indemnity and other claims.  A settlement that did not include corporate affiliates, officers, directors, agents and employees would leave Insight-related entities and individuals at risk for future suits, because there is a subset of possible claims as to which the statute of limitations has not run.  This would make Insight vulnerable to future claims for indemnity, because the joint tortfeasor settlement statute in Virginia only extinguishes claims for contribution, and not for indemnity. The need to protect affiliates through the plan releases and injection is not a theoretical "belts and suspenders" protection as two of Insight's corporate affiliates, Insight Health Services Corp. and Insight Health Services Holdings Corp., were sued along with Insight by three of the settling Virginia Plaintiffs (*Baker*, *Johnston* and *Wertz*).  Thus, a settlement without protection for affiliates through the plan releases and injunction would mean that at the same time Insight would have exhausted its uncontested insurance coverage of $31.5 million with Lexington and Darwin (which also covers Insight's affiliates), and paid out an additional seven million dollars ($7,000,000) of Insight corporate funds, it and its affiliates would continue to have exposure for future claims.  There is no way that Insight would settle under such circumstances.

15.     Lexington's and Darwin's participation in the settlement was motivated by their interest in ending their very substantial obligations to pay Insight's ongoing defense costs.  The only way to eliminate this obligation was through the inclusion of the plan releases and an injunction as a condition to settlement.  Thus, the third party releases and injunction were critical

to achieving the conditional settlement, which it is important to note is subject to being terminated if the chapter 11 plan is not confirmed with the plan releases and injunction. By the conclusion of the negotiations, Insight, Lexington, Darwin, the mediator, the Trustee and his counsel, representatives of both the Official Committee and the Plaintiffs' Steering Committee, and the 153 plaintiffs, all understood that Insight, Lexington and Darwin were only willing to negotiate and enter into a settlement on the condition that any settlement was a final settlement of *all* NECC-related liability - not only that of Insight, Lexington and Darwin, but any potential liability of related parties, including Insight's direct and indirect affiliates and their present and former officers, directors, agents and employees. It was with this understanding that Insight, Lexington and Darwin agreed to make their significant contribution to the NECC estate.

16.     I understand that significant contributions by and on behalf of Insight will be an important addition to a fund to be distributed to NECC's creditors, and that absent Insight's contribution, and those of other parties, NECC's estate would have limited, if any, assets available for distributions. Moreover, as described above, in light of Insight's strong defenses to liability, it is by no means certain that NECC's tort creditors would be able to recover any amounts whatsoever from Insight if the Plan were not confirmed and the releases and injunction contained therein were not made effective. And under that scenario, each judgment awarded to an NECC tort creditor would reduce the amount available to pay to other tort creditors, as each claim paid under Insight's insurance policy would reduce the amount available to satisfy other claims.

17.     For these reasons, I believe that the Plan releases and injunction in favor of Insight, its insurers, and agents and affiliates of each are not only appropriate but are in the best interests of NECC's creditors and are essential to consummation of the proposed Plan.

18.     In conclusion, I, on behalf of Insight, respectfully submit that (i) under the circumstances, the relevant Master Mortgage factors are satisfied, (ii) that the Plan releases and injunction are in the best interest of the NECC estate and its creditors, and (iii) that the settlement, as embodied in the Plan, best provides for the equitable distribution of the substantial contribution by and on behalf of Insight to NECC's creditors.  I, on behalf of Insight, fully support confirmation of the Plan.

I certify and declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Executed on the **23rd** day of April 2015.

Henri G. Minette, Esquire
General Counsel
Insight Health Corp.

66324754_6