# EXHIBIT K

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>NEW ENGLAND COMPOUNDING PHARMACY, INC.,<br><br>               Debtor. | Chapter 11<br><br>Case No. 12-19882-HJB |

## DECLARATION OF MARK G. LEDWIN ON BEHALF OF PREFERRED MUTUAL INSURANCE COMPANY IN SUPPORT OF CONFIRMATION OF FIRST AMENDED JOINT CHAPTER 11 PLAN OF NEW ENGLAND COMPOUNDING PHARMACY, INC.

I, Mark G. Ledwin, Esq., submit this declaration in support of confirmation of the Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc. [Docket No. 1054] (as amended at Docket No. 1154, and including the exhibits and supplements thereto, the "Plan"), and respectfully state as follows:

1. I am a member of the law firm of Wilson Elser Moskowitz Edelman & Dicker LLP, and I act as the lead attorney for Preferred Mutual Insurance Company ("Preferred Mutual") in the above-captioned bankruptcy case. I have personal knowledge of the facts set forth in this declaration based upon my review of the documents and pleadings pertinent to this matter. I am authorized to make this declaration on behalf of Preferred Mutual.

2. New England Compounding Pharmacy, Inc. ("NECC"), the debtor in the above-captioned case, apparently compounded and sold many different drugs. NECC's business operations were conducted at a building in Framingham, Massachusetts, that was leased to it by GDC Properties Management, LLC ("GDC"). The primary owners of GDC also have an ownership stake in NECC.

5491685v.1

3. The lease agreement between GDC and NECC includes an express indemnification provision in favor of GDC.

4. Preferred Mutual issued two (2) commercial general liability insurance policies to GDC for the policy periods of 09/27/2011 to 09/27/2012 and 09/27/2012 to 09/27/2013.

5. GDC has been named in 215 lawsuits for its alleged contributory conduct in the events that gave rise to the numerous personal injury or wrongful death claims against NECC. All of these lawsuits are pending in the United States District Court for the District of Massachusetts, including those consolidated in the MDL Proceeding for NECC.

6. GDC has denied all liability for such claims and Preferred Mutual has reserved all of its rights to deny coverage for those claims under the GDC insurance policies.

7. To the extent that GDC is required to defend and litigate the multiple claims asserted against it in the MDL Proceeding or otherwise, GDC would have a claim over against NECC based upon the contractual indemnification provisions of the lease, as well as under various common law and equitable theories of contribution and indemnification.

8. To the extent that Preferred Mutual is required to defend or indemnify GDC for the numerous NECC claims under the GDC insurance policies, Preferred Mutual would be subrogated to GDC's rights and claims against NECC. Moreover, Preferred Mutual would be entitled to raise various coverage defenses under the GDC insurance policies for any claims tendered to it by GDC.

9. In an effort to resolve GDC's indemnification claims against the NECC estate and Preferred Mutual's coverage defenses and subrogation claims, as well as the alleged claims of tort claimants against NECC and GDC, the NECC Trustee, Preferred Mutual, GDC and the individual GDC insureds (with the support of the Creditors' Committee in these proceedings and

5491685v.1

the Plaintiffs' Steering Committee in the MDL Proceeding) entered into a settlement agreement (the "Preferred Mutual/GDC Settlement Agreement") which was approved by this Court after notice and a hearing. *See* ECF Docket No. 714 (Chapter 11 Trustee's Motion to Approve Compromise of Controversies and Insurance Settlement and Release Agreement with Preferred Mutual Insurance Company, GDC Properties Management LLC, and Certain of Its Insiders); and ECF Docket No. 971 (Order Granting Same).

10. Pursuant to the Preferred Mutual/GDC Settlement Agreement, Preferred Mutual will contribute $3,750,000.00 to the NECC estate for the payment of tort and other claims. In fact, these settlement funds were wired to the NECC Trustee's escrow account shortly after this Court's entry of the settlement approval order. However, as more fully set forth in the Preferred Mutual/GDC Settlement Agreement, the release of these funds from escrow is expressly conditioned upon and subject to, among other things, the confirmation of the Plan which includes a release and injunction of all NECC related claims against GDC, Preferred Mutual and the individual GDC insureds. If confirmation of the Plan fails, then Preferred Mutual is entitled to have the settlement funds paid back to it by the NECC Trustee.

11. Preferred Mutual is included in the definition of "Other Contributing Parties" in the Plan and accordingly will, if the Plan is confirmed, be the beneficiary of certain releases and injunctions in aid thereof contained in the Plan. GDC and the various individual insured persons under the insurance policies issued by Preferred Mutual to GDC are also beneficiaries of the Plan's injunction and release provisions. As noted, without the benefit of the Plan release and injunction protections, Preferred Mutual's settlement with the NECC Trustee will fail since these provisions are a material and non-waiveable condition to the Preferred Mutual/GDC Settlement Agreement.

-3-

5491685v.1

12. Indeed, throughout the negotiation of the Preferred Mutual/GDC Settlement Agreement, all participating parties and their respective counsel were well aware of the need for complete and final relief in favor of Preferred Mutual, GDC and the individual GDC insureds. Absent such relief, there would have been no settlement.

13. I understand that Preferred Mutual's settlement contribution will be an important addition to a fund to be distributed to NECC's creditors, and that absent Preferred Mutual's contribution and those of other settling parties, NECC's estate would have limited, if any, assets available for distribution to creditors.

14. Moreover, if the Plan is not confirmed, it is by no means certain that NECC's tort creditors would be able to obtain any judgments whatsoever against GDC or that Preferred Mutual's insurance policies would provide coverage for those claims. And even if judgments could be obtained against GDC, each judgment awarded to an NECC tort creditor would reduce the amount available to pay other tort creditors, as each claim paid under Preferred Mutual's insurance policies on behalf of GDC would reduce the policy limits available to satisfy other claims.

15. For these reasons, I believe that the Plan releases and injunction in favor of GDC, the individual GDC insureds and Preferred Mutual as their insurer are appropriate, in the best interests of NECC's creditors and essential to consummation of the proposed Plan.

///

///

///

///

///

5491685v.1

I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct to the best of my knowledge and belief.

Executed on the 28th day of April 2015.

_____
Mark G. Ledwin, Esq.
As Attorney for Preferred Mutual Insurance Co.
Wilson Elser Moskowitz Edelman & Dicker LLP
1133 Westchester Avenue
White Plains, NY 10604
Tel:  914-872-7148
Email:  mark.ledwin@wilsonelser.com