UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC., PRODUCTS LIABILITY LITIGATION | MDL No. 2419<br>Docket No. 1:13-md-2419-RWZ |
| THIS DOCUMENT RELATES TO:<br><br>All Actions | |

**BARRY J. CADDEN, LISA CONIGLIARO-CADDEN,
GREGORY CONIGLIARO, CARLA CONIGLIARO, DOUGLAS CONIGLIARO AND
GLENN A. CHIN'S MOTION FOR A PROTECTIVE ORDER AND MOTION TO
<u>QUASH DEPOSITION NOTICES TO THE INVOKING DEFENDANTS</u>**

### i.  <u>Introduction</u>

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, Barry J. Cadden, Lisa Conigliaro-Cadden, Gregory Conigliaro, Carla Conigliaro, Douglas Conigliaro and Glenn A. Chin (collectively, the "Invoking Defendants" or "Invoking Parties") hereby move for entry of an Order quashing the deposition notices served on the Invoking Defendants and forbidding Saint Thomas Entities, Tennessee Clinic Defendants and Premier Defendants from taking the depositions of the Invoking Parties.

All but one of the Invoking Parties are defendants in a parallel criminal proceeding, currently prosecuted by the Department of Justice.  In the MDL, the Premier Defendants have noticed the depositions of Barry J. Cadden and Glenn A. Chin, and the Tennessee Clinic

1

Defendants have noticed the depositions of Lisa Conigliaro-Cadden,[1] Gregory Conigliaro, Carla Conigliaro and Douglas Conigliaro, all on dates in May 2015.

Each of the Invoking Defendants has already responded to requests for admissions, interrogatories, and document requests served by the Saint Thomas Entities and Tennessee Clinic Defendants by invoking their Fifth Amendment privilege against self-incrimination in response to each substantive question, and the parties now seeking to take their depositions already possess the Invoking Defendants' responses.

On April 28, 2014, counsel for the Invoking Defendants satisfied their obligations to meet-and-confer with counsel for the Saint Thomas Entities, Tennessee Clinic Defendants and Premier Defendants by participating in a phone call. During that phone call, counsel for the Invoking Defendants informed counsel for the Saint Thomas Entities, Tennessee Clinic Defendants and Premier Defendants that in response to any substantive question (other than one's name and address), the Invoking Defendants would decline to answer and invoke their Fifth Amendment privilege. Counsel for the Invoking Defendants also proposed that, in lieu of depositions upon oral examination, the Saint Thomas Entities, Tennessee Clinic Defendants and Premier Defendants could submit their questions in writing, pursuant to Fed. R. Civ. P. 31 (Deposition by Written Questions), and the Invoking Defendants would respond in writing, by invoking their Fifth Amendment privilege on a question-by-question basis. Counsel for the Invoking Defendants suggested that this would provide those parties with a basis to argue in favor of an adverse inference instruction at trial, presumably in support of their comparative fault

---

[1] Lisa Conigliaro-Cadden is not under indictment, but her proposed deposition raises same concerns as others in this motion and therefore, joins. The Supreme Court has stated that "[i]t is not necessary that a person be guilty of criminal misconduct to invoke the privilege" or even indicted.  See Baxter v. Palmigiano, 425 U.S. 308, 327 (1976).

defense.  Counsel for the Saint Thomas Entities, Tennessee Clinic Defendants and Premier Defendants rejected this offer and refused to make a counterproposal.

During the meet-and-confer phone call, counsel for Saint Thomas Entities, Tennessee Clinic Defendants and Premier Defendants also made it clear that they wanted to film the depositions of the Invoking Defendants in order to capture the individuals invoking the Fifth Amendment privilege to all of their deposition questions.  These parties appear to believe that they have the right to film the Invoking Defendants repeatedly invoking the privilege, so that they can show the film to the jurors during the trial.  This position is completely unreasonable and contrary to the law.

As articulated more fully below, the First Circuit has concluded that a defendant does not have a "right to bring [a codefendant] before the jury solely to have him claim the Fifth Amendment."  See United States v. Johnson, 488 F.2d 1206, 1211 (1st Cir. 1973).  Moreover, "[i]f it appears that a witness intends to claim the privilege as to essentially all questions, the court may, in its discretion, refuse to allow him to take the stand."  Id.  Given that the Invoking Defendants have already invoked the Fifth Amendment privilege in their responses to the written discovery requests, and that the parties seeking to take these depositions have also been informed that the Invoking Defendants will invoke the privilege in response to all questions posed during their depositions, other than name and address, it is wholly unnecessary and essentially a form of harassment  to require the Invoking Defendants to appear for a deposition, solely to have them invoke their constitutional rights on film.

Convening and holding these wholly unnecessary depositions—and reconvening them, as is the stated goal of the clinics so they can litigate the privilege's application question-by-question—goes against the spirit and mission of this MDL, which has been to maximize

3

recovery in as efficient a manner as possible.  See MDL Order No. 10, Deposition Protocol at p. 7 (limiting depositions to seven hours); p. 8 (stating goal as to "prevent the unnecessary expenditure of judicial resources of parties…."). In order to protect the Invoking Defendants from this harassment and oppressive burden that would be caused by requiring them to participate in such a wasteful exercise that will prejudice the Invoking Defendants in their criminal cases or otherwise create criminal exposure, the Invoking Defendants request that the Court enter an Order quashing the current deposition notices and forbidding depositions of the Invoking Defendants.

### ii. Background

On July 31, 2014, the Bankruptcy Court preliminarily approved a settlement agreement that was the product of complex and lengthy negotiations, between numerous parties-all of which was spearheaded by the Trustee in Bankruptcy of New England Compounding Pharmacy, Inc. d/b/a New England Compounding Center ("NECC").  Under the settlement agreement pending in the Bankruptcy Court, any and all claims against the Invoking Defendants shall be extinguished through a "channeling" injunction.

On August 14, 2014, the Trustee filed a motion "Limiting Discovery and Staying These Proceedings With Respect to NECC Insiders and Related Settling Parties." (Documents 1342 and 1342).[2]  On October 9, 2014, this Court allowed the Trustee's motion and stated:

> ORDERED that notwithstanding the stay of these MDL proceedings with respect to the settling parties, discovery shall be permitted against the Estate Parties (as defined in the Insiders Settlement Agreement) and the Insider Settling Parties but only to the extent the

---

[2] In the accompanying memorandum in support of that motion, the Trustee noted that the "Settlements stand to bring approximately $100 million of assets and cash into the NECC estate…." (Document 1343 at p.7).  This amount has increased significantly and is now projected to be approximately $200 million.  In his memorandum, the Trustee also noted that Barry J. Cadden, Lisa Conigliaro-Cadden, Gregory Conigliaro, and Carla Conigliaro had contributed a total of "$47.75 million in cash to the NECC estate…." (Document 1343 at p.5).

4

discovery is relevant to the prosecution, or defense, of claims against defendants other than the Estate Parties or the Insider Settling Parties; and it is further

ORDERED that nothing in the Insider Settlement Agreement, the Motion, or this Order shall prevent or prohibit a party from objecting to a discovery request based on any grounds ordinarily available under the Federal Rules of Civil Procedure, and all parties' rights in that respect are expressly reserved …. (Document 1482).

At present, the Premier Defendants have noticed the depositions of Barry Cadden (5/15/15) and Glenn Chin (5/22/15) and the Tennessee Defendants have noticed the depositions of Carla Conigliaro (5/21/15), Douglas Conigliaro (5/21/15) and Gregory Conigliaro (5/22/15).

### iii. Standard of Review

Under Rule 26(c)(1) of the Federal Rules of Civil Procedure, "the [C]ourt may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]"  See Fed. R. Civ. P. 26(c)(1).  Rule 26(c)(1) states that, among other things, the Court may issue a protective order "forbidding the disclosure or discovery; specifying terms, including time and place, for the disclosure or discovery; prescribing a discovery method other than the one selected by the party seeking discovery; [and] forbidding inquiry into certain matters[.]"  See Fed. R. Civ. P. 26(c)(1).

Although the Saint Thomas Entities, Tennessee Clinic Defendants, and Premier Defendants apparently believe that they have an absolute right to conduct videotaped depositions of the Invoking Defendants, Rule 30(d)(3)(B) of the Federal Rules of Civil Procedure "expressly contemplates that the Court may order otherwise."  See Posr v. Roadarmel, 466 F. Supp. 2d 527, 531 (S.D.N.Y. 2006).[3]  See also Fed. R. Civ. P. 30(d)(3)(B) ("[t]he court may order that the deposition be terminated or may limit its scope and manner as provided in Rule 26(c)").

---

[3] See DeLuca v. Gateways Inn, Inc., 166 F.R.D. 266, 267(D. Mass. 1996) (protective order allowed to prevent embarrassment or intimidation of plaintiff at deposition of non-party witness). See also Digital Equipment Corp. v. System Industries, Inc., 108 F.R.D. 742, 744 (D. Mass.

5

iv. **Argument**

I. **THE COURT SHOULD ENTER AN ORDER QUASHING THE DEPOSITION NOTICES TO THE INVOKING DEFENDANTS AND PROHIBITING THEIR DEPOSITIONS.**

Courts have traditionally recognized that "the likelihood that a defendant may make incriminating statements is greatest after an indictment has issued[.]"  See Trustees of Plumbers and Pipefitters National Pension Fund v. Transworld Mechanical, Inc., 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995).  During the post-indictment time period, "the risk to [the defendant's] liberty, the importance of safeguarding his constitutional rights, and even the strain on his resources and attention that makes defending satellite civil litigation particularly difficult, all weigh in favor of his interest."  See Sterling National Bank v. A-1 Hotels Intern., Inc., 175 F. Supp. 2d 573, 577 (S.D.N.Y. 2001).  After an indictment has issued, a defendant's situation becomes "particularly dangerous" and "takes a certain priority[.]"  Id.

The Supreme Court has indicated that when there are parallel civil and criminal proceedings, and the substance of the two matters overlap, there is a "real and appreciable" risk of self-incrimination, and a defendant in these circumstances would be highly unlikely to provide testimonial discovery in the civil litigation without incriminating himself.  See United States v. Kordel, 397 U.S. 1, 8-9 (1970).

In balancing a person's right to invoke the Fifth Amendment privilege against self-incrimination with the interests of other individuals, the Supreme Court has stated that "[t]he immediate and potential evils of compulsory self-disclosure transcend any difficulties that the exercise of the privilege may impose on society in the detection and prosecution of crime."  See

---

1986) (protective order granted to stay deposition of Kenneth Olsen on grounds of harassment, where the requesting party had made it clear he wanted to "waste" his time).

Hoffman v. United States, 341 U.S. 479, 490 (1951).  "[A]ny other conclusion would seriously compromise an important constitutional liberty."  Id. at 489-490.

The Fifth Amendment provides, in part, that "[n]o person ... shall be compelled in any criminal case to be a witness against himself."  See U.S. Const. amend. V.  The privilege "applies to evidence which may directly support a criminal conviction, information which would furnish a link in the chain of evidence that could lead to a prosecution, and evidence which an individual reasonably believes could be used against him in a criminal prosecution."  See Maness v. Meyers, 419 U.S. 449, 461 (1975) (citing Hoffman, 341 U.S. at 485–486).  The privilege can be invoked as long as "the witness has reasonable cause to apprehend danger from a direct answer."  Id. at 486.  The Supreme Court has stated that "[i]t is not necessary that a person be guilty of criminal misconduct to invoke the privilege" or even indicted.  See Baxter v. Palmigiano, 425 U.S. 308, 327 (1976).  Thus, "the privilege also protects the innocent person who otherwise might be ensnared by ambiguous circumstances."  Id.

In Hoffman v. United States, the Supreme Court stated that the Fifth Amendment's provision against self-incrimination "must be accorded liberal construction in favor of the right it was intended to secure."  341 U.S. at 486-487.  "To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result."  Id.  The Fifth Amendment privilege should be upheld unless it is "perfectly clear" that the witness is mistaken as to the possibility that his testimony would be self-incriminating or would furnish a link in the chain of evidence that could lead to prosecution.  See Malloy v. Hogan, 378 U.S. 1, 12 (1964) (citing Hoffman, 341 U.S. at 499–490).  See also United States v. Johnson, 488 F.2d at 1209.

7

Here, the Invoking Defendants are not seeking to modify the existing limited stay that was entered by this Court. Rather, they seek protection from overreaching parties who insist on filming their invocation of their Fifth Amendment privileges, simply to obtain an adverse inference in a manner which maximizes the Invoking Defendants' embarrassment and oppression. This is particularly unreasonable in light of the fact that these same parties already have (1) the Invoking Defendants' written discovery responses asserting such invocations, thus supplying them with a basis to argue in favor of an adverse inference instruction at trial in support of their comparative fault defense, and (2) Invoking Defendants' agreement to provide supplemental responses (invocations) in writing in response to any follow up questions. Conversely, given the overlap in the civil and criminal proceedings, it is entirely reasonable that the Invoking Defendants will invoke as to each and every substantive question.

In fact, given that the requesting parties have already received written discovery responses which invoke Fifth Amendment rights as to each and every question asked, the only thing these parties could possibly obtain by filming the Invoking Defendants is a slightly more persuasive presentation of the evidence from which they will presumably argue for an adverse inference instruction. In other words, the Saint Thomas Entities, Tennessee Clinics, and Premier Defendants already have their evidence to attempt to obtain the benefit of any adverse inference they may be entitled to from the Invoking Defendants, through their written responses.

An Order protecting the Invoking Defendants is necessary in part because the Saint Thomas Entities, Tennessee Clinic Defendants and Premier Defendants all were perfectly clear during the meet-and confer telephone call that they will not agree to any other alternative to taking the videotaped depositions of the Invoking Defendants, by rejecting out of hand, without making any counteroffer in response to the Invoking Defendants' counsels' suggestion that these

depositions be conducted by written questions pursuant to Fed. R. Civ. P. 31 so that the Invoking Defendants could respond in writing by invoking their Fifth Amendment privilege to each substantive question.

Frankly, the rigid position of these parties as to this issue causes one to question whether their true motive here is to subject the Invoking Defendants to harassment, embarrassment and oppression — gratuitously and without regard for the fact that proceeding as the requesting parties suggest would clearly be a colossal waste of time, money and resources.  The risk is particularly great for Invoking Defendants because the civil trials at which these depositions would be used will, based on current scheduling, *precede the Invoking Defendants' criminal trials*.  The prejudice to such a public display is obvious and is unnecessary.

As previously discussed, the requesting parties apparently are under the mistaken belief that they have an absolute right to obtain transcripts or video footage of the Invoking Defendants exercising their Fifth Amendment rights solely for the purpose of attempting to show that footage at trial.  However, that belief is contrary to the law in this Circuit.  As the First Circuit explained, a defendant does not have any "right to bring [a codefendant] before the jury solely to have him claim the Fifth Amendment."  See United States v. Johnson, 488 F.2d at 1211.  As a practical matter, "[i]f it appears that a witness intends to claim the privilege as to essentially all questions, the court may, in its discretion, refuse to allow him to take the stand."  Id.  In short, the Invoking Defendants' Fifth Amendment rights must take precedence over any interest that these parties might possibly have in obtaining a transcript or video of the Invoking Defendants invoking the privilege with the hope that they might be able to use it at trial.

**Conclusion**

In balancing the interests of the parties, the interests of the Invoking Defendants far outweigh the interests of the parties seeking to take these depositions. Accordingly, the current deposition notices issued to the Invoking Defendants should be quashed and an order should enter protecting the Invoking Defendants from the embarrassment, oppression, and undue burden of appearing for depositions when they have already invoked their Fifth Amendment privilege in writing and have indicated they will do the same to any substantive question posed at a deposition.

As such, Defendants Barry J. Cadden, Lisa Conigliaro Cadden, Gregory Conigliaro, Carla Conigliaro, Douglas Conigliaro and Glenn A. Chin respectfully request that the Court quash the deposition notice to each Invoking Defendant and forbid the taking of their depositions by the Saint Thomas Entities, Tennessee Clinic Defendants, Premier Defendants in this matter.

(Signatures next page)

Respectfully submitted,

| | |
|---|---|
| /s/ Robert H. Gaynor | /s/ Michelle R. Peirce |
| William J. Dailey, Jr. (BBO# 112200) | Bruce A. Singal (BBO# 464420) |
| Robert H. Gaynor (BBO# 187620) | Michelle R. Peirce (BBO# 557316) |
| Sloane & Walsh, LLP | Callan G. Stein (BBO# 670569) |
| 3 Center Plaza, 8th Floor | Donoghue, Barrett & Singal, PC |
| Boston, MA 02108 | One Beacon Street, Suite 1320 |
| (617) 523-6010 | Boston, MA 02108 |
| wdaileyjr@sloanewalsh.com | (617) 720-5090 |
| rgaynor@sloanewalsh.com | bsingal@dbslawfirm.com |
| | mpeirce@dbslawfirm.com |
| | cstein@dbslawfirm.com |

*Counsel for Individual Defendants Barry J. Cadden, Lisa Conigliaro-Cadden, Carla Conigliaro, Douglas Conigliaro, Gregory Conigliaro, and Glenn A. Chin*

*Counsel for Defendants Barry J. Cadden and Lisa Conigliaro-Cadden*

| | |
|---|---|
| /s/ Dan Rabinovitz | /s/ Christopher R. O'Hara |
| Dan Rabinovitz (BBO# 558419) | David E. Meier (BBO# 341710) |
| Michaels, Ward & Rabinovitz, LLP | Christopher R. O'Hara (BBO# 548611) |
| One Beacon Street | Corrina L. Hale (BBO# 670916) |
| Boston, MA 02108 | Todd & Weld LLP |
| (617) 350-4040 | One Federal Street, 27th Floor |
| dmr@michaelsward.com | Boston, MA 02110 |
| | (617) 720-2626 |
| | dmeier@toddweld.com |
| | cohara@toddweld.com |
| | chale@toddweld.com |

*Counsel for Defendant Gregory Conigliaro*

*Counsel for Defendants Carla Conigliaro and Douglas Conigliaro*

Dated: May 4, 2015

# CERTIFICATE OF SERVICE

I, Robert H. Gaynor, hereby certify that this document has been filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

Date: May 4, 2015                                                                 /s/ Robert H. Gaynor