# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **IN RE:  NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION** | )<br>)<br>)<br>)  **MDL No. 1:13-md-2419-RWZ**<br>) |
| **This Document Relates to:** | )<br>) |
| **All actions pending against Box Hill Surgery Center, LLC, and its affiliates including:** | )<br>)<br>)<br>) |
| **1:14-cv-14022-RWZ Armetta, et al v. Box Hill Surgical Center, LLC, et al.** | )<br>) |
| **1:14-cv-14028-RWZ Bowman, et al v. Box Hill Surgical Center, LLC, et al.** | )<br>) |
| **1:14-cv-14033-RWZ Davis, et al v. Box Hill Surgical Center, LLC, et al.** | )<br>) |
| **1:14-cv-14029-RWZ Dreisch, et al v. Box Hill Surgical Center, LLC, et al.** | )<br>) |
| **1:14-cv-14036-RWZ Farthing, et al v. Box Hill Surgical Center, LLC, et al.** | )<br>) |
| **1:14-cv-14026-RWZ Kashi, et al v. Box Hill Surgical Center, LLC, et al.** | )<br>) |
| **1:14-cv-14023-RWZ Torbeck, et al v. Box Hill Surgical Center, LLC, et al.** | )<br>) |
| **1:14-cv-14019-RWZ Handy, et al v. Box Hill Surgical Center, LLC, et al.** | ) |

## PLAINTIFFS' STEERING COMMITTEE'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO BOX HILL SURGICAL CENTER, LLC

The Plaintiffs' Steering Committee, pursuant to Federal Rules of Civil Procedure 26 & 34, respectfully propounds these requests for production of documents to Box Hill Surgical Center, LLC, to be answered within the time prescribed by law.

## DEFINITIONS AND INSTRUCTIONS

If suit has been commenced regarding a patient, any responsive documents should not be redacted as to such patient's identity or information.

As used herein, the following terms mean:

1. "Document(s)" is defined to be synonymous in meaning and equal in scope to the usage of this term in Fed.R.Civ.P. 34(a). A draft or non-identical copy is a separate document within the meaning of this term. The term DOCUMENT shall mean any designated documents and electronically stored information ("ESI") including writings, drawings, graphs, charts, photographs, sound recordings, images media from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonable usable form, or any designated tangible things. DOCUMENTS shall include, without limitation, email, instant-messages, text messages, correspondence, memoranda, notes, records, committee minutes, notes or minutes of meetings or other communications of any type, including inter and intra-office communications, optical media, including without limitation CD-ROM, CD-R, CD-RW and DVD disks, electronic mail and any preliminary versions, drafts or revisions of any of the foregoing. This definition includes copies of duplicates of DOCUMENTS contemporaneously or subsequently created which have any non-conforming notes or other markings.

2. "Communication(s)" shall mean and include every manner or means of disclosure, transfer, or exchange, and every disclosure, transfer or exchange of information, whether orally, electronically or by DOCUMENTS, or whether face-to-face, by telephone, mail, e-mail, text messaging, voice messaging, instant messaging, facsimile, personal delivery overnight delivery or otherwise.

3. The terms "CONCERNING," "REGARDING," and "RELATED TO" shall mean referring to, relating to, describing, regarding, evidencing, or constituting. Requests for DOCUMENTS "CONCERNING," "REGARDING," and "RELATED TO" any subject

matter include DOCUMENTS CONCERNING COMMUNICATIONS regarding that subject matter.

4. The term "ESI" means electronically stored information and includes all information or document(s) stored in any electronic media or format, and expressly includes electronic mail and messaging of any nature or description. Types of ESI include: email, instant messages, text messages, and attachments to all of the foregoing, VOIP, word processing documents, spreadsheets, graphics and presentation documents, images, text files, web pages, databases, transaction logs, audio and video files, voicemail, internet data, computer logs, text messages, or backup materials, native files and META-DATA.

5. The term "NATIVE FILE" means ESI in the electronic format of the application in which such ESI is normally created, viewed and/or modified. NATIVE FILES are a subset of ESI.

6. The term "META-DATA" means: (a) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; and (b) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted or otherwise manipulated by a user of such system. META-DATA is a subset of ESI.

7. "NECC" means New England Compounding Pharmacy, Inc. d/b/a New England Compounding Center.

8. "MPA" means methylprednisolone acetate.

9. The term "drug(s)" means any product prescribed by a physician.

10. "Box Hill" shall include Box Hill Surgery Center, LLC, Ritu T. Bhambhani, M.D., and Ritu T. Bhambhani, M.D., LLC.

11. The use of the singular herein shall be deemed to include the plural and vice versa: and the use of one gender shall include the other, as appropriate in the context.

12. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses

that might otherwise be construed to be outside of its scope.

13. Unless otherwise indicated, the relevant time period (the "RELEVANT PERIOD") with respect to the DOCUMENTS requested is January 1, 2000 to date.

14. If any document responsive to these requests is withheld under a claim of privilege or upon any other ground, as to each such document, identify the privilege or other basis for withholding such document in a privilege log, and provide the following information in sufficient detail to permit the Court to rule on such claim:

    a.    The date, authors, addressees, recipients and persons copied, including the relationship of those persons to the client or other author of the document;

    b.    A brief description sufficient to identify the type, subject matter and purpose of the document, including the subject line in E-mail communications

    c.    All persons to whom its contents have been disclosed;

    d.    A brief description of the basis of the asserted privilege; and

    e.    The person or entity who is asserting the privilege.

15. If a portion of any document responsive to this request is withheld under claim of privilege or any other basis, any non-privileged portion of such document must be produced with the portion claimed to be privileged identified as having been redacted and described in the privilege log as delineated in No. 14 above.

16. This request seeks DOCUMENTS that are available to each responding party, not merely such DOCUMENTS as are in the responding party's physical custody and/or control, including DOCUMENTS in the possession of the responding party's attorneys, accountants, or other persons directly or indirectly employed by, or connected with such attorneys or accountants, or anyone acting on behalf of or otherwise subject to the control of the responding party. All ESI is to be produced in its Native Format including all Meta-Data. Static Images are to be produced only in the event the Native Format is no longer available.

17. Please provide within each numerated response to the below requests, the Bates number ranges for all responsive DOCUMENTS.

<u>FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND THINGS</u>

Please produce a clear, legible copy of the following:

1. All documents and communications regarding the procurement, administration and/or use of injectable steroids at Box Hill.

2. All documents and communications between Box Hill and New England Compounding Pharmacy, Inc. d/b/a New England Compounding Center ("NECC"). This request includes, but is not limited to, all contracts, agreements, e-mails, marketing and advertising materials, incentives, promotions, prescriptions, purchase orders, prescription order forms, labels, invoices, logs, messages, notes, letters, correspondence, complaints, adverse event reports, and other documents or electronic data evidencing any such communication.

3. All documents and communications, including, but not limited to, emails, brochures, marketing and advertising materials, correspondence, prescriptions, prescription order forms, labels, order forms, invoices, logs, messages, notes, letters, memoranda, complaints, adverse event reports and other documents or electronic data exchanged between anyone associated with Box Hill and any pharmaceutical sales representative, pharmaceutical account representative, pharmaceutical wholesaler, pharmaceutical distributor, pharmaceutical supplier, pharmaceutical seller, pharmaceutical reseller, or compounding pharmacy regarding the purchase or potential purchase of any type of injectable steroid.

4. All documents and communications related to any formulary or list of approved drugs available for use, or for the administration to patients at Box Hill.

5. All documents and communications containing Box Hill policies, procedures, guidelines, memoranda, articles and other material from 2005 to date, related to the following topics:

a. drugs or pharmaceutical preparations used or administered at Box Hill;

b. the selection, evaluation and investigation of drug or pharmaceutical preparation suppliers at Box Hill;

c. outsourcing sterile drug compounding services;

d. the drug and medication selection and prescribing process, including, but not limited to, FDA approved drugs and/or compounded drugs or pharmaceutical preparations;

e. the selection process, prescribing and administration of drugs and medications, including, preservative free drugs, including MPA;

f. administration and injection of drugs and medications, including, but not limited to FDA approved and compounded drugs;

g. epidural injections;

h. informed consent when administering medication to Box Hill patients;

i. identification of drugs or therapeutic agents in patient reports, charts, or records;

j. purchase and billing for drugs and medications used and/or administered at  Box Hill;

k. the storage, transfer, and utilization, of drugs and medications used and/or administered at Box Hill;

l. the inventory management and charting of drugs and medications used and/or administered at Box Hill;

m. recalled products administered at Box Hill; and

n. maintaining Box Hill's treatment and medication facilities in sterile or aseptic condition.

o. prescribing prescription medications to a colleague's or other health

care provider's patient.

6. All documents and communications (including emails, written correspondence and other documents) concerning NECC's compounded medications, the cost of steroids, or the procurement of steroids.

7. All documents and communications regarding marketing materials provided by NECC and NECC's agents or representatives to Box Hill.

8. All documents and communications that mention, refer to, or are related to each and every recall of NECC medications.

9. All documents and communications, including, but not limited to, emails, correspondence, prescriptions, orders, invoices, memoranda, product information, brochures, promotional materials, documents and things received or sent by Box Hill to any supplier of methylprednisolone acetate, brand name Depo-Medrol and generic Depo-Medrol.

10. All documents and communications, including, but not limited to, emails, spreadsheets, memoranda, comparisons, and documents pertaining to the costs associated with purchasing injectable steroids from any source.

11. All documents and communications regarding any samples, gifts, incentives, promotions or discounts received from or offered by NECC or any of its agents to Box Hill.

12. All documents and communications, including, but not limited to, emails, protocols, procedures, memoranda, guidelines and/or correspondence related to notifying or contacting patients who received steroid injections obtained from NECC.

13. All documents and communications, including, but not limited to, reports, correspondence, memoranda or other documentation generated by any committee or

person who conducted any type of inquiry or investigation into the fungal meningitis outbreak.

14. All statements taken by Box Hill, or by anyone on its behalf, regarding the fungal meningitis outbreak in 2012.

15. All incident reports and complaints pertaining to NECC and/or the fungal meningitis outbreak.

16. All documents and communications related to the manner in which patients who may have received recalled drugs are to be contacted and/or informed of such recall.

17. All documents and communications related to risks and/or benefits associated with preservative-free compounded products.

18. All documents and communications related to risks and benefits associated with epidural and joint injections.

19. All documents and communications between Box Hill and its patients related to epidural and joint injections, preservative-free products, compounded products and administration of the same.

20. All documents and communications, including, but not limited to, internal communications at Box Hill and Box Hill's communication with patients, related to NECC's recall of MPA and the fungal meningitis outbreak.

21. All documents and communications between Box Hill's employees or agents and any other person or entity related to NECC's recall of MPA and/or the fungal meningitis outbreak, including, but not limited to, communications with the Maryland Department of Health & Mental Hygiene, the Maryland Board of Physicians, the Massachusetts Department of Public Health, the Food and Drug Administration, the Center for Disease Control, the Federal Bureau of Investigations, and any other governmental entity.

22. All documents and communications relating to Dr. Bhambhani's name and DEA numbers appearing on NECC Prescription Order forms.

23. All documents and communications relating to Box Hill's polices in effect during 2012 on preparing and content of surgical procedure reports, including the identification of medication or medical products utilized or administered during a procedure.

24. All documents and communications related to the identification of drugs or therapeutic agents in patient reports, charts, or records.

25. All documents and communications related to informed consent when administering, including injecting, medication to Box Hill patients.

26. All documents and communications related to the evaluation of Box Hill's procedures and methods concerning the selection, prescription and administration of preservative-free MPA.

27. All documents and communications related to Box Hill's internal investigation, evaluation and/or change(s) implemented as a result of Box Hill's involvement with the ordering and/or administration of NECC's product and the fungal meningitis outbreak at any facility, including Box Hill facilities.

28. All documents and communications related to billing, billing policies and billing codes used for billing governmental and private insurers for steroid injection services, NECC's MPA preparation, brand name Depo-Medrol and generic Depo-Medrol.

29. All documents and communications related to reimbursement of Box Hill for epidural steroid injection services, NECC's MPA preparation, brand name Depo-Medrol and generic Depo-Medrol from January 1, 2005 to date.

30. All documents and communications related to expenditures made and revenues derived by Box Hill for its administration of steroid injection services from January 1,

2005 to date.

31. All documents and communications related to the qualification and training of staff on task of determining sources and suppliers of medication administered to Box Hill patients.

32. All documents and communications related to evaluation, investigation and selection of compounding pharmacies from January, 2005 to date.

33. All documents and communications related to consultation with external entities or people regarding the outsourcing of compounded drugs and evaluation, investigation and selection of compounding pharmacies from January, 2005 to date.

34.    All documents and communications related to Box Hill's licensure or accreditation.

35. The entire custodial file of all Box Hill staff or physicians involved in the selection of NECC as a medication supplier or the ordering, prescription, charting, reporting and/or administration of NECC's MPA, including, but not limited to, all documents and communications related job titles and job responsibilities.

36. A copy of all disclaimers or reservation of rights letters from any Box Hill insurance carrier or insurance facility.

37. Certified copies of all insurance policies that may apply coverage to Box Hill for the claims asserted in this case.

38. A copy of CVs for any and all physicians who performed spinal injections at Box Hill from January 2010 through 2012.

39.  A copy of all expert reports and CVs by or of experts you intend to call at trial on your behalf.

40.  A copy of documents you refer to or identify in your answers to interrogatories.

41.  A complete copy (in color) of each of the Plaintiff's or his/her decedent's medical records, medical chart and billing.

42.  A complete copy (with no redactions as to any Box Hill patient whose case is in suit in the MDL or for whom you have received a letter of representation) of any prescriptions or prescription order form for MPA submitted by or on behalf of Box Hill to NECC.

43.  A copy of any materials relating to Box Hill's determination of NECC's qualification or suitability as a vendor of prescription medications used at Box Hill in the treatment of patients.

44.  A copy of Box Hill's formulary and any formulary procedures or polices.

45.  A copy of any and all documents relating to the fate of patients who were administered MPA from one of the recalled NECC lots at Box Hill.

46.  A copy of any documents relating to administrative or licensure authority complaints, citations, warnings, suspensions, prohibitions or other administrative action against Box Hill or physicians associated with Box Hill.

47.  A copy of any statement, press release or testimony by or on behalf of Box Hill or its associated physician relating to NECC or patients administered NECC medications.

48.  A copy of any notice or claim you submitted to any third party, including the NECC Bankruptcy trustee, relating to NECC or patients administered NECC medications.

49.  A copy of all documents and materials relating to any claim you may make at trial that others are potentially liable for plaintiffs' respective alleged injuries.

50.  A copy all communications by and between Box Hill and NECC or NECC sales agents relating to NECC's pharmaceutical products.

**Dated: May 11, 2015.**

/s/ Kimberly Dougherty

Kimberly Dougherty
JANET, JENNER & SUGGS, LLC
31 St. James Ave, Suite 365
Boston, MA 02116
Phone: (617) 933-1265
kdougherty@myadvocates.com

*Maryland Lead Counsel for PSC*

Thomas M. Sobol
Kristen Johnson Parker
HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Phone: (617) 482-3700
Fax: (617) 482-3003
tom@hbsslaw.com
kristenjp@hbsslaw.com

*Plaintiffs' Lead Counsel*

Elizabeth J. Cabraser
Mark P. Chalos
LIEFF CABRASER HEIMANN & BERNSTEIN,
LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111
Phone: (415) 956-1000
Fax: (415) 956-1008
ecabraser@lchb.com
mchalos@lchb.com

*Federal/State Liaison*

J. Gerard Stranch, IV
Benjamin A. Gastel
BRANSETTER, STRANCH & JENNINGS PLLC
227 Second Avenue North
Nashville, TN  37201
Phone: (615) 254-8801
Fax: (615) 255-5419
gerards@branstetterlaw.com

Marc E. Lipton
LIPTON LAW
18930 W. 10 Mile Road
Southfield, MI 48075
Phone: (248) 557-1688
Fax: (248) 557-6344
marc@liptonlawcenter.com

Patrick T. Fennell
CRANDALL & KATT
366 Elm Avenue, S.W.
Roanoke, Virginia 24016
Phone:  (540) 342-2000
pfennell@crandalllaw.com

Mark Zamora
ZAMORA FIRM
6 Concourse Parkway, 22nd Floor
Atlanta, GA 30328
Phone: (404) 451-7781
Fax: (404) 506-9223
mark@markzamora.com

*Plaintiffs' Steering Committee*

**<u>CERTIFICATE OF SERVICE</u>**

   I, Kimberly Dougherty, hereby certify that on the 11th day of May, 2015, the foregoing document was served via electronic mail and/or U.S. Mail, postage prepaid, on the following counsel:

Gregory K. Kirby
(gkirby@pklaw.com)
Pessin Katz Law, PA
901 Dulaney Valley Road, Suite 400
Towson, MD 21204

           <u>/s/ Kimberly Dougherty     </u>
           Kimberly Dougherty