**<u>EXHIBIT B</u>**

**Blackline Comparison Identifying Changes to the First Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc.**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

**EASTERN DIVISION**

| | |
|---|---|
| In re:<br>NEW ENGLAND COMPOUNDING<br>PHARMACY, INC.,<br><br>          Debtor. | Chapter 11<br><br>Case No. 12-19882-HJB |

**~~FIRST~~SECOND AMENDED JOINT CHAPTER 11 PLAN OF**
**NEW ENGLAND COMPOUNDING PHARMACY, INC.**

**DUANE MORRIS LLP**

Paul D. Moore, Esq.
100 High Street
Suite 2400
Boston, MA 02110
Telephone:  (857) 488-4200
Facsimile:  (857) 401-3057

*Chapter 11 Trustee*

**BROWN RUDNICK LLP**

William R. Baldiga, Esq.
Kiersten A. Taylor, Esq.
One Financial Center
Boston, MA 02111
Telephone:  (617) 856-8200
Facsimile:  (617) 856-8201

David J. Molton, Esq.
7 Times Square
New York, NY 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801

*Counsel to the Official Committee*
*of Unsecured Creditors*

Dated:  ~~February 22,~~May 12, 2015

# TABLE OF CONTENTS

**Page**

ARTICLE I. DEFINITIONS AND INTERPRETATION .......................................................... 1

1.01   Additional Tort Trust Assets ................................................................................. 1

1.02   Administrative Expense Claim .............................................................................. 1

1.03   Adversary Proceeding ........................................................................................... 1

1.04   Adversary Proceeding Defendants ........................................................................ 2

1.05   Affiliate Defendants .............................................................................................. 2

1.06   Affiliated Entities .................................................................................................. 2

1.07   Allowed .................................................................................................................. 2

1.08   Ameridose ............................................................................................................. 2

1.09   Ameridose Excess Policies ................................................................................... 2

1.10   Ameridose Parties ................................................................................................. 2

1.11   Ameridose Policies ............................................................................................... 2

1.12   Ameridose Primary Policies ................................................................................. 2

1.13   Ameridose Settlement Agreement ........................................................................ 2

1.14   Ameridose Settlement Payment ............................................................................ 2

1.15   Appeals Administrator .......................................................................................... 3

1.16   ARL ....................................................................................................................... 3

1.17   ARL Affiliates ....................................................................................................... 3

1.18   ARL Policy ............................................................................................................ 3

1.19   ARL Settlement Agreement .................................................................................. 3

1.20   ARL Settlement Payment ...................................................................................... 3

1.21   ARL Shareholder ................................................................................................... 3

1.22   Bankruptcy Code......................................................................................3

1.23   Bankruptcy Court.....................................................................................3

1.24   Bankruptcy Rules.....................................................................................4

1.25   Bar Date...................................................................................................4

1.26   Bar Date Order.........................................................................................4

1.27   Business Day............................................................................................4

1.28   Cash.........................................................................................................4

1.29   Chapter 11 Case.......................................................................................4

1.30   Chapter 11 Trustee...................................................................................4

1.31   Claim.......................................................................................................4

1.32   Claimant..................................................................................................4

1.33   Claims Resolution Facility......................................................................4

1.34   Claims Resolution Facility Procedures...................................................4

1.35   Class........................................................................................................4

1.36   Class C Cash............................................................................................4

1.37   Class C Claims.........................................................................................4

1.38   Class D Claims.........................................................................................4

1.39   Class D Consortium Claim......................................................................5

1.40   Class D Estate Claim...............................................................................5

1.41   Class E Cash............................................................................................5

1.42   Class E Claims.........................................................................................5

1.43   Collateral.................................................................................................5

1.44   Common Benefit Fund.............................................................................5

1.45   Conditional Payment...............................................................................5

1.46   Confirmation Date...................................................................................5

1.47   Confirmation Hearing ................................................................................. 5

1.48   Confirmation Order ..................................................................................... 5

1.49   Contributing Parties .................................................................................... 5

1.50   Contributor and Affiliate Released Claims .................................................. 5

1.51   Creditor ....................................................................................................... 5

1.52   Darwin ......................................................................................................... 5

1.53   Darwin Policy .............................................................................................. 6

1.54   Debtor .......................................................................................................... 6

1.55   Disclosure Statement ................................................................................... 6

1.56   Disclosure Statement Hearing ..................................................................... 6

1.57   Disclosure Statement Order ......................................................................... 6

1.58   Disputed ....................................................................................................... 6

1.59   Distribution Record Date ............................................................................. 6

1.60   District Court ............................................................................................... 7

1.61   Drugs ........................................................................................................... 7

1.62   Effective Date .............................................................................................. 7

1.63   Entity ........................................................................................................... 7

1.64   Equity Holder .............................................................................................. 7

1.65   Equity Interest ............................................................................................. 7

1.66   Escrow Agreement(s) ................................................................................... 7

1.67   Estate ........................................................................................................... 7

1.68   Estate Causes of Action ............................................................................... 7

1.69   Estate Parties ............................................................................................... 7

1.70   Estate Representative ................................................................................... 7

1.71   Expense Fund ............................................................................................... 8

1.72     Expense Fund Administrator ............................................................. 8

1.73     Expense Fund Amount ...................................................................... 8

1.74     Final Order ...................................................................................... 8

1.75     GDC ................................................................................................ 8

1.76     GDC Policies ................................................................................... 8

1.77     GDC Released Parties ...................................................................... 8

1.78     GDC Settlement Agreement ............................................................. 8

1.79     GDC Settlement Payment ................................................................. 8

1.80     General Unsecured Claim ................................................................ 9

1.81     ~~High Point~~Great American .............................................................. 9

1.82     ~~High Point Policy~~Great American Policies ..................................... 9

1.83     High Point ~~Settlement Agreement~~ ................................................ 9

1.84     High Point ~~Settlement Payment~~Policy ............................................ 9

1.85     ~~IGPM~~High Point Settlement Agreement ........................................ 9

1.86     ~~Impaired~~High Point Settlement Payment ...................................... 9

1.87     ~~Individual GDC Insureds~~IGPM ...................................................... 9

1.88     ~~Individual Insureds~~Impaired ........................................................ 9

1.89     Individual ~~NECC~~GDC Insureds .................................................... 9

1.90     Individual Insureds .......................................................................... 10

1.91     Individual NECC Insureds ............................................................... 10

1.92     Initial Tort Trust Assets ................................................................... ~~9~~

1.91     Insight ............................................................................................. 10

1.92     Insight Policies ................................................................................ 10

1.93     Insight ~~Settlement Agreement~~ ...................................................... 10

1.94     Insight ~~Settlement Payment~~Policies ............................................. 10

iv

1.95    ~~Inspira~~Insight Settlement Agreement .................................................... 10

1.96    ~~Inspira Policies~~                                    ~~11~~Insight Settlement Payment          10

1.97    Inspira ~~Settlement Agreement~~                                ~~11~~ 10

1.98    Inspira ~~Settlement Payment~~Policies ................................................ 11

1.99    Inspira Settlement Agreement ......................................................... 11

1.100   Inspira Settlement Payment ............................................................ 11

1.101   Interim Bar Date Order .................................................................. 11

1.100   ~~Ironshore~~                                                           ~~11~~

1.101   ~~Ironshore Inspira Policies~~                                         ~~11~~

1.102   Ironshore 11

1.103   Ironshore Inspira Policies .............................................................. 11

1.104   Ironshore Specialty Insurance ....................................................... 11

~~1.103~~1.105                                          Juno Assurance          ~~11~~12

~~1.104~~1.106                                          Juno Inspira Policies          ~~11~~

1.105   ~~Landmark~~                                                            ~~12~~

1.106   ~~Liberty Mutual~~ ........................................................................... 12

1.107   ~~Lexington Insurance~~Landmark ................................................... 12

1.108   Lexington ~~Insight Policy~~Insurance ............................................... 12

1.109   Lexington ~~Inspira~~Insight Policy ................................................... 12

1.110   ~~Local Rules~~Lexington Inspira Policy ........................................... 12

1.111   ~~Maxum~~Liberty Industries ............................................................ 12

1.112   ~~Maxum~~Liberty Industries Policies ............................................... 12

1.113   ~~MDL Court~~Liberty Industries Settlement Agreement .................. 12

1.114   ~~MDL Proceeding~~                              ~~12~~Liberty Industries Settlement Payment          13

1.115   Liberty Mutual ............................................................................. 13

v

1.116    Local Rules                                                                 13

1.117    Maxum                                                                       13

1.118    Maxum Policies                                                              13

1.119    MDL Court                                                                   13

1.120    MDL Proceeding                                                              13

1.115 1.121                          Miscellaneous Secured Claims        13

1.116 1.122                                              Medicaid        13

1.117 1.123                                            Medicare Act      13

1.118 1.124                                           Medical Mutual     13

1.119 1.125                                        Medical Mutual Policy  13

1.120 1.126                                                   MPA        13 14

1.121 1.127                           National Contributing Parties      13 14

1.122 1.128                        National Settlement Administrator(s)   13 14

1.123 1.129                          National Settlement Agreements       13 14

1.124 1.130                          National Settlement Payments         13 14

1.125 1.131                                          National Union.     14

1.126 1.132                                      National Union Polices   14

1.127    NECC                                                                14

1.128    NECC Claims                                                         14

1.129    NECC Parties                                                        14

1.130    NECC Policies                                                       14

1.131    Netherlands Insurance                                               14

1.132    Netherlands Victory Policies                                        14

1.133    Non-Insurer Contributing Parties NECC                               14

1.134    Non-Tort NECC Claims                                                14

1.135   ~~North American Elite~~NECC Parties .................................................... 14

1.136   ~~North American Elite~~NECC Policies .................................................. 14

1.137   ~~Objection Deadline~~Netherlands Insurance ...................................... 14

1.138   Netherlands Victory Policies ................................................................ 15

1.139   Non-Insurer Contributing Parties 15

1.140   Non-Tort Claims ................................................................................... 15

1.141   North American Elite ........................................................................... 15

1.142   North American Elite Policies ............................................................. 15

1.143   Objection Deadline .............................................................................. 15

1.144   Official Committee ............................................................................... 15

~~1.139~~1.145 ........................................................... Other Contributing Parties   15

~~1.140~~1.146 ................................................................................. Patient Lists   15

~~1.141~~1.147 ........................................................................... Peerless Insurance   15

~~1.142~~1.148 ............................................................... Peerless Victory Policies   ~~15~~16

~~1.143~~1.149 ......................................................................................... Person   ~~15~~16

~~1.144~~1.150 ............................................................................. Petition Date   ~~15~~16

~~1.145~~1.151 ......................................................................... PITWD Addendum   ~~15~~16

~~1.146~~1.152 ............................................................. Plaintiffs' Steering Committee   ~~15~~16

~~1.147~~1.153 ............................................................................................. Plan   ~~15~~16

~~1.148~~1.154 ................................................................................ Plan Proponents   ~~15~~16

~~1.149~~1.155 .................................................................................. Plan Supplement   ~~15~~16

~~1.150~~1.156 .................................................. Plan Supplement Documents   16

~~1.151~~1.157 ......................................................................................... Policies   16

~~1.152~~1.158 ........................................................................ Post-Effective Date Debtor   16

~~1.153~~1.159 ....................................................................... Post-Confirmation Officer   16

1.154 1.160 .................................................................................. PMIC ............................. 16 17

1.155 1.161 .................................................... PMIC/Maxum Released Parties ............................. 16 17

1.156 1.162 ................................................ PMIC/Maxum Settlement Agreement ............................. 16 17

1.157 1.163 .................................................. PMIC/Maxum Settlement Payment ............................. 16 17

1.158 1.164 ................................................................. PMIC NECC Policies ............................. 16 17

1.159 1.165 ....................................................................... Preferred Mutual ............................. 16 17

1.160 1.166 ................................................................ Priority Non-Tax Claim ............................. 17

1.161 1.167 ........................................................................ Priority Tax Claim ............................. 17

1.162 1.168 ............................................................................ Priority Claims ............................. 17

1.163 1.169 ............................................................................ Pro Rata Share ............................. 17

1.164 1.170 ............................................................................ Protocol Order ............................. 17 18

1.165 1.171 ....................................................... Provider Claims Resolution Facility(s) ............................. 17 18

1.166 1.172 ..................................... Provider Claims Resolution Facility Procedures ............................. 17 18

1.167 1.173 ............................................................. Provider Contributing Parties ............................. 17 18

1.168 1.174 ........................................................ Provider Settlement Administrator(s) ............................. 17 18

1.169 1.175 ......................................................... Provider Settlement Agreements ............................. 17 18

1.170 1.176 .......................................................... Provider Settlement Payments ............................. 17 18

1.171 1.177 .................................................................... Resident Tort Trustee ............................. 17 18

1.172 1.178 ............................................................................... Schedules ............................. 17 18

1.173 1.179 ........................................................... Settlement Administrators ............................. 17 18

1.174 1.180 ............................................................... Settlement Agreements ............................. 18

1.175 1.181 .............................................................. Settling National Insurers ............................. 18

1.176 1.182 ............................................. Shareholder and Affiliate Released Parties ............................. 18

1.177 1.183 ........................................................ Shareholder Escrow Accounts ............................. 18

1.178 1.184 .............................................................. Shareholder Escrow Agent ............................. 18 19

| | | |
|---|---|---|
| 1.179 1.185 | Shareholder Escrow and Control Agreement | 18 19 |
| 1.180 1.186 | Shareholder Settlement Agreement | 18 19 |
| 1.181 1.187 | Shareholder Settlement Monies | 18 19 |
| 1.182 1.188 | Shareholder Settlement Non-QSF Accounts | 18 19 |
| 1.183 1.189 | Shareholder Settlement Non-QSF Monies | 18 19 |
| 1.184 1.190 | Shareholder Settlement QSF Account | 18 19 |
| 1.185 1.191 | Shareholder Settlement QSF Monies | 18 19 |
| 1.186 1.192 | Shareholders | 18 19 |
| 1.187 1.193 | Subordinated Claims | 18 19 |
| 1.188 1.194 | Supplemental Bar Date | 19 |
| 1.189 1.195 | Supplemental Bar Date Notice | 19 |
| 1.190 1.196 | Supplemental Bar Date Order | 19 |
| 1.191 1.197 | Tax Code | 19 |
| 1.192 1.198 | Tennessee Settlement Agreement | 19 20 |
| 1.193 1.199 | Tort Claims | 19 20 |
| 1.194 1.200 | Tort Claimants | 19 20 |
| 1.195 1.201 | Tort Trust | 19 20 |
| 1.196 1.202 | Tort Trustee | 19 20 |
| 1.197 1.203 | Tort Trust Advisory Board | 19 20 |
| 1.198 1.204 | Tort Trust Agreement | 19 20 |
| 1.199 1.205 | Tort Trust Assets | 19 20 |
| 1.200 1.206 | Tort Trust Beneficiaries | 20 |
| 1.201 1.207 | Tort Trust Certificate | 20 |
| 1.202 1.208 | Tort Trust Documents | 20 |
| 1.203 1.209 | Treasury Regulations | 20 21 |

1.204   UniFirst ................................................................................................. 20

1.205   UniFirst Policies .................................................................................. 20

1.206   UniFirst Settlement Agreement ....................................................... 20

1.207   UniFirst Settlement Payment ........................................................... 20

1.208   Unimpaired ........................................................................................... 20

1.209   U.S. Trustee ......................................................................................... 20

1.210   Victory ................................................................................. 20UniFirst   21

1.211   VictoryUniFirst Policies .............................................................. 2021

1.212   VictoryUniFirst Settlement Agreement ................................... 2021

1.213   VictoryUniFirst Settlement Payment ........................................ 2021

1.214   Unimpaired ........................................................................................... 21

1.215   U.S. Trustee ......................................................................................... 21

1.216   Victory ................................................................................................... 21

1.217   Victory Policies .................................................................................. 21

1.218   Victory Settlement Agreement ....................................................... 21

1.219   Victory Settlement Payment ........................................................... 21

1.220   Rules of Interpretation .................................................................... 21

1.2151.221                                              Computation of Time   2122

1.2161.222                                              Governing Law   2122

ARTICLE II. ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS . 2122

2.01   Administrative Expense Claims ...................................................... 2122

2.02   Deadlines to Assert Administrative Expense Claims ............... 2122

2.03   Priority Tax Claims ............................................................................ 2223

ARTICLE III. CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS .............. 2223

3.01   Classification of Claims and Equity Interests ............................ 2223

x

ARTICLE IV. TREATMENT OF CLAIMS AND EQUITY INTERESTS.................................2324

   4.01   Class A - Priority Non-Tax Claims.................................2324

   4.02   Class B - Miscellaneous Secured Claims.................................2324

   4.03   Class C - General Unsecured Claims.................................2324

   4.04   Class D - Tort Claims.................................2324

   4.05   Class E - Subordinated Claims.................................2425

   4.06   Class F - Equity Interests.................................25

ARTICLE V. SETTLEMENT OF TORT CLAIMS  AND THE NECC TORT TRUST.................................2526

   5.01   Settlement and Compromise.................................2526

   5.02   Exhaustion of Insurance Policies.................................2526

   5.03   Execution of Tort Trust Agreement.................................2526

   5.04   Purpose of Tort Trust.................................2526

   5.05   Assets of the Tort Trust.................................26

   5.06   Governance of the Tort Trust.................................2627

   5.07   Role of the Tort Trustee.................................2627

   5.08   Investments.................................2627

   5.09   Fees, Costs and Expenses of the Tort Trust.................................2728

   5.10   Distribution of the Tort Trust Assets.................................28

   5.11   Resolving Liens Other than Imposed by the Medicare Act and States' Medicaid and Worker Compensation Statutes.................................2930

   5.12   Time of Tort Trust Distributions.................................30

   5.13   Tax Treatment of Tort Trust.................................3031

   5.14   Resolution of the Claims of Minors In Accordance With the Tort Trust.................................3233

   5.15   Access to Claims Information.................................33

   5.16   Distribution of Surplus.................................3334

   5.17   Payments to Post-Effective Date Debtor.................................3334

ARTICLE VI. MEANS FOR IMPLEMENTATION AND EXECUTION OF THIS PLAN ....... ~~33~~34

6.01    Management of the Post-Effective Date Debtor ......................................... ~~33~~34

6.02    Duties and Powers of the Post-Confirmation Officer ................................. ~~34~~35

6.03    Other Actions ............................................................................................. ~~36~~37

6.04    Expense Fund .............................................................................................. ~~36~~37

6.05    Distributions Under this Plan ..................................................................... ~~36~~37

6.06    Disallowance of Multi-Claimant Proofs of Claim ..................................... 38

6.07    Procedures for Treating Disputed Claims .................................................. ~~38~~39

6.08    Closing of the Chapter 11 Case .................................................................. ~~38~~39

6.09    Cancellation of Existing Agreements ......................................................... 39

6.10    Continued Corporate Existence .................................................................. 39

6.11    Effectuating Documents and Further Transactions ..................................... ~~39~~40

ARTICLE VII. PROVISIONS GOVERNING DISTRIBUTIONS .................................... ~~39~~40

7.01    Distribution Record Date ............................................................................ ~~39~~40

7.02    Delivery of Distributions and Undeliverable Distributions ....................... 40

7.03    De Minimis Distributions ........................................................................... ~~40~~41

7.04    Transactions on Business Days ................................................................... ~~40~~41

7.05    Allocation of Plan Distribution Between Principal and Interest ................ ~~40~~41

7.06    Withholding and Reporting Requirements .................................................. ~~40~~41

ARTICLE VIII. EXECUTORY CONTRACTS AND UNEXPIRED LEASES ..................... ~~41~~42

8.01    Executory Contracts and Unexpired Leases ............................................... ~~41~~42

8.02    Insurance Policies and Agreements ............................................................ ~~41~~42

8.03    Approval of Rejection of Executory Contracts and Unexpired Leases ...... ~~41~~42

8.04    Rejection Claims ......................................................................................... 42

8.05    Rejection Claims of Officers and Directors of the Debtor ......................... ~~42~~43

ARTICLE IX. EFFECTIVENESS OF THIS PLAN .......................................................... 4243

   9.01   Conditions to Confirmation ................................................................. 4243

   9.02   Date of Effective Date ......................................................................... 4243

   9.03   Satisfaction of Conditions .................................................................. 4243

   9.04   Occurrence of Effective Date .............................................................. 43

   9.05   Substantial Consummation Upon Effective Date ................................ 43

ARTICLE X. EFFECT OF CONFIRMATION ............................................................... 4344

   10.01   Vesting of Assets ............................................................................... 4344

   10.02   Binding Effect .................................................................................... 4344

   10.03   Exculpations and Limitation of Liability ........................................... 4344

   10.04   Preservation and Non-Waiver of Estate Defenses and Objections and Related Rights Reserved for the Debtor, its Successors in Interest, Creditors and Parties in Interest .............................................................................................. 4344

   10.05   Releases ............................................................................................. 4445

   10.06   Injunctions ......................................................................................... 4849

   10.07   Covenant Not to Sue49Preservation of Certain Defenses Based Upon Fault or Comparative Fault

   10.08   Covenant Not to Sue 52

   10.09   Covenant Not to Sue (Shareholder and Affiliate Released Parties) ........ 5052

   10.0910.10   Terms of Pre-Plan Injunction and Stays ......... 5052

ARTICLE XI. RETENTION OF JURISDICTION ........................................................ 5052

   11.01   Jurisdiction of Bankruptcy Court ...................................................... 5052

ARTICLE XII. MISCELLANEOUS PROVISIONS ...................................................... 5154

   12.01   Reporting of Shareholder Settlement Payments ................................ 5154

   12.02   Tax Information to be Provided to Shareholders ............................... 5254

   12.03   Refunds .............................................................................................. 5254

   12.04   Withdrawal of the Reference ............................................................. 5254

12.05    Dissolution of the Official Committee ................................................ 5255

12.06    Quasi-Judicial Immunity ..................................................................... 5255

12.07    Payment of Statutory Fees .................................................................. 5355

12.08    Effectuating Documents and Further Transactions ............................ 5355

12.09    Exemption from Transfer Taxes .......................................................... 5355

12.10    Elimination of Vacant Classes ............................................................ 5355

12.11    Nonconsensual Confirmation .............................................................. 5355

12.12    Modification of Plan ........................................................................... 5356

12.13    Revocation or Withdrawal of Plan ..................................................... 5456

12.14    Severability ......................................................................................... 5456

12.15    Schedules and Exhibits ....................................................................... 5456

12.16    Successors and Assigns ....................................................................... 5457

12.17    Notices ................................................................................................. 5557

12.18    No Admission ...................................................................................... 5658

ARTICLE XIII. CONFIRMATION REQUEST .................................................... 5658

13.01    The Plan Proponents request confirmation of this Plan under section 1129(b) of
         the Bankruptcy Code. ........................................................................ 56

Paul D. Moore, as chapter 11 trustee (the "**Chapter 11 Trustee**") of New England Compounding Pharmacy, Inc., a Massachusetts corporation, the above-captioned debtor (the "**Debtor**") and the Official Committee of Unsecured Creditors (the "**Official Committee**" and together with the Chapter 11 Trustee, the "**Plan Proponents**") propose the following chapter 11 plan (the "**Plan**") pursuant to section 1121(a) of title 11 of the United States Code (the "**Bankruptcy Code**").  This Plan proposes to resolve all Claims against and Equity Interests in the Debtor.  ***IN PARTICULAR, CREDITORS AND PARTIES IN INTEREST SHOULD REVIEW SECTIONS 10.05 AND 10.06 OF THIS PLAN, WHICH PROVIDE FOR THIRD-PARTY RELEASES AND INJUNCTIONS THAT MAY AFFECT THE RIGHT TO PURSUE CLAIMS AGAINST NON-DEBTOR PARTIES (INCLUDING THE PARTIES DESCRIBED IN SECTION 3.4 OF THE DISCLOSURE STATEMENT AND SCHEDULES*** ~~***1.121***~~***1.127 AND*** ~~***1.167***~~***1.173 OF THIS PLAN) AFTER THE PLAN IS CONFIRMED.***  The Plan Proponents reserve the right to, among other things, alter, amend, modify, revoke or withdraw this Plan prior to the Effective Date as set forth in Section 12.12 and 12.13 of this Plan.

## ARTICLE I.
## DEFINITIONS AND INTERPRETATION

### A.     **Definitions.**

The following terms used herein shall have the respective meanings defined below (such meanings to be equally applicable to both the singular and plural):

**1.01     *Additional Tort Trust Assets*.**  Any Cash or Cash equivalent realized by the Estate Representative, solely in his capacity as such, after the Confirmation Date from or as a result of Settlement Agreements, including, but not limited, to the Tax Contributions (as defined in the Shareholder Settlement Agreement), and the proceeds of the sale, monetization or liquidation of Estate assets or other assets that the Estate Representative is entitled to sell for the benefit of the Estate in accordance with the Settlement Agreements or Section 6.02 hereof, together with all earnings thereon, less the amount the Estate Representative determines should be reserved as Cash.

**1.02     *Administrative Expense Claim*.**  Any right to payment constituting a cost or expense against either of the Debtor or its Estate, that is given administrative priority status pursuant to sections 503(b) and 507(a)(1) and (2) of the Bankruptcy Code, including, without limitation, the actual and necessary costs and expenses of preserving the Estate from or after the Petition Date, professional fees and expenses incurred by the Debtor, the Chapter 11 Trustee and the Official Committee, any indebtedness or obligations properly incurred or assumed by the Debtor from or after the Petition Date and any fees or charges assessed against the Estate under 28 U.S.C. § 1930.

**1.03     *Adversary Proceeding*.**  The adversary proceeding in the Bankruptcy Court in which the Chapter 11 Trustee is asserting various claims and causes of action against the Adversary Proceeding Defendants, and certain other defendants, styled as *Moore v. Cadden, et al.*, Adversary Proceeding No. 13-01040 (Bankr. D. Mass.).

**1.04** *Adversary Proceeding Defendants.*  The Shareholders and the Affiliate Defendants.

**1.05** *Affiliate Defendants.*  Ameridose, LLC, GDC Properties Management, LLC and Medical Sales Management, Inc.

**1.06** *Affiliated Entities*.  The Entities set forth in Schedule 1.06 hereto, affiliates of NECC or the Shareholders.

**1.07** *Allowed.*  (i) Any Claim against the Debtor which has been listed by the Debtor in the Schedules, as such Schedules may be amended by the Chapter 11 Trustee from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim has been filed, (ii) any timely filed Claim as to which no objection to allowance has been interposed or as to which other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective holder, or (iii) any Claim expressly allowed by a Final Order or under and in accordance with this Plan (only to the extent so allowed).

**1.08** *Ameridose*.  Ameridose LLC.

**1.09** *Ameridose Excess Policies*.  (i) The Commercial Excess/Umbrella Liability Policy PMIC issued to Ameridose, as named insured, under policy number UCL 0083404 04, for the policy period of March 1, 2011 to March 1, 2012; and (ii) the Commercial Excess/Umbrella Liability Policy PMIC issued to Ameridose, as named insured, under policy number UCL 0083404 05, for the policy period of March 1, 2012 to March 1, 2013.

**1.10** *Ameridose Parties.*  Ameridose, and any of its directors, officers, members, shareholders, insurers, owners, principals, employees, attorneys, predecessors, successors and assigns, that are released from Claims under the Ameridose Settlement Agreement.

**1.11** *Ameridose Policies*.  The Ameridose Excess Policies and  the Ameridose Primary Policies.

**1.12** *Ameridose Primary Policies*.  (i) The Businessowners Special Policy PMIC issued to Ameridose, as named insured, under policy number BOP 0083404 05, for the policy period of March 1, 2011 to March 1, 2012; and (ii) the Businessowners Special Policy PMIC issued to Ameridose, as named insured, under policy number BOP 0083404 06, for the policy period of March 1, 2012 to March 1, 2013.

**1.13** *Ameridose Settlement Agreement*.  The Ameridose LLC, Insurance Settlement, Release and Injunction Agreement dated as of November 24, 2014 by and among the Chapter 11 Trustee, PMIC (but no other Ameridose insurer), and Ameridose, substantially in the form included in the Plan Supplement.

**1.14** *Ameridose Settlement Payment*.  Cash  in the amount of $10,000,000 to be paid to the Estate pursuant to the Ameridose Settlement Agreement.

**1.15** **_Appeals Administrator._**  The person appointed pursuant to the Claims Resolution Facility Procedures to provide for an appeal process in and for the Claims Resolution Facility.

**1.16** **_ARL._**  ARL BioPharma Inc. d/b/a Analytical Research Laboratories.  Solely for purposes of the ARL Settlement Agreement and this Plan, and solely with respect to Claims based upon, arising out of, or in some way related to, the actual or alleged design, formulation, compounding, production, labeling, testing, marketing, advertising, supply, dispensing, sale, shipment or distribution of injectable methylprednisolone acetate, cardioplegia solution, or any other drugs or products compounded by NECC, ARL shall also include all of ARL BioPharma Inc.'s directors, officers, members, the ARL Shareholder, the ARL Affiliates, owners, principals, agents, employees, servants, attorneys, accountants, insiders, purported alter egos, predecessors, successors and assigns, and all Persons alleged to be derivatively liable through any of the foregoing, except to the extent that liability of the foregoing Persons or Entities is based on their relationship to Entities other than ARL.

**1.17** **_ARL Affiliates._**  DNA Solutions, Inc., The Kupiec Group LLC, Woda Investments LLC, Wasser Investments LLC, Kupiec Family Succession Trust, Kupiec Dakil Investments, LLC, Kreativ LLC, Teal Water Investments LLC, and Green Harvest Investments, LLC, and shall also include all of their directors, officers, members, owners, principals, agents, employees, servants, attorneys, accountants, insiders, purported alter egos, predecessors, successors and assigns.

**1.18** **_ARL Policy._**  The professional liability insurance policy, policy number LHM731509, effective 10/1/2011 - 10/1/2012 issued by Landmark, as insurer, to ARL.

**1.19** **_ARL Settlement Agreement._**  That certain Settlement and Release Agreement by and among the Chapter 11 Trustee, ARL and Landmark, dated as of December 4, 2014.

**1.20** **_ARL Settlement Payment._**  Cash in the amount of $6,400,000, to be paid to the Estate pursuant to the ARL Settlement Agreement.

**1.21** **_ARL Shareholder._**  The Thomas C. Kupiec Trust, and solely for purposes of the ARL Settlement Agreement and this Plan, and solely with respect to Claims based upon, arising out of, or in some way related to, the actual or alleged design, formulation, compounding, production, labeling, testing, marketing, advertising, supply, dispensing, sale, shipment or distribution of injectable methylprednisolone acetate, cardioplegia solution, or any other drugs or products compounded by NECC, the ARL Shareholder shall also include the ARL Shareholder's settlor, trustee, beneficiaries, Thomas C. Kupiec, his parents, spouse, dependents, children, and other nuclear family members, all other trusts under which the any of them are settlors, trustees, or beneficiaries, and all other Entities in which any of them directly or indirectly hold any legal, equitable, or beneficial interest, except to the extent that liability of the foregoing Persons or Entities is based on their relationship to Entities other than ARL.

**1.22** **_Bankruptcy Code._**  Title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Case.

3

**1.23    *Bankruptcy Court.*** The United States Bankruptcy Court for the District of Massachusetts, having jurisdiction over the Chapter 11 Case.

**1.24    *Bankruptcy Rules.*** The Federal Rules of Bankruptcy Procedure as promulgated by the Supreme Court of the United States under section 2075 of title 28 of the United States Code, as amended from time to time, applicable to the Chapter 11 Case, and any Local Rules of the Bankruptcy Court.

**1.25    *Bar Date.*** January 15, 2014 at 4:00 p.m. (Prevailing Eastern Time).

**1.26    *Bar Date Order.*** In the Chapter 11 Case, the *Order (I) Establishing Deadline for Submitting Proofs of Claim, (II) Approving Certain Additional Requirements and Procedures for Personal Injury Tort and Wrongful Death Claims and (III) Approving Form and Manner of Notice Thereof* dated September 27, 2013, together with all exhibits thereto [Chapter 11 Case Docket No. 582].

**1.27    *Business Day.*** Any day other than a Saturday, a Sunday or any other day on which banking institutions in Boston, Massachusetts are required or authorized to close by law or executive order.

**1.28    *Cash.*** Legal tender of the United States of America.

**1.29    *Chapter 11 Case.*** The case under chapter 11 of the Bankruptcy Code commenced by the Debtor on December 21, 2012 in the Bankruptcy Court and styled as *In re New England Compounding Pharmacy, Inc.*, Case No. 12-19882.

**1.30    *Chapter 11 Trustee.*** Paul D. Moore, solely in his capacity as chapter 11 trustee for the Debtor.

**1.31    *Claim.*** The meaning set forth in section 101(5) of the Bankruptcy Code.

**1.32    *Claimant*.** A holder of a Claim.

**1.33    *Claims Resolution Facility.*** The Personal Injury and Wrongful Death Claims Resolution Facility established by the Claims Resolution Facility Procedures.

**1.34    *Claims Resolution Facility Procedures*.** The Claims Resolution Facility Procedures substantially in the form included in the Plan Supplement.

**1.35    *Class.*** Any group of Claims or Equity Interests classified by this Plan pursuant to section 1122(a)(1) of the Bankruptcy Code.

**1.36    *Class C Cash.*** Cash in an aggregate amount equal to 90% of the Allowed Class C Claims.

**1.37** *Class C Claims.*  General Unsecured Claims that are classified under Class C.

**1.38** *Class D Claims.*  Tort Claims that are classified under Class D, including Tort Claims held by any Entity that is subrogated to the rights of a Tort Claimant pursuant to Section 4.04(iii) hereof.

**1.39** *Class D Consortium Claim.*  Any Class D Claim arising from loss of consortium.

**1.40** *Class D Estate Claim.*  Any Class D Claim filed on behalf of a decedent's estate.

**1.41** *Class E Cash.*  The Cash, if any, remaining in the Tort Trust after all Allowed Tort Claims, fees, expenses and any other payments required to be paid or satisfied therefrom have been fully paid or satisfied.

**1.42** *Class E Claims.*  Subordinated Claims that are classified under Class E.

**1.43** *Collateral.*  Any property or interest in property of the estate of the Debtor subject to a lien, charge or other encumbrance to secure the payment or performance of a Claim, which lien, charge or other encumbrance is not subject to avoidance under the Bankruptcy Code.

**1.44** *Common Benefit Fund.*  The common benefit fund to be created pursuant to Order No. 8 of the MDL Court in the MDL Proceeding, dated August 13, 2014 [MDL Proceeding Docket No. 1333].

**1.45** *Conditional Payment.*  Any payment made pursuant to section 1395y(b)(2) of the Medicare Act.

**1.46** *Confirmation Date.*  The date on which the Clerk of the Bankruptcy Court or, solely in the event that a court of competent jurisdiction determines that the Bankruptcy Court lacks jurisdiction or authority to enter final judgment confirming all or any portion of the Plan, the District Court enters the Confirmation Order.

**1.47** *Confirmation Hearing.*  The hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan.

**1.48** *Confirmation Order.*  The order confirming this Plan.

**1.49** *Contributing Parties.*  The Shareholders and the Other Contributing Parties.

**1.50** *Contributor and Affiliate Released Claims*.  Contributor and Affiliate Released Claims has the meaning set forth in the Shareholder Settlement Agreement.

**1.51**   *Creditor.*   Creditor has the meaning set forth in section 101(10) of the Bankruptcy Code.

**1.52**   *Darwin.*   Darwin Select Insurance Company solely in its capacity as issuer of, or in any other capacity that may arise from or be connected with, the Darwin Policy and as an insurer to Insight (and any other person(s) or entity(ies) that may be insured under the Darwin Policy) and all of its directors, officers, members, shareholders, owners, principals, employees, attorneys, affiliates, predecessors, parents, subsidiaries, successors and assigns, each acting solely in their respective capacities as such.

**1.53**   *Darwin Policy*.   The Insurance Policy issued by Darwin to Insight for the policy period of March 15, 2012 through April 13, 2013 (No. 0307-3978), and any other known or unknown insurance policies issued by Darwin to Insight prior to the Execution Date.

**1.54**   *Debtor.*   New England Compounding Pharmacy, Inc., as debtor in the Chapter 11 Case and any successor thereof, including, the Post-Effective Date Debtor (and its representative, the Post-Confirmation Officer) and the Tort Trust (and its representative, the Tort Trustee).

**1.55**   *Disclosure Statement.*   The disclosure statement relating to this Plan, including, without limitation, all exhibits thereto, as may be amended or modified from time to time, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

**1.56**   *Disclosure Statement Hearing.*   The hearing held by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code to consider approval of the Disclosure Statement.

**1.57**   *Disclosure Statement Order.*   The order of the Bankruptcy Court entered pursuant to section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017(b) approving the Disclosure Statement.

**1.58**   *Disputed.*   With respect to any Claim which has not been Allowed pursuant to this Plan or a Final Order:

(a)   if no proof of claim has been filed by the applicable deadline: (i) a Claim that has been or hereafter is listed on the Schedules as disputed, contingent or unliquidated; or (ii) a Claim that has been or hereafter is listed on the Schedules as other than disputed, contingent or unliquidated, but as to which the Chapter 11 Trustee, the Tort Trustee, the Official Committee or any other party in interest has interposed an objection or request for estimation which has not been withdrawn or determined by a Final Order;

(b)   if a proof of claim or request for payment of an Administrative Expense Claim, other than applications by professionals under section 330 of the Bankruptcy Code and fees payable pursuant to 28 U.S.C. § 1930, has been filed by the applicable deadline set by the Bankruptcy Court for the same: (i) a Claim or Administrative Expense Claim for which no corresponding Claim has been or hereafter is listed on the Schedules; (ii) a Claim or Administrative Expense Claim for which a corresponding Claim has been or hereafter is listed on the Schedules as other than disputed, contingent or unliquidated, but the nature or amount of

the Claim as asserted in the proof of claim varies from the nature and amount of such Claim as listed on the Schedules; (iii) a Claim or Administrative Expense Claim for which a corresponding Claim has been or hereafter is listed on the Schedules as disputed, contingent or unliquidated; or (iv) a Claim or Administrative Expense Claim for which a timely objection or request for estimation is interposed by the Chapter 11 Trustee, the Official Committee or other party in interest which has not been withdrawn or determined by a Final Order.

1.59   **_Distribution Record Date._**   The date of entry of the Disclosure Statement Order, fixed pursuant to Bankruptcy Rule 3018(a).

1.60   **_District Court._**   The Article III court in and for the District of Massachusetts, including, but not limited to, the District Court for the District of Massachusetts.

1.61   **_Drugs_.**   MPA and other products compounded, designed, marketed, sold, distributed, fabricated, advertised, supplied, produced or formulated by the Debtor.

1.62   **_Effective Date._**   The date upon which all conditions to effectiveness set forth in Section 9.02 of this Plan have been satisfied or waived.

1.63   **_Entity._**   An individual, corporation, partnership, limited liability company, association, joint stock company, joint venture, estate, trust, unincorporated organization, or other person; for the avoidance of doubt, "Entity" does not include any Governmental Unit, as defined in the Bankruptcy Code.

1.64   **_Equity Holder._**   Holder of an Equity Interest.

1.65   **_Equity Interest._**   The interest of any holder of an equity security of NECC represented by any issued and outstanding shares evidencing a present ownership interest in NECC, all other interests in NECC of any type (including, without limitation, warranty, options and instruments subject to conversion to interests), and any claims arising out of or pursuant to such interests.

1.66   **_Escrow Agreement(s)._**   The escrow agreement(s), if any, entered into by and between an escrow agent, the Chapter 11 Trustee and one or more of the Contributing Parties.

1.67   **_Estate._**   The estate of the Debtor created pursuant to section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

1.68   **_Estate Causes of Action._**   All of the Estate's claims for relief, causes of action, contested matters and lawsuits, whether known or unknown, existing or hereafter arising, in law, equity or otherwise, based in whole or in part on any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Case, including through the Effective Date, including, without limitation, (i) those arising under chapter 5 of the Bankruptcy Code, (ii) any avoidance or fraudulent transfer or conveyance under applicable state law, and (iii) those relating to the compounding, design, marketing, sale, distribution, fabrication, advertising, supply, production, formulation, use, administration, labeling or ingestion of any product produced, sold and/or distributed by the Debtor, including, but not limited to, the Drugs,

7

and all insurance policies owned by the Debtor; *provided, however*, that Estate Causes of Action shall not include any causes of action the Estate may hold against any Estate Representative.

    **1.69**    ***Estate Parties.***  The Trustee, the Debtor, Estate, the Official Committee, the Estate Representative(s), and each of their respective successors and assigns.

    **1.70**    ***Estate Representative.***  The Chapter 11 Trustee or any successor in interest to the Chapter 11 Trustee in such capacity, including but not limited to the Post-Confirmation Officer, whether such successor is appointed under this Plan, the Confirmation Order or otherwise.

    **1.71**    ***Expense Fund.***  The fund that may be established within the Tort Trust under, and subject to the provisions of, Section 6.04 hereof.

    **1.72**    ***Expense Fund Administrator.***  The person that may be appointed by the Estate Representative to administer the Expense Fund, solely in his or her capacity as such.

    **1.73**    ***Expense Fund Amount.***  Cash in such amount as the Estate Representative, in consultation with the Official Committee (if the Official Committee has not been dissolved), determines to be necessary or appropriate to be paid to the Expense Fund Administrator to fund any Expense Fund that may be established within the Tort Trust.

    **1.74**    ***Final Order.***  An order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the applicable subject matter hereof which has not been reversed, stayed, modified or amended and as to which (a) any right to appeal or seek certiorari, review, reargument, stay or rehearing has expired and no appeal or petition for certiorari, review, reargument, stay or rehearing is pending, or (b) an appeal has been taken or petition for certiorari, review, reargument, stay or rehearing has been filed and (i) such appeal or petition for certiorari, review, reargument, stay or rehearing has been resolved by the highest court to which the order or judgment was appealed or from which certiorari, review, reargument, stay or rehearing was sought or (ii) the time to appeal further or seek certiorari, review, reargument, stay or rehearing has expired and no such further appeal or petition for certiorari, review, reargument, stay or rehearing is pending; provided, however, that the possibility that a motion pursuant to Rules 59 and 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9023 and 9024 may be filed relating to such order shall not cause such order to not be a Final Order.

    **1.75**    ***GDC.***  GDC Properties Management, LLC, and any of its directors, officers, members, managers, shareholders, owners, principals, employees, attorneys, predecessors, successors and assigns, each acting solely in their respective capacity as such.

    **1.76**    ***GDC Policies.***  (i) The Commercial Lines Insurance Policy Preferred Mutual issued to GDC, as named insured, under policy number CPP 0150530884 for the policy periods of September 27, 2011 to September 27, 2012, (ii) the Commercial Lines Insurance Policy Preferred Mutual issued to GDC, as named insured, under policy number CPP 0160530884 for the policy periods of September 27, 2012 to September 27, 2013, and (iii) any other known or unknown insurance policies issued by Preferred Mutual to GDC prior to April 30, 2014.

    **1.77**    ***GDC Released Parties.***  All Persons and Entities released from Claims under the GDC Settlement Agreement.

**1.78** ***GDC Settlement Agreement.***  The GDC Insurance Settlement and Release Agreement dated as of April 30, 2014 by and among the Chapter 11 Trustee, GDC and the Individual GDC Insureds and Preferred Mutual [Chapter 11 Case Docket No. 714-2], as approved by the Bankruptcy Court at Chapter 11 Case Docket No. 970.

**1.79** ***GDC Settlement Payment.***  Cash in the amount of $3,750,000 paid to the Estate pursuant to the GDC Settlement Agreement.

**1.80** ***General Unsecured Claim.***  General unsecured claims that are not Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claim, Miscellaneous Secured Claims, Tort Claims or Subordinated Claims.

**1.81** ***Great American.***  Great American E&S Insurance Company and all of its directors, officers, members, shareholders, owners, principals, employees, attorneys, predecessors, successors and assigns, each acting in their respective capacity as such.

**1.82** ***Great American Policies.***  The following policies issued by Great American for the following time periods:  (a) primary policies identified as (i) policy number PL 2387754 00 with effective dates of 1/20/11 to 1/20/12, (ii) policy number PL 2387754 01 with effective dates of 1/20/12 to 1/20/13, and (iii) policy number PL 2387754 02 with effective dates of 1/20/13 to 1/20/14, together with (b) excess policies identified as (i) policy number XS 2388167 00 with effective dates of 4/18/11 to 1/20/12, (ii) policy number XS 2388167 01 with effective dates 1/20/12 to 1/20/13, and (iii) policy number XS 2388167 02 with effective dates 1/20/13 to 1/20/14.

**1.83** ~~1.81~~ ***High Point.***  High Point Surgery Center, Surgery Center Associates of High Point, LLC, and High Point Regional Health f/k/a High Point Regional Health System, d/b/a High Point Regional Hospital, and all of their respective directors, officers, members, shareholders, owners, principals, employees, medical staff, contractors, attorneys, affiliates, parents, subsidiaries, predecessors, successors and assigns, each acting in their respective capacity as such.

**1.84** ~~1.82~~ ***High Point Policy.***  The Healthcare Organizations Lead Excess & Umbrella  Policy, Policy Number 001220600 issued by Ironshore to High Point Regional Health System, as named insured.

**1.85** ~~1.83~~ ***High Point Settlement Agreement***.  The Settlement and Release Agreement dated as of December 3, 2014 by and among the Chapter 11 Trustee, High Point, and Ironshore.

**1.86** ~~1.84~~ ***High Point Settlement Payment.***  Cash in the amount of $3,500,000 paid to the Estate pursuant to the High Point Settlement Agreement.

**1.87** ~~1.85~~ ***IGPM.***  Image Guided Pain Management, PC, and all of its direct and indirect affiliates and their present and former officers, directors, agents and employees, in their capacities as such.

**1.88** ~~1.86~~ ***Impaired.***  Any Class that is impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.89**   ~~1.87~~ *Individual GDC Insureds.*   Any of GDC's directors, officers, members, managers, shareholders, owners, principals, employees, attorneys, predecessors, successors and assigns, who are or may be an "insured" under the GDC Policies, including, but not limited to, Gregory Conigliaro and Douglas Conigliaro, each acting solely in his, her, or its respective capacity as such.

**1.90**   ~~1.88~~ *Individual Insureds.*   The Individual NECC Insureds and the Individual GDC Insureds.

**1.91**   ~~1.89~~ *Individual NECC Insureds.*   Barry J. Cadden, Lisa M. Conigliaro Cadden, Gregory Conigliaro, Carla Conigliaro, Glenn Chin, Christopher Leary, Jill Keough, Gene Svirskiy and Kathy Chin, each solely in his or her capacity as an "insured" under the Maxum Policies and/or the PMIC NECC Policies.

**1.92**   ~~1.90~~ *Initial Tort Trust Assets.*   (i) The Shareholder Settlement QSF Monies (less the amount the Tort Trustee, in his capacity as qualified settlement fund administrator, determines should be reserved in the Shareholder Settlement QSF Account), (ii) the National Settlement Payments (less the amount the Estate Representative determines should be reserved as Cash or paid to the Shareholder Settlement QSF Account, which payments shall be deemed to have been made pursuant to this Plan.  As such, these payments will be considered to have been made pursuant to a "court order" necessary to satisfy the requirements of Internal Revenue Code section 468B), (iii) an amount of each of the Provider Settlement Payments to be provided by and in each Provider Settlement Agreement, and (iv) the Estate Causes of Action.

**1.93**   ~~1.91~~ *Insight.*   Insight Health Corp.; provided that for the purposes of all releases and injunctions set forth in Sections 10.05 and 10.06 below, "**Insight**" means Insight Health Corp., Insight Health Services Corp., Insight Services Holdings Corp., and all direct and indirect affiliates and their present and former officers, directors, agents and employees, in their capacities as such.

**1.94**   ~~1.92~~ *Insight Policies.*   Collectively, the Lexington Insight Policies and the Darwin Policy.

**1.95**   ~~1.93~~ *Insight Settlement Agreement.*   The Settlement and Release Agreement dated as of February 12, 2015 by and among the Chapter 11 Trustee, Insight, the Insight Insurers, IGPM, the Doctors, the Virginia Plaintiffs (as defined therein) and Medical Mutual.

**1.96**   ~~1.94~~ *Insight Settlement Payment.*   Cash in the amount of $40,000,000 paid to the Estate pursuant to the Insight Settlement Agreement, of which $38,500,000 shall be paid by Insight, Lexington and Darwin, and $1,500,000 shall be paid by Medical Mutual. to reimburse expenses; provided that $4,250,000 of the Insight Settlement Payment will remain in escrow as a holdback to be used exclusively for the satisfaction of settlements and/or judgments related to lawsuits filed and not barred by the appropriate statute of limitations against Insight pending the occurrence of certain conditions as set forth in the Insight Settlement Agreement, after which time the remaining escrowed holdback amounts (if any) will be released as set forth in the Insight Settlement Agreement and such claims shall be channeled to the Insight Claims Resolution Facility.

**1.97** ~~1.95~~ *Inspira.*  Inspira Health Network, Inc. (f/k/a South Jersey Health System, Inc.), Inspira Medical Centers, Inc. (f/k/a South Jersey Hospital, Inc.) and all of their respective directors, officers, members, shareholders, owners, principals, employees, including, but not limited to Joseph Alessandrini and Paul Abrams, attorneys, affiliates, predecessors, parents, subsidiaries, including, but not limited to, Juno Assurance, successors and assigns, each acting in their respective capacity as such.  For purposes of this Plan, the affiliates of Inspira are the following:  Inspira Medical Center Woodbury, Inc., Inspira HomeCare & HospiceCare, Inc., Inspira Health Network LIFE, Inc., Inspira Health Network Medical Group, P.C., Inspira Health Network Urgent Care, P.C., Cooper Bone & Joint at Woodbury, P.C., Oak & Main Surgicenter, LLC, Inspira Health Network Foundation Cumberland/Salem, Inc., Inspira Health Network Foundation Gloucester County, Inc., The Kidney Center at Vineland, LLC, The Kidney Center at Millville, LLC, Inspira Help Services, Inc., Inspira Health Partners, LLC, Red Bank Development Corporation, Inspira Health Management Corporation, Juno Assurance, Ltd., Inspira Management Services, LLC, Inspira Health Connections, P.C., Tri-County Cardiovascular Services, P.C., Gloucester County Surgery Center, LLC, Woodbury Medical Center Associates, LLP, Inspira Home Care Services Woodbury, Inc., Advanced  MRI II, LLC, Inspira Care Connect, LLC, The Healthy Cumberland Initiative, Inc., and The Healthy Gloucester Initiative, Inc.

**1.98** ~~1.96~~ *Inspira Policies.*  The Ironshore Inspira Policies, the Juno Inspira Policies, and the Lexington Inspira Policies.

**1.99** ~~1.97~~ *Inspira Settlement Agreement.*  The Settlement and Release Agreement dated as of December 3, 2014 by and among the Chapter 11 Trustee, Inspira, Lexington Insurance, and Ironshore Specialty Insurance.

**1.100** ~~1.98~~ *Inspira Settlement Payment.*  Cash in the amount of $16,000,000 paid to the Estate pursuant to the Inspira Settlement Agreement.

**1.101** ~~1.99~~ *Interim Bar Date Order.*  In the Chapter 11 Case, the *Interim Order Regarding Chapter 11 Trustee's Motion for an Order Establishing Bar Dates for Filing Proofs of Claim and for related Relief Concerning Noticing by Notice Intermediaries*, dated July 29, 2013 [Chapter 11 Case Docket No. 412].

**1.102** ~~1.100~~ *Ironshore.*  Ironshore Specialty Insurance Company solely in its capacity as issuer of, or in any other capacity that may arise from or be connected with, the High Point Policy and as an insurer to High Point (and any other person(s) or entity(ies) that may be insured under the High Point Policy) and all of its directors, officers, members, shareholders, owners, principals, employees, attorneys, affiliates, predecessors, parents, subsidiaries, successors and assigns, each acting solely in their respective capacities as such.

**1.103** ~~1.101~~ *Ironshore Inspira Policies.*  (i) The Insurance Policy issued by Ironshore Specialty Insurance to Inspira for the policy period of 11/1/2011 to 11/1/2012 (No.  000791702), and (ii) any other known or unknown insurance policies issued by Ironshore Specialty Insurance to Inspira prior to December 3, 2014.

11

**1.104** ~~1.102~~ *Ironshore Specialty Insurance.*  Ironshore Specialty Insurance Company solely in its capacity as issuer of, or in any other capacity that may arise from or be connected with, the Ironshore Policy and as an insurer to Inspira (and any other person(s) or entity(ies) that may be insured under the Inspira Ironshore Policy) and all of its directors, officers, members, shareholders, owners, principals, employees, attorneys, affiliates, predecessors, parents, subsidiaries, successors and assigns, each acting in their respective capacity as such.  For purposes of this Agreement, the affiliates of Ironshore Specialty Insurance are the following: Ironshore Insurance Services, LLC, Ironshore Holdings, (US), Inc., Ironshore Specialty Insurance Company, IronHealth, and Ironshore Indemnity.

**1.105** ~~1.103~~ *Juno Assurance.*  Juno Assurance, Ltd., solely in its capacity as issuer of the Juno Inspira Policies, and all of its directors, officers,  members, shareholders, owners, principals, employees, attorneys, predecessors, parents, subsidiaries, successors and assigns, each acting in their respective capacity as such.

**1.106** ~~1.104~~ *Juno Inspira Policies.*  (i) The Healthcare Professional Liability and Healthcare General Liability Insurance Policy issued by Juno Assurance to Inspira for the policy period of 11/1/2011 to 11/1/2012 (No. 2011HPLGL02), and (ii) any other known or unknown insurance policies issued by Juno Assurance to Inspira prior to December 3, 2014.

**1.107** ~~1.105~~ *Landmark.*  Landmark American Insurance Company and any of its directors, officers, members, shareholders, owners, principals, employees, attorneys, predecessors, successors and assigns, each acting in their respective capacity as such.

~~1.106~~ *~~Liberty Mutual.~~*  ~~Liberty Mutual Insurance, solely in its capacity as successor-in-interest to Netherlands Insurance and Peerless Insurance.~~

**1.108** ~~1.107~~ *Lexington Insurance.*  Lexington  Insurance  Company, solely in its capacity as issuer of, or in any other capacity that may arise from or be connected with, the Lexington Policy, and  as an insurer to Inspira (and any other additional insured under the Lexington  Inspira Policy) and Insight (and any other additional insured under the Lexington Insight Policy) and all of Lexington Insurance Company's directors, officers, members, shareholders, owners, principals, employees, attorneys, affiliates, predecessors, parents, subsidiaries, successors and  assigns, each acting in their respective capacity as such. For purposes of this  Plan, the affiliate of Lexington Insurance is the following: American International Group, Inc. and its direct and indirect subsidiaries.

**1.109** ~~1.108~~ *Lexington Insight Policy.*  Collectively, (i) the Insurance Policy issued by Lexington to Insight for the policy period of March 15, 2012 through April 13, 2013 (No. 6794285), (ii) the Insurance Policy issued by Lexington to Insight for the policy period of March 15, 2012 through April 13, 2013 (No. 6794284), (iii) and any other known or unknown insurance policies issued by Lexington to Insight prior to the Execution Date.

**1.110** ~~1.109~~ *Lexington Inspira Policy.*  (i) The Excess Healthcare Professional Liability and Healthcare Umbrella Liability Insurance Policy issued by Lexington Insurance to Inspira for the policy period of 11/1/2011 to 11/1/2012 (No. 6796471), and (ii) any other known

or unknown insurance policies issued by Lexington Insurance to Inspira prior to December 3, 2014.

**1.111** *Liberty Industries.* Liberty Industries, Inc. and all of its directors, officers, members, shareholders, owners, principals, employees, attorneys, predecessors, successors and assigns, each acting in their respective capacity as such.

**1.112** *Liberty Industries Policies.* The Great American Policies.

**1.113** *Liberty Industries Settlement Agreement.* The Settlement and Release Agreement dated as of April 16, 2015, by and among the Chapter 11 Trustee, Liberty Industries and Great American.

**1.114** *Liberty Industries Settlement Payment.* Cash in the amount of $1,000,000 paid to the Estate pursuant to the Liberty Industries Settlement Agreement.

**1.115** *Liberty Mutual.* Liberty Mutual Insurance, solely in its capacity as successor-in-interest to Netherlands Insurance and Peerless Insurance.

**1.116** ~~1.110~~ *Local Rules.* The Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Massachusetts, or, in the singular, a specific Local Rule of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Massachusetts.

**1.117** ~~1.111~~ *Maxum.* Maxum Indemnity Company, solely in its capacity as issuer of the Maxum Policies.

**1.118** ~~1.112~~ *Maxum Policies.* The Commercial Excess Liability Policies Maxum issued to NECC, as named insured, under policy number EXC 6013127-01 for the period of June 25, 2010 to January 1, 2012, and the Commercial Excess Liability Policy Maxum issued to NECC, as named insured, under policy number EXC 6013127-02 for the period of January 1, 2012 to January 1, 2013.

**1.119** ~~1.113~~ *MDL Court.* The United States District Court, District of Massachusetts, where the MDL Proceeding is pending.

**1.120** ~~1.114~~ *MDL Proceeding.* The multidistrict litigation in the MDL Court entitled *In re New England Compounding Pharmacy, Inc., Products Liability Litigation*, designated as Case No. 1:13-md-2419-RWZ, formed pursuant to the Order of February 12, 2013, by the Judicial Panel on Multidistrict Litigation, pending in the MDL Court.

**1.121** ~~1.115~~ *Miscellaneous Secured Claims.* Any claims against the Debtor secured by Collateral.

**1.122** ~~1.116~~ *Medicaid.* Any medical assistance program jointly financed by the federal and state governments, codified at 42 U.S.C. § 1396, *et seq.*, and the regulations promulgated thereunder at 42 C.F.R. § 435.2, *et seq.*

**1.123** 1.117 *Medicare Act.*  The Medicare Secondary Payer Act, codified at 42 U.S.C. § 1395y, and the regulations promulgated thereunder, codified at 42 C.F.R. § 411.1, *et seq.*

**1.124** 1.118 *Medical Mutual*.  Medical Mutual of North Carolina solely in its capacity as issuer of, or in any other capacity that may arise from or be connected with, the Medical Mutual Policy and as an insurer to IGPM (and any other person(s) or entity(ies) that may be insured under the Medical Mutual Policy) and all of its directors, officers, members, shareholders, owners, principals, employees, attorneys, affiliates, predecessors, parents, subsidiaries, successors and assigns, each acting in their respective capacity as such.

**1.125** 1.119 *Medical Mutual Policy*.  The Physicians' and Surgeons' Professional Liability Insurance Policy issued by Medical Mutual to IGPM for the policy period of 3/1/2012 to 3/1/2013 (No. #PG116945), and any other known or unknown insurance policies issued by Medical Mutual to IGPM prior to the Execution Date.

**1.126** 1.120 *MPA.*  Methylprednisolone acetate.

**1.127** 1.121 *National Contributing Parties.*  The Entities listed at Schedule 1.121 1.127 hereto.

**1.128** 1.122 *National Settlement Administrator(s).*  The person(s) appointed in and by the Claims Resolution Facility Procedures to facilitate, effectuate and implement the purpose and provisions of the Claims Resolution Facility.

**1.129** 1.123 *National Settlement Agreements.*  Any The settlement agreement entered into agreements between the Chapter 11 Trustee and one or more National Contributing Parties on or before the date on which the Plan Supplement is filed, including, without limitation the Ameridose Settlement Agreement, the ARL Settlement Agreement, the GDC Settlement Agreement, the Liberty Industries Settlement Agreement, the PMIC/Maxum Settlement Agreement, the UniFirst Settlement Agreement and the Victory Settlement Agreement; *provided*, *however*, that National Settlement Agreements shall not include the Shareholder Settlement Agreement.

**1.130** 1.124 *National Settlement Payments.*  Any payment funded or to be paid to the Estate by a National Contributing Party pursuant to a National Settlement Agreement, including, without limitation, the Ameridose Settlement Payment, the ARL Settlement Payment, the GDC Settlement Payment, the Liberty Industries Settlement Payment, the PMIC/Maxum Settlement Payment, the UniFirst Settlement Payment and the Victory Settlement Payment; *provided*, *however*, that National Settlement Payments shall not include the Shareholder Settlement Monies.

**1.131** 1.125 *National Union*. National Union Fire Insurance Company of Pittsburg, PA, solely in its capacity as UniFirst's insurer under the National Union Policies.

**1.132** 1.126 *National Union Polices*. The General Liability Insurance Policy No. GL 244-96-66 issued by National Union to UniFirst for the policy period 10/01/2011-10/01/2012

and Policy No. GL 714-64-38 issued by National Union to UniFirst for the policy period 10/01/2012-10/01/2013.

**1.133** ~~1.127~~ *NECC.* Debtor New England Compounding Pharmacy, Inc. a/k/a New England Compounding Company.

**1.134** ~~1.128~~ *NECC Claims*. The term NECC Claims shall have the meaning set forth in the Shareholder Settlement Agreement

**1.135** ~~1.129~~ *NECC Parties*. The term NECC Parties shall have the meaning set forth in the Shareholder Settlement Agreement.

**1.136** ~~1.130~~ *NECC Policies*. The Maxum Policies and the PMIC NECC Policies.

**1.137** ~~1.131~~ *Netherlands Insurance*. The Netherlands Insurance Company, solely in its capacity as an issuer of the Netherlands Victory Insurance Policy, and all of its directors, officers, members, shareholders, owners, principals, employees, attorneys, predecessors, successors and assigns, each acting in their respective capacity as such, and Liberty Mutual.

**1.138** ~~1.132~~ *Netherlands Victory Policies*. (i) The Commercial General Liability Insurance Policy issued by Netherlands Insurance to Victory for the policy period of 7/2/12 – 7/2/13 (No. CBP8690539), and (ii) any other known or unknown insurance policies issued by Netherlands Insurance to Victory prior to November 11, 2014.

**1.139** ~~1.133~~ *Non-Insurer Contributing Parties*. Collectively, the Shareholders, the Shareholder and Affiliate Released Parties, Ameridose, ARL, GDC, the Individual GDC Insureds, Liberty Industries, Victory, High Point, IGPM, Insight ~~and~~, Inspira, and UniFirst.

**1.140** ~~1.134~~ *Non-Tort Claims*. Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, Miscellaneous Secured Claims, General Unsecured Claims and Subordinated Claims.

**1.141** ~~1.135~~ *North American Elite*. North American Elite Insurance Company, solely in its capacity as UniFirst's insurer under the North American Elite Policies.

**1.142** ~~1.136~~ *North American Elite Policies*. The Insurance Policy No. H2U0000415-00 issued by North American Elite to UniFirst for the policy period 10/01/11-10/01/12 and Policy No. H2U0000415-01 issued by North American Elite to UniFirst for the policy period 10/01/12-10/01/13.

**1.143** ~~1.137~~ *Objection Deadline.* The date set forth in the order of the Bankruptcy Court by which a holder of a Claim or a holder of an Equity Interest or other party in interest may file an objection to confirmation of this Plan.

**1.144** ~~1.138~~ *Official Committee.* The Official Committee of Unsecured Creditors appointed by the U.S. Trustee in the Chapter 11 Case pursuant to section 1102 of the Bankruptcy

15

Code, including the members thereof and each of their respective attorney representatives, each in his or her capacity as such.

**1.145** ~~1.139~~ *Other Contributing Parties.*   The National Contributing Parties, the Provider Contributing Parties, and any and all Persons or Entities released under the National Settlement Agreements and the Provider Settlement Agreements, including but not limited to, the Ameridose Parties, the GDC Released Parties, and the PMIC/Maxum Released Parties.

**1.146** ~~1.140~~ *Patient Lists.*   The lists required to be provided to the Chapter 11 Trustee, counsel to the Official Committee, and lead counsel to the Plaintiffs' Steering Committee pursuant to paragraph 2 of the Interim Bar Date Order.

**1.147** ~~1.141~~ *Peerless Insurance*.   Peerless Insurance Company, solely in its capacity as issuer of the Peerless Victory Insurance Policy, and all of its directors, officers, members, shareholders, owners, principals, employees, attorneys, predecessors, successors and assigns, each acting in their respective capacity as such, and Liberty Mutual.

**1.148** ~~1.142~~ *Peerless Victory Policies.* (i) The Commercial Umbrella Liability Insurance Policy issued by Peerless Insurance to Victory for the policy period of 7/2/12 − 7/2/13 (No. CU8691139), and (ii) any other known or unknown insurance policies issued by Peerless Insurance to Victory prior to November 11, 2014.

**1.149** ~~1.143~~ *Person.*   Person has the meaning set forth in section 101(41) of the Bankruptcy Code.

**1.150** ~~1.144~~ *Petition Date.*   December 21, 2012.

**1.151** ~~1.145~~ *PITWD Addendum*.   The confidential Personal Injury or Wrongful Death Claim Information Form required by the Bankruptcy Court pursuant to the Bar Date Order to be submitted by all creditors asserting a personal injury tort or wrongful death claim arising from exposure to NECC products.

**1.152** ~~1.146~~ *Plaintiffs' Steering Committee.*   The committee of plaintiffs' counsel appointed pursuant to order of the MDL Court entered on April 9, 2013, as may be amended by the MDL Court.

**1.153** ~~1.147~~ *Plan.*   This First Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc., as may be amended or modified from time to time.

**1.154** ~~1.148~~ *Plan Proponents.*   The Chapter 11 Trustee and the Official Committee.

**1.155** ~~1.149~~ *Plan Supplement*.   The supplemental ~~appendix~~appendices to this Plan, ~~to be filed no later than ten (10) days prior to the Disclosure Statement Hearing, which will~~filed on February 13, 2015 [Chapter 11 Case Docket No. 1123], February 19, 2015 [Chapter 11 Case Docket No. 1141], February 23, 2015 [Chapter 11 Case Docket No. 1167] and May 7, 2015 [Chapter 11 Case Docket No. 1288], which contain, among other things, draft documents, forms

of documents, term sheets or other instruments or signed copies, as the case may be, of the Plan Supplement Documents.

**1.156** ~~1.150~~ *Plan Supplement Documents*.  The documents, forms of documents, term sheets and instruments (including any amendments, supplements or modifications thereto) included in the Plan Supplement and which may be executed, delivered and/or performed in connection with the consummation of this Plan, including, without limitation, the Tort Trust Agreement, the Shareholder Escrow and Control Agreement, the Claims Resolution Facility Procedures, the Provider Claims Resolution Facility Procedures, if any, and the Settlement Agreements.

**1.157** ~~1.151~~ *Policies*.  The Ameridose Policies, the ARL Policy, the GDC Policies, the High Point Policy, the Insight Policies, the Inspira Policies, the Liberty Industries Policies, the NECC Policies, the UniFirst Policies and the Victory Policies.

**1.158** ~~1.152~~ *Post-Effective Date Debtor*.  The Debtor, from and after the Effective Date.

**1.159** ~~1.153~~ *Post-Confirmation Officer*.  Paul D. Moore in his capacity as sole post-confirmation officer of the Debtor or the Post-Effective Date Debtor, as applicable.

**1.160** ~~1.154~~ *PMIC*.  Pharmacists Mutual Insurance Company, solely in its capacity as issuer of the PMIC NECC Policies or the Ameridose Policies, as applicable.

**1.161** ~~1.155~~ *PMIC/Maxum Released Parties*.  All Persons or Entities released from Claims under the PMIC/Maxum Settlement Agreement.

**1.162** ~~1.156~~ *PMIC/Maxum Settlement Agreement*.  The Plan Support and Settlement Agreement dated as of May 2, 2014, by and among the Chapter 11 Trustee, PMIC, Maxum and the Individual NECC Insureds [Chapter 11 Case Docket No. 714-2], as approved by the Bankruptcy Court at Chapter 11 Case Docket No. 971.

**1.163** ~~1.157~~ *PMIC/Maxum Settlement Payment*.  Cash in the amount of $25,200,000 paid to the Estate pursuant to the PMIC/Maxum Settlement Agreement.

**1.164** ~~1.158~~ *PMIC NECC Policies*.  The Special Businessowners Policy PMIC issued to NECC, as named insured, under policy number BOP 0068490 07, the Commercial Umbrella/Excess Liability Policy PMIC issued to NECC as named insured under policy number UCL 0068490 07, both with a policy period of January 1, 2011 to January 1, 2012, the Special Businessowners Policy PMIC issued to NECC as named insured under policy number BOP 0068490 08, the Commercial Umbrella/Excess Liability Policy PMIC issued to NECC as named insured under policy number UCL 0068490 08, both with a policy period of January 1, 2012 to January 1, 2013 and the Individual Pharmacist Professional Liability Policies PMIC issued to Barry J. Cadden (Policy No. PHL 0072481), Lisa M. Conigliaro Cadden (Policy No. PHL 0072480), Glenn Chin (Policy No. PHL 0072483), C. Leary (Policy No. PHL 0122124), G. Svirskiy (Policy No. PHL 0096033), J. Keough (Policy No. PHL 0105223) and K. Chin (Policy No. PHL 0096806) as named insureds.

17

**1.165** **1.159** *Preferred Mutual.* Preferred Mutual Insurance Company, solely in its capacity as issuer of the GDC Policies, and any of its directors, officers, members, shareholders, owners, principals, employees, attorneys, predecessors, successors and assigns, each acting solely in its respective capacity as such.

**1.166** **1.160** *Priority Non-Tax Claim.* Any Claim, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment as specified in section 507(a)(3), (4), (5), (6), (7) or (9) of the Bankruptcy Code.

**1.167** **1.161** *Priority Tax Claim.* Any Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**1.168** **1.162** *Priority Claims.* Priority Non-Tax Claims and Priority Tax Claims.

**1.169** **1.163** *Pro Rata Share.* A proportionate share, so that the ratio of the consideration distributed on account of an Allowed Claim in a Class to the amount of such Allowed Claim is the same as the ratio of the consideration distributed on account of all Allowed Claims in such Class to the amount of all Allowed Claims in such Class.

**1.170** **1.164** *Protocol Order.* The *Agreed-Upon Order Establishing Protocol for Settlement Negotiations and Communication* [Adversary Proceeding Docket No. 96] entered in the Adversary Proceeding.

**1.171** **1.165** *Provider Claims Resolution Facility(s).* The claims resolution facility or facilities, if any, established by the Provider Claims Resolution Facility Procedures.

**1.172** **1.166** *Provider Claims Resolution Facility Procedures.* The Provider Claims Resolution Facility Procedures substantially in the form(s) included in the Plan Supplement.

**1.173** **1.167** *Provider Contributing Parties.* The Entities listed on Schedule 1.167 1.173 hereto.

**1.174** **1.168** *Provider Settlement Administrator(s).* The person(s) to be appointed in and by the Provider Claims Resolution Facility Procedures to facilitate, effectuate and implement the purpose and provisions of the Provider Claims Resolution Facility(s).

**1.175** **1.169** *Provider Settlement Agreements.* The settlement agreement(s) entered into between the Chapter 11 Trustee and one or more Provider Contributing Parties on or before the date on which the Plan Supplement is filed, including, but not limited to, the High Point Settlement Agreement, the Insight Settlement Agreement, and the Inspira Settlement Agreement.

**1.176** **1.170** *Provider Settlement Payments.* Any payment made or to be made to the Estate by a Provider Contributing Party pursuant to a Provider Settlement Agreement.

**1.177** **1.171** *Resident Tort Trustee.* The Delaware resident trustee appointed by the Chapter 11 Trustee pursuant to the Tort Trust Agreement, including any successor.

**1.178** ~~1.172~~ *Schedules.*  The schedules of assets and liabilities and the statements of financial affairs filed by the Debtor under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules as such schedules and statements have been or may be supplemented or amended through the Confirmation Date.

**1.179** ~~1.173~~ *Settlement Administrators*.  The National Settlement Administrator(s) and the Provider Settlement Administrator(s).

**1.180** ~~1.174~~ *Settlement Agreements.*  The National Settlement Agreements, the Provider Settlement Agreements, and the Shareholder Settlement Agreement.

**1.181** ~~1.175~~ *Settling National Insurers*.  PMIC, Maxum and Preferred Mutual, collectively, solely in their capacities as insurers of NECC, the Individual Insureds, or GDC, as applicable.

**1.182** ~~1.176~~ *Shareholder and Affiliate Released Parties*.  The Contributor and Affiliate Released Parties, as that term is defined in the Shareholder Settlement Agreement.

**1.183** ~~1.177~~ *Shareholder Escrow Accounts*.  The escrow accounts established in the Shareholder Escrow and Control Agreement.

**1.184** ~~1.178~~ *Shareholder Escrow Agent*.  Citizens Bank, N.A., as escrow agent appointed pursuant to the Shareholder Escrow Agreement.

**1.185** ~~1.179~~ *Shareholder Escrow and Control Agreement*.  The Escrow and Control Agreement dated as of August 20, 2014, by and among the Chapter 11 Trustee, the Shareholders and the Shareholder Escrow Agent, substantially in the form included in the Plan Supplement.

**1.186** ~~1.180~~ *Shareholder Settlement Agreement*.  The Plan Support and Funding Agreement dated as of May 2, 2014 by and among the Chapter 11 Trustee, on the one hand, and the Shareholders on the other hand ~~([~~Chapter 11 Case Docket No. 712-2~~)]~~, as approved by the Bankruptcy Court at Chapter 11 Case Docket No. 972.

**1.187** ~~1.181~~ *Shareholder Settlement Monies*.  The monies from time to time in the Shareholder Escrow Accounts, including, but not limited to, the Tax Contributions (as defined in the Shareholder Settlement Agreement).

**1.188** ~~1.182~~ *Shareholder Settlement Non-QSF Accounts*.  The Shareholder Escrow Accounts other than the Shareholder Settlement QSF Account, if any.

**1.189** ~~1.183~~ *Shareholder Settlement Non-QSF Monies.*  The Shareholder Settlement Monies, if any, from time to time in the Shareholder Settlement Non-QSF Accounts.

**1.190** ~~1.184~~ *Shareholder Settlement QSF Account*.  The qualified settlement fund, if any, established pursuant to the Shareholder Escrow and Control Agreement, which may pay any expenses permitted to be paid by a qualified settlement fund under applicable law.

19

**1.191** **1.185** *Shareholder Settlement QSF Monies.*  The Shareholder Settlement Monies from time to time in the Shareholder Settlement QSF Account.

**1.192** **1.186** *Shareholders.*  Barry Cadden, Lisa Conigliaro Cadden, Gregory Conigliaro and Carla Conigliaro.

**1.193** **1.187** *Subordinated Claims*.  All general unsecured claims, whenever arising, (i) for reimbursement, contribution or indemnity of an Entity that is liable with the Debtor on, or that has secured, the Claim of a Tort Claimant, or (ii) which are subordinated to other general unsecured claims by agreement or by applicable law.

**1.194** **1.188** *Supplemental Bar Date.*  May 5, 2014.

**1.195** **1.189** *Supplemental Bar Date Notice.*  The *Notice of Supplemental Deadline for Filing Claims* in the Chapter 11 Case, dated March 5, 2014.

**1.196** **1.190** *Supplemental Bar Dat*e *Order.*  The endorsed order dated February 24, 2014 [Chapter 11 Case Docket No. 699] establishing the Supplemental Bar Date.

**1.197** **1.191** *Tax Code.*  Title 26 of the United States Code, as amended from time to time.

**1.198** **1.192** *Tennessee Settlement Agreement.*  The *Proposed Settlement Agreement and Order* dated as of May 12, 2014 among the Chapter 11 Trustee and Barry J. Cadden on one hand, and the Tennessee Board of Pharmacy, on the other hand [Chapter 11 Case Docket No. 729-2], as approved by the Bankruptcy Court at Chapter 11 Case Docket No. 973.

**1.199** **1.193** *Tort Claims.*  Any and all Claims, causes of action, civil actions and demands for or based on personal injury or wrongful death relating to the compounding, preparation, design, marketing, sale, distribution, fabrication, advertising, supply, production, formulation, use, administration, labeling or ingestion of any product produced, sold or distributed by the Debtor, including, but not limited to, the Drugs (notwithstanding the identity of any subsequent marketer, distributor, retailer, wholesaler, other seller or administrator of such product), including, but not limited to, those civil actions pending in the MDL Proceeding or in any state court; *provided*, *however*, that Tort Claims shall not include Estate Causes of Action as against the Shareholders and Affiliate Released Parties, including, without limitation, the Estate Claims asserted against the Shareholders and Affiliate Released Parties in the Adversary Proceeding.

**1.200** **1.194** *Tort Claimants.*  The holders of Allowed Tort Claims, or, in the singular, one such holder.

**1.201** **1.195** *Tort Trust.*  The trust established pursuant to Section 5.03 of this Plan.

**1.202** **1.196** *Tort Trustee.*  The trustee of the Tort Trust appointed by the Official Committee and the Plaintiffs' Steering Committee pursuant to the Tort Trust Agreement in

accordance with this Plan, to be identified in the Confirmation Order, or any successor.  If the Official Committee and the Plaintiffs' Steering Committee are unable to reach an agreement as to the selection of the Tort Trustee by thirty (30) days before the Confirmation Hearing, then the selection shall be made by the District Court.

**1.203** ~~1.197~~ *Tort Trust Advisory Board.*  A three (3) member committee comprised of Kimberly Dougherty, Fredric L. Ellis and Harry M. Roth.

**1.204** ~~1.198~~ *Tort Trust Agreement.*  The Tort Trust Agreement to be entered into by the Estate Representative, the Tort Trustee and the Resident Tort Trustee, executed in connection with this Plan, to be included in the Plan Supplement.

**1.205** ~~1.199~~ *Tort Trust Assets.*  The Initial Tort Trust Assets and the Additional Tort Trust Assets.

**1.206** ~~1.200~~ *Tort Trust Beneficiaries.*  Holders of Allowed Tort Claims, including Entities that are subrogated to the rights of such a Holder of an Allowed Tort Claim pursuant to section 4.04(iii) hereof.

**1.207** ~~1.201~~ *Tort Trust Certificate.*  The Certificate of Trust forming the Tort Trust.

**1.208** ~~1.202~~ *Tort Trust Documents.*  The Tort Trust Agreement, the Tort Trust Certificate, the Claims Resolution Facility Procedures, and the Provider Claims Resolution Facility Procedures.

**1.209** ~~1.203~~ *Treasury Regulations.*  Regulations (including temporary and proposed) promulgated under the Tax Code by the United States Treasury Department, as amended from time to time.

**1.210** ~~1.204~~ *UniFirst.*  UniFirst Corporation and all of its affiliates, subsidiaries, directors, officers, members, shareholders, owners, principals, employees, attorneys, predecessors, successors and assigns, each acting in their respective capacities as such.

**1.211** ~~1.205~~ *UniFirst Policies.*  The National Union Policies and the North American Elite Policies.

**1.212** ~~1.206~~ *UniFirst Settlement Agreement.*  The Settlement and Release Agreement dated as of February ~~——~~,23, 2015, by and among the ~~NECC~~Chapter 11 Trustee, UniFirst, National Union and North American Elite.

**1.213** ~~1.207~~ *UniFirst Settlement Payment.*  Cash in the amount of $30,500,000 paid to the Estate pursuant to the UniFirst Settlement Agreement.

**1.214** ~~1.208~~ *Unimpaired.*  Any Class that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

21

**1.215** ~~1.209~~ *U.S. Trustee.*  The Office of the United States Trustee for Region 1.

**1.216** ~~1.210~~ *Victory.*  Victory Mechanical Services, Inc., Victory Heating & Air Conditioning Co., Inc., Victory LLC, Victory Heating and Air Conditioning Business Trust, Victory Mechanical Services Business Trust, and all of their respective directors, officers, members, shareholders, owners, principals, employees, attorneys, predecessors, successors and assigns, each acting in their respective capacity as such.

**1.217** ~~1.211~~ *Victory Policies.*  The Netherlands Victory Policies and the Peerless Victory Insurance Policies.

**1.218** ~~1.212~~ *Victory Settlement Agreement.*  That certain Settlement and Release Agreement by and among the Chapter 11 Trustee, Victory, Netherlands Insurance, and Peerless Insurance, dated as of November 11, 2014.

**1.219** ~~1.213~~ *Victory Settlement Payment.*  Cash in the amount of $5,500,000, to be paid to the Estate pursuant to the Victory Settlement Agreement, plus any additional amounts to be paid to the Estate pursuant to the Victory Settlement Agreement.

## B. Interpretation; Application of Definitions and Rules of Construction.

**1.220** ~~1.214~~ *Rules of Interpretation.*  The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained therein.  Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter.  A term used herein that is not defined herein shall have the meaning assigned to that term in the Bankruptcy Code.  The rules of construction contained in section 102 of the Bankruptcy Code shall apply to this Plan.  The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.

**1.221** ~~1.215~~ *Computation of Time.*  In computing any period of time prescribed or allowed by this Plan, the provisions of the Bankruptcy Rule 9006(a) shall apply.

**1.222** ~~1.216~~ *Governing Law.*  Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, and subject to the provisions of any contract, agreement or other document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the Commonwealth of Massachusetts, without giving effect to the principles of conflicts of law thereof.

## ARTICLE II.
## ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims, as described below, have not been classified.

**2.01** *Administrative Expense Claims.* Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a different treatment or as otherwise provided herein, on the later of the Effective Date and the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is reasonably practicable, the Chapter 11 Trustee or the Post-Confirmation Officer (as may be applicable from time to time) shall pay to each holder of an Allowed Administrative Expense Claim, in full satisfaction of such Claim, an amount in Cash equal to the Allowed amount of such Claim. Notwithstanding the foregoing, Administrative Expense Claims that represent liabilities incurred by the Chapter 11 Trustee in the ordinary course of the Debtor's business during the Chapter 11 Case shall be paid in the ordinary course of business and in accordance with any terms and conditions of any agreements relating thereto.

**2.02** *Deadlines to Assert Administrative Expense Claims.*

(i) **Pre-Confirmation Date Administrative Expense Claims.** Except for applications by professionals under section 330 of the Bankruptcy Code and fees payable pursuant to 28 U.S.C. § 1930, all requests for payment of Administrative Expense Claims for which an earlier deadline has not been previously set or imposed by Local Rule 3002-1 shall be filed and served on each of the Plan Proponents no later than thirty (30) days after entry of the Confirmation Order.

(ii) **Professional Fees.** All applications by professionals retained pursuant to sections 327, 328 and 1103 of the Bankruptcy Code for allowance and payment of fees and reimbursement of expenses pursuant to section 330 of the Bankruptcy Code for final compensation for services rendered and reimbursement of expenses incurred in connection with this Chapter 11 Case shall be filed no later than sixty (60) days after the Effective Date. Such fee applications shall seek approval of all fees and expenses incurred or to be incurred by such professionals on or before the Effective Date and may include an estimate of fees and costs incurred after the Effective Date, including fees and expenses incurred in preparation and resolution of the fee application. Notwithstanding anything to the contrary contained in the Plan, the Settlement Agreements or the Confirmation Order, the Chapter 11 Trustee's and the Official Committee's post-petition professionals shall have the right to appear and be heard on all matters related to applications for final compensation of professional Persons for services rendered and reimbursement of expenses incurred on or before the Effective Date.

(iii) **Statutory Fees.** All fees payable pursuant to 28 U.S.C. § 1930 shall be paid in accordance with Section 12.07 of this Plan without the need to file any request for payment.

(iv)    **Effect of Failure to Timely File Claim or Request for Payment.**  Any holders of Administrative Expense Claims who are required to file an application or request for payment of such Claims and who do not file such application or request by the applicable deadline shall be forever barred from asserting such Administrative Expense Claim against the Debtor or the Estate, or receiving any distribution on account of such Claim under this Plan.

2.03    *Priority Tax Claims.*  Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, on the later of the Effective Date and the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon thereafter as is reasonably practicable, the Post-Confirmation Officer shall pay to each holder of an Allowed Priority Tax Claim, in full satisfaction of such Claim, an amount in Cash equal to the Allowed amount of such Claim.

## ARTICLE III.
## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

3.01    *Classification of Claims and Equity Interests.*  The classification of the Claims and Equity Interests listed below shall be for all purposes, including voting, confirmation and distribution pursuant to this Plan.

| Class | Description | Status | Entitled to Vote |
|-------|-------------|--------|------------------|
| Class A | Priority Non-Tax Claims | Unimpaired | Deemed to have accepted this Plan |
| Class B | Miscellaneous Secured Claims | Unimpaired | Deemed to have accepted this Plan |
| Class C | General Unsecured Claims | Impaired | Entitled to Vote |
| Class D | Tort Claims | Impaired | Entitled to Vote |
| Class E | Subordinated Claims | Impaired | Entitled to Vote |
| Class F | Equity Interests | Unimpaired | Deemed to have accepted this Plan |

## ARTICLE IV.
## TREATMENT OF CLAIMS AND EQUITY INTERESTS

4.01    *Class A - Priority Non-Tax Claims.*  Allowed Priority Non-Tax Claims in Class A are Unimpaired.  Except to the extent that a holder of an Allowed Priority Non-Tax Claim agrees to a different treatment of such Claim, on the later of the Effective Date and the date such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, or as soon thereafter as is

24

reasonably practicable, each holder of an Allowed Priority Claim shall receive, in complete settlement, satisfaction and discharge of its Class A Claim, an amount in Cash equal to the Allowed amount of such Priority Non-Tax Claim.

**4.02    *Class B - Miscellaneous Secured Claims.*** Allowed Miscellaneous Secured Claims in Class B are Unimpaired.  Except to the extent that a holder of an Allowed Miscellaneous Secured Claim agrees to a different treatment of such Claim, on the later of the Effective Date and the date such Miscellaneous Secured Claim becomes an Allowed Miscellaneous Secured Claim, or as soon thereafter as is reasonably practicable, each holder of an Allowed Miscellaneous Secured Claim shall receive, in complete settlement, satisfaction and discharge of its Class B Claim, at the Estate Representative's election, (i) payment in full in Cash of such holder's Allowed Miscellaneous Secured Claim, (ii) the Debtor's interest in the Collateral securing such holder's Allowed Miscellaneous Secured Claim or (iii) such other treatment rendering such holder's Allowed Miscellaneous Secured Claim Unimpaired.

**4.03    *Class C - General Unsecured Claims.*** Allowed General Unsecured Claims in Class C are Impaired.  On the later of the Effective Date and the date such General Unsecured Claim becomes an Allowed General Unsecured Claim, or as soon thereafter as is reasonably practicable, each holder of an Allowed General Unsecured Claim shall receive, in complete settlement, satisfaction and discharge of its Class C Claim, its Pro Rata Share of the Class C Cash.

**4.04    *Class D - Tort Claims*.**

(i)    Tort Claims in Class D are Impaired.  Each Tort Claimant shall receive, in complete settlement, satisfaction and discharge of his or her Allowed Tort Claim, a share of the beneficial interests in the Tort Trust.

(ii)    Except as otherwise provided herein, each Tort Claimant remains entitled to any recovery from third parties or liability insurance proceeds, to the extent any such third parties are not released by or protected under the injunction pursuant to this Plan, that may be liable on or otherwise available to satisfy such Tort Claims in whole or in part; *provided*, *however*, that notwithstanding anything herein or in the Tort Trust Documents to the contrary, to the extent that (a) a Tort Claimant realizes a recovery from any third party, other than in accordance with this Plan and pursuant to the Tort Trust Agreement, on account of the Tort Claimant's Tort Claim, and (b) such third party has filed a timely proof of claim against the Estate for contribution or indemnity based in whole or in part on its actual or potential liability obligations to such Tort Claimant, (x) such third party's payment to such Tort Claimant shall be presumed to be solely on account of that third party's own liability to such Tort Claimant, and shall not be deemed to be a payment of the Tort Claim in full within the meaning of section 509(c) of the Bankruptcy Code until so agreed by the Tort Trustee or otherwise so determined by the Bankruptcy Court, and (y) any distribution from the Tort Trust to which such Tort Claimant would otherwise be entitled shall be reserved until such time as the third party's claim is resolved.

**(iii)** An Entity that is liable with the Debtor on, or that has secured, an Allowed Tort Claim, and that pays such Allowed Tort Claim in full, shall, to the extent provided by section 509 of the Bankruptcy Code, be subrogated to the rights of the holder of such Allowed Tort Claim under and for purposes of this Plan, and such subrogated Claim shall be treated as a Class D Claim in accordance with this Plan, and to the extent that the Entity's payment of the Allowed Tort Claim is not a payment in full, such Entity shall be treated in accordance with section 509 of the Bankruptcy Code, including, but not limited to, subordination of such Entity's Claim(s) in accordance therewith.

**(iv)** *Holders of Class D Claims may be required to submit additional documentation regarding their Claim as provided by the Claims Resolution Facility Procedures and, if applicable, the Provider Claims Resolution Facility Procedures.* **HOLDERS OF CLASS D CLAIMS SHALL BE SUBJECT TO RELEASES AND INJUNCTIONS PRECLUDING PURSUIT OF ANY CLAIM AGAINST CERTAIN PARTIES (INCLUDING THE PARTIES DESCRIBED IN SECTION 3.4 OF THE DISCLOSURE STATEMENT AND SCHEDULES ~~1.121~~1.127 AND ~~1.167~~1.173 OF THIS PLAN) IN ACCORDANCE WITH SECTIONS 10.05 AND 10.06 HEREOF.**

**4.05** *Class E - Subordinated Claims.* Claims in Class E are Impaired. Subordinated Claims in Class E shall be, and hereby are, automatically subordinated by confirmation of this Plan for purposes of distribution under this Plan to other general unsecured claims, specifically, Class D Claims and Class C Claims, without the need for further order or notice. Each holder of an Allowed Class E Claim shall be deemed to have exchanged such Claim for a Pro Rata Share of Class E Cash, if any, in full satisfaction of such Claim. It is not anticipated that holders of Class E Claims will receive any distributions under this Plan. *EXCEPT AS PROVIDED PURSUANT TO SEPARATE ORDER OR AGREEMENT, CERTAIN HOLDERS OF CLASS E CLAIMS SHALL BE SUBJECT TO RELEASES AND INJUNCTIONS PRECLUDING PURSUIT OF ANY CLAIM, INCLUDING CLASS E CLAIMS, AGAINST CERTAIN PARTIES (INCLUDING THE PARTIES DESCRIBED IN SECTION 3.4 OF THE DISCLOSURE STATEMENT AND SCHEDULES ~~1.121~~1.127 AND ~~1.167~~1.173 OF THIS PLAN) IN ACCORDANCE WITH SECTIONS 10.05 AND 10.06 HEREOF.*

**4.06** *Class F - Equity Interests.* Equity Interests are Unimpaired. Equity Holders shall (i) retain, albeit without any rights of control over the Debtor, the Post-Effective Date Debtor, the Estate, or any of their officers or directors, including the Post-Confirmation Officer, or any other rights generally afforded to Interests, their respective Interests in the Debtor to the extent they are entitled to retain such interests under the Shareholder Settlement Agreement, but (ii) shall receive no distributions under this Plan on account of the same.

## ARTICLE V.
## SETTLEMENT OF TORT CLAIMS
## AND THE NECC TORT TRUST

**5.01** *Settlement and Compromise.* To the extent any Settlement Agreements have not been previously approved by the Bankruptcy Court, the entry of the Confirmation Order shall constitute approval of such Settlement Agreements by the Bankruptcy Court and the Bankruptcy Court's finding that, as required under the applicable provisions of the Bankruptcy Code and

Bankruptcy Rules, the Settlement Agreements are in the best interest of the Debtor, the Estate and all holders of Claims in the Chapter 11 Case, are fair, equitable and reasonable, and have been entered into in good faith by all parties thereto.  Upon the occurrence of the conditions to effectiveness set forth in each of the Settlement Agreements, the Settlement Agreements shall be binding and enforceable against the parties to the Settlement Agreements in accordance with their terms.  To the extent not previously approved by the Bankruptcy Court, copies of the Settlement Agreements (without signature pages) will be included in the Plan Supplement, and the provisions thereof are incorporated into this Plan, as if the same were fully set forth herein.

### 5.02    *Exhaustion of Insurance Policies.*

(i)    On the Effective Date, the NECC Policies shall be deemed completely exhausted and any and all of PMIC's and Maxum's obligations under the NECC Policies shall be, and are deemed to be, extinguished.

(ii)    On the Effective Date, the Ameridose Primary Policies shall be deemed completely exhausted and any and all of PMIC's obligations under the Ameridose Policies shall be, and are deemed to be, extinguished.

**5.03    *Execution of Tort Trust Agreement.***  On or before the Effective Date, the Estate Representative, on behalf of the Debtor and on behalf of the Tort Trust Beneficiaries and holders of Allowed Class E Claims, the Tort Trustee and the Resident Tort Trustee shall execute the Tort Trust Agreement, and shall perform all other necessary steps to establish the Tort Trust.

**5.04    *Purpose of Tort Trust.***  The Tort Trust shall be established for the sole purpose of implementing this Plan on behalf of, and for the benefit of, Tort Trust Beneficiaries and holders of Allowed Class E Claims, and to serve as a mechanism for liquidating, converting to Cash and distributing the Tort Trust Assets for the benefit of Tort Trust Beneficiaries and holders of Allowed Class E Claims, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purposes of the Tort Trust. The Tort Trust is organized and established as a trust pursuant to which the Tort Trustee, subject to the terms and conditions contained in the Tort Trust Agreement and in this Plan, is to hold the Tort Trust Assets and dispose of the same in accordance with the Tort Trust Agreement and this Plan in accordance with Treasury Regulation section 301.7701-4(d).

**5.05    *Assets of the Tort Trust.***  The Tort Trust shall consist of (i) the Initial Tort Trust Assets, which the Estate Representative shall deliver, transfer or cause to be delivered or transferred, as applicable, to the Tort Trust, (ii) the Additional Tort Trust Assets, which, following the Confirmation Date and as soon after receipt as is reasonably practicable, the Estate Representative shall deliver or cause to be delivered to the Tort Trust, and (iii) any additional assets disbursed to the Tort Trust from the Shareholder Settlement QSF Account or the Shareholder Settlement Non-QSF Accounts.

**5.06    *Governance of the Tort Trust.***  The Tort Trust will be administered by the Tort Trustee.  Subsequent appointments of Tort Trustee(s) shall be made in accordance with the

provisions of the Tort Trust Agreement and this Plan.  Decisions with respect to all matters shall be made by the Tort Trustee, subject to the terms of the Tort Trust Agreement.  The Tort Trust Agreement shall govern the removal of any Tort Trustee and appointment of any successor Tort Trustee.  The Tort Trust Agreement specifies that the Tort Trustee shall be a resident of the United States.

      **5.07**    ***Role of the Tort Trustee.***  In furtherance of, and consistent with the purpose of, the Tort Trust and this Plan, the Tort Trustee shall, subject to the terms of this Plan and the Tort Trust Agreement, (i) have the power and authority to hold, manage, sell and distribute the Tort Trust Assets as set forth herein and in the Tort Trust Agreement, (ii) have the power and authority to hold, manage, sell and distribute Cash or non-Cash Tort Trust Assets obtained through the exercise of its power and authority, (iii) have the power and authority to investigate, assert, prosecute and resolve, in the names of the Debtor and/or the name of the Tort Trust, the Estate Causes of Action in its sole and absolute discretion and (iv) have the power and authority to perform such other functions as are provided in this Plan or Tort Trust Agreement.  The Tort Trustee shall be responsible for all decisions and duties with respect to the Tort Trust and the Tort Trust Assets, subject to the terms of this Plan and the Tort Trust Agreement.  Subject to the provisions of the Tort Trust Agreement, in all circumstances, the Tort Trustee shall act in furtherance of the purpose of the Tort Trust, and shall use commercially reasonable efforts to dispose of the Tort Trust Assets and to make timely distributions and not unduly prolong the duration of the Tort Trust.

      **5.08**    ***Investments.***  Investments of all assets, including monies, held in the Tort Trust shall be administered, subject to the limitations and provisions set forth in this Section 5.08, in view of the manner in which individuals of ordinary prudence, discretion and judgment would act in the management of their own affairs, and with the understanding that it is intended that distributions from the Tort Trust to Tort Trust Beneficiaries, which will have the effect of liquidating and terminating the Tort Trust, will commence immediately upon or soon after the Effective Date of the Plan and will be completed soon thereafter.  The Tort Trustee shall invest and reinvest the principal and income of the Tort Trust and keep the funds of the Tort Trust invested in interest-bearing accounts at an approved depository institution to be selected from the United States Trustee's List of Authorized Depositories for Bankruptcy Cases filed in Region One, dated July 26, 2013.  Each account shall be treated as a single fund without distinction between principal and income.  For purposes of this paragraph, "interest-bearing account" may include a money fund whose objectives are current income consistent with liquidity and low risk, the maintenance of a portfolio of high quality, short-term money market instruments, and maintenance of a constant $1.00 net asset value per share, to the extent the Tort Trustee determines that such fund is consistent with provisions for investment set forth in IRS Revenue Procedure 94-45 or any successor guidance issued by the IRS.  All investments shall be made so as to at all times provide sufficient liquidity to meet the anticipated cash needs of the Tort Trust as set forth herein.  In investing, reinvesting, exchanging, selling and managing the Tort Trust accounts, the Tort Trustee shall discharge its duties with respect to said accounts solely in the interest of the accomplishment of the purposes and objectives of the Tort Trust. Notwithstanding the foregoing, the Tort Trustee shall make continuing efforts to make timely distributions and not unduly prolong the duration of the Trust, consistent with the limitations set forth in IRS Revenue Procedure 94-45 or any applicable successor authority.

**5.09**   *Fees, Costs and Expenses of the Tort Trust*.

(i)   The Tort Trust shall pay all reasonable fees, costs and expenses of the Tort Trust that are (a) incurred in connection with the administration of the Tort Trust, the protection, preservation, liquidation and distribution of Tort Trust Assets, and the costs of investigating, prosecuting, resolving and/or settling any Claims of Tort Trust Beneficiaries and holders of Allowed Class E Claims (including but not limited to Disputed Claims or any Disputed Ownership Fund under Section 5.12 of this Plan), any tax liability imposed on the Tort Trust rather than on the Disputed Claims Reserve, Disputed Ownership Fund, or the Expense Fund, if any, and any fees, costs and expense of any and all professionals retained by the Tort Trustee and Persons to be compensated from the Claims Resolution Facility Procedures and the Provider Claims Resolution Facility Procedures, (b) obligations or other liabilities incurred or assumed by the Tort Trust (including but not limited to any Reserves established by the Tort Trust) (c) reasonably necessary to meet contingent liabilities and to maintain the value of the Tort Trust Assets during liquidation, and (d) reasonably necessary to satisfy any other obligations of the Tort Trust set forth in this Plan, the Confirmation Order or the Tort Trust Documents.

(ii)   Except as otherwise agreed by the Tort Trustee, the Tort Trustee shall be entitled to reasonable compensation in an amount consistent with that of similar functionaries in similar types of proceedings, and shall be reimbursed for his or her reasonable expenses, including travel expenses, reasonably required and incurred in the performance of his or her duties, in each case subject to the terms and provisions of this Plan, the Tort Trust Documents and any agreement by the Tort Trustee in connection with the Tort Trust.

(iii)   Subject to the terms and provisions of this Plan and the Tort Trust Documents, the Tort Trustee may retain and reasonably compensate counsel and other professionals on such ordinary and customary and commercially reasonable terms as the Tort Trust deems appropriate, without Bankruptcy Court approval.

(iv)   The Tort Trustee may retain such law firms or attorneys, experts, advisors, consultants, investigators, appraisers, auctioneers, corporate management services, or other Persons or professional firms as the Tort Trustee determines, in his or her sole discretion, are necessary, desirable or appropriate to aid in the performance of his or her duties, without the need for further order or notice. The Tort Trustee may pay or appropriate funds necessary to pay the professionals for services rendered and expenses incurred after the Effective Date without any need for filing fee applications under the Bankruptcy Code or approval of any court. The Tort Trustee may retain any professional who represented the Official Committee or the Chapter 11 Trustee in the Chapter 11 Case.

**5.10**   *Distribution of the Tort Trust Assets.*   The Tort Trustee shall distribute the proceeds of the Tort Trust Assets in accordance with this Plan, the Confirmation Order, the Tort Trust Documents, the Claims Resolution Facility Procedures, and the Provider Claims Resolution Facilities Procedures. In connection with such distributions, and except as provided below in this Section 5.10, the Tort Trust shall be responsible for all reimbursement and reporting obligations imposed by the Medicare Act for the repayment of any claim related conditional payments made under Medicare Part A, B, C and D ("**Conditional Payment**") or

29

any state's Medicaid or Workers Compensation statute. Before disbursing any Tort Trust Assets to any Tort Trust Beneficiary, the Tort Trustee may enter into a global resolution with the Centers for Medicare and Medicaid Services ("**CMS**") to reimburse all Medicare Part A, B, C and D liens that are subject to repayment for Conditional Payments made pursuant to 42 USC 1395y(b) and the accompanying Medicare Part C and Part D statutes and Medicare reporting obligations pursuant to 42 USC 1395y(b)(8).

Pursuant to 42 USC 1395y(b)(8), defined Responsible Reporting Entities ("**RREs**") must report claims to CMS in the manner and time specified by the statute.  If a global resolution with CMS cannot be reached, the Tort Trustee is authorized to enter into a separate agreement with each RRE to report on their behalf and if a separate agreement with an RRE is not reached, the Tort Trustee shall provide all of the information required for proper reporting under 42 USC 1395y(b)(8) to the appropriate RRE(s) or their authorized agent before disbursing any funds to any Tort Trust Beneficiary. If a global resolution is not reached and the Tort Trustee does not enter into an agency agreement with the appropriate RRE(s) before disbursing any funds to any Tort Trust Beneficiary (i) the Tort Trustee will collect the Tort Trust Beneficiary's first name, last name, date of birth, gender, social security number and any other information required for proper reporting of the claim to CMS pursuant to 42 USC 1395y(b)(8) and the Medicare Mandatory Insurer Reporting User Guide; and (ii) the Tort Trustee will provide all of the information required for reporting to the RREs within five (5) days of any Final Determination (as that term is used in the Claims Resolution Facility Procedures) of any claim.

In addition, if a global resolution with CMS cannot be reached, before disbursing any funds to any Tort Trust Beneficiary, (i) the Tort Trustee shall determine, or retain an appropriately qualified firm to determine whether any Conditional Payment has been made to or on behalf of the Tort Trust Beneficiary to whom a distribution of Tort Trust Assets will be made, and if any Conditional Payment has been made to or on behalf of such a Tort Trust Beneficiary, the Tort Trustee shall, within the time period called for by the Medicare Act, (a) reimburse the Medicare Trust fund, the appropriate Medicare plan or their authorized contractor for the appropriate amount and (b) submit the required information for the Tort Trust Beneficiary to the appropriate agency of the United States government; and (ii) the Tort Trustee shall otherwise comply with any requirements (including, but not limited to, any reporting or payment requirements) of any other federal or state governmental health insurance program and any state's Medicaid or Workers Compensation statute. Prior to the Tort Trustee reimbursing any Medicare Part A, B, C and D plan requiring repayment the Tort Trustee shall provide notice of the existence of any Conditional Payment(s) and/or other lien(s) to the Tort Trust Beneficiary and, if applicable, his or her attorney. The Tort Trust Beneficiary and/or his or her attorney may elect to negotiate the amount of the alleged conditional payments within 120 days of notice from the Tort Trustee, or prior to any deadline imposed by the Medicare Part A, B, C and D for reimbursement, whichever is sooner.  If the Tort Trust Beneficiary or his or her attorney elect not to negotiate the alleged lien amounts, or the other lien(s) are not resolved within the time periods specified, with the Tort Trust Beneficiary's consent, the Tort Trustee may utilize a firm with experience in resolving liens to satisfy the Tort Trust Beneficiary's obligations represented by the Conditional Payment(s) and/or other lien(s). Upon receiving confirmation of the final Medicare Part A, B, C and D amount requiring repayment, the Tort Trustee will reimburse the appropriate Medicare Part A, B, C and D plan or their authorized contractor.  Any payments made to resolve such obligations of the Tort Trust Beneficiary, together with the fees paid to the

lien resolution firm, shall be deducted from the Tort Trust Beneficiary's distribution of Tort Trust Assets prior to disbursement of the balance to the Tort Trust Beneficiary or his or her counsel.

The Trustee, the Post-Effective Date Debtor and the Post-Confirmation Officer shall have no responsibility or liability for (i) the creation, existence, operation or administration of the Tort Trust; (ii) any acts or omissions of the Tort Trustee in administering the Tort Trust; (iii) any reimbursement and reporting obligations under the Medicare Act or any state's Medicaid or Workers Compensation statute; or (iv) any payment or non-payment of Claims. The Tort Trust shall indemnify and hold harmless the Trustee, the Post-Effective Date Debtor and the Post-Confirmation Officer from any and all claims, losses, causes of action, demands, liabilities, expenses, fees, including, but not limited to, attorneys' fees, and costs of any kind arising from or relating to (i) the creation, existence, operation or administration of the Tort Trust; (ii) any acts or omissions of the Tort Trustee in administering the Tort Trust; (iii) any reimbursement or reporting obligations under the Medicare Act or any state's Medicaid or Workers Compensation statute or (iv) any payment or non-payment by the Tort Trust to any Tort Trust Beneficiary. Prior to making any Tort Trust Distribution, the Tort Trust shall retain sufficient funds to meet the fees, costs and expenses of the Tort Trust.

**5.11** *Resolving Liens Other than Imposed by the Medicare Act and States' Medicaid and Worker Compensation Statutes.*  Before disbursing any Tort Trust Assets to a Tort Trust Beneficiary, the Tort Trustee shall ensure that other liens that the Tort Trustee has received notice of have been resolved or have been otherwise satisfied.  To that end, the Tort Trustee shall provide notice of the existence of any such lien(s) to the Tort Trust Beneficiary and, if applicable, his or her attorney, and it shall be the Tort Trust Beneficiary's (or his or her attorney's) responsibility to resolve such lien(s) against the Tort Trust Beneficiary's anticipated distribution of Tort Trust Assets within 120 days of notice from the Tort Trustee.  If the lien has not been settled or otherwise resolved within this 120-day time period, with the Tort Trust Beneficiary's consent, the Tort Trustee may retain a firm with experience in resolving liens to satisfy the Tort Trust's Beneficiary's obligations as represented by the lien(s).  Any payments made to resolve such lien(s), together with the fees paid to the lien resolution firm, shall be deducted from the Tort Trust Beneficiary's distribution of Tort Trust Assets prior to disbursement of the balance.

**5.12** *Time of Tort Trust Distributions.*  Subject to the Claims Resolution Facility Procedures and the Provider Claims Resolution Facility Procedures, the Tort Trustee shall have the sole and absolute discretion to determine the timing of distributions of the proceeds of the Tort Trust in the most efficient and cost-effective manner possible; *provided*, *however*, that the Tort Trustee's discretion shall be exercised in a manner consistent with the express requirements of this Plan and the requirements of  taxation as a grantor trust under applicable IRS guidelines, rulings or other controlling authorities.

**5.13** *Tax Treatment of Tort Trust*.

(i) **Tort Trust Assets Treated as Owned by Certain Creditors.**  For all United States federal income tax purposes, all parties (including the Post-Confirmation Officer,

the Estate Representative, the Tort Trustee, the Resident Tort Trustee, the Settlement Administrator(s), Tort Trust Beneficiaries and holders of Allowed Class E Claims) shall treat the transfer of the Tort Trust Assets to the Tort Trust as (a) a transfer of the Tort Trust Assets (subject to any obligations related to those assets) directly to the Tort Trust Beneficiaries and holders of Allowed Class E Claims, followed by (b) the transfer by such Tort Trust Beneficiaries and holders of Allowed Class E Claims of such Tort Trust Assets (other than the Tort Trust Assets allocable to a Contested Claims Reserve or a Disputed Ownership Fund, each as described in Section 5.13(v) hereof) to the Tort Trust in exchange for beneficial interests in the Tort Trust.  Accordingly, the Tort Trust Beneficiaries and holders of Allowed Class E Claims shall be treated for federal income tax purposes (and, to the extent permitted, for state and local income tax purposes) as the grantors and owners of their respective shares of the Tort Trust Assets (other than the Tort Trust Assets allocable to an Expense Fund, if any, Contested Claims Reserve or a Disputed Ownership Fund as described in Section 5.13(v) hereof).

(ii)     **Exemption from Transfer Taxes.**  Pursuant to section 1146(a) of the Bankruptcy Code, the making or assignment of any lease or sublease, or the making or delivery of any instrument of transfer from the Estate, the Post-Effective Date Debtor or the Post-Confirmation Officer to the Tort Trust or any other Person or any government, governmental agency or any subdivision, department or other instrumentality thereof, pursuant to this Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.  Without limiting the foregoing, any issuance, transfer or exchange of a security or any making or delivery of an instrument of transfer pursuant to this Plan shall be exempt from the imposition and payment of any and all transfer taxes (including, but not limited to, any and all stamp taxes or similar taxes and any interest, penalties and addition to the tax that may be required to be paid in connection with the consummation of this Plan) pursuant to sections 1146(a), 505(a), 106 and 1141 of the Bankruptcy Code.

(iii)     **Tax Reporting.**

(1)     The Tort Trustee shall serve as the "Qualified Settlement Fund Administrator" of the Shareholder Settlement QSF Account and in such capacity shall have the exclusive responsibility and obligation to file all required tax returns and to otherwise administer all funds from or deposited into a "Qualified Settlement Fund" for the benefit of Tort Trust Beneficiaries.

(2)     The Tort Trustee shall file returns for the Tort Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a) and in accordance with this Section 5.13(iii).  The Tort Trustee shall also annually send to each record holder of a beneficial interest a separate statement setting forth the holder's share of items of income, gain, loss, deduction or credit and shall instruct all such holders to report such items on their federal income tax returns or to forward the appropriate information to the beneficial holders with instructions to report

such items on their federal income tax returns.  The Tort Trustee shall also file (or cause to be filed) any other statements, returns or disclosures relating to the Tort Trust that are required by any Governmental Unit.

(3)     Tort Trust taxable income or loss shall be allocated pro rata based on the total of Allowed and Disputed Claims of the Tort Trust Beneficiaries at the end of the taxable year.  Tort Trust taxable income or loss allocated to Disputed Claims shall be allocated to the Contested Claims Reserve or Disputed Ownership Fund (each as described in Section 5.13(v) hereof) (whichever applies), and reported to taxing authorities appropriately, as described further herein.

(4)     As soon as possible after the Effective Date, the Tort Trustee shall make a good faith valuation of the Tort Trust Assets.  Such valuation shall be made available from time to time, to the extent relevant, and used consistently by all parties (including the Estate Representative, the Official Committee, the Tort Trustee, the Tort Trust Beneficiaries and holders of Allowed Class E Claims) for all state and federal income tax purposes.  The Tort Trust also shall file (or cause to be filed) any other statements, returns or disclosures relating to the Tort Trust that are required by any governmental unit.

(5)     The Tort Trustee may request an expedited determination of taxes of the Tort Trust under Section 505 of the Bankruptcy Code for all returns filed for, or on behalf of, the Tort Trust for all taxable periods through the termination of the Tort Trust.

(iv)     **Withholding of Taxes and Reporting Related to Tort Trust Operations.**  The Tort Trustee shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all distributions made by the Tort Trust shall be subject to any such withholding and reporting requirements.  The Tort Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with any such withholding, payment, and reporting requirements.  All amounts properly withheld from distributions to a Tort Trust Beneficiary or holder of an Allowed Class E Claim as required by applicable law and paid over to the applicable taxing authority for the account of such Claimant shall be treated as part of the distributions to such Tort Trust Beneficiary or holder of an Allowed Class E Claim.  To the extent that the operation of the Tort Trust or the liquidation of the Tort Trust Assets creates a tax liability imposed on the Tort Trust, including the Contested Claims Reserve described in Section 5.13(v) hereof, the Tort Trust shall timely pay such tax liability and any such payment shall be considered a cost and expense of the operation of the Tort Trust payable without Bankruptcy Court order.  Any federal, state or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from distributions hereunder.  All Tort Trust Beneficiaries and holders of Allowed Class E Claims shall be required to provide any information necessary to effect the withholding of such taxes.

(v)     **Reporting Related to Contested Claims Reserve.**  Notwithstanding any other provision of the Tort Trust Agreement to the contrary, subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary, the Tort Trustee may treat any Tort Trust Asset allocable to, or retained on account of, a "Contested Claims Reserve" as held by one or more discrete Entities for federal, and state and local, income

tax purposes, subject to an allocable share of all expenses and obligations of the Tort Trust, on account of such contested Claims. The Tort Trustee may, in the his sole discretion, file a tax election to treat any Contested Claims Reserve as a "Disputed Ownership Fund" within the meaning of Treasury Regulation section 1.468B-9 for United States federal income tax purposes rather than to tax such reserve as a part of the Tort Trust. All Tort Trust Beneficiaries, all holders of Allowed Class E Claims, and all holders of Contested Claims, shall be bound by such income tax treatment.

(vi)     **Qualified Settlement Fund Matters.**  To the maximum extent permitted by law, all Tort Trust Assets transferred to the Tort Trust from a qualified settlement fund, including without limitation any and all qualified settlement funds established under the Shareholder Escrow and Control Agreement, shall be treated for all purposes as amounts distributed to claimants for which the fund was established in accordance with Treasury Regulation section 1.468B-4, and shall be reported as excludable from gross income to the extent permitted under section 104(a)(2) of the Tax Code. In no event shall amounts transferred to the Tort Trust under the Shareholder Escrow and Control Agreement be treated as deemed distributions to the transferors to any qualified settlement fund established under the Shareholder Escrow and Control Agreement.

### 5.14     *Resolution of the Claims of Minors In Accordance With the Tort Trust*.

(i)     In connection with any Tort Claims in which the holder is a minor, the Tort Trustee shall notify the parent, guardian, guardian ad litem, adult spouse, next friend, or other representative of the minor of the proposed distribution to such minor. Such parent, guardian, guardian ad litem, adult spouse, next friend, or other representative of the minor shall move for approval of the allocation within ninety (90) days of his or her notification by the Tort Trustee of the proposed distribution.

(ii)     In the event that the parent, guardian, guardian ad litem, adult spouse, next friend, or other representative of the minor does not so move for approval of the allocation within ninety (90) days of his or her notification by the Tort Trustee of the proposed distribution, the Tort Trustee shall submit the proposed distribution to the holder to the District Court for approval in accordance with section 140C1/2 of Chapter 231 of the Massachusetts General Laws and request that the District Court hold a hearing on the petition, and the petitioner and the Tort Claim holder may attend any such hearing. The Tort Trustee shall request the District Court to determine whether the proposed distribution is in the Tort Claim holder's best interests and, if the proposed distribution is approved, that determination shall be embodied in an order which shall have the effect of a judgment. Upon approval of the proposed distribution to such holder of a Tort Claim, the Tort Trustee shall request the District Court to authorize payment to the counsel of the minor, if any, of fees and disbursements to be paid from the distribution and further shall order that the remainder of the distribution be distributed in a manner that will best protect the interest of the minor.

5.15     *Access to Claims Information*.  Upon request made to the Estate Representative on or after the Effective Date by the Tort Trustee, the Settlement Administrator(s) or the Appeals Administrator, the Estate Representative shall deliver to the Tort Trustee, the Tort Trustee, the

Settlement Administrator(s) or the Appeals Administrator, as applicable, on an un-redacted basis, the relevant Patient Lists and all proofs of claim and supporting documentation (including the PITWD Addenda) for purposes of effectuating the Tort Trust and distributions to holders of Allowed Class D Claims or Allowed Class E Claims.  The Confirmation Order shall include all findings and orders necessary to permit or facilitate such delivery and access, including with respect to the confidentiality of the Patient Lists and the PITWD Addenda, subject to any further orders of the Bankruptcy Court.

**5.16** *Distribution of Surplus*.  The Tort Trustee shall make all payments required to be paid to holders of Allowed Class D Claims or Allowed Class E Claims under this Plan, in accordance with the terms and conditions of the Tort Trust Agreement, the Claims Resolution Facility Procedures and the Provider Claims Resolution Facility Procedures.  If, and only if, the Tort Trustee has made distributions to Tort Trust Beneficiaries sufficient to satisfy in full the Claims of each and every Tort Trust Beneficiary (as determined by the Tort Trustee, subject to the MDL Court's review of such determination), then the Tort Trustee shall distribute to the holders of Allowed Class E Claims their Pro Rata Share of the remaining Cash, if any, of the Tort Trust.

**5.17** *Payments to Post-Effective Date Debtor*.  The Post-Confirmation Officer may from time to time request that monies be transferred to the Post-Effective Date Debtor from the Tort Trust for use and distribution as he deems appropriate in accordance with this Plan, and the Tort Trustee shall promptly comply with any and all such request(s).

## ARTICLE VI.
## MEANS FOR IMPLEMENTATION AND EXECUTION OF THIS PLAN

**6.01** *Management of the Post-Effective Date Debtor*.

      **(i)** **Post-Confirmation Officer.**  On the Effective Date, (a) the authority, power and incumbency of the Persons then acting as directors and officers of the Debtor, and that of the Chapter 11 Trustee, shall be terminated, (b) such directors, officers and the Chapter 11 Trustee shall be deemed to have been discharged pursuant to Bankruptcy Code section 350(a) and (c) Paul D. Moore, Esq. shall be appointed as the sole officer and director of NECC to serve in accordance with the certificate of incorporation and the bylaws of NECC, as such may be amended to carry out the provisions of this Plan.  The Shareholders shall not have the power or ability to remove the Post-Confirmation Officer or to affect any decision thereof.

      **(ii)** **Compensation.**  The Post-Confirmation Officer shall be entitled to reasonable compensation in an amount consistent with that of similar functionaries in similar types of bankruptcy proceedings without any need for filing fee applications under the Bankruptcy Code or approval of any court.

      **(iii)** **Indemnification.**  The Post-Confirmation Officer shall have quasi-judicial immunity to the fullest extent allowed by law and shall have no liability to the Debtor or its creditors, except for willful misconduct.  The Tort Trustee shall indemnify and hold harmless the Post-Confirmation Officer for any losses incurred in his or her capacity as such, except to the

extent such losses were the result of the Post-Confirmation Officer's willful misconduct.

(iv)   **Successor.**   In the event the Post-Confirmation Officer dies, is terminated or resigns for any reason, the Bankruptcy Court shall designate a successor on motion of any party in interest.

**6.02   *Duties and Powers of the Post-Confirmation Officer.***   The Post-Confirmation Officer shall have the power and authority to implement and administer this Plan, including:

(i)   **Claims.**   The Post-Confirmation Officer may object to, compromise or settle any or all Claims (with the exception of Class D Claims) against the Debtor or the Estate.

(ii)   **Selling, Monetizing or Liquidating Assets.**   The Post-Confirmation Officer may, but is not required to, sell, monetize or liquidate any assets, including, but not limited to, (a) the Affiliated Entities, (b) any assets transferred to the Estate Representative in accordance with the Settlement Agreements, (c) the Estate Representative's entitlement to receive such assets in accordance with the Settlement Agreements, (d) any assets the Estate Representative is entitled to sell for the benefit of the Estate in accordance with the Settlement Agreements, and (e) any rights of the Estate Representative to sell, monetize, or liquidate any assets in accordance with the Settlement Agreements.

(iii)   **Abandoning Assets.**   The Post-Confirmation Officer may abandon or donate any assets, if he concludes in his sole discretion that they are of no benefit or inconsequential value without the need for further order or notice.

(iv)   **Retention of Professionals.**   After the Effective Date, the Post-Confirmation Officer may retain such law firms or attorneys, experts, advisors, consultants, investigators, appraisers, auctioneers, corporate management services, or other Persons or professional firms as the Post-Confirmation Officer determines, in his or her sole discretion, are necessary, desirable or appropriate to aid in the performance of his or her duties, without the need for further order or notice.   The Post-Confirmation Officer may pay or appropriate funds necessary to pay the professionals for services rendered and expenses incurred after the Effective Date without any need for filing fee applications under the Bankruptcy Code or approval of any court.

(v)   **Books and Records.**   The Post-Confirmation Officer shall maintain the Debtor's books and records, maintain accounts, make distributions and take other actions consistent with this Plan and the implementation hereof.   The Post-Confirmation Officer shall have the responsibility of storing and maintaining the Debtor's books and records only until such time as he deems, in his sole discretion and subject to the *Agreed Order Granting Relief from Preservation Order to Permit Chapter 11 Trustee to Sell or Otherwise Dispose of Remaining NECC Property* [MDL Proceeding Docket No. 1538], such books and records may be abandoned or destroyed, and the Post-Confirmation Officer shall have no liability to any party on account of such abandonment or destruction; *provided*, *however*, that the Post-Confirmation Officer shall neither abandon nor destroy any such books or records a Shareholder or his or her counsel reasonably requests to be maintained pursuant to the Shareholder Settlement Agreement. In addition to the materials to be provided to the Tort Trustee pursuant to Section 5.15 of this

Plan, at the time such materials are provided to the Tort Trustee pursuant to Section 5.15 of this Plan, the Post-Confirmation Officer shall provide the Tort Trustee with such of the Debtor's books and records as the Tort Trustee may reasonably request in connection with the administration of the Claims Resolution Facility and the Provider Claims Resolution Facilities, if any, and the Post-Confirmation Officer shall have no liability to any party on account of such provision. The Post-Confirmation Officer shall retain the right to access and copy any records provided to the Tort Trustee. For purposes of this section, books and records include computer generated or computer maintained books and records and computer data, as well as electronically generated or maintained books and records or data, together with books and records of the Debtor maintained by or in possession of third parties and all of the claims and rights of the Debtor in and to their books and records, wherever located.

(vi) **Agreements.** The Post-Confirmation Officer may enter into any agreement or execute any document which he deems to be required by or consistent with this Plan or necessary or appropriate to its implementation and perform all of obligations of the Post-Effective Date Debtor.

(vii) **Investment Power.** Management of all assets and investments of the Post-Effective Date Debtor's Cash shall be administered, subject to the limitations and provisions set forth herein, in view of the manner in which individuals of ordinary prudence, discretion and judgment would act in the management of their own affairs. The Post-Confirmation Officer shall invest and reinvest the Post-Effective Date Debtor's Cash and keep the Post-Effective Date Debtor's Cash invested in interest-bearing accounts at an approved depository institution to be selected from the United States Trustee's List of Authorized Depositories for Bankruptcy Cases filed in Region One, dated July 26, 2013. Each account shall be treated as a single fund without distinction between principal and income. For purposes of this paragraph, "interest-bearing account" includes a money fund whose objectives are current income consistent with liquidity and low risk, the maintenance of a portfolio of high quality, short-term money market instruments and maintenance of a constant $1.00 net asset value per share. All investments shall be made so as to at all times provide sufficient liquidity to meet the anticipated cash needs of the Post-Effective Date Debtor as set forth herein.

(viii) **Tax Obligations.** The Post-Confirmation Officer shall (a) endeavor to complete and file the Debtor's or the Post-Effective Date Debtor's, as applicable, federal and state tax returns, (b) request, if necessary, an expedited determination of any unpaid tax liability of the Debtor under Bankruptcy Code section 505 for all taxable periods of the Debtor ending after the Petition Date as determined under applicable tax laws and (c) represent the interest and account of the Debtor, its Estate or the Post-Effective Date Debtor, as applicable, before any taxing authority in all matters including, without limitation, any action, suit, proceeding or audit, in all respects consistently with the Shareholder Settlement Agreement and the Shareholder Escrow and Control Agreement.

(ix) **Reporting Duties.** The Post-Confirmation Officer shall be responsible for filing informational returns on behalf of the Debtor or the Post-Effective Date Debtor, as applicable, and any other statements, returns or disclosures relating to the Debtor or the Post-Effective Date Debtor, as applicable, that are required by any governmental unit or applicable law.

**(x)** **Reasonable Fees and Expenses.**   The Post-Confirmation Officer may incur and pay and satisfy any reasonable and necessary fees and expenses in connection with the performance of his duties under this Plan without the need for further order or notice.

**6.03** *Other Actions.*   The Post-Confirmation Officer may take all other actions not inconsistent with the provisions of this Plan which the Post-Confirmation Officer deems reasonably necessary or desirable with respect to administering this Plan.

**6.04** *Expense Fund.*   On or after the Confirmation Date, if he deems advisable in his sole discretion, the Estate Representative shall transfer the Expense Fund Amount to the Expense Fund Administrator.   The Expense Fund, and earnings thereon, may be used for, *inter alia*, payment of Allowed Class C Claims, Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, the post-confirmation fees and expenses, including applicable income taxes, of the Post-Effective Date Debtor and the Estate Representative, fees and expenses, including applicable income taxes, of the Expense Fund, and such other fees or expenses of the Debtor and the Estate as determined by the Estate Representative on or before the date he transfers the Expense Fund Amount to the Expense Fund Administrator.   The allocation and disbursement of the Expense Fund shall be made in accordance with such determination.   To the extent that a portion of the Expense Fund is not disbursed, or otherwise held in reserve to fund the costs and expenses described herein, in the sole judgment of the Expense Fund Administrator, such portion shall be transferred to the Tort Trust, and shall be subject to the terms thereof.   In no event shall any amount transferred to the Expense Fund revert to the Debtor or the Estate Representative.   The Debtor or the Estate Representative shall have no rights in the Expense Fund except as determined by the Expense Fund Administrator in accordance with this Section 6.04.   For all applicable income tax purposes, the Expense Fund Administrator shall file income tax returns for the Expense Fund as a complex trust or other tax entity as determined by the Expense Fund Administrator, and the Expense Fund shall be subject to and shall pay tax on its taxable income, if any.

**6.05** *Distributions Under this Plan.*

**(i)** **Disbursing Agent.**   All distributions under this Plan to holders of Allowed Class A, B and C Claims shall be made in accordance with the terms of this Plan by the Post-Confirmation Officer or the Expense Fund Administrator, as applicable.   Distributions to holders of Allowed Class D and E Claims shall be made by the Tort Trustee in accordance with the terms and provisions of the Plan and the Tort Trust Documents.

**(ii)** **Effective Date Payments.**   On the Effective Date, or as soon thereafter as reasonably practicable, the Post-Confirmation Officer shall remit, to each holder of an Allowed Class A, B or C Claim (as of the Distribution Record Date) the distribution provided for such Claim under this Plan.

**(iii)** **Distribution of Cash.**   At the option of the Post-Confirmation Officer or the Tort Trustee, as the case may be, any Cash payment to be made hereunder may be by check or wire transfer.

       **(iv)**    **Currency.**  Where a Claim has been denominated in foreign currency on a proof of claim, the Allowed amount of such Claim shall be calculated in currency of the United States of America based upon the conversion rate in place as of the Petition Date and in accordance with section 502(b) of the Bankruptcy Code.

       **(v)**    **Retention of Cash.**  In making the distributions under this Plan to holders of Allowed Claims in Class A, B or C, the Post-Confirmation Officer shall at all times, and subject to Section 6.04 hereof, and taking into account the Cash, if any, available in the Expense Fund for the purposes set forth in Section 6.04 hereof, retain sufficient Cash as he determines in his sole discretion is reasonably necessary to (a) satisfy all Allowed or Disputed Administrative Expense Claims, Priority Tax Claims and Priority Non-Tax Claims, (b) meet the reasonably necessary administrative expenses of the Post-Effective Date Debtor, including the fees of the Post-Confirmation Officer and (c) satisfy all Disputed Claims (except Disputed Tort Claims).

       **(vi)**    **Distribution of Shareholder Settlement Non-QSF Monies.**  The Estate Representative shall direct the distribution of the Shareholder Settlement Non-QSF Monies, if any, as he determines appropriate in his sole discretion pursuant to this Plan, including, without limitation, for transfer to the Estate and/or for the satisfaction of Administrative Expense Claims.

       **(vii)**    **Insight Claims Resolution Facility Procedures Distributions.**  The administrator of the Insight Claims Resolution Facility Procedures shall be authorized to make distributions on account of claims in accordance with the procedures set forth in the Plan Supplement, including distributions for any claims channeled to the Insight Claims Resolution Facility.

       **(viii)**    **Interim Distributions.**  The Post-Confirmation Officer may, but shall not be required to, make interim distributions on account of Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims and wind down costs and expenses.  For the avoidance of doubt, the Post-Confirmation Officer shall make no interim distributions to holders of Class D or E Claims, but instead all such interim distributions, if any, shall be made by the Tort Trustee in accordance with the Tort Trust Documents.

       **(ix)**    **Final Distributions.**   As soon as reasonably practicable after the resolution of all Disputed Non-Tort Claims, the Post-Confirmation Officer shall (i) to the extent not previously paid, pay all Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims and wind down costs and expenses; and (ii) to the extent the Post-Effective Date Debtor has remaining Cash after the payments made in accordance with (i) above, distribute such remaining Cash to the Tort Trust.  For the avoidance of doubt, the Post-Confirmation Officer shall make no final distributions to holders of Class D or E Claims, but instead all such final distributions, if any, shall be made in accordance with the Tort Trust Agreement and Claims Resolution Facility Procedures.

      **6.06**    *Disallowance of Multi-Claimant Proofs of Claim.*  In accordance with paragraph 10 of the Bar Date Order, Claims evidenced by (i) "Multi-Claimant PITWD Claims" (*i.e.*, by proofs of claim joining or on behalf of two (2) or more claimants) submitted without the prior approval of the Bankruptcy Court, or (ii) by proofs of claim purporting to be on behalf of a class of claimants shall be and are hereby disallowed to the extent not previously disallowed;

*provided*, *however*, that proofs of claim joining or on behalf of two (2) claimants, one of whose sole Claim is a Class D Consortium Claim, shall not be disallowed pursuant to this Section 6.06.

**6.07    *Procedures for Treating Disputed Claims.***

**(i)    Estimation of Claims.**   The Post-Confirmation Officer may at any time request that the Bankruptcy Court estimate any Claim in Class A, B or C pursuant to section 502(c) of the Bankruptcy Code.   The Tort Trustee may at any time request that the Bankruptcy Court estimate any Claim in Class D or Class E pursuant to section 502(c) of the Bankruptcy Code.   In the event that the Bankruptcy Court estimates any Disputed Claim in Classes A, B, C, D or E, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.   If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Post-Confirmation Officer or the Tort Trustee, as applicable, may pursue supplementary proceedings to object to the allowance of such Claim.    All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another.   Claims in Classes A, B, C, D or E may be estimated and subsequently disallowed, reduced, compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

**(ii)    Resolution of Disputed Claims.**

(1)    To the extent that a Disputed Claim in Classes A, B, C or E is not Allowed or becomes an Allowed Claim in an amount less than the amount of the Disputed Claim set forth in the proof of claim, or as previously estimated by the Bankruptcy Court, the excess of the amount of Cash that would have been distributed to the holder of the Disputed Claim in Classes A, B, C or E if the Claim had been Allowed in full over the amount of Cash actually distributed on account of such Disputed Claim shall be available Cash.

(2)    Holders of Disputed Claims in Classes A, B, C or E shall not be entitled to interest if such Disputed Claim becomes an Allowed Claim except to the extent such holder is entitled to interest pursuant to federal or state law.

**6.08    *Closing of the Chapter 11 Case.***   When all Disputed Non-Tort Claims have become Allowed Claims or have been disallowed by Final Order, the Tort Trustee and/or the Post-Confirmation Officer may, if he or she so elects in his or her sole discretion, seek authority from the Bankruptcy Court to close the Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

**6.09    *Cancellation of Existing Agreements.***   Except for purposes of evidencing a right to distributions under this Plan or otherwise provided hereunder, on the Effective Date all of the agreements and other documents, ***except for and other than the Tort Trust Documents, the Settlement Agreements and insurance policies issued to, or insurance agreements entered into by the Debtor prior to the Petition Date (including, without limitation, any policies covering directors' or officers' conduct)***, evidencing the Claims or rights of any holder of a Claim against the Debtor, including any notes evidencing such Claims, shall be deemed cancelled.

40

**6.10** *Continued Corporate Existence.* The Post-Effective Date Debtor shall continue to exist after the Effective Date, with all powers of a corporation under the laws of the Commonwealth of Massachusetts except for shareholder management. The Post-Effective Date Debtor's certificate of incorporation and bylaws shall be deemed amended to include a provision prohibiting the issuance of non-voting equity securities, thereby satisfying the requirements of Bankruptcy Code section 1123(a)(6). The Post-Confirmation Officer, as the sole officer and director of the Post-Effective Date Debtor, shall perform each of the actions provided for under this Plan without any requirement of further action by or consent or vote of the Shareholders. At the discretion of the Post-Confirmation Officer, the Post-Effective Date Debtor shall be authorized, only following the completion of all disbursements to holders of Allowed Claims in Classes A, B and C, other transfers and other actions required under this Plan, including without limitation, the sale, monetization or liquidation of the assets, including, but not limited to, any assets transferred to the Estate in accordance with the Settlement Agreements and any assets to which the Estate Representative is entitled to sell for the benefit of the Estate in accordance with the Settlement Agreements, or to file certificates of cancellation or dissolution. The filing of such certificates of cancellation or dissolution shall be deemed authorized and approved in all respects without further action under applicable law, regulation, order or rule, including, without express or implied limitation, any action by the Shareholders. After the Effective Date, the Shareholders shall have no power or authority with respect to the management, operation or other functions of the Post-Effective Date Debtor.

**6.11** *Effectuating Documents and Further Transactions.* Upon the Effective Date, the Estate Representative is authorized and directed to execute, deliver, file or record such contracts, releases and other agreements or documents and take such actions as he may deem to be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

## ARTICLE VII.
## PROVISIONS GOVERNING DISTRIBUTIONS

**7.01** *Distribution Record Date.* (i) As of the close of business on the Distribution Record Date, the claim ledgers for each of the Classes of Claims or Equity Interests shall be deemed closed, and there shall be no further changes in the record holders of any of the Claims or Equity Interests; (ii) the Debtor, the Chapter 11 Trustee, the Post-Confirmation Officer and the Tort Trustee, as the case may be, shall have no obligation to recognize any transfer of Claims or Equity Interests entered on the docket of the Bankruptcy Court on or after the Distribution Record Date; and (iii) the Debtor, the Chapter 11 Trustee, the Post-Confirmation Officer and the Tort Trustee, as the case may be, shall be entitled to recognize and deal for all purposes hereunder only with those record holders stated on the claim and/or their attorneys as of the close of business on the Distribution Record Date, to the extent applicable.

**7.02** *Delivery of Distributions and Undeliverable Distributions.* Subject to Bankruptcy Rule 9010 and the provisions of Section 6.05 hereof, all distributions to any holder of an Allowed Claim in Class A, B or C shall be made at the address of such holder as set forth on the Schedules filed with the Bankruptcy Court or on the books and records of the Debtor unless the Chapter 11 Trustee and/or the Post-Confirmation Officer has been notified in writing of a change of address, including, without limitation, by the filing of a proof of claim by such

holder that contains an address for such holder different from the address reflected on such Schedules for such holder.  In the event that any distribution to any holder of an Allowed Claim in Class A, B or C is returned as undeliverable, no further distributions to such holder shall be made unless and until the Chapter 11 Trustee and/or the Post-Confirmation Officer is notified of such holder's then-current address, at which time all missed distributions shall be made to such holder, without interest.  All demands for undeliverable distributions shall be made on or before ninety (90) days after the date such undeliverable distribution was initially made.  Thereafter, in accordance with section 347(b) of the Bankruptcy Code, the amount represented by such undeliverable distribution shall irrevocably revert to the Debtor, and any Claim in respect of such undeliverable distribution shall be discharged and forever barred from assertion against the Debtor and its property.  **No distribution shall be made to any Claimant in Class A, B or C and the Claimant's Claim shall be disallowed without further order of the Bankruptcy Court, if such Claimant has not delivered a signed form W-9 to the Post-Confirmation Officer within sixty (60) days of the Effective Date.**

**7.03** *De Minimis Distributions*.  The Post-Confirmation Officer shall not be required to, but may in his sole and absolute discretion, make distributions to any holder of an Allowed Claim in Class A, B, or C of Cash in an amount less than twenty-five (25) dollars.  When distributions do not reach the $25.00 payment threshold, such payment that would have been made will be reserved for the benefit of such claimant until subsequent distribution(s), if any, exceed the threshold on a cumulative basis.

**7.04** *Transactions on Business Days.*  If the Effective Date or any other date on which a transaction may occur under this Plan shall occur on a day that is not a Business Day, the transactions contemplated by this Plan to occur on such day shall instead occur on the next succeeding Business Day but shall be deemed to have been completed as of the required date.

**7.05** *Allocation of Plan Distribution Between Principal and Interest.*  All distributions in respect of any Allowed Claim shall be allocated first to the principal amount of such Allowed Claim, as determined for federal income tax purposes, and thereafter, to the remaining portion of such Claim comprising interest, if any (but solely to the extent that interest is an allowable portion of such Allowed Claim).

**7.06** *Withholding and Reporting Requirements.*  The Post-Confirmation Officer shall comply with all applicable withholding and reporting requirements imposed by any federal, state, local or foreign tax authority but only with respect to Classes A, B or C, and all distributions under this Plan to Class A, B or C shall be subject to any such withholding and reporting requirements.  The Tort Trustee shall comply with all applicable withholding and reporting requirements imposed by any federal, state, local or foreign tax authority but only with respect to Classes D or E, and all distributions under this Plan or the Tort Trust Documents to holders of Allowed Class D or Allowed Class E Claims shall be subject to any such withholding and reporting requirements.  Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution under this Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such distribution, and under no circumstances shall the Chapter 11 Trustee or the Post-Confirmation Officer have or incur any

liability with respect to the satisfaction and payment of any such tax obligations, or the non-payment or failure by any such holder to satisfy any such tax obligation.

**ARTICLE VIII.**
**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**8.01    *Executory Contracts and Unexpired Leases*.**   On the Effective Date, all executory contracts and unexpired leases to which the Debtor is or may be deemed a party, except for and other than the Tort Trust Documents, the Settlement Agreements (including the insurance policy rights assigned to the Debtor pursuant thereto)and insurance policies issued to, or insurance agreements entered into by, the Debtor prior to the Petition Date (including, without limitation, any policies covering directors' or officers' conduct), shall be deemed rejected as of the Effective Date, without the need for any further action by the Post-Confirmation Officer except for an executory contract or unexpired lease that (i) has been assumed or rejected pursuant to Final Order of the Bankruptcy Court entered prior to the Effective Date or (ii) is the subject of a separate motion to assume or reject filed under section 365 of the Bankruptcy Code by the Debtor prior to the Effective Date.

**8.02    *Insurance Policies and Agreements*.**   Except as set forth in the Settlement Agreements or the Confirmation Order, insurance policies issued to, or insurance agreements entered into by, the Debtor prior to the Petition Date (including, without limitation, any policies covering directors' or officers' conduct) shall continue in effect after the Effective Date. To the extent that such insurance policies or agreements (including, without limitation, any policies covering directors' or officers' conduct) are considered to be executory contracts, then, notwithstanding anything to the contrary herein, this Plan shall constitute a motion to assume or ratify such insurance policies and agreements, and, subject to the occurrence of the Effective Date, the entry of the Confirmation Order shall constitute approval of such assumption pursuant to section 365(a) of the Bankruptcy Code and a finding that each such assumption is in the best interests of the Debtor and its Estate.  Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments shall be required to cure any defaults of the Debtor existing as of the Confirmation Date with respect to each such insurance policy or agreement.  To the extent that the Bankruptcy Court determines otherwise as to any such insurance policy or agreement, the Plan Proponents reserve the right to seek the rejection of such insurance policy or agreement or other available relief.

**8.03    *Approval of Rejection of Executory Contracts and Unexpired Leases*.**  Entry of the Confirmation Order shall constitute the approval, pursuant to section 365(a) of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases rejected as of the Effective Date pursuant to this Plan.

**8.04    *Rejection Claims*.**   In the event that the rejection of an executory contract or unexpired lease by the Debtor pursuant to this Plan results in damages to the other party or parties to such contract or lease, a Claim for such damages, if not heretofore evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Debtor, or any property to be distributed under this Plan unless a proof of claim is filed with the Bankruptcy

43

Court and served upon the Post-Confirmation Officer on or before the date that is thirty (30) days after the Confirmation Date.

**8.05** ***Rejection Claims of Officers and Directors of the Debtor.*** Notwithstanding Section 8.04 of this Plan, in consideration for the releases and injunctions provided in this Plan and the Settlement Agreements, (i) all contracts or agreements between the Debtor and the former and current officers or directors of the Debtor, with the exception of the Settlement Agreements, are deemed rejected as of the Effective Date, without the need for any further action by the Post-Confirmation Officer and (ii) the claims of such former and current officers or directors of the Debtor, if any, resulting from such rejection are hereby deemed waived.

## ARTICLE IX.
## EFFECTIVENESS OF THIS PLAN

**9.01** ***Conditions to Confirmation.*** This Plan shall not be confirmed unless the Confirmation Order (i) is in a form and substance satisfactory to the Chapter 11 Trustee and the Official Committee and is otherwise consistent and in accord with the Settlement Agreements, (ii) is in a form acceptable to the Shareholders as to the matters relating to the Shareholder Settlement Agreement, and (iii) approves and implements, among other things, (a) the Settlement Agreements, to the extent any of the Settlement Agreements have not otherwise or previously been approved by the Bankruptcy Court, and (b) the releases and injunctions set forth in Sections 10.05 and 10.06 of this Plan.   The foregoing conditions to confirmation of this Plan are material and non-waivable.

**9.02** ***Date of Effective Date.*** The Effective Date shall occur on the later of: (i) the first Business Day following (a) fourteen (14) days after the Confirmation Date, provided that a court of competent jurisdiction has not entered a stay of the Confirmation Order as of such date (in which instance, the Effective Date will not occur until such stay is dissolved) or (b) only if a court of competent jurisdiction determines that the Bankruptcy Court lacks jurisdiction or authority to enter final judgment confirming all or any portion of the Plan, then thirty (30) days after entry of the Confirmation Order by the District Court, provided that a court of competent jurisdiction has not entered a stay of the Confirmation Order as of such date (in which instance, the Effective Date will not occur until such stay is dissolved); and (ii) the first Business Day on which all other conditions to the Effective Date have been satisfied or waived.

**9.03** ***Satisfaction of Conditions.*** Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

**9.04** ***Occurrence of Effective Date.*** The Plan Proponents shall cause the Effective Date to occur as soon as is practicable.

**9.05** ***Substantial Consummation Upon Effective Date.*** On the Effective Date, this Plan will be deemed to be substantially consummated under the applicable sections of the Bankruptcy Code.

## ARTICLE X.
## EFFECT OF CONFIRMATION

**10.01** *Vesting of Assets.*

(i)     As of the Effective Date, the property of the Estate shall vest in the Post-Effective Date Debtor or such other Entity as provided in this Plan.

(ii)     From and after the Effective Date, the Post-Confirmation Officer or Tort Trustee, as the case may be, may dispose of, or cause to be disposed of, the assets of the Post-Effective Date Debtor and the Tort Trust, respectively, free of any restrictions of the Bankruptcy Code, but in accordance with the provisions, as the case may be, of this Plan and the Tort Trust Documents.

(iii)     As of the Effective Date, all assets of the Post-Effective Date Debtor and the Tort Trust shall be free and clear of all Claims, except as otherwise provided in this Plan or the Confirmation Order.

**10.02** *Binding Effect.*     In accordance with the provisions of section 1141 of the Bankruptcy Code, on and after the Effective Date, the provisions of this Plan shall bind any holder of a Claim against, or Equity Interest in, the Debtor and its respective successors and assigns, whether or not the Claim or Equity Interest of such holder is Impaired under this Plan, whether or not such Claim or Equity Interest has been filed or asserted against the Debtor and whether or not such holder has accepted this Plan.

**10.03** *Exculpations and Limitation of Liability.*     As of the Effective Date, none of (i) the Chapter 11 Trustee, (ii) the Official Committee or (iii) the members, representatives, accountants, financial advisors, consultants and attorneys of the Entities described in (i) and (ii) of this paragraph shall have or incur any liability to any person for any act taken or omission in connection with or related to the Chapter 11 Case, including but not limited to (i) formulating, preparing, disseminating, implementing, confirming, consummating or administrating this Plan (including soliciting acceptances or rejections thereof), (ii) the Disclosure Statement or any contract, release or other agreement or document entered into or any action taken or omitted to be taken in connection with this Plan or the Disclosure Statement, or (iii) any distributions made pursuant to this Plan, except for any acts determined by Final Order to have constituted willful misconduct, bad faith or gross negligence.  For the avoidance of doubt, the provisions of this Section 10.03 shall not apply to the Shareholders and/or the Affiliate Released Parties and shall not exculpate any of the Shareholders and Affiliate Released Parties from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including any liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against any party or person.

**10.04**     *Preservation and Non-Waiver of Estate Defenses and Objections and Related Rights Reserved for the Debtor, its Successors in Interest, Creditors and Parties in Interest*.

(i)      **No Limitation on Defenses, Set-Off or Right to Subordination as to Claims Against the Estate.**   Nothing in this Plan (other than the provisions of Sections 10.03 and 10.05 hereof) the Confirmation Order or the Settlement Agreements shall alter, enhance, waive, release or otherwise impair or preclude any of the Estate's defenses, rights to set-off and/or rights to compel subordination as to any Claim or Administrative Expense Claim of any type asserted against the Estate, as otherwise allowed by law, including the right to assert as a defense, set-off or subordination, any claim that would ordinarily or otherwise have to be asserted in or brought by a cross-claim, cross-complaint or separate action.

(ii)      **No Limitation on Right to Object to Claims or Administrative Expense Claims.**

(1)      Nothing in this Plan (other than the provisions of Sections 10.03 and 10.05 hereof), the Confirmation Order or the Settlement Agreements shall alter, enhance, waive, release or otherwise impair or preclude the right and ability of (a) the Estate Representative and all his or her successors in interest to object to any Class A, B, C or E Claim or Administrative Expense Claim, (b) the Tort Trustee and all his or her successors in interest to object to any Class E Claim, or (c) the Official Committee or any other Creditor or party in interest to object to any Class A, B, C or E Claim or Administrative Expense Claim (collectively, the "**Permitted Objections**").  The Permitted Objections may include, as part of any objection to any Class A, B, C or E Claim or Administrative Expense Claim, a prayer for denial or disallowance of the Class A, B, C or E Claim or Administrative Expense Claim, reduction in amount by off-set, disgorgement of amounts previously paid and/or equitable subordination, as otherwise allowed by law, on any ground that could have been brought by way of lawsuit, adversary proceeding or contested matter but for (a) the releases contained in the Settlement Agreements, (b) the exculpation contained in Section 10.03 of this Plan (c) the releases and injunctions contained in Sections 10.05 and 10.06 of this Plan, (d) the covenant not to sue contained in Section 10.08 10.10 of this Plan or (e) the Confirmation Order.  In addition, the makers of the Permitted Objections may utilize whatever remedies and procedural vehicles are otherwise available under the law, including, if necessary, an adversary proceeding, provided that the makers of the Permitted Objections, consistent with the covenant not to sue contained in Section 10.07 10.10 of this Plan, shall not seek any affirmative recovery or relief beyond denial, disallowance, disgorgement of amounts previously paid, reduction or subordination of the Class A, B, C or E Claim or Administrative Expense Claim at issue.  Objections to Class E Claims shall be heard and determined by the Bankruptcy Court.

(2)      Nothing in this Plan (other than the provisions of Sections 10.03 and 10.05 hereof) the Confirmation Order or the Settlement Agreements shall alter, enhance, waive, release or otherwise impair or preclude the right and ability of the Chapter 11 Trustee or other Estate Representative, and all his or her successors in interest, to object to any Claim (including any Class D Claim) either for the purpose of determining the holder of such Claim's eligibility to vote on this Plan or the amount of such Claim.  For the avoidance of doubt, with respect to a Class D Claim, such objection(s), if any, shall not include a prayer for denial or disallowance of the subject Class D Claim.

**10.05**   *Releases.*   The releases set forth below are cumulative and not exclusive of one another.

(i)      **Settlement Agreement Releases Supplemented; No Impact on Rights to Object**.  The following releases shall be in addition to and are intended to supplement any releases included in the Settlement Agreements as between the parties to such Settlement Agreements.  Except as expressly set forth in the Settlement Agreements, nothing in this Plan or the releases set forth herein shall affect any rights of the Chapter 11 Trustee, the Post-Confirmation Officer, any Estate Representative(s) or the Official Committee to object to the allowance, amount, priority or secured status of the claims of any party receiving a release under this Plan as provided in sections 502, 503, 506, 507, 509 or 510 of the Bankruptcy Code, including with respect to any right of setoff or recoupment.

(ii)     ***Releases by the Debtor and Estate Representative(s).  Except as set forth in Section 10.05(i) of this Plan, and subject in all respects to the provisions of Section 10.04 of this Plan, on the Effective Date, the Debtor, the Chapter 11 Trustee, the Estate Representative(s) and the Estate shall unconditionally release, and hereby are deemed to forever unconditionally release, the Shareholder and Affiliate Released Parties, the Other Contributing Parties, including, without limitation, GDC, the Individual GDC Insureds and Preferred Mutual, and the Tort Claimants from any and all Claims, debts, obligations, demands, liabilities, suits, judgments, damages, rights and Estate Causes of Action, whatsoever (other than the right to enforce the obligations under this Plan, the Settlement Agreements and the contracts, instruments, releases and other agreements and documents delivered thereunder), whether direct or indirect, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part upon any act or omission, transaction, transfer event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor or to the Debtor's products, including, without limitation, the Drugs, the Chapter 11 Case, this Plan, the Disclosure Statement, the Debtor's estate, the Policies, GDC, and the negotiation or funding of the Settlement Agreements.***

(iii)    ***Releases in Favor of the Debtor and Estate Representative(s).  Subject in all respects to the provisions of Section 10.04 of this Plan, on the Effective Date, each of the Debtor, the Chapter 11 Trustee, the Estate Representative(s), and the Estate shall be forever and unconditionally released from any and all Claims, debts, obligations, demands, liabilities, suits, judgments, damages, rights and causes of action, whatsoever by all Entities (other than the right to enforce the obligations under this Plan, the Settlement Agreements and the contracts, instruments, releases and other agreements and documents delivered thereunder), whether direct or indirect, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part upon any act or omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor or to the Debtor's products, including, without limitation, the Drugs, the Chapter 11 Case, this Plan, the Disclosure Statement, any prepetition act or omission of the Debtor, the Debtor's estate, the Policies, GDC and the negotiation or funding of the Settlement Agreements.***

(iv)    ***Releases by Shareholder and Affiliate Released Parties.  Subject in all respects to the provisions of Section 10.04 of this Plan and the Shareholder Settlement Agreement, on the Effective Date, each of the Shareholder and Affiliate Released Parties shall unconditionally release, and hereby are deemed to forever unconditionally release, each of the***

47

*Debtor, the Debtor's estate, the Chapter 11 Trustee, the Estate Representative(s), the Official Committee, the Official Committee members, the Tort Claimants, the Other Contributing Parties, including, without limitation, GDC, the Individual GDC Insureds, Preferred Mutual, and the foregoing Persons' and Entities' respective attorneys and advisors (solely in their respective capacities as such) from any and all Claims, debts, obligations, demands, liabilities, suits, judgments, damages, rights, and causes of action, whatsoever, whether direct or indirect, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part upon any act or omission, transaction, transfer, event, or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor or to the Debtor's products, including, without limitation, the Drugs, the Chapter 11 Case, this Plan, the Disclosure Statement, the Debtor's estate, the Policies, GDC and the negotiation or funding of the Settlement Agreements; provided, however, that this release shall not apply to any Claims assigned by the Shareholder and Affiliate Released Parties to the Debtor or to the Chapter 11 Trustee pursuant to a Settlement Agreement, nor shall it apply to the right to enforce the obligations under the Plan, the Settlement Agreements,  and the contracts, instruments, releases and other agreements and documents delivered thereunder.*

         **(v)**    <u>**Releases in Favor of Shareholder and Affiliate Released Parties (Other than Ameridose)**</u>*.  Subject in all respects to the provisions of Section 10.04 of this Plan, on the Effective Date, the Shareholder and Affiliate Released Parties (other than Ameridose), as well as their respective attorneys and advisors (solely in their respective capacities as such), shall be forever and unconditionally released from any and all Tort Claims, Estate Causes of Action, Contributor and Affiliate Released Claims, and all other Claims, debts, obligations, demands, liabilities, suits, judgments, damages, rights and causes of action, whatsoever by all Entities, whether direct or indirect, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part upon any act or omission, transaction, transfer, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor or to the Debtor's products, including, without limitation, the Drugs, the Chapter 11 Case, this Plan, the Disclosure Statement, the Debtor's estate, the Policies, GDC and the negotiation or funding of the Settlement Agreements; provided, however, that the right to enforce the obligations under the Shareholder Settlement Agreement, the Shareholder Escrow Agreement and this Plan and the contracts, instruments, releases and other agreements and documents delivered thereunder, and the right to enforce the provisions of the Shareholder Settlement Agreement with regard to "Non-Disclosed Assets" (as defined therein), shall be expressly preserved by the Estate Representative in accordance with the terms of the Shareholder Settlement Agreement.*

         **(vi)**    <u>**Releases by Other Contributing Parties**</u>*.  Except as to the rights and claims expressly preserved by the Settlement Agreements, and subject in all respects to the provisions of Section 10.04 of this Plan, on the Effective Date, each Other Contributing Party including, without limitation, GDC, the Individual GDC Insureds and Preferred Mutual, shall unconditionally release, and hereby are deemed to forever unconditionally release, each of the Debtor, the Debtor's estate, the Chapter 11 Trustee, the Estate Representative(s), the Official Committee, the Official Committee members, the Tort Claimants, the Shareholder and Affiliate Released Parties, each additional Other Contributing Party, and the foregoing*

*Persons' and Entities' respective attorneys and advisors (solely in their respective capacities as such) from any and all Claims, debts, obligations, demands, liabilities, suits, judgments, damages, rights, and causes of action, whatsoever, whether direct or indirect, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part upon any act or omission, transaction, event, or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor or to the Debtor's products, including, without limitation, the Drugs, the Chapter 11 Case, this Plan, the Disclosure Statement, the Debtor's estate, the Policies, GDC, and the negotiation or funding of the Settlement Agreements; provided, however, that this release shall not apply to any Claims assigned by the Other Contributing Parties to the Debtor pursuant to a Settlement Agreement, nor shall it apply to the right to enforce the obligations under the Plan, the Settlement Agreements, and the contracts, instruments, releases and other agreements and documents delivered thereunder in their favor.*

(vii)   **Releases in Favor of Other Contributing Parties (Other than Ameridose).**   *Except as to the rights and claims expressly preserved by the Settlement Agreements, and subject in all respects to the provisions of Section 10.04 of this Plan, on the Effective Date, each Other Contributing Party (other than Ameridose), including, without limitation, GDC, the Individual GDC Insureds and Preferred Mutual shall be forever and unconditionally released from any and all Estate Causes of Action, Tort Claims, NECC Claims, and all other Claims, debts, obligations, demands, liabilities, suits, judgments, damages, rights and causes of action, whatsoever by all Entities, whether direct or indirect, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part upon any act or omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor or to the Debtor's products, including, without limitation, the Drugs, the Chapter 11 Case, this Plan, the Disclosure Statement, the Debtor's estate, the Policies, GDC and the negotiation or funding of the Settlement Agreements; provided, however, that this release shall not in any way limit the right of the Estate Representative to enforce the obligations under the Plan, the Settlement Agreements, and the contracts, instruments, releases and other agreements and documents delivered thereunder in the Estate's favor.*

(viii)   **Releases by Tort Claimants.**   *Subject in all respects to the provisions of Section 10.04 of this Plan, on the Effective Date, each Tort Claimant shall unconditionally release, and hereby is deemed to forever unconditionally release each of the Debtor, the Debtor's estate, the Chapter 11 Trustee, the Estate Representative(s), the Official Committee, the Official Committee members, the Other Contributing Parties (other than Ameridose), including, without limitation, GDC, the Individual GDC Insureds and Preferred Mutual, the Shareholder and Affiliate Released Parties (other than Ameridose), all parties released under the Settlement Agreements, and the foregoing Persons' and Entities' respective attorneys and advisors (solely in their capacities as such) from the Tort Claims, the NECC Claims, the Contributor and Affiliate Released Claims, and any and all claims, debts, obligations, demands, liabilities, suits, judgments, damages, rights and causes of action, whatsoever, whether direct or indirect, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, then existing or thereafter arising, in law, equity or otherwise*

*that are based in whole or in part upon any act or omission, transaction, event, or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor or to the Debtor's products, including, without limitation, the Drugs, the Chapter 11 Case, this Plan, the Disclosure Statement, the Debtor's estate, the Policies, GDC and the negotiation of the Settlement Agreements; provided, however, that this release shall not apply to the right to enforce the obligations under the Plan, the Settlement Agreement, and the contracts, instruments, releases and other agreements and documents delivered thereunder in their favor.*

(ix)   **No Governmental Releases**.  Nothing in the Confirmation Order or this Plan shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including without limitation any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against any party or person, nor shall anything in the Confirmation Order or the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action, or other proceedings against any party or person for any liability of such Persons whatever, including without limitation any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against such Persons~~, nor shall anything in the Confirmation Order or the Plan exculpate any party or person from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including any liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against any party or person~~.

10.06   *Injunctions.*

(i)   **No Impact on the Rights of the Parties to the Settlement Agreements.** Nothing in this Section 10.06 or otherwise in this Plan or the Confirmation Order, shall affect, release or otherwise limit the rights and duties of the parties to the Settlement Agreements to enforce or comply with the provisions of the Settlement Agreements.  The rights and duties of the parties under the Settlement Agreements are set forth in and shall be governed by the Settlement Agreements.

(ii)   **Injunction in Favor of the Debtor and Estate Representative(s). Except as to the rights and claims created or expressly preserved by this Plan, the Settlement Agreements the Shareholder Escrow Agreement, and the Confirmation Order, upon the Effective Date, the Debtor, the Chapter 11 Trustee, and the Estate Representative(s) shall have and be entitled to an injunction forever barring and enjoining all Persons and/or Entities from asserting against the Debtor any past, present and future rights, interests, obligations, claims, causes of action, damages (including punitive damages), demands (including demands for contribution, indemnity or otherwise), liabilities, expenses, fees (including, but not limited to, attorneys' fees, expert fees, consulting fees and other professional fees) and costs of any kind or any type whatsoever, whether known or unknown, whether foreseen or unforeseen, whether direct or indirect, contingent or actual, whether liquidated or unliquidated, whether statutory or common law, whether asserted or unasserted and whether based on contract, negligence, bad faith,**

willful, wanton or malicious conduct, or any other theory in law or equity concerning, arising from or relating to any actual or alleged past, present or future act, omission, defect, incident, event or circumstance from the beginning of the world to the Effective Date, in any way relating to or in connection with (i) the Debtor, the Drugs or any and all products of and/or distributed by the Debtor, or (ii) the Debtor's estate, the Chapter 11 Case, this Plan, the Disclosure Statement, the Settlement Agreements and/or the Policies, except with regard to any claims and rights expressly reserved pursuant to Section 10.05 above.

(iii)    **Injunction in Favor of Shareholder and Affiliate Released Parties**. Upon the Effective Date, all Persons or Entities shall be permanently barred, enjoined, and restrained from commencing, prosecuting, continuing or asserting, either derivatively or on behalf of themselves, in any court, arbitration proceeding, administrative agency, or other forum in the United States of America or elsewhere, any and all Claims released pursuant to Section 10.05 above or under the Shareholder Settlement Agreement, whether the Person or Entity had actual or constructive notice of the terms of the Shareholder Settlement Agreement, Plan or Confirmation Order or otherwise, *except that* this injunction shall not apply to the right of the acting Estate Representative to enforce the Substitute Lien and the obligations and the acting Estate Representative's rights under the Shareholder Settlement Agreement, the Escrow Agreement, the Plan, and the Confirmation Order.

(iv)    **Injunction in Favor of the Other Contributing Parties**.  Except as to the rights and claims created or expressly preserved by this Plan, the Settlement Agreements, the Escrow Agreement and the Confirmation Order, upon the Effective Date, the Other Contributing Parties, including, without limitation, GDC, the Individual GDC Insureds and Preferred Mutual shall have and be entitled to an injunction forever barring and enjoining all Persons and/or Entities from asserting against the Other Contributing Parties any past, present and future rights, interests, obligations, claims, causes of action, NECC Claims,  damages (including punitive damages), demands (including demands for contribution, indemnity or otherwise), liabilities, expenses, fees (including, but not limited to, attorneys' fees, expert fees, consulting fees and other professional fees) and costs of any kind or any type whatsoever, whether known or unknown, whether foreseen or unforeseen, whether contingent or actual, whether direct or indirect, liquidated or unliquidated, whether statutory or common law, whether asserted or unasserted and whether based on contract, negligence, bad faith, willful, wanton or malicious conduct, or any other theory in law or equity concerning, arising from or relating to any actual or alleged past, present or future act, omission, defect, incident, event or circumstance from the beginning of the world to the Effective Date, in any way relating to or in connection with (i) the Debtor, the Drugs or any and all products of and/or distributed by the Debtor, or (ii) the Debtor's estate, the Chapter 11 Case, the Plan, the Disclosure Statement, the Settlement Agreements and/or the Policies.

**10.07    Preservation of Certain Defenses Based Upon Fault or Comparative Fault**

The release and injunction provisions of this Plan, specifically those in sections 10.05 and 10.06 of this Plan, shall not be deemed to abrogate any defense based upon comparative fault that may be available under applicable state law to Persons or Entities signatory to the Stipulations and Agreed Orders dated May 1, 2015 and May 4, 2105 [Chapter 11 Case Docket Nos. 1270 and 1278], or any supplements thereto, and named as defendants in lawsuits arising from the actual or alleged design, formulation, compounding, production, labeling, testing, marketing, advertising, supply, dispensing, sale, shipment, distribution or administration of injectable methylprednisolone acetate or any other drugs or products compounded, produced, sold or distributed by NECC. The release and injunction provisions shall not preclude any such Person or Entity from naming the Debtor and/or the Tort Trust, as successor in interest to claims against the Debtor and/or the applicable Non-Insurer Contributing Party(ies), as a party to the applicable proceeding, for the sole purpose of apportioning liability or otherwise securing a reduction in liability on account of the Debtor's, such Non-Insurer Contributing Party(ies)'s, or the Tort Trust's, as successor in interest to claims against the Debtor and/or the applicable Non-Insurer Contributing Party(ies), fault or comparative fault, subject to and expressly conditioned on the satisfaction of the following conditions:

  1. Neither Paul D. Moore, as the duly appointed Chapter 11 Trustee of NECC in the Bankruptcy Case or the Post-Confirmation Officer, nor any such Non-Insurer Contributing Party, nor the Tort Trustee shall be named as a party in any such proceeding.

  2. Neither the Debtor, nor Paul D. Moore, as the duly appointed Chapter 11 Trustee of NECC in the Bankruptcy Case or the Post-Confirmation Officer, nor any such Non-Insurer Contributing Party, nor the Tort Trust, nor the Tort Trustee shall be required to enter an appearance in any such proceeding.

  3. No judgment requiring the Debtor, Paul D. Moore, as the duly appointed Chapter 11 Trustee of NECC in the Bankruptcy Case or the Post-Confirmation Officer, any such Non-Insurer Contributing Party, the Tort Trust, or the Tort Trustee to pay a damages award will be sought or entered against NECC, any such Non-Insurer Contributing Party, Paul D. Moore as the duly appointed Chapter 11 Trustee of NECC in the above-captioned bankruptcy case or the Post-Confirmation Officer, the Tort Trust, or the Tort Trustee in any such proceeding, but, if otherwise permitted by applicable state law, an affirmative defense asserting the comparative fault of the Debtor or any such Non-Insurer Contributing Party, may be asserted.

  4. So long as permitted by applicable state law, any allocation of fault to NECC or any such Non-Insurer Contributing Party shall only be for purposes of reducing such Person or

Entity's potential liability pursuant to the principles of comparative fault, and shall not be given preclusive effect, nor any effect whatsoever, other than to reduce such Person or Entity's liability.

5.      Such relief shall be solely to permit such Persons or Entities to assert and prove any right they may have to reduce their potential liability pursuant to the principles of comparative fault, and not to permit, or otherwise authorize, such Persons or Entities to pursue the prosecution of any claims for affirmative or other relief against the Debtor, Paul D. Moore, as the duly appointed Chapter 11 Trustee of NECC in the Bankruptcy Case or the Post-Confirmation Officer, any such Non-Insurer Contributing Party, the Tort Trust, or the Tort Trustee, in such tort cases.

Further, the approval of the Plan and the releases and injunctions contained therein or entered pursuant thereto shall not be construed as precluding any Person or Entity from enforcing any judgment reduction, credit, or setoff rights otherwise available to it under applicable law for reduction of damages that may be assessed against any party not a Contributing Party or a Shareholder and Affiliate Released Party in connection with any lawsuit arising from the actual or alleged design, formulation, compounding, production, labeling, testing, marketing, advertising, supply, dispensing, sale, shipment, distribution or administration of injectable methylprednisolone acetate or any other drugs or products compounded, produced, sold or distributed by NECC.

**10.08** ~~10.07~~ *Covenant Not to Sue.*  Except as set forth in Sections 10.04 and 10.05 of this Plan and except as to the rights and claims created or expressly preserved by this Plan, neither the Chapter 11 Trustee, the Estate Representative, the Debtor, the Tort Trustee nor any successor in interest will commence or prosecute any lawsuit, adversary proceeding or contested matter that includes a prayer for damages or for equitable relief against the Settling National Insurers or the Shareholders or Affiliate Released Parties relating to, concerning or arising from the (i) the Debtor, the Drugs or any and all products of and/or distributed by the Debtor, or (ii) the Debtor's estate, the Chapter 11 Case, this Plan, the Disclosure Statement, the Settlement Agreements and/or the Policies.

**10.09** ~~10.08~~ *Covenant Not to Sue (Shareholder and Affiliate Released Parties).*  Each of Shareholder and Affiliate Released Parties covenants and agrees not to commence or continue against the Estate Parties any action or proceeding of any nature whatsoever with respect to claims released by the Shareholder and Affiliate Released Parties in Section 10.05 above and in the Settlement Agreements, and the Estate Parties covenant and agree not to commence or continue against the Shareholder and Affiliate Released Parties, any action or proceeding of any nature whatsoever with respect to Contributor and Affiliate Released Claims.

**10.10** ~~10.09~~ *Terms of Pre-Plan Injunction and Stays.*  Unless otherwise provided in this Plan, the Confirmation Order or a separate order of the Bankruptcy Court, all injunctions or

stays arising under or entered during the Chapter 11 Case under section 105 or 362 of the Bankruptcy Code, or otherwise under applicable law, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in such applicable order.

## ARTICLE XI.
## RETENTION OF JURISDICTION

**11.01** *Jurisdiction of Bankruptcy Court.*  Except as otherwise explicitly set forth in this Plan or the Tort Trust Documents as to those matters which are to be considered and determined by the District Court pursuant to an order withdrawing the reference as to those matters, the Bankruptcy Court shall retain original and exclusive jurisdiction of matters arising under, arising out of or related to the Chapter 11 Case and this Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for all matters, to the maximum extent permitted by law, including for, among other things, the following purposes:

(i)      To determine any motion, adversary proceeding, application, contested matter and other litigated matter pending on or commenced after the Confirmation Date, including, without limitation, any proceeding relating to an Estate Cause of Action;

(ii)      To consider Disputed Claims, including objections, allowance, classification, priority, compromise, estimation or payment of any Claim, including Class E Claims;

(iii)      To hear and determine all applications under sections 330, 331 and 503(b) of the Bankruptcy Code for allowance and payment of Administrative Expense Claims, including awards of compensation for services rendered and reimbursement of expenses incurred prior to the Effective Date;

(iv)      To enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated;

(v)      To issue injunctions, enter and implement other orders and take such other actions as may be necessary or appropriate to restrain interference by any person with the consummation, implementation, or enforcement of this Plan, the Settlement Agreements, the Confirmation Order or any other order of the Bankruptcy Court;

(vi)      To hear and determine any application to modify this Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in this Plan, the Disclosure Statement, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(vii)      To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan, the Confirmation Order, any transactions or payments contemplated by any of the foregoing, or any agreement or other document governing or relating to any of the foregoing;

(viii)   To take any action and issue such orders as may be necessary to construe, enforce, implement, execute and consummate this Plan or to maintain the integrity of this Plan following consummation;

(ix)   To recover all assets of the Debtor and property of the Estate, wherever located;

(x)   To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(xi)   To hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including, without limitation, matters with respect to any taxes payable by a trust established in furtherance of this Plan, including the Tort Trust);

(xii)   To hear and determine any motions intended to directly or indirectly transfer venue of all or any part of the Chapter 11 Case;

(xiii)   To hear and determine any other matters related to this Plan, the Disclosure Statement, the Confirmation Order, the Settlement Agreements, the Estate Causes of Action, the Tort Trust Documents and related documents and not inconsistent with the Bankruptcy Code and title 28 of the United States Code; and

(xiv)   To enter a final decree closing the Chapter 11 Case.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

12.01   *Reporting of Shareholder Settlement Payments*.  Pursuant to Section 10.3(a) of the Shareholder Settlement Agreement, to the fullest extent permitted by law, all Shareholder Settlement Payments shall be characterized and reported for all tax purposes as contributions of capital by the Shareholders in accordance with their respective ownership positions in NECC, and the acting Estate Representative shall timely prepare true and accurate Schedule K-1s containing all information as required by the Tax Code and the IRS to enable the Contributors to apply for and collect tax refunds in accordance with the Shareholder Settlement Agreement.

12.02   *Tax Information to be Provided to Shareholders*.  Pursuant to Section 10.3(b) of the Shareholder Settlement Agreement, the Estate Representative shall provide full and accurate copies of any and all income tax returns, as supplemented or amended, filed on behalf of the Debtor to each Shareholder within fourteen (14) days of filing thereof, as well as any additional related information required by the Shareholders to accurately prepare or amend their personal tax returns and receive "Net Tax Refunds" (as defined in the Shareholder Settlement Agreement), with such returns and related information to be maintained as confidential and subject to the provisions of the Protocol Order.

12.03   *Refunds*.  Pursuant to Section 10.3(d) of the Shareholder Settlement Agreement, all procedural or computational decisions and judgments related to the "Refund Claims," the

"Refunds" and "Net Tax Refunds" (as such terms are defined in the Shareholder Settlement Agreement) shall be made so as to (i) maximize the amount of the Refund Claims, the Refunds and the Net Tax Refunds consistent with applicable laws, including, without limitation, the 10-year loss carryback provisions for product liability matters and (ii) accelerate the timing of the filing of the Refund Claims and the receipt of the Refunds and the Net Tax Refunds to the extent reasonably possible and in compliance with applicable laws.

**12.04** *Withdrawal of the Reference*.   The rights of the Plan Proponents to move, pursuant to 28 U.S.C § 157(d), Bankruptcy Rule 5011, and Local Rule 5011-1, for a withdrawal of the reference to the Bankruptcy Court of those matters under this Plan or the Tort Trust Documents which are to be considered and determined by the District Court, shall be and hereby are expressly preserved, and such motion may be made at any time subsequent to the filing of this Plan.

**12.05** *Dissolution of the Official Committee.*  The Official Committee shall dissolve on the Effective Date; *provided*, *however*, that (i) the Official Committee shall continue to exist after the Effective Date for the purposes of opposing any pending appeals of the Confirmation Order and taking such actions related thereto, and the Official Committee's professionals may seek compensation for and reimbursement of expenses related to such opposition and actions, if any, from the Post-Effective Date Debtor, and (ii) after dissolution of the Official Committee, the Official Committee's professionals shall retain their rights to pursue, review and object to any applications for compensation and reimbursement of expenses filed in accordance with Section 2.01 and 2.02 of this Plan.

**12.06** *Quasi-Judicial Immunity*.   The Confirmation Order shall provide that the Post-Confirmation Officer, the Estate Representative, the Tort Trustee, the Settlement Administrator(s) and the Appeals Administrator are entitled to quasi-judicial immunity to the fullest extent allowed by law in connection with their implementation of the Confirmation Order, this Plan, the Tort Trust Agreement, the Claims Resolution Facility and the Provider Claims Resolution Facilities.

**12.07** *Payment of Statutory Fees.*  On the Effective Date, and thereafter as may be required, the Tort Trustee shall pay all fees payable pursuant to 28 U.S.C. § 1930, including all quarterly fees pursuant to 28 U.S.C. § 1930 that become due after the Effective Date.

**12.08** *Effectuating Documents and Further Transactions.*  The Chapter 11 Trustee, up to the Effective Date, and the Post-Confirmation Officer, subsequent to the Effective Date, are authorized to execute, deliver, file or record such contracts, releases and other agreements or documents and take such actions as the Chapter 11 Trustee or the Post-Confirmation Officer, as the case may be, deem to be reasonably necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

**12.09** *Exemption from Transfer Taxes.*  Pursuant to section 1146(c) of the Bankruptcy Code, the assignment or surrender of any lease or sublease, or the delivery of any deed or other instrument of transfer under, in furtherance of or in connection with this Plan, including any bills of sale, or assignments executed in connection with any disposition of assets contemplated by

56

this Plan (including transfers of assets to and by the Tort Trust) shall not be subject to any stamp, real estate transfer, mortgage recording, sales, use or other similar tax.

**12.10** *Elimination of Vacant Classes.*   Any Class that is not occupied as of the commencement of the Confirmation Hearing by an Allowed Claim or a Claim temporarily allowed under Bankruptcy Rule 3018 or as to which no vote is cast shall be deemed eliminated from this Plan for purposes of voting to accept or reject this Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

**12.11** *Nonconsensual Confirmation.*   In the event any Impaired Class of Claims does not accept this Plan in accordance with section 1126 of the Bankruptcy Code, the Plan Proponents shall request that the Bankruptcy Court confirm this Plan in accordance with section 1129(b) of the Bankruptcy Code.   Subject to section 1127 of the Bankruptcy Code, the Plan Proponents reserve the right to modify this Plan to the extent that confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

**12.12** *Modification of Plan.*   The Plan may be amended, modified or supplemented by the Plan Proponents in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as the Bankruptcy Court may otherwise direct.   Prior to the Effective Date, the Plan Proponents may make appropriate technical adjustments and modifications to this Plan without further order or approval of the Bankruptcy Court, provided that such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims or Equity Interests.   In addition, after the Effective Date, so long as such action does not materially adversely affect the treatment of holders of Claims or Equity Interests under this Plan, the Post-Confirmation Officer may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan or the Confirmation Order.   Notwithstanding the foregoing, without the prior express consent of the Shareholder and Affiliate Released Parties and of the Other Contributing Parties, this Plan may not be amended pursuant to this paragraph   if after such amendment, the Plan is not in form and substance consistent in all material respects with the Shareholder Settlement Agreement, the National Settlement Agreements and the Provider Settlement Agreements, or if the Plan would no longer include the releases and injunctions in favor of the Shareholder and Affiliate Released Parties and of the Other Contributing Parties set forth in Sections 10.05 and 10.06 of the Plan.

**12.13** *Revocation or Withdrawal of Plan.*   The Plan Proponents, upon their unanimous consent and agreement, reserve the right to revoke or withdraw this Plan at any time prior to the Confirmation Date.   If the Plan Proponents take such action, this Plan shall be deemed null and void.   In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claim by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any other person in any further proceedings involving the Debtor.

**12.14** *Severability.*   If, prior to the entry of the Confirmation Order, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Plan Proponents, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, and such term or provision shall then be applicable as altered or interpreted.

Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation, except to the extent that such holding, alteration or interpretation, invalidates a condition to effectiveness of this Plan, including the releases and injunctions provided for in Sections 10.05 and 10.06.   The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms, and upon the Effective Date all such provisions are accordingly non-severable.

**12.15** ***Schedules and Exhibits.***  The schedules and exhibits to this Plan, including the Plan Supplement, are incorporated into and are a part of this Plan as if set forth in full herein.

**12.16** ***Successors and Assigns.***  All the rights, benefits and obligations of any person named or referred to in this Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such person.

**12.17  *Notices*.**  Any notice required or permitted to be provided to the Chapter 11 Trustee or the Official Committee under this Plan to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided in this Plan, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

if to the Chapter 11 Trustee, to:

DUANE MORRIS LLP

100 High Street, Suite 2400

Boston, MA 02110

Attn:          Paul D. Moore, Esq.

Telephone:    (857) 488-4200

Facsimile:    (857) 401-3057

Email:        pdmoore@duanemorris.com


-and-



DUANE MORRIS LLP

222 Delaware Avenue, Suite 1600

Wilmington, DE 19801

Attn:         Michael R. Lastowski, Esq.

Telephone:   (302) 657-4942

Facsimile:    (302) 397-2138

Email:       mlastowski@duanemorris.com

if to the Official Committee, to:

BROWN RUDNICK LLP

One Financial Center

Boston, MA 02111

Attn:         William R. Baldiga, Esq.

Kiersten A. Taylor, Esq.

Telephone:   (617) 856-8200

Facsimile:    (617) 856-8201

Email:       wbaldiga@brownrudnick.com
ktaylor@brownrudnick.com

-and-

60

BROWN RUDNICK LLP

7 Times Square

New York, NY 10036

Attn:         David J. Molton, Esq.

Telephone:   (212) 209-4800

Facsimile:   (215) 209-4801

Email:        dmolton@brownrudnick.com

**12.18** *No Admission.*     Notwithstanding anything herein to the contrary, nothing contained in this Plan shall be deemed as an admission by the Plan Proponents with respect to any matter set forth herein including, without limitation, liability on any Claim or the propriety of any Claim classification.

## ARTICLE XIII.
## CONFIRMATION REQUEST

**13.01**   The Plan Proponents request confirmation of this Plan under section 1129(b) of the Bankruptcy Code.

**Schedule 1.06**

**Affiliated Entities**

1. 203 Flanders Road, LLC

2. 205 Flanders Road, LLC

3. Alaunus Pharmaceutical, LLC

4. Ameridose, LLC

5. Cadden Family-2012, LLC

6. Cardo Properties, LLC

7. Conigliaro Block, Inc.

8. Conigliaro Family Investments, LLC

9. Conigliaro Industries, Inc.

10. GDC Holdings, Inc.

11. GDC Properties Management, LLC

12. Hunter Holdings, LLC

13. L & S Creations, Inc.

14. Medical Sales Management, Inc.

15. Medical Sales Management, SW, Inc.

16. Nationwide Foam, Inc.

17. Nationwide Recycling Sales Management, Inc.

18. Physicians Choice Medical Marketing, LLC

19. Stone House Realty Group, LLC

**Schedule ~~1.121~~1.127**

**National Contributing Parties[1]**

1.  Ameridose, as defined in Section 1.08 of the Plan

2.  ARL, as defined in Section  1.16 of the Plan

3.  GDC, as defined in Section 1.75 of the Plan

4.  Great American, as defined in Section 1.81 of the Plan

5.  ~~4.~~ The Individual GDC Insureds, as defined in Section ~~1.87~~1.89 of the Plan

6.  ~~5.~~ Landmark, as defined in Section ~~1.105~~1.107 of the Plan

7.  Liberty Industries, as defined in Section 1.111

8.  ~~6.~~ Maxum, as defined in Section ~~1.111~~1.117 of the Plan

9.  ~~7.~~ National Union~~, as defined in Section 1.125 of the Plan~~

~~8.~~  ~~North American Elite, as defined in Section 1.135 of the Plan~~

~~9.~~  ~~Netherlands Insurance~~, as defined in Section 1.131 of the Plan

10. Netherlands Insurance, as defined in Section 1.137 of the Plan

11. ~~10. Peerless Insurance~~North American Elite, as defined in Section 1.141 of the Plan

12. Peerless Insurance, as defined in Section 1.147 of the Plan

---

[1]   Each National Contributing Party is a National Contributing Party solely in the capacity indicated in the Plan.

13. 11. PMIC, as defined in Section 1.154 1.160 of the Plan

14. 12. Preferred Mutual, as defined in Section 1.159 1.165 of the Plan

15. 13. UniFirst, as defined in Section 1.204 of the Plan

14. Victory, as defined in Section 1.210 of the Plan

16. Victory, as defined in Section 1.216 of the Plan

**Schedule 1.167 1.173**

**Provider Contributing Parties[2]**

1.  Darwin, as defined in Section 1.52 of the Plan.

2.  High Point, as defined in Section 1.81 of the Plan

2.  3. IGPM High Point, as defined in Section 1.85 1.83 of the Plan

3.  IGPM, as defined in Section 1.87 of the Plan

4.  Insight, as defined in Section 1.91 1.93 of the Plan

5.  Inspira, as defined in Section 1.95 1.97 of the Plan

6.  Ironshore, as defined in Section 1.100 of the Plan

7.  Ironshore Specialty Insurance, as defined in Section 1.102 of the Plan

7.  Ironshore Specialty Insurance, as defined in Section 1.104 of the Plan

---

[2]   Each Provider Contributing Party is a Provider Contributing Party solely in the capacity indicated in the Plan.

8.   Juno Assurance, as defined in Section 1.105 of the Plan

9.   8. Juno AssuranceLexington Insurance, as defined in Section 1.103 of the Plan

9.   Lexington Insurance, as defined in Section 1.1071.108 of the Plan

10. Medical Mutual, as defined in Section 1.1181.124 of the Plan

11. Dr. John M. Mathis

12. Dr. Robert F. O'Brien

1