# EXHIBIT

# DISCOVERY REFERENCED IN NOTICE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN RE NEW ENGLAND COMPOUNDING
PHARMACY, INC. PRODUCTS
LIABILITY LITIGATION

MDL No. 2419
Dkt. No: 1:13-md-2419-RWZ

THIS DOCUMENT RELATES TO:

Suits Naming the Premier Defendants

---

## THE PREMIER DEFENDANTS' FIRST INTERROGATORIES, REQUESTS FOR PRODUCTION OF DOCUMENTS, AND REQUESTS FOR ADMISSION PROPOUNDED TO GLENN CHIN.

Come the Defendants, Premier Orthopaedic and Sports Medicine Associates of Southern New Jersey, LLC, trading as Premier Orthopaedic Associates; Premier Orthopaedic Associates Surgical Center, LLC; Kimberly Yvette Smith, M.D., a/k/a Kimberly Yvette Smith-Martin, M.D.; Thomas Dwyer, M.D.; Richard C. DiVerniero, M.D.; and Richard Strauss, M.D. (collectively, "Premier Defendants") , pursuant to Rules 26, 33, and 34 of the Federal Rules of Civil Procedure and the Local Rules for the District of Massachusetts, and propound the following Interrogatories, Requests for Production of Documents, and Requests for Admission to Glenn Chin.

Each of the following Interrogatories shall be answered under oath, in writing, separately, to the fullest possible detail, and in accordance with the definitions and instructions set forth below. The answers shall be signed by the person making them, and a copy of the answers, together with objections, if any, shall be served within thirty (30) days after the service date of these interrogatories.

You are under a duty to seasonably supplement your response with respect to any Interrogatory directly addressed to the identity and location of persons having knowledge of discoverable matters. You are under a duty to amend a prior response if you obtain information on the basis of which you know that the response was incorrect when made, or that the response, though correctly made, is no longer true, and the circumstances are such that a failure to amend the response is, in substance, a knowing concealment.

1

## DEFINITIONS

1. As used in this document, the terms "person(s)" and "individual(s)" mean any natural individual in any capacity whatsoever or any entity or organization, including divisions, departments, and other units therein, and shall include, but not be limited to, a public or private corporation, partnership, joint venture, voluntary or unincorporated association, organization, proprietorship, trust, estate, governmental agency, commission, bureau, or department.

2. As used in this document, the term "document" means any medium upon which intelligence or information can be recorded or retrieved, and includes without limitation, the original and each copy, regardless of origin and location, of any book, pamphlet, periodical, letter, memorandum (including any memorandum or report of a meeting or conversation), invoice, bill, order form, receipt, financial statement, accounting entry, diary, calendar, telex, telegram, cable, report, record, contract, agreement, study, handwritten note, draft, working paper, chart, paper, print, laboratory record, drawing or sketch, graph, index, lists, tape, photograph, microfilm, data sheet or data processing card, or any other written, recorded, transcribed, punched, taped, filmed, or graphic matter, however produced or reproduced, which is in your possession, custody, or control, or which was, but is no longer, in your possession, custody, or control.

3. As used in this document, the terms "identification," "identify," or "identity," when used in reference to a natural individual, require you to state his or her full name and residential and business address. Use of the term "document" in connection with the Interrogatories requires you to state the number of pages and the nature of the document, its title, its date, the name or names of its authors, and recipients, and its present location and custodian.

4. "You and "your" refers to Glenn Chin and each of his present and former agents, representatives, and employees, attorneys and accountants, and each person acting or purporting to act on his behalf.

5. "Communication" means any oral or written utterance, notification, or statement of any nature whatsoever, by and to whomsoever made, including, but not limited to, correspondence, conversation, dialogue, discussions, interviews, consultants, and any other understanding between or among two or more persons.

## INSTRUCTIONS

1. With respect to each Interrogatory, in addition to answering the question, you are to identify all documents that support, refer to, or evidence the subject matter of each Interrogatory and your answer thereto.

   If any or all identified documents are no longer in your possession, custody, or control because of destruction, loss, or any other reason, then you must do the following with respect to each and every document:

   A. Describe the nature of the document;

   B. State the date of the document;

   C. Identify the persons who sent and received the original and the copy of the document;

   D. State in as much detail as possible the contents of the documents; and

   E. State the manner and date of disposition of the document.

   If you contend that you are entitled to withhold from production any or all documents identified herein on the basis of attorney-client privilege, the work-product doctrine, or any other ground, then do the following with respect to each and every document:

   A. Describe the nature of the document;

   B. State the date of the document;

   C. Identify the persons who sent and received the original and a copy of the document;

   D. State the subject matter of the document; and

   E. State the basis upon which you contend you are entitled to withhold the document from production.

2. All documents produced should be organized and labeled to correspond to the specific Request in response to which they are being made available or should be produced as they are kept in the usual course of business.

3. The terms "and," "or," and "and/or" should be construed either disjunctively or conjunctively so as to bring within the scope of these Interrogatories and Requests any information that might otherwise be construed as outside their scope.

4. The term "any" should be construed to include the word "all," and "all" should be construed to include "any."

5. The present tense should be construed to include the past tense, and the past tense should be construed to include the present tense.

6. The singular should be construed to include the plural, and the plural should be construed to include the singular.

7. The terms "he" and "his" should be construed to include the words "she" and "her" or "hers," respectively and vice versa.

8. "Relating to," when referring to a document shall mean mentioning, describing, connected to or with, or discussing the stated subject matter.

## INTERROGATORIES

1. Describe in detail your role at NECC and Ameridose, including job title, job description, and a description of your daily duties and activities in 2011 and 2012.

**ANSWER:**

2. Describe in detail the steps NECC took to compound, process, stopper, seal, package, and ship methylprednisolone acetate ("MPA") in 2011 and 2012, including but not limited to:

    a) The names of the individuals performing each step;

    b) The job titles for the individuals performing each step;

    c) The specific cleanroom or location in NECC's facility where each step took place;

    d) The tools, equipment, or machinery used for each step;

    e) Any changes to NECC's methods or procedures for compounding MPA, or the location where compounding MPA took place, that occurred in 2011 or 2012.

**ANSWER:**

3. Identify the total amount of MPA that NECC, and separately Ameriose, produced in each quarter of 2010, 2011, and 2012.

**ANSWER:**

4. Identify the types of vials and closures NECC used for MPA lots numbered 05212012@68, 06292012@26, and 08102012@51 (collectively "Contaminated Lots"), including whether the vials and enclosures were prewashed or presterilized, and identify their manufacturer(s) and from whom they were purchased by NECC.

**ANSWER:**

5. Identify any and all complaints that NECC and Ameridose received related to the sterility or safety of their products, including but not limited to complaints by customers, current and former employees, and state and federal government agencies.

**ANSWER:**

6. Identify any customers of NECC and Ameridose who performed site visits prior to placing orders with either company.

**ANSWER:**

7. Describe any policies, procedures, or protocols relating to or regarding customer site visits to the NECC facility, including the areas you allowed customers to inspect.

   **ANSWER:**

8. Identify any customers who took the following actions prior to placing orders with NECC or Ameridose:

   a. Verified whether NECC's quality processes demonstrated that NECC was a reputable and safe supplier of sterile injectable compounds;

   b. Determined if NECC was an accredited compounding pharmacy;

   c. At least once annually, unannounced, visited NECCs corporate offices and compounding facilities and conferred with NECC's corporate, pharmacy, and compounding staff;

   d. Determined whether NECC had any product liability lawsuits filed against it for preparations compounded;

   e. Determined whether there had ever been recalls of any of NECC's compounded preparations;

   f. Evaluated NECC's standard operating procedures and manuals;

   g. Evaluated NECC's pharmacist technician training;

   h. Evaluated NECC's policies and procedures for sterility testing;

   i. Evaluated examples of batch reports for product being considered for outsourcing;

   j. Evaluated examples of quality-control reports;

   k. Obtained and evaluated history of the results of all NECC accreditation or regulatory surveys conducted of NECC's sites, including copies of significant regulatory actions;

   l. Determined if NECC could provide documentation of the end-product testing processes used to determine that compounded sterile preparations are sterile and free of pyrogens and unintended particulate matter;

   m. Evaluated whether NECC could assure that each compounded sterile preparation was sterile and free of pyrogens and unintended particulate matter according to professional established and accepted quality monitoring data;

n.  Determined whether NECC performed nonviable and viable particle testing in primary engineering controls (e.g., laminar flow workbench, biological safety cabinet) and room air according to USP chapter 797 standards;

o.  Determined whether NECC performed routine surface microbiological and fungal environmental monitoring to minimize contamination;

p.  Determined whether NECC had a policy that required validation of new or changed facilities, equipment, processes, or container types, for sterility and repeatability;

q.  Determined whether NECC met ASHP, NIOSH and USP chapter 797 guidelines for the handling of hazardous agents;

r.  Evaluated NECC's quality management program, specifically as it relates to facility cleaning and validation, staff training, and competency assessment;

s.  Evaluated NECC's risk assessment program to ensure that medication errors are not introduced by new or increased outsourced compounding activities; or

t.  Determined whether NECC had a history of disciplinary or punitive actions by any regulatory agency.

**ANSWER:**

9.  Describe any information you, NECC, or Ameridose provided to each customer in response to the inquiries identified in the previous Interrogatory.

**ANSWER:**

10. Identify any and all complaints NECC or Ameridose received related to their compliance with state or federal laws and regulations, including but not limited to complaints by customers, current and former employees, and state and federal government agencies.

**ANSWER:**

11. Identify and describe any way in which NECC's cleanrooms were modified, altered, or expanded by NECC or Ameridose.

**ANSWER:**

12. Identify any policies, procedures, or guidelines in place at NECC in 2012 that encouraged employees to disclose mistakes in the compounding process, even if the mistakes necessitated destruction of product or halting production.

**ANSWER:**

13. Describe all disciplinary or enforcement action taken against NECC or Ameridose by any state or federal government agency.

**ANSWER:**

14. Describe in detail Lisa Conigliaro Cadden's role at NECC in 2011 and 2012.

**ANSWER:**

<u>**VERIFICATION**</u>

STATE OF NEW JERSEY            )
                                             )
County of _____      )


     I, _____, after being duly sworn, hereby make oath that the foregoing answers to Interrogatories are true to the best of my knowledge, information, and belief.


_____


Sworn and subscribed before me this _____ day of _____, 2015.


_____
                     **Notary Public**

My commission expires on: _____.

9

## REQUESTS FOR PRODUCTION

1. Produce all correspondence between you and any of the Premier Defendants, their employees, agents, or representatives.

   **RESPONSE:**

2. Produce all correspondence and documents referring or related to the Premier Defendants' purchase of MPA from NECC in 2011 or 2012.

   **RESPONSE:**

3. Produce all documents produced by the government to you during any civil, criminal, or administrative proceedings related to NECC's contaminated MPA.

   **RESPONSE:**

4. Produce all policies, procedures, guidelines, instructions and training documents referring or relating to the compounding of MPA at the NECC facility.

   **RESPONSE:**

5. Produce all documents referring or relating to NECC or Ameridose sending sufficient samples, by size or volume, to comply with USP 71 to ARL or any other testing laboratory.

   **RESPONSE:**

6. Produce all documents referring or relating to any sterility, potency, endotoxin, or fungal testing that you received from ARL or any other laboratory related to MPA compounded by NECC or Ameridose in 2011 and 2012.

   **RESPONSE:**

7. Produce all correspondence and documents referring or relating to fungal blooms or growth in or near NECC's cleanrooms.

   **RESPONSE:**

8. Produce all documents referring or relating to any complaints that NECC or Ameridose received related to the sterility or safety of their products, including but not limited to complaints by customers, current or former employees, or state or federal government agencies.

   **RESPONSE:**

9.  Produce all documents referring or relating to any complaints NECC or Ameridose received related to their compliance with state or federal laws or regulations, including but not limited to complaints by customers, current or former employees, or state or federal government agencies.

    **RESPONSE:**

10. Produce all correspondence and documents referring or relating to NECC's response to the meningitis outbreak, including but not limited to, steps NECC took to prepare for any inspections of its facility.

    **RESPONSE:**

11. Produce all training and instructional material for sales staff at NECC or MSM.

    **RESPONSE:**

12. Produce copies of any and all New Jersey Pharmacy Licenses issued to NECC and/or Glenn Chin, and all documents or communications between NECC and/or Glenn Chin and the New Jersey Board of Pharmacy, including those referring or related to the procurement or renewal of said Licenses.

    **RESPONSE:**

## REQUESTS FOR ADMISION

1. Admit that you compounded the MPA lots numbered 05212012@68, 06292012@26, and 08102012@51 (collectively "Contaminated Lots").

   **ANSWER:**

2. Admit that you supervised the compounding of MPA lots numbered 05212012@68, 06292012@26, and 08102012@51 (collectively "Contaminated Lots").

   **ANSWER:**

3. Admit that as a supervising pharmacist, you owed a duty to the Plaintiffs to ensure that NECC's cleanroom was sterile prior to compounding any medications, including MPA in 2012.

   **ANSWER:**

4. Admit that as a supervising pharmacist, you owed a duty to the Plaintiffs to ensure that the MPA you compounded was sterile before you distributed it to customers.

   **ANSWER:**

5. Admit that, had any of the Premier Defendants asked for a copy of NECC's license in 2011, you would have provided a valid and up-to-date Massachusetts pharmacy license.

   **ANSWER:**

6. Admit that NECC represented to its customers, including the Premier Defendants, that it met or exceeded USP 797 standards.

   **ANSWER:**

7. Admit that NECC represented to its customers, including the Premier Defendants, that its products, including MPA, were safe and sterile.

   **ANSWER:**

8. Admit that the Massachusetts Board of Pharmacy ("Mass. BoP") inspected NECC on or about May 24, 2011.

   **ANSWER:**

9. Admit that as a result of its inspection on or about May 24, 2011, the Mass. BoP issued an inspection report documenting its findings.

**ANSWER:**

10. Admit that NECC failed to submit a copy of the Mass. BoP's May 24, 2011 inspection report to the New Jersey Board of Pharmacy.

**ANSWER:**

11. Admit that the documents attached as Exhibit B are NECC's Logged Formula Worksheets for the Contaminated Lots.

**ANSWER:**

12. Admit that in each Logged Formula Worksheet in Exhibit B, the pharmacist referred to as "GC" is Glenn Chin.

**ANSWER:**

13. Admit that the Logged Formula Worksheet for lot 06292012@26, attached as Exhibit B, states that the MPA was autoclaved for twenty (20) minutes at 121 C. and 15 PSI.

**ANSWER:**

14. Admit that NECC's Standard Operating Procedures required that the MPA be autoclaved for fifteen (15) minutes at 121 C. and 15 PSI.

**ANSWER:**

15. Admit that the Logged Formula Worksheets in Exhibit B state that Joseph P. Connolly was the technician for MPA lots 05212012@68 and 06292012@26.

**ANSWER:**

16. Admit that Exhibit C is NECC's General Overview of Policies and Procedures for Compounding Sterile Products.

**ANSWER:**

17. Admit that Exhibit C states, in part:

C. Personnel
    a. All sterile compounding is performed by properly trained and validated pharmacists (*no* technicians).

**ANSWER:**

18. Admit that NECC violated its own standard operating procedures by permitting Joseph Connolly (a technician) to compound two of the three contaminated lots.

**ANSWER:**

19. Admit that you owed a duty to NECC's customers to ensure that NECC's MPA was sterile prior to distributing it.

**ANSWER:**

20. Admit that NECC distributed some of the MPA from the Contaminated Lots prior to receiving final sterility, fungal, endotoxin, or potency testing results from its outside laboratory.

**ANSWER:**

21. Admit that the documents attached as Exhibit D are reports from Analytical Research Laboratories ("ARL") related to the sterility and endotoxin testing ARL performed on NECC's MPA from the Contaminated Lots.

**ANSWER:**

22. Admit that NECC submitted only two 5 mL vials of MPA from each of the Contaminated Lots to ARL for testing.

**ANSWER:**

23. Admit that USP standards for sterility testing required a larger sample size than two 5 mL vials per lot of MPA.

**ANSWER:**

24. Admit that USP 797 requires an ISO 5 space for stoppering vials of MPA.

**ANSWER:**

25. Admit that NECC stoppered the Contaminated Lots in an ISO 7 space.

**ANSWER:**

26. Admit that the documents attached as Exhibit E are true and accurate copies of emails you received from Barry Cadden in the normal course of NECC's business.

**ANSWER:**

27. Admit that in the email you received from Barry Cadden on Wednesday, August 10, attached as Exhibit E, Barry Cadden stated, "I am told that the lots for some drugs almost never coincide with the available test data."

**ANSWER:**

28. Admit that in the email you received from Barry Cadden on Wednesday, August 10, attached as Exhibit E, Barry Cadden stated, "I was told that we are only testing rarely and dispensing many untested lots."

**ANSWER:**

29. Admit that Exhibit F is a true and accurate copy of an email you sent to Barry Cadden on Monday, December 19, 2011.

**ANSWER:**

30. Admit that the email in Exhibit F was sent in the normal course of NECC's business.

**ANSWER:**

31. Admit that in the email attached as Exhibit F, you indicated that you were using "MTX" that had expired in 2007 in NECC's injectable products in 2011.

**ANSWER:**

Respectfully Submitted,

**BLUMBERG & WOLK, LLC**

/s/ Christopher Wolk
**Jay Blumberg**
**Christopher Wolk**
158 Delaware Street
P.O. Box 68
Woodbury, NJ 08096
(856) 848-7472

*Attorneys for the Premier Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of May, 2015, a true and accurate copy of the foregoing was served on Glenn Chin by U.S. mail and on the other parties below electronically via the Court's CM/ECF system:

O. Mark Zamora
The Orlando Firm, P.C.
P.O. Box 660216
Atlanta, GA 30366

*Attorney for the PSC*

Matthew P. Moriarty
Thomas W. Coffey
Richard A. Dean
Tucker Ellis, LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113

Scott H. Kremer
Tucker, Heifetz & Saltzman
Three School Street
Boston, MA 02108

Scott J. Tucker
Paul Saltzman
Matthew E. Mantalos
Tucker, Saltzman & Dyer, LLP
50 Congress Street
Boston, MA 02109

*Attorneys for Defendant Ameridose, LLC.*

Daniel M. Rabinovitz
Brady J. Hermann
Nicki Samson
Michaels, Ward & Rabinovitz
One Beacon Street, 2nd Floor
Boston, MA 02108

*Attorneys for Defendant Medical Sales Management, Inc.*

John P. Ryan
Robert H. Gaynor
William J. Dailey, Jr.
Sloane and Walsh, LLP
Three Center Plaza
Boston, MA 02108

*Attorneys for Gregory Conigliaro, Registered Agent for Service of Process for Medical Sales Management SW, Inc.*

17

Joseph P. Thomas
Ulmer & Berne, LLP
600 Vice Street, Suite 2800
Cincinnati, OH 45202

Joshua A. Klarfeld
Ulmer & Berne, LLP
1660 W. 2nd Street, Suite 1100
Cleveland, OH 44113

*Attorneys for Defendant GDC Properties
Management, LLC*

Kenneth B. Walton
Kristen R. Ragosta
Donovan Hatem, LLP
Two Seaport Lane, 8th Floor
Boston, MA 02210

*Attorney for Defendant ARL Biopharma*

John P. Ryan
Robert H. Gaynor
William J. Dailey, Jr.
Sloane and Walsh, LLP
Three Center Plaza
Boston, MA 02108

*Attorneys for Defendants Barry J. Cadden,
Lisa Conigliaro Cadden, Gregory
Conigliaro, Carla Conigliaro, Douglas
Conigliaro and Glenn A. Chin*

Bruce A. Singal
Michelle R. Peirce
Callan G. Stein
Donague, Barrett & Singal, P.C.
One Beacon Street, Suite 1320
Boston, MA 02108

*Attorneys for Defendants Barry J. Cadden
and Lisa Conigliaro Cadden*

Damian W. Wilmot
James Rehnquist
Abigail K. Hemani
Roberto M. Braceras
Goodwin Proctor LLP
Exchange Place
53 State Street
Boston, MA 02109

*Attorneys for Unifirst Corporation a/d/b/a
Uniclean Cleanroom Services*

Parks Chastain
Jason Lee
Brewer, Krause, Brooks, Chastain &
Burrow, PLLC
611 Commerce St., Suite 2600
P.O. Box 23890
Nashville, TN 37202
615-256-8787
Fax: 615-256-8985

*Attorneys for Specialty Surgery Center,
Crossville, PLLC*

Frederick H. Fern
Judi Abbott Curry
Jessica Saunders Eichel
Alan M. Winchester
Harris Beach PLLC
100 Wall Street
23rd Floor
New York, NY 10005

Geoffrey M. Coan
Daniel E. Tranen
Hinshaw & Culbertson LLP
28 State Street
24th Floor
Boston, MA 02109

Michael R. Gottfried
Thomas B.K. Ringe, III
Jennifer Mikels
Duane Morris LLP
100 High Street
Suite 2400
Boston, MA 02110-1724

*Attorneys for NECC*

Marcy H. Greer
Alexander Dubose Jefferson & Townsent
515 Congress Ave.
Quite 2350
Austin, TX 78701

Yvonne K. Puig
Eric Hoffman
Fulbright & Jaworski L.L.P.
98 San Jacinto Blvd.
Suite 1100
Austin, TX 78701

Sarah P. Kelly
Nutter, McClennen & Fish, LLP
Seaport West
155 Seaport Boulevard
Boston, MA 02210-2604

*Attorneys for the Saint Thomas Entities*

/s/ Christopher Wolk
**Christopher Wolk**

# EXHIBIT B

**Logged Formula Worksheet** (standard)
5/21/2012 9:58:08 AM
Page 1

L6229533

NEW ENGLAND COMPOUN
697 WAVERLY ST.
697 WAVERLY ST.
FRAMINGHAM, MA 01702 Ph

N ___ 17,125 g- *
N ___ 82,378 g-6
N ___ 28,583 g-3
N ___ 352,501 g-2

METHYLPRED, AC (PF) 80MG/ML INJECTABLE

Flavor:
Description:                                                    Schedule: L
Quantity made: 12500 ML            Batch yield: 12,500.000            PCCA ID:            Log ID: 2299534
                                   Qty remaining: 12,500.000          Route of admin:

Date made: 5/21/2012              *Pricing calculations fr*
Lot number: 05212012@68           Estimated price      $9.          15~
Beyond use date: November 17, 2012      9:57 AM      Ingredient cost     $0.          05-10-12 A09:45 IN
   180 days after compounding date    Device cost         $0.
Pharmacist: GC                        Time cost           $0.          SB
Technician: JOSEPH P CONNOLLY         Profit                           05-11-12 A09:05 OUT
NDC1:
Packaging:
Equipment:

Labeling: SHAKE WELL***SDV***
Stability Information:

| | Chemicals | Sch. | Quantity used | QS | | | |
|---|---|---|---|---|---|---|---|
| 1 | METHYLPREDNISOLONE ACETATE USP (STERILE) P↑ - | | 1000 GM | ☑ | | | |
| | Lot #: 7R740/A | Mfg: | | | Exp. date: 4/30/2016 | | 04-30-12 A09:48 OUT |
| | Chemical Code: | Volume: Medisca Potency: | | | QS amount: | | |
| | Balance: 8113/A | | | | NDC: 49452-1688-02 | Hoho 0520u@ 4:50 pd | |
| 2 | POLYETHYLENE GLYCOL 3350 NF (STERILE) BASE - | | 352.5 GM | ☐ | | $7,755.00 07/21/2005 | |
| | Lot #: 77089/A | Mfg: MEDISCA | | | Exp. date: 2/28/2014 | Whsr: MEDISCA | |
| | Chemical Code: | Volume: Potency: | | | QS amount: | AWP: $0.00 | |
| | Balance: | | | | NDC: | Each ML contains 0.0282 GM or 2.82% CheminvID: 0 | |
| 3 | SODIUM CHLORIDE (STERILE) GRANUALE - | | 28.5 GM | ☐ | | $0.56 04/02/2012 | |
| | Lot #: 11020203 | Mfg: MEDISCA | | | Exp. date: 11/10/2013 | Whsr: MEDISCA | |
| | Chemical Code: | Volume: Potency: | | | QS amount: | AWP: $5.13 | |
| | Balance: | | | | NDC: 51927108700 | Each ML contains 0.0022B GM or 0.228% CheminvID: 0 | |
| 4 | WATER FOR INJECTION INJ | | 12500 ML | ☒ | | $25,000.00 08/17/2005 | |
| | Lot #: J2B670 | Mfg: BRAUN | | | Exp. date: 8/31/2014 | Whsr: BRAUN | |
| | Chemical Code: | Volume: Potency: | | | QS amount: | AWP: $61.13 | |
| | Balance: | | | | NDC: 00409488799 | Each ML contains 1 ML or 100% CheminvID: 300 | |
| 5 | POLYSORBATE 80 (STERILE) LIQUID | O | 47.5 ML | ☐ | | $0.00 04/02/2009 | |
| | Lot #: 79814/C | Mfg: MEDISCA | | | Exp. date: 8/31/2013 | Whsr: MEDISCA | |
| | Chemical Code: | Volume: Potency: | | | QS amount: | AWP: $0.00 | |
| | Balance: | | | | NDC: | Each ML contains 0.0038 ML or 0.38% CheminvID: 170 | |
| 6 | SODIUM PHOSPHATE MONOBASIC (STERILE) POWDI - | | 82.375 GM | ☐ | | $82.38 09/30/2008 | |
| | Lot #: 11010925 | Mfg: LETCO | | | Exp. date: 8/11/2013 | Whsr: PROFESSIONAL COMPOUN | |
| | Chemical Code: | Volume: Potency: | | | QS amount: | AWP: $0.00 | |
| | Balance: | | | | NDC: | Each ML contains 0.0065B GM or 0.659% CheminvID: 0 | |
| 7 | SODIUM PHOSPHATE DIBASIC (STERILE) POWDER - | | 17.125 GM | ☐ | | $0.00 11/01/2011 | |
| | Lot #: G140892 | Mfg: PCCA | | | Exp. date: 8/14/2012 | Whsr: PROFESSIONAL COMPOUN | |
| | Chemical Code: | Volume: Potency: JT Beker | | | QS amount: 05-3/12 | AWP: $0.00 | |
| | Balance: K32/03 | | | | NDC: | Each ML contains 0.00137 GM or 0.137% CheminvID: 289 | |

(Added all GM & GMS: 1,480.50)                                      $32,837.94

*Log Instructions & Notes*
Originally made as: 12500 METHYLPRED, AC (PF) 80MG/ML INJECTABLE
Calculated lot number: 05212012@68   Beyond use date: 11/17/2012
FORMULA INSTRUCTIONS:      1L Nalgene filters      YT=60' Sy(CY) Pk-50 1Pamb /

ZEBRA BAR CODES:
99800010504 - 1mL VIAL      Lot# 161973
99800020504 - 2mL VIAL
99800050504 - 5mL VIAL      exp: 01-17

Date entered: 5/21/2012 9:57:45 AM   Last modified: 5/21/2012 9:58:06 AM   by: LAB
Checked by: _____      Date 05/14/

Confidential - Subject to Protective Order                    NECC_MDL000005160

```
MODEL No. HLS-3881

OPERATION DATE 2012/05/21
           TIME PM 08:45:12

COURSE    1

           CYCLE STARTED

TIME     TEMP    PRESS   STATUS
ELAPSED  CENT.   kPa     CYCLE

00:11:58 090.0    14     HEAT
00:13:59 100.0    24     HEAT
00:22:01 108.4    30     HEAT

00:25:25 121.8   104     STERI.
00:27:25 121.8   110     STERI.
00:29:25 121.6   111     STERI.
00:31:25 121.6   109     STERI.
00:33:25 121.7   111     STERI.
00:35:25 121.7   111     STERI.
00:37:25 121.6   110     STERI.
00:39:25 121.7   112     STERI.

00:40:29 121.7   112     COOL

01:14:16 064.9     5     COMPLETE

START TIME PM 08:45:12
END TIME   PM 09:59:27
```

NECC_MDL000005161

**Logged Formula Worksheet** (standard)
6/29/2012 9:06:36 AM
Page 1

NEW ENGLAND COMPOUND
697 WAVERLY ST.
697 WAVERLY ST.
FRAMINGHAM, MA 01702 P

METHYLPRED. AC (PF) 80MG/ML INJECTABLE

Flavor:
Description:
Quantity made: 12500 ML

Schedule: L

Batch yield: 12,500.000
Qty remaining: 12,500.000

PCCA ID:
Route of admin:

Formula ID: 2226
Log ID: 235896

Date made: 6/29/2012
Lot number: 06292012@26
Beyond use date: December 26, 2012                    9:06 AM
180 days after compounding date
Pharmacist: GC
Technician: <NONE>
NDC1:
Packaging:
Equipment:

*Pricing calculations from t*
Estimated price      $9.00
Ingredient cost      $0.00
Device cost          $0.00
Time cost
Profit

Labeling: SHAKE WELL***SDV***
Stability information:

| Chemicals | Sch. | Quantity used | QS | (B |
|---|---|---|---|---|
| 1  METHYLPREDNISOLONE ACETATE USP (STERILE) Pt - | | 1000 GM | ☐ | Whls |
| Lot #: 78740/A          Mfg:          Volume:          Potency: | | Exp. date: 4/30/2016   QS amount: | | |
| Balance:     Chemical Code: | | NDC: 49452-4888-02 | | |
| 2  POLYETHYLENE GLYCOL 3350 NF (STERILE) BASE - | | 352.5 GM | ☐ | Whls:  MEDISCA | | $7,755.00   07/21/2005 |
| Lot #: 77089/A          Mfg: MEDISCA          Volume:          Potency: | | Exp. date: 2/28/2014   QS amount: | | Each ML contains 0.0282 GM or 2.82% |
| Balance:     Chemical Code: | | NDC: | | AWP:            CheminvID: |
| 3  SODIUM CHLORIDE (STERILE) GRANULE - | | 28.5 GM | ☐ | Whls:  MEDISCA | | $0.56   04/02/2012 |
| Lot #: 11020203        Mfg: MEDISCA          Volume:          Potency: | | Exp. date: 11/10/2013   QS amount: | | Each ML contains 0.0028 GM or 0.228% |
| Balance:     Chemical Code: | | NDC: 51827108700 | | AWP:            CheminvID: |
| 4  WATER FOR INJECTION INJ - | | 12500 ML | ☒ | Whls:  BRAUN | | $25,000.00   06/17/2005 |
| Lot #: J2A488          Mfg: BRAUN          Volume:          Potency: | | Exp. date: 7/31/2014   QS amount: | | Each mL or 100% |
| Balance:     Chemical Code: | | NDC: 00409488799 | | AWP:            CheminvID: 300 |
| 5  POLYSORBATE 80 (STERILE) LIQUID      O | | 47.5 ML | ☐ | Whls:  MEDISCA | | $0.00   04/02/2009 |
| Lot #: 79814/C          Mfg: MEDISCA          Volume:          Potency: | | Exp. date: 8/31/2013   QS amount: | | Each ML contains 0.0038 ML or 0.38% |
| Balance:     Chemical Code: | | NDC: | | AWP:            CheminvID: 120 |
| 6  SODIUM PHOSPHATE MONOBASIC (STERILE) POWDI - | | 82.375 GM | ☐ | Whls:  PROFESSIONAL COMPOUN | | $82.38   09/30/2008 |
| Lot #: 11010925        Mfg: LETCO          Volume:          Potency: | | Exp. date: 8/11/2013   QS amount: | | Each ML contains 0.00659 GM or 0.659% |
| Balance:     Chemical Code: | | NDC: | | AWP:            CheminvID: 0 |
| 7  SODIUM PHOSPHATE DIBASIC (STERILE) POWDER - | | 17.125 GM | ☐ | Whls:  PROFESSIONAL COMPOUN | | $0.00   11/01/2011 |
| Lot #: C140892        Mfg: PCCA          Volume:          Potency: | | Exp. date: 4/1/2013   QS amount: | | Each ML contains 0.00137 GM or 0.137% |
| Balance:     Chemical Code: | | NDC: | | AWP:            CheminvID: 289 |

(Added all GM & GMS: 1,480.50)                    $32,637.94

*Log Instructions & Notes*
Originally made as: 12500 METHYLPRED. AC (PF) 80MG/ML INJECTABLE
Calculated lot number: 06292012@26   Beyond use date: 12/26/2012
FORMULA INSTRUCTIONS:

ZEBRA BAR CODES:
99600010504 - 1mL VIAL
99600020504 - 2mL VIAL
99600050504 - 5mL VIAL

Date entered: 6/29/2012 9:06:22 AM    Last modified: 6/29/2012 9:06:34 AM    by: LAB
Checked by: _____   Date: _____

Confidential - Subject to Protective Order

NECC_MDL000005167

*BASE Beaker*

06-22-12 P 03:05 OUT

*BASE S₀B₀*

```
MODEL No. NLS-3781

OPERATION DATE 2012/06/30
         TIME PM 08:01:18

COURSE   1

        CYCLE STARTED

TIME    TEMP   PRESS  STATUS
ELAPSED CENT.  kPa    CYCLE

00:09:53 090.0    6   HEAT
00:13:28 100.0   23   HEAT
00:21:30 101.5   10   HEAT

00:25:41 121.0  104   STERI.
00:27:41 121.8  110   STERI.
00:29:41 121.8  110   STERI.
00:31:41 121.8  110   STERI.
00:33:41 121.6  110   STERI.
00:35:41 121.8  112   STERI.
00:37:41 121.7  112   STERI.
00:39:41 121.6  111   STERI.

00:40:48 121.8  114   COOL

01:15:00 064.9    4   COMPLETE

START TIME PM 08:01:18
END TIME   PM 09:16:18
```

Confidential - Subject to Protective Order

NECC_MDL000005168

**Logged Formula Worksheet** (standard)
6/29/2012 9:06:36 AM
Page 2



NEW ENGLAND COMPOUNDING CTR
697 WAVERLY ST.
697 WAVERLY ST.
FRAMINGHAM, MA  01702  Ph. 800-994-6322

METHYLPRED. AC (PF) 80MG/ML INJECTABLE

Flavor:                                                                    Schedule: L         Active ☑
Description:                                                                                   Formula ID: 2226
Quantity made: 12500 ML          Batch yield:  12,500.000          PCCA ID:          Log ID: 235896
                                 Qty remaining:  12,500.000        Route of admin:

12/09/09 POLYSORBATE-80 DOUBLED FROM 0.194ML/100ML TO 0.38ML/100ML GC

MATERIALS: STERILE BEAKER, STERILE SPIN BAR, STERILE HOMOGENIZER ELEMENT
    medisca 500gm plastic bottle weighs 98gms, plastic seal ring weighs 0.7gms
    medisca 1kg plastic bottle weighs 145gms, WITH TOP
1) WEIGH CHEMICALS IN STERILE WEIGH CUPS ON ELECTRONIC ANALYTICAL BALANCE
2) IN HOOD DISSOLVE BASE-B, SODIUM PHOSPHATE MONOBASIC, SODIUM PHOSPHATE DIBASIC, SODIUM
CHLORIDE, AND POLYSORBATE -80 IN VORTEX OF 80% FINAL VOLUME OF STERILE WATER.FILTER SOLUTION
THROUGH A 0.22MICRON NALGENE FILTER.
3) SLOWLY ADD METHYLPREDNISOLONE ACETATE TO VORTEX OF ABOVE SOLUTION.
4) HOMOGENIZE AT HIGH SPEED FOR 2-5 MINUTES (VOLUME DEP.)
5) QS TO FINAL VOLUME WITH STERILE WATER FOR INJECTION.
6) COVER WITH MULTIPLE LAYERS OF FOIL AND SEAL WITH AUTOCLAVE INDICATOR TAPE
7) AUTOCLAVE AT 121C-15PSI-20MIN
####SPRAY EXTERIOR OF SEALED BEAKER WITH 70% IPA####
8) RETURN TO HOOD AND REHOMOGENIZE. CREATE VORTEX AND ALLOW TO SOIN TILL COOLED TO ROOM
TEMP.
9) FILL STERILE  AMBER VIALS USING BAXA REPEATER PUMP VIA DISPOSABLE STERILE TUBING
10) CAP ,CRIMP, AND LABEL

####PULL RANDOM VIALS FOR APPROPRIATE ANALYSIS####

Date entered: 6/29/2012 9:06:22 AM     Last modified:  6/29/2012 9:06:34 AM     by: LAB
Checked by: _____     Date: ____/____/_____

Confidential - Subject to Protective Order

**Logged Formula Worksheet** (standard)
8/10/2012 2:43:06 PM
Page 1

NEW ENGLAND COMPOUN
697 WAVERLY ST.
697 WAVERLY ST.
FRAMINGHAM, MA  01702

METHYLPRED. AC (PF) 80MG/ML INJECTABLE

Flavor:
Description:
Quantity made: 12500 ML                    Batch yield:  12,500.000          PCCA ID:
                                            Qty remaining: 12,500.000        Route of admin:

Date made: 8/10/2012
Lot number: 08102012@51
Beyond use date: February 6, 2013        2:42 PM
        180 days after compounding date
Pharmacist:  GC
Technician: JOSEPH P CONNOLLY
NDC1:
Packaging:
Equipment:

Schedule: L

| Pricing calculations from the R | |
| --- | --- |
| Estimated price | $9.00 as of |
| Ingredient cost | $0.00 |
| Device cost | $0 |
| Time cost | $0 |
| Profit | $9 |

Labeling: SHAKE WELL***SDV***
Stability information:

| Chemicals | Sch. | Quantity used | QS | (Balance) |
| --- | --- | --- | --- | --- |
| 1  METHYLPREDNISOLONE ACETATE USP (STERILE) Pt - | | = 1000 GM | | Whlsr: |
|    Lot #: 78748/A    Mfg: | | Exp. date: 4/80/2016 | | |
|    Chemical Code:    Volume:    Potency: | | QS amount: | | Each |
|                                          | | NDC: 49452-4688-02 | | Each |
| X  POLYETHYLENE GLYCOL 3350 NF (STERILE) BASE - | | 352.5 GM | | Whlsr: |
|    Lot #: 76985/A    Mfg: MEDISCA | | Exp. date: 8/31/2013 | | |
|    Chemical Code:    Volume:    Potency: | | QS amount: | | CheminVID: 0 |
| SODIUM CHLORIDE (STERILE)  GRANUALE | - | 28.5 GM | | Whlsr: MEDISCA  $0.56  4/2/2012 |
|    Lot #: 11020203    Mfg: MEDISCA | | Exp. date: 11/10/2013 | | |
|    Chemical Code:    Volume:    Potency: | | QS amount: | | AWP:  $9.13  Each ML contains 0.00228 GM or 0.228% |
|                                          | | | | CheminVID: 0 |
| WATER FOR INJECTION INJ | - | 12500 ML | X | Whlsr: BRAUN  $25,000.00  6/17/2005 |
|    Lot #: J2B670    Mfg: BRAUN | | Exp. date: 8/31/2014 | | |
|    Chemical Code:    Volume:    Potency: | | QS amount: | | AWP:  $91.13  Each ML contains 1 ML or 100% |
|                                          | | NDC: 00409488799 | | CheminVID: 300 |
| POLYSORBATE 80 (STERILE)  LIQUID | O | 47.5 ML | | Whlsr: MEDISCA  $0.00  4/2/2009 |
|    Lot #: 79814/C    Mfg: MEDISCA | | Exp. date: 8/31/2013 | | |
|    Chemical Code:    Volume:    Potency: | | QS amount: | | AWP:  $9.00  Each ML contains 0.0038 ML or 0.30% |
|                                          | | NDC: | | CheminVID: 170 |
| SODIUM PHOSPHATE MONOBASIC (STERILE) POWDI - | | 82.375 GM | | Whlsr: PROFESSIONAL COMPOUN  $82.36  9/30/2008 |
|    Lot #: 11010925    Mfg: LETCO | | Exp. date: 8/11/2013 | | |
|    Chemical Code:    Volume:    Potency: | | QS amount: | | AWP:  $9.00  Each ML contains 0.00659 GM or 0.659% |
|                                          | | NDC: | | CheminVID: 0 |
| SODIUM PHOSPHATE DIBASIC (STERILE)  POWDER | | 17.125 GM | | Whlsr: PROFESSIONAL COMPOUN  $0.00  11/1/2011 |
|    Lot #: G140892    Mfg: P80A | | Exp. date: 8/7/2013 | | |
|    Chemical Code:    Volume:    Potency: | | QS amount: | | AWP:  $9.00  Each ML contains 0.00137 GM or 0.137% |
|                                          | | NDC: | | CheminVID: 289 |

(Added all GM & GMS: 1,480.50)          $32,837.94

*Log Instructions & Notes*

Originally made as: 12500 METHYLPRED. AC (PF) 80MG/ML INJECTABLE
Calculated lot number: 08102012@51  Beyond use date: 2/6/2013
FORMULA INSTRUCTIONS:

ZEBRA BAR CODES:
99600010504 - 1mL VIAL
99600020504 - 2mL VIAL
99600050504 - 5mL VIAL

Date entered: 8/10/2012 2:42:54 PM    Last modified: 8/10/2012 2:43:04 PM    by: LAB
Checked by: _____                          Date: 08/10/2012

Confidential - Subject to Protective Order

NECC_MDL000013151

# EXHIBIT C



697 Waverly Street, Framingham, MA 01702
Tel: 800.994.6322 or 508.820.0606
Fax: 888.820.0583 or 508.820.1616
www.neccrx.com

# General Overview of Policies & Procedures for Compounding Sterile Products

NECC operates in accordance with the following general guidelines when compounding sterile products:

### A. Facility/Equipment
    a. ISO-5 & ISO-6 Cleanroom(s).
    b. Class 10 Microenvironments (barrier isolator).
    c. Certified by Massachusetts Board of Pharmacy as a pharmacy with a central venous admixture service (CIVAS) in accordance with Board regulations, 247 CMR 6.01 (6)(c).

### B. Monitoring & Maintenance
Comprehensive environmental monitoring program
    a. All cleanroom space, air, surfaces and hoods are sampled on a weekly basis, exceeding USP 797.

### C. Personnel
    a. All sterile compounding is performed by properly trained and validated registered pharmacists.
    b. Pharmacy personnel are trained/validated by an outside agency, Professional Compounding Centers of America (PCCA).
    c. Personnel are validated on a quarterly basis.

### D. Quality Assurance/Quality Control
    a. USP Chemicals are obtained only from FDA registered facilities.
    b. Formulations are sterilized by 0.22 micron filtration or by autoclaving.
    c. Samples from final product batch lots are sent to an independent FDA registered analytical lab for sterility, endotoxin (pyrogenicity) and potency testing.
    d. Tested medication is quarantined and dispensed only after the sample has tested negative for endotoxin and microbial contamination.

Confidential - Subject to Protective Order

NECC_MDL000002881

e. The Quality Assurance Team (QAT), made up of employees from all departments within NECC, meets regularly to review all quality related items.
f. NECC maintains strict environmental testing protocols. Results of these tests are reported via Quarterly QA Reports.
g. All sterile compounding actions are performed in compliance with NECC's Standard Operating Procedures (SOPs). These SOPs have been "mapped" against USP 797 "Pharmaceutical Compounding – sterile preparations" to ensure that all USP 797 requirements are observed.

**E. Use-by Dating**

Each dosage form is labeled with a BUD/expiration date appropriate to the formulation obtained from:

a. Current literature.
b. Independent stability assay.

**F. Packaging**

a. Compounded preparations are packaged in containers meeting USP standards.
b. Container used depends on the physical and chemical properties of the compounded preparation.

**G. Dispensing**

There must be a specific practitioner-patient-pharmacist relationship in place to dispense to an individual patient or facility.

**H. Shipping**

Medications are shipped overnight (usually via FedEx) in an appropriate container to ensure controlled temperatures and product integrity.

**I. Licensing**

NECC has undertaken a rigorous licensure process thus giving us the ability to legally dispense prescription medication in all 50 states.

Confidential - Subject to Protective Order

# EXHIBIT D



# ANALYTICAL RESEARCH LABORATORIES

840 RESEARCH PARKWAY, SUITE 546
OKLAHOMA CITY, OK 73104
PHONE (405) 271-1144
FAX (405) 271-1174

# Certificate Of Analysis

CLIENT:    New England Compounding Center-MA

ARL #:      176896-01
LOT #:      05212012@68
DESCRIPTION:    Methylprednisolone AC (PF) 80 mg/mL Injection
DATE RECEIVED:   05/22/2012
STORAGE:    20°C to 25°C (68°F to 77°F)
CONTAINER:   Two 5 mL amber vials

| Analyte / Specifications | Expected Amount | Units | Results | % Of EXP. | Test Method | Date Tested |
|---|---|---|---|---|---|---|
| Methylprednisolone Acetate Specifications = 90% - 110% | 80 | mg/mL | 83.604 | 104.5% | HPLC | 5/23/2012 |

_____                    05/24/2012
alex tang - Laboratory Supervisor            Date Reported          *ARL Form QUF-078-V4  03/05/2010*

*Results reported above relate only to the sample that was tested.*
Page 1 of 2

Confidential - Subject to Protective Order                    NECC_MDL000005162



# ANALYTICAL RESEARCH LABORATORIES

840 RESEARCH PARKWAY, SUITE 546
OKLAHOMA CITY, OK 73104
PHONE (405) 271-1144
FAX (405) 271-1174

# Microbiology Report

CLIENT:   New England Compounding Center-MA

ARL #:   176896-01
LOT #:   05212012@68
DESCRIPTION:   Methylprednisolone AC (PF) 80 mg/mL Injection
DATE RECEIVED:   05/22/2012
STORAGE:   20°C to 25°C (68°F to 77°F)
CONTAINER:   Two 5 mL amber vials

| ANALYSIS | Limits | Results | Test Method | Date Tested |
|---|---|---|---|---|
| Sterility | Sterile / Not Sterile | Sterile | USP 71 | 05/22/2012 |
| Endotoxin | 6.25 EU/mg | <0.05 EU/mg | USP 85 | 05/23/2012 |

_____                    06/05/2012

Amar Arafat - Microbiologist                        Date Reported

*Sterility - 14 day sterility report.  In accordance with the USP guidelines, the samples will be incubated for 14 days.*

*Results reported above relate only to the sample that was tested.*

Page 1 of 2                                          *ARL Form QUF-078-V4 03/05/2010*

Confidential - Subject to Protective Order



# ANALYTICAL RESEARCH LABORATORIES

840 RESEARCH PARKWAY, SUITE 546
OKLAHOMA CITY, OK 73104
PHONE (405) 271-1144
FAX (405) 271-1174

# Microbiology Report

CLIENT:   New England Compounding Center-MA

ARL #:      176896-01
LOT #:      05212012@68
DESCRIPTION:   Methylprednisolone AC (PF) 80 mg/mL Injection
DATE RECEIVED:   05/22/2012
STORAGE:   20°C to 25°C (68°F to 77°F)
CONTAINER:   Two 5 mL amber vials

| ANALYSIS | Limits | Results | Test Method | Date Tested |
|---|---|---|---|---|
| Sterility (*Preliminary*) | Sterile / Not Sterile | Sterile | USP 71 | 05/22/2012 |
| Endotoxin | 6.25 EU/mg | <0.05 EU/mg | USP 85 | 05/23/2012 |

*Sterility - This preliminary report was issued after approximately 72 hours of incubation. In accordance with the USP guidelines, the samples will be incubated for 14 days; if there is any change in the sample a supplemental report will be issued.*

*Fungal - This preliminary report was issued after 4-5 days of incubation. In accordance with the USP guidelines, the samples will be incubated for 14 days; if there is any change in the sample a supplemental report will be issued.*

*Endotoxin - To calculate the endotoxin limit use the following formulae:  EL = K/M where K = tolerance limit (EU/kg) and M = Maximum dose/kg/hour or Maximum dose/kg*
*Parenteral: K is 5 EU/kg for any route of administration/Intrathecal: K is 0.2 EU/kg body weight)*
*Radiopharmaceutical: K is 175/V or Intrathecal radiopharmaceuticals: K is 14/V, where V is the maximum recommended dose in mL.*
*Dermal Application: K/M, where K = 5 EU/kg and M is the (maximum dose/m2/hour × 1.80 m2)/70 Kg.*

_____                    05/25/2012

Amar Arafat - Microbiologist                    Date Reported          *ARL Form QUF-078-V4 03/05/2010*

*Results reported above relate only to the sample that was tested.*
Page 2 of 2

Confidential - Subject to Protective Order                    NECC_MDL000005164



# ANALYTICAL RESEARCH LABORATORIES

840 RESEARCH PARKWAY, SUITE 546
OKLAHOMA CITY, OK 73104
PHONE (405) 271-1144
FAX (405) 271-1174

# Certificate Of Analysis

CLIENT:   New England Compounding Center-MA

ARL #:        180509-01
LOT #:        06292012@26
DESCRIPTION:      Methylprednisolone AC (PF) 80 mg/mL Injection
DATE RECEIVED:    07/03/2012
STORAGE:       20°C to 25°C (68°F to 77°F)
CONTAINER:     Two 5 mL amber vials

| Analyte / Specifications | Expected Amount | Units | Results | % Of EXP. | Test Method | Date Tested |
|---|---|---|---|---|---|---|
| Methylprednisolone Acetate Specifications = 90% - 110% | 80 | mg/mL | 81.451 | 101.8% | HPLC | 7/5/2012 |

_____
Alex Tang - Laboratory Supervisor

07/05/2012
Date Reported

*ARL Form QUF-078-V4 03/05/2010*

*Results reported above relate only to the sample that was tested.*
Page 1 of 2

Confidential - Subject to Protective Order

NECC_MDL000005170



# ANALYTICAL RESEARCH LABORATORIES

840 RESEARCH PARKWAY, SUITE 546
OKLAHOMA CITY, OK 73104
PHONE (405) 271-1144
FAX (405) 271-1174

# Microbiology Report

CLIENT:   New England Compounding Center-MA

ARL #:      180509-01
LOT #:      06292012@26
DESCRIPTION:   Methylprednisolone AC (PF) 80 mg/mL Injection
DATE RECEIVED:   07/03/2012
STORAGE:      20°C to 25°C (68°F to 77°F)
CONTAINER:      Two 5 mL amber vials

| ANALYSIS | Limits | Results | Test Method | Date Tested |
|---|---|---|---|---|
| Sterility | Sterile / Not Sterile | Sterile | USP 71 | 07/03/2012 |
| Endotoxin | 6.25 EU/mg | <0.05 EU/mg | USP 85 | 07/06/2012 |

Sample properties cause turbidity in growth media. Per USP 71; the sample will be inoculated into new growth media after 14 days of incubation and incubated for 4 additional days.

_____          07/17/2012

Amar Arafat - Microbiologist                          Date Reported

*Sterility - 14 day sterility report. In accordance with the USP guidelines, the samples will be incubated for 14 days.*

*Results reported above relate only to the sample that was tested.*

Page 1 of 1                                                    *ARL Form QUF-078-V4  03/05/2010*

NECC_MDL000005171



# ANALYTICAL RESEARCH LABORATORIES

840 RESEARCH PARKWAY, SUITE 546
OKLAHOMA CITY, OK 73104
PHONE (405) 271-1144
FAX (405) 271-1174

# Microbiology Report

CLIENT:  New England Compounding Center-MA

ARL #:  180509-01
LOT #:  06292012@26
DESCRIPTION:  Methylprednisolone AC (PF) 80 mg/mL Injection
DATE RECEIVED:  07/03/2012
STORAGE:  20°C to 25°C (68°F to 77°F)
CONTAINER:  Two 5 mL amber vials

| ANALYSIS | Limits | Results | Test Method | Date Tested |
|---|---|---|---|---|
| Sterility ("Preliminary") | Sterile / Not Sterile | Sterile | USP 71 | 07/03/2012 |
| Endotoxin | 6.25 EU/mg | <0.05 EU/mg | USP 85 | 07/06/2012 |

*Sterility - This preliminary report was issued after approximately 72 hours of incubation. In accordance with the USP guidelines, the samples will be incubated for 14 days; if there is any change in the sample a supplemental report will be issued.*

*Fungal - This preliminary report was issued after 4-5 days of incubation. In accordance with the USP guidelines, the samples will be incubated for 14 days; if there is any change in the sample a supplemental report will be issued.*

*Endotoxin - To calculate the endotoxin limit use the following formulae: EL = K/M where K = tolerance limit (EU/kg) and M = Maximum dose/kg/hour or Maximum dose/kg*
*Parenteral: K is 5 EU/kg for any route of administration /Intrathecal: K is 0.2 EU/kg body weight)*
*Radiopharmaceutical parenteral: K is 175/V or Intrathecal radiopharmaceuticals: K is 14/V, where V is the maximum recommended dose in mL.*
*Dermal Application: K/M, where K = 5 EU/kg and M is the (maximum dose/m2/hour × 1.80 m2)/70 Kg.*

_(signature)_                 07/06/2012

Amar Arafat - Microbiologist        Date Reported        *ARL Form QUF-078-V4 03/05/2010*

*Results reported above relate only to the sample that was tested.*
Page 2 of 2

Confidential - Subject to Protective Order



# ANALYTICAL RESEARCH LABORATORIES

840 RESEARCH PARKWAY, SUITE 546
OKLAHOMA CITY, OK 73104
PHONE (405) 271-1144
FAX (405) 271-1174

# Certificate Of Analysis

CLIENT:  New England Compounding Center
697 Waverly Street
Framingham, MA 01702

ARL #:  184460-01
LOT #:  08102012@51
DESCRIPTION:  Methylprednisolone AC (PF) 80 mg/mL Injection
DATE RECEIVED:  08/14/2012
STORAGE:  20°C to 25°C (68°F to 77°F)
CONTAINER:  Two 5 mL clear vials

| Analyte / Specifications | Expected Amount | Units | Results | % Of EXP. | Test Method | Date Tested |
|---|---|---|---|---|---|---|
| Methylprednisolone Acetate Specifications = 90% - 110% | 80 | mg/mL | 81.676 | 102.1% | HPLC | 8/15/2012 |

08/15/2012

Alex Tang - Laboratory Supervisor                    Date                    *ARL Form QUF-078-V4 03/05/2010*

*Results reported above relate only to the sample that was tested.*

Confidential - Subject to Protective Order

NECC_MDL000013152



## ANALYTICAL RESEARCH LABORATORIES

840 RESEARCH PARKWAY, SUITE 546
OKLAHOMA CITY, OK 73104
PHONE (405) 271-1144
FAX (405) 271-1174

# Certificate Of Analysis

CLIENT:   New England Compounding Center
697 Waverly Street
Framingham, MA 01702

ARL #:   184460-01
LOT #:   08102012@51
DESCRIPTION:   Methylprednisolone AC (PF) 80 mg/mL Injection
DATE RECEIVED:   08/14/2012
STORAGE:   20°C to 25°C (68°F to 77°F)
CONTAINER:   Two 5 mL clear vials

| Analyte / Specifications | Expected Amount | Units | Results | % Of EXP. | Test Method | Date Tested |
|---|---|---|---|---|---|---|
| Methylprednisolone Acetate Specifications = 90% - 110% | 80 | mg/mL | 81.676 | 102.1% | HPLC | 8/15/2012 |

_____                     08/15/2012

Alex Tang - Laboratory Supervisor                     Date                     *ARL Form QUF-078-V4 03/05/2010*

*Results reported above relate only to the sample that was tested.*

Page 1 of 2



# ANALYTICAL RESEARCH LABORATORIES

840 RESEARCH PARKWAY, SUITE 546
OKLAHOMA CITY, OK 73104
PHONE (405) 271-1144
FAX (405) 271-1174

# Microbiology Report

CLIENT:   New England Compounding Center

ARL #:       184460-01
LOT #:       08102012@51
DESCRIPTION:   Methylprednisolone AC (PF) 80 mg/mL Injection
DATE RECEIVED:   08/14/2012
STORAGE:       20°C to 25°C (68°F to 77°F)
CONTAINER:     Two 5 mL clear vials

| ANALYSIS | Limits | Results | Test Method | Date Tested |
|---|---|---|---|---|
| Endotoxin | 6.25 EU/mg | <0.05 EU/mg | USP 85 | 08/16/2012 |

Sample properties cause turbidity in growth media. Per USP 71, the sample will be inoculated into new growth media after 14 days of incubation and incubated for 4 additional days.

Tiffany O. Hyde

Tiffany Hyde - Microbiologist

08/17/2012

Date Reported

*Sterility – This preliminary report was issued after approximately 72 hours of incubation. In accordance with the USP guidelines, the sample will be incubated for 14 days; if there is any change in the sample a supplemental report will be issued.*

*Fungal – This preliminary report was issued after approximately 4 days of incubation. In accordance with the USP guidelines, the sample will be incubated for 14 days; if there is any change in the sample a supplemental report will be issued.*

*Endotoxin - To calculate the endotoxin limit use the following formulae: EL = K/M where K = tolerance limit (EU/kg) and M = Maximum dose/kg/hour or Maximum dose/kg*
*Parenteral: K is 5 EU/kg for any route of administration/Intrathecal: K is 0.2 EU/kg body weight)*
*Parenteral: K is 175/V or Intrathecal radiopharmaceuticals: K is 14/V, where V is the maximum recommended dose in mL.*
*Radiopharmaceutical parenteral: K is 175/V or Intrathecal radiopharmaceuticals: K is 14/V, where V is the maximum recommended dose in mL.*
*Dermal Application: K/M, where K = 5 EU/kg and M is the (maximum dose/m2/hour × 1.80 m2)/70 Kg.*

*Results reported above relate only to the sample that was tested.*

Page 1 of 1                                                                 ARL Form QUF-078-V5 08/20/2012

Confidential - Subject to Protective Order

NECC_MDL000013154



# ANALYTICAL RESEARCH LABORATORIES

840 RESEARCH PARKWAY, SUITE 546
OKLAHOMA CITY, OK 73104
PHONE (405) 271-1144
FAX (405) 271-1174

# Microbiology Report

CLIENT:   New England Compounding Center
          697 Waverly Street
          Framingham, MA 01702

ARL #:         184460-01
LOT #:         08102012@51
DESCRIPTION:   Methylprednisolone AC (PF) 80 mg/mL Injection
DATE RECEIVED: 08/14/2012
STORAGE:       20°C to 25°C (68°F to 77°F)
CONTAINER:     Two 5 mL clear vials

| ANALYSIS | Limits | Results | Test Method | Date Tested |
|----------|--------|---------|-------------|-------------|
| Sterility | Sterile / Not Sterile | No Growth at 14 Days | USP 71 | 08/14/2012 |

Sample properties cause turbidity in growth media. Per USP 71, the sample will be inoculated into new growth media after 14 days of incubation and incubated for 4 additional days.

*Tiffany O. Hyde*                                      08/28/2012
_____                    _____
Tiffany Hyde - Microbiologist                       Date Reported

*Sterility – 14 day sterility report. In accordance with the USP guidelines, the sample was incubated for 14 days.*
*Fungal – 14 day fungal report. In accordance with the USP guidelines, the sample was incubated for 14 days.*

*Results reported above relate only to the sample that was tested.*

Page 1 of 1                                          *ARL Form QUY-078-V5 08/20/2012*

# EXHIBIT E

| From: | Barry Cadden </O=FIRST ORGANIZATION/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=BCADDEN> |
|---|---|
| Sent: | Wednesday, August 10, 2011 10:37 AM |
| To: | Glenn Chin <gchin@neccrx.com> |
| Subject: | |

What's the testing process for the large volume meds currently? I assumed that we have at least sterility testing for "all" lots of large volume injectable lots that we are dispensing but I am told that the lots for some drugs almost never coincide with the available test data. Is this true? You need to run like normal stock meds like beta repos = test every lot and just fill as you go based on the size vial + # needed or make as many lots as you like "internally" but only label vials with lot# of tested lots to cover our ass =ex.. Avastin. I was told that we are only testing rarely and dispensing many untested lots? Please clear this up + tell me what we are doing + will do. Bottom line is we can't be caught with our pants at our ankles....ever.

USAO00035783

| | |
|---|---|
| From: | Barry Cadden </O=FIRST ORGANIZATION/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=BCADDEN> |
| Sent: | Tuesday, May 22, 2012 1:50 PM |
| To: | Glenn Chin <gchin@neccrx.com> |
| Subject: | |

This situation is exactly why Scott must be swapped into a less dangerous position! We would be fucked if this was a cardio med!!!......

USAO00082077

| From: | Barry Cadden </O=FIRST ORGANIZATION/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=BCADDEN> |
| Sent: | Tuesday, August 7, 2012 9:16 AM |
| To: | Glenn Chin <gchin@neccrx.com> |
| Subject: | |

The "problem" CP order has my name as sign in for pump!....we need to get Scott out of that room or at least off the sign in by tomorrow. Have him be there , help, train...etc but someone else MUST sign in ......................I have no idea how I am going to explain this situation but it can't continue beyong today.........see me later

thanks

USAO00083471

From: Barry Cadden
Sent: Tuesday, July 03, 2012 2:20 PM
To: Glenn Chin
Subject:

What's going on with the materials (mops..etc) for the Uniclean, cleaning people? How are they being handled? ...I ask because we have another fungal bloom on June-28[th]...day of last cleaning. Are the pharmacists watching these idiots or sleeping? We need to keep an eye on them + make sure that the mops..etc are not contaminated. I am getting the film again so we can check it out......

USA2000067868

# EXHIBIT F

| From: | Glenn Chin </O=FIRST ORGANIZATION/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=GCHIN> |
|---|---|
| Sent: | Monday, December 19, 2011 11:36 AM |
| To: | Barry Cadden <bcadden@neccrx.com>; Cory Fletcher <cfletcher@neccrx.com> |
| Subject: | RE: MTX |

We have about 1.25KG of MTX left. It's the old Spectrum bottles. When I say old I mean OLD, it expired in 2007 according to their sticker. We make it for our injectables and we send it out for testing and it comes out pretty close. We generally under QS the lot's we make. I would probably guess that it's at about 90 to 95% potent.

From: Barry Cadden
Sent: Monday, December 19, 2011 9:32 AM
To: Glenn Chin; Gene Svirskiy; Cory Fletcher
Subject: MTX

How much MTX powder to we have in house? I am hearing that there is another backorder of commercial inj. MTX + can't find a chemical co. who has any powder in stock

USAO00049156

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN RE NEW ENGLAND COMPOUNDING
PHARMACY, INC. PRODUCTS
LIABILITY LITIGATION

MDL No. 2419
Dkt. No: 1:13-md-2419-RWZ

THIS DOCUMENT RELATES TO:

Suits Naming the Premier Defendants

## THE PREMIER DEFENDANTS' FIRST INTERROGATORIES, REQUESTS FOR PRODUCTION OF DOCUMENTS, AND REQUESTS FOR ADMISSION PROPOUNDED TO CARLA CONIGLIARO.

Come the Defendants, Premier Orthopaedic and Sports Medicine Associates of Southern New Jersey, LLC, trading as Premier Orthopaedic Associates; Premier Orthopaedic Associates Surgical Center, LLC; Kimberly Yvette Smith, M.D., a/k/a Kimberly Yvette Smith-Martin, M.D.; Thomas Dwyer, M.D.; Richard C. DiVerniero, M.D.; and Richard Strauss, M.D. (collectively, "Premier Defendants") , pursuant to Rules 26, 33, and 34 of the Federal Rules of Civil Procedure and the Local Rules for the District of Massachusetts, and propound the following Interrogatories, Requests for Production of Documents, and Requests for Admission to Carla Conigliaro.

Each of the following Interrogatories shall be answered under oath, in writing, separately, to the fullest possible detail, and in accordance with the definitions and instructions set forth below. The answers shall be signed by the person making them, and a copy of the answers, together with objections, if any, shall be served within thirty (30) days after the service date of these interrogatories.

You are under a duty to seasonably supplement your response with respect to any Interrogatory directly addressed to the identity and location of persons having knowledge of discoverable matters. You are under a duty to amend a prior response if you obtain information on the basis of which you know that the response was incorrect when made, or that the response, though correctly made, is no longer true, and the circumstances are such that a failure to amend the response is, in substance, a knowing concealment.

## DEFINITIONS

1. As used in this document, the terms "person(s)" and "individual(s)" mean any natural individual in any capacity whatsoever or any entity or organization, including divisions, departments, and other units therein, and shall include, but not be limited to, a public or private corporation, partnership, joint venture, voluntary or unincorporated association, organization, proprietorship, trust, estate, governmental agency, commission, bureau, or department.

2. As used in this document, the term "document" means any medium upon which intelligence or information can be recorded or retrieved, and includes without limitation, the original and each copy, regardless of origin and location, of any book, pamphlet, periodical, letter, memorandum (including any memorandum or report of a meeting or conversation), invoice, bill, order form, receipt, financial statement, accounting entry, diary, calendar, telex, telegram, cable, report, record, contract, agreement, study, handwritten note, draft, working paper, chart, paper, print, laboratory record, drawing or sketch, graph, index, lists, tape, photograph, microfilm, data sheet or data processing card, or any other written, recorded, transcribed, punched, taped, filmed, or graphic matter, however produced or reproduced, which is in your possession, custody, or control, or which was, but is no longer, in your possession, custody, or control.

3. As used in this document, the terms "identification," "identify," or "identity," when used in reference to a natural individual, require you to state his or her full name and residential and business address. Use of the term "document" in connection with the Interrogatories requires you to state the number of pages and the nature of the document, its title, its date, the name or names of its authors, and recipients, and its present location and custodian.

4. "You and your" refers to Carla Conigliaro and each of her present and former agents, representatives, and employees, attorneys and accountants, and each person acting or purporting to act on her behalf.

5. "Communication" means any oral or written utterance, notification, or statement of any nature whatsoever, by and to whomsoever made, including, but not limited to, correspondence, conversation, dialogue, discussions, interviews, consultants, and any other understanding between or among two or more persons.

2

## INSTRUCTIONS

1. With respect to each Interrogatory, in addition to answering the question, you are to identify all documents that support, refer to, or evidence the subject matter of each Interrogatory and your answer thereto.

   If any or all identified documents are no longer in your possession, custody, or control because of destruction, loss, or any other reason, then you must do the following with respect to each and every document:

   A. Describe the nature of the document;

   B. State the date of the document;

   C. Identify the persons who sent and received the original and the copy of the document;

   D. State in as much detail as possible the contents of the documents; and

   E. State the manner and date of disposition of the document.

   If you contend that you are entitled to withhold from production any or all documents identified herein on the basis of attorney-client privilege, the work-product doctrine, or any other ground, then do the following with respect to each and every document:

   A. Describe the nature of the document;

   B. State the date of the document;

   C. Identify the persons who sent and received the original and a copy of the document;

   D. State the subject matter of the document; and

   E. State the basis upon which you contend you are entitled to withhold the document from production.

2. All documents produced should be organized and labeled to correspond to the specific Request in response to which they are being made available or should be produced as they are kept in the usual course of business.

3. The terms "and," "or," and "and/or" should be construed either disjunctively or conjunctively so as to bring within the scope of these Interrogatories and Requests any information that might otherwise be construed as outside their scope.

4. The term "any" should be construed to include the word "all," and "all" should be construed to include "any."

5. The present tense should be construed to include the past tense, and the past tense should be construed to include the present tense.

6. The singular should be construed to include the plural, and the plural should be construed to include the singular.

7. The terms "he" and "his" should be construed to include the words "she" and "her" or "hers," respectively and vice versa.

8. "Relating to," when referring to a document shall mean mentioning, describing, connected to or with, or discussing the stated subject matter.

## INTERROGATORIES

1. Describe in detail your role at NECC and Ameridose, including job title, job description, and a description of your daily duties and activities in 2011 and 2012.

   **ANSWER:**

2. Describe in detail the steps NECC took to compound, process, stopper, seal, package, and ship methylprednisolone acetate ("MPA") in 2011 and 2012, including but not limited to:

   a) The names of the individuals performing each step;

   b) The job titles for the individuals performing each step;

   c) The specific cleanroom or location in NECC's facility where each step took place;

   d) The tools, equipment, or machinery used for each step;

   e) Any changes to NECC's methods or procedures for compounding MPA, or the location where compounding MPA took place, that occurred in 2011 or 2012.

   **ANSWER:**

3. Identify the total amount of MPA that NECC, and separately Ameriose, produced in each quarter of 2010, 2011, and 2012.

   **ANSWER:**

4. Identify the types of vials and closures NECC used for MPA lots numbered 05212012@68, 06292012@26, and 08102012@51 (collectively "Contaminated Lots"), including whether the vials and enclosures were prewashed or presterilized, and identify their manufacturer(s).

   **ANSWER:**

5. Identify any and all complaints that NECC and Ameridose received related to the sterility or safety of their products, including but not limited to complaints by customers, current and former employees, and state and federal government agencies.

   **ANSWER:**

6. Identify any customers of NECC and Ameridose who performed site visits prior to placing orders with either company.

   **ANSWER:**

7. Describe any policies, procedures, or protocols relating to or regarding customer site visits to the NECC facility, including the areas you allowed customers to inspect.

   **ANSWER:**

8. Identify any customers who asked for information about prior recalls of NECC and Ameridose products prior to placing orders with either company.

   **ANSWER:**

9. Identify and describe any information you gave customers about recalled NECC and Ameridose products in 2011 and 2012.

   **ANSWER:**

10. Identify any and all complaints NECC or Ameridose received related to their compliance with state or federal laws and regulations, including but not limited to complaints by customers, current and former employees, and state and federal government agencies.

    **ANSWER:**

11. Identify and describe any way in which NECC's cleanrooms were modified, altered, or expanded by NECC or Ameridose.

    **ANSWER:**

12. Identify any policies, procedures, or guidelines in place at NECC in 2012 that encouraged employees to disclose mistakes in the compounding process, even if the mistakes necessitated destruction of product or halting production.

    **ANSWER:**

13. Describe all disciplinary or enforcement action taken against NECC or Ameridose by any state or federal government agency.

    **ANSWER:**

14. Describe in detail Lisa Conigliaro Cadden's role at NECC in 2011 and 2012.

    **ANSWER:**

## VERIFICATION

**STATE OF NEW JERSEY**      )
                                                      )

**County of** _____ )

      I, _____, after being duly sworn, hereby make oath that the foregoing answers to Interrogatories are true to the best of my knowledge, information, and belief.

_____

Sworn and subscribed before me this _____ day of _____, 2015.

_____
                                 **Notary Public**

My commission expires on: _____.

## REQUESTS FOR PRODUCTION

1. Produce all correspondence between you and any of the Premier Defendants, their employees, agents, or representatives.

   **RESPONSE:**

2. Produce all correspondence and documents referring or related to the Premier Defendants' purchase of MPA from NECC in 2011 or 2012.

   **RESPONSE:**

3. Produce all documents produced by the government to you during any civil, criminal, or administrative proceedings related to NECC's contaminated MPA.

   **RESPONSE:**

4. Produce all policies, procedures, guidelines, instructions and training documents referring or relating to the compounding of MPA at the NECC facility.

   **RESPONSE:**

5. Produce all documents referring or relating to NECC or Ameridose sending samples of insufficient size or volume to comply with USP 71 to ARL or any other testing laboratory.

   **RESPONSE:**

6. Produce all documents referring or relating to any sterility, potency, endotoxin, or fungal testing that you received from ARL or any other laboratory related to MPA compounded by NECC or Ameridose in 2011 and 2012.

   **RESPONSE:**

7. Produce all correspondence and documents referring or relating to fungal blooms or growth in or near NECC's cleanrooms.

   **RESPONSE:**

8. Produce all documents referring or relating to complaints or communications with Liberty Industries regarding the design, manufacture, or installation of the clean rooms at the NECC facility.

   **RESPONSE:**

9. Produce all documents referring or relating to any complaints that NECC or Ameridose received related to the sterility or safety of their products, including but not limited to complaints by customers, current or former employees, or state or federal government agencies.

   **RESPONSE:**

10. Produce all documents referring or relating to any complaints NECC or Ameridose received related to their compliance with state or federal laws or regulations, including but not limited to complaints by customers, current or former employees, or state or federal government agencies.

    **RESPONSE:**

11. Produce all correspondence and documents referring or relating to NECC's response to the meningitis outbreak, including but not limited to, steps NECC took to prepare for any inspections of its facility.

    **RESPONSE:**

12. Produce all training and instructional material for sales staff at NECC or MSM.

    **RESPONSE:**

13. Produce copies of any and all New Jersey Pharmacy Licenses issued to NECC and/or Carla Conigliaro, and all documents or communications between NECC and/or Carla Conigliaro and the New Jersey Board of Pharmacy, including those referring or related to the procurement or renewal of said Licenses.

    **RESPONSE:**

## REQUESTS FOR ADMISION

1. Admit that, had any of the Premier Defendants asked for a copy of NECC's license in 2011, you would have provided a valid and up-to-date New Jersey pharmacy license.

   **ANSWER:**

2. Admit that NECC represented to its customers, including the Premier Defendants, that it met or exceeded USP 797 standards.

   **ANSWER:**

3. Admit that NECC represented to its customers, including the Premier Defendants, that its products, including MPA, were safe and sterile.

   **ANSWER:**

4. Admit that the Massachusetts Board of Pharmacy ("Mass. BoP") inspected NECC on or about May 24, 2011.

   **ANSWER:**

5. Admit that as a result of its inspection on or about May 24, 2011, the Mass. BoP issued an inspection report documenting its findings.

   **ANSWER:**

6. Admit that NECC failed to submit a copy of the Mass. BoP's May 24, 2011 inspection report to the New Jersey Board of Pharmacy.

   **ANSWER:**

7. Admit that NECC owed a duty to its customers to ensure that its MPA was sterile prior to distributing it.

   **ANSWER**

Respectfully Submitted,

**BLUMBERG & WOLK, LLC**

/s/ Christopher Wolk
**Jay Blumberg**
**Christopher Wolk**
158 Delaware Street
P.O. Box 68
Woodbury, NJ 08096
(856) 848-7472

*Attorneys for the Premier Defendants*

11

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of May, 2015, a true and accurate copy of the foregoing was served on Carla Conigliaro by U.S. mail and on the other parties below electronically via the Court's CM/ECF system:

O. Mark Zamora
The Orlando Firm, P.C.
P.O. Box 660216
Atlanta, GA 30366

*Attorney for the PSC*

Matthew P. Moriarty
Thomas W. Coffey
Richard A. Dean
Tucker Ellis, LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113

Scott H. Kremer
Tucker, Heifetz & Saltzman
Three School Street
Boston, MA 02108

Scott J. Tucker
Paul Saltzman
Matthew E. Mantalos
Tucker, Saltzman & Dyer, LLP
50 Congress Street
Boston, MA 02109

*Attorneys for Defendant Ameridose, LLC.*

Daniel M. Rabinovitz
Brady J. Hermann
Nicki Samson
Michaels, Ward & Rabinovitz
One Beacon Street, 2nd Floor
Boston, MA 02108

*Attorneys for Defendant Medical Sales Management, Inc.*

John P. Ryan
Robert H. Gaynor
William J. Dailey, Jr.
Sloane and Walsh, LLP
Three Center Plaza
Boston, MA 02108

*Attorneys for Gregory Conigliaro, Registered Agent for Service of Process for Medical Sales Management SW, Inc.*

Joseph P. Thomas
Ulmer & Berne, LLP
600 Vice Street, Suite 2800
Cincinnati, OH 45202

Joshua A. Klarfeld
Ulmer & Berne, LLP
1660 W. 2nd Street, Suite 1100
Cleveland, OH 44113

*Attorneys for Defendant GDC Properties*
*Management, LLC*

Kenneth B. Walton
Kristen R. Ragosta
Donovan Hatem, LLP
Two Seaport Lane, 8th Floor
Boston, MA 02210

*Attorney for Defendant ARL Biopharma*

John P. Ryan
Robert H. Gaynor
William J. Dailey, Jr.
Sloane and Walsh, LLP
Three Center Plaza
Boston, MA 02108

*Attorneys for Defendants Barry J. Cadden,*
*Lisa Conigliaro Cadden, Gregory*
*Conigliaro, Carla Conigliaro, Douglas*
*Conigliaro and Glenn A. Chin*

Bruce A. Singal
Michelle R. Peirce
Callan G. Stein
Donague, Barrett & Singal, P.C.
One Beacon Street, Suite 1320
Boston, MA 02108

*Attorneys for Defendants Barry J. Cadden*
*and Lisa Conigliaro Cadden*

Damian W. Wilmot
James Rehnquist
Abigail K. Hemani
Roberto M. Braceras
Goodwin Proctor LLP
Exchange Place
53 State Street
Boston, MA 02109

*Attorneys for Unifirst Corporation a/d/b/a*
*Uniclean Cleanroom Services*

Parks Chastain
Jason Lee
Brewer, Krause, Brooks, Chastain &
Burrow, PLLC
611 Commerce St., Suite 2600
P.O. Box 23890
Nashville, TN 37202
615-256-8787
Fax: 615-256-8985

*Attorneys for Specialty Surgery Center,*
*Crossville, PLLC*

13

Frederick H. Fern
Judi Abbott Curry
Jessica Saunders Eichel
Alan M. Winchester
Harris Beach PLLC
100 Wall Street
23rd Floor
New York, NY 10005

Geoffrey M. Coan
Daniel E. Tranen
Hinshaw & Culbertson LLP
28 State Street
24th Floor
Boston, MA 02109

Michael R. Gottfried
Thomas B.K. Ringe, III
Jennifer Mikels
Duane Morris LLP
100 High Street
Suite 2400
Boston, MA 02110-1724

*Attorneys for NECC*

Marcy H. Greer
Alexander Dubose Jefferson & Townsent
515 Congress Ave.
Quite 2350
Austin, TX 78701

Yvonne K. Puig
Eric Hoffman
Fulbright & Jaworski L.L.P.
98 San Jacinto Blvd.
Suite 1100
Austin, TX 78701

Sarah P. Kelly
Nutter, McClennen & Fish, LLP
Seaport West
155 Seaport Boulevard
Boston, MA 02210-2604

*Attorneys for the Saint Thomas Entities*

/s/ Christopher Wolk
**Christopher Wolk**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN RE NEW ENGLAND COMPOUNDING
PHARMACY, INC. PRODUCTS
LIABILITY LITIGATION

MDL No. 2419
Dkt. No: 1:13-md-2419-RWZ

THIS DOCUMENT RELATES TO:

Suits Naming the Premier Defendants

---

## THE PREMIER DEFENDANTS' FIRST INTERROGATORIES, REQUESTS FOR PRODUCTION OF DOCUMENTS, AND REQUESTS FOR ADMISSION PROPOUNDED TO DOUGLAS CONIGLIARO.

Come the Defendants, Premier Orthopaedic and Sports Medicine Associates of Southern New Jersey, LLC, trading as Premier Orthopaedic Associates; Premier Orthopaedic Associates Surgical Center, LLC; Kimberly Yvette Smith, M.D., a/k/a Kimberly Yvette Smith-Martin, M.D.; Thomas Dwyer, M.D.; Richard C. DiVerniero, M.D.; and Richard Strauss, M.D. (collectively, "Premier Defendants") , pursuant to Rules 26, 33, and 34 of the Federal Rules of Civil Procedure and the Local Rules for the District of Massachusetts, and propound the following Interrogatories, Requests for Production of Documents, and Requests for Admission to Douglas Conigliaro.

Each of the following Interrogatories shall be answered under oath, in writing, separately, to the fullest possible detail, and in accordance with the definitions and instructions set forth below. The answers shall be signed by the person making them, and a copy of the answers, together with objections, if any, shall be served within thirty (30) days after the service date of these interrogatories.

You are under a duty to seasonably supplement your response with respect to any Interrogatory directly addressed to the identity and location of persons having knowledge of discoverable matters. You are under a duty to amend a prior response if you obtain information on the basis of which you know that the response was incorrect when made, or that the response, though correctly made, is no longer true, and the circumstances are such that a failure to amend the response is, in substance, a knowing concealment.

# DEFINITIONS

1. As used in this document, the terms "person(s)" and "individual(s)" mean any natural individual in any capacity whatsoever or any entity or organization, including divisions, departments, and other units therein, and shall include, but not be limited to, a public or private corporation, partnership, joint venture, voluntary or unincorporated association, organization, proprietorship, trust, estate, governmental agency, commission, bureau, or department.

2. As used in this document, the term "document" means any medium upon which intelligence or information can be recorded or retrieved, and includes without limitation, the original and each copy, regardless of origin and location, of any book, pamphlet, periodical, letter, memorandum (including any memorandum or report of a meeting or conversation), invoice, bill, order form, receipt, financial statement, accounting entry, diary, calendar, telex, telegram, cable, report, record, contract, agreement, study, handwritten note, draft, working paper, chart, paper, print, laboratory record, drawing or sketch, graph, index, lists, tape, photograph, microfilm, data sheet or data processing card, or any other written, recorded, transcribed, punched, taped, filmed, or graphic matter, however produced or reproduced, which is in your possession, custody, or control, or which was, but is no longer, in your possession, custody, or control.

3. As used in this document, the terms "identification," "identify," or "identity," when used in reference to a natural individual, require you to state his or her full name and residential and business address. Use of the term "document" in connection with the Interrogatories requires you to state the number of pages and the nature of the document, its title, its date, the name or names of its authors, and recipients, and its present location and custodian.

4. "You and your" refers to Douglas Conigliaro and each of his present and former agents, representatives, and employees, attorneys and accountants, and each person acting or purporting to act on his behalf.

5. "Communication" means any oral or written utterance, notification, or statement of any nature whatsoever, by and to whomsoever made, including, but not limited to, correspondence, conversation, dialogue, discussions, interviews, consultants, and any other understanding between or among two or more persons.

## INSTRUCTIONS

1. With respect to each Interrogatory, in addition to answering the question, you are to identify all documents that support, refer to, or evidence the subject matter of each Interrogatory and your answer thereto.

   If any or all identified documents are no longer in your possession, custody, or control because of destruction, loss, or any other reason, then you must do the following with respect to each and every document:

   A. Describe the nature of the document;

   B. State the date of the document;

   C. Identify the persons who sent and received the original and the copy of the document;

   D. State in as much detail as possible the contents of the documents; and

   E. State the manner and date of disposition of the document.

   If you contend that you are entitled to withhold from production any or all documents identified herein on the basis of attorney-client privilege, the work-product doctrine, or any other ground, then do the following with respect to each and every document:

   A. Describe the nature of the document;

   B. State the date of the document;

   C. Identify the persons who sent and received the original and a copy of the document;

   D. State the subject matter of the document; and

   E. State the basis upon which you contend you are entitled to withhold the document from production.

2. All documents produced should be organized and labeled to correspond to the specific Request in response to which they are being made available or should be produced as they are kept in the usual course of business.

3. The terms "and," "or," and "and/or" should be construed either disjunctively or conjunctively so as to bring within the scope of these Interrogatories and Requests any information that might otherwise be construed as outside their scope.

4. The term "any" should be construed to include the word "all," and "all" should be construed to include "any."

5.  The present tense should be construed to include the past tense, and the past tense should be construed to include the present tense.

6.  The singular should be construed to include the plural, and the plural should be construed to include the singular.

7.  The terms "he" and "his" should be construed to include the words "she" and "her" or "hers," respectively and vice versa.

8.  "Relating to," when referring to a document shall mean mentioning, describing, connected to or with, or discussing the stated subject matter.

## INTERROGATORIES

1. Describe in detail your role at NECC and Ameridose, including job title, job description, and a description of your daily duties and activities in 2011 and 2012.

   **ANSWER:**

2. Describe in detail the steps NECC took to compound, process, stopper, seal, package, and ship methylprednisolone acetate ("MPA") in 2011 and 2012, including but not limited to:

   a) The names of the individuals performing each step;

   b) The job titles for the individuals performing each step;

   c) The specific cleanroom or location in NECC's facility where each step took place;

   d) The tools, equipment, or machinery used for each step;

   e) Any changes to NECC's methods or procedures for compounding MPA, or the location where compounding MPA took place, that occurred in 2011 or 2012.

   **ANSWER:**

3. Identify the total amount of MPA that NECC, and separately Ameriose, produced in each quarter of 2010, 2011, and 2012.

   **ANSWER:**

4. Identify the types of vials and closures NECC used for MPA lots numbered 05212012@68, 06292012@26, and 08102012@51 (collectively "Contaminated Lots"), including whether the vials and enclosures were prewashed or presterilized, and identify their manufacturer(s).

   **ANSWER:**

5. Identify any and all complaints that NECC and Ameridose received related to the sterility or safety of their products, including but not limited to complaints by customers, current and former employees, and state and federal government agencies.

   **ANSWER:**

6. Identify any customers of NECC and Ameridose who performed site visits prior to placing orders with either company.

   **ANSWER:**

7. Describe any policies, procedures, or protocols relating to or regarding customer site visits to the NECC facility, including the areas you allowed customers to inspect.

   **ANSWER:**

8. Identify any customers who asked for information about prior recalls of NECC and Ameridose products prior to placing orders with either company.

   **ANSWER:**

9. Identify and describe any information you gave customers about recalled NECC and Ameridose products in 2011 and 2012.

   **ANSWER:**

10. Identify any and all complaints NECC or Ameridose received related to their compliance with state or federal laws and regulations, including but not limited to complaints by customers, current and former employees, and state and federal government agencies.

    **ANSWER:**

11. Identify and describe any way in which NECC's cleanrooms were modified, altered, or expanded by NECC or Ameridose.

    **ANSWER:**

12. Identify any policies, procedures, or guidelines in place at NECC in 2012 that encouraged employees to disclose mistakes in the compounding process, even if the mistakes necessitated destruction of product or halting production.

    **ANSWER:**

13. Describe all disciplinary or enforcement action taken against NECC or Ameridose by any state or federal government agency.

    **ANSWER:**

14. Describe in detail Lisa Conigliaro Cadden's role at NECC in 2011 and 2012.

    **ANSWER:**

### VERIFICATION

STATE OF NEW JERSEY     )
            )
County of _____   )

   I, _____, after being duly sworn, hereby make oath that the foregoing answers to Interrogatories are true to the best of my knowledge, information, and belief.

         _____

Sworn and subscribed before me this _____ day of _____, 2015.

         _____

           **Notary Public**

My commission expires on: _____.

7

## REQUESTS FOR PRODUCTION

1. Produce all correspondence between you and any of the Premier Defendants, their employees, agents, or representatives.

   **RESPONSE:**

2. Produce all correspondence and documents referring or related to the Premier Defendants' purchase of MPA from NECC in 2011 or 2012.

   **RESPONSE:**

3. Produce all documents produced by the government to you during any civil, criminal, or administrative proceedings related to NECC's contaminated MPA.

   **RESPONSE:**

4. Produce all policies, procedures, guidelines, instructions and training documents referring or relating to the compounding of MPA at the NECC facility.

   **RESPONSE:**

5. Produce all documents referring or relating to NECC or Ameridose sending samples of insufficient size or volume to comply with USP 71 to ARL or any other testing laboratory.

   **RESPONSE:**

6. Produce all documents referring or relating to any sterility, potency, endotoxin, or fungal testing that you received from ARL or any other laboratory related to MPA compounded by NECC or Ameridose in 2011 and 2012.

   **RESPONSE:**

7. Produce all correspondence and documents referring or relating to fungal blooms or growth in or near NECC's cleanrooms.

   **RESPONSE:**

8. Produce all documents referring or related to any complaints or communications with Liberty Industries regarding the design, manufacture, or installation of the cleanrooms at the NECC facility.

   **RESPONSE:**

9.  Produce all documents referring or relating to any complaints that NECC or Ameridose received related to the sterility or safety of their products, including but not limited to complaints by customers, current or former employees, or state or federal government agencies.

    **RESPONSE:**

10. Produce all documents referring or relating to any complaints NECC or Ameridose received related to their compliance with state or federal laws or regulations, including but not limited to complaints by customers, current or former employees, or state or federal government agencies.

    **RESPONSE:**

11. Produce all correspondence and documents referring or relating to NECC's response to the meningitis outbreak, including but not limited to, steps NECC took to prepare for any inspections of its facility.

    **RESPONSE:**

12. Produce all training and instructional material for sales staff at NECC or MSM.

    **RESPONSE:**

13. Produce copies of any and all New Jersey Pharmacy Licenses issued to NECC and/or Douglas Conigliaro, and all documents or communications between NECC and/or Douglas Conigliaro and the New Jersey Board of Pharmacy, including those referring or related to the procurement or renewal of said Licenses.

    **RESPONSE:**

## REQUESTS FOR ADMISION

1. Admit that, had any of the Premier Defendants asked for a copy of NECC's license in 2011, you would have provided a valid and up-to-date New Jersey pharmacy license.

   **ANSWER:**

2. Admit that NECC represented to its customers, including the Premier Defendants, that it met or exceeded USP 797 standards.

   **ANSWER:**

3. Admit that NECC represented to its customers, including the Premier Defendants, that its products, including MPA, were safe and sterile.

   **ANSWER:**

4. Admit that the Massachusetts Board of Pharmacy ("Mass. BoP") inspected NECC on or about May 24, 2011.

   **ANSWER:**

5. Admit that as a result of its inspection on or about May 24, 2011, the Mass. BoP issued an inspection report documenting its findings.

   **ANSWER:**

6. Admit that NECC failed to submit a copy of the Mass. BoP's May 24, 2011 inspection report to the New Jersey Board of Pharmacy.

   **ANSWER:**

7. Admit that NECC had a duty to its customers to ensure that its MPA was sterile prior to distributing it.

   **ANSWER:**

Respectfully Submitted,

**BLUMBERG & WOLK, LLC**

/s/ Christopher Wolk
**Jay Blumberg**
**Christopher Wolk**
158 Delaware Street
P.O. Box 68
Woodbury, NJ 08096
(856) 848-7472

*Attorneys for the Premier Defendants*

11

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of May, 2015, a true and accurate copy of the foregoing was served on Douglas Conigliaro by U.S. mail and on the other parties below electronically via the Court's CM/ECF system:

O. Mark Zamora
The Orlando Firm, P.C.
P.O. Box 660216
Atlanta, GA 30366

*Attorney for the PSC*

Matthew P. Moriarty
Thomas W. Coffey
Richard A. Dean
Tucker Ellis, LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113

Scott H. Kremer
Tucker, Heifetz & Saltzman
Three School Street
Boston, MA 02108

Scott J. Tucker
Paul Saltzman
Matthew E. Mantalos
Tucker, Saltzman & Dyer, LLP
50 Congress Street
Boston, MA 02109

*Attorneys for Defendant Ameridose, LLC.*

Daniel M. Rabinovitz
Brady J. Hermann
Nicki Samson
Michaels, Ward & Rabinovitz
One Beacon Street, 2nd Floor
Boston, MA 02108

*Attorneys for Defendant Medical Sales Management, Inc.*

John P. Ryan
Robert H. Gaynor
William J. Dailey, Jr.
Sloane and Walsh, LLP
Three Center Plaza
Boston, MA 02108

*Attorneys for Gregory Conigliaro, Registered Agent for Service of Process for Medical Sales Management SW, Inc.*

Joseph P. Thomas
Ulmer & Berne, LLP
600 Vice Street, Suite 2800
Cincinnati, OH 45202

Joshua A. Klarfeld
Ulmer & Berne, LLP
1660 W. 2nd Street, Suite 1100
Cleveland, OH 44113

*Attorneys for Defendant GDC Properties
Management, LLC*

Kenneth B. Walton
Kristen R. Ragosta
Donovan Hatem, LLP
Two Seaport Lane, 8th Floor
Boston, MA 02210

*Attorney for Defendant ARL Biopharma*

John P. Ryan
Robert H. Gaynor
William J. Dailey, Jr.
Sloane and Walsh, LLP
Three Center Plaza
Boston, MA 02108

*Attorneys for Defendants Barry J. Cadden,
Lisa Conigliaro Cadden, Gregory
Conigliaro, Carla Conigliaro, Douglas
Conigliaro and Glenn A. Chin*

Bruce A. Singal
Michelle R. Peirce
Callan G. Stein
Donague, Barrett & Singal, P.C.
One Beacon Street, Suite 1320
Boston, MA 02108

*Attorneys for Defendants Barry J. Cadden
and Lisa Conigliaro Cadden*

Damian W. Wilmot
James Rehnquist
Abigail K. Hemani
Roberto M. Braceras
Goodwin Proctor LLP
Exchange Place
53 State Street
Boston, MA 02109

*Attorneys for Unifirst Corporation a/d/b/a
Uniclean Cleanroom Services*

Parks Chastain
Jason Lee
Brewer, Krause, Brooks, Chastain &
Burrow, PLLC
611 Commerce St., Suite 2600
P.O. Box 23890
Nashville, TN 37202
615-256-8787
Fax: 615-256-8985

*Attorneys for Specialty Surgery Center,
Crossville, PLLC*

Frederick H. Fern
Judi Abbott Curry
Jessica Saunders Eichel
Alan M. Winchester
Harris Beach PLLC
100 Wall Street
23rd Floor
New York, NY 10005

Geoffrey M. Coan
Daniel E. Tranen
Hinshaw & Culbertson LLP
28 State Street
24th Floor
Boston, MA 02109

Michael R. Gottfried
Thomas B.K. Ringe, III
Jennifer Mikels
Duane Morris LLP
100 High Street
Suite 2400
Boston, MA 02110-1724

*Attorneys for NECC*

Marcy H. Greer
Alexander Dubose Jefferson & Townsent
515 Congress Ave.
Quite 2350
Austin, TX 78701

Yvonne K. Puig
Eric Hoffman
Fulbright & Jaworski L.L.P.
98 San Jacinto Blvd.
Suite 1100
Austin, TX 78701

Sarah P. Kelly
Nutter, McClennen & Fish, LLP
Seaport West
155 Seaport Boulevard
Boston, MA 02210-2604

*Attorneys for the Saint Thomas Entities*

/s/ Christopher Wolk
**Christopher Wolk**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN RE NEW ENGLAND COMPOUNDING
PHARMACY, INC. PRODUCTS
LIABILITY LITIGATION

MDL No. 2419
Dkt. No: 1:13-md-2419-RWZ

THIS DOCUMENT RELATES TO:

Suits Naming the Premier Defendants

---

## THE PREMIER DEFENDANTS' FIRST INTERROGATORIES, REQUESTS FOR PRODUCTION OF DOCUMENTS, AND REQUESTS FOR ADMISSION PROPOUNDED TO GREGORY CONIGLIARO.

---

Come the Defendants, Premier Orthopaedic and Sports Medicine Associates of Southern New Jersey, LLC, trading as Premier Orthopaedic Associates; Premier Orthopaedic Associates Surgical Center, LLC; Kimberly Yvette Smith, M.D., a/k/a Kimberly Yvette Smith-Martin, M.D.; Thomas Dwyer, M.D.; Richard C. DiVerniero, M.D.; and Richard Strauss, M.D. (collectively, "Premier Defendants") , pursuant to Rules 26, 33, and 34 of the Federal Rules of Civil Procedure and the Local Rules for the District of Massachusetts, and propound the following Interrogatories, Requests for Production of Documents, and Requests for Admission to Gregory Conigliaro.

Each of the following Interrogatories shall be answered under oath, in writing, separately, to the fullest possible detail, and in accordance with the definitions and instructions set forth below. The answers shall be signed by the person making them, and a copy of the answers, together with objections, if any, shall be served within thirty (30) days after the service date of these interrogatories.

You are under a duty to seasonably supplement your response with respect to any Interrogatory directly addressed to the identity and location of persons having knowledge of discoverable matters. You are under a duty to amend a prior response if you obtain information on the basis of which you know that the response was incorrect when made, or that the response, though correctly made, is no longer true, and the circumstances are such that a failure to amend the response is, in substance, a knowing concealment.

## DEFINITIONS

1. As used in this document, the terms "person(s)" and "individual(s)" mean any natural individual in any capacity whatsoever or any entity or organization, including divisions, departments, and other units therein, and shall include, but not be limited to, a public or private corporation, partnership, joint venture, voluntary or unincorporated association, organization, proprietorship, trust, estate, governmental agency, commission, bureau, or department.

2. As used in this document, the term "document" means any medium upon which intelligence or information can be recorded or retrieved, and includes without limitation, the original and each copy, regardless of origin and location, of any book, pamphlet, periodical, letter, memorandum (including any memorandum or report of a meeting or conversation), invoice, bill, order form, receipt, financial statement, accounting entry, diary, calendar, telex, telegram, cable, report, record, contract, agreement, study, handwritten note, draft, working paper, chart, paper, print, laboratory record, drawing or sketch, graph, index, lists, tape, photograph, microfilm, data sheet or data processing card, or any other written, recorded, transcribed, punched, taped, filmed, or graphic matter, however produced or reproduced, which is in your possession, custody, or control, or which was, but is no longer, in your possession, custody, or control.

3. As used in this document, the terms "identification," "identify," or "identity," when used in reference to a natural individual, require you to state his or her full name and residential and business address. Use of the term "document" in connection with the Interrogatories requires you to state the number of pages and the nature of the document, its title, its date, the name or names of its authors, and recipients, and its present location and custodian.

4. "You and "your" refers to Gregory Conigliaro and each of his present and former agents, representatives, and employees, attorneys and accountants, and each person acting or purporting to act on his behalf.

5. "Communication" means any oral or written utterance, notification, or statement of any nature whatsoever, by and to whomsoever made, including, but not limited to, correspondence, conversation, dialogue, discussions, interviews, consultants, and any other understanding between or among two or more persons.

## INSTRUCTIONS

1. With respect to each Interrogatory, in addition to answering the question, you are to identify all documents that support, refer to, or evidence the subject matter of each Interrogatory and your answer thereto.

   If any or all identified documents are no longer in your possession, custody, or control because of destruction, loss, or any other reason, then you must do the following with respect to each and every document:

   A. Describe the nature of the document;

   B. State the date of the document;

   C. Identify the persons who sent and received the original and the copy of the document;

   D. State in as much detail as possible the contents of the documents; and

   E. State the manner and date of disposition of the document.

   If you contend that you are entitled to withhold from production any or all documents identified herein on the basis of attorney-client privilege, the work-product doctrine, or any other ground, then do the following with respect to each and every document:

   A. Describe the nature of the document;

   B. State the date of the document;

   C. Identify the persons who sent and received the original and a copy of the document;

   D. State the subject matter of the document; and

   E. State the basis upon which you contend you are entitled to withhold the document from production.

2. All documents produced should be organized and labeled to correspond to the specific Request in response to which they are being made available or should be produced as they are kept in the usual course of business.

3. The terms "and," "or," and "and/or" should be construed either disjunctively or conjunctively so as to bring within the scope of these Interrogatories and Requests any information that might otherwise be construed as outside their scope.

4. The term "any" should be construed to include the word "all," and "all" should be construed to include "any."

5. The present tense should be construed to include the past tense, and the past tense should be construed to include the present tense.

6. The singular should be construed to include the plural, and the plural should be construed to include the singular.

7. The terms "he" and "his" should be construed to include the words "she" and "her" or "hers," respectively and vice versa.

8. "Relating to," when referring to a document shall mean mentioning, describing, connected to or with, or discussing the stated subject matter.

## INTERROGATORIES

1.  Describe in detail your role at NECC and Ameridose, including job title, job description, and a description of your daily duties and activities in 2011 and 2012.

    **ANSWER:**

2.  Describe in detail the steps NECC took to compound, process, stopper, seal, package, and ship methylprednisolone acetate ("MPA") in 2011 and 2012, including but not limited to:

    a)  The names of the individuals performing each step;

    b)  The job titles for the individuals performing each step;

    c)  The specific cleanroom or location in NECC's facility where each step took place;

    d)  The tools, equipment, or machinery used for each step;

    e)  Any changes to NECC's methods or procedures for compounding MPA, or the location where compounding MPA took place, that occurred in 2011 or 2012.

    **ANSWER:**

3.  Identify the total amount of MPA that NECC, and separately Ameriose, produced in each quarter of 2010, 2011, and 2012.

    **ANSWER:**

4.  Identify the types of vials and closures NECC used for MPA lots numbered 05212012@68, 06292012@26, and 08102012@51 (collectively "Contaminated Lots"), including whether the vials and enclosures were prewashed or presterilized, and identify their manufacturer(s).

    **ANSWER:**

5.  Identify any and all complaints that NECC and Ameridose received related to the sterility or safety of their products, including but not limited to complaints by customers, current and former employees, and state and federal government agencies.

    **ANSWER:**

6.  Identify any customers of NECC and Ameridose who performed site visits prior to placing orders with either company.

    **ANSWER:**

7. Describe any policies, procedures, or protocols relating to or regarding customer site visits to the NECC facility, including the areas you allowed customers to inspect.

   **ANSWER:**

8. Identify any customers who asked for information about prior recalls of NECC and Ameridose products prior to placing orders with either company.

   **ANSWER:**

9. Identify and describe any information you gave customers about recalled NECC and Ameridose products in 2011 and 2012.

   **ANSWER:**

10. Identify any and all complaints NECC or Ameridose received related to their compliance with state or federal laws and regulations, including but not limited to complaints by customers, current and former employees, and state and federal government agencies.

    **ANSWER:**

11. Identify and describe any way in which NECC's cleanrooms were modified, altered, or expanded by NECC or Ameridose.

    **ANSWER:**

12. Identify any policies, procedures, or guidelines in place at NECC in 2012 that encouraged employees to disclose mistakes in the compounding process, even if the mistakes necessitated destruction of product or halting production.

    **ANSWER:**

13. Describe all disciplinary or enforcement action taken against NECC or Ameridose by any state or federal government agency.

    **ANSWER:**

14. Describe in detail Lisa Conigliaro Cadden's role at NECC in 2011 and 2012.

    **ANSWER:**

6

## VERIFICATION

STATE OF NEW JERSEY     )
                              )
County of _____   )

I, _____, after being duly sworn, hereby make oath that the foregoing answers to Interrogatories are true to the best of my knowledge, information, and belief.

_____

Sworn and subscribed before me this _____ day of _____, 2015.

_____
**Notary Public**

My commission expires on: _____.

## REQUESTS FOR PRODUCTION

1. Produce all correspondence between you and any of the Premier Defendants, their employees, agents, or representatives.

   **RESPONSE:**

2. Produce all correspondence and documents referring or related to the Premier Defendants' purchase of MPA from NECC in 2011 or 2012.

   **RESPONSE:**

3. Produce all documents produced by the government to you during any civil, criminal, or administrative proceedings related to NECC's contaminated MPA.

   **RESPONSE:**

4. Produce all policies, procedures, guidelines, instructions and training documents referring or relating to the compounding of MPA at the NECC facility.

   **RESPONSE:**

5. Produce all documents referring or relating to NECC or Ameridose sending samples of insufficient size or volume to comply with USP 71 to ARL or any other testing laboratory.

   **RESPONSE:**

6. Produce all documents referring or relating to any sterility, potency, endotoxin, or fungal testing that you received from ARL or any other laboratory related to MPA compounded by NECC or Ameridose in 2011 and 2012.

   **RESPONSE:**

7. Produce all correspondence and documents referring or relating to fungal blooms or growth in or near NECC's cleanrooms.

   **RESPONSE:**

8. Produce all documents referring or related to any complaints or communications with Liberty Industries regarding the design, manufacture, or installation of the cleanrooms at the NECC facility.

   **RESPONSE:**

9. Produce all documents referring or relating to any complaints that NECC or Ameridose received related to the sterility or safety of their products, including but not limited to complaints by customers, current or former employees, or state or federal government agencies.

   **RESPONSE:**

10. Produce all documents referring or relating to any complaints NECC or Ameridose received related to their compliance with state or federal laws or regulations, including but not limited to complaints by customers, current or former employees, or state or federal government agencies.

    **RESPONSE:**

11. Produce all correspondence and documents referring or relating to NECC's response to the meningitis outbreak, including but not limited to, steps NECC took to prepare for any inspections of its facility.

    **RESPONSE:**

12. Produce all training and instructional material for sales staff at NECC or MSM.

    **RESPONSE:**

13. Produce copies of any and all New Jersey Pharmacy Licenses issued to NECC and/or Gregory Conigliaro, and all documents or communications between NECC and/or Gregory Conigliaro and the New Jersey Board of Pharmacy, including those referring or related to the procurement or renewal of said Licenses.

    **RESPONSE:**

## REQUESTS FOR ADMISION

1. Admit that, had any of the Premier Defendants asked for a copy of NECC's license in 2011, you would have provided a valid and up-to-date New Jersey pharmacy license.

   **ANSWER:**

2. Admit that NECC represented to its customers, including the Premier Defendants, that it met or exceeded USP 797 standards.

   **ANSWER:**

3. Admit that NECC represented to its customers, including the Premier Defendants, that its products, including MPA, were safe and sterile.

   **ANSWER:**

4. Admit that the Massachusetts Board of Pharmacy ("Mass. BoP") inspected NECC on or about May 24, 2011.

   **ANSWER:**

5. Admit that as a result of its inspection on or about May 24, 2011, the Mass. BoP issued an inspection report documenting its findings.

   **ANSWER:**

6. Admit that NECC failed to submit a copy of the Mass. BoP's May 24, 2011 inspection report to the New Jersey Board of Pharmacy.

   **ANSWER:**

7. Admit that NECC had a duty to its customers to ensure that its MPA was sterile prior to distributing it.

   **ANSWER:**

Respectfully Submitted,

**BLUMBERG & WOLK, LLC**

/s/ Christopher Wolk
**Jay Blumberg**
**Christopher Wolk**
158 Delaware Street
P.O. Box 68
Woodbury, NJ 08096
(856) 848-7472

*Attorneys for the Premier Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of May, 2015, a true and accurate copy of the foregoing was served on Gregory Conigliaro by U.S. mail and on the other parties below electronically via the Court's CM/ECF system:

O. Mark Zamora
The Orlando Firm, P.C.
P.O. Box 660216
Atlanta, GA 30366

*Attorney for the PSC*

Matthew P. Moriarty
Thomas W. Coffey
Richard A. Dean
Tucker Ellis, LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113

Scott H. Kremer
Tucker, Heifetz & Saltzman
Three School Street
Boston, MA 02108

Scott J. Tucker
Paul Saltzman
Matthew E. Mantalos
Tucker, Saltzman & Dyer, LLP
50 Congress Street
Boston, MA 02109

*Attorneys for Defendant Ameridose, LLC.*

Daniel M. Rabinovitz
Brady J. Hermann
Nicki Samson
Michaels, Ward & Rabinovitz
One Beacon Street, 2nd Floor
Boston, MA 02108

*Attorneys for Defendant Medical Sales Management, Inc.*

John P. Ryan
Robert H. Gaynor
William J. Dailey, Jr.
Sloane and Walsh, LLP
Three Center Plaza
Boston, MA 02108

*Attorneys for Gregory Conigliaro, Registered Agent for Service of Process for Medical Sales Management SW, Inc.*

12

Joseph P. Thomas
Ulmer & Berne, LLP
600 Vice Street, Suite 2800
Cincinnati, OH 45202

Joshua A. Klarfeld
Ulmer & Berne, LLP
1660 W. 2nd Street, Suite 1100
Cleveland, OH 44113

*Attorneys for Defendant GDC Properties
Management, LLC*

Kenneth B. Walton
Kristen R. Ragosta
Donovan Hatem, LLP
Two Seaport Lane, 8th Floor
Boston, MA 02210

*Attorney for Defendant ARL Biopharma*

John P. Ryan
Robert H. Gaynor
William J. Dailey, Jr.
Sloane and Walsh, LLP
Three Center Plaza
Boston, MA 02108

*Attorneys for Defendants Barry J. Cadden,
Lisa Conigliaro Cadden, Gregory
Conigliaro, Carla Conigliaro, Douglas
Conigliaro and Glenn A. Chin*

Bruce A. Singal
Michelle R. Peirce
Callan G. Stein
Donague, Barrett & Singal, P.C.
One Beacon Street, Suite 1320
Boston, MA 02108

*Attorneys for Defendants Barry J. Cadden
and Lisa Conigliaro Cadden*

Damian W. Wilmot
James Rehnquist
Abigail K. Hemani
Roberto M. Braceras
Goodwin Proctor LLP
Exchange Place
53 State Street
Boston, MA 02109

*Attorneys for Unifirst Corporation a/d/b/a
Uniclean Cleanroom Services*

Parks Chastain
Jason Lee
Brewer, Krause, Brooks, Chastain &
Burrow, PLLC
611 Commerce St., Suite 2600
P.O. Box 23890
Nashville, TN 37202
615-256-8787
Fax: 615-256-8985

*Attorneys for Specialty Surgery Center,
Crossville, PLLC*

Frederick H. Fern
Judi Abbott Curry
Jessica Saunders Eichel
Alan M. Winchester
Harris Beach PLLC
100 Wall Street
23rd Floor
New York, NY 10005

Geoffrey M. Coan
Daniel E. Tranen
Hinshaw & Culbertson LLP
28 State Street
24th Floor
Boston, MA 02109

Michael R. Gottfried
Thomas B.K. Ringe, III
Jennifer Mikels
Duane Morris LLP
100 High Street
Suite 2400
Boston, MA 02110-1724

*Attorneys for NECC*

Marcy H. Greer
Alexander Dubose Jefferson & Townsent
515 Congress Ave.
Quite 2350
Austin, TX 78701

Yvonne K. Puig
Eric Hoffman
Fulbright & Jaworski L.L.P.
98 San Jacinto Blvd.
Suite 1100
Austin, TX 78701

Sarah P. Kelly
Nutter, McClennen & Fish, LLP
Seaport West
155 Seaport Boulevard
Boston, MA 02210-2604

*Attorneys for the Saint Thomas Entities*

/s/ Christopher Wolk
**Christopher Wolk**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | MDL No. 2419 Dkt. No: 1:13-md-2419-RWZ |
| THIS DOCUMENT RELATES TO: | |
| Suits Naming the Premier Defendants | |

## THE PREMIER DEFENDANTS' FIRST INTERROGATORIES, REQUESTS FOR PRODUCTION OF DOCUMENTS, AND REQUESTS FOR ADMISSION PROPOUNDED TO BARRY CADDEN.

Come the Defendants, Premier Orthopaedic and Sports Medicine Associates of Southern New Jersey, LLC, trading as Premier Orthopaedic Associates; Premier Orthopaedic Associates Surgical Center, LLC; Kimberly Yvette Smith, M.D., a/k/a Kimberly Yvette Smith-Martin, M.D.; Thomas Dwyer, M.D.; Richard C. DiVerniero, M.D.; and Richard Strauss, M.D. (collectively, "Premier Defendants") , pursuant to Rules 26, 33, and 34 of the Federal Rules of Civil Procedure and the Local Rules for the District of Massachusetts, and propound the following Interrogatories, Requests for Production of Documents, and Requests for Admission to Barry Cadden.

Each of the following Interrogatories shall be answered under oath, in writing, separately, to the fullest possible detail, and in accordance with the definitions and instructions set forth below. The answers shall be signed by the person making them, and a copy of the answers, together with objections, if any, shall be served within thirty (30) days after the service date of these interrogatories.

You are under a duty to seasonably supplement your response with respect to any Interrogatory directly addressed to the identity and location of persons having knowledge of discoverable matters. You are under a duty to amend a prior response if you obtain information on the basis of which you know that the response was incorrect when made, or that the response, though correctly made, is no longer true, and the circumstances are such that a failure to amend the response is, in substance, a knowing concealment.

1

# DEFINITIONS

1. As used in this document, the terms "person(s)" and "individual(s)" mean any natural individual in any capacity whatsoever or any entity or organization, including divisions, departments, and other units therein, and shall include, but not be limited to, a public or private corporation, partnership, joint venture, voluntary or unincorporated association, organization, proprietorship, trust, estate, governmental agency, commission, bureau, or department.

2. As used in this document, the term "document" means any medium upon which intelligence or information can be recorded or retrieved, and includes without limitation, the original and each copy, regardless of origin and location, of any book, pamphlet, periodical, letter, memorandum (including any memorandum or report of a meeting or conversation), invoice, bill, order form, receipt, financial statement, accounting entry, diary, calendar, telex, telegram, cable, report, record, contract, agreement, study, handwritten note, draft, working paper, chart, paper, print, laboratory record, drawing or sketch, graph, index, lists, tape, photograph, microfilm, data sheet or data processing card, or any other written, recorded, transcribed, punched, taped, filmed, or graphic matter, however produced or reproduced, which is in your possession, custody, or control, or which _was_, but is no longer, in your possession, custody, or control.

3. As used in this document, the terms "identification," "identify," or "identity," when used in reference to a natural individual, require you to state his or her full name and residential and business address. Use of the term "document" in connection with the Interrogatories requires you to state the number of pages and the nature of the document, its title, its date, the name or names of its authors, and recipients, and its present location and custodian.

4. "You and "your" refers to Barry Cadden and each of his present and former agents, representatives, and employees, attorneys and accountants, and each person acting or purporting to act on his behalf.

5. "Communication" means any oral or written utterance, notification, or statement of any nature whatsoever, by and to whomsoever made, including, but not limited to, correspondence, conversation, dialogue, discussions, interviews, consultants, and any other understanding between or among two or more persons.

## INSTRUCTIONS

1.  With respect to each Interrogatory, in addition to answering the question, you are to identify all documents that support, refer to, or evidence the subject matter of each Interrogatory and your answer thereto.

    If any or all identified documents are no longer in your possession, custody, or control because of destruction, loss, or any other reason, then you must do the following with respect to each and every document:

    A.  Describe the nature of the document;

    B.  State the date of the document;

    C.  Identify the persons who sent and received the original and the copy of the document;

    D.  State in as much detail as possible the contents of the documents; and

    E.  State the manner and date of disposition of the document.

    If you contend that you are entitled to withhold from production any or all documents identified herein on the basis of attorney-client privilege, the work-product doctrine, or any other ground, then do the following with respect to each and every document:

    A.  Describe the nature of the document;

    B.  State the date of the document;

    C.  Identify the persons who sent and received the original and a copy of the document;

    D.  State the subject matter of the document; and

    E.  State the basis upon which you contend you are entitled to withhold the document from production.

2.  All documents produced should be organized and labeled to correspond to the specific Request in response to which they are being made available or should be produced as they are kept in the usual course of business.

3.  The terms "and," "or," and "and/or" should be construed either disjunctively or conjunctively so as to bring within the scope of these Interrogatories and Requests any information that might otherwise be construed as outside their scope.

4.  The term "any" should be construed to include the word "all," and "all" should be construed to include "any."

3

5. The present tense should be construed to include the past tense, and the past tense should be construed to include the present tense.

6. The singular should be construed to include the plural, and the plural should be construed to include the singular.

7. The terms "he" and "his" should be construed to include the words "she" and "her" or "hers," respectively and vice versa.

8. "Relating to," when referring to a document shall mean mentioning, describing, connected to or with, or discussing the stated subject matter.

## INTERROGATORIES

1. Describe in detail your role at NECC and Ameridose, including job title, job description, and a description of your daily duties and activities in 2011 and 2012.

   **ANSWER:**

2. Describe in detail the steps NECC took to compound, process, stopper, seal, package, and ship methylprednisolone acetate ("MPA") in 2011 and 2012, including but not limited to:

   a) The names and job titles of the individuals performing each step;

   b) The specific cleanroom or location in NECC's facility where each step took place;

   c) The tools, equipment, or machinery used for each step;

   d) Any changes to NECC's methods or procedures for compounding MPA, or the location where compounding MPA took place, that occurred in 2011 or 2012.

   **ANSWER:**

3. Identify the total amount of MPA that NECC, and separately Ameriose, produced in each quarter of 2010, 2011, and 2012.

   **ANSWER:**

4. Identify the types of vials and closures NECC used for MPA lots numbered 05212012@68, 06292012@26, and 08102012@51 (collectively "Contaminated Lots"), including whether the vials and enclosures were prewashed or presterilized, and identify their manufacturer(s) and from whom they were purchased by NECC.

   **ANSWER:**

5. Identify any and all complaints that NECC and Ameridose received related to the sterility or safety of their products, including but not limited to complaints by customers, current and former employees, and state and federal government agencies.

   **ANSWER:**

6. Identify any customers of NECC and Ameridose who performed site visits prior to placing orders with either company.

   **ANSWER:**

7. Describe any policies, procedures, or protocols relating to or regarding customer site visits to the NECC facility, including the areas you allowed customers to inspect.

**ANSWER:**

8. Identify any customers who took the following actions prior to placing orders with NECC or Ameridose:

   a. Verified whether NECC's quality processes demonstrated that NECC was a reputable and safe supplier of sterile injectable compounds;

   b. Determined if NECC was an accredited compounding pharmacy;

   c. At least once annually, unannounced, visited NECCs corporate offices and compounding facilities and conferred with NECC's corporate, pharmacy, and compounding staff;

   d. Determined whether NECC had any product liability lawsuits filed against it for preparations compounded;

   e. Determined whether there had ever been recalls of any of NECC's compounded preparations;

   f. Evaluated NECC's standard operating procedures and manuals;

   g. Evaluated NECC's pharmacist technician training;

   h. Evaluated NECC's policies and procedures for sterility testing;

   i. Evaluated examples of batch reports for product being considered for outsourcing;

   j. Evaluated examples of quality-control reports;

   k. Obtained and evaluated history of the results of all NECC accreditation or regulatory surveys conducted of NECC's sites, including copies of significant regulatory actions;

   l. Determined if NECC could provide documentation of the end-product testing processes used to determine that compounded sterile preparations are sterile and free of pyrogens and unintended particulate matter;

   m. Evaluated whether NECC could assure that each compounded sterile preparation was sterile and free of pyrogens and unintended particulate matter according to professional established and accepted quality monitoring data;

   n. Determined whether NECC performed nonviable and viable particle testing in primary engineering controls (e.g., laminar flow workbench, biological safety cabinet) and room air according to USP chapter 797 standards;

6

o. Determined whether NECC performed routine surface microbiological and fungal environmental monitoring to minimize contamination;

p. Determined whether NECC had a policy that required validation of new or changed facilities, equipment, processes, or container types, for sterility and repeatability;

q. Determined whether NECC met ASHP, NIOSH and USP chapter 797 guidelines for the handling of hazardous agents;

r. Evaluated NECC's quality management program, specifically as it relates to facility cleaning and validation, staff training, and competency assessment;

s. Evaluated NECC's risk assessment program to ensure that medication errors are not introduced by new or increased outsourced compounding activities; or

t. Determined whether NECC had a history of disciplinary or punitive actions by any regulatory agency.

**ANSWER:**

9. Describe any information you, NECC, or Ameridose provided to each customer in response to the inquiries identified in the previous Interrogatory.

**ANSWER:**

10. Identify any and all complaints NECC or Ameridose received related to their compliance with state or federal laws and regulations, including but not limited to complaints by customers, current and former employees, and state and federal government agencies.

**ANSWER:**

11. Identify and describe any way in which NECC's cleanrooms were modified, altered, or expanded by NECC or Ameridose.

**ANSWER:**

12. Identify any policies, procedures, or guidelines in place at NECC in 2012 that encouraged employees to disclose mistakes in the compounding process, even if the mistakes necessitated destruction of product or halting production.

**ANSWER:**

13. Describe all disciplinary or enforcement action taken against NECC or Ameridose by any state or federal government agency.

**ANSWER:**

14. Describe in detail Lisa Conigliaro Cadden's role at NECC in 2011 and 2012.

**ANSWER:**

## VERIFICATION

STATE OF NEW JERSEY     )
                                )
County of _____   )

I, _____, after being duly sworn, hereby make oath that the foregoing answers to Interrogatories are true to the best of my knowledge, information, and belief.

_____

Sworn and subscribed before me this _____ day of _____, 2015.

_____
**Notary Public**

My commission expires on: _____.

## REQUESTS FOR PRODUCTION

1. Produce all correspondence between you and any of the Premier Defendants, their employees, agents, or representatives.

   **RESPONSE:**

2. Produce all correspondence and documents referring or related to the Premier Defendants' purchase of MPA from NECC in 2011 or 2012.

   **RESPONSE:**

3. Produce all documents produced by the government to you during any civil, criminal, or administrative proceedings related to NECC's contaminated MPA.

   **RESPONSE:**

4. Produce all policies, procedures, guidelines, instructions and training documents referring or relating to the compounding of MPA at the NECC facility.

   **RESPONSE:**

5. Produce all documents referring or relating to NECC or Ameridose sending sufficient samples, by size or volume, to comply with USP 71 to ARL or any other testing laboratory.

   **RESPONSE:**

6. Produce all correspondence and documents referring or relating to fungal blooms or growth in or near NECC's cleanrooms.

   **RESPONSE:**

7. Produce all documents referring or relating to any complaints that NECC or Ameridose received related to the sterility or safety of their products, including but not limited to complaints by customers, current or former employees, or state or federal government agencies.

   **RESPONSE:**

8. Produce all documents referring or relating to any complaints NECC or Ameridose received related to their compliance with state or federal laws or regulations, including but not limited to complaints by customers, current or former employees, or state or federal government agencies.

   **RESPONSE:**

9. Produce all correspondence and documents referring or relating to NECC's response to the meningitis outbreak, including but not limited to, steps NECC took to prepare for any inspections of its facility.

**RESPONSE:**

10. Produce all training and instructional material for sales staff at NECC or MSM.

**RESPONSE:**

11. Produce copies of any and all New Jersey Pharmacy Licenses issued to NECC and/or Barry Cadden, and all documents or communications between NECC and/or Barry Cadden and the New Jersey Board of Pharmacy, including those referring or related to the procurement or renewal of said Licenses.

**RESPONSE:**

## REQUESTS FOR ADMISION

1. Admit that you were NECC's pharmacist in charge in 2011 and 2012.

   **ANSWER:**

2. Admit that you signed NECC's application for a pharmacy license in New Jersey representing yourself to be NECC's pharmacist in charge.

   **ANSWER:**

3. Admit that the New Jersey Board of Pharmacy granted you a pharmacist license number, permitting you to practice as a pharmacist in the state of New Jersey.

   **ANSWER:**

4. Admit that on or about October 12, 2012, NECC executed a Voluntary Surrender Agreement in which it voluntarily surrendered its license to practice pharmacy in the state of New Jersey.

   **ANSWER:**

5. Admit that on or about October 20, 2012, you executed a Voluntary Surrender Agreement in which you voluntarily surrendered your license to practice as a pharmacist in the state of New Jersey.

   **ANSWER:**

6. Admit that as the pharmacist in charge at NECC, you had the authority and responsibility for compliance with the laws and rules pertaining to the practice of pharmacy of NECC at its practice site.

   **ANSWER:**

7. Admit that, had any of the Premier Defendants asked for a copy of NECC's license in 2011, you would have provided a valid and up-to-date New Jersey pharmacy license.

   **ANSWER:**

8. Admit that NECC represented to potential customers, including the Premier Defendants, that it met or exceeded USP 797 standards.

   **ANSWER:**

9. Admit that NECC represented to potential customers, including the Premier Defendants, that its products, including MPA, were safe and sterile.

**ANSWER:**

10. Admit that the Massachusetts Board of Pharmacy ("Mass. BoP") inspected NECC on or about May 24, 2011.

**ANSWER:**

11. Admit that as a result of its inspection on or about May 24, 2011, the Mass. BoP issued an inspection report documenting its findings.

**ANSWER:**

12. Admit that you did not submit a copy of the Mass. BoP's May 24, 2011 inspection report to the New Jersey Board of Pharmacy.

**ANSWER:**

13. Admit that you owed a duty to the Plaintiffs to ensure that NECC's MPA was sterile prior to distributing it to customers.

**ANSWER:**

14. Admit that the documents attached as Exhibit B are NECC's Logged Formula Worksheets for the MPA lots numbered 05212012@68, 06292012@26, and 08102012@51 (collectively "Contaminated Lots").

**ANSWER:**

15. Admit that in each Logged Formula Worksheet in Exhibit B, the pharmacist referred to as "GC" is Glenn Chin.

**ANSWER:**

16. Admit that the Logged Formula Worksheet for lot 06292012@26, attached as Exhibit B, states that the MPA was autoclaved for twenty (20) minutes at 121 C. and 15 PSI.

**ANSWER:**

17. Admit that NECC's Standard Operating Procedures required that the MPA be autoclaved for fifteen (15) minutes at 121 C. and 15 PSI.

**ANSWER:**

18. Admit that the Logged Formula Worksheets in Exhibit B state that Joseph P. Connolly was the technician for MPA lots 05212012@68 and 06292012@26.

**ANSWER:**

19. Admit that Glenn Chin compounded lot 08102012@51.

**ANSWER:**

20. Admit that Glenn Chin and Joseph Connolly compounded lots 05212012@68 and 06292012@26.

**ANSWER:**

21. Admit that NECC violated its own standard operating procedures by allowing Joseph Connolly (a technician) to compound two of the three contaminated lots.

**ANSWER:**

22. Admit that Exhibit C is NECC's General Overview of Policies and Procedures for Compounding Sterile Products.

**ANSWER:**

23. Admit that Exhibit C states, in part:

C. Personnel
    a. All sterile compounding is performed by properly trained and validated pharmacists (*no* technicians).

**ANSWER:**

24. Admit that the documents attached as Exhibit D are reports from Analytical Research Laboratories ("ARL") related to the sterility and endotoxin testing ARL performed on NECC's MPA from the Contaminated Lots.

**ANSWER:**

25. Admit that NECC submitted only two 5 mL vials of MPA from each of the Contaminated Lots to ARL for testing.

**ANSWER:**

26. Admit that USP standards for sterility testing required a larger sample size than two 5 mL vials per lot of MPA.

**ANSWER:**

27. Admit that USP 797 requires an ISO 5 space for stoppering vials of MPA.

   **ANSWER:**

28. Admit that NECC stoppered the Contaminated Lots in an ISO 7 space.

   **ANSWER:**

29. Admit that the documents attached as Exhibit E are true and accurate copies of emails you sent to Glenn Chinn in the normal course of NECC's business.

   **ANSWER:**

30. Admit that in the email you sent Glenn Chin on Wednesday, August 10, attached as Exhibit E, you stated, "I am told that the lots for some drugs almost never coincide with the available test data."

   **ANSWER:**

31. Admit that in the email you sent Glenn Chin on Wednesday, August 10, attached as Exhibit E, you stated, "I was told that we are only testing rarely and dispensing many untested lots."

   **ANSWER:**

32. Admit that Exhibit F is a true and accurate copy of an email you received from Glenn Chinn on Monday, December 19, 2011.

   **ANSWER:**

33. Admit that the email in Exhibit F was sent in the normal course of NECC's business.

   **ANSWER:**

34. Admit that in the email attached as Exhibit F, Glenn Chin indicated that he was using "MTX" that had expired in 2007 in NECC's injectable products in 2011.

   **ANSWER:**

Respectfully Submitted,

**BLUMBERG & WOLK, LLC**

/s/ Christopher Wolk

**Jay Blumberg**
**Christopher Wolk**
158 Delaware Street
P.O. Box 68
Woodbury, NJ 08096
(856) 848-7472

*Attorneys for the Premier Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of May, 2015, a true and accurate copy of the foregoing was served on Barry Cadden by U.S. mail and on the other parties below electronically via the Court's CM/ECF system:

O. Mark Zamora
The Orlando Firm, P.C.
P.O. Box 660216
Atlanta, GA 30366

*Attorney for the PSC*

Matthew P. Moriarty
Thomas W. Coffey
Richard A. Dean
Tucker Ellis, LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113

Scott H. Kremer
Tucker, Heifetz & Saltzman
Three School Street
Boston, MA 02108

Scott J. Tucker
Paul Saltzman
Matthew E. Mantalos
Tucker, Saltzman & Dyer, LLP
50 Congress Street
Boston, MA 02109

*Attorneys for Defendant Ameridose, LLC.*

Daniel M. Rabinovitz
Brady J. Hermann
Nicki Samson
Michaels, Ward & Rabinovitz
One Beacon Street, 2nd Floor
Boston, MA 02108

*Attorneys for Defendant Medical Sales Management, Inc.*

John P. Ryan
Robert H. Gaynor
William J. Dailey, Jr.
Sloane and Walsh, LLP
Three Center Plaza
Boston, MA 02108

*Attorneys for Gregory Conigliaro, Registered Agent for Service of Process for Medical Sales Management SW, Inc.*

Joseph P. Thomas
Ulmer & Berne, LLP
600 Vice Street, Suite 2800
Cincinnati, OH 45202

Joshua A. Klarfeld
Ulmer & Berne, LLP
1660 W. 2nd Street, Suite 1100
Cleveland, OH 44113

*Attorneys for Defendant GDC Properties
Management, LLC*

Kenneth B. Walton
Kristen R. Ragosta
Donovan Hatem, LLP
Two Seaport Lane, 8th Floor
Boston, MA 02210

*Attorney for Defendant ARL Biopharma*

John P. Ryan
Robert H. Gaynor
William J. Dailey, Jr.
Sloane and Walsh, LLP
Three Center Plaza
Boston, MA 02108

*Attorneys for Defendants Barry J. Cadden,
Lisa Conigliaro Cadden, Gregory
Conigliaro, Carla Conigliaro, Douglas
Conigliaro and Glenn A. Chin*

Bruce A. Singal
Michelle R. Peirce
Callan G. Stein
Donague, Barrett & Singal, P.C.
One Beacon Street, Suite 1320
Boston, MA 02108

*Attorneys for Defendants Barry J. Cadden
and Lisa Conigliaro Cadden*

Damian W. Wilmot
James Rehnquist
Abigail K. Hemani
Roberto M. Braceras
Goodwin Proctor LLP
Exchange Place
53 State Street
Boston, MA 02109

*Attorneys for Unifirst Corporation a/d/b/a
Uniclean Cleanroom Services*

Parks Chastain
Jason Lee
Brewer, Krause, Brooks, Chastain &
Burrow, PLLC
611 Commerce St., Suite 2600
P.O. Box 23890
Nashville, TN 37202
615-256-8787
Fax: 615-256-8985

*Attorneys for Specialty Surgery Center,
Crossville, PLLC*

Frederick H. Fern
Judi Abbott Curry
Jessica Saunders Eichel
Alan M. Winchester
Harris Beach PLLC
100 Wall Street
23rd Floor
New York, NY 10005

Geoffrey M. Coan
Daniel E. Tranen
Hinshaw & Culbertson LLP
28 State Street
24th Floor
Boston, MA 02109

Michael R. Gottfried
Thomas B.K. Ringe, III
Jennifer Mikels
Duane Morris LLP
100 High Street
Suite 2400
Boston, MA 02110-1724

*Attorneys for NECC*

Marcy H. Greer
Alexander Dubose Jefferson & Townsent
515 Congress Ave.
Quite 2350
Austin, TX 78701

Yvonne K. Puig
Eric Hoffman
Fulbright & Jaworski L.L.P.
98 San Jacinto Blvd.
Suite 1100
Austin, TX 78701

Sarah P. Kelly
Nutter, McClennen & Fish, LLP
Seaport West
155 Seaport Boulevard
Boston, MA 02210-2604

*Attorneys for the Saint Thomas Entities*

/s/ Christopher Wolk
**Christopher Wolk**

# EXHIBIT B

**Logged Formula Worksheet** (standard)
5/21/2012 9:58:08 AM
Page 1

NEW ENGLAND COMPOUND
697 WAVERLY ST.
697 WAVERLY ST.
FRAMINGHAM, MA 01702 Ph

N — 17.125 g-7
H — 82.378 g-6
H — 28.583 g-3
N — 352.581 g-2

METHYLPRED. AC (PF) 80MG/ML INJECTABLE

Flavor:
Description:                                                              Schedule: L
Quantity made: 12500 ML        Batch yield: 12,500.000      PCCA ID:
                               Qty remaining: 12,500.000    Route of admin:

Log ID: 229938

Date made: 5/21/2012
Lot number: 05212012@68
Beyond use date: November 17, 2012        9:57 AM
                 180 days after compounding date
Pharmacist:  GC
Technician: JOSEPH P CONNOLLY
NDC1:
Packaging:
Equipment:

Labeling: SHAKE WELL***SDV***
Stability information:

| Chemicals | Sch. | Quantity used | QS |
|---|---|---|---|
| 1 METHYLPREDNISOLONE ACETATE USP (STERILE) Pl - <br> Lot #: 78740/A Mfg: <br> Chemical Code:  Volume: Medisca Potency: <br> Balance: 81113/A | | 1000 GM <br> Exp. date: 4/30/2016 <br> QS amount: <br> NDC: 49452-4968-02 | ☑ |
| 2 POLYETHYLENE GLYCOL 3350 NF (STERILE) BASE - <br> Lot #: 77089/A Mfg: MEDISCA <br> Chemical Code: Volume: Potency: <br> Balance: | | 352.5 GM <br> Exp. date: 2/28/2014 <br> QS amount: <br> NDC: | ☐ Whlsr: MEDISCA $7,755.00  07/21/2005 <br> AWP: $0.00 <br> Each ML contains 0.0282 GM or 2.82% <br> ChemInvID: 0 |
| 3 SODIUM CHLORIDE (STERILE) GRANUALE - <br> Lot #: 11020203 Mfg: MEDISCA <br> Chemical Code: Volume: Potency: <br> Balance: | | 28.5 GM <br> Exp. date: 11/10/2013 <br> QS amount: <br> NDC: 51927106700 | ☐ Whlsr: MEDISCA $0.56  04/02/2012 <br> AWP: $5.13 <br> Each ML contains 0.00228 GM or 0.228% <br> ChemInvID: 0 |
| 4 WATER FOR INJECTION INJ <br> Lot #: J28670 Mfg: BRAUN <br> Chemical Code: Volume: Potency: <br> Balance: | | 12500 ML <br> Exp. date: 8/31/2014 <br> QS amount: <br> NDC: 00409488798 | ☒ Whlsr: BRAUN $25,000.00  06/17/2005 <br> AWP: $01.13 <br> Each ML contains 1 ML or 100% <br> ChemInvID: 300 |
| 5 POLYSORBATE 80 (STERILE) LIQUID O <br> Lot #: 79814/C Mfg: MEDISCA <br> Chemical Code: Volume: Potency: <br> Balance: | | 47.5 ML <br> Exp. date: 8/31/2013 <br> QS amount: <br> NDC: | ☐ Whlsr: MEDISCA $0.00  04/02/2009 <br> AWP: $0.00 <br> Each ML contains 0.0038 ML or 0.38% <br> ChemInvID: 170 |
| 6 SODIUM PHOSPHATE MONOBASIC (STERILE) POWDI - <br> Lot #: 11010925 Mfg: LETCO <br> Chemical Code: Volume: Potency: <br> Balance: | | 82.375 GM <br> Exp. date: 8/11/2013 <br> QS amount: <br> NDC: | ☐ Whlsr: PROFESSIONAL COMPOUN $62.36  09/30/2008 <br> AWP: $0.00 <br> Each ML contains 0.00659 GM or 0.659% <br> ChemInvID: |
| 7 SODIUM PHOSPHATE DIBASIC (STERILE) POWDER <br> Lot #: G440892 Mfg: PCCA <br> Chemical Code: Volume: Potency: <br> Balance: K32473 | | 17.125 GM <br> Exp. date: 8/1/2012 <br> QS amount: 05/31/4 <br> NDC: | ☐ Whlsr: PROFESSIONAL COMPOUN $0.00  11/01/2011 <br> AWP: $0.00 <br> Each ML contains 0.00137 GM or 0.137% <br> ChemInvID: 289 |

(Added all GM & GMS: 1,480.50)                    $32,837.94

**Pricing calculations fr**
Estimated price   $0.
Ingredient cost   $0.
Device cost       $0.
Time cost         $0.
Profit

15c

05-10-12 P9:05  10

SB

05-11-12 A09:05  OUT

yellow

04-30-12 A09:48  OUT

Memo bsque astral

*Log Instructions & Notes*
Originally made as: 12500 METHYLPRED. AC (PF) 80MG/ML INJECTABLE
Calculated lot number: 05212012@68  Beyond use date: 11/17/2012
FORMULA INSTRUCTIONS:

ZEBRA BAR CODES:
99600010504 - 1mL VIAL
99600020504 - 2mL VIAL
99600050504 - 5mL VIAL

Date entered: 5/21/2012 9:57:45 AM      Last modified: 5/21/2012 9:58:06 AM      by: LAB
Checked by:                                                          Date

NECC_MDL000005160

```
MODEL No. MLS-3781

OPERATION DATE 2012/05/21
           TIME PM 08:45:12

COURSE    1

          CYCLE STARTED

TIME     TEMP   PRESS  STATUS
ELAPSED  CENT.  kPa    CYCLE


00:11:58 080.0   14    HEAT
00:13:59 100.9   24    HEAT
00:22:01 108.4   30    HEAT

00:25:25 121.9  104    STERI.
00:27:25 121.8  110    STERI.
00:29:25 121.6  111    STERI.
00:31:25 121.6  109    STERI.
00:33:25 121.7  111    STERI.
00:35:25 121.7  111    STERI.
00:37:25 121.6  110    STERI.
00:39:25 121.7  112    STERI.

00:40:29 121.7  112    COOL

01:14:15 064.9    5    COMPLETE

START TIME PM 08:45:12
END TIME   PM 09:59:27
```

**Logged Formula Worksheet** (standard)
6/29/2012 9:06:36 AM
Page 1

NEW ENGLAND COMPOUND
697 WAVERLY ST.
697 WAVERLY ST.
FRAMINGHAM, MA 01702 PI

METHYLPRED. AC (PF) 80MG/ML INJECTABLE

N  +  352.504  g
N  +  28.506  g
N  +  82.375  g
N  +  17.123  g

Flavor:                                                                    Schedule: L
Description:
Quantity made: 12500 ML            Batch yield: 12,500.000       PCCA ID:
                                    Qty remaining: 12,500.000     Route of admin:

BF          06-29-7M
Formula ID: 2228
Log ID: 235696

Date made: 6/29/2012                *Pricing calculations from t*
Lot number: 06292012@26             Estimated price      $9.00 as
Beyond use date: December 26, 2012    9:06 AM   Ingredient cost     $0.00
                  180 days after compounding date    Device cost        $0.00
Pharmacist:  GC                     Time cost           $
Technician:  <NONE>                 Profit
NDC1:
Packaging:
Equipment:

15L

SB
06-27-12 A11:41 OUT

Labeling: SHAKE WELL***SDV***
Stability information:

teflon
05-24-12 P03:42 OUT

| Chemicals | Sch. | Quantity used | QS | (B |
|---|---|---|---|---|
| METHYLPREDNISOLONE ACETATE USP (STERILE) P-  2x500 = 1000 GM | | | | Whls |
| Lot #: 28240A  Mfg:  Exp. date: 4/30/2016 | | | | |
| Balance:  Chemical Code:  Volume:  Potency:  QS amount: 01-30-17 | | | | |
| 8Z872/B  Medisca  NDC: 49452-4988-02 | | | | |

Hormo 01-12-12 C605872W

| POLYETHYLENE GLYCOL 3350 NF (STERILE) BASE - | | 352.5 GM | | Whlsr: MEDISCA  $7,755.00  07/21/2005 |
| Lot #: 77089/A  Mfg: MEDISCA  Exp. date: 2/28/2014 | | | | |
| Balance:  Chemical Code:  Volume:  Potency:  QS amount: | | | | Each ML contains 0.0282 GM or 2.82%  $0.00 |
| | | | NDC: | AWP:  ChemInvID: 0 |

| SODIUM CHLORIDE (STERILE) GRANUALE - | | 28.5 GM | | Whlsr: MEDISCA  $0.56  04/02/2012 |
| Lot #: 11020203  Mfg: MEDISCA  Exp. date: 11/10/2013 | | | | |
| Balance:  Chemical Code:  Volume:  Potency:  QS amount: | | | | Each ML contains 0.00228 GM or 0.228%  $0.13 |
| | | | NDC: 51927108700 | AWP:  ChemInvID: 0 |

| WATER FOR INJECTION  INJ | | 12500 ML | X | Whlsr: BRAUN  $25,000.00  06/17/2005 |
| Lot #: J2A468  Mfg: BRAUN  Exp. date: 7/31/2014 | | | | |
| Balance:  Chemical Code:  Volume:  Potency:  QS amount: | | | | Each ML contains 1 ML or 100%  $61.13 |
| | | | NDC: 00409488799 | AWP:  ChemInvID: 300 |

| POLYSORBATE 80 (STERILE) LIQUID  O | | 47.5 ML | | Whlsr: MEDISCA  $0.00  04/07/2009 |
| Lot #: 79514/C  Mfg: MEDISCA  Exp. date: 8/31/2013 | | | | |
| Balance:  Chemical Code:  Volume:  Potency:  QS amount: | | | | Each ML contains 0.0038 ML or 0.38%  $0.00 |
| | | | NDC: | AWP:  ChemInvID: 170 |

| SODIUM PHOSPHATE MONOBASIC (STERILE) POWDI - | | 82.375 GM | | Whlsr: PROFESSIONAL COMPOUN  $82.38  09/30/2008 |
| Lot #: 11010925  Mfg: LETCO  Exp. date: 8/11/2013 | | | | |
| Balance:  Chemical Code:  Volume:  Potency:  QS amount: | | | | Each ML contains 0.0059 GM or 0.659%  $0.00 |
| | | | NDC: | AWP:  ChemInvID: 0 |

| SODIUM PHOSPHATE DIBASIC (STERILE) POWDER - | | 17.125 GM | | Whlsr: PROFESSIONAL COMPOUN  $0.00  11/01/2011 |
| Lot #: C140692  Mfg: PCCA  Exp. date: 8/1/2013 | | | | |
| Balance:  Chemical Code:  Volume: So To  Potency:  QS amount: 5-31-2013 | | | | Each ML contains 0.00137 GM or 0.137%  $0.00 |
| K32473  BAYER  NDC: | | | | AWP:  ChemInvID: 269 |

(Added all GM & GMS: 1,480.50)                                          $32,837.94

**Log Instructions & Notes**

Originally made as: 12500 METHYLPRED. AC (PF) 80MG/ML INJECTABLE
   Calculated lot number: 06292012@26   Beyond use date: 12/26/2012
FORMULA INSTRUCTIONS:

LL  Nalgenes
Lot # - 1070553
ER - APR 17'

ZEBRA BAR CODES:
99600010504 - 1mL VIAL
99600020504 - 2mL VIAL
99600050504 - 5mL VIAL

pH = 5 on paper   375 (2)  KT = 60'

Date entered: 6/29/2012 9:06:22 AM   Last modified: 6/29/2012 9:06:34 AM   by: LAB
Checked by: _____   Date: _____

Confidential - Subject to Protective Order

BASE Beaker

necc

06-22-12 P03:05 OUT

BASE $S_o B_o$

```
MODEL No. MLS-3781

OPERATION DATE 2012/06/30
        TIME PM 08:01:18

COURSE   1

        CYCLE STARTED

TIME     TEMP    PRESS  STATUS
ELAPSED  CENT.   kPa    CYCLE

00:09:53 099.0    6     HEAT
00:13:28 100.0    23    HEAT
00:21:30 101.5    10    HEAT

00:25:41 121.0   104    STERI.
00:27:41 121.8   110    STERI.
00:29:41 121.8   110    STERI.
00:31:41 121.8   110    STERI.
00:33:41 121.6   110    STERI.
00:35:41 121.8   112    STERI.
00:37:41 121.7   112    STERI.
00:39:41 121.6   111    STERI.

00:40:46 121.5   114    COOL

01:15:00 064.9    4     COMPLETE

START TIME PM 08:01:18
END TIME  PM 09:16:18
```

Confidential - Subject to Protective Order

NECC_MDL000005168

**Logged Formula Worksheet** (standard)
6/29/2012 9:06:36 AM
Page 2



NEW ENGLAND COMPOUNDING CTR
697 WAVERLY ST.
697 WAVERLY ST.
FRAMINGHAM, MA  01702  Ph. 800-994-6322

METHYLPRED. AC (PF) 80MG/ML INJECTABLE

Flavor:
Description:
Quantity made: 12500 ML

Schedule: L

Active ☑
Formula ID: 2228
Log ID: 235896

Batch yield:  12,500.000
Qty remaining:  12,500.000

PCCA ID:
Route of admin:

12/09/09 POLYSORBATE-80 DOUBLED FROM 0.194ML/100ML TO 0.38ML/100ML GC

MATERIALS: STERILE BEAKER, STERILE SPIN BAR, STERILE HOMOGENIZER ELEMENT
   medisca 500gm plastic bottle weighs 98gms, plastic seal ring weighs 0.7gms
   medisca 1kg plastic bottle weighs 146gms, WITH TOP
1) WEIGH CHEMICALS IN STERILE WEIGH CUPS ON ELECTRONIC ANALYTICAL BALANCE
2) IN HOOD DISSOLVE BASE-B, SODIUM PHOSPHATE MONOBASIC, SODIUM PHOSPHATE DIBASIC, SODIUM CHLORIDE, AND POLYSORBATE -80 IN VORTEX OF 80% FINAL VOLUME OF STERILE WATER.FILTER SOLUTION THROUGH A 0.22MICRON NALGENE FILTER.
3) SLOWLY ADD METHYLPREDNISOLONE ACETATE TO VORTEX OF ABOVE SOLUTION.
4) HOMOGENIZE AT HIGH SPEED FOR 2-5 MINUTES (VOLUME DEP.)
5) QS TO FINAL VOLUME WITH STERILE WATER FOR INJECTION.
6) COVER WITH MULTIPLE LAYERS OF FOIL AND SEAL WITH AUTOCLAVE INDICATOR TAPE
7) AUTOCLAVE AT 121C-15PSI-20MIN
####SPRAY EXTERIOR OF SEALED BEAKER WITH 70% IPA####
8) RETURN TO HOOD AND REHOMOGENIZE. CREATE VORTEX AND ALLOW TO SOIN TILL COOLED TO ROOM TEMP.
9) FILL STERILE  AMBER VIALS USING BAXA REPEATER PUMP VIA DISPOSABLE STERILE TUBING
10) CAP ,CRIMP, AND LABEL

####PULL RANDOM VIALS FOR APPROPRIATE ANALYSIS####

Date entered: 6/29/2012 9:06:22 AM    Last modified:  6/29/2012 9:06:34 AM    by: LAB
Checked by: _____    Date: ____/____/____

Confidential - Subject to Protective Order

**Logged Formula Worksheet** (standard)
8/10/2012 2:43:06 PM
Page 1

NEW ENGLAND COMPOUN
697 WAVERLY ST.
697 WAVERLY ST.
FRAMINGHAM, MA 01702

N + 352.586 g
N + 28.501 g
N + 82.377 g
N + 17.129 g

METHYLPRED. AC (PF) 80MG/ML INJECTABLE

Flavor:
Description:
Quantity made: 12500 ML

Schedule: L
Active ☑
Formula ID: 2228

Batch yield: 12,500.000
Qty remaining: 12,500.000

PCCA ID:
Route of admin:

Date made: 8/10/2012
Lot number: 08102012@51
Beyond use date: February 6, 2013        2:42 PM
180 days after compounding date
Pharmacist: GC
Technician: JOSEPH P CONNOLLY
NDC1:
Packaging:
Equipment:

*Pricing calculations from the I*
Estimated price        $9.00 as of
Ingredient cost        $0.00
Device cost            $0
Time cost              $0
Profit                 $9

08-07-12 A11:42 OUT

06-29-12 A11:24 OUT

Labeling: SHAKE WELL***SDV***
Stability information:

| Chemicals | Sch. | Quantity used | QS | (Balance) |
|---|---|---|---|---|
| 1 METHYLPREDNISOLONE ACETATE USP (STERILE) P | 2 × 500 gm = 1000 GM | | Whlsr: | |
| Lot #: 7874B/A   Mfg:   Volume:   Potency: | Exp. date: 4/30/2016   QS amount: 09-30-16 | | | |
| Chemical Code: | | 09-30-16  NDC: 49452-4688-02 | | |
| Balance: 81113/G + 80484/B  Medisca | | | | |
| ✗ POLYETHYLENE GLYCOL 3350 NF (STERILE) BASE | 352.5 GM | | Whlsr: | |
| Lot #: 76985/A   Mfg: MEDISCA | Exp. date: 8/31/2013 | | | |
| Chemical Code:   Volume:   Potency: | QS amount: | | | |
| Balance: | | NDC: | CheminvID: 0 | |
| ✓ SODIUM CHLORIDE (STERILE) GRANUALE | 28.5 GM | | $0.56  4/2/2012 | |
| Lot #: 11020203   Mfg: MEDISCA | Exp. date: 11/10/2013 | | Whlsr: MEDISCA | |
| Chemical Code:   Volume:   Potency: | QS amount: | | AWP:  $5.13 | |
| Balance: | | NDC: 51927108700 | Each ML contains 0.00228 GM or 0.226%   CheminvID: 0 | |
| ✓ WATER FOR INJECTION INJ | 12500 ML | ☒ | $25,000.00  6/17/2005 | |
| Lot #: J2B670   Mfg: BRAUN | Exp. date: 8/31/2014 | | Whlsr: BRAUN | |
| Chemical Code:   Volume:   Potency: | QS amount: | | AWP:  $61.13 | |
| Balance: | | NDC: 00409488700 | Each ML contains 1 ML or 100%   CheminvID: 360 | |
| 5 POLYSORBATE 80 (STERILE) LIQUID | O | 47.5 ML | | $0.00  4/2/2009 | |
| Lot #: 79814/C   Mfg: MEDISCA | Exp. date: 8/31/2013 | | Whlsr: MEDISCA | |
| Chemical Code:   Volume:   Potency: | QS amount: | | AWP:  $0.00 | |
| Balance: | | NDC: | Each ML contains 0.0038 ML or 0.38%   CheminvID: 170 | |
| ✓ SODIUM PHOSPHATE MONOBASIC (STERILE) POWDI | 82.375 GM | | $82.38  9/30/2008 | |
| Lot #: 11010925   Mfg: LETCO | Exp. date: 8/11/2013 | | Whlsr: PROFESSIONAL COMPOUN | |
| Chemical Code:   Volume:   Potency: | QS amount: | | AWP:  $0.00 | |
| Balance: | | NDC: | Each ML contains 0.00659 GM or 0.659%   CheminvID: 0 | |
| ✓ SODIUM PHOSPHATE DIBASIC (STERILE) POWDER | 17.125 GM | | $0.00  11/1/2011 | |
| Lot #: C140892   Mfg: PCCA | Exp. date: 8/12/2013 | | Whlsr: PROFESSIONAL COMPOUN | |
| Chemical Code:   Volume:   Potency: | QS amount: 08-31-2013 | | AWP:  $0.00 | |
| Balance: K39H00 | | NDC: | Each ML contains 0.00137 GM or 0.137%   CheminvID: 269 | |

(Added all GM & GMS: 1,480.50)                    $32,837.94

**Log Instructions & Notes**

Originally made as: 12500 METHYLPRED. AC (PF) 80MG/ML INJECTABLE
Calculated lot number: 08102012@51 Beyond use date: 2/6/2013
FORMULA INSTRUCTIONS:

ZEBRA BAR CODES:
99600010504 - 1mL VIAL
99600020504 - 2mL VIAL
99600050504 - 5mL VIAL

Date entered: 8/10/2012 2:42:54 PM    Last modified: 8/10/2012 2:43:04 PM    by: LAB
Checked by:                                         Date: 08/10/2012

Confidential - Subject to Protective Order

NECC_MDL000013151

# EXHIBIT C



697 Waverly Street, Framingham, MA 01702
Tel: 800.994.6322 or 508.820.0606
Fax: 888.820.0583 or 508.820.1616
www.neccrx.com

# General Overview of Policies & Procedures for Compounding Sterile Products

NECC operates in accordance with the following general guidelines when compounding sterile products:

## A. Facility/Equipment
    a. ISO-5 & ISO-6 Cleanroom(s).
    b. Class 10 Microenvironments (barrier isolator).
    c. Certified by Massachusetts Board of Pharmacy as a pharmacy with a central venous admixture service (CIVAS) in accordance with Board regulations, 247 CMR 6.01 (6)(c).

## B. Monitoring & Maintenance
Comprehensive environmental monitoring program
    a. All cleanroom space, air, surfaces and hoods are sampled on a weekly basis, exceeding USP 797.

## C. Personnel
    a. All sterile compounding is performed by properly trained and validated registered pharmacists.
    b. Pharmacy personnel are trained/validated by an outside agency, Professional Compounding Centers of America (PCCA).
    c. Personnel are validated on a quarterly basis.

## D. Quality Assurance/Quality Control
    a. USP Chemicals are obtained only from FDA registered facilities.
    b. Formulations are sterilized by 0.22 micron filtration or by autoclaving.
    c. Samples from final product batch lots are sent to an independent FDA registered analytical lab for sterility, endotoxin (pyrogenicity) and potency testing.
    d. Tested medication is quarantined and dispensed only after the sample has tested negative for endotoxin and microbial contamination.

Confidential - Subject to Protective Order

NECC_MDL000002881

e. The Quality Assurance Team (QAT), made up of employees from all departments within NECC, meets regularly to review all quality related items.
f. NECC maintains strict environmental testing protocols. Results of these tests are reported via Quarterly QA Reports.
g. All sterile compounding actions are performed in compliance with NECC's Standard Operating Procedures (SOPs). These SOPs have been "mapped" against USP 797 "Pharmaceutical Compounding – sterile preparations" to ensure that all USP 797 requirements are observed.

## E. Use-by Dating
Each dosage form is labeled with a BUD/expiration date appropriate to the formulation obtained from:
a. Current literature.
b. Independent stability assay.

## F. Packaging
a. Compounded preparations are packaged in containers meeting USP standards.
b. Container used depends on the physical and chemical properties of the compounded preparation.

## G. Dispensing
There must be a specific practitioner-patient-pharmacist relationship in place to dispense to an individual patient or facility.

## H. Shipping
Medications are shipped overnight (usually via FedEx) in an appropriate container to ensure controlled temperatures and product integrity.

## I. Licensing
NECC has undertaken a rigorous licensure process thus giving us the ability to legally dispense prescription medication in all 50 states.

Confidential - Subject to Protective Order                                    NECC_MDL000002882

# EXHIBIT D



# ANALYTICAL RESEARCH LABORATORIES

840 RESEARCH PARKWAY, SUITE 546
OKLAHOMA CITY, OK 73104
PHONE (405) 271-1144
FAX (405) 271-1174

# Certificate Of Analysis

CLIENT:   New England Compounding Center-MA

ARL #:   176896-01
LOT #:   05212012@68
DESCRIPTION:   Methylprednisolone AC (PF) 80 mg/mL Injection
DATE RECEIVED:   05/22/2012
STORAGE:   20°C to 25°C (68°F to 77°F)
CONTAINER:   Two 5 mL amber vials

| Analyte / Specifications | Expected Amount | Units | Results | % Of EXP. | Test Method | Date Tested |
|---|---|---|---|---|---|---|
| Methylprednisolone Acetate Specifications = 90% - 110% | 80 | mg/mL | 83.604 | 104.5% | HPLC | 5/23/2012 |

_____      05/24/2012
alex tang - Laboratory Supervisor                     Date Reported          *ARL Form QUF-078-V4 03/05/2010*

*Results reported above relate only to the sample that was tested.*
Page 1 of 2

Confidential - Subject to Protective Order



# ANALYTICAL RESEARCH LABORATORIES

840 RESEARCH PARKWAY, SUITE 546
OKLAHOMA CITY, OK 73104
PHONE (405) 271-1144
FAX (405) 271-1174

# Microbiology Report

CLIENT:   New England Compounding Center-MA

ARL #:   176896-01
LOT #:   05212012@68
DESCRIPTION:   Methylprednisolone AC (PF) 80 mg/mL Injection
DATE RECEIVED:   05/22/2012
STORAGE:   20°C to 25°C (68°F to 77°F)
CONTAINER:   Two 5 mL amber vials

| ANALYSIS | Limits | Results | Test Method | Date Tested |
|---|---|---|---|---|
| Sterility | Sterile / Not Sterile | Sterile | USP 71 | 05/22/2012 |
| Endotoxin | 6.25 EU/mg | <0.05 EU/mg | USP 85 | 05/29/2012 |

_____     06/05/2012

Amar Arafat - Microbiologist                Date Reported

*Sterility - 14 day sterility report. In accordance with the USP guidelines, the samples will be incubated for 14 days.*

*Results reported above relate only to the sample that was tested.*

Page 1 of 2                               *ARL Form QUF-078-V4 03/05/2010*

Confidential - Subject to Protective Order



# ANALYTICAL RESEARCH LABORATORIES

840 RESEARCH PARKWAY, SUITE 546
OKLAHOMA CITY, OK 73104
PHONE (405) 271-1144
FAX (405) 271-1174

# Microbiology Report

CLIENT:   New England Compounding Center-MA

ARL #:   176896-01
LOT #:   05212012@68
DESCRIPTION:   Methylprednisolone AC (PF) 80 mg/mL Injection
DATE RECEIVED:   05/22/2012
STORAGE:   20°C to 25°C (68°F to 77°F)
CONTAINER:   Two 5 mL amber vials

| ANALYSIS | Limits | Results | Test Method | Date Tested |
|---|---|---|---|---|
| Sterility (*Preliminary*) | Sterile / Not Sterile | Sterile | USP 71 | 05/22/2012 |
| Endotoxin | 6.25 EU/mg | <0.05 EU/mg | USP 85 | 05/23/2012 |

*Sterility - This preliminary report was issued after approximately 72 hours of incubation. In accordance with the USP guidelines, the samples will be incubated for 14 days; if there is any change in the sample a supplemental report will be issued.*

*Fungal - This preliminary report was issued after 4-5 days of incubation. In accordance with the USP guidelines, the samples will be incubated for 14 days; if there is any change in the sample a supplemental report will be issued.*

*Endotoxin - To calculate the endotoxin limit use the following formulae: EL = K/M where K = tolerance limit (EU/kg) and M = Maximum dose/kg/hour or Maximum dose/kg*
*Parenteral: K is 5 EU/kg for any route of administration /Intrathecal: K is 0.2 EU/kg body weight)*
*Radiopharmaceutical parenteral: K is 175/V or Intrathecal radiopharmaceuticals: K is 14/V, where V is the maximum recommended dose in mL.*
*Dermal Application: K/M, where K = 5 EU/kg and M is the (maximum dose/m2/hour × 1.80 m2)/70 Kg.*

_____          05/25/2012
Amar Arafat - Microbiologist          Date Reported          *ARL Form QUF-078-V4 03/05/2010*

*Results reported above relate only to the sample that was tested.*
Page 2 of 2

NECC_MDL000005164



# ANALYTICAL RESEARCH LABORATORIES

840 RESEARCH PARKWAY, SUITE 546
OKLAHOMA CITY, OK 73104
PHONE (405) 271-1144
FAX (405) 271-1174

# **Certificate Of Analysis**

CLIENT:   New England Compounding Center-MA

ARL #:        180509-01
LOT #:        06292012@26
DESCRIPTION:   Methylprednisolone AC (PF) 80 mg/mL Injection
DATE RECEIVED:   07/03/2012
STORAGE:        20°C to 25°C (68°F to 77°F)
CONTAINER:        Two 5 mL amber vials

| Analyte / Specifications | Expected Amount | Units | Results | % Of EXP. | Test Method | Date Tested |
|---|---|---|---|---|---|---|
| Methylprednisolone Acetate Specifications = 90% - 110% | 80 | mg/mL | 81.451 | 101.8% | HPLC | 7/5/2012 |

_____                    07/05/2012                    *ARL Form QUF-078-V4 03/05/2010*
Alex Tang - Laboratory Supervisor            Date Reported

*Results reported above relate only to the sample that was tested.*
Page 1 of 2

Confidential - Subject to Protective Order

NECC_MDL000005170



# ANALYTICAL RESEARCH LABORATORIES

840 RESEARCH PARKWAY, SUITE 546
OKLAHOMA CITY, OK 73104
PHONE (405) 271-1144
FAX (405) 271-1174

# **Microbiology Report**

CLIENT:   New England Compounding Center-MA

ARL #:   180509-01
LOT #:   06292012@26
DESCRIPTION:   Methylprednisolone AC (PF) 80 mg/mL Injection
DATE RECEIVED:   07/03/2012
STORAGE:   20°C to 25°C (68°F to 77°F)
CONTAINER:   Two 5 mL amber vials

| ANALYSIS | Limits | Results | Test Method | Date Tested |
|---|---|---|---|---|
| Sterility | Sterile / Not Sterile | Sterile | USP 71 | 07/03/2012 |
| Endotoxin | 6.25 EU/mg | <0.05 EU/mg | USP 85 | 07/06/2012 |

Sample properties cause turbidity in growth media. Per USP 71; the sample will be inoculated into new growth media after 14 days of incubation and incubated for 4 additional days.


_____          07/17/2012

Amar Arafat - Microbiologist          Date Reported

*Sterility - 14 day sterility report. In accordance with the USP guidelines, the samples will be incubated for 14 days.*

*Results reported above relate only to the sample that was tested.*

Page 1 of 1                                          *ARL Form QUF-078-V4 03/05/2010*

Confidential - Subject to Protective Order                    NECC_MDL000005171



# ANALYTICAL RESEARCH LABORATORIES

840 RESEARCH PARKWAY, SUITE 546
OKLAHOMA CITY, OK 73104
PHONE (405) 271-1144
FAX (405) 271-1174

# Microbiology Report

CLIENT:   New England Compounding Center-MA

ARL #:   180509-01
LOT #:   06292012@26
DESCRIPTION:   Methylprednisolone AC (PF) 80 mg/mL Injection
DATE RECEIVED:   07/03/2012
STORAGE:   20°C to 25°C (68°F to 77°F)
CONTAINER:   Two 5 mL amber vials

| ANALYSIS | Limits | Results | Test Method | Date Tested |
|---|---|---|---|---|
| Sterility (*Preliminary*) | Sterile / Not Sterile | Sterile | USP 71 | 07/03/2012 |
| Endotoxin | 6.25 EU/mg | <0.05 EU/mg | USP 85 | 07/06/2012 |

*Sterility - This preliminary report was issued after approximately 72 hours of incubation. In accordance with the USP guidelines, the samples will be incubated for 14 days; if there is any change in the sample a supplemental report will be issued.*

*Fungal - This preliminary report was issued after 4-5 days of incubation. In accordance with the USP guidelines, the samples will be incubated for 14 days; if there is any change in the sample a supplemental report will be issued.*

*Endotoxin - To calculate the endotoxin limit use the following formulae: EL = K/M where K = tolerance limit (EU/kg) and M = Maximum dose/kg/hour or Maximum dose/kg*
*Parenteral: K is 5 EU/kg for any route of administration /Intrathecal; K is 0.2 EU/kg body weight)*
*Radiopharmaceutical parenteral: K is 175/V or Intrathecal radiopharmaceuticals; K is 14/V, where V is the maximum recommended dose in mL.*
*Dermal Application: K/M, where K = 5 EU/kg and M is the (maximum dose/m2/hour × 1.80 m2)/70 Kg.*

Amar Arafat - Microbiologist

07/06/2012

Date Reported

*ARL Form QUF-078-V4  03/05/2010*

*Results reported above relate only to the sample that was tested.*
Page 2 of 2

Confidential - Subject to Protective Order

NECC_MDL000005172



# ANALYTICAL RESEARCH LABORATORIES

840 RESEARCH PARKWAY, SUITE 546
OKLAHOMA CITY, OK 73104
PHONE (405) 271-1144
FAX (405) 271-1174

# Certificate Of Analysis

CLIENT:     New England Compounding Center
            697 Waverly Street
            Framingham, MA 01702

ARL #:        184460-01
LOT #:        08102012@51
DESCRIPTION:  Methylprednisolone AC (PF) 80 mg/mL Injection
DATE RECEIVED: 08/14/2012
STORAGE:      20°C to 25°C (68°F to 77°F)
CONTAINER:    Two 5 mL clear vials

| Analyte / Specifications | Expected Amount | Units | Results | % Of EXP. | Test Method | Date Tested |
|---|---|---|---|---|---|---|
| Methylprednisolone Acetate<br>Specifications = 90% - 110% | 80 | mg/mL | 81.676 | 102.1% | HPLC | 8/15/2012 |

_____                         08/15/2012

Alex Tang - Laboratory Supervisor                    Date              *ARL Form QUF-078-V4 03/05/2010*

*Results reported above relate only to the sample that was tested.*
Page 1 of 2

Confidential - Subject to Protective Order



## ANALYTICAL RESEARCH LABORATORIES

840 RESEARCH PARKWAY, SUITE 546,
OKLAHOMA CITY, OK 73104
PHONE (405) 271-1144
FAX (405) 271-1174

# Certificate Of Analysis

CLIENT:   New England Compounding Center
          697 Waverly Street
          Framingham, MA 01702

ARL #:         184460-01
LOT #:         08102012@51
DESCRIPTION:   Methylprednisolone AC (PF) 80 mg/mL Injection
DATE RECEIVED: 08/14/2012
STORAGE:       20°C to 25°C (68°F to 77°F)
CONTAINER:     Two 5 mL clear vials

| Analyte / Specifications | Expected Amount | Units | Results | % Of EXP. | Test Method | Date Tested |
|---|---|---|---|---|---|---|
| Methylprednisolone Acetate Specifications = 90% - 110% | 80 | mg/mL | 81.676 | 102.1% | HPLC | 8/15/2012 |

_____                      08/15/2012

Alex Tang - Laboratory Supervisor                Date              *ARL Form QUF-078-V4 03/05/2010*

*Results reported above relate only to the sample that was tested.*

Page 1 of 2

Confidential - Subject to Protective Order



# ANALYTICAL RESEARCH LABORATORIES

840 RESEARCH PARKWAY, SUITE 546
OKLAHOMA CITY, OK 73104
PHONE (405) 271-1144
FAX (405) 271-1174

# Microbiology Report

**CLIENT:**   New England Compounding Center

**ARL #:**   184460-01

**LOT #:**   08102012@51

**DESCRIPTION:**   Methylprednisolone AC (PF) 80 mg/mL Injection

**DATE RECEIVED:**   08/14/2012

**STORAGE:**   20°C to 25°C (68°F to 77°F)

**CONTAINER:**   Two 5 mL clear vials

| ANALYSIS | Limits | Results | Test Method | Date Tested |
|----------|--------|---------|-------------|-------------|
| Endotoxin | 6.25 EU/mg | <0.05 EU/mg | USP 85 | 08/16/2012 |

Sample properties cause turbidity in growth media. Per USP 71, the sample will be inoculated into new growth media after 14 days of incubation and incubated for 4 additional days.

_Tiffany O. Hyde_                                                                 08/17/2012

Tiffany Hyde - Microbiologist                                           Date Reported

*Sterility – This preliminary report was issued after approximately 72 hours of incubation. In accordance with the USP guidelines, the sample will be incubated for 14 days; if there is any change in the sample a supplemental report will be issued.*

*Fungal – This preliminary report was issued after approximately 4 days of incubation. In accordance with the USP guidelines, the sample will be incubated for 14 days; if there is any change in the sample a supplemental report will be issued.*

*Endotoxin - To calculate the endotoxin limit use the following formula: EL = K/M where K = tolerance limit (EU/kg) and M = Maximum dose/kg/hour or Maximum dose/kg*
*Parenteral: K is 5 EU/kg for any route of administration /Intrathecal: K is 0.2 EU/kg body weight)*
*Radiopharmaceutical parenteral: K is 175IV or Intrathecal radiopharmaceuticals: K is 14/V, where V is the maximum recommended dose in mL.*
*Dermal Application: K/M, where K = 5 EU/kg and M is the (maximum dose/m2/hour × 1.80 m2)/70 Kg.*

*Results reported above relate only to the sample that was tested.*

Page 1 of 1                                                                                  *ARL Form QUF-078-V5 08/20/2012*

Confidential - Subject to Protective Order                                    NECC_MDL000013154



# ANALYTICAL RESEARCH LABORATORIES

840 RESEARCH PARKWAY, SUITE 546
OKLAHOMA CITY, OK 73104
PHONE (405) 271-1144
FAX (405) 271-1174

# Microbiology Report

CLIENT:  New England Compounding Center
697 Waverly Street
Framingham, MA 01702

ARL #:  184460-01
LOT #:  08102012@51
DESCRIPTION:  Methylprednisolone AC (PF) 80 mg/mL Injection
DATE RECEIVED:  08/14/2012
STORAGE:  20°C to 25°C (68°F to 77°F)
CONTAINER:  Two 5 mL clear vials

| ANALYSIS | Limits | Results | Test Method | Date Tested |
|---|---|---|---|---|
| Sterility | Sterile / Not Sterile | No Growth at 14 Days | USP 71 | 08/14/2012 |

Sample properties cause turbidity in growth media. Per USP 71, the sample will be inoculated into new growth media after 14 days of incubation and incubated for 4 additional days.

*Tiffany O. Hyde*

08/28/2012

Tiffany Hyde - Microbiologist                                      Date Reported

*Sterility - 14 day sterility report. In accordance with the USP guidelines, the sample was incubated for 14 days.*
*Fungal – 14 day fungal report. In accordance with the USP guidelines, the sample was incubated for 14 days.*

*Results reported above relate only to the sample that was tested.*
Page 1 of 1                                             *ARL Form QUF-078-V5 08/20/2012*

Confidential - Subject to Protective Order

# EXHIBIT E

| | |
|---|---|
| From: | Barry Cadden </O=FIRST ORGANIZATION/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=BCADDEN> |
| Sent: | Wednesday, August 10, 2011 10:37 AM |
| To: | Glenn Chin <gchin@neccrx.com> |
| Subject: | |

What's the testing process for the large volume meds currently? I assumed that we have at least sterility testing for "all" lots of large volume injectable lots that we are dispensing but I am told that the lots for some drugs almost never coincide with the available test data. Is this true? You need to run like normal stock meds like beta repos = test every lot and just fill as you go based on the size vial + if needed or make as many lots as you like "internally" but only label vials with lot# of tested lots to cover our ass =ex.. Avastin. I was told that we are only testing rarely and dispensing many untested lots? Please clear this up + tell me what we are doing + will do. Bottom line is we can't be caught with our pants at our ankles....ever.

USAO00035783

| | |
|---|---|
| From: | Barry Cadden </O=FIRST ORGANIZATION/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=BCADDEN> |
| Sent: | Tuesday, May 22, 2012 1:50 PM |
| To: | Glenn Chin <gchin@neccrx.com> |
| Subject: | |

This situation is exactly why Scott must be swapped into a less dangerous position! We would be fucked if this was a cardio med!!!......

USAO00082077

| | |
|---|---|
| From: | Barry Cadden </O=FIRST ORGANIZATION/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=BCADDEN> |
| Sent: | Tuesday, August 7, 2012 9:16 AM |
| To: | Glenn Chin <gchin@neccrx.com> |
| Subject: | |

The "problem" CP order has my name as sign in for pump!....we need to get Scott out of that room or at least off the sign in by tomorrow. Have him be there , help, train...etc but someone else MUST sign in .....................I have no idea how I am going to explain this situation but it can't continue beyong today........see me later

thanks

USAO00083471

From: Barry Cadden
Sent: Tuesday, July 03, 2012 2:20 PM
To: Glenn Chin
Subject:

What's going on with the materials (mops..etc) for the Uniclean, cleaning people? How are they being handled?...I ask because we have another fungal bloom on June-28[th]-day of last cleaning. Are the pharmacists watching these idiots or sleeping? We need to keep an eye on them + make sure that the mops..etc are not contaminated. I am getting the film again so we can check it out......

USA200067868

EXHIBIT F

| | |
|---|---|
| **From:** | Glenn Chin </O=FIRST ORGANIZATION/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=GCHIN> |
| **Sent:** | Monday, December 19, 2011 11:36 AM |
| **To:** | Barry Cadden <bcadden@neccrx.com>; Cory Fletcher <cfletcher@neccrx.com> |
| **Subject:** | RE: MTX |

We have about 1.25KG of MTX left. It's the old Spectrum bottles. When I say old I mean OLD, it expired in 2007 according to their sticker. We make it for our injectables and we send it out for testing and it comes out pretty close. We generally under QS the lot's we make. I would probably guess that it's at about 90 to 95% potent.

---

**From:** Barry Cadden
**Sent:** Monday, December 19, 2011 9:32 AM
**To:** Glenn Chin; Gene Svirskiy; Cory Fletcher
**Subject:** MTX

How much MTX powder to we have in house? I am hearing that there is another backorder of commercial inj. MTX + can't find a chemical co. who has any powder in stock

USAO00049156

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN RE NEW ENGLAND COMPOUNDING
PHARMACY, INC. PRODUCTS
LIABILITY LITIGATION

MDL No. 2419
Dkt. No: 1:13-md-2419-RWZ

THIS DOCUMENT RELATES TO:

Suits Naming the Premier Defendants

---

### THE PREMIER DEFENDANTS' FIRST INTERROGATORIES, REQUESTS FOR PRODUCTION OF DOCUMENTS, AND REQUESTS FOR ADMISSION PROPOUNDED TO LISA CONIGLIARO CADDEN.

Come the Defendants, Premier Orthopaedic and Sports Medicine Associates of Southern New Jersey, LLC, trading as Premier Orthopaedic Associates; Premier Orthopaedic Associates Surgical Center, LLC; Kimberly Yvette Smith, M.D., a/k/a Kimberly Yvette Smith-Martin, M.D.; Thomas Dwyer, M.D.; Richard C. DiVerniero, M.D.; and Richard Strauss, M.D. (collectively, "Premier Defendants") , pursuant to Rules 26, 33, and 34 of the Federal Rules of Civil Procedure and the Local Rules for the District of Massachusetts, and propound the following Interrogatories, Requests for Production of Documents, and Requests for Admission to Lisa Conigliaro Cadden.

Each of the following Interrogatories shall be answered under oath, in writing, separately, to the fullest possible detail, and in accordance with the definitions and instructions set forth below. The answers shall be signed by the person making them, and a copy of the answers, together with objections, if any, shall be served within thirty (30) days after the service date of these interrogatories.

You are under a duty to seasonably supplement your response with respect to any Interrogatory directly addressed to the identity and location of persons having knowledge of discoverable matters. You are under a duty to amend a prior response if you obtain information on the basis of which you know that the response was incorrect when made, or that the response, though correctly made, is no longer true, and the circumstances are such that a failure to amend the response is, in substance, a knowing concealment.

1

## DEFINITIONS

1. As used in this document, the terms "person(s)" and "individual(s)" mean any natural individual in any capacity whatsoever or any entity or organization, including divisions, departments, and other units therein, and shall include, but not be limited to, a public or private corporation, partnership, joint venture, voluntary or unincorporated association, organization, proprietorship, trust, estate, governmental agency, commission, bureau, or department.

2. As used in this document, the term "document" means any medium upon which intelligence or information can be recorded or retrieved, and includes without limitation, the original and each copy, regardless of origin and location, of any book, pamphlet, periodical, letter, memorandum (including any memorandum or report of a meeting or conversation), invoice, bill, order form, receipt, financial statement, accounting entry, diary, calendar, telex, telegram, cable, report, record, contract, agreement, study, handwritten note, draft, working paper, chart, paper, print, laboratory record, drawing or sketch, graph, index, lists, tape, photograph, microfilm, data sheet or data processing card, or any other written, recorded, transcribed, punched, taped, filmed, or graphic matter, however produced or reproduced, which is in your possession, custody, or control, or which <u>was</u>, but is no longer, in your possession, custody, or control.

3. As used in this document, the terms "identification," "identify," or "identity," when used in reference to a natural individual, require you to state his or her full name and residential and business address. Use of the term "document" in connection with the Interrogatories requires you to state the number of pages and the nature of the document, its title, its date, the name or names of its authors, and recipients, and its present location and custodian.

4. "You and "your" refers to Lisa Conigliaro Cadden and each of her present and former agents, representatives, and employees, attorneys and accountants, and each person acting or purporting to act on her behalf.

5. "Communication" means any oral or written utterance, notification, or statement of any nature whatsoever, by and to whomsoever made, including, but not limited to, correspondence, conversation, dialogue, discussions, interviews, consultants, and any other understanding between or among two or more persons.

## INSTRUCTIONS

1. With respect to each Interrogatory, in addition to answering the question, you are to identify all documents that support, refer to, or evidence the subject matter of each Interrogatory and your answer thereto.

   If any or all identified documents are no longer in your possession, custody, or control because of destruction, loss, or any other reason, then you must do the following with respect to each and every document:

   A. Describe the nature of the document;

   B. State the date of the document;

   C. Identify the persons who sent and received the original and the copy of the document;

   D. State in as much detail as possible the contents of the documents; and

   E. State the manner and date of disposition of the document.

   If you contend that you are entitled to withhold from production any or all documents identified herein on the basis of attorney-client privilege, the work-product doctrine, or any other ground, then do the following with respect to each and every document:

   A. Describe the nature of the document;

   B. State the date of the document;

   C. Identify the persons who sent and received the original and a copy of the document;

   D. State the subject matter of the document; and

   E. State the basis upon which you contend you are entitled to withhold the document from production.

2. All documents produced should be organized and labeled to correspond to the specific Request in response to which they are being made available or should be produced as they are kept in the usual course of business.

3. The terms "and," "or," and "and/or" should be construed either disjunctively or conjunctively so as to bring within the scope of these Interrogatories and Requests any information that might otherwise be construed as outside their scope.

4. The term "any" should be construed to include the word "all," and "all" should be construed to include "any."

5.  The present tense should be construed to include the past tense, and the past tense should be construed to include the present tense.

6.  The singular should be construed to include the plural, and the plural should be construed to include the singular.

7.  The terms "he" and "his" should be construed to include the words "she" and "her" or "hers," respectively and vice versa.

8.  "Relating to," when referring to a document shall mean mentioning, describing, connected to or with, or discussing the stated subject matter.

**INTERROGATORIES**

1. Describe in detail your role at NECC and Ameridose, including job title, job description, and a description of your daily duties and activities in 2011 and 2012.

   **ANSWER:**

2. Describe in detail the steps NECC took to compound, process, stopper, seal, package, and ship methylprednisolone acetate ("MPA") in 2011 and 2012, including but not limited to:

   a) The names of the individuals performing each step;

   b) The job titles for the individuals performing each step;

   c) The specific cleanroom or location in NECC's facility where each step took place;

   d) The tools, equipment, or machinery used for each step;

   e) Any changes to NECC's methods or procedures for compounding MPA, or the location where compounding MPA took place, that occurred in 2011 or 2012.

   **ANSWER:**

3. Identify the total amount of MPA that NECC, and separately Ameriose, produced in each quarter of 2010, 2011, and 2012.

   **ANSWER:**

4. Identify the types of vials and closures NECC used for MPA lots numbered 05212012@68, 06292012@26, and 08102012@51 (collectively "Contaminated Lots"), including whether the vials and enclosures were prewashed or presterilized, and identify their manufacturer(s).

   **ANSWER:**

5. Identify any and all complaints that NECC and Ameridose received related to the sterility or safety of their products, including but not limited to complaints by customers, current and former employees, and state and federal government agencies.

   **ANSWER:**

6. Identify any customers of NECC and Ameridose who performed site visits prior to placing orders with either company.

   **ANSWER:**

7. Describe any policies, procedures, or protocols relating to or regarding customer site visits to the NECC facility, including the areas you allowed customers to inspect.

   **ANSWER:**

8. Identify any customers who asked for information about prior recalls of NECC and Ameridose products prior to placing orders with either company.

   **ANSWER:**

9. Identify and describe any information you gave customers about recalled NECC and Ameridose products in 2011 and 2012.

   **ANSWER:**

10. Identify any and all complaints NECC or Ameridose received related to their compliance with state or federal laws and regulations, including but not limited to complaints by customers, current and former employees, and state and federal government agencies.

    **ANSWER:**

11. Identify and describe any way in which NECC's cleanrooms were modified, altered, or expanded by NECC or Ameridose.

    **ANSWER:**

12. Identify any policies, procedures, or guidelines in place at NECC in 2012 that encouraged employees to disclose mistakes in the compounding process, even if the mistakes necessitated destruction of product or halting production.

    **ANSWER:**

13. Describe all disciplinary or enforcement action taken against NECC or Ameridose by any state or federal government agency.

    **ANSWER:**

## VERIFICATION

STATE OF NEW JERSEY )
)
County of _____ )

    I, _____, after being duly sworn, hereby make oath that the foregoing answers to Interrogatories are true to the best of my knowledge, information, and belief.

_____

Sworn and subscribed before me this _____ day of _____, 2015.

_____
**Notary Public**

My commission expires on: _____.

## REQUESTS FOR PRODUCTION

1. Produce all correspondence between you and any of the Premier Defendants, their employees, agents, or representatives.

   **RESPONSE:**

2. Produce all correspondence and documents referring or related to the Premier Defendants' purchase of MPA from NECC in 2011 or 2012.

   **RESPONSE:**

3. Produce all documents produced by the government to you during any civil, criminal, or administrative proceedings related to NECC's contaminated MPA.

   **RESPONSE:**

4. Produce all policies, procedures, guidelines, instructions and training documents referring or relating to the compounding of MPA at the NECC facility.

   **RESPONSE:**

5. Produce all documents referring or relating to NECC or Ameridose sending samples of insufficient size or volume to comply with USP 71 to ARL or any other testing laboratory.

   **RESPONSE:**

6. Produce all documents referring or relating to any sterility, potency, endotoxin, or fungal testing that you received from ARL or any other laboratory related to MPA compounded by NECC or Ameridose in 2011 and 2012.

   **RESPONSE:**

7. Produce all correspondence and documents referring or relating to fungal blooms or growth in or near NECC's cleanrooms.

   **RESPONSE:**

8. Produce all documents referring or relating to complaints or communications with Liberty Industries regarding the design, manufacture, or installation of the cleanrooms at the NECC facility.

   **RESPONSE:**

9. Produce all documents referring or relating to any complaints that NECC or Ameridose received related to the sterility or safety of their products, including but not limited to complaints by customers, current or former employees, or state or federal government agencies.

**RESPONSE:**

10. Produce all documents referring or relating to any complaints NECC or Ameridose received related to their compliance with state or federal laws or regulations, including but not limited to complaints by customers, current or former employees, or state or federal government agencies.

**RESPONSE:**

11. Produce all correspondence and documents referring or relating to NECC's response to the meningitis outbreak, including but not limited to, steps NECC took to prepare for any inspections of its facility.

**RESPONSE:**

12. Produce all training and instructional material for sales staff at NECC or MSM.

**RESPONSE:**

13. Produce copies of any and all New Jersey Pharmacy Licenses issued to NECC and/or Lisa Conigliaro Cadden, and all documents or communications between NECC and/or Lisa Conigliaro Cadden and the New Jersey Board of Pharmacy, including those referring or related to the procurement or renewal of said Licenses.

**RESPONSE:**

## REQUESTS FOR ADMISION

1. Admit that, had any of the Premier Defendants asked for a copy of NECC's license in 2011, you would have provided a valid and up-to-date New Jersey pharmacy license.

   **ANSWER:**

2. Admit that NECC represented to its customers, including the Premier Defendants, that it met or exceeded USP 797 standards.

   **ANSWER:**

3. Admit that NECC represented to its customers, including the Premier Defendants, that its products, including MPA, were safe and sterile.

   **ANSWER:**

4. Admit that the Massachusetts Board of Pharmacy ("Mass. BoP") inspected NECC on or about May 24, 2011.

   **ANSWER:**

5. Admit that as a result of its inspection on or about May 24, 2011, the Mass. BoP issued an inspection report documenting its findings.

   **ANSWER:**

6. Admit that NECC failed to submit a copy of the Mass. BoP's May 24, 2011 inspection report to the New Jersey Board of Pharmacy.

   **ANSWER:**

7. Admit that NECC owed a duty to its customers to ensure that its MPA was sterile prior to distributing it.

   **ANSWER**

Respectfully Submitted,

**BLUMBERG & WOLK, LLC**

/s/ Christopher Wolk
**Jay Blumberg**
**Christopher Wolk**
158 Delaware Street
P.O. Box 68
Woodbury, NJ 08096
(856) 848-7472

*Attorneys for the Premier Defendants*

11

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of May, 2015, a true and accurate copy of the foregoing was served on Lisa Conigliaro Cadden by U.S. mail and on the other parties below electronically via the Court's CM/ECF system:

O. Mark Zamora
The Orlando Firm, P.C.
P.O. Box 660216
Atlanta, GA 30366

*Attorney for the PSC*

Matthew P. Moriarty
Thomas W. Coffey
Richard A. Dean
Tucker Ellis, LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113

Scott H. Kremer
Tucker, Heifetz & Saltzman
Three School Street
Boston, MA 02108

Scott J. Tucker
Paul Saltzman
Matthew E. Mantalos
Tucker, Saltzman & Dyer, LLP
50 Congress Street
Boston, MA 02109

*Attorneys for Defendant Ameridose, LLC.*

Daniel M. Rabinovitz
Brady J. Hermann
Nicki Samson
Michaels, Ward & Rabinovitz
One Beacon Street, 2nd Floor
Boston, MA 02108

*Attorneys for Defendant Medical Sales Management, Inc.*

John P. Ryan
Robert H. Gaynor
William J. Dailey, Jr.
Sloane and Walsh, LLP
Three Center Plaza
Boston, MA 02108

*Attorneys for Gregory Conigliaro, Registered Agent for Service of Process for Medical Sales Management SW, Inc.*

Joseph P. Thomas
Ulmer & Berne, LLP
600 Vice Street, Suite 2800
Cincinnati, OH 45202

Joshua A. Klarfeld
Ulmer & Berne, LLP
1660 W. 2nd Street, Suite 1100
Cleveland, OH 44113

*Attorneys for Defendant GDC Properties
Management, LLC*

Kenneth B. Walton
Kristen R. Ragosta
Donovan Hatem, LLP
Two Seaport Lane, 8th Floor
Boston, MA 02210

*Attorney for Defendant ARL Biopharma*

John P. Ryan
Robert H. Gaynor
William J. Dailey, Jr.
Sloane and Walsh, LLP
Three Center Plaza
Boston, MA 02108

*Attorneys for Defendants Barry J. Cadden,
Lisa Conigliaro Cadden, Gregory
Conigliaro, Carla Conigliaro, Douglas
Conigliaro and Glenn A. Chin*

Bruce A. Singal
Michelle R. Peirce
Callan G. Stein
Donague, Barrett & Singal, P.C.
One Beacon Street, Suite 1320
Boston, MA 02108

*Attorneys for Defendants Barry J. Cadden
and Lisa Conigliaro Cadden*

Damian W. Wilmot
James Rehnquist
Abigail K. Hemani
Roberto M. Braceras
Goodwin Proctor LLP
Exchange Place
53 State Street
Boston, MA 02109

*Attorneys for Unifirst Corporation a/d/b/a
Uniclean Cleanroom Services*

Parks Chastain
Jason Lee
Brewer, Krause, Brooks, Chastain &
Burrow, PLLC
611 Commerce St., Suite 2600
P.O. Box 23890
Nashville, TN 37202
615-256-8787
Fax: 615-256-8985

*Attorneys for Specialty Surgery Center,
Crossville, PLLC*

13

Frederick H. Fern
Judi Abbott Curry
Jessica Saunders Eichel
Alan M. Winchester
Harris Beach PLLC
100 Wall Street
23rd Floor
New York, NY 10005

Geoffrey M. Coan
Daniel E. Tranen
Hinshaw & Culbertson LLP
28 State Street
24th Floor
Boston, MA 02109

Michael R. Gottfried
Thomas B.K. Ringe, III
Jennifer Mikels
Duane Morris LLP
100 High Street
Suite 2400
Boston, MA 02110-1724

*Attorneys for NECC*

Marcy H. Greer
Alexander Dubose Jefferson & Townsent
515 Congress Ave.
Quite 2350
Austin, TX 78701

Yvonne K. Puig
Eric Hoffman
Fulbright & Jaworski L.L.P.
98 San Jacinto Blvd.
Suite 1100
Austin, TX 78701

Sarah P. Kelly
Nutter, McClennen & Fish, LLP
Seaport West
155 Seaport Boulevard
Boston, MA 02210-2604

*Attorneys for the Saint Thomas Entities*

/s/ Christopher Wolk
**Christopher Wolk**

14