**Blumberg & Wolk, LLC**
158 Delaware Street
Woodbury, New Jersey 08096
(856) 848-7472
Attorneys for Defendants, Premier Orthopaedic and Sports
Medicine Associates of Southern New Jersey, LLC, trading as
Premier Orthopaedic Associates, Premier Orthopaedic Associates
Surgical Center, LLC, and Kimberley Yvette Smith, M.D., a/k/a
Kimberley Yvette Smith-Martin, M.D., Thomas Dwyer, M.D., Richard
C. DiVerniero, M.D., John Catalano, M.D., Jeffrey Strauss, M.D.

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br><br>All New Jersey Cases | Docket No. 1:13-md-2419-RWZ<br><br>MDL No. 02419 |

PREMIER ORTHOPAEDIC AND SPORTS MEDICINE ASSOCIATES OF SOURTHERN NEW JERSEY, LLC, ET. AL'S RESPONSE TO THE VARIOUS DEFENDANTS' MOTION FOR PROTECTIVE ORDER[1823; 1824; 1826; 1854]

**Preliminary Statement**

This motion comes before the Court by way of a motion for Protective Order, sought by Counsel for Barry Cadden, Glen Chin and other "Insider" defendants most of whom are facing Criminal Liability and investigation.  Those defendants have filed a motion for the entry of protective order prohibiting the depositions of their clients.  Premier Orthopaedic and Sports

1

Medicine Associates of Southern New Jersey, LLC, trading as Premier Orthopaedic Associates, Premier Orthopaedic Associates Surgical Center, LLC, and Kimberley Yvette Smith, M.D., a/k/a Kimberley Yvette Smith-Martin, M.D., Thomas Dwyer, M.D., Richard C. DiVerniero, M.D., John Catalano, M.D., Jeffrey Strauss, M.D. (Hereinafter "The Premier Defendants" or "Premier") now oppose these efforts.

As the Court is well aware, the Premier Defendants make-up a clinic of doctors and other healthcare providers who purchased vials of preservative free Methelprednisolone Acetate (MPA) from New England Compounding Pharmacy.  These vials of medication were contaminated with fungus through no fault of Premier or its agents.  The PSC has aggressively pursued the liability of many different Hospitals and Clinics across the country – Premier being among them.  In order to reach the truth about what happened to cause the fungal contamination it is utterly important to present evidence to the jury about the negligence and wrongdoing of the NECC insiders and affiliated defendants.  These contributory fault defenses are essential to the proper representation of Premier.

In the spirit of pursuing these defenses, Premier has noticed the depositions of Glenn Chin and Barry Cadden.  Too, the St. Thomas and Tennessee Clinic Defendants have also noticed

the depositions of other NECC insiders (Hereinafter, "NECC Defendants"). In response to these notices, the NECC Defendants objected and moved for protective order.  Premier now responds and is asking this Honorable Court to deny the motions for protective order based on the authority below.

**LEGAL ARGUMENT**

   **I.   THE NECC DEFENDANTS (INSIDERS) CANNOT GAIN A PROTECTIVE ORDER BY MAKING A BLANKET INVOCATION OF FIFTH AMENDMENT WITHOUT KNOWLEDGE OF THE QUESTIONS BEING ASKED AT DEPOSITION.**

The Fifth Amendment right against self-incrimination protects citizens from being compelled to admit criminal acts. The NECC Defendants clearly intend to invoke the privilege against self-incrimination on any issue relating to the criminal matter. What's more, the NECC Defendants intend to invoke their Fifth Amendment right as to each and every question asked.

While it is undisputed that the Fifth Amendment privilege may be asserted in a civil action, the NECC Defendants cannot assert a blank invocation of that privilege without the questions being propounded and with no knowledge of their content.  In *National Life Ins. Co. v. Hartford Acc. And Indem. Co.*, 615 F.2d 595, 598 (3d Cir. 1980), the Third Circuit held that "The [F]ifth [A]mendment shields against compelled self-incrimination, not

legitimate inquiry, in the truth-seeking process. The task of discerning the self-incriminating from the non-incriminating falls upon the witness asserting the privilege in the first instance . . . The court, however, cannot effectively determine whether 'a responsive answer to a question or an explanation of why it cannot be answered might be (incriminating)' except in the context of a propounded question." *Id*. (citing *Hoffman v. United States*, 341 U.S. 479, 487, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951)).

In *Hoffman*, the Supreme Court made clear that the Fifth Amendment privilege may not be exercised solely upon the subjective determination of the witness invoking it. The protection, the Court elaborated, "must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer. The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself – [the witnesses] say-so does not of itself establish the hazard of incrimination." *Id*. at 486-487. The Third Circuit, in *National Life Ins. Co.*, held that "a witness cannot relieve himself of the duty to answer questions that may be put to him by a mere blanket invocation of the privilege." *National Life Ins. Co.*, *supra*, at 598.

Further, the Third Circuit confronted this issue in *In re Commonwealth Financial Corp*., 288 F.Supp.786 (E.D.Pa. 1968), aff'd, 408 F.2d 640 (3d Cir. 1969), where it affirmed per curium

4

a district court's holding that a witness in a bankruptcy proceeding could not assert a blanket Fifth Amendment privilege prior to hearing the questions.  In that case, the president of a debtor corporation filed a motion for a protective order to prevent the bankruptcy trustees from examining him in a Chapter X proceeding.  The president argued that he had a Fifth Amendment right to refuse to testify because his statements to the trustees might be used by the Securities Exchange Commission in its independent investigation of the debtor's affairs and potentially form the basis of a criminal prosecution.  The district court denied the protective order, holding that "(t)he fact that a contemplated area of inquiry may be potentially incriminatory does not authorize or indeed require a blanket invocation of the privilege against self-incrimination. . . ." *Id*. at 789-90.  The court reasoned that the president's right to assert the privilege to objectionable questions would protect his Fifth Amendment rights while allowing for the possibility of responses to non-objectionable questions.

Indeed, other jurisdictions have also held that the privilege can be invoked to refuse to testify in civil cases where the questions have not been put forth.  See *In re Turner*, 309 F.2d 69 (2d Cir. 1962) ("During investigative proceedings that may or may not lead to indictment and trial, a prospective defendant whose testimony is sought is still only a witness and . . . like any

5

other witness he must obey the process of the authority summoning him to appear and claim the constitutional privilege as particular questions are asked"); *United States v. Roundtree*, 420 F.2d 845, 852 (5th Cir. 1969) (even if the danger of self-incrimination is great, Roundtree's remedy is not to voice a blanket refusal to produce his records or testify. Instead, he must present himself with his records for questioning, and as to each question and each record elect to raise or not to raise the defense); *United States v. Carroll*, 567 F.2d 955, 957 (10th Cir. 1977); *United States v. Awerkamp*, 497 F.2d 832, 835-36 (7th Cir. 1976); *Capitol Products Co. v. Hernon*, 457 F.2d 541, 542-43 (8th Cir. 1972); *United States v. Harmon*, 339 F.2d 354, 359 (6th Cir. 1964).  As such, it is clear that the NECC Defendants' motion for a protective order must be denied as it would be based on a blanket invocation of the Fifth Amendment privilege against self-incrimination without knowledge of the content of deposition questions.

**II.  THE FEDERAL RULES OF CIVIL PROCEDURE ENTITLE THE PREMIER DEFENDANTS TO CONDUCT THE DEPOSITIONS THE NECC DEFENDANTS WHERE THOSE DEFENDANTS POSSESS INFORMATION RELEVANT TO THE LITIGATION**

There is no dispute that the Premier Defendants are entitled to conduct the depositions of the NECC Defendants.  Under Federal Rule of Civil Procedure 26(b)(1):

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery

> regarding any non-privileged matter that is relevant to any party's claim or defense -- including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.

See also, Fed. R. Civ. P. 30 ("A party may, by oral questions, depose any person, including a party ..."). The NECC Defendants do not and cannot dispute that they possess information relevant to this litigation. Thus, the Premier Defendants have the right utilize the discovery method of their choice to procure information relevant to this litigation. Most importantly, this is a mass tort situation where Premier is faced with over fifty cases filed by plaintiff alleging malpractice. Moreover, the malpractice allegations stem entirely from a product that was produced, sold and represented to be clean by those very individuals who are claiming a blanket invocation of the 5th Amendment.

In order to protect and defend the Premier Defendants it is imperative if not required to argue that the NECC defendants were negligent. This requires eliciting testimony from NECC witnesses (not just relying on paper records) in nearly all 50 cases that may go to trial. The most effective way to elicit this testimony is to play back a videotaped deposition before the Jury.

The NECC Defendants have argued in favor a protective order citing their offer to answer written questions pursuant to Fed. R.

7

Civ. P. 31 (Deposition by Written Questions).  The Third Circuit, in *National Life Ins. Co.*, *supra*, disposed of this argument as well:

> Weiss argues that he properly asserted his privilege by leaving the deposition because he offered to read the questions in advance and then decide which questions to answer. This procedure is unsupported by any rule of civil procedure or any case law. To the contrary, the Federal Rules of Civil Procedure specifically give a party the right to question a witness by oral deposition. The Rule gives the party, not the witness, the option of conducting a deposition by written questions.  We see no policy justification for allowing the witness the option of reviewing written questions prior to the deposition.

*Id*. at 599-600.  Indeed, there are strong reasons why a party will select to proceed by oral deposition rather than alternate means, most significantly the spontaneity of the responses.

Finally, the NECC Defendants have argued that a defendant does not have a right to bring a codefendant before the jury to solely to have him claim the Fifth Amendment, relying on *United States v. Johnson*, 488 F.2d 1206, 1211 (1st Cir. 1973).  This argument fails in many aspects.  First, there are several topics within the entire realm of potential queries that the NECC Defendants could testify to without needing to invoke the self-incrimination privilege.  These questions could pertain to:

   1. Identification of the witness such as, name, education and work history, experience in pharmaceutical industry.

2. Organizational structure of NECC, chains of command, and daily operations.

3. Pharmacy licensing and validity of licensures.

4. The identity of where raw materials for medications were purchased, with whom they contracted for services such as cleaning and operations management.

5. The identity of sales personnel, their roles and responsibilities.

6. The identity of contractors, vendors and clients

7. The identity of other clinics that actually toured and inspected the facility before deciding to purchase from NECC.

The above outline only some of the areas of potential questioning. If the Court desires additional specific questions can be supplied at the time of oral arguments. The NECC Defendants cannot unilaterally foreclose the Premier Defendants from asking these questions through its chosen form of deposition due to the potential of some questions possibly raising self-incrimination issues. Second, even assuming *arguendo* that they could, this court cannot make a determination as to which questions NECC Defendants can justifiably invoke the privilege without knowledge of the questions themselves. See Point One, *supra*.

Finally, reliance on *United States v. Johnson* is inapposite, as that case pertains to a co-defendant in a criminal case. In

that case, Johnson was tried and convicted for distributing cocaine in violation of 21 U.S.C. §841(a)(1). He appealed the district court's ruling that he could not interrogate a former codefendant at trial named Perry after it appeared Perry would invoke the Fifth Amendment privilege against self-incrimination. In the criminal context, the Court held that a witness may be refused the stand if he intends to claim the privilege as to essentially all questions. The Court stated that "[n]either side has the right to benefit from any inferences the jury may draw simply from the witness' assertion of the privilege either alone or in conjunction with questions that have been put to him." *Id*. at 1211. Unlike in *United States v. Johnson*, the matter at hand is a civil case, in which it is well-settled that adverse inferences may be drawn against a party who invokes the Fifth Amendment. *S.E.C. v. Graystone Nash, Inc.*, 25 F.3d 187, 191 (3d Cir. 1994) (discussing *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)). Additionally, the Court in *United States v. Johnson*, discussed the necessity of a court to review the claim of privilege:

> "Obviously, before excluding a witness, the court must first establish reliably that the witness will claim the privilege and the extent and validity of the claim. Here the court wisely held a *voir dire* at which Johnson's counsel was invited to question the proposed witness under oath and on the record."

*United States v. Johnson*, *supra*, at 1211. Thus, even in the case relied upon by the NECC Defendants, a co-defendant was able to

10

question the witness invoking the privilege under oath and on the record before the witness' testimony was excluded. This Court cannot deny the right of the Premier Defendants to depose the NECC Defendants who possess critical information pertaining to the civil matter at hand. Therefore, the Court must deny the motion for a protective order and must allow the depositions to proceed.

### III. THE FEDERAL RULES OF CIVIL PROCEDURE ENTITLE THE PREMIER DEFENDANTS TO CONDUCT VIDEOTAPED DEPOSITIONS OF NECC DEFENDANTS, AS THE NECC DEFENDANTS HAVE NOT SHOWN GOOD CAUSE OTHERWISE

The Premier Defendants do argue, as supported by the statutes and case law, that they are entitled to conduct videotaped depositions of the NECC Defendants and that the NECC Defendants have not shown good cause for a protective order.

The Federal Rules of Civil Procedure explicitly provide that depositions may be conducted by videotaping. FED. R. CIV. P. 30(b)(3). The current rule (FED. R. CIV. P. 30(b)(3)(A)) permits a deposition to be recorded by "audio, audiovisual, or stenographic means." Courts have long held that "the use of videotaped testimony should be encouraged and not impeded because it permits the jury to make credibility evaluations not available when a transcript is read by another." *Weiss v. Wayes*, 132 F.R.D. 152, 155 (M.D.Pa. 1990).

Unlike a transcript, a videotape addresses important credibility concerns, such as "demeanor and appearance of the witness." *Weiss, supra.* at 155. Words themselves may carry only a limited meaning, courts have also held that "facial expressions, voice inflection and intonation, gestures, 'body language' . . . may all express a message. . . ." *Riley v. Murdock,* 156 F.R.D. 130, 131 (E.D.N.C.1994); *accord, Alexander v. FBI,* 186 F.R.D. 123, 127 (D.D.C.1998). Additionally, the use of videotaped depositions most often occurs in the context of hearings or trials where the witness/deponent is unavailable to appear "live" in court.

In order to overcome the expressed preference for videotaped depositions, a party or witness may seek a protective order pursuant to FED. R. CIV. P. 26(c), which provides that a court may "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . . ." FED. R. CIV. P. 26(c). The Third Circuit has held that "absent exceptional circumstances, protective orders should not serve to interfere" with court proceedings. *In re Grand Jury*, 286 F.3d 153, 159 (3d Cir. 2002). A Court has the discretion to enter a protective order, but only upon a showing of good cause for which the movant bears the burden of persuasion. *Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1994). In *Pansy*, the Court held that "good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party to the party

12

seeking closure.  The injury must be shown with specificity." *Id*. at 786.  Therefore, good cause cannot be established upon some general or speculative alleged harm.

The only cause for a potential protective order mentioned in the NECC Defendants' submission is their blanket invocation of the Fifth Amendment right against self-incrimination without knowledge of the questions to be asked or the content therein.  This harm is, at best, incredibly speculative.  Moreover, this court cannot judge whether a responsive answer to a question or an explanation of why it cannot be answered might be incriminating except in the context of a propounded question.

The cases cited by the NECC Defendants are extraordinarily inapposite.  *Posr v. Roadarmel*, 466 F.Supp. 2d 527. 531 (S.D.N.Y. 2006) involves the *pro se* complaints of an individual who filed no less than twenty complaints against government officials, many of which were dismissed on the pleadings.  Those that were allowed to proceed were never brought to trial, and all were dismissed upon motions by defendants.  The Plaintiff, a self-designated electronic journalist, asserted claims of "abuse of process" and libel against Family Court Judge Helen Sturm for telling defendant Detective Carl Roadarmel of his broadcast of Judge Sturm's home address on a public access television show.  The decision pertains to a discovery dispute regarding plaintiff's efforts to videotape the deposition of Detective Roadarmel.  Despite a court-issued

13

protective order directing that Roadarmel be deposed without the presence of video recording equipment, Plaintiff brought a video camera to the deposition and began recording. When the Judge ordered Plaintiff to file a written explanation as to why he brought video recording equipment despite the court's order, the Plaintiff feigned unawareness and stated that such an order would be a violation of "plaintiff's fourth amendment right to control and dominion over plaintiff's property." The Court held that while the Rule "has been liberalized to more fully permit videotape records . . . it expressly contemplates that the court may order otherwise. Defendants made an adequate showing that plaintiff intended to use the recording not for legitimate use at trial, but to embarrass Detective Roadarmel by broadcasting the recording on public television." *Id*. at 531.

Moreover, *DeLuca v. Gateways Inn, Inc.*, 166 F.R.D. 266, 267 (D. Mass. 1996) does not pertain to videotaped depositions at all, but rather pertains to allowing a defendant charged with sexual harassment to attend the deposition of the plaintiff's psychotherapist whom plaintiff did not intend to call at trial. Unlike in *Digital Equipment Corp. v. System Industries, Inc.*, 108 F.R.D. 742, 744 (D. Mass. 1986), the Premier Defendants do not intend to "waste" the time of the NECC Defendants. The Premier Defendants want and are entitled to exercise their right to depose the NECC Defendants as they possess information relevant to this

14

litigation. As the NECC Defendants have not shown good cause, their request for a protective order must be denied.

## CONCLUSION

It is respectfully submitted that the NECC Defendants' request for a protective order and motion to quash the deposition notices to the NECC Defendants must be denied.

Respectfully submitted,

Blumberg & Wolk, LLC
Attorneys for: Premier Orthopaedic and Sports Medicine Associates of Southern New Jersey, LLC, trading as Premier Orthopaedic Associates, Premier Orthopaedic Associates Surgical Center, LLC, and Kimberley Yvette Smith, M.D.,
a/k/a Kimberley Yvette Smith-Martin, M.D., et al

By: /s/Christopher M. Wolk

Christopher M. Wolk, Esq
Blumberg & Wolk, LLC
158 Delaware Street
Woodbury New Jersey 08096
(856)848-7472 p
(856)848-8012 f

**CERTIFICATE OF SERVICE**

    I, Christopher M. Wolk, hereby certify that this document has been filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

Date: May __, 2015          /s/ Christopher M. Wolk_____