**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**IN RE NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION**

**THIS DOCUMENT RELATES TO:**

**All Cases**

**MDL No. 2419**
**Dkt. No 1:13-md-2419 (RWZ)**

**TENNESSEE CLINIC DEFENDANTS' RESPONSE TO INSIDER DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND TO QUASH SUBPOENA**

Defendants Saint Thomas Outpatient Neurosurgical Center, LLC; Howell Allen Clinic, A Professional Corporation; John Culclasure, MD; Debra Schamberg, RN, CNOR; Vaughan Allen, MD; Specialty Surgery Center, PLLC; Kenneth R. Lister, MD; and Kenneth Lister, MD, PC (collectively "Tennessee Clinic Defendants") hereby respond to the *Motion For a Protective Order and to Quash Deposition Notices*[1] filed by Barry J. Cadden, Lisa Conigliaro-Cadden, Gregory Conigliaro, Carla Conigliaro, Douglas Conigliaro and Glenn A. Chin (collectively, the "Insider Defendants").

The Insider Defendants ask the Court to ignore the fact that they are parties to this litigation and *the* central witnesses to the actual wrongdoing that caused the injuries and deaths at issue. They seek to block their depositions, which are necessary to discover essential facts for trial, based on a blanket assertion of the Fifth Amendment privilege against self-incrimination, a position repeatedly rejected by the Courts.

[1] Dkt. 1823.

## INTRODUCTION

The Insider Defendants – individually and in combination – operated New England Compounding Company ("NECC"). They sold three (3) batches of methylprednisolone acetate contaminated with fungi and bacteria to health care providers in multiple states. Unknown to NECC's thousands of customers across the country, the Insider Defendants skirted industry safety standards and lied to regulators and customers, culminating in the 2012 meningitis outbreak. They are responsible for death and injury to hundreds of individuals. NECC and the Insider Defendants share most, if not all, of the fault in the cases against the Tennessee Clinic Defendants.

The Insider Defendants remain co-defendants in scores of lawsuits against the Tennessee Clinic Defendants. Almost all Plaintiffs have sued the Tennessee Clinic Defendants and some combination of the Insider Defendants. As a foremost affirmative defense, the Tennessee Clinic Defendants have asserted comparative fault against the Insider Defendants in all cases. Also, as fact witnesses, the Insider Defendants hold information and evidence that is critical to the Tennessee Clinic Defendants' ability to rebut the Plaintiffs' claims against them.

In an effort to discover information and evidence critical to the defense of these cases, the Tennessee Clinic Defendants served written discovery and deposition notices on each of the Insider Defendants. The Insider Defendants refused to participate in discovery and seek to avoid being deposed based on an impermissible blanket assertion[2] of the Constitutional privilege against self-incrimination.

[2] The Insider Defendants asserted the privilege against self-incrimination in refusing to answer every interrogatory, request for production, and request for admission propounded to them, and have refused to appear for depositions. They ask the Court to take the unprecedented step of exempting them from *any* depositions. While this is plainly inconsistent with all controlling and instructive law, as described in this

The Tennessee Clinic Defendants recognize the Insider Defendants' right to avoid self-incrimination. *However*, the Insider Defendants *cannot* avoid legitimate inquiry into relevant topics via the Tennessee Clinic Defendants' chosen form of discovery. While the Fifth Amendment privilege against self-incrimination precludes compelling any person "to be a witness against himself[,]"[3] it does *not* provide an all-encompassing right to refuse to participate in meaningful forms of discovery.

## LAW AND ARGUMENT

### I. The Blanket Assertion of Fifth Amendment Privilege Is Improper as a Matter of Law.

Counsel's blanket invocation of the Fifth Amendment privilege is in error as a matter of law. Countless courts have held, with essential uniformity, "[t]he Fifth Amendment cannot be invoked on a blanket basis."[4] As a matter of law, the manner in which the Insider Defendants seek to invoke the privilege is impermissible.

#### A. The Fifth Amendment is a Personal Privilege that Cannot Be Invoked in Such a Broad, Blanket Fashion to Preclude Potentially Legitimate Discovery.

**First and foremost, as several courts have specifically held, the attorney for a witness cannot invoke the right against self-incrimination** for the client. A blanket

---

brief, the practical impact is also significant. The Tennessee Clinic Defendants respectfully submit that it would be impossible to try these cases without discovery from these indispensable witnesses. If the Court allows NECC and the Insider Defendants to exempt themselves from participating in discovery, the severe prejudice to the non-settling Defendants would itself constitute a denial of the Due Process to which they are entitled.

[3] U.S. CONST. amend. V.

[4] *United States v. Castro*, 129 F.3d 226, 229 (1st Cir. 1997); *In re Grand Jury Matters,* 751 F.2d 13, 17 n. 4 (1st Cir. 1984); *United States v. Pierce*, 561 F.2d 735, 741 (9th Cir. 1977), *cert. denied*, 435 U.S. 923 (1978); *accord United States v. Zappola*, 646 F.2d 48, 53 (2nd Cir. 1981),, *cert. denied*, 459 U.S. 866, *United States v. Goodwin*, 625 F.2d 693, 701 (5th Cir. 1980).

refusal to answer questions does not suffice to raise the Fifth Amendment privilege against self-incrimination.[5]

If the witness believes that a truthful answer is incriminating, *the witness* is required to invoke the right.[6] The witness must *personally* invoke the privilege against self-incrimination.[7] Federal courts have held that an attorney's invocation of the Fifth Amendment privilege on behalf of a client during a deposition is invalid, and that the invalidity of the invocation could on its own support a motion to compel.[8] *Counsel* here should *not* be allowed to generally invoke the Fifth Amendment on the Insider Defendants' behalf *to all questions, present and future*.[9]

Second, the right protects against testimonial *self*-incrimination.[10] Irrespective of whether the attorney or client invokes the privilege, while the Fifth Amendment prohibits compelling a witness to testify against *himself*, it does *not* bar eliciting statements from the witness that incriminate others, nor does the Fifth Amendment prohibit inquiring about incriminating statements that other witnesses may have made, or that may be found in documents of *others*.[11]

The NECC Insiders' blanket assertion of the Fifth Amendment in advance, as to *any* question, on *any* issue, by *any* of the Insider Defendants bars the Tennessee Clinic

---

[5] *U.S. v. Carroll*, 567 F.2d 955, 957 (10th Cir. 1977); *U.S. v. Malnick*, 489 F.2d 682, 685 (5th Cir. 1974 ) *cert den.* 419 U.S. 826 (1974).

[6] *State ex rel. Butterworth on Behalf of Dade County School Bd. v. Southland Corp.*, 684 F. Supp. 292, 294 (S.D. Fla. 1988).

[7] *Id.*

[8] *Textron Financial Corp. v. Eddy's Trailer Sales, Inc.*, No. CV 08-2289, 2010 WL 1270182, *3 (E.D. N.Y. March 21, 2010).

[9] *See United States v. Schmidt*, 816 F. 2d 1477, 1481 n. 3 (10th Cir. 1987) (only holders of the Fifth Amendment privilege, "not their counsel, are the proper parties to interpose a claim of privilege"); *Textron*, 2010 WL 1270182 at *3.

[10] U.S. CONST. amend. V. ("nor shall be compelled in any criminal case to be a witness against himself").

[11] *Johnson v. United States*, 228 U.S. 457 (1913); *U.S. v. Castiglia*, No. CR-85-93E, 1988 WL 597, *1 (W.D. N.Y. 1988) ("[i]t is not the extortion of information from another, but from the accused himself that offends the Fifth Amendment").

Defendants from exploring each of the Insiders' knowledge that may incriminate *others*, or incriminate no one. In other words, the Insider Defendants cannot decline to answer questions about the actions of others because it may incriminate another Insider Defendant.[12] The witness may only refuse questions that may incriminate *the witness*:

> "The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself. His say-so does not of itself establish the hazard of incrimination. It is for the Court to say whether his silence is justified."[13]

Third, the proposed blanket invocation invades the Tennessee Clinic Defendants' right to conduct permissible document discovery. The privilege does *not* extend to the information and documents of an artificial entity, such as a corporation or a trust, held by an individual in a representative capacity.[14] The right against self-incrimination is a *personal* privilege that does not extend to a corporation or its records.[15] Consistent with this principle, a corporate record custodian may not resist a subpoena on the grounds that the contents of the documents would be personally incriminating.[16]

The blanket invocation of the privilege by counsel for the Insiders improperly bars the Tennessee Clinic Defendants from conducting basic document discovery of the Insider Defendants and of NECC[17] and precludes them from establishing the

[12] For instance, asked of another witness, "Did Glenn Chin compound the three batches of medication at issue?"

[13] *Hoffman v. United States*, 341 U.S. 479, 486 (1951).

[14] *See Watson v. C.I.R.*, 690 F. 2d 429 (5th Cir. 1982).

[15] *Curcio v. United States*, 354 U.S. 118, 122 (1957) ("It is settled that a corporation is not protected by the constitutional privilege against self-incrimination."); *Bellis v. United States*, 417 U.S. 85, 89-91 (1974); *United States v. Fisher*, 425 U.S. 391, 408 (1976).

[16] *See Braswell v. United States*, 487 U.S. 99, 110 (1988).

[17] NECC has likewise argued that it should not have to offer a corporate representative for a deposition because all of the Insider Defendant owners and operators of NECC would plead the privilege to all questions about any topic. [Dkt. 1811, p. 6, n. 4] Thus, this proposed blanket invocation of the Fifth Amendment impedes the Tennessee Clinic Defendants' ability to get information from *NECC*, which is not protected by the Fifth Amendment. The Insider Defendants cannot invoke the Fifth Amendment to avoid giving basic testimony about documents held by NECC.

admissibility of documents for trial and learning basic information about documents (who authored the document, when it was authored, what it means).

The Fifth Amendment privilege does not go so far as to shield document production by a corporate entity and its owners and operators and does not protect against basic questions about documents.

* * * * * * *

The three (3) reasons discussed in this submission demonstrate the lack of merit to the Insiders' motion for a protective Order. For these reasons alone, the motion should be denied.

* * * * * * *

### B. The Fifth Amendment Must Be Invoked on a Question-by-Question Basis.

In addition to the three (3) cardinal deficiencies in the invocation explained above, the Insider Defendants cannot assert the privilege to any and all questions, whether asked or as-yet-unasked, present or future. The privilege against self-incrimination must be invoked on a question-by-question basis.

"While the Fifth Amendment privilege against self-incrimination applies to civil proceedings when the responses might carry with them criminal consequences, having a valid Fifth Amendment claim does not automatically entitle the claimant not to answer."[18] A witness cannot make a blanket assertion of the privilege in advance of all questions.[19] The privilege must be asserted by a witness with respect to particular

[18] *In re Tower Alloy Co.*, 200 B.R. 598, 601 (S.D. Ohio 1996).

[19] *In re Morganroth*, 718 F.2d 161, 167 (6th Cir. 1983) (quoting *Hoffman*, 341 U.S. at 486-88); *see also National Life Insurance Co. v. Hartford Accident and Indemnity Co.*, 615 F.2d 595, 598 (3d Cir. 1980) (witness in a civil proceeding may not invoke a blanket Fifth Amendment privilege prior to the propounding of questions); *Foss v. Gerstein*, 58 F.R.D. 626, 630 (S.D. Fla. 1973).

questions, and in each instance, the court must determine the propriety of the refusal to testify.[20] **One may not refuse to attend a deposition or assert the privilege in advance with respect to all potential questions.[21]**

Instead, one must invoke the privilege on a question-by-question basis.[22] And, it must be done "with sufficient particularity to allow an informed ruling on the claim."[23] Otherwise, the court cannot determine whether the privilege is being properly asserted.[24]

The person asserting the privilege must demonstrate a reasonable possibility that his own testimony will incriminate him.[25] The court's analysis of whether a party has met this burden requires an examination of the deposition testimony or particular discovery responses on a question-by-question basis.[26]

The Insider Defendants cannot assert the privilege, in advance, as they have, to all questions they think *might* come in a deposition. This does not allow the Court (or, frankly, the Defendants) to evaluate whether the privilege applies.

In civil cases, an adverse inference may be drawn when a party refuses to testify in response to probative evidence offered against them.[27] An adverse inference can be drawn only when independent evidence exists of the fact to which the party refuses to testify.[28] This is all the more reason why, if the Insider Defendants choose to assert the

---

[20] *Id.*
[21] *Vazquez-Rijos v. Anhang*, 654 F.3d 122, 129 (1st Cir. 2011); *see North River Ins. Co. v. Stefanou*, 831 F.2d 484 (4th Cir. 1987) (improper to assert Fifth Amendment in blanket fashion to questions on all topics, even those such as the existence of the defendant's business and his position in the business).
[22] *Id.*
[23] *North River Ins. Co.*, 831 F.2d at 487.
[24] *Vazquez-Rijos*, 654 F.3d at 129.
[25] *Krape v. PDK Labs, Inc.*, No. CV 023440, 2004 WL 831137, at *3 (E.D.N.Y. Apr. 19, 2004).
[26] *Hoffman*, 341 U.S. at 486; *Libutti v. United States*, 107 F. 3d 110, 124 (2d Cir. 1997)
[27] *See Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976).
[28] *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258 (9th Cir. 2000).

Fifth Amendment privilege, they must do so on a question-by-question basis. Otherwise, it will be impossible for the Court to later make decisions regarding the application of adverse inferences to *particular facts.*

### C. The Solitary Decision Embraced by the Insider Defendants Is Scant, Inapposite, and Certainly Insufficient to Justify their Blanket Exclusion from the Deposition Process.

The Insider Defendants point to a single case from the last 40 years, *United States v. Johnson*, to support their argument that they enjoy a blanket exemption from a deposition if they make a blanket assertion of the Fifth Amendment in response to every question. [29] However, *Johnson*'s finding was case-specific and is distinguishable, particularly in light of the repeated holdings of numerous courts that a blanket assertion of the privilege is impermissible.

First, the *Johnson* court only held that a court, *in its discretion*, *may* allow a witness to refuse to take the stand at trial if he intends to claim the Fifth Amendment privilege "as to essentially all questions."[30] "[B]efore excluding a witness, the court must first establish reliably that the witness will claim the privilege *and the extent and validity of the claim*."[31]

Here, the Court cannot establish the extent and validity of the Insider Defendants' claim of privilege because the Court has not heard the questions yet. The Insiders simply say they will invoke the privilege to anything and everything.

Second, *Johnson* is distinguishable from the present case because the jury in that *criminal* proceeding was not permitted to draw negative inferences from Fifth Amendment silence. The codefendant's testimony offered virtually no probative value.

---

[29] 488 F.2d 1206, 1211 (1st Cir. 1973).
[30] *Id.*
[31] *Id.* (emphasis added).

In contrast, here, in this civil case, the jury *may* draw negative inferences from the Insider Defendants' invocation of the Fifth Amendment.[32] Thus, their testimony may impact the presentation and argument of evidence to the jury.

*Johnson*, at best, stands for the proposition that a court *may* allow a *criminal* codefendant to refuse to testify at trial after concluding the witness has made a valid assertion of the privilege and his testimony offers no probative value to the case. The case offers scant value to the Insider Defendants' efforts to exempt themselves from civil discovery.

* * * * * * *

This Court need not waste time on *Johnson.* Pointed guidance is readily available. The First Circuit rejected the invoking party's argument – similar to the Insider Defendants' argument here – in *Vazquez-Rijos v. Anhang*.[33]

In *Vazquez-Rijos*, the plaintiff attempted to avoid a deposition because she would be asked questions related to a parallel criminal matter.[34] The court held that it was improper to refuse to appear for the deposition on the basis of the Fifth Amendment:

> "Similarly, the court correctly rejected Vazquez's argument that the specter of the related indictment against her excused her from appearing at the deposition at all. First, while she certainly had a right to refuse to answer questions on the basis of her privilege against self-incrimination, it was improper to refuse to appear for any deposition whatsoever on that basis, rather than refuse to answer specific questions. The Fifth Amendment privilege 'cannot be invoked on a blanket basis.' This rule makes practical sense. The trial court must be able to review whether the privilege was properly invoked. Without knowing the questions to be put to Vazquez, the court could not determine whether the privilege was properly asserted."[35]

---

[32] *U.S. v. Lileikis*, 899 F.Supp. 802, 804 (D. Mass. 1995).
[33] 654 F.3d 122, 129 (1st Cir. 2011); *see also S.E.C. v. Spencer Pharm. Inc.*, No. 12-CV-12334-IT, 2014 WL 4179914, at *3 (D. Mass. Aug. 19, 2014).
[34] *Id.* at 124.
[35] *Id.* at 129 (additional citations omitted).

The First Circuit Court of Appeals is not alone. Other federal courts agree that a party may not avoid giving testimony outright on the basis that the party will assert the Fifth Amendment in response to most or all substantive questions:

In *Rosebud Sioux Tribe*, the court ruled it was permissible for a witness to be called to the stand, even when the calling party knew that the witness would invoke their Fifth Amendment right.[36]

In *Federal Deposit Ins. Corp. v. Fidelity & Deposit Co.*, the Fifth Circuit refused to adopt a rule that would "categorically bar a party from calling, as a witness, a non-party who had no special relationship to the party, for the purpose of having the witness exercise his Fifth Amendment right."[37]

* * * * * * *

The Insider Defendants ignore the fundamental principle that the privilege is not a unilateral shield to all testimony. As the explicit language of the privilege makes clear, application of the privilege is limited to those answers that present a risk of self-incrimination.[38] Certainly, factual questions can be constructed to not threaten self-incrimination.[39] <u>The Insider Defendants should not be allowed to avoid depositions altogether because they *anticipate* asserting their right against self-incrimination to all questions, even those that do not present a reasonable risk of self-incrimination.</u>

[36] 733 F. 2d 509, 521-22 (8th Cir. 1984).
[37] 45 F.3d 969, 978 (5th Cir. 1995).
[38] *Kirane v. City of Lowell*, 622 F. Supp. 262, 264 (D. Mass. 1985).
[39] For instance, "Who was responsible for compounding the batches that became contaminated?" "Who was responsible for processing the orders by the Tennessee Clinic Defendants?" "Who managed its affairs on a day-to-day basis in 2012?" "When did the Tennessee Clinic Defendants first notify you of the potential contamination, and what did they say?" Or, even more mundane, "When did NECC begin operations?"

## II. The Insider Defendants Cannot Avoid Depositions Simply because They Would Prefer to Submit to Written Interrogatories or Questions.

### A. The Party Responding to Discovery Does Not Have the Right to Dictate the Method of Discovery Chosen by an Opposing Party.

The Insider Defendants next combine their convenience with the inappropriate assertion of privilege in an effort to avoid giving depositions altogether. According to the Insiders, if they are required to participate in this litigation at all, it should only be through the vehicle of a series of written questions, in effect, an open book exam where the answers are vetted in advance by their counsel tutoring them with each response. The Insiders' preference, convenience, and perception of litigation advantage does not justify foreclosing the Tennessee Clinic Defendants from conducting depositions recorded by audio-visual means.

First and foremost, it is axiomatic that the interrogating party has the right to determine which method of examination, whether oral examination or written interrogatories, will provide sufficient information to properly defend a suit.[40]

> "Parties may choose the manner and method in which they conduct discovery. The Federal Rules provide several vehicles for discovery. Parties may choose their preferred methodology. Courts generally will not interfere in such choices."[41]

It is likewise axiomatic that there are advantages to obtaining facts during an oral examination over a written examination.[42] "Experience has made it abundantly clear that the advantages of oral examination far outweigh the advantages of written interrogatories in carrying out the deposition procedures in aid of discovery under the

---

[40] *Goldberg v. Raleigh Mfrs.*, 28 F. Supp. 975 (D. Mass. 1939).
[41] *White v. Union Pac. R. Co.*, No. 09-1407-EFM-KGG, 2011 WL 721550, at *2 (D. Kan. 2011) (additional cites omitted).
[42] *Id.*

rules."[43] "Because of its nature, the deposition process provides a means to obtain more complete information and is, therefore, favored."[44]

The Insider Defendants' suggestion that the Tennessee Clinic Defendants bear the burden to demonstrate why interrogatories or written questions would not be sufficient is inconsistent with law and logic.[45] The party conducting the discovery chooses the method it feels suits its purposes, and a court should not interfere if the party wishes to conduct an oral examination instead of or in supplement to written discovery.[46] The Federal Rules of Civil Procedure do not arm a party served with a deposition notice or subpoena request with an option "to elect to supply the answers in a written response to an interrogatory" instead.[47]

The Tennessee Clinic Defendants have valid reasons for seeking depositions of these NECC Insiders. The parties may be unavailable for trial, requiring preservation of testimony, and presentation to the jury in the most informative format. The Defendants wish to preserve testimony for presentation to the jury, even if that presentation is to argue for an adverse inference from an invocation of the privilege. Should the noticed witnesses appear at trial, audio-visual deposition testimony is far superior for impeachment.

The Insiders should be required to evaluate each question, to answer non-incriminating questions, and to participate in discovery. The Tennessee Clinic

[43] *Greenberg v. Safe Lighting, Inc., Inertia Switch Division*, 24 F.R.D. 410, 411 (S.D. N.Y. 1959).
[44] *Id.*
[45] *Id.* at 411 ("[t]here is no burden on the party seeking the deposition to show that written interrogatories would not be sufficient for its purposes").
[46] *See Wichita Firemen's Relief Ass'n v. Kansas City Life Ins. Co.*, No. 11-1029-KGG, 2012 WL 5987474, at *3 (D. Kan. 2012) ("[p]laintiff also argues that it has offered to allow Defendant to submit its questions by other method, such as interrogatory or written question. This is inappropriate as it is Defendant's 'prerogative to choose the method of discovery [it] prefers'") (additional cites omitted).
[47] *Marker v. Union Fidelity Life Insurance*, 125 F.R.D. 121, 126 (M.D.N.C.1989).

Defendants understandably prefer the free-flowing interrogation of a deposition over written answers edited and vetted by counsel for the Insider Defendants. Put simply, if the Tennessee Clinic Defendants wish to conduct depositions of these parties, the Insider Defendants cannot avoid them on the basis that they would prefer not be bothered with appearing for depositions or think that other methods are better for them.

**B. The Party Conducting the Deposition Has the Right to Videotape the Deposition absent Extraordinary Circumstances.**

The Insider Defendants refuse to be bothered with audio-visual recording of their depositions. Other than empty complaints of "harassment," they offer nothing substantive to support the objection.

Video depositions have been common components to litigation for 25+ years.[48] There can be no argument that presentation of witness testimony by video is far superior to reading a written document to the jury. Video depositions provide highly probative information for jurors. "In general, video depositions provide greater accuracy and trustworthiness than a stenographic deposition because the viewer can employ more of his senses in interpreting the information from the deposition."[49]

Absent an order from the court, a party may videotape a deposition as a matter of right, as long as notice is given of the party's intention to do so.[50] The notice to video-tape the deposition imposes no burden on the party to justify the decision.[51] The rule

---

[48] *Burlington Bd. of Educ. v. United States Mineral Prod. Co.*, 115 F.R.D. 188, 189 (M.D. N.C. 1987) ("[v]ideo depositions are becoming an increasingly familiar part of the judicial landscape. While they were once regarded with some caution, if not aversion, the tide has now shifted in the other direction"); *see Fanelli v. Centenary College*, 211 F.R.D. 268, 272 (D. N.J. 2002) ("[t]he wave of the future clearly lies in the use of electronic technology both in discovery and courtroom presentation. In a few years, it will be commonplace to use videotape instead of a cold transcript for purposes of impeachment of critical witnesses").

[49] *Burlington Bd. of Educ.*, 115 F.R.D. at 189.

[50] FED. R. CIV. P. 30; *Stern v. Cosby*, 529 F.Supp.2d 417 (S.D.N.Y. 2007).

[51] *Small v. New York*, No. 12-CV-11236-WMS-JJM, 2015 WL 1405375, *1 (W.D. N.Y. 2015).

"confers on the party taking the deposition the choice of the method of recording . . . ."[52] Most of the published decisions allow videotaping where the party taking the deposition is willing to absorb the cost.[53]

Squarely addressing invocation of the Fifth Amendment, in *Cerro Gordo Charity v. Fireman's Fund Am. Life Ins. Co.*, the court held that letting the jury hear a non-party invoke the Fifth Amendment "informed the jury why the parties with the burden of proof . . . resorted to less direct and more circumstantial evidence[.]"[54] "[O]therwise, the jury might have inferred the companies did not call [the witness] because his testimony would have damaged their case."[55] [56]

A videotaped deposition offers additional probative value not furnished by written responses. It remains to be determined whether the Insider Defendants will testify at trial. Even if the Insider Defendants frequently invoke the Fifth Amendment, video depositions will allow jurors to see the individuals who manufactured the contaminated MPA, whom both Plaintiffs and the Tennessee Clinic Defendants allege caused the meningitis outbreak, and consider their credibility and demeanor. These are co-defendants that the Tennessee Clinic Defendants assert should bear all, or nearly all, of the fault in these cases. The Insider Defendants should not be allowed to avoid a videotaped deposition that is potentially valuable to the Tennessee Clinic Defendants'

---

52 Advisory Committee Notes to the 1993 Amendment to Rule 30(b).

53 *Grumpy Trucking v. Twin County Grocers, Inc.*, No. 90CIV.6638 (CSH), 1991 WL 2068279, *1 (S.D. N.Y. 1991) (citing 4A MOORE'S FEDERAL PRACTICE (2d ed. 1991), at 30-120).

54 819 F. 2d 1471, 1482 (8th Cir. 1987).

55 *Id.*

56 As Justice Brandeis once said, "Silence is often evidence of the most persuasive character." *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149 (1923), Brandeis, J.

presentation of the cases to the jury simply because they do not want to be seen as they refuse to speak.[57] [58]

## III. The Insider Defendants Fail to Demonstrate Good Cause for Avoiding Their Depositions.

The Insider Defendants' arguments that the depositions should not be videotaped because they would "embarrass" the witnesses, and cause *undue* burden, fail miserably.

Rule 26(c)(1) of the Federal Rules of Civil Procedure, provides "the [C]ourt may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]"[59] None of the bases for protection are present in this case.

As a preliminary point, the mere fact that a party would be required to attend a deposition and "thereby absent himself from some of his usual business affairs during the taking of a deposition is utterly insufficient to justify the Court in ruling that he is being annoyed, embarrassed, or oppressed."[60]

The videotaped depositions will not embarrass the Insider Defendants, and certainly will not embarrass the witnesses sufficiently to justify precluding it.

---

[57] *Maranville v. Utah Valley Univ.*, No. 2:11cv958, 2012 WL 1493888, *2 (D. Utah. 2012) ("[i]t It appears that the only real reasons Defendants object to videotaping the depositions is because Plaintiff has requested it, or in the alternative, Defendants simply do not want themselves videotaped. Neither reason is a sound basis for prohibiting Plaintiff's counsel from videotaping the depositions").

[58] Additionally, the Court can address issues with admissibility of the video depositions later. *See Laugier v. City of New York*, No. 13-CV-6171 (JMF), 2014 WL 6655283, *1 (S.D. N.Y. 2014) ("[a] few of Defendants' requests can be addressed swiftly. As an initial matter, the Court sees no need to bar Plaintiff from videotaping the deposition altogether, as Plaintiff's counsel properly noticed Defendants as to his intention to record the proceeding as required by Federal Rule of Civil Procedure 30(b)(3). Further, Defendants' request that the video be deemed inadmissible in later proceedings before this Court is premature. Finally, the Court will not order Plaintiff to use an independent videographer. The Court may well deem a video of the deposition inadmissible at a later juncture if it finds that the video is distorted in violation of Rule 30(b)(5)(B)").

[59] *See* FED. R. CIV. P. 26(c)(1).

[60] *Goldberg v. Raleigh Manufacturers*, 28 F. Supp. 975, 977 (D. Mass. 1939) (emphasis added).

First, the Court can limit the dissemination of the video. A protective order is already in place. The Court may limit the number of attendees at the actual deposition. Thus, to the extent the Insider Defendants do not wish to be seen on video, the persons who see the video will be limited to those with a real interest in the litigation.

Second, the notion that a *video deposition* in and of itself will embarrass the Insider Defendants is utterly ludicrous. The Insider Defendants have been indicted for a series of very serious crimes, including homicide. They are named as defendants by over 600 Plaintiffs from numerous states. The suits have received ample publicity, both locally and nationally. Barry Cadden was recorded as he asserted the Fifth Amendment privilege and refused to testify to Congress.[61] Glenn Chin was arrested at the airport allegedly attempting to flee to Hong Kong.[62] The arrests of the Insider Defendants garnered national attention, with mugshots and video of the arrests splashed across numerous news outlets.[63] In light of these facts, to suggest that *videotaping the depositions* creates some marginal yet unbearable embarrassment beyond the publicity already encountered is absurd.

The Insider Defendants' argument for protection based on the expense and burden of the depositions likewise holds little weight. The Tennessee Clinic Defendants are willing to conduct the depositions on dates convenient for the witness. The Tennessee Clinic Defendants will travel to Boston to depose the Insider Defendants. The live video stream will be available to all parties. Regardless, the Caddens and Conigliaros have committed millions of dollars to a settlement with the Plaintiffs. They

[61] http://www.nationaljournal.com/congres/10-times-the-fifth-amendment-has-been-used-before-congress-20130522.

[62] http://www.bostonglobe.com/metro/2014/09/04/feds-make-arrest-logan-compounding-pharmacy-case-rajklmPf9WVZxS73XYBw2H/story.html.

[63] http://boston.cbslocal.com/2014/12/17/necc-owner-employees-arrested-in-deadly-meningitis-outbreak/.

are presumably paying lawyers to review millions of pages of documents in the criminal proceeding.[64] To now submit that it is unreasonably costly and burdensome for each Insider Defendant to give deposition testimony in this sprawling MDL is pointless hyperbole.

The Insider Defendants have failed to demonstrate the requisite good cause for a protective order under Rule 26(c)(1) because of potential burden, embarrassment, or cost.

## CONCLUSION

The Court should deny the Insider Defendants' Motion for Protective Order to Quash Deposition Subpoenas, and require the Insider Defendants to appear for depositions.

## Oral Argument Requested

The Tennessee Clinic Defendants request oral argument on this motion at the hearing before Chief Magistrate Judge Boal on May 28, 2015, at 11:30 EDT in Courtroom 14.

[Signature on Following Page]

[64] *See* Aff't of Carmen Ortiz, Dkt. 1838-3, ¶ 9 (noting that the Government has provided the Insider Defendants with *8.7 million pages of documents* in discovery).

Respectfully submitted,

**GIDEON, COOPER & ESSARY, PLC**

/s/ Chris J. Tardio

**C.J. Gideon, Jr.***
**Chris J. Tardio***
**Alan S. Bean****
**Matthew H. Cline***
315 Deaderick Street, Suite
Nashville, TN 37238
Ph: (615) 254-0400
Fax: (515) 254-0459
chris@gideoncooper.com

***Attorneys for the Tennessee Clinic Defendants***

* Admitted pursuant to MDL Order No. 1.
** Admitted *pro hac vice*.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 18th day of May, 2015, a true and accurate copy of the foregoing was filed via the Court's ECF system, to be served electronically upon those parties registered to receive ECF service.

/s/ Chris J. Tardio