UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ THIS DOCUMENT RELATES TO: ALL CASES | MDL No. 2419 Dkt. No 1:13-md-2419 (RWZ) |

**THE SAINT THOMAS ENTITIES' OPPOSITION TO THE INVOKING DEFENDANTS' MOTIONS FOR PROTECTIVE ORDERS AND TO QUASH DEPOSITION NOTICES**

The Saint Thomas Entities[1] file this Opposition to the Invoking Defendants'[2] Motion for a Protective Order and Motion to Quash Deposition Notices to the Invoking Defendants [Docket # 1823] (hereinafter, the "Motion"). Defendants Ameridose, LLC ("Ameridose"), GDC Properties Management, LLC ("GDC"), and Medical Sales Management, Inc. ("MSM"), as well as non-party Steven Higgins[3] join the Motion [Docket ## 1824, 1826, 1854, and 1836, respectively].[4]

The Invoking Defendants seek relief from their basic obligations under the Rules of Civil Procedure because their lawyers contend they will invoke their Fifth Amendment privilege against self-incrimination in response to any and all deposition questions. But only witnesses, not

---

[1] Saint Thomas West Hospital f/k/a St. Thomas Hospital, Saint Thomas Network, and Saint Thomas Health.

[2] Barry J. Cadden, Lisa Conigliaro Cadden, Gregory Conigliaro, Carla Conigliaro, Douglas Conigliaro, and Glenn A. Chin.

[3] The Saint Thomas Entities reserve their right to file an opposition to Mr. Higgins's separate Motion for Protective Order, as it purports to raise some additional issues.

[4] The NECC Chapter 11 Trustee also filed a Motion for a Protective Order [Docket # 1810] addressing many of the same issues raised in the Motion.

1

their attorneys, can invoke their Fifth Amendment privilege, and they must do so on a question-by-question basis. That is why witnesses who intend to invoke the Fifth Amendment routinely attend their depositions and assert the privilege. Moreover, the juries deciding the Saint Thomas Entities' responsibility, if any, are entitled to see and hear from the witnesses the Saint Thomas Entities claim are solely responsible for the meningitis outbreak and should be allocated all fault under Tennessee's comparative fault regime. Finally, the Invoking Defendants have not demonstrated good cause to avoid a simple deposition and cannot hide behind FED. R. CIV. P. 26(c). The Motion should be denied.

## BACKGROUND

As the Court is aware, this litigation stems from an outbreak of fungal meningitis caused by the distribution of contaminated methylprednisolone acetate ("MPA") compounded by the New England Compounding Center ("NECC") in Framingham, Massachusetts. The contaminated MPA was purchased and administered to patients by various medical clinics around the country, and, as a direct result of NECC's actions, 64 of those patients died and hundreds were injured. Litigation followed; plaintiffs have brought claims against individuals and entities affiliated with NECC, companies who had contracted with NECC (such as Liberty Industries, Inc. and UniFirst Corporation), clinics who purchased and administered the MPA in question, and entities with no relationship at all to NECC, such as St. Thomas Hospital, Saint Thomas Network, and Saint Thomas Health.

In addition to the negligence and product liability claims pending before this Court, criminal proceedings against a number of NECC insiders are ongoing. On December 17, 2014, the Department of Justice unsealed an indictment alleging that fourteen individuals affiliated with NECC had committed criminal acts, including violating the Racketeer Influenced and

Corrupt Organization Act. The Indictment alleges that individuals at NECC repeatedly disregarded basic standards for keeping NECC's cleanrooms sterile and safe for compounding drugs and fraudulently concealed those facts from its customers. According to the Indictment, cleaning logs were falsified, tests showing mold growth were deliberately ignored, sterilization techniques were shortcut, expired drugs were shipped, and unlicensed technicians were hidden from inspectors. Under the government's theory of the case, Barry Cadden's and Glenn Chin's alleged conduct amounts to second-degree murder under the laws of Michigan, Tennessee, Indiana, Maryland, Virginia, Florida, and North Carolina.

The criminal case against the Caddens, Chin, and the Conigliaros seems to be just beginning; it does not appear a trial date has even been set yet. But in the civil context, the Plaintiffs' Steering Committee is pushing for a trial before year-end, asking that the Saint Thomas Entities and other Tennessee defendants defend themselves before juries after an extremely condensed discovery period and despite the fact that these defendants have thus far been impeded from obtaining critical discovery as to comparative fault from their co-defendants and third parties. The Saint Thomas Entities are preparing their defense, and one important component of that defense is their steadfast belief that the NECC-related parties bear the entirety of the fault for Plaintiffs' injuries, not the Saint Thomas Entities. As explained below, Tennessee law provides for several liability, so the juries will apportion fault for any negligence claim among those against whom a *prima facie* negligence case is made. It is the Saint Thomas Entities' position that all parties affiliated with NECC should be on the verdict slips and the juries should allocate responsibility to those entities and individuals, not the Saint Thomas Entities. Moreover, under Tennessee law, an unforeseeable act (such as a criminal one) breaks the causal chain, defeating liability entirely. Thus, if the Saint Thomas Entities prove that the

criminal acts of certain individuals were not reasonably foreseeable, then a plaintiff will not be able to establish that the Saint Thomas Entities were the proximate cause of his or her injury.

To convince juries that the Saint Thomas Entities are not responsible for Plaintiffs' injuries, they will need to present evidence that the Invoking Defendants (among others) were negligent (and unforeseeably so to defeat a showing of proximate cause). To do this, the Saint Thomas Entities noticed the depositions of the Invoking Defendants by court reporter and video so they can be played to the fact finder, in lieu of serving trial subpoenas for every bellwether trial. The Invoking Defendants have moved for a protective order, offering instead a much more sterile piece of evidence: responses to written questions to which they will—as they prematurely state—invoke the Fifth Amendment.

The Saint Thomas Entities should be entitled to videotaped depositions to show to the juries in their upcoming civil trials. A sanitized reading of deposition questions, or even an adverse inference instruction, without the context of the non-privileged testimony, is not adequate. More fundamentally, the juries, as the fact finders, are entitled to see the individuals to whom they are assigning liability, assess the witnesses' demeanor and credibility, and understand who they are reading about when they look at the documentary evidence. This is especially critical when comparing the fault of the Invoking Defendants to the other defendants. The Saint Thomas Entities and the Tennessee Clinic Defendants[5] should not be the only parties to face juries for the civil claims asserted as a result of this fungal meningitis outbreak. The Invoking Defendants should also be before the juries, even via videotape, just as the Saint Thomas Entities will be, so the juries can fairly apportion liability in these important personal injury cases.

---

[5] As pertinent to the cases pending against the Saint Thomas Entities, the Tennessee Clinic Defendants consist of Saint Thomas Outpatient Neurosurgical Center, LLC; Howell Allen Clinic, a Professional Corporation; John Culclasure, M.D.; Debra Schamberg, R.N., CNOR; and Vaughan Allen, M.D.

**ARGUMENT**

I. **COURTS ROUTINELY PERMIT DEPOSITIONS OF WITNESSES WHO WILL INVOKE THE FIFTH AMENDMENT.**

The Invoking Defendants' assertion of their Fifth Amendment privilege does not relieve them of their obligations to submit to civil depositions under the Federal Rules of Civil Procedure. *See Vazquez-Rijos v. Anhang*, 654 F.3d 122, 129 (1st Cir. 2011); *Sec. & Exch. Comm'n v. Spencer Pharm. Inc.*, No. 12-cv-12334-IT, 2014 WL 4179914, at *3 (D. Mass. Aug. 19, 2014). Rather, even when a witness intends to invoke the Fifth Amendment, he or she must attend the deposition and invoke the privilege on a question-by-question basis. *See Vazquez-Rijos*, 654 F.3d at 129 ("[I]t was improper [for witness] to refuse to appear for any deposition whatsoever on [the] basis [of the Fifth Amendment], rather than refuse to answer specific questions.") (citation omitted); *Spencer Pharm. Inc.*, 2014 WL 4179914 at *3 (holding that "it was improper for [defendant] to refuse to appear for his deposition, rather than to refuse to answer specific questions[,]" because the court did not know the potential questions and thus could not determine whether defendant properly asserted privilege.); *accord Moll v. U.S. Life Title Ins. Co. of N.Y.*, 113 F.R.D. 625, 628-29 (S.D.N.Y. 1987) ("When a deposition is sought, the availability of the Fifth Amendment privilege does not mean that the witness need not attend the deposition. The proper procedure is for the deponent to attend the deposition, to be sworn under oath, and to answer those questions he can without risking self-incrimination."). There is little question that the Invoking Defendants have at least some non-privileged knowledge, and they should be required to answer questions relating to that knowledge. And the Court will then be able to make informed decisions as to the propriety of invoking the privilege in the context of the witnesses' non-privileged substantive testimony.

In their Motion, the Invoking Defendants offer to submit to written questioning and assert their Fifth Amendment privilege in response to "any substantive question (other than one's name and address)." Invoking Defs.' Mot. at 2. This is neither an appropriate alternative nor a proper use of the Fifth Amendment privilege. Invoking the Fifth Amendment on a blanket basis as to all deposition questions is impermissible; the Invoking Defendants must appear at their depositions and assert the privilege question-by-question. *See Digital Equip. Corp. v. Currie Enters.*, 142 F.R.D. 8, 14 (D. Mass. 1991) (witness must assert privilege with respect to specific questions); *McIntyre's Mini Computer Sales Grp., Inc. v. Creative Synergy Corp.*, 115 F.R.D. 528, 531 (D. Mass. 1987) (witness must give "reasons for invoking the privilege with respect to each objectionable question he refuses to answer"). "This rule makes practical sense because this court must be able to review whether the privilege was properly invoked." *Spencer Pharm.*, 2014 WL 4179914 at *3 (quotations and citation omitted). The possibility that a deponent will invoke the Fifth Amendment privilege as to some of the questions posed is not an excuse to avoid the deposition entirely.

The Invoking Defendants have cited no case law to the contrary. They rely primarily on *United States v. Johnson*, which arose out of entirely different circumstances than those present here. 488 F.2d 1206 (1st Cir. 1973). First, that case was a criminal proceeding, with the defendant seeking to call a co-defendant who explained to the court in *voir dire* that he was going to assert his Fifth Amendment privilege. This is quite different from a deposition taking place in civil pre-trial discovery. And most importantly, in a criminal case, "[n]either side has the right to benefit from any inferences the jury may draw simply from the witness' assertion of the privilege either alone or in conjunction with the questions that have been put to him." *Id*. at 1211 (citations omitted). Here, in a civil case, an adverse instruction is permitted and would be

appropriate. *See Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976) ("[T]he Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them . . ."). Thus, *Johnson* should be afforded no weight here. It is telling that given the voluminous case law on the precise issue before this Court, none of it was cited.

In summary, the plain fact that the Invoking Defendants may wish to assert their Fifth Amendment rights in response to certain deposition questions provides no basis for precluding their depositions.

## II. VIDEO EVIDENCE OF THE INVOKING DEFENDANTS ASSERTING THE FIFTH AMENDMENT WILL BE CRITICAL AT TRIAL.

Video evidence of the Invoking Defendants asserting the Fifth Amendment is critical for the Saint Thomas Entities' defense at trial. Under Tennessee law, defendants in a negligence case may be severally—but not jointly and severally—liable. *See Banks v. Elks Club Pride of Tenn. 1102*, 301 S.W.3d 214, 223 (Tenn. 2010) ("[T]he doctrine of joint and several liability no longer applies to circumstances in which separate, independent negligent acts of more than one tortfeasor combine to cause a single, indivisible injury."); *Owens v. Truckstops of Am.*, 915 S.W.2d 420, 430 (Tenn. 1996) ("[W]here the separate, independent negligent acts of more than one tortfeasor combine to cause a single, indivisible injury, each tortfeasor will be liable only for that proportion of the damages attributable to its fault."). The Saint Thomas Entities must present evidence to allow the juries to properly and fairly apportion fault among the various alleged tortfeasors. *See McIntyre v. Balentine*, 833 S.W.2d 52, 58 (Tenn. 1992) (holding that when defendant alleges that another actor "caused or contributed to the injury or damage[,] . . . the trial court shall instruct the jury to assign this [actor] the percentage of the total negligence for which

he is responsible"). Thus, it is critical to the Saint Thomas Entities' defense that they present a *prima facie* case to the jury of the comparative fault of the other tortfeasors.

Moreover, it is the position of the Saint Thomas Entities that the criminal acts of the Invoking Defendants were not reasonably foreseeable and thus, by definition, the Saint Thomas Entities could not have proximately caused the plaintiffs' injuries. Tennessee courts have held that a third party's criminal act relieves a defendant of liability where such act is *not* reasonably foreseeable. *See, e.g.*, *Alexander v. Zamperla, S.p.A.*, No. 09-01049-COA-R3-CV, 2010 WL 3385141, at *4 (Tenn. Ct. App. Aug. 27, 2010) (affirming summary judgment for amusement ride manufacturer where amusement park manager intentionally and criminally bypassed ride's safety system, causing rider's death; amusement park manager's acts were not reasonably foreseeable). A superseding, intervening cause, such as the criminal and fraudulent conduct described in the Indictment, will serve to sever the causal chain, and the Saint Thomas Entities will need to prove to a jury that the Invoking Defendants' conduct was, in fact, not reasonably foreseeable. For this reason, as well as their comparative default defense, the Saint Thomas Entities seek the live depositions of the Invoking Parties.

The Invoking Defendants' assertions of the Fifth Amendment will be critical and admissible evidence at trial. Courts have held that a video recording of a deponent's invocation of the Fifth Amendment is admissible in a civil trial. *See Sec. & Exch. Comm'n v. Jasper*, 678 F.3d 1116, 1125-27 (9th Cir. 2012). In *Jasper*, the trial court acted within its discretion in permitting the SEC to introduce a video of a deponent repeatedly invoking the Fifth Amendment, as well as his interrogatory responses in which he invoked the privilege 150 times. *Id*. at 1125-26. Indeed, the Fifth Circuit has held that a witness's invocations are so highly probative of his or her credibility that it is reversible error for a trial court to prohibit a party from calling a

witness to invoke the Fifth Amendment in the jury's presence. *See Hinojosa v. Butler*, 547 F.3d 285, 294-95 (5th Cir. 2008); *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 674-75 (5th Cir. 1999) (trial court abused its discretion in excluding evidence of corporation-defendant's CEO's invocation of the Fifth Amendment because his invocation was highly probative).

The Invoking Defendants' offer to conduct a deposition by written questions ignores the widely accepted benefits of testimony by video. Not only is "[s]ilence . . . often evidence of the most persuasive character," *Baxter*, 425 U.S. at 319 (quotations and citation omitted), but by the Invoking Defendants' own admission, video evidence is more compelling than written invocations. Invoking Defs.' Mot. at 8. Unlike written deposition responses, a video allows the jury to assess the "demeanor and appearance of the witness. . . . [F]acial expressions, voice inflection and intonation, gestures, [and] body language . . . may all express a message." *Fanelli v. Centenary Coll.*, 211 F.R.D. 268, 270 (D.N.J. 2002) (quotations and citations omitted). The Rules of Civil Procedure permit videotaped depositions as a matter of routine precisely because "videotapes are a means of presenting deposition testimony to juries that is superior to readings from cold, printed records." *Drake v. Benedek Broad. Corp.*, No. CIV. A. 99-2227GTV, 2000 WL 156825, at *1 (D. Kan. Feb. 9, 2000) (quotations and citation omitted). Videos of the Invoking Defendants' Fifth Amendment assertions will be powerful evidence necessary for the juries to properly apportion fault.

Finally, this is not a case in which a mere adverse inference instruction will suffice to remedy the prejudice to the Saint Thomas Entities; given the importance of the conduct that occurred at NECC to this case, a deposition is necessary for the jury to actually see and evaluate the parties to whom they are assessing fault. *Cf. Cowans v. City of Boston*, No. 05-CV-11574-RGS, 2007 WL 28419, at *1-2 (D. Mass. Jan. 4, 2007) (allowing adverse inference on specific

9

subject matters even though witness did not invoke privilege at second live deposition). While the Saint Thomas Entities are certainly entitled to an adverse inference instruction, *Baxter*, 425 U.S. at 318, that instruction is not adequate in this situation. The Invoking Defendants allegedly manufactured compounded drugs in unsanitary conditions and violated other health and safety standards, which resulted in contamination causing fungal meningitis, and all but one of them have been indicted for a multitude of crimes. Given the nature of the alleged activity, the centrality of the Invoking Defendants' conduct to the case at hand, and the Saint Thomas Entities' request that the jury allocate fault to them, the Saint Thomas Entities' request for videotaped depositions should be granted.

### III.     THE INVOKING DEFENDANTS HAVE NOT SHOWN GOOD CAUSE TO AVOID THEIR DEPOSITIONS.

The Invoking Defendants have not shown good cause for why the Court should enter a protective order. *See* FED. R. CIV. P. 26(c). To establish good cause, the Invoking Defendants must show that without the order, they will suffer "a clearly defined and serious injury." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) (quotations and citations omitted). "Good cause cannot be established upon some general or speculative alleged harm." *Fanelli*, 211 F.R.D. at 270. The Invoking Defendants' conclusory contentions that videotaping their invocations is "embarrass[ing]" and "oppressive[ly] burden[some]," and amounts to "harassment," are insufficient to show good cause. Invoking Defs.' Mot. at 4, 8-9.

In *Small v. New York*, the plaintiff sought to preclude the defendant from videotaping her deposition because it was "clearly a tactic to continue [defendant's] harassment and stalking of Plaintiff." No. 12-CV-01236-WMS-JJM, 2015 WL 1405375, at *1 (W.D.N.Y. Mar. 26, 2015). The court rejected the "assertion that the videotaping of her deposition [was] merely intended to harass her." *Id.* at *2. The court held that a video deposition is superior to a transcript or written

answers, and the Federal Rules of Civil Procedure have been "liberaliz[ed]" to "more fully permit video recording of depositions." *Id*.

Here, the Invoking Defendants have not shown that videotaping their depositions would cause any clearly defined injury. The Invoking Defendants' claim of the Fifth Amendment privilege cannot be used against them in a criminal trial. *See Griffin v. California*, 380 U.S. 609, 612 (1965). Furthermore, none of the cases cited by the Invoking Defendants is applicable to the circumstances here. In particular, in *DeLuca v. Gateways Inn, Inc.*, this Court addressed a situation where it had concerns about whether a deposition was sought for no reason "other than to distress the plaintiff by invading sensitive areas of her relationship with [the psychologist]." 166 F.R.D. 266, 267 (D. Mass. 1996).[6] There is no evidence here, nor any serious assertion, that the Saint Thomas Entities have any reason to embarrass the Invoking Defendants. The Saint Thomas Entities want to depose the Invoking Defendants for one reason: because the videotaped deposition would be powerful, highly relevant evidence at trial.

And contrary to the Invoking Defendants' contention that videotaped depositions are inefficient, Invoking Defs.' Mot. at 3-4, the Saint Thomas Entities are asking only for the Invoking Defendants to attend each of their depositions one time. The Saint Thomas Entities are not asking that the Invoking Defendants assert the privilege live before a jury, and certainly not before hundreds of juries in all of the pending civil cases. And if the trial court determines that

---

[6] The Invoking Defendants' reliance on *Digital Equip. Corp*. is similarly misplaced. 108 F.R.D. 742 (D. Mass. 1986). In that case, this Court prohibited the defendant from deposing the plaintiffs' employees to obtain information about why the plaintiff initiated the lawsuit. *Id*. at 743-44. The court held that the circumstances surrounding the instigation of the lawsuit were not relevant to the claim's substance. *Id*. The court further prohibited the defendant from deposing the plaintiff's president because the defenLant's counsel previously admitted that the deposition would be a "waste" of time, and the president submitted an affidavit stating he had no recollection of facts regarding the initiation of the suit. *Id*. at 744.

some of the videotaped depositions are unduly prejudicial in some way, the issue can be addressed at trial.

## IV.  CORPORATE DEPOSITIONS MAY GO FORWARD BECAUSE AMERIDOSE, GDC, AND MSM CAN APPOINT AGENTS WHO WILL NOT INVOKE THE FIFTH AMENDMENT.

Defendants Ameridose, GDC, and MSM made the additional argument that they have no representatives who can be deposed because their owners or agents would assert the Fifth Amendment [Docket ## 1824, 1826, and 1854, respectively]. These defendants cite no cases supporting their argument because the case law is squarely against them.

It is well established that a collective entity cannot claim the Fifth Amendment privilege, regardless of how small the collective entity may be. *See Braswell v. United States*, 487 U.S. 99, 105-06 (1988); *Amato v. United States*, 450 F.3d 46, 50 (1st Cir. 2006). Where a corporation's officers or agents who ordinarily would respond to discovery requests will invoke the Fifth Amendment, the corporation *must* designate a representative who will not be incriminated to testify on the corporation's behalf. *See* FED. R. CIV. P. 30(b)(6) (subpoenaed "organization must then designate one or more officers, directors, or managing agents, or designate *other persons* who consent to testify on its behalf") (emphasis added); *accord United States v. Kordel*, 397 U.S. 1, 8 (1970) (corporation cannot appoint agent who will invoke Fifth Amendment because that would "secure for the corporation benefits of a privilege it does not have"). The designee can be any individual the corporation chooses, so long as that individual consents to testify and has been properly prepared. *See* Fed. R. Civ. P. 30(b)(6); *Sec. & Exch. Comm'n v. A Chicago Convention Ctr., LLC*, No.13 C 982, 2013 WL 4010585, at *2 (N.D. Ill. Aug. 5, 2013) (Rule 30(b)(6) permits corporation to designate "any person").

Under Fed. R. Civ. P. 30(b)(6), the designee need not have personal knowledge of the deposition topics. *See* Fed. R. Civ. P. 30(b)(6) ("The persons designated must testify about information known or reasonably available to *the organization*.") (emphasis added). Instead, the corporation must prepare and educate the designee so he or she "can answer fully, completely, [and] unevasively." *Briddell v. Saint Gobain Abrasives Inc.*, 233 F.R.D. 57, 60 (D. Mass. 2005) ("If necessary, the deponent must use documents, past employees, and other resources in performing this required preparation.").

Therefore, Ameridose, GDC, and MSM must appoint someone, even someone other than current or past employees, to be their designees for the purposes of the depositions. Those designees need not have personal knowledge of the deposition topics so long as they are sufficiently prepared to testify. Thus, these defendants' motions must be denied.

## V. CONCLUSION

For these reasons, the Saint Thomas Entities ask that the Court deny the Motions and require the Invoking Defendants to attend their depositions at which they can assert the Fifth Amendment on a question-by-question basis.

SAINT THOMAS WEST HOSPITAL,
FORMERLY KNOWN AS ST. THOMAS
HOSPITAL, SAINT THOMAS NETWORK,
AND SAINT THOMAS HEALTH

By their attorneys,

*/s/ Sarah P. Kelly*
Sarah P. Kelly (BBO #664267)
skelly@nutter.com
NUTTER McCLENNEN & FISH LLP
Seaport West
155 Seaport Boulevard
Boston, Massachusetts 02210
(617) 439-2000
(617) 310-9461 (FAX)

Dated:  May 18, 2015

OF COUNSEL:

Yvonne K. Puig*
Texas State Bar No. 16385400
Adam T. Schramek*
Texas State Bar No. 24033045
Eric J. Hoffman*
Texas State Bar No. 24074427

Norton Rose Fulbright US LLP
98 San Jacinto Blvd. Suite 1100
Austin, Texas 78701
(512) 536-2450
(512) 536-4598 (FAX)

Marcy Hogan Greer*
Texas State Bar No. 08417650
mgreer@adjtlaw.com

ALEXANDER DUBOSE JEFFERSON & TOWNSEND LLP
515 Congress, Suite 2350
Austin, Texas 78701
(512) 482-9300
(512) 482-9303

*Appearing *Pro Hac Vice*

## REQUEST FOR ORAL ARGUMENT

Pursuant to L. R. 7.1(d), the Saint Thomas Entities request oral argument on the issues raised in this Opposition.

## CERTIFICATE OF SERVICE

This certifies that a true and accurate copy of the foregoing was served on all parties of record by virtue of the Court's electronic filing system this 18th day of May, 2015.

*/s/ Sarah P. Kelly*
SARAH P. KELLY

2803506.1