# EXHIBIT A

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the

| | |
|---|---|
| In re NECC Production Liaiblity Litigation (MDL) ) | |
| *Plaintiff* ) | |
| v. ) | Civil Action No.  MDL No. 2419; 1:13-md-2419 |
| This document relates to all suits against the Saint Thomas Entities ) | |
| *Defendant* ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:     Liberty Industries, Inc., 133 Commerce St., East Berlin, CT

*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:
See attachment.

| Place: Liberty Industries<br>133 Commerce St.<br>East Berlin, CT | Date and Time:<br>05/21/2015 9:30 am |
|---|---|

The deposition will be recorded by this method:  court reporter and video

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: See attachment

     The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  05/14/2015

          *CLERK OF COURT*
                                                        OR       [signature]
_____              _____
*Signature of Clerk or Deputy Clerk*                     *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
St. Thomas Hospital, Saint Thomas Health & Saint Thomas Network     , who issues or requests this subpoena, are:
Adam Schramek, Norton Rose Fulbright, 98 San Jacinto Blvd, Ste 1100, Austin, TX 78701 512-536-5232

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. MDL No. 2419; 1:13-md-2419

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____40.00_____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
    (i) is a party or a party's officer; or
    (ii) is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    (i) fails to allow a reasonable time to comply;
    (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv) subjects a person to undue burden.
  (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    (i) disclosing a trade secret or other confidential research, development, or commercial information; or
    (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    (i) expressly make the claim; and
    (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**Deposition Topics for Liberty Industries, Inc.**

**Basic corporate structure and background**

1. Liberty's basic corporate structure from 2006 to the present.

2. Identification of Liberty's employees and agents responsible for (1) the NECC/Ameridose cleanroom construction and installation in 2006, (2) any testing or certification of the 2006 cleanroom, and (3) any subsequent work on the 2006 cleanroom, and the training and experience of these employees and agents.

3. Whether Liberty designs and constructs cleanrooms for FDA-registered manufacturers.

**General process for constructing cleanroom**

4. Liberty's process for constructing a cleanroom (including identification of industry standards followed in construction of the cleanroom) so as to decrease the chance of contamination of products manufactured in the cleanroom.

5. Liberty's process to ensure and attain certification of a cleanroom.

6. Liberty's process for ensuring that a cleanroom it constructs complies with industry standards (*e.g.*, the standards of the International Organization for Standardization; Federal Standard 209; or USP 797).

**Interactions with NECC or Ameridose**

7. Liberty's interactions with NECC or Ameridose from 2000 to present.[1]

8. The terms and conditions of the design, construction and installation of the NECC/Ameridose cleanrooms, including without limitation any contract for such work.

9. Liberty's customer contact for each of the NECC/Ameridose cleanrooms.

10. Whether Liberty's construction of the 2006 cleanroom and any subsequent work on the 2006 cleanroom was compliant with industry standards and Liberty's representations to NECC or Ameridose regarding same.

11. Liberty's construction of the NECC/Ameridose cleanroom where the contaminated medication was compounded.[2]

---

[1] Liberty designed and installed three cleanrooms at the NECC facility that were constructed on or around the following dates: October 7, 2005; July 12, 2006; and March 6, 2008. The 2006 cleanroom has been represented as the cleanroom where the contaminated drugs at issue in this litigation were manufactured.

[2] Referred to in this litigation as the 2006 cleanroom or cleanroom 1.

12. Any subsequent work done by Liberty on the cleanroom at NECC/Ameridose where the contaminated medication was compounded, including without limitation the pass through at issue in Exhibits 17 and 18 of Jeffrey Erickson's deposition. This topic includes without limitation all support for the claim that "the concept works" in Exhibit 17.

13. Differences in design between the 2005, 2006, and 2008 NECC/Ameridose cleanrooms.

14. Whether Liberty's construction, installation, testing, and certification of the cleanroom where the contaminated medication was compounded complied with USP 797 and the standards of the International Organization for Standardization ("ISO") (formerly Federal Standard 209).

15. Testing and certification (*e.g.*, "as built," "at rest," "operational") of the 2006 cleanroom where the contaminated medication was compounded.

16. Defects in the cleanroom (*e.g.*, holes and gaps in the ceiling) where the contaminated medication was compounded related to either improper construction of the cleanroom, later work done on the cleanroom, or normal wear and tear.

17. Notifications by NECC or Ameridose (through its employees or agents) to Liberty that the 2006 cleanroom was (1) not properly installed, constructed, certified, tested, or modified; (2) not properly filtering out contaminants as the design and construction intended; or (3) not properly sealed to keep out contaminants as the design and construction intended, and Liberty's response to those notifications, including, but not limited to, communications regarding problems with gaps in the ceiling.

18. Air quality testing and particle testing of the cleanroom where the contaminated medication was compounded.

**Other Customers**

19. All other compounding pharmacies for which Liberty has designed, constructed or installed cleanrooms.

20. All other customers for whom Liberty designed, manufactured or installed a pass through that 1) had strip curtains; and/or 2) was attached to a conveyor belt. This topic includes identification of such customers, the use of the clean rooms at issue, any subsequent change to such pass through, and any complaints or disputes relating to such pass through.

**Documents**

21. The documents previously produced by Liberty in the PSC Repository and any additional documents produced pursuant to the *duces tecum* to be served.

54007425.1

## ATTACHMENT TO SUBPOENA

### DEFINITIONS

A. "Communication," "document," "identify," "person," and "concerning" have the meaning stated in Local Rule 26.5 for the United States District Court for the District of Massachusetts.

B. "Ameridose" means Ameridose, LLC, a Massachusetts limited liability company with its principal offices located at 205 Flanders Road, Westborough, MA, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates.

C. "GDC" means GDC Properties Management, LLC, a Massachusetts limited liability company with its principal offices located at 701 Waverly Street, Framingham, Massachusetts 01702, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates.

D. "Lawsuit" means In re New England Compounding Pharmacy, Inc. Products Liability Litigation, MDL No. 2419, Dkt. No. 1:13-md-2419 (RWZ), filed in the United States District Court for the District of Massachusetts.

E. "Liberty" means Liberty Industries, Inc., a Connecticut corporation with its principal place of business at 133 Commerce Street, East Berlin, Connecticut 06023, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates.

F. "MPA" means methylprednisolone acetate.

G. "MSM" means Medical Sales Management, Inc., a Massachusetts corporation with a principal place of business located at 701 Waverly Street, Framingham, Massachusetts 01702, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates.

H. "NECC" means New England Compounding Pharmacy, Inc., d/b/a New England Compounding Center, a corporation with its principal place of business at 687–705 Waverly Street, Framingham, MA 01702, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates.

I. "NECC facility" refers to the facility located on Waverly Street, Framingham, MA 01702, where compounding of the pharmaceuticals at issue in this Lawsuit occurred.

J. "Victory" means Victory Heating & Air Conditioning Co. Inc./Victory Mechanical Services, Inc., Massachusetts corporations with their principal offices located at 115 Mendon St., Bellingham, Massachusetts 02019, their officers, directors, employees, partners, corporate parent, subsidiaries or affiliates.

K. The singular includes the plural number, and vice versa. The masculine includes the feminine and neutral gender. The past tense includes the present tense where the clear meaning is not distorted by change of tense.

## DOCUMENTS

To the extent not loaded to the PSC Repository in the MDL, bring the following documents to your deposition. Please note, these are the same documents previously requested to which you objected because you claimed a subpoena was required.

1. The complete customer file you maintain for NECC or that is applicable to the NECC facility.

2. All proposals, contracts and any other document containing or reflecting the terms and conditions pursuant to which you provided, or proposed providing, cleanrooms, products, or services at the NECC facility.

3. All marketing materials you provided to NECC or Ameridose from 2006 to 2013.

4. All communications between you on the one hand, and NECC or Ameridose on the other, referring or relating to any cleanrooms, products, or services you provided to NECC or Ameridose.

5. All documents referring or relating to the design, manufacture, installation, or certification of the cleanrooms at the NECC facility.

6. All communications with any person or business entity that cleaned, maintained, certified, or inspected the cleanrooms at the NECC facility.

7. All drawings, schematics, and diagrams concerning the cleanrooms at the NECC facility.

8. All documents relating to certification or inspection of the cleanrooms at the NECC facility.

9. All manuals (including but not limited to any operator's manual, user's manual, maintenance manual, or installation manual) concerning the cleanrooms at the NECC facility.

10. All repair and maintenance records for the cleanrooms at the NECC facility.

11. All contracts, agreements, and proposals between you and any other person or business entity related to the design, manufacture, installation, or certification of the cleanrooms at the NECC facility.

12. All contracts, agreements, and proposals between you and any other person or business entity from which you purchased or sought to purchase materials for the cleanrooms at the NECC facility.

13. All contracts, agreements, and proposals between you and any other person or business entity related to certification or inspection of the cleanrooms at the NECC facility.

14. All documents referring or relating to any products or services provided by Gardner Engineering or PortaFab Corporation at the NECC facility.

15. All documents referring or relating to any malfunction, failure to meet specifications, or failure to keep particle contamination at intended levels with respect to any cleanroom at the NECC facility.

16. All documents referring or relating to testing that you completed—or engaged another person or business entity to complete—in or around the cleanrooms at the NECC facility in 2006 and 2008.

17. All documents referring or relating to customer complaints from NECC or Ameridose relating to any product or service you have ever provided them.

18. All documents referring or relating to complaints by NECC or Ameridose concerning the cleanrooms at the NECC facility.

19. All instructions, policies, protocols, guidelines, suggestions, and warnings that you provided to NECC or Ameridose regarding the cleanrooms at the NECC facility.

20. All documents referring or relating to the recycling center owned by Conigliaro Industries that is adjoining or near the NECC facility.

21. All documents referring or relating to air pressure in the NECC facility.

22. All documents referring or relating to particle testing or counting at the NECC facility.

23. All documents referring or relating to any gaps or spaces in the ceilings of the cleanrooms at the NECC facility.

24. All documents referring or relating to any gaps or spaces around the doors of the cleanrooms at the NECC facility.

25. All documents referring or relating to any modifications made to the ceilings of the cleanrooms at the NECC facility since their installation.

26. All documents referring or relating to sealing, securing, re-sealing or re-securing ceiling tiles in the cleanrooms at the NECC facility.

27. All documents referring or relating to certification of cleanrooms at the NECC facility.

28. All documents referring or relating to any site visit to the NECC facility you undertook prior to the installation of the cleanrooms at the NECC facility.

29. All documents referring or relating to promises, representations or warranties made to NECC or Ameridose.

30. The employment/HR file for any person providing cleanroom design services for any cleanroom at the NECC facility.

31. All organizational charts for your company that applied during any year in which you performed services at the NECC facility.

32. Every page of the liberty-ind.com website as it existed at any point during 2006 or 2008. If such documents are no longer available, produce documents reflecting the current content of your site.