**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

IN RE:  NEW ENGLAND COMPOUNDING   )
         PHARMACY PRODUCTS       )
         LIABILITY LITIGATION       )   **MDL No. 1:13-md-2419-FDS**
                              )
**This Document Relates to:**       )   **Judge Rya Zobel**
                              )
         **All Cases**            )
                              )

**AFFIDAVIT OF MATTHEW P. MORIARTY**

Being first duly sworn, Affiant states:

1.     My name is Matthew P. Moriarty.  I am a lawyer licensed to practice in three states, and have been admitted to practice in 7-9 different federal courts.  I graduated from law school in 1981 and have spent the majority of my practice defending people and companies in scientific litigation involving the practice of medicine, or the making and selling of pharmaceutical products and medical devices.

2.     My Firm was retained by Pharmacists Mutual Insurance Company (PMIC) to defend Ameridose LLC ("AMD") in this litigation.  I have been the member of the Firm primarily involved in the factual workup, discovery, and court appearances in Boston.

3.     In the course of our representation I made reasonable efforts to determine who, among the owners, managers or agents, would qualify by personal or institutional knowledge to testify as to certain facts pertinent to the allegations in the Plaintiffs' Complaints, if required.  In evaluating this issue I took into account things such as knowledge of: the historical development of the business from 2006 until 2012; Ameridose's overall business; what products the Company made, sold or tested; interactions between Ameridose employees and MSM, NECC or other defendants; and the shrinkage of the Company over the years after 2012.

4.     In my professional opinion there were seven people who would even possibly qualify as 30(b)(6) witnesses.  Three would have needed substantial "education" before testifying.  Of the remaining four, two are former employees who would be considered managerial level.  The other two were senior managers or agents, one of them also being a part owner.

5.     Each of those seven individuals has a lawyer.  After the St. Thomas Entities issued a deposition notice I spoke with the people whom I reasonably believed

necessary, and read the pleadings of record in order to ascertain whether any of the seven people would consent to testify as a 30(b)(6) witness. After doing so, it is my understanding that 1) the seven individuals would not consent to testify as a 30(b)(6) witness for Ameridose; and 2) if compelled to take the stand, they would invoke their rights not to testify based on the Fifth Amendment to the United States Constitution.

6.   In my professional opinion, there are no people who could be adequately "educated" to qualify as a meaningful 30(b)(6) witness. Between the limited documents available for searching, and the fact that all owners and key managers or agents will invoke their rights under the Fifth Amendment, meaningful education cannot be done.

7.   I was also involved in the securing of hard and electronic documents in order to fulfill preservation obligations. What follows is based on my personal knowledge combined with discussions with the document vendor.

8.   Typically the vendor "processes" the electronic documents. Processing includes loading them into a searchable format, and entails de-duplication and the elimination of things like system files, as well as Bates stamping. At that point one has a platform from which traditional discovery can take place - the review and production of documents.

9.   Here, among the universe of imaged and preserved documents, it would have been very costly to "process" them, much less sort them into categories, review for attorney-client privilege, etc. There was no reason to do all that work and incur that cost if discovery was stayed and everyone was in settlement mode. Thus, only a limited number of documents were ever loaded into a searchable database. The costs of "processing" all the documents collected would be in excess of $1,000,000. In addition, there would be necessary expense for attorney review for relevance and privilege.

Further Affiant Sayeth Naught.

_____
Matthew P. Moriarty

Sworn to and subscribed before me, a Notary Public in Cuyahoga County, Ohio, this 22nd day of May, 2015.

**PAUL L. JANOWICZ,**
**Attorney**
Notary Public. State of Ohio
My commission has
no expiration date.
Section 147.03 O.R.C.

_____
Notary Public

2

013260.000001 2322313.2