**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | MDL No. 2419<br>Master Dkt. 1:13-md-02419-FDS |
| THIS DOCUMENT RELATES TO:<br><br>All Tennessee Actions. | Judge Rya Zobel |

**PLAINTIFFS' STEERING COMMITTEE'S OPPOSITION TO
TENNESSEE CLINIC DEFENDANTS' MOTION TO COMPEL**

The Plaintiffs' Steering Committee (the "PSC") hereby files this Opposition to the Tennessee Clinic Defendants Motion to Compel (Dkt. No. 1830, the "Motion to Compel").

## INTRODUCTION AND BACKGROUND

The PSC provided responses to the Tennessee Clinic Defendants initial set of discovery requests on December 23, 2014.[1] Four months later the Tennessee Clinic Defendants sent a meet and confer letter claiming, for the first time, that certain responses were objectionable.[2]

The overwhelming majority of responses to which the Tennessee Clinic Defendants take issue relate to the PSC's objections to various Requests for Admission ("RFAs").[3] In their Motion to Compel the Tennessee Clinic Defendants mischaracterize the nature of their RFAs and the nature of the PSC's responses, and the Court should look carefully at each individual RFA to determine whether the PSC's response is truly inadequate.

---

[1] Dkt. No. 1830-19.

[2] Dkt. No. 1830-19.

[3] The PSC attaches their full responses to Tennessee Clinic Defendants' Requests for Admission as Exhibit A. These responses are nearly identical to the PSC's responses to Specialty Surgery Center's Requests for Admission.

1

The Tennessee Clinic Defendants repeatedly oversimplify and mischaracterize the law on RFAs that call for a legal conclusion claiming that RFAs which clearly call for a legal conclusion should be answered because they relate to the facts peculiar to this case.  This is not the law. Even though Rule 36 has been amended to permit RFAs involving the application of law to facts, RFAs that continue to call for a legal conclusions (i.e. those RFAs that request a party admit or deny the meaning of statutes, the existence of legal duties, and potential legal causes of injury) are still not the proper topics covered by a permissible RFA.

Many of the requests posed by the Tennessee Clinic Defendants also require the PSC to conduct sweeping and independent investigations of documents held by third parties.  However, Rule 36 is not a discovery device, and RFAs cannot be used to compel a party to conduct such an investigation on behalf of another party.  The Tennessee Clinic Defendants inaccurately claim they provided documents which support the contentions contained in the RFAs thereby relieving the PSC of any obligation to conduct independent investigations into the truth of each RFA. However, many times the documents the Tennessee Clinic Defendants claim establish the truth of an RFA simply do not have the information necessary to respond to the RFA as posed.

Finally, the Tennessee Clinic Defendants also seek to compel the PSC to respond to certain interrogatories and discovery responses.  It must be noted that the PSC has made available the U.S. Legal Document Repository established under MDL Order No. 6 (Dkt. No. 209) – to all defendants, even absent formal discovery requests requiring the PSC produce these documents.  This repository contains hundreds of thousands of pages of documents gathered by the PSC in this litigation and this repository has been made available to all parties to this litigation.

Many of the interrogatories and requests for production at issue in the Motion to Compel would require the PSC to go beyond making the repository available and insist that the PSC, 1) review the material on the repository and catalogue it on behalf of the Tennessee Clinic Defendants, and 2) produce privileged material that is not currently on the repository.  To the extent that the Tennessee Clinic Defendants require the PSC to undertake such tasks or produce such privileged documents, their Motion to Compel must be denied.

Accordingly, the PSC respectfully requests that the Court deny the Motion to Compel.

## ARGUMENT

I.   **The PSC Should Not Be Compelled To Respond To RFAs That Seek A Legal Conclusion**

    A.   **RFAs Requesting the PSC to Admit or Deny the Existence of A Legal Duty, A Breach of That Duty, or the Legal Cause of an Injury Are Not The Proper Subject Of A Rule 36 RFA.**

Under Fed. R. Civ. P. 36, "[a] party may serve on any other party a written request to admit . . . the truth of . . . facts, the application of law to fact, or opinions about either."[4] It is widely and universally acknowledged, however, "[u]nder Fed. R. Civ. [P.] 36, requests for admission may properly relate to 'the application of law to fact,' but 'requests for admissions cannot be used to compel an admission of a conclusion of law.'"[5]

Here the Tennessee Clinic Defendants claim, without citation to any authority in support, that the RFAs requesting the PSC admit or deny allegations concerning parties and non-parties

---

[4] Fed.R.Civ.Proc. 36(a)(1).

[5] *Playboy Enterprises, Inc. v. Welles*, 60 F.Supp.2d 1050, 1057 (S.D. Cal. 1999); *see also*, *Iantosca v. Benistar Admin Servs., Inc.*, Case No. 08-11785, 2012 U.S. Dist. LEXIS 7896 (D. Mass. 2012); *In re Tobkin*, 578 Fed. Appx. 962 (11th Cir. 2014); *Playboy Enterprises, Inc. v. Welles*, 60 F.Supp.2d 1050, 1057 (S.D. Cal. 1999); *see also Martin v. Safeco Ins. Co. of America*, No. 2:11-cv-01063 MCE KJN, 2012 U.S. Dist. LEXIS 105244 *1 (E.D. Cal. July 27, 2012); *Williamson v. Corr. Med. Servs.*, No. 06-379-SLR, 2009 U.S. Dist. LEXIS 41438 (D. Del. May 14, 2009) *Google Inc. v. American Blind & Wallpaper Factory, Inc.*, No. C 03-5340 JF (RS), 2006 U.S. Dist. LEXIS 101207, *2 (N.D. Cal. Nov. 13, 2006); *Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*, 234 F.R.D. 1 (D.D.C. 2006).

duty, breach, and causation are the type of "application of law to fact" permitted by Rule 36.[6]  It is instructive, however, that the Tennessee Clinic Defendants cannot cite to a specific case in the entirety of American jurisprudence on this point where a party was compelled to provide an answer to RFAs of this nature.[7]

This is not surprising given the nature of the requests.  First, under Tennessee negligence law, "the existence of a duty is a question of law to be determined by the court."  In other words, the existence or non-existence of a duty is a pure question of law.[8]  It follows that whether or not someone breached that duty and whether that breach caused an injury are similarly questions of law that go to ultimate legal issues and not appropriate for a RFA.[9]

The Delaware District Court in a case involving similar allegations of a breach of standard of medical care, sustained a defendant's objections when plaintiff requested admission that certain acts breached legal duties or caused legal injury.[10]

In fact, courts routinely sustain objections to RFAs of this nature on the basis that requests for admission call for a legal conclusion.[11]  The Tennessee Clinic Defendants attempt to make a distinction that because the requests here seek to apply law to the facts of this case, they do not call for an "abstract" legal conclusion and therefore are proper.  This type of distinction has been resoundingly rejected by numerous courts.  Merely because an RFA may nominally

---

[6] Dkt. No. 1830-1 at P.9-11.

[7] *Id.*

[8] *Biscan v. Brown*, 2003 Tenn. App. LEXIS 875, 1 (Tenn. Ct. App. Dec. 15, 2003).

[9] *Lehmann v. Harner*, 31 F.R.D. 303, 303 (D. Md. 1962).Requests for admission are properly objectionable when they call for conclusion of one of the ultimate issues in the case.

[10] *Williamson v. Corr. Med. Servs.*, 2009 U.S. Dist. LEXIS 41438, *8.

[11] *See e.g.*, *Disability Rights Council of Greater Wash.*, 234 F.R.D. 1 (D.D.C. 2006); *Reichenbach v. City of Columbus*, No. 2:03-CV-1132, 2006 U.S. Dist. LEXIS 3058, 2006 WL 143552, at *2 (S.D. Ohio Jan. 19, 2006) (concluding that the defendants properly objected to an RFA asking them to admit that the curb ramp at issue  was not compliant with federal accessibility design standards on the ground that it sought a purely legal conclusion); *Playboy*, 60 F. Supp. 2d at 1057 (noting that a defendant may object to an RFA asking her to admit that she is a "public figure" as defined in Supreme Court case law as improperly seeking a purely legal conclusion).

relate the facts of a case to an issue of law does not mean that the request calls for the application of law to facts, and such an RFA can and often does impermissibly call for a legal conclusion.[12] Courts routinely reject requests for admission that seek to ratify "the legal conclusions that [a party] attach[es] to the operative facts of the case."[13]

If the Tennessee Clinic Defendants wished the PSC to admit or deny the underlying facts of an alleged breach or a cause of an injury, they could do so. But the Tennessee Clinic Defendants simply pose improper requests when they seek an admission or denial as to whether those underlying facts constitute a legal duty, breach, or causation of an injury.[14]

Accordingly, the PSC's objections that the RFAs requesting that the PSC admit or deny the: 1) existence of a legal duty; 2) breach of that duty; and 3) causation of a legal injury are not proper and the PSC's objections that these RFAs improperly ask for a legal conclusion must be sustained.

### B.    Requests Asking The PSC to Admit The Legal Duty of Public Agencies Are Also Improper

Similarly, RFAs 31, 74, 79, 90-92 also request the PSC to admit or deny a purely legal conclusion. For example, RFA 31 states that "Prior to September 18, 2012, the FDA had the authority to inspect, regulate, and if need be, shut down NECC." This requests a pure legal conclusion as to the scope of the FDA's authority over NECC. These requests are virtually identical to the requests at issue in *Disability Rights Council* where the District Court for the

---

[12]*See Music Group Macao Commer. Offshore, Ltd. v. Foote*, 2015 U.S. Dist. LEXIS 16743, *5-6 (N.D. Cal. Feb. 10, 2015).

[13] *Lakehead Pipe Line Co. v. American Home Assur. Co.*, 177 F.R.D. 454, 458 (D. Minn. 1997).

[14] *See id.* (discussing this distinction).

District of Columbia sustained objections that requests requiring a party admit or deny the meaning of federal regulations called for an improper legal conclusion.[15]

The Tennessee Clinic Defendants claim that these requests call for the application of law to fact, namely "whether the agency had regulatory authority (law) over NECC (fact)."[16]  This rationale was resoundingly rejected by the *Disability Rights Council* decision, which held that "it would be inappropriate for a party to demand that the opposing party ratify legal conclusions that the requesting party has simply attached to operative facts."[17]  That is precisely what the RFAs at issue here are requesting.  They are not seeking the application of law to facts as the Tennessee Clinic Defendants suggest; they simply request the PSC to ratify the Tennessee Clinic Defendants' proposed interpretation of the FDA's legal authority.  In other words the contested RFAs "ask [the PSC] to interpret federal laws," which is simply not permitted under Rule 36.[18]

Such requests are not permitted by Rule 36 and the Court should sustain the PSC's objections to these RFAs.

**C.**     **RFA 29 Seeks A Legal Conclusion**

Similarly RFA 29 asks for a legal conclusion.  RFA 29 states that "Prior to September 18, 2012, NECC violated the FDA Compliance Policy Guidance on Compounding in the following ways:

> a.     NECC failed to operate in conformance with applicable state law regulating the practice of pharmacy.
>
> b.     NECC compounded drug products that were commercially available in the

---

[15] *Disability Rights Council*, 234 F.R.D. at 3.

[16] Dkt. No. 1830-1 at 7-8.

[17] *Disability Rights Council*, 234 F.R.D. at 3 citing *Lakehead Pipe Line*, 177 F.R.D. at 458 and *Reichenbach v. City of Columbus*, 2006 U.S. Dist. LEXIS 3058, (S.D. Ohio 2006) (defendants properly objected to a request for admission asking them to admit that the curb ramp at issue was not compliant with the federal accessibility design standards on the ground that it sought a purely legal conclusion).

[18] *Id*.

marketplace or that were essentially copies of commercially available, FDA-approved drug products.

c.    NECC used commercial-scale manufacturing or testing equipment when compounding drug products.

Contrary to the Tennessee Clinic Defendants' claims, this is simply not an application of law to facts as there are no facts alleged in the Request. The Request itself is composed of boilerplate legal conclusions that are simply not tied to any action by NECC that could have complied or not complied with the FDA Compliance Document.

Put differently, on its face, the request calls for a legal conclusion because "it purports to require a party to admit, for example, that a statute or regulation imposes a particular obligation."[19] Rule 36 does not permit such a request, as held by the very case the Tennessee Clinic Defendants cite in support of its position.[20]

## D.    RFAs Requiring the PSC to Admit The Standard of Care Call For Legal Conclusions

The Tennessee Clinic Defendants also sought admission as to the standard of care in a medical malpractice claim. They fail to cite to a single case holding that such a request is proper. This is not surprising as the case law is decidedly against these types of requests for admission.[21]

---

[19] *AngioScore, Inc. v. TriReme Med., Inc.*, Case No. 12-cv-03393-YGR, 2014 U.S. Dist. LEXIS 173700 (N. D. Cal. Dec. 16 2014).

[20] *Id.*, cited by Dkt. No. 1830-1 a n.31; *see also English v. Cowell,* 117 F.R.D. 132, 135 (C.D. Ill. 1986) (holding that a request seeking admissions that the defendant was subject to certain statutes sought improper legal conclusions).

[21] *See e.g.*, *Bovarie v. Schwarzenegger*, Civ. No. 08cv1661 LAB (NLS), 2011 U.S. Dist. LEXIS 17006, at *6 (S.D. Cal. Feb. 22, 2011) (concluding that several requests seeking admissions pertaining to the "medical standard" of care in California and its prisons impermissibly sought admissions of legal conclusions); *see also Brown v. Prison Health Servs.,* 2007 U.S. Dist. LEXIS 98924, *9 (S.D. Ga. Dec. 6, 2007)(RFA seeking admission that actions by defendant medical provider "were reasonable under the circumstances" "smack[s] of legal conclusions, not factual admissions").

Accordingly, the PSC's objections that the RFAs 20, 125, and 130 impermissibly seek a legal conclusion should be sustained.

## II.   The PSC Should Not Be Compelled To Respond To RFAs That Require The PSC Obtain Information From Third Parties

"Rule 36 is not a discovery device. The purpose of the rule is to reduce the costs of litigation by eliminating the necessity of proving facts that are not in substantial dispute, to narrow the scope of disputed issues, and to facilitate the presentation of cases to the trier of fact."[22]  The general rule is that a party must make "reasonable inquiry" in order to secure the information necessary to respond to a Request for Admission.[23]  "Generally, a reasonable inquiry is limited to review and inquiry of those persons and documents that are within the responding party's control."[24]

Here, numerous requests posed by the Tennessee Clinic Defendants required the PSC to obtain documents or information from third parties that are simply not within the PSC's control. The Tennessee Clinic Defendants claim that they provided the PSC the necessary information to respond to a given request, but this is misleading.  Many times the Tennessee Clinic Defendants are simply demanding that the PSC admit or deny the Tennessee Clinic Defendants' particular interpretation of documents and not the content of those documents.

In any event, the Tennessee Clinic Defendants have failed to carry their burden of demonstrating that information is readily available to the PSC for RFAs identified in their motion to compel.

---

[22] *T. Rowe Price Small-Cap Fund v. Oppenheimer & Co.*, 174 F.R.D. 38, 42 (S.D.N.Y. 1997) citing *Donovan v. Carls Drug Co., Inc.*, 703 F.2d 650, 652 (2d Cir. 1983) (Rule 36 admissions may narrow issues and speed the resolution of claims); *Moosman v. Joseph P. Blitz, Inc.*, 358 F.2d 686, 688 (2d Cir. 1966); *Yahaya v. Hua*, 1989 U.S. Dist. LEXIS 14115, No. 87 Civ. 7309 (CES), 1989 WL 214481, at *6 (S.D.N.Y. Nov. 28, 1989); *State of Vermont v. Staco, Inc.*, 684 F. Supp. 822, 829 (D. Vt. 1988); *Thalheim v. Eberheim*, 124 F.R.D. 34, 35 (D. Conn. 1988).

[23] *Id.*

[24] *Id.*

A.    **RFAs related to NECC's Regulatory History Require The PSC To Obtain Documents From The FDA and Massachusetts Board of Pharmacy**

The Tennessee Clinic Defendants misleadingly claim that they have posed RFAs asking the PSC to admit facts in NECC's regulatory history.[25] A careful examination of each RFA will reveal that the Tennessee Clinic Defendants are not actually asking for admission of facts that are "in readily-available sources" as they contend.  For example, RFA 47 states that "Prior to September 18, 2012, the FDA did not take action against NECC after sending the December 4, 2006, Warning Letter, even though the Warning Letter threatened 'additional regulatory action without further notice.'"  There is no readily available document in the public domain that confirms the FDA "took no action" against NECC following the December 4, 2006 letter.  The FDA has not so stated in any publicly available document; that version of the events is the reflection of Tennessee Clinic Defendants' interpretation of the regulatory history.  What the FDA did and did not do with NECC following the NECC enforcement action is information that is clearly within the possession, custody, or control of the FDA, and the Tennessee Clinic Defendants should be required to obtain this information from the FDA.  They cannot, through an RFA, demand the PSC undertake this investigation on their behalf.   "Rule 36 is not a discovery device."[26]

All other RFAs upon which the Tennessee Clinic Defendants now take issue suffer this same fatal flaw.  When RFAs request the PSC to admit or deny that an event took place, the PSC, if such information was readily available, admitted such request.[27]  However, when RFAs demanded that the PSC admit or deny that the FDA "took no action," or "allowed" something to

---

[25] Dkt. No. 1830-1 at P. 10.

[26] *T. Rowe Price Small-Cap*, 174 F.R.D. at 42.

[27] *See e.g.* RFA No. 48.

take place, or "never" did or did not do an action, or took some action – these types of requests simply ask the PSC to admit or deny information that is not readily available.  This is so because principally these RFAs request the PSC admit or deny the motivations of the FDA or Massachusetts Board of Pharmacy or require the PSC to admit or deny the cause and effect of various events.[28]

In other instances, the Tennessee Clinic Defendants claim that they provided the source documents related to the facts of an RFA, but a review of those documents are not consistent with the statements in the RFA.  For example, RFA 84 states "Between 2002 and 2004, the Mass BoP received complaints from the boards of pharmacy for the states of Texas, South Dakota, Iowa, and Wisconsin reporting that NECC was illegally soliciting out-of-state prescriptions…" The Tennessee Clinic Defendants claim this information is readily available from the documents made available by the Massachusetts Board of Pharmacy.  This is misleading.  The documents made available from the Massachusetts Board of Pharmacy make clear that the board received a complaint from "a surgical center in Rapid City, SD…" and that these complaints did not come from the "boards of pharmacy" as the RFA suggests.  To fully answer the RFA, then, the PSC would need to obtain every communication the Massachusetts Board of Pharmacy received from the various state boards, if they exist, and determine whether those documents are consistent with the RFA.  Rule 36 does not and cannot impose such a burden.[29]  If the Tennessee Clinic Defendants want to know what complaints the Massachusetts Board of Pharmacy received from these other boards of pharmacy it can ask the Massachusetts Board of Pharmacy, and the PSC is not required to undertake this investigation on the Tennessee Clinic Defendants' behalf.

---

[28] *See e.g.* RFA 84, Between 2002 and 2004 the Mass. BoP received complaints from the boards of pharmacy for the states of Texas, South Dakota, Iowa, and Wisconsin reporting that NECC was illegally soliciting out-of-state prescriptions for office use, but the Mass. BoP allowed NECC to continue to compound medications.

[29] *See Henry v. Champlain enterprises, Inc.*, 212 F.R.D. 73 (N.D.N.Y. 2003) (collecting cases and authorities).

**B.**   **The Tennessee Clinic Defendants Did Not Provide Sufficient Information To The PSC To Answer RFAs As The Tennessee Clinic Defendants Allege**

The Tennessee Clinic Defendants next claim that the PSC "refused to respond to multiple RFAs even though these Defendants provided a citation to the relevant information."[30]  Once again this is misleading and mischaracterizes the nature of the information provided and the relevant Requests for Admission.

For example, RFA 115 requests that the PSC admit that "Seventy-nine-point-four percent (79.4%) of a representative sample of acute-care hospitals participating in Medicare that used compounded sterile preparations outsourced the compounding to a supplier."  In support of this RFA, the Tennessee Clinic Defendants produced a survey from the Office of Inspector General which does not contain this exact quote.  Instead, pulling from various sources of the report itself, it could be concluded that this fact is consistent with this single survey's results.  But the RFA does not request that the PSC admit that this finding was a result of the survey; it requests the PSC to admit as a non-rebuttable fact that the survey's results are true and accurate.  The results from a single government-sponsored survey are simply not sufficient to provide the necessary information to admit or deny the RFA as posed.  The only method available for the PSC to obtain the information to fully and appropriately respond to this RFA would be to conduct a survey of a "representative sample of acute-care hospitals participating in Medicare" and see if those hospitals use compounded sterile preparations outsourced to a compounding supplier.  Again, Rule 36 cannot be used to impose such a duty upon the PSC.[31]

---

[30] Dkt. No. 1830-1 at P. 12.

[31] See *Lumpkin v. Meskill*, 64 F.R.D. 673, 678-679 (D. Conn. 1974), finding defendant's objection to RFA requesting admission of accuracy of statistics contained in plaintiff's expert's report based on "valid concerns" and requiring a response only where defendant also had access to study author, his notes and raw data on which the report was based.

This is a consistent problem with the RFAs posed by the Tennessee Clinic Defendants. RFA 21 requests the PSC to admit that the "median response time by the FDA to federal Freedom of Information Act requests in calendar year 2011 was between 21 and 40 days for 'simple' requests and between 181 and 200 days for 'complex requests.'"  The Tennessee Clinic Defendants provide a chart purportedly from www.foia.gov in support of this request, but the PSC was unable to reproduce the same chart.  In any event, the chart provided to the PSC provided the response time for the government's "fiscal" year, not the "calendar" year as used in the RFA.

Put simply, too often, the RFAs as posed were not supported by the documents provided by the Tennessee Clinic Defendants, and to respond to the RFAs would require the PSC investigate the knowledge and documents of independent third parties.  Rule 36 cannot and should not be used to impose such a burden upon the PSC.[32]

Accordingly, the PSC's objections regarding RFAs 21-22, 34, 94, 108, 110, 114-125, 131-140 should be sustained.[33]

## C.   RFAs Requesting The PSC Admit That Information Does Not Exist Are Anappropriate

The Tennessee Clinic Defendants next take issue with the PSC's refusal to answer questions that information does not exist.  For example, RFA 80 requests the PSC to admit that "[p]rior to September 18, 2012, a search on the Mass. BoP website for regulatory actions against NECC, Barry Cadden, Lisa Cadden, and/or Glenn Chin would have revealed no disciplinary

---

[32] *See Henry.*, 212 F.R.D. 73 (collecting cases and authorities); *T. Rowe Price Small-Cap*, 174 F.R.D. at 42.

[33] It should also be noted that the PSC objected to many of these Requests on additional grounds other than information not being readily available.  The Tennessee Clinic Defendants have failed to address these other objections for the PSC's refusal to admit or deny these requests, and the Tennessee Clinic Defendants' Motion to Compel should be denied on this ground alone.

actions."  This request is unlimited in time, meaning the request functionally requests the PSC to admit or deny the content of a website for every day prior to September 18, 2012.  This is simply not an appropriate request for an RFA.  If the Tennessee Clinic Defendants want to know the content of the Massachusetts Board of Pharmacy website for a given period of time, it can ask the Massachusetts Board of Pharmacy.

###       D.        The PSC Agreed To Amend Its Responses To RFAs 95, 101, And 107

The PSC has agreed to amend its responses to admit these RFAs and therefore have mooted this portion of the Motion to Compel.

### Interrogatories and Requests for Production

### I.        The PSC Provided The Factual Basis for Its Denials of RFAs or Will Agree to Supplement RFA Responses To Contain This Information

The Tennessee Clinic Defendants also seek to compel the PSC to provide the factual basis for its denials of certain RFAs.  The PSC responds to each such request as follows:

- The information requested by RFAs 1-2 would require expert opinion and is not timely at present under the Court's scheduling order, and in any event the PSC has provided the substantive information already on the face of its response to those RFAs.

- The PSC will amend its response to RFAs 39, 41, 67, and 113 to include substantive responses for its denial.

- The basis for the PSC's denial regarding RFA 66 is contained within the response.

- The PSC agreed to admit RFA 107 and therefore this request is moot.

  This should fully address the issues raised in §2(a) of the Motion to Compel.

## II.  The PSC's Responses To ROG 4 and ROG 10 and RFP 3, 5, 6 and 8 Are Appropriate

Interrogatory No. 4 requests the PSC "[p]rovide the information required by Federal Rule of Civil Procedure 26(a)(1) for the Plaintiffs' claims against the following parties" and lists a number of Affiliated Defendants and National Defendants.  None of the Affiliated Defendants or National Defendants listed are parties to complaints in Tennessee.

Rule 26(a)(1) is strictly limited to the information that a party "may use to support its claims or defenses."  This language has repeatedly been interpreted to mean the information a party intends to use at trial.[34]

Since Interrogatory No. 4 seeks this information for entities and individuals that are not parties to the Tennessee cases and since cases against the listed entities have settled or otherwise resolved, the PSC does not intend to use any documents or witnesses from these entities as part of its case at trial.  Therefore, the PSC's response as stated is appropriate.

Interrogatory No. 10 requests the PSC "identify and describe in detail the factual basis for the allegation that "GDC maintained a high degree of control over the premises leased by NECC."  It is unclear how this request seeks information that will lead to the discovery of admissible evidence.  This allegation appears in the Complaint as it relates to the Affiliated Defendants' potential joint enterprise liability.  It is well documented that NECC, Ameridose, GDC, and MSM shared common control and ownership that could give rise to a joint enterprise theory of recovery, and this allegation as it appears in the Master Complaint is meant to address this liability.  The PSC's response to Interrogatory No. 10 makes this clear.  As GDC's liability in this case may arise strictly from its relationship with NECC and not as a result of its own

---

[34] *See e.g.*, *Dean v. New Werner Holding Co.*, 2008 U.S. Dist. LEXIS 49519 (D. Kan. June 26, 2008).

negligence, Interrogatory No. 10 simply seeks information that is no longer relevant to claims now pending in this action.  Therefore, the PSC should not be compelled to respond to this Interrogatory.

The Tennessee Clinic Defendants also claim that the PSC should supplement their response to RFPs 3, 5, 6, and 8 to specifically identify the documents in the repository that are responsive to each request.[35]  However, there is nothing in Rule 34 that requires a party to specifically identify what documents produced are responsive to each discovery request, and the Tennessee Clinic Defendants' fail to cite to any authority whatsoever for this proposition.[36]  Moreover, the PSC has maintained the document repositories in this case for over two years, and has provided defendants access to this repository even without the need for defendants to produce document requests to the PSC.  Demanding that the PSC also catalogue each of the hundreds of thousands of documents in this repository to determine which are and are not responsive to individual discovery requests is unduly burdensome and serves no functional purpose other than to impose additional busy work on the PSC.  Rule 34 does not and cannot compel such a result, and the Tennessee Clinic Defendants' Motion to Compel the PSC to perform this wholly worthless task should be denied.

Additionally, the Tennessee Clinic Defendants request that the PSC also supplement the production to include "the document requests sent to the settling parties [and] the settling parties' written responses."[37]  Presumably this request relates to RFP No. 6 which requests the PSC

> "Produce copies of all documents, other than those available on the
> document repositories as of November 1, 2014, sent to or received

---

[35] Dkt. No. 1830-1 at P. 17 ("It is impossible to know whether the documents on the repository satisfy the Defendants' requests and, if they do, which documents satisfy which request.")

[36] *See* Rule 34(b)(2)(B) "Responding to Each Item. For each item or category, the response must either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons."

[37] Dkt. No. 1830-1 at 17.

from the Plaintiffs, counsel for the Plaintiffs, or any representative
or agent of the Plaintiffs on the one hand, and any of the following,
including any employee, representative, or agent of the following:

(a) NECC;

(b) Barry Cadden;

(c) Lisa Cadden;

(d) Gregory Conigliaro;

(e) Douglas Conigliaro;

(f) Carla Conigliaro;

(g) Glenn Chin;

(h) Joseph Connolly;

(i) Ameridose;

(j) GDC Properties, Management;

(k) Medical Sales Management;

(l) Medical Sales Management, SW;

(m) John Notarianni;

(n) Mario Giamei;

(o) Liberty Industries;

(p) Victory Mechanical Services/Victory Heating & Air Conditioning,

Co.;

(q) UniFirst;

(r) ARL Bio Pharma;

(s) Scientific Air Analysis;

(t) Alert Scientific;

(u) Medisca;

(v) Professional Compounding Centers of America;

(w) Pharmacy Support, Inc.;

(x) United States Food and Drug Administration;

(y) United States Center for Disease Control;

(z) United States Drug Enforcement Administration;

(aa) Massachusetts Board of Pharmacy;

(bb) Colorado Board of Pharmacy;

(cc) Tennessee Board of Pharmacy;

(dd) Tennessee Department of Health;

(ee) Any other state board of pharmacy or department of health; and

(ff) any additional parties that the Plaintiffs believe are responsible, in

whole or in part, for the Plaintiffs' injuries and/or death."

At the outset, it not clear to the PSC that this Request for Production would include such communications between the PSC and the "settling parties" as the Tennessee Clinic Defendants now seek.  The request refers to "plaintiffs" and "plaintiffs' counsel," apparently referring to counsel for Tennessee plaintiffs.  When the Tennessee Clinic Defendants sought information specifically from the PSC it clearly identified so in the request.[38]

In any event, even assuming the request could reasonably be read so broadly as to encompass the documents the Tennessee Clinic Defendants now seek, several problems arise with such a request.

Any request that the PSC produce any written communication with any settling party

---

[38] *See e.g.* Interrogatory No. 2 asking "Does the PSC know of any purchaser or potential purchaser of pharmaceutical products from NECC who performed any of the due diligence the PSC alleges in paragraph 193…"

requesting information would be unduly burdensome.  It would require the PSC to review years worth of email correspondence (recall that the first cases filed in the District of Massachusetts date from the fall of 2012) and determine whether any such correspondence is responsive to such a request.  Just locating all correspondence between the seven firms on the PSC and the 30 defendants listed in the Request would be a Herculean task.  For the PSC to then review all of that correspondence for relevance and privilege (discussed below) would be a massive undertaking.  Rule 26 should not be read to impose such broad duties on the PSC when the Tennessee Clinic Defendants have failed to show any relevance.

Moreover, an overwhelming number of such responsive documents would be subject to either a mediation privilege and/or common interest privilege and therefore not discoverable.[39] All of the settling parties listed in RFP 6 participated in mediations that resulted in settlements, meaning those parties are clearly covered by the Court's Mediation Order.[40]

The Mediation Order and the private mediation agreements entered into between particular parties preclude the PSC from producing materials produced in or created as part of mediations.[41]  The Court's Mediation Order specifically states that,

> "[a]ll such documents produced or exchanged in connection within the mediation shall be deemed confidential for purposes of mediation, and shall not be admissible in any later proceeding except to the extent necessary to address the sufficiency of such production, or relating to failure to mediate in good faith.  Such documents, if filed with the Court, shall be filed under seal.  No parties participating in the mediation program shall disclose information obtained in the mediation program to anyone other than other participants in the mediation program (including the mediator), the Bankruptcy Court, or this Court.  All documents supplied by any participant during the mediation process will be

---

[39] This objection would apply specifically to the entities and individuals identified in RFP No. 6 Part a-r.

[40] Dkt. No. 394.

[41] A mediation privilege also applies to communications between, on the one hand, OCC, PSC, and Trustee, and, on the other hand, settling defendants.  *See id.*

> returned in the event the mediation process is not successful, with no copy of any such document being retained by any other party. The relevant parties may mutually agree, however, to retain documents that ordinarily would be produced or obtained during discovery and are encouraged to so agree to minimize costs.

In other words, under the Court's own order, the documents the Tennessee Clinic Defendants seek to obtain from the PSC are privileged and not subject to production.[42] This makes perfect sense given the robust public policy favoring the resolution of disputes through mediation and the universal understanding that "confidentiality is an important feature of the mediation and other alternative dispute resolution processes."[43] Here, the Tennessee Clinic Defendants have made no attempt to demonstrate why this privilege should not and does not apply, and the Tennessee Clinic Defendants' attempts to compel the PSC to produce clearly privileged material should be denied.

III.    **The PSC Should Not Be Compelled To Respond To Contentious Interrogatories Until The Close of Discovery**

The Tennessee Clinic Defendants also seek an order compelling the PSC to respond to contentious interrogatories 2, 3, 8, 11, and 13.[44]   At the outset, the PSC also objected on other grounds to each of these interrogatories beyond the fact that they are contentious and should be answered only at the end of discovery.  The Tennessee Clinic Defendants make no attempt to address these other objections, and their Motion to Compel responses to these interrogatories should be denied on this basis alone.

---

[42] *Id.*

[43] *Savage & Assocs. P.C. v. K&L Gates LLP* (*In re Teligent, Inc.*), 640 F.3d 53, 57 (2d Cir. N.Y. 2011) (collecting cases on mediation privilege)

[44] Dkt. No. 1830-1 at 18-19.

In any event, Rule 33(a)(2) permits the Court to "order that [an] interrogatory need not [be] answered until designated discovery is complete…"[45] "Courts using their Rule 33(a)(2) discretion generally disfavor contention interrogatories asked before discovery is undertaken."[46] If a party wants a contentious interrogatory answered prior to the close of discovery, "the moving party must demonstrate that interrogatory responses would contribute meaningfully to: (1) clarifying the issues in the case; (2) narrowing the scope of the dispute; (3) setting up early settlement discussion; or (4) exposing a substantial basis for a motion under Rule 11 or Rule 56."[47]

Here, the Tennessee Clinic Defendants have made no attempt to make any showing that the interrogatories requested meet any of the four criteria.[48] Accordingly, the PSC should be permitted to respond to these interrogatories at the close of discovery.[49]

**IV     The PSC Will Agree To Supplement Its Responses to Interrogatories No. 5 and 7 Thereby Mooting this Portion of the Motion to Compel.**

The PSC will agree to supplement its response to this interrogatory to identify communications with Mr. Kelvas. The PSC has agreed to supplement its response to Interrogatory No. 7 so long as the Tennessee Clinic Defendants agree to limit the scope of the request to those communications of which the PSC is aware.

## CONCLUSION AND REQUEST FOR RELIEF

The PSC requests that the Court deny the Motion to Compel.

---

[45] Rule 33(a)(2).

[46] *In re eBay Seller Antitrust Litig.*, 2008 U.S. Dist. LEXIS 102815, *3-4 (N.D. Cal. Dec. 11, 2008)

[47] *Id.* citing *In re Convergent Technologies Sec. Litig.*, 108 F.R.D. 328, 332 (N.D. Cal. 1985) presents a meaningful summary of the various types of contention interrogatories.

[48] *See generally*, Dkt. No. 1830-1 at 18-19.

[49] *See In re eBay Seller Antitrust Litig.,* 2008 U.S. Dist. LEXIS 102815, *6 (holding that contentious interrogatories were premature and denying motion to compel early answering of such interrogatories); *City & County of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 222 (N.D. Cal. 2003) (determining that plaintiffs need not respond to defendants' broad contention interrogatories at the early stage of litigation); *Fischer*, 143 F.R.D. at 96 (denying contention interrogatories where substantial discovery had not been completed).

Dated:  May 26, 2015

Respectfully submitted,

**/s/ Benjamin A. Gastel**
J. Gerard Stranch, IV
Benjamin A. Gastel
BRANSETTER, STRANCH & JENNINGS
PLLC
227 Second Avenue North
Nashville, TN  37201
Telephone:  (615) 254-8801
Facsimile:  (615) 255-5419
gerards@branstetterlaw.com
beng@branstetterlaw.com

*Plaintiff's Steering Committee and TN State
Chair*

Thomas M. Sobol
Kristen Johnson
HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA  02142
Telephone:  (617) 482-3700
Facsimile:  (617) 482-3003
tom@hbsslaw.com
kristenj@hbsslaw.com

*Plaintiffs' Lead Counsel*

Elizabeth J. Cabraser
Mark P. Chalos
Annika K. Martin
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
150 Fourth Avenue North, Suite 1650
Nashville, TN 37219-2417
Telephone:  615.313.9000
Facsimile:  615.313.9965
ecabraser@lchb.com
mchalos@lchb.com
akmartin@lchb.com

*Federal/State Liaison*

Marc E. Lipton
LIPTON LAW
18930 W. 10 Mile Road
Southfield, MI  48075
Telephone:  (248) 557-1688
Facsimile:  (248) 557-6344
marc@liptonlawcentercom

Kim Dougherty
JANET, JENNER & SUGGS, LLC
31 St. James Avenue, Suite 365
Boston, MA  02116
Telephone:  (617) 933-1265
kdougherty@myadvocates.com

Patrick T. Fennell
CRANDALL & KATT
366 Elm Avenue, S.W.
Roanoke, VA  24016
Telephone:  (540) 342-2000
pfennel@crandalllaw.com

Mark Zamora
ZAMORA FIRM
6 Concourse Way, 22nd Floor
Atlanta, GA  30328
Telephone:  (404) 451-7781
Facsimile:  (404) 506-9223
marc@markzamora.com

*Plaintiffs' Steering Committee*

## **CERTIFICATE OF SERVICE**

I, Benjamin A. Gastel, hereby certify that I caused a copy of the foregoing to be filed electronically via the Court's electronic filing system. Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system, and notice of these filings will be sent to these parties by operation of the Court's electronic filing system.

Dated: May 26, 2015

**/s/ Benjamin A. Gastel**
Benjamin A. Gastel
