# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

IN RE NEW ENGLAND COMPOUNDING            )
PHARMACY, INC. PRODUCTS LIABILITY        )     MDL No. 02419
LITIGATION                               )     Docket No. 1:13-md-2419-RWZ
                                         )
_____  )
                                         )
This document relates to:                )
                                         )
Handy v. Box Hill Surgery Center, LLC, et al.    )
No: 1:14-cv-14019-RWZ                     )
                                         )
Armetta v. Box Hill Surgery Center, LLC, et al.  )
No. 1:14-cv-14022-RWZ                     )
                                         )
Torbeck v. Box Hill Surgery Center, LLC, et al.  )
No. 1:14-cv-14023-RWZ                     )
                                         )
Kashi v. Box Hill Surgery Center, LLC, et al.    )
No. 1:14-cv-14026-RWZ                     )
                                         )
Bowman v. Box Hill Surgery Center, LLC, et al.   )
No. 1:14-cv-14028-RWZ                     )
                                         )
Dreisch v. Box Hill Surgery Center, LLC, et al.  )
No. 1:14-cv-14029-RWZ                     )
                                         )
Davis v. Box Hill Surgery Center, LLC, et al.    )
No. 1:14-cv-14033-RWZ                     )
                                         )
Farthing v. Box Hill Surgery Center, LLC, et al. )
No. 1:14-cv-14036-RWZ                     )

## BOX HILL DEFENDANTS' MOTION FOR STAY OR TO EXTEND THE COMMON ISSUE FACT DISCOVERY DEADLINE TO APRIL 1, 2016 AND OPPOSITION TO PLAINTIFF STEERING COMMITTEE'S CROSS MOTION TO AMEND MDL ORDER NO. 9

Defendants, Box Hill Surgery Center, L.L.C., Ritu T. Bhambhani, M.D., and Ritu T.

Bhambhani, M.D., L.L.C. (hereinafter, the "Box Hill Defendants" or "Box Hill"), now move

before this Honorable Court for a temporary stay or, in the alternative, to modify MDL Order

No. 9, Order Regarding Common Issue Discovery [Dkt. 1425] ("CMO No. 9") to extend the

deadline until April 1, 2016, for the Box Hill and Maryland Defendants to complete common issue fact discovery, for the reasons outlined below. This Motion also acts as an Opposition to the Plaintiffs' Steering Committee's Cross Motion to Amend MDL Order No. 9.[1]

### Preliminary Statement

The legal authority necessary to support the instant motion has been previously cited by Counsel for the St. Thomas Entities (Dkt. 1850) and the Premier Defendants (Dkt. 1852) and is being adopted herein to avoid duplication and repetition.  There are a few distinguishing factors, however, that set the moving defendants apart from the St. Thomas Entities and the Premier Defendants. These added differences justify a stay pursuant to the proposal made by the Plaintiffs' Steering Committee ("PSC"), which they seek to apply to other similarly situated Clinic Defendants.[2]  In the alternative, if a stay is not granted, the circumstances surrounding the cases of the Box Hill defendants and other potential Maryland defendants require additional time for the completion of common issue fact discovery and extension of CMO No. 9.  Accordingly, for the reasons stated below and for the reasons and authority stated in the previous submissions by the St. Thomas Entities (Dkt. 1850) and the Premier Defendants (Dkt. 1852), the Box Hill Defendants now ask this Honorable Court to amend CMO No. 9 to subject Box Hill to the same temporary stay requested by the PSC as to other Clinic Defendants as outlined in Dkt. 1867 or, in the alternative, extend the deadline for the completion of common issue fact discovery to April 1, 2016.

### Statement of Facts/Procedural History

The court is well aware of the underlying facts of the case as they pertain to NECC, the so-called "insider" and "affiliated" defendants, and the National Defendants.  However, the Box Hill Defendants and their role in this case should be introduced.  The PSC has chosen to bring

---

[1] *See* Dkt. 1867 and 1868.
[2] Dkt. 1867.

suit against Box Hill Surgery Center, LLC; Ritu Bhambhani, M.D.; and Ritu T. Bhambhani, M.D., LLC, for administering MPA that was contaminated by NECC and its national counterparts. To date, Box Hill is facing eight (8) lawsuits by or on behalf of as many patients.

Dr. Bhambhani is a Maryland solo practitioner of anesthesiology and pain medicine. Her practice group is Ritu T. Bhambhani, M.D., LLC. When she performs epidural steroid injections, she does it at her surgery center, entitled "Box Hill Surgery Center," which is located in Harford County, Maryland. These entities make up the "Box Hill Defendants." To be clear, Box Hill Surgery Center is not a hospital conglomerate or a large facility with multiple departments, clinics or physicians. Dr. Bhambhani has been practicing medicine for 15 years and through Box Hill for 7 years.

Dr. Bhambhani had used preservative free MPA compounded by NECC with no adverse issues related to the same even before starting her practice at Box Hill. Similar to other physicians and Clinic Defendants, Dr. Bhambhani had absolutely no knowledge of the actual or potential for contamination of the MPA purchased from NECC. There is also no proof that Dr. Bhambhani or the Box Hill Defendants knew or even should have known that the vials of MPA were contaminated. The responsible parties in this matter and those whom Box Hill is entitled to blame and/or seek proportionate fault are NECC, the individual "Insiders" (Glenn Chin, the Caddens, the Conigliaros and others), the Affiliated Defendants (Ameridose, MSM, GDC, and others), the National Defendants (Liberty, Victory, Unifirst, ARL and others), and Third Parties or Non-Parties, such as the FDA, Massachusetts Board of Registration in Pharmacy, the Maryland Board of Pharmacy, the Maryland Board of Physicians, and the Maryland Department of Health and Mental Hygiene, among others. As in many other cases in this MDL, including through the Tennessee Defendants and the Premier Defendants, the PSC has been placed on notice about these issues.

The Box Hill Defendants were initially sued in the Circuit Court for Baltimore County,[3]
Maryland, along with many of the above listed co-defendants, on or about September 3, 2014.
Co-Defendant Ameridose requested removal to the U.S. District Court of Maryland and a
Conditional Transfer Order was issued for the MDL in this Court on or about October 23, 2014.
As such, Box Hill did not fall under the jurisdiction of this Court or MDL until the beginning of
November 2014, when the automatic seven day stay of transfer was lifted.

Subsequently, in lieu of an Answer, the Box Hill Defendants filed Motions to Dismiss on
or about January 13, 2015, in each of the eight actions against them by agreement.[4] There was
no opposition briefing by the PSC while the PSC and many Clinic Defendants attempted to
streamline the motion to dismiss process for all Clinic Defendants, the PSC, and the Court.
While that Herculean task could not be accomplished, the PSC and Box Hill agreed by
stipulation to a full briefing schedule. Arguments on the Box Hill Defendants' motions to
dismiss on more limited grounds are scheduled for August 5, 2015. Once the parties have a
ruling on these motions by the Court, the PSC will be put on direct notice from the Box Hill
Defendants through the filing of their Answers and Cross-Claims asserting the above-referenced
arguments and defenses against these other parties and non-parties. At this time, however, there
are open motions to dismiss the claims against Box Hill, and the Box Hill Defendants have yet to
file an Answer to the Complaint in these cases. In fact, the three year statute of limitations in
Maryland[5] has yet to run, and the PSC has informed Box Hill and the Court that they expect to
file dozens of additional cases against Box Hill and apparently hundreds of additional cases
against other Maryland Clinic Defendants.

---

[3] Box Hill does not concede that Baltimore County is the proper venue for these lawsuits in State Court. In fact, the
Box Hill Defendants filed motions to dismiss or to transfer venue to the Circuit Court for Harford County soon after
they were served with the Complaints. However, before those motions to dismiss or to transfer venue could be
addressed, the case was stayed in the Circuit Court for Baltimore County and removed to the U.S. District Court by
Notice of Affiliated co-defendant Ameridose.
[4] Dkt. 1639.
[5] Md. Code, Cts. & Jud. Proc. Art., § 5-109.

In order to support their valid and necessary defenses, Box Hill must conduct discovery and develop evidence to be presented at the time of trial. Much of the discovery necessary to prove the fault of NECC, its insiders and national defendants, and possibly the third-party defendants is the same discovery that is being pursued by the St. Thomas Entities. To that end, St. Thomas has been requesting, noticing and scheduling the necessary depositions. As stated in Case Management Order No. 10 (Dkt. 1426), which governs depositions, one deposition of each defendant and fact witness is being coordinated to apply to all defendants. Premier has also noticed the depositions of Glenn Chin and Barry Cadden and served separate written requests for discovery against the NECC insiders including the Caddens, Conigliaros, Chin and others. The Box Hill Defendants also intend to serve their own written requests for discovery. In addition, the Box Hill Defendants anticipate the likelihood of engaging in discovery with other Maryland physicians and clinics, who purchased MPA from NECC and who have been threatened with lawsuits by their patients. It will also be necessary for all of the Maryland defendants, even those who are not yet part of this MDL, to conduct common issue discovery as it relates to the multitude of Maryland cases.

Discovery Efforts

The PSC has conducted the depositions of several fact witnesses from the St. Thomas Entities, the Premier Defendants, the so-called Tennessee Clinic Defendants and National Defendant Liberty Industries, Inc. The Box Hill discovery efforts to date have primarily mirrored those pursued by the St. Thomas Entities, Tennessee Clinic Defendants and Premier Defendants. It is respectfully requested that this Honorable Court take notice of the efforts put forth thus far against NECC, the Insider, Affiliated and National Defendants, as well as non-parties such as the FDA and Massachusetts Board of Registration in Pharmacy. It is respectfully requested that this Honorable Court take further notice that these depositions and document requests have been

5

delayed either by way of rescheduling or, as in many cases, because of the invocation of the Fifth Amendment, other motions for protective order, or claims that discovery should not apply because of the pendency of Bankruptcy or mediation/settlement. While the direct noticing parties have attempted to work these issues out, there appears to be a stalemate. Progress in discovery is stalled or moving at a snail's pace. While some of these disagreements may be resolved at the May 28, 2015 status conference, that does not ensure that discovery will proceed rapidly, especially given the history and posture of the PSC and other parties. Even if discovery proceeds, many things have to be accomplished.

Regardless, discovery has been delayed significantly. To date, the depositions of more than twenty (20) witnesses have been noticed, and either postponed or canceled due to the filing of motions for protective order. Depositions continue to be postponed, as outlined in the previously referenced motions of the St. Thomas Entities and the Premier Defendants.[6] Each deposition must be rescheduled and completed. While the Tennessee Defendants and the Premier Defendants have taken the front seat in scheduling and managing many of these other necessary depositions, the testimony may only be elicited once and is crucial to Box Hill's defense. In addition, to these already necessary depositions, many additional depositions will be necessary including the depositions of Dr. Bhambhani and other as yet unidentified physicians and office staff for other Maryland clinics, as well as several Maryland state agencies and regulatory departments.

<u>DISCUSSION</u>

As it currently stands, common issue discovery is governed by the Court's MDL Order No. 9, Order Regarding Common Issue Discovery [Dkt. 1425], which was entered by Magistrate Judge Boal on or about September 18, 2014. The current deadline for the close of common issue

---

[6] *See* Dkt. 1850 and 1851.

fact discovery is June 15, 2015. All parties agree that that deadline is now unattainable despite the significant efforts of many.

### A. A Stay of Discovery as to the Box Hill Defendants Consistent With the Stay Outlined Against Ninety Percent of the Other Clinic Defendants is the Appropriate Relief

The PSC seeks a stay as outlined in Dkt. 1867 for Clinic Defendants with five or fewer cases.[7] The Box Hill Defendants have eight lawsuits filed against them, and the PSC argues that they should not be subject to the stay, but rather a separate and distinct common issue deadline.

In support of their motion, the PSC suggests that Box Hill should have been more vocal or that they should have opposed CMO No. 9 in September of 2014, before it was entered by the Court.[8] The Box Hill Defendants, however, were not yet defendants in this MDL at that point and had no ability to comment on or influence the outcome of the PSC proposal for CMO No. 9. While the PSC intended CMO No. 9 to set deadlines for all "pending cases" at the time it was entered,[9] none of the cases against Box Hill were yet pending in the MDL. In fact, while the PSC stated that the Box Hill Defendants have been "named in individual cases in this MDL since August 2014,"[10] that simply is not true as explained above. Now, eight months later, the PSC seeks a stay for all of the other Clinic Defendants in that same position with five or fewer cases. However, the PSC wishes to exempt Box Hill when it only has three additional cases. The PSC wants to group Box Hill with the Tennessee and New Jersey Defendants. This is in stark contrast to the significant number of cases that have been filed against these other exempted defendants

---

[7] A footnote by the PSC in Dkt. 1868 indicates that the stay will apply to defendants with eight or fewer cases. Dkt. 1868, fn. 31, at 21-22. This appears to be a typo, but is consistent with the initial proposal by the PSC to Box Hill during a meet and confer and would subject Box Hill to the stay. However, the PSC decided to arbitrarily change that threshold number to 5, when it was noted that the proposal as written would also apply to Box Hill.

[8] Dkt. 1868, at 2.

[9] *Id.* at 3.

[10] Dkt. 1868, at 2.

to which a stay would not apply.[11] Nevertheless, the PSC refuses to agree to a similar stay for the Box Hill Defendants.

In addition to the issues pertaining to a stay that were already raised, efforts by the Clinic Defendants to secure the depositions and written discovery responses and documents from third parties, such as the FDA, have reached a standstill. In fact, the recent Motion for Protective Order by the U.S. Attorney's Office, which represents the FDA and which is spearheading the criminal prosecution of the individual NECC insiders, suggests the possibility of a stay of these civil matters entirely, or at least as they relate to FDA involvement, until the conclusion of the criminal trial.[12] The U.S. Attorney's Office cited multiple cases as precedent for the same. To say that the FDA, its actions, authority and failure to properly regulate NECC, is important as it relates to this MDL, is an understatement. The claims made by the Plaintiffs, as well as the Clinic Defendants' defenses for many of the claims, will rely on evidence, documentation and testimony from the FDA. To prevent or restrict the Defendants' ability to pursue these avenues of defense will surely prevent these defendants from fairly defending themselves against the baseless claims made by the Plaintiffs. These issues with the FDA remain unresolved.

Moreover, the purpose of an MDL and a bellwether process is to promote the efficient resolution of issues and cases, which rest on significantly similar, if not identical, claims, defenses, issues, and dispositive posturing. Since almost identical claims have been made against each Clinic Defendant, a resolution of initial, representative, bellwether cases, either at the summary judgment, Daubert motion, or trial stage, will have an immense impact on the disposition of each of the subsequent cases. Implementing a stay would only further the efficient administration of justice.

---

[11] By the PSC's own count, the Tennessee Defendants (including St. Thomas Entities and Tennessee Clinic Defendants) face 113 lawsuits, and the Premier Defendants (New Jersey) face 40 lawsuits. (*See* Plaintiffs' Steering Committee's Motion to Amend Case Management Order No. 9, at 2.)
[12] Dkt. 1838.

**B. In the Alternative, CMO No. 9 Should Be Amended For the Box Hill Defendants and Other Maryland Clinic Defendants To Reflect a Reasonable Extension of the Common Issue Fact Discovery Deadline Consistent With the Goals of an MDL and Common Issue Discovery**

If the Court is not inclined to grant a temporary stay of common issue fact discovery as to the Box Hill Defendants, pursuant to the PSC Cross Motion to Amend MDL Order No. 9, the Court should find that Box Hill and the other Maryland Clinic Defendants deserve a reasonable time to conduct discovery, especially as it is related to common issues for the Maryland Clinic Defendants. Such an extension would be consistent with the goals of an MDL and the purpose of common issue fact discovery. MDL Order No. 9 provides the following definition of a common issue:

> A "Common Issue" for purposes of this Order means an issue that pertains to all or a substantial number of cases in the Multidistrict Litigation ("MDL"). Examples of Common Issues include the scope and amount of Defendants' insurance coverage available to satisfy claims made or a parent company's liability for a subsidiary company's conduct.[13]

In contrast, a case specific issue is defined as follows:

> A "Case Specific Issue" is an issue that pertains to a single case or a small number of cases. Examples of Case Specific Issues include the amount of physical harm an individual patient suffered as a result of Defendants' alleged wrongdoing or statements made by Defendants to a particular Plaintiff.[14]

The sheer volume of discovery as outlined above justifies an extension of the common issue fact discovery deadline by itself. However, there are several distinguishing factors that set the Box Hill Defendants apart from the St. Thomas Entities, the Tennessee Clinic Defendants and the Premier Defendants and necessitate additional relief.

Primarily, the statute of limitations in Maryland that governs the action in this MDL is three years.[15] Accordingly, limitations as to Maryland patient plaintiffs has not yet run and

---

[13] Dkt. 1425; *see also* Dkt. 1868, at 3.
[14] *Id.*
[15] *Supra.*

potential Maryland plaintiffs will have the opportunity to file additional cases against the Box

Hill Defendants and other Maryland clinics until or about October 1, 2015.[16]

In comparison, the statute of limitations in Tennessee is one year and in New Jersey it is

two years.  All of the cases against the Tennessee plaintiffs were filed and known in the early fall

of 2013.  All of the New Jersey cases were filed and known by the early fall of 2014.  The full

landscape of cases is known in those jurisdictions and the PSC and the Tennessee and New

Jersey Defendants have been able to conduct discovery with that knowledge.  That is not the case

for the Box Hill Defendants and other Maryland defendants generally.  Therefore, to group Box

Hill with the Tennessee and New Jersey defendants and separate Box Hill from the other

potential Maryland Defendants is patently unfair, unreasonable, and ignores the well-established

principles of common issue discovery.

While the Box Hill Defendants currently have eight cases filed against them, they have

continually been threatened by the PSC and local plaintiffs' counsel with the existence of

additional suits against them claiming significant monetary damages.  Demand letters alone

reflect the likelihood of at least 25 more cases in addition to the eight that already exist.  This

would account for a 400 percent increase in the number of cases against the Box Hill Defendants

if those lawsuits materialize. To separate the current active eight cases from the additional cases

expected to be added in the next few months ignores the purpose of common issue discovery.

Even the example given in MDL Order No. 9 indicates that issues and limits of insurance

coverage are common issues.  In this instance, all of the cases against Box Hill may be subject to

the same insurance policy. Questions will arise as to how much total insurance coverage exists,

---

[16] This date is just an approximation for purposes of this Motion and for necessary context and is in no way a waiver
of a later statute of limitations defense, if appropriate.  Various dates related to the discovery of an underlying cause
of action in this case have been mentioned and would require a detailed discussion of what was known and being
investigated in the fall of 2012, which is unnecessary here.  As such, a date near the end of September and beginning
of October 2015 is sufficient for this Motion.

how much has been exhausted by the multiple claims, and whether any is available to cover an adverse verdict. That issue follows the very definition of a common issue in the MDL Order.

Moreover, the PSC has told this Court that it expects "hundreds" of lawsuits to be filed against other Maryland clinics aside from the Box Hill Defendants. For purposes of common issue discovery, the Box Hill Defendants should not be separated from the other Maryland Clinic Defendants. While common issue discovery can deal on a large scale with national issues, witnesses, and information that may apply to almost every clinic defendant, there are many common issues related only to the Maryland clinics and cases. As such, it is unreasonable to conclude common issue fact discovery before a full landscape of cases against Box Hill and all of the Maryland clinics is known. In the interest of party and judicial efficiency, this aspect of common discovery must be taken into consideration when setting a deadline.

Some of the common issues to be discovered for all Maryland Clinic Defendants are the specifics of regulations that govern pharmacy matters, physician responsibility, purchasing of medications, as well as the use of prescription medications in an office practice, all of which will be issues that relate to the Maryland cases. There are also different state licensing and patient safety agencies, which will impact the litigation against the Box Hill and Maryland Clinic Defendants as depositions and written and document discovery will be necessary. Such discovery will apply to all of the Maryland cases, which will benefit a substantial number of lawsuits in the MDL. Further, since the same Maryland law will apply to all of the Maryland Clinic Defendants, it would be much more judicially efficient to address the adjudication of what will amount to be substantially similar dispositive issues in a similar time frame at the conclusion of an extended and consistent common issue discovery deadline.

Accordingly, the Box Hill Defendants propose that this Court wait to establish the common issue deadline, or at least establish a starting point, to be consistent with the expiration

of the Maryland statute of limitations deadline. Again, for purposes of context, the Court can use October 1, 2015. At that point all of the Maryland cases will be known and Maryland Clinic Defendants will understand the full landscape, much like the opportunity afforded to the Tennessee and New Jersey defendants, whose limitations deadlines passed much sooner. The Box Hill Defendants propose an extension of the common issue fact discovery deadline of 180 days from October 1, 2015 to April 1, 2016. Further deadlines should be consistent with the same general time frame and time allotted for particular litigation functions and activities, such as expert discovery, dispositive motions, and the bellwether process, as those established for the St. Thomas Entities, the Tennessee Clinic Defendants, and the Premier Defendants. To be clear, that time frame would follow in accordance with the extended common discovery deadline. The PSC chooses not to focus on remand of these cases back to the U.S. District Court of Maryland or the time it takes for a bellwether process to occur. The Box Hill Defendants agree with the analysis of the St. Thomas Entities in that regard and adopt their arguments herein as opposed to the proposal made by the PSC.[17]

As is clear from the above and for the reasons espoused by the St. Thomas Entities and the Premier Defendants, there remains a significant amount of work that still must be completed even before each party can exchange expert reports and engage in expert discovery. As was described above, the Defendants have been met with repeated obstruction. While it is true that the Box Hill Defendants will require the depositions of the same witnesses as the Tennessee and Premier Defendants to pursue proportionate fault defenses, the time needed for the Box Hill Defendants to complete discovery relevant to their cases will need to be extended further than the Tennessee and Premier Defendants. The focus has been on those other defendants. Therefore, additional time will need to be provided in order to balance the National Defendant

---

[17] *See* Dkt. 1850.

discovery, much of which has still yet to occur, and the discovery relevant to the Box Hill

Defendants and Maryland Defendants as it relates to Maryland issues and common witnesses.

To force the Box Hill Defendants to abbreviate their discovery efforts would be an injustice. Moreover, the PSC has had an opportunity to engage in discovery for almost three years concerning the underlying issues in all of these cases, including the ones that they are for whatever reason strategically withholding. The PSC has already been able to unofficially investigate the full panoply of common issues and potential claims under the shroud of confidentiality, privacy and convenience during the mediation process with NECC, the Insiders/Affiliated Defendants, National Defendants and some clinics. However, now that the Clinic Defendants have an opportunity to engage in discovery to properly defend themselves, they are met with resistance and obstruction at all turns. Nevertheless, the PSC insists on tying the hands of the various Clinic Defendants and rushing to trial.

A further consideration is whether the common issue discovery driven mostly by the Tennessee and New Jersey defendants will be further delayed by the gamesmanship of those parties and non-parties. If that occurs, then discovery conducted by the Maryland Clinic Defendants will be further delayed. Accordingly, it is more reasonable to address the issues with the St. Thomas common issue discovery deadlines first before ordering what could turn out to be inconsistent deadlines for Box Hill and the Maryland Defendants. It is also anticipated that the St. Thomas Entities will advance many of the same dispositive arguments for summary judgment as the other Clinic Defendants across the country will advance. It is likely that many, if not all, of the claims against the Clinic Defendants could be disposed of through summary judgment, or even during the trials involving the St. Thomas Entities. As such, a stay for Box Hill would entitle the parties to determine how those issues are handled and or disposed of and promote efficient justice.

The PSC urges the Court to adopt the dates set forth in its proposal "so that the victims are not subject to undue delay in having their day in court."[18] They note that the Plaintiffs "should not have to wait any longer" to get their day in court, which the PSC laments (by their proposal) would be four years after the meningitis outbreak. The PSC's feigned disappointment on behalf of the "victims" is shallow.  Dr. Bhambhani is also a victim of the meningitis outbreak and this litigation caused by the actions of NECC and the affiliated and national defendants. Further, the plaintiffs could have filed their lawsuits against Box Hill at any point following the meningitis outbreak in 2012, yet they waited (in the current eight cases) nearly two years to file, and they have only been a part of this MDL for a little over six months. The PSC also intends to file hundreds of additional cases against other potential Maryland Clinic Defendants and enough cases against Box Hill to increase the number of cases 400 percent. If additional cases are filed against Box Hill, then they will have been filed up to three years after the outbreak. Since the statute of limitations has yet to expire and will not run until the early Fall of 2015, it is impossible to determine exactly how many cases the Box Hill Defendants will be facing. While the PSC is entitled to utilize whatever strategy they desire in filing cases, they cannot play the "victim" card and have it both ways—on the one hand arguing that a plaintiff's ability to get his or her day in court is being unfairly delayed by defendants, while on the other hand delaying their filing of a significant number of cases that would permit the defendants to get a full picture of the litigation and discovery landscape. The PSC even readily admits that they are in the process of amending their Complaints and adding even more additional defendants in relation to the Tennessee cases as well, which the PSC claims are nearly ready for trial.[19] The PSC also sees no problem positively characterizing the progress of discovery despite filing motions or

---

[18] Dkt. 1868, at 15.
[19] Dkt 1868, at 6

supporting the motions of others to preclude deposition discovery or determining unilaterally which type of discovery the defendants should be allowed to utilize.[20]

It is respectfully requested that the deadline for common issue fact discovery be extended for the Box Hill Defendants and all Maryland Defendants for a period of 180 days after the statute of limitations deadline expires around October 1, 2015. Accordingly, it is requested that Case Management Order No. 9 be modified to reflect a common issue fact discovery deadline of April 1, 2016.  The authority upon which the Box Hill Defendants rely is set forth in detail in Document Nos. 1850 and 1852, filed by counsel for the St. Thomas Entities and the Premier Defendants, respectively.  Such authority is binding and relevant to the issues presented to the Court.  Therefore, in order to avoid repetitious filing, the Box Hill Defendants rely upon the legal brief and arguments submitted in Doc. Nos. 1850 and 1852.

Conclusion

Therefore, given the enormity of work which remains in these cases despite the diligence of the Defendants in this matter, there exists good cause for the modification of CMO No. 9. It is respectfully requested that this Honorable Court enter an Order granting a temporary stay in common issue discovery as to the Box Hill Defendants similar to the stay requested by the PSC in its Cross Motion to Amend MDL Order No. 9 [Dkt. 1867]. In the alternative, if this Court does not otherwise deem a stay of common issue fact discovery more appropriate, the Box Hill Defendants seek an extension of MDL Order No. 9 by 180 days from the expiration of the Maryland statute of limitations deadline to on or about April 1, 2016 for the Box Hill Defendants to complete common issue fact discovery. That same principle could be preemptively utilized to reflect the same deadline for any Maryland case for the purpose of focusing on the discovery of issues common to all Maryland Clinic Defendants.

---

[20] *Id.* at 6-7.

Respectfully submitted,

Pessin Katz Law, P.A.
901 Dulaney Valley Road, Suite 500
Towson, Maryland 21204
(410) 938-8800
***Attorneys for Box Hill Surgery Center, L.L.C.,
Ritu T. Bhambhani, M.D., and Ritu T.
Bhambhani, M.D., L.L.C.***

By:     /s/  Gregory K. Kirby

Gregory K. Kirby, Esquire
Pessin Katz Law, P.A.
901 Dulaney Valley Road, Suite 500
Towson, Maryland 21204
(410) 938-8800
Fax: (410) 832-5644
gkirby@pklaw.com

## CERTIFICATE OF SERVICE

I, Gregory K. Kirby, hereby certify that this document has been filed through the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will sent to those indicated as non-registered participants on this date.

Date:   May 26, 2015                    /s/  Gregory K. Kirby
                                        Gregory K. Kirby