UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC., PRODUCTS LIABILITY LITIGATION | MDL No. 2419<br>Docket No. 1:13-md-2419-RWZ |
| THIS DOCUMENT RELATES TO:<br><br>All Actions | Leave to File Granted On: 5/26/15<br>(Docket #1888) |

### BARRY J. CADDEN, LISA CONIGLIARO-CADDEN, GREGORY CONIGLIARO, CARLA CONIGLIARO, DOUGLAS CONIGLIARO AND GLENN A. CHIN'S REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR A PROTECTIVE ORDER AND MOTION TO QUASH DEPOSITION NOTICES

Defendants Barry J. Cadden, Lisa Conigliaro-Cadden, Gregory Conigliaro, Carla Conigliaro, Douglas Conigliaro and Glenn A. Chin (collectively, the "Invoking Defendants" or "Invoking Parties")[1] submit this reply to further address issues discussed in the Oppositions of the Premier Defendants (Docket #1860), the Tennessee Clinic Defendants (Docket #1865), and the Saint Thomas Entities (Docket #1869) (collectively the "Requesting Parties"). In addition to all the reasons set forth in their motion for a protective order and to quash deposition notices (Docket #1823), the Invoking Parties state as follows:

**A.   The Balancing Of The Interests Weighs Heavily In Favor Of Granting The Invoking Defendants' Motion For A Protective Order And To Quash.**

It has long been established that "[t]he Fifth Amendment privilege against self-incrimination is an essential constitutional protection that is widely regarded as a cornerstone of

---

[1] This motion for leave is joined by Medical Sales Management, Inc., Medical Sales Management SW, Inc., Ameridose, LLC, GDC Properties Management, LLC, and Steven Higgins.

our adversarial system of criminal justice." See United States v. Castro, 129 F.3d 226, 229 (1st Cir. 1997) (citing Michigan v. Tucker, 417 U.S. 433, 439 (1974)). In order to invoke his rights under the Fifth Amendment, a prospective witness must show only that "he is faced with some authentic danger of incrimination." Id. (citing Hoffman v. United States, 341 U.S. 479, 486-487 (1951)). The First Circuit has stated that **"[t]his is not a particularly onerous burden."** Id. (Emphasis supplied). The First Circuit has stated further that "the prospective witness need only [describe] some reasonable possibility that, by testifying, he may open himself to prosecution." Id.

As more fully discussed in the Invoking Defendants' motion (Docket #1823), the individuals have met that burden. All but one of the individuals are defendants in a parallel criminal proceeding currently being prosecuted by the United States Attorney and the Department of Justice,[2] and they face the highest risk of making self-incriminating statements. See Trustees of Plumbers and Pipefitters National Pension Fund v. Transworld Mechanical, Inc., 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995) ("the likelihood that a defendant may make incriminating statements is greatest after an indictment has issued"). There is a "reasonable possibility" that the individual who has not been indicted may open herself up to prosecution by testifying in a deposition in the civil proceeding. See Castro, 129 F.3d at 229.

Even the government has acknowledged that the Invoking Defendants' rights must take precedence here. In the Affidavit of the United States Attorney for the District of Massachusetts filed in this action (Docket #1838 at Ex. A), the United States Attorney clearly describes very real and substantial Fifth Amendment concerns sufficient to establish that the Invoking

---

[2] Invoking Defendant Lisa Cadden is not a defendant in that criminal case, but like the Invoking Defendants, was an owner of NECC and has a legitimate basis for asserting her Fifth Amendment rights given the government's sweeping efforts to assert criminal culpability in this matter.

Defendants, by testifying at depositions in the civil proceeding, would be faced with an "authentic danger of incrimination." See Hoffman, 341 U.S. at 486-487. See also Castro, 129 F.3d at 229. In the interest of fairness, the concerns of the Invoking Defendants must be placed before all others.

The Saint Thomas Entities claim that video evidence of the Invoking Defendants asserting their Fifth Amendment rights—whether in a transcript or on video—is "critical" to their defense. That assertion is pure hyperbole. What is arguably "critical" to the Saint Thomas Entities is the adverse inference they seek from the Invoking Defendants asserting their Fifth Amendment rights in response to particular questions,[3] what the Saint Thomas Entities would *prefer* is that this inference be introduced via a video, rather than through a stipulation or the like.

The preferences of the parties who requested these depositions, though, is roundly outweighed by the Invoking Defendants' right to a fair trial in the federal criminal case, a balancing that is required by law and completely absent from the Requesting Parties' briefs. The risk of prejudice to the Invoking Defendants is enormous, particularly given that the civil trials at which the Saint Thomas Entities and others would introduce these dramatic videos will precede the federal criminal trial. The Invoking Defendants' right to a fair trial would be greatly prejudiced by the publicity these invocations would receive in advance of their criminal trials, whether at the civil trials or due to the videos being leaked to the public. That required balancing—which the Requesting Parties ignore—necessitates granting of the Invoking Defendants' motion.

---

[3] Moreover, the Saint Thomas Entities overstate the need for, and usefulness of, this inference. As discussed in this brief, they will not be entitled to include each of the Invoking Defendants on the verdict forms under the share approach that has been adopted.

3

Indeed, had the depositions at issue in this motion truly been "critical," presumably they would have been noticed long ago, as the stay prohibiting them entirely was removed on October 9, 2014. See Order Limiting Discovery and Staying Proceedings (Docket #1482). Instead, the Requesting Parties seem to be bolstering their request to delay the trial here by requesting depositions they never truly needed, given the scope of documents available and the other sources for this information, knowing that the Invoking Defendants cannot answer any of their questions in light of the federal indictment.

### B. The Enormous Scope Of The Issues In The Parallel Civil And Criminal Proceedings And Significant Overlap Between The Proceedings Warrants The Invocation Of The Fifth Amendment Privilege In All Subject Areas.

The Saint Thomas Entities are correct that the First Circuit has stated that, as a general rule, "[t]he privilege cannot be invoked on a blanket basis[,]" but rather, "[i]t operates question by question." See Castro, 129 F.3d at 229. However, the First Circuit has held that this rule is not absolute and the trial court is not required to conduct a "particularized inquiry" regarding an individual's blanket assertion of privilege. See United States v. Pratt, 913 F.2d 982, 990 (1st Cir. 1990). Where an individual claiming the privilege is "confronted by substantial and 'real,' and not merely trifling or imaginary, hazards of incrimination[,]" a blanket invocation is proper. Id. (quoting Rogers v. United States, 340 U.S. 367, 374 (1951)). See also Cowans vs. Boston, D. Mass., No. CIVA 05-CV11574-RGS, 2007 WL 28419, *2 (Jan. 4, 2007) (permitting a defendant's blanket assertion of privilege).

In this case, the Requesting Parties are incorrect in describing the Invoking Defendants' proposed responses as a "blanket approach." According to the plain language of the stay in this case, the only permissible subject matter of the Requesting Parties' intended inquiry through depositions relates to the central issue in the criminal indictment—the issue of who is at fault for

the injection of contaminated product.[4] Therefore, in this case, the Invoking Defendants have not sought a "blanket approach" to asserting their Fifth Amendment privilege. Rather, by virtue of the terms of the settlement and the stay, the only permissible area of inquiry for the Requesting Parties (or anyone else) is the same subject matter giving rise to legitimate Fifth Amendment concerns. Thus, it is inaccurate to allege that the Invoking Defendants seek a blanket approach. Instead, the Invoking Defendants seek a ruling that the protections offered to individuals under the Fifth Amendment to the United States Constitution outweighs the desires of the Requesting Parties to maximize the prejudicial impact of their trial presentation.

Given the narrow scope of discovery permissible against the Invoking Defendants—issues related to comparative fault—their invocation here is anything but "blanket"; it is targeted and particularized. That is because the law provides that, "[f]or the privilege to attach, the questions and answers need not be directly incriminating." See Castro, 129 F.3d at 229. Indeed, "[i]f a reply to a seemingly innocuous question reasonably will tend to sculpt a rung in the ladder of evidence leading to prosecution, the privilege appropriately may be invoked." Id. (citing Hoffman, 341 U.S. at 486; United States v. Johnson, 488 F.2d 1206, 1209 (1st Cir. 1973)). The First Circuit has stated that "testimony which might lead indirectly to evidence that then could be used in a future criminal prosecution is eligible for Fifth Amendment protection." Id. at 230 (citing Murphy v. Waterfront Commission, 378 U.S. 52, 79 (1964)).

---

[4] The Court here ordered a stay of discovery. The exception to the discovery stay provides that discovery that is relevant to the prosecution, or defense, of claims against defendants other than the Estate Parties, or the Insider Settling Parties is permissible. (Docket #1482). The Trustee's motion for the discovery stay arose out of his monumental efforts to mediate, negotiate, and resolve numerous claims naming NECC and/or all of the Invoking Defendants, as well as the affiliated companies that have joined in the Invoking Defendants' Motion for a Protective Order. In fact, the language sought by the Trustee and ordered by this Court was identical to the language contained in the settlement agreement proposed by the Trustee and others.

The Court need not conduct a particularized inquiry into each and every question that the Requesting Parties seek to ask at depositions in order to determine that the Invoking Defendants have substantial cause to assert their Fifth Amendment rights in response to all substantive questions. For instance, in their Opposition, the Tennessee Clinic Defendants state that "factual questions can be constructed to not threaten self-incrimination[,]" and apparently take the position that a question such as "[w]ho was responsible for compounding the batches that became contaminated" could be answered by the Invoking Defendants without any risk of self-incrimination. See Opposition (Docket #1865), at p.10, fn.39. To the contrary, that question goes to the heart of the subject matter in the parallel criminal proceeding. It is difficult, if not impossible, to imagine a more fitting instance in which the invocation of the Fifth Amendment protections would be warranted.

Further, the Saint Thomas Entities, the Tennessee Clinic Defendants, and the Premier Defendants have all served written discovery requests on the Invoking Defendants and those requests further illustrate that the subject matter that the Requesting Parties wish to explore creates for the Invoking Defendants an "authentic danger of incrimination." See Hoffman, 341 U.S. at 486-487. See also Castro, 129 F.3d at 229. For instance, the Saint Thomas Entities, the Tennessee Clinic Defendants, and the Premier Defendants have requested, among other things, that the Invoking Defendants:

- "Identify every person who compounded MPA at the NECC facility at any point in time between 2011 and 2012."

- "Identify and describe [their alleged] positions, roles and responsibilities with NECC, Ameridose, Alaunus, and MSM from 2008 to the present."

- "Produce all documents produced by the government to [the defendant] during any civil, criminal, or administrative proceeding related to NECC's contaminated MPA."

6

It would be impossible for the Invoking Defendants to respond to these requests (or to any of the other written requests) without the risk of making potentially incriminating statements. It naturally follows that asking more specific questions during a deposition regarding the same subject matter would likewise create an "authentic danger of incrimination" for the individuals and would warrant the invocation of the Fifth Amendment privilege to each and every question.

The Invoking Defendants are not making a "blanket invocation" as the Requesting Parties suggest in their Oppositions. This is simply a case where it would be impossible for the Invoking Defendants to respond to any written request or deposition question without the risk of making statements that could be construed as incriminating. While the Requesting Parties have taken the position that the Invoking Defendants must answer some of their questions, the cases they rely upon in their various Oppositions are readily distinguishable. In support of their argument, the Requesting Parties cite Vazquez-Rijos v. Anhang, 654 F.3d 122, 129 (1st Cir. 2011). Their reliance on Anhang is misplaced. In Anhang, applying the protections of the Fifth Amendment to a deposition context was not central to the dispute, nor was a protective order sought or a motion to quash brought. Rather, the issue was whether a plaintiff's lawsuit was properly dismissed based on the plaintiff's "repeated and flagrant abuses" in discovery, including her deliberate failure to attend a court-ordered deposition on questionable medical grounds as well as Fifth Amendment grounds. Id. at 126-128. While it is true that in the dicta in Anhang it was noted that that the Fifth Amendment privilege "cannot be invoked on a blanket basis," the court in Anhang did not hold, as the Saint Thomas Entities suggest, that "even when a witness intends to invoke the Fifth Amendment, he or she must attend the deposition and invoke the privilege on a question-by-question basis." See Saint Thomas Entities' Opposition (Docket #1869), at p.5. Moreover, unlike this case, in Anhang the subject of the lawsuit was different

than the criminal action, necessitating the court to make a "particularized inquiry" to determine if the privilege was properly asserted for questions that could potentially incriminate her. See Anhang, 654 F.3d at 129.[5]

In support of their argument that the Invoking Defendants are seeking an impermissible "blanket approach" the Requesting Parties also cite S.E.C. v. Spencer Pharmaceutical Inc., D. Mass., No. 12-CV-12334-IT, 2014 WL 4179914 (D. Mass. Aug. 19, 2014). That case also misses the mark. In Spencer a district court faced the issue of whether to enter a default judgment, where at no time had the defendant filed for a protective order. Id., at *1. Rather, in that case, immediately after the defendant's motion for stay was denied, the defendant simply sent an e-mail notifying the SEC that he would not attend his deposition. Id. Thus, even though the court noted in dicta that the Fifth Amendment cannot be invoked on a "blanket approach," the context of the facts and procedural history in Spencer render it inapplicable here.

### C. The Only Witnesses Who Could Testify On Ameridose's, GDC's, Or MSM's Behalf Are Individuals With Legitimate Fifth Amendment Concerns And, Therefore, Will Not Accept Designation.

The Saint Thomas Entities argue that "Ameridose, GDC, and MSM must appoint someone, even someone other than current or past employees, to be their designees for the purposes of the [30(b)(6)] depositions." (Opp. p. 13.) The Saint Thomas Entities are mistaken.

Rule 30(b)(6) expressly states that the organization named in the deposition notice must designate – if not officers, directors or managing agents – "other persons **who consent to testify**" on the entity's behalf. Fed. R. Civ. P. 30(b)(6) (emphasis added). Indeed, the Saint Thomas Entities themselves acknowledge the consent requirement: "The designee can be any individual

---

[5] The plaintiff's claims were against her deceased husband's parents, and sought a share of her deceased husband's estate, based on prenuptial agreements, a widow's usufructuary interest and community property. As such, her deposition testimony would have focused on topics primarily unrelated to the criminal investigation relating to her husband's death.

the corporation chooses, **so long as that individual consents to testify** and has been properly prepared." (Opp. p. 12 (emphasis added).) Here, there is no one who will consent to testify on behalf of as Ameridose, GDC, or MSM at any 30(b)(6) deposition.

Not only do the owners of Ameridose, GDC, and MSM have legitimate Fifth Amendment concerns causing them to refuse to accept the designation of a 30(b)(6) witness, including for the reasons explained in their individual motions for protective order and here, but also all of the "other persons" presently associated with those companies with sufficient knowledge of the requested deposition topics are individuals with legitimate Fifth Amendment concerns who therefore will not consent to testify. Further, Ameridose, GDC, and MSM have no control over former employees or agents who may otherwise be designated as "other persons," and, in any event, those people also will not consent to be deposed. Accordingly, Ameridose, GDC, and MSM are not required to and, in fact cannot, designate them under Rule 30(b)(6), as the Saint Thomas Entities themselves recognize. See, e.g., S.E.C. v. Banc de Binary, No. 2:13-cv-993, 2014 WL 1030862, n.10 (D. Nev. March 14, 2014) ("Because Mr. Katz is no longer associated with Banc de Binary…he is no longer subject to being deposed under Rule 30(b)(6) **unless he consents**") (emphasis added).

Nor can Ameridose, GDC, or MSM be compelled to retain and produce individuals not previously associated with them simply so those witnesses can respond to the Requesting Parties' 30(b)(6) Notices. Ameridose, GDC, and MSM should not be compelled to retain unaffiliated people for depositions because they cannot provide those people with information without breaking the owners' and managers' Fifth Amendment privilege. The only people still associated with Ameridose, GDC, and MSM who have knowledge and information regarding the topics in the 30(b)(6) Notices are individuals who intend to invoke their Fifth Amendment privilege and,

in fact, have done so already. Those individuals are not required to provide information to a newly designated deponent. City of Chicago v. Wolf, No. 91 C 8161, 1993 WL 177020, *2 (N.D. Ill. May 21, 1993). Importantly, a court is not permitted to "compel the individual defendants who choose to remain silent to respond to inquiries by the 30(b)(6) deponent." City of Chicago v. Reliable Truck Parts Co., Inc., 768 F. Supp. 642, 646 (N.D. Ill. 1991). "To hold otherwise would require the persons with a Fifth Amendment privilege to provide testimony to the designated deponent." Wolf, 1993 WL 1777020, at *2. Because there are no "other persons" who will consent to testify on the subjects identified in the Requesting Parties' 30(b)(6) Notices, Ameridose, GDC, and MSM are entitled to a protective order precluding those depositions and quashing the deposition notices directed to them.

## CONCLUSION

In balancing the interests of the parties, the interests of the Invoking Defendants far outweigh the interests of the Requesting Parties. Accordingly, the current deposition notices issued to the Invoking Defendants (and the so-called "Affiliated Defendants") should be quashed and an order should enter protecting the Invoking Defendants (and Affiliated Defendants) from the embarrassment, oppression, and undue burden of appearing for depositions when they have already invoked their Fifth Amendment privilege in writing and have indicated they will do the same to any substantive question posed at a deposition.

Therefore, Defendants Barry J. Cadden, Lisa Conigliaro Cadden, Gregory Conigliaro, Carla Conigliaro, Douglas Conigliaro and Glenn A. Chin respectfully request that the Court quash the deposition notice to each Invoking Defendant and forbid the taking of their depositions by the Saint Thomas Entities, Tennessee Clinic Defendants, and the Premier Defendants in this matter.

Respectfully submitted,

/s/ Harry A. Pierce
William J. Dailey, Jr. (BBO# 112200)
Robert H. Gaynor (BBO# 187620)
Harry A. Pierce (BBO# 399275)
Sloane & Walsh, LLP
3 Center Plaza, 8th Floor
Boston, MA 02108
(617) 523-6010
wdaileyjr@sloanewalsh.com
rgaynor@sloanewalsh.com

*Counsel for Individual Defendants Barry J. Cadden, Lisa Conigliaro-Cadden, Carla Conigliaro, Douglas Conigliaro, Gregory Conigliaro, and Glenn A. Chin*

/s/ Michelle R. Peirce
Bruce A. Singal (BBO# 464420)
Michelle R. Peirce (BBO# 557316)
Callan G. Stein (BBO# 670569)
Donoghue, Barrett & Singal, PC
One Beacon Street, Suite 1320
Boston, MA 02108
(617) 720-5090
bsingal@dbslawfirm.com
mpeirce@dbslawfirm.com
cstein@dbslawfirm.com

*Counsel for Defendants Barry J. Cadden and Lisa Conigliaro-Cadden*

/s/ Dan Rabinovitz
Dan Rabinovitz (BBO# 558419)
Michaels, Ward & Rabinovitz, LLP
One Beacon Street
Boston, MA 02108
(617) 350-4040
dmr@michaelsward.com

*Counsel for Defendant Gregory Conigliaro*

Dated: May 26, 2015

/s/ Christopher R. O'Hara
David E. Meier (BBO# 341710)
Christopher R. O'Hara (BBO# 548611)
Corrina L. Hale (BBO# 670916)
Todd & Weld LLP
One Federal Street, 27th Floor
Boston, MA 02110
(617) 720-2626
dmeier@toddweld.com
cohara@toddweld.com
chale@toddweld.com

*Counsel for Defendants Carla Conigliaro and Douglas Conigliaro*

**CERTIFICATE OF SERVICE**

I, Harry A. Pierce, hereby certify that this document has been filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

Date: May 26, 2015                                                         /s/ Harry A. Pierce