## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CUMBERLAND MEDICAL CENTER, )<br><br>Movant, )<br><br>v. )<br><br>PLAINTIFFS' STEERING COMMITTEE in the matter of )<br>*In re: New England Compounding Pharmacy, Inc,* )<br>*Civil Action No: MDL 1:13-md-02419* )<br><br>Respondent. ) | MDL No. 2419<br>Master Dkt: 1:13-md-02419-FDS |

***This document relates to Plaintiffs' Steering Committee's Subpoena of non-party Cumberland Medical Center***

## MOTION TO QUASH SUBPOENA OF
## CUMBERLAND MEDICAL CENTER

Cumberland Medical Center ("Cumberland"), by counsel and in accordance with Federal Rule of Civil Procedure 45, hereby files this Motion to Quash the Subpoena of Cumberland Medical Center. In support of this Motion, Cumberland states as follows:

(1) Cumberland Medical Center is a not for profit hospital operating an acute care facility in Crossville, Cumberland County, Tennessee. Pursuant to this Court's <u>Order on Central Enforcement of Subpoenas</u>, Document 193, case no. 1:13-md-02419-RWZ, this Court has subject matter jurisdiction.

(2) Cumberland is not and has never been a customer of NECC. <u>See</u> NECC Customer List, located at: <u>http://www.fda.gov/downloads/drugs/drugsafety/fungalmeningitis/ucm325466.pdf.</u>

(3) Although Cumberland Medical Center is without specific knowledge of the current mass tort litigation pending before this Court, the subpoena at issue states that a "fungal meningitis

outbreak . . . is the subject of this litigation."[1]

(4) Plaintiffs' Steering Committee in that case had a subpoena *duces tecum* issued in the District Court of Massachusetts for Cumberland Medical Center, requesting Cumberland to "designate one or more officers, directors, or managing agents" to **testify** about the following matters:

"Information regarding any and all transactions with Speciality Surgery Center, PLLC";

All communications between Cumberland and Speciality Surgery Center, including Cumberland's employees, contractors, and principles, regarding transactions with Speciality Surgery Center;

All communications between Cumberland and Speciality Surgery Center, including Cumberland's employees, contractors, and principles, regarding the 2013 asset sale between Cumberland and Speciality Surgery Center;

All communications between Cumberland and Speciality Surgery Center, including Cumberland's employees, contractors, and principles, regarding the fungal meningitis outbreak that is the subject of the MDL litigation; and

"All other matters within the knowledge of the witness germane to this litigation."

See Exhibit A to the Subpoena *duces tecum*, attached hereto as **Exhibit 1**. The subpoena also requested Cumberland to produce the following documents:

Documents related to any and all transactions between Cumberland and Speciality Surgery Center;

Documents related to the 2013 asset sale between Cumberland and Speciality Surgery Center;

All communications between Cumberland and Speciality Surgery Center, including

---

[1] See District Court of Massachusetts website, last checked May 15, 2015 http://www.mad.uscourts.gov/worcester/MDL2419/MDL2419.htm ("These actions share factual questions relating to injuries arising from the alleged contamination of the injectable steroid methyl-prednisolone acetate at the New England Compounding Pharmacy facility in Framingham, Massachusetts, which allegedly resulted in a multi state outbreak of hundreds of cases of fungal meningitis and other infections.")

Cumberland's employees, contractors, and principles, regarding transactions with Speciality Surgery Center;

All communications between Cumberland and Speciality Surgery Center, including Cumberland's employees, contractors, and principles, regarding the 2013 asset sale between Cumberland and Speciality Surgery Center; and

All communications between Cumberland and Speciality Surgery Center, including Cumberland's employees, contractors, and principles, regarding the fungal meningitis outbreak that is the subject of the MDL litigation;

See Exhibit B to the Subpoena *duces tecum*, attached hereto as **Exhibit 1**.

(5) Cumberland objects to the subpoena *duces tecum* on several grounds, as set forth herein, and moves the Court to quash Plaintiffs' Steering Committee's Subpoena.

First, the subpoena places an undue burden on Cumberland. Fed. R. Civ. P. 45(d)(3)(A)(iv). In determining whether the claimed burden is "undue", this Court is to weigh the issuing party's needs against the recipient's burden. Positive Black Talk Inc. v. Cash Money Rewards, Inc., 394 F.3d 357, 377 (5th Cir. 2004) abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick, 130 S.Ct 1237 (2010). Courts have instructed that in balancing these competing interests, facts to consider include the **relevance** of the requested documents and testimony; the requesting party's need for the testimony and documents, the **breadth** of the request, the **time period** covered in the request; the **adequacy of the description** of the evidence sought; and whether the information sought is **more readily available from another source**. See e.g., Northwestern Memorial Hosp. v. Ashcroft, 362 F.3d 923, 927-32 (7th Cir. 2004); Graham v. Casey's General Store, 206 F.R.D. 251, 254 (S.D. Ind. 2002); Concord Boat Corp. v. Brunswick Corp., 169 F.R.D. 44, 49 (S.D.N.Y. 1996).

### *Relevance*:

In this instance, Cumberland is not a party, is not and never has been a customer of NECC, and did not proscribe or administer the alleged defective medications at issue.   See http://www.fda.gov/downloads/drugs/drugsafety/fungalmeningitis/ucm325466.pdf. This Court has already addressed the relevance of subpoenas served on non-parties who were not customers of NECC and who have not been sued by a patient-plaintiff in the pending litigation. See Doc. 572. Under similar circumstances, this Court stated:

> There appears to be little, if any, connection between the claims in this litigation and hospitals and clinics who have no patients who have filed suit, joined in the MDL litigation, or given notice of a claim against any party relating to NECC medications. . . . Accordingly, . . . the Court quashes the subpoenas that are directed to respondents who have no patients who have filed suit, joined in the MDL litigation, or given notice of a claim against that respondent relating to NECC medications.

See Doc. 572. For the same reasoning that this Court has previously stated, Cumberland moves this Court to quash Plaintiffs' Steering Committee's subpoena of Cumberland Medical Center.

In the subpoena, Plaintiffs' Steering Committee seeks information related to (1) *any* transactions between party-defendant Speciality Surgery Center, PLLC ("SSC"); (2) NECC; (3) the fungal meningitis outbreak; and (4) *all* other matters germane to this litigation.  Regarding the last request, to Cumberland's knowledge, Cumberland does not have any information "germane to this litigation." Regarding the first request, the only transaction between the two entities was an asset purchase agreement entered into by the parties prior to the filing of the pending litigation.  Counsel for Speciality Surgery Center has advised that the Asset Purchase Agreement, with all exhibits, has already been provided to Plaintiffs' Steering Committee.  That agreement specifically provides that Cumberland did not purchase or assume any liabilities, claims, or losses that SSC had pending at the

-4-

time of the execution of the Asset Purchase Agreement or might have in the future.[2] The entirety of the Asset Purchase Agreement is contained within the four corners of that Agreement and no other information is relevant to that Agreement. Therefore, as it relates to those requests, Cumberland responds none, other than the Asset Purchase Agreement already provided. As for requests two and three related to NECC and the fungal meningitis outbreak, to Cumberland's knowledge, all issues related to those matters are contained within the four corners of the Asset Purchase Agreement, which has already been provided in this case.

Therefore, Cumberland has no knowledge of any matters relevant to this litigation and has no information that is reasonably calculated to lead to the discovery of admissible evidence at trial. Fed. R. Civ. P. 26(b). For same, Cumberland moves this Court to quash Plaintiffs' Steering Committee's subpoena.

### *Breadth and Time*:

Plaintiffs' Steering Committee's subpoena, as written, request persons with knowledge of, and documents relating to, *all* matters of an unlimited time period between Cumberland and SSC. Specifically, Plaintiffs' Steering Committee has requested that Cumberland produce for a deposition a person or persons with knowledge of all communications between the hospital and SSC regarding:

---

[2]The Agreement specifically provides that Cumberland, in purchasing certain medical equipment from Speciality Surgery Center, was not assuming:

(h) any claim, cause of action; proceeding or other litigation pending or threatened against Seller on the Closing Date or for which Seller is found liable on claims initiated at any time after the Closing Date[.]

See Section 1.4.

-5-

(1) *any* transactions between the two; (2) NECC; (3) the fungal meningitis outbreak; and (4) *all* other matters germane to this litigation, and all documents related to those topics. The subpoena does not specify a time-period and does not sufficiently narrow the subpoenaed information such that Cumberland can comply with Plaintiffs' requests. As the subpoena is currently written, Cumberland is being asked to contact each of its 850 current employees, and all employees who are no longer employed, to determine whether any employee participated in any conversations with SSC related to the topics above. And, as "any transaction" between Cumberland Medical Center and Speciality Surgery Center, PLLC could include a vast number of matters, including patient-specific, HIPAA protected matters, the overly broad scope of the subpoena places an undue burden on Cumberland to waste limited resources in an attempt to comply with a subpoena that seeks information that is not relevant to the underlying fungal meningitis outbreak and does not "have a tendency to make a fact (relevant to the pending causes of action) more or less probable." Tenn. R. Evid. 401(a).

Because Plaintiffs' Steering Committee's subpoena is overly broad, without any time limitations, Cumberland moves this Court to quash Plaintiffs' Steering Committee's subpoena of Cumberland Medical Center.


### *Available from Another Source*:

Finally, the information requested is information that is or should be obtainable from SSC, who is a party to the underlying cause of action, and as such, the information is more readily available to SSC. All of the information sought in the subpoena is readily and easily available from SSC. In fact, any information, if any, that Cumberland might have related to the issues listed in the subpoena, would have and could have only come from SSC. Therefore, the original source of any

of the information requested would be SSC. Cumberland does not and could not have any first hand knowledge of the matters "germane to this litigation" as Cumberland was not a customer of NECC and does not have any patient-plaintiffs in this litigation. Therefore, Cumberland moves this Court to quash Plaintiffs' Steering Committee's subpoena of Cumberland Medical Center.

### *Proprietary Business Information*:

Cumberland also moves to quash Plaintiffs' Steering Committee's Subpoena *Duces Tecum* on the ground that the subpoena seeks the discovery of documents that are proprietary business information and information subject to a confidentiality agreement. Specifically, Plaintiffs' Steering Committee seeks the production of documents related to *any* transaction between SSC and Cumberland, specifically including the Asset Purchase Agreement. The Agreement, with purchase price redacted, has already been produced by SSC. Plaintiffs' Steering Committee is now trying to run an end-around and seek the same confidential, privileged information from Cumberland. The purchase price is proprietary information that Cumberland must keep confidential, not only in accordance with the terms of the Agreement but also for the purposes of effectuating future asset purchases without competitor interference or inequitable bargaining tactics by others who may become aware of the asset purchase price if Cumberland is required to produce those amounts in this matter.

As such, Cumberland moves this Court to quash Plaintiffs' Steering Committee's subpoena of Cumberland Medical Center.

*Fishing Expedition without Reasonable Probability of Discovering Relevant Information*

Given Cumberland's lack of knowledge or involvement in the events at issue, Plaintiffs' Steering Committee's subpoena is nothing more than a fishing expedition. See Stanford v. Parker, 266 F.3d 442, 460 (6th Cir. 2001) (limiting discovery that was "a fishing expedition masquerading as discovery"). As held in Myers v. Prudential Ins. Co. of Am., 581 F. Supp. 2d 904, 913 (E.D. Tenn. 2008):

> [O]ceanic fishing expeditions will [not] be permitted. Much of discovery is a fishing expedition of sorts, but the Federal Rules of Civil Procedure allow the Courts to determine the pond, the type of lure, and how long the parties can leave their lines in the water. Rule 26(b)(1) provides in relevant part, "[u]nless otherwise limited by court order, ... [p]arties may obtain discovery regarding any nonprivileged matter that is **relevant to any party's claim or defense**....Relevant information need not be admissible at the trial if the discovery appears **reasonably calculated to lead to the discovery of admissible evidence**.

(Emphases added). Rule 26(b), although broad, is not a license to engage in an unwieldy and speculative fishing expedition. Other courts have agreed. The Sixth Circuit has held that "[a]lthough a plaintiff should not be denied access to information necessary to establish her claim, neither may a plaintiff be permitted to go fishing and a trial court retains discretion to determine that a discovery request is too broad and oppressive." Surles ex rel. Johnson v. Greyhound Lines, Inc., 474 F.3d 288, 305 (6th Cir. 2007) (quoting Marshall v. Westinghouse Elec. Corp., 576 F.2d 588, 592 (5th Cir. 1978) (internal quotation marks omitted)). In Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 244 F.3d 189, 193 (1st Cir. 2001), the First Circuit denied additional discovery and would "not allow [respondent] to go on a 'fishing expedition' with the mere 'hope' that it will obtain [relevant] information." In MINPECO, S.A. v. Conticommodity Services, Inc., 844 F.2d 856, 863, 269 U.S. App. D.C. 238 (D.C. Cir. 1988), the D.C. Circuit affirmed orders quashing subpoenas so

-8-

as not to "authorize a fishing expedition into congressional files."

For all of the above reasons, this Court should grant Cumberland Medical Center's Motion

to Quash the Subpoena of Cumberland Medical Center

Respectfully submitted this $\underline{1}^{st}$ day of June, 2015.

ARNETT, DRAPER & HAGOOD, LLP

By      /s Rachel Park Hurt
         F. Michael Fitzpatrick      BPR # 001088
         Rachel P. Hurt               BPR #026515
         Attorneys for Defendant, Cumberland
         Medical Center

ARNETT, DRAPER & HAGOOD, LLP
2300 First Tennessee Plaza
Knoxville, TN 37929-2300
(865)546-7000

## CERTIFICATE OF SERVICE

I, Rachel Park Hurt, counsel for **Cumberland Medical Center**, do hereby certify that a true and exact copy of this pleading was filed by U.S. with the Court. A copy of this pleading will be served by regular U.S. Mail upon:

Mark P. Chalos
Lieff Cabraser Heimann & Bernsterin
150 Fourth Avenue North,
Suite 1650
Nashville, TN 37219

This the ___ 1st ___ day of May, June, 2015.

ARNETT, DRAPER AND HAGOOD, LLP

By:___*s/ Rachel Park Hurt*___

**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS**

CUMBERLAND MEDICAL CENTER,　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　Movant,　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　　　　　　　)　　MDL No. 2419
　　　　　　　　　　　　　　　　　　　　　　　　　)　　Master Dkt: 1:13-md-02419-FDS
PLAINTIFFS' STEERING COMMITTEE in the matter of )
*In re: New England Compounding Pharmacy, Inc,* )
*Civil Action No: MDL 1:13-md-02419*　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　Respondent.　　　　　　　　　　　)

*This document relates to Plaintiff's Steering Committee's Subpoena of non-party Cumberland Medical Center*

## CERTIFICATION IN COMPLIANCE WITH FEDERAL RULE OF CIVIL PROCEDURE 37(A)(1)

In accordance with Federal Rule of Civil Procedure 37(a)(1), counsel for Defendant, F. Michael Fitzpatrick, by his signature below, hereby certifies that he has, in good faith, conferred with counsel for the issuing party, Mark P. Chalos, in an effort to resolve the objections pertaining to the Subpoena *Duces Tecum* of Cumberland Medical Center as set forth in the Motion to Quash Subpoena of Cumberland Medical Center

　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　ARNETT, DRAPER & HAGOOD, LLP


　　　　　　　　　　　　By:__*s/ Michael Fitzpatrick*_____
　　　　　　　　　　　　　　　F. Michael Fitzpatrick　BPR # 001088
　　　　　　　　　　　　　　　**Attorney for Defendant, Cumberland
　　　　　　　　　　　　　　　Medical Center**

2300 First Tennessee Plaza
P. O. Box 300
Knoxville, TN  37901-0300
(865) 546-7000

## CERTIFICATE OF SERVICE

I, Rachel Park Hurt, counsel for **Cumberland Medical Center**, do hereby certify that a true and exact copy of this pleading was filed by U.S. Mail with the Court. A copy of this pleading will be served by regular U.S. Mail upon:

Mark P. Chalos
Lieff Cabraser Heimann & Bernsterin
150 Fourth Avenue North,
Suite 1650
Nashville, TN 37219

This the 1st day of June, 2015.

ARNETT, DRAPER AND HAGOOD, LLP

By:___*s/ Rachel Park Hurt*___