```
 1                    UNITED STATES DISTRICT COURT
 2                    DISTRICT OF MASSACHUSETTS
 3

 4
    IN RE:  NEW ENGLAND COMPOUNDING    )  MDL NO. 13-02419-RWZ
 5  PHARMACY CASES LITIGATION          )
                                       )
 6                                     )
                                       )
 7                                     )
                                       )
 8                                     )

 9            BEFORE:  THE HONORABLE RYA W. ZOBEL AND
                       THE HONORABLE JENNIFER C. BOAL
10

11

12
                         STATUS CONFERENCE
13

14

15

16          John Joseph Moakley United States Courthouse
                         Courtroom No. 12
17                       One Courthouse Way
                         Boston, MA 02210
18

19                         May 28, 2015
                            2:00 p.m.
20

21

22          Catherine A. Handel, RPR-CM, CRR
                      Official Court Reporter
23          John Joseph Moakley United States Courthouse
                    One Courthouse Way, Room 5205
24                       Boston, MA 02210
                E-mail: hhcatherine2@yahoo.com
25
```

```
1     APPEARANCES:

2
      For The Plaintiffs:
3
          Hagens, Berman, Sobol, Shapiro LLP, by KRISTEN JOHNSON,
4     ESQ., 55 Cambridge Parkway, Suite 301, Cambridge, Massachusetts
      02142;
5
          Janet, Jenner & Suggs, LLC, KIMBERLY A. DOUGHERTY, ESQ., 75
6     Arlington Street, Suite 500, Boston, Massachusetts 02116;

7         Branstetter, Stranch & Jennings, PLLC, by BEN GASTEL, ESQ.,
      an J. GERARD STRANCH, ESQ., 227 Second Avenue North, Nashville,
8     Tennessee 37201-1631;

9         Ellis & Rapacki LLP, by FREDRIC L. ELLIS, ESQ., 85 Merrimac
      Street, Suite 500, Boston, Massachusetts 02114;
10
          Lieff Cabraser Heimann & Bernstein, LLP, by ANNIKA K.
11    MARTIN, ESQ., 250 Hudson Street, 8th Floor, New York, New York
      10013-1413;
12
          Lieff Cabraser Heimann & Bernstein, LLP, by MARK P. CHALOS,
13    ESQ., 150 Fourth Avenue North, Suite 1650, Nashville, Tennessee
      37219;
14

15

16     FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS:

17
          Brown Rudnick LLP, by KIERSTEN A. TAYLOR, ESQ., One
18    Financial Center, Boston, Massachusetts 02111;

19        Harris Beach PLLC, by FREDERICK H. FERN, ESQ., 100 Wall
      Street, New York, New York 10005;
20

21
       FOR PAUL D. MOORE, IN HIS CAPACITY AS CHAPTER 11 TRUSTEE OF
22    NECP, INC.:

23        Duane Morris LLP by MICHAEL R. GOTTFRIED, ESQ., 100 High
      Street, Suite 2400, Boston, Massachusetts 02110-1724;
24

25     (Appearances continued on the next page.)
```

1     APPEARANCES (Cont'd):

2

3     FOR THE DEFENDANTS:

4        Tucker & Ellis LLP, by MATTHEW P. MORIARTY, ESQ., 1150 Huntington Building, 925 Euclid Avenue, Cleveland, Ohio

5   44115-1414;

6        Michaels, Ward & Rabinovitz LLP, by DAN RABINOVITZ, ESQ., One Beacon Street, Boston, Massachusetts 02108;

7

8        Todd & Weld LLP, by CORRINA L. HALE, ESQ., 28 State Street, 31st Floor, Boston, Massachusetts 02109;

9        Ulmer & Berne LLP, by JOSHUA A. KLARFELD, ESQ., 1660 West 2nd Street, Suite 1100, Cleveland, Ohio 44113-1448;

10

11       Fulbright & Jaworski, LLP, by MARCY HOGAN GREER, ESQ., 98 San Jacinto Blvd, Suite 1100, Austin, Texas 78701;

12       Blumberg & Wolk LLC, by CHRISTOPHER M. WOLK, ESQ., 158 Delaware Street, Woodbury, New Jersey 08096;

13

14       Norton Rose Fulbright US LLP, by YVONNE K. PUIG, ESQ., 98 San Jacinto Boulevard, Suite 1100, Austin, Texas 78701-4255;

15       Morrison Mahoney LLP, by CAROLINE M. KELLY, ESQ., 250 Summer Street, Boston, Massachusetts 02210;

16

17       Goodwin Procter LLP, by JAMES REHNQUIST, ESQ., and ROBERTO M. BRACERAS, ESQ., Exchange Place, 53 State Street, Boston, Massachusetts 02109;

18

19       Hermes, Netburn, O'Connor & Spearing, P.C., by KARA A. LORIDAS, ESQ., 265 Franklin Street, 7th Floor, Boston, Massachusetts 02110-3113;

20

21    APPEARING TELEPHONICALLY:

22

23    For the Defendant:

24       Pessin Katz Law, P.A., by GREGORY K. KIRBY, ESQ., 901 Dulaney Valley Road, Suite 400, Towson, Maryland 21204

25

```
1                      P R O C E E D I N G S

2          (The following proceedings were held in open court before

3    the Honorable Rya W. Zobel, United States District Court Judge,

4    and the Honorable Jennifer C. Boal, Magistrate Judge, United

5    States District Court, District of Massachusetts, at the John J.

6    Moakley United States Courthouse, One Courthouse Way, Boston,

7    Massachusetts, on May 28, 2015.)

8               JUDGE ZOBEL:  Good afternoon.  Please be seated.

9               COURTROOM DEPUTY CLERK URSO:  This is In Re:  New

10   England Compounding.  It's MD-13-2419.

11              JUDGE ZOBEL:  Good afternoon.

12              I guess we should start with some indication of

13   counsel who are going to speak.  Ms. Johnson I know.  Who else

14   is going to speak?

15              MR. GASTEL:  Ben Gastel on behalf of the Plaintiffs'

16   Steering Committee, your Honor.

17              MS. DOUGHERTY:  Kim Dougherty on behalf of the

18   Plaintiffs' Steering Committee, your Honor.

19              MS. MARTIN:  Annika Martin, as pro se liaison, your

20   Honor.

21              JUDGE ZOBEL:  I'm sorry?

22              MS. MARTIN:  Annika Martin as pro se liaison.

23              JUDGE ZOBEL:  Yes.  And anybody else?  Yes, Mr.

24   Gottfried.

25              MR. GOTTFRIED:  Michael Gottfried, counsel for the
```

```
1    trustee, Paul Moore.
2            MS. TAYLOR:  Kiersten Taylor, counsel for the
3    Creditor's Committee.
4            MS. PUIG:  Your Honor, Yvonne Puig, the St. Thomas
5    Entities.
6            MS. GREER:  And Marcy Greer for the St. Thomas
7    Entities.
8            MR. WOLK:  Your Honor, Christopher Wolk, Blumberg &
9    Wolk, on behalf of the Premier defendants.
10           JUDGE ZOBEL:  Is that it?
11           (No response.)
12           JUDGE ZOBEL:  Okay.
13           MR. KIRBY:  Your Honor, this is Greg Kirby.  I'm on
14   the phone, if you can hear me.
15           JUDGE ZOBEL:  I can hear you.
16           MR. KIRBY:  I represent the Box Hill defendants.
17           JUDGE ZOBEL:  Okay.  And you plan to be heard?
18           MR. KIRBY:  Yes.
19           JUDGE ZOBEL:  Okay.  Anybody else?
20           (No response.)
21           JUDGE ZOBEL:  All right.  We have an agenda and I
22   guess we'll start with that.  I have some other matters to
23   discuss with you, but we'll start with your agenda.
24           MS. JOHNSON:  Thank you, your Honor.
25               I would actually suggest that we deviate from the
```

1    agenda just slightly.  I think it would be helpful to give the

2    Court an overview of -- now that the confirmation order has

3    been entered by Judge Boroff, of where we are, of who the

4    parties were that had to come together to get there and,

5    finally, where we go next.

6           JUDGE ZOBEL:  When does the confirmation order become

7    effective or is it effective now?

8           MR. GOTTFRIED:  June 4th.

9           JUDGE ZOBEL:  I'm sorry?

10          MR. GOTTFRIED:  June 4th.

11          JUDGE ZOBEL:  June 4th it becomes effective?

12          MR. GOTTFRIED:  Yes, your Honor.

13          MS. JOHNSON:  Yes, your Honor.

14          If I may, I have a schedule of the deadlines that are

15   set by the confirmation order I would like to hand up to the

16   Court.

17          (Attorney Johnson hands document to the Court.)

18          JUDGE BOAL:  If I could just ask.  Maybe it's in the

19   paperwork, but in terms of Judge Nieman, my understanding is

20   that his appointment needs to be made within 30 days of the

21   effective date of the plan.

22          MS. JOHNSON:  That's correct, your Honor.  Before the

23   PSC or the trustee -- I'm not sure who moves on that, but

24   before that motion can be presented to you, there must first

25   be a motion to withdraw the reference that gives this Court

1    jurisdiction to then appoint Judge Nieman.  So, one of the

2    things that the PSC is working on actively is the motion to

3    withdraw the reference, which you'll be seeing shortly, and

4    then once the reference has been withdrawn, as contemplated by

5    the plan, there'll be a separate motion to have Judge Nieman

6    appointed.

7              JUDGE ZOBEL:  Okay.  Would you have another copy of

8    these papers?

9              MS. JOHNSON:  Yes, your Honor.

10             JUDGE ZOBEL:  One for the two law clerks, please.

11             MR. GASTEL:  If I may, your Honor, I'll --

12             JUDGE ZOBEL:  Do you need one, Catherine?

13             (Discussion off the record at the Bench.)

14             MS. JOHNSON:  Okay.  So, let's take it from the top.

15             So, Judge Boroff entered the confirmation order on

16   May 20th.  The effective date then becomes June 4th.  So,

17   where do we go from there?

18             The plan creates a tort trust for the benefit of tort

19   claimants.  This Court is familiar with that because we've

20   already been through the tort trustee appointment process.

21             I will note the Court issued an order appointing

22   Lynne Riley tort trustee.  She's now actively engaged with

23   those responsibilities.

24             There was a minor typo, however, in that submission

25   that the PSC made to the Court where we reported that Ms.

1    Riley's rate was $325 an hour in one portion of our pleadings.

2    Ms. Riley's submission, which was also provided to the Court,

3    indicates it's $350 an hour.  So, we think this was just an

4    inadvertent typo, but we did want to be clear to the Court

5    that her rate is $350 an hour.

6         The trustee will first pay fees and expenses out of

7    the settlement pot and then pay non-tort creditors as

8    described in the plan.  Not all non-tort creditors are in fact

9    paid, but those who are paid are paid first.  Once that

10   happens, the funds then pour over into the tort trust and that

11   money is then reserved for the benefit of tort victims.

12        The tort trust will be funded by the contributions

13   that we've discussed before, but a total of approximately $130

14   million in estimated contributions to the national pot, which

15   are made by a combination of NECC's owners and shareholders,

16   NECC's insurers, Ameridose's insurers, GDC, ARL and its

17   insurer, Victory and its insurer, Unifirst and its insurers,

18   Liberty and its insurers, all combined into an estimated, low

19   end, of $130 million.  There's some variability in that

20   settlement amount because it includes contemplated tax refunds

21   that will occur in the future.  If those refunds come to pass,

22   it's estimated that that will increase the total amount of the

23   national pot to $157 million, give or take.

24        We then have three put into specific pots.  Each of

25   those pots is separate.  Those total $59 million and are

1    comprised of contributions from High Point, a North Carolina

2    clinic; Inspira, a New Jersey clinic; and Insight, a Virginia

3    clinic.

4            JUDGE ZOBEL:  Now, the claimants, the plaintiffs, who

5    are from one of those three states will take only from the

6    specific pot that -- the pots that you've just mentioned?

7    They will not participate in the national pot, or will they?

8            MS. JOHNSON:  That's not correct, your Honor.

9    Everyone is entitled to participate in the national pot.  Then

10   individuals who were injected at one of those three clinics

11   may participate separately and additionally in the pot for

12   their particular clinic where they were injected.

13           JUDGE ZOBEL:  Okay.

14           MS. JOHNSON:  So, I'd like to take a moment to think

15   about all of the entities, individuals and lawyers who had to

16   come together in order to pull off this settlement.

17           So, in addition to the contributing entities that I

18   rattled through, all of those entities had multiple layers of

19   lawyers.  Each had an insurer, oftentimes multiple insurers.

20   All of them had to agree and sign off on these agreements.

21           The individual defendants had to agree to turn over

22   the proceeds of their individual insurance policies as well.

23   They all had multiple levels of attorneys.

24           The PSC's lawyer and the PSC's designated counsel,

25   including Mr. Ellis, who the Court hears from regularly, were

1    heavily involved and had to approve the settlements and total

2    amounts.  We also were involved in the process of determining

3    the procedures by which those funds would ultimately be

4    allocated, as were the official committee of creditors and

5    their counsel, and the clinic settlements.  Each clinic had a

6    handful of lawyers representing different doctors as well as

7    the corporate entities and the insurers.

8            As a result of this, a plan was put together that

9    then received overwhelming support by tort victims.  Over 99

10   percent of tort victims voted in favor of the plan.

11           Of the approximately 3500 creditors who were entitled

12   to vote, about 2600 creditors voted for the plan.  Only 25

13   voted against.

14           In the end, there were no objections to the plan,

15   even from those defendants who are currently defending cases

16   in front of this Court.

17           The U.S. trustee originally filed an objection some

18   had called tepid, but conceded during confirmation hearing

19   that it believed the plan proponents had met their burden to

20   make out the remarkable circumstances that warranted the

21   third-party releases at issue here.

22           The co-chair of the credit committee filed a limited

23   objection which was withdrawn upon confirmation that

24   circumstantial evidence would be considered as proof of

25   injection under the existing plan.

1          The Tennessee Clinic Defendants and St. Thomas

2    initially objected out of fear that the plan would affect

3    their ability to identify NECC and other settling parties as

4    comparative fault entities on a verdict slip, but language was

5    compromised -- a compromise of language was reached with the

6    trustee and, in exchange, those defendants withdrew their

7    objection.

8          So, everybody likes it and we're all happy.  It was a

9    tremendous amount of work to get there.  So, where are we now?

10          On the bankruptcy side of things, the money that

11    we've talked about will eventually pour into the tort trust.

12    At that point a common benefit award, if any, will be dealt

13    with.

14          As a reminder, this Court has issued an order

15    requiring an eight percent holdback.  That is a holdback,

16    though.  It is not an allocation or an award in and of itself.

17          Lead counsel, Tom Sobol, has already solicited

18    submissions from all plaintiffs' attorneys who believe they've

19    done common benefit work and is personally reviewing those

20    submissions currently.  I mean, not right now, but this week

21    it was on his desk.

22          And we expect to have a motion to the Court to be

23    presented before the next status conference addressing a

24    common benefit award, if any.

25          Claim packages will be mailed to victims in June, by

1    June 18th.  The claim packages for most of the settlements

2    will be mailed.  The Inspira -- I'm sorry -- the Insight

3    deadline is a little behind that, but, in general, in June and

4    July the claim packages will be sent out.  From there, victims

5    will submit claims.  Those claims will be processed as they

6    are received.

7         The deadline, however -- the deadline for submitting

8    claim forms is not until October 2nd.  So, even though the

9    work is done as they come in, it's not until October 2nd that

10   the total number of points claimed can be calculated.  At that

11   point there will be an estimate of the amount of points and

12   the dollars that will go to each claimant and interim

13   payments, we are hopeful, will be mailed by year-end.  That is

14   an optimistic statement, your Honor.  It requires everything

15   to run smoothly and there are not to be any wrinkles, but we

16   are very optimistic that the initial interim payments will be

17   made by year-end.

18        JUDGE ZOBEL:  Do you know at this point what

19   percentage of the whole the interim payments will represent?

20        MS. JOHNSON:  No, we do not, and I am reluctant to

21   estimate, your Honor, in part because you have a tax refund

22   issue.  You just don't know how big the deposit is going to be.

23        The claims are then paid out according to the claim

24   resolution facilities that are incorporated into the plan

25   itself.  So, in terms of how people will be compensated and

1   how many points you're awarded for a particular injury

2   category, all of that has now been confirmed and adopted by

3   Judge Boroff in entering the confirmation order.

4           There are slightly different procedures for each

5   clinic settlement, but, by in large, the broad strokes track

6   the same settlement process for the national settlement class.

7           So, that's where we go with the bankruptcy

8   settlement.

9           JUDGE ZOBEL:  Do you anticipate the same timeline for

10  the three separate, Inspira and Insight and whatever --

11  Premier or whatever the third one was?

12          MS. JOHNSON:  Because the claim facility procedures

13  are a little bit different for each of the clinics, your

14  Honor, I would be reluctant as I'm sitting here to estimate

15  the timeframe for those pay-outs, but, recall, that everyone

16  who is getting a pay-out in one of the three clinic

17  settlements would also be getting a pay-out from the national.

18  So, at minimum, all victims should be -- to the extent they're

19  getting money, all victims will be getting something by the

20  end of the year.

21          So, turning back to the MDL.  So, where do we go now

22  with the MDL?

23          The vast majority of cases that are currently in this

24  MDL will ultimately be dismissed as a result of this

25  settlement.  Most of the cases in this MDL name only settling

```
1    defendants.  So, what's left?

2           The primary goal of the MDL now, as the PSC sees it,

3    is to conduct common discovery of the national defendants who

4    are contributing to the settlement pot and ensure that all of

5    that common discovery material is placed into a single central

6    repository.

7           Now, Judge Boal spent too much time, frankly -- she

8    was very kind to us this morning -- listening to arguments and

9    discovery disputes about what that discovery should entail;

10   whether there will be depositions or not depositions, whether

11   there are documents that need to be compelled.  We see that as

12   the primary function of this MDL now, is putting our arms

13   around all of what is truly common discovery from the settling

14   defendants, which includes NECC, Ameridose, GDC, the

15   individual Insiders, as well as ARL, Unifirst, Liberty, any of

16   the other settling defendants.

17          Now, the PSC feels very strongly -- and I probably

18   said it too often -- that this common discovery of the

19   settling defendants should be done once and only once and it

20   should be done efficiently, should be centralized and then it

21   should be done.  Meaning, there should be a deadline by which

22   that discovery is completed.

23          JUDGE ZOBEL:  Who is conducting this discovery of the

24   settling defendants?  Is it PSC or the individual plaintiffs

25   or is it primarily the other defendants?
```

1          MS. JOHNSON:  By in large, the PSC has concluded

2     taking discovery of the settling defendants.  The PSC is still

3     engaged in lots of other discovery of other non-parties and

4     the defendants in this case that have not settled, but, by in

5     large, we have concluded what we think we need in order for us

6     to preserve plaintiffs' rights to take the common discovery

7     from settling defendants.

8          What you are seeing primarily are defendants in the

9     MDL serving discovery on settling defendants to bolster their

10    comparative fault defenses, and the Court and many of the

11    lawyers in this room heard a number of arguments this morning

12    about that, but, by in large, it is discovery to help

13    comparative -- establish comparative fault.

14         JUDGE ZOBEL:  By comparative fault, you mean

15    entitlement to contribution?

16         MS. JOHNSON:  Not quite, your Honor.  Understanding

17    that the --

18         JUDGE ZOBEL:  Talking about comparative fault to be

19    between plaintiff and defendant?

20         MS. JOHNSON:  No, your Honor.  So, Tennessee has a

21    unique statutory scheme and while I do not profess to be an

22    expert in that scheme, broadly speaking -- and Mr. Gastel will

23    correct me if I get this wrong -- under Tennessee law for...

24         (Discussion off the record.)

25         MS. JOHNSON:  ...for not the products claims, for the

```
1    other products claims, Tennessee has a statute that permits a

2    defendant to identify other parties who bear fault on the

3    verdict slip and actually ask the jurors to assign the amount

4    of fault --

5             JUDGE ZOBEL:  And they call that comparative fault?

6             MS. JOHNSON:  That's correct, your Honor.  That's

7    correct.

8             So, it is an effort by -- so, the discovery that's

9    being done of the settling defendants is an effort to help

10   primarily the Tennessee, also the New Jersey, defendants

11   bolster their comparative fault defenses and be able at the

12   end of the day to give the jurors a jury slip that says it's

13   not all our fault, tell us how much fault is their fault, and

14   then the Tennessee defendants' liability is reduced by that

15   percentage.

16            JUDGE ZOBEL:  I guess I don't fully understand how

17   the settling defendants' conduct fits into that, because the

18   settling defendants, presumably, had nothing to do with the

19   Tennessee defendants.

20            MS. JOHNSON:  As I understand it, your Honor,

21   although I'm trying to pick a simple example, the Tennessee

22   defendants intend to say it's NECC's fault because they sold

23   the poison product --

24            JUDGE ZOBEL:  That I can understand.

25            MS. JOHNSON:  -- and it's their fault.
```

```
 1            JUDGE ZOBEL:  But how about the settling defendants

 2    other than NECC?

 3            MS. JOHNSON:  You would have to ask the Tennessee

 4    defendants, your Honor.

 5            MS. GREER:  Your Honor, Marcy Greer for the Tennessee

 6    defendants.

 7            And I, too, am not an expert on Tennessee law, but

 8    the concept is --

 9            JUDGE ZOBEL:  You represent them.

10            MS. GREER:  Exactly, but I -- so, I just want to be

11    clear on that point, but the way that it works --

12            JUDGE ZOBEL:  Well, I'm still not clear.  If you

13    represent them, you should be clear on Tennessee law.

14            MS. GREER:  I'm clear on how this will work and what

15    we're trying to accomplish.

16            JUDGE ZOBEL:  Okay.

17            MS. GREER:  And that is, to put the other defendants

18    -- they won't be responsible.  They won't have to pay at the

19    end of the day, but on the verdict form we're entitled to

20    submit the defendants -- the people who are responsible for

21    what happened, all of them, and --

22            JUDGE ZOBEL:  Yes, but let me just --

23            MS. GREER:  -- we have to establish a case against

24    them.

25            JUDGE ZOBEL:  Let me just focus you.
```

1          I understand how Tennessee might want to know

2     something about NECC.  I do not understand how Tennessee

3     defendants can benefit from the Virginia defendants'

4     settlement.

5          MS. GREER:  Not the Virginia defendants.  Only the

6     national.

7          JUDGE ZOBEL:  So, when you talk about getting

8     discovery from other defendants, you're talking about the

9     Framingham defendants?

10          MS. GREER:  Only the national defendants.  Not just

11     Framingham.  Also the entities that cleaned -- that designed

12     and constructed the clean rooms, that maintained them.  All of

13     those defendants, who are the national defendants, are part of

14     this discussion.

15          JUDGE ZOBEL:  Okay.  Now I understand.

16          At some point there was a question raised about what

17     law would govern the trial in this case.  Would it be useful,

18     Ms. Johnson, to get a decision on that here?  That is, would

19     it be useful to consider what is the choice of law, if and

20     when any of these cases go back because the defendants won't

21     agree to have them tried here?

22          MS. JOHNSON:  Absolutely, your Honor.  That would be

23     incredibly helpful.

24          JUDGE ZOBEL:  In that case, let us establish a

25     schedule for doing that.

```
1              MS. JOHNSON:  Terrific.

2              JUDGE ZOBEL:  Would it be possible for -- I mean, I

3    assume the plaintiffs should take the burden -- the initial

4    burden and then the defendants who are interested in this can

5    respond.  And I was thinking about a schedule whereby

6    somewhere around mid June you would let me know what your

7    proposal is.  Is that too fast?

8              MS. JOHNSON:  Yes, your Honor.  We would suggest,

9    actually, that the PSC would file a brief -- motion or brief.

10   I'm not sure what it's styled as.

11             JUDGE ZOBEL:  Motion for determination of the choice

12   of law.

13             MS. JOHNSON:  Choice of law.  And we would propose

14   filing that by mid June.

15             MS. GREER:  Your Honor, if I may.

16             This issue was briefed in the motions to dismiss, and

17   in your order on August 29th, you said that Tennessee law

18   applied.  We briefed the issue on the context of the motion to

19   dismiss, because whether you use First Circuit or Sixth

20   Circuit choice of law principles, it all leads to the same

21   place, which is Tennessee as the substantive law to govern

22   these claims.

23             JUDGE ZOBEL:  Well, let's review it and see whether

24   -- that was in a different context from the context I'm now

25   talking about, which has to do with the trial, and if -- I
```

1    mean, I assume the Tennessee cases will be tried in Tennessee.

2    At least, that's what it looks like now.

3             So, I think we ought to look at it in the context of

4    what would be the governing law at the time of trial.

5             MS. JOHNSON:  Yes, your Honor, we will do that.  I

6    will say the context --

7             JUDGE ZOBEL:  June what?

8             (Discussion off the record.)

9             MS. JOHNSON:  June 15th, if that's a weekday.

10            COURTROOM DEPUTY CLERK URSO:  Yes.

11            JUDGE ZOBEL:  Okay.  And then the defendants,

12   whichever ones are not settled and who may want to go back to

13   their home state -- so, it's not just Tennessee.  There may be

14   some New Jersey ones and some -- I've forgotten.  I think we

15   have one Alabama case and there may be some in Texas.  The

16   appropriate defendants would file -- when would you suggest?

17   Right after July 4th, would that be okay?

18            MS. GREER:  Yes, your Honor, we can make that work.

19            COURTROOM DEPUTY CLERK URSO:  So, it will be 7/6?

20            JUDGE ZOBEL:  Yes.

21            COURTROOM DEPUTY CLERK URSO:  Okay, 7/6.

22            JUDGE ZOBEL:  7/6.

23            And then the plaintiffs could file a short reply, no

24   more than three pages, I think, by the week after that.

25            COURTROOM DEPUTY CLERK URSO:  Would be 7/13.

1          MS. JOHNSON:  Yes, your Honor.

2          JUDGE ZOBEL:  Do I need to hear argument or can I

3    decide it on the papers?  What's Tennessee's view?  I mean, I

4    -- if there is New Jersey here, you might also tell me.

5          MR. GASTEL:  I think the PSC would prefer argument on

6    that, your Honor, and one clarification.  How long did you

7    want the reply brief to be?

8          COURTROOM DEPUTY CLERK URSO:  Three pages.

9          JUDGE ZOBEL:  Three pages.

10         MR. GASTEL:  Three pages.  Thank you, your Honor.

11         JUDGE ZOBEL:  I don't want a reply brief at all.

12         MS. JOHNSON:  How long would you like the opening

13    brief to be, your Honor, 20 pages or less?

14         JUDGE ZOBEL:  Yes, 20 pages under the rule.  Each

15    side has 20 pages, but the reply can be three pages.  And then

16    you do want a hearing?

17         MS. JOHNSON:  Yes, please, your Honor.

18         JUDGE ZOBEL:  We don't have anything scheduled I

19    think in July, do we?

20         COURTROOM DEPUTY CLERK URSO:  No.

21         MS. JOHNSON:  I think we have a July 27th status --

22    oh, I'm sorry, no, that's off.

23         JUDGE ZOBEL:  I think August was our last --

24         MS. GREER:  August 5th, your Honor.

25         MS. JOHNSON:  August 5th, your Honor, would be the

 1    next status conference.

 2              COURTROOM DEPUTY CLERK URSO:  Yes.

 3              JUDGE ZOBEL:  So, maybe we can add it into that and

 4    in that case we can extend the -- well, August 5th -- so, we

 5    have the hearing as a status conference on August 5th.

 6              MS. JOHNSON:  Yes, your Honor.

 7              JUDGE ZOBEL:  Will that work for you?

 8              JUDGE BOAL:  Yes.  And I would just add, because with

 9    Tennessee and New Jersey and, I gather, there's another state

10    that has comparative fault, as being the only states, if the

11    choice of law is between Massachusetts and Tennessee, with

12    respect to all the discovery motions that we heard earlier

13    today, if Massachusetts law is going to apply, then we don't

14    have the comparative fault discovery that we were talking

15    about earlier today, maybe.  But I don't want to hear argument

16    on that now.  I think you're absolutely right, we had plenty

17    this morning, but I would just -- could the affected parties

18    at least file something in a week just to let me know whether

19    or not they think the decision is going to affect the

20    discovery, if they can.  Is that possible?

21              MS. JOHNSON:  Yes.  May I suggest within one week

22    each side file a brief of no more than three pages to inform

23    the Court of their position.

24              JUDGE BOAL:  That would be helpful.

25              JUDGE ZOBEL:  Now, I had so rudely interrupted you,

1    Ms. Johnson.  Where were we?

2            MS. JOHNSON:  All interruptions are very much

3    appreciated, your Honor.

4            So, let's talk about -- I think I was describing what

5    the remaining cases are, what's left in the MDL.

6            And there are three sets of motions in front of the

7    Court that relate to scheduling issues.  Before I address any

8    of those in particular or try to argue it, I would like to

9    just share with the Court what the PSC's view is of what's

10   left and just broadly at a high level so that we can have the

11   discussion to describe how we think that might be phrased or

12   bucketed.

13           So that the remaining cases, they really fall into

14   five buckets.  I tried to make it three buckets, but, really,

15   it's five.

16           The first would be the St. Thomas Clinics and

17   Entities.  There are 89 cases currently pending against St.

18   Thomas in the MDL.  Discovery is well underway.  The case has

19   been on file for two years.  The PSC has proposed a Bellwether

20   process to deal with the St. Thomas cases.  I think we'll come

21   back to that in a minute.

22           And just to mention it so the Court is aware, there

23   was a motion filed for an expedited trial of the Wayne Reed

24   case.

25           JUDGE ZOBEL:  I am very much aware of that.

1          MS. JOHNSON:  Counsel for Mr. Reed has asked that

2     that be heard at the next status conference because he's not

3     able to participate today, but I did want to just mention to

4     the Court --

5          JUDGE ZOBEL:  Well, there's no opposition filed yet

6     and it's not due for another week or so.

7          MS. JOHNSON:  That's correct.  That's correct.  And

8     we don't need to be rushing to have the Court address that

9     today, particularly when the opposition and response has not

10    been filed yet, but we would like to have it on the agenda for

11    the next conference.

12         The second bucket, then, would be the other Tennessee

13    clinic cases which are cases against Specialty Surgery Center.

14    There are 24 cases in the MDL against Specialty Surgery

15    Center.  Those cases, sometimes I think we lump in, and talk

16    about the Tennessee defendants or the Tennessee clinics, but

17    there are some differences between those groups, one of which

18    that is important is that there's a newly-discovered defendant

19    relating -- I'm sorry -- a newly-discovered defendant in cases

20    against Specialty Surgery Center and I understand the

21    plaintiffs need time to file motions to amend to add that

22    defendant quickly.  The time to do so is approaching.

23         The third bucket would be cases against Premier,

24    which is a New Jersey clinic.  There are 40 cases against

25    Premier in the MDL.  Discovery there is also well underway.

1          The PSC has proposed that the pretrial schedule for

2    Premier should be -- should lag behind St. Thomas a bit, but

3    really be the second phase of trial.  I'm sorry, I said that

4    very poorly.  That phase two of trials would include Premier,

5    and the PSC has proposed a schedule for the Premier cases that

6    tracks but lags a little bit behind the St. Thomas schedule.

7          The fourth bucket would be cases against Box Hill,

8    which is a clinic in Maryland.  There are eight cases on file

9    against Box Hill in the MDL.  I understand that counsel for

10   Box Hill is aware of 25 additional claims against Box Hill and

11   counsel for plaintiffs have announced their intention to file

12   additional cases in the MDL.  That's not happened yet, but

13   just to give a preview.

14         JUDGE ZOBEL:  So, the 25 cases are in the state

15   court?

16         MS. JOHNSON:  No.  Claims, not cases, your Honor.

17   So, 25 victims who have identified that they may have causes

18   of action against Box Hill.

19         JUDGE ZOBEL:  At the moment there are eight?

20         MS. JOHNSON:  Correct.

21         Box Hill is in a different category in the sense that

22   even though the PSC served discovery requests on Box Hill

23   quite sometime ago, Box Hill has not yet produced a single

24   document, and while the PSC is pressing forward with

25   discovery, trying to litigate those cases as quickly as is

```
1     reasonably possible, we recognize that Box Hill becomes a
2     third tier, a third-phase defendant.  We expect that they will
3     fall somewhere behind the Premier schedule.  And, again, we
4     proposed a schedule as to how -- those specific deadlines and,
5     in fact, I will hand up to the Court, if I may -- I apologize,
6     your Honor.  One moment.
7               (Pause.)
8               (Attorney Johnson hands document to the Court.)
9               JUDGE ZOBEL:  Don't you need that?
10              MS. JOHNSON:  No.  I can make do.
11              MR. GASTEL:  I have one in a binder.
12              JUDGE ZOBEL:  I have --
13              MS. JOHNSON:  I've handed up to the Court --
14              JUDGE ZOBEL:  I have it already.  You gave me one
15    earlier.
16              MS. JOHNSON:  Okay.  Then I will take it back, if I
17    may.  Thank you.
18              JUDGE ZOBEL:  Is this different from --
19              MS. JOHNSON:  I think I can help you out, your Honor.
20              This is a copy of an amended proposed MDL Order 9B
21    that the Plaintiffs' Steering Committee filed yesterday, and
22    I've handed this up to the Court because this proposed order
23    sets out the comprehensive schedule that the PSC is proposing
24    for St. Thomas, Premier and Box Hill, all in one place, laid
25    out side by side, so the Court can actually see that proposal.
```

1              I should note, there was an earlier version of this

2       order that we submitted.

3              JUDGE ZOBEL:  Yes.

4              MS. JOHNSON:  This is amended.

5              JUDGE ZOBEL:  This is number -- no.

6              MS. JOHNSON:  This is modified to reflect --

7              JUDGE ZOBEL:  Okay.

8              MS. JOHNSON:  -- the Plaintiffs' Steering Committee

9       also yesterday agreed that it would -- I guess we agreed that

10      we would not fight the defendants' motions quite as hard.  We

11      agreed that we would extend the deadlines set by existing MDL

12      Order 9 by 45 days.  All of the deadlines set by MDL Order 9

13      by 45 days.

14             So, the schedule you have in front of your Honors

15      really is the schedule and the PSC's proposal, and I would

16      urge the Court to use this as the guiding proposal from the

17      PSC when considering any of the scheduling motions that you

18      may hear today.

19             JUDGE ZOBEL:  Well, are the defendants objecting to

20      this?

21             MS. GREER:  Your Honor, we haven't had a chance to

22      respond to it yet.  Our response date is not until next week.

23             JUDGE ZOBEL:  Okay.  So, I should assume that you

24      will object?

25             MS. GREER:  We just got it last night and we think

1    there's some issues that we need to take up.

2            MR. WOLK:  And, your Honor, Chris Wolk for the

3    Premier defendants.

4            We also object.  We filed a brief objecting to the

5    motion and the order -- I guess it was the order before the

6    one that was filed last night.  I have not seen the one that

7    was filed last night yet.  So, I can't comment on it.

8            If it's being represented that it's just extending

9    the existing deadlines by 45 days, we do object to that, and

10   we've also submitted to your Honor our proposal for a new case

11   management order for your consideration.

12           JUDGE ZOBEL:  Okay.

13           MS. JOHNSON:  Just to be clear, you wanted to extend

14   the deadlines by 90 days, right?  So, now we've agreed to

15   extend them by 45.  So, you object to the 45 days?

16           MR. WOLK:  Well, I think in my deadline -- I set

17   forth the deadlines in my brief.  I don't think it was 90

18   days.  I think I asked for common discovery to be extended to

19   December.  That was the --

20           MS. JOHNSON:  Okay.

21           MR. WOLK:  Maybe there's some confusion.  I'd be

22   happy to clear it up, but --

23           JUDGE ZOBEL:  All right.  So, what is before me is --

24           MR. WOLK:  Your Honor, part of the --

25           JUDGE ZOBEL:  Part of the agenda was the proposed --

1    the cross-motion to amend the Order No. 9.

2          MS. JOHNSON:  And if I --

3          JUDGE ZOBEL:  Now amending Order 9B.

4          MS. JOHNSON:  There is no Order 9B.

5          JUDGE ZOBEL:  There was a proposed Order 9B.

6          MS. JOHNSON:  This is an amended proposed order.  It

7    would become an Order 9B.

8          JUDGE ZOBEL:  Okay.

9          MS. JOHNSON:  And if I may.

10          I understand there are a number of motions to be

11    argued.  I did want to at least identify the fifth bucket of

12    cases for your Honor before we perhaps turn to argument.

13          JUDGE ZOBEL:  Well, I wasn't looking for the argument

14    quiet yet.  I'm just trying to understand what we're talking

15    about.  So, what we're talking about is Item A-1 on the agenda?

16          MS. JOHNSON:  Correct, your Honor.

17          JUDGE ZOBEL:  Okay.

18          MS. JOHNSON:  So, the fifth bucket of cases, then,

19    which is addressed in Item A-1 on the agenda, are cases

20    against clinics where there are five or fewer cases on file in

21    the MDL, and there is a list of those clinics if you look in

22    that proposed order that you have in front of you.  At the

23    very last page, it identifies those clinics by name.  I think

24    it's about 18 clinics, your Honor, that are on that list.

25          And in terms of those clinics, the PSC has asked in

1    its motion to amend MDL Order 9, that common discovery as to

2    those clinics be stayed, that the deadline for common

3    discovery as to those clinics be stayed.

4            Now, the reason that we're asking for that is there's

5    some question about whether there could even be common

6    discovery of a clinic that would really benefit multiple

7    people if there are four or fewer cases.  There may be more

8    cases filed, there may not be, but at least as of right now,

9    the PSC's strategic suggestions, that we focus on litigating

10   those cases that we have been litigating with the majority of

11   cases and we move forward with it.

12           Now, I want to make one important distinction, your

13   Honor, which is this:  The PSC again will reiterate that it

14   thinks now is the time to do discovery from the settling

15   defendants.  So, when we talk about extending deadlines or

16   staying anything with respect to these clinics of four or

17   fewer cases, those clinics need to understand that we are not

18   staying the deadline for completing common discovery against

19   the settling defendants.  That is to be done now, once and for

20   all time.  The PSC, I think, has conveyed that very loudly to

21   all of those clinics as well this Court and all of the lawyers

22   on the phone, but that is our position.

23           Now, what ultimately --

24           JUDGE ZOBEL:  Sorry.  Are you saying that these cases

25   would not benefit from common discovery or that they would be

1    included in -- that everything would be stayed except common

2    discovery as to these small defendant group?

3            MS. JOHNSON:  One moment, your Honor.

4            (Pause.)

5            MS. JOHNSON:  We are asking that the Court enter an

6    order temporarily staying the deadlines for completing common

7    discovery against those clinic and doctor defendants with five

8    or fewer filed actions currently pending against them in the

9    MDL, but not staying the deadline for those clinics completing

10   discovery from the settling defendants and third parties.

11   Meaning, the PSC doesn't want to take the resources to go and

12   do discovery of each of those clinics, but the PSC feels very

13   strongly that those clinics need to understand that the

14   deadline for completing common discovery against the settling

15   defendants will run soon.  Whether that gets extended some or

16   not, that will run and this is their opportunity to take that

17   discovery.

18           JUDGE ZOBEL:  Okay.

19           MS. JOHNSON:  So, with that setup, we're turning to

20   the agenda, your Honor, if we can.

21           There are three groups of motions that relate to

22   scheduling issues.  The first is agenda Item No. 1.  That's

23   the PSC's motion to amend MDL Order 9 and, again, that motion

24   asks for three things:

25           It asks for the Court to stay the deadline for

1    conducting common discovery against the clinics with five or

2    fewer cases filed against them.  It asks the Court to adopt

3    the amended proposed MDL Order 9B and set pretrial schedules

4    as to Premier and Box Hill; and, third, it asks the Court to

5    adopt the PSC's revised Bellwether proposal and schedule as to

6    St. Thomas and, again, proposed amended Order 9B puts all of

7    those in one place in one schedule for the Court to consider.

8    The second --

9            JUDGE ZOBEL:  This is something that should be argued

10   today?

11           MS. JOHNSON:  I don't think we can argue it today,

12   your Honor.  Technically, the PSC's motion was a cross motion

13   that was opposing a scheduling motion filed by somebody else,

14   but the time to oppose the PSC's cross motion has not run,

15   unfortunately.  And so, I understand the St. Thomas Entities

16   did not want this heard today.  I also understand that the

17   Premier entities and the Box Hill entities do want this heard

18   today, and we would all like the scheduling issues to be

19   resolved.  I know that much.

20           JUDGE ZOBEL:  Is there any reason why -- is this for

21   you or me?  It's discovery.

22           (Laughter.)

23           MS. JOHNSON:  I can tell you what we think about

24   that, your Honor, but the real answer is the PSC has no

25   preference which judge resolves the issue.  I think

1    technically --

2              JUDGE ZOBEL:  We will work on it together.

3              MS. JOHNSON:  Okay.  Wonderful.  Wonderful.

4              JUDGE ZOBEL:  So, is there any reason, since we are

5    double-teaming you guys for once, that we not -- why can't we

6    decide it as soon as all the papers are in?  Why do we need

7    argument?

8              MS. JOHNSON:  The PSC is perfectly comfortable with

9    that.

10             MR. WOLK:  Your Honor, the only thing that I want to

11   bring to the Court's attention is right now we have a June

12   15th deadline, and I did have some discussions at the break

13   about this, and I just want to be perfectly clear.

14             I don't know if your Honor is going to be able to

15   argue this at the next conference or hear it on the papers

16   when all the submissions are in, but it may interfere and run

17   into that June 15th deadline that's looming right now.

18             So, I don't know if I can consent on this request.  I

19   don't know, but my proposal would be if we could get something

20   to get that common discovery deadline pushed 45 days, 60 days,

21   I don't know, until this can be decided by your Honor and we

22   can -- and argued and decided and have an order entered.

23             JUDGE ZOBEL:  The answer to that is that -- this was

24   filed as of two days ago, right?

25             MS. GREER:  Right.

```
1              MS. JOHNSON:  Yes.

2              JUDGE ZOBEL:  So, you will get your opposition in 14

3    days from two days ago.  Judge Boal and I will review it.

4    We'll make a decision.  That will include an extension of time

5    for the common discovery that takes into account the time that

6    was lost.

7              MS. JOHNSON:  And --

8              JUDGE ZOBEL:  And you can in your response suggest

9    what that would be and we will, obviously, consider it.  So,

10   we will decide it without further argument, but based on these

11   additional facts that you want to tell us that are clearly

12   important.

13             MS. JOHNSON:  And to be clear, there may not be any

14   disagreement here on the following point:

15             The PSC has agreed to a 45-day extension of the

16   deadline for common discovery and the other deadlines set by

17   MDL Order 9.  We've stipulated to that.

18             JUDGE ZOBEL:  So, there may not even be anything to

19   decide, but to the extent that you think there is, given the

20   stipulation, you tell me.

21             MR. WOLK:  We'll submit it to your Honor.

22             JUDGE ZOBEL:  Okay.  So, this will be decided on the

23   papers.

24             JUDGE BOAL:  Yes.  And if I could just add, the PSC

25   in the past has done very helpful charts that outline what the
```

1     differences are between the parties' proposal and it's a very

2     useful visual.  So, I would very much appreciate if we could

3     get that once all the different proposals are in.

4          MS. JOHNSON:  We will provide that for you, your

5     Honor, and we'll try and turn around as quickly as we can

6     after the defendants file their response.

7          JUDGE ZOBEL:  Okay.

8          MS. JOHNSON:  And my colleagues are correcting me,

9     that we have stipulated to a 45-day extension of the unexpired

10    deadlines in MDL Order 9.

11         JUDGE ZOBEL:  All right.  That takes care of A-1,

12    right?

13         JUDGE BOAL:  We're moving faster than this morning.

14         MS. JOHNSON:  Believe it or not, we are.

15         (Laughter.)

16         MS. JOHNSON:  I do think much of this, your Honor, we

17    have covered now by our sort of free-and-loose discussion.

18    So, maybe we can actually make some progress.

19          I think that brings us to (B), report to the Court.

20    In terms of the status of mediation efforts, we've discussed

21    the confirmation order and those deadlines.  So, we can move on.

22          On the insurance declaratory judgment actions, which

23    is B-3, one thing to bring to the Court's attention is that a

24    declaratory judgment action has been filed involving Specialty

25    Surgery Centers' insurance coverage.  That lawsuit actually

1    names tort victims as defendants in that case and the tort

2    plaintiffs have been served with copies of that complaint.

3    They weren't pleased about it.  We are now coordinating with

4    insurance counsel on how the briefing will proceed there.

5           On No. 4, the status of discovery.  Judge Boal heard

6    this morning 4(a), motions relating to a subpoena issued on

7    the FDA.  I don't think the Court heard this morning or has

8    ever heard MSN's request to defer or abstain, which is 4(b),

9    but I think that's functionally moot, isn't it?

10          MR. RABINOVITZ:  That is correct.

11          MS. JOHNSON:  Okay.  4(c), the -- it's just an

12   acknowledgment that Judge Boal issued an order on the motion

13   to compel insurance from St. Thomas.  So that issue has now

14   been resolved.

15          On No. 5, status of the litigation track.  There have

16   been a number of Bellwether submissions submitted to the

17   Court.  The PSC, St. Thomas and the Tennessee Clinic

18   Defendants have each submitted a proposal.  I don't know that

19   we need to argue that.

20          I will just say, for the PSC the amended -- proposed

21   amended order -- I'm sorry -- proposed amended MDL Order 9B

22   modifies what we submitted as our Bellwether schedule there to

23   reflect the 45-day extension of deadlines, unexpired deadlines

24   in MDL Order 9.  So, I would direct the Court to that proposed

25   order that we've been focusing on this morning as the PSC's

1    current Bellwether proposal.

2         JUDGE ZOBEL:  Okay.

3         MS. GREER:  And, your Honor, I would just point out

4    that under MDL Order 9, we have 30 days to respond to each

5    other's Bellwether submissions, which is June 17th.

6         MS. JOHNSON:  So, the PSC will waive that response if

7    the Tennessee defendants will.  Our feeling is that this has

8    been briefed ad nauseam, and we appreciate the Court affording

9    us an opportunity to respond to each other's, but from our

10   perspective, no response is really productive at this point.

11        MS. GREER:  Your Honor, we would appreciate your

12   guidance on that.  We have not had an opportunity to respond

13   to -- the revised order came in last night.  We haven't had a

14   chance to look at it and now that's part of their submission.

15        MS. JOHNSON:  Well, that's -- just to be clear,

16   that's different.  So, there's 30 days that Judge Boal set

17   originally for the Bellwether submissions, response to each

18   other's Bellwether submissions, right?  I'm suggesting we

19   waive that additional response.  Obviously and, of course, Ms.

20   Puig is entitled to respond to the proposed order we just filed.

21        JUDGE ZOBEL:  I think she's suggesting that you

22   include the Bellwether response in your response to what is

23   now Docket No. 1900.

24        MS. GREER:  And that works for us.

25        JUDGE ZOBEL:  Okay.

```
 1              MS. JOHNSON:  That brings us to 5(b), motions for

 2      pretrial schedule.  I think we functionally addressed that

 3      already.  I don't know, however, whether the Tennessee

 4      Clinics, Premier and Box Hill wish to be heard additionally on

 5      those issues.

 6              MS. PUIG:  We do, your Honor.  Yvonne Puig for the

 7      St. Thomas Entities.  We were just about to --

 8              JUDGE ZOBEL:  What are you responding to?

 9              MS. PUIG:  She just said that we think that we took

10      up the St. Thomas Entities' motion.  We did not.  Judge Boal

11      recessed today right before my motion was to be heard.

12              So, the Court can take it up today or refer it back

13      to Judge Boal, whatever is the Court's discretion.

14              JUDGE ZOBEL:  Why do we need to hear argument on

15      every discovery motion?  Can it not be decided on the briefs?

16              MS. JOHNSON:  The PSC is content with that, your

17      Honor.

18              JUDGE ZOBEL:  I mean, I know you feel left out, but

19      apart from that, do we really need oral argument on such a

20      motion?

21              MS. PUIG:  Thank you, your Honor.

22              I don't feel left out, but I do want to be heard, if

23      only briefly and, fortunately, my argument will be vastly

24      truncated by what occurred today for two hours, and I only

25      regret that this Court was unable to hear it, but in brief --
```

```
 1              JUDGE ZOBEL:  Well, I don't want to hear the argument
 2    right now.
 3              MS. PUIG:  All right.
 4              JUDGE ZOBEL:  If you were to insist on argument,
 5    we'll figure out when we're going to do it, assuming we finish
 6    at a reasonable time today.
 7              MS. PUIG:  Thank you, your Honor.  I appreciate it.
 8              MS. JOHNSON:  Agenda Item 6 is a report from the pro
 9    se liaison.
10              JUDGE ZOBEL:  Lisa, we need to get in more
11    microphones on counsel table.
12              (Discussion off the record at the Bench.)
13              MR. WOLK:  Your Honor, before we move on to the next
14    item, I have an item listed on the agenda.  It's Docket No.
15    1852.  It's my motion to extend time for common discovery to
16    December 15th.  That was submitted and it was replied to, but
17    I believe that the PSC filed a cross motion to --
18              JUDGE ZOBEL:  Well, isn't that part of 1900?
19              MS. JOHNSON:  Yes, your Honor.
20              JUDGE ZOBEL:  And you will get a chance to respond to
21    that.
22              MR. WOLK:  And I just want to make sure that that's
23    clear that that will all be part of the same motion and that
24    what we are --
25              JUDGE ZOBEL:  Everything that deals with extension of
```

1    time on common discovery issues is now in your hands to

2    respond to.

3              MR. WOLK:  Thank you, your Honor.

4              JUDGE ZOBEL:  Thank you.  That is, your collective

5    hands.

6              MS. JOHNSON:  They could file one collective

7    response.  Just a thought.

8              JUDGE ZOBEL:  Yes, the pro -- not pro se.  The --

9    yes, pro se liaison.

10             MS. MARTIN:  Yes, your Honor.  Annika Martin.

11             So, my report is brief.  I've had --

12             JUDGE ZOBEL:  I'm glad you're doing this.  I must

13   confess, that when I went senior, I had a right to decide what

14   cases I did not want to hear and I have eliminated all pro se.

15             (Laughter.)

16             MS. MARTIN:  Well, I'm happy --

17             JUDGE ZOBEL:  So, I'm happy that you're taking care

18   of it.

19             MS. MARTIN:  Thank you, your Honor.

20             So, I've been contacted by around ten people, not all

21   of them were pro se's.  So, for those that were not pro

22   se's --

23             JUDGE ZOBEL:  You instructed counsel.

24             MS. MARTIN:  -- directed to talk to their counsel.

25   And for those who were pro se's, I had some questions about

```
 1    the ballot that I was able to answer and about filing the
 2    claims.  One gentleman needed an extension of bar date.  So, I
 3    helped him file that and he successfully got an extension and
 4    filed his claims.  So, he's taken care of.  So, everyone that
 5    has contacted me has been -- had their questions answered or
 6    has happily gone on their way.
 7               JUDGE ZOBEL:  Thank you.
 8               MS. MARTIN:  So, that is what I will continue to do.
 9               MS. JOHNSON:  In terms of No. 7, the status of the
10    bankruptcy, we've already covered that.
11               In terms of No. 8, the status of appeals.  The
12    appeals have been stayed, if not dismissed, at this point.
13    So, technically, I think it's still docketed in the First
14    Circuit, but there's nothing going on.
15               The schedule for future status conferences.  We have
16    a June 24th conference set with Judge Boal at 11:30 and a
17    conference with Judge Zobel at 2:00.  We also have an August
18    5th conference set with Judge Boal at 11:30 and with Judge
19    Zobel at 2:00.
20               We'd ask that the Court schedule the September
21    conference now.  Since the August conference is August 5th, I
22    would say sometime the first week in September, first or
23    second week in September.
24               COURTROOM DEPUTY CLERK URSO:  Well, Labor Day is on
25    the 7th.  So, you want it the first --
```

1              JUDGE ZOBEL:  No.  After that.

2              MS. JOHNSON:  Let's do after that.

3              JUDGE ZOBEL:  After Labor Day.

4              COURTROOM DEPUTY CLERK URSO:  So, that week we could

5    do the 9th.  September 9th, that's a Wednesday.

6              MS. PUIG:  I'm unable to do it on that day, your

7    Honor.  Could we do the next week?

8              COURTROOM DEPUTY CLERK URSO:  The following week?

9              MS. PUIG:  Yes.

10             COURTROOM DEPUTY CLERK URSO:  Okay.  We could do the

11   16th or 17th of September.

12             JUDGE ZOBEL:  Will that work for you?

13             COURTROOM DEPUTY CLERK URSO:  Is that good for you?

14             MS. JOHNSON:  I'm a little concerned that that's far

15   out, given the number of deadlines that we have and how

16   quickly we're trying to move on some of this.

17             COURTROOM DEPUTY CLERK URSO:  What about the 8th, the

18   day after Labor Day?  That's a Tuesday.

19             MS. JOHNSON:  The 8th works for the PSC.

20             COURTROOM DEPUTY CLERK URSO:  What about the rest of

21   the group?  No?

22             MS. PUIG:  Does not work.

23             JUDGE ZOBEL:  Some of you could do it by telephone

24   instead of traveling.

25             MS. JOHNSON:  Perhaps the 10th, your Honor?  I'm

```
1    hearing plaintiffs asking for the 10th.
2            COURTROOM DEPUTY CLERK URSO:  How about the -- I'll
3    move -- if the 10th works for everybody, I'll move what's on
4    there.  Is the 10th --
5            MS. PUIG:  That's fine, yes.  Thank you, your Honor.
6            COURTROOM DEPUTY CLERK URSO:  Okay.  September 10th,
7    at 2:00, and I'll move what's on there.  9/10 at 2:00.
8            MS. JOHNSON:  Thank you very much.
9            JUDGE ZOBEL:  And, again, 11:30 and 2:00, right?
10           MS. JOHNSON:  If that works for the Court, yes, your
11   Honor.
12           COURTROOM DEPUTY CLERK URSO:  Okay.  I'll type Steve,
13   okay?
14           JUDGE BOAL:  Sure.
15           MS. JOHNSON:  We could also --
16           JUDGE ZOBEL:  We're checking on 11:30.
17           MS. JOHNSON:  Yes.  We also could do earlier, if the
18   Court would prefer.  I know today things got a little
19   squashed.  Although, hopefully --
20           JUDGE ZOBEL:  The more time you get, the more time
21   you will use.
22           MS. JOHNSON:  I know.  Don't give us any more.  We
23   don't need it.  Take it back, actually.
24           Agenda Item C --
25           MR. MORIARTY:  Excuse me.  I'm sorry, but there is a
```

1    -- I hate to interrupt you, but there is something in the

2    agenda, the first (B) that I would like to address.

3              JUDGE ZOBEL:  I'm sorry, what number?

4              MR. MORIARTY:  Well, (B), Ms. Johnson's prelude, or

5    it would be under Section B, either one.  There's an issue

6    that was referred to in passing that I think deserves a little

7    bit more attention, at least from Ameridose.  There has been

8    in --

9              JUDGE ZOBEL:  Could you please tell me who you are?

10             MR. MORIARTY:  My name is Matthew Moriarty.  I

11   represent Ameridose.

12             JUDGE ZOBEL:  Okay.  Thank you.  Sorry, I should have

13   known.

14             MR. MORIARTY:  So, we have had some informal

15   discussions with the PSC and a number of settling defendants

16   about the actual plan that will be in place for the dismissal

17   of the cases against the settling defendants, and I have urged

18   the PSC to file what they're going to file as fast as possible

19   and that we compress the timeframes for that, because it's

20   important for the settling defendants to have some clarity as

21   we go through all of these discovery fights as to whether they

22   are parties or nonparties.  So, it's very important for at

23   least Ameridose and probably others, like GDC or MSN or

24   whoever the settling entities are, to know that.

25             So, we have not exactly worked out the time deadlines

1    by mutual agreement with the PSC, but, if necessary, Ameridose

2    will be filing supplements to that plan to compress timeframes

3    to get answers to that more quickly.  We would like all the

4    cases dismissed before the end of June as opposed to sometime

5    in July or August.

6            MS. JOHNSON:  As we've discussed with Mr. Moriarty,

7    the PSC can't do anything until after the effective date on

8    this particular issue.  We are mindful of it.  It is not just

9    cases in this MDL that are affected.  There are state court

10   cases as well.  So, we're working through putting together a

11   process to accomplish dismissal of those cases.

12           JUDGE ZOBEL:  Do you have some idea of when you might

13   finish the working through?

14           MS. JOHNSON:  After the effective date, your Honor,

15   and, hopefully, quickly, but we are very mindful of Mr.

16   Moriarty's concerns and everyone's, the settling defendants'

17   concerns that those be dealt with quickly.

18           JUDGE ZOBEL:  The effective date is June 4th?

19           MS. JOHNSON:  Yes, and along --

20           JUDGE ZOBEL:  You want to know an exact date?

21           MR. MORIARTY:  No, your Honor.  I just encourage them

22   -- because we all know when the plan effective date is.  So,

23   the work on this project can be done and a filing almost

24   immediately after the plan effective date is done.

25           JUDGE ZOBEL:  I understand Ms. Johnson to tell us

```
1          that they are working on it.
2                    MR. MORIARTY:  Right.
3                    JUDGE ZOBEL:  And they will do it as quickly as they
4          can, and I have confidence that she will do everything that is
5          necessary to be done to satisfy you.
6                    MR. MORIARTY:  As I do, your Honor.  I just wanted to
7          make everyone aware that we may be trying to compress time
8          deadlines if we can't agree on what those deadlines should be.
9                    JUDGE ZOBEL:  Okay.
10                   MS. PUIG:  Your Honor, may I be heard on behalf of
11         St. Thomas Entities?
12                   We've not been a part of those discussions, nor
13         invited to be a part of it.  Is it possible that those
14         dismissals would specify that they are without prejudice to
15         outstanding discovery requests?  Because we have discovery
16         requests as to Ameridose.
17                   MS. JOHNSON:  As I say, we're working on the issue,
18         but we have not finalized anything yet.  We will continue
19         working on it and we're mindful of what Mr. --
20                   JUDGE ZOBEL:  You can short circuit all of this by
21         becoming a settling defendant.
22                   MS. JOHNSON:  We should, your Honor.
23                   JUDGE ZOBEL:  I understand that it is being attended
24         to and I will leave it at that.
25                   MS. JOHNSON:  I did have one thing that I am remiss
```

1    for not mentioning earlier in my discussion, an issue that was

2    raised and addressed with Judge Boal this morning, but I want

3    to make this Court aware as well.

4         The trustee shared with me yesterday that NECC's

5    insurers sent a letter confirming that insurance coverage for

6    NECC ends on the effective date, which is June 4th, which

7    means to the extent that additional expenses are incurred by

8    Mr. Moore, those expenses will ultimately be paid out of now

9    the settlement pot and, functionally, every dollar that's paid

10   in expenses out of that pot reduces the recovery to tort

11   victims.

12        I mention that to your Honor.  We did address it at

13   length with Judge Boal this morning, but the direct impact on

14   that is as follows:

15        The more discovery that must be done and then the

16   time that it takes to resolve discovery disputes and complete

17   this common discovery does wind up having a negative direct

18   fiscal impact on victims as well as the negative consequences

19   of things just taking longer, and I wanted to bring that to

20   the Court's attention.

21        JUDGE ZOBEL:  Thank you.  Excuse me one moment.

22        (Discussion off the record at the Bench.)

23        JUDGE ZOBEL:  The reporter needs a break and I do,

24   too, and you may all stretch, too.

25        (Stretch break.)

1           JUDGE ZOBEL:  All right.

2           MS. JOHNSON:  So, returning to the agenda, fully-

3    briefed motions (C).  On No. 10 was heard this morning.  No.

4    11 was also heard this morning, as were number -- all of the

5    motions listed under No. 12.

6           On No. 13, the parties agreed to waive oral argument

7    during this morning's hearing.

8           No. 14 and 15, then, are motions that have been

9    pending for a while.  I believe the Court has either already

10   heard oral argument or it was waived.

11          JUDGE ZOBEL:  No. 15 I'm denying.  I've endorsed the

12   motion today and I will file it with the Clerk.

13          MS. JOHNSON:  Thank you.

14          And then that brings us to (D), your Honor, briefing

15   in progress, and the only thing of note there is, again, the

16   Wayne Reed motion for expedited trial, which we would like to

17   have as early as June.

18          JUDGE ZOBEL:  I'm sorry, I was looking at this so I

19   didn't hear what you said.  14 I am to decide?

20          MS. JOHNSON:  Yes, please, your Honor.  I understand

21   there's no objections to those motions.  They've been pending

22   for a while.

23          JUDGE ZOBEL:  So, if there's no objection, then

24   plaintiffs' motion for consolidation, which is 14 on the list

25   and Docket No. 37 in one of the separate cases, 13-12657, is

1    allowed.

2            MS. JOHNSON:  Thank you, your Honor.

3            MS. KELLY:  I'm sorry, I believe -- I'm Caroline

4    Kelly from Morrison Mahoney.  I believe we filed an opposition

5    today.

6            JUDGE ZOBEL:  I'll leave it as decided and I'll look

7    at it.

8            MS. KELLY:  What's that?

9            JUDGE ZOBEL:  I'm changing my notation to decide it

10   rather than it is allowed.  I'll look at your opposition.

11           MS. KELLY:  Wonderful.  Thank you.

12           JUDGE ZOBEL:  This is the motion to consolidate?

13           MS. KELLY:  Yes.

14           MS. DOUGHERTY:  Your know, I would just like to

15   mention that it's completely untimely.  This has been pending

16   in front of the Court for a length of time now.

17           JUDGE ZOBEL:  Oh, really?

18           MS. DOUGHERTY:  To oppose today is untimely and we

19   haven't had an opportunity to --

20           JUDGE ZOBEL:  So, why should I hear it?

21           MS. KELLY:  If I'm referring to the correct motion,

22   it says --

23           JUDGE ZOBEL:  *Montee against Ameridose*.

24           MS. KELLY:  Yeah.  We filed -- we did file it today.

25   It was filed on -- May 12th?

```
 1              JUDGE ZOBEL:  I'm sorry?
 2              MS. KELLY:  I have it as filed on May 12th.
 3              JUDGE ZOBEL:  The motion to consolidate was filed on
 4    May 12th?
 5              COURTROOM DEPUTY CLERK URSO:  The one that I gave
 6    you?
 7              JUDGE ZOBEL:  I don't know.
 8              MS. JOHNSON:  Your Honor, I'm going to have to check
 9    that.  This is one of those just sort of cleaning up the
10    dockets.  We had no inference from any defendants that there
11    was going to be any opposition whatsoever to this.  It's just
12    cleaning up and having two dockets --
13              JUDGE ZOBEL:  I'll look it, but while we're on the
14    subject, I have a request.  And, here, I have a bunch of
15    copies for you guys.
16              MS. JOHNSON:  Oh, good.
17              JUDGE ZOBEL:  So, here are a number of them for
18    whoever wants them.  Give one to Catherine.
19              COURTROOM DEPUTY CLERK URSO:  Catherine, okay.
20              JUDGE ZOBEL:  What we have done is to list those
21    cases that now have separate numbers and are not in the MDL or
22    maybe they are but they're filing motions in the separate
23    numbers, and it is very difficult for us to follow and to
24    catch them.
25              So, what I would like is to have the Plaintiffs'
```

```
1    Steering Committee look at these and tell me whether these are
2    still live motions, whether they're moot, whether they've been
3    resolved, whatever, and then I would like there to be -- I
4    would like to enter an order that says that any motion to be
5    filed is to be filed in the MDL and -- as a motion and then
6    there can be a notice of motion filed from the individual
7    case.  So that if the case goes back to its original
8    jurisdiction, all of the papers are listed in the original
9    docket.
10           And, Ms. Johnson, if I could task you to make sure
11   that that is implemented and that you then get a response to
12   this list, which appears to have a pile of undecided motions,
13   but I don't know whether they're undecided or not, and let us
14   know what, if anything, needs to be decided and maybe even
15   give us the docket number of the MDL, on the MDL docket, okay?
16           MS. JOHNSON:  We will be happy to do that, your Honor.
17           JUDGE ZOBEL:  Thank you.
18           And whatever assistance defendants can give would be
19   much appreciated as well.  So, that takes care of that.  And
20   it is related to what we were just talking about.
21           And leaving your motion then -- your opposition I
22   will consider, but it is the result of the same problem, I
23   think.
24           MS. KELLY:  Thank you, your Honor.
25           MR. GASTEL:  Your Honor, as the person at the PSC
```

1    most likely tasked with that task, is there any way that I

2    could get an electronic version of this chart?  That would be

3    tremendously helpful to me.

4             JUDGE ZOBEL:  Yes, we will file it immediately, but I

5    haven't done it yet because I wanted to talk to you about it

6    beforehand.

7             MR. GASTEL:  Perfect.

8             JUDGE ZOBEL:  So, it is in a shape that is to be

9    filed electronically and will be before the end of the day as

10   an order.

11            MS. JOHNSON:  Thank you, your Honor.

12            Perhaps your Clerk could email the workable file to

13   my attention so that we can get that to Mr. Gastel.

14            JUDGE ZOBEL:  The workable file?

15            MS. JOHNSON:  The Word document or Word Perfect

16   document.

17            JUDGE ZOBEL:  She'll take care of it.

18            MS. JOHNSON:  Okay.  Thank you.

19            That brings us to (D), briefing in progress, and the

20   only thing to note there, your Honor, is No. 16 counsel has

21   requested be heard at the June 24th status conference.  That's

22   the motion for expedited trial.

23            JUDGE ZOBEL:  Okay.

24            MS. JOHNSON:  And that's it.

25            JUDGE ZOBEL:  Does anybody else have anything that we

```
1     need to discuss?
2          MR. GOTTFRIED:  Your Honor, I just wanted to address
3     -- I think it might be helpful -- there was a lot of
4     discussion regarding the dates.  The bankruptcy -- the trustee
5     did file on the 26th, it's Docket 1890, a notice of entry of
6     confirmation order and plan effective date and related
7     deadlines.  So, I think I just want to make that clear on the
8     record that is available.  People can see it and then the
9     Court can look at it as well.  It was filed two days ago.
10         JUDGE ZOBEL:  Terrific.  Thank you.  Anybody else?
11         MS. PUIG:  Your Honor, I just want to be clear.
12    Yvonne Puig for the St. Thomas Entities.
13         Are we taking up my motion to extend time on the --
14         JUDGE ZOBEL:  You have two minutes.
15         MS. PUIG:  It's going to take a little longer than
16    that, your Honor, but I'll do my very best.
17         We've asked to move the discovery deadline for common
18    discovery by 90 days.  We filed a motion in brief in support
19    and a declaration setting out with a chart all of our efforts
20    to gain discovery from those entities that we intend to submit
21    as a part of a comparative fault submission to the jury
22    ultimately.  I won't go through each of those entities, your
23    Honor.  Only to say that it's been a very time-consuming
24    undertaking as well as opposition everywhere.  Again, I regret
25    that you --
```

```
1              JUDGE ZOBEL:  I'm familiar with it.

2              MS. PUIG:  -- you were unable to see today.  There

3    was an ocean of opposition in those, and we are asking that

4    the Court extend from June 14th to September 14th for the

5    common discovery and ask that the Court consider the

6    declaration of Adam Schramek that was filed in support of our

7    memorandum.  And I think I kept to two minutes.

8              JUDGE ZOBEL:  I thank you very much.

9              Anybody else?

10             MS. JOHNSON:  One sentence, your Honor?

11             JUDGE ZOBEL:  Did you want to say something or are

12   you leaving?

13             MR. RABINOVITZ:  I was leaving.

14             JUDGE ZOBEL:  Well, you're welcome to leave.

15             I thank you all and I will look forward to seeing you

16   on June 24th and, in the meantime, receiving your various

17   submissions.

18             MS. JOHNSON:  Thank you, your Honor.

19             MR. GASTEL:  Thank you, your Honor.

20             MS. DOUGHERTY:  Thank you, your Honor.

21             (Adjourned, 3:16 p.m.)

22

23

24

25
```

```
 1                    C E R T I F I C A T E

 2          I, Catherine A. Handel, Official Court Reporter of

 3   the United States District Court, do hereby certify that the

 4   foregoing transcript, from Page 1 to Page 54, constitutes to the

 5   best of my skill and ability a true and accurate transcription

 6   of my stenotype notes taken in the matter of No. 13-md-2419-RWZ,

 7   In Re: New England Compounding Pharmacy, Inc., Products

 8   Liability Litigation.

 9

10   June 5, 2015              /s/Catherine A. Handel
     Date                      Catherine A. Handel RPR-CM, CRR
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```