# EXHIBIT "B"

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION, | ) ) ) ) ) ) MDL No. 2419 <br> Dkt. No 1:13-md-2419 (RWZ) |
| THIS DOCUMENT RELATES TO: <br><br> All Suits Against the Saint Thomas Entities | ) ) ) ) ) ) ) ) ) |

### AMERIDOSE LLC'S ANSWERS TO SAINT THOMAS ENTITIES' FIRST SET OF INTERROGATORIES

Defendant Ameridose LLC ("Ameridose"), through its counsel and pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, answers as follows to Saint Thomas Entities' First Set of Interrogatories:

### PRELIMINARY STATEMENT AND OBJECTIONS

Ameridose objects to Saint Thomas Entities' First Set of Interrogatories ("Interrogatories") on the grounds they are overbroad, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

Ameridose is, for purposes of these Answers and as described in this Court's orders, an "Affiliated Defendant," "Related Settling Party," or "Insider Settling Party." Judge Zobel entered an Order on October 9, 2014 staying the MDL proceedings and limiting discovery with respect to NECC Insiders and Related Settling Parties. *See* NECC MDL Doc. 1482. Pursuant to that Order and the Plan Support and Funding Agreement referenced therein (NECC MDL Doc. 1106-1), discovery is permitted against Ameridose LLC "only to the extent the discovery is relevant to

1

2259707.2

the prosecution, or defense, of claims against defendants other than the Estate Parties or the Insider Settling Parties." NECC MDL Doc. 1482.

Saint Thomas Entities seek information from Ameridose in an attempt to establish comparative fault of Ameridose for the manufacturing, compounding, testing, and/or distribution of methylprednisolone acetate ("MPA"), which is the only drug at issue in this litigation. Tennessee product liability law (as defined in Tenn. Code Ann. §29-28-102 (6)) requires that a product liability action based on the doctrine of strict liability in tort and arising from a buyer's use of an allegedly defective and therefore unreasonably dangerous product, may only be commenced or maintained against the seller of that product where the seller is also the manufacturer of the product or the manufacturer of the defective part of the product. Tenn. Code Ann. §29-28-102(6). Ameridose never compounded, manufactured, or distributed MPA at any time; the MPA at issue in this litigation is not an Ameridose product. Ameridose cannot be held liable or considered at fault under Tennessee law. *See e.g., Owens v. Truckstops of America, Inc., et al.*, 915 S.W.2d 420, 433 (Tenn. 1996).

Although NECC and Ameridose were located at the same address from 2006 through early-2009, the companies never shared the same physical space. Since 2009, more than three years before NECC compounded and distributed the contaminated MPA at issue in this litigation, the two companies conducted their respective business operations at separate locations.

Plaintiffs' Second Amended Master Complaint contains no allegations that Ameridose manufactured, compounded, tested, or distributed MPA, or that any plaintiff ingested and/or was harmed by an Ameridose product. *See* NECC MDL Doc. No. 1719 (Pls.' 2d Am. Compl., filed

2

Mar. 6, 2015). Plaintiffs' claims only refer to "NECC contaminated drugs" or drugs "purchased" and "provided to" plaintiffs. *Id.* As to the Clinic Defendants, plaintiffs allege only the following claims: negligence and gross negligence; violation of state consumer protection statutes; failure to warn; Tennessee products liability claims; agency; civil conspiracy; and wrongful death. *See* NECC MDL Doc. 1719. Civil conspiracy, strict liability, and negligence claims are asserted against Saint Thomas Entities in various complaints filed by individual Tennessee plaintiffs. *See e.g.*, NECC MDL Doc. 893, 894 (Saint Thomas Entities' Motion to Dismiss). Saint Thomas Entities fail to demonstrate that plaintiffs assert any claim or that they assert any defense that triggers the exception to the discovery stay. Because none of the claims alleged by Plaintiffs and/or against Saint Thomas Entities relate to or implicate Ameridose, there can be no exception to the stay of discovery. *See* NECC MDL Doc. 1482.

Furthermore, Saint Thomas Entities' Interrogatories are unreasonably duplicative and answers to the same can be obtained from other sources that are more convenient, less burdensome, and less expensive than from Ameridose. *See* Fed. R. Civ. P. 26(b)(2)(C)(i). Discovery in this litigation has been stayed for well over a year and the settlement agreement to which Ameridose LLC is a party is nearly finalized. Ameridose collected documents at the outset of this litigation pursuant to one or more Litigation Document Holds but has not processed many of the collected documents because of the discovery stay and the lengthy settlement negotiations. For those reasons, Ameridose's ability to respond to Saint Thomas Entities' Interrogatories that are within the scope of the Court's October 9, 2014 Order is limited.

3

Ameridose answers these Interrogatories within the parameters of this Court's October 9, 2014 Order and based on counsel for Ameridose's knowledge, information, and belief at this time.

## ANSWERS TO INTERROGATORIES

**INTERROGATORY NO. 1:** Identify every person providing information used in answering these interrogatories.

**ANSWER: Counsel for Ameridose prepared the Answers to these Interrogatories.**

**INTERROGATORY NO. 2:** Identify all owners and shareholders of Ameridose from 2006 to 2013. Include in your answer the dates of ownership for each owner or shareholder and the nature and extent of their share hold or other equitable or legal interest.

**ANSWER: Ameridose objects to this Interrogatory on the grounds it is overly broad, vague and ambiguous, and not within the permissible scope of discovery outlined by this Court in its October 9, 2014 Order (NECC MDL Doc. 1482). Subject to and without waiving its objections, Ameridose answers that Greg Conigliaro (9% ownership share), Barry Cadden (17.5%), Lisa Cadden (17.5%), and Carla Conigliaro (56%) owned Ameridose for the period of 2006 to 2013. Further answering, Ameridose LLC is a limited liability company and therefore does not have "shareholders."**

**INTERROGATORY NO. 3:** Identify all of Ameridose's officers, directors, and managers from 2006 to 2013. Include in your answer the date-range for which each officer, director, and manager held their position with Ameridose.

**ANSWER: Ameridose objects to this Interrogatory on the grounds it is overly broad, unduly burdensome, vague and ambiguous, and not within the permissible scope of discovery outlined by this Court in its October 9, 2014 Order (NECC MDL Doc. 1482). Ameridose further objects to this Interrogatory on the grounds the term "manager" is undefined, vague, and ambiguous. Subject to and without waiving its objections, Ameridose states that in February 2006, when Ameridose was formed,**

4

2259707.2

Barry Cadden and Gregory Conigliaro were listed as Managers on Ameridose LLC's Certificate of Organization. Barry Cadden resigned as a Manager of Ameridose in October 2012. Further answering, Ameridose states that, as a limited liability company, Ameridose does not have "officers" or "directors."

INTERROGATORY NO. 4: For each officer, director, and manager of Ameridose from 2006 to 2013, identify and describe any role such person played in NECC operations or management.

ANSWER: Ameridose objects to this Interrogatory on the grounds it is overly broad, unduly burdensome, and not within the permissible scope of discovery outlined by this Court in its October 9, 2014 Order (NECC MDL Doc. 1482). Ameridose further objects to this Request on the grounds it is irrelevant in that Ameridose did not manufacture, compound, test, or distribute MPA at any time. Ameridose further objects to this Request on the grounds it is duplicative or cumulative in that the documents or information requested can be obtained from some other source that is more convenient, less burdensome, or less expensive. Ameridose further objects because it cannot speak to the operations or management of NECC.

INTERROGATORY NO. 5: Identify all locations of your business operations from 2006 to 2013 and note whether MPA was ever compounded by Ameridose at such location.

ANSWER: Ameridose objects to this Interrogatory on the grounds it is overly broad, unduly burdensome, vague and ambiguous, and not within the permissible scope of discovery outlined by this Court in its October 9, 2014 Order (NECC MDL Doc. 1482). Subject to and without waiving its objections, Ameridose states it conducted its business operations at 701 Waverly Street, Framingham, Massachusetts from February 2006 through early-2009, in a part of the facility wholly separate from the space in which NECC conducted its business operations. In early-2009, Ameridose moved its business operations to 701 and 705 Flanders Road, Westborough, Massachusetts. Ameridose further states it never manufactured, compounded, tested, or distributed MPA at any time.

INTERROGATORY NO. 6: Describe the nature and extent of your business activities related to compounding mediation [sic] from 2006 to 2013.

ANSWER: Ameridose objects to this Interrogatory on the grounds it is overly broad, unduly burdensome, vague and ambiguous, and not within the permissible scope of discovery outlined by this Court in its October 9, 2014 Order (NECC MDL Doc. 1482). Ameridose further objects to this Interrogatory on the grounds it is

overly broad and irrelevant to the extent it seeks information regarding drugs other than MPA, the only drug at issue in this litigation. Subject to and without waiving its objections, Ameridose states that the list of drugs it manufactured or compounded is available on the FDA's website.

INTERROGATORY NO. 7: Identify all time periods in which Ameridose and NECC each conducted operations of any kind (whether compounding, shipping, marketing, office support, etc.) at the NECC facility.

ANSWER: See Ameridose's Answer to Interrogatory No. 5, above.

INTERROGATORY NO. 8: Identify all time periods in which Ameridose compounded any medication at the NECC facility.

ANSWER: Ameridose objects to this Interrogatory on the grounds it is overly broad and irrelevant to the extent it seeks information regarding drugs other than MPA, the only drug at issue in this litigation. Further answering, see Ameridose's Answer to Interrogatory No. 5, above.

INTERROGATORY NO. 9: Identify all time periods in which Ameridose compounded MPA at the NECC facility.

ANSWER: Ameridose objects to the form of this Interrogatory and on the grounds it is overly broad, irrelevant, and not within the permissible scope of discovery outlined by this Court in its October 9, 2014 Order (NECC MDL Doc. No. 1482). Subject to and without waiving its objections, Ameridose never manufactured, compounded, tested, or distributed MPA at any time.

INTERROGATORY NO. 10: Identify by name and job title all of your officers, agents, and employees who participated in compounding or dispensing MPA from 2006 to 2013.

ANSWER: Ameridose objects to the form of this Interrogatory and on the grounds it is overly broad, irrelevant, and not within the permissible scope of discovery outlined by this Court in its October 9, 2014 Order (NECC MDL Doc. No. 1482). Subject to and without waiving its objections, Ameridose never manufactured, compounded, tested, or distributed MPA at any time.

2259707.2

INTERROGATORY NO. 11: Identify and describe each of the NECC cleanrooms that was designed, constructed, manufactured, installed, certified, cleaned, or operated at the request of Ameridose.

**ANSWER: Ameridose objects to the form of this Interrogatory and objects on the grounds it is overly broad, irrelevant, unduly burdensome, vague and ambiguous, and not within the permissible scope of discovery outlined by this Court in its October 9, 2014 Order (NECC MDL Doc. 1482). Subject to and without waiving its objections, Ameridose cannot speak to what use other entities put NECC's facilities after Ameridose vacated those facilities. Between February 2006 and early-2009, Ameridose and NECC conducted their respective business operations at the same address, but did not share the same physical space within the facility at that location. Further answering, Ameridose states it requested construction of cleanrooms for Ameridose's own facility in Framingham, MA during the time that Ameridose conducted its business operations at that location, approximately February 2006 through early-2009. Ameridose did not request the construction or installation of cleanrooms used for NECC's business operations.**

Respectfully submitted,

Matthew P. Moriarty (0028389)
Tucker Ellis LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113-7213
Tel:    216.592.5000
Fax:   216.592.5009
E-mail:   MMoriarty@tuckerellis.com

*Attorneys for Defendant Ameridose LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2015, a copy of the foregoing AMERIDOSE, LLC'S ANSWERS TO SAINT THOMAS ENTITIES' FIRST SET OF INTERROGATORIES was filed electronically as an attachment to a Notice of Service. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Matthew P. Moriarty
Tucker Ellis LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113-7213
Telephone: 216.696.2276
Facsimile: 216.592.5009
E-mail: MMoriarty@tuckerellis.com

*Attorneys for Defendant Ameridose LLC*