UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | ) ) ) ) MDL No. 02419<br>Docket No. 1:13-md-2419-RWZ |
| This document relates to: | ) ) ) |
| Handy v. Box Hill Surgery Center, LLC, et al.<br>No: 1:14-cv-14019-RWZ | ) ) ) |
| Armetta v. Box Hill Surgery Center, LLC, et al.<br>No. 1:14-cv-14022-RWZ | ) ) ) |
| Torbeck v. Box Hill Surgery Center, LLC, et al.<br>No. 1:14-cv-14023-RWZ | ) ) ) |
| Kashi v. Box Hill Surgery Center, LLC, et al.<br>No. 1:14-cv-14026-RWZ | ) ) ) |
| Bowman v. Box Hill Surgery Center, LLC, et al.<br>No. 1:14-cv-14028-RWZ | ) ) ) |
| Dreisch v. Box Hill Surgery Center, LLC, et al.<br>No. 1:14-cv-14029-RWZ | ) ) ) |
| Davis v. Box Hill Surgery Center, LLC, et al.<br>No. 1:14-cv-14033-RWZ | ) ) ) |
| Farthing v. Box Hill Surgery Center, LLC, et al.<br>No. 1:14-cv-14036-RWZ | ) ) |

### BOX HILL DEFENDANTS' OPPOSITION TO PLAINTIFF STEERING COMMITTEE'S CROSS MOTION TO AMEND MDL ORDER NO. 9 [DKT. 1867] AND REPLY TO PLAINTIFFS' STEERING COMMITTEE'S RESPONSE [DKT. 1900] TO THE BOX HILL DEFENDANTS' MOTION FOR STAY OR TO EXTEND THE COMMON ISSUE DISCOVERY DEADLINE [DKT. 1889]

Defendants, Box Hill Surgery Center, L.L.C., Ritu T. Bhambhani, M.D., and Ritu T. Bhambhani, M.D., L.L.C. (hereinafter, the "Box Hill Defendants," "BHSC," or "Box Hill"), hereby file this Opposition to Plaintiffs' Steering Committee's ("PSC") Cross Motion to Amend MDL Order No. 9 [Dkt. 1867] (hereinafter "Cross-Motion") and also reply to the PSC's response

[Dkt. 1900] to BHSC's Motion for Stay or to Extend the Common Issue Fact Discovery Deadline [Dkt. 1889] (hereinafter "PSC Opposition"). In so doing, BHSC opposes the PSC's proposed MDL Order No. 9B in its current form, and seeks an Amended MDL Order in different form, attached hereto either as Exhibit 1 or Exhibit 2, as further explained below.

The legal authority necessary to support the instant motion has been previously cited by Counsel for the St. Thomas Entities (Dkt. 1850) and the Premier Defendants (Dkt. 1852), as well as by BHSC [Dkt. 1889] and is being adopted herein to avoid duplication and repetition. A detailed analysis of the relief that BHSC seeks can be found in Docket No. 1889. In short, BHSC now seeks a stay in common issue fact discovery similar to the one sought by Plaintiffs as to the "Small Clinic Defendants"[1] outlined in the proposed Order found in Docket No. 1868-1, but attached here, specifically as it would relate to BHSC, in Exhibit 1. In the alternative, BHSC seeks to modify MDL Order No. 9 (Order Regarding Common Issue Discovery) [Dkt. 1425] ("CMO No. 9") to extend the deadline until April 1, 2016 for the Box Hill and Maryland Defendants to complete common issue fact discovery for the reasons outlined below, with the proposed Order as Exhibit 2. In order to clarify BHSC's position and to respond to baseless comments made by the PSC in Docket No. 1900, BHSC provides the discussion below.

## STATEMENT OF FACTS / PROCEDURAL HISTORY

The court is well aware of the underlying facts of this MDL. While the events giving rise to this MDL were uncovered in September and October of 2012, the PSC chose to focus their efforts in the first two years thereafter towards mediating and settling cases against the responsible entities that caused the contamination of the methylprednisolone acetate ("MPA"), namely NECC, the so-called "Insider" and "Affiliated" defendants, and the National

---

[1] "Small Clinic Defendants" are defined as those clinic defendants with fewer than five cases pending against them in this MDL.

Defendants.[2] The PSC's efforts were successful in accumulating what is believed to be approximately $250 million for a global settlement fund to be distributed to patient Plaintiffs and/or their families, who allegedly suffered injury as a result of the MPA contaminated by NECC.

Now that those mediation and settlement efforts are largely completed and the Chapter 11 Bankruptcy Plan has been approved for the PSC and tort trust to begin distributing those funds, the PSC now focuses their attention on the health care provider defendants in an effort to obtain additional money. These defendants, like BHSC, face dubious allegations of negligence and other claims, after they routinely administered MPA, which was later found to be contaminated through no fault of the health care provider defendants.

Through their Cross Motion [Dkt. 1867] and proposed Order [Dkt. 1868-1], the PSC now seeks to selectively set discovery and trial deadlines as to health care provider defendants in Tennessee (so-called St. Thomas Entities and various Tennessee Clinic Defendants, collectively "Tennessee Defendants") and in New Jersey (so-called Premier Defendants, collectively "New Jersey Defendants"), as well as the Box Hill Defendants in Maryland. At the same time, the PSC seeks a stay as outlined in their Cross Motion and proposed Order [Dkt. 1867 and 1868-1, respectively] against health care provider defendants with less than five lawsuits filed against them. BHSC opposes the PSC proposal in Docket No. 1868-1 and seeks the stay outlined in Exhibit 1. In the alternative, BHSC requests that the Court set the deadlines in the proposed Order attached as Exhibit 2, which is well-reasoned and supports the underlying goals of an MDL and common discovery.

---

[2] It is believed that the PSC also settled with several health care provider defendants as well.

3

## DISCUSSION

As it currently stands, common issue discovery is governed by the Court's MDL Order No. 9, Order Regarding Common Issue Discovery [Dkt. 1425], which was entered by Magistrate Judge Boal on or about September 18, 2014. The current deadline for the close of common issue fact discovery is June 15, 2015. All parties agree that that deadline is now unattainable despite the significant efforts of many. The issue now before this Court is what proposal is more reasonable and better suits the fair and efficient disposition of justice to all parties—not just the PSC's desire to fast track these cases to trial, while at the same time obstructing the health care provider defendants' ability to fully defend the claims being made against them. While the Court must also address disputes that the PSC has with the Tennessee and New Jersey Defendants, it is important to distinguish BHSC from those other entities.

### A. The PSC's proposed discovery deadlines are premature.

Put simply, the PSC's current efforts to define a specific timeline against BHSC is premature. The three year statute of limitations in Maryland has yet to run,[3] and the PSC has informed Box Hill and the Court that they expect to file dozens of additional cases against Box Hill and apparently hundreds of additional cases against other Maryland Clinic Defendants. Further, compared to the Tennessee and New Jersey Defendants, the Box Hill Defendants are further behind in the discovery process through no fault of BHSC. In fact, the Box Hill Defendants were not sued in Maryland state court until the fall of 2014, when the Plaintiffs in the above eight cases waived out of the Maryland Health Care Alternative Dispute Resolution Office and filed in the Circuit Court for Baltimore County, Maryland on or about September 3, 2014.[4]

---

[3] Md. Code, Cts. & Jud. Proc. Art., § 5-109.
[4] Box Hill does not concede that Baltimore County is the proper venue for these lawsuits in State Court. In fact, the Box Hill Defendants filed motions to dismiss or to transfer venue to the Circuit Court for Harford County soon after they were served with the Complaints. However, before those motions to dismiss or to transfer venue could be addressed, the case was stayed in the Circuit Court for Baltimore County and removed to the U.S. District Court by Notice of Affiliated co-defendant Ameridose.

4

After preliminary motions were initially filed in state court, the cases were removed to the U.S. District Court of Maryland by co-defendant Ameridose based on the Bankruptcy filing, and a Conditional Transfer Order was issued for the MDL in this case. BHSC did not fall under the jurisdiction of this Court or the MDL until the beginning of November 2014, when the automatic seven day stay of transfer was lifted.

Subsequently, BHSC filed responsive pleadings in the form of motions to dismiss on or about January 13, 2015, in each of the eight actions against them by agreement.[5] After attempts were made to streamline the process for the Court, including an agreed stipulation to narrow the issues, Plaintiffs just recently filed their opposition briefing on June 5, 2015. BHSC still has time to file a Reply, and arguments on the Box Hill Defendants' motions to dismiss are scheduled for the August 5, 2015, status conference with Judge Zobel. BHSC anticipates filing Answers shortly thereafter to the claims for each of the eight cases that are not otherwise dismissed by this Court pursuant to BHSC's motions to dismiss, as well as other Cross Claims and Third-Party Claims as are appropriate.

In addition, the limitations period in Maryland for these types of tort claims expires at the beginning of October 2015. Accordingly, the MDL Court does not yet know the full landscape of cases that will be filed against BHSC or other Maryland clinic defendants. The PSC has made it clear that other cases against BHSC and other Maryland clinic defendants will be filed prior to the expiration of the deadline. Contrast this to the Tennessee and New Jersey Defendants, whose limitations periods were one and two years, respectively. The full landscape of cases was known against the Tennessee Defendants in October 2013 and against the New Jersey Defendants in October 2014. The Box Hill Defendants were not even part of this MDL until after limitations

---

[5] Dkt. 1639.

expired for the Tennessee and New Jersey Defendants. Nevertheless, the PSC seeks an advanced discovery schedule against BHSC.

In order to support their valid and necessary defenses, Box Hill must conduct discovery and develop evidence to be presented at the time of trial. Much of the discovery necessary to prove the fault of NECC, its insiders and national defendants, and possibly the third-party defendants is the same discovery that is being pursued by the St. Thomas Entities. To that end, St. Thomas has been requesting, noticing and scheduling the necessary depositions. As stated in Case Management Order No. 10 (Dkt. 1426), which governs depositions, one deposition of each defendant and fact witness is being coordinated to apply to all defendants. The Box Hill Defendants also intend to serve their own written requests for discovery. In addition, the Box Hill Defendants anticipate the likelihood of engaging in discovery with other Maryland physicians and clinics, who purchased MPA from NECC and who have been threatened with lawsuits by their patients. It will also be necessary for all of the Maryland defendants, even those who are not yet part of this MDL, to conduct common issue discovery as it relates to the multitude of Maryland cases.

Considering that BHSC's Answers have not yet been filed, that the PSC and BHSC are still in the middle of briefing disputed dispositive motions, that the full landscape of Maryland cases is not yet known, and significant Maryland common issue fact discovery must also be completed for the common issue benefit of all of the Maryland defendants, it makes more sense for the Court to have a complete understanding of what actions lie before it before establishing hard deadlines for discovery and trial readiness in the Box Hill and other Maryland cases.

In the alternative, deadlines should be set consistent with the proposed Order in Exhibit 2, so that the Court, BHSC, and all other Maryland defendants can be better prepared and have sufficient time to all participate in common issue discovery related to all Maryland defendants.

6

Considering the current efforts to interfere in discovery, it is likely that there will also be many obstructions to Maryland case specific discovery as well.

### B. Despite the PSC's suggestion to the contrary, BHSC had no say in the establishment of MDL Order No. 9, which was entered before BHSC came under the jurisdiction of the MDL, and any alleged delay resulted from the PSC's decision to wait to file cases against BHSC.

The PSC suggests that the Box Hill Defendants' need for an extension of the common issue fact discovery deadline is the result of its own failure to conduct discovery. Nothing could be further from the truth. As explained above, the PSC chose to delay filing any lawsuits against BHSC. As a result, BHSC did not come under the MDL until about seven months ago. In the meantime, BHSC has filed responsive pleadings and numerous other motions, attended Bankruptcy Court hearings, motions hearings in front of Judge Boal, and routine status conferences with Judge Saylor and Judge Zobel. BHSC has also engaged in common issue discovery with the other clinic related defendants, including numerous all day depositions, and has worked hard to investigate multiple lawsuits, review hundreds of thousands of pages of document discovery in the document repository, and respond to multiple motions, while maneuvering through the significant interference that has arisen from many of the entities from which discovery has been sought. In fact, BHSC has participated in every deposition conducted and has attended every hearing either in person or via telephone.

At the same time that the PSC chides the Premier and Box Hill Defendants for not working harder to complete discovery, the PSC fails to mention that they had two years prior to conduct their own discovery, both formal and informal, on their own and with all of the entities from whom BHSC and other clinic related defendants now seek information, documents, and depositions. While the PSC engaged in mediation and settlement discussions with NECC, the Insiders, and National Defendants, and were able to obtain significant document discovery and other confidential information, they sought to prevent other parties from obtaining the same

7

information during mediation,[6] which put the PSC a step ahead of other parties. Regardless of the purpose of that stay in discovery, it has put the PSC in a position above all of the other parties in terms of discovery.

Having chosen to delay filing suit against BHSC and apparently many other Maryland clinics, the PSC now asks this Court to require the defendants to conduct and complete what amounts to abbreviated discovery, despite the fact that the PSC will have had more than three years to engage in the same discovery. Such a request is unreasonable.

### C. On multiple occasions, the PSC has misrepresented to this Court the extent of the Box Hill Defendants' participation in the discovery process.

On multiple occasions, the PSC has misrepresented to this Court the extent of the Box Hill Defendants' participation during common issue discovery and otherwise. For example, in the PSC's Opposition[7] to BHSC's initial Motion to Amend,[8] the PSC claims that they have "yet to receive a single document from Box Hill in response to the Plaintiffs' First Request for Production of Documents.[9] Surprisingly, the PSC made the same claim during the May 28, 2015 status conference to Judge Zobel and Judge Boal. It is unclear whether this is an honest mistake or whether the PSC is purposely mischaracterizing the facts in order to prejudice BHSC and gain favor for itself with the Court. The truth is that at the time that the PSC made that assertion, orally and in writing, and at the time that this briefing is now filed, BHSC's response to Plaintiffs' First Request for Production of Documents was and is not yet due. More troubling is the intimation that Box Hill has done nothing in discovery and has failed to provide a single document to the PSC. That is patently false. In fact, BHSC provided more than 250 pages of

---

[6] *See* previous limited discovery stay, October 9, 2014 Order, Dkt. 1482
[7] *See generally* Dkt. 1900.
[8] Dkt. 1889.
[9] Dkt. 1900 at 1.

documents in response to the PSC's Revised Subpoena three months ago.[10] The same documents were uploaded to the MDL's document repository.

The PSC also suggests that BHSC is attempting to "take advantage of the motion practice engaged in by the NECC and Affiliated Defendants to unnecessarily delay discovery of [BHSC] clients."[11] BHSC is unclear what that actually means. BHSC assumes the PSC is referring to discovery motions filed by NECC, the Affiliated Defendants, as well as the National Defendants and non-entities like the FDA, seeking protection from discovery. It has been BHSC's position, like the other Clinic Related Defendants, that this discovery is absolutely necessary for the defendants to have a thorough understanding of the evidence and to fully defend themselves against these baseless claims. BHSC would have preferred if these other entities had accepted their responsibility in this litigation and responded and participated fully. That would have simplified this process. Instead, BHSC and the other Clinic Related Defendants must participate in what has been a long and drawn out fight for necessary discovery in order to defend themselves.

BHSC did not file any motion seeking a protective order, nor does BHSC condone or have any control over these other entities. Rather, BHSC is simply pursuing the necessary discovery to which they are entitled just like every other Clinic Related Defendant. To suggest that BHSC had something to do with the interference in discovery by these other parties which this Court now has to address is disingenuous. Perhaps if the PSC would take a position to support the Clinic Related Defendants' right to actually conduct the permissible discovery of their choosing as opposed to further obstructing depositions for the purpose of hurrying cases to

---

[10] *See* Exhibit 3, which is an excerpt of BHSC's Response to the PSC's Revised Subpoena Request and excerpt of document production showing that at least 259 pages of documents were produced to the PSC, despite their assertion that they have not received any documents.
[11] Dkt. 1900 at 1.

9

trial, then the Court might have an easier decision and the parties could continue unimpeded through the discovery process. Unfortunately, that has not yet happened.

Finally, the PSC characterizes BHSC's (and the Premier Defendants') attitude in discovery as "lackadaisical."[12] This too could not be further from the truth. The PSC has had nearly three years to investigate the issues in this case and move it along at the speed that it desired. BHSC has been in this MDL for about seven months. The Box Hill Defendants have waded through tens, if not hundreds, of thousands of documents uploaded to the document repository, thousands of pages of common issue pleadings, motions, memoranda, notices, and orders, among other things, and participated in every common issue witness deposition so far in this litigation since it has been a part of this MDL. In fact, BHSC intends to participate in all of the subsequent common issue depositions as well.

It is a shame that the PSC has resorted to citing erroneous facts and name calling, which is both inappropriate and inaccurate.

### D. The discovery efforts that have occurred have been extensive, albeit hampered by attempts to interfere with and obstruct the clinic related defendants' ability to engage in thorough discovery.

Despite significant attempts to complete common issue fact discovery, NECC and many (if not all) of the Insider and National Defendants from whom discovery has been sought has at one point or another attempted to delay or prevent discovery. Almost each one of these entities has objected to document discovery and refused to participate. While depositions of corporate designees of Liberty, UniFirst, Victory, and other entities have or are going forward, many of these depositions have been postponed and rescheduled numerous times. In fact, National Defendant ARL BioPharmaceuticals ("ARL") even tried to claim that their production of tens of thousands of pages of documents should be sufficient. It was later discovered that the PSC had

---

[12] *Id.*

access to those documents for an extended period of time beforehand, but had failed to upload them to the document repository used in the MDL. ARL also at one point took the position that discovery was stayed until after the Bankruptcy proceedings were completed, which only recently occurred.

In addition, NECC and the Individual Insiders, and many employees of the Affiliated Defendants have refused to comply with subpoenas for depositions or the depositions of corporate designees. More than a dozen motions for protective order and to quash deposition subpoenas have been filed. Many claim protection based on the Fifth Amendment, albeit improperly asserted, and/or others claim that a straight "document dump" of tens of thousands of pages of documents with no other explanation or authentication should be sufficient for the health care provider defendants. Some of these issues were addressed at the May 28, 2015 motions hearing with Chief Magistrate Judge Boal and others were addressed at the May 28, 2015 status conference with Judge Zobel. As of now, a ruling has not yet been made.

In addition to the above referenced entities, the FDA has also sought protection from a deposition request and some document production citing its ongoing involvement, along with the United States Attorney's Office, with the investigation and criminal prosecution of the owners, managers, and pharmacists at NECC. This Court has heard the arguments in support of and against requiring or delaying a deposition of the FDA. The PSC's support of the FDA's request for protection from a deposition is notable. The PSC's contention that a deposition of an FDA representative is unimportant and unnecessary[13] illustrates the attitude consistently expressed by the PSC during this litigation.  While the PSC has been permitted to seek whatever discovery they desire and to conduct that discovery however they desire, the PSC wishes to play judge and jury and limit how the clinic related defendants are able to conduct their own discovery in order

---

[13] Dkt. 1900 at 3.

to defend the claims asserted against them. For example, the PSC summarily concludes that the FDA could not regulate NECC or any compounding pharmacy.[14] Besides the fact that such a contention is simply inaccurate, or at least disputed, it ignores a party's ability to conduct a deposition on that very matter from a first-hand source or for deposition questioning about other issues, as well as the Defendants' right to conduct reasonable discovery by any lawful means they so choose. Instead, the PSC believes it should be able to self-servingly abbreviate defendants' discovery in the name of a quicker resolution for their own client "victims." The health care providers have also been affected by this litigation as a result of overzealous civil prosecution, which will fully manifest itself if this interference with discovery by the PSC is allowed to continue.

### E. The Maryland Clinic Related Defendants should be entitled to conduct discovery for issues common to the Maryland defendants.

The PSC has told this Court that it expects "hundreds" of lawsuits to be filed against other Maryland clinics aside from the Box Hill Defendants. For purposes of common issue discovery, the Box Hill Defendants should not be separated from the other Maryland Clinic Defendants. While common issue discovery can deal on a large scale with national issues, witnesses, and information that may apply to almost every clinic defendant, there are many common issues related only to the Maryland clinics and cases. As such, it is unreasonable to conclude common issue fact discovery before a full landscape of cases against Box Hill and all of the Maryland clinics is known and those defendants have had a reasonable opportunity to conduct discovery. In the interest of party and judicial efficiency, this aspect of common discovery must be taken into consideration when setting a deadline. Otherwise, the Defendants in the cases filed hereafter and closer to the limitations deadline will make the same claim that they

---

[14] *Id.*

did not have an opportunity to fully participate in discovery. As the PSC has repeatedly claimed, MDL Order No. 10 requires that depositions of common issue witnesses occur only once.

Again, the Tennessee and New Jersey Defendants have already had nearly two years and one year, respectively, to conduct discovery since the statute of limitations ran on claims against them, and the PSC has had nearly three years to develop their own cases. Certainly, the Maryland Clinic Defendants, whose limitations period has not yet even run, should be given more than an extra four months to file, brief, and argue preliminary dispositive motions and engage in the same kind of extensive discovery, including discovery common to the Maryland Clinic Defendants.

Some of the common issues to be discovered for all Maryland Clinic Defendants are the specifics of the regulations that govern pharmacy matters, physician responsibility, prescribing, ordering and purchasing medications, the use of prescription medications in an office practice, and what the Maryland Board of Pharmacy or the Maryland Department of Health and Mental Hygiene knew about NECC and its business practices, among other things. There are also different state licensing and patient safety agencies, which will impact the litigation against the Box Hill and Maryland Clinic Defendants as depositions and written and document discovery will be necessary. Such discovery will apply to all of the Maryland cases, which will benefit a substantial number of lawsuits in the MDL.[15] Further, since the same Maryland law will apply to all of the Maryland Clinic Defendants, it would be judicially efficient to address the adjudication of what will amount to be substantially similar dispositive issues in a similar time frame at the conclusion of an extended and consistent common issue discovery deadline instead of doing it piecemeal.

---

[15] Dkt. 1425; *see also* Dkt. 1868, at 3

Accordingly, the Box Hill Defendants propose that this Court wait to establish the common issue deadline, or at least establish a starting point, to be consistent with the expiration of the Maryland statute of limitations deadline. Again, for purposes of context, the Court can use October 1, 2015. At that point all of the Maryland cases will be known and Maryland Clinic Defendants will understand the full landscape, much like the opportunity afforded to the Tennessee and New Jersey defendants, whose limitations deadlines passed much sooner.

The Box Hill Defendants propose an extension of the common issue fact discovery deadline of 180 days from October 1, 2015 to April 1, 2016. Further deadlines should be consistent with the same general time frame allotted for particular litigation functions and activities, such as expert discovery, dispositive motions, and the bellwether process, as those established for the St. Thomas Entities, the Tennessee Clinic Defendants, and the Premier Defendants. To be clear, that time frame would follow in accordance with the extended common discovery deadline. The PSC proposes less than an additional four months (January 22, 2016)[16] from the expiration of the limitations deadline (early October 2015). The BHSC proposal is just over two months additional time, which is not only reasonable, but will lessen the chance that another Maryland Clinic Defendant will come back to this Court seeking additional time, if discovery can be conducted in an unobstructed manner.

In addition, the PSC chooses not to focus on remand of these cases back to the U.S. District Court of Maryland or the time it takes for a bellwether process to occur. The Box Hill Defendants agree with the analysis of the St. Thomas Entities in that regard and adopt their arguments herein as opposed to the proposal made by the PSC.[17] BHSC will insist on trials in Maryland.

---

[16] Dkt. 1868 at 9.
[17] *See* Dkt. 1850.

14

As is clear from the above and for the reasons espoused by the St. Thomas Entities and the Premier Defendants, there remains a significant amount of work that still must be completed even before each party can exchange expert reports and engage in expert discovery. As was described above, the Defendants have been met with repeated obstruction. While it is true that the Box Hill Defendants will require the depositions of the same common issue witnesses as the Tennessee and Premier Defendants, the time needed for the Box Hill Defendants to complete discovery relevant to their cases will need to be extended further than the Tennessee and Premier Defendants. So far, the focus has been on those other defendants. Therefore, additional time will need to be provided in order to balance the National Defendant discovery, much of which has still yet to occur, and the discovery relevant to the Box Hill Defendants and Maryland Defendants as it relates to Maryland issues and common witnesses.

To force the Box Hill Defendants to abbreviate their discovery efforts would be an injustice. Moreover, the PSC has had an opportunity to engage in discovery for almost three years concerning the underlying issues in all of these cases, including the ones that they are for whatever reason still strategically withholding. The PSC has already been able to unofficially investigate the full panoply of common issues and potential claims under the shroud of confidentiality, privacy and convenience during the mediation process with NECC, the Insiders/Affiliated Defendants, National Defendants and some clinics. However, now that the Clinic Defendants have an opportunity to engage in discovery to properly defend themselves, they are met with resistance and obstruction at all turns. Nevertheless, the PSC insists on tying the hands of the various Clinic Defendants and rushing to trial.

    **F. The purpose and efficiency of this MDL demands that the Box Hill Defendants benefit, just like the other Clinic Related Defendants, from resolution of common fact issues and dispositive motions.**

15

One of the main benefits of consolidation in an MDL is to utilize the efficient process of common issue discovery and what comes from resolution of common issues. The Court should consider the likelihood of whether the common issue discovery driven mostly by the Tennessee and New Jersey defendants will be further delayed by the gamesmanship of those parties and non-parties from whom discovery is sought. If that occurs, then discovery conducted by the Maryland Clinic Defendants will be further delayed. Accordingly, it is more reasonable to address the issues with the St. Thomas common issue discovery deadlines first before ordering what could turn out to be inconsistent deadlines for Box Hill and the Maryland Defendants.

It is also anticipated that the St. Thomas Entities will advance many of the same dispositive arguments for summary judgment as the other Clinic Defendants across the country will advance. It is likely that many, if not all, of the claims against the Clinic Related Defendants could be disposed of through summary judgment, or even during the trials involving the St. Thomas Entities. As such, a stay for Box Hill would entitle the parties to determine how those issues are handled and or disposed of and promote efficient justice.

## CONCLUSION

Therefore, given the enormity of work which remains in these cases despite the diligence of the Defendants in this matter, there exists good cause for the modification of CMO No. 9. It is respectfully requested that this Honorable Court enter an Order granting a temporary stay in common issue discovery as to the Box Hill Defendants similar to the stay requested by the PSC in its Cross Motion to Amend MDL Order No. 9 [Dkt. 1867]. The proposed Order is attached hereto as Exhibit 1. In the alternative, if this Court does not otherwise deem a stay of common issue fact discovery more appropriate, the Box Hill Defendants seek an extension of the common issue fact discovery deadline in MDL Order No. 9 by about 180 days from the expiration of the Maryland statute of limitations deadline to April 1, 2016 for the Box Hill Defendants and other

likely Maryland Clinic Defendants to complete common issue fact discovery. Such an extension would be consistent with the goals of an MDL and the purpose of common issue fact discovery. That same principle could be preemptively utilized to reflect the same deadline for any Maryland case that is filed between the date of the proposed Order and the limitations deadline, for the purpose of focusing on the discovery of issues common to all Maryland Clinic Defendants. A proposed Order for this date and all proposed subsequent deadlines is attached as Exhibit 2.

Respectfully submitted,

Pessin Katz Law, P.A.
901 Dulaney Valley Road, Suite 500
Towson, Maryland 21204
(410) 938-8800
***Attorneys for Box Hill Surgery Center, L.L.C.,
Ritu T. Bhambhani, M.D., and Ritu T.
Bhambhani, M.D., L.L.C.***


By: /s/ Gregory K. Kirby

Gregory K. Kirby, Esquire
Pessin Katz Law, P.A.
901 Dulaney Valley Road, Suite 500
Towson, Maryland 21204
(410) 938-8800
Fax: (410) 832-5644
gkirby@pklaw.com


**CERTIFICATE OF SERVICE**

I, Gregory K. Kirby, hereby certify that this document has been filed through the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will sent to those indicated as non-registered participants on this date.

Date: June 9, 2015

/s/ Gregory K. Kirby
Gregory K. Kirby

17