# EXHIBIT A

**Motion of the NECC Post-Confirmation Officer for Partial Withdrawal of the Reference in Connection with the Implementation of the Third Amended Joint Plan of Reorganization of New England Compounding Pharmacy, Inc.**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE:  NEW ENGLAND COMPOUNDING PHARMACY, INC.  PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br>    All Cases | MDL No. 1:13-md-02419-RWZ |

**MOTION OF THE NECC POST-CONFIRMATION OFFICER FOR PARTIAL WITHDRAWAL OF THE REFERENCE IN CONNECTION WITH THE IMPLEMENTATION OF THE THIRD AMENDED JOINT PLAN OF REORGANIZATION OF NEW ENGLAND COMPOUNDING PHARMACY, INC.**

Paul D. Moore, the Post-Confirmation Officer of New England Compounding Pharmacy, Inc., d/b/a New England Compounding Center ("NECC"), hereby moves this Court for an order partially withdrawing the reference with regard to the chapter 11 proceeding *In re New England Compounding Pharmacy, Inc.*, United States Bankruptcy Court for the District of Massachusetts, Eastern Division, Case No. 12-19882-HJB (the "Bankruptcy Case") to the extent necessary or appropriate at this time to implement the Third Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc. (the "Chapter 11 Plan").  In support of this Motion, the Post-Confirmation Officer respectfully represents as follows:

**I.     PROCEDURAL BACKGROUND**

1. On December 21, 2012 (the "Petition Date"), NECC filed a voluntary petition for relief pursuant to chapter 11 of the United States Bankruptcy Code, thereby commencing the Bankruptcy Case.

2. On January 24, 2013, the United States Bankruptcy Court for the District of Massachusetts (the "Bankruptcy Court") entered an order [Bankruptcy Docket No. 92] appointing a chapter 11 trustee pursuant to section 1104(a) of the Bankruptcy Code.

3.  On January 25, 2013 (the "Appointment Date"), the United States Trustee (the "UST") filed an Application for and Certificate of Appointment of Chapter 11 Trustee [Bankruptcy Docket No. 98] (the "UST Application") requesting the appointment of the Chapter 11 Trustee.  The UST Application was granted by order of the Bankruptcy Court [Bankruptcy Docket No. 99] entered the same day. Thereafter, on February 1, 2013, the Chapter 11 Trustee filed his Verified Statement Pursuant to Rule 2007.1 of Paul D. Moore in Support of Application for and Certificate of Chapter 11 Trustee [Bankruptcy Docket No. 111] (the "Statement").

4.  On May 20, 2015, the Bankruptcy Court entered an order (the "Confirmation Order") confirming the Chapter 11 Plan [Bankruptcy Docket No. 1355] (the "Plan").

5.  There was no timely appeal from the entry of the Confirmation Order.  Therefore, the "Effective Date"[1] of the Plan occurred on June 4, 2015.  *See* Plan at § 9.02.

6.  The Plan states:

> ***6.01   Management of the Post-Effective Date Debtor.***
>
> **(i)   Post-Confirmation Officer.**  On the Effective Date, (a) the authority, power and incumbency of the Persons then acting as directors and officers of the Debtor, and that of the Chapter 11 Trustee, shall be terminated, (b) such directors, officers and the Chapter 11 Trustee shall be deemed to have been discharged pursuant to Bankruptcy Code section 350(a) and (c) Paul D. Moore, Esq. shall be appointed as the sole officer and director of NECC to serve in accordance with the certificate of incorporation and the bylaws of NECC, as such may be amended to carry out the provisions of this Plan.  The Shareholders shall not have the power or ability to remove the Post-Confirmation Officer or to affect any decision thereof.

*See* Plan at 34, Art. VI, § 6.01(i).  Accordingly, on June 4, 2015, Paul D. Moore, Esq. became the Post-Confirmation Officer.

---

[1] Unless otherwise set forth herein, capitalized terms shall have the meanings ascribed to them in the Plan.

## II. THE TORT TRUST AND THE CLAIMS RESOLUTION FACILITY

7. The Plan provides for the creation of a Tort Trust governed by a Tort Trust Agreement. *See* Plan at 26, Art. V, § 5.03; Notice of Filing of Plan Supplement to the Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc. ("Plan Supplement") [MDL Docket No. 1694] at Exhibit A.

8. The Tort Trust will be administered by a Tort Trustee. The Plan states:

> **5.07 Role of the Tort Trustee.** In furtherance of, and consistent with the purpose of, the Tort Trust and this Plan, the Tort Trustee shall, subject to the terms of this Plan and the Tort Trust Agreement, (i) have the power and authority to hold, manage, sell and distribute the Tort Trust Assets as set forth herein and in the Tort Trust Agreement, (ii) have the power and authority to hold, manage, sell and distribute Cash or non-Cash Tort Trust Assets obtained through the exercise of its power and authority, (iii) have the power and authority to investigate, assert, prosecute and resolve, in the names of the Debtor and/or the name of the Tort Trust, the Estate Causes of Action in its sole and absolute discretion and (iv) have the power and authority to perform such other functions as are provided in this Plan or Tort Trust Agreement. The Tort Trustee shall be responsible for all decisions and duties with respect to the Tort Trust and the Tort Trust Assets, subject to the terms of this Plan and the Tort Trust Agreement. Subject to the provisions of the Tort Trust Agreement, in all circumstances, the Tort Trustee shall act in furtherance of the purpose of the Tort Trust, and shall use commercially reasonable efforts to dispose of the Tort Trust Assets and to make timely distributions and not unduly prolong the duration of the Tort Trust.

*See* Plan at 27, Art. V, § 5.07.

9. With regard to the appointment of the Tort Trustee, the Plan states:

> **1.202 Tort Trustee.** The trustee of the Tort Trust appointed by the Official Committee and the Plaintiffs' Steering Committee pursuant to the Tort Trust Agreement in accordance with this Plan, to be identified in the Confirmation Order, or any successor. If the Official Committee and the Plaintiffs' Steering Committee are unable to reach an agreement as to the selection of the Tort Trustee by thirty (30) days before the Confirmation Hearing, then the selection shall be made by the District Court.

3

*See* Plan at 20, § 1.202.

10. The Official Committee and the Plaintiffs' Steering Committee were unable to reach an agreement as to the selection of the Tort Trustee. Accordingly, on May 14, 2015, this Court entered an Order appointing Lynne F. Riley as the Tort Trustee [MDL Docket No. 1853].

11. The Tort Trust Agreement also provides for the creation of the Claims Resolution Facility and for the appointment of Epiq Class Action and Claim Solutions, Inc. as the "National Settlement Administrator." *See* Claims Resolution Facility Procedures, Exhibit A to the Tort Trust Agreement [MDL Docket No. 1694], at page 1, paragraph D. The National Settlement Administrator determines the amount of payments to be made to individual tort claimants pursuant to a settlement matrix. Appeals from the decisions of the National Settlement Administrator are resolved by an Appeals Administrator, whose decisions are final and non-appealable. *See* Claims Resolution Facility Procedures, Exhibit A to the Tort Trust Agreement, at page 46-47, Article XI (Appeals from Final Determination).

12. Pursuant to the Claims Resolution Facility Procedures, the Plaintiffs' Steering Committee has moved this Court for an Order appointing Magistrate Judge Kenneth P. Neiman as the Appeals Administrator [MDL Docket No. 1946].

**III. THIS COURT SHOULD PARTIALLY WITHDRAW THE REFERENCE AS TO CERTAIN MATTERS RESERVED FOR RESOLUTION BY THIS COURT UNDER THE PLAN, THE TORT TRUST AGREEMENT AND THE CLAIMS RESOLUTION FACILITY PROCEDURES.**

13. The Plan, the Tort Trust Agreement and the Claims Resolution Facility Procedures contemplate that this Court will resolve certain matters that may arise in connection with the administration of the Tort Trust and the Claims Resolution Facility. For example:

    a. Under the Plan and the Tort Trust Agreement, this Court has the power to determine whether a proposed distribution to a minor is in the best interest of the Tort Claim

4

holder, where the parent, guardian, *etc*. fails to move for approval of the allocation in a timely fashion.[2]

---

[2] The Plan states:

> **5.14  *Resolution of the Claims of Minors In Accordance With the Tort Trust*.**
>
> **(i)** In connection with any Tort Claims in which the holder is a minor, the Tort Trustee shall notify the parent, guardian, guardian ad litem, adult spouse, next friend, or other representative of the minor of the proposed distribution to such minor. Such parent, guardian, guardian ad litem, adult spouse, next friend, or other representative of the minor shall move for approval of the allocation within ninety (90) days of his or her notification by the Tort Trustee of the proposed distribution.
>
> **(ii)** <u>In the event that the parent, guardian, guardian ad litem, adult spouse, next friend, or other representative of the minor does not so move for approval of the allocation within ninety (90) days of his or her notification by the Tort Trustee of the proposed distribution, the Tort Trustee shall submit the proposed distribution to the holder to the District Court for approval in accordance with section 140C1/2 of Chapter 231 of the Massachusetts General Laws</u> and request that the District Court hold a hearing on the petition, and the petitioner and the Tort Claim holder may attend any such hearing. The Tort Trustee shall request the District Court to determine whether the proposed distribution is in the Tort Claim holder's best interests and, if the proposed distribution is approved, that determination shall be embodied in an order which shall have the effect of a judgment. Upon approval of the proposed distribution to such holder of a Tort Claim, the Tort Trustee shall request the District Court to authorize payment to the counsel of the minor, if any, of fees and disbursements to be paid from the distribution and further shall order that the remainder of the distribution be distributed in a manner that will best protect the interest of the minor.

Plan at 33, § 5.14 (emphasis added). The Tort Trust Agreement states:

> **ARTICLE IX.  DISTRIBUTIONS; CLAIMS RESOLUTION FACILITY AND PROVIDER CLAIMS RESOLUTION FACILITIES**

5

  b. Under the Plan, this Court is granted the power to review the Tort Trust Trustee's determination of whether she has made distributions to the Tort Trust Beneficiaries sufficient to satisfy in full the Claims of each and every Tort Trust Beneficiary.[3]

---

> 9.02 *Payment of the Tort Claims; Distribution to Minors.*
>
> (e) <u>If the Tort Trust Beneficiary is a minor, the Tort Trustee shall withhold and reserve payment of the allocated distribution to such minor Tort Trust Beneficiary until the Tort Trustee receives notice that the District Court has approved said distribution to said minor Tort Trust Beneficiary in accordance with the terms and procedures set forth in Section [5.14] of the Plan</u>, and the Tort Trustee shall make payment of the distribution to the minor Tort Trust Beneficiary in the manner ordered by the District Court pursuant to Section 5.13 of the Plan.
>
> (f) In the event that the minor Tort Trust Beneficiary's parent, guardian, guardian ad litem, adult spouse, next friend, or other representative of the minor Tort Trust Beneficiary does not so move for approval of the allocated distribution within ninety (90) days of the Confirmation Order, the Tort Trustee shall be invested with authority to move before the District Court for approval of the allocated distribution to such minor Tort Trust Beneficiary in accordance with the terms and procedures set forth in Section 5.13 of the Plan.

Tort Trust Agreement, at 34, §§ 9.02(e) and (f) (emphasis added).

---

[3] The Plan states:

> **5.16 *Distribution of Surplus*.**  The Tort Trustee shall make all payments required to be paid to holders of Allowed Class D Claims or Allowed Class E Claims under this Plan, in accordance with the terms and conditions of the Tort Trust Agreement, the Claims Resolution Facility Procedures and the Provider Claims Resolution Facility Procedures.  If, and only if, the Tort Trustee has made distributions to Tort Trust Beneficiaries sufficient to satisfy in full the Claims of each and every Tort Trust Beneficiary (as determined by the Tort Trustee, <u>subject to the MDL Court's review of such determination</u>), then the Tort Trustee shall distribute to the holders of Allowed Class E Claims their Pro Rata Share of the remaining Cash, if any, of the Tort Trust.

Plan at 34, § 5.16 (emphasis added).

  c. Under the Tort Trust Agreement, this Court has the power to remove the Tort Trustee.[4]

  d. Under the Tort Trust Agreement, this Court has the power to appoint a successor Tort Trustee.[5]

  e. Under the Tort Trust Agreement, this Court has the power to appoint a successor Settlement Administrator.[6]

---

[4] Section 3.03(c) of the Tort Trust Agreement states:

> **ARTICLE III. TORT TRUSTEE**
>
> 3.03 *Terms of Service*.
>
> (c) <u>The Tort Trustee may be removed from office by the District Court</u> upon his or her own motion of at least twenty (20) Tort Trust Beneficiaries represented by at least five (5) independent and unaffiliated attorneys and a determination by the District Court that such removal is appropriate upon good cause shown.

Tort Trust Agreement, at 7, § 3.03(c) (emphasis added).

[5] The Tort Trust Agreement states:

> 3.04 *Appointment of Successor Tort Trustees*.
>
> (a) In the event of the death, resignation, incapacity to serve as determined by the District Court or removal of a Tort Trustee prior to the expiration of his or her term, <u>a successor Tort Trustee shall be appointed by the District Court on motion of any party in interest.</u> If the District Court no longer retains jurisdiction, or declines to exercise it, a successor Tort Trustee shall be appointed by such other court of competent jurisdiction as is appropriate under the circumstances.

Tort Trust Agreement, at 7, § 3.04(a) (emphasis added).

7

    f. Under the Tort Trust Agreement and the Claims Resolution Facility Procedures, this Court has the power to appoint a successor Appeals Administrator.[7]

---

[6] The Tort Trust Agreement states:

> **ARTICLE V. SETTLEMENT ADMINISTRATOR(S) AND APPEALS ADMINISTRATOR**
>
> 5.02 *Replacement*.  Except as otherwise provided by the Claims Resolution Facility Procedures or the Provider Claims Resolution Facility Procedures, in the event the Settlement Administrator(s) or Appeals Administrator designated and appointed in the Claims Resolution Facility Procedures or the Provider Claims Resolution Facility Procedures, if applicable, resigns or is removed from office or is otherwise unable to perform the functions of a Settlement Administrator or Appeals Administrator, <u>the District Court shall appoint a successor Settlement Administrator or Appeals Administrator</u>.

Tort Trust Agreement, at 16, § 5.02 (emphasis added).

[7] The Tort Trust Agreement states:

> **ARTICLE V. SETTLEMENT ADMINISTRATOR(S) AND APPEALS ADMINISTRATOR**
>
> 5.02 *Replacement*.  Except as otherwise provided by the Claims Resolution Facility Procedures or the Provider Claims Resolution Facility Procedures, <u>in the event the Settlement Administrator(s) or Appeals Administrator designated and appointed in the Claims Resolution Facility Procedures or the Provider Claims Resolution Facility Procedures, if applicable, resigns or is removed from office or is otherwise unable to perform the functions of a Settlement Administrator or Appeals Administrator, the District Court shall appoint a successor Settlement Administrator or Appeals Administrator.</u>

Tort Trust Agreement, at 16, § 5.02 (emphasis added).  The Claims Resolution Facility Procedures state:

> **INTRODUCTION AND GENERAL PROVISIONS**
>
> E. To provide for an appeal process from Claim denials, upon entry of an order by the District Court pursuant to 28 U.S.C. § 636, Magistrate Judge Kenneth P. Neiman will be appointed as Appeals Administrator.  If no such order is entered by the District Court

8

  g. Under the Tort Trust Agreement and the Claims Resolution Facility Procedures, this Court has the power to appoint a successor National Settlement Administrator.[8]

  h. Under the Tort Trust Agreement, upon partial withdrawal of the reference, this Court is granted jurisdiction over all issues relating to the liquidation or estimation of contingent or unliquidated personal injury and wrongful death claims.[9]

---

within 30 days of the Plan Effective Date, then Kenneth Feinberg, Esq. will be deemed to be appointed as Appeals Administrator. <u>In the event the Appeals Administrator resigns or is removed from office or is otherwise unable to perform the functions of the Appeals Administrator, the District Court shall appoint a successor Appeals Administrator.</u>

Claims Resolution Facility Procedures, at. 2, ¶ E. (Emphasis added).

[8] Tort Trust Agreement, at 16, § 5.02.  The Claims Resolution Facility Procedures state:

**INTRODUCTION AND GENERAL PROVISIONS**

D. To facilitate, effectuate and implement the purposes of the Claims Resolution Facility, Epiq Class Action and Claim Solutions, Inc. (the "National Settlement Administrator") is hereby retained and appointed to execute the functions described herein in accordance with the terms of the Trust Agreement.  The National Settlement Administrator shall oversee all aspects of the Claims Resolution Facility and shall prepare and distribute to the Tort Trustee periodic reports documenting the activities of the Claims Resolution Facility, including reports on Tort Claim submissions and resolution.  <u>In the event that the National Settlement Administrator resigns or is removed from office or is otherwise unable to perform the functions of the National Settlement Administrator, a successor National Settlement Administrator shall be appointed by the District Court</u>, as defined in the Tort Trust Agreement, after notice and opportunity to be heard by persons having Tort Claims.

Claims Resolution Facility Procedures, at 2, at ¶ D (emphasis added).

      i.      As set forth above, the Plan grants to this Court the power to appoint the Tort Trustee.[10]

      j.      The Claims Resolution Facility Procedures grant to this Court the power to appoint Magistrate Judge Kenneth P. Neiman as the Appeals Administrator.[11]

---

[9] The Tort Trust Agreement states:

> **ARTICLE X.    GENERAL PROVISIONS**
>
> 10.11 *Retention of Jurisdiction*. Except as to matters that are reserved to District Court as provided herein and to the extent the reference to the Bankruptcy Court has properly been withdrawn, the Bankruptcy Court shall retain exclusive jurisdiction over any action or proceeding arising out of or relating to this Agreement or the Tort Trust *other* than issues pertaining to the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the Estate for purposes of distribution, and all claims in respect of such action or proceeding may be heard and determined in such Court.

Tort Trust Agreement, at 39, at § 10.11.

[10] Plan at 20, § 1.202.

[11] *See* Claims Resolution Facility Procedures at 2, ¶ E.

10

## IV.   RELIEF REQUESTED

14. Pursuant to 28 U.S.C. § 157(d) and consistent with the terms of the Plan, the Tort Trust Agreement and the Claims Resolution Facility Procedures, the Post-Confirmation Officer respectfully requests that this Court enter an order partially withdrawing the reference of the Chapter 11 case as to those matters identified in subparagraphs 13(a) through (j) above (collectively, the "Tort Trust and Claims Resolution Facility Matters"), *nunc pro tunc* to May 14, 2015 (*i.e.*, the date of the entry of this Court's order appointing the Tort Trustee).  It is appropriate that this Court, and not the bankruptcy court, resolve these issues in light of the provisions of the Plan, the Tort Trust Agreement and the Claims Resolution Facility Procedures, as well as 28 U.S.C. § 157(b)(5), which grants to district courts (and not bankruptcy courts) jurisdiction over "personal injury tort and wrongful death claims." 28 U.S.C. § 157(b)(5).  Entry of such an order will avoid any future disputes which may arise concerning this Court's jurisdiction over Tort Trust and Claims Resolution Facility Matters.

15. For all other purposes, the Bankruptcy Court shall retain jurisdiction over the Bankruptcy Case and matters relating to the Plan and its implementation.  However, the Post-Confirmation Officer reserves the right to seek hereafter and from time to time withdrawal of the reference as to other matters arising under the Plan, the Tort Trust Agreement and the Claims Resolution Facility Procedures.

**WHEREFORE**, for the reasons set forth herein, the Post-Confirmation Officer respectfully requests that this Court enter an order partially withdrawing the reference as to the Tort Trust and Claims Resolution Facility Matters, *nunc pro tunc* to May 14, 2015.

Dated:  June 12, 2015                                   Respectfully submitted,


By:  */s/ Michael R. Gottfried*
Michael R. Gottfried (BBO #542156)
**DUANE MORRIS LLP**
100 High Street
Suite 2400
Boston, MA 02110-1724
Tel: (857) 488-4200
Email:  mrgottfried@duanemorris.com

Michael R. Lastowski (admitted *pro hac vice*)
**DUANE MORRIS LLP**
222 Delaware Avenue, Suite 1600
Wilmington, DE 19801
Tel: (302) 657-4900
Fax: (302) 657-4901
Email:  mlastowski@duanemorris.com

*Counsel for Paul D. Moore, the Post-Confirmation Officer of  New England Compounding Pharmacy, Inc. d/b/a New England Compounding Center*