UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Cumberland Medical Center, | ) |
| Movant, | ) |
| v. | ) MDL No. 2419 |
| | ) Dkt. No. 1:13-md-2419-RWZ |
| PLAINTIFFS' STEERING COMMITTEE in the matter of *In re: New England Compounding Pharmacy, Inc., Civil Action No: MDL 1:13-md-02419* | ) |
| Respondent. | ) |

**PLAINTIFFS' STEERING COMMITTEE'S OPPOSITION TO
CUMBERLAND MEDICAL CENTER'S MOTION TO QUASH**

Shortly after the deadly meningitis catastrophe occurred, including the death and illness of numerous patients of Defendant Specialty Surgery Center ("SSC"), SSC's owners purported to sell all its assets to Cumberland Medical Center ("Cumberland"). SSC's owners put the Cumberland money into their pockets[1] and then dissolved SSC. Lister dep. at 37:23-39:18 (Collective Ex. 1 hereto.) Not a penny of the Cumberland money was paid to patients who were sickened by contaminated medications administered at the facility. Lister dep. at 40:6-11.

At the time of the sale, SSC was well aware that at least thirty-five of its patients had been sickened and three had died as a result of contaminated medication sold by and injected at SSC. Moreover, at the time of the sale, Cumberland was aware of SSC's potential liabilities as a result of the deadly meningitis catastrophe. Lister dep. at 39:19-25.

---

[1] The attorney for Dr. Kenneth Lister, an owner and director of SSC and an individual defendant in a number of the MDL lawsuits, instructed Dr. Lister not to answer the question about how much money he received from the Cumberland transaction. Lister dep. at 40:17-41:14.

1261675.2

As part of the sale, SSC transferred all patient charts and records to Cumberland, Lister dep. at 71:18-72:21, as well as all medical equipment. *Id*. at 27:9-12. Following the sale, Cumberland continued to operate a clinic in the same building that SSC used, Lister dep. at 19:1-5, and kept the same employees for a period of time. Lister dep. at 26:10-13. Dr. Lister, the SSC owner and director who injected the patients with contaminated medication, continued to perform epidural steroid injections for Cumberland. Lister dep. at 27:13-24.

After learning this information, the Plaintiffs' Steering Committee ("PSC") issued a subpoena to Cumberland seeking information clearly relevant to the underlying claims of liability and damages against SSC,[2] including:

- Communications between Cumberland and SSC regarding the fungal meningitis outbreak that is subject of the MDL litigation; and

- Communications and documents relating to the 2013 asset sale between Cumberland and SSC.

Cumberland refused to produce a single document and has apparently made no attempt whatsoever to provide any requested materials. Cumberland also refused to produce a witness for deposition. Instead, Cumberland moved to quash the subpoena. In its motion, Cumberland makes kitchen sink arguments, without any supporting materials or sworn declarations, including: the subpoena causes an undue burden, is overly broad, is a "fishing expedition," seeks information also available from other sources, and seeks proprietary business information—all while also maintaining that it has no responsive materials. None of these unsupported arguments

---

[2] There are presently twenty-four cases in the MDL pending against SSC and related defendants, which include claims for compensatory and punitive damages.

- 2 -

constitute a sufficient basis to warrant quashing the subpoena and all are without merit. Accordingly, Cumberland's motion should be denied.

## I. Cumberland Should Be Required To Respond To The PSC's Subpoena

### A. Cumberland Failed To Carry Its Burden On A Motion To Quash

The Federal Rules of Civil Procedure should be applied "to secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. To this end, courts view the scope of discovery as broad and the circumstances warranting quashing subpoenas as narrow. *See Hickman v. Taylor*, 329 U.S. 495, 507, 91 L. Ed. 451, 67 S. Ct. 385 (1947) ("Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation."); *United States v. Mass. Indus. Fin. Agency*, 162 F.R.D. 410, 414 (D. Mass. 1995) ("As a general matter, relevancy must be broadly construed at the discovery stage such that information is discoverable if there is any probability it might be relevant to the subject matter of the action."). Under Rule 45, a subpoena may be quashed for various reasons, including that it "subjects a person to undue burden," which is what Cumberland claims. Fed. R. Civ. P. 45(d)(3)(A)(iv).

Due to the public policy supporting an expansive scope of discovery, proving the "undue burden" of a subpoena falls on the moving party and is a heavy burden. *Horizons Titanium Corp. v. Norton Co.*, 290 F.2d 421, 425 (1st Cir. Mass. 1961). Furthermore, when a court is presented with a motion to quash a subpoena, although granting the motion is of course within the court's discretion, modification is generally preferred. *See Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556, 560 (7th Cir. Ill. 1984) ("its duty is not to deny any discovery, but to reduce the demand to what is reasonable"); *Williams v. City of Dallas*, 178 F.R.D. 103, 110 (N.D. Tex. 1998) ("modification of a subpoena is preferable, however, to quashing it").

Cumberland asserts that the subpoena creates an "undue burden" because (1) the information sought by the subpoena is not relevant and constitutes a fishing expedition, (2) the subpoena is overly broad, (3) the information is available from another source, and (4) the subpoena requests proprietary business information. These arguments are unsupported and do not warrant quashing the subpoena.

### B. The Information Sought Is Relevant To The Claims In The Litigation

Cumberland argues that the subpoena seeks information that is not relevant to claims against SSC and that the subpoena constitutes a "fishing expedition." Both of these assertions are wrong.

Federal Rule of Civil Procedure 26(b)(1) provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter

The relevance standards for discovery have been construed very broadly. As stated in one of the Supreme Court's seminal cases on the scope of discovery, *Hickman v. Taylor*, "no longer can the time-honored cry of "fishing expedition" serve to preclude a party from inquiring into the facts underlying his opponent's case." 329 U.S. at 507. Also, the First Circuit has stated that it is not a valid objection that information discovered via subpoena may be ultimately inadmissible at trial if it appears to have been reasonably calculated to lead to the discovery of admissible evidence. *Horizons Titanium Corp.*, 290 F.2d at 425 ("This rule apparently envisions generally unrestrictive access to sources of information, and the courts have so interpreted it.").

Under this broad understanding of relevance, there is every reason to believe that Cumberland has relevant information that can be validly subpoenaed.

For example, one of the owners of SSC stated he believed that at the time of the sale Cumberland knew about SSC's potential liabilities for the fungal meningitis catastrophe.  Lister dep at 39:19-25.  This testimony is unrebutted. The conduct of SSC, its owners, and its employees in connection with the meningitis catastrophe is central to Plaintiffs' claims.  What SSC said to Cumberland about their conduct, including their potential liabilities, would itself be clearly relevant to Plaintiffs' claims.  It is difficult to imagine that an entity seeking to buy the assets of a company at the center of one of the deadliest contaminated medicine outbreak in United States history—including the charts and records of patients sickened and killed by the contaminated medication—would not have had any discussions about that situation.  In any event, Cumberland has produced no evidence, in the form of documents or sworn testimony, that would support its contention that the information is irrelevant.

Additionally, to the extent the information in Cumberland's information relates to the disposal of assets by SSC, it is additionally relevant.  Plaintiffs have sought compensatory and punitive damages.  If SSC disposed of assets in the face of substantial impending liability— including the equipment involved in the underlying conduct, as well as the records and charts of affected patients—such conduct could evidence an admission of culpable conduct.  Discovery of information surrounding the disposal of the assets, including the statements of the participants in the transactions both about the transaction and the anticipated liabilities, would be relevant and likely central to the underlying claims.  Moreover, if Tennessee substantive law applies to pertinent damages issues, the statutory factors relevant for the trier of fact to consider when

1261675.2

deciding punitive damages include: the defendant's financial condition and net worth; whether, once the misconduct became known to defendant, defendant took remedial action or attempted to make amends by offering a prompt and fair settlement for actual harm caused; and any other circumstances shown by the evidence that bear on determining a proper amount of punitive damages.  Tenn. Code Ann. § 29-39-104(a)(4) (2014); *see also Breault v. Friedli*, 610 S.W.2d 134, 140 (Tenn. Ct. App. 1980).

Accordingly, the information sought is relevant and discoverable, and Cumberland has failed to carry its burden on its motion to quash.

### C. The Subpoena Is Narrowly Tailored To Seek Relevant Information

The assertion that the subpoena is overly broad is also without merit.  The information requested is specified to transactions between Cumberland and NECC regarding the fungal meningitis outbreak or other matters *germane to litigation*—which by definition are relevant for discovery purposes.  Furthermore, a perfunctory assertion by the subpoenaed party that compliance would be burdensome is not enough.  *Hernandez v. Esso Std. Oil Co.*, 252 F.R.D. 118, 120 (D.P.R. 2008) ("It must show clearly the manner and extent of the burden and the injurious consequences of plaintiffs' insisting on compliance with the subpoena.").

The subpoena is limited to a specified transaction and specified topics of communication. To the extent Cumberland had discussions with SSC that did not involve issues relevant to the fungal meningitis outbreak or the purported asset purchase, the PSC would be willing to reach an agreed clarification and limitation with Cumberland.  Quashing the entire subpoena is not warranted under the law or the facts.

1261675.2

> **D.    Even If Some Of Cumberland's Documents Are Available From Another Source, Cumberland Has Failed To Establish How This Relieves Them Of Their Duty To Respond To The Subpoena**

Cumberland argues that they should not be required to produce relevant information because at least some of the subpoenaed information is also from another source. While the availability from another source is a factor in the balancing required to determine "undue burden," *see Bruno & Stillman, Inc. v. Globe Newspaper Co.*, 633 F.2d 583, 598 (1st Cir. 1980); *Durand v. Massachusetts Dep't of Health*, No. CIV.A. 12-10630-RGS, 2013 WL 2325168, at *1 (D. Mass. May 28, 2013), it is not a conclusive one. *See M.L.C., Inc. v. North American Philips Corp.*, 109 F.R.D. 134, 139 (S.D.N.Y. 1986) ("an adversary's knowledge of the existence of documents is not a defense for a party's failure to produce these documents"); *Westhemeco, Ltd. v. New Hampshire Ins. Co.*, 82 F.R.D. 702, 710 (S.D.N.Y. 1979) (similar).

This argument by Cumberland apparently boils down to they simply do not want to provide discoverable documents, which is *not* a valid reason to support the "undue burden" analysis. Analyzing this argument, the appropriate measure is the cost and burden of discovery to the subpoenaed party, not Cumberland's judgment that the information could possibly be gathered elsewhere. *See Meeks v. Parsons*, 2009 U.S. Dist. LEXIS 90283, *25 (E.D. Cal. Sept. 18, 2009). Cumberland has proffered no evidence that producing discoverable materials would impose excessive costs on them and has not established that it even undertook a reasonable inquiry as to what discoverable information it has. Furthermore, given the nature and timing of their business and ultimately ownership relationship with SSC, the undisputed testimony establishes that Cumberland likely has relevant information that is unavailable by other means.

1261675.2

### E. Any Concern About Disclosure Of Proprietary Business Information Can Be Addressed By Protective Order

In addition to its other arguments, including that it has no discoverable information, Cumberland argued without any support in the record that the subpoena should be quashed because the information sought is proprietary business information. This argument also is without merit.

Rule 45 sets forth that a subpoena *may be* quashed or modified if it discloses, "a trade secret, or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B)(i). But, even sensitive information like trade secrets and patients' medical information may be subpoenaed in conjunction with a protective order. *See Reproductive Services, Inc. v. Walker*, 439 U.S. 1307, 1309 (U.S. 1978) (where the Supreme Court upheld a subpoena that requested sensitive patient information when accompanied by a protective order).

In this case, the subpoenaed information (1) would be guarded by a secure protective order already entered in this litigation (dkt. 814) that specifically covers documents produced by third parties in response to Rule 45 subpoenas, and (2) is not the type of information intended to be covered by the "trade secrets" provision. Knowing that Cumberland's Asset Purchase Agreement would most likely not qualify as a "trade secret," Cumberland avoids using that language and instead claims that it is "proprietary business information." Courts have specifically held that the discovery of this type of information is not reason to quash a subpoena. *See Horizons Titanium Corp.*, 290 F.2d at 426 ("Concededly, it is burdensome to give testimony and to furnish documents relating to private or business matters, and the more so if the information sought redounds to the advantage of a legal or commercial opponent. But this is not 'oppression' within the meaning of the rules."); *Truswal Systems Corp. v. Hydro-Air*

- 8 -

- 9 -

*Engineering, Inc.*, 813 F.2d 1207, 1211 (Fed. Cir. 1987) ("The normal and expected reluctance of business firms to disclose sales information, however, is in itself an insufficient basis on which to deny discovery of that information under appropriate protection from divulgement to competitors."). The information requested in the subpoena is not covered by the "trade secrets" provision and is guarded by a protective order. Therefore, the Court should not quash the subpoena on this basis.

## II.    Conclusion

Cumberland has failed to carry its burden necessary to warrant quashing a valid, enforceable subpoena for discoverable information. Cumberland has failed to support its arguments with any materials, such as documents, declarations, or other sworn testimony. The information sought is relevant to the litigation under the Federal Rules and the subpoena is not overly broad. Moreover, Cumberland is the appropriate entity to supply the requested information. The information subpoenaed is not "trade secrets," and, to the extent any of the information warrants confidentiality, it would be subject to the protective order already entered in the litigation.

Accordingly, Cumberland's Motion to Quash should be denied.

Dated: June 18, 2015              Respectfully submitted,


    */s/ Mark P. Chalos*
    Mark P. Chalos

Elizabeth J. Cabraser
Mark P. Chalos
Annika K. Martin
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
150 Fourth Avenue North, Suite 1650
Nashville, TN 37219-2417
Telephone: (615) 313.9000
Facsimile: (615) 313.9965
ecabraser@lchb.com
mchalos@lchb.com

*Federal/State Liaison*

Thomas M. Sobol
Kristen Johnson
Edward Notargiacomo
HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003
tom@hbsslaw.com
kristenjp@hbsslaw.com
enotargiacomo@hbsslaw.com

*Plaintiffs' Lead Counsel*

Marc E. Lipton
LIPTON LAW
18930 W. 10 Mile Road
Southfield, MI 48075
Telephone: (248) 557-1688
Facsimile: (248) 557-6344
marc@liptonlawcenter.com

- 10 -

1261675.2

Kim Dougherty
JANET, JENNER & SUGGS, LLC
31 St. James Avenue, Suite 365
Boston, MA 02116
Telephone: (617) 933-1265
kdougherty@myadvocates.com

Patrick T. Fennell
CRANDALL & KATT
366 Elm Avenue, S.W.
Roanoke, VA 24016
Telephone: (540) 342-2000
pfennel@crandalllaw.com

Mark Zamora
ZAMORA FIRM
6 Concourse Way, 22nd Floor
Atlanta, GA 30328
Telephone: (404) 451-7781
Facsimile: (404) 506-9223
marc@markzamora.com

J. Gerard Stranch, IV
Benjamin A. Gastel
BRANSETTER, STRANCH & JENNINGS PLLC
227 Second Avenue North
Nashville, TN 37201
Telephone: (615) 254-8801
Facsimile: (615) 255-5419
gerards@branstetterlaw.com
beng@branstetterlaw.com

*Plaintiffs' Steering Committee*

## CERTIFICATE OF SERVICE

I, Mark P. Chalos, hereby certify that I caused a copy of the foregoing to be filed electronically via the Court's electronic filing system.  Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system, and notice of these filings will be sent to these parties by operation of the Court's electronic filing system.

Dated:  June 18, 2015

                                              */s/ Mark P. Chalos*
                                              Mark P. Chalos