**MONTGOMERY McCRACKEN WALKER & RHOADS LLP**
(A Limited Liability Partnership Formed in Pennsylvania)
LibertyView, Suite 600
457 Haddonfield Road
Cherry Hill, New Jersey 08002
(856) 488-7700
*Counsel for Defendants Inspira Health Network, Inc.,*
*Inspira Medical Centers, Inc., Joseph Alessandrini and*
*Paul Abrams*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION** <br><br> THIS DOCUMENT RELATES TO: <br> *All New Jersey Cases* | **Document Electronically Filed** <br><br> Docket No. 1:13-md-2419-RWZ <br> MDL No. 02419 |

**INSPIRA HEALTH NETWORK, INC. AND INSPIRA MEDICAL CENTERS, INC.'S**
**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR A PROTECTIVE ORDER**
**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(c)**

**I.      INTRODUCTION**

Defendants Inspira Health Network, Inc. and Inspira Medical Centers, Inc. (formerly known as South Jersey Health System, Inc. and South Jersey Hospital, Inc.) and Joseph Alessandrini and Paul Abrams (collectively, "Inspira"), by and through their undersigned attorneys, respectfully submit this Motion for a Protective Order Pursuant to Fed. R. Civ. P. 26(c) concerning the two depositions noticed by the Premier Defendants who are defendants in 56 cases pending in the MDL.[1]  Good cause exists to grant Inspira's Motion (i) prohibiting

---

[1] The Premier Defendants, represented by the same law firm, include Premier Orthopaedic and Sports Medicine Associates of Southern New Jersey, LLC, trading as Premier Orthopaedic Associates, Premier Orthopaedic Associates Surgical Center, LLC, and Kimberley Yvette Smith, M.D., a/k/a Kimberley Yvette Smith-Martin, M.D., Thomas Dwyer, M.D., Richard C. DiVerniero, M.D., and Richard Strauss, M.D.

discovery in the 35 of the 56 pending MDL cases against the Premier Defendants in which Inspira is *not* a defendant because Inspira is not a party in those cases and has no information relevant the Premier Defendants' claims or defenses, including how the Premier Defendants ordered, stored, administered, or otherwise handled NECC MPA at Premier's facility; (ii) barring the depositions because of the existing order staying discovery against Inspira, which also requires a further order of the court to obtain discovery from Inspira; (iii) delaying any depositions of Inspira relating to the 21 of the 56 pending MDL cases against the Premier Defendants in which Inspira is named as a defendant until after the bellwether trials because the discovery sought by the Premier Defendants contravenes this Court's MDL Orders staying case specific discovery; and (iv) prohibiting inquiry into certain matters and limiting the scope of the Premier Defendants' Rule 30(b)(6) deposition because it requests discovery of irrelevant and privileged information.

## II.     BACKGROUND

As the Court is aware, these cases arise from an outbreak of fungal meningitis caused by contaminated preservative-free methylprednisolone acetate ("MPA") steroid injections produced by New England Compounding Pharmacy ("NECC"). NECC's contaminated MPA was injected into about 14,000 individuals between May and September 2012 at about seventy-six (76) health care facilities across twenty-three (23) states.

### A.     The Key Distinction between the Premier Defendants and Inspira

Inspira is a New Jersey, non-profit, 501(c)(3) charitable organization that, at the time of the outbreak, owned and operated, among other facilities, two hospitals in Vineland and Elmer, New Jersey ("Inspira's Hospitals") that received NECC's tainted MPA. Defendant Premier Orthopaedic Associates ("Premier") is an orthopedic practice in Southern New Jersey with

offices in Vineland, Elmer and Mullica Hill that holds itself out as, among other things, specialists in pain management.  *See* Premier, http://poasnj.com/ (last visited June 19, 2015).  Inspira does not own or operate Premier.

Premier provided its patients pain management treatment, including the NECC MPA injections at issue, at its own facilities.  Inspira had no involvement in how Premier ordered, stored, administered, or otherwise handled NECC MPA for those patients treated at Premier's facilities.  Premier had its own policies, procedures, consultants, and management company for the vetting, selection, approval and administration of the use of NECC MPA at Premier's facilities.  *See infra* Section III.B.  In addition to administering injections at their own facilities, Premier provided Premier's patients pain management treatment, including the NECC MPA injections at issue, at Inspira's Hospitals.

### B. Overview of the MDL Cases Against the Premier Defendants and/or Inspira

As of June 19, 2015, there are 721 actions pending in this MDL[2], the majority of which are from states other than New Jersey.  There are currently 56 cases in the MDL in which the Premier Defendants are parties.  Of those, there are 35 cases[3] in which only the Premier

---

[2] *See* United States Judicial Panel on Multidistrict Litigation, MDL Statistics Report - Distribution of Pending MDL Dockets by District (last accessed June 17, 2015 http://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-June-15-2015.pdf).

[3] *Akers et al v. Premier Orthopaedic Associates Surgical Center, LLC et al* (14-cv-13910); *Askins et al v. Premier Orthopaedic Associates Surgical Center, LLC et al* (14-cv-13905); *Bacigalupo et al v. Premier Orthopaedic Associates Surgical Center, LLC et al* (14-cv-13962); *Baird v. Premier Orthopaedic Associates Surgical Center, LLC et al* (14-cv-13946); *Bolton et al v. Premier Orthopaedic Associates Surgical Center, LLC et al* (14-cv-13904); *Burrell et al v. Premier Orthopaedic Associates Surgical Center, LLC et al* (14-cv-13958); *Campbell et al v. Premier Orthopaedic Associates Surgical Center, LLC et al* (14-cv-13916); *Campbell v. Premier Orthopaedic Associates Surgical Center, LLC et al* (14-cv-13909); *Chambers v. New England Compounding Pharmacy, Inc. et al* (14-cv-11822); *Dersch v. Premier Orthopaedic Associates Surgical Center, LLC et al* (14-cv-13164); *Devilli et al v. Ameridose, LLC et al* (13-cv-11167); *Drain et al v. Unifirst Corporation Adba Cleanroom Services et al* (14-cv-13673); *Effendian v. New England Compounding Pharmacy, Inc. et al* (13-cv-11233); *Goff v. Premier Orthopaedic Associates Surgical Center, LLC et al* (14-cv-13913); *Gonzalez v. Premier Orthopaedic Associates Surgical Center, LLC et al* (14-cv-13949); *Hollywood et al v. Premier Orthopaedic Associates Surgical Center, LLC et al* (14-cv-13951); *Jones et al v. Premier Orthopaedic Associates Surgical Center, LLC et al* (14-cv-

Continued…

Defendants were sued because the NECC MPA injection took place at Premier's facilities and had absolutely nothing to do with Inspira. There are 21 other cases in which both Premier and Inspira were named because the Premier Defendants administered the NECC MPA injection to their patients at Inspira's Hospitals, and 4 of those 21 cases name Inspira employees Joseph Alessandrini and Paul Abrams as defendants.[4] Accordingly, Inspira is named as a defendant only in a mere 3%, and Inspira employees Alessandrini and Abrams are named in less than 1%, of the actions pending in this MDL.

C. **Status of the MDL Cases Against Inspira**

On January 6, 2014, the Court entered an order staying all discovery against Inspira given Inspira's effort to mediate a potential settlement. (Dkt. No. 740). The order provides that "all

---

….Continued
13907); *Kirby et al v. Premier Orthopaedic And Sports Medicine Associates Of Southern New Jersey, LLC et al* (14-cv-13960); *Leaverton, et al. v. New England Compounding Pharmacy, Inc. et al* (13-cv-10408); *Letizia et al v. New England Compounding Pharmacy, Inc. et al* (13-cv-10442); *Marko et al v. New England Compounding Pharmacy, Inc. et al* (13-cv-10404); *Mcbride et al v. Premier Orthopaedic Associates Surgical Center, LLC et al* (14-cv-14152); *McCoy et al v. Premier Orthopaedic Associates Surgical Center, LLC et al* (14-cv-13911); *Morell v. Premier Orthopaedic Associates Surgical Center, LLC et al* (14-cv-13961); *Overstreet et al v. Premier Orthopaedic Associates Surgical Center, LLC et al* (14-cv-13760); *Parkell et al v. Unifirst Corporation Adba Uniclean Cleanroom Services et al* (14-cv-13640); *Pennington v. New England Compounding Pharmacy, Inc. et al* (13-cv-10406); *Roagers v. Premier Orthopaedic Associates Surgical Center, LLC et al* (14-cv-13915); *Schwab et al v. Premier Orthopaedic Associates Surgical Center, LLC et al* (14-cv-13914); *Shanon et al v. Premier Orthopaedic Associates Surgical Center, LLC. et al* (14-cv-13555); *Snead et al v. New England Compounding Pharmacy, Inc. et al* (14-cv-11821); *Tisa et al v. New England Compounding Pharmacy, Inc. et al* (13-cv-10446); *Tolotti et al v. New England Compounding Pharmacy, Inc. et al* (13-cv-10413); *Warfle et al v. Premier Orthopaedic Associates Surgical Center, LLC et al* (14-cv-13908); *Zavacki v. New England Compounding Pharmacy, Inc. et al* (13-cv-10441).

[4] *Bane et al v. Inspira Health Network, Inc. et al* (14-cv-13599); *Bazikos v. Inspira Health Network, Inc. et al* (14-cv-13163); *Federico v. Inspira Health Network, Inc. et al* (14-cv-13956); *Fisher v. Inspira Health Network, Inc. et al* (14-cv-13601); *Garcia et al v. Inspira Health Network, Inc. et al* (14-cv-14084); *Gould et al v. New England Compounding Pharmacy, Inc. et al (*13-cv-10444); *Guzman v. New England Compounding Pharmacy, Inc.* (12-cv-12208); *Hannah v. New England Compounding Pharmacy, Inc. et al* (13-cv-10407); *Headley et al v. Inspira Health Network, Inc. et al* (15-cv-10258); *Hermens et al v. Inspira Health Network, Inc. et al* (14-cv-13945); *Jones v. New England Compounding Pharmacy, Inc. et al* (13-cv-10409); *Normand et al v. New England Compounding Pharmacy, Inc. et al* (13-cv-10447); *Ramos v. Inspira Health Network, Inc. et al* (14-cv-13957); *Rios et al v. New England Compounding Pharmacy, Inc. et al* (13-cv-10411); *Rivera v. Premier Orthopaedic Associates Surgical Center, LLC et al* (14-cv-13943); *Santiago et al v. Inspira Health Network, Inc. et al* (14-cv-13959); *Stech v. Inspira Health Network, Inc. et al* (14-cv-13952); *Styles et al v. Inspira Health Network, Inc. et al* (14-cv-13953); *Tayvinsky et al v. New England Compounding Pharmacy, Inc. et al* (13-cv-10414); *Trout et al v. Inspira Health Network, Inc. et al* (14-cv-13954); *West v. Inspira Health Network, Inc. et al* (14-cv-13165).

discovery in the MDL is stayed as to Inspira during the pendency of the mediation and will resume upon the termination of mediation without a settlement or *further order of the Court*." (*Id.* (emphasis added)).  For over a year, Inspira worked tirelessly along with NECC's Chapter 11 Trustee, his counsel, and representatives of both the Official Committee of Unsecured Creditors and the Plaintiffs' Steering Committee ("PSC").  After two full days of mediation in July 2014 and several months of additional negotiations, Inspira executed a settlement agreement on December 3, 2014 resolving all claims against NECC's bankruptcy estate, the MDL cases against Inspira, and any and all current and future tort claims against Inspira for $16 million. The bankruptcy court approved the settlement on May 20, 2015 as part of the Findings of Fact, Conclusions of Law and Order Confirming the Third Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc.  (Bankruptcy Dkt. No. 1355).  Given Inspira's successful settlement, the order staying discovery against Inspira remains in place until further order of this Court.

On June 18, 2015, this Court entered an Order to Show Cause Concerning Dismissal of Claims Against Settling Defendants.  (Dkt. No. 1992).  The Order recognizes that Inspira, among others, has been granted releases and channeling injunctions for any and all current or future claims or cases in exchange for contributing significant funds to the NECC estate.  (*Id.*).  The Bankruptcy Plan is final and not subject to appeal, and the releases and channeling injunctions went into effect on June 4, 2015.  (*Id.*).  It further Orders that all claims of any type against Inspira in the MDL will be dismissed with prejudice on July 3, 2015, as long as no objection is filed by July 2.  (*Id.*).  It is anticipated that all claims against Inspira asserted in the 21 MDL cases will be dismissed with prejudice in two weeks.

D.     **Common Issue Discovery**

On September 18, 2014, this Court issued MDL Order No. 9 regarding Common Issue Discovery. The Common Issue Discovery Order is intended "to provide a reasonable timetable for discovery on Common Issues[] in order to help ensure a fair and just resolution of this matter without undue expense or delay." (Dkt. No. 1425). It defines a "common issue" as one "that pertains to all or a substantial number of cases in the [MDL]." (*Id.* at 1, n.1). In contrast, a "case specific issue" is defined as one "that pertains to a single case or a small number of cases." (*Id.*). Examples of case specific issues include the amount of physical harm suffered by a patient or statements made by defendants to a particular plaintiff. (*Id.*). The Court's Deposition Protocol, too, provides that "depositions of "Common Witnesses" and depositions on "Common Issues" shall refer to depositions of fact witnesses with knowledge of issues that pertain to all or a substantial number of cases in the [MDL], as opposed to depositions of witnesses with knowledge on issues pertaining to a single case or a small number of cases." (Dkt. No. 1426, MDL Order No. 10). The Common Issue Discovery Order further provides that case specific discovery is "stayed pending issuance of a bellwether trial protocol and selection of the initial bellwether pool." (MDL Order No. 9 at 3, n.5).

In a flurry of recent motion practice, the Premier Defendants and the PSC, among others, have requested an extension of common-issue fact discovery. (*See*, *inter alia*, Dkt. Nos. 1900, 1950). As to the bellwether cases, the Premier Defendants request that bellwether proposals be submitted to the Court by November 15, 2015, and case-specific bellwether discovery be completed by February 15, 2016. (Dkt. No. 1950 at 5). The Premier Defendants' MDL scheduling proposal provides that the case(s) selected for trial through the bellwether process would be trial-ready by February 2017, over a year and a half from today. (*Id.* at 6).

E. **The Premier Defendants' Notices of Deposition**

On May 15, 2015, the Premier Defendants served on Inspira a Rule 30(b)(6) notice of deposition and a notice of deposition for Joseph Alessandrini, R.Ph. (Dkt. No. 1861, the Premier Defendants' Notice of Filing of Deposition Notices). The depositions were noticed unilaterally for June 22, 2015 and June 29, 2015, respectively.[5] (*Id.*). The notices relate to "All New Jersey Cases," not merely the cases in which Inspira is a named party. (*Id.*).

The Rule 30(b)(6) notice includes 15 extremely broad subjects on which Inspira's designee "shall be prepared to testify." It requests, in part:

> 5. Inspira's policies and procedures for compounding and/or manufacturing pharmaceuticals, ordering pharmaceuticals, ordering compounded pharmaceuticals from compounding pharmacies including but not limited to NECC, maintaining, organizing, labeling, ordering and storing pharmaceuticals including but not limited to compounded medications.
> . . .
> 7. Any and all documentation, correspondence, emails, electronically stored documents, letters, memorandum or other documents relating to or referencing the ordering of Methylprednisolone Acetate from any compounding pharmacy.
>
> 8. Any and all documents, correspondence, emails, electronically stored documents, letters memorandum, pictures, drawings, notes or other items produced to the PSC, whether formally or informally.
>
> 9. Any and all documents, correspondence, emails, electronically stored documents, letters memorandum, pictures, drawings, notes or other items produced to the department of justice, FBI, FDA or other investigative authority, whether formally or informally.
> . . .
> 11. Any and all policies (written or oral) addressing the administration of Epidural Steroids.
>
> 12. Any and all policies (written or oral) addressing the use of, ordering of, storage or, procurement of, or relating in any way to compounded mediation. [*sic*]

---

[5]  The Premier Defendants filed a Notice of Postponement of Deposition for both on June 17, 2015. (Dkt. No. 1977) after the Premier Defendants and Inspira met and conferred.

13. Any and all efforts, investigation, findings, reports, memoranda, letters, conclusions, impressions, documents, correspondence, site visits, inspections, meetings with NECC or other items related in any way to any investigation performed by Inspira into NECC and its operation.

14. Any and all contacts and/or communication either written or oral or electronically or otherwise between Inspira and Premier Orthopedic Associates.

(Dkt. No. 1861-1, Notice to Take the Video Deposition).

F.     **Meet and Confer**

Pursuant to Rule 26(c)(1) and D. Mass. Local R. 7.1, on June 10, 2015, counsel for Inspira met and conferred by telephone with counsel for the Premier Defendants regarding Inspira's objections to the Notices. (*See* Stephen A. Grossman, Esq. Declaration ("Grossman Decl.") ¶ 5). During that call, Inspira advised that the Premier Defendants would not be entitled to discovery in the 35 cases in which Inspira is not a defendant. (*Id.* ¶ 6). Indeed, it is almost certain that cases involving only the Premier Defendants will be the bellwether cases. As such, the noticed depositions – or any discovery from Inspira – would not be necessary for the 35 cases involving only the Premier Defendants. (*Id.*).

With respect to the other 21 cases, the requested discovery from Inspira is case specific, as opposed to common issue, and untimely under MDL Order No. 9. (*Id.*). Therefore, the discovery requested from Inspira is not necessary *at this time*, although it may be warranted at a much later date, but *only if* the cases in which Inspira is a named defendant are ever selected for trial. (*Id.* ¶¶ 6-7). Although Inspira requested that the Premier Defendants withdraw their deposition notices, in an effort to be reasonable, Inspira suggested that the depositions be put on hold until after the bellwether protocol and selection is completed.

The Premier Defendants would not agree and asserted that they are entitled to discovery *now* from Inspira – even for the 35 cases in which Inspira is not a defendant – simply because

one of its employees, Michelle Cassidy, testified that she obtained NECC's contact information from Inspira – nothing more. (*Id.* ¶ 8). In short, the Premier Defendants refuse to wait and see whether discovery is even warranted against Inspira and believe they are entitled to discovery now. Accordingly, the parties are at an impasse, and Inspira has no choice but to move for entry of a protective order.

### III.     ARGUMENT

Inspira is entitled to a protective order because (i) the Premier Defendants should not be permitted to seek discovery in the 35 cases against the Premier Defendants in which Inspira is *not* a defendant because Inspira is not a party in those cases and has no information relevant the Premier Defendants' claims or defenses; (ii) the order staying discovery against Inspira is still in place and any discovery against Inspira requires further order of the Court; (iii) any depositions of Inspira relating to the 21 cases against the Premier Defendants in which Inspira is named as a defendant should not take place until after the bellwether trials because the discovery sought by the Premier Defendants contravenes this Court's MDL Orders staying case specific discovery; and (iv) the Premier Defendants' Rule 30(b)(6) deposition, should it ever go forward, must be modified to prohibit inquiry into certain matters and to limit the scope since it requests discovery of irrelevant and privileged information.

#### A.     Legal Standard

Pursuant to Federal Rule of Civil Procedure 26(c)(1), a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1); *Miller v. City of Boston*, 549 F. Supp. 2d 140, 142 n. 5 (D. Mass. 2008) (citing *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 789 (1st Cir. 1988)).

A party may "move for a protective order in the court where the action is pending." Fed. R. Civ. P. 26(c).  The party seeking a protective order bears the burden of showing that good cause exists for issuance of that order.  *Public Citizen*, 858 F.2d at 789.  The court has "broad discretion" to decide "when a protective order is appropriate and what degree of protection is required."  *Jagex Ltd. v. Impulse Software*, 273 F.R.D. 357, 358 (D. Mass. 2011) (citing *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 532 (1st Cir. 1993)).

### B. The Premier Defendants Are Not Entitled To Depose Inspira In The Thirty-Five Cases In Which Inspira Is Not a Named Party

Rule 26(b) allows parties to obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense.  Pursuant to Rule 26(c)(1)(A), this Court may deny a party's request for discovery.  The Premier Defendants are attempting to depose Inspira in connection with 35 cases in which Inspira is not a named party.  The Premier Defendants know that Inspira had nothing to do with Premier's ordering, storing, handling, or administration of NECC's MPA to Premier's patients who received an NECC MPA injection at one of Premier's facilities.  Premier was entirely responsible for ordering NECC's MPA and treating their patients with NECC's MPA on its own, independently of Inspira.

The *sole* basis for the Premier Defendants' requested discovery is that one of their employees, Michelle Cassidy, obtained NECC's contact information from Inspira.  There is no allegation that the Premier Defendants otherwise relied on Inspira for anything in connection with NECC or its MPA.  Subsequent to the parties' meet and confer, Inspira obtained Ms. Cassidy's deposition transcript.  What is absolutely and unequivocally clear is that Ms. Cassidy testified that Premier had its own policies, procedures, consultants, and management company for the vetting, selection, approval and administration of the use of NECC MPA at Premier's facilities.

Ms. Cassidy testified that she is the Administrator of Nursing for Premier Orthopaedic Associates Surgical Center and has held that position since September 2009. (Grossman Decl. ¶ 11, Michelle Renee Cassidy Deposition Transcript ("DT") at 35:21-36:6). Ms. Cassidy was involved from 2009 in setting up and opening Premier's Surgical Center for patient treatment, which occurred in January 2010. (DT at 38:22-39:9). This included developing Premier's drug formulary. (*Id.* at 53:11-19).

In 2009, Premier – completely independently from Inspira – had a process for selecting and approving drugs for use at Premier's new surgical center. Premier had a medical advisory committee, comprised of at least Ms. Cassidy, physicians, and independent management company Murphy Healthcare, that recommended certain drugs to Premier's managers, who then approved those drugs. (*Id.* at 40:12-15, 48:7-9, 52:17-54:4). It was Premier's physicians on the medical advisory committee who recommended and requested approval of NECC's MPA for use at Premier, as admittedly they had been using the product for years at Inspira and wanted to continue using the same product. (*Id.* at 40:12-41:18).

Although Ms. Cassidy vaguely states that at least one doctor, Dr. Mitros, and Inspira's pharmacy "recommended" NECC's MPA (*id.* at 54:20-55:8), when asked about the specific conversations about her interaction with Inspira's pharmacy, she admits unequivocally that (i) all the doctor did was inform her that the hospital was ordering MPA from NECC and she should call the pharmacy to get the contact information; and (ii) that she did not recall with whom she spoke at the pharmacy (although it was likely a pharmacy technician) and asked where Inspira ordered its preservative-free compounding medications – nothing more. (*Id.* at 233:13-234:10, 234:21-235:4).

The Premier Defendants cannot in good faith, based solely on Cassidy's deposition, claim that discovery from Inspira is relevant to any claim or defense in these 35 cases when Premier itself independently vetted and approved NECC and the use of NECC MPA at Premier's facility. Further, the Premier Defendants have no basis to argue Inspira's comparative fault or that Inspira was somehow a proximate cause of plaintiff's injury in the cases in which Inspira is not a defendant. The Premier Defendants, therefore, are not entitled to this discovery for these 35 cases under Rule 26(b), and this Court should bar the Premier Defendants from discovery from Inspira in connection with these matters. Fed. R. Civ. P. 26(c)(1)(A).

Moreover as discussed in Section III.C. and D. below, assuming *arguendo* that discovery is proper in these cases, a court order barring discovery from Inspira exists. The sole testimony on which the Premier Defendants rely is precisely the type of case specific discovery that is forbidden by this Court's MDL Orders. An example of case specific discovery is "statements made by Defendants to a particular plaintiff." (Dkt. No. 1425, MDL Order. No. 9 at 1, n.1). The discovery the Premier Defendants seek from Inspira is exactly this, statements made from one defendant to another particular defendant, *i.e.*, a Premier employee asking Inspira for NECC's contact information. Further, such case specific information relates only to an extremely small percentage of cases in the MDL. These are additional reasons that this Court should grant Inspira's motion for a protective order.

### C. The Premier Defendants Violated the Court's Order Staying Discovery Against Inspira

The January 6, 2014 Court order staying all discovery against Inspira is still in effect until "*further order of the Court*." ((Dkt. No. 740 (emphasis added)). The Premier Defendants failed to first seek an order from the Court allowing the depositions at issue. Instead, the Premier Defendants unilaterally served the notices and unilaterally chose the dates for the depositions, all

in violation of the order staying discovery against Inspira.  Indeed, the Premier Defendants should withdraw the notices – not file a postponement – until they seek an order from the Court permitting discovery against Inspira.

Instead, the Premier Defendants have unilaterally forged forward demanding the discovery now and now force Inspira – who participated in good faith in a successful mediation to avoid unnecessary expense and litigation – to defend the legal and practical reasons of why the Premier Defendants' requested depositions are not necessary or, at best, extremely premature in this MDL.  The Premier Defendants' attempt to circumvent this Court's order prohibiting discovery against Inspira should not be condoned.  Inspira, therefore, respectfully requests that the Premier Defendants withdraw the notices of depositions or the Court bar such discovery from Inspira.

### D.   The Premier Defendants Violated the Court's Orders for Obtaining Case Specific Discovery From Inspira

This Court may specify the terms, including time and place, for discovery to take place. Fed. R. Civ. P. 26(c)(1)(B).  The Court did precisely this in its Common Issue Discovery and Deposition Protocol MDL Orders.  It provided a schedule for common issue discovery and stayed case specific discovery at this time to "ensure a fair and just resolution of this matter without undue expense or delay." (Dkt. No. 1425, MDL Order. No. 9).  The Premier Defendants are now attempting to circumvent more Orders, which this Court should not permit.

There are 721 actions pending in this MDL.  Inspira is named as a defendant in only 3%, and Alessandrini and Abrams are named in less than 1%, of the total number of pending cases, in which the claims against Inspira likely will be dismissed with prejudice.  Even assuming *arguendo* that the Premier Defendants' position has any merit (*i.e.*, that discovery from Inspira relates to all 56 Premier cases regardless as to whether Inspira is a named defendant), the cases

concerning Inspira would still only be about 8% of the total number of cases pending in this MDL. These numbers, less than 1% (of Alessandrini and Abrams cases), 3% (of Inspira only cases) and 8% (of Premier and Inspira combined cases), reasonably and unequivocally show that the cases involving Inspira comprise a "small number" of the total matters in this MDL. Thus, any discovery relating to Inspira is case specific discovery, as opposed to common issue, and is stayed at this time. (MDL Order No. 9 at 3, n.5 (providing case specific discovery is "stayed pending issuance of a bellwether trial protocol and selection of the initial bellwether pool.")).

To allow otherwise would contravene this Court's Orders. Discovery depositions at this point in the MDL would be especially unfair here where Inspira has in good faith settled these matters, contributed a substantial sum to the NECC estate, and all claims will be dismissed against Inspira in a mere two weeks. In contrast, the Premier Defendants have chosen to not mediate and recently filed for an extension for submission of the bellwether trial protocol and bellwether discovery with trial occurring as late as February 2017. If any discovery against Inspira is warranted, it would not be necessary until after the bellwether process and selection is completed *and only if or until* a case involving Inspira is ever selected for a bellwether trial and subject to specific bellwether case discovery. Accordingly, a protective order is warranted barring the Premier Defendants' discovery until such time.

### E. If the Depositions Ever Occur, the Premier Defendants' Fed. R. Civ. P. 30(b)(6) Deposition Notice Should Be Modified

Rule 26(c)(1)(D) allows the court to "forbid[] inquiry into certain matters, or limit[] the scope of disclosure or discovery to certain matters." Further, Rule 26(b) allows parties to obtain discovery only regarding any non-privileged matter that is relevant to any party's claim or defense. A number of the categories contained in the Premier Defendants' Rule 30(b)(6) deposition notice, however, are overly broad and request discovery of irrelevant information or

-14-

information that is otherwise privileged and confidential. *McBride v. Medicalodges, Inc.*, 250 F.R.D. 581, 585 (D. Kan. 2008) (finding good cause to limit scope of certain Rule 30(b)(6) deposition notice topics to specific facility at issue and good cause to strike irrelevant topics relating to union where plaintiff testified that she does not know if she was ever in a union); *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, No. 10-CV-02139-MSK-NYW, 2015 WL 3635422, at *5 (D. Colo. June 11, 2015) (finding Rule 30(b)(6) notice "as drafted, with every topic designated to date, places an undue burden on Lenox to attempt to marshal all of its evidence into a single Rule 30(b)(6) deposition").

 First, No. 5 requests testimony on "Inspira's policies and procedures for compounding and/or manufacturing pharmaceuticals, ordering pharmaceuticals, ordering compounded pharmaceuticals from compounding pharmacies including but not limited to NECC, maintaining, organizing, labeling, ordering and storing pharmaceuticals including but not limited to compounded medications." This request is overbroad and seeks irrelevant information concerning policies, to the extent they exist, that have nothing to do with NECC or NECC MPA. To the extent such policies exist relating to NECC or NECC MPA, No. 5 is duplicative of No. 6 in which the Premier Defendants seek "Any and all documentation, correspondence, emails, electronically stored documents, letters, memorandum or other documents relating to or referencing the ordering of Methylprednisolone Acetate from NECC or its affiliated companies." Further, how Inspira orders prescription acetaminophen or any other prescription medications could never be relevant or admissible in any case involving tainted NECC MPA. Inspira respectfully requests that this request be stricken or at a minimum limited to the policies and procedures, if any, concerning NECC MPA.

Next, No 7. Seeks "Any and all documentation, correspondence, emails, electronically stored documents, letters, memorandum or other documents relating to or referencing the ordering of Methylprednisolone Acetate from any compounding pharmacy." Such information concerning other MPA compounded or manufactured by another entity that is not related to NECC, again assuming it exists, is also irrelevant and inadmissible. This request should be stricken in its entirety.

No. 8 requests "Any and all documents, correspondence, emails, electronically stored documents, letters memorandum, pictures, drawings, notes or other items produced to the PSC, whether formally or informally." First, this request seeks testimony or information that, assuming it exists, is already in possession of the *party that commenced this litigation* – the plaintiffs. The Premier Defendants can obtain such information and testimony from the plaintiffs themselves. Further, to the extent the Premier Defendants are seeking information that Inspira exchanged in the mediation, again assuming it exists, all such information is confidential pursuant to the mediation agreement between Inspira and the mediating parties, of which the Premier Defendants are not. Further, the mediation information sought by the Premier Defendants here would be subject to Rule 408 of the Federal Rules of Evidence and inadmissible at any trial. Accordingly, Inspira requests that the Court bar any discovery concerning this request.

No. 9 seeks "all documents, correspondence, emails, electronically stored documents, letters memorandum [*sic*], pictures, drawings, notes or other items" produced to a federal or state agency. Assuming *arguendo* that such information exists, testimony about what Inspira "produced to the department of justice, FBI, FDA or other investigative authority, whether formally or informally" is not in any way relevant or calculated to lead to the discovery of

-16-

relevant information about Inspira's relationship with NECC or its ordering process for NECC MPA.  Indeed, the Premier Defendants already requested that information in No. 6.  For these reasons, No. 9 also should be struck in its entirety.

No. 11 requests "all policies . . . addressing the administration of Epidural Steroids."  To the extent any policies exist, the only relevant policies on which the Premier Defendants would be entitled to explore are those relating to the administration of NECC's MPA.  No other drugs are at issue.  The Premier Defendants have already requested in No. 6 testimony concerning any policies surrounding the ordering of NECC MPA.   No. 11 also should be struck accordingly.

No. 12 requests "all policies . . . addressing the use of, ordering of, storage or, procurement of, or relating in any way to compounded medi[c]ation."  Inspira did not compound the NECC MPA at issue.  There is no dispute that NECC compounded the contaminated MPA at issue in the MDL cases.  As such, the only policies, that are relevant, if any, would be those concerning NECC MPA, which the Premier Defendants requested in Nos. 5 and 6.  Again, Inspira requests that the Court bar any discovery concerning this request.

No. 13 requests information and documents relating to any investigation Inspira performed into NECC.  There is no time period specified in the request.  To the extent No. 13 can be read to request information or records subject to attorney-client privilege or the work product doctrine, it should be modified.

Finally, No. 14 seeks testimony concerning any contacts or communication between Inspira and Premier Orthopedic Associates.  Again, this request is not limited to a specific time period.  Inspira and Premier have had for many years and continue to have an ongoing business relationship.  The only communications relevant to this litigation are those concerning NECC, its MPA, and the Premier Defendants' administration of NECC MPA to the Premier Defendants'

patients at Inspira's Hospitals.  The remaining communications between Inspira and the Premier Defendants are not relevant.  No. 14 should be modified accordingly.

## IV.     CONCLUSION

The Premier Defendants are not entitled to discovery in the 35 cases against only the Premier Defendants and in which Inspira is not a party.   There is a court order barring discovery from Inspira and a court order prohibiting specific case discovery from Inspira.  To the extent discovery from Inspira is ever necessary in the MDL, the scope of deposition inquiry should be modified to only that which is relevant and not privileged.  For these and the foregoing reasons, Inspira respectfully requests that the Court grant its Motion for a Protective Order.

                                   Respectfully submitted,

                                   MONTGOMERY, McCRACKEN, WALKER
                                      & RHOADS LLP

Dated:  June 22, 2015                s/*Stephen A. Grossman*
                                   Stephen A. Grossman
                                   Louis R. Moffa, Jr.
                                   Montgomery, McCracken, Walker & Rhoads, LLP
                                   LibertyView, Suite 600
                                   457 Haddonfield Road
                                   Cherry Hill, NJ 08002
                                   sgrossman@mmwr.com
                                   lmoffa@mmwr.com
                                   (856) 488-7700
                                   (856) 488-7720 (facsimile)

                                   *Counsel for Defendants*
                                   *Inspira Health Network, Inc.,*
                                   *Inspira Medical Centers, Inc.,*
                                   *Joseph Alessandrini and*
                                   *Paul Abrams*

**CERTIFICATE OF SERVICE**

    I, **STEPHEN A. GROSSMAN**, hereby certify that I caused a true and correct copy of Inspira Health Network, Inc. and Inspira Medical Centers, Inc.'s Motion For A Protective Order Pursuant To Federal Rule Of Civil Procedure 26(c), accompanying Memorandum, Declaration of Stephen A. Grossman, Esq., and proposed form of Order, to be filed electronically via the Court's electronic filing system.  Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system, and notice of these filings will be sent to these parties by operation of the Court's electronic filing system.

Dated:  June 22, 2015                          s/ *Stephen A. Grossman*
                                                        Stephen A. Grossman