UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | MDL No. 2419 Master Docket No.: 1:13-md-2419-RWZ |
| THIS DOCUMENT RELATES TO: All Actions | Honorable Rya W.  Zobel |

**PLAINTIFFS' STEERING COMMITTEE'S
MEMORANDUM REGARDING CHOICE OF LAW
FOR CASES ORIGINALLY FILED IN TENNESSEE OR NEW JERSEY**

**TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................... 4

II.  SUMMARY OF ARGUMENT ................................................................... 5

III. ARGUMENT................................................................................................ 6

    A.   **The Court Should Apply The Choice Of Law Rules Of The Original Forum State.**................................................................................ 6

        1.   **Federal Common Law Does Not Supply the Choice of Law Rule.** ........................................................................................ 7

        2.   **The Original Forum State Should Supply the Choice of Law Rule.**.............................................................................. 8

    B.   **Under Federal Common Law, Massachusetts, Tennessee And New Jersey Choice Of Law Rules, The Original Forums' Substantive Law Would Apply To Plaintiff's Claims, But Massachusetts' Law On Joint And Several Liability And Comparative Fault Would Govern** ......................................9

        C.   **Massachusetts Law Applies to the Joint and Several Liability Issue.**........................................**Error! Bookmark not defined.**

        i.   **Massachusetts Law Permits Holding Joint Tortfeasors Jointly And Severally Liable and Allows Comparative Fault To Be Asserted Only Against Parties** ................................................................................................ 12

        ii.   **New Jersey Implements a Modified Joint and Several Liability Scheme, Which Conflicts With Massachusetts' Law.** ............................................................................ 14

        iii.   **Tennessee Abolished Joint and Several Liability in Many Contexts and Retained Joint and Several Liability in Others.** ................................................................... 14

        1.   **Massachusetts Has The Most Significant Relationship Regarding The Issue Of Joint And Several Liability/Comparative Fault.** ................................. 16

        i.   **The Place Where The Injury Occurred**........................................... 18

        ii.   **The Place Where The Conduct Causing the Injury Occurred.** ............................................................................... 18

**iii.** **The Domicile, residence, nationality, place of incorporation and place of business of the parties.** ........................ 19

**iv.** **The place where the relationship if any between the parties is centered.**................................................................. 20

**v.** **The Policies Of Tennessee, New Jersey And Massachusetts With Respect To The Comparative Fault and Joint And Several Liability Regimes** .............................. 21

**IV.** **CONCLUSION** ............................................................................. 23

# I.    INTRODUCTION

This case arises from a national health tragedy caused by tainted compounded pharmaceuticals made by New England Compounding Pharmacy, Inc. d/b/a the New England Compounding Center ("NECC").  According to the Centers for Disease Control (the "CDC"), at least 751 people who received NECC products were reported to have confirmed meningitis or other infections, and at least 64 people died.[1]  Following the outbreak, NECC filed a Chapter 11 bankruptcy petition.

On October 16, 2012, certain plaintiffs filed a motion with the Joint Panel on Multidistrict Litigation (the "JPML") to consolidate all federal cases for pretrial purposes. On February 12, 2013, the JPML granted that motion and consolidated all related federal actions across the country in the United States District Court for the District of Massachusetts.[2]

The defendants originally named in this MDL fall principally into three categories: (1) NECC and its employees, owners, directors, managers, and affiliated companies ("Affiliated Defendants"); (2) vendors who provided services to NECC ("National Defendants"); and (3) clinics and hospitals (and their staff) who sold and distributed tainted NECC steroids to patients and injected those patients with the contaminated product ("Clinic Related Defendants").

Although it is undisputed that methylprednisolone acetate ("MPA") manufactured by NECC was the source of the contamination, the parties disagree as to who is legally responsible for the harm caused by those defective drugs.  Since NECC's bankruptcy petition, settlements have been achieved with the Affiliated Defendants, the National

---

[1] The Court has already entered a detailed account on the factual background of this case, and as a result the PSC will limit its account of the facts to those providing context for the requested relief.  *See e.g.*, *In re New England Compounding Pharm., Inc. Prods. Liability Litig.*, 496 B.R. 256, 260-3 (D. Mass. 2013).

[2] MDL 2419 Dkt. No. 118.

Defendants and three Clinic Related Defendants.  Accordingly, all claims now pending in this MDL are against the Clinic Related Defendants who selected NECC as their drug supplier of choice.  By selecting NECC, the Clinic Related Defendants imported NECC products into their respective states from Massachusetts, sold and distributed NECC products to their patients, and failed to protect their patients from well-known dangers associated with compounded medications.

The Clinic Related Defendants now seek to attribute fault at trial to the Affiliated Defendants, the National Defendants, and state and federal regulatory agencies (collectively the "Comparative Fault Parties").  The Clinic Related Defendants are aggressively seeking discovery from the Comparative Fault Parties in order to bolster their comparative fault defenses purportedly available under state law in Tennessee, New Jersey and certain other states.[3]

The Clinic Related Defendants filed several motions requesting discovery from the Comparative Fault Parties.  At the May 24, 2015 status conference, the Court invited briefing on the issue of which state law would apply to the issues raised by those pending discovery motions.  On June 5, 2015, the Court formalized its request and directed the PSC to submit a brief on five specific issues, each addressed below.[4]

## II.    SUMMARY OF ARGUMENT

The PSC respectfully suggests that Massachusetts law should govern the issues of whether joint and several liability and comparative fault applies to claims pending against the Tennessee and New Jersey Clinic Related Defendants.[5]  When determining which substantive law should apply to a particular issue, this Court should apply the choice of law

---

[3] *See* discussion *infra* at Section III.  C(ii)-(iii) discussing the availability of these defenses under Tennessee and New Jersey law.

[4] Dkt. No. 1938.

[5] The PSC largely believes this should moot many of the discovery motions now pending before this Court as that discovery becomes irrelevant or unduly burdensome.

rules from the original forum state.  Under the choice of law rules, Massachusetts has the most significant relationship to the issues of whether to apply joint and several liability and/or comparative fault.

Here, the contaminated drugs were made in and marketed from Massachusetts.  The Clinic Related Defendants now attempt to attribute fault to and gain substantial discovery from numerous parties located in Massachusetts.  Those parties agreed to participate in court approved settlements in the context of bankruptcy proceedings pending in Massachusetts.  Therefore, Massachusetts has the most substantial relationship to the issue of whether joint and several liability applies and whether an onslaught of so-called "comparative fault discovery" is necessary.

Applying Massachusetts law of joint and several liability is called for by the choice of law rules of Tennessee and New Jersey as discussed below, and it is the only way to achieve a uniform and just outcome for the innocent victims of this national tragedy.  The injured tort victims played no role in selecting NECC's products for import into their states and for injection into their bodies.  That choice was made by the Clinic Related Defendants.  Those defendants made an affirmative choice to import, sell and distribute injectable medicine made by a Massachusetts compounding pharmacy, and those same defendants now demand substantial and burdensome discovery from parties found in Massachusetts.  Therefore, as discussed in more detail below, following Massachusetts law of joint and several liability is both legally correct and substantively just.

### III.   ARGUMENT

**A.   The Court Should Apply The Choice Of Law Rules Of The Original Forum State.**

Courts are split as to whether a federal court exercising "related to" jurisdiction under 28 U.S.C. § 1334 is required to apply the choice of law rules of the state in which it

sits, federal choice of law rules, or choice of law rules of the forum state from which a case originated.[6]   The First Circuit does not appear to have addressed the issue squarely and the PSC cannot find a single case involving the exact issue presented: namely what choice of law rules apply to cases upon which jurisdiction is based on 28 U.S.C. § 1334 that were transferred from their original federal forum pursuant to 28 U.S.C. § 1407.  For the reasons stated below, the PSC maintains that the choice of law rules of the original forum should apply.

However, whichever choice of law rules are applied, the practical impact is the same:  the four potential choices (i.e. Massachusetts, Tennessee, New Jersey, or federal common law choice of law rules) ultimately require, to varying degrees, the application of the Restatement (Second) of Conflict of Laws (1971) "significant relationship" test.

## 1.    Federal Common Law Does Not Supply The Choice Of Law Rule.

Based upon pertinent precedent, it appears that federal common law should not supply the choice of law rule.  In holding that federal common law choice of law rules apply to courts sitting in bankruptcy, the Ninth Circuit held that in "federal question cases with exclusive jurisdiction in federal court, such as bankruptcy, the court should apply federal, not forum state, choice of law rules."[7]   The court reasoned that the need to avoid forum shopping between state and federal courts, which counsels in favor of applying state law, is not implicated in matters where federal courts have exclusive jurisdiction.[8]   Further, some courts hold that when a dispute involving federal substantive law arises in bankruptcy

---

[6] *In re Coudert Bros. LLP*, 673 F.3d 180, 188 (2d Cir. 2012) (holding that original forum state choice of law rules appy) In *re Gaston & Snow*, 243 F.3d 599, 605 (2d Cir. 2001) (holding that the choice of law rules of the state in which the court sits applies); *In re Lindsay*, 59 F.3d 942, 948 (9th Cir.1995) (holding federal common law applies).

[7] *In re Gaston*, 243 F.3d at 605.; *accord In re Vortex Fishing Systems, Inc.*, 277 F.3d 1057, 1069 (9th Cir. 2002) ("In a bankruptcy case, the court must apply federal choice of law rules."); *see also Wallace Lincoln-Mercury Co., Inc. v. Gentry*, 469 F.2d 396, 400 at n.1 (5th Cir. 1972) ("In this federal bankruptcy case the District Court is not obliged to use the choice-of-law methodology of the forum state".)

[8] *In re Gaston*, 243 F.3d at 605.

cases, federal common law principals will govern given the overarching need for federal consistency in addressing federal substantive law issues.[9]

None of the policy issues discussed by the Ninth Circuit are implicated in the present litigation.  Federal courts are not the "exclusive" venue for litigating personal injury cases "related to" a bankruptcy proceeding.[10]  Furthermore, there are no federal law claims implicated in any case involving a plaintiff from Tennessee or New Jersey.[11]  Therefore, the policy considerations underlying the handful of decisions applying federal common law choice of law rules appear non-applicable to the particular issues involved in this litigation.

## 2.    The Original Forum State Should Supply The Choice Of Law Rule.

The most helpful analysis occurring in a similar context is found in an opinion from the Sixth Circuit.  In *Sutherland v. DCC Litig. Facility, Inc.* (*In re Dow Corning Corp.*), 778 F.3d 545 (6th Cir. Mich. 2015), the Sixth Circuit addressed the applicability of choice of law principles in a case transferred under 28 U.S.C. § 157(b)(5).[12]  In holding that the original forum's choice of law principles should apply, the Sixth Circuit, relying on two United States Supreme Court cases, determined that "the principles of practicality and fairness that animate the rule of *Van Dusen* and *Ferens* are equally applicable to personal injury and wrongful death cases originally brought in diversity but transferred via § 157(b)(5)."[13]  The Sixth Circuit further noted in its decision that, if the case had been transferred under 28 U.S.C. § 1407, "the district court would be bound to apply the [original forum's] choice of law rules."[14]

---

[9] *See e.g.*, In re August, 448 B.R. 331, 348 (Bankr. E.D. Pa. 2011).
[10] 28 U.S.C. § 1334(b) (grants "the district courts . . . original but not exclusive jurisdiction of all civil proceedings… related to cases under title 11.")
[11] *See generally* Second Amended Master Complaint, Dkt. No. 1719.
[12] *Sutherland v. DCC Litig. Facility, Inc. (In re Dow Corning Corp.)*, 778 F.3d 545, 549 (6th Cir. Mich. 2015).
[13] *Id*.
[14] *Id*. citing *Ferens v. John Deere Co.*, 494 U.S. 516, 523, 110 S. Ct. 1274, 108 L. Ed. 2d 443 (1990) ("[A] transferee forum [must] apply the law of the transferor court, regardless of who initiates the transfer."); *Van Dusen v. Barrack*, 376 U.S. 612, 639, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964) ("[W]here the defendants seek transfer, the

Although the *Ferens* and *Van Dusen* decisions on which the Sixth Circuit relies arise in the diversity context, the *Sutherland* case, like the cases at bar, involved federal courts exercising "related to" bankruptcy jurisdiction.[15]   Therefore, the policy reasons laid out in the Sixth Circuit opinion appear equally applicable to the present litigation.  The PSC urges the Court to follow the Sixth Circuit's persuasive authority and apply the choice of law rules of the original forum.[16]

The practical implication for the choice of law analysis is that the "significant relationship" analysis outlined in the Restatement (Second) Conflict of Laws (1971) will apply to the Tennessee and New Jersey cases.  For the reasons articulated below, the application of the significant relationship analysis results in applying Tennessee and New Jersey law to plaintiffs' substantive claims in those states, but applying Massachusetts law on the issues of joint and several liability and comparative fault.

**B.**   **Under Federal Common Law, Massachusetts, Tennessee And New Jersey Choice Of Law Rules, The Original Forums' Substantive Law Would Apply To Plaintiff's Claims, But Massachusetts' Law On Joint And Several Liability And Comparative Fault Would Govern Those Issues.**

Federal common law,[17] Massachusetts[18] and Tennessee[19] all follow the "significant

---

transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue. A change of venue under § 1404 (a) generally should be, with respect to state law, but a change of courtrooms.").

[15] *Sutherland*, 778 F.3d at 549.

[16] *Id*. at 549-550.

[17] *See e.g.*, *Aaron Ferer & Sons, Ltd v. Chase Manhattan Bank*, 731 F.2d 112, 121 (2d Cir. 1984) (holding that federal common law utilizes the significant relationship test of the Restatement, (Second) Conflict of Law));  *In re McCorhill Pub., Inc.*, 86 B.R. 783 (Bankr. S.D.N.Y. 1988) (same); *see also Ropes*, 330 B.R. at 9 (holding that "both federal common law and Massachusetts law follow the 'multiple factor, interest analysis' or most significant relationship' analysis exemplied by the Restatemetn (Second) of Conflict of Laws (1971)").

[18] *Bushkin Assoc., Inc. v. Raytheon Co.*, 393 Mass. 622, 632-33, 473 N.E.2d 662 (1985) (emphasizing the "choice-influencing factors listed in § 6(2) of the Restatement (Second) of Conflict of Laws" in conducting choice of law analysis); *Nile v. Nile*, 432 Mass. 390, 401, 734 N.E.2d 1153 (2000) (in resolving breach of contract issue, "look [ing] to factors such as those enumerated in Restatement (Second) of Conflicts of Laws"); *Lupoli v. N. Utils. Natural Gas, Inc.*, 2004 Mass. Super. LEXIS 171, *4 (Mass. Super. Ct. 2004) (same and applying significant relationship test in tort actions); *see also*  Ropes & Gray, LLP v. Jalbert (In re Engage Inc.), 330 B.R. 5, 9-10 (D. Mass. 2005) (discussing choice of law analysis under Massachusetts law).

[19] *Hataway v. McKinley*, 830 S.W.2d 53, 59-60 (Tenn. 1992) (abandoning the *lex loci* choice of law analysis and adopting the significant relationship approach of the Restatement (Second) Of Conflict of Laws.

relationship" choice of law analysis exemplified by the Restatement (Second) of Conflict of Laws (1971). Some courts in New Jersey label its choice of law standard as a "governmental interest" test,[20] however, it is indisputable that "to resolve disputes arising out of tort, New Jersey utilizes the 'most significant relationship' test set out in the Restatement (Second) of Conflict of Laws."[21]

As a threshold issue, both states require a determination that a conflict of laws actually exists.[22] If a conflict of laws between the various interested states is established, then courts in Tennessee and New Jersey examine the factors enumerated under Restatement (Second) of Conflict of Laws (1971) §§6, 145 and 146 to determine which state has a more significant relationship to a particular issue.[23]

The relevant sections of the Restatement provides as follows:

**§ 145. The General Principle.**

(1) The rights and liabilities of the parties <u>with respect to an issue</u> in tort are determined by the local law of the state, which <u>with respect to that issue</u>, has the most significant relationship to the occurrence and the parties under the principles stated in § 6. 3
(2) Contacts to be taken into account in applying the principles of § 6 to determine the law <u>applicable to an issue</u> include:
    (a) the place where the injury occurred,
    (b) the place where the conduct causing the injury occurred,
    (c) the domicile, residence, nationality, place of incorporation and place of business of the parties,
    (d) the place where the relationship, if any, between the parties is centered.[24]

---

[20] *P.V. ex rel. T.V. v. Camp Jaycee*, 197 N.J. 132, 142-43, 962 A.2d 453, 459-60 (2008)(Holding that although New Jersey courts continue to denominate its choice of law standard as a kind of governmental interest test New Jersey courts apply the Second Restatement's most significant relationship standard in tort cases.)

[21] *Id.; Buccilli v. Nat'l R.R. Passenger Corp.,* No. Civ. 08-4214 (RBK/KMW), 2010 WL 624113, 2 (D.N.J. Feb. 17, 2010) ("[T]o resolve disputes arising out of tort, New Jersey utilizes the 'most significant relationship' test set out in the Restatement (Second) of Conflict of Laws.").

[22] *Insituform Technologies, Inc. v. Per Aarsleff A/S*, 534 F. Supp. 2d 808, 812 (W.D. Tenn. 2008)("[B]efore proceeding with the choice-of-law analysis, The Court must first determine if the various interested jurisdictions are in conflict with Tennessee law."); *P.V. ex rel. T.V.*, 197 N.J. at 142-43(Holding that under New Jersey's choice of law analysis, the first step is to determine whether an actual conflict exists.)

[23] *Hataway,* 830 S.W.2d at 59; *P.V. ex rel. T.V.*, 197 N.J. at 155.

[24] *Id.* quoting the Restatement (Second) of Conflict of Laws (1971)(emphasis added).

> Those contacts are to be evaluated according to their relative importance <u>with respect to the particular issue in dispute</u>.[25]

With regard to personal injury actions, the Restatement provides the following additional guidance:

### § 146. Personal Injuries.

> In an action for personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, <u>unless, with respect to the particular issue, some other state has a more significant relationship</u> under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.[26]

As explained in greater detail below, applying these standards leads to the conclusion that, although the original forum's law (i.e. Tennessee and/or New Jersey) governs the plaintiffs' claims generally, Massachusetts law should govern the issues of joint and several liability and comparative fault.[27]

### C. Under The Significant Relationship Test, Massachusetts Law Should Apply To The Issues Of Joint And Several Liability And Comparative Fault

For this Analysis, the PSC assumes, based on the relationship between and among plaintiffs, the Tennessee Clinic Defendants, the Saint Thomas Entities and the New Jersey Clinic Defendants that Tennessee law governs Tennessee plaintiffs' claims (except claims made under Mass. Gen. Law § 93A) and New Jersey law governs New Jersey plaintiffs' claims (except claims made under Mass. Gen, Law § 93A).[28]  However, the determination that Tennessee and New Jersey law supplies the basic elements of plaintiffs' specific claims does not answer the question of which law should govern the "particular issues" of joint and several liability and comparative fault.

Under the significant relationship test, the Court is required to do an independent

---

[25] *Id*. quoting the Restatement (Second) of Conflict of Laws (1971)(emphasis added).
[26] *Id*. quoting the Restatement (Second) of Conflict of Laws (1971)(emphasis added)
[27] Obviously, if Massachusetts law applies to these issues, then there is no practical need for the Clinic Related Defendants to obtain significant additional discovery from the Comparative Fault Parties.
[28] *See* Second Amended Master Complaint, Dkt. No. 1719 at ¶¶ 226-271; 301-325; 334-343.

analysis on which law applies to a given issue. "The Restatement allows the court to apply the laws of more than one state to a case, because choice of law is determined with respect to each issue, not to the case as a whole."[29] "Each issue is to receive separate consideration if it is one which would be resolved differently under the local law rule of two or more of the potentially interested states."[30] Such is the case with regard to the issues of joint and several liability and comparative fault. Multiple states have an interest in whether the tortfeasors can be held jointly and severally liable and whether comparative fault should apply

> **i.    Massachusetts Law Permits Holding Joint Tortfeasors Jointly And Severally Liable and Allows Comparative Fault To Be Asserted Only Against Named Parties.**

Massachusetts retains the traditional principle of joint and several liability in tort cases, meaning that a plaintiff harmed by joint tortfeasors may sue any one of them and collect full damages.[31] Those common-law principles of joint and several liability were not affected by the adoption of comparative negligence in Massachusetts.[32]

Massachusetts' statute pertaining to the right of contribution among joint tortfeasors, Mass. Gen. Laws, c. 231B, §§ 1-4, must also be taken into account, because it mandates that a right of contribution "shall exist only in favor of a joint tortfeasor…who has paid more than his pro rata share of the common liability."[33] According to the Massachusetts Supreme Judicial Court, "[t]his section creates a separate cause of action for contribution, enabling a party to seek contribution from other alleged joint tortfeasors who were not joined as defendants in the original action."[34] Alternatively, where all joint tortfeasors are joined in a

---

[29] *Inventory Locator Serv., LLC v. Partsbase, Inc.*, 2005 U.S. Dist. LEXIS 32680, *13 (W.D. Tenn. Sept. 2, 2005)
[30] Restatement (Second) of theLaw of Conflicts § 145, comment d.
[31] *Kabatchnik v. Hanover-Elm Building Corp.*, 331 Mass. 366, 119 N.E.2d 169, 172 (Mass. 1954); *Mitchell v. Hastings & Koch Enterprises, Inc.*, 38 Mass. App. Ct. 271, 647 N.E.2d 78, 84 (Mass. App. Ct. 1995)).
[32] *See Zeller v. Cantu*, 395 Mass. 76, 478 N.E.2d 930, 931-33 (Mass. 1985).
[33] Mass. Gen. Laws. ch. 231B, § 1.
[34] *Hopper Feeds, Inc. v. Cincinnati Milacron, Inc.*, 411 Mass. 273, 581 N.E.2d 1023, 1025-26 (Mass. 1991) (citing

single action, G.L. c. 231B, § 3(b) provides: "[w]here a judgment has been entered in an action against two or more tortfeasors for the same injury, contribution may be enforced in that action by judgment in favor of one against other judgment defendants by motion upon notice to all parties to the action."   Under that provision, a joint tortfeasor joined in the action may assert its contribution claims by motion against parties who were joined as defendants in the original action and against whom judgment has already been entered.[35]

Moreover, the Massachusetts Supreme Judicial Court has held that Massachusetts' comparative fault statute requires attribution of fault for the plaintiff's injuries only among the "active participants at trial, i.e., 'persons against whom recovery is sought' or 'defendants' . . . . The statute does not direct the jury to apportion negligence among all tortfeasors who may have caused the injury, only those against whom recovery 'is' sought."[36]

In summary, Massachusetts law permits joint and several liability among joint tortfeasors, creates rights of contribution for joint tortfeasors whether they are joined in the original action or not, and permits comparative fault to be assessed only against parties who are present as defendants at trial.   Therefore, if Massachusetts law of joint and several liability applies, the exhaustive comparative fault discovery demanded by the Clinic Related Defendants is unnecessary.   As discussed below, Tennessee and New Jersey law on the issue of joint and several liability conflicts with Massachusetts law in several respects.

---

Hennessey, "Torts: Indemnity and Contribution," 47 Mass. L. Q. 421, 431 (1962)).

[35] Hopper Feeds, 581 N.E.2d at 1026 (citation omitted).

[36] *Shantigar Found.*, 804 N.E.2d at 329-30 (quoting Mass. Gen. Laws c. 231, § 85)*; see also Allen v. Chance Mfg. Co.*, 873 F.2d 465, 467 (1st Cir. 1989) (under § 85, "a jury must apportion negligence between only the plaintiff and the defendant; the fault of non-parties . . . is not to be taken into account" (citing *Correia v. Firestone Tire & Rubber Co.*, 388 Mass. 342, 446 N.E.2d 1033, 1035-38 (Mass. 1983)).

>    ii.    **New Jersey Implements A Modified Joint And Several Liability Scheme, Which Conflicts With Massachusetts' Law.**

New Jersey limited the applicability of joint and several liability by statute. Under the New Jersey Comparative Negligence Act ("Act"), where there are multiple tortfeasors, a defendant is jointly and severally liable if he is found to be sixty percent or more at fault.[37] However, if a defendant is found to be less than sixty percent at fault, the plaintiff may recover only that percentage from the defendant.[38] Therefore, under New Jersey law, a jury must determine "the extent, in the form of a percentage, of each party's [and non-party's] negligence or fault."[39] Moreover, potential tortfeasors that are statutorily immune from suit cannot be assigned fault.[40]

New Jersey's partial abolishment of joint and several liability and the apportionment of fault to non-parties clearly conflicts with Massachusetts law.

>    iii.    **Tennessee Abolished Joint And Several Liability In Many Contexts And Retained Joint And Several Liability In Others.**

Tennessee's system of comparative fault in negligence cases is a creature of common law.  Under Tennessee's system, comparative fault is an affirmative defense in which an alleged tortfeasor asserts "that a portion of the fault for the plaintiff's damages should be allocated to another tortfeasor."[41]  Here, under Tennessee law, a jury can assign fault to parties, non-parties, insolvent parties, and immune parties, and each defendant at trial is only liable for that party's allocated proportional share of fault.  Generally speaking, parties are not jointly liable for damages sustained by the plaintiff.[42]  Such parties are only

---

[37] *N.J.S.A.* 2A:15-5.3a.

[38] *Id.* at 2A:15-5.3c.

[39] *LaBracio Family P'ship v. 1239 Roosevelt Ave., Inc.*, 340 N.J.Super. 155, 164, 773 A.2d 1209, 1214 (App. Div. 2001), *quoting N.J.S.A.* 2A:15-5.2.

[40] *See Ramos v. Browning Ferris Indus. Of S. Jersey, Inc.*, 103 N.J. 177, 185, 510 A.2d 1152, 1156 (1986) (holding that in a worker's compensation action the jury could not assign fault to the employer because he was immune from suit under the New Jersey Worker's Compensation Act).

[41] *Banks v. Elks Club Pride of Tenn.* 1102, 301 S.W.3d 214, 220 (Tenn. 2010).

[42] *Carroll v. Whitney*, 29 S.W.3d 14, 16-17 (Tenn. 2000).

severally liable for their allocated share of the fault.[43]   A jury can assign fault to a non-party, a defunct party or, in some instances, an immune party - regardless of the harsh effect that such would have on a completely innocent or faultless plaintiff.

It is important to note, however, that Tennessee retains joint and several liability in certain contexts.[44]   For example, the Tennessee Products Liability Act (the "TPLA")[45] authorizes claims for strict tort liability against sellers or distributors of defective or unreasonably dangerous products when a product manufacturer is judicially declared insolvent.   Under the TPLA, if the Tennessee Plaintiffs establish that the Tennessee Clinic Defendants are sellers or distributors of a defective product, then those defendants are jointly and severally liable for all harm caused by the product.[46]   However, if the Tennessee Plaintiffs prevail on their negligence and/or healthcare liability claims only, but do not prevail on their product liability claims, then Tennessee's law of comparative fault would apply and joint and several liability would not.

It is clear that the laws of Tennessee and New Jersey both conflict with Massachusetts law with respect to joint and several liability.   Under Massachusetts law, joint and several liability would apply to all claims against all of the remaining defendants, while under Tennessee law, joint and several liability applies to some, but not all, of the plaintiffs' claims, and under New Jersey law, joint and several liability may apply to some, but not all of the remaining defendants.

Although it may seem unusual that the substantive law of one state could apply to plaintiffs' claims generally and another state's law apply to the issues of joint and several

---

[43] *Id.*
[44] *Owens v. Truckstops of Am.*, 915 S.W.2d 420 (Tenn. 1996) (discussing joint and several liability after Tennessee Supreme Court's adoption of modified comparative fault regime)
[45] *Id.*
[46] *See* Tenn. Code Ann. §§ 29-28-102(7) (defining "sellers" for purposes of the TPLA) and §106 (describing seller's liability for the sale of a product); *see also id.* (holding that joint and several liability continues to apply for sellers under the TPLA).

liability and comparative fault, courts regularly apply different state law to those "issues."[47] In order to determine which law should apply in the current circumstance, this Court should determine which state has the "most significant relationship" regarding the issues of joint and several liability and/or comparative fault.

### D. Massachusetts Has The Most Significant Relationship Regarding The Issue Of Joint And Several Liability/Comparative Fault.

Under Tennessee and New Jersey's choice of law rules, the state with the "most significant relationship" regarding an issue in tort shall govern that particular issue.[48] Under the Restatement's "most significant relationship" approach, there is a presumption in favor of the law of the state where the injury occurred, but while this is the default rule, "the Restatement approach allows a court to apply the law of a state that legitimately has a stronger interest in the controversy."[49] In determining which state's law to apply, a court should consider the following contacts: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, [and] (d) the place where the relationship, if any, between the parties is centered."[50]

"[T]he court is to evaluate the[se] contacts 'according to their relative importance with respect to the particular issue,' and [] this is to be accomplished by carefully examining the policies behind the laws of the interested states and the interests of those states in the

---

[47] *See e.g.*, *Sulak v. Am. Eurocopter Corp.*, 901 F. Supp. 2d 834 (N.D. Tex. 2012); *In re Air Crash Disaster at Washington*, 559 F. Supp. 333, 352 (D.D.C. 1983); *Munguia v. Bekins Van Lines, LLC*, 2012 U.S. Dist. LEXIS 151596 (E.D. Cal. Oct. 19, 2012); *Iskowitz v. Cessna Aircraft Co.*, 2010 U.S. Dist. LEXIS 88791 (D. Colo. Aug. 5, 2010); *Erny v. Estate of Merola*, 171 N.J. 86, 98-99 (N.J. 2002) ("But in a choice-of-law determination involving parties from other states, application of New Jersey law on joint and several liability does not follow automatically from the determination that our comparative negligence law applies. New Jersey's scheme of joint and several liability can operate independently of our comparative negligence law, and vice versa.");

[48] *MacDonald v. General Motors Corp.*, 110 F.3d 337, 342 (6th Cir. 1997).

[49] *Hataway*, 830 S.W.2d at 59.

[50] *Messer Griesheim Indus., Inc. v. Cryotech of Kingsport, Inc.*, 131 S.W.3d 457, 474 (Tenn. Ct. App. 2003)(quoting REST 2d CONFL § 145

claim."[51]

In the present litigation, the Tennessee and New Jersey plaintiffs asserted claims against the Affiliated Defendants, National Defendants, and the Clinic Defendants for harm caused by a product compounded by a Massachusetts pharmacy pursuant to Massachusetts law.[52]  The Tennessee and New Jersey Clinic Defendants chose to do business with that Massachusetts compounding pharmacy, even though they had the option of purchasing FDA approved medications from a pharmaceutical distributor in their respective states.[53] Furthermore, the Tennessee Clinic Defendants assert, as an affirmative defense, the comparative fault of 27 other parties, the majority of whom are located in Massachusetts.[54] Those parties are located in Massachusetts (NECC, Barry Cadden, Ameridose, GDC Property Management, Medical Sales Management, Glenn Chin, the Conigliaro family, Massachusetts Board of Pharmacy, Unifirst, etc.), Washington D.C. (FDA), Connecticut (Liberty), and a host of other states.[55]  Similarly, the Premier Entities assert, as an

---

[51] *MacDonald*, 110 F.3d at 343 (quoting REST 2d CONFL § 145(2).

[52] *See generally*, Second Amended Master Complaint, Dkt. No. 1792.

[53] Deposition of Jeffrey Ebel, P. 11-12; 30-31, relevant portions of which are attached hereto as Exhibit A.

[54] The Saint Thomas Entities have asserted comparative fault against the following: NECC (Dkt. No. 1464, p. 56); Ameridose (Dkt. No. 1464, p. 61) Alaunus Pharmaceutical, LLC (Dkt. 1464, p. 66); B. Cadden (Dkt. 1464, p. 69); L. Cadden (Dkt. 1464, p. 74); D. Conigliaro (Dkt. 1464, p. 82); C. Conigliaro (Dkt. 1464, p. 85); Glenn Chin (Dkt. 1464, p. 89); GDC Properties Mangagement (Dkt. 1464, p. 93); Medical Sales Management (Dkt. 1464, p. 94); Medical Sales Management, SW (Dkt. 1464, p. 96); John Notarianni (Dkt. 1464, p. 99); Mario Giamei (Dkt. 1464, p. 100) US FDA (Dkt. 1464, p. 101); MA Bd. of Pharm. (Dkt. 1464, p. 108); TN Bd. Of Pharm. (Dkt. 1464, p. 114); TN. Dept. of Health (Dkt. 1464, p. 116); Liberty Industries (Dkt. 1464, p. 117); UniFirst (Dkt. 1464, p. 117); ARL Biopharma (Dkt. 1464, p. 118).  The Tennessee Clinic Defendants have asserted comparative fault against the following: NECC (Dkt. 1455, p. 69); B. Cadden (Dkt. 1455, p. 69); L. Cadden (Dkt. 1455, p. 69); D. Conigliaro (Dkt. 1455, p. 69); C. Conigliaro (Dkt. 1455, p. 69); Glenn Chin (Dkt. 1455, p. 69); Joseph Connolly (Dkt. 1455, p. 69); GDC Properties Management (Dkt. 1455, p. 78); US FDA (Dkt. 1455, p. 79); MA Bd. Of Pharm (Dkt. 1455, p. 90); TN Bd. Of Pharm (Dkt. 1455, p. 100); TN Dept. of Health (Dkt. 1455, p. 101); Medical Sales Management (Dkt. 1455, p. 102); Medical Sales Management SW (Dkt. 1455, p. 102); John Notarianni (Dkt. 1455, p. 102); Mario Giamei (Dkt. 1455, p. 102); ARL BioPharma (Dkt. 1455, p. 104); UniFirst (Dkt. 1455, p. 106); Liberty Industries (Dkt. 1455, p. 107); Victory Mechanical Services and Victory Heating & Air Conditioning (Dkt. 1455, p. 107); Scientific Air Analysis (Dkt. 1455, p. 108); Pharmacy Support (Dkt. 1455, p. 109); Professional Compounding Centers of America (Dkt. 1455, p. 110); Medisca (Dkt. 1455, p. 111).

[55] For example, comparative fault has been asserted against Medisca who is located in New York.  Given that these other states' interest are not likely to be the "most significant relationship" to the issue of comparative fault, the analysis will strictly look into whether Massachusetts or Tennessee law should apply.

affirmative defense, the comparative fault of any settling defendant,[56] the vast majority of whom are located in Massachusetts. The unifying characteristic for the overwhelming majority of the Comparative Fault Parties is that they all took action or failed to take action in the state of Massachusetts.

With those facts in mind, we turn to an analysis of the individual factors articulated in the Restatement: (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; (d) the place where the relationship, if any, between the parties is centered.

### i.       The Place Where The Injury Occurred.

Tennessee and New Jersey plaintiffs suffered injuries in their respective states, and the PSC admits this factor favors application of Tennessee and New Jersey law.  However, other courts facing similar situations under the Restatement have held that, in situations where the place of injury is "fortuitous," the place of the injury takes on less importance.[57] Here, the fact that plaintiffs were injured in Tennessee and New Jersey was "fortuitous" in the sense that NECC shipped its tainted pharmaceuticals and subsequently injured victims in over 20 states.[58]

### ii.      The Place Where The Conduct Causing The Injury Occurred.

The conduct causing the New Jersey and Tennessee plaintiffs' injuries occurred in Massachusetts, New Jersey and Tennessee.  NECC manufactured, marketed, and sold the tainted MPA from its location in Framingham, Massachusetts.  The Tennessee Clinic Defendants and the New Jersey Clinic Defendants' comparative fault defenses against the

---

[56] *See* Dkt. No. 1541 at 14.
[57] *See e.g.*, *Fanning v. Dianon Systems, Inc.*, 2006 U.S. Dist. LEXIS 61498 (D. Colo. August 16, 2006) (holding that place of conduct causing harm is more of a factor than place of residence when court addressed negligent conduct based on a misdiagnosed tissue sample at a laboratory).
[58] *See id.* (holding that place of injury was "fortuitous" because plaintiff's improper testing could have affected any plaintiff in any state subject to the negligent testing).

18

Comparative Fault Parties largely allege misconduct in the state of Massachusetts. Plaintiffs' claims against the Tennessee Clinic Defendants and the New Jersey Clinic Defendants largely allege that those defendants were negligent in selecting NECC as a supplier of injectable steroids and/or in illegally selling and distributing a tainted product in their states.

With regards to the Tennessee and New Jersey Clinic Defendants' comparative fault defenses, however, those defenses center on conduct that occurred in Massachusetts. Those comparative fault defenses principally allege wrongdoing in Massachusetts, not Tennessee or New Jersey. Therefore, as far as the issues of joint and several liability and comparative fault are concerned, Massachusetts has a more significant relationship as the place where the injurious comparative fault conduct occurred.

### iii.    The Domicile, Residence, Nationality, Place Of Incorporation And Place Of Business Of The Parties.

Given the wide range of parties alleged by the New Jersey and Tennessee Clinic Defendants to have been at fault, this factor does not favor the application of law from any one state. For example, most of the Tennessee plaintiffs are domiciled in Tennessee, but some are residents of Kentucky. The Tennessee Clinic Defendants are located in Tennessee. With respect to the New Jersey plaintiffs' claims the New Jersey plaintiffs, the New Jersey Clinics and the Premier Entities are all located in New Jersey. However, the overwhelming majority of the Comparative Fault Parties are located in other states, mostly in Massachusetts.[59] In instances where this factor indicates the application of many state laws, courts often discount the importance of this factor.[60]

---

[59] It appears that 17 of the 27 parties of which the Tennessee Clinic Defendants and/or the Saint Thomas Entities have asserted comparative fault reside in Massachusetts: NECC, Barry Cadden, Lisa Cadden, Doug Conigliaro, C. Conigliaro, Glenn Chinn, Joseph Connolly, GDC Properties, Ma. Board of Pharmacy, John Otariani, Mario Giami, Unifirst, Victory, Ameridose, Pharmacy Support Systems, and Scientific Air.

[60] See e.g., *Iskowitz v. Cessna Aircraft Co.*, 2010 U.S. Dist. LEXIS 88791 (D. Colo. Aug. 5, 2010)

### iv.    The Place Where The Relationship If Any Between The Parties Is Centered.

The relationships giving rise to the Tennessee Clinic Defendants and New Jersey Clinic Defendants' comparative fault defenses are largely centered in Massachusetts.  The comparative fault defenses largely relate to NECC's conduct in compounding MPA in Massachusetts, and those defenses seek to ascribe fault to parties involved in NECC's production process.[61]   As a result, for the issues of joint and several liability and comparative fault, the place where the relevant relationships are centered is Massachusetts, not Tennessee or New Jersey.

Accordingly, on the issues of comparative fault and joint and several liability, this factor favors application of Massachusetts law.  Application of Massachusetts law is particularly just and fair given that the Tennessee Clinic Defendants and New Jersey Clinic Defendants actively chose to do business with a compounding center in Massachusetts.  The Tennessee and New Jersey plaintiffs, on the other hand, played no role in selecting the medicines that were injected into their spines.  They relied exclusively upon the Clinic Defendants to make a safe choice.

The parties who now assert that Massachusetts entities and people are comparatively at fault are the same parties who originally introduced Massachusetts products into their state.  If the Tennessee Clinic Defendants and New Jersey Clinic Defendants had chosen or continued to do business with suppliers of FDA approved products in Tennessee and New Jersey, respectively, rather than choosing less expensive compounded steroids from Massachusetts, then the Clinic Defendants would not have subjected themselves to Massachusetts law as far as their comparative fault defenses are concerned.  Given their original decision to buy drugs in Massachusetts and their present efforts to impose

---

[61] *See* Dkt. No. 1464 at 56-120; Dkt. No. 1455 at 69-112; Dkt. No. 1541 at 14.

burdensome discovery on Massachusetts entities and individuals, the Tennessee Clinic Defendants and New Jersey Clinic Defendants should not be heard to complain about the application of Massachusetts law on the issues of joint and several liability and comparative fault.

> **v.   The Policies Of Tennessee, New Jersey And Massachusetts With Respect To The Comparative Fault and Joint And Several Liability Regimes.**

The Tennessee Supreme Court adopted a comparative fault regime in order to ensure that a defendant's liability is linked to its relative degree of fault regardless of whether such causes harsh consequences for innocent plaintiffs.[62]  Similarly, the policy considerations of New Jersey's Comparative Negligence Act was to "relieve tortfeasors of an injustice among themselves," with the effect of pushing the injustice onto the innocent plaintiff.[63] On the other hand, Massachusetts continues to adhere to the doctrine of joint and several liability.  As one federal court has noted:

> The application of joint and several liability serves two general purposes. First, it acts as a deterrent by making a defendant liable for all of the consequences of its negligence, even if the defendant's negligence was not the only cause of the injury. Prosser, Law of Torts, Ch. 8, § 47, pp. 297-98 (1971). Second, it encourages settlement when, as in this case, settling defendants are protected by statute from an action for contribution.[64]

In the present litigation, the Court is faced with a choice between making sure that no defendant pays more than its theoretical share of the fault (Tennessee and/or New Jersey Law) or making sure that the parties who participated in selling or distributing a contaminated product are held jointly and severally liable for all harm caused by that product (Massachusetts law).

---

[62] *Whitney*, 29 S.W.3d at 21 (discussing purpose of comparative fault regime and acknowledging that it has particularly harsh consequences for plaintiffs)

[63] *Riccio v. Prudential Prop. & Cas. Ins. Co.*, 108 N.J. 493, 504, 531 A.2d 717, 722 (1987)

[64] *In re Colorado Springs Air Crash*, 867 F. Supp. 630, 634 (N.D. Ill. 1994)

Although it may be difficult to accommodate these competing interests in this unique situation, the fact that the Tennessee Clinic Defendants and the New Jersey Clinic Defendants seek to assert comparative fault defenses against an overwhelming majority of actors in Massachusetts, and the fact that conduct giving rise to those defenses occurred in Massachusetts, suggests Massachusetts law should prevail on the issue. Moreover, to the extent that joint and several liability is meant to encourage settlements, Massachusetts courts have a particular interest in that issue. Courts have looked to this factor in determining which joint and several liability regime should prevail in a conflicts of law situation.[65]

Finally, one other policy goal in applying Massachusetts law is worth noting. When a case involves multiple defendants and a conflict between different rules concerning allocation of fault among multiple defendants, "a uniform rule applicable to all defendants is necessary."[66] "If some claims and defendants are treated under a joint and several liability rule and some claims and defendants are treated under a comparative fault rule, then some defendants may be exposed to monetary liability for damages caused by the negligence of other defendants and some defendants may be exposed to monetary liability only for their own share of any negligence."[67] In the present litigation, the only way to ensure uniformity in treatment of fault for the parties is to have Massachusetts law govern the issues of joint and several liability and comparative fault. By doing so, the Court will ensure that all defendants are treated under a single regime of joint and several liability and all plaintiffs are compensated according to the same rules. Therefore, the policy implications involved in the Restatement analysis likewise favor applying Massachusetts law to the issues of joint and several liability and comparative fault.

---

[65] *See id.*
[66] *Iskowitz v. Cessna Aircraft Co.*, 2010 U.S. Dist. LEXIS 88791, *32-33 (D. Colo. Aug. 5, 2010).
[67] *Id.*

## IV.   CONCLUSION

Of the four Restatement factors governing the question of which law applies with respect to the issues of joint and several liability and comparative fault, two of the four favor Massachusetts, one does not favor any particular state, and one favors Tennessee and/or New Jersey. For the forgoing reasons, the PSC respectfully requests that the Court find that Massachusetts law governs the issues of joint and several liability and comparative fault.

Date:   June 22, 2015

Respectfully Submitted,
/s/ Kimberly A. Dougherty
Kimberly A. Dougherty
JANET, JENNER & SUGGS, LLC
31 St. James Avenue, Suite 365
Boston, MA 02116
Telephone:  617/933-1265
kdougherty@myadvocates.com

*Plaintiffs' Steering Committee*

Thomas M. Sobol
Kristen Johnson Parker
HAGENS BERMAN SOBOL SHAPIRO, LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Telephone:  617/482-3700
Facsimile:  617/482-3003
tom@hbsslaw.com
kristenjp@hbsslaw.com

*Plaintiffs' Lead Counsel*

Elizabeth J. Cabraser
Mark P. Chalos
Annika Martin
LIEFF CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone:  415/956-1000
Facsimile:  415/956-1008
ecabraser@lchb.com
mchalos@lchb.com

*Federal/State Liaison*

Marc E. Lipton
LIPTON LAW
18930 W. 10 Mile Road
Southfield, MI 48075
Telephone:  248/557-1688
Facsimile:  248/557-6344
marc@liptonlaw.com

Patrick T. Fennell
CRANDALL & KATT
366 Elm Avenue, S.W.
Roanoke, VA 24016
Telephone:  540/342-2000
Facsimile:  540/400-0616
pfennell@crandalllaw.com

Mark Zamora
ZAMORA FIRM
6 Concourse Parkway, 22nd Floor
Atlanta, GA 30328
Telephone:  404/451-7781
Facsimile:  404/506-9223
mark@markzamora.com

J. Gerard Stranch, IV
Benjamin A. Gastel
BRANSTETTER, STRANCH & JENNINGS, PLLC
227 Second Avenue North
Nashville, TN 37201
Telephone: (615) 254-8801
Facsimile: (615) 255-5419
gerards@branstetterlaw.com
*Plaintiffs' Steering Committee*

## <u>CERTIFICATE OF SERVICE</u>

I, Kimberly A. Dougherty, hereby certify that I caused a copy of the above *Memorandum Regarding Choice of Law for Cases Originally Filed in Tennessee or New Jersey* to be filed electronically via the Court's electronic filing system. Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system, and notice of these filings will be sent to these parties by operation of the Court's electronic filing system.

Dated: June 22, 2015

/s/ Kimberly A. Dougherty
Kimberly A. Dougherty, Esq.
