UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) ) ) ) ) ) ) MDL No. 02419<br>Docket No. 1:13-md-2419-RWZ |
| This document relates to: | |
| All of the cases against the Box Hill Defendants[1] | |

**BOX HILL DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO THE BOX HILL DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

Defendants, Box Hill Surgery Center, L.L.C., Ritu T. Bhambhani, M.D., and Ritu T. Bhambhani, M.D., L.L.C. (hereinafter, collectively "Box Hill Defendants" or "BHSC"), by undersigned counsel, respectfully move this Honorable court to dismiss the Plaintiffs' claims of strict liability, violations of Maryland and Massachusetts consumer protection statutes, and punitive damages, pursuant to Fed. R. Civ. P. 12(b)(6), Local Rule 7.1, and appropriate Maryland and Massachusetts law[2] with respect to the cases referenced in footnote 1.

I. **INTRODUCTION**

The Box Hill Defendants filed the underlying motion to dismiss all claims against them, as well as a Consolidated Memorandum in Support of the same on January 13, 2015.[3] The issues were subsequently narrowed so that the Court now only needs to address whether Plaintiffs' claims for strict liability, violations of Maryland and Massachusetts consumer protection statutes,

---

[1] This pleading applies to the following cases: Handy v. Box Hill Surgery Center, LLC, et al. No: 1:14-cv-14019-RWZ; Armetta v. Box Hill Surgery Center, LLC, et al. No. 1:14-cv-14022-RWZ; Torbeck v. Box Hill Surgery Center, LLC, et al. No. 1:14-cv-14023-RWZ; Kashi v. Box Hill Surgery Center, LLC, et al. No. 1:14-cv-14026-RWZ; Bowman v. Box Hill Surgery Center, LLC, et al. No. 1:14-cv-14028-RWZ; Dreisch v. Box Hill Surgery Center, LLC, et al. No. 1:14-cv-14029-RWZ; Davis v. Box Hill Surgery Center, LLC, et al. No. 1:14-cv-14033-RWZ; Farthing v. Box Hill Surgery Center, LLC, et al. No. 1:14-cv-14036-RWZ
[2] Defendants contend that only Maryland law applies, but to the extent that Plaintiffs cite Massachusetts law in support of their claims, Defendants are forced to address its relevance.
[3] Dkt. 1639 and 1640.

and punitive damages should be dismissed, pursuant to F.R.C.P. 12(b)(6). Plaintiffs filed their opposition (hereafter "Opposition") on June 5, 2015,[4] and the Box Hill Defendants now respond.

While setting out clear reasons why the remaining claims at issue should be dismissed, BHSC summarizes their position for context below, and responds directly to the unsupported arguments made by Plaintiffs in their Opposition. A more detailed analysis of the case law is outlined in BHSC's Motion to Dismiss and Consolidated Memorandum, adopted herein.[5]

In their Opposition, Plaintiffs make many bald assertions and draw unsupported conclusions. They seem to believe that just because they make an assertion in their Complaints, then those claims are unassailable and sufficient to survive a motion to dismiss.[6] On the contrary. A pleading that merely offers "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" is <u>insufficient</u>. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (emphasis added). The Court need not accept as true a plaintiff's bald assertions or legal conclusions couched as facts. *Id.* Even if accepted as true, it must also be "plausible on its face." *Id.* at 570. Dismissal is appropriate if a plaintiff's supposed well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharmaceuticals, LLC*, 521 F.3d 76, 84 (1st Cir. 2008). That is certainly true concerning the remaining claims at issue. An objective examination of the applicable law favors the Box Hill Defendants.

## II. <u>RESPONSE ARGUMENT</u>

### A. <u>Claims of strict liability[7] are inappropriate because the medical service provided predominates any alleged sale of goods.</u>

Well-established Maryland case law clearly precludes strict liability claims against the Box Hill Defendants. Strict liability does not apply when a service provided to a patient involves

---

[4] Dkt. 1944 – Plaintiffs' Opposition to the Box Hill Defendants' Motion to Dismiss.
[5] Dkt. 1639 and 1640, respectively – Box Hill Defendants' Motion to Dismiss and Memorandum in Support.
[6] *See, generally,* Dkt. 1944 at 6-8.
[7] Plaintiffs in all of the related actions except for *Handy* (No: 1:14-cv-14019-RWZ) have alleged a claim for strict liability against the Box Hill Defendants in Count VI of their Complaints.

2

the application of medical skill, whereby the <u>service predominates</u> any sale of a product.[8] *Roberts v. Suburban Hospital Assoc.*, 73 Md.App. 1 (1987) (emphasis added). The Court of Appeals made it clear that the <u>only time a sale (of goods) is the predominant factor</u> in a hybrid sales and service contract is when "the thrust [and] the purpose, reasonably stated, is a transaction of sale with labor incidentally involved." *Burton v. Artery Company*, 279 Md. 94 (1977). Plaintiffs' assertion that the circumstances in the instant cases are not analogous to *Roberts* defies logic as will be explained below and shows desperation.

Plaintiffs first beg the Court to deny BHSC's motion because this Court previously refused to dismiss strict liability in other MDL cases against non-Maryland healthcare providers in Ohio and Tennessee, using non-Maryland law.[9] The instant cases involve Maryland plaintiffs, Maryland defendants, and Maryland law, and those other cases did not.[10] As such, Plaintiffs' reasoning should be ignored as irrelevant when considering this motion to dismiss.

BHSC supported their arguments in their Motion and Memorandum with references to authoritative Maryland case law precedent found in *Roberts* and *Burton*. Left with no other choice, Plaintiffs inappropriately cite to non-authoritative case law involving different facts and, more importantly, which do not apply Maryland law. These efforts, however, are not successful in actually supporting Plaintiffs' arguments or distinguishing the instant cases. *See Perlmutter v. Beth David Hospital*, 308 N.Y. 100, 123, N.E.2d 792 (1954) (a transfusion of "bad" blood was not considered a "sale" of goods because the service predominated and the transfer of personal property was but an incidental feature of the transaction; one must look at the entire transaction to determine its nature and character seeking the main object sought to be accomplished); *cf. Fallsview Glatt v. Rosenfeld*, 7 Misc.3d 557, 794 N.Y.S.2d 790, 2005 NY Slip Op 25003 (N.Y.

---

[8] The evidence will demonstrates that the Box Hill Defendants are not "sellers" of goods, but, in a light most favorable to the Plaintiff for purposes of this argument, we will assume that they are "sellers."
[9] Dkt. 1944 at 11.
[10] *See* Dkt. 1360 at 25-31; Dkt. 1643 at 9.

Civ. Ct., 2005) (having to do with the sale of food and based on New York statutes and case law, as well as the Statute of Frauds); *Newark v. Gimbel's, Inc.*, 54 N.J. 585, 258 A.2d 697 (1969) (the sale of a hair product from a salon was the crux of a mixed sales and service contract whereby a stylist applied the hair product to her customer and injury resulted from the product; the service did not predominate the product sale, in part, because the purchaser could have applied the product to herself and it did not necessarily require the specialized skill of another); *Bonebrake v. Cox*, 499 F.2d 951 (8th Cir. 1974) (the purchase and installation of used bowling equipment constituted a sale of goods). Again, even if the above cases helped Plaintiffs arguments, which they do not, they are not authoritative in Maryland.

In addition to *Roberts*, the distinctive holding in *Burton* suggests that strict liability does not apply to the instant cases because the provision of labor to administer the steroids here are not "incidentally involved" as in *Burton*.

Plaintiffs now attempt to spin the above non-authoritative cases and *Burton* by comparing the specialized skill and service required by a trained physician to perform this invasive medical procedure to the external application of a hair product for better curls (*Newark*) and to planting trees (*Burton*). Plaintiffs' efforts fail. The patients did not seek out Dr. Bhambhani to purchase corticosteroids.[11] It is clear that the performance of the service/procedure was non-divisible from whatever product was used and the main object of the hybrid contract was not to purchase corticosteroids, but to receive an invasive procedure for pain relief.

Further, the notion posed by Plaintiff that an epidural steroid injection is more analogous to applying an external hair product or doing yard work than to a blood transfusion is perplexing. Rather, the facts of the instant cases are closely aligned with *Roberts*. In *Roberts*, the plaintiff consented to a transfusion of blood to treat hemophilia, contracted HIV, and sued the hospital

---

[11] In fact, many of Dr. Bhambhani's patients do not actually receive epidural steroid injections.

4

claiming strict liability on the basis that a blood transfusion was a sale of goods. *Id.* Similarly, in the instant cases, the patients presented to Dr. Bhambhani for care, consented to the epidural injection of a corticosteroid to treat chronic pain, contracted meningitis, and sued BHSC claiming strict liability on the same basis. The Court of Special Appeals in *Roberts* rejected strict liability on the basis that a blood transfusion (in which a product is carefully injected through a needle into the body) constituted the provision of a service rather than a sale of goods. The Box Hill Defendants should receive the same result, as the similarities are notable.

Moreover, in the instant cases, each patient depended on Dr. Bhambhani's specialized skill to inject just the right amount of drug into the exact location near the spine with a long needle using fluoroscopic (x-ray) guidance for maximum effectiveness and pain relief. Without Dr. Bhambhani's expertise, the drugs in this case would have been useless on their own, just like blood products.[12] Further supporting the skill required for this procedure are the risks of performing the procedure imprecisely, including paralysis or death, just like there are risks of a blood transfusion if the incorrect blood type or infusion rate is used. This is not something that any of the Plaintiffs could have done without specialized expertise and training, which Dr. Bhambhani possessed.[13] In other words, even if the sale of a product occurred, it was non-divisible from the service provided, so the service predominates. Consequently, it is clear that BHSC deserves the same dismissal of strict liability claims as occurred in *Roberts*.[14]

### B. Plaintiffs' claims for Maryland consumer fraud must be dismissed.[15]

In their Opposition, Plaintiffs concede that the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law Art. ("CL"), §§ 13-101, et seq., does not apply to the

---

[12] Plaintiffs attempt to draw a distinction between injecting blood versus steroids. Just like there are multiple types of steroids, there are also multiple blood products (plasma, packed cells, platelets, etc.) and blood types.
[13] Patients do not take home units of blood or steroid solution to use as they see fit like they could a hair product.
[14] As in several previous claims, this Court also dismissed strict liability claims against other health care providers in this MDL for various reasons, as can be found, for example, in Doc. 1360.
[15] These claims are made in Count XII of *Handy* (No: 1:14-cv-14019-RWZ) and in Count XI for all of the other related instant actions.

5

professional services of medical practitioners.[16] *See* CL 13-104. Plaintiffs, however, then creatively claim that other services performed by BHSC unrelated to medical care are not exempted by the MCPA.[17] For support they cite to *Scull v. Doctors Groover, Christie & Merritt, P.C.*, 205 Md.App. 567, 45 A.3d 925 (2012).[18] A closer look at *Scull*, though, actually supports dismissal of the instant MCPA claim. An MCPA claim was permitted in *Scull* because the injury was not the result of the performance of a medical procedure, but rather alleged overbilling where the plaintiff sustained an economic loss. Those facts are clearly different than here, where the Plaintiffs allege injuries as a result of contaminated steroids <u>following a medical procedure</u> performed by a <u>medical professional</u>, which <u>is</u> exempted by the MCPA.

The *Scull* court offers even more support for dismissal of Plaintiffs' MCPA claims by citing to *Hogan v. Maryland State Dental Ass'n*, 155 Md.App. 556 (2004), in which an individual plaintiff claimed an MCPA violation based on injuries suffered after a health care provider <u>implanted contaminated dental implants</u>. The court found that there was "no question" that the <u>placement of contaminated fillings</u> was a professional service and that the plaintiff could not pursue such a claim under the MCPA. *Id.* (emphasis added). As in *Hogan*, the Plaintiffs' injuries here would not have occurred without the performance of a medical procedure—the injection of contaminated steroids—which was the crux of the alleged consumer relationship between BHSC and the Plaintiffs. These are the very claims that the MCPA intends to preclude.

Any suggestion by Plaintiffs that administrative or non-medical interactions by BHSC in a trade relationship with NECC, even if deceptive, bear any relevance to consideration of Plaintiffs' MCPA claim against BHSC is a red herring. That specific commercial transaction did not cause injury to Plaintiffs. Any such injury occurred only after an alleged consumer

---

[16] *See* Dkt. 1944 at 18-20; *see also* CL 13-104.
[17] *See* Dkt. 1944 at 18-20.
[18] *Id.* at 19-20. *Scull* was also referenced in BHSC's memorandum of law supporting its motion to dismiss.

relationship developed between Dr. Bhambhani and her patients during the provision of medical services by a medical professional. Accordingly, Plaintiffs' MCPA claims should be dismissed.

### C. Massachusetts consumer protection claims do not apply to the instant cases.

Plaintiffs also claim that the Box Hill Defendants were engaged in deceptive or unfair trade practices and violate Massachusetts consumer protection laws, codified in Mass. Gen. Laws Ann., Ch. 93A (hereafter "93A").[19] Assuming that to be true for purposes of this argument only, BHSC is still not subject to violation of Ch. 93A, and these claims must be dismissed.

Chapter 93A only applies to "trade or commerce directly or indirectly affecting the *people of [Massachusetts]*." Ch. 93A(1)(b). Dr. Bhambhani is a physician licensed to practice in Maryland (and not Massachusetts). Box Hill Surgery Center and Ritu T. Bhambhani, M.D., LLC, are both Maryland corporations. They are alleged to have sold or distributed MPA in their possession in Maryland to Maryland patients in their facility located in Maryland, who then suffered injury in Maryland. It is also undisputed that none of the Plaintiffs (patients) are residents of Massachusetts.

In their opposition, however, Plaintiffs contend that *Van Dyke v. St. Paul Fire and Marine Ins. Co.*, "substantially broadened" the class of persons who could maintain actions under 93A. 448 N.E.2d at 360 (Mass. 1983). Nevertheless, no further explanation was offered.[20] When given another opportunity later in the Opposition, Plaintiffs simply state that Ch. 93A violations through "trade or commerce are…not limited only to the people of Massachusetts," but rather "to all people, including non-residents of Massachusetts." Remarkably, there is no attribution offered after that statement. As such, Plaintiffs' bald assertions should be ignored.

---

[19] Dkt. 1944 at 21-24. This claim is made in Count XII of *Handy* (No: 1:14-cv-14019-RWZ) and in Count XI for all of the other instant actions. BHSC denies that they were engaged in "trade" with patient plaintiffs, let alone deceptive or unfair trade practices.

[20] Dkt. 1944 at 22. It is also unclear what "unfairly violating governing Massachusetts' [law]" means, but it seems as if Plaintiffs just kept using the word "unfair" to make any alleged actions fit the elements of the claim. Dkt. 1944 at 22-23.

7

Plaintiffs then contend that Section 9, instead of Section 11, of Ch. 93A applies here. While not conceding that point, Plaintiffs' claims still fail under Section 9. Clarification is found in *Snyder v. ADS Aviation Maintenance*, 2000 Mass.Super. LEXIS 5 at *20 (Jan. 10, 2000), actually cited by Plaintiffs. *Snyder* maintains that jurisdiction under Ch. 93A, § 9, is determined by the Massachusetts Long-arm Statute. *See Snyder* (quoting M.C. Gilleran, The Law of Chapter 93A, § 7:4 (1989 and Supp. 1999). More precisely, the only long-arm statute section that applies is Ch. 223A, § 3(d). *See Snyder, supra*. Section 3(d) provides, in pertinent part, that:

> A court may exercise personal jurisdiction over a person…as to a cause of action…arising from the person's…causing tortious injury **in this commonwealth** by an act…outside this commonwealth if he regularly…engages in…or derives substantial revenue from goods or services rendered **in this commonwealth**.

The Plaintiffs bear the burden of establishing sufficient facts upon which to predicate personal jurisdiction over the Defendants under the Commonwealth's long-arm statute. *Tatro v. Manor Care, Inc.*, 416 Mass. 763, 767 (1994). The first distinct element under § 3(d) requires the plaintiffs to demonstrate that the defendant's act or omission <u>caused a tortious injury inside Massachusetts</u>. *Cunningham v. Adrox, Inc.*, 40 Mass. App. Ct. 279, 281 (1996) (emphasis added); *see also Snyder, supra*. Unlike in *Snyder*, where four individuals suffered injuries and died from a plane crash in Massachusetts, Plaintiffs in the instant cases suffered a tortious injury in Maryland after contracting meningitis from medical care in Maryland. Having failed the first element, let alone failing to meet their burden of proof, Plaintiffs' Massachusetts consumer protection claims against BHSC should be dismissed. As such, there is no need to consider the second prong of the test involving contacts and derivation of business in Massachusetts, although that element also favors BHSC.

D. **There is no basis for punitive damages pursuant to Maryland law.**

Plaintiffs have wholly failed to support their claims for punitive damages with sufficient pleading or otherwise. Similar to *Schaefer v. Miller*, 322 Md. 297, 587 A.2d 491 (1991), which

8

involved medical care provided by an ophthalmologist to his patient, the instant claims also arise out of a contractual relationship between doctor and patient involving medical care. As such, Maryland law is clear that Plaintiffs are required to show actual malice as a prerequisite to the recovery of punitive damages. *Id.* at 297 (quoting *H & R Block Inc. v. Testerman*, 275 Md. 36, 47, 338 A.2d 48 (1975). Specifically, Maryland courts have characterized actual malice as "the performance of an act…with an *evil* or rancorous motive *influenced by hate*…to *deliberately* and *willfully* injure the plaintiff." *Testerman*, 275 Md. at 43; *see also Schaefer, supra.*

Notably, in their Opposition, Plaintiffs agree with this extremely high punitive damages standard under Maryland law.[21] Plaintiffs, however, simply ignore *Testerman* and *Schaefer* and resort to attaching labels and using superficial buzz words to distract the Court from Plaintiffs' completely baseless claims. Plaintiffs cite to three paragraphs from their Complaints out of more than 300 total paragraphs,[22] asserting that Dr. Bhambhani was "acting with oppression, fraud and malice" and with "willful and intentional disregard" for her patients.[23] Plaintiffs, however, presented nothing other than this conclusory language to actually support such behavior by Dr. Bhambhani in these cases.

The Plaintiffs in *Schaefer* made a similar argument. In fact, the physician defendant in *Schaefer* was even found to have committed an *intentional act* of fraud by forging medical records to defend his care, which was not alleged here. Nevertheless, the Maryland Court of Appeals soundly rejected the *Schaefer* plaintiffs' recovery of punitive damages. *See, generally, Schaefer, supra.* As they are analogous cases, and the Box Hill Defendants did not intentionally injure their patients, the same result should inure to the instant cases as well.

---

[21] Dkt. 1944 at 24-25.
[22] The Handy case is used as a representative example of the eight cases. Although there may be some subtle differences in each of the Complaints, they are essentially the same for purposes of this argument.
[23] Dkt. 1944 at 25; *see also* Handy Complaint at ¶¶ 195, 197-98.

9

Again, while Plaintiffs may attach numerous labels to their claims, they must also be "plausible," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and "more than just a mere label or conclusion" or a "formulaic recitation of the elements," which is insufficient. *Id.* at 555. Moreover, the Court need not accept as true a plaintiff's bald assertions or legal conclusions couched as facts, *id.,* and should not otherwise do so here.

Plaintiffs have not and cannot point to any evidence that establishes that Dr. Bhambhani acted with any intent to injure her patients, let alone with an evil or hateful motive to <u>deliberately</u> harm them, and any bald assertion to the contrary is implausible. In fact, the only claim for an intentional tort—battery—was voluntarily dismissed by the Plaintiffs after this Court dismissed battery claims in other cases with similar behavior.

### III. CONCLUSION AND PRAYER FOR RELIEF

Based on the above arguments, as well as the Box Hill Defendants' Motion to Dismiss and Consolidated Memorandum of Law in Support of the same, the Box Hill Defendants[24] seek dismissal of Plaintiffs' claims of (1) strict liability,[25] (2) violations of Maryland consumer protection statutes, (3) violations of Massachusetts consumer protection statutes, and (4) punitive damages against them, pursuant to F.R.C.P. 12(b)(6), as outlined in the attached Proposed Order.

Respectfully submitted,

/s/ Gregory K. Kirby
Gregory K. Kirby
Pessin Katz Law, P.A.
901 Dulaney Valley Road, Suite 500
Towson, Maryland 21204
(410) 938-8800
***Attorneys for Box Hill Surgery Center, L.L.C., Ritu T. Bhambhani, M.D., and Ritu T. Bhambhani, M.D., L.L.C.***

---

[24] Box Hill Surgery Center, LLC; Ritu T. Bhambhani, M.D.; and Ritu T. Bhambhani, M.D., LLC
[25] Plaintiffs in *Handy* do not make a claim for strict liability, but Plaintiffs in the other cases do.

## LOCAL RULE 7.1 CERTIFICATION

I hereby certify that I have conferred with Plaintiffs' counsel and attempted in good faith to resolve or narrow the issues.

/s/ Gregory K. Kirby
Gregory K. Kirby

## CERTIFICATE OF SERVICE

I, Gregory K. Kirby, hereby certify that a copy of the foregoing document, filed through the CM/ECF system will be accessible to those attorneys who are registered with the Court's electronic filing system and Notice of Electronic filing (NEF), including the attorneys representing the plaintiffs in the above-referenced individual cases, and will be sent to these parties by operation of the CM/ECF system on July 6, 2015.

/s/ Gregory K. Kirby
Gregory K. Kirby