UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | MDL No. 2419<br>Master Docket No.: 1:13-md-2419-RWZ |
| THIS DOCUMENT RELATES TO:<br>All Actions | Honorable Rya W.  Zobel |

**PLAINTIFFS' STEERING COMMITTEE'S**
**MEMORANDUM REGARDING THIS COURT'S AUTHORITY TO CONDUCT**
**TRIALS PURSUANT TO 28 U.S.C. § 157(b)(5)**

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................................ 3

II.     SUMMARY OF ARGUMENT .................................................................................. 3

III.    ARGUMENT ............................................................................................................... 4

        A.      Procedural History. ............................................................................................. 4

        B.      Posture of the Litigation. .................................................................................... 5

        C.      This Court has Subject Matter Jurisdiction Over Tennessee
                Plaintiffs Claims. ............................................................................................... 6

        D.      This Court Should Set Trials Pursuant to 28 U.S.C. §
                157(b)(5). ........................................................................................................... 10

        E.      Moving Forward to Trial. ................................................................................ 12

IV.     CONCLUSION ......................................................................................................... 13

## I.     INTRODUCTION

During the status conference conducted June 24, 2015, the PSC suggested that the Court consider whether 28 U.S.C. § 157(b)(5) authorizes this Court to conduct trials of the claims pending against the Tennessee Defendants.  In response to that suggestion, the Court directed the PSC to file a brief addressing whether this Court, in light of the United States Supreme Court's ruling in *Lexecon Inc. v. Milbert Weiss Bershad Hynes & Lerach,* 118 S. Ct. 956 (1998), may nevertheless conduct trials of claims pending against the Tennessee Defendants pursuant to 28 U.S.C. § 157(b)(5).  This brief is in response to the Court's directive.

## II.     SUMMARY OF ARGUMENT

The PSC respectfully suggests that this Court has statutory authority to conduct trials of claims against the Tennessee Defendants (as well as other clinic defendants) pursuant to 28 U.S.C. § 157(b)(5).  That statute requires this Court to decide whether the subject personal injury tort claims and wrongful death claims will be tried in this Court or in the district where the claims arose, and it expressly vests this Court with the power and responsibility to determine the trial venue.[1]

The PSC acknowledges that, under the unique circumstances of this litigation, tension exists between the plain language of Section 157(b)(5) and the provisions of 28 U.S.C. 1407.  Section 157(b)(5) expressly requires district courts where bankruptcies are pending to select the trial venue for tort claims while *Lexecon's* interpretation of Section 1407 requires the Judicial Panel on Multidistrict Litigation to remand cases for trial.  The *Lexecon* decision does not, however, address Section 157(b)(5) and its potential interplay

---

[1] 28 U.S.C. § 157(b)(5).

with Section 1407.

The interplay between the clear statutory directives of Section 157(b)(5) and Section 1407 is a matter of first impression in the First Circuit.  Accordingly, the PSC asks this Court to do three things:  First, set one or more cases against the Tennessee Defendants for trial in this Court pursuant to Section 157(b)(5); Second, certify an interlocutory appeal, pursuant to 28 U.S.C. § 1292(b), of the trial venue issue; And third, continue supervising common discovery and dispositive motion practice so that cases will be trial ready in the event they are either tried in this Court pursuant to Section 157(b)(5) or transferred away from this Court pursuant to Section 1407.

## III.   ARGUMENT

### A.   Procedural History.

On October 16, 2012, certain plaintiffs located in the Eastern District of Michigan filed a motion with the Judicial Panel on Multidistrict Litigation ("Judicial Panel") to consolidate for pretrial purposes all federal cases arising from the NECC fungal meningitis catastrophe.  On February 12, 2013, the Judicial Panel granted that motion and consolidated all related federal actions across the country in the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. §1407.[2]

After the Judicial Panel entered the initial Transfer Order, injured plaintiffs throughout the country filed additional lawsuits, including lawsuits in district courts in Tennessee.  The Tennessee plaintiffs alleged subject matter jurisdiction pursuant to 28 U.S.C. § 1334(b) because plaintiffs' claims are related to the NECC bankruptcy proceedings.[3]  On June 12, 2013, this Court ruled that it has subject matter jurisdiction over

---

[2] MDL 2419 Dkt. No. 119.
[3] In addition to alleging Section 1334(b) related to jurisdiction, a limited number of plaintiffs who were administered

these proceedings pursuant to 28 U.S.C. § 1334(b).[4]  After the initial Transfer Order, the Judicial Panel entered a series of additional Conditional Transfer Orders pursuant to which the Panel transferred subsequently filed actions, including actions filed in Tennessee, to this Court pursuant to Section 1407.[5]

In addition to cases transferred by the Judicial Panel, this Court transferred several personal injury and wrongful death cases previously pending in Virginia to this Court pursuant to 28 U.S.C. § 157(b)(5).[6]  In deciding to transfer those Virginia cases, this Court specifically ruled that, under the plain language of Section 157(b)(5), this Court has the authority to determine the appropriate venue for the trial of such tort claims.[7]

As the above procedural history indicates, this Court is exercising authority over these consolidated proceedings pursuant to two independent procedural mechanisms:  28 U.S.C. § 1407 and 28 U.S.C. § 157(b)(5).  As a matter of procedural happenstance, the Judicial Panel transferred the Tennessee cases to this Court pursuant to Section 1407.  It is important to note, however, that this Court could have transferred the Tennessee cases to itself pursuant to Section 157(b)(5) just as it did with the Virginia cases.

## B.     Posture of the Litigation.

The defendants originally named in this MDL fall into three categories:  (1) NECC and its employees, owners, directors, managers, and affiliated companies ("Affiliated

---

steroids in Tennessee but lived in Kentucky, also alleged diversity jurisdiction pursuant to 28 U.S.C. § 1332.

[4] *In re New Eng. Compounding Pharm. Prods. Liab. Litig.,* 496 B.R. 256, 266-270 (D. Mass. 2013) (Saylor, J.) ("First, the Court concludes that it has related-to subject-matter jurisdiction under § 1334 over any state-court case in which any plaintiff has asserted a claim, or any defendant has asserted a claim for contribution or indemnity, against NECC or any affiliated entity or individual. Such a claim could clearly have an effect, indeed a substantial effect, on the bankruptcy estate.").

[5] During the June 24, 2015 status conference, the Court also inquired about actions filed directly in this Court. Although it appears that there are several direct filed cases pending, none of those cases are against the Tennessee defendants.

[6] Order entered June 5, 2014, Dkt. No. 1173.

[7] Memorandum of Decision entered May 15, 2014, Dkt. 1131 ("Because the NECC bankruptcy case is pending in the District of Massachusetts, this court has the authority to determine the appropriate venue for such tort claims.").

Defendants"); (2) vendors who provided services to NECC ("National Defendants"); and (3) clinics and hospitals (and their staff) who sold and distributed tainted NECC steroids to patients and injected those patients with the contaminated material ("Clinic Related Defendants").

Although it is undisputed that methylprednisolone acetate ("MPA") manufactured by NECC was the source of the deadly contamination, the parties disagree as to who can be held legally responsible for the harm caused by those defective drugs. Since NECC's bankruptcy petition, settlements have been achieved with the Affiliated Defendants and the National Defendants. Accordingly, all active claims now pending in this MDL are against the Clinic Related Defendants who selected NECC as their drug supplier of choice. By selecting NECC, the Clinic Related Defendants imported NECC products into their respective states, sold and distributed NECC products to their patients, and failed to protect their patients from well-known dangers associated with compounded medications.

The Tennessee Defendants now seek to attribute fault at trial to the Affiliated Defendants, the National Defendants, and state and federal regulatory agencies (collectively the "Comparative Fault Parties"). The Tennessee Defendants are aggressively seeking discovery from the Comparative Fault Parties in order to bolster their comparative fault defenses purportedly available under state law and thereby reduce Plaintiffs' recoveries.

**C.   This Court has Subject Matter Jurisdiction Over Tennessee Plaintiffs Claims.**

   1.   <u>Subject Matter Jurisdiction Attached When the Tennessee Plaintiffs Filed Suit</u>.

This Court has expressly ruled, on more than one occasion, that it has subject matter jurisdiction over these proceedings pursuant to 28 U.S.C. § 1334(b).[8] That jurisdiction

---

[8] *In re New Eng. Compounding Pharm. Prods. Liab. Litig.,* 496 B.R. 256, 266-270 (D. Mass. 2013); and Memorandum of Decision entered May 15, 2014, Dkt. 1131.

vested in this Court at the time that the subject proceedings were filed, and it cannot be taken away by subsequent developments.

The United States Supreme Court, the First Circuit, the Sixth Circuit, and several district courts in Tennessee all agree that that subject matter jurisdiction attaches at the time an action is commenced.[9]  Jurisdiction cannot be undone by later developments.[10]  As stated by the First Circuit in *Coventry Sewage Associates v. Dworkin Realty Co.*:  "[t]his case fits well within the rule that once jurisdiction attaches, it is not ousted by a subsequent change of events."[11]  Accordingly, the Tennessee Defendants cannot legitimately suggest that this Court magically lost subject matter jurisdiction simply because the NECC Chapter 11 plan has now been confirmed.[12]

> 2. <u>Even if this Court Reconsiders Subject Matter Jurisdiction in Light of Plan Confirmation, the Tennessee Plaintiffs' Claims and the Tennessee Defendants' Defenses May Still Impact the NECC Bankruptcy Estate.</u>

Even if this Court considers post-filing events, under the broad definition of Section 1334(b) jurisdiction as explained by the First Circuit, this Court has subject matter jurisdiction over the Tennessee plaintiffs' claims.  Section 1334(b) confers jurisdiction over

---

[9] (*see, e.g., St. Paul Mercury Indem. Co. v. Red Cab Co.* 303 U.S. 283 (1938); *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567 (2004); *Maysonet-Robles v. Cabrero,* 323 F.3d 43 (1st Cir. 2003); *Valedon Martinez v. Hosp. Presbiteriano de la Comunidad, Inc.,* 806 F.2d 1128, 1132 (1st Cir.1985)(diversity of citizenship); *Coventry Sewage Assocs. v. Dworkin Realty Co.,* 71 F.3d 1, 4–6 (1st Cir.1995)(amount in controversy); *Ching v. Mitre Corp.,* 921 F.2d 11, 13 (1st Cir.1990)(federal question jurisdiction)) as well as for personal jurisdiction (*see, e.g., Explosives Corp. of Am. v. Garlam Enters. Corp.,* 817 F.2d 894, 906 (1st Cir.1987)); *Rogers V. Wal-Mart Stores, Inc.,* 230 F.3d 868 (6th Cir. 2000); *Brindley v. Philips Electronics North America Corp.,* 2011 WL 2938436 (M.D. Tenn 2011); and *Noe v. City of Morristown*, 2012 WL 2126870 (E. D. Tenn. 2012).

[10] *Id.*

[11] 71 F. 3d 1, 6 (1st Cir. 1995).

[12] During the June 24, 2015 status conference, counsel for the Tennessee Clinic Defendants argued that this Court's recent decision in *Quincy Med. Ctr. v. Gupta*, 2015 WL 58633 suggests that this Court no longer has jurisdiction over the Tennessee plaintiffs' claims.  However, unlike the present litigation, the plaintiffs in *Quincy Medical* filed complaints AFTER the bankruptcy plan was confirmed.  In the case at bar, all of the Tennessee plaintiffs' claims were filed BEFORE plan confirmation.  In other words, jurisdiction attached to the Tennessee plaintiffs' claims long before the Chapter 11 plan was confirmed.  *See also Boston Regional Med. Ctr.*, 410 F.3d at 107 ("There will be situations in which the fact that particular litigation arises AFTER CONFIRMATION of a reorganization plan will defeat an attempted exercise of bankruptcy jurisdiction.").

all claims "arising in or related to cases under title 11."[13] "The statutory grant of 'related to' jurisdiction is quite broad," extending to "the entire universe of matters connected with bankruptcy estates."[14]

The First Circuit describes Section 1334 jurisdiction in particularly broad terms. Section 1334 jurisdiction encompasses any litigation that "**potentially could have some effect**" on a bankruptcy estate:

> [B]ankruptcy courts ordinarily may exercise related to jurisdiction as long as the outcome of the litigation "potentially [could] have some effect on the bankruptcy estate, such as altering debtor's rights, liabilities, options, or freedom of action, or otherwise have an impact upon the handling and administration of the bankrupt estate."[15]

Under the First Circuit's broad definition, this Court unquestionably enjoys subject matter jurisdiction over these proceedings.

As the Court knows, the central feature of the NECC bankruptcy estate, as reflected in the recently confirmed Chapter 11 Plan, is a Tort Trust established for the purpose of compensating tort victims, at least in part, for their tremendous losses resulting from the NECC catastrophe.[16]   Unfortunately, the Tennessee Defendants' continued insistence on attributing "comparative fault" to NECC and the Affiliated Defendants threatens to erode funds available for victims in the Tort Trust.

As explained by the PSC during the May 28, 2015 status conference, because NECC's insurers have taken the position that NECC's coverage ends on the effective date of the Chapter 11 Plan, additional expenses incurred by Paul Moore as the Post Confirmation Officer will ultimately be paid from proceeds that would otherwise be available for victims

---

[13] 28 U.S.C. § 1334(b).
[14] *In re Boston Regional Med. Ctr., Inc.*, 410 F.3d 100, 105 (1st Cir. 2005).
[15] *Id.* (quoting *In re G.S.F. Corp.*, 938 F.2d 1467, 1475 (1st Cir. 1991)).
[16] *In Re: New England Compounding Pharmacy, Inc.*, Case No. 12-19882, Doc. 1351-1, Chapter 11 Plan – Section 1.54 defines the term "Debtor" to include the "Tort Trust" and Section 5.04 describes the purpose of the Tort Trust.

through the Tort Trust.  Specifically, the PSC explained as follows during the May 28, 2015
status conference:

> MS. JOHNSON: The trustee shared with me yesterday that NECC's insurers
> sent a letter confirming that insurance coverage for NECC ends on the
> effective date, which is June 4th, which means to the extent that additional
> expenses are incurred by Mr. Moore, those expenses will ultimately be paid
> out of now the settlement pot and, functionally, every dollar that's paid in
> expenses out of that pot reduces the recovery to tort victims.
>
> . . .
>
> [T]he direct impact on that is as follows:  the more discovery that must be
> done and then the time that it takes to resolve discovery disputes and complete
> this common discovery does wind up having a negative direct fiscal impact on
> victims as well as the negative consequences of things just taking longer, and
> I wanted to bring that to the Court's attention.[17]

The impact of the Tennessee Defendants' comparative fault defenses on the NECC
bankruptcy estate is evident from an examination of the Chapter 11 Plan.  Section 1.54 of
the Plan defines the term Debtor to include the Tort Trust.[18]  Section 6.01 appoints Paul
Moore as the "sole officer and director of NECC" otherwise known as the Post-
Confirmation Officer ("PCO").[19]  Section 6.02 provides the PCO with the power to settle all
claims (except Tort Claims) against the estate, to liquidate assets, to retain professionals for
the purpose of preserving or liquidating NECC assets, and it charges the PCO with
responsibility for maintaining NECC's books, records, cash, and other assets.[20]  Sections
1.71-1.73 provide for the establishment of an "Expense Fund" for the purpose of funding
Mr. Moore's responsibilities as the PCO, and Section 6.04 provides that the Expense Fund
may be used for the payment of the PCO's expenses, and the payment of the costs

---

[17] Official Transcript of May 28, 2015 Status Conference, Exhibit 1 hereto, at p. 46-47.
[18] Case No. 12-19882, Doc. 1351-1, Chapter 11 Plan at Section 1.54.
[19] *Id.* at Section 6.01.
[20] *Id*. at Section 6.02.

associated with professionals the PCO hires in discharging his duties.[21]  Section 6.04 further provides that unspent portions of the Expense Fund revert to the Tort Trust for distribution to tort victims.[22]  Therefore, when the PCO expends money in responding to discovery propounded by the Tennessee Defendants to NECC and/or its principals, those funds will come from the Expense Fund.  The more money that the PCO expends contending with the Tennessee Defendants' so-called comparative fault discovery, the less money will ultimately pour into the Tort Trust for the benefit of tort victims.  Without question, the claims pending against the Tennessee Defendants easily satisfy the First Circuit's broad definition of 1334 related to jurisdiction.  Those claims "potentially could have some effect" on a bankruptcy estate.[23]

In addition to the direct impact on the NECC bankruptcy estate as described above, the Tennessee Defendants' continued insistence on comparative fault discovery likewise impacts the Affiliated Defendants and the National Defendants.  Most of those defendants are located in Massachusetts, and all of those defendants attempted to buy their peace by paying into the global settlements that are part and parcel of the NECC Chapter 11 Plan.  Given the Tennessee Defendants' continued insistence upon conducting discovery of Affiliated and National Defendants, this Court retains a vested interest in supervising that discovery.

**D.     This Court Should Set Trials Pursuant to 28 U.S.C. § 157(b)(5).**

Section 157 (b)(5) of Title 28 expressly vests this Court with the power and responsibility to determine the trial venue for personal injury and wrongful death claims that relate to a Chapter 11 bankruptcy proceeding.  The statute provides:

---

[21] *Id.* at Sections 1.71-1.73 & 6.04.
[22] *Id.* at Section 6.04.
[23] *In re Boston Regional Med. Ctr., Inc.,* 410 F.3d at 105.

> (5) The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

The PSC acknowledges that, given this Court's dual role as both a district court and an MDL court, there is arguably tension between Congress' mandate that this Court determine the trial venue for tort claims pursuant to Section 157(b)(5) and the Supreme Court's interpretation of Section 1407.  In *Lexecon*, the Supreme Court interpreted Section 1407 to require the Judicial Panel to remand cases transferred to MDL courts back to the transferor courts for trial.[24]  However, the *Lexecon* opinion does not discuss, or even mention, Section 157(b)(5), and the *Lexecon* litigation did not occur in the context of bankruptcy proceedings.

The interplay between Section 157(b)(5) and Section 1407 appears to be a question of first impression in the First Circuit.  The PSC is unable to find authority in the First Circuit addressing the issue, and the only authority found in another circuit treated the issue briefly in *dicta*.[25]

The PSC is unable to find any case remotely similar to the present circumstance, i.e. comparative fault discovery in the context of an ongoing Chapter 11 bankruptcy estate that threatens to diminish settlement amounts intended for victims.  Given the Tennessee Defendants' insistence upon comparative fault discovery propounded to people and

---

[24] *Lexecon Inc. v. Milbert Weiss Bershad Hynes & Lerach*, 118 S. Ct. 956 (1998).

[25] *Shah v. Pan American World Services, Inc.*, 148 F.3d 84 (2nd Cir. 1998)( "Even assuming, however, that we may look to whether venue was sustainable under another legal basis such as § 157(b)(5), and assuming that venue in this action would have been sustainable under § 157(b)(5) § 157(b)(5)—both issues as to which we express no opinion-it appears that Lexecon should apply to § 157(b)(5) transfers as well as to § 1404(a) transfers."  That gratuitous holding is plainly *dicta*, and the case did not involve issues of comparative fault discovery against settling defendants in an ongoing bankruptcy proceeding.  The *Pan Am.* court does not offer a rational – and the PSC sees no rational – for holding that the Supreme Court's ruling in *Lexecon* as to MDL procedure should be read to trump Congress' mandate that district courts where a bankruptcy proceedings are pending decide where tort claims are tried.

businesses located in Massachusetts, this Court should not hesitate to fulfill Section 157(b)(5)'s mandate that this Court select the trial venue.

**E.      Moving Forward to Trial.**

Given the unique circumstances and demands of the present litigation, the PSC recommends the following course of action.  First, this Court should exercise its express statutory authority under 28 U.S.C. § 157(b)(5) and set one or more cases against the Tennessee Defendants for trial in this Court.  Second, given the unique character of the procedural issues presented by this litigation, this Court should certify the trial venue question for interlocutory appeal to the First Circuit pursuant to 28 U.S.C. § 1292(b).  That statute provides:

> (b) When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: Provided, however, that application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.[26]

Depending upon the outcome of the interlocutory appeal, the claims will either be tried in this Court or transferred to their home districts pursuant to 28 U.S.C. 1407.  Thus, in preparation for either event, this Court should proceed with common discovery and dispositive motion practice so that the claims will be trial ready once the trial venue question is finally adjudicated.  This Court should not allow the subject procedural uncertainties to delay trial preparation.

---

[26] 28 U.S.C. § 1292(b)(emphasis added).

## IV.    CONCLUSION

This MDL has been pending for more than two years.  During that time, the PSC has worked in great earnest to move the litigation forward and proceed toward trial on the merits.  However, the question of where the claims will be tried, and whether they will be tried in a centralized or fragmented manner, hangs like a procedural pall over this litigation and threatens to cause additional delay.  The PSC firmly believes that the best way to move this litigation forward efficiently and effectively is by setting cases for trial in this Court and establishing an aggressive trial preparation schedule that includes completion of common discovery and dispositive motion practice. In addition, an interlocutory appeal of the trial venue question, while trial preparation proceeds, will insure that claims are not tried in the wrong court and will likewise insure that the victims' claims will continue proceeding toward trial or resolution.

Respectfully submitted,

Dated:  July 6, 2015

 /s/ **George Nolan**

George Nolan (B.P.R. No. 14974)
LEADER, BULSO &  NOLAN, PLC
414 Union Street, Suite 1740
Nashville, Tennessee  37219
(615) 780-4111
gnolan@leaderbulso.com

*As designated counsel on behalf of the
Plaintiffs' Steering Committee*

Thomas M. Sobol
Kristen A. Johnson
HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA  02142
Telephone:  (617) 482-3700
Facsimile:  (617) 482-3003
tom@hbsslaw.com
kristenjp@hbsslaw.com

*Plaintiffs' Lead* Counsel

Marc E. Lipton
LIPTON LAW
18930 W. 10 Mile Road
Southfield, MI  48075
Telephone:  (248) 557-1688
Facsimile:  (248) 557-6344
marc@liptonlawcenter.com

Patrick T. Fennell
CRANDALL & KATT
366 Elm Avenue, S.W.
Roanoke, VA  24016
Telephone:  (540) 342-2000
pfennel@crandalllaw.com

J. Gerard Stranch, IV
Benjamin A. Gastel
BRANSTETTER, STRANCH & JENNINGS PLLC
227 Second Avenue North, 4th Floor
Nashville, TN  37201
Telephone:  (615) 254-8801
Facsimile:  (615) 255-5419
gerards@branstetterlaw.com

*Plaintiffs' Steering* Committee

Elizabeth J. Cabraser
Mark P. Chalos
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008
ecabraser@lchb.com
mchalos@lchb.com

Federal*/State Liaison*

Kim Dougherty
JANET, JENNER & SUGGS, LLC
31 St. James Ave., Suite 365
Boston, MA  02116
Telephone:  (617) 933-1265
kdougherty@myadvocates.com

Mark Zamora
ZAMORA FIRM
6 Concourse Way, 22nd Floor
Atlanta, GA  30328
Telephone:  (404) 451-7781
Facsimile:  (404) 506-9223
marc@markzamora.com

## <u>CERTIFICATE OF SERVICE</u>

      I, George Nolan, hereby certify that I caused a copy of the foregoing to be filed electronically via the Court's electronic filing system.  Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system, and notice of these filings will be sent to these parties by operation of the Court's electronic filing system.

/s/ **George Nolan**

George Nolan
