UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | MDL No. 2419 |
| THIS DOCUMENT RELATES TO: | |
| All Actions Involving Specialty Surgery Center, PLLC, and Kenneth R. Lister, M.D. | |

**SPECIALTY SURGERY CENTER, PLLC, AND KENNETH R. LISTER'S, M.D., REPLY MEMORANDUM TO PLAINTIFFS' STEERING COMMITTEE'S MEMORANDUM REGARDING CHOICE OF LAW FOR CASES ORIGINALLY FILED IN TENNESSEE**

Specialty Surgery Center, Crossville, PLLC ("SSC"), and Kenneth R. Lister, M.D. ("Dr. Lister") (collectively "the Defendants"), by and through counsel, submit this memorandum in opposition to the Plaintiffs' Steering Committee's Memorandum Regarding Choice of Law for Cases Originally Filed in Tennessee. [Docket No. 2004].

## I. SUMMARY OF ARGUMENT

The Defendants respectfully suggest that Tennessee law govern all Tennessee substantive issues, including the issues of whether joint and several liability and comparative fault would apply to claims pending against the Tennessee defendants. To determine what substantive law applies, this Court should apply the choice-of-law rules of the original transferor/forum states (i.e. Tennessee choice-of-law rules to Tennessee claims and New Jersey choice-of-law rules to New Jersey claims).

For choice-of-law analysis, Tennessee has adopted the Restatement (Second) Conflict of Laws (1971) "most significant relationship" approach. <u>Hataway v. McKinley</u>, 830 S.W.2d 53, 54 (Tenn. 1992). Under that approach, the law of the state with the

1

most significant relationship to the claim(s) will apply to substantive issues. Id. Issues of comparative fault and joint and several liability are substantive issues. Therefore, the law of the state with the most significant relationship to the claim(s) will apply to issues of comparative fault and joint and several liability. See Id.

Here, the Tennessee plaintiffs presented to SSC and Dr. Lister for medical diagnosis and treatment in Tennessee. Dr. Lister, who had no knowledge or reason to know of the contamination, administered MPA manufactured by NECC to the plaintiffs as part of epidural steroid injections he performed at SSC in Tennessee. The plaintiffs allege the administration of those injections is the cause of their injuries. Therefore, Tennessee has the most significant relationship to the plaintiffs' claims. Thus, Tennessee substantive law applies, including substantive law on the issues of whether joint and several liability and comparative fault applies to claims pending against the Tennessee defendants.

Applying Tennessee comparative fault is called for by the choice-of-law rules of Tennessee, Massachusetts, and federal common law, and it is the only way to ensure fairness to both the plaintiffs and the defendants. For almost a quarter of a century, Tennessee has essentially eliminated joint and several liability and applied comparative fault because joint and several liability has the tendency to "fortuitously impose a degree of liability that is out of all proportion to fault." McIntrye v. Balentine, 833 S.W.2d 52, 58 (1992). If this Court were to apply the clearly inapplicable joint and several liability law, it would be subjecting the Defendants to exponentially more liability than they would be subjected to if the Court correctly applied Tennessee substantive law, which the PSC

has admitted applies. See Dkt. No. 2004, p. 5-6. Therefore, this Court should apply Tennessee comparative fault to the plaintiffs' claims.

## II. ARGUMENT

While the Defendants agree this Court should apply the choice-of-law rules of the original forum states, i.e. Tennessee as it relates to these defendants, the PSC greatly misunderstands how those rules are applied.

**A.   Tennessee choice-of-law rules apply to Tennessee claims.**

The PSC has incorrectly represented to this Court that pursuant to 28 U.S.C. § 157 (b)(5) this Court has statutory authority to try the cases against the Tennessee defendants in Massachusetts. Transcript of June 24 Status Conference, p.27. However, contrary to what the PSC indicated in its representation, 28 U.S.C. § 157 (b)(5) actually provides:

> The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court *in which the bankruptcy case is pending, or in the district court in the district in which the claim arose,* as determined by the district court in which the bankruptcy case is pending.

Id. (emphasis added).

First, § 157 (b)(5) does not grant jurisdiction to a Massachusetts court to hear the Tennessee claims. See In re Dow Corning Corp., 778 F.3d 545, 549 (6th Cir. 2015), reh'g denied (Mar. 18, 2015). For § 157 (b)(5) to apply such that a personal injury tort or wrongful death claim can be tried in a bankruptcy court, the bankruptcy case must be pending in that court. 28 U.S.C. § 157 (b)(5). Here, however, the effective date of NECC's bankruptcy was June 4, 2015; thus, the bankruptcy is no longer pending in this Court. Dkt. No. 1951. Additionally, by this Court's own ruling, "'bankruptcy courts ordinarily may exercise related to jurisdiction as long as the outcome of the litigation

3

'potentially [could] have some effect on the bankruptcy estate…'" Quincy Med. Ctr. v. Gupta, No. CIV.A. 12-40128-RWZ, 2015 WL 58633, at *3 (D. Mass. Jan. 5, 2015) (citations omitted).  As the bankruptcy case is no longer pending, the outcome of this litigation could not and does not have an effect on the bankruptcy estate.  See Dkt. No. 1951.  Therefore, it would not be proper for this Court to try the cases against the Tennessee defendants.

Further, the purpose of § 157 (b)(5) was to promote efficiency by letting courts centralize cases related to a bankruptcy, if necessary, not "to be used to alter the substantive law governing the state-law cases transferred under it." In re Dow Corning Corp., 778 F.3d at 549 (citations omitted). Here, the PSC seeks to have substantive Massachusetts joint and several liability law applied to the cases because it does not like the substantive comparative fault standard adopted in Tennessee.  If the Tennessee plaintiffs had intended for a Massachusetts court to apply Massachusetts law to determine the substantive issues of their cases, they would have originally filed their claims in Massachusetts, rather than wait for the cases to be transferred to this Court, which are only before this Court for the purpose of consolidated and coordinated pretrial proceedings as part of multidistrict litigation.

When state law cases filed in federal court are consolidated or coordinated into multidistrict litigation, the transferee court conducts pretrial proceedings for the convenience of the parties and witnesses and to promote the just and efficient conduct of the proceedings.  28 U.S.C.A. § 1407.  During such proceedings, if the transferee court is faced with a question of federal law, it must apply the law of the circuit in which it is located. In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig., 97 F.3d

4

1050, 1055 (8th Cir. 1996) (citing In re Korean Air Lines Disaster, 829 F.2d 1171, 1176 (D.C.Cir. 1987), aff'd, 490 U.S. 122 (1989)).

If, however, the court is considering a question of state law, it must apply the law of the state that would have applied to the individual cases if they were not transferred. In re TMJ, 97 F.3d at 1055 (citing In re Air Crash Disaster Near Chicago, Ill., 644 F.2d 594, 610 (7th Cir.), cert. denied, 454 U.S. 878 (1981)); see also In re Conagra Peanut Butter Products Liab. Litig., 251 F.R.D. 689 (N.D.Ga. 2008); Murphy v. F.D.I.C., 208 F.3d 959, 965 (11th Cir. 2000).  This means the transferee court must apply the choice-of-law rules the transferor court would have applied if the case was still in its courtroom.  See In re Air Crash Disaster Near Chicago, Ill., 644 F.2d at 610; In re Managed Care Litigation, 298 F.Supp.2d 1259 (S.D.Fla. 2003).  Essentially, the change in venue should be treated as a mere change in courtrooms.  In re Conagra Peanut Butter, 251 F.R.D. at 693 (citing Van Dusen v. Barrack, 376 U.S. 612 (1965)).

Thus, "an independent choice of law determination is necessary for the states of all transferor courts."  In re Conagra Peanut Butter, 251 F.R.D. at 693 (citing In re Bridgestone / Firestone, Inc. Tires Products Liability Litigation,155 F.Supp.2d 1069, 1078 (S.D.Ind.2001)).  In In re Conagra Peanut Butter, plaintiffs across the United States sued Conagra after it distributed contaminated peanut butter it manufactured in Georgia.  Id. at 691.  Hundreds of people fell ill after consuming the contaminated peanut butter and hundreds of personal injury and consumer class actions were filed across the United States.  Id.  The Judicial Panel on Multidistrict Litigation transferred all of the actions pending in federal courts across the country to the United States District Court for the Northern District of Georgia for consolidated pretrial proceedings.  Id.

Once the actions were transferred, the plaintiffs argued that Georgia state law applied to all the claims filed against Conagra. Id. at 693. The Conagra Court, however, disagreed. See Id. The court found that there was "substantial conflict" between Georgia law and the law of the multiple transferor courts on the plaintiffs' claims. Id. at 696 (citing Phillips Petroleum v. Shutts, 472 U.S. 797 (1985) ("no injury" in applying single state's law unless the state's law conflicts with other jurisdictions implicated in suit)). Because there were conflicts between the laws of the transferor jurisdictions and the transferee court, the Conagra Court concluded that it must apply the state law applicable to each of the individual cases when considering questions of state law. See Id.; see also In re Atlas Roofing Corp. Chalet Shingle Products Liab. Litig., No. 1:13-MD-2495-TWT, 2015 WL 114285 (N.D. Ga. Jan. 8, 2015).

Here, the PSC admitted Tennessee (and New Jersey) law clearly conflicted with Massachusetts law on the issues of joint and several liability and comparative fault. Dkt. No. 2004, p. 13. Massachusetts follows the doctrine of joint and several liability whereby "comparative negligence law … is irrelevant to the apportionment of liability among joint tortfeasors." Mitchell v. Hastings & Koch Enters., Inc., 647 N.E.2d 78, 84 (Mass. Ct. App. 1995). Tennessee, however, has adopted a modified comparative fault system whereby in cases involving multiple tortfeasors, "a particular defendant will henceforth be liable only for the percentage of a plaintiff's damages occasioned by that defendant's negligence." McIntrye, 833 S.W.2d at 58. Therefore, it is clear that Tennessee liability law conflict with Massachusetts liability law. Thus, this Court should apply Tennessee choice-of-law rules to Tennessee claims and New Jersey choice-of-law rules to New Jersey claims.

6

**B.     Under Tennessee choice-of-law rules, the individual transferor courts' substantive law applies to the plaintiffs' claims, and, therefore, Tennessee substantive law, including that on joint and several liability and comparative fault, governs the Tennessee claims.**

The Defendants agree that Tennessee, Massachusetts, and federal common law all follow the "significant relationship" choice-of-law analysis set forth in the Restatement (Second) Conflict of Laws. See Hataway, 830 S.W.2d at 54; Dasha v. Adelman, 699 N.E.2d 20, 24 (1998); Aaron Ferer & Sons, Ltd. V. Chase Manhattan Bank, 731 F.2d 112, 121 (2d Cir. 1984). However, the Defendants vehemently deny Massachusetts law applies to the issues of joint and several liability and comparative fault.

**1.     Tennessee law applies to the issues of joint and several liability and comparative fault because Tennessee substantive law applies to the Tennessee claims.**

The PSC admitted that "the application of the significant relationship analysis results in applying Tennessee and New Jersey law to plaintiffs' substantive claims in those states." See Dkt. No. 2004, p. 9. However, the PSC distorts the law and contradicts itself when it attempts to persuade this Court that while Tennessee law applies to substantive claims, Massachusetts law applies to the issues of joint and several liability and comparative fault. See Dkt. No. 2004, p. 9.

By definition, "substantive law relates to the rights and duties which give rise to a cause of action" and "is the part of the law which creates, defines, and regulates rights." State v. McConnell, 3 S.W.2d 161, 162 (1928) (citations omitted). Courts consistently find comparative fault falls within this definition and is a substantive right. See e.g. Veazey v. Elmwood Plantation Associates, Ltd., 650 So. 2d 712, 716 (the court noting it had "adopted the substantive principle of comparative fault"); Cole v. Celotex Corp., 588 So. 2d 376, 384 (La. Ct. App. 1991) writ granted, 592 So. 2d 401 (La. 1992) and writ

7

granted, 592 So. 2d 401 (La. 1992) and aff'd, 599 So. 2d 1058 (La. 1992) ("[c]omparative fault is a substantive right"); Johnson v. Brewer, 311 S.W.2d 301, 302 (1958) ("substantive rule of comparative negligence"); Railway Exp. Agency v. Mallory, 168 F.2d 426, 427 (C.C.A. 5th Cir. 1948) (finding Mississippi's comparative negligence statute was part of the state's substantive law). As comparative fault is a substantive right, it seems obvious then that the applicable state's substantive law analysis would apply to issues of comparative fault and joint and several liability. Therefore, as Tennessee substantive law applies to the Tennessee claims, this Court should apply Tennessee comparative fault to issues of liability.

The PSC would have this Court believe "courts regularly apply different state law" to issues of joint and several liability and comparative fault even though the substantive law of another state is applicable to a plaintiff's claims generally. Dkt. No. 2004, pg. 15-16. The PSC, however, is wrong. It cites to several cases purportedly standing for the proposition that this split is allowable, but those cases are either irrelevant or contrary to the PSC's position. First, the PSC cites to Sulak v. Am. Eurocoter Corp., 901 F.Supp.2d 834 (N.D. Tex. 2012), in which a Texas district court cited to Texas law in determining what law to apply to the issues of the case. Id. at 838. The court in Sulak did find that "a single state's law need not govern all substantive issues" and that "the state law that has most significant relationship to the issue is applied," but the court came to this conclusion because that is the law that the state of Texas applied to Texas cases. Id. In other words, it is a Texas law applicable to Texas cases only, and certainly is neither persuasive nor binding on this Court. See Id. Here, and as admitted

by the PSC, Tennessee law applies to the Tennessee cases, so the holding in Sulak is not applicable, and frankly is irrelevant to this case.

The PSC also cites to In re Air Crash Disaster at Washington, 559 F.Supp. 333 (D.D.C. 1983), in which the court had to determine how fault would be apportioned among the defendants from several jurisdictions. Id. at 351. Two of the jurisdictions with an interest in the apportionment followed an equal-share rule, whereby all culpable defendants would contribute equally, regardless of fault. Id. The remaining three jurisdictions with an interest in the apportionment followed a comparative fault approach. Id. The court chose to apply comparative fault because "application of the equal-share rule would most certainly offend the legitimate and profound interests of the [comparative fault] states." Id. at 352. The equal-share rule would have forced the defendants to be liable for more than the damage they caused, which would have been contrary to the law of the comparative fault states. See Id.

Here, the PSC seeks this Court to apply Massachusetts joint and several liability law, which would allow the plaintiffs to recover full damages from any one of the defendants they filed suit against. See Dkt. No. 2004, p. 12. In other words, the PSC would have this Court apply clearly inapplicable law so that the plaintiffs might recover full damages from a defendant who may be only minimally at fault. If this Court were to apply such law, it would be subjecting the Defendants to exponentially more liability than they would have been had the case remained in its original forum state, whose law applies.

Tennessee obviously has a "legitimate and profound interest" in seeing this does not happen to the defendants residing or incorporated in its state. See In re Air Crash

Disaster at Washington, 559 F.Supp. at 352. Comparative fault, which has been adopted in Tennessee, only allows a particular defendant to be liable for the percentage of damages he actually caused through his negligence. McIntrye, 833 S.W.2d at 58. Massachusetts joint and several liability law, on the other hand, forces a particular defendant to be on the hook for every other defendant's negligence. See Kabatchnik v. Hanover-Elm Building Corp., 119 N.E.2d 169, 172 (Mass. 1954); Mitchell, 647 N.E.2d at 84. To allow Tennessee defendants to be responsible for the bad acts of Massachusetts defendants, as the plaintiffs would have this Court do, is offensive to Tennessee's sovereign state interest in protecting those residing or incorporated within its borders. See In re Air Crash Disaster at Washington, 559 F.Supp. at 352. Therefore, Tennessee comparative fault law is not only the appropriate law to apply, but it is a more accurate measure under which a jury may allocate a defendant's actual fault, rather than allocating it fault which it is not responsible for. See McIntrye, 833 S.W.2d at 58.

**2. Not only is Tennessee law the appropriate law to apply for the reasons stated above, but, under Tennessee choice-of-law rules, Tennessee has the most significant relationship to the issues.**

Tennessee has adopted the Restatement (Second) Conflict of Laws approach to choice-of-law analysis[1]. Hataway, 830 S.W.2d at 59. For personal injury actions, the Restatement provides:

> In an action for personal injury, the local law of the state where the injury occurred *determines the rights and liabilities of the parties*, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

---

[1] Federal courts and the state of Massachusetts have also adopted this approach. See Dasha, 699 N.E.2d at 24; Aaron Ferer & Sons, Ltd., 731 F.2d at 121.

Restatement (Second) of Conflict of Laws (1971) § 146 (emphasis added). To determine which state has the most significant relationship, the Restatement provides:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state, which with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
>
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
>> (a) the place where the injury occurred,
>> (b) the place where the conduct causing the injury occurred,
>> (c) the domicile, residence, nationality, place of incorporation and place of business of the parties,
>> (d) the place where the relationship, if any, between the parties is centered.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Hataway, 830 S.W.2d at 59 (citing Restatement (Second) of Conflict of Laws, § 145). In other words, when determining what state's law applies, the court will look to the place where the injury occurred, the place where the conduct causing the injury occurred, where the parties are located, and the place where the relationship between the parties is centered. Id. (citations omitted).

### a.     The injury occurred in Tennessee.

Here, while the contaminated MPA was manufactured in Massachusetts, the alleged injury to the plaintiffs occurred in Tennessee. As this Court is aware, NECC sold some contaminated vials of MPA to SSC, owned in part by Dr. Lister. The plaintiffs presented to SSC and Dr. Lister for medical diagnosis and treatment in Tennessee. Dr. Lister, who had no knowledge or reason to know of the contamination, administered the MPA to the plaintiffs as part of epidural steroid injections he performed at SSC in

11

Tennessee. The plaintiffs allege the administration of those injections is the cause of their injuries.

The PSC admits the plaintiffs' injuries occurred in Tennessee, but yet argues that fact is merely "fortuitous." While there are Tennessee cases where the courts have found a place of injury to be "fortuitous," the facts of those cases are distinguishable from this case. See e.g. Hataway, 830 S.W.2d 53. For instance, in Hataway, the court found the fact that the decedent's injury actually occurred in Arkansas was merely fortuitous because the parties were domiciled in Tennessee, and were only in Arkansas as part of a college class taken in Tennessee. Id. at 54, 60. Here, the Tennessee plaintiffs sought medical diagnosis and treatment from the Tennessee defendants in Tennessee, where the alleged injuries occurred. As such, the plaintiffs were not merely in Tennessee by happenstance like the parties in Hataway, and, therefore, the fact that the plaintiffs were injured in Tennessee is not merely "fortuitous". See Id.

### b. The conduct allegedly causing the injury occurred in Tennessee.

The PSC argues because the Defendants' comparative fault defenses allege misconduct by parties in Massachusetts and the plaintiffs allege the defendants were negligent in selecting NECC to supply MPA, the conduct causing the injury occurred in Massachusetts. That argument, however, distorts the law and completely ignores the fact that the injections allegedly causing injury were administered in Tennessee.

When the location of the conduct causing the injury is in dispute, Tennessee courts look to where the primary issue involved occurred. See Wayland v. Peters, No. 03A01-9705-CV-00172, 1997 WL 776338, at *2 (Tenn. Ct. App. Dec. 17, 1997). Here, the crux of the plaintiffs' claims against the Defendants is that they suffered injury as a

result of the Defendants injecting them with contaminated drugs. Those injections occurred in Tennessee, not Massachusetts. Therefore, Tennessee has a more significant relationship as the place where the conduct causing injury occurred. The PSC has chosen to assert plaintiff-friendly causes of action under Tennessee law, but yet seeks to prohibit the defendants from having the protections afforded by Tennessee law.

### c. The domicile, residence, place of incorporation, and place of business between the parties are in Tennessee.

By the PSC's own admission, most of the Tennessee plaintiffs are domiciled in Tennessee, and all of the Tennessee Clinic Defendants are located in Tennessee. Dkt. No. 2004, p. 19. Clearly, this factor weighs in favor of Tennessee having the most significant relationship to the plaintiffs' claims.

### d. The relationship between the parties is centered in Tennessee.

The PSC would have this Court believe the relationship important to this factor is that between the Tennessee defendants and the Massachusetts defendants, but, quite frankly, the PSC is wrong. According to the Restatement (Second) Conflict of Laws:

> When there is a *relationship between the plaintiff and the defendant* and when the injury was caused by an act done in the course of the relationship, the place where the relationship is centered is another contact to be considered.

Restatement (Second) of Conflict of Laws § 145 cmt 2 (1971) (emphasis added). Ergo, the relationship the Restatement contemplates in relation to this factor is not that amongst the defendants, but rather is the relationship between the plaintiffs and the defendants existing at the time the injury occurred. Id. Therefore, the PSC's argument that the relevant relationship is that between the Tennessee defendants and

13

Massachusetts defendants is without merit, and certainly does not favor application of Massachusetts law.

Rather, the relevant relationship to be considered in determining which state has the most significant relationship to the issues is the relationship between the Tennessee plaintiffs and Tennessee defendants.  See Id.  As already discussed, the Tennessee plaintiffs sought medical diagnosis and treatment from the Tennessee defendants in Tennessee.  As a result, the place where the relevant relationships are centered is Tennessee, not Massachusetts.

### 3. Policy favors the application of Tennessee comparative fault law.

The PSC perfidiously characterizes this Court's decision on applicable law as a decision between a defendant not paying more than his "theoretical share of the fault" and fairness to the plaintiffs.  Dkt. 2004, p. 21.  It argues Tennessee adopted a comparative fault regime to "ensure that a defendant's liability is linked to its relative degree of fault regardless of whether such causes harsh consequences for innocent plaintiffs."  Dkt. 2004, p. 21.  In making this argument, however, it's obvious the PSC wants this Court to abandon the law and rule based on emotional reaction.

Tennessee law is clear that the doctrine of joint and several liability is obsolete. McIntrye, 833 S.W.2d at 58.  In coming to this conclusion, the Tennessee Supreme Court explained:

> Our adoption of comparative fault is due largely to considerations of fairness: the contributory negligence doctrine unjustly allowed the entire loss to be borne by a negligent plaintiff, notwithstanding the plaintiff's fault was minor in comparison to the defendant's.  Having thus adopted a rule more closely linking liability and fault, it would be inconsistent to simultaneously retain a rule, joint and several liability, which may fortuitously impose a degree of liability that is out of all proportion to fault.

Id.  To ensure fairness and efficiency, plaintiffs did not need to be barred from recovery if they were minimally negligent, and defendants needed to be able to allege that someone else caused or contributed to the plaintiff's injury.  Id.  Thus, the issue facing this Court is not to choose between fairness to the plaintiffs or fairness to the defendants, but rather to apply Tennessee comparative fault law to the Tennessee claims to ensure fairness to both the plaintiffs and the defendants.

## CONCLUSION

For the reasons set forth herein, the Defendants respectfully request this Court rule Tennessee law applies to the plaintiffs' claims, including the issues of joint and several liability and comparative fault.

Respectfully submitted,

 /s/ Parks T. Chastain
**PARKS T. CHASTAIN**[2]
**KENT E. KRAUSE**[2]
Attorneys for Defendant, Specialty Surgery Center, PLLC, and Dr. Kenneth R. Lister, M.D.
**BREWER, KRAUSE, BROOKS & CHASTAIN, PLLC**
P. O. Box 23890
Nashville, TN   37202-3890
(615) 256-8787 (PTC)
(615) 256-8985 (fax)
pchastain@bkblaw.com
kkrause@bkblaw.com

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be served electronically to the registered participants identified on the Notice of Electronic Filing and copies will be served via electronic mail or regular US mail to those participants identified as unregistered this the 7th day of  July, 2015.
 /s/ Parks T. Chastain
**PARKS T. CHASTAIN**

---

[2] Admitted *pro hac vice*
Order dated June 5, 2015 (Dkt No. 1938).