UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) ) ) ) ) ) ) |
| THIS DOCUMENT RELATES TO:<br><br>All cases against the Saint Thomas Entities | MDL No. 2419<br>Dkt. No 1:13-md-2419 (RWZ) |

**SAINT THOMAS ENTITIES' BRIEF AS TO CHOICE OF LAW ISSUES**

The Saint Thomas Entities[1] file this brief as to Choice of Law Issues responding to the Court's June 5, 2015, Order (Docket #1938) ("Order") and the *Plaintiffs' Steering Committee's Memorandum Regarding Choice of Law for Cases Originally Filed in Tennessee or New Jersey* (Docket #2004) ("PSC's Brief").

**PRELIMINARY STATEMENT**

This litigation arises out of an outbreak of fungal meningitis from contamination of pharmaceutical products compounded by New England Compounding Pharmacy, Inc. d/b/a New England Compounding Center ("NECC"). The Saint Thomas Entities have been sued vicariously for the administration of methylprednisolone acetate ("MPA") to plaintiffs by Saint Thomas Outpatient Neurosurgical Center ("STOPNC"), an ambulatory surgery center. Neither the Saint Thomas Entities nor STOPNC had any role in causing the contamination.

As a result of the recent settlements with NECC, the Insider Defendants,[2] and the National Defendants[3] (collectively, the "Settling Defendants"), the only claims remaining to resolve are

---

[1] Saint Thomas West Hospital, f/k/a St. Thomas Hospital, Saint Thomas Network, and Saint Thomas Health.

[2] The "Insider Defendants" are entities and individuals affiliated with NECC, including Barry and Lisa Cadden; Doug, Carla, and Greg Conigliaro; Glenn Chin; Alaunus Pharmaceutical, LLC; Ameridose, LLC; GDC Properties Management, Inc.; Medical Sales Management, Inc.; and Medical Sales Management, SW, Inc.

[3] "National Defendants" means all of the defendants not affiliated with NECC who had service agreements or arrangements with NECC or the Insider Defendants, but who did not purchase compounded product

1

against the local Healthcare Defendants,[4] which are spread across the country. The shape and focus of the lawsuits has changed from trying to find out what went wrong at NECC to determining what other parties may have liability for the Plaintiffs' injuries. The cases pending against the Saint Thomas Entities now involve Tennessee (and a handful of Kentucky) resident plaintiffs ("Tennessee Plaintiffs") seeking damages from Healthcare Defendants located in Tennessee ("Tennessee Defendants") for medical negligence and product liability claims asserted entirely under Tennessee law. All parties have correctly assumed the application of Tennessee law over these claims until the PSC's recent change of position in response to the Court's query. The PSC continues to agree that Tennessee law governs the substantive liability claims, but at the same time asserts that Massachusetts law governs the question of comparative fault defenses—even though the Massachusetts defendants have no exposure for any further liability as a result of the channeling injunction contained in the Bankruptcy Plan.

There is absolutely no basis for applying a different law to the affirmative defenses to these Tennessee causes of action. Doing so would expose the Tennessee Defendants—who played no part in, and had no knowledge of, the contamination—to the same level of liability as the parties ***actually responsible for*** the contamination, many of whom are being criminally prosecuted for their actions. The PSC's argument is simply an improper request to rewrite Tennessee law because it does not like the result that the Tennessee Supreme Court and General Assembly have mandated. But doing so would violate the legitimate expectations of the Tennessee parties and, more fundamentally, obviate Tennessee's considered policy choice to reject joint and several liability

---

from NECC, including UniFirst Corporation, ARL BioPharma Inc., Liberty Industries, Inc., Victory Mechanical Services, Inc., and Victory Heating & Air Conditioning Co.

[4] The "Healthcare Defendants" are the clinics/hospitals and their employees, physicians, nurses, staff, that injected their patients with NECC-manufactured MPA, and the organizations and individuals who are claimed to be liable to the Plaintiffs based upon their actual or apparent corporate relationship to the injecting individuals and entities.

because it "fortuitously imposes a degree of liability that is out of all proportion to the fault."[5] Neither the Tennessee Plaintiffs nor the Commonwealth of Massachusetts could have a legitimate expectation or interest in having Massachusetts law govern this Tennessee-centric dispute, so there is no basis for applying foreign laws to any part of the dispute—especially not the Saint Thomas Entities' defenses to the Tennessee claims against them.

## ARGUMENT AND AUTHORITIES

**I.      All of the Potentially Applicable Conflicts of Law Tests Employ the Restatement's Significant Relationship Factors**

Generally, federal courts sitting in diversity apply the choice-of-law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941). However, the default choice-of-law rules are unsettled in federal proceedings founded upon bankruptcy jurisdiction. *See Bianco v. Erkins (In re Gaston & Snow)*, 243 F.3d 599, 605 (2d Cir. 2001). But where relevant jurisdictions' choice-of-law rules yield the same result, courts need not make a determination of which rule ultimately governs. *See Reicher v. Berkshire Life Ins. Co. of Am.*, 360 F.3d 1, 4 (1st Cir. 2004); *see also Gray v. Tacason (In re Tacason)*, Bk. No. 12-11879, 2014 LEXISWL 7411596, at *4 (Bankr. D.N.H. Dec. 31, 2014) (finding no need to determine whether to choose between New Hampshire, the bankruptcy forum state, or federal common law because both follow the "most significant relationship" test).

The Saint Thomas Entities agree with the PSC that Tennessee's choice-of-law rules should govern, as the vast majority of the cases involving the Tennessee Defendants were originally filed in Tennessee courts.[6] *See Sutherland v. DCC Litig. Facility, Inc. (In re Dow Corning Corp.)*, 778 F.3d 545, 549 (6th Circ. 2015). Moreover, courts in this Circuit follow the rule that, when a suit is transferred and coordinated under 28 U.S.C. § 1407 for purposes of an MDL, the court is to

---

[5] *McIntyre v. Balentine*, 833 S.W.2d 52, 58 (Tenn. 1992).

[6] Only two cases involving STOPNC and the Saint Thomas Entities were filed directly in the MDL. That circumstance does not alter the choice-of-law analysis. *See Wahl v. General Elec. Co.*, 786 F.3d 491, 493-99 (6th Cir. 2015).

3

apply the choice of law rules of the transferor court with respect to substantive law. *See In re Volkswagen & Audi Warranty Extension Litig.*, 692 F.3d 4, 17 (1st Cir. 2012) (citations omitted); *In re New England Mut. Life Ins. Co. Sales Practices Litig. I*, 236 F. Supp. 2d 69, 74 (D. Mass. 2002) (transferee court must apply choice of law rule of transferor court, regardless of whether case is transferred under § 1404(a) or § 1407), *aff'd*, 346 F.3d 218 (1st Cir. 2003). The vast majority of cases filed against the Saint Thomas Entities by MDL Plaintiffs were originally filed in or removed to the Middle District of Tennessee and transferred to this Court pursuant to 28 U.S.C. § 1407(a), meaning that Tennessee choice of law principles apply.

## II.     Tennessee has by far the Most Significant Contacts with the Dispute

For tort claims, Tennessee follows the "most significant relationship" conflicts rule, providing that "the law of the state where the injury occurred will be applied unless some other state has a more significant relationship to the litigation." *Hataway v. McKinley*, 830 S.W.2d 53, 59 (Tenn. 1992). This test looks at several factors, including the place of injury, the place where the injury-causing conduct occurred, the citizenship of the various parties, and the place where the relationship between the parties is "centered." *Town of Smyrna, Tenn. v. Mun. Gas Auth. of Ga.*, 723 F.3d 640, 646-47 & n.3 (6th Cir. 2013). These contacts are to be evaluated according to their relative importance with respect to the particular issue. *See, e.g.*, RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 (1971). However, in a tort case, the law of the place of injury is entitled to a presumption that is overcome only if, in light of the other Restatement factors, another state actually has a more significant relationship with the case. *See Hataway*, 830 S.W.2d at 60 ("In an action for personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship . . . ." (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 146)); *see also In re Skelaxin (Metaxalone) Antitrust Litig.*, 299 F.R.D. 555, 586 (E.D. Tenn. 2014) ("The place of injury is, of course, the starting position."). Plaintiffs have not demonstrated that any

other state has an equal relationship to the Tennessee litigation; they have certainly failed to demonstrate that any other state has a ***more significant*** relationship than Tennessee.

The Plaintiffs in the Tennessee cases all resided in Tennessee or Kentucky at the time they were administered the MPA. The Tennessee Defendants all reside, practice, and/or operate in Tennessee. The Tennessee Plaintiffs have asserted Tennessee statutory and common law causes of action against these Tennessee Defendants related to injuries they allegedly suffered while undergoing medical treatment in Tennessee.[7] As the claims against the Saint Thomas Entities are made under Tennessee law and concern medical treatment, and alleged injuries that occurred in Tennessee, Tennessee should easily govern the application of substantive law to all claims against the Tennessee Defendants. *See, e.g.*, *Wahl v. General Elec. Co.*, 786 F.3d 491, 499-500 (6th Cir. 2015) (Tennessee had most significant contacts to products claims against manufacturer because plaintiff resided, was exposed to the product, suffered symptoms, and was diagnosed and treated for injury there); *Montgomery v. Wyeth*, 580 F.3d 455, 460-61 (6th Cir. 2009) (same result, even though plaintiff was prescribed the medication and bought some pills in Georgia).

Section 6 of the Restatement provides additional considerations relevant in any choice-of-law discussion: (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability, and uniformity of result, and (g) ease in the determination and application of the law to be applied. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6(2) (1971). These considerations also favor Tennessee law. As was the case in *Wahl*, "Tennessee has a far greater interest in a lawsuit by one of its own injured

---

[7] The PSC claims for the first time that they have asserted claims against the Tennessee Defendants under MASS. GEN. LAW § 93A. *See* PSC's Brief at 11 (citing *Second Amended Master Complaint* (Docket #1719) at ¶¶ 226-271; 301-325; 334-343). To the extent that this contention was not made in error, the Saint Thomas Entities intend to move to dismiss or summarily adjudicate such claims.

citizens against a drug manufacturer than does" the manufacturer's home state. *Wahl*, 786 F.3d at 499-500. In fact, until recently, the Court and all the parties have assumed the application of Tennessee law to the Tennessee Plaintiffs' claims in arguing and deciding the motion to dismiss. *See* Memorandum of Decision (Aug. 29, 2014) (Docket #1360) ("Order").

Even if the Court were to disagree and instead employ Massachusetts or federal common-law conflicts principles, the result should not change. Massachusetts also employs a "functional" approach that focuses on the place of the injury, unless another state has more significant contacts with the dispute,[8] and federal law looks to the Restatement (Second) of Conflicts of Laws to determine choice-of-law issues.[9] Consequently, under the facts presented, the same outcome obtains—application of Tennessee substantive law to these claims. As explained in part III, any defenses to these claims would likewise be governed by Tennessee law.

### III. Tennessee's Doctrine of Comparative Fault Unquestionably Applies to the Tennessee Plaintiffs' Claims

The PSC agrees with the Saint Thomas Entities to this point, but the parties dispute whether the Saint Thomas Entities' defenses to the indisputably Tennessee-based claims should likewise be governed by Tennessee law. The PSC frames the issue as whether "Massachusetts law should govern the issue of whether joint and several liability and comparative fault applies to claims pending against" the Healthcare Defendants, PSC's Brief at 5, which is not the appropriate question. The issue is whether a choice-of-law analysis can be used to abridge defenses to claims that arise under Tennessee law. The answer to that question is an unqualified no.

---

[8] *See Jasty v. Wright Med. Tech., Inc.*, 528 F.3d 28, 40 (1st Cir. 2008); *Geshke v. Crocs, Inc.*, 889 F. Supp. 2d 253, 260 (D. Mass. 2012) (collecting cases). Although Massachusetts considers a number of additional factors like the interest in the forum and the alternative state law in regulating conduct and redressing injury, *Cosme v. Whitin Mach. Works, Inc.*, 632 N.E.2d 832, 646-47 (Mass. 1994), all of those factors point to Tennessee with respect to the Tennessee Plaintiffs. By contrast, Massachusetts will have little, if any, interest in the dispute now that NECC and its affiliates are being dismissed pursuant to their settlements.

[9] *See, e.g.*, *Smith v. Quizno's Master, LLC (In re Bouley)*, 503 B.R. 524, 531 (Bankr. D.N.H. 2013) (collecting cases).

### A. Tennessee Deliberately Chose to Ensure That the Parties Be Assessed Liability Proportionate to Their Fault

In 1992, following the lead of many states around the country, Tennessee abolished the rights of indemnity and contribution among tortfeasors, *McIntyre v. Balentine*, 833 S.W.2d 52 (Tenn. 1992), adopting instead the principles of comparative fault, and the Tennessee Legislature statutorily approved comparative fault the following year, which has been codified as TENN. CODE ANN. § 20-1-119. As the Tennessee Supreme Court explained:

> Our adoption of comparative fault is due largely to considerations of fairness: the contributory negligence doctrine unjustly allowed the entire loss to be borne by a negligent plaintiff, notwithstanding that the plaintiff's fault was minor in comparison to the defendant's. ***Having thus adopted a rule more closely linking liability and fault, it would be inconsistent to simultaneously retain a rule, joint and several liability, which may fortuitously impose a degree of liability that is out of all proportion to fault.***

*McIntyre*, 833 S.W.2d at 58 (emphasis added). *McIntyre* emphasized that the goal is to link a party's liability to its actual degree of fault. *Id.*; *see also Owens v. Truckstops of Am.*, 915 S.W.2d 420, 424 (Tenn. 1996) ("Concepts of fairness and efficiency are the basis of comparative fault.").

Thus, a jury must apportion fault between all the plaintiff(s), the defendant(s), and any non-party designated by a defendant as being at fault for the injury. *See* TENN. CODE ANN. § 20-1-119. Through this process, the jury may attribute zero percent of the fault to the defendant zero, thus concluding that the non-parties are solely responsible for the injury at issue. And contrary to the PSC's continued representation of Tennessee law, *see* PSC's Brief at 15, comparative fault likewise applies to product liability claims because the product (MPA) is listed on the apportionment of fault question along with the parties and non-parties.[10] *See Owens*, 915 S.W.2d

---

[10] Although the Court denied the Tennessee Defendants' Motions to Dismiss the Tennessee Plaintiffs' product liability claims, that decision was largely based on the lack of Tennessee case law dealing with the interaction of product liability claims with the Tennessee Healthcare Liability Act and was not based on the merits of the Plaintiffs' claims. *See* Order at 28-31. The Saint Thomas Entities contend that Plaintiffs' product liability claims are without merit and intend to move for summary judgment at the appropriate time. Accordingly, it is an open question whether the Plaintiffs' product liability claims will proceed to trial.

7

at 433.  It is only that portion of the fault allocated to the product that results in joint and several liability among any defendants also held liable for injuries caused by the product.  *Id.* at 433 n.17.

Tennessee has steadfastly adhered to these principles.  *See, e.g.*, *Williams Holding Co. v. Willis*, 166 S.W.3d 707, 712 (Tenn. 2005) ("[U]nder principles of comparative fault, a non-settling defendant is *not* entitled to a credit for amounts paid by a settling defendant because the non-settling defendant is required to pay damages based on his or her percentage of fault."); *Dotson v. Blake*, 29 S.W.3d 26, 29 (Tenn. 2000) (holding that defendant should have been able to assert the fault of immune non-parties:  "Otherwise, liability might be imposed disproportionately to fault, a result plainly inconsistent with our comparative fault scheme."); *Carroll v. Whitney*, 29 S.W.3d 14, 20 (Tenn. 2000) ("In *McIntyre*, we rejected contributory negligence and joint and several liability in favor of comparative negligence to achieve a fairer and tighter fit between fault and liability.  This 'fair and tight fit' is lost, however, when some participants to an act of negligence are excluded from the apportionment of fault.").  Considering that all of the remaining parties are Tennessee citizens or sought treatment in Tennessee,[11] Tennessee's deliberate policy choice should be respected, leaving no room for argument that another state has a more significant relationship to any part of this dispute.

> **B.     The Choice of Law Analysis Relates Only to *Parties* Seeking Affirmative Relief or Against Whom Affirmative Relief Is Sought**

The PSC nonetheless argue that Massachusetts law has the most significant relationship to the "issues of whether to apply joint and several liability and/or comparative fault" and base this assertion on the fact that:  (i) the contaminated medication was manufactured in and marketed from Massachusetts; (ii) the entities playing a role in such manufacture and/or marketing have entered into settlements in bankruptcy proceedings pending in Massachusetts; and (iii) the Healthcare

---

[11] The Kentucky residents have not pressed for application of Kentucky law.  Nor would that make sense, considering that they sought treatment from Tennessee healthcare providers and allege to have been injured in Tennessee.

8

Defendants "now attempt to attribute fault to and gain substantial discovery from numerous parties located in Massachusetts." PSC's Brief at 6. At the outset, the PSC's numerous references to the Settling Entities as "parties" is inaccurate at best. NECC is not a party in any of the cases pending against the Tennessee Defendants, and the remaining Settling Entities in the process of being dismissed and will certainly be non-parties to the Tennessee cases by the time the first trial begins.

This distinction—whether the Settling Entities are parties or non-parties—controls the Court's choice of law analysis. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 (1971) ("The rights and liabilities *of the parties* with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and *the parties* under the principles stated in § 6." (emphasis added)); *id.* § 146 ("In an action for personal injury, the local law of the state where the injury occurred determines the rights and liabilities of *the parties*, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and *the parties*, in which event the local law of the other state will be applied." (emphasis added)); *see Hataway*, 830 S.W.2d at 59 (adopting Second Restatement approach with respect to tort actions). As indicated by the emphasized passages above, the conflict of laws analysis is concerned with only the rights and liabilities of the parties, not non-parties. Accordingly, the PSC's arguments that this Court should apply the "most significant relationship" test to non-parties—which, by sheer virtue of being non-parties, have no rights or liabilities in these cases—is meritless.

### C. The "Issue" is Which State's Law Governs the Tennessee Defendants' Affirmative Defenses to the Tennessee Claims

As noted, the question before the Court is not which state's law applies regarding issues of joint and several liability and comparative fault, as the PSC contends. *See* PSC's Brief at 11. The question, instead, is which state's law governs the Tennessee Defendants' ability to assert their affirmative defenses. In Tennessee, comparative fault is an affirmative defense in which an alleged

9

tortfeasor asserts "that a portion of the fault for the plaintiff's damages should be allocated to another tortfeasor." *Banks v. Elks Club Pride of Tenn. 1102*, 301 S.W.3d 214, 220 (Tenn. 2010); TENN. R. CIV. P. 8.03 (listing comparative fault among list of affirmative defenses). The PSC concedes that comparative fault is an affirmative defense under Tennessee law. *See* PSC's Brief at 14. As the Tennessee Plaintiffs have also conceded that Tennessee law governs their claims, it is axiomatic that Tennessee law governs the Defendants' defenses to those claims.

> **D. Tennessee Has the Most Significant Relationship to the Defendants' Affirmative Defenses, Including Comparative Fault**

As explained above in part II, Tennessee unquestionably has the most significant relationship to the disputes involving the Tennessee Defendants and indisputably governs the claims against them. If the Court were, however, to consider the Tennessee Defendants' defenses under a choice-of-law analysis separate from the liability questions, it would reach the same conclusion. Parsing through the Restatement factors, the PSC first attempts to diminish the importance of the place of injury, going so far as to characterize it as "fortuitous" to have occurred in Tennessee. *See* PSC's Brief at 18. The fact that injury occurred in Tennessee where these plaintiffs sought medical treatment and were injected with steroids as part of that treatment is anything but fortuitous. This is particularly true, given that the Tennessee Plaintiffs had pre-existing patient relationships with the Tennessee healthcare providers who administered the MPA or sought the injections based on a referral from another Tennessee healthcare provider. And the fact that NECC and the Insider Defendants at a minimum knew exactly where these products were being shipped belies any argument that the place of injury was merely fortuitous. *See Yocham v. Novartis Pharms. Corp.*, 736 F. Supp. 875, 882 (D.N.J. 2010) ("Where a party is domiciled in the place of injury, purchases the allegedly defective product there, and uses it only there, the place of injury is not fortuitous.").

As to the injury-causing conduct, the PSC focuses solely on the locations of NECC and the Insider and National Defendants[12] to the exclusion of the Tennessee Defendants and bases its argument on the Tennessee Defendants' comparative fault allegations.  *See* PSC's Brief at 18-19.  This argument is at some tension with the PSC's position that, now that the actual wrongdoers have settled and all of the injury-causing conduct at issue was occasioned by the Tennessee Defendants in Tennessee.  As the issue confronting the Court involves the Tennessee Defendants' ability to assert affirmative defenses in response to the Plaintiffs' substantive Tennessee claims, the Plaintiffs' allegations of injury-causing conduct control the Court's analysis.[13]  In any event, considering that the comparative fault defense involves ***comparison*** of the Tennessee parties' actions to the actions of the out-of-state non-parties, Tennessee is at least equally implicated by this factor.  When considering further that ***none*** of the out-of-state actors has any potential liability, Tennessee should easily have the most significant relationship to the injury-causing conduct.

The third Restatement factor focuses on the "domicile, residence, nationality, place of incorporation, and place of business of the ***parties***."  RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2)(c) (emphasis added).  It does not include settled non-parties who have no exposure for liability.  Properly understood, Tennessee is the only state implicated.

As to the fourth Restatement factor, the PSC again myopically focuses on Massachusetts in suggesting that the relationships between the Tennessee Defendants and the Settling Defendants

---

[12] There are other comparative fault entities, such as the U.S. Food and Drug Administration and the Massachusetts Board of Registration in Pharmacy, but these entities are also immune from paying any judgment rendered in the Tennessee cases.  As with the Settling Defendants, these other entities' status as non-parties means that they should not be considered in the choice-of-law decision.

[13] As the governing Master Complaint currently stands, the only substantive allegations of injury-causing conduct against non-Tennessee entities in the Tennessee cases are against UniFirst Corporation and Liberty Industries, Inc., *see* Second Amended Master Compl. at 39-44 (Docket #1719), who had not yet settled at the time the Second Amended Master Complaint was filed in March 2015.  In light of the Court's recent Show Cause Order indicating the Court's intention to "dismiss with prejudice all claims of any type" against UniFirst and Liberty Industries, among the other Settling Defendants, *see* June 18, 2015, Order (Docket #1992), the Saint Thomas Entities anticipate that the PSC's allegations against UniFirst and Liberty will soon be dismissed, leaving only the Tennessee Plaintiffs' claims against the Tennessee Defendants.

are centered there.  That is not the "relationship" the Court is to consider.  *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 cmt 2 (1971) ("When there is a relationship ***between the plaintiff and defendant*** and when the injury was caused by an act done in the course of the relationship, the place where the relationship is centered is another contact to be considered." (emphasis added)).  The only relevant relationships are entirely and indisputably centered in Tennessee.  Moreover, the argument ignores the fact that NECC and the Insider Defendants actively solicited STOPNC in order to sell NECC's products in Tennessee, not Massachusetts.

As explained above in part III.A., Massachusetts has no current interest in enforcing its laws of joint and several liability in a Tennessee court—especially when its citizens cannot be impacted and therefore not deterred—by the verdict.  By contrast, Tennessee's interests will be offended if the Court were to bypass its chosen policy of treating all defendants fairly and according to their respective level of fault.

The PSC's uniformity argument, PSC's Brief at 22, falls flat, especially when considering that these cases will be tried entirely under local law in local fora.  The *Iskowitz* opinion involved a very different circumstance where the competing comparative/contributory actors were all to be tried in the same case or cases.  Once again, the anticipated dismissal of all but the Tennessee Defendants removes any such argument here.

The PSC stops there with its analysis of the Restatement factors, *see* part II above—perhaps because those factors so clearly favor application of Tennessee law.  For example, "the protection of justified expectations" can only be viewed as supporting Tennessee law.  Tennessee patients and their local healthcare providers would legitimately expect that their disputes will be governed by local law.  The basic policies underlying tort law promote local disputes being determined by local law—especially where personal injuries are involved.  *See, e.g.*, *Wahl*, 786 F.2d at 499-500. The scales are tipped heavily in favor of Tennessee law for all aspects of the claims to be tried.

### E.    Massachusetts Has No Relationship—Let Alone the Most Significant One—to the Tennessee Parties

The PSC's entire argument hinges on its erroneous assumption that more than one state has "an interest in whether the tortfeasors can be held jointly and severally liable and whether comparative fault should apply." PSC's Brief at 12.  As noted above, at this time, Tennessee alone has that interest.  It is also noteworthy that each of the cases the PSC cites for its argument that the affirmative defenses should be analyzed under a different law involved claims against co-defendants where the implications of the choice-of-law analysis bore directly on their rights.  *See In re Air Crash Disaster,* 559 F. Supp. 333, 352 (D.D.C. 1983) (application of comparative fault rule to insure "fair treatment of defendants" was appropriate, in particular when considering that application of joint and several liability "would most certainly offend the legitimate and profound interest of the defendants' home states"); *see also Sulak v. Am. Eurocopter Corp.*, 901 F. Supp. 2d 834, 840-41 (N.D. Tex. 2012) (defendant impleading third party); *Iskowitz v. Cessna Aircraft Co.*, No. 07-cv-00968-REB-CBS, 2010 WL 3075476, at *8  (D. Colo. Aug. 5, 2010) (noting that it was "not feasible" to apply joint and several liability to some claims and defendants and comparative fault to others for same liability); *Erny v. Estate of Merola*, 792 A.2d 1208, 1218 (N.J. 2002) (applying New York law to defendants' respective responsibilities for auto accident where both defendants were New York residents and New York had specifically exempted auto accidents from comparative liability statute); *Munguia v. Bekins Van Lines, LLC*, No. 1:11-cv-01134-LJO-SKO, 2012 WL 5198480 (E.D. Cal. Oct. 19, 2012) (granting plaintiffs' motion for choice of law to establish California law as applicable concerning issue of comparative fault applicable to plaintiffs and defendants in the litigation, not non-parties).

Here, the Massachusetts defendants have no further liability, and Massachusetts cannot

13

have any interest to defend in these Tennessee cases.[14]  By contrast, applying joint and several liability to the Tennessee Defendants "would most certainly offend the legitimate and profound interests of the defendants' home state[]"—Tennessee.  *Air Crash*, 559 F. Supp. at 352.

## IV. Fault-Based Discovery Against the Settling Parties and Non-Parties Is Inevitable

In the remote event the Court were to find Massachusetts law to require the application of joint and several liability, that determination would not obviate the fault-based discovery that the Saint Thomas Entities and other Healthcare Defendants must pursue.  Under Massachusetts law, a jury must apportion fault between only the plaintiff and the defendant; the fault of non-parties is not to be taken into account in the apportionment.  *See* MASS. GEN. LAWS ch. 231, § 85 (2015).

Although Massachusetts does not employ comparative fault for tort liability, the Saint Thomas Entities are nonetheless entitled to argue that the responsibility for the Plaintiffs' injuries lies entirely with the Settling Defendants (and potentially others), many of whom are under criminal investigation and indictments for their conduct.  If successful, that proof would afford the Saint Thomas Entities a complete defense to the Tennessee Plaintiffs' claims against them:

> ***[A] defendant is relieved from all liability if it can show that the injury was legally caused in its entirety by other persons or entities*** -- that is, that the ***sole proximate cause*** of the injury was elsewhere, and not in the defendant.

*Allen v. Chance Mfg. Co.,* 873 F.2d 465, 467 (1st Cir. 1989) (emphasis added) (citing *Correia v. Firestone Tire & Rubber Co.*, 446 N.E.2d 1033, 1039 (Mass. 1983)); *see also In re Mass. Asbestos Cases*, 639 F. Supp. 1, 1 (D. Mass. 1985) (following *Correia*).

Accordingly, under either state's negligence law, the discovery disputes pending before this Court and likely to arise in the future concern relevant evidence that is discoverable under

---

[14] To the extent the PSC argues that the Commonwealth of Massachusetts has an interest in the issue of whether the Tennessee Defendants will be permitted to assert their comparative fault affirmative defenses because the issue could conceivably affect Massachusetts residents' discovery obligations, this argument is without merit.  As explained below in part IV, the Healthcare Defendants are required to pursue the same discovery irrespective of this Court's ruling on the applicable law governing affirmative defenses.  Moreover, any interest that the Commonwealth of Massachusetts may have in its residents' discovery obligations is protected by the Federal Rules of Civil Procedure, case law from Massachusetts federal courts and the First Circuit interpreting the rules of civil procedure, and this Court's discretion.

Federal Rule of Civil Procedure 26 because they are relevant to the parties' claims and defenses, regardless of which state's law is applied. *See Saint Thomas Entities' Master Answer and Affirmative Defenses to Plaintiffs' Amended Master Complaint* (Docket #1464) at 52; 55-56 (pleading that they did not "proximately cause any damages alleged by Plaintiffs," which "are the consequence of independent, intervening, and superseding causes, and the acts of third persons," who "caused or contributed to cause the injuries" at issue and should be allocated fault).

With respect to the indicted individuals, a third party's criminal act is a superseding, intervening cause, which relieves a defendant of liability for negligence, when the criminal act is not reasonably foreseeable. *See Louria v. Brummett*, 916 S.W.2d 929, 930 (Tenn. Ct. App. 1995); *Copithorne v. Framingham Union Hosp.*, 401 Mass. 860, 862 (Mass. 1988). Accordingly, the discovery being sought by those attempting to avoid it is especially relevant to the Saint Thomas Entities' defenses under either state's law.

## CONCLUSION

The correct question confronting the Court is what state's choice of law applies to the Tennessee Defendants' affirmative defenses, and that question is answered by engaging in a choice of law analysis that evaluates which state has the most significant relationship to the rights and liabilities of the ***parties***—not non-parties which have no potential for liability. Tennessee has the most significant relationship to the issue of whether the Saint Thomas Entities can assert Tennessee affirmative defenses to claims that arise under Tennessee law, are brought almost entirely by persons residing in Tennessee, and arise out of medical treatment rendered in Tennessee by Tennessee healthcare practitioners, and in which the only defendants reside and operate in Tennessee. For all of these reasons, the Saint Thomas Entities request that the Court reject the PSC's extraordinary contention that Massachusetts law governs the Saint Thomas Entities' ability to assert Tennessee defenses in response to Tennessee claims and instead find that Tennessee law governs all issues related to the rights and liabilities of the parties to the Tennessee cases.

SAINT THOMAS WEST HOSPITAL,
FORMERLY KNOWN AS ST. THOMAS
HOSPITAL, SAINT THOMAS NETWORK,
AND SAINT THOMAS HEALTH

By their attorneys,
*/s/ Sarah P. Kelly*
Sarah P. Kelly (BBO #664267)
skelly@nutter.com
NUTTER McCLENNEN & FISH LLP
Seaport West
155 Seaport Boulevard
Boston, Massachusetts  02210
(617) 439-0000
(617) 310-9461


Dated:  July 8, 2015

OF COUNSEL:

Yvonne K. Puig*
Texas State Bar No. 16385400
yvonne.puig@nortonrosefulbright.com
Adam T. Schramek*
Texas State Bar No. 24033045
adam.schramek@nortonrosefulbright.com
Eric J. Hoffman*
Texas State Bar No. 24074427
eric.hoffman@nortonrosefulbright.com

NORTON ROSE FULBRIGHT US LLP
98 San Jacinto Blvd. Suite 1100
Austin, Texas 78701
(512) 536-2450
(512) 536-4598 (FAX)

Marcy Hogan Greer*
Texas State Bar No. 08417650
mgreer@adjtlaw.com

ALEXANDER DUBOSE JEFFERSON & TOWNSEND LLP
515 Congress, Suite 2350
Austin, Texas 78701
(512) 482-9300
(512) 482-9303 (FAX)

*Appearing *Pro Hac Vice*

## CERTIFICATE OF SERVICE

This certifies that a true and accurate copy of the foregoing was served on all parties of record by virtue of the Court's electronic filing system this 8th day of July, 2015.

*/s/ Sarah P. Kelly*
SARAH P. KELLY

2835678.1