**Blumberg & Wolk, LLC**
158 Delaware Street
P.O. Box 68
Woodbury, NJ 08096
(856) 848-7472

*Counsel for Defendants Premier Orthopaedic and Sports Medicine Associates of Southern New Jersey, LLC, trading as Premier Orthopaedic Associates, Premier Orthopaedic Associates Surgical Center, LLC, Kimberly Yvette Smith, M.D., a/k/a Kimberly Yvette Smith-Martin, M.D., Thomas Dwyer, M.D., Richard C. DiVerniero, M.D., John Catalano and Richard Strauss, M.D.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | |
| THIS DOCUMENT RELATES TO: All New Jersey Cases Naming Premier Orthopaedic and Sports Medicine Associates of Southern New Jersey | MDL No. 2419 Docket No. 1:13-md-2419 (RWZ) |

**PREMIER ORTHOPAEDIC AND SPORTS MEDICINE ASSOCIATES OF SOUTHERN NEW JERSEY, LLC, ET AL'S MEMORANDUM REGARDING CHOICE OF LAW**

# TABLE OF CONTENTS

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

   A. **Where Federal Jurisdiction is Based Upon the Bankruptcy Proceedings, Choice-Of-Law Rules for the Original Forum State Should Govern** . . . . . . . . . . . . . . . . 2

   B. **New Jersey's Substantive Tort Law Applies Regardless of Whether the Choice-of-Law Rule of New Jersey, Massachusetts, or Federal Common Law is Used** . . . . .

      1. New Jersey, Massachusetts, and the Federal Common Law Follow the *Restatement (Second) of Conflicts of Laws'* "Most Significant Relationship" Test For Determining Controlling Law When Conflicts Exist. . . . . . . . . . . . . . 4

      2. Under the "Most Significant Relationship" Test the PSC Has Not Overcome The Presumption That New Jersey Law Controls . . . . . . . . . . . . . . . . . . . . . . . 6

         i.   Contacts Between New Jersey and the Occurrence At Issue Are Overwhelming . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

         ii.  Interest of Interstate Comity Favors Application of New Jersey Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

         iii. Interests of the Parties Favor Application of New Jersey Law. . . .8

         iv.  Interests Underlying the Field of Tort Law Favor Application of New Jersey Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

         v.   Interests of Judicial Administration Favor Application of New Jersey Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

         vi.  The Competing Interests of the States Favors the Application of New Jersey Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

      3. New Jersey's "Most Significant Relationship" Test Extends To A Determination of the Law Regarding Potential Liability of the Premier Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

   C. **No Purpose of Massachusetts Law Would Be Served By Imposing Joint And Several Liability Upon the Premier Defendants** . . . . . . . . . . . . . . . . . . . . . . . . 12

IV.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## I. INTRODUCTION

As the Court well knows, this litigation arose from the compounding of injectable steroids by the New England Compounding Company ("NECC") based in Framingham, Massachusetts, in 2012. These steroids were distributed to customers across the country. The Premier Defendants were one subset of NECC's customers, located solely in New Jersey. In the early fall of 2012 it was discovered that the injectable methylprednisolone acetate ("MPA") was contaminated with fungus, creating an outbreak of fungal meningitis.

After the outbreak of fungal meningitis in 2012 which was sourced to NECC by the CDC, plaintiffs across the country filed suits in their various home forums at both the state and federal levels, naming NECC and its affiliates, as well as vendors who provided services to NECC, and the individual plaintiffs' providers, as defendants. NECC filed for Chapter 11 bankruptcy and Plaintiffs lost the opportunity for restitution from the company at fault for compounding the tainted drugs.

In February, 2013 all related federal actions across the nation were consolidated into this multi-district litigation, located in the United States District Court for the District of Massachusetts. Many entities eventually entered mediation that was sponsored by the bankruptcy proceeding. As of May 2015 all national defendants and a select few state defendants contributed to the bankruptcy estate in exchange for an injunction against liability in the future. The right to pursue discovery for the benefit of non-settling defendants was preserved.

In the course of discovery, various defendants including the Premier Defendants requested discovery from the settling defendants, whose actions had nonetheless contributed to the Plaintiffs' injuries. The Premier Defendants' basis for these requests rests upon proving the proximate cause of the Plaintiffs' injuries, proving Premier's own reasonable conduct, and the comparative fault regime of liability apportionment which is the New Jersey law that governs the Premier Defendants.

Following the discovery delays resulting from the settling defendants' resistance to these requests, and in light of the import of the ultimate determination as to which state's law would govern apportionment of liability, the Court directed the PSC and certain defendants including

the Premier Defendants to submit briefings on the arising choice-of-law issues and their ultimate implications for the applicable substantive law regarding comparative fault.

In response to this June 5, 2015 Order, the Premier Defendants submit the following.

## II.     SUMMARY OF ARGUMENT

The Premier Defendants maintain that the "most significant relationship" test applies to determine the choice of law with respect to the rights *and* liabilities of the parties. Furthermore, a thorough analysis of the § 145 contacts and § 6 principles of the "most significant relationship" test as required by the *Restatement (Second) of Conflicts of Laws* demonstrates not only that New Jersey law presumptively applies, but that all contacts are purely New Jersey-based and that Massachusetts does not have any interest significant enough to override that of New Jersey.

The PSC agrees that the "most significant relationship" test is the proper means to determine applicable state law. However, the PSC argues that Massachusetts law should apply because, as a result of the Premier Defendants' need to obtain discovery from Massachusetts-based "Settling Defendants," Massachusetts has an overriding interest in the application of its law to this litigation's pretrial proceedings. This argument ignores the fact that Massachusetts only has an interest in regulating Massachusetts-based corporations, which have largely removed themselves from this litigation through settlement or bankruptcy. With their voluntary removal, so too were Massachusetts' interests removed.

## III.    ARGUMENT

### A. Where Federal Jurisdiction is Based Upon the Bankruptcy Proceedings, Choice-Of-Law Rules for the Original Forum State Should Govern

This section responds directly to #1 of the Court's June 5, 2015 Order. Dkt. 1938, p. 1-2. As the Court noted, the Federal Districts are split as to whether original forum or federal common law should supply the choice-of-law rules for the cases filed outside New Jersey in situations where this Court's jurisdiction is premised on the bankruptcy proceedings. In re Lindsay, 59 F.3d 942, 984 (9th Cir. 1995) (federal common law); In re Coudert Bros, LLP, 673 F.3d 180 (2nd Cir. 2012) (original forum).

Somewhat more recently than In re Lindsay, the 2nd Circuit indicated that "[w]here … a bankruptcy proceeding is transferred to a Federal District Court for trial, the choice of law principles of the state in which the District Court sits control unless the case implicates a significant federal bankruptcy policy, in which event federal choice of law rules apply." In re Gaston & Snow, 284 B.R. 349 (S.D.N.Y 2002), citing In re Gaston & Snow, 243 F.3d 599, 605-07 (2nd Cir. 2001). In fact, within the last three years the Bankruptcy Court in the District of New Hampshire declined to resolve the unsettled issue of the controlling choice of law in a similar context because the federal common law and the original forum state's choice-of-law were substantially the same – the "most significant relationship" test. In re Bouley, 503 B.R. 524, 531 (D.N.H. 2013).

For the practical purposes of the Premier Defendants, the distinction between original forum state and federal common law choice-of-law analysis is meaningless. Both the federal common law and original forum of New Jersey apply the "most significant relationship" test sourced from the *Restatement (Second) of Conflicts of Laws*. Aaron Ferer & Sons, Ltd v. Chase Manhattan Bank, 731 F.2d 112 (2d Cir. 1984); In re Engage, Inc., 330 B.R. 5, 9 (D. Mass. 2005); P.V. ex rel. T.V. v. Camp Jaycee, 197 N.J. 132, 136, 962 A.2d 453, 455 (2008).

Accordingly, the Premier Defendants urge the Court to follow more recent precedent from the 2nd Circuit in applying the original forum state's choice-of-law analysis, as New Jersey law provides a thorough analysis of the "most significant relationship" test. In re Coudert Bros, LLP, 673 F.3d at 188. In this matter of applying the original forum state's choice-of-law analysis, the Premier Defendants are in agreement with the PSC.

However, the Premier Defendants oppose the PSC's argument that there is an exception in choice-of-law analysis which would require application of Massachusetts law to issues of

3

liability; the Premier Defendants further dispute the PSC's suggestion that Massachusetts has, under the "most significant relationship" test, superior contacts which require the application of Massachusetts law.

### B. New Jersey's Substantive Tort Law Applies Regardless of Whether the Choice-of-Law Rule from New Jersey, Massachusetts or Federal Common Law is Used

There is precedent that "in multi-district litigation under 28 U.S.C. 1407, the transferee court applies the state law that the transferor court would have applied" in a situation where a contaminated product was alleged to have caused hundreds of hospitalizations in forty-eight states across the nation. In re ConAgra Peanut Butter Prods. Liab. Litig., 251 F.R.D. 689 (citing Murphy v. F.D.I.C., 208 F.3d 959, 965 (11th Cir. 2000)).

All jurisdictions at issue apply the "most significant relationship" test outlined in the *Restatement (Second) of Conflicts of Laws* to determine which state's law controls when there are multiple substantially different laws potentially applicable. A thorough analysis under this test reveals that for the Premier Defendants, New Jersey comparative fault law will apply to determine the parties' liabilities. The PSC's argument is not a true analysis, disregards the importance of the state in which the injury occurred, and ultimately fails to overcome the presumption that New Jersey law will control.

#### 1. New Jersey, Massachusetts, and the Federal Common Law Follow the *Restatement (Second) of Conflicts of Laws*' "Most Significant Relationship" Test For Determining Controlling Law When Conflicts Exist

This section responds directly #2, #3, and #5 of the Court's June 5, 2015 Order. Dkt. 1938, p. 2. The "most significant relationship" test of the *Restatement (Second) of Conflict of Laws* controls in New Jersey since that state's Supreme Court explicitly adopted and laid out a step-by-step choice of law analysis under this test in 2008. 197 N.J. at 136, 962 A.2d at 455.

4

Massachusetts also follows the "most significant relationship" test of the second *Restatement*, as does Federal Common Law.  In re Engage, Inc., 330 B.R. at 9.

Under this test, the Court must initially determine that there is a distinction between the substance of potentially applicable laws. 197 N.J. at 143, 962 A.2d at 460. Then, per § 146 of the *Restatement*, which applies to torts cases, there is an initial presumption that the local law of the state where the injury occurred "determines the rights and liabilities of the parties." 197 N.J. at 141, 962 A.2d at 459. Under New Jersey law, "the state in which the injury occurs is likely to have the predominant, if not the exclusive, relationship to the parties and issues in litigation." 197 N.J. at 144, 962 A.2d at 461.

This presumption is only overcome if another state has more significant relationship to the parties and issues. 197 N.J. at 143, 962 A.2d at 460. The test to determine whether another state has a more significant relationship to the parties and issues is an examination of the "contacts set forth within § 145 and the cornerstone principles of § 6 [of the *Restatement (Second) of Conflicts of Laws*]." 197 N.J. at 144-45, 962 A.2d at 461. The purpose of this examination is to ensure application of the "law of the state [with] the strongest connection to the case." 197 N.J. at 155, 962 A.2d at 467.

The contacts set forth in § 145 are: "(a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and; (d) the place where the relationship, if any, between the parties is centered." 197 N.J. at 140-41, 962 A.2d at 458-59, citing RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 145(2)(a)-(d) (1971). The cornerstone principles of § 6 are "(1) the interests of interstate comity; (2) the interests of the parties; (3) the interests underlying the field of tort law; (4) the interests of judicial administration; and (5) the

competing interests of the states." 197 N.J. at 147, 962 A.2d at 463, citing Erny v. Estate of Merola, 171 N.J. 86, 101-02, 792 A.2d 1208 (2002).

### 2. Under the "Most Significant Relationship" Test the PSC Has Not Overcome The Presumption That New Jersey Law Controls

Here, the Court has recognized that a conflict of laws exists. New Jersey comparative fault law will allow the Premier Defendants to apportion liability between all named Defendants, settled or not, to the NECC litigation; thus ensuring that the Premier Defendants are only held liable, if at all, for conduct which they had the power to control. Massachusetts law of joint and several liability would in contrast leave the Premier Defendants potentially liable for the whole of Plaintiffs' injuries, including for conduct over which the Premier Defendants had no control – such as NECC's crimes.

The initial presumption favors the state in which the injury occurred. Here, the Plaintiffs sustained injury when injected with tainted or (in some cases) potentially tainted steroids. For all Premier Plaintiffs and the Premier Defendants, these injections occurred in New Jersey; leading to an initial presumption that New Jersey law – and its joint tortfeasor liability statute – controls.

### i. Contacts Between New Jersey and the Occurrence At Issue Are Overwhelming

The PSC is unable to overcome this presumption through an examination of the Restatement's § 145 contacts. The injury at issue is the injection with tainted steroids; this occurred in New Jersey. The conduct which Plaintiffs in the Premier cases allege as the source of their injury is Premier's decision to purchase MPA from NECC. This decision was made in New Jersey, by employees of Premier. Third, Premier is located solely in New Jersey, which is both its place of incorporation and principal place of business. The Plaintiffs treated at Premier are also all New Jersey residents, many of whom initially filed in New Jersey courts and thus can be

inferred to have purposefully availed themselves of New Jersey law. Finally, the relationship between the New-Jersey based corporation, and the New Jersey Plaintiffs treated at Premier, is centered entirely in New Jersey.

At no point during examination of any of these § 145 contacts did a state other than New Jersey enter into consideration. In their argument, the PSC mischaracterizes the relationship at issue as that between the Premier Defendants and the Massachusetts Settling Defendants. This is incorrect. As ably stated by certain Tennessee Defendants, the relationship contemplated by the *Restatement (Second) of Conflicts of Laws* for analysis under § 145 is that between the plaintiff(s) and defendant(s); not that between defendants. Dkt. 2064, p. 13-14, citing RESTATEMENT § 145 cmt 2 (1971).

Additionally, the PSC relies on a single case from the District of Colorado as support for their assertion that the "place of the injury takes on less importance" when that place is "fortuitous." Dkt. 2004, p. 18. The Premier Defendants fail to see how the place of the plaintiffs' injuries can be "fortuitous" when the plaintiffs' injuries for which the Premier Defendants are being sued could not have taken place anywhere *other than* New Jersey. Further, this is in direct contradiction to the overriding importance given to the place of the injury by New Jersey law, which the PSC has already conceded should control.

### ii. Interest of Interstate Comity Favors Application of New Jersey Law

Moreover, even accounting for the *Restatement*'s § 6 principles is insufficient to overcome the presumption that New Jersey law controls. The interests of interstate comity favor harmonious interactions between the states through clear determinations of the controlling law in litigation where multiple states' laws may apply. Accordingly, where one state clearly has more significant contacts with the litigation and a higher interest in the application of its law, that

state's law should be favored under this factor. New Jersey's contacts under § 145 are, as demonstrated, superior to those of Massachusetts for the Premier Defendants.

### iii. Interests of the Parties Favor Application of New Jersey Law

Further, the interests of the parties are given weight here; those parties being only those still involved in the litigation at present. Accordingly, the interests of the New Jersey plaintiffs suing the New-Jersey based Premier Defendants ought to supersede the near-nonexistent interests of Massachusetts corporations which have voluntarily removed themselves from the concerns of this litigation through settlement. Notably, prior to the formation of this multi-district litigation the New Jersey plaintiffs all filed in New Jersey courts and did not seek to purposely avail themselves of the law of any other forum by attempting to file elsewhere.

### iv. Interests Underlying the Field of Tort Law Favor Application of New Jersey Law

The field of tort law has an interest in fundamental fairness: a balancing of the ability of the innocent plaintiff to obtain redress for his wrongs, with the right of a defendant to only be held liable, if at all, for conduct which that defendant had the power to control. Generally, application of strict joint and several liability has been on the decline, with the majority of states (including New Jersey) opting to apply either a pure or modified comparative fault scheme.

Here, the PSC has lost the opportunity of just redress against NECC due to that company's Chapter 11 filing. The PSC has agreed to settle with many more Massachusetts companies, and accordingly has agreed that these Defendants' settlement payments were sufficient to redress the Plaintiffs' wrongs. Neither of these facts then would justify holding the Premier Defendants wholly liable for NECC's wrongs or the entirety of the Plaintiffs' injuries, as the PSC proposes through its argument for Massachusetts joint and several liability to override New Jersey's modified comparative fault scheme. The Premier Defendants seek to apply a

comparative fault scheme in part to address that the "Settling Defendants'" contributions align with their percentages of fault.

### v. Interests of Judicial Administration Favor Application of New Jersey Law

The interests of judicial administration are advanced by application of New Jersey law to New Jersey plaintiffs and the New Jersey Premier Defendants in this multi-district litigation. The consolidation of "civil actions involving one or more common questions of fact … pending in different districts" into an MDL such as this one occurs under 28 U.S. Code § 1407 "for coordinated or consolidated *pretrial* proceedings." (Emphasis added.) "Each action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred." 28 U.S. Code § 1407(a). It is not the intent of the statute governing the formation of this multi-district litigation that the case(s) should actually be tried in the multi-district litigation's forum; only that they be brought together to simplify and speed pretrial proceedings – such as discovery – for all parties. Such litigation is intended to be disbanded with the cases returned to their original forums where they began and in which that original forum's law should control.

### vi. The Competing Interests of the States Favors the Application of New Jersey Law

The competing interests of the states must be taken into account. New Jersey has a clearly overriding interest in the regulation of entities such as Premier which are incorporated and practicing within its borders. New Jersey operates under a comparative fault regime, which the state has deemed sufficient for regulation of entities operating within New Jersey by balancing deterrence with fairness. It is well-known that there can be harsh results for innocent plaintiffs under a comparative fault regime. Accordingly, New Jersey's choice to select this regime and

9

continued application of these laws with the full awareness of the potential drawbacks for plaintiffs, should be all the more respected.

Furthermore, the vast majority of Massachusetts-based entities in this litigation have settled out – which issue has led to the current discussion on choice of law. Massachusetts therefore has no interest which can be labeled as sufficient to impose its law on a New Jersey entity and New Jersey plaintiffs, the majority of whom initially sought relief by filing in New Jersey. Accordingly, New Jersey's choice of law with respect to regulation of New Jersey companies should be respected; not overridden by Massachusetts law because the PSC has agreed to settle with the majority of the Massachusetts-based corporations named in this litigation. These Massachusetts-based companies, and some non-Massachusetts-based companies, have been afforded protections through the Bankruptcy Court and the approval of the Chapter 11 plan. That very same plan preserved the Premier Defendants' rights to joint tortfeasor contribution while protecting Massachusetts-based corporations from being held accountable.

Ultimately, New Jersey has a more significant relationship to the issues giving rise to the cases against Premier than Massachusetts. The PSC has not demonstrated a relationship with Massachusetts significant enough to overcome the presumptive choice of New Jersey law.

### 3. New Jersey's "Most Significant Relationship" Test Extends To A Determination of the Law Regarding Potential Liability of the Premier Defendants

The PSC argues that for the Premier Defendants, "original forum state" rules – New Jersey law – should apply. However, the PSC then attempts to argue that original forum state rules should not apply to the issue of liability, and that because the Premier Defendants seek discovery from settling Massachusetts entities, Massachusetts law should be imposed to hold the Premier Defendants jointly and severally liable.

New Jersey law and the *Restatement (Second) of Conflicts of Laws* are clear in applying the "most significant relationship" test to "determine the rights *and liabilities*" of the parties. 197 N.J. at 141, 962 A.2d at 459 (emphasis added). The issue of liability falls within the category of damages, which is considered an issue of substantive law in New Jersey such that "the State whose substantive law controls also governs the question of damages." Marinelli ex rel. Marinelli v. K-Mart Corp., 318 N.J. Super. 554, 568 (App. Div. 1999) aff'd, 162 N.J. 516 (2000).  Furthermore, the rights of comparative fault lies squarely in the realm of liability and is purely substantive.

For the current purposes of this briefing and in New Jersey law, there is no distinction between "plaintiffs' substantive claims" and "the issues of joint and several liability and comparative fault," as the PSC attempts to argue; further, the PSC itself urges adoption of New Jersey law for the Premier Defendants which, as stated, *applies to determine the liabilities of the parties*. Dkt. 2004, p. 9.

Furthermore, the PSC relies strongly on the fact that the Premier Defendants seek discovery from Massachusetts entities to argue that Massachusetts has an interest. Accordingly, as these entities have removed themselves from this litigation, it cannot be contended that the state of Massachusetts which governs these entities has an interest in application of its substantive law to this litigation; and certainly not to such a degree as to override that of New Jersey's law. New Jersey plaintiffs and defendants have been brought to Massachusetts solely for the pre-trial consolidation advantages provided by a multi-district litigation proceeding. Massachusetts has an interest in regulating conduct occurring in Massachusetts and entities operating out of Massachusetts. The conduct at issue for the New-Jersey based Premier Defendants did not take place anywhere other than New Jersey.

### C. No Purpose of Massachusetts Law Would Be Served By Imposing Joint And Several Liability Upon the Premier Defendants

The PSC claims that the two purposes for the application of joint and several liability doctrine of Massachusetts law are deterrence and encouraging settlement. Neither purpose is served by imposing Massachusetts law on the Premier Defendants.

The conduct for which the PSC bases their suit against the Premier Defendants, "the parties who participated in selling or distributing a contaminated product," is Premier's decision to purchase MPA from NECC. Dkt. 2004, p. 21. Accordingly, the only conduct from which the PSC might attempt to "deter" entities such as Premier in the future is some fault in their decision-making process which would lead to a plaintiff's injuries.

It is our position that the Premier Defendants observed the appropriate due diligence when making the decision to purchase from NECC; that NECC misled the Premier Defendants with regards to their capability, cleanliness, and product quality. The Premier Defendants did not engage in any tortious conduct which would necessitate application of a harsh liability regime to "deter" similar such conduct in the future.

Accordingly, potentially holding the Premier Defendants liable for NECC's misconduct in the name of "deterrence," when the Premier Defendants did not themselves commit any tortious act, would not fulfill the purpose of a joint and several liability scheme and would simply be unjust. So, too, would be using the overhanging threat of potential full liability under a joint and several liability scheme to force the Premier Defendants into settlement when our position is that we committed no tortious act and we have the right to present evidence to that effect.

Plaintiffs have received compensation from the fully funded, $200,000,000.00 tort trust through the NECC bankruptcy estate and continue to pursue the clinics in this matter, which is their full right under the law. Initially the Premier Defendants' objected to the approval of the Chapter 11 plan because it did not contemplate New Jersey Joint Tortfeasor Liability Statute. Through negotiations with the PSC, Trustee and other defendants in this case the rights of comparative fault were preserved where they existed. The idea that a plaintiff may have their

liability reduced by a jury apportionment to a settling party has been contemplated by all parties when approving and voting for the Chapter 11 plan and tort trust and it would now be an injustice to hold the Premier Defendants – who committed no tortious act and were misled by NECC – potentially liable for the full brunt of NECC's crimes.

### D. Reduction Of Discovery Demand And Promise Of Settlement Are Not Considerations When Deciding Which State's Law Applies

It has been suggested that discovery requests and demands for discovery would be reduced if the court decides Massachusetts law applies and essentially eliminates comparative fault. Time and time again the PSC continues to attempt to sway the court to apply the law that would reduce the amount of discovery, reduce the demands on the court's time, and would promote settlement.

First, it is ludicrous to argue that these should be factors in assessing which state law applies. Yet the PSC continues to argue at every opportunity that if the court decides that Massachusetts law applies all of the comparative fault discovery will just "go away."

However, even assuming *arguendo,* that comparative fault was eliminated from this litigation, discovery from NECC, the national defendants, and even local hospitals and clinics regarding their ordering practices, the contamination of the steroids at issue and the proximate cause of the plaintiff's injuries would still be requested and pursued. In other words, testimony and document production from national defendants, settling defendants and other fact witnesses to this case will still be relevant to proximate cause and other issues unrelated to comparative fault, even if the Court were to assume comparative fault doesn't apply under the law.

It has also been suggested that settlement negotiations would be stimulated by choosing the application of a law that eliminates comparative fault. While comparative fault is a defense harnessed by the defendants, it is not the only defense in the case. There are several issues related to the standard of care and most notably proximate cause.

Therefore the moving parties respectfully request that the court give very little if any consideration to the notion that choosing Massachusetts law over New Jersey (or Tennessee Law for the Tennessee Defendants) would reduce or eliminate the need for certain discovery and/or

trigger a wave of settlement negotiations – such arguments are irrelevant to the issue before the Court.

## IV.    CONCLUSION

For the foregoing reasons the Premier Defendants respectfully submit to the Court that, regardless of whether New Jersey, Massachusetts, or federal common law choice-of-law rules apply, New Jersey's substantive tort law should apply to the cases pertaining to Premier.

Respectfully submitted,

Blumberg & Wolk, LLC

By:  /s/ Christopher M. Wolk, Esq.

158 Delaware Street
P.O. Box 68
Woodbury, NJ 08096
(856) 848-7472

Counsel for Defendants Premier Orthopaedic and Sports Medicine Associates of Southern New Jersey, LLC, trading as Premier Orthopaedic Associates, Premier Orthopaedic Associates Surgical Center, LLC, Kimberly Yvette Smith, M.D., a/k/a Kimberly Yvette Smith-Martin, M.D., Thomas Dwyer, M.D., Richard C. DiVerniero, M.D., John Catalano, M.D. and Richard Strauss, M.D.

## CERTIFICATION

I certify that in submitting this *Memorandum Regarding Choice of Law*, I caused a copy of the above to be filed electronically via the Court's electronic filing system. Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's System, and notice of these filings will be sent to these parties by operation of the Court's electronic filing system.

Dated: July 8, 2015

/s/ Christopher M. Wolk
Christoper M. Wolk, Esq.