UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | ) ) ) | |
| _____ | ) | MDL No. 2419 |
| | ) | Dkt. No 1:13-md-2419 (RWZ) |
| THIS DOCUMENT RELATES TO: | ) | |
| | ) | |
| Suits Naming the Tennessee Clinic Defendants | ) ) | |
| _____ | ) | |

**TENNESSEE CLINIC DEFENDANTS' RESPONSE TO THE PSC'S
MEMORANDUM REGARDING CHOICE OF LAW FOR TENNESSEE CASES**

Defendants Saint Thomas Outpatient Neurosurgical Center, LLC; Howell Allen Clinic, a Professional Corporation; John Culclasure, MD; Debra Schamberg, RN, CNOR; Vaughan Allen, MD; and Donald E. Jones, MD (collectively "Tennessee Clinic Defendants") submit this Response to the Plaintiffs' Steering Committee's ("PSC") Memorandum Regarding Choice of Law for Cases Originally Filed in Tennessee.[1]

At Dkt. 1938, the Court requested briefing from the parties to identify which jurisdiction's law supplies the choice of law rules and based on Massachusetts, federal common law, and Tennessee choice of law rules, which state's substantive tort law applies. Under each jurisdiction's choice of law rules, Tennessee tort law applies.

**INTRODUCTION TO ARGUMENT**

New England Compounding Company ("NECC"), a pharmacy licensed by Massachusetts and regularly inspected by the FDA and Massachusetts Board of Pharmacy, sold medication to thousands of hospitals and clinics across the country,

_____

[1] Dkt. 2004.

including the Defendants. Unbeknownst to the Tennessee Clinic Defendants, NECC sold them medication contaminated with microscopic fungi. The Tennessee Clinic Defendants unwittingly administered the contaminated medication to their patients.

There can be no reasonable disagreement that NECC is *the* primary party responsible for the Plaintiffs' injuries. It contaminated the medication, cut corners in its sterility processes, and misled government regulators and customers.

NECC bankrupted and reached a resolution of all claims against it. The bankruptcy plan is now confirmed and the distribution of approximately $200 million to tort Plaintiffs will soon begin.[2] As part of the bankruptcy plan, the "national" and "NECC-related" defendants will be dismissed from the Tennessee cases, meaning these cases are suits by Tennessee patients against Tennessee health care providers.[3] [4]

In its choice-of-law analysis, the PSC omits the threshold step of determining whether Massachusetts has any legitimate interest in allocating fault in these Tennessee-only disputes. The Court need not conduct a detailed weighing of the choice-of-law Restatement factors, because Massachusetts has *no* recognizable interest in application of its loss distribution rules to these cases. There exists no conflict of laws because only Tennessee has a recognizable interest in the application of its law (and specifically its loss distribution rules) in the Tennessee cases. Massachusetts law presents a "false conflict" with Tennessee law in these cases. The Court need not

---

[2] Bankruptcy Dkt. 1355 (Case No. 12-19882) (order confirming plan).
[3] A slim minority of the Tennessee Plaintiffs are Kentucky citizens who traveled to Tennessee for medical treatment from the Tennessee Clinic Defendants. Although these cases retain diversity jurisdiction, the choice-of-law analysis is the same (no one asserts Kentucky law applies).
[4] The bankruptcy plan, *which the PSC, and these clinic defendants supported*, expressly permits the remaining defendants to assert comparative fault against the settling defendants. Bankruptcy Dkt. 1353-1, pp. 50-52 (bankruptcy plan).

conduct a full-blown choice-of-law analysis to resolve this "false" conflict-of-law because Tennessee law clearly governs the distribution of a loss between Tennessee residents.

Even if this Court were to analyze the "false conflict" between Massachusetts' and Tennessee's loss distribution rules, the "most significant relationship" test clearly requires application of Tennessee tort law to these Tennessee-only disputes.

## LAW AND ARGUMENT

I. **Tennessee's comparative fault framework and Health Care Liability Act reflect Tennessee's policy decisions regarding allocation of fault and governance of claims against health care providers.**

To frame this discussion, it is necessary to briefly review the policy behind Tennessee's comparative fault scheme, abolition of joint and several liability, and Tennessee's Health Care Liability Act.

Tennessee has adopted a modified comparative negligence scheme that places the utmost importance on ensuring that a defendant is only responsible for the percentage of damages caused by its share of fault.[5] The Tennessee Supreme Court expressly abandoned joint and several liability in negligence cases so as not to "retain a rule, joint and several liability, which may fortuitously impose a degree of liability that is out of all proportion to fault."[6] The policy behind Tennessee's choice of a comparative fault scheme is to protect defendants from imposition of damages in an amount disproportional to their share of the fault.[7]

---

[5] *McIntyre v. Balentine*, 833 S.W.2d 52, 58 (Tenn. 1992); *see Volz v. Ledes*, 895 S.W.2d 677, 680 (Tenn. 1995) ("[w]e believe that a system wherein a particular defendant is liable only for the percentage of a plaintiff's damages that are caused by that defendant's fault is the system that best achieves our stated goal in *McIntyre v. Balentine* of linking liability and fault").
[6] *McIntyre*, 833 S.W.2d at 58.
[7] *Carroll v. Whitney*, 29 S.W.3d 14, 21 (Tenn. 2000) ("the goal of fairness that underlies our adoption of comparative fault is not met when a plaintiff is free to shift to some defendants the fault which is properly allocated to other nonparties").

Consistent with this clear policy choice, in *Carroll v. Whitney*, the Supreme Court affirmed that defendants are not the insurers of their insolvent co-defendants.[8] "[O]ut of fairness to defendants, [Tennessee] allow[s] the burden of a judgment-proof insolvent tortfeasor to fall on the plaintiff."[9] "[T]hrough our rejection of joint and several liability in *McIntyre*, we shifted to plaintiffs the risk that no recovery could be obtained due to the presence of judgment-proof tortfeasors."[10]

The Court has already undertaken lengthy analysis of the sufficiency of the Plaintiffs' claims *under Tennessee law*, at the motion to dismiss stage, ruling that the only surviving claims are to proceed under three *Tennessee* statutes.[11] The Court specifically ruled that the Plaintiffs' negligence claims will proceed pursuant to Tennessee's Health Care Liability Act.[12] [13]

The present iteration of Tennessee's Health Care Liability Act follows the close attention the legislature has paid to health care liability claims in the last seven years[14] and the legislature's policy decision to make the Act the sole remedy in suits against health care providers for injuries related to the provision of health care.[15] [16]

---

[8] *Carroll*, 29 S.W.3d at 20-21.

[9] *Id.* at 21.

[10] *Id.* at 20.

[11] Tennessee's Health Care Liability Act, Consumer Protection Act, and Product Liability Act.

[12] TENN. CODE ANN. § 29-26-101 *et seq.*

[13] The Defendants disagree with the PSC's contention that comparative fault is irrelevant to the Plaintiffs' product liability claims, but that issue is outside the scope of this Court-ordered briefing. *See Owens v. Truckstops of America*, 915 S.W.2d 420, 433, n. 17 (Tenn. 1996) (in cases involving hybrid claims, the jury may apportion fault between the strict products liability and alleged negligence); TENN. CODE ANN. § 29-11-107(b) (permitting strict liability for manufacturers, but not sellers).

[14] *See* Kelly, C., *Medical Malpractice: Five Years after Going Under the Knife, Med Mal Law Is Still Feeling the Effects*, Tenn. B. J., Nov. 1, 2013; *see* Day, J., *Med Mal Makeover*, Tenn. B. J., June 22, 2009.

[15] TENN. CODE ANN. § 29-26-101(a)(1) (defining "health care liability action" as "any civil action, including claims against the state or a political subdivision thereof, alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, regardless of the theory of liability on which the action is based"); § 29-26-101(c) (applying Act to any civil action alleging injury related to the provision of health care services regardless of other theories in complaint).

## II. All relevant jurisdictions apply the Restatement's choice-of-law analysis.

The PSC correctly addresses the Court's first question by stating that Tennessee, Massachusetts, and federal courts all apply the Restatement (Second) Conflict of Laws framework for choice-of-law analysis.[17]

However, the PSC overlooks that Tennessee and Massachusetts both apply the Restatement analysis in a two-step fashion. *First,* a court must decide whether there is true conflict between multiple *interested* sovereigns' laws. Courts only resort to the detailed, multi-factor conflict of law analysis when there is an actual conflict of law.[18] [19]

## III. The conflict of law between Tennessee's comparative fault and Massachusetts's joint and several liability is a "false conflict" because Massachusetts has no legitimate interest in application of its loss distribution rules to disputes between Tennessee parties.

This Court need not employ a full choice-of-law analysis, unless two (2) or more sovereigns have a legitimate, cognizable interest in the application of their law to a specific issue.[20] There is no conflict of law between Tennessee and Massachusetts' loss distribution rules because Massachusetts has no legitimate interest in supplanting

---

[16] Notably, the Tennessee legislature has specifically included the comparative fault of a nonparty as a defense to a health care liability action and explains how such comparative fault works. The PSC does not explain how the Court can apply the Act (the applicable law pursuant to the Court's previous Memorandum of Decision, Dkt. 1360) to the claims of negligence, but not apply the Act to the defenses to the claims of negligence. TENN. CODE ANN. §§ 29-26-115, -122(b).

[17] Dkt. 2004, p. 7.

[18] *See I.B.E.W. Pac. Coast Pension Fund v. Lee*, 2013 WL 5739028, at *5 (E.D. Tenn. Oct. 22, 2013) ("As a threshold matter, there must be an actual conflict between the laws of the states *who have an interest in the litigation* to trigger a choice of law analysis.") (emphasis added); *Boston Hides & Furs, Ltd. v. Sumitomo Bank, Ltd.*, 870 F. Supp. 1153, 1159 (D. Mass. 1994).

[19] Courts are not required to employ conflict-of-law analysis in every case where some other jurisdiction has a conflicting law because uninterested sovereigns' laws simply do not apply.

[20] *See I.B.E.W. Pac. Coast Pension Fund*, 2013 WL 5739028, at *5 ("As a threshold matter, there must be an actual conflict between the laws of the states *who have an interest in the litigation* to trigger a choice of law analysis.") (emphasis added); *see Mfrs. Collection Co., LLC v. Precision Airmotive, LLC*, 2015 WL 3456620, at *7 (N.D. Tex. 2015) ("Although the indemnification laws of the two states are substantively different, and would result in different outcomes, the 'conflict' between Texas and Pennsylvania law is a false conflict, as Texas has no real interest in this lawsuit. Alternatively, even assuming, *arguendo,* that Texas has an interest in this lawsuit, the court concludes that under applicable choice-of-law principles, Pennsylvania law applies.").

Tennessee's loss distribution rules to decide whether the Tennessee Plaintiffs or the Tennessee Defendants will bear the "loss"[21] of the allocation of fault to the nonparties responsible for the Plaintiffs' injuries.[22]

### A. The conflicting law of a state with no interest in deciding an issue presents a "false conflict" and does not require choice of law analysis.

As the PSC admits in its brief, before beginning a choice of law analysis, a court must determine if a legitimate conflict exists.[23] A "false conflict" between laws can exist: (1) where the laws of the different states are the same; (2) where the laws of the different states differ but would produce the same outcome under the facts of the case; or (3) *when only one state's policies would be furthered by the application of its laws.*[24]

In *Estate of Miller*, two (2) Ohio plaintiffs sued Thrifty Rent-a-Car (an Oklahoma company) alleging negligence causing the death of the decedents while on vacation in South Africa.[25] The Ohio decedents rented a car from Thrifty in South Africa.[26] The rental car's brakes failed, and the Ohio residents died.[27] The plaintiffs subsequently moved to Florida and filed a wrongful death action in Florida against Thrifty.[28] Thrifty

---

[21] It should be noted that the Plaintiffs will be receiving distributions from a $200 million settlement fund created by many of these nonparties. So, any "loss" suffered by the Plaintiffs will be reduced significantly, if not eliminated entirely.

[22] This assumes that the Plaintiffs can successfully prove that the Tennessee Clinic Defendants violated the applicable standard of care, a dubious proposition given that *thousands* of health care providers from across the country purchased medication from NECC.

[23] Dkt. 2004, p. 10 ("As a threshold issue, both states require a determination that a conflict of law actually exists").

[24] *Estate of Miller v. Thrifty Rent-a-Car*, 609 F. Supp. 2d 1235, 1244 (M.D. Fla. 2009); *see Santander Bank, Nat. Ass'n v. Sturgis,* 2013 WL 6046012, at *6 (D. Mass. Nov. 13, 2013) ("A 'false' conflict exists where only one state has an actual interest in applying its law."); *Linfoot v. McDonnell Douglas Helicopter Co.*, 2015 WL 1190171, at *3 (M.D. Tenn. Mar. 16, 2015) ("if a 'false conflict' exists[,] the choice of law analysis is not triggered."); *see also Mfrs. Collection. Co., LLC*, 2015 WL 3456620, at *7 ("The court next considers whether an apparent conflict is an "actual conflict" or a "false conflict." "A false conflict exists if the state with a potentially conflicting law does not have an actual interest in the dispute.") (additional cites omitted).

[25] 609 F. Supp. 2d at 1239.

[26] *Id.* at 1240.

[27] *Id.* at 1240.

[28] *Id.*

requested that the court apply *Florida's* comparative fault law.[29] Florida's comparative fault law was (unsurprisingly) the most favorable to the Thrifty.[30] Before employing a full-blown choice-of-law analysis, the court analyzed whether Florida had any legitimate interest in applying its comparative fault law to the allocation of fault between the decedents, co-defendants, and nonparties.[31]

The district court noted that a state's fault allocation rules aim to balance various factors like deterrence of tortious conduct, compensation of resident tort victims, encouraging investment in the state, and protecting resident defendants from excessive tort judgments.[32] <u>Considering these factors, the court held that states do *not* have a legitimate interest in application of their rules to the allocation of a loss between nonresident victims and nonresident tortfeasors.[33] "When neither the plaintiff nor the defendant are residents of the jurisdiction in which the accident occurred, the jurisdiction lacks an interest in seeing that the plaintiff is properly compensated or that the defendant is protected from excessive tort judgments."</u>[34] The district court found that Florida's loss distribution rules presented a "false conflict" with Ohio, Oklahoma and South African law because Florida's interest in protecting its residents from excessive judgments was not implicated by the distribution of loss between Ohio and Oklahoma residents for an injury occurring in South Africa.[35]

*Erny v. Estate of Merola* illustrates the same principle.[37] In *Erny*, a New Jersey plaintiff filed a negligence suit against two (2) New York defendants related to an

---

[29] *Id.*
[30] *Id.*
[31] *Id.* at 1244.
[32] *Id.*
[33] *Id.*
[34] *Id.*
[35] *Id.*
[37] 792 A.2d 1208 (N.J. 2002). The PSC cites *Erny* at Dkt. 2004, n. 47

automobile accident.[39] The purported "conflict" of law was between New Jersey's modified joint and several liability rule (no joint and several liability unless defendant is 60% at fault) and New York's pure joint and several liability rule.[40] The New Jersey court, however, found this to be a false conflict because New Jersey had no interest in protecting the New York defendants from increased liability.[42] Since New Jersey had no policy interest, the court applied New York law.[43]

As in *Estate of Miller* and *Erny*, courts following the Restatement's conflict-of-law framework routinely find a "false conflict" of law, where the state, whose law the party seeks to apply, does not have a legitimate policy interest in applying its law.[45]

**B. The conflict between Tennessee's comparative fault system and Massachusetts' joint and several liability system is a "false conflict" because only Tennessee has a legitimate policy interest in applying its loss distribution rules.**

The "conflict" championed by the PSC between Tennessee (which has abolished joint and several liability and allows allocation of fault to parties and nonparties) and Massachusetts (a joint and several liability state) is a classic "false conflict."

Massachusetts' policy interests are not undermined by application of Tennessee's rules to allocate fault in a case between the Tennessee Plaintiffs and the Tennessee Clinic Defendants because no Massachusetts parties are involved.

*Grauer v. United Truck Ctr.* is illustrative. In *Grauer*, a Connecticut plaintiff sued

---

[39] 792 A.2d at 91.
[40] *Id.* at 91, 104.
[42] *Id.* at 108.
[43] *See id.*
[45] *See Lacey v. Cessna Aircraft Co.,* 932 F.2d 170, 188 (3rd Cir. 1991); *Judge v. American Motors*, 908 F.2d 1565, 1569, n. 5 (11th Cir. 1990); *Williams v. Rawlings Truck Line, Inc.*, 357 F.2d 581, 586 (D.C. Cir. 1965); *Air Products and Chemicals, Inc. v. Eaton Metal Products Co.*, 272 F. Supp. 2d 482, 498, 500, 502-05 (E.D. Pa. 2003); *ABB Daimler-Benz Transp. v. National R.R. Passenger*, 14 F. Supp. 2d 75, 88-89 (D.D.C. 1998); *Block v. First Blood Associates*, 691 F. Supp. 685, 698 (S.D.N.Y. 1988); *Karavokiros v. Indiana Motor Bus Co.,* 524 F. Supp. 385, 386 (E.D. La. 1981); *Dick v. Lambert*, 472 F. Supp. 560, 562-63 (M.D. Pa. 1979); *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984).

Connecticut and Massachusetts defendants in Massachusetts court for negligence arising from a trucking accident that occurred in Connecticut.[46] The Connecticut plaintiff argued that the Massachusetts court should apply Massachusetts law on the issue of joint and several liability because, not surprisingly, it favored the Connecticut plaintiff.[47]

The court declined to apply Massachusetts' law, recognizing that "[s]ince most of the parties are either residents of Connecticut or conducting business in Connecticut, ***there are no compelling reasons*** to apply the law of Massachusetts to the issue of joint and several liability."[48] The court explained:

> The defendants doing business in Connecticut could not have expected to be held liable under Massachusetts law for acts occurring or causing injury in Connecticut. Further it is not reasonable for Connecticut residents injured in Connecticut to expect the benefits of Massachusetts law to be applied to a case involving a Connecticut car accident. <u>The injury occurred in Connecticut and the parties involved were either conducting business in Connecticut or Connecticut residents. Therefore, the substantive law of Connecticut must be applied to all issues involved in the current dispute.</u>[49]

States have an interest in ensuring the full recovery of their <u>residents</u> so they do "not become dependent on the resources of [the state] for necessary medical, disability, and unemployment benefits."[50] Conversely, states have *no* legitimate interest in ensuring <u>nonresidents'</u> full recovery against <u>nonresident</u> defendants for injuries that occurred in another state.[51] These principles are directly applicable here. Although

---

[46] 1995 WL 809855, at *3 (Mass. Super. May 31, 1995).
[47] 1995 WL 809855, at *3.
[48] *Id.* at *4 (emphasis added).
[49] *Id.* at *3.
[50] *Munguia v. Bekins Van Lines*, 2012 WL 5198480, *5 (citing *Castro v. Budget Rent–A–Car Sys., Inc.*, 154 Cal.App.4th 1162, 1182, 65 Cal. Rptr. 3d 430 (2007)).
[51] *Grauer,* 1995 WL 809855, at *4; *see Estate of Miller*, 609 F. Supp. 2d at 1245 ("When neither the plaintiff nor the defendant are residents of the jurisdiction in which the accident occurred, the jurisdiction lacks an interest in seeing that the plaintiff is properly compensated or that the defendant is protected from excessive tort judgments."); *Judge*, 908 F.2d at 1572 ("[N]o Mexican plaintiffs are joined in this action. Mexico therefore has no interest in distributing estate proceeds or benefits to its residents."); *ABB Daimler-Benz Transp.,* 14 F. Supp. 2d at 89 ("In sum, the interests of New York citizens are not significantly affected by this litigation and therefore New York law should not be applied.").

Massachusetts "clearly…has an interest in seeing *its* residents compensated for injury," Massachusetts has no interest in ensuring that *Tennessee* plaintiffs recover what it considers appropriate damages in suits against *Tennessee* defendants.[52] Although Massachusetts has an interest in ensuring that its laws deter tortious conduct of its own corporations,[53] it has no legitimate interest in assuring that Tennessee defendants are deterred from tortious conduct in Tennessee.

The PSC articulates *no* Massachusetts' policy interest that would be served by applying joint and several liability law to the Tennessee cases. *Massachusetts* has no interest in ensuring that the *Tennessee* Plaintiffs are adequately compensated, or in appropriately determining the Tennessee Clinic Defendants' liability. On the other hand, Tennessee's policy interests in deterrence of tortious conduct, compensation of resident tort victims, encouraging investment in the state, and protecting resident defendants from excessive tort judgments are *directly impaired* if its loss distribution rules are not applied to this Tennessee-only dispute.

The PSC ignores the primary purpose of choice-of-law analysis – to ensure that the law of a state with a legitimate policy interest in the issue is applied – and instead seeks to cherry-pick the most favorable state law based on its own interests.[54] Applying Massachusetts law to these Tennessee-only cases does not further the policy of the only interested state (Tennessee) and, instead, rewards the PSC's forum shopping.

Since Massachusetts has no cognizable interest in supplanting Tennessee's loss distribution rules for the allocation of financial responsibility in the Tennessee-only

---

[52] *Cf. DaRosa v. R&F Transp.*, 2001 WL 1018615, at *4 (Mass. Super. Aug. 28, 2001) (emphasis added).
[53] *See Estate of Miller*, 609 F. Supp. 2d at 1244.
[54] Under the PSC's analysis, the Court could just as easily apply the laws of Oklahoma (ARL's state of residence) or Connecticut (Liberty's residence) to the comparative fault claims at issue. Like Massachusetts, those states have no interest in the outcome of a case between Tennessee residents.

cases, there is no interest to weigh against Tennessee's compelling interest in the Restatement analysis and thus, no need to conduct the extended multi-factor inquiry.

### IV. The universal "most significant relationship" approach requires application of Tennessee's comparative fault rules.

Even if the Court resorts to the Restatement's multi-factor framework to resolve the "false conflict" of law presented by the PSC, proper application of the Restatement factors confirms that Tennessee's loss distribution rules must govern.

Tennessee, Massachusetts, and federal courts have all adopted the Restatement (Second) Conflict of Laws approach to choice-of-law analysis:[55]

> In an action for personal injury, the local law of the state where the injury occurred *determines the rights and liabilities of the parties*, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.[56]

To determine the most significant relationship, the Restatement provides:

> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
> (a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
> (c) the domicile, residence, nationality, place of incorporation and place of business of the parties,
> (d) the place where the relationship, if any, between the parties is centered.

The Restatement § 6 principles are:

> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.[57]

---

[55] *Hataway v. McKinley*, 830 S.W.2d 53, 59 (Tenn. 1992); *Dasha v. Adelman*, 699 N.E.2d 20, 24 (Mass. Ct. App. 1998); *Aaron Ferer & Sons, Ltd. V. Chase Manhattan Bank*, 731 F.2d 112, 121 (2d Cir. 1984).
[56] RESTATEMENT (SECOND) OF CONFLICT OF LAWS (1971) § 146 (emphasis added).
[57] *Id.* § 6.

The ultimate goal of the multi-factor choice-of-law approach is that the court apply "the law of [the] state that legitimately has a stronger interest in the controversy."[58]

## A. The location of the injury in Tennessee requires application of Tennessee law.

Under both Tennessee and Massachusetts law, the location of the injury is the most important Restatement factor.[59] "[G]enerally the law of the state where the injury occurred will have the most significant relationship to the litigation."[61] Tennessee applies "the law of the place where the injury occurred" as a "default rule" in close cases.[62] [63] This "default" is not overcome by other "tenuous links to the litigation," when the plaintiff resides in and formed a relationship with the defendant in the situs of the injury.[64]

The PSC, despite this being the most important factor, devotes only seven (7) lines of their brief analyzing this factor.[65] This is likely because the PSC "admits this factor favors application of Tennessee…law[.]"[66]

The PSC attempts to minimize the importance of this factor by arguing that the location is "fortuitous," plainly misappropriating the concept of "fortuitousness" to reach the desired outcome. The location is only "fortuitous" when "the place of injury…bears little relation to the occurrence and the parties with respect to the particular issue."[67] A location is not "fortuitous" when the parties formed their relationship in that state and the

---

[58] *Hataway*, 830 S.W.2d at 59.

[59] *Hataway*, 830 S.W.2d at 59 ("The Restatement provides that the law of the state where the injury occurred where the injury occurred will be applied unless some other state has a more significant relationship to the litigation."); *Grauer*, 1995 WL 809855, at *1 ("[T]he place of the injury continues to be a primary consideration in determining the applicable substantive law.").

[61] *Hataway*, 830 S.W.2d at 55.

[62] *Id.*

[63] This is not a close or difficult case.

[64] *See In re Bridgestone/Firestone*, 138 SW 3d 202, 208 (Tenn. Ct. App. 2003) (Firestone's principle place of business and "some activities" in Tennessee was not sufficient to overcome the location of the injury, residence of the plaintiffs, or relationship of the parties to Mexico).

[65] Dkt. 2004, p. 18.

[66] *Id.* at 18.

[67] *Wayland v. Peters*, 1997 WL 776338, at *2 (Tenn. Ct. App. Dec. 17, 1997).

injury occurred within the course of that relationship.[68] The Plaintiffs' injuries' occurrence in Tennessee is not "fortuitous." The Plaintiffs sought medical treatment and entered into health care provider-patient relationships with Tennessee health care providers in Tennessee. It would be "fortuitous" if an injury arising from these parties' relationship occurred anywhere *outside* Tennessee.

Simply put, the first and most important factor in the choice-of-law analysis weighs *heavily* in favor of application of Tennessee law.

### B. The remaining factors also direct application of Tennessee's loss distribution rules for nonparty fault.

After conceding that the most significant Restatement factor favors application of Tennessee loss distribution rules, the PSC misinterprets the three (3) remaining factors, and then proposes that this Court review those factors in a clearly erroneous manner. The PSC essentially suggests that the Court review each Restatement factor in isolation and tally a win, loss or tie for each state.[71]

"[I]t is improper merely to count contacts" when performing Restatement choice-of-law analysis.[72] The Restatement factors should be used as "guide" for the court to ascertain the state with the most significant interest in application of its law to a particular issue.[73]

Even if the Court adopts the PSC's approach of "counting" the Restatement factors, Tennessee's interest in applying its loss distribution rules would win over

---

[68] RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 cmt. (e).
[71] "Of the four Restatement factors governing the question of which law applies with respect to the issues of joint and several liability and comparative fault, two of the four favor Massachusetts, one does not favor any particular state, and one favors Tennessee and/or New Jersey. For the forgoing reasons, the PSC respectfully requests that the Court find that Massachusetts law governs the issues of joint and several liability and comparative fault." Dkt. 2004, p. 23.
[72] *Wayland*, 1997 WL 776338, at *2.
[73] *See id.*

Massachusetts' on all four of the Restatement factors.

The *parties'* residency has been referred to as the most important factor when selecting the applicable loss distribution rules.[74] "When neither the plaintiff nor the defendant are residents of the jurisdiction…, the jurisdiction lacks an interest in seeing that the plaintiff is properly compensated or that the defendant is protected from excessive tort judgments."[75] The PSC argues for a tie on this issue, on the basis that "the overwhelming majority of the Comparative Fault Parties are located in other states, mostly in Massachusetts."[76] This is a clever sleight-of-hand by the PSC. Some of the responsible nonparties are indeed located in Massachusetts. *But*, all of the *parties* are Tennessee residents. The residence or domiciliary of *nonparties* is irrelevant for the analysis of this factor because the rights and liabilities of nonparties are not affected by the allocation of fault in the Tennessee cases. The Massachusetts nonparties will have no judgment against them and have no other cognizable interest in the litigation. Thus, Massachusetts has no interest in the litigation via these nonparties.[77] Regardless, "the most important factor regarding damages issues is where the plaintiff is domiciled."[78]

The PSC makes the same fundamental error when analyzing the "the place where the relationship between the *parties* formed" and the place where the "conduct causing the injury occurred."[79] The PSC assumes that the important relationship for the loss distribution issue is the link between the Tennessee Clinic Defendants and NECC. The PSC offers no legal support for the notion that the relationship between a party and

---

[74] *Estate of Miller*, 609 F. Supp. 2d at 1244.
[75] *Id.*
[76] Dkt. 2004, p. 19.
[77] *See Judge*, 908 F.2d at 1572 (recognizing that Mexico's interest in protecting defendants from wrongful death actions was not implicated where "no Mexican entities have been joined as defendants.").
[78] *Sulak v. Amer. Eurocopter*, 901 F. Supp. 834, 843 (N.D. Tex. 2012) (cited by the PSC at n. 47).
[79] Dkt. 2004, pp. 18-21.

a nonparty is what the Restatement refers to when instructing courts to consider "the place where the relationship between <u>the parties</u> formed."[80] As is readily apparent from numerous opinions analyzing this factor, the key relationship for this issue is that of the Tennessee Plaintiffs and the Tennessee Clinic Defendants.[81] [82]

### C. The § 6 Restatement principles all favor application of Tennessee's loss distribution rules.

The § 6 Restatement factors require little treatment. They all favor application of Tennessee law. The § 6 analysis "turns in large part on the balance of competing interests contemplated by sections 6(2)(b) and 6(2)(a)."[83] Even if Massachusetts had some theoretical interest in applying its loss distribution rules (which it does not), Tennessee has a "legitimate and profound interest" in protecting the Tennessee Clinic Defendants from liability disproportionate to fault.[84] Imposing joint and several liability directly frustrates Tennessee's express public policy.[85] Moreover, since all parties in the Tennessee cases are Tennessee residents, Tennessee has the most significant interest for every conceivable policy concern implicated by the allocation of fault and liability.

### CONCLUSION

Tennessee substantive law should govern all aspects of the Tennessee cases. The guiding principle of choice of law jurisprudence is that the most-interested jurisdiction's law should be applied. There can be no question that Tennessee has the most significant (and exclusive) interest in deciding whether the Tennessee Plaintiffs or the Tennessee Clinic Defendants will be saddled with the loss caused by the nonparties

---

[80] Emphasis added.
[81] *E.g. Judge*, 908 F.2d at 1572; *Estate of Miller*, 609 F. Supp. 2d at 1244.
[82] The conduct by the Tennessee Clinic Defendants allegedly causing the Plaintiffs' injuries obviously occurred in Tennessee.
[83] *Judge,* 908 F.2d at 1569.
[84] *In re Air Crash Disaster,* 559 F. Supp. 333, 351-52 (D.D.C. 1983) (cited by the PSC at n. 47).
[85] *Carroll*, 29 S.W.3d at 20-21.

that are responsible for the Plaintiffs' injuries. Tennessee has decided that its public policy forbids joint liability in this circumstance. This Court should not frustrate Tennessee public policy by imposing the law of a state with no legitimate stake in the issue. Accordingly, the Tennessee Clinic Defendants respectfully request that the Court rule that Tennessee law applies to all aspects of the Tennessee cases, including the allocation of comparative fault.

Respectfully submitted,

**GIDEON, COOPER & ESSARY, PLC**

/s/ Chris J. Tardio
**C.J. Gideon, Jr.***
**Chris J. Tardio***
**Alan S. Bean****
**Matthew H. Cline***
315 Deaderick Street, Suite
Nashville, TN 37238
Ph: (615) 254-0400
Fax: (615) 254-0459
chris@gideoncooper.com

***Attorneys for the Tennessee Clinic Defendants***

* Admitted pursuant to MDL Order No. 1.
** Admitted *pro hac vice*.

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be served electronically to the registered participants identified on the Notice of Electronic Filing and copies will be e-mailed or mailed via regular U.S. mail to those participants identified as unregistered this 8th day of July, 2015.

/s/ Chris J. Tardio
**Chris J. Tardio**