**LENOX, SOCEY, FORMIDONI, GIORDANO, COOLEY, LANG & CASEY, LLC**
**3131 Princeton Pike, Building 1B**
**Trenton, New Jersey 08648**
**(609) 896-2000**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION** | **Document Electronically Filed**<br><br>MDL No. 1:13-md-2419-FDS |
| All actions involving Nitish Bhagat, M.D. Vanette Perkins, M.D., and Professional Pain Management Associates | |

**NITISH BHAGAT, M.D, VANETTE PERKINS,M.D., and PROFESSIONAL PAIN MANAGEMENT ASSOCIATES' MEMORANDUM REGARDING CHOICE OF LAW**

On the Brief:

Joseph R. Lang, Esq.
Michael A. Pattanite, Jr., Esq.

**TABLE OF CONTENTS**

**Page**

**TABLE OF CITATIONS** ........................................................................................................... ii

**STATEMENT OF FACTS**...……...…………………………………………………………..1

**SUMMARY OF THE ARGUMENT**.……………………………………………………..2

**LEGAL ARGUMENT**………………………………………………………………………….2

    A. **Choice-Of-Law Rules for the Original Forum State Should Govern because Federal Jurisdiction is premised upon Bankruptcy Jurisdiction** …………………..2

    B. **New Jersey's Substantive Tort Law Applies Regardless of Whether the Choice-of-Law Rule from New Jersey, Massachusetts or Federal Common Law is Used**……………………………………………………………4

        1. **The "Most Significant Relationship" Test is Applicable for Determining Controlling Law when Conflicts Exist**……………………………………..4

        2. **The PSC cannot overcome the presumption that New Jersey Law applies Under the "Most Significant Relationship" test**………………………………5

    C. **New Jersey's "Most Significant Relationship" Test Requires Application of New Jersey Law on All Issues in the case**……………………………..……..8

**CONCLUSION**.……………………………………………………………………………..9

**TABLE OF CITATIONS**

**I.   CASES CITED**

Aaron Ferer & Sons, Ltd v. Chase Manhattan Bank,
731 F.2d 112 (2d Cir. 1984)……………………………………………………………….3

In re Coudert Bros, LLP, 673 F.3d 180 (2nd Cir. 2012)……………………………………..2, 3

In re Engage, Inc., 330 B.R. at 9……………………………………………………………….4

In re Gaston & Snow, 284 B.R. 349 (S.D.N.Y 2002) …………………………………………...3

In re Gaston & Snow, 243 F.3d 599, 605-07 (2nd Cir. 2001)…………………………………...3

In re Lindsay, 59 F.3d 942, 984 (9th Cir. 1995)………………………………………………..2

P.V. ex rel. T.V. v. Camp Jaycee,
197 N.J. 132, 136, 962 A.2d 453, 455 (2008)…………………………………………….*ibid*

**II.   SECONDARY SOURCES**

Restatement (Second) of Conflicts of Laws…………………………………………………….*ibid*

**STATEMENT OF FACTS**

This matter involves claims surrounding the administration of tainted medication compounded by the New England Compounding Company, based in Massachusetts in 2012. This medication was supplied to physicians, nationwide, in states including New Jersey. Defendants Nitesh Bhagat, M.D., Vanette Perkins, M.D., and Professional Pain Management Associates (herein after "Defendants") administered the medication in their New Jersey medical practice to patients such as the Plaintiffs. Ultimately, an outbreak of fungal meningitis occurred relating to the medication.

After the outbreak, suits were filed against NECC, affiliates and principals, the vendors who supplied NECC, and individual physicians who performed the injections. NECC ultimately filed for Chapter 11 Bankruptcy, which has a confirmed plan allowing for amongst other things, comparative fault/apportionment credits in states that allow the same.

The Defendants were initially sued in New Jersey state court which was removed to Federal Court. Ultimately the cases were consolidated into this multi-district litigation, for discovery purposes. Most of the NECC and affiliated defendants have settled, and contributed to the bankruptcy estate.

The non-settling defendants have preserved their right to obtain discovery from settling defendants. The Defendants attempted to obtain discovery from these parties as it is relevant to proximate cause, the reasonableness of the Defendants' conduct in administering the medication, and to prove comparative fault against the settling parties, which is expressly allowed under New Jersey law.

The settling defendants have resisted these discovery requests, asserting a conflict of law issue specific to the Defendants on whether New Jersey Comparative Fault law, or

1

Massachusetts joint and several liability law should apply. In accordance with this Court's request, the Defendants submit the following reasons as to why New Jersey law, specifically comparative fault, must apply.

## SUMMARY OF ARGUMENT

The Defendants agree with the PSC, and seemingly all other parties, that the "most significant relationship" test applies to determine the choice of law with respect to the rights and liabilities of the parties. Analysis of the "most significant relationship" test demonstrates that New Jersey law not only applies, but that all contacts are purely New Jersey-based and that Massachusetts does not have any interest significant enough to override that of New Jersey.

The PSC agrees that New Jersey state law applies to all issues except the issue of comparative fault. On this issue, the PSC argues that Massachusetts law should apply because, Massachusetts has an overriding interest in the application of its law to this litigation's pretrial proceedings, as a result of the Defendants' need to obtain discovery from Massachusetts-based NECC and other settling defendants. This argument completely ignores New Jersey's interest in protecting its patients, the Plaintiffs, its physicians, the Defendants, and conduct that occurs in New Jersey, the administration of medication. Additionally, the PSC's argument expressly ignores the Defendants' need to obtain the same discovery from NECC and other settling defendants for the issue of proximate cause which is irrespective of comparative fault or joint and several liability.

## LEGAL ARGUMENT

**A. Choice-Of-Law Rules for the Original Forum State Should Govern because Federal Jurisdiction is premised upon Bankruptcy Jurisdiction**

Federal Districts are split as to whether original forum or federal common law should supply the choice-of-law rules for the cases filed outside New Jersey in situations where this Court's jurisdiction is premised on the bankruptcy proceedings. In re Lindsay, 59 F.3d 942, 984 (9th Cir. 1995) (federal common law); In re Coudert Bros, LLP, 673 F.3d 180 (2nd Cir. 2012)

(original forum). However, "[w]here … a bankruptcy proceeding is transferred to a Federal District Court for trial, the choice of law principles of the state in which the District Court sits controls unless the case implicates a significant federal bankruptcy policy, in which event federal choice of law rules apply." In re Gaston & Snow, 284 B.R. 349 (S.D.N.Y 2002), citing In re Gaston & Snow, 243 F.3d 599, 605-07 (2nd Cir. 2001). Here, no significant federal bankruptcy policy is implicated.

Additionally, the distinction between original forum state and federal common law choice-of-law analysis is meaningless. Both the federal common law and original forum of New Jersey apply the "most significant relationship" test sourced from the *Restatement (Second) of Conflicts of Laws*. Aaron Ferer & Sons, Ltd v. Chase Manhattan Bank, 731 F.2d 112 (2d Cir. 1984); P.V. ex rel. T.V. v. Camp Jaycee, 197 N.J. 132, 136, 962 A.2d 453, 455 (2008).

Defendants urge this Court to apply the original forum state's choice-of-law analysis, as New Jersey law provides a thorough analysis of the "most significant relationship" test. In re Coudert Bros, LLP, 673 F.3d at 188. The Defendants agree with the PSC, and other New Jersey Defendants including the Premier Defendants, on the issue of whether to apply the original forum state's choice-of-law analysis.

However, in further agreement with the Premier Defendants, the Defendants oppose the PSC's argument that there is an exception in choice-of-law analysis that requires application of Massachusetts law to the sole issue of comparative fault/joint and several liability. Despite the PSC's argument, under the "most significant relationship test" Massachusetts does not have superior contacts that require the application of Massachusetts law. Accordingly, New Jersey state law must apply to all aspects of this litigation.

### B. New Jersey's Substantive Tort Law Applies Regardless of Whether the Choice-of-Law Rule from New Jersey, Massachusetts or Federal Common Law is Used

All jurisdictions at issue apply the "most significant relationship" test to determine which state's law controls when there are multiple substantially different laws potentially applicable. Restatement (Second) of Conflicts of Laws. Analysis under the "most significant relationship" test reveals New Jersey comparative fault law applies to Defendants to determine the parties' liabilities. The PSC's argument completely the importance of the state in which the injury occurred, and ultimately fails to overcome the unrebuted presumption that New Jersey law controls.

#### 1. The "Most Significant Relationship" Test is Applicable For Determining Controlling Law When Conflicts Exist

The "most significant relationship" test controls in New Jersey. P.V., 197 N.J. at 136, 962 A.2d at 455. Significantly, Massachusetts and Federal Common Law also follow the "most significant relationship" test as stated in *Restatement (Second) of Conflicts of Laws*. In re Engage, Inc., 330 B.R. at 9.

Under this test, the Court must initially determine that there is a distinction between the substance of potentially applicable laws. P.V., 197 N.J. at 143, 962 A.2d at 460. Then, the initial presumption is that the local law of the state where the injury occurred "determines the rights and liabilities of the parties." Id. at 141. Under New Jersey law, "the state in which the injury occurs is likely to have the predominant, if not the exclusive, relationship to the parties and issues in litigation." Id. at 144.

This presumption can only be overcome if another state has more significant relationship to the parties and issues. P.V., 197 N.J. at 143, 962 A.2d at 460. The test to determine whether another state has a more significant relationship to the parties and issues is an examination of the

4

"contacts set forth within § 145 and the cornerstone principles of § 6 [of the *Restatement (Second) of Conflicts of Laws*]." P.V., 197 N.J. at 144-45, 962 A.2d at 461. Massachusetts may have some interest in the litigation, however New Jersey has the most significant interest, as the injuries at issue in the cases against these Defendants occurred in New Jersey, allegedly due to New Jersey physicians' negligence. This leads to the only conclusion that can be reached, that New Jersey Law has the most significant and substantial relationship to the case.

The contacts set forth in § 145 are: "(a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and; (d) the place where the relationship, if any, between the parties is centered." P.V.,197 N.J. at 140-41, 962 A.2d at 458-59. All contacts clearly point to application of New Jersey Law.

### 2. The PSC cannot overcome the presumption that New Jersey Law applies Under the "Most Significant Relationship" Test

At the outset, it must be noted that all parties agree, and the Court has recognized, that a conflict of laws exists. New Jersey comparative fault law will allow the Defendants to apportion liability between all named Defendants, settled or not, to the NECC litigation. The practical result of comparative fault is that the Defendants are liable only for conduct which they had the power to control, administration of medication they purchased. Joint and several liability, applicable in Massachusetts, holds the Defendants potentially liable for all of Plaintiffs' injuries, including NECC's crimes of compounding contaminated medication.

The initial presumption favors the state in which the injury occurred. Here, the Plaintiffs sustained injury in New Jersey when injected by the Defendants in New Jersey. This leads to the inevitable presumption that New Jersey law, specifically the joint tortfeasor liability statute applies. The PSC is unable to overcome this presumption because the New Jersey contacts are

5

substantial, and far outweigh any other state contacts. The injury at issue is the injection with tainted medication, which unequivocally occurred in New Jersey. The Defendants here have no connection whatsoever with Massachusetts, other than administering a medication that was produced in that state. The Defendants are New Jersey physicians, who are not even licensed to practice medicine in Massachusetts. The Plaintiff patients are all New Jersey residents, all of whom initially filed in New Jersey courts. Finally, the relationship between the New Jersey physicians, and the New Jersey Plaintiffs treated in New Jersey is entirely in New Jersey. These factors require application of New Jersey Law.

At no point did a state other than New Jersey enter into consideration when examining the contacts. The PSC mischaracterizes the relationship at issue as that between the Defendants and NECC defendants. This is incorrect. As ably stated by certain Tennessee Defendants, and again by the Premier Defendants (also from New Jersey) the relationship is that between the plaintiff(s) and defendant(s); not that between defendants. Dkt. 2064, p. 13-14, citing RESTATEMENT § 145 cmt 2 (1971).

No credence can be given to the PSC's argument that "place of the injury takes on less importance" when that place is "fortuitous." Dkt. 2004, p. 18. The place of the plaintiffs' injuries cannot be "fortuitous" when the plaintiffs' injuries unequivocally took place in New Jersey. This argument directly contradicts the overriding importance given to the place of the injury by New Jersey law, which the PSC has already conceded should control.

Further, the only interests of the parties that must be given any weight are those parties still involved in the litigation. Those interests are the interests of the New Jersey plaintiffs suing New Jersey physicians for conduct that occurred in New Jersey. There is a no interest of Massachusetts corporations that have settled and are no longer part of the litigation.  No New

Jersey Plaintiff attempted to avail themselves to Massachusetts law, as the cases filed against the Defendants were all filed in New Jersey State Court. Significantly, New Jersey state law, as initially sought by Plaintiffs, does not apply joint and several liability.

New Jersey has a clearly overriding interest in the regulation of its physicians that are licensed and practicing within its borders. New Jersey operates under a comparative fault regime, which the state has deemed sufficient for regulation of all entities operating within New Jersey. New Jersey's choice to select these laws must be respected.

The language of the Bankruptcy Plan makes clear that the Massachusetts based corporations such as NECC are only involved in the litigation to reduce the percentage of comparative fault in New Jersey cases. To that end, there is no financial interest involved for those Massachusetts corporations, which serves to significantly lower any Massachusetts interest in this analysis. Massachusetts therefore has no interest which can be labeled as sufficient to impose its law on New Jersey physicians, practicing in New Jersey, and New Jersey plaintiffs, whom initially sought relief by filing in New Jersey. Accordingly, New Jersey's choice of law with respect to regulation of New Jersey companies should be respected; not overridden by Massachusetts law because the PSC has agreed to settle with the majority of the Massachusetts-based corporations named in this litigation. These Massachusetts-based companies, and some non-Massachusetts-based companies, have been afforded protections through the Bankruptcy Court and the approval of the Chapter 11 plan. That very same plan preserved Defendants' rights to joint tortfeasor contribution while protecting Massachusetts-based corporations from being held accountable.

Ultimately, New Jersey has a more significant relationship to the issues giving rise to the cases against these New Jersey Defendants than Massachusetts. The PSC has not demonstrated a

relationship with Massachusetts significant enough to overcome the presumptive choice of New Jersey law.

### C. New Jersey's "Most Significant Relationship" Test Requires Application of New Jersey Law of All Issues in the Case.

The PSC agrees that New Jersey Law should apply, but also attempts to argue that original forum state rules should not apply to the issue of liability. This argument is premised upon the Defendants' need to obtain discovery from settling Massachusetts entities. PSC's argument follows that Massachusetts law should be imposed to hold the Defendants jointly and severally liable because the Defendants requested this discovery.

There is no distinction between "plaintiffs' substantive claims" and "the issues of joint and several liability and comparative fault," as the PSC attempts to argue. The PSC itself urges adoption of New Jersey law for the Defendants which, as stated, applies to determine the liabilities of the parties. Dkt. 2004, p. 9. Comparative fault is clearly a substantive liability issue that should not be parsed out on the basis that a discovery request was made.

To this end, the PSC relies heavily on the need for discovery from Massachusetts entities to argue that Massachusetts has an interest. New Jersey plaintiffs and defendants have been brought to Massachusetts solely for the pre-trial consolidation advantages provided by a multi-district litigation proceeding. Massachusetts has an interest in regulating conduct occurring in Massachusetts and entities operating out of Massachusetts. The conduct at issue for the New-Jersey physician Defendants did not take place anywhere other than New Jersey. Massachusetts has no interest in regulating New Jersey physicians who treat New Jersey patients in New Jersey.

Finally, the discovery request would have been made regardless of comparative fault issues, as it directly effects proximate cause. The proximate cause issue – whether the physicians conduct in administering the tainted medication was the cause of the Plaintiff's injury - is

irrespective of comparative fault. A discovery request for information that is needed for multiple issues cannot serve as a basis for a state to have an interest. The discovery is still needed on proximate cause, which renders much, if not all of the PSC's argument moot. Again, this weighs in favor of application of New Jersey law.

## CONCLUSION

For the foregoing reasons, it is abundantly clear that New Jersey has the most significant relationship to all issues and parties to this case. For that reason, New Jersey substantive law must apply to all aspects of the case, including comparative fault.

LENOX, SOCEY, FORMIDONI, GIORDANO, COOLEY, LANG & CASEY, LLC
Attorneys for Defendants, **Nitesh Bhagat, M.D., Vanette Perkins, M.D., and Professional Pain Management Associates**

/s/_____
Joseph R. Lang, Esq.

DATED: **July 8, 2015**

9