# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

IN RE:  NEW ENGLAND COMPOUNDING
PHARMACY, INC. PRODUCTS
LIABILITY LITIGATION

**This Document Relates To:**

Handy v. Box Hill Surgery Center, LLC, et al.
No. 1:14-cv-14019-RWZ

Armetta v. Box Hill Surgery Center, LLC, et al.
No. 1:14-cv-14022-RWZ

Torbeck v. Box Hill Surgery Center, LLC, et al.
No. 1:14-cv-1402-RWZ

Kashi v. Box Hill Surgery Center, LLC, et al.
No. 1:14-cv-14026-RWZ

Bowman v. Box Hill Surgery Center, LLC, et al.
No. 1:14-cv-14028-RWZ

Dreisch v. Box Hill Surgery Center, LLC, et al.
No. 1:14-cv-14029-RWZ

Davis v. Box Hill Surgery Center, LLC, et al.
No. 1:14-cv-14033-RWZ

Farthing v. Box Hill Surgery Center, LLC, et al.
No. 1:14-cv-14036-RWZ

MDL No.: 1:13-md-2419-RWZ

## PLAINTIFFS' STEERING COMMITTEE'S RESPONSE TO OBJECTION OF DEFENDANTS BOX HILL SURGERY CENTER, LLC, RITU T. BHAMBHANI, M.D. AND RITU T. BHAMBHANI, M.D., LLC. TO DISMISSAL OF CLAIMS AGAINST SETTLING DEFENDANTS

The Plaintiffs' Steering Committee ("the PSC") submits this response to the Objection of Defendants Box Hill Surgery Center, LLC, Ritu T. Bhambhani, M.D. and Ritu T. Bhambhani, M.D., L.L.C. to Dismissal of Claims Against Settling Defendants ("Box Hill Objection").

## INTRODUCTION

On June 18, 2015, after the time for appealing the United States Bankruptcy Court for the District of Massachusetts' May 20, 2015, order approving and confirming the Third Amended Joint Chapter 11 Plan of New Compounding Pharmacy, Inc. (Bkrtcy. Case No. 12-19882-HJB, Dkt. No. 1355)(the "Confirmation Order") had expired, this Court entered an Order to Show Cause Concerning Dismissal of Claims Against Settling Defendants. *See* Dkt. No. 1992.

On July 2, 2015, Box Hill Surgery Center, LLC, Ritu T. Bhambhani, M.D. and Ritu T. Bhambhani, M.D., L.L.C. (collectively, "the Box Hill Defendants") filed an objection to the dismissal of claims against the settling defendants in the eight cases in which the Box Hill Defendants also have been named as defendants. *See* Dkt. No. 2038.  The Box Hill Defendants contend that, under Maryland law, the releases given by Tort Claimants[1] to the settling defendants as set forth in the Confirmation Order may not preclude claims for contribution against joint tortfeasors and, therefore, "the Settling Defendants will, necessarily, be brought back into the litigation on third-party complaints by the Box Hill Defendants."  Box Hill Objection, at 3.  As the objection is based upon a fundamental misunderstanding of the releases and channeling injunctions contained in the Amended Plan and Confirmation Order and applicable law, it should be overruled.

## ARGUMENT

### PURSUANT TO THE CONFIRMATION ORDER, THE SETTLING DEFENDANTS CANNOT BE "BROUGHT BACK INTO THE LITIGATION" AND CLAIMS AGAINST THEM SHOULD BE DISMISSED.

---

[1] Capitalized terms used herein have the meaning set forth in the Third Amended Joint Plan of Reorganization (Bktcy Case No. 12-19882-HJB, Dkt. No. 1352-1)(the "Plan").

1

The Plan and Confirmation Order provide for releases and channeling injunctions with respect to the Shareholder and Affiliate Released Parties and the Other Contributing Parties (collectively, the "Settling Defendants")The releases provide as follows:

> <u>Releases in Favor of Shareholder and Affiliate Released Parties (Other than Ameridose</u>.  Subject in all respects to the provisions of Section 10.04 of the Plan, on the Effective Date, the Shareholder and Affiliate Released Parties (other than Ameridose), as well as their respective attorneys and advisors (solely in their respective capacities as such), shall be forever and unconditionally released from any and all Tort Claims, Estate Causes of Action, contributor and Affiliate Released Claims, and all other Claims, debts, obligations, demands, liabilities, suits, judgments, damages, rights and causes of action, whatsoever, by all Entities, whether direct or indirect, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part upon any act or omission, transaction, transfer, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor or to the Debtor's products, including, without limitation, the Drugs, the Chapter 11 Case, the Plan, the Disclosure Statement, the Debtor's estate, the Policies, GDC and the negotiation or funding of the Settlement Agreements; provided, however, that the right to enforce the obligations under the Shareholder Settlement Agreement, the Shareholder Escrow Agreement and the Plan and the contracts, instruments, releases and other agreements and documents delivered thereunder, and the right to enforce the provisions of the Shareholder Settlement Agreement with regard to "Non-Disclosed Assets" (as defined therein), shall be expressly preserved by the Estate Representative in accordance with the terms of the Shareholder Settlement Agreement.

Confirmation Order, at ¶ 10; Plan, at ¶ 10.05(i)(v).

> <u>Releases in Favor of Other Contributing Parties</u>.  Except as to the rights and claims expressly preserved by the Settlement Agreements and subject in all respects to the provisions of Section 10.04 of the Plan, on the Effective Date, each Other Contributing Party (other than Ameridose), including, without limitation, GDC, the Individual GDC Insureds and Preferred Mutual, shall be forever and unconditionally released from any and all Estate Causes of Action, Tort Claims, NECC Claims, and all other Claims, debts obligations, demands, liabilities, suits judgments, damages, rights and causes of action, whatsoever, by all Entities, whether direct or indirect, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part upon any act or omission, transaction, transfer, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor or to the Debtor's products, including, without limitation, the Drugs, the Chapter 11 Case, the Plan, the Disclosure Statement, the Debtor's estate, the Policies, GDC and the negotiation or funding of the Settlement Agreements; provided, however, that this release shall not in any way limit the right of the Estate Representative to enforce the obligations under the Plan, the Settlement Agreements, and the contracts

instruments, releases and other agreements and documents delivered thereunder in the Estate's favor.[2]

Confirmation Order, at ¶ 12; Plan, at ¶ 10.05(i)(vi).

The channeling injunctions provide as follows:

Injunction in Favor of Shareholder and Affiliate Released Parties. Upon the Effective Date, all Persons or Entities shall be permanently barred, enjoined, and restrained from commencing, prosecuting, continuing or asserting, either derivatively or on behalf of themselves, in any court, arbitration proceeding, administrative agency, or other forum in the United States of America or elsewhere, any and all Claims released pursuant to Section 10.05 of the Plan or under the Shareholder Settlement Agreement, whether the Person or Entity had actual or constructive notice of the terms of the Shareholder Settlement Agreement, Plan or Confirmation Order or otherwise, *except that* this injunction shall not apply to the right of the acting Estate Representative to enforce the Substitute Lien and the obligations and the acting Estate Representative's rights under the Shareholder Settlement Agreement, the Escrow Agreement, the Plan, and the Confirmation Order.

Confirmation Order, at ¶ 15; Plan, at ¶ 10.06(iii).

Injunction in Favor of the Other Contributing Parties. Except as to the rights and claims created or expressly preserved by the Plan, the Settlement Agreements, the Escrow Agreement and the Confirmation Order, upon the Effective Date, all Persons or Entities shall be permanently barred, enjoined, and restrained from asserting against the Other Contributing Parties, including, without limitation, GDC, the Individual GDC Insures and Preferred Mutual, any past, present and future rights, interests, obligations, claims, causes of action, NECC Claims, damages (including punitive damages), demands (including demands for contribution, indemnity or otherwise), liabilities, expenses, fees (including, but not limited to, attorneys' fees, expert fees, consulting fees and other professional fees) and costs of any kind or any type whatsoever, whether known or unknown, whether foreseen or unforeseen, whether contingent or actual, whether direct or indirect, liquidated or unliquidated, whether statutory or common law, whether asserted or unasserted and whether based on contract, negligence, bad faith, willful, wanton or malicious conduct, or any other theory in law or equity concerning, arising from or relating to any actual or alleged past, present or future act, omission, defect, incident, event or circumstance from the beginning of the world to the Effective Date, in any way relating to or in connection with (i) the Debtor, the Drugs or any and all products of and/or distributed by the Debtor, or (ii) the Debtor's estate, the Chapter 11 Case, the Plan, the Disclosure Statement, the Settlement Agreements and/or the Policies.

Confirmation Order, at ¶ 16; Plan, at ¶ 10.06(iv).

---

[2] The Confirmation Order also provides a release of claims by Tort Claimants of the Affiliate Parties (other than Ameridose) and the Contributing Parties. As explained *infra*, this release only applies to Tort Claimants and not joint tortfeasors.

These provisions clearly and unambiguously bar the Box Hill Defendants from bringing any third-party claim for contribution against any of the Settling Defendants.  There is no dispute that the Box Hill Defendants (i) are creditors of the NECC bankruptcy estate, (ii) were given numerous notices of the Plan, *see* e.g. Dkt. Nos. 1573, 1706, 1707, 1799, 1801, 1808, 1831, 1842, & 1863, and (iii) did not object to the confirmation of the Plan or appeal the Confirmation Order.  Consequently, as this Court has noted in its Order to Show Cause, "[t]he Plan is final and no longer subject to appeal, and the releases and/or channeling injunctions went into effect on June 4, 2015."  Dkt. 1992.  *See also* 11 U.S.C. § 1141(a)("The provisions of a confirmed plan bind the debtor, . . . and any creditor, . . . whether or not the claim or interest of such creditor is impaired under the plan and whether or not such creditor . . . has accepted the plan.")

Relying exclusively on the Maryland Uniform Contribution Among Joint Tort-feasors Act, Md. Code Cts. & Jud. Proc. §§ 3-1401, *et seq.* ("the Maryland Act"), the Box Hill Defendants contend that the Tort Claimants' releases as set forth in the Plan may not extinguish their right to seek contribution from the Settling Defendants as joint tortfeasors.  *See* Box Hill Objection, at 2-3.  In pertinent part, § 3-1405 of the Maryland Act, provides that "[a] release by the injured person to one joint tort-feasor does not relieve the joint tort-feasor from liability to make contribution to another joint tort-feasor unless the release . . . [p]rovides for a reduction, to the extent of the pro rata share of the released tort-feasor, of the injured person's damages recoverable against all other tort-feasors."[3]  In Maryland, "one who is not determined a joint tort-feasor is not subject to contribution under the Maryland Act; without an admission or adjudication of liability, a party who enters into a release is deemed a volunteer, not a joint-tortfeasor."  *Mercy Med. Ctr. V. Julian*, 429 Md. 348, 357, 56 A.3d 147, 152 (Md. 2012).  While observing that "the releases entered into by the settling defendants do not expressly articulate that the settling defendants are to be considered joint tort-feasors[,]" Box Hill Objection, at 2, the

---

[3] The Box Hill Defendants concede that the first prong of Md. Code Cts. & Jud. Proc. § 3-1405 (*i.e.*, that the release "[i]s given before the right of the other tort-feasor to secure a money judgment for contribution has accrued[.]"), has been satisfied. *See* Box Hill Objection, at 3 ("In the instant matter, the right of the Box Hill Defendants to secure a judgment for contribution against the settling defendants had not yet accrued.")

Box Hill Defendants argue that unless "this Court interprets the releases between the Plaintiffs and the settling defendants to provide for joint tort-feasor status with the attendant entitlement by the Box Hill Defendants for a pro rata reduction of future liability the Box Hill Defendants may have to the Plaintiffs[,]" then the claims against the Settling Defendants should not be dismissed. *Id.* at 3. As the Box Hill Defendants reason, the Settling Defendants would "necessarily[] be brought back into the litigation on third-party complaints by the Box Hill Defendants[,]" and, "[t]herefore, it serves the interests of justice and the streamlining of this MDL litigation for this Court to make a determination as to the joint tort-feasor status of the settling defendants prior to confirmation of their dismissal." *Id.*

Putting aside the fact that Massachusetts, and not Maryland, law applies here,[4] this Court need not concern itself with the Box Hill Defendants' interpretation of the Maryland Act and the Tort Claimants release of the Settling Defendants contained in the Plan and the Confirmation Order because the Box Hill Objection suffers from a more fundamental and fatal flaw. The Box Hill Defendants simply ignore the other releases and channeling injunctions in the Plan and the Confirmation Order, and it is those releases and challenging injunctions that expressly prohibit the Box Hill Defendants from bringing third-party complaints against the Settling Defendants for contribution. *See* Confirmation Order, at ¶¶ 15 & 16. Hence, the Box Hill Defendants have failed to show cause why the claims against the Settling Defendants should not be dismissed at this time.

---

[4] The Plan contains a choice-of-law clause that provides that "the rights and obligations under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the Commonwealth of Massachusetts, without any effect to the principles of conflicts of law thereof." Plan, at ¶ I.B.1.222. Of course, the Plan is a binding contract, *see In re New Seabury Co. Ltd. P'ship*, 450 F.3d 24, 33 (1st Cir. 2006), and "[c]hoice of law clauses in contracts are *prima facie* valid and generally binding. . . ." *Supplies & Servs., Inc. v. Nacco Indus., Inc.*, 461 B.R. 699, 706 (1st Cir. BAP 2011).

## CONCLUSION

For the reasons set forth above, this Court should overrule the Box Hill Objection and dismiss the claims against the Settling Defendants with prejudice.  A Proposed Order is attached hereto as Exhibit A.

Respectfully submitted:

HAGENS BERMAN SOBOL SHAPIRO LLP


By:  /s/ *Thomas M. Sobol*
Thomas M. Sobol, Esq.
Kristin Johnson, Esq.
55 Cambridge Parkway, Suite 301
Cambridge, MA  02142
Phone: (617) 482-3700
Fax: (617) 482-3003
tom@hbsslaw.com
kristenj@hbsslaw.com

*Plaintiffs' Lead Counsel*
*For the Plaintiffs' Steering Committee*

**July 10, 2015**

## CERTIFICATE OF SERVICE

I, Thomas M. Sobol, hereby certify that on this day, July 10, 2015, I caused a copy of the foregoing document, which was filed using this Court's ECF system, to be served electronically upon those parties registered to receive ECF service.

/s/ *Thomas M. Sobol*
Thomas M. Sobol, Esq.