# EXHIBIT 1

## ANSWERS TO PSC'S FIRST SET OF INTERROGATORIES
### (REFERENCED IN NOTICE)

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | ) ) ) | MDL No. 02419 Docket No. 1:13-md-2419-RWZ |
| | ) | |
| ──────────────────────── | ) | |
| | ) | |
| This document relates to: | ) | |
| | ) | |
| Handy v. Box Hill Surgery Center, LLC, et al. No: 1:14-cv-14019-RWZ | ) ) | |
| | ) | |
| Armetta v. Box Hill Surgery Center, LLC, et al. No. 1:14-cv-14022-RWZ | ) ) | |
| | ) | |
| Torbeck v. Box Hill Surgery Center, LLC, et al. No. 1:14-cv-14023-RWZ | ) ) | |
| | ) | |
| Kashi v. Box Hill Surgery Center, LLC, et al. No. 1:14-cv-14026-RWZ | ) ) | |
| | ) | |
| Bowman v. Box Hill Surgery Center, LLC, et al. No. 1:14-cv-14028-RWZ | ) ) | |
| | ) | |
| Dreisch v. Box Hill Surgery Center, LLC, et al. No. 1:14-cv-14029-RWZ | ) ) | |
| | ) | |
| Davis v. Box Hill Surgery Center, LLC, et al. No. 1:14-cv-14033-RWZ | ) ) | |
| | ) | |
| Farthing v. Box Hill Surgery Center, LLC, et al. No. 1:14-cv-14036-RWZ | ) ) | |

## BOX HILL SURGERY CENTER, LLC, RITU BHAMBHANI, M.D., AND RITU T. BHAMBHANI, M.D., LLC'S ANSWERS TO THE PLAINTIFFS' STEERING COMMITTEE'S FIRST SET OF INTERROGATORIES

Pursuant to Rule 26 and 33 of the Federal Rules of Civil Procedure ("FRCP"), Box Hill

Surgery Center, LLC, Ritu Bhambhani, M.D. and Ritu T. Bhambhani, M.D., LLC (collectively

"Box Hill Defendants," "Box Hill," or "Defendants") by and through undersigned counsel,

provides the following Answers to the Plaintiffs' Steering Committee's First Set of Interrogatories, and hereby state as follows:

(a)    The information supplied in these Answers is not based solely on the knowledge of the executing party, but includes the knowledge of the parties, their representatives and attorneys, unless privileged.

(b)    The word usage and sentence structure may be that of the attorney assisting in the preparation of these Answers and thus, does not necessarily purport to be the precise language of the executing party.

(c)    In setting forth their responses, Defendants do not waive the attorney/client, work product, or any other privilege or immunity from disclosure which may attach to information or documentation called for in, or responsive to, any interrogatory.  In answering all or any portion of any interrogatory, these Defendants do not concede the relevance or materiality of the interrogatory or the subject matter to which the interrogatory refers.

Accordingly, the Defendants submit these responses and reserve:

(1)    All objections as to the competency, relevancy, materiality, privilege, and admissibility as evidence for any purpose of the information or documentation referred to or responses given, or the subject matter thereof, in any subsequent proceedings in, or the trial of, this action or any other action or proceeding;

(2)    All objections to Plaintiffs' Interrogatories to the extent that the Interrogatories exceed the limits prescribed by this Court;

2

(3)     Many of the Interrogatories include numerous sub-parts, well over the forty permitted under the Court's MDL Order No. 9, Dkt. 1425 ("Common Discovery Order"). In a show of good faith and in an attempt to cooperate with the orderly administration of common discovery, Defendants will attempt to answer all Interrogatories posed, but will reserve the right to refuse to answer any Interrogatories beyond the forty permitted by the Common Discovery Order;

(4)     The right to object to other discovery procedures involving or relating to the subject matter of the Interrogatories herein responded to; and

(5)     The right at any time to revise, correct, add to, clarify or supplement any of the responses set forth herein, or information or documentation referred to herein.

## ANSWERS

1.     When, how and why did Box Hill decide to purchase compounded medications from the NECC? In responding, please identify each and every individual involved in the decision, and describe each and every step in the decision making process.

**ANSWER TO INTERROGATORY NO. 1:**

**Objection.  This Interrogatory is overly broad.  Subject to and without waiving said objection, Defendants state that Dr. Bhambhani was the sole individual at Box Hill, who made decisions about purchasing preservative-free methylprednisolone acetate ("MPA") from NECC.  Dr. Bhambhani had used preservative-free MPA from NECC when she practiced at a previous medical practice, even before she started the Box Hill Surgery Center.  She was not involved in the purchasing decisions at the previous medical practice and had not experienced any previous adverse events from NECC's MPA.  NECC was licensed with the Maryland Board of Pharmacy.  As such, she continued to purchase MPA from NECC while at Box Hill.**

2.     Identify each communication (including face-to-face, telephone, e-mail, or other communications) between NECC (including its agents, employees or representatives) and Box Hill.  For each communication identified, please provide the following information.

a) the names, job titles, and contact information for each person involved in the communication;

b) the date, time, length, mode and location of each communication or
discussion;

c) the notes, memoranda, recordings writings or other records were kept of any of
those conversations or communications; and

d) state as specifically as possible what each party to the communication or
conversation said and state what actions Box Hill took, if any, as a result of each
communication or conversation.

**ANSWER TO INTERROGATORY NO. 2:**

**Objection.  This Interrogatory is vague, overly broad in time and scope, and
unduly burdensome.**

**Subject to and without waiving said objections, interactions have already
been described in documents produced in response to the PSC Revised Subpoena or
First Request for Production of Documents. In addition, Andrew Vickers, R.N.,
ordered the MPA from NECC at Dr. Bhambhani's request.  He does not recall ever
physically seeing a representative from NECC up to and including the meningitis
outbreak.  He rarely spoke to an NECC representative named "Jay," but that would
have been Jay calling to leave a message with pleasantries.  Mr. Vickers cannot
recall any specific telephone calls, and on the rare occasion he called NECC, it was
to confirm that an order for MPA was received.  Mr. Vickers cannot recall talking
to anyone at NECC about pricing as to the best of his recollection the price charged
was stable.**

**On September 26, 2012, Box Hill received a Voluntary Product Recall notice.
On September 27, 2012, Dr. Bhambhani saw the recall notice when she arrived at
the office.  She called NECC and spoke to someone who identified himself as a
pharmacist named "Barry."  Dr. Bhambhani was told that a physician had found
gray material in the vials.  "Barry" made it sound like it was not a big deal.  Notes
written contemporaneously to that call concerning that conversation were included
on a document Bates Stamped as BHSC000021, which was already produced.
In general, it was Dr. Bhambhani's and/or Mr. Vickers' understanding from
working with NECC that providing a patient list, such as from a patient schedule,
would be sufficient for the order.**

**Any other correspondence with NECC would have been included in Box
Hill's document production either in response to Plaintiff's Revised Subpoena or the
First Request for Production of Documents.**

3.    Please list the date, location and attendees present at each and every meeting
(business or social) between or among NECC (including its agents, employees or

representatives) and Box Hill for the time period from January 1, 2007 through December 31, 2012.

**ANSWER TO INTERROGATORY NO. 3:**

**Objection.  This interrogatory is overly broad in time and scope.  Subject to and without waiving said objections, see Answers to Interrogatories 1 and 2. Further, Defendants do not recall any "meetings" with NECC representatives.**

4.      Identify each and every communication (including emails, conversations, meetings, memos, etc.) that occurred between Box Hill Surgery Center, LLC; Ritu T. Bhambhani, M.D.; and/or Ritu T. Bhambhani, M.D., LLC, including any agents, employees, or representatives of same, regarding compounding pharmacies, acquiring medication from compounding pharmacies, NECC (including its agents and representatives), and/or the acquisition of injectable steroids.  For each such communication, please specify the parties to the communication, the date of the communication, the mode of the communication, and the content of the communication.

**ANSWER TO INTERROGATORY NO. 4:**

**Objection.  This Interrogatory seeks irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence.  Magistrate Judge Boal has already ruled that information regarding health care providers' procurement of MPA or MPA equivalents from any supplier other than NECC is irrelevant [Dkt. 572].  Additionally the request is overly broad, unduly burdensome and seeks information that is protected from discovery by the work-product doctrine, attorney-client privilege, and/or HIPAA.  Additionally, the Interrogatory contains no time limitation, and, as such, is overly broad and unduly burdensome.**

**Subject to and without waiving said objections, see Answers to Interrogatories 1, 2 and 3, as well as documents produced in response to the Plaintiff's Revised Subpoena and First Set of Requests for Production of Documents.**

5.      Provide the total quantity of MPA purchased by you from NECC in 2012, and specify the dose and volume ordered and the price paid per vial for preservative and preservative-free MPA that you purchased.

**ANSWER TO INTERROGATORY NO. 5:**

**Objection.  The Interrogatory is overly broad and unduly burdensome. Subject to and without waiving said objections, see invoices included in Box Hill's responses to the PSC's First Set of Requests for Production and Plaintiffs' Revised Subpoena, which reflect the requested information for preservative-free MPA. Defendants did not purchase any MPA with preservatives from NECC.**

5

6.      Identify each company, manufacturer, compounder or distributor from whom you purchased any steroid used in epidural steroid injections from January 1, 2008, forward.  Please specify the date of each purchase, the quantity ordered, and how much Box Hill paid for each vial of injectable steroid.

**ANSWER TO INTERROGATORY NO. 6:**

**Objection.  This interrogatory seeks irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence.  Magistrate Judge Boal has already ruled that information regarding health care providers' procurement of MPA or MPA equivalents from any supplier other than NECC is irrelevant [Dkt. 572]. Additionally, the request is overly broad and unduly burdensome. Subject to and without waiving said objections, Box Hill purchased all MPA administered epidurally from NECC.  See also Answer to Interrogatory 5.**

7.      Describe each and every action that Box Hill took in order to ensure that MPA injected into patients was safe and free from contaminants.

**ANSWER TO INTERROGTORY NO. 7.**

**Objection.  The Interrogatory is overly broad, unduly burdensome and improperly attempts to shift the burden of proof from the Plaintiff, where it belongs, to the Defendant.**

**Subject to and without waiving said objections, and without further limitation to supplementation through written responses, witness testimony, and expert discovery, as discovery progresses, the Box Hill defendants state that they complied with recognized standards of care to ensure the MPA injected into patients was safe.  At the time of the outbreak, Dr. Bhambhani had used MPA purchased from NECC for more than five years, including while she practiced with another physician practice.  Dr. Bhambhani did not experience any problems related to NECC's MPA.  Dr. Bhambhani also ensured that NECC was licensed by the Maryland Board of Pharmacy. In addition, the procedures and injections themselves were performed in compliance with the standards of acceptable professional practice and for maintaining sterility.  Dr. Bhambhani and the Box Hill Defendants used proper sterile techniques and the same has not been questioned.  Dr. Bhambhani also checks BUD dates to ensure that no expired medication is used.  Dr. Bhambhani inspects the vials used during the procedure to ensure that there are no visible signs of contamination.**

8.      Describe how medication ordered from NECC medication [sic] was prescribed, ordered, received, inventoried, stored, dispensed and administered, including in your response a description of any paperwork, prescription forms, labels or forms associated with these tasks.

**ANSWER TO INTERROGATORY NO. 8:**

Objection. This Interrogatory is vague, overly broad, and unduly burdensome. Subject to and without waiving said objections, Box Hill only ordered MPA from NECC up until the time of the outbreak. They were told by NECC that they only needed to provide patient lists. Defendants sent patient lists from a patient schedule with their order forms. Documents that reflect that information were previously produced in response to the PSC Revised Subpoena. There may have been times when a phone call was made to ensure the order was received, but that was rare. When a shipment arrived, Mr. Vickers opened the box. The vials were wrapped in foil to further limit exposure to light. There may have been a shipping invoice in the box as well. Mr. Vickers would have stored the vials in the operating room in a double-locked storage cabinet where they remained until the procedure. As needed, Dr. Bhambhani would remove the vial from the storage cabinet and check the vial and the label before administering the MPA to the patient. She did so using proper sterile technique.

9.    Describe in detail every gift, sample, incentive, promotion, thank you gift, and/or discount that Box Hill (or anyone associated with it) ever received from NECC (including its agents, employees or representatives) or any wholesaler or distributor of any injectable steroid.

**ANSWER TO INTERROGATORY NO. 9:**

Objection. This Interrogatory is overly broad and seeks irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence. Whether Box Hill received a discount from suppliers other than NECC or for any steroid other than preservative-free MPA from NECC is irrelevant to the claims forming the basis of the Plaintiffs' Complaints and not reasonably calculated to lead to the discovery of admissible evidence. Magistrate Jude Boal has already ruled that information regarding health care providers' procurement of MPA or MPA equivalents from any supplier other than NECC is irrelevant [Dkt.572]. Further, to the extent this Interrogatory requests information regarding anyone "associated with Box Hill," it is vague, overly broad and unduly burdensome, and the Interrogatory should be directed to those individuals if they are not members, employees, or former employees of Box Hill. Further, the term "discount" is undefined.

Subject to and without waiving said objections, the prices for the MPA are reflected in the invoices Box Hill already produced in Response to the PSC's Revised Subpoena or is producing with their Responses to the PSC's First Set of Requests for Production, if applicable. In addition, the Box Hill Defendants have not received anything from NECC, including gifts, samples, promotions, lunches, incentives, or discounts to the best of their knowledge.

10.    Identify each Box Hill employee during 2012 by name and job title, and state whether each such employee is still employed by the company. Please also give a general

description of the duties of each such person. For each person who is no longer employed by Box Hill provide a year of birth, last known address, e-mail, and telephone number.

**ANSWER TO INTERROGATORY NO. 10:**

Objection. This Interrogatory is overly broad to the extent it requests the names of each Box Hill employee even if they had no interaction or involvement with NECC, MPA, the procedures at issue, or the meningitis outbreak. It also seeks a general description of job duties unrelated to the purchase or ordering of MPA from NECC, and of those employees who were hired after the meningitis outbreak. This Interrogatory also seeks sensitive, personal information regarding individuals that have absolutely no relation to the allegations being made. Defendants also state that their employees and former employees and agents are covered by the attorney-client privilege and any contact with these individuals must be facilitated through undersigned counsel.

Subject to and without waiving said objections, Box Hill states that the following were employees at some point in 2012:

**Ritu Bhambhani, M.D.**      **Physician**                        **Employed**

**Stacy Gilbow**                  **Reception/Front desk**      **Employed**
        General administrative tasks such as answering phones, scheduling, and
        filing.

**Shubhra Mathur**            **Reception**                     **No longer employed**
        General administrative tasks such as answering phones, scheduling, and
        filing.

**Tina Barranco**               **Reception/billing**            **No longer employed**
        General administrative tasks such as answering phones, scheduling, filing,
        and data entry.

**Tabatha Dill**                  **Data entry**                     **No longer employed**

**Shannon Fay**                 **Reception**                     **No longer employed**
        General administrative tasks such as answering phones, scheduling, and
        filing.

**Stephanie Johnson**         **Reception**                     **No longer employed**
        General administrative tasks such as answering phones, scheduling, and
        filing.

**Evangela Saunders**         **Medical Assistant**           **No longer employed**
        General medical assistant duties, clean-up, pre-op/recovery, discharge
        instructions, etc.

**Emily Smith**          Reception          No longer employed
General administrative tasks such as answering phones, scheduling, and
filing.

**Gary Gallagher**          X-ray technologist          Employed
General duties of x-ray technologist in procedure room.

**Jane Kauppinen**          X-ray technologist          Employed
General duties of x-ray technologist in procedure room.

**Andrew Vickers**          Nurse          Employed
Nurse Manager for BHSC, general nursing functions, purchasing and
ordering drugs including MPA from NECC at Dr. Bhambhani's direction.

**Lyndsay Martin**          Billing/data entry          No longer employed
General administrative tasks such as data entry, billing, and filing.

11.     Please identify every employee or agent of Ritu T. Bhambhani, M.D., LLC, who
performed any duties or functions for Box Hill Surgery Center, LLC, and for each such person,
please state:

        a.     the person's name, job title and contact information;

        b.     a description of the duties or functions performed; and

        c.     a statement of whether the person continues to be employed by or
affiliated with either Box Hill Surgery Center, LLC, and/or Ritu t.
Bhambhani, M.D., LLC.

**ANSWER TO INTERROGATORY NO. 11:**

        **Objection.  This Interrogatory is vague, overly broad and unduly
burdensome, especially to the extent it is not limited in time and scope, as it appears
to request information on "every employee or agent" ever employed by Box Hill.
Further, it seeks information that is not reasonably calculated to lead to the
discovery of relevant or admissible evidence.  Plaintiffs are also referred to Answer
No. 10, which addresses a very similar question.
Subject to and without waiving said objections, the following employees were
involved in the actions with NECC related to the allegations in this case:
Ritu Bhambhani, M.D. – Dr. Bhambhani is a physician in the practice.  She made
the decision to purchase MPA from NECC.
Andrew Vickers, R.N. – Mr. Vickers is a nurse who would physically order the
MPA from NECC.  He did not participate in the decision to purchase MPA, but
discussed details about the MPA orders and shipping, if necessary, with NECC.**

12.     Describe in detail the policies, practices and procedures in place from January 2010 to date regarding the purchase of medications by Box Hill, including, but not limited to the purchase of compounded sterile preparations.  Specify whether each such policy, practice, or procedure was written or oral, and identify the nature and location of any documents pertaining or relating to each such policy, practice, or procedure.  In lieu of describing each such policy, practice, or procedure, you may attach a copy of the same.

**ANSWER TO INTERROGATORY NO. 12:**

**Objection.  This Interrogatory is overly broad and seeks irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence.  Magistrate Judge Boal has already ruled that information regarding health care providers' procurement of MPA or MPA equivalents from any supplier other than NECC is irrelevant [Dkt. 572].**

**Subject to and without waiving said objections, Plaintiffs are referred to Answer No. 1.  Further, Box Hill is in the process of identifying any such policies, practices, or procedures.  This Answer may be supplemented as necessary.**

13.     Please describe in detail all systems, policies and procedures used in Box Hill from January 2010 to date relative to the evaluation and/or selection of a compounding pharmacy for the purchase of medications.  Specify whether each such policy, practice, or procedure was written or oral, and identify the nature and location of any documents pertaining or relating to each such policy, practice, or procedure.  In lieu of describing each such policy, practice, or procedure, you may attach a copy of the same.

**ANSWER TO INTERROGATORY NO. 13:**

**Objection.  This Interrogatory is overly broad and seeks irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence.  Magistrate Judge Boal has already ruled that information regarding health care providers' procurement of MPA or MPA equivalents from any supplier other than NECC is irrelevant [Dkt. 572].**

**Subject to and without waiving said objections, Plaintiffs are referred to Answers No. 1 and 12.**

14.     Please indicate whether Box Hill ever consulted with any pharmacist or hospital pharmacy department regarding whether to purchase medications from NECC, or from any other compounding pharmacy, and, if so, for each such consultation, identify the person(s) involved, the date(s) of each such consultation, the substance of each such consultation, and identify the nature and location of any and all documents evidencing each such communication.

**ANSWER TO INTERROGATORY NO. 14:**

**Objection.  This Interrogatory is overbroad and seeks irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence. Magistrate Judge Boal has already ruled that information regarding health care providers' procurement of MPA or MPA equivalents from any supplier other than NECC is irrelevant [Dkt. 572].**

**Subject to and without waiving said objections, the acceptable standard of professional practice did not require Box Hill to consult with a pharmacist or hospital pharmacy department regarding whether to purchase medications from NECC.  Further, Plaintiffs are referred to Answer No. 1.**

15.    Does Box Hill contend that any other person or entity is responsible or caused the injuries and deaths that are the subject of this litigation?  If so, identify each such person or entity and state the factual basis for a contention that any other person or entity was responsible for or caused the injuries and deaths forming the basis of this litigation.

**ANSWER TO INTERROGATORY NO. 15:**

**Objection.  This Interrogatory is vague, overly broad, unduly burdensome, and improperly attempts to shift the burden of proof from the Plaintiffs to the Defendants.  Subject to and without waiving said objections, the Box Hill Defendants deny all allegations of wrongdoing against them and contend that they did not cause Plaintiffs' alleged injuries.  In addition, Defendants contend that if any liability exists it lies with NECC, the so-called individual insiders and/or affiliated defendants, the so-called National Defendants, the FDA, Massachusetts Board of Registration in Pharmacy, and/or other federal or Maryland licensing or regulatory agencies, such as the Maryland Board of Pharmacy.**

16.    State the name and address of any expert witness who you expect to call at the trial of this cause, and for each and every such expert witness, please provide all information and material required by Fed. R. Civ. Pro. 26(a)(2)(B).

**ANSWER TO INTERROGATORY NO. 16:**

**The Box Hill Defendants will make the required disclosures in accordance with the Federal Rules of Civil Procedure and/or any court-ordered schedule.**

17.    State the name and address of any person who you expect to offer opinion testimony at the trial of this case, irrespective as to whether such individual is an "expert" as defined by Fed. R. Civ. Pro. 26.  With respect to each such individual, please state their name and address, the subject matter on which the individual is expected to testify, the substance of the facts and opinions to which the individual is expected to testify and a summary of the grounds for each opinion.

**ANSWER TO INTERROGATORY NO. 17:**

> **Counsel for the Box Hill Defendants have not yet determined what witnesses they intend to call at trial.  This response will be supplemented in compliance with the Federal Rules of Civil Procedure and any applicable scheduling order.**

18.     State the full name, address, telephone number, job title and employer of each and every person believed by Box Hill to have knowledge of facts regarding the claims asserted in this litigation, any defenses thereto, and/or any issues germane to this litigation.  Please include any person believed to have knowledge of rebuttal or impeachment evidence, and for each person listed, please identify the subject matter of their knowledge and provide a brief description of their knowledge.

**ANSWER TO INTERROGATORY NO. 18:**

> **Objection.  This Interrogatory is overly broad, unduly burdensome, duplicative, and seeks information protected from discovery by the attorney-client privilege and the work-product doctrine.  The Plaintiffs can readily and easily obtain this information from (1) Box Hill's Rule 26(a)(1) initial disclosures and discovery responses; (2) the initial disclosures and discovery responses of other parties; (3) the public reports regarding the investigation of NECC and the other Defendants; and (4) the Plaintiffs' medical records.**

19.     When and how did you become aware of the fungal meningitis outbreak associated with NECC's preservative-free MPA?

**ANSWER TO INTERROGATORY NO. 19:**

> **It appears that on Wednesday, September 26, 2012, Box Hill received a voluntary recall notice by fax from NECC.  Dr. Bhambhani saw the recall notice on September 27, 2012, when she returned to the office, and quarantined any remaining vials of the recalled MPA.  Dr. Bhambhani called NECC and spoke to an individual who identified himself as a "pharmacist" with the name "Barry."  Dr. Bhambhani was told by "Barry" that a physician at another facility noticed gray material in the vials, but that no patient problems had been reported.  Dr. Bhambhani later received communication from the CDC, the Maryland Department of Health and Mental Hygiene, the FBI, the U.S Attorney's Office, and various other state and federal agencies.  Documentation reflecting such correspondence and communication was produced by Defendants in response to the PSC's Revised Subpoena.**

20.     If you became aware that Box Hill has received contaminated medication from NECC, specify when you received any and all information relative to possible contamination, the substance of all such information, the identify of each person receiving all such information, the means by which you received any and all such information, describe any and all actions taken by

you in response to any such information, and identify the nature and location of any and all documents evidencing such information.

**ANSWER TO INTERROGATORY NO. 20:**

**Objection. This Interrogatory is vague, overly broad, unduly burdensome, and unreasonably duplicative pursuant to FRCP 26(b)(2)(c) and this Court's Order [Dkt. 572 at 11-12]. Defendants provided the same information and related documentation in response to the PSC's Revised Subpoena Request propounded on the Box Hill Defendants. Plaintiffs are also referred to Answer No. 19.**

21.     Describe when and how you began contacting patients after learning of the fungal meningitis outbreak.

**ANSWER TO INTERROGATORY NO. 21:**

**Objection. This Interrogatory is vague, overly broad, unduly burdensome, and unreasonably duplicative pursuant to FRCP 26(b)(2)(c) and this Court's Order [Dkt. 572 at 11-12]. Defendants provided the same information and related documentation in response to the PSC's Revised Subpoena Request propounded on the Box Hill Defendants. Plaintiffs are also referred to Answer Nos. 19 and 20.**

22.     Please explain in detail all actions that you took in order to preserve evidence in connection with the fungal meningitis outbreak.

**ANSWER TO INTERROGATORY NO. 22:**

**Objection. This Interrogatory is vague, overly broad, unduly burdensome, assumes liability or legal action, and seeks information without clearly defining the terms "preserve" or "evidence." Subject to and without waiving said objections, Defendants preserved records, as they would have in the ordinary course of business, and complied with all requests and inquiries made by any and all state or federal licensing, regulatory, or investigatory agencies involved with the investigation of NECC and the meningitis outbreak. The contaminated lots were also quarantined and not used.**

23.     Describe in complete detail the business structure of Box Hill Surgery Center, LLC and its relationships with Ritu T. Bhambhani, M.D. and Ritu T. Bhambhani, M.D., LLC, including but not limited to:

      a)     the names and job title of each officer of Box Hill Surgery Center, LLC;

      b)     the name of each manager of Box Hill Surgery Center, LLC;

      c)     the name of each owner or member of Box Hill Surgery center, LLC;

d)  all contracts, agreements, cost-sharing arrangements, profit-sharing arrangements, and patient referral arrangements existing between or among Box Hill Surgery Center, LLC and Ritu T. Bhambhani, M.D., and/or Ritu T. Bhambhani, M.D., LLC;

e)  all financial arrangements that presently exist or have previously existed between or among Box Hill Surgery Center, LLC; Ritu T. Bhambhani, M.D.; and/or Ritu T. Bhambhani, M.D., LLC; and

f)  identify and describe every lease for space occupied by Box Hill Surgery Center, LLC.

**ANSWER TO INTERROGATORY NO. 23:**

**Objection.  This Interrogatory is overly broad, unduly burdensome and seeks information that is personal, proprietary and sensitive, and is not reasonably calculated to lead to the discovery of relevant or admissible evidence.  Subject to and without waiving said objections, Dr. Bhambhani is a physician.  She is the sole owner and officer of both Ritu T. Bhambhani, M.D., LLC, as well as Box Hill Surgery Center, LLC.**

24.  Describe in complete detail the business structure of Ritu T. Bhambhani, M.D., LLC, including but not limited to:

a)  the names and job title of each officer of Ritu T. Bhambhani, M.D., LLC;

b)  the name of each manager of Ritu T. Bhambhani, M.D., LLC;

c)  the name of each owner or member of Ritu T. Bhambhani, M.D., LLC; and

d)  identify and describe every lease for space occupied by Ritu T. Bhambhani, M.D., LLC

**ANSWER TO INTERROGATORY NO. 24:**

**Plaintiffs are referred to Answer No. 23.**

25.  Please explain how Box Hill charged and billed patients and/or their insurers (or any third party payer) for epidural steroid injections, for both in preservative and preservative-free form in 2012.  Specifically, list the rate that any Box Hill charged the following payers for such epidural steroid injections, specifying which entity charged which payer:

a)  Medicare;

b)  Carefirst BlueCross BlueShield;

14

c)      United Healthcare;

d)      Tricare;

e)      Aetna;

f)      CIGNA;

g)      Humana;

h)      Maryland HealthChoice Program;

i)      Medicaid;

j)      uninsured patients; and

k)      patients paying out of pocket toward a deductible.

**ANSWER TO INTERROGATORY NO. 25:**

   **Objection.  This Interrogatory is overly broad, unduly burdensome, and seeks information that is not reasonably calculated to lead to the discovery of relevant or admissible evidence.  Subject to and without waiving said objections, Box Hill does not charge separately for the steroid itself.  Further, Box Hill has already provided billing statements to the Plaintiffs' counsel which would reflect the rate charged to the Plaintiffs and their insurers.  The rates that Box Hill charges other insurers is not relevant to the claims forming the basis of the Plaintiffs' complaints and is not reasonably calculated to lead to the discovery of admissible evidence.**

26.     With respect to plaintiffs/claimants (a) with a currently filed case against Box Hill (listed above) and (b) for whom you have received a letter of representation from the claimant's attorney, please identify or state for each:

   (a) The date of prescription for the specific MPA ordered from NECC for that patient.  Please attach to your response a copy the prescription or any record of the prescription pertaining to the clients;

   (b)  The number of MPA vials ordered from NECC as to the patient;

   (c)  The name of the patient appearing on the label affixed to or associated with the vial of NECC MPA preservative-free administered to the patient; and

   (d)  the lot number of the MPA from which each plaintiff/claimant received each of their injections, whether the steroid injection was from a recalled lot purchased and

shipped from NECC, the date of shipment of the MPA used in their steroid injections, the date of any recall by governmental authorities of the lots of MPA used in their steroid injections, which, if any, of the steroid injections received were from Lot #06292012@26, BUD 12/26/2012, and the existence and description of any such documents relating to your answers to this interrogatory and their current location.

**ANSWER TO INTERROGATORY NO. 26:**

**Objection.  This Interrogatory is vague, overly broad, unduly burdensome, and clearly compound in nature.**

**Subject to and without waiving said objections, Plaintiffs are referred to the medical records and bills already in Plaintiffs' possession and that have already been produced to Plaintiffs in response to HIPAA authorizations, document requests, and the PSC's Revised Subpoena or First Request for Production of Documents. Much of this information has already been described in various documents and responses as well. Also, subject to and without waiving said objections, all of the patients for whom suit has been filed and who received injections of preservative-free MPA, which turned out to be from a contaminated lot, received injections from lot # 06292012@26 on what appears to be the following dates:**

| | |
|---|---|
| **Davis:** | **8/17/12** |
| **Dreisch:** | **8/24/12** |
| **Farthing:** | **8/31/12** |
| **Kashi:** | **9/5/12** |
| **Millhausen:** | **8/24/12** |
| **Rozek:** | **8/31/12** |
| **Torbeck:** | **8/31/12** |
| **Young:** | **8/24/12** |

27.    Regarding the purchase of vials of preservative-free MPA you made from NECC that were shipped to you on 8/13/2012 and 9/25/2012, please identify the person at Box Hill who placed the order for each such vial, the date of each order, and the means by which the order for each vial was made (e.g. telephone/internet/mail), describe how the quantity was determined, whether a specific patient name was provided to NECC with respect to each vial ordered, whether the purchase was made in bulk without reference to specific patients, and the existence and description of any documents relating to your answers to this interrogatory and their current location.

**ANSWER TO INTERROGATORY NO. 27:**

**Objection.  This Interrogatory is vague, overly broad, unduly burdensome, and clearly compound in nature.  Subject to and without waiving said objections, Plaintiffs are referred to the documents previously produced in response to the PSC Revised Subpoena and to the PSC's First Request for Production of Documents.**

16

**Also, subject to and without waiving said objections, Andrew Vickers, R.N., ordered the MPA from NECC at Dr. Bhambhani's request.**

28.     State and describe all materials and information and their source(s) you obtained in connection with determining whether NECC was an appropriate and competent supplier of preservative free MPA.

**ANSWER TO INTERROGATORY NO. 28:**

**Objection.  This Interrogatory is vague, overly broad, unduly burdensome, and duplicative of previous Interrogatories.  The Interrogatory also improperly attempts to shift the burden of proof from Plaintiffs to Defendants.  Subject to and without waiving said objections, Plaintiffs are referred to Answer Nos. 1, 7 and 8.**

29.     Identify all insurance and indemnity policies that may cover claims against you from patients claiming inju8ry and/or wrongful death as a result of the administration of NECC's recalled MPA medication.  Please include in your answer (a) the limits and available amounts of coverage; (b) whether costs of defense reduces the amount of coverage available; (c) whether any insurance carrier has disclaimed coverage on any claims or is defending you under reservation of rights, and if so (d) the basis coverage is or was disclaimed and/or you are being covered under a reservation of rights.

**ANSWER TO INTERROGATORY NO. 29:**

**Objection.  This Interrogatory is not reasonably calculated to lead to the discovery of relevant or admissible evidence.  It is also duplicative of prior requests.  Subject to and without waiving said objections, Dr. Bhambhani is insured through a policy with The Doctors Company with limits of $1,000,000 per incident and $3,000,000 aggregate.  Ritu T. Bhambhani, M.D., LLC and Box Hill Surgery Center, LLC are covered and protected parties under that policy and there is no separate coverage.  The policy number is 0065477.**

## ATTESTATION

I, Ritu T. Bhambhani, M.D., do solemnly swear and affirm under the penalties of perjury that:

I am the President of Ritu T. Bhambhani, M.D., L.L.C., and possess the authority to execute these Answers to Interrogatories on behalf of Ritu T. Bhambhani, M.D., L.L.C.

I am the President of Box Hill Surgery Center, L.L.C., and possess the authority to execute these Answers to Interrogatories on behalf of Box Hill Surgery Center, L.L.C.

I have read the attached interrogatories, and I attest personally and on behalf of the above entities that the foregoing answers thereto are true according to the best of my knowledge, information, and belief.

By: _____     Date: 7/8/15 _____
    Ritu T. Bhambhani, M.D.

Respectfully submitted,

**PESSIN KATZ LAW, P.A.**

/s/Gregory K. Kirby
**Gregory K. Kirby** (admitted *pro hac* vice)
901 Dulaney Valley Road, Suite 500
Towson, MD 21204
Ph:  (410) 938-8800
Fax: (410) 832-5644
gkirby@pklaw.com

## CERTIFICATE OF SERVICE

This will certify that on this 10th day of July, 2015, a true and accurate copy of the foregoing was served on the Plaintiffs' Steering Committee as indicated below by electronic and first-class mail with the expectation that it will be uploaded to the discovery repository in the MDL, and served on all parties hereto by virtue of the Court's electronic filing system:

Kimberly Dougherty
JANET, JENNER & SUGGS, LLC
31 St. James Avenue
Suite 365
Boston, MA 02116
Phone: (617) 933-1265
kdougherty@myadvocates.com
*Maryland Lead Counsel for PSC*

/s/Gregory K. Kirby
**Gregory K. Kirby**

19