**Blumberg & Wolk, LLC**
158 Delaware Street
P.O. Box 68
Woodbury, NJ 08096
(856) 848-7472

*Counsel for Defendants Premier Orthopaedic and Sports Medicine Associates of Southern New Jersey, LLC, trading as Premier Orthopaedic Associates, Premier Orthopaedic Associates Surgical Center, LLC, Kimberly Yvette Smith, M.D., a/k/a Kimberly Yvette Smith-Martin, M.D., Thomas Dwyer, M.D., Richard C. DiVerniero, M.D., and Richard Strauss, M.D.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | |
| THIS DOCUMENT RELATES TO: | MDL No. 2419 |
| | Docket No. 1:13-md-2419 (RWZ) |
| All New Jersey Cases Naming Premier Orthopaedic and Sports Medicine Associates of Southern New Jersey | |

## PREMIER ORTHOPAEDIC AND SPORTS MEDICINE ASSOCIATES OF SOUTHERN NEW JERSEY, LLC, ET AL'S MEMORANDUM REGARDING THIS COURT'S JURISDICTION UNDER §1407 AND §157(b)(5)

**TABLE OF CONTENTS**

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

II.     SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

III.    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

    A.  Under 28 U.S.C. § 1407, the JPML is Obligated to Return Each Action to the
        Transferor Court at or Prior to the Conclusion of Pretrial Proceedings . . . . . . .  2

    B.  *Lexecon* Bars Recognizing Any Self-Assignment Power in a Transferee Court,
        Regardless of the Statutory Basis for Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . .  3

        1. Lexecon and § 1407 are the Prevailing Law . . . . . . . . . . . . . . . . . . . . . . . .  3

        2. Lexecon's Holding is Based on a Plain Reading of § 1407 and the Statute's
           Legislative History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

            i.   A Plain Reading of § 1407 Requires Remand . . . . . . . . . . . . . . . . . . .  4

            ii.  § 1407's Legislative History Confirms That Self-Assignment is Outside
                 the Scope of the Transferee Court's Authority . . . . . . . . . . . . . . . . . . .  4

            iii. The JPML's Obligation to Remand Preserves the Initial Choice of
                 Venue . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

        3. Self-Assignment By the Transferee Court Thwarts The Obligation to Remand
           Imposed by § 1407(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

        4. Lexecon Applies To Transfer Under Other Statutes . . . . . . . . . . . . . . . . . . .  6

    C.  The 2nd Circuit Supports Application of *Lexecon* to Transfers Under 28 U.S.C. §
        157(b)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

    D.  The PSC's Argument That This Court Should Invoke Transfer under § 157(b)(5)
        is Flawed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

        1. The Effective Date of the Bankruptcy Proceeding was June 4, 2015 . . . . . . .  8

        2. Any Discovery Extensions Will Not Affect the Bankruptcy Estate . . . . . . . . .  9

        3. Remanding All Cases to Their Original Forums Per 28 U.S.C. § 1407 is
           Consistent With 28 U.S.C. § 157(b)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

IV.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

i

# I.     INTRODUCTION

As this Court knows, a myriad of personal injury tort and wrongful death claims arose from an outbreak of fungal meningitis in the fall of 2012, sourced to the New England Compounding Company ("NECC"). These claims were filed in federal and state courts across the nation from 2012 onward. Not long after the outbreak, NECC filed for Chapter 11 bankruptcy.

In February, 2013, the Judicial Panel on Multidistrict Litigation ("JPML") consolidated all related federal actions across the nation into this multidistrict litigation ("MDL"), located in the United States District Court for the District of Massachusetts. Cases filed following the initial Transfer Order creating this MDL entered to this MDL pursuant to multiple means, including 28 U.S.C. § 1407 and direct filing. The vast majority of cases were transferred under 28 U.S.C. § 1407.

In June, 2013 this Court claimed subject matter jurisdiction via 28 U.S.C. § 1334 over the state court cases in which plaintiffs asserted a claim against NECC. In re New Eng. Compounding Pharm. Prods. Liab. Litig., 496 B.R. 256, 266-70 (D. Mass. 2013).

June 4, 2015 was the effective date of the Chapter 11 Plan which resulted from NECC's Chapter 11 filing; at this point, the bankruptcy proceedings concluded.

On June 24, 2015, this Court directed briefing on the issue of whether, in light of the Supreme Court's holding in Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 118 S. Ct. 956 (1998), this Court had the authority to effect a transfer of Tennessee cases to itself for trial pursuant to 28 U.S.C. § 157(b)(5). Briefing on this issue was prompted by the Plaintiff Steering Committee's ("PSC") request that this Court try claims pending against the Tennessee Defendants.

On July 9, 2015, this Court entered an order requiring all parties to execute a Lexecon waiver form to decide whether the pending cases would remain in the Massachusetts District Court or be transferred to their respective home venues.

The PSC filed their brief on this issue on July 6, 2015. Dkt. 2055. In opposition, the Premier Defendants submit the following.

1

## II.       SUMMARY OF ARGUMENT

The Premier Defendants assert that any self-assignment by this Court of pending state court cases is improper and would contradict the Supreme Court's ruling in <u>Lexecon</u>. While the applicability of <u>Lexecon</u> is a matter of first impression in the 1st Circuit, the 2nd Circuit supports the application of <u>Lexecon</u> to bar self-assignment pursuant to § 157(b)(5) transfers. The PSC attempts to distinguish the present matter from that in <u>Lexecon</u> by arguing that <u>Lexecon</u> did not mention transfers pursuant to § 157(b)(5). However, this argument ignores the reasoning behind the <u>Lexecon</u> decision, which the Premier Defendants assert is applicable to transfers under § 157(b)(5).

In response to the PSC's three requests, the Premier Defendants first oppose the suggestion that this Court set one or more cases against the Tennessee Defendants or any defendant for trial pursuant to 28 U.S.C. § 157(b)(5) for the reasons stated herein. Second, the Premier Defendants oppose certification of an interlocutory appeal pursuant to 28 U.S.C. 1292(b) of the trial venue issue. Third, the Premier Defendants agree that this Court should continue to supervise common discovery and dispositive motion practice in accordance with its duties under 28 U.S.C. § 1407.

## III.       ARGUMENT

In light of the holding of <u>Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach</u>, 523 U.S. 26 (1998) and the Supreme Court's reasoning in reaching that decision, the Premier Defendants assert that self-assignment of cases under 28 U.S.C. § 157(b)(5) as proposed by the PSC is barred by both 28 U.S.C. § 1407 and the Supreme Court.

### A.  <u>Under 28 U.S.C. § 1407, the JPML is Obligated to Return Each Action to the Transferor Court at or Prior to the Conclusion of Pretrial Proceedings</u>

Congress statutorily created multidistrict litigation to address "common questions of fact … pending in different districts" by consolidating pretrial proceedings "for the convenience of

parties and witnesses and [to] promote the just and efficient conduct of such actions." 28 U.S. § 1407(a). The Statute explicitly mandates that "[e]ach action so transferred *shall* be remanded by the [JPML] at or before the conclusion of such pretrial proceedings to the district from which it was transferred." 28 U.S. § 1407(a) (emphasis added).

**B.** ***Lexecon* Bars Recognizing Any Self-Assignment Power in a Transferee Court, Regardless of the Statutory Basis for Jurisdiction**

In 1998, the United States Supreme Court held that a "district court conducting pretrial proceedings pursuant to § 1407(a) has no authority …. to assign a transferred case to itself for trial." Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 27 (1998). This holding applied to the use of § 1404(a) or § 1406 to assign a transferred case.

The Court's decision was based on the "straightforward language" "of the mandatory 'shall' [within § 1407(a),] which … creates an obligation impervious to judicial discretion." Id, citing Anderson v. Yungkau, 329 U.S. 482, 485 (1947). Furthermore, the Supreme Court held that the JPML's "responsibility to remand … bars recognizing *any* self-assignment power in a transferee court." Id (emphasis added).

**1. Lexecon and § 1407 are the Prevailing Law**

Lexecon suggests that there may be conflicts between "preserving a plaintiff's choice of venue" through § 1407(a) and "permitting transferee courts to make self-assignments," but firmly states that "the proper venue for resolving that issue remains the floor of Congress." 523 U.S. at 40-41.

In the seventeen years since the Lexecon decision, Congress has not passed any subsequent statute or amendment that affects, modifies, or otherwise invalidates either the Supreme Court's ruling or the mandatory obligation of the JPML to remand pursuant to § 1407(a). Accordingly, § 1407 stands and the Lexecon decision barring self-assignment of MDL

cases by the transferee court is the law of the land even in the face of the seemingly different context of 28 U.S.C. § 157(b)(5). Shah v. Pan Am. World Services, Inc., 148 F.3d 84, 90 (2nd Cir. 1998).

### 2. Lexecon's Holding is Based on a Plain Reading of § 1407 and the Statute's Legislative History

The issue in Lexecon was "whether a district court conducting … pretrial proceedings may invoke § 1404(a) to assign a transferred case to itself for trial." Lexecon, 523 U.S. at 28. Here, the issue is whether a District Court conducting pretrial proceedings may invoke § 157(b)(5) to choose to assign a transferred case to itself for trial, as urged by the PSC. The only difference, for purposes of legal analysis, between the current situation and that of Lexecon is the statute used for transfer.

Accordingly, to resolve the current question it is proper to rely upon the Supreme Court's reasoning in making the Lexecon decision. The Court's reasoning does not rely on the intricacies of any transfer statute when contemplating the § 1407 obligations and limits of the transferee courts and JPML.

### i.    A Plain Reading of § 1407 Requires Remand

"Reading [§ 1407] whole, this Court has to give effect to [the] plain command" found in the "mandatory 'shall'" obligating the JPML to remand cases to their respective transferor courts at or before the conclusion of the consolidated pretrial proceedings. Lexecon 523 U.S. at 27.

### ii.    § 1407's Legislative History Confirms That Self-Assignment is Outside the Scope of the Transferee Court's Authority

The Supreme Court examined § 1407's legislative history, which itself recognized that Congress, and not the Courts, would have to amend § 1407 "if it determined that multidistrict litigation cases should be consolidated for trial." Lexecon, 523 U.S. at 40. Congress was clear in its intent that § 1407(a) would have no effect on the place of trial, and that the transfer of cases to

4

one district was limited to pretrial proceedings only. Id. The House Report on the bill which became § 1407 explicitly stated that "the … statute affects only the pretrial stages…. It would not affect the place of trial in any case … [and] requires that the transferred cases be remanded at the close of coordinated pretrial proceedings." Lexecon, 523 U.S. at 39-40.

Ultimately, "the legislative history tends to confirm that self-assignment is beyond the scope of the transferee court's authority." Lexecon, 523 U.S. at 39.

### iii.    The JPML's Obligation to Remand Preserves the Initial Choice of Venue

An underlying policy reason for the Lexecon decision is, at least in part, to preserve the initial choice of venue. Lexecon, 523 U.S. at 40. The 1st Circuit recognizes not only the imbalance between plaintiffs and defendants in a multidistrict litigation proceeding, but that Lexecon is an important tool in reigning in that "imbalance." Delaventura v. Columbia Acorn Trust, 417 F. Supp. 2d 147, 159 (D. Mass. 2006). This is likely due to Lexecon's emphasis upon the JPML's obligation to remand, which preserves the plaintiff's initial choice of forum in the face of a multidistrict litigation which the 1st Circuit believes favors defendants. Delaventura, 417 F.Supp. 2d at 156.

### 3. Self-Assignment By the Transferee Court Thwarts The Obligation to Remand Imposed by §1407(a)

The Supreme Court recognized "the necessary consequence of self-assignment by a transferee court: it conclusively thwarts the Panel's capacity to obey the unconditional command of § 1407(a)." Lexecon, 523 U.S. at 36.

The exact statute potentially used by a transferee court to self-assign never entered the Supreme Court's consideration when discussing the consequences of such action. Indeed, the statute purporting to grant the power of self-assignation to a transferee court is irrelevant when

considering the overall effect of such action – complete circumvention of the Congressionally-imposed order to remand.

Here, the PSC is asking this Court to self-assign the cases in this MDL, which is not only expressly prohibited by the Supreme Court but in complete contravention to the Congressional intent exhibited by the plain language and legislative history of § 1407.

**4.** __Lexecon__ **Applies To Transfer Under Other Statutes**

Lexecon directly addressed the issue of transfer under 1404(a), which was used by the plaintiffs in that case. Additionally, in this decision the Supreme Court struck down the previously-existing JPML's Rule 14, which authorized transfer of MDL actions at the conclusion of pretrial proceedings "to the transferee or other District under 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406." Lexecon, 523 U.S. at 33, 40.

Prior to Lexecon, under this Rule the transferee court had authority to transfer "a case lying in venue in the wrong division or district … to any district or division in which it could have been brought" to cure the defect of the wrong venue. 28 U.S.C. § 1406. While never directly addressed in Lexecon because the facts of that case did not call for it, the Supreme Court still prioritized the JPML's obligation to remand pursuant to § 1407 over the transferee court's potential ability to transfer a case "to any district or division in which it could have been brought" when invalidating Rule 14. 28 U.S.C. § 1406; Lexecon, 523 U.S. at 40.

The Supreme Court's decision to strike Rule 14 in its entirety, coupled with that Court's reasoning for and insistence that a transferee court has no self-assignment power, supports the reasonable conclusion that the Congressional mandate to remand per § 1407 trumps transfer of MDL actions to the transferee court under other transfer statutes.

**C.** **The 2ⁿᵈ Circuit Supports Application of *Lexecon* to Transfers Under 28 U.S.C. § 157(b)(5)**

The 2ⁿᵈ Circuit concluded that "Lexecon should apply to § 157(b)(5) transfers" because "Lexecon's reasoning applies equally to transfers pursuant to any venue statute." Shah, 148 F.3d at 90. Specifically, Lexecon emphasized that "no exercise in rule making [could] read out of [§ 1407] the [JPML]'s obligation to remand each action to its respective transferor court at or before the conclusion of pretrial proceedings." Shah, 148 F.3d at 90-1, citing Lexecon, 523 U.S. at 37.

The PSC dismisses the 2ⁿᵈ Circuit's analysis of Lexecon's applicability to §157(b)(5) in Shah as *dicta* and accordingly urges this Court not to consider it, despite admitting that Shah is the only case the PSC could discover which even addressed the issue. Dkt. 2055, p. 11 & n. 25. However, the Court in Shah was directly responding to arguments that §157(b)(5) would allow self-transfer when it undertook an analysis of the applicability of Lexacon to §157(b)(5) and stated that such an argument failed. Shah, 148 F.3d at 90.

Similarly, the PSC argues that because this Court could have transferred the Tennessee cases to itself under §157(b)(5), and Lexecon "does not discuss, or even mention, Section 157(b)(5)," self-assignment is appropriate. Dkt. 2055, p. 5, 11. The PSC goes on to further disregard Lexecon's reasoning against self-assignment by asserting that this Court has the jurisdictional power under §157(b)(5) to immediately set Tennessee cases to trial and that a potential result of the requested interlocutory appeal on this venue issue would be to try the claims in this court under 157(b)(5) jurisdiction. Dkt. 2055, p. 12.

Given that the Shah Court was directly responding to and disposing of legal arguments raised by parties to that litigation, the Premier Defendants dispute the PSC's suggestion that this analysis constitutes *dicta*. But even if this Court considers Lexecon's applicability to § 157(b)(5)

as presented in <u>Shah</u> to be *dicta*, it does not follow that this Court must, or even should, disregard <u>Shah</u>'s analysis. Especially pertinent is that the analysis and conclusion presented in <u>Shah</u> were that Court's response to an argument identical to the PSC's here. For these reasons, the Premier Defendants urge this Court to seriously consider the 2nd Circuit's holding on this issue.

### D.   <u>The PSC's Argument That This Court Should Invoke Transfer under 157(b)(5) is Flawed</u>

28 U.S.C. § 1334 confers "original but not exclusive" jurisdiction to the District Courts of "all civil proceedings . . . related to cases under Title 11." 28 U.S.C. § 1334(b).  The 1st Circuit has defined such "related to" jurisdiction as litigation having an "impact" on the bankruptcy estate. <u>In re G.S.F. Corp.</u>, 938 F.2d 1467, 1475 (1st Cir. 1991). It is on this basis that the PSC suggests that this Court has jurisdiction over cases related to the bankruptcy proceeding, and then further urges this Court pursuant to 28 U.S.C. § 157(b)(5) to transfer some of the Tennessee cases to itself for trial. However, the PSC's argument in favor of using 28 U.S.C. § 157(b)(5)  is flawed.

#### 1. The Effective Date of the Bankruptcy Proceeding was June 4, 2015

The PSC's argues that this Court has subject matter jurisdiction under 28 U.S.C. § 1334 to "order that the personal injury tort and wrongful death claims shall be tried in the District Court in which the bankruptcy case is *pending*" pursuant to 28 U.S.C. § 157(b)(5) (emphasis added).

However, this argument relies on the characterization of the Chapter 11 bankruptcy proceeding as "ongoing." Dkt. 2055 p. 11. The bankruptcy proceeding in this case has concluded.

The effective date of the bankruptcy proceeding was June 4, 2015. Since that time, the Chapter 11 plan has been approved; the Creditor's Committee has disbanded; many attorneys, once representing affiliated defendants or the debtor have withdrawn as counsel or moved to do

8

so. The PSC has filed a motion to partially remove the reference to bankruptcy court in their attempts to dismiss certain cases and administer payment for the tort Trust. These actions are further evidence, beyond the passing of the effective date of the proceeding, that the bankruptcy proceeding is no longer "pending."

### 2. Any Discovery Extensions Will Not Affect the Bankruptcy Estate

The PSC also claims that extension of discovery due to Defendants' right to assert comparative fault defenses will reduce the money which "will ultimately pour into the Tort Trust for the benefit of tort victims" and therefore affect the bankruptcy estate. Dkt. 2055, p. 10. The Premier Defendants dispute the suggestion that continuing litigation will affect the bankruptcy estate.

Per the Chapter 11 Plan, the "Expense Fund" is monies removed from the pool of funds prior to formation of the Trust for allocation to expenses including litigation. Dkt. 1154-1, p. 36. These monies have accordingly never been part of the Trust. The Plan accounts for their use and potential redistribution; expenditure of all or part of such funds is already allocated for by the estate. Moreover, given the extensive nature of this multidistrict litigation and the protracted nature of multidistrict litigation generally, any reliance by the PSC on the prospect of a "return" of said monies to the Trust is premature.

If the PSC feels so strongly that the use of said funds for litigation is a loss of Plaintiffs' monies, they are free to dismiss their claims against the Premier Defendants. However, pressing forward with litigation – an exercise which requires the responsive Defendants to conduct expensive discovery – and arguing that such litigation will deplete the funds available to tort victims is inconsistent.

### 3. Remanding All Cases to Their Original Forums Per 28 U.S.C. § 1407 is Consistent With 28 U.S.C. § 157(b)(5)

The PSC asserts that there is "tension … between the plain language of Section 157(b)(5) and the provisions of 28 U.S.C. § 1407." Dkt. 2055, p. 3, 11. The Premier Defendants proffer resolution.

28 U.S.C. § 157(b)(5) allows the District Court in which the bankruptcy case is pending to determine whether the personal injury tort and wrongful death claim shall be tried: either in the District Court in which the bankruptcy case is pending, or in the District in which the claim arose. 28 U.S.C. § 1407 requires that the JPML remand all MDL cases at the conclusion of pretrial proceedings back to the respective Districts from which they were transferred. By remanding these cases back to their transferor courts in accordance with § 1407, this Court would also be returning the cases to the respective Districts in which the claims arose, per § 157(b)(5).

This result is clearly contemplated by § 157(b)(5) while also being completely consistent with if not required by § 1407 and the cases cited above.

## IV.    CONCLUSION

For the foregoing reasons the Premier Defendants respectfully submit to the Court that Lexecon bars self-assignment of cases in an MDL to the transferee court, and therefore precludes this Court from conducting trials of claims pending against the Defendants pursuant to 28 U.S.C. § 157(b)(5). Subject to any waiver, all cases should be remanded to the original forum state.


Dated: July 16, 2015                                     Respectfully submitted,

                                                         Blumberg & Wolk, LLC

                                                         /s/ Christopher M. Wolk
                                                         Christopher M. Wolk, Esq.

                                                         Attorneys for Premier Orthopaedic and
                                                         Sports Medicine Associates of Southern
                                                         New Jersey, LLC, trading as Premier
                                                         Orthopaedic Associates, Premier
                                                         Orthopaedic Associates Surgical Center,
                                                         LLC, Kimberly Yvette Smith, M.D., a/k/a
                                                         Kimberly Yvette Smith-Martin, M.D.,
                                                         Thomas Dwyer, M.D., Richard C.
                                                         DiVerniero, M.D., and Richard Strauss,
                                                         M.D.

**CERTIFICATION**

I certify that in submitting this *Memorandum Regarding Choice of Law*, I caused a copy of the above to be filed electronically via the Court's electronic filing system. Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's System, and notice of these filings will be sent to these parties by operation of the Court's electronic filing system.

Dated: July 15, 2015

/s/ Christopher M. Wolk
Christoper M. Wolk, Esq.