UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | ) ) ) | |
| _____ | ) | MDL No. 2419 |
| | ) | Dkt. No 1:13-md-2419 (RWZ) |
| THIS DOCUMENT RELATES TO: | ) | |
| | ) | |
| Suits Naming the Tennessee Clinic Defendants | ) ) | |
| _____ | ) | |

**TENNESSEE CLINIC DEFENDANTS' OPPOSITION TO THE PSC'S
MEMORANDUM REGARDING THIS COURT'S AUTHORITY
TO CONDUCT TRIALS PURSUANT TO 28 U.S.C. §157(B)(5)**

Defendants Saint Thomas Outpatient Neurosurgical Center, LLC; Howell Allen Clinic, a Professional Corporation; John Culclasure, MD; Debra Schamberg, RN, CNOR; Vaughan Allen, MD; Kenneth R. Lister, MD, PC; and Donald E. Jones, MD (collectively "Tennessee Clinic Defendants") submit this Opposition to the Plaintiffs' Steering Committee's ("PSC") Memorandum Regarding This Court's Authority to Conduct Trials Pursuant to 28 U.S.C. §157(b)(5) [Dkt. 2055].

## <u>TABLE OF CONTENTS</u>

I.   **Introduction** ..................................................................................................... 1

II.  **Law and Argument** .......................................................................................... 3

    A.   These cases were transferred to Massachusetts under §1407; and §1407 unequivocally requires they be sent back to the transferor court for trial .............. 3

    B.   Even if the Court ignores the fact that *Lexecon* and §1407 control, the Court no longer has federal "related to" jurisdiction ............................................................. 4

        1.   A court without jurisdiction cannot decide the merits of a case ...................... 5

        2.   A court can be divested of "related to" jurisdiction based on events in the case, including confirmation of a bankruptcy plan .......................................... 5

        3.   Post-confirmation jurisdiction only exists when a dispute affects the estate or requires an interpretation of the bankruptcy plan ........................................... 6

        4.   Events here have divested this Court of "related to" jurisdiction...................... 7

    C.   If the Court finds subject-matter jurisdiction still exists, it should abstain from exercising it....................................................................................................... 8

    D.   If the Court finds §157(b)(5) trumps §1407 and *Lexecon*, it should nevertheless remand the cases to Tennessee for trial ............................................................. 9

III. **Conclusion** .................................................................................................... 11

## I.      Introduction

Tennessee Plaintiffs filed these personal injury tort and wrongful death ("PITWD") suits against Tennessee health care providers and affiliates of NECC in the U.S. District Court for the Middle District of Tennessee. The Judicial Panel on Multidistrict Litigation transferred the Tennessee cases to Massachusetts pursuant to 28 U.S.C. §1407.[1] Since that time, NECC's bankruptcy proceeding has ended, and the Tennessee Clinic Defendants have withdrawn their claims against the debtor.

Thus, what now remains is a set of just over a hundred state law tort suits brought by Tennessee patients against Tennessee health care providers. The venue for pretrial proceedings is Massachusetts pursuant to §1407. *But*, absent waiver, the *trial* venue remains the transferor court – the Middle District of Tennessee.[2] Despite this, the PSC makes the strained argument, twisting bankruptcy statutes and ignoring the lack of precedent, that this Massachusetts federal court can override §1407 and *Lexecon* and transfer the cases to itself for trial under 28 U.S.C. §157(b)(5).

The PSC skips two threshold issues before launching into a flawed analysis.

<u>First</u>, as *the* preliminary, dispositive issue, these cases were <u>not</u> transferred to this Court via 28 U.S.C. §157(b)(5). Instead, these cases were transferred <u>by the JPML</u> to this Court <u>via 28 U.S.C. §1407</u>.[3] *Lexecon* and §1407 unequivocally require that this Court remand the cases to the district from which they were transferred at the conclusion of pretrial proceedings. The venue inquiry should end here.

---

[1] *See, e.g.*, Dkt. No. 8 ("Pursuant to Rule 7.1 of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation, the action(s) on the attached schedule are transferred under 28 U.S.C. §1407 to the District of Massachusetts…").
[2] 28 U.S.C. §1407; *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998).
[3] *See, e.g.*, Dkt. Nos. 2, 8, 70, 75, 409.

Yet, the PSC makes the entirely unsupported argument that 28 U.S.C. §157(b)(5) somehow trumps the plain language of §1407 and *the United States Supreme Court's* holding in *Lexecon*. In addition to §1407 and *Lexecon*, the PSC further urges the Court to ignore the only opinion that has directly addressed this question, *Shah v. Pan American World Servs, Inc.*[4]

The PSC skips a <u>second</u> basic threshold inquiry. The Court must have "related to" jurisdiction over the Tennessee cases before §157(b)(5) can even arguably be invoked. However, because The Tennessee Clinic Defendants withdrew their indemnity claims against the estate, the affiliated defendants are in the process of being dismissed from the suits, and the bankruptcy has concluded, the state law cases against these Tennessee Clinic Defendants the Tennessee cases are not "related to" the bankruptcy.

Setting aside these threshold failures of the PSC's argument, even if the Court finds it has "related to" jurisdiction, the Court still must consider the twelve factors for permissive abstention before transferring the cases under §157(b)(5). This analysis inevitably leads to the conclusion that this Court should abstain from trying these cases.

Finally, even if the Court accepts the PSC's flawed premise that this Court (1) has "related to" jurisdiction over these cases and (2) has the authority to self-transfer them to Massachusetts for trial under §157(b)(5), §157(b)(5) still requires the Court to choose between Massachusetts and Tennessee for trial. No reasonable argument can be made that Massachusetts is the better trial forum for these cases.

The only logical end-point of any reasonable analysis is that the Court should transfer these suits by Tennessee patients against Tennessee defendants, governed by Tennessee law, and originating in Tennessee courts, back to Tennessee for trial.

---

[4] *Shah v. Pan American World Servs.*, 148 F.3d 84 (2nd Cir. 1998).

2

## II.    Law and Argument

### A. These cases were transferred to Massachusetts under §1407; and §1407 unequivocally requires they be sent back to the transferor court for trial.

No one disputes that the Tennessee cases arrived in this Court pursuant to §1407, *not* pursuant §157(b)(5).[5][6]

Section 1407(a) mandates that actions transferred pursuant that section "*shall* be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred…."[7] The U.S. Supreme Court confirmed that Congress's use of "shall" removed any judicial discretion and required remand for trial.[8]

More importantly, the Supreme Court expressly rejected the argument (championed here by the PSC) that another federal statute (28 U.S.C. §1404) could permit an MDL court to sidestep the remand requirement of §1407. The Supreme Court held that §1407 "bars recognizing any self-assignment power in a transferee court."[9] The PSC cites nothing to support its argument that the venue transfer statute §157(b)(5) should be treated differently than the venue transfer statute §1404 at issue in *Lexecon* other than to say *Lexecon* did not expressly address §157(b)(5).[10]

---

[5] *E.g.*, Dkt. Nos. 2, 8, 70, 75, 409 (transferring TN cases to MDL pursuant to §1407).

[6] Dkt. No. 2055 at p. 4.

[7] 28 U.S.C. §1407 (emphasis added).

[8] *Lexecon*, 523 U.S. at 27.

[9] *Id.* at 40.

[10] In fact, the language of §157(b)(5) and case law interpreting it seem to limit the court's authority to transfer PITWD claims to only those made *against the debtor*. The PSC has cited no case – and the Defendants have found none – where a court has held that §157(b)(5) allows the transfer of PITWD cases *where the only named defendant is a non-debtor*. When read as a whole, §157 suggests that §157(b)(5) applies only in PITWD cases *against the estate*. Importantly, in excluding PITWD claims from the list of core proceedings bankruptcy courts can hear, Congress qualifies §157(b)(2)(B) as applying to PITWD claims *against the estate*. Similarly, courts have interpreted the second mention of PITWD claims in §157 (§157(b)(2)(O)) as "exclud[ing] only those tort claims *which affect the liquidation of the estate or the adjustment of the debtor-creditor relationship*." *In re Cedar Funding, Inc.*, 419 B.R. 807, 819, n. 15 (9th Cir. 2009) (emphasis added). Thus, §157(b)(2)(O) seems to again focus on PITWD claims *against the debtor*. Read consistently with the rest of the statute, one could assume that §157(b)(2)(5) refers to PITWD claims *against the estate*. Numerous courts have read §157(b)(5) as applying only to PITWD

3

The PSC likewise casts aside the only other on-point case, *Shah*, where the Second Circuit rejected the PSC's argument:

> [I]t appears that *Lexecon* should apply to §157(b)(5) transfers as well as to §1404(a) transfers. Although *Lexecon*'s holding applies explicitly only to §1404(a) — the only statute under which the transferee district court in that case purported to transfer venue — *Lexecon*'s reasoning applies equally to transfers pursuant to any venue statute. *Lexecon* recognizes that "*no* exercise in rulemaking can read ...out of the statute" the MDL panel's obligation to remand each action to its respective transferor court at or before the conclusion of pretrial proceedings…In short, *Lexecon* and §1407 require that the MDL panel remand to the transferor court any action "at or before the conclusion of ... pretrial proceedings…" and any further transfers of venue for trial under any statute must follow such remand.[11]

The PSC's assertion that transfer via §1407 was "procedural happenstance" and the cases "could" have been transferred pursuant to §157(b)(5), even if true, is irrelevant. The fact is that these cases were transferred via §1407. The holding in *Lexecon* prohibits this Court from transferring these cases to itself and <u>requires</u> – without affording any judicial discretion – they be remanded after pretrial proceedings.

### B. Even if the Court ignores the fact that *Lexecon* and §1407 control, the Court no longer has federal "related to" jurisdiction.

Confirmation of NECC's bankruptcy plan triggered several events that have ended federal "related to" jurisdiction over the Tennessee cases.

---

claims *against the debtor*. *See Calumet Nat'l Bank v. Levine*, 179 B.R. 117, 120 (N.D. Ind. 1995) ("As written and applied by the courts, section 157(b)(5) most obviously contemplates that the…district where the bankruptcy case is pending…will decide where [PITWD] actions *against bankruptcy debtors* are tried….") (emphasis added); *Stokes v. Se. Hotel Props., Ltd.*, 877 F. Supp. 986, 998 (W.D. N.C. 1994) (citing Fourth Circuit holding that district judge has "authority to fix venue of personal injury tort actions *against the debtor*") (emphasis added); *In re U.S. Lines, Inc.*, 128 B.R. 339, 341 (S.D. N.Y. 1991) ("[b]ased on the context of §157…it is apparent that subsection (b)(5) is meant to designate which court…should hear personal injury claims *against the debtor*") (emphasis added). Further, extending §157(b)(5) to PITWD cases against a *non-debtor* is inconsistent with statutory intent: "Congress enacted section 157(b)(5) to expand the district court's venue-fixing powers with an eye to centralizing the adjudication of a bankruptcy case." *In re Pan Am Corp.*, 16 F.3d 513, 516 (2nd Cir. 1994). The fact that §157's other mentions of PITWD claims qualify them as *against the estate,* the applicable case law, and the Congressional intent, all suggest that §157(b)(5) should apply only to PITWD cases *against the debtor*.

[11] *Shah*, 148 F.3d at 90-91 (emphasis added).

### 1.  A court without jurisdiction cannot decide the merits of a case.

It is hornbook law that a court must have jurisdiction to hear a matter; and, once a federal court concludes it lacks subject-matter jurisdiction, "it is precluded from rendering any judgments on the merits of the case."[12] Specifically, 28 U.S.C. §1447(c) states, "If at any time…it appears that the district court lacks subject-matter jurisdiction, the case shall be remanded." There is no exception to the fundamental principle of law that a court must have jurisdiction to render a judgment on the merits of the case.

### 2.  A court can be divested of "related to" jurisdiction based on events in the case, including confirmation of a bankruptcy plan.

The PSC unhesitatingly says that subject-matter jurisdiction cannot be lost.[13] This is an overstatement that ignores recognized exceptions[14], including for "related to" jurisdiction.[15]

In *In re Alma Energy*,[16] the court addressed head-on whether subsequent changes in a case can divest a court of "related to" subject-matter jurisdiction:

> There have also been substantial changes in the parties to this adversary proceeding.…Some defendants have been dismissed on the basis of settlements reached.…The Court had at least "related to" jurisdiction…at the time Alma's Complaint was filed against the original fifteen defendants. However, based on the substantial changes noted above, the Court must consider whether it can lose subject-matter jurisdiction? [*sic*] The case law is not settled on this issue.…Given (i) the inconsistencies in the case law, (ii) the Court's duty to consider its jurisdiction at any time, (iii) the fact that this Adversary Proceeding is substantially different than when originally filed, and (iv) the recent evidence by

---

[12] *Mills v. Harmon Law Offices, P.C.*, 344 F.3d 42, 45 (1st Cir. 2003).

[13] It must be noted that this is the first time that *this Court* (as opposed to the M.D. Tenn.) has attempted to assert "related to" jurisdiction over the Tennessee cases. With the Virginia cases, this Court analyzed whether jurisdiction existed at the time the motion to transfer was filed, not at the time the complaints were filed. Dkt. Nos. 176, 1131. Likewise, the Court should analyze whether it has "related to" jurisdiction over the Tennessee cases today, not at the time the complaints were filed.

[14] *See IMFC Prof'l Servs. of Florida v. Latin American Home Health, Inc.*, 676 F.2d 152, 157-58 (5th Cir. 1982) (stating the general rule that developments in a case do not affect prior-existing jurisdiction, but, in some circumstances, "other developments in a case will divest the court of jurisdiction").

[15] Notably, none of the cases cited by the PSC concern "related to" jurisdiction.

[16] *In re Alma Energy, LLC*, 2012 WL 243746, *9 (E.D. Ky. 2012).

the Supreme Court in *Stern v. Marshall*, 131 S.Ct. 2594 (2011) that the Supreme Court is in a posture to narrow a bankruptcy court's jurisdiction rather than expand its jurisdiction, <u>the Court finds that even if this Court had subject-matter jurisdiction at the beginning of this Adversary Proceeding, that is not a sufficient basis upon which to continue exercising jurisdiction.</u> The Court must consider whether under these changed circumstances it retains jurisdiction.[17]

As in *Alma*, and contrary to the PSC's statement that a court cannot lose "related to" jurisdiction, other courts have also held that "related to" jurisdiction can be lost.[18]

### 3.  Post-confirmation jurisdiction only exists when a dispute affects the estate or requires an interpretation of the bankruptcy plan.

This Court should consider the status of "related to" jurisdiction now because confirmation of a bankruptcy plan significantly curtails the broad application of "related to" jurisdiction.[19] Post-confirmation, "related to" jurisdiction does not extend indefinitely[20] and must be appropriately limited.[21] "At the most literal level, it is impossible for the bankrupt debtor's estate to be affected by a post-confirmation dispute because the debtor's estate ceases to exist once confirmation has occurred."[22]

Admittedly, post-confirmation, courts may exercise "related to" jurisdiction over a dispute, *but only if it has a "close nexus" to the bankruptcy plan*. A close nexus exists if

---

[17] *In re Alma Energy, LLC*, 2012 WL 243746, at *9 (emphasis added).

[18] *In re Dierkes*, 2007 WL 5734794, *6 (N.D. Ga. 2007) (divesting "related to" jurisdiction because "Once the Trustee abandoned Dierkes' claims against Crawford, filed her report of no distribution, and Dierkes' discharge was issued, the outcome of the claims and counterclaims…could no longer have an effect on…the bankruptcy estate…."); *In re Import & Mini Car Parts, Ltd., Inc.*, 200 B.R. 857, 861 (N.D. Ind. 1996) ("Ordinarily, once it has attached, subsequent events will not divest the district court of its subject-matter jurisdiction….This is not so with the jurisdiction conferred by §1334(b). Bankruptcy jurisdiction is apparently unique in federal jurisprudence because of the possibility that subsequent events may cause it to lapse…."); *see Dubose v. Merchs. & Farmers Bank*, 318 F. Supp. 2d 419, 426 (S.D. Miss. 2003) (finding bankruptcy jurisdiction allows all claims to be handled in a single forum; "[o]nce this jurisdictional mission has been fulfilled, the jurisdiction conferred by §1334(b) comes to an end.'…[and] [§1334] no longer provides a basis for removal of an action to federal court") (internal citations omitted); *Tschirn v. Secor Bank*, 123 B.R. 215 (E.D. La. 1991) (holding post-filing events can divest a court of "related to" jurisdiction).

[19] *Quincy Medical Center v. Gupta*, 2015 WL 58633, at *4 (D. Mass. 2015) (appeal pending).

[20] The case law consistently states that post-confirmation "related to" jurisdiction does not extend indefinitely. This suggests that such jurisdiction must lapse at some point.

[21] *See In re Resorts Intern., Inc.*, 372 F.3d 154, 164-65 (3rd Cir. 2004).

[22] *Id.* at 165; *see also Peabody Landscape Constr. Inc. v. Schottenstein*, 371 B.R. 276, 278 (S.D. Ohio 2007) (upon confirmation of plaintiff's plan, plaintiff's bankruptcy estate ceases to exist).

resolution of the dispute requires the court to interpret the bankruptcy plan or if the dispute directly affects the implementation, consummation, execution, or administration of the plan.[23] Neither is present here.

The PSC argues half-heartedly that, because the estate must spend money to answer non-party discovery, the Tennessee-only claims have a close nexus to the bankruptcy. Courts have rejected this argument. In disputes involving a post-confirmation continuing trust, jurisdiction is *not* retained by "the mere possibility of a gain or loss of trust assets[.]"[24] If that were the case, any lawsuit even indirectly impacting a continuing trust would fall under "related to" jurisdiction.[25]

Continuing to apply "related to" jurisdiction broadly after confirmation of the plan works as an "unwarranted expansion of federal court jurisdiction."[26] Not surprisingly, the Defendants were unable to find (and the PSC has not cited) a single case where a district court exercised "related to" jurisdiction over a PITWD case against a non-debtor *post*-confirmation.

### 4.  Events here have divested this Court of "related to" jurisdiction.

As explained above, a court can be divested of subject-matter jurisdiction by subsequent events in litigation. Here, the confirmation of the bankruptcy plan triggered several events that divested this Court of its "related to" jurisdiction: (1) the Tennessee

---

[23] *See In re Resorts Intern., Inc.*, 372 F.3d at 170-71; *see also In re A.H. Robins Co.*, 86 F.3d 364, 372-73 (4th Cir. 1996) (post-confirmation jurisdiction upheld where resolution of the dispute required the court to interpret the bankruptcy plan); *Falise v. Am. Tobacco Co.,* 241 B.R. 48 (E.D.N.Y. 1999) (post-confirmation jurisdiction denied when the dispute was a "major suit" brought against third parties that did not require interpretation of the bankruptcy plan); *In re Haws*, 158 B.R. 965 (S.D. Tex. 1993) (post-confirmation jurisdiction denied when no evidence is presented as to how the dispute would affect the terms of the bankruptcy plan and where the court is not asked to construe or interpret the confirmation plan); *In re Pegasus Gold Corp.*, 296 B.R. 227 (D. Nev. 2003) (post-confirmation jurisdiction upheld where defendant's breach of agreement undermined the objectives of the bankruptcy plan).

[24] *See In re Resorts Intern., Inc.*, 372 F.3d at 170.

[25] *See id.*

[26] *In re Boston Reg'l Med. Ctr., Inc.*, 410 F.3d 100, 106 (1st Cir. 2005).

Clinic Defendants withdrawal of their claims for contribution and indemnity against the Debtor;[27] (2) the Plan's inclusion of an injunction barring future claims against NECC;[28] and (3) the affiliated defendants' dismissal from the Tennessee cases.[29] With no conceivable nexus to the bankruptcy, the Tennessee cases no longer satisfy the criteria *this Court has already applied in this case*[30] to justify "related to" jurisdiction.

The PSC also ignores the fact that any negligible effect[31] on the bankruptcy estate ends after NECC provides written discovery and a witness for deposition. It is therefore impossible for the <u>outcome</u> of the Tennessee cases to affect the estate, the required criterion for applying "related to" jurisdiction.[32]

Given that this Court has been divested of its "related to" jurisdiction and the fact that §157(b)(5) does not create or confer jurisdiction,[33] this Court is without subject-matter jurisdiction over these state law suits. Continued assertion of jurisdiction over these cases would be an impermissible expansion of federal jurisdiction.[34]

### C.  If the Court finds subject-matter jurisdiction still exists, it should abstain from exercising it.

Even if the Court finds that "related to" subject-matter jurisdiction still exists, the Court still must do an abstention analysis before transferring the cases to itself under

---

[27] *See* Bankruptcy Dkt. No. 1270 at p. 3 ¶ 3
[28] *See* Bankruptcy Dkt. No. 1352-1 at p. 50 ¶ iv
[29] Dkt. No. 1992.
[30] *See* Dkt. Nos. 176, 1131 (holding that the Court would exercise jurisdiction where either (1) NECC or an affiliated party was named as a defendant or (2) a clinic defendant asserted a claim against NECC for contribution or indemnity).
[31] The costs of responding to discovery are negligible when compared to the millions of dollars the estate will pay in administrative fees.
[32] The PSC's assertion that discovery will deplete the Tort Trust (which is <u>*not*</u> the bankruptcy estate because the bankruptcy estate does not exist post-confirmation) is disingenuous. Discovery costs will be paid out the *Expense Fund*, which is separate from the Tort Trust, and was created to pay for exactly these types of expenses. Surely the Trustee contemplated further expenses to the estate related to discovery in the ongoing cases given the Trustee's projected expenses of $6,000,000 in Professional Fees and $11,000,000 in Trustee Fees. *See* Bankruptcy Dkt. No. 1309-1 at p. 2.
[33] *See Stern v. Marshall*, 131 S. Ct. 2594, 2607 (2011).
[34] *See Pettibone Corp. v. Easley*, 935 F.2d 120, 122 (7th Cir. 1991).

8

§157(b)(5).[35] <u>The Court has already applied the twelve factors and found it proper to exercise its discretion and abstain from hearing cases (like these) that name only clinic defendants with no contribution or indemnity claims against the estate.</u>[36]

In the Tennessee cases, the Tennessee Clinic Defendants will be the only remaining defendants once dismissal of the affiliated defendants is complete; and, upon confirmation of the bankruptcy plan, the Tennessee Clinic Defendants waived their claims for contribution and indemnity against the estate.

Thus, the Tennessee cases now fit the Court's previously-decided criteria for discretionary abstention, and the Court should abstain.[37]

### D. If the Court finds §157(b)(5) trumps §1407 and *Lexecon*, it should nevertheless remand the cases to Tennessee for trial.

Even if the Court (1) accepts the PSC's unsupported argument that §157(b)(5) undoes §1407 and *Lexecon*, (2) determines that "related to" jurisdiction still exists, and (3) reverses course from its previous ruling and decides not to abstain, the facts overwhelmingly establish that Tennessee is the proper venue for these claims.

Section 157(b)(5) directs the Court to decide whether these cases should be tried "in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose." The statute provides no direction as to how the forum should be chosen.[38] "In the absence of statutory direction, courts have considered the

---

[35] *In re Twin Laboratories, Inc.*, 300 B.R. 836, 840 (S.D.N.Y. 2003) (noting that court must conduct abstention analysis before transferring cases pursuant §157(b)(5)) (cited by J. Saylor at Dkt. No. 176).

[36] Dkt. No. 176 at pp. 24-25 ("the Court will exercise its discretion and abstain from asserting jurisdiction – again, assuming that it exists – over those cases currently pending in state courts involving only state-law claims against defendants other than NECC and its affiliates, and where there is no third-party claim for contribution or indemnity").

[37] *Naser Jewelers, Inc. v. City of Concord*, 538 F.3d 17, 20 (1st Cir. 2008) ("[W]hen a court decides upon a rule of law, that decision should govern the same issues in subsequent stages of the same case." (internal quotations and citations omitted)).

[38] *In re NTC of America, Inc.*, 92 B.R. 777, 777 (N.D. Ill. Oct. 20, 1988).

facts of each case in choosing a forum."[39] There can be no legitimate argument against Tennessee as the most appropriate venue for trial of the Tennessee cases.

This is now a dispute between Tennessee plaintiffs and Tennessee health care provider defendants. The Tennessee citizens assert claims under Tennessee law.[40] The relationship between the Plaintiffs and Defendants existed solely in Tennessee. The injuries occurred in Tennessee. The allegedly negligent conduct – the Tennessee providers' decision to purchase NECC medication – occurred in Tennessee.

Additionally, trying these cases in Massachusetts will be unnecessarily burdensome on the Tennessee parties. The Plaintiffs and Defendants are in Tennessee. The majority of the important testifying witnesses are from Tennessee. The lead trial lawyers for the Tennessee cases are almost all in Tennessee.[41] [42]

Lastly, as the Court has already observed[43], this matter involves an issue of first impression under Tennessee state law (the viability of the Plaintiffs' product liability claims). Respectfully, a Tennessee judge will be more familiar with Tennessee law, and, as a practical matter, can certify the question to the Tennessee Supreme Court.[44]

It is abundantly clear that Tennessee, not Massachusetts, is the best venue for trial of the Tennessee cases if the Court is considering transfer under §157(b)(5).

---

[39] *Id.* at 778.

[40] The Tennessee Health Care Liability Act, the Tennessee Product Liability Act, and the Tennessee Consumer Protection Act.

[41] *See also In re UNR Industries, Inc.*, 74 B.R. 146, 149 (N.D. Ill Feb. 2, 1987) (deciding that motion for summary judgment filed by debtor would be resolved in district court where claim arose because action was brought in that district (PA), the court would be well-versed in PA law, the plaintiff resided in PA and was represented by PA attorneys, and it would be burdensome to force the plaintiff to litigate case in IL).

[42] Massachusetts' witnesses will not be impacted as they are outside the 100 mile subpoena radius set forth in Fed. R. Civ. P. 45(c)(1)(A) and cannot be compelled to appear in Tennessee.

[43] Dkt. No. 1360 at p. 20.

[44] Tennessee Supreme Court Rule 23: "The Supreme Court may, at its discretion, answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States, a *District Court of the United States in Tennessee*, or a United States Bankruptcy Court in Tennessee."

### III.      Conclusion

The cases at issue were transferred to this Court pursuant to §1407, and, as such, §1407(a) and *Lexecon* require they be remanded to Tennessee.

Alternatively, the confirmation of the bankruptcy plan divested this Court of its "related to" jurisdiction and left it without the subject-matter jurisdiction required to try these cases. Thus, the Court must remand the Tennessee cases.

If the Court finds that it has subject-matter jurisdiction, the Court should abstain from transferring the cases under §157(b)(5).

Finally, if the Court chooses not to abstain, the Court should nevertheless remand the cases to Tennessee because it is the logical venue for trial.

Respectfully submitted,

**GIDEON, COOPER & ESSARY, PLC**

/s/ Chris J. Tardio
**C.J. Gideon, Jr.***
**Chris J. Tardio***
**Alan S. Bean****
**Matthew H. Cline***
315 Deaderick Street, Suite
Nashville, TN 37238
Ph: (615) 254-0400
Fax: (615) 254-0459
chris@gideoncooper.com

***Attorneys for the Tennessee Clinic Defendants***

\* Admitted pursuant to MDL Order No. 1.
\*\* Admitted *pro hac vice.*

11

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be served electronically to the registered participants identified on the Notice of Electronic Filing and copies will be e-mailed or mailed via regular U.S. mail to those participants identified as unregistered this 16th day of July, 2015.

/s/ Chris J. Tardio
**Chris J. Tardio**