UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN RE NEW ENGLAND COMPOUNDING          )
PHARMACY, INC. PRODUCTS LIABILITY      )
LITIGATION                             )
_____ )          MDL No. 2419
                                       )          Dkt. No 1:13-md-2419 (RWZ)
THIS DOCUMENT RELATES TO:              )
                                       )
    ALL CASES                          )
                                       )
                                       )
_____ )


**SAINT THOMAS ENTITIES' BRIEF IN RESPONSE TO
PSC'S MEMORANDUM REGARDING THIS COURT'S AUTHORITY
TO CONDUCT TRIALS PURSUANT TO 28 U.S.C. § 157(B)(5)**

## TABLE OF CONTENTS

I.      Introduction ................................................................................................................ 1

II.     Argument and Authorities ......................................................................................... 3

   A.   Analysis Under 28 U.S.C. § 157 Presupposes Bankruptcy Jurisdiction, Which
        Does Not Exist In This Case Post-Confirmation. ................................................. 3

             (1) Bankruptcy Jurisdiction Does Not "Vest" Because It is a Conferral of Federal
                 Question Jurisdiction.  The "Time-of-Filing" Rule is Inapplicable........................ 3

             (2) 28 U.S.C. § 157 is a Procedural Statute that is Only Applicable if Bankruptcy
                 Subject Matter Jurisdiction Exists. ........................................................................ 4

             (3) Confirmation of NECC's Liquidation Plan has Removed Any Nexus to the Tort
                 Cases. ...................................................................................................................... 5

   B.   Alternatively, Even if Applicable, § 157(b)(5) Provides this Court with a Clear
        Venue Choice. ....................................................................................................... 8

             (1) Venue Decisions Pursuant to § 157(b)(5) are Informed by the Tort Litigation's
                 Impact (or Lack Thereof) on the Bankruptcy Estate/Plan. ..................................... 9

             (2) The Confirmed Plan Removes any Bankruptcy Policy Justifications for
                 Consolidated Trial in Massachusetts. ................................................................... 10

The Saint Thomas Entities[1] file this brief in response to the Plaintiffs' Steering Committee's *Memorandum Regarding this Court's Authority to Conduct Trials Pursuant to 28 U.S.C. § 157(b)(5)* [Dkt. No. 2055] ("PSC Brief").

## I.       INTRODUCTION

Before this Court are personal injury tort and wrongful death cases ("Tort Cases") transferred to this District by the U.S. Judicial Panel on Multidistrict Litigation ("JPML") pursuant to 28 U.S.C. § 1407 for coordinated and consolidated pretrial proceedings. *See, e.g.,* Conditional Transfer Order (CTO–56), Dkt. No. 695. This Court was the chosen forum for all of these cases because, in the MDL Panels' view:

> [t]he facility at which the contamination allegedly occurred is located [in Massachusetts], and the federal and state investigations into [NECC] are focused there. Thus, the primary witnesses, physical evidence, and documentary evidence will likely be located in Massachusetts. Additionally, defendant is headquartered in Massachusetts, and defendant's bankruptcy case is pending in this district.

*Id.* at 2. The MDL Panel was clearly talking about NECC—not the myriad, local healthcare defendants like the Saint Thomas Entities, located in other states around the country, who were not before it at the time the MDL was created.

As a result of the recent settlements with NECC, the Insider Defendants,[2] and the National Defendants[3] (collectively, the "Settling Defendants"), however, the only claims remaining to resolve in this litigation are the ones against the local Healthcare Defendants,[4] including the Saint Thomas Entities—which are spread across the country.

---

[1] Saint Thomas West Hospital, formerly known as St. Thomas Hospital, Saint Thomas Network, and Saint Thomas Health.

[2] The "Insider Defendants" are entities and individuals affiliated with NECC, including Barry and Lisa Cadden; Doug, Carla, and Greg Conigliaro; Glenn Chin; Alaunus Pharmaceutical, LLC; Ameridose, LLC; GDC Properties Management, Inc.; Medical Sales Management, Inc.; and Medical Sales Management, SW, Inc.

[3] "National Defendants" means all of the defendants not affiliated with NECC who had service agreements or arrangements with NECC or the Insider Defendants, but who did not purchase compounded product from NECC, including UniFirst Corporation, ARL BioPharma Inc., Liberty Industries, Inc., Victory Mechanical Services, Inc., and Victory Heating & Air Conditioning Co.

[4] The "Healthcare Defendants" are the clinics/hospitals and their employees, physicians, nurses, staff, that injected their patients with NECC-manufactured MPA, and the organizations and individuals who are claimed to be liable to the Plaintiffs based upon their actual or apparent corporate relationship to the injecting individuals and entities.

At the last status conference on June 24, 2015, the Court outlined two potential paths for the remaining cases in light of the settlements:

> [T]here are really only two possibilities: One is that the cases are tried here with [*Lexecon*][5] waivers or that the cases go back if there are no waivers . . . . And so, what I propose is that the defendants, within a very short time, make a choice as to . . . whether they're going to waive or not. If they don't waive, we will proceed with common discovery, fact discovery and expert discovery and get it done as quickly as we can, which I think should be early next year, at the latest, and then the cases would be sent back for trial to their original jurisdictions.
>
> If there are waivers, then we will proceed, perhaps in a slightly faster fashion, with common discovery, move on to individual discovery of the individual cases in the order in which they are set up . . . .[6]

The Court invited the parties to definitively state their position on *Lexecon*[7] so that it could achieve clarity as to where the cases would be tried. In response, the PSC argued that the Court could avoid *Lexecon*'s binding mandate that the cases be remanded back to their originating forums for trial by utilizing 28 U.S.C. § 157(b)(5), which the PSC contends allows this Court to preside over hundreds of trials of cases that now involve Plaintiffs from across the country, regional Healthcare Defendants, and state laws. The PSC makes these arguments in the face of case-altering bankruptcy developments that have removed NECC and its estate, all NECC affiliates, and various other parties from the Tort Cases via settlement and confirmation of a chapter 11 plan. However, this Court cannot hold a trial for any case transferred to it by the JPML for which a *Lexecon* waiver has not been provided by all parties because of the following:

(1)     First, confirmation of the NECC bankruptcy plan was a significant jurisdictional event that alters this Court's "related to" subject matter jurisdiction. Without bankruptcy jurisdiction, the Court has no statutory basis for making a venue determination pursuant to § 157(b)(5). The Court maintains venue of these matters solely pursuant to 28 U.S.C. § 1407.

---

[5] In *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 34 (1998), the U.S. Supreme Court held that the MDL transfer statute, 28 U.S.C. § 1407, does not permit the transferee court to try cases that were not originated under its jurisdiction absent agreement by the parties.

[6] Transcript of June 24, 2015, Status Conference at 25-26.

[7] *Id.*

(2)     Second and alternatively, because the bankruptcy plan was ***specifically designed to remove NECC*** from these proceedings and channel all tort claims to its settlement trust, no bankruptcy policy is furthered by consolidating venue of the Tort Cases in this Court.

## II.     ARGUMENT AND AUTHORITIES

**A.     Analysis Under 28 U.S.C. § 157 Presupposes Bankruptcy Jurisdiction, Which Does Not Exist In This Case Post-Confirmation.**

**(1)     Bankruptcy Jurisdiction Does Not "Vest" Because It is a Conferral of Federal Question Jurisdiction.  The "Time-of-Filing" Rule is Inapplicable.**

The PSC's first argument is that, because this Court had subject matter jurisdiction of the Tort Cases pursuant to 28 U.S.C. § 1334(b) at the inception of those cases, jurisdiction "vests" and cannot be altered by subsequent events in the bankruptcy proceeding.  *See* PSC Brief at 6-7.  However, that is simply not the case here.

The Saint Thomas Entities generally agree that federal ***diversity*** jurisdiction is established upon the commencement of a case—the proposition for which every relevant case cited by the PSC stands—so as to avoid jurisdiction gerrymandering.  However, the PSC ignores the critical distinction between ***diversity*** and ***federal question*** jurisdiction.  The time-of-filing rule, "by its letter and spirit," only applies in diversity cases "where heightened concerns about forum shopping and strategic behavior offer special justifications for it."  *ConnectU LLC v. Zuckerberg*, 522 F.3d 82, 92 (1st Cir. 2008).  "These concerns are not present in the mine-run of federal question cases, and courts have been careful not to import the time-of-filing rule indiscriminately into the federal question realm."  *Id*.  As the First Circuit has recognized:

> [T]he *Grupo Dataflux* Court explicitly restricted the time-of-filing rule to diversity cases.  Nothing in the opinion intimates that the Court meant to extend the rule wholesale beyond the frontiers of the diversity context.  Doing so would have represented a major innovation, and a lower federal court should be slow to assume that the Supreme Court has taken a significant doctrinal step by indirection or innuendo.

*Id*. at 93 (citing *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 571 (2004)).

3

28 U.S.C. § 1334 grants U.S. district courts jurisdiction over bankruptcy matters irrespective of the parties' citizenship.  That jurisdiction, unlike diversity jurisdiction, should be assessed, and reassessed, by the Court whenever appropriate; and if major events such as settlement or plan confirmation impacts the jurisdictional analysis, dismissal or remand is appropriate.  *See, e.g., Spradlin v. Richard*, 572 Fed. App'x 420, 426 (6th Cir. 2014) ("As soon as the 2009 Settlement Agreement was approved, the bankruptcy estate lost any interest in the outcome of the Adversary Proceeding and the bankruptcy court lost subject-matter jurisdiction over [claims and cross-claims between non-debtor entities]") (not recommended for full-text publication).[8]   Therefore, this Court should undertake an analysis of bankruptcy jurisdiction before considering whether venue transfer is appropriate pursuant to § 157(b)(5).

**(2)   28 U.S.C. § 157 is a Procedural Statute that is Only Applicable if Bankruptcy Subject Matter Jurisdiction Exists.**

As this Court recently held, "[i]t is hornbook law that a court cannot act in the absence of subject matter jurisdiction . . . ."  *Quincy Med. Ctr. v. Gupta*, Civ. A. No. 12-40128, 2015 U.S. Dist. LEXIS 377, at *8 (D. Mass. Jan. 5, 2015) (quoting *United States v. Horn*, 29 F.3d 754, 767 (1st Cir. 1994)).  The analysis in *Quincy* is directly applicable to the seminal inquiry here: before it makes a § 157(b)(5) venue decision, the Court must determine whether post-confirmation bankruptcy subject matter jurisdiction exists.

District courts, and by referral, bankruptcy courts, are vested with "limited authority" to preside over the following categories of matters: (1) cases under title 11, (2) proceedings arising under title 11, (3) proceedings arising in a case under title 11, and (4) proceedings related to a case under title 11.  *See, e.g., Bd. of Governors v. MCorp Fin., Inc.*, 502 U.S. 32, 40 (1991);

---

[8] *See also Arnold v. Garlock, Inc.*, 278 F.3d 426, 435, 444 (5th Cir. 2001) (describing and affirming finding of no bankruptcy jurisdiction and refusal to transfer venue of personal injury cases pursuant to § 157(b)(5) where debtors were removed from the proceedings and potential contribution claims against debtor were invalid); *BMW Fin. Servs. v. Ploetner (In re Towne, Inc.)*, No. 10-01637, 2010 Bankr. LEXIS 3768, at *14-*15 (D.N.J. Oct. 21, 2010) (remanding on finding of no bankruptcy jurisdiction in litigation between non-debtors after the release of the debtor); *Albright v. Aeroquip Corp.*, Civ. Action No. 94-CV-447, 1995 U.S. Dist. LEXIS 10819, at *10 (M.D.N.C. June 26, 1995) (remanding case to state court where bankruptcy debtor settled with remaining litigants, all contribution/indemnity rights were eliminated, and the action no longer related to the bankruptcy proceeding).

*Quincy*, 2015 U.S. Dist. LEXIS 377, at *9 (quoting *Binder v. Price Waterhouse & Co. (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 162 (3d Cir. 2004)).  Proceedings falling into the first three categories are called "core" proceedings, while those falling into the last category are "non-core" proceedings.  *Stern v. Marshall*, 131 S. Ct. 2594, 2605 (2011).

Prior to confirmation of a chapter 11 plan, "related to" jurisdiction—the broadest grant of non-core bankruptcy subject matter jurisdiction—exists if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."  *In re Resorts Int'l Inc.*, 372 F.3d at 164 (citation omitted).  However, the standard becomes more stringent post-confirmation.  "[B]ankruptcy court jurisdiction 'must be confined within appropriate limits and does not extend indefinitely, particularly after the confirmation of a plan and the closing of a case.'"  *Id.* (quoting *Donaldson v. Bernstein*, 104 F.3d 547, 553 (3d Cir. 1997)).

Post-confirmation proceedings that do not involve the debtor or do not impact the debtor's estate are not "related to" title 11.  *Quincy*, 2015 U.S. Dist. LEXIS 377, at *8 (holding that the critical limitation on "related to" jurisdiction is that "bankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor." (quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.6 (1995))).

> **(3)     Confirmation of NECC's Liquidation Plan has Removed Any Nexus to the Tort Cases.**

NECC's confirmed and effective bankruptcy plan ("Plan")[9] is uniquely designed to completely and unequivocally remove NECC, its estate, and all Settling Defendants from this MDL proceeding and any other current or future civil actions, and enjoin all potential future litigation against those parties.  *See* Confirmation Order at ¶¶ 7-13 (affirming the broad debtor and third-party release provisions of the Plan); *id.* at 14 (affirming the Plan injunction against

---

[9] Since 2012, NECC, led by appointed chapter 11 trustee Paul Moore ("Trustee"), has operated in its bankruptcy proceeding in dual-track with this MDL proceeding.  On May 20, 2015, the Bankruptcy Court entered its order confirming NECC's Plan ("Confirmation Order") [Bankr. Dkt. No. 1355].  The Plan went "effective" (i.e., became final and non-appealable) on June 4, 2015.  *See* Notice of Occurrence of Effective Date, Bankr. Dkt. No. 1377.

any future claims against NECC and the settling parties).  The foundation of the Plan is to remove the costs, burdens, and delays of litigation from the bankruptcy estate and channel all tort claims—to be exclusively resolved pursuant to trust distribution protocols—to the Tort Trust.

Of course, the Plan did not globally resolve all conflict between the tort plaintiffs and certain non-NECC affiliated parties, namely the Healthcare Defendants such as the Saint Thomas Entities.  The parties' shared expectation that the litigation against the Healthcare Defendants would continue played a vital role in Plan negotiation, drafting, and confirmation.

Relevant to the instant inquiry, the Saint Thomas Entities and others negotiated an agreement with the Trustee and the PSC to include in the Plan specific reservation-of-rights language preserving defendants' apportionment of liability/comparative fault rights under prevailing state law.  The Plan's consensual reservation of rights language provides:

> The release and injunction provisions of this Plan . . .  shall not be deemed to abrogate any defense based upon comparative fault that may be available under applicable state law . . . [and] shall not preclude any such Person or Entity from naming the Debtor and/or the Tort Trust . . . as a party to the applicable proceeding, <u>for the sole purpose of apportioning liability or otherwise securing a reduction in liability</u> . . . .

*See* Plan at Art. 10.07 (emphasis added), attached hereto as **Exhibit** "**A**."  This reservation was expressly conditioned on, *inter alia*, NECC, the Trustee/Post-Confirmation Officer, and the Tort Trustee ***not*** (1) being named as a party to any proceeding, (2) being required to enter an appearance in any proceeding, and (3) being made the subject of any judgment or damages award.  *Id*.  Accordingly, the Trustee took every possible step to remove himself, the NECC estate, and the post-confirmation Tort Trust from pending litigation while clarifying that Plan confirmation would not (as it could not) affect the remaining litigants' rights to defend themselves.  In fact, it is almost inconceivable that a bankruptcy plan could be formulated that would more effectively separate Plan implementation and execution from pending litigation.

Still, the PSC argues that the Trustee's[10] involvement in third-party discovery is sufficient to create "related to" jurisdiction.  The PSC does not cite to any precedent that supports the proposition that the incurrence of third-party discovery fees by a post-confirmation trustee is sufficient to create "related to" bankruptcy jurisdiction.  In fact, the PSC fails to cite a single case describing the bounds of ***post-confirmation*** "related to" bankruptcy jurisdiction.

The PSC's omission is telling.  It is a well-developed proposition of law that plan confirmation constrains "related to" jurisdiction.  *Quincy*, 2015 U.S. Dist. LEXIS 377, at \*10-\*11 ("Timing also affects the relationship between a third-party proceeding and a bankruptcy estate.  After confirmation of the bankruptcy estate's plan of reorganization, the perimeter of "related to" jurisdiction may shrink because, logically, it is impossible for the bankrupt debtor's estate to be affected by a post-confirmation dispute because the debtor's estate ceases to exist once confirmation has occurred." (internal quotations omitted)).

In addition to ignoring the natural constriction of "related to" jurisdiction, The PSC argues for an expansion of bankruptcy jurisdiction to any and all cases, wherever located and whomever against, that might create an expense to a post-confirmation trust.  The PSC's proposition is unsupportable, creating the very "specter of unending jurisdiction" that must be avoided when a bankruptcy plan creates a litigation or distribution trust.  *In re Resorts*, 372 F.3d at 167 ("[I]f the mere possibility of a gain or loss of trust assets sufficed to confer bankruptcy court jurisdiction, any lawsuit involving a continuing trust would fall under the 'related to' grant.  Such a result would widen the scope of bankruptcy court jurisdiction beyond what Congress intended for non-Article III bankruptcy courts.").

By comparison, courts have commonly found that litigation directly instituted by or against a post-confirmation trustee—involving facts considerably more "related" to bankruptcy than here—is ***not*** "related to" the bankruptcy case and thus does not afford bankruptcy

---

[10] The Trustee has now assumed the role of "Post-Confirmation Officer" under the Plan; because there is no remaining bankruptcy estate, confirmation of the Plan discharged Mr. Moore's duties as chapter 11 trustee.

jurisdiction.  *See, e.g,, Falise v. Am. Tobacco Co.*, 241 B.R. 48 (E.D.N.Y. 1999) (finding no

bankruptcy jurisdiction where the trust sought recovery from tobacco companies for their role in

contributing to asbestos-related illnesses because the resolution of the dispute would have no

impact on any integral aspect of the bankruptcy plan or proceeding); *In re Haws*, 158 B.R. 965

(Bankr. S.D. Tex. 1993) (finding that bankruptcy jurisdiction did not exist where the only nexus

to the bankruptcy case was that the plaintiff was a liquidating trustee representing a group of

creditors appointed pursuant to the confirmed plan of reorganization).[11]

In any event, even if the PSC's argument had merit, any "impact" to the post-

confirmation trust due to third-party discovery obligations will certainly cease by the time any

case is tried,[12] and only limited discovery remains against any settling party.[13]

In sum, the PSC's argument that bankruptcy jurisdiction continues in the MDL

proceeding beyond the Plan confirmation is without merit.  Without bankruptcy jurisdiction,

there is no basis for the Court to make a venue decision based on § 157(b)(5).  Venue remains

proper in this Court for pretrial coordination under 28 U.S.C. § 1407, and the venue rules

applicable to MDLs—namely *Lexecon*—control where trials take place.

**B.     Alternatively, Even if Applicable, § 157(b)(5) Provides this Court with a Clear
         Venue Choice.**

Assuming, arguendo, "related to" jurisdiction could exist post-confirmation of NECC's

Plan, § 157(b)(5) does not require the Court to try the Tort Cases in this District; it presents a

choice to this Court that should be informed not only by the bankruptcy policies and principles

---

[11] *See also In re Resorts Int'l, Inc.*, 372 F.3d at 169 ("The Litigation Trust's connection to the bankruptcy is not identical to that of the estate . . . . [T]he Litigation Trust was created in part so that the Plan could be confirmed and the debtor freed from bankruptcy court oversight without waiting for the resolution of the litigation claims.").

[12] *See* Dkt. No. 2075 at 3.

[13] *Id.* at 3 n.3.

that underlie § 157,[14] but also the mandates of 28 U.S.C. § 1407. The PSC does not address in any meaningful way the Court's analysis under § 157(b)(5).

**(1)     Venue Decisions Pursuant to § 157(b)(5) are Informed by the Tort Litigation's Impact (or Lack Thereof) on the Bankruptcy Estate/Plan.**

At its core, § 157(b)(5) is designed to allow oversight by the bankruptcy forum to assure orderly, fair, and expeditious resolution of claims that affect a bankruptcy estate. *See Calumet Nat'l Bank v. Levine*, 179 B.R. 117, 121 (N.D. Ind. 1995) (citations omitted); *In re Dow Corning Corp.*, 187 B.R. 919, 925 (E.D. Mich. 1995).[15] The "manifest purpose" of § 157(b)(5) is "to centralize the administration of the estate and to eliminate the 'multiplicity of forums for the adjudication of parts of a bankruptcy case.'" *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 1011 (4th Cir. 1986) (quoting 130 Cong. Rec. H7492 (June 29, 1984) (remarks of Congressman Kastenmeier), *reprinted in* 1984 U.S.C.A.A.N. at 579).[16]

Accordingly, when considering the statutory venue options of the bankruptcy and the originating forums, courts weigh the probable impact on the bankruptcy proceeding resulting from claims resolution in a consolidated venue against issues of comity, respect for the application of state law, location and convenience of the parties, and deference to the plaintiffs' original choice of forum. *See In re Pan Am Corp.*, 950 F.2d 839, 845 (2d Cir. 1991) ("[S]ection 157(b)(5) has consistently been construed to recognize discretion in district courts to leave personal injury cases where they are pending."); *see also Arnold*, 278 F.3d at 444 (affirming denial of removal and transfer to the bankruptcy forum pursuant to § 157(b)(5) because, *inter alia*, resolution of litigation would have no impact on the bankruptcy estate).

---

[14] *See* 28 U.S.C. § 157(b)(5) ("The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, *or* in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending." (emphasis added)).

[15] Section 157(b)(5) was enacted out of concern that bankruptcy courts could not constitutionally adjudicate non-core matters, such as personal injury and wrongful death cases. *See Baumgart v. Fairchild Aircraft Corp.*, 981 F.2d 824, 830-31 (5th Cir. 1993) (citing *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982)).

[16] *See also Lindsey v. O'Brien, Tanski, Tanzer & Young Health Care Providers of Conn. (In re Dow Corning Corp.)*, 86 F.3d 482, 496 (6th Cir. 1996) (holding that the purposes of § 157(b)(5) include the centralization of the administration of the estate, the elimination of multiple forums for adjudicating bankruptcy cases, and the assurance of fair payment of claims).

**(2)     The Confirmed Plan Removes any Bankruptcy Policy Justifications for Consolidated Trial in Massachusetts.**

As set forth above, under the design of the confirmed Plan, the outcome of the Tort Cases remaining against the Healthcare Defendants necessarily cannot impact the NECC bankruptcy or implementation of the confirmed Plan. This is not the run-of-the-mill case where a U.S. District Court may need or choose to take over the claims resolution process because the bankruptcy court lacks authority to conduct a jury trial. In this case, there are no claims left against the Settling Defendants that are not dealt with under the Plan and Tort Trust.

Notwithstanding this complete elimination of claims against NECC, the PSC requests for this Court to contravene the procedural safeguards of *Lexecon* and prevailing MDL law. *Lexecon* upheld Congress' statutorily explicit intent that cases transferred for the purpose of pretrial coordination under § 1407 be sent back to their originating courts for trial absent a waiver of venue by all parties. *See Lexecon*, 523 U.S. at 40-41. That result also makes eminent sense under the circumstances. The claims envisioned by the MDL Panel for centralization in this Court have now been resolved, and the purpose of this MDL has been fulfilled. It is highly unlikely that the MDL Panel would have originally ordered centralization if it had been presented with the cases in their current status—for personal injury tort and wrongful death claims arising under state law against healthcare providers operating and residing in the same (or in some instances, neighboring) state as the plaintiffs. At the same time, it makes no sense to try Tennessee-centric matters to a Boston jury. Nor does it make sense to burden this District with dozens of cases where the plaintiffs and defendants are citizens of another state. Thus, this Court should honor the congressional choice upheld by the Supreme Court in *Lexecon* and return the cases to their transferor courts once Common Issue discovery is complete.

For the these reasons, the Saint Thomas Entities respectfully request that the Court find that jurisdiction pursuant to 28 U.S.C. § 1334 does not exist, and/or that trial of the Tort Cases in this Court pursuant to 28 U.S.C. § 157(b)(5) is not appropriate.

10

SAINT THOMAS WEST HOSPITAL,
FORMERLY KNOWN AS ST. THOMAS
HOSPITAL, SAINT THOMAS NETWORK,
AND SAINT THOMAS HEALTH

By their attorneys,
*/s/ Sarah P. Kelly*
Sarah P. Kelly (BBO #664267)
skelly@nutter.com
NUTTER McCLENNEN & FISH LLP
Seaport West
155 Seaport Boulevard
Boston, Massachusetts  02210
(617) 439-2000
(617) 310-9461 (FAX)


Dated: July 16, 2015

OF COUNSEL:

Yvonne K. Puig*
Texas State Bar No. 16385400
yvonne.puig@nortonrosefulbright.com
Adam T. Schramek*
Texas State Bar No. 24033045
adam.schramek@nortonrosefulbright.com
Eric J. Hoffman*
Texas State Bar No. 24074427
eric.hoffman@nortonrosefulbright.com

NORTON ROSE FULBRIGHT US LLP
98 San Jacinto Blvd. Suite 1100
Austin, Texas 78701
(512) 536-2450
(512) 536-4598 (FAX)

Marcy Hogan Greer*
Texas State Bar No. 08417650
mgreer@adjtlaw.com
ALEXANDER DUBOSE JEFFERSON & TOWNSEND LLP
515 Congress, Suite 2350
Austin, Texas 78701
(512) 482-9300

*Appearing *Pro Hac Vice*

11

## CERTIFICATE OF SERVICE

This certifies that a true and accurate copy of the foregoing was served on all parties of record by virtue of the Court's electronic filing system this 16th day of July, 2015.

/s/ Sarah P. Kelly
SARAH P. KELLY

2843466.1

12