**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____

IN RE NEW ENGLAND COMPOUNDING )
PHARMACY, INC. PRODUCTS LIABILITY )
LITIGATION )          MDL No. 2419
_____)
)
THIS DOCUMENT RELATES TO: )
)
All Actions Involving Specialty Surgery Center, )
PLLC, and Kenneth R. Lister, M.D. )
_____)

<u>**SPECIALTY SURGERY CENTER, PLLC, AND KENNETH R. LISTER'S, M.D.,
RESPONSE TO PLAINTIFFS' STEERING COMMITTEE'S MEMORANDUM
REGARDING THIS COURT'S AUTHORITY TO CONDUCT TRIALS PURSUANT TO
28 U.S.C. § 157 (b)(5**</u>

## TABLE OF CONTENTS

ARGUMENT …………………………..……………………….…………………..1

    A.  28 U.S.C. § 1407 and <u>Lexecon</u> require this Court to remand the pending claims against the Defendants to Tennessee.…………………………………………………1

    B. Even if this Court ignores the statutory mandate of § 1407, the Supreme Court's ruling in <u>Lexecon</u>, and the actual language and application of § 157(b)(5), it does not have subject matter jurisdiction under § 1334(b) to apply § 157(b)(5), or, at a minimum, it does not have exclusive jurisdiction.  ……………………………………4

    C. Even if this Court finds it does have subject matter jurisdiction under 28 U.S.C. §1334(b), as a result of the confirmation of the bankruptcy plan, it should abstain from asserting such jurisdiction.  ……………………………………………………6

    D. If this Court finds it retains subject matter jurisdiction and § 157(b)(5) allows it to determine trial venue, it should nevertheless transfer the cases back to Tennessee.…………………………………………………………………………9

CONCLUSION …………………………………………………………………...10

Specialty Surgery Center, Crossville, PLLC ("SSC") and Kenneth R. Lister, M.D. ("Dr. Lister") (collectively "the Defendants") submit this response in opposition to the Plaintiffs' Steering Committee's Memorandum Regarding this Court's Authority to Conduct Trials Pursuant to 28 U.S.C. § 157(b)(5).  [Docket No. 2055].

## ARGUMENT

**A.     28 U.S.C. § 1407 and Lexecon require this Court to remand the pending claims against the Defendants to Tennessee.**

The PSC urges this Court to apply 28 U.S.C. § 157(b)(5) to try the pending Tennessee claims in Massachusetts.  However, the Tennessee cases were transferred to this Court pursuant to 28 U.S.C. § 1407[1], not § 157(b)(5).  If the plaintiffs had truly intended for a Massachusetts court to try their claims, they would have originally filed in Massachusetts, rather than hope for transfer to this Court pursuant to § 1407.

By the actual language of 28 U.S.C. §1407, every civil action transferred to a transferee court under §1407 "shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated."  28 U.S.C. §1407 (a).  This means the Judicial Panel must remand cases transferred to MDL courts back to the transferor courts for trial.  Id.; see also Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 34 (1998).  The United States Supreme Court made it explicitly clear that §1407 "obligates the Panel to remand any pending case to its originating court when, at the latest, those pretrial proceedings have run their course."  Lexecon, 523 U.S. at 34.  The "shall" language "creates an obligation impervious to judicial discretion."  Id. at 35 (citations omitted).  Therefore, the transferee court does not have any authority to assign the

---

[1] The PSC even admits this.  Dkt. No. 2055, at p. 4.

transferred case to itself for trial.  Id. at 40; see also 28 U.S.C. §1407 (a).   This unambiguous holding applies with equal force to self-transfers under § 157(b)(5).

While the PSC attempts to downplay Lexecon and discard case law directly on point, the interplay of Lexecon and §157(b)(5) was specifically addressed in Shah v. Pan American World Services, Inc., 148 F.3d 84.[2]  As here, in Shah the plaintiffs' action was not transferred to the court pursuant to §157(b)(5).  Id. at 90.  The court found "[e]ven assuming, however, that [the court] may look to whether venue was sustainable under another legal basis such as §157(b)(5), and assuming that venue in [Shah] would have been sustainable under §157(b)(5) …it appears that *Lexecon* should apply to §157(b)(5) transfers…"  Id.  In holding Lexecon's reasoning applied "equally to transfers pursuant to any venue statute," the court reasoned that "*Lexecon* recognizes that 'no exercise in rulemaking can read… out of the statute' the MDL panel's obligation to remand each action to its respective transferor court at or before the conclusion of pretrial proceedings."  Id. at 90-91 (citing Lexecon, 523 U.S. 26).  Both "*Lexecon* and §1407 require that the MDL panel remand to the transferor court any action 'at or before the conclusion of … pretrial proceedings,' and *any further transfers of venue for trial under any statute must follow such remand*."  Shah, 148 F.3d at 91 (emphasis added). Therefore, the Panel must transfer the Tennessee cases back to the Tennessee district court at the conclusion of pretrial proceedings, at the latest.  Thus, this Court cannot set the Tennessee cases for trial in Massachusetts under § 157(b)(5).

If, however, this Court declines to follow Lexecon and Shah, § 157(b)(5) is not applicable to the pending claims against the Tennessee defendants.  Not only has the PSC failed

---

[2] The PSC argued Shah only briefly treated the interplay of Lexecon and §157(b)(5) in *dicta*.  Dkt. No. 2055. However, the court's application of Lexecon to §157(b)(5) was a determination of the court, not *dicta*, as it implied an ending to the controversy of whether Lexecon applied to §157(b)(5). See Shah, 148 F.3d at 90-91.

2

to cite any authority supporting its argument that § 157(b)(5) should be treated any differently than how the United States Supreme Court treated self-transfer in Lexecon, but the actual language of § 157(b)(5), and the courts applying it, suggests transfers of personal injury and wrongful death claims are limited to claims against the debtor.[3]  See 28 U.S.C. § 157(b)(5).   In order to give effect to § 157(b)(5), § 157 must be read as a whole.   In re Schepps Food Stores, Inc., 169 B.R. 374, 377 (S.D. Tex. 1994).

Section 157 discusses the personal injury and wrongful death claims exclusion three times: § 157(b)(2)(B), § 157(b)(2)(O), and § 157(b)(5).   First, in § 157(b)(2)(B), Congress excluded personal injury and wrongful death claims under title 11 (i.e. against the estate) from the list of core proceedings a bankruptcy court can hear.  See In re Schepps, 169 B.R. at 377. Likewise, in § 157(b)(2)(O), Congress excluded personal injury and wrongful death claims from the catch-all provision for core proceedings which a bankruptcy court may hear.   See § 157(b)(2).   As § 157(b)(2)(O) is in the same section as § 157(b)(2)(B) and similarly excludes personal injury and wrongful death claims, it logically must be read consistent with the previous exclusion and apply only to such claims against the estate.  See Gustafson v. Alloyd Co., 513 U.S. 561, 568 (1995) (adopting the premise that a term should be construed to give it consistent meaning throughout a statutory section).

Finally, Congress mentions personal injury and wrongful death claims in § 157(b)(5).  If read consistent with § 157(b)(2)(B) and (b)(2)(O), as logic and case law mandate it should be, § 157(b)(5) should be read to only apply to personal injury and wrongful death claims against the bankruptcy estate.  See, e.g., Calumet Nat'l Bank v. Levine, 179 B.R. 117, 120 (N.D. Ind. 1995) (finding "section 157(b)(5) most obviously contemplates that the district court of the district

---

[3] In fact, the PSC has cited no case (nor have the Defendants found) where a court had held that § 157(b)(5) allows the transfer of personal injury and wrongful death claims where the only named defendant is a non-debtor.

3

were the bankruptcy case is pending … will decide where personal injury and wrongful death actions *against bankruptcy debtors* are tried") (emphasis added); <u>Stokes v. Se. Hotel Props., Ltd.</u>, 877 F.Supp. 986, 998 (W.D. N.C. 1994 (citing the Fourth Circuit holding that a district judge has "authority to fix venue of personal injury tort against the debtor").  Therefore, analyzing those provisions together leads to the conclusion that the venue provision of § 157(b)(5) should only be applied in personal injury and wrongful death claims against the bankruptcy estate itself. Here, the plaintiffs' personal injury and wrongful death claims are against Tennessee defendants who are not associated with the bankruptcy estate.  Thus, this Court cannot apply § 157(b)(5) to try the cases in Massachusetts.

**B.** **Even if this Court ignores the statutory mandate of § 1407, the Supreme Court's ruling in <u>Lexecon</u>, and the actual language and application of § 157(b)(5), it does not have subject matter jurisdiction under § 1334(b) to apply § 157(b)(5), or, at a minimum, it does not have exclusive jurisdiction.**

The PSC urges this Court to use 28 U.S.C. §1334 and 28 U.S.C. §157(b)(5) to find it has statutory authority to try the claims against the Tennessee defendants in Massachusetts.  These statutes, however, are not applicable as this Court no longer has subject-matter jurisdiction under §1334(b) to hear the claims, and without subject-matter jurisdiction it cannot apply §157(b)(5) to determine trial venue.  While the Defendants recognize why this Court originally found it had subject matter jurisdiction, the confirmation of NECC's bankruptcy plan and other subsequent events have divested this Court of §1334(b) "related to" jurisdiction.

Contrary to the PSC's assertion that once subject matter jurisdiction attaches it cannot be lost, a court may lose "related to" jurisdiction where there have been subsequent changes in the parties and circumstances.  See In re Alma Energy, LLC, No. 07-70370, 2012 WL 243746, *9 (E.D. Ky. 2012).  Here, the confirmation of the bankruptcy plan created several substantial

4

changes in the parties and circumstances surrounding this Court's original assertion of §1334(b) "related to" jurisdiction.

First, the Affiliated Defendants are in the process of being dismissed from the Tennessee cases.[4]  This means the only parties left will be Tennessee plaintiffs and Tennessee defendants. Second, the Defendants are not now asserting a claim for contribution or indemnity against NECC or any affiliated entity.[5]  In fact, the provisions of the Plan and Confirmation Order[6] bar the Defendants from bringing any such third-party claim for contribution against the settling defendants.[7]  Finally, as common fact discovery comes to an end, any amount the PCO could expend in responding to discovery requests would be minimal. Therefore, the criteria originally set forth by this Court for exercising §1334(b) "related to" jurisdiction is no longer present.

Even if this Court finds its previous assertion of § 1334(b) jurisdiction is still present, § 1334(b) does not provide this Court with exclusive jurisdiction to hear the pending claims. Section 1334(b) provides:

> Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts *shall have original but not exclusive jurisdiction* of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

Id.  (emphasis added).  In other words, the district court is vested with original, but not exclusive, jurisdiction of civil proceedings arising under or related to cases under title 11.  Id.  Therefore, while a district court has original and exclusive jurisdiction over the bankruptcy petition itself, it shares jurisdiction over matters arising in or related to title 11 cases with the state court where

---

[4] Dkt. No. 1992.
[5] Bankruptcy Dkt. No. 1260.
[6] Findings of Fact, Conclusions of Law and Order Confirming the Third Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc. [Dkt. No. 1890-1].
[7] The PSC has even recognized that the provisions of the Plan and Confirmation Order "clearly and unambiguously bar … any third-party claim for contribution."  [Dkt. No. 2078, p. 4]

the claim arose.  <u>Matter of Brady, Texas, Mun. Gas Corp.</u>, 936 F.2d 212, 218 (5th Cir. 1991).

Thus, if this Court finds § 1334(b) applies, both the Tennessee court and this Court would have

jurisdiction to resolve the pending claims against the Tennessee defendants.

**C.**     **Even if this Court finds it does have subject matter jurisdiction under 28 U.S.C.
           §1334(b), as a result of the confirmation of the bankruptcy plan, it should abstain
           from asserting such jurisdiction.**

If this Court determines it may exercise subject matter jurisdiction and apply § 157(b)(5),

it must first determine whether it should abstain from hearing the Tennessee claims.  <u>In re Twin</u>

<u>Laboratories, Inc.</u>, 300 B.R. 836, 840 (S.D.N.Y. 2003) (cited by J. Saylor in this case at Dkt. No.

176).  Section 1334(c)(1) provides:

> Except with respect to a case under chapter 15 of title 11, nothing in this section
> prevents a district court in the interest of justice, or in the interest of comity with
> State courts or respect for State law, from abstaining from hearing a particular
> proceeding arising under title 11 or arising in or related to a case under title 11.

<u>Id.</u>  Courts typically consider the following factors when determining whether to abstain under §

1334(c)(1):

> (1) the effect or lack thereof on the efficient administration of the estate if a Court
> recommends abstention; (2) the extent to which state law issues predominate over
> bankruptcy issues; (3) the difficulty or unsettled nature of the applicable state law;
> (4) the presence of a related proceeding commenced in state court or other
> nonbankruptcy court; (5) the jurisdictional basis, if any, other than 28 U.S.C. §
> 1334; (6) the degree of relatedness or remoteness of the proceeding to the main
> bankruptcy case; (7) the substance rather than form of an asserted "core"
> proceeding; (8) the feasibility of severing state law claims from core bankruptcy
> matters to allow judgments to be entered in state court with enforcement left to
> the bankruptcy court; (9) the burden [on] the court's docket; (10) the likelihood
> that the commencement of the proceeding in bankruptcy court involves forum
> shopping by one of the parties; (11) the existence of a right to a jury trial; and (12)
> the presence in the proceeding of nondebtor parties.

<u>In re New Engl. Compounding Pharm., Inc.</u>, 496 B.R. at 273.  After balancing these factors, this

Court previously found they weighed against permissive abstention, except where the cases did

not involve claims against NECC-affiliated entities.   <u>Id.</u>  This Court heavily focused on the

notion that consolidation would provide "the most efficient use of the limited resources of the judicial system, and the fairest and most efficient distribution of the assets of the estate." Id. This, however, is no longer the case.

Regarding factor one, in light of the settlement of the "National Defendants" and the "Affiliated Entities," as well as numerous other third parties, consolidation in Massachusetts no longer accomplishes the goals of efficiency and fairness as the only pending claims in the Tennessee cases are those by the Tennessee plaintiffs against the Tennessee defendants who are not asserting claims for contribution or indemnity. Therefore, this Court's determination that consolidation provided the most efficient use of the judicial system and the fairest and most efficient distribution of the bankruptcy estate is not applicable as the cases no longer involve claims against NECC-affiliated entities.

Quite frankly, the claims do not affect the administration of the bankruptcy estate at all. The Tennessee plaintiffs' claims against the Tennessee defendants do not require this Court to interpret the bankruptcy plan. Likewise, the Tennessee defendants' defenses place no such requirement upon this Court as they are not asserting a claim for contribution or indemnity against NECC or any affiliated entity. Instead, the Defendants have asserted the affirmative defense of comparative fault, under which a particular defendant is only liable for the percentage of a plaintiff's damages occasioned by him. McIntrye v. Balentine, 833 S.W.2d 252, 258 (1992). In other words, if a defendant is found at fault, he can only be responsible for the amount of damages he caused (i.e. he cannot try to indemnify or seek contribution from another defendant or non-party for those damages.) See Id. Therefore, there is no effect on the administration of the bankruptcy estate.

Considering factors two and six, not only do the state law issues vastly predominate over the bankruptcy issues, but the bankruptcy has been confirmed and any degree of relatedness to the bankruptcy is remote at best.   The only claims remaining in the Tennessee cases are Tennessee claims made by Tennessee plaintiffs against Tennessee defendants involving Tennessee law.

The third factor clearly points to abstention.   The pending state law claims involve difficult and unsettled state law, which is most appropriately postured for a Tennessee court to rule on as a Tennessee court is thoroughly familiar with application of Tennessee law, and may request certification of dispositive issues of law to the Tennessee Supreme Court.   Specifically, as this Court has observed[8], the Tennessee plaintiffs' claims against the Defendants under the Tennessee Products Liability Act involve an issue of first impression for Tennessee state law.

Factor seven is similar to factor two and factor six.   There is no substance to the "core" proceeding because the bankruptcy plan has been confirmed.   What is left is all form.

Regarding factor ten, the PSC's continuous effort to persuade this Court to try the Tennessee cases is nothing more than an attempt at forum shopping.[9]   The Tennessee plaintiffs chose to file their claims based on Tennessee law in Tennessee, and avail themselves of the protections afforded to them under Tennessee law.   As these proceedings have progressed, however, it has become abundantly clear that the PSC wants this Court to bar the Tennessee defendants from asserting the protections likewise afforded to them under Tennessee law. Therefore, application of the twelve-factor test strongly favors abstention.   Thus, this Court should abstain from exercising jurisdiction over the Tennessee cases, just as it previously did

---

[8] Dkt. No. 1360 at p. 20.
[9] See also Section D, paragraph  2 of this response.

over cases pending in state courts that did not involve any claims against NECC-affiliated entities or individuals. See Id. at 274.

**D.     If this Court finds it retains subject matter jurisdiction and § 157(b)(5) allows it to determine trial venue, it should nevertheless transfer the cases back to Tennessee.**

While the Defendants maintain § 1334(b) and § 157(b)(5) are not applicable here, even if the Court finds it may determine trial venue under § 157 (b)(5), those statutes provide this Court with the discretionary power to order the personal injury and wrongful death claims be tried where the claims arose.  Section 157 (b)(5) provides:

> The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or *in the district court in which the claim arose,* as determined by the district court in which the bankruptcy case is pending.

Id. (emphasis added).  In other words, if this Court finds it has jurisdiction pursuant to § 1334(b) and that it has authority under § 157(b)(5) to determine trial venue, this Court may order the Tennessee claims be tried in Tennessee.[10]

Section 157(b)(5) was meant to allow "the district court in which a bankruptcy is pending to qualify the choice of venue made by a plaintiff, and was not enacted to 'vest the power of choice in the plaintiff.'" Baumgart v. Fairchild Aircraft Corp., 981 F.2d 824, 834 (5th Cir. 1993). The PSC's attempt to persuade this Court to set trial in Massachusetts is nothing more than a ruse to circumvent the application of substantive Tennessee comparative fault principles to the claims.  It is obvious the PSC is seeking to have Massachusetts joint and several liability applied to the cases because it does not like the substantive comparative fault standard adopted in Tennessee.  The PSC is using this Court in an attempt to construct a Frankenstein mixture of Tennessee and Massachusetts law such that the plaintiffs enjoy the full protection and benefits of

---

[10] This Honorable Court even assumed, without deciding on the applicability of 28 U.S.C. § 157(b)(5), that the cases would be remanded to their originally filed districts at the conclusion of the MDL, rather than being transferred to the District of Massachusetts under 28 U.S.C. § 157(b)(5).  Order [Docket No. 2075].

both Massachusetts and Tennessee law, while the defendants are left in the grave to be responsible for the bad acts of the Massachusetts defendants.  If the Tennessee plaintiffs had truly intended for a Massachusetts court to apply Massachusetts law to determine the substantive issues of their cases, they would have originally filed their claims in Massachusetts, rather than wait for the cases to be transferred to this Court pursuant to 28 U.S.C. §1407 for the purpose of consolidated and coordinated pretrial proceedings only.

**CONCLUSION**

For the reasons set forth herein, the Defendants respectfully request this Court reserve trial for the transferor courts.

Respectfully submitted,

 /s/ Kent E. Krause
**PARKS T. CHASTAIN**[11]
**KENT E. KRAUSE**[11]

Attorneys for Defendant, Specialty Surgery Center, PLLC, and Dr. Kenneth R. Lister, M.D.

**BREWER, KRAUSE, BROOKS & CHASTAIN, PLLC**
P. O. Box 23890
Nashville, TN   37202-3890
(615) 256-8787 (PTC)
(615) 256-8985 (fax)
pchastain@bkblaw.com
kkrause@bkblaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be served electronically to the registered participants identified on the Notice of Electronic Filing and copies will be served via electronic mail or regular US mail to those participants identified as unregistered this the 16th day of  July, 2015.

 /s/ Kent E. Krause
**KENT E. KRAUSE**

---

[11] Admitted *pro hac vice*

10
