UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>All Actions | MDL No. 2419<br>Master Docket No.: 1:13-md-2419-RWZ<br><br>Honorable Rya W. Zobel |

**PLAINTIFFS' STEERING COMMITTEE'S
REPLY MEMORANDUM REGARDING CHOICE OF LAW
FOR CASES ORIGINALLY FILED IN TENNESSEE OR NEW JERSEY**

**TABLE OF CONTENTS**

I.    INTRODUCTION .................................................................................................. 1

II.   ARGUMENT ......................................................................................................... 2

    A.   Massachusetts, Tennessee, and New Jersey Law On The Issues Of Joint and Several Liability and Comparative Fault Conflict ................................................................. 3

    B.   Massachusetts Has The Most Significant Relationship Regarding The Issues Of Joint And Several Liability and Comparative Fault. .......................................... 6

    i.   The Place Where The Injury Occurred. ............................................. 8

    ii.   The Place Where The Conduct Causing The Injury Occurred. ........................................................................................ 9

    iii.   The Domicile, Residence, Nationality, Place Of Incorporation And Place Of Business Of The Parties. ................... 10

    iv.   The Place Where The Relationship If Any Between The Parties Is Centered. ..................................................................... 11

    v.   The Policies Of Tennessee, New Jersey And Massachusetts With Respect To The Comparative Fault and Joint And Several Liability Regimes. ............................. 12

III.  CONCLUSION .................................................................................................. 13

## I.     INTRODUCTION

All parties agree that Restatement (Second) of Conflict of Laws' "most significant relationship" test governs this issue. The PSC's response, therefore, addresses only whether the joint and several liability law of Massachusetts or the Tennessee and New Jersey comparative fault regimes should govern the allocation of fault in cases involving plaintiffs treated at clinics in Tennessee and New Jersey.

The Tennessee and New Jersey Defendants myopically focus on the here and now. But, as any 1L will tell you, the outset of this litigation is the only relevant time period for analyzing the choice of law issues. These cases originally named a number of the parties that these defendants now seek to ascribe fault to (the "Comparative Fault Parties"), and – way back when – the Tennessee and New Jersey plaintiffs asserted claims against the Affiliated Defendants, National Defendants and the Clinic Defendants for harms caused by a product compounded by a Massachusetts pharmacy under Massachusetts law.[1]

The Tennessee and New Jersey Defendants want the Court to focus on the fact that the Affiliated Defendants and National Defendants have largely settled[2] and Massachusetts' interest in this litigation is (allegedly) substantially reduced.[3]  But the law compels the Court to examine the choice of law issues as of the time plaintiffs' filed their complaints

---

[1] *See generally*, Master Complaint, Dkt. No. 545; *see also Reed v. Ameridose*, Case No. 1:13-cv-12565-RWZ (an example of a Tennessee case that originally named a number of Affiliated Defendants and National Defendants); *Effendian v. New England Compounding Pharmacy, Inc. et al*, Case No. 1:13-cv-11233-RWZ (an example of a New Jersey case that originally named a number of Affiliated Defendants and National Defendants).

[2] Specialty Surgery Center goes so far as to claim that the Bankruptcy Court's confirmation order also closes the bankruptcy, but it fails to cite a single case for this proposition. Dkt. No. 2064 at P. 4. This is simply not the law as the tort trust's existence continues to keep NECC's bankruptcy proceeding open. *In re A. H. Robins Co.*, 86 F.3d 364, 372 (4th Cir. Va. 1996) ("[The debtor] has gone out of existence, but the [Debtor] Trust has taken its place, and all claims against [the Debtor] have been transferred to the Trust, and the Trust is obligated to discharge these obligations. The bankruptcy case remains open until all claims have been paid and the Trust dissolved under its terms.")

[3] *See e.g.*, Dkt. No. 2072 (Premier) at P. 2 (recognizing that "Massachusetts only has an interest in regulating Massachusetts-based corporations, which have largely removed themselves from this litigation through settlement or bankruptcy. With their voluntary removal, so too were Massachusetts' interests removed.")

and not simply ignore the past three years of litigation.[4]

Viewed from this perspective, it becomes clear that Massachusetts has the most significant relationship to the issue of joint and several liability and comparative fault and its laws should govern those particular issues for all Tennessee and New Jersey plaintiffs in this action.

## II.  ARGUMENT

The PSC concedes, as a threshold issue, that to undertake an analysis under the Restatement (Second) of Conflicts of Laws there must be a determination that a conflict of laws actually exists.[5]  The PSC did not anticipate, given the fact that Massachusetts, Tennessee, and New Jersey each have conflicting joint and several liability and comparative fault regimes that any party would argue that a conflict does not exist on these issues.[6]  Yet, the Tennessee Clinic Defendants and the Saint Thomas Entities argue now that the Comparative Fault Parties have settled and are, or soon will be, "non-parties" to this action, Massachusetts law is no longer relevant to the issues of joint and several liability and comparative fault.[7]  The Tennessee Clinic Defendants and Saint Thomas Entities, however, fail to cite to a single case for the proposition that the Court should simply ignore the previous three years of litigation in this matter and that the choice of law analysis must ebb and flow depending on the parties present at any given moment.[8]  Nor would such a policy consideration be practical or appropriate.  It would ultimately result in the law of any given issue fluctuating based on the parties that settle or the parties that are dismissed (either on a

---

[4] *See Estate of Matthews v. Novartis Pharms. Corp.*, 2014 U.S. Dist. LEXIS 165790, *17-18 (D.D.C. Nov. 26, 2014) (noting that, in conducting a choice of law analysis, that plaintiff's residence is to be determined "at the time they filed their complaint.").

[5] *Insituform Technologies, Inc. v. Per Aarsleff A/S*, 534 F. Supp. 2d 808, 812 (W.D. Tenn. 2008)("[B]efore proceeding with the choice-of-law analysis, The Court must first determine if the various interested jurisdictions are in conflict with Tennessee law."); *P.V. ex rel. T.V.*, 197 N.J. at 142-43(Holding that under New Jersey's choice of law analysis, the first step is to determine whether an actual conflict exists.)

[6] *See* Discussion at Dkt. No. 2004 at 11-15.

[7] Dkt. No. 2071 (Saint Thomas Entities) at 9-10; Dkt. No. 2073 (Tennessee Clinic Defendants) at 6-8.

[8] *See id.*

2

Rule 12 or Rule 56 motion), leading to the utterly unworkable result that one state law could govern an issue during one portion of the case and another state law govern during a different time. Not surprisingly, these defendants asserting this odd position cannot cite a single case holding it to be appropriate, which likely is the reason that the other defendants do not attempt to make such an argument.[9]

As the PSC correctly noted in its opening brief, a conflict does exist and the Court must examine the factors outlined in the Restatement (Second) of Conflict of Laws § 145 to determine, with regard to the particular issues of joint and several liability and comparative fault, which law should be applied. Massachusetts not only has a significant interest in seeing its law apply to those issues in this case, it has the most significant relationship to those issues and its laws should be applied.

### A. Massachusetts, Tennessee, and New Jersey Law on the Issues of Joint and Several Liability and Comparative Fault Conflict

As outlined in the PSC's opening brief, the three states involved in the issues of joint and several liability and comparative fault have differing laws that apply to these issues. Massachusetts follows the traditional rules of joint and several liability.[10] Tennessee's Supreme Court abolished joint and several liability and held that a defendant is only liable for its proportional share of liability.[11] New Jersey allows a joint tortfeasor to be held jointly and severally liable if it is at least 60% at fault for a plaintiff's injury. These regimes are in stark contrast with one another.[12]

Nonetheless, the Tennessee Clinic Defendants and the Saint Thomas Entities claim no "conflict" exists because all of the Massachusetts based parties in this litigation have

---

[9] *Compare* Dkt. No. 2073 (Tennessee Clinic Defendants), P. 2 ("Massachusetts law presents a 'false conflict' with Tennessee law in these cases.") *with* Dkt. No. 2072 (Premier Defendants) P. 6 (stating, without opposing the claim that "the Court has recognized that a conflict of laws exists.").
[10] Dkt. No. 2004 at P. 12-13 (discussing Massachusetts law on this topic).
[11] *Id*. at P.14-15.
[12] *Id*. at P. 14.

3

settled and will have no liability under any verdict rendered in this case.[13,14] This may be true enough now, but it utterly misses the point. The overwhelming majority of the Comparative Fault Parties were, and some still are, parties to this action and are certainly parties implicated by the issue of apportionment of fault. The fact that these parties have largely settled is precisely the result that is encouraged by Massachusetts' joint and several liability regime: which is meant, in part, to encourage parties to settle their disputes.[15] In short, Massachusetts law works, and that is not a basis to exclude the application of Massachusetts law on this issue, but rather to apply it.

The Tennessee Clinic Defendants and the Saint Thomas Entities want to ignore the three year history of this litigation and focus strictly on the claims remaining, but they fail to cite to a single case holding that a choice of law analysis must ebb and flow in litigation. Such a position would be chaotic, as perfectly illustrated by this very case. For example, if the Court had addressed the choice of law issue during this time last year, there is no argument the Tennessee Clinic Defendants and the Saint Thomas Entities could have made asserting that the choice of which state's joint and several liability regime applied would not affect the liability of the Affiliated Defendants and National Defendants. Had the Court made a determination then that Massachusetts law applied, under the Tennessee Clinic Defendants' and the Saint Thomas Entities' proposed approach, they would get another bite at the apple to seek a determination that Tennessee law applied to this issue after claims with these defendants were resolved. In effect, their proposal would invite an endless round of briefing on choice of law issues as a case develops.

---

[13] Dtk. No. 2071 at 8-9; Dkt. No. 2073 at 6-8.
[14] The Premier Defendants agree that a conflict of laws on the issues of joint and several liability and comparative fault exists. *See* Dkt. No. 2072 at 6.
[15] *In re Colorado Springs Air Crash*, 867 F. Supp. 630, 634 (N.D. Ill. 1994) (noting that one of the policy reasons behind joint and several liability regimes is to encourage settlement).

Further, the Tennessee Clinic Defendants and the Saint Thomas Entities simply miss the point because Massachusetts still has an interest in the issue of the allocation of fault, even when Massachusetts corporations are non-parties to the relevant case. The Tennessee Clinic Defendants concede, as they must, that "Massachusetts has an interest in ensuring that its laws deter tortious conduct of its own corporations."[16] One federal court aptly noted that "[t]he cases recognizing the interest of the defendant's domiciliary state in deterrence as of primary importance on apportionment of fault issues are numerous."[17]

This is precisely why Massachusetts has an ongoing interest in this issue even when the Massachusetts-based joint tortfeasors are no longer parties to an action. To hold, for example, that Tennessee's law of comparative fault would apply signals to Massachusetts corporations that they may not be jointly and severally liable for their conduct in Massachusetts if it happens to injure plaintiffs in another state.[18] Massachusetts law of incentivizing responsible corporate behavior then would be frustrated by the application of out-of-state comparative fault regimes; especially where, as here, parties seek to apply an alternative joint and several liability regime to conduct that occurred in Massachusetts.[19]

In this light, the Tennessee Clinic Defendants' and the Saint Thomas Entities' focus on how much compensation would be awarded to plaintiffs simply ignores the flip side of

---

[16] Dkt. No. 2073 at 10.

[17] *Dale v. ALA Acquisitions I, Inc.*, 434 F. Supp. 2d 423, 435-436 (S.D. Miss. 2006) citing *Matter of Colorado Springs Air Crash*, 867 F. Supp. 630, 635 (N.D. Ill. 1994) ("We find that the principal place of business is the most significant contact for the question of whether applying joint and several liability will deter negligent behavior. States have a significant interest in controlling the behavior of companies domiciled within their borders."); *In re Air Crash Disaster at Washington, D.C.*,559 F. Supp. 333, 352 (D.D.C. 1983) ("The primary purpose of a comparative fault apportionment rule is not to punish or deter, but to ensure fair treatment of defendants. As such, with respect to this issue, a state where the conduct or injury took place is not necessarily the state of the most significant relationship; rather, it is likely to be a state in which a protected defendant is located.").

[18] *Stathis v. National Car Rental Sys.,* 109 F. Supp. 2d 55, 58 (D. Mass. 2000) (Judge Young) (In ruling on whether to apply Maine joint and several liability law or Massachusetts joint and several liability law, the Court ruled that Maine had a greater interest in the issue – even when the accident occurred in Massachusetts – in part, because" Maine has an interest in having its laws applied on this issue so that those regulated by its insurance standards will be required to fulfill its ends. To allow [Maine-based defendant] to escape liability based on where the accident occurred would frustrate the Maine legislature's attempts to regulate insurance and liability of vehicles rented within its borders."

[19] *Id.*; *Dale*, 434 F. Supp. 2d at 435.

this regime.[20] Joint and several liability is not simply about compensating victims, but rather includes incentives to encourage responsible behavior.[21]

The Tennessee Clinic Defendants' and the Saint Thomas Entities' claims that Massachusetts does not have an interest in the issues of joint and several liability and the allocation of fault to non-parties is simply misplaced. A conflict does in fact exist and Massachusetts continues to have an interest in applying its laws to corporations located in its jurisdiction and committing torts in its jurisdiction.[22]

### B. Massachusetts Has the Most Significant Relationship Regarding the Issues of Joint and Several Liability and Comparative Fault.

Once a conflict is established, the Court must determine which state has the "most significant relationship" regarding an issue.[23] Under the Restatement's "most significant relationship" approach, there is a presumption in favor of the law of the state where the injury occurred, but while this is the default rule, "the Restatement approach allows a court to apply the law of a state that legitimately has a stronger interest in the controversy."[24] In determining which state's law to apply, a court should consider the following contacts: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury

---

[20] *See e.g.*, Dkt. No. 2073 at 8-9 ("Massachusetts' policy interest are not undermined by application of Tennessee's rules to allocate fault in a case between the Tennessee Plaintiffs and the Tennessee Clinic Defendants because no Massachusetts parties are involved.") As discussed above, the claim that "no Massachusetts parties are involved" is simply false. Further, the Tennessee Clinic Defendants' reliance on *Grauer v. United Trucking*, 1995 Mass. Super. LEXIS 458 (Mass. Super. May 31, 1995) for the proposition that this Court must ignore Massachusetts roll in this case is easily and definitely distinguished. The court in that case noted, in distinguishing that case from a multi-party, multi-district litigation like the one at bar, held that "[t]he facts of *Colorado Springs* distinguish it from this case. There the federal trial court was concerned with encouraging settlement in a mass tort case. In the present case the parties and the facts are much simpler than those in *Colorado Springs*. There are no multiple plaintiffs. The defendants are not airlines that pass through dozens of states in order to conduct business. There has been no settlement by anyone." *Grauer*, 1995 Mass. Super. LEXIS 458, *10-11. Each of those factors for which *Grauer* relied are present here: there are multiple plaintiffs, the defendants caused injury and did business in multiple states, there have been numerous settlements, and the Court should be concerned about encouraging settlement in a mass tort case. In short, *Grauer*, contrary to the claims of the Tennessee Clinic Defendants, would strongly suggest that Massachusetts joint and several liability regime should apply to the case at bar.

[21] *Dale v. ALA Acquisitions I, Inc.*, 434 F. Supp. 2d at 435-436; citing *Matter of Colorado Springs Air Crash*, 867 F. Supp. at 635; *In re Air Crash Disaster at Washington, D.C.*,559 F. Supp. at 352.

[22] *Id*.

[23] *MacDonald v. General Motors Corp.*, 110 F.3d 337, 342 (6th Cir. 1997).

[24] *Hataway*, 830 S.W.2d at 59.

6

occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, [and] (d) the place where the relationship, if any, between the parties is centered."[25]

The central question before the court is which state has the most significant relationship to the issues of joint and several liability and comparative fault. The Tennessee and New Jersey Defendants seek to hold numerous Massachusetts-based parties responsible for plaintiff's injuries, yet they claim that the comparative fault regimes of Tennessee and New Jersey should apply even though overwhelming majority of Comparative Fault Parties are located outside of Tennessee and New Jersey and are located in Massachusetts.[26] The unifying characteristic for the overwhelming majority of the Comparative Fault Parties is that they all took action or failed to take action in the state of Massachusetts. Given the Massachusetts connection to the issues involved, any claim that it does not have an interest in this litigation is simply without merit.[27]

---

[25] *Messer Griesheim Indus., Inc. v. Cryotech of Kingsport, Inc.*, 131 S.W.3d 457, 474 (Tenn. Ct. App. 2003)(quoting REST 2d CONFL § 145

[26] The Saint Thomas Entities have asserted comparative fault against the following (the individuals and corporations in bold are Massachusetts entities): **NECC** (Dkt. No. 1464, p. 56); **Ameridose** (Dkt. No. 1464, p. 61) **Alaunus Pharmaceutical, LLC** (Dkt. 1464, p. 66); **B. Cadden** (Dkt. 1464, p. 69); **L. Cadden** (Dkt. 1464, p. 74); D. Conigliaro (Dkt. 1464, p. 82); **C. Conigliaro** (Dkt. 1464, p. 85); **Glenn Chin** (Dkt. 1464, p. 89); GDC Properties Management (Dkt. 1464, p. 93); **Medical Sales Management** (Dkt. 1464, p. 94); **Medical Sales Management, SW** (Dkt. 1464, p. 96); **John Notarianni** (Dkt. 1464, p. 99); Mario Giamei (Dkt. 1464, p. 100) US FDA (Dkt. 1464, p. 101); **MA Bd. Of Pharm.** (Dkt. 1464, p. 108); TN Bd. Of Pharm. (Dkt. 1464, p. 114); TN. Dept. of Health (Dkt. 1464, p. 116); Liberty Industries (Dkt. 1464, p. 117); **UniFirst** (Dkt. 1464, p. 117); ARL Biopharma (Dkt. 1464, p. 118). The Tennessee Clinic Defendants have asserted comparative fault against the following: **NECC** (Dkt. 1455, p. 69); **B. Cadden** (Dkt. 1455, p. 69); **L. Cadden** (Dkt. 1455, p. 69); **D. Conigliaro** (Dkt. 1455, p. 69); **C. Conigliaro** (Dkt. 1455, p. 69); **Glenn Chin** (Dkt. 1455, p. 69); **Joseph Connolly** (Dkt. 1455, p. 69); **GDC Properties Management** (Dkt. 1455, p. 78); US FDA (Dkt. 1455, p. 79); **MA Bd. Of Pharm** (Dkt. 1455, p. 90); TN Bd. Of Pharm (Dkt. 1455, p. 100); TN Dept. of Health (Dkt. 1455, p. 101); **Medical Sales Management** (Dkt. 1455, p. 102); **Medical Sales Management SW** (Dkt. 1455, p. 102); **John Notarianni** (Dkt. 1455, p. 102); **Mario Giamei** (Dkt. 1455, p. 102); ARL BioPharma (Dkt. 1455, p. 104); **UniFirst** (Dkt. 1455, p. 106); Liberty Industries (Dkt. 1455, p. 107); **Victory Mechanical Services and Victory Heating & Air Conditioning** (Dkt. 1455, p. 107); **Scientific Air Analysis** (Dkt. 1455, p. 108); **Pharmacy Support** (Dkt. 1455, p. 109); Professional Compounding Centers of America (Dkt. 1455, p. 110); Medisca (Dkt. 1455, p. 111).

[27] *Henry v. Richardson-Merrell, Inc.*, 508 F.2d 28, 34 (3d Cir. N.J. 1975) ("[A] state is interested in applying its law to a particular case when it can be said that the law was designed to encompass the facts of just such a case. Laws of a state, in turn, are not designed to dispose of all conceivable cases, but only of those having factual contact with the state such that it may be affected by the outcome of the suit. A state is so affected when one of the persons it presumes to protect is a party to the dispute, when misconduct it finds culpable transpired within the state, when its

### i.      The Place Where the Injury Occurred.

Tennessee and New Jersey plaintiffs suffered injuries in their respective states, and the PSC admits this factor favors application of Tennessee and New Jersey law.  As the PSC argued in its opening brief, given the nature of the plaintiffs' injuries and the fact that NECC shipped its tainted pharmaceuticals throughout the country, the PSC maintains that the injuries were fortuitous in their location and this factor should be given less weight with regard to the issues of joint and several liability and comparative fault.[28]  The Tennessee and New Jersey Defendants argue that plaintiffs' injuries were not fortuitous by focusing strictly on the relationship between the Tennessee and New Jersey Defendants and the plaintiffs.  When considering whether an injury's location was fortuitous in the choice of law context, the Court must consider the particular issue subject to choice of law analysis.[29] When looking at the parties related to the issues of joint and several liability and comparative fault between joint tortfeasors, it is unmistakable that the location of plaintiffs' injuries were fortuitous because where the injury occurred has nothing to do with which of the now many (alleged) parties were at fault for causing that injury, and if at fault, the relative percentage of fault ascribed to that party.[30]  As one federal court succinctly stated, "if the wrong is in defective design or manufacture, [the wrong] occurred at the time and in the place of design and manufacture; the place where it came to fruition is purely

---

courts are invoked to resolve a dispute which it wishes to avoid, or when persons with a financial stake in the litigation are residents of the state.").

[28] *See Stathis*, 109 F. Supp. 2d at 56 ("Where the issue involves standards of conduct, it is more than likely that it is the law of the place of the tort which will be controlling…).

[29] Restatement (Second) of Conflict of Laws § 145 cmt. e (1971) ("Situations do arise, however, where the place of injury will not play an important role in the selection of the state of the applicable law. This will be so, for example, when the place of injury can be said to be fortuitous or when for other reasons it bears little relation to the occurrence and the parties with ***respect to the particular issue*** (see § 146, Comments d-e.) (emphasis added); *see also id*.

[30] *See id*; *see also Wayland v. Peters,* No. 03A01-9705-CV-00172, 1997 WL 776338, at *2 (Tenn. Ct. App. Dec. 17, 1997)(Tennessee auto accident involving drunken driver and vehicle for which title was not properly transferred in Kentucky; court applied Kentucky law to impose liability against seller, who continued to own the car under Kentucky law: "While Tennessee is the place of injury, the place of injury is less important when it is 'fortuitous.'").

fortuitous."[31]  This is precisely the issue now before the Court.  The Tennessee and New Jersey Defendants wish to ascribe fault to parties involved in the design and manufacture of NECC's tainted pharmaceuticals, the fact that plaintiffs were eventually injured in Tennessee and New Jersey was simply the place where this alleged wrong "came to fruition."[32]

In any event, the Tennessee Defendants at least concede that the location of plaintiffs' injuries should not be the determinative factor in deciding which state law to apply.  For example, the Saint Thomas Entities admittedly concede that the Kentucky residents, treated at the Saint Thomas Center in Nashville but suffered their injury in Kentucky where they reside should still have Tennessee law, not Kentucky law, apply to their claims.[33]  These defendants cannot have it both ways, either the location of the injury is determinative of the question or it is not.  By conceding the fact that Kentucky residents are subject to Tennessee law, when those Kentucky residents were injured in Kentucky, the Tennessee Defendants have functionally conceded that the location of plaintiffs' injury is not the determinative issue in the choice of law analysis.[34]

### ii.     The Place Where the Conduct Causing the Injury Occurred.

Similar to their fundamental misunderstanding of the choice of law analysis, the Tennessee and New Jersey Defendants again focus on the distinction between parties and non-parties rather than the place where the conduct causing the injury occurred in their attempts to ignore the fact that they are seeking to, almost without exception, rest the blame

---

[31] *In re Paris Air Crash*, 399 F. Supp. 732, 740 (C.D. Cal. 1975).
[32] *Id*.
[33] Dkt. No. 2071 at n. 8.
[34] The Saint Thomas Entities also noted that two cases naming the Saint Thomas Entities were directly filed in the MDL, but also claim that this fact does not alter the choice-of-law analysis.  Dkt. No. 2071 at 3, n.6.  The PSC concedes the point that if a case is directly filed in the MDL, this should not alter the Court's choice of law analysis.  The Saint Thomas Entities also claim that the PSC asserted that plaintiffs asserted claims under Mass Gen. Law § 93(A) against the Saint Thomas Entities.  Dkt. No. 2071 at 5, n.7.  The Saint Thomas Entities simply misunderstood the PSC's claims, and the PSC is not aware of any plaintiffs asserting claims against the Saint Thomas Entities for violation of Mass. Gen. Law § 93A.

9

of this controversy on conduct that occurred in Massachusetts. When considering where the conduct occurred, the Court must look at where the conduct occurred with respect to the issues under consideration.[35] Simply put, virtually all of the conduct for which the Tennessee and New Jersey Defendants want to attribute fault occurred in Massachusetts.

Granted, this factor weighs partly in favor of applying both Massachusetts and Tennessee law because plaintiffs also allege that certain conduct in Tennessee and New Jersey also caused plaintiffs' injury.[36]

But again, with the focus on the "issues" at stake – i.e. what joint and several liability regime should prevail - Massachusetts has a more significant relationship with the place where the alleged joint tortfeasors conduct is centered, and accordingly, this factor heavily weighs in favor of applying Massachusetts law.

### iii. The Domicile, Residence, Nationality, Place of Incorporation and Place of Business of the Parties.

Once again, the Tennessee and New Jersey Defendants want to exclusively look to the relationship between the plaintiffs and these remaining defendants, and ignore the existence of the overwhelming majority of the Comparative Fault Parties, desperately clinging to the distinction between parties and non-parties.[37] The PSC maintains that the Court is compelled to examine all parties to whom the Tennessee and New Jersey Defendants seek to attribute fault, and not simply the immediate parties to the case as the appropriate choice of law inquiry. As the PSC noted in its opening brief, where this factor indicates the application of many state laws, courts often discount the importance of this

---

[35] *See Stathis*, 109 F. Supp. 2d at 56 ("Where the issue involves standards of conduct, it is more than likely that it is the law of the place of the tort which will be controlling…).
[36] *See* Master Complaint, Dkt. No. 592, ¶ 234.
[37] Dkt. No. 2064 (Specialty Surgery Center) at 13; Dkt. No. 2071 (Saint Thomas Entities) at 11; Dkt. No. 2072 (Premier Defendants) at P. 12; Dkt. No. 2073 (Tennessee Clinic Defendants) at P. 14; Dkt. No. 2074 (Premier Physicians) at P. 7.

factor.[38] To the extent this factor favors any one state, it is clearly Massachusetts because "the state of residence of designers and manufacturers has a most significant interest in applying its measure of damages to a product distributed throughout the world for the sake of uniformity of decisions involving such designers and manufacturers."[39]

        **iv.    The Place Where the Relationship, if Any, Between the Parties is Centered.**

Again, the Tennessee and New Jersey Defendants claim that the relevant relationships, with regard to the issues of joint and several liability and comparative fault, is solely between the plaintiffs and Tennessee and New Jersey Defendants, and do not address the relationships with other parties involved in those issues, i.e., the Comparative Fault Parties. The Tennessee and New Jersey Defendants simply ignore the nature of the joint and several liability and comparative fault issues, which is one of the rare issues in conflict of laws that impacts the rights not only of parties to a lawsuit but non-parties as well. The Tennessee and New Jersey Defendants cannot reasonably dispute that if Massachusetts law on joint and several liability were applied and if the Tennessee and New Jersey Defendants ultimately end up paying more than their proportional share of the liability, then these parties would have a cause of action against the Comparative Fault Parties for contribution – even if the Comparative Fault Parties are non-parties to the underlying lawsuit.[40] The relationships giving rise to the Tennessee Clinic Defendants and New Jersey Clinic Defendants' comparative fault defenses are largely centered in Massachusetts. In other

---

[38] Dkt. No. 2004 at P. 19.
[39] *In re Paris Air Crash*, 399 F. Supp. at 745.
[40] *Hopper Feeds, Inc. v. Cincinnati Milacron, Inc.*, 411 Mass. 273, 581 N.E.2d 1023, 1025-26 (Mass. 1991) (Massachusetts law ""[t]his section creates a separate cause of action for contribution, enabling a party to seek contribution from other alleged joint tortfeasors who ***were not joined as defendants in the original action***.") (emphasis added). Thus it is clear that which state law applies to the joint and several liability issue impacts not only parties to the current action but any non-party Comparative Fault Party (such as the Massachusetts Board of Pharmacy) because such a party could be faced (if Massachusetts law applies) with a claim for contribution down the line. Thus, the parties to the issue of what joint and several liability regime applies cannot simply be the parties to the lawsuit but rather the parties impacted by this issue.

11

words the "parties" to the "issue" at stake are not simply the parties to the current action but the non-parties who rights would be impacted by a decision holding that the Massachusetts joint and several liability regime applies.

Since the issues of joint and several liability and comparative fault relate to NECC's and other potentially at fault parties' conduct in Massachusetts, and the Tennessee and New Jersey Defendants seek to defend their own liability by ascribing fault to parties involved in NECC's production process,[41] the place where the relevant relationships are centered is Massachusetts, not Tennessee or New Jersey.  Accordingly, this factor favors application of Massachusetts law on the issues of joint and several liability and comparative fault.

Moreover, the parties who now assert that Massachusetts entities and people are comparatively at fault are the same parties who originally introduced and sold Massachusetts products into their state.[42]  If the Tennessee and New Jersey Defendants had chosen or continued to do business with suppliers of FDA approved products in Tennessee and New Jersey, respectively, rather than choosing less expensive compounded steroids from Massachusetts, then the Clinic Defendants would not have subjected themselves to Massachusetts law as far as their comparative fault defenses are concerned.

> v. **The Policies of Tennessee, New Jersey and Massachusetts With Respect to the Comparative Fault and Joint and Several Liability Regimes.**

Notwithstanding the Saint Thomas Entities and the Tennessee Clinic Defendants unfounded attempts to claim that Massachusetts' public policies have no impact on this litigation, the present choice of law inquiry undoubtedly requires a preliminary choice between having a defendant pay no more than its theoretical share of the fault (Tennessee and/or New Jersey Law) or making sure that all parties who participated in making, selling

---

[41] *See* Dkt. No. 1464 at 56-120; Dkt. No. 1455 at 69-112; Dkt. No. 1541 at 14.

or distributing a harmful product are held jointly and severally liable for all harm caused by that product (Massachusetts law).

As the PSC made clear in its opening brief, applying Massachusetts law on the issues of joint and several liability and comparative fault is the only way to ensure uniformity in treatment of fault for the parties involved in this litigation (even those parties that have now settled, at least in part, because they likely were concerned they could be held jointly and severally liable under Massachusetts law for all harm caused by the joint tortfeasors involved in this litigation).[43]

The Tennessee and New Jersey Defendants now want to ignore Massachusetts' significant relationship with this case. Instead, they want to focus on the fact that the Massachusetts parties have largely settled and incorrectly allege that this somehow diminishes Massachusetts' interest in this litigation. The fact that the parties from Massachusetts, who likely believed they were jointly and severally liable, have resolved their disputes with the plaintiffs does not affect Massachusetts' interest in this litigation. Indeed, the fact Massachusetts' policy encouraged this result is simply another reason to continue to apply Massachusetts law to this issue, and it certainly is not a basis to argue that some other law should now apply.

### III.   CONCLUSION

For the reasons set forth above and in the PSC's opening brief, the PSC respectfully requests that the Court find that Massachusetts law governs the issues of joint and several

---

[43] Take the example of Massachusetts Board of Pharmacy. The Board's alleged tortious conduct occurred exclusively in Massachusetts when it allegedly failed to properly inspect and regulate NECC. The present question before the court is whether it would be fair to require parties like the Massachusetts Board of Pharmacy to be jointly and severally liable or to let parties like the Tennessee Clinic Defendants take shelter in comparative fault defenses that were not available to every defendant in this case. As the case law makes clear, in this situation, a strong preference exists for uniformity within the allocation of fault rules. *Iskowitz v. Cessna Aircraft Co.*, 2010 U.S. Dist. LEXIS 88791, *32-33 (D. Colo. Aug. 5, 2010) ("'If some claims and defendants are treated under a joint and several liability rule and some claims and defendants are treated under a comparative fault rule, then some defendants may be exposed to monetary liability for damages caused by the negligence of other defendants and some defendants may be exposed to monetary liability only for their own share of any negligence.")

liability and comparative fault in the actions brought by Tennessee and New Jersey plaintiffs.

Date:   July 22, 2015

Respectfully Submitted,
/s/ Benjamin A. Gastel
J. Gerard Stranch, IV
Benjamin A. Gastel
BRANSTETTER, STRANCH & JENNINGS, PLLC
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Telephone: (615) 254-8801
Facsimile: (615) 255-5419
gstranch@bsjfirm.com
beng@bsjfirm.com

*Plaintiffs' Steering Committee and Tennessee State Chair*

Thomas M. Sobol
Kristen Johnson Parker
HAGENS BERMAN SOBOL SHAPIRO, LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Telephone:  617/482-3700
Facsimile:  617/482-3003
tom@hbsslaw.com
kristenjp@hbsslaw.com

*Plaintiffs' Lead Counsel*

Elizabeth J. Cabraser
Mark P. Chalos
Annika Martin
LIEFF CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone:  415/956-1000
Facsimile:  415/956-1008
ecabraser@lchb.com
mchalos@lchb.com

*Federal/State Liaison*

Marc E. Lipton
LIPTON LAW
18930 W. 10 Mile Road
Southfield, MI 48075
Telephone:  248/557-1688
Facsimile:  248/557-6344
marc@liptonlaw.com

Patrick T. Fennell
CRANDALL & KATT
366 Elm Avenue, S.W.
Roanoke, VA 24016
Telephone:  540/342-2000
Facsimile:  540/400-0616
pfennell@crandalllaw.com

Mark Zamora
ZAMORA FIRM
6 Concourse Parkway, 22nd Floor
Atlanta, GA 30328
Telephone:  404/451-7781
Facsimile:  404/506-9223
mark@markzamora.com

Kimberly A. Dougherty
JANET, JENNER & SUGGS, LLC
31 St. James Avenue, Suite 365
Boston, MA 02116
Telephone:  617/933-1265
kdougherty@myadvocates.com

*Plaintiffs' Steering Committee*

## **CERTIFICATE OF SERVICE**

I, Benjamin A. Gastel, hereby certify that I caused a copy of the above *Reply Memorandum Regarding Choice of Law for Cases Originally Filed in Tennessee or New Jersey* to be filed electronically via the Court's electronic filing system. Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system, and notice of these filings will be sent to these parties by operation of the Court's electronic filing system.

Dated: June 22, 2015

/s/ Benjamin A. Gastel
Benjamin A. Gastel