**MONTGOMERY McCRACKEN WALKER & RHOADS LLP**
(A Limited Liability Partnership Formed in Pennsylvania)
LibertyView, Suite 600
457 Haddonfield Road
Cherry Hill, New Jersey 08002
(856) 488-7700
*Counsel for Defendants Inspira Health Network, Inc.,*
*Inspira Medical Centers, Inc., Joseph Alessandrini and*
*Paul Abrams*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION**<br><br>————————————————————<br><br>THIS DOCUMENT RELATES TO:<br>*All New Jersey Cases* | **Document Electronically Filed**<br><br>Docket No. 1:13-md-2419-RWZ<br>MDL No. 02419<br><br>**Leave to File Granted on July 21, 2015**<br>(Dkt. No. 2095) |

**INSPIRA HEALTH NETWORK, INC., INSPIRA MEDICAL CENTERS,**
**INC., JOSEPH ALESSANDRINI AND PAUL ABRAMS' REPLY BRIEF**
**IN FURTHER SUPPORT OF THEIR MOTION FOR A PROTECTIVE**
**ORDER PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(c)**

**I.**     **INTRODUCTION**

Defendants Inspira Health Network, Inc. and Inspira Medical Centers, Inc. (formerly

known as South Jersey Health System, Inc. and South Jersey Hospital, Inc.) and Joseph

Alessandrini and Paul Abrams (collectively, "Inspira"), hereby submit this reply brief in further

support of their Motion for a Protective Order Pursuant to Fed. R. Civ. P. 26(c) (Dkt. No. 2000)

and in response to Premier Orthopaedic and Sports Medicine Associates of Southern New Jersey,

LLC, *et. al's* Memorandum in Opposition to Inspira Medical Center's Motion for a Protective

Order (Dkt. No. 2087).

This brief is submitted to address the arguments raised in the Premier Defendants'[1] (or "Premier") opposition that 1) misrepresent the relief Inspira seeks and the evidence of record, 2) fail to address this Court's July 9, 2015 Scheduling Order (Dkt. No. 2075) entered after Inspira filed its motion and before Premier filed its opposition, and 3) improperly assert entitlement to information that is protected from disclosure by Fed. R. Evid. 408, the attorney-client privilege, and/or work product doctrine.  This brief is not submitted to address every argument raised in Defendants' opposition.  As to the remainder of Premier's opposition, Inspira relies on the arguments set forth in detail in its moving papers.

II.    **ARGUMENT**

    A.    **Premier Is Not Entitled to Discovery in the 35 Cases In which Inspira is Not a Named Defendant.**

Premier accuses Inspira of taking the position that Inspira is entitled to immunity from all discovery in all matters because of their contribution to the bankruptcy estate.  (Dkt. No. 2087, Premier Orthopaedic and Sports Medicine Associates of Southern New Jersey, LLC, et. al's Memorandum in Opposition to Inspira Medical Center's Motion for Protective Order ("Premier Opp." at 2).  This is not Inspira's position at all.

Premier conveniently blurs the important distinction between the 35 cases in which Inspira is not a named party and the 21 cases in which Inspira was a named party and is now a settled defendant.  To clarify, the Premier Defendants are not entitled to discovery from Inspira in the 35 cases in which Inspira is not a named party.  Inspira is not making this argument concerning the cases in which it is a settled defendant.  In those cases, discovery is not

---

[1]    The Premier Defendants, represented by the same law firm, include Premier Orthopaedic and Sports Medicine Associates of Southern New Jersey, LLC, trading as Premier Orthopaedic Associates, Premier Orthopaedic Associates Surgical Center, LLC, and Kimberley Yvette Smith, M.D., a/k/a Kimberley Yvette Smith-Martin, M.D., Thomas Dwyer, M.D., Richard C. DiVerniero, M.D., and Richard Strauss, M.D.

appropriate or necessary now and can wait until the bellwether process is known and a case involving Inspira has been selected for trial, which is the same position Inspira discussed with Premier during the meet and confer that preceded Inspira's motion.

Premier's opposition supports Inspira's position that Premier is not entitled to discovery in the 35 cases only involving Premier.  In connection with opening its own facility in which to inject its patients, Premier admits that its "vetting process included, to a large degree, the Premier Doctors' years of experience using NECC MPA at Inspira while performing injections at Inspira."  (Premier Opp. at 4).  Premier's doctors were obviously very experienced and familiar with NECC MPA from having used it for years for Premier's patients that they injected at Inspira.  Premier's doctors wanted to continue to use the same product, NECC MPA, at Premier's own pain clinic when it opened.  And, Premier's doctors' requested that Premier order NECC MPA for use at Premier's facility.  This was Premier's vetting process for NECC.  Inspira had nothing to do with it.

Yet Premier repeatedly argues that its vetting process included a "recommendation" from Inspira's pharmacy and an Inspira doctor, which entitles Premier to discovery from Inspira in all cases, including the 35 cases that involve only Premier.  (Premier Opp. at 3, 4, 9).  Premier, however, entirely ignores and fails to address what Premier's own witness meant by "recommendation."  When Michelle Cassidy of Premier was asked about her specific conversations with Inspira, she admitted that (i) all Dr. Mitros did was inform her that the hospital was ordering MPA from NECC and she should call the pharmacy to get the contact information; and (ii) she only asked Inspira's pharmacy where Inspira ordered its preservative-free compounding medications – nothing more.  (Inspira's Memo. of Law at 11).  That is the

entire substance of the "recommendation" on which Premier solely relies for discovery in the 35 cases in which Inspira is not a defendant.

Premier further argues that every case against it "implicates the collaboration between Premier and Inspira."  (Premier Opp. at 5).  The only "collaboration" that Premier then points to is Premier and Inspira allegedly ordered product from NECC in a similar if not identical fashion.  (*Id.* at 6).  Premier again confuses separate issues in a futile effort to show that discovery from Inspira is relevant to the 35 cases.  Premier's and Inspira's ordering processes and procedures were entirely separate and independent, and there is no allegation anywhere that Premier and Inspira jointly ordered MPA from NECC.  There was no "collaboration," and Premier's argument that separate entities separately ordering from NECC somehow makes discovery "common to all cases" is meaningless.

Premier asserts that the knowledge of Inspira's "lead pharmacist" is highly relevant to the claims against all parties in all cases, including those not naming Inspira, and that this person has been identified as a witness by Inspira and Premier and will likely be called at trial by either the PSC or Premier.  (Premier Opp. at 6).  First, Premier fails to cite to any disclosure from Inspira to support Premier's assertion that Inspira identified Joseph Alessandrini as a witness because Premier knows there has been no such disclosure from Inspira.  Inspira mediated a resolution of these cases without engaging in formal discovery, of which Premier is well aware, and at no time identified any witness in any case, including the 35 cases in which Inspira is not a party.  Second, "likely to be called at trial," is not the standard for discovery.  Premier must show that this discovery is relevant to a claim or defense.  Fed. R. Civ. P. 26(b).  For the reasons set forth above and in Inspira's initial moving papers, Premier has not and cannot meet this burden for the 35 cases.

Finally, under Rule 30(b)(6) topic number 5, Premier again conflates the two categories of cases against Inspira. It argues that "regardless of whether Inspira was named in the suit the practice of ordering medication from NECC is relevant to the diligence put forth by Premier in vetting and ultimately deciding to use NECC for its compounding needs – an issue that is relevant to 100% of Premier's cases and likely admissible." (*Id.* at 9). Premier's own witness already testified that she obtained only contact information from Inspira as part of Premier's "diligence put forth by Premier in vetting and ultimately deciding to use NECC for its compounding needs." Since that is the entirety of what Premier said it did, Premier's implication that it relied on Inspira and is therefore entitled to discovery is disingenuous and false. As Inspira has set forth in detail in its initial moving papers and above, Inspira and Premier separately ordered product from NECC, Premier had an independent vetting process for its clinic that Inspira had nothing to do with, and Inspira provided Premier nothing more than NECC's contact information.

**B.**     **The Court's July 9, 2015 Scheduling Order.**

Inspira filed its motion on June 22, 2015. On July 9, 2015, this Court entered a Scheduling Order in this matter (Dkt. No. 2075). Premier filed its opposition to Inspira's motion on July 16, 2015, after entry of the Court's Scheduling Order. Premier does the address the Order in its papers.

The Scheduling Order provides, in part:

- **July 30, 2015:** Close of Common Fact Discovery from Settling Defendants (with the exception of any discovery allowed as a result of currently pending discovery motions)
- **November 15, 2015:** Close of Premier Common Fact Discovery
- **February 2016 (without bellwether trials):** Remand date for Premier's cases with case-specific discovery conducted in home district

-5-

- **March 28, 2016 (with bellwether trials):**  Potential start of Tennessee bellwether trials

(*Id.* at 3-5).

The Court's June 18, 2015 Order relating to the dismissal of certain defendants refers to Inspira, among others, as a Settling Defendant.  (Dkt. No. 1992).  It is unclear whether Inspira is also a "Settling Defendant" for purposes of the Court's July 9 Scheduling Order.  If so, Inspira would be a Settling Defendant that falls under the Court's exception for discovery allowed past July 30, 2015 as a result of the currently pending discovery motion.  However, Inspira in good faith did not believe that it was part of common fact discovery when it filed this motion and, in good faith, continues to believe that it is not part of common discovery.

Inspira continues to believe that Premier is not entitled to discovery from Inspira *at this time* in the 21 cases in which Inspira is a settled defendant because this discovery is case-specific.  Inspira's belief is supported by the Court's definition of case-specific discovery in MDL Order No. 9 (Dkt. No. 1425) and MDL Order No. 10 (Dkt. No. 1426).  (Inspira's Memo. of Law at 6, 13-4).  Significantly, Premier's opposition does not contradict Inspira's interpretation of case-specific discovery or dispute that Inspira was a named, now settled, defendant in only 3% of the cases pending in this MDL.

In addition, the Court's July 9, 2015 order entered after Inspira moved for a protective order supports Inspira's position that discovery is not necessary now and can wait until the bellwether process is known and a case involving Inspira has been selected for trial.  For these reasons, the Court should deny Premier's request for case-specific discovery from Inspira at this time.  Premier will be entitled to case-specific discovery from Inspira, if ever, after February 2016 (without bellwether cases) or sometime after March 2016 (start of Tennessee bellwether trials).

-6-

### C.    Premier Is Not Entitled To Settlement-Related Discovery from Inspira.

Topic No. 8 of Premier's Rule 30(b)(6) deposition notice seeks production of documents and information produced to the PSC, whether formally or informally.[2]  Premier argues that Fed. R. Evid. ("FRE") 408 is not a bar to this discovery.  (Premier Opp. at 10-11).  Premier is incorrect.

Premier is well aware that Inspira did not participate in formal discovery due to Inspira's mediation and the January 6, 2014 order staying discovery.  As such, the only information Premier seeks here is any "informal" exchange with the PSC, which could only be information exchanged during Inspira's confidential mediation, assuming such information even exists.  FRE 408 explicitly provides, in part, that settlement discussions and settlements are not admissible to prove or disprove liability or amount of a disputed claim.  Premier admits that it wants to use discovery relating to Inspira's settlement for exactly these prohibited purposes, namely to prove Inspira's alleged liability and reduce Premier's own liability.  Premier admits that it seeks this discovery to prove that it adequately vetted NECC and appropriately relied on Inspira, that the cause of the contamination was not Premier, and that Inspira is responsible for ordering tainted medication where the injection took place at Inspira.  (*Id.* at 11).  Premier further hopes to gain information relating to Inspira's failure to take proper measures in ordering MPA from NECC and whether Inspira had information about NECC's faulty operations.  (*Id.*).  Premier admits that this "exculpatory evidence" would benefit's Premier's defense.  (*Id.*).  *Premier, in its own papers, admits that it wants to use this evidence to prove or disprove liability.*

---

[2] While Inspira disagrees with Premier's arguments opposing Inspira's request to limit the other deposition categories, Inspira relies on its moving papers and will address any questions the Court may have at the August 5, 2015 hearing.

FRE 408 bars the admission of settlement evidence to prove or disprove liability. Because the evidence Premier seeks could never be admissible at trial for these reasons, it cannot be reasonably calculated to lead to the discovery of admissible evidence (as it is inadmissible) and this Court should not permit its discovery.  Fed. R. Civ. P. 26(b)(1).

Even if the information might be admissible for another purpose, to the extent such information exists, Premier is not entitled to discovery of settlement related information from Inspira because this information is privileged and confidential.  *Goodyear Tire & Rubber Corp. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 981 (6th Cir. 2003) (recognizing a limited settlement privilege protecting the contents of settlement negotiations and noting "confidential settlement communications are a tradition in this country"); *Allen Cnty., Ohio v. Reilly Indus., Inc.*, 197 F.R.D. 352, 354 (N.D. Ohio 2000) (denying discovery of settlement related documents which were "punctuated with numerous instances of puffing and posturing" and clearly were "motivated by a desire for peace rather than from a concession of the merits of the claim" as "the discovery of these sort of "facts" would be "highly misleading") (internal quotes and citation omitted); *Hasbrouck v. BankAmerica Hous. Servs.*, 187 F.R.D. 453, 461 (N.D.N.Y.) (granting motion for a protective order; denying discovery of settlement agreement; and noting "protecting the confidentiality of the settlement agreement promotes the important public policy of encouraging settlement"), *aff'd sub nom. Hasbrouck v. BankAmerica Hous. Servs., Inc.*, 190 F.R.D. 42 (N.D.N.Y. 1999).

Such information, at least in part, also would be protected from disclosure by the work product doctrine as it reflects the mental impressions, conclusions, legal theories, and thoughts of counsel.  *In re Grand Jury Subpoena*, 220 F.R.D. 130, 143-44 (D. Mass. 2004) (noting that "[t]he range of materials potentially eligible for work product protection is quite broad. . . . a

-8-

lawyer's 'work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways,' and [] such 'work product,' when prepared 'with an eye toward litigation,' should not be available to opposing counsel 'on mere demand.'") (citation omitted).

Premier cites *Lesal Interiors, Inc. v. Resolution Trust Corp.*, 153 F.R.D. 552, 554 (D.N.J. 1994), in support of its position and argues that it has met *Lesal*'s heightened standard for discoverability and made a "particularized showing" that the FRE 408 settlement evidence sought is relevant and reasonably calculated to lead to the discovery of admissible evidence. (Premier Opp. at 11).  Although at least one court in this district has allowed discovery of a settlement agreement under Rule 26(b)(1), *Atchison Casting Corp. v. Marsh, Inc.*, 216 F.R.D. 225, 227 (D. Mass. 2003), the present case is distinguishable, and Inspira's settlement agreement is a public record.

Premier seeks this information for use at trial for an impermissible purpose under FRE 408, *i.e.* to prove or disprove liability; therefore, the information Premier seeks is fundamentally not reasonably calculated to lead to the discovery of admissible evidence.

Even if this Court agrees with Premier and applies *Lesal's* "particularized showing" standard for discovery of settlement related information, Premier still fails.  All Premier has shown is that it is entitled to the *facts* underlying the settlement discussions, which Inspira does not dispute, but only for the 21 cases in which Inspira is a named defendant.  Because these facts are discoverable by other means, there is no need for discovery of the settlement negotiations themselves.  Under these circumstances, it would be improper to allow Premier access to Inspira's settlement documents and information.

## III.   CONCLUSION

For the foregoing reasons, Inspira respectfully requests that the Court grant its Motion for a Protective Order (1) barring discovery from Inspira in the 35 cases involving only Premier and in which Inspira is not a party; (2) delaying any deposition in the other 21 cases until the bellwether process is known and a case involving Inspira has been selected for trial; and (3) prohibiting inquiry into certain matters and limiting the scope of the depositions.

Respectfully submitted,

MONTGOMERY, McCRACKEN, WALKER
 & RHOADS LLP

Dated:  July 24, 2015                          s/*Stephen A. Grossman*
Stephen A. Grossman
Louis R. Moffa, Jr.
Montgomery, McCracken, Walker & Rhoads, LLP
LibertyView, Suite 600
457 Haddonfield Road
Cherry Hill, NJ 08002
sgrossman@mmwr.com
lmoffa@mmwr.com
(856) 488-7700
(856) 488-7720 (facsimile)

*Counsel for Defendants*
*Inspira Health Network, Inc.,*
*Inspira Medical Centers, Inc.,*
*Joseph Alessandrini and*
*Paul Abrams*

-10-

## CERTIFICATE OF SERVICE

I, **STEPHEN A. GROSSMAN**, hereby certify that I caused a true and correct copy of *Inspira Health Network, Inc., Inspira Medical Centers, Inc., Joseph Alessandrini and Paul Abrams' Reply Brief in Further Support of Their Motion for a Protective Order Pursuant To Federal Rule of Civil Procedure 26(c)* to be filed electronically via the Court's electronic filing system.  Notice of this filing will be sent to all parties who are registered with the Court's electronic filing system.  Parties may access these filings through the Court's system.

Dated:  July 24, 2015                        *s/ Stephen A. Grossman*
                                        Stephen A. Grossman

-11-