# EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN RE: NEW ENGLAND COMPOUNDING PHARMACY CASES LITIGATION ) MDL NO. 13-02419-RWZ

BEFORE: THE HONORABLE RYA W. ZOBEL AND
THE HONORABLE JENNIFER C. BOAL

**STATUS CONFERENCE**

John Joseph Moakley United States Courthouse
Courtroom No. 17
One Courthouse Way
Boston, MA 02210

August 7, 2014
2:30 p.m.

Catherine A. Handel, RPR-CM, CRR
Official Court Reporter
John Joseph Moakley United States Courthouse
One Courthouse Way, Room 5205
Boston, MA 02210
E-mail: hhcatherine2@yahoo.com

APPEARANCES:

For The Plaintiffs:

Hagens, Berman, Sobol, Shapiro LLP, by THOMAS M. SOBOL, ESQ. (appearing telephonically) and KRISTEN JOHNSON, ESQ., 55 Cambridge Parkway, Suite 301, Cambridge, Massachusetts 02142;

Janet, Jenner & Suggs, LLC, KIMBERLY A. DOUGHERTY, ESQ., 75 Arlington Street, Suite 500, Boston, Massachusetts 02116;

Crandall & Katt, by PATRICK THOMAS FENNELL, ESQ., 366 Elm Avenue, SW, Roanoke, Virginia 24016;

Branstetter, Stranch & Jennings, PLLC, by J. GERARD STRANCH, ESQ., 227 Second Avenue North, Nashville, Tennessee 37201-1631;

Cohen, Placitella & Roth, P.C., by MICHAEL COREN, ESQ., 2 Commerce Square, 2001 Market Street, Suite 2900, Philadelphia, Pennsylvania 19103;

Ellis & Rapacki LLP, by FREDRIC L. ELLIS, ESQ., 85 Merrimac Street, Suite 500, Boston, Massachusetts 02114;

Law Offices of Mark Zamora and Associates, MARK ZAMORA, ESQ., 5 Concourse Parkway, Suite 2350, Atlanta, Georgia 30328;

Lieff Cabraser Heimann & Bernstein, LLP, by ANNIKA K. MARTIN, ESQ., 250 Hudson Street, 8th Floor, New York, New York 10013-1413;

Lieff Cabraser Heimann & Bernstein, LLP, by MARK P. CHALOS, ESQ., 150 Fourth Avenue North, Suite 1650, Nashville, Tennessee 37219;

Saltz Mongeluzzi Barrett & Bendesky, P.C., by MARY T. GIDARO, ESQ., One Liberty Place, 52nd Floor, 1650 Market Street, Philadelphia, Pennsylvania 19103;

FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS:

Brown Rudnick, by DAVID J. MOLTON, ESQ., Seven Times Square, New York, New York 10036;

Harris Beach PLLC, by FREDERICK H. FERN, ESQ., 100 Wall Street, New York, New York 10005;

FOR PAUL D. MOORE, IN HIS CAPACITY AS CHAPTER 11 TRUSTEE OF NECP, INC.:

    Duane Morris LLP by MICHAEL R. GOTTFRIED, ESQ., 100 High Street, Suite 2400, Boston, Massachusetts 02110-1724;

FOR THE DEFENDANTS:

    Tucker & Ellis LLP, by MATTHEW P. MORIARTY, ESQ., 1150 Huntington Building, 925 Euclid Avenue, Cleveland, Ohio 44115-1414;

    Michaels, Ward & Rabinovitz LLP, by DAN RABINOVITZ, ESQ., One Beacon Street, Boston, Massachusetts 02108;

    Todd & Weld LLP, by CORRINA L. HALE, ESQ., 28 State Street, 31st Floor, Boston, Massachusetts 02109;

    Ulmer & Berne LLP, by JOSHUA A. KLARFELD, ESQ., 1660 West 2nd Street, Suite 1100, Cleveland, Ohio 44113-1448;

    Fulbright & Jaworski, LLP, by MARCY H. GREER, ESQ., 98 San Jacinto Blvd, Suite 1100, Austin, Texas 78701;

    Fulbright & Jaworski, LLP, by ADAM T. SCHRAMEK, ESQ., 801 Pennsylvania Avenue, Washington, DC 20004;

    Goodwin Procter LLP, by JAMES REHNQUIST, ESQ., and ROBERTO M. BRACERAS, ESQ., Exchange Place, 53 State Street, Boston, Massachusetts 02109;

    McGuire Woods LLP, by STEPHEN D. BUSCH, ESQ., One James Center, 901 East Cary Street, Richmond, Virginia 23219-4030;

    Smith Duggan Buell & Rufo LLP, by MATTHEW WALKO, ESQ., Lincoln North, 55 Old Bedford Road, Lincoln, Massachusetts 01773;

    Sloane & Walsh LLP, by ROBERT H. GAYNOR, ESQ., Three Center Plaza, Boston, Massachusetts 02108;

    Hermes, Netburn, O'Connor & Spearing, P.C., by PETER G. HERMES, ESQ., 265 Franklin Street, 7th Floor, Boston, Massachusetts 02110-3113;

VIA PHONE FOR THE PLAINTIFFS:

Thomas M. Sobol
Daniel L. Clayton
James Stephen King
Nicole L. Kreklau
Timothy A. Housholder
James E. Girards
Karen Schaeffer
Harry Roth
Dustin Clint Daniel
Robert W. Briley
Kristine Osterday
Ned Mulligan
Mark Dancer
Daniel Myers
Deborah Gresco-Blackburn
Michael R. Hugo
Rebecca Blair
Brian Schuette
Doug Jones
Steven D. Resnick
Marc E. Lipton
Ed Jazlowiecki
Laura Pittner
John Lyons
Mitchell A. Toups
Jonathan R. Krohnfeldt
Bryan L. Bleichner
Bob Tyler
Lauren Ellerman
Alyson Oliver
Douglas Small
Stephen W. Mullins
Rob Randall
Elliot L. Olsen
Sharon Houston
George Nolan
Stephanie Arndt
Anthony V. Agudelo
Norman H. Rosen
Bernard Smalley
Kathleen Kirkpatrick
Neal A. Markowitz
Dan Gustafson
Bridget Stratton
Erin M. Amos
Greg Lyons
Forest Horne
David Paxton

VIA PHONE FOR THE DEFENDANTS:

Scott Sexton
Bill Leader
Rob Jenner
James F. Neale
Adam C. Ponte
Kathleen A. McCann
Brooke Hastings

that way.

That order was entered by Judge Saylor and then pursuant to that order, back on June 5th, the trustee filed the notice that that order required to allow him to essentially vacate the premises and dispose of the remaining equipment in the premises, and the reason for that is many fold.

Some of the equipment may have value and could provide a value to the estate. For example, there's a crimper there that has never been taken out of shrink wrap that may have substantial value. There's also expense in maintaining the property. It needs to be heated. It needs to be insured. There's a security system, things of that nature that run monthly substantial expenses for the estate.

So, at this point where we're more than two years after the fact, our view was that there literally is no evidentiary value to anything that was left in the premises. We have, as we've indicated in our papers, preserved what we believe are the relevant ESI and documents. Mr. Fern's office has done that. We think it's time to, essentially, let the premises go. As a result, we've since filed the appropriate notice.

Judge Saylor's order had two interesting components to it: One, if someone wanted to object, they had to identify specifically what it is they wanted to preserve; and, two,

there was a requirement that their solution for that not require the trustee to continue to fund the preservation.

In accordance with the order, three parties filed objections or preservation requests. We would submit to the Court, none of them complied with Judge Saylor's order because they neither identified specifically what they wanted to preserve, nor did they indicate how they were going to pay for it.

We started talking to those parties in an effort to resolve it by agreement. They all indicated that, Well, we really would like to see the premises and maybe after we see them -- some said, if we just get to see them, we'll accent to the order.

Proving that no good deed goes unpunished, we agreed to let them all tour the premises, to video the premises. Other people stepped forward and said, Well, we didn't file a preservation request, but we'll file a motion to file one late. So, you should let us see the premises.

So, ultimately six different parties got to see the premises for three hours apiece. Not surprisingly, after they did, no one agreed to withdraw their preservation requests.

We filed a response to the preservation requests just the other day in front of the Court. Our request is the same. We believe we've preserved the relevant evidence, the ESI and the documents. We don't believe any of the equipment in the

those, collected those, and those are in our database.

THE COURT: 30 months' worth?

MR. FERN: 30 days' worth, Judge.

THE COURT: You said from October --

MR. FERN: From October 2012 to September 2012. So, a month going back. So, to do it right, from September through October 2012, we have 30 days of videotape that were still viable at the time we went in and did the preservation and collection.

There is -- going in and looking at the equipment, Judge, there is nothing in the same condition as it was in October of 2012. There's been no air conditioning. There's been no vent. There's been no negative air pressure. No one has been working in there. So, it's fair to say that there's nothing in the same condition, which is a similar argument that Magistrate Boal heard back in Christmastime of 2012, when we -- when the PSC wanted to do their inspection and the Magistrate, in her infinite wisdom, gave them a four-day inspection with videos, experts, drilling, and the PSC took whatever they wanted to do at the time.

It's fair to say that the evidence they collected back then is a much fairer representation of what the clean room looked like at the time of the alleged negligence than it does 20 months later, with no one being in there.

It's very -- the rhetoric I'm hearing from the people

THE COURT: That's anther one to be ignored.

MR. BUSCH: Not to be ignored, necessarily, but perhaps to be put off for another day.

THE COURT: Is there anything else that we need to talk about today that is not on the agenda?

(No response.)

THE COURT: As always, I thank you for your help and we will meet again on September 17th, those of you who have motions, and on the 18th, those of you who do not.

MS. JOHNSON: Thank you, your Honor.

MR. STRANCH: Thank you, your Honor.

(Adjourned, 3:37 p.m.)

C E R T I F I C A T E

I, Catherine A. Handel, Official Court Reporter of the United States District Court, do hereby certify that the foregoing transcript, from Page 1 to Page 58, constitutes to the best of my skill and ability a true and accurate transcription of my stenotype notes taken in the matter of No. 13-md-2419-RWZ, In Re: New England Compounding Pharmacy, Inc., Products Liability Litigation.

August 10, 2014 — /s/Catherine A. Handel

Date — Catherine A. Handel, RPR-CM, CRR