UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


MDL NO. 13-02419-RWZ


IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC.
PRODUCTS LIABILITY LITIGATION


MEMORANDUM OF DECISION

July 28, 2015


ZOBEL, D.J.

This case is a member of the multidistrict litigation ("MDL") arising out of adulterated steroid injections sold by Massachusetts-based New England Compounding Pharmacy, Inc.  See MDL No. 13-2419.  Here, the daughter of an Ohio woman who died from fungal meningitis after receiving the allegedly tainted drugs is suing both the Ohio-based healthcare professionals who administered them and several Massachusetts pharmacy-related defendants.  One of the Ohio defendants, the decedent's physician, moves to dismiss because, in his view, plaintiff's Ohio wrongful death claim is deficient in several respects.  See Docket # 12 in Case No. 1:15-cv-11367.  He also contests venue in the district where this case was originally filed and where it will eventually be transferred when the MDL is complete.  For the reasons that follow, the motion is DENIED in its entirety.

I.    **Background**

The allegations giving rise to this MDL have been described at length

elsewhere, see, e.g., In re New England Compounding Pharmacy, Inc. Products Liab. Litig., 496 B.R. 256, 262 (D. Mass. 2013), so the court provides only the facts most relevant to the present motion.

This dispute stems from an outbreak of fungal meningitis caused by contaminated methylprednisolone acetate ("MPA") manufactured and sold by the New England Compounding Pharmacy, Inc., d/b/a New England Compounding Center ("NECC").  NECC operated a compounding pharmacy in Framingham, Massachusetts, that combined and mixed ingredients to create specific formulations of pharmaceutical products.  In the fall of 2012, health officials traced a number of cases of fungal meningitis to injections of MPA that had been manufactured by NECC.  NECC initiated a recall of several contaminated batches of MPA before eventually surrendering its pharmacy license and ceasing production of all pharmaceutical products. NECC filed for Chapter 11 bankruptcy in December 2012, and the bankruptcy court confirmed the Chapter 11 plan in May 2015.

Plaintiffs alleging death or injury caused by contaminated MPA filed lawsuits against NECC, affiliated entities and individuals, and health care providers in multiple state and federal jurisdictions around the country beginning in November 2012.  In February 2013, the Judicial Panel on Multidistrict Litigation ("JPML") issued an order under 28 U.S.C. § 1407 transferring a number of cases pending in several federal courts to this court for coordinated and consolidated pretrial proceedings.  Several other transfer orders followed.

The action to which the pending motion relates is Gilliam v. Chowdhury, No.

2

15-cv-11367 (D. Mass.).  Plaintiff Sarah Gilliam alleges that her mother, Alice Thompson, received injections of contaminated NECC MPA by defendant Tim Chowdhury, a physician and employee of non-party Marion Pain Clinic, Inc.,[1] and that she died as a result.  Plaintiff's claims against Chowdhury include wrongful death, survival, and loss of consortium.[2]  She alleges that Chowdhury and the other Marion Pain Clinic defendants owed them a duty of care based on their physician-patient relationship, and that they breached that duty by, among other things, ordering MPA from NECC without inquiring into the safety of NECC's products.  Plaintiff initially filed her complaint in the United States District Court for the Northern District of Ohio.  See Gilliam v. Chowdhury, No. 3:15-cv-00430-JZ (N.D. Ohio).  The JPML transferred the case here for pretrial matters on March 20, 2015, see Docket # 1743, and this court assigned the case its current District of Massachusetts number.

Chowdhury now moves to dismiss the three claims against him for failure to state a claim upon which relief can be granted and for improper venue.  See Docket # 12.[3]

---

[1] The complaint names several other defendants.  The first group, styled the Marion Pain Clinic Defendants, includes Chowdhury, Nikesh Batra, Adil O. Katabay, Saud Siddiqui, Meena Chadha, and Lori Sheets.  These defendants allegedly received and treated patients at the Marion Pain Clinic.  Docket # 1 ¶¶ 6-13.  The second group includes Barry J. Cadden; Gregory Conigliaro; Lisa Conigliaro Cadden; Douglas Conigliaro; Carla Conigliaro; Glenn A. Chin; Ameridose, LLC; GDC Properties Management, LLC; Medical Sales Management, Inc.; Medical Sales Management SW, Inc.; and ARL Bio Pharma, Inc. D/B/A Analytical Research Laboratories.  Id. ¶¶ 14-25.  This group includes NECC key players and affiliates that have been named as defendants in many of the cases in this MDL.

[2] Plaintiff also asserts what have become standard claims in this MDL against the NECC-related defendants, but those claims are not relevant to this motion.

[3] Chowdhury's motion is plagued by several procedural deficiencies, all of which the court excuses this time but may not excuse in the future.  Notably, the motion should have been filed in the MDL docket.  See MDL Order No. 1 (MDL No. 13-2419, Docket # 50) ¶ 4 ("Filings related to fewer than 'All Actions' shall be made in the master docket and each applicable individual action."); see also Transcript of May 24, 2015 Status Conference (MDL No. 13-2419, Docket # 1931) at 50:20-51:9 (establishing procedure in which motions relating to individual actions are docketed as motions on the

Because the survival and loss of consortium claims are derivative claims, the motion essentially turns upon whether plaintiff's claim for wrongful death is appropriate.  If it is, all claims survive; if not, none do.

## II.    Motion to Dismiss for Failure to State a Claim

### A.    Legal Standard

To survive a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6), a complaint must contain sufficient factual allegations to state a claim upon which relief can be granted.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  For purposes of a motion to dismiss, the court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor.  See Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 52-53 (1st Cir. 2013).  Ordinarily, the plaintiff's factual allegations are assumed to be true for purposes of a motion to dismiss.  See Penalbert-Rosa v. Fortuno-Burset, 631 F.3d 592, 595 (1st Cir. 2011).

### B.    Wrongful Death Claim

Under Ohio law, "[t]o maintain an action for damages for wrongful death upon the theory of negligence, a plaintiff must show (1) the existence of a duty owing to plaintiff's decedent, i. e., the duty to exercise ordinary care, (2) a breach of that duty,

---

MDL docket but only as notices on the individual case dockets).  Less significant but nonetheless important, the motion should have been docketed separately from the memorandum supporting it.  See D. Mass. ECF R. G.4 ("Any memorandum of law or other attachment filed in support of a main document shall be filed as a separate document, using the proper event."); see also MDL Order No. 1 ¶ 5 ("All counsel shall familiarize themselves with this District's CM/ECF policies and procedures . . . .").  The complex nature of this MDL exacerbates otherwise minor docketing errors, so the court appreciates counsels' attention to its rules in submitting their filings.

and (3) proximate causation between the breach of duty and the death." <u>Bennison v.</u> <u>Stillpass Transit Co.</u>, 214 N.E.2d 213, 214 (Ohio 1966).[4]  Chowdhury contends that plaintiff's complaint fails on each of these three elements.  First, he contends that Ohio law does not impose a duty on physicians to regulate the pharmacies where they purchase medications or to visit or evaluate a licensed pharmacy's compounding facility prior to purchasing medications.  Second, he argues that plaintiff has not alleged sufficient facts to show that Chowdhury proximately caused Thompson's injury, since it was NECC that manufactured the tainted drugs.  And finally, he insists that Ohio law requires a complaint asserting a "medical claim," like wrongful death, to include an affidavit from an expert witness that addresses the breach and causation prongs.  Because plaintiff did not do that, Chowdhury asserts that her complaint is insufficient as a matter of law.

Chowdhury's first two arguments have no merit.  This court has previously concluded that allegations of duty and proximate causation like those in plaintiff's complaint are sufficient to make out a claim for negligence under Ohio law.  <u>See</u> Docket # 1643 at 5-7.  Because plaintiff's wrongful death action is premised upon negligence, the court's earlier reasoning applies to the claims here.

Chowdhury's third challenge raises a novel issue for this MDL.  Ohio Rule of

---

[4] Although not raised by the parties, the court notes that only the syllabi of Ohio Supreme Court decisions before May 1, 2002, contain binding law, unless a decision was styled as a per curiam opinion. <u>See, e.g.</u>, <u>Perkins v. Benguet Consol. Min. Co.</u>, 342 U.S. 437, 441-42 & n.3 (1952) (explaining Ohio syllabus rule); Ohio S. Ct. R. Rep. Op. 1(B)(1) (2002) (discontinuing Ohio syllabus rule).  This rule applied only to the Ohio Supreme Court and not to Ohio's lower appellate courts.  <u>Parkview Hosp. v.</u> <u>Hosp. Serv. Ass'n of Toledo</u>, 222 N.E.2d 314, 315 (Ohio Ct. App. 1966).  In resolving this motion, the court has been mindful of Ohio's peculiar arrangement and, where applicable, has followed it.

Civil Procedure 10(D)(2) ("Ohio Rule 10(D)(2)") establishes "a heightened pleading requirement on parties bringing medical claims." Fletcher v. Univ. Hosps. of Cleveland, 897 N.E.2d 147, 150 (Ohio 2008).  It requires that "a complaint that contains a medical claim . . . as defined in section 2305.113 of the Revised Code[] shall include one or more affidavits of merit . . . by an expert witness . . . ." Ohio R. Civ. P. 10(D)(2)(a). That affidavit must contain, among other things, statements "that the affiant is familiar with the applicable standard of care" and that, in the affiant's opinion, "the standard of care was breached by one or more of the defendants to the action and that the breach caused injury to the plaintiff." Id. 10(D)(2)(a)(i)-(iii).  "Medical claims" include "[d]erivative claims for relief that arise from the plan of care, medical diagnosis, or treatment of a person" and "[c]laims that arise out of the plan of care, medical diagnosis, or treatment of any person" and either "result[] from acts or omissions in providing medical care" or "result[] from the hiring, training, supervision, retention, or termination of caregivers providing medical diagnosis, care, or treatment."[5] Ohio Rev. Code Ann. § 2305.113(E)(3)(a)-(b).  "[A] motion to dismiss for failure to state a claim upon which relief can be granted is the proper remedy when the plaintiff fails to include an affidavit of merit." Fletcher, 897 N.E.2d at 150.

Plaintiff raises two arguments in response.  First, plaintiff contends that her wrongful death claim is not a "medical claim" within the meaning of Ohio Rule 10(D)(2).

---

[5] "Medical claims" also include "[c]laims that arise out of the plan of care, medical diagnosis, or treatment of any person and that are brought under section 3721.17 of the Revised Code" and "[c]laims that arise out of skilled nursing care or personal care services provided in a home pursuant to the plan of care, medical diagnosis, or treatment." Ohio Rev. Code Ann. § 2305.113(E)(3)(c)-(d).

That is an unresolved question of state law.  Compare Fletcher v. Univ. Hosps. of Cleveland, 873 N.E.2d 365, 368 (Ohio Ct. App. 2007), rev'd on other grounds, 897 N.E.2d 147 (Ohio 2008) (concluding that a wrongful death claim was a medical claim for purposes of the pleading requirements in Ohio Civ. Rule 10(D)(2)), with Daniel v. United States, 977 F. Supp. 2d 777, 783 (N.D. Ohio 2013) (finding that the "medical claim" statute of repose did not apply to a wrongful death claim).  Second, plaintiff contends that Ohio Rule 10(D)(2) conflicts with Federal Rules of Civil Procedure 8 and 9 and, therefore, does not apply in federal court.  That is a question of federal law, but it is an unresolved one because it turns on application of the Supreme Court's relatively recent decision in Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393 (2010).  To avoid unnecessary guesswork about a state-law question, the court assumes, without deciding that a wrongful death claim is a "medical claim" within the meaning of Ohio Rule 10(D)(2)—as Chowdhury concedes—and proceeds directly to the second argument.

Although this case is premised upon related-to jurisdiction under 28 U.S.C. § 1334 (a form of federal-question jurisdiction), the court must follow the framework of Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938), and apply state law to substantive issues and federal law to procedural issues.  See In re New England Compounding Pharmacy, Inc. Products Liab. Litig., No. MDL 13-02419-RWZ, 2014 WL 6676061, at *3 (D. Mass. Nov. 25, 2014) (collecting cases).  The question for this motion, ultimately, is whether Ohio Rule 10(D)(2) is a substantive requirement that must be applied in this case.

7

Rules of decision in federal courts are "governed by a statutory framework, and the way that it is administered varies depending upon whether there is a federal rule addressed to the matter." Shady Grove, 559 U.S. at 417 (Stevens, J., concurring in part and concurring in the judgment).[6] If there is a Federal Rule of Civil Procedure that addresses the same issue as a state rule, a federal court must apply the federal rule as long as it is authorized by the Rules Enabling Act and otherwise valid. See, e.g., Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 428 (1996). Only if there is no federal rule on point should the court turn to the Erie analysis. Hanna v. Plumer, 380 U.S. 460, 470 (1965).

To apply this framework in practice, a court "must first determine whether [a federal rule] answers the question in dispute." Shady Grove, 559 U.S. at 398 (majority opinion). If it does, the court should inquire whether the federal rule is authorized by the Rules Enabling Act, i.e., whether the federal rules does "not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b). If "the [federal] rule would displace a state law that is procedural in the ordinary use of the term but is so intertwined with a state right or remedy that it functions to define the scope of the state-created right," it is

---

[6] Shady Grove was a deeply divided decision, with Justice Scalia delivering an opinion of the court that, at times, spoke for fewer than five justices. When referring to parts of Justice Scalia's opinion that gathered five votes, I will refer to the opinion as the majority. Likewise, when referring to parts of the opinion that received fewer than five votes, I will cite it as the plurality. Justice Stevens joined Justice Scalia's opinion in part, but wrote separately to offer an interpretation of the Rules Enabling Act that would give effect to more state law provisions than Justice Scalia's reasoning would. On points of law for which Justice Stevens wrote separately, his narrower opinion is controlling. See Marks v. United States, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.") (internal quotation marks omitted).

not authorized.  <u>Shady Grove</u>, 559 U.S. at 423 (Stevens, J., concurring in part and concurring in the judgment).  This second step of the <u>Shady Grove</u> inquiry involves looking at both the form of the federal rule as well as the effect of the federal rule when applied to the case at bar.  <u>Id.</u>

Ohio Rule 10(D)(2) "goes directly to the sufficiency of the complaint."  <u>Fletcher</u>, 897 N.E.2d at 150, just like Federal Rule of Civil Procedure 8, <u>see, e.g.</u>, <u>Iqbal</u>, 556 U.S. at 684 (describing Rule 8 and <u>Twombly</u> as relating to "the sufficiency of a complaint); <u>Cardigan Mountain Sch. v. N.H. Ins. Co.</u>, 787 F.3d 82, 84 (1st Cir. 2015) (referring to Rule 8 as governing "sufficiency of a complaint").  The two rules therefore appear to cover the same ground.  And, to the extent that "the very purpose of [Ohio Rule] 10(D)(2) is to place a heightened pleading requirement on parties bringing medical claims," <u>Fletcher</u>, 897 N.E.2d at 150, the Ohio rule also steps on the toes Federal Rule of Civil Procedure 9, <u>see, e.g.</u>, <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 569 n.14 (2007) ("[W]e do not apply any 'heightened' pleading standard, nor do we seek to broaden the scope of Federal Rule of Civil Procedure 9, which can only be accomplished by the process of amending the Federal Rules, and not by judicial interpretation.") (internal quotation marks omitted).  When read in light of Federal Rules 8 and 9—which establish a comprehensive scheme of federal pleading requirements—there seems to be no room left for Ohio Rule 10(D)(2).  A complaint asserting an Ohio medical claim but lacking an affidavit of merit could be in full compliance with Federal Rules 8 and 9, but yet be insufficient under Ohio Rule

10(D)(2).  Several Ohio district courts agree.[7]  <u>See, e.g.</u>, <u>Larca v. United States</u>, 302

F.R.D. 148, 158 (N.D. Ohio 2014); <u>Thompson v. United States</u>, No. 1:13-CV-00550,

2013 WL 3480347, at *4-5 (N.D. Ohio July 10, 2013); <u>Muncy v. Siefker</u>, No.

3:12CV2301, 2013 WL 1284233, at *5 (N.D. Ohio Mar. 26, 2013).

Having found that Federal Rules 8 and 9 cover sufficiency of the pleadings and

that Ohio Rule 10(D)(2) conflicts with the federal rules, the court considers the next

question, whether the Federal Rules are, in form and as applied here, consistent with

the Rules Enabling Act and the Constitution.  <u>Shady Grove</u>, 559 U.S. at 423 (Stevens,

J., concurring in part and concurring in the judgment).  Ohio Rule 10(D)(2) is motived

by "policy considerations" "to deter the filing of frivolous medical-malpractice claims."

<u>Fletcher</u>, 897 N.E.2d at 149-50.  "The rule is designed to ease the burden on the

dockets of Ohio's courts and to ensure that only those plaintiffs truly aggrieved at the

hands of the medical profession have their day in court."  <u>Id.</u> at 149.  It does not affect

the scope of the state-created right to relief for medical negligence claims (and their

derivatives, like wrongful death claims), but instead serves a gatekeeping function for

the courts.  Indeed, the expert affidavits required by the rule are "not . . . admissible as

evidence [and may not be] used for purposes of impeachment."  Ohio R. Civ. P.

10(D)(2)(d).  And the affidavit requirement may, with good cause, be delayed.  <u>Id.</u> R.

10(D)(2)(b)-(c).

---

[7] With respect to pleading-stage medical malpractice certification requirements more generally, scholarly commentary also supports this conclusion.  <u>See</u> Benjamin Grossberg, Comment, <u>Uniformity, Federalism, and Tort Reform: The Erie Implications of Medical Malpractice Certificate of Merit Statutes</u>, 159 U. Pa. L. Rev. 217, 243 (2010) ("Certificate of merit statutes that require plaintiffs to file the certificate contemporaneously with the complaint are incompatible with the pleading scheme established by the Federal Rules.").

The Ohio Rule creates hoops that a plaintiff must jump through to get to court, but, once the plaintiff clears them, her rights and remedies remain the same as they would be if the rule did not exist.  The federal rules do not alter a party's substantive rights or remedies by displacing Ohio Rule 10(D)(2), so they are not, on their face or as applied, contrary to the Rules Enabling Act.[8]  See Larca v. United States, 302 F.R.D. 148, 159 (N.D. Ohio 2014) (reaching same conclusion).  Rules 8 and 9 therefore displace Ohio Rule 10(D)(2) for Ohio medical claims, including wrongful death, that are brought in federal court.  Because those rules do not require an affidavit of merit, plaintiff's complaint is sufficient.

In response to this reasoning, Chowdhury cites only to Daniel v. United States, 716 F. Supp. 2d 694, 698 (N.D. Ohio 2010), and its progeny, which hold that Ohio Rule 10(D)(2) is a pleading requirement in federal court.  The Daniel line of cases, however, is unpersuasive for two reasons.  First, Daniel was decided shortly before the Supreme Court announced its decision in Shady Grove.  The Supreme Court's decision brought clarity to the Erie analysis of conflicting state and federal rules, and, in the context of Ohio Rule 10(D)(2), strongly suggests a result contrary to the Daniel court's holding. None of the courts that rely upon Daniel have cited to Shady Grove or conducted their

---

[8] Shady Grove also requires the court to consider whether the federal rules run into any constitutional problems, either on the face or as applied.  No party has argued that Federal Rules 8 or 9 are beyond the limits of federal constitutional authority, and the court does not see any constitutional infirmities.  Cf. Windy City Metal Fabricators & Supply Inc. v. CIT Tech. Fin. Servs., Inc., 536 F.3d 663, 672 (7th Cir. 2008) ("There is, moreover, no basis for concluding that the regulation of pleading requirements in federal court is beyond the limits of federal constitutional authority.").

own Shady Grove analysis.[9]  Second, both Daniel and its progeny proceeded directly to

an Erie analysis and did not consider the threshold question of whether there was an

actual conflict between the Federal Rules and the state rule.  That oversight runs

contrary to Hanna's teachings.  See 380 U.S. at 470.  Thus, even under pre-Shady

Grove Erie doctrine, Daniel's analysis still appears flawed.  See, e.g., Larca, 302

F.R.D. at 155-60 (expressly rejecting Daniel's holding).  This court therefore declines to

follow Daniel, and defendants' motion to dismiss for failure to state a claim is DENIED.

### C.    Survivorship and Loss of Consortium Claims

The parties appear to agree that plaintiff's survivorship and loss of consortium

claims survive if her wrongful death claim does.  Having reviewed the applicable law,

the court concurs.  See, e.g., Stratford v. SmithKline Beecham Corp., No. 2:07-CV-639,

2008 WL 2491965, at *9 (S.D. Ohio June 17, 2008) ("The claim for survivorship in the

complaint remains so long as any of the underlying principal claims in the complaint

remain."); Campbell v. PMI Food Equip. Grp., Inc., 509 F.3d 776, 790 (6th Cir. 2007)

(reaching same conclusion for loss of consortium claim); see also Bowen v. Kil-Kare,

Inc., 585 N.E.2d 384, 392 (Ohio 1992) (explaining, in opinion but not in syllabus, that "a

claim for loss of consortium is derivative in that the claim is dependent upon the

defendant's having committed a legally cognizable tort upon the spouse who suffers

bodily injury").  Because plaintiff's wrongful death claim survives, so do her survivorship

---

[9] These cases include Bush v. Sec'y of the Dep't of Veterans Affairs, No. 1:13-cv-76-HJW, 2014 U.S. Dist. LEXIS 28977 (S.D. Ohio Mar. 6, 2014); Bennafield v. United States, No. 4:12CV3010, 2013 U.S. Dist. LEXIS 130553 (N.D. Ohio Sept. 12, 2013); Willis v. Dep't of Veterans Affairs, No. 2:12-cv-867, 2013 U.S. Dist. LEXIS 86811 (S.D. Ohio June 20, 2013); Bierbauer v. Manenti, No. 4:09CV2142, 2010 U.S. Dist. LEXIS 108540 (N.D. Ohio Oct. 12, 2010).

and loss of consortium claims.

## III.    Motion to Dismiss for Improper Venue

Chowdhury next contends that venue is improper in the originally filed action (i.e., in the Northern District of Ohio).  It is somewhat unclear whether plaintiff moves to dismiss for improper venue or merely to transfer venue upon remand under 28 U.S.C. § 1406.  Because the form of the motion does not affect its outcome, however, the court treats it as both.

### A.    Legal Standard

An action not founded solely on diversity jurisdiction, like this one, may be brought in a district where "a substantial part of events . . . giving rise to the claim occurred."  28 U.S.C. § 1391(b)(2).  In ruling on a motion to dismiss for improper venue, "'[a]ll well-pleaded allegations in the complaint bearing on the venue question generally are taken as true, unless contradicted by the defendant's affidavits.  A district court may examine facts outside the complaint to determine whether venue is proper.'"  Turnley v. Banc of Am. Inv. Servs., Inc., 576 F. Supp. 2d 204, 211 (D. Mass. 2008) (quoting 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1352 (3d ed. 2004)).  If venue is proper in the originally filed district, 28 U.S.C. § 1406 does not authorize transfer.  See 28 U.S.C. § 1406(a) (authorizing transfer only in "case[s] laying venue in the wrong division or district").

### B.    Analysis

The complaint alleges that Chowdhury administered the allegedly tainted injections to plaintiff in Marion, Ohio.  Docket # 1 ¶¶ 6-7, 123.  Chowdhury has

13

submitted no affidavit (or anyother  evidence, for that matter) contradicting this allegation.  The court takes notice that Marion, Ohio, is located in Marion County.  See, e.g., Ohio Official Transportation Map, available at http://www.dot.state.oh.us/maps/ 11MapFiles/Front-11-PDF.pdf (last visited July 12, 2015).  Marion County is exclusively within the Northern District of Ohio.  See 28 U.S.C. § 115(a)(2).  Venue in the originally-filed district is therefore proper.[10]  Cf. Heidenescher v. Mohr, No. 2:14-CV-344, 2014 WL 1884313, at *4 (S.D. Ohio May 9, 2014) (recommending transfer of case involving events in Marion County, Ohio, from Southern District of Ohio to Northern District of Ohio).  Chowdhury's motion to dismiss for improper venue or, alternatively, to transfer venue under 28 U.S.C. § 1406 upon remand from the MDL is DENIED.

## IV.   Conclusion

Chowdhury's administrative motion for a one-day extension to respond to the complaint (Docket # 11 in 1:15-cv-11367) is ALLOWED, but his motion to dismiss for failure to state a claim upon which relief can be granted and for improper venue (Docket # 12 in 1:15-cv-11367) is DENIED.

This order shall be docketed in both the individual case (1:15-cv-11367) and the MDL  (1:13-md-02149).

---

[10] The complaint alleges only two possible connections to the Southern District of Ohio: Thompson sought treatment for her resulting infection in Columbus, Ohio, Docket # 1 ¶¶ 129-32; and she resided in Mt. Gilead, which is in Morrow County, Ohio, id. ¶ 5.  See 28 U.S.C. § 115(b) (placing Columbus and Morrow County in the Southern District of Ohio).  Neither is sufficient to render venue in the Northern District of Ohio inappropriate.  The injections themselves, not the treatment of Thompson's subsequent infection or her place of residence, give rise to the her claims.  Because the injections allegedly took place in the Northern District of Ohio, venue there is proper.

_____July 28, 2015_____                    _____/s/Rya W. Zobel_____
         DATE                                       RYA W. ZOBEL
                                          UNITED STATES DISTRICT JUDGE