**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| IN RE NEW ENGLAND | : | MDL No. 02419 |
| COMPOUNDING PHARMACY, INC. | | Docket No. 1:13-md-2419-RWZ |
| PRODUCTS LIABILITY LITIGATION | | |
| _____ | : | |
| | | |
| This document relates to: | | **REPLY OF DEFENDANT, TIM I.** |
| | : | **CHOWDHURY, M.D., IN** |
| Gilliam v. Chowdhury, M.D., et al. | | **SUPPORT OF HIS MOTION TO** |
| No. 1:15-cv-11367-RWZ | | **DISMISS** |
| | : | |
| | | **(Leave to file granted on 07/28/2015)** |

---

## I.      INTRODUCTION

On April 3, 2015, Defendant, Tim I. Chowdhury, M.D., moved to dismiss the complaint of Plaintiff, Sarah Gilliam.  See Case No. 1:15-cv-11367-RWZ, Dkt 12.  The basis of Dr. Chowdhury's motion is two-fold.  First, Plaintiff failed to allege any actual duty under Ohio law for Dr. Chowdhury to allegedly breach.  Second, Plaintiff failed to comply with Ohio R. Civ. P. 10(D)(2), which requires the submission of an affidavit of merit to support her "medical claim," defined as any claim against a physician "that arises out of the medical diagnosis, care, or treatment of any person."  See Ohio Rev. Code § 2305.113 (defining "medical claim" for the purposes of the affidavit of merit rule).

On June 5, 2015, Plaintiff opposed Dr. Chowdhury's motion to dismiss.  See Case No. 1:15-cv-11367-RWZ, Dkt 14.  As to the duty issue, Plaintiff regurgitated her complaint.  As to the affidavit of merit issue, Plaintiff asserted two incorrect claims: (1) her wrongful death action is not a "medical claim" for the purposes of Ohio's affidavit of merit requirement and (2) Ohio's affidavit of merit requirement does not apply in federal court anyway.

Now, Dr. Chowdhury files this reply, specifically to further address the applicability of Ohio's affidavit of merit requirement to this lawsuit.  Simply put, Plaintiff is wrong.  Ohio courts

**FREUND, FREEZE & ARNOLD**
**A Legal Professional Association**

*unanimously* hold Ohio's affidavit of merit requirement applies to wrongful death claims based on underlying medical treatment and diagnosis by a physician.  Furthermore, with few exceptions, Ohio federal courts—when sitting in diversity—apply Ohio's affidavit of merit requirement.  Although Plaintiff contends the U.S. Supreme Court's decision in <u>Shady Grove Orthopedic Assoc. v. Allstate Ins. Co.</u>, 559 U.S. 393 (2010), renders Ohio's affidavit of merit requirement inapplicable, this is simply not the case.  Indeed, since <u>Shady Grove</u>, the vast majority of Ohio federal courts continue to apply the affidavit of merit requirement.  Moreover, the Third and Seventh Circuits—the only two federal circuit courts to address this issue post-<u>Shady Grove</u>—have both held state affidavit of merit requirements continue to apply in federal court.  Accordingly, Dr. Chowdhury respectfully requests this Court dismiss Plaintiff's complaint for failure to submit an affidavit of merit as required by Ohio R. Civ. P. 10(D)(2).

## II.     LAW & ANALYSIS

### A.     <u>Under Ohio law, a wrongful death claim, predicated on medical negligence, is a "medical claim" requiring submission of an affidavit of merit.</u>

Ohio R. Civ. P. 10(D)(2) requires a plaintiff to include an affidavit of merit with any "complaint that contains a **medical claim** . . . as defined in section 2305.113 of the Revised Code." (emphasis added).  That statute defines a "medical claim" to expressly include any claim against a physician "that arises out of the medical diagnosis, care, or treatment of any person." <u>Ohio Rev. Code § 2305.113(E)(3)</u>.  Thus, it is fundamental that Ohio R. Civ. P. 10(D)(2) requires an affidavit of merit when "(1) the claim is against one of the medical professionals or facilities listed [in Ohio Rev. Code § 2305.113(E)(3)], and (2) the claim arises out of a medical diagnosis, care, or treatment."  <u>Wick v. Lorain Manor Inc.</u>, 9th Dist. No. 12CA010324, 2014-Ohio-4329, ¶16.

- 2 -

Based on that expansive definition, it is unsurprising that Ohio state courts and Ohio federal courts sitting in diversity have **_unanimously_** held wrongful death claims against a physician based on underlying "medical diagnosis, care, or treatment of any person" require the filing of an affidavit of merit under Ohio R. Civ. P. 10(D)(2).  See, e.g., Kollin v. City of Cleveland, No. 1:11 CV 2605, 2013 U.S. Dist. LEXIS 97095, at *9 (N.D. Ohio May 24, 2013) (holding a plaintiff's wrongful death claim based on medical negligence is "legally deficient" due to failure to file an affidavit of merit); Wick, 2014-Ohio-4329, ¶16 ("[R]egardless of whether Wick's claims against the Lorain Manor Defendants are for medical malpractice or wrongful death, the claims all arise out of the facility's care and treatment of Josephine while she was a resident of the skilled nursing facility.  Therefore, we conclude that the claims against the Lorain Manor Defendants are 'medical claims' as defined by R.C. 2305.113(E)(3) and required Wick to file an affidavit of merit pursuant to Civ.R. 10(D)(2)(a)."); Chromik v. Kaiser Permanente, 8th Dist. No. 89088, 2007-Ohio-5856, ¶14 (holding survivorship and wrongful death claims based on medical negligence are "medical claims" requiring an affidavit of merit under Civ.R. 10(D)(2)); Fletcher v. Univ. Hosps. of Cleveland, 172 Ohio App.3d 153, 156–57 (8th Dist. 2007) (holding a wrongful death claim based on medical negligence requires an affidavit of merit).  Thus, Plaintiff is flat wrong when stating "[t]here is no case law holding that the affidavit of merit requirement of Rule 10(D)(2) applies to the separate statutory wrongful death claim."

Indeed, not a single Ohio case—in either federal or state court—has *ever* agreed with Plaintiff's position; namely, no Ohio case has ever held a wrongful death claim based on underlying medical treatment is *not* a "medical claim" for the purposes of the affidavit of merit requirement.  Plaintiff certainly does not cite any such case.  Instead, Plaintiff merely cites cases standing for the unremarkable proposition that medical negligence and wrongful death claims

**FREUND, FREEZE & ARNOLD**
**A Legal Professional Association**

have different *statutes of limitation* in Ohio.  See <u>Daniel v. United States</u>, 977 F. Supp.2d 777

(N.D. Ohio 2013); <u>Koler v. St. Joseph Hospital</u>, 69 Ohio St.2d 477 (1982); <u>Klema v. St.

Elizabeth's Hosp. of Youngstown</u>, 170 Ohio St. 519 (1960).  But, as the court in <u>Fletcher</u> held,

those separate statutes of limitation do not change the fact that a wrongful death claim based on

underlying allegations of medical negligence is a "medical claim" requiring an affidavit of merit:

> The wrongful death claim asserted by appellant was a medical claim as
> defined by R.C. 2305.113.  It was a claim against a physician and a
> hospital that arose out of the medical diagnosis, care or treatment of the
> decedent, and the claim resulted from alleged acts or omissions in
> providing medical care.  **We are well aware that R.C. 2305.113 does not
> supply the statute of limitations for a wrongful death claim.**  See <u>Koler
> v. St. Joseph Hosp.</u> (1982), 69 Ohio St.2d 477, 432 N.E.2d 821; <u>Evans v.
> Southern Ohio Med. Center</u> (1995), 103 Ohio App.3d 250, 659 N.E.2d
> 326; <u>Brosse v. Cumming</u> (1984), 20 Ohio App. 3d 260, 20 Ohio B. 322,
> 485 N.E.2d 803.  **However, that fact does not preclude a claim for
> wrongful death from being a "medical claim" as defined in R.C.
> 2305.113.**

<u>Id.</u> at 156–57 (emphasis added).

Plaintiff's position is simply untenable given the statutory language defining a "medical

claim" and the stated purpose of Ohio's affidavit of merit requirement.  As to the statutory

language, Plaintiff cannot seriously contend that her deceased's injuries do not "arise[] out of the

medical diagnosis, care, or treatment of any person" by a physician.  The *entire basis of her

claim* is that those injuries specifically arose out of medical diagnosis, care, and treatment by

physicians at Marion Pain Clinic.  Moreover, given the affidavit of merit requirement is meant to

deter the filing of frivolous medical claims and to establish the adequacy of the complaint, see

<u>Fletcher v. Univ. Hosps. of Cleveland</u>, 120 Ohio St.3d 167, 170 (2008) (quoting <u>Ohio R. Civ. P.

10(D)(2))</u>, Plaintiff's proposed interpretation makes little sense.  That interpretation would

produce incongruous results whereby, all other things being identical, an affidavit of merit would

<div align="center">- 4 -</div>

be necessary for a claim against a physician based on alleged negligent care of a living patient, but not for care of a deceased patient.

In sum, Ohio R. Civ. P. 10(D)(2)'s affidavit of merit requirement applies to Plaintiff's wrongful death claim, which fits squarely within the definition of "medical claim."  As set out in the following sections, the affidavit of merit requirement applies in federal court.

**B.** **Ohio's affidavit of merit requirement applies in federal courts sitting in diversity**

  **1.** **Since <u>Shady Grove</u>, the overwhelming majority of Ohio federal courts have held Ohio's affidavit of merit requirement applies in federal court.**

As set out in Dr. Chowdhury's motion to dismiss, the overwhelming majority position among Ohio federal courts is that Ohio R. Civ. P. 10(D)(2)'s "affidavit of merit" requirement is a substantive state law requirement that **applies in federal court**.  See, e.g., <u>Bush v. Sec'y of the VA</u>, No. 1:13-cv-76-HJW, 2014 U.S. Dist. LEXIS 28977, at *6–7 (S.D. Ohio Mar. 6, 2014) ("The majority of district courts within this circuit have held that [Ohio R. Civ. P. 10(D)(2)] is substantive and must be applied *** in federal court.").

In response, Plaintiff implies the U.S. Supreme Court's decision in <u>Shady Grove</u> marks a sea change in how federal courts interpret Ohio's affidavit of merit rule, but that is simply not the case.  Indeed, since <u>Shady Grove</u>, the overwhelming majority of Ohio federal courts have *continued* to apply Ohio R. Civ. P. 10(D)(2)'s affidavit of merit requirement when sitting in diversity.  See, e.g., <u>id.</u>; <u>Bush v. United States</u>, No. 1:13-cv-406, 2014 U.S. Dist. LEXIS 21563, at *18 (S.D. Ohio Feb. 19, 2014) ("Ohio Civil Rule 10(D) is a substantive rule and applies to plaintiff's instant medical malpractice claims."); <u>Favor v. W.L. Gore Assocs.</u>, No. 2:13-cv-655, 2014 U.S. Dist. LEXIS 17134, at *9–10 (S.D. Ohio Feb. 11, 2014) ("Civil Rule 10(D)(2)'s 'affidavit of merit' requirement is a substantive state-law  requirement that applies in federal

court."); <u>Fonseca v. United States</u>, No. 1:13CV1710, 2013 U.S. Dist. LEXIS 179604, at *9–10 (N.D. Ohio Dec. 23, 2013) (holding Ohio's "affidavit of merit" requirement applies in federal court and rejecting the contrary holding in <u>Thompson</u>); <u>Bennafield v. U.S.</u>, No. 4:12CV3010, 2013 U.S. Dist. LEXIS 130553, at *3 (N.D. Ohio Sept. 12, 2013) ("[T]he Court finds itself in agreement with what appears to be the overwhelming majority position that these types of requirements are substantive and not in conflict with federal rules."); <u>Willis v. United States</u>, No. 2:12-cv-867, 2013 U.S. Dist. LEXIS 86811, at *11 (S.D. Ohio June 20, 2013) ("[T]he complaint must be dismissed for failing to satisfy the requirement under Ohio law that a medical malpractice complaint be accompanied by an affidavit of merit."); <u>Kollin</u>, 2013 U.S. Dist. LEXIS 97095, at *7–8 ("[I]f Ohio Rule 10(D)(2) does not apply in federal court, plaintiffs would have a strong incentive to bring their state-law medical malpractice claims in federal court in order to avoid the affidavit of merit requirement."); <u>Borders v. Lappin</u>, No. 4:11CV1514, 2013 U.S. Dist. LEXIS 101315, at *16 (N.D. Ohio Apr. 27, 2013) ("Ohio Rule of Civil Procedure 10(D)(2) should be applied in this case, and . . . Plaintiff has failed to fulfill his obligation under the Rule."); <u>Johnson v. Rehab. Servs.</u>, No. 1:10-cv-554, 2011 U.S. Dist. LEXIS 83056, at *18 (S.D. Ohio Apr. 29, 2011) (Defendant "is entitled to judgment as a matter of law because Ohio law requires any plaintiff presenting such a medical malpractice claim to file an Affidavit of Merit."); <u>Maston v. Montgomery County Jail Med. Staff Pers.</u>, No. 3:10cv00104, 2011 U.S. Dist. LEXIS 62735, at *15 (S.D. Ohio Apr. 18, 2011) ("To the extent Plaintiff's Amended Complaint alleges medical claims arising under Ohio law, Defendants' argument that Plaintiff's failure to attach the affidavit of merit requires dismissal is correct."); <u>Bierbauer v. Manenti</u>, No. 4:09CV2142, 2010 U.S. Dist. LEXIS 108540, at *29–30 (N.D. Ohio Oct. 12, 2010) ("FTCA claims alleging medical malpractice in Ohio district courts must be accompanied with an

- 6 -

affidavit of merit or be dismissed."); <u>Welker v. United States</u>, No. 1:10 CV 670, 2010 U.S. Dist. LEXIS 146090, at *8–9 (N.D. Ohio June 10, 2010) ("As Rule 10(D)(2) would be controlling in Ohio state courts as a substantive requirement, the court concludes that it is also controlling in an action under the FTCA.").

Although three decisions have reached a contrary conclusion, those decisions represent a clear minority position in Ohio federal courts.  See <u>Larca v. United States</u>, 302 F.R.D. 148 (N.D. Ohio July 28, 2014) (minority position); <u>Thompson v. United States</u>, No. 1:13CV550, 2013 U.S. Dist. LEXIS 96185 (N.D. Ohio, July 10, 2013) (minority position); <u>Muncy v. Siefker</u>, No. 3:12cv2301, 2013 U.S. Dist. LEXIS 42491 (N.D. Ohio Mar. 26, 2013) (minority position). Indeed, other Ohio federal court decisions have expressly rejected that minority position, <u>Fonseca</u>, 2013 U.S. Dist. LEXIS 179604, at *9–10, and have also noted that Ohio's affidavit of merit requirement does not conflict with the federal rules,  <u>Bennafield</u>, 2013 U.S. Dist. LEXIS 130553, at *3.  Accordingly, Plaintiff's contention that most Ohio federal courts have "fail[ed] to adequately account" for <u>Shady Grove</u>, which primarily requires examination of whether such a conflict exists, is incorrect.  Rather, those courts—nearly uniformly—have held Ohio's affidavit of merit requirement does not conflict with federal rules, and, therefore, applies in federal court due to its substantive nature.

The following sections (1) explain what <u>Shady Grove</u> actually stands for, and (2) set out case law, including the only two post-<u>Shady Grove</u> decisions from federal circuit courts addressing whether an affidavit of merit requirement applies in federal court.

**FREUND, FREEZE & ARNOLD**
**A Legal Professional Association**

2.     **Even expressly applying the Shady Grove analysis, Ohio's affidavit of merit requirement applies in federal courts sitting in diversity.**

a.     *Shady Grove does not mark a departure from Ohio's well-established law applying the affidavit of merit requirement in federal courts sitting in diversity.*

It is fundamental that, under Erie, federal courts apply state substantive law and federal procedural law.  Erie Railroad Co. v. Tompkins, 304 U.S. 64, 78 (1938).  As it became clear that, in many cases, no clean distinction could be made between substance and procedure, the U.S. Supreme Court refined this test, eventually settling on a functional inquiry based on the "twin aims of the Erie rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws."  Hanna v. Plumer, 380 U.S. 460, 468 (1965).  The key question, according to Hanna, is "whether application of the [state] rule would make so important a difference to the character or result of the litigation that failure to enforce it would unfairly discriminate against citizens of the forum State, or whether application of the rule would have so important an effect upon the fortunes of one or both of the litigants that failure to enforce it would be likely to cause a plaintiff to choose the federal court."  Id. at 468 n.9.  If so, then the federal court should apply the state rule, as it is effectively "substantive."  If not, then the state rule is "procedural" and does not apply.  Id.; see Preferred Capital, Inc. v. Sarasota Kennel Club, Inc., 489 F.3d 303, 308 (6th Cir. 2007).

But, courts do not "wade into Erie's murky waters" unless they need to.  Shady Grove, 559 U.S. at 398.  In Hanna, the Court held that so long as the Federal Rules are valid, they control over *conflicting* state laws, regardless of what the Erie analysis would say about those laws.  See Shady Grove, 559 U.S. at 397–99; Hanna, 380 U.S. at 471.  In determining whether a conflict exists, the Supreme Court has held the "Federal Rules should be given their plain meaning," see, e.g., Walker v. Armco Steel Corp., 446 U.S. 740, 750 n.9 (1980) ("This is not to

- 8 -

suggest that the Federal Rules of Civil Procedure are to be narrowly construed in order to avoid a 'direct collision' with state law."), but has also directed courts to "interpret[] the Federal Rules . . . with sensitivity to important state interests and regulatory policies." Gasperini v. Ctr. for Humanities, 518 U.S. 415, 427 n.7 (1996).

While this "conflict" analysis remains somewhat murky, a closer review of two recent Supreme Court decisions helps to clarify the principles guiding such an analysis. See id.; Shady Grove, 553 U.S. 393.

### i.      Gasperini v. Center for Humanities

Gasperini involved a New York law instructing the appellate courts to order new trials when a jury's verdict "deviates materially from what would be considered reasonable compensation." 518 U.S. at 418. The question before the Court was whether that rule conflicted with the Seventh Amendment and Rule 59, which allow new trials only as they had traditionally been granted under the common law and which do not permit the appellate courts to act as factfinder. Id. at 418–19. The five Justice majority, led by Justice Ginsburg , found no conflict. It interpreted the New York law as a substantive limitation on the size of jury awards, though the law was framed as an instruction to the appellate courts. Id. at 429–49. Emphasizing the need to "interpret[] the Federal Rules . . . with sensitivity to important state interests and regulatory policies" id. at 427 n.7, the majority found "the principal state and federal interests can be accommodated" without disrupting the federal system. Id. at 437. The majority did so by giving the federal district courts, rather than the appellate courts, responsibility for implementing the "deviates materially standard." Id. This compromise, the majority found, satisfies both the Constitution and implements the core of the standard that New York's legislature adopted.

FREUND, FREEZE & ARNOLD
A Legal Professional Association

<p style="text-align:center">ii.       **Shady Grove Orthopedic Assoc. v. Allstate Ins. Co.**</p>

A similar issue arose again in the Supreme Court's most recent opinion in this area, Shady Grove, 559 U.S. 393.  Shady Grove dealt with a New York statute prohibiting class-action suits seeking penalties or statutory minimum damages.  In a fractured set of opinions, the Court found this statute conflicted with Federal Rule 23, which sets out the requirements for bringing a class-action suit in federal court.  Justice Scalia wrote the Court's lead opinion.  He was joined in full by Chief Justice Roberts and Justice Thomas.  Justice Sotomayor joined in part, and Justice Stevens joined in even smaller part, creating a majority for a portion of the opinion.  Justice Stevens also wrote separately to explain his partial concurrence and concurrence in the judgment.  Justice Ginsburg dissented, joined by Justices Kennedy, Breyer, and Alito.

Justice Stevens, writing separately to explain his position, concurred with Justice Scalia's conclusion that Rule 23 ultimately controlled over New York's law.  Id. at 416–17 (Steven , J., concurring in part and concurring in the judgment).  But, he also agreed in principle with the dissenting Justices' command to interpret the federal rules flexibly.  Id. at 417–19.  Justice Stevens also broke from the other eight Justices' two-step analytical framework.  In his view, the Rules Enabling Act, which provides that the federal rules cannot "abridge, enlarge or modify any substantive right," requires the federal rules to give way to a state law that is substantive in nature.  Where a state law is bound up in a "framework of substantive rights or remedies," that law is effectively substantive, even if it exerts its force through procedural levers.  Id. at 419.  The federal rules cannot overrule such a law without "abridg[ing a] substantive right" and exceeding their authority.  Thus, a conflicting federal rule must give way to such a substantively procedural state regulation.

<p style="text-align:center">- 10 -</p>

By and large, Justice Stevens' opinion provides the narrowest grounds for the Court's decision.  His vote provided a majority for the portions of Justice Scalia's opinion finding the New York statute conflicts with Rule 23.  He also agreed with the plurality's conclusion that Rule 23 satisfied the Rules Enabling Act (though under a different analysis).  But, Justice Stevens provided the dissent a fifth vote for the principle that federal rules should be construed with an eye toward their effects on state policies, though he disagreed "about the degree to which the meaning of federal rules may be contorted . . .  to accommodate state policy goals."  Id. at 421 n.5 (quotation marks omitted).  Therefore, his opinion is arguably the controlling one. Marks v. United States, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be  viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." (internal quotation marks omitted)).

Justice Stevens stands alone, however, in finding that conflict with a federal rule does not doom a state law that affects substantive goals by procedural aims.  This puts Shady Grove into the set of cases where "Marks breaks down."  United States v. Cundiff, 555 F.3d 200, 209 (6th Cir. 2009) (discussing lack of clear controlling opinion in Rapanos v. United States, 547 U.S. 715 (2006), where Court split 4–1–4 and opinions were not simply "logical subset[s]" of one another).  But, despite the difference in analytical framework, Justice Stevens' opinion still occupies a middle ground of sorts between the plurality's narrow view of the Rules Enabling Act's "substantive right[s]" clause and the dissent's broader view of that provision.  Compare Shady Grove, 559 U.S. at 407 ("We have long held that [the 'shall not abridge, enlarge or modify any substantive right'] limitation means that the Rule must 'really regulat[e] procedure.'") (Scalia, J.), with id. at 438 ("In interpreting the scope of the Rules . . . we have

- 11 -

been mindful of the limits on our authority [under the Rules Enabling Act].") (Ginsburg, J., dissenting). As such, Justice Stevens' opinion is controlling here, until the Supreme Court can further clarify this issue.

This conclusion fits with those district courts in the Sixth Circuit (to which Plaintiff's case will ultimately be returned), which have also applied Justice Stevens' concurrence as the controlling opinion in <u>Shady Grove</u>. See, e.g., <u>Jones v. Corr. Med. Servs.</u>, 845 F. Supp. 2d 824, 848–53 (W.D. Mich. 2012) (applying Justice Stevens' concurrence in <u>Shady Grove</u> to an analysis of Michigan's affidavit of merit requirement); <u>In re Packaged Ice Antitrust Litig.</u>, 779 F. Supp. 2d 642, 660 (E.D. Mich. 2011) ("Courts interpreting the <u>Shady Grove</u> decision, and searching for guidance on this issue, have concluded that Justice Stevens's concurrence is the controlling opinion by which interpreting courts are bound."); <u>Kline v. Mortg. Elec. Sec. Sys.</u>, No. 3:08-cv-408, 2010 U.S. Dist. LEXIS 143391, at *10–11 (S.D. Ohio Dec. 30, 2010) (similar); <u>McKinney v. Bayer Corp.</u>, 744 F. Supp. 2d 733 (N.D. Ohio 2010) ("[T]he Court finds that Justice Stevens' concurrence in <u>Shady Grove</u> is the controlling opinion by which it is bound."); <u>Bearden v. Honeywell Int'l, Inc.</u>, No. 3:09-cv-1035, 2010 U.S. Dist. LEXIS 83996, 2010 WL 3239285, at *29 (M.D. Tenn. Aug. 16, 2010) ("Justice Stevens's concurrence is the controlling opinion")).

As set out in the following section, the only two federal circuit courts applying <u>Shady Grove</u> to the "affidavit of merit" issue before this Court have both held such a state requirement remains applicable in federal court. <u>Hahn v. Walsh</u>, 762 F.3d 617, 629 (7th Cir. 2014); <u>Nuveen Mun. Trust v. Withumsmith Brown, P.C.</u>, 692 F.3d 283, 300 (3d Cir. 2012). In addition, the U.S. District Court for the Western District of Michigan has provided an in-depth analysis of

FREUND, FREEZE & ARNOLD
A Legal Professional Association

Shady Grove, ultimately finding Michigan's affidavit of merit (which is the same in all relevant respects to Ohio's) applies in federal court.  Jones, 845 F. Supp. 2d at 848–53.

> **b.**      **Federal courts, including the only two circuit courts to address the issue, have found state affidavit of merit requirements continue to apply in federal courts post-_Shady Grove_.**

In Hahn v. Walsh, 762 F.3d 617, 629–30 (7th Cir. 2014), the Seventh Circuit recently interpreted Shady Grove to allow application of Illinois' affidavit of merit requirement in federal court, finding there was "no conflict" between that requirement and "either Rule 8 or Rule 11." See Shady Grove, 559 U.S. at 398 ("We do not wade into Erie's murky waters unless the federal rule is inapplicable or invalid.").  The court held the case was "similar to Walker, 446 U.S. 740, where the Court held that there was no conflict between the relevant federal and state rules," noting Rules 8 and 11 and Illinois' affidavit of merit requirement can likewise comfortably "exist side by side" in diversity cases.  Id. at 630–31 (internal citations omitted).  The court held "[n]othing in the operative provisions of Rule 8, Rule 11 or [the affidavit of merit requirement] prevents us from simultaneously applying them."  Id. at 631.  The court stated that while Rule 8 governs the content and form of a complaint, the affidavit of merit requirement "says nothing about the contents of the actual complaint; it is only concerned with a pre-suit consultation and related attachments to the complaint."  Id.  Thus, "Rule 8 and [the affidavit of merit requirement] govern different aspects of commencing an action and may be enforced simultaneously without conflict."  Id.  Likewise, the court held Illinois' affidavit of merit requirement "does not interfere with the ability of the attorney to certify the accuracy and legitimacy of that complaint" under Rule 11 and "may be applied simultaneously."  Id. at 632.

Further, the court held Rules 8 and 11 do not "occup[y] the field" that Illinois' affidavit of merit requirement aims to regulate.  Id. (citing Burlington N.R. Co. v. Woods, 480 U.S. 1, 7

- 13 -

(1987)).   The court found the purpose of the affidavit of merit requirement is "to reduce the number of frivolous medical malpractice lawsuits that are filed and to eliminate such actions at an early stage."  Id. (citing Apa v. Rotman, 288 Ill. App. 3d 585, 680 N.E.2d 801, 804 (Ill. App. Ct. 1997)).  By contrast, the court found the purpose of Rule 8 is to provide a defendant with fair notice of the claims against him.  Id. (citing Vicom, Inc. v. Harbridge Merch. Servs., Inc., 20 F.3d 771, 775 (7th Cir. 1994) and Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Ultimately, the court held the purposes of Rule 8 (fair notice) and the affidavit of merit requirement (eliminating frivolous claims) are "different enough that the rules comfortably may coexist in diversity cases."  Id.  Likewise, the court held, because "Rule 11 is about attorney conduct—not about (or only incidentally about) the merits of a plaintiff's case—it has a sufficiently separate purpose from [the affidavit of merit requirement] that no conflict exists between them."  Id.

Similarly, in Nuveen Mun. Trust v. Withumsmith Brown, P.C., 692 F.3d 283, 300 (3d Cir. 2012), the Third Circuit specifically rejected the plaintiff's contention that Shady Grove rendered New Jersey's affidavit of merit requirement inapplicable in federal court.  While acknowledging Shady Grove "clarified the second caveat to the Erie analysis," the court nevertheless held New Jersey's affidavit of merit requirement "has no effect on what is included in the pleadings of a case or the specificity thereof" and therefore "does not collide" with Rule 8. Id. at 303.  Ultimately, the court held New Jersey's affidavit of merit requirement "can be applied in federal court without voiding any Federal Rules."  Id. at 304.

Finally, in Jones v. Corr. Med. Servs., 845 F. Supp. 2d 824, 853–58 (W.D. Mich. 2012), the U.S. District Court for the Western District of Michigan interpreted Shady Grove to allow application of Michigan's affidavit of merit requirement in federal court.  The court held that "to

**FREUND, FREEZE & ARNOLD**
**A Legal Professional Association**

say that [Rules 8 and 9] directly conflict with Michigan's affidavit-of-merit statute seems to require too much from the rules." Id. at 855. The court noted "Rules 8 and 9 apply to pleadings only, but Michigan's affidavits of merit have little in common with pleadings, aside from their being filed along with the complaint." Id. Thus, affidavits of merit "do not fall within the plain language of Rules 8 and 9." Id. (citing Walker, 446 U.S. at 750 n.9 ("The Federal Rules should be given their plain meaning.")). The court further stated "[t]o find a conflict here, not only would we have to disregard the Supreme Court's instructions to read the Rules to avoid conflict, but we would have to go further and actually expand the Rules' domain beyond their plain meaning to cover non-binding, factual statements made by a hired expert outside of the formal pleadings." Id. at 855–56 (citing Gasperini, 518 U.S. at 427 n.7 and Shady Grove, 559 U.S. at 405 n.7).

In its analysis, the court also expressly rejected the contention that Shady Grove required a different outcome:

> Shady Grove does not compel us to find otherwise. The majority there found an unavoidable conflict between Rule 23 and New York's statute, despite the argument that the one covered class-action eligibility and the other covered class certification eligibility. Shady Grove, 130 S. Ct. at 1438. The Court rejected this "entirely artificial" distinction. Because the practical effects of the two rules were identical, the attempted distinction was nothing more than a label. Id. Here, though, there are clear, practical differences between the rules governing pleadings and the rules governing certificates of merit, as the Michigan courts have detailed. The certificate-of-merit requirement is not simply a heightened pleading standard under another name; it is an entirely different procedure that only happens to take place contemporaneously with the pleadings. Rule 8, therefore, does not conflict with Mich. Comp. L. § 600.2912d(1).

Id. at 856.

The court likewise found any potential conflict with Rule 11 to be "illusory." Id. The court noted "Michigan's statute, which requires only termination of claims unaccompanied by a

proper certificate of merit, does not limit the courts' discretionary power under Rule 11 in any way." Id. at 856; see also Trierweiler v. Croxton & Trench Holding Corp., 90 F.3d 1523, 1540 (10th Cir. 1996) (finding no conflict between Colorado statute and Rule 11 because "the statute vindicates substantive interests of Colorado not covered by Rule 11").

Here, for all the same reasons discussed in Hahn, Nuveen, and Jones, no conflict exists between Ohio's affidavit of merit requirement and the federal rules.   The affidavit of merit is not a pleading under Ohio law, Ohio R. Civ. P. 7(A), and, therefore, does not come within the scope of Rules 8 and 9.  Ohio's affidavit of merit requirement says nothing about the contents of the actual complaint or the specificity thereof.  Moreover, Ohio's affidavit of merit requirement does not interfere with the ability of an attorney to certify the accuracy and legitimacy of a complaint under Rule 11, but merely speaks to the merits of that complaint.

Furthermore, as discussed in those cases, Rules 8, 9, and 11 do not occupy the field that Ohio's affidavit of merit requirement aims to regulate, i.e., to "deter the filing of frivolous medical-malpractice claims."   See Fletcher, 120 Ohio St.3d at 170 (quoting Ohio R. Civ. P. 10(D)(2)).   As Jones held, to find otherwise requires expansion of the Rules' domain beyond their plain meaning to cover non-binding, factual statements made by a hired expert outside of the formal pleadings.

At the end of the day, it is apparent Ohio's affidavit of merit requirement and the federal rules can comfortably exist side by side in diversity cases.  Especially given the Supreme Court's direction to interpret the federal rules "with sensitivity to important state interests and regulatory policies," Gasperini, 518 U.S. at 427 n.7, there is no reason to stretch the language and purpose of those rules to invalidate Ohio's affidavit of merit requirement in this lawsuit.  Thus, even in

FREUND, FREEZE & ARNOLD
A Legal Professional Association

light of <u>Shady Grove</u>, Ohio's affidavit of merit requirement applies in federal court as there is no dispute that said requirement is substantive under the <u>Erie</u> analysis.

## III.     CONCLUSION

Dr. Chowdhury respectfully requests this Court dismiss Plaintiff's complaint for failure to submit an affidavit of merit as required by Ohio R. Civ. P. 10(D)(2).

<div style="margin-left:45%">

Respectfully submitted,

/s/ Bartholomew T. Freeze
Mark L. Schumacher
(Ohio #0018957)
Bartholomew T. Freeze
(Ohio #0086980; California #299369)
FREUND, FREEZE & ARNOLD
Capitol Square Office Building
65 E. State Street, Suite 800
Columbus, OH  43215-4247
(614) 827-7300; (614) 827-7303 (fax)
mschumacher@ffalaw.com
bfreeze@ffalaw.com
*Counsel for Defendant, Tim I. Chowdhury, M.D.*

</div>

- 17 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 28, 2015, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system.


<u>/s/ Bartholomew T. Freeze</u>
Bartholomew T. Freeze

**FREUND, FREEZE & ARNOLD**
**A Legal Professional Association**