UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>All Actions | MDL No. 2419<br>Master Docket No.: 1:13-md-2419-RWZ<br><br>Honorable Rya W. Zobel |

**PLAINTIFFS' STEERING COMMITTEE'S
REPLY MEMORANDUM REGARDING THIS COURT'S AUTHORITY TO
CONDUCT TRIALS PURSUANT TO 28 U.S.C. § 157(b)(5)**

**TABLE OF CONTENTS**

I.   **POST-FILING EVENTS DID NOT AND CANNOT STRIP THIS COURT OF SUBJECT MATTER JURISDICTION UNDER 28 U.S.C. § 1334(B).** ................... 1

II.  **THE COURT SHOULD EXERCISE ITS DISCRETION UNDER 28 U.S.C. § 157(B)(5) AND SET THE VENUE FOR TRIAL FOR CERTAIN CASES IN THIS DISTRICT.** ................................................................................................ 5

The PSC respectfully submits this Reply Memorandum addressing certain issues raised in the Tennessee Clinic Defendants, Specialty Surgery Center, Saint Thomas Entities (collectively the "Tennessee Defendants"), and the Premier Defendants' (collectively with the Tennessee Defendants, the "Tennessee and New Jersey Defendants") Responses to the PSC's brief regarding this Court's Authority to Conduct Trials Pursuant to 28 U.S.C. § 157(b)(5).

## I.  POST-FILING EVENTS DID NOT AND CANNOT STRIP THIS COURT OF SUBJECT MATTER JURISDICTION UNDER 28 U.S.C. § 1334(B).

The Tennessee Defendants claim that the NECC Bankruptcy Court's Confirmation Order stripped this Court of subject matter jurisdiction under 28 U.S.C. § 1334(b) and therefore this Court cannot entertain conducting trials under 28 U.S.C. § 157(b)(5).[1] That assertion is simply wrong. Virtually every federal court to examine the issue has held that "related to" jurisdiction under 28 U.S.C. § 1334(b) vests at the time of filing of the claim and cannot be divested based on subsequent events. All federal appellate courts to examine the issue, including the Sixth Circuit includes Tennessee, have rendered similar holdings, and the Fifth Circuit specifically held that "related to" jurisdiction under § 1334(b) exists when an action is filed and no subsequent event, ***including confirmation of a Chapter 11 plan or reorganization***, can divest a district court of such jurisdiction.[2] Several district

---

[1] Dkt. No. 2089 (Tenn. Clinic Defendants) at P. 4; Dkt. No. 2090 (Saint Thomas Entities) at P. 3-7; Dkt. No. 2091 (Specialty Surgery Center) at P. 4.

[2] *Superior Bank, FSB v. Boyd (In re Lewis)*, 398 F.3d 735, 743 (6th Cir. 2005) (holding that bankruptcy court's subject matter jurisdiction is "tested as of the time the action is filed and subsequent changes will not operate to divest a court of its jurisdiction once it has been properly invoked…"); *Newby v. Enron Corp. (In re Enron Corp. Securities)*, 535 F.3d 325, 333, 336 (5th Cir. 2008) (holding that a bankruptcy plan's confirmation which resulted in pending case no longer being able to affect the bankruptcy estate did not divest district court of subject matter jurisdiction under § 1334 in case involving third party suing non-debtor for violations of state tort law); *Continental Nat'l. Bank of Miami v. Sanchez (In re Toledo)*, 170 F.3d 1340, 1346 n.8 (11th Cir. 1999) ("The presence or absence of jurisdiction [under 28 U.S.C. § 1334(b)] must be evaluated based on the state of affairs existing at the time the adversary complaint was filed [citation omitted], not at some later time when, for example, it was ultimately determined here that the Estate had no interest in the sale proceeds.") (emphasis added); *Owens-Illinois, Inc. v. Rapid American Corp. (In re Celotex Corp.)*, 124 F.3d 619, 626 (4th Cir. 1997) ("Before we apply the Pacor test, we

1

courts and bankruptcy courts follow the same rule.[3]

The Fifth Circuit's *Newby* decision is particularly instructive. In *Newby* several plaintiffs filed suits alleging state tort law violations and sued various non-debtor defendants.[4] Those cases were removed to federal court under 1334(b)'s related to jurisdiction and transferred and consolidated into an MDL pursuant to 28 U.S.C. § 1407 prior to Enron's bankruptcy court's confirmation order. Once the bankruptcy court entered a confirmation order, the plaintiffs claimed the pending actions against the non-debtors were no longer "related to" Enron's Chapter 11 proceeding as a result of the confirmation order. The Fifth Circuit summarily dismissed this argument and held:

> Section 1334 does not expressly limit bankruptcy jurisdiction upon plan confirmation…Events cannot divest a court of jurisdiction over claims within "related to" jurisdiction under 28 U.S.C.S. § 1334(b)… If "related to" jurisdiction actually exists under 28 U.S.C.S. § 1334(b) at the time of removal, subsequent events cannot divest a district court of that subject matter jurisdiction.[5]

The Fifth Circuit further noted that plaintiffs in that case "cannot point to a single case in

---

note that if 'related to' jurisdiction actually existed at the time of Rapid's removal of the Contribution Action to the district court, Rapid's global settlement with the Celotex bankruptcy estate and the treatment of Owens' claim under the Confirmed Plan could not divest the district court of that subject matter jurisdiction.");

[3] *Kindrick v. CMI Elecs., Inc.*, 2011 U.S. Dist. LEXIS 94511, *1 (M.D. Ala. Aug. 23, 2011) ("The test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy…***The [] test is applied by looking to the facts that existed at the time the party seeking 28 U.S.C.S. § 1334(b) jurisdiction filed its civil claim that allegedly relates to bankruptcy***."); *Roy v. Navy Fed. Credit Union (In re Roy)*, Bankr. No. 09-2972, Adv. No. 10-24, 2010 Bankr. LEXIS 2277, 2010 WL 2928463 (Bankr. N.D. W. Va. July 26, 2010) ("The fact that the Debtors' lawsuit against creditor will no longer impact their bankruptcy estate . . . does not mean that the court has lost subject matter jurisdiction . . . . Once a bankruptcy court has subject matter jurisdiction over an adversary proceeding, that jurisdiction is not divested by subsequent events."); *Hamlin Props., Ltd. v. PAMI Sept., LLC (In re Hamlin Props.,* Ltd.), 413 B.R. 540 (Bankr. N.D. Tex. 2009) (once bankruptcy court has jurisdiction, an intervening event of dismissal of the underlying bankruptcy case does not divest the court of jurisdiction, and it is within the court's sound discretion to retain jurisdiction after considering factors of economy, convenience, fairness and comity) *Banks v. Morton (In re Banks)*, Adv. Proc. No. 07-03157-DOT, 2010 WL 842352 (Bankr. E.D. Va. Mar. 4, 2010) (holding that bankruptcy court did not lose related to jurisdiction over cross-claims by one non-debtor defendant against another non-debtor defendant, even where bankruptcy trustee settles claims of both non-debtor defendants); *King's Grant Gold Acquisition, LLC v. Abercrombie (In re T 2 Green, LLC)*, 364 B.R. 592, 601-02 n.6 (Bankr. D.S.C. 2007) (where bankruptcy court had related to jurisdiction, the subsequent settlement of claims with non-debtor plaintiff and confirmation of plan did not divest the bankruptcy court of jurisdiction under 1334(b)).
[4] *Newby*, 535 F.3d 325 at 331-33.
[5] *Id.* at 335 (internal citations and quotations omitted).

2

which we have held that plan confirmation divests a District Court of bankruptcy jurisdiction over pre-confirmation claims based on pre-confirmation activities that properly had been removed pursuant to 'related to' jurisdiction."[6]

This is now the exact issue before this Court, and the Tennessee Defendants similarly fail to cite to a single case where a district court lost jurisdiction over pre-confirmation claims based on pre-confirmation activities that were properly filed in federal court pursuant to 'related to' jurisdiction. The Saint Thomas Entities almost exclusively rely on this Court's previous decision in *Quincy Med. Ctr. v. Gupta*, 2015 U.S. Dist. LEXIS 377, a case easily distinguishable because it involved a case filed <u>post-confirmation</u>.[7] In the present litigation, unlike in *Quincy Medical*, the Tennessee and New Jersey Plaintiffs filed claims before plan confirmation against parties that desire to continue asserting the debtor's comparative fault as an affirmative defense to tort liability.

Specialty Surgery Center and the Tennessee Clinic Defendants cite a handful of bankruptcy court and district court decisions finding that post-filing events can divest the Court of subject matter jurisdiction, and principally rely upon *In re Alma Energy LLC*, 2012 WL 243746, for that proposition. That case is also easily distinguished. First, *In re Alma Energy* involved a Chapter 11 proceeding that was converted into a Chapter 7 proceeding. An adversary proceeding, filed 17 days prior to the conversion, which once involved the debtor as a plaintiff. Settlements with various non-debtor defendants and assignment of rights ended up pitting previous non-debtor defendants against one another.[8] Given the shifting alliances in the parties, an amended complaint was filed in the adversary proceeding reflecting this substantial change in

---

[6] *Id*.
[7] Dkt. No. 2090 at 4-5.
[8] *Spradlin v. Williams (In re Alma Energy, LLC)*, 2012 Bankr. LEXIS 300, *26 (Bankr. E.D. Ky. Jan. 24, 2012) ("There have been substantial changes in the Complaint filed in this adversary proceeding. There have also been substantial changes in the parties to this adversary proceeding.")

3

party-alignment and claims at issue. The District Court expressly noted the substantial difference between the original complaint filed and the adversary proceeding.[9] Given the substantial changes and the new party alignment, the District Court expressly noted that it had to examine whether the court maintained jurisdiction over this altogether new action under a newly filed second amended complaint.[10] Acknowledging that it had to assess jurisdiction under the amended complaint, the Court found that, given the substantial changes in the litigation under the newly filed complaint, the Court could not exercise "related to" jurisdiction over this altogether new controversy.[11]

None of those facts are present here. NECC's bankruptcy was never converted to a Chapter 7 proceeding. No non-debtor party defendant have become the party plaintiff in this proceeding. Plaintiff's claims here against the non-debtor defendants remain the same (although some parties will ultimately be dismissed as a result of settlement, no defendant in the original proceeding is going to become the party-plaintiff here).[12] No party realignment has occurred through assignment of rights. In other words, *In re Alma Energy* appears to be a unique outlier wholly different from the situation at bar, and Specialty Surgery Center's and the Tennessee Clinic Defendants' reliance on this decision is misplaced.[13]

---

[9] *See id.* * 15-16
[10] *Id.*
[11] *Id.* at *16-17. The PSC maintains that the Court's express limitation to the period after the Second Amended Complaint was filed does not appear to compute with the Sixth Circuit's ruling on this issue in *In re Lewis*, 398 F.3d 735, which is curiously omitted from the District Court's opinion, but regardless of whether this case articulated the correct standard, as discussed it is factually distinguishable from the case at bar.
[12] *See id.* at 34 ("As indicated above, this dispute is drastically different than it was when it was originally filed. This dispute was originally based on the allegedly dreadful treatment Alma received at the hands of the named Halle Entities and other entities controlled by Halle, subsequent to the parties entering into the 2007 Settlement Agreement. Pikeville and the Williams Defendants were named as defendants by Alma in the original Complaint, but no substantive allegations were made against them by Alma and they were realigned as plaintiffs with respect to the original Complaint.")
[13] The Tennessee Clinic Defendants also rely on a handful of other decisions purportedly for the proposition that bankruptcy jurisdiction under § 1334(b) can lapse. Dkt. No. 2089 at n. 18. *In re Dierkes* is distinguishable on the grounds that it too is a converted Chapter 7 case that was originally filed as a Chapter 13 proceeding and involved the Chapter 7 trustee abandoning claims in an adversary proceeding and the Court refusing to exercise 'related to'

Accordingly, the Court retains jurisdiction under § 1334(b) over the controversy between plaintiffs and the Tennessee and New Jersey Defendants.

## II. THE COURT SHOULD EXERCISE ITS DISCRETION UNDER 28 U.S.C. § 157(B)(5) AND SET THE VENUE FOR TRIAL FOR CERTAIN CASES IN THIS DISTRICT.

The Tennessee and New Jersey Defendants claim that this court's obligation under 28 U.S.C. § 1407 trumps its obligations under Section 157(b)(5),[14] despite the fact 28 U.S.C. § 157(b)(5) expressly vests this Court with the power and responsibility to determine the trial venue for personal injury and wrongful death claims that relate to a Chapter 11 bankruptcy proceeding.[15]

A handful of federal court decisions address whether a district court's bankruptcy obligations to set venue for personal injury/wrongful death claims continue to exist despite the existence of an MDL governing pretrial proceedings.[16] In those cases, courts hold that a district court's obligations under 28 U.S.C. § 157(b)(5) continue to exist and that the district

---

jurisdiction after the Chapter 7 trustee abandoned claims and the debtor received his Chapter 7 discharge. *In re Dierkes*, 2007 Bankr. LEXIS 1565 at * 6-11. Again, none of this is present here as NECC's bankruptcy has never been converted to a Chapter 7 proceeding and the 'related to' jurisdiction here did not derive from the debtor suing a creditor. Moreover, and more importantly, the *in re Dierkes* bankruptcy court identifies no authority whatsoever for this holding and cites to no precedent consistent with its holding that subject matter jurisdiction could lapse. It too appears an outlier and utterly inconsistent with the 11th Circuit's holding in *In re Toledo*, 170 F.3d at 1346 n.8. *In re Import & Mini Car Parts, Ltd. Inc.*, 200 B.R. 857, 861 (N.D. Ind. 1996), which the Tennessee Clinic Defendants also cite in support of the idea that bankruptcy jurisdiction can lapse, is also distinguishable. Once again, this case involves a converted Chapter 11 case where the Chapter 7 trustee assigned claims to a creditor. During the Chapter 7 proceeding, the Chapter 7 trustee obtained judgment against a principal of the debtor and assigned the collection of that judgment to a creditor. Five years passed, the Chapter 7 proceeding closed, and the assigned creditor filed a motion for proceedings supplemental seeking to have certain assets from the now judgment creditor garnished to satisfy the judgment. The Bankruptcy Court determined it did not have continuing jurisdiction post-judgment to hear the garnishment proceedings and dismissed the assignee's motion for supplemental proceedings. *Id*. This case is inapplicable to the situation at bar. Plaintiffs are not seeking to essentially re-instate stale litigation in order to collect on a judgment. *Id*. The other cases cited by the Tennessee Clinic Defendants simply do not involve a court holding that § 1334(b) 'related to' jurisdiction can be extinguished by supplemental events.

[14] Dkt. No. 2084 (Premier Defendants) at P. 3-6; Dkt. No. 2089 (Tenn. Clinic Defendants) at P. 8-9; Dkt. No. 2090 (Saint Thomas Entities) at P. 9-10; Dkt. No. 2091 (Specialty Surgery Center) at P. 1-3.

[15] *In re DOW CORNING CORP.*, 187 B.R. 919, 921 ( E.D. Mich. 1995) ("28 U.S.C.S. § 157(b)(5), however, expressly confers on the district court sitting in bankruptcy and having jurisdiction of the bankruptcy proceedings the power to fix the venue of any tort case against the debtor pending in other districts.")

[16] *See id*; *In re Metabolife Inter'l. INc. and Alipine Health Products LLC*, Case No. 05-cv-1802 (Nov. 5, 2005) (a copy of which is attached as Exhibit A).

court where the bankruptcy is pending continues to be the ultimate decision maker as to where such claims are tried.[17] As a practical consideration, those cases, because they involve a different venue for the MDL court and the district court where the relevant bankruptcy was pending, defer to the MDL court for pre-trial proceedings, but all hold that the district court where the bankruptcy is pending ultimately decides and selects the venue for trial.[18]

The fact that this Court is both the district court where the relevant bankruptcy is pending and the MDL court appointed by the JPML to conduct pre-trial proceedings should not and cannot alter the fact that this Court ultimately has the power and responsibility to decide where these cases are tried, and in fact, further supports it.[19] Moreover, § 157(b)(5) clearly gives this Court the authority to decide to try the subject cases in Boston.[20]

This Court is in the unique position as the U.S. district court most familiar with the cases involving the Tennessee, New Jersey and Box Hill Defendants. This Court could bring these cases to trial faster than any other district court. Plaintiffs have waited now close to three years to obtain justice, and this Court is in a unique position to ensure that trials on the merits occur as quickly as possible. The PSC urges the Court to set venue in this Court under 28 U.S.C. § 157(b)(5) to try cases against the Tennessee, New Jersey and Box Hill Defendants.[21]

---

[17] *Id.*

[18] *Id.*

[19] *See In re DOW CORNING CORP.,* 187 B.R. at 921 ( E.D. Mich. 1995) ("28 U.S.C.S. § 157(b)(5), however, expressly confers on the district court sitting in bankruptcy and having jurisdiction of the bankruptcy proceedings the power to fix the venue of any tort case against the debtor pending in other districts.").

[20] *Id.*; 28 U.S.C. § 157(b)(5).

[21] The Court need not try every case pending in this court, and exercising its discretion under 28 U.S.C. § 157(b)(5) over the first trials does not preclude this Court from sending cases back to their home districts, but the Court is in the best position to try the first cases, and the PSC urges the Court, at a minimum, to set trial for the first cases against the Tennessee and New Jersey Defendants.

Dated:  August 3, 2015

Respectfully submitted,

**/s/ Benjamin A. Gastel**
J. Gerard Stranch, IV
Benjamin A. Gastel
BRANSETTER, STRANCH & JENNINGS PLLC
The Freedom Center, Suite 200
223 Rosa L. Parks Avenue
Nashville, TN  37203
Telephone:  (615) 254-8801
Facsimile:  (615) 255-5419
gstranch@bsjfirm.com
beng@bsjfirm.com

*Plaintiff's Steering Committee and TN State Chair*

Thomas M. Sobol
Kristen Johnson
HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA  02142
Telephone:  (617) 482-3700
Facsimile:  (617) 482-3003
tom@hbsslaw.com
kristenj@hbsslaw.com

*Plaintiffs' Lead Counsel*

Elizabeth J. Cabraser
Mark P. Chalos
Annika K. Martin
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
150 Fourth Avenue North, Suite 1650
Nashville, TN 37219-2417
Telephone:  615.313.9000
Facsimile:  615.313.9965
ecabraser@lchb.com
mchalos@lchb.com
akmartin@lchb.com

*Federal/State Liaison*

7

Marc E. Lipton
LIPTON LAW
18930 W. 10 Mile Road
Southfield, MI 48075
Telephone: (248) 557-1688
Facsimile: (248) 557-6344
marc@liptonlawcentercom

Kim Dougherty
JANET, JENNER & SUGGS, LLC
31 St. James Avenue, Suite 365
Boston, MA 02116
Telephone: (617) 933-1265
kdougherty@myadvocates.com

Patrick T. Fennell
CRANDALL & KATT
366 Elm Avenue, S.W.
Roanoke, VA 24016
Telephone: (540) 342-2000
pfennel@crandalllaw.com

Mark Zamora
ZAMORA FIRM
6 Concourse Way, 22nd Floor
Atlanta, GA 30328
Telephone: (404) 451-7781
Facsimile: (404) 506-9223
marc@markzamora.com

*Plaintiffs' Steering Committee*

**CERTIFICATE OF SERVICE**

I, Benjamin A. Gastel, hereby certify that I caused a copy of the foregoing to be filed electronically via the Court's electronic filing system. Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system, and notice of these filings will be sent to these parties by operation of the Court's electronic filing system.

Dated: August 3, 2015

        **/s/ Benjamin A. Gastel**
        Benjamin A. Gastel