# EXHIBIT G

In the Matter Of:

NEW ENGLAND COMPOUNDING PHARMACY INC. PRODUCTS LIABILITY

**VIDEOTAPED DEPOSITION OF ROBERT C. KAISER**

*July 08, 2015*



100 Mayfair Royal
181 Fourteenth Street
Atlanta, GA 30309
404.847.0999

1              UNITED STATES DISTRICT COURT

2            FOR THE DISTRICT OF MASSACHUSETTS

3    - - - - - - - - - - - - - - - x

4    IN RE: NEW ENGLAND COMPOUNDING MDL No. 2419

5    PHARMACY, INC. PRODUCTS          Master Dkt.
                                      1:13-md-02419-RWZ
6    LIABILITY LITIGATION

7    - - - - - - - - - - - - - - - x

8    THIS DOCUMENT RELATES TO:

9    All Actions

10   - - - - - - - - - - - - - - - - - x

11

12   VIDEOTAPED DEPOSITION OF LIBERTY INDUSTRIES, INC.,

13        by and through their corporate designee,

14                 ROBERT C. KAISER

15              Wednesday, July 8, 2015

16                    9:00 a.m.

17                 Brown Rudnick LLP

18                185 Asylum Street

19              Hartford, Connecticut

20

21      Judith McGovern Williams, RPR, CLR, CRR, CSR

22

23

24

25



DISCOVERY
LITIGATION SERVICES
Court Reporting • Videography • Trial Presentations
Nationwide Coverage

100 Mayfair Royal
181 Fourteenth Street
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

```
 1   APPEARANCES:

 2   BRANSTETTER, STRANCH & JENNINGS, PLLC

 3    Benjamin A. Gastel, Esquire

 4    227 Second Avenue North

 5    Suite 400

 6    Nashville, Tennessee  37203

 7    beng@bsjfirm.com

 8    On behalf of the Plaintiffs

 9

10   NORTON ROSE FULBRIGHT US LLP

11    Adam T. Schramek, Esquire

12    Nathan Damweber, Esquire

13    98 San Jacinto Boulevard, Suite 1100

14    Austin, Texas  78701-4255

15    512.474.5201

16    adam.schramek@nortonrosefulbright.com

17    nathan.damweber@nortonrosefulbright.com

18    On behalf of Saint Thomas Health and Saint

19    Thomas Network

20

21

22

23

24

25
```



DISCOVERY
LITIGATION SERVICES
Court Reporting • Videography • Trial Presentations
Nationwide Coverage

100 Mayfair Royal
181 Fourteenth Street
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

1    APPEARANCES (continued):

2   BREWER, KRAUSE, BROOKS, CHASTAIN & BURROW, PLLC

3     Kent E. Krause, Esquire

4     611 Commerce Street, Suite 2600

5     Nashville, Tennessee  37203

6     615.256.8787

7     kkrause@bkblaw.com

8     On behalf of Specialty Surgery Center and

9     Dr. Lister

10

11   HERMES NETBURN

12     Peter G. Hermes, Esquire

13     265 Franklin Street, 7th Floor

14     Boston, Massachusetts  02110-3113

15     617.210.7710

16     phermes@hermesnetburn.com

17     On behalf of Liberty Industries and the Witness

18

19   LAW OFFICES OF NICOLE D. DORMAN

20     Nicole D. Dorman, Esquire

21     P.O. Box 1142

22     Glastonbury, Connecticut  06033

23     860.463.6873

24     ndorman@nicoledormanlaw.com

25     On behalf of Liberty Industries



```
 1   APPEARANCES (continued):

 2   (Participating via teleconference:)

 3   MORRISON MAHONEY LLP

 4    Caroline Kelly, Esquire

 5    250 Summer Street

 6    Boston, Massachusetts 02210

 7    617.439.7500

 8

 9   PESSIN KATZ LAW, P.A.

10    Gregory K. Kirby, Esquire

11    901 Dulaney Valley Road

12    Suite 500

13    Towson, Maryland  21204

14

15   LIPTON LAW

16    Marc E. Lipton, Esq.

17    18930 W. 10 Mile Road

18    Southfield, Michigan  48075

19

20   (The following counsel participated via webstream:)

21   DONOGHUE BARRETT & SINGAL

22    Callan G. Stein, Esquire

23    One Beacon Street

24    Suite 1320

25    Boston, Massachusetts  02108
```



```
 1    APPEARANCES (continued):

 2    GREENBERG TRAURIG

 3      John Wells, Esquire

 4      One International Place

 5      Boston, Massachusetts   02110

 6

 7    FRALEY & FRALEY

 8      Heather Kanny, Esquire

 9      901 Main St

10      Suite 6300

11      Dallas, Texas   75202

12

13    FREUND FREEZE & ARNOLD

14      Bartholomew Freeze, Esquire

15      65 East State Street

16      Suite 800

17      Columbus, Ohio   43215

18

19    GIDEON, COOPER & ESSARY, PLC

20      Matthew Cline, Esquire

21      315 Deaderick St

22      Suite 1100

23      Nashville, Tennessee   37238

24

25
```



```
 1   APPEARANCES (continued):

 2   CAPPLIS, CONNORS & CARROLL

 3     Thomas M. Dolan, III, Esquire

 4     18 Tremont Street

 5       Suite 220

 6       Boston, Massachusetts   02108

 7

 8   THE MILLER LAW FIRM

 9     M. Ryan Jarnigan, Esquire

10     950 W. University Drive

11     Suite 300

12     Rochester, Michigan   48307

13

14   EICHHORN & EICHHORN

15     David Beach, Esquire

16     200 Russell Street

17     Hammond, Indiana   46320

18

19   Also Present:

20     Robert Sweig, Videographer

21

22

23

24

25
```



100 Mayfair Royal
181 Fourteenth Street
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

DISCOVERY
LITIGATION SERVICES
Court Reporting • Videography • Trial Presentations
Nationwide Coverage

```
 1                    I N D E X

 2  WITNESS                              PAGE

 3  ROBERT C. KAISER

 4  By Mr. Gastel                        11

 5  By Mr. Schramek                      61

 6  By Mr. Krause                        266

 7  By Mr. Gastel                        279

 8  By Mr. Schramek                      288

 9

10             E X H I B I T S

11

12  EXHIBIT          DESCRIPTION         PAGE

13  Exhibit     Saint Thomas Entities' First    12

14  457-1       Amended Notice of Filing of

15              Discovery Subpoenas

16  Exhibit     Amended Notice of Deposition of  12

17  457-2       Liberty Industries, Inc.

18              pursuant to Federal Rules of

19              Civil Procedure 30(b)(6)

20  Exhibit     Cleanroom Certification Report,  24

21  457-3       July 12, 2006

22  Exhibit     Cleanroom Certification Report,  46

23  457-4       October 7, 2005

24  Exhibit     Cleanroom Certification Report,  47

25  457-5       March 6, 2008
```



DISCOVERY
LITIGATION SERVICES
Court Reporting • Videography • Trial Presentations
Nationwide Coverage

100 Mayfair Royal
181 Fourteenth Street
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

| | | | |
|---|---|---|---|
| 1 | Exhibit | Three pages headed "Photographs | 51 |
| 2 | 457-6 | from July 9, 2014 Site | |
| 3 | | Inspection" | |
| 4 | Exhibit | One-page Job Completion Signoff | 56 |
| 5 | 457-7 | Sheet and one-page attached | |
| 6 | | Ameridose Cleanroom Final | |
| 7 | | Punchlist, Bates stamped 003691 | |
| 8 | | through 003692 | |
| 9 | Exhibit | One-page fax memo dated | 57 |
| 10 | 457-8 | August 18, 2006 | |
| 11 | Exhibit | Master Complaint excerpt | 62 |
| 12 | 457-9 | | |
| 13 | Exhibit | Declaration of Dr. Philip J. | 73 |
| 14 | 457-10 | Austin Ph.D. | |
| 15 | Exhibit | Catalog headed Liberty | 113 |
| 16 | 457-11 | Industries, Designers, | |
| 17 | | Manufacturers and Distributors, | |
| 18 | | Bates stamped 001310 through | |
| 19 | | 001420 | |
| 20 | Exhibit | Three-page e-mail chain, Bates | 171 |
| 21 | 457-12 | stamped 008924 through 008926 | |
| 22 | Exhibit | International Standard ISO | 202 |
| 23 | 457-13 | 14644-4 | |
| 24 | Exhibit | International Standard ISO | 286 |
| 25 | 457-14 | 014644-1, -2 and-3 | |



DISCOVERY
LITIGATION SERVICES
Court Reporting • Videography • Trial Presentations
Nationwide Coverage

100 Mayfair Royal
181 Fourteenth Street
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

```
 1    Exhibit      Three-page chart of Liberty        291

 2    457-15       documents

 3

 4    Previously marked exhibits shown to the witness:

 5    EXHIBIT NUMBER                                   PAGE

 6    Exhibit 247                                      117

 7    Exhibit 9                                        157

 8    Exhibit 15                                       161

 9    Exhibit 253                                      178

10    Exhibit 255                                      180

11    Exhibit 17                                       183

12    Exhibit 11                                       217

13

14

15

16

17

18

19

20

21

22

23

24

25
```



DISCOVERY
LITIGATION SERVICES
Court Reporting • Videography • Trial Presentations
Nationwide Coverage

100 Mayfair Royal
181 Fourteenth Street
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

```
 1              MR. GASTEL:  Objection to form.
 2      A.    All right.
 3              BY MR. SCHRAMEK:
 4      Q.    Do you have any reason to dispute that
 5  they shut down in 2012?
 6      A.    No.
 7      Q.    All right.  Assuming they in fact shut
 8  down in 2012, you would agree with me, sir, that
 9  your inspection would have occurred more than a
10  year and a half after NECC ceased operations?
11      A.    Yes.
12      Q.    So when I look at Exhibit 457-6, if you
13  could pull it out for me.
14              (Witness complying.)
15      Q.    I would like to go through each figure,
16  and I want to ask you some questions about each
17  one.  Okay?
18      A.    Okay.
19      Q.    First of all, 457-6 are all pictures that
20  were taken in the 2014 inspection in the summer?
21  Correct?
22      A.    Correct.
23      Q.    What was the temperature inside the
24  cleanroom when you were in there?
25      A.    Oppressively hot and humid.
```



1    Q.    Very hot?  Right?

2    A.    I wouldn't say very hot, but hot.

3    Q.    Were you sweating?

4    A.    No, I don't sweat that easily.

5    Q.    All right.  Was your counsel sweating?

6    A.    No.

7    Q.    The HVAC system was off?  Correct?

8    A.    Correct.

9    Q.    There was no air conditioning in the

10   middle of July when you did your inspection?

11   Correct?

12   A.    Correct.

13   Q.    The cleanrooms had been shut down without

14   any air conditioning for over a year and a half

15   when you did your inspection?  Right?

16         MR. GASTEL:  Objection to the form.

17   A.    If you say so, yes.

18         BY MR. SCHRAMEK:

19   Q.    Do you have any reason to believe that

20   they had been operation in the year and a half

21   previous to your inspection?

22   A.    I have no reason to believe they were or

23   they weren't.  The day we were there, they were not

24   running.

25   Q.    And to your knowledge, no compounding had



DISCOVERY LITIGATION SERVICES
Court Reporting • Videography • Trial Presentations
Nationwide Coverage

100 Mayfair Royal
181 Fourteenth Street
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

1    operations?  Correct?

2        A.    I don't know that.

3        Q.    Do you have any knowledge about whether

4    that tacky mat, the dirty filthy tacky mat in 2014

5    after NECC had been shut down for a year and a

6    half, looked that way when NECC was actually

7    operating two years earlier?

8        A.    No, I don't.

9        Q.    All right.  And the same for figure 3.

10   You can tell me that when you walked in there with

11   no HVAC on in 2014, a year and a half after NECC

12   had been shut down, you can tell me there were two

13   dirty tacky mats as of that time?  Right?

14       A.    Yes, I can.

15       Q.    And you have no idea what those tacky mats

16   looked like when NECC was in operation, do you?

17       A.    No.  But I can allege that they looked

18   like that.

19              MR. SCHRAMEK:  Strike that.

20              BY MR. SCHRAMEK:

21       Q.    Do you have any knowledge of what they

22   looked like when NECC was in operation?

23       A.    No.

24       Q.    I want to talk about ceiling 4 -- figure

25   4, sorry, the ceiling penetrations.  Now you are



DISCOVERY
LITIGATION SERVICES
Court Reporting • Videography • Trial Presentations
Nationwide Coverage

100 Mayfair Royal
181 Fourteenth Street
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

Case 1:13-md-02419-RWZ   Document 2134   Filed 08/04/15   Page 15 of 31

NEW ENGLAND COMPOUNDING PHARMACY INC. PRODUCTS LIABILITY
VIDEOTAPED DEPOSITION OF ROBERT C. KAISER on 07/08/2015                    Page 86

1    taking -- what is this picture supposed to show?

2    What ceiling penetration are you pointing to?

3        A.    You can see the black things coming down

4    from the ceiling.

5        Q.    Well, aren't those extension cords?

6        A.    I have no idea what -- some of them are

7    extension cords, but they were improperly done.

8    There were no escutcheon plates on the tops.

9        Q.    Well, do you see how the extension cords

10   or the cords that are hanging, how they are hanging

11   and then they drop back behind the equipment?

12       A.    From the angle of the picture, yes.

13       Q.    Okay.  Because what had happened here is

14   that someone had plugged in this cord into an

15   outlet, and then strung it over the ceiling, so

16   that they could pull the outlet to the middle of

17   the room?  Right?

18             MR. GASTEL:  Objection to the form.

19       A.    It would appear that way.  Yes.

20             BY MR. SCHRAMEK:

21       Q.    All right.  There are no holes that have

22   been drilled in the actual ceiling tiles?  Correct?

23       A.    In this picture, no.

24       Q.    All right.  And you are seeing that

25   someone has taken an extension cord and strung it



DISCOVERY
LITIGATION SERVICES
Court Reporting • Videography • Trial Presentations
Nationwide Coverage

100 Mayfair Royal
181 Fourteenth Street
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

Case 1:13-md-02419-RWZ   Document 2134   Filed 08/04/15   Page 16 of 31

NEW ENGLAND COMPOUNDING PHARMACY INC. PRODUCTS LIABILITY
VIDEOTAPED DEPOSITION OF ROBERT C. KAISER on 07/08/2015                Page 87

1   over to the middle of the room as of 2014?

2   Correct?

3       A.    Correct.

4       Q.    And once again sitting here today you have

5   no idea what that room looked like when it was in

6   operation and NECC was actually conducting

7   operations two years before?  Right?

8       A.    Correct.

9       Q.    I also want to talk about the rust on the

10  processing equipment, figure 5.  All right?

11      A.    Um-hmm.

12      Q.    Are you with me?

13      A.    I am.

14      Q.    I think we have established it was hot in

15  that room, right, in 2014?

16      A.    We have done that.  Yes.

17      Q.    And there was no HVAC on?  Right?

18      A.    That day there was not.

19      Q.    Very humid in that room?  Right?

20      A.    Very.

21      Q.    And you have no reason to believe that the

22  HVAC had ever been on in the year and a half since

23  NECC had closed?  Correct?

24      A.    No comment.  I don't know.

25      Q.    You don't know.  And if it is a hot room



DISCOVERY
LITIGATION SERVICES
Court Reporting • Videography • Trial Presentations
Nationwide Coverage

100 Mayfair Royal
181 Fourteenth Street
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

Case 1:13-md-02419-RWZ   Document 2134   Filed 08/04/15   Page 17 of 31

NEW ENGLAND COMPOUNDING PHARMACY INC. PRODUCTS LIABILITY
VIDEOTAPED DEPOSITION OF ROBERT C. KAISER on 07/08/2015                Page 88

```
 1    and if it is a humid room and no one is turning on

 2    the HVAC for a year and a half, you are going to

 3    get rust, aren't you?

 4              MR. GASTEL:  Objection to the form.

 5    A.    You would think so.  Yes.

 6              BY MR. SCHRAMEK:

 7    Q.    All right.  So figure 5, rust on

 8    processing proceeding equipment, you can say it was

 9    there in the summer of 2014, but you have no idea

10    what that -- whether there was rust on equipment in

11    2012 when NECC was operating?  Correct?

12    A.    Correct.

13    Q.    The same thing for figure 6, the missing

14    ceiling tile.

15              Do you remember in Dr. Austin's

16    affidavit, if we could go back to that for just a

17    second.

18              (Witness complying.)

19    Q.    He conducted a three-day inspection in

20    December of 2012?  Right?

21              MR. GASTEL:  Objection.  Objection.

22    A.    Yes, he did.

23              BY MR. SCHRAMEK:

24    Q.    And according to his sworn testimony in

25    this proceeding he says it was under the
```



DISCOVERY
LITIGATION SERVICES
Court Reporting • Videography • Trial Presentations
Nationwide Coverage

100 Mayfair Royal
181 Fourteenth Street
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

Case 1:13-md-02419-RWZ   Document 2134   Filed 08/04/15   Page 18 of 31

NEW ENGLAND COMPOUNDING PHARMACY INC. PRODUCTS LIABILITY
VIDEOTAPED DEPOSITION OF ROBERT C. KAISER on 07/08/2015                              Page 89

1    supervision of federal agents and lawyers?  Right?

2              MR. GASTEL:  Objection to the form.

3        A.    That's what it says.  Yes.

4              BY MR. SCHRAMEK:

5        Q.    So when I look at figure 6 and there is a

6    missing ceiling tile, do you know whether or not a

7    federal agent took that with them during their

8    three-day inspection of the facility?

9              MR. GASTEL:  Objection to the form.

10       A.    I don't know.

11             BY MR. SCHRAMEK:

12       Q.    In fact you have no idea whether the

13   ceiling tile was missing when NECC was in

14   operation?  Correct?

15       A.    Correct.

16             MR. HERMES:  Counsel, I note for the

17        record just you used the word "sworn" referring

18        to Exhibit 457-10.  I don't see anything other

19        than the words "respectfully submitted" above a

20        signature which may or may not be that of

21        Dr. Philip J. Austin, Ph.D.

22             MR. SCHRAMEK:  Well, the document is

23        titled "Declaration."  So is it fair if we call

24        it Mr. -- Dr. Austin's declaration?

25             BY MR. SCHRAMEK:



DISCOVERY LITIGATION SERVICES
Court Reporting • Videography • Trial Presentations
Nationwide Coverage

100 Mayfair Royal
181 Fourteenth Street
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

Case 1:13-md-02419-RWZ   Document 2134   Filed 08/04/15   Page 19 of 31

NEW ENGLAND COMPOUNDING PHARMACY INC. PRODUCTS LIABILITY
VIDEOTAPED DEPOSITION OF ROBERT C. KAISER on 07/08/2015                        Page 90

1    Q.    Is that all right?  Is that fair if we

2  call it Dr. Austin's declaration?

3    A.    That's what it says it is, yes.

4    Q.    Okay.  So we don't know whether there is

5  sworn to or not, right, and the only way we would

6  know that is to talk to Dr. Austin?  Fair?

7         MR. GASTEL:  Objection to the form.

8    A.    I would assume so, yes.

9         BY MR. SCHRAMEK:

10   Q.    If we look at figure 7.

11        (Witness complying.)

12   Q.    The full garbage bag at the proceeding

13  equipment, do you have any -- any evidence or any

14  knowledge as to when that garbage bag was placed at

15  the processing equipment?

16   A.    No.

17   Q.    Do you know whether or not that bag of

18  garbage was put by one of the federal agents or

19  lawyers that had inspected in 2012?

20   A.    Highly unlikely.

21   Q.    My question is do you know.

22   A.    No.

23   Q.    All right.  Do you know whether or not

24  that garbage bag was put by a NECC employee as they

25  cleaned up to shut down the cleanroom?



DISCOVERY
LITIGATION SERVICES
Court Reporting • Videography • Trial Presentations
Nationwide Coverage

100 Mayfair Royal
181 Fourteenth Street
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

1      A.      No.

2      Q.      Figure 8, example of blocked return

3  grills, now what you are showing here is a blocked

4  return grid by a shopping cart?  Right?

5      A.      Correct.

6      Q.      And the shopping cart, it has wheels on

7  it?  Correct?

8      A.      Yes.

9      Q.      And it can easily be moved somewhere else?

10 Right?

11     A.      Correct.

12     Q.      And what you are saying is in July of

13 2014, two years after NECC had conducted operations

14 in this cleanroom, somehow a shopping cart got in

15 front of a return grill?  Right?

16     A.      Right.

17     Q.      And you are not the only person who

18 inspected NECC in 2014 of July?  Correct?

19     A.      Correct.

20     Q.      There were people that were coming in

21 before you and there were people who came in after

22 you?  Right?

23     A.      Correct.

24     Q.      And so you have no clue whether that

25 shopping cart was actually in front of that return



100 Mayfair Royal
181 Fourteenth Street
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

```
 1    grill at any point in time during which NECC was

 2    conducting operations?  Correct?

 3                MR. HERMES:  Objection.

 4    A.    Correct.

 5          BY MR. SCHRAMEK:

 6    Q.    Figure 9 is improper piping and rust;

 7    right?  Do you see that?

 8    A.    Yes.

 9    Q.    What room is that in, by the way, the

10    improper piping and rust?

11    A.    I do not recall which room that is in.

12    Q.    All right.  And this is -- but this is the

13    room where you said there was a sink added?  Is

14    that what this is?

15    A.    That is that room, yes.

16    Q.    And as we talked about earlier, a year and

17    a half with no air conditioning, with no humidity

18    control, that can lead to rust?  Right?

19                MR. GASTEL:  Objection to the form.

20    A.    It could.

21          BY MR. SCHRAMEK:

22    Q.    And you have no idea whether or not in

23    2012, two years before, when the compounding that

24    resulted in the contaminated drug occurred, you

25    have no idea if at that point in time any of that
```



DISCOVERY LITIGATION SERVICES
Court Reporting • Videography • Trial Presentations
Nationwide Coverage

100 Mayfair Royal
181 Fourteenth Street
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

Case 1:13-md-02419-RWZ   Document 2134   Filed 08/04/15   Page 22 of 31

NEW ENGLAND COMPOUNDING PHARMACY INC. PRODUCTS LIABILITY
VIDEOTAPED DEPOSITION OF ROBERT C. KAISER on 07/08/2015                    Page 93

1    piping had rust, do you?

2        A.    No, I don't.

3        Q.    Figure 10 is the inoperable Stanley door

4    damaged gasketing.  Again you have no idea what

5    that gasketing looked like two years before when

6    NECC conducted operations?  Right?

7        A.    Correct.

8        Q.    And you know that after NECC was shut down

9    there were federal agents, there were lawyers going

10   in and out, at least in 2012?  Right?

11                  MR. GASTEL:  Objection to the form.

12       A.    Right.

13             BY MR. SCHRAMEK:

14       Q.    And you don't know if any one of those

15   broke it or pulled the gasket out or looked at the

16   gasket?  Right?

17       A.    Correct.

18       Q.    The filthy autoclave, figure 11, again you

19   have no idea what that autoclave looked like in

20   2012, two years before you conducted your

21   inspection?  Right?

22       A.    Correct.

23       Q.    And the same with the ceiling tile

24   figure 12.  I believe what figure 12 is showing is

25   that there is silver tape around the edge of the



DISCOVERY
LITIGATION SERVICES
Court Reporting • Videography • Trial Presentations
Nationwide Coverage

100 Mayfair Royal
181 Fourteenth Street
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

1    ceiling tile.  Right?

2        A.     Correct.

3        Q.     Again you have no idea how that silver

4    tape got there?  Right?

5        A.     Right.

6        Q.     You have no idea whether that silver tape

7    was there when NECC was actually conducting

8    operations in this cleanroom?  Right?

9        A.     Right.

10       Q.     Is it fair to say figure -- I am sorry.

11   We are not done.  Let's turn the page.

12                  (Witness complying.)

13       Q.     Figure 13 is the improper -- what you call

14   improper ceiling penetrations, and this one shows

15   some -- an electrical plate from where that cord is

16   coming down.  Right?

17       A.     Right.

18       Q.     And that electrical plate appears to be on

19   the wall -- is it on the wall or the ceiling?  Do

20   you know?

21       A.     I don't know.

22       Q.     Okay.  You have no idea how that

23   electrical plate got there or when it was

24   installed?  Right?

25       A.     No.



Case 1:13-md-02419-RWZ   Document 2134   Filed 08/04/15   Page 24 of 31

NEW ENGLAND COMPOUNDING PHARMACY INC. PRODUCTS LIABILITY
VIDEOTAPED DEPOSITION OF ROBERT C. KAISER on 07/08/2015                      Page 95

1    Q.    All right.  The missing door sweeps,

2  figure 14, essentially figure 14 is saying that

3  usually at the bottom of a door there is basically

4  it looks like a little broom, the bristles of a

5  broom, or it could be a solid piece of rubber that

6  kind of hugs the floor?  Right?

7    A.    Right.

8    Q.    And the purpose of that is when you open

9  it, it is supposed to hug the floor, and it can --

10  it doesn't allow anything underneath the door to

11  blow in?  Right?

12    A.    Right.

13    Q.    In fact a lot of times you will see that

14  at the bottom of a shower?  Right?  A glass shower

15  will have one?

16    A.    Right.

17    Q.    What you are saying is in 2014, two years

18  after NECC had conducted its operations, this door

19  depicted in figure 14 did not have a door sweep?

20  Right?

21    A.    That is correct.

22    Q.    You have no idea whether there were door

23  sweeps there when NECC was in operation?  Right?

24    A.    Correct.

25    Q.    And you have no idea whether or not the



Case 1:13-md-02419-RWZ   Document 2134   Filed 08/04/15   Page 25 of 31

NEW ENGLAND COMPOUNDING PHARMACY INC. PRODUCTS LIABILITY
VIDEOTAPED DEPOSITION OF ROBERT C. KAISER on 07/08/2015                    Page 96

1    federal agents or Department of Justice took those

2    door sweeps to conduct tests on them?  Right?

3        A.    Correct.

4        Q.    Figure 15, the same thing.  Another

5    overflowing garbage bag.  It was overflowing in

6    July '14, two years after NECC shut down?  Right?

7        A.    Correct.

8        Q.    You have no idea when it got there or who

9    put it there?  Right?

10       A.    Correct.

11       Q.    No idea whether a garbage bag was

12   overflowing when NECC was in operation?  Right?

13       A.    Correct.

14       Q.    In fact have you reviewed security footage

15   of NECC that is available from September and

16   October of 2012?

17       A.    I have not.

18       Q.    So you haven't done any analysis to see if

19   in fact the security camera for this very room,

20   which is the prep room, shows an overflowing

21   garbage bag, have you?

22             MR. GASTEL:  Objection to the form.

23       A.    No.

24             BY MR. SCHRAMEK:

25       Q.    Would it surprise you if the jury saw the



DISCOVERY
LITIGATION SERVICES
Court Reporting • Videography • Trial Presentations
Nationwide Coverage

100 Mayfair Royal
181 Fourteenth Street
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

Case 1:13-md-02419-RWZ   Document 2134   Filed 08/04/15   Page 26 of 31

NEW ENGLAND COMPOUNDING PHARMACY INC. PRODUCTS LIABILITY
VIDEOTAPED DEPOSITION OF ROBERT C. KAISER on 07/08/2015                    Page 105

```
 1        A.      But as a comment to my understanding of
 2    what happened is when NECC was shut down it was
 3    almost immediate, and everyone vacated the
 4    premises, which leaves credence to my allegation
 5    that these pictures represent what the building was
 6    like when they left --
 7        Q.      So --
 8        A.      -- in 2012.
 9        Q.      You will agree with me that Dr. Austin
10    doing an inspection in December of 2012 would have
11    better information as to what it looked like than
12    you do for your July 14 inspection?
13        A.      That is correct.
14        Q.      All right.
15        A.      Does he have pictures?
16        Q.      I am hoping to find out.
17        A.      So would we.
18        Q.      So and do you notice here on paragraph 33
19    of Dr. Austin's declaration, he in fact says that
20    the purpose of the investigation was to document
21    the conditions of the facility?  Right?
22                MR. GASTEL:  Objection to the form.
23        A.      Yes.
24                BY MR. SCHRAMEK:
25        Q.      So if we knew what he saw in December of
```



DISCOVERY
LITIGATION SERVICES
Court Reporting • Videography • Trial Presentations
Nationwide Coverage

100 Mayfair Royal
181 Fourteenth Street
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

1    2012 and we could compare it to what you saw in

2    July of '14, we would be able to see what the

3    differences were?  Fair?

4                    MR. GASTEL:  Objection to the form.

5        A.    That would be fair.

6              BY MR. SCHRAMEK:

7        Q.    All right.

8        A.    And again I allege what he saw or would

9    have seen is what we saw a year and a half later.

10       Q.    By the way, when you say it is your

11   understanding that NECC immediately left the

12   premises upon being shut down --

13       A.    They were ordered by the government get

14   out.

15       Q.    What is the basis of that understanding?

16       A.    I do not know specifically where I heard

17   that.

18       Q.    All right.  So you don't know who you

19   heard it from?

20       A.    No.

21       Q.    Someone said it?  Right?

22       A.    It was either in a news report.  There was

23   possibly on the 60 Minute expose.  But the

24   explanation was that the government came and

25   basically closed the doors as is.



DISCOVERY
LITIGATION SERVICES
Court Reporting • Videography • Trial Presentations
Nationwide Coverage

100 Mayfair Royal
181 Fourteenth Street
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

```
 1       Q.    I would like you to now turn to exhibit --
 2   strike that -- to page 16 of Dr. Austin's
 3   declaration.
 4                   (Witness complying.)
 5       A.    Okay.
 6       Q.    How long was your inspection in 2014?
 7       A.    Probably four to six hours.
 8       Q.    All right.  Did you have a time frame in
 9   which you were supposed to be there to do the
10   inspection?
11       A.    We had I will use the word an appointment
12   with Steve Higgins, the building manager, at I
13   believe nine o'clock, and we were out by one-ish.
14       Q.    So nine to one-ish is about four hours?
15   Right?
16       A.    Yes.
17       Q.    And then someone else was going to be
18   coming in that afternoon after you?  Right?
19       A.    If I am not mistaken, it was you.
20       Q.    That's correct.  It was me.
21             And in fact isn't it true that the
22   trustee -- if you know -- isn't it true that the
23   trustee initially fought Liberty's attempt to look
24   at the premises?
25       A.    I was aware of that, yes.
```



DISCOVERY
LITIGATION SERVICES
Court Reporting • Videography • Trial Presentations
Nationwide Coverage

100 Mayfair Royal
181 Fourteenth Street
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

Case 1:13-md-02419-RWZ    Document 2134    Filed 08/04/15    Page 29 of 31

NEW ENGLAND COMPOUNDING PHARMACY INC. PRODUCTS LIABILITY
VIDEOTAPED DEPOSITION OF ROBERT C. KAISER on 07/08/2015                    Page 109

1    Q.    And in fact, didn't the trustee purport

2    and claim that going to the premises in 2014 would

3    be irrelevant because it has -- it does not reflect

4    the way it looked under operation?

5                   MR. GASTEL:  Objection to the form.

6    A.    That is their position.  Correct.

7                   BY MR. GASTEL:

8    Q.    And yet the Court allowed you in 2014 to

9    go look at those premises over the trustee's

10   objection?  Right?

11   A.    Yes.

12   Q.    Did you get up on the walkable ceiling and

13   look at the roof -- the ceiling of the cleanrooms

14   from the top?

15   A.    Personally, I did not.

16   Q.    Did anyone else?

17   A.    I'm not sure.

18   Q.    But sitting here today, you are unaware of

19   anyone who got up on the ceiling to look at the

20   grid system?

21   A.    Specifically I can't say anyone did.  No.

22   Q.    Okay.  Did you see any access that was

23   provided to the ceiling grid system when you were

24   there?

25   A.    Not that I am aware of.



DISCOVERY
LITIGATION SERVICES
Court Reporting • Videography • Trial Presentations
Nationwide Coverage

100 Mayfair Royal
181 Fourteenth Street
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

1    Q.    Did anyone show you how to get up on the

2    ceiling grid system while you were there?

3    A.    Not that I am aware of.

4    Q.    And only having four hours instead of

5    three days, that limited the extent of an

6    inspection that you could do?  Right?

7    A.    Correct.

8    Q.    And at the time -- could you turn to the

9    page 23 of Dr. Austin's declaration?

10                   (Witness complying.)

11    Q.    What date did he file this declaration or

12    sign this deck?

13    A.    December 22, 2014.

14    Q.    So when you went in July of '14 over the

15    trustee's objection to do this inspection, you

16    didn't have the benefit of Dr. Austin's allegations

17    in this declaration, did you?

18                   MR. HERMES:   Objection.

19    A.    I think we may have had parts of this at

20    that time.

21               BY MR. SCHRAMEK:

22    Q.    Liberty may have had parts of it?

23    A.    Yes.

24    Q.    All right.  So if we -- you understand

25    this was filed with the court after the inspection?



Case 1:13-md-02419-RWZ   Document 2134   Filed 08/04/15   Page 31 of 31

NEW ENGLAND COMPOUNDING PHARMACY INC. PRODUCTS LIABILITY
VIDEOTAPED DEPOSITION OF ROBERT C. KAISER on 07/08/2015                    Page 292

1                        CERTIFICATE

2

3

4            I, Judith McGovern Williams, a Notary

5    Public, do hereby certify:

6            That ROBERT C. KAISER, the witness whose

7    deposition is hereinbefore set forth, was duly

8    sworn by me and that such deposition is a true

9    record of the testimony given by the said witness.

10           IN WITNESS WHEREOF, I have hereunto set my

11   hand this 13th day of July, 2015.

12
                    Judith McGovern Williams
13                  Judith McGovern Williams

14           Judith McGovern Williams

15           Registered Professional Reporter
                Certified Realtime Reporter
16              Certified LiveNote Reporter
         Certified Shorthand Reporter No. 130993
17

18
     My Commission expires:
19
     May 5, 2017
20

21

22

23

24

25



DISCOVERY
LITIGATION SERVICES
Court Reporting • Videography • Trial Presentations
Nationwide Coverage

100 Mayfair Royal
181 Fourteenth Street
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com