UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                        )
IN RE: NEW ENGLAND                      )
COMPOUNDING PHARMACY, INC.              )
PRODUCTS LIABILITY LITIGATION           )       MDL No. 13-2419-RWZ
                                        )
This Document Relates To:               )
                                        )
        All New Jersey Cases            )
_____)

ORDER ON MOTION OF INSPIRA HEALTH NETWORK, INC. AND INSPIRA MEDICAL
CENTERS, INC. FOR A PROTECTIVE ORDER PURSUANT TO FED. R. CIV. P. 26(c)
[Docket No. 2000]

August 6, 2015

Boal, M.J.

        Defendants Inspira Health Network, Inc.; Inspira Medical Centers, Inc.; Joseph

Alessandrini; and Paul Abrams (collectively, "Inspira") have moved for a protective order

precluding the Premier Defendants[1] from taking their depositions.  Docket No. 2000.  For the

following reasons, the Court grants in part and denies in part the motion.

I.      FACTUAL BACKGROUND

        Inspira is a New Jersey non-profit organization that, at the time of the meningitis

outbreak at issue in these cases, owned and operated two hospitals in New Jersey that received

NECC's tainted MPA.  Docket No. 2000-1 at 2.  Joseph Alessandrini is the chief pharmacist at

Inspira Medical Center.  Docket No. 2087 at 2.

_____

[1] The "Premier Defendants" refer to Premier Orthopaedic and Sports Medicine Associates of
Southern New Jersey, LLC, trading as Premier Orthopaedic Associates; Premier Orthopaedic
Associates Surgical Center, LLC; Kimberley Yvette Smith, M.D., a/k/a Kimberley Yvette Smith-
Martin, M.D.; Thomas Dwyer, M.D.; Richard C. DiVerniero, M.D.; John Catalano, M.D.; and
Richard Strauss, M.D.

1

The Premier Defendants provided their patients with pain management treatment, including the NECC MPA injections at issue, at their own facilities.  Docket No. 2000-1 at 3. Inspira maintains that it had no involvement in "how [the Premier Defendants] ordered, stored, administered, or otherwise handled NECC MPA" at their own facilities.  Id.

In addition to administering injections at their own facilities, the Premier Defendants also provided their patients with pain management treatment, including the tainted NECC MPA injections at issue, at Inspira's hospitals.  Id.; see also Docket No. 2087 at 3.  The Premier Defendants maintain that the NECC MPA they injected at Inspira's hospitals was purchased, approved, and stored by Inspira pursuant to Inspira's policies.  Docket No. 2087 at 3.

There are currently 56 cases in this MDL in which the Premier Defendants were named as defendants.  Docket No. 2000-1 at 3; see also Docket No. 2087 at 2.  Inspira was named as a defendant in 21 of the 56 cases.  Docket No. 2001-1 at 4; Docket No. 2087 at 2.

On January 6, 2014, the District Court entered an order staying all discovery against Inspira in light of its participation in mediation.  Docket No. 740.  The order provided, inter alia, that "all discovery in the MDL is stayed as to Inspira during the pendency of the mediation and will resume upon the termination of the mediation without a settlement or further order of the Court."  Id. at ¶ 1.

On December 3, 2014, Inspira executed a settlement agreement resolving all claims against NECC's bankruptcy estate, the MDL cases against Inspira, and any and all current and future tort claims against Inspira.  Docket No. 2001-1 at 5.  The Bankruptcy Court approved the settlement on May 20, 2015.  Id.  By its terms, the order staying discovery against Inspira remains in place until further order of the District Court.  Docket No. 740 at ¶ 1.

On June 18, 2015, the District Court issued an Order to Show Cause Concerning

Dismissal of Claims Against Settling Defendants.  Docket No. 1992.  The Order recognizes that

settling defendants, including Inspira, received general releases and/or channeling injunctions

pursuant to the Bankruptcy Court's order.  Id. at 2.  It also states, in relevant part:

> It is the intention of this Court to dismiss with prejudice all claims of any type
> against the above-referenced settling defendants in all cases currently pending in
> this MDL.  To accomplish this task in an orderly, cost-effective and efficient
> manner, this order is issued as a "show cause" order in which a failure to respond
> by the due date will be treated as a failure to object to dismissal, and will result in
> the dismissal of the claims consistent with the terms of the Plan.  It is hereby
> ORDERED that:
> …
> On July 3, 2015 [], all claims against the above-referenced defendants in all cases
> currently pending in this MDL in which no objection was filed will be dismissed
> with prejudice.

Id. at 2-3.  No objections were filed with respect to Inspira.  Therefore, as discussed at the

August 5, 2015 status conference, the District Court will issue an order dismissing with prejudice

the claims against Inspira (and the other settling defendants).

The Premier Defendants have served a notice of deposition for testimony from

Alessandrini and a corporate designee of Inspira Medical Center, Inc. and Inspira Health System,

Inc.  Docket No. 2087 at 2.  On June 22, 2015, Inspira moved for a protective order precluding

the depositions.  Docket No. 2000.  The Premier Defendants filed an opposition on July 16,

2015.  Docket No. 2087.  On July 24, 2015, Inspira filed a reply.  Docket No. 2098.  The Court

heard oral argument on August 5, 2015.

II.     ANALYSIS

    A.     Standard Of Review

"Discovery procedures set forth in the Federal Rules of Civil Procedure seek to further

the interests of justice by minimizing surprise at trial and ensuring wide-ranging discovery of

information." Cartel Asset Mgmt. v. Ocwen Fin. Corp., No. 01-cv-01644, 2010 WL 502721, at

*9 (D. Colo. Feb. 8, 2010) (citing United States ex rel. Schwartz v. TRW, Inc., 211 F.R.D. 388,

392 (C.D. Cal. 2002)).  To that end, Rule 26(b) permits "discovery regarding any nonprivileged

matter that is relevant to any party's claim or defense . . ."  Fed. R. Civ. P. 26(b)(1).  "Relevant

information need not be admissible at the trial if the discovery appears reasonably calculated to

lead to the discovery of admissible evidence."  Id.  Rule 26(b)(1) generally permits liberal

discovery of relevant information.  Baker v. Liggett Group, Inc., 132 F.R.D. 123, 125 (D. Mass.

1990).  As the Supreme Court has instructed, because "discovery itself is designed to help define

and clarify the issues," the limits set forth in Rule 26 must be "construed broadly to encompass

any matter that bears on, or that reasonably could lead to other matters that could bear on, any

issue that is or may be in the case."  Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351

(1978).

There are limits, however, on the scope of discovery.  A court must limit discovery if it

determines that the discovery sought is (1) unreasonably cumulative or duplicative, or is

obtainable from some other source that is more convenient, less burdensome, or less expensive;

(2) the party seeking discovery has had ample opportunity by discovery in the action to obtain

the information sought; or (3) the burden or expense of the proposed discovery outweighs its

likely benefit, taking into account the needs of the case, the amount in controversy, the parties'

resources, the importance of the issues at stake in the litigation, and the importance of the

projected discovery in resolving the issues.  See Fed. R. Civ. P. 26(b)(2)(C).

In addition, courts may issue protective orders when appropriate.  Rule 26(c)(1) provides

that "[a] party or any person from whom discovery is sought may move for a protective order in

the court where the action is pending. . . . The court may, for good cause, issue an order to

protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . . ." Fed. R. Civ. P. 26(c)(1). Rule 26 "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984). "As specified in [Rule] 26(c), however, a showing of good cause is required to justify any protective order." Baker, 132 F.R.D. at 125 (citing Anderson v. Cryovac, Inc., 805 F.2d 1, 7 (1st Cir. 1986)). The party seeking a protective order has the burden of demonstrating good cause. Cartel Asset Mgmt., 2010 WL 502721, at *10 (D. Colo. Feb. 8, 2010).

B.     Stay Of Discovery As To Inspira

As a preliminary matter, Inspira is correct that under the District Court's January 6, 2014 order, discovery as to Inspira continues to be stayed. Nevertheless, the Court finds that the stay should be lifted at this time. The purpose of the order, disallowing discovery to allow Inspira to focus on settlement discussions, has now been achieved. Settling defendants are not immune absolutely from complying with discovery requests so long as such discovery is not used to pursue direct claims against the settling defendants. See, e.g., In re New England Compounding Pharmacy, Inc., Bankruptcy Case No. 13-19882 (Bankr. D. Mass.) at Docket No. 1029. Accordingly, the Court finds that Premier should not be precluded from obtaining relevant discovery from Inspira.

C.     The Court Denies Inspira's Motion But
       Modifies Some Of The Rule 30(b)(6) Topics

Inspira draws a distinction between cases in which it was a party and those in which it was not. Inspira argues that the Premier Defendants are not entitled to depose Inspira in the 35 cases in which Inspira was not a party. Docket No. 2001-1 at 10. Inspira appears to argue that it has no relevant information concerning those cases because it was not involved with the Premier

Defendants' ordering, storing, handling, or administration of NECC's MPA to Premier's patients who received NECC MPA at one of Premier's facilities.  Docket No. 2001-1 at 10-12; Docket No. 2098 at 2-4.[2]  Here, this argument would be more appropriately addressed to depositions in the case-specific discovery phase.  The Premier Defendants allege that they purchased NECC MPA on Inspira's recommendation and that the vetting process included the Premier doctors' years of experience using NECC MPA at Inspira while performing injections at Inspira.  Docket No. 2087 at 4.  While Inspira may deny those allegations, the Premier Defendants should have the opportunity to probe them through discovery.  In any event, as Inspira appears to possess relevant information regarding those cases in which it was named as a party, this argument does not support the preclusion of the deposition altogether.  Rather, the Court modifies the topics of deposition as set forth below.

Second, Inspira argues that the discovery the Premier Defendants seek is case-specific discovery, which has not yet started.  Docket No. 2000-1 at 12.  The Court disagrees.

MDL Order No. 9 defines "common issues" as issues that pertain to all or a substantial number of cases in the MDL.  Docket No. 1425 at 1, n. 1.  "Case specific" issues, on the other hand, are issues that pertain to a single case or a small number of cases, such the amount of physical harm an individual patient suffered as a result of Defendants' alleged wrongdoing or statements made by Defendants to a particular Plaintiff.  Id.  The issues raised by the Premier Defendants' notice of deposition appear to pertain to all New Jersey cases, rather than cases involving any one plaintiff.  Accordingly, the Court finds that the depositions the Premier Defendants seek involve common issues and may proceed at this time.

---

[2] To the extent that Inspira argues that it should not be subject to discovery because it is not a party to those cases, it is incorrect.  See, e.g., Fed. R. Civ. P. 30(a) ("A party may, by oral questions, depose any person, including a party . . .") (emphasis added).

Finally, Inspira argues that a number of the topics contained in the Premier Defendants' Rule 30(b)(6) deposition notice are overly broad and request discovery of irrelevant information or information that is otherwise privileged and confidential.  Docket No. 2000-1 at 15.  After review of the contested topics and the parties' arguments, the Court modifies the topics as follows:

- Topic No. 7 shall be limited to documents, correspondence, emails, electronically stored documents, letters, memoranda or other documents concerning the ordering of MPA from NECC;

- Topic No. 8, requesting testimony regarding all documents, correspondence, emails, electronically stored documents, letters, memoranda, pictures, drawings, notes or other items produced to the PSC, whether formally or informally, is stricken.  This request seeks information that is protected by the District Court's Mediation Order. The Mediation Order prohibits the disclosure of any information produced or exchanged in connection with the mediation.  Docket No. 394 at 6-7.

- Topic No. 9 shall be limited to documents, correspondence, emails, electronically stored documents, letters, memoranda, pictures, drawings, notes or other items produced to the Department of Justice, FBI, FDA or other investigative authority concerning NECC, MPA or the outbreak.

- Topic No. 14 shall be limited to contacts and/or communications either written or oral or electronically or otherwise between Inspira and Premier concerning NECC, MPA, or the outbreak.

The Court finds that the remaining contested topics (Topics Nos. 5, 11, 12, 13) seek

relevant information.  Finally, the deposition shall be limited to the time period January 1, 2009

to December 31, 2012.

II.   ORDER

For the foregoing reasons, Inspira's motion for a protective order is granted in part and

denied in part.

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge