UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION )))))  THIS DOCUMENT RELATES TO: )) Suits Naming the Tennessee Clinic Defendants ))) | Dkt. No 1:13-md-2419 (RWZ) |

**TENNESSEE CLINIC DEFENDANTS'**
*MEMORANDUM OF LAW IN SUPPORT OF*
*MOTION TO REVISE (OR TO RECONSIDER)*
**ORDER GRANTING THE TRUSTEE A PROTECTIVE ORDER PRECLUDING THE TENNESSEE CLINIC DEFENDANTS FROM DEPOSING NECC**

## 1. Introduction

On July 31, 2015, the Court granted the Trustee's request for a protective order, quashing the Tennessee Clinic Defendants' Rule 30(b)(6) Notice of Deposition to NECC.[1] The Tennessee Clinic Defendants respectfully request reconsideration and revision of the Court's ruling at Dkt. 2123.

This request for reconsideration is not a mere repetition of arguments previously submitted. The Tennessee Clinic Defendants move the Court to reconsider based on (1) information on costs to the estate not available at the time of earlier briefing and argument and (2) the Tennessee Clinic Defendants' revised Rule 30(b)(6) notice. The Tennessee Clinic Defendants move the Court to reconsider and revise its order at Dkt. 2123 and permit a deposition of NECC on the limited topics in the revised notice.[2]

---

[1] The original Notice of Deposition is at Dkt. 1782-1.
[2] The proposed revised notice is attached as exhibit 1 to this motion.

## 2. Summary of argument

The Trustee banked much of his argument in support of the NECC Motion for Protective Order on unspecified claims of cost. Insisting that the NECC estate would have to bear the cost of educating a former employee or other person to testify on its behalf, the Trustee argued that the unspecified cost was an unreasonable burden because the desired information is available from other, unidentified sources, and that preparing a witness depletes the estate available to pay claimants.[3] The Court cited that argument in its order granting the protective order, indicating the Court relied upon it (at least in part) in granting the Trustee's motion.[4]

Two reasons require the Court to revisit and revise its order quashing the NECC 30(b)(6) deposition notice:

First, since the hearing on NECC's Motion for Protective Order, all now know the total amounts of professional fees requested to be paid by the estate. These totals demonstrate that the marginal cost of preparing a 30(b)(6) witness would not substantially deplete the estate when considered in the context of the overall professional fees charged. This is particularly true when the marginal cost is weighed against the value of the testimony to the trial of the civil cases.[5]

---

[3] Dkt. 1811, p. 6-7; Boal hearing, 5/28/15, p. 30-31 ("And last and I think maybe importantly is cost").
[4] Dkt. 2123, p. 18-19 ("One of the Trustee's main responsibilities in the bankruptcy case was to marshal the assets of NECC for distribution to creditors, including the victims of the outbreak….[P]reparing a Rule 30(b)(6) witness would be an extraordinary undertaking. Every dollar spent by the Trustee and/or his counsel investigating the topics listed in the Rule 30(b)(6) notice and preparing a witness with no prior knowledge of those topics results in one less dollar available to the victims").
[5] See In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig., 669 F.2d 620, 623 (10th Cir. 1982) ("[t]he relevance of the requested documents is not an issue in this case. Hence, the appropriate balancing test does not concern the relevance of the information sought vis-a-vis the burden imposed upon the responding party. Rather, we are concerned with the burden imposed upon the responding party if a protective order is not granted as compared with the burden imposed upon the requesting party if a protective order imposing conditions is granted").

Second, the Tennessee Clinic Defendants have redrawn their 30(b)(6) notice. The narrowed notice reduces cost and narrows the risk of self-incrimination. The topics in the revised notice (1) do not reasonably impact the criminal proceedings, (2) emphasize acquisition of information that the Tennessee Clinic Defendants cannot reasonably obtain from other sources, and (3) are very narrowly focused to minimize the financial burden on the estate.

For these two (2) reasons, the Tennessee Clinic Defendants respectfully move the Court to revise its ruling to allow the Tennessee Clinic Defendants to take a deposition of NECC on limited topics, as set out in the proposed revised notice.[6]

### 3. Procedural background

The Tennessee Clinic Defendants served NECC with a Rule 30(b)(6) notice on April 17, 2015.[7] The Trustee, acting for NECC, filed a motion for protective order on May 1, 2015.[8] The Court granted the motion for protective order on July 31, 2015.[9] The Court set out a more detailed background relevant to the Court's ruling on NECC's Motion for Protective Order at Dkt. 2123. It will not be repeated here.

---

[6] Exhibit 1.
[7] Dkt. 1782.
[8] Dkt. 1810.
[9] Dkt. 2123.

**4. Law**

Federal Rule of Civil Procedure 54(b) allows a district court to revisit interlocutory orders at any time:

> (b) When an action presents more than one claim for relief – whether as a claim, counterclaim, crossclaim, or third-party claim – or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, <u>any order</u> or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all claims and all the parties' rights and liabilities.[14]

"In this Circuit, 'interlocutory orders from which no immediate appeal may be taken…'remain open to trial court reconsideration' until the entry of judgment.'…[A] motion to reconsider an interlocutory order should be granted 'only when the movant demonstrates (1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error of law in the first order.'"[15] [16]

---

[14] FED. R. CIV. P. 54(b) (emphasis added).
[15] *Federal Home Loan Bank of Boston v. Ally Fin.*, No. 11-10952-GOA (September 30, 2014).
[16] The Court also has the authority to modify protective orders. *See Miller v. City of Boston*, 549 F.Supp.2d 140, 141-42, n. 4 (D. Mass. 2008). Thus, the Court may also consider this a motion to modify the protective order in place.

4

## 5. Argument

### a. The requests for professional fees submitted for approval, not available at the time the Court ruled on NECC's Motion for Protective Order, demonstrate that the marginal cost of a deposition of NECC would not be an "extraordinary" cost or an "unreasonable burden" on the estate's "limited resources," particularly a deposition on the limited topics proposed in the revised notice.

At the time of the argument and ruling on the Motion for Protective Order, the Tennessee Clinic Defendants and Court did not have the benefit of the subsequent fee requests submitted by the Trustee and his lawyers, for payment by the estate, so as to put the Trustee's financial burden argument into context. The multi-million dollar requests for payments of fees made by the Trustee, his counsel, and other advisors, describing charges sought to be imposed on the patients, as well as the data demonstrating the time spent to avoid the deposition, warrant careful reexamination of the financial burden argument.

#### i. The testimony of NECC is necessary to defend the cases.

There can be no dispute that the information held by NECC is both relevant to the Tennessee Clinic Defendants' defense of the claims against them and of indispensable importance to multiple trial defenses (and not just comparative fault). <u>The Tennessee Clinic Defendants cannot adequately defend these cases without testimony from NECC.</u> <u>The testimony of NECC is *absolutely necessary* to a convincing defense of the cases.</u>

One particular point should be revisited briefly:

The Trustee[17] and the PSC[18] repeat in unison that a deposition of NECC is only relevant to establishing NECC's (comparative) fault, apparently hoping that repetition will establish its truth, and that this will sway the Court to conclude that a deposition of NECC is not at all important or necessary. NECC's testimony *is* relevant on NECC's fault. The point apparently missed thus far is that *the same testimony is also relevant on many other issues*, which the Trustee and PSC either refuse to recognize or choose to ignore.[19]

A simple example demonstrates the importance of the deposition beyond proof of comparative fault by NECC. The Tennessee Clinic Defendants seek to establish, through the testimony of NECC, that *thousands* of health care provider customers *did not do* what the PSC claims was the "due diligence" required of any purchaser. This cannot be effectively or efficiently established through other witnesses or through documents. Sworn testimony is required. Only NECC can provide it.

A second example, also not at all related to NECC's comparative fault, is readily apparent. The Tennessee Clinic Defendants seek to establish, through the testimony of NECC, what information NECC would have provided to a customer in 2012, to rebut the claim that the Tennessee Clinic Defendants should have requested certain information before purchasing. The unique, indispensable source for this information is NECC.

---

[17] Dkt. 1811, p. 9 ("Here, under the guise of seeking discovery into comparative fault, have served an unreasonably burdensome Rule 30(b)(6) deposition notice on NECC").
[18] Dkt. 2055, p. 6 ("The Tennessee Defendants are aggressively seeking discovery from the Comparative Fault Parties in order to bolster their comparative fault defenses purportedly available under state law and thereby reduce Plaintiffs' recoveries"); p. 10 ("The more money that the PCO expends contending with the Tennessee Defendants' so-called comparative fault discovery, the less money will ultimately pour into the Tort Trust for the benefit of tort victims"). Of note, it is "so-called" by the PSC, despite it not being simply "comparative fault discovery."
[19] The PSC and Trustee *must* realize that discovery of NECC is relevant on more than just comparative fault, despite the insistent sleight of hand misrepresenting it as mere "comparative fault discovery."

The Tennessee Clinic Defendants have furnished other examples of NECC testimony indispensable to the civil cases against them.[20]

>> ii. **The professional fees to be paid out of the estate demonstrate that the marginal cost to prepare a Rule 30(b)(6) witness, relative to the total amount of professional fees, does not represent an unreasonable financial burden, particularly on the revised topics.**

The Court's entry of a protective order in favor of NECC, at least in part, was based on the cost to the estate to prepare a 30(b)(6) witness to testify, which the Trustee and PSC passionately argued would be taken from the deserving hands of injured tort creditors. Since the Court's ruling on the Trustee's Motion for Protective Order, the Trustee, his counsel, and other advisors filed applications for compensation and reimbursement for expenses incurred as a result of the administration of the NECC estate, moneys to be deducted from that available to the same injured parties. These include:

- Unsecured Creditors Committee ("UCC") counsel: $3,693,086.25[24]
- Counsel to individuals on UCC: $3,055,121.02[25]
- Insurance coverage counsel to UCC: $100,000.00[26]
- Counsel to the NECC Trustee: $4,361,725.55[27] [28]
- Special counsel to NECC: $1,374,913.50[29]
- Special bankruptcy counsel to NECC: $211,124.00[30]
- Verdolino & Lowey, PC (accountants to NECC): $129,500.77[31]
- Mesirow Financial Consulting, LLC: $506,284.80.[32]

---

[20] See Dkt. 1862, p. 3-5.
[24] Bankruptcy Dkt. 1414.
[25] Bankruptcy Dkt. 1415.
[26] Bankruptcy Dkt. 1416.
[27] Bankruptcy Dkt. 1413.
[28] The Trustee also submitted a claim for $5,758,256.97 in fees (Bankruptcy Dkt. 1420).
[29] This has been periodically requested for approval: Bankruptcy Dkts. 613, 678, 716, 981, 1049, 1113, 1376. Although, admittedly, NECC's counsel may have been paid by an insurer.
[30] Bankruptcy Dkt. 1422.
[31] Bankruptcy Dkt. 1458.
[32] Bankruptcy Dkt. 1412.

Arguing that the cost to the estate to prepare a single deposition witness is an unreasonable financial burden is incongruous with charges to the estate for more than $10,000,000.00 in professional fees. The financial burden to the estate for a 30(b)(6) deposition of NECC pales in comparison to the total amount of fees requested. These numbers, not available at the time the Court made its ruling on NECC's motion, severely undercut the argument that the estate, and the ultimate beneficiaries of the estate, will be irreparably and materially harmed if it has to select and prepare a corporate witness.

Two additional, specific points should be made:

First, while the Trustee argues that it would unreasonably financially burden the estate to spend money allocated for injured plaintiffs preparing and presenting a NECC witness to testify, the Trustee's counsel charged the estate for almost 50 hours to fight the Tennessee Clinic Defendants' Rule 30(b)(6) notice. One can reasonably conclude that 50 hours of professional time would have gone a long way toward finding and preparing a witness.[33] [34]

---

[33] Dkt. 1413-12.

[34] The Tennessee Clinic Defendants have requested an estimate from the Trustee on how much time it will take to prepare a witness, in an attempt to confer on this issue, but has not been provided this information. (*See* attached as exhibit 2 the July 21, 2015, meet and confer request letter.) The Trustee has submitted no affidavit detailing the time and expense to prepare a witness. *See Groupwell Int'l (HK) Ltd. v. Gourmet Exp., LLC*, 277 F.R.D. 348, 360 (W.D. Ky. 2011) ("[a] responding party must show specifically how each discovery request is burdensome and oppressive by submitting affidavits or offering evidence revealing the nature of the burden. The mere statement by a party that an interrogatory or request for production is overly broad, burdensome, oppressive and irrelevant is not adequate to voice a successful objection") (citing other cases, additional cites omitted).

Second, the billing entries from March 1, 2015 to June 4, 2015, submitted to the bankruptcy court for approval detail *no* attempt to contact the dozens of NECC former employees to gauge whether they will agree to testify as a NECC representative or whether they will agree to educate a representative on the topics noticed.[35] [36]

This lack of any explanation for the effort made to find and prepare or the expected cost associated with finding and preparing a witness is important because NECC had, according to one document, 25-30 employees[37], according to another, at least 20 clinical staff[38], and according to a third, 75 employees[39]. Also, one former employee testified in the Virginia cases.

Thus, there are dozens of former employees available to educate a witness or testify as the representative; yet, nothing in the record reflects any specific support for the Trustee's conclusive statement that, "NECC has no officers, director, managing agents or others who have knowledge of the Deposition Topics and who will consent to testify on NECC's behalf."[40] [41]

\* \* \* \* \* \* \*

---

[35] Dkt. 1413-12.
[36] Additionally, on July 21, 2015, in an effort to meet and confer on these issues, the Tennessee Clinic Defendants requested the following information from the Trustee – who has been contacted and when, and what is their contact information so that the Tennessee Clinic Defendants can try to contact them? (*See* attached as exhibit 2 the July 21, 2015, meet and confer request letter.) This request has gone unanswered; and, the Trustee has refused to meet and confer on other pending discovery issues.
[37] Brigham & Women's Audit, 2012, found at BWH 139.
[38] NECC_MDL 000032925.
[39] BWH 124.
[40] Dkt. 1810, p. 4.
[41] For instance, who has been contacted and refused to appear?

9

In light of the amount of professional fees charged to the estate relative to the amount that it would cost to prepare a corporate witness, the Tennessee Clinic Defendants respectfully request that the Court reconsider its previous order granting NECC a protective order against a deposition and allow a deposition on the limited topics in the amended notice.

> **b. Given the information above, the Tennessee Clinic Defendants request that the Court reconsider its previous order and require NECC to give a corporate deposition on the limited topics in the revised 30(b)(6) notice attached as an exhibit to this motion.**

In granting NECC's Motion for Protective Order, the Court focused on (1) the lack of the Trustee's personal knowledge; (2) the representation that NECC had no officers, directors, or managing agents with knowledge of the topics, who will consent to testify without invocation of their Fifth Amendment privilege; and (3) the cost to the estate to prepare and present a witness.[42]

The record before the Court demonstrates that the cost to prepare and present a witness may very well have been less than the costs to the estate to fight the request for a 30(b)(6) deposition, and certainly marginal when compared to the amounts charged the estate thus far.

In addition, the revised (and significantly narrowed) notice seeks testimony on the following topics:

1. The accuracy of NECC's customer lists published by the CDC after the outbreak.

2. Whether any customer or prospective customer of NECC, from 2008 to the time NECC ceased operations, performed a site visit of NECC and, if so, identification of the health care provider, date of the inspection, and whether the customer thereafter purchased medication from NECC.

---

[42] Dkt. 2123, p. 17-19.

3. The due diligence generally conducted by health care provider customers of NECC before purchasing medication from NECC in 2008-12.

4. Any conversations NECC had with the Tennessee Clinic Defendants in 2011-12, through its employees or salespeople.

5. What NECC customers, if any, utilized individual patient-specific prescriptions when ordering medications from NECC in 2011-12, and whether NECC maintained a list of these customers.

6. NECC's process for compounding the three batches of MPA at issue.

\* \* \* \* \* \* \*

These topics are narrow and will require little preparation of a witness. There are likely former employees without legitimate Fifth Amendment concerns who have knowledge of these topics sufficient to educate a corporate witness.[48]

<u>Topic 1:</u> This will require a review of the CDC's published customer lists and confirm that they accurately reflect, to the best of NECC's knowledge, NECC's customers at the time of the outbreak.

<u>Topic 2:</u> This will require someone to determine whether any customer or prospective customer of NECC did a site visit of NECC from 2008-12. That only a handful of thousands of customers did site visits (which the PSC contends every customers was required to do) cannot be efficiently established absent NECC testimony.

<u>Topic 3:</u> This will require someone to be educated (if a former employee cannot provide the information without education) on the typical due diligence customers of NECC undertook prior to purchasing in 2008-12. Persons at NECC who dealt with customers or fielded customer inquiries (*e.g.*, NECC's salespeople) can address this

---

[48] As noted above, NECC had dozens of employees at the time. Surely some of these former employees can either testify or educate a witness on the limited topics in the revised notice.

11

topic or educate the witness on the topic.[49] This does not require any analysis of extensive data or endless interviews of former employees. It simply requires someone with experience at NECC to testify (or educate the witness) on what level of due diligence the typical customer of NECC performed in this time period. This fact testimony should not have any reasonable Fifth Amendment implications and should be straightforward preparation of the witness.

Topic 4: This will require an electronic search of the written communications in NECC's possession to identify a defined set of the communications with the Tennessee Clinic Defendants. It will also require speaking with the NECC employees who communicated with the Tennessee Clinic Defendants – a small group of employees – to identify the communications with them.

Topic 5: This will simply require asking the person at NECC responsible for processing the orders (likely a clerical person with no legitimate Fifth Amendment concerns) what customers, if any, utilized patient-specific prescriptions for ordering. The witness may also be able to educate themselves through review of documents.

Topic 6: This simply asks for – either from a review of the documents available or general knowledge – an explanation of how the product at issue was compounded. At this point, several years into the litigation, *still* no witness has been deposed who can explain how the medication that sickened patients was compounded. This information must come from NECC. There is no reasonable substitute.

---

[49] NECC had 42 salespeople identified in the bankruptcy schedules. Surely some of these salespeople can testify or educate a witness on this limited topic.

## CONCLUSION AND RELIEF REQUESTED

The Tennessee Clinic Defendants request this Court to reconsider and revise its ruling on the Trustee's Motion for a Protective Order. Specifically, the Tennessee Clinic Defendants request that the Court revise its ruling to allow the deposition of NECC on the six narrow topics above. The cost to the estate of this 30(b)(6) deposition is relatively minimal when compared to the fees and expenses charged to the estate to this point.

Respectfully submitted,

**GIDEON, COOPER & ESSARY, PLC**

/s/ Chris J. Tardio
**C.J. Gideon, Jr.***
**Chris J. Tardio***
**Alan S. Bean****
**Matthew H. Cline***
315 Deaderick Street, Suite 1100
Nashville, TN 37238
Ph: (615) 254-0400
Fax: (615) 254-0459
chris@gideoncooper.com

***Attorneys for the Tennessee Clinic Defendants***

\* Admitted pursuant to MDL Order No. 1.
\*\* Admitted *pro hac vice*.

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be served electronically to the registered participants identified on the Notice of Electronic Filing and copies will be e-mailed or mailed via regular U.S. mail to those participants identified as unregistered this August 24, 2015.

/s/ Chris J. Tardio
**Chris J. Tardio**