UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC., PRODUCTS LIABILITY LITIGATION | MDL No. 2419<br>Docket No. 1:13-md-2419-RWZ |
| THIS DOCUMENT RELATES TO:<br><br>All Actions | |

## INVOKING DEFENDANTS' OPPOSITION TO SAINT THOMAS' MOTION TO COMPEL INVOKING DEFENDANTS TO PRODUCE CERTAIN DOCUMENTS AND CROSS-MOTION FOR PROTECTIVE ORDER

### I. Introduction

Barry Cadden, Glenn Chin, Gregory Conigliaro, Douglas Conigliaro and Carla Conigliaro (collectively, the "Individuals") submit this opposition to Saint Thomas' Motion to Compel Invoking Defendants to Produce Certain Documents (the "Motion") and cross move for entry of a protective order prohibiting any civil party, including Saint Thomas, from attempting to obtain the documents produced by the United States Attorney's Office (the "USAO") to the Individuals in the parallel criminal proceeding (the "Criminal Discovery").

As described below, Saint Thomas is moving to compel the Individuals to produce "en masse" all of the documents produced by the United States to the Individuals through discovery in the criminal matter. This is a largely unprecedented move. If Saint Thomas were to seek the production of the Criminal Discovery from the USAO whether by a FOIA request or a subpoena, Saint Thomas likely would not succeed. In this regard, the Motion is a back door attempt to force the Individuals to produce materials that Saint Thomas could not otherwise obtain directly from

1

the USAO.  Saint Thomas has made no attempt to first obtain the Criminal Discovery directly from the USAO, which is a requirement in this District.  Although the documents likely contain insight into the criminal investigation and criminal prosecution of the Individuals, Saint Thomas has already been provided access to all relevant materials through informal productions by the Chapter 11 Trustee in the MDL.  Saint Thomas has not shown that any remaining documents in the Criminal Discovery are relevant to its comparative fault defense in the MDL.  Nor has it shown a particularized need for the production of materials obtained by and through the Grand Jury proceeding.  Moreover, if allowed, Saint Thomas' sweeping request would permit Saint Thomas to parade these materials to the public and thus violate the rights of the Individuals to prepare their defense in the criminal matter and receive a fair trial. The Individuals should be permitted to prepare their defense without spending countless hours and dollars responding to this request.

## II.  Argument

### A.  The Requested Discovery Is Irrelevant To Saint Thomas' Alleged Comparative Fault Defense.

While it is true that the limitations set in the discovery rules are generally construed broadly, the First Circuit has held that a party may not "undertake wholly exploratory operations in the vague hope that something helpful will turn up." *Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d 179, 187 (1st Cir. 1989).  Courts will not permit discovery in a civil action that is unrelated to any claim or defense, simply on speculation that something relevant might surface. *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 193 (1st Cir. 2001) (First Circuit "will not allow [a party] to go on a 'fishing expedition,' with the mere 'hope' that it will obtain [relevant] information").  The First Circuit has indicated that "[a party] ought not to be permitted to use broadswords where scalpels will suffice[.]"  *Mack*, 871 F.2d at 187.

Here, under the guise of seeking discovery into alleged comparative fault, Saint Thomas is seeking to compel the Individuals to produce millions of pages of documents obtained from the United States through discovery in the parallel criminal matter — *U.S. v. Cadden et al.*, 1:14-cr-10363-RGS.

Aside from making conclusory statements, such as these materials relate to "matters highly relevant to this MDL" and the "relevancy of the documents…cannot be understated," Saint Thomas has not shown that there are any relevant documents contained in the Criminal Discovery that it has not already received through the multiple document productions by the Chapter 11 Trustee.  Saint Thomas' blanket request for production of approximately 8.7 million pages of documents produced by the USAO is, on its face, overly broad and fails to demonstrate any particularized need for these materials.

Saint Thomas' alleged need for these materials, and its failure to specify what it needs and why, is particularly fatal here considering the limited relevance of those materials under this Court's prior Order limiting discovery against the Individuals.  As the Court is aware, Saint Thomas and other Clinic Defendants may pursue discovery in the MDL "only to the extent the discovery is relevant to the prosecution, or defense, of claims against defendants other than the Estate Parties or the Insider Settling Parties."[1]  Saint Thomas' blanket request for an "en masse" production of all materials far exceeds the scope of discovery set by the Order.

Furthermore, there may be no need for additional discovery once the Court rules on the pending choice of law issue in the MDL. The PSC and the various clinic defendants have briefed and argued issues relating to choice of law which are still unresolved. The court's ruling may very well affect the right of the clinic defendants to conduct comparative fault discovery at all (MDL Doc. No. 1924).

---

[1] (Doc. 1482 – Order Limiting Discovery and Staying Proceedings with Respect to Insiders and Related Settling Parties.

3

### B. The Production Of The Criminal Discovery In The MDL Is Prohibited By The Protective Order Entered In The Criminal Matter.

Saint Thomas has taken the position that the Individuals are at liberty to produce 8.7 million pages of criminal discovery in the MDL. However, a protective order has entered in the criminal matter (the "Amended Protective Order") and it prohibits the production of most, if not all, of the Criminal Discovery in the MDL. *See* Crim. Dkt. 209. The Amended Protective Order states:

> All parties shall keep all Confidential Discovery Materials strictly confidential and shall not disclose that information to any person other than to the patient himself or herself(in the case of individually identifiable health information); to the parties; to the parties' attorneys; to consultants, investigators, or experts providing professional services; to medical personnel who were involved in the patient's care and who may be witnesses and their attorneys; to potential witnesses; and to support or administrative staff working under the direction and supervision of any of the foregoing; as counsel of record deems necessary for preparation of the case and defense in this action, and such information shall be used only for purposes of this litigation including as necessary during discovery and preparation for trial, and unless a court orders otherwise for good cause shown.

(*See* 1:14-cr-10363-RGS Document 209).

The Amended Protective Order identifies certain categories of documents that are protected:

> For purposes of this Order, the term "Confidential Discovery Materials" means documents containing: (1) individually identifiable health information as defined in 45 C.F.R. §160.103; (2) financial information concerning any of the defendants; (3) financial information concerning any of the alleged victims in this case; or (4) personal private information protected under Rule 5.2 of the Federal Rules of Civil Procedure.

*Id.*

The USAO produced automatic discovery on January 14, 2015, and made additional discovery productions on February 12, 2015, March 25, 2015, May 12, 2015, and June 23, 2015. The USAO has indicated that it has begun the process of designating which documents in the 8.7

4

million pages of its production are documents that fall into the four categories enumerated in the Amended Protective Order.  However, at the time of this filing, the USAO had not completed its designations for the January 14, 2015 production and must still complete its designations for the remaining productions.  In order to protect the Criminal Discovery, the USAO has requested that until it makes its confidentiality designations, the Individuals treat all documents produced by the USAO in the criminal matter as confidential.  Thus, the Individuals are plainly prohibited from simply producing these materials through civil discovery in the MDL and Saint Thomas has not shown good cause for the Court to compel the production of these documents.

In addition, while the USAO has segregated a portion of its production into folders identifying material relating to individuals' identifiable health information, defendants' financial information and patients' financial information, that same type of material is also inexorably intertwined in literally millions of pages of e-mails. [2]  Confidentiality issues so permeate the production, and the Amended Protective Order heavily restricts any use of protected documents, that the Individuals cannot produce the requested documents and risk violation of the Protective Order in the criminal case.   For this additional reason, Saint Thomas' Motion should fail.[3]

---

[2] Joint Status Report  1:14-cr-10363 USA v. Cadden et al. filed August 27, 2015 1:14-cr-10363-RGS

[3] Additionally, Saint Thomas' discovery requests directed to at least two of the Individuals are particularly inappropriate as the criminal indictments against two of the Individuals alleged only financial crimes and thus are irrelevant to, and not probative of, matters relating to the Plaintiffs' claims against Saint Thomas or any defenses Saint Thomas expects or intends to raise at trial.  *See 4 MVR, LLC v. Warren W. Hill Const. Co.*, No. 12-CV-10674-DJC, 2015 WL 3932380, at *3 (D. Mass. June 26, 2015) (court denied discovery request related generally to defendant's "personal financial status, including all documents related to his bank accounts, real property holdings and assets from 2009 through 2011" because it "asks for information that is not relevant to the present case"); *see also See In re Ex Parte Shagang Shipping Co., Ltd.*, No. 14 MISC. 53-P1 RWS, 2014 WL 1744264, at *2 (S.D.N.Y. Apr. 28, 2014) (pre-judgment asset discovery "not permitted . . . unless it is relevant to the merits of a claim. . . . Rather, such discovery is properly reserved for post-judgment proceedings, when a judgment creditor seeks the information necessary to permit it to enforce the judgment."); *SierraPine v. Refiner Products Mfg., Inc.*, 275 F.R.D. 604, 609-10 (E.D. Cal. 2011) ("[D]istrict courts across the country generally do not allow pre-judgment discovery regarding a defendant's financial condition or ability to satisfy a judgment . . . on the grounds that such discovery is not relevant to the parties' claims or defenses and is not reasonably calculated to lead to the discovery of admissible evidence).

Moreover, it would be unduly burdensome for the Individuals to manually search the entire production to find and then redact other sensitive information such as non-public personal information (social security numbers, account numbers, etc.).  This is particularly so since the Individuals had no control over what was produced to them by the USAO, and should not have to be responsible for dissecting the USAO's production, so that it can be produced in a civil case.

### C. Saint Thomas' Request Must Be Denied To Protect The Individuals' Right to A Fair Trial.

Compelling the Individuals to produce 8.7 million pages of discovery produced by the Government in the criminal case, prior to trial of the criminal case, places the Individuals' rights to a fair trial at risk for several reasons.  What has been requested of the Individuals would be inordinately expensive and time-consuming especially considering the volume and the fact that Confidential Discovery Material (patient information and personal data) is found throughout the emails and other documents.  The Individuals, two of whom face charges carrying the possibility of life sentences, should not have their time diverted in this way as they prepare for the April 2016 trial date.

In addition, while there will be a protective order in place, unfortunately, there are instances where a protective order is violated. In those cases, while there may be an appropriate mechanism in place to punish a violation of a protective order, once information has been leaked, a defendant can never put the genie back in the bottle to repair the tainted jury pool that prevents a defendant from receiving a fair trial.  As previously explained by the FDA in its motion for a protective order (Dkt. 1838), a protective order in the MDL would have limited efficacy due in part to the fact that "[t]he fungal meningitis outbreak was an unprecedented public health crisis; the USAO's criminal investigation has generated substantial coverage in both national and local media for more than two years; and the [requested discovery] would be subject to use in more

than 680 civil actions." *See* Dkt. 1838, at p.14.  Therefore, it would be fundamentally unfair to allow Saint Thomas to obtain all of the materials that the USAO has produced to the Individuals to defend against the criminal charges in the criminal matter.

### D. Saint Thomas Has Not Shown Any Need Or Good Cause To Compel The Production Of Grand Jury Materials.

A motion to compel grand jury materials from a private party is improper unless the motion to compel is served upon the United States Attorney in this District, which does not appear to have been done here.  *Liberty Mutual Insurance Co. v. Diamante*, 193 F.R.D. 15, 18 (D. Mass. 2000).  For this reason alone, the Motion must be denied.

Even putting that fatal problem aside, under settled United States Supreme Court precedent, grand jury materials can be obtained only after the requesting party, here Saint Thomas, shows that "the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." *See Douglas Oil Co. of Cal. v. Petrol Stops Northwest*, 441 U.S. 211, 222 (1979).  Saint Thomas' blanket and sprawling request for the production of all Criminal Discovery materials through civil discovery in the MDL falls short of this requirement.

In the Motion, Saint Thomas states that the Criminal Discovery, specifically the USAO's work product relating to witness interviews, "will provide key insight into who the Saint Thomas Entities should depose and/or call to trial in their cases." Saint Thomas' Memo, at p.5.  Although it might be advantageous for Saint Thomas if it were permitted to examine these materials, Saint Thomas has not demonstrated that it is incapable of figuring out this information on its own.  In fact, Saint Thomas has noticed the depositions of numerous former employees of NECC and appears to have more than enough information to prepare a defense in this case.

7

### E. Saint Thomas Has Not Cited Any Pertinent Authority In Support Of Their Request For Such Extraordinary Relief.

In the Motion, Saint Thomas appears to have taken the position that the Individuals should be compelled to produce the Criminal Discovery in the MDL because "[t]here is no Fifth Amendment privilege against producing in civil litigation what the government has provided in a criminal trial." *See* Saint Thomas' Memo, at p.6. Saint Thomas cites only one case, however, in support of that proposition — *eBay, Inc. v. Digital Point Solutions, Inc.*, 2010WL147967, N.D. Cal., No. C 08-4052 (Jan. 12, 2010) (unreported) — and it is inapplicable here. Not only are the facts of the *eBay* case inapposite, but Saint Thomas' characterization of the holding of the case is inaccurate. In *eBay*, the plaintiff, eBay, moved to compel discovery responses from multiple civil defendants (various corporations and three individuals, described as owners, shareholders, officers, and/or directors of the entities). *Id.* at *1. The individuals were "the subject[s] of an ongoing criminal investigation involving the same allegations as those made in the operative complaint" (*but had not been indicted yet*). *Id.* In eBay's requests to the entities, eBay sought documents owned by, and in the possession of, the entities. *Id.* at *2-4. The Court ordered the entities to comply with the requests in part because there was an agent of the entities (i.e., the wife of one of the defendants) who had previously responded to discovery requests on behalf of one of the entities and could do so for the others without the assistance of her husband. *Id.* at *6. In eBay's requests to the individuals, eBay sought documents that the individuals *had in their possession and had "previously produced to the government" as part of a criminal investigation*. *Id.* at *2. The Court ordered the Individuals to produce the documents that the Individuals had previously produced to the government. *Id*. at *8. The Court ordered the production, over the Individuals' Fifth Amendment objections, in part because the individuals had already placed any potentially incriminating information in the hands of the government. *Id.* The Court did not, as

Saint Thomas suggests in its Motion, order criminal defendants to produce criminal discovery in a parallel civil action or to produce documents that were not initially in their possession, custody or control.

Here, the matter currently before the Court is whether the Individuals, who have all been indicted, must produce material the Government has produced to them, post indictment. This is a completely different situation than the one presented in *eBay* in part because the documents at issue were not initially within the Individuals' possession, custody or control. Only documents within a party's "possession, custody, or control" are subject to Rule 34. The term "control" speaks to the legal right, authority, or ability of the party to whom the Rule 34 request is directed to exercise lawful possession over the documents at issue. *McKesson Corp. v. Islamic Republic of Iran*, 185 F.R.D. 70, 78 (D.D.C. 1999). Although the Individuals have temporary access to documents provided during the criminal investigation with which to defend themselves, they do not have the control contemplated by this rule, in particular given the nature of this material and the confidential material interspersed within it. Thus, Saint Thomas' reliance on *eBay* is not persuasive here.

Moreover, in *United States v. Billmyer*, the First Circuit previously indicated that the disclosure of documents to the government as part of a criminal investigation or proceeding does not automatically waive all privileges that may exist. 57 F.3d 31, 37-38 (1st Cir. 1995) (stating "private revelations to the government of possible criminal conduct ought not waive the privilege as to third parties"). Here, the mere fact that the government has seized documents from NECC does not constitute a waiver of any privilege by the Individuals. Thus, the Individuals' Fifth Amendment rights are still intact.

## Conclusion

For the reasons stated herein, the Individuals respectfully request that the Court deny Saint Thomas Entities' Motion To Compel Invoking Defendants To Produce Certain Documents and allow the Individuals' Cross-Motion For Protective Order prohibiting Saint Thomas and all other parties in the MDL from obtaining the Criminal Discovery produced by the USAO to the Individuals in the parallel criminal proceeding.

Respectfully submitted,

| | |
|---|---|
| /s/ Michelle R. Peirce | /s/ Stephen J. Weymouth |
| Bruce A. Singal (BBO# 464420) | Stephen J. Weymouth (BBO# 523680) |
| Michelle R. Peirce (BBO# 557316) | Law Office of Stephen J. Weymouth |
| Callan G. Stein (BBO# 670569) | 65A Atlantic Avenue |
| Donoghue, Barrett & Singal, PC | Boston, MA 02110 |
| One Beacon Street, Suite 1320 | (617) 573-9598 |
| Boston, MA  02108 | sweymouth@sweymouthlaw.com |
| (617) 720-5090 | |
| bsingal@dbslawfirm.com | *Counsel for Defendant Glenn A. Chin* |
| mpeirce@dbslawfirm.com | |
| cstein@dbslawfirm.com | |

*Counsel for Defendants Barry J. Cadden and Lisa Conigliaro-Cadden*

| | |
|---|---|
| /s/ Dan Rabinovitz | /s/ Corrina L. Hale |
| Dan Rabinovitz (BBO# 558419) | David E. Meier (BBO# 341710) |
| John K. Wells (BBO# 671345) | Christopher R. O'Hara (BBO# 548611) |
| Greenberg Traurig LLP | Corrina L. Hale (BBO# 670916) |
| One International Place | Todd & Weld LLP |
| Boston, MA 02110 | One Federal Street, 27th Floor |
| (617) 310-6000 | Boston, MA 02110 |
| rabinovitzd@gtlaw.com | (617) 720-2626 |
| wellsj@gtlaw.com | dmeier@toddweld.com |
| | cohara@toddweld.com |
| *Counsel for Defendant Gregory Conigliaro* | chale@toddweld.com |

*Counsel for Defendants Carla Conigliaro and Douglas Conigliaro*

Dated: September 2, 2015

**CERTIFICATE OF SERVICE**

  I, Corrina L. Hale, hereby certify that this document has been filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.


Date: September 2, 2015          /s/ Corrina L. Hale