UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

)
IN RE: NEW ENGLAND                         )
COMPOUNDING PHARMACY, INC.                 )
PRODUCT LIABILITY LITIGATION               )       MDL No. 13-2419-RWZ
                                           )
This Document Relates To:                  )
                                           )
        All Actions                        )
_____)

**MOTION OF THE UNITED STATES FOR LEAVE TO INTERVENE AND FOR
A STAY OF CERTAIN DEPOSITIONS PENDING RESOLUTION OF RELATED
CRIMINAL PROCEEDINGS, AND MEMORANDUM IN SUPPORT THEREOF
AND IN OPPOSITION TO THE ST. THOMAS ENTITIES' MOTION TO COMPEL
PRODUCTION OF CRIMINAL DISCOVERY**

        The United States respectfully moves to intervene in this action for the purposes of (1)

moving to stay certain fact depositions pending resolution of the federal criminal case that

addresses New England Compounding Center ("NECC") and the alleged crimes that led to the

nationwide fungal meningitis outbreak, and (2) opposing the Saint Thomas Entities' Motion to

Compel Invoking Defendants to Produce Certain Documents, Docket No. 2117 (hereinafter,

"Motion to Compel Criminal Discovery").[1]  Specifically, if allowed to intervene, the government

requests that this Court stay the depositions of all former employees of NECC and Medical Sales

Management ("MSM") who are potential government witnesses, as well as the noticed Rule

30(b)(6) deposition of the Massachusetts Board of Registration in Pharmacy ("MABOP"), until

after trial of the federal criminal case, United States v. Barry J. Cadden, et al., 14-cr-10363-RGS

(hereinafter, "the criminal case"), which is scheduled to begin on April 4, 2016.  In addition, the

government requests that the Court deny the Motion to Compel Criminal Discovery, in which the

St. Thomas Entities request that the Court order invoking criminal defendants Barry Cadden,

_____

[1] Citations to "Docket" refer to docket entries in this case, MDL No. 13-2419-RWZ.  Citations to "Criminal Case
Docket" refer to docket entries in the criminal case, 14-cr-10363-RGS.

Gregory Conigliaro, Douglas Conigliaro, Carla Conigliaro, and Glenn Chin to produce in the civil case the government's discovery productions provided to them in the criminal case.

As grounds for this Motion, the government submits that allowing this discovery sought by the St. Thomas Entities[2] to proceed before trial of the criminal case would interfere with it in several important respects.  First, it would jeopardize the government's ability to prosecute the criminal case by allowing civil litigants, including possibly defendants in the criminal case, to depose, months before the criminal trial, several of the government's potential trial witnesses.[3]  Second, if allowed to proceed, these depositions and the production to the civil litigants of the government's criminal discovery productions – which are the fruits of the government's more than two-year extensive federal criminal investigation – could generate substantial pretrial publicity that could affect the rights of the fourteen criminal defendants to a fair trial.  Moreover, the government's criminal discovery, currently at over 8.8 million documents, contains vast amounts of information that are protected from disclosure by a protective order and/or Rule 6(e) of the Federal Rules of Criminal Procedure, and/or are not relevant to the St. Thomas Entities' litigation or their comparative fault claims.  The criminal discovery should only be in the hands of the parties to the criminal case and only used for the purpose of litigating the criminal case.  For these reasons, which are set forth more fully below, the government requests that the Court:

---

[2] Although the depositions were noticed by the Tennessee Clinic Defendants, the government assumes the testimony is sought by the set of defendants known as the St. Thomas Entities in light of the arguments they collectively made in their Motion to Compel Criminal Discovery and the fact that most of the depositions are scheduled to take place at the offices of counsel for Saint Thomas Hospital.  See Docket Nos. 2115, 2117, and 2200.

[3] In addition to noticing the 30(b)(6) deposition of the MABOP, the Tennessee Clinic Defendants have, to date, noticed the depositions of Owen Finnegan ("Finnegan"), Joseph Connolly ("Joseph Connolly"), Steven Haynes ("Haynes"), and Cory Fletcher ("Fletcher"), all of whom are former NECC employees who worked in the clean room in which the methylprednisolone acetate was made; Annette Robinson ("Robinson"), who oversaw Quality Control at NECC; Belmira Carvalho ("Carvalho"), who oversaw order processing at NECC; and John Notorianni ("Notorianni") and Mario Giamei ("Giamei"), former MSM sales representatives.  Most, if not all, of these individuals are potential government witnesses in the criminal case.  The Tennessee Clinic Defendants are in the process of rescheduling the depositions, see Notice of Filing of Amended Deposition Notices (Docket No. 2184), and have agreed to postpone conducting them until after the Court rules on this Motion.

grant its motion to intervene, stay the depositions of the government's potential witnesses until after the trial in the criminal case, and order that the invoking defendants are not required to produce the criminal discovery in the civil litigation.[4]

## BACKGROUND

These cases and the criminal investigation arose from the nationwide outbreak of fungal meningitis traced to epidural steroid injections of methylprednisolone acetate compounded by NECC and distributed to customers in twenty-three states.  During the outbreak, the U.S. Centers for Disease Control and Prevention ("CDC") confirmed fungal infection in patients treated with methylprednisolone acetate injections sold by NECC.  The CDC and the Food and Drug Administration ("FDA") confirmed the presence of mold in multiple unopened vials of three different lots of methylprednisolone acetate made by NECC and obtained from NECC's facility in Massachusetts and from samples collected from NECC customers around the country.  The CDC reported that, as of October 2013, approximately 751 patients, living in twenty states, were diagnosed with a fungal infection after receiving injections compounded at NECC, of which 64 died.  The criminal investigation revealed that the number of victims continued to rise.

Following the two-year criminal investigation, a federal grand jury sitting in this district returned a 131-count indictment against fourteen defendants:  Barry Cadden, Glenn Chin, Gene Svirskiy, Christopher Leary, Joseph Evanosky, Scott Connolly, Sharon Carter, Alla Stepanets, Gregory Conigliaro, Robert Ronzio, Kathy Chin, Michelle Thomas, Carla Conigliaro, and Douglas Conigliaro.  The defendants were arraigned on the indictment on December 17 and 19, 2014.  Since that time, the government has made five discovery productions to the criminal defendants totaling over 8.8 million pages of documents.  The court entered an amended

---

[4]  Counsel for the St. Thomas Entities and the Plaintiffs' Steering Committee ("PSC") have stated that they do not object to the government's motion to intervene, but take no position, and reserve their rights to object to, the other relief requested in this Motion.

protective order in the case on April 17, 2015.  See Criminal Case Docket No. 209.  That order governs certain protected information within the discovery productions, and the government is in the process of making designations – which are numerous given the size of the discovery and the sensitive nature of much of the information contained within it – under that order.

As this Court knows, in this MDL, common fact discovery for the remaining defendants in the Tennessee Cases is currently scheduled to close on September 15, 2015.[5]  See Docket No. 2075.  On July 30, 2015, the Tennessee Clinic Defendants filed the Notice of Filing of Subpoenas and Deposition Notices, seeking to take the depositions of former NECC employees Finnegan, Connolly, Carvalho, Robinson, Haynes,[6] and three additional defendants in the criminal case.[7]  See Docket No. 2115.  The St. Thomas Entities filed their Motion to Compel Criminal Discovery the same day.  See Docket No. 2117.  On August 31, 2015, the Tennessee Clinic Defendants filed a deposition notice for Fletcher.  See Docket No. 2200.

## ARGUMENT

**I.     The Court Should Allow the Government to Intervene for the Purpose of Moving for a Stay of Certain Discovery.**

Under Federal Rule of Civil Procedure 24(a)(2), anyone may intervene as of right when the applicant "claims an interest relating to the property or transaction which is the subject of the action" and the applicant is so situated that "disposing of the action may as a practical matter impair or impede the [applicant]'s ability to protect its interest…."  Fed. R. Civ. P. 24(a)(2). "A party that desires to intervene in a civil action under Rule 24(a)(2) must satisfy four

---

[5] As this Court also knows, the nature of the St. Thomas Entities' potential comparative fault claims, the cases' pre-trial deadlines, and the timing and location of their trials depend on certain rulings on choice of law and trial venue by this Court.

[6] The Tennessee Clinic Defendants had previously noticed the depositions of MSM sales representatives Giamei and Notarianni.  See Docket No. 1773.

[7] Although the Tennessee Clinic Defendants also recently noticed the depositions of criminal defendants Robert Ronzio, Sharon Carter, and Scott Connolly, those depositions have been postponed pending resolution of the criminal case pursuant to this Court's order at Docket No. 2123.  See Docket No. 2184, at 2.

conjunctive prerequisites: (1) a timely application for intervention; (2) a demonstrated interest relating to the property or transaction that forms the basis of the ongoing action; (3) a satisfactory showing that the disposition of the action threatens to create a practical impairment or impediment to its ability to protect that interest; and (4) a satisfactory showing that existing parties inadequately represent its interest." Pub. Serv. Co. v. Patch, 136 F.3d 197, 204 (1st Cir. 1998). "Each of these requirements must be fulfilled; failure to satisfy any one of them defeats intervention of right." Ungar v. Arafat, 634 F.3d 46, 51 (1st Cir. 2011). The First Circuit has noted, however, that "[t]he inherent imprecision of Rule 24(a)(2)'s individual elements dictates that they be read not discretely, but together, and always in keeping with a commonsense view of the overall litigation." Patch, 136 F.3d at 204.

Here, the government has satisfied each of the four prerequisite requirements. First, as noted above, the Tennessee Clinic Defendants noticed the depositions of the former NECC employees approximately one month ago, and none of the depositions have taken place. Second, the government has a demonstrated interest in the subject matter of this litigation, and in protecting the criminal case. It is the St. Thomas Entities' stated goal, both in seeking to take these depositions and in subpoenaing the government's criminal discovery, to inject the subject matter underlying the government's 131-count criminal prosecution into their comparative fault defenses. Multiple counsel for the St. Thomas Entities have informed the government that their intention in these depositions is to discover all that they can about what happened within NECC, and in particular, the clean room in, and process by, which the methylprednisolone was made.[8] In fact, they state in their Memorandum in Support of their Motion to Compel Criminal Discovery that they need NECC witnesses in their case "to explain how product was being

---

[8] As explained further below, it is unclear why the St. Thomas Entities believe they need (or would even want) to do more than establish that NECC sold them contaminated methylprednisolone acetate, which no one to date has disputed, for their comparative fault claim against NECC. Nonetheless, it is their stated intention to try to do so.

compounded, the procedures being used, and how those procedures did or did not vary from the written procedures that were supposed to be followed and/or the documentation purportedly reflecting what was done." Memorandum In Support of Saint Thomas Entities' Motion to Compel Invoking Defendants to Produce Certain Documents (hereinafter, "Memorandum"), Docket No. 2118, at 2. Such subjects are at the heart of the criminal case, in which NECC and MSM are alleged to have formed a racketeering enterprise by which the defendants sold sterile drugs under materially false and fraudulent means. Third, permitting the depositions of potential government witnesses to proceed would directly affect the integrity of the criminal case by allowing civil litigants, including potentially criminal defendants,[9] to depose the government's potential trial witnesses months before the criminal trial. Without intervention, the government cannot protect that interest because it cannot weigh in on whether civil discovery should proceed and how, if it does, it would affect the criminal case. Fourth, no current party to the civil action is in a position to do so since only the government is charged with the responsibility of prosecuting the criminal case against the fourteen NECC defendants. The government thus submits that the four conditions for its intervention as of right are met in this case.

Furthermore, the Court can also permit intervention by a party when an applicant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(2). To intervene under this section, the government must establish: "(1) the applicant's claim or defense and the main action have a question of fact or law in common, (2) the applicant's interests are not adequately represented by an existing party, and (3) intervention would not result in undue delay or prejudice to the original parties." In re Thompson, 965 F.2d 1136, 1142 n.10 (1st Cir. 1992). See also, Tutein v. Daley, 43 F. Supp. 2d 113, 131 (D. Mass.

---

[9] It appears that no order entered in the MDL to date would prohibit the criminal defendants' participation in, or access to, the depositions.

1999) (discussing standard); Bureerong v. Uvawas, 167 F.R.D. 83, 85-86 (C.D. Cal. 1996) (permitting the government to intervene under Rule 24(b)(2) and staying civil discovery pending resolution of criminal case).

The conditions for permissive intervention are also met here.  As noted above, this discovery sought by the St. Thomas Entities creates a clear common question between the civil and criminal cases.  Courts regularly recognize that federal prosecutors have a substantial interest in intervening in civil actions to protect the interests of the United States in securing convictions in criminal cases.  See, e.g., Sec. & Exch. Comm'n v. Chestman, 861 F.2d 49, 50 (2d Cir. 1988) (upholding permissive intervention by the government under Rule 24(b) for the purpose of seeking a stay of discovery "pending completion of a criminal investigation concerning the same underlying facts"); Twenty First Century Corp. v. LaBianca, 801 F. Supp. 1007, 1010 (E.D.N.Y. 1992) ("As a rule, district courts…have allowed the government to intervene in civil actions – especially when the government wishes do so for the limited purpose of moving to stay discovery.").  "It is well established that the United States Attorney may intervene in a federal civil action to seek a stay of discovery when there is a parallel criminal proceeding, which is anticipated or already underway, that involves common questions of law or fact."  Sec. & Exch. Comm'n v. Downe, 1993 WL 22126, at *11 (S.D.N.Y. 1993) (citations omitted); see also, Bureerong, 167 F.R.D. at 86 ("The charges brought by the Government in the criminal case obviously address legal and factual questions common to this civil case.").  In addition, the government's intervention for the limited purpose of seeking a stay will not unduly delay or prejudice adjudicating the civil cases.  As noted above, the government is not seeking a blanket stay of the civil cases, but rather merely discovery that implicates the criminal case – depositions of potential government witnesses – until conclusion of the criminal case.  Any stay of these

depositions would only be of short duration since the criminal case has been set for trial on April 4, 2016.   Moreover, the government's interest in the criminal case is clearly not already adequately represented by the existing parties.   See, e.g., Bureerong, 167 F.R.D. at 86 ("The Government has a distinct and discernible interest in intervening in order to prevent discovery in the civil case from being used to circumvent the more limited scope of discovery in the criminal matter.   Clearly, neither the Plaintiffs nor the Defendants have this identical interest.").   The government has expressed to counsel for the St. Thomas Entities that this discovery they are now seeking could harm the criminal case, and yet they are unmoved.   See, e.g., Notice of Filing of Deposition Notice, Docket No. 2200.

Because allowing the civil discovery sought by the St. Thomas Entities to proceed would, as a practical matter, impair the government's ability to protect its interests in the enforcement of federal criminal law in this important case, the government respectfully seeks permission to intervene for the purpose of arguing for a limited stay of certain discovery and against the production in the civil case of its criminal discovery.   As noted above, the St. Thomas Entities and the PSC do not oppose the government's intervention request.   See supra note 4.

## II.   The Court Should Temporarily Stay Depositions of Potential Government Witnesses to Protect the Integrity of the Criminal Case.

It is "clearly within the power of the district court to balance 'competing interests' and decide that judicial economy would best be served by a stay of civil proceedings."   United States v. Mellon Bank, N.A., 545 F.2d 869, 872-873 (3d Cir. 1976) (affirming stay); see also Microfinancial, Inc. v. Premier Holidays Intl., Inc., 385 F.3d 72, 77 (1st Cir. 2004) ("It is apodictic" that federal courts have the inherent power to stay civil proceedings in deference to criminal matters).   Although "[a] movant must carry a heavy burden to succeed in such an endeavor," id., this Court on multiple occasions has stayed civil litigation in deference to parallel

criminal proceedings on the government's motion.   See, e.g., Order on FDA's Motion for a Protective Order, Docket No. 2123, at 21 (staying 30(b)(6) deposition of the FDA because it "would likely interfere with the criminal investigation"); In re TelexFree Sec. Litig., No. 4:14-md-02566-TSH, MDL Case Mgt. Order No. 5 ¶ 2 (D. Mass. Mar. 10, 2015) and Sec. & Exch. Comm'n v. TelexFree, Inc., 52 F. Supp. 3d 349, 354 (D. Mass. 2014) (staying multidistrict litigation and civil enforcement action involving alleged pyramid and Ponzi scheme pending resolution of parallel criminal proceedings); Savatsky v. O'Brien, 902 F. Supp. 2d 135, 149 (D. Mass. 2012) (staying discovery in action under 42 U.S.C. § 1983 alleging employment discrimination on the basis of political affiliation "while the ongoing criminal investigation and state civil proceedings develop.").

The decision to stay civil litigation in deference to parallel criminal proceedings "involves competing interests."   Microfinancial, 385 F.3d at 78.   "Balancing these interests is a situation-specific task, and an inquiring court must take a careful look at the idiosyncratic circumstances of the case before it."   Id.   Though "each instance is sui generis," the following factors "typically bear on the decisional calculus":

> (i) the interests of the civil plaintiff in proceeding expeditiously with the civil litigation, including the avoidance of any prejudice to the plaintiff should a delay transpire; (ii) the hardship to the defendant, including the burden placed upon him should the cases go forward in tandem; (iii) the convenience of both the civil and criminal courts; (iv) the interests of third parties;…(v) the public interest[;]…(vi) the good faith of the litigants (or the absence of it) and (vii) the status of the cases.

Id.   An additional factor that is highly relevant is "the extent to which the issues in the criminal case overlap with those presented in the civil case."   TelexFree, 52 F. Supp. 3d at 352; see also Sec. & Exch. Comm'n v. Nicholas, 569 F. Supp. 2d 1065, 1070 (C.D. Cal. 2008) (noting that the overlap of issues is the "most important factor" in granting a stay); In re Adelphia Comm. Sec. Lit., 2003 WL 22358819, at *3 (E.D. Pa. May 13, 2003) ("The similarity of the issues underlying

the civil and criminal actions is considered the most important threshold issue in determining whether or not to grant a stay.").  In weighing the factors relevant to a particular case, "the *public interest* in the criminal case is entitled to precedence over the civil litigant."  In re Ivan F. Boesky Sec. Litig., 128 F.R.D. 47, 49 (S.D.N.Y. 1989) (emphasis in original).

Here, the public interest strongly militates in favor of the government's request for a stay. The government is not seeking a total stay of the civil proceedings or even a stay of all fact discovery in these cases.  Rather, the government is seeking a stay of just the depositions of former NECC and MSM employees and regulators who are potential witnesses in the criminal case.[10]  It is also requesting that the Court order that the discovery provided to the fourteen defendants in the criminal case not be produced to the civil litigants.  As set forth below, the Court should grant these requests to protect the public's interest in achieving justice and protecting the criminal defendants' right to a fair trial.

### A.    Depositions of Potential Government Witnesses Should Be Stayed Because of the Substantial Overlap of Facts and Evidence.

As this Court has already noted, in evaluating whether the pendency of a criminal action warrants a stay of a civil proceeding, the similarity of issues is often considered to be the most significant factor.  See Order on FDA's Motion for a Protective Order, Docket No. 2123, at 15. Here, the Court should stay the depositions of former NECC and MSM employees and the MABOP witnesses because there is substantial overlap in the issues about which the St. Thomas Entities seek to depose these individuals and important issues in the criminal case.  As noted above, the St. Thomas Entities intend to seek testimony from former NECC employees "to

---

[10] Indeed, the government has not until this point – approximately three years into the civil litigation and just two weeks prior to the close of fact discovery – moved to intervene and to stay certain discovery because it did not want to interfere with the ongoing civil litigation unless and until the government perceived a clear harm to the criminal case.  Now perceiving such harm, the government sees no choice but to seek a stay to protect the integrity of the criminal case.

explain how the product was being compounded, the procedures being used, and how those procedures did or did not vary from the written procedures that were supposed to be followed and/or the documentation purportedly reflecting what was done." Memorandum, at 2. Counsel for the St. Thomas Entities further have told the government that they hope to elicit testimony in these depositions about NECC's failures to adhere to the United States Pharmacopeia, which are central to several allegations in the indictment. See Indictment, Criminal Case Docket No. 1. They have noticed the depositions of former employees who have worked in numerous aspects of NECC/MSM's operations – its clean rooms, quality control area, order processing area, and sales. Despite the tenuous connection to their comparative fault claims, it is apparently their intention to elicit testimony concerning all aspects of the internal workings of NECC, which clearly is a focus of the criminal case. It is indisputable that these new discovery requests create a substantial overlap in the issues.

    In addition, the St. Thomas Entities have sought a Rule 30(b)(6) deposition of the MABOP that governs a wide range of topics, many of which overlap with the subject matters at issue in the criminal case. For example, NECC's regulatory history and the MABOP's prior inspections, the MABOP's post-outbreak inspection of NECC and its findings, and the MABOP's cooperation with the FDA with respect to NECC are all topics that are at issue in the criminal case. Among other things, many of the topics listed in the deposition notice are relevant to the conspiracy count charged in Count 3 of the indictment. See Indictment, Criminal Case Docket No. 1, at 37-47. This count includes allegations that the defendants conspired to make false representations to the FDA and the MABOP that, inter alia, NECC was operating as a compounding pharmacy and not a manufacturer, and that NECC was thus not subject to FDA oversight. Id. at 38. NECC's communications with the MABOP through the years concerning

its business practices are highly relevant to this count.  As a further example, the indictment alleges that during a May 2012 MABOP investigation of NECC following an incident with sub-potent eye block, certain of the criminal defendants knowingly submitted fraudulent prescriptions as part of NECC's response to the MABOP.  Id. at 47.  Other topics concerning the MABOP's inspection observations are relevant to other aspects of the criminal case.  Thus, as is the case with the depositions sought of former NECC or MSM employees, there is substantial overlap between the subject matters the St. Thomas Entities seek to explore in their deposition of the MABOP and those at issue in the criminal case.

### B.   The Discovery Sought by the St. Thomas Entities Should Be Stayed Because the Public Interest Weighs in Favor of Unimpeded Resolution of the Criminal Case.

Courts have recognized that the interests of justice weigh in favor of staying parallel civil proceedings because of the various ways those proceedings can impede the criminal case. "[W]here both civil and criminal proceedings arise out of the same or related transactions the government is ordinarily entitled to a stay of all discovery in the civil case until disposition of the criminal matter." United States v. One 1964 Cadillac Coupe DeVille, 41 F.R.D. 352, 353 (S.D.N.Y. 1966).  The reasons for the long-standing policy against allowing civil discovery when an overlapping criminal matter is ongoing stem directly from the procedural differences between civil and criminal proceedings.  As the Fifth Circuit explained in Campbell v. Eastland, an often-cited case in this area:

> The very fact that there is a clear distinction between civil and criminal actions requires a government policy determination of priority:  which case should be tried first.  Administrative policy gives priority to the public interest in law enforcement.  This seems so necessary and wise that a trial judge should give substantial weight to it in balancing the policy against the right of a civil litigant to a reasonably prompt determination of his civil claims or liabilities.

307 F.2d 478, 487 (5th Cir. 1962).  The court noted that "[w]hile the Federal Rules of Civil Procedure have provided a well-stocked battery of discovery procedures, the rules governing criminal discovery are far more restrictive."  Id.  Significantly, the Fifth Circuit explained that "18 U.S.C.A. § 3500 does away with any pre-trial discovery of statements of a government witness."  Id.  Therefore, the "liberal discovery procedures applicable to a civil suit [should not be used] as a dodge to avoid restrictions on criminal discovery and thereby obtain documents [the defendant] would not otherwise be entitled to for use in his criminal suit."  Id.  See also TelexFree, 52 F. Supp. 3d at 352 (granting a stay of civil proceedings to "prevent the criminal defendants from exploiting liberal civil discovery rules to obtain evidence to support their criminal defenses"); In re Worldcom, Inc., 2002 WL 31729501, at *10 (S.D.N.Y. Dec. 5, 2002) (upholding stay where the United States Attorney requested that witnesses to be used in the criminal trial not be subjected to depositions or required to answer interrogatories prior to completion of the criminal proceedings); In re Ivan F. Boesky Securities  Litig., 128 F.R.D. at 49-50 (holding that a stay of civil discovery is appropriate to prevent disclosure of statements of government witnesses "not obtainable at this time under the criminal procedure rules").

As Campbell shows, for at least fifty years courts have recognized that priority should be given to the "public interest in law enforcement."  Id.; see also TelexFree, 52 F. Supp. 3d at 353 (holding that "the public interest in unimpeded criminal law enforcement outweighs the civil interests here"); In re Ivan F. Boesky Securities  Litig., 128 F.R.D. at 49 ("the *public interest* in the criminal case is entitled to precedence over the civil litigant" (emphasis in original)).  In the context of motions to stay civil proceedings, courts sometimes seek to avoid a "blanket" stay of discovery, favoring a more specific approach.  See, e.g., Beacon Hill Asset Management LLC, 2003 WL 554618, at *2 (granting stay of Rule 26(a)(i)(A) discovery and of discovery pertaining

to "any person whom the United States Attorney's Office for the District of New Jersey certifies may be called as a witness before the grand jury or in any ensuing criminal proceeding"); Sec. & Exch. Comm'n v. Doody, 186 F. Supp. 2d 379, 382 (S.D.N.Y. 2002) (granting a stay of any "[d]epositions of any person whom the United States Attorney's office certifies may be called as a witness in the criminal case").

That is precisely what the government is seeking here. Most if not all of the recent deposition notices served by the St. Thomas Entities are for potential government witnesses in the criminal case, and the government requests that the Court stay only them and not other discovery in the civil cases. Allowing these depositions to go forward would interfere with the criminal case in several ways. First, it would risk not only making public, but generating substantial pretrial publicity about – months before the criminal trial – the testimony of several witnesses the government intends to call at trial. In fact, it is the government's understanding that the St. Thomas Entities could potentially use this deposition testimony in more than 140 individual lawsuits against them. In a high-profile matter with national interest such as this, it is likely that such widespread use of the deposition testimony would result in leaks and disclosures. Premature disclosures about the government's criminal case, including potential witnesses' testimony or details regarding the nature of evidence seized through search warrants, could affect the ability to seat a fair and impartial jury in the criminal case and harm the rights of the fourteen criminal defendants, two of whom are facing potential sentences of life imprisonment, to a fair trial.

In addition, allowing these depositions to proceed would prematurely and broadly disclose statements of government witnesses and essential elements of the government's case-in-chief, allowing the criminal defendants to tailor defenses to fit the anticipated proof. As noted

above, there does not to date appear to be any order in these civil cases that would preclude criminal defendants Barry Cadden, Glenn Chin, Gregory Conigliaro, Douglas Conigliaro, or Carla Conigliaro from participating in the depositions and using them to obtain information from the witnesses to which they are not otherwise entitled at this point, such as what a witness said in the grand jury.  See, e.g., In re Worldcom, 2002 WL 31729501, at *9 (S.D.N.Y. Dec. 5, 2002) (upholding stay where "premature discovery of testimonial evidence from cooperating witnesses will impair [the government's] effective enforcement" of the law).  Furthermore, it would unfairly burden the government's continuing investigation of NECC and its prosecution of the criminal case because the prosecutors would be required to become involved now in preparing these witnesses for their testimony, which would be available for use in the criminal trial as prior statements or admissions.

Here, the public unquestionably has a tremendous interest in law enforcement – in staying discovery in this case so the government can prosecute the criminal case without needless interference or variables.  The importance of protecting the integrity of the criminal case cannot be understated.  The alleged crimes charged in the indictment resulted in the deaths of at least 64 individuals and the suffering of more than 687 others.  The victims and the public deserve a criminal prosecution unaffected by discovery in the civil litigation focused on the same events.  Their interest in a just resolution of the criminal case is and should be paramount.

### C.    The St. Thomas Entities Would Not Be Prejudiced by a Stay, Further Tilting the Balance of Interests, and the Judicial Efficiencies are Clear.

A stay is warranted for the public policy reasons summarized above.  In addition, however, a stay would not prejudice the St. Thomas Entities.  Far from it – a stay would allow the civil defendants to avoid further substantial discovery costs while the criminal case proceeds. Following a trial in the criminal case – which is scheduled to begin on April 4, 2016 – the St.

Thomas Entities and the plaintiffs will have much more access to information and testimony that they can use, should they still wish, to assert their claims and defenses. Allowing the criminal trial to proceed first would likely obviate the need for most if not all of the depositions the St. Thomas Entities now seek. To the extent they need additional testimony beyond what is elicited in the criminal trial, they can seek it following the criminal trial in a more streamlined and efficient way. Counsel for the St. Thomas Entities acknowledged to the government that testimonial evidence elicited during the criminal trial could substantially satisfy the discovery needs underlying these deposition requests. Further, staying certain discovery in the civil case until after the trial of the criminal case would not significantly delay the adjudication of the civil cases. If this Court finds trial venue in this district, the trial of the first of the bellwether Tennessee cases is scheduled to begin on March 28, 2016 – just one week prior to the start of the criminal trial. Thus, any delay would be a matter of a few months at most.[11]

As for the Court, judicial efficiency would seem to support the stay. As the district court explained in the Worldcom securities litigation:

> The Court shares with all parties an interest in the efficient resolution of the instant actions. Nonetheless, a concern for judicial efficiency does not necessarily militate against the granting of a stay. . . . The conviction of a civil defendant as a result of the entry of a plea or following a trial can contribute significantly to the narrowing of issues in dispute in the overlapping civil cases and promote settlement of civil litigation not only by that defendant but also by co-defendants who do not face criminal charges.

In re Worldcom, 2002 WL 31729501, at *8 (citations omitted) (finding stay "particularly compelling" in light of factual overlap and U.S. Attorney's Office's request); see also Rosenthal

---

[11] Other than a delay, it is unclear what, if any, prejudice the St. Thomas Entities would suffer. In evaluating a stay request, however, "courts may insist that the [civil litigant] establish more prejudice than simply a delay in his right to expeditiously pursue his claim. Instead, the [civil litigant] should demonstrate a particularly unique injury, such as dissipation of assets or an attempt to gain an unfair advantage from the stay." In re Adelphia Comm. Sec. Lit., 2003 WL 22358819, at *4.

v. Giuliani, 2001 WL 121944, at *2 (S.D.N.Y. Feb. 9, 2001) ("[A] stay in the action will streamline later civil discovery since transcripts from the criminal case will be available to the civil parties."). A stay would allow not just the litigants, but the Court, to avoid needless work, without prejudice to any defendant or to the overall public interest in justice being served.

III.   **The Court Should Deny the St. Thomas Entities Motion to Compel Criminal Discovery.**

Finally, the St. Thomas Entities seek the government's criminal discovery productions so that they can further delve into the province and subject matters of the criminal case for use in the civil cases. They essentially concede that this is a fishing expedition; they state that if provided the government's discovery, they intend to use the interview memoranda written by federal law enforcement agents summarizing interviews conducted by members of the prosecution team during the criminal investigation – documents that do not belong in the hands of anyone other than the parties to the criminal case – to "provide key insight into who the Saint Thomas Entities should depose and/or call to trial in their cases. [The law enforcement agents' interview memoranda] will also provide invaluable evidence for the Saint Thomas Entities' experts to review and rely upon in connection with providing their reports, which are currently due in November." Memorandum, at 5. The St. Thomas Entities have been litigating these cases for three years, and apparently have been actively pursuing fact discovery for nearly a year. Their argument that they should now be entitled to peruse the fruits of the government's two-year criminal investigation for additional potentially relevant information for their civil defense, regardless of any potential impact on the criminal case, is at best misplaced. Tellingly, they cite no case law that supports their argument that they are entitled to the government's criminal discovery, nor could they; the law is clear that there is no public right of access to criminal discovery. See Seattle Times Co. v. Rhinehart, 467 U.S. 20, 37 (1984) (holding that a protective

order in the context of discovery "does not offend the First Amendment"); In re Boston Herald, 321 F.3d 174, 183 (1st. Cir. 2003) (noting that courts have rejected claims of First Amendment access to discovery materials); Anderson v. Cryovac, Inc., 805 F.2d 1, 13 (1st Cir. 1986) ("History and logic lead us to conclude that there is no presumptive first amendment public right of access to documents…in connection with discovery motions."); United States v. Bulger, 283 F.R.D. 46, 60 (D. Mass. 2012) (holding no "First Amendment right of access" to discovery materials); United States v. Salemme, 985 F. Supp. 193, 195 (D. Mass. 1997) ("Documents that play no role in the performance of Article III functions, such as those passed between the parties in discovery, lie entirely beyond the presumption's reach….") (quoting United States v. Amadeo, 71 F.3d 1044, 1050 (2d Cir. 1995)).

        In addition, much of the material included in the government's discovery productions is grand jury material disclosed to the criminal defendants pursuant to Rule 6(e)(3)(E)(i) of the Federal Rules of Criminal Procedure.  While Rule 6(e) does not impose an obligation of secrecy on the criminal defendants, see Liberty Mut. Ins. Co. v. Diamante, 193 F.R.D. 15, 18 (D. Mass. 2000), the Supreme Court has held that parties seeking disclosure of grand jury material "must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed."  Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. 211, 222 (1979).  Courts evaluating such requests "must consider not only the immediate effects upon a particular grand jury, but also the possible effect upon the functioning of future grand juries."  Id.  The St. Thomas Entities have not met this burden.  They have put forth no showing of a possible injustice if the criminal discovery is not provided to them or a need that outweighs the need of continued secrecy of grand jury proceedings, nor have

they made a structured request limited to only the material they assert they need.  Instead, the St. Thomas Entities have made an unsupported request for the five criminal discovery productions, which encompass material collected for over two years by the grand jury and federal criminal investigators.

Furthermore, given the vast public interest in this case and the number of people who would be allowed access to the government's criminal discovery if the Court does not deny the St. Thomas Entities' motion to compel, there is a real chance of the documents and/or information contained therein – including grand jury material – being leaked.  Although a protective order could be entered to limit the public's access to such documents, as could be the case with the deposition testimony of government witnesses if the Court allows that discovery to proceed, there is simply too much at stake here to risk leaks of this information.  The Court should not allow the St. Thomas Entities to jeopardize the integrity of the criminal case in this way either.

Further, vast amounts of the criminal discovery are simply not relevant to the civil litigation.  The discovery contains the fruits of the government's extensive criminal investigation as it investigated the outbreak and whether anyone should be held criminally accountable for the tragedy that had unfolded.  As evidenced by the indictment, the government believes its investigation revealed as much.  There are 131 counts in the resulting indictment, many of which have no bearing whatsoever on the civil litigation.

Finally, allowing the St. Thomas Entities to have the criminal discovery would set a dangerous precedent for civil litigants in other parallel criminal and civil cases going forward.  Such abuse of the criminal discovery, and criminal justice, process should not be allowed by this Court.  The Fourth Circuit directly addressed this concern in United States v. Moussaoui, 483

F.3d 220, 233 (4th Cir. 2007), in which a district court ordered the government to provide civil litigants, which included 9/11 victims, access to non-public discovery materials provided in the criminal case against Zacarias Moussaoui.  In overturning the district court's order, the Fourth Circuit noted strong policy reasons why civil litigants should not be granted access to non-public criminal discovery materials.  First, the appellate court noted that granting the civil plaintiffs' request "would burden district courts presiding over criminal cases with time-consuming civil discovery requests.  Moreover, the criminal court will be forced to educate itself about the civil litigation to determine whether the discovery request should be granted, and the civil court would ultimately be forced to interpret the criminal court's order and determine where it fits within the civil court's discovery plan."  Id. at 237.  Second, the Fourth Circuit held that "there is a real question of whether a criminal court is competent to review the necessity for a discovery order with respect to civil litigation in another jurisdiction."  Id.  Third, providing civil litigants with non-public criminal discovery "might place an unfair burden on criminal defendants, the Government, and the public."  Id. at 238.  The court explained that, "[i]f the Government was forced to disclose any materials given to defendants also to civil victims for use in litigation, it would have good reason to discontinue open door policies because of concerns over increased general access to sensitive materials.  Moreover, by forcing the Government to more carefully scrutinize and screen materials, trials would be unnecessarily lengthened, thereby implicating the defendant's and the public's speedy trial interests."  Id.; see also United States v. Anderson, 799 F.2d 1438, 1441 (11th Cir. 1986) (upholding denial of civil litigants' request for criminal non-public discovery because it would chill voluntary discovery, and "the consequences to the smooth functioning of the discovery process would be severe").  Finally, the Fourth Circuit explained that the plaintiffs and the district court have not "offered a reasonable limiting

principle that might constrain future requests." <u>Moussaoui</u>, 483 F.3d at 238.  "The district court's orders, then, if allowed to stand, would create a dangerous precedent that could lead to numerous victims intruding upon criminal trials for the purpose of obtaining discovery for their civil actions." <u>Id.</u>  This Court should not set that precedent.

## <u>CONCLUSION</u>

For all of these reasons, the government requests that the Court:  grant its motion to intervene, stay the depositions of any former employees of NECC or MSM that are potential government witnesses, stay the Rule 30(b)(6) deposition of the MABOP, and deny the St. Thomas Entities' Motion to Compel Criminal Discovery.

Respectfully submitted,

CARMEN M. ORTIZ
UNITED STATES ATTORNEY

By:     /s/ Amanda P.M. Strachan
        AMANDA P.M. STRACHAN
        BBO # 641108
        GEORGE P. VARGHESE
        Assistant United States Attorneys
        John Joseph Moakley Courthouse
        One Courthouse Way, Suite 9200
        Boston, Massachusetts  02210
        (617) 748-3100
        amanda.strachan@usdoj.gov
        george.varghese@usdoj.gov

Dated:  September 4, 2015

<u>Certificate of Compliance with Local Rule 7.1</u>

I hereby certify that on several dates in August and September, 2015, the United States conferred with counsel for the St. Thomas Entities regarding the substance of this Motion.  On September 4, 2015, the United States also conferred with counsel for the PSC.  The St. Thomas Entities and the PSC assent to the government's request to intervene as set forth in this Motion. The St. Thomas Entities and the PSC take no position, and reserve all rights, on the other relief requested by the government in this Motion.


                                        By:     /s/ Amanda P.M. Strachan
                                                AMANDA P.M. STRACHAN
                                                Assistant United States Attorney

Dated:  September 4, 2015


<u>Certificate of Service</u>

I hereby certify that the foregoing document filed through the ECF system will be sent electronically to counsel of record who are registered participants as identified on the Notice of Electronic Filing (NEF).


                                        By:     /s/ Amanda P.M. Strachan
                                                AMANDA P.M. STRACHAN
                                                Assistant United States Attorney

Dated:  September 4, 2015