UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MDL NO. 13-02419-RWZ

IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC.
PRODUCTS LIABILITY LITIGATION

MEMORANDUM OF DECISION

September 8, 2015

ZOBEL, D.J.

On January 13, 2015, defendants Box Hill Surgery Centers, L.L.C., Ritu T. Bhambhani, M.D., and Ritu T. Bhambhani, M.D., L.L.C. (collectively the "Box Hill Defendants"), sought dismissal of all claims against them for failure to state a claim under Fed. R. Civ. 12(b)(6) (Docket # 1639). The parties subsequently narrowed the issues before me, leaving for decision only whether the claims for strict liability, violations of Maryland and Massachusetts consumer protection statutes, and punitive damages should be dismissed.

For the reasons that follow, defendants' motion is DENIED IN PART and ALLOWED IN PART.

I.     **Background**[1]

   A.     **The Multidistrict Litigation**

This multidistrict litigation stems from an outbreak of fungal meningitis caused by contaminated methylprednisolone acetate ("MPA") manufactured and sold by the New England Compounding Pharmacy, Inc., d/b/a New England Compounding Center ("NECC").  NECC operated a compounding pharmacy in Framingham, Massachusetts, that combined and mixed ingredients to create specific formulations of pharmaceutical products.  In the Fall of 2012, health officials traced a number of cases of fungal meningitis to injections of MPA that had been manufactured by NECC.  NECC initiated a recall of several contaminated batches of MPA before eventually surrendering its pharmacy license and ceasing production of all pharmaceutical products.  NECC filed for Chapter 11 bankruptcy in December 2012.

Lawsuits alleging death or injury caused by contaminated MPA were filed against NECC, affiliated entities and individuals, and/or health care providers in multiple state and federal jurisdictions around the country beginning in November 2012.  In February 2013, the Judicial Panel on Multidistrict Litigation ("JPML") issued an order under 28 U.S.C. § 1407 transferring a number of cases pending in several federal courts to this court for coordinated and consolidated pretrial proceedings; subsequent JPML orders also transferred "tag-along" cases here.  Other cases pending in both federal and state court were likewise transferred to this court via additional transfer

---

[1] A detailed account of the background of the case is set forth in previous opinions of the court. See, e.g., In re New Eng. Compounding Pharm., Inc. Prods. Liability Litig., 496 B.R. 256, 260-263 (D. Mass. 2013).  Only a brief summary is outlined here.

2

orders.  See In re New Eng. Compounding Pharm., Inc. Prods. Liability Litig., 496 B.R. 256 (D. Mass. 2013) (Docket # 176); In re New Eng. Compounding Pharm., Inc. Prods. Liability Litig., Civil Action No. 13-2419-RWZ, 2014 WL 2040139 (D. Mass. May 15, 2014) (Docket # 1131); June 4, 2014, Transfer Order (Docket # 1173).

On November 5, 2013, in accordance with MDL Order No. 6 (Docket # 209), the court-appointed plaintiffs' steering committee filed a master complaint against numerous non-NECC parties, including hospitals, clinics, and health care facilities (as well as their physicians, staff, agents, and employees) that allegedly obtained contaminated MPA from NECC and administered it to their patients.[2]  See Master Complaint ("Master Compl."), Docket # 545.  Plaintiffs who already had cases on file or who wished to file in the multidistrict litigation thereafter filed short-form complaints to assert facts and claims as set out in the master complaint.

B.     The Box Hill Actions

Plaintiffs allege that they were administered contaminated NECC MPA by the Box Hill Defendants, and that they suffered injuries and damages as a result. They allege the Box Hill Defendants owed them a duty of care based on their physician-patient relationship, and that those defendants breached that duty by bulk ordering MPA from NECC through the use of lists of false patient names and failure to make any inquiry into the safety of NECC's products.

---

[2] The master complaint was intended to be an administrative tool, allowing the allegations and claims against all defendants to be stated in one document.

On April 2, 2015, the plaintiffs stipulated to the dismissal of their claims of Battery, *Respondeat Superior*, and Civil Conspiracy, while the defendants stipulated to the denial of their motion to dismiss claims of Negligence, Informed Consent, Wrongful Death, and Loss of Consortium.  Docket # 1761.  That stipulation was given effect by order of the court on April 17, 2015.  Docket # 1780.

There remain for disposition plaintiffs' claims for strict liability, consumer fraud, and punitive damages which defendants have moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

## II.    Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Plausibility "is not akin to a probability requirement, but [requires] more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678.  Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id.  When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court accepts as true all factual allegations contained in the complaint, but not legal conclusions.  Id.

## III.   Discussion

### A.    Motion to Dismiss for Failure to State a Claim (Docket # 1639)

4

## 1.      Strict Liability (Count VI)[3]

Defendants assert that they cannot be subject to strict liability because they were providers of a service.  In Maryland, to recover under a theory of strict liability, "it must be established that (1) the product was in defective condition at the time that it left the possession or control of the seller, (2) that it was unreasonably dangerous to the user or consumer, (3) that the defect was a cause of the injuries, and (4) that the product was expected to and did reach the consumer without substantial change in its condition."  Phipps v. Gen. Motors Corp., 278 Md. 337, 344 (1976).  This does *not* apply, however, to the sale of goods combined with the provision of medical services, when the provision of service predominates the sale of the good.  See Burton v. Artery Co., 279 Md. 94, 109, 367 A.2d 935, 943 (1977) ("whether [the contract's] predominant factor, [its] thrust, [its] purpose, reasonably stated, is the rendition of service, with goods incidentally involved (e.g., contract with artist for painting) or is a transaction of sale, with labor incidentally involved (e.g., installation of a water heater in a bathroom)" determines the applicability of strict liability); see also Roberts v. Suburban Hospital Assoc., 73 Md. App. 1, 1987).

Here, "the provision of the MPA was part-and-parcel with the service of its injection -- the only purpose of the visit was the injection itself, something only a physician with special skill could provide."  Docket # 1642 at 10.  Under Maryland law, there is no action for strict liability on the complaint as alleged.

---

[3]Except in Handy v. Box Hill Surgery Center, LLC., No: 1:14-cv-14019, in which no such claim is made.

### 2. Maryland Consumer Fraud and Mass. Gen. Laws ch. 93A (Count XI)

In Maryland, there is "no question that [, e.g.,] the implanting of dental fillings [is] a professional service of a dentist and that a plaintiff [cannot] pursue a claim under the Consumer Protection Act against a dentist for injuries suffered as a result of dental treatment." Scull v. Groover, Christie & Merritt, P.C., 435 Md. 112, 131, 76 A.3d 1186, 1197 (2013) (discussing Hogan v. Md. State Dental Ass'n, 155 Md. App. 556 (2004)). Plaintiffs have provided no basis of distinction between the facts in Hogan, as discussed in Scull, and those in the present case. The Maryland Consumer Fraud claims are dismissed.

As for the plaintiffs' claims under Mass. Gen. Laws ch. 93A, the language of the statute is clear, if extraordinarily broad. Section 9 of the Act provides for a civil remedy to "any person ... who has been injured by another person's use or employment of any method, act or practice declared to be unlawful by section two [of this act]." Mass. Gen. Laws ch. 93A § 9. Section 2 of the Act prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce," Mass. Gen. Laws ch. 93A § 2(a), and defines "trade or commerce" as including "the sale ... of any services and ... any trade or commerce directly or indirectly affecting the people of [Massachusetts]." Id. § 1(b). The complaint alleges at length a pattern by the Box Hill Defendants of bulk ordering MPA from NECC under false names in violation of Massachusetts law. There can be no question that this pattern of commerce with a Massachusetts pharmacy had some effect, directly or indirectly, on persons within

Massachusetts, *e.g.*, NECC itself, formerly a legal person within Massachusetts. The motion to dismiss plaintiffs' ch. 93A claims is DENIED.

### 3. Punitive Damages (Count XIV)

In Maryland, punitive damages may be awarded upon a showing of "actual malice," "characterized by evil motive, intent to injure, ill will, or fraud." Garcia v. Foulger Pratt Dev., Inc., 155 Md. App. 634, 684 (2003). The complaints allege the defendants acted with "oppression, fraud and malice," and allege the defendants deceived their patients by giving them cheaper, non-FDA regulated and fraudulently obtained NECC compounded MPA instead of FDA regulated drugs. This is a sufficient allegation of fraud to maintain an action for punitive damages.

## IV. Conclusion

The Box Hill Defendants' motion to dismiss is ALLOWED IN PART and DENIED IN PART.

The motion is ALLOWED as to plaintiffs' claims for strict liability (Count VI) and Maryland Consumer Fraud, and those claims are DISMISSED.

The motion is DENIED as to plaintiffs' claims under Mass. Gen. Laws ch. 93A and for punitive damages.

|  |  |
|---|---|
| September 8, 2015 | /s/Rya W. Zobel |
| DATE | RYA W. ZOBEL<br>UNITED STATES DISTRICT JUDGE |