UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN RE: NEW ENGLAND COMPOUNDING
PHARMACY, INC. PRODUCTS LIABILITY
LITIGATION

This Document Relates to:
    All Cases

MDL No. 1:13-md-2419-RWZ

**THE POST-CONFIRMATION OFFICER'S OPPOSITION TO MOTION TO
REVISE (OR TO RECONSIDER) ORDER GRANTING A PROTECTIVE ORDER
PRECLUDING THE TENNESSEE CLINIC DEFENDANTS FROM DEPOSING NECC**

Paul D. Moore, the Post-Confirmation Officer (the "Post-Confirmation Officer"[1]) of New England Compounding Pharmacy, Inc. ("NECC" or the "Debtor"), hereby sets forth his opposition to the Motion to Revise (or to Reconsider) Order Granting the Trustee a Protective Order Precluding the Tennessee Clinic Defendants from Deposing NECC [Dkt. No. 2185] (the "Motion to Reconsider").

### I.   INTRODUCTION

The Tennessee Clinic Defendants served upon the Chapter 11 Trustee a subpoena, seeking a deposition, pursuant to Fed. R. Civ. P. 30(b)(6), on thirty-one topics[2] relating to NECC's operations prior to the Chapter 11 Trustee's appointment. In a meet and confer, the Tennessee Clinic Defendants were advised that among other things: (1) the Chapter 11 Trustee has no personal knowledge whatsoever as to the Rule 30(b)(6) topics as to which examination is requested; (2) NECC has no officers, director, managing agents or others who have knowledge of the Rule 30(b)(6) topics and who will consent to testify on NECC's behalf; and (3) on the

---

[1] The Post-Confirmation Officer formerly served as the chapter 11 trustee of the debtor, and, in that capacity, is herein referred to as the "Chapter 11 Trustee."

[2] A copy of the subpoena and deposition notice is attached hereto as Exhibit A.

effective date, the NECC Insurance Policies were deemed completely exhausted and all of the insurer's obligations under the Insurance Policies extinguished. As a result, any defense costs incurred in responding to the subpoena would have to be paid out of the assets of the Tort Trust established to pay victims of the outbreak. The Tennessee Clinic Defendants refused to modify or withdraw the deposition subpoena, and the Chapter 11 Trustee thereafter filed the Motion of the Chapter 11 Trustee for a Protective Order Pursuant to Fed. R. Civ. P. 27(c) and 45(c) Precluding the Tennessee Clinic Defendants from Conducting a Deposition of New England Compounding Pharmacy, Inc. Pursuant to Fed. R. Civ. P. 30(b)(6) [Dkt. No. 1810] (the "Motion for a Protective Order").

This Court granted the Motion for a Protective Order in a Memorandum and Order, dated July 31, 2015 [Dkt. No. 2123] (the "Memorandum and Order"), in which this Court made the following findings and conclusions:

> On December 21, 2012, NECC filed a voluntary petition for relief pursuant to chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Massachusetts. Moore Aff. at ¶ 3.[3] Paul D. Moore was subsequently appointed Trustee for the chapter 11 estate of NECC. Id. at ¶¶ 4-5. NECC had ceased operations four months prior to the Trustee's appointment. Id. at ¶ 9. All employees had resigned or had been terminated. Id. Prior to his appointment, Moore had no involvement with, or knowledge of, NECC or its operations. Id.
>
> As Trustee, Moore's goal was to marshal all of the assets of NECC's chapter 11 estate for eventual distribution to creditors under chapter 11 of the Bankruptcy Code. Id. at ¶ 10. On May 20, 2015, the Bankruptcy Court entered an order confirming the Third Amended Joint Chapter 11 Plan of NECC (the "Plan"). Docket No. 1890 at 1.

---

[3] "Moore Aff." refers to the Declaration of Chapter 11 Trustee in Support of Motion of the Chapter 11 Trustee for a Protective Order Pursuant to Fed. R. Civ. P. 26(c) Precluding the Tennessee Clinic Defendants from Conducting a Deposition of New England Compounding Pharmacy, Inc. Pursuant to Fed. R. Civ. P. 30(b)(6) [Dkt. No. 1810-2].

In broad strokes, the Plan provides, among other things, that the Trustee will fund a Tort Trust to distribute compensation to victims of the outbreak. The Tort Trust was funded by settlements with NECC, its affiliates, owners, and some of their insurance companies. *See generally* Docket No. 1574.

The effective date of the Plan was June 4, 2015. Docket No. 1951. On the effective date, the NECC Insurance Policies were deemed completely exhausted and all of the insurer's obligations under the Insurance Policies extinguished. Plans § 5.02(i). As a result, any defense costs incurred by Moore would have to be paid out of the assets of the Tort Trust established to pay victims of the outbreak. *See* Docket No. 1811 at 7.

[T]he Court finds that under the unique circumstances of this case, the Trustee should not have to designate a Rule 30(b)(6) designee to testify on behalf of NECC. The Court has been unable to find a case quite like this one, where not only most of the principals of the corporation have been indicted and have expressed an intention to invoke their Fifth Amendment rights but where the corporation has also filed for bankruptcy and is no longer operating. One of the Trustee's main responsibilities in the bankruptcy case was to marshal the assets of NECC for distribution to creditors, including the victims of the outbreak. He has no apparent personal knowledge of any of the proposed subjects for examination. The former owners and principals of NECC are not available to help with the preparation of Rule 30(b)(6) witness. *See City of Chicago v. Reliable Truck Parts Co., Inc.*, 768 F. Supp. 642, 646 (N.D. Ill. 1991) ("[T]his court cannot compel the individual defendants who choose to remain silent to respond to inquiries by the 30(b)(6) deponent."). Therefore, preparing a Rule 30(b)(6) witness would be an extraordinary undertaking. Every dollar spent by the Trustee and/or his counsel investigating the topics listed in the Rule 30(b)(6) notice and preparing a witness with no prior knowledge of these topics results in one less dollar available to the victims.

Moreover, the Clinic Defendants inability to take NECC's deposition does not limit their ability to conduct discovery from NECC altogether. The Trustee has already made many documents available in response to the subpoena. Docket No. 1811 at 5. It also appears that the Plaintiffs are willing to stipulate that NECC distributed the product administered by the Clinic Defendants, thereby eliminating the need for some of the discovery they seek. *Id.* Admittedly, the Clinic Defendants will be unable to conduct the discovery they would under normal circumstances. However, in balancing all of the factors, the Court finds that the Trustee is

3

> entitled to a protective order. Accordingly, the Court grants the Trustee's motion.

Memorandum and Order at 2-4.

The Tennessee Clinic Defendants have now filed the Motion to Reconsider pursuant to Fed. R. Civ. P. 54(b). However, the Tennessee Clinic Defendants fail to meet the high burden for relief under Rule 54(b). The Motion to Reconsider should be denied.

## II. ARGUMENT

As the Tennessee Clinic Defendants concede, a movant seeking relief under Rule 54(b) faces a high burden:

> [A] motion to reconsider an interlocutory order should be granted "only when the movant demonstrates (1) an intervening change in the law; (2) discovery of new evidence not previously available; or (3) a clear error of law in the first place."

Tennessee Clinic Defendants' Memorandum of Law in Support of Motion to Revise (or to Reconsider) Order Granting the Trustee a Protective Order Precluding the Tennessee Clinic Defendants from Deposing NECC [Dkt. No. 2186] at 4 (citing *Federal Home Loan Bank of Boston v. Ally Fin., Inc.*, No. 11-10952-GOA, 2014 U.S. Dist. LEXIS 140975 (D. Mass. Sept. 30, 2014)).

The Motion for a Protective Order does not rely upon an intervening change in the law, or assert that this Court made a clear error of law. Instead, the sole basis for the Tennessee Clinic Defendants' Motion is that they recently discovered the scope of fees incurred by professionals in the NECC chapter 11 proceeding and that this information undermines any argument that compliance with the subpoena would burden the NECC estate.

This argument fails to provide a basis for reconsideration of this Court's Memorandum and Order.

4

**A.     The amount of fees incurred in NECC's chapter 11 case is not "newly discovered evidence."**

The scope of fees requested in NECC's chapter 11 proceeding is not "newly discovered evidence." On the contrary, a projection of such fees was disclosed on February 22, 2015 in the Disclosure Statement for First Amended Joint Plan of Reorganization of New England Compounding Pharmacy, Inc., Dated February 22, 2015, [Dkt. No. 1707-1] (the "Disclosure Statement"). The Disclosure Statement states, at Art. IV § 4.1(b)(ii), that:

> a.     Through January 31, 2015, Duane Morris LLP, as counsel to the Chapter 11 Trustee, incurred approximately $3.6 million in professional fees and expenses. Duane Morris LLP anticipated that it would incur approximately $1.5 million in additional professional fees and expenses as counsel to the Chapter 11 Trustee between January 31, 2015 and the Effective Date.
>
> b.     The Chapter 11 Trustee also spent significant time and effort performing duties which might be deemed to be generally performed by a trustee without the assistance of an attorney or accountant for the estate and which, if billed, would result in fees in the approximate amount of $897,000.
>
> c.     The Bankruptcy Code provides that compensation for trustee services is payable, after consideration of various factors, on a commission basis applying various percentages, capped at an amount not to exceed three (3) percent of monies in excess of $1,000,000, upon all monies disbursed or turned over by the Chapter 11 Trustee to parties in interest, excluding the debtor.
>
> d.     Through January 31, 2015, Mesirow Financial Consulting, LLC, as the Trustee's financial advisor, had incurred approximately $435,000 in professional fees and expenses. Mesirow Financial Consulting, LLC anticipated that it would incur approximately $635,000 in additional fees and expenses between January 31, 2015 and the Effective Date.
>
> e.     Through January 31, 2015, Brown Rudnick LLP, as counsel to the Official Committee, had incurred approximately $3.4 million in professional fees and expenses. Brown Rudnick LLP anticipated that it will incur approximately $1.25 million in additional professional fees and expenses between January 31, 2015 and the Effective Date.

      f.      Through January 31, 2015, Perkins Coie, LLP, as special insurance coverage counsel to the Committee, had incurred approximately $100,000 in professional fees and expenses. The Plan Proponents anticipated that Perkins Coie, LLP, would incur no additional professional fees and expenses between the date of this Disclosure Statement and the Effective Date, except such fees and expenses as may be incurred in connection with the preparation of any fee applications and attendance at related hearings.

      g.      Through January 31, 2015, Murtha Cullina LLP, as counsel to the Debtor, had incurred $196,500 in professional fees and expenses. Murtha Cullina LLP held a retainer in the amount of $127,173.88 in an interest bearing account. The Plan Proponents anticipated that Murtha Cullina LLP would incur no additional professional fees and expenses between the date of this Disclosure Statement and the Effective Date, except such fees and expenses as may be incurred in connection with the preparation of any fee applications and attendance at related hearings.

      h.      On December 21, 2012, prior to the appointment of the Chapter 11 Trustee, the Debtor filed with the bankruptcy court an application to retain Verdolino & Lowey, P.C. as a financial advisor to the Debtor. The bankruptcy court had not ruled on that retention application. Through January 31, 2015, Verdolino & Lowey, P.C. had incurred approximately $131,000 in professional fees and expenses. The Plan Proponents anticipated that Verdolino & Lowey, P.C. would incur no additional professional fees and expenses between the date of this Disclosure Statement and the Effective Date, except such fees and expenses as may be incurred in connection with: (a) any hearing on the Debtor's application to retain Verdolino & Lowey P.C.; and (b) the preparation of any fee applications and attendance at related hearings.

The Disclosure Statement was served electronically upon all parties registered to receive ECF service in the bankruptcy case. *See* Certificate of Service of Disclosure Statement [Bankruptcy Dkt. No. 1172]. Counsel to the Tennessee Clinic Defendants had previously entered their appearance in the bankruptcy case. [Bankruptcy Dkt. No. 292] and therefore were served with the Disclosure Statement on February 22, 2015.

The Disclosure Statement was also served electronically upon those parties registered to receive ECF service in this case. *See* Certificate of Service for Notice of Filing of Disclosure

6

Statement [Dkt. No. 1707].  Prior to the filing and service of the Disclosure Statement, counsel for the Tennessee Clinic Defendants had twice entered their appearance [Dkt. Nos. 217 and 267], and electronically filed a third pleading [Dkt. No. 858] in this case. Counsel are also identified as representing interested parties on this cases' electronic civil docket.  Counsel to the Tennessee Clinic Defendants received ECF service of filings in this case, and were served with the Disclosure Statement on February 22, 2015 in this case.

The amount of professional fees sought in NECC's chapter 11 proceeding is not "newly discovered evidence" and cannot form the basis for relief under Rule 54.

### B. The amount of professional fees sought in NECC's chapter 11 proceeding is irrelevant to the issues raised in the Motion for a Protective Order.

Further, the scope of professional fees incurred in the chapter 11 proceeding is irrelevant to the issues raised in the Motion for a Protective Order and to the bases for this Court's Memorandum and Order.  As this Court found:

> [The Chapter 11 Trustee] has no apparent personal knowledge of any of the proposed subjects for examination.  The former owners and principals of NECC are not available to help with the preparation of Rule 30(b)(6) witness.

Memorandum and Order at 2.

This Court noted that every dollar that the NECC estate would spend performing an investigation for the benefit of the Tennessee Clinic Defendants (and which the Tennessee Clinic Defendants are capable of performing themselves) "results in one less dollar available to the victims."  Memorandum and Order at 2.  This conclusion is true regardless of the amount of professional fees which the bankruptcy court may award in NECC's chapter 11 proceeding on account of fees incurred prior to the Plan's Effective Date of June 4, 2015.  Regardless of the scope of those professional fees, the burden imposed upon the NECC estate by the Rule 30(b)(6)

7

subpoena and the additional fees that would be incurred if the Post-Confirmation Officer were compelled to respond to the subpoena remain the same.

### C. The Tennessee Clinic Defendant's Modification of the Proposed Rule 30(b)(6) topics provides no basis for reconsideration under Rule 54.

In an effort to support their Motion, the Tennessee Clinics belatedly seek a "second bite of the apple," by offering to reduce the scope of their Rule 30(b)(6) request to the following topics:

> 1. The accuracy of NECC's customer lists published by the CDC after the outbreak.
>
> 2. Whether any customer or prospective customer of NECC, from 2008 to the time NECC ceased operations, performed a site visit of NECC and, if so, identification of the health care provider, date of the inspection, and whether the customer thereafter purchased medication from NECC.
>
> 3. The due diligence generally conducted by health care provider customers of NECC before purchasing medication from NECC in 2008-12.
>
> 4. Any conversations NECC had with the Tennessee Clinic Defendants in 2011-12, through its employees or salespeople.
>
> 5. What NECC customers, if any, utilized individual patient-specific prescriptions when ordering medications from NECC in 2011-12, and whether NECC maintained a list of these customers.
>
> 6. NECC's process for compounding the three batches of MPA at issue.

Motion to Reconsider at 2. Reduction of the number of topics is not grounds for reconsideration of the Court's ruling. Moreover, although the number of Rule 30(b)(6) topics is now reduced, the rational for the court's Memorandum and Order applies with equal force to these topics, all of which were previously before the Court. The Post-Confirmation Officer has no personal knowledge of these topics and the former management of NECC is unavailable to him. Thus, the unfair burden on the NECC estate remains the same. Every dollar that the NECC estate would

spend performing an investigation for the benefit of the Tennessee Clinic Defendants "results in one less dollar available to the victims."

### III. CONCLUSION

This Court should deny the Motion to Reconsider.


Dated: September 8, 2015
       Boston, Massachusetts

Respectfully submitted,

**DUANE MORRIS LLP**

By: /s/ *Michael R. Gottfried*
Michael R. Gottfried, Esq. (BBO #542156)
100 High Street, Suite 2400
Boston, MA 02110-1724
Telephone: (857) 488-4200
Facsimile: (857) 488-4201
mrgottfried@duanemorris.com

Michael R. Lastowski, Esq. (admitted *pro hac vice*)
222 Delaware Avenue, Suite 1600
Wilmington, DE 19801-1659
Telephone: (302) 657-4900
Facsimile: (302) 657-4901
mlastowski@duanemorris.com

*Counsel to the Post-Confirmation Officer*

## **CERTIFICATE OF SERVICE**

I, Michael R. Gottfried, hereby certify that on this day, September 8, 2015, I caused a copy of the foregoing document and all attachments, which were filed using this Court's ECF system, to be served electronically upon those parties registered to receive ECF service.

/s/ *Michael R. Gottfried*