UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | MDL No. 13-02419-RWZ |
| THIS DOCUMENT RELATES TO: All Cases. | |

**THE POST-CONFIRMATION OFFICER'S OPPOSITION
TO THE TENNESSEE CLINIC DEFENDANTS' MOTION TO COMPEL
COMPLIANCE WITH SUBPOENA TO NECC**

Paul D. Moore, the Post-Confirmation Officer[1] (the "Post-Confirmation Officer") of New England Compounding Pharmacy, Inc. ("NECC"), by and through his undersigned counsel, hereby opposes the Motion to Compel Compliance with Subpoena to NECC (the "Motion to Compel") of Defendants Saint Thomas Outpatient Neurosurgical Center, LLC, Howell Allen Clinic, a Professional Corporation, John Culclasure, MD, Debra Schamberg, RN, CNOR, Vaughan Allen, MD, PC, and Donald E. Jones, MD (collectively, the "Tennessee Clinic Defendants").  For the reasons set forth more fully below, this Court should find that the Post-Confirmation Officer reasonably complied with NECC's obligations pursuant to Fed. R. Civ. P. 45 in response to the Tennessee Clinic Defendants' Subpoena *Duces Tecum* dated April 17, 2015 (the "Subpoena") and the Motion to Compel should be denied.

In support of this Opposition, the Post-Confirmation Officer respectfully states as follows:

---

[1] The Post-Confirmation Officer formerly served as the chapter 11 trustee of NECC, and, in that capacity, is herein referred to as the "Chapter 11 Trustee."

## BACKGROUND

1.      On December 21, 2012 (the "Petition Date"), NECC filed a voluntary petition for relief pursuant to chapter 11 of the United States Bankruptcy Code.

2.      On January 25, 2013, this Court granted the UST's *Certificate of Appointment* appointing Paul D. Moore as the Chapter 11 Trustee for NECC's estate.

3.      The Chapter 11 Trustee employed the firm Harris Beach PLLC ("Harris Beach") as special counsel to, among other things, coordinate the collection, processing, review and production of NECC's documents.  In the course of its employment as special counsel, Harris Beach responded to informal and formal requests for discovery on behalf of the Chapter 11 Trustee.  As of the date of this Opposition, Harris Beach has deposited approximately 93,815 pages of documents in the U.S. Legal Repository (the "Repository") maintained by the Plaintiffs' Steering Committee ("PSC"), and approximately 11,029 pages of HIPAA-protected documents in the Rust Omni database ("Rust Omni Database") maintained by the PSC.  Harris Beach received compensation for these services from NECC's insurer rather than being paid from property of NECC's bankruptcy estate.

4.      The Tennessee Clinic Defendants served the Subpoena on the Chapter 11 Trustee on April 17, 2015.

5.      On May 1, 2015, the Chapter 11 Trustee served both his *Objections to the Tennessee Clinic Defendants' Subpoena* (the "Subpoena Response") and a *Motion for a Protective Order Pursuant to Fed. R. Civ. P. 26(c) and 45(c) Precluding the Tennessee Clinic Defendants from Conducting a Deposition of NECC Pursuant to Fed. R. Civ. P. 30(b)(6)* (the "Motion for Protective Order").

6.     In connection with his Subpoena Response, the Chapter 11 Trustee agreed to and had Harris Beach search the Repository and Rust Omni Database for documents responsive to Requests 2, 5, 6, 9, 12, 17, 18, and 19 of the Tennessee Clinic Defendants' Subpoena and specifically identified such responsive documents by their Bates-stamp ranges and production dates.  (See ECF No. 1811.)

7.     In or around mid-May, the Chapter 11 Trustee conducted additional searches for documents responsive to Requests 2, 3, 10, 11, 15, 16, 17, 18, and 19 of the Tennessee Clinic Defendants' Subpoena that had not already been produced to the Repository or Rust Omni Database and made a supplemental production of documents in response to Requests 10, 11, 15, and 16 of the Subpoena, which were identified by Bates-stamp range NECC_MDL000032792-34282 and uploaded to the Repository.  The Chapter 11 Trustee determined that there were no additional documents responsive to Requests 2, 3, 17, 18, and 19 of the Subpoena.

8.     On May 20, 2015, the Bankruptcy Court entered an order (the "Confirmation Order") confirming the *Third Amended Joint Chapter 11 Plan of NECC* (the "Plan").

9.     Pursuant to the terms of the Plan, a Tort Trust was created to distribute compensation to victims of the Outbreak, which was funded by settlements by and between NECC, its affiliates, owners, and some of their insurance companies.

10.     The effective date of the Plan occurred on June 4, 2015 (the "Effective Date").

11.     As of the Effective Date, NECC's insurance policies were deemed completely exhausted and all of the obligations thereunder, including the obligation to pay Harris Beach's fees and expenses, were extinguished.  Thus, all of the costs incurred by the Post-Confirmation Officer responding to and defending against the Tennessee Clinic Defendants' Subpoena from

and after the Effective Date will be paid out of the assets of the Tort Trust created to pay the victims.

12.     Prior to the Effective Date, and in anticipation of the impending loss of insurance defense coverage with which to compensate Harris Beach, the Post-Confirmation Officer had Harris Beach conduct a search for non-privileged documents relating to the following clinic defendants in the MDL litigation: (1) St. Thomas, (2) Saint Thomas Outpatient Neurosurgical Center (STOPNC), (3) Specialty Surgery, (4) Premiere Orthopedic, and (5) Box Hill. Responsive documents totaled approximately 60,907 pages and were identified by Bates-stamp range NECC_MDL000034283-95189 (the "Additional Documents") and uploaded directly into in the Repository and Rust Omni Databases.[2]  The production of the Additional Documents was intentionally completed prior to the Effective Date in an effort to avoid the victims shouldering the cost and expense of such production.

13.     The Tennessee Clinic Defendants sought to meet and confer with the Post-Confirmation Officer in connection with the Subpoena Response on July 21, 2015, more than seven weeks after receiving it, but the Post-Confirmation Officer thought such a meeting should be deferred until a ruling had been made by the Court on the Motion for Protective Order and certain choice of law issues, in order to avoid wasting resources.  Specifically, at the Court's request, certain parties have briefed the issue of what law is applicable to the trial of the Tennessee and New Jersey actions.  (ECF Nos. 1938, 2004, 2018, 2064, 2071, 2072, 2073, 2074, 2097.)  While the Post-Confirmation Officer takes no position on which law ought to apply to the actions proceeding to trial in Tennessee and New Jersey, it has remained the Post-

---

[2] It is highly possible that some of the Additional Documents are duplicates of documents that had already been produced in the MDL litigation.  This production is included in the totals provided in paragraph 3.

Confirmation Officer's view that a determination on which law will apply to the out-of-state proceedings may affect the relevance of the information sought by parties in discovery, particularly as to matters relating to "comparative fault" under applicable law.  (ECF No. 1925.)

14.     On July 31, 2015, this Court entered an order granting the Post-Confirmation Officer's[3] Motion for a Protective Order, finding that "under the unique circumstances of this case, the Trustee should not have to designate a Rule 30(b)(6) designee to testify on behalf of NECC."  (ECF No. 2123 at 18.)  This Court further found that the Post-Confirmation Officer "has no apparent personal knowledge of any of the proposed subjects for examination[,]" and that "[e]very dollar spent by the Trustee and/or his counsel investigating the topics listed in the Rule 30(b)(6) notice and preparing a witness with no prior knowledge of those topics results in one less dollar available to the victims."  (ECF No. 2123 at 18-19.)

15.     On August 8, 2015, the Tennessee Clinic Defendants sought to meet and confer with the Post-Confirmation Officer in connection with the Subpoena and his Subpoena Response, but the Post-Confirmation Officer thought such a meeting should be deferred until after the Court had ruled on the choice of law issues, in order to avoid wasting resources.

16.     The Tennessee Clinic Defendants filed the Motion to Compel on August 25, 2015, almost four months after receiving the Subpoena Response and well after the Effective Date.  (ECF No. 2190.)

---

[3] As of the Effective Date, the Chapter 11 Trustee became the Post-Confirmation Officer.

## ARGUMENT

**A.**   **The Post-Confirmation Officer Has Reasonably Complied with NECC's Obligations Under Fed. R. Civ. P. 45 and the Tennessee Clinic Defendants' Subpoena**

17.   The Tennessee Clinic Defendants assert in their Motion to Compel that the Post-Confirmation Officer sent the Tennessee Clinic Defendants "an unorganized, unindexed dump of nearly 100,000 documents."  (Mot. to Compel at 4.)

18.   First and foremost, directly contrary to that assertion, the 100,000 pages of documents that have been produced and made available to the Tennessee Clinic Defendants were Bates-stamped and uploaded into a searchable database.  The Tennessee Clinic Defendants can utilize whatever search terms they like to locate documents they feel are relevant to their defense.

19.   Further contrary to the Tennessee Clinic Defendants' assertion, the Subpoena Response specifically identified documents in the Repository responsive to Requests 2, 5, 6, 9, 12, 17, 18,  and 19 of the Subpoena by their Bates range and production dates.  (See ECF No. 1811.)

20.   The Post-Confirmation Officer also conducted additional searches of documents that were not already in the Repository or Rust Omni Database and made a supplemental production specifically identifying documents responsive to Requests 10, 11, 15, and 16, which were identified by Bates-stamp range NECC_MDL000032792-34282 and uploaded to the Repository.

21.   The Post-Confirmation Officer also conducted supplemental searches with respect to Requests 2, 3, 17, 18, and 19, and determined there were no additional responsive documents to be produced.

22.   In his Subpoena Response on May 1, 2015, the Post-Confirmation Officer offered to meet and confer with the Tennessee Clinic Defendants in connection with his objection that

Requests 4, 5, 6, 7, 9, and 12 were too broad to conduct a reasonable search, and remains willing to do so after the Court rules on the choice of law questions.

**B.**   **The Tennessee Clinic Defendants' "Overarching Issues" With the Post-Confirmation Officer's Responses and Objections to the Subpoena**

       **i.**   **Indices**

23.   In their Motion to Compel, the Tennessee Clinic Defendants request that the Post-Confirmation Officer

> be compelled to provide (1) an index of the documents that have been produced (to allow for some categorization of what has been produced); (2) Bates ranges for documents that are responsive to the Tennessee Clinic Defendants' document requests (*e.g.*, in response to Request No. __, the Trustee should be ordered to say that responsive documents have been produced at pages Bates numbered _____); and (3) an index of any relevant documents that have not been produced but are subject to pending document requests from the Tennessee Clinic Defendants.

(Mot. To Compel at 5.)

24.   Indices identifying the Bates-stamp ranges of documents responsive to each informal request for production of documents were uploaded into the Repository prior to April 17, 2015, the date of service of the Subpoena, and are therefore available to the Tennessee Clinic Defendants.

25.   Moreover, as illustrated above in the previous subsection, in connection with his Subpoena Response, the Post-Confirmation Officer did specifically identify by Bates-stamp range (and production date where applicable) documents responsive to Requests 2, 5, 6, 9, 10, 11, 12, 15, 16, 17, 18, and 19.

For example, in response to Request No. 18 of the Subpoena, which requested "Autoclaving records for batches 05212012@68; 06292012@26; 08102012@51," the Post-Confirmation Officer, notwithstanding his general and specific objections to such request, provided the following chart for the Tennessee Clinic Defendants:

| Document | Bates Range | Production Date |
|---|---|---|
| 05212012@68 LFW and ARL results | NECC_MDL000005160-5166 | 8/23/13 |
| 06292012@26 LFW and ARL results | NECC_MDL000005167-5172 | 8/23/13 |
| 08102012@51 LFW and ARL results | NECC_MDL000013368-13372 | 9/11/13 |

26.     Contrary to what the Tennessee Clinic Defendants characterize as a "document dump," the Post-Confirmation Officer was being proactive in light of the inevitable loss of insurance defense coverage by making the Additional Documents available without subjecting the victims to the cost of such production.

27.     Despite being given access to all of the responsive documents in the Post-Confirmation Officer's possession, the Tennessee Clinic Defendants are now asking this Court to compel the Post-Confirmation Officer to spend more time and money, at the expense of the victims no less, to conduct additional searches (which the Post-Confirmation Officer has objected to as too broad to conduct reasonably) of documents already produced to them.

28.     As this Court determined in its order of July 31, 2015, the Post-Confirmation Officer has no personal knowledge of the subjects of the Subpoena requests, however, the Tennessee Clinic Defendants are seeking to impose on the Post-Confirmation Officer, a non-party to the MDL litigation, the burden of searching and locating documents that are equally available, and presumably more familiar, to the Tennessee Clinic Defendants.

29.     More than 100,000 pages of documents have been Bates-stamped and uploaded into a searchable database that is available to the Tennessee Clinic Defendants.  The Tennessee Clinic Defendants may utilize whatever search terms they like to locate documents they feel are relevant to their defense.

30.     The Tennessee Clinic Defendants should not be allowed to shift their burden to the Post-Confirmation Officer or the cost and expense of such to the victims themselves.  To the

extent that the Tennessee Clinic Defendants seek to impose such a substantial cost of compliance on the Post-Confirmation Officer, who is a non-party, the cost of compliance should be at the Tennessee Clinic Defendants' expense. See Fed. R. Civ. P. 45(d)(2)(b)(ii).

ii.        **Documents Alleged by the Tennessee Clinic Defendants to be Missing**

31.    The Tennessee Clinic Defendants allege that approximately "10,000 documents were produced to the PSC but withheld from other parties," based upon the delta between the "43,000 or 44,000 pages of documents" that counsel to the Chapter 11 Trustee stated he had produced to the PSC as of the April 10, 2014 status conference and the "32,000 pages of documents" he stated had been produced in his Objections to the Subpoena. (Mot. To Compel at 5-6.)

32.    First and foremost, it should be noted that the Post-Confirmation Officer has made a total of 104,844 pages of documents available to the Tennessee Clinic Defendants as of the date of this Opposition. As of April 17, 2015, the date the Tennessee Clinic Defendants served the Subpoena, there were approximately 31,805 pages of documents that had been uploaded to the Repository and another approximately 9,655 pages of HIPAA-protected documents that had been uploaded to the Rust Omni Database. Another approximately 1,500 pages of documents were produced to the Tennessee Clinic Defendants in the Post-Confirmation Officer's supplemental production of documents. In response to the searches conducted immediately prior to the Effective Date, another approximately 60,907 pages of documents were uploaded to the Repository and Rust Omni Database.

33.    What the Tennessee Clinic Defendants mischaracterize as "10,000 missing documents" in their Motion to Compel are actually 9,655 pages of documents located in the Rust Omni Database.

34.     The Tennessee Clinic Defendants further allege in their Motion to Compel that "there is a ~1,500-page gap in NECC's page numbering, indicating additional documents are missing from NECC's production."  (Mot. To Compel at 6.)   However, the 1,500 "missing" pages of documents—numbered as NECC_MDL000030271-31809—are documents that were produced in response to requests for production of documents by Premier Orthopaedic Associates and uploaded to the Repository by the PSC on July 24, 2015; these documents have, therefore, been made available to the Tennessee Clinic Defendants.

35.     To the extent that there are documents that were produced to parties in the course of confidential mediation, those documents were not put in the Repository or Rust Omni Database and will not be produced to the Tennessee Clinic Defendants in accordance with the Mediation Protocol entered by the Court.  (See ECF No. 394.)

36.     Finally, while the Post-Confirmation Officer believes that a reasonable search has been conducted for relevant documents responsive to the Subpoena and that such documents have been placed in the Repository, and therefor that no further response should be required, to the extent the Court believes additional searches and/or other work needs to be done, the cost and expense of such production should be borne by the Tennessee Clinic Defendants themselves. See Fed. R. Civ. P. 45(d)(2)(b)(ii).

**C.     The Tennessee Clinic Defendants' Subpoena is Premature in Light of the Outstanding Choice of Law Questions Before this Court and, Furthermore, to the Extent that the Tennessee  Clinic Defendants are Entitled to any Discovery, that Discovery is Limited to Issues Relating to Comparative Fault**

37.     The Tennessee Clinic Defendants have moved to compel additional production in response to Requests 1, 4, 5, 6, 7, 9, 12, 13, 14, 16, 17, and 18.  While as set forth, supra, no additional discovery should be permitted, in the alternative, the Post-Confirmation Officer

believes that the Court should defer ruling on the Tennessee Clinic Defendants' Motion to Compel until it has ruled on the choice of law questions.

38.     Section 10.05 of the Plan contains releases (the "Plan Releases") in favor of the Debtor, Estate Representatives, Shareholder and Affiliate Released Parties and Other Contributing Parties (other than Ameridose) (the "Released Parties").   The releasing parties include the Debtor and Estate Representatives, Shareholder and Affiliate Released Parties, Other Contributing Parties and Tort Claimants.   Section 10.06 of the Plan contains injunctions (the "Plan Injunctions") in favor of the Released Parties.

39.     Prior to confirmation of the Plan, certain creditors advised the Plan Proponents that, although these creditors did not object generally to the Plan Releases and the Plan Injunctions, they would object to the Plan to the extent that these provisions might preclude them from allocating comparative fault among these creditors and the Released Parties in connection with lawsuits pending against them relating to NECC.

40.     After lengthy negotiations, the Plan Proponents and those parties seeking to preserve their ability to assert comparative fault allocation, including the Tennessee Clinic Defendants, agreed to the terms of a stipulation (the "Comparative Fault Stipulation"), which preserves defenses and allocation of liability based upon comparative fault.   The Comparative Fault Stipulation provides that parties may, in a civil action, name the Debtor and/or the Tort Trust, as successor in interest to the Debtor and/or the applicable Non-Insurer Contributing Party, for purposes of such preservation.   At the same time, the Comparative Fault Stipulation provides that the Chapter 11 Trustee, the Post-Confirmation Officer, any Non-Insurer Contributing Party and the Tort Trustee shall not: (a) be named a party in any underlying civil

action; (b) be required to enter an appearance in any such action; or (c) be subject to entry of an adverse judgment in any such action.

41.     The Comparative Fault Stipulation also provided for the inclusion of the following language in the Plan (the "Comparative Fault Plan Modification"):

> The release and injunction provisions of this Plan, specifically those in sections 10.05 and 10.06 of this Plan, shall not be deemed to abrogate any defense based upon comparative fault that may be available under applicable state law to Persons or Entities signatory to the Stipulation and Agreed Order dated May 1, 2015 [Dkt. No. ___], **or any supplements thereto**, and named as defendants in lawsuits arising from the actual or alleged design, formulation, compounding, production, labeling, testing, marketing, advertising, supply, dispensing, sale, shipment, distribution or administration of injectable methylprednisolone acetate or any other drugs or products compounded, produced, sold or distributed by NECC.  The release and injunction provisions shall not preclude any such Person or Entity from naming the Debtor and/or the Tort Trust, as successor in interest to claims against the Debtor and/or the applicable Non-Insurer Contributing Party(ies), as a party to the applicable proceeding, for the sole purpose of apportioning liability or otherwise securing a reduction in liability on account of the Debtor's, such Non-Insurer Contributing Party(ies)'s, or the Tort Trust's, as successor in interest to claims against the Debtor and/or the applicable Non-Insurer Contributing Party(ies), fault or comparative fault, subject to and expressly conditioned on the satisfaction of the following conditions:

> 1.     Neither Paul D. Moore, as the duly appointed Chapter 11 Trustee of NECC in the Bankruptcy Case or the Post-Confirmation Officer, nor any such Non-Insurer Contributing Party, nor the Tort Trustee shall be named as a party in any such proceeding.

> 2.     Neither the Debtor, nor Paul D. Moore, as the duly appointed Chapter 11 Trustee of NECC in the Bankruptcy Case or the Post-Confirmation Officer, nor any such Non-Insurer Contributing Party, nor the Tort Trust, nor the Tort Trustee shall be required to enter an appearance in any such proceeding.

> 3.     No judgment requiring the Debtor, Paul D. Moore, as the duly appointed Chapter 11 Trustee of NECC in the Bankruptcy Case or the Post-Confirmation Officer, any such Non-Insurer Contributing Party, the Tort Trust, or the Tort Trustee to pay a damages award will be sought or entered against NECC, any such Non-Insurer Contributing Party, Paul D. Moore as the duly appointed Chapter 11

Trustee of NECC in the above-captioned bankruptcy case or the Post-Confirmation Officer, the Tort Trust, or the Tort Trustee in any such proceeding, but, if otherwise permitted by applicable state law, an affirmative defense asserting the comparative fault of the Debtor or any such Non-Insurer Contributing Party, may be asserted.

4.  So long as permitted by applicable state law, any allocation of fault to NECC or any such Non-Insurer Contributing Party shall only be for purposes of reducing such Person or Entity's potential liability pursuant to the principles of comparative fault, and shall not be given preclusive effect, nor any effect whatsoever, other than to reduce such Person or Entity's liability.

5.  Such relief shall be solely to permit such Persons or Entities to assert and prove any right they may have to reduce their potential liability pursuant to the principles of comparative fault, and not to permit, or otherwise authorize, such Persons or Entities to pursue the prosecution of any claims for affirmative or other relief against the Debtor, Paul D. Moore, as the duly appointed Chapter 11 Trustee of NECC in the Bankruptcy Case or the Post-Confirmation Officer, any such Non-Insurer Contributing Party, the Tort Trust, or the Tort Trustee, in such tort cases.

Further, the approval of the Plan and the releases and injunctions contained therein or entered pursuant thereto shall not be construed as precluding any Person or Entity from enforcing any judgment reduction, credit, or setoff rights otherwise available to it under applicable law for reduction of damages that may be assessed against any party not a Contributing Party or a Shareholder and Affiliate Released Party in connection with any lawsuit arising from the actual or alleged design, formulation, compounding, production, labeling, testing, marketing, advertising, supply, dispensing, sale, shipment, distribution or administration of injectable methylprednisolone acetate or any other drugs or products compounded, produced, sold or distributed by NECC.

This language was included in the Plan at § 10.07, at 50.

42.  The Tennessee Clinic Defendants are parties to the Comparative Fault Stipulation, a copy of which is attached hereto as <u>Exhibit A</u>.  The Comparative Fault Stipulation demonstrates that, in light of the broad release provisions of the Plan and the express language of

that stipulation, the only discovery available to the Tennessee Clinic Defendants is discovery relating to comparative fault.

43.     Whether comparative fault is even a defense available to the Tennessee Clinic Defendants remains an issue.  As this Court recognized, while Tennessee law may provide for a defense of comparative fault, such a defense is not available under Massachusetts law.  This Court has requested that the parties brief this choice of law issue.  Until that issue is decided, the Tennessee Clinic Defendants' discovery requests are premature.  Further, to the extent that this Court determines that Tennessee law is the applicable law, discovery should be strictly limited to comparative fault issues.

44.     To the extent the Court seeks to go forward with the Tennessee Clinic Defendants' Motion to Compel, the Post-Confirmation Officer stands on his original general and specific objections to the Subpoena, as set forth in his Subpoena Response and further requests the opportunity to file a supplemental brief with respect to the specific objections.

## REQUEST FOR ORAL ARGUMENT

45.     Pursuant to Local Rule 7.1(d), the Post-Confirmation Officer believes that oral argument is appropriate under the circumstances and respectfully requests that the Tennessee Clinic Defendants' Motion to Compel and this Opposition be scheduled for a hearing.

## CONCLUSION

46.     In summary, for all of the foregoing reasons set forth more fully above, the Post-Confirmation Officer submits that NECC has complied with any and all obligations it had pursuant to the Subpoena and Rule 45, and further submits that this Court should deny the Tennessee Clinic Defendants' Motion to Compel.

Dated:  September 8, 2015          Respectfully submitted,
           Boston, Massachusetts

**DUANE MORRIS LLP**

By:  /s/ *Michael R. Gottfried*
Michael R. Gottfried, Esq. (BBO #542156)
100 High Street, Suite 2400
Boston, MA 02110-1724
Telephone:  (857) 488-4200
Facsimile:  (857) 488-4201
mrgottfried@duanemorris.com

Michael R. Lastowski, Esq. (admitted *pro hac vice*)
222 Delaware Avenue, Suite 1600
Wilmington, DE 19801-1659
Telephone:  (302) 657-4900
Facsimile:  (302) 657-4901
mlastowski@duanemorris.com

*Counsel to the Post-Confirmation Officer*

**Certificate of Service**

I, Michael R. Gottfried, hereby certify that on this day, September 8, 2015, I caused a
copy of the foregoing document, which was filed using this Court's ECF system, to be served
electronically upon those parties registered to receive ECF service.

/s/ *Michael R. Gottfried*