**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | ) ) ) ) |
| This Document Relates to: | ) ) MDL No: 1:13-md-2419-RWZ |
| Garcia v. Michael J. O'Connell, M.D., et al. No. 1:15-cv-12818-RWZ | ) ) ) |
| McCarthy v. Michael J. O'Connell, M.D., et al. No. 1:15-cv-12347-RWZ | ) ) ) ) ) ) |

**PLAINTIFFS' REPLY MEMORANDUM REGARDING THE PAIN CARE DEFENDANTS' RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE**

Plaintiffs Jojayra Garcia and Cheryl A. McCarthy, Individually, As Personal Representative of the Estate of Judith Ann Peckham, Deceased, and on behalf of the Beneficiaries of the Estate, respectfully submit this Reply Memorandum to defendants' Michael J. O'Connell M.D., d/b/a Pain Care Centers, Inc., d/b/a Dr. O'Connell's Pain Care Center, Dr. O'Connell's Pain Care Centers, Inc., Joshua L. Greenspan, M.D., John Kane, APRN, CRNA and Dr. O'Connell's Pain Care Centers, Inc. a/k/a Pain Care Centers, Inc. (hereinafter collectively, "Pain Care") Response to the Court's Order to Show Cause.[1]

## I.    INTRODUCTION

As a preliminary matter, plaintiffs' reply memorandum is confined to the issue raised in the Court's order, as was their Response to the Court's Order to Show Cause; specifically "whether § 1334(b) can sustain federal jurisdiction over a case among non-debtors that was filed

---

[1] MDL Dkt. No. 2103.

after the bankruptcy plan was confirmed."[2] This Court has "related-to" federal subject matter jurisdiction over plaintiffs' actions and that the bankruptcy estate existed at the time plaintiffs filed their complaints. Nothing the Pain Care defendants have argued can change these simple facts.

II. **THE COURT HAS RELATED TO JURISDICTION OVER PLAINTIFFS' CLAIMS**

The Pain Care defendants erroneously claim that confirmation of the NECC Bankruptcy Plan (hereinafter "the Plan") somehow altered this Court's jurisdiction under § 1334 over cases against clinic defendants, like those asserted by plaintiffs.[3] In support of their contention, the Pain Care defendants state that upon confirmation of the Plan, the release and injunction provisions became operational and the NECC bankruptcy estate ceased to exist.[4] This is simply incorrect. By the terms of the Plan itself, the bankruptcy estate continued to exist and the release and injunction provisions did not become binding until the effective date of the plan on June 4, 2015.[5] Plaintiffs' complaints were filed before that date.

A. The Release and Injunction Provisions of the Plan Did Not Become Effective Until After Plaintiffs Filed Their Complaints

The Plan does provide for permanent releases and injunctions for NECC, affiliated entities, and the settling defendants. However, such release and injunction provisions of the Plan were not binding until the Plan's effective date[6] on June 4, 2015, after the date plaintiffs filed

---

[2] MDL  Dkt. No. 2103, at 2. Plaintiffs are in the process of briefing an opposition to all other issues not raised in this Court's order to show cause raised in the Pain Care defendants' Motions to Dismiss or Abstain from Jurisdiction and will file this opposition within the timeframe permitted by Local Rule 7.1. Pain Care defendants Motions to Dismiss and supporting Memorandums of Law were filed in plaintiffs individual dockets: *McCarthy v. O'Connell, et al.*, No. 15-cv-12347, Dkt. No. 17 and 19  (D. Mass. June 3, 2015); *Garcia v. O'Connell, et al.*, No. 15-cv-12818, Dkt. Nos. 16 and 18  (D. Mass. June 3, 2015).
[3] Supporting Memorandum, at 3.
[4] *Id.* at 3 and 7.
[5] MDL Dkt. No. 1951
[6] *See* Dkt. No. 1951.

their complaints. Therefore, the Plan's release and injunction provisions have absolutely no bearing on this Court's jurisdiction over the plaintiffs' actions at the time they were filed.

    B.  <u>The NECC Bankruptcy Estate Existed on the Date Plaintiffs' Filed Their Complaints</u>

A bankruptcy estate "typically ceases to exist beyond plan confirmation because pursuant to 11 U.S.C. § 1141(b) '[e]xcept as provided in the plan or the order confirming the plan, the confirmation of a plan vests all property of the estate in the debtor." [7] However, where the plan provides a different vesting date of the estate assets like here, the estate continues to exist until that date.[8] Indeed, a debtor's estate, like NECC's, does not cease to exist until the estate assets vest and become the debtor's property.[9]

The Plan explicitly provides a date after the date of confirmation for which the estate assets vest. Section 10.1 of the Plan states that all property of the NECC bankruptcy estate does not vest in the Post-Effective Date Debtor until the *effective date*. Simply put, the NECC bankruptcy estate did not cease to exist <u>until</u> the effective date, which came after the date of filing of plaintiffs' complaints.

Moreover, a court's jurisdiction pursuant to § 1334(b) is not affected until the debtor emerges from bankruptcy and the bankruptcy estate ceases to exist. The Pain Care defendants have cited to *In re Resorts Int'l, Inc.*, 372 F.3d 154, 165 (3d Cir. 2004) to support the suggestion that a court's scope of "related to" jurisdiction subsides after the confirmation of the bankruptcy reorganization plan. However, the analysis in *Resorts* is distinguishable from the present cases.

---

[7] *In re WorldCom, Inc.*, No. 02-13533 (AJG), 2009 WL 2959457, at 2 (Bankr. S.D.N.Y. May 19, 2009).
[8] *Id.*
[9] *In re Seven Fields Dev. Corp.*, 505 F.3d 237, 258 (3d Cir. 2007); *In re Suratt*, No. 95-6183-HO, 1996 WL 914095, at *1 (D. Or. Jan. 10, 1996); *In re Shank*, 240 B.R. 216, 220-21 (Bankr. D. Md. 1999); *In re Modern Steel Treating Co.*, 130 B.R. 60, 66 (Bankr. N.D. Ill. 1991) *aff'd sub nom. In re Modern Steel Trading Co.*, No. 91 C 5747, 1992 WL 82966 (N.D. Ill. Apr. 1, 1992); *In re WorldCom, Inc.*, No. 02-13533(AJG), 2009 WL 2959457, at *2 (Bankr. S.D.N.Y. May 19, 2009); *In re Rickel & Associates, Inc.*, 272 B.R. 74, 97-98 (Bankr. S.D.N.Y. 2002); *In re Mendez*, 246 B.R. 141, 144-45 (Bankr. D.P.R. 2000).

In *Resorts*, the court held that related to jurisdiction may be problematic post-confirmation because "the debtor's estate ceases to exist once confirmation has occurred."[10] In citing the confirmation date as the time when the related to jurisdiction inquiry changes the *Resorts* court noted that pursuant to 11 U.S.C. § 1141(b), the confirmation plan *ordinarily* vests all of the property of the estate in the reorganized debtor, and accordingly, the bankruptcy estate no longer exists.[11] However, in the instant cases, confirmation of the Plan did not vest the NECC bankruptcy estate assets, and the estate did not cease to exist until after the plaintiffs filed their complaints.

Because the NECC bankruptcy estate existed on the date plaintiffs filed their complaint, this Court has subject matter jurisdiction over them pursuant to § 1334.

Dated:  September 9, 2015

Respectfully Submitted,

On Behalf of Plaintiffs Jojayra
Garcia and Cheryl A. McCarthy

By Their Attorney,

/s/ Kimberly A. Dougherty
Kimberly A. Dougherty, Esquire
(BBO# 658014)
Janet, Jenner & Suggs, LLC
31 St. James Ave., Suite 365
Boston, MA 02116
T: (617) 933-1265
F: (410) 653-6903
kdougherty@myadvocates.com

---

[10] *In re Resorts Int'l, Inc.*, 372 F.3d 154, 165 (3d Cir. 2004).
[11] *Id.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 9th day of September 2015, a copy of the foregoing document was electronically filed. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's System.

*/s/ Kimberly A. Dougherty*

Kimberly A. Dougherty, Esquire
