IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY, ) ) ) Plaintiff, ) ) v. ) ) SPECIALTY SURGERY CENTER, ) PLLC, et al., ) ) Defendants. ) | CASE NO. 2:15-CV-00026 JURY TRIAL DEMANDED JUDGE SHARP/BROWN |

INDIVIDUAL TORT VICTIM DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION TO STRIKE OR ALTERNATIVELY STAY
PROCEEDINGS

The Individual Tort Victim Defendants hereby file this Memorandum of Law In Support of their Motion to Strike or Stay Proceedings, which requests that the Court strike certain paragraphs of the Complaint, or alternatively, stay this proceeding until the merits of the Individual Tort Victim Defendants' pending claims against the Specialty Surgery Center, PLLC ("SSC") and Dr. Kenneth Lister ("Dr. Lister") are fully adjudicated.

In its declaratory judgment Complaint, State Farm seeks to have this Court adjudicate a key issue in the underlying tort lawsuits: whether under the facts and law applicable to those cases, SSC can be held liable as a "seller" of a defective product. The MDL judge, Judge Zobel, has already denied the defendants' motion to dismiss on this issue, finding that claims against the tort defendants, including SSC, as sellers, are viable under Tennessee Products Liability Act. *In re New England Compounding Pharm., Inc. Prods. Liab. Litig.*, 2014 U.S. Dist. LEXIS 121062, *60. State Farm's broad duty to defend its insureds is clearly established and supported by that ruling. Moreover, it is well settled that a court considering a declaratory action brought by an

1

insurance company should not "hold a separate trial to find facts not plead or otherwise at issue in the underlying state court action to determine the duty to defend." *Cambridge Mut. Fire Ins. Co. v. Ketchum*, 2012 U.S. Dist. LEXIS 115618, *13 (D. Conn. Aug. 16, 2012). This declaratory action is clearly an attempt to avoid the central holding by Judge Zobel in the underlying litigation holding that these claims are viable. That is an impermissible use of the declaratory judgment procedure.

## FACTUAL AND PROCEDURAL HISTORY

### A. The Fungal Meningitis Outbreak and Resulting Multi-District Litigation

This case is one of hundreds across the country that stem from the tragic fungal meningitis outbreak that occurred in the summer and fall of 2012, which, according to the Center for Disease Control, resulted in over 750 cases of confirmed fungal infections and over 60 deaths.[1] Tennessee was one of the most affected states, with over 150 cases of confirmed fungal infection. Sixteen individuals treated in Tennessee died.

Plaintiffs across the country filed hundreds of lawsuits against New England Compounding Center ("NECC"), the compounding pharmacy that illegally manufactured the tainted steroids at the center of the outbreak, and many of its affiliated companies, employees, and vendors. Many of these suits also named the healthcare providers responsible for selecting NECC as a vendor and who injected their patients with tainted NECC methylprednisolone acetate ("MPA"), a steroid used in pain management. The Individual Tort Victim Defendants[2] named in State Farm's Complaint for Declaratory Judgment each filed actions against SSC,

---

[1] http://www.cdc.gov/HAI/outbreaks/meningitis-map-large.html#casecount_table.
[2] The individually named Defendants, as listed on the Complaint are: Elizabeth Bray, Peggy B. Bumgarner, Roger D. Bumgarner, Lawrence Carter, Wilma S. Carter, Judy Collins, Perry Cox, Wanda J. Cox, Wanda J. Dingess, Bobby A. Foster, Dorothy A. Fuelling, Richard E. Fuelling, Danette Graham, Georgeanne Hubbard, Linda Jackson, John Johnson, Edna S. Keyes, William Lapiska, Sherry A. McDavid, Darwin L. Nealon, Jocelyn Kae Norris, James Palmer, Michelle Palmer, J. E. Reed, Wanda L. Reed, Christopher G. Rhind, Janice K. Rhind, Shirley Savercool, Jim F. Smith, Paula K. Smith, Craig E. Weaver, and Dale Willis.

NECC, its affiliated entities, employees, and/or vendors based on infections and/or deaths resulting from contaminated MPA administered by SSC. Under 28 U.S.C. § 1407, the Joint Panel on Multidistrict Litigation consolidated these cases, along with the hundreds of other cases stemming from the outbreak, in front of Judge Rya Zobel in the United States District Court for the District of Massachusetts (Case No. 13-md-02419, the "MDL Action") where they have been heavily and actively litigated for over two years.

Relevant to the current motion, the Individual Tort Victim Defendants brought claims against SSC and Dr. Lister sounding in negligence, gross negligence, and most importantly, violations of the Tennessee Products Liability Act, Tenn. Code Ann. § 29-28-101 (the "TPLA"). The TPLA permits claims against "sellers" of products in certain instances, including, when, as here, the manufacturer of a product has been declared judicially insolvent. Tenn. Code Ann. § 29-28-106. Following the outbreak, NECC filed a Chapter 11 petition in the Bankruptcy Court for the District of Massachusetts, which declared NECC judicially insolvent on July 24, 2013. *In re New England Compounding Pharmacy, Inc.*, Case No. 12-19882, United States Bankruptcy Court District of Massachusetts (Boston), Dkt. No. 397 (July 24, 2013).

### B. MDL Action Motions to Dismiss

On August 29, 2014 Judge Rya Zobel issued an Order and Memorandum of Decision in response to motions to dismiss filed by various healthcare providers in Tennessee, including SSC and Dr. Lister. *In re New England Compounding Pharm., Inc. Prods. Liab. Litig.,* 2014 U.S. Dist. LEXIS 121062 (D. Mass. Aug. 29, 2014).

Although the Court did dismiss certain claims brought against SSC that are not relevant to the issues in this declaratory action, claims against SSC and Dr. Lister for violations of the TPLA survived. In her Memorandum of Decision ("MDL Order"), Judge Zobel analyzed the

very issue before the Court in the instant matter - whether Tennessee Clinic Defendants are "sellers" of MPA within the meaning of the TPLA. Judge Zobel found that "the absence of a clear precedent prohibiting product liability actions against health care providers and the statutory language cited by plaintiffs above strongly militate against barring such claims." *In re New England Compounding Pharm., Inc. Prods. Liab. Litig.,* 2014 U.S. Dist. LEXIS 121062, * 60 (D. Mass. Aug. 29, 2014). Judge Zobel went on to explain how claims under the TPLA are not pre-empted by the Tennessee Healthcare Liability Act, T.C.A. § 29-26-101 (the "THCLA"). *Id*. at * 62-64.

As a result of the holdings in the MDL Order, the Individual Tort Victim Defendants continue to pursue claims under the TPLA and the THCLA (along with other claims for negligence and gross negligence) against SSC and Dr. Lister in the MDL Action.

### C. State Farm Files Its Declaratory Action

Plaintiff, State Farm, commenced the instant action by filing a Complaint for Declaratory Judgment in the United States District Court, Middle District of Tennessee, Nashville, on April 30, 2015. (Dkt. No. 1). State Farm issued two insurance policies to SSC and Dr. Lister for which SSC and Dr. Lister sought coverage as a result of the claims pending in the MDL Action.

In its Complaint for Declaratory Judgment, State Farm identified and provided the two policies at issue, Policy Number 92-CU-2460-1 and Policy Number 92-CU-9113-9. (Dkt. No. 1 at ¶¶ 43-44, 48-50, and 58-60 and Exs. 1-2.) While it is unnecessary to outline the entire complaint here, one particular allegation is central to the present motion. State Farm claims no contractual obligation to provide a defense to SSC and Dr. Lister in the MDL action. Critical to its claims for lack of coverage is the following allegation in the complaint:

> Based on factual allegations in the Master Complaint in the MDL
> Action and the foregoing policy language, State Farm is not

> contractually obligated…to provide coverage or defense to SSC and Dr. Lister for the MDL Action *<u>because health care providers cannot be "sellers" of a defective or unreasonably dangerous product for purposes of imposing liability under the TPLA</u>*.

(Complaint, Dkt. No. 1 at PageID 13, ¶ 52).[3]  Not surprisingly SSC and Dr. Lister, who face liability under the TPLA in the MDL Action, admitted this allegation in their Answer.  (SSC Answer, Dkt. No. 57 at PageID 499, ¶ 52).

At the Case Management Conference, counsel for SSC made it abundantly clear that SSC's liability under the TPLA is the key driving factor in determining whether there is coverage under the relevant policies:

> I agree that there will not be or probably will not be much fact discovery. I do think there will be some because for the Court to decide on the coverage issue, I think it's necessary for the Court, if this Court is going to decide on -- the coverage issue hinges on, in our opinion, whether or not the plaintiffs in the MDL can maintain a product liability claim against state healthcare provider. The plaintiffs in MDL maintain that they can, that we were sellers of the medication we administered to our patients, and therefore we're exposed to liability under the Product Liability Act.

(Case Management Conference Tr., 5:8-19.)

## ARGUMENT

Based on the forgoing, it is clear that State Farm seeks to litigate the merits of the Individual Tort Victim Defendants' claims under the TPLA in this action.  Paragraphs 52 and 62 of the Complaint make clear that SSC seeks a declaration that "healthcare providers cannot be 'sellers' of a defective or unreasonably dangerous product for purposes of imposing liability under the TPLA." (Complaint, ¶¶ 52 and 62.)  However, a case between an insured and insurer should not be the forum for litigating the merits of claims pending in another forum against the insured.

---

[3] Paragraph 62 of the Complaint contains a nearly identical quote related to the Umbrella Policy at issue in this litigation.

This case certainly should not be used as an end run around Judge Zobel's ruling on this precise issue, wherein she already determined that the Individual Tort Victim Defendants' can pursue claims under the TPLA, and that healthcare providers can face liability under that statute in this instance. As a result, the Individual Tort Victim Defendants request the Court either strike Paragraphs 52 and 62 from the Complaint, thereby eliminating the issue of the merits of the Individual Tort Victim Defendants' claims under the TPLA from consideration in this action or, alternatively, stay this action pending resolution of the Individual Tort Victim Defendants' claims in the MDL Action.

Striking the complaint is clearly consistent with Rule 12(f), which allows the Court to strike from a pleading any "redundant, immaterial, impertinent, or scandalous matter." The advantage here would be to allow the case to proceed to a determination on the merits of the coverage issue without requiring the parties to fully litigate the claims of the Individual Tort Victim Defendants' against SSC and Dr. Lister in the MDL Action. Put simply, the question can be answered as to whether coverage exists for the claims brought against SSC and Dr. Lister.

Alternatively, a stay should issue because the Court should exercise its discretion under the Declaratory Judgment Act and stay resolving the claims asserted by State Farm in this action until a court rules on the merits of the Individual Tort Victim Defendants' claims in the MDL Action. Additionally, courts regularly stay declaratory actions wherein an insurance company seeks relief from its duty to defend by attempting to litigate the merits of the claims against the insured in a declaratory action. These cases are largely driven by the widespread and universally acknowledged principle that an insurer's duty to defend is broader than its duty to ultimately indemnify. State Farm will likely oppose this motion on this very ground, asserting that it is costly to defend the underlying claims in the MDL Action. However, the Individual Tort Victim

Defendants submit that this is simply the nature of insurance, and State Farm is improperly attempting to litigate the merits of the Individual Tort Victim Defendants' claims in this action instead of defending them in the MDL Action. This is not proper, and this case should be stayed pending a ruling on the Individual Tort Victim Defendants' claims on the merits in the MDL Action.

### I. The Court Should Strike Paragraphs 52 and 62 of the Complaint

Rule 12(f) allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Although motions to strike are viewed with disfavor and are not frequently granted (*Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953)), the function of the motion is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with" them early in the case. *Kennedy v. City of Cleveland*, 797 F.2d 297, 305 (6th Cir. 1986) (quoting *Sidney-Vinstein v. A.H.Robins Co*., 697 F.2d 880, 885 (9th Cir. 1983)).

Paragraphs 52 and 62 of the Complaint, which put directly into issue whether "healthcare providers cannot be 'sellers' of a defective or unreasonably dangerous product for purposes of imposing liability under the TPLA," are the type of "redundant, immaterial, or impertinent" matters that should be subject to strike under Rule 12. By alleging this very issue, State Farm is seeking to litigate the merits of the Individual Tort Victim Defendants' claims under the TPLA in this action. As discussed at length in the next section, this type of attempt by an insurer to litigate the merits of claims against its insured in a declaratory judgment case is highly disfavored by federal courts.

This problem could be solved by simply striking these allegations and allowing the court to examine whether State Farm has liability for the claims asserted by the Individual Tort Victim

Defendants based on the allegations alleged by the Individual Tort Victim Defendants, and not on the merits of those claims. Courts universally acknowledge that "it is the ***allegations*** of the underlying complaint that are determinative of an insurer's continuing duties to defend its insured, and not the ***merits*** of those allegations." *Vt. Mut. Ins. Co. v. Ciccone,* 900 F. Supp. 2d 249, 252 (D. Conn. 2012) (emphasis added).

By striking from the complaint the allegations that go to the merits of the Individual Tort Victim Defendants' claims in the MDL Action, State Farm can still obtain the ruling on its duty to defend without needlessly litigating the merits of the Individual Tort Victim Defendants' claims in this proceeding. Striking paragraphs 52 and 62 would accomplish this goal and the Individual Tort Victim Defendants' motion to strike should be granted on this basis alone. *Operating Eng'rs Local 324 Health Care Plan v. G&W Constr. Co.*, 783 F.3d 1045, 1050 (6th Cir.(Mich.) 2015).

## II. Alternatively, the Court Should Stay This Action Pending a Determination on the Merits of the Individual Tort Victim Defendants' Claims Pending in the MDL Action

To the extent that the Court is unwilling to strike the aforementioned allegations and prevent State Farm from attempting to litigate the merits of the Individual Tort Victim Defendants' claims, the Court should stay these proceedings until the merits of those claims are adjudicated in the MDL Action.

### A. Federal district courts have discretionary jurisdiction over actions arising under the Federal Declaratory Judgments Act.

The Declaratory Judgment Act provides that a federal court "may" declare the obligations of parties to a legal issue, and is regularly used by insurance companies to seek a declaration of lack of coverage in disputes with insureds. 28 U.S.C. § 2201-2202. Unlike many other jurisdiction-conferring statutes, the Declaratory Judgment Act gives the federal courts the

8

discretion to decline to exercise their jurisdiction. *See Wilton v. Seven Falls Co.,* 515 U.S. 277, 286 (1995). The Sixth Circuit has held that the following two general principles should guide courts in deciding whether a declaratory ruling is appropriate:

> The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. It follows that when neither of these results can be accomplished, the court should decline to render the declaration prayed.

*Grand T. W. R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir.(Mich.) 1984). Here State Farm will likely argue that this declaratory judgment action can satisfy these two factors. However, a closer examination of the issues reveals that neither purpose can be accomplished in the present suit.

Central to State Farm's claim for lack of coverage under the applicable policy is a determination as to whether the Individual Tort Victim Defendants can pursue claims under the TPLA against healthcare providers. (Complaint ¶¶ 52 and 62). Regardless of the outcome of this proceeding, the Individual Tort Victim Defendants claims would still be ongoing in the MDL Action. Thus, resolution and judgment in this case cannot and will not settle the Individual Tort Victim Defendants' claims in the MDL Action and will not "terminate" and "afford relief from the uncertainty…and controversy" giving rise to the proceeding. Therefore a stay is warranted. *Liberty Mut. Fire Ins. Co. v. Bohms*, 490 Fed. Appx. 721 (6th Cir.(Mich.) 2012) (staying declaratory action between insured and insurer when declaratory action would not resolve the full controversy between the parties).

Additionally, when considering a stay pending resolution of a separate matter, the court should consider the following factors:

9

> …(1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the relevant legal relationships; (3) whether the declaratory remedy is being used as mere "procedural fencing" or "to provide an arena for a race to res judicata"; (4) whether the declaratory action would increase friction between the state and federal courts; and (5) whether a better or more effective alternative remedy exists.

*Sunbelt Rentals, Inc. v. Tudor Ins. Co.,* 2014 U.S. Dist. LEXIS 37851, *4-5 (N.D. Ohio Mar. 20, 2014) citing *id*.

In the instant matter, application of the five factors favors a stay of the proceedings as the first three factors strongly favor a stay and the remaining two do not appear relevant to the present controversy.

As explained above, the declaratory action would not settle the controversy between the Individual Tort Victim Defendants and SSC and Dr. Lister regarding the viability of claims under the TLPA against healthcare related defendants. Since the Court cannot decide the present declaratory action without answering this key question (and this question must be answered in the MDL Action), this factor weighs in favor of staying this action.  After all, declaratory actions should not simply be other venues requiring a plaintiff seeking damages against an insured to litigate the merits of the claim in both the forum where it is suing the insured and the forum where an insurance company seeks a declaration that the plaintiff's claims lack merit.  That is inefficient, costly, and overly burdensome to the parties and the Court system.

Similarly, the declaratory action could clarify the legal relationship between SSC and State Farm, but it cannot and should be not used as a vehicle to clarify the legal relationship between SSC and the Individual Tort Victim Defendants with respect to the latter's claims under the TLPA.

Moreover, and most importantly, the declaratory remedy is absolutely being used by State Farm as mere "procedural fencing" or "to provide an arena for a race to res judicata."

Judge Zobel's MDL Order made clear that the matters in controversy invoked by this declaratory action should not be dismissed and should be decided in the underlying litigation. *In re New England Compounding Pharm., Inc. Prods. Liab. Litig.*, 2014 U.S. Dist. LEXIS 121062, * 60 (holding that the Individual Tort Victim Defendants can pursue claims under the TPLA and that SSC could face liability under the TLPA). It is well accepted that a Court considering the declaratory action brought by an insurance company should not "hold a separate trial to find facts not plead or otherwise at issue in the underlying state court action to determine the duty to defend." *Cambridge Mut. Fire Ins. Co. v. Ketchum*, 2012 U.S. Dist. LEXIS 115618, *13 (D. Conn. Aug. 16, 2012). That appears to be precisely State Farm's purpose in alleging in this declaratory action that healthcare providers cannot be "sellers" of products under the TPLA. (Complaint ¶¶ 52 and 62.) As a result, this declaratory action is really an attempt to avoid the central holding by Judge Zobel in the MDL Action holding that these claims are viable. State Farm and SSC may be trying to use this action as a race to a final adjudication on this point in order to prevent the Individual Tort Victim Defendants from pursuing those claims in the MDL Action. These types of "procedural fencing" should not be countenanced, and the Court should stay this action to avoid sending signals that insurance companies can circumvent adverse court rulings. *Grand T. W. R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir.(Mich.) 1984) ("Courts have discouraged "the use of the declaratory action as a method of procedural fencing, or as a means to provide another arena for a race for res judicata.")

      The other two remaining factors are not relevant to the present controversy and should not distract from the key fact that this declaratory action is an improper end-run around Judge Zobel's MDL Order and an attempt to re-litigate in a new forum questions that have already been decided.

Accordingly, the Court should exercise its discretion and stay the proceedings until the merits of the Individual Tort Victim Defendants' claims, currently pending in the MDL Action are adjudicated. *Zurich Ins. Co. v. Alvarez*, 669 F. Supp. 307, 309 (C.D. Cal. 1987) (on facts similar to those at bar, district court declined jurisdiction under the Declaratory Judgement Act because, inter alia, "the Court would be required to decide predicate facts which may be fundamentally at issue in the state court action.").

### B. Insurers may not litigate the merits of the underlying claim in a declaratory action.

Even if the balance of factors regarding this Court's discretion to exercise jurisdiction over a declaratory action did not favor a stay, and the balance clearly weighs in favor of one, a stay should also issue because it is duplicative, uneconomical, and prejudicial to the parties involved to litigate the merits of the Individual Tort Victim Defendants' TLPA claims in both the forum where they are pending and in this action. In fact, courts regularly stay or dismiss declaratory actions brought by insurers when those claims are meant to attempt to adjudicate the claims pending in an ancillary suit.

This is largely derived from the fact that an insurer's duty to defend is different from its duty to indemnify, and as a result an insurer may be forced to defend claims that are ultimately proved meritless.[4] For instance, the Western District of Michigan has stated that "[t]he duty to defend is not limited to meritorious suits and may even extend to actions which are groundless, false, or fraudulent, so long as the allegations against the insured even arguably come within the policy coverage. An insurer has a duty to defend, despite theories of liability asserted against any

---

[4] The Individual Tort Victim Defendants maintain that their claims under the TPLA are not meritless and ultimately believe they will prevail on these claims once a fulsome factual and legal record is developed. The ultimate resolution of whether the tort defendants are liable as product sellers is a question that should be decided by the appropriate court upon a well-developed factual and legal record. The Individual Tort Victim Defendants submit that this Court should not decide this issue on a limited record in a declaratory judgment posture at this time.

12

insured which are not covered under the policy, if there are any theories of recovery that fall within the policy." *Amerisure Mut. Ins. Co. v. Carey Transp. Inc.,* 578 F. Supp. 2d 888, 892 (W.D. Mich. 2008); *see also, Insurance Co. of North America v. Forty-Eight Insulations, Inc.,* 451 F. Supp. 1230, 1232 (E.D. Mich. 1978) (holding that, "[i]n determining whether the insurer owes a duty to the insured to defend an action brought against him, it is the general rule that the allegations of the complaint determine the duty."); and discussion at page 15-17 *supra*.

The Eastern District of Tennessee has gone even further in holding that "[i]t is accepted in the overwhelming majority of jurisdictions that the obligation of a liability insurance company to defend an action brought against the insured by a third party is to be determined solely [*sic*] allegations contained in the complaint in that action . . . Accordingly, if the allegations. . . are within the risk insured against and there is a potential basis for recovery, then [the insurer] must defend … regardless of the actual facts or the ultimate grounds on which … liability to the injured parties may be predicated. . . . In any event, the pleading test for determination of the duty to defend is based exclusively on the facts as alleged rather than on the facts as they actually are…" *Trinity Universal Ins. Co. v. Turner Funeral Home, Inc.,* 2003 U.S. Dist. LEXIS 27205, *9-10 (E.D. Tenn. Dec. 12, 2003).

In *Fed. Ins. Co. v. CVS Revco D.S., Inc.,* the insurer filed a declaratory judgment action stemming from a class action related to a drug known as E-Ferol. 2009 U.S. Dist. LEXIS 56876 (N.D. Ohio June 16, 2009). The insurer claimed (1) no duty to indemnify CVS for loss related to the E-Ferol Class Action, and (2) no duty to defend CVS in that litigation. *Id.* The parties resolved the second issue by stipulation. *Id.* However, the Court stayed the ruling on the first issue noting that "resolving it would require the Court to address fact-intensive issues, ***the resolution of which could prejudice CVS*** in the E-Ferol Class Action." *Id.* (emphasis added).

In the instant case, State Farm specifically puts into issue the merits of the underlying claims at paragraphs 52-53 and 62-63 of their Complaint for Declaratory Judgment. Based on the simple wording of their allegations, State Farm acknowledges that the Court must interpret the laws governing the underlying complaint in order to determine whether coverage is excluded.

"In insurance cases, as in declaratory judgments in general, although both justiciability and federal jurisdiction are present, the court in a proper case may, nevertheless, refuse to proceed with the declaratory action for it is well settled that the exercise of jurisdiction in this area is discretionary. And frequent, attempted abuses of the declaratory action in this area make the exercise of judicial discretion particularly important." *Terra Nova Ins. Co. v. 900 Bar*, 887 F.2d 1213, 1216 (3d Cir. Pa. 1989).

As a result, this case is not a proper forum to address the *merits* of the Individual Tort Victim Defendants' claims in the MDL Action. At this point, the MDL Action is where those claims should be resolved, and this case should be stayed pending the resolution of the Individual Tort Victim Defendants' claims under the TLPA. *Manley, Bennett, McDonald & Co. v. St. Paul Fire & Marine Ins. Co.*, 791 F.2d 460, 461 (6th Cir. 1986) (holding that an indemnification action subsequent to the resolution of the underlying tort suit is a better remedy to declaratory judgment). *See American Home Assurance Co. v. Evans,* 791 F.2d 61, 62 (6th Cir. 1986) (holding that a case is not suitable for declaratory judgment where complicated factual issues are raised, alternative remedies are available, and there is a parallel state court action pending). *Northern Ins. Co. v. Addison Prods.*, 148 F. Supp. 2d 859 (E.D. Mich. 2001) (finding that the district court should not inject itself into underlying products liability proceedings to entertain insurer's action for declaratory judgment as to its obligations to defend and indemnify insured.); *see also Allstate Ins. Co. v. Mercier*, 913 F.2d 273, 278 (6th Cir. 1990) (stating that "[c]ourts

should not be required to decide 'rights and other legal relations' in a vacuum. The language of the policy exclusions is broad, but the insuring language is also broad, and we cannot say with certainty that those exclusions preclude a finding of coverage in the present case. Without any factual record, there is a real possibility that the district court's declaration of no coverage would conflict with a state court's determination of the coverage question after being informed of the facts."). See *Allstate Ins. Co. v. McKay,* 1987 U.S. Dist. LEXIS 15687 ( E.D. Mich. May 29, 1987) (dismissing insurance company's complaint for declaratory action and holding that "declaratory judgment actions seeking an advance opinion on indemnity issues are seldom helpful in resolving an ongoing action in another court."). See *Grand T. W. R. Co. v. Consolidated Rail Corp.,* 746 F.2d 323, 327 (6th Cir. 1984) (concluding that the district court erred in giving a declaratory action in a case in which the insurer sought a declaration of obligations during a pending state court action arising out of the same facts.).

### C. The duty to defend is much broader than the duty to indemnify precisely because insurance companies are not permitted to litigate the merits of an underlying claim in a declaratory action.

State Farm will likely argue that staying this action pending resolution of claims in the MDL Action will cost it significant resources in litigating claims that it believes are legally not permissible.  However, this is a risk that is run by all insurance companies when they issue policies for coverage, and State Farm, a sophisticated and nationally recognized insurance company, is well aware of their duty to defend based on precedence.  In *State Farm Fire & Cas. Co. v. McGowan,* the Court held that:

> Whether an insurance company has a duty to defend an insured in an underlying lawsuit presents a legal question. Under Tennessee law, an insurance company's duty to defend its insured is ***triggered by a complaint that alleges a potential basis for the claimant to recover against the insured that is within the risk insured against***. If it is plain from the face of the underlying complaint the allegations fail to state facts that bring the case within or potentially within the policy, no duty to defend exists. An insurer's duty to

15

>defend depends solely on the allegations of the complaint filed against the insured. An insurer must provide a defense unless all the allegations in the complaint fall within an exception to coverage.

2004 U.S. Dist. LEXIS 28651, *1 (E.D. Tenn. June 24, 2004) (emphasis added).

Other federal courts consistently hold that "an insurer has an exceedingly broad duty to defend the insured. The duty to defend is broader than the duty to indemnify. Where an insurance policy includes the insurer's promise to defend the insured against specified claims as well as to indemnify for actual liability, the insurer's duty to furnish a defense is broader than its obligation to indemnify. An insurer may be contractually bound to defend even though it may not ultimately be bound to pay, either because its insured is not factually or legally liable or because the occurrence is later proven to be outside the policy's coverage." *Am. Auto. Ins. Co. v. Sec. Income Planners & Co, LLC,* 847 F. Supp. 2d 454, 456 (E.D.N.Y. 2012); *See also Fed. Ins. Co. v. Marlyn Nutraceuticals, Inc.,* 2013 U.S. Dist. LEXIS 178565 (E.D.N.Y. Dec. 19, 2013); *See also Stewart v. Target Corp.,* 2013 U.S. Dist. LEXIS 40541 (E.D.N.Y. Mar. 20, 2013); *See also Kirschenbaum v. Federal Ins. Co. (In re EMS Fin. Servs., LLC),* 2013 Bankr. LEXIS 139 (Bankr. E.D.N.Y. Jan. 4, 2013)  *Cambridge Mut. Fire Ins. Co. v. Ketchum*, 2012 U.S. Dist. LEXIS 115618, *8-9 (D. Conn. Aug. 16, 2012) *citing to Hartford Cas. Ins. Co. v. Litchfield Mut. Fire Ins. Co.,* 274 Conn. 457, 463, 876 A.2d 1139 (2005) (*quoting Board of Ed. v. St. Paul Fire & Marine Ins. Co.,* 261 Conn. 37, 40-41, 801 A.2d 752 (2002) ("The obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether he has, in his complaint, stated facts which bring the injury within the coverage. If the latter situation prevails, the policy requires the insurer to defend, irrespective of the insured's ultimate liability . . . It necessarily follows that the insurer's duty to defend is measured by the allegations of the complaint . . . Hence, if the complaint sets forth a

cause of action within the coverage of the policy, the insurer must defend.'" Therefore, "[i]f an allegation of the complaint falls even possibly within the coverage, then the insurance company must defend the insured.")

Accordingly, any claim by State Farm that a stay of these proceedings would be prejudicial because it may ultimately have to defend allegations in which it is not liable under the two policies wholly misses the point. The very nature of insurance coverage is that an insurance company has to defend against claims as they are alleged, even if those claims ultimately prove meritless. State Farm simply should not be able to put into issue in this forum the merits of the Individual Tort Victim Defendants' claims simply because it wants to avoid the expense of defending its insured against claims State Farm believes are improper.

## CONCLUSION

For the foregoing reasons, the Individual Tort Victim Defendants respectfully request that the Court strike paragraphs 52 and 62 of the Complaint thereby preventing State Farm from putting into issue in this case whether healthcare providers can be "'sellers' of a defective or unreasonably dangerous product for purposes of imposing liability under the TPLA" or alternatively stay this proceeding until this issue is resolved in the cases currently pending in the MDL.

Respectfully submitted this 20th day of August, 2015.

/s/ Benjamin A. Gastel
J. Gerard Stranch, IV (BPR # 23045)
Benjamin A. Gastel (BPR # 28699)
BRANSTETTER, STRANCH & JENNINGS, PLLC
223 Rosa L. Parks Ave., 2nd Floor
Nashville, TN 37203
Telephone: (615) 254-8801
Fascimile: (615) 255-5419
gerards@bsjfirm.com
beng@bsjfirm.com

>Mark P. Chalos
>Annika K. Martin
>LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
>150 Fourth Avenue, North, Suite 1650
>Nashville, TN  37219-2423
>Phone: (615) 313-9000
>mchalos@lchb.com
>
>*Attorneys for Individual Tort Victim Defendants*

# CERTIFICATE OF SERVICE

I, Benjamin A. Gastel, hereby certify that I caused a copy of the foregoing to be filed electronically via the Court's electronic filing system.  Those attorneys listed below, who are registered with the Court's electronic filing system, may access these filings through the Court's system, and notice of these filings will be sent to these parties by operation of the Court's electronic filing system.

| | |
|---|---|
| Brigid M. Carpenter<br>Caldwell G. Collins<br>Baker Donelson Center<br>Suite 800<br>211 Commerce Street<br>Nashville, TN  37201<br>bcarpenter@bakerdonelson.com<br>cacollins@bakerdonelson.com<br><br>*Attorneys for Plaintiff, State Farm Fire and Casualty Company* | C.J. Gideon, Jr.<br>Chris J. Tardio<br>Matthew H. Cline<br>GIDEON COOPER & ESSARY, PLC<br>315 Deaderick Street, Suite 1100<br>Nashville, TN 37238<br>cj@gideoncooper.com<br>chris@gideoncooper.com<br>matt@gideoncooper.com<br><br>*Attorneys for Defendants, Specialty Surgery Center, PLLC and Kenneth Lister, M.D.* |

Dated: August 20, 2015  /s/ Benjamin A. Gastel

Benjamin A. Gastel