**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NORTHEASTERN DIVISION**

_____

| | | |
|---|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY, | ) ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | |
| | ) | |
| v. | ) | Case No. 2:15-cv-00026 |
| | ) | Judge Sharp |
| SPECIALTY SURGERY CENTER, PLLC, et al. | ) ) | |
| | ) | |
| Defendants/Counter-Plaintiffs. | ) | |

_____

**PLAINTIFF/COUNTER-DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY'S RESPONSE IN OPPOSITION TO MOTION TO STRIKE OR ALTERNATIVELY TO STAY PROCEEDINGS**

_____

The Individual Tort Victim Defendants ("Defendants")[1] have asked this Court to gut State Farm's pending declaratory judgment action because they apparently believe that a federal judge in Massachusetts who is handling hundreds of cases as part of multi-district litigation is in a better position to decide an issue of first impression under Tennessee law than is this Court or the Tennessee Supreme Court. Plaintiff/Counter-Defendant State Farm Fire and Casualty Company ("State Farm"), on the other hand, believes that a Tennessee court is the most appropriate venue in which to address what the parties agree is the seminal issue in this declaratory judgment action to determine State Farm's obligation to provide insurance coverage: whether, as a matter of law, a healthcare provider cannot be considered a "seller" for purposes of

---

[1] The individual defendants other than Dr. Kenneth Lister refer to themselves in this action as the "Individual Tort Victim Defendants"; State Farm will use only "Defendants" for brevity.

imposing liability under the Tennessee Products Liability Act, Tenn. Code Ann. § 29-28-101, *et seq.* ("TPLA"). While the answer to that question may or may not affect certain of Defendants' claims in MDL No. 2419 ("MDL Action"), it is also a perfectly appropriate legal question that is properly part of this declaratory judgment action.

State Farm opposes Defendants' present motion on the grounds that (1) nothing in State Farm's Complaint remotely satisfies the circumstances under which a court may strike pleadings pursuant to Federal Rule of Civil Procedure 12(f); (2) Judge Zobel's ruling in the MDL Action is not binding upon this Court, and, in any event, she simply found that there was no Tennessee precedent on the issue and therefore, at the Rule 12(b)(6) stage, was unwilling to dismiss the claims outright; and (3) there is no reason for the Court to stay this proceeding when no factual issues in the MDL Action are implicated. For these reasons, and the additional reasons set forth below, State Farm requests that this Court deny Defendants' motion to strike or alternatively to stay this proceeding.

## I.    Relevant Background

In 2012, State Farm issued to Defendant Specialty Surgery Center, PLLC ("SSC") a Medical Office Policy business insurance policy ("Business Policy") and a Commercial Liability Umbrella Policy ("Umbrella Policy"), certified copies of which are attached as Exhibits 3 and 4 to the Complaint. There is no dispute that Defendant Dr. Kenneth Lister is an "insured" under those Policies for purposes of coverage. There is likewise no dispute that the Policies were effective during the dates of Defendants' medical treatment referenced below.

According to complaints filed by Defendants in the MDL Action, each of them (or a decedent) received an epidural steroid injection at the SSC facility in Crossville, Tennessee sometime between July 17, 2012 and September 26, 2012. Each of them alleges that he or she

- 2 -

(or his or her decedent) contracted fungal meningitis as a result of the injection received at the SSC facility.  As a result of the injuries sustained from the injections, Defendants filed suit against, among other parties, SSC and, in some cases, Dr. Lister.  Those suits were consolidated for pretrial proceedings in the MDL Action before Judge Rya Zobel in the District of Massachusetts.[2]  As referenced by Defendants in their present motion, there are hundreds of cases pending before Judge Zobel in the MDL Action.

SSC and Dr. Lister submitted claims to State Farm under the Business Policy and Umbrella Policy related to the actions filed against them by Defendants.  State Farm issued original reservation of rights letters addressing these lawsuits to SSC and Dr. Lister in early October 2014 and updated those letters in December 2014; however, State Farm has continuously defended SSC and Dr. Lister in the MDL Action subject to those reservations.

State Farm filed this declaratory judgment action on April 30, 2015, after an analysis of the relevant language of the Business Policy and Umbrella Policy and a study of the relevant complaints in the MDL Action.  Significant for purposes of the pending motion, State Farm acknowledges that it must take at face value all underline factual allegations made by Defendants in the MDL Action for purposes of determining whether it has a duty to defend.  The allegation in the MDL Master Complaint that ". . .the Tennessee Healthcare Providers Defendants are 'sellers' as defined by Tenn. Code Ann. § 29-28-102(7)" is, however, a legal conclusion that State Farm disputes within this declaratory judgment action.  (*See* Ex. 1 to Compl. (MDL Master Complaint) at ¶ 322.)  This Court need not make any factual determinations relating to the MDL Action in order to resolve the legal issue of whether a healthcare provider undertaking common services such as an epidural steroid injection can be considered a "seller" under the TPLA by virtue of his

---

[2] Judge Dennis Saylor was originally assigned to preside over the MDL Action and recused himself by order entered February 7, 2014.

- 3 -

or her use of a drug or medical device during the rendering of the service.  Despite Defendants'
many protestations to the contrary in their memorandum in support of their present motion, this
declaratory judgment action will not disrupt any underlying activities or issues in the MDL
Action and, in fact, might assist the Court there.

## II.    Argument

### A.    Defendants Wholly Fail to Meet the Requirements of Federal Rule of Civil Procedure 12(f).

Defendants' primary request for relief, their motion to strike Paragraphs 52 and 62 of
State Farm's Complaint, is meritless.  A Rule 12(f) motion allows the Court to strike "any
redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f) (emphasis
added).  As Defendants point out, Rule 12(f) motions are "viewed with disfavor and are not
frequently granted."  *Operating Engineers Local 324 Health Care Plan v. G&W Constr. Co.*,
783 F.3d 1045, 1050 (6th Cir. 2015).  In spite of that, Defendants try to use this Rule to strike
State Farm's allegations that the Policies do not contractually obligate State Farm to provide
coverage or a defense to SSC or Dr. Lister, as healthcare providers cannot be "sellers" under the
TPLA.  (*See* Compl. ¶¶ 52, 62.)  Their motion, however, is a paradox.  In one breath, Defendants
claim that Paragraphs 52 and 62 are the type of "redundant, immaterial, or impertinent" matters
that Rule 12(f) was intended to address.  (Defs.' Mem. at 7.)  They then belie that statement by
arguing that the operative paragraphs amount to litigation of "the merits of the Individual Tort
Victim Defendants' claims under the TPLA."  (*Id*.)  In fact, two pages later, Defendants
characterize Paragraphs 52 and 62 as "***central*** to State Farm's claim for lack of coverage under
the applicable policy."  (*Id*. at 9 (emphasis added).)  Defendants' motion is a thinly-veiled
attempt to use Rule 12(f) as a vehicle to have the Court strike the crux of State Farm's Complaint
– the portions that are potentially the most unfavorable to Defendants.  Defendants have not

- 4 -

come close to satisfying the requirements of a 12(f) motion, as there is nothing redundant, immaterial, impertinent or scandalous about the allegations in State Farm's declaratory judgment complaint.

State Farm agrees with Defendants that the Court should "examine whether State Farm has liability for the claims asserted by the Individual Tort Victim Defendants based on the allegations alleged by the Individual Tort Victims." (*Id*. at 7-8.)  That is precisely the relief sought by State Farm, and striking Paragraphs 52 and 62 is antithetical to that goal.  State Farm urges the Court to deny Defendants' motion to strike.

## B.      Defendants Overstate Judge Zobel's Ruling on SSC's and Dr. Lister's Motion to Dismiss.

Defendants rely heavily in their motion on what they characterize as a definitive ruling on the TPLA issue by Judge Zobel in the MDL Action.  They repeatedly state in their memorandum that Judge Zobel found in her August 29, 2014 Memorandum of Decision that their product liability claims against healthcare providers are "viable." (*See* Defs.' Mem. at 1-2.)  They further declare that the judge determined that "healthcare providers can face liability under that statute [TPLA] in this instance." (Defs.' Mem. at 6.)  This Court should be clear, however, that Judge Zobel was addressing the issue in the context of SSC's and Dr. Lister's Rule 12(b)(6) motion to dismiss and, based on a lack of clear precedent from a Tennessee court, was unwilling to dismiss the claim at that juncture.

Judge Zobel's decision on this issue was certainly not an affirmative statement that healthcare providers can be held liable as "sellers" under the TPLA as a matter of law – one of the questions presented by this action.  Rather, her ruling was grounded in the dearth of Tennessee case law on the subject:

- 5 -

> This court's case law research did not unearth any Tennessee cases in which products liability claims were successfully brought against health care providers, nor any cases indicating that health care providers were categorically not sellers or could not be sued under the TPLA.  The absence of a clear precedent prohibiting products liability actions against health care providers and the statutory language cited by plaintiffs above strongly militate against barring such claims.

(Ex. 2 to Compl. (Aug. 29, 2014 Mem. of Dec.) at 28.)  Additionally, when addressing SSC's and Dr. Lister's argument that Defendants' product liability claims must be analyzed under the Tennessee Healthcare Liability Act, Judge Zobel pointed out that "'Federal courts hearing diversity matters should be extremely cautious about adopting substantive innovation in state law.'"  *Id*. at 30 (quoting *Shuler v. Garrett*, 743 F.3d 170, 176 (6th Cir. 2014) (further quotations omitted)).  As a matter of common sense, this is all the more so when the federal court is not situated in the state whose law is in question and, additionally, is facing the task of administering hundreds of cases in an MDL.

Currently, then, the judge overseeing the MDL Action has simply found that she had an inadequate basis in Tennessee law to dismiss Defendants' claims under the TPLA upon a Rule 12(b)(6) motion.  Indeed, it seems as though Judge Zobel would welcome Tennessee precedent on the issue based on the comments in her ruling.  This Court's decision, or a decision by the Tennessee Supreme Court if the question is certified pursuant to Rule 23 of the Tennessee Supreme Court Rules, seems to be just what the parties and judge in the MDL Action need.

### C.   This Court, or the Tennessee Supreme Court, Can Rule on the Seminal Issue in This Action Without Disrupting the MDL, and Should Do So.

The crux of Defendants' motion – and the theme which runs throughout – is that State Farm, through this action, seeks to litigate the merits of Defendants' TPLA claims by making an end-run around Judge Zobel's August 2014 decision.  They go so far as to suggest that State Farm and SSC possibly conspired:  "State Farm and SSC may be trying to use this action as a

- 6 -

race to a final adjudication on this point in order to prevent the Individual Tort Victim Defendants from pursuing those claims in the MDL Action." (Defs.' Mem. at 11.) In reality, however, what occurs in the MDL Action on the TPLA issue is not of great concern to State Farm, as such action is not legally binding upon State Farm, this Court, or any other party who might have a similar issue outside the MDL. The only impact Judge Zobel's previous ruling on the issue has relative to State Farm is that State Farm is obligated to maintain its defense of SSC and Dr. Lister until a decision is made on its request for a declaration in this action.

Defendants pronounce that "[r]egardless of the outcome of this proceeding, the Individual Tort Victim Defendants['] claims would still be ongoing in the MDL Action." (Defs.' Mem. at 9.) If this Court, or the Tennessee Supreme Court (through a certified question), rules on the issue of whether a healthcare provider can be a "seller" under the TPLA, though, that particular claim would likely not be a part of the MDL Action for much longer. That, however, would not be because State Farm impermissibly meddled into the underlying facts of Defendants' claims in the MDL Action; rather, it would be because the issue was properly decided as a matter of law by a court in Tennessee under the relevant Tennessee statute.

The federal Declaratory Judgment Act grants this Court discretion to "declare the rights and other legal relations of any interested party seeking such declaration." *Travelers Indem. Co. v. Bowling Green Prof'l Assocs., PLC*, 495 F.3d 266, 271 (6th Cir. 2007) (citing 28 U.S.C. § 2201(a)). As Defendants observe, the Declaratory Judgment Act is commonly used to settle coverage questions between insurance companies and their insureds. *See, e.g.*, *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546 (6th Cir. 2008).

In considering whether a case is appropriate for declaratory judgment, the Sixth Circuit is guided by two principles:

- 7 -

> The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.

*Grand Trunk W. RR. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984) (citation omitted).  Application of the following five factors assists the Sixth Circuit in evaluating these principles:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for *res judicata*;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Id.*

Contrary to Defendants' contention, each of these five factors weighs against their motion to stay.  The Court should use its discretion to grant the declaratory judgment requested by State Farm in this case without the delay that would be imposed by a stay.

### A.    Settlement of the Controversy

As to the first factor, Defendants argue that the declaratory judgment action would "not settle the controversy between [Defendants] and SSC and Dr. Lister," (Defs.' Mem. at 10), but that is not the proper inquiry where, as here, the question of State Farm's insurance coverage is not at issue in the MDL.  *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546 (6th Cir. 2008).  In *Scottsdale*, the Sixth Circuit observed that two lines of precedent had developed regarding the first factor in the context of an insurance company's suit to determine its policy liability.  *Id.* at 555.  The first line concluded that "a declaratory relief action can settle the insurance coverage controversy not being addressed in state court, even though it will not help resolve the underlying state court action."  *Id.*  A different group of cases, however, found that the first

- 8 -

factor weighed against declaratory judgment where it did not "settle the ultimate controversy between the parties which is ongoing in state court." *Id.*

The Sixth Circuit observed that the contrary results in the cases could be explained by their different factual scenarios, using as an example a case where a declaratory judgment action was inappropriate when "the insurance coverage controversy rested on a fact-based question of state law regarding whether the plaintiff in the state action was actually an employee of the defendant," and the issue of employment status was already being considered in two separate state court proceedings. *Id.* at 555-56 (citation omitted). In contrast, the Sixth Circuit noted another case where the plaintiff insurance company was not a party to the pending state court action and "neither the scope of the insurance coverage nor the obligation to defend was before the state court." *Id.* at 556 (citation omitted). Applying these principles, the Sixth Circuit found that the district court's declaratory judgment did settle the controversy in the case at bar, as (1) the only issue addressed by the court was whether the insurance policy covered the claimed insured; (2) the issue was not and could not be considered in the state court action because the insurance company was not a party to that action; and (3) the issue involved a legal dispute and not a factual dispute requiring the district court to inquire into matters being developed through state court discovery. *Id.*

The Sixth Circuit's analysis in *Scottsdale* is applicable here. While the Court's exercise of declaratory judgment might not settle all controversies among Defendants, SSC, and Dr. Lister in the MDL Action, it certainly settles the insurance coverage controversy among State Farm, SSC, and Dr. Lister. Like *Scottsdale*, State Farm seeks only a determination of its insurance coverage given the language of the policies and the TPLA; State Farm is not a party to the MDL Action, and the issue of its insurance coverage is not being considered; and the instant

- 9 -

declaratory judgment action involves a legal dispute: construction of an insurance contract in light of the TPLA.  *See Google, Inc. v. EMSAT Advanced Geo-Location Tech., LLC*, No. 4:09CV1243, 2010 WL 55685, at *3 (N.D. Ohio Jan 4. 2010)[3] (finding first factor favored exercising jurisdiction where it would not settle entire controversy in original litigation, but would determine liability between plaintiff and defendant in the declaratory judgment action); *Owners Ins. Co. v. Graham*, No. 1:09-CV-206, 2009 WL 4785862, at*1 (E.D. Tenn. Dec. 9, 2009) (same); *Sunbelt Rentals, Inc. v. Tudor Ins. Co.*, No. 1:13-CV-1433, 2014 U.S. Dist. LEXIS 37851, at *5-6 (N. D. Ohio Mar. 20, 2014) (where declaratory judgment action would not settle negligence issue in separate tort action but would answer insurance coverage question, the first factor did not favor granting stay).

Because the entire insurance coverage controversy raised by the Complaint for Declaratory Judgment would be settled by the Court's exercise of jurisdiction, the first factor weighs in favor of denying Defendants' motion.

### B.      Clarification of the Legal Relations at Issue

Like the first factor, the *Scottsdale* Court observed a split in the jurisprudence regarding clarification of the legal relations at issue.  The Sixth Circuit found that the more persuasive line of cases held that the "district court's decision must only clarify the legal relations presented in the declaratory judgment action."  *Scottsdale Ins. Co.*, 513 F.3d at 557.  Applying that reasoning, the Sixth Circuit found that the legal relations at issue were clarified where the insurance company's contractual duties were determined.  *Id.*  Such is the case here: the Court's consideration of State Farm's Complaint for Declaratory Judgment will clarify State Farm's legal obligations under the applicable insurance policies, settling the legal relations at issue in <u>this</u>

---

[3] Copies of all foreign and unreported cases are attached hereto.

- 10 -

case.  *See Owners Ins. Co.*, 2009 WL 4785862, at *2 ("a declaratory judgment need not clarify all the legal relations implicated in a dispute (*e.g.*, tortious or contractual relationships between the parties to the state court action), but must merely be able to resolve, once and finally, the question of the insurance indemnity obligation of the insurer") (internal citations omitted).

### C.      Race for *Res Judicata*

State Farm's Complaint for Declaratory Judgment was not filed for the purpose of "procedural fencing" or "to provide an arena for a race to *res judicata*," and so the third factor also weighs in favor of this Court denying Defendants' motion for stay.  In *Liberty Mutual Fire Insurance Co. v. Bohms*, 490 Fed. Appx. 721 (6th Cir. 2012), a case cited by Defendants, the Court found that Liberty Mutual was using its declaratory judgment action as procedural fencing where Liberty Mutual received a statutory 60-day notice of intent to file a bad faith insurance claim in Florida state court and filed a declaratory judgment action in the Western District of Michigan on the 59th day of the notice period: "the concern is that the declaratory judgment action not be used to allow the 'natural defendant' to preempt the 'natural plaintiff's' choice of forum," *Id.* at 726 (citation omitted).  In contrast, in *Owners Insurance Co. v. Graham*, Owners Insurance brought its suit for declaratory judgment "long after" Defendants filed their separate state court action.   2009 WL 4785862 at *2.   The court observed: "[The third] factor is presumptively absent when the declaratory judgment action was filed long after the state court action." *Id.*

This case is like *Owners Insurance*, not *Liberty Mutual*: the MDL was established on February 14, 2013. State Farm's Complaint for Declaratory Judgment, an independent action seeking determination of its insurance coverage of SSC and Dr. Lister, was filed more than two years later on April 30, 2015.  There is no evidence of improper motive or procedural fencing.

- 11 -

*See Scottsdale Ins. Co.*, 513 F.3d at 558 (where the declaratory judgment was brought several years after institution of the state court action, finding no procedural fencing: "We are reluctant to impute an improper motive to a plaintiff where there is no evidence of such in the record"); *Sunbelt Rentals, Inc.*, 2014 U.S. Dist. LEXIS 37851, at *7 ("A district court should not deny jurisdiction to a plaintiff who has not done any more than choose the jurisdiction of a federal rather than state court, a choice given by Congress.") (citing *Scottsdale Ins. Co.*, 513 F.3d at 558)).

Defendants claim that State Farm seeks to "avoid the central holding by Judge Zobel in the MDL Action." (Defs.' Mem. at 11.)   But as previously addressed, Defendants have overstated Judge Zobel's ruling: she declined to decide that healthcare providers cannot be "sellers" for purposes of imposing liability under the TPLA in the absence of Tennessee precedent to guide her.  Moreover, no decision of an out-of-state district court interpreting a legal issue of first impression in a case in which State Farm is not a party is binding on State Farm.  It is essential for a court sitting in Tennessee to interpret the insurance policies in light of the language of the TPLA.  Therefore, it is impossible for this action to be a race to *res judicata*.

Defendants also argue that the Court should not "hold a separate trial to find facts not plead or otherwise at issue in the underlying state court action to determine the duty to defend." (*Id.* (citation omitted).)  State Farm seeks determination of a purely legal issue based on the allegations in the MDL Action and does not ask this Court to determine facts not plead therein. In the cases cited by Defendants in support of their argument, the courts declined to exercise declaratory judgment jurisdiction where they would have had to make determinations of fact, not of law.  *See, e.g., Cambridge Mut. Fire Ins. Co. v. Ketchum*, No. 3:11-CV-00743, 2012 U.S. Dist. LEXIS 115618, at *12 (D. Conn. Aug. 16, 2012) (finding insurance company was asking

- 12 -

the Court to consider facts outside those in the pleadings to determine insurance coverage, and that required the Court to make a factual determination); *Zurich Ins. Co. v. Alvarez*, 669 F. Supp. 307, 309 (C.D. Cal. 1987) ("in deciding whether to grant the relief requested in this action, the Court would be required to decide predicate facts which may be fundamentally at issue in the state court action").

State Farm's Complaint is not an attempt at procedural fending and is a proper vehicle for the determination of State Farm's rights.

### D. Increased Friction Between Federal and State Courts

Defendants dismiss out of hand the fourth factor, arguing that it is "not relevant" to this Court's evaluation of their motion. That is not the case. The fact that this declaratory judgment action will in no way increase friction between federal and state courts weighs strongly in favor of denying Defendants' request for stay. *See Owners Ins. Co.*, 2009 WL 4785862, at *2 (fourth factor weighed in favor of declaratory judgment where no friction would be created between federal and state courts: "if the insurer's indemnity obligation can be settled as a matter of law, this subfactor argues for the exercise of jurisdiction"); *Sunbelt Rentals, Inc.*, 2014 U.S. Dist. LEXIS 37851, at *8-9 (fourth factor favored denying motion to stay where declaratory judgment action would not increase friction between federal and state courts).

And while this Court does not need to evaluate the three sub-factors applicable to this inquiry as no state court action is pending, the policy considerations behind the sub-factors further support denial of Defendants' motion. Those factors weigh, in part, whether the state court would be in a better position to evaluate the case and whether there is a nexus between the legal issues and state law or public policy. *See Scottsdale Ins. Co.*, 513 F.3d at 560. Here, State Farm asks this Court to interpret the applicable insurance policies in light of its argument that

- 13 -

healthcare providers cannot be "sellers" of a defective or unreasonably dangerous product for purposes of imposing liability under the TPLA. (*See* Compl.)  The Complaint invokes a legal issue of first impression in Tennessee; such statutory construction is more appropriately considered by this Court or by the Tennessee Supreme Court than the MDL court.  Judge Zobel implicitly acknowledged the same in her ruling on the TPLA issues at the Rule 12(b)(6) stage of the MDL Action, where she repeatedly referenced a lack of Tennessee precedent to guide her. Despite Defendants' attempt to shirk this factor, it weighs heavily against their motion.

### E.    Availability of Alternative Remedy

Defendants also dismiss the fifth factor considered by the Sixth Circuit as "not relevant" to the Court's determination, but the lack of a better, alternative remedy for State Farm certainly supports denial of Defendants' motion for stay. *See Sunbelt Rentals, Inc.*, 2014 U.S. Dist. LEXIS 37851, at *9 (fifth factor did not favor granting stay where the federal declaratory judgment action "is no less effective than any potential alternative available").  State Farm is not a party to the MDL Action, and no future decision of the MDL court in which it may consider an issue of first impression in Tennessee is binding on State Farm.  A declaratory judgment action in this Court to determine State Farm's obligations under the applicable insurance policies is necessary, appropriate, and the best remedy available to State Farm.

As set forth above, the five factors guiding this Court in its decision of whether to render a declaratory judgment weigh heavily in favor of denying Defendants' present motion.

## III.    Conclusion

State Farm filed this action in order to have the Court decide its contractual obligations to SSC and Dr. Lister.  As part of that determination, the Court will need to address State Farm's contention that healthcare providers such as SSC and Dr. Lister cannot be "sellers" for purposes

- 14 -

of imposing liability under the TPLA as a matter of law.  There is no reason that this Court should defer that question simply because an MDL pending in Massachusetts implicates the same issue.  State Farm submits that the question is properly before this Court and more appropriately decided by this Court.  State Farm, therefore, respectfully requests that the Court deny Defendants' motion to strike or alternatively to stay so that this declaratory judgment action may proceed.

Respectfully submitted,

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.

*s/ Brigid M. Carpenter*
Brigid M. Carpenter
B.P.R. No. 18134
Caldwell G. Collins
B.P.R. No. 28452
Baker Donelson Center
211 Commerce Street, Suite 800
Nashville, Tennessee  37201
(615) 726-7341
(615) 744-7341 (facsimile)
bcarpenter@bakerdonelson.com
cacollins@bakerdonelson.com

*Attorneys for Plaintiff State Farm Fire and Casualty Company*

- 15 -

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 3rd day of September, 2015, a copy of the foregoing Response in Opposition was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt as listed below.  All other parties will be served by regular United States mail.  Parties may access this filing through the Court's electronic filing system.

C.J. Gideon, Jr.
Christopher J. Tardio
Matthew H. Cline
GIDEON, COOPER & ESSARY PLC
315 Deaderick Street
Suite 1100
Nashville, Tennessee 37238

G. Gerard Stranch, IV
Benjamin A. Gastel
BRANSTETTER, STRANCH & JENNINGS PLLC
227 Second Avenue, North
Fourth Floor
Nashville, Tennessee 37201-1631

Mark P. Chalos
Annika K. Martin
LIEFF CABRASER, HEIMANN & BERNSTEIN, LLP
150 Fourth Avenue North, Suite 1650
Nashville, Tennessee  37219

*s/ Brigid M. Carpenter*
Brigid M. Carpenter

- 16 -

# UNREPORTED CASES

2010 WL 55685
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
N.D. Ohio,
Eastern Division.

GOOGLE, INC., Plaintiff,
v.
EMSAT ADVANCED GEO-LOCATION
TECHNOLOGY, LLC and Location Based Services,
LLC, Defendants.

No. 4:09CV1243. | Jan. 4, 2010.

**Attorneys and Law Firms**

Thomas H. Shunk, Christina J. Moser, Baker & Hostetler, Cleveland, OH, for Plaintiff.

Michael J. Garvin, R. Eric Gaum, Robert J. Diaz, Cleveland, OH, for Defendants.

**ORDER**

PETER C. ECONOMUS, District Judge.

**\*1** This matter is before the Court upon a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for Lack of Subject Matter Jurisdiction filed by Defendants EMSAT Advanced Geo-Location Technology, LLC and Location Based Services, LLC (collectively "EMSAT"). (Dkt.# 7). Plaintiff Google, Inc., ("Google") has filed a Response (Dkt.# 8) and EMSAT has filed a Reply (Dkt.# 9).

**I. BACKGROUND**
The Complaint in the instant matter was filed on May 29, 2009. (Dkt.# 1). In the Complaint, Google requests a declaratory judgment, seeking "a declaration of its rights against threats of patent infringement litigation made by Defendants" concerning one of Google's products, Google Maps. (Dkt. # 1, at ¶ 4). The patent alleged to be

infringed is U.S. Patent No. 7,289,763 ("the ′ 763 Patent"), held by EMSAT. Pursuant to the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201, Google seeks a declaration that Google Maps does not infringe the ′763 Patent of EMSAT (Count I), and that the ′763 Patent is invalid for failure to satisfy the requirements for patentability (Count II).

In a related case, *EMSAT Advanced Geo-Location Technology, LLC and Location Based Services, LLC v. T-Mobile USA, Inc.,* N.D. Ohio Case No 4:08CV00817 ("the T-Mobile Litigation"), EMSAT has accused T-Mobile USA, Inc. ("T-Mobile") of patent infringement. EMSAT alleges that T-Mobile is infringing the ′763 Patent by its use and sale of "mobile E911 services," including Google Maps (Count IV). (Case No. 4:08CV00817, Dkt. # 6, at 6). In its Answer, T-Mobile submitted counterclaims seeking a declaratory judgment that its products do not infringe any of EMSAT's patents, including the ′763 Patent, (Counterclaim I) and that the patents, including the ′763 Patent, are invalid (Counterclaim II). (Case No. 4:08CV00817, Dkt. # 18, at 7-8).

On July 31, 2009, in the instant matter, in lieu of filing an Answer to the Complaint, EMSAT filed a Motion to Dismiss pursuant to Rule 12(b)(1) for lack of Subject Matter Jurisdiction. (Dkt.# 7). The instant Motion to Dismiss argues that this Court should use its substantial and unique discretion to decline to exercise jurisdiction over the declaratory judgment action.

**II. LAW AND ANALYSIS**

**A. *Standard of Review***
A motion to dismiss pursuant to Rule 12(b)(1) challenges the court's subject matter jurisdiction. Rule 12(b)(1) motions to dismiss fall into two general categories: facial attacks and factual attacks. Fed.R.Civ.P. 12(b)(1); *United States v. Ritchie,* 15 F.3d 592, 598 (6th Cir.1994). A facial attack challenges the pleading itself. On such an attack, the Court must take all material allegations in the complaint as true, and construe them in the light most favorable to the nonmoving party. *RMI Titanium Co. v. Westinghouse Elec. Corp.,* 78 F.3d 1125, 1134-35 (6th Cir.1996).

A factual attack is a challenge to the factual existence of subject matter jurisdiction. "On such a motion, no presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.*

(internal citations omitted). In reviewing such motions, a district court has wide discretion to allow affidavits, documents, and even conduct a limited evidentiary hearing if necessary. *Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir.1990).

**\*2** A motion to dismiss in a declaratory judgment action is considered a factual attack on subject matter jurisdiction. *3D Sys. v. Envisiontec, Inc.,* 575 F.Supp.2d 799, 804 (E.D.Mich.2008). Therefore, the Court need not afford a presumption of truthfulness to the pleadings. *Dow Jones & Co. v. Harrods, Ltd.,* 237 F.Supp.2d 394, 407 n. 43 (S.D.N.Y.2002) (*aff'd* 346 F.3d 357 (2d Cir.2003)).

### B. *Motion to Dismiss for Lack of Subject Matter Jurisdiction*

The DJA does not confer jurisdiction on federal courts, and therefore, Google's Complaint must have an independent basis for subject matter jurisdiction. *Toledo v. Jackson,* 485 F.3d 836, 839 (6th Cir.2007); *Heydon v. MediaOne of S.E. Mich., Inc.,* 327 F.3d 466, 470 (6th Cir.2003). District courts have federal question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. In the instant matter, this Court has subject matter jurisdiction because Google "seeks a declaration of its rights against threats of patent infringement," which arises under a federal law, Title 35 of the United States Code. (Dkt. # 1, at ¶ 4).

### 1. Case or Controversy

Once it has been established that a court has subject matter jurisdiction, the court must determine that the claim is justiciable, meaning there must be a "case of actual controversy." *Genentech v. Eli Lilly & Co.,* 998 F.2d 931, 936 (Fed.Cir.1993). A declaratory judgment claim is justiciable if "the facts alleged under all the circumstances show that there is a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Micron Tech., Inc. v. Mosaid Techs., Inc.,* 518 F.3d 897, 901 (Fed.Cir.2008) (quoting *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007)). This standard, recently altered by *MedImmune,* "enhances the availability of declaratory judgment jurisdiction in patent cases." *3D Sys.,* 575 F.Supp.2d at 802.

In the instant matter, Google alleges that EMSAT identified Google Maps as infringing the '763 patent in

the T-Mobile Litigation. (Dkt. # 1, at ¶ 9). While EMSAT claims that it never accused Google of infringing its patent, EMSAT admits that it has accused T-Mobile of infringement of the '763 Patent because of its use and sale of Google Maps. (Dkt. # 7, at 2). Because Google created the Google Maps technology alleged to be infringing EMSAT's '763 Patent in the T-Mobile Litigation, there is a substantial controversy sufficient to satisfy the constitutional requirement.

### 2. Discretionary Relief

EMSAT argues in its Motion that this Court should decline to exercise jurisdiction over the dispute. "A court may lack subject-matter jurisdiction, or may properly exercise its discretion to deny declaratory judgment, in cases where a more appropriate form of relief does exist." *Dow Jones,* 237 F.Supp.2d at 442.

**\*3** Under the DJA, a court "may declare the rights and other legal relations of any interested party seeking such declaration." *Travelers Indem. Co. v. Bowling Green Prof'l Assocs., PLC,* 495 F.3d 266, 271 (6th Cir.2007) (citing 28 U.S.C. § 2201(a) (2006)). However, the DJA "confers a discretion on the courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.,* 515 U.S. 277, 287, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995); *Allstate Ins. Co. v. Mercier,* 913 F.2d 273, 277 (6th Cir.1990).

In the Sixth Circuit, there are five factors a court should consider when deciding whether to exercise its discretion to hear a case under the DJA. Those five factors are: (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race for res judicata; (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective. *Scottsdale Ins. Co. v. Flowers,* 513 F.3d 546, 554 (6th Cir.2008) (citing *Grand Trunk R.R. Co. v. Consol. Rail Corp.,* 746 F.2d 323, 326 (6th Cir.1984)).

### a. *Resolution of the Controversy*

In deciding whether the declaratory judgment action would settle the controversy, the Court considers the competing policy considerations of consolidating litigation into one court versus permitting a party to

Case 1:13-md-02419-RWZ   Document 2239-2   Filed 09/10/15   Page 20 of 44

Google, Inc. v. EMSAT Advanced Geo-Location..., Not Reported in...

determine its legal obligations as quickly as possible. *Scottsdale,* 513 F.3d at 555.

Generally, in deciding whether to decline jurisdiction because of concurrent proceedings in another federal court, the Court is faced with proceedings involving the same parties and issues. *See Katz v. Lear Siegler, Inc.,* 909 F.2d 1459, 1463 (Fed.Cir.1990). While the issues are similar in the instant matter and the T-Mobile Litigation, only EMSAT is a party to both proceedings. Exercising our discretion to entertain the declaratory judgment action would settle the controversy as between Google and EMSAT because Google is not currently a party to the T-Mobile Litigation. It could not settle the entire T-Mobile Litigation, however, because that case involves additional parties and issues. Nevertheless, because exercising jurisdiction would at least determine Google's liability to EMSAT with respect to the ′763 Patent, the first factor favors exercising jurisdiction.

**b. *Useful Purpose***
The second factor this Court must consider is whether the declaratory action would serve a useful purpose in clarifying the legal relations at issue. Declaratory relief is meant to serve both an adjudicative and preventative role, to "avoid the dispute escalating into additional wrongful conduct." *Dow Jones,* 237 F.Supp.2d at 405. However, where "complex factual issues are present and the action parallels" another action, declaratory judgment may be inappropriate. *Am. Home Assurance Co. v. Evans,* 791 F.2d 61, 64 (6th Cir.1986). Especially in the context of complex intellectual property infringement disputes "it would be particularly inappropriate ... to invoke a statute whose primary aim is to promote swift and efficient declaration of rights and to bring finality to legal conflicts." *Dow Jones,* 237 F.Supp.2d at 435-36.

*4 The legal and factual claims at issue in the instant matter are identical to some of those pending in the T-Mobile Litigation, i.e., whether Google Maps infringes the ′763 Patent and whether the ′763 Patent is valid. A court may decline jurisdiction when the same issue is presented in another forum and can be satisfactorily adjudicated in that other forum. *Empire Indem. Ins. Co. v. Special Foster Care. Servs.,* 908 F.Supp. 483, 485 (N.D.Ohio 1995).

Because the same issues are presented in both forums, there are two possible outcomes. Either this Court could reach the same conclusion as that of the T-Mobile Litigation, and "the declaration would have been unnecessary and the federal litigation a waste of judicial resources," or the two courts could disagree, "resulting in

inconsistent judgments." *Bituminous Cas. Corp. v. J. & L. Lumber Co.,* 373 F.3d 807, 813-14 (6th Cir.2004). Neither of these outcomes are desirable, because "[t]he purpose of preventing multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters is as valid for declaratory action as any other." *Eli Lilly,* 998 F.2d at 938 (internal citations omitted).

Additionally, courts have held that declaratory judgments do not serve a useful purpose where there is a "pending coercive action, filed by the natural plaintiff," which encompasses all of the same issues as the declaratory judgment action. *AmSouth Bank v. Dale,* 386 F.3d 763, 787 (6th Cir.2004). Coercive actions are generally preferred because they address harms that already occurred rather than potential future harm as in declaratory judgment actions. Moreover, "this is not a situation in which a declaratory plaintiff will suffer injury unless legal relations are clarified," because T-Mobile is actually promoting Google's interest by arguing in the T-Mobile Litigation that Google Maps does not infringe the ′763 Patent, rather than acting "at the peril" of Google. *Id.* at 786.

Because the same issues are presented in the instant matter as in the T-Mobile Litigation, and can be satisfactorily adjudicated in that forum, and because the T-Mobile Litigation is a coercive suit by the natural plaintiff, a declaratory judgment in the instant matter would not serve a useful purpose. Therefore, the second factor favors this Court declining to exercise its jurisdiction.

**c. *Race for Res Judicata***
The third factor this Court must consider is whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race for res judicata.

In the instant matter, it cannot be said that Google has filed this declaratory judgment action for the purpose of procedural fencing because Google filed this suit in the same district as the T-Mobile Litigation. That the T-Mobile Litigation is before another judge in this district is simply a matter of coincidence. This is not a situation in which the declaratory plaintiff hurried to file a lawsuit in order to obtain a more favorable forum for itself. However, when there are two competing lawsuits, the first to be filed generally has priority absent special circumstances. *Kmart Corp. v. Key Indus.,* 877 F.Supp. 1048, 1053 (E.D.Mich.1994).

**\*5** Similarly, this action was not filed as an arena for a race for res judicata because res judicata only applies to multiple lawsuits involving the same parties. However, while res judicata is not at issue, if this Court exercises its jurisdiction over the instant matter, it may result in a race for collateral estoppel. Because the policy behind both res judicata and collateral estoppel seeks to prevent parties from litigating the same issues in multiple actions, a possible race for collateral estoppel would also counsel this Court against exercising its jurisdiction.

Exercising jurisdiction in the instant case could result in a race for collateral estoppel because the issues are similar to the issues in the T-Mobile Litigation. Should Google prevail in its declaratory judgment action, T-Mobile may try to offensively preclude EMSAT from litigating the same issues, i.e. whether Google Maps infringes the '763 patent. Conversely, if the T-Mobile Litigation is concluded first and T-Mobile prevails in the lawsuit against EMSAT, Google may attempt to offensively preclude EMSAT from relitigating the issues.

Therefore, from Google's point of view there is no risk to bringing a separate action because it cannot be bound as a result of the T-Mobile litigation, but may use a judgment in T-Mobile's favor to its advantage. EMSAT is therefore forced to absorb all the risk, because a loss in either lawsuit may result in it being precluded from relitigating the issues in the other pending suit. While a court in its discretion may decide not to allow T-Mobile or Google to use offensive non-mutual preclusion against EMSAT, the mere possibility informs our decision of whether to exercise our jurisdiction in the instant matter. Because of the possibility of a race to collateral estoppel, the third factor favors declining to exercise jurisdiction over the declaratory judgment action.

#### d. *Conflict with Another Jurisdiction*
The fourth factor is whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction. However, because both the instant matter and the T-Mobile Litigation are pending in federal court this factor is irrelevant to our analysis. *See Mt. Hawley Ins. Co. v. Packers Sanitation Servs.,* No. 06-2569, 2007 U.S. Dist. LEXIS 47382, at \*17 (N.D. Ohio June 22, 2007).

#### e. *Adequate Alternative Remedy*
The fifth factor this Court must consider in deciding whether to exercise its jurisdiction is whether there is an alternative remedy which is better or more effective. If

there is a better or more effective remedy, a court has discretion to decline jurisdiction "whether or not further relief is or could be sought." *Micron Tech.,* 518 F.3d at 903.

Since both the instant matter and the T-Mobile Litigation must resolve whether Google Maps infringes the '763 Patent, "clearly it would be a waste of judicial resources to litigate this dispute in more than one forum." *Internet Transaction Solutions, Inc. v. Intel Corp.,* No. 06-035, 2006 U.S. Dist. LEXIS 29532, at \*21, 2006 WL 1281654 (S.D.Ohio May 8, 2006). It would be more effective to resolve this question in the T-Mobile Litigation than in this Court because the T-Mobile Litigation was filed first, it involves a coercive lawsuit rather than a declaratory action, and because discovery has already begun.

**\*6** If Google would like to have a court determine its liability to EMSAT, there are two remedies which Google could obtain without pursuing a declaratory judgment action in this Court and which would avoid litigating the same issue in more than one forum. The first alternative remedy would have been to consolidate the instant declaratory judgment action with the T-Mobile Litigation. Rule 42(a) allows the court, upon motion of the parties, to consolidate two actions if they involve a common question of law or fact. Fed. R. Civ. Pro. 42(a). Although the instant matter has been pending since May 29, 2009, and involves common questions of law and fact, neither party has moved to consolidate it with the T-Mobile Litigation.

The second alternative remedy would be for Google to intervene in the T-Mobile Litigation pursuant to Rule 24 rather than bringing a separate declaratory judgment action. Rule 24 allows parties to intervene either of right or permissively if they have an interest in the litigation. Under Rule 24(a) a party can intervene of right if they submit an application that (1) is timely, (2) shows an interest in the subject matter of the action, (3) shows that the protection of the interest may be impaired by the disposition of the action, and (4) shows that the interest is not adequately represented by an existing party. Fed R. Civ. Pro. 24(a). Rule 24(b) allows permissive intervention, in the court's discretion, by any party sharing a common question of law or fact with the main action.

Because there are better or more effective remedies, the fifth factor favors this Court declining to exercise its jurisdiction. Rather than pursuing duplicative litigation in this Court, either consolidation or intervention would be more appropriate remedies.[1] This factor favors dismissal even if the parties cannot or choose not to pursue the

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Google, Inc. v. EMSAT Advanced Geo-Location..., Not Reported in...

more effective remedies. *Micron Tech,* 518 F.3d at 903.

¹       Pursuant to Local Rule 3.1(b)(3) this Court requested a transfer of the instant matter to Judge Adams, in front of whom the T-Mobile Litigation is pending, but Judge Adams declined to accept the transfer.

and more effective remedies.

Therefore, for the foregoing reasons, Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction is hereby **GRANTED.** (Dkt.# 7). The instant action is hereby **DISMISSED.**

**IT IS SO ORDERED.**

**III. CONCLUSION**

As explained above, while the first factor favors exercising jurisdiction and the fourth factor is irrelevant, the second, third, and fifth factors all favor dismissal. A declaratory judgment action will not be useful because there is a pending coercive action, the case provides an arena for a race for collateral estoppel, and there are better

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 55685

End of Document

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

Owners Ins. Co. v. Graham, Not Reported in F.Supp.2d (2009)

2009 WL 4785862
Only the Westlaw citation is currently available.
United States District Court, E.D. Tennessee.

OWNERS INSURANCE COMPANY, Plaintiff,
v.
William GRAHAM and Annette Graham,
Defendants.

No. 1:09–CV–206. | Dec. 9, 2009.

**Attorneys and Law Firms**

J. Chad Hogue, N. Mark Kinsman, Baker, Kinsman, Hollis, Clelland & Winer, PC, Chattanooga, TN, for Plaintiff.

Jimmy W. Bilbo, Bilbo Law Office, Cleveland, TN, for Defendants.

*MEMORANDUM AND ORDER*

SUSAN K. LEE, United States Magistrate Judge.

**\*1** This is a declaratory judgment action brought by Plaintiff Owners Insurance Company ("Plaintiff") against Defendants William and Annette Graham ("Defendants"). Defendants are the plaintiffs in a state court action against Bill Jennings ("Jennings"), Plaintiff's insured. In the state court action, Defendants allege damages resulting from the construction of their home by Jennings.[1] Plaintiff seeks a declaration that the damages alleged by Defendants are not within the scope of coverage of the insurance policies it issued to Jennings. Plaintiff represents Jennings is not a necessary party to this declaratory judgment action because any liability he may have had to Defendants has been discharged in bankruptcy.

[1]   In the state court action, Defendants have asserted three theories of liability against Jennings: breach of implied warranty of workmanlike quality, negligent construction, and violations of the Tennessee Consumer Protection Act.

The Court ordered the parties to submit briefs addressing the *Grand Trunk* factors guiding the discretionary exercise of jurisdiction in declaratory judgment actions

[Doc. 10]. After considering Plaintiff's brief [Doc. 11], the Court is satisfied that the issues presented in the declaratory judgment action are sufficiently distinct from the issues in the state court action. Plaintiff's brief explains that "the issues [presented in the declaratory judgment action] are whether the *alleged* defects were caused by work performed by Bill Jennings [2] and whether the *alleged* defects caused damage within the policy term ."[3] [Doc. 11 at 3 (emphases added) ]. The Court interprets this presentation of the issues to mean that Plaintiff is not challenging the truth of the allegations in the underlying state court action, but is rather arguing that those allegations, even if true, are not within the scope of insurance coverage.

[2]   Plaintiff argues that the damages alleged by Plaintiff fall within the "your work" exclusion of the policy.

[3]   Plaintiff also argues that the damages alleged by Plaintiff occurred outside the term of coverage.

A federal court's exercise of jurisdiction over declaratory judgment actions is discretionary, *see* 28 U.S.C. § 2201 ("in a case of actual controversy within its jurisdiction ... any court of the United States ... *may* declare the rights and other legal relations of any interested party seeking such declaration."), but that discretion is not unbounded. *See Grand Trunk W. R.R. Co. v. Consol. Rail Corp.,* 746 F.2d 323 (6th Cir.1984). In *Grand Trunk,* the Sixth Circuit Court of Appeals laid out a five-factor test to guide the court's discretion:

(1) whether the declaratory judgment action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Id.* at 326.

Whether the first factor is met hinges on the scope of the controversy presented in the declaratory judgment action. A declaratory judgment will "settle the controversy" when the issues in the declaratory action itself would be finally resolved, notwithstanding the continued existence

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works.

1

of a state court controversy between the parties. *See Scottsdale Ins. Co. v. Flowers,* 513 F.3d 546, 555 (6th Cir.2008) (holding that where the only issue in the declaratory judgment action was whether the state court defendant was covered by the insurance policy, an issue not before the state court, the declaratory judgment did settle the controversy between the parties). Here, as in *Scottsdale,* it appears that the issues presented in the declaratory action are distinct from those presented in state court. Jennings' liability to Defendants does not depend on whether he or a subcontractor performed the work causing the alleged damages, or on whether the alleged damages occurred during the period of coverage. The declaratory judgment action, therefore, will settle the controversy regarding the scope of coverage once and for all, with no danger that the state court will be called to decide overlapping issues. If Plaintiff is successful, moreover, this declaratory judgment will settle the entire controversy as a practical matter, both in federal and state court, because Jennings' liability to Defendants has been discharged in bankruptcy. Accordingly, I **FIND** the first factor counsels strongly in favor of exercising jurisdiction.

**\*2** As the *Scottsdale* court noted, "it is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue." *Id.* at 557. In order to satisfy this second factor, a declaratory judgment need not clarify all the legal relations implicated in a dispute (e.g., tortious or contractual relationships between the parties to the state court action), but must merely be able to "resolve, once and finally, the question of the insurance indemnity obligation of the insurer." *Id.* The scope of insurance coverage is not at issue in the state court action, and the declaration sought here will definitively resolve the scope of Plaintiff's indemnity obligation without confusing the state court's analysis of Jennings' liability. Furthermore, as noted above, if Plaintiff is successful, there will be no need to clarify the tortious or contractual relationships between Defendants and Jennings, because Jennings' liability has been discharged in bankruptcy. I therefore **FIND** the second factor favors exercising jurisdiction.

The third factor precludes jurisdiction when the declaratory judgment plaintiff files its suit shortly before the state court plaintiff in order to secure a more favorable forum. *Id.* at 558. This factor is presumptively absent when the declaratory judgment action was filed long after the state court action. *See id.* (stating that "[w]e are reluctant to impute an improper motive to a plaintiff where there is no evidence of such in the record" and holding that no such motive was evident where the declaratory action was brought "several years" after the

institution of the state court action). As in *Scottsdale,* Plaintiff brought its suit long after Defendants filed their state court action, and there is no indication in the record that Plaintiff chose this forum because of an improper motive. I **FIND** the third factor also favors exercising jurisdiction.

The fourth factor, whether the exercise of jurisdiction would increase friction between federal and state courts, involves the consideration of three subfactors. *Id.* at 560. The first, "whether the underlying factual issues are important to an informed resolution of the case," turns on the existence of factual overlap between the state and federal actions. On one hand, if the insurer's indemnity obligation depends on factual determinations being resolved in state court, this subfactor argues against exercising jurisdiction because the federal court may be called upon to make factual determinations that could ultimately conflict with those reached in the state court. *Id.* On the other hand, if the insurer's indemnity obligation can be settled as a matter of law, this subfactor argues for the exercise of jurisdiction. *Id.* Even if the indemnity obligation may be settled as a matter of law, however, the second subfactor, which focuses on "which court ... is in a better position to resolve the issues in the declaratory action," may nevertheless counsel against exercising jurisdiction if the declaratory judgment action implicates novel issues of state law. *Id.* A "novel issue" of state law does not arise merely because the precise issue has yet to be addressed by the state courts, but only if the law is so undeveloped that the federal court cannot "reasonably predict [ ]" how a state court would answer the question. *Id.* The third subfactor, "whether there is a close nexus between underlying factual and legal issues and state law and/or public policy," usually militates against exercising jurisdiction in the context of an insurer's indemnity obligation because issues of insurance contract interpretation are questions of state law, and state courts are more familiar with them. *Id.* at 561. Although the state court would likely be better suited to interpreting the insurance contract under state law, this declaratory action does not depend on determinations of fact that may conflict with similar determinations in the state court action, and there appear to be no novel issues of state law. Considering all three subfactors together, therefore, I **FIND** that entertaining this declaratory judgment action would not create friction between the state and federal courts.

**\*3** The fifth and final factor, whether there is a better alternative remedy, depends on a fact-specific consideration of "the whole package of options" available to the plaintiff. *Id.* at 562. An insurer will typically have at least two alternatives to a federal declaratory judgment

action: a state declaratory action and an indemnity action either joined with or filed subsequent to the underlying state action. A state declaratory judgment action might have been a better alternative here because it would have afforded the same advantages to Plaintiff but might have allowed the same judge to hear both the underlying and declaratory judgment actions, sparing judicial resources. Plaintiff argues to the contrary that it did not want to become involved in state court proceedings because of a danger of unfairness or prejudice from mixing issues of liability and insurance coverage. Even assuming a state declaratory judgment action would have been a better alternative, I **FIND** it is not so clearly superior that it outweighs the other four factors, all of which support the exercise of jurisdiction.

At this time, therefore, I **CONCLUDE** the factors announced in *Grand Trunk* counsel in favor of exercising jurisdiction. Accordingly, the Court will exercise its jurisdiction over this matter.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 4785862

**End of Document** © 2015 Thomson Reuters. No claim to original U.S. Government Works.

No *Shepard's Signal*™
As of: August 26, 2015 12:09 PM EDT

## *Sunbelt Rentals, Inc. v. Tudor Ins. Co.*

United States District Court for the Northern District of Ohio

March 20, 2014, Decided; March 20, 2014, Filed

CASE NO. 1:13-CV-1433

**Reporter**
2014 U.S. Dist. LEXIS 37851

SUNBELT RENTALS, INC., Plaintiff, v. TUDOR INSURANCE COMPANY et al., Defendants.

## Core Terms

state court, issues, declaratory judgment, coverage, declaratory, Defendants'

**Counsel:** [*1] For Sunbelt Rentals, Inc., Plaintiff, Counter-Defendant: John G. Farnan, LEAD ATTORNEY, Martha L. Allee, Rema A. Ina, Weston Hurd - Cleveland, Cleveland, OH.

For Tudor Insurance Company, Defendant, Cross Defendant, Counter-Claimant: Claire Cahoon Curtis, Jeffrey W. Van Wagner, Bonezzi, Switzer, Murphy, Polito & Hupp, Cleveland, OH.

For Ryan Services Group, LLC, doing business as RSG Insurance Services, LLC, Repath McAuley Woods LLC, R-T Specialty, LLC, doing business as R-T Specialty Insurance Services, LLC, Defendants: Steven D. Strang, Timothy T. Brick, Gallagher Sharp - Cleveland, Cleveland, OH.

For William Baumann, Defendant, Counter-Claimant: Timothy J. Weyls, Jr., Weyls Peters, Independence, OH.

For Deanna O'Donnell, Individually and as Fiduciary of the other Estate of Craig S. Mackovjak, Morgan Mackovjak, Connor Mackovjak, Mason Mackovjak, Quinn Mackovjak, Defendants: Anthony N. Palombo, W. Craig Bashein, Bashein, Bashein & Bashein, Cleveland, OH; Paul W. Flowers, Cleveland, OH.

For Insurance Specialists Group, doing business as Love Insurance Agency, Defendant: Daniel R. Haude, Reminger & Reminger - Cleveland, Cleveland, OH; Jeffrey T. Peters, Timothy J. Weyls, Jr., Weyls Peters, Independence, [*2] OH.

For Ryan Services Group, LLC, R-T Specialty, LLC, Repath McAuley Woods LLC, Cross-Claimants, Cross Defendants: Steven D. Strang, Timothy T. Brick, Gallagher Sharp - Cleveland, Cleveland, OH.

For Insurance Specialists Group, Cross Defendant, Cross-Claimant: Jeffrey T. Peters, Weyls Peters, Independence, OH.

For Baumann Enterprises, Inc., Cross-Claimant, Counter-Claimant: Daniel R. Haude, Reminger & Reminger - Cleveland, Cleveland, OH; Jeffrey T. Peters, Timothy J. Weyls, Jr., Weyls Peters, Independence, OH.

**Judges:** JAMES S. GWIN, UNITED STATES DISTRICT JUDGE.

**Opinion by:** JAMES S. GWIN

## Opinion

OPINION & ORDER

[Resolving Doc. No. 82, 86, & 100]

2014 U.S. Dist. LEXIS 37851, *3

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this action for a declaratory judgment regarding whether Plaintiff Sunbelt Rentals, Inc. has liability insurance coverage for the 2011 accident that is the subject of a state court wrongful death action, Defendants William Baumann, Baumann Enterprises, Inc., Insurance Specialists Group, R-T Specialty, LLC, Repath McAuley Woods LLC, Ryan Services Group, LLC, and Tudor Insurance Company ("Defendants") jointly move the Court for a stay pending the resolution of the state court tort action.[1] Plaintiff Sunbelt opposes this motion.[2] For  [*3] the below reasons, the Court **DENIES** Defendants' motion to stay.

## I. Background

On June 28, 2013, Plaintiff Sunbelt filed a complaint seeking a declaratory judgment against Tudor Insurance Company and various negligence claims against the other defendants. Its complaint said that it was entitled to both a defense and indemnity for a 2011 accident that is the subject of a state court wrongful death action, *O'Donnell v. Sunbelt Rentals*.[3]

On November 11, 2013, Plaintiff amended its complaint to seek: (1) a declaratory judgment that Defendant Tudor Insurance is obligated to indemnify and defend Sunbelt in the *O'Donnell* action; (2) a declaratory judgment that Defendant Tudor Insurance is required to pay Sunbelt's attorneys fees and expenses in this case; (3) extra-contractual damages due to Defendant Tudor Insurance's alleged bad faith; (4) indemnification

from Defendants Baumann Enterprises and William Baumann; (5) damages due to breach of contract by Defendant Baumann Enterprises; and (6) damages due to various other defendants' negligence regarding adding Plaintiff  [*4] to the Tudor Insurance policy.[4]

At the time Plaintiff filed its complaint, the underlying state court tort lawsuit had been scheduled for trial and was progressing on a time-line that would have concluded the state court tort trial in advance of the discovery and dispositive motions deadlines in the federal action, set for March and April 2014.

The *O'Donnell* case has since been continued and is now set for trial on August 18, 2014.[5]

Defendants now move the Court for a stay until the *O'Donnell* action is resolved. They say that the Court should stay the federal action because the outcome of the state court case will answer factual questions that are determinative to the coverage issues in the federal action; the state court is in the best position to answer factual questions, especially with regard to negligence; a stay pending resolution of the state court case would efficiently narrow any breach of contract claims to the defense costs incurred; and a stay would minimize costs for parties.[6]

Plaintiff Sunbelt opposes.[7] The Court now considers Defendants' motion.

## II. Legal Analysis

---

[1]   Docs. 82, 100.

[2]   Doc. 86.

[3]   Doc. 1. Plaintiff has since amended its complaint, adding additional defendants and claims. Doc. 32.

[4]   Doc. 32.

[5]   Doc. 82 at 3.

[6]   *Id.* at 3-4; Doc. 100.

[7]   Doc. 86.

2014 U.S. Dist. LEXIS 37851, *4

A district court may exercise its discretion to stay an [*5] action for a declaratory judgment during the pendency of a parallel state court proceeding.[8]

Generally, in deciding whether to exercise jurisdiction over a request for declaratory judgment, courts consider: (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the relevant legal relationships; (3) whether the declaratory remedy is being used as mere "procedural fencing" or "to provide an arena for a race to res judicata"; (4) whether the declaratory action would increase friction between the state and federal courts; and (5) whether a better or more effective alternative remedy exists.[9]

On balance, these factors weighs in favor of denying Defendants' request to stay the action.

### A. Settling the Controversy

Though arising from the same nucleus of facts, the portion of this federal lawsuit seeking a declaratory judgment is distinct from the state tort action. Although this federal lawsuit would not settle the question [*6] of parties' negligence with regard to the *O'Donnell* tort action, it would answer the separate question of whether Plaintiff Sunbelt was an insured under Tudor Insurance's policy and whether Defendant Tudor Insurance has a duty to defend Plaintiff Sunbelt. Unlike in the state tort action, where the relevant negligence is that related to the accident resulting in the alleged wrongful death, the negligence issues involved in the action before this Court arise from the circumstances surrounding whether Plaintiff was insured under the Tudor insurance policy.

Here, the relevant questions of whether Defendant Tudor Insurance has a duty to defend Plaintiff

Sunbelt and whether Plaintiff Sunbelt is entitled to insurance coverage do not depend on the outcome of the *O'Donnell* case. The issues in this case are more closely related to the breaches of contract that Plaintiff alleges, and the coverage issues in this lawsuit do not turn on whether Plaintiff Sunbelt is found to be negligent in the underlying state court *O'Donnell* action — the factual and legal issues in these two cases are distinct.

Therefore, this factor does not favor granting the stay as Defendants request.

### B. Serving a Useful Purpose

The [*7] second factor, whether the declaratory action would serve a useful purpose in clarifying the relevant legal relationships, favors this Court maintaining jurisdiction. As described above, a declaratory judgment by this court on the issues of coverage in addition to Sunbelt's contractual and negligence claims certainly will clarify the legal relationship between the parties and their respective obligations.[10]

### C. Being "Procedural Fencing" or "An Arena For a Race to Res Judicata"

The third factor, which examines whether the plaintiff is engaged in "procedural fencing" or whether the federal court's maintenance of jurisdiction will provide "an arena for a race to res judicata, similarly favors denying the motion to stay." "A district court should not deny jurisdiction to a plaintiff who has not done any more than

---

[8] *Wilton v. Seven Falls Co.*, 515 U.S. 277, 115 S. Ct. 2137, 132 L. Ed. 2d 214 (1995); *Brillhart v. Excess Inc. Co. of Am.*, 316 U.S. 491, 62 S. Ct. 1173, 86 L. Ed. 1620 (1942).

[9] *Grand Trunk W. R.R. Co. v. Consol. Rail Co.*, 746 F.2d 323, 326 (6th Cir. 1984).

[10] *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 557 (6th Cir. 2008) ("[I]t is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the . . . legal relationships presented to the district court.").

Case 1:13-md-02419-RWZ   Document 2239-2   Filed 09/10/15   Page 29 of 44

Page 4 of 5
2014 U.S. Dist. LEXIS 37851, *7

choose the jurisdiction of federal rather than state court, a choice given by Congress."[11]

Here, there is nothing to suggest that Plaintiff Sunbelt has filed this action motivated by "procedural fencing" or to race for "res judicata." Therefore, this factor does not favor granting the motion to stay.

## D. Increasing Friction Between the State and Federal Courts

The fourth factor, whether accepting jurisdiction would increase friction between federal and state courts, favors denying the motion to stay. In considering this factor, three sub-factors are relevant:

> (1) whether the underlying factual issues are important to an informed resolution of the case;
>
> (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
>
> (3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.[12]

For the same reasons discussed above, the first two of these sub-factors favor denying the motion to stay. The issues that the declaratory judgment would resolve turn on the terms of the insurance policy and the action of the parties regarding coverage [*9] prior to the accident that underlays the state tort action.

The state trial court is not in a better position than the federal court to evaluate the factual issues associated with these essentially contract dispute issues regarding the duty to defend and the insurance coverage of Plaintiff Sunbelt.

Since the Court will need to apply Ohio common law on coverage, contracts, and negligence, the third sub-factor favors granting the motion to stay.

On balance, however, the fourth factor suggests that accepting jurisdiction and denying the motion to stay would not increase friction between federal and state courts.

## E. Existence of Alternative Remedies

The final factor to consider is the availability of alternative remedies. Defendants argue that a better remedy would be for the Court to stay the federal action so that the state court could resolve underlying factual issues.

Certainly potential alternative remedies exist for Plaintiff. Plaintiff Sunbelt could have sought a declaratory judgment in state court or could have filed an indemnity action at the conclusion of the state action. It is not clear, however, whether such alternative remedies in this case would be better or more effective than [*10] this federal declaratory action.[13]

On the whole, with regard to the motion before the Court, the Court finds that the federal declaratory judgment is no less effective than any potential alternative available. Therefore, this factor does not strongly counsel in favor of granting the stay either.

## III. Conclusion

For the foregoing reasons, the Court **DENIES** Defendants' motion to stay.

IT IS SO ORDERED.

---

[11]   *Id.* at 558 (citations and internal quotation [*8] marks omitted).

[12]   *Id.* at 560 (citations omitted).

[13]   See *id.* at 562.

2014 U.S. Dist. LEXIS 37851, *10

Dated: March 20, 2014                                    UNITED STATES DISTRICT JUDGE

/s/ *James S. Gwin*
JAMES S. GWIN

**❶** Cited

As of: August 26, 2015 12:07 PM EDT

## *Cambridge Mut. Fire Ins. Co. v. Ketchum*

United States District Court for the District of Connecticut

August 16, 2012, Decided; August 16, 2012, Filed

CIVIL ACTION NO. 3:11-cv-00743 (VLB)

**Reporter**

2012 U.S. Dist. LEXIS 115618; 2012 WL 3544885

CAMBRIDGE MUTUAL FIRE INSURANCE COMPANY, Plaintiff, v. DAVID KETCHUM, ET AL, Defendants,

## Core Terms

insured, duty to defend, coverage, duty to indemnify, state court action, exhausted, carrier's, allegations, triggered, declaratory judgment, primary insurance, policy limit, underlying action, damages, limits, declaratory judgment action, summary judgment, excess carrier, allegation of the complaint, internal quotation marks, summary judgment motion, insurance company, policy coverage, insurer's duty, primary policy, monetary, depends, excess coverage, personal injury, carrier's duty

**Counsel:** [*1] For Cambridge Mutual Fire Insurance Company, Plaintiff: Lawrence H. Adler, Patricia M. Shepard, LEAD ATTORNEYS, Adler Law Group LLC, East Hartford, CT.

For David Ketchum, Defendant: Jennifer Lynn Zito, LEAD ATTORNEY, Law Offices of Jennifer L. Zito, Meriden, CT.

For Richard Lucente, Defendant: David Compagnone, LEAD ATTORNEY, Moynahan & Minnella, LLC, Waterbury, CT.

**Judges:** Hon. Vanessa L. Bryant, United States District Judge.

**Opinion by:** Vanessa L. Bryant

## Opinion

MEMORANDUM OF DECISION GRANTING DEFENDANTS' PARTIAL MOTION FOR SUMMARY JUDGMENT [Dkt. ##27,29]

This is a declaratory judgment action filed by the Plaintiff Cambridge Mutual Insurance Company ("Cambridge") pursuant to the Declaratory Judgment Act, *28 U.S.C. § 2201*, and *Fed. R. Civ. P. 57*. This action seeks a judgment declaring that a homeowner's policy issued to Defendant David Ketchum ("Ketchum") by Cambridge extends no coverage for the claims asserted by the Defendant Richard Lucente ("Lucente") against Ketchum in a related state court case filed by him for personal injury damages allegedly arising from Ketchum's negligence. Before the Court is Defendants' partial motion for summary judgment seeking a declaration that Cambridge has a duty to defend Ketchum [*2] in the underlying state court action. For the foregoing reasons, this Court grants Defendants' partial motion for summary judgment as to Cambridge's duty to defend and dismisses Cambridge's declaratory judgment as to its duty to indemnify as premature without prejudice to filing a new action following disposition of the underlying state court action.

Background

Cambridge issued a homeowner's policy with umbrella coverage to Ketchum for the policy period February 27, 2010 to February 27, 2011. [Dkt. #1, Compl., at 2]. The umbrella policy

2012 U.S. Dist. LEXIS 115618, *3

provided liability coverage to Ketchum for "the ultimate net loss which (1) the insured becomes legally obligated to pay because of personal injury or property damage; and (2) is in excess of the retained limit." *Id.* The umbrella policy contained a provision which excluded from coverage "any act intended by an insured to cause personal injury or property damage." *Id.* at 3.

On January 7, 2011, Lucente filed suit for personal injury against Ketchum in the Connecticut Superior Court for the Judicial District of Waterbury. [Dkt. #1, Compl. at 3]. Lucente's complaint alleged that he was driving his motorcycle in a parking lot when Ketchum negligently pulled [*3] into the lot behind him and struck his motorcycle, causing Lucente to suffer injuries and damages. *Id.* Lucente indicates that he suffered between $400,000 and $500,000 in damages. [Dkt. #28, Defendant Ketchum's Memorandum of Law, at 4].

Cambridge contends that Ketchum's act of striking Lucente's motorcycle with his car was intentional and thus Cambridge is excused from providing liability coverage to Ketchum as provided for in the exclusion provision in the umbrella policy. [Dkt. #1, Compl., at 4]. Cambridge requests a declaratory judgment to the effect that (1) Plaintiff has no duty to defend Ketchum in the underlying action; and (2) Plaintiff has no duty to indemnify Ketchum. *Id.* at 5.

Cambridge further contends that even if it has a duty to defend that duty has not been triggered because Ketchum's primary insurance policy has not been exhausted. Cambridge's umbrella policy provides that Cambridge "agree[s] to pay on behalf of the Insured the ultimate net loss which: 1. The insured becomes legally obligated to pay because of personal injury or property damage; and 2. is in excess of the retained limit." [Dkt. #40, p. 44]. It further provides that Cambridge shall provide the Additional [*4] Coverage for an occurrence which is covered under the policy and

"is either: 1. not covered by any primary insurance shown in the Schedule or any other insurance which applies; or 2. Covered by a primary policy under which one of these Additional Coverages has been exhausted." *Id.* In addition, Cambridge agrees to "defend any suit against insured which seeks damages for personal injury or property damage. We shall defend even if the suit is groundless, false or fraudulent." Lastly, the policy provides "Our coverage is excess over any other insurance. This means all insurance which covers you or any insured, whether it is shown on Part B, Declaration, or not. Only when all such insurance has been exhausted will this endorsement apply. The only insurance over which this endorsement may not be excess is insurance purchased to apply in excess of the sum of the retained limit and the limit of liability of this policy." *Id.* at 47.

At the time of the accident Ketchum was insured through a personal automobile liability policy with Plymouth Rock Assurance ("Plymouth") covering bodily injury in the amount of $250,000 per person/ accident. [Dkt. #28, Def. Mot. Summary Judgment, p. 2]. Plymouth [*5] has appeared to defend Ketchum in the underlying state court action under a reservation of rights. Lucente represents in his motion for summary judgment that Plymouth has offered to settle Mr. Lucente's negligence claim for the policy limits of $250,000 and that he is prepared to accept the policy limits of $250,000 in partial satisfaction of his claim. *Id.* at 3-4. Lucente contends that Plymouth's settlement offer cannot be practically effectuated until Cambridge agrees to defend Ketchum for the balance of the claim or participates in an overall settlement. *Id.* at 4.

<u>Legal Standard</u>

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Fed.R.Civ.P. 56(a)*. The moving party bears the burden of proving that

Case 1:13-md-02419-RWZ   Document 2239-2   Filed 09/10/15   Page 33 of 44

Page 3 of 9
2012 U.S. Dist. LEXIS 115618, *5

no factual issues exist. *Vivenzio v. City of Syracuse, 611 F.3d 98, 106 (2d Cir.2010)*. "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought." *Id.*, (citing *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)*; **[*6]** *Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986))*. "If there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied." *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH, 446 F.3d 313, 315-16 (2d Cir.2006)* (internal quotation marks and citation omitted).

"A party opposing summary judgment cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible. At the summary judgment stage of the proceeding, Plaintiffs are required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not sufficient." *Welch—Rubin v. Sandals Corp., No.3:03cv481, 2004 U.S. Dist. LEXIS 22112, 2004 WL 2472280, at *1 (D.Conn. Oct. 20, 2004)* (internal quotation marks and citations omitted); *Martinez v. State of Connecticut, 817 F. Supp. 2d 28, 2011 WL 4396704 at *6 (D. Conn. 2011)*. Where there is no evidence upon which a jury could properly proceed to find a verdict for the party producing it and upon whom **[*7]** the onus of proof is imposed, such as where the evidence offered consists of conclusory assertions without further support in the record, summary judgment may lie. *Fincher v. Depository Trust and Clearance Co., 604 F.3d 712 (2d Cir. 2010)*.

Analysis

i. Duty to defend generally

Ketchum argues that a contractual duty to defend arises solely from the allegations of the complaint in the underlying state court action. [Dkt. #28, p.7-8]. Ketchum contends that since the underlying allegations in his state court action fall squarely within the coverage provided by Cambridge that Cambridge has a duty to defend regardless of the fact that Cambridge believes that Ketchum's acts were intentional and therefore outside the policy's coverage. *Id.* Consequently, Ketchum argues that Cambridge is not entitled to a declaration as a matter of law that it is has no duty to defend on the ground that he acted intentionally as it has sought. *Id.* Cambridge responds without citation to any caselaw or other authority that it is seeking this Court to make a factual determination of intentionality which would exempt Cambridge from any duty to defend or indemnify Ketchum in the underlying state court action.

However, **[*8]** clear precedent from the Connecticut Supreme Court reveals that Cambridge is seeking relief that is inappropriate under Connecticut law. The Connecticut Supreme Court has unambiguously held that "[i]n construing the duty to defend as expressed in an insurance policy, '[t]he obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether he has, in his complaint, stated facts which bring the injury within the coverage. If the latter situation prevails, the policy requires the insurer to defend, irrespective of the insured's ultimate liability . . . It necessarily follows that the insurer's duty to defend is measured by the allegations of the complaint . . . Hence, if the complaint sets forth a cause of action within the coverage of the policy, the insurer must defend.'" *Hartford Cas. Ins. Co. v. Litchfield Mut. Fire Ins. Co., 274 Conn. 457, 463, 876 A.2d 1139 (2005)* (quoting *Board of Ed. v. St. Paul Fire & Marine Ins. Co., 261 Conn. 37, 40-41, 801 A.2d 752 (2002))*. Therefore, "[i]f an allegation of the complaint falls even *possibly* within the coverage, then the insurance company must defend the

2012 U.S. Dist. LEXIS 115618, *8

insured." *Id.* (internal [*9] quotation marks and citation omitted, emphasis in original).

The Connecticut Supreme Court has explained that it "has concluded consistently 'that the duty to defend means that the insurer will defend the suit, if the injured party states a claim, which, qua claim, is for an injury covered by the policy; it is the claim which determines the insurer's duty to defend; and it is irrelevant that the insurer may get information from the insured, or from any one else, which indicates, or even demonstrates, that the injury is not in fact covered. The insurer has promised to relieve the insured of the burden of satisfying the tribunal where the suit is tried, that the claim as pleaded is groundless.'" *Id.* (quoting *Keithan v. Massachusetts Bonding & Ins. Co., 159 Conn. 128, 139, 267 A.2d 660 (1970)); see also Flint v. Universal Machine Co., 238 Conn. 637, 647 n.6, 679 A.2d 929 (1996)* (finding that the fact that insurance company "looked to outside sources beyond the face of the complaint to determine the validity of the allegations is irrelevant, if the complaint, in and of itself, sufficiently disclosed whether coverage is warranted."); *Missionaries of Co. of Mary, Inc. v. Aetna Cas. & Sur. Co., 155 Conn. 104, 230 A. 2d 21, 25 (Conn. 1967)* [*10] ("the duty to defend does not depend on facts disclosed by the insurer's independent investigation where the third party's complaint appears to be within the coverage"); *OSP, Inc. v. Aetna Casualty & Surety Co., 256 Conn. 343, 352, 773 A.2d 906 (2001)* ("It is well established ... that a liability insurer has a duty to defend its insured in a pending lawsuit if the pleadings allege a covered occurrence, even though facts outside the four corners of those pleadings indicate that the claim may be meritless or not covered.") (Internal quotation marks and citation omitted.).

In *Hartford Cas.*, the defendant, Litchfield Mutual Fire Insurance Company, issued a commercial premises policy to Strictly Dirt, a business which Mitch Wylie was the president and sole stockholder. Strickly Dirt and Wylie were sued by an individual who was bitten by Wylie's dog while allegedly on the premises of Strictly Dirt. Litchfield refused to provide a defense to Wylie on the basis of its own independent conclusion that Wylie was not acting within the scope of his employment at the time of the dog bite incident and thus outside the policy's coverage. However, the Connecticut Supreme Court found that Litchfield owed Wylie a duty [*11] to defend on the basis of the allegations of the underlying complaint. The Connecticut Supreme Court reasoned that even though the facts alleged in the complaint presented only a possibility that Wylie was acting within the scope of his employment, a possibility was enough to trigger Litchfield's duty to defend. *Id. at 1146*.

The Connecticut Supreme Court unequivocally stated in *Hartford Cas.* that the duty to defend does not rely on any outside information that the insurance company may possess about the underlying incident at issue explaining that "[i]t is irrelevant to the duty to defend that the defendant may discover during the course of the proceedings that Wylie was not acting within the scope of the policy's coverage at the time of the dog bite incident. The defendant could have both fulfilled its duty to defend Wylie and protected its right to contest whether the dog bite incident actually was covered by the Strictly Dirt policy by 'defend[ing] under a reservation of its right to contest coverage under the various avenues which would subsequently be open to it for that purpose.'" *Id. at 1147* (quoting *Black v. Goodwin, Loomis & Britton, Inc., 239 Conn. 144, 153, 681 A.2d 293 (1996))*. Accordingly, [*12] the "fact that the allegations against Wylie possibly could fall within the coverage of the Strictly Dirt policy is sufficient to trigger the defendant's duty to defend Wylie, even if the defendant suspected that it would later discover facts that would ultimately relieve it of its duty to indemnify Wylie." *Id.*

Cambridge, in its declaratory judgment action, is indeed asking this Court to look to facts outside

2012 U.S. Dist. LEXIS 115618, *12

the four corners of the underlying pleadings to determine its duty to defend. In fact, Cambridge is asking this Court to have a trial to determine facts as to Ketchum's intentionality which are neither plead nor otherwise at issue in the underlying state court action. It therefore appears that Cambridge is seeking declaratory judgment on the basis of information it obtained from either its own independent investigation or from other outside sources. The Connecticut Supreme Court has unequivocally held that it is irrelevant to the duty to defend that an insurance company has or may discover outside information which indicates that the claim may not be covered or is meritless. *See QSP, 256 Conn. at 352; Hartford Cas. 274 Conn. at 468.* As was the case in *Hartford Cas.,* the fact that [*13] Cambridge suspects that Ketchum was acting intentionally and thus outside the policy's coverage is irrelevant as the allegations of the underlying complaint undeniably fall within the coverage of the policy. *See* [Dkt. #31, Ex. A, State Court Complaint]. Indeed, Cambridge admits in its memorandum in opposition to summary judgment that it does "not dispute that, given the strict language of the Complaint in the underlying action, there would be a duty to defend pursuant a Reservation of Rights." [Dkt. #32, p.32]. Since the duty to defend is only "measured by the allegations of the complaint" this Court cannot hold a separate trial to find facts not plead or otherwise at issue in the underlying state court action to determine the duty to defend. Here since all of the underlying complaint's allegations sound in negligence and there are no allegations that Ketchum's actions were intentional, the complaint clearly sets forth a cause of action within the coverage of the policy and therefore Cambridge must defend Ketchum in the underlying action despite its belief that Ketchum acted intentionally.

ii. Excess Carrier's Duty to Defend

Cambridge also argues that its duty to defend in the underlying [*14] state court action has not been triggered because Ketchum's primary insurance coverage has not been exhausted. Ketchum argues that Plymouth's, the primary insurer, offer of settlement up to the policy limits should constitute an exhaustion of that policy thus triggering Cambridge's duty to defend as the excess carrier. Here, Lucente's damages are far in excess of the primacy insurance carrier's policy limits. There is a split of opinion among states as to when an excess carrier becomes obligated to defend its insured if the insured is liable for damages over the amount of the primary policy limit. *See* 14 Steven Plitt et al., Couch on Insurance § 200:38 (3d ed. 2007).

It appears that a majority of states to have addressed this issue have held that the excess carrier's duty to defend is not triggered until the policy limit of the primary carrier is exhausted by settlement or tender of payment, even if the claim for damages in the underlying action exceeds the primary carrier's limit and the excess carrier's policy will necessarily be implicated in the action. These decisions emphasize "that the terms of a contract are generally enforced as written, and because there are no equitable considerations [*15] which justify departing from the express provisions and obligations of the primary and excess insurance contracts, it is inappropriate for courts to alter the parties' obligations and economic expectations." *U.S. Fidelity and Guar. Co. v. Federated Rural Elec. Ins. Corp., 2001 OK 81, 37 P. 3d 828, 833 (Okla. 2001)* (collecting cases); *see also Continental Cas. Co. v. Synalloy Corp., 667 F. Supp. 1523, 1540 (S.D. Ga. 1983)* (acknowledging that although, some courts have held that an excess carrier must participate in the defense where it is clear that judgment may be greater than primary policy limits such a conclusion would "fly in the face of the policy language" and would make the excess insurer a coinsurer with the primary carrier with a coextensive duty to defend); *Signal Companies, Inc. v. Harbor Ins. Co., 27 Cal. 3d 359, 367, 165 Cal. Rptr. 799, 612 P.2d 889 (1980)* (requiring

excess carrier to defend before primary carrier's policy limit was exhausted was an "untenable" result absent some compelling equitable consideration because the excess carrier's policy explicitly stated that its liability would not attach until the primary carrier's coverage was exhausted); *Keck, Mahin & Cate v. National Union Fire Ins. Co. of Pittsburgh, PA, 20 S.W. 3d 692, 700 (Tex. 2000)* [*16] (noting that "majority rule is supported by the reasonable expectations of the insured and its insurance carriers. Excess insurers are able to provide relatively inexpensive insurance with high policy limits because they require the insured to contract for underlying primary insurance with another carrier.").

A minority of states have held that the excess carrier's duty to defend is triggered once the excess carrier becomes aware that the claim for damages in the underlying action will exceed the primary carrier's policy limit. *See, e.g., Cassara v. Nationwide Mut. Ins. Co., 144 A.D.2d 974, 975, 534 N.Y.S.2d 277 (4th Dep't 1988)* (rejecting "defendant's claim that, as an excess carrier, it has no duty to disclaim until it is informed that primary coverage has been exhausted. Plaintiff has established that the primary carrier's offer of its policy limit was rejected, and as long as there is a reasonable possibility that defendant's excess coverage may be reached, defendant has the duty to aid in the defense of its insured"); *Royal Ins. Co. of America v. Reliance Ins. Co., 140 F.Supp.2d 609, 618 (D.S.C. 2001)* (holding that excess carrier's duty to defend "became 'absolute'" at the moment the complaint was   [*17] filed as the complaint contained a prayer for relief that "clearly implicated the excess coverage"); *Hartford Acc. & Indem Co. v. South Carolina Ins. Co., 252 S.C. 428, 166 S.E.2d 762 (1969)* (Holding that excess carrier's duty to defend arose "at the time the action was instituted because the allegations of the complaint brought the claim within the coverage of the Hartford policy"); *American Motorists Ins. Co. v. Trane Co., 544 F.Supp. 669, 692 (W.D. Wis. 1982)*, judgment aff'd, *718 F.2d*

*842 (7th Cir. 1983)* ("Whether the damage was covered by an underlying policy depends on the interplay of two factors: first, whether the monetary limits of the underlying policy are exceeded; and second, whether actual substantive coverage is denied by the underlying insurer. If the claim against the insured exceeds the monetary limits set by the underlying insurer, the excess insurer's duty to defend is usually activated, even if the underlying insurer undertakes the defense as well."); *Celina Mut. Ins. Co. v. Citizens Ins. Co. of America, 133 Mich. App. 655, 662, 349 N.W.2d 547 (1984)* (holding that although the excess carrier's policy obligated it to defend the insured if the primary coverage was exhausted, "an insurer's obligation   [*18] to defend does not depend on its eventual liability to pay; it must defend when the pleadings show that the action is within the policy coverage").

This Court is unaware of any Connecticut court to have squarely addressed this particular issue and therefore it is a matter of first impression before this Court. This Court agrees with those cases which find that an excess carrier has a duty to defend where there is a reasonable possibility that a defendant's excess coverage may be reached despite the fact that a primary insurer has undertaken the defense as well. Here there is more than a reasonable possibility that Ketchum's excess coverage will be reached in light of the fact that Lucente has made clear that he has suffered more than $400,000 in damages. Since Lucente's claim exceeds the monetary limits of Ketchum's primary insurance policy with Plymouth, Cambridge's duty to defend has been triggered despite the fact that Plymouth has initially undertaken defending Ketchum in the underlying state court action.

The Court notes that such a conclusion does not run contrary to the terms of Cambridge's policy in the instant case. Although the policy states that Cambridge will provide coverage   [*19] for an occurrence "if covered by a primary policy which...has been exhausted," that its "coverage is

excess over any other insurance" and that its endorsement will apply "[o]nly when all such insurance has been exhausted," the policy also indicates that Cambridge will provide coverage for an occurrence if "not covered by any primary insurance." Here where it is clear that the claim exceeds the monetary limits of the primary policy, the majority of the claim is now no longer "covered by any primary insurance" and therefore Cambridge has an obligation under the terms of its policy to defend. Moreover, where the claim is in excess of the primary policy limits, the primary insurance policy is in effect exhausted and consequently the excess coverage is necessarily implicated at that moment. Since the Court has found that Cambridge's duty to defend arose when it became clear that the claim exceeded the monetary limits of the primary insurance policy, the Court need not address Ketchum's argument that Plymouth's offer of settlement up to the policy limits constitutes an exhaustion of the policy.

In sum, the Court has found that Cambridge's duty to defend in the underlying state court action [*20] has been triggered as it clear that Lucente's claim exceeds the monetary limits of Ketchum's primary insurance policy. In addition, the Court finds that Cambridge has a duty to defend in the underlying matter because the complaint clearly sets forth a cause of action within the coverage of the policy despite Cambridge's belief that Ketchum acted intentionally. Consequently, Cambridge's request that this Court hold a trial to determine whether Ketchum's acts were intentional and therefore outside the policy's coverage is not appropriate as the duty to defend turns solely on the allegations of the underlying complaint.

### iii. Duty to indemnify

Ketchum concedes that Cambridge is entitled to pursue a declaratory judgment relative to its duty to indemnify Ketchum in the underlying state court action. Although not raised by the parties, the Court concludes that Cambridge's declaratory judgment action with respect to its duty to indemnify is premature at this point. The duty to defend and the duty to indemnify are separable issues, and it is not required that they be decided at the same time. See *Missionaries of Co. of Mary, Inc. v. Aetna Cas. & Sur. Co., 155 Conn. 104, 113, 230 A.2d 21 (1967)* ("defendant [*21] properly concedes the separability of its duty to defend and its duty to indemnify"). "It is beyond dispute that an insurer's duty to defend, being much broader in scope and application than its duty to indemnify." *Wentland v. American Equity Ins. Co., 267 Conn. 592, 600, 840 A.2d 1158 (2004)* (internal quotation marks and citation omitted). "In contrast to the duty to defend, the duty to indemnify is narrower: while the duty to defend depends only on the allegations made against the insured, the duty to indemnify depends upon the facts established at trial and the theory under which judgment is actually entered in the case." *DaCruz v. State Farm Fire and Cas. Co., 268 Conn. 675, 688, 846 A.2d 849 (2004)* (internal quotation marks and citation omitted). Therefore "the duty to indemnify arises only if the evidence adduced at trial establishes that the conduct *actually* was covered by the policy." *Id.* (emphasis in the original).

The duty to indemnify in the instant case depends on the theory upon which judgment may be rendered against Ketchum in the underlying state court action and therefore a ruling on the duty to indemnify at this time would be premature as a judgment has not yet been rendered. See, e.g., *Allstate Ins. Co. v. Limone, No.HHB-CV-08-4016936, 2009 Conn. Super. LEXIS 3253, 2009 WL 5302922, at *14 (Conn. Super. Ct. Dec. 3, 2009)* [*22] (finding that ruling on insurance company's duty to indemnify was premature as judgment had not yet entered on certain claims which might trigger indemnification under the policy); *Nat'l Grange Mut. v. Mallozzi, No.CV054011341S, 2006 Conn. Super. LEXIS 3743, 2006 WL 3859735, at *3 (Conn. Super. Ct.*

2012 U.S. Dist. LEXIS 115618, *22

*Dec. 12, 2006)* ("In the present case, the court has determined that National has a duty to defend. As the insurer's duty to indemnify now depends upon the resolution of the underlying action, it would be inappropriate to grant Mallozzi's motion at this time. Therefore, the court denies Mallozzi's motion for summary judgment as to whether National has a duty to indemnify, without prejudice, pending the outcome of the underlying action.").

Indeed the "Connecticut Supreme Court has held that granting a declaratory judgment on the issue of indemnification is improper when the underlying action is still pending and the duty to defend the insured has arisen." *Nat'l Union Fire Ins. Co. v. Zurich American Ins. Co., No.CV040491301, 2005 Conn. Super. LEXIS 3351, 2005 WL 3594732, at *6 (Conn. Super. Ct. Dec. 1, 2005)* (citing *Hartford Accident & Indemnity Co. v. Williamson, 153 Conn. 345, 350, 216 A.2d 635 (1966)).* [*23] The Connecticut Supreme Court indicated that the issue of an insurer's duty to indemnify may be more appropriately addressed in an action brought under *Conn. Gen. Stat. §38a-321* rather than in an action for declaratory judgment prior to resolution of the underlying action. *Id.*

"Where the facts on which the Court's decision depends have yet to unfold, a declaratory judgment action is 'not currently a justiciable and ripe controversy and ... dismissal of the complaint without prejudice is the correct disposition of the action. This leaves open the possibility that at some future time a more complete development of the facts might lead to a different result.'" *Travelers Property Cas. Corp. v. Winterthur Intern, No.02Civ.2406(SAS), 2002 U.S. Dist. LEXIS 11342, 2002 WL 1391920, at *6 (S.D.N.Y. 2002)* (quoting *Certain Underwriters at Lloyd's, London v. St. Joe Minerals Corp., 90 F.3d 671, 676 (2d Cir. 1996)).* "The Supreme Court has defined a justiciable controversy as one that is 'definite and concrete, touching the legal relations of parties

having adverse legal interests.... It must be a real and substantial controversy admitting of specific relief through a decree of conclusive character....' There is no mechanical [*24] test for determining whether a suit present. Nevertheless, in cases such as this—where the key facts can and will be established in an underlying proceeding—the lack of ripeness is palpable." *Id.* (quoting *Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-41, 57 S. Ct. 461, 81 L. Ed. 617 (1937)).* In the present case, the key facts will be established in the underlying proceeding which will be dispositive as to Cambridge's duty to indemnify. Consequently, any decision as to Cambridge's duty to indemnify must await the resolution of the underlying state court action. See *Travelers, 2002 U.S. Dist. LEXIS 11342, 2002 WL 1391920, at *6* (dismissing plaintiff's claim for declaratory judgment regarding UBS's duty to indemnify as not ripe); *Addison Ins. Co. v. Rippy, No. 08-cv-00237-PAB-MJW, 2009 U.S. Dist. LEXIS 28735, 2009 WL 723322, at *6 (D. Colo. March 18, 2009)* ("...a federal district court should stay or dismiss an anticipatory declaratory judgment action which requires the court to make a factual finding that likely will be made, and will be material, in the underlying state court action."). Accordingly, this Court finds that Cambridge's request for declaratory judgment as its duty to indemnify Ketchum in the underlying state action is not ripe at this time and the Court [*25] therefore dismisses this portion of the declaratory judgment action without prejudice to filing a new action following disposition of the underlying state court action.

Conclusion

For the foregoing reasons, the Court GRANTS Defendants' [Dkt. ##27,29] Partial Motion for summary judgment as to Cambridge's request for declaratory judgment as to its duty to defend. The Court finds that Cambridge has a duty to defend Ketchum in the underlying state court action and that its duty has been triggered. The Clerk is

2012 U.S. Dist. LEXIS 115618, *25

therefore directed to enter judgment in favor of Defendants on Count 1 of the complaint. The Court further dismisses Cambridge's request in Count 2 of the complaint for declaratory judgment as to its duty to indemnify as premature without prejudice to filing a new action following disposition of the underlying state court action. The Clerk is directed to close the case.

IT IS SO ORDERED.

/s/ Hon. Vanessa L. Bryant

United States District Judge

Dated at Hartford, Connecticut: August 16, 2012

669 F.Supp. 307
United States District Court,
C.D. California.

ZURICH INSURANCE COMPANY, Plaintiff,
v.
Vincent ALVAREZ, Jr., a minor By and Through
his Guardian ad Litem, Eleanor CALVA; Eleanor
Calva, Jeffrey Parker, Joe T. Galindo, James R.
Church, individually and dba Taser Industries;
and Taser Systems, Inc.; Defendants.

No. CV 87–02264 JSL (Kx). | Sept. 8, 1987.

Insurer brought declaratory judgment action seeking
determination whether pursuant to products liability
policy it had duty to defend or indemnify insured which
was party to a pending state tort action alleging that father
of tort plaintiff in state action had died as a result of
negligent use of stun gun manufactured by insured. The
District Court, Letts, J., held that jurisdiction would be
declined as judicial adjudication of coverage would
require determination of facts which may be at issue in
pending state proceeding, would involve complex
questions of state law which are of first impression, and
require litigation of issues which may be rendered moot
by pending state court proceeding if no liability were
found.

Jurisdiction declined.

West Headnotes (2)

[1]    **Declaratory Judgment**
       ⟜Discretion of Court
       **Declaratory Judgment**
       ⟜Jurisdiction not enlarged

       Declaratory Judgments Act is a procedural
       device only and does not confer an independent
       basis for federal jurisdiction; exercise of
       jurisdiction for purpose of granting declaratory
       relief, therefore, is not mandatory. 28 U.S.C.A.
       §§ 2201, 2202.

       3 Cases that cite this headnote

[2]    **Federal Courts**
       ⟜Insurers and insurance

       District court declined to exercise jurisdiction
       over an insurer's declaratory judgment action
       seeking to determine whether insurer had duty to
       indemnify insured which had manufactured stun
       gun that had allegedly caused death of father of
       plaintiff in pending tort action in state court;
       adjudication of coverage issue in federal court
       would require determination of facts which may
       be at issue in pending state proceeding, involve
       complex questions of state law which are of first
       impression, and require litigation of issues of
       coverage which may be rendered moot by
       pending state court proceeding if no liability
       were found. 28 U.S.C.A. §§ 2201, 2202.

       10 Cases that cite this headnote

**Attorneys and Law Firms**

*307 Gwen Freeman, Knapp, Petersen & Clarke,
Universal City, Cal., for plaintiff.

James K. Hahn, City Atty., Los Angeles, Cal., for
defendants.

**ORDER DECLINING EXERCISE OF
JURISDICTION**

LETTS, District Judge.

**A. INTRODUCTION**
This case requires the Court to decide whether it should
exercise diversity jurisdiction over a declaratory relief
action. The plaintiff Zurich Insurance Company, an
Illinois corporation ("Zurich"), requests this Court to
determine whether, pursuant to an insurance policy
("Policy"), it has a duty to defend or indemnify the

Zurich Ins. Co. v. Alvarez By and Through Calva, 669 F.Supp. 307 (1987)

defendants Taser Industries, Inc., a Delaware corporation, and Taser Systems, Inc., a California corporation (collectively, "Taser,") against a tort claim for damages filed in California state court. Plaintiff Vincent Alvarez ("Alvarez"), filed the claim in state court against, among others, defendant City of Los Angeles ("City"). The City filed a cross-complaint for equitable indemnity and declaratory relief against Taser.

Jurisdiction is based on diversity of citizenship. 28 U.S.C. section 1332(a). Zurich's *308 action for declaratory relief in federal court is based on the Federal Declaratory Judgments Act, 28 U.S.C. sections 2201, 2202, and Rule 57 of the Federal Rules of Civil Procedure. For the reasons stated herein, on its own motion, this Court declines to exercise jurisdiction over this case.

## B. FACTS

Alvarez filed an action against the City in Los Angeles Superior Court[1] to recover damages, among other things, for police negligence in connection with the alleged use of a "Taser Stun Gun" which allegedly caused the death of Alvarez's father on August 10, 1983.

[1]      *Vincent Alvarez v. County of Los Angeles, City of Los Angeles,* Case No. C 506982.

Subsequently, the City filed a cross-complaint against, among others, Taser as the alleged manufacturer of the "Taser Stun Gun." In its cross-complaint for declaratory relief, the City contends that Taser is liable for any damages which may be owed to Alvarez.[2] Zurich has issued a Policy for products liability to Taser.[3]

[2]      For convenience of discussion, hereafter the Court will refer to the Alvarez action as if it had been brought directly against Taser, rather than by way of cross-claim by the City.

[3]      Zurich's pleadings do not disclose whether, in addition to Taser Industries, Inc., Taser Systems, Inc. also was insured under the Policy issued by Zurich. Neither is a copy of the Policy attached to Zurich's complaint for declaratory relief.

In the present action, Zurich contends that it is not obligated either to defend or indemnify Taser. Zurich alleges that the Policy expressly excludes all products manufactured prior to October 1, 1982, the effective date

of the Policy, and that the "Taser Stun Gun," the use of which allegedly resulted in the death of Alvarez' father, was manufactured prior to October 1, 1982. In answers filed by the defendants, they deny each of the above allegations of Zurich. Taser, however, does not appear to have filed an answer to Zurich's complaint.

## C. DISCUSSION

This action for declaratory relief is brought under the Federal Declaratory Judgments Act, 28 U.S.C. Sections 2201 and 2202. These sections provide the sole basis for declaratory relief in federal courts.

[1] As a general rule, federal courts are required to exercise all jurisdiction conferred upon them by the Constitution or the laws enacted by Congress, *see Cohens v. Virginia,* 19 U.S. (6 Wheat.) 264, 404, 5 L.Ed. 257 (1821). The Declaratory Judgments Act, however, is a procedural device only, and does not confer an independent basis for federal jurisdiction. *Alton Box Board Co. v. Esprit De Corp.,* 682 F.2d 1267, 1274 (9th Cir.1982). The exercise of jurisdiction for the purpose of granting declaratory relief, therefore, is not mandatory. As stated in *Brillhart v. Excess Ins. Co. of America,* 316 U.S. 491, 494, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942):

> Although the District Court ha[s] jurisdiction of the suit under the Federal Declaratory Judgments Act, it ... [is] under no compulsion to exercise that jurisdiction. The petitioner's motion to dismiss the bill was addressed to the discretion of the court. (Citations omitted.)

In *Brillhart,* 316 U.S. at 495, 62 S.Ct. at 1176, the Supreme Court enumerated several factors to guide district courts in the exercise of their discretion in this area:

> Where a District Court is presented with a claim such as was made here, it should ascertain whether the questions in controversy between the parties to the federal suit ... can better be settled in the proceeding pending in the state court. This may entail inquiry into the scope of the pending state court proceeding and the nature of defenses open there. The federal court may have to consider whether the claims of all parties in interest

Zurich Ins. Co. v. Alvarez By and Through Calva, 669 F.Supp. 307 (1987)

can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc.[4]

[4]   *See also* 6A J. Moore, J. Lucas & G. Grotheer, Jr., *Moore's Federal Practice,* para. 57.08[1] & n. 8 (2d ed. 1986).

**\*309** [2] The Court declines to exercise the jurisdiction conferred in this case to act upon Zurich's request for declaratory relief for the following reasons:

First, the exercise of jurisdiction would require the Court to determine facts which also may be at issue in an independent pending state proceeding.

Second, the Court considers it to be inappropriate to make a federal forum available for the sole purpose of deciding the rights and obligations of the federal parties which arise solely out of a state proceeding, which includes different parties, *while the state court proceeding is pending.*

Third, the dispute between the parties in the federal forum necessarily raises numerous and complex ancillary legal issues which are of first impression under California law and are better left for resolution by state courts.

**1. *Common Questions of Fact***
It is not clear from the pleadings here precisely what facts would be at issue between the parties if this case were permitted to go forward. As framed by the insurer, Zurich, the issues would appear to be whether the "Taser Stun Gun," which allegedly was used negligently to kill Alvarez' father, was manufactured prior to October 1, 1982, and if so, whether the Policy excludes coverage for any liability for damages suffered by Alvarez.

The pleadings, however, provide no help in determining how clear it may be that the device allegedly used to kill Alvarez' father in fact was a "Taser Stun Gun" and that it was manufactured by Taser. The answers filed by the defendants, which deny each of the allegations made by Zurich, shed no additional light on the fact issues to be decided by this Court or the state court. It appears entirely possible, therefore, that in deciding whether to grant the relief requested in this action, the Court would be required to decide predicate facts which may be fundamentally at issue in the state court action.

In *Allstate Insurance Company v. Harris,* 445 F.Supp. 847, 849–851 (N.D.Cal.1978), District Judge Renfrew discussed a more concrete, but similar, issue as follows:

> As to Sterling Joseph, the questions of coverage and of Allstate's duty to defend raise an issue of fact.... To resolve this controversy, the Court must thus decide a disputed question of fact that is at the heart of the underlying tort action: ....

> [R]esolution of the question of Allstate's duty to defend Sterling Joseph requires adjudication of the disputed factual issue of intent. To resolve such an issue in a separate federal court proceeding when a similar issue involving the same evidence and essentially the same parties is pending in state court, and when all parties other than the insurance company are citizens of California, causes this Court grave concern. It is ordinarily neither sound judicial administration nor in the interests of the injured state court plaintiff, to permit an out-of-state insurance carrier to drag the parties to a tort action into federal court to try a portion of the overall controversy among those parties. (Citations omitted.) These concerns have led to a general rule under the applicable federal law that a federal court should ordinarily decline to exercise diversity jurisdiction over a declaratory judgment action when the same issues of state law will necessarily be determined in a pending state suit. *E.g., Brillhart v. Excess Ins. Co.,* 316 U.S. 491, 495, 62 S.Ct. 1173, 1176, 86 L.Ed. 1620 (1942).

This Court believes that the reasoning in *Allstate* is applicable here and chooses to act accordingly.[5]

[5]   The Court recognizes, however, that in *Allstate,* Judge Renfrew did not decline to exercise jurisdiction over the declaratory relief action before him, but decided instead to stay the federal action as to one of the defendants (Sterling Joseph) pending determination of the suit against him in state court.

**2. *Inappropriate Use of Federal Forum***
Zurich's purpose in bringing this action in federal court is to obtain a determination **\*310** of rights and obligations which exist, if at all, solely by virtue of the action pending in state court between its insured and a tort claimant. Specifically, Zurich seeks a determination that Alvarez' claim in state court, if proven valid, would not be covered by the Policy.

Zurich Ins. Co. v. Alvarez By and Through Calva, 669 F.Supp. 307 (1987)

The issue of whether a particular claim, if valid, would be covered by an insurance policy can be separated and decided in federal court as a "case or controversy" independently from the claim itself. *Cf. Nashville, C. & St. L. Ry. Co. v. Wallace,* 288 U.S. 249, 53 S.Ct. 345, 77 L.Ed. 730 (1933).

The desirability of entertaining such an action in federal court prior to a determination of the validity of the claim in state court is questionable on a number of grounds. First and most obvious is that litigation is expensive. Since there is a possibility that the tort claim may be proven invalid in state court, there is no need to litigate in advance the issue of who should pay for the tort claim if it proves to be valid. In principle, at least, the expense of litigating the issue of coverage is best incurred only *after* a determination that the claim is valid. Until then, the money is much better saved and used, if possible, to settle the claim in state court.

One of the worst evils of making the federal forum available for declaratory relief is that it could result in a state tort claimant who is willing to settle his claim at a sacrifice price, being made to await a federal determination as to the responsibility for payment. Under California law, however, the duty of an insurer to address in good faith settlement offers made by an insured tort claimant runs not just to the insured but also to the claimant.[6] The insurer does not have the right to await a judicial determination as to coverage before honoring its obligation to deal fairly and in good faith.[7] Yet the provision of a federal forum which may produce a determination of non-coverage while the state court action remains pending seriously alters the effect of these obligations.

[6]      *See Royal Globe Insurance Co. v. Superior Court,* 23
        Cal.3d 880, 153 Cal.Rptr. 842, 592 P.2d 329 (1979).

[7]      *See Silberg v. California Life Insurance Co.,* 11 Cal.3d
        452, 521 P.2d 1103, 113 Cal.Rptr. 711 (1974).

As a practical matter, the bad faith of an insurer which rejects a settlement offer while awaiting a determination of non-coverage would be exceedingly difficult to demonstrate. By posing the threat that the coverage question will be resolved in the insurer's favor while the state court action is pending, the federal action tends to exert a profound influence on the state court proceeding itself by changing the balance in settlement bargaining.

The advantages gained by the insurer as a result of this

influence appear to be incalculable. Even to the most objective and experienced professional, an insurance coverage question may look very different when full presentation of the tort claimant's liability and damage case has resulted in a verdict which can be satisfied only if insurance proceeds are available, as contrasted to how the same question may look when posed in advance as a pure question of law to be decided only against those liability facts necessary to define the coverage issue.

This effect may be particularly dramatic in tort cases which present low liability but high damage exposure. Such cases are typical of those in which declaratory relief is sought.

Such cases must be defended vigorously if maximum assurance is to be maintained that if tried they will be won. In consequence, prospective defense costs tend to be a major part of the incentive for the insurer to settle the action. So long as it remains in the case, the cost of defense remains the insurer's burden. It remains subject to the risk that if the case goes to trial, insurance proceeds will be the primary source for satisfaction of any high-end judgment.

By bringing the coverage question to the point of possible decision while the state tort action remains pending, the insurer effects a significant change. The prospect that the only source of payment for a significant **311** verdict will not be available after trial tends to coerce the tort claimant to come to the settlement bargaining table before the federal action is adjudicated. There the tort claimant often will be met not only by the insurer, but also the insured. Faced with the immediate prospect of having to provide its own defense,[8] and often with financial catastrophe if it is ultimately forced to respond to a major verdict without contribution from its insurer, the insured suddenly may be willing to make a major contribution to a settlement. Therefore, the result of the pressures created by the federal action often may be to create a substantial possibility that the insurer will be able to force a settlement of the state court action in which it is required to contribute only a fraction of the value of its potential economic exposures.

[8]      The point, if any, in the federal process, at which a
        successful insurer would be entitled under California
        law to discontinue provision of defense is unclear. *See
        infra.*

Whether or not it is true that the filing of a federal action significantly affects the values exchanged in the state action, it seems clear that the principal effect is to force

settlement there. In practice, making a federal forum available for the determination of declaratory relief actions brought by insurers often does not appear to result in a decision or a settlement based on the merits of the federal action.

In hindsight, therefore, it appears that the federal forum usually has been used not to perform the Constitutional function of deciding cases and controversies, but simply as a ploy to force settlement negotiations to a successful conclusion in the state action.

This Court believes that it is inappropriate to use its limited facilities for such a purpose when the necessary effect is to shorten the time available for and ultimately to delay disposition of cases which are exclusively within its province, and which will be resolved solely by reference to matters at issue here.[9]

[9]     *Cf. Transamerica Occidental Life Ins. Co. v. Digregorio,* 811 F.2d 1249, 1255 (9th Cir.1987), where the court stated the proposition that: "If a district court generally were compelled to hear an ERISA insurer's declaratory suit, the insurer would be able to circumvent the beneficiary's choice of a state forum in every ordinary case on the insurance contract. We do not believe that Congress intended that result."

**3. *Ancillary Issues***
The third reason why this Court declines to exercise diversity jurisdiction over the instant action is that it raises numerous difficult and complex ancillary issues of first impression under state law which are better left for decision by state tribunals. For purposes of earlier discussion, the Court has assumed that success at trial in a federal action would relieve the insurer of its continuing duty to defend its insured in the state court. Even this is far from clear.[10] What the situation might be in this regard pending federal appeal clearly remains to be decided.

[10]     There appears to be no authority directly in point, *but cf. Firco, Inc. v. Fireman's Fund Insurance Co.,* 173 Cal.App.2d 524, 529, 343 P.2d 311 (1959). To require the insured to defend itself puts economic pressure on the insured to participate in settlement of the state action in a way which may not be consistent with the overall policy of California law. *Cf. Gibbs v. State Farm Mutual Insurance Company,* 544 F.2d 423, 426 (9th Cir.1976) (quoting *Crisci v. Security Insurance*

*Co.,* 66 Cal.2d 425, 58 Cal.Rptr. 13, 16–17, 426 P.2d 173, 176–77 (1967).)

Other questions as to which the answers are uncertain are: what impact, if any, the filing or initial decision in the federal action may have on the insurer's responsibilities concerning the settlement offers in the state action;[11] who pays for the insured's cost of the defense of the federal action and its appeal.[12] Other questions no doubt remain to be raised.

[11]     Although there appears to be no authority directly in point, in *Gibbs v. State Farm Mutual Insurance Company,* 544 F.2d 423, 427 (9th Cir.1976), the court held that "[f]ailure to settle because of the belief in non-coverage, even though in good faith, is an effort to further the insurer's own interest, and the insurer must therefore be willing to absorb losses resulting from its failure to settle." (Citations omitted.)

[12]     *See* 14 G. Couch, *Couch on Insurance,* Section 51:92 (2d ed. 1982) (where the insurer defends the underlying action under a reservation of rights, as a general rule, in the declaratory judgment action, the insurer has no duty to supply or pay for the defense of its insured.)

**\*312** It seems obvious that the answers to these questions, which must be presumed by the parties, have much to do with their bargaining positions during the pendency of the federal court action. The fact that such issues are mooted by simultaneous settlement of both the federal and state actions tends to prevent them from ever being decided. As a consequence, the present state of undesirable uncertainty remains unchanged by decision.

For the reasons stated herein, this Court declines to exercise jurisdiction in this case.

IT IS SO ORDERED.

**All Citations**

669 F.Supp. 307

---

End of **Document**                                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.