# BRANSTETTER, STRANCH & JENNINGS, PLLC

CECIL D. BRANSTETTER, SR., 1920-2014
KARLA M. CAMPBELL
BEN GASTEL*
R. JAN JENNINGS*
JOE P. LENISKI, JR.
DONALD L. SCHOLES
MIKE STEWART
JAMES G. STRANCH, III
J. GERARD STRANCH, IV
MICHAEL J. WALL

THE FREEDOM CENTER
223 ROSA L. PARKS AVENUE
SUITE 200
NASHVILLE, TENNESSEE 37203
TELEPHONE (615) 254-8801
FACSIMILE (615) 255-5419

ASSOCIATES:
RAQUEL L. BELLAMY
SEAMUS T. KELLY
K. GRACE STRANCH

OF COUNSEL:
ROBERT E. RICHARDSON, JR. **

August 7, 2015

\* ALSO ADMITTED IN GA
\*\* ONLY ADMITTED IN OH

**VIA ELECTRONIC MAIL: adam.schramek@nortonrosefulbright.com**

Adam Schramek
Norton Rose Fulbright
98 San Jacinto Blvd
Suite 1100
Austin, TX 78701

Re:   **New England Compounding Center Litigation, MDL No. 2419**

Dear Adam:

Please consider this a Local Rule 37.1 request for a meet and confer on certain discovery responses provided by Saint Thomas Health and Saint Thomas Hospital.

First, based on documents produced by other parties in this litigation, it appears that our original custodian list did not encompass sufficient individuals to ensure production of all email correspondence with NECC and the Affiliated Defendants. As an example of a responsive document that is not within your production, I have attached as Exhibit A an example of correspondence with Saint Thomas Hospital employees produced by MSM in this litigation, but not produced by you. I believe this is the result of the relevant custodian from St. Thomas Hospital not being on the custodian list. As a result, we would request the custodian list be expanded to include all members of the pharmacy department for a limited search of the terms "NECC", "New England", "Ameridose", "MSM", and "medicalsalesmanagement." The time period can be limited to the time frame from 2009-2012.

Next, it appears that your original production failed to produce all managed care contracts negotiated by Saint Thomas Health on behalf of Saint Thomas Outpatient Neurosurgical Center (the "Center"). It appears that we only have Blue Cross Blue Shield managed care contracts and not any from any other third party payor. Cindy Williams, in her recent deposition, claimed that she could locate these documents with little effort, and as a result we would ask that you produce them. They are clearly relevant to Requests for Production Number 32, 40, and 41. Additionally, we ask that you produce the "core agreements" of which the Center's particular riders are amendments or addendums to. By way of reference, I will direct you to previously



*Letter to Adam Schramek*
*August 7, 2015*
*Page 2*

produced documents STE MDL 4023. We would also insist on production of all relevant rate sheets as referenced in Ms. Williams' deposition. Please let me know when you think you can complete production of these documents.

Also, it appears that there should a spreadsheet attached to STE MDL 356714. I have reviewed the production and have not been able to locate this spreadsheet. If you previously produced, please identify the Bates number, if it is not produced, please do so as soon as you can.

Finally, I wanted to address several issues in your most recent round of discovery.

**Request for Production 51**: Ms. Climer pretty clearly testified to the existence of these documents in her deposition. The request is rather clear that we are seeking production of the documents referenced in Ms. Climer's testimony on Page 23, Line 11. Your response seems to suggest these documents do not exist and/or that you are refusing to produce them. If they no longer exist, we would expect an explanation as to why, as requested in the Interrogatory that accompanied the document requests. If they do exist and you are simply refusing to produce them, please state so and the basis for why you are refusing to produce them. If your refusal is because the documents are not technically labeled as "brand attribute surveys," this seems to be a technical obfuscation of the request. The request as stated simply requests the documents referenced by Ms. Climer in her deposition at the specific page and line identified in the Request.

**Requests for Production 52-54 and 57-58**: You have refused to produce Saint Thomas Health's marketing materials that relate to Saint Thomas Health's understanding of the "Saint Thomas" brand. Your principal objection appears to be a baseless claim that these materials are "irrelevant" to the claims asserted in this litigation. As you know plaintiffs have brought a variety of claims against Saint Thomas including, but not limited to, apparent agency claims given the close relationship between Saint Thomas Health and the Center. Ms. Climer provided extensive testimony on this issue and specifically stated that many of the documents sought by these requests relate to Saint Thomas Health's branding of the Saint Thomas name. This goes directly to public perception as to the relationship between the Saint Thomas Center and Saint Thomas Health. Your refusal to produce these documents on relevancy is simply baseless and we ask that they be produced. *See e.g. Southern R. Co. v. Pickle,* 138 Tenn. 238, 246 (Tenn. 1917) (" It is essential to the application of [apparent agency] that two important facts be clearly established: (1) That the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority; and (2) that the person dealing with the agent knew of the facts, and, acting in good faith, had reason to believe, and did believe, that the agent possessed the necessary authority.")
If you are concerned about time period, we would agree to limit this request to the period of 2009-2013.

**Request for Production 55**: Please clarify what documents you claim are previously produced and responsive to this request, as we have not been able to locate these agreements in your production.

*Letter to Adam Schramek*
*August 7, 2015*
*Page 3*

**Request 60**: Your refusal to provide basic documentation on the hospital's use of compounded pharmaceuticals based on grounds of relevancy is simply misplaced. Even putting aside the issue of whether Saint Thomas Hospital played a role in managing the center (of which we know we disagree), these documents are still relevant as to establishing the standard of care for when and how medical clinics use compounded pharmaceuticals and whether they implement additional safety protocols for the use of these unique drugs. *See* TCA § 29-26-115. On this basis alone, these documents are relevant and should be produced and your refusal to do so is simply without merit.

**Request 61**: Martin Kelvas' employment agreement is reasonably calculated to lead to the discovery of admissible evidence. Mr. Kelvas was terminated shortly following the meningitis outbreak after vocally conveying, even to vendors, that Saint Thomas Hospital had a "policy" not to use compounding pharmacies. The circumstances of his termination given its timing and Mr. Kelvas' roll in developing this policy make this document easily within the coverage of Rule 26. Please produce it immediately.

**Requests 63 and 64**: Your responses to these requests appear contradictory. In Request 63 you appear to claim that no documents exist as to purchases of MPA, but in Request 64 you simply object to producing these documents. Please explain whether you are withholding documents based on your objections and/or whether Saint Thomas Hospital purchased MPA and/or depo medrol.

Warmest regards,

**BENJAMIN A. GASTEL**