UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION <br><br> THIS DOCUMENT RELATES TO: <br><br> All Cases | MDL No. 2419 <br> Dkt. No 1:13-md-2419 (RWZ) |

**SAINT THOMAS ENTITIES' RESPONSE TO UNITED STATES' MOTION FOR LEAVE TO INTERVENE AND FOR A STAY OF CERTAIN DEPOSITIONS PENDING RESOLUTION OF RELATED CRIMINAL PROCEEDINGS**

The Saint Thomas Entities[1] hereby file this Response to the Motion of the United States For Leave to Intervene and For a Stay of Certain Depositions Pending Resolution of Related Criminal Proceedings.

**SUMMARY OF RESPONSE AND POSITION ON GOVERNMENT'S REQUEST**

The Saint Thomas Entities do not oppose the Government's request to intervene in this proceeding. Similarly, they do not oppose the stay the Government requests so long as the criminal cases go to trial first and the Saint Thomas Entities are provided the opportunity thereafter to develop the facts and expert opinions they need to defend themselves at civil trials. The discovery the Government seeks to stay is of key factual information bearing on Plaintiffs' claim that STOPNC[2] should not have purchased from NECC and what proximately caused the drug contamination at issue (and thus who is responsible for resulting injuries).

---

[1] Saint Thomas West Hospital f/k/a St. Thomas Hospital; Saint Thomas Health; and Saint Thomas Network.

[2] Saint Thomas Outpatient Neurosurgical Center.

If, however, the civil and criminal cases are going to proceed concurrently with civil trials commencing before or at the same time as the criminal trials, the Government's request for a stay must be denied.

## PROCEDURAL BACKGROUND

As the Court is well aware, this MDL is highly unusual in that the persons and companies responsible for the contamination have settled Plaintiffs' claims against them, leaving as defendants only the health care providers who administered the methylprednisolone acetate ("MPA") and those alleged to be vicariously liable for such providers' administration of MPA, such as the Saint Thomas Entities. Accordingly, the Plaintiffs have not only lost all interest in pursuing discovery from New England Compounding Center ("NECC"), its owners, employees and affiliates, but now stand to directly benefit from the health care providers' inability to obtain such necessary discovery, since the health care providers cannot put on a full defense at trial without it. At the same time, the United States ("Government") has been conducting a federal criminal case against certain owners, directors, and employees of NECC.[3]

With Plaintiffs abandoning the effort, now only the health care providers are conducting discovery in this MDL to determine the persons and entities who caused the contamination of MPA compounded by NECC as well as how the contamination occurred. Discovery to date has revealed that key information on the proximate cause of the contamination is held solely by the owners, directors, officers and employees of NECC. Accordingly, these witnesses were noticed for deposition. While some have indicated an intention to plead the Fifth Amendment, others have not, and stand ready to testify on such matters such as the location of the clean room in which the contaminated MPA was compounded, the precise hood used for such compounding,

---

[3] *See United States v. Barry J. Cadden, et al.*, 14-cr-10363-RGS. Criminal defendants include Barry Cadden, Gregory Conigliaro, Douglas Conigliaro, Carla Conigliaro, and Glenn Chin. Douglas Conigliaro, Barry Cadden, and Gregory Conigliaro are also officers and directors of Medical Sales Management.

the procedures used to compound it, and the level of cleanliness maintained in the NECC clean rooms during the time in which they were in operation.

Several former NECC employees, as well as former employees of Medical Sales Management, Inc. ("MSM")—the company that marketed NECC's products and misrepresented to customers that the NECC facility and its products were compliant with all required industry standards—have been noticed for deposition.[4]  In response, the Government moved to stay the depositions, arguing that the depositions will somehow interfere with the criminal prosecution.[5] The parties agreed to postpone such depositions until after this Court's hearing on the Government's motion, which is set for October 14, 2015.[6]

## ARGUMENTS AND AUTHORITIES

A.  **The Discovery at Issue is Highly Relevant and Concerns What Proximately Caused the Contamination at NECC and STOPNC's Defense That It Was Not Negligent for Purchasing From NECC**

The Saint Thomas Entities are being sued in an attempt to hold them responsible for contaminated drugs received by patients during the course of medical services at STOPNC. The Saint Thomas Entities have three primary defenses[7] in this MDL:

---

[4] The Motion to Stay affects the depositions of the following former NECC and MSM employees:
- Mario Giamei (MSM employee, marketed NECC product to STOPNC);
- John Notarianni (MSM employee, marketed NECC product to STOPNC);
- Steven Haynes (NECC employee);
- Owen Finnegan (NECC employee);
- Joseph Connolly (NECC employee);
- Annette Robinson (NECC employee);
- Cory Fletcher (NECC employee); and
- Belmira Carvalho (NECC employee).

[5] *See* Motion to Stay, Dkt. No. 2209.

[6] *See* Dkt. No. 2237.

[7]  The term "defense" is not intended to mean affirmative defenses in this context.  Instead, it means the issues that the defendants will have to develop in order to defend themselves at trial.  As such, it includes both matters on which Plaintiffs bear the burden of proof as well as matters relating to affirmative defenses.

1)  STOPNC did not commit medical malpractice by purchasing medication from NECC;

2)  those who caused or contributed to the contamination are solely responsible for Plaintiffs' injuries[8]; and

3)  STOPNC was not the actual or apparent agent of any of the Saint Thomas Entities.

To date, the vast majority of common issue fact discovery has concerned defense three. While some common issue fact discovery regarding defenses one and two has occurred, it has been limited and delayed for several reasons beyond the Saint Thomas Entities' control. First, discovery was completely halted by NECC's bankruptcy and the resulting automatic stay. Next, the Court instituted a mediation program that shielded participants from any litigation discovery. After settlements were reached, the mediation participants opposed discovery, claiming their settlements somehow exempted them from discovery. Next, various individuals affiliated with NECC sought protection from discovery based on the proposition they "would" assert the Fifth if deposed. This Court granted such relief. Unable to obtain the discovery needed from the NECC owners and managers, the depositions of employees such as NECC pharmacy techs were noticed. Now, the Government has intervened in attempt to halt all further NECC-related discovery.

The information the Saint Thomas Entities have been attempting to obtain, and which the Government now seeks to stay, is key information in support of defenses one and two. In particular, health care providers need to know the clean room in which the MPA was compounded, the equipment used, the procedures used, and the condition of the cleanroom during the time of manufacture in connection with their defense. For example, the details of where and how the compounding occurred will provide the basis for expert witnesses to opine on

---

[8] Defense two relates to proximate cause and comparative fault under Tennessee law.

how it was contaminated and thus who is responsible for the contamination (defense two). That information is also key to rebutting the Plaintiffs' argument that had STOPNC taken the actions Plaintiffs claim it should have, STOPNC would not have purchased from NECC (defense one). Similarly, the condition of the cleanrooms during the time of contamination (information clearly within the possession of NECC's former employees) is highly relevant to what STOPNC would have seen had it inspected the cleanroom as Plaintiffs' contend it should have (defense one).[9] Indeed, this Court itself noted the importance of proximate cause in adjudicating the summary judgment filed by former defendant Liberty Industries (defense two).[10]

Also needed is discovery from MSM, the company that sold NECC medication to STOPNC. The surgery center purchased the medication after visiting NECC's marketing booth at a trade show and being contacted by MSM sales agents. The depositions of former MSM employees are necessary to shed light on, inter alia, the substance of MSM's misrepresentations regarding NECC's methods and products, MSM's marketing strategy relating to same, and its sales training materials (defense one). None of the MSM sales representatives have been indicted.

Quite simply, the discovery the Government seeks to stay is key information at the heart of the health care defendants' defenses in the many cases at issue in this MDL.

---

[9] *See, e.g.*, Second Amended Master Complaint at ¶ 192(c) ("[T]he Clinic Related Defendants failed to perform the following due diligence prior to purchasing sterile compounds from NECC, as recommended by the ASHP *Guidelines on Outsourcing Sterile Compounding Services*, including, but not limited to[] . . . at least once annually, unannounced, visit NECC's corporate offices and compounding facilities and confer with NECC's corporate, pharmacy and compounding staff . . . .").

[10] *See* Memorandum of Decision (Dkt. #1613), p. 6 (reviewing the evidence submitted by the PSC and Liberty and noting the "serious questions as to the ability of plaintiffs to prove causation at trial").

**B.    A Stay is Appropriate So Long as the Criminal Trials Proceed First and the Stayed Discovery Takes Place Immediately Thereafter**

The Saint Thomas Entities are not opposed to the Government's requested stay so long as they are not prejudiced by it. And they will suffer no prejudice so long as they are able to develop the evidence they need, and designate experts based on such evidence, after the criminal trial occurs. To the extent the Court decides to grant the Government's motion, the Saint Thomas Entities' pending Motion for Continuance extends the common issue discovery deadlines accordingly.[11]

As explained above, testimony from deponents subject to the Motion to Stay is critical to the Saint Thomas Entities' defenses and trial preparation. These witness's testimony will impact expert reports since the Saint Thomas Entities will designate experts on the issue of how the MPA was contaminated and accordingly who proximately caused Plaintiffs' injuries. If the Court does not extend the current deadlines, the experts will be required to file placeholder reports while they await the depositions of the witnesses from the criminal trial.

As the Government has noted on several occasions, the civil case will substantially benefit from the criminal trial proceeding first. The Government anticipates methodically establishing how the owners and managers of NECC are criminally responsible for the contamination and thus Plaintiffs' injuries. This important proximate cause evidence will also be offered by the Saint Thomas Entities to show that these criminal acts break the causal chain and/or are the sole proximate cause of Plaintiff's injuries. The evidence and sworn testimony from the criminal trial, once publicly revealed, will also streamline the remaining discovery in

---

[11] *See* Motion for Continuance, Dkt. Nos. 2245, 2246. The common issue fact discovery deadline was September 15, 2015, with the first round of common issue expert reports commencing October 16, 2015. By agreement, certain parties jointly moved to extend those deadlines for thirty days while the Court considered the Government's motion. The Saint Thomas Entities' motion for continuance seeks to further extend the deadlines for matters covered by the Government's requested stay.

this MDL proceeding. Indeed, some of the discovery at issue may no longer be needed once the criminal trial occurs since expert witnesses in the civil cases can review and rely on the evidence and sworn testimony from the criminal action.

Ultimately, the Saint Thomas Entities must be given the opportunity to obtain the key evidence they need from NECC and MSM witnesses. This entire docket concerns what happened at NECC, and there is no substitute for testimony from the people at NECC who have firsthand knowledge of what occurred. The Saint Thomas Entities are willing to obtain that testimony now per the deposition notices and subpoenas that were issued or later after the criminal trial[12] as the Government requests.

**C.    If the Court Does Not Extend the Common Issue Discovery and Any Trial Dates Until After the Criminal Trial, the Government's Motion Must Be Denied.**

A court should only stay civil proceedings in deference to parallel criminal proceedings in rare circumstances.[13] Such relief is an extraordinary remedy, not to be granted lightly.[14] While federal courts may opt to stay civil proceedings in deference to parallel criminal proceedings, a court is neither required nor compelled to do so.[15] A movant seeking to stay civil litigation in such instances "must carry a heavy burden to succeed in such an endeavor,"[16] and

---

[12] It is unclear how many criminal trials will occur. For example, Glenn Chin's wife, Kathy Chin, has moved for a separate trial. *Cadden*, NO. 1:14-cr-10363-RGS (Dkt. No. 335). However, there is no need to delay the MDL discovery beyond the first trial, by which time the Government will have fully developed and publicly revealed its case as to the discovery at issue herein.

[13] *See Rivera v. P.R. Tel. Co.*, 2009 U.S. Dist. LEXIS 92101 at *3 (D.P.R. Sept. 28, 2009) (citing *Landis v. North American Co.*, 299 U.S. 248 (1936)).

[14] *See Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 79 (1st Cir. 2004); *United States v. Simcho*, 326 Fed. Appx. 791, 792-793 (5th Cir. 2009).

[15] *See Sec'y Exch. Comm'n v. TelexFree, Inc.*, 52 F. Supp. 3d 349, 352 (D. Mass. 2014).

[16] *Microfinancial*, 385 F.3d at 77.

must show "a clear case of hardship" to be entitled to a such a stay.[17]  Here, the Government falls short of meeting such a heavy burden.

The First Circuit Court of Appeals has identified the following factors to consider when deciding whether to stay a case:

> 1) the interests of the civil plaintiff in proceeding expeditiously with the civil litigation, 2) the hardship to the defendant, including the burden placed upon him should the cases go forward in tandem, 3) the convenience of both the civil and criminal courts, 4) the interests of third parties, 5) the public interest, 6) the good faith of the litigants (or the absence of it) and 7) the status of the cases.[18]

An additional factor is the extent to which the issues in the criminal and civil cases overlap.[19]

As a preliminary matter, none of the cases cited by the Government concern a "partial" stay.  It is not surprising that no such case could be located given the inherent inequity of staying discovery on defensive matters but allowing it to proceed on matters supporting a claim.  The cases cited by the Government all concern situations where a stay was sought precluding both plaintiff and defendant from discovery until after the criminal trial occurred.

Moreover, in all of the cases cited by the Government, a stay was sought early on, before any meaningful discovery had begun.[20]  By contrast here, the Government is moving after a substantial amount of discovery has occurred.  Courts are reluctant to grant a stay in such

---

[17] *Id.* (citing *Austin v. Unarco Indus., Inc.*, 705 F.2d 1, 5 (1st Cir. 1983)).

[18] *Zavatsky v. O'Brien*, 902 F. Supp. 2d 135, 147 (D. Mass. 2012) (citing *Microfinancial*, 385 F.3d at 78).

[19] *See  TelexFree*, 52 F. Supp. 3d at 352.

[20] *See In re TelexFree Sec. Litig., MDL No.* 4:14-md-2566-TSH (D. Mass.), *Motion of the United States (Department of Justice) for Leave to Intervene and For a Stay of Discovery Pending Parallel Criminal Proceedings, and Memorandum in Support*, Dkt. No. 62 ("[W]henever discovery begins in this action, it will tread the identical terrain covered in the government's criminal investigation and trial.") and MDL Case Management Order No. 5, Dkt. No. 111 (granting stay); *see also SEC v. TelexFree, Inc.,* 52 F. Supp. 3d at 352-53; *Zavatsky*, 902 F. Supp. 2d at 148 (D. Mass. 2012) (stating "this case is not on the brink of trial and discovery has not yet begun."). In fact, in *Zavatsky*, the Government moved to intervene and stay proceedings merely because it *anticipated* bringing related criminal charges.

circumstances.[21] The First Circuit has confirmed that stays are properly denied where a civil matter has been pending for a significant amount of time before the stay is sought.[22]

The first factor—the interests of the civil plaintiffs— weighs in favor of denial of the Motion to Stay. Plaintiffs have an obvious interest in proceeding expeditiously with the litigation. This is an important fact in determining whether to grant a stay.[23] For example, in *Austin v. Unarco Industries, Inc.*, the First Circuit upheld the denial of a stay where the plaintiff would have suffered the "financial hardship of being forced to wait for an undefined but potentially lengthy period before receiving the money to which she may be entitled."[24] Of course, the impact of this factor has been reduced by the bankruptcy settlement from which Plaintiffs will shortly share.

The second factor—the hardship to defendants—also weighs in favor of denial of the Motion to Stay. It should be noted that most of the cases cited by the Government concern the situation where a criminal defendant is a party to the civil litigation. So this factor typically concerns the interest of a defendant having to participate in civil discovery at the same time he is preparing for a criminal trial. But here, the criminal defendants are either no longer parties or were never parties in the first place. So the hardship on the criminal defendants is essentially none. So under the traditional analysis, there is no hardship to defendants supporting a stay here. And with respect to the Saint Thomas Entities' hardship, it only exists if the Court does not

---

[21] *See, e.g., Amersham Int'l v. Corning Glass Works*, 108 F.R.D. 71, 72 (D. Mass. 1985) (stating "There is no compelling reason to stay this proceeding" because "[d]iscovery has already commenced, entailing the exchange of thousands of pages of documents and extensive interrogatories," and depositions of key witnesses had been scheduled).

[22] *See Microfinancial*, 385 F.3d at 79 (upholding denial of stay in case pending three years).

[23] *See, e.g.*, *Microfinancial*, 385 F.3d at 78 ("The passage of over three years, particularly in view of the large amount in controversy, suggests a need for some celerity."); *Austin v. Unarco Industries, Inc.*, 705 F.2d 1, 5 (1st Cir. 1983) (upholding denial of stay when plaintiff would have suffered the financial risk of waiting an uncertain and potentially lengthy period of time before being able to collect any ensuing judgment); *see also Amersham*, 108 F.R.D. at 72.

[24] *Austin*, 705 F.2d at 5.

extend the common issue fact and expert deadlines to accommodate the Government's requested stay. If the Court does not extend those deadlines until after the criminal trial, there would be substantial hardship and Due Process concerns from granting a stay.

Under the "hardship to defendants" analysis as applied to the criminal defendants, the Government argues that the depositions might generate pretrial publicity that could "affect the rights of the fourteen criminal defendants to a fair trial."[25] First, the Government cannot explain how depositions in this MDL proceeding, taken under the cover of a protective order, could possibly generate publicity. Second, the meningitis outbreak already appeared on the cover of Newsweek;[26] NECC has been the subject of a *60 Minutes* investigation and exposé;[27] and NECC has been the subject of hundreds, if not thousands, of news articles since the contamination occurred. It is ironic that the Government would even attempt to make this argument when it held a press conference to announce the indictments and discuss the case and evidence.[28]

The third factor— balancing fairness to the parties with the need to manage crowded dockets—does not appear to be an issue here as there has been no suggestion that the Court's docket is overcrowded.[29]

The fourth factor is the interests of third parties. The Government makes no meaningful argument that a stay would in any way benefit third parties. Memories fade with time, meaning it is in everyone's best interest to get testimony preserved sooner rather than later. Moreover, it

---

[25] Motion to Stay at p. 2.

[26] *See The Killer Pharmacy: Inside a Medical Mass Murder Case*, NEWSWEEK, Apr. 24, 2015, cover, available at http://www.newsweek.com/2014/04/24/issue.html (last visited Sept. 23, 2015).

[27] *See* http://www.cbsnews.com/news/necc-insider-describes-fraud-at-heart-of-meningitis-outbreak/ (last visited Sept. 23, 2015).

[28] *See* http://boston.cbslocal.com/2014/12/17/necc-owner-employees-arrested-in-deadly-meningitis-outbreak/ (last visited September 28, 2015) (reporting on the U.S. Attorney's press conference regarding the NECC indictments).

[29] *Microfinancial*, 385 F.3d at 79.

is in the interest of former NECC employees to get their depositions done and over with as soon as possible.

The fifth factor—the public interest—also weighs against a stay. The Government argues that the depositions should be stayed because "the public interest weighs in favor of *unimpeded* resolution of the criminal case."[30] The suggestion is that discovery in this MDL will somehow "impede" the criminal trial. However, particularly with the protective order in place, that is simply not the case here.

The Government's primary argument on the fifth factor is that the depositions will interfere with its tactical advantages in the criminal proceeding. The Government contends that "allowing these depositions to proceed would prematurely and broadly disclose statements of government witnesses and essential elements of the government's case-in-chief, allowing the criminal defendants to tailor defenses to fit the anticipated proof."[31] This Court recently found a nearly identical argument unpersuasive in *Sec. Exch. Comm'n v. Bray*.[32] There, the Court explained that "[i]n essence, the government believes that it will have to give up a tactical advantage if the defendants are allowed civil discovery during the pendency of the criminal cases."[33] The Court found such an argument unpersuasive because the grand jury investigation was over, one of the defendants pled guilty and the other was scheduled for trial, and "the government [was] already obligated to produce Brady and other materials covered by the automatic discovery rules and [would] shortly have to produce more generalized discovery as well."[34] The Court went on, "[a]t this point in the proceedings, *the government should be*

---

[30] Motion to Stay at p. 12 (emphasis added).

[31] Motion to Stay at pp. 14-15.

[32] 2015 U.S. Dist. LEXIS 42686 at *4 (D. Mass. Apr. 1, 2015).

[33] *Id.* at *4.

[34] *Id.*.

*preparing to share its theory of the case and the evidence in support of it, rather than looking for ways to delay the disclosure of relevant information*," and concluded that "exposing the government's case or testing witness recollections will not fundamentally compromise an ongoing investigation or prosecution."[35]

In other words, the real public interest supports disclosure and fairness in civil and criminal cases. That interest weighs in favor of both proceedings continuing to move forward together in a joint search for the truth. As in the *Bray* case, the NECC grand jury investigation is over, the NECC criminal defendants are scheduled for trial beginning in April 2015,[36] and the Government has already produced over 8.8 million documents and other materials covered by the automatic discovery rules.

As to the sixth factor, there is no suggestion that any party is proceeding in anything but good faith. As to the Saint Thomas Entities, they oppose the stay only conditionally. If the relevant discovery and expert deadlines are moved, they have no objection to the Government proceeding as requested.

As to the seventh factor—the status of the cases—courts have denied stays of civil litigation when the litigation had been underway for an extended period of time.[37] For example, in *Microfinanical*, the First Circuit upheld denial of a stay in part because the litigation had been pending for over three years and "the court had an interest in moving it along."[38] Here, the civil litigation has been ongoing since 2012. Although no trial date is set for the civil MDL, common

---

[35] *Id.* at *4-*6 (emphasis added).

[36] *Cadden*, No. 1:14-cr-10363-RGS, Dkt. No. 272.

[37] *See Microfinancial*, 385 F.3d at 79 (Upholding denial of stay because, *inter alia*, case was on the brink of trial, had been pending for over three years, and defendants were requesting stay for indefinite period of time).

[38] *Id.*

issue fact discovery is nearly complete.  Because this civil litigation has been ongoing for several years, the Court should weigh this factor in favor of denial of the stay.

Finally, with respect to the overlap of issues between the civil and criminal cases, courts often only focus on the extent of such overlap because "self-incrimination is more likely if there is significant overlap."[39]  Here, many criminal defendants have mitigated this concern by refusing to be deposed or responding to discovery requests.

In short, each of the relevant factors weighs in favor of denial of the Motion to Stay.  The Government did not meet its heavy burden of showing a clear case of hardship.  As such, this Court should deny the Motion to Stay unless it likewise moves the relevant discovery and expert deadlines.

## CONCLUSION

The Saint Thomas Entities do not object to the Court granting the stay requested by the Government so long as the Saint Thomas Entities' pending motion for continuance is likewise granted, which will permit the discovery at issue to occur after the criminal trials.  Otherwise, the discovery at issue should be taken now and the Government's motion denied.

---

[39] *See, e.g. In re Worldcom, Inc. Sec. & Erisa Litig.*, 2002 U.S. Dist. LEXIS 23172 at *13 ("The first question to be resolved is the extent to which the issues in the criminal case overlap with those present in the civil case, since self-incrimination is more likely if there is a significant overlap.") (citing *Trustees of Plumbers and Pipefitters Nat. Pension. Fund v. Transworld Mech., Inc.,* 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995); *Volmar Distribs., Inc. v. New York Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993)).

Dated: Sept. 28, 2015

SAINT THOMAS WEST HOSPITAL F/K/A ST. THOMAS HOSPITAL, SAINT THOMAS HEALTH, AND SAINT THOMAS NETWORK

By their attorneys,

 */s/ Sarah P. Kelly*
Sarah P. Kelly (BBO #664267)
skelly@nutter.com

NUTTER McCLENNEN & FISH LLP
Seaport West
155 Seaport Boulevard
Boston, Massachusetts 02210
(617) 439-2000
(617) 310-9461 (FAX)

OF COUNSEL:

Yvonne K. Puig*
Texas State Bar No. 16385400
yvonne.puig@nortonrosefulbright.com
Adam T. Schramek*
Texas State Bar No. 24033045
adam.schramek@nortonrosefulbright.com
Eric J. Hoffman*
Texas State Bar No. 24074427
eric.hoffman@nortonrosefulbright.com

NORTON ROSE FULBRIGHT US LLP
98 San Jacinto Blvd., Suite 1100
Austin, Texas 78701
(512) 536-2450
(512) 536-4598 (FAX)

Marcy Hogan Greer*
Texas State Bar No. 08417650
mgreer@adjtlaw.com

ALEXANDER DUBOSE JEFFERSON & TOWNSEND LLP
515 Congress, Suite 2350
Austin, Texas 78701
(512) 482-9300
(512) 482-9303

*Appearing Pro Hac Vice

54138457.3

- 14 -

- 15 -

## CERTIFICATE OF SERVICE

      I certify that this document filed through the CM/ECF system will be served electronically to the registered participants identified on the Notice of Electronic Filing this 28th day of September, 2015.

                                        */s/ Sarah P. Kelly*
                                          Sarah P. Kelly