UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


IN RE:  NEW ENGLAND COMPOUNDING     )  MDL NO. 13-02419-RWZ
PHARMACY CASES LITIGATION           )
                                    )
                                    )
                                    )
                                    )
                                    )
                                    )


BEFORE:  THE HONORABLE RYA W. ZOBEL



**STATUS CONFERENCE**
**AND**
**MOTION HEARING**




John Joseph Moakley United States Courthouse
Courtroom No. 12
One Courthouse Way
Boston, MA 02210

September 10, 2015
2:00 p.m.


Catherine A. Handel, RPR-CM, CRR
Official Court Reporter
John Joseph Moakley United States Courthouse
One Courthouse Way, Room 5205
Boston, MA 02210
E-mail: hhcatherine2@yahoo.com

1     APPEARANCES:

2     For The Plaintiffs:

3

4         Hagens, Berman, Sobol, Shapiro LLP, by KRISTEN JOHNSON,
      ESQ., 55 Cambridge Parkway, Suite 301, Cambridge, Massachusetts
5     02142;

6

7         Janet, Jenner & Suggs, LLC, KIMBERLY A. DOUGHERTY, ESQ.,
      and ANDREW LEE, ESQ., 75 Arlington Street, Suite 500, Boston,
      Massachusetts  02116;

8

9         Ellis & Rapacki LLP, by FREDRIC L. ELLIS, ESQ., 85 Merrimac
      Street, Suite 500, Boston, Massachusetts 02114;

10

11        Lieff Cabraser Heimann & Bernstein, LLP, by ANNIKA K.
      MARTIN, ESQ., 250 Hudson Street, 8th Floor, New York, New York
12    10013-1413;

13

14        Lieff Cabraser Heimann & Bernstein, LLP, by MARK P. CHALOS,
      ESQ., 150 Fourth Avenue North, Suite 1650, Nashville, Tennessee
      37219;

15

16        Crandall & Katt, by PATRICK THOMAS FENNELL, ESQ., 366 Elm
      Avenue, S.W., Roanoke, Virginia 24016 (appearing telephonically);

17

18

19     FOR PAUL D. MOORE, IN HIS CAPACITY AS CHAPTER 11 TRUSTEE OF
      NECP, INC.:

20

21        Duane Morris LLP by MICHAEL R. GOTTFRIED, ESQ., 100 High
      Street, Suite 2400, Boston, Massachusetts 02110-1724;

22

23     FOR THE DEFENDANTS:

24        Michaels, Ward & Rabinovitz LLP, by DAN RABINOVITZ, ESQ.,
      One Beacon Street, Boston, Massachusetts 02108;

25
       (Appearances continued on the next page.)

```
 1      APPEARANCES (Cont'd):

 2

 3      FOR THE DEFENDANTS:

 4
            Todd & Weld LLP, by CORRINA L. HALE, ESQ., 28 State Street,
 5      31st Floor, Boston, Massachusetts 02109;

 6
            Fulbright & Jaworski, LLP, by MARCY H. GREER, ESQ., 98 San
 7      Jacinto Boulevard, Suite 1100, Austin, Texas 78701;

 8
            Gideon, Cooper & Essary, PLC, by CHRIS J. TARDIO, ESQ., 315
 9      Deaderick Street, Suite 1100, Nashville, Tennessee 37238;

10
            Fulbright & Jaworski, LLP, by ADAM T. SCHRAMEK, ESQ., 801
11      Pennsylvania Avenue, Washington, DC 20004;

12
            Donoghue, Barrett & Singal, PC, by MICHELLE R. PEIRCE,
13      ESQ., One Beacon Street, Suite 1320, Boston, Massachusetts
        02108-3113;
14
15          Morrison, Mahoney & Miller LLP, by TORY A. WEIGAND, ESQ.,
        250 Summer Street, Boston, Massachusetts 02210-1181;
16
17          Pessin Katz Law, P.A., by GREGORY K. KIRBY, ESQ., 901
        Dulaney Valley Road, Suite 400, Townson, Maryland 21204;
18
19          McGrath Law Firm, P.A., by PETER G. McGRATH, ESQ., 20
        Montgomery Street, Concord, New Hampshire 03301 (appearing
20      telephonically).

21

22

23

24

25
```

```
 1                   P R O C E E D I N G S

 2        (The following proceedings were held in open court before

 3   the Honorable Rya W. Zobel, United States District Court Judge,

 4   United States District Court, District of Massachusetts, at the

 5   John J. Moakley United States Courthouse, One Courthouse Way,

 6   Boston, Massachusetts, on September 10, 2015.)

 7             COURTROOM DEPUTY CLERK URSO:  This is In Re:  New

 8   England Compounding.  It's 13-md-2419.

 9             THE COURT:  Good afternoon.

10             MS. JOHNSON:  Good afternoon, your Honor.

11             THE COURT:  Maybe we can just skip counsel

12   identifying themselves.  I do not profess to know all counsel

13   or their names.  However, we'll proceed as best we can in

14   accordance with the agenda that counsel have prepared, but let

15   me just organize myself here.

16             (Pause.)

17             THE COURT:  All right.  Ms. Johnson.

18             MS. JOHNSON:  Good afternoon, your Honor.

19             There is one item that we have asked the Court for

20   oral argument on today that relates to the orders to show

21   cause relating to New Hampshire jurisdiction.  If the Court is

22   ready to proceed with argument on that, Mr. Lee will address

23   that.

24             THE COURT:  Well, it seems to me that there are now

25   also motions to dismiss by the defendants pending in some --
```

```
 1    at least some of those cases, and maybe what we should do is

 2    to hear the two together, to hear the response to the order to

 3    show cause and the motion to dismiss.  If the case is, in

 4    fact, subject to dismissal, then I probably don't need to

 5    consider the jurisdictional argument that the order raised.

 6          MR LEE:  Your Honor, Andrew Lee on behalf of the

 7    plaintiff Jojayra Garcia and Cheryl Ann McCarthy.

 8          We are not prepared to address the motion to dismiss

 9    and the --

10          THE COURT:  I understand that.  What I would suggest

11    is that we hear the two together at the October meeting.

12          MR LEE:  Yes, your Honor.  We have no problem with

13    that.

14          There's only one issue I wanted to bring up with the

15    Court, if I may.

16          We have attempted to get the summons so that we can

17    effectuate service upon the defendants.  We called the Court

18    on multiple cases and, unfortunately, they have informed us

19    that we will not receive a summons until the jurisdictional

20    issue is resolved.

21          THE COURT:  Well, I think it is appropriate to -- for

22    you to have the summons and to serve them.  So, I will tell

23    the Clerk to do that.

24          MR LEE:  Thank you, your Honor.

25          THE COURT:  So, that's one.
```

```
 1            I have a question.  The motion to dismiss suggests

 2     that the New Hampshire cases were filed in state court

 3     originally; is that correct?

 4            MR LEE:  Not our cases.  There were several other New

 5     Hampshire cases that I'm aware of that were filed in state

 6     court.  However, they are not our clients.

 7            THE COURT:  But are they involved in this proceeding

 8     yet in any way?

 9            MR LEE:  Not that I'm aware of.

10            THE COURT:  So, nobody has tried to bring them here?

11            MR LEE:  I believe they actually did remove them from

12     state court to this Court.

13            THE COURT:  Does anybody know their whereabouts?

14            MR. McGRATH:  Yes.  If I may, your Honor.

15            THE COURT:  You're on the telephone?

16            MR. McGRATH:  Yes, ma'am.

17            THE COURT:  Okay.  And your name, please?

18            MR. McGRATH:  Thank you.  Attorney Peter McGrath from

19     New Hampshire.

20            And on several of our cases they were originally

21     filed, as the Court has noted, in state court and then moved

22     to federal court.

23            THE COURT:  Is there a plan to bring them here, to

24     try to --

25            MR. McGRATH:  Yes.
```

```
 1              THE COURT:  -- what the Garcia plaintiffs have done?

 2              MR. McGRATH:  Yes, ma'am.

 3              THE COURT:  So, are you planning -- have you filed

 4    any motions -- well, any responses to the Court's order or are

 5    there motions to dismiss pending in the cases that you're

 6    involved in?

 7              MR. McGRATH:  Yes, on both, we have filed and there

 8    are motions and some objections, and my understanding is we're

 9    going to hear those in October.

10              THE COURT:  But the cases are not yet here or are

11    they?

12              MS. JOHNSON:  I believe that they are all here, your

13    Honor.

14              THE COURT:  So, all of the cases that started in New

15    Hampshire are now here in one way or another?

16              MS. JOHNSON:  At least some of Mr. McGrath's cases

17    are in the MDL.  The others may still be on their way.  I'm

18    not sure, but we can provide the Court with an update, and we

19    understand that we'll address all of those issues at the next

20    status conference.

21              MR. McGRATH:  Yes, we agree.  This is Attorney

22    McGrath.  Thank you.

23              THE COURT:  So, I think what we will do is to hear

24    all the cases that are here on both the defendants' motions to

25    dismiss and on -- with respect to the response to the Court's
```

```
1    order pertaining to jurisdiction at the next meeting in

2    October.

3               MR. McGRATH:  Yes, ma'am.  Thank you.

4               THE COURT:  And we'll decide by the end of the day

5    today whether we'll do it before the regular agenda or after.

6    I think it makes more sense after, really, which is what I

7    think we'll do today as well as with respect to anything that

8    we have to hear.

9               So, those motions are now addressed.  The summonses

10   will be issued, and we will hear the entire works in October.

11   That takes us to Part B.

12               MS. JOHNSON:  Thank you, your Honor.

13               In terms of the status of the bankruptcy, the agenda

14   simply reflects that this Court has entered an order that

15   partially withdrew the reference.  I don't think there's any

16   further bankruptcy report at this stage.

17               THE COURT:  Okay.

18               MS. JOHNSON:  In terms of the insurance declaratory

19   judgment actions, Ms. Martin will be addressing the status of

20   the Lloyd's and the Ironshore, Ameridose actions.

21               MS. MARTIN:  Good afternoon, your Honor.

22               Just a quick update.  The Lloyd's action, the parties

23   reached a settlement and the payment is en route, and Judge

24   Saylor issued an order that the case be dismissed in 30 days

25   unless another party reports that it should not be.
```

1          Ironshore has not reached a settlement and,

2    therefore, the stay has been lifted, and Judge Saylor has set

3    a hearing date for that status conference on that case on

4    Monday, September 28th, and he wants the party to have a game

5    plan.

6          THE COURT:  Thank you.

7          MS. JOHNSON:  And Mr. Gastel will now address the

8    status of the Tennessee Specialty Surgery dec action.

9          MR. GASTEL:  Good afternoon, your Honor.  Ben Gastel.

10          If you recall the last status conference, I alerted

11    you to an issue that had arisen related to what the plaintiffs

12    believe was sort of an attempt to do an end-run around your

13    motion to dismiss order related to whether or not Tennessee

14    clinics could be held responsible for conduct under the

15    Tennessee Products Liability Act.

16          We did end up filing our motion to stay that case

17    giving them sort of overlaps with the issues that your Honor

18    addressed in that order that was issued last year.

19          That briefing is almost complete.  We probably will

20    file a reply in support of our motion, but the State Farm

21    Insurance Company did file an opposition to the motion.

22    Specialty Surgery, whose counsel is in the room, did file a

23    response, although they did not oppose the motion.  I believe

24    that they took no position on it.

25          I took the liberty today to file within the docket of

1     this Court, and it's Docket No. 2239, the briefing related to

2     the motion to stay.  I think your Honor might find some of the

3     positions that State Farm has taken in its opposition

4     interesting.

5               Most notably, I believe that they basically conceded

6     the point that they are challenging the ability of the

7     plaintiffs here to assert those claims, and I quote in the

8     notice their conclusion in their response to the motion to

9     stay, and we just wanted to alert the Court to the fact that

10    that's now being litigated in Tennessee, and we hope to put a

11    stay to that, but the Judge will rule in good time on the

12    motion.

13              THE COURT:  So, nothing is before me with respect to

14    that, right?

15              MR. GASTEL:  We haven't filed a formal motion yet,

16    your Honor.  We hope that the Judge in Tennessee will see and

17    agree with us that the action should be stayed, and we'll

18    await his ruling on those motions.

19              THE COURT:  Okay.  Good.

20              MS. JOHNSON:  That brings us to Item No. 4, the

21    status of discovery.

22              The Plaintiffs' Steering Committee has filed an

23    unopposed motion for entry of a qualified protective order

24    that permits the Tennessee Department of Health to produce its

25    list of patient names.  That is being done in conjunction with

1    the specific narrow purpose of the settlement.  There was no

2    opposition to that order.  I do have a copy of that order, if

3    I may.

4              THE COURT:  I have it here.  However, I have one

5    request.  On Page 2 -- are you talking about the settlement --

6    dismissing claims of settling defendants or another, the next

7    one, the unopposed motion for qualified protective order?

8              MR. GASTEL:  I believe, your Honor, that we're still

9    on 4(a), the PSC's unopposed motion for qualified protective

10   order.

11             THE COURT:  Okay.  That's the one I'm talking about.

12   Where is it?

13             There is a reference in one of these motions -- I

14   have the wrong set here -- to an order to the Tennessee health

15   authorities ordering them to turn over documents, I believe.

16             MR. GASTEL:  Yes.

17             THE COURT:  And I'm not sure I like that language

18   because the Tennessee health authorities are not before me.  I

19   don't think I have any power to order them, and I would like

20   you to substitute for "ordering" them "request."

21             MR. GASTEL:  Your Honor, I will make that change.

22             I will represent to the Court that I have worked with

23   the Tennessee Department of Health on this and they do not

24   oppose the production of those documents, but, nonetheless, I

25   will make the change.

```
1              THE COURT:  I think it's the protocol.

2              MR. GASTEL:  I certainly understand the Court's

3    position.  We'll clean up the language and get an order to you

4    today.

5              THE COURT:  I wish I could find it.  Oh, here it is,

6    yes.  And it is on Page 2, and it is not "ordered."  It says,

7    "The Tennessee Department of Health shall," do something,

8    Paragraph No. 2.

9              MR. GASTEL:  Sure.

10             THE COURT:  And I would suggest that it might say,

11   "is requested to."

12             MR. GASTEL:  We'll make that change and issue a new

13   order today, your Honor.

14             THE COURT:  Thank you.

15             MS. JOHNSON:  That brings us to 4(b), which is just a

16   recognition that many significant orders have entered since

17   the last status conference, and I will just quickly identify

18   those, particularly for counsel on the phone.

19             There was an order addressing the Inspira's motion

20   for a protective order.  There has been an order on -- denying

21   the motion to quash St. Thomas' subpoenas to Dr. Austin, and

22   the deposition of Dr. Austin will be going forward in short

23   order.  Tomorrow, actually.  Thank you, Mr. Gastel.

24             There have also been two orders that are not

25   referenced here because they were entered after the agenda was
```

1    filed:  One was Judge Boal's order addressing the motion to

2    compel PSC responses to discovery and the PSC has received

3    that order and will provide the additional responses Judge

4    Boal requested -- Judge Boal ordered within the next two

5    weeks; and the final order would be this Court's order

6    addressing the Box Hill motion to dismiss.

7              THE COURT:  Okay.

8              MS. JOHNSON:  That brings us to No. 5, the status of

9    the litigation track.  Again, there has been an order entered

10   by this Court to dismiss with prejudice all claims against the

11   settling defendants.

12             THE COURT:  The question about that is what else

13   needs to be done to close those cases now?  Anything?

14             MS. JOHNSON:  Technically, no, your Honor.  Meaning,

15   that this Court has now dismissed all of those causes of

16   action.

17             In terms of cleaning up dockets, for example, we had

18   discussed with the Court earlier perhaps filing in the MDL

19   docket -- I'm sorry -- filing in individual dockets a notice

20   of dismissal and linking that to the document -- the order

21   that's entered in the MDL docket.

22             It's unclear to the PSC that that's necessary, but

23   from the Court's perspective or defendant's perspective, to

24   the extent people would like the individual dockets to be

25   cleaner, we certainly could do that.

```
1              THE COURT:  Well, normally we can't close a case
2    without a judgment and -- or a dismissal or some kind of an
3    order, and I think we need something to -- just to be able to
4    close out those cases.  Because, otherwise, they keep hanging
5    around.  The MDL may disappear, but the individual cases are
6    still pending.  So, whatever mechanism you can determine will
7    close them, we will cheerfully accept and close them.
8              MS. JOHNSON:  Your Honor, I suggest that the PSC
9    consider the best way to administratively accomplish that and
10   we will speak with the Clerk to do that.
11             THE COURT:  Good.
12             MS. JOHNSON:  And we'll suggest something to you at
13   the next status conference.
14             THE COURT:  Okay.  And I think, then, the next
15   several items all have to do with Judge Boal, down to the
16   schedule for further conferences.
17             MS. JOHNSON:  I think that's correct, your Honor.
18             I would recognize Item 5(b), which is the United
19   States' motion to intervene and seeking a stay.  There may be
20   some desire by -- for either the government or the Tennessee
21   defendants to address that insofar as it may have an impact on
22   some of the recently-scheduled depositions and, therefore, may
23   conceivably have an impact on some of the discovery deadlines.
24             THE COURT:  I think it would be helpful if the
25   parties in this case could, if the government seeks such a
```

1    stay, try to negotiate with the government to keep these cases

2    going as much as possible.  I mean, if there were to be a stay

3    that would impact the progress of this case, the progress of

4    this case will be impaired for probably three to four years,

5    if not longer.  I mean, this is a huge criminal case and it's

6    not going to go to trial in the next week.

7              MS. JOHNSON:  Well, the PSC is certainly willing to

8    do that, your Honor.  I expect that the other parties are as

9    well, but, of course, Mr. Tardio can speak for himself.

10             I will say that the PSC recognizes that the

11   government did not seek to stay these actions in their

12   entirety and we are, frankly, appreciative of that because we

13   think there is much that can be done to continue moving these

14   civil cases forward.

15             THE COURT:  Okay.

16             MR. TARDIO:  Your Honor --

17             THE COURT:  I'll back you up on it.

18             MR. TARDIO:  -- Chris Tardio for the Tennessee clinic

19   defendants.

20             One short-term issue we have is that the government

21   has asked to stay depositions of NECC former employees of the

22   Massachusetts Board of Pharmacy.

23             Practically speaking, we have NECC former employees

24   set to be deposed in the next few weeks.  So, I need some

25   guidance from the Court on what to do with those depositions,

1   because the government's motion to stay is not going to be

2   disposed of by the time these depositions are set to happen,

3   and what I don't want to do is indefinitely postpone these

4   depositions in recognition of the motion to stay and then have

5   the deadlines run, which they will, and be -- when I seek --

6   later if the motion to stay is denied or if these depositions

7   happen at sometime down the road, I don't want to be held to a

8   deadline that has hence passed.

9          THE COURT:  When was the motion to stay filed?

10         MR. TARDIO:  The Friday before Labor Day.

11         THE COURT:  In this case?

12         MR. TARDIO:  Yes, in the entire MDL.

13         THE COURT:  So, when is your -- when are you going to

14   file your opposition or limited opposition?

15         MR. TARDIO:  It will not be due for eight or ten days

16   from now, seven to ten days.

17         THE COURT:  You could file earlier.

18         MR. TARDIO:  Well, we could, but I don't think that

19   the Court -- unless the Court gives us a ruling -- the first

20   deposition, I think, is set on September 22nd.

21         THE COURT:  File it earlier and say it's an emergency

22   issue.  I mean, people file all kinds of emergency motions

23   when there's no emergency.

24         (Laughter).

25         THE COURT:  Request an early disposition.  I'll do it.

1      MS. JOHNSON:  To share with the Court a piece of

2  information, Judge Boal has set that argument for hearing in

3  October.

4      THE COURT:  So, I will talk to Judge Boal and we'll

5  try to expedite it.

6      MS. JOHNSON:  I'm sure all the parties appreciate

7  that, your Honor.  Thank you.  I believe that --

8      THE COURT:  Wait one second.  I need to make a note

9  to myself.

10      (Pause.)

11      THE COURT:  And I think it would be helpful if you

12  were to file whatever opposition you're going to file,

13  whatever limited opposition and suggestions as to how those

14  might be handled.  So, when you file it, Judge Boal can take

15  care of it.  I'll talk to her about moving the schedule up.

16      MR. TARDIO:  We will do so and we will note in the

17  motion --

18      THE COURT:  That may not take care of the entirety of

19  the government's motion, but to the extent that you're talking

20  about a particular group of employees whose depositions have

21  been scheduled, then let us just address them at the moment.

22      MR. TARDIO:  Thank you, your Honor.

23      THE COURT:  Okay.  Thank you.

24      MS. JOHNSON:  So, turning to agenda Item 5(c), your

25  Honor.  There was a request that the PSC add to the proposed

1    agenda a reference to an ex parte motion that may have been

2    filed by Lisa Cadden's attorney.

3           THE COURT:  I think that's for Judge Boal initially.

4    Motions for reconsideration are normally addressed by the

5    Judge who made the original order.  So, it's for her.

6           MS. JOHNSON:  And I'm in a bit of an awkward

7    position, your Honor, because I don't have firsthand knowledge

8    of what that motion is or how we know that it exists, but I

9    suppose I'll say that it's a little unclear to the PSC why

10   that motion for reconsideration would be done on an ex parte

11   basis, and I'll leave it at that for the time being.

12          THE COURT:  Okay.  I mean, I assume that you will

13   have notice when Judge Boal hears this and you can ask to

14   participate.

15          MS. JOHNSON:  Thank you, your Honor.

16          MS. PEIRCE:  Your Honor, can I clarify that?  I

17   represent Lisa Cadden.  Just to shed light, the motion --

18          COURT REPORTER:  Can you tell me your name, please?

19          MS. PEIRCE:  Michelle Peirce for Mrs. Cadden.

20          THE COURT:  How do you spell your last name?

21          MS. PEIRCE:  P-e-i-r-c-e.

22          It actually was correctly or incorrectly directed to

23   you, your Honor.  What's pending and what was ex parte is

24   simply a motion to impound, and then the intent was to file a

25   motion to reconsider once the motion to impound was granted.

1    So, that's why there is some secrecy involved or apparent

2    secrecy, but that's the issue.

3            THE COURT:  What is being impounded, the motion

4    itself?

5            MS. PEIRCE:  Both, correct.  So, the motion to --

6            THE COURT:  What do you mean, "both"?  The motion to

7    impound is impounded and the motion that seeks to impound is

8    impounded?

9            MS. PEIRCE:  That was the request.  I realize it gets

10   a little metaphysical, your Honor, and I may be impounded as

11   well.  So, the hope --

12           THE COURT:  That would certainly solve the problem,

13   wouldn't it?

14           (Laughter.)

15           MS. PEIRCE:  And it would solve many problems, your

16   Honor, for many people.  So, I'll take that into

17   consideration.

18           So, the hope is that the motion to impound the motion

19   to reconsider could be granted so that the appropriate parties

20   would have an opportunity to respond to the motion to

21   reconsider.

22           And, again, to clarify, it is asking you to

23   reconsider for, respectfully, an incorrect standard of law

24   that was applied to the issue.

25           THE COURT:  I think I will adhere to my earlier

1    ruling.  It is appropriate for Judge Boal to deal with it

2    based on whatever she may not have known before you filed your

3    motion.  And so, I will leave it to her, both to decide the

4    motion on reconsideration in the first instance.  I suppose

5    you could ask for an appeal.  Under the statute, you have a

6    right to come to the District Judge who referred the case to a

7    Magistrate Judge if you don't like the ruling, but I think

8    reconsideration is really first for her, especially if you

9    want to point out to her some law that she may not have known

10   about, and I think you need to work out with her the issue of

11   sealing, which is, I think, what you're really talking about,

12   in such a way that any party who has an interest in it may be

13   able to respond.

14              MS. PEIRCE:  Thank you, your Honor.

15              THE COURT:  Okay.  So, I'll talk with her about that.

16   Okay.

17              MS. JOHNSON:  So, turning to Item 5(d), Mr. Chalos

18   wanted to address the status of the Tennessee Bellwether

19   process.

20              THE COURT:  Okay.

21              MR. CHALOS:  Thank you, your Honor.  It's Mark Chalos

22   on behalf of the plaintiffs.

23              The parties, pursuant to your Honor's July 9th, 2015

24   order in the Tennessee cases, have exchanged their Bellwether

25   picks, eight for each side.  There's one case in common,

1    although there's some disagreement about the category that

2    that case should fit in.

3         We attempted as part of that process to come to some

4    agreement as to general parameters of which cases we would

5    propose for Bellwethers, somewhat mirroring the categories in

6    the matrix for the bankruptcy settlement.  So, we've got a

7    total of 15 cases that both parties have identified and --

8         THE COURT:  And agreed on?

9         MR. CHALOS:  Well, I mean, we --

10        THE COURT:  Identification means that you both agree

11   as to a particular group?

12        MR. CHALOS:  No.

13        THE COURT:  Oh.

14        MR. CHALOS:  We've proposed our eight.  They've

15   proposed their eight.  There's one in common.  That's as far

16   as we've gotten.

17        Now, a disagreement has arisen in terms of

18   implementing your Honor's July 9th order and, basically, where

19   we are generally in the litigation, the plaintiffs have

20   proposed that we go forward with case-specific discovery in

21   those cases.  The defendants have taken the position that

22   until your Honor rules on the issue of whether your Honor has

23   jurisdiction over those cases to try a Bellwether case or a

24   series of Bellwether cases under 28 U.S.C. 157, then your

25   Honor's order does not yet trigger case-specific discovery.

```
1              THE COURT:  You will have a decision within a week.

2              MR. CHALOS:  Okay.  Well, then that solves that

3    issue.  Thank you, your Honor.

4              THE COURT:  Okay.

5              Now, schedule for further status conferences.  I

6    think we are set for October 14th, at 2:00, and Judge Boal at

7    11:30.

8              MS. JOHNSON:  Yes, your Honor.

9              THE COURT:  And November 12th, I think, we had also

10   established.

11             MS. JOHNSON:  Yes, your Honor.

12             THE COURT:  The same drill.

13             MS. JOHNSON:  Correct.

14             We would ask, if the Court were inclined, we could

15   set the December status conference, particularly in light of

16   the difficulty with the holiday travel situation.  I would

17   suggest as a starting point, Thursday, the 17th.

18             COURTROOM DEPUTY CLERK URSO:  That's available.  If

19   all counsel are available, that's available for 2 o'clock.

20             THE COURT:  Is that agreeable to those counsel who

21   normally appear and, thus, may have travel issues?

22             (No response.)

23             THE COURT:  Okay.  So, December 17th.

24             COURTROOM DEPUTY CLERK URSO:  At 2:00, okay.

25             THE COURT:  And Judge Boal, again, at 11:30.
```

1          MS. JOHNSON:  If that works for Judge Boal, your

2   Honor, yes, that would be ideal.

3          COURTROOM DEPUTY CLERK URSO:  I'll send a notice to

4   Judge Boal now.  So, Judge Boal, at 11:30 would be --

5          MS. JOHNSON:  Yes, please.

6          COURTROOM DEPUTY CLERK URSO:  Okay.  I'm going to

7   send it to Steve right now.

8          MS. JOHNSON:  And then two last things, your Honor.

9   Two things:  One, we had a request for a report from the

10  federal state liaison about the state law cases, if your Honor

11  would be interested in hearing that.  Defense counsel actually

12  asked for that report.

13         THE COURT:  Sure.

14         MR. CHALOS:  That's me, again, your Honor.  Mark

15  Chalos for the plaintiffs.  I'll make this brief.

16         There are three main centers of litigation in state

17  courts right now.  One is in Michigan, where there are two

18  clinics that have a number of pending cases in state courts.

19  The first is in Northern Michigan against the Neuromuscular

20  Clinic and some related defendants.  That case is set for

21  trial to begin October the 28th.  I understand that they are

22  in a mediation today.  That case involves approximately 120

23  plaintiffs, some of whom have consortium claims, some of whom

24  are the patients who actually received the tainted medication.

25  Fact discovery is concluded, from what I understand, and

1    expert discovery is ongoing in preparation for that October

2    28th trial.  There is a second --

3              THE COURT:  One case is going to trial?

4              MR. CHALOS:  I'm sorry?

5              THE COURT:  They're having one trial, one case?

6              MR. CHALOS:  Actually, that is a certified class.

7    So, that is going to trial as a class.

8              THE COURT:  Presumably, on -- the class on what

9    issues?

10             MR. CHALOS:  As I understand it, they have bifurcated

11   the issues and the initial trial will be on just issues of

12   duty and breach of the duty under state law.  I don't know

13   what their process is getting from that judgment to, you know,

14   some kind of final resolution, but that is going forward as a

15   class for all 120 individuals.

16             The second group of cases in Michigan involves the

17   Michigan Pain Center and that is under -- right now those

18   cases are approximately 311 claims, 37 of which are loss of

19   consortium claims, the spouse of an injured person.  They have

20   a status conference set for October the 9th, and they are

21   engaged presently in active settlement negotiations, and I

22   think there is some reasonable expectation that case will

23   settle.

24             THE COURT:  I'm sorry.  How many were there, 100,

25   what?

```
 1              MR. CHALOS:  311 claims.

 2              THE COURT:  And who is the defendant on the first

 3    group, the 120 cases?

 4              MR. CHALOS:  It's the Neuromuscular Clinic and some

 5    related entities.

 6              THE COURT:  Okay.

 7              MR. CHALOS:  And that's in Northern Michigan.  And

 8    then the second group is Michigan Pain...

 9              (Discussion off the record.)

10              MR. CHALOS:  Michigan Pain Specialists.  I'm sorry.

11    MPS, Michigan Pain Specialists.  That's the second group in

12    Michigan.

13              There is also a batch of cases in Indiana,

14    approximately 120 cases that are filed in the various state

15    courts there, primarily centered in Elkhart and St. Joseph

16    counties.  They are presently addressing a threshold legal

17    issue as to whether those cases would be governed by the

18    Indiana state medical negligence statute or whether it's a

19    general negligence standard, and that's, evidently, an

20    important issue for those cases.  They've argued -- they've

21    briefed and argued that issue and they're awaiting a ruling on

22    that.

23              THE COURT:  These are, essentially, motions to

24    dismiss that are pending?

25              MR. CHALOS:  I think so.  I don't know exactly what
```

1    the procedural posture is, but they're awaiting a decision.

2    That's, apparently, either determinative or otherwise shaping

3    for that litigation, and they expect to get a ruling sometime

4    this year on that issue.

5            And then the third batch of cases, significant batch

6    of cases, is in Maryland state courts, and right now there are

7    24 cases that are pending in the Maryland Healthcare

8    Alternative Dispute Resolution Office, which is under

9    Maryland's law a necessary stop in the process of filing a

10   medical malpractice case and that's, essentially, an

11   arbitration body, although the expectation is that those cases

12   will not resolve at that stop and will instead be ultimately

13   filed in the state or federal court, and the expectation is

14   ultimately there will be approximately 60 cases, 60 other

15   cases filed in the Maryland courts, and those are the

16   significant --

17           THE COURT:  And they will stay there?  I mean,

18   there's no possibility that they will come here under any

19   guise?

20           MR. CHALOS:  I don't know that that's true.  I think

21   some of the cases may be filed in federal court ultimately,

22   although Ms. Dougherty suggests otherwise.

23           MS. DOUGHERTY:  Good afternoon, your Honor.  Kim

24   Dougherty on behalf of many of the Maryland plaintiffs against

25   three different clinics.  Box Hill is one of them, and you

1     have some of those cases pending here in front of you, your

2     Honor.

3                  We also have cases that are against Ortho Maryland

4     and Green Spring Surgical Center and the last batch is

5     Hartford Ambulatory.

6                  There are some of the Box Hill cases, as I mentioned,

7     here in front of you, your Honor.  After your order to show

8     cause decision, we'll anticipate figuring out whether or not

9     you will presume to have jurisdiction over any cases that are

10    filed after the effective date and make a decision at that

11    time.

12                 Under the current impression that we've gotten from

13    the Court, we anticipate that those will likely be filed in

14    state court, unless your Honor decides that you continue to

15    have jurisdiction after the effective date.

16                 THE COURT:  Okay.

17                 MR. CHALOS:  That's all I have, your Honor.

18                 THE COURT:  Thank you.

19                 MS. MARTIN:  Your Honor, for the pro se's, just a

20    really quick update.  Since the last status conference, we've

21    had about four or five calls from pro se's, simple questions

22    that were handled pretty quickly.  So, that's the entire report.

23                 MS. JOHNSON:  One final thing, your Honor.

24                 The fun thing about being lead counsel is that

25    plaintiff attorneys ask you to say things to judges that they

1    would never stand up and say themselves.

2           We have on our agenda under Item C, fully briefed,

3    Nos. 10 through 12.  There are three unopposed motions that

4    the Court has not ruled on for which the time for oppositions

5    has passed.  Two of those relate to motions to amend to add

6    particular defendants, one relating to -- one asking to add

7    Premier and some Premier doctors to a New Jersey complaint,

8    and one asking to add an individual doctor, and I've the

9    forgotten which clinic that doctor is associated with.  My

10   apologies.

11          I do have copies of orders for all three of those, if

12   I could hand them up, your Honor.

13          THE COURT:  I think I have at least Semus.  I may

14   have another one.  That can be printed easily enough.  They're

15   allowed.  These unopposed motions are allowed, and I will sign

16   the orders.

17          MS. JOHNSON:  Thank you, your Honor.

18          There are a number that we have listed and identified

19   as discovery-related motions.  I believe all of those are

20   before Judge Boal.  Several of those have been ruled on -- at

21   least a couple of those have been ruled on since the agenda

22   was filed.  So, I'm not sure that we need to address those

23   with this Court.

24          THE COURT:  I don't think so.  I think she's fully in

25   control.

```
 1              MS. JOHNSON:  Yes.  And then turning to Page 4, we've
 2   also listed motions for which oral argument has either already
 3   been held or been waived.
 4              THE COURT:  Well, 157(b)(5) motion -- motions --
 5   there are several of them -- are the ones that I said you
 6   would have a decision on within a week.
 7              MS. JOHNSON:  Thank you, your Honor.
 8              Which brings us to our final category, which is
 9   other, a little bit of a grab bag, one of which is a motion --
10              THE COURT:  Wait one second.
11              I think I -- I guess the Box Hill motion --
12              MS. JOHNSON:  You just --
13              THE COURT:  -- I decided that.
14              MS. DOUGHERTY:  You decided --
15              THE COURT:  So, the Box Hill motions are done, No. 20
16   on Page 4.
17              MS. JOHNSON:  Yes.
18              THE COURT:  The Ohio medical defendants' motion to
19   dismiss has no opposition.  Does that mean that it is allowed
20   -- to be allowed without opposition?
21              MS. JOHNSON:  No, your Honor, it doesn't.  And,
22   actually, I think that's my motion.  So, I need to get on
23   that.  I'm not sure that that is -- I'm not sure that the time
24   has elapsed to respond to that.  So --
25              THE COURT:  The motion was filed on July 24th.  Do
```

```
1    you want time to file an opposition?

2            MS. JOHNSON:  Yes, please, your Honor.

3            THE COURT:  When?

4            MS. JOHNSON:  Next week.

5            MR. WEIGAND:  Your Honor, Tory Weigand.  I represent

6    the Ohio defendants who filed that motion.

7            COURT REPORTER:  Could you tell me your name, please?

8            MR. WEIGAND:  You gave an extension --

9            THE COURT:  Hold it one second.

10           Could you give your name to the reporter, please, and

11   me, for that matter.

12           MR. WEIGAND:  Sure.  Tory Weigand for the Ohio clinic

13   defendants.

14           THE COURT:  How do you spell your last name?

15           MR. WEIGAND:  W-e-i-g-a-n-d.

16           THE COURT:  Okay.

17           MR. WEIGAND:  Just for clarification, I had

18   discussions with, I believe, the PSC and we agreed to

19   September 11th.

20           THE COURT:  For them to file an opposition?

21           MR. WEIGAND:  Correct.

22           MS. JOHNSON:  That would be better, your Honor.

23           THE COURT:  And you don't want time to reply, right?

24           MR. WEIGAND:  May not, your Honor.  May not.

25           THE COURT:  Good.  Okay.
```

1          MS. JOHNSON:  That brings us, then, to other motions.

2     There is a pending to motion withdraw --

3          THE COURT:  Let me ask you one other question.

4          Going back to No. 20, the Box Hill.  To what extent

5     does the decision on Chowdhury, or whatever his name was,

6     govern the other Box Hill defendants, the other pieces of it?

7          MR. KIRBY:  Your Honor, Greg Kirby on behalf of Box

8     Hill defendants.

9          You said "Chowdhury."  That's not my client.  I think

10    that's somewhere else.  I don't know --

11         THE COURT:  That's not -- it's not Maryland?

12         MR. KIRBY:  No.  My client is with Box Hill.  Box

13    Hill Surgery Center, Ritu Bhambhani and her LLC -- FDLC.

14         THE COURT:  Okay.

15         MS. JOHNSON:  I apologize, your Honor.  That's an

16    individual doctor associated with a different clinic, but I'm

17    having trouble remembering which clinic, but we hear the

18    Court's question and we will provide an answer at the next

19    status or before, if appropriate.

20         THE COURT:  Okay.  Now, No. 22.  Any reason not to

21    allow that?

22         MS. JOHNSON:  No, your Honor.  That's an issue that

23    was argued at the -- at the previous status conference.

24         THE COURT:  The motion to withdraw?

25         MS. JOHNSON:  Yes.

1          THE COURT:  What was the issue?

2          MS. JOHNSON:  The issue was the individuals whose

3   insurance coverage -- some of the defendants, both individuals

4   and affiliated, insurance coverage lapsed and the attorneys

5   were seeking to withdraw and you heard argument from some of

6   them, including, I remember, counsel for GDC on that motion.

7          THE COURT:  Okay.

8          MS. JOHNSON:  No. 23 your Honor has asked be heard

9   next time as --

10          THE COURT:  Yes.  Well, that's part of what we

11   discussed at the beginning.

12          MS. JOHNSON:  Yes.  As is No. 24.

13          And then, finally, No. 25 simply identifies all of

14   the briefing before this Court relating to the choice of law

15   issue.

16          THE COURT:  Yes.  And we'll work on that one, too.  I

17   think that that's entirely in our court now.

18          MS. JOHNSON:  And that brings us to briefing in

19   progress, your Honor.  I will just note there is still one

20   petition to approve the wrongful death claim of one

21   individual, Virginia plaintiff, which is Corker.  They have

22   asked for oral argument, but I believe at the next status

23   conference.  I don't believe counsel for plaintiff Corker is

24   present, and then --

25          THE COURT:  Is someone here for the Virginia case

1    that needs approval?

2            (No response.)

3            THE COURT:  Okay.  So, we'll --

4            MR. FENNELL:  Your Honor, this is Patrick Fennell by

5    telephone on the Plaintiffs' Steering Committee and a Virginia

6    attorney.

7            That is correct, wrongful death cases require court

8    approval of the settlements.  Your Honor may recall that you

9    approved several of those a few weeks ago last -- I think

10   July, actually.

11           THE COURT:  So, we will do this one after the meeting

12   in October.

13           MS. JOHNSON:  Thank you, your Honor.

14           THE COURT:  And 27, 28, and 29 all go to Judge Boal.

15           MS. JOHNSON:  And they have all been set for argument

16   next month already.

17           THE COURT:  Does anyone have any other business that

18   we need to take care of today?  Anybody on the phone?

19           (No response.)

20           THE COURT:  Well, as always, thank you.

21           MS. JOHNSON:  Thank you, your Honor.

22           MR. GASTEL:  Thank you, your Honor.

23           THE COURT:  Court is in recess.

24           (Adjourned, 2:46 p.m.)

25

```
 1                    C E R T I F I C A T E

 2            I, Catherine A. Handel, Official Court Reporter of

 3    the United States District Court, do hereby certify that the

 4    foregoing transcript, from Page 1 to Page 33, constitutes to the

 5    best of my skill and ability a true and accurate transcription

 6    of my stenotype notes taken in the matter of Multidistrict

 7    Litigation No. 13-02419-RWZ, In Re: New England Compounding

 8    Pharmacy Cases Litigation.

 9

10

11    September 30, 2015      /s/Catherine A. Handel
      Date                    Catherine A. Handel, RPR-CM, CRR

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```