UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION <br><br> _____ <br><br> THIS DOCUMENT RELATES TO: <br><br> All Cases | MDL No. 2419 <br> Dkt. No 1:13-md-2419 (RWZ) |

**SAINT THOMAS ENTITIES' RESPONSE TO UNITED STATES' MOTION TO INTERVENE TO OPPOSE MOTION TO COMPEL MEDICAL SALES MANAGEMENT INC. TO PRODUCE CERTAIN DOCUMENTS PRODUCED IN CRIMINAL DISCOVERY**

The Saint Thomas Entities[1] hereby file this Response to the United States' Motion to Intervene[2] and for the reasons stated below, they do not oppose the limited intervention sought but do oppose the relief requested.

**INTRODUCTION**

The Government seeks leave to intervene in order to oppose the Saint Thomas Entities' motion to compel MSM to produce certain business records used to train its employees and market NECC products. The Government provides no new briefing to this Court and does little more than refer it to the briefing previously submitted. That briefing, however, was focused on the grand jury and investigatory materials it sought to protect from use in the civil litigation. The Saint Thomas Entities have narrowed their request to business records created during the normal

---

[1] Saint Thomas West Hospital f/k/a St. Thomas Hospital; Saint Thomas Health; and Saint Thomas Network.

[2] While the United States' filing is titled an "opposition," its first line states that the Government "moves to intervene for the purpose of opposing" the Saint Thomas Entities' motion to compel documents from MSM. Because the United States is not a party to any of the civil lawsuits at issue in this MDL and the Court has not previously granted them leave to intervene for any purpose, the filing is properly considered a motion to intervene to which the Saint Thomas Entities are entitled to respond.

course of business by MSM to train its sales representatives.  Such materials are clearly subject to civil discovery, and the fact they were seized and copied three years ago by the Government in no way changes that fact.  For the reasons stated below, MSM and/or Greg Conigliaro should be ordered to produce the business records despite the Government's opposition.

## ARGUMENTS AND AUTHORITIES

While the Government claims that allowing discovery of materials returned to criminal defendants – or even solely in their possession as a result of criminal discovery – would be a "dangerous precedent" and "unprecedented," that is simply not the case.  In fact, the circumstances here clearly support the production of normal business records for purposes of civil litigation, and it is far from "unprecedented" that business records be used in concurrent civil and criminal proceedings.

**A.  The Business Records at Issue are Integral to Health Care Providers' Defenses in this MDL and Should Have Been Produced Long Ago**

After the Government filed its opposition, MSM for the first time produced two training videos and a few audio recordings that were not seized by the Government.  These recordings begin to reveal how MSM trained its employees to sell NECC's products to health care providers, including the specific representations they were to make regarding the quality of NECC product.  This is key evidence for health care providers to show at trial, who are being sued solely because of their decisions to purchase from NECC (or their alleged agency relationships with the health care providers who purchased from NECC).[3]  If a picture is worth a

---

[3] The Saint Thomas Entities and Tennessee Clinic Defendants previously briefed the importance of this discovery and why it is needed to defend against the claims being made by Plaintiffs.  *See* Memorandum in Support of the Saint Thomas Entities' Motion to Compel Medical Sales Management to Produce Training and Marketing Materials (Dkt. # 2249), p. 5; Saint Thomas Entities Response to United States' Motion for a Stay (dkt. #2275), pp. 3-5; Tennessee Clinic Defendants' Response to the Motion of the United States for a Stay of Certain Depositions Pending Resolution of Related Criminal Proceedings (Dkt. # 2274), pp. 12-13.  Rather than repeat the points made in this briefing, it is incorporated herein by reference.

thousand words, a video is worth a million. So the Court can understand the importance of the type of training materials at issue, and why the Saint Thomas Entities are entitled to all of the training materials MSM produced (not just the ones the Government happened to leave behind), the Saint Thomas Entities contemporaneously seek to file under seal as **Exhibit A** a 5-minute excerpt of highlights from one of the videos.

**B.     The Government Must Return Seized Business Records, Typically Before Indictment**

While there is admittedly little case law on this issue, it is not because the Saint Thomas Entities are seeking "unprecedented" relief, but rather because the Government is acting in an unprecedented manner. In most cases where it undertakes the massive seizure of business records, the Government timely returns <u>at least a copy</u> of those records to the owners. Once that happens, the business records are subject to normal civil discovery requests and the Government does not have to get involved (after all, they have what they need). Indeed, Courts have <u>ordered</u> the Government to return to businesses a copy of the records that were seized, sometimes before the Government has even decided whether to indict.

For example, in *Premises Known as 225, 1468 & 1470 Statler Towers v. United States*, the government seized under a search warrant "voluminous records belonging to [several] firms" being investigated for mail and wire fraud (two of the claims the Government has brought against NECC). 787 F.2d 796 (2d Cir. 1986). When the business owners asserted the government had "effectively put them out of business by removing and retaining their records, supplies and equipment," the trial court "***ordered the government to allow inspection and copying of the seized items*** and to 'provide copies' of the records in its possession." *Id.* at 797 (emphasis added). The order was appealed <u>not</u> because the court had required the Government to give the businesses back a copy of their own business records, but because there was a dispute

over who had to pay for the copies.  The Second Circuit ruled that if the business wanted its business records back because they needed them, they had to pay for the copies.  *Id.* at 799.  Indeed, in that case, the court noted that the Government had "consistently offered the firms access to the records for copying purposes."  *Id.*

It appears that one reason the government typically returns business records promptly after a search and seizure is to avoid an injunction by the business owner to get them back.  For example, the Ninth Circuit has explained that a company had not "demonstrated much hardship to it by reason of the seizure" of its business records "inasmuch as ***all copies of materials have been furnished to it.***"  *Offices of Lakeside Non-Ferrous Metals, Inc. v. United States,* 679 F.2d 778, 780 (9th Cir. 1982) (emphasis added).  Similarly, a district court in Wisconsin explained that although a company was subject to an ongoing grand jury investigation, "the government had already ***returned to movant either the originals or copies of all property seized*** pursuant to the search."  *United States v. Building Housing a Business Known as Machine Prods. Co.*, No. 89-M-118, 1990 U.S. Dist. LEXIS 19221, at *14 (W.D. Wis. 1990).  Similarly, the Second Circuit concluded that a company suffers no harm where "the Government offered to provide the company ***copies of all documents seized from its offices*** . . . ."  *Standard Drywall, Inc. v. United States*, 668 F.2d 156, 157 n.2 (2d Cir. 1982).  Indeed, the Second Circuit has explained the common sense solution to this situation: the "Government either provides the party with copies of the items seized or returns the original to the party and presents the copies to the jury."  *Id.*

This common sense solution appears to have been subsequently followed.  In a recent grand jury investigation in the Eastern District of New York, the Government had been "prepared, for several months, to return most of the original documents" once a form was signed, had "electronically scanned documents it wishe[d] to retain" and "copies of those documents

ha[d] been given to [petitioner] in the form of a CD." *In re Searches Conducted & Prop. Seized*, No. 13-MC-376, 2013 U.S. Dist. LEXIS 111971, at *5-6 (E.D.N.Y. July 31, 2013). Similarly, where "numerous files" were seized from broker dealers in the Southern District of New York, the Government avoided having to return the originals by making an offer to provide copies of seized documents. *See In re Application of Sentinel Government Secs.*, 530 F. Supp. 793, 794 (S.D.N.Y. 1982).

Returning copies of seized business records to companies has become so routine that courts have concluded the case law "may imply that the government ha[s] the duty to furnish [criminal defendants] with copies of the more important records in order to prevent major hardship *during the time preceding the indictment*." *Premises Known as 225*, 787 F.2d at 798 (emphasis added). In other words, even before a criminal defendant is indicted, the Government typically should return business records so they can be used by businesses for normal business purposes, thereby also making them available for civil discovery matters. It appears that the only reason MSM itself did not demand return of its business records long ago is because it shut down operations as a result of the fungal meningitis outbreak.

**C.     The MSM Business Records Have Been Returned**

Moreover, it is the Saint Thomas Entities' position that MSM's business records were in fact returned to it and therefore the Government has no grounds to object to the production. After all, a company can only act by and through people. So treatises as the Federal Litigation Guide explain, "[a] corporation may be required to produce documents in the possession or control of one of its officers." 2-14 Federal Litigation Guide § 14.41. This is hardly a novel concept. As one federal district court explained in compelling a union to produce telephone recordings its leaders claimed were made while acting in their personal (not official) capacities:

> Because *every organization*, including unions, can operate only through the actions of its officers and agents, it *can possess, control, or have custody of documents and things only if its officers and agents possess, control, or have custody of them* . . . .

*McBryar v. Int'l Union of Auto. Aerospace & Agric. Implement Workers*, 160 F.R.D. 691, 695 (S.D. Ind. 1993) (emphasis added).  The court accordingly rejected the argument that company executives did not "possess" items because they were allegedly made or received in their personal capacity.  Of particular importance was the fact that the records, just like the records at issue here, concerned official company business.  *Id.*

Here, MSM acts by and through its owners and directors, all of whom have been indicted and all of whom possess a copy of the company records at issue.  None of the training records are subject to protection under the criminal protective order in place (which in any event could be modified by this Court).  And there's no better way to return a copy of business records to MSM than by providing a copy to all of its owners and directors (the people who own and run the company).  The legal concept of "possession, custody or control" does not require the use of magic words.  MSM possesses its training records.  And there is no meaningful difference between the government returning a copy of a company's business records in accordance with the cases discussed above and providing those same documents as criminal discovery.  The result is the same.

**D.    Criminal Discovery is Subject to Production in Civil Cases under Federal Rule 26, as the Government Previously Argued to the Second Circuit**

It should also not go unnoticed that when the Government is involved in civil litigation, it takes a much different position.  Far from claiming that a criminal defendant being compelled to produce materials provided in criminal discovery is a "dangerous precedent," it has previously argued in favor of that exact result.  And it has done so not where the material in question was

the criminal defendant's own business records, but where the material consisted of wiretap recordings created by law enforcement.

The Second Circuit's decision in *SEC v. Rajaratnam* concerned concurrent civil and criminal cases arising from an insider trading investigation. 622 F.3d 159 (2d Cir. 2010). Because another arm of the Government was the civil plaintiff (namely the SEC), the Government took the position that it was entitled under the rules of civil procedure to a copy of the criminal discovery that had been provided by the U.S. attorney in the criminal action. While the case was complicated by the fact the discovery at issue was for wiretap recordings subject to a statutory privacy scheme limiting access to recordings, the district and appellate courts both addressed the issue of discoverability under the civil rules of discovery.

The Second Circuit began by explaining that "*[a]s part of criminal discovery*, the USAO provided" the criminal/civil defendant with copies of wiretapped recordings. *Id.* at 165 (emphasis added). The district court "ordered the [civil/criminal defendant] to produce the wiretapped conversations to the SEC *and to any other party to the civil action that demanded them.*" *Id.* (emphasis added). The Second Circuit explained that the wiretap statute did not preclude disclosing the recordings to civil litigants because the wiretap statute does "not address the situation of disclosures by criminal defendants, *who have been provided with wiretap fruits in criminal discovery*, and who are simultaneously defendants in a civil enforcement proceeding." *Id.* at 175 (emphasis added). Instead, that issue is governed by Federal Rule of Civil Procedure 26(b)(1), which permits civil litigants to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." *Id.* at 181 (citing FED. R. CIV. P. 26(b)(1)). The Second Circuit concluded that "the district court was correct that the SEC had a legitimate right of access to the wiretap materials" as a civil plaintiff but because the

legality of the wiretap had been challenged, the Second Circuit vacated the discovery order pending a ruling on that issue by the criminal court. *Id.* at 187

The *Rajaratnam* case is important to the position the Government now takes before this Court. *Rajaratnam* shows not only that there is no *per se* bar on discoverability of materials in civil litigation merely because they were provided as part of criminal discovery, but that the Government has previously taken the exact opposite position. Indeed, as the Second Circuit concluded, it was **because** the materials had been provided to the criminal defendants in discovery – and were now in their possession, custody and control – that allowed the SEC as a civil plaintiff to obtain copies of the wiretap recordings without violating the wiretap statute. In other words, the "fruits" of criminal discovery are subject to production in civil litigation under the normal analysis required by Rule 26. There is nothing "unprecedented" about a court doing so, as the government itself (acting through the SEC as civil plaintiff) has previously argued it should.

## CONCLUSION

To the extent the Government continues to maintain it has not returned the business records at issue to MSM, the case law on seized business records reflects they should have done so already. The only "dangerous precedent" the Court could set in this circumstance is to deny the Saint Thomas Entities' motion to compel production of clearly discoverable, routine business records merely because the Government seized them three years ago.

The Saint Thomas Entities do not object to the Court permitting the government to intervene for the limited purpose of asserting its opposition to the motion to compel filed by the Saint Thomas Entities against MSM and Greg Conigliaro. However, for the reasons stated herein, the Court should compel production of the routine business records.

Dated: October 7, 2015

OF COUNSEL:

Yvonne K. Puig*
Texas State Bar No. 16385400
yvonne.puig@nortonrosefulbright.com
Adam T. Schramek*
Texas State Bar No. 24033045
adam.schramek@nortonrosefulbright.com
Eric J. Hoffman*
Texas State Bar No. 24074427
eric.hoffman@nortonrosefulbright.com

NORTON ROSE FULBRIGHT US LLP
98 San Jacinto Blvd., Suite 1100
Austin, Texas 78701
(512) 536-2450
(512) 536-4598 (FAX)

Marcy Hogan Greer*
Texas State Bar No. 08417650
mgreer@adjtlaw.com

ALEXANDER DUBOSE JEFFERSON &
TOWNSEND LLP
515 Congress, Suite 2350
Austin, Texas 78701
(512) 482-9300
(512) 482-9303

*Appearing Pro Hac Vice

SAINT THOMAS WEST HOSPITAL F/K/A
ST. THOMAS HOSPITAL, SAINT THOMAS
HEALTH, AND SAINT THOMAS NETWORK

By their attorneys,

 /s/ Sarah P. Kelly
Sarah P. Kelly (BBO #664267)
skelly@nutter.com

NUTTER McCLENNEN & FISH LLP
Seaport West
155 Seaport Boulevard
Boston, Massachusetts 02210
(617) 439-2000
(617) 310-9461 (FAX)

**CERTIFICATE OF SERVICE**

      I certify that this document filed through the CM/ECF system will be served electronically to the registered participants identified on the Notice of Electronic Filing this 7th day of October, 2015.

                                                     */s/ Sarah P. Kelly*
                                                       Sarah P. Kelly

2902060.1