**EXHIBIT A**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | MDL No. 13-02419-RWZ |
| THIS DOCUMENT RELATES TO: All Cases. | |

**THE POST-CONFIRMATION OFFICER'S SURREPLY TO THE
TENNESSEE CLINIC DEFENDANTS' REPLY TO HIS OPPOSITION TO THE
MOTION TO COMPEL COMPLIANCE WITH SUBPOENA *DUCES TECUM* TO NECC**

Paul D. Moore, the Post-Confirmation Officer[1] (the "Post-Confirmation Officer") of New England Compounding Pharmacy, Inc. ("NECC"), hereby submits this surreply (the "Surreply") to the *Reply* (the "Reply") filed [Dkt. No. 2308] by Defendants Saint Thomas Outpatient Neurosurgical Center, LLC, Howell Allen Clinic, a Professional Corporation, John Culclasure, MD, Debra Schamberg, RN, CNOR, Vaughan Allen, MD, PC, and Donald E. Jones, MD (collectively, the "Tennessee Clinic Defendants") in support of their *Motion to Compel Compliance with Subpoena to NECC* [Dkt. No. 2190] and in response to the Post-Confirmation Officer's Opposition thereto.

In support of this Surreply, the Post-Confirmation Officer respectfully states as follows:

1. As part of their campaign to delay the resolution of this matter, the Tennessee Clinic Defendants' Reply mischaracterizes the Post-Confirmation Officer's diligent search and production of documents in response to their Subpoena as a document "dump of 100,000+ pages

---

[1] Unless otherwise set forth herein, capitalized words shall have the meaning ascribed to them in *The Post-Confirmation Officer's Opposition to the Tennessee Clinic Defendants' Motion to Compel Compliance with Subpoena to NECC* (the "Opposition") [Dkt. No. 2227].

of unorganized documents." (Reply at 2.) In reality, as set forth in the Post-Confirmation Officer's Opposition in paragraphs 17 through 36, nothing is further from the truth.

2. In connection with his *Responses and Objections to the Subpoena* (the "Subpoena Response"), the Post-Confirmation Officer searched the documents that had already been produced in the MDL proceeding and uploaded to the US Legal Repository maintained by the Plaintiffs' Steering Committee, and specifically identified 468 pages of documents by description, production date and Bates-stamp range (for ease of locating in the Repository) that were responsive to Requests 2, 5, 6, 9, 12, 17, 18, and 19 of the Subpoena.

3. In addition to the documents specifically identified by their Bates-stamp ranges as responsive to Requests 2, 5, 6, 9, 12, 17, 18, and 19, the Post-Confirmation Officer indicated in his Subpoena Response that additional documents responsive to Requests 10, 11, 15, and 16 of the Subpoena would be produced under separate cover via a password-secured FTP site. The Post-Confirmation Officer then conducted a search of the documents not yet produced in the MDL proceeding and produced an additional 143 pages of documents responsive to Requests 10, 11, 15, and 16 of the Subpoena to the Tennessee Clinic Defendants via the FTP site on May 1, 2015, which were identified by Bates-stamp range NECC_MDL000032792-NECC_MDL000032935.

4. The Post-Confirmation Officer objected to other document requests in the Subpoena as too broad, but offered to meet and confer with the Tennessee Clinic Defendants to narrow down such requests in order to identify potentially responsive documents relating to the Tennessee Clinic Defendants. The Tennessee Clinic Defendants waited seven weeks after receiving the Subpoena Response before contacting the Post-Confirmation Officer to meet and

DM3\3575821.8

confer, at which point the Post-Confirmation Officer suggested that such a meeting be deferred until after the Court had ruled on the choice of law issues in order to avoid wasting resources.[2]

5. Meanwhile, in anticipation of the June 4, 2015 Effective Date—and the date on which NECC's insurance would cease to cover the costs of responding to and defending discovery requests—the Post-Confirmation Officer conducted an additional search of all of the non-privileged documents in NECC's custody and control relating to five clinic defendants in the MDL proceeding, including Saint Thomas Outpatient Neurosurgical Center ("Saint Thomas"), one of the Tennessee Clinic Defendants. The Post-Confirmation Officer was being proactive by conducting this additional search prior to the Effective Date, to avoid having the bankruptcy estate, and ultimately the victims of the Outbreak, shoulder the cost of such production after NECC's insurance coverage stopped. This additional search resulted in the production of approximately 60,907 pages of documents that were uploaded directly into the fully searchable US Legal and Rust Omni repositories by Harris Beach.[3] The documents uploaded into the US Legal Repository were identified by Bates-stamp range NECC_MDL000034283-NECC_MDL000093814 and the HIPAA-protected documents uploaded into the Rust Omni Database were identified by Bates-stamp range NECC_MDL000093815-NECC_MDL000095189. These Bates-stamp ranges were provided to the Tennessee Clinic Defendants on June 18, 2015 and identified as a document production related to Saint Thomas.

6. **In addition** to (i) producing responsive documents already located in the repositories, (ii) making supplemental productions of responsive documents not already

---

[2] See Opposition at 4-5.

[3] Harris Beach was employed by the Post-Confirmation Officer (then serving in his capacity as Chapter 11 Trustee) as special counsel to, among other things, coordinate the collection, processing, review and production of NECC's documents. A more detailed history of Harris Beach's participation in this case is set forth in the Post-Confirmation Officer's Opposition.

3

produced in the MDL proceeding, (iii) identifying all of those documents by Bates-stamp range for the Tennessee Clinic Defendants' ease of locating them, and (iv) producing nearly 61,000 pages of additional potentially relevant documents they did not specifically request, the Post-Confirmation Officer has continued to remind the Tennessee Clinic Defendants that any and all of the remaining documents accessible to the Tennessee Clinic Defendants in both the US Legal and Rust Omni databases are fully searchable, which allows them to conduct any and all supplemental searches they feel may be relevant.

7. However, despite all of the diligent efforts expended by the Post-Confirmation Officer, the Tennessee Clinic Defendants are now proffering this Court a different narrative that suggests the Post-Confirmation Officer merely assigned the Tennessee Clinic Defendants a login name and password to the Repository and told them to "go fish." That narrative is absurd in light of what actually took place, as illustrated in detail above.

8. Finally, the Reply focuses on the Tennessee Clinic Defendants' request that the Post-Confirmation Officer produce an index of <u>all of the documents produced to date by NECC to anyone</u>, which, in addition to being prohibitively costly and irrelevant to the Tennessee Clinic Defendants' defenses, was not even originally identified as a document they were requesting in their Subpoena. (<u>See</u> Subpoena *Duces Tecum* [Dkt. No. 1782-1] at 13-17.) As they acknowledge in their Reply, the Tennessee Clinic Defendants requested this index for the first time in their Motion to Compel. Thus, the Tennessee Clinic Defendants' request for such an index not only was not theretofore requested by them, but also was made after the Court-imposed discovery deadline of July 30, 2015 (<u>See</u> Order of July 9, 2015 [Dkt. No. 2075] at 3). As such, it need not be addressed by this Court.

9. In any event, the index that the Tennessee Clinic Defendants are requesting does not exist,[4] as was made clear in the email exchange between counsel that was attached as Exhibit 1 to the Tennessee Clinic Defendants' Reply. (See Reply, Ex. 1.) Moreover, Harris Beach has estimated that the cost to prepare the requested index would be approximately $15,000.00 to $18,000.00. Given that the documents placed in the repositories are fully searchable, the Tennessee Clinic Defendants have failed to explain how such an index would be more useful to them than using keywords to locate relevant documents, or why they cannot prepare their own index.

10. The Post-Confirmation Officer has produced all of the reasonably-identifiable documents that are responsive to the Tennessee Clinic Defendants' Subpoena and, indeed, more. However, rather than expending their own efforts to support their defenses based on all of the specifically identified documents and utilizing the two fully-searchable repositories at their immediate disposal containing approximately 60,907 pages of additional potentially relevant documents they did not even request,[5] the Tennessee Clinic Defendants are instead doubling down on their untimely request that the Post-Confirmation Officer generate an index of every document produced by NECC in this MDL proceeding, regardless of the fact that the Tennessee Clinic Defendants did not ask that it be produced in the Subpoena or whether it is relevant.

---

[4] Paragraph 24 of the Opposition mistakenly indicated that "[i]ndices identifying the Bates-stamp ranges of documents responsive to each informal request for production of documents" were in the repository. (Opposition at 7.) In fact, as indicated in the email exchange in Exhibit 1 to the Reply, it should have said an index can be generated by US Legal that tracks all of the document productions that were received from various sources and uploaded into the Repository. Further, indices prepared by Harris Beach in connection with this Court's August 12, 2014 Order [Dkt. No. 1332] were uploaded into the US Legal Repository and are identified by the following Bates-stamp ranges: (1) NECC_MDL000032400-NECC_MDL000032408, and (2) NECC_MDL000032409- NECC_MDL000032677.

[5] In total, the combined repositories contain approximately 104,844 pages of documents produced by NECC.

5

Despite all of the Post-Confirmation Officer's efforts to provide the Tennessee Clinic Defendants with documents potentially relevant to their defenses without exposing the victims to the costs of making such production, he has ultimately found that no good deed goes unpunished in light of these ongoing discovery disputes and the Tennessee Clinic Defendants' new demand for an index.

11.     Accordingly, for all of the reasons set forth herein, and in the Post-Confirmation Officer's Opposition to the Tennessee Clinic Defendants' Motion to Compel, the Post-Confirmation Officer submits that NECC has more than fully complied with any and all obligations it had pursuant to the Subpoena and Fed. R. Civ. P. 45 and that the Tennessee Clinic Defendants' Motion to Compel should be denied, and further submits that to the extent the Court believes additional searches and/or work needs to be done, the cost and expense of such production—including the cost of generating the index—should be borne by the Tennessee Clinic Defendants themselves.

[*Remainder of Page Intentionally Left Blank.*]

WHEREFORE, the Post-Confirmation Officer respectfully requests that this Court (i) find that the Post-Confirmation Officer has reasonably complied with NECC's obligations pursuant to Fed. R. Civ. P. 45 in response to the Tennessee Clinic Defendants' Subpoena *Duces Tecum* dated April 17, 2015, (ii) deny the Tennessee Clinic Defendants' Motion to Compel, and (iii) grant him such other and further relief as this Court deems just and proper.

> Respectfully submitted,
>
> PAUL D. MOORE, THE POST-CONFIRMATION OFFICER OF NEW ENGLAND COMPOUNDING PHARMACY, INC.,
>
> By his attorneys,
>
> */s/ Michael R. Gottfried*
> Michael R. Gottfried, Esq. (BBO #542156)
> Keri L. Wintle, Esq. (BBO #676508)
> DUANE MORRIS LLP
> 100 High Street, Suite 2400
> Boston, MA 02110-1724
> Telephone: (857) 488-4200
> KLWintle@duanemorris.com
> MRGottfried@duanemorris.com

Dated:  October 9, 2015