UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) ) ) ) ) ) | MDL No. 13-2419-RWZ |
| This Document Relates To: All Tennessee Actions Against St. Thomas Entities |  |  |

ORDER ON PLAINTIFFS' STEERING COMMITTEE'S MOTION TO COMPEL
THE SAINT THOMAS ENTITIES TO PRODUCE DOCUMENTS
[Docket No. 2260]

October 15, 2015

Boal, M.J.

The Plaintiffs' Steering Committee ("PSC") moves for an order compelling the Saint Thomas Entities[1] to produce certain categories of documents. Docket No. 2260. For the following reasons, this Court grants in part and denies in part the motion.

I.   FACTUAL AND PROCEDURAL BACKGROUND

This litigation involves claims for wrongful death and personal injury arising out of the administration of an injectable steroid, methylprednisolone acetate ("MPA"), manufactured by New England Compounding Pharmacy, Inc. ("NECC"). The complaints allege, in substance, that NECC produced contaminated MPA that led to serious fungal infections and, in some cases, death. Some plaintiffs have brought claims against numerous non-NECC parties, including the Saint Thomas Entities and Saint Thomas Outpatient Neurosurgical Clinic ("STOPNC"). The

---

[1] The "Saint Thomas Entities" refers to Saint Thomas Health, Saint Thomas Network, and Saint Thomas Hospital West f/k/a Saint Thomas Hospital.

1

plaintiffs allege that STOPNC purchased contaminated injections from NECC and administered them to patients. Docket No. 2261 at 3. They also allege that STOPNC, its employees and agents decided to buy MPA from NECC without undertaking due diligence because it was the cheapest steroid available. Id.

The plaintiffs allege that STOPNC is the actual or apparent agent of the Saint Thomas Entities. Id. at 4. STOPNC is co-owned by Saint Thomas Network and Howell Allen Clinic. Id. According to the plaintiffs, Saint Thomas Network is an "empty shell" with no employees. Id. Saint Thomas Network is owned by Saint Thomas Health, the same entity that owns Saint Thomas Hospital. Id. The plaintiffs allege that the Saint Thomas Entities and STOPNC hold themselves out to be one singular entity. Id. at 5. For example, when patients entered STOPNC, they were greeted by a receptionist wearing a nametag bearing the name "Saint Thomas Hospital." Id. at 4. STOPNC and the Saint Thomas Entities share the same location. Id. at 5. In addition, they intentionally foster the public perception that they are one united entity through a marketing campaign highlighting the tag line: "St. Thomas Health: One Name, One Healing Community." Id. Based on these allegations, the plaintiffs assert, among others, claims for agency, apparent agency, and respondeat superior. Id. at 6.

The PSC seeks an order compelling the Saint Thomas Entities to produce the following documents: (1) the internal branding and marketing surveys performed annually by Saint Thomas Health and documents related to focus groups conducted for the purpose of helping Saint Thomas develop a "unified brand"; (2) all managed care contracts for which the Saint Thomas Entities negotiated on behalf of STOPNC; and (3) documents sufficient to identify the availability of MPA at the five hospitals operated by Saint Thomas Health. Docket No. 2261 at 8. The PSC filed its motion on September 17, 2015. Docket No. 2260. The Saint Thomas

Entities filed an opposition on October 5, 2015.  Docket No. 2292.  The Court heard oral argument on October 14, 2015.

II.     ANALYSIS

    A.     Standard Of Review

"Discovery procedures set forth in the Federal Rules of Civil Procedure seek to further the interests of justice by minimizing surprise at trial and ensuring wide-ranging discovery of information."  Cartel Asset Mgmt. v. Ocwen Fin. Corp., No. 01-cv-01644, 2010 WL 502721, at *9 (D. Colo. Feb. 8, 2010) (citing United States ex rel. Schwartz v. TRW, Inc., 211 F.R.D. 388, 392 (C.D. Cal. 2002)).  To that end, Rule 26(b) permits "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . ."  Fed. R. Civ. P. 26(b)(1).  "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Id.  Rule 26(b)(1) generally permits liberal discovery of relevant information.  Baker v. Liggett Group, Inc., 132 F.R.D. 123, 125 (D. Mass. 1990).  As the Supreme Court has instructed, because "discovery itself is designed to help define and clarify the issues," the limits set forth in Rule 26 must be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case."  Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978).

There are limits, however, on the scope of discovery.  A court must limit discovery if it determines that the discovery sought is (1) unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (3) the burden or expense of the proposed discovery outweighs its

likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the projected discovery in resolving the issues.  See Fed. R. Civ. P. 26(b)(2)(C).

      B.      <u>Marketing And Branding Surveys And Focus Groups</u>

First, the PSC seeks an order compelling the Saint Thomas Entities to produce the marketing studies and focus groups identified in the PSC's Requests for Production of Documents Nos. 51-54 and 57-58.  Docket No. 2261 at 8-11.  Specifically, the PSC had requested the following documents:

(1) The results of all "brand attribute surveys" conducted by Saint Thomas Hospital and/or Saint Thomas Health referenced in Rebecca Climer's deposition at page 23, line 11;

(2) The results of all "annual surveys" conducted by Saint Thomas Hospital and/or Saint Thomas Health referenced in Rebecca Climer's deposition at page 23, line 23;

(3) All transcripts of any focus groups referenced in Rebecca Climer's deposition at page 23, line 20 and page 142, lines 1-7;

(4) The focus group summaries prepared by Tombras referenced in Rebecca Climer's deposition at page 142, lines 14-15;

(5) All documents relied upon by Saint Thomas Health and/or Saint Thomas in development of the "One Name, One Healing Community" advertising campaign; and

(6) All documents related to any focus group conducted by Saint Thomas Health and/or Saint Thomas Hospital.

Docket No. 2261 at 8-10.

The PSC maintains that, in or around 2010, Saint Thomas Health had a goal of implementing a unified brand across Saint Thomas Health's healthcare facilities and that as part

4

of that marketing campaign, it conducted several surveys and focus groups related to "mind awareness" and "preferences for service lines." Docket No. 2261 at 10. It also maintains that the CEO of Saint Thomas Health sought to implement the "One Name, One Healing Community" campaign in 2010, two years before the outbreak. Id. The Saint Thomas Entities, on the other hand, maintain that the "One Name, One Healing Community" campaign did not commence until 2013 and that the Saint Thomas Entities never advertised STOPNC's services. Docket No. 2292 at 6-7. In addition, the Saint Thomas Entities argue that this information is not relevant because it would show what others would believe about the relationship between the Saint Thomas Entities and STOPNC, not what the plaintiffs in this case believed about the relationship. See id. at 4-6.

The Court finds that the PSC has not sufficiently shown the relevance of marketing, brand surveys and focus groups. First, as worded, the requests could cover surveys the hospital conducted that had nothing to do with branding. In addition, the testimony cited by the PSC in support of their request does not show that any of the focus groups or surveys mentioned by Ms. Climer were relevant to the public's perception as to whether the Saint Thomas Entities and STOPNC were a singular entity. Accordingly, the Court denies the PSC's request for information regarding marketing and branding surveys and focus groups.

    C.    <u>Managed Care Contracts</u>

The PSC also seeks copies of all managed care contracts for which Saint Thomas Health negotiated on STOPNC's behalf. Docket No. 2261 at 11. The Saint Thomas Entities have produced the agreement with Blue Cross Blue Shield ("BCBS") as an "exemplar", but have refused to produce other agreements. Docket No. 2292 at 10.

The PSC argues that these contracts are relevant to the plaintiffs' claims that STOPNC put profit over patient safety. Docket No. 2261 at 12. The PSC states that the BCBS agreement produced by the Saint Thomas Entities show that insurance companies did not pay for drugs like MPA separately from the injection. Id. Therefore, STOPNC had the incentive to pay as little as possible for drugs it purchased. Id. They also argue that the contracts are relevant to whether STOPNC was a "seller" of drugs as they demonstrate that STOPNC was specifically reimbursed for the drugs used in treatment at its facility. Id.

The Court finds these arguments persuasive and holds that the agreements are discoverable.

D.      Stock Of MPA At Other Hospitals

Finally, the PSC seeks documents showing the supplies of MPA at Saint Thomas Health's five hospitals. The PSC argues that the documents are relevant because STOPNC claims that it had to procure MPA from a compounding pharmacy because of a drug shortage at the time. Docket No. 2261 at 13-14. The Saint Thomas Entities state that STOPNC has never claimed that it ran out of MPA and was forced to buy it from NECC. Docket No. 2292 at 11. Instead, it said MPA was backordered and that based on increased demand and higher prices, it was concerned about being able to obtain a consistent supply of MPA in the future. Id. at 11-12. The Court finds that the PSC has not shown that the supplies of MPA at Saint Thomas Health's hospitals, which were separate entities from STOPNC, are relevant to this action. Accordingly, the Court denies the motion with respect to this request.

III.	ORDER

For the foregoing reasons, the Court grants in part and denies in part the PSC's motion to compel.  The Saint Thomas Entities shall produce all responsive managed care contracts within two weeks.

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge