

Volume 16 | Issue 1                                                    Article 3

1-1-1970

# Written Depositions under Federal and State Rules as Cost-Effective Discovery at Home and Abroad

John R. Schmertz Jr.

Follow this and additional works at: http://digitalcommons.law.villanova.edu/vlr

 Part of the Civil Procedure Commons

Recommended Citation

John R. Schmertz Jr., *Written Depositions under Federal and State Rules as Cost-Effective Discovery at Home and Abroad*, 16 Vill. L. Rev. 7 (1970).
Available at: http://digitalcommons.law.villanova.edu/vlr/vol16/iss1/3

This Article is brought to you for free and open access by Villanova University School of Law Digital Repository. It has been accepted for inclusion in Villanova Law Review by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Case 1:13-md-02419-RWZ Document 2353-2 Filed 10/23/15 Page 2 of 51

# WRITTEN DEPOSITIONS UNDER FEDERAL AND STATE RULES AS COST-EFFECTIVE DISCOVERY AT HOME AND ABROAD

## JOHN R. SCHMERTZ, JR.*

### I. INTRODUCTION

IN RECENT DECADES there has been a great increase in the role of civil litigation as a vehicle of social and political expression.[1] Many civil suits are brought to enforce newly created statutory civil rights. Others aim to effectuate substantive interests brought to the surface by recent Supreme Court decisions. In many of these suits the plaintiffs are disadvantaged individuals or groups.[2] In others, public or private legal aid agencies with limited budgets provide the main legal support. Along with these special kinds of litigation, both state and federal dockets contain numerous cases of a more traditional stamp wherein low and middle income litigants confront the mounting cost of suing and defending.[3]

Just as arduous preparation is essential to effective trial presentation, so the key to preparation of the facts is discovery.[4] Particularly for parties lacking large sums to pay investigators, the right to compel fact discovery, especially from hostile opponents and from uncooperative or indifferent witnesses, seems fundamentally allied to procedural due process.[5] Under our Anglo-American principle of "party presentation," the fact finder, whether judge or jury, passively listens to evidence unearthed by the adversaries. We require the fact finder to make his ultimate determination based solely on those facts presented. Inadequate access to pre-trial discovery can turn a potentially strong

---

* Professor of Law, Georgetown University Law Center, A.B., College of the Holy Cross, 1951; LL.B., Georgetown University, 1958, LL.M., 1959. The author gratefully acknowledges the basic research assistance rendered by Messrs. Harry J. Stevens, III, Harold E. Cummings, and Max L. Lieberman of the senior class at the Georgetown Law Center.

1. *See, e.g.,* Brown v. Board of Educ., 347 U.S. 483 (1954); Baker v. Carr, 369 U.S. 186 (1962); N.A.A.C.P. v. Button, 371 U.S. 415 (1963).

2. *See* Carlin & Howard, *Legal Representation and Class Justice,* 12 U.C.L.A.L. REV. 381 (1965).

3. *See* J. Schmertz, *The Indigent Civil Plaintiff in the District of Columbia: Facts and Commentary,* 27 FED. B.J. 235 (1967).

4. "The new [federal] rules . . . invest the deposition-discovery process with a vital role in the preparation for trial." Hickman v. Taylor, 329 U.S. 495, 501 (1947). One writer states that pre-trial examination is the most valuable aid a careful trial lawyer possesses. *See* A. CUTLER, SUCCESSFUL TRIAL TACTICS 31 (1949). *See also* W. GLASER, PRE-TRIAL DISCOVERY AND THE ADVERSARY SYSTEM 53 (1966); Speck *The Use of Discovery in United States District Courts,* 60 YALE L.J. 1132 (1951).

5. J. FRANK, COURTS ON TRIAL 46–48 (1947). *See* Note, *Litigation Costs: The Hidden Barrier to the Indigent,* 56 GEO. L.J. 516, 543 (1968).

(7)

Case 1:13-md-02419-RWZ Document 2353-2 Filed 10/23/15 Page 3 of 51

case into one characterized by incompleteness, uncertainties, and over-all weakness.[6] It is submitted that our system cannot long continue to risk unjust judgments resulting from the inability of one side to afford effective pre-trial discovery.

In an earlier study, this author described the oral deposition as the best tool to explore exhaustively the knowledge of parties and witnesses.[7] Unfortunately not all parties can equally afford this device. Moreover, even if they could, not every case or witness will justify the additional expense. The Federal Rules of Civil Procedure and the rules of many states provide three other discovery techniques. Adverse parties, for example, can be questioned under federal rule 33 by directly mailing them a simple list of written interrogatories.[8] This is an extremely useful and relatively inexpensive method, but it does not provide for cross-examination. The pre-trial production of documents and objects for purposes of inspection and copying under federal rule 34 is also a common discovery device.[9] But invocation of this method usually requires descriptive information to designate the desired documents or things. Moreover, both of these rules secure data from parties only. The third device is the written deposition under rule 31, or as it is now called in the federal system, "deposition upon written questions."[10] It appears to be one of the least used of the

---

6. "It [discovery] makes available in a simple, convenient, and often inexpensive way facts which otherwise could not have been proved, except with great difficulty and sometimes not at all." 4 J. MOORE, FEDERAL PRACTICE ¶ 26.02[2] (2d ed. 1966) [hereinafter cited as MOORE].

7. *See* Schmertz, *Oral Depositions: The Low Income Litigant and the Federal Rules,* 54 VA. L. REV. 391 (1968).

8. FED. R. CIV. P. 33, *Proposed Amendments to the Federal Rules of Civil Procedure Relating to Discovery,* 48 F.R.D. 487, 520 (1970) (Effective July 1, 1970) [hereinafter cited as *Amendments*]. These proposed amendments were published under the above title with the altered former provisions included. 48 F.R.D. 487 (1970). The amendments were adopted in their entirety by order of the Supreme Court of the United States on March 30, 1970, to take effect on July 1, 1970. 48 F.R.D. 457 (1970).

9. FED. R. CIV. P. 34, *Amendments,* 48 F.R.D. at 525.

10. FED. R. CIV. P. 31, *Amendments,* 48 F.R.D. at 516.
    *Rule 31 Depositions Upon Written Questions:*
    (a) *Serving Questions; Notice.* After commencement of the action, any party may take the testimony of any person, including a party, by deposition upon written questions. The attendance of witnesses may be compelled by the use of subpoena as provided in Rule 45. The deposition of a person confined in prison may be taken only by leave of court on such terms as the court prescribes.
    A party desiring to take a deposition upon written questions shall serve them upon every other party with a notice stating (1) the name and address of the person who is to answer them, if known, and if the name is not known, a general description sufficient to identify him or the particular class or group to which he belongs, and (2) the name or descriptive title and address of the officer before whom the deposition is to be taken. A deposition upon written questions may be taken of a public or private corporation or a partnership or association or governmental agency in accordance with the provisions of Rule 30(b)(6).
    Within 30 days after the notice and written questions are served, a party may serve cross questions upon all other parties. Within 10 days after being served with cross questions, a party may serve redirect questions upon all other

http://digitalcommons.law.villanova.edu/vlr/vol16/iss1/3

Case 1:13-md-02419-RWZ   Document 2353-2   Filed 10/23/15   Page 4 of 51
Schmertz: Written Depositions under Federal and State Rules as Cost-Effecti

discovery tools.[11]

This study will concentrate on federal rule 31 written depositions and closely similar state rules with several purposes in mind. Initially, this procedure will be examined and its strengths and weaknesses evaluated. To provide a manual for attorneys and public agencies representing low income civil litigants and a guide to further research on lower cost discovery, the writer has marshalled every source deemed useful. Recommendations are made for future improvements in the rule 31 type of deposition.

The fundamentals of rule 31 procedure are not complex. A litigant desiring to initiate a deposition of this type must file and serve written notice on all parties to the case.[12] With the written notice he must include his written "direct" interrogatories. Other parties have a certain period of time to prepare written cross-interrogatories for the deponent. These cross-interrogatories must then be served on all parties. Shorter periods of time are allowed for redirect and for recross questions. When the interchange of questions between parties is complete, the party seeking discovery, having made previous arrangements with a qualified officer to administer the deposition, forwards the questions to that officer. At the deposition, the officer propounds all of the questions and makes a verbatim record of the answers. He then forwards the questions and the transcribed answers to the court in which the action is pending.

By the summer of 1970, thirty-eight states had adopted rules identical to — or varying only slightly from — federal rule 31.[13] Through-

---

parties. Within 10 days after being served with redirect questions, a party may serve recross questions upon all other parties. The court may for cause shown enlarge or shorten the time.

(b) *Officer To Take Responses and Prepare Record.* A copy of the notice and copies of all questions served shall be delivered by the party taking the deposition to the officer designated in the notice, who shall proceed promptly, in the manner provided by Rule 30(c), (e), and (f), to take the testimony of the witness in response to the questions and to prepare, certify, and file or mail the deposition, attaching thereto the copy of the notice and the questions received by him.

(c) *Notice of Filing.* When the deposition is filed the party taking it shall promptly give notice thereof to all other parties.

11. One survey indicated that out of ninety-seven depositions taken, five were on written questions. Wright, Wegner & Richardson, *The Practicing Attorney's View of the Utility of Discovery,* 12 F.R.D. 97 (1952). A more recent and comprehensive field study of discovery reported that only two percent of the depositions taken were taken under rule 31. W. GLASER, *supra* note 4, at 53. In the spring of 1969, Mr. Harold E. Cummings, one of the author's research assistants, surveyed the civil actions filed on the dockets of the U.S. District Court for the District of Columbia during calendar year 1966 to ascertain the degree of use of written depositions. The even numbered cases (every other case) were examined. Of the 1704 actions examined, twenty-two percent had rule 33 interrogatories and eighteen percent contained oral depositions. No case on this list involved a rule 31 written deposition.

12. FED. R. CIV. P. 31(a), *Amendments,* 48 F.R.D. at 516.

13. ALA. CODE tit. 7, § 459 (1958); ALASKA R. CIV. P. 31 (1963); ARIZ. R. CIV. P. 31 (1956); ARK. STAT. ANN. § 28–353 (1947); CALIF. CODE CIV. P. § 2020 (1958); COL. R. CIV. P. 31 (1970); DEL. SUPER. CT. (CIV.) R. 31 (1948); FLA.

10                    VILLANOVA LAW REVIEW              [VOL. 16: p. 7

out this article, case authority is generally limited to the federal courts and to the states listed in the preceding footnote.[14] An informal questionnaire was also sent to selected District of Columbia practitioners to gather the results of their experiences, if any, with written depositions.[15]

The study is divided into three major sections. The first considers the procedural regulations surrounding the operation of rule 31. The second section discusses the views of courts and commentators concerning the litigation contexts in which rule 31 may or may not be effective. The final section evaluates the pertinent 1970 federal discovery amendments and recommends further changes.

## II. PRINCIPAL WRITTEN DEPOSITION PROCEDURES

### A. General Scope

Under the federal rules, and under some state procedures, counsel may make wide use of written depositions. Rule 31 depositions may be used either as a discovery tool or as an intended substitute for the deponent's trial testimony or both.[16] Leave of court is no longer required where a federal plaintiff desires to take a written deposition within 20 days after commencement of the action.[17] When a federal litigant desires to examine a person confined, for example, in a prison or a mental institution, he then must secure the court's permission.[18] The same standard of relevancy applies for all discovery. "Parties

---

STAT. ANN. R. CIV. P. 1.320 (1957); GA. CODE ANN. § 81A-131 (1967); IDAHO R. CIV. P. 31 (1958); ILL. R. CIV. P. 210 (1967); IND. R. CIV. P. 31 (1969); IOWA R. CIV. P. 150, 151, 158 (1950); KAN. CIV. P. STAT. ANN. § 60-231 (Vernon 1964); KY. R. CIV. P. 31 (1969); LA. CODE CIV. P. ANN. Arts. 1471-73 (West, 1960); ME. R. CIV. P. 31 (1964); MD. R. CIV. P. 405(b)(1), (2), 406(a), 409(b) (1957); MICH. STAT. ANN. GEN. CT. RULES 307 (1963); MINN. R. CIV. P. 31 (1968); MO. R. CIV. P. 57.47(a)-(d) (1960); MONT. R. CIV. P. 31 (1962); NEB. REV. STAT. § 25-1267.28-1267.31 (1964); N.J. R. CIV. P. § 4.21 (1953); N.M. STAT. ANN. § 21-1-1 (31) (1953); NEV. R. CIV. P. 31 (1953); N.C. R. CIV. P. 31 (1967); N.D. CENT. CODE R. CIV. P. 31 (1957); OHIO R. CIV. P. 31 (1970); PA. R. CIV. P. 4004 (1954); R.I. R. CIV. P. 31; S. DAK. R. CIV. P. 31 (1969); TENN. CODE ANN. § 24-196 (1956); UTAH CODE ANN. R. CIV. P. 31 (1953); VA. CODE ANN. § 8-305 (1950); WASH. RULES FOR SUPER. CTS. 31 (1951); W. VA. R. CIV. P. 31 (1966); WYO. R. CIV. P. 31 (1957).

In 1969, the U.S. Court of Claims adopted a deposition rule similar to FED. R. CIV. P. 31. *See* Ct. Cl. R. 85.

14. A number of valuable decisions from the New York courts are also cited and discussed.

15. During the summer of 1968, the author sent questionnaires on rule 31 to a non-random list of 50 District of Columbia attorneys believed to be in active court practice. Thirty questionnaires were returned. Though the scope of the survey was intentionally modest, the responses contained many valuable opinions on discovery based on personal experience, and will be referred to throughout this article.

16. FED. R. CIV. P. 32, *Amendments*, 48 F.R.D. at 517-20. Under federal practice and in those states which have adopted essentially the same deposition rules, it is often difficult to be sure whether a party is taking a deposition solely for discovery, or for use as future trial evidence. The great majority of reported cases seemingly involve mixed purposes.

17. FED. R. CIV. P. 31(a), *Amendments*, 48 F.R.D. at 516.

18. FED. R. CIV. P. 31(a), *Amendments*, 48 F.R.D. at 516.

Case 1:13-md-02419-RWZ   Document 2353-2   Filed 10/23/15   Page 6 of 51
Schmertz: Written Depositions under Federal and State Rules as Cost-Effecti

may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . ."[19] Federal rule 27 also provides that the written deposition may be used as a method for taking testimony prior to bringing suit or during the pendency of an appeal.[20]

State rules patterned on federal rule 31 also apply in a wide variety of litigation. In addition to the usual tort and contract cases, a number of states permit written interrogatories in probate and domestic relations matters.[21] Although federal and state rules spell out the qualifications for persons who may administer depositions, the propriety of certain times and places, the nature of the notice necessary and the manner of taking, mutual written stipulations can usually modify these requirements as between the parties.[22]

The formal initiation of a written deposition involves three steps. First, the discoverer has to prepare a set of direct interrogatories. Secondly, he must draw up an appropriate notice giving a specific, or at least a generic, description of the deponent and the name or descriptive title and address of the officer. Third, the party must serve both documents together on all parties in the case.[23] Within thirty days of service, the other parties may serve cross-interrogatories. Within ten days thereafter, the deposing party may serve redirect interrogatories. The other parties also have ten days to serve recross questions.[24] If any party feels there are irregularities in the notice, he is obliged to serve prompt written objections upon the discoverer; otherwise, there will be a waiver.[25]

---

19. FED. R. CIV. P. 26(b)(1), *Amendments,* 48 F.R.D. at 493.

20. FED. R. CIV. P. 27. *See also* 4 MOORE ¶ 27.17. All discovery devices, including rule 31, may now be used by a judgment creditor in aid of execution of his judgment. FED. R. CIV. P. 69, *Amendments,* 48 F.R.D. at 544.

21. *See, e.g., In re* Estes' Estate, 158 So. 2d 794, 797. (Fla. Ct. App. 1963) (will contest); Reynolds v. Reynolds, 217 Ga. 234, 123 S.E.2d 115 (1961) (divorce); State *ex rel.* Chandler v. Scott, 427 S.W.2d 759 (Mo. G. App. 1968) (divorce); Pupo v. Pupo, 36 Pa. D. & C.2d 620 (Northcumberland County C.P. 1965) (divorce). For the limitations on discovery in workmen's compensation proceedings in New Mexico, *see* Reed v. Fish Eng'r Corp., 74 N.M. 45, 52, 390 P.2d 283, 288–89 (1964). *Cf.* Allied Chem. & Dye Corp. v. Fasano, 47 Del. 546, 94 A.2d 600 (1953).

22. *See* FED. R. CIV. P. 29, *Amendments,* 48 F.R.D. at 508. *See also, e.g.,* ILL. R. CIV. P. § 201(c)(2)(b); MICH. R. CIV. P. § 307.1; PA. R. CIV. P. 4002. FED. R. CIV. P. 29 now provides: "Unless the court orders otherwise, the parties may by written stipulation (1) provide that depositions may be taken before any person, at any time or place, upon any notice, and in any manner and when so taken may be used like other depositions . . . ." *Amendments,* 48 F.R.D. at 508.

23. FED. R. CIV. P. 31(a), *Amendments,* 48 F.R.D. at 516.

24. *Id.*

25. FED. R. CIV. P. 32(d)(1), *Amendments,* 48 F.R.D. at 519. Upon reasonable grounds a party should be allowed to withdraw his notice and to cancel the taking of a written deposition. One federal court allowed a party to withdraw from an agreement to take written depositions of three witnesses residing abroad, the reason given being that the party had lost confidence in their veracity. Gill v. Stolow, 16 F.R.D. 9 (S.D.N.Y. 1954).

Case 1:13-md-02419-RWZ Document 2353-2 Filed 10/23/15 Page 7 of 51
*Villanova Law Review, Vol. 16, Iss. 1 [1970], Art. 3*

There are relatively few guidelines delineating the scope of written discovery. A party may inquire into all matters relevant to the subject matter,[26] but is barred from access to matters subject to an evidentiary privilege.[27] Interrogatories may seek relevant information which is inadmissible under the trial rules of evidence, if it is reasonably calculated to lead to admissible evidence.[28]

## B. Preparation of the Interrogatories

In drafting direct and cross-questions the parties tend to follow customary trial restrictions. Direct interrogatories should ordinarily avoid "leading" the witness toward a desired answer,[29] whereas in cross-examination such questions are traditional. The discoverer may direct leading questions at a deponent who fits the definition of an "adverse" party or "hostile" witness pursuant to federal rule 43(b).[30] The scope of cross-interrogatories is usually not as strictly limited to the subject matter of the direct as in the usual federal trial.[31]

A significantly broader criteria of relevance applies during pre-trial discovery. Depositions serve primarily as an investigative tool employed to turn up new clues or leads to admissible evidence.[32] On the other hand, if a novel or entirely unexpected line of inquiry develops during a written deposition, the court may impose limits based on relevancy. For example, one federal court vacated a notice to depose a witness on certain points of foreign law which had not been pleaded.[33] The "law of the case" doctrine may lead a judge to follow earlier rulings concerning the relevancy of similar interrogatories in the same case.[34]

---

26. *Cf.* Bullard v. Universal Millwork Corp., 25 F.R.D. 342 (E.D.N.Y. 1960).

27. *Cf.* Schechet v. Kesten, 372 Mich. 346, 126 N.W.2d 718 (1964). In Cronan v. Dewavrin, 9 F.R.D. 337 (S.D.N.Y. 1949), the court held that an adverse party could not have interrogatories directed to a foreign government official stricken on the basis of governmental immunity, since only the non-party witness had standing to raise the privilege, and did not choose to do so.

28. FED. R. CIV. P. 26(b). *See* Tsangarakis v. Panama S.S. Co., 41 F.R.D. 219 (E.D. Pa. 1966) (hearsay and opinions). While not strictly a "privilege," depositions may not inquire into "work product" of an attorney. *See* FED. R. CIV. P. 26(b)(3), *Amendments*, 48 F.R.D. at 494.

29. *Cf.* Awani v. Public Nat'l Bank of N.Y., 12 F.R.D. 263, 265 (S.D.N.Y. 1952); Cannon v. Kinney, 3 Del. 317 (1841).

30. *Cf.* FED. R. CIV. P. 30(c), *Amendments*, 48 F.R.D. at 510.

31. Thus the only practical effect in discovery examinations of the restriction upon the scope of cross-examination is to prevent the use of leading questions when the interrogation is upon issues which were not the subject matter of the examination in chief, and the deponent is neither an unwilling nor a hostile witness nor an adverse party nor an officer, director, or managing agent of a public or private corporation or of a partnership or association which is an adverse party. 4 MOORE ¶ 26.26 at 1640.

32. *Cf.* Cronan v. Dewavrin, 9 F.R.D. 337 (S.D.N.Y. 1949).

33. *Cf.* Empresa Agricola Chicama Ltda. v. Amtorg Trading Corp., 57 F. Supp. 649, 650 (S.D.N.Y. 1944).

34. *Cf.* Awani v. Public Nat'l Bank of New York, 12 F.R.D. 263 (S.D.N.Y. 1952).

Schmertz: Written Depositions under Federal and State Rules as Cost-Effecti

While leading questions on direct interrogatories are often objectionable, the courts also criticize some types of over-broad, non-leading questions. In one state court, a party objected to the following direct interrogatory:

> Do you know anything concerning the matters in question which may tend to be a benefit and advantage to the plaintiff? If the answer is "yes," answer it as fully and at large as though you have been thoroughly interrogated concerning the same.[35]

The court held that although such "catch-all" questions are quite common they negate any realistic opportunity to frame effective written cross-interrogatories.[36]

Even where direct questions are reasonably specific, there is an inherent difficulty in framing satisfactory written cross-examination. In recognition of this problem, rule 31 and similar state rules provide that, for good cause, a court may permit oral cross-examination.[37] To protect the discoverer who is relying on written questions, the court may strictly limit the opposing party to matters within the scope of the examination covered by the written direct.[38] In other situations, the court may give the discoverer the specific option of having the direct and redirect either in writing or in oral form.[39] These theoretical options may mean little to the party who chose rule 31 because he could not afford to have his counsel conduct oral discovery.

Framing effective written cross-interrogatories is extremely difficult because the attorney cannot specifically predict the answers to the direct examination.[40] To avoid this problem, some litigants have sought special leave to get answers to the direct questions prior to having to frame cross-interrogatories. These efforts have made little headway in the reported federal decisions.[41] In one special case, the defendant

---

35. Lopez v. International Aircraft Trading Co., 269 App. Div. 79, 54 N.Y.S.2d 109 (1945).

36. *Id.* at 80, 54 N.Y.S.2d at 110.

37. Fed. R. Civ. P. 26(c), *Amendments,* 48 F.R.D. at 510. *See* Walborsky v. Wolf, 28 App. Div. 2d 1120, 285 N.Y.S.2d 176 (1967); Milano Constr. Co. v. Frye, Inc., 5 Pa. D. & C.2d 705 (Erie C.P. 1955). In one writer's experience, the motion to substitute oral for proposed written interrogatories is a common occurrence. *See* H. Hickam, A Civil Action From Pleadings To Opening Of Trial 124–25 (1953).

38. *Cf.* Stefanich v. United States, 9 Fed. Rules Serv. 31d. 23, Case 1 (D.D.C. 1944).

39. *Cf.* Winograd Brothers, Inc. v. Chase Bank, 31 F. Supp. 91 (S.D.N.Y. 1939).

40. *See* Hickam, *supra* note 37, at 124–25. *Cf.* Beverly Hills Nat'l Bank & Trust Co. v. Superior Court, 195 Cal. App. 2d 861, 16 Cal. Rptr. 236 (1961).

41. *See* Baron v. Leo Feist, Inc., 7 F.R.D. 71 (S.D.N.Y. 1946), denying the plaintiff's request. *Compare* Gitto v. "Italia," Società Anonima Di Navigazione Genova, 28 F. Supp. 309, 310–11 (E.D.N.Y. 1939), where the court permitted a party without funds to obtain the answers to his opponent's oral direct examination before being required to file written cross questions. *See also* Higgins v. Shenango Pottery Co., 12 F.R.D. 510, 513 (W.D. Pa. 1952).

Case 1:13-md-02419-RWZ Document 2353-2 Filed 10/23/15 Page 9 of 51
*Villanova Law Review, Vol. 16, Iss. 1 [1970], Art. 3*

claimed that the plaintiff's deponent was the real party in interest and
also asserted his inability to obtain this person's attendance at the trial.
The court thereupon ordered the deponent to answer several of defend-
ant's questions concerning his interest in the case before requiring
defendant to serve the rest of his cross-interrogatories on the merits.[42]
State decisions are even less favorable. Conceding that the procedure
may be helpful to the cross-examiner, one court nevertheless urged
somewhat speculative objections to delayed cross-interrogatories such
as loss of time and possible intervening death or unavailability of the
witness.[43] Where the witness is not at a great distance, it may be
preferable to have the entire deposition taken orally rather than to
change the customary sequence of the written questions.[44]

   As in oral deposition and trial procedure, the *opportunity* to
cross-examine by written deposition is what is crucial rather than the
actual exercise of that right. It is usually felt that a party may waive
the right to submit cross-interrogatories under rule 31 by either a
complete omission or a tardy submission of such questions.[45] Such
waivers are seldom wise, since the discoverer may introduce the direct
interrogatories and answers at trial creating a one-sided or incomplete
impression of the facts.[46]

   If there has been no reasonable opportunity to submit timely
cross-interrogatories, the court will usually permit the party to submit
cross-interrogatories at a later time.[47] In rare cases, a discoverer may
offer a deposition at trial before the running of the time period for
submitting cross questions. Most courts would probably exclude such
a deposition by holding that the opposing party had been unfairly
denied his right to cross-examine.[48] If the cross-interrogatories are
timely filed but inadequately answered, the cross-examining party
could move at pre-trial under rule 37(a) for an order to com-
pel answers,[49] or possibly under rule 32(d) to suppress the deposi-

---

42. *See* Spotts v. O'Neil, 30 F. Supp. 669 (S.D.N.Y. 1939).
43. *See* Cottle v. Harris-Sauer, Inc., 37 Erie L.J. 212 (1953).
44. *Cf.* Youngman v. McFadden, 36 N.Y.S.2d 213 (N.Y. City Ct. 1942).
45. *See* Randall v. Legate, 115 Ga. App. 574, 155 S.E.2d 415 (1967); *In re*
Tribble, 231 N.Y.S.2d 473 (Sur. Ct. 1962). *See also* Fortner v. Balkcom, 380 F.2d
816, 821 (5th Cir. 1967). (In federal habeas corpus proceeding, notice that written
deposition was to be taken on the day following service of the notice abridged
prisoner's right to cross examine.)
46. *See* Grant Bros. Constr. Co. v. United States, 13 Ariz. 388, 144 P. 955
(1911), *aff'd*, 232 U.S. 647 (1914).
47. *See* Powers v. Monark Motor Freight, 7 FED. RULES SERV. 30b. 34, Case 1
(N.D. Ohio 1943).
48. *See* Pfaelzer v. Kostner, 87 Ill. App. 2d 315, 231 N.E.2d 668 (1967) (head-
note opinion only).
49. FED. R. CIV. P. 37(a)(3), provides: "For purposes of this subdivision an
evasive or incomplete answer is to be treated as a failure to answer." *Amendments,*
48 F.R.D. at 536. As against a recalcitrant party, rule 37(b) sanctions include
punishment for contempt; taking designated facts to be established in accordance with
the claim of the party obtaining the order; prohibiting the disobedient party from

tion.[50] On the other hand, nothing in the rules precludes a cross-examining party from waiting until the deposition is offered at trial and then objecting to it based upon a denial of his right to cross-examine.[51] Of course, if the insufficient answers seriously impaired the party's pre-trial discovery, then the trial objection would be insufficient to protect his interests. Where the opponent is merely taking the deposition of a witness, not expected to be present at trial, in order to preserve his testimony, the reserving of the trial objection may be enough. In any event, the burden on the non-discovering party to spend time and money compelling answers is quite real. Based on considerations of judicial efficiency, it is not clear whether pre-trial failure to enforce the right to cross-examine by rule 37(a) motions should result in a waiver, and there seems to be no case law on this precise point. One federal decision, however, held that where a set of rule 31 questions was transmitted to a medical witness without the opponent's timely filed recross-interrogatories, the trial court erred in overruling the opponent's motion to suppress the deposition when it was offered into evidence.[52] This rationale seems *a fortiori* to support the right of the cross-examiner to save his objection until trial.

While there is little direct authority on point, an excessive number of rule 31 interrogatories may be found burdensome and thus warrant a protective order.[53] However, as long as the questions are

---

supporting or opposing certain claims or defenses, or from introducing certain evidence; striking of pleadings or parts thereof; staying of the proceedings until the order is obeyed; and dismissal or default judgment. *Id.* at 537. Rule 37(b)(1), provides that a deponent may be punished for contempt by the court in the district where the deposition is being taken.

In some instances, limitations on the power of the court to enforce discovery orders may impose a limitation on discovery itself. For example, in Jones v. Fire & Cas. Ins. Co., 266 F. Supp. 91 (D. Conn. 1967), a federal court quashed rule 31 interrogatories directed at a judge who had tried the plaintiff in an earlier criminal case on the ground that enforcement of discovery against such a deponent would present "nightmarish" problems.

50. *Cf.* Inland Bonding Co. v. Mainland Nat'l Bank, 3 F.R.D. 438 (D.N.J. 1944) (*semble* as to oral deposition).

51. *See* Lipscomb v. Groves, 187 F.2d 40, 44–45 (3d Cir. 1950) (re-cross interrogatories). Moreover the appellate court saw no reason why the trial could not have been postponed in order to complete the deposition in accordance with rule 31. *Id.* at 44. *See also* Calavartenos v. Southeastern Raw Fur Merchants, 189 La. 94, 101–05, 179 So. 46, 48 (1938) (refusal to answer). Under some older state procedures, there may have been no other way of compelling answers to cross-interrogatories except through the threat of objections to their later introduction at trial. *Cf.* Nicholson v. Desobry, 14 La. Ann. 81, 83 (1859); Moormeister v. Golding, 84 Utah 324, 27 P.2d 447 (1933).

52. *See* Lipscomb v. Groves, 187 F.2d 40 (3d Cir. 1951). The court noted that the value of recross-examination may be unknown but that the party had a right to conduct it and receive answers.

The deposition [without recross] was incomplete and improper. Nor was the situation cured by the circumstance that appellees withdrew their offer to put into evidence their redirect interrogatories and answers. Appellant, irrespective of that, was entitled to the affirmative benefits of his own recross interrogatories. *Id.* at 44, 45.

53. *Compare* Bullard v. Universal Millwork Corp., 25 F.R.D. 342 (E.D.N.Y. 1960), where the court appeared unconcerned about the relevance of 118 questions,

---

16          VILLANOVA LAW REVIEW          [VOL. 16: p. 7

relevant and clear, the only objection would be the infliction of heavy research and data-gathering burdens on the deponent. A well-developed line of authority under rule 33 holds that a substantial amount of research may be required of an adverse party where the information is properly discoverable.[54] Arguably a stricter standard of "burdensomeness" could be applied to rule 31 depositions of, at least, nonparties. In sustaining objections to interrogatories directed to a physician, one court stressed the desirability of avoiding interrogatories to non-party witnesses requiring hours of his work and research.[55] A non-party arrives at his written deposition hearing presumably unaware of the precise scope of the interrogation, whereas a party receiving rule 33 interrogatories may have ample opportunity to consult with counsel and to examine records in order to supply the requested information. Under rule 31, however, counsel who foresees a need to refer to a number of documents should use a rule 45 subpoena duces tecum to insure that any deponent brings the desired data with him.

### C. *Pre-trial Objection Formalities*

Prior to trial, a party may make three major types of formal objections to rule 31 questions. He may wish to object to an interrogatory as defective in form, *e.g.,* as being "leading" or "argumentative." Second, a party might object on the grounds that the interrogatory seeks to elicit facts not relevant to the subject matter of the action. Third, he may claim that privileged or work-product matter is being requested.

As to formal matters, new federal rule 32(d)(3)(C), provides:

> Objections to the form of written questions submitted under rule 31 are waived unless served in writing upon the party propounding them within the time allowed for serving the succeeding cross or other questions and within 5 days after service of the last questions authorized.[56]

One court views this as the preferred pre-trial method for raising points of form, precluding such other devices as the motion to sup-

---

*with* Canuso v. Niagara Falls, 7 F.R.D. 159, 161 (W.D.N.Y. 1945), *and* Clair v. Philadelphia Storage Battery Co., 27 F. Supp. 777 (E.D. Pa. 1939), where the rule 31 device was considered inherently unsuitable for the gathering of complex and extensive data.
    54. *See, e.g.,* Adelman v. Nordberg Mfg. Co., 6 F.R.D. 383 (E.D. Wis. 1947). *See generally* 4 MOORE ¶ 33.20.
    55. McNenar v. New York, Chi. & St. L. R.R. Co., 20 F.R.D. 598, 599 (W.D. Pa. 1957). *Cf.* Wright v. Philadelphia Transp. Co., 24 Pa. D. & C.2d 334 (Phila. County C.P. 1961). But the large number of cross questions should not justify an outright refusal to answer. *See* Calavartenos v. Southeastern Raw Fur Merchants, 199 La. 94, 101–05, 179 So. 46, 48 (1938).
    56. FED. R. CIV. P. 32(d)(3)(C), *Amendments,* 48 F.R.D. at 519.

http://digitalcommons.law.villanova.edu/vlr/vol16/iss1/3

Schmertz: Written Depositions under Federal and State Rules as Cost-Effect

press the deposition.[57] The courts recognize a distinction between the method of objecting to the form of interrogatories directed at a party deponent and that appropriate in connection with the non-party witness. In *United States v. The LV No. 134*,[58] the respondents had objected to interrogatories as leading, vague, indefinite, uncertain, assuming facts not proven, and calling for conclusions. The court suggested that, with respect to non-party witnesses, rulings on these formal matters should be deferred until the interrogatories are offered at trial, whereas a party should not be required to answer interrogatories to which timely objection has been made until they have been approved by the court.[59] This approach seems sound since the non-party deponent who has no advance notice of the questions, cannot be expected to meet the time limits of rule 32(d)(3)(C) for objections to the form of questions, and is seldom aggrieved by formal deficiencies. On the other hand, leading or vague interrogatories can clearly work harm to opposing parties at the discovery stage, perhaps by suggesting answers favorable to the discoverer or by producing confused and misleading replies.[60] These real dangers can often be obviated where a party makes timely objection. By time of trial, it will be too late to rephrase. The better procedure seems to be to require the opponent to object promptly before the deposition is taken, and obtain the court's ruling. If necessary, he should renew the objection when and if the deposition is offered at trial.[61] In general, the proponent of challenged questions apparently has the option of contesting the objections, rephrasing the questions, or letting them stand subject to the objection. In the latter case, he does run the risk that the trial judge may later exclude the answers when it is too late for him to correct his mistakes.

The second major basis for objections is irrelevancy or immateriality. The discovery standard here is much broader than the usual trial test of probative value.[62] Federal rule 32(d)(3)(A) provides that objections to relevancy and materiality at the discovery stage are not waived by failure to make them before or during the taking of the deposition.[63] Unless they could have been obviated at the depo-

---

57. *See* Awani v. Public Nat'l Bank of N.Y., 12 F.R.D. 263 (S.D.N.Y. 1952). Courts should rule more liberally on formal trial objections to the oral cross-examination portions of a deposition since the discoverer was not present at the taking. *See* Stefanich v. United States, 8 FED. RULES SERV. 31d. 23, Case 1 (D.D.C. 1944).

58. 14 F.R.D. 261 (S.D.N.Y. 1953).

59. *Id.* at 262.

60. *See* Tsangarakis v. Panama S.S. Co., 41 F.R.D. 219 (E.D. Pa. 1966), sustaining pre-trial objections to garbled, vague, and misleading questions.

61. *See* Awani v. Public Nat'l Bank of N.Y., 12 F.R.D. 263, 265 (S.D.N.Y. 1952).

62. *See, e.g.*, Kaiser Fraizer Corp. v. Otis & Co., 195 F.2d 838 (2d Cir. 1952), *cert. denied*, 344 U.S. 856 (1952).

63. FED. R. CIV. P. 32(d)(3)(A), *Amendments,* 48 F.R.D. at 519.

Case 1:13-md-02419-RWZ Document 2353-2 Filed 10/23/15 Page 13 of 51

sition, they may be raised initially at trial. If objection is made during the deposition, however, most courts will apply a relaxed standard, sustaining the objection only when the matter is outside any possible issue in the case.[64] In line with this general theory, one court refused to suppress a written deposition on the grounds of irrelevancy where the questions either dealt with the description and terminology of the product in dispute or were reasonably related to a defense.[65]

Similarly, there is a "double standard" in applying the exclusionary rules of evidence. Federal rule 26(b)(1) precludes objection to written interrogatories merely because the information sought might be inadmissible at trial.[66] Moreover, complaints about the "competency" and "materiality" of deposition questions seldom will form a basis for quashing the taking.[67] Nor should questions be ruled out because they seek information about a document that might itself turn out to be inadmissible.[68] While such technical evidentiary challenges are normally out of place during discovery, each fact contained in a deposition must, if offered into evidence at trial, separately run the evidentiary gauntlet as if the answers of the deponent were those of a trial witness.[69]

The rules hold parties to the requirement of timely objection as to miscellaneous irregularities in the manner of taking the deposition. Rule 32(d)(3)(B) provides that where miscellaneous irregularities at an oral deposition might have been obviated, removed, or cured if promptly challenged, they are waived unless timely objection is made at or during the taking of the deposition.[70] In rule 31 situations, however, irregularities would seldom be known to the parties before they have examined the transcript.[71] Nevertheless, a party may not wait until just before trial to raise technical irregularities in the taking of a written deposition, especially where he failed to move within a

---

64. *See* Kellenberger v. Widener, 159 So. 2d 267 (Fla. Ct. App. 1963). *See also* 4 MOORE ¶ 26.16(5).
65. *See* Awani v. Public Nat'l Bank of N.Y., 12 F.R.D. 263, 265 (S.D.N.Y. 1952).
66. FED. R. CIV. P. 26(b)(1), *Amendments,* 48 F.R.D. at 493.
67. *See* Houghton Mifflin Co. v. Stackpole Sons, Ltd., 1 F.R.D. 506, 507 (S.D.N.Y. 1940).
68. Weinberg v. Travelers Ins. Co., 12 F.R.D. 80, 83 (S.D.N.Y. 1951). The mere taking of testimony by deposition probably should not constitute a waiver of objection to the testimonial incompetency of the deponent. *See* Anderson v. Benson, 117 F. Supp. 765 (D. Neb. 1953). Clayton v. Ogden Bank, 82 Utah 564, 571–72, 26 P.2d 545, 548 (1933). *See also* cases collected in Annot. 23 A.L.R.3d 389 (1969).
69. *See* FED. R. CIV. P. 32(b):
    Subject to the provisions of Rules 28(b) and subdivision (d)(3) of the rule, objection may be made at the trial or hearing to receiving in evidence any deposition or part thereof for any reason which would require the exclusion of the evidence if the witness were then present and testifying.
*Amendments,* 48 F.R.D. at 518.
70. FED. R. CIV. P. 32(d)(3)(B), *Amendments,* 48 F.R.D. at 519.
71. *See, e.g.,* Gill v. Stolow, 16 F.R.D. 9 (S.D.N.Y. 1954), *rev'd on other grounds,* 240 F.2d 669 (2d Cir. 1957).

reasonable time after the technical defects were known or, with due diligence, should have been known.[72]  Moreover, a protective order motion must be sought by a party after exchange of questions and *prior* to the taking of a rule 31 deposition.[73]

As with other discovery devices, a court, upon motion or objection, may exclude rule 31 questions that inquire into privileged matters. In the absence of conduct amounting to waiver, both state and federal courts will bar inquiry into matters protected by the privilege against compulsory self-incrimination,[74] or by the privileges protecting confidential communications between physician and patient,[75] and between attorney and client.[76]  Written depositions are similarly excluded from the area of governmental privilege, at least where the holder of the privilege makes the objection.[77]  "Work product" materials of attorneys are also accorded the traditional qualified immunity from disclosure.[78]

### D.  Functions of the Presiding Officer

When the rule 31 deposition is taken, the deponent, the officer, and a reporter are usually the only persons present.  In the absence of counsel, the administering officer has an important function in insuring the integrity of the written deposition process.

The officer who is to take a federal deposition within the territory of the United States must be authorized to administer an oath pursuant to federal, state, or local laws, or by virtue of an appointment by the forum court.[79]  Federal rule 28 disqualifies persons having certain specified interests relating to the litigation or litigants from administering the deposition.[80]  A party objecting to qualifications of

---

72. *See* Lacour v. Travelers Ins. Co., 149 So. 2d 245 (La. App. 1963), where a few minutes before trial, a party unsuccessfully objected because the officer taking the deposition failed to attach the copy of the notice; because he did not personally seal or mail the envelope; and because the commanding officer of the deponent's naval vessel, rather than the deposing officer, signed the letter of transmittal mailed to the court clerk.

73. *See* 4 MOORE ¶ 31.03, at 2164. A deponent who is not a party is apparently only able to protect himself against improper rule 31 questions by seeking a protective order at the forum (which may be distant) or by simply refusing to answer the questions, shifting the burden to the proponent to seek a motion to compel. *Id.* ¶ 31.06, at 2164.

74. *See* W. BARRON & A. HOLTZOFF, FEDERAL PRACTICE AND PROCEDURE § 651 (Wright ed. 1961). *See* Shor v. Redden, 33 Pa. D. & C.2d 179, 183 (Bucks County C.P. 1964).

75. *See* Schechet v. Kesten, 372 Mich. 346, 126 N.W.2d 718 (1964) ; *In re* Ames Estate, 207 Misc. 746, 749, 139 N.Y.S.2d 327, 330 (1955).

76. *See* Bialek v. March, 26 Pa. D. & C.2d 641 (Montgomery County C.P. 1962).

77. *Cf.* Cronan v. Dewavrin, 9 F.R.D. 337, 339 (S.D.N.Y. 1949).

78. FED. R. CIV. P. 26(b)(3), *Amendments*, 48 F.R.D. 494 (1970). *See* Hanke v. Milwaukee Elec. Ry. & Transp. Co., 7 F.R.D. 540 (E.D. Wis. 1947).

79. FED. R. CIV. P. 28(a).

80. FED. R. CIV. P. 28(c), provides:

No deposition shall be taken before a person who is a relative or employee or attorney or counsel of any of the parties, or is a relative or employee of such attorney or counsel, or is financially interested in the action.

---

VILLANOVA LAW REVIEW

the officer could move for an order under rule 26(c) that someone other than the designated officer administer the deposition.[81] The rules specifically require timely objections on this point.[82] By written stipulation the parties may waive all requirements concerning the officer.[83]

Under the federal rules, the normal functions of the officer are essentially fourfold. First, he must administer the oath to the deponent; second, he must propound the questions as forwarded to him; third, he must insure a verbatim recording of the answers and the transcription thereof; and fourth, he must supervise the certification of the final transcript and insure its prompt transmission to the court for filing.[84] The officer has no power to rule on the admissibility of evidence, to compel answers to questions, or to impose penalties by contempt or otherwise for refusal to answer questions, such power being reserved to the presiding trial judge.[85] Among the states, however, the rule may vary. Some state courts have explicitly ruled that it is not for the officer taking the deposition to determine the relevancy or competency of testimony, or to advise the witness whether he should answer a question.[86] In a few states, however, the officer, before whom a deposition in a state court action is being taken, may have the power to rule on some evidentiary objections.[87]

Despite their somewhat ministerial role, presiding officers have occasionally yielded to the temptation to be more active in the deposition-taking process. In one older state case, the officer was accused of re-writing some of the questions before propounding them. The appellate court indicated that, in any event, the officer's actions would not require the trial court to suppress the deposition.[88] More recently,

---

81. FED. R. CIV. P. 26(c), *Amendments,* 48 F.R.D. at 496.
82. FED. R. CIV. P. 32(d)(2), *Amendments,* 48 F.R.D. at 519.
83. Federal rule 29, provides in part: "Unless the court orders otherwise, the parties may by written stipulation (1) provide that depositions may be taken before any person, . . ." *Amendments,* 48 F.R.D. at 508. A qualified office stenographer might serve well in taking testimony under rule 31, thus reducing costs. *See* 4 MOORE ¶ 29.02.
84. *See* FED. R. CIV. P. 30(c), (e), (f). *Cf.* Lacour v. Travelers Ins. Co., 149 So. 2d 245 (La. App. 1963).
85. *See* 4 MOORE ¶ 28.02, at 1915.
86. *See* Moormeister v. Golding, 84 Utah 324, 330, 27 P.2d 447, 452 (1933) (oral deposition). *See* Clayton v. Odgen Bank, 82 Utah 564, 571, 26 P.2d 545, 548 (1933). Pa. Rules 4004(c) and 4107, 12 PA. APP. R. CIV. P. 4004(c), 4107, provide to the same effect as the federal rules on the function of the officer. *See also* CAL. CODE CIV. P. 2019, 2020(b).
87. *See* RAGLAND, DISCOVERY BEFORE TRIAL, Chapter 13 (1932). *See also* Lehman Mfg. Co. v. Jewett, 90 Ind. App. 12, 168 N.E. 46, 49 (1929). Under Missouri's rules, a court-appointed special commissioner may take depositions, hear objections to evidence and admit or exclude them in the same manner as a trial court. MO. RULES OF CT. § 57.06(d) (1970). Commissioners, notaries, and other persons taking depositions have power to issue subpoenas and to commit to prison for contempt persons refusing to give evidence at a deposition. *Id.* rule 57.19 (1970). *See also* OHIO REV. CODE § 2317.20 (1953).
88. Lehman Mfg. Co. v. Jewett, 90 Ind. App. 12, 18–20, 168 N.E. 46, 49 (1929) (dictum). *See also* Wm. A. Hausman Co. v. United States, 260 F. Supp. 860 (Cust.

it was held improper for the officer to add "sub-questions," apparently for completeness, since the opposing party, lacking notice of the sub-questions would be denied a fair opportunity to cross-examine.[89]

Problems of officer "activism" arose in two federal decisions — with divergent results. In one case, a United States vice consul, acting as a deposition officer, noted in the deposition that the deponent had a copy of the interrogatories with his own answers already written on it; that he often referred to other papers; and that he stated he had lapses of memory due to an automobile accident.[90] Although the officer probably thought he was disclosing valuable data on the deponent's credibility, the district court suppressed the comments on the theory that neither side was able to cross-examine the officer about them.[91] Taking a contrary view, another judge from the same district held that, in administering a foreign deposition under rule 31, a commissioner properly noted on the deposition that the witness had refreshed his recollection from time to time by reference to a prior deposition taken in another case.[92] There are plausible arguments both ways. It seems valuable for a responsible and disinterested official to report observed facts relevant to the credibility of deponents since, on these matters, the rather lifeless rule 31 deposition is ordinarily silent. On the other hand, such statements of fact, being themselves uncross-examined, would violate the hearsay rule if introduced testimonially at trial. Perhaps both interests can be reconciled by finding the requisite "necessity" and "reliability factors" for creating an exception to the hearsay rule.[93] Federal rule 30(e) presently embodies an apparent hearsay exception allowing the officer's statement explaining the deponent's refusal to sign the deposition.[94] Alternatively, a party could summon the officer to the trial or, at least, take his deposition to develop critical evidence of the deponent's unreliability.[95] The time and expense of these methods would probably not be warranted unless a written deposition of an important witness or

---

Ct. 1966) (not improper for foreign judicial officer to rephrase and supplement interrogatories to clarify relevant parts).

89. *See* Thompson v. Banes Co., 71 N.M. 154, 157, 376 P.2d 574, 576 (1962).

90. Gill v. Stolow, 16 F.R.D. 9, 10 (S.D.N.Y. 1954). The officer also noted that the deponent drank water and ate hazel nuts in order to calm his nerves.

91. *Id.* at 10.

92. Hamdi & Ibrahim Mango Co. v. Fire Ass'n of Phila., 20 F.R.D. 181, 184 (S.D.N.Y. 1957).

93. *See* 5 J. WIGMORE, EVIDENCE § 1420 (3d ed. 1939). Arguably there may be "necessity" since this would be the only feasible way to get information on potentially impeaching behavior of the deponent. A higher degree of trustworthiness may be premised on the theory that the officer is an unbiased public official, presumably performing his duty to report accurately.

94. FED. R. CIV. P. 30(e), *Amendments*, 48 F.R.D. at 511.

95. *See* Clark v. Geiger, 31 F.R.D. 268 (E.D. Pa. 1962), where a court ordered a psychiatrist to attend an oral deposition to prepare himself to give testimony at the trial as to the party deponent's testimonial competency.

---

opposing party is to be used as evidence at trial, and unless there are reasonable grounds to suspect that anti-credibility factors did exist. Another approach might be to permit the officer to add his own observations separately from the body of the deposition. The parties could use the information not as evidence for trial but merely as a basis for further discovery, either of the deponent or of the officer, in order to get credibility factors into admissible form. In any event, under present procedure, the careful cross-examiner should include cross-interrogatories probing into such factors as bias or reference to other documents or similar matters.[96]

### E. *Persons in Attendance at the Deposition*

The method of securing the deponent's compulsory attendance at rule 31 depositions parallels that of oral depositions. The discoverer may compel the attendance of a party deponent, or an officer or managing agent of a corporate party merely by serving a proper notice.[97] Similarly, a deposition may be taken of a partnership which is a party to the case by giving notice to a partner who fits the description of a "managing agent."[98] Under the pre-amendment federal rule, each notice had to state the name and address of the proposed deponent.[99] The 1970 amendments permit the use of a "general description sufficient to identify him or the particular class or group to which he belongs," if the name is not known.[100]

Although economical written discovery, as previously described under rule 33, may also be had of any corporate party,[101] there may often be procedural advantages in employing rule 31 instead.[102] For example, when a corporate party is served with rule 33 interrogatories, it has the option of selecting the individual to compile the information and draft the responses. On the other hand, the party seeking the testimony of specific persons of known identity within a corporate

---

96. *See* R. FIELD & V. McKUSICK, MAINE CIVIL PRACTICE § 31.4 (1959).

97. *See* FED. R. CIV. P. 37(d), *Amendments,* 48 F.R.D. at 538. *See also* Collins v. Wayland, 139 F.2d 677, 678 (9th Cir. 1944), *cert. denied,* 322 U.S. 744 (1944); Millinocket Theatre v. Kurson, 35 F. Supp. 754, 755 (D. Maine 1940); Reserve Life Ins. Co. v. District Court, 126 Colo. 217, 219–20, 247 P.2d 903, 904 (1952).

98. Gill v. Stolow, 18 F.R.D. 508 (S.D.N.Y. 1955), *rev'd on other grounds,* 240 F.2d 669 (2d Cir. 1957).

99. Under former FED. R. CIV. P. 31(a) and similar state provisions, the requirement of deponent's specific name and address (upon another party's prompt written objection under rule 32(a) to a general description of deponent) is strictly enforced. *See* Awani v. Public Nat'l Bank of N.Y., 12 F.R.D. 263, 266 (S.D.N.Y. 1952).

100. FED. R. CIV. P. 31(a), *Amendments,* 48 F.R.D. at 516. *See also* ILL. R. CIV. P. 210.

101. The "adverse" party limitation was removed from rule 33 by the 1970 amendments. *See Amendments,* 48 F.R.D. at 520.

102. *See* Ju Shu Cheung v. Dulles, 16 F.R.D. 550, 552 (D. Mass. 1954), indicating that former federal rule 33 was not available against "nominal" parties.

organization can be sure of obtaining written discovery from them only by utilizing rule 31.[103]

When compulsory written discovery is sought from a non-party witness, a proper notice must be served and a subpoena must be obtained from a district court having geographical jurisdiction to compel the witness to appear at the designated time and place.[104] While a great variety of sanctions may be invoked against the party who willfully fails to appear at a deposition,[105] the failure of a non-party witness to obey a valid subpoena is punishable only as a contempt of the issuing court.[106]

In addition to securing testimony, a rule 31 deposition may be coupled with a subpoena duces tecum ordering deponent to bring certain designated documents with him to the deposition.[107] Such a subpoena is generally thought to be necessary to compel a non-party witness to produce documents, but the decisions are divided as to whether it is necessary when a party is the deponent.[108] To obtain the required subpoena it is seldom necessary to secure a separate court order. Proof of service of a rule 31(a) notice adequately authorizes the clerk of the proper district court to issue the subpoena.[109] To prevent a side-stepping of the "good cause" requirements of former

---

103. *See* Holler v. General Motors Corp., 3 F.R.D. 296, 298 (E.D. Mo. 1944). *See also* Mowry v. Superior Court, 202 Cal. App. 2d 229, 234, 20 Cal. Rptr. 698, 702 (1962). *Cf.* State *ex rel.* Kansas City Pub. Serv. Co. v. Cowan, 356 Mo. 674, 681, 203 S.W.2d 407, 410 (1947). *See also* Colonial Capital Co. v. General Motors Corp., 29 F.R.D. 514, 518 (D. Conn. 1961).

104. *See* Fed. R. Civ. P. 45(d). A federal subpoena served outside proper territorial limits is void and may be disregarded. *See* Doble v. United States District Court, 249 F.2d 734 (9th Cir. 1957).

105. Fed. R. Civ. P. 37(d), now provides, in part, as follows:
  If a party or officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails . . . to appear before the officer who is to take his deposition, after being served with a proper notice, . . . the court in which the action is pending on motion [may] make such orders in regard to the failure as are just, and among others it may take any action authorized under paragraph (A), (B), and (C) of subdivision (b)(2) of this rule. In lieu of any order or in addition thereto, the court shall require the party failing to act or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.
*Amendments,* 48 F.R.D. at 538.

106. *See* 4 Moore ¶ 37.04, at 2871. While there seems to be no recent case law on the point, a deponent actually unable to appear personally should be permitted to write out his answers. *Cf.* Randel v. Chesapeake & Del. Canal Co., 1 Del. 233, 289 (1833).

107. Fed. R. Civ. P. 45(d)(1).

108. *See* 4 Moore ¶ 26.10(1), at 1127. Under Maryland rule 405 § b2, a party desiring another party to produce at his deposition certain designated documents or tangible objects, may simply describe the desired objects in the notice of taking. The rule in Georgia appears to be that parties must produce documents upon mere service of a "notice of production," whereas a documentary subpoena is required for a non-party witness. Sorrells v. Cole, 111 Ga. App. 136, 141, 141 S.E.2d 193, 198 (1965). It has been held that a good faith failure to produce certain records at the written deposition may not necessarily preclude their introduction by the party at the trial. *See* Lund v. Village of Princeton, 250 Minn. 472, 483–84, 85 N.W.2d 197, 205 (1957).

109. Fed. R. Civ. P. 45(d)(1).

Case 1:13-md-02419-RWZ Document 2353-2 Filed 10/23/15 Page 19 of 51

federal rule 34,[110] the courts formerly required the party seeking documents to present similar reasons for their production, especially where objection was made.[111] The 1970 federal revisions, however, have removed the need to show "good cause" under rule 34,[112] and greater freedom in seeking documents is now possible through depositions. It is also notable that former federal rule 45 specifically authorized a subpoena for the "production" of documents and did not explicitly allow for "inspection or copying."[113] The rule now includes specific authority to inspect and copy subpoenaed materials.[114]

At the usual rule 31 deposition, counsel for the litigants cannot observe or take part. Deponents may commit a wide range of improprieties such as refusing to answer, receiving open coaching by another attorney, reading from prepared notes, or referring to collateral material. Such actions may undercut the validity of the device for discovery as well as trial purposes. It appears that the only impartial person capable of controlling or at least recording improper conduct is the administering officer. We have noted the unresolved controversy as to whether this ought to be one of his proper functions.[115]

Present rules and decisions provide a limited number of sanctions against deponents who improperly decline to answer interrogatories. Rule 30(c) permits a non-party deponent to register technical objections on the record but he may not refuse to answer the questions.[116] If, on the other hand, he bases his objection upon privilege or relevance, the witness may, and in some cases must, refuse to answer the question if he is to protect his rights and interests.[117] The proponent may then move under rule 37(a) to compel the deponent to answer.[118] If the deponent is a party, however, his counsel will have seen the written interrogatories and rule 32(d)(3)(C) requires him to raise formal objections prior to the actual taking.[119] Even in the

---

110. *See* FED. R. CIV. P. 34, *Amendments,* 48 F.R.D. at 525 (former rule cited).
111. *See* Note, *Developments in the Law — Discovery,* 74 HARV. L. REV. 940, 965 (1961). Some states also require "good cause" for the production of documents in connection with depositions. *See, e.g.,* Brooker v. Smith, 108 So. 2d 790, 795 (Fla. Ct. App. 1959).
112. FED. R. CIV. P. 34, *Amendments,* 48 F.R.D. at 525.
113. *See Advisory Committee's Note,* 48 F.R.D. at 543. *See also* Note, *supra* note 103, at 965 n.190.
114. FED. R. CIV. P. 45, *Amendments,* 48 F.R.D. at 543.
115. *See* text at notes 90–92 *supra.*
116. In Shapiro v. Freeman, 38 F.R.D. 308, 311 (S.D.N.Y. 1965), the court strongly castigated plaintiff's counsel for repeatedly ordering non-client witnesses to refuse to answer questions on the frivolous grounds of privilege.
117. *See* 4 MOORE ¶ 37.02(1), at 2816.
118. *See* FED. R. CIV. P. 37(a), *Amendments,* 48 F.R.D. at 535. *See also* United States v. The LV No. 134, 14 F.R.D. 261 (S.D.N.Y. 1953).
119. FED. R. CIV. P. 32(d)(3)(C), *Amendments,* 48 F.R.D. at 519. *See* 4 MOORE ¶ 37.02(3), at 2819. *But see* Fortner v. Balkcom, 380 F.2d 816 (5th Cir. 1967) (written deposition was taken one day after an unrepresented prisoner was served with notice).

Schmertz: Written Depositions under Federal and State Rules as Cost-Effectiv

case of recalcitrant parties, however, the discoverer will occasionally have to seek an order to compel from a district court other than the court in which the action is pending.[120]

Some differences of opinion exist in both federal and state courts regarding the right of persons other than the officer to be present during a rule 31 deposition of a non-party. One federal decision flatly stated: "No party to the action is entitled to be present or represented when interrogatories previously propounded to a third person, not a party to the action, are answered."[121] At least two states have rules providing that neither the parties, nor their agents, nor their attorneys shall be present at a written deposition.[122] The rule in Illinois apparently excludes a party, or attorney, or any person interested in the outcome of an action (except the deponent himself) from being present during the taking of a deposition, or from dictating, writing or drawing up any answers to the questions.[123] In Georgia, on the other hand, the court apparently can exclude everyone from the deposition *except* the parties to the action and their officers or counsel.[124]

## F.   The Place of Deposition Taking

Rule 31 depositions may be taken almost anywhere.[125] However, distinct problems arise when taking depositions outside the United States. Moreover, under the federal rules and some state procedures, differing considerations may apply depending upon whether a domestic deponent is a party or non-party witness.

The rules do not specifically limit the deposition of parties to any particular district. Some decisions hold, however, that non-resident plaintiffs usually have to make themselves available at the chosen trial forum to be orally deposed.[126] Proof that travel to the forum would be a real hardship may persuade the court to order a plaintiff's

---

120. *See* 4 Moore ¶ 37.02(3), at 2819.

121. Hahn v. Bucyrus-Erie Co., 11 Fed. Rules Serv. 31b.3, Case 1 (E.D. Pa. 1948). *See also* Higgins v. Shenango Pottery Co., 12 F.R.D. 510, 513 (W.D. Pa. 1952), *rev'd on other grounds,* 256 F.2d 504 (3d Cir. 1958) (recognized power to exclude other persons but declined to exercise it). Rule 30(b) does permit an exclusion order; but arguably, such an order may apply only to oral depositions, where persons other than the notary and the deponent are ordinarily present, rather than to rule 31 where this is not the case.

122. *See, e.g.,* Ind. Ann. Stat. § 2–1532 (491); Ky. Rev. Stat. § 31.02 (1969).

123. *See* Ill. Rev. Stat. ch. 110A, § 210(b) (1968). Under the Kansas rule concerning written depositions, it is apparently not contemplated that the parties or their attorneys will attend the examination. *See* Kan. Stat. Ann. § 60–230(h) (1970).

124. *See* Ga. Code Ann. § 38–2105(b) (1967). *Cf.* Reynolds v. Reynolds, 217 Ga. 234, 123 S.E.2d 115 (1961).

125. Some state rules specifically indicate a preference for the use of written depositions outside the forum state. *See* N.Y. Civ. Prac. § 3108 (McKinney 1963). *See generally* Pa. Rule 4003(a)(2), 12 P.S. App. R. Civ. P. 4003(a)(2).

126. *See, e.g.,* Collins v. Wayland, 139 F.2d 677 (9th Cir. 1944); Seuthe v. Renwal Prods., Inc., 38 F.R.D. 323 (S.D.N.Y. 1965); Salitan v. Carrillo, 69 N.M. 476, 481, 368 P.2d 149 (1961).

deposition taken under rule 31 at or near his residence.[127] Contrariwise, defendants are customarily entitled to be deposed at their place of residence.[128] Pursuant to federal rule 37(d), a forum court can enforce the designation of place against a *party* no matter where he resides.[129] On the other hand, the discoverer can only ensure the presence of non-party deponents by a local rule 45 subpoena. The basic goal of rule 45 is to minimize inconvenience of the non-party witness by limiting the deposition to the district where he resides or does business and at a reasonable distance from the site of his home or work.[130] The provisions of local court rules may supplement these requirements.[131]

A few of the major problems of taking state discovery in a state other than the forum should be noted. By virtue of its power over the litigation, a forum court may presumably regulate the place for deposing a non-resident party. By affirmatively invoking the judicial authority of the forum, a non-domiciliary plaintiff arguably submits to a reasonable regulation of the details of pre-trial discovery. Analogous considerations should apply to non-resident defendants. If the court has properly obtained power to adjudicate the substantive rights of that defendant, it surely has a sound basis for controlling such interlocutory matters as pre-trial deposition procedure.[132] If recalcitrant, such parties would be vulnerable to sanctions[133] such as dismissals or default judgments.[134]

More vexing problems arise when there is a question of compelling a non-party witness domiciled outside the forum to submit to a discovery deposition. Under traditional "power" concepts, forum state *A* could not compel an unwilling witness domiciled in state *B* either to come to state *A* or to be deposed in state *B*. The forum would have to rely upon the voluntary cooperation, on comity principles, of the judiciary of state *B*.[135] The principle of comity, however,

---

127. *See* Schmertz, *supra* note 7, at 400.
128. *See, e.g.,* Buryan v. Max Factor & Co., 41 F.R.D. 330, 332 (S.D.N.Y. 1967); Perry v. Edwards, 16 F.R.D. 131, 133 (W.D. Mo. 1954).
129. FED. R. CIV. P. 37(d), *Amendments*, 48 F.R.D. at 538.
130. FED. R. CIV. P. 45(d)(2), provides that:
    A resident of the district in which the deposition is to be taken may be required to attend an examination only in the county wherein he resides or is employed or transacts his business in person, or at such other convenient place as is fixed by an order of court. A non-resident of the district may be required to attend only in the county in which he has been served with a subpoena, or within 40 miles of the place of service, or at such other convenient place as is fixed by an order of court.
131. *See* local federal rules, *e.g.,* D. MASS. R. CIV. P. 14(a); W.D. WASH. R. CIV. P. 23.
132. *See* Note, *supra* note 103, at 1050.
133. *Cf.* FED. R. CIV. P. 37(d).
134. Such drastic penalties are seldom imposed. *See* Rosenberg, *Sanctions to Effectuate Pretrial Discovery*, 58 COLUM. L. REV. 480, 480–83 (1958).
135. *See* Note, *supra* note 103, at 1050.

may fail in the face of an intricate array of legal problems, stemming from a substantial difference in discovery machinery in states *A* and *B*.[136] It is submitted that objections to depositions should be handled by the state where the deposition is to be taken, with the possible exception of party objections to rule 31 written interrogatories which should be filed at the forum before discovery is taken.[137] The adoption of the Uniform Foreign Depositions Act[138] may clear up some of these troublesome interstate deposition problems. By adopting it, each state essentially pledges to honor official requests to employ its own judicial machinery to secure compulsory discovery within its borders in aid of litigation pending in other states.[139]

The rule 31 written depositions may be particularly useful in obtaining discovery from persons in foreign countries. Counsel seldom attend, hence there is a substantial dollar saving over the oral deposition. Moreover, wide differences in foreign procedural systems and claims of sovereignty often preclude the use of oral deposition procedures abroad.[140]

Under federal rule 28(b)[141] there are three basic methods for attempting to take depositions abroad. The first would be to serve a proper rule 31(a) notice that a written deposition is to be taken of a designated or described person before an official authorized to administer oaths at the place of the taking under either American or domestic law. Leave of court is seldom required. However, as a practical matter, this method is limited to depositions of willing witnesses unless foreign courts will enforce the notice procedure.[142] Secondly, to the extent that the law of the foreign nation allows it,[143] an

---

136. *Id.* at 1050–51.

137. *Id.* at 1051.

138. The following American jurisdictions have adopted this legislation as of 1965. Alaska, Arizona, California, Florida, Georgia, Louisiana, Maryland, Michigan, Nebraska, Nevada, Ohio, Oklahoma, Oregon, Panama Canal Zone, Pennsylvania, South Dakota, Tennessee, Virgin Islands, Virginia and Wyoming. *See* 9B UNIFORM LAWS ANNOT. 60 (1966).

139. Section 1 contains the basic provision of the UNIFORM FOREIGN DEPOSITIONS ACT and provides as follows:
Whenever any mandate, writ or commission is issued out of any court of record in any other state, territory, district or foreign jurisdiction, or whenever upon notice or agreement it is required to take the testimony of a witness or witnesses in this state, witnesses may be compelled to appear and testify in the same manner and by the same process and proceeding as may be employed for the purpose of taking testimony in proceedings pending in this state.

140. Swiss law, for example, does not permit oral depositions under letters rogatory within its territory. *See* Oscar Gruss & Son v. Lumbermen's Mut. Cas. Co., 41 F.R.D. 279, 280 (S.D.N.Y. 1966), *aff'd*, 422 F.2d 1278 (2d Cir. 1970).

141. FED. R. CIV. P. 28(b).

142. *See* 4 MOORE ¶ 28.03, at 1921.

143. *Cf.* U.S. Neckware Corp. v. Sinaco, Inc., 176 Misc. 51, 26 N.Y.S.2d 546 (Sup. Ct. 1941) (commission procedure not recognized by Swiss law). Burmese courts, on the other hand, will issue compulsory process pursuant to a United States federal court commission. *See* Zassenhaus v. Evening Star Newspaper Co., 404 F.2d

VILLANOVA LAW REVIEW [VOL. 16: p. 7

American court may issue a commission to either American or foreign citizens to administer the oath and to take testimony. Where the commissioner is a non-lawyer or is otherwise unfamiliar with federal procedure, it is usually advisable to inform him of the applicable provisions. A third method for obtaining foreign depositions would be to move for the American court to issue "letters rogatory"[144] as an attempt to enlist the aid of a foreign judiciary in obtaining compulsory testimony. Indeed, if the law of the discovery nation precludes the use of U.S. diplomatic officials, or court-appointed commissioners, or persons stipulated to under federal rule 29, "letters rogatory" is the only feasible device.[145] If the appropriate foreign court does decide to honor the American request, its judicial machinery is usually capable of enforcing compliance of an unwilling witness. Some nations will not compel a witness' attendance and testimony at a foreign deposition proceeding held within their territory;[146] others normally will.[147]

In taking testimony, a foreign court will use its own procedure. Differing foreign practices as to cross-examination and verbatim recordation may raise technical obstacles to admissibility in federal trials.[148] A liberal application of recent amendments to rule 28, which set a less stringent standard for admissibility of evidence in letters rogatory, may mitigate some of these difficulties.[149]

---

1361, 1364 at n.20 (D.C. Cir. 1968). United States district courts may issue subpoenas to nationals or residents of the United States who are in a foreign country. 28 U.S.C. § 1783 (1964).

144. Letters rogatory are the medium, in effect, whereby one country, speaking through one of its courts, requests another country, acting through its own courts and by methods of court procedure peculiar thereto and entirely within the latter's control, to assist the administration of justice in the former countries; such request being made, and being usually granted, by reason of the comity existing between nations in ordinary peaceful times.
The Signe, 37 F. Supp. 819, 820 (E.D. La. 1941).

145. *See* Doyle, *Taking Evidence and Obtaining Documents in Foreign Territory*, 144 N.Y.L.J. No. 11, at 4 (1960).

146. For example, West Germany and Holland will not compel attendance. *See* Jones, *International Judicial Assistance: Procedural Chaos and a Program for Reform*, 62 YALE L.J. 515, 529–32 (1953).

147. For example, the courts of Great Britain, Northern Ireland, Canada, New Zealand, Australia, Denmark, Norway and Sweden, compel the witnesses attendance. *See* 4 MOORE ¶ 28.05 n.13, at 1931. Wide international ratification of a Draft Convention drawn up at the eleventh session of the Hague Conference on International Civil Procedure in 1964 should facilitate discovery across national boundaries. Under its terms a central authority is to be set up in each country to receive "letters of request" and to transmit them to the domestic authority competent to execute them. It also liberalizes the use of consuls and commissioners for taking evidence abroad. However, Article 23, provides:

A Contracting State may at the time of signature, ratification or accession, declare that it will not execute Letters of Request issued for the purpose of obtaining pretrial discovery of documents as known in Common Law countries.
*See* Note, *The Draft Convention on the Taking of Evidence Abroad*, 16 AM. J. COMP. LAW 593–601 (1968).

148. *See* The Mandu, 11 F. Supp. 845, 847 (S.D.N.Y. 1935).

149. FED. R. CIV. P. 28(b) (as amended in 1963), provides in part:
Evidence obtained in response to a letter rogatory need not be excluded merely for the reason that it is not a verbatim transcript or that the testimony was not

Problems may also arise when a federal litigant seeks to obtain production of documents or other tangible items in the custody of a person residing abroad.[150] The forum court can compel a party residing abroad to obey discovery orders by virtue of its power of disposition over the litigation under rule 37(d).[151] In addition, the production of tangible evidence in the possession, custody, or control of a non-party witness can usually be compelled by local service of a rule 45 subpoena, if the non-party is within the United States, even though the documents themselves happen to be located abroad.[152]

Foreign discovery problems are likely to arise in the state courts also. Some state rule provisions cover these points often in language similar to the federal rules.[153] In these courts, too, litigants seem to find the relative economy of the written deposition a valuable asset in obtaining discovery overseas.[154]

### G.  Transcription and Filing of the Deposition

Under federal rule 31, the officer has important responsibilities concerning recordation, transcription and filing of the written deposition. Federal rule 31(b), pertaining to written depositions, formerly incorporated rule 30(c) which provided that, "the testimony shall be taken stenographically. . . ."[155] Two reported federal decisions cite this provision as precluding the right of any party to use mechanical or electronic recording methods, at least without a written stipulation.[156] The 1970 amendments to the federal rules allow parties taking depositions to move for leave to use less expensive non-stenographic means.[157]

The second phase in recordation is that of making an official typewritten transcript of the responses to interrogatories. The former rule apparently required transcription in every case unless all

---

taken under oath or for any similar departure from the requirements for depositions taken within the United States under these rules.

150.  *See* Smit, *International Aspects of Federal Civil Procedure,* 61 COLUM. L. REV. 1031, 1053-54 (1961).

151.  FED. R. CIV. P. 37(d). *See generally* Seuthe v. Renewal Prods., Inc., 38 F.R.D. 330, 332 (S.D.N.Y. 1967).

152.  *See* Smit, *supra* note 150, at 1053.

153.  *See, e.g.,* ILL. R. CIV. P. 205; CAL. R. CIV. P. § 2018; PA. RULE 4015, 12 P.S. APP. R. CIV. P. § 4015.

154.  *See, e.g.,* Heyl v. Farnsworth & Co., 28 App. Div. 2d 523, 279 N.Y.S.2d 975 (1967) ; Glisson v. Carlin, 204 Pa. Super. 335, 204 A.2d 285 (1964).

155.  *See* FED. R. CIV. P. 30(c), *Amendments,* 48 F.R.D. at 510 (former rule non-italicized). Stenographic recordation is required, *e.g.,* by CAL. R. CIV. P. § 2019(c). ILL. R. CIV. P. 206(e), adds the phrase "or by sound recording device." PA. R. CIV. P. 4017(a), in terms merely requires "recording." The Iowa rule 151, provides that answers need not be taken stenographically.

156.  *See* United States Steel Corp. v. United States, 43 F.R.D. 447 (S.D.N.Y. 1968) (video tape) ; Galley v. Pennsylvania R.R. Co., 30 F.R.D. 556 (S.D.N.Y. 1962) (sound tape).

157.  *See* FED. R. CIV. P. 30(b)(4), *Amendments,* 48 F.R.D. at 509.

*Villanova Law Review, Vol. 16, Iss. 1 [1970], Art. 3*

30          VILLANOVA LAW REVIEW          [VOL. 16: p. 7

parties agree otherwise.[158]  To apply this provision strictly might
compel a low-income litigant to incur the expense of a costly tran-
script before being able to assess the practical value of the answers.
The discoverer with funds will usually pay the cost of the tran-
scription.  Nevertheless, there has been controversy, in oral deposi-
tion cases at least, as to whether the discoverer is always required
to ensure transcription and payment therefor.[159]  The 1970 amend-
ments resolved the point by providing "if requested by one of the
parties, the testimony shall be transcribed."[160]  If a discoverer can
retain the option to transcribe and if mechanical recording means can
be used, the party with little funds can at least listen to the answers
before deciding whether to attempt to finance the transcription.  The
present Illinois rule seemingly provides for both of these alterna-
tives.[161]

## H.  Procedures for Use of Deposition at Trial

As has been previously observed, the federal and state deposition
rules create distinct criteria between the pre-trial and trial uses of depo-
sitions.  Before trial the parties may use depositions to gather new
information, to narrow issues, to commit witnesses to definite versions
of fact, or for several of these purposes.  Standards of relevance and
admissibility are therefore kept properly flexible and informal.  On the
other hand, when counsel offers an oral or written deposition at trial
it must satisfy the deposition rules plus all applicable evidentiary rules
applied as though the deponent were a trial witness.[162]

Federal rule 32(a) governs the trial admissibility of the deposi-
tion as a whole, preserving the essential rationale of the "former testi-
mony" and "admissions" exceptions to the hearsay rule.[163]  If any
deponent gives testimony on the stand, of course, any prior inconsistent
statements contained in his deposition may serve to contradict or im-
peach.[164]  Moreover, an adverse party may go further and introduce
the deposition of a party as substantive evidence although the adversary

---

158.  *See Adv. Comm. Note,* 48 F.R.D. at 515.
159.  *See* Schmertz, *supra* note 7, at 418 n.142.  *See also* Kolosci v. Lindquist,
47 F.R.D. 319 (N.D. Ind. 1969).
160.  FED. R. CIV. P. 30(c), *Amendments,* 48 F.R.D. at 510.
        In view of the many depositions taken from which nothing useful is discovered,
   the revised language provides that transcription is to be performed if any party
   requests it.  The fact of the request is relevant to the exercise of the court's
   discretion in determining who shall pay for transcription.
*Adv. Comm. Note,* 48 F.R.D. at 515.
        An earlier survey showed that ninety-six out of one hundred depositions were
actually transcribed.  *See* Wright, Wegner & Richardson, *supra* note 11.
161.  Under ILL. R. CIV. P. 206(e), the deposition, "shall be transcribed at the
request of any party."
162.  FED. R. CIV. P. 32(a), *Amendments,* 48 F.R.D. at 517.
163.  *See* W. BARRON & A. HOLTZOFF, *supra* note 70, at 165.
164.  *See* FED. R. CIV. P. 32(a)(1), *Amendments,* 48 F.R.D. at 518.

Case 1:13-md-02419-RWZ Document 2353-2 Filed 10/23/15 Page 26 of 51
Schmertz: Written Depositions under Federal and State Rules as Cost-Effectiv

has also testified in person.[165] Only if a non-party witness is "unavailable" under one of the five conditions set forth in Rule 32(a)(3),[166] may a party offer that deposition as affirmative proof in lieu of the deponent's "live" testimony.

Relatively few reported cases illustrate the uses of rule 31 depositions as evidence. Some litigants have considered written depositions appropriate in gathering facts for threshold motions challenging jurisdiction, process, or venue.[167] Written depositions may have considerable value in connection with summary judgment motions.[168] While they are more costly than the often-used *ex parte* affidavit, the deposition seems a more complete and balanced way of informing the court of the existence of genuine issues of fact. These depositions seem useful also in connection with special quasi-penal proceedings. They may have a significant role to play in disbarment proceedings.[169] The written deposition has another potentially important role in federal habeas corpus hearings. However, the vague language of federal rule 81(a)(2)[170] and the pertinent federal statute[171] have produced conflicting interpretations as to the availability of discovery in habeas corpus matters.[172] In *Harris v. Nelson,* the United States Supreme Court held that the trial court has discretion to permit petitioner to obtain discovery if he makes out a prima facie case for relief.[173] Rule 31, therefore, has a valuable function both for pure discovery and proof at the hearing.[174]

---

165. *See* FED. R. CIV. P. 32(a)(2). *See also* Community Counseling Serv., Inc. v. Reilly, 317 F.2d 239 (4th Cir. 1963); Snowhite v. State *ex rel.* Tennant, 243 Md. 291, 310, 221 A.2d 342, 353 (1966).
166. FED. R. CIV. P. 32(a)(3). The conditions include: death of deponent; location of witness more than 100 miles from the courthouse; inability to attend through age, illness, infirmity or imprisonment; inability of offering party to subpoena witness; or other exceptional circumstances which warrant dispensing with the personal appearance of witness. *Amendments,* 48 F.R.D. at 518.
167. *See, e.g.,* River Plate Corp. v. Forestal Land, Timber & Ry. Co., 185 F. Supp. 832 (S.D.N.Y. 1960), where foreign defendants unsuccessfully sought to be deposed in writing in connection with threshold motions relating to jurisdiction and venue.
168. *Cf.* Hahn v. Bucyrus-Erie Co., 8 F.R.D. 315 (E.D. Pa. 1948).
169. *See* State *ex rel.* Florida Bar v. Junkin, 89 So. 2d 481 (Fla. Sup. Ct. 1956).
170. FED. R. CIV. P. 81(a)(2), provides in part: "These rules are applicable to . . . habeas corpus, . . . to the extent the practice in such proceedings is not set forth in statutes of the United States and has heretofore conformed to the practice in civil actions."
171. 28 U.S.C. § 2246 (1964), provides:
On application for a writ of habeas corpus, evidence may be taken orally or by deposition, or, in the discretion of the judge, by affidavit. If affidavits are admitted any party shall have the right to propound written interrogatories to the affiants, or to file answering affidavits.
172. *See* Note, *Civil Discovery in Habeas Corpus,* 67 COLUM. L. REV. 1296, 1301 (1967).
173. 394 U.S. 286, 290 (1969).
174. *See* Molignaro v. Dutton, 373 F.2d 729 (5th Cir. 1967). In this case the state trial prosecutor's answers to rule 31 interrogatories flatly contradicted the testimony given by petitioner as to his understanding of his constitutional right to representation by counsel. In reversing and remanding, the court stated at 730-31:
We are careful not to condemn written interrogatories as such. With the large volume of cases arising . . . and with [the] witnesses scattered, the state

Case 1:13-md-02419-RWZ Document 2353-2 Filed 10/23/15 Page 27 of 51

To avoid personal hardship, a party occasionally tries to use his own rule 31 deposition as evidence instead of appearing to testify at the trial. The leading case in this area is *Richmond v. Brooks.*[175] The court there ruled that a self-employed plaintiff from California could properly offer her written deposition as a mainstay of her prima facie case, on the theory that a non-resident should not be forced to wait an indefinite period at the forum for her case to be called.[176] Three years later, a district court, while recognizing that special circumstances might warrant a party in taking his own written deposition avowedly for future use at trial, denied leave to a plaintiff who could travel to the forum without hardship to be orally deposed.[177] Where a party has had an opportunity to cross-examine his adversary in writing, it would seem acceptable to use this deposition in lieu of his testimony. While oral cross-examination is immeasurably superior to written cross-questioning, the party having to cross-examine in writing may not be at a much greater disadvantage than his opponent who is relying on written direct and re-direct questions. In any event, it has been held that the adverse party would not be denied his right to trial by jury if his opponent is allowed to submit his answers to written interrogatories as partial proof of his case.[178]

While most federal and state courts agree that the contents of depositions offered at trial have to satisfy rules of evidence, some state courts appear more willing to exclude them because of pre-trial procedural violations. For example, one such court excluded answers to rule 31 interrogatories on the basis of a notice defective as to time.[179]

---

is to be encouraged in exploiting all administrative improvisations for the development of the facts. . . . But this case again points out that these [written interrogatories] must be carefully constructed to elicit specific facts, [and] not conclusory generalities.
The interrogatory in question was:
  Q. If you were present when Henry A. Molignaro entered his plea of guilty to molesting a minor, please state whether or not Henry A. Molignaro was advised of his constitutional rights concerning the appointment of legal counsel for his defense.
  A. Henry A. Molignaro was so advised.
The court did not discuss the absence of cross interrogatories from petitioner. *See also* McGarrah v. Dutton, 381 F.2d 161, 163 (5th Cir. 1967).
  175. 227 F.2d 490 (2d Cir. 1955). *See* Annot., 13 A.L.R.3d 1312 (1967).
  176. The court rejected defendant's arguments that plaintiff had procured her own absence in violation of former rule 26(d)(3) [now FED. R. CIV. P. 32(a)(3)(B)]. *Id.* at 493.
  177. *See* Smith v. Morrison-Knudsen Co., 22 F.R.D. 108 (S.D.N.Y. 1958). In light of the policy in rule 32(a)(3) favoring oral testimony, a court should require a strong showing of good cause where it knows ahead of time that a party plans to depose himself for use as trial testimony. Prior to trial, the court may still opt for oral discovery in order to protect the opponent's right to an adequate cross-examination. In *Richmond,* however, the intent to offer apparently did not become known until trial.
  178. *See* Ross v. Lewin, 83 N.J. Super. 420, 200 A.2d 335, 336–37 (1964).
  179. Kelly v. Mullin, 159 Colo. 573, 578, 413 P.2d 186, 189 (1966). The trial judge also expressed the view that the answers to the interrogatories were inconsistent and conflicting. The appellate court, however, declined to rule on this point.

In one state, proceeding by mere notice rather than by special motion procedure may also lead to the exclusion of a deposition from evidence.[180] In contrast, a federal litigant may not tarry until trial to raise known technical defects which could have been obviated.[181]

### I. Protective Orders and Written Depositions

To mitigate harshness, harassment, or unfairness in the method, timing, or scope of a deposition noticed by another party, a party or deponent may seek certain protective orders.[182] Most protective orders affecting oral discovery merely regulate the terms and conditions of the taking.[183] On the other hand, many courts are skeptical of the value of rule 31 discovery.

With some regularity, courts completely supplant written depositions with oral ones.[184] A judge may sometimes order an oral deposition after a written deposition has revealed a poor data return.[185] Some courts may reconsider their earlier denial of oral cross-examination if convinced of the inadequacy of the rule 31 transcript.[186]

### J. Preview of Deposition Questions by Deponent

As previously observed, rule 31 in specific terms provides for an initial exchange of direct, cross, redirect, and recross interrogatories among the various parties to the case. The final package of interrogatories goes directly to the officer who propounds them to the deponent. For tactical reasons, however, a discoverer or an opponent may directly forward to the deponent a copy of some or all of the pending interrogatories. The goal may be to help the witness improve the usefulness of his direct responses or to fend off probing cross-questions. It is questionable, however, whether this tactic is in accordance with the intent of the discovery rules.

A careful attorney will usually want to confer with his client or with a friendly witness whose deposition is about to be taken. Such a conference can help the deponent in answering both direct and cross-

---

180. *See* Reed v. Fish Eng'r Corp., 74 N.M. 45, 52–53, 390 P.2d 283, 288–89 (1964).
181. *See* Fed. R. Civ. P. 32(d). *See also, e.g.,* Valdez v. United States, 326 F.2d 598 (9th Cir. 1963) (deponent failed to sign and officer omitted to note reason).
182. Fed. R. Civ. P. 26(c).
183. *See* Schmertz, *supra* note 7, at 396–410.
184. *See, e.g.,* Vareltzis v. Luckenbach S.S. Co., 20 F.R.D. 383 (S.D.N.Y. 1956). *But see* Weinberg v. Travelers Fire Ins. Co., 12 F.R.D. 80 (S.D.N.Y. 1951).
185. *See* Virginia-Carolina Chem. Corp. v. Conners-Standard Marine Corp., 144 F. Supp. 676 (S.D.N.Y. 1956).
186. *See* Wheeler v. West India S.S. Co., 11 F.R.D. 396, 397–98 (S.D.N.Y. 1951). In United States v. Nat'l City Bank of N.Y., 1 F.R.D. 367 (S.D.N.Y. 1940), where the deponent had been orally examined and cross-examined in a state court action on the same general subject, the trial judge considered this data an adequate aid in preparing effective written cross-interrogatories.

Case 1:13-md-02419-RWZ Document 2353-2 Filed 10/23/15 Page 29 of 51

interrogatories, just as they assist prospective trial witnesses in preparation for direct and cross-examination.[187] Prior to an oral deposition, of course, counsel can make educated guesses about the probable lines of inquiry which his opponent will undertake. Under rule 31, however, all questions are precisely known by the parties beforehand. The deponent who has been equipped with a copy of the deposition can prepare himself to deal with each specific question. Some feel that this sort of "preview" may be a proper and desirable procedure.[188] While a preview by one side may arguably reduce the effectiveness of rule 31 for the adversary,[189] the leading federal decision denied a motion to suppress squarely based on this argument. In *Hamdi & Ibrahim Mango Co. v. Fire Association of Phila.,* an officer of plaintiff corporation taking a rule 31 deposition abroad sent a presumably friendly witness a copy of the direct interrogatories before the deposition.[190] Reviewing the theory that counsel has a right to prepare a deponent by going over the substance of his testimony, the court found that it would be too hard to draw a line between such proper preparation and the improper act of putting words in the witness' mouth and that the whole matter must be left to the ethics of counsel.[191] The court stressed that the complexity of that particular subject matter required deponent to refresh his recollection from numerous documents relating to transactions occurring years before.[192] Sufficient protection was supposedly afforded because the adversary had included cross-questions eliciting the fact of preview with counsel and could use those answers to test the deponent's credibility at trial.[193]

---

187. *See* R. KEETON, TRIAL TACTICS AND METHODS 384 (1954).

188. *See* E. FULOP, NEW JERSEY PRACTICE 351 (1954). One District of Columbia attorney responding to an informal questionnaire report said that he always shows the interrogatories to the deponent ahead of time if the deponent is his own witness or a friendly witness to find out what the witness is going to say.

189. *Cf.* Perry v. Edwards, 16 F.R.D. 131, 133 (W.D. Mo. 1954).

190. 20 F.R.D. 181 (S.D.N.Y. 1957).

191. *Id.* at 183.

192. *Id.* at 184. There were 35 direct interrogatories and 119 cross interrogatories involved in this case. In Allen v. Seyfried, 43 Wis. 414, 418 (1877), cited in *Hamdi,* the state court declared:

    . . . it is absolutely necessary, in certain cases where a witness is to be examined in reference to a transaction which was the subject of correspondence, or which involved numerous items or dates, that he should be informed beforehand of the nature and scope of the questions he will be called upon to answer, in order that he may be prepared for the examination. For it is obvious that, without some previous preparation to refresh his memory in such cases, his testimony would be nearly or quite valueless.

193. *See* Hamdi & Ibrahim Mango Co. v. Fire Ass'n of Phila., 20 F.R.D. 181, 183 (S.D.N.Y. 1957). This may be the only acceptable, though inadequate, method of trying to counteract the adverse effects of a preview since it may be beyond the officer's function to note any such facts on the deposition itself. *See* Gill v. Stolow, 16 F.R.D. 9 (S.D.N.Y. 1954). "On the other hand, in some cases the effect of such preparation in avoiding damaging answers to cross-interrogatories might be tactically more significant." Note, *supra* note 111, at 959 n.139.

Leading the opposition, Professor Moore argues that the impairment of spontaneity resulting from such previews materially reduces the value of rule 31 as a discovery device.[194] Unlike rule 33 interrogatories to parties, rule 31 clearly attempts to preserve as many of the useful characteristics of oral examination as possible. One of the best ways of achieving this goal is to minimize the influence of counsel and conscious contrivance in the framing of answers.[195] Revealing the interrogatories ahead of time raises the already high odds against obtaining frank and honest answers through the use of written depositions.[196] These considerations, however, may not have much impact upon what is done in actual practice.[197]

III.  STRATEGIC CAPABILITIES OF RULE 31 DEPOSITION

*A.  In General*

The required interchange of questions and cross-questions makes rule 31 more cumbersome than the *ex parte* rule 33 interrogatories. Unlike those state rules patterned on former federal rule 33, however, written depositions are not limited to discovery from adverse parties. Moreover, the deposition is designed to achieve a degree of directness and spontaneity. The rule 31 deponent was intended to be giving direct, on-the-spot answers to questions he is hearing for the first time. Rule 33 direct interrogatories, on the other hand, envisioned the assistance of counsel in the deponent's preparation of answers. Rule 33 discovery should, therefore, take less time and money. Once the questions are drawn, counsel merely has to mail them directly to the other party. The discoverer need not pay for an officer or transcript.[198]

In most situations, the oral deposition is the most effective fact-

---

194. *See* 4 MOORE ¶ 31.02, at 2256–57, where the author states:
    In the usual case, written interrogatories under Rule 31 are resorted to when oral examination under Rule 30 is for some reason impractical. If they are to be an adequate substitute for oral depositions, the maximum spontaneity of the answers should be preserved and the interrogatories should not be provided to the deponent in advance of the examination. . . . When the deponent is hostile and not a party and the opposing party provides him with the interrogatories, or when a friendly witness is provided with a copy of the cross-interrogatories, the utility of depositions under rule 31 is materially reduced, which may account in part for the fact that they are seldom used.

195. *See* Note, *supra* note 111, at 959.

196. *See* M. DEUTZ, FEDERAL CIVIL PRACTICE 402 (1961); Twente, *Discovery Depositions,* 1959 U. ILL. L.F. 695, 720 (1959).

197. The survey of selected District of Columbia attorneys, *supra* note 15, indicates that out of seventeen responses on this point, seven said opposing counsel "usually," and four said they "sometimes," provided copies to deponents ahead of time. Of the twenty-two who gave their views on the propriety of this procedure, six approved, seven disapproved and nine expressed no opinion.

198. *See* United States v. McWhirter, 376 F.2d 102, 106 (5th Cir. 1967).

*Villanova Law Review, Vol. 16, Iss. 1 [1970], Art. 3*

36                  VILLANOVA LAW REVIEW                [VOL. 16: p. 7

gathering device.[199] If counsel's question is not understood, he can immediately rephrase it. If the deponent's reply turns out to be ambiguous, incomplete, or evasive, counsel can persistently frame additional queries until he gets definite answers. In contrast, no matter how much effort counsel puts into framing written interrogatories, he can scarcely avoid some ambiguity and can hardly hope to anticipate all possible evasions.

As to advantages, rule 31 depositions usually cost less than the oral version, particularly when the deponent resides at a distance. When a case involves a small amount in dispute, this economy can be helpful. Moreover, some kinds of issues and witnesses may respond well to written discovery.

The usual cost factors for the rule 31 written deposition include a fee for the officer, an hourly fee for the reporter, a witness fee for a non-party, the per page expense for the original and any copies of the typed transcript, and the professional time of counsel in preparing the questions. The oral deposition may include additional cost factors such as the professional time of the attorney in taking the deposition, and sometimes the extra expense of travel and maintenance if the deposition is taken outside the district or state.[200]

Many state and federal courts implicitly recognize the moderate costs of rule 31 discovery by accepting the arguments of some litigants that they cannot afford any other method.[201] Many rule 30(b) protective rulings point to written discovery as a cheaper alternative to oral depositions.[202] A number of commentators have stressed the economic features of written depositions.[203]

This praise of rule 31 needs qualification, however. One author suggests that the cost of the court reporter is likely to be comparable for both written and oral depositions of similar scope.[204] Most rule 31

---

199. *See, e.g.,* Seuthe v. Renwal Prods., Inc., 38 F.R.D. 323 (S.D.N.Y. 1965); Wright v. Philadelphia Transp. Co., 24 Pa. D. & C.2d 334, 340 (Philadelphia County C.P. 1961). *See also* R. KEETON, *supra* note 187, at 387.

200. Expense of oral deposition may provide the well-financed litigant with the greatest advantage over the poor litigant. *See* Rosenberg, Freund & Doskow, *Changes Ahead in Federal Pretrial Discovery: A Panel,* 45 F.R.D. 479, 500 (1969).

201. *See, e.g.,* Gitto v. "Italia," Societá Anonima Di Navigazione, Genova, 28 F. Supp. 309, 310 (E.D.N.Y. 1939); Wright v. Wright, 16 N.J. Super. 339, 84 A.2d 657 (1951).

202. *See* J. Schmertz, *supra* note 7, at 397–99.

203. *See* R. FIELD & V. McCUSICK, *supra* note 96, at 294; M. DEUTZ, *supra* note 196, at 458; Louisell, *Discovery Today,* 45 CALIF. L. REV. 486, 493 (1957). Doelle, *Weapons of Discovery,* 42 MICH. ST. B.J. 18, 22 (1963); Louisell, *Discovery and Pre-Trial Under the Minnesota Rules,* 36 MINN. L. REV. 633, 650 (1951); Lane, *Using Discovery Effectively,* 46 NEB. L. REV. 449, 453 (1967). Of the 20 practitioners responding to the District of Columbia questionnaire, note 15 *supra,* fifty percent indicated that the written deposition was "much less expensive" than the oral. Another fifteen percent indicated that it was "less expensive." One attorney suggested that the lesser expense holds true only if there was no need for someone to go out and interview the deponent ahead of time.

204. *See* M. DEUTZ, *supra* note 196, at 400.

depositions, however, are probably shorter in word count than oral depositions. In actual practice the written device tends to be chosen for relatively simple and direct tasks. In a complex matter, though, parties trying to frame truly searching interrogatories will probably come up with a lengthy and elaborate product. Some practitioners may spend more time preparing rule 31 questions than they would in preparing for and taking an oral deposition.[205] The considerable time needed to prepare effective written questions may make the legal fees for both types of depositions quite similar,[206] thus tending to equalize costs.[207] The engagement of distant counsel to take a distant oral deposition is sometimes employed as a compromise between the effectiveness and the expense of the oral deposition and the fact-gathering limitations of rule 31.[208]

## B. *Rule 31 and Discovery Outside the Forum*

Since counsel is not needed at rule 31 depositions distinct cost savings may result in using written discovery outside the state or federal district where the action is pending.[209]

Federal rule 30(b) and similar state rules allow courts in their discretion, and for good cause, to substitute rule 31 interrogatories where another party has requested an oral deposition.[210] Numerous decisions have applied this discretionary power to distant deposi-

---

205. One District of Columbia attorney responding to the questionnaire, note 15 *supra,* reported that he has never used a rule 31 deposition. He gave the following explanation: "I have always used oral depositions or simple written interrogatories because it takes more of my time to use rule 31 and, therefore, is more expensive than oral to the client." *Accord,* Atlantic Coast Insulating Co. v. United States, 34 F.R.D. 450, 452–53 (E.D.N.Y. 1964) (rule 31 too often "more laborious than productive"). *See also* Stanton, *Interrogatories Restrained,* 37 J. KAN. B. Ass'N 7, 63 n.7 (1968).

206. One District of Columbia attorney reported that with respect to rule 31 "the fee for legal services was as much as for oral deposition. However, the court reporter's bill was the only saving and this was significant."

207. *See Author's Commentary,* KANSAS STAT. ANN. § 60–231.

208. *See* H. HICKAM, *supra* note 37, at 124. The author warns us that the expense and time of educating local counsel is a disadvantage of this approach. *Id.* One District of Columbia attorney, *see* note 15 *supra,* reported that he found it better to take oral depositions by using out-of-town counsel even where the client has limited funds since rule 31 would probably not produce the best results and would not cost much less than oral depositions with out-of-town counsel. *Accord,* Strasser v. Pennsylvania Spool & Equip. Co., 9 Pa. D. & C.2d 714 (Lehigh County C.P. 1956), where the court ordered use of local counsel rather than "clumsy and restrictive interrogatories." The use of local counsel solely to interview a witness in preparation for a written deposition may also be valuable. 2 F. BUSCH, LAW AND TACTICS IN JURY TRIALS § 213, at 410 (Encyc. ed. 1959).

209. *See* Speck, *The Use of Discovery in United States District Courts,* 60 YALE L.J. 1132, 1140 (1951). In this author's survey, twenty-one percent of all "outside" depositions were under rule 31.

210. *See* Gitto v. "Italia," Societá Anonima Di Navigazione, Genova, 28 F. Supp. 309, 310 (E.D.N.Y. 1939).

tions,[211] and commentators seem to agree on the value of this approach.[212] Even parties may answer rule 31 questions near their residence and avoid travel to the forum if hardship can be shown.[213] In federal habeas corpus actions by state prisoners, the frequent dispersal of trial witnesses and court personnel provides strong reasons for written depositions.[214]

A few state decisions have approved rule 31 as to non-resident witnesses.[215] A recent Pennsylvania decision interpreted its rules as providing a right to use written depositions for a deponent more than 100 miles away. The court held that this right cannot be abrogated by the court *sua sponte.*[216]

A significant expenditure faced by many modern litigants arises from the need to obtain discovery or evidence from witnesses outside the United States. Due to continuing improvements in international travel and communications, more and more foreign citizens and Americans residing abroad will be found to have information vital for pretrial preparation.[217] Foreign military and diplomatic personnel may have witnessed an incident in question while stationed in the United States, but their American tours of duty will often end before the case can be tried.[218] Especially where the litigant's financial resources are modest, counsel can best turn to the written deposition.[219]

The reported decisions refer to rule 31 depositions being taken in many nations. In the European sector, depositions have been directed at persons residing in England,[220] France,[221] Germany,[222]

211. *See* cases collected in Schmertz, *supra* note 7.

212. *Cf., e.g.,* C. WRIGHT, LAW OF FEDERAL COURTS 370–71 (1970); M. DEUTZ, *supra* note 196, at 400; Note, *An Examination of the Protective Orders Issued under Rule 30(b),* 15 WYO. L.J. 85, 86 (1960).

213. *See* Schmertz, *supra* note 7, at 398–99.

214. *See* Molignaro v. Dutton, 373 F.2d 729–30 (5th Cir. 1967). *See generally* Note, *Civil Discovery in Habeas Corpus,* 67 COLUM. L. REV. 1296 (1967).

215. *See, e.g.,* Wright v. Wright, 16 N.J. Super. 339, 84 A.2d 657, 659 (1951); Thompson v. Banes Co., 71 N.M. 154, 376 P.2d 574 (1962).

216. Glisson v. Carlin, 204 Pa. Super. 335, 204 A.2d 285 (1964).

217. In Smith v. Morrison-Knudsen Co., 22 F.R.D. 108, 113 n.3 (S.D.N.Y. 1958), the court noted that in 1957, 580,000 American civilians resided abroad. The 1960 census reported 1,374,421 Americans, military and civilian, located abroad. U.S. BUREAU OF THE CENSUS, STATISTICAL ABSTRACT OF THE UNITED STATES 11 (89th ed. 1968).

218. *See, e.g.,* Zassenhaus v. Evening Star Newspaper Co., 404 F.2d 1361 (D.C. Cir. 1968) (key witness returned to Burma unexpectedly before deposition could be taken).

219. For an interesting account of the use of written depositions to obtain testimony from a large number of important witnesses residing abroad, *see* L. NIZER, MY LIFE IN COURT 26–29 (Doubleday 1961).

220. Kurt M. Jachmann Co. v. Hartley, Cooper & Co., 16 F.R.D. 565 (S.D.N.Y. 1954); Weinberg v. Travelers Fire Ins. Co., 12 F.R.D. 80 (S.D.N.Y. 1951).

221. Wheeler v. West India S.S. Co., 11 F.R.D. 396 (S.D.N.Y. 1951).

222. Gill v. Stolow, 16 F.R.D. 9 (S.D.N.Y. 1954); Heyl v. R.P. Farnsworth & Co., 28 App. Div. 2d 523, 279 N.Y.S.2d 974 (1967).

Italy,[223] and Denmark.[224] Both federal and state litigants have used
rule 31 with regard to military personnel stationed overseas.[225] Fed-
eral decisions also contain instances where counsel sought written
depositions of witnesses in Canada,[226] Africa,[227] the West Indies,[228]
the Middle East,[229] Burma,[230] and China.[231]

Some jurisdictions require special leave to take foreign depositions
other than by written interrogatories,[232] and some American litigants
will have no choice but rule 31 where foreign law bans oral proceed-
ings.[233] Nevertheless, care should be taken to ensure that the foreign
presiding official does not have an excuse to intrude himself into the
proceedings any more than necessary.[234] While one admiralty court
has expressed doubt that a litigant has an absolute right to take written
depositions abroad,[235] a party unable to afford any other method of
gathering information overseas seemingly has a good chance to obtain
court approval.

## C. Time Consumption Factors

Rule 31 seems best suited for depositions requiring only brief ex-
amination,[236] since its use for more complex matters is relatively time
consuming. There are five major time variables involved with written
depositions: the drafting of interrogatories; the exchange of direct,
cross, redirect and re-cross questions; the arranging for a qualified

---

223. *See* Gitto v. "Italia," Società Anonima Di Navigazione, 28 F. Supp. 309
(E.D.N.Y. 1939) ; Pavia & Co. v. Siegel Chem. Co., 1 App. Div. 2d 655, 146 N.Y.S.2d
656 (1955).
224. Isbrandsten v. Moller, 7 F.R.D. 188 (S.D.N.Y. 1947). In Tsangarakis v.
Panama S.S. Co., 41 F.R.D. 219 (E.D. Pa. 1966), rule 31 discovery was permitted of
persons in Holland and Greece.
225. Powers v. Monark Motor Freight System, Inc., 7 FED. RULES SERV. 30(b) 34,
Case 1 (1943) ; Glisson v. Carlin, 204 Pa. Super. 335, 204 A.2d 285 (1964). *See also*
State *ex rel.* Chandler v. Scott, 427 S.W.2d 759 (Mo. 1968) (party in Vietnam suing
for divorce may take own written deposition).
226. Cronan v. Dewavrin, 9 F.R.D. 337 (S.D.N.Y. 1949).
227. Awani v. Public Nat'l Bank of N.Y., 12 F.R.D. 263 (S.D.N.Y. 1952)
(Nigeria).
228. Lago Oil & Transp. Co. v. United States, 97 F. Supp. 438 (S.D.N.Y. 1951)
(Aruba).
229. Hamdi & Ibrahim Mango Co. v. Fire Ass'n of Phila., 20 F.R.D. 181
(S.D.N.Y. 1957) (Lebanon) ; Kiachif v. Philco Int'l Corp., 10 F.R.D. 277 (S.D.N.Y.
1950) (Iran).
230. Zassenhaus v. Evening Star Newspaper Co., 404 F.2d 1361 (D.C. Cir. 1968).
231. Winograd Bros., Inc. v. Chase Bank, 31 F. Supp. 91 (S.D.N.Y. 1939).
232. *See, e.g.,* Glisson v. Carlin, 204 Pa. Super. 335, 204 A.2d 285 (1964).
233. *E.g.,* Switzerland. *See* Oscar Gruss & Son v. Lumbermen's Mut. Cas. Co.,
41 F.R.D. 279 (S.D.N.Y. 1966), aff'd, 422 F.2d 1278 (2d Cir. 1970). The courts
of Holland and West Germany apparently have refused to compel attendance at any
type of deposition taken in connection with foreign proceedings. *See* Smit, *supra*
note 140, at 1059.
234. *Cf.* Wm. A. Hausman Co. v. United States, 260 F. Supp. 860 (Cust. Ct. 1966).
235. Otis McAllister & Co. v. S.S. Marchovelette, 200 F. Supp. 695, 696 (S.D.N.Y.
1961) (dictum).
236. *See* Moore v. George A. Hormel & Co., 2 F.R.D. 340 (S.D.N.Y. 1942).

Case 1:13-md-02419-RWZ Document 2353-2 Filed 10/23/15 Page 35 of 51

officer to administer the deposition; the recording and transcribing of answers from deponents; and the disposing of any objections.

Once the discovering party has forwarded all questions to the officer, the participants cannot make changes or corrections. Great care in draftsmanship is needed not merely to forestall objections but to communicate to the witness all of the specific information desired.[237] With a witness likely to be uncooperative, the questions must be especially concrete and lucid. Counsel may need extra questions phrased in the alternative to reduce sidestepping and evasion. These precautions take much time and effort.[238]

Rule 31 creates a new maximum time limit for the interchange of all interrogatories among the parties. The former federal rule[239] which allowed a total period of 18 days, not counting time for service by mail, had been cited as a drawback.[240]

Some delay is unavoidable in other discovery, as well. The notice to take an oral deposition often has to be served several weeks prior to the date set. Moreover, under many versions of rule 33 today, the discoverer has to give the adversary at least 15 days to answer. In light of the considerable time often involved in disposing of modern litigation, the eighteen-day period certainly does not seem exorbitant.[241] Furthermore, this period itself may not be long enough, and this time requirement has occasionally increased the overall amount of time necessary to complete written depositions. If a busy attorney receives a fairly complex set of interrogatories he will often have to obtain a stipulation for more time to draw up his questions. Worse, he may file a time-consuming motion for extension. In light of these practical problems the 1970 federal amendments raise the total time for exchange of written interrogatories to fifty days, exclusive of service by mail.[242]

---

237. *See* Stanton, *supra* note 205, at 63; KAN. STAT. ANN. § 60–231 (1964).

238. *See generally* Awani v. Public Nat'l Bank of N.Y., 12 F.R.D. 263, 265 (S.D.N.Y. 1952). A recent comprehensive survey of federal discovery practice indicated that plaintiff's counsel spent about twenty-five percent more time initiating rule 31 depositions, than on oral discovery but one half as much time in responding to written versus oral depositions. W. GLASER, *supra* note 4, at 74. Fourteen out of the twenty District of Columbia attorneys responding to the time consumption item of the informal questionnaire, note 15 *supra*, indicated that the rule 31 deposition consumed "more time than" or "much more time than" oral depositions in comparable situations.

239. *See* FED. R. CIV. P. 31(a), *Amendments*, 48 F.R.D. at 516 (former time period included).

240. *See* H. HICKAM, *supra* note 37, at 123.

241. While the overall median time interval from issue to trial in federal civil actions was twelve months in fiscal 1968, in some of the busier districts the medians ran to thirty-nine months (E.D. Pa.); thirty-six months (S.D.N.Y.); and twenty-five months (D.D.C.). 1968 REPORTS OF THE PROCEEDINGS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES 111–12.

242. FED. R. CIV. P. 31(a), *Amendments*, 48 F.R.D. at 516.

Perhaps because of its unpopular reputation, an attempt by one party to use a rule 31 written deposition often produces wasteful objections, motions to quash, or motions for protective orders.[243] This reduces efficiency and raises costs.

### D. Written Depositions and Amount in Controversy

A trial attorney must make frequent judgments regarding the decision to sue and the amount to be spent on pre-trial preparation. One relevant consideration is the amount in controversy. A plaintiff with a $12,000 law suit in federal court will often face the possibility of spending in excess of $500 on discovery.[244] Unless a battle over principle is involved, even a wealthy plaintiff might balk at such a proportionally large expense for discovery alone. Such a cost burden would be heavy for a middle income client and out of the question for a low income party. A litigant of moderate means could gamble on an apparently strong case in the hopes that most discovery costs will eventually be assessed against the opponent.[245] A defeat might be onerous but seldom disastrous to one who has accumulated savings or can get loans or extensions of credit to spread out the cost of litigation. Some clients, however, suffer chronically from irregular income, lack of credit, and little savings. In addition, many low income litigants, have relatively small damage claims.[246] Their attorneys must resort to cheaper methods of discovery or do without.[247]

To a limited extent the courts have recognized a relationship between damages claimed and discovery expense. In United States district courts, statutes require a jurisdictional amount in excess of $10,000 in both diversity[248] and general federal question cases.[249] However, federal court actions may also involve special federal question jurisdiction or involve the United States as party.[250] Most of

---

243. In response to the informal questionnaire, one District of Columbia practitioner states: "I doubt if less than 50% of the notice of depositions upon written interrogatories do not immediately incur or result in motions for protective orders or to quash, etc." *See also* H. HICKAM, *supra* note 37, at 124-25 (1953).

244. A recent study indicated, for example, that the middle fifty percent of the discovery cost totals for plaintiffs in Federal Employers' Liability Act suits, 45 U.S.C. § 51 (1964), ranged from $552 to $1,054 while the highest ten percent were $3,030 and over. W. GLASER, *supra* note 4, at 171.

245. *See* 4 MOORE ¶ 26.36; Schmertz, *supra* note 7, at 411-16.

246. Common damage criteria include such income-related factors as actual and perspective loss of income, value of impaired life expectancy and, in wrongful death actions, loss of expected contributions to next of kin.

247. *See* Note, *supra* note 212, at 86.

248. 28 U.S.C. § 1332 (1964).

249. 28 U.S.C. § 1331 (1964).

250. Of the 71,449 civil actions commenced during Fiscal Year 1968, about sixty-four percent were either private "federal question" suits or suits in which the United States was a party. 1968 REPORTS OF THE PROCEEDINGS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES 196-97.

VILLANOVA LAW REVIEW [VOL. 16: p. 7

these latter claims need no minimum amount.[251] Many state and local litigants presumably face problems of discovery expense in suits of modest dimension.[252] In three reported cases, federal courts have recognized that a relatively small amount in dispute aggravates the burden of expensive discovery.[253] Conversely a litigant demanding large damages is expected to assume the financial risk of oral depositions.[254]

A few state decisions consider the relevancy of the damage figure with regard to discovery procedure. Even though only $1,000 was at stake, a New Mexico court declined to let a New York plaintiff (a business partnership) substitute written depositions to avoid oral discovery in New Mexico.[255] The court de-emphasized the significance of the small damage figure and stressed the plaintiff's duty to make himself available for discovery at the forum. Instead of ordering written interrogatories, another court attempted to reduce expenses in a case involving a small claim by requiring the defendant to retain local counsel in Mexico City to handle plaintiff's deposition.[256] There should be no fixed rule that a party must spend more on discovery because the amount in issue is large. This is only one variable. Courts should remain sensitive to a party's present ability to pay for discovery and to run the risk of non-reimbursement at the conclusion of the case.

The total impact of distance, time, and amount on the utility of rule 31 should be considered. The cost savings of written over oral

---

251. "[A] series of particular statutes grant jurisdiction without regard to the amounts in controversy, in virtually all the areas which otherwise would fall under the general federal question statutes." C. WRIGHT, *supra* note 212, at 108. Among the sixteen types of federal question suits listed by the author three of them involve such broad categories as cases arising under any act of Congress regulating commerce [*e.g.*, under the Federal Employers' Liability Act, 45 U.S.C. § 51 (1964)], cases to which the United States is a party, and actions under the federal civil rights statutes. *Id.*

252. *Cf.* Strasser v. Pennsylvania Spool & Equip. Co., 9 Pa. D. & C.2d 714 (Lehigh County C.P. 1956) ($1370); Salitan v. Carrillo, 69 N.M. 476, 368 P.2d 149 (1961) ($1000). The District of Columbia Court of General Sessions has local civil jurisdiction up to $10,000. D.C. CODE ANN. § 11-961 (Supp. V, 1966). The discovery provisions of this court resemble those of the federal rules. D.C. CODE ENCYCL. ANN., GENERAL SESSIONS COURT RULES § 26-37 (1967).

253. Hyam v. American Export Lines, Inc., 213 F.2d 221 (2d Cir. 1954) ($7,000) (*semble*); Timblo v. Rhode Island Ins. Co., 16 F.R.D. 563, 565 (S.D.N.Y. 1954) (less than $16,000); Taejon Bristle Mfg. Co. v. Omnex Corp., 13 F.R.D. 448, 451 (S.D.N.Y. 1953) ($8,700). In declining to require the plaintiff to travel from Korea to New York for oral depositions or to advance defendant's expenses to come to Korea the court in *Taejon* indicated that either result "[w]ould impose a staggering expense in relation to any possible judgment which may be recovered. To impose such an expense upon a litigant is tantamount to depriving it of its day in court." 13 F.R.D. at 451.

254. *See, e.g.,* Buryan v. Max Factor & Co., 41 F.R.D. 330, 332 (S.D.N.Y. 1967) ($1,500,000); Montgomery v. Sheldon, 16 F.R.D. 34, 35 (S.D.N.Y. 1954) ($254,117).

255. *See* Salitan v. Carrillo, 69 N.M. 476, 368 P.2d 149 (1961). Unlike the trial court, the Supreme Court of New Mexico discerned no special circumstances except for the proportion of the amount involved to travel expense, and noted that plaintiff had already obtained full oral discovery of defendant. *Id.* at 154-55. *See generally* the well-reasoned dissent of Justice Carmody, 69 N.M. at 484, 368 P.2d at 155.

256. *See* Strasser v. Pennsylvania Spool & Equip. Co., 9 Pa. D. & C.2d 714, 716 (Lehigh County C.P. 1956) ($1370).

depositions vary directly with the distance of the deponent from the forum. As to consumption of the lawyer's time, the matter is unclear. With rule 31, drafting does take much time, but so does preparation for an oral deposition.[257] Finally the desirability of rule 31 discovery varies inversely as the amount involved in the litigation. If damages are small and a key deponent lives halfway around the world, the ill-reputed written deposition may seem welcome indeed.[258]

### E. Effectiveness of Rule 31 in Obtaining Certain Types of Information

Courts and commentators generally agree that there are three types of issues a written deposition can effectively probe: first, into formal matters; secondly, into factual information contained in a deponent's records, and finally, into areas of fairly simple facts, such as times, places, names, or numbers.

Written depositions may also prove fruitful in obtaining evidence concerning formal and less controversial collateral matters, such as family relationships.[259] Moreover, in deposing a non-party witness solely to authenticate documents, a written deposition can do a yeoman-like job, especially as to large numbers of items involving several witnesses.[260]

The utility of written depositions to authenticate depends a great deal on the relatively non-controversial nature of the custodian's testimony. Where the genuinity of a signature or seal is hotly disputed rule 31 would be much less useful.[261] Where it seems advisable to confront a party with original documents purporting to bear his signature, the courts are likely to rule out the use of written depositions for this task.[262]

Written discovery can be helpful in getting information about the contents of records. To make sure the deponent brings needed records, the discoverer should secure a subpoena duces tecum.[263] This technique may be useful in business litigation where records are in the custody of non-party witnesses outside the forum,[264] or when the discovering

257. See R. KEETON, supra note 175, at 381–82.
258. See, e.g., Timblo v. Rhode Island Ins. Co., 16 F.R.D. 563 (S.D.N.Y. 1954).
259. See Robinson v. Tracy, 16 F.R.D. 113, 115 (W.D. Mo. 1954).
260. See Weinberg v. Travelers Fire Ins. Co., 12 F.R.D. 80 (S.D.N.Y. 1951); F. JAMES, CIVIL PROCEDURE 188 (1965); Sunderland, Discovery Before Trial Under the New Federal Rules, 15 TENN. L. REV. 737, 747 (1939); See also Winner, The Discovery Procedure in the General Practice, Proceedings of Civil Procedure, 12 WYO. L.J. 231 (1958). If the witness is an adverse party, rule 33 might be a simpler device.
261. Cf. Houghton, Mifflin Co. v. Stackpole Sons, Inc., 1 F.R.D. 506 (S.D.N.Y. 1940) (signatures on assignment of copyright to MEIN KAMPF).
262. See Groll v. Stolkin, 12 F.R.D. 262 (S.D.N.Y. 1951).
263. See American Foods, Inc. v. Dezauche, 74 F. Supp. 681, 683 (W.D.N.Y. 1947); Sorrells v. Cole, 111 Ga. App. 136, 140–41, 141 S.E.2d 193, 198 (1965).
264. See H. HICKAM, supra note 37, at 125.

VILLANOVA LAW REVIEW [VOL. 16: p. 7

party is mainly interested in book entries, dates, quantities, and prices covering a considerable period of time. During an oral examination there may be a temptation to save time by relying on the incomplete or vague memory of the witness. Under rule 31, however, the officer may be more willing to give the deponent ample opportunity to comb through the records to find precise answers.[265] If a party expects to offer the documents at trial, he can prepare interrogatories to elicit the factual foundation for admissibility. For instance, written questions could seek information to determine whether the records meet the requirements of an exception to the hearsay rule.[266]

Finally, written depositions serve well where the data sought lends itself to concise, direct, and clear-cut answers with little room for evasions or false shades of meaning.[267] Examples include the value of property and information about heirship, citizenship or other background facts involving definite times, places, or dates.[268] In a wrongful death action, one federal court ruled that rule 31 discovery could suitably inquire into family relationships and dependency.[269] In a Missouri domestic relations case, the court approved the use of a written deposition designed to preserve evidence as to dates of marriage and separation, conduct of the parties, the number and ages of children, income and military allotment figures, and even the husband's opinion of the wife's fitness to have custody of the children.[270] Rule 31 shares with other discovery devices an aptitude for getting specific descriptive information about documents and objects preliminary to a request or a motion to produce.[271]

On the negative side, there are a number of fact-gathering situations for which rule 31 discovery is thought to be unsuitable. There are three major situations: first, where the issues are complex or range over wide areas of time, place or subject matter; secondly, where counsel foresees a narrow inquiry into minute, but critical, details; and finally where discovery enters into technical and scientific matters.

---

265. *See* Wicker, *Tactical Advantages from The Use of Discovery,* 27 TENN. L. REV. 323, 328 (1960) (semble as to rule 31).

266. *See* Zassenhaus v. Evening Star Newspaper Co., 404 F.2d 1361, 1364 n.18 (D.C. Cir. 1968) (past recollection recorded); *See also* Weinberg v. Travelers Fire Ins. Co., 12 F.R.D. 80, 83 (S.D.N.Y. 1951) (business records).

267. *See* M. DEUTZ, *supra* note 196, at 400.

268. *See* Lane, *supra* note 203, at 453.

269. *See* Robinson v. Tracy, 16 F.R.D. 113, 115 (W.D. Mo. 1954).

270. *See* State *ex rel.* Chandler v. Scott, 427 S.W.2d 759, 760 (Mo. G. App. 1968). The use of written depositions to elicit descriptions of conduct and matters of opinion seems questionable, even for "evidentiary" purposes.

271. *See also* Rosenblum v. Dingfelder, 2 F.R.D. 309, 310 (S.D.N.Y. 1941) (documents). Where the identifying information is sought from an adverse party, the rule 33 device seems simpler.

Courts often bar written depositions based simply on the complexity of the issues.[272] For example, in one private antitrust action involving the motion picture industry, the court foresaw too many factual complexities for the use of rule 31.[273] Another court reached a similar conclusion in a fairly protracted breach of contract suit.[274] Where rule 31 depositions would involve lengthy or complex testimony, the real difficulty in preserving the opponents' right to cross examine is sometimes stressed. In *Lago Oil & Transportation Co. v. United States*,[275] for example, the libelant had prepared a rule 31 deposition with 146 questions (including subdivisions) all dealing with the salvor vessel's solitary maneuvering, firefighting and other salvaging maneuvers. The court pointed to the crucial importance of these issues in this case involving $175,000 in damage to the salvor ship and, in denying admission of the deposition, declared: "It will be difficult to formulate in advance written cross interrogatories to encompass and meet adequately the varied details which might be brought forth by an answer made by the captain to a direct written interrogatory."[276]

In another group of discovery situations there is the need to accurately pinpoint small details. Perhaps the leading rule 31 case in this area is *Vareltzis v. Luckenbach Steamship Co.*[277] The defendant corporation had noticed a written deposition of a former employee who had knowledge of the circumstances leading to a shipboard accident. Granting the injured seaman's request for oral discovery instead, the court stated: "The details of conversations, oral reports, inspections, the use of protective materials and similar matters can be better brought out by oral examination than by written interrogatories."[278] Another court ordered the parties at least to try written depositions of three witnesses in France who were allegedly present at an accident and witnessed plaintiff's supposed intoxication.[279] When counsel wants

---

272. *See, e.g.,* Oscar Gruss & Son v. Lumbermen's Mut. Cas. Co., 41 F.R.D. 279 (S.D.N.Y. 1966), *aff'd,* 422 F.2d 1278 (2d Cir. 1970); Clair v. Philadelphia Storage Battery Co., 27 F. Supp. 777 (E.D. Pa. 1939); *In re* Reis' Will, 48 Misc. 2d 330, 332, 264 N.Y.S.2d 731, 734 (Sup. Ct. 1965).

273. *See* Society of Indep. Motion Picture Producers v. United Detroit Theaters Corp., 8 F.R.D. 453, 456 (E.D. Mich. 1948). *See also* B. Goldman & W. Barthold, Depositions and Other Disclosure 138 (1966).

274. Canuso v. Niagara Falls, 7 F.R.D. 159, 161 (W.D.N.Y. 1945) (340-page contract with a claim for $369,000 and counterclaim involving $179,000).

275. 97 F. Supp. 438 (S.D.N.Y. 1951).

276. *Id.* at 439. *See* Goodrich-Amram, Pa. Proc. Rules Serv. § 4004(e)(1), at 50 (1954). *Cf.* Healy v. Rennert, 15 Misc. 2d 561, 182 N.Y.S.2d 375 (Sup. Ct. 1958). *See also* Fall Corp. v. Yount-Lee Oil Co., 24 F. Supp. 765, 766 (E.D. Tex. 1938).

277. 20 F.R.D. 383 (S.D.N.Y. 1956).

278. *Id.* at 384.

279. *See* Wheeler v. West India S.S. Co., 11 F.R.D. 396 (S.D.N.Y. 1951). The plaintiff attempted to reinforce his arguments against written interrogation by pointing to the language difference and to the possibly different standards of intoxication obtaining in France. *Id.* at 397. *See also* Morrison Export Co. v. Goldstone, 12

*Villanova Law Review, Vol. 16, Iss. 1 [1970], Art. 3*

46          VILLANOVA LAW REVIEW          [VOL. 16: p. 7

to probe into the fine details of what witnesses have observed, rule 31 is at its weakest.

Finally, courts have been generally hostile to attempts to depose witnesses on technical matters through rule 31 although the rulings are not entirely uniform. For example, rule 31 was held unsuitable to explore problems of engineering design and equipment,[280] as well as issues in the area of bio-chemistry,[281] but permissible in deposing a Russian lawyer on Russian law.[282] Here, as elsewhere, there should be no rigid approach.[283] The use of rule 31, to probe the professional competence of a defendant in a medical malpractice action would ordinarily seem undesirable.[284] Taking a different tack, one author suggests that rule 31 sometimes provides a good way to get technical information from a trained witness. In his view, questions can be more precisely framed in rule 31 depositions than they usually can in the course of oral discovery.[285]

The nature and complexity of the subject matter is therefore important in the choice of the discovery tool. However a low income litigant may need information unsuitable for rule 31, but may not be able to finance any other method.

### F. Type of Witness Involved

Written depositions are more effective with some types of witnesses than with others. There are two major determining factors: first, occupational status, and second, emotional orientation toward the parties.

Rule 31 is useful where it would be seriously inconvenient for the deponent to leave his job to attend an oral deposition. A good example might be a high government officer with a tight schedule and important

---

F.R.D. 258, 259 (S.D.N.Y. 1952) (in breach of contract action, fact that contracts are in writing does not justify written deposition).

280. V.O. Machinoimport v. Clark Equip. Co., 11 F.R.D. 55, 58 (S.D.N.Y. 1951).

281. Otis McAllister & Co. v. S.S. Marchovelette, 200 F. Supp. 695, 696 (S.D.N.Y. 1961).

282. United States v. Nat'l City Bank of N.Y., 1 F.R.D. 367 (S.D.N.Y. 1940). Other factors may have been controlling here since 800 pages of oral discovery had already been taken from this witness in a related state action. In another action, a defendant, with some success, sought information from a medical witness concerning the times of the first treatment or examination of the plaintiff; his past relationship with the law firm representing the plaintiff; and his relationship generally over a four-year period with individuals who were injured and later filed law suits. McNenar v. New York, Chi. & St. L. R.R. Co., 20 F.R.D. 598, 599, 602 (W.D. Pa. 1957).

283. Such an approach would, for example, unduly hamper discovery in complex anti-pollution litigation.

284. *See* Knappenberger v. Feldman, 6 Pa. D. & C.2d 728, 735 (Northampton County C.P. 1956).

285. *See* H. GILMORE, MICHIGAN CIVIL PROCEDURE BEFORE TRIAL 662-63 (1964). During an oral session, too, it might seem embarrassing (and costly) to have an expert consulting at counsel's elbow, whereas under rule 31, the expert can privately advise in the drafting of questions.

public responsibilities. In *Capitol Vending Co. v. Baker,* [286] the court suggested that it would be less vexatious to seek written, rather than oral, depositions of high federal officials. Moreover, the appearance of a government official at the deposing forum may sometimes be non-compellable, such as where a litigant in State *A* wants to depose an official of state *B*. Recourse to rule 31 may be adequate.[287]

Written depositions may work well with trained professionals who have a superior grasp of the issues,[288] and can probably be directed to medical and other experts,[289] particularly in the absence of a special need for oral discovery.[290] A few opinions stress the burdensomeness of oral depositions to busy professional men.[291] Moreover, where frequent objections on professional privilege grounds are likely to arise, some courts may prefer rule 31 because such objections can be decided in advance.[292] Other decisions simply reject written depositions of experts on the vague basis of "inadequacy."[293]

The other factor is the deponent's emotional orientation or bias. Through informal communication, telephone calls, attempts to interview, and the like, an experienced attorney can usually estimate the emotional bent of a prospective witness. Some of the witness's attitudes may derive from his own feelings about the event he witnessed. Others may be caused by prior contacts with the opponent. The common, and probably accurate, generalization is that rule 31 has limited value against unfriendly deponents.

Ideally, counsel should limit himself to getting simple data from cooperative witnesses.[294] If the witness seems anxious to help or at

---

286. 36 F.R.D. 45, 46 (D.D.C. 1964) (Holtzoff, J.) (Court declined to summon administrator of the National Aeronautics & Space Administration to oral deposition on grounds of harassment and inconvenience).

287. *See* Minnesota *ex rel.* Minn. Att'y Gen'l v. District Court, 155 Colo. 521, 523, 395 P.2d 601, 603 (1964). The Attorney General of Minnesota was considered non-compellable to appear in Colorado to be orally deposed under Colorado rules, though the State of Minnesota was the plaintiff and might arguably have been ordered to send him.

288. *See* Wright, Wegner & Richardson, *supra* note 11, at 99.

289. *See* Franks v. National Dairy Prod. Corp., 41 F.R.D. 234, 237 (W.D. Tex. 1966) (dictum as to names, factual data, and conclusions of chemist). *See also* Thompson v. Banes Co., 71 N.M. 154, 157, 376 P.2d 574, 576 (1962) (physician). *See also* Knighton v. Villian & Fassio e Compagnia, 39 F.R.D. 11, 14 (D. Md. 1965) (rule 31 appropriate to obtain expert findings but discoverer may be required to compensate expert for time spent responding).

290. Wright v. Philadelphia Transp. Co., 24 Pa. D. & C.2d 334, 340 (Philadelphia County C.P. 1961).

291. *See* McNenaer v. New York, Chi. & St. L. R.R. Co., 20 F.R.D. 598, 602 (W.D. Pa. 1957) (numerous questions on facts relating to expert's alleged bias in favor of plaintiff disapproved).

292. *See* Bialek v. March, 26 Pa. D. & C.2d 641, 642 (Montgomery County C.P. 1962).

293. *See, e.g.,* McLauren v. Kingsway Transports, 19 F.R.D. 357, 358 (S.D.N.Y. 1956) (physicians).

294. *See* M. DEUTZ, *supra* note 196, at 458.

Case 1:13-md-02419-RWZ Document 2353-2 Filed 10/23/15 Page 43 of 51

least neutral, he will make a sincere effort to fully and completely answer each interrogatory. Moreover counsel can informally develop in advance much of what a cooperative witness knows, and thus can frame pointed interrogatories.[295] If such a witness will definitely appear at trial, counsel may sometimes forego the deposition and save his client the cost thereof. But any real chance that an important witness might not appear at trial makes at least a rule 31 deposition advisable.[296]

Courts and writers stress the unsuitability of rule 31 against hostile deponents.[297] For example, such a deposition has been held unsuitable for witnesses who are trying to defend against pending criminal charges growing out of the same subject matter as the civil action.[298] The "rigidity" of written depositions is said to make it almost impossible to ferret out facts from evasive or non-responsive deponents.[299]. This would usually include adverse parties. Occasionally a party is able to reduce evasion by using a deponent's prior oral deposition to help him draft more productive questions.[300]

Finally rule 31 may have advantages as to several additional witness types. For example, one commentator recommends its use in obtaining sales and market facts from many companies or users since each witness is not important enough to individually depose, thereby requiring numerous oral depositions.[301] Another favors written depositions when the deponent is hard of hearing, or has language difficulties, or labors under a speech impediment.[302] Letting a deaf deponent read the written questions would facilitate the taking. Language difficulty could also be handled by having the interrogatories translated ahead of time or by preparing two sets — one in English and one in the foreign language. Written depositions also may be useful in preserving the testimony of character witnesses for use at trial.[303]

---

295. *See* E. FULOP, *supra* note 188, at 351; L. NIZER, *supra* note 219, at 26 (1961) (author interviewed Lord Mountbatten for two hours before later use of written deposition).

296. *See* R. KEETON, *supra* note 187, at 386. *See also* Campbell v. Mestice, 28 N.J. Super. 192, 198, 100 A.2d 333, 336 (1953).

297. *Cf., e.g.,* Worth v. Trans-World Films Co., Inc., 11 F.R.D. 197, 198 (S.D.N.Y. 1951). Groce, *Defendant's Preparation for Trial or Settlement*, 7 U. FLA. L. REV. 1, 6 (1954).

298. *See* Oscar Gruss & Son v. Lumbermen's Mut. Cas. Co., 41 F.R.D. 279, 282 (S.D.N.Y. 1966), *aff'd*, 422 F.2d 1278 (2d Cir. 1970).

299. V.O. Machinoimport v. Clark Equip. Co., 11 F.R.D. 55, 58 (S.D.N.Y. 1952). *See also* R. FIELD & V. McCUSICK, *supra* note 96, at 300.

300. *See* United States v. National City Bank of N.Y., 1 F.R.D. 367 (S.D.N.Y. 1940).

301. *See* Costas, *Discovery and the Issue of Commercial Success in Patent Infringement Actions*, 31 F.R.D. 215, 232 (1962).

302. *See* McBurney, *Written Interrogatories: A Pre-trial Discovery Tool Wisconsin Needs*, 39 WIS. B. BULL. 30, 31 (1966).

303. *Cf., e.g.,* Texas & P. Ry. Co. v. Raney, 86 Tex. 363, 25 S.W. 11 (1894) (veracity of plaintiff elicited by cross interrogatory).

### G. Rule 31 as an Auxiliary Discovery Device

The rule 31 device may serve as a valuable preliminary to other discovery. As federal rule 26(b)(1)[304] indicates, the identification of witnesses having relevant knowledge is a main object of discovery. The written deposition can be an economical method of getting such information. The designation requirements of requests or motions to produce documents and objects often demand descriptive information. Written depositions may help counsel acquire this needed data.[305]

Courts may conditionally authorize the use of rule 31. If it develops that such a mode is inadequate, the discovering party may then renew his original request to employ oral discovery.[306] In some hardship cases, it is hoped that written discovery will be suitable and thereby lighten discovery expense.[307] An unsolved problem remains, however, where a low-income litigant does try rule 31 initially, without success. In the absence of financial aid from a public or private agency, a court could arguably require the opposing party to advance sufficient expenses for taking needed oral depositions — which would later be taxed to the losing party as court costs.[308]

Submitting to an oral deposition at the forum often subjects a non-resident party to the stresses of travel and substantial out-of-pocket expense. But if he asks to be deposed orally near his residence, the court may order him to advance travel and subsistence for all opposing attorneys.[309] Rule 31 also may provide an economical escape from this dilemma.[310] Written depositions have served as an acceptable substitute for oral discovery when the deposition to be taken was in

---

304. FED. R. CIV. P. 26(b)(1).

305. See Hare v. Southern Pacific Co., 9 F.R.D. 307, 308 (N.D.N.Y. 1949) (documents).

306. See, e.g., Virginia–Carolina Chem. Corp. v. Connors-Standard Marine Corp., 144 F. Supp. 676, 677 (S.D.N.Y. 1956); Kurt M. Jachmann Co. v. Hartley Cooper & Co., 16 F.R.D. 565 (S.D.N.Y. 1954); J.C. Nichols Co. v. Mid-States Freight Lines, Inc., 9 F.R.D. 553, 554 (W.D. Mo. 1949).

307. See Hyam v. American Export Lines, Inc., 213 F.2d 221, 223 (2d Cir. 1954); Buryan v. Max Factor & Co., 41 F.R.D. 330, 332 (S.D.N.Y. 1967); Isbrandsen v. Moller, 7 F.R.D. 188, 190 (S.D.N.Y. 1947).

308. See Schmertz, supra note 7, at 421–23. Ethical and practical problems face the attorney contemplating the advancement of his personal funds for the client's discovery. See ABA CODE OF PROFESSIONAL RESPONSIBILITY, EC 5–8 (1970), and Byrd v. Louisiana Highway Comm'n, 199 La. 838, 840, 7 So.2d 158, 159 (1942) (counsel for impecunious plaintiff alleged own inability to advance discovery costs to client). Governmental parties may sometimes need rule 31 for lack of appropriated funds for out of state oral depositions. Cf. State v. Mahoney, 103 Ariz. 308, 441 P.2d 68 (1968).

309. See Schmertz, supra note 7, at 398–401.

310. See, e.g., Hyam v. American Export Lines, Inc., 213 F.2d 221 (2d Cir. 1954); Endte v. Hermes Export Corp., 20 F.R.D. 162 (S.D.N.Y. 1957); Timblo v. Rhode Island Ins. Co., 16 F.R.D. 563 (S.D.N.Y. 1954); Ross v. True Temper Corp., 11 F.R.D. 307 (N.D. Ohio 1951).

VILLANOVA LAW REVIEW          [VOL. 16: p. 7

a war zone,[311] or when the deponent suffered from a serious illness,[312] or a physical disability.[313] State decisions are also likely to recognize this aspect of rule 31.[314]

### H.   Perpetuation of Testimony for Use at Trial

While this article emphasizes discovery purposes, written depositions are perhaps more often used to "perpetuate" the testimony of witnesses.[315] Here the primary purpose is to introduce the deposition into evidence at the trial in place of a live appearance by the witness. The federal rules and many state procedures permit depositions for either or both purposes under an identical pre-trial procedure. At the time of taking it is sometimes not clear which purpose dominates.

Oral depositions are often more effective than written ones for this purpose as well.[316] Nevertheless some of the limitations in the discovery use of rule 31 may not be present where perpetuation of testimony is the main goal. The relationship between the deposing party and the witness will more often be friendly or at least neutral, since the party would call him at trial were it not more convenient for the witness to be deposed because of distance, sickness, or age.[317] Moreover, by the time the decision to perpetuate testimony is made, counsel should have a fair notion of the witness' knowledge and general credibility. Hence the party seeking mainly to preserve testimony can frame effective interrogatories.

As to non-party witnesses, the cases deal with both lay and expert testimony. In *Molignaro v. Dutton*,[318] the court suggested that rule 31 could be useful to obtain evidence from witnesses located at widely scattered points.[319] A New Jersey court allowed a party to depose a trial witness by written questions to preserve his testimony on the representation that he was a necessary witness, that he was un-

---

311. *See* Taejon Bristle Mfg. Co. v. Omnex Corp., 13 F.R.D. 448, 451 (S.D.N.Y. 1953).
312. *See, e.g.,* Patrick v. Eastern S.S. Line, Inc., 8 F.R.D. 421 (S.D.N.Y. 1948).
313. *See, e.g.,* Scarlatos v. Kulukundis, 21 F.R.D. 185 (S.D.N.Y. 1957); Sullivan v. Southern Pacific Co., 7 F.R.D. 206 (S.D.N.Y. 1947).
314. *See* Wright v. Wright, 16 N.J. Super. 339, 341, 84 A.2d 657, 659 (Super. Ct. 1951). *But see* DeMorlet v. Buckman, 82 Pa. D. & C. 323 (Philadelphia County C.P. 1952) (need for personal appearance outweighs hardship).
315. The discussion herein does not relate to the special problems surrounding procedures to perpetuate testimony *prior* to commencement of suit pursuant to FED. R. CIV. P. 27 and similar state rules.
316. *See* Alfred Bell & Co. v. Catalda Fine Arts, Inc., 5 F.R.D. 327, 328 (S.D.N.Y. 1946). According to one commentator, the stilted, formal, and artificial phraseology of the typical interrogatories and cross interrogatories tend to lack reality when they are being recited to the jury. *See* PA. PROC. RULES SERV., *supra* note 276, § 4003(a)(6), at 29.
317. *See* PA. PROC. RULES SERV., *supra* note 276, § 4004(e)(1), at 50.
318. 373 F.2d 729 (5th Cir. 1967).
319. *Id.* at 730, 731.

able to come to the state, and that the deposing party lacked funds for oral discovery.[320] The use of written interrogatories to obtain evidence from witnesses in military service may also avoid delay of the trial.[321] Where a witness has once been available at a hearing, however, courts may be reluctant to permit a later written deposition.[322]

In addition, rule 31 depositions may be effectively used to preserve testimony when an expert is unable or unwilling to testify at the trial. A Delaware court held that, where the employee's doctors declined to appear before the Workmens Compensation Board, the court would allow their oral or written depositions though the maximum travel distance involved would have been only twenty-seven miles.[323] Courts may require the perpetuating party to advance expenses for oral cross-examination on the theory that written cross-interrogatories deprive the opponent of an equal opportunity to encounter the expert in person.[324] However, in *Byrd v. Louisiana Highway Commission*,[325] the court relegated an allegedly poor plaintiff to written cross examination by upholding the defendants' right to take an oral evidentiary deposition from a doctor living about 100 miles from the court house.[326] In general, courts may be reluctant to allow perpetuation of expert testimony through rule 31 unless such required testimony would not otherwise be available.[327]

While not as formidable as its rule 30 counterpart, the written deposition has a substantial role to play in any far-sighted litigation strategy. For distant, non-hostile witnesses; for simpler kinds of issues; as an ancillary device; and to perpetuate testimony, rule 31 can effectively compete with oral discovery. In more difficult areas, its main boast is its economic advantage.

## IV. Rule 31: Future Prospects and Recommendations

The best written deposition will never probe as effectively and fruitfully as a well-prepared and well-conducted oral interrogation. Whenever the stakes so warrant and the client can so afford, counsel should use the latter method. This study, however, has attempted to

---

320. Wright v. Wright, 16 N.J. Super. 339, 341, 84 A.2d 657, 659 (Super. Ct. 1951).
321. *See* Campbell v. Mestice, 28 N.J. Super. 192, 198, 100 A.2d 333, 336 (Super. Ct. 1953).
322. *See* Torosian v. Paulos, 82 Ariz. 304, 314, 313 P.2d 382, 389 (1957).
323. Allied Chem. & Dye Corp. v. Fasano, 47 Del. 546, 551, 94 A.2d 600, 603 (Super. Ct. 1953).
324. Empire Box Corp. v. Illinois Cereal Mills, Inc., 8 Del. 350, 352, 91 A.2d 248, 250 (Super. Ct. 1952) (plaintiff had noticed oral deposition of expert in Illinois).
325. 199 La. 838, 7 So. 2d 158 (1942) (workmen's compensation proceeding in forma pauperis where both claimant and attorney claimed financial inability to attend and cross examine).
326. *Id.* at 841, 7 So. 2d at 159.
327. *See generally* American Infra-Red Radiant Co. v. Lambert Indus., Inc., 32 F.R.D. 372 (D. Minn. 1963) (expert living abroad).

evaluate the capabilities and limitations of rule 31 to aid the attorney whose client has very little choice but to try it. It is appropriate at this point to examine the extent to which the 1970 amendments to the federal discovery rules affect the capabilities of rule 31.

As noted above, the new rule 31 increases the total time allowed for exchanging written questions from eighteen to fifty days.[328] In view of the careful preparation needed, the additional time seems beneficial. On the negative side, the longer period may hamper the full completion of written depositions of witnesses about to become "unavailable." It may also increase the difficulty of using rule 31 close to the trial date. As a possible antidote, the new rule specifically states that district courts may shorten these periods in case of need.[329] The 1970 Rules promote promptness since they allow the plaintiff to serve notices of written depositions along with the complaint and summons at commencement of suit.[330]

As has been observed, the cost advantages of written depositions vary directly with the distance of the deponent from the place of trial. However transcription costs for a complex rule 31 deposition may not differ greatly from that of the oral deposition. It has been seen that former rule 30(c) required stenographic transcription unless both sides stipulated otherwise. Under new rule 30(b)(4), a discovering party can move for leave to use electronic, photographic, or other means of making a permanent verbatim record of the deposition.[331] Modern solid-state, low-speed tape recorders provide perhaps the cheapest method. The tape will also convey some idea of the manner in which the deponent answers the questions. Technological developments may eventually reduce the cost of video tape as a transcribing medium. The video-taped testimony of an unavailable deponent could convey

---

328. Note that the written deposition rules of many states may retain the eighteen day limit of former FED. R. CIV. P. 31. Several state rules, however, have exchange periods of other than eighteen days. *See, e.g.,* ILL. ANN. STAT. ch. 110A, § 210 (Smith-Hurd 1968) (28 days); KAN. CIV. PRO. STAT. ANN. § 60–231 (Vernon 1964) (20 days); LA. CODE CIV. P. ANN. art. 1471 (West 1960) (direct and cross only — 5 days); ME. R. CIV. P. rule 31 (1964) (25 days); PA. R. CIV. P. 4004(a) (20 days).

329. FED. R. CIV. P. 31(a), now provides: "The court may for cause shown enlarge or shorten the time." *Amendments,* 48 F.R.D. at 516.

330. No special restriction is placed on the time for serving the notice of taking the deposition and the first set of questions. Since no party is required to serve cross questions less than 30 days after the notice and questions are served, the defendant has sufficient time to obtain counsel.
*Adv. Comm. Note,* FED. R. CIV. P. 31, *Amendments,* 48 F.R.D. at 517.

331. FED. R. CIV. P. 30(b)(4), provides:
The court may upon motion order that the testimony at a deposition be recorded by other than stenographic means, in which event the order shall designate the manner of recording, preserving, and filing the deposition, and may include other provisions to assure that the recorded testimony will be accurate and trustworthy. If the order is made, a party may nevertheless arrange to have a stenographic transcription made at his own expense.
*Amendments,* 48 F.R.D. at 509–10.

certainly much more accurately credibility data to a jury than does the common practice of drearily reading a typed transcript.

Other amendments also may have a beneficial impact upon rule 31 practice. For example, the addition of "undue burden or expense" as grounds for a protective order, should emphasize to both lawyers and the court the importance of protecting the rights of the poor with regard to pre-trial discovery.[332] In addition, the abolition of the judge-made "priority" rule[333] should facilitate the use of rule 31 simultaneously with other discovery tools, thus yielding more data in less time. The new rule 26(e) should also bring clarity to the area of a party's "continuing duty" to update and correct errors in his answers to deposition questions.[334] It remains to be seen, however, whether supplemental discovery will be reduced.[335] Other useful changes include relaxing the restrictions on using discovery devices more than once;[336] clarification of the protective order power of the district court where a deposition is being held;[337] the allowance of broader descriptions of deponents;[338] and the reduction in "deponent hunting" that should occur by allowing organizational deponents to designate officials actually capable of answering deposition questions.[339]

A severe limitation on the effectiveness of rule 31 today is the absence of any means of preventing a party from furnishing the interrogatories to the deponent beforehand.[340] In specific terms, the

---

332. FED. R. CIV. P. 26(c), now provides, in part:
    Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or persons from annoyance, embarrassment, oppression, or undue burden or expense, . . .
*Amendments,* 48 F.R.D. at 496.
333. FED. R. CIV. P. 26(d), states:
    Sequence and Timing of Discovery. Unless the court upon motion, for the convenience of parties and witnesses and in the interests of justice, orders otherwise, methods of discovery may be used in any sequence and the fact that a party is conducting discovery, whether by deposition or otherwise, shall not operate to delay any other party's discovery.
*Amendments,* 48 F.R.D. at 497.
334. *See* FED. R. CIV. P. 26(e), *Amendments,* 48 F.R.D. at 497.
335. For a succinct survey of "continuing duty" problems under the former practice, *see* Note, *supra* note 111, at 961-63.
336. FED. R. CIV. P. 26(a), provides: "Unless the court orders otherwise under subdivision (c) of this rule, the frequency of use of these methods is not limited." *Amendments,* 48 F.R.D. at 493. With respect to this provision, the advisory committee's note states: "The provision that the frequency of use of these methods is not limited confirms existing law. It incorporates in general form a provision now found in Rule 33." *Id.* at 498.
337. *See* note 332, *supra.* Adv. Comm. Note, 48 F.R.D. at 505, provides:
    The subdivision recognizes the power of the court in the district where a deposition is being taken to make protective orders. Such power is needed when the deposition is being taken far from the court where the action is pending.
338. FED. R. CIV. P. 31(a). *See* note 10 *supra.*
339. FED. R. CIV. P. 30(d)(6), *Amendments,* 48 F.R.D. at 510.
340. *See* text at note 193-95 *supra.*

Case 1:13-md-02419-RWZ Document 2353-2 Filed 10/23/15 Page 49 of 51

rule provides for an exchange of questions between counsel and a forwarding of the complete set directly to the officer. This implicitly precludes any involvement by deponent until the officer reads the questions to him at the session.[341] However, as previously noted, the practice is often otherwise. Professor Moore strongly criticizes the "preview".[342] It reduces the intended spontaneity of rule 31 as compared to the oral deposition where the exact questions can seldom be anticipated.

The extent to which the courts can prevent this undesirable practice must be considered. In the first place, to specifically prohibit a party's attorney from disclosing to his client the contents of the party's upcoming written deposition, seems impolitic. Preparing the client for a deposition is a customary part of the attorney's job.[343] Moreover, the violation of such a prohibition would be difficult to prove. Timely invocation of the attorney-client privilege would usually forestall the opponent from discovering the nature of pre-deposition communications. In addition, most parties will already be familiar with the weaknesses of their case and have some basis for asserting their independent determination of the anticipated questions.

"Previews" as to non-party deponents, however, are a different matter. The pattern of case law suggests that rule 31 depositions will more often be directed to such individuals than to parties. After suit is commenced, it is naive to expect testimonial objectivity from the *parties*. But preservation of the neutrality, objectivity, and candor of a non-party witness is to be expected. It seems worth striving for. The party compelled to use, or respond to, written depositions ought to be able to get a relatively unpremeditated version of the neutral witness' knowledge. A preview of the questions by deponent denies him this chance.

It is recommended, therefore, that a provision similar to the following be added to the text of Rule 31(b):

> A non-party deponent shall not be furnished with the text or substance of any of the above questions prior to the taking of testimony by the officer. Any party or counsel violating this rule may, upon timely motion and showing of good cause by the party prejudiced thereby, be required to pay all or part of the reasonable expenses of an oral deposition of the non-party deponent.

---

341. A similar policy of "confidentiality" is made explicit in FED. R. CIV. P. 30(c), when it provides: "In lieu of participating in the oral examination, parties may serve written questions in a sealed envelope on the party taking the deposition and he shall transmit them to the officer, who shall propound them to the witness and record the answers verbatim." *Amendments*, 48 F.R.D. at 511.

342. *See* note 194 *supra*.

343. "If the deposition of your own client is to be taken, you should confer with him as fully as if he were about to testify in trial." R. KEETON, *supra* note 187, at 383; *See also* 3 J. WIGMORE, EVIDENCE § 788 (3d ed. 1940).

Such a provision could have several beneficial effects. First, it would serve as explicit notice to counsel that previews are forbidden. Second, it would provide a sanction less drastic than suppression. Moreover, the penalty would be discretionary and would require actual prejudice. Far from being merely punitive, the amendment would advance the search for the true facts, and should move the written deposition several degrees closer to the spontaneity of oral discovery.

New policies and approaches by the courts not necessitating rule changes could also increase the utility of rule 31. For example, if a witness seems sufficiently important, courts should be generous in allowing more than one written deposition. Parties could thereby analyze the answers from the first set of depositions and use a second set to clear up ambiguities and to track down evasions. For the sake of economy, the court, alternatively, could divide a single written deposition into two stages. The deponent would first answer the direct and cross-interrogatories. The recorded or transcribed answers would then be forwarded to counsel for study. In the second stage, counsel could draw up redirect and recross questions designed to elaborate on and clarify the answers obtained in stage one. New local rules of district courts could encourage resort to these procedures. In busy metropolitan courts, for example, where litigation might involve many low-income parties, a rule of court concerning variations in rule 31 procedure might be warranted. While this approach would lack uniformity, the present breadth of discretionary power under the protective order rule[344] suggests that courts through decisional law already can formulate varied procedures.

Liberal allowance of specific and pointed direct and redirect questions should also increase the data yield. By taking a witness' written deposition, a party does not make the witness his "own", and the deponent should therefore not be scrutinized for "leading" questions.[345] Moreover, asking broad "grab-bag" questions may produce similarly vague answers and make it almost impossible for the cross-examiner to formulate useful interrogatories. Judicial liberality as to what degree of specificity makes a question "leading" would enhance the value of many written depositions.[346]

---

344. FED. R. CIV. P. 26(c), *Amendments,* 48 F.R.D. at 496.

345. "A party does not make a person his own witness for any purpose by taking his deposition." FED. R. CIV. P. 30(c), *Amendments,* 48 F.R.D. at 519. "Examination and cross-examination of witnesses may proceed as permitted at the trial under the provisions of rule 43(b)." FED. R. CIV. P. 30(c), *Amendments,* 48 F.R.D. at 510.

346. Our rules of evidence are hampering in that regard. . . . It would be of real value and little harm if the rule as to leading questions were changed where interrogatories are concerned.
E. McCULLEN, EXAMINATIONS BEFORE TRIAL 1095 (1950).

*Villanova Law Review, Vol. 16, Iss. 1 [1970], Art. 3*

56 VILLANOVA LAW REVIEW [VOL. 16: p. 7

### V. Conclusion

Civil litigation best serves its purpose in our society when wise laws are applied to true facts. Today, thorough discovery seems indispensable to the garnering of all relevant data for trial. As discovery becomes more expensive, there is a *de facto* discrimination suffered by low-income litigants unable to afford the uncovering of all essential facts. Moreover, due process certainly should include the right to be heard as to the *full* facts. The day seems far off when all litigants will have equal access to oral discovery. In the meantime, the rule 31 deposition, despite its handicaps, should be made as productive as possible. Wider and wiser use of it can make a meaningful contribution to the just, speedy, and inexpensive determination of civil disputes.