UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION  ) ) ) ) | |
| _____ ) ) | MDL No. 2419 Dkt. No 1:13-md-2419 (RWZ) |
| THIS DOCUMENT RELATES TO:  ) ) All Cases  ) ) ) _____ ) | |

**TENNESSEE CLINIC DEFENDANTS'
MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO AMEND AND CERTIFY ORDER FOR INTERLOCUTORY APPEAL**

Defendants Saint Thomas Outpatient Neurosurgical Center, LLC; Howell Allen Clinic, A Professional Corporation; John Culclasure, MD; Debra Schamberg, RN, CNOR; and Vaughan Allen, MD (collectively "Tennessee Clinic Defendants") move the Court, pursuant to 28 U.S.C. § 1292(b) and Fed. R. App. P. 5(a)(3), to amend its October 7, 2015, Order to include the § 1292(b) language necessary to allow the Tennessee Clinic Defendants to petition to the First Circuit for an appeal of (1) the Court's ruling that "related to" jurisdiction exists and (2) the Court's ruling that it will try these cases in Massachusetts under 28 U.S.C. § 157(b)(5) after technically remanding the cases to Tennessee pursuant to 28 U.S.C. § 1407.

In support of their Motion, the Tennessee Clinic Defendants state as follows:

**BACKGROUND**

Tennessee Plaintiffs filed these personal injury tort and wrongful death suits against Tennessee health care providers and affiliates of NECC in the U.S. District Court for the Middle District of Tennessee.[1] The Judicial Panel on Multidistrict Litigation consolidated the Tennessee cases for pretrial proceedings in Massachusetts pursuant to 28 U.S.C. §1407.[2] This Court is the MDL transferee court.[3] Since that time, NECC's bankruptcy plan has been confirmed,[4] and the Tennessee Clinic Defendants have withdrawn their claims in bankruptcy against the debtor[5].

The Court issued an Order on October 7, 2015, deciding first that the Court has "related to" jurisdiction over the Tennessee cases, and second that it intends a two-step venue process: (1) the Court will remand the Tennessee cases to the Middle District of Tennessee for trial pursuant to 28 U.S.C. § 1407, and (2) after remand under § 1407, the Court will set Massachusetts as the venue for the cases then pending in Tennessee under 28 U.S.C. § 157(b)(5), setting Massachusetts as the venue for trial.[6]

---

[1] Less than a handful of the 100+ cases were filed directly in Massachusetts under an early case management order that allowed such filings. The vast majority of the Tennessee cases were originally filed in the Middle District of Tennessee, all asserting the Middle District of Tennessee as the appropriate venue even under "related to" jurisdiction granted by 28 U.S.C. § 1334. None of these venue elections have been amended.
[2] *See, e.g.*, Dkt. 8 ("Pursuant to Rule 7.1 of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation, the action(s) on the attached schedule are transferred under 28 U.S.C. § 1407 to the District of Massachusetts…").
[3] Dkt. 2309 ("First, the court is the MDL transferee court for all of the MDL's cases. In that role, it is both empowered and constrained by 28 U.S.C. § 1407").
[4] *See* Bankruptcy Dkt. 1355 (confirming Chapter 11 bankruptcy plan on May 20, 2015).
[5] *See* Bankruptcy Dkt. 1270 at p. 3 ¶ 3.
[6] *See* Dkt. 2309.

The Defendants respectfully request that the Court amend its October 7, 2015, Order to include language certifying the decision as proper for interlocutory appeal. Because the Order involves a controlling question of law as to which there is substantial ground for difference of opinion, and an immediate appeal from the order may materially advance the ultimate termination of this litigation, the Defendants' request is proper.[7]

## LAW AND ARGUMENT

### 1. Summary of relief requested

The Defendants respectfully request that the Court amend its October 7, 2015, Order to include language pursuant to 28 U.S.C. § 1292(b):

> When a district judge, in making in a civil action an order not otherwise appealable under this section, **shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, she shall state so in writing in such order.** The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided however*, that application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.[8]

This district follows the rule: "[A] district judge may certify for interlocutory review an order, not otherwise appealable, that involves 1) a controlling question of law, 2) as to which there is grounds for a substantial difference of opinion and 3) where an immediate appeal may materially advance the termination of the litigation."[9]

---

[7] The October 7 Order can be read as not yet ruling on the transfer back to Boston for trial. However, the Court was clear in the Order as to what it intends to do. Thus, the Tennessee Clinic Defendants now move for modification of the Order to start the appellate process.

[8] 28 U.S.C. § 1292(b) (emphasis added).

[9] *United Air Lines, Inc. v. Gregory*, 716 F. Supp. 2d 79, 91 (D. Mass. 2010) (citing *Philip Morris, Inc. v. Harshbarger*, 957 F.Supp. 327, 330 (D. Mass. 1997)).

### 2. Application of § 1292(b) factors

The Defendants request this Court to amend and certify its October 7, 2015 Order to allow the Defendants to petition to the First Circuit for an appeal of (1) the Court's ruling that "related to" jurisdiction exists and (2) the Court's ruling that it has the power to transfer these cases to the District of Massachusetts for trial pursuant to § 157(b)(5) after remanding these cases to Tennessee pursuant to § 1407.

#### a. The Order involves a controlling question of law on which substantial grounds for a difference of opinion exist.

A *controlling question of law* is one that "will determine the outcome or even the future course of the litigation," and "a question is controlling, even though its decision might not lead to reversal on appeal, if interlocutory reversal might save time for the district court and time and expense for the litigants."[10]

*Substantial ground for difference of opinion* arises when an issue involves "one or more *difficult* and *pivotal* questions of law not settled by controlling authority."[11] A "difference of opinion" does not arise every time a court is asked to apply a particular legal principle to a novel fact pattern; rather, "the issue must relate to the actual legal principle itself, not the application of that principle to a particular set of facts."[12]

These requirements of 28 U.S.C. § 1292(b) are met with regard to the issue of whether "related to" jurisdiction still exists and the Court's interpretation of the intersection of § 1407 and § 157(b)(5).

---

[10] *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group*, 233 F. Supp. 2d 16, 19 (D.D.C. 2002).
[11] *United Air Lines, Inc.*, 716 F. Supp. 2d at 92 (emphasis in original).
[12] *United Air Lines, Inc.*, 716 F. Supp. 2d at 92.

The questions of (1) whether this Court has "related to" jurisdiction and (2) can bring the Tennessee cases back to the District of Massachusetts pursuant to § 157(b)(5), after remanding them to Tennessee pursuant to § 1407, are controlling questions of law. They will determine the future course of this litigation – primarily, whether the federal court even has jurisdiction and, if so, the court in which the litigation will proceed for trial – from the close of common discovery forward.[13]

Substantial grounds for a difference of opinion on these issues exist. Both the extent of the federal court's "related to" jurisdiction in this novel set of circumstances and the authority of the Court, sitting at the intersection of an MDL and a bankruptcy, to set venue different from the "home" court, involve questions of law for which there is not settled precedent or controlling law.[14]

### b. An immediate appeal from the Order may materially advance the ultimate termination of the litigation.

The question of the existence of "related to" jurisdiction currently and venue are very important for this case. An immediate appeal from this Court's October 7, 2015, Order may materially advance the ultimate termination of this litigation.

---

[13] *See generally American Int'l Group, Inc. v. Bank of America*, 712 F.3d 775, 777 (2nd Cir. 2013) ("The court accordingly denied the Plaintiff's' motion for remand, but wisely certified the question for interlocutory appeal so as to avoid the risk of conducting an extensive trial which might be mooted by a higher court's subsequent determination that remand to the state court was required. In fact, we conclude that the dispute does not fall within § 632's grant of jurisdiction so that removal from state to federal court was not authorized by the statute. We therefore vacate the district court's order denying remand").

[14] On the issue of jurisdiction: The scope of "related to" jurisdiction in this setting, *i.e.*, whether the court can "lose" "related to" jurisdiction based on the completion of the bankruptcy, dismissal of all entities related to the debtor, and withdrawal of any claims in the bankruptcy, is not a settled question. *See In re Alma Energy*, 2012 WL 243746, *9 (E.D. Ky. 2012) ("[h]owever, based on the substantial changes noted above, the Court must consider whether it can lose subject-matter jurisdiction[.] The case law is not settled on this issue"); *see also* Dkt. 2089, n. 18 (citing district courts that found "related to" jurisdiction *can* divest, contrary to this honorable Court's determination). The Defendants have found only one (1) case that addresses the intersection of § 1407 and § 157(b)(5): *Shah v. Pan Am. World Serv., Inc.*, 148 F.3d 84 (2d Cir. 1998).

On the issue of venue: The *Shah* court refused, however, to address the specific question at issue in the instant case, stating, "Whether, *after* remand to the transferor court, a court has the power to transfer venue to itself under § 1404(a) or § 157(b)(5) is a separate issue that we have no need to decide."

Interestingly, both the Tennessee Clinic Defendants and PSC agree on this point. Both sides advocate for an interlocutory appeal. At Dkt. 2055, the PSC argued for interlocutory appeal of this issue, citing the need to ensure that these cases are not tried in the wrong court.[15] The importance of establishing proper jurisdiction and venue is paramount in any case,[16] and the Defendants agree with the PSC that is even more so in this complex, drawn-out set of hundreds of cases, where the first trial will be the result of years of litigation and much cost and time.[17]

Trial venue affects many decisions that these Defendants will make on trial strategy. A settled decision on trial venue will allow the parties to move forward unfettered toward trial in the proper court, eliminating the chance that a bellwether jury's verdict is overturned on jurisdictional or venue grounds.[18] This case's exceptional and complex circumstance satisfies the criteria for an interlocutory appeal.[19] Trying the bellwether case in the wrong court – whether because the federal court lacks jurisdiction, this honorable Court lacks the authority under 157(b)(5) to set venue in Massachusetts, or Massachusetts is simply not the proper venue – wastes time, money,

---

[15] Dkt. 2055 at p. 12-13.
[16] *See, e.g.*, *United Rope Distribs., Inc. v. Kimberly Line*, 785 F.Supp. 446, 453 (S.D. N.Y. 1992) (finding that the trial court's determination on jurisdiction properly certifiable under the criteria of § 1292(a)).
[17] *See generally In re Fairfield Sentry Ltd. Litig.*, 458 B.R. 665, 673 (S.D. N.Y. 2011) (noting in holding that interlocutory appellate review of "related to" jurisdiction in Chapter 15 bankruptcy case proper that "the determination of subject matter jurisdiction is of utmost importance in federal court but also would materially affect the litigation's outcome").
[18] *See Wynn v. A.C. Rochester*, 273 F.3d 153, 157 (2nd Cir. 2001) ("[t]he absence of [federal] jurisdiction is non-waivable; before deciding any case we are required to assure ourselves that the case is properly within our subject matter jurisdiction"…"[i]t is unfortunate, to say the least, that the parties have litigated this case for years only to learn that they are in the wrong forum. The result only emphasizes the need for parties and for district courts to take a hard look at jurisdictional issues early in the litigation"); *Hendricks v. Alcoa Steamship Co., Inc.*, 206 F. Supp. 693, 700 (E.D. Pa. 1962) (granting certification of issue of whether case should be transferred to another district because "[i]f the Court is incorrect in the view here expressed, it would be unfortunate to have the parties go through a trial on the merits and then have the case thrown out because the forum was considered an inconvenient one") (citing *Kontos v. The S.S. Sophie C.*, 184 F. Supp. 835, 838 (E.D. Pa. 1960)).
[19] *See, e.g., Armor Elevator Co., Inc. v. Phoenix Urban Corp.*, 493 F. Supp. 876 (D. Mass. 1980) (performing complex jurisdictional analysis to find that transfer of cases to Court of Claims proper, and then certifying questions for appeal).

and effort, and destroys the goal of the MDL – to realize a jury verdict with predictive value.[20]

Interlocutory appeals are saved for the rare circumstances where there is a sufficiently novel, important, and open question of law, and the litigation would benefit from the prompt resolution of the issue.[21] This request is precisely that circumstance.[22]

## CONCLUSION

The issues of jurisdiction and venue in this unique procedural circumstance are anything but settled. Cases supporting each side's position scratch at the edges of the issue, but no dispositive case clearly directs either decision. The legal issues can be resolved by an appellate review now, versus potentially trying the case in the wrong court, a step no one seeks. Thus, resolving this pivotal and debatable issue now materially advances the cases toward a true termination, erasing the real possibility that the first bellwether case will be tried twice, in two (2) different venues.

---

[20] *See Hecht Co. v. Southern Union Co.*, 474 F. Supp. 1022, 1031 (D. N.M. 1979) ("I recognize, however, that the case is a complex one both in law and in fact….It would not serve the interests of judicial economy to keep these defendants in a lengthy action and to present the case for a jury's determination only to find out that jurisdiction was from the beginning lacking. The questions of jurisdiction presented by this case are controlling questions of law as to which there is substantial ground for difference of opinion. An immediate appeal from this Order may materially advance the ultimate termination of the litigation").

[21] *Miara v. First Allmerica Fin. Life Ins. Co.*, 379 F. Supp. 2d 20, 68 (D. Mass. 2005) (additional cites omitted).

[22] The PSC – despite advocating for an interlocutory appeal of this issue in its filing of July 6, 2015 [Dkt. 2055, p. 12 ("given the unique character of the procedural issues presented by this litigation, this Court should certify the trial venue question for interlocutory appeal to the First Circuit pursuant to 28 U.S.C. § 1292(b)")] – may now shift course and claim that such an appeal will delay the resolution of the first bellwether case. The Court should take note that the *first time* § 157(b)(5) as a potential mechanism for trial of these cases in Massachusetts was mentioned was orally at the June 24, *2015*, status conference. (Tr., Status H'rg, June 25, 2015, p. 27) The Defendants should not be penalized for seeking appropriate appellate review because it may delay the first trial when the issue upon which review is sought was raised by the *Plaintiffs*. The Plaintiffs raised the issue, recognizing that it was novel, unique, and unsettled. It is not fair to deprive the Defendants the opportunity to see the issue through its appellate resolution.

Respectfully submitted,

**GIDEON, COOPER & ESSARY, PLC**

/s/ Chris J. Tardio
**C.J. Gideon, Jr.***
**Chris J. Tardio***
**Alan S. Bean****
**Matthew H. Cline***
315 Deaderick Street, Suite 1100
Nashville, TN 37238
Ph: (615) 254-0400
Fax: (615) 254-0459
chris@gideoncooper.com

*Attorneys for the Tennessee Clinic Defendants*

* Admitted pursuant to MDL Order No. 1.
** Admitted *pro hac vice*.

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be served electronically to the registered participants identified on the Notice of Electronic Filing and copies will be e-mailed or mailed via regular U.S. mail to those participants identified as unregistered this 26th day of October, 2015.

/s/ Chris J. Tardio
**Chris J. Tardio**