UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | 14CR10363 - |
| | |
| v. | CRIMINAL NO. |
| | |
| (1) BARRY J. CADDEN, | VIOLATIONS: |
| | |
| (2) GLENN A. CHIN, | 18 U.S.C. § 1962(c) (Racketeering); |
| | |
| (3) GENE SVIRSKIY, | 18 U.S.C. § 1962(d) (Racketeering Conspiracy); |
| (4) CHRISTOPHER M. LEARY, | |
| | 18 U.S.C. § 371 (Conspiracy); |
| (5) JOSEPH M. EVANOSKY, | |
| | 18 U.S.C. § 1341 (Mail Fraud); |
| (6) SCOTT M. CONNOLLY, | |
| | 21 U.S.C. § 331(a) (Introduction of Adulterated Drugs into Interstate Commerce); |
| (7) SHARON P. CARTER, | |
| (8) ALLA V. STEPANETS, | 21 U.S.C. § 331(a) (Introduction of Misbranded Drugs into Interstate Commerce); |
| (9) GREGORY A. CONIGLIARO, | |
| (10) ROBERT A. RONZIO, | 18 U.S.C. § 401(3) (Contempt); |
| (11) KATHY S. CHIN, | 31 U.S.C. § 5324 (Structuring); |
| (12) MICHELLE L. THOMAS, | 18 U.S.C. § 2 (Aiding and Abetting); |
| (13) CARLA R. CONIGLIARO, | 18 U.S.C. §§ 1963; 981(a)(1)(C); 21 U.S.C. § 853; 31 U.S.C. § 5317; & 28 U.S.C. § 2461(c) (Forfeiture) |
| (14) DOUGLAS A. CONIGLIARO, | |
| Defendants. | |

THE GRAND JURY CHARGES THAT:

## PRELIMINARY ALLEGATIONS

At all times material hereto, unless otherwise alleged:

1.   New England Compounding Pharmacy, Inc., doing business as New England Compounding Center ("NECC"), was a Massachusetts corporation licensed as a pharmacy in the Commonwealth of Massachusetts by the Massachusetts Board of Registration in Pharmacy ("MABOP").   NECC's principal place of business was located in Framingham, Massachusetts. From in or about 1998 until October 2012, NECC held itself out as a compounding-only pharmacy.   Compounding was the preparation, mixing, assembling, packaging, and labeling of a drug pursuant to a valid, patient-specific prescription from a medical practitioner.   NECC made purportedly sterile drugs within two clean rooms – Clean Room 1 and Clean Room 2 – which were purported to be controlled environments with low levels of environmental contamination.   NECC sold drugs identified as sterile to medical facilities located throughout the country.   From January through October 2012, NECC generated revenue of approximately $32.4 million.

2.   Medical Sales Management, Inc. ("MSM") was a Massachusetts corporation that shared ownership with NECC.   MSM provided sales and administrative services to NECC, including a sales force, finance department, purchasing department, human resources department, and information technology.   MSM was paid a service fee by NECC.   MSM's sales representatives sold drugs on behalf of NECC to customers throughout the country.

<u>The Defendants</u>

3.   The defendant **BARRY J. CADDEN** ("CADDEN") was an individual residing in Wrentham, Massachusetts.   Defendant **CADDEN** was a pharmacist licensed in the Commonwealth of Massachusetts by the MABOP to dispense drugs pursuant to a valid prescription from a medical practitioner.   Defendant **CADDEN** was an owner and director of NECC, and served as NECC's President, head pharmacist, and Manager of Record.   Defendant **CADDEN** oversaw all of the operations of NECC.   Defendant **CADDEN** was an owner and

director of MSM, and served as MSM's Treasurer.   Defendant **CADDEN** trained and instructed the MSM sales representatives, and routinely communicated with them about specific customer orders and accounts.

4.   The defendant **GLENN A. CHIN** ("**CHIN**") was an individual residing in Canton, Massachusetts.   **CHIN** was a pharmacist licensed in the Commonwealth of Massachusetts by the MABOP to dispense drugs pursuant to a valid prescription from a medical practitioner.   From in or about April 2004 until October 2012, **CHIN** was employed as a pharmacist at NECC.   In or about January 2010, **CHIN** was promoted to a supervisory pharmacist role at NECC, overseeing all aspects of NECC's production and personnel in the two clean rooms.

5.   The defendant **GENE SVIRSKIY** ("**SVIRSKIY**") was an individual residing in Ashland, Massachusetts.   **SVIRSKIY** was a pharmacist licensed in the Commonwealth of Massachusetts by the MABOP to dispense drugs pursuant to a valid prescription from a medical practitioner.   From in or about August 2007 until October 2012, **SVIRSKIY** was employed as a pharmacist at NECC.   **SVIRSKIY** worked in Clean Room 1, and was a supervising pharmacist in Clean Room 2.

6.   The defendant **CHRISTOPHER M. LEARY** ("**LEARY**") was an individual residing in Marlborough, Massachusetts.   **LEARY** was a pharmacist licensed in the Commonwealth of Massachusetts by the MABOP to dispense drugs pursuant to a valid prescription from a medical practitioner.   From in or about March 2011 until October 2012, **LEARY** was employed as a pharmacist at NECC.   **LEARY** worked in Clean Rooms 1 and 2.

7.   The defendant **JOSEPH M. EVANOSKY** ("**EVANOSKY**") was an individual residing in Haverhill, Massachusetts.   **EVANOSKY** was a pharmacist licensed in the Commonwealth of Massachusetts by the MABOP to dispense drugs pursuant to a valid

prescription from a medical practitioner.  From in or about April 2011 until October 2012, **EVANOSKY** was employed as a pharmacist at NECC.  **EVANOSKY** worked in Clean Room 1.

8.   The defendant **SCOTT M. CONNOLLY** ("**CONNOLLY**") was an individual residing in Brockton, Massachusetts.  From in or about September 2007 until January 2009, **CONNOLLY** was a pharmacy technician licensed in the Commonwealth of Massachusetts by the MABOP.  Pharmacy technicians assisted licensed pharmacists in dispensing prescription drugs. In or around January 2009, **CONNOLLY** voluntarily surrendered his pharmacy technician license in connection with a disciplinary action.  From in or about January 2010 until August 2012, **CONNOLLY** was employed as a pharmacist technician at NECC.  **CONNOLLY** worked as a pharmacy technician in Clean Room 2.

9.   The defendant **SHARON P. CARTER** ("**CARTER**") was an individual residing in Hopkinton, Massachusetts.   **CARTER** was a pharmacy technician licensed in the Commonwealth of Massachusetts by the MABOP.  Beginning in or about September 2000, **CARTER** was employed at NECC in various capacities.  In or about February 2012, **CARTER** was promoted to the position of NECC's Director of Operations, overseeing NECC's order processing, packaging, and shipping personnel.

10.   The defendant **ALLA V. STEPANETS** ("**STEPANETS**") was an individual residing in Framingham, Massachusetts.  **STEPANETS** was a pharmacist licensed in the Commonwealth of Massachusetts by the MABOP to dispense drugs pursuant to a valid prescription from a medical practitioner.  From in or about January 2008 until October 2012, **STEPANETS** was employed as a pharmacist at NECC.  **STEPANETS** worked in, among other areas at NECC, the packing area checking orders prior to shipment to NECC's customers.

11.    The defendant **GREGORY A. CONIGLIARO** ("**GREG CONIGLIARO**") was an individual residing in Southborough, Massachusetts.  **GREG CONIGLIARO** was an owner and director of NECC, and served as NECC's Vice President, Secretary, Treasurer, and General Manager.  **GREG CONIGLIARO** was responsible for regulatory compliance for NECC. **GREG CONIGLIARO** was an owner and director of MSM, and served as MSM's Secretary.

12.    The defendant **ROBERT A. RONZIO** ("**RONZIO**") was an individual residing in North Providence, Rhode Island.   Beginning in or about February 2010, **RONZIO** was employed at MSM.   Beginning in or about September 2011, **RONZIO** served as the national sales director for NECC, and supervised the MSM sales representatives assigned to sell NECC drugs.

13.    The defendant **KATHY S. CHIN** ("**KATHY CHIN**") was an individual residing in Canton, Massachusetts.  **KATHY CHIN** was a pharmacist licensed in the Commonwealth of Massachusetts by the MABOP to dispense drugs pursuant to a valid prescription from a medical practitioner.   From in or about November 2010 until October 2012, **KATHY CHIN** was employed as a pharmacist at NECC.  **KATHY CHIN** worked in the packing area checking orders prior to shipment to NECC's customers.

14.    The defendant **MICHELLE L. THOMAS** ("**THOMAS**") was an individual residing in Framingham, Massachusetts.   **THOMAS** was a pharmacist licensed in the Commonwealth of Massachusetts by the MABOP to dispense drugs pursuant to a valid prescription from a medical practitioner.   From in or about March 2012 until August 2012, **THOMAS** was employed as a pharmacist at NECC.  **THOMAS** worked in the packing area checking orders prior to shipment to NECC's customers.

15.  The defendant **CARLA R. CONIGLIARO** ("**CARLA CONIGLIARO**") was an individual residing in Winter Park, Florida and Dedham, Massachusetts. **CARLA CONIGLIARO** was the majority shareholder of NECC, and served as a director of NECC.

16.  The defendant **DOUGLAS A. CONIGLIARO** ("**DOUG CONIGLIARO**") was an individual residing in Winter Park, Florida and Dedham, Massachusetts. **DOUG CONIGLIARO** was the husband of **CARLA CONIGLIARO**. **DOUG CONIGLIARO** was an owner and director of MSM, and served as MSM's President.

<u>United States Pharmacopeia</u>

17.  The United States Pharmacopeial Convention was a scientific non-profit organization that published the United States Pharmacopeia ("USP"), the official pharmacopeia of the United States. The USP set standards for the identity, strength, quality, and purity of medicines.

18.  Section 9.01(3) of Title 247 of the Code of Massachusetts Regulations required all pharmacists licensed in the Commonwealth of Massachusetts to follow the standards set forth in the USP.

19.  Chapter 797 of the USP ("USP-797") set forth the standards for compounding drugs identified as sterile. All compounding personnel were responsible for understanding the fundamental practices and procedures outlined in USP-797 for developing and implementing appropriate procedures, and for continually evaluating the procedures and quality of sterile drugs.

20.  USP-797's standards were meant to prevent harm, including death, to patients that could result from non-sterility of drugs. Non-sterility of purportedly sterile drugs was especially dangerous to patients when the drugs would be administered into the patients' body cavities, central nervous systems, vascular systems, eyes, and joints.

21.  USP-797 defined high-risk compounding as, among other things, using non-sterile ingredients to create sterile drugs.  High-risk compounding posed the greatest threat to patients because, among other things, it required compounding personnel to sterilize non-sterile ingredients.

## *Use of Ingredients*

22.  USP-797 prohibited the use of an ingredient in drugs when the beyond use date ("BUD"), or expiration date, of the ingredient had been exceeded.  USP-797 noted that careful consideration and evaluation of non-sterile ingredients was especially warranted when the drug would be administered into the vascular system, central nervous system, or eyes of patients.

## *Sterilization*

23.  One way to sterilize drugs was through the use of an autoclave, which exposed the drugs to high pressure saturated steam.  To achieve sterilization through autoclaving, USP-797 required that the drugs be exposed to steam at 121° under pressure of one atmosphere for a duration verified by testing; USP-797 defined this duration as usually 20 to 60 minutes. Autoclaving drugs at a lower temperature, a lower pressure, or for less time could result in the drugs not being sterile.  USP-797 required verification of the effectiveness of the sterilization process for the quantity and type of containers of drugs through the use of a biological indicator. A biological indicator was a packaged resistant, spore-forming bacterium that provided a defined and stable resistance to a sterilization process.  The sterilization process was validated when the packaged resistant, spore-forming bacterium within the biological indicator was destroyed. Given the critical importance of sterilization, the USP required that the description of steam sterilization conditions and durations for specific drugs be included in written documentation in the compounding facility.

*Sterility Testing*

24. USP-797 mandated that all high-risk drugs prepared in groups of more than 25 individual single-dose packages or multiple-dose vials be tested for sterility consistent with the standards set forth in Chapter 71 of the USP ("USP-71"). In addition, USP-797 mandated that all high-risk drugs, regardless of the quantity, with assigned BUDs beyond 24 hours at room temperature be sterility tested. USP-71 defined sterility as the absence of the growth of microorganisms over a 14-day period. USP-71 set forth the minimum number of articles (*i.e.*, vials, syringes, bags) from varying batch sizes that had to be sterility tested to meet USP requirements.

25. USP-797 allowed for the dispensing of high-risk drugs to patients prior to the receipt of sterility test results if the patient and the physician were notified of the potential risk, and an immediate recall was instituted if microbial growth was observed during the test. Any positive sterility test result should prompt a rapid and systematic investigation of aseptic technique, environmental control, and other sterility assurance controls to identify the sources of contamination and to correct problems in the methods or processes.

*Labeling*

26. Chapter 1 of the USP ("USP-1") defined an injectable drug as a preparation intended for "parenteral administration," meaning that the preparation was injected through the skin or other external boundary tissue, so that the active substances it contained were administered, using gravity or force, directly into a blood vessel, organ, tissue, or lesion. Drugs labeled as injectable were required to be prepared scrupulously by methods designed to ensure that they met standards for sterility stated in USP-797 and USP-71.

27.   Labels on injectable drugs were required to state the name of the preparation, the percentage content of drug or amount of drug in a specified volume, the route of administration, a statement of storage conditions, an expiration date, the name and place of business of the manufacturer, and an identifying lot number.   The identifying lot number had to be capable of yielding the complete manufacturing history of the specific drug, including all manufacturing, filling, sterilizing, and labeling operations.

### *Cleaning and Disinfecting*

28.   USP-797 required scrupulous attention to cleaning and disinfecting the sterile compounding areas to minimize environmental contact as a source of microbial contamination of sterile drugs.   USP-797 required all cleaning and disinfecting practices and policies to be included in written standard operating procedures ("SOPs") and to be followed by all compounding personnel.

### *Environmental Monitoring*

29.   To evaluate the cleaning and disinfecting practices at a compounding facility, USP-797 required surface and air sampling of the sterile compounding areas.   USP-797 identified microbial contamination from improperly cleaned and disinfected work surfaces as a major source of contamination of sterile drugs.

30.   USP-797 required a compounding facility to establish "action" levels for microbial contamination.   If surface or air sampling revealed contamination above an "action" level, USP-797 required a re-evaluation of the compounding facility's practices and procedures.   In addition, USP-797 required an investigation into the source of the contamination, the elimination of the source, re-cleaning and re-disinfecting of the area, and re-sampling.   If the surface or air sampling consistently revealed elevated levels of microbial growth, USP-797 required the

compounding facility to consult with competent microbiology personnel. If the surface or air sampling revealed highly pathogenic microorganisms that could be potentially fatal to patients receiving the purportedly sterile drugs, such as mold, USP-797 required the compounding facility to immediately remedy the issue, regardless of whether an "action" level was reached, with the assistance of a competent microbiologist, infection control professional, or industrial hygienist.

### Personnel Training and Testing

31.   USP-797 required compounding personnel to be adequately skilled, educated, instructed, and trained to properly compound sterile drugs. To ensure proper aseptic technique, compounding personnel were required to perform media-fill testing, which was a process simulation using a microbiological growth medium instead of a drug. Media-fill testing was used to validate the aseptic techniques of compounding personnel and ensure that the processes employed would produce sterile drugs without microbial contamination. Compounding personnel were required to perform media-fill testing prior to performing any sterile compounding, and semiannually thereafter.

32.   USP-797 required gloved-fingertip sampling of all compounding personnel to monitor any microbial contamination on the gloved-hands of compounding personnel. USP-797 identified direct touch contamination as the most likely means of introducing microorganisms into sterile drugs. If personnel gloved-fingertip sampling revealed contamination above an "action" level, USP-797 required a review of hand hygiene and garbing procedures, glove and surface disinfection procedures, and work practices. If the personnel gloved-fingertip sampling consistently revealed elevated levels of microbial growth, USP-797 required the compounding facility to consult with competent microbiology personnel. If the personnel gloved-fingertip sampling revealed highly pathogenic microorganisms that could be potentially fatal to patients

receiving the sterile drugs, such as mold, USP-797 required the compounding facility to immediately remedy the issue, regardless of whether an "action" level was reached, with the assistance of a competent microbiologist, infection control professional, or industrial hygienist.

**COUNT 1**
**(18 U.S.C. § 1962(c) – Racketeering)**

**[DEFENDANTS (1) CADDEN, (2) CHIN, (3) SVIRSKIY,**
**(4) LEARY, (5) EVANOSKY, (6) CONNOLLY]**

33.  The allegations contained in paragraphs 1 through 8, and 17 through 32 are re-alleged and incorporated herein by reference.

The Enterprise

34.  NECC and MSM constituted an "enterprise" as defined by Title 18, United States Code, Section 1961(4) (hereinafter, "the enterprise"), that is, a group of legal entities associated in fact.  The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise, which was to obtain money and property including through the means of materially false and fraudulent pretenses, representations, and promises.  The enterprise was engaged in, and its activities affected, interstate and foreign commerce.

Manner and Means of the Enterprise

*MSM's Representations to Customers*

35.  NECC's primary business was high-risk compounding, that is, using non-sterile ingredients to create sterile drugs.  Defendant (1) **CADDEN** instructed the MSM sales force to falsely represent to customers that NECC was providing the highest quality compounded medications.  MSM's sales force and its marketing materials distributed to hospitals and medical facilities throughout the country falsely claimed NECC was USP-797 compliant, meaning that it

met the USP standards for compounding sterile drugs.  MSM's marketing materials also falsely claimed that NECC had a strictly enforced environmental monitoring program and a comprehensive end-product testing program for its drugs.  Each quarter, MSM issued a Quality Assurance Report Card ("QA Report Card") to NECC customers signed by defendant (1) **CADDEN**.  The QA Report Cards for the first and second quarters of 2012 falsely reported environmental monitoring results at NECC during the respective quarters.  The QA Report Card for the second quarter of 2012 also falsely listed no sterility, endotoxin, or other out-of-specification test results from the testing of NECC's drugs during the time period.

*NECC's Production Practices*

36.  NECC's production of purportedly sterile drugs by the pharmacists and pharmacy technicians in Clean Rooms 1 and 2 failed to comply with the standards of the USP and the regulations promulgated by the MABOP in several ways, including:

a.  Beginning in at least 2008 and continuing until in or around October 2012, defendants (1) **CADDEN**, (2) **CHIN**, (3) **SVIRSKIY**, (4) **LEARY**, and (5) **EVANOSKY** used, caused others to use, and approved the use of expired and expiring ingredients in the compounding of purportedly sterile drugs in violation of USP-797.  To conceal the use of the expired ingredients from regulators, defendants (1) **CADDEN**, (2) **CHIN**, (3) **SVIRSKIY**, (4) **LEARY**, and (5) **EVANOSKY** completed, caused others to complete, and approved the completion of written documentation with fictitious expiration dates.

b.  Beginning in at least 2009 and continuing until in or around October 2012, defendants (1) **CADDEN**, (2) **CHIN**, (3) **SVIRSKIY**, (4) **LEARY**, and (5) **EVANOSKY** used, caused others to use, and approved the use of expired or expiring stock solutions in the compounding of purportedly sterile drugs and to fill customer orders in violation of USP-797.  To

conceal the use of the expired or expiring stock solutions from regulators, defendants (1) **CADDEN**, (2) **CHIN**, (3) **SVIRSKIY**, (4) **LEARY**, and (5) **EVANOSKY** labeled, caused others to label, and approved the labeling of the final drugs with a new NECC lot number and BUD.

      c.  Beginning in at least 2009 and continuing until in or around October 2012, defendants (1) **CADDEN**, (2) **CHIN**, (4) **LEARY**, and (5) **EVANOSKY** failed and caused others to fail to properly sterilize drugs in violation of USP-797.   Drugs were routinely autoclaved for a period of 15 to 17 minutes in duration, less than the 20-minute duration identified in NECC's formulation worksheets for specific drugs and USP-797.   Defendants (1) **CADDEN**, (2) **CHIN**, (4) **LEARY**, and (5) **EVANOSKY** never verified and caused others to verify the effectiveness of the sterilization process through the use of a biological indicator as required by USP-797.

      d.  Beginning in at least 2009 and continuing until in or around October 2012, defendants (1) **CADDEN**, (2) **CHIN**, (3) **SVIRSKIY**, (4) **LEARY**, and (5) **EVANOSKY** mixed, caused others to mix, and approved the mixing of stock solutions of different drug lots to fill customer orders in violation of USP-797.   The mixing of the lots was done to fill orders and conceal the use of an expiring older lot or the use of a newer lot that had not been tested.   For stock drug products, defendants (1) **CADDEN**, (2) **CHIN**, (3) **SVIRSKIY**, and (4) **LEARY** falsely labeled, caused others to falsely label, and approved the false labeling of drugs sent to customers with either the newer lot number in the case of an expiring older lot, or the older lot number in the case of an untested newer lot.   For custom drug products, defendants (1) **CADDEN**, (2) **CHIN**, (3) **SVIRSKIY**, (4) **LEARY**, and (5) **EVANOSKY** labeled, caused others to label, and approved the labeling of drugs sent to customers with a new, third NECC lot number for the specific customer order.

    e.  Beginning in at least 2006 and continuing until in or around October 2012, defendants (1) **CADDEN**, (2) **CHIN**, (3) **SVIRSKIY**, (4) **LEARY**, and (5) **EVANOSKY** failed and caused others to fail to properly test drugs for sterility in violation of USP-797.  Only two samples of each batch of drugs were taken for testing regardless of the size of the batch; only one of the two samples was sent for sterility testing.  Defendants (1) **CADDEN**, (2) **CHIN**, (3) **SVIRSKIY**, (4) **LEARY**, and (5) **EVANOSKY** also sampled, caused others to sample, and approved the sampling from batches of stock solutions, and not the filled vials, of drugs that NECC shipped to customers for patient use.

    f.  Beginning in at least 2008 and continuing until in or around October 2012, defendants (1) **CADDEN**, (2) **CHIN**, (3) **SVIRSKIY**, (4) **LEARY**, and (5) **EVANOSKY** caused shipments to NECC customers of purportedly sterile drugs that were never tested and for which test results had not yet been received.  The physicians and patients were not notified of the potential risk of using the untested drugs.  In circumstances in which microbial growth was later detected in sterility tests, defendants (1) **CADDEN**, (2) **CHIN**, (3) **SVIRSKIY**, (4) **LEARY**, and (5) **EVANOSKY** never instituted a recall, and never notified the physicians or patients to whom the drugs were sent of the adverse results.

    g.  Beginning in or around March 2010 and continuing until in or around August 2012, defendant (6) **CONNOLLY**, who had voluntarily surrendered his pharmacy technician license in or around January 2009, worked as a pharmacy technician in Clean Room 2 filling cardioplegia drugs for hospital customers.  Cardioplegia drugs were used for the intentional and temporary cessation of cardiac activity during cardiac surgery.  Defendant (6) **CONNOLLY**'s unlicensed status was known to defendants (1) **CADDEN**, (2) **CHIN**, and (3) **SVIRSKIY**.  Defendant (6) **CONNOLLY** was supervised by defendants (2) **CHIN** and (3) **SVIRSKIY**.

Defendant (6) **CONNOLLY** supervised the other pharmacy technicians in Clean Room 2.   To conceal his presence from regulators, defendant (6) **CONNOLLY** operated the equipment in Clean Room 2 using defendant (1) **CADDEN**'s username and password.   During his time working as a pharmacy technician at NECC, defendant (6) **CONNOLLY** was not administered a media-fill test to verify his aseptic technique.

### *NECC's Cleaning and Disinfecting Practices*

37.   NECC's cleaning and disinfecting practices in Clean Rooms 1 and 2 failed to comply with the standards of USP-797 and the regulations promulgated by the MABOP in several ways, including:

a.   Beginning in at least 2009 and continuing until in or around October 2012, defendants (1) **CADDEN**, (2) **CHIN**, (3) **SVIRSKIY**, (4) **LEARY**, and (5) **EVANOSKY** failed and caused others to fail to properly clean and disinfect Clean Rooms 1 and 2 as required by USP-797.

b.   Defendant (2) **CHIN** instructed pharmacy technicians working in Clean Room 1 under his supervision to prioritize production over cleaning and disinfecting.   Accordingly, cleaning and disinfecting tasks in Clean Room 1 were often either poorly completed or not completed at all.

c.   Beginning in at least 2010 and continuing until in or around October 2012, defendant (2) **CHIN** instructed pharmacists and pharmacy technicians working in Clean Room 1 under his supervision to fraudulently complete cleaning logs at the end of the month purporting to show that NECC Clean Room 1 was properly cleaned and disinfected.

d.   Beginning in at least January 2012, NECC's surface and air sampling produced alert-level and action-level results from throughout the Clean Room 1 suite of rooms – the main

clean room, the gown room, the crimp room, and the prep room.   Moreover, beginning in at least January 2012, NECC's personnel gloved-fingertip sampling revealed the presence of microorganisms on the hands of NECC compounding personnel, including defendants (2) **CHIN**, (3) **SVIRSKIY**, (4) **LEARY**, and (5) **EVANOSKY**, while compounding and filling drugs, including within the glove boxes in Clean Room 1.   From January 2012 through September 2012, NECC's surface and air sampling and personnel gloved-fingertip sampling from the Clean Room 1 suite of rooms produced the following results:

| Week | Surface Sampling Action/Alert | Microorganisms Listed | Air Sampling Action/Alert | Gloved-Fingertip Sampling Results |
|---|---|---|---|---|
| 1/06/2012 | Action | Mold | Not tested | 1 technician |
| 1/12/2012 | Action | Bacteria | Action | — |
| 1/19/2012 | Alert | — | Not tested | — |
| 1/26/2012 | Action | Bacteria/Mold | Action | — |
| 2/02/2012 | Action | Bacteria/Mold | Not tested | **(5) EVANOSKY** |
| 2/08/2012 | Action | — | Alert | — |
| 2/16/2012 | Action | Bacteria/Mold | Not tested | — |
| 2/23/2012 | Action | Bacteria/Mold | Action | **(2) CHIN** and 3 technicians |
| 3/01/2012 | Action | Bacteria/Mold | Not tested | — |
| 3/08/2012 | Action | Bacteria/Mold | Alert | 1 technician |
| 3/15/2012 | Action | Bacteria/Mold | Not tested | 1 technician |
| 3/22/2012 | Action | — | Alert | **(3) SVIRSKIY** |
| 3/29/2012 | Action | Bacteria/Mold | Not tested | **(3) SVIRSKIY** |
| 4/5/2012 | Action | Mold | Action | **(5) EVANOSKY** |
| 4/12/2012 | Action | Bacteria/Mold | Not tested | **(4) LEARY** and 1 technician |
| 4/20/2012 | Action | — | — | 1 technician |
| 4/26/2012 | Action | — | Not tested | — |
| 5/3/2012 | Action | — | Action | — |

| Week | Surface Sampling Action/Alert | Microorganisms Listed | Air Sampling Action/Alert | Gloved-Fingertip Sampling Results |
|------|-------------------------------|------------------------|---------------------------|-----------------------------------|
| 5/10/2012 | Action | Bacteria/Mold | Not tested | — |
| 5/17/2012 | Action | — | Action | — |
| 5/24/2012 | Action | Bacteria/Mold | Not tested | — |
| 5/31/2012 | Action | Bacteria/Mold | Action | — |
| 6/7/2012 | Action | Bacteria | Not tested | 1 technician |
| 6/13/2012 | Action | Bacteria/Mold | Alert | 1 technician |
| 6/21/2012 | Action | Mold | Not tested | — |
| 6/28/2012 | Action | Bacteria/Mold | Action | 2 technicians |
| 7/5/2012 | Action | Mold | Not tested | — |
| 7/12/2012 | Action | Mold | Action | **(3) SVIRSKIY** and 2 technicians |
| 7/18/2012 | Action | — | Not tested | 2 technicians |
| 7/26/2012 | Action | Mold | Action | **(2) CHIN, (5) EVANOSKY,** and 1 technician |
| 8/2/2012 | Action | Bacteria/Mold | Not tested | 1 technicians |
| 8/9/2012 | Action | Bacteria | Action | 2 technicians |
| 8/16/2012 | Action | — | Not tested | **(4) LEARY** |
| 8/23/2012 | Action | Mold | Action | 1 technician |
| 8/30/2012 | Action | — | Not tested | **(5) EVANOSKY** |
| 9/6/2012 | Action | — | Action | — |
| 9/13/2012 | Action | Bacteria/Mold | Not tested | 1 technician |
| 9/20/2012 | Action | Bacteria/Mold | Action | 2 technicians |

e.  Defendants (1) **CADDEN**, (2) **CHIN**, (3) **SVIRSKIY**, (4) **LEARY**, and (5)

**EVANOSKY** were notified of action-level sampling hits from the Clean Room 1 rooms.

f.  Despite the action-level sampling hits recorded in thirty-seven out of

thirty-eight weeks in 2012, defendants (1) **CADDEN**, (2) **CHIN**, (3) **SVIRSKIY**, (4) **LEARY**,

and (5) **EVANOSKY** did not conduct a re-evaluation of their practices and procedures as required

by USP-797. Defendants (1) **CADDEN**, (2) **CHIN**, (3) **SVIRSKIY**, (4) **LEARY**, and (5) **EVANOSKY** did not conduct an investigation into the source of the contamination as required by USP-797. Defendants (1) **CADDEN**, (2) **CHIN**, (3) **SVIRSKIY**, (4) **LEARY**, and (5) **EVANOSKY** did not consult with a competent microbiologist, infection control professional, or industrial hygienist regarding the mold consistently found in the Clean Room 1 rooms during 2012 as required by USP-797.

<u>The Racketeering Violation</u>

38.   From in at least 2006 and continuing until in or around October 2012, within the District of Massachusetts and elsewhere, defendants (1) **CADDEN**, (2) **CHIN**, (3) **SVIRSKIY**, (4) **LEARY**, (5) **EVANOSKY**, and (6) **CONNOLLY**, along with others known and unknown to the Grand Jury, being persons employed by and associated with the enterprise described above, which enterprise was engaged in and the activities of which affected interstate commerce, did knowingly and unlawfully conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise, through the pattern of racketeering activity set forth below in paragraphs 39 through 71.

<u>The Pattern of Racketeering Activity</u>

39.   The pattern of racketeering activity as defined in Title 18, United States Code, Section 1961(1) and 1961(5), consisted of the following acts:

<u>**Racketeering Acts 1 through 52: Methylprednisolone Acetate**</u>

40.   The defendants named below committed the below-described Racketeering Acts:

<u>Racketeering Acts 1 through 27:   Mail Fraud</u>

<u>*The Scheme*</u>

41.   From in or around May 2012 to in or around October 2012, in the District of Massachusetts and elsewhere, defendants (1) **CADDEN** and (2) **CHIN** devised and intended to devise a scheme and artifice to defraud NECC's customers and the patients of those customers and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

42.   The purpose of the scheme and artifice to defraud was to enrich defendants (1) **CADDEN** and (2) **CHIN** and NECC, by selling for a profit to NECC's customers and the patients of those customers, preservative-free methylprednisolone acetate 80 mg/ml, a steroid labeled as injectable, which was made in a manner that did not meet the standards set forth in the USP and, therefore, could not be labeled and sold as a sterile drug.

<u>*The 05212012@68 Lot*</u>

43.   It was part of the scheme and artifice to defraud that on or about May 21, 2012, defendant (2) **CHIN**, acting under the direction of defendant (1) **CADDEN**, compounded a 12.5 liter stock lot of preservative-free methylprednisolone acetate 80 mg/ml with lot number 05212012@68 (the "05212012@68 lot") in Clean Room 1.  Defendant (2) **CHIN**, with the knowledge of defendant (1) **CADDEN**, attempted to sterilize the 05212012@68 lot in the autoclave for 15 minutes and 4 seconds, rather than 20 minutes as stated in the written formula instructions and USP-797.   Defendant (2) **CHIN**, with the knowledge of defendant (1) **CADDEN**, did not verify the sterilization process used for the 05212012@68 lot through the use of a biological indicator as required by USP-797.

44.   It was further part of the scheme and artifice to defraud that defendant (2) **CHIN** filled two 5 milliliter vials from the batch of the 05212012@68 lot to be sent to an independent laboratory for testing.   On or about June 5, 2012, based on a single 5 milliliter vial, the independent laboratory issued a report indicating the 05212012@68 lot was sterile.   It was further part of the scheme and artifice to defraud that defendant (2) **CHIN** directed pharmacy technicians to fill and supervised pharmacy technicians in filling vials with the 05212012@68 lot on repeated occasions to fulfill NECC's customer orders.   Defendant (2) **CHIN**, with the knowledge of defendant (1) **CADDEN**, did not conduct any sterility testing of the filled vials of the 05212012@68 lot, which NECC shipped to customers for patient use.

45.   It was further part of the scheme and artifice to defraud that defendant (2) **CHIN**, with the knowledge of defendant (1) **CADDEN**, directed pharmacy technicians and other NECC personnel to label the vials filled with the 05212012@68 lot as injectable.   During the time that the 05212012@68 lot was compounded and filled, NECC recorded action-level environmental sampling results every week in the Clean Room 1 rooms but did not take any action to remediate the issues as required by USP-797.

46.   It was further part of the scheme and artifice to defraud that defendant (2) **CHIN,** with the knowledge of defendant (1) **CADDEN**, directed that filled vials of the 05212012@68 lot be sent out of Clean Room 1 for shipment by private and commercial interstate carrier to NECC's customers for use on the patients of those customers.   From on or about June 8, 2012, through on or about July 27, 2012, approximately 6,500 vials labeled as the 05212012@68 lot were sent to NECC's customers throughout the country.

*The 06292012@26 Lot*

47.   It was part of the scheme and artifice to defraud that on or about June 29, 2012, defendant (2) **CHIN**, acting under the direction of defendant (1) **CADDEN**, compounded a 12.5 liter stock lot of preservative-free methylprednisolone acetate 80 mg/ml with lot number 06292012@26 (the "06292012@26 lot").   Defendant (2) **CHIN,** with the knowledge of defendant (1) **CADDEN**, attempted to sterilize the 06292012@26 lot in the autoclave for 15 minutes and 5 seconds, rather than 20 minutes as stated in the written formula instructions and USP-797. Defendant (2) **CHIN,** with the knowledge of defendant (1) **CADDEN**, did not verify the sterilization process used for the 06292012@26 lot through the use of a biological indicator as required by USP-797.

48.   It was further part of the scheme and artifice to defraud that defendant (2) **CHIN** filled two 5 milliliter vials from the stock of the 06292012@26 lot to be sent to an independent laboratory for sterility testing.   On or about July 17, 2012, based on a single 5 milliliter vial, the independent laboratory issued a report indicating the 06292012@26 lot was sterile.   It was further part of the scheme and artifice to defraud that defendant (2) **CHIN** directed pharmacy technicians to fill and supervised pharmacy technicians in filling vials with the 06292012@26 lot on repeated occasions to fulfill NECC's customer orders.   Defendant (2) **CHIN,** with the knowledge of defendant (1) **CADDEN**, did not conduct sterility testing of the filled vials of the 06292012@26 lot, which NECC shipped to customers for patient use.

49.   It was further part of the scheme and artifice to defraud that defendant (2) **CHIN,** with the knowledge of defendant (1) **CADDEN**, directed pharmacy technicians and other NECC personnel to label the vials filled with the 06292012@26 lot as injectable.   During the time that the 06292012@26 lot was compounded and filled, NECC recorded action-level environmental

sampling results every week in the Clean Room 1 rooms but did not take any action to remediate the issues as required by USP-797.

50.   It was further part of the scheme and artifice to defraud that defendant (2) **CHIN,** with the knowledge of defendant (1) **CADDEN,** directed that filled vials of the 06292012@26 lot be sent out of Clean Room 1 for shipment by private and commercial interstate carrier to NECC's customers for use on the patients of those customers.   From on or about July 16, 2012, through on or about August 27, 2012, approximately 6,200 vials labeled as the 06292012@26 lot were sent to NECC's customers throughout the country.

### *The 08102012@51 Lot*

51.   It was part of the scheme and artifice to defraud that on or about August 10, 2012, defendant (2) **CHIN,** acting under the direction of defendant (1) **CADDEN,** compounded a 12.5 liter stock lot of preservative-free methylprednisolone acetate 80 mg/ml with lot number 08102012@51 (the "08102012@51 lot").   Defendant (2) **CHIN,** with the knowledge of defendant (1) **CADDEN,** attempted to sterilize the 08102012@51 lot in the autoclave for 15 minutes and 4 seconds, rather than 20 minutes as stated in the written formula instructions and USP-797.   Defendant (2) **CHIN,** with the knowledge of defendant (1) **CADDEN,** did not verify the sterilization process used for the 08102012@51 lot through the use of a biological indicator as required by USP-797.

52.   It was further part of the scheme and artifice to defraud that defendant (2) **CHIN** filled two 5 milliliter vials from the stock of the 08102012@51 lot to be sent to an independent laboratory for sterility testing.   On or about August 28, 2012, based on a single 5 milliliter vial, the independent laboratory issued a report indicating the 08102012@51 lot was sterile.   It was further part of the scheme and artifice to defraud that defendant (2) **CHIN** directed pharmacy

technicians to fill and supervised pharmacy technicians in filling vials with the 08102012@51 lot on repeated occasions to fulfill NECC's customer orders. Defendant (2) **CHIN**, with the knowledge of defendant (1) **CADDEN**, did not conduct sterility testing of the filled vials of the 08102012@51 lot, which NECC shipped to customers for patient use.

53. It was further part of the scheme and artifice to defraud that defendant (2) **CHIN**, with the knowledge of defendant (1) **CADDEN**, directed pharmacy technicians and other NECC personnel to label the vials filled with the 08102012@51 lot as injectable. During the time that the 08102012@51 lot was compounded and filled, NECC recorded action-level environmental sampling hits every week in the Clean Room 1 rooms but did not take any action to remediate the issues as required by USP-797.

54. It was further part of the scheme and artifice to defraud that defendant (2) **CHIN**, with the knowledge of defendant (1) **CADDEN**, directed that filled vials of the 08102012@51 lot be sent out of Clean Room 1 for shipment by private and commercial interstate carrier to NECC's customers for use on the patients of those customers. From on or about August 17, 2012, through on or about September 25, 2012, approximately 4,600 vials labeled as the 08102012@51 lot were sent to NECC's customers throughout the country.

### The Mailings

55. On or about the dates listed below, defendants (1) **CADDEN** and (2) **CHIN**, having devised and intending to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, for the purpose of executing such scheme and artifice and attempting to do so, deposited and caused to be deposited matters and things – to wit, vials of the 05212012@68, 06292012@26, and

08102012@51 lots, each labeled as injectable -- to be sent and delivered by private and commercial

interstate carrier to NECC's customers and the patients of those customers as specified below:

| Racketeering Act | Date | Description | Destination |
|---|---|---|---|
| 1 | 8/8/2012 | 400 5 ml vials of 06292012@26 | Michigan Pain Specialists, Brighton, Michigan |
| 2 | 7/17/2012 | 100 1 ml vials of 06292012@26 | Specialty Surgery Center, Crossville, Tennessee |
| 3 | 8/14/2012 | 120 1 ml vials of 06292012@26 | |
| 4 | 6/27/2012 | 500 1 ml vials of 05212012@68 | St. Thomas Outpatient Neurological Center, Nashville, Tennessee |
| 5 | 7/25/2012 | 500 1 ml vials of 06292012@26 | |
| 6 | 8/13/2012 | 500 1 ml vials of 06292012@26 | |
| 7 | 9/4/2012 | 500 1 ml vials of 08102012@51 | |
| 8 | 6/25/2012 | 125 1 ml vials of 05212012@68 | OSMC Outpatient Surgery Center, Elkhart, Indiana |
| 9 | 7/16/2012 | 125 1 ml vials of 05212012@68 | |
| 10 | 8/2/2012 | 150 1 ml vials of 06292012@26 | |
| 11 | 8/28/2012 | 130 1 ml vials of 08102012@51 | |
| 12 | 9/17/2012 | 100 1 ml vials of 08102012@51 | |
| 13 | 8/15/2012 | 100 1 ml vials of 06292012@26 | South Bend Clinic, South Bend, Indiana |
| 14 | 9/25/2012 | 100 1 ml vials of 08102012@51 | |
| 15 | 7/5/2012 | 150 1 ml vials of 05212012@68 | Marion Pain Management, Ocala, Florida |
| 16 | 8/15/2012 | 150 1 ml vials of 06292012@26 | |
| 17 | 8/13/2012 | 85 5 ml vials of 06292012@26 | Box Hill Surgery Center, Abingdon, Maryland |
| 18 | 9/25/2012 | 300 1 ml vials of 08102012@51 | |
| 19 | 7/9/2012 | 200 1 ml vials of 05212012@68 | Insight Imaging, Roanoke, Virginia |
| 20 | 7/26/2012 | 200 1 ml vials of 06292012@26 | |
| 21 | 8/17/2012 | 200 1 ml vials of 06292012@26 | |
| 22 | 9/7/2012 | 200 1 ml vials of 08102012@51 | |
| 23 | 6/25/2012 | 20 1 ml vials of 05212012@68 | High Point Surgery Center, High Point, North Carolina |
| 24 | 7/13/2012 | 20 1 ml vials of 05212012@68 | |
| 25 | 8/7/2012 | 40 1 ml vials of 06292012@26 | |
| 26 | 8/14/2012 | 80 1 ml vials of 06292012@26 | |
| 27 | 9/20/2012 | 60 1 ml vials of 08102012@51 | |

All in violation of Title 18, United States Code, Section 1341.

Racketeering Acts 28 through 35:   Second Degree Murder – Michigan

56.   On or about the dates listed below, in the District of Massachusetts and elsewhere, defendants (1) **CADDEN** and (2) **CHIN**, acting in wanton and willful disregard of the likelihood that the natural tendency of their actions would cause death or great bodily harm, caused the deaths of the individuals listed below, that is, the individuals died as a result of receiving injections of the 06292012@26 lot of methylprednisolone acetate made and sold by NECC:

| Racketeering Act | Date of Injection | Individual | Location of Injection | Date of Death |
|---|---|---|---|---|
| 28 | 8/16/2012 | Karina Baxter | Brighton, Michigan | 9/23/2012 |
| 29 | 8/20/2012 | Paula Brent | Brighton, Michigan | 11/17/2012 |
| 30 | 8/29/2012 | Gayle Gipson | Brighton, Michigan | 10/26/2012 |
| 31 | 8/21/2012 | Donna Kruzich | Brighton, Michigan | 10/8/2012 |
| 32 | 9/6/2012 | Lyn Laperriere | Brighton, Michigan | 10/17/2012 |
| 33 | 8/16/2012 | Mary Plettl | Brighton, Michigan | 11/3/2012 |
| 34 | 9/18/2012 | Sally Roe | Brighton, Michigan | 10/18/2012 |
| 35 | 9/10/2012 | Emma Todd | Brighton, Michigan | 3/22/2013 |

All in violation of Chapter 750, Michigan Compiled Laws, Section 317 and Chapter 767, Michigan Compiled Laws, Section 39.

Racketeering Acts 36 through 42:   Second Degree Murder – Tennessee

57.   On or about the dates listed below, in the District of Massachusetts and elsewhere, defendants (1) **CADDEN** and (2) **CHIN** knowingly, that is, acting with an awareness that their conduct was reasonably certain to cause death, and unlawfully killed the individuals listed below, that is, the individuals died as a result of receiving injections of the 05212012@68, 06292012@26, and 08102012@51 lots of methylprednisolone acetate made and sold by NECC:

| Racketeering Act | Date of Injection(s) | Individual | Location of Injection | Date of Death |
|---|---|---|---|---|
| 36 | 8/31/2012 | Marie Hester | Nashville, Tennessee | 11/1/2012 |
| 37 | 7/27/2012<br>8/17/2012<br>8/31/2012 | Eddie Lovelace | Nashville, Tennessee | 9/17/2012 |
| 38 | 8/29/2012<br>9/26/2012 | Donald McDavid | Crossville, Tennessee | 11/4/2012 |
| 39 | 8/21/2012<br>9/4/2012<br>9/18/2012 | Diana Reed | Nashville, Tennessee | 10/3/2012 |
| 40 | 7/30/2012 | Thomas Rybinski | Nashville, Tennessee | 9/29/2012 |
| 41 | 9/17/2012 | Carol Wetton | Nashville, Tennessee | 4/16/2013 |
| 42 | 8/23/2012 | Earline Williams | Nashville, Tennessee | 10/15/2012 |

All in violation of Title 39, Tennessee Code, Sections 13-210, 11-302, and 11-402.

Racketeering Acts 43 through 45:   Second Degree Murder – Indiana

58.   On or about the dates listed below, in the District of Massachusetts and elsewhere, defendants (1) **CADDEN** and (2) **CHIN**, knowingly, that is, acting with an awareness of a high probability that their conduct would result in death, killed the individuals listed below, that is, the individuals died as a result of receiving injections of the 05212012@68, 06292012@26, and 08102012@51 lots of methylprednisolone acetate made and sold by NECC, and defendants (1) **CADDEN** and (2) **CHIN** have committed other murders:

| Racketeering Act | Date of Injection(s) | Individual | Location of Injection | Date of Death |
|---|---|---|---|---|
| 43 | 8/22/2012<br>9/7/2012 | Pauline Burema | Elkhart, Indiana | 10/10/2012 |
| 44 | 9/14/2012 | Kathy Dillon | Elkhart, Indiana | 11/5/2012 |

| Racketeering Act | Date of Injection(s) | Individual | Location of Injection | Date of Death |
|---|---|---|---|---|
| 45 | 9/6/2012<br>10/1/2012 | Alice Machowiak | South Bend, Indiana | 12/10/2012 |

All in violation of Title 35, Indiana Code, Sections 42-1-1, 41-2-2, 50-2-9, and 41-2-4.

<u>Racketeering Acts 46 through 48:  Second Degree Murder – Maryland</u>

59.  On or about the dates listed below, in the District of Massachusetts and elsewhere, defendants (1) **CADDEN** and (2) **CHIN** created a very high degree of risk to the lives of the individuals listed below, and, conscious of such risk, acted with extreme disregard of the life-endangering consequences, thereby causing the deaths of the individuals listed below, that is, the individuals died as a result of receiving injections of the 06292012@26 and 08102012@51 lots of methylprednisolone acetate made and sold by NECC:

| Racketeering Act | Date of Injection(s) | Individual | Location of Injection | Date of Death |
|---|---|---|---|---|
| 46 | 9/5/2012 | Bahman Kashi | Abingdon, Maryland | 1/28/2013 |
| 47 | 8/31/2012 | Brenda Rozek | Abingdon, Maryland | 9/16/2012 |
| 48 | 7/20/2012<br>8/24/2012 | Edna Young | Abingdon, Maryland | 12/31/2012 |

All in violation of Title 2, Maryland Code, Section 204 and Title 4, Maryland Code, Section 204.

<u>Racketeering Acts 49 through 50:  Second Degree Murder – Virginia</u>

60.  On or about the dates listed below, in the District of Massachusetts and elsewhere, defendants (1) **CADDEN** and (2) **CHIN** willfully and purposefully embarked upon a course of wrongful conduct likely to cause death and great bodily harm, and unlawfully killed the individuals listed below, that is, the individuals died as a result of receiving injections of the

05212012@68, 06292012@26, and 08102012@51 lots of methylprednisolone acetate made and sold by NECC:

| Racketeering Act | Date of Injection(s) | Individual | Location of Injection | Date of Death |
|---|---|---|---|---|
| 49 | 8/13/2012 9/19/2012 | Kathy Sinclair | Roanoke, Virginia | 1/19/2013 |
| 50 | 9/6/2012 | Douglas Wingate | Roanoke, Virginia | 9/18/2012 |

All in violation of Title 18.2, Virginia Code, Sections 32 and 18.

<u>Racketeering Act 51:   Second Degree Murder – Florida</u>

61.   On or about the dates listed below, in the District of Massachusetts and elsewhere, defendants (1) **CADDEN** and (2) **CHIN**, acting imminently dangerous to another and demonstrating a depraved mind without regard for human life, unlawfully killed the individual listed below, that is, the individual died as a result of receiving an injection of the 06292012@26 lot of methylprednisolone acetate made and sold by NECC:

| Racketeering Act | Date of Injection | Individual | Location of Injection | Date of Death |
|---|---|---|---|---|
| 51 | 9/6/2012 | Godwin Mitchell | Ocala, Florida | 3/18/2013 |

All in violation of Florida Code, Sections 782.04(2) and 777.011.

<u>Racketeering Act 52:   Second Degree Murder – North Carolina</u>

62.   On or about the dates listed below, in the District of Massachusetts and elsewhere, defendants (1) **CADDEN** and (2) **CHIN**, acting in a manner inherently dangerous to human life so recklessly and wantonly as to manifest a mind utterly without regard for human life and social duty and deliberately bent on mischief, unlawfully killed the individual listed below, that is, the

individual died as a result of receiving an injection of the 06292012@26 lot of methylprednisolone acetate made and sold by NECC:

| Racketeering Act | Date of Injection | Individual | Location of Injection | Date of Death |
|---|---|---|---|---|
| 52 | 8/28/2012 | Elwina Shaw | High Point, North Carolina | 10/19/2012 |

All in violation of North Carolina General Statutes Sections 14-17(b) and 14-5.2.

**Racketeering Acts 53-63:   Shipments of Untested Lots**

63.   The defendants named below committed the below-described Racketeering Acts:

Racketeering Acts 53-63:   Mail Fraud

*The Scheme*

64.   From in or around July 2012 through October 2012, in the District of Massachusetts and elsewhere, defendants (1) **CADDEN**, (2) **CHIN**, (3) **SVIRSKIY**, (4) **LEARY**, and (5) **EVANOSKY** devised and intended to devise a scheme and artifice to defraud NECC's customers and the patients of those customers, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, in that NECC shipped to its customers throughout the country drugs identified as sterile and containing certain ingredients prior to receiving the results of testing confirming the sterility and quality of the drugs.   NECC failed to inform its customers that independent sterility testing had not yet been completed at the time of the shipments.   In instances in which the independent laboratory issued non-sterile or otherwise out-of-specification results, NECC failed to notify the customers of the results, institute a recall, and conduct an investigation into the source of the results as required by USP-797.

*The Mailings*

65.   On or about the dates listed below, the defendants listed below, having devised and
intending to devise a scheme and artifice to defraud and to obtain money and property by means of
materially false and fraudulent pretenses, representations, and promises, for the purpose of
executing such scheme and artifice and attempting to do so, deposited and caused to be deposited
matters and things – to wit, untested drugs identified as sterile and containing certain ingredients –
to be sent and delivered by private and commercial interstate carrier to NECC's customers to be
used on the patients of those customers as set forth below:

| Racketeering Act | Defendants | Date of Shipment | Description | Destination | Testing Result |
|---|---|---|---|---|---|
| 53 | (1) CADDEN, (2) CHIN | 7/24/2012 | 150 bacitracin 20 ml syringes | Good Shepherd Hospital, Barrington, Illinois | Not sterile |
| 54 | (1) CADDEN, (3) SVIRSKIY | 8/7/2012 | 18 polymyxin-bacitracin irrigation bags | Glens Falls Hospital, Glens Falls, New York | Not sterile |
| 55 | (1) CADDEN, (4) LEARY | 8/27/2012 | 18 polymyxin-bacitracin irrigation bags | Glens Falls Hospital, Glens Falls, New York | Not sterile |
| 56 | (1) CADDEN, (5) EVANOSKY | 8/28/2012 | 20 polymyxin-bacitracin irrigation bags | Winchester Hospital, Winchester, Virginia | Not sterile |
| 57 | (1) CADDEN, (5) EVANOSKY | 8/30/2012 | 20 polymyxin-bacitracin irrigation bags | Winchester Hospital, Winchester, Virginia | Not sterile |
| 58 | (1) CADDEN, (2) CHIN | 9/11/2012 | 100 potassium chloride injectables | Port Huron Hospital, Port Huron, Michigan | Not sterile |

| Racketeering Act | Defendants | Date of Shipment | Description | Destination | Testing Result |
|---|---|---|---|---|---|
| 59 | (1) CADDEN, (5) EVANOSKY | 9/24/2012 | 50 cardioplegia solution (low-K) | Brigham and Women's Hospital, Boston, Massachusetts | Not sterile |
| 60 | (1) CADDEN, (2) CHIN | 9/27/2012 | 60 potassium chloride bags | Sentara Norfolk General Hospital, Norfolk, Virginia | Not sterile |
| 61 | (1) CADDEN, (4) LEARY | 2/23/2012 | 300 lidocaine-bupivacaine-hyaluronidase injections | Massachusetts Eye and Ear Institute, Boston, Massachusetts | Sub-potent |
| 62 | (1) CADDEN, (4) LEARY | 8/21/2012 | 50 55 ml pericapsular injections | Oakleaf Surgical Hospital, Eau Claire, Wisconsin | Missing epinephrine |
| 63 | (1) CADDEN, (4) LEARY, (5) EVANOSKY | 9/17/2012 | 15 clindamycin-gentamicin-polymyxin bags | Florida Hospital Waterman, Tavares, Florida | Missing polymyxin |

All in violation of Title 18, United States Code, Section 1341.

### Racketeering Acts 64-68:   Shipments of Expired Drugs

66. The defendants named below committed the below-described Racketeering Acts:

### Racketeering Acts 64-68:   Mail Fraud

*The Scheme*

67. From in or around January 2008 through July 2012, in the District of Massachusetts and elsewhere, defendants (1) CADDEN, (2) CHIN, (3) SVIRSKIY, and (4) LEARY devised and intended to devise a scheme and artifice to defraud NECC's customers and the patients of those customers and to obtain money and property by means of materially false and fraudulent

pretenses, representations, and promises, in that they made drugs using an ingredient that had expired on or about January 23, 2007, in violation of USP-797.   To mask the use of the expired ingredient, defendants (1) **CADDEN**, (2) **CHIN**, (3) **SVIRSKIY**, and (4) **LEARY** completed, caused others to complete, and approved the completion of written documentation with fictitious expiration dates.   Defendants (1) **CADDEN**, (2) **CHIN**, (3) **SVIRSKIY**, and (4) **LEARY** caused the drugs to be shipped to NECC's customers throughout the country without notifying them of the use of the expired ingredient.   The drugs were labeled with fictitious BUDs indicating expiration dates three to six months after the date the drugs were made.

### *The Mailings*

68.   On or about the dates listed below, the defendants listed below, having devised and intending to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, for the purpose of executing such scheme and artifice and attempting to do so, deposited and caused to be deposited matters and things – to wit, drugs made with an expired ingredient in violation of USP-797 – to be sent and delivered by private and commercial interstate carrier to NECC's customers to be used on the patients of those customers as set forth below:

| Racketeering Act | Defendants | Date of Shipment | Description | Destination |
|---|---|---|---|---|
| 64 | (1) **CADDEN**, (3) **SVIRSKIY** | 7/7/2011 | 6 25 mg/ml methotrexate injectables | USC University Hospital, Los Angeles, California |
| 65 | (1) **CADDEN**, (4) **LEARY** | 7/8/2011 | 8 4 mg/ml methotrexate injectables | Augusta Eye Associates, Fisherville, Virginia |

| Racketeering Act | Defendants | Date of Shipment | Description | Destination |
|---|---|---|---|---|
| 66 | (1) CADDEN, (2) CHIN | 10/31/2011 | 6 25 mg/ml methotrexate injectables | Southboro Medical Group, Southboro, Massachusetts |
| 67 | (1) CADDEN, (2) CHIN | 2/15/2012 | 25 25 mg/ml methotrexate injectables | Decatur Memorial Hospital, Decatur, Illinois |
| 68 | (1) CADDEN, (2) CHIN, (4) LEARY | 6/8/2012 | 10 4 mg/ml methotrexate injectables | Retina Group of Washington, Chevy Chase, Maryland |

All in violation of Title 18, United States Code, Section 1341.

**Racketeering Acts 69-78:   Unlicensed Pharmacy Technician**

69.   The defendants named below committed the below-described Racketeering Acts:

Racketeering Acts 69-78:   Mail Fraud

*The Scheme*

70.   From in or around March 2010 to in or around August 2012, in the District of Massachusetts and elsewhere, the defendants (1) **CADDEN**, (2) **CHIN**, (3) **SVIRSKIY**, and (6) **CONNOLLY** devised and intended to devise a scheme and artifice to defraud NECC's customers and the patients of those customers and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, in that NECC represented to its customers that it complied with Massachusetts pharmacy regulations even though defendant (6) **CONNOLLY**, who had voluntarily surrendered his pharmacy technician license in or about January 2009, worked as a pharmacy technician in Clean Room 2 filling cardioplegia orders for hospital customers in violation of Massachusetts law.   To conceal his presence from regulators,

defendant (6) **CONNOLLY** operated the equipment in Clean Room 2 using defendant (1) **CADDEN**'s username and password.

## *The Mailings*

71.   On or about the dates listed below, defendants (1) **CADDEN**, (2) **CHIN**, (3) **SVIRSKIY**, and (6) **CONNOLLY**, having devised and intending to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, for the purpose of executing such scheme and artifice and attempting to do so, deposited and caused to be deposited matters and things – to wit, drugs made by an unlicensed pharmacy technician – to be sent and delivered by private and commercial interstate carrier to NECC's customers to be used on the patients of those customers as set forth below:

| Racketeering Act | Defendants | Date of Shipment | Description | Destination |
|---|---|---|---|---|
| 69 | (1) **CADDEN**, (2) **CHIN**, (3) **SVIRSKIY**, (6) **CONNOLLY** | 3/25/2010 | 7 cardioplegia solution bags | Lewis-Gale Medical Center, Salem, Virginia |
| 70 | (1) **CADDEN**, (2) **CHIN**, (3) **SVIRSKIY**, (6) **CONNOLLY** | 10/21/2010 | 10 cardioplegia (cold induction high K) bags | Osceola Regional Medical Center, Kissimmee, Florida |
| 71 | (1) **CADDEN**, (2) **CHIN**, (3) **SVIRSKIY**, (6) **CONNOLLY** | 12/21/2010 | 10 cardioplegia solution bags | Baptist Medical Center, Jacksonville, Florida |

| Racketeering Act | Defendants | Date of Shipment | Description | Destination |
|---|---|---|---|---|
| 72 | (1) CADDEN, (2) CHIN, (3) SVIRSKIY, (6) CONNOLLY | 3/30/2011 | 8 cardioplegia solution bags | North Shore Medical Center, Salem, Massachusetts |
| 73 | (1) CADDEN, (2) CHIN, (3) SVIRSKIY, (6) CONNOLLY | 6/29/2011 | 20 cardioplegia (high K) solution bags | Sunrise Medical Center, Las Vegas, Nevada |
| 74 | (1) CADDEN, (2) CHIN, (3) SVIRSKIY, (6) CONNOLLY | 11/15/2011 | 10 cardioplegia (induction formula) bags | St. Vincent's Hospital, Birmingham, Alabama |
| 75 | (1) CADDEN, (2) CHIN, (3) SVIRSKIY, (6) CONNOLLY | 2/22/2012 | 20 cardioplegia (high K) solution bags | Sunrise Medical Center, Las Vegas, Nevada |
| 76 | (1) CADDEN, (2) CHIN, (3) SVIRSKIY, (6) CONNOLLY | 6/4/2012 | 30 cardioplegia (cold induction) bags | St. Peter's Hospital, Albany, New York |
| 77 | (1) CADDEN, (2) CHIN, (3) SVIRSKIY, (6) CONNOLLY | 7/12/2012 | 25 cardioplegia solution bags | West Virginia University, Morgantown, West Virginia |
| 78 | (1) CADDEN, (2) CHIN, (3) SVIRSKIY, (6) CONNOLLY | 8/8/2012 | 20 cardioplegia (high K) solution bags | Sunrise Medical Center, Las Vegas, Nevada |

All in violation of Title 18, United States Code, Section 1341.

All of the above done in violation of Title 18, United States Code, Section 1962(c).

## COUNT 2
### (18 U.S.C. § 1962(d) – Racketeering Conspiracy)

**[DEFENDANTS (1) CADDEN, (2) CHIN, (3) SVIRSKIY, (4) LEARY, (5) EVANOSKY, (6) CONNOLLY, (7) CARTER, (8) STEPANETS]**

72.   The allegations contained in paragraphs 1 through 10, 17 through 32, and 34 through 37 are re-alleged and incorporated herein by reference.

73.   Beginning in at least 2006 and continuing until in or around October 2012, within the District of Massachusetts and elsewhere, defendants (1) **CADDEN**, (2) **CHIN**, (3) **SVIRSKIY**, (4) **LEARY**, (5) **EVANOSKY**, (6) **CONNOLLY**, (7) **CARTER**, and (8) **STEPANETS**, along with others known and unknown to the Grand Jury, being persons employed by and associated with the enterprise described above, which enterprise was engaged in and the activities of which affected interstate commerce, unlawfully and knowingly conspired to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as that term is defined by Title 18, United States Code, Sections 1961(1) and (5), consisting of multiple acts indictable under Title 18, United States Code, Section 1341 (mail fraud).

### Manner and Means of the Conspiracy

74.   It was part of the conspiracy that defendants (1) **CADDEN**, (2) **CHIN**, (3) **SVIRSKIY**, (4) **LEARY**, (5) **EVANOSKY**, and (6) **CONNOLLY** defrauded NECC's customers and the patients of those customers, by selling for a profit:  purportedly sterile drugs that were made and tested in a manner that did not meet the standards set forth in USP-797 and USP-71; untested drugs identified as sterile and containing certain ingredients that were made in violation of USP-797 and tested in violation of USP-71; drugs made with an expired ingredient in violation of USP-797; and drugs made by an unlicensed pharmacy technician in violation of Massachusetts

law. It was further part of the conspiracy that defendants (7) **CARTER** and (8) **STEPANETS** knowingly confirmed and authorized shipments of orders to be sent to NECC customers of drugs that were improperly tested, drugs for which test results had not yet been received, drugs that were not tested at all, and drugs that were made with an expired ingredient.

75. It was further part of the conspiracy that defendants (1) **CADDEN**, (2) **CHIN**, (3) **SVIRSKIY**, (4) **LEARY**, (5) **EVANOSKY**, (6) **CONNOLLY**, (7) **CARTER**, and (8) **STEPANETS** each agreed that a conspirator would commit at least two acts of racketeering in the conduct of the affairs of the enterprise.

All done in violation of Title 18, United States Code, Section 1962(d).

## COUNT 3
### (18 U.S.C. § 371 – Conspiracy to Defraud the United States)
### [DEFENDANTS (1) CADDEN, (7) CARTER, (8) STEPANETS, (9) GREG CONIGLIARO, (10) RONZIO]

76. The allegations contained in paragraphs 1 through 3, and 9 through 12 are re-alleged and incorporated herein by reference.

77. From in or around 1998, the exact date being unknown to the Grand Jury, through in or around October 2012, within the District of Massachusetts and elsewhere, defendants (1) **CADDEN**, (7) **CARTER**, (8) **STEPANETS**, (9) **GREG CONIGLIARO**, and (10) **RONZIO**, knowingly and willfully conspired and agreed together and with each other, and with other persons known and unknown to the Grand Jury, to defraud the United States of and concerning its governmental functions and rights, hereinafter described, that is, of and concerning its right to have its business and its affairs, and particularly the transaction of the official business of the Food and Drug Administration ("FDA"), conducted honestly and impartially, free from corruption, fraud, improper and undue influence, dishonesty, unlawful impairment, and obstruction.

Manner and Means of the Conspiracy

78.  It was part of the conspiracy that defendants (1) **CADDEN**, (7) **CARTER**, (8) **STEPANETS**, (9) **GREG CONIGLIARO**, and (10) **RONZIO** would, by deceit, craft, trickery, and dishonest means, defraud the United States by interfering with and obstructing the lawful governmental functions of the FDA, in that defendants (1) **CADDEN**, (7) **CARTER**, (8) **STEPANETS**, (9) **GREG CONIGLIARO**, and (10) **RONZIO** purported to be operating NECC as a state-regulated pharmacy, dispensing drugs pursuant to valid, patient-specific prescriptions as required by Massachusetts law, rather than as a drug manufacturer distributing drugs in bulk to customers without prescriptions and thereby subject to heightened regulatory oversight by the FDA.

79.  It was further part of the conspiracy that defendants (1) **CADDEN** and (9) **GREG CONIGLIARO** falsely represented to the FDA and the MABOP that NECC, as a pharmacy, dispensed drugs only upon receipt of valid, patient-specific prescriptions as required by Massachusetts law.  Furthermore, defendants (1) **CADDEN** and (9) **GREG CONIGLIARO** falsely represented that NECC was a compounding pharmacy and not a manufacturer, and therefore defendants (1) **CADDEN** and (9) **GREG CONIGLIARO** claimed NECC was not subject to FDA oversight.

80.  It was further part of the conspiracy that defendants (1) **CADDEN**, (7) **CARTER**, (8) **STEPANETS**, and (10) **RONZIO** instructed the MSM sales force to inform customers they needed to provide names of patients for orders of drugs.

81.  It was further part of the conspiracy that defendants (1) **CADDEN**, (7) **CARTER**, (8) **STEPANETS**, and (10) **RONZIO** instructed the MSM sales force to inform customers that

NECC would not include the patients' names on the labels affixed to the drugs, thereby allowing the facilities to use the drugs for any patient.

82.   It was further part of the conspiracy that defendants (1) **CADDEN**, (7) **CARTER**, (8) **STEPANETS**, and (10) **RONZIO** used and caused others to use the names of patients supplied by NECC's customers to create fraudulent prescriptions for drugs.

83.   It was further part of the conspiracy that defendants (1) **CADDEN**, (7) **CARTER**, and (8) **STEPANETS** reused and caused others to reuse the names of patients from the same order or previous orders supplied by NECC's customers to create fraudulent prescriptions for drugs.

84.   It was further part of the conspiracy that defendants (1) **CADDEN**, (7) **CARTER**, (8) **STEPANETS**, and (10) **RONZIO** shipped and caused others to ship drugs to NECC's customers without any patient names, and then used and caused others to use the names of patients received after the drug shipments to create fraudulent prescriptions for those or subsequent orders.

85.   It was further part of the conspiracy that defendants (1) **CADDEN**, (7) **CARTER**, and (8) **STEPANETS** used and caused others to use the names of celebrities, fictional characters, doctors, and medical staff to create fraudulent prescriptions for drugs.

86.   It was further part of the conspiracy that defendant (1) **CADDEN** waived the need for patient names for customers' first orders, that defendants (1) **CADDEN**, (7) **CARTER**, and (10) **RONZIO** waived the need for patient names for subsequent orders for certain other customers, and that defendants (1) **CADDEN**, (7) **CARTER**, (8) **STEPANETS**, and (10) **RONZIO** used and caused others to use the name of the hospital or medical facility as the patient name to create fraudulent prescriptions.

87.   It was further part of the conspiracy that defendants (1) **CADDEN** and (7) **CARTER** created ratios of fraudulent prescriptions to number of drug units sold for NECC's various drugs,

and defendants (1) **CADDEN**, (7) **CARTER**, and (10) **RONZIO** instructed NECC staff and the MSM sales force on the ratios of how many patient names would be needed for each order size.

Overt Acts

88.   In furtherance of the conspiracy and to effect the objects of the conspiracy, defendants (1) **CADDEN**, (7) **CARTER**, (8) **STEPANETS**, (9) **GREG CONIGLIARO**, and (10) **RONZIO** committed the following overt acts, among others, in the District of Massachusetts and elsewhere:

*Representations to Regulators*

89.   On or about May 20, 2003, in response to an FDA inspection of NECC, defendant (1) **CADDEN** wrote to the FDA, "we are not subject to (nor are we voluntarily subjecting ourselves to) current good manufacturing practices (cGMPs) as promulgated by the FDA, since we are a compounding pharmacy, not a manufacturer."

90.   On or about October 1, 2004, in response to an FDA inspection of NECC, defendant (9) **GREG CONGILIARO** falsely wrote to the FDA, NECC "compounds numerous different sterile and non-sterile preparations to fill patient-specific, physician prescriptions."   Defendant (9) **GREG CONGILIARO** further falsely noted, "[w]e always compound only the amount we anticipate will be required based on our prescribing physician's historical prescribing patterns." Defendant (9) **GREG CONGILIARO** concluded by stating, "we are a small-scale, family-run, compounding-only pharmacy, not a manufacturer.   As such we are not subject to GMP."

91.   On or about January 5, 2007, in response to an FDA Warning Letter issued to NECC, defendant (1) **CADDEN** falsely wrote to the FDA, "NECC dispenses compounded medications upon the receipt of valid prescriptions.   We are engaged in the practice of pharmacy and comply with the Massachusetts Board of Registration in Pharmacy's laws and rules."   With respect to an

allegation that NECC had informed its customers to provide names of staff members instead of patients, defendant (1) **CADDEN** falsely wrote, "[t]his allegation contradicts all of our standard operating procedures."

### *NECC's Fraudulent Practices*

92.  On or about September 15, 2010, defendant (1) **CADDEN** sent an e-mail to defendant (10) **RONZIO** in response to a complaint from a potential customer about supplying patient names with a drug order.   In the e-mail, defendant (1) **CADDEN** wrote:

> Unfortunately we are a 'pharmacy'...how can you get medication from a pharmacy without a prescription which must contain a patient name.   We must connect the patients to the dosage forms at some point in the process to prove that we are not a MFG.   They can follow up each month with a roster of actual patients and we can back-fill.   If we just sell drugs we are a MFG.   We can label with office name but process patients in our data base [sic].

93.  On or about October 13, 2010, in response to an NECC customer's request to use the word "generic" on a drug label, defendant (8) **STEPANETS** wrote to the MSM sales representative:

> [Defendant (1) **CADDEN**] and I looked over the label...the reason is the word GENERIC is on there...this is a big red flag for manufacturing.   Since we are not a manufacturer, I cannot put that on the label.   We are getting into "misbranding" and all sorts of things.   So, to avoid any potential issues, we can say something like "compounded for..."

94.  On or about May 2, 2011, defendant (7) **CARTER** sent defendant (1) **CADDEN** an e-mail stating that an NECC customer was providing the names of staff members for its orders.   In response, defendant (1) **CADDEN** wrote, "I will speak to rep.   There are better ways to do this.   Same names all the time makes no sense."

95.  On or about August 9, 2011, an MSM sales representative sent an e-mail to defendant (1) **CADDEN** stating, "[c]urrent customer since 05' [sic] ordering $7,200 a month in

methylprednisolone.   They refuse to provide names and have not since they began ordering with us…Is it ok to process without names?"   Defendant (1) **CADDEN** replied, "Yes…OK."

96.   On or about September 23, 2011, defendant (7) **CARTER** sent an e-mail to an MSM sales representative to inform him that a customer did not provide patient names for the order, but that "[w]e processed it using old pt names."

97.   On or about February 23, 2012, defendant (1) **CADDEN** sent an e-mail to defendants (7) **CARTER** and (10) **RONZIO** regarding the processing of orders for hospitals.   In the e-mail, defendant (1) **CADDEN** wrote that a hospital "[g]ives patient names with orders but may be patients from 'last month.'   We now process and label the bags [of drugs] with these names…We now want to pack as 'Bulk' + label with facility name label while still processing patient names into data base [sic]."

98.   On or about March 13, 2012, defendant (8) **STEPANETS** sent an e-mail to defendant (1) **CADDEN** in which she wrote, "I know that [specific NECC customers] are exempted from patient names for now.   Can you please send a list of [specific NECC customers] to all confirming staff, please."

99.   On or about March 20, 2012, defendant (8) **STEPANETS** sent an e-mail to an MSM sales representative in which she wrote about a specific NECC customer, "facility uses bogus patient names that are just ridiculous!"   The sales representative replied, "[t]hese are RIDICULOUS."   Defendant (8) **STEPANETS** responded that the order was sent out anyway.

100.   On or about May 21, 2012, defendant (1) **CADDEN** sent an e-mail to defendant (7) **CARTER** with the subject line "RX processing."   Defendant (7) **CARTER** amended the e-mail and forwarded it to all NECC order-processing staff.   The e-mail was printed out and hung in the

cubicles of NECC order-processing staff. In the e-mail, defendants (1) **CADDEN** and (7)

**CARTER** wrote:

> The MAX total number of units (vials, syringes, etc..) per patient
> must make sense. I must be able to logically explain to a regulator
> why we processed x# of units per patient.
> We must process only complete names......not (K. Smith)
> A facility can't continuously provide the same roster of
> names.....unless they are truly treating the exact same patients over
> and over again!
> All names must resemble "real" names...........no obviously false
> names! (Mickey Mouse.
> 10ml multi-dose vials, must be (1:1)......one vial per patient
> 5ml, 2ml, 1ml (pf) single dose vials (MP40-pf,
> TA40-pf....etc).....can be processed as (5:1 or 3:1). Many patients
> come back over and over again for a series of injections over many
> weeks/few months.
> Can process multiple meds for same patient on a single
> order.(example: facility orders omnipaque + betamethasone SP
> (pf)......can process 3-5 of each for single patient = series of
> injections
> Can process 3-5 Avastin syringes per patient name = this is a
> chronic treatment, patients are injected every month or
> so..................
> If you have any questions then ask.
> The 3 per prescription must be logical...................#20 LET gel
> per patient does NOT make sense!
> LET gel.....3:1
> Combo drops, 1ml...2:1
> Combo drops 3ml+1:1
> Avastin 5:1
> (pf) steroids 1ml, 2ml, 5ml....5:1
> Omni/isov....5:1............
> Hydroxyp[rogesterone [sic] 1ml...can 20:1. long time series of
> injections
> Ondansetron/Metoclopramide/Ketorolac/Prochlorperazine/
> Nalbuhine – 10 units/pt

101. On or about August 24, 2012, defendant (10) **RONZIO** forwarded part of the above

e-mail from defendants (1) **CADDEN** and (7) **CARTER** to the MSM sales force with the subject

line "HUUUUUUUUUUUUUUGE IMPORTANCE!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!." At the bottom

of the e-mail, defendant (10) **RONZIO** wrote:

DO NOT GIVE RATIOS!!!!!!!!!!!!!!!!   IT'S THE WRONG
THING TO SAY PERIOD!!!!!!!!   I CANNOT STRESS THIS
ENOUGH TO ALL OF YOU!!!!!!   ITS [sic] WILL BE A FATAL
ERROR FOR YOU!!!!!!!   I KNOW I DON'T HAVE TO SAY
THIS BUT ALSO NEVER PUT ANYTHING IN
WRITING.................OTHER KEY WORDS NEVER TO SAY
ARE BACKFILL.......OR ANYTHING ALONG THOSE
LINES.......!!!!

### *NECC's Fraudulent Prescriptions*

102.   In furtherance of the conspiracy and to effect the objects of the conspiracy,
defendants (1) **CADDEN**, (7) **CARTER**, and (8) **STEPANETS** committed and caused to be
committed the following additional acts, among others, in the District of Massachusetts and
elsewhere:

| Overt Act | Date of Shipment | Location | Description | Fake Patient Names Listed on NECC Prescriptions |
|---|---|---|---|---|
| A | 10/28/2009 | San Marcos, Texas | 10 vials of betamethasone repository (pf) 6 mg/ml, 5 vials of 10 ml methylprednisolone acetate 40 mg/ml | Big Baby Jesus, Weslie Willis, Method Man |
| B | 11/23/2009 | Lincoln, Nebraska | 60 vials of betamethasone repository (pf) 6 mg/ml | John Meier, Lisa Kudro, David Spade, Ryan Reynolds, Matthew Perry, Tyler Perry, Roy Rogers |
| C | 12/21/2009 | Lincoln, Nebraska | 60 vials of betamethasone repository (pf) 6 mg/ml | Michael Baldwin, Alex Baldwin, Steven Baldwin, Billy Baldwin, Diana Ross, Michael Jackson, Daily Niner, Chris Rock |
| D | 2/18/2010 | Lincoln, Nebraska | 60 vials of betamethasone repository (pf) 6 mg/ml | Fast Man, Wonder Woman, Fat Albert, Wayne Newton, Cyndi Lopler, John Candie, Pewe Herman, Josh Grovan, Nelly Fertado |

| Overt Act | Date of Shipment | Location | Description | Fake Patient Names Listed on NECC Prescriptions |
|---|---|---|---|---|
| E | 4/22/2010 | Lincoln, Nebraska | 60 vials of betamethasone repository (pf) 6 mg/ml | Robert Redford, William Dafoo, Lucy Lue, Freddy Mercury, Martha Stewart |
| F | 6/11/2010 | Lincoln, Nebraska | 60 vials of betamethasone repository (pf) 6 mg/ml | John Pfizer, Gerry Schlitz, Pat Blue, Bud Weiser, Richard Coors, Michael Keystone, Adam Foster, Samuel Adams, John Killian, Raymond Rollingrock |
| G | 8/26/2010 | San Marcos, Texas | 8 vials of 10 ml triamcinolone 40 mg/ml | Hugh Jass |
| H | 9/14/2010 | San Marcos, Texas | 10 vials of dexamethasone, 5 vials of 10 ml methylprednisolone acetate 40 mg/ml | Freddie Mae, Fannie Mac |
| I | 11/16/2010 | Lincoln, Nebraska | 60 vials of betamethasone repository (pf) 6 mg/ml | Fast Phil, Parma Reigns, Hindsight Man, Peggy Octavius, John No, Silver Surfer, Ned Flanders, Ted Nuget, Bob Barker, Burt Reynolds |
| J | 12/30/2010 | San Marcos, Texas | 10 vials of betamethasone repository (pf) 6 mg/ml, 10 vials of methylprednisolone acetate 40 mg/ml, 10 vials of triamcinolone 40 mg/ml | Betty Ford, Jimmy Carter, Bill Clinton |
| K | 5/3/2011 | San Marcos, Texas | 20 vials of betamethasone repository (pf) 6 mg/ml, 5 vials of methylprednisolone acetate 40 mg/ml, 5 vials of triamcinolone 40 mg/ml | Donald Trump, Calvin Klein, Jennifer Lopez |

| Overt Act | Date of Shipment | Location | Description | Fake Patient Names Listed on NECC Prescriptions |
|---|---|---|---|---|
| L | 8/2/2011 | Lincoln, Nebraska | 60 vials of betamethasone repository (pf) 6 mg/ml | John Stewart, Craig Killborne, David Letterman, Jay Leno, Jimmy Kimmel, Al Bundie, Johnny Knoxville, Dick Van Dike |
| M | 8/29/2011 | Jonesboro, Georgia | 20 vials of triamcinolone 40 mg/ml, 60 combo #4 eye drops | Mike Myers, Bella Swan, William Tweedy, Stefan Salvatore, Sookie Stackhouse, Ruby Falls |
| N | 2/7/2012 | Lincoln, Nebraska | 60 vials of betamethasone repository (pf) 6 mg/ml | Dale Earnhardt, Johnny Johnson, Jerry Jone, Jimmy Stewart, Mark McGrath, Bobby Lebonny, Tom Brokohy, Chris Rock |
| O | 3/8/2012 | Lincoln, Nebraska | 60 vials of betamethasone repository (pf) 6 mg/ml | Flash Gordon, Long John, Tony Tiger, Chester Cheeto, Stuart Little, John Strong, Bill Ransic, Tom Landry |
| P | 3/20/2012 | Elkhart, Indiana | 12 vials of betamethasone repository (pf) 2 mg/ml | L.L. Bean, Filet O'fish, Rug Doctor, Squeaky Wheel, Dingo Boney, Coco Puff, Harry Potter |
| Q | 4/9/2012 | Lincoln, Nebraska | 60 vials of betamethasone repository (pf) 6 mg/ml | Mary Lamb, Ginger Rogers, Mike Marker, Carrol Sharpie |

*The Eye Block Incident*

103.   In furtherance of the conspiracy and to effect the objects of the conspiracy, defendants (1) **CADDEN** and (9) **GREG CONIGLIARO** committed and caused to be committed the following additional acts, among others, in the District of Massachusetts and elsewhere:

104.   On or about May 14, 2012, the MABOP began an investigation of NECC after learning that a sub-potent eye block was compounded by NECC and dispensed to a Massachusetts hospital for use on patients.   The eye block, which was an anesthetic used in eye surgeries, failed

to properly anesthetize the patients' eyes, causing them to experience pain during surgery. As part of the investigation, the MABOP requested from NECC, among other things, copies of the prescriptions for the dispensed eye block.

105.   On or about May 31, 2012, defendant (1) **CADDEN** wrote an e-mail to defendant (9) **GREG CONIGLIARO** informing him that the eye block was dispensed in February 2012 without any prescriptions. Defendant (9) **GREG CONIGLIARO** responded, "call [the Massachusetts hospital] and ask nonchalantly for a patient roster for the 170 syringes and ask where all the rest of the syringes are." Defendant (1) **CADDEN** replied, "I will try but unless she is dumb she will smell a skunk…."

106.   On or about June 4, 2012, defendant (1) **CADDEN** e-mailed defendant (9) **GREG CONIGLIARO** a prescription template and a list of identified surgical patients of the Massachusetts hospital who underwent surgical procedures during a one-week period in February 2012.

107.   On or about June 4, 2012, defendant (9) **GREG CONIGLIARO** instructed his staff to create 300 fraudulent prescriptions for the surgical patients of the Massachusetts hospital identified by defendant (1) **CADDEN**.

108.   On or about June 14, 2012, defendant (1) **CADDEN** submitted NECC's response to the MABOP, in which defendant (1) **CADDEN** wrote that he was including in an attachment "[t]hree hundred (300) patient-specific transcribed prescriptions #1320237 - #1320536 which are retained per [NECC's standard operating procedure]." The attachment contained the 300 fraudulent prescriptions made upon instructions by defendants (9) **GREG CONIGLIARO** and (1) **CADDEN**.

All done in violation of Title 18, United States Code, Section 371.

## COUNTS 4 – 56
### (18 U.S.C. § 1341 – Mail Fraud)

### [DEFENDANTS (1) CADDEN, (2) CHIN, (3) SVIRSKIY, (4) LEARY, (5) EVANOSKY, (6) CONNOLLY]

109.   The allegations contained in paragraphs 1 through 8, and 17 through 32 are re-alleged and incorporated herein by reference.

### The Scheme to Defraud

110.   Beginning in at least 2006 and continuing until in or around October 2012, within the District of Massachusetts and elsewhere, defendants (1) **CADDEN**, (2) **CHIN**, (3) **SVIRSKIY**, (4) **LEARY**, (5) **EVANOSKY**, and (6) **CONNOLLY**, along with others known and unknown to the Grand Jury, devised and intended to devise a scheme and artifice to defraud NECC's customers and the patients of those customers and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

### The Purpose of the Scheme

111.   The purpose of the scheme and artifice to defraud was to enrich NECC and defendants (1) **CADDEN**, (2) **CHIN**, (3) **SVIRSKIY**, (4) **LEARY**, (5) **EVANOSKY**, and (6) **CONNOLLY**, by selling to NECC's customers and the patients of those customers for a profit: purportedly sterile drugs that were made and tested in a manner that did not meet the standards set forth in USP-797 and USP-71; untested drugs identified as sterile and containing certain ingredients that were made in violation of USP-797 and tested in violation of USP-71; drugs made with an expired ingredient in violation of USP-797; and drugs made by an unlicensed pharmacy technician in violation of Massachusetts law.

<u>Manner and Means</u>

112.   The manner and means whereby the scheme and artifice to defraud was to be accomplished are set forth in paragraphs 35 through 37, which are re-alleged and incorporated herein by reference.

<u>The Mailings</u>

113.   On or about the dates listed below, the defendants listed below, having devised and intending to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, for the purpose of executing such scheme and artifice and attempting to do so, deposited and caused to be deposited matters and things – to wit, drugs – to be sent and delivered by private and commercial interstate carrier to NECC's customers to be used on the patients of those customers as set forth below:

| Count | Defendants | Date of Shipment | Description | Destination |
|-------|-----------|------------------|-------------|-------------|
| 4 | (1) CADDEN, (2) CHIN | 8/8/2012 | 400 5 ml vials of 06292012@26 | Michigan Pain Specialists, Brighton, Michigan |
| 5 6 | (1) CADDEN, (2) CHIN | 7/17/2012 8/14/2012 | 100 1 ml vials of 06292012@26 120 1 ml vials of 06292012@26 | Specialty Surgery Center, Crossville, Tennessee |
| 7 8 9 10 | (1) CADDEN, (2) CHIN | 6/27/2012 7/25/2012 8/13/2012 9/4/2012 | 500 1 ml vials of 05212012@68 500 1 ml vials of 06292012@26 500 1 ml vials of 06292012@26 500 1 ml vials of 08102012@51 | St. Thomas Outpatient Neurological Center, Nashville, Tennessee |
| 11 12 13 14 15 | (1) CADDEN, (2) CHIN | 6/25/2012 7/16/2012 8/2/2012 8/28/2012 9/17/2012 | 125 1 ml vials of 05212012@68 125 1 ml vials of 05212012@68 150 1 ml vials of 06292012@26 130 1 ml vials of 08102012@51 100 1 ml vials of 08102012@51 | OSMC Outpatient Surgery Center, Elkhart, Indiana |

| Count | Defendants | Date of Shipment | Description | Destination |
|---|---|---|---|---|
| 16<br>17 | (1) CADDEN,<br>(2) CHIN | 8/15/2012<br>9/25/2012 | 100 1 ml vials of 06292012@26<br>100 1 ml vials of 08102012@51 | South Bend Clinic, South Bend, Indiana |
| 18<br>19 | (1) CADDEN,<br>(2) CHIN | 7/5/2012<br>8/15/2012 | 150 1 ml vials of 05212012@68<br>150 1 ml vials of 06292012@26 | Marion Pain Management, Ocala, Florida |
| 20<br>21 | (1) CADDEN,<br>(2) CHIN | 8/13/2012<br>9/25/2012 | 85 5 ml vials of 06292012@26<br>300 1 ml vials of 08102012@51 | Box Hill Surgery Center, Abingdon, Maryland |
| 22<br>23<br>24<br>25 | (1) CADDEN,<br>(2) CHIN | 7/9/2012<br>7/26/2012<br>8/17/2012<br>9/7/2012 | 200 1 ml vials of 05212012@68<br>200 1 ml vials of 06292012@26<br>200 1 ml vials of 06292012@26<br>200 1 ml vials of 08102012@51 | Insight Imaging, Roanoke, Virginia |
| 26<br>27<br>28<br>29<br>30 | (1) CADDEN,<br>(2) CHIN | 6/25/2012<br>7/13/2012<br>8/7/2012<br>8/14/2012<br>9/20/2012 | 20 1 ml vials of 05212012@68<br>20 1 ml vials of 05212012@68<br>40 1 ml vials of 06292012@26<br>80 1 ml vials of 06292012@26<br>60 1 ml vials of 08102012@51 | High Point Surgery Center, High Point, North Carolina |
| 31 | (1) CADDEN,<br>(2) CHIN | 7/24/2012 | 150 bacitracin 20 ml syringes | Good Shepherd Hospital, Barrington, Illinois |
| 32 | (1) CADDEN,<br>(3) SVIRSKIY | 8/7/2012 | 18 polymyxin-bacitracin irrigation bags | Glens Falls Hospital, Glens Falls, New York |
| 33 | (1) CADDEN,<br>(4) LEARY | 8/27/2012 | 18 polymyxin-bacitracin irrigation bags | Glens Falls Hospital, Glens Falls, New York |
| 34 | (1) CADDEN,<br>(5) EVANOSKY | 8/28/2012 | 20 polymyxin-bacitracin irrigation bags | Winchester Hospital, Winchester, Virginia |
| 35 | (1) CADDEN,<br>(5) EVANOSKY | 8/30/2012 | 20 polymyxin-bacitracin irrigation bags | Winchester Hospital, Winchester, Virginia |
| 36 | (1) CADDEN,<br>(2) CHIN | 9/11/2012 | 100 potassium chloride injectables | Port Huron Hospital, Port Huron, Michigan |

| Count | Defendants | Date of Shipment | Description | Destination |
|---|---|---|---|---|
| 37 | (1) CADDEN, (5) EVANOSKY | 9/24/2012 | 50 cardioplegia solution (low-K) | Brigham and Women's Hospital, Boston, Massachusetts |
| 38 | (1) CADDEN, (2) CHIN | 9/27/2012 | 60 potassium chloride bags | Sentara Norfolk General Hospital, Norfolk, Virginia |
| 39 | (1) CADDEN, (4) LEARY | 2/23/2012 | 300 lidocaine-bupivacaine-hyaluronidase injections | Massachusetts Eye and Ear Institute Boston, Massachusetts |
| 40 | (1) CADDEN, (4) LEARY | 8/21/2012 | 50 55 ml pericapsular injections | Oakleaf Surgical Hospital, Eau Claire, Wisconsin |
| 41 | (1) CADDEN, (4) LEARY, (5) EVANOSKY | 9/17/2012 | 15 clindamycin-gentamicin-polymyxin bags | Florida Hospital Waterman, Tavares, Florida |
| 42 | (1) CADDEN, (3) SVIRSKIY | 7/7/2011 | 6 25 mg/ml methotrexate injectables | USC University Hospital, Los Angeles, California |
| 43 | (1) CADDEN, (4) LEARY | 7/8/2011 | 8 4 mg/ml methotrexate injectables | Augusta Eye Associates, Fisherville, Virginia |
| 44 | (1) CADDEN, (2) CHIN | 10/31/2011 | 6 25 mg/ml methotrexate injectables | Southboro Medical Group, Southboro, Massachusetts |
| 45 | (1) CADDEN, (2) CHIN | 2/15/2012 | 25 25 mg/ml methotrexate injectables | Decatur Memorial Hospital, Decatur, Illinois |
| 46 | (1) CADDEN, (2) CHIN, (4) LEARY | 6/8/2012 | 10 4 mg/ml methotrexate injectables | Retina Group of Washington, Chevy Chase, Maryland |

| Count | Defendants | Date of Shipment | Description | Destination |
|-------|-----------|-----------------|-------------|-------------|
| 47 | (1) CADDEN, (2) CHIN, (3) SVIRSKIY, (6) CONNOLLY | 3/25/2010 | 7 cardioplegia solution bags | Lewis-Gale Medical Center, Salem, Virginia |
| 48 | (1) CADDEN, (2) CHIN, (3) SVIRSKIY, (6) CONNOLLY | 10/21/2010 | 10 cardioplegia (cold induction high K) bags | Osceola Regional Medical Center, Kissimmee, Florida |
| 49 | (1) CADDEN, (2) CHIN, (3) SVIRSKIY, (6) CONNOLLY | 12/21/2010 | 10 cardioplegia solution bags | Baptist Medical Center, Jacksonville, Florida |
| 50 | (1) CADDEN, (2) CHIN, (3) SVIRSKIY, (6) CONNOLLY | 3/30/2011 | 8 cardioplegia solution bags | North Shore Medical Center, Salem, Massachusetts |
| 51 | (1) CADDEN, (2) CHIN, (3) SVIRSKIY, (6) CONNOLLY | 6/29/2011 | 20 cardioplegia (high K) solution bags | Sunrise Medical Center, Las Vegas, Nevada |
| 52 | (1) CADDEN, (2) CHIN, (3) SVIRSKIY, (6) CONNOLLY | 11/15/2011 | 10 cardioplegia (induction formula) bags | St. Vincent's Hospital, Birmingham, Alabama |
| 53 | (1) CADDEN, (2) CHIN, (3) SVIRSKIY, (6) CONNOLLY | 2/22/2012 | 20 cardioplegia (high K) solution bags | Sunrise Medical Center, Las Vegas, Nevada |
| 54 | (1) CADDEN, (2) CHIN, (3) SVIRSKIY, (6) CONNOLLY | 6/4/2012 | 30 cardioplegia (cold induction) bags | St. Peter's Hospital, Albany, New York |

| Count | Defendants | Date of Shipment | Description | Destination |
|-------|-----------|------------------|-------------|-------------|
| 55 | (1) CADDEN, (2) CHIN, (3) SVIRSKIY, (6) CONNOLLY | 7/12/2012 | 25 cardioplegia solution bags | West Virginia University, Morgantown, West Virginia |
| 56 | (1) CADDEN, (2) CHIN, (3) SVIRSKIY, (6) CONNOLLY | 8/8/2012 | 20 cardioplegia (high K) solution bags | Sunrise Medical Center, Las Vegas, Nevada |

All in violation of Title 18, United States Code, Section 1341.

**COUNTS 57 – 90**
**(21 U.S.C. §§ 351(a)(2)(A), 331(a), and 333(a)(2) –**
**Introduction of Adulterated Drugs into Interstate Commerce**
**with Intent to Defraud and Mislead – Insanitary Conditions)**

**[DEFENDANTS (1) CADDEN, (2) CHIN, (3) SVIRSKIY, (4) LEARY, (5) EVANOSKY]**

114.   The allegations contained in paragraphs 1 through 7, 17 through 32, and 37 are re-alleged and incorporated herein by reference.

115.   From in or around May 2012 through in or around October 2012, within the District of Massachusetts and elsewhere, the defendants listed below, with the intent to defraud and mislead, caused to be introduced and delivered for introduction into interstate commerce the drugs set forth below contrary to the provisions of Title 21, United States Code, Section 351(a)(2)(A), in that the defendants listed below prepared, packed, and held the drugs under insanitary conditions whereby they may have been contaminated with filth and whereby they may have been rendered injurious to health, and the act resulted in the drugs being adulterated, each such instance being a separate count in the Indictment:

| Count | Defendants | Date of Shipment | Description | Destination |
|---|---|---|---|---|
| 57 | (1) CADDEN, (2) CHIN | 8/8/2012 | 400 5 ml vials of 06292012@26 | Michigan Pain Specialists, Brighton, Michigan |
| 58 59 | (1) CADDEN, (2) CHIN | 7/17/2012 8/14/2012 | 100 1 ml vials of 06292012@26 120 1 ml vials of 06292012@26 | Specialty Surgery Center, Crossville, Tennessee |
| 60 61 62 63 | (1) CADDEN, (2) CHIN | 6/27/2012 7/25/2012 8/13/2012 9/4/2012 | 500 1 ml vials of 05212012@68 500 1 ml vials of 06292012@26 500 1 ml vials of 06292012@26 500 1 ml vials of 08102012@51 | St. Thomas Outpatient Neurological Center, Nashville, Tennessee |
| 64 65 66 67 68 | (1) CADDEN, (2) CHIN | 6/25/2012 7/16/2012 8/2/2012 8/28/2012 9/17/2012 | 125 1 ml vials of 05212012@68 125 1 ml vials of 05212012@68 150 1 ml vials of 06292012@26 130 1 ml vials of 08102012@51 100 1 ml vials of 08102012@51 | OSMC Outpatient Surgery Center, Elkhart, Indiana |
| 69 70 | (1) CADDEN, (2) CHIN | 8/15/2012 9/25/2012 | 100 1 ml vials of 06292012@26 100 1 ml vials of 08102012@51 | South Bend Clinic, South Bend, Indiana |
| 71 72 | (1) CADDEN, (2) CHIN | 7/5/2012 8/15/2012 | 150 1 ml vials of 05212012@68 150 1 ml vials of 06292012@26 | Marion Pain Management, Ocala, Florida |
| 73 74 | (1) CADDEN, (2) CHIN | 8/13/2012 9/25/2012 | 85 5 ml vials of 06292012@26 300 1 ml vials of 08102012@51 | Box Hill Surgery Center, Abingdon, Maryland |
| 75 76 77 78 | (1) CADDEN, (2) CHIN | 7/9/2012 7/26/2012 8/17/2012 9/7/2012 | 200 1 ml vials of 05212012@68 200 1 ml vials of 06292012@26 200 1 ml vials of 06292012@26 200 1 ml vials of 08102012@51 | Insight Imaging, Roanoke, Virginia |
| 79 80 81 82 83 | (1) CADDEN, (2) CHIN | 6/25/2012 7/13/2012 8/7/2012 8/14/2012 9/20/2012 | 20 1 ml vials of 05212012@68 20 1 ml vials of 05212012@68 40 1 ml vials of 06292012@26 80 1 ml vials of 06292012@26 60 1 ml vials of 08102012@51 | High Point Surgery Center, High Point, North Carolina |
| 84 | (1) CADDEN, (2) CHIN | 7/24/2012 | 150 bacitracin 20 ml syringes | Good Shepherd Hospital, Barrington, Illinois |
| 85 | (1) CADDEN, (3) SVIRSKIY | 8/7/2012 | 18 polymyxin-bacitracin irrigation bags | Glens Falls Hospital, Glens Falls, New York |

| Count | Defendants | Date of Shipment | Description | Destination |
|-------|-----------|------------------|-------------|-------------|
| 86 | (1) CADDEN, (4) LEARY | 8/27/2012 | 18 polymyxin-bacitracin irrigation bags | Glens Falls Hospital, Glens Falls, New York |
| 87 | (1) CADDEN, (5) EVANOSKY | 8/28/2012 | 20 polymyxin-bacitracin irrigation bags | Winchester Hospital, Winchester, Virginia |
| 88 | (1) CADDEN, (5) EVANOSKY | 8/30/2012 | 20 polymyxin-bacitracin irrigation bags | Winchester Hospital, Winchester, Virginia |
| 89 | (1) CADDEN, (2) CHIN | 9/11/2012 | 100 potassium chloride injectables | Port Huron Hospital, Port Huron, Michigan |
| 90 | (1) CADDEN, (2) CHIN | 9/27/2012 | 60 potassium chloride bags | Sentara Norfolk General Hospital, Norfolk, Virginia |

All in violation of Title 21, United States Code, Sections 351(a)(2)(A), 331(a), and

333(a)(2), and Title 18, United States Code, Section 2.

## COUNTS 91 – 94
### (21 U.S.C. §§ 352(a), 331(a), and 333(a)(2) –
### Introduction of Misbranded Drugs into Interstate Commerce
### with the Intent to Defraud and Mislead – False and Misleading Labeling)

### [DEFENDANTS (1) CADDEN, (2) CHIN, (3) SVIRSKIY, (4) LEARY]

116.   The allegations contained in paragraphs 1 through 6, 17 through 32, and 36 are

re-alleged and incorporated herein by reference.

117.   From in or around July 2011 through in or around June 2012, within the District of

Massachusetts and elsewhere, the defendants listed below, with the intent to defraud and mislead,

caused to be introduced and delivered for introduction into interstate commerce the drugs set forth

below whose labeling was false and misleading in any particular, contrary to the provisions of

Title 21, United States Code, Section 352(a), each such instance being a separate count in the

Indictment:

| Count | Defendants | Date of Shipment | Description | Destination |
|-------|-----------|------------------|-------------|-------------|
| 91 | (1) CADDEN, (3) SVIRSKIY | 7/7/2011 | 6 25 mg/ml methotrexate injectables | USC University Hospital, Los Angeles, California |
| 92 | (1) CADDEN, (4) LEARY | 7/8/2011 | 8 4 mg/ml methotrexate injectables | Augusta Eye Associates, Fisherville, Virginia |
| 93 | (1) CADDEN, (2) CHIN | 2/15/2012 | 25 25 mg/ml methotrexate injectables | Decatur Memorial Hospital, Decatur, Illinois |
| 94 | (1) CADDEN, (2) CHIN, (4) LEARY | 6/8/2012 | 10 4 mg/ml methotrexate injectables | Retina Group of Washington, Chevy Chase, Maryland |

All in violation of Title 21, United States Code, Sections 352(a), 331(a), and 333(a)(2), and

Title 18, United States Code, Section 2.

## COUNTS 95 – 109
### (21 U.S.C. §§ 353(b)(1), 331(a), and 333(a)(2) – Introduction of Misbranded Drugs into Interstate Commerce with the Intent to Defraud and Mislead – No Prescriptions)

**[DEFENDANTS (1) CADDEN, (8) STEPANETS, (11) KATHY CHIN, (12) THOMAS]**

118.   The allegations contained in paragraphs 1 through 3, 10, and 13 through 14 are re-alleged and incorporated herein by reference.

119.   From in or around December 2009 through in or around March 2012, within the District of Massachusetts and elsewhere, the defendants listed below, along with others known and unknown to the Grand Jury, with the intent to defraud and mislead, caused to be dispensed the drugs set forth below contrary to the provisions of Title 21, United States Code, Section 353(b)(1), in that the defendants listed below caused the drugs to be introduced and delivered into interstate commerce without the valid prescription of a practitioner licensed by law to administer the drugs,

and the act resulted in the drugs being misbranded, each such instance being a separate count in the Indictment:

| Count | Defendant(s) | Date of Shipment | Location | Description | Fake Patient Names Listed on NECC Prescriptions |
|-------|--------------|------------------|----------|-------------|-------------------------------------------------|
| 95 | (1) CADDEN | 12/21/2009 | Lincoln, Nebraska | 60 vials of betamethasone repository | Michael Baldwin, Alex Baldwin, Steven Baldwin, Billy Baldwin, Diana Ross, Michael Jackson, Daily Niner, Chris Rock |
| 96 | (8) STEPANETS | 2/18/2010 | Lincoln, Nebraska | 60 vials of betamethasone repository | Fast Man, Wonder Woman, Fat Albert, Wayne Newton, Cyndi Lopler, John Candie, Pewe Herman, Josh Grovan, Nelly Fertado |
| 97 | (8) STEPANETS | 4/22/2010 | Lincoln, Nebraska | 60 vials of betamethasone repository | Robert Redford, William Dafoo, Lucy Lue, Freddy Mercury, Martha Stewart |
| 98 | (8) STEPANETS | 6/11/2010 | Lincoln, Nebraska | 60 vials of betamethasone repository | John Pfizer, Gerry Schlitz, Pat Blue, Bud Weiser, Richard Coors, Michael Keystone, Adam Foster, Samuel Adams, John Killian, Raymond Rollingrock |
| 99 | (1) CADDEN | 8/26/2010 | San Marcos, Texas | 8 vials of 10 ml triamcinolone | Hugh Jass |
| 100 | (1) CADDEN | 9/14/2010 | San Marcos, Texas | 10 vials of dexamethasone, 5 vials of 10 ml methylprednisolone acetate | Freddie Mae, Fannie Mac |

| Count | Defendant(s) | Date of Shipment | Location | Description | Fake Patient Names Listed on NECC Prescriptions |
|---|---|---|---|---|---|
| 101 | (8) STEPANETS | 11/16/2010 | Lincoln, Nebraska | 60 vials of betamethasone repository | Fast Phil, Parma Reigns, Hindsight Man, Peggy Octavius, John No, Silver Surfer, Ned Flanders, Ted Nuget, Bob Barker, Burt Reynolds |
| 102 | (8) STEPANETS | 12/30/2010 | San Marcos, Texas | 10 vials of betamethasone repository, 10 vials of methylprednisolone acetate, 10 vials of triamcinolone | Betty Ford, Jimmy Carter, Bill Clinton |
| 103 | (8) STEPANETS | 5/3/2011 | San Marcos, Texas | 20 vials of betamethasone repository, 5 vials of methylprednisolone acetate, 5 vials of triamcinolone | Donald Trump, Calvin Klein, Jennifer Lopez |
| 104 | (11) KATHY CHIN | 8/2/2011 | Lincoln, Nebraska | 60 vials of betamethasone repository | John Stewart, Craig Killborne, David Letterman, Jay Leno, Jimmy Kimmel, Al Bundie, Johnny Knoxville, Dick Van Dike |
| 105 | (11) KATHY CHIN | 8/29/2011 | Jonesboro, Georgia | 20 vials of triamcinolone, 60 combo #4 eye drops | Mike Myers, Bella Swan, William Tweedy, Stefan Salvatore, Sookie Stackhouse, Ruby Falls |
| 106 | (11) KATHY CHIN | 2/7/2012 | Lincoln, Nebraska | 60 vials of betamethasone repository | Dale Earnhardt, Johnny Johnson, Jerry Jone, Jimmy Stewart, Mark McGrath, Bobby Lebonny, Tom Brokohy, Chris Rock |

| Count | Defendant(s) | Date of Shipment | Location | Description | Fake Patient Names Listed on NECC Prescriptions |
|-------|-------------|------------------|----------|-------------|-------------------------------------------------|
| 107 | (11) KATHY CHIN | 3/8/2012 | Lincoln, Nebraska | 60 vials of betamethasone repository | Flash Gordon, Long John, Tony Tiger, Chester Cheeto, Stuart Little, John Strong, Bill Ransic, Tom Landry |
| 108 | (8) STEPANETS, (12) THOMAS | 3/20/2012 | Elkhart, Indiana | 12 vials of betamethasone repository | L.L. Bean, Filet O'fish, Rug Doctor, Squeaky Wheel, Dingo Boney, Coco Puff, Harry Potter |
| 109 | (12) THOMAS | 4/9/2012 | Lincoln, Nebraska | 60 vials of betamethasone repository | Mary Lamb, Ginger Rogers, Mike Marker, Carrol Sharpie |

All in violation of Title 21, United States Code, Sections 353(b)(1), 331(a), and 333(a)(2), and Title 18, United States Code, Section 2.

## COUNTS 110 – 127
### (18 U.S.C. § 401(3) – Criminal Contempt)

## [DEFENDANTS (13) CARLA CONIGLIARO, (14) DOUG CONIGLIARO]

120.    The allegations contained in paragraphs 15 through 16 are re-alleged and incorporated herein by reference.

121.    From in or around February 2013 through in or around March 2013, within the District of Massachusetts and elsewhere, defendants (13) **CARLA CONIGLIARO**, the majority shareholder of NECC, and (14) **DOUG CONIGLIARO**, did willfully and knowingly disobey and resist lawful orders of a Court of the United States, that is, the temporary restraining order (Document 22) and preliminary injunctive relief order (Document 51) issued by the Honorable Henry J. Boroff on January 28, 2013, and February 12, 2013, respectively, in the United States Bankruptcy Court for the District of Massachusetts in the case, In re: New England Compounding Pharmacy, Inc., Case Nos. 12-19882-HJB, 13-01040-HJB (adversary action), by transferring

approximately $33.3 million of assets of defendant (13) **CARLA CONIGLIARO** as listed below,

each such transfer being a separate count in the Indictment:

| Count | Date/Type of Transaction | Amount | Originating Account/ Account Number | Receiving Account/ Account Number | Receiving Account Opening Date |
|-------|--------------------------|--------|--------------------------------------|------------------------------------|-------------------------------|
| 110 | 2/1/2013 Wire Transfer | $3,300,000 | Merrill Lynch New York, New York No. ***-*0872 | USAA Financial Advisors San Antonio, Texas No. ****5428 | 1/31/2013 |
| 111 | 2/4/2013 Wire Transfer | $7,000,000 | Merrill Lynch New York, New York No. ***-*0872 | USAA Financial Advisors San Antonio, Texas No. ****5428 | 1/31/2013 |
| 112 | 2/4/2013 Wire Transfer | $6,500,000 | Merrill Lynch New York, New York No. ***-*0872 | SunTrust Bank Atlanta, Georgia No. *********2822 | 12/31/2012 |
| 113 | 2/5/2013 Check | $500,000 | SunTrust Bank Atlanta, Georgia No. *********2822 | Florida Bank of Commerce Orlando, Florida No. ***6704 | 2/5/2013 |
| 114 | 2/5/2013 Check | $500,000 | SunTrust Bank Atlanta, Georgia No. *********2822 | BankFirst Winter Park, Florida No. ****0369 | 2/5/2013 |
| 115 | 2/5/2013 Check | $500,000 | SunTrust Bank Atlanta, Georgia No. *********2822 | PNC Bank Pittsburgh, Pennsylvania No. **-****-6896 | 2/5/2013 |
| 116 | 2/5/2013 Check | $500,000 | SunTrust Bank Atlanta, Georgia No. *********2822 | CNL Bank Orlando, Florida No. ***0113 | 2/5/2013 |
| 117 | 2/5/2013 Check | $500,000 | SunTrust Bank Atlanta, Georgia No. *********2822 | Regions Bank Birmingham, Alabama No. ****6303 | 2/5/2013 |
| 118 | 2/21/2013 Check | $250,000 | SunTrust Bank Atlanta, Georgia No. *********2822 | Susquehanna Bank Lititz, Pennsylvania No. *******9388 | 2/21/2013 |
| 119 | 2/21/2013 Check | $250,000 | SunTrust Bank Atlanta, Georgia No. *********2822 | Susquehanna Bank Lititz, Pennsylvania No. *******9388 | 2/21/2013 |

| Count | Date/Type of Transaction | Amount | Originating Account/ Account Number | Receiving Account/ Account Number | Receiving Account Opening Date |
|-------|--------------------------|--------|--------------------------------------|------------------------------------|-------------------------------|
| 120 | 3/18/2013 Check | $3,000,000 | Merrill Lynch New York, New York No. ***-*0872 | Seacoast National Bank Vero Beach, Florida No. ******8506 | 3/18/2013 |
| 121 | 3/18/2013 Wire | $1,000,000 | SunTrust Bank Atlanta, Georgia No. *********2822 | Florida Bank of Commerce Orlando, Florida No. ***6704 | 2/5/2013 |
| 122 | 3/18/2013 Wire | $1,000,000 | SunTrust Bank Atlanta, Georgia No. *********2822 | BankFirst Winter Park, Florida No. *****0369 | 2/5/2013 |
| 123 | 3/18/2013 Wire | $1,000,000 | SunTrust Bank Atlanta, Georgia No. *********2822 | PNC Bank Pittsburgh, Pennsylvania No. **-****-6896 | 2/5/2013 |
| 124 | 3/18/2013 Wire | $1,000,000 | SunTrust Bank Atlanta, Georgia No. *********2822 | CNL Bank Orlando, Florida No. ***0113 | 2/5/2013 |
| 125 | 3/18/2013 Wire | $1,000,000 | SunTrust Bank Atlanta, Georgia No. *********2822 | Regions Bank Birmingham, Alabama No. *****6303 | 2/5/2013 |
| 126 | 3/18/2013 Wire | $500,000 | SunTrust Bank Atlanta, Georgia No. *********2822 | Susquehanna Bank Lititz, Pennsylvania No. *******9370 | 2/21/2013 |
| 127 | 3/19/2013 Wire | $5,000,000 | USAA Financial Advisors San Antonio, Texas No. ****5428 | SunTrust Bank Atlanta, Georgia No. *********2822 | 12/31/2012 |

All in violation of Title 18, United States Code, Sections 401(3) and 2.

## COUNT 128
### (18 U.S.C. § 371 – Conspiracy to Commit Structuring)

### [DEFENDANTS (13) CARLA CONIGLIARO, (14) DOUG CONIGLIARO]

122.   The allegations contained in paragraphs 15 through 16 are re-alleged and incorporated herein by reference.

123.   From in or around September 2010 through in or around March 2014, within the District of Massachusetts and elsewhere, defendants (13) **CARLA CONIGLIARO** and (14) **DOUG CONIGLIARO**, knowingly, willfully, and for the purposes of evading the reporting requirements of Section 5313(a) of Title 31, United States Code, and the regulations promulgated thereunder, conspired and agreed together and with each other, and with other persons unknown to the Grand Jury, to structure and assist in structuring transactions with domestic financial institutions, that is, Middlesex Savings Bank, SunTrust Bank, and TD Bank respectively, and to cause and attempt to cause such institutions to fail to file Currency Transaction Reports required by Section 5313 for currency transactions in excess of $10,000.

### Manner and Means of the Conspiracy

124.   It was part of the conspiracy that defendants (13) **CARLA CONIGLIARO** and (14) **DOUG CONIGLIARO** obtained sums of cash in excess of $10,000 from bank accounts held at Middlesex Savings Bank, SunTrust Bank, and TD Bank, through ATM and counter withdrawals structured in a manner to prevent the domestic financial institutions from filing Currency Transaction Reports.

### Overt Acts

125.   In furtherance of the conspiracy and to effect the objects of the conspiracy, defendants (13) **CARLA CONIGLIARO** and (14) **DOUG CONIGLIARO** committed the following overt acts, among others, in the District of Massachusetts and elsewhere:

126.   Between on or about September 27, 2010, and January 25, 2013, defendants (13) **CARLA CONIGLIARO** and (14) **DOUG CONIGLIARO** did, as a pattern of illegal activity, make approximately 504 structured cash withdrawals, totaling approximately $389,680.26, from a

joint checking account at Middlesex Savings Bank with an account number ending in "6521," for the purpose of causing Middlesex Savings Bank to fail to file Currency Transaction Reports.

127.   Between on or about February 4, 2013, and December 4, 2013, defendants (13) **CARLA CONIGLIARO** and (14) **DOUG CONIGLIARO** did, as a pattern of illegal activity, make approximately 148 structured cash withdrawals, totaling approximately $111,103.50, from a joint checking account at SunTrust Bank with an account number ending in "7568," for the purpose of causing SunTrust Bank to fail to file Currency Transaction Reports.

128.   Between on or about February 13, 2013, and March 13, 2014, a period of 393 days, defendants (13) **CARLA CONIGLIARO** and (14) **DOUG CONIGLIARO** did, as a pattern of illegal activity, make approximately 124 structured cash withdrawals, totaling approximately $71,558.25, from a joint checking account at TD Bank with an account number ending in "0263," for the purpose of causing TD Bank to fail to file Currency Transaction Reports.

All in violation of Title 18, United States Code, Section 371.

### COUNT 129
### (31 U.S.C. § 5324(a) – Structuring)

**[DEFENDANTS (13) CARLA CONIGLIARO, (14) DOUG CONIGLIARO]**

129.   The allegations contained in paragraphs 15 through 16 are re-alleged and incorporated herein by reference.

130.   From in or around September 2010 through in or around January 2013, within the District of Massachusetts and elsewhere, defendants (13) **CARLA CONIGLIARO** and (14) **DOUG CONIGLIARO** did, as part of a pattern of illegal activity involving more than $100,000 in a 12-month period, knowingly and for the purpose of evading the reporting requirements of Section 5313(a) of Title 31, United States Code, and the regulations promulgated thereunder,

structure and assist in structuring transactions with a domestic financial institution, that is, Middlesex Savings Bank, and cause and attempt to cause such institution to fail to file Currency Transaction Reports required by Section 5313 for currency transactions in excess of $10,000.

131.   Specifically, between on or about September 27, 2010, and January 25, 2013, a period of 851 days, defendants (13) **CARLA CONIGLIARO** and (14) **DOUG CONIGLIARO** did, as a pattern of illegal activity, make approximately 504 structured cash withdrawals, totaling approximately $389,680.26, from a joint checking account at Middlesex Savings Bank with an account number ending in "6521," for the purpose of causing Middlesex Savings Bank to fail to file Currency Transaction Reports.

All in violation of Title 31, United States Code, Sections 5324(a) and the regulations promulgated thereunder, and Title 18, United States Code, Section 2.

**COUNT 130**
**(31 U.S.C. § 5324(a) – Structuring)**

**[DEFENDANTS (13) CARLA CONIGLIARO, (14) DOUG CONIGLIARO]**

132.   The allegations contained in paragraphs 15 through 16 are re-alleged and incorporated herein by reference.

133.   From in or around February 2013 through in or around December 2013, within the District of Massachusetts and elsewhere, defendants (13) **CARLA CONIGLIARO** and (14) **DOUG CONIGLIARO**, did, as part of a pattern of illegal activity involving more than $100,000 in a 12-month period, knowingly and for the purpose of evading the reporting requirements of Section 5313(a) of Title 31, United States Code, and the regulations promulgated thereunder, structure and assist in structuring transactions with a domestic financial institution, that is,

SunTrust Bank, and cause and attempt to cause such institution to fail to file Currency Transaction Reports required by Section 5313 for currency transactions in excess of $10,000.

134.   Specifically, between on or about February 4, 2013, and December 4, 2013, a period of 303 days, defendants (13) **CARLA CONIGLIARO** and (14) **DOUG CONIGLIARO** did, as a pattern of illegal activity, make approximately 148 structured cash withdrawals, totaling approximately $111,103.50, from a joint checking account at SunTrust Bank with an account number ending in "7568," for the purpose of causing SunTrust Bank to fail to file Currency Transaction Reports.

All in violation of Title 31, United States Code, Sections 5324(a) and the regulations promulgated thereunder, and Title 18, United States Code, Section 2.

## COUNT 131
### (31 U.S.C. § 5324(a) – Structuring)

## [DEFENDANTS (13) CARLA CONIGLIARO, (14) DOUG CONIGLIARO]

135.   The allegations contained in paragraphs 15 through 16 are re-alleged and incorporated herein by reference.

136.   From in or around February 2013 through in or around March 2014, within the District of Massachusetts and elsewhere, defendants (13) **CARLA CONIGLIARO** and (14) **DOUG CONIGLIARO**, did knowingly and for the purpose of evading the reporting requirements of Section 5313(a) of Title 31, United States Code, and the regulations promulgated thereunder, structure and assist in structuring transactions with a domestic financial institution, that is, TD Bank, and cause and attempt to cause such institution to fail to file Currency Transaction Reports required by Section 5313 for currency transactions in excess of $10,000.

137.   Specifically, between on or about February 13, 2013, and March 13, 2014, a period of 393 days, defendants (13) **CARLA CONIGLIARO** and (14) **DOUG CONIGLIARO** did, as a pattern of illegal activity, make approximately 124 structured cash withdrawals, totaling approximately $71,558.25, from a joint checking account at TD Bank with an account number ending in "0263," for the purpose of causing TD Bank to fail to file Currency Transaction Reports.

All in violation of Title 31, United States Code, Sections 5324(a) and the regulations promulgated thereunder, and Title 18, United States Code, Section 2.

## RACKETEERING FORFEITURE ALLEGATIONS

The Grand Jury further charges that:

138.   Upon conviction of any violation of Title 18, United States Code, Section 1962 as alleged in Counts 1 and 2 of this Indictment, defendants (1) **CADDEN**, (2) **CHIN**, (3) **SVIRSKIY**, (4) **LEARY**, (5) **EVANOSKY**, (6) **CONNOLLY**, (7) **CARTER**, and (8) **STEPANETS** shall forfeit to the United States, jointly and severally, pursuant to Title 18, United States Code, Section 1963:

    a.   any interest acquired or maintained in violation of Title 18, United States Code, Section 1962;

    b.   any interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over, any enterprise established, operated, controlled, conducted, or participated in the conduct of, in violation of Title 18, United States Code, Section 1962; and

    c.   any property constituting, or derived from, any proceeds obtained, directly or indirectly, from racketeering activity or unlawful debt collection in violation of Title 18, United States Code, Section 1962.

The property to be forfeited includes, but is not limited to:

    a.   any and all salaries, bonuses, stock distributions, retirement contributions and accounts, health and life insurance benefits including premium payments, and any and all other benefits obtained through employment by and association with the entities named in the racketeering enterprise alleged in Counts 1 and 2 from 2006 through October 2012;

    b.   one BMW M3 purchased on or about April 26, 2011, from BMW of Sudbury;

    c.   one Sailfish Boat purchased on or about March 2, 2010, from Port Harbor Marine, Inc.;

    d.   any jewelry purchased on or about December 23, 2010, and on or about December 21, 2011, from DeScenza Diamonds;

    e.   any clock, timepiece, or other luxury good purchased on or about January 11, 2012, from Delaney Antique Clocks;

f.  the real property located at 13 Manchester Drive, Wrentham, Massachusetts, including all buildings, appurtenances and improvements thereon, more particularly described in a Quitclaim Deed recorded at Book 20971, Page 264 at the Norfolk County Registry of Deeds;

g.  the real property located at 15 Manchester Drive, Wrentham, Massachusetts, including all buildings, appurtenances and improvements thereon, more particularly described in a Quitclaim Deed recorded at Book 28437, Page 144 at the Norfolk County Registry of Deeds;

h.  the real property located at 17 Manchester Drive, Wrentham, Massachusetts, including all buildings, appurtenances and improvements thereon, more particularly described in a Quitclaim Deed recorded at Book 28437, Page 148 at the Norfolk County Registry of Deeds; and

i.  the real property located at 25 Newport Avenue, North Kingstown, Rhode Island, including all buildings, appurtenances and improvements thereon, more particularly described in a Warranty Deed recorded at Book 2437, Page 174 at the North Kingstown Office of the Town Clerk.

139.   If any of the property described above, as a result of any act or omission of the defendants:

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third party;

c.   has been placed beyond the jurisdiction of the court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property that cannot be divided without difficulty,

it is the intention of the United States, pursuant to Title 18, United States Code, Section 1963(m), to seek forfeiture of any other property of the defendants up to the value of the property described in paragraph 138.

All pursuant to Title 18, United States Code, Section 1963 and Rule 32.2(a) of the Federal Rules of Criminal Procedure.

## MAIL FRAUD FORFEITURE ALLEGATIONS

The Grand Jury further charges that:

140.   Upon conviction of any violation of Title 18, United States Code, Section 1341 as alleged in Counts 4 through 56 of this Indictment, defendants (1) **CADDEN**, (2) **CHIN**, (3) **SVIRSKIY**, (4) **LEARY**, (5) **EVANOSKY**, and (6) **CONNOLLY** shall forfeit to the United States, jointly and severally, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, that constitutes, or is derived from, proceeds traceable to the commission of the offenses.   The property to be forfeited includes, but is not limited to:

    a.   one BMW M3 purchased on or about April 26, 2011, from BMW of Sudbury;

    b.   one Sailfish Boat purchased on or about March 2, 2010, from Port Harbor Marine, Inc.;

    c.   any jewelry purchased on or about December 23, 2010, and on or about December 21, 2011, from DeScenza Diamonds;

    d.   any clock, timepiece, or other luxury good purchased on or about January 11, 2012, from Delaney Antique Clocks;

    e.   the real property located at 13 Manchester Drive, Wrentham, Massachusetts, including all buildings, appurtenances and improvements thereon, more particularly described in a Quitclaim Deed recorded at Book 20971, Page 264 at the Norfolk County Registry of Deeds;

    f.   the real property located at 15 Manchester Drive, Wrentham, Massachusetts, including all buildings, appurtenances and improvements thereon, more particularly described in a Quitclaim Deed recorded at Book 28437, Page 144 at the Norfolk County Registry of Deeds;

    g.   the real property located at 17 Manchester Drive, Wrentham, Massachusetts, including all buildings, appurtenances and improvements thereon, more particularly described in a Quitclaim Deed recorded at Book 28437, Page 148 at the Norfolk County Registry of Deeds; and

     h.   the real property located at 25 Newport Avenue, North Kingstown, Rhode Island, including all buildings, appurtenances and improvements thereon, more particularly described in a Warranty Deed recorded at Book 2437, Page 174 at the North Kingstown Office of the Town Clerk.

141.   If any of the property described above, as a result of any act or omission of the defendants:

     a.    cannot be located upon the exercise of due diligence;

     b.    has been transferred or sold to, or deposited with, a third party;

     c.    has been placed beyond the jurisdiction of the court;

     d.    has been substantially diminished in value; or

     e.    has been commingled with other property that cannot be divided without difficulty,

it is the intention of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendants up to the value of the property described in paragraph 140.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c), and Rule 32.2(a) of the Federal Rules of Criminal Procedure.

## FDCA FORFEITURE ALLEGATIONS

The Grand Jury further charges that:

142.   Upon conviction of any violation of Title 21, United States Code, Sections 351(a)(2)(A), 352(a), 353(b)(1), 331(a), and/or 333(a)(2) as alleged in Counts 57 through 109 of this Indictment, defendants (1) **CADDEN**, (2) **CHIN**, (3) **SVIRSKIY**, (4) **LEARY**, (5) **EVANOSKY**, (8) **STEPANETS**, (11) **KATHY CHIN**, and (12) **THOMAS** shall forfeit to the United States, jointly and severally, pursuant to Title 21, United States Code, Section 334 and Title

Page 70

28, United States Code, Section 2461(c), any quantities of drugs described in Counts 57 through 109 that were introduced into interstate commerce in violation of Title 21, United States Code, Sections 351(a)(2)(A), 352(a), 353(b)(1), 331(a), and/or 333(a)(2).

143.  If any of the property described above, as a result of any act or omission of the defendants:

a.  cannot be located upon the exercise of due diligence;

b.  has been transferred or sold to, or deposited with, a third party;

c.  has been placed beyond the jurisdiction of the court;

d.  has been substantially diminished in value; or

e.  has been commingled with other property that cannot be divided without difficulty,

it is the intention of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendants up to the value of the property described in paragraph 142.

All pursuant to Title 21, United States Code, Sections 334 and 853, Title 28, United States Code, Section 2461(c), and Rule 32.2(a) of the Federal Rules of Criminal Procedure.

## STRUCTURING FORFEITURE ALLEGATIONS

The Grand Jury further charges that:

144.  Upon conviction of any violation of Title 31, United States Code, Section 5324(a) as alleged in Counts 129 through 131 of this Indictment, defendants (13) **CARLA CONIGLIARO** and (14) **DOUG CONIGLIARO** shall forfeit to the United States, jointly and severally, pursuant to Title 31, United States Code, Section 5317, all property, real or personal, involved in the

offenses and any property traceable to such property, including but not limited to at least $578,324.61 in United States currency.

145.   If any of the property described above, as a result of any act or omission of the defendants:

        a.      cannot be located upon the exercise of due diligence;

        b.      has been transferred or sold to, or deposited with, a third party;

        c.      has been placed beyond the jurisdiction of the court;

        d.      has been substantially diminished in value; or

        e.      has been commingled with other property that cannot be divided without difficulty,

it is the intention of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 31, United States Code, Section 5317(c)(1)(C) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendants up to the value of the property described in paragraph 144.

All pursuant to Title 31, United States Code, Section 5317 and Title 28, United States Code, Section 2461 and Rule 32.2(a) of the Federal Rules of Criminal Procedure.

**A TRUE BILL**

_____
Foreperson of the Grand Jury

AMANDA P.M. STRACHAN
GEORGE P. VARGHESE
Assistant United States Attorneys

JOHN W.M. CLAUD
Trial Attorney
United States Department of Justice
Consumer Protection Branch


DISTRICT OF MASSACHUSETTS:   December 16, 2014

Returned into the District Court by the Grand Jurors and filed.


_____
Deputy Clerk

11:55
12/16/14


Page 73

JS 45 (5/97) - (Revised U.S.D.C. MA 3/25/2011)

| Criminal Case Cover Sheet | U.S. District Court - District of Massachusetts |
|---|---|

**Place of Offense:**          Category No. __I__          Investigating Agency   FDA/OCI; FBI; VA OIG; DCIS; USPIS

**City**   Framingham, MA          **Related Case Information:**   14CR10363

**County**   Middlesex

Superseding Ind./ Inf. _____          Case No. _____
Same Defendant   x          New Defendant   Boat
Magistrate Judge Case Number _____
Search Warrant Case Number   see attached sheet
R 20/R 40 from District of _____

**Defendant Information:**

**Defendant Name**   Glenn A. Chin          Juvenile:   ☐ Yes  ☑ No

Is this person an attorney and/or a member of any state/federal bar:   ☐ Yes  ☑ No

**Alias Name** _____

**Address**   (City & State)  173 Mechanic Street, Canton, Massachusetts

**Birth date (Yr only):** 1968  **SSN (last4#):** 6167  **Sex** M   Race: Asian   Nationality: USA

**Defense Counsel if known:**   Stephen Weymouth          Address  Weymouth Law

**Bar Number** _____          65a Atlantic Avenue
Boston, MA 02110

**U.S. Attorney Information:**

**AUSA**   Amanda P.M. Strachan & George P. Varghese          Bar Number if applicable _____

**Interpreter:**   ☐ Yes  ☑ No          List language and/or dialect: _____

**Victims:**   ☑ Yes  ☐ No  If yes, are there multiple crime victims under 18 USC§3771(d)(2)   ☑ Yes  ☐ No

**Matter to be SEALED:**   ☑ Yes   ☐ No

☑ Warrant Requested          ☐ Regular Process          ☐ In Custody

**Location Status:**

**Arrest Date**   09/04/2014

☐ Already in Federal Custody as of _____ in _____
☐ Already in State Custody at ───────── ☐ Serving Sentence   ☐ Awaiting Trial
☑ On Pretrial Release:   Ordered by:   Chief MJ Boal          on   September 4, 2014

**Charging Document:**   ☐ Complaint   ☐ Information   ☑ Indictment

**Total # of Counts:**   ☐ Petty ─────   ☐ Misdemeanor ─────   ☑ Felony   77

Continue on Page 2 for Entry of U.S.C. Citations

☑ **I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are accurately set forth above.**

Date:   December 16, 2014          Signature of AUSA: _____

JS 45  (5/97)  (Revised U.S.D.C. MA 12/7/05) Page 2 of 2 or Reverse

**District Court Case Number**   (To be filled in by deputy clerk): _____

**Name of Defendant**   Glenn A. Chin _____

## U.S.C. Citations

| | **Index Key/Code** | **Description of Offense Charged** | **Count Numbers** |
|---|---|---|---|
| Set 1 | 18 U.S.C. s. 1962(c) | Racketeering | 1 |
| Set 2 | 18 U.S.C. s. 1962(d) | Racketeering Conspiracy | 2 |
| Set 3 | 18 U.S.C. s. 1341 | Mail Fraud | 4-31, 36, 38, 44-56 |
| Set 4 | 21 U.S.C. s. 351(a)(2)(A), 331(a), and 333(a)(2) | Introduction of Adulterated Drugs into Interstate Commerce with Intent to Defraud and Mislead - Insanitary Conditions | 57-84, 89, 90 |
| Set 5 | 21 U.S.C. s. 352(a), 331(a), and 333(a)(2) | Introduction of Misbranded Drugs into Interstate Commerce with the Intent to Defraud and Mislead - False and Misleading Labeling | 93, 94 |
| Set 6 | 18 U.S.C. s. 2 | Aiding and Abetting | 57-84, 89, 90, 93, 94 |
| Set 7 | | | |
| Set 8 | | | |
| Set 9 | | | |
| Set 10 | | | |
| Set 11 | | | |
| Set 12 | | | |
| Set 13 | | | |
| Set 14 | | | |
| Set 15 | | | |

**ADDITIONAL INFORMATION:** _____

_____

_____

_____

USAMA *CRIM* - Criminal Case Cover Sheet.pdf   3/4/2013

**Search Warrant Case Number:**

12-MJ-6221-LTS
12-MJ-6251-LTS
13-MJ-7106-JCB

**District Court Case Number:**

14-cr-10260-MLW  (This is a related case.)

Case 1:14-cr-10363-RGS   Document 1-1   Filed 12/16/14   Page 4 of 42

৬JS 45  (5/97) - (Revised U.S.D.C. MA 3/25/2011)

| **Criminal Case Cover Sheet** | **U.S. District Court - District of Massachusetts** |
|---|---|

**Place of Offense:**   Category No. __J__   Investigating Agency  FDA/OCI; FBI; VA OIG; DCIS; *USPIS*

City   **Framingham, MA** _____   Related Case Information:   14 CR 10363-

County   **Middlesex** _____

| | |
|---|---|
| Superseding Ind./ Inf. _____ | Case No. _Beal_ |
| Same Defendant _____ | New Defendant _____ |
| Magistrate Judge Case Number _____ | |
| Search Warrant Case Number _see attached sheet_ | |
| R 20/R 40 from District of _____ | |

**Defendant Information:**

Defendant Name   _Gene Svirskiy_ _____   Juvenile:  ☐ Yes  ☑ No

Is this person an attorney and/or a member of any state/federal bar:  ☐ Yes  ☑ No

Alias Name _____

Address   (City & State)  123 Spyglass Hill Drive, #123, Ashland, Massachusetts

Birth date (Yr only): _1981_  SSN (last4#): _3604_  Sex _M_   Race: _Caucasian_   Nationality: _USA_

**Defense Counsel if known:**   Jeremy Sternberg   Address  Holland & Knight

**Bar Number** _____   10 St. James Avenue, 11th Floor
Boston, MA 02116

**U.S. Attorney Information:**

AUSA   _Amanda P.M. Strachan & George P. Varghese_   Bar Number if applicable _____

**Interpreter:**  ☐ Yes  ☑ No   List language and/or dialect: _____

**Victims:**  ☑ Yes  ☐ No  If yes, are there multiple crime victims under 18 USC§3771(d)(2)  ☑ Yes  ☐ No

**Matter to be SEALED:**  ☑ Yes  ☐ No

☑ Warrant Requested   ☐ Regular Process   ☐ In Custody

**Location Status:**

**Arrest Date** _____

☐ Already in Federal Custody as of _____ in _____ .
☐ Already in State Custody at _____  ☐ Serving Sentence   ☐ Awaiting Trial
☐ On Pretrial Release:  Ordered by: _____ on _____

**Charging Document:**  ☐ Complaint   ☐ Information   ☑ Indictment

**Total # of Counts:**  ☐ Petty ——  ☐ Misdemeanor ——  ☑ Felony  _16_

Continue on Page 2 for Entry of U.S.C. Citations

☑   I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are
accurately set forth above.

Date:   December 16, 2014   Signature of AUSA: _[signature]_

JS 45 (5/97) (Revised U.S.D.C. MA 12/7/05) Page 2 of 2 or Reverse

**District Court Case Number** (To be filled in by deputy clerk): _____

**Name of Defendant**   Gene Svirskiy _____

**U.S.C. Citations**

| | **Index Key/Code** | **Description of Offense Charged** | **Count Numbers** |
|---|---|---|---|
| Set 1 | 18 U.S.C. s. 1962(c) | Racketeering | 1 |
| Set 2 | 18 U.S.C. s. 1962(d) | Racketeering Conspiracy | 2 |
| Set 3 | 18 U.S.C. s. 1341 | Mail Fraud | 32, 42, 47-56 |
| Set 4 | 21 U.S.C. s. 351(a)(2)(A), 331(a), and 333(a)(2) | Introduction of Adultered Drugs into Interstate Commerce with Intent to Defraud and Mislead - Insanitary Conditions | 85 |
| Set 5 | 21 U.S.C. s. 352(a), 331(a), and 333(a)(2) | Introduction of Misbranded Drugs into Interstate Commerce with the Intent to Defraud and Mislead - False and Misleading Labeling | 91 |
| Set 6 | 18 U.S.C. s. 2 | Aiding and Abetting | 85, 91 |
| Set 7 | | | |
| Set 8 | | | |
| Set 9 | | | |
| Set 10 | | | |
| Set 11 | | | |
| Set 12 | | | |
| Set 13 | | | |
| Set 14 | | | |
| Set 15 | | | |

**ADDITIONAL INFORMATION:** _____

_____

_____

_____

USAMA *CRIM* - Criminal Case Cover Sheet.pdf  3/4/2013

**<u>Search Warrant Case Number</u>:**

12-MJ-6221-LTS
12-MJ-6251-LTS
13-MJ-7106-JCB

JS 45 (5/97) - (Revised U.S.D.C. MA 3/25/2011)

**Criminal Case Cover Sheet**                    **U.S. District Court - District of Massachusetts**

**Place of Offense:**          Category No.  __I__          **Investigating Agency**  FDA/OCI; FBI; VA OIG; DCIS ; USPSS

**City**   __Framingham, MA__          **Related Case Information:**  14CR10363 –

**County**   __Middlesex__          Superseding Ind./ Inf. _____   Case No. _____
Same Defendant _____   New Defendant _____
Magistrate Judge Case Number _____
Search Warrant Case Number   see attached sheet
R 20/R 40 from District of _____

**Defendant Information:**

Defendant Name   Christopher M. Leary          Juvenile:   ☐ Yes  ☑ No

Is this person an attorney and/or a member of any state/federal bar:   ☐ Yes  ☑ No

Alias Name   _____

Address   (City & State)  63 Camelot Drive, Shrewsbury, Massachusetts

Birth date (Yr only): 1984   SSN (last4#): 2665   Sex M   Race: Caucasian   Nationality: USA

**Defense Counsel if known:**   Peter Ball          Address  Sally & Fitch LLP

**Bar Number**   _____          1 Beacon Street
Boston, MA 02108

**U.S. Attorney Information:**

**AUSA**   Amanda P.M. Strachan & George P. Varghese          Bar Number if applicable   _____

**Interpreter:**   ☐ Yes  ☑ No          List language and/or dialect:   _____

**Victims:**   ☑ Yes  ☐ No   If yes, are there multiple crime victims under 18 USC§3771(d)(2)   ☑ Yes  ☐ No

**Matter to be SEALED:**   ☑ Yes  ☐ No

☑ Warrant Requested          ☐ Regular Process          ☐ In Custody

**Location Status:**

**Arrest Date**   _____

☐ Already in Federal Custody as of _____ in _____
☐ Already in State Custody at _____ ☐ Serving Sentence   ☐ Awaiting Trial
☐ On Pretrial Release:   Ordered by: _____ on _____

**Charging Document:**   ☐ Complaint   ☐ Information   ☑ Indictment

**Total # of Counts:**   ☐ Petty _____   ☐ Misdemeanor _____   ☑ Felony   11

Continue on Page 2 for Entry of U.S.C. Citations

☑   I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are
accurately set forth above.

Date:   December 16, 2014          Signature of AUSA: _____

JS 45  (5/97)  (Revised U.S.D.C. MA 12/7/05) Page 2 of 2 or Reverse

**District Court Case Number**  (To be filled in by deputy clerk): _____

**Name of Defendant**     Christopher M. Leary _____

## U.S.C. Citations

| | **Index Key/Code** | **Description of Offense Charged** | **Count Numbers** |
|---|---|---|---|
| Set 1 | 18 U.S.C. s. 1962(c) | Racketeering | 1 |
| Set 2 | 18 U.S.C. s. 1962(d) | Racketeering Conspiracy | 2 |
| Set 3 | 18 U.S.C. s. 1341 | Mail Fraud | 33, 39-41, 43, 46 |
| Set 4 | 21 U.S.C. s. 351(a)(2)(A), 331(a), and 333(a)(2) | Introduction of Adulterated Drugs into Interstate Commerce with Intent to Defraud and Mislead - Insanitary Conditions | 86 |
| Set 5 | 21 U.S.C. s. 352(a), 331(a), and 333(a)(2) | Introduction of Misbranded Drugs into Interstate Commerce with intent to Defraud and Mislead - False and Misleading Labeling | 92, 94 |
| Set 6 | 18 U.S.C. s. 2 | Aiding and Abetting | 86, 92, 94 |
| Set 7 | | | |
| Set 8 | | | |
| Set 9 | | | |
| Set 10 | | | |
| Set 11 | | | |
| Set 12 | | | |
| Set 13 | | | |
| Set 14 | | | |
| Set 15 | | | |

**ADDITIONAL INFORMATION:** _____

USAMA *CRIM* - Criminal Case Cover Sheet.pdf  3/4/2013

**<u>Search Warrant Case Number</u>:**

12-MJ-6221-LTS
12-MJ-6251-LTS
13-MJ-7106-JCB

JS 45 (5/97) - (Revised U.S.D.C. MA 3/25/2011)

| Criminal Case Cover Sheet | U.S. District Court - District of Massachusetts |
|---|---|

**Place of Offense:**   Category No. __I__   **Investigating Agency**  FDA/OCI; FBI; VA OIG; DCIS ; USPIS

**City**  Framingham, MA   **Related Case Information:**   14CR10363

**County**  Middlesex

Superseding Ind./ Inf. _____   Case No. __Boal__
Same Defendant _____   New Defendant _____
Magistrate Judge Case Number _____
Search Warrant Case Number   see attached sheet
R 20/R 40 from District of _____

**Defendant Information:**

**Defendant Name**  Sharon P. Carter   Juvenile:   ☐ Yes  ☑ No

Is this person an attorney and/or a member of any state/federal bar:   ☐ Yes  ☑ No

**Alias Name** _____

**Address**   (City & State)  18 N. Mill Street, Hopkinton, Massachusetts

Birth date (Yr only): 1964   SSN (last4#): 1065   Sex  F   Race: Caucasian   Nationality:  USA

**Defense Counsel if known:**   Michael Pineault   Address  Clements & Pineault LLP

**Bar Number** _____   24 Federal Street, 3rd Floor
Boston, MA 02110

**U.S. Attorney Information:**

**AUSA**  Amanda P.M. Strachan & George P. Varghese   Bar Number if applicable _____

**Interpreter:**   ☐ Yes  ☑ No   List language and/or dialect: _____

**Victims:**   ☑ Yes ☐ No  If yes, are there multiple crime victims under 18 USC§3771(d)(2)   ☑ Yes  ☐ No

**Matter to be SEALED:**   ☑ Yes   ☐ No

☑ Warrant Requested   ☐ Regular Process   ☐ In Custody

**Location Status:**

**Arrest Date** _____

☐ Already in Federal Custody as of _____ in _____ .
☐ Already in State Custody at _____ ☐ Serving Sentence   ☐ Awaiting Trial
☐ On Pretrial Release:   Ordered by: _____ on _____

**Charging Document:**   ☐ Complaint   ☐ Information   ☑ Indictment

**Total # of Counts:**   ☐ Petty _____   ☐ Misdemeanor _____   ☑ Felony  2

Continue on Page 2 for Entry of U.S.C. Citations

☑   I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are
accurately set forth above.

Date:   December 16, 2014   Signature of AUSA: _____

JS 45 (5/97)  (Revised U.S.D.C. MA 12/7/05) Page 2 of 2 or Reverse

**District Court Case Number**   (To be filled in by deputy clerk): _____

**Name of Defendant**    Sharon P. Carter _____

### U.S.C. Citations

| | Index Key/Code | Description of Offense Charged | Count Numbers |
|---|---|---|---|
| Set 1 | 18 U.S.C. s. 1962(d) | Racketeering Conspiracy | 2 |
| Set 2 | 18 U.S.C. s. 371 | Conspiracy to Defraud the United States | 3 |
| Set 3 | | | |
| Set 4 | | | |
| Set 5 | | | |
| Set 6 | | | |
| Set 7 | | | |
| Set 8 | | | |
| Set 9 | | | |
| Set 10 | | | |
| Set 11 | | | |
| Set 12 | | | |
| Set 13 | | | |
| Set 14 | | | |
| Set 15 | | | |

**ADDITIONAL INFORMATION:** _____

_____

_____

_____

USAMA *CRIM* - Criminal Case Cover Sheet.pdf  3/4/2013

**<u>Search Warrant Case Number</u>:**

12-MJ-6221-LTS
12-MJ-6251-LTS
13-MJ-7106-JCB

%JS 45 (5/97) - (Revised U.S.D.C. MA 3/25/2011)

**Criminal Case Cover Sheet**                                    **U.S. District Court - District of Massachusetts**

| | | |
|---|---|---|
| **Place of Offense:** | Category No. ___I___ | Investigating Agency  FDA/OCI; FBI; VA OIG; DCIS; USPIS |

**City**   **Framingham, MA**

**County**   **Middlesex**

**Related Case Information:**  14 CR 10363 - (Boal)

Superseding Ind./ Inf. _____   Case No. _____

Same Defendant _____   New Defendant _____

Magistrate Judge Case Number _____

Search Warrant Case Number   see attached sheet

R 20/R 40 from District of _____

**Defendant Information:**

Defendant Name   Scott M. Connolly                          Juvenile:   ☐ Yes  ☑ No

Is this person an attorney and/or a member of any state/federal bar:   ☐ Yes  ☑ No

Alias Name _____

Address   (City & State) 940 Quaker Lane, Apt. 1712, East Greenwich, Rhode Island

Birth date (Yr only): 1971   SSN (last4#): 0100   Sex M   Race: Caucasian   Nationality: USA

**Defense Counsel if known:**   Raymond Sayeg        Address  Krattenmaker O'Connor & Ingber P.C.

**Bar Number** _____                                    One McKinley Square, Fifth Floor
                                                              Boston, MA 02109

**U.S. Attorney Information:**

**AUSA**   Amanda P.M. Strachan & George P. Varghese        Bar Number if applicable _____

**Interpreter:**   ☐ Yes  ☑ No   List language and/or dialect: _____

**Victims:**   ☑ Yes  ☐ No   If yes, are there multiple crime victims under 18 USC§3771(d)(2)   ☑ Yes  ☐ No

**Matter to be SEALED:**   ☑ Yes  ☐ No

☑ Warrant Requested        ☐ Regular Process        ☐ In Custody

**Location Status:**

**Arrest Date** _____

☐ Already in Federal Custody as of _____ in _____

☐ Already in State Custody at _____   ☐ Serving Sentence   ☐ Awaiting Trial

☐ On Pretrial Release: Ordered by: _____ on _____

**Charging Document:**   ☐ Complaint   ☐ Information   ☑ Indictment

**Total # of Counts:**   ☐ Petty ——   ☐ Misdemeanor ——   ☑ Felony   12

Continue on Page 2 for Entry of U.S.C. Citations

☑   I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are
accurately set forth above.

Date:   December 16, 2014        Signature of AUSA: _____

JS 45  (5/97)  (Revised U.S.D.C. MA 12/7/05) Page 2 of 2 or Reverse

**District Court Case Number**  (To be filled in by deputy clerk): _____

**Name of Defendant**     Scott M. Connolly

### U.S.C. Citations

| | Index Key/Code | Description of Offense Charged | Count Numbers |
|---|---|---|---|
| Set 1 | 18 U.S.C. s. 1962(c) | Racketeering | 1 |
| Set 2 | 18 U.S.C. s. 1962(d) | Racketeering Conspiracy | 2 |
| Set 3 | 18 U.S.C. s. 1341 | Mail Fraud | 47-56 |
| Set 4 | | | |
| Set 5 | | | |
| Set 6 | | | |
| Set 7 | | | |
| Set 8 | | | |
| Set 9 | | | |
| Set 10 | | | |
| Set 11 | | | |
| Set 12 | | | |
| Set 13 | | | |
| Set 14 | | | |
| Set 15 | | | |

**ADDITIONAL INFORMATION:** _____

_____

_____

_____

USAMA *CRIM* - Criminal Case Cover Sheet.pdf  3/4/2013

**<u>Search Warrant Case Number</u>:**

12-MJ-6221-LTS
12-MJ-6251-LTS
13-MJ-7106-JCB

Case 1:14-cr-10363-RGS   Document 1-1   Filed 12/16/14   Page 16 of 42

☜JS 45 (5/97) - (Revised U.S.D.C. MA 3/25/2011)

**Criminal Case Cover Sheet**                    **U.S. District Court - District of Massachusetts**

**Place of Offense:**          Category No. ___I___        Investigating Agency   FDA/OCI, FBI, VA OIG, DCIS; NCIS

City   **Framingham, MA**          **Related Case Information:**          14 CR 10363

County   **Middlesex**          Superseding Ind./ Inf. _____   Case No.          (Boal)
                              Same Defendant _____   New Defendant _____
                              Magistrate Judge Case Number _____
                              Search Warrant Case Number   see attached sheet
                              R 20/R 40 from District of _____

**Defendant Information:**

Defendant Name   Joseph Matthew Evanosky          Juvenile:   ☐ Yes   ☑ No

                 Is this person an attorney and/or a member of any state/federal bar:   ☐ Yes   ☑ No

Alias Name

Address          (City & State)  87 Pleasant Street, Westford, Massachusetts

Birth date (Yr only): _1972_   SSN (last4#): _8971_   Sex _M_     Race: Caucasian     Nationality: USA

**Defense Counsel if known:**    Mark Smith          Address  Laredo & Smith, LLP

**Bar Number**   _____          101 Federal Street, Suite 650
                                     Boston, MA 02110

**U.S. Attorney Information:**

**AUSA**   Amanda P.M. Strachan & George P. Varghese       Bar Number if applicable   _____

**Interpreter:**   ☐ Yes   ☑ No       List language and/or dialect:  _____

**Victims:**   ☑ Yes   ☐ No   If yes, are there multiple crime victims under 18 USC§3771(d)(2)   ☑ Yes   ☐ No

**Matter to be SEALED:**   ☑ Yes   ☐ No

     ☑ Warrant Requested          ☐ Regular Process          ☐ In Custody

**Location Status:**

**Arrest Date**   _____

☐ Already in Federal Custody as of _____ in _____ .
☐ Already in State Custody at _____  ☐ Serving Sentence   ☐ Awaiting Trial
☐ On Pretrial Release:  Ordered by: _____ on _____

**Charging Document:**   ☐ Complaint      ☐ Information      ☑ Indictment

**Total # of Counts:**   ☐ Petty ——   ☐ Misdemeanor ——   ☑ Felony   _8_

Continue on Page 2 for Entry of U.S.C. Citations

☑   I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are
     accurately set forth above.

Date:   December 16, 2014       Signature of AUSA: _____

JS 45 (5/97) (Revised U.S.D.C. MA 12/7/05) Page 2 of 2 or Reverse

**District Court Case Number** (To be filled in by deputy clerk): _____

**Name of Defendant**   Joseph Matthew Evanosky

**U.S.C. Citations**

| | **Index Key/Code** | **Description of Offense Charged** | **Count Numbers** |
|---|---|---|---|
| Set 1 | 18 U.S.C. s. 1962(c) | Racketeering | 1 |
| Set 2 | 18 U.S.C. s. 1962(d) | Racketeering Conspiracy | 2 |
| Set 3 | 18 U.S.C. s. 1341 | Mail Fraud | 34, 35, 37, 41 |
| Set 4 | 21 U.S.C. s. 351(a)(2)(A), 331(a), and 333(a)(2) | Introduction of Adulterated Drugs into Interstate Commerce with Intent to Defraud and Mislead - Insanitary Conditions | 87, 88 |
| Set 5 | 18 U.S.C. s. 2 | Aiding and Abetting | 87, 88 |
| Set 6 | | | |
| Set 7 | | | |
| Set 8 | | | |
| Set 9 | | | |
| Set 10 | | | |
| Set 11 | | | |
| Set 12 | | | |
| Set 13 | | | |
| Set 14 | | | |
| Set 15 | | | |

**ADDITIONAL INFORMATION:** _____

_____

_____

USAMA *CRIM* - Criminal Case Cover Sheet.pdf  3/4/2013

**<u>Search Warrant Case Number</u>:**

12-MJ-6221-LTS
12-MJ-6251-LTS
13-MJ-7106-JCB

&JS 45 (5/97) - (Revised U.S.D.C. MA 3/25/2011)

| Criminal Case Cover Sheet | U.S. District Court - District of Massachusetts |
|---|---|

**Place of Offense:**   Category No.  _I_   Investigating Agency   FDA/OCI; FBI; VA OIG; DCIS; _USPS_

City   **Framingham, MA**   Related Case Information:   14 CR 10363 (Boal)

County   **Middlesex**
Superseding Ind./ Inf. _____   Case No. _____
Same Defendant _____   New Defendant _____
Magistrate Judge Case Number _____
Search Warrant Case Number   see attached sheet
R 20/R 40 from District of _____

**Defendant Information:**

Defendant Name   Alla V. Stepanets   Juvenile:   ☐ Yes  ☑ No

Is this person an attorney and/or a member of any state/federal bar:   ☐ Yes  ☑ No

Alias Name _____

Address   (City & State)  11 Arlene Drive, Framingham, Massachusetts

Birth date (Yr only): 1980   SSN (last4#): 6978   Sex F   Race: Caucasian   Nationality: USA

**Defense Counsel if known:** _____   Address _____

**Bar Number** _____

**U.S. Attorney Information:**

AUSA   Amanda P.M. Strachan & George P. Varghese   Bar Number if applicable _____

Interpreter:   ☐ Yes  ☑ No   List language and/or dialect: _____

Victims:   ☑ Yes  ☐ No   If yes, are there multiple crime victims under 18 USC§3771(d)(2)   ☑ Yes  ☐ No

Matter to be SEALED:   ☑ Yes  ☐ No

☑ Warrant Requested   ☐ Regular Process   ☐ In Custody

**Location Status:**

**Arrest Date** _____

☐ Already in Federal Custody as of _____ in _____ .
☐ Already in State Custody at _____  ☐ Serving Sentence  ☐ Awaiting Trial
☐ On Pretrial Release:  Ordered by: _____ on _____

**Charging Document:**   ☐ Complaint   ☐ Information   ☑ Indictment

**Total # of Counts:**   ☐ Petty _____   ☐ Misdemeanor _____   ☑ Felony  9

Continue on Page 2 for Entry of U.S.C. Citations

☑  I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are
accurately set forth above.

Date:   December 16, 2014   Signature of AUSA: _____

JS 45 (5/97) (Revised U.S.D.C. MA 12/7/05) Page 2 of 2 or Reverse

**District Court Case Number** (To be filled in by deputy clerk): _____

**Name of Defendant**     Alla V. Stepanets     _____

## U.S.C. Citations

| | **Index Key/Code** | **Description of Offense Charged** | **Count Numbers** |
|---|---|---|---|
| Set 1 | 18 U.S.C. s. 1962(d) | Racketeering Conspiracy | 2 |
| Set 2 | 18 U.S.C. s. 371 | Conspiracy to Defraud the United States | 3 |
| Set 3 | 21 U.S.C. s. 353(b)(1), 331(a), and 333(a)(2) | Introduction of Misbranded Drugs into Interstate Commerce with Intent to Defraud and Mislead - No Prescriptions | 96-98, 101-103, 108 |
| Set 4 | 18 U.S.C. s. 2 | Aiding and Abetting | 96-98, 101-103, 108 |
| Set 5 | | | |
| Set 6 | | | |
| Set 7 | | | |
| Set 8 | | | |
| Set 9 | | | |
| Set 10 | | | |
| Set 11 | | | |
| Set 12 | | | |
| Set 13 | | | |
| Set 14 | | | |
| Set 15 | | | |

**ADDITIONAL INFORMATION:** _____

_____

_____

_____

USAMA *CRIM* - Criminal Case Cover Sheet.pdf  3/4/2013

**<u>Search Warrant Case Number</u>:**

12-MJ-6221-LTS
12-MJ-6251-LTS
13-MJ-7106-JCB

JS 45 (5/97) - (Revised U.S.D.C. MA 3/25/2011)

**Criminal Case Cover Sheet**                    **U.S. District Court - District of Massachusetts**

**Place of Offense:**          **Category No.**  I          **Investigating Agency**  FDA/OCI; FBI; VA OIG; DCIS ; USPIS

**City**   Framingham, MA          **Related Case Information:**          14 CR 10363

**County**   Middlesex          Superseding Ind./ Inf. _____   Case No. _____   (Boat)
Same Defendant _____   New Defendant _____
Magistrate Judge Case Number _____
Search Warrant Case Number   see attached sheet
R 20/R 40 from District of _____

**Defendant Information:**

Defendant Name   Gregory A. Conigliaro          Juvenile:   ☐ Yes  ☑ No

          Is this person an attorney and/or a member of any state/federal bar:   ☐ Yes  ☑ No

Alias Name _____

Address   (City & State)  52 Sears Road, Southborough, Massachusetts

Birth date (Yr only): 1965   SSN (last4#): 2598   Sex M   Race: Caucasian   Nationality: USA

**Defense Counsel if known:**   Dan Rabinovitz          Address  Michaels, Ward & Rabinovitz LLP

**Bar Number** _____                    One Beacon Street, 2nd Floor
                    Boston, MA 02108

**U.S. Attorney Information:**

**AUSA**   Amanda P.M. Strachan & George P. Varghese   Bar Number if applicable _____

**Interpreter:**   ☐ Yes  ☑ No          List language and/or dialect: _____

**Victims:**   ☑ Yes  ☐ No  If yes, are there multiple crime victims under 18 USC§3771(d)(2)   ☑ Yes  ☐ No

**Matter to be SEALED:**   ☑ Yes  ☐ No

   ☑ Warrant Requested          ☐ Regular Process          ☐ In Custody

**Location Status:**

**Arrest Date** _____

☐ Already in Federal Custody as of _____ in _____
☐ Already in State Custody at _____ ☐ Serving Sentence  ☐ Awaiting Trial
☐ On Pretrial Release:  Ordered by: _____ on _____

**Charging Document:**   ☐ Complaint          ☐ Information          ☑ Indictment

**Total # of Counts:**   ☐ Petty _____  ☐ Misdemeanor _____  ☑ Felony  1

Continue on Page 2 for Entry of U.S.C. Citations

☑   I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are accurately set forth above.

Date:   December 16, 2014          Signature of AUSA: _____

JS 45  (5/97)  (Revised U.S.D.C. MA 12/7/05) Page 2 of 2 or Reverse

**District Court Case Number**   (To be filled in by deputy clerk):   _____

**Name of Defendant**    Gregory A. Conigliaro    _____

### U.S.C. Citations

| | **Index Key/Code** | **Description of Offense Charged** | **Count Numbers** |
|---|---|---|---|
| Set 1 | 18 U.S.C. s. 371 | Conspiracy to Defraud the United States | 3 |
| Set 2 | | | |
| Set 3 | | | |
| Set 4 | | | |
| Set 5 | | | |
| Set 6 | | | |
| Set 7 | | | |
| Set 8 | | | |
| Set 9 | | | |
| Set 10 | | | |
| Set 11 | | | |
| Set 12 | | | |
| Set 13 | | | |
| Set 14 | | | |
| Set 15 | | | |

**ADDITIONAL INFORMATION:** _____

_____

_____

_____

USAMA *CRJM* - Criminal Case Cover Sheet.pdf  3/4/2013

**<u>Search Warrant Case Number</u>:**

12-MJ-6221-LTS
12-MJ-6251-LTS
13-MJ-7106-JCB

JS 45 (5/97) - (Revised U.S.D.C. MA 3/25/2011)

**Criminal Case Cover Sheet**                          **U.S. District Court - District of Massachusetts**

**Place of Offense:**          **Category No.** __I__          **Investigating Agency** FDA/OCI; FBI; VA OIG; DCIS; USPIS

**City**   **Framingham, MA**          **Related Case Information:**     14CR10363-

**County**   **Middlesex**          Superseding Ind./ Inf. _____   **Case No.**  (Bool)
                                     Same Defendant _____   New Defendant _____
                                     Magistrate Judge Case Number _____
                                     Search Warrant Case Number   see attached sheet
                                     R 20/R 40 from District of _____

**Defendant Information:**

Defendant Name   Robert A. Ronzio          Juvenile:        ☐ Yes  ☑ No

                 Is this person an attorney and/or a member of any state/federal bar:   ☐ Yes  ☑ No

Alias Name _____

Address      (City & State)  30 Nipmuc Trail, North Providence, Rhode Island

Birth date (Yr only): 1974   SSN (last4#): 5566   Sex M    Race: Caucasian    Nationality: USA

**Defense Counsel if known:**   Frank Libby          Address  LibbyHoopes, P.C.

**Bar Number** _____                              399 Boylston Street
                                                       Boston, MA 02116

**U.S. Attorney Information:**

**AUSA**   Amanda P.M. Strachan & George P. Varghese          Bar Number if applicable _____

**Interpreter:**   ☐ Yes  ☑ No          List language and/or dialect: _____

**Victims:**   ☑ Yes ☐ No  If yes, are there multiple crime victims under 18 USC§3771(d)(2)   ☑ Yes ☐ No

**Matter to be SEALED:**   ☑ Yes   ☐ No

     ☑ Warrant Requested          ☐ Regular Process          ☐ In Custody

**Location Status:**

**Arrest Date** _____

☐ Already in Federal Custody as of _____ in _____ .
☐ Already in State Custody at _____ ☐ Serving Sentence   ☐ Awaiting Trial
☐ On Pretrial Release:  Ordered by: _____ on _____

**Charging Document:**   ☐ Complaint   ☐ Information   ☑ Indictment

**Total # of Counts:**   ☐ Petty _____   ☐ Misdemeanor _____   ☑ Felony  1

Continue on Page 2 for Entry of U.S.C. Citations

☑   I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are
     accurately set forth above.

Date:   December 16, 2014          Signature of AUSA: _____

JS 45  (5/97)  (Revised U.S.D.C. MA 12/7/05) Page 2 of 2 or Reverse

**District Court Case Number**   (To be filled in by deputy clerk): _____

**Name of Defendant**    Robert A. Ronzio

### U.S.C. Citations

| <u>Index Key/Code</u> | <u>Description of Offense Charged</u> | <u>Count Numbers</u> |
|---|---|---|
| Set 1    18 U.S.C. s. 371 | Conspiracy to Defraud the United States | 3 |
| Set 2 | | |
| Set 3 | | |
| Set 4 | | |
| Set 5 | | |
| Set 6 | | |
| Set 7 | | |
| Set 8 | | |
| Set 9 | | |
| Set 10 | | |
| Set 11 | | |
| Set 12 | | |
| Set 13 | | |
| Set 14 | | |
| Set 15 | | |

**ADDITIONAL INFORMATION:** _____

USAMA *CRIM* - Criminal Case Cover Sheet.pdf   3/4/2013

**<u>Search Warrant Case Number</u>:**

12-MJ-6221-LTS
12-MJ-6251-LTS
13-MJ-7106-JCB

Case 1:14-cr-10363-RGS   Document 1-1   Filed 12/16/14   Page 28 of 42

%JS 45 (5/97) - (Revised U.S.D.C. MA 3/25/2011)

## Criminal Case Cover Sheet                                   U.S. District Court - District of Massachusetts

| | | |
|---|---|---|
| **Place of Offense:** | **Category No.** I | **Investigating Agency** FDA/OCI; FBI; VA OIG; DCIS; USPIS |
| **City** Framingham, MA | **Related Case Information:** | 1 4 C R 10363 (BooL) |
| **County** Middlesex | Superseding Ind./ Inf. _____ Case No. _____ | |

Same Defendant _____ New Defendant _____
Magistrate Judge Case Number _____
Search Warrant Case Number   see attached sheet
R 20/R 40 from District of _____

### Defendant Information:

Defendant Name   Carla R. Conigliaro                    Juvenile:   ☐ Yes  ☑ No

Is this person an attorney and/or a member of any state/federal bar:   ☐ Yes  ☑ No

Alias Name _____

Address   (City & State) 15 Hale Drive, Dedham, Massachusetts

Birth date (Yr only): 1963   SSN (last4#): 2309   Sex F   Race: Caucasian   Nationality: USA

Defense Counsel if known:   David Meier          Address Todd and Weld LLP

Bar Number _____          One Federal Street
                            Boston, MA 02110

### U.S. Attorney Information:

**AUSA**   Amanda P.M. Strachan & George P. Varghese      Bar Number if applicable _____

**Interpreter:**   ☐ Yes  ☑ No      List language and/or dialect: _____

**Victims:**   ☑ Yes  ☐ No   If yes, are there multiple crime victims under 18 USC§3771(d)(2)  ☑ Yes  ☐ No

**Matter to be SEALED:**   ☑ Yes   ☐ No

   ☑ Warrant Requested      ☐ Regular Process      ☐ In Custody

**Location Status:**

**Arrest Date** _____

☐ Already in Federal Custody as of _____ in _____
☐ Already in State Custody at _____ ☐ Serving Sentence   ☐ Awaiting Trial
☐ On Pretrial Release:   Ordered by: _____ on _____

**Charging Document:**   ☐ Complaint   ☐ Information   ☑ Indictment

**Total # of Counts:**   ☐ Petty _____ ☐ Misdemeanor _____ ☑ Felony   22

Continue on Page 2 for Entry of U.S.C. Citations

☑   I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are
    accurately set forth above.

Date:   December 16, 2014      Signature of AUSA: _____

JS 45  (5/97)  (Revised U.S.D.C. MA 12/7/05) Page 2 of 2 or Reverse

**District Court Case Number**   (To be filled in by deputy clerk): _____

**Name of Defendant**   ___Carla R. Conigliaro_____

### U.S.C. Citations

| | **Index Key/Code** | **Description of Offense Charged** | **Count Numbers** |
|---|---|---|---|
| Set 1 | 18 U.S.C. s. 401(3) | Criminal Contempt | 110-127 |
| Set 2 | 18 U.S.C. s. 371 | Conspiracy to Commit Structuring | 128 |
| Set 3 | 31 U.S.C. s. 5324(a) | Structuring | 129, 130, 131 |
| Set 4 | 18 U.S.C. s. 2 | Aiding and Abetting | 110-127, 129-131 |
| Set 5 | | | |
| Set 6 | | | |
| Set 7 | | | |
| Set 8 | | | |
| Set 9 | | | |
| Set 10 | | | |
| Set 11 | | | |
| Set 12 | | | |
| Set 13 | | | |
| Set 14 | | | |
| Set 15 | | | |

**ADDITIONAL INFORMATION:** _____

_____

_____

_____

USAMA *CRIM* - Criminal Case Cover Sheet.pdf  3/4/2013

**<u>Search Warrant Case Number</u>:**

12-MJ-6221-LTS
12-MJ-6251-LTS
13-MJ-7106-JCB

JS 45 (5/97) - (Revised U.S.D.C. MA 3/25/2011)

**Criminal Case Cover Sheet**        **U.S. District Court - District of Massachusetts**

| | | |
|---|---|---|
| **Place of Offense:** | **Category No.**   I | **Investigating Agency**   FDA/OCI; FBI; VA OIG; DCIS; USPIS |
| **City**   Framingham, MA | **Related Case Information:** | 14CR10363 |
| **County**   Middlesex | | (Boal) |

**Related Case Information:**

Superseding Ind./ Inf. _____    Case No. _____
Same Defendant _____    New Defendant _____
Magistrate Judge Case Number _____
Search Warrant Case Number   see attached sheet
R 20/R 40 from District of _____

**Defendant Information:**

Defendant Name   Douglas A. Conigliaro       Juvenile:   ☐ Yes   ☑ No

Is this person an attorney and/or a member of any state/federal bar:   ☐ Yes   ☑ No

Alias Name _____

Address    (City & State)   15 Hale Drive, Dedham, Massachusetts

Birth date (Yr only): 1961   SSN (last4#): 4316   Sex M    Race: Caucasian    Nationality: USA

**Defense Counsel if known:**   David Meier       Address Todd and Weld LLP

**Bar Number** _____       One Federal Street
                               Boston, MA 02110

**U.S. Attorney Information:**

**AUSA**   Amanda P.M. Strachan & George P. Varghese      Bar Number if applicable _____

**Interpreter:**   ☐ Yes   ☑ No      List language and/or dialect: _____

**Victims:**   ☑ Yes ☐ No   If yes, are there multiple crime victims under 18 USC§3771(d)(2)   ☑ Yes   ☐ No

**Matter to be SEALED:**   ☑ Yes   ☐ No

    ☑ Warrant Requested      ☐ Regular Process      ☐ In Custody

**Location Status:**

**Arrest Date** _____

☐ Already in Federal Custody as of _____ in _____ .
☐ Already in State Custody at —————— ☐ Serving Sentence     ☐ Awaiting Trial
☐ On Pretrial Release:   Ordered by: _____ on _____

**Charging Document:**   ☐ Complaint     ☐ Information     ☑ Indictment

**Total # of Counts:**   ☐ Petty ———   ☐ Misdemeanor ———   ☑ Felony   22

Continue on Page 2 for Entry of U.S.C. Citations

☑   I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are accurately set forth above.

Date:   December 16, 2014      Signature of AUSA: _____

JS 45 (5/97) (Revised U.S.D.C. MA 12/7/05) Page 2 of 2 or Reverse

**District Court Case Number**   (To be filled in by deputy clerk): _____

**Name of Defendant**   Douglas A. Conigliaro _____

## U.S.C. Citations

| | **Index Key/Code** | **Description of Offense Charged** | **Count Numbers** |
|---|---|---|---|
| Set 1 | 18 U.S.C. s. 401(3) | Criminal Contempt | 110-127 |
| Set 2 | 18 U.S.C. s. 371 | Conspiracy to Commit Structuring | 128 |
| Set 3 | 31 U.S.C. s. 5324(a) | Structuring | 129, 130, 131 |
| Set 4 | 18 U.S.C. s. 2 | Aiding and Abetting | 110-127, 129-131 |
| Set 5 | | | |
| Set 6 | | | |
| Set 7 | | | |
| Set 8 | | | |
| Set 9 | | | |
| Set 10 | | | |
| Set 11 | | | |
| Set 12 | | | |
| Set 13 | | | |
| Set 14 | | | |
| Set 15 | | | |

**ADDITIONAL INFORMATION:** _____

_____

_____

_____

USAMA *CRIM - Criminal Case Cover Sheet*.pdf  3/4/2013

**<u>Search Warrant Case Number</u>:**

12-MJ-6221-LTS
12-MJ-6251-LTS
13-MJ-7106-JCB  ——>

JS 45 (5/97) - (Revised U.S.D.C. MA 3/25/2011)

**Criminal Case Cover Sheet**                    **U.S. District Court - District of Massachusetts**

**Place of Offense:**          **Category No.** __I__          **Investigating Agency** FDA/OCI; FBI; VA OIG; DCIS; USPIS

**City** __Framingham, MA__          **Related Case Information:**          14 CR 10363

**County** __Middlesex__          Superseding Ind./ Inf. _____ Case No. (Boal)
Same Defendant _____ New Defendant _____
Magistrate Judge Case Number _____
Search Warrant Case Number __see attached sheet__
R 20/R 40 from District of _____

**Defendant Information:**

Defendant Name __Barry J. Cadden__          Juvenile:          ☐ Yes  ☑ No

Is this person an attorney and/or a member of any state/federal bar:          ☐ Yes  ☑ No

Alias Name _____

Address __(City & State) 13 Manchester Drive, Wrentham, Massachusetts__

Birth date (Yr only): __1966__ SSN (last4#): __2517__ Sex __M__   Race: __Caucasian__   Nationality: __USA__

**Defense Counsel if known:** __Bruce Singal__          Address __Donoghue Barrett & Singal__

**Bar Number** _____                    One Beacon Street, Suite 1320
                                            Boston, MA 02108

**U.S. Attorney Information:**

**AUSA** __Amanda P.M. Strachan & George P. Varghese__   Bar Number if applicable _____

**Interpreter:** ☐ Yes ☑ No          List language and/or dialect: _____

**Victims:** ☑ Yes ☐ No  If yes, are there multiple crime victims under 18 USC§3771(d)(2)  ☑ Yes ☐ No

**Matter to be SEALED:** ☑ Yes ☐ No

☑ Warrant Requested          ☐ Regular Process          ☐ In Custody

**Location Status:**

**Arrest Date** _____

☐ Already in Federal Custody as of _____ in _____
☐ Already in State Custody at _____ ☐ Serving Sentence ☐ Awaiting Trial
☐ On Pretrial Release: Ordered by: _____ on _____

**Charging Document:** ☐ Complaint  ☐ Information  ☑ Indictment

**Total # of Counts:** ☐ Petty  ☐ Misdemeanor  ☑ Felony __97__

Continue on Page 2 for Entry of U.S.C. Citations

☑ I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are accurately set forth above.

Date: __December 16, 2014__          Signature of AUSA: _____

JS 45 (5/97)  (Revised U.S.D.C. MA 12/7/05) Page 2 of 2 or Reverse

**District Court Case Number**   (To be filled in by deputy clerk): _____

**Name of Defendant**     Barry J. Cadden _____

### U.S.C. Citations

| | Index Key/Code | Description of Offense Charged | Count Numbers |
|---|---|---|---|
| Set 1 | 18 U.S.C. s. 1962(c) | Racketeering | 1 |
| Set 2 | 18 U.S.C. s. 1962(d) | Racketeering Conspiracy | 2 |
| Set 3 | 18 U.S.C. s. 371 | Conspiracy to Defraud the United States | 3 |
| Set 4 | 18 U.S.C. s. 1341 | Mail Fraud | 4-56 |
| Set 5 | 21 U.S.C. s. 351(a)(2)(A), 331(a), and 333(a)(2) | Introduction of Adulterated Drugs into Interstate Commerce with Intent to Defraud and Mislead - Insanitary Conditions | 57-90 |
| Set 6 | 21 U.S.C. s. 352(a), 331(a), and 333(a)(2) | Introduction of Misbranded Drugs into Interstate Commerce with the Intent to Defraud and Mislead - False and Misleading Labeling | 91-94 |
| Set 7 | 21 U.S.C. s. 353(b)(1), 331(a), and 333(a)(2) | Introduction of Misbranded Drugs into Interstate Commerce with the Intent to Defraud and Mislead - No Prescriptions | 95, 99, 100 |
| Set 8 | 18 U.S.C. s. 2 | Aiding and Abetting | 57-95, 99, 100 |
| Set 9 | | | |
| Set 10 | | | |
| Set 11 | | | |
| Set 12 | | | |
| Set 13 | | | |
| Set 14 | | | |
| Set 15 | | | |

**ADDITIONAL INFORMATION:** _____

_____

_____

USAMA *CRIM - Criminal Case Cover Sheet.pdf*  3/4/2013

**<u>Search Warrant Case Number</u>:**

12-MJ-6221-LTS
12-MJ-6251-LTS
13-MJ-7106-JCB

Case 1:14-cr-10363-RGS   Document 1-1   Filed 12/16/14   Page 37 of 42

≈JS 45 (5/97) - (Revised U.S.D.C. MA 3/25/2011)

| Criminal Case Cover Sheet | U.S. District Court - District of Massachusetts |
|---|---|

**Place of Offense:** Category No. __I__    **Investigating Agency** FDA/OCI; FBI; VA OIG; DCIS; USPIS

**City** __Framingham, MA__    **Related Case Information:** 14 CR 10363-

**County** __Middlesex__    Superseding Ind./ Inf. _____ Case No. Boal
Same Defendant _____ New Defendant _____
Magistrate Judge Case Number _____
Search Warrant Case Number __see attached sheet__
R 20/R 40 from District of _____

**Defendant Information:**

Defendant Name __Kathy S. Chin__    Juvenile: ☐ Yes ☑ No

Is this person an attorney and/or a member of any state/federal bar: ☐ Yes ☑ No

Alias Name _____

Address __(City & State) 173 Mechanic Street, Canton, Massachusetts__

Birth date (Yr only): __1972__ SSN (last4#): __1551__ Sex __F__    Race: __Asian__    Nationality: __USA__

**Defense Counsel if known:** _____    Address _____

**Bar Number** _____

**U.S. Attorney Information:**

**AUSA** __Amanda P.M. Strachan & George P. Varghese__    Bar Number if applicable _____

**Interpreter:** ☐ Yes ☑ No    List language and/or dialect: _____

**Victims:** ☑ Yes ☐ No  If yes, are there multiple crime victims under 18 USC§3771(d)(2) ☑ Yes ☐ No

**Matter to be SEALED:** ☑ Yes ☐ No

☑ Warrant Requested    ☐ Regular Process    ☐ In Custody

**Location Status:**

**Arrest Date** _____

☐ Already in Federal Custody as of _____ in _____.
☐ Already in State Custody at _____ ☐ Serving Sentence ☐ Awaiting Trial
☐ On Pretrial Release: Ordered by: _____ on _____

**Charging Document:** ☐ Complaint ☐ Information ☑ Indictment

**Total # of Counts:** ☐ Petty _____ ☐ Misdemeanor _____ ☑ Felony __4__

Continue on Page 2 for Entry of U.S.C. Citations

☑ I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are accurately set forth above.

Date: __December 16, 2014__    Signature of AUSA: _____

JS 45 (5/97) (Revised U.S.D.C. MA 12/7/05) Page 2 of 2 or Reverse

**District Court Case Number** (To be filled in by deputy clerk): _____

**Name of Defendant** _____ Kathy S. Chin _____

### U.S.C. Citations

| | **Index Key/Code** | **Description of Offense Charged** | **Count Numbers** |
|---|---|---|---|
| Set 1 | 21 U.S.-C. s. 353 (b)(1), 331 (a), and 333 (a)(2) | Introduction of Misbranded Drugs into Interstate Commerce with Intent to Defraud and Mislead - No Prescriptions | 104-107 |
| Set 2 | 18 U.S.C. s. 2 | Aiding and Abetting | 104-107 |
| Set 3 | | | |
| Set 4 | | | |
| Set 5 | | | |
| Set 6 | | | |
| Set 7 | | | |
| Set 8 | | | |
| Set 9 | | | |
| Set 10 | | | |
| Set 11 | | | |
| Set 12 | | | |
| Set 13 | | | |
| Set 14 | | | |
| Set 15 | | | |

**ADDITIONAL INFORMATION:** _____

USAMA *CRIM* - Criminal Case Cover Sheet.pdf  3/4/2013

**<u>Search Warrant Case Number</u>:**

12-MJ-6221-LTS
12-MJ-6251-LTS
13-MJ-7106-JCB

§JS 45 (5/97) - (Revised U.S.D.C. MA 3/25/2011)

| **Criminal Case Cover Sheet** | **U.S. District Court - District of Massachusetts** |
|---|---|

**Place of Offense:**          **Category No.**  I          **Investigating Agency**  FDA/OCI; FBI; VA OIG; DCIS; USPIS

**City**   Framingham, MA          **Related Case Information:**

**County**   Middlesex

Superseding Ind./ Inf. _____   Case No.   *14 CR 10363*
Same Defendant _____   New Defendant _____
Magistrate Judge Case Number _____
Search Warrant Case Number   see attached sheet
R 20/R 40 from District of _____

**Defendant Information:**

**Defendant Name**   Michelle L. Thomas          Juvenile:   ☐ Yes   ☑ No

Is this person an attorney and/or a member of any state/federal bar:   ☐ Yes   ☑ No

**Alias Name**   Michelle Caetano

**Address**   (City & State)   14 Royal Court, Cumberland, Rhode Island

Birth date (Yr only): 1983   SSN (last 4#): 7015   Sex F   Race: Caucasian   Nationality: USA

**Defense Counsel if known:**   John Kiernan & Chris Jefford          Address   Bonner Kiernan Trebach & Crociata LLP

**Bar Number** _____          200 Portland Street, 4th Floor
Boston, MA 02114

**U.S. Attorney Information:**

**AUSA**   Amanda P.M. Strachan & George P. Varghese          Bar Number if applicable _____

**Interpreter:**   ☐ Yes   ☑ No          List language and/or dialect: _____

**Victims:**   ☑ Yes ☐ No   If yes, are there multiple crime victims under 18 USC§3771(d)(2)   ☑ Yes   ☐ No

**Matter to be SEALED:**   ☑ Yes   ☐ No

☑ Warrant Requested          ☐ Regular Process          ☐ In Custody

**Location Status:**

**Arrest Date** _____

☐ Already in Federal Custody as of _____ in _____ .
☐ Already in State Custody at _____   ☐ Serving Sentence   ☐ Awaiting Trial
☐ On Pretrial Release:   Ordered by: _____   on _____

**Charging Document:**   ☐ Complaint   ☐ Information   ☑ Indictment

**Total # of Counts:**   ☐ Petty _____   ☐ Misdemeanor _____   ☑ Felony   2

Continue on Page 2 for Entry of U.S.C. Citations

☑   I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are accurately set forth above.

Date:   December 16, 2014          Signature of AUSA: _____

JS 45  (5/97)  (Revised U.S.D.C. MA 12/7/05) Page 2 of 2 or Reverse

**District Court Case Number**  (To be filled in by deputy clerk): _____

**Name of Defendant**  _Michelle L. Thomas_ _____

### U.S.C. Citations

| | Index Key/Code | Description of Offense Charged | Count Numbers |
|---|---|---|---|
| Set 1 | 21 U.S.C. s. 353 (b)(1), 331 (a), and 333 (a)(2) | Introduction of Misbranded Drugs into Interstate Commerce with Intent to Defraud and Mislead - No Prescriptions | 108, 109 |
| Set 2 | 18 U.S.C. s. 2 | Aiding and Abetting | 108, 109 |
| Set 3 | | | |
| Set 4 | | | |
| Set 5 | | | |
| Set 6 | | | |
| Set 7 | | | |
| Set 8 | | | |
| Set 9 | | | |
| Set 10 | | | |
| Set 11 | | | |
| Set 12 | | | |
| Set 13 | | | |
| Set 14 | | | |
| Set 15 | | | |

**ADDITIONAL INFORMATION:** _____

_____

_____

_____

USAMA CRIM - Criminal Case Cover Sheet.pdf  3/4/2013

**<u>Search Warrant Case Number</u>:**

12-MJ-6221-LTS
12-MJ-6251-LTS
13-MJ-7106-JCB