# EXHIBIT 1

**Blumberg & Wolk, LLC**
158 Delaware Street
P.O. Box 68
Woodbury, NJ 08096
(856) 848-7472

*Counsel for Defendants Premier Orthopaedic and Sports Medicine Associates of Southern New Jersey, LLC, trading as Premier Orthopaedic Associates, Premier Orthopaedic Associates Surgical Center, LLC, Kimberly Yvette Smith, M.D., a/k/a Kimberly Yvette Smith-Martin, M.D., Thomas Dwyer, M.D., Rhaul Shah, M.D., John Catalano, M.D., Richard C. DiVerniero, M.D., and Richard Strauss, M.D.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | |
| THIS DOCUMENT RELATES TO: ALL CASES | MDL No. 2419<br>Docket No. 1:13-md-2419 (RWZ) |

## DEPOSITION BY WRITTEN QUESTIONS OF CENTRAL JERSEY ORTHOPEDICS SPECIALISTS, PC

Pursuant to Fed. R. Civ. P. 31, Premier Orthopedic Associates, Premier Orthopedic Associates Surgical Center, LLC, Kimberly Yvette Smith-Martin, M.D., Thomas Dwyer, M.D., Rahul Shah, M.D., Dr. Richard C. DiVerniero, M.D., (hereinafter "The Premier Defendants" or "Premier") hereby submit the following questions to Central Jersey Orthopedics Specialists, P.C., to be answered by one or more individuals with knowledge of Central Jersey Orthopedics Specialists, P.C.'s medication purchasing practices (and, specifically, its purchases from New England Compounding Center ("NECC")), to be designated by Central Jersey Orthopedics Specialists, P.C. in accordance with Fed. R. Civ. P. 30(b)(6).

## *Background*

1. Please state your name.

2. Please provide your complete address and phone number with area code.

3. Do you work at Central Jersey Orthopedics Specialists, P.C.? If so[1]:

    a. What is your current position?

    b. How long have you held that position?

    c. Please describe your job duties at Central Jersey Orthopedics Specialists, P.C.

4. Please provide a brief summary of your educational and employment background, leading up to your present position at Central Jersey Orthopedics Specialists, P.C.

5. Please provide a general description of your facility (*e.g.*, type of practice, number of physicians, *etc.*).

6. By virtue of your role at Central Jersey Orthopedics Specialists, P.C., are you familiar with Central Jersey Orthopedics Specialists, P.C.'s medication purchasing practices?

7. Please describe the basis for your familiarity with Central Jersey Orthopedics Specialists, P.C.'s medication purchasing practices (*e.g.*, is it from personal knowledge? have you spoken with persons at Central Jersey Orthopedics Specialists, P.C. or reviewed documents?).

## *Purchases from NECC and actions prior to purchase*

8. For the years 2010 through 2012, did Central Jersey Orthopedics Specialists, P.C. purchase medications offered for sale by Medical Sales Management and/or New England Compounding Center and made by the New England Compounding Center (hereinafter "NECC")?

9. Please describe the timeframes that Central Jersey Orthopedics Specialists, P.C. purchased medications from NECC and what medications were purchased.

10. Prior to purchasing medications from NECC, did a representative of Central Jersey Orthopedics Specialists, P.C. perform an in-person inspection of NECC's compounding facility? If so, please (1) state when, (2) describe what was done and what was found, and (3) state whether, following the inspection, Central Jersey Orthopedics Specialists, P.C. purchased medications from NECC.

---

[1] If not, please state your employer, position, and job duties.

2

11. Prior to purchasing medications from NECC, did Central Jersey Orthopedics Specialists, P.C. conduct research into whether NECC had recalled any medications made by NECC? If so, please (1) describe the research conducted, (2) describe the results, and (3) state whether, following the drug recall research, Central Jersey Orthopedics Specialists, P.C. purchased medications from NECC.

12. Prior to purchasing medications from NECC, did Central Jersey Orthopedics Specialists, P.C. conduct research into whether NECC had ever been named as a defendant in a products liability lawsuit? If so, please (1) describe the research conducted, (2) describe the results, and (3) state whether, following the previous lawsuit research, Central Jersey Orthopedics Specialists, P.C. purchased medications from NECC.

13. Prior to purchasing medications from NECC, did Central Jersey Orthopedics Specialists, P.C. request information from the Massachusetts Board of Registration in Pharmacy (the "Board") about previous disciplinary actions taken by the Board against NECC? If so, please (1) describe what information was provided by the Massachusetts Board of Registration in Pharmacy and (2) state whether, following the request, Central Jersey Orthopedics Specialists, P.C. purchased medications from NECC.

14. Prior to purchasing medications from NECC, did Central Jersey Orthopedics Specialists, P.C. submit a Freedom of Information Act request to the FDA for documentation of disciplinary actions and/or warnings issued to NECC by the FDA? If so, please (1) describe what information was provided by the FDA and (2) state whether, following the request, Central Jersey Orthopedics Specialists, P.C. purchased medications from NECC.

15. Prior to purchasing medications from NECC, did Central Jersey Orthopedics Specialists, P.C. search the FDA website for information about NECC? If so, please (1) describe what information was obtained from the FDA website and (2) state whether, following the request, Central Jersey Orthopedics Specialists, P.C. purchased medications from NECC.

16. Prior to purchasing medications from NECC, did Central Jersey Orthopedics Specialists, P.C. review transcripts from or summaries of any U.S. Congressional hearings on compounding pharmacies? If so, following the review, did Central Jersey Orthopedics Specialists, P.C. purchase medications from NECC?

17. At the time of Central Jersey Orthopedics Specialists, P.C.'s purchases from NECC, did Central Jersey Orthopedics Specialists, P.C. have a policy and/or procedure in place prohibiting purchases from compounding pharmacies?

18. Please describe any representations Medical Sales Management and/or NECC made to Central Jersey Orthopedics Specialists, P.C. prior to Central Jersey Orthopedics Specialists, P.C. purchasing medications from NECC.

19. In deciding to purchase medications from NECC, did Central Jersey Orthopedics Specialists, P.C. take into consideration any representations from Medical Sales Management and/or NECC regarding its ability to provide a consistent supply of safe medications?

20. Prior to purchasing from NECC, did Central Jersey Orthopedics Specialists, P.C. research compounding pharmacies in CDC literature, *USA Today*, FDA literature, or on YouTube? If so, please (1) describe the research and (2) state whether, following the research, Central Jersey Orthopedics Specialists, P.C. purchased medications from NECC.

21. To the best of your knowledge, did any of Central Jersey Orthopedics Specialists, P.C.'s patients experience an injury as a result of Central Jersey Orthopedics Specialists, P.C.'s purchase, and use, of medications from NECC which were administered to Central Jersey Orthopedics Specialists, P.C.'s patients?

Respectfully submitted,

**Blumberg & Wolk, LLC**
158 Delaware Street
P.O. Box 68
Woodbury New Jersey 08096
(856) 848-7472
cwolk@blumberglawoffices.com

/s/ Christopher M. Wolk
Christopher M. Wolk, Esq.

Attorneys for Premier Orthopaedic and Sports Medicine Associates of Southern New Jersey, LLC, trading as Premier Orthopaedic Associates, Premier Orthopaedic Associates Surgical Center, LLC, Kimberly Yvette Smith, M.D., a/k/a Kimberly Yvette Smith-Martin, M.D., Thomas Dwyer, M.D., Richard C. DiVerniero, M.D., and Richard Strauss, M.D.

## CERTIFICATION

I certify that in submitting this *DEPOSITION BY WRITTEN QUESTIONS*, I caused a copy of the above to be filed electronically via the Court's electronic filing system. Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's System, and notice of these filings will be sent to these parties by operation of the Court's electronic filing system. A copy of the document will also be served by U.S. Mail and Hand Delivery to Central Jersey Orthopedics Specialists, PC, 1907 Park Avenue, Suite 102, South Plainfield, NJ 07080

Dated: October 12, 2015

/s/ Christopher M. Wolk
Christopher M. Wolk, Esq.