**Blumberg & Wolk, LLC**
158 Delaware Street
P.O. Box 68
Woodbury, NJ 08096
(856) 848-7472

*Counsel for Defendants Premier Orthopaedic and Sports Medicine Associates of Southern New Jersey, LLC, trading as Premier Orthopaedic Associates, Premier Orthopaedic Associates Surgical Center, LLC, Kimberly Yvette Smith, M.D., a/k/a Kimberly Yvette Smith-Martin, M.D., Thomas Dwyer, M.D., Rhaul Shah, M.D., John Catalano, M.D., Richard C. DiVerniero, M.D., and Richard Strauss, M.D.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | |
| THIS DOCUMENT RELATES TO:<br><br>ALL CASES | MDL No. 2419<br>Docket No. 1:13-md-2419 (RWZ) |

---

**PREMIER ORTHOPAEDIC AND SPORTS MEDICINE ASSOCIATES OF SOUTHERN NEW JERSEY, LLC, ET AL'S OPPOSITION TO THE PLAINTIFF STEERING COMMITTEE'S MOTION FOR PROTECTIVE ORDER REGARDING PREMIER'S NOTICES OF DEPOSITION BY WRITTEN QUESTION**

---

**TABLE OF CONTENTS**


I. INTRODUCTION . . . . . 1

II. BACKGROUND . . . . . 1

III. STANDARD OF REVIEW . . . . . 2

IV. LEGAL ARGUMENT . . . . . 2

A. **The PSC's Alleged Harm is General and Speculative** . . . . . 3

B. **The Instant Circumstances are Distinguishable from *Mill Run* on the Facts** . . . . . 4

C. **The Premier Defendants Seek Depositions of Multiple Non-Party Entities** . . . . . 5

D. **Depositions by Written Question are the Least Burdensome Means to Elicit the Information at Issue** . . . . . 6

i. **Premier Defendants Wish to Elicit a Narrow Scope of Information From a Broad Range of Sources** . . . . . 6

ii. **Under Rule 26 the Court May Move to Protect a Party From "Undue Burden or Expense"** . . . . . 7

E. **Depositions by Written Question Do Not Prejudice the PSC** . . . . . 8

V. CONCLUSION . . . . . 10

## TABLE OF CASES

Anderson v. Cryovac, Inc., 805 F.2d 1 (1st Cir. 1986) . . . . . . . . . . **2**

Mill-Run Tours, Inc. v. Khashoggi, 124 F.R.D. 547 (S.D.N.Y. 1989) . . . . . . . . . . **4, 5, 6, 7**

Oxford Indus., Inc. v. Luminco, Inc., No. CIV.A. 86-6417, 1990 WL 181488, at *2 (E.D. Pa. Nov. 19, 1990) . . . . . . . . . . **9**

Pansy v. Borough of Stroudsburg, 23 F.3d 772 (3rd Cir.1994) . . . . . . . . . . **2, 3**

United States v. Bulger, 283 F.R.D. 46 (D. Mass. 2012) . . . . . . . . . . **2**

United States v. Wecht, 484 F.3d 194 (3rd Cir.2007) . . . . . . . . . . **2**

Vareltzis v. Luckenbach S S Co, 20 F.R.D. 383 (1956) . . . . . . . . . . **5**

Winbourne v. Eastern Air Lines, Inc., 632 F.2d 219, 226 (2d Cir.1980) . . . . . . . . . . **9**

## RULES

Federal Rule of Civil Procedure 26(c)(1) . . . . . . . . . . **2, 7**

Federal Rule of Civil Procedure 31(a)(5) . . . . . . . . . . **4, 8**

Federal Rule of Civil Procedure 31(a)(2)(A)(i) . . . . . . . . . . **8**

**ECF**

**Dkt. No.**

**2319.** "NOTICE by Box Hill Surgery Center, LLC of Filing of Notices of Deposition by Written Questions (Attachments: Exhibits 1 – 10)" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1, 8**

**2333.** "NOTICE by Premier Orthopaedic And Sports Medicine Associates Of Southern New Jersey, LLC, Premier Orthopaedic Associates Surgical Center, LLC (Attachments: Exhibits 1 – 2)" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1**

**2352.** "MOTION to Seal PLAINTIFFS STEERING COMMITTEES MOTION TO FILE UNDER SEAL ITS MOTION FOR A PROTECTIVE ORDER REGARDING THE BOX HILL DEFENDANTS NOTICES OF DEPOSITION BY WRITTEN QUESTION" . . . . **1, 8**

**2353.** "MOTION for Protective Order PLAINTIFFS STEERING COMMITTEES MOTION FOR A PROTECTIVE ORDER REGARDING THE BOX HILL DEFENDANTS NOTICES OF DEPOSITION BY WRITTEN QUESTION (Attachments: Exhibits 1 – 5)" . . . . . . . . . **1, 8**

**2372.** "MOTION for Protective Order PSCS MOTION FOR A PROTECTIVE ORDER REGARDING PREMIER ORTHOPAEDIC AND SPORTS MEDICINE ASSOCIATES OF SOUTHERN NEW JERSEY, LLCS NOTICES OF DEPOSITION BY WRITTEN QUESTION (Attachments: Exhibit 1)" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1, 2**

**2374.** "MEMORANDUM in Support re 2372 MOTION for Protective Order PSCS MOTION FOR A PROTECTIVE ORDER REGARDING PREMIER ORTHOPAEDIC AND SPORTS MEDICINE ASSOCIATES OF SOUTHERN NEW JERSEY, LLCS NOTICES OF DEPOSITION BY WRITTEN QUESTION (Attachments: Exhibit A)" . . . . . . . . . . . . **1, 2, 3**

**2376.** "NOTICE by Premier Orthopaedic And Sports Medicine Associates Of Southern New Jersey, LLC, Premier Orthopaedic Associates Surgical Center, LLC, Kimberly Yvette Smith, MD OF CANCELLATION OF DEPOSITION AND WITHDRAWAL OF SUBPOENA" . . **1**

## I. INTRODUCTION

Defendants Premier Orthopaedic and Sports Medicine Associates of Southern New Jersey, LLC, trading as Premier Orthopaedic Associates, Premier Orthopaedic Associates Surgical Center, LLC, Kimberly Yvette Smith, M.D., a/k/a Kimberly Yvette Smith-Martin, M.D., Thomas Dwyer, M.D., Richard C. DiVerniero, M.D., and Richard Strauss, M.D. (collectively, "Premier Defendants") hereby oppose and respectfully request that the Court deny the Plaintiff Steering Committee's ("PSC") Motion in Response to the Premier Defendants' Notice of Deposition by Written Question. (See Dkt. Nos. 2372, 2374.)

## II. BACKGROUND

In 2012, the New England Compounding Pharmacy, d/b/a New England Compounding Company ("NECC"), distributed tainted methylprednisolone acetate ("MPA"), resulting in a nationwide fungal meningitis outbreak. In response, plaintiffs filed hundreds of lawsuits in jurisdictions across the nation which the Judicial Panel on Multidistrict Litigation ("JPML") consolidated into a multi-district litigation ("MDL") located in Boston, MA.

In the course of this litigation, the Box Hill Defendants noticed ten non-party entities for Depositions by Written Question on October 12, 2015. (See Dkt. No. 2319.) These questions centered around the due diligence performed by these entities in the course of their decision to purchase from NECC. (See Dkt. No. 2319.) The PSC opposed, requesting oral deposition. (See Dkt. No. 2352, 2353.)

On October 15, 2015 the Premier Defendants noticed and subpoena'd the Depositions by Written Question of ten non-party entities which had purchased MPA from NECC prior to the outbreak. (See Dkt. No. 2333.) The Premier Defendants requested information about the due diligence conducted by these entities which formed the informational basis for their decision to purchase MPA from NECC. One entity could not be served as it had been replaced by a new organization in the interim; accordingly, the Premier Defendants withdrew that subpoena. (See Dkt. No. 2376.) One entity refused service; another entity's service was delayed. Currently the

Premier Defendants have confirmation that seven entities were served and are in communication with several of such which have indicated cooperation with the subpoena and deposition by written question.

On October 29, 2015 the PSC filed its Motion for Protective Order and supportive Memorandum to request that the noticed depositions take place in oral rather than written format. (See Dkt. Nos. 2372, 2374.) The Premier Defendants sent letters to all entities requesting that they hold their responses to the Deposition by Written Question until the Court decides on the instant Motion, and directly respond to the PSC's motion herein.

## III. STANDARD OF REVIEW

"For good cause," a court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. Pro. 26(c)(1). "Good cause … requires a particularized, specific showing" and is not supported by "broad allegations of harm, unsubstantiated by specific examples or articulated reasoning." United States v. Bulger, 283 F.R.D. 46, 52 (D. Mass. 2012) (first quote citing United States v. Wecht, 484 F.3d 194, 211 (3rd Cir.2007) & (second quote citing Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786 (3rd Cir.1994)). "A particular factual demonstration of harm" is required, "not conclusory statements." Bulger, 283 F.R.D. at 52 (quoting Anderson v. Cryovac, Inc., 805 F.2d 1, 7 (1st Cir. 1986)). Generally, "the nature of the showing of particularity … depends upon the nature or type of protective order at issue." Bulger, 283 F.R.D. at 52.

## IV. LEGAL ARGUMENT

The PSC does not demonstrate sufficient good cause to support a motion for Protective Order. Their allegations that the written question format will result in prejudice to them are generalized and vague. The PSC's implication that there is no workaround that would allow them to sufficiently probe the noticed entities via written cross-examination disregards the

flexibility in Rule 31; the PSC also incorrectly implies that the deposition by written question would absolutely preclude them from later oral deposition if necessary.

**A. <u>The PSC's Alleged Harm is General and Speculative</u>**

Good cause necessitates more than "conclusory statements," and requires "articulated reasoning" as to the potential harm against which the movant seeks to protect himself. Id. When deciding whether to grant the protective order, "the court must balance the requesting party's need…against the injury that might result." Pansy, 23 F.3d at 787. "The burden of justifying [that need]" as to "each and every [entity] sought to be covered by a protective order remains on the party seeking the order." Pansy, 23 F.3d at 786-87 (holding that a party seeking a confidentiality order as to certain documents had the burden of proving the necessity for protection as to each and every document).

While the PSC has indicated only a single instance[1] in which they claim the necessity of "probing followup" questions during the course of an interrogatory, they have not indicated as to each and every entity noticed by the Premier Defendants a specific reason why that entity's deposition by written question will prejudice the Plaintiffs. Their claim is instead generalized to the necessity of "probing followup" in all instances. It does not follow that the unique circumstances surrounding inquiry into the Brigham & Women's investigation of NECC referenced by the PSC are applicable to all noticed entities. In that situation, the PSC was aware in advance that Brigham & Women's had conducted an investigation into NECC, as such was reflected in some of the Brigham & Women's discovery documentation available on the online

[1] On November 2, 2015 the Premier Defendants requested from the PSC an unredacted copy of their Memorandum in Support of Motion for Protective Order, (Dkt. No. 2374) and did not receive a response prior to filing this Opposition.

Repository from at least June 20, 2014,[2] a year in advance of Frank McAteer's June 3, 2015 deposition.

**B. The Instant Circumstances are Distinguishable from *Mill Run* on the Facts**

The mainstay of the PSC's argument is emphasis on the differences between written depositions and oral depositions articulated in Mill-Run Tours, Inc. v. Khashoggi, 124 F.R.D. 547, 548-49 (S.D.N.Y. 1989). Mill Run outlines three "reasons oral depositions should not be routinely replaced by written questions." Ibid. In Mill Run, the plaintiff sought the depositions of the named defendants to the case; the defendants refused and attempted to substitute deposition by written question for their failure to appear. Id. at 549. There were also hints that at least some of the defendants' claimed reason for their failure to appear – namely, residence in foreign countries – was overstated. Id. at 551.

In contrast, the Premier Defendants seek the depositions by written question to non-parties of this litigation, to achieve the simultaneous goals of information-gathering and minimizing the burden on all parties and non-parties involved. These distinctions have a significant effect on the analysis of the Mill Run factors, which as a result are largely inapplicable in the instant circumstances. First, the Mill Run court indicated that "probing followup questions" are usually necessitated in the deposition of a named party to the litigation. Id. at 549. The PSC's main objection to the written format is that their submission of follow-up questions will not be sufficiently probative without answers to the initial depositions questions. However, the Premier Defendants have set a deadline for the entities' responses to these initial questions; and the Federal Rules allow the Court to adjust the time periods for submission of cross, re-direct, and re-cross questions. Fed. R. Civ. Pro. 31(a)(5). There is no prohibition against the PSC requesting that the Court extend the deadline to submit cross-examination questions

[2] BW_0000116; BW_0000118 - BW_0000126; BW_0000120; BW_0000136 - BW_0000147.

until after the deadline set by the Premier Defendants for these entities' responses. Such would allow the PSC sufficient ability to probe the exact responses given.

Second, the 2nd Circuit opines that "credibility [of the witness] in anticipation of trial" cannot be assessed without oral deposition. Mill Run, 124 F.R.D. at 549. Where the witness is a party or an expert, an in-person preview of such individual's credibility in advance of trial is valuable. However, the noticed entities in this instance are non-parties otherwise completely uninvolved in the litigation. Verification of these entities' credibility is satisfied by their oath to respond truthfully to the questions.

The third objection to written discovery is the claim that the written format is "likely to generate additional discovery disputes" due to the probable involvement of the deponent's counsel in formulating the answers. Id. This factor also has little weight when the deponent is a non-party. While there may be some equivocation by counsel acting to protect their clients, the noticed non-parties do not have any special motivation to engage in the evasive tactics which result in the type of discovery disputes contemplated here. Moreover, the Premier Defendants have already received communication from some entities indicating their intent to respond to the written questions.

**C. The Premier Defendants Seek Depositions of Multiple Non-Party Entities**

The PSC's opinion that Vareltzis v. Luckenbach S S Co, 20 F.R.D. 383 (1956) is "directly on point" ignores the range of entities noticed by the Premier Defendants and the collective burden imposed by requiring so many additional oral depositions. Even though Vareltzis ruled on the matter of a non-party deponent, the court in that instance weighed the request for written questions against a single individual in a different jurisdiction than the litigation; not nine business entities located in multiple states, all of which are in different

jurisdictions than this consolidated MDL. When combined with the PSC's similar motion against the Box Hill Defendants' notice of depositions by written question, the PSC is requesting that this court convert almost twenty depositions by written question into oral depositions.

### D. Depositions by Written Question are the Least Burdensome Means to Elicit the Information at Issue

In certain circumstances, "depositions by written question are appropriate," such as when "the issues to be addressed by the witness are narrow and straightforward and the hardships of taking an oral deposition would be substantial." Mill-Run, 124 F.R.D. at 549.

#### i. Premier Defendants Wish to Elicit a Narrow Scope of Information From a Broad Range of Sources

The Premier Defendants' goal in noticing the Depositions by Written Question of nine entities in New Jersey and elsewhere in the nation is to gather targeted information as to the due diligence conducted by other NECC customers who purchased MPA. The questions submitted to these entities are worded to focus narrowly on this issue and no other, and gather as much information as possible. Thus, while this MDL is convoluted and the litigation surrounding the fungal meningitis outbreak is complex, the Premier Defendants seek only to discover the informational basis on which multiple other similarly situated entities made the determination to purchase from NECC.

Additionally, while some of the questions submitted do have multiple parts, they are not as complicated as the PSC represents. The questions are individually formulated to simply inquire about a distinct aspect of the due diligence process, or an action which plaintiffs allege is part of due diligence; based upon the answer, any subparts to the question may not even require elaboration by the deponent. Collectively, the questions are structured to attempt to obtain the

most information possible about a single topic. The Premier Defendants submitted to each entity fewer questions than are contained in a standard interrogatory.

Furthermore, the Premier Defendants assert that their actions and due diligence in deciding to purchase from NECC were adequate and within the standard of care. Based on review of their own due diligence, the Premier Defendants fully anticipate that all of the entities' responses will not include a detailed description of pharmacy audits – as was the case with Brigham & Women's Hospital. Therefore the need for "probing followup" will be limited, if it exists at all. Id. The Premier Defendants predict that many of the follow-up subparts to questions (such as whether the entity conducted an in-person investigation of NECC and the results of said investigation) will go unanswered because the action about which the question inquires was not required by the standard of care.

**ii. Under Rule 26 the Court May Move to Protect a Party From "Undue Burden or Expense"**

The PSC asserts that the Standard of Review for this issue is guided by Federal Rule of Civil Procedure 26(c)(1), which allows the Court to move to protect a party from "undue burden or expense," among others. Fed. R. Civ. Pro. 26(c)(1). In the next breath, the PSC proposes that the Court take an action that will subject the non-party entities and the Premier Defendants to the same undue burden and expense the Rule is structured to aid the Court in avoiding. Additionally, the PSC claims the Court's failure to do so will result in "almost certain delays." This statement is inaccurate.

While the information that the Premier Defendants seek to elicit is narrowly focused on a single topic, the range of entities the Premier Defendants seek to poll is wide. The Premier Defendants attempted service on ten entities – the maximum number allowable under Rule 31

without leave of the Court. Fed. R. Civ. Pro. 31(a)(2)(A)(i). All individuals are non-parties and have not otherwise been involved in this litigation at all.

In these circumstances, deposition by written question is the least burdensome, least expensive, and most time-effective means to obtain the information sought regarding these entities' due diligence in deciding to purchase from NECC. There is no risk that these proceedings will cause a delay in litigation, as the Premier Defendants set a deadline for the entities' response and the Federal Rules of Civil Procedure set out guidelines as to the parties' submission of cross, re-direct, and re-cross questions. Fed. R. Civ. Pro. 31(a)(5).

The Premier Defendants have heard back from several of the noticed entities indicating their receipt, cooperation, and that they intend to answer rather than oppose the subpoenas; thus far only one entity has refused service.[3] Such cooperation will likely vanish if the requests made of these entities become more onerous – as by requiring oral deposition rather than allowing written responses. Fighting the inevitable legal pushback from non-parties subject to burdensome demands by the PSC, and the subsequent scheduling of oral depositions once that pushback is resolved in each individual entity's case, is more likely to result in delays to this litigation than obtaining written responses by a set deadline. Even should the PSC engage in the deposition by written question format and then desire further information from one or two entities by oral deposition, such added expenditure of time and expense would still be less burdensome and expensive than oral depositions of all entities.

Additionally, on October 12, 2015 the Box Hill Defendants provided Notice to the Court of their own subpoenas and depositions by written question to an additional ten former NECC Customers on the same topic. (See Dkt. No. 2319.) The PSC similarly opposed and requested oral deposition. (See Dkt. Nos. 2352, 2353.) Therefore in sum, the PSC is requesting that this

[3] UCSF Medical Center, located at 350 Parnassus Ave., Ste. 507 San Francisco, CA 94143.

court require almost twenty additional oral depositions of non-parties to this matter; a proposition that cannot but incur significant costs in time and money to all with the requirements of setting a location and time and providing for the involvement/attendance of dozens of attorneys on all sides.

**E. Depositions by Written Question Do Not Prejudice the PSC**

When oral depositions "would entail substantial … inconvenience and financial expense," a compromise where written depositions are taken and the cross-examining party has the freedom to subsequently approach the bench for relief if the "answers received prove inadequate" is "eminently reasonable." Winbourne v. Eastern Air Lines, Inc., 632 F.2d 219, 226 (2d Cir.1980). The 3rd Circuit has also recommended this course of taking a written deposition "to avoid expense and burden," followed by oral deposition if "necessary." Oxford Indus., Inc. v. Luminco, Inc., No. CIV.A. 86-6417, 1990 WL 181488, at *2 (E.D. Pa. Nov. 19, 1990). A similar compromise is appropriate in this instance.

The PSC's current assertion of possible prejudice is vague and improbable. Such does not at this time constitute sufficient good cause to outweigh the certain burden and expense in time and finances, with little likely justification in terms of information which could not be elicited otherwise, which will accrue from oral depositions of nine non-party entities.

## V. CONCLUSION

For the foregoing reasons, the Premier Defendants respectfully request that the Court deny the PSC's request that the Premier Defendants' noticed Depositions by Written Question occur orally.

Dated: November 4, 2015

Respectfully submitted,

/s/ Christopher M. Wolk
Christoper M. Wolk, Esq.

**Blumberg & Wolk, LLC**
158 Delaware Street
P.O. Box 68
Woodbury, NJ 08096
(856) 848-7472

*Counsel for the Premier Defendants*

CERTIFICATION

I certify that in submitting this *Memorandum*, I caused a copy of the above to be filed electronically via the Court's electronic filing system. Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's System, and notice of these filings will be sent to these parties by operation of the Court's electronic filing system.

Dated: November 4, 2015

Respectfully submitted,

/s/ Christopher M. Wolk
Christoper M. Wolk, Esq.

**Blumberg & Wolk, LLC**
158 Delaware Street
P.O. Box 68
Woodbury, NJ 08096
(856) 848-7472

*Counsel for the Premier Defendants*

1990 WL 181488
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

OXFORD INDUSTRIES, INC.
v.
LUMINCO, INC., and Il Chin Electric Equipment Company, Ltd. and Cheil Electric Wiring Devices Company, Ltd.

Civ. A. No. 86–6417. | Nov. 19, 1990.

**Attorneys and Law Firms**

Howard A. Finkelman, Bock and Finkelman, Harris T. Bock, Philadelphia, Pa., for plaintiff.

James W. Sutton, Jr., Sutton and Associates, P.C., Feasterville, Pa., William T. Hangley, Gail M. Burgess, Philadelphia, Pa., for Luminco, Inc.

Ira P. Tiger, Gregg Vance Fallick, Schnader Harrison Segal & Lewis, Philadelphia, Pa., for Il Chin Electric Equipment Co., Ltd.

***MEMORANDUM AND ORDER***

VANARTSDALEN, Senior District Judge.

***1** This is a discovery dispute. Defendant Il Shin Electric Equipment Co., Ltd. (Il Shin) has filed a motion seeking a protective order prohibiting the plaintiff, Oxford Industries, Inc. (Oxford) from deposing Il Shin's president, H.R. Cho, in Philadelphia. Il Shin also objects to certain portions of Oxford's document production request served on Mr. Cho's counsel along with the Notice of Deposition. I will address these issues separately.

***I. The Cho Deposition***

Mr. Cho is a citizen and resident of Korea. Cho Affidavit at ¶ 4. Il Shin is a Korean company, and the principal place of business of Il Shin and Mr. Cho is Korea. Cho Affidavit at ¶¶ 2–3. Oxford has served a Notice of Deposition on Il Shin's counsel calling for the oral deposition of Mr. Cho to be taken in Philadelphia, Pennsylvania on October 29, 1990. Il Shin objects to this deposition on the grounds that "it would be a great imposition on [Mr Cho] and [his] company" if he is required to travel to Philadelphia for his deposition. Cho Affidavit at ¶ 6. According to Mr. Cho, he has no plans to be in Philadelphia or in the United States on the scheduled deposition date or any time in the near future. Id. He further alleges that his "absence from [his] place of business ... on a trip that would have nothing to do with the generation of business for [his] company—would be disruptive of [his] company's operations and costly [to his] company." *Id.*

As a general rule, " 'the deposition of a corporation by its agents and officers should ordinarily be taken at its principal place of business,' especially when, as in this case, the corporation is the defendant." *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir.1979) (quoting 8 C. Wright & A. Miller, Federal Practice and Procedure, § 2112 at 410 (1970)). An objection by a corporate defendant to a deposition at some place other than its principal place of business should generally be sustained, absent a showing of "unusual circumstances which justify such an inconvenience to the corporation." *Zuckert v. Berkliff Corp.*, 96 F.R.D. 161, 162 (N.D.Ill.1982). This rule is based on a general belief that plaintiffs have brought the lawsuit and chosen the forum, and therefore, should not complain if they are required to take discovery at great distances from the forum. *Farquhar v. Shelden*, 116 F.R.D. 70, 72 (E.D.Mich.1987).

In the instant case, there has been no showing of special circumstances that would require a departure from the general rule. Oxford argues that due to the existence of Il Shin subsidiaries in the United States, Mr. Cho is not "completely without reason to visit the United States for business reasons." Memorandum of Law in Support of Plaintiff's Response to Il Shin's Motion for Protective Order at 2. Oxford also points to the "burdensome expense on plaintiff to conduct the deposition in Korea" and "the tight discovery schedule" as reasons for requiring the deposition to be held in Philadelphia. *Id.* None of these reasons, however, constitute special circumstances. The fact that Mr. Cho may have some conceivable reason for visiting the United States does not mean that he should be required to do so. Moreover, as was noted above, it is the plaintiff who decided to bring the action in this forum. As to the discovery schedule, it can be extended by a reasonable time upon agreement by the parties or application to the court.

***2** In order to avoid the expense and burden of travelling to Korea to take Mr. Cho's deposition, it is suggested that plaintiff proceed by taking Mr. Cho's deposition upon written questions, pursuant to Fed.R.Civ.P. 31. If, after such a procedure, plaintiff still deems it necessary to take

Mr. Cho's oral deposition, he will be ordered to appear in Philadelphia for oral deposition at least one week prior to the commencement of trial.

***II. The Document Production Request***

Oxford's Notice of Deposition also contained a request for production of documents. Il Shin has raised several objections to Oxford's document requests. I shall consider these objections in turn.

Il Shin's first objection is that the document request was served on October 9 and called for production of documents on October 29. Under Fed.R.Civ.P. 34(b) a party upon whom a document request is served has 30 days in which to respond. Il Shin argues that because Oxford's request only allowed 20 days for response, the request should be stricken. While it is true that the request did not allow for a sufficient period in which to respond, such a defect does not necessitate striking the request. Il Shin shall instead be required to respond to the document production request within 30 days of the date of the order accompanying this memorandum, subject to the limitations discussed below.

Il Shin argues that many of the paragraphs of the document request call for documents over too broad a time period or contain no time limits at all. These objections are well taken. It is clear from the complaint that Oxford's claims are based on activities that allegedly occurred between October of 1983 and the filing of the complaint in November of 1986. All the document requests shall therefore be limited to that period.

Il Shin also objects to numerous paragraphs on the grounds of relevancy. Several of the requests relate solely to information relevant to Oxford's default judgement against Il Shin. That default judgement has been vacated, and Oxford's request for discovery concerning the default judgment has been denied. Memorandum and Order of September 18, 1990. All of Oxford's document requests relating to the default judgment are therefore irrelevant. Accordingly, Il Shin shall not be required to respond to paragraphs 8, 9, 10, 12, and 13 of the document request.

Several other paragraphs, although not clearly aimed at the default judgement issue, are also of questionable relevance. Paragraph 11 asks for all documents relating to the extent of business that each of Il Shin's subsidiaries has done in the United States during the last ten years. Oxford has raised no claims against any Il Shin subsidiaries, nor does the complaint suggest any involvement by Il Shin subsidiaries in the allegedly wrongful activities underlying this lawsuit. Il Shin shall therefore not be required to respond to paragraph 11.

Similarly, paragraphs 17 and 18 also involve irrelevant requests relating to Il Shin subsidiaries. Paragraph 17 asks for all documents reflecting the names and addresses of the members of the Boards of Directors of each of the subsidiaries of Il Shin during the last ten years. As was noted above, there are no allegations concerning the subsidiaries, and therefore, Il Shin shall not be required to respond to this request. Paragraph 18 asks for a customer list of Il Shin and its subsidiaries for the past ten years. Once again, this request shall be limited to Il Shin only and not its subsidiaries. It shall also be limited to the relevant time period discussed above: October of 1983 to November of 1986.

*3 Paragraphs 19 and 20 also go beyond the scope of relevancy. Paragraph 19 asks for all documents relating to communications between Il Shin and its United States customers for the last five years, including "telephone bills that embody, record, refer to, reflect or mention telephone calls, fax and/or telex communications." Paragraph 20 seeks "[a]ll documents that embody, record, refer to, reflect or mention shipments of products by [Il Shin] to the United States, either in direct sales or on a brokerage or manufacturer's representative basis for the last ten years." While shipments of products to the United States are concededly relevant to Oxford's claims, these requests are overbroad. Paragraphs 19 and 20 shall be therefore be limited to communications concerning the shipment of products by Il Shin from October of 1983 until November of 1986.

Il Shin's relevancy objections to paragraphs 21 and 23 shall also be sustained. Paragraph 21 asks for "[c]opies of all applications filed for UL listing on behalf of [Il Shin] in the United States for the last ten years." Paragraph 23 asks for all documents relating to trips taken by Mr. Cho and/or any other representatives of Il Shin to the United States for the last ten years. Il Shin argues that the documents called for in these requests have no bearing on any of Oxford's claims or Il Shin's defenses, an argument which Oxford does not dispute. It is clear that these requests are unrelated to the merits of the case and therefore the documents they request need not be produced.

Il Shin has also objected to paragraphs 2, 3 and 7 as calling for information that does not relate to the claims and defenses at issue in this case. Paragraphs 2 and 3 request documents

relating to communications between Il Shin, Luminco, Inc. and Cheil Electric Wiring Devices Company, Ltd. from 1984 to the present. Paragraph 7 seeks documents relating to communications between Il Shin and "those customers with respect to whom Oxford Industries is asserting claims in this case from 1984 to present." I do not agree with Il Shin that these communications are not relevant to the merits of this case, as Oxford is alleging the existence of a conspiracy or conspiracies between these parties. Communications between them are obviously necessary to prove the existence of a conspiracy. Oxford is also alleging that Il Shin wrongfully sold to Oxfords's customers, thus communications between Il Shin and Oxford customers are also relevant. I note once again, however, that the time period encompassed by these requests is too broad. Il Shin will therefore be required to comply with these requests, but only for the time period from October of 1983 to November of 1986.

Il Shin has also objected to paragraph 7 on the grounds that it is incapable of response. The request asks for the production of documents relating to communications between Il Shin and "those customers with respect to whom Oxford Industries, Inc. is asserting claims in this case." However, Oxford has not specified who those customers are. Unless Oxford specifies which customers the request is referring to, Il Shin shall not be required to respond to paragraph 7.

***4** Finally, Il Shin has objected to several paragraphs on the grounds that they seek to delve into confidential commercial information. These concerns can be addressed by an order requiring that all documents be used only for purposes of this litigation and that they be returned upon completion of the litigation.

An order follows.

## *ORDER*

For the reasons stated in the foregoing memorandum, and after giving due consideration to the motions and briefs filed by the parties in this matter, it is hereby ORDERED:

1. Plaintiff is prohibited from taking the deposition of H.R. Cho in Philadelphia at this time. Plaintiff may proceed by taking H.R. Cho's deposition upon written questions pursuant to Fed.R.Civ.P. 31. If, after undertaking such a procedure, plaintiff deems it necessary to take H.R. Cho's oral deposition, upon application to the court, H.R. Cho shall be ordered to appear in Philadelphia not less than one week before commencement of trial for oral deposition.

2. Defendant shall respond to plaintiff's request for production of documents within thirty (30) days of the date of this order.

3. Plaintiff shall be precluded from seeking production on the documents specified in the following paragraphs of the Notice of Deposition: 8, 9, 10, 11, 12, 13, 17, 21 and 23.

4. The remaining paragraphs of the Notice of Deposition shall be limited in accordance with the foregoing memorandum.

5. All documents produced pursuant to plaintiff's request for production of documents shall be used only for purposes of this litigation, and shall be promptly returned upon completion of this litigation.

**All Citations**

Not Reported in F.Supp., 1990 WL 181488

End of Document © 2015 Thomson Reuters. No claim to original U.S. Government Works.