UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | ) ) ) | |
| _____ | ) ) | MDL No. 2419 Dkt. No 1:13-md-2419 (RWZ) |
| THIS DOCUMENT RELATES TO: | ) ) ) | |
| *Simas v. Abdul R. Barakat, M.D., and Ocean State Pain Management, P.C.* 1:13-cv-10943-RWZ | ) ) ) ) | |

## MOTION OF THE DEFENDANTS, ABDUL R. BARAKAT, M.D., AND OCEAN STATE PAIN MANAGEMENT, P.C., TO DISMISS PRODUCT LIABILITY AND CONSUMER PROTECTION CLAIMS OF THE PLAINTIFFS

Now come the Defendants, Abdul R. Barakat, M.D., and Ocean State Pain Management,

P.C., in United States District Court, District of Massachusetts, Civil Action No. 1:13-cv-10943-

RWZ, and respectfully request that this Honorable Court dismiss the Plaintiffs' product liability

claims pursuant to Fed. R. Civ. P. 12(b)(6) and Local Rule 7.1.  The Defendants aver that there

was no breach of the implied warranties of merchantability and/or fitness for a particular purpose

under Mass. Gen. Laws c. 106, §§ 2-314 and 2-315 because the Plaintiffs' claims do not arise out

of "transactions in goods."  The breach of warranty theory is not available where the

predominant factor, thrust, or purpose of the transaction is the rendition of service, with goods

only incidentally involved.  The Defendants also request that this Honorable Court dismiss the

Plaintiffs' consumer protection claims under Mass. Gen. Laws c. 93A, §§ 9 and 2(a) and  R.I.

Gen. Laws §§ 6-13.1 because the Defendants did not engage in any deceptive acts or practices

1

prohibited by the Massachusetts or Rhode Island Consumer Protection Statutes.  Grounds in support of this motion are set forth in the attached memorandum of law.

Respectfully submitted,

By their attorneys,

_____

SEAN CAPPLIS, ESQ.
BBO #634740
THOMAS M. DOLAN III, ESQ.
BBO #683042
**CAPPLIS, CONNORS, & CARROLL, P.C.**
18 Tremont Street, Suite 330
Boston, MA 02108
Tel: (617) 227-0722
Fax: (617) 227-0772
scapplis@ccclaw.org
tdolan@ccclaw.org

Dated:

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | ) ) ) ) | |
| _____ | ) ) | MDL No. 2419 Dkt. No 1:13-md-2419 (RWZ) |
| THIS DOCUMENT RELATES TO: | ) ) ) | |
| *Simas v. Abdul R. Barakat, M.D., and Ocean State Pain Management, P.C.* 1:13-cv-10943-RWZ | ) ) ) ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF THE DEFENDANTS, ABDUL R. BARAKAT, M.D., AND OCEAN STATE PAIN MANAGEMENT, P.C., TO DISMISS PRODUCT LIABILITY AND CONSUMER PROTECTION CLAIMS OF THE PLAINTIFFS**

Now come the Defendants, Abdul R. Barakat, M.D., and Ocean State Pain Management, P.C., in United States District Court, District of Massachusetts, Civil Action No. 1:13-cv-10943-RWZ, and respectfully request that this Honorable Court dismiss the Plaintiffs' product liability claims pursuant to Fed. R. Civ. P. 12(b)(6) and Local Rule 7.1. The Defendants aver that there was no breach of the implied warranties of merchantability and/or fitness for a particular purpose because the Plaintiffs' claims do not arise out of "transactions in goods." The Defendants also request that this Honorable Court dismiss the Plaintiffs' consumer protection claims because the Defendants did not engage in any deceptive acts or practices prohibited by the Massachusetts or Rhode Island Consumer Protection statutes. Grounds in support of this motion are set forth below.

## BACKGROUND

Over a number of years, New England Compounding Pharmacy, Inc., a/k/a New England Compounding Center (hereinafter "NECC"), supplied preservative-free Methylprednisolone Acetate (hereinafter "MPA"), a steroid used in pain medicine, to various physicians, pain clinics, hospitals, and other medical providers, including Ocean State Pain Management, P.C., and Abdul R. Barakat, M.D. (cumulatively, hereinafter "OSPM," or "the Defendants"). On or about September 26, 2012, a recall of that medication was issued out of concern for fungal contamination of the medication in three "lots" potentially provided to the Defendants. Litigation ensued and NECC was sued along with the Defendants and numerous other health care providers across the country. The litigation was consolidated through the Judicial Panel on Multi District Litigation in the District Court of Massachusetts, now before the Honorable Rya W. Zobel.

Dr. Barakat, a licensed physician board-certified in Anesthesiology and Pain Medicine, operated OSPM, an anesthesiology and pain medicine clinic with several facilities in Rhode Island, at the time of the product recall and subsequent meningitis outbreak. Contaminated medication from NECC was allegedly used at OSPM during the relevant time frame. Dr. Barakat was named in the Plaintiffs' suit as the physician who injected the medication into the patients during his procedures. The Defendants have no affiliation with NECC other than to order medications, which they believed to be safe based on various representations of the company and others. Hundreds of other health care providers across the country ordered and used the same medications from NECC.

The Plaintiffs alleged through a Complaint originally filed in Middlesex Superior Court (Massachusetts) that the Defendants failed to take due care in choosing the appropriate entity

2

from whom to obtain preservative-free MPA.  <u>See</u> Plaintiffs' First Complaint and Jury Demand,

attached hereto as Exhibit A.   The Plaintiffs alleged that this failure caused injury to the

Plaintiff, Craig Simas.  <u>Id.</u>  The moving defendants deny all allegations of negligence and any

and all other allegations of wrong-doing.  On or about October 24, 2014, the case was

subsequently removed and transferred to this MDL docket for In re: New England Compounding

Pharmacy, Inc., Products Liability Litigation, pursuant to a Conditional Transfer Order (Civil

Action No. 1:13-md-2419, Docket No. 1507).

The Defendants now move this court to dismiss the Plaintiffs' claims alleging product

liability and violations of consumer protection statutes since the Plaintiffs fail to state claims

upon which relief can be granted, pursuant to F.R.C.P. 12(b)(6).


**LEGAL ARGUMENT**

I.      <u>Standard of Review – F.R.C.P. 12(b)(6)</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  <u>Ashcroft</u> v. <u>Iqbal</u>, 556

U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp.</u> v. <u>Twombly</u>, 550 U.S. 544, 570 (2007)).

Plausibility "is not akin to a probability requirement, but [requires] more than a sheer possibility

that a defendant has acted wrongfully."  <u>Iqbal</u>, 556 U.S. at 678.  Thus, "[a] pleading that offers

'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' will not

do."  <u>Id.</u>  When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court accepts as

true all factual allegations contained in the complaint, but not legal conclusions.  <u>Id.</u>

II.    <u>Standard of Review - Breach of Implied Warranties of Merchantability and Fitness for a</u>
       <u>Particular Purpose and Consumer Protection Statutes</u>

Under Massachusetts law, there is no strict liability cause of action for a defective
product.  <u>Phillips</u> v. <u>Medtronic, Inc.</u>, 754 F.Supp.2d 211, 216 (2010) (citing <u>Commonwealth</u> v.
<u>Johnson Insulation</u>, 425 Mass. 650, 682 N.E.2d 1323, 1326 (1997)).  Such a claim must be
brought as a claim for breach of the implied warranties of merchantability and/or fitness for a
particular purpose under M.G.L. c. 106, §§2-314 and 2-315, or of an express warranty under § 2-
313.  <u>Id.</u>  Such claims must arise out of "transactions in goods" and not the provision of services.
<u>Phillips</u>, 754 F.Supp.2d at 216 (citing Mass. Gen. Laws c. 106, § 2-201).  The breach of warranty
theories are not available where "the predominant factor, thrust, or purpose" of the transaction is
the "rendition of service, with goods incidentally involved."  <u>Phillips</u>, 754 F.Supp.2d at 216;
<u>Mattoon</u> v. <u>City of Pittsfield</u>, 56 Mass.App.Ct. 124, 141 (2002) (quoting <u>Bonebrake</u> v. <u>Cox</u>, 499
F.2d 951, 960 (8th Cir. 1974)).  Additionally, a breach of warranty claim can only be brought
against a "seller" of goods.  <u>Phillips</u>, 754 F.Supp.2d at 216 (citing Mass. Gen. Laws c. 106, §§ 2-
313, 2-314, 2-315).

Section 9 of the Massachusetts Consumer Protection Statute provides for a civil remedy
to "any person…who has been injured by another person's use or employment of any method,
act or practice declared to be unlawful by section two [of this act]." M.G.L. c. 93A, § 9.  In turn,
Section 2 prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in
the conduct of any trade or commerce." <u>Id.</u>, § 2(a).  "Trade or commerce" includes "the sale…of
any services and…any trade or commerce directly or indirectly affecting the people of
[Massachusetts]." <u>Id.</u>, § 1(b).  Rhode Island's consumer protection statute contains the same

4

basic language.  See R.I. Gen. Laws §§ 6-13.1.

III.   The Plaintiffs' Breach of Warranty claims must be dismissed for failure to state claims upon which relief can be granted

The Plaintiffs allege that the Defendants breached the implied warranties that the MPA was of merchantable quality and/or fit for the particular purpose for which it was intended as required by Mass. Gen. Laws c. 106, §2-314 and/or §2-315.  See Plaintiffs' Second Amended Short Form Complaint, Civil Action No. 1:13-cv-10943-RWZ, Docket No. 17, at ¶¶ 16, 25.  The Plaintiffs allege that the Defendants breached the implied warranty of merchantability by selling and/or distributing the contaminated MPA which did not pass without objection in the trade, was not of fair average quality, and/or was not fit for the ordinary purposes for which such goods are used.  See id. at ¶¶ 17, 26.  The Complaint further states that the Defendants breached the implied warranty of fitness for a particular purpose by selling and/or distributing the contaminated MPA which was not fit for the uses and purposes intended by OSPM.  ¶¶ 18, 27. The Plaintiffs repeatedly aver that the Defendants were "sellers" of MPA.  See id. at ¶¶ 15, 17, 18, 24, 26, 27.

While the Defendants disagree that a sale of the product at issue ever occurred in these situations, it is immaterial to the consideration here.  Massachusetts law is clear that the breach of warranty theory is not available where "the predominant factor, thrust, or purpose" of the transaction is the "rendition of service, with goods incidentally involved."  Mattoon, 56 Mass.App.Ct. at 141.  In Mattoon, the court determined that the sale of water by a municipality did not equate to a sale of goods.  Id.  The court reasoned that the city did not create or manufacture the water, rather, it captured the water from brooks, streams, and rainfall, treated the

water, and distributed it to its citizens. See id. The city charged a sum for the water, but that rate also reflected the cost of storage, treatment, and distribution. Id. Therefore, the court stated that it was clear that the predominant factor, thrust, or purpose of the activity was the rendition of services and not the sale of goods. Id. at 141-142.

In the instant case, the Defendants did not create or manufacture the MPA, rather, it was ordered from NECC. The service (injection procedure) provided by Dr. Barakat was the predominant factor, thrust, or purpose of the transaction, and the medication itself was only incidentally involved. See id. The patient was not buying a medication product from OSPM to consume himself like a patient would when buying Tylenol. Mr. Simas was fully dependent on the skill and expertise of Dr. Barakat to inject the MPA into a specifically targeted portion of the back or neck using a large needle and fluoroscopic guidance. The procedure is highly complicated, and the patient is not capable of buying the product and performing the procedure himself. The Defendants were not engaged in the business of selling MPA separately for this purpose. Dr. Barakat examines and diagnoses patients and then performs an epidural steroid injection if the procedure is properly indicated. The injection procedure cannot be said to be anything other than the rendition of a service, specifically a "pain management" service, as stated in the defendant-clinic's trade name.

There is a dearth of case law in Massachusetts where a court permitted product liability claims to survive against a hospital or ambulatory surgery center where medication was incidentally involved in the rendition of a medical service. See Phillips, 754 F.Supp.2d at 216 (court weighing decisions from other jurisdictions in evaluating a product liability claim under Massachusetts law). In the majority of states, attempts to apply product liability principles to what would ordinarily be conventional malpractice actions against health-care providers have

been unsuccessful.  See, generally, Annotation, Liability of Hospital or Medical Practitioner under Doctrine of Strict Liability in Tort, or Breach of Warranty, for Harm Caused by Drug, Medical Instrument, or Similar Device used in Treating Patient, 65 A.L.R. 5th 357, 387-96 (1999).  Courts refer to the "essence of the transaction" test and policy considerations in finding that the provision of a medical instrument, drug, or prosthesis/implant was simply incidental to the essential business of medical treatment.  Id.  For patients who have sustained injuries from defective drugs, most courts have denied recovery against health-care providers in regard to both strict liability actions and breach of warranty claims, with only a few courts holding to the contrary.  See id.

Various federal courts have held that a hospital cannot be subject to strict liability because it is not a seller or distributor of medical devices.  See, Vergott v. Deseret Pharm. Co., 463 F.2d 12, 16 n. 5 (5th Cir. 1972) (holding that a hospital cannot be strictly liable under Texas law for a defective catheter because a hospital is "not a seller engaged in the business of selling the product."); Roell v. Stryker, No. 3:06-cv-443, 2007 WL 2783357, at *4 (S.D. Miss. Sept. 24, 2007) (holding that a hospital was fraudulently joined because it did not meet the definition of "seller" as defined by Mississippi's product liability statute or under the Uniform Commercial Code); Kavalir v. Medtronic, Inc., No. 07-0835, 2007 WL 1225358, at *3 (N.D.Ill. Apr. 19, 2007) (holding that the hospital was fraudulently joined because hospitals are not sellers of medical devices and, therefore, there was no basis in Illinois law to support the plaintiff's claims for strict liability and breach of implied warranty against the hospital); Pleasant v. Dow Corning Corp., No. 3:92-3180-7, 1993 WL 1156110, at *3 (D.S.C. Jan. 7, 1993) (citing numerous state and federal decisions to support its holding that "because hospitals are primarily engaged in the business of providing medical services, rather than selling products, strict liability should not be

imposed if the medical services involve the use of a product.").

Numerous state courts have also entered decisions supporting the Defendants' position, specifically with regard to the provision of medication.  In <u>Royer</u> v. <u>Catholic Medical Center</u>, the court stated, "[M]edical services are distinguished by factors which make them significantly different in kind from the retail marketing enterprise." 741 A.2d. 74, 78 (N.H. 1999).  The court continued, "[A] healthcare provider in the course of rendering healthcare services supplies a product, the healthcare provider is not engaged in the business of selling products for purposes of strict products liability." <u>Id.</u>; <u>see also</u> <u>Moss</u> v. <u>Dartmouth-Hitchcock Medical Center</u>, 2005 WL 3305010 at *2 (D.N.H. May 12, 2005) (dismissing strict liability claim pursuant to the holding from <u>Royer</u>); <u>Carmichael</u> v. <u>Reitz</u>, 17 Cal. App. 3d 958 (1971) (barring strict liability reasoning that doctors sell services as healers of illnesses, that they prescribe medicine only as chemical aids to cure such illnesses, and that physicians diagnosing and treating patients are normally not selling either products or insurance); <u>Osborn</u> v. <u>Kelley</u>, 61 A.D.2d 367 (1978) (dismissing breach of warranty claim in a case involving the prescription of an unsafe drug because there was no "sale" of the drug by the physicians, the drugs were furnished as an incidental part of the professional medical services rendered, and the physician was not in the position of a retailer); <u>Shivers</u> v. <u>Good Shepherd Hospital, Inc.</u>, 427 S.W.2d 104 (Tex. Civ. App. 1968) (dismissing warranty and strict liability claims against a hospital in a case involving a bacterially contaminated drug because the court had previously limited such claims to only the manufacturer or distributer of the product); <u>Dobisky</u> v. <u>Rand</u>, 670 N.Y.S.2d 606 (App. Div. 3d Dep't 1998) (holding that state did not recognize a cause of action in breach of warranty for the performance of services in a case involving injectable pain medication, and there was no evidence of an express promise by the defendant to cure the decedent or to accomplish some definite result).

In <u>Dove</u> v. <u>Ruff</u>, a physician-allergist prepared an injectable medication using his own combination of solutions and sold it to a minor's parents, whose child then suffered an anaphylactic reaction.  558 N.E.2d 836, 839-841 (1990).  Even in that instance, where the physician more closely resembled a compounder like NECC, the court granted summary judgment for the physician holding that the medication was not a product for purposes of strict liability under the state statute.  <u>Id.</u>  Furthermore, the fact that a separate charge was made on the bill for the medication did not make it a sale of medication as a separate transaction; the sale was simply incidental to the delivery of medical services.  <u>Id.</u>  The mixing and provision of medication equated to the "administration of a form of treatment" authorized by the state statute. <u>Id.</u>

The aforementioned cases represent the majority opinion held by courts across the country with respect to product liability claims against medical providers.  Even in the rare case that applies the opposite holding, the courts have been quick to overturn or distinguish the prior ruling.  In <u>Karibjanian</u> v. <u>Thomas Jefferson University Hospital</u> (applying Pennsylvania law), the court permitted the plaintiff to present evidence that the hospital was a seller of contrast medium during the patient's cerebral arteriography.  717 F.Supp. 1081 (E.D.Pa. 1989).  The court ruled in this manner despite noting the distinction in the Restatement (Second) of Torts, §402A, Cmt. (f) between suppliers of goods which also supply services and those suppliers who simply supply goods.  <u>Id.</u>  The court looked at the fact that the hospital owned an inventory of the substance which it kept until it supplied it to a patient via a physician, but the court ignored the fact that the substance was only provided in conjunction with medical services or procedures.  <u>See id.</u>  Not surprisingly, this holding was subsequently overruled by the Pennsylvania Supreme Court in <u>Cafazzo</u> v. <u>Central Medical Health Services, Inc.</u>, 542 Pa. 526 (1995).  The <u>Cafazzo</u> decision was

then applied by the Supreme Court of South Carolina in <u>In re Breast Implant Product Liability Litigation</u>, 331 S.C. 540 (1998).

Therefore, the mere fact that OSPM, along with the other defendants involved in this litigation, had a small inventory of MPA on its shelves at any given time should not be a persuasive factor in the court's decision. Accordingly, in keeping with the holdings of the aforementioned cases, the relevant Plaintiffs' allegations are clearly insufficient to support claims of breach of warranty against the Defendants and should be dismissed as a matter of law.

IV.   <u>The instant case is distinguishable from <i>Phillips</i> v. <i>Medtronic, Inc.</i></u>

The <u>Phillips</u> case involved a patient and her spouse filing claims against the manufacturer of intrathecal pain pumps and Brigham and Women's Hospital for negligence, breach of express and implied warranties, and unfair and deceptive practices in violation of the Massachusetts Consumer Protection Act. 754 F.Supp.2d at 213-215. The case turned on whether, under Massachusetts law, the hospital could be deemed a seller or distributor of goods rather than a provider of services in supplying the pumps as part of the plaintiff's treatment, such that the hospital could be held liable on a breach of warranty theory. <u>Id.</u> at 215-216. The case was decided under the extremely loose "any arguable reasonable basis" standard for fraudulent joinder. <u>Id.</u> at 217. Despite finding no Massachusetts authority on point, and despite citing to numerous state court decisions favoring the hospital-defendant's position, the court held that the plaintiff's warranty claims had a "reasonable basis" in the law, as it was plausible that the Massachusetts Supreme Judicial Court could adopt a rule holding the hospital to be a seller or distributor under the circumstances. <u>See</u> <u>id.</u>

The <u>Phillips</u> court acknowledged the "essence of the transaction" test employed in

10

Massachusetts, and reviewed other cases which correctly applied the test, yet oddly permitted the plaintiffs' product liability claims to survive. See id. at 216, 217 (citing Mattoon, 56 Mass.App.Ct. at 124). However, the court noted that its holding only applied to "medical devices" based on a small handful of state court cases. See id. at 217. The court also noted that the defendants had failed to cite to any case law in their favor. Id.

In the instant case, the plaintiffs should not be given the extreme benefit of the doubt under the tenuous holding of Phillips. The Defendants have cited to numerous state court cases supporting their position, especially with regard to the provision of medication. Furthermore, the instant case is distinguished by the fact that the product at issue is a medication, rather than a permanent surgical implant. See id. It is arguably possible for an intrathecal pain pump to be construed as a tangible good since it is permanently placed inside of a person's body. The system uses a small pump surgically inserted under the skin of the abdomen which regularly delivers medication through a catheter to the area around the spinal cord. The same argument cannot be made that a liquid medication like MPA is a permanent foreign body. Rather, patients have to return to OSPM to continue to benefit from the pain relief services offered by Dr. Barakat because of the impermanent nature of MPA. The medication is not administered autonomously through a pain pump, and the patient has no ability to independently inject the medication on his/her own. The provision of MPA is merely one pain relief service offered by OSPM, and it is up to the patient to determine whether the injection procedure results in a positive benefit.

The instant case is more similar to the facts of Mattoon, which was appropriately cited at the beginning of the Phillips opinion. 754 F.Supp.2d at 216 (citing 56 Mass.App.Ct. at 124). The provision of water was an ongoing service offered by the municipality, and its associated

11

price included the costs of storage, treatment, and distribution. <u>Mattoon</u>, 56 Mass.App.Ct. at

141. The case did not involve a permanent, tangible product, and the customers were not able to

independently store, treat, and distribute the product throughout their home and property. <u>See id.</u>

The provision of water was a service that required the expertise and faculties of the municipality

in the same way that the provision of MPA required the expertise and faculties of Dr. Barakat

and the employees of OSPM.

Accordingly, the ultimate holding of <u>Phillips</u> should not be applied to the instant fact

pattern. The case represents an attempt by the court to resolve the limited issue of product

liability in the context of implantable medical devices in a jurisdiction lacking a wealth of case

law on this subject.


V.     <u>The court should adhere to its prior ruling on the Motion to Dismiss filed by the "Box</u>
       <u>Hill Defendants"</u>

The court has already issued a ruling in another NECC MDL case in favor of the

Defendants' position. <u>See</u> MDL Case No. 1:13-md-2419 (RWZ), Docket Nos. 2225, 1642. On

September 8, 2015, the court ruled on a motion to dismiss filed by Maryland defendants, Box

Hill Surgery Centers, L.L.C., et al. (collectively the "Box Hill Defendants"). <u>Id.</u> The court held

that Maryland's theory of strict liability does not apply to the sale of goods combined with the

provision of medical services, when the provision of service predominates the sale of the good.

<u>See id.</u>, citing to <u>Phipps</u> v. <u>Gen. Motors Corp.</u>, 278 Md. 337, 344 (1976); <u>Burton</u> v. <u>Artery Co.</u>,

279 Md. 94, 109 (1977) ("whether [the contract's] predominant factor, [its] thrust, [its] purpose,

reasonably stated, is the rendition of service, with goods incidentally involved (e.g., contract with

artist for painting) or is a transaction of sale, with labor incidentally involved (e.g., installation of

a water heater in a bathroom)" determines the applicability of strict liability); <u>Roberts</u> v. <u>Suburban Hospital Assoc.</u>, 73 Md. App. 1 (1987).  The court held that the provision of MPA was part-and-parcel with the service of its injection – the only purpose of the visit was the injection itself, something only a physician with special skill could provide.  <u>See</u> Docket No. 2225 at 5; Docket No. 1642 at 10.

The Maryland and Massachusetts cases hinge upon the same legal analysis, and the Defendants contend that the same logic should be applied to the instant action.  Given that the court has already ruled that the provision of MPA was part-and-parcel with the service of its injection, then the court only has to apply the Massachusetts standard of review outlined in the <u>Phillips</u> decision, and reproduced in Section II of this motion.  754 F.Supp.2d at 216.  The breach of warranty claims must arise out of "transactions in goods" and not the provision of services, Mass. Gen. Laws c. 106, § 2-102, and the theory is not available in the case of a service, with goods only incidentally involved.  <u>Mattoon</u>, 56 Mass.App.Ct. at 125.  Given this court's prior ruling that the provision of MPA was a service, the Plaintiffs product liability claims must fail.


VI.  <u>Public policy concerns dictate that the Defendants should not be exposed to product liability claims pertaining to the provision of medication</u>

Several courts have raised concerns regarding the public policy impact of labeling medical providers as "sellers" of medication or medical devices under theories of strict liability or breach of warranty.  In <u>Carmichael</u>, the court noted that the art of healing frequently calls for a balancing of risks and dangers to a patient and that consequently, if injury results from the course adopted, liability should not be imposed on one seeking to save or assist the patient, barring negligence or fault by the physician.  17 Cal. App. 3d at 979 (citing <u>Perlmutter</u> v. <u>Beth David</u>

Hospital, 308 N.Y. 100 (1954)); see also Osborn, 61 A.D.2d at 370.

In Kirk v. Michael Reese Hospital and Medical Center, the court partially relied on public policy concerns in holding that the imposition of strict liability on a hospital would not enhance the public interests in human life and health.  117 Ill. 2d 507, 523 (1987) (quoting Greenberg v. Michael Reese Hospital, 83 Ill.2d 282, 290-91 (1980)).  To the contrary, noted the court, the imposition of strict liability might ultimately diminish the protection of human life which is entrusted to individuals and/or institutions which are pledged to protect human life.  Id.  If all medical care providers were suddenly exposed to such claims in the course of servicing their patients, the industry would not only be stricken with enormous monetary costs due to insurance concerns, but it would involve immeasurable human costs as well.  The Kirk court was basically suggesting that providers would be disinclined to provide certain life-saving services or medications because they come with certain unfortunate, but necessary, risks.  See id.  The Defendants request that the court keep these significant factors in mind when deciding the appropriate limitations of product liability in the instant case.

VII.   The Plaintiffs' Consumer Protection claims must be dismissed for failure to state claims upon which relief can be granted

Section 9 of the Massachusetts Consumer Protection Statute provides for a civil remedy to "any person…who has been injured by another person's use or employment of any method, act or practice declared to be unlawful by section two [of this act]."  M.G.L. c. 93A, § 9.  In turn, Section 2 prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  M.G.L. c. 93A, § 2(a).  Rhode Island's consumer protection statute contains the same basic language.  See R.I. Gen. Laws §§ 6-13.1.

In this court's decision on the Box Hill Defendants' motion, the plaintiffs' 93A claims were allowed to survive because the Box Hill defendants engaged in a pattern of bulk ordering MPA from NECC under false names in violation of Massachusetts law. <u>See</u> Docket No. 2225 at p. 6. The court stated, "There can be no question that this pattern of commerce with a Massachusetts pharmacy had some effect, directly or indirectly, on persons within Massachusetts, e.g., NECC itself, formerly a legal person within Massachusetts." <u>Id.</u> at 6-7.

However, in the instant case, there is no allegation that OSPM engaged in such a pattern of bulk ordering by using fake patient names, therefore, the consumer protection claims should not survive. <u>See</u> Plaintiff's Second Amended Short Form Complaint, Civil Action No. 1:13-cv-10943-RWZ, Docket No. 17 (incorporating by reference the allegations in Plaintiffs' Second Amended Master Complaint, Civil Action No. 1:13-md-2419-RWZ, Docket No. 1719); <u>see also</u> Exhibit A. The plaintiffs fail to describe or incorporate by reference any allegations of deceptive acts or practices engaged in by the Defendants. <u>See id.</u> The Complaint merely makes blanket assertions that the Defendants "actively, knowingly, and deceptively concealed the product's dangerous properties and life-threatening risks," "misrepresent[ed] the nature, quality, and characteristics about the products they sold," and "knowingly and falsely represent[ed] that the NECC Contaminated Drugs were fit to be used for the purpose for which they were intended, when, in fact, they were defective and dangerous." <u>See</u> Plaintiffs' Steering Committee's Second Amended Master Complaint, Civil Action No. 1:13-md-2419-RWZ, Docket No. 1719 at ¶¶ 251, 255, 256. The mere fact that medication was purchased from a seller does not, without more, equate to a deceptive act on the part of the Defendants. While NECC's acts and practices were obviously deceptive given the manner in which it marketed and sold its contaminated product, there is no evidence that the Defendants, nor any other buyer across the nation, were aware of or

participated in these deceptive practices.

The vile actions of NECC should not be automatically computed to the Defendants under an unsubstantiated application of the transitive property in an attempt to allege deception where it does not exist.  The Plaintiffs' Complaint only offers "labels and conclusions" and "a formulaic recitation of the elements of a cause of action."  <u>Iqbal</u>, 556 U.S. at 678.  Accordingly, the Plaintiffs' consumer protection claims must be dismissed.

## **<u>CONCLUSION</u>**

For the foregoing reasons, the Defendants respectfully request that the Plaintiffs' claims alleging breach of warranties and violations of the Massachusetts and Rhode Island Consumer Protection Statutes be dismissed for failure to state claims upon which relief can be granted.

Respectfully submitted,

By their attorneys,

SEAN CAPPLIS, ESQ.
BBO #634740
THOMAS M. DOLAN III, ESQ.
BBO #683042
**CAPPLIS, CONNORS, & CARROLL, P.C.**
18 Tremont Street, Suite 330
Boston, MA 02108
Tel: (617) 227-0722
Fax: (617) 227-0772
scapplis@ccclaw.org
tdolan@ccclaw.org

Dated:  11-4-15

16