# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION<br>Plaintiffs, | ) ) ) ) | MDL No. 2419<br><br>Docket No. 1:13-md-2419 (RWZ) |

This document relates to:

Armetta, et al. v. Box Hill Surgery Center, LLC, et al.
No. 1:14-cv-14022-RWZ

Bowman, et al. v. Box Hill Surgery Center, LLC, et al.
No. 1:14-cv-14028-RWZ

Davis, et al. v. Box Hill Surgery Center, LLC, et al.
No. 1:14-cv-14033-RWZ

Dreisch, et al. v. Box Hill Surgery Center, LLC, et al.
No. 1:14-cv-14029-RWZ

Farthing, et al. v. Box Hill Surgery Center, LLC, et al.
No. 1:14-cv-14036-RWZ

Kashi, et al. v. Box Hill Surgery Center, LLC, et al.
No. 1:14-cv-14026-RWZ

Torbeck, et al. v. Box Hill Surgery Center, LLC, et al.,
No. 1:14-cv-14023-RWZ

Handy, et al.  v. Box Hill Surgery Center, LLC, et al. No. 1:14-cv-14019-RWZ

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE CERTAIN AFFIRMATIVE DEFENSES, CROSS-CLAIMS, AND THIRD-PARTY CLAIMS FROM ANSWER TO COMPLAINTS BY DEFENDANTS BOX HILL SURGERY CENTER, LLC, RITU T. BHAMBHANI, M.D., AND RITU T. BHAMBHANI, M.D., LLC.**

## INTRODUCTION

In support of Plaintiffs' Motion to Strike Certain Affirmative Defenses, Cross-Claims and Third-Party Claims from Answer to Complaints by Defendants Box Hill Surgery Center, LLC, Ritu T. Bhambhani, M.D., and Ritu T. Bhambhani, M.D., LLC, ("Box Hill Defendants"), Plaintiffs in the above-captioned cases (hereinafter "Maryland Plaintiffs"), by and through their undersigned counsel, submit the following:

## BACKGROUND

After initiating claims in the Health Care Alternative Dispute Resolution Office ("HCADRO"), pursuant to Maryland's Health Care Malpractice Claims Act, codified in Md. Code. Cts. & Jud. Proc. Art., 3-2A-01, *et seq.* (hereinafter "CJP"),  Maryland Plaintiffs filed a Certificate of Qualified Expert and Expert Report, and a Waiver of Arbitration. Orders were then entered by the Director of HCADRO waiving arbitration and transferring each case to the Circuit Court for Baltimore County, Maryland. On or about August 27, 2014, each of the Maryland Plaintiffs filed suit in the Circuit Court for Baltimore County against the Box Hill Defendants and others who are no longer parties to these cases.[1]  On or about October 3, 2014, the cases were removed to U.S. Bankruptcy Court for the District of Maryland by Ameridose, LLC, a former defendant in these cases, on grounds, *inter alia*,  that these civil actions  are "related to cases under Title 11", pursuant to 28 USC 1334(b). *See also* 11 USC 157(b) (5). On October 15, 2014, Conditional Transfer Orders of Plaintiffs' cases were entered by the Judicial Panel on Multidistrict Litigation ("Panel") and, with no objections filed, on October 23, 2014, the Panel

---

[1] All of the Maryland Plaintiffs named Ameridose, LLC, and UniFirst Corporation as Defendants. Both original Defendants settled all claims and have been dismissed by the Court in all cases. (Dkt. 2193). The following entities and individuals were also named in the *Handy* case, and were dismissed as Defendants by the same Order of Court: Barry J. Cadden, Gregory Conigliaro, Lisa Conigliaro Cadden, Douglas Conigliaro, Carla Conigliaro, Glenn A. Chin, GDC Properties Management, LLC, Medical Sales Management, Inc., Medical Sales Management SW, Inc., ARL Bio Pharma Inc., d/b/a Analytical Research Laboratories, and Liberty Industries, Inc..

transferred these actions to proceed before this Court as part of MDL 2419, *In re New England Compounding Pharmacy, Inc. Products Liability Litigation* ("NECC MDL"), which is also the U.S. District Court in which the bankruptcy proceedings are pending.

On January 13, 2015, Box Hill Defendants filed in the MDL Court a motion to dismiss the Complaints for failure to state a claim upon which relief can be granted under Rule 12(b)(6).[2] Stipulations narrowed the issues and briefing followed. On September 8, 2015, the Court entered an Order granting Defendants' motion in part and denying the motion in part.[3]

On October 20, 2015, Box Hill Defendants filed in the MDL Court an Answer to the Complaint in each of the Maryland Plaintiffs' cases. Box Hill Defendants assert numerous defenses under the heading "Affirmative Defenses and Other Defenses". For the Court's reference, Maryland Plaintiffs attach as Exhibit 1 a copy of Box Hill Defendants' Answer and Affirmative Defenses to Plaintiffs' Complaint filed as Document No. 8 in Kashi, et al. v. Box Hill Surgery Center, LLC, et al. No. 1:14-cv-14026-RWZ. The "Affirmative and Other Defenses" and "Cross-Claims for Contribution" at pages 49-53 are identical in each of the cases of the Maryland Plaintiffs.

For reasons stated below, Maryland Plaintiffs now move for the Court to order stricken from Defendants' Answer in each case the following affirmative defenses: 1) entitlement to a credit for any expenses paid by insurance or other third parties; and 2) reservation of the right to offer evidence at trial in support of cross-claims for contribution and indemnity against the "Affiliated Defendants" and the "Unaffiliated  Defendants", and a  reduction or credit against any judgment for damages in favor of Plaintiffs against Box Hill Defendants on the basis of settlement with any of these entities or individuals.

---

[2] (MDL Dkt. 1639).
[3] (MDL Dkt. 2225).

## LAW AND ARGUMENT IN SUPPORT OF MOTION

### I.     LEGAL STANDARD FOR MOTION TO STRIKE DEFENSES PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE RULE 12(f)

Rule 12 (f) of the Federal Rules of Civil Procedure ("Fed. R. Civ. Proc.") states, in pertinent part: "The court may strike from a pleading an insufficient defense or any … immaterial [or] impertinent…matter".

Motions to strike are generally disfavored. However, "[A] court should strike the disputed matter if it is irrelevant 'under any state of facts which could be proved in support' of the claims being advanced". *Etienne v. Wal-Mart Stores, Inc.,* 197 F.R.D. 217, 219-220, (D. Conn. 2000), quoting *Reiter's Beer Distributors, Inc. v. Christian Schmidt Brewing Co.,* 657 F. Supp. 136, 144 (E.D.N.Y. 1987) (internal quotation and citation omitted). If a defense is insufficient as a matter of law, it should be stricken to eliminate the delay and unnecessary expense from litigating the invalid claim. *Etienne, supra.*

A matter is immaterial if it has no weight and is not determinative. *Contogeorge v. Spyrou*, 7 F.R.D. 223, 226 (S.D.N.Y. 1946). Similarly, a matter is impertinent if it is not responsive to the issue alleged and could not be provided as evidence. *Id*., at 228.

As explained below, Box Hill Defendants have asserted certain defenses which are insufficient, immaterial and impertinent under the law, facts and circumstances applicable to the cases at bar.

### II.     DEFENDANTS ARE NOT "ENTITLED" TO A CREDIT FOR ANY EXPENSES PAID BY INSURANCE OR OTHER THIRD PARTIES, WHICH ARE CLAIMED AS DAMAGES BY PLAINTIFFS

Box Hill Defendants' Affirmative Defense Paragraph 4 (Exhibit 1, p. 49) asserts that Defendants are "entitled to a credit for expenses paid by insurers and other third-parties, which

4

are claimed as damages by third-parties". This is not a correct statement of the law or a valid

defense and should be stricken from Defendants' Answers.

Maryland follows the common law collateral source rule, which permits an injured party

to recover in tort cases the full amount of his or her damages, regardless of amounts recovered

from third-parties, which includes payment of medical expenses by health insurance companies.

*See Motor Vehicle Administration v. Seidel,* 326 Md. 237, 253, 604 A. 2d 473,481 (1992).  The

Court of Appeals of Maryland has explained that the scope of and rationale behind the collateral

source rule is as stated in Restatement (Second) of Torts, § 920A(2), comment b (1977):

> *Payments made or benefits conferred by other sources are known as collateral-source benefits. They do not have the effect of reducing the recovery against the defendant.* The injured party's net loss may have been reduced correspondingly, and to the extent that the defendant is required to pay the total amount there may be a double compensation for part of the plaintiff's injury. But it is the position of the law that a benefit that is directed to the injured party should not be shifted so as to become a windfall to the tortfeasor.

*Seidel,* 326 Md. at 254, 604 A.2d at 481-82 (emphasis added). Comment c to §920A identifies

other collateral source benefits that do not reduce a plaintiffs' recovery against a defendant,

including insurance policies, employment benefits, such as worker's compensation, "social

legislation benefits," such as "welfare payments" or pensions. *Law v. Griffith,* 457 Mass. 349,

355-356, 930 N.E.2d 126, 132 (2010).

Maryland does not allow collateral source evidence to be introduced during trial and

actual or possible recovery of medical expenses from a third-party may not be considered in

awarding damages. *Narayen v. Bailey,* 130 Md. App, 458, 747 A. 2d 195 (2000). Introduction of

evidence of benefits from a collateral source is permitted only in post-verdict proceedings and,

then, reduction in damages awarded in a medical malpractice case is discretionary. *Narayen,*

130 Md. App. at 468-470, 747 A. 2d at 201-202.

In post-verdict proceedings in medical negligence cases, Maryland statutory provisions in CJP §3-2A-06(f) allow a defendant to introduce evidence that the plaintiff "has been or will be paid, reimbursed, or indemnified to the extent and subject to the limits stated in CJP §3-2A-05(h)…"  A defendant may  request a reduction in an award of damages in support of a motion for new trial or remittitur, CJP §3-2A-05(h), and if a new trial is granted, that evidence is admissible and the jury is to be instructed to consider such evidence, pursuant to CJP §3-2A-06(f) . Lastly, when remittitur or a new trial is granted, this statute eliminates subrogation and reimbursement, except as provided by federal law, for any sum included in a remittitur or awarded in a new trial on damages. *Narayen, supra*; CJP §3-2A-06(f).

Massachusetts also follows the common law collateral source rule, with statutory modifications applicable to medical malpractice cases only. *Law v. Griffith,* 457 Mass. at 354-355, 359, 930 N.E.2d at 131-132, 135 ("G.L. c. 231, § 60G, inserted by St. 1986, c. 351, § 25 (establishing a post-verdict procedure for reduction of awards of medical damages by judge through introduction of evidence of insurance payments and costs of obtaining insurance benefits")).

Thus, under Maryland law, as well as Massachusetts law, Box Hill Defendants are not "entitled" to credit for expenses paid for the benefit of Maryland Plaintiffs by insurers or paid to them by other third-party sources.  This "defense" should be stricken to reflect a correct statement of the law applicable to these cases.

### III.   BOX HILL DEFENDANTS ARE PRECLUDED FROM FILING CROSS-CLAIMS AND THIRD-PARTY CLAIMS FOR CONTRIBUTION AND INDEMNIFICATION AND FROM PRESENTING EVIDENCE TO PROVE JOINT TORTFEASOR LIABILITY AGAINST ALL PARTIES RELEASED UNDER THE CHAPTER 11 PLAN

Box Hill Defendants have been parties in the NECC MDL since October, 2014, with

6

full access to the CM/ECF system, which provided them with Notice regarding: the development of the NECC Chapter 11 Bankruptcy Plan (hereinafter "the Plan"), how and when to file claims against the Debtor New England Compounding Pharmacy, Inc. ("NECC") and related entities in the Chapter 11 bankruptcy proceedings, when to file objections to Confirmation of the Plan, and when to file an appeal after Confirmation of the Plan.  The Plan was confirmed on May 20, 2015, and became effective on June 4, 2015. Box Hill Defendants did not file any objections to Confirmation of the Plan or an appeal of this Court's Order confirming the Plan.

Based on the terms of the Plan, Box Hill Defendants are now precluded from filing Cross-Claims and Third-Party Claims for Contribution and Indemnification as well as from presenting evidence to prove joint tortfeasor liability against parties released under the Plan, which Box Hill attempts to reserve the right to do, as stated in Answers to the Maryland Plaintiffs' Complaints.  Given Confirmation of the Plan, these claims and defenses are now unavailable, irrelevant, and immaterial to the Maryland Plaintiffs' cases against Box Hill Defendants and should be stricken to eliminate delay and unnecessary litigation expenses.

## A. Notice Given to Box Hill Defendants Regarding the Plan and Deadlines to Object and File Appeal

Relevant Notices regarding the Plan which were available to Box Hill Defendants included, but are not limited to the following:

1. On December 3, 2014, the Bankruptcy Plan Proponents filed with the United States Bankruptcy Court of the District of Massachusetts, Eastern Division (hereinafter, "Bankruptcy Court") the *Joint Chapter 11 Plan of Reorganization of*

*New England Compounding Pharmacy, Inc.*[4] (the "Plan"), and the *Disclosure Statement for the Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc.*[5] (the "Disclosure Statement").

2. On February 22, 2015, the *First Amended Joint Chapter 11 Plan of eorganization of New England Compounding Pharmacy, Inc.*[6] was filed with the Bankruptcy Court. The document was also filed electronically in the MDL Proceeding[7] along with the *Disclosure Statement for First Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc. Dated February 22, 2015*[8]. The first paragraph of the Plan states:

> … CREDITORS AND PARTIES IN INTEREST SHOULD REVIEW SECTIONS 10.05 AND 10.06 OF THIS PLAN, WHICH PROVIDE FOR THIRD-PARTY RELEASES AND INJUNCTIONS THAT MAY AFFECT THE RIGHT TO PURSUE CLAIMS AGAINST NON-DEBTOR PARTIES (INCLUDING THE PARTIES DESCRIBED IN SECTION 3.4 OF THE DISCLOSURE STATEMENT AND SCHEDULES 1.121 AND 1.167 OF THIS PLAN) AFTER THE PLAN IS CONFIRMED.[9]

3. On March 3, 2015, the Bankruptcy Court entered the *Order (1) Approving the Adequacy of the Amended Joint Disclosure Statement; (II) Approving Solicitation and Notice Procedures with Respect to Confirmation of the Plan Proponents First Amended Joint Plan of Reorganization; (III) Approving the Form of Various Ballots and Notices in Connection Therewith; (IV) Scheduling Certain Dates with Respect*

---

[4] (Dkt. 1054).
[5] (Dkt. 1053).
[6] (Dkt. 1154).
[7] (MDL Dkt. 1706)  NOTICE of Filing of First Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc.
[8] (MDL Dkt. 1707)  NOTICE of Filing of Disclosure Statement for First Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc.
[9] Section 3.4 of the Disclosure Statement and Schedule 1.121 of the Plan name Parties whom Box Hill Defendants identify in their Answers as Parties they intend to and do assert claims against for indemnification and contribution. (Exhibit 1, Defenses ¶s 8, 28, 29, 30, and 31).

*Thereto; and (V) Granting Related Relief).*[10] The same day, these documents were also filed electronically in the MDL proceeding.[11]

4. Exhibit 3 of the March 3, 2015 Order, entitled "Confirmation Hearing Notice", included, in part, the following information:

> TO ALL HOLDERS OF CLAIMS AND INTERESTS AND PARTIES IN INTEREST:
>
> 4. **Objections to the Plan.** The Court has established May 5, 2015, as the deadline for filing and serving objections to the Confirmation of the Plan (the "Plan Objection Deadline"). Any objection to the Plan must: (a) be in writing; (b) conform to the Bankruptcy Rules and the Local Rules; (c) state the name and address of the objecting party and the amount and nature of the Claim; (d) state with particularity the basis and nature of any objection to the Plan; (e) propose a modification to the Plan that would resolve such objection (if applicable); and (f) be filed, contemporaneously with a proof of service, with the Court and served so that it is actually received by each of the following notice parties by the Plan Objection Deadline: …
>
> 8. **Release, Exculpation, and Injunction Language in the Plan.** Please be advised that Article X of the Plan contains the following release, exculpation and injunction provisions for the benefit of the Debtor, the Estate Representative(s) and certain third parties, including, but not limited to certain insiders of NECC and the third parties more particularly described in Schedules 1.121 and 1.167 to the plan:
>
> **Releases …**
>
> (iv) Releases in Favor of Shareholder and Affiliate Released Parties. Subject in all respects to the provisions of Section 10.04 of the Plan, on the Effective Date, the Shareholder and Affiliate Released Parties (other than Ameridose) as well as their respective attorneys and advisors (solely in their respective capacities as such), shall be forever and unconditionally released from any and all Tort Claims, Estate Causes of Action, Contributor and Affiliate Released Claims, and all other Claims, debts, obligations, demands, liabilities, suits, judgments, damages, rights and causes of action, whatsoever, by all Entities, whether direct or indirect, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or

---

[10] (Dkt. 1181).

[11] (MDL Dkt. 1714) NOTICE of Bankruptcy Court's Entry of Order (1) Approving the Adequacy of the Amended Joint Disclosure Statement; (II) Approving Solicitation and Notice Procedures with Respect to Confirmation of the Plan Proponents' First Amended Joint Plan of Reorganization; (III) Approving the Form of Various Ballots and Notices in Connection Therewith; (IV) Scheduling Certain Dates with Respect Thereto; and (V) Granting Related Relief.

unknown, then existing or thereafter  arising, in law, equity or otherwise that are based in whole or in part upon any act or omission, transaction, transfer, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor or to the Debtor's products, including, without limitation, the Drugs, the Chapter 11 Case, this Plan, the Disclosure Statement, the Debtor's estate, the Policies, GDC and the negotiation or funding of the Settlement Agreements; provided, however, that the right to enforce the obligations under the Shareholder Settlement Agreement, the Shareholder Escrow Agreement and this Plan and the contracts, instruments, releases and other agreements and documents delivered thereunder, and the right to enforce the provisions of the Shareholder Settlement Agreement with regard to "non-Disclosed Assets" (as defined therein), shall be expressly preserved by the Estate Representative in accordance with the terms of the Shareholder Settlement Agreement. …

(vi)  <u>Releases in Favor of Other Contributing Parties.</u>  Subject in all respects to the provisions of Section 10.04 of the Plan, on the Effective Date, each Other Contributing Party (other than Ameridose), including, without limitations, GDC, the Individual GDC Insureds and Preferred Mutual, shall be forever and unconditionally released from any and all Estate Causes of Action, Tort Claims, NECC Claims, and all other Claims, debts obligations, demands, liabilities, suits, judgments, damages, rights and causes of action, whatsoever, by all entities, whether direct or indirect, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part upon any act or omission, transaction, transfer, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor or to the Debtor's products, including without limitation, the Drugs, the Chapter 11 Case, the Plan, the Disclosure Statement, the Debtor's estate, the Policies, GDC and the negotiation or funding of the Settlement Agreements; provided, however, that this release shall not in any way limit the right of the Estate Representative to enforce the obligations under the Plan, the Settlement Agreements, and the contracts instruments, releases and other agreements and documents delivered thereunder in the Estate's favor. …

**<u>Injunctions</u>** …

(ii)  <u>Injunction in Favor of Shareholder and Affiliate Released Parties.</u>  Upon the Effective Date, all Persons or Entities shall be permanently barred, enjoined, and restrained from commencing, prosecuting, continuing or asserting, either derivatively or on behalf of themselves, in any court, arbitration proceeding, administrative agency, or other forum in the United States of America or elsewhere, any and all Claims released pursuant to Section 10.05 of the Plan or under the Shareholder Settlement Agreement, whether the Person or Entity had actual or constructive notice of the terms of the Shareholder Settlement Agreement, Plan or Confirmation Order or otherwise, except that this injunction

10

shall not apply to the right of the acting Estate Representative to enforce the Substitute Lien and the obligations and the acting Estate Representative's rights under the Shareholder Settlement Agreement, the Escrow Agreement, the Plan, and the Confirmation Order.  …

(iv)  Injunction in Favor of the Other Contributing Parties.  Except as to the rights and claims created or expressly preserved by the Plan, the Settlement Agreements, the Escrow Agreement and the Confirmation Order, upon the Effective Date, all Persons or Entities shall be permanently barred, enjoined, and restrained from asserting against the Other Contributing Parties, including, without limitation, GDC, the Individual GDC Insureds and Preferred Mutual, any past, present and future rights, interests, obligations, claims, causes of action, NECC Claims, damages (including punitive damages), demands (including demands for contribution, indemnity or otherwise), liabilities, expenses, fees (including, but not limited to, attorneys' fees, expert fees, consulting fees and other professional fees) and costs of any kind or any type whatsoever, whether known or unknown, whether foreseen or unforeseen, whether contingent or actual, whether direct or indirect, liquidated or unliquidated, whether statutory or common law, whether asserted or unasserted and whether based on contract, negligence, bad faith, willful, wanton or malicious conduct, or any other theory in law or equity concerning, arising from or relating to any actual or alleged past, present or future act, omission, defect, incident, event or circumstance from the beginning of the world to the Effective Date, in any way relating to or in connection with (i) the Debtor, the Drugs or any and all products of and/or distributed by the Debtor, or (ii) the Debtor's estate, the Chapter 11 Case, the Plan, the Disclosure Statement, the Settlement Agreements and/or the Policies.

On May 20, 2015, the Bankruptcy Court entered an order approving and confirming the

*Third Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc.*[12]

Pursuant to the settlement agreements a number of entities and persons were granted releases

and/or channeling injunctions in exchange for contributing significant funds to the Tort Trust.

On June 4, 2015, after time for appeal, the Plan went into effect.

---

[12] (Dkt. 1355).

Thus, as described above and in multiple official notices filed and served on all parties in MDL No. 2419[13], Box Hill Defendants had more than adequate notice of the Plan, but did not object to its terms or file an appeal.[14]

## B. Dismissal by the Court of All Claims Against Settling Defendants

On June 18, 2015, the MDL Court entered an Order to Show Cause Concerning Dismissal of Claims Against Settling Defendants[15]. The Court's Order stated, "It is the intention of this Court to dismiss with prejudice all claims of any type against the above-referenced

---

[13] (MDL Dkt. 1573) NOTICE of Filing of Joint New England Compounding Center, Inc., Chapter 11 Plan. Filed December 4, 2014;

(MDL Dkt. 1706) NOTICE of Filing of First Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc. Filed February 22, 2015;

(MDL Dkt. 1707) NOTICE Of Filing of Disclosure Statement for First Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc. Filed February 22, 2015;

(MDL Dkt. 1799) NOTICE by Official Committee of Unsecured Creditors in the Chapter 11 Case of New England Compounding Pharmacy, Inc.  Notice of Filing of Declarations in Support of Confirmation of the First Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc., with (Attachments A-N). Filed April 28, 2015;

(MDL Dkt. 1801) NOTICE by Official Committee of Unsecured Creditors in the Chapter 11 Case of New England Compounding Pharmacy, Inc. Notice of Filing of Plan Proponents' Pre-Confirmation Hearing Memorandum of Law in Support of Confirmation of the First Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc. Filed April 29, 2015;

(MDL Dkt. 1808) NOTICE by Official Committee of Unsecured Creditors in the Chapter 11 Case of New England Compounding Pharmacy, Inc. re [1801] Notice (Other), Notice of Filing of Exhibit A to the Plan Proponents Pre-Confirmation Hearing Memorandum of Law in Support of Confirmation of the First Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc.  Filed April 30, 2015;

(MDL Dkt. 1831) NOTICE of Filing of Supplements to the Plan Supplement to the Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc.  Filed May 8, 2015;

(MDL Dkt. 1842) NOTICE by Paul D. Moore, in his capacity as Chapter 11 Trustee of the Defendant New England Compounding Pharmacy, Inc. d/b/a New England Compounding Center, of Filing of Second Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc., with (Attachments  A-B). Filed May 12, 2015; and

(MDL Dkt. 1863) NOTICE by Paul D. Moore, in his capacity as Chapter 11 Trustee of the Defendant New England Compounding Center *of Filing of Proposed Findings of Fact, Conclusions of Law and Order Confirming the Second Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc.*, with (Attachments A). Filed May 15, 2015.

[14] Box Hill Defendants had notice of the Plan and its terms but did not present their objections to the Plan Proponents, as did other defendants who were able to reach agreements and stipulate to terms that resolved their objections. (Dkts. 1270, 1278).

[15] (MDL Dkt. 1992).

settling defendants in all cases currently pending in the MDL.  …  Any plaintiff who objects to any such dismissal shall file and serve an objection by July 2, 2015."

On July 2, 2015, Box Hill Defendants filed an objection to the dismissal of claims against the Settling Defendants[16].  Observing that the Show Cause Order on its face did not require any action on their part, the Box Hill Defendants stated:

> In an abundance of caution, however, the Box Hill Defendants object to the dismissal of the settling defendants as the dismissal of these parties affects the rights of these defendants under Maryland law.  Under Maryland law, joint tort-feasors are jointly and severally liable for injuries to a plaintiff and a right of contribution exists among joint tort-feasors.  Md. Code Ann. Courts and Judicial Proceedings §3-1402.

> While the language of a release may establish joint tort-feasor status, the releases entered into by the settling defendants do not expressly articulate that the settling defendants are to be considered joint tort-feasors.[17]

Box Hill Defendants also noted in the objection to dismissal of Settling Defendants, with prejudice, that, under Maryland law, the right of the Box Hill Defendants to secure a judgment for contribution against the settling defendants has not yet accrued.[18] In fact, such a right does not accrue until such time as a judgment for damages in favor of a plaintiff is entered against Box Hill Defendants and Defendants have paid the plaintiff more than their share of liability; then, contribution may be obtained by Box Hill Defendants if the joint tortfeasor liability of another is established.  *See* Maryland Uniform Contribution Among Joint Tort-Feasors Act ["the Act"], Cts. & Jud. Proc. Art. §3-1402; *Mercy Medical Center v. Julian,* 429 Md. 348, 357, 56 A. 3d 147, 152 (2012). Box Hill Defendants also stated in the opposition to dismissal of Settling Defendants that if the releases between the Maryland Plaintiffs and the Settling Defendants "do not provide for joint tort-feasor status, then the interests of the Box Hill defendants are not

---

[16] (MDL Dkt. 2038).
[17] *Id.* at p.2 (footnotes omitted).
[18] *Id.* at pp. 2, 3.

protected and the *settling defendants will, necessarily, be brought back into the litigation on third-party complaints* by the Box Hill Defendants".[19]   Box Hill Defendants requested this Court to determine the joint tort-feasor status of the Settling Defendants prior to their dismissal from all cases.

On July 10, 2015, the Plaintiffs' Steering Committee ("PSC") filed an opposition to Box Hill Defendants' objection to the dismissal of claims against the Settling Defendants, stating that the objection was based upon a fundamental misunderstanding of the releases and channeling injunctions in the Amended Plan, Confirmation Order, and applicable law.[20]   The PSC noted, as Maryland Plaintiffs have said in support of their motion to strike certain defenses, that the releases and the Confirmation Order barred Box Hill Defendants from bringing any third-party claim for contribution against the Settling Defendants. The PSC also argued that Box Hill Defendants were provided numerous notices of the Plan, and had opportunities to object to confirmation of the Plan and to appeal the Confirmation Order, which they did not do.

On July 10, 2015, Defendant Ameridose, LLC, filed an opposition adopting the PSC's response to Box Hill Defendants' objection to dismissal of the Settling Defendants, noting that Box Hill Defendants' either waived their claims or were too late in asserting them, and that the Plan clearly barred the exact type of claims the Box Hill Defendants "belatedly" wished to assert[21].   On July 14, 2015, Chapter 11 Trustee Paul Moore joined in the PSC's response to Box Hill's objection to the dismissal of claims against the Settling Defendants and requested this Court to overrule Box Hill's objection and proceed with implementing the dismissals[22].

---

[19] *Id.* at p.3 (emphasis supplied).
[20] (MDL Dkt. 2078).
[21] (MDL Dkt. 2080).
[22] (MDL Dkt. 2081).

On July 14, 2015, this Court overruled Box Hill's objection to the dismissal of claims against the Settling Defendants[23].

On August 25, 2015, this Court ordered as follows:

"All claims of any type against the following settling defendants in all cases currently pending in this MDL are hereby dismissed with prejudice.  Each party will bear its own costs.

- New England Compounding Pharmacy, Inc. d/b/a New England Compounding Center;

- Alaunus Pharmaceutical, LLC;

- Ameridose, LLC;

- ARL BioPharma Inc. d/b/a Analytical Research Laboratories;

-  GDC Properties Management, LLC;

- High Point Surgery Center;

- Surgery Center Associates of High Point, LLC;

- High Point Regional Health f/k/a High Point Regional Health System, d/b/a High Point Regional Hospital;

- Inspira Health Network, Inc. f/k/a South Jersey Health System, Inc.;

- Inspira Medical Centers, Inc. f/k/a South Jersey Hospital, Inc.;

- Liberty Industries, Inc.;

- Medical Sales Management, Inc.;

- Medical Sales Management, SW, Inc.;

- UniFirst Corporation a/d/b/a Uniclean Cleanroom Services;

---

[23] (MDL Dkt. 2082).

- Paul Abrams;

- Joseph Alessandrini;

- Barry J. Cadden;

- Lisa M. Conigliaro Cadden;

- Glenn Chin;

- Carla Conigliaro;

- Douglas Conigliaro; and

- Gregory Conigliaro.

Nothing in this order shall abrogate or dismiss any defense based on comparative fault that may be available under applicable state law to the remaining defendants"[24].

On November 9, 2015, this Court ordered plaintiffs' counsel in each individual civil action, to file a "Notice of Judgment Dismissing Claims Against Certain Defendants Pursuant to Fed. R. Civ. P 54(b)", by November 19, 2015[25].  The Order stated, "The Court finds that there is no just reason for delay in entry of judgement and directs the clerk to enter a final judgement of dismissal as to these dismissed defendants identified in each Notice of Judgment."[26]  With the understanding that the clerk would enter final judgment of dismissal of the settling defendants, with prejudice, pursuant to this Court's August 25, 2015 Order[27], Maryland Plaintiffs filed their Notices of Judgement Dismissing Claims Against Settling Defendants on or about November 19, 2015.

---

[24] (MDL Dkt. 2193).
[25] (MDL Dkt. 2406).
[26] *Id.*
[27] (MDL Dkt. 2193).

**C. Box Hill Defendants' Answers Improperly Assert or Reserve Claims for Credit or Setoff of Judgments Rendered Against Box Hill And For Contribution and Indemnity**

On October 20, 2015, Box Hill Defendants filed Answers to the Complaints brought against them in August of 2014. In the defenses asserted therein, Box Hill Defendants totally disregard the terms of the Plan, the Bankruptcy Court Orders approving and confirming the Plan, this Court's Order dated July 14, 2015, overruling their objection to the dismissal of the Settling Defendants, and this Court's August 25, 2015, Order dismissing the Settling Defendants. Box Hill Defendants assert claims for contribution and indemnity from co-Defendant(s) or Third Parties, including "Affiliated" and "Unaffiliated" Defendants.[28] In addition, Box Hill Defendants state that they may assert claims against the Settling Defendants to reflect their tort-feasor status in order to obtain a credit or set-off from any judgment in favor of Plaintiffs against the Box Hill Defendants.[29]

To be clear, under Maryland law, where more than one person or entity is responsible for a single injury, the doctrine of joint and several liability applies, which means that "[e]ach individual is severally liable for the entire damage, regardless of whether the conduct of one directly caused more or less injury compared to that of another…." *Mercy Med. Ctr.*, 429 Md. at 353, 56 A.3d at 150. Accordingly, each of the Maryland Plaintiffs may collect all damages awarded by the trier of fact from any tortfeasor. Therefore, Paragraph 23 of the Box Hill Defendants' "Affirmative and Other Defenses" is misleading in stating: "If Box Hill Defendants are liable for Plaintiffs' alleged injuries … the Box Hill Defendants *shall only be liable for its portion of fault* as determined by the trier of fact pursuant to the Maryland Uniform Contribution

---

[28] Exhibit 1, Defenses ¶s 8, 28, 29, 30, and 31.
[29] Exhibit 1, Defenses ¶s 8, 23, and 29.

Among Joint Tort-Feasors Act, Cts. & Jud. Proc. Art. §3-1401 *et seq*." (Exhibit 1, p. 46, emphasis supplied).

Under Maryland law, in order for a defendant to obtain a reduction in a judgment by virtue of a settlement with another individual or entity, the settling party must be a joint tort-feasor. *Swigert v. Welk,* 213 Md. 613, 133 A.2d 428 (1957).  Under the Act, as interpreted by Maryland courts, "a party may qualify as a joint tort-feasor only by either having been adjudicated as liable, or having conceded or admitted liability, as a tort-feasor; threat of suit or suit itself will not suffice[.]"  *Mercy Med. Ctr.,* 429 Md. at 356, 56 A.3d at 152;  *see also Spangler v. McQuitty,* 424 Md. 527, 36 A.3d 928 (2012).  "[W]ithout an admission or adjudication of liability, a party who enters into a release is deemed a volunteer, not a joint tort-feasor."  *Mercy Med. Ctr.,* 429 Md. at 357, 56 A. 3d at 152.

With full knowledge of the releases and injunctions of the Plan, before the Plan was confirmed, Box Hill Defendants took no action.  It was not until after Confirmation of the Plan, after the opportunity to appeal the Confirmation of the Plan, and after the Plan went into effect that Box Hill Defendants brought their concerns to the Court by filing an objection to the dismissal of claims against the Settling Defendants, which was overruled. *See* discussion *supra,* Now Box Hill Defendants are trying another approach, *i.e.,* they attempt through their Defenses to drag the Settling Defendants back into court.  It is too late.  Box Hill Defendants cannot bring the Settling Defendants back into court to present evidence to prove joint tortfeasor liability.  The Settling Defendants have not been adjudicated as liable or conceded or admitted liability. They are not subject to contribution under the Act.

On June 4, 2015, the Plan, with its releases and injunctions, became effective and no longer appealable. At that time, Box Hill became permanently barred, enjoined, and restrained

from asserting any claims related to the NECC matter against all Parties released under the Plan and dragging them back into court.

For these reasons, Maryland Plaintiffs request this Court to strike from Box Hill Defendants' Answer all of the defenses asserted therein by which these defendants attempt to bring any type of claim against the Parties released under the Plan or to present evidence of their alleged joint tortfeasor liability.

## **CONCLUSION**

Wherefore, Maryland Plaintiffs respectfully request this Honorable Court to grant their Motion to Strike and to enter the proposed Order submitted with the motion.

 /s/ Michael Coren_____    |     /s/ Sharon L. Houston____

Harry M. Roth
Michael Coren
COHEN, PLACITELLA & ROTH, P.C.
Two Commerce Square
2001 Market Street
Philadelphia, PA  19103
215-567-3500

*Attorneys for Plaintiffs Handy et al*.

Patricia J. Kasputys
Sharon L. Houston
Law Offices of Peter G. Angelos, P.C.
100 North Charles Street
22nd Floor
Baltimore, MD  21201
410-649-2000
Pkasputys@lawpga.com
Shouston@lawpga.com

*Attorneys for Plaintiffs Armetta, Bowman, Davis, Dreisch, Farthing, Kashi, Torbeck, et al.*

### <u>CERTIFICATE OF SERVICE</u>

  I, Sharon L. Houston, hereby certify that a copy of the foregoing document, filed through the CM/ECF system will be accessible to those attorneys who are registered with the Court's electronic filing system and Notice of Electronic filing (NEF), including the attorneys representing the defendants in the above-referenced individual cases, and will be sent to these parties by operation of the CM/ECF system.

Dated: December 2, 2015    /s/ Sharon L. Houston
            Sharon L. Houston