# EXHIBIT 2

## Excerpt from legislative history of TPLA

### (handwriting in original transcription)

The following is a transcript of the debate in the Tennessee Senate on March 1, 1978 regarding Senate Bill 2188 as found on Senate Tape 67 through 70 from the State Library and Archives.

CLERK:  Senate Bill number 2188 by Mr. Blank and Garland to enact the Tennessee Products Liability Act of 1978.

SPEAKER:  Senator Blank.

BLANK:  I'd like first to observe this bill much must be in much better shape because Senator Garland allowed his name to be announced with it today and things are improving.  I'd like first to renew my motion for passing Senate Bill 2186 on third and final reading.

SPEAKER:  Floor moved and seconded.

BLANK:  Mr. Speaker since last week and this is kinda of like a soap opera you can tell you what happened from last week to this week from the week before to that week, uh there has been a report filed by Senator Baird that explains that the Commerce Committee met on Monday and since since Senator, since uh Dean Wade couldn't be with us on that day I met with him on Saturday and dealt with some amendments, We discussed uh his proposals and I should say the compromised proposals that came out of that, on Monday morning and in in a kinda of an informal open meeting where other people made comments too that were interested in it and then we voted on Tuesday to adopt another amendment as a committee amendment which is amendment number 19 is filed now, and the action of the committee was to request the Senate that amendment number 19 or the committee amendment that they adopted that day be substituted for amendment number 1, which was the original committee amendment and I would at this time move that amendment number 19 be substituted for amendment number 1 which is which is the committee amendment now.

SPEAKER:  Committee amendment number 1 has not been adopted.  All right, the motion is that 19 be substituted for number 1, that means that number 19 will be number 1, and it means that number 1 will be number 19.  You want to withdraw number 1?

BLANK:  I want to substitute number 19 in the place of number 1 and just withdraw number 1.

SPEAKER:  Do you want to withdraw?

BLANK:  Yes sir.

SPEAKER:  Actually you move to suspend the rules,

BLANK:  ~~Right~~ sir.  Well the committee action is that it is sending up as committee amendment number 19 where before it had brought up committee amendment number the amendment that was number 1 that was attached to it in the original filed amendment, this is merely to put number 19 make that the committee amendment rather than number 1.

SPEAKER:  ~~For~~ the parlimentary situation is, I believe that the amendment to duly file and the regular order of business would be to take them up in the order that they come however Senator Blank wants to withdraw number 1 and he wants to substitute 19 for it and that's his motion.

BLANK:  Yes sir cause that'll place the bill in the order that the committee . . .

SPEAKER:  That's seconded.

BLANK:  wants it to be dealt with.

SPEAKER:  And those favoring that motion will say aye.

BODY:  Aye

SPEAKER:  Opposed no and now youre on number 19.

CLERK:  We have 10 amendments to 19.

SPEAKER:  What is it?

CLERK:  We have 10 amendments to 19.

SPEAKER:  All right, the motion is for adoption of number 19.  It's seconded.  On amendment number 19.  Now they're 10 amendments to amendment number 19, you're on amendment number 1 ~~and~~ amendment number 19.

CLERK:  Amendment number 1 to amendment number 19 by Mr. Ortwein to amend Senate Bill 2188 but deleting in their entireties subsection 8b, c, and d of section 2 and renumbering the remaining subsections appropriately.

ORTWEIN:  Mr. Chairman, Lady O'Brien, and members of the Senate what this particular . . .

SPEAKER:  Senator Ortwein, you're recognized, yes sir.

ORTWEIN:  I'm sorry Mr. Speaker.

SPEAKER:  Your recognized.

ORTWEIN:  First of all let me read from Rule 84, I believe I ought to do that since I'm a lawyer in the Senate which is a rule dealing with personal injuries which says that Mr. Speaker, Lady O'Brien, members of the Senate, that it may be considered that I have a degree of personal interest in the subject matter of this bill.  But I declare that my argument, ultimate vote to answer only to my conscience, my obligations and my constituents, citizens of the State of Tennessee.  Now I read that because I am a lawyer, I will tell you, members of the Senate and colleagues, that to my knowledge unless it was the first year and a half which I practiced law in 1964 I have never handled a products liability lawsuit.  This particular amendment which I am proposing deals with definitions which are in section 2 and that they be deleted, the definitions of manufacturer, products, seller, and employer.  The reason for this particular amendment and that I'm asking that it be put on, is that these definitions is my understanding, according to Dean Wade, are meaningless and could cause confusion and future judicial interpretation which are already well defined and established by case law.  For and I'm going to give you an example of that.  Subsection c deals with the scope of the word, seller, the word seller, under this definition is expanded to include bailor and lessor, and I don't know that that particular definition has ever been used or they've ever been placed in the position of being named the seller.  Important likewise is the definition contained in "d" known, as called employer.  Now if you read that, I might say that it is my understanding that nowhere else in this bill does the word employer appear.  But if you read that definition it says any person exercising legal supervisory control or guidance of users or consumers of products.  Now that could apply to anybody such as parents or so forth that are exercising control over their children, to the government, or anybody else, giving them guidance um in the use of um consumers products.  That could make them employers and it, under this definition, and in acense this word is never used any place

42 44

else in this bill to my understanding, Mr. Speaker, I would move
that we adopt this amendment number 1 to amendment number 19 to
delete these particular definitions.

SPEAKER:  All right.  When was it filed Mr. Clerk.

CLERK:  It was filed timely 2/28/78 1:45 p.m.

SPEAKER:  Takes a simple majority.  Motion is to adopt.
Is there a second, is there a second? Seconded Senator Koella.

KOELLA:  Mr. Speaker, members of the Senate, we have
met in committee three times as a minimum and five as a maximum
on these. I think that the bill is amended that came out of
the committee last, is a good bill for both sides. I think it's
a fair bill for both sides and I move this amendment gently
to the table.

SPEAKER:  Your on the amendment, move to table.  You're on
the tabling motion. It's seconded, Senator Ortwein, you may speak.

ORTWEIN:  Mr. Speaker, Lady O'Brien, and members of the
Senate, the word, say the word "employer, is so expanded, you could
be an employer under this definition as far as you give guidance
to your children about purchases so that's how loosely drawn
this language is.  Now we already have courtroom or court decisions
which give definitions of these terms and it seems to me that
if we're going to talk about sellers and define in one place
in the statute as being lessors and bailors, we could wind
up that they're going to be determined to be sellers in other
kinds of litigation, whereas right now their not and it could be
highly detrimental to these folks and therefore, I would ask
that you vote against the motion to table.

SPEAKER:  Your on the tabling motion.  Those favoring
of the tabling motion vote aye, those opposed vote no, let every
senator vote when the bell rings.  Every senator vote. Has every
senator voted? Does any senator desire to change his vote?  Take
the roll.

CLERK:  Aye's 18 no's 9, 2 present and person, not voting.

SPEAKER:  Tabling motion prevails.  Senator Williams is
recognized.

WILLIAMS:  Mr. Speaker, Lady O'Brien Ladies and gentlemen of the Senate I would
like to ask your permission to suspend the rules so that a former
member of the General Assembly who is not a member of this

50 45

august

~~August~~ body but is the first black member of the General

Assembly since reconstruction days who was a member of the

House of Representatives of 1964 to 66 who's just outside the

Senate door and I would like to ask that he be permitted to

come in and some of you many know him and that we recognize

him and perhaps allow him to say something.

SPEAKER:  Motion to suspend the rules. It's seconded.
Senator Person.

PERSON:  I'd just like to second that motion I had

the pleasure of serving with Representative A. W. Willis and I

have a great deal of respect for him and I second the motion.

SPEAKER:  Those favoring say aye.

BODY:    Aye

SPEAKER:  Opposed no.  Rules are suspended Mr. Sergeant

At

~~of~~ Arms would you invite Mr. Willis in the chamber?  Give Mr.

Willis a hand.  Mr. Willis your most welcomed and let me say

to you Senator Gillock let me say to you that this body doesn't

even allow its former members in here anymore so you are unique

in that it did that for you and we welcome you here today, have

a seat and regular order of business.

CLERK:  Amendment number 2 to amendment number 19 by

Mr. Ortwein by deleting in its entirety subsection g of section 2.

SPEAKER:  Senator Ortwein.

ORTWEIN:  Mr. Speaker Lady O'Brien and gentlemen of

the Senate what this amendment deals with is the section of the

bill which defines product liability. Dean Wade's position is that

it's already defined in our law and that there's no reason for

us to add confusion once again to the law which we already have

in the State of Tennessee which is my understanding is Dean Wade's

opinion that this will do and that there should be no reason

whatsoever to define it and I move the amendment to delete um

this particular subsection of g of section 2.

SPEAKER:  Motion is to adopt amendment number 2, is there

a second? Seconded, Senator Blank.

51

BLANK: In the discussions with Dean Wade, we discussed, as with the first matter that was in Senator Ortwein's amendment, we did discuss in particular this, there was a thought and he he said that there possibly could be some confusion by it and we discussed it further and his his thoughts and my thoughts were when we got through discussing it that what you've really done there is try to capture as it is today those items that are called products liability actions, and I noticed today that there was a excerpt from the, from McClosky case, McCarsky case, excuse me, it was uh uh put on your desk, in the Supreme Court they are there referred to the fact that you had, we hold that in tort actions including but not restricted to products liability actions, predicated on negligence, strict liability, misrepresentation, so forth, so on, listing them that this term has become a reasonable term of art and all that is done in this instance is to place in the bill the collection of all of the different theories, as a matter of fact under negligence there's probably you could even go further and say the sub theory of res ipsa that's not in here but all of the different theories that are today predicated or handed out on the doctrine of products liability, there was some concern that if you did this you may blur the contract theory and the tort theory. I had some at first reservations about the fact that you might expand the tort theory to where you could collect for loss of profits and other compensable damages that would go under the the UCC theory where your dealing in the commercial field but in our discussions we felt that that wasn't a real problem and that what you were really doing here was gathering together as best you knew it the those items that are in products liability today, and I guess it would be a good time. I laid on each one of your's desk uh an excerpt that Doug Hall of the Tennesseean wrote and uh what he said, what Dean Wade Wade said in that on the basis of the amendments that are in amendment 19 that I consider it, considerably better than the early provisions that Senator Blank and I gave a great deal. It's a reasonable compromise and these were

matters that were discussed in reaching what Dean Wade in
that article referred to as the reasonable compromise and I
don't want to be in anyway discourteous because frankly through
this argument with Bill Ortwein, Senator Ortwein being uh my
chief close opponent, being on the Commerce Committee and the
others I've I've gained a great deal of respect for him it's
certainly not out of any uh situation there whatsoever but
merely in an effort to not prolong this any longer than
necessary. I would move this to the table.

SPEAKER:  Motion to the table it's seconded.  Senator
Ortwein.

ORTWEIN:  Mr. Speaker, with all due respect to Senator
Blank in the same article there is a comment and I and Dean Wade
says it improves it considerably over what it was but it does
not say that it comes up to what it should be as I understand
it and as I understand it, likewise, that the concessions are
which preserve some rights of individuals injured by defective
products, and it seems to me that, as I say, we're going to add
confusion, the way I understand it, by adopting definitions
which uh Mr. Speaker are already well defined law and that we don't
need to go on and try to change them and therefore I ask that
you vote aginst the motion to table.

SPEAKER:  On the tabling motion.  Those favoring vote
aye and those opposed vote no.  Let every senator vote when the bell
rings.  Every senator cast your vote. Has every senator voted?
Does any senator desire to change his vote?  Take the roll.

CLERK:  Aye's 16 no's 10 2 present and not voting.

SPEAKER:  Tabling motion prevails.  Next one.

CLERK:  Amendment number 3 to amendment number 19
by Mr. Ortwein.

SPEAKER:  Senator Gillock's recognized.

GILLOCK:  Mr. Speaker I ask recognition at this time
before you take up another amendment.  It don't look like I'm
going to get to say anything on any of these amendments but
what I have to say may not be important but for the 120 something
thousand people I represent I think it is.  First I declared
myself under the rule as Senator Ortwein has done and with all
due respect to Senator Blank I wanted to say into the Senate

Chamber before we go any further with all of these amendments
to you senator and I'm sure you're going to get mad at me
again this afternoon as you do sometimes and then we get over
it and good comrades as we usually are but wh Senator Blank said
very candidly the first time he stood up on this bill that he
had a special interest in it he didn't go under rule but he
said he had a special interest in it.  Now if I come up here
and tell you and all of us lawyers have lawsuits that we could
come into this Senate and say and if I'm violating the rules
you knock the hammer on me.

SPEAKER:  Senator Gillock uh at this time there's
nothing before us.

GILLOCK:  This bill's before us.

SPEAKER:  The bill's before us and we're on the
amendments.

GILLOCK:  No sir were not on the amendment until you
recognize to you recognize me before you recognize the clerk.

SPEAKER:  All right go ahead Senator Gillock.

GILLOCK:  I beg to disagree with the Speaker.

SPEAKER:  All right. I'm going . . . .

GILLOCK:  If I'm wrong I'll sit down.

SPEAKER:  No sir you go ahead.

GILLOCK:  Now because I'm not going to get the floor
because it's evidently set up to move the previous question
before anybody can talk is why I'm rising at this particular
time.  If I could come up here and say to you I can win all
the lawsuits that I try as a plaintiff's lawyer by you passing
the bill I don't believe you'd do that for me, I just can't
believe you'd do that for me and what I'm saying is not going
to change one vote in here, it's not going to change one person
that's committed to vote for this bill, but you're talking about
the rights of the people you represent, not insurance companies,
not lawyers, but the people you represent and when this bill,
when the man stood up there who you recognized as an authority,
and said it wasn't right, then the sponsor of the bill gets
with him and starts making some amendments.  But I want to
point out because Senator Blank referred to the article and
I want maybe you'll think about some of these amendments is

why I asked to come up at this time.  That article he read a moment ago and quoted from the paper, he read the favorable part but I want to tell you what that article really said in the first paragraph, it said by Doug Hall.  The sponsor of a bill designed to limit products liability lawsuit has agreed to several significant concessions.  This is the important part which preserves some rights of individuals injured by defective products.  Now if you don't put an amendment in this bill to take care of the accident down at Waverly, Senator, sort of undersaying. your district then the people who standing down there, unfortunate victims the 12 who were down there whatever part of them were watchin; they can't recover unless the statute of limitations extended; they can't recover because the manufacturer did not see fit to put in the inside of that tank a protective vice device to keep it from exploding, so it killed 12 of your constituents.  There has been 4 wrecks in this state, in the last week, luckily the others were not located in this area.  Forget the one in Florida which killed, that's something we're talking about when you say 10 years, if a man builds a railroad car to last 100 years, why shouldn't he make it in a in a condition that it won't be defective in 10 or 12 so when he passes through your town and blows up your people, why should he be relieved of that responsibility. Do the citizens know that that's going to happen.  I tell you that right now some of you have to run for election this summer and there's going to be some people that give you some real hard times because you won't protect their rights and if you're just going to table every one of the amendments that come up here we might as well vote on this this afternoon. You've got the horses to do that, you've got the horses, but Senator Blank didn't anybody agree to meet with you and agree for my vote I can tell you that.

SPEAKER:  Senator Blank.

BLANK:  Mr. Speaker 'We're getting a long way off the subject and I won't start, with what he said now or require him to stay somewhere within the proof, or he is capable

65

BLANK:   Mr. Speaker what we're talking about first
I explained the other day when I started handling this bill that
yes, I do represent and I represent both the plaintiff side and
the defense side and I'm very sorry that I can't discuss this in
a logical way with Senator Gillock. I've got to get to a point where
there can be some understanding on it.  I practiced products
liability law yes, I practice a lot of other law and I stated as
everybody else has that being a lawyer you may have an interest
in this, I also stated that the citizens have a substantial interest
in this.  Now, Senator Gillock was wanting to be candid and fair
about the discussions with Dean Wade. Our committees asked Dean
Wade to be with us on Monday morning, he had classes at 9:30 and
11:00, so on Saturday, on Friday, he called me and told me that,
I had the rest of the Commerce Committee members  called and told
them the only time he could meet was on Saturday. I spent my
Saturday afternoon Senator Gillock in Dean Wade's office and by
the way, while I was there, Jim Sullivan called me and asked me
if I could use my plane to fly some people to Cincinnati which
I did out, of the Waverly, some some uh people who were relatives
of people who were burned at Waverly and needed to go up there
cause they couldn't fly on the plane with their husband so I did
that, and I sat there Saturday afternoon and tried to work out
these amendments and I tried as best I could with the legal
profession and I'm a member of the legal profession, I catch a
lot of heck from my fellow members of the legal profession
because they think I'm sailing down the river on some of this,
but I submit to you that I have as much interest in the people
of my district as I do in my own welfare or my pocketbook. I
could probably make more money as a lawyer leaving the bill as
it is today and I suspect that most of the people that are the
lawyers that haven't agreed to at this point, have that
consideration in their mind but I, that that's a factor. that's
either here or not here, but what I'm telling you is, that I
tried to work this bill out with Dean Wade and asked anybody
else who wanted to come sit, and I took my Saturday to do it, and
I brought it back up here and we got through with the amendments,
I sent them out with Bob Green and Tim Schafer went along and
they took them out to Dean Wade and Dean Wade's comments about

it were after the amendment went to him to see what the amendment was and his comments, not Doug Hall's characterization as a reporter, that the sponsor of the bill designed whatever he called it, but what Dean Wade's, the expert you're talking about that came up here and spent the other day, said, I think it's a considerably better bill than the earlier provision and his ultimate conclusion was both Senator Blank and I gave a great deal, gave a great deal. It's a reasonable compromise and that's what we dealt with, the man who taught me whatever I know about products liability law except what I've learned in the courtroom and as I said before and I want this record fully clear, 90 percent of the cases that I'm in when I may start out as a defense attorney, I'm also a plaintiff's attorney. I've got three, I checked because to make sure there wasn't any situation, one of them happens to be the Maury County Jail fire. I've got three products liability cases in my office right now and none of them will be affected by the bill as it's now drawn, so there's no topside nor bottom in that. The consumers of the State of Tennessee are involved in this situation. Let me tell you another little situation. Somebody mentioned to me that the consumers had gotten into, this, a young lady who worked in the judiciary last year, those consumers were 6 people who met the other night that got 25 bucks up among themselves, have a good trial lawyer association, but they got 25 bucks up above each one themselves, put it together and you may have seen the letterhead that was sent to you, that's the Concerned Citizens for Consumers or whatever it was that got to you in the last few days.  Folks I'm telling you this is a reasonable compromise, it's fair to both sides. Now there's some people not going to be happy on either side. I'm sure the manufacturers would like to cut if off today, and I'll tell you about Waverly, Tennessee, there are at least 4 theories of liability that you can try it on in Waverly besides that picture you saw of the cracked wheel that was manufactured sometime ago. The railroad has to maintain its tracks and its equipment and if it doesn't do that it's direct negligence under the simplest form of products liability case, so you've got all of those scare tactics that have been thrown into it but right now today this is a fair bill and I'm telling you that, conflict, no

conflict, what way it would go, or not, it's a fair bill to both

sides it's a reasonable basis to try to work a compromise on,

there's some people who don't care for a compromise and I

understand that, but let's be honorable about approaches.

SPEAKER:  Just a minute. ∧ ~~Yes to the point of order~~.

WHITE:  My amendments were next. I'm afraid everybody's

going to ~~gonna~~ get so mad, you won't consider my amendments, so I'd like to

get back on the amendments.

SPEAKER:  All right, sir, the point of order is well. taken,

let the Speaker say, let's don't let personalities get involved.

Regular order.

CLERK:  Amendment number 3 to amendment number 19 by

Mr. Ortwein by deleting from the first sentence of subsection A

of section 6 the following words. No product liability action is

defined in section 2 subsection g and substituting in lieu

thereof the following words, "no action for injury to person or

property.

SPEAKER:  Senator Ortwein.

ORTWEIN:  Mr. Speaker withdraw that amendment please.

SPEAKER:  Withdrawn without objection.

CLERK:  Amendment number 4 to amendment number 19 by

Mr. White by deleting the following words from subsection b of

section 6, "no product liability action is defined in section 2

subsection g.

SPEAKER:  Just a minute Mr. Clerk.

WHITE:  Mr. Clerk That is a housekeeping amendment which was

dependent upon one of the other ones passing which failed and

I withdraw that one.

CLERK:  Amendment number 5 to amendment number 19 by

deleting section 6 in its entirety by Mr. White, filed timely.

SPEAKER:  Senator White.

WHITE:  Mr. Speaker and Lady O'Brien and gentlemen, I

think we've arrived now at the point where we're all going to

have to decide just what kind of bill we're going to have, because

I don't think there's any doubt that we're going to have a bill

today.  Now section 6, by deleting it, is simply this, before Senator

Blank introduced this bill, the law in Tennessee was, that both

the person that sold you the goods and the person, or the company

the person that manufactured them were held strictly liable.
Now what that means, strict liability, many of you are lawyers
and probably know better than I do but for the ones who are
not lawyers and perhaps are not familiar with that term, it's
a theory of law that says to the injured person if someone sells
you a defective product, we're not going to put the burden on
you of proving just how they were negligenct, just just wherein
they failed in the manufacturing process, to make this a a-a-a
product that was not defective, we're not going to make you
prove that that seller knew about it or whether he didn't, the
person that handled that goods from the manufacturer and sold
it on to you just wherein they failed to discover that defect
etc., if they sell it to you their strictly liable.  The theory
is that they are negligent because you got a defective product
product and you had every right to get one that was not
defective and to use it on the open market, you didn't get that
so we're going to hold them strictly liable. Now what Senator
Blank originally wanted to do was take away strict liability
both at the manufacturing level and at the seller's level so
that you would have to prove that the manufacturer was negligent,
and you would have to prove that the seller was negligent. In
other words, you wouldn't have that theory to to protect you.  I
understand now that the amendment is, which Senator Blank has
agreed to, would still hold the manufacturer strictly liable but
not the seller. Now how would that work?  Let's say that Sears &
Roebuck buys a great many beds, baby beds we'll say, from a
manufacturing firm in Washington, in the State of Washington, and
that and that that bed is defective and a Tennessee child is
injured, perhaps killed in it, because of an accident involving
that baby bed or some other product.  If you hold the manufacturer
strictly liable, then the injured party they can get jurisdiction
of that manufacturer out in out in Seattle they can recover under
strict liability theory. To recover against Sears, you would have
to prove that they were negligent, that they knew that that bed
was defective etc. Well that sounds fair enough because we can
usually reach the manufacturer in Seattle through the Long Arm
Statute and make them come into Federal Court and defend and most
of these manufacturers do business in the state anyway, but some

of them just come in and take orders and and they're not doing business within the meaning of doing business but the point is I'm not talking, the real problem is where the manufacturer is, say overseas, let's reverse that situation and say that those baby beds were bought from Hong Kong Baby Bed Manufacturers in Hong Kong, now you've got the problem. There's no way ~~Noway~~ that the injured child or the parents of that child can get service on the Hong Kong Manufacturing Company, and since you've got, you've ~~you've you've~~ relieved the seller, Sears & Roebuck, from anything other than negligence you can prove, they're ~~their~~ no longer strictly liable and and ~~you can~~, you can still get the Hong Kong people but you can't get them in court and so you ask well what about Sears, they didn't know about this, how do they recover if ~~if if~~ we hold them strictly liable by voting for Senator White's amendment and retain the law in its present form, the way it's been hundred years. Well ~~Would~~ they recover by indemnity agreement, when a ~~when a when a when a~~ seller buys from a retailer as part of his contract, That's the way it's always been, He makes the baby bed manufacturer in Washington in the State of Washington, or in Hong Kong agree to an indemnity agreement so that in the event that he is held liable, strictly liable and has to pay out damages because some Tennessee consumer was injured, then he can recover over and against the seller who sold it to him, and so what we're doing if you don't adopt this amendment and you allow the seller to not be held strictly liable, your going to effectively deny Tennessee consumers who are injured by defective products, simply for the reason that the manufacturer can't be held liable because, if it's a hidden defect, most defects are hidden and you won't be able to prove that the Sears & Roebuck was negligent, and you won't be able to get service ~~and you've got to get~~ over against that foreign corporation over in Hong Kong, and so I ask you, is it fair for the injured party to have to pay for the fact that the perpetrator of the ~~of the~~ defect is out of reach of the injured party. Now who should pay for that, the seller, shouldn't the seller have to have to be strictly liable, if he has put on the market a defective product which injures a Tennessee person and that injured party or the survivors of that injured party can't reach that foreign manufacturer. It's just equity and it really gets down to the nuts

60 55

and bolts of just how far are you going to go in denying recovery
to Tennesseeans and I urge you to adopt this amendment which would
in effect which would strike section 6 and it would leave the
law as it presently is.

SPEAKER:   Moved and seconded, Senator Blank.

BLANK: Mr Speaker I beg to differ with Senator White but
the last sentence of this section still leaves in the provisions
of this section shall not apply to actions based upon breach of
warranty expressed or implied as defined by Tennessee Code Annotated
Section 47-2-101 et seq which is the Uniform Commercial Code.
Now the strictest form of liability is found under the Uniform
Commercial Code, the problem that strict liability grew up to
reach was not the situation that that Senator White was talking
about because if you buy from Sears then you're in privity of
contract with Sears and when you purchase from Sears then you
automatically under those code sections have a right to expect
that the products that sold you is good for the purpose that
it was sold to you for. We've never had any problem with that
the con the contract theory in tort has never been the one that
bogs the state courts. What happened as we went along we didn't
adopt strict liability until 1971 as we went along we left the
negligence theory where you had to prove what was the flaw in
the bed and so I would go sue Sears and when I sued Sears under
the under the Uniform Commercial Code I could collect against
them and Sears would have to file. It's not really an indemnity
action but what Sears would do would file a third party action
because they in turn had bought from a supplier and the supplier
was brought into it, the person who manufactured this baby bed
was brought in because they too were under the Uniform Commercial
Code and were caught under it and they were suppose to have sold
to Sears a good product so you had the contract theory but that
didn't always work. You couldn't always make that work and there
is one thing that Senator White's right about in this thing.  If
I took that baby bed and used it for my children and gave it to
my sister and she used it for her children then she didn't have
privity of contract with Sears so she couldn't sue Sears.  She
could after we adopted strict liability however, sue the manufacturer.
She could sue Sears under strict liability.  This bill section a

of section 6 does nothing more than codify the law as it is
today in regards to the seller. Now this is section a, I'm referring
to, there is a doctrine of concealed, of sealed containers and
there is a a theory, of course that if the seller had no
opportunity, reasonable opportunity to observe or find the defects
that he is not liable. But what you have today is you try the
entire lawsuit and after you've spent your entire time in the
case as the seller, you've gone through the entire, it's strict
liability, see, gets the case to the to the jury, otherwise the
Judge will let the jury consider it or at least get it pass to
to motion for directed verdict at the end of the plaintiff's
case and the defendant has to come back and show either that
it was in a concealed container or in a sealed container or
that it was something that he had no opportunity, was afforded
no opportunity, to see the defects in.  All right, if he can prove
either one of those, then he can get out of the case at that
point, under this, he will be able to bring that proof in by
affidavit prior to the trial, then if the plaintiff can overcome
that by affidavit, then he can rebut it, but if not, he's out without
that expense. Now section b of that section, does directly take
away the doctrine of strict liability.  Now where that'll run
you afoul, as Senator White was talking about, is in that instance
where I'm talking about where I lend the baby bed to my sister
and there's something there, because if some member of my
household is hurt from that, we've had that for years. My law
partner once, years ago, had a lawsuit where he was talking about
horse feed that was sold by Purina, and they said I'm sorry the
commercial code won't apply there, sir, this was in the old days,
the commercial code won't apply there, because the horse won't
come in and eat at the dinner table with you, it's not a member
of the family and that's the way it went. If it had been baby food
and the baby had been hurt it would have.  You've still got
every direct action against the manufacturer left in strict
liability in b, but you don't have it against the seller, that's granted.
But you do still have, as I say, the strictest of all liability
under the Uniform Commercial Code, you have all of your
negligence counts still there and everything else, but it's been
taken away in that regard.  Many states that have adopted strict

liability have adopted it only to the manufacturer and have modified
402 a and b ,Tennessee ,as I say, adopted this once, came back to it
and adopted it again, not too long ago.  I think it's it's a fair
situation, I don't believe that you're going to be, and Dean Wade
this is part of what Dean Wade was referring to, is not going to
be a situation that cuts off several rights. I would also point
out there was some concern and this concern was expressed by
some of the people to the people that are in the sales business
said ,hey ,look, you may have a problem going back under your old
doctrine against the manufacturer,but everybody that's looked at
it that was involved from that standpoint, Tyree Harris for one,
and Harlan Dodson for others ,that I've asked said no, that's
really not a problem I didn't think it was, Dean Wade didn't think
it was ,when he got through talking to him, but they could have been
we went back and checked it and I don't see that as a problem
whatsoever. Again and I know Senator White will have more elegant
remarks but I would move this to the table.

SPEAKER:  The motion is to table.  Is there a second?
Second. Nobody can speak except Senator White ,Senator Boner.
Senator White.

WHITE:  I'm sorry that Senator Blank wanted to table
this motion because I think a great many of the senators wanted
to speak on this particular point and they could have done it
a lot more elegantly than I could have. Can Senator Blank ,does
not intend to relieve the seller in Tennessee from the harm
done by defective products that are sold to Tennesseans, who
innocently use those products and are injured or killed, then he
ought to accept an amendment that says that's what it does, I
don't read it and he deals in products liability and I don't,
But I don't read it to do that. I submit to you ladies and
gentlemen ,this amendment places the manufacturer out of reach
when the manufacturer is overseas you can't get jurisdiction.
And it prevents you from recovering under the strict liability
theory when that seller sells it to you in Tennessee and what
your doing is denying recovery in situations where the seller
himself could be indemnified because he has a contractual
arrangement not only with those Tennessee manufacturers ,those U.S.
manufacturers ,he has contractual arrangements with those Tokyo

manufacturers and those Australian manufacturers and wherever, But we can't reach out the injured people can't reach out to Australia and be indemnified because we don't have a contractual arrangement and I urge you to vote not to table this motion so that we can ~~reason~~ at least debate it and know what we're talking about because people more people, more. ~~elegantly~~ eloquently than, ~~elegant~~ eloquent than I need to explain it a little better perhaps.

SPEAKER: Your on the tabling motion.  Those favoring vote aye, those opposed. Lets see The motion is to adopt amendment what?

CLERK: Amendment number 5 to 19.

SPEAKER: Number 5, ~~Senator~~ Senator White moved to adopt that amendment. That's seconded, Senator Blank moved to table that motion and your own the tabling motion.  Those favoring will vote aye, those opposed will vote no, every senator vote.  Every senator vote, take the roll.  Too late, it hasn't been announced.

CLERK: Ayes 18 nos 12.

SPEAKER: It's tabled.

WILLIAMS: Mr. Speaker.

SPEAKER: Yes sir, you ~~can~~ vote no.

WILLIAMS: (unintelligible) It doesn't change the result.

SPEAKER: You can vote ~~not~~ no Senator Williams.  Senator Boner.

BONER: Mr. Speaker I had a question now that we're through with that amendment so I still would like to ask the question as it relates, if I may, if I'm not out of order.

SPEAKER: Senator Boner you are out of order unless there is no objection.  You're out of order, Senator Blank has no objection.

BONER: Mr. Speaker and I'd like to ask Senator Blank a question, and I ask this as an aspiring law student who is trying to grasp a few of the terms that are being thrown around by two and three very knowledgeable people.  I think the concern that I have, and that I wanted to be assured of, in position of this is, are you saying then, that that foreign manufacturer will still be exposed to liability just as the domestic manufacturer will be, that's ~~that~~'s the I think, I mean I have that concern and maybe some others do, they don't want to see any bill passed that, that or any amendment excluded, that is going to give a

loop hole to a foreign manufacturer and could you please maybe
you explained this before. I I don't think you did but that was
the concern I had as related to the amendment more so than it
related to the seller and I think that has been an issue that's
been raised and and do you have other amendments and does this
bill address itself to that?

SPEAKER:  Senator Blank.

BLANK:  Mr. Speaker except as the statute of limitations
affect everything in this bill there is no modification whatsoever
of your ability under strict liability in tort to reach a foreign
manufacturer a non-domestic corporation of the State of Tennessee
or anything else you still have your actions in tort directly
under all theories against the manufacturer.  This is merely the
seller when you file your complaint when you put the seven counts
in there you will charge the seller and the manufacturer in all
of those counts except the strict liability and there you will
just go with the manufacturer, any person selling an item in the
State of Tennessee for consumption. . .

SPEAKER:  Let me see a copy of that.
CLERK: The last one.        Speaker: yes sir.
BLANK:  of the item in Tennessee of that item is is
involved in doing business in the State of Tennessee and is
subject to jurisdiction of the courts of the state of Tennessee.
Now as to whether you get a judgment and go to Japan and collect
it you're in no different shape than you are today under this act.
I want to see the vote on the amendment.
SPEAKER:  We're regular order, Mr. Clerk.

CLERK:  Amendment number 6 to amendment number 19 by
Mr. White by deleting from section 3 the following words of the
last sentence, thereof, as follows or within one year after the
expiration of the anticipated life of the product whichever is
the shorter.

SPEAKER:  Senator White.

WHITE:  Mr. Speaker that amendment would be dependent
upon the adoption of amendment 9 so I would like to move it down
behind amendment number 9.
SPEAKER:  Moved.

WHITE:  I'm advised it could be either way but just go
ahead and drop it below 9.

SPEAKER:  What is the motion?

65

CLERK:  Move it down behind 9.

SPEAKER:  It's so moved.  Behind 9.

CLERK:  Amendment number 7 to amendment number 19 by Mr. Ortwein by adding the first, to the first sentence of section 3 following the words six years of the date of injury, the following additional words, except in the case of injury to minors who's action must be brought within a period of fourteen years from the date of injury or within a period of one year after attaining the age of majority whichever occurs sooner.

SPEAKER:  Senator Ortwein.

ORTWEIN:  Mr. Speaker, Lady O'Brien, members of the Senate, this amendment deals with the statute of limitations part of the bill.  It deals with the right of a minor who is injured to file a lawsuit.  The act as it is presently constituted limits the period within which a minor can file a lawsuit to six years.  Now, conceivably as the bill is drawn, a minor could be injured at the age of one and by the time that minor is seven years old, he could never file a lawsuit. His actions would be forever barred by the time he reached age seven. That's of the child, not the parents' rights because the lawsuit would be the child's, the recovery therefrom would be to the benefit of that child because the child would be the one injured.  What this amendment does and let me say this, under present law, the minor is treated as having achieved some legal capacity of being negligent, at age 18, excuse me, age 14 and consistent with that logic, once a child reaches that age, the presumptions disappear relative to his capacity to be or to be negligent. We believe at the age of 14 would be more appropriate to enable a minor to decide on his own behalf whether or not, if no adult has assisted in bringing the action, he should be allowed to file a lawsuit which inures to the benefit of that minor, not his parents, for the injuries which he received, and Mr. Speaker, I, therefore move adoption of this particular amendment.

SPEAKER:  Motion to adopt amendment. Seconded.  Senator Blank.

BLANK:  Speaker, this is one that Dean Wade and I talked about a good bit because this was his language, particularly, I had no strong feelings to putting putting any particular thing

66

in there but in a compromised method this is what he suggested. What we did with the statute of limitation originally was say that the current statute of limitations which is one year, if you are injured one year from the date of the injury, for an adult or anybody, there is exception to it as uh-uh Senator Ortwein was referring to there with minors, that one is in existence. We currently have a statute that says after you've built real property, that it has to be an injury within three years after construction, we've had that on the books for quite sometime. We also have one in medical malpractice of three years. So we've we've also got four years in in connection with the Uniform Commercial Code. He said look, and he said what I would suggest you do is put a cap on there, for any injury, any exceptions to the current law after six years. Right now if I'm injured I've got to bring the case within a year. If my sixteen year old son is injured he has got to bring it within one year after being eighteen. If a two year old child was injured, right now, he's got to bring it within one year after reaching eighteen. What this says is you've got six years to find that injury. Now most people you know, there's going to be somebody around that for that child in six years after their injured is going to find somebody to bring the lawsuit or get something done in that regard. It's the child's lawsuit granted, but this is one of the real problems, matter of fact, this is the longest tail that's on it. We now on the other end of the statute of limitations, we cut off all actions after ten years, and this this would really, we're talking about an area that's probably not going to reach a whole lot, the fourteen would not reach a whole lot on the ten, but we're trying to reach at something here and I think that it was a reasonable compromise and Dean Wade was the one, as I say, who who who even thought of this particular provision I wasn't even thinking about it. He says I think this is fair, certainly after an injury has been in existence on a minor for six years, somebody's going to have determined something, that's how long you've got to sue on a contract in the state, so that was the purpose behind it and it was his, as I say, and I would move this to the table, too, Mr. Speaker.

SPEAKER:  Motion to table.   Seconded.   Senator Ortwein.

ORTWEIN:  Mr. Speaker I want to respectfully disagree with Senator Blank in this ground.  What about a child that's in a foster home or a child that's in an orphanage. And we're not asking by this amendment, now I want you to realize this and we could be asking for it, that the general law of the State of Tennessee apply. In other words we're not asking that it even go so far as to say that if a child as the general law of this state is now, is injured in a car wreck that he has until one year after age eighteen to file a lawsuit, now ladies and gentlemen that's what the law of this state is, but we're not even asking that you go that far with this bill.  We're just saying let it be so that this particular child can reach the age of fourteen, fourteen years old.  If we wanted to go to the extreme with this particular amendment we would ask that it be the same and maybe it should be the same as what the general law of negligence and tort in this state is and has been for sometime, and that is if a child, a person under eighteen, as Senator Blank point out, is injured he can wait till he becomes nineteen years old in effect to have the right to file a lawsuit.  Now I want to remind you gentlemen that this is a situation where we're talking about the child's recovery and the child's injury because regardless of who there is to take care of him, it's the child that's injured, and it is the child that suffers the pain and has to live with it the rest of his life, and that's what that uh uh this bill is asking that you cut off conceivably by the time that child is seven years old and can't hardly read and write today, and he has to make that decision, and therefore I respectfully urge that you at least cast a vote so the children can wait to they're fourteen years of old, of age to make a decision.

SPEAKER:  On the tabling motion.  Those favoring vote aye, opposed no, every senator vote.  Every senator vote.  Take the roll.

CLERK:  Ayes 14, nos 16.

SPEAKER:  It failed.  Senator Henry.

HENRY:  Mr. Speaker on this proposal here, it seems to me that Senator Ortwein is correct on this one, uh uh Senator Blank is and and Dean Wade worked out all the other matters on this bill and I I respect what they worked out and I've I've been voting

with them on the question of liability and I intend to continue, but, to cut off the child after six years when the child may not be more than six or seven years old it seems to me to be uh uh unreasonable and as I understand Senator Ortwein, he would extend this time to fourteen years and I recommend that change.

SPEAKER:  On the amendment.  Senator Blank.

BLANK:  Mr. Speaker I've, you know, the first amendments we were dealing with were, I mean the first bill we were dealing with, had six year statute, period, that was the statute of repose that Dean Wade was talking about.  Looking to other states and other jurisdictions this was his suggestion.  Tennessee has a rather broad jurisdictional approach to this as to how long we leave open, injuries. Very frankly, we have very short period after which to bring it in compared to most states but we leave them open longer than most states.  Uh this was his suggestion as to this it never really crossed my mind.  Senator Koella had a suggestion that I really thought was kinda workable, it brought to him in this regard, and that was that on consumable goods we put a statute of limitation of six years and or five years, and that on capital goods we put one of ten years and his comment was there that I think that there are many automobiles and farm tractors and other things that last longer than that that aren't capital goods, he said, but I think this is a reasonable compromise.  Surely after there's been an injury for six years somebody's gonna rise to the rights of that child.  Now what we're really talking about in Senator Ortwein's bill is somebody between the ages of one and seven, because if they're eight, they've got the six years till their fourteen under what he's talking about.  If they're one to seven I think that they're gonna be under the jurisdiction and control and custody of someone who's gonna recognize that they're injured, you know, and go out and seek some recovery for them, they're gonna know that, somebody's gonna bring that to their attention, surely, the, the if if nothing else, the newspaper articles about recovery in products liability cases or something is gonna bring it to their attention.  So I think that there is definitely a reasonable protection here.  There was in the McClasky or McCorskey whichever it is, case that was Bryant Air Conditioning case, it was passed out to you there was some

concern about constitutionality, some people said about cutting off any rights.  Now what they were really saying in that case was that the public policy of the state now we're talking about whether or not this is a reasonable public policy, whether this is a reasonable approach to the common law.  We've talked about consumer in here from the standpoint of the person who uses it and gets injured, but as I mentioned the other day, we're not referring to the five thousand consumers who buy the same products and don't get injured.  It's just what definiteness we can get into it, to deal with in the state of the law and to freeze it and hold it.  How much more openess is it that we're giving.  I think that the six years Dean Wade thought the six years was fair that was his suggestion, I agreed with him.  Apparently some people don't agree with him, that they felt that this was a, this was a fair approach.  I believe it's a fair approach, and I would urge you not to leave this much more openess or indefiniteness in the bill for it to have to deal with in the current status let's try to freeze it where it is.  Very frankly the statue of limitations portion is really the only true subsidy of change that's being made in the entire approach to it, and I believe that most of the trial lawyers, both plaintiff and and defendant, that that have dealt in this area and understand it know that this is the real problem.  Uh there's a there's a kitchen stool suit involved right now on, from Casco in Jim Sullivan's district in Franklin, Tennessee, where it was manufactured 1931, 1976, somebody climbing up that stool in their kitchen to go to the top shelves, the stool collapsed.  Now I don't know how long the stool was built to last, but that's an awful long time and I'm sure 1930 when they were laying out the plans of what they were going to do in 1931, how long they thought those goods were going to last, that was probably not contemplated.  That's the problem we're dealing with and the depthness that Dean Wade put in here I think is what you're really looking at what you're really after and I would say that your big problem is that you don't have to prove against the the stool that I'm talking about then if there was anything improper in the way they built, just that it wasn't built to hold people 40 years later when they're climbing up to their shelf after it's been in use, that's what you're dealing with

in trying to determine whether you can at some point, control
that factor and I think that this is a reasonable statute of
limitations and I'd urge you to to defeat this amendment.

SPEAKER:  Senator Hicks. *Hicks will Blank* Senator Hicks, for a question.

HICKS:  Senator, under the present law, maybe under court
rules, that have come down, if a child, an orphan child, was say, in
the custody of Human Services, and were to get injured, would not
the Department of Human Services be required to protect that
child's rights and if they failed to do so, would not the state
become liable as they are I've noticed in such things as
Savings and Loan Assocation regulations and some others? and
*Blank (uninteligible)* and even there's one in connection with glover bottom *Clover bottom* on protection. *of children.*
*Hicks:* I also I believe there's some involved in, say even in education,
where some students did not get what they bargained for in
education and the education people have been sued and have been
found to be liable.

SPEAKER:  Senator Byrd.

BYRD:  Well on this particular amendment I think that
Senator Blank has said that he would like to compromise and we
are all not Dean Wade, but we do have some knowledge, and I think
if your concerned about saving the state money, according to
Senator Hicks, eventually you might have a possibility of some
orphan, or anyone under the custody of Human Services or a foster
child, having the right to go if you have a little bit longer
statute of limitations since we know that products liability
cases are only about 1 percent of the total cases that are being
filed and I think if you lengthen the statute of limitations
to protect children who don't know exactly in fact, adults don't
know how long they have to live. We We presume too often that
everybody's educated like the members of this body and we we
work with the laws and we understand the statute of limitations.
But I think this is a good amendment and it would not affect
the liability of length of time whatsoever as far as trying to
help some child who might realize at a certain age, the bill is
going to pass I'm sure and it's gonna probably benefit a certain
group of people which most of us now might have interest in and
*an interest in the bill, I've never had* I myself have a products liability case, I am a lawyer and I
believe that lawyers should try to protect the people, the people

of this state just like I try to do when I represent approximately one hundred forty thousand since I'm out of balance most of the time and most of the other senators as far as the Baker vs. Carrow. Mile. But I think this is a very reasonable amendment and I think most of you ought to want to give the benefit to your grandchildren or their children's children or any foster child or whatever else. We cannot presume that all of us know ~~that~~ the statute of limitations.  There might be 10 children out there that might be affected by this and I'm sure you don't want them cut off any right just because you're extending them a little bit longer time than some of our children because we're intelligent enough to know how long we have to file a lawsuit.  Thank you Mr. Speaker.

SPEAKER:  Senator Ortwein.

ORTWEIN:  Mr. Speaker, first of all, I want to differ with Senator Blank once again respectfully, I have never heard of Human Service Department being sued or liable for not filing a lawsuit on behalf of a minor.  They may be liable for the way they take care of that minor, whether or not they provide the proper education and so forth to it, but not insofar as filing any kind of a lawsuit.  And I want to say this talking about the statute of limitations.  This deal solely with children, it does not, I don't think, at least I that's good english, go to the guts of the statute of limitations at all as far as adults are concerned, and we are talking about a minor child who gets hurt we're not talking about adults, we're talking about a minor child that's disfigured for the rest of his life, and leaving the bill if we don't vote for this amendment, if it happens when that child's one, if that child by seven, somebody doesn't take care of him, he is ~~gonna~~ be disfigured the rest of his life for the fault of somebody else and he'll never be compensated for it and Mr. Speaker, I move for a question on the amendment.

SPEAKER:  The motion is to adopt amendment number, what is it?

CLERK:  Amendment number 7.

SPEAKER:  Number 7 to amendment number 19.  You're on the motion.  Those favoring vote aye those opposed vote no, every senator vote when the bell rings.  Every senator cast your vote. Has every senator voted?  Take the roll.

CLERK:  Ayes 27 nos 11.

SPEAKER:  We adopt.  I tell you, Yes sir, position, the opposition voted was so stern they shook the machine up.  We're going to do it as we've always done we're going to take another roll call.  I don't believe there's that many in here, I don't believe it is unless somebody in the balcony may be voting or something, I don't guess they are.  All right, if the machine erred we're on amendment number 7,

CLERK:  Yes sir.

SPEAKER:  to amendment number 19.  Those favoring will vote aye when the bell rings, those opposed will vote no.  Every senator vote when the bell rings.  Every senator vote.  Take the roll.

CLERK:  Ayes 21 nos 12.

SPEAKER:  We adopt that amendment.  Next amendment Mr. Clerk.

CLERK:  Amendment number 8 to amendment number 19 by Mr. Ashe by adding to the end of section 6 b, the following words: Provided such manufacturer shall be subject to service of process in this state and shall not have been judicially determined insolvent.

SPEAKER:  Senator Ashe.

ASHE:  Mr. Speaker Lady O'Brien, members of the Senate this amendment is designed to correct what I think is a problem with with this amendment, with this bill, which says basically that you must go against the manufacturer, if there's a product defect which I agree with that, but the problem arises is, if the manufacturer is a foreign manufacturer, who cannot be reached by service of process in that instance or is insolvent then at least on the theory of strict liability, the consumer or the user would be cut off in terms of this particular remedy in section 6 b, and this amendment simply adds the words provided the manufacturer be serviced to process and be, uh uh would be uh solvent.  Pending any questions I move the adoption of amendment number 8 to amendment 19.

SPEAKER:  Motion to adopt.  Senator Blank.

BLANK:  Mr. Speaker, Amendment number 6 as we, discussed before, what this has the effect of saying is you can, you don't get to sue

73  68

the seller if the manufacturer's got money but if the manufacturer doesn't have money then you sue the seller. Uh it's also saying that if you can't get jurisdiction in this state, I don't really know exactly what that means because with your Long Arm Statute, you can get any manufacturer that comes through, I don't exactly how it affects us in this state, but basically what we're doing here, is kinda like saying, you can sue so and so if the other fellow doesn't have the money that's what it amounts to.  Now you've still got your, you have your strict liability case against the manufacturer, he may be insolvent, granted, you've got your, still have your negligence theory everything else you had against your seller, if his something was wrong that the seller did and you've got your Uniform Commercial Code if he sold you a bad product, that didn't do what it was suppose to do and injured you. Now What you're saying here is while you've got him and you've got a contractor relationship with him you can hold him, you can also sue him in strict liability when you can't get the manufacturer because he's insolvent.  Now I really don't, it doesn't it looks *duplicitus* to me, I don't see why you say go do that, and then say, you don't do it when he, when you've got a solvent manufacturer except for the fact of that you can get your money off the manufacturer.  So I see Senator White wants to say something on this point, I won't move to move it to the table I may not have the votes, I don't know after the last one.  But uh I don't think that this particular amendment makes much Sense or much logic because really all you're saying is, folks if you can't get the money off one, we're gonna let you have a shot at the other one, when in reality we're not gonna let you in the other cases.

SPEAKER:  Senator White.

WHITE:  Mr. Speaker Lady O'Brien and gentlemen, first off, while Senator Blank hasn't said so, I'm afraid that some of us may have the impression that the bill presently before us with the amendments that Senator Blank is willing to accept, is a bill that Dean Wade and Senator Blank jointly endorsed.  For example, I was not present and I know, no one in this chamber was at least on the main floor here present that I know of, other than Senator Blank, but I'm advised by someone who was there that Dean

74 G 9

Wade, for example, did not favor leaving section 6 in, the one which you defeated which would remove the seller's strict liability. Now this amendment and he did favor apportioning where it could be done where you could determine it, to a comparative un responsibility of the seller and the manufacturer and a and a and a bill which Senator Ortwein has would do would enable us to do that the Dean made reference to it.  I don't know what will be the favor of that bill but this amendment here certainly is a little thing to ask.  All you're saying is if the child in Tennessee or the citizen of Tennessee is injured by a product manufactured by somebody no matter where they are, well children are injured senator every day.  No matter where the manufacturer, I didn't interrupt the senator.  No matter where the manufacturer is, if he's insolvent and manufacturers go out of business every day people go in business and they don't make it if Sears & Roebuck buys a product from a manufacturer that is bankrupt, why should you tell the person injured in Tennessee that you can't recover, you can't recover because that manufacturer is no longer solvent.  Why shouldn't Sears & Roebuck in a case like that be held liable strictly liable for putting that defective product on the market.  I think it's a very reasonable amendment and I and it's not a meaningless amendment it's an amendment that would provide some remedy to an injured Tennessee consumer in a case like that was just described by Senator Ashe and I support it.

SPEAKER:  Senator Koella.

KOELLA:  Mr. Speaker, members of the Senate.  If the seller should be liable the seller should be liable no matter what.  The seller should not be liable simply because the manufacturer is or is not solvent.  Now if we start making exceptions to our laws of this nature then we've got we've got no place to go except Pandora's Box with it.  Now let's make them liable if they sell it period or make them not liable if they sell it period.  But to to come to come back to come back and say to the man is liable if the guy that manufactured it is somewhere back along the way is insolvent or he's not liable because the fellow is insolvent.  Now this this to me is somewhat ridiculous. The seller should either be liable or he should not be liable

and I think that we start making exceptions like that uh we're we're heading we're heading in a direction that uh I don't think that the law in the State of Tennessee or this country should be heading in that direction.

SPEAKER:  Senator Ashe.

ASHE:  Mr. Speaker I don't mean to prolong the debate I think the issue is clear on this amendment and basically I've not, I'm trying to provide some form of remedy and relief to that person who's injured and if he's injured by a product made in Hong Kong or a product made by bankrupt manufacturer and this is what that amendment does and I would move the question on amendment eight.

SPEAKER:  Motion is that previous question be put any objection?  You're ready.  Those favoring on the amendment now Senator, yes sir, Senator Blank.  No sir.  I ask if there was any objection to previous question being put.  Yes sir you can speak Senator Blank.

BLANK:  Only comment.

SPEAKER:  Wait a minute.  Put the he no it's Senator Ashe's amendment, Senator Blank.

BLANK:  All right.

SPEAKER:  That's right.  Senator Ashe's amendment he would get to speak.  He doesn't want to speak.  Those favoring adoption of the amendment will vote aye, those opposed will vote no.  Every senator vote when the bell rings.  Cast your vote, every senator.  Take the roll.

CLERK:  Ayes 16 nos 16.

SPEAKER:  It fails.

CLERK:  Amendment number 9 to amendment number 19 by Mr. White by deleting subsection h of section 2 in its entirety.

SPEAKER:  Senator White.

WHITE:  Mr. Speaker, Lady O'Brien, and gentlemen, this is another area in which the Dean, and I understand, and Senator Blank can correct me, and Senator Blank did not agree.  Let me read you, let me read you it's just one sentence, section h, anticipated life.  The anticipated life of a product shall be determined by the expiration date placed on the product by the manufacturer when required by law but shall not commence until the date the product

was first purchased for use of consumption.  All right, now what shall not commence, it says the expiration date let's suppose the expiration date is July 1, 1980 what commences?  To begin with it's totally ambiguous and unclear as to what this means. Is it, are they referring to a situation where you say anticipated life three years well, then why do they say the expiration date.?  In addition to that, this whole question of anticipated ~~anticipated~~ life is something that doesn't relate to mechanical products which is the proper subject of a products liability bill.  Anticipated life relates to those things like film, food, drugs you've all bought film that says July 1970.  Well, why should a consumer's rights be cut off, because they didn't see that the, ~~that the~~ that this film should have been taken off the shelf last month.  In other words the burden ought to be on the seller to take that off the shelf, if the expiration, if the anticipated life of the product has already expired, why should he be permitted to leave those drugs or those films or food related products on the shelf, and thereby entrap you into situation where you bought a product the expiration date of which is already expired and your rights are cut off.  And so this amendment would strike that, as Senator Blank can correct me, but ~~I'm~~ I'm told that Dean Wade felt that this ought to come out because it has no proper relationship to a products liability bill, the subject of which is mechanical defects. This anticipated life relates to consumer products such as the type that I mentioned, that's all that does is strike said section.

SPEAKER:  Senator Blank.

BLANK:  Mr. Speaker, I, so there won't be any misunderstanding, and I did didn't get to mention this on Senator Ashe's bill when Senator White mentioned that some other people talked to Dean Wade.  Yes, Dean Wade thought there shouldn't be some things in there, and I thought there should be some other things in there. We ended up agreeing, as he said, with this left in here, that he thought, it's a reasonable compromise.  Now let me tell you that, I would say that probably 50 percent of what we call products liability cases fall into this area.  This mechanical thing, I don't know what Senator White's talking about, but you're talking about drugs, and there's a very, very real reason for this to be

in here and that reason is this.  When a drug company places on the market a product, sometimes the chemical compounds in there only remain stable for a certain length of time, at the end of that given length of time, they run into a problem where they become an entirely different chemical, and what this is, is not, this is not gouging. at the other side, this is to get things down so from that last sentence in there, so that the drug people, the seller and the manufacturer, when they put that thing on the market, if it has been on their shelf for a year, they will reduce the anticipated life down to the true anticipated life or well their going to be liable.  If this has a one year on it, when it comes from the manufacturer and the seller keeps it on his shelf for 9 months, and sells it to that buyer, he's got to warn that buyer, at that time, you've only got 3 months left, on this thing, that your doctor gave you, for Pete's sake, don't take it, take half your dosage, leave it up there, and then take it again a year from now because it will be a different chemical compound.  Now this is so, that the public can have access to this medicine, otherwise you won't have people putting it on the market, it won't be there because they can't put it on the market with those risks, this is I, I believe, and my discussion with Dean Wade, he had concerns about this, yes, but when I left him I don't know what happened when Tim Schaffer and Bob Green left him yesterday. but I know when I left him, he said, on that basis it's reasonable, I think that in all probability, he would, go back to your comparative fault situation. Dean Wade wanted us to pass the Uniform Comparative Fault Law that has just come off of his committee that has not been adopted in a single another state, that has not been adopted by a single bar, American Bar Association, or any other organization, it has not even been reviewed, that's what he was talking about substituting for section 6, section 7, for anticipated life, for warning and everything else.  But his idea was when I got through talking to him, on the basis of the overall concept, that's reasonable to leave in there, and so I think it's reasonable to leave in there and I'd urge you to leave it in there, because if you don't there's gonna be a substantial amount of drugs not going to the market. And any way keep in mind this is where the Federal Government or the

State Government or somebody requires it to go on ~~their~~ here by law.

SPEAKER:  Senator Ortwein.

ORTWEIN:  Mr. Speaker, Lady O'Brien, members of the Senate, I want you to read this amendment and think about it Senator Blank and I discussed this in committee. I want you to rather read what it says.  We've talked about drugs and what the law requires and so forth but the amendment says, or amendment number 19 says this. ~~Within~~ or within one year after the expiration of the anticipated life of the product whichever is shorter it doesn't say in cases wherein the law requires the manufacturer to put the anticipated life on it, so it's according to this amendment number 19, up as I read it.

BLANK:  Mr. Speaker, I'll be glad to add that if that's a problem but it defines anticipated life over here, and that's what says, the only way you have an anticipated life is when the manufacturer is required by law to put it on there.

ORTWEIN:  Mr. Speaker I'll accept that explanation of Senator Blank, I may be mistaken.  But let me say what this does, this allows a manufacturer to say to you that this product is only good, say 6 months and you buy that product 4 months of that time is gone, that means he's limited when you, the manufacturer of the product, ladies and gentlemen, has set the statute of limitations.  The manufacturer of that product, if he puts, if he puts say on a car, let's get outside of talking about drugs a minute, that the anticipated life of your automobile is one year, then one year and a day later as I understand it, if it blows up up it's limited.

BLANK: Now wait a minute.

SPEAKER: One at a time.  One at a time.
(or malfunction) about those

BLANK:   Anticipated, if we're going to stick to it, talk about those that have an anticipated life by law.
All right.

ORTWEIN: Mr. Speaker, let me say this, and I'd like that. Would Senator Blank yield for questions, maybe we can clarify this?  Senator Blank does it prohibit someone who is not required by Federal Law from putting an anticipated life date on it which would shorten the statute of limitations. ~~There's~~
(Inaudible) talking here's no prohibition but when you have a definition of anticipated life which says the anticipated life of a ~~of a~~ product shall

79 74

be determined by the expiration date placed on the product by
the manufacturer when required by law.  If you want to strike
by the manufacturer and put the expiration date placed on the
product as required by law, that's fine with me whichever way
you want to put it that's the way it reads, the manufacturer's
the one that under the law is required to put it on there,
that's the only reason that language is in there, it's when ~~when~~
you have a drug that is allowed to be produced by the food
and drug administration that says you can produce this drug,
but you can only produce it if you put this expiration date on ~~it~~. _it._

Ortwein:      Mr. Speaker I'd yield to Senator White. _Senator White_

~~SPEAKER~~:  ~~Senator White.~~

WHITE:  Thank you, Senator Ortwein.  Let, if I might
have your attention, Lady O'Brien and gentlemen, let, you've
got to read this definition of anticipated life in connection
with section 3, statute of limitations.  Now let me say, and
section 3 is very short, please listen and let me read it to
you.  Any action against a manufacturer or seller of a product
for injury to person or property caused by it's defection or
unreasonably dangerous condition must be brought within the
period fixed by Tennessee Code Annotated sections 47 ~~to 72~~ _-z-_ _125, 28-304,_ 2528304
etc. but notwithstanding any exceptions to these provisions
it must be brought within 6 years of the date of injury.  Now
listen to this because this is, this goes to the heart of it.
In any event the action must be brought within 10 years from
the date on which the product was first purchased for use or
consumption or that's a big or, or within one year after the
expiration of the anticipated life of the product whichever is
shorter. Now you heard that shorter. Now what does that mean?  The
manufacturer sells a drug, he stamps on that drug, 6 months.  You
purchase that drug that's put on the market, and you purchase
it 18 months later.  Do you have a 10 year statute of limitations?
No.  You purchased it you're injured, you're out.  In other words,
this reduces that statute of limitations to 1 year from the date
of your purchase of that or one year from the expiration date
which the manufacturer has stamped on it whichever is shorter.
And it's not, I beg to differ with, with Senator Blank as to what
this does and if you want to do that, if you want to tell people

if you go buy a drug, and its stamped on there 6 months, and your going to find out that, you've only got one year to sue, well, you don't have a 10 year statute of limitations, and those drugs could have been on that shelf for 3 or 4 years and you're already out when you buy it, and the seller is sitting there with a ~~with a with a~~ defective drug on his ~~on his~~ shelf and you when you buy it, and you get injured, you're out of court before you can take a swig at it.

WILDER:  Mr. Speaker, if that ~~fellow~~ Seller sells that . . .

SPEAKER:  ~~Wait~~ Senator Blank.

BLANK:  Yes sir.

SPEAKER:  You're recognized.

BLANK:  If that seller sells that drug to you in violation of that date, that seller is in serious trouble.  And that manufacturer if it got into the hands and that seller did it, he's gonna be hung on it, too, straight back under this act or as the law is now.

SPEAKER:  Senator, Senator Crouch, I'm coming back to you Senator White.

CROUCH:  I don't know all about this bill, maybe, like Senator White does and some others, but I do know about about one thing that I . . .

SPEAKER:  Make your point of order, Senator White.

WHITE:  I would ask the senator not to refrain, to refrain from mentioning senators by name in that vein, we have every right to stand here and state our opinions on these bills and I ~~and I I~~ have no apologies for doing it, as I said before, I'm a lawyer, but the people that are going to be injured by defective products, they can't come down here because they're not known yet, and I'm the only person that's available, because the most disorganized people in the world are those who have not yet been injured.  If I knew my little daughter was going to be injured 3 years from now, I'd be down here saying, don't do this to her and you wouldn't do it.

SPEAKER:  Senator Crouch.

CROUCH:  I wanted to compliment Senator White.  I want to compliment him.  I didn't I meant no . . .

SPEAKER:  Let me have order.

~~CROUCH: I I wanted to say~~ . . .

SPEAKER: Is it understood that we're not going to refrain to persons Senator Crouch ~~you~~-you d~~o~~not intend to, you d~~o~~not to intend to insult Senator White, you intend to congratulate Senator White.

CROUCH: I want to point out to the membership and Lady O'Brien that I do know a little bit about expiration of drugs because we've been down that track many times and if a drug is sold or dispensed, whether when it has the date, the expiration date has expired, that liability is very great on the seller or the pharmacists who happened to dispense that particular drug. ~~We~~ Even under this bill that we are considering today.

SPEAKER: Senator White.

WHITE: Mr. Speaker, if it was not the intent to reduce the time in which you could bring a suit in the case that I have mentioned then section 3 ought to be amended to provide within 10 years or 1 year after the expiration date of the anticipated life whichever is longer. Now this ~~this~~ bill says whichever is shorter and I submit to you that it does exactly what I said and that's why I urge adoption of amendment 9.

SPEAKER: Are you ready? Senator Baird/Wilson.

Bill ~~WILSON~~ Senator White would you g~~ive~~ rite/d for a question?

SPEAKER: Senator White.

WILSON: I want to ask you a kinda of serious question that I want to find out about. As soon as Governor Blanton signs that ~~TN~~ TN(?) and bill ~~it~~ goes into law, I want to know can one of the products professional from one of those ~~recessments~~ under this product liability can a child in the, say in the high school that can't read and write, can ~~tenant~~ takes, bring suit against that professional for under this products liability bill?

WHITE: ~~Senator~~ Senator Senator I, I know when I'm whipped on an issue and ~~Φ~~ I think you ought to recognize now that you were whipped on one the other day.

SPEAKER: You're ready, on the amendment. Those favoring, what is it?

CLERK: Filed today.

SPEAKER: This one is filed today, it's under Rule 83, takes

two-thirds of those voting, you'll be present if you punch a roll call.  Those favoring vote aye, those opposed vote no, let every senator vote when the bell rings.  Every senator cast your vote. Two-thirds.  Take the roll.

CLERK:  Ayes 12 nos 19.

SPEAKER:  Senator Crouch.

CROUCH:  May I inquire of the clerk, how many more amendments are on the desk and when were they filed?

CLERK:  There are two more amendments to amendment 19.

CROUCH:  Filed today?

CLERK:  Filed today.  No, we're back on amendment 6 to amendment 19 that Senator White moved down.

SPEAKER:  Senator Talarico.

TALARICO:  *(Inaudible) let me clarify just a moment* There are two more amendments to amendment 19. Are there other amendments other than those two?  How many more?

SPEAKER:  There are two more amendments to amendment 19, now, amendment 19 is amendment number 1 to the bill.

TALARICO:  That's the question I'm asking, how many amendments other than those two, to amendment 19 or  amendment 1, whichever it is, how many other amendments are there upon the desk?

CLERK:  18.

SPEAKER:  18.  Yes, sir.

*Blank* ~~WILDER:~~  Those other amendments, amendment number 1 changed number 19 at least, changed section numbers so those other amendments would not ~~directly~~, go directly into the body of this bill on on the sections as they are now from the way they were written. *for Whatever's left could...*

*Byrd: Mr Speaker, I would ask for a ruling from the chair as for certain amendments that involve main... (inaudible)*

SPEAKER:  The speaker's not going to strike those other amendments, uh I don't think, uh I don't want to prolong it but Senator Blank they may not be in order but uh . . .

*I'm not going to. Whatever*

BLANK:  The speaker rules on taking up those amendments. I would say that I think the fertile minds ~~have~~ *hgt* brought those amendments back up to number 19 all through here today, except for those matters that I took out and I would like to state, Mr. Speaker, that I can't get any further back on this bed of compromise, I've been on it for 3 days now, solid and 2 weeks before that, there's just not much room ~~for~~ *to retreat. any further*

SPEAKER:  Let the speaker say the amendments may not, I don't know what the amendments will do, but I can't, ~~I can't~~ I'm not going to rule on them until they come up.  They're here.  Senator White.  White: I'm calling up the next amendment.

CLERK:  Amendment number 6 to amendment number 19 moved down by deleting from section 3 the following words of the last sentence thereof as follows.  Or within one year after the expiration of the anticipated life of the product whichever is shorter.

SPEAKER:  I'm gonna wait for this one (inaudible)

~~WILDER:~~  White.  Now, Mr. Speaker, Lady O'Brien and gentlemen, let me say first off that we're not here compromising our own rights, ~~we're~~ we're here compromising the rights of producers, sellers, and consumers.  This amendment would take off the language from the statute of limitations section that you just heard.  Let me read it, the statute of limitations section, section 3.  It says any action against the manufacturers or seller for injury to person etc., must be brought within a period fixed by the Tennessee Code and it mentions the code sections.  But then it says, not, I wish Senator Blank wouldn't yawn so audibly that I feel like he's, and Senator if I'm not going to be permitted to present this, you don't want me to present them, I just won't.  But ~~I I I~~ I'll show you the courtesy of listening to you, but it goes on notwithstanding any exceptions to these provisions, it must be brought within 6 years of the date of injury.  In any event, the action must be brought within 10 years from the date in which the product was first purchased for user consumption, if you adopt my amendment, it stops right there.  In other words within 6 years from the date of injury, but in any case within 10 years from the date the product was first purchased for user consumption.  Why isn't that adequate?  All this amendment deletes is, within 1 year after the expiration of the anticipated life whichever is shorter.  Now if you really don't intend to shorten the statute of limitations then you ought to adopt this amendment.  If you defeat this amendment then you want to shorten the statute of limitation and I don't see how any reasonable explanation other than that could be could be arrived at.  So I urge adoption of this amendment.

SPEAKER:  On the amendment under Rule 83.

CLERK:  No sir, this one was filed timely it was moved down Mr. Speaker.

SPEAKER:  Okay.  On the amendment now, this one's filed timely, simple majority of those voting.  Be voting if you punch a roll call.  Those favoring vote aye, and those opposed vote no, let every senator vote when the bell rings.  Every senator cast your vote. Has every senator voted? Does any senator desire to change his vote?  Take the roll.

CLERK:  Ayes 12 nos 18.

SPEAKER:  Failed.

CLERK:  Amendment number 10 to amendment number 19 filed today by Mr. Rucker by deleting the last sentence in section 3 thereof.

SPEAKER:  Senator Rucker.

RUCKER: Mr Speaker, I think under Rule 84, I should read that it may be considered that I have a degree of personal interest in the subject matter of this bill, but I declare that at my argument and my ultimate vote answer only to my conscience and to my obligation to my constituents and the citizens of Tennessee.  I haven't engaged in any of the debate here this afternoon because basically I'm for the bill.  However I do practice products liability law and I have two cases in my office and I want to state that before I get into it, but I do think gentlemen, and Lady O'Brien Mr. Speaker, we have a serious matter in the statute of limitations.  Now I realize under the two-thirds rule that I have no chance of getting this considered, but, I had filed this amendment to the original bill and not realizing that I had to refile the amendment to 19, I didn't get it filed until today.  But let me be very brief, and point this out to you.  Now under the McCrosky case Judge Henry held that it would be improper for any sort of rule to be laid down, any sort of law to be passed, which would prohibit a person from having the right to bring their lawsuit before the injury occurred, and if you adopt, if you do not adopt my amendment and strike the last sentence of the statute of limitations and that's the last sentence that Senator White has read to you 3 times, no need for me to read it again.  What

it says is, that if the you can never bring a lawsuit after 10 years after the article has been purchased, all right.  Now that would mean that if you had an article that you would use for more than 10 years and then it resulted in an injury to you, you would not be entitled to bring that lawsuit because it was more than 10 years after the article was purchased.  In the McCrosky case and let me read you what the court says.  Obviously since the plaintiff had not been injured at the time she purchased the car, she could not then maintain an action for her injuries.  To say then that her right of action accured before her injuries were received is to say that she was without remedy to recover damages for her alleged injuries.  Such an unjust and inequitable result is not the purpose of a statute of limitations.  They are designed to compel the prompt assertion of an accrued right of action not to bar such right of action before it has accrued.  Cause of actions for damages arising out of a torturous injury to a person accrues when all of the elements have occurred and can be alleged in a complaint.  Under this statute you could be barred from bringing your suit.  I recognize we're defeated, but Mr. Speaker, Lady O'Brien and gentlemen I felt necessary, it necessary to point out to you that this is in direct conflict with that holding and I predict if it is passed this way Judge Henry and the remaining members of the Supreme Court will promptly declare it unconstitutional.

SPEAKER:  Senator Talarico addresses the speaker first.

TALARICO:  Would Senator Rucker yield for questions, please?  Senator I didn't understand the part whereby you said that you filed amendment, this amendment uh—uh earlier where it would be timely filed would you explain that again?

RUCKER:  Yes sir.  I had filed an amendment to the original bill which would have had the effect of striking this portion or the original portion of the statute of limitations.  Now I I didn't realize and it's my fault, I'm not, I've got no complaint about it, I didn't realize I had to refile my amendment to the amendment 19, and I and that's the only thing I was saying.

TALARICO:  Mr. Speaker Mr. Speaker.

SPEAKER:  Senator Talarico.

TALARICO:  Under the conditions I think that this is an equally important piece of legislation as the PN bill that we suspended the rules for the other day to allow all amendments to be considered timely and it being this is the condition that Senator Rucker filed and then it came up that his amendment didn't apply to the section because he put an amendment on it to change uh uh the bill I think that this amendment and members of this senate should consider this and consider this as a timely amendment filed under the conditions.

SPEAKER:  Senator Blank.

BLANK:  Mr. Speaker I don't have a better friend up here than Senator John Rucker. He had 3 amendments filed to the original bill.  One of them was to strike the statute of limitations one of them was to change another portion of it and the other one was to go for 10 years.  I picked up the compromise of 10 years with Dean Wade frankly that figure was in my mind from that standpoint.  But be that as it may I would like to mention the McClansky case because I know it's been handed to each of them.  You know under the common law there was not even a right for wrongful action until the Lords Campbell Act in England gave it to them.  Gentlemen this is something that I think is vitaly important to our consideration of this case.  This legislature here never gave any of these rights the Supreme Court of the State of Tennessee in the last 10 years has granted 6 different theories or at least expanded 6 different theories that products liability case has been hung on.  They've been involved in the statutory law of granting or not granting.  All we're doing here is trying to reach a reasonable approach to the situation.  I don't know what the perfect statute of limitations would be but there's got to be something reasonable and if you come up with a reasonable change as this act is then we don't have the problem that a right of action cannot accrue until there is a cause of action because the right of action is controlled by the legislature.  What the McKlansky case was dealing with was when you determine the statute of limitations start to run after after the legislature had spoken and said it runs from the date of injury when the previous Supreme Court cases it said you only had 1 year from the date

of sell and that's what they were dealing with and struggling with. There's no problem if they find that we didn't reach a reasonable basis they can strike that down. I think that the 10 is a reasonable compromise. I certainly don't want to cut off Senator Rucker's rights that his other amendments are still up here and very frankly his other amendments would strike to the exact same section because this section has not been renumbered in the bill and they would be amendments that he could deal with in that regard. If if this body chooses to go back into those other amendments and from that standpoint uh his his rights, Senator Talarico I don't believe would be cut off because that section is still there, his amendment from the other day, does say amendment number 1 and this one says amendment number 19 but if the chair rules that this one is now amendment number 1 then those amendments would be applicable to it. I'd much rather have it rule the other way so sometime we might finish this bill, but I don't, I don't think that that's the case.

SPEAKER: Senator Gillock.

GILLOCK: Parliamentary inquiry. To inquire.

SPEAKER: Yes sir, Senator Gillock.

GILLOCK: We need for the Speaker to rule on what Senator Talarico is asking, uh and what Senator Blank has just spoken to and that is if we put an amendment up there and it's timely filed, I don't believe the rules ever contemplated it and my years in the Senate, 10 years, it's never come up like this that uh that because of while an amendments, superceeded that you could not then try to amend because, I I'm trying to hurridly look through the rule book, I'm sure the Speaker knows the rule, that you can change the number there, for the section that that amendment would go to, and uh it's just a matter of changing the number and it's not changing the substance in anyway, and that's what as I understand, the amendment does that Senator Rucker has and the other amendment, that he had up there and the other amendments I believe that I have, the 18 total amendments, even though they were to the bill, if we could do this, you could effectively cut off the, a lot of debate in the Senate, and may be the best way to handle it, but I don't believe the rules contemplate doing it that way.

SPEAKER:  Senator Byrd Baird.

Byrd BAIRD:  Mr. Speaker I don't believe there's any rule in this august body to handle such a thing, I just want to give you an example.  Suppose that I had a bill and I had 5 sections in it and every member of this body filed an amendment timely according to the rules of the Senate, then I came back and changed my bill and struck it out and only had 4 sections which would basically destroy all of the amendments as far as being directed to the wrong numbered section.  Now I myself have 3 amendments on this bill which were timely filed, which will basically get to the heart of this entire controversy, and I want to ask the Speaker, if my amendments, which were timely filed, are going to be, require a two thirds majority if I have to re-file them, today or are we going to adopt some means of adopting another amendment ahead of those to cut off and require a two thirds vote of the members being present as objected, as the usual rule of one majority of the, of the Senate.  And I think we're probably in somewhat of a confused state now as far as what we should be doing, as far as the other amendments which I understood, there was approximately 18 which were timely filed to the original bill, and uh I understood the Speaker just a few seconds a few minutes ago to say that all amendments were timely filed to the original bill, and that they would be heard, and I assume that the Speaker's ruling would require a majority vote.

SPEAKER:  Senator White.

WHITE:  Senator Blank I'm going to gonna need you in a minute too.  Mr. Speaker, just one statement, Mr. Speaker I would urge you to look at the rationale for the rule.  The House doesn't have this rule and they can use amendments to filibuster bills.  They can keep putting them on the desk and you've got to muster enough argument because a simple majority will carry one.  We saw fit in in adoption of Senate rules required two thirds in other words it has to be an amendment that has so little controversy that two thirds can adopt it before we entertain one that's placed on the desk the same day.  The reason for not requiring that is so there be noticed, there was notice on this bill, and no senator was surprised by it and a simple majority ought to carry and it should not because of some technicality in the rules require two thirds

majority.

SPEAKER:  Senator Hamilton.

HAMILTON:  Subject to _message_ from the House for notice and ~~passes~~ _passage_ of resolutions on first and second reading I move you sir we stand adjourned until 9:00 in the morning and I would notify each member that has a bill in the Commerce and Labor Committee pertaining to financial responsibility to be sure and go to that meeting ~~when we inform~~ _immediately upon_ adjournment.

SPEAKER:  Motion to stand adjourned seconded subject to announcements.  Announcements Senator Henry.

HENRY:  Mr. Speaker, Lady O'Brien, and gentlemen the Finance Ways and Means Committee will meet at 7:30 tomorrow morning, 7:30 tomorrow morning to consider two bills.

~~CROUCH:~~ _Clerk:_  Notice these given on

SPEAKER:  Senator Crouch.

CROUCH:  Mr. Speaker members of the majority party, don't forget the reception tonight at the Sheraton, Senator Garland, you're invited

SPEAKER:  6:30.

CROUCH:  Also the Governor's reception, all members tomorrow night at 6:30 is still on, at 6:30 at the Governor's residence.

SPEAKER:  Adjournment motion is before us, Senator Ashe wants a roll call.  Those favoring will vote aye when the bill rings, opposed will vote no, every senator cast your vote when the bell rings let every senator vote on adjournment.  Those favoring vote aye, those opposed vote no.  Take the roll Mr. Clerk.

CLERK:  Ayes 22 nos 5.