UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION )<br>)<br>)<br>)<br>THIS DOCUMENT RELATES TO: )<br>)<br>   All Cases Against the Saint Thomas )<br>   Entities )<br>)<br>)<br>) | MDL No. 2419<br>Dkt. No 1:13-md-2419 (RWZ) |

**SAINT THOMAS ENTITIES' JOINDER IN THE STOPNC DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND OPPOSITION TO THE PSC'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DOC. 2300]**

The Saint Thomas Entities[1] file this notice of their joinder in the *Memorandum in Support of STOPNC Defendants' Motion for Partial Summary Judgment and Opposition to the PSC's Motion For Partial Summary Judgment [Doc. 2300]* (Docket #2463) ("STOPNC Opposition"),[2] also filed today, responding to the *Plaintiffs' Steering Committee's Motion for Partial Summary Judgment Regarding Product Liability Claims Against Saint Thomas Outpatient Neurosurgical Center* (Docket #2300) ("PSC Motion"),[3] and also join in the *STOPNC Defendants' Motion for Partial Summary Judgment on the Plaintiffs' Claims for Strict Product Liability* (Docket #2462) ("STOPNC Cross-Motion") to show the Court as follows:

---

[1] Saint Thomas West Hospital, formerly known as St. Thomas Hospital, Saint Thomas Network, and Saint Thomas Health.

[2] The STOPNC Defendants consist of Saint Thomas Outpatient Neurosurgical Center, LLC ("STOPNC"), Howell Allen Clinic, John Culclasure, M.D., Debra Schamberg, RN, CNOR, and Vaughan Allen, M.D.

[3] *See also Plaintiffs' Steering Committee's Memorandum of Facts and Law Supporting Motion for Partial Summary Judgment Regarding Product Liability Claims Against Saint Thomas Outpatient Neurosurgical Center* (Docket #2302) ("PSC Memo").

1

**STATEMENT AND JOINDER**

The Saint Thomas Entities have been made parties to the cases against them in this multidistrict litigation because Saint Thomas Network is a 50% investor in Saint Thomas Outpatient Neurosurgical Center ("STOPNC")—an ambulatory surgery center located in a medical office building on the Saint Thomas West Hospital campus that administered contaminated methylprednisolone acetate ("MPA"). Neither the Saint Thomas Entities nor STOPNC had any role in causing the contamination. Nor did they have any knowledge of any contamination by the New England Compounding Center ("NECC").

The Plaintiffs' Steering Committee ("PSC") has moved for a partial summary judgment on behalf of the MDL plaintiffs with claims against STOPNC ("Tennessee Plaintiffs") seeking declarations that STOPNC is a "seller" for purposes of the Tennessee Products Liability Act and is therefore jointly and severally liable with NECC and its insiders and affiliates for the personal injuries claimed by the Tennessee Plaintiffs. The Saint Thomas Entities—whose liability to the Tennessee Plaintiffs is alleged to be derivative of STOPNC's—are potentially impacted by such a ruling and so adopt and join in the STOPNC Opposition. The Saint Thomas Entities also cross-move for partial summary judgment declaring that STOPNC is neither a "seller" for purposes of the Tennessee Products Liability Act nor jointly and severally liable with NECC or the Affiliated Defendants for the injuries claimed by the Tennessee Defendants. The Saint Thomas Entities adopt and join in the grounds and relief requested by the STOPNC Cross-Motion, as well as all exhibits submitted in support.

The Court has previously denied a motion to dismiss these product liability claims under Tennessee law, although it credited the Defendants' arguments that such claims are subsumed under the Tennessee Healthcare Liability Act because STOPNC provided professional services—

and the only "product" involved was used and consumed in connection with those services. Memorandum of Decision at 29-30 (Aug. 29, 2014) (Docket #1360). The Court, however, concluded that it "'should be extremely cautious about adopting substantive innovation in state law.'" *Id.* at 30 (quoting *Shuler v. Garrett*, 743 F.3d 170, 176 (6th Cir. 2014)). Consequently, and "[g]iven the lack of controlling authority to the contrary," the Court allowed the strict liability claim to proceed to discovery. *Id.* at 30-31.

As the Court is aware, a federal court in Tennessee is considering certifying this very question to the Tennessee Supreme Court for a definitive and authoritative resolution. *See State Farm Fire and Cas. Co. v. Specialty Surgery Center, PLLC*, Civil No. 2:15-cv-26, Memorandum (Docket #98) at 10-11 (M.D. Tenn. Nov. 3, 2015) (concluding that the Tennessee state courts "are far better-positioned to hand down an authoritative answer" (citing *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 578 (6th Cir. 2004); *Dayton v. Peck, Stow, & Wilcox Co. (Pexto)*, 739 F.2d 690, 694 (1st Cir. 1984)). If this Court deems it necessary to make an *Erie* guess prior to the Tennessee Supreme Court deciding the issue, the Saint Thomas Entities respectfully request that the Court follow the clear majority approach on this issue, which holds that a health care provider cannot be sued under a product liability theory for medications administered during the course of providing healthcare services. As briefed by the STOPNC Defendants, this is the only approach that is consistent with the Tennessee Healthcare Liability Act.

And it is noteworthy that this Court has followed the majority approach in dismissing products claims under other states' laws, employing reasoning similar to the arguments made by the STOPNC Defendants here. For example, applying Maryland law, the Court concluded that strict liability does not apply to the sale of goods combined with the provision of medical services, when the provision of services predominates the sale of the good. *See* Memorandum of Decision

3

at 5 (Sept. 8, 2015) (Docket #2225) (dismissing strict liability claims under Maryland law); *see also* Memorandum of Decision at 10 (Jan. 13, 2015) (Docket #1642) (dismissing strict liability claims under Illinois law).  As the Court noted in its January 13, 2015, decision:

> [T]he provision of ***the MPA was part-and-parcel with the service of its injection – the only purpose of the visit was the injection itself, something only a physician with special skill could provide.***  Under Illinois law, there is no action for strict liability on the complaint as alleged.

*Id.* (emphasis added).[4]

A very similar issue was presented to state courts in Indiana.  There, the issue was whether plaintiffs could assert "general negligence" and "informed consent" claims for the allegedly improper procurement and administration of MPA from NECC or whether they were limited to medical negligence claims under Indiana's Medical Malpractice Act.  Both the Elkhart County Superior Court and the St. Joseph County Superior Court independently concluded that the Indiana plaintiffs must bring all claims relating to the procurement of MPA from NECC under the Indiana Medical Malpractice Act.  *See In re Steroid Injection Litigation Against South Bend Clinic, LLP*, Cause No. 71D06-1405-CT-136 *et al.*, Order (St. Joseph Sup. Ct. Oct. 12, 2015) (Exhibit A) ("St. Joseph Order"); *Alcozar v. Orthopedic and Sports Medicine Ctr. Of N. Ind.*, Cause No. 20D01-1410-CT-216, Order on Pending Matters at 12-14 (Elkhart Sup. Ct. No. 1 Nov. 12, 2015) (Exhibit B) ("Elkhart Order").

In particular, the *Elkhart* court drew parallels to prior attempts to bring products liability claims outside of the Medical Malpractice Act, which were rejected.  The *Elkhart* court explained:

> Viewed in the larger context of treatment, [the clinic's] doctors and employees ***were acting in their professional capacity as a provider of healthcare when they***

---

[4] The Court dismissed the strict liability claims despite the fact that there was "no question . . . that plaintiffs were billed, separately, for both a service (the act of injection), and a product (the MPA)." Memorandum of Decision at 10 (Jan. 13, 2015).

4

> *purchased MPA from NECC,* on behalf of [the clinic's] patients. Accordingly, Plaintiffs' claims fall within the scope of the [Medical Malpractice Act].

Elkhart Order at 14 (emphasis added). Similarly, the St. Joseph Order rejected the plaintiffs' product liability claims:

> *With respect to the claim that MPA is a product* and not subject to the [Medical Malpractice Act], the small quantity of solution used in each injection of medical compound *was incidental to the medical procedure of injection.*

St. Joseph Order at 21 (emphasis added).

And finally, in Michigan, the court dismissed the plaintiffs' ordinary negligence claims against the healthcare defendants in those cases and proceeded to trial only on the medical negligence claims. The Michigan case was a class action on behalf of 170 patient plaintiffs (including patients who died as a result of contaminated MPA) who similarly alleged that the health care provider defendants were negligent in their selection and use of NECC as a supplier. The jury returned a defense verdict.

## CONCLUSION AND PRAYER

For these reasons and the ones set forth in the STOPNC Cross-Motion and Opposition, adopted and incorporated by reference, the Saint Thomas Entities request that the Court: (i) grant summary judgment on Plaintiffs' strict liability claims; (ii) deny the PSC's Motion in its entirety; and (iii) grant such other and further relief to which the Saint Thomas Entities are entitled.

SAINT THOMAS WEST HOSPITAL, FORMERLY KNOWN AS ST. THOMAS HOSPITAL, SAINT THOMAS NETWORK, AND SAINT THOMAS HEALTH

By their attorneys,
/s/ Sarah P. Kelly
Sarah P. Kelly (BBO #664267)
skelly@nutter.com
NUTTER McCLENNEN & FISH LLP
Seaport West
155 Seaport Boulevard
Boston, Massachusetts  02210
(617) 439-2000
(617) 310-9461 (FAX)

Dated: December 3, 2015

OF COUNSEL:

Yvonne K. Puig*
Texas State Bar No. 16385400
yvonne.puig@nortonrosefulbright.com
Adam T. Schramek*
Texas State Bar No. 24033045
adam.schramek@nortonrosefulbright.com
Eric J. Hoffman*
Texas State Bar No. 24074427
eric.hoffman@nortonrosefulbright.com

NORTON ROSE FULBRIGHT US LLP
98 San Jacinto Blvd. Suite 1100
Austin, Texas 78701
(512) 536-2450
(512) 536-4598 (FAX)

Marcy Hogan Greer*
Texas State Bar No. 08417650
mgreer@adjtlaw.com
ALEXANDER DUBOSE JEFFERSON & TOWNSEND LLP
515 Congress, Suite 2350
Austin, Texas 78701
(512) 482-9300

*Appearing *Pro Hac Vice*

## **CERTIFICATE OF SERVICE**

  This certifies that a true and accurate copy of the foregoing was served on all parties of record by virtue of the Court's electronic filing system this 3rd day of December, 2015.

              */s/ Sarah P. Kelly*
              SARAH P. KELLY