UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC., PROCUCTS LIABILITY LITIGATION | ) ) ) |
| | ) MDL No.:  2419 |
| | ) Master Docket No.: 1:13-md-2419-FDS |
| | ) |
| THIS DOCUMENT RELATES TO: | ) |
| | ) |
| *Besaw, et al. v. Saint Thomas Outpatient Neurosurgical Center, LLC*, et al., No. 1:13-cv-12604; | ) ) ) |
| | ) |
| *Ferguson,et al. v. Saint Thomas Outpatient Neurosurgical Center, LLC, et al.*, No. 1:13-cv-12571 | ) ) ) |

**PLAINTIFFS' STEERING COMMITTEE'S RESPONSE IN OPPOSITION TO ST. THOMAS ENTITIES' MOTION TO STRIKE DISMISSSALS OF BELLWETHER CANDIDATE CASES**

On November 20, 2015, Plaintiffs Donna Branham and Jon Kinsey, two of the bellwether

candidates in the current bellwether pool, voluntarily dismissed their cases in compliance with

Fed. R. Civ. P. 41(a)(1)(A)(i).[1]  Just three days later, on November 23, 2015, the Saint Thomas

Entities filed a Motion to Strike Dismissals of Bellwether Candidate Cases on the specious and

unsupported position that the Branham Notice and the Kinsey Notice were not in accordance

with Fed. R. Civ. P. 41(a)(1)(A)(i). [2]  Without addressing the actual language of this Court's

---

[1] *Besaw, et al. v. Saint Thomas Outpatient Neurosurgical Center, LLC, et al.*, No. 1:13-cv-12604, Donna Branham's Notice of Partial Voluntary Dismissal Without Prejudice (Dkt. No. 56) ("Branham Notice"); *Ferguson, et al. v. Saint Thomas Outpatient Neurosurgical Center, LLC, et al.*, No. 1:13-cv-12571, Jon Kinsey's Notice of Partial Voluntary Dismissal Without Prejudice (Dkt. No. 57) ("Kinsey Notice").  Although the *Besaw* and *Ferguson* actions involve several individual actions, only Branham and Kinsey filed for voluntary dismissal.
[2] Dkt. No. 2432 and 2433.

Case Management Orders or other relevant portions of the record, the St. Thomas Entities[3] ask

the court to strike those dismissals or to treat them as dismissals with prejudice that also count as

two "strikes" by the PSC. Leaving aside St. Thomas' hyperbolic extrapolations of various

"disaster scenarios," their motion is based on the faulty premise that filing a Master Answer

precludes individual plaintiffs from moving to dismiss their cases voluntarily under Rule

41(A)(1)(a)(i).  Because that premise is wrong, the motion should be denied.

## BACKGROUND

Missing from the St. Thomas Entities' Motion is any discussion of the Case Management

Orders and filings relating to the purpose and effect of St. Thomas Entities' Master Answer in

this MDL.   This is not surprising since support for the Saint Thomas Entities' Motion cannot be

found in these orders and any reading of these relevant filings reveal the folly of the Saint

Thomas Entities' position: namely that the St. Thomas Entities' Master Answer in this MDL

does not constitute, and was never intended to constitute, an "answer" in individual actions for

purposes of Rule 41(A)(1)(a)(i).

On June 28, 2013, after consolidation of the MDL, the Court entered Case Management

Order No. 6 ("CMO 6").  In relevant part, CMO 6 temporarily stayed the defendants' obligation

to respond to individual complaints, provided that "[n]o defendant need answer any complaint

until further order of this court," and indicated that "[t]hese deadlines will be revised as

discovery progresses."[4]  CMO 6 authorized the PSC to file a master complaint and individual

plaintiffs to file a short form complaint.[5]

---

[3] The Saint Thomas Entities include Saint Thomas West Hospital, Saint Thomas Health, and Saint Thomas Network.
[4] MDL Docket No. 209 at II.D.
[5] *Id*.

On September 18, 2013, the Court issued CMO 7, which set an October 9, 2013 deadline for the Unaffiliated Defendants (including the St. Thomas Entities) to respond to the **individual complaints** in cases from certain states, including Tennessee cases.  The Court also set a separate deadline for the defendants to respond to the Master Complaint.

On September 26, 2013, the St. Thomas Entities moved the Court to reconsider CMO 7, complaining that it was unjustified to require them to respond to individual complaints by October 9, 2013.  They argued that responding to individual complaints was unnecessary because "the stated basis for requiring answers at this time is for the PSC to 'obtain information' about their defenses."[6]  They also represented that the "purpose of having master and short-form pleadings is to **streamline the process** such that the parties can obtain the necessary information about the others' legal positions without requiring volumes of duplicative documents."[7]  At the October 17, 2013 status conference, the Court agreed that permitting the Saint Thomas Entities to file a Master Answer would limit "unnecessary work," and the Court explained that, "[i]n other words, the idea here **is just to do the minimum that needs to be done in order to make sure certain things happen by the relevant time frame, then we can sort it out later**."[8]  The Court also stated that the process "**has to protect the rights of both the defendants and the plaintiffs**[.]"[9]

In a November 7, 2013 Order, the Court reset the Short Form Complaint deadline (to December 20, 2013) and the Master Complaint deadline (to January 10, 2014).  On December 5,

---

[6] MDL Docket No. 457 at p. 8.
[7] *Id.*.
[8] D.E. 517 at 18:15-18.
[9] D.E. 517 at 24:9-10.

2013, Branham filed a First Amended Complaint.[10]  On December 20, 2013, Branham filed a

Short Form Complaint Against the Unaffiliated Defendants, as did Kinsey.[11]

Events in 2014 demonstrate how the St. Thomas Entities themselves regarded their

obligation to respond to the Master Complaint and their obligation to respond to the Short Form

Complaints as distinct.

On September 11, 2014, the St. Thomas Entities (among others) filed an assented-to

motion for extension of time to file Answers.  In the motion, the St. Thomas Entities represented

that they filed motions to dismiss in lieu of filing answers to the Master Complaint and "dozens

of individual complaints filed against them," they acknowledged that under Rule 12(a)(4) **they**

**were required to file answers "to the dozens of complaints against them**" by September 12,

2014, and they sought an extension to September 30, 2014 to file answers.[12]

On September 24, 2014, the St. Thomas Defendants filed a follow-up Assented-To

Motion to Allow Master Answers, in which they requested leave "to file master answers in

representative cases in *__lieu of answers in each of the cases in which they have been sued.__*"[13]

The motion represented that the St. Thomas Entities would file an answer to the *Reed* Short

Form Complaint. However, they stated that they "do not waive any defenses to claims or

allegations not made in the answered complaints, and **reserve the right to file answers to other**

---

[10] Donna Branham and Jon Kinsey each filed an original individual complaint against the St. Thomas Entities (among others) on September 17, 2013 in the Middle District of Tennessee, and both cases were transferred to this court on October 7, 2013 under CTO 20.  *See Branham v. Ameridose, et al.*, 1:13-cv-12604-RWZ, D.E. 1 and 19; *Ferguson, et al. v. Ameridose, et al.*, 1:13-cv-12571, D.E. 1 and 25;  MDL D.E. 512 (CTO 20).  Branham, along with certain other plaintiffs, jointly filed a First Amended Complaint on December 5, 2013.  (*Branham* D.E. 45.)
[11] *Branham* D.E. 46 (Branham Short Form Complaint); *Ferguson* D.E. 45 (Kinsey Short Form Complaint).
[12] MDL D.E. 1403.
[13] MDL D.E. 1447.

**Short Form Complaints as necessary** to address other allegations, claims, and causes of action."[14]

On October 1, 2014, the St. Thomas Entities filed a Master Answer and Affirmative Defenses to Plaintiffs' Amended Master Complaint.[15]  Although they explicitly reserved the right to file answers to the Short Form Complaints filed by Barnham, Kinsey, and other plaintiffs, the St. Thomas Entities chose not to answer those individual complaints, despite having well over one year to do so.

On August 14, 2015, the PSC and certain defendants (including the St. Thomas Entities) filed Notices of Filing that identified eight bellwether candidate cases each.  The parties continued to conduct only **common issue discovery** for the next few months.

On November 20, 2015, less than a month later, Kinsey and Branham filed the Kinsey Notice and Branham Notices under Rule 41(a)(1)(A)(i).  On November 24, 2015 – four days **after** Kinsey and Branham voluntarily dismissed their lawsuits – the Court entered an Order Setting Schedule for Case-Specific Discovery of Remaining Bellwether Candidates.[16]  That order set a written discovery deadline of December 14, 2015 and other deadlines leading up to a March 4, 2016 deadline for the close of case-specific fact and expert discovery.

### FUNCTION OF A MASTER COMPLAINT

The St. Thomas Entities' brief fails to discuss the function and effect of a "master complaint" in multi-district litigation.  The prevailing view is that a master complaint and master answer are merely **procedural devices** whose scope and effect are both defined by and limited

---

[14] *Id.* (emphasis added).
[15]  MDL D.E. 1464.
[16] MDL D.E. 2435.

by the MDL court's case management orders.[17]  Defendants in multi-district litigation often

attempt to ascribe more procedural significance to the master complaint or master answer than

the MDL court's orders warranted, and MDL courts are wary of precluding parties from

asserting or losing rights that were not expressly identified in case management orders.

For example, in *Richmond v. Actavis Totowa, LLC*, the MDL district court addressed a

situation similar to the one presented here.  A case management order stated that defendants were

not required to respond to file answers to short form complaints, that entry of an appearance

would constitute a denial of allegations in the Short Form Complaint and assertion of all

defenses included in the defendant's Master Answer, and that the defendants were not precluded

from filing Rule 12 motions or any other motion in any particular case, as appropriate.[18]  After a

plaintiff filed a notice of voluntary dismissal under Rule 41(a)(1)(A)(i), the defendants moved to

vacate that dismissal, contending that their Master Answer and associated notice of appearance

formally constituted an "answer" for purposes of Rule 41(a)(1)(A)(i).  The court disagreed,

finding that the case management order indicated that, under the terms of the case management

---

[17] *See, e.g.*, *Richmond v. Actavis Totowa, LLC*, 2010 U.S. Dist. LEXIS 35437 (S.D. W. Va. Apr. 8, 2010) (permitting Rule 41(A)(1)(a)(i) where defendant did not filed an answer in individual MDL case); *Tires Prod. Liab. Litig. v. Bridgestone/Firestone, Inc. (In Re Bridgestone/Firestone, Inc.)*, 256 F. Supp. 2d 884 (S.D. Ind. 2003) (limiting scope of master complaint's effect on individual complaints); *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 489 F. Supp. 2d 932, 936 (D. Minn. 2007) ("Consolidation of a master complaint is merely a procedural device designed to promote judicial economy, and, as such, it does not affect the rights of parties in separate suits."); *In Re Mercedes Benz TeleAid Contract Litig.*, 257 F.R.D. 46, 55-56 (D.N.J. 2009) ("The use of a superseding complaints as the operative pleading for determining the proper choice of law rules in a multi-district litigation is not without precedent. Doing so is only appropriate, however, when the parties have agreed to such an arrangement.  In the absence of such consent, the majority of courts treat consolidated complaints filed in multi-district litigations as a procedural device rather than a substantive pleading with the power to alter the choice of law rules applicable to the plaintiffs' claims."); *In Re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 454 (E.D. La. 2006) ("[A] Master Complaint is only an administrative device used to aid efficiency and economy and, thus, should not be given the status of an ordinary complaint.")

[18] *Richmond*, 2010 U.S. Dist. LEXIS 35437, at *5-6.

order, the answer did not have that effect.  The court explained that "[t]he entry of an appearance in this action served some, perhaps many of the purposes of an answer, but the language of Rule 41(A)(1)(a)(i) leaves little room for interpretation."[19]  The court explained that defendants were not without recourse: to prevent a plaintiff from dismissing an individual case unilaterally under Rule 41(A)(1)(a)(i), the defendants could simply file a formal answer in a particular case.

Here, the St. Thomas Entities identify no representation by the Court or the parties indicating that the Master Answer was intended to constitute an "answer" for all purposes (including for purposes of Rule 41(A)(1)(i)) in individual cases.  Indeed, statements by the court and representations by the St. Thomas Entities indicate that the opposite is true.

In multiple status conferences, the parties and the Court emphasized that the Master Answer was merely an administrative tool that the defendants were requesting for purposes of convenience and judicial economy, the Court emphasized that it was allowing a Master Answer to achieve the "minimum" necessary effect – namely to act as a placeholder for certain deadlines – and the Court emphasized that filing a Master Answer would still protect the rights of both defendants and plaintiffs.   The St. Thomas Entities moved for relief (and obtained it) from deadlines and certain obligations relative to the individual complaints by arguing to the Court that the Master Answer would have a **limited effect** that **did not preclude the defendants from answering or otherwise responding to the individual complaints**.

Throughout this litigation, the St. Thomas Entities have treated the Short Form Complaints as retaining a distinct character and have reserved their ability to answer them.  The record contains no order or representation from the St. Thomas Entities that the Master Answer was intended to constitute an answer for Rule 41(A)(1)(a)(i) purposes.  At any rate, individual

---

[19] *Id.* at *6.

plaintiffs  were not on notice that allowing the St. Thomas Entities to file a Master Answer thereby forfeited their rights under Rule 41(A)(1)(a)(i).

In effect, the St. Thomas Entities are trying to have their cake and eat it too.  With the blessing of the PSC and this Court, they carved out the minimum scope for their Master Answer as a means to avoid responding (as they would otherwise be required to do) to individual complaints in order to save time and money.  Only now, when faced with voluntary dismissal notices from two plaintiffs, do they walk back their words and argue that the Master Answer in fact supplanted the St. Thomas Entities' ability and obligation to respond to individual complaints for Rule 41(A)(1)(a)(i) purposes.  If that were the intended effect, the record would explicitly reflect this.  In fact, it explicitly reflects the opposite.

The St. Thomas Entities rely on a district court decision (and associated affirmance on appeal) in *In Re FEMA Trailer Formaldehyde Products Liability Litigation*, the circumstances of which are distinguishable.  There, two plaintiffs (mother and son) had their cases selected for the bellwether **trial** – not just as a bellwether **candidate** – and the parties apparently conducted extensive discovery specific to their cases, which related to a single FEMA trailer.  After one plaintiff withdrew voluntarily, the court appointed the other plaintiff's case for the bellwether trial.  When that plaintiff attempted to withdraw under Rule 41(A)(1)(a)(i) on the eve of trial, the court ordered that the case be dismissed with prejudice in  two-page opinion that cited no legal authority.  Omitted from the St. Thomas Entities' brief here is the crux of the district court's rationale: namely that the "parties have expended much time, effort, and money into readying the case involving the Bell trailer for trial," that permitting a voluntary dismissal without prejudice would mean that "all the pre-trial work and discovery relating the Bell trailer is rendered utterly useless," and that "[a]ll of the resources spent in preparing this case for trial have been wasted."

While the PSC does not concede that prejudice should play any role in the court's analysis – the St. Thomas Entities either "answered" for purposes of Rule 41(A)(1)(a)(i) or they did not – the prejudice to the St. Thomas Entities from Branham and Kinsey's dismissal notices is negligible.  Aside from correspondence relating to depositions of all plaintiffs and service of uniform, boilerplate discovery requests from the defendants (to which Branham and Kinsey did not need to respond), the parties did not invest substantial time or effort with respect to the Branham or Kinsey cases before the Notices of Dismissal were filed.  Thus, unlike in *In Re FEMA Trailer*, the Branham and Kinsey cases have not been selected as bellwether trial cases, the parties have not spent "much time, and money into readying" the Branham or Kinsey cases for trial, and there has been no waste of party and judicial resources occasioned by their voluntary dismissal notices. Indeed, the Court did not even enter a case-specific discovery order until **after** Branham and Kinsey filed their notices.

The St. Thomas Entities also present a parade of hypothetical horribles with regard to the bellwether selection process.  The St. Thomas Entities are exaggerating: at their own behest, their right to file answers in individual cases has been preserved, and nothing prevents them from doing so now relative to cases other than Branham and Kinsey.

In sum, the effect of the Master Answer is limited to the scope given to it by the Court in a particular case.  The St. Thomas Entities' contention that the Master Answer constitutes answers in individual cases for purposes of Rule 41(A)(1)(a)(i) finds no support in the record, it contravenes the St. Thomas Entities' own representations and the Court's articulation of the

function of the Master Answer, and it would be unfair to individual plaintiffs to strip them of

rights retroactively and without adequate notice. [20]

**CONCLUSION**

For these reasons, the St. Thomas Entities' Motion to Strike should be denied.

Date:  December 7, 2015                 Respectfully submitted:

**/s/ Benjamin A. Gastel_____**
J. Gerard Stranch, IV
Benjamin A. Gastel
BRANSTETTER, STRANCH &
JENNINGS, PLLC
223 Rosa L. Parks Ave., Suite 200
Nashville, TN 37203
Telephone:  615/254-8801
Facsimile:  615/255-5419
gerards@branstetterlaw.com
beng@branstetterlaw.com
*Plaintiffs' Steering Committee and TN Chair*

Thomas M. Sobol
Kristen Johnson Parker
HAGENS BERMAN SOBOL SHAPIRO, LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Telephone:  617/482-3700
Facsimile:  617/482-3003
tom@hbsslaw.com
kristenjp@hbsslaw.com

*Plaintiffs' Lead Counsel*

---

[20] If the court disagrees with the PSC's contention that the dismissals should be treated as voluntary dismissals without prejudice under Rule 41(A)(1)(a)(i), the Court should **not** treat the dismissals as strikes.  At most, the court could treat the dismissals as dismissals with prejudice, without treating them as strikes.  In essence, there is nothing for the PSC to "strike" relative to those two cases, and it would be unfair to the PSC to penalize it in the bellwether selection process because two particular plaintiffs have chosen not to proceed with their cases at this time, particularly where nothing in the record provided notice to the plaintiffs that filing a Notice of Voluntary Dismissal would have that effect.  After all, the PSC has no authority whatsoever to file voluntary dismissals of individual plaintiffs cases.  That is ultimately a decision that is left with the plaintiff and the plaintiff's respective counsel.  Accordingly, the PSC cannot reasonably be deemed to have exercised a "strike" as that term is used within the Court's bellwether plan.

Annika K. Martin
Mark P. Chalos
LIEFF CABRASER, HEIMANN & BERNSTEIN, LLP
250 Hudson  Street, 8th Floor
New York, NY  10013
Telephone:  212/355-9500
Facsimile:  212/355-9592
akmartin@lchb.com
mchalos@lchb.com

*Federal/State Liaison*

Marc E. Lipton
LIPTON LAW
18930 W. 10 Mile Road
Southfield, MI 48075
Telephone:  248/557-1688
Facsimile:  248/557-6344
marc@liptonlaw.com

Kimberly A. Dougherty
JANET, JENNER & SUGGS, LLC
31 St. James Avenue, Suite 365
Boston, MA 02116
Telephone:  617/933-1265
kdougherty@myadvocates.com

Mark Zamora
ZAMORA FIRM
6 Concourse Parkway, 22nd Floor
Atlanta, GA 30328
Telephone:  404/451-7781
Facsimile:  404/506-9223
mark@markzamora.com

Patrick T. Fennell (VSB 40393)
CRANDALL & KATT
366 Elm Avenue, S.W.
Roanoke, VA 24016
Telephone:  540/342-2000
Facsimile:  540/400-0616
pfennell@crandalllaw.com

*Plaintiffs' Steering Committee*

## CERTIFICATE OF SERVICE

I, Benjamin A. Gastel, hereby certify that I caused a copy of the foregoing *Plaintiffs'*

*Steering Committee's Opposition to the St. Thomas Entities' Motion to Strike Dismissals of*

*Bellwether Candidate Cases* to be filed electronically via the Court's electronic filing system.

Those attorneys who are registered with the Court's electronic filing system may access these

filings through the Court's system, and notice of these filings will be sent to these parties by

operation of the Court's electronic filing system.

Date:   December 7, 2015

/s/ Benjamin A. Gastel
Benjamin A. Gastel