**EXHIBIT 9**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>Suits Naming Specialty Surgery Center, PLLC | )<br>)<br>)<br>)  MDL No. 2419<br>)  Dkt. No 1:13-md-2419 (RWZ)<br>)<br>)<br>)<br>)<br>) |

## SPECIALTY SURGERY CENTER, PLLC and KENNETH R. LISTER MD'S RESPONSES TO THE PLAINTIFFS' STEERING COMMITTEE'S SECOND REQUESTS FOR ADMISSIONS AND CORRESPONDING INTERROGATORY

Pursuant to Rules 26, 33, and 36 of the Federal Rules of Civil Procedure and the Local Rules for the District of Massachusetts, Specialty Surgery Center, PLLC ("SSC") and Kenneth R. Lister, MD ("Dr. Lister"), by and through undersigned counsel, provides the following Responses to the Plaintiffs' Steering Committee's Second Set of Requests for Admissions and Corresponding Interrogatory.

### INTERROGATORY

1. Describe the due diligence performed in responding to the PSC's original Request for Production number 50 (from the PSC's first set of Requests for Production served in October 2013) including but not limited to, all investigation done to confirm that exhibit 5 referenced in response to Request for Production Number 50 was in effect in 2012.

RESPONSE:

**OBJECTION. This Interrogatory seeks information that is irrelevant to the claims forming the basis of the Plaintiffs' complaints. Further, SSC's Responses to the PSC's First Requests for Production were not verified under oath by Dr. Lister or a representative of SSC. Thus, this Interrogatory seeks work product in that it asks for information that invades the thinking of the lawyer surrounding the gathering and preparation of materials as part of the litigation process.**

Subject to and without waiving said objections, SSC made a copy of its full policy and procedure manual after receiving the Plaintiffs' First Request for Production in October 2013. Request for Production 17 sought "a copy of all of Specialty Surgery's written policies, procedures and guidelines," without limitation of time period. There was no need to confirm that the policies and procedures were in effect in 2012, although that was assumed to be true. There is no date on the most recent "approved medication list" that would have alerted anyone collecting the documents that it was changed after the outbreak. Further, when the requests were received and responded to, SSC was no longer operating, and a former SSC employee from SSC's billing department assisted in the collection of the documents. The former employee would not have been aware that the written approved medication list was updated because she was not involved in the clinical side of SSC's operations.

## REQUESTS FOR ADMISSIONS

1. Admit that in 2012, MPA was not on Specialty Surgery's approved medication list.

RESPONSE:

The Defendants admit that MPA/Depo-Medrol was not on SSC's written approved medication list in 2012, but deny that it was not approved for use at SSC. Dr. Lister had been using MPA exclusively for epidural steroid injection procedures for nearly a decade at SSC. The fact that it was not on the written approved medication list does not automatically establish that it could not be used there safely, and the Defendants deny that suggestion, implicit or explicit.

2. Admit that in 2012, Depo Medrol was not on Specialty Surgery's approved medication list.

RESPONSE:

The Defendants admit that MPA/Depo-Medrol was not on SSC's written approved medication list in 2012, but deny that it was not approved for use at SSC. Dr. Lister had been using MPA exclusively for epidural steroid injection procedures for nearly a decade at SSC. The fact that it was not on the written approved medication list does not automatically establish that it could not be used there safely, and the Defendants deny that suggestion, implicit or explicit.

3.  Admit that in 2012, compounded MPA was not on Specialty Surgery's approved medication list.

RESPONSE:

**The Defendants admit that MPA/Depo-Medrol was not on SSC's written approved medication list in 2012, but deny that it was not approved for use at SSC. Dr. Lister had been using MPA exclusively for epidural steroid injection procedures for nearly a decade at SSC. The fact that compounded MPA was not on the written approved medication list does not automatically establish that it could not be used there safely, and the Defendants deny that suggestion, implicit or explicit.**

4.  Admit that as of October 13, 2015, Specialty Surgery Center had never produced to plaintiffs the approved medications list in effect in 2012.

RESPONSE:

**The Defendants admit they had not produced what counsel now understands was the written approved medication list in 2012. The written approved medication list produced at SSC-00954 was put in effect in 2013, according to emails produced by Calisher and Associates in late 2015.**

5.  Admit that Specialty Surgery anticipated litigation arising out of the fungal meningitis catastrophe prior to April 2013.

RESPONSE:

**Admitted.**

6.  Admit that Specialty Surgery received notices under the Tennessee Healthcare Liability Act prior to April 2013.

RESPONSE:

**Admitted that SSC received notices of intent to sue prior to April 2013, but SSC does not make any specific admission of the notices' compliance with Tennessee Code Annotated § 29-26-121.**

3

7. Admit that Dr. Kenneth Lister received notices under the Tennessee Healthcare Liability Act prior to April 2013.

RESPONSE:

**Admitted that Dr. Lister received notices of intent to sue prior to April 2013, but Dr. Lister does not make any specific admission of the notices' compliance with Tennessee Code Annotated § 29-26-121.**

8. Admit that Specialty Surgery change [sic] the approved medication list in [sic] April 1, 2013 to include Depo Medrol.

RESPONSE:

**The Defendants admit that SSC's written approved medication list was amended in 2013 to add more than 40 medications to the list, including Depo-Medrol. The Defendants deny that MPA/Depo-Medrol was not approved for use at SSC prior to the formal addition to the written approved medication list. Dr. Lister had been using MPA exclusively for epidural steroid injection procedures for nearly a decade at SSC. The fact that it was not on the written approved medication list does not automatically establish that it could not be used there safely, and the Defendants deny that suggestion, implicit or explicit.**

9. Admit that the approved medication list in effect in 2012 was in the possession, custody, or control of Specialty Surgery on April 1, 2013.

RESPONSE:

**Admitted.**

10. Admit that Specialty Surgery had retained counsel prior to January 2, 2013 related to potential liability from the fungal meningitis catastrophe.

RESPONSE:

**Admitted.**

4

11. Admit that at the time Specialty Surgery changed its formulary to include Depo Medrol in 2013, Specialty Surgery was represented by the law firm of Gideon, Cooper & Essary PLC.

RESPONSE:

**Admitted.**

12. Admit that at the time Specialty Surgery changed its formulary to include Depo Medrol in 2013, Specialty Surgery was represented by the law firm of Brewer, Krause, Brooks & Chastain PLLC.

RESPONSE:

**Denied.**

Respectfully submitted,

**GIDEON, COOPER & ESSARY, PLC**

/s/ Chris J. Tardio
**C.J. Gideon, Jr.***
**Chris J. Tardio***
**Alan S. Bean****
**Matthew H. Cline***
315 Deaderick Street, Suite
Nashville, TN 37238
Ph: (615) 254-0400
Fax: (515) 254-0459
chris@gideoncooper.com

***Attorneys for SSC, Dr. Lister, and Dr. Lister's Practice***

* Admitted pursuant to MDL Order No. 1.
** Admitted *pro hac vice*.

5

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of October, 2015, a true and accurate copy of the foregoing was served on the PSC by hand-delivery for uploading the document repository. At this time, there are no other parties to the cases naming SSC.

/s/ Chris J. Tardio
**Chris J. Tardio**