**EXHIBIT 17**

```
            UNITED STATES DISTRICT COURT
               DISTRICT OF MASSACHUSETTS


IN RE:  NEW ENGLAND COMPOUNDING   :
PHARMACY, INC; PRODUCTS           : MDL No 2419
LIABILITY LITIGATION              :
                                  : Master Dkt.
                                  : 1:13-md-02419-FDS
THIS DOCUMENTS RELATES TO:        :
                                  : Judge Rya Zobel
All Cases Identified in           :
Docket No.  1472-1                :
                                  :


              VIDEOTAPED DEPOSITION
                 OF GINA CALISHER


                    9:11 a.m.
                September 28, 2015

                   St. Regis
               5520 Ka Haku Road
              Princeville, Hawaii



       Susan Helton, RPR, CCR No. B-2125
```



100 Mayfair Royal
181 Fourteenth Street
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

```
 1        Q.        And if someone had done that, you
 2   would be aware of it, correct?
 3        A.        I would think so.
 4        Q.        You would expect to be aware of it,
 5   correct?
 6        A.        Considering I was the one that put
 7   the inquiry out, yeah.
 8        Q.        So you had one contact where
 9   Ms. Atkinson asked you about availability issues
10   regarding the Depo-Medrol.  Did you have any
11   other contact with Ms. Atkinson about
12   pharmaceutical products other than that one?
13        A.        Not to my knowledge.
14        Q.        Did Ms. Atkinson ever contact you
15   about wanting to order pharmaceutical products
16   from any specific providers?
17        A.        No.
18        Q.        Let's talk about the services that
19   you provided under your management contract.  Did
20   Calishers produce a formulary of approved drugs
21   for Specialty Surgery?
22        A.        No.
23        Q.        Did you --
24        A.        I was the typist.
25        Q.        Okay.
```


DISCOVERY LITIGATION SERVICES
Court Reporting • Videography • Trial Presentations
Nationwide Coverage

100 Mayfair Royal
181 Fourteenth Street
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

```
 1   that you would use, you would just add whatever
 2   clinic told you that they used, correct?
 3              MR. KRAUSE:  Object to the form.
 4   BY MR. STRANCH:
 5      Q.      You can answer.
 6      A.      Yeah, over the years.  I mean, I
 7   have been doing this for 25 years, so, yeah.  But
 8   they had to make it site specific.
 9      Q.      Okay.  And would you be responsible
10   if there was changes made to the formulary for
11   updating and keeping that formulary current?
12      A.      Only if they informed me.
13      Q.      And if changes were made to the
14   formulary, is that something that they were
15   supposed to notify you of?
16      A.      On an annual basis they were
17   supposed to review their policy and procedure
18   manual and bring any revisions that had happened
19   during the previous year to the executive
20   committee and then the governing body for their
21   approval, review and approval.  Again, I was
22   merely the typist.
23      Q.      So it does not matter what changes
24   they made to a formulary, whether you believed
25   that they were safe or unsafe, if they said this
```

DISCOVERY LITIGATION SERVICES
Court Reporting • Videography • Trial Presentations
Nationwide Coverage

100 Mayfair Royal
181 Fourteenth Street
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

```
 1  is what we are using now, you would update it to
 2  reflect that now; is that correct?
 3              MR. KRAUSE:  Object to the form.
 4              THE WITNESS:  That's correct.
 5  BY MR. STRANCH:
 6      Q.      And so you have never had any
 7  training on building a drug formulary at all?
 8      A.      No.
 9      Q.      And you don't have any expertise in
10  that area?
11      A.      No.
12      Q.      During your 20-odd years of
13  managing clinics, have you become familiar with
14  drugs that were regularly used by clinics?
15      A.      What do you mean by familiar?
16      Q.      I mean, do you recognize drug
17  names?
18      A.      Occasionally.
19      Q.      Do you ever look in to determining
20  what those drugs do?
21      A.      No.
22      Q.      Would you ever say to a clinic, why
23  aren't you using this drug?
24      A.      No.
25      Q.      Would you hire an expert if that
```



100 Mayfair Royal
181 Fourteenth Street
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

Nationwide Coverage

1  notice on the next pages there was an effective
2  date of 8-12-10 and that is not on this page.
3      Q.      So do you believe this is the
4  actual formulary that was in effect at Specialty
5  Surgery?
6      A.      To the best of my recollection when
7  we did annual revisions, this may have come up at
8  the end.  And when the facility was being -- was
9  already under contract to be sold to Cumberland
10 Medical Center and I don't know why it was part
11 of, probably, the review and revisions in the
12 spring of 2013 --
13     Q.      So the policy --
14     A.      -- that I was asked to revise,
15 okay, but it was right at the end of our
16 management.  We were on the way out of the door.
17 I don't know that it ever got completed.  It
18 looks to me that it did not.
19     Q.      Okay.  So the formulary that would
20 have been in effect during the 2010 to 2012 would
21 be different from this one then?
22             MR. KRAUSE:  Object to the form.
23             THE WITNESS:  I assume so.
24 BY MR. STRANCH:
25     Q.      Okay.  Do you have in your records,



1   A.      The policy and procedure manual,
2   they had it in-house both in hard copy and on
3   computer. I asked that they not make changes to
4   it unless they ran it by us. Us as in Calisher,
5   okay. And at that point, then, you know, we make
6   the agreement which one of us was going to type
7   it.
8   Q.      Okay.
9   A.      But that had to go -- any revisions
10  like that, it was not really me in particular
11  that said yes or no. It went through the normal
12  process within the organization which it goes up
13  from the -- say, the director of nursing wanted
14  to make a change, she would go up to her
15  directors, to the medical executive committee,
16  they would need to approve it and then it would
17  go to the governing body who then would review
18  and approve it, so I was not approving it.
19  Q.      So your only involvement in changes
20  to the policy and procedures manual would be to
21  confirm that it's not going to put them out of
22  compliance with the regs and then to actually
23  make the typist changes sometimes?
24  A.      Yes.
25  Q.      Okay. And did you maintain old


DISCOVERY LITIGATION SERVICES
Court Reporting • Videography • Trial Presentations
Nationwide Coverage

100 Mayfair Royal
181 Fourteenth Street
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

```
 1  Do you know what this is?
 2       A.     Yes, it's approved medications.
 3       Q.     Okay.  And this is the one that you
 4  did for Specialty Surgery, correct?
 5       A.     Yes.
 6       Q.     And it's dated -- what is the date
 7  of it?
 8       A.     The date of this one?
 9       Q.     Yes.
10       A.     It's 8-12 of 2010.
11       Q.     And this was the formulary that was
12  in effect as of that date, 8-2010, correct?
13       A.     Correct.
14       Q.     And is Depo-Medrol listed on that
15  formulary?
16       A.     No, Solu-Medrol is and I don't know
17  enough about drugs to tell you if that is close
18  to it or not.  But, no, Depo, I don't see.
19       Q.     Yeah, Depo-Medrol is not listed
20  there.  Is MPA or methylprednisone acetate listed
21  on there?
22       A.     No.
23       Q.     Okay.
24       A.     No.
25       Q.     And you testified earlier that you
```



100 Mayfair Royal
181 Fourteenth Street
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

Nationwide Coverage

```
 1  made some changes to this document when they
 2  asked you to add certain things to it; is that
 3  correct?
 4       A.      There was an annual review of the
 5  policy and procedure manual, yes.
 6       Q.      Okay.  And this stayed in effect
 7  with no changes until April of 2013, correct?
 8              MR. KRAUSE:  Object to the form.
 9              THE WITNESS:  I don't know.  I
10       assume it did.  I don't know.
11  BY MR. STRANCH:
12       Q.      Let me show you a document that I
13  am going to mark as Exhibit 618 that is Bates
14  ranged CAL-0299 to 300.  (Tendered.)
15              (Exhibit Number 618, E-mail and
16       Attached list, dated April 1, 2013, Bates
17       CAL-00299 and CAL-00300, was marked for
18       identification.)
19  BY MR. STRANCH:
20       Q.      Do you recognize this e-mail?
21       A.      Yes.
22       Q.      And what is this e-mail?
23       A.      This e-mail is from myself to Jean,
24  and I cc'd Kim Bowlin, about the approved
25  medications list.
```



100 Mayfair Royal
181 Fourteenth Street
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

Nationwide Coverage

```
 1      Q.      Okay.  So that -- and that is the
 2  formulary, correct?
 3      A.      Yes.
 4      Q.      And you said that you put your
 5  additions in bold, correct?
 6      A.      Her additions.
 7      Q.      So those are the ones that Jean
 8  asked you to add in 2013?
 9      A.      Correct.
10      Q.      And if we turn to the second page,
11  300, there is a bunch of drugs listed in bold in
12  here that have been added, correct?
13      A.      Correct.
14      Q.      One of those is Depo-Medrol,
15  correct?
16      A.      Yes.
17      Q.      So Depo-Medrol was not on the
18  formulary for Specialty Surgery prior to April of
19  2013, correct?
20              MR. KRAUSE:  Object to the form.
21              THE WITNESS:  Correct.
22  BY MR. STRANCH:
23      Q.      And Jean asked you to add
24  Depo-Medrol in April of 2013, correct?
25              MR. KRAUSE:  Object to the form.
```



```
 1                THE WITNESS:  Yes.
 2   BY MR. STRANCH:
 3       Q.       MPA is not listed on this
 4   formulary, is it?
 5                MR. KRAUSE:  Object to the form.
 6                THE WITNESS:  What was the long
 7       name again?
 8   BY MR. STRANCH:
 9       Q.       Methylprednisone acetate.
10       A.       No.
11       Q.       And under your policies and
12   procedures from 8-2010 until this point they were
13   not supposed to be using any of those drugs in
14   bold because they were not on the formulary,
15   correct?
16                MR. KRAUSE:  Object to the form.
17                MR. MORAN:  Objection.
18                THE WITNESS:  That would be a
19       medical call because at any time a physician
20       could ask for something and get it.  But
21       technically were they supposed to tell me
22       about it at the revision time?  Yes.
23   BY MR. STRANCH:
24       Q.       Okay.  If I am looking at the
25   e-mail it says:  Please check the spelling as I
```


DISCOVERY LITIGATION SERVICES
Court Reporting • Videography • Trial Presentations
Nationwide Coverage

100 Mayfair Royal
181 Fourteenth Street
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

1  could not read some of the print very well.
2       A.      Yes.
3       Q.      Is that because you received
4  handwriting on a document?
5       A.      Probably.
6       Q.      Would Jean generally send you
7  handwritten things, changes such as that?
8       A.      At revision time, yeah, she very
9  well could have.
10      Q.      Would it be sent to you by e-mail?
11      A.      It could have been sent by e-mail.
12 It could have been faxed to me.
13      Q.      It was if it was faxed, would you
14 have maintained a copy of that?
15      A.      A handwritten?  Probably not.  I
16 would drown in paper.
17      Q.      Do you have a policy when you
18 receive faxes like that of scanning them in and
19 saving them somewhere?
20      A.      No, I -- they may do that now but
21 at the time, no.
22      Q.      Okay.
23      A.      I just recently learned how to use
24 a scanner.
25      Q.      The previous Exhibit 617, the 2010



```
 1  formulary, was a copy of that provided to
 2  Specialty Surgery?
 3       A.      This was theirs.
 4       Q.      That was theirs?
 5       A.      Yes.
 6       Q.      Okay.  And so they should have, as
 7  you said earlier, a hard copy in 2010 that had
 8  that formulary in it, correct?
 9               MR. KRAUSE:  Object to the form.
10               THE WITNESS:  A hard copy and a --
11  BY MR. STRANCH:
12       Q.      And an electronic copy as well.
13       A.      Uh-huh.
14       Q.      So they should have a hard copy in
15  2010 of that formulary, correct?
16               MR. KRAUSE:  Object to form.
17               THE WITNESS:  Yes.
18  BY MR. STRANCH:
19       Q.      And they should also have an
20  electronic copy in 2010 of that formulary?
21               MR. KRAUSE:  Objection.
22               THE WITNESS:  They would have that
23     by then also.
24  BY MR. STRANCH:
25       Q.      And that should have stayed in hard
```



1  copy and electronic copy until it was replaced in
2  2013 with the new formulary, correct?
3              MR. KRAUSE:  Object to the form.
4              THE WITNESS:  Right.
5  BY MR. STRANCH:
6       Q.     So to make sure we are clear, the
7  2010 formulary is Exhibit 617, correct?
8       A.     Yes, sir.
9       Q.     And that is the one that Specialty
10 Surgery had in their policies and procedures
11 manual as the only approved drug formulary from
12 2010 until its replacement in 2013, correct?
13             MR. KRAUSE:  Object to the form.
14             MR. MORAN:  Objection.
15             THE WITNESS:  To the best of my
16    knowledge.
17 BY MR. STRANCH:
18      Q.     So at the time you were discussing
19 with Jean Atkinson the supposed shortage of
20 Depo-Medrol and Specialty Surgery's intention to
21 find another source, Depo-Medrol was not on the
22 formulary, correct?
23      A.     Apparently not.
24             MR. KRAUSE:  Object to the form.
25 BY MR. STRANCH:



100 Mayfair Royal
181 Fourteenth Street
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

DISCOVERY LITIGATION SERVICES
Court Reporting • Videography • Trial Presentations
Nationwide Coverage