UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION _____ THIS DOCUMENT RELATES TO: Suits Naming the STOPNC Defendants | MDL No. 2419 Dkt. No 1:13-md-2419 (RWZ) |

**STOPNC DEFENDANTS' MOTION FOR PROTECTIVE ORDER
TO PRECLUDE DEPOSITIONS OF SIX (6) HOWELL ALLEN PHYSICIANS**

Saint Thomas Outpatient Neurosurgical Center, LLC; Howell Allen Clinic, a Professional Corporation; John Culclasure, MD; Debra Schamberg, RN, CNOR; and Vaughan Allen, MD (hereinafter the "STOPNC Defendants") file this Motion for Protective Order to preclude the depositions of six (6) Howell Allen physicians noticed by the PSC.

**1. Background**

The PSC subpoenaed the following Howell Allen physicians to testify in depositions:

| Physician | Case(s) | Date / Time |
|---|---|---|
| Paul McCombs, MD | *Skelton* | 12/22/15, 9:00 am |
| Tim Schoettle, MD | *Sullivan* | 12/22/15, 1:00 pm |
| Carl Hampf, MD | *Sharer* | 12/23/15, 9:00 am |
| Adam Reig, MD | *Sharer* | 12/23/15, 1:00 pm |
| Greg Lanford, MD | *Reed* | 12/28/15, 9:00 am |
| Scott Standard, MD | *Temple, Berry, Brock, McElwee* | 12/29/15, 9:00 am |

These physicians were not involved in the decision to purchase medication from NECC, nor did they interact with the Medical Sales Management personnel or representatives of NECC. They did not perform epidural steroid injections on any of the patients. They did not participate in the medical services provided to any Plaintiff at STOPNC. Their only relevant knowledge is (1) that they referred the patients to STOPNC for injections and (2) that, in some cases, they treated the patients post-outbreak. Neither of these points – or even the nature and extent of their treatment of the Plaintiffs – is disputed. Their depositions are literally unnecessary.

The STOPNC Defendants proposed a much more reasonable, cost- and time-efficient method for establishing post-outbreak facts to eliminate dozens of hours of duplicative depositions on essentially undisputed facts: the two (2) options were to establish the facts by using the documents already produced, or "prove" the same set of facts by stipulation. Either option objectively assembles and packages the evidence in a sensible, cost-effective fashion.

This is the precise approach the PSC repeatedly advocated for in prior settings when the STOPNC Defendants sought much more important deposition testimony. Despite endorsing this approach on multiple occasions, the PSC reverses course, refuses detailed suggestions, and contends that records and stipulations will not suffice.

The Court should order that these depositions not take place because the evidence sought can be ascertained easily from the medical records and a simple set of stipulated facts in each case. There is simply no need for these depositions except to inconvenience the witnesses and obtain more, duplicative testimony on the pain and suffering by these Plaintiffs, and to "fish" for helpful testimony from physician members of the defendant clinic.

If records and stipulations are sufficient for the *Defendants* to establish important points, they should certainly be sufficient for the *PSC* to establish these tangentially relevant facts regarding after-the-fact treatment.[1]

### 2. Law governing decision

The Court has an obligation in lengthy and complex cases to supervise and limit discovery to protect parties (and non-parties) from annoyance and excessive expense. *See Dolgow v. Anderson*, 53 F.R.D. 661, 664 (E.D. N.Y. 1971). When faced with unreasonably duplicative discovery, the proper remedy is to seek protection from the Court. *Drouin v. Symetra Life Ins. Co.*, 242 F.R.D. 167, 169 (D. Mass. 2007).

Most importantly, Rule 26 *requires* (the court "must") a protective order where the discovery sought is unreasonably cumulative or duplicative *or* can be obtained from another source that is more convenient, less burdensome, or less expensive. FED. R. CIV. P. 26; *see, e.g.*, *Melendez v. Primavera Meats, Inc.*, 270 F.R.D. 143, 145 (E.D. N.Y. 2010) (finding defendants' own records, plus interrogatories and other document requests, would be less intrusive, justifying protective order); *EEOC v. Ceridian Corp.*, 610 F. Supp. 2d 995, 997 (D. Minn. 2008) (finding that production of full tax returns not

---

[1] Also, one of the depositions is sought in a case that has been stricken from the trial candidate pool. That should certainly not be allowed.

3

necessary where party already had W-2s and 1099s; "this Court is satisfied that the information about Mr. Shelton's earnings is readily available from other sources").

Courts are obligated to assess, on a case-by-case basis, the discovery request, and balance the burden with the need for the information and availability of the information from other sources. *See* FED. R. CIV. P. 26 (2015 cmts.) ("[The] court's responsibility, using all the information provided by the parties, is to consider these and all other factors in reaching a case-specific determination of the appropriate scope of discovery[.]"). Restrictions on discovery are broader when a non-party is the target of a discovery request, so as to protect the non-party from unnecessary inconvenience or expense. *In re Candor Diamond Corp.*, 26 B.R. 847, 849 (S.D. N.Y. 1983).

This Court has recognized its obligation, in ruling on previous discovery motions, to "protect responding parties from undue burden or expense."[2] In fact, the Court has specifically recognized the obligation of requesting parties to try to obtain information "from other more convenient and less burdensome sources."[3]

---

[2] Doc. 2392 (citing FED. R. CIV. P. 26(b)(2) and *In re App. of IKB Deutsche Industriebank AG*, No. 09-cv-7852, 2010 WL 1526070, at *5 (N.D. Ill. Apr. 8, 2010)).

[3] Doc. 2392 (denying St. Thomas Entities' Motion to Compel MSM documents). As this Court will recall, MSM's position on all discovery issues has been that it "had never compounded, tested, or distributed MPA." Doc. 2223. The same principles apply here. These physicians were not involved in the central facts important to these cases.

### 3. Requested relief

On prior occasions, when the Tennessee Clinic Defendants sought depositions from entities such as the Massachusetts Board of Registration in Pharmacy, the PSC insisted that documents were a complete substitute for testimony of any individual. The same principles should be applied when the roles are reversed. The PSC can obtain information regarding referral of these patients to STOPNC and the patient's post-outbreak care through stipulations and introduction of the medical records. The depositions are unnecessary, are costly, and will delay the proceedings.

The Court should issue a protective order that:

1. Precludes the PSC from taking the deposition of Dr. Lanford in the *Reed* case. *Reed* has been stricken from the first group of trial candidates.

2. Precludes the PSC from taking the depositions of Dr. McCombs, Dr. Schoettle, Dr. Hampf, Dr. Reig, and Dr. Standard, *until* and *unless* the PSC makes a showing that medical records and stipulations are insufficient to establish the limited, tangentially important facts they wish to establish with these witnesses.

### 4. Deposition of Dr. Lanford in *Reed*

This Court can easily dispatch one (1) issue at the outset – the requested deposition of Dr. Lanford in the *Reed* case. The Court has *twice* ruled that the parties are allowed to strike cases from the trial candidate pool.[4] The Defendants, implementing the protocol in place, struck *Reed* from the candidate pool.[5] The PSC's unwillingness to acknowledge the timely strike does not invalidate the Defendants' action. *Reed* simply is not part of the initial trial pool. There is zero reason to subject Dr. Lanford to the

---

[4] Docs. 2075, 2345.
[5] Doc. 2337.

inconvenience, time, and expense of a deposition in *Reed*, a case that will not be a bellwether trial. He is entitled to a protective order precluding this deposition.[6]

> **5. The PSC's position has repeatedly been that the Tennessee Clinic Defendants should not be allowed to take depositions when there are documents available on the same issues.**
>
> > **a. The PSC has asserted repeatedly that documents are an adequate substitute for deposition testimony and that the Court should not allow deposition testimony when documents are available for review.**

The PSC repeatedly protested when the Tennessee Clinic Defendants sought depositions to prove their defenses, insisting that the Court should not allow depositions of witnesses where records are available. The PSC urged the Court to find that records were an equivalent substitute for deposition testimony. Examples abound:

1. **FDA**: When the Tennessee Clinic Defendants sought to depose the FDA on its relevant knowledge, the PSC argued that a deposition would be cumulative and the Defendants should be satisfied with the FDA's documents. The PSC instructed the parties and Court that "documents…are the logical starting point and, hopefully, the ending point,"[7] and that, because documents had been produced, a deposition was "unnecessary," "simply not necessary," and "will not aid [on the issues]." A deposition was unnecessary – the PSC said – because the FDA's actions were "well known."[8]

2. **Mass. Board of Pharmacy:** When the Tennessee Clinic Defendants tried to depose the Massachusetts Board of Pharmacy ("MA BoP"), the PSC maintained that a deposition was "not necessary to answer [the] question"[9] because the Defendants had documents. Analogous to the present situation, the PSC said a deposition covering the MA BoP's 2011 inspection was "clearly" unnecessary: "Not only does the report detail what the Board saw during the inspection, including the actual pictures taken, it is readily available to the public. Clearly, deposition testimony is not necessary on this issue."[10]

---

[6] Not to mention that Dr. Lanford has already given a multi-hour deposition in the common discovery phase.
[7] Hr'g Tr., p. 38 (May 28, 2015 status conference).
[8] Doc. 1902, pp. 1, 2, 3.
[9] Doc. 2088, p. 4.
[10] Doc. 2088, p. 4.

3. **NECC / MSM**: When the Tennessee Clinic Defendants attempted depositions of NECC and MSM, the PSC argued that depositions were unnecessary because the documents produced were "very, very clear" on the issues that the Tennessee Clinic Defendants sought to explore in the depositions.[11]

4. **Depositions of Case-Specific Plaintiffs**: When the Tennessee Clinic Defendants sought to take depositions of individual Plaintiffs, followed by strikes, the PSC argued that depositions *of individual Plaintiffs* were unnecessary for this process because of the documents available, claiming that: "The Defendants have already received detailed plaintiff profile forms for each of these cases, as well as all relevant medical records, employment records (where applicable), and scores of other relevant documents. In many cases, the Plaintiffs were treated at Defendants' hospitals. In other words, even without depositions, Defendants have robust information about the Plaintiffs in the bellwether pool."[12]

Consistent with this position, the Court has considered the availability of documents as a factor that favors granting protective orders precluding depositions:

➢ In granting a protective order precluding a deposition of NECC, the Court concluded: "Moreover, the Clinic Defendants' inability to take NECC's deposition does not limit their ability to conduct discovery from NECC altogether. The Trustee has already made many documents available in response to the subpoena."[13]

➢ In granting a protective order precluding a deposition of the FDA, the Court commented that "the Court's order does not limit the Tennessee Clinic Defendants' ability to obtain document discovery from the FDA."[14]

  **b. The PSC takes the position that depositions covering the same information as documents produced should not be permitted because it is duplicative.**

Likewise, the PSC challenged the Tennessee Clinic Defendants' ability to obtain testimony, contending that the Court should not allow duplicative discovery in the form of depositions where documents cover the testimony sought.

---

[11] Hr'g Tr., pp. 36-37 (Sept. 9, 2015 status conference).
[12] Doc. 2342, pp. 2-3.
[13] Doc. 2123.
[14] Doc. 2123.

7

Specifically, when the Tennessee Clinic Defendants sought discovery from NECC to assist in proving their defenses, the PSC fought that effort, claiming it was cumulative of documents already produced in the litigation: "NECC's liability…is easily established based on the thousands of pages of documents already made available."[15] The PSC complained that further discovery of NECC was "simply duplicative discovery over information already made available to the Tennessee Clinic Defendants" and that "[c]ourts routinely deny such duplicative discovery, especially where the duplicative discovery is obtained at the expense of a non-party."[16]

### c. The PSC has taken the position that stipulations are adequate to establish undisputed facts, and that depositions to establish these facts should not be allowed.

The PSC also contends that depositions should not be allowed where stipulations can substitute for the facts to be established in the deposition.[17] The Court has agreed with this general principle. In granting a motion for protective order precluding the deposition of NECC, the Court weighed the fact that "[i]t also appears that the Plaintiffs are willing to stipulate that NECC distributed the product administered by the Clinic Defendants, thereby eliminating the need for some of the discovery they seek."[18]

---

[15] Doc. 1902, p. 4.
[16] Doc. 1902, p. 4.
[17] *See, e.g.,* Doc. 2138, proposing stipulation related to Dr. Austin, "further obviating the need for his testimony."; Hr'g Tr., pp. 36-37 (Sept. 9, 2015 status conference) (additional discovery on location of contamination not necessary because issue is not in dispute and a stipulation can be worked out).
[18] Doc. 2123.

### d. The PSC contends that any unnecessary delay of the proceedings is absolutely unacceptable.

The PSC's position for many months has been that any delay of the first trial for discovery or any other reason is absolutely unacceptable. For instance, the PSC recently opposed a request for a two (2) week extension in order to respond to a multi-faceted motion (the PSC "cannot afford to endure such added delays"[19]) and opposed an interlocutory appeal that it had previously advocated for (it will "delay progress of this litigation by more than a year and dramatically increase its cost"[20]). Multiple depositions of treating physicians will require time to schedule and to complete.

### 6. The arguments of the PSC and the previous rulings and reasoning of the Court should apply with equal force to this situation.

Now is the time to determine if the PSC's lectures on efficiency and avoiding allegedly "unnecessary" depositions were sincere, or nothing more than opportunistic posturing. The PSC seeks to take a half-dozen depositions of Howell Allen physicians who treated individual patients in an effort to "prove up" the injuries suffered by the individual Plaintiffs. They have the medical records. They have taken the deposition of Robert Latham, MD, the infectious disease physician who treated these patients after the outbreak. They also have their own clients, fully capable of describing the injuries due to the contaminated injection. They will have expert witnesses. The Defendants even proposed a model stipulation making the depositions truly unnecessary.

---

[19] Doc. 2350, p. 4.
[20] Doc. 2393, p. 3.

The PSC's response on this issue demonstrates unprincipled posturing. Thousands of pages of documents are no longer the "logical starting point" and an adequate substitute for the testimony of the witnesses. Taking depositions of witnesses where previously-deposed witnesses and already-produced documents cover the same material is no longer "simply duplicative discovery over information already made available" that "[c]ourts routinely deny." Where documents and stipulations are available to establish the information, depositions are no longer "clearly" "unnecessary." And, adding another 6+ depositions[21] is no longer "added delay" that the PSC "cannot afford to endure" when the PSC wants to depose witnesses.[22]

This is obviously hypocritical. The PSC embraces one position when discovery is sought of parties and non-parties that could potentially harm their position. When they feel the discovery benefits them, all prior arguments are unceremoniously abandoned. The same principles espoused by the PSC for the last year fit the current circumstances, and should apply.

---

[21] The Plaintiffs have requested six Howell Allen physicians, two treating physicians unaffiliated with Howell Allen, and, presumably, will request more treating physicians in the remaining potential bellwether cases. Assuming each deposition takes 3-6 hours (based on estimates provided by the PSC), this will be another 25+ hours of depositions. It is burdensome on these uninvolved physicians to take time to prepare for the deposition, set time away from their clinical practice, and submit to hours of questioning on uncontested points that could be established if the attorneys would simply set out the facts that need to be established in a stipulation. Plus, 25+ hours of attorney time and, for some attorneys, travel time involved, is not an insignificant cost, well into the tens of thousands of dollars. There are other more important ways to spend these hours in these cases, preparing for the first trials, than taking dozens of hours of testimony on undisputed and largely inconsequential testimony.

[22] Also interesting is the apparent position that these treating provider depositions, to cover damages issues, are so important, when juxtaposed against the position taken by the PSC at the last status conference that compensatory damages are not an issue of primary importance in these cases: "The parties in this case – their disagreement is not over how to value cases. The problem is not what various death cases might be worth or what fungal meningitis cases might be worth. The problem is that the parties have a fundamental disagreement, different view, about how liability should be allocated in this situation, and that question isn't a function of compensatory damages." Hr'g Tr., p. 11 (Nov. 12, 2015 status conference).

The Plaintiffs have the medical records, the testimony of Dr. Latham, and the testimony of their own clients, all of which can establish (1) that they were referred to STOPNC for an injection and (2) the course of treatment after the outbreak. This already-produced information is obviously more convenient, less burdensome, and less expensive than spending dozens of hours deposing Howell Allen treating providers about tangentially important information. Literally all of this information can be established by stipulation.

### 7. Much more reasonable, cost-efficient, and time-efficient approach

The Tennessee Clinic Defendants outlined many of the points above in a letter to the PSC over the Thanksgiving holiday.[23] The letter suggested that the PSC review the medical records and propose a set of stipulations that cover (1) admissibility of the medical records and (2) any facts they wish to establish from the depositions of these witnesses. The PSC responded with its refrain about "delay" (ironic, given that the approach proposed by the Tennessee Clinic Defendants would eliminate hours of depositions) and simply issued notices for the depositions on dates around the Christmas and New Year's holiday that do not work. Counsel for the Tennessee Clinic Defendants' continued the unilateral effort at a good faith meet and confer and offered a proposed stipulation.[24] It was sarcastically rejected by the PSC in two hours without any indication of reasonable deliberation.[25]

---

[23] *See* exhibit 1.
[24] Email and proposed stipulation attached as exhibit 2.
[25] *See* exhibit 2.

The Court should not abandon the principles applied in discovery to this point just because the *PSC* now requests duplicative depositions. The Court should exercise its duty to control cost in discovery and preclude the Plaintiffs from taking the depositions requested until it shows that the medical records and other documents and testimony disclosed to date cannot adequately substitute for these depositions.

    Respectfully submitted,

    **GIDEON, COOPER & ESSARY, PLC**

    /s/ Chris J. Tardio
    **C.J. Gideon, Jr.***
    **Chris J. Tardio***
    **Alan S. Bean****
    **Matthew H. Cline***
    315 Deaderick Street, Suite 1100
    Nashville, TN 37238
    Ph: (615) 254-0400
    Fax: (615) 254-0459
    chris@gideoncooper.com

    ***Attorneys for the STOPNC Defendants***

* Admitted pursuant to MDL Order No. 1.
** Admitted *pro hac vice*.

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be served electronically to the registered participants identified on the Notice of Electronic Filing and copies will be e-mailed or mailed via regular U.S. mail to those participants identified as unregistered this 15th day of December, 2015.

    /s/ Chris J. Tardio
    **Chris J. Tardio**