# GIDEON, COOPER & ESSARY

A PROFESSIONAL LIMITED LIABILITY COMPANY
SUITE 1100, 315 DEADERICK STREET
NASHVILLE, TENNESSEE 37238
(615) 254-0400
FAX (615) 254-0459
www.gideoncooper.com

CHRIS TARDIO
chris@gideoncooper.com
Licensed in Tennessee and Kentucky

November 27, 2015

**<u>Via Electronic Mail</u>**
George Nolan, Esq. (gnolan@LeaderBulso.com)
Daniel Clayton, Esq. (dclayton@kcbattys.com)

    Re: *Treating provider depositions*

Dear George and Daniel:

    You have requested the depositions of:

Dr. McCombs
Dr. Hampf
Dr. Schoettle
Dr. Reig
Dr. Lanford
Dr. Standard.[1]

    You have not told us in what individual cases you are requesting these depositions, only that you anticipate 2-3 hours for background and then 1-2 hours for each individual case, and that some witnesses will have to sit for multiple days.[2]

    The PSC's position for the last six months of this litigation has been that documents are sufficient to prove central issues in the case, and that depositions on important issues are unnecessary where documents can substitute. Additionally, the PSC's position for at least the last six months has been that nothing should be done to delay the first trials in these cases. The same principles hold true for these depositions. In fact, they are even more applicable.

---

[1] You have also requested the depositions of several other treating providers who are not employed by Howell Allen, and mentioned that you want to take Dr. Culclasure again. All told, this appears to be at least 50-100 hours of additional deposition testimony.
[2] Email dated 11/4/15, from Daniel Clayton.

For the reasons explained below, we reject your open-ended requests to depose these non-party treating physician fact witnesses until we receive an adequate explanation for why these depositions are necessary in light of the medical records produced and discovery taken to date, and until we are satisfied that the PSC has – as the PSC has instructed us to do multiple times – reviewed the records produced and considered adequate substitutes (*e.g.*, stipulations) for these depositions.

### 1. Role of these witnesses

These Howell Allen physicians were not involved in the decision to purchase medication from NECC. They would have no relevant, discoverable knowledge on the "common" issues in the case. Presumably, your only intent in taking these depositions is (1) to establish that they referred the patients to STOPNC for the injections and (2) to explore the patients' health before and after the injections.

### 2. PSC's position that documents are sufficient substitutes for depositions to prove issues in case

The PSC has roadblocked, at every opportunity, our attempts to obtain necessary, relevant depositions from parties and non-parties in this litigation, telling us to rely on documents produced. Recall:

> ➤ When we sought to depose the FDA on its regulation of NECC and numerous other relevant issues in the case, the PSC took the position that the documents produced by the FDA were sufficient and that a deposition was unnecessary and cumulative. The PSC's position was that "documents here are the logical starting point and, hopefully, the ending point."[3] The PSC maintained that a deposition on the documents produced "is unnecessary", "simply not necessary," and "will not aid [on the issues]" because the role of the FDA was "well known."[4]

> ➤ When we sought to obtain deposition testimony from the Massachusetts Board of Pharmacy, the PSC took the position that a deposition was unnecessary given the documents produced in the litigation. The PSC stated that a deposition was "not necessary to answer [the] question" of what information Board had before 2012 because documents were available to review.[5] Likewise, when we sought to depose the Massachusetts Board of Pharmacy to establish points in the Board's 2011 inspection, the PSC took the position that the inspection report was sufficient to establish anything needed, and a deposition "clearly" unnecessary: "Not only does the report detail what the Board saw during the inspection, including the actual pictures taken, it is readily available to the public. Clearly, deposition testimony is not necessary on this issue."[6]

---

[3] May 28, 2015, status conference, p. 38.
[4] Dkt. 1902, p. 1, 2, 3.
[5] Dkt. 2088, p. 4.
[6] Dkt. 2088, p. 4.

2

> ➢ When we sought to obtain information from NECC and MSM, the PSC took the position that the documents produced to date "are very, very clear" on certain issues and sufficient to prove what we needed to prove about NECC, obviating the need for any additional discovery.[7]

> ➢ Recently, when we sought to implement the Court's bellwether process and take the depositions of the plaintiffs, followed by strikes, the PSC took the position that taking multiple case-specific depositions was unnecessary because of the information and documents already disclosed: "The Defendants have already received detailed plaintiff profile forms for each of these cases, as well as all relevant medical records, employment records (where applicable), and scores of other relevant documents. In many cases, the plaintiffs were treated at Defendants' Hospitals. In other words, even without depositions, Defendants have robust information about the Plaintiffs in the bellwether pool."[8]

Simply put, the PSC has taken the unequivocal position at every turn that depositions are unnecessary where documents cover the same issues. That is even more applicable here, where medical records are available documenting the treatment rendered by each of these non-party physicians. There is no reason that you cannot obtain any information you need from the medical records.

At minimum, you should review the medical records closely before being allowed to take the depositions, as the PSC argued was the standard with the FDA documents, because "documents here are the logical starting point and, hopefully, the ending point."[9]

### 3. PSC's position that duplicative discovery is unnecessary

You will recall that, when we sought discovery from NECC, the PSC took the position that we should not be allowed the discovery because it was cumulative of the documents already produced in the litigation: "NECC's liability...is easily established based on the thousands of pages of documents already made available."[10] The PSC opposed further discovery on issues related to NECC because, the PSC contended, it was "simply duplicative discovery over information already made available to the Tennessee Clinic Defendants," and that "Courts routinely deny such duplicative discovery, especially in instances where the duplicative discovery is obtained at the expense of a non-party."[11]

---

[7] September 9, 2015, status conference, p. 36-37.
[8] Dkt. 2342, p. 2-3.
[9] May 28, 2015, status conference, p. 38.
[10] Dkt. 1902, p. 4.
[11] Dkt. 1902, p. 4.

3

You have the medical records for your clients, which document, in detail, the treatment they received. They can be presented to the jury once authenticated. Plus, the PSC has already taken the deposition of Dr. Latham, the St. Thomas infectious disease specialist who treated virtually all these patients. His testimony covered the disease processes that these patients suffered. Lastly, any issues related to your clients' injuries can be established through the testimony of your experts, who will be deposed and testify at trial anyway.

Any testimony on the same issues from these Howell Allen physicians is cumulative of the medical records, Dr. Latham's testimony, and your experts' testimony.[12] The PSC maintained depositions are unacceptable in settings where they cover "information already made available to [you]" (*e.g.*, the medical records). The points you seek to make through these depositions are "easily established based on the thousands of pages of documents already made available," particularly the medical records and the testimony of Dr. Latham.[13]

### 4. PSC's position that stipulations on uncontested facts should substitute for depositions

When we sought testimony to clarify, for expert purposes and trial purposes, where the contaminated batches were compounded, the PSC's position was that additional discovery is unnecessary because the issue is not in dispute and a stipulation could be worked out.[14] The PSC has taken the same position at other times that stipulations as to basic facts should be used as a substitute for deposition testimony in order to avoid unnecessary deposition testimony.[15]

We will stipulate, to the extent a reasonable factual stipulation is presented, to:

- The background and qualification of these physicians
- The dates of treatment of patients
- The treatment rendered
- The authenticity of the medical records.

Any facts that you need to establish from these physicians can be the subject of a reasonable stipulation. This is far more time- and cost-efficient, and is consistent with what the PSC has suggested at each turn when we sought testimony of witnesses to further our defenses.

---

[12] Not to mention your own clients' testimony.
[13] To the extent you cannot establish these physicians' backgrounds based on documents produced, we will produce CVs for each, which can easily substitute for the 2-3 hours of "background" questioning you say is necessary.
[14] September 9, 2015, status conference, p. 36-37.
[15] *See, e.g.*, Dkt. 2138, proposing a stipulation related to Dr. Austin, "further obviating the need for his testimony."

## 5. PSC's position that compensatory damages are relatively unimportant issues in these cases

Presumably, these depositions will be taken primarily, if not completely, on damages issues.

At the last status conference, the PSC took the position when advocating for trial of the *Reed* case that compensatory damages are not an issue of primary importance in these cases: "The parties in this case – their disagreement is not over how to value cases. The problem is not what various death cases might be worth or what fungal meningitis cases might be worth. The problem is that the parties have a fundamental disagreement, different view, about how liability should be allocated in this situation, and that question isn't a function of compensatory damages."[16]

If depositions are unnecessary to establish evidence on the most important point of contention in the cases ("how liability should be allocated in this situation"), depositions are certainly not necessary to establish evidence on the lesser important issue (*e.g.*, compensatory damages).

## 6. PSC's position that any delay in the first trial dates is unacceptable

The PSC's position for many months has been that any delay in trial of these cases is unacceptable. That has been the justification behind virtually every position taken on every discovery issue that has arisen. A couple recent examples:

- ➤ The PSC opposed our request for two extra weeks to respond to the pending motion for partial summary judgment on product liability because it would "slow the progress of this litigation,"[17] and the PSC "cannot afford to endure such added delays"[18].

- ➤ When we sought an interlocutory appeal on the venue issue – *an issue the PSC previously said it favored an interlocutory appeal of* – you shifted course because an appeal would "delay the progress of this litigation by more than a year and dramatically increase its cost."[19]

---

[16] November 12, 2015, status conference, p. 11.
[17] Dkt. 2350, p. 3.
[18] Dkt. 2350, p. 4.
[19] Dkt. 2393, p. 3.

5

The PSC has aggressively accused us in the press of "shameful" conduct to "repeatedly" delay the proceedings by "using legal technicalities," and the PSC has represented in pleadings that it will suffer prejudice by *any* delay.[20] [21] Yet, when the shoe is on the other foot, "delay" to obtain marginally important discovery is acceptable. Consistency is required. Taking a dozen or so treating physician depositions, some taking multiple days, will delay the litigation by months. Thus, they are not necessary, particularly when other avenues of obtaining and presenting the information exist.

### 7. Request for information

When opposing another of our efforts to obtain relevant discovery, the PSC reminded, "What's good for the goose is good for that gander[.]"[22] This elementary saying – and the positions demonstrated in the PSC's pleadings and in-court statements – apply here with equal weight.

If depositions are not proper where sought on the same issues that documents already cover and when they will delay the proceedings, they are certainly unnecessary in this situation. You have the medical records for all your clients, which detail the treatment they received. As the PSC explained with the 2011 Massachusetts Board of Pharmacy inspection report, deposition testimony is not necessary when the written document details the event. That is the case here.

As the PSC demanded we do with the FDA documents, we request the same from you: Look at the medical records produced and determine if a deposition is necessary. If you believe so, tell us why. Then, as the PSC repeatedly encourages, provide us a proposed stipulation on any facts that you seek to establish. We look forward to the proposed stipulation after you review the medical records, in hopes of obviating the need for these depositions and the delay that the PSC has so openly accused us of.

---

[20] Dkt. 1902, p. 3 ("These victims need justice and they need it soon, and any delay in the current schedule will undoubtedly prejudice them"). See also Dkt. 1866 (accusing defendants of "continued efforts to delay justice for the many victims of their wrongful conduct").
[21] At one point, the PSC even took the position that a ten-day extension to respond to a pleading was of such consequence that we should simply argue the motion with only the benefit of a written letter as a response. Dkt. 1740.
[22] May 28, 2015, status conference, p. 59.

Very truly yours,

**/s/ *Chris J. Tardio***

Chris J. Tardio

cc: C.J. Gideon (via email)
Matt Cline (via email)
Mark Chalos (via email)
Gerard Stranch (via email)
Ben Gastel (via email)
Yvonne Puig (via email)
Adam Schramek (via email)
Eric Hoffman (via email)
Marcy Greer (via email)