**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC., PROCUCTS LIABILITY LITIGATION | ) ) ) |
| | ) MDL No.:  2419 |
| | ) Master Docket No.: 1:13-md-2419-FDS |
| | ) |
| THIS DOCUMENT RELATES TO: | ) |
| | ) |
| All Actions Against St. Thomas Neurosurgical | ) |

**PLAINTIFFS' STEERING COMMITTEE'S REPLY IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH SUBPOENA TO MICHAEL O'NEAL AND IN OPPOSITION TO MOTION FOR PROTECTIVE ORDER**

In a Rule 45 subpoena, the PSC demanded that Michael O'Neal testify and produce relevant records.  After O'Neal balked at complying with most elements of the subpoena, the PSC filed a Motion to Compel (D.E. 2437) and O'Neal filed a corresponding Motion for Protective Order (D.E. 2469).  Although O'Neal initially took the position in his Motion for Protective for Order  that a blanket order of protection would be appropriate, he acknowledged the validity of several of the PSC's arguments in a later-filed Response in partial opposition to the PSC's Motion to Compel (D.E. 2478), conceding (*inter alia*) that the QCIP does not apply retroactively, that certain topics fall outside the PRP and QCIP statutes, and that the interlocutory order by a Tennessee trial court in *Reed* was not binding on this Court.

In an odd twist, the Tennessee Clinic Defendants thereafter filed a Response brief (in support of the Motion for Protective Order and in opposition to the PSC's Motion to Compel) contending that a blanket application of the privilege is warranted (on grounds that O'Neal has since abandoned in part), that the statute applies retroactively (a position that contradicts O'Neal's express concession), and that that the Tennessee trial court's interlocutory order in *Reed* somehow precludes any other plaintiff or the PSC from contesting O'Neal's invocation of

1

the PRP or QCIP.  (D.E. 2492.)  Because none of those arguments have merit, the PSC's Motion to Compel should be granted and O'Neal's Motion for Protective Order (elements of which he has already abandoned) should be denied.[1]

### BACKGROUND

O'Neal concedes that **the QICP Statute does not apply retroactively** and that **neither privilege asserted (the PRP or the QICP) is absolute**.  O'Neal also states that he will not invoke privilege (*i.e.*, that he will testify) as to four topics: (1) questions about the 2007 O'Neal Contract and the Second O'Neal contract; (2) questions about when the contracts were effective; (3) questions about alleged inconsistencies between the testimony of any witness and the contracts; and (4) questions about any recommendation made by O'Neal prior to St. Thomas Neurosurgical's purchase of any particular medication.  O'Neal also states that he will produce a privilege log.  The PSC appreciates O'Neal's concessions, which resolve part of the PSC's dispute with O'Neal.

Also, as the PSC has explained, one MDL plaintiff, Wayne Reed, previously brought a Tennessee state court lawsuit related to the fungal meningitis catastrophe, which he later dismissed voluntarily and refiled in federal court, and which was thereafter consolidated into MDL 2419.  Before Reed voluntarily dismissed that case, the trial court issued a short order denying Reed's motion to compel St. Thomas Neurosurgical and others to provide information related to communications between those entities and O'Neal.[2]   The PSC's MDL brief in

---

[1] In Dkt. No. 2469, Magistrate Judge Boal ordered the PSC to file any response to Mr. O'Neal's Motion for Protective Order by "Monday, December 15, 2015."  The PSC took this to mean Tuesday December 15, 2015 and is therefore filing today.

[2] *See* Exhibit 1 hereto, May 31, 2013 Trial Court Order in *Reed v. St. Thomas Outpatient Neurosurgical Center, LLC, et al.*  The PSC inadvertently failed to include this Order as an attachment in support of its motion.  The PSC also attaches a copy of the PRP statute that was in effect through April 12, 2011 as Exhibit 2 hereto.

support of its Motion to Compel explains why the Court should not treat that decision as binding in the MDL, and O'Neal apparently agrees that preclusion is not warranted.  Indeed, none of the firms on the PSC represented the plaintiff in *Reed*, the decision was interlocutory and was never subject to appeal because the case was dismissed during the discovery stage, and the trial court in *Reed* was not asked to address (nor is there any indication that it considered) many specific issues raised by the PSC here, such as whether the QCIP had retroactive effect or whether O'Neal could refuse to testify that he was not consulted on certain topics.  .

In addition to the points that the PSC has already made, the Court should be aware that Tennessee trial courts typically rule from the bench and ask the prevailing to draft an order for entry.  That appears to be the case here: the trial court in *Reed* simply entered an order drafted and "submitted for entry" by defense counsel.[3]

## ANALYSIS

### I.  Issue Preclusion

The defendants argue that the interlocutory decision in *Reed* precludes this Court from adjudicating O'Neal's motion on the merits, and (effectively) that it precludes O'Neal from providing information voluntarily that he concedes is not covered by a claim of privilege.  Although the defendants purport to apply issue preclusion principles in reaching this conclusion, their analysis is based on flawed premises.

Issue preclusion is an extreme remedy that precludes further litigation of a particular issue.  For that reason, courts do not apply the doctrine lightly.  To show that all plaintiffs represented by the PSC are barred from challenging O'Neal's invocation of the privilege (which he has already abandoned in part), the defendants have the burden to show five elements: (1) the

---

[3] *See* Ex. 1 hereto, at pp. 4-5.

issue was actually litigated in the first forum; (2) the determination resulted in a valid and final judgment; (3) the determination was essential to the judgment rendered by, and in, the first forum; (4) the issue before the second forum must be the same as the one in the first forum; and (5) the parties in the second action must be the same as those in the first.[4]

Here, the defendants fail to establish any element required for issue preclusion.  First, other than Wayne Reed himself, **none of the moving plaintiffs were parties to the *Reed* case**, and **Reed's attorneys are not on the PSC**.  The defendants contend "the same lawyers and parties litigated this issue previously," but that is simply wrong.  The Court should find that preclusion is not warranted on that basis alone.

Second, for essentially the same reason, neither the PSC nor the individual plaintiffs (other than Reed) had **any** opportunity – let alone a "full and fair opportunity" – to litigate the issue of claims of privilege related to O'Neal in the state court litigation.[5]

Third, at least some of the issues presented here are not "identical" to, and were not actually litigated in, *Reed*.  Notably, the defendants do not cite any portion of the trial court record in *Reed* in which the parties or the court addressed the specific arguments raised by the PSC here, such as such as retroactivity or the application of the PRP or QCIP to particular

---

[4] *NLRB v. Donna-Lee Sportswear Co., Inc.*, 836 F.2d 31, 34 (1st Cir. 1987).  For purposes of the motion, the PSC assumes that federal law governs the preclusive effect of the Tennessee trial court decision in *Reed*.  Even if the Court were to apply Tennessee law to this issue, the Court's analysis is essentially the same.  Federal courts generally acknowledge the Restatement approach that the concept of "finality" can be different with regard to issue preclusion, depending on the circumstances presented.  *See* Restatement 2d (Judgments) § 13, and cmt. g.  The Restatement approach focuses on whether the trial court's conclusion is "procedurally definite," including whether the issue was subject to appeal or was actually considered on appeal.  The defendants' long digression on this point is unnecessary.
[5] On this point, the Court at most could find that Reed individually – and only Reed – had a full and fair opportunity to litigate these issues.

categories of information.  That is because those issues were not argued to the trial court in the first place and, therefore, were not decided by it for issue preclusion purposes.

Fourth, the trial court decision in *Reed* was **not final** and it was not subject to appeal. The trial court was free to change its order before final judgment, and the case did not proceed beyond the discovery stage before it was voluntarily dismissed.  The defendants argue that the issue was "subject to appeal" (using the language of the Restatement) under Tenn. R. App. Proc. 9 because the order could have been the subject of an interlocutory appeal by permission.  The defendants cite no authority for the "availability" of a **permissive interlocutory appeal** as a factor supporting the doctrine issue preclusion, nor does that position make any sense – otherwise, essentially any trial court decision at any step of a case would be "subject to appeal." What the "subject to appeal" language must refer to is the notion that if a party fails to raise an issue on direct review of a final judgment or dismisses an appeal, that fact would support a finding of finality vis-à-vis that party because the decision was effectively "final" once the party forfeited its right to appeal on that issue.[6]

For any of these reasons, issue preclusion is not appropriate. Essentially, the defendants seek to preclude the PSC from advancing meritorious arguments – some of which O'Neal himself concedes are correct – because a single plaintiff represented by non-PSC counsel received an adverse, interlocutory ruling in a case that was not subject to appeal because the case was voluntarily dismissed and in which certain arguments were not raised.  In effect, the defendants ask the Court to give binding effect to the Tennessee trial court's four-page, defense

---

[6] *See, e.g.*, *B. Willis, C.P.A. v. BNSF Ry. Co.*, 2010 U.S. Dist. LEXIS 76499 (N.D. Okla. July 28, 2010) (finding that litigant dismissal of appeal of state condemnation action rendered "final" all issues subject to the state condemnation action for purpose of issue preclusion in federal court); *Massachusetts v. Wampanoag Tribe of Gay Head (Aquinnah)*, 98 F. Supp. 3d 55, at 63 (D. Mass. 2015) (finality not contested, where state court decision was made on direct review of trial court decision).

5

attorney-drafted order that contained no case citations and that did not address various

consequential issues advanced here (such as retroactivity).  Not surprisingly, the doctrine of issue

preclusion has no application under these circumstances.

## II.    Retroactivity

The Tennessee Clinic Defendants' entire argument regarding retroactivity – which

conflicts with O'Neal's own concession on this issue – consists of a three-sentence footnote.

That footnote cites only two appellate Tennessee cases (neither of which support their position)

and **three articles written by defense-side law firms, including current MDL counsel (the**

**law firm of Baker Donelson) for the Tennessee Clinic Defendants**, which are obviously

entitled to no weight whatsoever.[7]  As the Tennessee Supreme Court explained in *Henderson v.*

*Ford*, which the defendants cite in their brief here:

> It is the rule that statutes do not operative retroactively, unless this is provided
> therein . . .  [A]ll statutes are to be construed as having only a prospective
> operation, unless the purpose and operation of the Legislature to give them a
> retrospective effect is expressly declared or is necessarily implied from the
> language used.  In every case of doubt, the doubt must be solved against the
> retrospective effect.  And again [] a law will not be given a retrospective
> operation, unless that intention has been manifested by the most clear unequivocal
> expression.[8]

The *Henderson* court also explained that there is a narrow exception that "enactments which are

purely procedural, having only to do with the manner of enforcement of a remedy, may be

---

[7] The brief also attaches an exhibit consisting of a handful of Tennessee trial court decisions,
most of which reflect negligible (or no) legal reasoning.  The fact that Tennessee Clinic
Defendants and their counsel presumably have cherry-picked a handful of trial court decisions
that went their way (in cases in which their counsel were involved) does not justify the
conclusion that Tennessee trial courts "consistently" handle the issue of the QCIP's retroactivity
in any particular fashion, nor do the Tennessee trial court decisions indicate how the Tennessee
Supreme Court would handle the issue based on a complete record and a thorough analysis of
this crucial issue, which the defendants' hand-selected decisions (most of which appear to have
been drafted by defense counsel after being submitted for entry) patently lack.

[8] 488 S.W.2d 720, 721 (Tenn. 1972) (internal citations and quotations omitted)

applicable to an existing cause of action."[9]  The issue in *Henderson* was whether a statutory change to the Tennessee Non-Resident Motorist Act concerning service of process under that Act applied retroactively to create an agency in the Tennessee Secretary of State that had expired under the terms of the original Act.  The Court found that the statute did not qualify for this exception.  It is not clear to the PSC how that specific holding would favor the defendants' contention here that the QCIP operates retroactively.

At any rate, the Tennessee Clinic defendants, by reference to law firm press releases (including their own counsel's press release), contend that the QCIP is a "remedial" statute because it was designed to "remedy" the Tennessee Supreme Court's May 24, 2010 decision in *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 526 (Tenn. 2010).  From the syntax of that footnote, the defendants seem to be suggesting that a "remedial" or "procedural" statute is one in which the legislature seeks to "remedy" a court decision with which it took issue.  There is, of course, no precedent for that position – the difference between "remedial" and "substantive" laws relates to the nature of subject matter of the statute, not whether it was made in response to a court decision.[10]  On that point, courts across the country, applying the same principles in place in Tennessee, have found that peer review laws are substantive or otherwise should not apply retroactively.[11]

---

[9] *Henderson*, 488 S.W.3d at 721.

[10] *See Nutt v. Champion Int'l Corp.*, 980 S.W.2d 365, 368 (Tenn. 1998) (procedural statutes are statutes that "address[] the mode or proceeding by which a legal right is enforced[.]")

[11] *See, e.g., Venosh v. Henzes*, No. 11 CV 3058, 2013 Pa. Dist. & Cnty. Dec. LEXIS 390, at *16 (July 17, 2013) (holding that "any discovery protection or evidentiary privilege to be granted to the subject 'event reports' affects the parties' substantive rights and should be determined by the policy that was in effect at the time that [the plaintiff's] cause of action arose and the event reports were drafted."); *State v. Pelley*, 828 N.E.2d 915, 919-20 (Ind. 2005) (holding that amended Indiana peer review law did not apply retroactively); *Davison v. St. Paul Fire & Marine Ins. Co.*, 248 N.W.2d 433, 439 (Wis. 1977) (finding that Wisconsin peer review statute

Regardless, as the Tennessee Supreme Court has directed in numerous cases, the strong presumption is that statutes apply prospectively unless the statutes state otherwise or necessarily must apply retroactively.[12]   That background principle predates the QCIP statute by at least forty years.  Against that backdrop, if the Tennessee legislature actually intended for the QCIP statute to apply retroactively and to blanket previously non-privileged communications from discovery, it could have done so by the simple expedient of including language to that effect in the statutory amendments.  It chose not to do so, and the defendants offer no compelling reason why the Court should honor that choice.

### CONCLUSION

For these reasons, the PSC's Motion to Compel should be granted and the Motion for Protective Order should be denied.

Date:  December 15, 2015             Respectfully submitted:

**/s/ Benjamin A. Gastel_____**
J. Gerard Stranch, IV
Benjamin A. Gastel
Anthony A. Orlandi
BRANSTETTER, STRANCH &
JENNINGS, PLLC
223 Rosa L. Parks Ave., Suite 200
Nashville, TN 37203
Telephone:  615/254-8801
Facsimile:  615/255-5419
gerards@branstetterlaw.com
beng@branstetterlaw.com
aorlandi@bsjfirm.com
*Plaintiffs' Steering Committee and TN Chair*

Thomas M. Sobol
Kristen Johnson Parker

---

"does affect the substantive rights of the plaintiffs and it cannot be given retroactive effect."); *see also* D.E. 2438 (citing additional cases).
[12] *Elec. Power Bd v. Woods*, 558 S.W.2d 821, 825 (Tenn. 1977); *Henderson*, 488 S.W.2d at 721.

HAGENS BERMAN SOBOL SHAPIRO, LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Telephone: 617/482-3700
Facsimile: 617/482-3003
tom@hbsslaw.com
kristenjp@hbsslaw.com

*Plaintiffs' Lead Counsel*

Annika K. Martin
Mark P. Chalos
LIEFF CABRASER, HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: 212/355-9500
Facsimile: 212/355-9592
akmartin@lchb.com
mchalos@lchb.com

*Federal/State Liaison*

Marc E. Lipton
LIPTON LAW
18930 W. 10 Mile Road
Southfield, MI 48075
Telephone: 248/557-1688
Facsimile: 248/557-6344
marc@liptonlaw.com

Kimberly A. Dougherty
JANET, JENNER & SUGGS, LLC
31 St. James Avenue, Suite 365
Boston, MA 02116
Telephone: 617/933-1265
kdougherty@myadvocates.com

Mark Zamora
ZAMORA FIRM
6 Concourse Parkway, 22nd Floor
Atlanta, GA 30328
Telephone: 404/451-7781
Facsimile: 404/506-9223
mark@markzamora.com

Patrick T. Fennell (VSB 40393)

CRANDALL & KATT
366 Elm Avenue, S.W.
Roanoke, VA 24016
Telephone:  540/342-2000
Facsimile:  540/400-0616
pfennell@crandalllaw.com

*Plaintiffs' Steering Committee*

## <u>CERTIFICATE OF SERVICE</u>

I, Benjamin A. Gastel, hereby certify that I caused a copy of the foregoing *Plaintiffs'*

*Steering Committee's Reply in Support of Motion to Compel Compliance with Subpoena to*

*Michael O'Neal in Opposition to Motion for Protective Order* to be filed electronically via the

Court's electronic filing system.  Those attorneys who are registered with the Court's electronic

filing system may access these filings through the Court's system, and notice of these filings will

be sent to these parties by operation of the Court's electronic filing system.

Date:   December 15, 2015

/s/ Benjamin A. Gastel
Benjamin A. Gastel