# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC., PRODUCTS LIABILITY LITIGATION | ) ) ) |
| | ) MDL No.: 2419 |
| | ) Master Docket No.: 1:13-md-2419-RWZ |
| | ) |
| THIS DOCUMENT RELATES TO: | ) |
| | ) |
| *Skelton v. Ameridose, et al.*, 1:13-cv-12838, | ) |
| *Temple v. Ameridose, et al.*, 1:13-cv-12696, | ) |
| *Berry v. Ameridose, et al.*, 1:13-cv-12838, | ) |
| *Brock v. Ameridose, et al.*, 1:13-cv-12731, | ) |
| *Reed v. Ameridose, et al.*, 1:13-cv-12565, | ) |
| *McElwee v. Ameridose, et al.*, 1:13-cv-12625, | ) |
| *Sullivan v. Ameridose, et al.*, 1:13-cv-12781, | ) |
| *Sharer v. Ameridose, et al.*, 1:13-cv-12577, | ) |
| *Wray v. Ameridose, et al.*, 1:13-cv-12737, | ) |
| *Ziegler v. Ameridose, et al.*, 1:13-cv-12588, | ) |
| *Tyree v. Ameridose, et al.*, 1:13-cv-12479, | ) |
| *Parman v. Ameridose, et al.*, 1:13-cv-12433, | ) |

## PLAINTIFFS' STEERING COMMITTEE'S RESPONSE IN OPPOSITION TO THE STOPNC'S DEFENDANTS' MOTION FOR PROTECTIVE ORDER TO PRECLUDE DEPOSITIONS OF SIX (6) HOWELL ALLEN PHYSICIANS AND CROSS MOTION FOR EMERGENCY HEARING ON THE MOTION

On November 4, 2015, counsel for the plaintiffs asked for dates for the depositions of six Howell Allen physicians who treated case-specific plaintiffs. After initially indicating that they would work to schedule those depositions, the St. Thomas Clinic Defendants went silent for nearly three weeks, then responded on November 27, 2015 that they would not produce the physicians for deposition. On December 1, 2015, the PSC served notices of deposition for these physicians. On December 15, 2015, the St. Thomas Clinic Defendants filed the instant motion, in which they move the court to preclude the PSC from taking the depositions of these physicians.

The St. Thomas Clinic Defendants do not contest that information from these party physicians is relevant or discoverable, or that the party physicians will suffer from any special burden from the depositions.  Indeed, they cite no case in which a court has denied a plaintiff in a personal injury case the right to depose a treating physician, nor is the PSC aware of any precedent to that effect. Accordingly, the defendants have not met their burden to show "good cause" for issuance of a protective order to bar depositions of these treating physicians.

The PSC therefore opposes the motion and asks that the Court set a deadline of **January 12, 2016** – ten days before the bellwether plaintiffs' case-specific expert report deadline – for defense counsel to schedule the depositions of the physicians at issue. The PSC also requests its fees in responding to the motion and that the Court impose a monetary sanction against defense counsel under 28 U.S.C. § 1927.

## PROCEDURAL HISTORY

On July 9, 2015, the Court tentatively set a case-specific fact discovery deadline of October 30, 2015.[1]  At the October 13, 2015 Status Conference, the Court ordered that the parties confer and submit a proposed plan related to case-specific discovery in the bellwether trials.  The parties submitted competing proposals on October 19, 2015.[2]  Although they differed in some respects, the proposals contemplated case-specific discovery that included depositions.[3]

On November 24, 2015, the Court entered an order that reset the case-specific discovery deadlines.[4]  That Order set a deadline of January 8, 2015 for completion of the plaintiffs' depositions and a January 22, 2015 deadline for the plaintiffs to file case-specific expert reports.

---

[1] D.E. 2025 at p. 5.
[2] D.E. 2340, 2341, and 2342.
[3] *See* D.E. 2342 at p. 4 (summarizing parties' positions).
[4] D.E. 2345.

**THE BELLWETHER PLAINTIFFS' EFFORT TO SCHEDULE THE DEPOSITIONS OF HOWELL ALLEN PHYSICIANS**

The defendants' motion relates to six physicians who treated one or more of the bellwether candidate plaintiffs.  Scott Standard is an owner of the Howell Allen Clinic,[5] Greg Lanford is the President of Howell Allen Clinic and a member of its Executive Board,[6] and the remaining physicians are all board members and shareholders of Howell Allen Clinic.[7]  In other words, all six treating physicians at issue are controlling members of Howell Allen Clinic, a party defendant in this litigation.

On November 4, 2015, after the Court had authorized case-specific discovery but before the Court had ruled on the parties' case-specific bellwether discovery proposals, counsel for certain Tennessee plaintiffs requested the depositions of the six treating physicians.   On November 4, 2015, defense counsel stated that he "had some questions **to help with scheduling these case-specific depositions**."  In a November 5, 2015 email, plaintiffs' counsel responded and answered the questions posed.[8]  After receiving the November 5, 2015 email from plaintiffs' counsel responding to the questions posed, the defendants went silent.  Howell Allen's counsel did not respond to follow-up emails from plaintiffs' counsel on November 18, November 20, or November 24, asking for dates for the depositions.[9]

---

[5] Ex. 1 hereto, February 5, 2015 Deposition of Scott Butler ("Butler Dep."), at 36:15-20.
[6] Butler Dep. at 12:17-22.
[7] Ex. 2 hereto (Deposition Exhibit 599) (identifying Dr. Paul McCombs, Dr. Carl Hampf, Dr. Tim Schoettle, Dr. Lanford, and Dr. Standard as shareholders of Howell Allen); Ex. 3 hereto, Excerpts from Transcript of September 17, 2015 Deposition of Scott Butler as Rule 30(b)(6) Representative for Howell Allen Clinic, at 49:16-51:13 (identifying Dr. Adam Reig as a current shareholder of Howell Allen).
[8] Ex. 4 hereto, November 4, 2015 letter from Mr. Clayton; and Ex. 5 hereto, email string (referencing similar request from Mr. Nolan related to Dr. Standard and Dr. Lanford).
[9] *See* Ex. 5 hereto (email string).

Finally, on November 27, 2014 (almost a month later after receiving the deposition requests and the Friday following the Thanksgiving holiday), Howell Allen finally broke its silence and responded by letter.  Rather than offering deposition dates for the physicians (as plaintiffs' counsel reasonably anticipated), Howell Allen contended that the PSC **was not entitled to take those depositions** and that stipulations to certain medical records should be sufficient in lieu of full depositions, on essentially the same grounds articulated in the instant Motion for Protective Order.[10]  In inflammatory terms, Howell Allen accused the PSC of hypocrisy, stated that the PSC was therefore not entitled to take the depositions, demanded that the PSC propose stipulated facts as to each physician for Howell Allen's review, and contended that a stipulation concerning the background and qualification of each physician, the dates of treatment, the treatment rendered, and the authenticity of medical records would obviate the need for the depositions.

On December 1, 2015, the PSC issued Rule 45 notices of deposition to the six treating physicians at issue.[11]  As reflected in the email string attached to the St. Thomas Clinic Defendants' motion, the parties engaged in a meet and confer process, in which the PSC indicated that it would be willing to enter into some type of stipulation concerning the medical records, but that the PSC would be pursuing more than just the authentication of medical records at deposition.  After all, as the treating physicians of these patients, these doctors have highly relevant information regarding Plaintiffs' claims and damages.  The defendants continued to take the position that a stipulation concerning "treatment" of the patients would obviate the need for any depositions.  Although the PSC indicated that it would be willing to utilize some of the defendants' stipulations to reduce the deposition time for each deponent, it would still require the

---

[10] Ex. 6 hereto, November 27, 2015 Letter from Chris Tardio.
[11] MDL D.E. 2447.

depositions to proceed.  On December 15, 2015, the defendants elected to file the instant Motion for Protective Order seeking to preclude the PSC from taking testimony from the treating physicians, full stop.

Over the past two weeks, the St. Thomas Clinic Defendants (and other defendants) have taken the depositions of multiple bellwether plaintiffs.  Although official transcripts of these depositions are not yet available, the PSC represents to the Court that each deposition of the plaintiffs who received a tainted ESI injection has included hours of testimony relating to each patient's condition before the tainted ESI injection and the patient's condition after the ESI injection, including questions relating to each plaintiff's post-injection course of treatment.  The St. Thomas Clinic Defendants appear to be attempting to establish that (a) individual plaintiffs were already injured before the tainted ESI injections, (b) their condition did not appreciably change after the injections, and (c) injuries claimed by the plaintiffs were pre-existing and were not caused by their steroid injections.[12]  As treating physicians for plaintiffs both pre- and post-injury, these physicians have particularized knowledge that can easily rebut many of these claims.  Moreover, in some instances, plaintiffs are alleging that these physicians specifically opined on the causation of many of these injuries and directly linked these injuries to plaintiffs' tainted steroid shots.[13]

## ANALYSIS

---

[12] In one deposition last week, plaintiff Amy Sullivan, who contracted fungal meningitis and suffered a massive stroke that has caused her permanent debilitating physical and mental impairment, was subjected to over three hours of questioning by counsel for the Tennessee Clinic Defendants concerning her family life and physical condition before and after she contracted fungal meningitis.  After the testimony wore her down and her speech became (further) impaired, the parties were forced to continue the deposition before counsel for the St. Thomas Entities even had a chance to ask any questions.

[13] *See, e.g.*, Ex. 7 hereto, Excerpts of Plaintiff Profile Form for Fredia Berry, at p. 9 (¶ 33) (alleging that Dr. Standard diagnosed her with cysts as a result of a tainted ESI injection).

## I.      <u>Allowable Discovery</u>

Under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]"[14]  "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."[15]  However, under Rule 26(c), an entity subject to a discovery request may move for a protective order, which the Court may grant only for "good cause" to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]"[16]  The party seeking a protective order bears the burden to show that good cause exists for the requested order.[17]

Here, **the defendants do not cite a single case in which a court has precluded a plaintiff in a personal injury case from taking the deposition of his or her treating physician**.  That is likely because the relevance of testimony from a treating physician is presumably taken for granted, and the federal rules contemplate that the key dispute relating to the deposition of a treating physician would be the scope of that physician's expert testimony at trial under Rule 26(a)(2)(C) or Federal Rules of Evidence 701 *et seq.* – not whether the physician's testimony is **relevant** or **discoverable**.  The defendants have not shown "good cause" for the court to issue a protective order.

The defendants essentially contend that alleged hypocrisy by the PSC constitutes "good cause" to preclude the PSC from deposing treating physicians who are also shareholders of the Howell Allen Clinic, a defendant in this litigation. As best the PSC can discern, the defendants contend that the PSC has taken the position that depositions of witnesses sought to be deposed by

---

[14] Fed. R. Civ. P. 26(b)(1).
[15] Fed. R. Civ. P. 26(b)(1).
[16] Fed. R. Civ. P. 26(c)(1).
[17] *Public Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 780 (1st Cir. 1988).

the defendants should not occur because the written record is sufficient or because stipulations would obviate the need for depositions.  The defendants do not contest the relevance of these witnesses or cite any cases to the effect that a treating physician deposition is not warranted in a personal injury case – instead, they contend that it is hypocritical for the PSC to have opposed discovery of certain third parties while now seeking to depose these physicians.  This argument is simply not made in good faith.[18]

Moreover, and most importantly, the defendants have not shown good cause for a protective order.  The treating physicians cared for plaintiffs before or after the tainted ESI injections (or both).  Their testimony concerning each plaintiff's condition and course of treatment (both before and after the ESI injections) is relevant, discoverable, and important to issues of liability (such as the existence of, or cause of, particular symptoms) and damages.  Moreover, the doctors likely have relevant testimony to offer beyond what is contained in the medical records, such as what they knew about St. Thomas Neurological and its practices.[19]

The defendants complain that it will be a burden to the physicians and that it will involve a significant amount of attorney time to have the depositions go forward.  But a civil deposition by its nature is burdensome; the question is whether conducting it involves an **undue** burden.  The defendants offer nothing to show that the burden on these physicians is special.  As to the "25+ hours" that it allegedly will take to conduct the depositions, that is the nature of simultaneous discovery in 13 bellwether cases.  And the defendants cannot be heard to complain

---

[18] These charges of hypocrisy, which are unfounded given the different procedural posture of each of the requests for discovery at issue, could equally be laid against the defendants.  After all, they took the exact opposite position they are taking now and claimed that depositions were absolutely needed despite the existence of a written record.

[19] With respect to the issue of stipulations, the defendants essentially have asked that the bellwether plaintiffs lay out their entire line of questioning in order to justify why depositions are necessary.  The plaintiffs are unaware of any case that requires a plaintiff to adopt that approach or that prohibits a physician from testifying because the plaintiff refused to do so.

too much on this point, given that they contested the PSC's suggestion to cut in half the number

of bellwether cases requiring mutual case-specific discovery.

## II.    The PSC's Previous Positions Concerning Discovery

At the risk of getting in drawn into an unproductive "food fight" about which said side

what over years of litigation in this MDL – most of which has little bearing on whether

deposition of the treating physicians are relevant and justified – the PSC is compelled to address

the defendants' recitation of the MDL record concerning certain positions taken by the PSC.

### A.  The PSC "Cannot Endure Such Added Delays"

On page 9 of their brief, the defendants stated that "the PSC recently opposed a request

for a two (2) week extension in order to respond to multi-faceted motion on the basis that –

quoting from a PSC brief at Docket Entry 2350, at p. 4 – the PSC "cannot endure such added

delays."  As the Court will see from re-reading the referenced brief, the defendants'

characterization of that quote is misleading for two reasons.

First, the defendants had moved for an extension to respond to the PSC's Rule 56 brief

from the permitted twenty-one days to sixty days, and the PSC had agreed to allow the

defendants **45 days to respond** (but not the requested 60, which the PSC believed would throw

off the trial schedule or otherwise prejudice the plaintiffs in preparing for trial).[20]  To state that

---

[20] *See* MDL D.E. No. 2350 at p. 1 ("The Plaintiffs Steering Committee [] agrees that the Tennessee Clinic Defendants should receive a reasonable extension of time for responding to the PSC's pending Motion for Partial Summary Judgment.  In fact the PSC readily agreed to provide the Tennessee Clinic Defendants with an extension.  The PSC agreed that the Tennessee Clinic Defendants should have forty-five (45) days to file their response . . . . The PSC cannot agree to a sixty (60) day extension because such an extension would have a harmful ripple effect throughout the litigation.  The Court has determined that it intends to begin trying bellwether cases as early as late March, 2016.  In light of the time constraints associated with that intention, the PSC believes strongly that he subject Motion for Partial Summary Judgment [] should be heard during the status conference scheduled for December 17, 2015.  A sixty (60) day response time will not accommodate that schedule, while a forty-five (45) day response time will."

the PSC "opposed a two-week extension" is inaccurate – the PSC opposed a thirty-nine-day

extension but was amenable to a twenty-five-day extension.

Second, the quote from D.E. 2350 related to the PSC's discussion of the parallel

declaratory judgment action that is currently pending before U.S. District Court for the Middle

District of Tennessee, wherein the Tennessee Clinic Defendants' insurer seeks a declaratory

judgment that it is not required to defendant product liability claims against the Tennessee Clinic

Defendants.[21]  At the time, the insurer was seeking to have the merits of the plaintiffs' Tennessee

Product Liability Act claims certified to the Tennessee Supreme Court.  The PSC expressed to

the Court that, if the Middle District of Tennessee court were to certify that issue to the

Tennessee Supreme Court and the Tennessee Supreme Court were to accept it, "that appellate

litigation would likely take years to complete."[22]  The PSC expressed that "[t]he Tennessee

plaintiffs, some of whom have already died during the pendency of this litigation, cannot afford

to endure such added delays."[23]

The suggestion by the defendants that the plaintiffs "opposed a two-week" extension

because the plaintiffs "cannot afford to endure such added delays" reflects a distinct lack of

candor to the Court.  The PSC was referring to the delays that would be occasioned by waiting

**years** for a decision from the Tennessee Supreme Court, not the impact of granting the

defendants 15 days more than the 45 days than the PSC was willing to grant them.

### B.  The FDA Deposition

---

[21] *See* MDL D.E. No. 2350, at pp. 3-4.
[22] MDL D.E. No. 2350, at p. 4.
[23] MDL D.E. No. 2350, at p. 4.

The defendants argue that the PSC opposed a deposition of the FDA on the basis that – purporting to quote the PSC's representation at the May 28, 2015 status conference – "documents . . . are the logical starting point and, hopefully, the ending point."

As the Court will see from reviewing the relevant portion of the May 28, 2015 status conference transcript, the quote arose in the context of an extensive dialogue concerning certain defendants' request to conduct a Rule 30(b)(6) deposition of NECC via the Bankruptcy Trustee, Paul Moore – to which the Trustee had filed a Motion for Protective Order.[24]  Essentially, Moore contended that there was no witness who could testify as a Rule 30(b)(6) witness because all of the principals of NECC were pleading their right against self-incrimination under the Fifth Amendment, and that a deposition would be fruitless because (among other things) it would amount to the Trustee reviewing copies NECC records or reaching out to third parties to educate himself and regurgitating the substance of those records to the moving defendants.  Although the PSC took no position on the motion in its brief,[25] at the hearing, the PSC pointed out that any effort to by the Trustee and his counsel to comply with a Rule 30(b)(6) deposition (including preparation time, deposition time, etc.) would deplete the available funds in the bankruptcy pool and, in effect, draw down on individual plaintiffs' total recovery.[26]  In the context of a back-and-forth hearing concerning a deposition of the Trustee, counsel for the PSC agreed with the Trustee that the specific information sought by the defendants was otherwise available from the tens of thousands of pages of records produced by NECC and other entities, thereby reducing the potential prejudice to the defendants should the Court grant the protective order.  At oral

---

[24] D.E. 1810-11 (Trustee's motion and supporting Memorandum); D.E. 1918 at 25:8-43:8 (discussing the Trustee's motions to quash and for protective order, including the Trustee's request for a protective order against the defendants' Rule 30(b)(6) deposition notice).
[25] D.E. 1839.
[26] May 28, 2015 Tr. at 36:7-38:18; MDL D.E. 1839.

argument, the Trustee's counsel made essentially the same points that the PSC had raised in its argument.[27]

The cited quote from the PSC that "documents … are the logical starting point and, hopefully, the ending point[,]" concerned the specific and peculiar issues presented by the Motion for Protective Order filed by NECC and related entities.  PSC's counsel pointed out that, as part of the negotiation of a settlement in the bankruptcy proceeding with those entities, "there was an agreement that the discovery that would need to be done was only the discovery that was necessary to establish comparative fault defenses or the defenses and liability of other entities."[28] In light of that and other points raised, PSC's counsel therefore argued that "we really do think the documents here are the logical starting point, and hopefully, the ending point, **particularly as to NECC**."[29]  That quote did not concern a deposition of the FDA in any fashion, nor did it reflect a representation by the PSC concerning the use of documents generally as a substitute for

---

[27] May 28, 2015 Tr. at 42:4-43:8 ("There is no witness who is going to testify who is knowledgeable of those facts . . . The answer is going to be "I don't know," and then they have the Fifth Amendment inference.  So, the question is, **under the circumstances**, are they entitled to the perfect in proving comparative fault against a nonparty or are they entitled to a balance?  And I am suggesting the balance here is clear, that they can enter into stipulations.  Their expert witness can review documents and testify to conclusions.  They have the Fifth Amendment inference.  There is no serious question that the jury is going to understand that the medicine here was sold by NECC.  And the real question is: What more do they need for comparative fault than to tell the jury for the jury to understand that they bought tainted medicine?  At the end of the day, **that's going to be an established fact and there are multiple ways they can get that fact**.  How it was tainted, why it was tainted, who particularly tainted it, is all irrelevant.  It's that they got that medicine.  So, I think , when you really drill down here – sure, **in the ideal world, they would like one of these folks to waive their Fifth Amendment and talk about all that stuff, but that's not going to happen** and the trustee can't make that happen, but what do have is sufficient for providing comparative fault.  That's all their entitled to.  This is a nonparty **and the money is coming out of the victims' pockets**.  I urge the court to grant the protective order.) (emphases added) (counsel for the Trustee).

[28] May 28, 2015 Tr. at 37:22-38:5.

[29] May 28, 2015 Tr. at 38:15-18 (emphasis added).

a deposition.  At any rate, the Court agreed with the Trustee and granted the requested protective order.[30]

### C.  "Very, Very Clear"

The defendants contend that the PSC contended that a deposition of NECC was unnecessary because it was (quoting the defendants brief as it quotes the PSC's statement) "'very, very clear' on the issues that the Tennessee Clinic Defendants sought to explore in the depositions."  Again, the defendants pluck a portion of a quote from a hearing transcript out of context, in an effort to skew its meaning.

The quote relates to an extensive hearing before the Court on September 16, 2015 concerning the propriety of obtaining additional **written discovery** of NECC and related entities.[31]  Those entities and the United States government (which intervened) objected to disclosure of records from the criminal case on multiple grounds.  With respect to that specific issue, counsel for the PSC stated as follows: "Finally, your honor, I hear Mr. Schramek say repeatedly that one of the key issues in this case is they have to know where the MPA was compounded.  It's unclear that there's any issue on that.  Frankly, from the PSC's perspective, **the documents are very, very clear on where the contaminated batches of MPA compounded**.  **And to the extent that there's any question about that in the civil case, I am certain that the PSC and Tennessee defendants can work out <u>that particular issue</u>**."[32]  As this quotes makes clear, the PSC was asserting that, to the extent that the defendants were seeking a deposition of NECC simply to establish the location in which the batches of MPA at issue were compounded, the written record was "very, very clear on where the contaminated

---

[30] MDL D.E. 2123.
[31] September 16, 2015 Status Conference Transcript.
[32] Sept. 16, 2015 Hearing Tr. at 37:20.

batches of MPA were compounded" and the parties could likely reach a stipulation.[33] It is obvious from the full quote that the PSC was merely suggesting a stipulation could be worked out on **one discrete issue** that was beyond dispute from the existing record.  The comment did not even relate to the proprietary of depositions in the first place; the hearing was chiefly about obtaining additional records.  To suggest that it constituted a representation by the PSC concerning the right to depose fact witnesses generally is inaccurate.

### D.  Other Examples

The defendants also contend that the PSC opposed depositions of the FDA, the Massachusetts Board of Pharmacy, and the Tennessee Board of Pharmacy on grounds that should also apply to the treating physicians.[34]  The PSC's arguments relating to those third-party Rule 30(b)(6) depositions have no bearing on the relevance of testimony from the treating physicians here.[35]  In each instance, the circumstances were unique and distinct.  For example, with respect to the FDA and the Massachusetts Board of Pharmacy, the PSC suggested to the Court that, to the extent that the defendants sought to establish what information was available to

---

[33] D.E. 2256 at p. 37.

[34] One other important issue is worth mentioning.  Each of these respective parties are third parties to this lawsuit.  Here, plaintiffs are seeking to depose treating physicians who are board members and employees of a party defendant.  It is universally acknowledged throughout the federal court system that non-parties are treated differently than parties when court's examine the burden of having to respond to a discovery request or a request for a deposition.  *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) ("[C]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating  the balance of competing [discovery] needs.").  *See also Rockstar Consortium US LP & Netstar Techs. LLC v. Google Inc.*, 2015 U.S. Dist. LEXIS 139770 (D. Mass. Oct. 14, 2015); *Arthrex, Inc. v. Parcus Med., LLC*, 2011 U.S. Dist. LEXIS 148555, *14-15 (S.D. Ind. Dec. 21, 2011) ("But with non-party discovery under Rule 45, the court must be especially vigilant to protect the non-party from undue burden and expense. That theme purposefully runs throughout Rule 45(c) (see the Advisory Committee Notes to the 1991 amendments to Rule 45), and the court has broad powers to quash or modify a subpoena, order the payment of attorneys' fees, or order the issuing party to subsidize in whole or in part the costs a subpoenaed party may incur to comply with the subpoena.")

[35] *Id*.

either entity at a given point in time, the documents necessarily established those facts.  With respect to the MA Board of Pharmacy, the Court apparently disagreed and permitted the deposition to go forward.

Of course, the flip side of the defendants' arguments is that they strenuously argued that depositions were **not** a substitute for live testimony, suggesting (among other representations) that it was "simply ludicrous" to suggest otherwise.[36]

Be that as it may, the PSC does not believe that the Court should resolve this issue based on finger-pointing or a string cite of the myriad of instances in which the defendants took the position that certain depositions were warranted in the MDL.  The basic point to be gleaned from reviewing the MDL record is that the Court has addressed each discovery issue on its merits, based on the circumstances specific to those disputes.  Those disputes have often involved novel or complex issues, such as the sensitive interplay and overlap among the ongoing criminal investigation, Bankruptcy proceeding, or the MDL civil proceedings.  The current dispute is not among them, and it is not at all analogous: the bellwether plaintiffs seek to depose the plaintiffs' treating physicians, an issue that involves no more than a straightforward analysis of the benefits and burdens associated with taking those depositions.  The bellwether plaintiffs are entitled to take those depositions and the defendants have not shown good cause to bar those depositions from taking place in a timely fashion.

The bellwether plaintiffs therefore oppose the motion and ask that the Court set a deadline of January 12, 2016 for the depositions of these physicians to take place.  The bellwether plaintiffs' case-specific expert reports are due on January 22, 2015.  These treating physicians will likely provide testimony that plaintiffs' experts may need in rendering initial

---

[36] D.E. 2124 at p. 3.

expert reports.  These reports are currently due on January 22, 2016, and without timely taking treating physician depositions, this deadline will likely need to be extended if the physicians' depositions are not completed sufficiently in advance of the expert deadline.

### REQUEST FOR FEES

There is no reasonable explanation for the defendants' motion other than as a delaying tactic to prejudice the bellwether plaintiffs.  Although the PSC recognizes that complex litigation sometimes involves using sharp elbows, the defendants' motion crosses the line.  The defendants contend that plaintiffs are not entitled to take the deposition of treating physicians in personal injury cases.  This position is unprecedented.  **The defendants do not cite a single case in which a court denied plaintiffs the right to depose a treating physician**.  Indeed, testimony from a primary health care provider is among the most fundamental, relevant testimony in personal injury cases that implicate medical testimony.[37]

The record demonstrates the defendants have raised this motion as a delaying tactic. Howell Allen received requests to depose these witnesses on November 4, 2015.  They asked some questions of plaintiffs' counsel to "help with scheduling" these depositions, to which plaintiffs' counsel responded the next day.  From November 5 to November 27, Howell Allen's counsel remained silent on scheduling dates for the deposition, despite repeated follow-up request from plaintiffs' counsel. To the best of the plaintiffs' knowledge, Howell Allen intended to present these witnesses based on mutually agreed dates.

On November 27, 2015, out of the blue, Howell Allen's counsel wrote to the bellwether plaintiffs to indicate, for the first time, that it would not produce the witnesses for deposition.  On

---

[37] *See e.g.*, *Conde v. Velsicol Chem. Corp.*, 804 F. Supp. 972, 983 (S.D. Ohio 1992) ("Often the testimony of the primary health care provider is the most relevant medical testimony concerning a plaintiff's alleged injuries.")

December 5, 2015, after the PSC had noticed the depositions of the treating physicians, counsel for Howell Allen contacted the PSC to ask whether the parties were at an impasse.  On December 7, 2015, counsel for the PSC stated that, while the PSC would be willing to arrive at some type of stipulation concerning the authenticity of medical records only, the depositions would go forward.  On December 12, 2015 (a Saturday), the defendants again proposed to reach stipulations in lieu of treating physician depositions and signaled that it would be "very difficult" to schedule the physician depositions. The PSC immediately reiterated that stipulations, even if reached on certain issues, would not preclude the depositions from going forward.  On December 15, 2015 – three days later, and just two days before the December 17, 2015 Status Conference – counsel for Howell Allen declared that it would file a Motion for Protective Order.  In its final email, counsel for Howell Allen stated it would "not present these witnesses on the days that you noticed surrounding Christmas," and indicated that it would need additional time to schedule the depositions.

What should not be lost on the Court is that the plaintiffs asked to schedule the depositions on **November 4, 2015**, and that the defendants dragged out the process through **December 15, 2015** before filing the instant Motion for Protective Order.  They waited over three weeks to respond to the initial communications from plaintiffs' counsel and, once it became clear that the PSC would not waive its right to take the depositions, they waited even longer to bring their motion, and have signaled that they will not present their witnesses for an extended period of time.  The defendants knew about the plaintiffs' intent to take these depositions six weeks ago, gave the plaintiffs the impression that they would present the witnesses, then stalled for weeks.

The defendants' actions are a delaying tactic.  As stated above, these depositions must be taken sufficiently in advance of the bellwether plaintiffs' January 22, 2015 expert deadline to afford bellwether plaintiffs' experts sufficient time to review and incorporate information from the depositions into their opinions.

Because the motion is not justified, the PSC requests its fees for having to respond to the motion under both Rule 37 and under 28 U.S.C. § 1927.

"By its terms, all Fed. R. Civ. P. 37(a)(5) requires for the payment of the reasonable expenses of a party successfully resisting a motion to compel by the losing party is that the unsuccessful motion lack a substantial justification and that other circumstances not render the award of expenses unjust."[38] Here, the defendants simply failed to present a motion in good faith.  They present no justifiable grounds for preventing plaintiffs from taking the deposition of their treating doctors who have direct, personal knowledge of the claims asserted and the damages sought.  They have also mischaracterized the record in an effort to support their motion.

For substantially the same reasons, sanctions against defense counsel are warranted under 28 U.S.C. § 1927.  Under § 1927, "[a]ny attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  The First Circuit has held that bad faith is sufficient but not necessary to justify § 1927 sanctions, and that behavior is vexatious when it is harassing and annoying, regardless of whether it is intended to be so.[39]  Here, the defendants have filed a motion that lacks merit in an effort to prejudice the plaintiffs' ability to prepare their case-specific experts.  The defendants' delay in raising their objections to the

---

[38] *Saalfrank v. Town of Alton*, 2010 U.S. Dist. LEXIS 19909, *1 (D.N.H. 2010).
[39] *Cruz v. Savage*, 896 F.2d 626, 632 (1st Cir. 1990).

depositions and in filing this motion support an inference that the defendants have vexatiously multiplied these proceedings.

### IV. Motion for Expedited Hearing

Given the lack of merit in the defendants' position, the PSC respectfully requests that the Court set this motion for a hearing at the December 17 motion hearing in front of Judge Boal. Having now filed their opposition, the motion is fully briefed and should be heard. Alternatively, the PSC is willing to waive oral argument to facilitate a quick resolution of the motion.

### CONCLUSION

For the foregoing reasons, the Court should deny the Motion, require attendance of these doctors at a deposition by January 12, 2016, impose sanctions on the moving defendants and their counsel, and set the matter for hearing on December 17, or alternatively waive oral argument and rule on the merits of the motion without further briefing.

Date:  December 16, 2015                   Respectfully submitted:

**/s/ Benjamin A. Gastel**
J. Gerard Stranch, IV
Benjamin A. Gastel
Anthony A. Orlandi
BRANSTETTER, STRANCH &
JENNINGS, PLLC
223 Rosa L. Parks Ave., Suite 200
Nashville, TN 37203
Telephone:  615/254-8801
Facsimile:  615/255-5419
gerards@branstetterlaw.com
beng@branstetterlaw.com
*Plaintiffs' Steering Committee and TN Chair*

Thomas M. Sobol
Kristen Johnson Parker
HAGENS BERMAN SOBOL SHAPIRO, LLP
55 Cambridge Parkway, Suite 301

Cambridge, MA 02142
Telephone:  617/482-3700
Facsimile:  617/482-3003
tom@hbsslaw.com
kristenjp@hbsslaw.com

*Plaintiffs' Lead Counsel*

Annika K. Martin
Mark P. Chalos
LIEFF CABRASER, HEIMANN & BERNSTEIN, LLP
250 Hudson  Street, 8th Floor
New York, NY  10013
Telephone:  212/355-9500
Facsimile:  212/355-9592
akmartin@lchb.com
mchalos@lchb.com

*Federal/State Liaison*

Marc E. Lipton
LIPTON LAW
18930 W. 10 Mile Road
Southfield, MI 48075
Telephone:  248/557-1688
Facsimile:  248/557-6344
marc@liptonlaw.com

Kimberly A. Dougherty
JANET, JENNER & SUGGS, LLC
31 St. James Avenue, Suite 365
Boston, MA 02116
Telephone:  617/933-1265
kdougherty@myadvocates.com

Mark Zamora
ZAMORA FIRM
6 Concourse Parkway, 22nd Floor
Atlanta, GA 30328
Telephone:  404/451-7781
Facsimile:  404/506-9223
mark@markzamora.com

Patrick T. Fennell (VSB 40393)
CRANDALL & KATT
366 Elm Avenue, S.W.

Roanoke, VA 24016
Telephone:  540/342-2000
Facsimile:  540/400-0616
pfennell@crandalllaw.com

*Plaintiffs' Steering Committee*

## CERTIFICATE OF SERVICE

I, Benjamin A. Gastel, hereby certify that I caused a copy of the foregoing Response in opposition to the STOPNC Defendants' Motion for Protective Order to Preclude Depositions of Six (6) Howell Allen Physicians and Cross Motion for Emergency Hearing on the Motion to be filed electronically via the Court's electronic filing system. Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system, and notice of these filings will be sent to these parties by operation of the Court's electronic filing system.

Date:   December 16, 2015

/s/ Benjamin A. Gastel
Benjamin A. Gastel