UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION ) ) ) ) | MDL No. 2419<br>Dkt. No. 1:13-MD-2419 (RWZ) |
| THIS DOCUMENT RELATES TO SUITS NAMING: ) ) ) | |
| Saint Thomas Outpatient Neurosurgical Center, LLC ) ) | |

**PLAINTIFFS' STEERING COMMITTEE'S OPPOSITION TO SAINT THOMAS OUTPATIENT NEUROSURGICAL CLINIC DEFENDANTS' MOTION TO STAY A DECISION ON THE PARTIES' CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT ON THE PLAINTIFFS' PRODUCT LIABILITY CLAIMS [Dkt. 2466]**

The Plaintiffs' Steering Committee (hereinafter "PSC") files this opposition to the Saint Thomas Outpatient Neurosurgical Clinic Defendants (hereinafter "St. Thomas Clinic Defendants") Motion to Stay a Decision on the Parties' Cross-Motions for Partial Summary Judgment [Dkt. 2466]. Both parties have moved for summary judgment seeking a ruling on the merits of plaintiffs' claims under the Tennessee Products Liability Act (the "TPLA"), but the St. Thomas Clinic Defendants ask this Court to stay ruling on these motions until the Tennessee Supreme Court receives, accepts, and answers a certified question from the Middle District of Tennessee in an insurance declaration action filed by one of the insurers of a wholly different Tennessee clinic (the Specialty Surgery Center). For the reasons outlined below, this Court should deny the Motion to Stay and proceed to ruling on the merits of the pending motions for summary judgment.

**PROCEDURAL BACKGROUND**

On January 10, 2014, the Tennessee Clinic Defendants[1] filed a Rule 12(b)(6) motion in this Court seeking dismissal of the plaintiff's TPLA claims because "health care providers are not 'sellers' of products."[2] On August 29, 2014, this Court rejected that argument and held that "plaintiffs have adequately stated claims for relief under the TPLA, apart from allegations of health care liability."[3] As a result, plaintiffs' claims under the TPLA survived against the St. Thomas Clinic Defendants, and eventually the plaintiffs filed a motion for partial summary judgment seeking a ruling in their favor on the St. Thomas Clinic Defendants' liability under the TPLA.[4] In response, the St. Thomas Clinic Defendants filed a cross-motion seeking summary judgment on the same claims principally rearguing the claims in their motion to dismiss that health care providers cannot be "sellers" under the TPLA.[5]

Although this Court ruled in August of 2014 that the Tennessee Clinic Defendants (which includes Specialty Surgery Center) could face liability under the TPLA, one of Specialty Surgery Center's insurers (State Farm) waited until April 30, 2015 (or almost eight months later) to file a declaration action seeking an order from a court in Tennessee that it is not obligated to provide coverage or defend claims pending against Specialty Surgery Center in this MDL.[6] The complaint named as defendants tort victims with claims pending against Specialty Surgery Center in this MDL. That complaint contained the following allegation:

> Based on the factual allegations in the Master Complaint in the
> MDL Action and the foregoing policy language, State Farm is not
> contractually obligated by the Business Policy to provide coverage

---

[1] The Tennessee Clinic Defendants include the St. Thomas Clinic Defendants and Specialty Surgery Center PLLC, Dr. Kenneth Lister, and Dr. Kenneth Lister P.C. *See* Dkt. No. 771.
[2] Dkt. No. 771 at P. 3.
[3] Dkt. No. 1360 at P. 30.
[4] Dkt. No. 2300.
[5] Dkt. No. 2462.
[6] *State Farm and Casualty Company v. Specialty Surgery Center, PLLC, et al.*, Case No. 2:15-cv-00026 (M.D. Tenn. 2015, Chief Judge Kevin Sharp) (hereinafter the "State Farm Dec. Action")

> or defense to Specialty Surgery Center and Dr. Lister for the MDL Action because ***health care providers cannot be 'sellers' of a defective or unreasonably dangerous product for purposes of imposing liability under the TPLA***.[7]

At the Status Conference in the State Farm Dec. Action, counsel for the Tennessee Clinic Defendants made clear that the purpose of the declaration action was to rule on the merits of plaintiffs' claims pending in this MDL, and specifically stated:

> [T]he coverage issue hinges on, in our opinion, whether or not the plaintiffs in the MDL can maintain a product liability claim against state healthcare provider. The plaintiffs in MDL maintain that they can, that we were sellers of the medication we administered to our patients, and therefore we're exposed to liability under the Product Liability Act.  Our position is that a product liability claim against a healthcare provider in Tennessee is not, as a matter of law, viable; that we're not, as a matter of law, sellers.[8]

Lead Counsel for the tort victims' defendants in the State Farm Dec. Action (who are also members of the PSC in the MDL) moved to stay the action pending resolution of these claims in the MDL.  The Court in Tennessee denied this request and instead instructed the parties to meet and confer on certifying a question to the Tennessee Supreme Court related to whether health care providers can face liability under the TPLA.[9]

The parties in the State Farm Dec. Action have now finished meeting and conferring on this issue and could not agree as to which question should be certified to the Tennessee Supreme Court.  Instead, the parties have submitted two separate proposals to the Middle District of Tennessee for certification.  State Farm and Specialty Surgery Center (plaintiff and one of the defendants in the State Farm Dec. Action) have requested the following questions be certified:

---

[7] State Farm Dec. Action, Dkt. No 1, ¶¶ 52 and 62.  The Complaint also contained other allegations that even if Tennessee healthcare providers could be "sellers" of products under the TPLA, State Farm's policies would still not cover claims pending in the MDL because of other policy exclusions.  *Id.* at ¶¶ 51, 53, 61, 63.
[8] State Farm Dec. Action, Rule 26 Conference Transcript, P. 5, attached hereto as Exhibit A.
[9] *State Farm Fire & Cas. Co. v. Specialty Surgery Ctr., PLLC*, 2015 U.S. Dist. LEXIS 149686, ** 16-18  (M.D. Tenn. Nov. 3, 2015).

> (1) Can a patient maintain a strict products liability action against an ambulatory surgery center licensed under Tennessee Code Title 68, or a physician licensed under Tennessee Code Title 63, for an injury sustained during an epidural steroid injection procedure, given the definition of a "health care liability action" under Tenn. Code Ann. § 29-26-101 and the burden of proof requirements established by Tenn. Code Ann. § 29-26-115?
>
> (2) Is an ambulatory surgery center, licensed pursuant to Tennessee Code Title 68, "engaged in the business of selling" the steroid administered during an epidural steroid injection procedure, so as to be strictly liable as a "seller" under Tenn. Code Ann. § 29-28-106?[10]

The tort victim defendants have requested that the following question be certified:

> Whether, based on the factual allegations in the Master Complaint in the MDL Action and the foregoing policy language, State Farm is not contractually obligated by the Business Policy or the Umbrella Policy to provide coverage or defense to SSC and Dr. Lister for the MDL Action because under no set of facts can a health care provider be a "seller" of a defective or unreasonably dangerous product for purposes of imposing liability under the Tennessee Products Liability Act, Tenn. Code. § 29-28-101 et seq.[11]

Judge Sharp in the Middle District of Tennessee has not yet ruled on which question to certify to the Supreme Court. If and when he does, the Rule 23 of the Tennessee Supreme Court will apply, which states, in relevant part, as follows:

> **Section 1. When Certified.**
>
> The Supreme Court may, at its discretion, answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States, a District Court of the United States in Tennessee, or a United States Bankruptcy Court in Tennessee. This rule may be invoked when the certifying court determines that, in a proceeding before it, there are questions of law of this state which will be determinative of the cause and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court of Tennessee.

---

[10] State Farm Dec. Action, Dkt. No. 110-111 (portions of which are attached as Dkt. No. 2466-1 in the MDL docket).
[11] State Farm Dec. Action, Dkt. No. 103-1 (attached as Dkt. No. 2466-1 in the MDL docket).

**Section 2. Method of Invoking Rule.**

This rule may be invoked upon the issuance of a certification order by any of the courts referred to in Section 1 of this rule.

…

**Section 7. Briefs and Arguments.**

(A) The brief of the party designated by the certifying court as the moving party shall be filed and served within twenty days of the filing with the Supreme Court of the certification order. The brief of the adverse party shall be filed within twenty days thereafter, and a reply brief may be filed within ten days thereafter.

(B) Oral arguments will not be permitted unless ordered by the Court, on its own motion or upon application of a party.

…

**Section 9. Dismissal of Certification.**

If the Court, in the exercise of its discretion[,] declines to answer any or all of the questions of law certified to it, an order of the Court shall be sent to the certifying court and to all parties or their counsel.

## ARGUMENT

The St. Thomas Clinic Defendants' Motion to Stay should be denied as it invites unnecessary delay into this proceeding that has been pending for several years. The victims of this tragedy should see their day in court, and not have to wait on the results of an insurance declaratory action filed by the insurer of medical clinic where these victims did not receive their injections.

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for

counsel, and for litigants."[12]  However, "[a]ny protracted halting or limitation of a plaintiff's right to maintain its case would require not only a showing of 'need' in terms of protecting the other litigation involved but would also require a balanced finding that such need overrides the injury to the parties being stayed."[13]

Here, the St. Thomas Clinic Defendants have not carried their burden that a stay of these proceedings or a ruling on the motion for summary judgment is appropriate.  These cases derive from injuries suffered in 2012 – three and a half years have elapsed since that time.  Hundreds of plaintiffs with claims against the St. Thomas Clinic Defendants have waited patiently to see their day at trial or a decision on the merits of their claims.  Waiting for a decision in an altogether different case that may or may not come in the future would impose a needless and likely fruitless delay in these proceedings.

Although the St. Thomas Clinic Defendants seem to suggest that the process of certifying a decision to the Tennessee Supreme Court is an easy and relatively straightforward process, it is not, particularly under the circumstances presented here.

First, Judge Sharp has not even decided what specific question should be certified to the Tennessee Supreme Court, an issue that the parties to State Farm Dec. Action vigorously dispute and on which they have submitted competing legal brief.  Therefore, at this point, it is not clear when Judge Sharp will choose to certify a question in the first place.

Second, once Judge Sharp chooses which question to certify and enters an order certifying that question, there is no guarantee that Tennessee Supreme Court will choose to accept it. As quoted above, the Tennessee Supreme Court has absolute discretion in accepting or rejecting cases certified to it for consideration.  At a minimum, there will be months of briefing

---

[12] *Landis v. North Am. Co.*, 299 U.S. 248, 57 S. Ct. 163, 166, 81 L. Ed. 153 (1936).
[13] *Dellinger v. Mitchell*, 442 F.2d 782, 783 (D.C. Cir. 1971).

before a decision is even made whether the question will be accepted.[14]  Moreover, the Tennessee Supreme Court has a stated preference that it will not accept questions unless an answer to the question "will be determinative of the cause as required by Rule 23, Section 1."[15]  Just recently in a case involving claims under the Tennessee Healthcare Liability Act, and specifically Tenn. Code Ann. § 29-26-122, the Tennessee Supreme Court declined to answer a certified question from the Sixth Circuit Court of Appeals precisely because it ran afoul of this guiding principle.[16]  In other words, there is no guarantee that once certified the question will be accepted by the Tennessee Supreme Court.  Moreover, even if it is accepted, it will likely take months – if not years – to answer the question as certified.[17]  Even then, the Tennessee Supreme Court's rulings on certified often involve only a statement of the governing law that requires additional application of that law to the facts by the certifying federal court, which thereafter takes even more time following a decision on the certified question.[18]

Here, there is simply no reason to stop the plaintiffs' cases in their tracks while the parties to the State Farm Dec. Action (none of whom are parties to the instant motion) run their

---

[14] Tenn. Supreme Court Rule 23, Section 7 and 9, quoted above.

[15] *Id*, at Section 1; *Eiswert v. United States of America*, Tennessee Supreme Court No. M2015-01474-SC-R23-CV, Order of October 30, 2015, P. 1 (*per curiam*) (A copy of this order from the Tennessee Supreme Court is attached as Exhibit B.)

[16] Ex. B., *Eiswert*, M2015—01474-SC-R23-CV, October 30, 2015 Order; *see also Eiswert v. United States,* 2015 U.S. App. LEXIS 13878 (6th Cir. Tenn. Aug. 5, 2015) (order from Sixth Circuit certifying question to the Tennessee Supreme Court).

[17] It should also be noted that the Tennessee Supreme Court has only four of its five judges sitting at this time as Justice Wade recently resigned and left the bench.  Tennessee recently passed a constitutional amendment that changed the selection process to fill open judicial seats, but this process has not been ratified or implemented to date by the Tennessee state legislature.  *See* Tennessee House Bill 142, Senate Bill 1, available at http://wapp.capitol.tn.gov/apps/BillInfo/default.aspx?BillNumber=HB0142&GA=109.

[18] *See, e.g.*, *Seals v. H&F, Inc.*, 301 S.W.3d 237, 247, 253 (Tenn. 2010) (On second of three certified questions: "Whether the circumstances in this instance are such that reliance on a minor child's instructions would be reckless, thereby disqualifying Cremation Serviceds from the safe harbor provision, is a question of fact for the district court.")  (On third question: "Based on the summary of the facts available, we see no reason to treat both businesses as operators of the crematory facility.  Nevertheless, we stress that our answer here is only a statement of the governing law.  The district court has the duty to aply the law to the facts.")  The docket in the federal case, 3:08-cv-01308 (M.D. Tenn., Haynes, J.), reflects that the trial judge, after receiving a decision on the certified questions, reset the case management deadlines and set a trial date of April 26, 2011 – over fifteen months from a decision on the certified question, and over two years from the date of the original certification order of February 12, 2009.

proposed certified question(s) through the gauntlet of Tennessee's certification process. As the Court correctly acknowledged at the November status conference, should this Court reach a decision on these issues before the Tennessee Supreme Court, then the Tennessee Supreme Court will simply have some federal court authority to help it resolve the issue.[19]

Further, staying the case where substantive claims are actually pending and awaiting the decision from an insurance declaratory action that are implicated by those claims simply reverses the traditional and appropriate method of resolving these situations. Typically, courts stay the insurance declaratory actions that implicate the merits of claims that trigger insurance coverage questions.[20] Here, the St. Thomas Clinic Defendants take the extraordinary position that the merits of plaintiffs' claims should be stayed while a different court rules on the merits of whether an insurance company has a duty to defend a defendant against those very same claims. Plaintiffs maintain that the merits of their claims should be litigated in the forum where they are actually pending and against the parties that actually face liability for those claims.

Finally, a decision in the plaintiffs' favor would be a good policy decision and foster appropriate incentives. If the Court were to stay the plaintiffs' cases, it would signal to future defendants that the insurer of an insured party in multi-district proceedings can get two bites at the apple: if its arguments fail in the MDL court on a state law issue that arguably impacts

---

[19] November 2015 Status Conference Transcript, Pg. 42 ("The Court: Well, if I decide not to wait for [the Tennessee Supreme Court], then that Court will have some additional stuff to work with.")

[20] *See American Home Assurance Co. v. Evans*, 791 F.2d 61, 62 (6th Cir. 1986) (holding that a case is not suitable for declaratory judgment where complicated factual issues are raised, alternative remedies are available, and there is a parallel state court action pending); *see also Allstate Ins. Co. v. Mercier*, 913 F.2d 273, 278 (6th Cir. 1990) (stating that "[c]ourts should not be required to decide 'rights and other legal relations' in a vacuum. The language of the policy exclusions is broad, but the insuring language is also broad, and we cannot say with certainty that those exclusions preclude a finding of coverage in the present case. Without any factual record, there is a real possibility that the district court's declaration of no coverage would conflict with a state court's determination of the coverage question after being informed of the facts."); *Grand T. W. R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 327 (6th Cir. 1984) (concluding that the district court erred in giving a declaratory action in a case in which the insurer sought a declaration of obligations during a pending state court action arising out of the same facts.); *Cambridge Mut. Fire Ins. Co. v. Ketchum*, 2012 U.S. Dist. LEXIS 115618, *13 (D. Conn. Aug. 16, 2012) (holding that in an insurance declaration action it is not appropriate "to hold a separate trial to find facts not plead or otherwise at issue in the underlying state court action to determine the duty to defend.")

liability coverage, it can simply file a declaratory judgment action in another court and seek certification in an effort to perform an end-run around the MDL court, get a second chance to procure a favorable decision, and seek to stay the MDL plaintiffs' cases while the process plays out.  There is no reason to encourage that approach.

## CONCLUSION

Plaintiffs respectfully request that the Court not wait until the Tennessee Supreme Court receives, accepts, and answers a certified question from the Middle District of Tennessee in insurance declaratory action involving a clinic unrelated to the St. Thomas Clinic.  Plaintiffs with cases against the St. Thomas Clinic simply should not have to wait for resolution of that case to obtain resolution of the claims they have against the St. Thomas Clinic.  The St. Thomas Clinic Defendants' Motion to Stay should be denied.

Date:  December 28, 2015       Respectfully submitted:

**/s/ Benjamin A. Gastel**
J. Gerard Stranch, IV
Benjamin A. Gastel
Anthony A. Orlandi
BRANSTETTER, STRANCH &
JENNINGS, PLLC
223 Rosa L. Parks Ave., Suite 200
Nashville, TN 37203
Telephone:  615/254-8801
Facsimile:  615/255-5419
gerards@branstetterlaw.com
beng@branstetterlaw.com
*Plaintiffs' Steering Committee and TN Chair*

Thomas M. Sobol
Kristen Johnson Parker
HAGENS BERMAN SOBOL SHAPIRO, LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Telephone:  617/482-3700

Facsimile:  617/482-3003
tom@hbsslaw.com
kristenjp@hbsslaw.com

*Plaintiffs' Lead Counsel*

Annika K. Martin
Mark P. Chalos
LIEFF CABRASER, HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013
Telephone:  212/355-9500
Facsimile:  212/355-9592
akmartin@lchb.com
mchalos@lchb.com

*Federal/State Liaison*

Marc E. Lipton
LIPTON LAW
18930 W. 10 Mile Road
Southfield, MI 48075
Telephone:  248/557-1688
Facsimile:  248/557-6344
marc@liptonlaw.com

Kimberly A. Dougherty
JANET, JENNER & SUGGS, LLC
31 St. James Avenue, Suite 365
Boston, MA 02116
Telephone:  617/933-1265
kdougherty@myadvocates.com

Mark Zamora
ZAMORA FIRM
6 Concourse Parkway, 22nd Floor
Atlanta, GA 30328
Telephone:  404/451-7781
Facsimile:  404/506-9223
mark@markzamora.com

Patrick T. Fennell (VSB 40393)
CRANDALL & KATT
366 Elm Avenue, S.W.
Roanoke, VA 24016
Telephone:  540/342-2000

Facsimile:  540/400-0616
pfennell@crandalllaw.com

*Plaintiffs' Steering Committee*

**CERTIFICATE OF SERVICE**

      I, Benjamin A. Gastel, hereby certify that I caused a copy of the foregoing PSC's Response to Motion to Stay to be filed electronically via the Court's electronic filing system. Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system, and notice of these filings will be sent to these parties by operation of the Court's electronic filing system.

Date:   December 28, 2015

                                            /s/ Benjamin A. Gastel
                                            Benjamin A. Gastel