# EXHIBIT A

```
 1                 IN THE UNITED STATES DISTRICT COURT
                  FOR THE MIDDLE DISTRICT OF TENNESSEE
 2                          COOKEVILLE DIVISION

 3   STATE FARM FIRE AND CASUALTY    )
     COMPANY,                        )
 4                                   )
                   Plaintiff,        )
 5            v.                     )   No. 2:15-CV-00026
                                     )
 6   SPECIALTY SURGERY CENTER,       )
     PLLC, ET AL.,                   )
 7                                   )   CASE MANAGEMENT CONFERENCE
                   Defendants.       )
 8   _____)

 9   ---------------------------------------------------------------

10              BEFORE THE HONORABLE KEVIN H. SHARP
                     TRANSCRIPT OF PROCEEDINGS
11                        AUGUST 3, 2015

12   ---------------------------------------------------------------
     APPEARANCES:
13
     For the Plaintiff:        BRIGID M. CARPENTER, ESQ.
14                             Baker, Donelson, Bearman, Caldwell
                               & Berkowitz, PC
15                             211 Commerce Street, Suite 800
                               Nashville, Tennessee  37201
16
     For the Defendant:        BENJAMIN A. GASTEL, ESQ.
17                             Branstetter, Stranch & Jennings
                               227 Second Avenue, N – 4th Floor
18                             Nashville, Tennessee  37201

19                             CHRIS J. TARDIO, ESQ.
                               Gideon & Wiseman
20                             1100 Noel Place
                               200 Fourth Avenue, N
21                             Nashville, Tennessee  37219

22
     PREPARED BY:    WYNETTE C. BLATHERS, RMR, CRR
23                   Official Court Reporter
                     801 Broadway – Room A-837
24                   Nashville, TN  37203
                     (615) 401-7221
25
```

```
 1          The above-styled cause came on to be heard on August
 2   3, 2015, at 10:35 a.m., before the Honorable Kevin H. Sharp,
 3   when the following proceedings were had, to-wit:
 4          THE COURT:  Let's talk about State Farm and Specialty
 5   Surgery Center.  Okay.  Tell me what y'all really think about
 6   this.  I don't think -- right?  There's no reason -- I'm going
 7   to set a trial date, but I can't imagine that this thing
 8   actually needs to be tried.
 9          MR. TARDIO:  I agree with you, your Honor.  I think
10   it will be decided on dispositive motions, as most coverage
11   cases are.
12          THE COURT:  So where is the MDL right now?
13          MR. GASTEL:  Your Honor, Ben Gastel.  Do you want us
14   to stand or --
15          THE COURT:  No.  That's okay.
16          MR. GASTEL:  Thank you, your Honor.
17          I sit on the plaintiff's steering committee in the
18   MDL up in Boston along with Gerard Stranch in my office.  Mark
19   Chalos, who's also participating in this case, is also on the
20   plaintiff's steering committee.  There is actually -- we're up
21   there about once a month for status conferences.  We're
22   probably going to get a little bit clearer of a picture of
23   where things are headed after the status conference that is
24   Wednesday.
25          But from a very high level the bankruptcy case
```

```
 1  regarding NECC, there's been a plan that has been put in
 2  place.  Confirmation has been set.  There's a confirmation
 3  order.  There's an effective date of the plan.  That kind of
 4  radically changed the litigation up in Boston, makes it much
 5  more focused on what's strictly on claims against the
 6  individual tort victims against the treating healthcare
 7  providers who ultimately injected the drugs, sort of like
 8  Specialty Surgery Center.
 9          The PSC has asked the MDL Court to conduct trials
10  under 28 USC 157(b)(5).  That issue remains outstanding.  The
11  Court requested, regarding transfers under 28 USC 1407, for
12  everybody to get their Lexecon waivers in this week.
13  Mr. Tardio can correct me if I'm wrong, but I believe that
14  Specialty Surgery Center refused to waive Lexecon, meaning
15  that at the end of the pretrial process those cases would get
16  transferred back to this Court, unless the Court decides to
17  conduct trials pursuant to 28 USC 157(b)(5).
18          That issue is outstanding, and we will probably be
19  arguing about it on Wednesday.  And then I would expect an
20  order probably within 30 days on that issue.  So we're either
21  looking at the brunt of this case being tried up in Boston
22  pursuant to the Court's authority under the bankruptcy
23  provision or them being transferred back to this Court.
24          And just to be clear, your Honor, I believe that
25  there are 28 unique cases against Specialty Surgery Center,
```

1  and then there's the other group of cases that would come back
2  to this Court, assuming the Court does not conduct trials
3  under 157(b)(5), of approximately 115 cases against the other
4  Tennessee based defendant, the St. Thomas Outpatient
5  Neurosurgical Center in St. Thomas Hospital.
6        Discovery is ongoing, almost completed.  I think a
7  discovery deadline is in place in September 15th, and then we
8  have a period of approximately 90 days to conduct expert
9  discovery.  And then whether or not the Court sends those
10 cases back here to the extent that she does not conduct trials
11 under 157(b)(5), I would anticipate that happening, to the
12 extent that it does, either later this year or early next
13 year.
14        So from a very high, high point, your Honor, that's
15 the status of the MDL.
16        THE COURT:  Okay.
17        MR. GASTEL:  And I will say that the tort victims are
18 seeking trials under 157(b)(5) in Boston, and the healthcare
19 clinics, including Specialty Surgery and the St. Thomas folks,
20 are seeking referrals back to this district.
21        THE COURT:  All right.  Okay.  So on this case do
22 y'all -- is there much discovery to be done?  I realize you've
23 got discovery deadlines, but what do you really need to do?
24        MS. CARPENTER:  Your Honor, I don't -- I was thinking
25 about that on the way over -- Brigid Carpenter here for State

```
 1  Farm.  I can't imagine there will be much discovery, and I was
 2  trying to think of what it might be.  And one reason I was
 3  doing -- thinking about our Rule 26 disclosure in two weeks
 4  and, you know, how I was going to formulate those.  And I
 5  just -- I can't see that there's going to be much discovery.
 6  The defendants can weigh in on that, but I don't think so.
 7           MR. TARDIO:  Your Honor, Chris Tardio on behalf of
 8  Specialty Surgery Center and Dr. Lister.  I agree that there
 9  will not be or probably will not be much fact discovery.  I do
10  think there will be some because for the Court to decide on
11  the coverage issue, I think it's necessary for the Court, if
12  this Court is going to decide on -- the coverage issue hinges
13  on, in our opinion, whether or not the plaintiffs in the MDL
14  can maintain a product liability claim against state
15  healthcare provider.
16           The plaintiffs in MDL maintain that they can, that we
17  were sellers of the medication we administered to our
18  patients, and therefore we're exposed to liability under the
19  Product Liability Act.
20           Our position is that a product liability claim
21  against a healthcare provider in Tennessee is not, as a matter
22  of law, viable; that we're not, as a matter of law, sellers.
23  And I think we all agree in this room, at these tables, that
24  that issue, whether the product liability claim can continue
25  in the MDL impacts the primary issue in the coverage dispute.
```

```
 1  I think that we're all in agreement.
 2          So the discovery that I could envision happening is
 3  fact discovery on whether or not we are a seller, for
 4  instance, did the plaintiff go to Specialty Surgery Center to
 5  purchase the medication or did they go to receive service.
 6  That service versus goods or seller distinction is the heart
 7  of the product liability issue.  So if this Court is going to
 8  decide the product liability issue, which I think is a
 9  precursor to the coverage issue, there could be fact discovery
10  on that issue.
11          THE COURT:  Okay.
12          MR. GASTEL:  If I may follow-up, your Honor?
13          THE COURT:  Uh-huh.
14          MR. GASTEL:  We have a -- and this is really where
15  Mr. Tardio and I will somewhat come to blows today.  We would
16  have -- the individual tort victim defendants have a strong
17  disfavor to having the issue of whether or not the Specialty
18  Surgery Center can be held liable under the Tennessee Product
19  Liability Act, of having that issue decided here as opposed to
20  the cases where those claims are actually pending.
21          We believe that those allegations, to the extent that
22  coverage hinges on this, should either be stricken from the
23  complaint or this case stayed to the extent that the Court
24  believes that it has to rule on that issue in this action in
25  order to determine whether or not coverage exists or not.
```

1    Again, we don't think that it's procedurally proper
2 to attempt in a dec action of this sort to determine the
3 merits of a claim that are brought in an altogether different
4 lawsuit.
5    Your Honor, that would on some level invite a very
6 procedural nightmare type case where you could have this Court
7 ruling one way and to the extent that Judge Zobel in MDL rules
8 another, you could have very conflicting rulings on that
9 issue.  And we think that the cases where this issue should be
10 decide first are those where plaintiff's claims are actually
11 pending so that those claims can be decided on a full and
12 fulsome factual record.
13    MS. CARPENTER:  Your Honor, I'd like to jump in
14 because this is the first time I've heard anything about
15 trying to stay this case.  I'd certainly oppose that.  We
16 think this is a proper venue and forum for this decision to be
17 made.  If the Court is considering that, I'd at least like to
18 be able to brief that issue, if a motion is filed.
19    THE COURT:  Yeah.  You've got to file a motion.
20 We're not going to sit in here and just kind of spitball this
21 thing and decide --
22    MR. GASTEL:  That wasn't my intention, your Honor.
23    MS. CARPENTER:  Well, I know.  I just wanted to put
24 that out there.
25    THE COURT:  No, right.  I'm just saying that's for

1  Ms. Carpenter's benefit.  Don't feel like you don't have to
2  defend that position now.  If he wants -- if that's what they
3  want to do, then they've got to file a motion.
4          MS. CARPENTER:  Okay.  And the other thing I would
5  point out, I am in agreement that under the policies, the
6  issue of whether a healthcare provider can be a seller under
7  the Tennessee Product Liability Act is really at the heart of
8  this case.  But I think it's proper to be decided in
9  Tennessee, and, in fact, I think it would possibly be proper
10 to certify that question to the Tennessee Supreme Court.  It
11 has not been ruled upon in this state.  Many other states it
12 has been ruled upon.  The majority of the states that have
13 ruled have held that healthcare providers cannot be sellers
14 under that particular state's Product Liability Act.
15         So, of course, each state has different statutes and
16 provisions and so forth on that, but I say that because I
17 think this is where Mr. Tardio and I would probably be in
18 agreement that -- well, I don't know their position.  But on
19 that issue we are clearly seeking the same goal, which is a
20 ruling that as a matter of law the healthcare providers cannot
21 be sellers under that Act.
22         But I think this lawsuit -- State Farm has a right to
23 bring this lawsuit and have that question, that it is properly
24 before this Court, determined by this Court or, again, on a
25 certified question to the Tennessee Supreme Court.  So I just

```
 1  wanted to point that out in response.
 2          THE COURT:  Okay.
 3          MR. GASTEL:  And just to be clear, your Honor, Judge
 4  Zobel has ruled on this issue and determined the plaintiff's
 5  claims can survive on the motion to dismiss, meaning that from
 6  a legal perspective there's something more than simply saying
 7  that doctors from -- legally cannot be held as sellers under
 8  the Tennessee Product Liability Act.  Specialty Surgery Center
 9  tried that in the MDL, and it was expressly rejected by Judge
10  Zobel who determined that those questions should be decided on
11  their merits based on a factual inquiry.  And that's why we
12  believe that those are the suits that are more proper to
13  handling that question.
14          THE COURT:  All right.  Well, let's take this back to
15  file your motions.  I'm going to sign off on this case
16  management, set it for a pretrial conference on November 7th
17  at 2:00 o'clock in the afternoon here, jury trial here on
18  November 29th.  Both of those are 2016.  It seems like,
19  though, that issue needs to be dealt with, and then I don't
20  think there's a whole lot of discovery that needs to be done.
21  File the summary judgment motions and get this thing resolved.
22  We don't have to wait until next year.  Although, if it turns
23  out that that question has to be answered and then I need to
24  decide where it gets answered, the Tennessee Supreme Court,
25  Boston Court, that's all going to be part of it.
```

```
 1            So it looks like everybody can keep billing for a
 2   while.  All right.  Congratulations.
 3            Okay.  Anything else y'all want to talk about on
 4   this?
 5            MR. TARDIO:  No, sir.
 6            THE COURT:  No?  Got it?  All right.  Thanks.
 7            MR. TARDIO:  Thank you, your Honor.
 8            COURTROOM DEPUTY:  All rise, please.
 9            (Whereupon, the proceedings were adjourned at 10:50
10   a.m.)
11                          -  -  -
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                    REPORTERS CERTIFICATE
 2
 3
 4         I, Wynette C. Blathers, Official Court Reporter for
 5   the United States District Court for the Middle District of
 6   Tennessee, with offices at Nashville, do hereby certify:
 7         That I reported on the Stenograph machine the
 8   proceedings held in open court on August 3rd, 2015, in the
 9   matter of STATE FARM FIRE AND CASUALTY COMPANY V. SPECIALTY
10   SURGERY CENTER, PLLC, ET AL., Case No. 2:15-CV-00026; that
11   said proceedings in connection with the hearing were reduced
12   to typewritten form by me; and that the foregoing transcript
13   (Pages 1 through 10) is a true and accurate record of the
14   proceedings.
15         This the 18th day of August, 2015.
16
17
18
19                                _____
                              /s/ Wynette C. Blathers, RMR, CRR
20                                Official Court Reporter
21
22
23
24
25
```