UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION _____ This Document Relates to: Suits Naming Saint Thomas Outpatient Neurosurgical Center, LLC | ) ) )  MDL No. 2419 )  Dkt. No. 1:13-md-2419-RWZ ) ) ) ) ) ) ) ) |

**JOINDER AND RESPONSE IN SUPPORT OF THE SAINT THOMAS ENTITIES' MOTION TO AMEND THE CURRENT SCHEDULE [DOC. 2549]**

Defendants Saint Thomas Outpatient Neurosurgical Center, LLC; Howell Allen Clinic, a Professional Corporation; John Culclasure, MD; Debra Schamberg, RN, CNOR; and Vaughan Allen, MD; (collectively "STOPNC Defendants"), hereby file this Joinder and Response in Support of the Saint Thomas Entities' Motion to Amend the Current Schedule at Doc. 2549.

Despite the most diligent efforts of the parties, the current schedule is simply unworkable.

With this pleading, the STOPNC Defendants:

1. Incorporate by reference the points and authorities set forth by the Saint Thomas Entities in their motion and memorandum in support at Docs. 2549 and 2550

2. Set forth additional facts for the Court's consideration

3. Join the Saint Thomas Entities in requesting an amendment to the current scheduling orders

4. Propose a slight modification to the Saint Thomas Entities' proposal that makes the proposed timeline more feasible.

**Background**

The STOPNC Defendants will attempt to avoid retreading ground already covered by the Saint Thomas Entities; but there is some additional background that is worth noting as the Court considers this request to adapt the scheduling order to fit the progress of this litigation.

Common discovery in the STOPNC cases opened on August 11, 2014, with service of detailed initial disclosures by the STOPNC Defendants. The first deposition in the MDL occurred just three months later on November 18, 2014. The final common fact witness deposition applicable to the STOPNC cases is currently set to occur on January 11, 2016.[1] Applying these bookends, common fact discovery in the STOPNC cases has spanned about 17 months. During that 17 month span, the parties deposed *over 45* common fact witnesses, on top of mounds of written discovery.

Compare that to the current schedule: Between today and February 19, 2016 (a span of about 40 days), at least 30 common experts will need to be deposed, and will have to be scheduled concurrently with dozens of case-specific depositions. The numbers simply do not work.

Case-specific discovery in the bellwether cases began on October 23, 2015, with service of written discovery on bellwether Plaintiffs. This case-specific discovery calls on the parties to work up, individually, from written discovery to depositions to experts, about a dozen bellwether candidates.

The first case-specific deposition occurred on December 9, 2015. To date, about a dozen case-specific depositions have been completed. Nine (9) Plaintiff depositions were recessed or postponed and will have to be rescheduled. Eleven (11) additional

---
[1] Deposition of Michael O'Neal.

case-specific depositions have been requested or scheduled. The Defendants anticipate numerous additional case-specific fact depositions will be set in the coming weeks. And, the parties will be disclosing case-specific experts in at least eight of the bellwether cases that will need to be deposed.[2]

Between the 30+ common expert depositions, the 18 case-specific fact deposition already scheduled or requested, and the unknown number of other case-specific fact and expert witnesses, the parties need to complete well over 50 (probably more than 70) depositions by *March 4*, 2016, under the current schedule.[3] That is less than 60 days from now. Simply put, this schedule is impossible to meet, even on the present pace of multiple depositions per week.

Also of note, Magistrate Boal entered an order on January 4, 2016, staying the depositions of Joseph Connolly and John Notarianni until the conclusion of the first criminal trial at which they testify.[4] The first criminal trial is set for April 4, 2016. According to a January 4, 2016, status report in the criminal case, the government anticipates its proof in the criminal case will take 3-4 months.[5]

---

[2] The number will vary depending on when the parties exercise their strikes.
[3] Of course, deposition attendance is not the only time required of a deposition. The parties need time to (1) prepare their witnesses to be deposed, (2) prepare for the other side's witnesses, and (3) analyze the testimony and take appropriate action (*e.g.*, providing it to experts or preparing *Daubert* motions or motions for summary judgment).
[4] Doc. 2256.
[5] Doc. 490, Case No. 1:14-cr-10363.

## **Law and Argument**

### I. Joinder in Saint Thomas Entities' Motion

The STOPNC Defendants join the Saint Thomas Entities in their request for an amendment to the current schedule. The STOPNC Defendants adopt and incorporate the points set forth in the Saint Thomas Entities' motion as if stated fully herein.

### II. Additional Points for the Court's Consideration

The Saint Thomas Entities already covered many of the reasons the current schedule must be amended to adapt to the progress of this litigation. The STOPNC Defendants will not repeat points already made but do submit three additional points for the Court to consider in deciding the instant motion:

(1) The Court should consider the amount of discovery completed during common fact discovery and the amount of time it took, and compare it to the discovery still to be completed, to assist the Court in estimating the timeframe needed for the remaining discovery before the first trial.

(2) The Court should note the lack of allotted time in the current schedule to resolve discovery disputes, disputes that will (and have) inevitably arise along the way.

(3) The Court should consider the recent order staying the depositions of Joseph Connolly and John Notarianni until the conclusion of the first criminal trial.

\* \* \* \* \* \* \*

First, comparing the timeline and discovery completed during the common discovery phase to the case-specific discovery phase provides easy evidence of the impossibility of complying with the current schedule. The parties deposed about 45 witnesses in 17 months during the common discovery phase. The case-specific discovery phase will involve about the same number of depositions in specific cases *plus* concurrently conducting more than 30 common expert depositions. This is to be

4

done in less than five (5) months on the current schedule. In other words, the current schedule requires the parties to complete about twice as many depositions in less than one third of the time.[6]

Second, the current schedule does not allow time for resolution of discovery disputes. The Plaintiffs' common expert disclosures are deficient, as demonstrated by a motion filed by the STOPNC Defendants on January 6.[7] Likewise, many of the bellwether Plaintiffs' discovery responses are deficient.[8] Some of the bellwether Plaintiffs simply did not respond to discovery served by the STOPNC Defendants. The parties are in the process of conferring on these issues to try to resolve them, but motion practice will certainly be necessary.

Third, Magistrate Judge Boal's recent order staying the depositions of Connolly and Notarianni until the conclusion of the first criminal trial at which they testify should be considered when deciding the instant motion. At this point, the Court has ruled that the STOPNC Defendants are not permitted to depose a representative of the FDA and the only two individuals from MSM and NECC who are willing to substantively testify about what happened to cause the outbreak, pending resolution of the criminal trial.[9] These witnesses possess critical information necessary to prove the fault of the FDA, NECC, and MSM, of course, but they also possess information critical to rebutting the

---

[6] The undersigned counsel has approximately 15 attorneys at his firm, many of whom work on these cases. However, it is simply not possible to bring additional attorneys up-to-speed on a case of this complexity, with hundreds of thousands of pages of documents and dozens of deposition transcripts, quickly enough for them meaningfully participate in the upcoming depositions or discovery. Thus, counsel for the STOPNC Defendants are attempting to juggle case-specific discovery in 11 separate cases along with common expert discovery on an extremely compressed timeline, which, of course, was the PSC's goal in requesting this schedule. The bellwether Plaintiffs do not have this problem, as they are represented by separate firms who are only required to focus on an individual case or two.
[7] Doc. 2557.
[8] For example, some Plaintiffs make the ridiculous claim that the documents submitted to the NECC Tort Trust, *which detail the Plaintiffs' injuries*, are *irrelevant*.
[9] Of course, the STOPNC Defendants intend to subpoena these witnesses to trial, but, presumably, the Court will not permit these individuals to testify at the civil trial, if it occurs before the first criminal trial.

Plaintiffs' claims that STOPNC violated the standard of care by purchasing from NECC. There can be no dispute that these issues are key to the civil trial.[10]

Without testimony from these witnesses, the STOPNC Defendants will suffer extreme prejudice at trial. Amending the current schedule serves the dual purposes of providing the parties sufficient time to tackle the remaining mountain of discovery <u>and</u> allowing the criminal trial (currently set for April 4, 2016) to conclude before the first civil trial, such that Connolly, Notarianni, and the FDA could testify at the civil trial, thereby alleviating the prejudice to the STOPNC Defendants.

### III. The STOPNC Defendants propose the Court adopt the Saint Thomas Entities' proposed schedule with slight modifications.

The Saint Thomas Entities' proposed amended schedule is an excellent proposal, and the STOPNC Defendants support its entry. In the alternative, the STOPNC Defendants propose a slight modification to the sequencing that would make meeting the proposed deadlines more feasible.

Originally, the Court ordered that case-specific *expert* discovery would only occur in the first four (4) trial cases, rather than the entire bellwether pool.[11] However, that sequencing appears to have been lost in the most recent discovery schedule at Doc. 2435. The current schedule does not specify in which cases the parties must disclose *case-specific* experts.

The STOPNC Defendants believe that case-specific expert disclosure and depositions should follow the Court's selection of the first four (4) trial cases, and should

---

[10] The PSC has even gone so far as to hire an expert at $1,000/hour to rebut the STOPNC Defendants' proof of the FDA's fault.
[11] Doc. 2075 at 5.

6

be conducted in only the four (4) trial cases, as specifically stated in the Court's original order on bellwether discovery.

Reducing the number of case-specific experts being disclosed will make any schedule entered by the Court more workable, both because the parties will have fewer depositions to complete and because the case-specific experts, many of whom will likely be disclosed in multiple cases, will not be forced to review voluminous medical records, prepare reports, and sit for depositions in as many cases.[12] This will also reduce unnecessary expenses for expert fees spent on cases that are eventually eliminated from the trial pool.

Relatedly, the STOPNC Defendants propose that the case-specific summary judgment deadline, the case-specific *Daubert* motion deadline, and the case-specific discovery deadline be limited to the first trial case. Again, this will reduce unnecessary work and make it more feasible to meet the proposed deadlines. The Court can set these deadlines for the remaining three first trial cases once it sets trial dates for those cases.

Accordingly, the STOPNC Defendants' propose the following schedule:

| | |
|---|---|
| Completion of Plaintiffs' Depositions | January 29, 2016<br><br>**[No change from Saint Thomas Entities' proposal]** |
| Bellwether Strikes and Summary of Remaining Cases | February 10, 2016<br><br>**[Saint Thomas Entities' proposed 2/23/16]** |

---

[12] Another alternative would be to have the parties disclose case-specific experts only in the first trial case, or first two trial cases.

| | |
|---|---|
| Court to Select First 4 Trial Cases and Trial Order | February 24, 2016<br><br>**[Not included in Saint Thomas Entities' proposal but included in Court's original order on bellwethers at Doc. 2075, and consistent with the timing set forth in that order]** |
| Completion of Common Expert Discovery | March 18, 2016<br><br>**[No change from Saint Thomas Entities' proposal]** |
| Plaintiffs' Case-Specific Expert Disclosures in First Four Trial Cases | March 24, 2016, or 30 days from selection of first four trial cases, whichever is later<br><br>**[Saint Thomas Entities proposed 3/18/16, and do not limit disclosures to first four trial cases]** |
| Defendants' Case-Specific Expert Disclosures in First Four Trial Cases | April 24, 2016, or 30 days from Plaintiff disclosures, whichever is later<br><br>**[Saint Thomas Entities proposed 4/15/16, and do not limit disclosures to first four trial cases]** |
| Common Issue Summary Judgment and *Daubert* Motions Due | April 15, 2016<br><br>**[No change from Saint Thomas Entities' proposal]** |
| Completion of Case-Specific Expert Discovery in First Four Trial Cases | May 24, 2016, or 30 days from Defendants' disclosures, whichever is later<br><br>**[Saint Thomas Entities proposed 5/13/16]** |
| Case-Specific Summary Judgment and *Daubert* Motions for First Trial Case | June 14, 2016 or 21 days from the Case-Specific Expert Deadline, whichever is later<br><br>**[Saint Thomas Entities' proposed 5/30/16 and do not limit motions to first trial case]** |
| Case-Specific Discovery Deadline for First Trial Case | June 15, 2016<br><br>**[Saint Thomas Entities' proposed 6/1/16 and do not limit deadline to first trial case]** |
| First Civil Trial | After conclusion of the first criminal trial set to begin on April 4, 2016<br><br>**[Not included in Saint Thomas Entities' proposal]** |

**Conclusion**

Despite the parties' diligent efforts, including working weekends and most holidays, running written discovery and depositions concurrently in multiple phases of this litigation, and taking dozens of depositions over the last year, it is simply impossible to meet the current schedule. The schedule must be amended. As set forth more fully above, the STOPNC Defendants hereby join in the Saint Thomas Entities' motion to amend the current schedule [Doc. 2549] and respectfully request that the Court enter the amended schedule proposed by the Saint Thomas Entities, or the modified proposal set forth above.

Respectfully submitted,

**GIDEON, COOPER & ESSARY, PLC**

/s/ Chris J. Tardio
**C.J. Gideon, Jr.***
**Chris J. Tardio***
**Alan S. Bean****
**Matthew H. Cline***
315 Deaderick Street, Suite 1100
Nashville, TN 37238
Ph: (615) 254-0400
Fax: (615) 254-0459
chris@gideoncooper.com

***Attorneys for the STOPNC Defendants***

\* Admitted pursuant to MDL Order No. 1.
\*\* Admitted *pro hac vice*.

**CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the CM/ECF system will be served electronically to the registered participants identified on the Notice of Electronic Filing and copies will be e-mailed or mailed via regular U.S. mail to those participants identified as unregistered this 7$^h$ day of January, 2016.

      /s/ Chris J. Tardio
      **Chris J. Tardio**