UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION _____ This Document Relates to: Suits Naming Specialty Surgery Center, PLLC | ) ) MDL No. 2419 ) Dkt. No. 1:13-md-2419-RWZ ) ) ) ) ) ) ) ) |

**SSC DEFENDANTS' OPPOSITION TO
THE PSC'S MOTION TO COMPEL [DOC. 2494]**

Defendants Specialty Surgery Center, PLLC, Kenneth R. Lister, MD, and Kenneth Lister, MD, PC (collectively, "SSC Defendants") hereby OPPOSE the PSC's Motion to Compel [Doc. 2494] for the reasons stated herein.

### Introduction

**1. What is the PSC's motion asking for?**

The PSC's motion to compel begins with a sensationalized, accusation-filled opening statement that is heavy on hyperbole but light on actual facts to help the Court decide this discovery dispute. After the windup, the motion gets to the substance, making two requests: First, the PSC requests to re-depose Dr. Lister and Jean Atkinson, RN on "common" issues without limitation; and, second, the PSC requests supplementation of written discovery responses as follows:

  i. That the SSC Defendants conduct an undated search of hard copy documents to respond to the PSC's Second Set of Requests for Production

  ii. That the SSC Defendants re-review all electronically stored information returned by the PSC's original search terms for documents responsive to the PSC's Second Set of Requests for Production

    iii.    That the SSC Defendants expand the review of ESI without date limitations to "all relevant custodians (including but not limited to all members of the Executive Committee)"

    iv.    That the SSC Defendants explain redactions in Exhibit 3 to SSC's Responses to the PSC's Second Set of Requests for Production[1]

    v.    That the SSC Defendants produce the 2012 litigation hold letter from its counsel.

**2. Summary of SSC Defendants' position**

Notwithstanding the multiple pages of vitriol in the PSC's brief, this discovery dispute arises from a relatively simple issue: counsel for SSC inadvertently produced the incorrect version of SSC's approved medication list (its "formulary") when responding to the original "common" requests for production. The SSC Defendants, when asked for the formulary in effect in 2012, produced a version that was updated in April 2013.[2] When counsel determined at the time of a later document production by SSC's management company (Calisher & Associates) that the formulary produced was apparently not the version in effect during the relevant time (2012), counsel for SSC produced the correct version of the document.

The SSC Defendants do not now, nor have they ever, disputed that they produced the wrong document with SSC's original document production. In responding to the hundreds of discovery requests from the Plaintiffs, reviewing tens of thousands of pages of documents (hard copies and electronic copies), and ultimately producing thousands of pages of documents, counsel made a mistake.

---

[1] The motion actually requests that redactions be explained in SSC's responses to the PSC's *First* Set of Requests for Production, but the PSC has since explained that this was a typo.
[2] The error occurred, in part, because, at the time of the original document production (October 2014), SSC had been closed for over a year, and the former employee assisting with the document production had no reason to know that the approved medication list had been updated in April 2013.

2

From that, the PSC has contrived a sinister plot in the hopes of convincing this Court that the SSC Defendants' counsel intentionally withheld the document and told their witnesses to lie. That is a very serious accusation, and, frankly, preposterous. No evidence was destroyed or altered, and the correct document was produced once the mistake was discovered. The charges that Dr. Lister and Ms. Atkinson lied under oath, or that counsel coached them to lie, are offensive, particularly given that the PSC makes them without any support whatsoever.

Regarding the substantive requests by the PSC:

SSC has already conducted an undated search of hard copy documents (request (i) above), conducted a review of ESI for "all relevant custodians" without date limitations (request (iii) above), and provided the PSC with an explanation for the redactions identified by the PSC (request (iv) above). Thus, these issues are moot.

That leaves for the Court request (ii) (that SSC re-review 40,000+ pages of ESI) and request (iii) (the litigation hold letter), plus the request to re-depose Lister and Atkinson on all issues

The PSC's request (ii) – that SSC re-review 40,000+ pages of electronic documents to respond to the new document requests – is overly burdensome on its face.[3]

The PSC's request (iii) – for the litigation hold letter – is not proper because the PSC has made no showing of spoliation. The relevant document was not *destroyed* (a required element of spoliation). It was produced, albeit late.

---

[3] *See* affidavit of counsel, attached as Exhibit 1.

3

Finally, no legitimate purpose will be served by permitting second "common" depositions of Dr. Lister and Ms. Atkinson, without limitation. They already sat for a combined 14 hours of "common" depositions. If the Court is inclined to allow re-depositions of these witnesses, it should be limited to questions about the formularies, and the logical course is to do this during Dr. Lister and Ms. Atkinson's case-specific depositions.

## Background

**1. What steps were taken to preserve relevant evidence?**

The PSC's brief would lead the Court to believe that counsel for SSC was derelict in their duties to preserve documents, intentionally withheld the 2012 formulary, knowingly misrepresented the nature of the 2013 formulary, and told their witnesses to lie about it. Not surprisingly, that is about as far from the truth as possible.

On October 11-12, 2012, counsel visited SSC and interviewed individuals with relevant information and began collecting relevant documents. On October 12, 2012, counsel for SSC sent a litigation hold letter (via email) to the points of contact at SSC to ensure that anything relevant to the outbreak and NECC was preserved.[4]

Following that, in April 2013, when it became clear that the sale of SSC's assets would be completed in June 2013 (but still months before any suits were filed against SSC), counsel for SSC again visited SSC and collected potentially relevant documents *and* collected copies of email accounts for SSC staff members.[5]

---

[4] The first lawsuit was filed against SSC in September 2013.
[5] At that time, counsel for SSC was also representing STOPNC in cases filed in state court in Tennessee, and discovery was underway in those cases. The only ESI sought by the Plaintiffs in the cases filed in state court against STOPNC were emails. Thus, counsel for SSC reasonably believed that emails were the most relevant ESI that needed to be preserved for the SSC cases. Remember, again, that, at this point in the process, no lawsuits had been filed against SSC and counsel was just making educated

4

When SSC closed in June 2013, John Simpson, MD, one of SSC's members, took possession of SSC's paper records and kept them at his office.

After receiving the PSC's First Set of Requests for Production to SSC in October 2013, counsel for SSC began working with a former business office employee of SSC, employed by Dr. Simpson, to locate and collect responsive documents. Prior to making its original document production, counsel for SSC also visited Dr. Simpson's office to collect additional hard copy documents and hard drives containing additional ESI, beyond the previously-collected email accounts.

Thus, counsel for SSC personally traveled to Crossville, Tennessee on multiple occasions *before* the first lawsuits were filed to attempt to collect all potentially relevant hard copy documents and preserve the email accounts of all SSC staff members. After the document requests were made, counsel made an additional trip to SSC to review hard copy documents and to, again, review with the client what responsive ESI existed, including collecting and preserving the hard drives from SSC's office server.

The PSC makes the not-so-subtle suggestion that counsel for SSC was lax in its duty to preserve documents and respond to discovery. No one should make that accusation, particularly in a court filing, without proof. There is absolutely none here.[6]

---

guesses as to what claims would ultimately be made and what documents would ultimately be most important.

[6] The PSC has failed to produce relevant documents at numerous points in these cases:
- On the night before the deposition of the corporate witness for Scientific Air Analysis (the entity that did air testing at NECC), the PSC produced 385 pages of documents, which had been produced to the PSC but, for whatever reason, not been previously provided to the Defendants.
- One business day before the deposition of Plaintiff Fredia Berry, the PSC produced a "supplemental" plaintiff profile form that reversed course on several important points.
- *After* the deposition of Plaintiff Anna Sullivan, the Plaintiffs produced cell phone recordings *of the Defendants* made by the Sullivan family.
- During the deposition of Plaintiff Philip Tyree, the Plaintiff, for the first time, identified additional epidural steroid injections received post-outbreak, which was required to be disclosed in his plaintiff profile form.

5

**2. Why was the incorrect document first produced?**

On one of the trips to SSC to collect documents, counsel for SSC collected a complete copy of SSC's then-current policy and procedure manual. The manual contained an undated formulary. Counsel for SSC had no reason to suspect that it was not the formulary in effect in 2012. Counsel for SSC also located several older versions of the policy and procedure manual with formularies that were assumed to be outdated because they were all dated 2010 (two years before the events at issue).

It is now known that, in April 2013, the formulary was updated. This fact was not discovered until 2015, when Calisher and Associates (SSC's management company) produced email exchanges between Calisher & Associates, Jean Atkinson, RN, and Kim Bowlin from April 2013 reflecting the updates. No one had seen those emails previously because the PSC and counsel for SSC had agreed to exclude any emails from 2013-forward for the original ESI searches. The PSC discovered that the formulary had been updated in April 2013 at the same time as SSC's counsel.[7][8]

**3. Why is this important?**

The PSC has constructed a grand conspiracy regarding the inadvertent production of the 2013 formulary instead of the 2012 formulary. The PSC now apparently will argue that Depo-Medrol never should have been used because it was not on the formulary in 2012 and that, when SSC discovered Depo-Medrol was not on the formulary in 2013, it surreptitiously modified it to add Depo-Medrol.

---

The point is not that any of this was intentional. The point is, just because a document or discovery material is discovered some time after it is first requested, or is produced late, that does not automatically mean that counsel or the parties conspired to do so.

[7] Lister and Atkinson also, as evident in their depositions, either did not know or did not remember the formulary had been updated in April 2013.

[8] Of note, there is nothing in the documents produced by Calisher & Associates (or SSC) to support the PSC's implication that the update had something to do with potential litigation.

The first point makes no sense. The Plaintiffs' own complaints explicitly allege that SSC should have used brand-name Depo-Medrol for the Plaintiffs' injections:

> 161. The Clinic Related Defendants knew, or should have known, that another way of ensuring that they administered safe and effective drugs directly into, for example, the spinal canals of their patients, was to purchase such drugs from an FDA-regulated manufacturer.
>
> 162. The Clinic Related Defendants knew, or should have known, that NECC was not an FDA approved manufacturer.
>
> 163. NECC's un-regulated drugs were used by the Clinic Related Defendants in lieu of commercially available drug products manufactured by FDA-regulated manufacturers.[9]

The PSC cannot now argue that *Depo-Medrol* was unsafe to use in 2012 (because it was not on the formulary), while at the same time arguing that it should have been used instead of the NECC formulation.[10]

Further, Dr. Lister had been using Depo-Medrol at SSC for nearly a decade prior to the outbreak, whether it was on the formulary or not. The only even theoretically relevant point the PSC could make is that SSC's paperwork was sloppy because they did not add Depo-Medrol to the formulary even though Dr. Lister was using it.

The second point is a stretch, at best. The Plaintiffs imply that the formulary was updated in an effort to somehow conceal wrongdoing. This completely ignores the fact that <u>40 other medications</u> were added to the list in the 2013 update; only one of the medications has anything to do with the events at issue in this case.[11] Besides, if SSC really wanted to defeat an element of the case, they would have added "compounded

---

[9] 2nd Am. Master Compl. [Doc. 1719].
[10] It should be noted that the Plaintiffs' experts already disclosed on this issue in the Saint Thomas/STOPNC cases, which will almost certainly be cross-designated in the SSC cases, have all opined that Depo-Medrol should have been used instead of compounded MPA from NECC. This is literally a cornerstone of the Plaintiffs' theory in the Tennessee cases.
[11] For example, Zantac (heartburn medicine) was also added to the approved medication list.

MPA" to the formulary in April 2013. The argument, with no facts to back it up, that the list was updated in response to litigation, just defies logic.

* * * * * * *

To be clear, the SSC Defendants do not dispute that the 2012 formulary was discoverable and it – not the 2013 version – should have been produced with SSC's original document production. However, counsel's inadvertent failure to produce the correct version of a single document when thousands of pages were being produced is simply not the smoking gun the PSC has made it out to be.

## **Law and Argument**

1. **Supplementation to written discovery requested by PSC**

The relief sought by the PSC's motion is somewhat difficult to discern.[12] As best the SSC Defendants can tell,[13] the motion requests that the Court compel SSC to do the following with respect to its written discovery responses and document production:

   i. Conduct an undated search of hard copy documents to respond to the PSC's Second Set of Requests for Production

   ii. Re-review all electronically stored information returned by the PSC's original search terms for documents responsive to the PSC's Second Set of Requests for Production

   iii. Expand the review of ESI without date limitation to "all relevant custodians (including but not limited to all members of the Executive Committee)"

   iv. Explain redactions in Exhibit 3 to SSC's Responses to the PSC's Second Set of Requests for Production[14]

   v. Produce the litigation hold letter sent to SSC by its attorneys.[15]

---

[12] For instance, at one point, the PSC asks the Court to require SSC to "review and produce responsive ESI from the hard copy records...." Doc. 2496 at 19. Obviously, one cannot produce electronically stored information from hard copy records.
[13] To the extent the PSC's motion makes additional requests, the SSC Defendants will respond either in writing by supplement or orally.
[14] The motion actually requests that redactions be explained in SSC's responses to the PSC's *First* Set of Requests for Production, but the PSC has since admitted that this was a typo.

8

### i. Undated search of hard copy documents

The PSC's motion asks the Court to compel SSC to conduct an undated search of hard copy documents to respond to the PSC's Second Set of Requests for Production.[16]

SSC has answered this new set of written discovery[17] and, when answering, did not restrict its review or production of hard copy documents by date. It is unclear where the PSC got the idea that date restrictions were used for the hard copy documents because nowhere in SSC's responses is there any indication that SSC limited review of relevant hard copy documents by date.[18] To the extent there was confusion, this brief should resolve it. SSC has already complied with this request and did not limit its review of relevant hard copy documents by date.[19]

### ii. Re-review all electronically stored information returned by the PSC's original search terms

The PSC asks the Court to compel SSC to re-review more than 40,000 pages of electronic documents returned by the PSC's original search terms to respond to the PSC's Second Set of Requests for Production. Some background is necessary to fully understand this issue.

---

[15] It should be noted that many of these issues were never mentioned by the PSC in the meet and confer process.
[16] This second (new) set of discovery is aimed mostly issues surrounding the formulary.
[17] SSC's Responses to the PSC's Second Set of Requests for Production are attached as Exhibit 2.
[18] *See* SSC's Responses attached as Exhibit 2.
[19] SSC basically has two sets of lawyers, each hired by a separate insurer. To further demonstrate SSC's good-faith participation in the discovery process, counsel not involved in the initial production of documents is in the process of completing yet another review of all hard copy documents to, again, look for anything responsive not already produced.

The ESI Protocol [Doc. 1087] entered by the Court created a process for discovery and production of ESI. After SSC received the PSC's First Set of Requests for Production, the parties agreed on search terms, custodians, and exclusion criteria, including date restrictions, for SSC's ESI. The search terms were intended to take the entire universe of SSC ESI and create a subset of ESI generally relevant to these cases.[20] The search terms returned more than 40,000 pages of documents. Counsel for SSC then reviewed the 40,000 pages of documents (along with thousands of hard copy documents) to respond to the PSC's First Set of Requests for Production, and produced more than 5,000 pages of responsive documents.

When the PSC served its Second Set of Requests for Production focused on the formulary issues, counsel for SSC did *not* re-review each page of the 40,000 case-relevant electronic documents. Instead, counsel searched for terms relevant to the topics raised in the PSC's Second Set of Requests for Production[21] and reviewed and produced responsive documents.

The PSC, however, now asks the Court to compel SSC to re-review all 40,000 pages for documents responsive to the PSC's Second Set of Requests for Production. This is facially overbroad and unduly burdensome.[22] Re-reviewing all 40,000 pages of documents would take well over 100 hours and likely cost tens of thousands of dollars.[23] Incurring these costs to review these documents *for the second time* certainly outweighs

---

[20] There were more than 40 search terms, designed to capture anything relevant to these cases, without regard to specific discovery requests. For example, search terms included: NECC, Depo-Medrol, MPA, Generic, Headache, Meningitis, Pfizer, Price, Steroid, Vial, *etc.*
[21] For instance, searches were run for: Formulary, Approved Medications, Medication List, *etc.*
[22] *See* Fed. R. Civ. P. 26(c) (protecting parties from unduly burdensome and expensive discovery).
[23] *See* affidavit attached as Exhibit 1.

any likely benefit.[24] The reasonable and logical course is to do what counsel has already done – run searches for terms specific to this new set of discovery.

The SSC Defendants respectfully submit that they have made reasonable and good faith efforts to comply with their ESI discovery obligations by running search terms specific to this new set of discovery, and produced the responsive documents. Thus, the PSC's request that counsel re-review all 40,000 electronic pages to respond to this new set of discovery should be denied.[25]

### iii. Expand review of ESI without date limitations to "all relevant custodians (including without limitation the members of the Executive Committee)"

As explained above, the original searches of SSC's ESI included agreed date range limitations. The ESI Protocol specifically provides: "Once the files of a custodian are searched for all agreed terms…the Responding Party shall not be under any obligation, absent a Court order, to re-search the custodian's files for additional search terms."[26]

Despite this clear statement in the ESI protocol, counsel for SSC conducted additional searches of the email accounts of Kim Bowlin, Jean Atkinson, and Diane Austin,[27] without date range restrictions, for documents responsive to the PSC's Second Set of Requests for Production because the updates to the medication list occurred in April 2013, outside the parties' agreed date restrictions for the original ESI searches. SSC then reviewed and produced responsive documents, as noted above.

---

[24] *See* Fed. R. Civ. P. 26(b)(1).
[25] Notably, the PSC has not attempted to present any reasonable compromise on this issue. The PSC has simply demanded that SSC re-review everything.
[26] Doc. 1087 at 8.
[27] Jean Atkinson, RN (SSC's former director of nursing) and Kim Bowlin (SSC's administrator) were the two individuals from SSC copied on the email from Calisher & Associates regarding the updated formulary. Diane Austin (along with Ms. Atkinson) purchased medical supplies for SSC.

The PSC now seeks to compel SSC to conduct *additional* undated ESI searches for "all relevant custodians (including without limitation the members of the Executive Committee)." Counsel for SSC has already searched "all relevant custodians" by searching the email accounts of Bowlin, Atkinson, and Austin. Additionally, even though the Second Set of Requests for Production were directed to SSC, and not Dr. Lister, counsel for SSC and Dr. Lister have conducted undated searches of Dr. Lister's *personal* email account and are in the process of producing responsive documents, in an attempt to resolve this issue.

Now expanding the universe of custodians is unreasonable, particularly when there is no evidence any additional custodians had any involvement in the facts underlying these cases. Further, none of the members of SSC (who were not involved at all in pain management) maintained an email account or computer at SSC. Thus, SSC does not have possession, custody, or control of ESI for the other members of the Executive Committee and has no ESI to search for those custodians.[28] [29]

The SSC Defendants respectfully submit that they satisfied their obligations to reasonably comply with this request by running reasonable search terms through the relevant custodians to respond to this new set of discovery, and it is, therefore, moot.

---

[28] *See* Fed. R. Civ. P. 34 (requiring production of only the documents within the respondent's possession, custody, or control).
[29] Counsel for SSC made clear during the "meet and confer" process for the original ESI searches that the personal email accounts of the other members of SSC's Executive Committee (who were also owners of SSC) were not included in SSC's ESI. *See* letter attached as Exhibit 3. Out of an abundance of caution, counsel for SSC is currently taking steps to preserve the personal email accounts for the other members of SSC's Executive Committee, even though they are nonparties to this case, they had no role whatsoever in the decision to purchase MPA from NECC, and there is no indication that the updated formulary was ever presented to the Executive Committee. *See* SSC's Response to Request for Production 7 attached as Exhibit 2 (clearly stating that there is no mention of the formulary in the Executive Committee meeting minutes).

### iv. Explain redactions in Exhibit 3 to SSC's Responses to the PSC's Second Set of Requests for Production

The PSC next requests an additional explanation of the redactions in Exhibit 3 to SSC's Responses to the PSC's Second Set of Requests for Production.[30] Attached as Exhibit 4 to this brief is an email to the PSC explaining the redactions. Had the PSC simply asked for the explanation, rather than firing off a motion to compel, counsel for SSC would have been more than happy to provide it. Regardless, this issue is moot.

### v. Produce the litigation hold letter sent to SSC

The PSC also asks the Court to order SSC to produce the litigation hold letter received from its attorneys. The PSC asserts that it is entitled to the litigation hold letter because it has made a "preliminary showing of spoliation." This is simply wrong. The PSC has not (and cannot) make a *prima facie* showing of spoliation because <u>no evidence was destroyed</u>.

"[S]poliation is the intentional, negligent, or malicious ***destruction*** of relevant evidence."[31] "A spoliation instruction, allowing an adverse inference, is commonly appropriate in both civil and criminal cases where there is evidence from which a reasonable jury might conclude that evidence favorable to one side was ***destroyed*** by the other."[32] Even the cases cited by the PSC make clear that ***destruction*** is required for spoliation.[33]

---

[30] The PSC's motion actually says Exhibit 3 to SSC's Responses to the PSC's <u>First</u> Set of Requests for Production, but that was, apparently, a mistake.
[31] *Gordon v. DreamWorks*, 935 F. Supp. 2d 306, 313 (D. Mass. 2013) (emphasis supplied).
[32] *United States v. Laurent*, 607 F.3d 895, 902 (1st Cir. 2010) (emphasis supplied).
[33] Doc. 2495 at 15.

The PSC has the formulary in effect in 2012 and the formulary from 2013. There is nothing suggesting that relevant evidence has been lost or destroyed. The PSC's motion to compel SSC to produce its litigation hold letter should be denied.

### 2. Request to re-depose Lister and Atkinson without limitation

Finally, the PSC's motion seeks a second deposition of both Dr. Lister and Ms. Atkinson without limitation as to scope.[34] Of note, during the meet and confer process, the PSC only sought to re-depose Dr. Lister and Ms. Atkinson regarding issues related to the formulary.

The PSC specifically stated in an email:

> We are happy to limit our questions to the formulary, the document retention policies, the modifications to the formulary, post-outbreak investigation, the verification for RFP and ROG responses related to "exhibit 5" and the new documents produced by our soon to be served RFP. **It was never our intention to wholesale redepose both witnesses.** We believe a half day each should be sufficient. If you will not agree to the proposal, we will file our motion.[35]

Apparently, the PSC's position changed. They now ask for unlimited depositions of both witnesses, probably hoping to obtain a middle ground ruling.

Requiring Dr. Lister and Ms. Atkinson to sit for a second deposition will achieve nothing and is burdensome and duplicative.[36] Both witnesses have already been deposed for a full day on "common" issues. Most importantly, the PSC asked numerous questions about the approved medication list, such as whether the undated list was in effect in 2012, whether Depo-Medrol was on the list in effect in 2012, and whether

---

[34] The PSC has not identified anything in the record, either from the documents produced or deposition testimony, suggesting that Dr. Lister had any role in updating the approved medication list in April 2013. And, Dr. Lister has already testified that he has no memory of ever being involved in adding new medications to the list. *See* Lister Tr. 195:25-196:23 (excerpt attached as Exhibit 5). The request to re-depose him is plainly a fishing expedition.
[35] *See* email exchange attached as Exhibit 6 (emphasis supplied).
[36] *See, e.g.,* Fed. R. Civ. P. 30 and Deposition Protocol [Doc. 1426] (providing that witnesses may only be deposed once).

compounded MPA was on the list.[37] It has now been established through the testimony of Gina Calisher that the undated list was created in April 2013, and that the list dated 2010 was the list in effect in 2012. The SSC Defendants have even offered to stipulate to these facts.[38] The only purpose to be served in requiring Dr. Lister and Ms. Atkinson to sit for a second deposition is to allow the PSC to beat up these witnesses about their prior testimony. There is no reason to subject them to a second "common" deposition for this purpose, since both witnesses will testify at trial.

Even assuming that there is some marginal value to second depositions of Dr. Lister and Ms. Atkinson on the formulary (if deposed, they should only be deposed on the formulary issues), the solution is not to permit a wholly separate deposition on these topics. The PSC will depose both witnesses again during case-specific discovery. If the Court allows the PSC to question these witnesses again on the formulary issues, there is no reason it cannot be done in the case-specific phase, when these witnesses will have to be deposed again.

Accordingly, the SSC Defendants respectfully request that the PSC's request to re-depose Dr. Lister and Ms. Atkinson on "common" issues be denied. However, if the Court is inclined to permit either or both of these witnesses to be deposed for a second time, the questioning should (1) be limited to the changes to the approved medication list and (2) occur as a part of their case-specific depositions.

---

[37] Excerpts from Dr. Lister deposition are attached as Exhibit 5; excerpts from Ms. Atkinson's deposition are attached as Exhibit 7.
[38] *See* Exhibit 6.

## Conclusion

The PSC's motion makes a mountain out of a molehill in an attempt to justify costly and time-consuming requests regarding an issue of questionable relevance. The motion should be denied for the following reasons:

> *i. Conduct an undated search of hard copy documents to respond to the PSC's Second Set of Requests for Production*

The SSC Defendants have already complied with this request.

> *ii. Re-review all electronically stored information returned by the PSC's original search terms for documents responsive to the PSC's Second Set of Requests for Production*

The PSC's request that SSC re-review 40,000+ pages of electronic documents is unduly burdensome on its face and should be denied.

> *iii. Expand the review of ESI without date limitation to "all relevant custodians (including but not limited to all members of the Executive Committee)"*

The SSC Defendants have already complied with this request by running reasonable search terms through the custodians who could conceivably have been involved in updates to the formulary.

> *iv. Explain redactions in Exhibit 3 to SSC's Responses to the PSC's Second Set of Requests for Production*[39]

The SSC Defendants have already done this.

> *v. Produce the litigation hold letter sent to SSC.*[40]

Because there has been no showing that evidence has been destroyed, this is irrelevant, and privileged by the work-product doctrine and attorney-client privilege.

* * * * * * *

---

[39] The motion actually requests that redactions be explained in SSC's responses to the PSC's *First* Set of Requests for Production, but the PSC has since admitted that this was a typo.

[40] It should be noted that many of these issues were never mentioned by the PSC in the meet and confer process.

Finally, forcing Dr. Lister and Ms. Atkinson to sit for a second "common" issue deposition serves no legitimate purpose and is only designed to give the PSC the opportunity to beat up Dr. Lister and Ms. Atkinson about the 2013 change to the formulary, something neither knew about or recalled in their first deposition. However, if the Court is inclined to permit additional questioning on "common" issues, it should be limited to the updates to the approved medication list and occur during their case-specific depositions.

        Respectfully submitted,

        **GIDEON, COOPER & ESSARY, PLC**

        /s/ Chris J. Tardio
        **C.J. Gideon, Jr.***
        **Chris J. Tardio***
        **Alan S. Bean****
        **Matthew H. Cline***
        315 Deaderick Street, Suite 1100
        Nashville, TN 37238
        Ph: (615) 254-0400
        Fax: (615) 254-0459
        chris@gideoncooper.com

        ***Attorneys for the SSC Defendants***

\* Admitted pursuant to MDL Order No. 1.
\*\* Admitted *pro hac vice*.

**CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the CM/ECF system will be served electronically to the registered participants identified on the Notice of Electronic Filing and copies will be e-mailed or mailed via regular U.S. mail to those participants identified as unregistered this 8th day of January, 2016.

                                        /s/ Chris J. Tardio  
                                        **Chris J. Tardio**