UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE:   NEW ENGLAND<br>COMPOUNDING PHARMACY, INC.<br>PRODUCTS LIABILITY LITIGATION | )<br>)<br>) |
| | ) MDL No. 1:13-md-2419 |
| This Document Relates to: | )<br>) Judge Rya Zobel |
| Berry v. Ameridose, LLC et al<br>3:13-cv-01032 | )<br>)<br>)<br>) |

PLAINTIFF FREDIA BERRY'S MEMORANDUM IN SUPPORT OF EMERGENCY
MOTION TO COMPEL ST. THOMAS CLINIC DEFENDANTS TO PRODUCE
RECORDS IN RESPONSE TO MS. BERRY'S FIRST SETS OF REQUESTS FOR
PRODUCTION

Plaintiff Fredia Berry files this Memorandum in Support of her Emergency Motion to

Compel the St. Thomas Clinic Defendants to Produce Records in Response to Ms. Berry's First

Sets of Requests for Production.  For the reasons stated herein, the motion should granted

automatically because of the defendants' failure to respond to Ms. Berry's request for a meet and

confer on the issues addressed herein.  Ms. Berry brings this motion on an emergency basis

because the defendants' failure to produce responsive information and to engage in a meet and

confer process makes it impossible for Ms. Berry to meet the current case management deadlines

unless the Court provides immediate relief on or before the January 14, 2016 Status Conference.

BACKGROUND

On July 9, 2015, the Court ordered the parties to identify potential bellwether cases,[1] and

both sides identified plaintiff Fredia Berry's case as a potential bellwether case on August 14,

2015.[2]

---

[1] MDL Dkt. No. 2075.

On November 12, 2015, Ms. Berry served a First Set of Requests for Production to Saint Thomas Outpatient Neurosurgical Center, LLC, Dr. John Culclasure, and Debra Schamberg (collectively, for purposes of the motion only, "St. Thomas Neurosurgical") ("1st RFPs to STN"), and a First Set of Requests for Production to Howell Allen Clinic ("Howell Allen") ("1st RFPs to Howell Allen"), seeking the production of records that reference her or that otherwise relate to her care and treatment by the defendants.  On November 24, 2015, the Court entered an Order that, among things, set a January 15, 2016 date for the parties to exercise their respective "strikes" of bellwether cases, and a January 22, 2016 date for the bellwether plaintiffs (including Ms. Berry) to serve expert reports,

On December 17, 2015, St. Thomas Neurosurgical served Responses to the 1st RFPs to STN, and Howell Allen Clinic (represented by the same counsel as St. Thomas Neurosurgical) served Responses to the 1st RFPs to Howell Allen.[3]  St. Thomas Neurosurgical did not produce **any records** in response to Ms. Berry's requests.  Howell Allen made an incomplete production – it produced a handful of records in response to just one request – and, among other deficiencies, it refused to produce **medical records and billing records** without qualification.

On December 18, 2015, after the defendants had refused to produce six Howell Allen physicians for deposition absent a Court order, the Court granted the Plaintiffs' Steering Committee's Motion to Compel and ordered the depositions of six treating Howell Allen physicians to proceed and to be completed by January 12, 2016.[4]  At least one of those physicians, Dr. Scott Standard, played a significant role in the care and treatment of Ms. Berry

---

[2] MDL Dkt. Nos. 2714 (defendants) and 2175 (PSC).
[3] *See* Exhibits A (STN Resps. to 1st RFPs to STN") and B (Howell Allen Resps. to 1st RFPs to Howell Allen").
[4] MDK Dkt No. 2526.

before and after she was injected with contaminated MPA at St. Thomas Neurosurgical.  His deposition was held on January 12, 2016.

Prior to this deposition, on December 23, 2015, counsel for Ms. Berry served a meet and confer letter to St. Thomas Neurosurgical and Howell Allen, which pointed out numerous deficiencies in their responses to the RFPs and the defendants' failure to produce responsive records.[5]  In her letter, Ms. Berry requested that the defendants provide a complete production by December 30, 2015 (seven days from the date of the letter) because much of the information requested was necessary to prepare for the depositions of treating physicians and to prepare Ms. Berry's case-specific experts in advance of the January 22, 2016 expert deadline.  Ms. Berry stated that, if she did not receive a complete response by that date, she would be forced to file an emergency motion with the Court to have the matter placed for hearing at the January 14, 2016 Status Conference.

The defendants did not respond to the letter by December 30, 2015, and they still have not responded as of today's date, which is 19 days from the date of service of Ms. Berry's December 23, 2015 deficiency letter.  As explained herein, the defendants' production responses are manifestly deficient and their failure to make a supplemental production (or even to acknowledge the December 23, 2015 letter) places her in an untenable position.  Ms. Berry has been forced to participate in (and will continue to have to participate in) depositions without the benefit of responsive case-specific records from the defendants.  Moreover, the failure to produce records prejudices her ability to prepare her experts in advance of the January 22, 2016 case-specific expert deadline.

---

[5] *See* Exhibit C, 12/23/15 Letter from Benjamin A. Gastel to Matthew H. Cline.

Given the defendants recent request for more time to complete case-specific discovery and their manifest acknowledgement that they lack the resources to litigate these cases in the time set out by the Court, it is not surprising defendants are not responding to these requests and are withholding patently discoverable information.  Such tactics force plaintiff to seek additional extensions of deadlines as there is simply no way that plaintiff can prepare expert disclosures without documents from the defendants.  Documents that are clearly relevant and within the possession, custody and control of these defendants.  These tactics are simply meant to delay the effective and timely prosecution of plaintiff's claims, and the plaintiffs are now at a point of needing Court intervention on these matters.

Ms. Berry has already suffered undue and irreparable prejudice and, absent emergency relief, will continue to suffer prejudice, including the inability to prepare her case-specific experts and to prepare for treating physician depositions (some of which will likely be noticed in advance of the January 22, 2016 expert deadline).  The tight case management deadlines require the parties to engage in discovery and the meet and confer process expeditiously and in good faith.  In the midst of this pre-trial process, Ms. Berry should not have to file a motion to draw out a response from the defendants, and there is no explanation for the defendants' conduct other than delay or neglect.

The Court should therefore grant the emergency relief requested herein automatically, and should award Ms. Berry her attorney's fees related to the motion.[6]

## RULE 37.1 CERTIFICATION

---

[6] In the alternative, if the Court is inclined to Order the defendants to participate in a meet and confer – as they should have done in the first place – the Court should, at a minimum, award Ms. Berry's counsel its fees for bringing the attached motion.

On November 12, 2015, Ms. Berry served its 1st Set of RFPs to STN and its 1st Set of RFPs to Howell Allen.   On December 23, 2015, Ms. Berry served a meet and confer letter on the issues addressed therein.   As of the date of this motion, St. Thomas Neurosurgical and Howell Allen have not responded to the letter.   Accordingly, Ms. Berry certifies that she has complied with Local Rule 37.1.

## RULE 37.1 – DISCOVERY DISPUTES

"Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party's claim or defense."[7] Relevance is broadly construed to encompass "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case."[8]   This Court has previously noted that "[t]he scope of discovery is very broad, and information is discoverable if there is any possibility it might be relevant to the subject matter of the action."[9]   "Relevant information includes any matter that is or may become an issue in the litigation."[10]   Because Rule 26(b) sets a "very low threshold for relevancy," courts should "err in favor of discovery rather than against it."[11]

---

[7] Fed. R. Civ. P. 26(b)(1).

[8] *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978); *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 192 (1st Cir. 2001) ("The Supreme Court has long recognized that the Federal Rules of Civil Procedure are to be construed liberally in favor of discovery.")

[9] *Gulbankian v. MW Mfrs., Inc.*, Case No. 10-10392-RWZ, 2013 U.S. Dist. LEXIS 69773 (D. Mass. 2013) (internal quotations omitted); *see also In re Heparin Prods. Liab. Litig.* 273 F.R.D. 399, 406 (N.D. Ohio 2011) ("If there is any possibility that the information may be relevant to the general subject matter of the action.") citing *Oppenheimer*, 437 U.S. at 351.

[10] *Multi-Core, Inc. v. S. Water Treatment Co.*, 139 F.R.D. 262, 264 n.2 (D. Mass. 1991); s*ee also Chubb Integrated Sys. Ltd v. National Bank of Wash.*, 103 F.R.D. 52, 59 (D.D.C. 1984)("The concept of relevancy is broadly construed at the discovery stage of an action, and discovery rules are to be accorded liberal treatment.").

[11] *Kipperman v. Onex Corp.* 2008 U.S. Dist. LEXIS 34519, at *28 (N.D. Ga. Apr. 25, 2008).

Under Fed. R. Civ. P. 37(a)(4), an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond.  Under Local Rule 37.1(a), the failure to respond to a request for a discovery conference within seven (7) days of the request shall be grounds for sanctions, which may include automatic allowance of the motion.  Here, it has been 19 days since Ms. Berry's December 23, 2015 deficiency letter.  An automatic grant of Ms. Berry's motion is therefore justified, as well as any other sanction the Court believes is appropriate.

## SPECIFIC DISCOVERY DEFICIENCIES

### I.   RFPs to Howell Allen

RFP No. 1:     Produce all documents sent to or received from the Plaintiff related to Plaintiff receiving MPA at Saint Thomas Neurosurgical.

> OBJECTION:  This Request is overbroad in that it requests "all documents" "related to" the Plaintiff without any reasonable limitation.  Subject to and without waiving this objection, STOPNC sent letters to the Plaintiff regarding the potential contamination of the medication.  Exemplar copies of these letters were produced in STOPNC's common discovery responses.  *See* Response to Common Discovery Request for Production No. 15.

Ms. Berry's Position: The objection to the language "all documents" as overbroad is not a valid objection: it is not overbroad to request a complete set of records on an issue that is relevant to this case.  Furthermore, it is not overbroad to request documents "related to" a particular topic.  Howell Allen must produce records without regard to this meritless objection.

As to the substance of the response, Howell Allen refers Ms. Berry back to "exemplar copies" of letters sent to Ms. Berry.  If Howell Allen possesses a letter sent to Ms. Berry, it must produce that document.  If Howell Allen does not possess a letter that it sent to Ms. Berry, it must confirm that fact in its response by stating that it has no responsive documents.

It is not clear from Howell Allen's response whether it is withholding records based on its complaint of "overbreadth."  Howell Allen must confirm whether it has withheld records on that basis and identify the records being withheld.

Finally, it must confirm that it actually conducted a search for both hard copy and electronic records in response to this discovery request.  To the extent that it has not done so, it must immediately conduct a search for responsive hard copy and electronic records.

RFP No. 2: Produce a copy of any communications (including emails, brochures, correspondence, prescriptions, order forms, invoices, and other documents) exchanged between anyone employed by Howell Allen Clinic and any governmental entity that mentions Plaintiff.

> OBJECTION: This Request is overbroad in that it requests responsive documents that "mention" Plaintiff, which does not limit the subject matter of the requested communications to the ongoing litigation.   Further, Howell Allen already responded to this Request in Discovery Request for Production No. 26.  *See* Response to Common Discovery Request for Production No. 26.  Thus, the Request is duplicative.

Ms. Berry's Position:   Howell Allen must confirm whether it is withholding records or otherwise refusing to search for records on the basis that the records are not "restricted to this litigation."  To the extent that Howell Allen has limited its search, it must immediately state the limitations (by date, search term, hard copy vs. electronic, *etc.*) that it has imposed on its search for responsive records.  As to its other objection: unlike the previous common discovery requests by the PSC, Ms. Berry asks for records that mention her specifically.  Howell Allen must search for and produce immediately any responsive records that mention Ms. Berry.  To the extent that responsive records have already been produced, Howell Allen must identify the Bates numbers corresponding to those documents.

RFP No. 3:   Produce a copy of any communications (including emails, brochures, correspondence, prescriptions, order forms, invoices, and other documents) exchanged between any counsel employed by Howell Allen Clinic and any governmental entity that mentions Plaintiff.

OBJECTION:  This Request seeks information protected by the attorney-client privilege and the work-product doctrine.  Additionally, this Request is overbroad in that it requests responsive documents that "mention" Plaintiff, which does not limit the subject matter of the requested communications to the ongoing litigation.

Ms. Berry's Position: Howell Allen's objection that the request seeks attorney work product and attorney-client privileged material is not valid.  The request seeks communications between counsel for Howell Allen and **a third party** (any governmental entity), which would not be subject to either privilege.  Howell Allen must confirm whether there are responsive records, must produce all non-privileged records (presumably all responsive records), and explain the basis for asserting privilege over any remaining materials by producing a privilege log.

As to Howell Allen's overbreadth objection, it is not valid: If counsel for Howell Allen communicated with the government and mentioned Ms. Berry by name, that communication is reasonably likely to lead to the discovery of admissible evidence concerning Howell Allen's potential liability for injuries it caused to Ms. Berry, as well as the extent or cause of Ms. Berry's injuries. Howell Allen therefore must produce all responsive materials immediately and without objection.

RFP No. 4:      Produce a copy of all medical bills related to any product or service provided to Plaintiff by Howell Allen Clinic.

RESPONSE:  This Request seeks irrelevant information in that it requests medical bills related to "any product or service provided to Plaintiff," and it does not limit the Request to products or services related to the ongoing litigation. Subject to and without waiving this objection, Plaintiff should already possess a copy of the relevant bills.

PSC's Position:      Howell Allen's objection that the request asks for irrelevant information because it does not limit the request to "products or services related to the ongoing litigation" is an invalid objection in the context of this litigation.  The defendants' care of Ms. Berry before and after the injections is potentially relevant to matters of causation and damages.  Indeed, at the

deposition of Ms. Berry on December 18, 2015, and at the depositions of other bellwether plaintiffs, defense counsel (including Howell Allen's current counsel) have questioned plaintiffs extensively about their medical history, including conditions and injuries that pre-date their ESI injections and conditions or injuries that they suffered after the ESI injections. Furthermore, in responses to interrogatories served by Ms. Berry, Howell Allen contends that Ms. Berry's "pre-existing" back pain, headaches, and cysts were not caused by the epidural steroid injections that she received at St. Thomas Neurosurgical.

Howell Allen also objects on the basis that the "plaintiff should already possess a copy of the relevant bills." That is a frivolous objection. For Howell Allen to refuse to produce medical bills is not justifiable in a personal injury case. Howell Allen must produce the requested information immediately and without limitation.

RFP No. 5:     Produce a copy of all non-privileged communications between Howell Allen Clinic, or their counsel, and any other person or entity that mentions the Plaintiff.

> OBJECTION:  This Request is overbroad in that it seeks "all" communications between Howell Allen, or their counsel, and "any other person or entity that mentions" Plaintiff. These are overly vague and broad terms that make the Request impossible to answer with reasonable effort.  Additionally, the lack of time constraints for the requested communications make the Request unduly burdensome.  Further, all communications between Howell Allen and its counsel referencing Plaintiff are privileged under the attorney-client privilege and work-product doctrine.
>
> Subject to and without waiving this objection, counsel for Howell Allen conducted additional searches of the ESI returned by the PSC's original search terms, using the agreed upon date limitations, for the terms "Fredia" and "Berry." Attached as Exhibit 1 are responsive emails with non-Plaintiff protected health information redacted.  Attached as Exhibit 2 is a responsive fax with non-Plaintiff protected health information redacted.

Ms. Berry's Position: Howell Allen's objection concerning attorney work product and attorney-client privilege is not necessary, because the request already states that it is not seeking privileged information.  The request is not overly broad and unduly burdensome: medical

providers at Howell Allen Clinic treated Ms. Berry before, during, and after the fungal meningitis outbreak, and Berry seeks to discover any communications that mention her name. This request is not "impossible to answer with reasonable effort."

Howell Allen's response states that it searched only the ESI returned by the PSC's original search terms and subject to the same date limitations for the terms "Fredia" and "Berry." First, Howell Allen must search all ESI for responsive information, not just ESI returned by the PSC's original search terms related to common issues. Second, Howell Allen's search must include hard copy records in addition to electronic records. Third, there is no basis for a time limitation at this stage. Ms. Berry continued to receive care and treatment after December 31, 2012 for injuries caused by her treatment at Saint Thomas Neurosurgical, and information concerning her care and treatment relates to issues of causation and damages, among others. Indeed, in interrogatory responses, Howell Allen contests Ms. Berry's allegation that injuries she suffered after December 31, 2012 are attributable to tainted MPA she received, placing information concerning those injuries at issue. Furthermore, at Ms. Berry's December 18, 2015 deposition and at the deposition of other plaintiffs, defendants have explored each bellwether plaintiff's care and treatment after the fungal meningitis outbreak, without date limitation.

Howell Allen therefore must immediately search for and produce all responsive electronic and hard copy records without date limitation and without an artificial limitation on the scope of the search.

RFP No. 6:    Produce a copy of any contract pursuant to which Howell Allen Clinic received payment from any payor for the products and/or services provided by Saint Thomas Neurosurgical to the Plaintiff.

> OBJECTION: Payment for Howell Allen's physician services is irrelevant to the claims in this lawsuit. Even if the physician payment is of marginal relevance, the payor contracts themselves have no relevance to the suits. Regardless, the

payment to Howell Allen would be for Howell Allen services.  Its fee is separate from STOPNC's.

Ms. Berry's Position: Howell Allen's relevance objection is spurious: the distinction between payment for services and payment for the contaminated MPA is the subject of vigorous dispute between the parties, and Howell Allen has relied on payment records in motion practice before the court.  The terms of the payor contracts are squarely relevant to Ms. Berry's claims and are not subject to a claim of privilege.  Howell Allen's self-serving, attorney-drafted characterization of the nature of payments to Howell Allen and St. Thomas Neurosurgical is of no consequence and does not constitute an adequate response to a request for records to St. Thomas Neurosurgical.  Howell Allen either possesses responsive records or it does not.

Accordingly, Howell Allen must immediately produce a copy of the responsive insurer and other payor contracts.

RFP No. 7:    Produce all medical records of Plaintiff that are in your or your counsel's possession.

> OBJECTION: Plaintiff defines "you" or "your" as "Saint Thomas Health."  This Request should be directed to Saint Thomas Health, not Howell Allen.  Subject to and without waiving this objection, Howell Allen hired a third-party vendor to collect medical records.  Howell Allen is willing to provide copies of the medical records if Plaintiffs are willing to share the costs of doing so.

RFP No. 8:    Produce all documents you or your counsel collected as part of the releases provided by the Plaintiff with her Plaintiff Profile Form.

> OBJECTION:    Plaintiff defines "you" or "your" as "Saint Thomas Health."  This Request should be directed to Saint Thomas Health, not Howell Allen.  Subject to and without waiving this objection, Howell Allen hired a third-party vendor to collect medical records.  Howell Allen is willing to provide copies of the medical records if Plaintiff is willing to share the costs of doing so.

Ms. Berry's Position (as to both):    Howell Allen objects on the basis that the terms "you" and "your" were defined as "St. Thomas Health, not Howell Allen."  That definition was (obviously)

a typographical error and was actually directed to Howell Allen, not to St. Thomas Health.  As to the substance of Howell Allen's response, it states that Howell Allen "hired a third-party vendor to collect medical records" and that Howell Allen "is willing to provide copies of the medical records if Plaintiffs are wiling to share the costs of doing so."  That is not an appropriate response.  The fact that Howell Allen hired a third-party vendor to handle collecting certain medical records and other documents was a choice made by Howell Allen, not the plaintiffs, and Howell Allen references no authority under which it can refuse to produce a plaintiff's medical records in a personal injury case absent the plaintiff's agreement to share the costs of production.

Howell Allen must produce records responsive to both requests immediately and without qualification.[12]  Furthermore, Howell Allen's refusal to produce medical records even after Ms. Berry conditionally agreed to share the costs of production – as Howell Allen requested – indicates that Howell Allen is stalling in an effort to prejudice Ms. Berry's ability to prosecute her case.  Accordingly, the Court should also order that Ms. Berry shall have the right to re-depose treating physicians (including treating Howell Allen physician Dr. Scott Standard, whose deposition is scheduled for January 12, 2016) to the extent that responsive records are produced that were not already in the possession of Ms. Berry or her counsel on the date of the deposition.

## II.    RFPs to St. Thomas Neurosurgical

RFP No. 1:    Produce all documents sent to or received from the Plaintiff related to Plaintiff receiving MPA at Saint Thomas Neurosurgical.

> This Request is overbroad in that it requests "all documents" "related to" the Plaintiff without any reasonable limitation.  Subject to and without waiving this objection, STOPNC sent letters to the Plaintiff regarding the potential

---

[12] In the interest of obtaining the records as expeditiously as possible while preserving her rights, Ms. Berry stated that she was amenable to paying a reasonable cost for the production of responsive records in electronic format, and she requested an immediate quote.  The offer was conditioned on Ms. Berry reserving her right to challenge whether fee sharing was appropriate. Howell Allen apparently has spurned that offer.

contamination of the medication.   Exemplar copies of these letters were produced in STOPNC's common discovery responses.   *See* Response to Common Discovery Request for Production No. 15.

Ms. Berry's Position:  This request was identical to RFP No. 1 to Howell Allen, and St. Thomas Neurosurgical's response was the same.   Ms. Berry therefore incorporates her discussion concerning RFP No. 1 to Howell Allen above and requests the same relief relative to St. Thomas Neurosurgical.

RFP No. 3:   Produce a copy of any communications (including emails, brochures, correspondence, prescriptions, order forms, invoices, and other documents) exchanged between anyone associated with Saint Thomas Neurosurgical and any governmental entity that mentions Plaintiff.

> OBJECTION: This Request is vague in that it requests responsive documents exchanged between anyone "associated with" STOPNC, which could be interpreted multiple ways and is overly broad.   Further, STOPNC already responded to this Request in its Responses to common discovery.   *See* Response to Common Discovery Request for Production No. 26.   Thus, the request is duplicative.

Ms. Berry's Position:  Rather than provide a suggested reasonable limitation on the scope of the "anyone associated with", it appears that St. Thomas Neurosurgical has chosen not to conduct any further search for records at all.  To the extent that clarification is necessary, Ms. Berry clarified in her December 23, 2015 deficiency letter that the scope of the request is directed to St. Thomas Neurosurgical, Dr. Culclasure, Ms. Schamberg, and all shareholders, owners, employees, agents, and authorized representatives of St. Thomas Neurosurgical.   As to the objection related to common issue discover, unlike the previous common issue discovery requests by the PSC, Ms. Berry is asking for records that mention her specifically.  St. Thomas Neurosurgical must identify and produce any responsive records that mention Ms. Berry by name.   To the extent that St. Thomas Neurosurgical contends that responsive records have already been produced, it must identify the Bates numbers corresponding to those documents.

<u>RFP No. 4</u>:     Produce a copy of all medical bills related to any product or service provided to Plaintiff.

> OBJECTION: This request seeks irrelevant information in that it requests medical bills related to "any product or service provided to Plaintiff," and it does not limit the Request to products or services related to the ongoing litigation.   Subject to and without waiving this objection, Plaintiff should already posses a copy of the relevant bills.

<u>Ms. Berry's Position</u>: This request was identical to RFP No. 1 to Howell Allen, and St. Thomas Neurosurgical's response was the same.   Ms. Berry therefore incorporates her discussion concerning RFP No. 1 to Howell Allen above and requests the same relief relative to St. Thomas Neurosurgical.

<u>RFP No. 5</u>:     Produce documents sufficient to identify the lot number and source of the MPA received by Plaintiff from Saint Thomas Neurosurgical.

> RESPONSE:   Please refer to STOPNC's Response to Interrogatory No. 4.

<u>Ms. Berry's Position</u>:   This request seeks documents sufficient to identify the lot number and source of MPA received by Plaintiff from Saint Thomas Neurosurgical.   St. Thomas Neurosurgical's response refers to "STOPNC Response to Interrogatory No. 4."   Although it does not specify which set of interrogatory responses it is referencing, it appears to be referencing the Responses to Ms. Berry's case-specific interrogatories.   Regardless, St. Thomas Neurosurgical either possesses records sufficient to identify the specific lot of contaminated MPA, or its does not.   St. Thomas Neurosurgical must therefore supplement its RFP response to clarify whether it does or does not possess responsive records, and must produce all responsive records.

<u>RFP No. 6</u>:     Produce a copy of the prescription used by Saint Thomas Neurosurgical to obtain the MPA provided by Saint Thomas Neurosurgical to the Plaintiff.

> RESPONSE:   Please refer to STOPNC's Response to Interrogatory No. 4.

<u>Ms. Berry's Position</u>: This request seeks a copy of the prescription used by St. Thomas Neurosurgical to obtain the MPA provided by St. Thomas Neurosurgical to Ms. Berry.  St. Thomas Neurosurgical's response refers to "STOPNC Response to Interrogatory No. 5."  St. Thomas Neurosurgical must clarify whether it is referring to its Responses to Ms. Berry's case-specific interrogatories.    Regardless, St. Thomas Neurosurgical either possesses a prescription for Ms. Berry's procedure, or it is does not.  Therefore, it must supplement its RFP response to clarify whether your client possess responsive prescription documents or not, and it produce those documents or identify the Bates range of responsive documents previously produced.

<u>RFP No. 8</u>:    Produce a copy of all external communications between Saint Thomas Neurosurgical and any other person or entity that mentions the Plaintiff.

> RESPONSE:    OBJECTION.   This request is overbroad and unduly burdensome in that it requests communications between STOPNC and "any other person that mentions the Plaintiff."  That description is overly broad and does not allow for a reasonable response.  It also covers every communication with counsel, which is privileged.

> Subject to and without waiving objection, counsel for STOPNC conducted additional searches of the ESI returned by the PSC's original searches of the ESI returned by the PSC's original search terms.    No responsive communications were found.

<u>Ms. Berry's Position</u>: Ms. Berry seeks the production of non-privileged records, and the request is not overbroad or unduly burdensome: if St. Thomas Neurosurgical communicated with anyone outside of St. Thomas Neurosurgical in a communication that references Ms. Berry, it must produce those records.  "Any person" would include (but is not limited to) any individual, medical provider, company, or other natural or corporate entity.

Counsel for St. Thomas Neurosurgical states that it has conducted "additional searches of the ESI returned by the PSC's original search terms" and that "[n]o responsive communications were found."  First, St. Thomas Neurosurgical is obligated to search all ESI for responsive

records, not just those returned by the PSC's original search terms.   Second, St. Thomas Neurosurgical must clarify whether counsel's ESI search included records after December 31, 2012, and if not, St. Thomas Neurosurgical must conduct a search for records after that date and produce them.   Third, St. Thomas Neurosurgical must also search hard copy records for responsive information, and it is not clear whether it has done so.   Fourth, it is not clear from St. Thomas Neurosurgical's response whether the scope of its search was done subject to the limitations set forth in its objections.

Thus, St. Thomas Neurosurgical must explain what limitations it placed on its initial search for responsive records, and it must produce all non-privileged responsive hard copy and electronic records immediately and without limitation.

RFP No. 9:      Produce all communications between Saint Thomas Neurosurgical and Medicare, Blue Cross Blue Shield, United Healthcare, Tricare, Aetna, CIGNA, Humana, TennCare, and/or any other payor regarding the products or services received by the Plaintiff from Saint Thomas Neurosurgical.

> RESPONSE:   OBJECTION.   STOPNC previously produced an exemplar of its submission to the Plaintiffs' insurers in its Responses to the PSC's discovery requests.   Thus, this request is duplicative.   Further, this request asks for irrelevant information in that it is asking about communications with insurers uninvolved in payment for this Plaintiff's care.

Ms. Berry's Position: The previous production of an exemplar in common discovery does not obviate St. Thomas Neurosurgical's obligation to produce responsive records, nor does that exemplar constitute an adequate response to the discovery request.   Also, to the extent that St. Thomas Neurosurgical communicated with any payors regarding its care and treatment of Ms. Berry, the information is discoverable because it is reasonably likely to lead to the discovery of admissible evidence regarding the causation of Ms. Berry's injuries and the extent of her damages from tainted ESI injections.   If a communication with an insurer referenced Ms. Berry or the products or services that she received – such as a reservation of rights letter – that

information would be relevant to Ms. Berry's claims.  St. Thomas Neurosurgical must therefore produce all responsive records immediately and without limitation.

RFP No. 10: Produce a copy of any contract between Saint Thomas Neurosurgical and Champ VA related to policy number 409117924.

> RESPONSE:  OBJECTION.  This Request seeks irrelevant information as there are no allegations of negligence related to any STOPNC contractual relationships with other insurers.  Subject to and without waiving this objection, after a reasonable search of STOPNC's records, counsel for STOPNC could not locate any responsive documents.  STOPNC reserves the right to amend this answer, given that discovery is ongoing.

Ms. Berry's Position: St. Thomas Neurosurgical has objected on the basis that the information is irrelevant because there are no allegations of negligence related to "STOPC contractual relationships with other insurers."  It is not clear what this objection means.  The information is reasonably likely to lead to the discovery of admissible evidence, regardless of whether Ms. Berry has alleged some type of "negligence" related to her insurer.  St. Thomas Neurosurgical received reimbursement from Champ VA for care provided to Ms. Berry, and Ms. Berry is entitled to discover the terms under which that reimbursement was made.  The information is not subject to any claim of privilege and must be produced.

As to the substance of St. Thomas Neurosurgical's response, it states that "counsel for STOPNC could not locate any responsive documents" "after a reasonable search."  It also states that STOPNC reserves the right to amend its answer, "as discovery is ongoing."  St. Thomas Neurosurgical either had a contract with Champ VA, or it did not.  St. Thomas Neurosurgical must (1) describe the contours of the "reasonable search" that its attorneys conducted in response to this request, including what hard copy and electronic records were searched, and (2) produce a copy of any responsive documents immediately.  St. Thomas Neurosurgical's "reservation" of

the right to supplement suggests that its clients may be withholding responsive information pending further developments.

RFP No. 11:   Produce a copy of any contract pursuant to which Saint Thomas Neurosurgical received payment from any payor for the products and/or services provided by Saint Thomas Neurosurgical to the Plaintiff.

> RESPONSE: The requested documents were previously produced by the St. Thomas Entities.

Ms. Berry's Position:  St. Thomas Neurosurgical must identify the responsive records by Bates range that it contends is responsive to this request.  Regardless, the fact that another party in this litigation may have produced responsive records does not absolve St. Thomas Neurosurgical of the obligation to produce responsive records in its possession, custody, or control.  It may be that St. Thomas Neurosurgical possesses additional records that were not produced by the St. Thomas Entities.   Furthermore, even a party's **failure** to produce or maintain otherwise responsive records produced by another party can be relevant, discoverable, and lead to important lines of inquiry (*see, e.g.*, the PSC's recent Motion to Compel Special Surgery Center in this litigation). St. Thomas Neurosurgical must therefore produce all responsive records immediately.

RFP No. 12:   Produce all documents you or your counsel collected as part of the releases provided by the Plaintiff with her Plaintiff Profile Form.

RFP No. 13:   Produce all medical records of Plaintiff that are in your or your counsel's possession.

> RESPONSE (to both):     STOPNC hired a third-party vendor to collect medical records.  STOPNC is willing to provide copies of the medical records if Plaintiff is willing to share the costs of doing so.

Ms. Berry's Position:  This request was identical to RFP Nos. 7 and 8 to Howell Allen, and St. Thomas Neurosurgical's responses were substantially the same.   Ms. Berry therefore incorporates her discussion concerning RFP Nos. 7 and 8 to Howell Allen above and requests the same relief relative to St. Thomas Neurosurgical.

RFP No. 15:   Produce for inspection any vials of NECC products or any other medical equipment used by Saint Thomas Neurosurgical in providing any epidural steroid injection to the Plaintiff.

> RESPONSE: The Request to inspect STOPNC's equipment can only be meant to annoy or harass STOPNC by attempting to disrupt STOPNC's treatment of patients to permit an inspection of the premises.  The supplies and equipment other than the NECC MPA are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.   Subject to and without waiving this objection, Defendants do not possess any full or empty vials of NECC products.

Ms. Berry's Position:  Ms. Berry is not seeking to harass or annoy STOPNC's medical providers or to impose any undue interference with its treatment of patients through her requests.  As expressed in her meet and confer letter, Ms. Berry has limited her request to vials of NECC MPA.  As to St. Thomas Neurosurgical's response, it states that the defendants do not possess any "full or empty vials of NECC products."   St. Thomas Neurosurgical must confirm that it does not have in its possession, custody, or control **any vials** of NECC products – full, empty, half-full, broken, or otherwise.  To the extent that it possesses responsive vials, it must produce them for inspection.

Also, given that St. Thomas Neurosurgical was aware of its litigation hold obligations and was represented by its current counsel at least as of October 2, 2012,[13] if not before, St. Thomas Neurosurgical must (1) confirm whether your client had in its possession, custody, or control any vials of NECC products as of October 2, 2012, and (2) explain why those vials are no longer in its possession, custody, or control.

RFP No. 16:   Produce all contracts between Saint Thomas Neurosurgical and any entity related to Saint Thomas Neurosurgical's relationship with the physician that performed Plaintiff's epidural steroid injections.

---

[13] A recent document production in response to separate document requests confirm that St. Thomas Neurosurgical's current counsel became involved in defending St. Thomas Neurosurgical at least as of October 2, 2012.

RESPONSE:  OBJECTION.   This request is vague and in that it requests contracts between STOPNC and "any entity related to" STOPNC, which could be interpreted multiple ways and is overly broad.  Subject to and without waiving this objection, STOPNC previously produced Dr. Culclasure's employment contract with Howell Allen.  *See* John W. Culclasure, MD's Response to the PSC's Request for Production No. 13.

Ms. Berry's Position:  St. Thomas Neurosurgical response states that the request is vague because of the term "any entity related to," and that St. Thomas Neurological previously produced Dr. Culclasure's employment contract with Howell Allen.  As St. Thomas Neurosurgical should know from its own records, Dr. Rachel Rome and Dr. Steve Dickerson performed the August 24, 2015 and September 7, 2015 injections (respectively) on Ms. Berry. St. Thomas Neurosurgical must produce **any** contracts related to Dr. Rome and Dr. Dickerson.

## CONCLUSION

For the foregoing reasons, Ms. Berry's Motion to Compel should be granted automatically on an emergency basis, and the Court should order the defendants to supplement their production in accordance with the relief requested by Ms. Berry herein within 7 days.


Date:  January 12, 2016              Respectfully submitted:

**/s/ Benjamin A. Gastel**
J. Gerard Stranch, IV
Benjamin A. Gastel
BRANSTETTER, STRANCH &
JENNINGS, PLLC
223 Rosa L. Parks Ave., Suite 200
Nashville, TN 37203
Telephone:  615/254-8801
Facsimile:  615/255-5419
gerards@bsjfirm.com
beng@bsjfirm.com
aorlandi@bjsfirm.com
*Plaintiffs' Steering Committee and TN Chair*

Thomas M. Sobol

Kristen Johnson Parker
HAGENS BERMAN SOBOL SHAPIRO, LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Telephone:  617/482-3700
Facsimile:  617/482-3003
tom@hbsslaw.com
kristenjp@hbsslaw.com

*Plaintiffs' Lead Counsel*

Annika K. Martin
Mark P. Chalos
LIEFF CABRASER, HEIMANN & BERNSTEIN, LLP
250 Hudson  Street, 8th Floor
New York, NY  10013
Telephone:  212/355-9500
Facsimile:  212/355-9592
akmartin@lchb.com
mchalos@lchb.com

*Federal/State Liaison*

Marc E. Lipton
LIPTON LAW
18930 W. 10 Mile Road
Southfield, MI 48075
Telephone:  248/557-1688
Facsimile:  248/557-6344
marc@liptonlaw.com

Kimberly A. Dougherty
JANET, JENNER & SUGGS, LLC
31 St. James Avenue, Suite 365
Boston, MA 02116
Telephone:  617/933-1265
kdougherty@myadvocates.com

Mark Zamora
ZAMORA FIRM
6 Concourse Parkway, 22nd Floor
Atlanta, GA 30328
Telephone:  404/451-7781
Facsimile:  404/506-9223
mark@markzamora.com

Patrick T. Fennell (VSB 40393)
CRANDALL & KATT
366 Elm Avenue, S.W.
Roanoke, VA 24016
Telephone:  540/342-2000
Facsimile:  540/400-0616
pfennell@crandalllaw.com

*Plaintiffs' Steering Committee*

<u>**CERTIFICATE OF SERVICE**</u>

I, Benjamin A. Gastel, hereby certify that I caused a copy of the foregoing document to be filed electronically via the Court's electronic filing system. Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system, and notice of these filings will be sent to these parties by operation of the Court's electronic filing system.

Date:   January 11, 2016

/s/ Benjamin A. Gastel
Benjamin A. Gastel