# BRANSTETTER, STRANCH & JENNINGS, PLLC

THE FREEDOM CENTER
223 ROSA L. PARKS AVENUE
SUITE 200
NASHVILLE, TENNESSEE 37203
TELEPHONE (615) 254-8801
FACSIMILE (615) 255-5419

CECIL D. BRANSTETTER, SR., 1920-2014
KARLA M. CAMPBELL
BEN GASTEL*
R. JAN JENNINGS*
JOE P. LENISKI, JR.
DONALD L. SCHOLES
MIKE STEWART
JAMES G. STRANCH, III
J. GERARD STRANCH, IV
MICHAEL J. WALL

ASSOCIATES:
RAQUEL L. BELLAMY
SEAMUS T. KELLY
K. GRACE STRANCH

OF COUNSEL:
ROBERT E. RICHARDSON, JR. **

\* ALSO ADMITTED IN GA
\** ONLY ADMITTED IN OH

**December 23, 2015**

**VIA ELECTRONIC MAIL**

Matthew H. Cline
Gideon Cooper & Essary, PLC
315 Deaderick St., Suite 1100
Nashville, Tennessee 37238

Re:   In Re: Meningitis Litigation; MDL No. 2419, *Berry v. Ameridose, LLC, et al.*, 3:13-CV-12838

Matt,

I write on behalf of Fredia Berry concerning St. Thomas Outpatient Neurosurgical Center, LLC, John Culclasure, MD and Debra Shamberg, RN, CNOR's (collectively, "St. Thomas Neurosurgical") Responses to Plaintiffs Fredia Berry's First Set of Requests for Production, and the Howell Allen Clinic's Responses to Plaintiff Fredia Berry's First Set of Requests for Production.

St. Thomas Neurosurgical did not produce any records in response to Ms. Berry's discovery requests. Furthermore, both Howell Allen and St. Thomas Neurosurgical have both raised invalid objections to the requests and are withholding records or refusing to search for records without a basis to do so. In many cases, it appears that your clients have not even attempted to search for responsive records. Several responses refer to records "previously produced" without specifying the records that you claim are responsive. Howell Allen even refuses to produce Ms. Berry's **medical records** and **billing records** without qualification. Given the tight discovery schedule and the upcoming trial date, these deficiencies have unduly prejudiced Ms. Berry's prosecution of her case and must be rectified immediately.

Ms. Berry's specific issues are as follows:



*Letter to Matt Cline*
*December 19, 2015*
*Page 2*

## HOWELL ALLEN RESPONSES

*RFP No. 1*

RFP No. 1 requests all documents sent from Fredia Berry to St. Thomas Neurosurgical and all documents sent by St. Thomas Neurosurgical to Fredia Berry related to her receipt of MPA at St. Thomas Neurosurgical. Your client's objection to the language "all documents" as overbroad is not a valid objection: it is not overbroad to request **a complete set of records** on an issue that is relevant to this case. Furthermore, it is not overbroad to requests documents "related to" a particular topic.

As to the substance of the response, you refer Ms. Berry back to "exemplar copies" of letters sent to Ms. Berry. If your clients possess a letter sent to Ms. Berry, they must produce that document. If your clients do not possess a letter sent to Ms. Berry, they must confirm that fact.

It is not clear from your response whether St. Thomas Neurosurgical is withholding records based on its complaint of "overbreadth." Please confirm whether your client has withheld records on that basis and identify the records being withheld.

Finally, please confirm that your client actually conducted a search for both hard copy and electronic records in response to this discovery request.

*RFP No. 2*

This request seeks a copy of all communications between a Howell Allen Clinic employee and any governmental entity that mentions Ms. Berry. You have objected that the request is overbroad because it is not restricted to this litigation. Please confirm whether your client is withholding any responsive records or is otherwise refusing to search for records on the basis that the records are not "restricted to this litigation."

You also object on the basis that Howell Allen Clinic already responded to this request in the common discovery phase. Unlike the previous common discovery requests by the PSC, Ms. Berry asks for records that mention her specifically. Please identify whether your clients possess any responsive records that mention Ms. Berry by name and produce them immediately. To the extent that responsive records have already been produced, please identify the Bates numbers corresponding to those documents.

*RFP No. 3*

This request asks for any communications between counsel employed by Howell Allen Clinic and any governmental entity that mentions Ms. Berry. You object on the basis that the request seeks attorney work product and attorney-client privileged material. That objection is not valid. The request seeks communications between counsel for Howell Allen and **a third party** (any governmental entity), which would not be subject to either privilege. Please confirm

whether there are responsive records and explain the basis for asserting that those materials are privileged.

You also object on the basis that the request for information that "mentions" Ms. Berry is overbroad because it is not limited to this litigation. First, even accepting the asserted limitation "to this litigation," your client is obligated to produce responsive records subject to that limitation. Please confirm that Howell Allen has searched for responsive records in response to this discovery request. Second, the objection is not valid. If counsel for Howell Allen communicated with the government and mentioned Ms. Berry by name, that communication is reasonably likely to lead to the discovery of admissible evidence concerning Howell Allen's potential liability for injuries it caused to Ms. Berry, as well as the extent or cause of Ms. Berry's injuries. Please produce all responsive materials immediately and without objection.

*RFP No. 4*

This request asks for medical bills related to any product or service provided to Ms. Berry. You object on the basis that the request asks for irrelevant information because it does not limit the request to "products or services related to the ongoing litigation." That is not a valid objection in the context of this litigation. Your client's care of Ms. Berry before and after the injections is potentially relevant to matters of causation and damages. Indeed, at the deposition of Ms. Berry on December 18, 2015, and at the depositions of other bellwether plaintiffs, defense counsel (including your firm) have questioned plaintiffs extensively about their medical history, including conditions and injuries that pre-date their ESI injections and conditions or injuries they suffered after the ESI injections.

Your client also objects on the basis that the "plaintiff should already possess a copy of the relevant bills." That is a frivolous objection. For your client to refuse to produce **any** medical bills is not justifiable in a personal injury case. Please produce the requested information immediately and without limitation.

*RFP No. 5*

This request seeks all non-privileged communications that mention Ms. Berry. Your objection concerning attorney work product and attorney-client privilege is not necessary, because the request already states that it is not seeking privileged information. The request is not overly broad and unduly burdensome: medical providers at Howell Allen Clinic treated Ms. Berry before, during, and after the fungal meningitis outbreak, and Berry seeks to discover any communications that mention her name. This request is not "impossible to answer with reasonable effort."

Your response states that you searched only the ESI returned by the PSC's original search terms and subject to the same date limitations for the terms "Fredia" and "Berry." First, you should search all ESI for responsive information, not just ESI returned by the PSC's original search terms related to common issues. Second, your search must include hard copy records in additional to electronic records. Third, there is no basis for a time limitation at this stage. Ms.

Berry continued to receive care and treatment after December 31, 2012 for injuries caused by your client, and information concerning her care and treatment relates to issues of causation and damages, among others. Indeed, in your responses to interrogatories served by Ms. Berry, you contest Ms. Berry's allegation that injuries she suffered after December 31, 2012 are attributable to tainted MPA she received, placing information concerning those injuries at issue. Furthermore, at Ms. Berry's December 18, 2015 deposition and at the deposition of other plaintiffs, defendants have explored each bellwether plaintiff's care and treatment after the fungal meningitis outbreak, without date limitation.

Please immediately search for and produce all responsive electronic and hard copy records without date limitation and without an artificial limitation on the scope of the search.

*RFP No. 6*

This request asks for a copy of any contract under which St. Thomas Neurosurgical received payment from any payor for the products or services it provided to Ms. Berry. You state that "payment for Howell Allen's physician services is irrelevant to the claims in this lawsuit." That position is spurious: the distinction between payment for services and payment for the contaminated MPA is the subject of vigorous dispute between the parties, and Howell Allen has relied on payment records in motion practice before the court. The terms of the payor contracts are squarely relevant to Ms. Berry's claims and are not subject to a claim of privilege. Your self-serving, attorney-drafted characterization of the nature of payment sto Howell Allen and St. Thomas Neurosurgical is of no consequence and does not constitute an adequate response to a request for records to your client. Your client either possesses responsive records or it does not.

Please produce a copy of the responsive insurer and other payor contracts immediately.

*RFP Nos. 7 and 8*

These requests seek Ms. Berry's medical records in your client's possession and any other materials collected under the releases provided to your client by Ms. Berry. You object on the basis that the terms "you" and "your" were defined as "St. Thomas Health, not Howell Allen." The definition was (obviously) a typographical error and was actually directed to your client, not to St. Thomas Health. As to the substance of your response, you state that Howell Allen "hired a third-party vendor to collect medical records" and that Howell Allen "is willing to provide copies of the medical records if Plaintiffs are wiling to share the costs of doing so." That is not an appropriate response. The fact that Howell Allen hired a third-party vendor to handle collecting certain medical records and other documents was a choice made by Howell Allen, not the plaintiffs, and Howell Allen references no authority under which it can refuse to produce a plaintiff's medical records in a personal injury case absent the plaintiff's agreement to share the costs of production.

In any event, we are amendable to paying a reasonable cost for the production of these materials without waiving rights to seek court intervention as to whether such fee sharing is

*Letter to Matt Cline*
*December 19, 2015*
*Page 5*

appropriate. Please immediately indicate how much you believe production of this material will cost. I assume these are all being housed electronically in a database with your e-discovery vendor and we will happily provide media necessary for the production of these documents and will consent to an electronic production.

Howell Allen must produce the medical records immediately because they are essential to preparing for depositions of Ms. Berry's treating physicians. Ms. Berry specifically reserves the right to re-depose treating physicians to the extent that responsive records relating to that physician are not produced before his or her deposition. Given Magistrate Judge Boal's December 18, 2015 Order granting the bellwether plaintiffs' request to complete physician depositions of Howell Allen Clinic physicians, it is crucial that you produce her medical records immediately.

## ST. THOMAS NEUROSURGICAL RESPONSES

*RFP No. 1*

This request was identical to RFP No. 1 to Howell Allen, and St. Thomas Neurosurgical's response was the same. Ms. Berry therefore incorporates her discussion concerning RFP No. 1 to Howell Allen above and poses the same requests to St. Thomas Neurosurgical.

*RFP No. 3*

This RFP requests all communications exchanged between "anyone associated with St. Thomas Neurosurgical" and any governmental entity that mentions Ms. Berry. You object on the basis that the term "anyone associated with" St. Thomas Neurosurgical is vague. Rather than provide a suggested reasonable limitation on the scope of that term, your client apparently has chosen not to conduct any further search for records at all. To the extent that clarification is necessary, Ms. Berry clarifies that the scope of the request is directed to St. Thomas Neurosurgical, Dr. Culclasure, Ms. Schamberg, and all shareholders, owners, employees, agents, and authorized representatives of St. Thomas Neurosurgical.

You also object on the basis that St. Thomas Neurosurgical already responded to this request in its November 26, 2014 First Supplemental Response to the PSC's 1st Requests for Production (on common issues). Unlike the previous common issue discovery requests by the PSC, Ms. Berry asks for records that mention her specifically. Please identify whether your clients possess any responsive records that mention Ms. Berry by name and produce them immediately. To the extent that you contend that responsive records have already been produced, please identify the Bates numbers corresponding to those documents.

*RFP No. 4 (as to both Howell Allen and St. Thomas Neurological)*

This request was identical to RFP No. 1 to Howell Allen, and St. Thomas Neurosurgical's response was the same. Ms. Berry therefore incorporates her discussion

concerning RFP No. 1 to Howell Allen above and poses the same requests to St. Thomas Neurosurgical.

*RFP No. 5:*

This request seeks documents sufficient to identify the lot number and source of MPA received by Plaintiff from Saint Thomas Neurosurgical. Your response refers to "STOPNC Response to Interrogatory No. 4." Although you do not specify which set of interrogatory responses your clients are referencing, you appear to be referencing the Responses to Ms. Berry's case-specific interrogatories. Please confirm. Regardless, your clients either possess records sufficient to identify the specific lot of contaminated MPA, or they do not. Please supplement your RFP response to clarify whether your clients do or do not possess responsive records.

*RFP No. 6:*

This request seeks a copy of the prescription used by St. Thomas Neurosurgical to obtain the MPA provided by St. Thomas Neurosurgical to Ms. Berry. Your response refers to "STOPNC Response to Interrogatory No. 5." It is not clear which set of interrogatory responses your clients are referencing although you appear to reference the Responses to Ms. Berry's case-specific interrogatories. Please clarify. Regardless, your clients either possess a prescription for Ms. Berry's procedure, or they do not. Please supplement your RFP response to clarify whether your client possess a **prescription document** or not.

*RFP No. 8:*

This RFP seeks all external communications between St. Thomas Neurosurgical and any other person that mention Ms. Berry.

You have objected on the basis that the request for external communications between St. Thomas Neurosurgical and "any other person" is overly broad and unduly burdensome, and on the basis that it asks for privileged communications. The PSC seeks the production of non-privileged responsive records. The request is not overbroad or unduly burdensome: if St. Thomas Neurosurgical communicated with anyone outside of St. Thomas Neurosurgical in a communication that references Ms. Berry, it must produce those records. "Any person" would include (but is not limited to) any individual, medical provider, company, or other natural or corporate entity.

You state that you have conducted "additional searches of the ESI returned by the PSC's original search terms" and that "[n]o responsive communications were found." First, you are obligated to search all ESI for responsive records, not just those returned by the PSC's original search terms. Second, please clarify whether your ESI search included records after December 31, 2012. Third, you are obligated to search both hard copy and electronic records. Please confirm that you have conducted a hard copy search in response to the discovery request. Fourth, it is not clear from your response whether the scope of your scope was done subject to

the limitations set forth in your objections.  Please explain the limitations placed on that search, if any.  Because those limitations are not valid in the first place, please produce all responsive records immediately.

*RFP No. 9*:

This request seeks all communications with insurers or other payors regarding the products or services rendered to Ms. Berry by St. Thomas Neurosurgical.  You have not produced any records in response to this request on the grounds that (1) you already produced an "exemplar" of your submission to the insurers, and (2) the request asks for irrelevant information "uninvolved in payment for this Plaintiff's care."  The production of an exemplar does not obviate your client's obligation to produce responsive records, nor does that exemplar constitute an adequate response to the discovery request.

To the extent that St. Thomas Neurosurgical communicated with any payors regarding its care and treatment of Ms. Berry, the information is discoverable because it is reasonably likely to lead to the discovery of admissible evidence regarding the causation of Ms. Berry's injuries and the extent of her damages from tainted ESI injections.  If a communication with an insurer referenced Ms. Berry or the products or services that she received – such as a reservation of rights letter – that information would be relevant to Ms. Berry's claims.  Please produce all responsive information immediately.

*RFP No. 10*:

This request asks for a copy of any contract between St. Thomas Neurosurgical and Champ VA related to policy number 409117924, which was the policy number under which St. Thomas Neurosurgical requested and received reimbursement for its care to Ms. Berry.  You have objected on the basis that the information is irrelevant because there are no allegations of negligence related to "STOPC contractual relationships with other insurers."  It is not clear what this objection means.  The information is reasonably likely to lead to the discovery of admissible evidence, regardless of whether Ms. Berry has alleged some type of "negligence" related to her insurer.  St. Thomas Neurosurgical received reimbursement from Champ VA for care provided to Ms. Berry, and Ms. Berry is entitled to discover the terms under which that reimbursement was made.  The information is not subject to any claim of privilege and must be produced.

As to the substance of your response, you state that "counsel for STOPNC could not locate any responsive documents" "after a reasonable search."  You also state that STOPNC reserves the right to amend its answer, "as discovery is ongoing."  Your clients either had a contract with Champ VA, or they did not.  Please confirm that **your clients** (not only counsel) have searched for responsive records and whether **your clients** (not counsel) possess responsive records or not.  Also, please describe the nature of the "reasonable search" that you conducted, including what hard copy and electronic records you searched.  There is no need to "reserve" the right to supplement, which suggests that your clients may be withholding responsive information pending further developments.

*RFP No. 11*: This request asks for a copy of any contract under which St. Thomas Neurosurgical received payment from any payor for the products or services it provided to Ms. Berry. You state that the requested documents were previously produced by the Saint Thomas Entities. First, please identify the responsive records by Bates range that you contend are responsive to these requests. Second, the fact that another party in this litigation may have produced responsive records does not absolve your clients of the obligation to produce responsive records in their possession, custody, or control. It may be that your client possess additional records that were not produced by the St. Thomas Entities. Furthermore, even a party's **failure** to produce or maintain otherwise responsive records produced by another party can be relevant, discoverable, and lead to important lines of inquiry (*see, e.g.*, the Plaintiffs' recent Motion to Compel Special Surgery Center in this litigation). Please produce all responsive records immediately.

*RFP Nos. 12 and 13*:

This request was identical to RFP Nos. 7 and 8 to Howell Allen, and St. Thomas Neurosurgical's responses were substantially the same. Ms. Berry therefore incorporates her discussion concerning RFP Nos. 7 and 8 to Howell Allen above and poses the same requests to St. Thomas Neurosurgical.

*RFP No. 15*:

The request seeks the production for inspection of any vials of NECC products or other medical equipment or products used by St. Thomas Neurosurgical in providing any injections to Ms. Berry. Your client objects that the request is harassing and designed to disrupt the defendants' business to permit an inspection. Ms. Berry hereby limits her request to vials of NECC MPA.

As to your response, you state that the defendants do not possess any "full or empty vials of NECC products." First, please confirm that your client do not have in their possession, custody, or control **any vials** of NECC products – full, empty, half-full, or otherwise. Second, given that your client was aware of its litigation hold obligations and was represented by your firm at least as October 12, 2012, if not before, please confirm whether your client had in its possession, custody, or control any vials of NECC products as of October 12, 2012 and explain why those vials are no longer in its possession, custody, or control.

*RFP No. 16*:

This request seeks all contracts between St. Thomas Neurological and any entity that are related to Saint Thomas Neurosurgical's relationship with the physician or physicians that performed Ms. Berry's injections. Your response states that the request is vague because of the term "any entity related to," and that St. Thomas Neurological previously produced Dr. Culclasure's employment contract with Howell Allen. As your clients should know from their own records, Dr. Rachel Rome and Dr. Steve Dickerson performed the August 24, 2015 and

*Letter to Matt Cline*
*December 19, 2015*
*Page 9*

September 7, 2015 injections (respectively) on Ms. Berry.[1]   Please produce **any** contracts between Dr. Rome and Dr. Dickerson and your clients.

## EXPEDITED RESPONSE

Judge Zobel authorized case-specific discovery in her July 9, 2015 Order (D.E. 2075), and both sides identified Ms. Berry's case as a potential bellwether case on August 14, 2015. Your clients have had over four months (at a minimum) to prepare for case-specific discovery requests and should have anticipated that Ms. Berry would seek records that reference her or that otherwise relate to her care and treatment by your clients. The fact that your clients have refused to search for relevant ESI and hard copy records and are refusing to produce patently relevant materials, such as any records collected under the releases she gave to you, is not justifiable. Much of the information requested by Ms. Berry is necessary to prepare for depositions of treating physicians and to prepare Ms. Berry's experts. We therefore request that you provide a response to this letter and that you produce all responsive records by Wednesday, December 30, 2015. Absent a complete response by that date, Ms. Berry will be forced to file an emergency motion for relief from the Court to have the matter placed for hearing at the January 14, 2016 Status Conference.

It is not our intention to inconvenience anyone over a holiday, but your clients' failure to respond in good faith to the discovery requests puts Ms. Berry in an untenable position and interferes with her ability to prosecute her case, including preparation for upcoming treating physician depositions and preparation of her experts by January 22, 2016.

I look forward to your response and to resolving these issues expeditiously.

Warmest Regards,

Benjamin A. Gastel

BAG/lrm

---

[1] Ms. Berry's Plaintiff Profile Form incorrectly identified Dr. Culclasure as the injecting physician. Ms. Berry recently served a correct form that identifies Dr. Rome and Dr. Dickerson.