UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


MDL NO. 13-02419-RWZ


IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC.
PRODUCTS LIABILITY LITIGATION


THIS ORDER APPLIES TO ALL ACTIONS


Opinion and Order

January 14, 2016


ZOBEL, D.J.

This multidistrict litigation aggregates tort cases arising under the laws of, at last count, eighteen different states. The court's role in overseeing the multidistrict litigation has been, and is, to manage "coordinated or consolidated pretrial proceedings." 28 U.S.C. § 1407(a) (2012). So far, it has done that without much delving into the state-specific tort claims. With most universal issues now resolved, however, more questions about the substantive law governing the individual cases have come to the fore. Briefly, plaintiffs and Clinic-Related Defendants[1] are preparing their cases for trial. Discovery

---

[1] This opinion adopts the shorthand used in Docket # 2309: "NECC" refers to New England Compounding Pharmacy, Inc., d/b/a New England Compounding Center; "Affiliated Defendants" refers to NECC's employees, directors, and affiliated companies; "National Defendants" refers to vendors who provided services to NECC; and "Clinic-Related Defendants" refers to clinics, hospitals, and healthcare professionals who procured contaminated NECC products and administered them to patients. Furthermore, NECC, the Affiliated Defendants, and the National Defendants are referred to collectively as the "Former Defendants," Clinic-Related Defendants located in Tennessee are referred to as the "Tennessee Defendants," and Clinic-Related Defendants located in New Jersey are referred to as the "New Jersey Defendants." Their respective cases are referred to as the "Tennessee Cases" and the "New Jersey Cases."

has proceeded on the assumption that Tennessee and New Jersey law on comparative fault will apply to cases originating from those states, and the court must now resolve this question conclusively. This decision implicates two threshold questions: first, does a transferee court apply its own choice-of-law rules or those of the transferor court, and second, does that answer compel this transferee court to adhere to state or federal choice-of-law principles?

The first question has a clear answer—transferee courts apply the choice-of-law rules of the original forum[2]—and the parties agree that as to the second—for the Tennessee and New Jersey Cases, the standards in the Second Restatement of Conflict of Laws apply under state and federal choice-of-law principles.[3] The parties further agree that Tennessee and New Jersey law should govern, respectively, the plaintiffs' claims in the Tennessee and New Jersey Cases. Their disagreement is cabined to a single issue—whether Massachusetts law, or that of the original jurisdictions, will determine the issue of joint tortfeasor liability—and this opinion reaches no further. Under the Restatement principles, Tennessee substantive law will

---

[2] Several circuits have expressly held that an MDL court must apply the choice-of-law principles that the original forum (i.e., the district court from which each case was transferred) would apply, and none have held to the contrary. See, e.g., Chang v. Baxter Healthcare Corp., 599 F.3d 728, 732 (7th Cir. 2010) ("When a diversity case is transferred by the multidistrict litigation panel, the law applied is that of the jurisdiction from which the case was transferred . . . ."); In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig., 97 F.3d 1050, 1055 (8th Cir. 1996) (same); In re Air Disaster at Ramstein Air Base, Ger., 81 F.3d 570, 576 (5th Cir. 1996) (same); Phelps v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi. (In re Nucorp Energy Sec. Litig.), 772 F.2d 1486, 1492 (9th Cir. 1985) (same).

[3] See In re Engage, Inc., 330 B.R. 5, 9 (D. Mass. 2005) ("[F]ederal common law . . . follow[s] the multiple factor, 'interest analysis' or most significant relationship' analysis exemplified by the Restatement (Second) of Conflict of Laws . . . .") (internal quotation marks omitted); Hataway v. McKinley, 830 S.W.2d 53, 59 (Tenn. 1992); P.V. ex rel. T.V. v. Camp Jaycee, 962 A.2d 453, 460 (N.J. 2008).

apply in the Tennessee cases, and New Jersey substantive law will apply in the New Jersey cases.

**I.      For Cases Premised Upon Bankruptcy Jurisdiction That Were Originally Filed in Tennessee, Tennessee Substantive Law Applies**

The Restatement presumes that Tennessee law should apply to the Tennessee Cases, and this presumption stands absent a greater depth and significance of contacts between those cases and Massachusetts. Arguments that Massachusetts has such contacts are unconvincing, and the law of Tennessee, not Massachusetts, will therefore apply to the Tennessee cases.

For each issue in tort cases, the Restatement advises that "the local law of the state which, with respect to that issue, has the most significant . . . relationship to the occurrence and parties" should apply. Restatement (Second) of Conflict of Laws § 145(1) (1971). Determining the significance of a state's relationship requires evaluating that state's contacts to the incident that gave rise to the litigation, and then weighting the importance of those contacts according to a host of policy considerations. Not all of a state's contacts with the case count for this assessment, as the Restatement circumscribes relevant contacts to just four categories: first, "the place where the injury occurred"; second, "the place where the conduct causing the injury occurred"; third, "the domicil, residence, nationality, place of incorporation and place of business of the parties"; and fourth, "the place where the relationship, if any, between the parties is centered." Id. § 145(2). Contacts falling outside of these categories matter little for the Restatement's choice-of-law analysis. Weighting the importance of relevant

3

contacts calls for consideration of policy consequences such as comity, fairness, and efficiency. Id. § 6(2).[4] For personal injury actions, the Restatement presumes that "the law of the state where the injury occurred" will apply absent compelling countervailing concerns. Id. § 146.

The parties agree that the injuries at the heart of the Tennessee Cases occurred in Tennessee. Tennessee law will thus apply unless the PSC demonstrates a significant relationship between Massachusetts and the issue of joint tortfeasor liability. The PSC first argues that Massachusetts has substantial contacts with the Tennessee Cases, although the injuries did not occur, and none of the parties reside, in Massachusetts. It bases the argument on the difference between the law of Tennessee and Massachusetts as to comparative fault. Tennessee tort law embraces modified comparative fault under which "each defendant will be liable only for the percentage of the damages caused by it." Ridings v. Ralph M. Parsons Co., 914 S.W.2d 79, 83 (Tenn. 1996). Massachusetts, however, follows joint and several liability, under which plaintiffs may recover full damages from any partially responsible defendant. See

---

[4]The considerations listed in Section 6(2) are as follows:

(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.

Id.

Kabatchnik v. Hanover-Elm Bldg. Corp., 119 N.E.2d 169, 172 (Mass. 1954). This distinction creates an issue in cases governed by Tennessee law not present in cases governed by Massachusetts law: the precise extent of fault borne by each defendant. Under Tennessee law, the Tennessee Defendants may reduce or eliminate their damages owed by convincing a jury that some, much, or all of the blame lies with the Former Defendants.

The Former Defendants, many of whom reside in Massachusetts, form the crux of the PSC's argument that Massachusetts has substantial connections to the Tennessee Cases. The Former Defendants, however, are no longer parties in the Tennessee Cases, and thus have minimal relevance to the Restatement's choice-of-law analysis. The Restatement considers the place of the injury, the place of the conduct that caused the injury, the location of *the parties*, and the place where the relationship *between the parties* is centered. Restatement (Second) of Conflict of Laws § 145(2). These factors entirely exclude consideration of nonparties, even nonparties formerly party to this litigation, and the PSC's reliance on nonparty contacts hobbles its argument. And while the PSC is correct that much of the conduct that caused the injuries occurred in Massachusetts, the same is true—by the PSC's own admission—of Tennessee. Under the Restatement, then, Massachusetts has very little relevant contact with the Tennessee Cases for choice-of-law purposes: it is one of several states where precipitating conduct occurred. Whether the Restatement's policy considerations favor the application of Massachusetts law will be evaluated against this background.

For Massachusetts's substantive law to apply in the Tennessee Cases, interests of comity, fairness, and efficiency, as enumerated in Section 6(2), would have to overwhelm the Restatement's presumption that Tennessee law should apply. Application of Massachusetts law, however, would not further these interests, and so the Restatement's presumption remains undisturbed. Interests of comity, which appear in the Restatement as "the needs of the interstate and international systems" and "the relevant policies of [Tennessee] and the relative interests of [Tennessee] in the determination of the particular issue" do not favor Massachusetts. Interstate and international needs have no bearing on the Tennessee cases. Weighing the relative interests of Tennessee and of Massachusetts favors Tennessee, which has a self-evidently greater interest—embodied by the Restatement's presumption in favor of Tennessee law—in adjudicating disputes between its residents[5] concerning injuries that occurred within its borders.

Interests of fairness, captured by the Restatement as "the protection of justified expectations" and "certainty, predictability, and uniformity of result" likewise do not favor the application of Massachusetts law. Applying Massachusetts law to joint tortfeasor recovery in cases against Tennessee defendants under Tennessee law for injuries that occurred within Tennessee simply because those injuries stemmed from contaminated pharmaceuticals manufactured in Massachusetts would upset, not protect, justified interests. The Tennessee Defendants operate within Tennessee, and

---

[5]Certain plaintiffs in the Tennessee Cases reside in Kentucky. Although this fact somewhat lessens Tennessee's interest in adjudicating those cases, the more pertinent question is whether it strengthens Massachusetts's. It does not.

6

saddling them with the law of a foreign jurisdiction would inexplicably elevate the location of their suppliers above their chosen place of business. Nor would the application of Massachusetts law protect the justified interests of the Tennessee plaintiffs, none of whom could have reasonably expected ex ante that Massachusetts law would determine who bears how much liability for injuries sustained at Tennessee health care facilities. As to predictability, certainty, and uniformity, application of Massachusetts law would not further these interests any more than would the application of Tennessee law. Applying Massachusetts law to the Tennessee Cases would, as discussed above, upset the parties' reasonable expectations and upend the predictability of outcomes in the cases. Certainty does not support Massachusetts, and neither does uniformity.

Efficiency concerns—"ease in the determination and application of the law to be applied"—favor indifference more than they do the law of Tennessee or Massachusetts. While the PSC correctly states that applying Massachusetts law would reduce the amount of discovery sought from the Former Defendants by the Tennessee Defendants in these cases, this would only defer litigation costs, not eliminate them. Massachusetts law provides for contribution actions between joint tortfeasors, see Mass. Gen. Laws, ch. 231B, §§ 1-4 (2015), and the parties give us no reason to expect that such actions would not follow the Tennessee Cases were they to be governed by Massachusetts law.

The residual factors—"the relevant policies of the forum" and "the basic policies underlying the particular field of law"—likewise do not favor the application of Massachusetts law. The policy of the current forum—a Massachusetts federal court

exercising jurisdiction under 28 U.S.C. § 1344(b)—is to apply Tennessee law. As for the basic policies underlying joint tortfeasor liability, Tennessee law creates no objectively unconscionable or anachronistic result from which Massachusetts law would offer a clear escape, and this factor thus merits no further consideration. While plaintiffs who dislike the consequences of Tennessee's tort law may voice their concerns with that state's legislature, they may not circumvent those consequences here.

## II.  For Cases Premised Upon Bankruptcy Jurisdiction That Were Originally Filed in New Jersey, New Jersey Substantive Law Applies

The analysis and arguments concerning the New Jersey Cases are functionally identical to their Tennessee counterparts and unsurprisingly lead to a corresponding result: that New Jersey law will apply to the New Jersey Cases. The PSC correctly notes that the distinctions between Massachusetts and New Jersey tort law[6] will create a triable issue that burdens Massachusetts entities with discovery requests from the New Jersey Defendants, and argues that those burdens provide the requisite connection between Massachusetts and the New Jersey Cases. This argument fails for the reasons discussed above. Massachusetts's contacts with the New Jersey Cases are minimal, and, as with the Tennessee Cases, I am not persuaded that any policy considerations rooted in those contacts defeat the Restatement's presumption that New Jersey law should apply in those cases.

---

[6] In New Jersey, tortfeasors who shoulder sixty percent or more of the fault for an injury are jointly and severally liable, but tortfeasors less than sixty percent at fault are liable only for that percentage of damages attributable to their conduct. N.J. Stat. Ann. § 2A:15-5.3 (West 2015). In cases with multiple tortfeasors, juries must determine the fault borne by each. See generally Brodsky v. Grinnell Haulers, Inc., 853 A.2d 940 (N.J. 2004).

## III. Conclusion

The PSC's motion for leave to file an enlarged reply brief (Docket # 2096) is ALLOWED. Tennessee and New Jersey substantive law shall govern the claims for all cases in which federal jurisdiction is premised upon 28 U.S.C. § 1334 that were originally filed in those respective jurisdictions.[7]

|  |  |
|---|---|
| January 13, 2016 | /s/Rya W. Zobel |
| DATE | RYA W. ZOBEL |
|  | UNITED STATES DISTRICT JUDGE |

---

[7] This order does not apply to cases in which federal jurisdiction is premised on federal question or diversity jurisdiction under 28 U.S.C. §§ 1331 or 1332 (if any), nor does it decide which state's substantive law applies to any action originally filed in a jurisdiction other than Tennessee or New Jersey.