UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | MDL No. 2419<br>Dkt. No. 1:13-md-2419 (RWZ) |
| THIS DOCUMENT RELATES TO:<br><br>CRAIG S. SIMAS,<br>JOAN SIMAS<br>      Plaintiff(s),<br><br>v.<br><br>OCEAN STATE PAIN MANAGEMENT P.C., ABDUL BARAKAT, M.D.<br><br>      Defendants<br><br>CIVIL ACTION NO. 1:13-cv-10943-RWZ | |

**MEMORANDUM OF PLAINTIFFS CRAIG AND JOAN SIMAS IN OPPOSITION TO MOTION OF DEFENDANTS, ABDUL BARAKAT, M.D. AND OCEAN STATE PAIN MANAGEMENT, P.C. TO DISMISS PRODUCT LIABILITY AND CONSUMER PROTECTION CLAIMS OF THE PLAINTIFFS**

Now come the plaintiffs, Craig and Joan Simas, and respectfully request that this Honorable Court deny defendants' motion to dismiss the breach of warranty and consumer protection claims asserted against them. For the reasons stated below, plaintiffs have sufficiently pled claims against both defendants for breach of the implied warranties of merchantability and/or fitness for a particular purpose under Mass.Gen.Laws c. 106, §§2-314 and/or 2-315 and violation of Massachusetts and Rhode Island consumer protection statutes (M.G.L. ch. 93A, §§9 and 2(a) and R.I. Gen. Laws §§6-13.1). Defendants' motion, therefore, must be denied.

1

I.      **BACKGROUND**

Plaintiffs, Joan and Craig Simas, originally filed claims against New England Compounding Pharmacy, Inc. d/b/a New England Compounding Center ("NECC") and Ocean State Pain Management, P.C. ("Ocean State") in Middlesex Superior Court (Massachusetts) on or about November 23, 2012. The complaint was removed to the District Court of Massachusetts and eventually became part of the Multi District Litigation currently before this Court. Subsequent amendments to Plaintiffs' original complaint have added additional defendants including Unifirst Corporation and Dr. Abdul Barakat.

Plaintiff Craig Simas was injected with contaminated NECC methylprednisolone acetate ("MPA") by Dr. Abdul Barakat on September 15 and/or 22, 2012 while he was a patient at Ocean State. See Second Amended Short Form Complaint Against Unaffiliated Defendants at Civil Action No. 1:13-cv-10943, Docket #17 ("Second Amended Complaint"), ¶¶ 5-7. The Plaintiffs incorporated allegations from the Master Complaint against Ocean State and Dr. Barakat for Negligence and Gross Negligence, Violation of Consumer Protection Statutes (including M.G.L. Ch. 93A and R.I. Gen. Laws. §§ 6-13.1-1 et seq.), Failure to Warn, Loss of Consortium, and Punitive Damages. See Second Amended Complaint, ¶8. In addition, Plaintiffs asserted two additional counts against Ocean State and Dr. Barakat which specifically allege that Ocean State and Dr. Barakat purchased contaminated MPA from NECC and sold and distributed that contaminated MPA to Craig Simas thereby breaching Implied Warranties of Merchantability and Fitness for Particular Purpose under both Massachusetts and Rhode Island law. See Second Amended Complaint, ¶¶ 14-18, 23-27. In addition, the original complaint filed in Middlesex Superior Court by Craig and Joan Simas, attached to defendant's Memorandum in Support of

Motion to Dismiss, specifically alleges that "Ocean State sold and billed Craig Simas for the methylprednisolone acetate." See Docket #2390-1 at 3 (¶ 16 of the original complaint).

## II. LEGAL STANDARD

"At this stage of the litigation . . . [a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spaulding,* 467 U.S. 69, 73 (1984). In considering a Motion to Dismiss, the Court must construe the complaint "in the light most favorable to the pleader and all allegations therein are taken as true." *Nollet v. Justices of the Trial Court of the Commonwealth of Massachusetts,* 83 F.Supp.2d 204, 207 (D.Mass. 2000), aff'd, 248 F.3d 1127 (1st Cir. 2000). All reasonable inferences are drawn in plaintiffs' favor. *Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 69 (1st Cir. 2000).

## III. ARGUMENT

### A. Plaintiffs' Breach of Warranty Claims Survive Defendants' Motion to Dismiss

#### 1. The Pleadings Adequately Demonstrate a Sale of MPA to Plaintiff from Defendants

While defendants appear to "disagree that a sale of the product at issue ever occurred", see Defendants' Motion to Dismiss, Docket #2390 at 5, the pleadings repeatedly refer to the sale of MPA by Ocean State and Dr. Barakat directly to Craig Simas. The Second Amended Complaint avers that defendants "sold and/or distributed" contaminated MPA to Craig Simas. Second Amended Complaint, ¶¶15, 24. The sale and/or distribution of the contaminated MPA is further referenced in the body of the complaint cataloguing the breach of warranty claims. Id. at ¶¶ 17-18, 26-27. In addition, the original complaint filed by Craig and Joan Simas specifically alleges that "Ocean State sold and billed Craig Simas for the methylprednisolone acetate." See

3

Docket #2390-1 at 3 (¶ 16 of the original complaint). Construed in a light most favorable to the plaintiffs, the pleadings sufficiently allege the sale of a product under the provisions of the Uniform Commercial Code.[1]

### 2. The Case of *Phillips v. Medtronic* is Controlling and Demonstrates that Plaintiffs Breach of Warranty Claims are Viable Under Massachusetts Law

In *Phillips v. Medtronic, Inc.,* 754 F.Supp.2d 211 (D.Mass. 2010), the District Court of Massachusetts held that the plaintiffs had demonstrated a reasonable basis in law and in fact to support their breach of warranty claims against The Brigham and Women's Hospital. 754 F.Supp. at 217. The rationale of the *Phillips* case mandates a similar result in the instant case. In *Phillips,* plaintiff Cynthia Phillips had an intrathecal pain pump, manufactured by defendant Medtronic, inserted at defendant The Brigham and Women's Hospital. Id. at 214. The issue confronted by the court in *Phillips* was whether the hospital could be liable for a breach of warranty for supplying its patient with an allegedly defective medical device. Id. at 216. The Court recognized that there was no Massachusetts case law on this specific issue and undertook an analysis to predict "how the state's highest court would resolve the issue." Id. at 216. The Court stated that the Plaintiffs' claim for a defective medical device had to be brought as a claim for breach of the implied warranties of merchantability and/or fitness for a particular purpose under M.G.L. ch. 106, §§ 2-314 and 2-315, or of an express warranty under § 2-313. Id. at 216. The warranty claims had to arise out of a "transaction in goods," and the warranty theory would not be available where "the predominant factor, thrust or purpose" of the transaction is the

---

[1] To the extent that the Court believes that the plaintiff's allegations are not sufficient to survive the Motion to Dismiss, plaintiffs respectfully request that the Court reserve judgment on the instant motion until the parties can engage in discovery to uncover the precise facts regarding the sale and distribution of the MPA by Ocean State and Dr. Barakat. Based on the discovery stay instituted by this Court, Ocean State has not answered discovery served upon it by plaintiffs. Allowing the parties to proceed with discovery prior to ruling on this Motion would provide plaintiffs with the opportunity to address any alleged deficiencies in the pleadings as argued by the defendants.

"rendition of service, with goods incidentally involved." Id. at 216, quoting *Mattoon v. City of Pittsfield*, 56 Mass.App.Ct. 124, 141-142 (2002).  The Court in *Phillips* also recognized that, under Massachusetts breach of warranty provisions, a claim can only be brought against a "seller" of goods.  *Phillips,* 754 F.Supp. at 216.

The District Court in *Phillips* analyzed law from other state courts recognizing a split in authority as to whether a hospital can be considered liable for breach of warranty when supplying a defective medical device to a patient as part of his treatment.  Id. at 216.  The District Court also considered Massachusetts law requiring pharmacies to warn customers of the side effects of drugs in certain circumstances.  See *Cottam v. CVS Pharmacy,* 436 Mass. 316, 326 (2002) (holding that pharmacy has duty to provide complete list of side effects when they provide a list that a customer would reasonably interpret as complete); *Brienze v. Casserly,* No. 01-1655-C , 2003 WL 23018810 (Mass.Super. Dec. 19, 2003) (holding that a pharmacist had a duty to warn when he or she knows of a risk to that particular customer).  After considering relevant case law from other jurisdictions, Massachusetts breach of warranty law, and Massachusetts law regarding pharmacy obligations, the District Court determined that the Massachusetts Supreme Judicial Court would follow those courts which have held that "a hospital can be deemed a seller or distributor of medical devices for the purposes of resolving a product liability claim.  Resolving all ambiguities in the law in favor of the Plaintiffs, the Court infers that the Massachusetts state courts would do so." *Phillips*, 754 F.Supp. at 217.

Under the holding of *Phillips,* plaintiffs in this case have likewise stated a claim for breach of warranty against Ocean State and Dr. Barakat.  Plaintiffs have additionally and specifically brought claims against Ocean State and Dr. Barakat for violation of the implied warranties of merchantability and/or fitness for a particular purpose under M.G.L. ch. 106, §§ 2-

5

314 and 2-315. Those claims allege that Ocean State and Dr. Barakat "sold and/or distributed" the contaminated MPA to Craig Simas. See Second Amended Complaint, ¶¶15, 24. Moreover, Mr. Simas was specifically charged for the MPA injected into him on September 15 and 22, 2012. See Docket #2390-1 at 3 (¶ 16 of the original complaint). Just like The Brigham in *Phillips,* Ocean State and Dr. Barakat sold and distributed the MPA as part of the treatment rendered to Craig Simas. For that reason, this Court must find "that Plaintiffs have stated a reasonable basis in law and in fact to support their claims against [defendants] for breach of warranty." *Phillips*, 754 F.Supp. at 217.

Defendants futilely attempt to distinguish *Phillips* from the instant case. Defendants contend that, because *Phillips* involves a "permanent surgical implant" rather than a "medication," *Phillips'* breach of warranty analysis is distinguishable. Defendants nonsensically contend that "[i]t is possible for an intrathecal pain pump to be construed as a tangible good since it is permanently placed inside of a person's body." *Defendant's Motion to Dismiss*, p. 11. If anything, the fact that something becomes a "permanent" part of one's body makes it less of a "movable" thing as defined by the U.C.C. rather than the contrary conclusion offered by defendants. See M.G.L. ch. 106, §2-105(1) ("'Goods' means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale"). Moreover, the instant case involves markedly less services than those rendered to the plaintiff in *Phillips.* In *Phillips,* a physician had to make an incision and surgically implant a medical device permanently into an individual. If the insertion of the permanent pain pump can subject a hospital to liability for breach of warranty under *Phillips,* then the sale of MPA in this case most certainly does. It requires much less skill and knowledge to provide an injection than it does to operate on someone to insert a medical device.

Defendants' reliance on *Mattoon v. City of Pittsfield*, 56 Mass.App.Ct. 124 (2002) is similarly misplaced.  In *Mattoon,* the court held that the U.C.C. did not apply to the provision of water by a city to its citizens.  *Mattoon*, 56 Mass.App.Ct. at 140-142.  The water in *Mattoon* was not created or manufactured by the defendant city.  Id. at 141. Rather, the city through a system of reservoirs captured the water, treated it and distributed it.  Id.  Thus, the provision of a service was the predominant factor in the transaction.  Id. at 140-142.  Contrary to defendants' argument, *Mattoon* is not analogous to the instant case because the good in *Mattoon*, water, is a naturally occurring substance.  It cannot be created or manufactured.  It can only be treated or stored.  In contrast, the MPA in question here, was, in fact, manufactured and/or created just like the intrathecal pain pump in *Phillips.*

Ultimately, when analyzing a mixed transaction that involves both goods and services, the deciding factor is whether "the predominant factor, thrust or purpose" of the transaction in question, here, the injection of the MPA, constitutes the "rendition of service, with goods incidentally involved."  *Phillips,* 754 F.Supp at 216, quoting *Mattoon v. City of Pittsfield*, 56 Mass.App.Ct. at 141.  In this case, the "goods," the MPA, are of paramount importance to the transaction.  The injection itself is futile without the MPA.   The performance of the injection, therefore, is incidental to the provision of the particular drug in question.    Just like the Brigham in the *Phillips* case, therefore, Ocean State and Dr. Barakat can be held accountable for breach of warranty under the facts as alleged by the plaintiffs.

### 3. Other Jurisdictions Have Held That a Hospital or Physician Can Be Deemed a Seller or Distributor for Purposes of a Breach of Warranty Claim

Defendants' brief discusses at length decisions from other jurisdictions which purportedly support their position.  It is important to note, however, that such other authority is not

7

completely one-sided. As stated previously, review of case law from other jurisdictions reveals a split of authority regarding whether a hybrid transaction such as this one is covered by the U.C.C. See 35 Massachusetts Practice Series §6:14 at 498-99 ("other cases are divided, some holding that any goods furnished in a medical procedure are only incidental to the services provided and are not sold, precluding the application of U.C.C. implied warranties, while others come to the contrary conclusion"). Other jurisdictions have found that the U.C.C. does apply to hospitals and physicians. In particular, the court in *Palmer v. A.H. Robins Co., Inc.*, 684 P.2d 187, 206 (Colo. 1984) held that, because the doctor in question specifically charged for a defective intra-uterine device implanted into his patient, the doctor was a "seller" of that device under the definition of "seller" in the U.C.C. See id. at 206 ("Since the cost of the shield to Dr. Petri was included in his fee for the insertion of that device in [plaintiff], Dr. Petri in this case was [plaintiff's] immediate seller.") The *Palmer v. A.H. Robins Co.,* decision has specific relevance in the instant case since the defendants here separately charged for and, therefore, made a specific sale of the MPA in question to the plaintiff Craig Simas, as did the doctor in *Palmer*. See also *Mauran v. Mary Fletcher Hospital,* 318 F.Supp. 297, 300-301 (D. Vt. 1970) (predicting that Supreme Court of Vermont would recognize breach of warranty by hospital for providing defective drug to patient); *Skelton v. Druid City Hospital,* 459 So.2d 818, 821-822 (Ala. 1984) (hospital was "seller" of goods under U.C.C. for using defective suturing needle). Thus, other jurisdictions recognize the applicability of the U.C.C. to doctors and hospitals.

### 4. The Court's Prior Rulings in the MDL

Defendants make the argument that "[t]he Court has already issued a ruling in another NECC MDL case in favor of Defendants' position" and cites to Docket Nos. 2225 and 1642. *Defendants' Motion to Dismiss,* p. 12. The defendants, however, fail to mention this Court's

8

other rulings on Motions to Dismiss product liability claims in which certain of those claims were allowed to proceed.  See Docket Nos. 1360 and 1643. Review of all of these rulings demonstrates that this Court analyzes the underlying state law to determine how to rule on the product liability claims.  See Docket # 1360 at 30-31 ("Here, plaintiffs have adequately stated claims for relief **under** the [**Tennessee** Products Liability Act of 1978], apart from allegations of health care liability. Given the lack of controlling authority to the contrary, plaintiffs may proceed with their products liability claims as separate from the [Tennessee Health Care Liability Act]."); Docket # 1642 at 10 ("**Under Illinois law,** there is no action for strict liability on the complaint as alleged.");  Docket # 1643 at 9 (doctors exempt from liability under specific provision of Ohio Product Liability Act, but pain clinic was not);Docket # 2225 at 5 ("**Under Maryland law**, there is no action for strict liability on the complaint as alleged."); Docket #2585 (unopposed motion allowed under specific provisions of **New Jersey law**).  Accordingly, an analysis of Massachusetts law regarding breach of warranty provisions must control.

    To begin, the prior rulings of this Court relied upon by defendants are primarily based upon the application of the underlying states' strict liability principles to the defendant doctors and clinics. See Docket # 1642 at 9-10 (construes strict product liability in Illinois); Docket # 2225 at 5 (construes Maryland strict liability principles).  Such analysis has no application to the instant case since, as Defendants have correctly pointed out, "[i]n Massachusetts, there is no strict liability cause of action for a defective product." *Phillips,* 754 F.Supp. 2d at 216.  See also *Commonwealth v. Johnson Insulation*, 425 Mass. 650, 653 (1997) ("[w]e have declined to allow claims for strict liability in tort for defective products").  Such a claim can only be brought, and therefore, must only be analyzed under warranty principles. *Phillips,* 754 F.Supp. 2d at 216.  The strict liability analyses of this Court's prior rulings, therefore, are not controlling.  The

question, rather, is whether there was a "sale" of a good such that the breach of warranty provisions of the Massachusetts U.C.C. apply. The *Phillips* case, discussed at length above, indicates that it does. The District Court in *Phillips* determined that Massachusetts state courts would allow a hospital to be "deemed a seller or distributor of medical devices for the purposes of a product liability claim." *Phillips*, 754 F.Supp.2d at 217. Under the *Phillips* analysis, Ocean State, the clinic, and Dr. Barakat, should be deemed sellers and/or distributors of the MPA. Additional Massachusetts case law reinforces this conclusion.

Under the Massachusetts Unfair and Deceptive Practices Act, M.G.L. ch 93A, Massachusetts recognizes a distinction between traditional physician services and those aspects of the medical practice that are entrepreneurial and business in nature. The Massachusetts Supreme Judicial Court has held that, although a claim for medical malpractice, without more, does not qualify for an unfair or deceptive act under Chapter 93A, Chapter 93A may be applied to "the entrepreneurial and business aspects of providing medical services, for example, advertising and billing." *Darvirus v. Petros,* 442 Mass. 274, 278-279 (2004). Thus, the Supreme Judicial Court has already demonstrated a willingness to separate out the "entrepreneurial and business" aspects of a medical practice to determine the exact nature of the underlying claim. They have recognized a distinction between the physician's medical services and the other non-medical aspects of the care. This 93A case law, therefore, bolsters the conclusion that the sale of the MPA in this case can be viewed as separate and apart from the provision of medical services such that its sale to the patient constitutes a breach of warranty claim under Massachusetts law.

## B. Plaintiffs' State a Viable Claim for Violation of Chapter 93A

### 1. Under the Language of the Statute and Relevant Case Law Plaintiffs Have Sufficiently Pled a Cause of Action for Violation of Chapter 93A

Section 9 of M.G.L. ch. 93A[2], which applies to the claims in this case, broadly affords a civil remedy to "[a]ny person. . . who has been injured by another person's use or employment of any method, act, or practice declared to be unlawful by section two or any rule or regulation issued thereunder." M.G.L. ch. 93A, §9(1). Section 2 declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." M.G.L. ch. 93A, §2(a). The statute defines trade and commerce to include "the offering for sale, rent or lease, the sale, rent, lease or distribution of any services and any property . . . and shall include any trade or commerce directly or indirectly affecting the people of this commonwealth." M.G.L. ch. 93A, §1(b). Accepting all factual allegations contained in the complaint and drawing all reasonable inferences in favor of the plaintiffs, the plaintiffs have clearly stated a cause of action for breach of Chapter 93A. Mr. Simas alleges that he was injured as a result of the injection of the contaminated MPA, which was sold, distributed, and provided to him through the trade and commerce engaged in by Ocean State and Dr. Barakat. See Second Amended Complaint, ¶¶5-8, 10-12, 14-15, 18-21, 23-24, 27-30. The complaint also sufficiently pleads an effect, "directly or indirectly" on the people of Massachusetts. Ocean State and Dr. Barakat did business with NECC, a Massachusetts corporation. See Second Amended Master Complaint, Docket #1719, ¶22; See also Docket#2390-1 (¶¶3, 7, 11, 12 of original complaint). Upon information and belief, Ocean State and Dr. Barakat bulk-ordered MPA from NECC without appropriate prescriptions in violation of Massachusetts law. Moreover, defendant Dr. Barakat is

---

[2] Section 9 applies to "[a]ny person, other than a person entitled to bring an action under section 11 of this chapter," M.G.L. Cch. 93A, §(1), while Section 11 applies to "[a]ny person who engages in the conduct of any trade or commerce" who suffers a loss from another person engaged in any trade or commerce. M.G.L. ch. 93A, §11.

a resident of Massachusetts.  See Exhibit C to Second Amended Complaint (93A Demand Letter sent to Dr. Barakat).

In addition, as stated above, under Massachusetts law[3], "consumer protection statutes may be applied to the entrepreneurial and business aspects of providing medical services." *Darviris v.Petros,* 442 Mass. 274, 279 (2004).  A claim for negligent delivery of medical care, without more, does not qualify as a violation of M.G.L. ch. 93A.  Id. at 278.  This court, therefore, must consider whether the 93A allegations against Ocean State and Dr. Barakat "concern any entrepreneurial or business aspect of [the] medical practice, to which 93A could apply, or whether they merely state a claim for the negligent delivery of medical care." Id. at 280.  To make such determination, the Court must consider "the underlying nature of the claim." Id.

The underlying nature of the claim in this case is that the defendants purchased, sold and administered to plaintiff Craig Simas a defective drug which resulted in serious harm to Mr. Simas.  The allegations of the Master Complaint and plaintiff's Second Amended Complaint reference the specific "business and entrepreneurial" actions of both Ocean State and Dr. Barakat.  Ocean State and Dr. Barakat purchased contaminated MPA from NECC and sold and distributed that contaminated MPA to Craig Simas.  See Second Amended Complaint, ¶¶ 14-18, 23-27.  The Second Amended Master Complaint, which plaintiffs in the instant case have incorporated by reference, alleges that Clinic Related Defendants knew or should have known that the use of NECC's drugs administered to plaintiff was not approved by the Food and Drug Administration ("FDA") and that NECC was not an FDA approved manufacturer.  Second Amended Master Complaint, ¶¶159, 162.  Defendants used these unregulated drugs in place of

---

[3] Defendants have conceded in their brief, at page 14, that Rhode Island's consumer protection statute contains the same basic language as the Massachusetts statute.

12

commercially available drug products manufactured by FDA-regulated manufacturers. Id. at ¶163. In addition, defendants purchased these drugs on a wholesale basis from NECC without individual patient prescriptions in violation of state law. Id. at ¶¶172-174. The Second Amended Master Complaint further alleges that, upon information and belief, "NECC's cheaper pricing was a major factor in the [defendants'] decisions to purchase drugs from NECC, as opposed to from other FDA-regulated manufacturers of approved drugs." Id. at ¶198.[4] Moreover, attached to plaintiff's Second Amended Complaint as Exhibit C is a copy of the Chapter 93A demand letter sent to Dr. Barakat. That letter specifically states that "[u]pon information and belief, you [Dr. Barakat] failed to provide a prescription for the methylprednisolone acetate specifically administered to Craig Simas and, rather, obtained the compounded methylprednisolone acetate in bulk from NECC." See *Nollet v. Justices of the Trial Court of the Commonwealth of Massachusetts,* 83 F.Supp.2d 204 (D.Mass. 2000), *aff'd,* 248 F.3d 1127 (1st Cir. 2000) (when ruling on a motion to dismiss, court may consider facts alleged in the complaint, documents attached as exhibits or incorporated into complaint, and matters of which judicial notice may be taken). Viewed in a light most favorable to the plaintiff, these allegations state a viable claim under chapter 93A.

   2. **Under Prior Rulings of this Court, Plaintiffs' Consumer Protection Claims Survive**

Prior rulings of this Court in the MDL case have allowed actions under other state consumer protection statutes to proceed. See Docket #1360 at 31-34, 57-59 (plaintiffs' claims under Tennessee Consumer Protection Act for recovery of monies used to purchase MPA

---

[4] Defendants disingenuously argue that "there is no allegation that OSPM engaged in such a pattern of bulk ordering by using fake patient names, therefore, the consumer protection claims should not survive." Defendants' Brief at p. 15. As defendants are aware, the Simases have incorporated all of the general allegations in the Second Amended Master Complaint concerning bulk-ordering into their individual complaint. Moreover, as argued below, the plaintiffs in Simas have not had the opportunity to do any discovery on the defendants' practices with regard to bulk-ordering and/or provision of individual prescriptions.

allowed to proceed; claims for personal injuries or wrongful death under statute dismissed; claims under New Jersey Consumer Fraud Act dismissed because of specific exclusion for health care providers); Docket #1642 at 7-8 (plaintiffs adequately pled cause of action under Illinois' Consumer Fraud Act); Docket #1643 at 8-9 (plaintiffs adequately pled cause of action against clinic for violation of Ohio Consumer Sales Practice Act even where statute provided exemption for transactions between physicians and their patients; clinic was not a physician).

Defendants specifically reference this Court's prior ruling regarding Box Hill Surgery Centers, LLC (hereinafter "Box Hill") see Docket #2225, and attempt to distinguish it from the instant case. As defendants correctly point out, this Court allowed the plaintiffs' claims under M.G.L. ch. 93A to proceed. See Docket #2225 at 6-7.[5] The Court specifically referenced allegations of "bulk ordering MPA from NECC under false names in violation of Massachusetts law, " id. at 6, as one basis for allowing the 93A claims to proceed. Defendants attempt to argue that no such allegations of bulk ordering and falsifying prescriptions have been specifically made against Ocean State and Dr. Barakat, and, therefore, the Box Hill rationale should not apply to allow the Simas' 93A claims to proceed. The Second Amended Complaint in this case, however, incorporates by reference all the allegations in the Second Amended Master Complaint against clinic defendants regarding such bulk ordering and failure to obtain prescriptions. See allegations of Second Amended Master Complaint, ¶¶ 151-205. Also, as discussed more fully below, the Simases have had no opportunity to obtain any discovery on the specific practices of Ocean State and Dr. Barakat regarding bulk ordering and/or provision of prescriptions to NECC. Moreover, as pointed out above, a 93A claim against a physician or clinic may proceed if it involved an "entrepreneurial and business" aspect of the practice. Plaintiffs' allegations of the

---

[5] The claims asserted under Maryland's Consumer Protection Act were dismissed because Maryland case law specifically exempts treating physicians from claims under that statute. There is no such case law in Massachusetts.

14

sale of a contaminated drug by the physician/clinic directly to the patient speak to such "entrepreneurial and business" aspects of the practice such that the 93A claims survive the defendants' motion to dismiss.[6]

### C. Plaintiffs Should be Afforded the Opportunity to Engage in Relevant Discovery

As demonstrated in the Affidavit of Timothy P. Wickstrom filed in support of this Opposition, plaintiffs have served discovery on Ocean State including Requests for Admissions, Interrogatories and Requests for Production of Documents. See Affidavit of Timothy P Wickstrom, Esq., ¶2. This discovery specifically inquires about the existence of any prescription for the MPA provided to Craig Simas. Id. at ¶3. The discovery propounded on Ocean State also seeks to determine the process by which Ocean State made its decision to purchase MPA from NECC. Id. at ¶4. Such discovery would allow plaintiffs to uncover facts regarding the amount of MPA purchased by Ocean State, the dates on which such orders were placed, and the dates on which such orders were received. Plaintiffs have also sought information regarding "the process by which Ocean [State] made the decision to engage in business with NECC." Id. In addition, the discovery seeks copies of purchase orders, invoices and shipping documents for the MPA purchased from NECC by Ocean State. Id. These discovery requests speak directly to the issue of possible bulk-ordering and the alleged failure of Ocean State to provide a prescription for the MPA, both of which violate Massachusetts and federal law. To the extent that the plaintiffs' allegations are allegedly insufficient to state a claim for breach of warranty and violation of consumer protection statutes, which plaintiffs maintain is incorrect, this Court should reserve judgment on the instant motion until plaintiffs can proceed with discovery to ascertain the

---

[6] It should also be noted that a breach of warranty is a violation of chapter 93A under Massachusetts law. See Maillett v. ATF Davidson Co., Inc., 407 Mass. 185, 193 (1990) ("a breach of warranty constitutes a violation of G.L. ch. 93A, §2"). Therefore, to the extent that the Simas complaint makes a viable claim for breach of warranty, it also demonstrates a violation of chapter 93A.

15

relevant underlying facts which would allow them to fully and accurately plead their case against the defendants.

IV. **CONCLUSION**

For the reasons stated above, the Court should deny the motion of defendants Abdul Barakat, M.D. and Ocean State Pain Management, P.C. to dismiss the breach of warranty and consumer protection claims of the plaintiffs or, in the alternative, reserve judgment until the plaintiffs have had the opportunity to engage in discovery.

**Respectfully Submitted,
CRAIG S. SIMAS and JOAN SIMAS**

**By Their Attorneys,**

/s/ Timothy P. Wickstrom

Timothy P. Wickstrom BBO 541953
Deborah Gresco-Blackburn BBO 554782
Wickstrom Morse, LLP
60 Church Street
Whitinsville, MA 01588
Email: Timothy@wickstrommorse.com
Email: Deb@wickstrommorse.com
Tel. (508) 234-4551
Fax. (508) 234-8811

Date: January 15, 2016

**Certificate of Service**

This is to certify that on the 15th day of January, 2016 a copy of the foregoing was filed electronically. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Timothy P. Wickstrom

Timothy P. Wickstrom