UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION ) ) ) ) ) ) ) THIS DOCUMENT RELATES TO: ) ) All Cases Against the Saint Thomas Entities ) ) ) ) ) | MDL No. 13-2419 Dkt. No 1:13-md-2419 (RWZ) |

### SAINT THOMAS ENTITIES' MOTION FOR LEAVE TO FILE GLOBAL MOTION FOR PARTIAL SUMMARY JUDGMENT ON PUTATIVE CLAIMS FOR ACTUAL AGENCY AND DIRECT LIABILITY AND RESERVATION OF RIGHTS AS TO INDIVIDUAL MOTIONS FOR SUMMARY JUDGMENT

Pursuant to the Court's July 9, 2015, Order (Docket #2075) ("July 9 Order"), the Saint Thomas Entities[1] file this Motion for Leave to File a *Global Motion for Partial Summary Judgment on Putative Claims for Actual Agency and Direct Liability* as to the MDL Plaintiffs bringing claims against them ("Tennessee Plaintiffs").

1. The July 9 Order requires a movant to file a motion for leave "setting forth good cause for why a summary judgment motion should be allowed." July 9 Order at 5.[2] The Saint Thomas Entities have good cause for requesting that the Court grant them leave to file a global motion for partial summary judgment focused on two distinct but significant theories of liability that, if granted, will eliminate both evidence and argument that could prove confusing to the jury and streamline the issues for the bellwether trials.

---

[1] Saint Thomas West Hospital, formerly known as St. Thomas Hospital ("Hospital"), Saint Thomas Network ("Network"), and Saint Thomas Health ("Health") (collectively, the "Saint Thomas Entities").

[2] Although that order has been subsequently modified, it is not clear whether the requirement for leave was affected by the modification, so this motion is filed in an abundance of caution.

2.     It is undisputed that the Saint Thomas Entities neither procured nor injected any of the Tennessee Plaintiffs with MPA compounded by NECC.  The Tennessee Plaintiffs' liability theories against these Defendants are premised on imputing the liability of Saint Thomas Outpatient Neurosurgical Center ("STOPNC") and the other STOPNC Defendants[3] to the Saint Thomas Entities.  The Tennessee Plaintiffs' alter ego theory was dismissed on the pleadings, *see* Memorandum of Decision (Docket #1360) at 50, and the remaining vicarious liability theories are based on allegations that STOPNC and its physicians and nurses were the actual or apparent agents of one or more of the Saint Thomas Entities.

3.     After taking multiple depositions of both corporate representatives and fact witnesses for the Saint Thomas Entities and the STOPNC Defendants, the Tennessee Plaintiffs have no evidence to support their assertion that the Saint Thomas Entities actually directed, exercised control over, or otherwise authorized STOPNC or the other STOPNC Defendants to act as their agent with respect to any of the actions giving rise to the injuries claimed by the Tennessee Plaintiffs.

4.     Specifically, the undisputed record establishes the following undisputed, material facts:

> a.     Neither Health nor Hospital owned any interest in, or had any contractual or other right to direct or control the operations of, STOPNC (including no authority to appoint board members to STOPNC).
>
> b.     Under Tennessee law, Network's mere status as a 50% owner or member of STOPNC—a Tennessee limited liability corporation—does not render it liable for the acts of STOPNC in either tort or contract.  *See* TENN. CODE ANN. § 48-217-101(a)(1).
>
> c.     STOPNC was managed by Howell Allen pursuant to a written management agreement, and Howell Allen employees fulfilled the roles of

        Medical Director and Facilities Director charged with the day-to-day operations of STOPNC and reporting directly to Howell Allen executives.

        d.     There is absolutely nothing in the record to suggest that the Saint Thomas Entities dictated policies for, much less overrode the Howell Allen Clinic in decisions affecting, the administration or management of STOPNC.

        e.     In particular, the record conclusively establishes that Saint Thomas Entities had no control over or involvement in the procurement of medicines for STOPNC.

        f.     STOPNC was not subject to any of the policies or requirements of Health or Hospital regarding the procurement of medicines.

        g.     STOPNC made its own decisions about medicines and never consulted with any of the Saint Thomas Entities about the advisability of purchasing from a compounding pharmacy.

        h.     None of the Saint Thomas Entities supplied medicines or pharmaceutical procurement services to STOPNC, and none of their policies applied to STOPNC.

        i.     There is no evidence that any employee of any of the Saint Thomas Entities knew that STOPNC was purchasing compounded products from NECC prior to the outbreak.

5.     Further, and to the extent that any vicarious liability is sought to be derived from the actions or omissions of Dr. Culclasure, it is precluded under the statutory prohibition against the corporate practice of medicine. *See* TENN. CODE ANN. § 68–11–205.

6.     Accordingly, the Tennessee Plaintiffs' vicarious liability claims against the Saint Thomas Entities based on actual agency fail as a matter of law, and summary judgment should be granted.

7.     Some of the Tennessee Plaintiffs have also asserted a putative "direct liability" theory for holding the Saint Thomas Entities liable for their injuries. That theory fails on the legal premise that the Saint Thomas Entities owed any duty to the Tennessee Plaintiffs with respect to the purchasing or dispensing of methylprednisolone acetate ("MPA") by STOPNC or

otherwise had responsibility as to the actions of the STOPNC Defendants that form the basis of their claims.

8. Further, these claims fail for reasons similar to the actual agency claims—because there is no evidence that the Saint Thomas Entities had any responsibility for or involvement with the business operations of, or the procurement of medicines by, STOPNC. There is therefore no basis for holding the Saint Thomas Entities liable to the Tennessee Plaintiffs under a "direct liability" theory. Instead, this theory is an improper attempt to litigate the alter-ego claims that were dismissed on the pleadings.

9. Eliminating these unmeritorious claims on the basis of the undisputed record will simplify the issues for trial and avoid needless risk of error in introducing to the jury irrelevant and potentially confusing evidence of duties and other putative obligations that are not legally cognizable or factually viable.

10. The Court's July 9 Order does not include a deadline for motions for summary judgment as to case-specific issues, and as the Court is aware, that discovery is ongoing. Therefore, at a later date, the Saint Thomas Entities intend to seek summary judgment as to the remaining ostensible and apparent agency claims, but these claims in part could turn on the particular facts, circumstances, and perceptions of the individual Plaintiffs. Therefore, a global motion without that discovery is premature. Accordingly, the Saint Thomas Entities reserve their rights to seek summary judgment on apparent and ostensible agency theories of vicarious liability against them in the context of the individual cases. To the extent it is necessary, the Saint Thomas Entities request that the Court set a new deadline for motions for summary judgment for individual cases, or grant leave to the Saint Thomas Entities to file such motions at the close of case-specific discovery.

For these reasons, the Saint Thomas Entities request that the Court: (i) grant this motion for leave to file a global summary judgment on Plaintiffs' actual agency and direct liability claims brought by all of the Tennessee Plaintiffs; (ii) allow the filing of the motion for summary judgment, attached as Exhibit A, the statement of material, undisputed facts, attached as Exhibit B, and the memorandum of authorities, attached as Exhibit C;[4] (iii) set a date for filing case-specific motions for summary judgment or grant leave for the Saint Thomas Entities to do so at the close of discovery; and (iv) grant such other and further relief to which the Saint Thomas Entities are entitled.

        SAINT THOMAS WEST HOSPITAL, FORMERLY KNOWN AS ST. THOMAS HOSPITAL, SAINT THOMAS NETWORK, AND SAINT THOMAS HEALTH

        By their attorneys,
/s/ Sarah P. Kelly
Sarah P. Kelly (BBO #664267)
skelly@nutter.com
NUTTER McCLENNEN & FISH LLP
Seaport West
155 Seaport Boulevard
Boston, Massachusetts  02210
(617) 439-2000
(617) 310-9461 (FAX)

Dated January 15, 2016

---

[4] The Saint Thomas Entities are not including the summary judgment proof in this filing, but will provide to the Court upon its request or in conjunction with filing the motion, once leave is granted.

OF COUNSEL:

Yvonne K. Puig*
Texas State Bar No. 16385400
yvonne.puig@nortonrosefulbright.com
Adam T. Schramek*
Texas State Bar No. 24033045
adam.schramek@nortonrosefulbright.com
Eric J. Hoffman*
Texas State Bar No. 24074427
eric.hoffman@nortonrosefulbright.com

NORTON ROSE FULBRIGHT US LLP
98 San Jacinto Blvd. Suite 1100
Austin, Texas 78701
(512) 536-2450
(512) 536-4598 (FAX)

Marcy Hogan Greer*
State Bar No. 08417650
mgreer@adjtlaw.com

ALEXANDER DUBOSE JEFFERSON &
TOWNSEND LLP
515 Congress Avenue, Suite 2350
Austin, Texas 78701-3562
(512) 482-9300
(512) 482-9303 (FAX)

*Appearing *Pro Hac Vice*

## CERTIFICATE OF SERVICE

This certifies that a true and accurate copy of the foregoing was served on all parties of record by virtue of the Court's electronic filing system this 15th day of January, 2016.

                                                                    */s/ Sarah P. Kelly*
                                                                 SARAH P. KELLY

3024229.1