## In the Matter Of:

NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION

## VIDEOTAPED DEPOSITION OF DEBRA SCHAMBERG, R.N.

*February 04, 2015*



100 Mayfair Royal
181 Fourteenth Street
Atlanta, GA 30309
404.847.0999

Case 1:13-md-02419-RWZ   Document 2609-8   Filed 01/25/16   Page 2 of 6

NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION
VIDEOTAPED DEPOSITION OF DEBRA SCHAMBERG, R.N. on 02/04/2015                Page 215

```
 1   compensation?
 2        A.     The same bonus as all other employees
 3   receive.
 4        Q.     And what is your understanding of what
 5   factors determine the size of the bonus?
 6        A.     That is determined by the physicians.
 7        Q.     The fact that St. Thomas Neurosurgical had
 8   a written formulary, is that a -- is that a Joint
 9   Commission requirement?
10        A.     Yes.
11        Q.     Do you know why the Joint Commission
12   requires a formulary?
13        A.     That -- why do they require anything that
14   they say?
15        Q.     And who is in charge of making sure that
16   St. Thomas Neurosurgical met Joint Commission
17   requirements?
18        A.     That's my responsibility.
19        Q.     Did you ever talk with a pharmacist before
20   sending the lists of names to NECC?
21               MR. GIDEON:  I can tell you now that
22          as I instructed her earlier, any discussion
23          you had as part of a quality improvement
24          committee is privileged under Tennessee
25          law.  You're instructed not to share any of
```



Case 1:13-md-02419-RWZ   Document 2609-8   Filed 01/25/16   Page 3 of 6

NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION
VIDEOTAPED DEPOSITION OF DEBRA SCHAMBERG, R.N. on 02/04/2015
Page 216

```
 1        that information if in answering the
 2        question you would do so.
 3     Q.    (By Mr. Nolan)  And so in light of that
 4  objection, will you answer the question?
 5     A.    No.
 6     Q.    When was the first time that you
 7  participated in a Joint Commission survey?
 8     A.    Since I have been in a hospital there's
 9  been Joint Commission.
10     Q.    Well, since -- let me limit the question.
11  Since you've been working at St. Thomas Neurosurgical.
12     A.    There again, since -- I think we had our
13  first one in 2001 or so.  It's...
14     Q.    And so how many Joint Commission surveys
15  have you participated in?
16     A.    In 2009 was the first one I led.
17     Q.    Okay.  And then when was the next one?
18     A.    2012.
19     Q.    And do you know specifically what the Joint
20  Commission requirements are for a written formulary?
21     A.    Not off the top of my head.
22     Q.    And do you keep a copy of the rules and
23  requirements of the Joint Commission for formularies?
24     A.    I have a Joint Commission standard book
25  with their requirement.  I do have a copy of that.
```



100 Mayfair Royal
181 Fourteenth Street
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

Case 1:13-md-02419-RWZ   Document 2609-8   Filed 01/25/16   Page 4 of 6

NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION
VIDEOTAPED DEPOSITION OF DEBRA SCHAMBERG, R.N. on 02/04/2015                Page 277

```
 1    but I don't remember the content of it.
 2         Q.    Do you remember having those conversations
 3    with Dr. Culclasure in 2010, let's say, six months
 4    before you started doing business with NECC?
 5         A.    I don't recall.
 6         Q.    Do you recall for how long prior to doing
 7    business with NECC that Dr. Culclasure had expressed
 8    to you concerns about using a steroid with
 9    preservative in it for ESIs?
10         A.    No.
11         Q.    Now, Mr. Volan asked you -- asked you
12    questions today about everybody that you talked to in
13    connection with making the decision to buy drugs from
14    NECC.  Do you remember that?
15         A.    Yes.
16         Q.    And you never mentioned in those -- you
17    never mentioned in response to those questions that
18    you had any communications with your pharmacy
19    consultant, Mr. O'Neil, about the decision to buy
20    drugs from NECC; correct?
21         A.    I did not respond to that.
22         Q.    Right.  You didn't talk to Mr. O'Neil about
23    the decision to buy drugs from NECC, did you?
24               MR. GIDEON:  If it -- if -- if you
25          had any discussions with Mr. O'Neil in
```



DISCOVERY LITIGATION SERVICES
Court Reporting • Videography • Trial Presentations
Nationwide Coverage

100 Mayfair Royal
181 Fourteenth Street
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

Case 1:13-md-02419-RWZ   Document 2609-8   Filed 01/25/16   Page 5 of 6

NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION
VIDEOTAPED DEPOSITION OF DEBRA SCHAMBERG, R.N. on 02/04/2015                Page 278

```
 1        connection with a quality improvement
 2        committee, then that is privileged in
 3        Tennessee.
 4             THE WITNESS:  Okay.
 5             MR. GIDEON:  And you can't answer it.
 6        If it wasn't in connection with quality
 7        improvement, then you can; okay?
 8             THE WITNESS:  Okay.
 9        Q.   (By Mr. Rehnquist)  Did you have any
10   conversations with Mr. O'Neil about the decision to
11   buy drugs from NECC?
12        A.   It's -- that's quality.
13        Q.   So is the -- is the answer that you did
14   have communications with him?
15             MR. GIDEON:  She's not going to
16        answer the question.
17             THE WITNESS:  The answer is I'm not
18        going to answer.
19             MR. REHNQUIST:  She's not going to
20        tell me whether or not she had
21        communications with Mr. O'Neil on the
22        subject?
23             MR. GIDEON:  Right.
24        Q.   (By Mr. Rehnquist)  And you're not going to
25   tell me whether or not you had communications with
```


DISCOVERY LITIGATION SERVICES
Court Reporting • Videography • Trial Presentations
Nationwide Coverage

100 Mayfair Royal
181 Fourteenth Street
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

Case 1:13-md-02419-RWZ   Document 2609-8   Filed 01/25/16   Page 6 of 6

NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION
VIDEOTAPED DEPOSITION OF DEBRA SCHAMBERG, R.N. on 02/04/2015                    Page 279

```
 1   Mr. O'Neil on the subject of NEC's patient name
 2   request; correct?
 3              MR. GIDEON:    Same.
 4        Q.    (By Mr. Rehnquist)  You're not going to
 5   tell me whether or not?
 6        A.    No, sir.
 7        Q.    And that's on the basis of this privilege
 8   that your lawyer has advised you about?
 9        A.    That is correct.
10        Q.    Now, you don't have a pharmacist in-house
11   do you --
12        A.    No, sir.
13        Q.    -- at STOPNC?
14              And you're not a pharmacist?
15        A.    No, I'm not.
16        Q.    And that's why you have a pharmacy
17   consultant; correct?
18        A.    That is correct.
19        Q.    Mr. O'Neil is STOPNC's source of pharmacy
20   expertise; correct?
21        A.    Yes.
22        Q.    And you filed an affidavit in court under
23   oath about that relationship with Mr. O'Neil, didn't
24   you?
25        A.    I don't remember.  I --
```

