UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC., PROCUCTS LIABILITY LITIGATION | )<br>)<br>)<br>) MDL No.: 2419<br>) Master Docket No.: 1:13-md-2419-FDS<br>) |
| THIS DOCUMENT RELATES TO:<br><br>    All Actions Against St. Thomas Neurosurgical | )<br>)<br>) |

**ADDENDUM ON RETROACTIVITY OF THE QICP**

Given the information obtained during the deposition of Michael O'Neal, it does not appear necessary for the Court, in ruling on the PSC's Motion to Compel Compliance With Subpoena to Michael O'Neal, to make a determination as to whether Tenn. Code Ann. § 68-11-272 applies retroactively. To the extent the Court wishes to wade into these waters, the PSC provides this addendum for the Court addressing why Tenn. Code Ann. § 68-11-272 should not apply retroactively.

The PSC has already cited numerous cases from other jurisdictions that, operating under the same statutory construction and retroactivity principles as Tennessee law, have held that an amendment to a peer review privilege statute does not operate retroactively.[1]

Mr. O'Neal does not contend that the QICP statute operates retroactively.[2] By contrast, in a footnote to its original brief, St. Thomas Neurosurgical asserts that the QICP law is a "remedial" statute because it was passed "specifically to remedy the Tennessee Supreme Court's

---

[1] *See* Dkt No. 2438 at pp. 12-13, and p. 13 n. 36 (describing reasoning and holding in *Davison v. St. Paul Fire & Marine Ins. Co.*, 248 N.W.2d 433 (Wis. 1997), and collecting cases).
[2] Dkt. No. 2478, at p 2.

1

holding in *Lee Med*," and that it therefore should operate retroactively.[3] This position is simply unfounded.

In Tennessee, statutes are presumed to operate prospectively unless the legislature clearly indicates otherwise.[4] Thus, statutes apply prospectively, unless there is "the most clear and unequivocal expression to the contrary," and "in every case of doubt, the doubt must be resolved against the retrospective effect."[5] The Tennessee Supreme Court has also held that, although statutory privileges should be fairly construed according to their plain meaning, they "should not be broadly construed" because they "are in derogation of the search for truth" and the "right to every man's evidence."[6] Furthermore, the Tennessee Supreme Court has held that, in close cases, the "absence of express language providing for retroactive application supports the conclusion that the legislature did not expressly intend such as application," because "when retroactive application is intended, the General Assembly includes specific, clear language expressing its intent."[7]

In its December 22, 2015 Order, the Court observed that statutes that are "remedial" or "procedural" apply retroactively to a cause of action arising before the act went into law.[8] As the Tennessee Supreme Court outlined in *Nutt v. Champion Int'l Corp.*:

> A procedural or remedial statute is one that does not affect the vested rights or liabilities of the parties. A procedural statute is one that address the mode or proceeding by which a legal right is enforced. Remedial statutes are defined as

---

[3] Dkt. No. 2492, at n.2. With leave of Court, St. Thomas Neurosurgical also filed a supplemental brief that (1) attached authority concerning who holds the privilege and (2) selectively quoted the legislative history behind the QICP statute's enactment. (Docket No. 2530.)
[4] *Nutt v. Champion Int'l Corp.*, 980 S.W.2d 365, 368 (Tenn. 1998).
[5] *Henderson v. Ford*, 488 S.W.2d 720, 721 (Tenn. 1972).
[6] *Lee Med, Inc. v. Beecher*, 312 S.W.3d 515, 525-26 (Tenn. 2010) (internal quote omitted).
[7] *Van Tran v. State*, 66 S.W.3d 790, 798 (Tenn. 2001).
[8] *Nutt*, 980 S.W.2d at 368.

2

> 'legislation providing means or method whereby causes of action may be effectuated, wrongs redressed, and relief obtained.'"[9]

In *In re D.A.H.*, which the Court referenced in its December 22, 2015 Order, the Tennessee Supreme Court also quoted Black's Law Dictionary for the proposition that a "remedial law" includes legislation "passed to correct or modify an existing law."[10] Although the court in *In re D.A.H.* did not reach the issue of whether the statute was procedural or remedial – because the court held that the statute affected vested rights – the court did draw a distinction between an "amendment" that "is a remedial statute, **rather than a change in the law** . . . ."[11]

As the Court has already recognized, the QICP statute contains no reference to retroactivity, nor is retroactivity necessarily implied by the statute's terms. Furthermore, none of the potential exceptions in favor of retroactivity apply, either because the QICP statute is not remedial or procedural, or because it affects vested rights.

1. The QICP Statute is Not Remedial

The QICP statute law is not remedial for purposes of a retroactivity analysis. In enacting the QICP, the Tennessee legislature did not "correct or modify an existing law" (namely, the PRP statute) – instead, it **repealed** that PRP statute in favor of **an entirely new statute**, the QICP statute, which contains different terms than the repealed PRP statute. That policy change constitutes a "change in the law" as referenced in *In re D.A.H.*, not a remedial "amendment" to an "existing statute."[12] Whether that policy change was made in response to a court decision is beside the point.[13]

---

[9] *Id.*
[10] *In Re D.A.H.*, 142 S.W2d 267, 273 (Tenn. 2004).
[11] *Id.* at 274 (emphasis added).
[12] *Id.*
[13] Although the PSC has not located any Tennessee authority on this issue, the Court should find the reasoning of the Illinois Court of Appeals in *Matview v. Johnson* to be persuasive. 444

3

2. The QICP Statute is Not Procedural[14]

The QICP statute is not procedural, because it affects the liabilities of the parties involved. The QICP statute contains a civil liability immunity provision, which immunizes a healthcare organization and any person providing information to a QIC from liability arising from the provision of information to a QIC or the actions of a QIC, except in the absence of good faith, which is presumed.[15] Under Tennessee precedent, a law that would substantially affect the liability of a party, such as a law providing a defense to a claim, cannot properly be classified as remedial or procedural in nature.[16]

3. The QICP Statute Cannot be Applied Retroactively Because it Affected Vested Rights

The QICP statute cannot be characterized as procedural or remedial (rather than substantive), and otherwise cannot be applied retroactively, because it affects the plaintiffs'

---

N.E.2d 606 (Ill. Ct. App. 1982). There, under an earlier version of Illinois peer review privilege statute, the Illinois Court of Appeals held that certain records requested by the plaintiff were not privileged under the terms of the existing statute and that they could be admitted at trial. Thereafter, apparently in response to that decision, the Illinois legislature twice amended the peer review statute in a manner that contravened the court's holdings. On a subsequent appeal, the appellate court articulated essentially the same principles that apply in Tennessee, including the principle that retroactive application of a law is proper only when the amendment "does not change the law but merely serves to clarify a previously ambiguous statute." Because the amendments at issue "were enacted to change the law and merely to clarify an existing ambiguity," and because the appellate court's previous decision was based on the statutory language and had found no ambiguity in the statute, the court held that the statute should apply only prospectively. The circumstances here are even stronger against retroactivity presented in *Matview*, because the Tennessee legislature repealed the existing privilege statute in favor of a new statute.

[14] Neither Mr. O'Neal nor St. Thomas Neurosurgical have argued that the QICP statute constitutes a "procedural" law for purposes of a retroactivity analysis, implicitly conceding that the statute should be so characterized. In an abundance of caution, the PSC has included a discussion of this legal issue.

[15] Tenn. Code Ann. § 68-11-272(d), (f), and (g). As originally passed, the QICP statute contained a civil immunity provision with slightly different terms. The Tennessee legislature amended the immunity provision in 2014. *See* 2013 Tenn. SB 2052, 2014 Tenn. Pub. Ch. 651 (effective April 8, 2014).

[16] *State v. Crank*, 468 S.W.3d 16, 31 (Tenn. 2015).

4

vested right to access evidence supporting their claims and/or the privilege rights of Mr. Neal and St. Thomas Neurosurgical.

In *Lee Med*, the Tennessee Supreme Court, quoting hornbook law, stated that a civil plaintiff typically has a "**right** to every man's evidence" in prosecuting a civil claim, and indicated that a medical review privilege (there, the PRP) interferes with that right.[17]  Thus, retroactive application of the privilege here would interfere with the plaintiffs' right to access through civil discovery any materials that were not privileged as of April 12, 2011.  Because the Tennessee Supreme Court has stated that a statute cannot be given retroactive effect where it impacts the vested rights of parties (regardless of how the statute might otherwise be characterized), the Court therefore must find that QICP law applies only prospectively.[18]

By the same token, courts have characterized an evidentiary privilege as a substantive right, and have therefore held that statutory amendments affecting that right should not apply retroactively.[19]  Indeed, if the Tennessee legislature here had passed a statute in April 2011 that

---

[17] *Lee Med.*, 312 S.W.3d at 525-26.

[18] Although no Tennessee appellate court has ruled on this specific issue, the Court should draw guidance from *Davison v. St. Paul Fire & Marine Ins. Co.*, in which the Wisconsin Supreme Court, applying similar principles regarding the retroactive application of statutes, held that an amendment to Wisconsin's medical peer review privilege statute would not apply retroactively. 248 N.W.2d 433, 200 (Wis. 1977)).  There, the Court observed that, prior to the amendment, "the right to discovery" had become vested in the plaintiffs as a substantive right, and that, because the amendment affected that substantive right, it should not apply retroactively. *Id.*  The Ohio Court of Appeals reached a similar conclusion in *Tenan v. Huston*, in which it applied the Ohio principle (analogous to Tennessee law) that "the authorities agree that, in general terms, substantive law is that which creates rights, duties, and obligations, while procedural or remedial law prescribes methods of enforcement of rights or obtaining redress."  845 N.E.2d 545, 555 (2006).  There, the court stated that, "prior to the amendment to the peer review statutes in Ohio, plaintiffs had a limited **right of access** to documents in a hospital's peer review records," but that, "[b]y amending the statute, the Ohio legislature **took away that right**." *Id.* (emphases added).  Because the legislature action "removed a statutory right, the revisions were substantive in nature" and therefore should not apply retroactively. *Id.* 555-56.

[19] *See, e.g.*, *Venosh v. Henzes*, 2013 Pa. Dist. & Cnty. Dec. LEXIS 390, at *14 n. 3 (finding that change to statute concerning peer review privilege "affects the parties' substantive rights).

5

**removed** privilege over peer review committee proceedings, one would expect Mr. O'Neal and St. Thomas Neurosurgical to claim that their rights and reasonable expectations of privilege over pre-April 2011 communications would be affected. Thus, in lieu of or addition to finding that the QICP statute affected the plaintiffs' right to access information that was not privileged as of April 2011, the Court should also find that Mr. O'Neal or St. Thomas Neurosurgical's evidentiary privileges are substantive in nature, that the repeal of the PRP and enactment constituted a change to that substantive right, and that the QICP therefore should not operate retroactively.

In sum, the Court here should find that the QICP statute affects vested rights (either the right of plaintiffs, the rights Mr. O'Neal and St. Thomas Neurosurgical, or both) and therefore should not operate retroactively.

### 4. The Legislative History Does Not Support The Retroactivity Of the QICP Statute

As to the legislative history, the PSC encourages the Court to listen to the full audio referenced in St. Thomas Neurosurgical's supplemental brief. The legislative history contains no references to retroactivity, and the legislators generally speak in terms of the law's anticipated effect. At any rate, the legislative history as it best ambiguous, and the Tennessee Supreme Court in *Van Tran v. State* indicated that, "notwithstanding the presence of "ambiguous language . . . in the legislative history," the default presumption against retroactivity prevails.[20]

## CONCLUSION

In sum, there is no reason for the Court to depart from Tennessee's strong presumption that statutes operate prospectively absent a clear indication otherwise.

---

[20] 66 S.W.3d at 798.