## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE:  NEW ENGLAND | ) | |
| COMPOUNDING PHARMACY, INC. | ) | |
| PRODUCTS LIABILITY LITIGATION | ) | |
| | ) | MDL No. 1:13-md-2419 |
| | ) | |
| This Document Relates to: | ) | Judge Rya Zobel |
| | ) | |
| All Actions Against The Saint Thomas | ) | |
| Entities and Saint Thomas Outpatient | ) | |
| Neurosurgical Center, LLC | ) | |

**PLAINTIFFS' STEERING COMMITTEE'S RESPONSE TO SAINT THOMAS
ENTITIES' MOTION FOR LEAVE TO FILE GLOBAL MOTION FOR PARTIAL
SUMMARY JUDGMENT ON PUTATIVE CLAIMS FOR ACTUAL AGENCY AND
DIRECT LIABILITY AND RESERVATION OF RIGHTS AS TO INDIVIDUAL
MOTIONS FOR SUMMARY JUDGMENT [DKT NO. 2594]**

The Plaintiffs' Steering Committee ("PSC") respectfully opposes the Saint Thomas
Entities' Motion for Leave to File Global Motion for Partial Summary Judgment (Dkt. No.
2594).  This Court should deny that motion because facts developed through discovery establish
that Saint Thomas Outpatient Neurosurgical Center ("Saint Thomas Neurosurgical") is
inextricably intertwined with the other Saint Thomas Entities.  All of those entities are part of an
integrated health system marketed to the Nashville community under a unitary Saint Thomas
healthcare brand.

According to the CEO of Saint Thomas Health, Michael Schatzlein, M.D., Saint Thomas
Neurosurgical is part of the Saint Thomas Health system.[1]  Saint Thomas Health authorized
Saint Thomas Neurosurgical to use the "Saint Thomas" name[2], and Saint Thomas Neurosurgical
is located on the Saint Thomas Hospital campus.  CEO Schatzlein testifies that half of Saint
Thomas Neurosurgical is owned by Saint Thomas Network, a "pass through entity" with zero

---

[1] Deposition of Michael Schatzlein, M.D., p. 21.
[2] Schatzlein depo., p. 38.

employees.[3]  Saint Thomas Network is in turn owned by Saint Thomas Health, the same entity that owns Saint Thomas Hospital.[4]  Internal emails establish that the defendants completely disregarded the corporate formalities associated with Saint Thomas Neurosurgical's purported status as an LLC, instead referring to Saint Thomas Neurosurgical as a "partnership" between Saint Thomas Hospital and Howell Allen Clinic.[5]

The Saint Thomas Entities' proposed motion for partial summary judgment wrongfully attempts to separate Saint Thomas Neurosurgical from the integrated Saint Thomas Health system.  Simply put, that motion is contrary to numerous sworn facts and would be a futile waste of this Court's time and resources.  For example, Plaintiffs have discovered the following facts:

- Saint Thomas Health does not allow other businesses in the Nashville community to use the Saint Thomas name without its permission. Restricting the use of the Saint Thomas name preserves the impression that Saint Thomas has "a coordinated integrated system of care." (Schatzlein Dep. 31:12-21.)

- The CEO of Saint Thomas Health (Schatzlein) testifies that "the name Saint Thomas is intended to convey the idea that patients who go to Saint Thomas will receive safe, high quality care."  (Schatzlein Dep. 27:10-14.)

- CEO Schatzlein testifies that the Saint Thomas Health system is comprised of several hospitals, physician practices, rebab facilities and joint ventures, including Saint Thomas Neurosurgical.  (Schatzlein Dep. p. 21.)

- Saint Thomas Neurosurgical is located on the Saint Thomas Hospital campus.  (Schatzlein Dep. 38:2-4; Rudolph Dep. Ex. 217 – campus map.)

- The "Saint Thomas" name was on the door of Saint Thomas Neurosurgical at the time that Saint Thomas Neurosurgical administered contaminated MPA to patients.  (Schatzlein Dep. 49:9-11.; Rudolph Dep. 119:22-120:15; Rudolph Dep. Ex. 219.)

- Saint Thomas Neurosurgical's receptionist, Sheri DeZwaan, wore a name tag bearing the name "Saint Thomas Hospital" at the top. (Schamberg Dep. 46:13 – 47:4.)

---

[3] Schatzlein Dep., pp. 32 -33, 89.
[4] Schatzlein Dep., p. 36.
[5] Exhibit 160 to deposition of Michael Schatzlein, M.D.

- The defendants disregarded the corporate formalities associated with Saint Thomas Neurosurgical's purported status as an LLC, instead referring to that entity as a "partnership." In fact, Dr. Gregory Lanford, President of Howell Allen Clinic and Chairman of Saint Thomas Neurosurgical's governing board, described Saint Thomas Neurosurgical as follows in an email to the hospital's CEO: "*Our group has never considered this Joint Venture to be anything other than a partnership between Saint Thomas Hospital and Howell Allen Clinic.*" (Schatzlein Dep. Ex. 160)(emphasis added).

- Saint Thomas Hospital's CEO and its Chief Medical Officer served on Saint Thomas Neurosurgical's governing board at the time of the fungal meningitis outbreak. (Butler Dep. 25:23-26:1.)

- According to a Saint Thomas Neurosurgical board member, Saint Thomas Hospital maintained an equal right, along with Howell Allen, to control Saint Thomas Neurosurgical's conduct. (Butler Dep. 28:8-24.)

- As soon as Saint Thomas Health learned about the burgeoning fungal meningitis outbreak, Saint Thomas Health, through its marketing department, assumed control of Saint Thomas Neurosurgical's communications with patients. In fact, Saint Thomas Health's Chief Marketing Officer prepared a written script that Saint Thomas Neurosurgical used during telephone calls to patients inquiring about possible meningitis symptoms. (Climer Dep. 25:7-24.)

- When patients received epidural steroid injections at Saint Thomas Neurosurgical, they believed that they were receiving those injections at Saint Thomas Hospital. (McElwee Dep. pp. 41 – 42, 45 – 46, 109 – 110.)

- According to Saint Thomas Health's Chief Marketing Officer, "most people don't distinguish between the center [Saint Thomas Neurosurgical] and the hospital [Saint Thomas Hospital]." (STE_MDL_006524.)

In addition to the facts outlined above, the PSC disclosed a highly qualified expert prepared to testify that all defendants in the Saint Thomas Health system, including Saint Thomas Neurosurgical, Saint Thomas Health, Saint Thomas Hospital and Saint Thomas Network, breached their duties to the Tennessee plaintiffs. James L. Gray, III, PharmD is the Executive Director of Pharmacy at Barnes-Jewish Hospital in St. Louis, Missouri. Dr. Gray is also a former President of the Missouri Board of Pharmacy. He is extremely familiar with the recognized standards for medication procurement across large health systems. As Dr. Gray

explains, Saint Thomas Neurosurgical's bulk purchase of steroids from NECC is the direct result of a systemic failure within the Saint Thomas Health system.

Before Saint Thomas Neurosurgical purchased MPA from NECC, Saint Thomas Hospital's head pharmacist learned that NECC was attempting to sell prescription medications in bulk without individual prescriptions.[6]   Saint Thomas Hospital's head pharmacist (Martin Kelvas) then decided that the hospital should <u>not</u> purchase medications from NECC because such would be unlawful.[7]   Pharmacist Kelvas then <u>warned</u> numerous entities within the Saint Thomas Health system <u>not</u> to purchase medications from NECC.[8]   Unfortunately, however, no one communicated Pharmacist Kelvas' warning about NECC to Saint Thomas Neurosurgical.

As Dr. Gray explains, the Saint Thomas Entities failed to communicate important safety information across the entire Saint Thomas Heath system.   Specifically, the Saint Thomas Entities failed to inform all organizations within the Saint Thomas Health system that Saint Thomas Hospital's head pharmacist (Kelvas) concluded that NECC's sales methods were unlawful and that purchasing in bulk from NECC, without prescriptions, would be illegal.   Dr. Gray further explains that Saint Thomas Health, Saint Thomas Hospital, Saint Thomas Network and Saint Thomas Neurosurgical, all as part of the integrated Saint Thomas Health system, breached the standard of care.   By permitting Saint Thomas Neurosurgical to do what the hospital previously concluded was unlawful, all of the Saint Thomas Entities, including Saint Thomas Health, Saint Thomas Hospital and Saint Thomas Network, breached their duties to plaintiffs.   (*See* Gray Rule 26 Disclosure, Exhibit A attached.)

Furthermore, the PSC has disclosed expert Dr. Joachimsthaler, who is prepared to testify that consumers perceive the "Saint Thomas" brands, including Saint Thomas Neurosurgical, Saint Thomas Hospital, Saint Thomas Health, and St. Thomas Network as belonging to the same

---

[6] Deposition of Martin Kelvas, pp. 104 – 107.
[7] <u>Id</u>.
[8] Kelvas Dep., p. 92, 106 – 107.

entity and that consumers perceive Saint Thomas, rather than the individual entities, to be the provider of service for any treatment or services provided by the individual medical units. Dr. Joachimsthaler is a distinguished international expert with over twenty-five years of experience in the field of branding and marketing, including analyzing and building brands in the healthcare sector and for various Fortune 100 companies. His opinions are premised on his analysis of record and of the results of a study of Nashville-area consumers that he commissioned in connection with his report.

Dr. Joachimsthaler's conclusions demonstrate that Saint Thomas Neurosurgical acted as an apparent agent of Saint Thomas Hospital, Saint Thomas West, and Saint Thomas Network. The "Saint Thomas"-branded entities held themselves out to the public as providing medical services, and patients receiving care at Saint Thomas Neurosurgical reasonably believed that they were being treated by employees or agents of Saint Thomas. (*See* Joachimsthaler Rule 26 Disclosure, Exhibit B attached.)

Based upon the above information, this Court should deny the Saint Thomas Entities' motion. There is no reason to permit these proceedings to become more protracted by allowing time consuming motion practice that will not change the posture of the litigation.

Date: January 29, 2016                                  Respectfully submitted,

                                                          /s/ **George Nolan**
                                                          George Nolan (B.P.R. No. 14974)
                                                          LEADER, BULSO & NOLAN, PLC
                                                          414 Union Street, Suite 1740
                                                          Nashville, TN  37219
                                                          (615) 780-4114
                                                          gnolan@leaderbulso.com

                                                          *As designated counsel on behalf of the Plaintiffs'*
                                                          *Steering Committee*

Thomas M. Sobol
Kristen Johnson Parker
HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA  02142
Telephone:  (617) 482-3700
tom@hbsslaw.com
kristenjp@hbsslaw.com

*Plaintiffs' Lead Counsel*

Marc E. Lipton
LIPTON LAW
18930 W. 10 Mile Road
Southfield, MI  48075
Telephone:  (248) 557-1688
marc@liptonlawcenter.com

Patrick T. Fennell
CRANDALL & KATT
366 Elm Avenue, S.W.
Roanoke, VA  24016
Telephone:  (540) 342-2000
pfennel@crandalllaw.com

J. Gerard Stranch, IV
Benjamin A. Gastel
BRANSTETTER, STRANCH & JENNINGS PLLC
227 Second Avenue North, 4th Floor
Nashville, TN  37201
Telephone:  (615) 254-8801
gerards@branstetterlaw.com

*Plaintiffs' Steering Committee*

Elizabeth J. Cabraser
Mark P. Chalos
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111
Telephone:  (415) 956-1000
ecabraser@lchb.com
mchalos@lchb.com

*Federal/State Liaison*

Kim Dougherty
JANET, JENNER & SUGGS, LLC
31 St. James Ave., Suite 365
Boston, MA  02116
Telephone:  (617) 933-1265
kdougherty@myadvocates.com

Mark Zamora
ZAMORA FIRM
6 Concourse Way, 22nd Floor
Atlanta, GA  30328
Telephone:  (404) 451-7781
marc@markzamora.com

## CERTIFICATE OF SERVICE

I, George Nolan, hereby certify that on January 29, 2016, I caused a copy of the foregoing to be filed electronically via the Court's electronic filing system.  Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system, and notice of these filings will be sent to these parties by operation of the Court's electronic filing system.

/s/ **George Nolan**
George Nolan