IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

DANIEL LOVELACE and
HELEN LOVELACE, Individually,
and as Parents of
BRETT LOVELACE, deceased,

     Plaintiffs,

VS.                                    NO.: 2:13-cv-02289-JPM-dkv

PEDIATRIC ANESTHESIOLOGISTS, P.A.;
BABU RAO PAIDIPALLI; and
MARK P. CLEMONS,

     Defendants.

---

ORDER GRANTING MOTION OF DEFENDANTS, PEDIATRIC
ANESTHESIOLOGISTS, P.A., AND BABU RAO PAIDIPALLI, FOR QUALIFIED
PROTECTIVE ORDER
AND
QUALIFIED PROTECTIVE ORDER

---

Before the court is the December 6, 2013 motion of the
defendants, Pediatric Anesthesiologists, P.A., and Babu Rao
Paidipalli, pursuant to Tenn. Code Ann. § 29-26-121(f), for the
entry of a qualified protective order allowing Pediatric
Anesthesiologists and Dr. Paidipalli and their attorneys to
obtain health information otherwise protected from disclosure by
the Health Insurance Portability and Accountability Act of 1996
("HIPAA") and all other applicable state and federal statutes,

1

rules, and regulations ("Protected Health Information"), regarding the minor patient, Brett Lovelace, deceased, during interviews conducted outside the presence of the plaintiffs and plaintiffs' counsel with certain healthcare providers who treated Brett. (D.E. 59.) The plaintiffs, Daniel Lovelace and Helen Lovelace, parents of Brett, filed a response in opposition to the motion. (D.E. 83.) On January 30, 2014, Pediatric Anesthesiologists and Dr. Paidipalli filed a reply. (D.E. 93.) The motion was referred to the United States Magistrate Judge for determination. (D.E. 68.) For the reasons that follow, the motion is granted.

## I.   PROCEDURAL AND FACTUAL BACKGROUND

This healthcare liability action arises out of the hospitalization of the Lovelaces' minor son, Brett, for a tonsillectomy and adenoidectomy performed by the defendant, Dr. Mark Clemons, on March 12, 2012, at Methodist LeBonheur Children's Medical Center. While in the Post Anesthesia Care Unit (PACU) following the procedure, Brett "coded," and was resuscitated but ultimately died two days later, on March 14, 2012.

Named as defendants in the complaint are Dr. Paidipalli, the anesthesiologist who administered the anesthesia to Brett; Pediatric Anesthesiologists, the medical group with which Dr.

Paidipalli is affiliated; and Dr. Mark Clemons, the doctor who performed the surgery.   In their answers, the defendants deny any medical negligence on their part but assert fault against a non-party, Kelly Kish, a recovery room nurse employed by Methodist LeBonheur, who was assigned to care for Brett in the PACU following his surgery.

In an Agreed Order with the Tennessee Board of Nursing, without identifying Brett by name, Kish stipulated to certain facts concerning the care she provided to Brett in the PACU, including the fact that while she was caring for Brett, she "documented oxygen saturations that were not reflected on the print-out" and that Brett "was the only patient assigned to [her] during the approximately 90 minutes [Brett] was in the PACU." (Agreed Order, D.E. 59-1 at 10.)   She also stipulated that during the time Brett was in the PACU, she "accessed Facebook and at least one other social media website using a hospital computer." (*Id.* at 11.)   In the Agreed Order, she further acknowledged that the Stipulated Facts were sufficient to acknowledge violations of the following rules and statutes: Tenn. Code Ann. § 63-7-101, *et seq.*, and Tenn. Comp. R. & Regs. 1000-01-.13(1) & (1)(a), which includes "intentionally or negligently causing physical or emotional injury to a patient." As a result of these violations, Kish's nursing license was

revoked.   On March 23, 2012, Kish resigned her employment with Methodist in lieu of termination.   (*Id.*)

## II.   ANALYSIS

Pursuant to an amendment in 2012 to the Tennessee Health Care Liability Act, Tenn. Code Ann. § 29-26-101 *et seq.*, the named defendants in a healthcare liability action may petition the court for an order allowing them and their attorneys to conduct *ex parte* interviews with the plaintiff's treating healthcare providers under certain conditions.   *See* Tenn. Code Ann. § 29-26-121(f).   The 2012 amendment added subsection (f) to section 29-26-121.   That subsection provides:

(f)(1) Upon the filing of any "healthcare liability action," as defined in § 29-26-101, the named defendant or defendants may petition the court for a qualified protective order allowing the defendant or defendants and their attorneys the right to obtain protected health information during interviews, outside the presence of claimant or claimant's counsel, with the relevant patient's treating "healthcare providers," as defined by § 29-26-101(a)(2).   Such petition shall be granted under the following conditions:

(A) The petition must identify the treating healthcare provider or providers for whom the defendant or defendants seek a qualified protective order to conduct an interview;

(B) The claimant may file an objection seeking to limit or prohibit the defendant or defendants or the defendant's or the defendants' counsel from conducting the interviews, which may be granted only upon good cause shown that a treating healthcare provider does

4

not possess relevant information as defined by the Tennessee Rules of Civil Procedure; and

(C) The qualified protective order shall expressly limit the dissemination of any protected health information to the litigation pending before the court.

(2) Any disclosure of protected health information by a healthcare provider in response to a court order under this section shall be deemed a permissible disclosure under Tennessee law, any Tennessee statute or rule of common law notwithstanding.

(3) Nothing in this part shall be construed as restricting in any way the right of a defendant or defendant's counsel from conducting interviews outside the presence of claimant or claimant's counsel with the defendant's own present or former employees, partners, or owners concerning a health-care liability action.

Tenn. Code Ann. § 29-26-121(f). The amendment that added subsection (f) applies to all healthcare liability actions commenced on or after July 1, 2012.

Section 29-26-121(f) was amended in 2013, effective July 1, 2013, to provide as follows regarding qualified protective orders:

(C)(i) The qualified protective order shall expressly limit the dissemination of any protected health information to the litigation pending before the court *and require the defendant or defendants who conducted the interview to return to the healthcare provider or destroy any protected health information obtained in the court of any such interview, including all copies, at the end of the litigation.*

> *(ii) The qualified protective orders shall expressly provide that participation in any such interview by a treating health-care provider is voluntary.*

Tenn. Code Ann. § 29-26-121(f)(1)(C) (language added by the 2013 amendment in italics). A health care liability action is defined as "any civil action, including claims against the state or a political subdivision thereof, alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, regardless of the theory of liability on which the action is based." Tenn. Code Ann. § 29-26-101(a)(1).

The purpose of subsection (f) of section 29-26-121 was to permit a health care provider in a potential health care liability claim, upon proper application, to receive all medical records of the patient filing the claim from other health care providers and to allow the attorney for the health care provider to interview the claimant's treating health care providers outside the presence of the claimant in order to defend the claim. It also clarified existing law as to whether a defendant's counsel could conduct *ex parte* interviews with the defendant's own employees, present or former, partners, and owners.

The Lovelaces filed the present healthcare liability action on May 8, 2013, and therefore Tenn. Code Ann. § 29-26-121(f), as

it existed before the 2013 amendment, applies to this lawsuit. Although the 2013 amendment to subsection (f) is not applicable to this case, Pediatric Anesthesiologists and Dr. Paidipalli do not object to the application of the terms of the amendment to the qualified protective order they are seeking.

Pediatric Anesthesiologists and Dr. Paidipalli seek to interview the following six treating healthcare providers,[1] who, they submit, possess relevant information:

1. Kelly Kish, R.N., the Methodist nurse who monitored Brett in the PACU;

2. Wayne Sutter, EMT, the Methodist EMT who observed Brett in the PACU prior to the time Brett "coded";

3. Mark Bugnitz, M.D., Brett's treating pediatrician during his hospital admission;

---

[1]   Initially, Pediatric Anesthesiologists and Dr. Paidipalli also sought an *ex parte* interview with Elesia Turner, Risk Manager for Methodist.  Subsequent to the filing of the motion, Methodist filed a motion for protective order prohibiting an *ex parte* conversation with Turner because she did not wish to engage in an *ex parte* interview.  Because *ex parte* communications are voluntary, the court granted Methodist's motion.

4. Elizabeth Hinson, R.N., a Methodist nurse who is believed
   to have provided care to Brett during his hospital
   admission;

5. Margaret Yoste, R.N., another Methodist nurse who is
   believed to have provided care to Brett during his
   hospital admission; and

6. Dr. Mark Clemons, M.D., the physician who performed the
   surgery on Brett.

In their response, the Lovelaces argue that HIPAA preempts
Tenn. Code Ann. § 29-26-121(f); that the healthcare providers
whom the defendants wish to interview do not possess relevant
information, and, if they did, the information has been provided
to the defendants by production of Brett's medical records; and
if the court allows the defendants to conduct *ex parte*
interviews, the defendants should be required to record the
interviews, or, in the alternative, the plaintiffs' counsel
should be allowed to attend the interviews.

A.   Whether HIPAA Preempts Tenn. Code Ann. § 29-26-121(f)

The Lovelaces argue that Tennessee law is no longer more
strict than HIPAA in that it "lowers HIPAA's privacy standards,"
and therefore HIPAA controls the dissemination of protected
health information, not Tenn. Code Ann. § 29-26-121(f). (Pls.'
Resp., D.E. 84 at 5.)

Over three years ago, before the adoption of the amendment adding subsection (f) to the Tennessee Health Care Liability Act, this court faced a somewhat similar issue concerning *ex parte* communications between non-party healthcare providers and a defendant and the defendant's attorney in a healthcare liability action. *See Wade v. Vabnick-Wener*, 922 F. Supp. 2d 679 (W.D. Tenn. 2010). In *Wade*, this court recognized the right of a defendant hospital to communicate *ex parte* with its agents, employees, and former employees when faced with potential liability for the negligent care and treatment of a patient because corporations can act only through its employees and agents. In the course of its holding, after first analyzing HIPAA and cases construing HIPAA, this court concluded that because, at that time, Tennessee's common law protecting private health information, particularly its prohibitions on informal communications with the plaintiff's treating physicians, *see Alsip v. Johnson City Med. Ctr.*, 197 S.W.3d 722, 725-30 (Tenn. 2006); *Givens v. Mullikin*, 75 S.W.3d 383, 407-09 (Tenn. 2002), was more stringent than HIPAA, HIPAA did not preempt Tennessee law. *Wade*, 922 F. Supp. 2d at 692. Now, once again, this court is called upon to determine if HIPAA preempts Tennessee law.

1. *Protection and Disclosure of Health Information Under HIPAA*

In 1996, Congress passed the Health Insurance Portability and Accountability Act of 1996, 42 U.S.C. § 1320d *et seq.* ("HIPAA"), which governs the dissemination of protected health information. The effective compliance date for HIPAA was April 14, 2003. "[Through] HIPAA, Congress has 'spoken' about the protection that must be extended to patients regarding their health related information."[2] *EEOC v. Bos. Mkt. Corp.*, No. CV 03-4227, 2004 WL 3327264, at *2 (E.D. N.Y. Dec. 16, 2004).

The regulations provide certain exceptions to the general rule against disclosure of patient health information without the patient's prior written consent. *See Bayne v. Provost*, 359 F. Supp. 2d 234, 236 n.4 (N.D. N.Y. 2005)(citing 45 C.F.R. §164.512(a)). One such exception pertains to the disclosures

---

[2]   Health information is defined under HIPAA as:

any information, whether oral or recorded in any form or medium, that --

(A) is created by a health care provider, health plan, public health authority, employer, life insurer, school or university, or health care clearinghouse; and

(B) relates to the past, present, or future physical or mental health or condition of an individual, the provision of health care to an individual, or the past, present or future payment for the provision of health care to an individual.

42 U.S.C. § 1320d(4); *see also* 45 C.F.R. § 160.103.

made in connections with judicial and administrative proceedings. 45 C.F.R. § 164.512(a). Healthcare providers may disclose protected health information in connection with judicial and administrative proceedings according to the following guidelines:

> (1) Permitted disclosures. A covered entity may disclose protected health information in the course of any judicial or administrative proceeding:
>
> (i) In response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order; or
>
> (ii) In response to a subpoena, *discovery request*, or other lawful process, that is not accompanied by an order of a court or administrative tribunal, if:
>
> (A) The covered entity receives satisfactory assurance . . . from the party seeking the information that reasonable efforts have been made by such party to ensure that the individual who is the subject of the protected health information that has been requested has been *given notice* of the request; or
>
> (B) The covered entity receives satisfactory assurance . . . from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order that meets the requirements of paragraph (e)(1)(v) of this section.

45 C.F.R. § 164.512(e)(1)(emphasis added). The Secretary defines "satisfactory assurance" as "a written statement and accompanying documentation" which demonstrates that:

> (A) the party requesting such information has made a good faith attempt to provide written notice to the individual (or, if the individual's location is

11

unknown, to mail a notice to the individual's last known address);

(B) The notice included sufficient information about the litigation or proceeding in which the protected health information is requested to permit the individual to raise an objection to the court . . . ; and

(C) The time for the individual to raise objections to the court . . . has elapsed, and:

(1) No objections were filed; or

(2) All objections filed by the individual have been resolved by the court . . . and the disclosures being sought are consistent with such resolution.

45 C.F.R. § 164.512(e)(1)(iii). A proper protective order must both prohibit the parties from using or disclosing the patient's health information for any purpose not related to the judicial proceeding in which its production was ordered and require that the parties return or destroy the disclosed information (as well as all copies made thereof) at the end of the proceedings. 45 C.F.R. § 164.512(e)(1)(v).

Stated more plainly, the HIPAA regulations allow health care providers to disclose patient health information in connection with judicial proceedings: (1) in response to an order of the court, but only to the extent allowed by the language of the order; or (2) in response to a subpoena or formal discovery request where the requesting party assures the provider that either the patient was made aware of the request but did not object or the requesting party has made reasonable

12

efforts to secure a proper protective order. *See Law v. Zuckerman*, 307 F. Supp. 2d 705, 711 (D. Md. 2004); *Bos. Mkt.*, 2004 WL 3327264, at *4; *Nat'l Abortion Fed'n v. Ashcroft*, No. 03 Civ 8695(RCC), 2004 U.S. Dist. LEXIS 4530, at *7 (S.D. N.Y. Mar. 18, 2004); *see also* 45 C.F.R. § 164.512(e)(1)(i), (ii). Thus, under HIPAA, "[h]ealth care providers may disclose protected health information in the course of any judicial . . . proceeding . . . [i]n response to an order of a court." 45 C.F.R. § 164.512(e).

Although HIPAA does not expressly provide for *ex parte* communications between counsel and health care providers, this court, in *Wade*, after carefully reviewing the language of the statute and regulations and case law nationwide, found "that the exceptions to HIPAA's privacy rules allow defense counsel to conduct *ex parte* interviews with plaintiff's treating physicians after first securing, or attempting to secure, a qualified protective order consistent with the regulations." *Wade*, 922 F. Supp. 2d at 690.

   2.   *HIPAA's Preemption Provision*

HIPAA contains an express preemption clause, which provides: "A standard, requirement, or implementation specification adopted under this subchapter that is contrary to

a provision of State law preempts the provision of State law."

45 C.F.R. § 160.203. As this court pointed out in *Wade*,

> HIPAA expressly provides for its interaction with conflicting state laws concerning patient privacy. *Crenshaw v. MONY Life Ins. Co.*, 318 F. Supp. 2d 1015, 1028 (S.D. Cal. 2004). The general rule, as reflected by the regulations, is that HIPAA preempts any "contrary" state law. 45 C.F.R. § 160.203. The regulations define a "state law" to "mean a constitution, statute, regulation, rule, common law, or other State action having the force and effect of law." 45 C.F.R. § 160.202. State laws are contrary to HIPAA if: (1) it would be impossible for the health care provider to comply simultaneously with HIPAA and the state directive; or (2) the state provision stands as an obstacle to the accomplishment of the full objectives of HIPAA. 45 C.F.R. § 160.202(1), (2).

*Wade*, 922 F. Supp. 2d at 686. HIPAA does not, however, preempt

a provision of a state law which is "more stringent" than the

provision of HIPAA or its regulations. 45 C.F.R. § 160.203(b).

To meet the "more stringent" requirement, the state law

provision must "provide[] greater privacy protection for the

individual who is the subject of the individually identifiable

health information" than the standard set for the HIPAA and its

regulations. 45 C.F.R. § 160.202(6).

    In *Wade*, this court found Tennessee's state common law at

the time prohibiting *ex parte* communications by defense counsel

with a plaintiff's treating healthcare providers to be "more

stringent" than HIPAA and concluded that HIPAA did not preempt

Tennessee's state common law as to *ex parte* communications.

Wade, 922 F. Supp. 2d at 691-92.  Now, in light of Tenn. Code Ann. § 29-26-121(f), which expressly permits *ex parte* interviews by defense counsel with a plaintiff's treating healthcare providers, Tennessee law in this regard is no longer more stringent.

Instead of arguing that Tennessee law is more stringent, the Lovelaces urge that Tennessee law is now less stringent than HIPAA because the only objection a plaintiff can make to a petition for a qualified protective order allowing *ex parte* communications with the plaintiff's treating healthcare providers is an objection for "good cause" that the treating healthcare provider does not possess "relevant information." Without further elaboration, the Lovelaces reason that this limited objection is less stringent than HIPAA, and therefore subsection (f) of Tenn. Code Ann. § 29-26-121 is in conflict with HIPAA, and HIPAA controls.

Tenn. Code Ann. § 29-26-121(f) is not "contrary" to HIPAA. It is possible for healthcare providers to comply with both HIPAA and Tenn. Code Ann. § 29-26-121(f) simultaneously, and Tenn. Code Ann. § 29-26-121(f) does not stand as an obstacle to the accomplishments of HIPAA.  Both HIPAA and Tenn. Code Ann. § 29-26-121(f) seek to protect the privacy of individual health information.  Both permit the disclosure of protected health

15

information in a judicial proceeding pursuant to a qualified protective order entered by the court. Both require the same safeguards and limitations on dissemination and use of the information and destruction of the information at the end of the proceeding in the qualified protective order for the protection of the privacy of an individual's health care information. Both are limited to the discovery of relevant information. Both permit *ex parte* communications between defense counsel and a plaintiff's treating physician. The "good cause" and relevancy standards in Tenn. Code Ann. § 29-26-121(f) are consistent with the standards for discovery and issuance of protective orders under the Federal Rules of Civil Procedure, which would apply to HIPAA.

Likewise, this year in a well-reasoned opinion, the Court of Appeals of Tennessee, Western Section, concluded that Tenn. Code Ann. § 29-26-121 was not preempted by HIPAA because healthcare providers "can comply with the requirements of both section 29-26-121 and HIPAA, and that section does not impede the accomplishment or execution of HIPAA's purposes." *Webb v. Roberson*, No. W2012-01230-COA-R9CV, 2013 WL 1645713, at *14 (Tenn. Ct. App. Apr. 17, 2013), *appeal denied*, (Tenn. Dec. 23, 2013). In the opinion, however, the Court of Appeals analyzed the 2009 version of section 29-26-121, which was in effect at

the time the plaintiff in *Webb* filed the lawsuit. *See id.* at *4 n.6. Because subsection (f) of Tenn. Code Ann. § 29-26-121 was not added until 2012, the *Webb* court did not consider preemption as to subsection (f) in particular. Nevertheless, the *Webb* court's preemption analysis is equally applicable to subsection (f).

Thus, Tenn. Code Ann. § 29-26-121(f) is completely consistent with HIPAA and is not subject to preemption. Even if HIPAA did preempt Tenn. Code Ann. § 29-26-121(f) and controlled, Pediatric Anesthesiologists and Dr. Paidipalli would still be entitled to the entry of a qualified protective order. Other than a relevancy objection, the Lovelaces have offered no additional objections to the issuance of a qualified protective order. As discussed below, the relevancy objection fails.

B.   Possession of Relevant Information

The Lovelaces object to the entry of a qualified protective order on the basis that the six designated healthcare providers do not possess relevant information. Tenn. Code Ann. § 29-26-121(f)(1)(B) permits a plaintiff to "file an objection seeking to limit or prohibit the defendant or defendants or the defendant's or the defendants' counsel from conducting the interviews, which may be granted only upon good cause shown that a treating healthcare provider does not possess relevant

information as defined by the Tennessee Rules of Civil Procedure." *Id.* The Lovelaces argue that counsel for Pediatric Anesthesiologists and Dr. Paidipalli have already been provided all of Brett's medical records, and therefore these six designated healthcare providers do not have relevant information.

Simply because the Lovelaces have provided all of Brett's medical records to the defendants does not preclude the possibility that his healthcare providers possess additional relevant information. The medical records may not reflect all the facts of which the healthcare providers have knowledge. They may have knowledge of events that were not recorded in the medical records. Nor do the medical records necessarily reflect the healthcare providers' understanding of and opinion as to the standard of care or causation. Accordingly, the Lovelaces have failed to show good cause to prohibit Pediatric Anesthesiologists and Dr. Paidipalli and their attorneys from conducting *ex parte* interviews with Brett's six designated healthcare providers.

C.   Additional Restrictions Requested by the Lovelaces

In the event the court allows informal *ex parte* interviews between Pediatric Anesthesiologists and Dr. Paidipalli and their attorneys and the six designated treating healthcare providers,

the Lovelaces request that the court allow them and their counsel to attend the interviews or that the interviews be recorded and a copy of the recording be provided to them. As grounds for imposition of additional restrictions, the Lovelaces assert that (1) the interviews are not attorney-client privileged; (2) the requested restrictions are consistent with the letter and spirit of HIPAA in that HIPAA allows patients to receive accountings of disclosure of protected health information; and (3) the requested safeguards are not prohibited by Tenn. Code Ann. § 29-26-121(f).

These requested restrictions exceed the requirements of both Tenn. Code Ann. § 29-26-121(f)(1) and HIPAA regarding communication with healthcare providers and would be superfluous. In addition, they would impede defense counsel's ability to communicate freely with a plaintiff's healthcare providers, and Tenn. Code Ann. § 29-26-121(f)(1) clearly evidences an intent to allow such uninhibited communications as long as defense counsel has secured a proper protective order. "Having access to the medical *witnesses* who may testify at trial serves the same goal of allowing equal access to the evidence, which is essential to the success of the adversary process." *Thomas v. 1152729 Ontario Inc.*, No. 13-12283, 2013 WL 5785853, at *3 (E.D. Mich. Oct. 28, 2013). Imposition of the requested

additional restrictions would be equivalent to limiting the defendants in a healthcare liability action to the use of formal discovery depositions. Because the Lovelaces have unfettered access to *ex parte* interviews with Brett's non-party healthcare providers, the defendants should have equal access.

If Congress and the Tennessee legislature had intended to require the imposition of additional restrictions in a qualified protective order, they would have included the restrictions in the respective statutes. In addition, defense counsel may reveal work product in the *ex parte* interviews, and, if the interviews were recorded, the Lovelaces' counsel would have access to defense counsel's protected work product.

### III.   CONCLUSION

For the foregoing reasons, Pediatric Anesthesiologists and Dr. Paidipalli's motion is granted, and the court issues the following Qualified Protective Order.

### IV.   QUALIFIED PROTECTIVE ORDER

Pursuant to Tenn. Code Ann. § 29-26-121(f), Pediatric Anesthesiologists and Dr. Paidipalli, and their attorneys, may obtain protected health information regarding Brett Lovelace, including information otherwise protected from disclosure by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and all other applicable state and federal statutes,

rules, and regulations, during interviews conducted outside the presence of the plaintiffs and plaintiffs' counsel with the following healthcare providers:

1. Kelly Kish, R.N., the Methodist nurse who monitored Brett in the PACU;

2. Wayne Sutter, EMT, the Methodist EMT who observed Brett in the PACU prior to the time Brett "coded";

3. Mark Bugnitz, M.D., Brett's treating pediatrician during his hospital admission;

4. Elizabeth Hinson, R.N., a Methodist nurse who is believed to have provided care to Brett during his hospital admission;

5. Margaret Yoste, R.N., another Methodist nurse who is believed to have provided care to Brett during his hospital admission; and

6. Dr. Mark Clemons, M.D., the physician who performed the surgery on Brett.

The following conditions shall govern any *ex parte* interviews of these healthcare providers by Pediatric Anesthesiologists and Dr. Paidipalli, and their attorneys:

1. The Protected Health Information disclosed pursuant to this Qualified Protective Order shall only be disseminated and used for the purposes of and during the

course of this healthcare liability action, and shall not be disseminated to any person(s) other than the defense attorneys, their staff members, the parties, experts utilized in this case, and trial support vendors utilized in this case;

2. All Protected Health Information obtained during any *ex parte* interview, and all copies of documents containing such information obtained during any such interview shall be returned to the healthcare provider and shall be destroyed at the conclusion of this lawsuit; and

3. Any and all *ex parte* interview(s) with Pediatric Anesthesiologists and Dr. Paidipalli and/or their attorneys are strictly voluntary on the part of these healthcare providers, and nothing in this Order is intended to imply that the healthcare providers cannot refuse any request for *ex parte* meetings with Pediatric Anesthesiologists and Dr. Paidipalli and/or their attorneys.

IT IS SO ORDERED this 5th day of February, 2014.

s/ Diane K. Vescovo
DIANE K. VESCOVO
UNITED STATES MAGISTRATE JUDGE

22