UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


IN RE:  NEW ENGLAND COMPOUNDING    )  MDL NO. 13-02419-RWZ
PHARMACY CASES LITIGATION          )
                                   )
                                   )
                                   )
                                   )
                                   )
                                   )


BEFORE:  THE HONORABLE RYA W. ZOBEL
                    and
         THE HONORABLE JENNIFER C. BOAL


**MOTION HEARING**
**AND**
**STATUS CONFERENCE**



John Joseph Moakley United States Courthouse
Courtroom No. 12
One Courthouse Way
Boston, MA 02210

February 11, 2016
2:00 p.m.

*   *   *   *

Catherine A. Handel, RPR-CM, CRR
Official Court Reporter
John Joseph Moakley United States Courthouse
One Courthouse Way, Room 5205
Boston, MA 02210
E-mail: hhcatherine2@yahoo.com

```
 1      APPEARANCES:

 2
        For The Plaintiffs:
 3

 4
            Hagens, Berman, Sobol, Shapiro LLP, by ED NOTARGIACOMO,
 5      ESQ., 55 Cambridge Parkway, Suite 301, Cambridge, Massachusetts
        02142;
 6

 7          Janet, Jenner & Suggs, LLC, JESSICA H. MEEDER, ESQ.,
        Commerce Centre East, 1777 Reisterstown Road, Suite 165,
 8      Baltimore, Maryland 21208;

 9
            Branstetter, Stranch & Jennings, PLLC, by J. GERARD STRANCH,
10      IV, ESQ., and BEN GASTEL, ESQ., 227 Second Avenue North,
        Nashville, Tennessee 37201-1631;
11

12          Ellis & Rapacki LLP, by FREDRIC L. ELLIS, ESQ., 85 Merrimac
        Street, Suite 500, Boston, Massachusetts 02114;
13

14          Lieff Cabraser Heimann & Bernstein, LLP, by ANNIKA K.
        MARTIN, ESQ., 250 Hudson Street, 8th Floor, New York, New York
15      10013-1413;

16
            Lieff Cabraser Heimann & Bernstein, LLP, by MARK P. CHALOS,
17      ESQ., 150 Fourth Avenue North, Suite 1650, Nashville, Tennessee
        37219;
18

19

20
        FOR PAUL D. MOORE, IN HIS CAPACITY AS CHAPTER 11 TRUSTEE OF
21      NECP, INC.:

22
            Duane Morris LLP by MICHAEL R. GOTTFRIED, ESQ., 100 High
23      Street, Suite 2400, Boston, Massachusetts 02110-1724;

24
        (Appearances continued on the next page.)
25
```

1    APPEARANCES (Cont'd):

2

3

4    FOR THE DEFENDANTS:

5        Gideon, Cooper & Essary, PLC, by CHRIS J. TARDIO, ESQ., 315
     Deaderick Street, Suite 1100, Nashville, Tennessee 37238;

6

7        Brewer, Krause, Brooks, Chastain & Burrow, PPLC, by KENT E.
     KRAUSE, ESQ., 611 Commerce Street, Suite 2600, Nashville,

8    Tennessee 37203;

9

10       Fulbright & Jaworski, LLP, by MARCY H. GREER, ESQ., and
     ADAM T. SCHRAMEK, ESQ., 98 San Jacinto Boulevard, Suite 1100,
     Austin, Texas 78701;

11

12       Nutter McClennen & Fish LLP, by SARAH P. KELLY, ESQ.,
     Seaport West, 155 Seaport Boulevard, Boston, Massachusetts

13   02210-2604;

14

15       Pessin Katz Law, P.A., by GREGORY K. KIRBY, ESQ., 901
     Dulaney Valley Road, Suite 400, Towson, Maryland 21204;

16

17       Blumberg & Wolk LLC, by CHRISTOPHER M. WOLK, ESQ., 158
     Delaware Street, P.O. Box 68, Woodbury, New Jersey 08096;

18

19

20

21

22

23

24

25

```
1                    P R O C E E D I N G S
2           (The following proceedings were held in open court
3    before the Honorable Rya W. Zobel, United States District
4    Judge, and Honorable Jennifer C. Boal, Magistrate Judge,
5    United States District Court, District of Massachusetts, at
6    the John J. Moakley United States Courthouse, One Courthouse
7    Way, Boston, Massachusetts, on February 11, 2016.)
8           THE COURT:  Good afternoon.  Please be seated.
9           COURTROOM DEPUTY CLERK URSO:  This is In Re:  New
10   England Compounding.  It's 13-MD-2419.
11          THE COURT:  A new cast of characters or at least a
12   few new characters.
13          MR. NOTARGIACOMO:  Good afternoon, your Honor.  Ed
14   Notargiacomo for --
15          THE COURT:  I'm sorry?
16          MR. NOTARGIACOMO:  Ed Notargiacomo for the lead --
17          THE COURT:  I think it would be well if counsel
18   remain seated so that you can use the microphone, because the
19   people at the other end can't hear and neither can I.
20          MR. NOTARGIACOMO:  Your Honor, Ed Notargiacomo for
21   lead counsel and the Plaintiffs' Steering Committee.  I'm
22   filling in for Ms. Johnson, who would ordinarily be in this
23   seat.  She's on vacation this week.  So, I'm here as master of
24   ceremonies.
25          THE COURT:  Who told her she was entitled to go on
```

1    vacation at a time when we have a meeting set.

2              MR. NOTARGIACOMO:  She escaped without our knowledge.

3              THE COURT:  Okay.  Now, I have your proposal.  And

4    with respect to the motions on which oral argument is

5    requested, do we really need oral argument on this?  It raises

6    similar issues to all the other ones we've heard, does it not?

7              MR. NOTARGIACOMO:  Mr. Stranch will do the argument.

8              MR. STRANCH:  Good afternoon, your Honor.  Gerard

9    Stranch for the Plaintiffs' Steering Committee.

10             I think that the Saint Thomas Entities' request for

11   leave to file a motion for -- a global motion for summary

12   judgment, I think it's well briefed and is simple.  If the

13   Court would like oral argument, the Steering Committee and I

14   will be happy to address any questions the Court had about

15   that, but we think it's a very simple issue.  It's been

16   briefed well.

17             MS. GREER:  Your Honor, briefly respond.  Marcy Greer

18   for the Saint Thomas Entities.

19             Their response was not to the motion for leave.

20   Their response was really more to the motion for summary

21   judgment itself, basically saying there's no reason to even

22   grant leave because they can't win.  So, we would just ask

23   that the Court consider the basis for the motion for leave

24   which would be to simplify the issues for trial.

25             THE COURT:  So, I don't need to hear argument on the

1    motion for leave to file?

2         MS. GREER:  We would briefly request to be heard on

3    it, but if the Court would prefer to take it on the papers,

4    we'll respect that.  I just have a few points to make.

5         THE COURT:  I'll take it on the papers, then.

6         MS. GREER:  Okay.

7         MR. STRANCH:  Thank you, your Honor.

8         (Discussion off the record at the Bench.)

9         THE COURT:  We met yesterday in order to be ready for

10   today, and one of the issues that came up was whether the

11   motion for leave to file summary judgment motions should be

12   adhered to, and I guess for the time being, we will.  I think

13   we've taken sort of two positions and we've counseled in and

14   we ignored the opposite position.  So, now we think it's a

15   good idea.  Thank you.

16        MR. STRANCH:  Thank you.

17        THE COURT:  Now, that takes us to Part B.

18        MR. STRANCH:  Yes.

19        THE COURT:  This is really Judge Boal's issue, but we

20   do have a problem when counsel file motions in the individual

21   cases as opposed to the multi-district proceeding, we don't

22   get them.  They don't come to us.  And I think there is

23   another one later on in this agenda that is of a similar --

24   yes, on Page 4, the very top item is, again, a motion filed in

25   the -- I think it was a motion.

```
 1              MAGISTRATE JUDGE BOAL:  Yes.

 2              THE COURT:  Yes, filed in one of the individual

 3     cases.  We don't look at those anymore.  There are too many of

 4     them and if motions are filed, they simply get lost because we

 5     just don't know about them.

 6              MAGISTRATE JUDGE BOAL:  So, for that reason, Item

 7     B(2) is not on my radar screen at all until the PSC filed its

 8     opposition, which was filed in the docket in the MDL.  So, I

 9     just granted yesterday the Tennessee Clinic Defendants' motion

10     for leave to file a reply.

11              I am prepared to hear oral argument in March on it,

12     but I didn't know if the parties needed a decision earlier

13     than that, and if so, I would be prepared to schedule an

14     argument on that issue alone on March 2nd, at 10 o'clock, but

15     you all need to tell me whether you need me to hear it earlier

16     than March 10th.

17              MR. CHALOS:  Your Honor, this is Mark Chalos for the

18     Plaintiffs' Steering Committee.  The B(2) and then E(15) --

19              MAGISTRATE JUDGE BOAL:  Yes.

20              MR. CHALOS:  -- which I think are similarly-situated

21     in that the original motions were not filed on the MDL docket,

22     we would ask the Court for -- to hear that, if possible,

23     sooner than March, even March 2nd.

24              MAGISTRATE JUDGE BOAL:  March 2nd, okay.

25              MR. CHALOS:  You know, among counsel we had found
```

1    that February 19th worked for us, which is next Friday.  Of

2    course, we didn't check with you first and we tried to figure

3    out a date that we all could get together.

4              MAGISTRATE JUDGE BOAL:  I'm not going to be able to

5    do by February 19th.

6              MR. CHALOS:  Okay.  In particular, E(15) is a motion

7    that we do need some clarity from the Court on.  That deals

8    with the ex parte interviews by defense counsel with treating

9    physicians and that's really holding up the depositions of

10   treating physicians.

11             (Discussion off the record at the Bench.)

12             MAGISTRATE JUDGE BOAL:  Yes, Judge Zobel had a very

13   good suggestion.  I could decide it on the papers.  Is that

14   agreeable to you?

15             MR. CHALOS:  That's fine with us if that's what you

16   wanted to do.

17             Right now the state has asked for permission to file

18   a response -- or reply to our response wherein we've raised a

19   HIPAA preemption issue.

20             MAGISTRATE JUDGE BOAL:  This is in --

21             MR. CHALOS:  E(15).

22             MAGISTRATE JUDGE BOAL:  Yes.

23             MR. CHALOS:  So, we've agreed with the state.  We

24   said that's fine.  I think they filed a motion with the Court

25   yesterday.  They asked for permission to file that by this

| | |
|---|---|
| 1 | Friday, and then the clinic defendants asked for permission to |
| 2 | file their reply to I think both the state and to our response |
| 3 | on the following Monday. |
| 4 | MAGISTRATE JUDGE BOAL:  The 15th? |
| 5 | MR. CHALOS:  The 15th.  And what we would ask from |
| 6 | the PSC's standpoint is for permission to file a very short |
| 7 | reply, if necessary, to the state's reply to our response.  I |
| 8 | guess it would be a sur-reply.  I don't know what the state is |
| 9 | going to say.  I know generally -- I think their issue is they |
| 10 | have a HIPAA preemption issue, but we wanted the ability to |
| 11 | file a very, very short reply, if needed, to whatever the |
| 12 | state says. |
| 13 | THE COURT:  This is Judge Boal's issue, but what |
| 14 | we're talking about is a motion in opposition, a reply, a |
| 15 | sur-reply and a sur-sur-reply. |
| 16 | MR. CHALOS:  Right.  It wasn't our idea. |
| 17 | (Laughter.) |
| 18 | MAGISTRATE JUDGE BOAL:  Sounds like a lot of |
| 19 | briefing.  And what's the other side's position on this? |
| 20 | MR. TARDIO:  We're fine if the Court wants to decide |
| 21 | it on the papers.  In lieu of that, we could make ourselves |
| 22 | available on March 2nd.  We would request that we could |
| 23 | participate in the hearing by phone. |
| 24 | MAGISTRATE JUDGE BOAL:  Yes. |
| 25 | MR. TARDIO:  The state is going to file a brief, |

```
 1    assuming the Court grants the motion that the state has filed,
 2    in defense of the statute.  I believe or anticipate that's
 3    what they're going to file.
 4                MAGISTRATE JUDGE BOAL:  Which I find a little curious
 5    because they're relying on Judge Saylor's order that allowed
 6    them already to intervene.  If there was a question of the
 7    constitutionality or invalidity of a statute, I don't view
 8    HIPAA preemption to fall in either category and if they
 9    thought it fell in the former category, they wouldn't need to
10    file a motion for leave.
11                MR. TARDIO:  I don't know.  I can't address the
12    state's position other than they have requested -- or asked us
13    whether we had any opposition to them filing something on the
14    issue.
15                MAGISTRATE JUDGE BOAL:  And you don't?
16                MR. TARDIO:  No, ma'am.
17                MAGISTRATE JUDGE BOAL:  All right.  So, I will see if
18    I can deal with it on the papers.  If it looks like we can't,
19    we'll schedule argument for March 2nd.  I share Judge Zobel's
20    skepticism about a sur-sur-sur-reply being necessary or
21    whatever level it is, but you have permission to do so knowing
22    that skepticism.
23                MR. STRANCH:  Fair enough.  We understand.
24                MR. TARDIO:  We have yet to file our reply.  So, it's
25    not sur anything, just our reply.
```

1          MAGISTRATE JUDGE BOAL:  What do you think?  Yes?

2    Okay.

3          MR. TARDIO:  Thank you, your Honor.

4          THE COURT:  That takes us to reports from bankruptcy.

5          MR. NOTARGIACOMO:  That's correct, your Honor, and we

6    start off with C(3), which is the status of the bankruptcy.

7    Attorney Gottfried is here to report on the status of the

8    bankruptcy.

9          MR. GOTTFRIED:  Thank you.  Good afternoon, your

10   Honor.

11         THE COURT:  One other thing.  I have asked the Clerk

12   to provide this courtroom with higher microphones so that you

13   don't feel so awkward arguing from a seated position, but I

14   asked them only about two days ago.  So, they haven't arrived

15   yet.  Next time they will be here.

16         MR. NOTARGIACOMO:  Thank you, your Honor.

17         THE COURT:  So, carry on.

18         MR. GOTTFRIED:  Okay.  Good afternoon, your Honor.

19   Michael Gottfried for the post confirmation officer Paul Moore.

20         Two things I wanted to report on today.  The first is

21   we filed -- it's Docket 2646 -- yesterday a notice of a motion

22   that we filed with the bankruptcy court to permit the post

23   confirmation order to now destroy the documents that are not

24   required to be preserved under your preservation order back in

25   November of 2014.

```
 1              As the Court may recall, we indicated while the

 2    documents that are really at the heart of the dispute are all

 3    preserved and indexed, these are documents that are not.  We

 4    said we would seek bankruptcy court approval before we would

 5    actually destroy that.  We've done that.  If there's someone

 6    who has an objection, the objection deadline is February 24th,

 7    and then Judge Boroff will deal with that, but we don't

 8    anticipate any issues.

 9              I fielded a question just before the hearing, which

10    I'm happy to respond to.  The bottom line is we indicate in

11    our paper that we are going to retain until further order of

12    this Court the originals of all the documents that were

13    scanned and electronically preserved by Harris Beach.  And so,

14    these are the non-preserved documents that we're dealing with.

15              We wanted to use this opportunity to give everyone

16    notice that we're doing it before we did it.  We actually

17    think we had authority under the plan confirmation, but we've

18    been very cautious here and giving people notice.

19              THE COURT:  So, this motion 2646 is to be decided by

20    Judge Boroff or --

21              MR. GOTTFRIED:  Correct.  It's just a --

22              THE COURT:  -- simply information added.

23              MR. GOTTFRIED:  Under your confirmation order, you

24    indicated that was the step that we would take --

25              THE COURT:  Right.  Okay.
```

1          MR. GOTTFRIED:  -- before we did it and we're just

2    following your order, but we wanted to give as much notice to

3    as many people as possible, obviously.  So, it's filed in ECF

4    and the bankruptcy court.  The notice is in this Court.  Just

5    want everyone to know before we do it.  Obviously, it saves a

6    lot of money not to store those pallets of documents, which

7    are irrelevant, for the most part, I think.

8          The second thing I wanted to let the Court know is

9    that the post confirmation officer has been working with the

10   tort trustee to prepare tax returns, which, hopefully, will

11   yield refunds that will be available to the victims.  So, he's

12   diligent in working on that with the tort trustee.  Thank you.

13         THE COURT:  Thank you.

14         The insurance declaratory judgment cases or case.

15   Mr. Stranch.

16         MR. GASTEL:  Ben Gastel on behalf of the Plaintiffs'

17   Steering Committee.  I'll be very quick.

18         There's really no update.  The certification order

19   has not been issued and the issue remains on Judge Sharp's

20   desk.

21         THE COURT:  All right.  I guess then we come to

22   status of discovery, which is Judge Boal.

23         MR. NOTARGIACOMO:  Correct.  The first item is the

24   PSC's motion to compel Specialty Surgery Center and Dr. Lister

25   and Mr. Gastel will also address that for the PSC.

1          MR. GASTEL:  Your Honor, we're continuing to work

2     with counsel for Specialty Surgery to sort of implement your

3     order.  We have requested dates for the depositions of Dr.

4     Lister and Ms. Atkinson which the Court ordered, and we

5     anticipate being able to work through all of the issues

6     without further briefing and that remains the hope.

7          THE COURT:  Good.  Anything else on discovery?

8          MR. NOTARGIACOMO:  There are a few other items, your

9     Honor.  The Court will recall, there was an issue with respect

10    to defendants Box Hill and Premier serving notice of

11    deposition by written question.  Judge Boal entered an order

12    allowing those to go forward.  The PSC served cross-

13    examination questions recently.  We've been told that at least

14    for Premier there are no additional questions on their part.

15    So, those will be ready to be shipped off to the deponents.

16    There may be some issues with Box Hill.  We're working through

17    those.  It's in progress, is the bottom line, and shouldn't be

18    an issue by the time we meet next.

19         THE COURT:  Good.  Anybody else on discovery?

20         (No response.)

21         THE COURT:  All right.

22         MR. NOTARGIACOMO:  There is one final item, your

23    Honor, and that's just an update on the issue of access to the

24    Rust-Omni HIPAA-compliant repository.  If you recall, the

25    trustee in response to requests for production had some

1   material that was -- the concern was that it had HIPAA-

2   protected information.  So, rather than produce it to a normal

3   database, we produced it to the HIPAA-compliant database that

4   was created pursuant to this Court's order.

5           A number of clinics filed motions for access as to

6   that information, but the order creating the HIPAA-compliant

7   database restricted access.

8           We have since had a conference with the defendants,

9   come up with a system by which they can receive access to the

10  database, but only to those portions of the -- only those

11  documents that relate to their particular clinic, and that is

12  also underway.  By the time we meet next, that should be

13  cleared up and everyone should have access they're entitled to.

14          THE COURT:  Good.  Thank you.

15          Now, the litigation track.

16          MR. NOTARGIACOMO:  The first is the update on the

17  Bellwether schedule, which I again turn to Mr. Gastel.

18          MR. GASTEL:  I believe, as hopefully the Court saw,

19  on Friday the parties -- last Friday the parties exercised the

20  remaining Bellwether strikes.  The current Bellwether pool has

21  seven cases in it and we owe a joint filing to the Court

22  tomorrow giving the Court a status update as to the remaining

23  seven Bellwether cases.  We're meeting and conferring on what

24  that joint filing will look like and we anticipate filing it

25  tomorrow.

```
 1            MS. GREER:  And, your Honor, we have a couple of
 2    questions about that joint filing.  One is, I know the Court
 3    has preferred not to file so many dockets under seal, but
 4    these documents -- this document will contain personal
 5    information about the Bellwether candidates and --
 6            THE COURT:  Sealing is allowed.
 7            MS. GREER:  Thank you.
 8            THE COURT:  Reluctantly.
 9            MS. GREER:  The second issue is that because the
10    document is intended to be joint, meaning from both sides, it
11    obviously will not be an advocacy piece.  It will simply be
12    objective facts, which we think it would be beneficial to the
13    Court to have something that explains a little bit more about
14    which cases would be most representative from our viewpoint
15    and proposing sequencing of the first few trials, and we would
16    propose that the Court allow us to brief that on an expedited
17    basis.  We would be prepared to do that.  We had talked about
18    possibly filing opening briefs by February 19th, with any
19    responses by February 26th.  So that it would be ready to be
20    heard at the next conference in March.
21            THE COURT:  What's the PSC's position on briefing --
22    on declaring preferences among the seven and briefing?
23            MR. STRANCH:  Well, clearly, the PSC has preferences
24    as to which one of the seven we think would be the most
25    instructive to the parties as to valuation of cases and
```

```
1    quality of claims.  We can do the joint filing.  I think we
2    could in the joint filing just do, Here's why we think this
3    case is good, here's why we think that case is good, or here's
4    why we think it's an outlier, and we won't need an extra round
5    of briefing.
6              THE COURT:  When you say "joint filing," you mean one
7    brief that includes the position of both parties?
8              MR. STRANCH:  Yes.  That would be due tomorrow right
9    now.
10             THE COURT:  I was going to suggest that either that
11   or simultaneous briefs by each party.  It doesn't matter to
12   me, but we don't need more than five pages, do we, for that?
13             MS. GREER:  No, I don't believe we do, but we --
14   right the document that's in progress is simply an objective
15   summary of the facts of these cases.  It's not an advocacy
16   piece, and I don't think we're going to see eye to eye on
17   which order or which number should be going forward.  So, I --
18   we can rewrite it by tomorrow, if that's what the Court would
19   like, but we think it would be more beneficial to present the
20   objective summary that just collects the information and then
21   separate briefs as to which cases would be best teed up first.
22             THE COURT:  So, how long is this document that you
23   have prepared?
24             MS. GREER:  It's about three pages long right now,
25   single spaced.  We'll probably make it double spaced to be
```

```
 1   more readable, but it's less than five pages.  It just has the
 2   -- literally when they received their PSI's, what symptoms --
 3          THE COURT:  Well, that's fine.  And then Mr. Stranch
 4   can file his -- I don't know whether you're ready or not.
 5          MR. STRANCH:  We're ready, your Honor.
 6          THE COURT:  -- at the same time.
 7          MS. GREER:  Well, your Honor, we haven't written it
 8   as an advocacy piece because we were trying to get to a joint
 9   summary, and we didn't think that --
10          THE COURT:  It doesn't matter.  It doesn't have to be
11   an advocacy piece.  You give me your position and he gives me
12   their position and I look at what you say and what he says in
13   support of your respective positions.  I mean, it's not -- I
14   suppose, in a sense, it's an advocacy piece because each of
15   you is likely to have a different first plaintiff, perhaps
16   even a different second plaintiff, but I'm not exactly sure
17   what you would like me to do other than to accept your
18   submission and the plaintiffs'.
19          MS. GREER:  We're just changing the picture, which is
20   fine.  We're happy to do that.  We think it makes sense.  It's
21   just that the way it was set up, we were supposed to do a
22   joint submission.  So, we've been working on something that we
23   could present with the PSC.  Apparently, they've been working
24   on something else.
25          THE COURT:  Let's leave it this way, that if you can
```

1    come up with a joint document, fine.  If you cannot, then just

2    file separate ones.

3         MS. GREER:  Could we have until Monday to file that?

4         THE COURT:  Sure, of course.

5         MS. GREER:  Okay.  That would help a lot.  Thank you.

6         MR. STRANCH:  That's fine.

7         MR. NOTARGIACOMO:  Mr. Gastel will also provide some

8    updated common expert discovery.

9         THE COURT:  On Tuesday.

10        COURTROOM DEPUTY CLERK URSO:  Monday is a holiday.

11        MS. GREER:  Thank you, your Honor.

12        THE COURT:  We don't work here on President's Day.

13   You shouldn't work on President's Day either.  All right.

14        (Laughter.)

15        (Discussion off the record at the Bench.)

16        THE COURT:  We were discussing yesterday in our pre-

17   conference meeting the ultimate -- getting to the ultimate

18   schedule for trial.  As I understand it, that we're now

19   working with a May 27th date for *Daubert* filings and,

20   presumably, a hearing shortly thereafter, which I think means

21   trial in July or August.  Is that going to cause serious

22   problems in terms of vacations, and the like?

23        MR. STRANCH:  No, your Honor, not from the

24   Plaintiffs' Steering Committee's point of view.

25        THE COURT:  So, we'll continue to work toward that.

```
 1    Yes?

 2            MR. TARDIO:  Yes, your Honor.  July and August sound

 3    great.

 4            THE COURT:  Okay.  Now common expert discovery.

 5            MAGISTRATE JUDGE BOAL:  Did you want to give us an

 6    update on common expert discovery?

 7            MR. GASTEL:  I believe the cutoff for that under the

 8    order you're probably looking is March 18th.  We've got a lot

 9    of the -- not as many as we would like of the common expert

10    depositions scheduled.  We are working to try to get as many

11    as we can within the March 18th deadline.  I think that we're

12    still waiting on some dates from some of the defendants'

13    experts, but we are certainly cognizant of the -- the

14    plaintiffs are certainly cognizant of the dates in the order

15    and we're still trying our best to get everything done by

16    March 18th.

17            MAGISTRATE JUDGE BOAL:  Okay.

18            THE COURT:  Okay.  Then we come to the next status

19    conferences.  We have two, March 10th and April 14th.  Do we

20    need to schedule one in May?

21            MR. STRANCH:  Yes.

22            MR. NOTARGIACOMO:  That's been our practice to date,

23    your Honor, to schedule --

24            THE COURT:  What's the date, Lisa?

25            COURTROOM DEPUTY CLERK URSO:  I was waiting for
```

```
 1    counsel.

 2             THE COURT:  Do counsel have a suggestion for when in

 3    May?

 4             MR. NOTARGIACOMO:  May 12th.

 5             THE COURT:  May 12th?

 6             MS. GREER:  Your Honor, I would not be available for

 7    May 12th.

 8             COURTROOM DEPUTY CLERK URSO:  What about the 19th?

 9             MS. GREER:  19th would work.

10             COURTROOM DEPUTY CLERK URSO:  Would that work for the

11    rest of counsel?

12             MR. NOTARGIACOMO:  Yes, your Honor.

13             COURTROOM DEPUTY CLERK URSO:  Okay.

14             THE COURT:  So, May 19th, at 2 o'clock.

15             COURTROOM DEPUTY CLERK URSO:  Yes.

16             THE COURT:  Does that work for you?

17             MAGISTRATE JUDGE BOAL:  Yes, May 19th works for me.

18             Do folks prefer to do it after the conference -- the

19    joint conference with Judge Zobel or on the 19th I could also

20    schedule it at 11:30.

21             MR. STRANCH:  Earlier is the preference.

22             MAGISTRATE JUDGE BOAL:  All right.  So, 11:30.

23             MR. STRANCH:  It makes for ease of getting out of

24    town.

25             MAGISTRATE JUDGE BOAL:  All right.  So, 11:30 for me
```

1    on May 19th.

2             THE COURT:  Oh, yes.  Judge Boal points out that I

3    have neglected the pro se report.

4             MS. MARTIN:  Thank you, your Honor.  I have not been

5    contacted by any additional pro se plaintiffs any time since

6    the last status conference.  So, I do not have an update, but

7    Mr. Ellis had some news about the appeals that we talked about

8    the last time and Judge Nieman.

9             MR. ELLIS:  We understand that there's about 15 pro

10   se's that had their claims denied for failure to file a timely

11   proof of claim in bankruptcy, and Judge Nieman is going to

12   refer them to Ms. Martin for assistance.  So, that should

13   happen hopefully in the next month.

14            THE COURT:  So, what are you doing to do with them?

15            MS. MARTIN:  I'm going to help them file motions for

16   late filing, to permit late filing with the bankruptcy court

17   and then when the bankruptcy court allows those, then they can

18   proceed.

19            THE COURT:  Okay.  So, that will be Judge Boroff

20   also, right?

21            MR. STRANCH:  Yes.

22            MR. ELLIS:  Yes.

23            THE COURT:  That's good.

24            (Laughter.)

25            THE COURT:  Then we come to the fully-briefed motions

1    for which argument is completed, which is a very gentle way of

2    saying, Judge, do something.  Judge is doing something.  We

3    will have a decision for you within a matter of a week or so.

4              MR. STRANCH:  Thank you, your Honor.

5              THE COURT:  On Item 10, 11 and 12.

6              MAGISTRATE JUDGE BOAL:  And then 13 was before me.  I

7    was a little bit confused because when I went back to the

8    transcript, we didn't have a full oral argument, but what

9    happened at that session was that the PSC said it was going to

10   file a reply brief and asked me to wait until after the reply

11   brief and no reply brief was filed.

12             MR. STRANCH:  I'm sorry, your Honor.  After reviewing

13   the reply that came in shortly -- the response that came in

14   shortly before the hearing, we decided that we didn't need to

15   file a reply brief after all.  We should have filed a notice.

16   I apologize.

17             MAGISTRATE JUDGE BOAL:  So, you're set to have me

18   decide this?

19             MR. STRANCH:  We're set to have you decide it.

20             MAGISTRATE JUDGE BOAL:  Thank you.

21             THE COURT:  Now, I think next is you, right?

22             MAGISTRATE JUDGE BOAL:  Yes.  So, all -- the next

23   group is all briefing in progress.

24             MR. NOTARGIACOMO:  That's correct, your Honor.  There

25   are two items that are in progress that are listed in the

```
1    Section E of the agenda that I would like to address.
2         The first and the easiest is the last item, 19.  I
3    spoke with counsel for Ocean State before the hearing and,
4    apparently, in the individual docket in that case, which is
5    Hanson vs. Ocean State, Case No. 10685, counsel for Ms. Hanson
6    filed in the individual docket a response saying that they do
7    not intend to oppose that motion.  So, I assume that that
8    motion then is ready for --
9         MAGISTRATE JUDGE BOAL:  Can someone just file it on
10   the docket in the MDL?
11        MR. NOTARGIACOMO:  Sure.  My office will take care of
12   filing that on the docket in the MDL.
13        MAGISTRATE JUDGE BOAL:  All right.
14        MR. NOTARGIACOMO:  Then, finally, with respect to
15   Item 16, the PSC's motion for qualified protective order, a
16   little background.  The tort trustee under the bankruptcy plan
17   is responsible for ensuring that before she pays claimants who
18   have been approved for payment under the settlement, that any
19   liens of which the tort trustee has been made aware have been
20   resolved one way or the other.
21        As part of that, the tort trustee, along with lead
22   counsel, have undertaken to do some negotiations, both with
23   Medicare to try to resolve federal liens on a global basis,
24   but also engage in some negotiations with some large insurers
25   in the United States to try to on a global basis see if we can
```

1    resolve some of those liens.

2            Those third-party payors are reluctant for some

3    reason to produce information about their insureds to the

4    trustee without some assurance that by doing so, they're not

5    going to violate HIPAA.  That's why we filed a motion for

6    qualified protective order.

7            We didn't think it was controversial.  We didn't

8    think we would have much opposition to it.  The time for

9    opposition has not yet run.  It's runs next week, but counsel

10   for some of the Tennessee entities has raised some issues and

11   we're trying to work through those in the hopes that we can

12   forestall any opposition to the motion, and I say all that

13   because it's important that we try to get that in works

14   because there are people whose claims have been approved and

15   we would like to start getting checks out.

16           So, if your Honors would allow -- if I'm able to work

17   something out with Tennessee counsel and we file a notice next

18   week that says there are no issues, there are no oppositions,

19   we're wondering if the Court might act on that motion

20   expeditiously.

21           MAGISTRATE JUDGE BOAL:  Yes.

22           THE COURT:  Then we come to dispositive motions,

23   another wave of them, and I wonder whether they are ready for

24   decision.  That is No. 17, 18 and 19.

25           MR. NOTARGIACOMO:  With respect to 17, your Honor --

```
1            THE COURT:  17 and 18, maybe.

2            MR. NOTARGIACOMO:  With respect to 17, your Honor, I

3    understand that, having spoken to the parties, they will be

4    ready to have that either heard in oral argument at our next

5    status conference or will agree amongst themselves to have it

6    decided on the papers.

7            THE COURT:  So, you will let us know which?

8            MR. NOTARGIACOMO:  Yes, we'll let you know right

9    before the next status conference.

10           With respect to 18, I'm told by counsel for Ocean

11   State that they intend to file a reply in the next day or so.

12   So, by the time we meet again, that will be fully briefed and

13   ready for a decision.

14           And with respect to 19, as I said previously, in the

15   individual docket there's been a notice by counsel that there

16   will be an opposition to that motion, and we'll make sure that

17   that gets filed in the MDL docket.

18           THE COURT:  So, will 18 be ready for argument, if

19   argument is necessary, next time around as well or not?

20           MR. NOTARGIACOMO:  I believe it will, your Honor, yes.

21           THE COURT:  It will be?

22           MR. NOTARGIACOMO:  Yes.

23           THE COURT:  Okay.  And 19 as well?

24           MR. NOTARGIACOMO:  It's apparently ready now, your

25   Honor, and there will be no opposition to the motion from the
```

1    individual plaintiff.

2            THE COURT:  Well, if there's no opposition, I'll

3    allow it.

4            MR. NOTARGIACOMO:  That's fine, your Honor.

5            THE COURT:  No opposition?  Okay.  So, No. 19, Ocean

6    State's motion to dismiss the product liability claims in

7    *Hanson vs. Ocean State Pain Management* is allowed.  That is

8    No. 2388.  That is in the multi-district docket, right?

9            MR. NOTARGIACOMO:  It is.  There's one notice that

10   was filed in the individual docket.  We will make sure it gets

11   refiled in the MDL.

12           THE COURT:  Well, Docket No. 2388 is the

13   multi-district docket, correct?

14           MR. NOTARGIACOMO:  That's correct, yes.

15           THE COURT:  How about the amended motion which also

16   appears to be --

17           UNIDENTIFIED SPEAKER:  Judge Zobel.

18           THE COURT:  Yes.

19           COURTROOM DEPUTY CLERK URSO:  That's on the phone,

20   Judge.

21           THE COURT:  I know.  Who is responding?

22           MR. NOTARGIACOMO:  Someone just forgot to put their

23   phone on mute.

24           (Discussion off the record at the Bench.)

25           THE COURT:  So, the amended motion for entry of

```
 1   dismissal for failure of plaintiffs to file timely opposition,

 2   that is to the motion that is No. 2388, correct?

 3          MR. NOTARGIACOMO:  That is correct, your Honor, and

 4   that's also in the MDL docket.

 5          THE COURT:  To the extent that now there is no

 6   opposition, it is allowed, period.  Or do I need to rule on

 7   the motion -- well, no.  It's the same motion.  So, it's

 8   allowed.  Okay.

 9          MR. NOTARGIACOMO:  Thank you, your Honor.

10          THE COURT:  Is there anything else we need to discuss

11   today?  Anybody on the phone?

12          UNIDENTIFIED SPEAKER:  No, thank you, your Honor.

13          THE COURT:  Thank you all.

14          Those on the phone, you're really -- you really must

15   be very sorry.  You're missing the cold weather here and

16   you're missing speed jumping and snowboarding at Fenway Park,

17   a major event that you really should be able to see, but I'm

18   sorry you can't.

19          MS. PUIG:  We're all very sad, your Honor.  This is

20   Yvonne Puig.

21          THE COURT:  All right.  Thank you all.

22          MR. STRANCH:  Thank you, your Honor.

23          (Adjourned, 2:33 p.m.)

24

25
```

```
 1                      C E R T I F I C A T E

 2           I, Catherine A. Handel, Official Court Reporter of

 3    the United States District Court, do hereby certify that the

 4    foregoing transcript, from Page 1 to Page 28, constitutes to the

 5    best of my skill and ability a true and accurate transcription of

 6    my stenotype notes taken in the matter of Multidistrict

 7    Litigation No. 13-02419-RWZ, In Re: New England Compounding

 8    Pharmacy Cases Litigation.

 9

10
      February 22, 2016      /s/Catherine A. Handel
11    Date                   Catherine A. Handel, RPR-CM, CRR

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```