UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION<br><br>_____<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL CASES | MDL No. 2419<br>Docket No. 1:13-md-2419 (RWZ) |

**NON-PARTY SUMMIT SURGERY CENTER's MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH 30(B)(6) DEPOSITION BY WRITTEN QUESTIONS**

Non-Party Summit Surgery Center ("Summit"), respectfully submits this memorandum of law in support of its motion to quash the Notice of 30(b)(6) Deposition By Written Questions, originally issued on October 12, 2015 and reissued with modifications on February 9, 2016 (the "Subpoena") by counsel for Defendants Premier Orthopaedic and Sports Medicine Associates of Southern New Jersey, LLC, trading as Premier Orthopaedic Associates, Premier Orthopaedic Associates Surgical Center, LLC, Kimberly Yvette Smith, M.D., a/k/a Kimberly Yvette Smith-Martin, M.D., Thomas Dwyer, M.D., Rhaul Shah, M.D., John Catalano, M.D., Richard DiVerniero, M.D. and Richard Strauss, M.D. (the "Premier Defendants").

**Preliminary Statement**

This MDL involves wrongful death and personal injury claims arising out of the administration of methylprednisolone acetate ("MPA") manufactured by New England Compounding Pharmacy, Inc. ("NECC"). *In re: New Eng. Compounding Pharm., Inc.*, 2013 U.S. Dist. LEXIS 161652, No. 13-2410-FDS, at *14 (Nov. 13, 2013) (Boal, J.) ("2013 Order"). The Premiere Defendants issued the Subpoena to non-party Summit and substantively identical subpoenas to other entities seeking answers to 21 questions relating to their purchases from NECC and actions taken by them prior to making purchases from NECC. The Subpoena is also accompanied by an additional 86 cross-examination questions – many of which have additional sub-parts – that were submitted by the Plaintiff's Steering Committee ("PSC").

Summit moves to quash the Subpoena because Summit never purchased MPA, the core product at issue in the MDL. After the PSC filed a motion for a protective order seeking to require the depositions to be conducted orally rather than pursuant to written questions, the Premier Defendants filed a brief in which they explained why they had served these subpoenas: they were seeking "targeted information as to the due diligence conducted by other NECC customers who purchased <u>MPA</u>." Def.'s Opp'n to Pl.'s Mot. for Protective Order at 6, ECF No. 2385. The Court denied the PSC's motion because the subpoenas "appear to be targeted to the <u>narrow topic</u> of what due diligence was conducted by various NECC customers <u>prior to purchasing MPA from NECC</u>." Order on Pl.'s Mot. for Protective Order Regarding Notices of Dep. by Written Questions at 2, Dec. 18, 2015, ECF No. 2528 ("2015 Order") (emphasis added). Yet, contrary to the terms of this Order, the Subpoena could not result in discovery of whatever due diligence Summit conducted before purchasing MPA because Summit never purchased MPA from NECC. The Federal Rules of Civil Procedure are clear that where, as here, a third-

2

party subpoena seeks information that is irrelevant and utterly disproportionate to the needs of the case, it must be quashed.

The Subpoena must also be quashed because Summit has absolutely no nexus to the MDL. Summit has no patients that have filed suit, joined in the MDL, or notified Summit of intent to bring a claim against Summit related to NECC medication. Over two years ago, this Court issued a ruling that quashed subpoenas that were issued to third party medical facilities because they had no patients in the MDL. As Summit similarly has no patients in the MDL, the Subpoena must be quashed.

## Background

I.    The Subpoena

The Premiere Defendants issued substantively identical subpoenas to Summit and seven other entities in February 2016. *See* Def.'s Notice of Filing Notices of Dep. by Written Questions, Feb. 11, 2016, ECF No. 2665. These subpoenas were served on a variety of orthopedic practices, surgery centers, medical centers and a pharmacy. *See id*. The Subpoena instructed Summit to designate a corporate representative to answer 21 questions relating to what it purchased from NECC; what actions it took prior to making purchases from NECC; whether it received any representations from Medical Sales Management and/or NECC prior to making purchases from NECC and whether it did anything in response to those representations; and whether any patients were injured by products sold by NECC. Def.'s Dep. by Written Questions of Summit Surgery Center at 2-3, Feb. 9, 2016, ECF No. 2665-6. The Subpoena is also accompanied by an additional 86 cross-examination questions submitted by PSC. These questions principally relate to whether Summit had knowledge about certain instances of contaminated compounded products. *Id*.

3

II.     Summit

Non-party Summit is a surgery center located in Hermitage, Tennessee. Summit has no affiliation with the Premier Defendants. Decl. of Byron McEntire at ¶ 6. ("McEntire Declaration"). Summit never purchased MPA from NECC. *See* http://www.fda.gov/downloads/Drugs/DrugSafety/FungalMeningitis/UCM325466. PDF at p. 299; *see also* McEntire Decl. at ¶ 5. Summit is not aware of any clinic patients that have (1) filed a lawsuit raising allegations related to the administration of a product manufactured by NECC, (2) joined in the multi-district litigation related to NECC, (3) notified Summit of intent to bring a claim against Summit related to NECC medication, or (4) otherwise alleged that they were injured by a product manufactured by NECC. McEntire Decl. at ¶ 7.

## Argument

I.      The Subpoena Must Be Quashed

The Subpoena must be quashed because (1) it is contrary to the terms of the 2015 Order, which emphasizes that the subpoenas are for the limited purpose of seeking information from parties that purchased MPA, something that Summit did not do and (2) it is contrary to the terms of the 2013 Order, which requires that all subpoenas that are issued to third parties with no patients in the MDL must be quashed.

   A.   A Third-Party Subpoena is Appropriate Only When It Seeks Relevant Information That Is Proportionate to the Needs of the Case

Although the Subpoena purports to be issued to Summit pursuant to Fed. R. Civ. P. 31 and 30(b)(6), it could be enforceable against a non-party such as Summit only if issued pursuant to Rule 45. A Rule 45 subpoena is enforceable only if the information that is sought falls within the scope of Rule 26(b)(1). *See* 2013 Order at *23. Rule 26(b)(1), as recently amended,

4

provides that the information sought must be not only relevant but "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1) (emphasis added). The purpose of the newly-added proportionality requirement is to "encourage judges to be more aggressive in identifying and discouraging discovery overuse." *Henry v. Morgan's Hotel Grp., Inc.*, No. 15-CV-1789, 2016 U.S. Dist. LEXIS 8406, at *9 (S.D.N.Y. Jan. 25, 2016) (quoting Advisory Committee's notes to 2015 amendments) (dismissing third-party subpoenas predicated on "wholesale speculation").

"The party issuing the subpoena has the burden of establishing that the requested information is relevant to its claims or defenses." *Enargy Power (Shenzhen) Co. v. Wang*, No. 13-11348, 2014 U.S. Dist. LEXIS 130994, at *6 (D. Mass. Sept. 17, 2014) (Boal, J).  Non-parties such as Summit are afforded more protection from discovery than parties participating in the litigation.  *See, e.g.*, *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) ("Although discovery is by definition invasive, parties to a law suit must accept its travails as a natural concomitant of modern civil litigation.  Non-parties have a different set of expectations."); *In re Centrix Fin., LLC*, No. 12-6471, 2012 U.S. Dist. LEXIS 179131, at *16 (D.N.J. Dec. 18, 2012) ("Everest is a non-party and therefore is afforded greater protection from discovery than a normal party.").  A subpoena seeking irrelevant information from a non-party will be quashed pursuant to Rule 45(d)(3).  *See, e.g.*, 2013 Order at 31-32; *Enargy*, 2014 U.S. Dist LEXIS 130994, at *6-8.

      B.      The 2015 Order Requires That the Subpoena Must Be Quashed Because Summit Did Not Purchase MPA

Here, the Subpoena must be quashed because Summit did not purchase MPA and therefore cannot provide any relevant information regarding the product that is central to the issues in dispute in the MDL.

The Court's Orders have highlighted the centrality of MPA to the MDL in general and the subpoenas issued by the Premiere Defendants in particular. In the 2013 Order, the Court stated: "This litigation involves claims for wrongful death and personal injury arising out of the administration of an injectable steroid, [MPA], manufactured by defendant [NECC]." 2013 Order at *13-14.

The Court further highlighted the significance of MPA in the 2015 Order. The Premiere Defendants opposed the PSC's motion for a protective order and sought to justify the third-party subpoenas that they issued on the basis that the subpoenas had been served on "non-party entities which had purchased MPA from NECC prior to the outbreak" and that they were seeking "targeted information to the due diligence conducted by other NECC customers who purchased MPA." Def.'s Opp'n to Pl.'s Mot. for Protective Order at 1, 6, ECF No. 2385 (emphasis added). The Court denied the PSC's motion precisely because the subpoenas were targeted to the "narrow topic of what due diligence was conducted by various NECC customers prior to purchasing MPA from NECC." 2015 Order at 2 (emphasis added). This Order requires that the Subpoena – which was served on an entity that never purchased MPA – must be quashed.

      C.      The Subpoena Must Also Be Quashed for the Reasons Articulated in the 2013 Order

The 2013 Order also requires that the Subpoena be quashed. In addressing the enforceability of non-party subpoenas, the 2013 Order highlighted the critical distinction

between non-parties with no patients in the MDL – against whom subpoenas were generally <u>not</u> enforceable – and patients in the MDL and non-parties with patients in the MDL – against whom subpoenas were enforceable.  It explained:

> The Court believes that it is appropriate to make a distinction between clinics that have no patients who have become plaintiffs in the MDL and have received no notices of claim or letters of representation from any potential plaintiff, on the one hand, and clinics who have patients who are plaintiffs in the MDL or have received notices of claim or letters of representation from potential plaintiffs, on the other. . . . <u>There appears to be little, if any, connection between the claims in this litigation and hospitals and clinics who have no patients who have filed suit, joined in the MDL litigation, or given notice of a claim against any party relating to NECC medications.</u>

2013 Order at *41-42 (emphasis added).  The 2013 Order therefore quashed subpoenas against non-parties "who have no patients who have filed suit, joined in the MDL litigation, or given notice of a claim against that respondent relating to NECC medications." *Id*. at *42-43.  With respect to non-parties with no patients in the MDL, the 2013 Order only allowed discovery insofar as it related to complaints or adverse events communicated by the non-parties to NECC.  *Id.* at *42.  The 2013 Order found that such information could be relevant to showing that NECC had notice of the alleged contamination of its products.  *Id.*  The 2013 Order cannot be a surprise to the Premiere Defendants because they are specifically listed on it.  *Id.* at *5.

The 2013 Order squarely necessitates quashing the Subpoena.  Like the non-party subpoenas that were quashed by the Order because the recipient entities had no patients in the MDL, the Subpoena must be quashed because Summit has no patients that have filed suit, joined in the MDL or given a notice of a claim related to NECC medications.  Had the Premiere Defendants issued the Subpoena in 2013 – something they could have done – it assuredly would have been quashed pursuant to the terms of the 2013 Order.   The 2013 Order is still controlling and dictates that the Subpoena must be quashed because Summit has no patients in the MDL.

7

D. The Subpoena Imposes an Undue Burden on Summit

The Subpoena seeks exactly the type of "discovery overuse" that the recent revisions to Rule 26(b)(1) are designed to prevent. The Subpoena would impose a considerable – and unnecessary – burden on Summit. In order to answer the 107 questions posed by the Subpoena, Summit would have to undertake significant efforts to research and answer these questions. Indeed, to answer many questions regarding the state of "Summit's" knowledge, Summit would have to undertake extensive surveys to determine what each employee did or did not know. Moreover, the questions all relate to facts that took place more than four years ago. Answering these questions therefore requires overcoming the challenges presented by the passage of time, including documents being more difficult to locate, recollections fading, and personnel turnover. Summit would also have to expend resources to prepare one or more witnesses to testify.

By contrast, as Summit did not purchase MPA, has no patients in the MDL, and has no relationship to the Premiere Defendants, any information about Summit's purchases of non-MPA products from NECC is irrelevant and has no "importance" to "the issues at stake in the action," *i.e.*, the Premiere Defendants' purchases of MPA. The burden imposed on Summit to comply with the Subpoena would thus be significantly outweighed by any infinitesimally small benefit that could come from information provided by Summit. *See* Fed. R. Civ. P. 26(b)(1).

E. The Premiere Defendants Insist on Summit Responding to the Subpoena Notwithstanding That Summit Does Not Have Information That Meets the Premier Defendants' Stated Theory of Relevance

Counsel for Summit has advised the Premier Defendants of the key facts that render the Subpoena improper, namely that: (1) contrary to the Premiere Defendants' representations, Summit has never purchased MPA and (2) Summit has no connection to the MDL. Decl. of Maura K. Monaghan at ¶¶ 4-5. They nonetheless inexplicably insist that a mistakenly-selected


entity that never purchased MPA and has no unique information that is relevant to the Premier Defendant's claims and defenses must comply with the Subpoena. The Court's Orders, however, make clear that the Subpoena is improper and must be quashed.

## CONCLUSION

For the foregoing reasons, Summit respectfully requests the Court to quash the Subpoena.

Dated:   February 29, 2016          Respectfully submitted,

/s/ Maura K. Monaghan

DEBEVOISE AND PLIMPTON LLP
919 Third Avenue
New York, NY 10022
Tel.:  (212) 909-6000
Fax:  (212) 909-6874

*Counsel for non-party Summit Surgery Center*