UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


MDL NO. 13-02419-RWZ


IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC.
PRODUCTS LIABILITY LITIGATION


THIS ORDER APPLIES TO ACTIONS NAMING
ST. THOMAS OUTPATIENT NEUROLOGICAL CENTER, LLC


<u>OPINION AND ORDER</u>

February 29, 2016


ZOBEL, D.J.

With bellwether trials approaching, both the Plaintiffs' Steering Committee

("PSC") and the Tennessee Defendants[1] seek to define the scope of the Tennessee

Cases. Each side has moved for summary judgment on the applicability of the

Tennessee Products Liability Act ("TPLA"), Tenn. Code Ann. §§ 29-28-101 <u>et seq.</u>

(West 2015): the PSC argues that St. Thomas qualifies as a "seller" under that statute,

while the Tennessee Defendants contend that the Tennessee Health Care Liability Act

("THCLA"), Tenn. Code Ann. §§ 29-26-101 <u>et seq.</u> (West 2015), precludes application

---

[1] This opinion adopts the shorthand used in Docket # 2309: "NECC" refers to New England Compounding Pharmacy, Inc., d/b/a New England Compounding Center; and "Clinic-Related Defendants" refers to clinics, hospitals, and healthcare professionals who procured contaminated NECC products and administered them to patients. "Tennessee Defendants" refers to Clinic-Related Defendants located in Tennessee: Saint Thomas Outpatient Neurosurgical Center, LLC ("St. Thomas"); Howell Allen Clinic, P.C.; John Culclasure, MD; Debra Schamberg, RN, CNOR; and Vaughan Allen, MD. Cases naming the Tennessee Defendants are referred to as the "Tennessee Cases."

of the TLPA. For the reasons discussed below, the Tennessee Defendants' motion is allowed, and the PSC's motion is denied.

## I.      Background

Briefly,[2] the Tennessee Cases stem from the injection of contaminated methylprednisolone acetate ("MPA") manufactured and sold to St. Thomas by NECC. These contaminated MPA injections caused many patients who received them to develop fungal meningitis; in Tennessee, the disease has caused illness in 153 persons and the death of sixteen more.

In their Master Complaint, the PSC asserted claims against the Tennessee Defendants under both the TLPA and the THCLA. The Tennessee Defendants moved to dismiss both sets of claims. See Docket # 1360. Ruling on the TLPA claims, I held only that "plaintiffs have adequately stated claims for relief under the TPLA . . . . [g]iven the lack of controlling authority to the contrary," and declined to dismiss them. Docket # 1360 at 30. Now both the PSC and the Tennessee Defendants test the TLPA claims through summary judgment.

## II.     Standard

Summary judgment shall issue absent a "genuine dispute as to any material fact." Fed. R. Civ. P. 56. To defeat a motion for summary judgment, its opponent must "demonstrate that a trialworthy issue exists." Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 19 (1st Cir. 2003).

---

[2] Previous opinions set forth in detail the circumstances giving rise to this multidistrict litigation. See, e.g., In re New England Compounding Pharm., Ind. Prods. Liability Litig., 496 B.R. 256, 260–263 (D. Mass. 2013).

III.    **Discussion**

The parties dispute two issues: first, whether the THCLA renders the TLPA

inapplicable to St. Thomas; and second, if the THCLA does not preclude the TLPA,

whether the TLPA applies to St. Thomas on the facts before the court.

Turning first to the antecedent question, the two statutes have partially

overlapping coverage, and this overlap creates the possibility of conflict between them.

The THCLA governs "any civil action . . . related to . . . the provision of health care

services."  Tenn. Code Ann. § 29-26-101(a)(1). Two terms in this coverage

provision—"any" and "related"—emphasize its expansiveness. A legislature's use of the

word "any" typically indicates its intent for a statute to have maximal reach. See, e.g.,

United States v. Gonzalez, 520 U.S. 1, 5 (1997) ("Read naturally, the word 'any' has an

expansive meaning . . . ."). "Related" denotes a similar breadth, with Black's defining

the term as "[c]onnected in some way." Related, Black's Law Dictionary (10th ed.

2014); see also Morales v. Trans World Airlines, Inc., 504 U.S. 374, 383 (1992) ("The

ordinary meaning of ['relating to'] is a broad one . . . ."). The conjunction of the two

terms thus means that the THCLA encompasses all civil actions with some connection

to "the provision of health care services," Tenn. Code Ann. § 29-26-101(a)(1), a

conclusion recently reinforced by the Tennessee Supreme Court. See Ellithorpe v.

Weismark, — S.W.3d —, 2015 WL 5853873 at *7 (Tenn. Oct. 8, 2015) (THCLA applies

to "*all* civil actions" alleging injuries related to the provision of health care services).

The TPLA has similar breadth. It reaches "all actions brought for or on account

of personal injury, death, or property damage caused by or resulting from . . . any

3

Case 1:13-md-02419-RWZ   Document 2700   Filed 02/29/16   Page 4 of 6

product. . . . under any . . . theory in tort or contract whatsoever." Tenn. Code Ann. § 29-28-102(6) (West 2015). This language evinces the Tennessee legislature's intent that the TLPA apply broadly, a conclusion shared by other courts that have examined this issue. See, e.g., Greene v. Brown & Williamson Tobacco Corp., 72 F. Supp. 2d 882, 886–87 (W.D. Tenn. 1999).

Here, the plaintiffs have asserted a cause of action concerning a product—MPA—that adversely affected them as the result of receiving health care services—MPA injections. Both statutes thus ostensibly control, but their mutually exclusive liability regimes leave them in conflict. The THCLA precludes faultless liability, and requires that plaintiffs prove some dereliction of a professionally acceptable standard of care. Tenn. Code Ann. § 29-26-115(a) (West 2015); see also Rye v. Women's Care Center of Memphis, MPLLC, — S.W.3d —, 2015 WL 6457768 at *23–24 (Tenn. Oct. 26, 2015). The TPLA, however, embraces strict liability, and requires no showing of fault. Tenn. Code Ann. § 29-28-105(a) (West 2015). Further, the two statutes have incompatible rules for joint tortfeasor liability. The THCLA follows Tennessee's general liability rule that "each defendant will be liable only for the percentage of the damages caused by it," Ridings v. Ralph M. Parsons Co., 914 S.W.2d 79, 83 (Tenn. 1996). The TLPA, however, overrides that rule, and imposes joint and several liability in strict products liability actions. See Owens v. Truckstops of Am., 915 S.W.2d 420, 432 (Tenn. 1996) ("[J]oint and several liability . . . is essential to the theory of strict products liability.").

Under the plain meaning of their coverage provisions, both the THCLA and the

TLPA could apply here, as the plaintiffs' allegations concern both a defective product and the provision of health care services. Because the coverage provisions of the two statutes overlap in this instance, their conflicting liability and damages provisions preclude the application of both, and force a choice between them. When faced with such conflicts, Tennessee courts apply the more specific statute in lieu of the more general one. <u>Graham v. Caples</u>, 325 S.W.3d 578, 582 (Tenn. 2010). The parties agree that between the TLPA and the THCLA, the THCLA is the more specific statute, and the plaintiffs do not dispute that the THCLA applies in these cases.[3] The THCLA therefore takes precedence, rendering the TLPA inapplicable in these cases.

Because the TLPA cannot apply here, I need not and do not address the question of whether it applies to St. Thomas.

**IV.    Conclusion**

The PSC's Motion for Partial Summary Judgment (Docket # 2300) is DENIED, and the Tennessee Defendants' Motion for Partial Summary Judgment (Docket # 2462) is ALLOWED.

|  |  |
|---|---|
| February 29, 2016 | /s/Rya W. Zobel |
| DATE | RYA W. ZOBEL |
| | UNITED STATES DISTRICT JUDGE |

---

[3] Further, any argument that the THCLA does not apply would be unavailing. As discussed above, the THCLA applies to "any civil action . . . related to . . . the provision of health care services." Tenn. Code Ann. § 29-26-101(a)(1) (West 2015). Plaintiffs' allegations concern the injection of contaminated MPA as a part of pain-treatment services performed by medical professionals, and therefore plainly relate to the provision of health care services.