UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION <br><br> THIS DOCUMENT RELATES TO: <br><br> All Cases Against the Nashville Healthcare Defendants | ) ) ) ) MDL No. 2419 ) Dkt. No 1:13-md-2419 (RWZ) ) ) ) ) ) ) ) |

### SAINT THOMAS ENTITIES' RESPONSE TO PSC'S
### SUMMARY OF REMAINING BELLWETHER CANDIDATES

The Saint Thomas Entities[1] submit this Response to the *Plaintiffs' Steering Committee's* ("PSC") *Notice of Filing of Summary of Remaining Bellwether Cases* (Docket #2661) ("PSC's Bellwether Proposals") as to the MDL Plaintiffs bringing claims against the Nashville Healthcare Defendants[2] ("STOPNC Patients").

#### INTRODUCTION

The Court directed the parties to provide summaries of the remaining bellwether candidates and provide their views as to which ones should be selected for initial trials and in what sequence. The Nashville Healthcare Defendants have proposed a representative cross-section of the bellwether candidates, including a death case (*Temple*), a stroke case (*Wray*), a preexisting

---

[1] Defendants Saint Thomas West Hospital f/k/a St. Thomas Hospital, Saint Thomas Health, and Saint Thomas Network.

[2] The Nashville Healthcare Defendants include the Saint Thomas Entities, as well as Saint Thomas Outpatient Neurosurgical Center, LLC ("STOPNC"); Howell Allen Clinic, a Professional Corporation ("Howell Allen Clinic"); John Culclasure, MD; Debra Schamberg, RN; Vaughan Allen, MD (collectively, the "STOPNC Defendants").

autoimmune disorder (*Brock*), and a claimed continuing condition attributed to the exposure (*Parman*).

The PSC, by contrast, proposes the three remaining cases from the pool it initially selected and adds another that is not even in the bellwether pool. Instead of including the only remaining death case (*Temple*) in its Bellwether Proposal, the PSC casts it aside as "not an appropriate bellwether case."[3] In its place, the PSC once again urges the Court to consider the *Reed* case that was stricken from the bellwether pool because it is a demonstrated outlier case. The PSC's repetitive attempts to modify the prior orders of this Court—which has now **twice** held that each party is entitled to four unequivocal strikes[4]—so as to advance the *Reed* case ahead of the other, more representative, cases should be rejected for the last time.

In analyzing the full complement of legitimate bellwether candidates proposed by the parties, the Court can divine some pragmatic conclusions. First, the *Wray* case was initially selected by the PSC for the bellwether pool and is proposed by both parties as a bellwether trial candidate, so it makes sense to put this case first in line for trial. Second, the *Temple* case should be included in the four bellwether trial selections, as it is the only death case remaining in the pool.[5] Third, the Nashville Healthcare Defendants have previously demonstrated that the *McElwee* and *Ziegler* cases are outliers,[6] and these cases should not be included in the four

---

[3] PSC's Bellwether Proposal at 8.

[4] Docket #2075 at 5; Docket #2435 at 1 (adopting Saint Thomas Entities' proposal, which included four strikes per side).

[5] The PSC's suggestion that the Nashville Healthcare Defendants are somehow responsible for the fact that there is only one death case still in the pool is ironic, considering that the PSC has effectively eliminated all of the no-disease cases from the bellwether pool—despite the facts that (i) these cases represent 24% of the STOPNC Patient census; (ii) the PSC voluntarily dismissed both of the no-disease cases selected by the Nashville Healthcare Defendants; and (iii) the PSC struck its own no-disease bellwether candidate (*Berry*).

[6] *Nashville Healthcare Defendants' Summary of Remaining Bellwether Candidates* (Docket #2660) (filed under seal) ("NHD Bellwether Proposal") at 4-5.

bellwether trial cases. That leaves three cases to fill the last two spots for the bellwether trial cases: *Brock*, *Parman*, and *Skelton*. *Brock* and *Parman* are the most representative of the remaining cases to round out the bellwether trial cases,[7] although if either of those cases were not selected by the Court, *Skelton* should be added to the list instead.

## ARGUMENT AND AUTHORITIES

The PSC asserts that the representativeness of bellwether candidates is to be determined by the questions of ultimate liability and damages. This position is not supported by any authority. To the contrary, selection of bellwether cases in a healthcare liability case like this litigation seeks out litigation variables focused on objective facts and type of injury. In the *Vioxx* cases, for example, the "major variables ultimately decided upon . . . were (1) the type of injury (heart attack, stroke, or other), (2) period of ingestion (short-term versus long-term), (3) age group (older or younger than sixty-five), (4) prior health history (previous cardiovascular injuries or not), and (5) date of injury (before or after a certain label change)." Eldon E. Fallon, Jeremy T. Grabill & Robert Pitard Wynne, *The Problem of Multidistrict Litigation: Bellwether Trials in Multidistrict Litigation*, 82 TUL. L. REV. 2323, 2345 (June 2008) [hereinafter Bellwether Trials].

Although the PSC later indicates the representative bellwether cases must have three additional characteristics that are more along the lines of Judge Fallon's *Vioxx* variables, two of the PSC's suggested variables are not appropriate limitations for the bellwethers in this litigation. First, the requirement that a plaintiff "have suffered a fungal infection," PSC's Bellwether Proposal at 3, is not applicable to several of the cases proposed by the parties because many of them were negative for fungal cultures. *See* NHD Bellwether Proposal at 1-3. Second, the notion that a case "not be bogged down by case-specific motion practice," PSC's Bellwether Proposal at 3, is also

---

[7] NHD Bellwether Proposal at 4-5.

unworkable.  It is not clear what "case-specific motion practice" the PSC is referencing, but one of the objectives of the bellwether process is to select cases that appear to be representative so that they can be fully worked up for trial—a process that includes both dispositive motions and *Daubert* challenges—so that the Court's rulings in the bellwether cases can be applied to a wider swath of the litigation.  This argument provides no basis for excluding representative candidates.

The *Reed* case should not be considered for the initial trials.  *Reed* was stricken in October 2015 (Docket #2337) because it is not representative of the other Nashville cases.  It is a death case involving a 52 year-old woman whose husband has ALS (Lou Gehrig's disease).  Ms. Reed received three cervical injections from Dr. Culclasure and spent 11 days at St. Thomas Hospital prior to her death.  Paradoxically, the PSC characterizes the remaining death case in the bellwether pool (*Temple*) as not representative, in part because "she died relatively early on in the meningitis catastrophe," PSC's Bellwether Proposal at 8, while at the same time ignoring that Ms. Reed died three days before Ms. Temple.  Moreover, the *Reed* case was stricken over four months ago and, considering the significant amount of time the parties have spent developing the other cases in the bellwether pool in the MDL—as well as the common and case-specific expert discovery yet to be completed—it is ill-advised to consider *Reed* at all.

## CONCLUSION AND PRAYER

For these additional reasons, the Saint Thomas Entities respectfully reurge the Court to select the following bellwether cases for the initial trials to be sequenced in the following order: (1) *Wray*; (2) *Brock*; (3) *Temple*; and (4) *Parman*.

Dated: March 8, 2016

SAINT THOMAS WEST HOSPITAL, FORMERLY KNOWN AS ST. THOMAS HOSPITAL, SAINT THOMAS NETWORK, AND SAINT THOMAS HEALTH

By their attorneys,
*/s/ Sarah P. Kelly*
Sarah P. Kelly (BBO #664267)
skelly@nutter.com
NUTTER McCLENNEN & FISH LLP
Seaport West
155 Seaport Boulevard
Boston, Massachusetts 02210
(617) 439-2000
(617) 310-9461 (FAX)

OF COUNSEL:

Yvonne K. Puig*
Texas State Bar No. 16385400
yvonne.puig@nortonrosefulbright.com
Adam T. Schramek*
Texas State Bar No. 24033045
adam.schramek@nortonrosefulbright.com
Eric J. Hoffman*
Texas State Bar No. 24074427
eric.hoffman@nortonrosefulbright.com

NORTON ROSE FULBRIGHT US LLP
98 San Jacinto Blvd. Suite 1100
Austin, Texas 78701
(512) 536-2450
(512) 536-4598 (FAX)

Marcy Hogan Greer*
State Bar No. 08417650
mgreer@adjtlaw.com

ALEXANDER DUBOSE JEFFERSON & TOWNSEND LLP
515 Congress Avenue, Suite 2350
Austin, Texas 78701-3562
(512) 482-9300
(512) 482-9303 (FAX)

*Appearing *Pro Hac Vice*

**CERTIFICATE OF SERVICE**

This certifies that a true and accurate copy of the foregoing was served on all parties of record through the Court's electronic filing system this 8th day of March, 2016.

*/s/ Sarah P. Kelly*
SARAH P. KELLY
