UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) ) ) ) ) ) ) | MDL No. 13-2419-RWZ |
| This Document Relates To:  Wray v. Ameridose, LLC, et al., No. 1:13-cv-12737 |  |  |

ORDER ON TENNESEE CLINIC DEFENDANTS'
MOTION FOR QUALIFIED PROTECTIVE ORDER
[Docket No. 50][1]

March 11, 2016

Boal, M.J.

The Tennessee Clinic Defendants[2] have moved for a qualified protective order allowing their attorneys to conduct <u>ex parte</u> interviews, outside of the presence of the plaintiffs[3] or their counsel, of Robert Ledford, M.D. and Lanny Turkewitz, M.D. Docket No. 50. Drs. Ledford and Turkewitz treated Ms. Wray for injuries allegedly caused by epidural steroid injections of methylprednisolone acetate ("MPA") at Saint Thomas Outpatient Neurosurgical Center ("STOPNC") on August 10, 2012 and August 31, 2012. Docket No. 51 at 2, 3. The plaintiffs

---

[1] Unless otherwise noted, citations to docket numbers are to the docket entries in <u>Wray v. Ameridose, LLC</u>, No. 13-cv-12737-RWZ. In the future, the parties are instructed to file all motions in the MDL docket, 13-md-2419.

[2] The "Tennessee Clinic Defendants" refers to Saint Thomas Outpatient Neurosurgical Center, LLC; Howell Allen Clinic, a Professional Corporation; John Culclasure, MD; Debra Schamberg, RN, CNOR; and Vaughan Allen, MD.

[3] The plaintiffs in this case are Jane R. Wray, a/k/a Beverly Jane Wray, and Gerald W. Wray.

1

oppose the motion.  Docket No. 55.[4]  On February 26, 2016, the Tennessee Clinic Defendants filed a reply.  Docket No. 63.  For the following reasons, the Court denies the motion.

I.    ANALYSIS

   A.    Tennessee Law

Tennessee law allows ex parte interviews of treating physicians under certain circumstances.  See Tenn. Code Ann. § 29-26-121(f) ("Section 121(f)").  Specifically, Section 121(f) provides:

> (f)(1) Upon the filing of any "healthcare liability action," as defined in § 29-26-101, the named defendant or defendants may petition the court for a qualified protective order allowing the defendant or defendants and their attorneys the right to obtain protected health information during interviews, outside the presence of the claimant or claimant's counsel, with the relevant patient's treating "healthcare providers," as defined by § 29-26-101.  Such petition shall be granted under the following conditions:
>
> (A) The petition must identify the treating healthcare provider or providers for whom the defendant or defendants seek a qualified protective order to conduct an interview;
>
> (B) The claimant may file an objection seeking to limit or prohibit the defendant or defendants or the defendant's or defendants' counsel from conducting the interviews, which may be granted only upon good cause shown that a treating healthcare provider does not possess relevant information as defined by the Tennessee Rules of Civil Procedure; and
>
> (C) (i) The qualified protective order shall expressly limit the dissemination of any protected health information to the litigation pending before the court and require the defendant or defendants who conducted the interview to return to the healthcare provider or destroy any protected health information obtained in the course of any such interview, including all copies, at the end of the litigation;

---

[4] The State of Tennessee sought permission to file a memorandum of law to respond to the plaintiffs' arguments that Tennessee law on the subject is preempted by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), which the Court granted.  Docket Nos. 56, 58. The State of Tennessee filed such memorandum of law on February 12, 2016.  Docket No. 59.  However, as explained below, the Court finds that the Tennessee law on this issue does not apply and it is therefore unnecessary to reach the preemption argument.

>> (ii) The qualified protective order shall expressly provide that participation in any such interview by a treating healthcare provider is voluntary.

Tenn. Code Ann. § 29-26-121(f)(1). The Tennessee Clinic Defendants argue that Section 121(f) applies in this case and allows the requested order. Docket No. 51 at 5-10. The Court disagrees.

"Federal courts exercising jurisdiction over state law claims—whether diversity jurisdiction, pendent jurisdiction, or related-to bankruptcy jurisdiction—generally apply state law to substantive issues, but federal law to matters of procedure." In re New England Compounding Pharmacy, Inc., MDL No. 13-02419-RWZ, 2014 WL 6676061, at *3 (D. Mass. Nov. 25, 2014) (citations omitted). "Where the state law in question directly conflicts with a federal procedural rule, the court must apply the federal rule unless it is unconstitutional." Id. (citation omitted).

Section 121(f) is procedural, not substantive. Section 121(f) governs the procedure by which defendants in a healthcare liability action may obtain relevant health protected information. Although no federal procedural rule explicitly allows or prohibits such ex parte interviews, Section 121(f) conflicts with Rule 26(c) of the Federal Rules of Civil Procedure in that it mandates the entry of a qualified protective order if certain conditions are met, abrogating a federal court's discretion to grant protective orders and to manage the procedure and content of discovery.

The Tennessee Clinic Defendants argue that Section 121(f) is applicable under Rule 501 of the Federal Rules of Evidence, which provides that "state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Docket No. 51 at 9 (citing Fed. R. Evid. 501). However, choice of law in this case and on this issue is not governed by Rule 501 because no evidentiary privilege is involved: Tennessee law does not create an evidentiary physician-patient privilege. See Wade v. Vabnick-Wener, M.D., 922 F. Supp. 2d

3

679, 695 n. 6 (W.D. Tenn. 2010); see also Evertson v. Dalkon Shield Claimants Trust, No. 82-1021-MLB, 1993 WL 245972, at *1 (D. Kan. Jun. 2, 1993) ("The *method* for discovering unprivileged material—whether by written interrogatories, requests for admissions, deposition, or *ex parte* interviews—is entirely a matter of procedure governed by the Federal Rules of Civil Procedure.") (emphasis in original).  Accordingly, the Court finds that Section 121(f) has no application in this case.

      B.      Whether The Court Should Enter A Protective
             Order Allowing The Interviews Under Rule 26

No federal procedural rule explicitly permits or prohibits ex parte interviews between defendants and plaintiff's treating physicians.  Filz v. Mayo Found., 136 F.R.D. 165, 173 (D. Minn. 1991).  Federal courts are split on this issue.  Many have held that a defendant is entitled to conduct such interviews.  Weiss v. Astellas Pharma, US, Inc., No. 05-527-JMH, 2007 WL 2137782, at *4 (E.D. Ky. July 23, 2007) (collecting cases) (allowing interview but only if physician was willing).  Those courts have reasoned, among other things, that treating physicians are important fact witnesses and "[a]bsent a privilege, no party is entitled to restrict an opponent's access to a witness, however partial or important to him." Id. at *5 (citations omitted).  In addition, interviews are generally less burdensome and less expensive than formal depositions.  Id.

Other courts have condemned the practice of ex parte interviews of treating physicians. See Doe v. City of Chicago, No. 96 C 5739, 1998 WL 386352, at *2 (N.D. Ill. July 7, 1998) (quoting Horner v. Rowan Cos., 153 F.R.D. 597 (S.D. Tex. 1994) (collecting cases)).  Those courts have observed that "when a treating physician is interviewed ex parte by defense counsel, there are no safeguards against the revelation of matters irrelevant to the lawsuit and personally damaging to the patient, and the potential for breaches in confidentiality can have a chilling

effect upon the critically important underlying relationship." Id. at *3. Further, ex parte interviews may create situations which invite questionable conduct. Id.

Yet other courts have concluded that, post-HIPAA, "[t]he strong policy underlying HIPAA would appear to trump the reasoning of those pre-HIPAA decisions that allowed defense counsel *ex parte* access to plaintiff's treating physicians, finding it unfair to 'permit plaintiff's counsel unrestricted access to these crucial witnesses while denying defense counsel the same.'" E.E.O.C. v. Boston Market Corp., No. CV 03-4227 LDW WDW, 2004 WL 3327264, at *6 (Dec. 16, 2004) (citation omitted).

The Court agrees with the reasoning of those courts that have concluded that ex parte interviews of treating physicians should not be allowed. Requiring the Tennessee Clinic Defendants to obtain the plaintiffs' relevant protected medical information through formal discovery proceedings "strikes an appropriate balance between the parties' ability to obtain all relevant information and the patient's right to have irrelevant medical information remain confidential." Piehl v. Saheta, M.D., No. CCB-13-254, 2013 WL 2470128, at *3 (D. Md. June 5, 2013).

II.   ORDER

For the foregoing reasons, the Court denies the Tennessee Clinic Defendants' motion for a qualified protective order.

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge