EXHIBIT "A"

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

IN RE: NEW ENGLAND
COMPOUNDING PHARMACY,
INC. PRODUCTS LIABILITY      MDL No. 2419
LITIGATION
                             Master Dkt:
                             1:13-md-02419-RWZ
~~~~~~~~~~~~~~~~~~~~~
THIS DOCUMENT RELATES
TO:


All Actions


~~~~~~~~~~~~~~~~~~~~~~~~



VIDEOTAPED DEPOSITION OF
SCOTT BUTLER


9:03 a.m.
February 5, 2015



Suite 1100
315 Deaderick Street
Nashville, Tennessee



Blanche J. Dugas, RPR, CCR No. B-2290

```
 1                APPEARANCES OF COUNSEL

 2

     On Behalf of the Plaintiffs:
 3       GEORGE NOLAN, Esquire
         WILLIAM LEADER, Esquire
 4       Leader, Bulso & Nolan, PLC
         Suite 1740
 5       414 Union Street
         Nashville, Tennessee  37219-1734
 6       (615) 780-4114
         (615) 780-4122 (facsimile)
 7       gnolan@leaderbulso.com
         bleader@leaderbulso.com
 8
         J. GERARD STRANCH, IV, Esquire
 9       Branstetter, Stranch & Jennings, PLLC
         227 Second Avenue North
10       Nashville, Tennessee  37201
         (615)254-8801
11       gerards@branstetterlaw.com

12       MARK P. CHALOS, Esquire
         Lieff, Cabraser, Heimann & Bernstein, LLP
13       Suite 1650, One Nashville Place
         150 Fourth Avenue
14       Nashville, Tennessee  37219-2423
         (615) 313-9000
15       (615) 313-9965 (facsimile)
         mchalos@lchb.com
16
         DANIEL L. CLAYTON, Esquire
17       Kinnard, Clayton & Beveridge
         127 Woodmont Boulevard
18       Nashville, Tennessee  37205
         (615) 686-2501
19       (615) 297-1505 (facsimile)
         dclayton@kcbattys.com
20

21

22

23

24

25
```

```
 1                ~~ APPEARANCES CONTINUED ~~

 2   On Behalf of Saint Thomas Outpatient Neurosurgical
     Center, LLC; Howell Allen, a Professional Corporation;
 3   John W. Culclasure, M.D.; Debra V. Schamberg, RN:
            CLARENCE J. "C.J." GIDEON, JR., Esquire
 4          MATTHEW CLINE, Esquire
            CHRISTOPHER TARDIO, Esquire
 5          Gideon, Cooper & Essary, PLC
            Suite 1100
 6          315 Deaderick Street
            Nashville, Tennessee 37238
 7          (615) 254-0400
            cj@gideoncooper.com
 8          matt@gideoncooper.com
            chris@gideoncooper.com
 9
     On Behalf of St. Thomas Health; St. Thomas Network;
10   St. Thomas West Hospital f/k/a St. Thomas Hospital:
            ERIC J. HOFFMAN, Esquire
11          ADAM T. SCHRAMEK, Esquire
            Norton, Rose, Fulbright
12          Suite 1100
            98 San Jacinto Boulevard
13          Austin, Texas 78701
            (512) 536-5232
14          adam.schramek@nortonrosefulbright.com
            eric.hoffman@nortonrosefulbright.com
15
            AMY D. HAMPTON, Esquire
16          Bradley, Arant, Boult & Cummings, LLP
            Suite 700, Roundabout Plaza
17          1600 Division Street
            Nashville, Tennessee  37203
18          (615) 244-2582
            (615) 252-6379 (facsimile)
19          ahampton@babc.com

20   On Behalf of Premier Orthopaedic & Sports Medicine
     Associates of Southern New Jersey, LLC d/b/a Premier
21   Orthopaedic & Sports Associates, LLC; Premier
     Orthopaedic Associates Surgical Center, LLC:
22          JAY J. BLUMBERG, Esquire
            Blumberg & Wolk, LLC
23          158 Delaware Street
            Woodbury, New Jersey 08096
24          (856) 848-7472
            (856) 848-8012 (facsimile)
25          jjblumberg@blumberglawoffices.com
```

```
 1              ~~ APPEARANCES CONTINUED ~~

 2   On Behalf of UniFirst Corporation:
          JIM REHNQUIST, Esquire
 3        KATE E. MACLEMAN, Esquire
          Goodwin Procter, LLP
 4        53 State Street, Exchange Place
          Boston, Massachusetts 02109
 5        (617) 570-1000
          (617) 523-1231 (facsimile)
 6        jrehnquist@goodwinprocter.com
          kmacleman@goodwinprocter.com
 7

 8   On Behalf of Specialty Surgery Center - Crossville,
     PLLC; Kenneth R. Lister, M.D.; Kenneth R. Lister,
 9   M.D., PC:
          MEGAN A. CARRICK, Esquire
10        Brewer, Krause, Brooks, Chastain & Burrow, PLLC
          Suite 2600
11        611 Commerce Street
          Nashville, Tennessee  37203
12        (615)256-8787
          (615)256-8985 (facsimile)
13        mcarrick@bkblaw.com

14
       * The Following Attorneys Appeared Via Video Stream *
15
          CLARE CARROLL, Esquire
16        McCarthy, Bouley & Barry, PC
          47 Thorndike Street
17        Cambridge, Massachusetts   02141
          (617) 225-2211
18        (617) 225-7711 (facsimile)
          cfc@mbblaw.com
19
          REBECCA BLAIR, Esquire
20        The Blair Law Firm
          Suite 207
21        5214 Maryland Way
          Brentwood, Tennessee   37027
22        (615) 515-4492
          rblair@blair-law.com
23

24

25
```

```
 1              ~~ APPEARANCES CONTINUED ~~

 2         DUSTIN CLINT DANIEL, Esquire
           Schulman, LeRoy & Bennett, PC
 3         7th Floor
           501 Union Street
 4         Nashville, Tennessee  37219-0676
           (615) 244-6670
 5         (615) 254-5407 (facsimile)
           ddaniel@slblawfirm.com
 6
           KATHERINE DENNIS, Esquire
 7         Capplis, Connors & Carroll, PC
           Suite 220
 8         18 Tremont Street
           Boston, Massachusetts  02108
 9         (617) 227-0722

10         MELISSA HOWARD, Esquire
           Leader, Bulso & Nolan, PLC
11         Suite 1740
           414 Union Street
12         Nashville, Tennessee  37219-1734
           (615) 780-4114
13         (615) 780-4122 (facsimile)
           mhoward@leaderbulso.com
14
           BRANDON KULWICKI, Esquire
15         Stewart, Courington, Dugger & Dean
           Suite 200
16         1701 N. Market Street
           Dallas, Texas  75202
17         (214) 615-2025
           (214) 615-2001 (facsimile)
18         brandon@scddlaw.com

19         J. KYLE ROBY, Esquire
           English, Lucas, Priest & Owsley, LLP
20         1101 College Street
           Bowling Green, Kentucky  42102-0770
21         (270) 782-6500
           (270) 782-7782 (facsimile)
22         kroby@elpolaw.com

23

24

25
```

```
 1              ~~ APPEARANCES CONTINUED ~~

 2       LOUIS W. VOELKER, Esquire
         Eichhorn & Eichhorn, LLP
 3       200 Russell Street
         Hammond, Indiana   46320
 4       (219) 931-0560
         lvoelker@eichhorn.com
 5
         MARK ZAMORA, Esquire
 6       The Orlando Firm, PC
         Suite 2600
 7       5 Concourse Parkway
         Atlanta, Georgia   30328
 8       (404) 373-1800
         mark@markzamora.com
 9
         JEREMY CAIN, Esquire
10       Gideon, Cooper & Essary, PLC
         Suite 1100
11       315 Deaderick Street
         Nashville, Tennessee   37238
12       (615) 254-0400
         jeremy@gideoncooper.com
13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    Q.    Well, what is your understanding of the
2   purpose that St. Thomas and Howell Allen Clinic had
3   operated St. Thomas Surgical since you were involved
4   beginning in 2007?
5    A.    Since I've been involved, it's been
6   operating as a surgery center that does epidural
7   steroid injections, blocks.
8    Q.    Okay.  And as I understand it, the
9   ownership of that entity is shared equally between St.
10  Thomas and Howell Allen Clinic; is that correct?
11   A.    Yes.
12   Q.    But the profits from that entity are
13  distributed equally; is that correct?
14   A.    Yes.
15   Q.    And it is a for-profit entity?
16   A.    Yes.
17   Q.    And the profits are calculated after
18  expenses are paid; is that correct?
19   A.    Yes.
20   Q.    So that expenses are likewise shared
21  between the venturers; is that true?
22   A.    Yes.
23   Q.    And at the time of the meningitis outbreak,
24  who were the St. Thomas Neurosurgical board members?
25   A.    Myself, Greg Lanford, Dale Batchelor and

1    A.    I think depending on what -- what it is,
2  yes.
3    Q.    And what was the purpose for having
4  representatives of St. Thomas on the St. Thomas
5  Neurosurgical board?
6    A.    Because they own 50 percent of the -- of
7  the surgery center.
8    Q.    Okay.  Would I be correct in understanding
9  that both Howell Allen Clinic and St. Thomas -- and
10 St. Thomas had an equal right to control St. Thomas
11 Neurosurgical because their representation on the
12 board was equal?
13         MR. HOFFMAN:  Objection to form.
14         THE WITNESS:  I'm not sure what
15    you're asking.
16   Q.    (By Mr. Nolan)  Sure.  The board
17 representation for Howell Allen and St. Thomas was
18 equal, each side had two members on the board for a
19 total of four; is that correct?
20   A.    Yes.
21   Q.    All right.  So both members of the joint
22 venture had equal control as far as the venture itself
23 was concerned.  You'll agree with that?
24   A.    Yes.
25   Q.    Let's look back at the e-mail, which is

1          identification.)

2     Q.      (By Mr. Nolan)  Let me hand you a document
3  we'll make Exhibit No. 65, and it's found at
4  STOPNC_0256 it's titled "St. Thomas Outpatient
5  Neurosurgical Center infection prevention and control
6  plan."  Does this appear to be part of St. Thomas
7  Neurosurgical's policies and procedures?

8     A.      Appears to be.

9     Q.      Okay.

10            MR. GIDEON:  May I see the document?

11    Q.      (By Mr. Nolan)  And the first sentence
12 reads, "St. Thomas Outpatient Neurosurgical Center is
13 an ambulatory care center that is part of the Howell
14 Allen Clinic specialty clinic treating disorders of
15 the brain and spine."

16            Have I read that correctly?

17    A.      Yes.

18    Q.      Is that a true statement?

19    A.      No.

20    Q.      And why do you say no?

21    A.      Because I think that anything that's part
22 of the Howell Allen Clinic is something that we would
23 own exclusively, not something that would be a joint
24 venture between two parties.

25    Q.      All right.  Now, I understand that Dr. John

1  Culclasure is the medical director of St. Thomas

2  Neurosurgical; correct?

3       A.      Correct.

4       Q.      He was at the time of the outbreak; true?

5       A.      True.

6       Q.      He also was an employee of Howell Allen

7  Clinic; is that correct?

8       A.      Yes.

9       Q.      And what were his responsibilities as an

10 employee of Howell Allen Clinic?

11      A.      To take care of patients referred to him

12 from within our group for pain management, epidural

13 steroid injections, kyphoplasty, several different

14 interventional pain procedures that he does to take

15 care of our patients.

16      Q.      Okay.  But in doing that, did he report to

17 the St. Thomas Neurosurgical board?

18      A.      You mean, like, who is his supervisor?

19      Q.      Right.

20      A.      I would say Greg Lanford would be his -- I

21 would -- I would think -- if there's a problem with

22 John, it would have -- it would be directed to Greg

23 before it would be to the St. Thomas board.

24      Q.      Okay.  All right.  But ultimately would the

25 St. Thomas board have supervisory authority over Dr.

1      A.      Yes.

2      Q.      And when Debra came on as the facility

3 director, did Tina stay within the Howell Allen

4 family, so to speak, after that?

5      A.      No.  I think she stayed around maybe for a

6 little while to work with Debra, but I don't -- she

7 didn't stay.  She left for another job, so I don't

8 know if she did -- if Debra spent any time with her or

9 not.

10     Q.      So she left STOPNC for another job --

11     A.      Correct.

12     Q.      -- voluntarily?

13     A.      Yes.

14     Q.      Do you know what the immediate next job

15 that she went to after leaving STOPNC was?

16     A.      I don't know.  I -- I don't know.

17     Q.      Who owned or leased the office space at

18 which STOPNC operated?

19     A.      I think the lease was -- I'm not sure if --

20 it's either all under Howell Allen and we -- the cost,

21 you know, STOPNC pays for the 9th floor.  Howell Allen

22 pays for the 8th floor.  I don't think it's two

23 separate leases.  I think it's just one lease.

24     Q.      And the name of the tenant on the lease is

25 Howell Allen, PC?

Page 167

1     A.     Either Howell Allen or Neurological

2 Services because we've been in that office for --

3 prior -- before the name change and continue to be in

4 that office now.

5     Q.     And the financial report that you were

6 shown earlier has an expense for STOPNC of -- I

7 believe it was something like rentals and repairs. Do

8 you remember that?

9     A.     Uh-huh (affirmative).

10     Q.     And that would have been what was allocated

11 to STOPNC for the -- their portion of the lease?

12     A.     Yes, if it went into that category. Yes.

13         MR. REHNQUIST: I've got nothing

14   else. Thanks.

15         THE WITNESS: Thank you.

16         MR. GIDEON: George, do you have any

17   followup?

18         MR. NOLAN: I do.

19 FURTHER EXAMINATION

20 BY MR. NOLAN:

21     Q.     If you look at the large collective exhibit

22 that we spent some time with on Page 41. There's an

23 e-mail exchange between you and Mr. Polkow in which he

24 inquires about a report from the state that apparently

25 he was expecting and you were expecting. Do you see

```
 1                     DISCLOSURE
 2
              Pursuant to Article 10.B of the Rules
 3       and Regulations of the Board of Court
         Reporting of the Judicial Council of
 4       Georgia which states:  "Each court reporter
         shall tender a disclosure form at the time
 5       of the taking of the deposition stating the
         arrangements made for the reporting
 6       services of the certified court reporter,
         by the certified court reporter, the court
 7       reporter's employer or the referral source
         for the deposition, with any party to the
 8       litigation, counsel to the parties, or
         other entity.  Such form shall be attached
 9       to the deposition transcript," I make the
         following disclosure:
10
              I am a Georgia Certified Court
11       Reporter.  I am here as a representative of
         Discovery Litigation Services, LLC.
12       Discovery Litigation Services, LLC was
         contacted to provide court reporting
13       services for the deposition.  Discovery
         Litigation Services, LLC will not be taking
14       this deposition under any contract that is
         prohibited by O.C.G.A. 9-11-28(c).
15
              Discovery Litigation Services, LLC
16       has no contract/agreement to provide
         reporting services with any party to the
17       case, any counsel in the case, or any
         reporter or reporting agency from whom a
18       referral might have been made to cover this
         deposition.
19
              Discovery Litigation Services, LLC
20       will charge its usual and customary rates
         to all parties in the case, and a financial
21       discount will not be given to any party to
         this litigation.
22

23
                                Blanche J. Dugas
24                              CCR No. B-2290
25
```

1  STATE OF GEORGIA:

2  COUNTY OF FULTON:

3

4         I hereby certify that the foregoing

5     transcript was reported, as stated in the

6     caption, and the questions and answers

7     thereto were reduced to typewriting under

8     my direction; that the foregoing pages

9     represent a true, complete, and correct

10    transcript of the evidence given upon said

11    hearing, and I further certify that I am

12    not of kin or counsel to the parties in the

13    case; am not in the employ of counsel for

14    any of said parties; nor am I in any way

15    interested in the result of said case.

16

17 February 10, 2015.

18

19

20           BLANCHE J. DUGAS, CCR-B-2290

21

22

23

24

25