EXHIBIT "B"

```
            UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF MASSACHUSETTS

IN RE: NEW ENGLAND            )
COMPOUNDING PHARMACY,         ) MDL No. 2419
INC. PRODUCTS LIABILITY       ) Master Docket No.:
LITIGATION                    ) 1:13-md-2419-RWZ
                              )
THIS DOCUMENT RELATES TO:     ) Honorable Rya W. Zobel
All Actions                   )
_____)
```

VIDEOTAPED DEPOSITION OF:

SCOTT BUTLER

Taken on behalf of the Plaintiffs

September 17, 2015

_____

DISCOVERY LITIGATION SERVICES
100 Mayfair Royal
181 14th Street, NE
Atlanta, Georgia 30309
404.847.0999

```
 1   APPEARANCES:

 2   For the Plaintiffs:
              BENJAMIN A. GASTEL, ESQ.
 3            RAQUEL L. BELLAMY, ESQ.
              Branstetter, Stranch & Jennings, PLLC
 4            223 Rosa L. Parks Avenue
              Suite 200
 5            Nashville, Tennessee 37203
              615-254-8801
 6            beng@bsjfirm.com
              raquelb@bsjfirm.com
 7
              DANIEL L. CLAYTON, ESQ.
 8            Kinnard, Clayton & Beveridge
              127 Woodmont Boulevard
 9            Nashville, Tennessee 37205
              615-297-1007
10            dclayton@kcbattys.com

11   For Saint Thomas Hospital, Saint Thomas Health, and
     Saint Thomas Network:
12            ADAM T. SCHRAMEK, ESQ.
              Norton Rose Fulbright
13            98 San Jacinto Boulevard
              Suite 1100
14            Austin, Texas 78701-4255
              512-474-5201
15            adam.schramek@nortonrosefulbright.com

16             AMY D. HAMPTON, ESQ.
               Bradley Arant Boult Cummings, LLP
17             1600 Division Street
               Suite 700
18             Nashville, Tennessee 37203
               615-252-2379
19             ahampton@babc.com

20   For Specialty Surgery Center and Kenneth R. Lister, M.D.
              ASHLEY E. GENO, ESQ.
21            Brewer, Krause, Brooks, Chastain & Burrow,
              PLLC
22            611 Commerce Street
              Suite 2600
23            Nashville, Tennessee 37203
              615-256-8787
24            ageno@bkblaw.com

25
```

```
 1    APPEARANCES:

 2    For Howell Allen, a Professional Corporation; Saint
         Thomas Outpatient Neurosurgical Center, LLC; and
 3       Scott Butler:
                 MATTHEW CLINE, ESQ.
 4               C.J. GIDEON, JR., ESQ.
                 CHRISTOPHER TARDIO, ESQ.
 5               Gideon, Cooper & Essary, PLC
                 315 Deaderick Street
 6               Suite 1100
                 Nashville, Tennessee 37238
 7               615-254-0400
                 matt@gideoncooper.com
 8               cj@gideoncooper.com
                 chris@gideoncooper.com
 9

10       *The following attorneys appeared via video stream*

11    For Defendants Ocean State Pain Management, PC, and
         Abdul R. Barakat, M.D.:
12               THOMAS M. DOLAN, III, ESQ.
                 Capplis, Connors & Carroll, PC
13               18 Tremont Street
                 Suite 330
14               Boston, Massachusetts 02108
                 617-227-0722
15               tdolan@ccclaw.org

16    For Tim I. Chowdhury, M.D.:
                 BARTHOLOMEW T. FREEZE, ESQ.
17               Freund, Freeze & Arnold
                 65 East State Street
18               Suite 800
                 Columbus, Ohio 43215-4247
19               614-827-7300
                 bfreeze@ffalaw.com
20
      For a Defendant Party:
21               HEATHER KANNY, ESQ.
                 Fraley & Fraley, LLP
22               901 Main Street
                 Suite 6300
23               Dallas, Texas 75202
                 214-761-6460
24               hkanny@fraley-law.com

25
```

```
 1    APPEARANCES:

 2    For Advanced Pain & Anesthesia Consultants, PC; BKC Pain
         Specialists; and Cincinnati Pain Management
 3       Consultants, Inc.:
                 STEPHEN J. ORLANDO, ESQ.
 4               Morrison Mahoney, LLP
                 250 Summer Street
 5               Boston, Massachusetts 02210
                 617-439-7595
 6               sorlando@morrisonmahoney.com

 7    Also Present:
                  PAMELA P. WILLIS, TLCR NO. 229
 8                Discovery Litigation Services
                  100 Mayfair Royal
 9                181 14th Street NE
                  Atlanta, Georgia 30309
10                404.847.0999

11
      The Videographer:
12              MICHAEL MITCHELL
                VCE Legal Videography
13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1   Q.       When you say "response to plaintiffs," I assume
 2   that there's an official title in that document.  Can
 3   you please...
 4   A.       Purchases from Compounding Pharmacies.
 5                MR. TARDIO:  He's asking for this one.
 6                THE WITNESS:  This one?
 7                MR. TARDIO:  Yeah, the number.
 8                THE WITNESS:  Howell Allen Response and
 9   Supplemental Response to Plaintiffs' ROG No. 2.
10   BY MR. GASTEL:
11   Q.       Thank you, sir.
12            How many employees does the center have?
13   A.       About -- about 20.
14   Q.       And how many of those 20 are what would be
15   considered clinical employees?
16   A.       I don't know.  Any answer I gave you would be
17   guessing.
18   Q.       Are the centers -- are all 20 of the center's
19   employees also Howell Allen employees?
20   A.       Yes.
21   Q.       Dr. Culclasure is a Howell Allen employee?
22   A.       Yes.
23   Q.       Ms. Schamberg is a Howell Allen employee?
24   A.       Yes.
25   Q.       Who is Debra Schamberg's direct supervisor?
```

1   A.      Me.
2   Q.      Who is John Culclasure's direct supervisor?
3   A.      Greg Lanford, who is the president of Howell
4   Allen.
5   Q.      Apart from Ms. Schamberg's work with the
6   center, does she have an additional role at Howell Allen
7   Clinic?
8   A.      No.
9   Q.      Apart from Dr. Culclasure's role with the
10  center, does he have -- does he have any role with
11  Howell Allen?
12  A.      I mean, he -- he performs procedures at other
13  facilities.
14  Q.      At other Howell Allen facilities?
15  A.      No, at other hospitals.
16  Q.      And he does that as an employee of Howell
17  Allen?
18  A.      I mean, he does that as a surgeon taking care
19  of patients who -- it's billed through Howell Allen, so
20  yes, it's...
21  Q.      So when Dr. Culclasure goes to another facility
22  and performs surgery, Howell Allen takes care of his
23  billing?
24  A.      Yes.
25  Q.      Do you know what other facilities

1  A.          I don't know.

2  Q.          For the non-Howell Allen employee physicians

3  that perform clinical services at the Saint Thomas

4  Center, are there any of those physicians who are not

5  affiliated with Comprehensive Pain Specialists?

6  A.          Yes.

7  Q.          Do you know who they are, sir?

8  A.          Currently?

9  Q.          Let's limit it to the period of 2011 to 2012.

10 A.          No.  I believe, during that time period, they

11 were all Comprehension Pain physicians.

12 Q.          You anticipated my next question.  Thank you.

13             Saint Thomas Center is organized as a

14 for-profit entity under Tennessee law, correct?

15 A.          Yes.

16 Q.          Do you know what kind of corporate entity they

17 are, sir?

18 A.          LLC.

19 Q.          And who owns the Saint Thomas Center?

20 A.          It's 50 percent owned by Howell Allen Clinic

21 and 50 percent owned by Saint Thomas Network.

22 Q.          And how long has that ownership structure been

23 in place?

24 A.          Since 2000.

25 Q.          And is Howell Allen organized as a for-profit

1  entity under Tennessee law?
2  A.      Yes.
3  Q.      And what kind of corporate entity is it, sir?
4  A.      PC.
5  Q.      It's a professional corporation?
6  A.      Yes.
7  Q.      And how long has Howell Allen been organized as
8  a professional corporation?
9  A.      I don't know.
10 Q.      How long have you been the chief administrative
11 officer of Howell Allen?
12 A.      Since 2007.
13 Q.      Has it been organized as a professional
14 for-profit professional corporation since you have been
15 in that role?
16 A.      It was.  It was an S Corp for a few years, but
17 I'm not sure of the time period.
18 Q.      I'll hand you a document that we'll mark as
19 Exhibit 594.
20              (Exhibit No. 594 was marked.)
21              MR. GASTEL:  I'm sorry, but I wrote very
22 briefly on one of those copies.  You guys can fight over
23 who wants my note.
24 BY MR. GASTEL:
25 Q.      Are you familiar with this document, sir?

```
 1   A.         Yes.
 2   Q.         What is this document?
 3   A.         The services agreement between Neurological
 4   Surgeons and Saint Thomas Outpatient Neurosurgical
 5   Center.
 6   Q.         And is Neurological Surgeons the -- the
 7   predecessor to Howell Allen Clinic?
 8   A.         Yes.
 9   Q.         Do you know when Neurosurgical [sic] Surgeons
10   became Howell Allen Clinic?
11   A.         I believe 2006.
12   Q.         Apart from some addendums, which we'll get into
13   here in a second, has there been any other changes to
14   what I would consider the sort of substantive terms as
15   they appear on Page 1 through 10 of this document?
16   A.         Not to my knowledge.
17   Q.         Will you flip back to the last page of this
18   exhibit, sir.
19   A.         (Witness complies.)
20   Q.         Do you see that it's signed on behalf of
21   Mark Mason?
22   A.         Yes.
23   Q.         Do you know Mr. Mason?
24   A.         Yes.
25   Q.         Who is Mr. Mason?
```

1  mark as Collective Exhibit 595, I believe?
2             COURT REPORTER: Yes.
3             (Exhibit No. 595 was marked.)
4             MR. GASTEL: And just for the other
5  attorneys in the room, the exhibit -- there's three
6  sheets of paper being passed. The collective exhibit is
7  the three sheets.
8  BY MR. GASTEL:
9  Q.      Are you familiar with those documents, sir?
10 A.      Yes.
11 Q.      Are those the three addendums to the services
12 agreement dated August 25th, 2000?
13 A.      Yes.
14 Q.      And these were the three addendums that you
15 just talked about.
16 A.      Yes.
17 Q.      And I believe that there was --
18 A.      I don't -- I'm not -- I don't think these are
19 the most current addendums.
20 Q.      I believe that there are some from 2007.
21 A.      Yes.
22 Q.      I'm going to hand you a document that we'll
23 mark as Exhibit 596 now, sir.
24            (Exhibit No. 596 was marked.)
25                     * * *

```
 1    BY MR. GASTEL:
 2    Q.         Are you familiar with this document, sir?
 3    A.         Yes.
 4    Q.         Are these the 2007 addendums to the services
 5    agreement?
 6    A.         Yes.
 7    Q.         Are these the ones that were effective in 2012?
 8    A.         Yes.
 9    Q.         So between 2000 and 2007, was there any
10    additional addendums to the services agreement?
11    A.         No.
12    Q.         So they were -- there was one, essentially,
13    that was put in place at the time that the services
14    agreement went into effect, correct?
15    A.         Yes.
16    Q.         And that was Exhibit 595?
17    A.         Yes.
18    Q.         And then there was an additional update in
19    2007, and that's Exhibit 596.
20    A.         (Nods head up and down.)
21    Q.         Correct?
22    A.         Yes.
23    Q.         I'll remind you to give a verbal answer.  The
24    court reporter --
25    A.         Okay.
```

1  Q.      How often does the board meet?

2  A.      Quarterly.

3  Q.      Generally, do all four board members show up at
4  the board meetings?

5  A.      Yes.

6  Q.      Who else attends board meetings?

7  A.      Debra Schamberg, John Culclasure, and Jennifer
8  Hendricks.

9  Q.      Who is Ms. Hendricks?

10 A.      She's the accounting representative from Saint
11 Thomas Health, Saint Thomas Network.

12 Q.      Was she attending board meetings in 2012?

13 A.      Yes.

14 Q.      To the best of your recollection, has she
15 attended all board meetings from 2011 to present?

16 A.      I don't know.

17 Q.      Do the board meeting minutes show who attends
18 the board meetings?

19 A.      Yes.

20 Q.      Who is responsible -- in 2012 who was
21 responsible for keeping board minutes?

22 A.      Debra Schamberg.

23 Q.      Is that true today?

24 A.      Yes.

25 Q.      I believe that you had previously identified

1   Q.       And -- and we heard earlier today that the
2   Howell Allen Clinic employs yourself, Ms. Schamberg, and
3   Dr. Culclasure, right?
4   A.       Yes.
5   Q.       And isn't it true that neither Saint Thomas
6   Health, Saint Thomas Hospital, nor the Saint Thomas
7   Network employed anyone working at STOPNC in 2012?
8   A.       Correct.
9   Q.       And the responsibility for purchasing, I think,
10  as we learned in prior depositions, that was done by
11  Ms. Schamberg in consultation with Dr. Culclasure,
12  right?
13  A.       Yes.
14  Q.       Both of those are Howell Allen employees,
15  right?
16  A.       Yes.
17  Q.       And if you believed there was an issue that
18  needed to be presented to the board for discussion or
19  decision, would you bring that to the board?
20  A.       Yes.
21             MR. GASTEL:  Objection to the form.
22  BY MR. SCHRAMEK:
23  Q.       And the issue of whether to start purchasing
24  from NECC, that was an issue that was never presented to
25  the STOPNC board, never listed on any agenda for

1  discussion or decision, right?

2  A.      Correct.

3  Q.      And, similarly, the issue of whether to start

4  using a compounding pharmacy as an additional source of

5  medication, that was never brought to the STOPNC Board

6  for any discussion or decision, right?

7  A.      Correct.

8  Q.      And isn't it true that neither STOPNC, nor the

9  Howell Allen Clinic is aware of any of the board members

10 that were appointed by Network having knowledge prior to

11 the outbreak that STOPNC was making purchases from a

12 compounding pharmacy or was using NECC as a source for

13 medication?

14          MR. GASTEL:  Objection to form.

15          THE WITNESS:  Correct.

16 BY MR. SCHRAMEK:

17 Q.      And isn't it also true that neither STOPNC, nor

18 Howell Allen Clinic, is aware of any employee of Saint

19 Thomas Health, Saint Thomas Hospital, or the Saint

20 Thomas Network of having knowledge prior to the outbreak

21 that STOPNC was using NECC as a source for medication?

22 A.      Correct.

23 Q.      The last thing I want to ask you about is

24 Exhibit 517, which is the BlueSelect Network ASC

25 attachment to the BlueSelect --