EXHIBIT "C"

```
            UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF MASSACHUSETTS


IN RE: NEW ENGLAND
COMPOUNDING PHARMACY,
INC. PRODUCTS LIABILITY     MDL No. 2419
LITIGATION
                            Master Dkt:
                            1:13-md-02419-RWZ
~~~~~~~~~~~~~~~~~~~~~
THIS DOCUMENT RELATES
TO:


All Actions


~~~~~~~~~~~~~~~~~~~~~~~~



              VIDEOTAPED DEPOSITION OF
              MICHAEL SCHATZLEIN, M.D.


                    9:05 a.m.
                  April 6, 2015



                   Suite 700
               1600 Division Street
              Nashville, Tennessee



        Blanche J. Dugas, RPR, CCR No. B-2290
```

```
 1                  APPEARANCES OF COUNSEL

 2   On Behalf of the Plaintiffs:
            GEORGE NOLAN, Esquire
 3          Leader, Bulso & Nolan, PLC
            414 Union Street - Suite 1740
 4          Nashville, Tennessee  37219-1734
            (615) 780-4114
 5          (615) 780-4122 (facsimile)
            gnolan@leaderbulso.com
 6
            MARK P. CHALOS, Esquire
 7          Lieff, Cabraser, Heimann & Bernstein, LLP
            Suite 1650, One Nashville Place
 8          150 Fourth Avenue
            Nashville, Tennessee  37219-2423
 9          (615) 313-9000
            (615) 313-9965 (facsimile)
10          mchalos@lchb.com

11          BENJAMIN A. GASTEL, Esquire
            Branstetter, Stranch & Jennings, PLLC
12          227 Second Avenue North, Fourth Floor
            Nashville, Tennessee  37201
13          (615) 254-8801
            (615) 250-3937 (facsimile)
14          gerards@bsjfirm.com

15   On Behalf of St. Thomas Outpatient Neurosurgical
     Center, LLC; Howell Allen, a Professional Corporation;
16   John W. Culclasure, M.D.; Debra V. Schamberg, RN:
            CHRISTOPHER TARDIO, Esquire
17          MATTHEW CLINE, Esquire
            Gideon, Cooper & Essary, PLC
18          315 Deaderick Street - Suite 1100
            Nashville, Tennessee  37238
19          (615) 254-0400
            (615) 254-0459 (facsimile)
20          matt@gideoncooper.com
            chris@gideoncooper.com
21

22

23

24

25
```

```
 1                ~~ APPEARANCES CONTINUED ~~

 2   On Behalf of Saint Thomas Health, Saint Thomas
     Network, Saint Thomas West Hospital f/k/a St. Thomas
 3   Hospital:
            ADAM T. SCHRAMEK, Esquire
 4          ERIC J. HOFFMAN, Esquire
            Norton, Rose, Fulbright
 5          Suite 1100
            98 San Jacinto Boulevard, Suite 1100
 6          Austin, Texas   78701
            (512) 536-5232
 7          adam.schramek@nortonrosefulbright.com
            eric.hoffman@nortonrosefulbright.com
 8
            LELA M. HOLLABAUGH, Esquire
 9          Bradley, Arant, Boult & Cummings, LLP
            Suite 700, Roundabout Plaza
10          1600 Division Street, Suite 700
            Nashville, Tennessee   37203
11          (615) 252-2348
            (615) 252-6348 (facsimile)
12          lhollabaugh@babc.com

13   On Behalf of UniFirst Corporation:
            ROBERTO M. BRACERAS, Esquire
14          NICHOLAS DREW, Esquire
            Goodwin Procter, LLP
15          53 State Street, Exchange Place
            Boston, Massachusetts   02109
16          (617) 570-1000
            (617) 523-1231 (facsimile)
17          rbraceras@goodwinprocter.com
            ndrew@goodwinprocter.com
18
     On Behalf of Specialty Surgery Center - Crossville,
19   PLLC; Kenneth R. Lister, M.D.; Kenneth R. Lister,
     M.D., PC:
20          MEGAN A. CARRICK, Esquire
            Brewer, Krause, Brooks, Chastain & Burrow, PLLC
21          Suite 2600
            611 Commerce Street, Suite 2600
22          Nashville, Tennessee   37203
            (615) 256-8787
23          (615) 256-8985 (facsimile)
            mcarrick@bkblaw.com
24

25
```

```
 1          APPEARANCES OF COUNSEL VIA VIDEO STREAM

 2   On Behalf of the Plaintiffs:
          SHELLI MEADOR, Esquire
 3        Kinnard, Clayton & Beveridge
          127 Woodmont Boulevard
 4        Nashville, Tennessee  37205
          (615) 686-2501
 5        (615) 297-1505 (facsimile)
          smeador@kcbattys.com
 6
     On Behalf of the Plaintiffs Jocelyn Norris and James
 7   and Michelle Palmer:
          CHRISTOPHER T. CAIN, Esquire
 8        Scott & Cain
          Suite 601
 9        550 West Main Street
          Knoxville, Tennessee  37902
10        (865) 525-2150
          (865) 525-2120 (facsimile)
11        cain@scottandcain.com

12   On Behalf of Premier Orthopaedic & Sports Medicine
     Associates of Southern New Jersey, LLC d/b/a Premier
13   Orthopaedic & Sports Associates, LLC; Premier
     Orthopaedic Associates Surgical Center, LLC:
14        CHRISTOPHER WOLK, Esquire
          Blumberg & Wolk, LLC
15        158 Delaware Street
          Woodbury, New Jersey 08096
16        (856) 848-7472
          (856) 848-8012 (facsimile)
17        cwolk@blumberglawoffices.com

18   On Behalf of St. Thomas Outpatient Neurosurgical
     Center, LLC; Howell Allen, a Professional Corporation;
19   John W. Culclasure, M.D.; Debra V. Schamberg, RN:
          JEREMY CAIN, Esquire
20        Gideon, Cooper & Essary, PLC
          315 Deaderick Street - Suite 1100
21        Nashville, Tennessee 37238
          (615) 254-0400
22        (615) 254-0459 (facsimile)
          jeremy@gideoncooper.com
23

24

25
```

```
 1          ~~ VIDEO STREAM APPEARANCES CONTINUED ~~

 2   On Behalf of Medical Advanced Pain Specialists, PA and
     David M. Schultz, M.D.:
 3        CLARE CARROLL, Esquire
          McCarthy, Bouley & Barry, PC
 4        47 Thorndike Street
          Cambridge, Massachusetts  02141
 5        (617) 225-2211
          (617) 225-7711 (facsimile)
 6        cfc@mbblaw.com

 7   On Behalf of Dallas Back Pain Management/Momentum Pain
     Management and Abbeselom Ghermay, M.D.:
 8        HEATHER CANNY, Esquire
          Fraley & Fraley, LLP
 9        Suite 6300, Bank of America Plaza
          901 Main Street
10        Dallas, Texas  75202
          (214) 761-6460
11        (214) 761-6469 (facsimile)
          hkanny@fraley-law.com
12
     On Behalf of Barry Cadden, Lisa Conigliaro Cadden,
13   Carla Conigliaro, Gregory Conigliaro, Douglas
     Conigliaro and Glenn Chin:
14        ROBERT H. GAYNOR, Esquire
          Sloane & Walsh, LLP
15        Suite 850
          Three Center Plaza
16        Boston, Massachusetts  02108
          (617) 523-6010
17        (617) 227-0927 (facsimile)
          rgaynor@sloanewalsh.com
18
     On Behalf of Ocean State Pain Management, Inc. and
19   Abdul Barakat, M.D.:
          THOMAS M. DOLAN, III, Esquire
20        Capplis, Connors & Carroll, PC
          Suite 220
21        18 Tremont Street
          Boston, Massachusetts  02108
22        (617) 227-0722
          (617) 227-0772 (facsimile)
23        tdolan@ccclaw.org

24

25
```

1          ~~ VIDEO STREAM APPEARANCES CONTINUED ~~

2    On Behalf of Harris Methodist Hospital Southlake:
          KYLE ROBY, Esquire
3         English, Lucas, Priest & Owsley, LLP
          1101 College Street
4         Bowling Green, Kentucky  42102-0770
          (270) 782-6500
5         (270) 782-7782 (facsimile)
          kroby@elpolaw.com
6
     On Behalf of a Defendant Party:
7         JUSTIN SAAR, Esquire
          Cole, Scott & Kissane, PA
8         Suite 400
          4301 West Boy Scout Boulevard
9         Tampa, Florida  33607
          (813) 289-9300
10        (813) 286-2900 (facsimile)
          justin.saar@csklegal.com
11
     Also Present:
12   Daniel Makowski, videographer

13

14

15

16

17

18

19

20

21

22

23

24

25

1    years have referred to their health systems as
2    ministries.  So ministry can -- but ministry can occur
3    at any level.  In other words, Ascension is a
4    ministry.  An individual hospital is a ministry.  An
5    individual clinic is a ministry.
6        Q.    So would you consider the St. Thomas
7    Outpatient Neurosurgical Center to be a ministry?
8        A.    No, it is not a ministry, was not a
9    ministry of St. Thomas Health or of Ascension.
10       Q.    Now, you mentioned that you have calls with
11   Bob.  Were you referring to Bob Henkel?
12       A.    Yes, sir.
13       Q.    And what was his position with Ascension?
14       A.    He was the chief operating officer and
15   president for healthcare operations.
16       Q.    And how would you describe Ascension Health
17   for someone who is unfamiliar with that organization?
18       A.    Well, it's the largest not-for-profit
19   healthcare organization in the country.  I would
20   describe it as a confederation of the hospitals that
21   had previously been operated by various chapters and
22   congregations of the Daughters of Charity and over
23   time other Catholic sponsors also came in.  And so --
24   I'll just stop there.
25       Q.    Let's talk about your duties as the

1    Q.    All right.  But other than the Bishop, is
2  it true that you're the highest ranking corporate
3  official?
4    A.    I wasn't trying to avoid the question.
5  Yes, I am.
6    Q.    All right.  And who owns St. Thomas Health?
7    A.    Well, let me just trace that back.  I
8  believe the sole member of St. Thomas Health is an
9  Ascension Health entity.
10   Q.    And so in 2012, approximately how many
11 employees or how many people were employed by St.
12 Thomas Health?
13   A.    About 7,000.
14   Q.    So you would agree that St. Thomas
15 Health -- that the St. Thomas Health system is part of
16 Ascension Health?
17   A.    Yes.
18   Q.    And what does the St. Thomas Health system
19 consist of?
20   A.    There are five hospitals.  At that time,
21 St. Thomas Baptist, Middle Tennessee Medical Center --
22 you want the list or no?
23   Q.    Sure.
24   A.    Middle Tennessee Medical Center, the
25 Hospital for Spinal Surgery and the Hickman Community

Page 22

1   Hospital in Centerville, and then a number of
2   physician practices, rehab facilities, and then a --
3   we also had ownership in a number of joint ventures.
4       Q.      Including the St. Thomas Outpatient
5   Neurosurgical Center?
6       A.      Yes, sir.
7       Q.      So let me hand you a document that I'll
8   make Exhibit No. 157, and let me ask you to tell us
9   what this appears to be.
10              (Exhibit 157 was marked for
11          identification.)
12              MR. NOLAN:  For the record, this a
13          document that began at St. Thomas entities
14          MDL_023132.
15              THE WITNESS:  It appears to be a
16          slide show and it appears to be a single
17          page from the -- I don't recall seeing it
18          before, but I'm looking at Page 18 is all
19          that was provided here.
20      Q.      (By Mr. Nolan)  Okay.  So Page 18 appears
21  to be part of the slide show that gives an overview of
22  the St. Thomas Health system; is that correct?
23      A.      Well, it says on the front, it says,
24  "Preliminary draft," and it says, "Health ministry
25  positioning preparation packet."  And I just have no

1   Q.   And so why was it that St. Thomas and the
2   Howell Allen Clinic came together to form the St.
3   Thomas Outpatient Neurosurgical Center?
4   A.   Well, this happened before I was here.  So
5   I can only give you my understanding as to why it
6   occurred.  And that was that Howell Allen, within
7   their practice, had a number of patients who needed
8   the procedures that ultimately ended up being done at
9   the clinic/center, and St. Thomas Health or St. Thomas
10  Network had an underutilized or unutilized ambulatory
11  surgery center.  So they came together in a 50/50
12  venture and asked Howell Allen to manage it.
13  Q.   I see.  And so do you know why it was set
14  up as a 50/50 venture?
15  A.   No.
16  Q.   Am I correct in understanding that St.
17  Thomas and Howell Allen have an equal representation
18  on the board of the center?
19  A.   Yes.
20  Q.   So they have an equal opportunity to
21  control that entity; is that true?
22       MR. SCHRAMEK:  Objection, form.
23  Q.   (By Mr. Nolan)  You may answer.
24  A.   They have equal input on policy and
25  selection of the manager.

1  receiving half the profits.  We have joint ventures in
2  which we have no name and we receive some of the
3  profits.  So I don't know what equity was offered when
4  the joint venture was -- was formed, but I have no
5  information that name was considered as a valuable
6  matter in establishing a 50/50 relationship.
7      Q.    Do you know who it is that refers the
8  overwhelming majority of the patients to the St.
9  Thomas Center?
10     A.    Howell Allen.
11     Q.    And is it your understanding that patients
12 at the St. Thomas Center receive epidural steroids?
13     A.    Yes.
14     Q.    And is it also your understanding that if
15 patients receive those steroids at the center and the
16 steroids do not resolve their back problem or their
17 neck pain, they may be referred back to the
18 neurosurgeons at the Howell Allen Clinic for
19 additional treatment?
20     A.    I don't know that to be true.  I used to be
21 a physician and I assume it could be true.
22     Q.    Okay.  Well, assuming that that's true, do
23 you know if a patient who received epidural steroids
24 still has back pain and the neurosurgeons at Howell
25 Allen decide they need to perform back surgery on the

1  would decline to help the joint venturer, St. Thomas
2  Outpatient Neurosurgical Center, if they asked the
3  pharmacy a question about whether using compounding
4  pharmacies was a good thing or a bad thing?
5      A.    These are all hypotheticals. It's just so
6  hard for me to know how to answer those. What a
7  pharmacist would say to another pharmacist, I just
8  don't know.
9      Q.    Well, I'm asking what you would expect as
10  the CEO of St. Thomas Health, wanted those pharmacists
11  to do in that situation. What would you expect a
12  pharmacist to do?
13      A.    Well, it's beyond the scope of anything
14  that I've thought of, so I assume that the pharmacist
15  would exercise his or her own judgment. But our
16  policy is to have written agreements, and I believe we
17  had them for managed care, for tax and for some
18  catering, and there were agreements and funds paid.
19  So that's the way we'd like to see that done.
20      Q.    Well, St. Thomas Health did not charge the
21  center for the services that it provided in the wake
22  of this catastrophe, did it?
23      A.    I don't know for a fact, but I think it's
24  unlikely that we did.
25      Q.    And given that St. Thomas Health owns half

```
 1   of the center, do you agree that -- or would you
 2   expect as the CEO of St. Thomas Health that if the
 3   center needed help with something for the benefit of
 4   patient safety they would ask for help?
 5              MR. TARDIO:  Object to the form.
 6         Q.   (By Mr. Nolan)  You can go ahead and
 7   answer.
 8         A.   I would -- we have great confidence in the
 9   management of STOPNC which was provided by Howell
10   Allen and Scott Butler.  So I have confidence that if
11   he needed -- thought he needed advice in anything, he
12   would get it somewhere.
13         Q.   Well, did St. Thomas ever impose any sort
14   of policies or procedures on the joint venturer, St.
15   Thomas Center, with regard to the purchase of
16   medications?
17         A.   Not to my knowledge and it wouldn't be
18   something that we would -- that would not be a level
19   the governance would get involved in in the joint
20   venture.
21         Q.   Well, why not?  Is that not a safety issue?
22         A.   Yeah, I think it's a safety issue, but it's
23   also within the purview of -- of management.
24         Q.   Okay.  Well, am I correct in understanding
25   that St. Thomas Health had two people on the boards of
```

1                          DISCLOSURE

2

3        Pursuant to Article 10.B of the Rules
   and Regulations of the Board of Court
   Reporting of the Judicial Council of
4  Georgia which states:  "Each court reporter
   shall tender a disclosure form at the time
5  of the taking of the deposition stating the
   arrangements made for the reporting
6  services of the certified court reporter,
   by the certified court reporter, the court
7  reporter's employer or the referral source
   for the deposition, with any party to the
8  litigation, counsel to the parties, or
   other entity.  Such form shall be attached
9  to the deposition transcript," I make the
   following disclosure:

10

        I am a Georgia Certified Court
11 Reporter.  I am here as a representative of
   Discovery Litigation Services, LLC.
12 Discovery Litigation Services, LLC was
   contacted to provide court reporting
13 services for the deposition.  Discovery
   Litigation Services, LLC will not be taking
14 this deposition under any contract that is
   prohibited by O.C.G.A. 9-11-28(c).

15

        Discovery Litigation Services, LLC
16 has no contract/agreement to provide
   reporting services with any party to the
17 case, any counsel in the case, or any
   reporter or reporting agency from whom a
18 referral might have been made to cover this
   deposition.

19

        Discovery Litigation Services, LLC
20 will charge its usual and customary rates
   to all parties in the case, and a financial
21 discount will not be given to any party to
   this litigation.

22

23

                         Blanche J. Dugas
24                       CCR No. B-2290

25

1  STATE OF GEORGIA:

2  COUNTY OF FULTON:

3

4           I hereby certify that the foregoing

5      transcript was reported, as stated in the

6      caption, and the questions and answers

7      thereto were reduced to typewriting under

8      my direction; that the foregoing pages

9      represent a true, complete, and correct

10     transcript of the evidence given upon said

11     hearing, and I further certify that I am

12     not of kin or counsel to the parties in the

13     case; am not in the employ of counsel for

14     any of said parties; nor am I in any way

15     interested in the result of said case.

16

17

18

19

20           BLANCHE J. DUGAS, CCR-B-2290

21

22

23

24

25

1  CAPTION

2

3       The Deposition of MICHAEL SCHATZLEIN, M.D.,
4  taken in the matter, on the date, and at the time and
5  place set out on the title page hereof.
6       It was requested that the deposition be
7  taken by the reporter and that same be reduced to
8  typewritten form.
9       It was agreed by and between counsel and
10 the parties that the Deponent will read and sign the
11 transcript of said deposition.
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Case 1:13-md-02419-RWZ   Document 2745-3   Filed 03/15/16   Page 18 of 20

NEW ENGLAND COMPOUNDING PHARMACY INC. PRODUCTS LIABILITY
VIDEOTAPED DEPOSITION OF MICHAEL SCHATZLEIN, M.D.   on 04/06/2015        Page 178

```
 1                DEPOSITION ERRATA SHEET
 2
 3   DLS Assignment No.   21446
 4   Case Caption:   In Re:  New England Compounding
 5                   Pharmacy, Inc Products Liability
 6                   Litigation
 7
 8   Witness:   MICHAEL SCHATZLEIN, M.D. - 04/06/2015
 9
10          DECLARATION UNDER PENALTY OF PERJURY
11   I declare under penalty of perjury that I have read
12   the entire transcript of my deposition taken in the
13   captioned matter or the same has been read to me, and
14   The same is true and accurate, save and except for
15   changes and/or corrections, if any, as indicated by me
16   on the DEPOSITION ERRATA SHEET hereof, with the
17   understanding that I offer these changes as if still
18   under oath.
19
20   Signed on the    8th    day of
21   May         , 20 15.
22
23   _____
24   MICHAEL SCHATZLEIN, M.D.
25
```



100 Mayfair Royal
181 Fourteenth Street
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

## DEPOSITION ERRATA SHEET

| Page and line | Change to | Reason for change |
|---|---|---|
| GLOBAL | "St. Thomas Health" should be "Saint Thomas Health" | Transcription error |
| GLOBAL | "St. Thomas Network" should be "Saint Thomas Network" | Transcription error |
| 14/25 | cardiothoracic and vascular surgery | Transcription error |
| 21/21 | Add a comma after "St. Thomas" | Transcription error |
| 25/6 | de rigueur within a health system | Transcription error |
| 30/24 | Change "They" to "The appointed board members" | Clarification |
| 36/16 | Add ", Saint Thomas Health." after "Yes, sir" | Clarification |
| 49/2 | Add ", to the extent it is its 100% owner." after "Yes, sir" | Clarification |
| 54/19-20 | Change "a block" to "half a mile" | Clarification |
| 54/24 | Change "Yes, sir" to "About half a mile." | Clarification |
| 59/6 | Add "Health" after "Thomas" | Clarification |
| 59/24 | when patients were called | Transcription error |
| 64/23 | "No." or "No, I would not." | Transcription error or clarification. |
| 68/15 | relations. Communications implies conveying the truth. | Transcription error |
| 74/25 | Timm | Transcription error |
| 80/2-3 | seeing somewhere in this pile of exhibits | Transcription error or clarification |
| 82/11 | Change "center" to "sign" | Transcription error |
| 88/4 | Those were the facts. | Transcription error or misspoke. |
| 88/14 | Change "Network provides" to "Network appoints board members who provide" | Clarification |

SIGNATURE: _____  DATE: 5/8/15

## DEPOSITION ERRATA SHEET

| | | |
|---|---|---|
| 89/11 | Change "officer who was" to "officer, Wes" | Transcription error |
| 89/21 | Change "No, sir" to "not that I'm aware" | Clarification |
| 98/4 | Change "Yes" to "The most important thing is providing patient care that is safe and effective." | Clarification |
| 100/21 | joint venture | Transcription error or clarification |
| 103/21-22 | we don't in Catholic healthcare move quickly in those areas | Transcription error |
| 113/14-15 | I don't know if I would seek any | Transcription error or misspoke |
| 114/8 | documented | Transcription error or misspoke. |
| 118/7 | consolidated | Transcription error or misspoke. |
| 119/2-3 | it's just GAAP | Transcription error |
| 119/4 | multiple labs, then all of the | Transcription error or clarification |
| 119/15 | Health-provided | |
| 120/19 | "cross" should be "check" | Transcription error or misspoke |
| 135/19 | "light" should be "white" | Transcription error or misspoke |
| 145/2-3 | "we didn't lose money but we missed budget". | Transcription error or misspoke |
| 147/2-4 | The last sentence should be in quotes as I am quoting from the exhibit | Transcription error |
| 159/9 | Deming | Transcription error |
| 159/23 | "credit" should be "accredit" | Transcription error |
| 165/3 | "were troubles" | Transcription error or misspoke |
| 165/25 | "To" line | Transcription error |
| 172/25 | "mill you" should be "milieu" | Transcription error |

SIGNATURE: _[signed]_  DATE: 5/8/15