Exhibit "G"

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


IN RE: NEW ENGLAND
COMPOUNDING PHARMACY,
INC. PRODUCTS LIABILITY     MDL No. 2419
LITIGATION
                            Master Dkt:
                            1:13-md-02419-RWZ
~~~~~~~~~~~~~~~~~~~~~
THIS DOCUMENT RELATES
TO:


All Actions


~~~~~~~~~~~~~~~~~~~~~~~~~



VIDEOTAPED DEPOSITION OF
DAWN RUDOLPH


9:09 a.m.
April 21, 2015



Suite 700
1600 Division Street
Nashville, Tennessee



Blanche J. Dugas, RPR, CCR No. B-2290

```
 1                   APPEARANCES OF COUNSEL

 2   On Behalf of the Plaintiffs:
          MARK P. CHALOS, Esquire
 3        Lieff, Cabraser, Heimann & Bernstein, LLP
          Suite 1650, One Nashville Place
 4        150 Fourth Avenue
          Nashville, Tennessee  37219-2423
 5        (615) 313-9000
          (615) 313-9965 (facsimile)
 6        mchalos@lchb.com

 7        DANIEL L. CLAYTON, Esquire
          Kinnard, Clayton & Beveridge
 8        127 Woodmont Boulevard
          Nashville, Tennessee  37205
 9        (615) 686-2501
          (615) 297-1505 (facsimile)
10        dclayton@kcbattys.com

11        BENJAMIN A. GASTEL, Esquire
          Branstetter, Stranch & Jennings, PLLC
12        Fourth Floor
          227 Second Avenue North
13        Nashville, Tennessee  37201
          (615) 254-8801
14        (615) 250-3937 (facsimile)
          gerards@bsjfirm.com
15
     On Behalf of St. Thomas Outpatient Neurosurgical
16   Center, LLC; Howell Allen, a Professional Corporation;
     John W. Culclasure, M.D.; Debra V. Schamberg, RN:
17        MATTHEW CLINE, Esquire
          Gideon, Cooper & Essary, PLC
18        Suite 1100
          315 Deaderick Street
19        Nashville, Tennessee  37238
          (615) 254-0400
20        (615) 254-0459 (facsimile)
          matt@gideoncooper.com
21

22

23

24

25
```

```
 1                ~~ APPEARANCES CONTINUED ~~

 2   On Behalf of Saint Thomas Health, Saint Thomas
     Network, Saint Thomas West Hospital f/k/a St. Thomas
 3   Hospital:
          ADAM T. SCHRAMEK, Esquire
 4        Norton, Rose, Fulbright
          Suite 1100
 5        98 San Jacinto Boulevard
          Austin, Texas  78701
 6        (512) 536-5232
          adam.schramek@nortonrosefulbright.com
 7
          AMY D. HAMPTON, Esquire
 8        Bradley, Arant, Boult & Cummings, LLP
          Suite 700, Roundabout Plaza
 9        1600 Division Street
          Nashville, Tennessee  37203
10        (615) 252-2379
          (615) 252-6348 (facsimile)
11        ahampton@babc.com

12   On Behalf of Specialty Surgery Center - Crossville,
     PLLC; Kenneth R. Lister, M.D.; Kenneth R. Lister,
13   M.D., PC:
          JASON A. LEE, Esquire
14        Brewer, Krause, Brooks, Chastain & Burrow, PLLC
          Suite 2600
15        611 Commerce Street
          Nashville, Tennessee  37203
16        (615) 630-7757
          (615) 256-8985 (facsimile)
17        jlee@bkblaw.com

18

19

20

21

22

23

24

25
```

```
 1          ~~ ATTORNEYS APPEARING VIA VIDEO STREAM ~~

 2    On Behalf of the Plaintiffs:
           SHELLI MEADOR, Esquire
 3         Kinnard, Clayton & Beveridge
           127 Woodmont Boulevard
 4         Nashville, Tennessee  37205
           (615) 686-2501
 5         (615) 297-1505 (facsimile)
           smeador@kcbattys.com
 6
      On Behalf of the Plaintiffs Jocelyn Norris and James
 7    and Michelle Palmer:
           CHRISTOPHER T. CAIN, Esquire
 8         Scott & Cain
           Suite 601
 9         550 West Main Street
           Knoxville, Tennessee  37902
10         (865) 525-2150
           (865) 525-2120 (facsimile)
11         cain@scottandcain.com

12    On Behalf of UniFirst Corporation:
           GENEVIE GOLD, Esquire
13         Goodwin Procter, LLP
           53 State Street, Exchange Place
14         Boston, Massachusetts 02109
           (617) 570-1000
15         (617) 523-1231 (facsimile)
           ggold@goodwinprocter.com
16
      On Behalf of Harris Methodist Hospital Southlake:
17         KYLE ROBY, Esquire
           English, Lucas, Priest & Owsley, LLP
18         1101 College Street
           Bowling Green, Kentucky  42102-0770
19         (270) 782-6500
           (270) 782-7782 (facsimile)
20         kroby@elpolaw.com

21

22

23

24

25
```

```
 1           ~~ VIDEO STREAM APPEARANCES CONTINUED ~~

 2   On Behalf of Premier Orthopaedic & Sports Medicine
     Associates of Southern New Jersey, LLC d/b/a Premier
 3   Orthopaedic & Sports Associates, LLC; Premier
     Orthopaedic Associates Surgical Center, LLC:
 4        CHRISTOPHER WOLK, Esquire
          Blumberg & Wolk, LLC
 5        158 Delaware Street
          Woodbury, New Jersey 08096
 6        (856) 848-7472
          (856) 848-8012 (facsimile)
 7        cwolk@blumberglawoffices.com

 8   On Behalf of Barry Cadden, Lisa Conigliaro Cadden,
     Carla Conigliaro, Gregory Conigliaro, Douglas
 9   Conigliaro and Glenn Chin:
          ROBERT H. GAYNOR, Esquire
10        Sloane & Walsh, LLP
          Suite 850
11        Three Center Plaza
          Boston, Massachusetts  02108
12        (617) 523-6010
          (617) 227-0927 (facsimile)
13        rgaynor@sloanewalsh.com

14   On Behalf of Ocean State Pain Management, Inc. and
     Abdul Barakat, M.D.:
15        THOMAS M. DOLAN, III, Esquire
          Capplis, Connors & Carroll, PC
16        Suite 220
          18 Tremont Street
17        Boston, Massachusetts  02108
          (617) 227-0722
18        (617) 227-0772 (facsimile)
          tdolan@ccclaw.org
19
     On Behalf of Medical Advanced Pain Specialists, PA and
20   David M. Schultz, M.D.:
          CLARE CARROLL, Esquire
21        McCarthy, Bouley & Barry, PC
          47 Thorndike Street
22        Cambridge, Massachusetts  02141
          (617) 225-2211
23        (617) 225-7711 (facsimile)
          cfc@mbblaw.com

24

25
```

```
 1          ~~ VIDEO STREAM APPEARANCES CONTINUED ~~
 2   On Behalf of Dallas Back Pain Management/Momentum Pain
     Management and Abbeselom Ghermay, M.D.:
 3        COURTNEY M. BOES, Esquire
          Fraley & Fraley, LLP
 4        Suite 6300, Bank of America Plaza
          901 Main Street
 5        Dallas, Texas  75202
          (214) 761-6460
 6        (214) 761-6469 (facsimile)
          cboes@fraley-law.com
 7
     On Behalf of Advanced Pain & Anesthesia Consultants
 8   PC, BKC Pain Specialists, and Cincinnati Pain
     Management Consultants, Inc.:
 9        ANTHONY E. ABELN, Esquire
          Morrison Mahoney, LLP
10        250 Summer Street
          Boston, Massachusetts 02210
11        (617) 737-8885
          aabeln@morrisonmahoney.com
12
     On Behalf of Saint Thomas Health, Saint Thomas
13   Network, Saint Thomas West Hospital f/k/a St. Thomas
     Hospital:
14        ADAM T. SCHRAMEK, Esquire
          ERIC J. HOFFMAN, Esquire
15        Norton, Rose, Fulbright
          Suite 1100
16        98 San Jacinto Boulevard, Suite 1100
          Austin, Texas  78701
17        (512) 536-5232
          adam.schramek@nortonrosefulbright.com
18        eric.hoffman@nortonrosefulbright.com
19   On Behalf of St. Thomas Outpatient Neurosurgical
     Center, LLC; Howell Allen, a Professional Corporation;
20   John W. Culclasure, M.D.; Debra V. Schamberg, RN:
          JEREMY CAIN, Esquire
21        Gideon, Cooper & Essary, PLC
          315 Deaderick Street - Suite 1100
22        Nashville, Tennessee 37238
          (615) 254-0400
23        (615) 254-0459 (facsimile)
          jeremy@gideoncooper.com
24
     Also Present:
25   Dan Makowski, videographer
```

Page 17

1    if you'd like.

2         A.    Okay.

3         Q.    And no one is going to be impatient if you

4    want to do that.

5               So you're currently the chief experience

6    officer at St. Thomas Health; is that right?

7         A.    Yes.

8         Q.    And that's a job you've had since July of

9    2013?

10        A.    Yes.

11        Q.    How did you come to have that job?

12        A.    I was asked to help create the role for St.

13   Thomas Health.  At that time the organization was

14   going through a reorganization of its executive team.

15        Q.    Okay.  Is this the same reorganization that

16   was occurring in October 2012?

17        A.    No.

18        Q.    Who asked you to create the position of

19   chief experience officer?

20        A.    Dr. Schatzlein.

21        Q.    Who do you currently report to?

22        A.    I currently report to Karen Springer, chief

23   operating officer for the Health system.

24        Q.    She's the chief operating officer for St.

25   Thomas Health?

1      Q.      Say yes, no or even yeah or no.  Uh-huh

2  (affirmative) and huh-uh (negative) get a little

3  confusing.

4      A.      I'll warm up here and get better.

5      Q.      You're doing great.

6              So does the ministry, is that the term

7  that's used for more broadly -- to more broadly

8  describe the entities within the St. Thomas Health

9  system, or are they pretty synonymous, Health system

10 and ministry?

11     A.      Yes, they're pretty much synonymous.  There

12 are several entities and as we come together, it's

13 considered a ministry.

14     Q.      Are joint ventures considered part of the

15 ministry?

16     A.      No.  I wouldn't put the joint ventures into

17 the ministry because their associates are separate

18 from our associates.  So typically when we say Health

19 ministry, it's kind of internal and associate driven.

20     Q.      So when you say ministry in reference to

21 the Nashville area, you're talking about, what, what

22 entity?

23     A.      The hospitals.

24     Q.      So St. Thomas West?

25     A.      Correct.

1       A.      The distinction is that they're separate

2    HR.  They're separate -- there's a separateness.  We

3    have leadership development that we include the

4    associates within the leadership teams within our

5    entities, and the joint ventures work I think in their

6    own processes and with their own leadership teams.

7              So we don't typically include them in that

8    type of activity.  I know that HR is separate.  We do

9    lists of, you know, who may be involved in things.

10   They're not a part of that.  So that's where I draw a

11   boundary of it.

12      Q.      And you're familiar with STOPNC or the St.

13   Thomas Outpatient Neurosurgical Center?

14      A.      Yes.

15      Q.      Were you on the board of the St. Thomas

16   Outpatient Neurosurgical Center at one time?

17      A.      Yeah, for a short time.  Uh-huh

18   (affirmative).

19      Q.      For what time period?

20      A.      Officially, I became a board member in

21   January of 2013 and then rolled off at some point in

22   time in the spring.  And, I'm sorry, I don't recall

23   the date.  We were near this time when I moved into

24   the new role of chief experience officer.  Prior to

25   that -- that was the official time period.

1    Q.    Why was that?

2    A.    He took a position in Tucson, Arizona with

3  the company, with Ascension.

4    Q.    So was there a period of time when the St.

5  Thomas -- let me back up.

6          You understand that there were two board

7  seats for St. Thomas?

8    A.    I do.

9    Q.    And two board seats for Howell Allen on the

10  STOPNC board?

11    A.    I do.

12    Q.    And at one point, one of the St. Thomas

13  seats was vacated; is that right?

14    A.    Yes.

15    Q.    And was there a period of time where that

16  remained vacant?

17    A.    A couple of months, I think, where there

18  was a decision of who would take that seat, and then

19  the second seat was vacated in December.

20    Q.    Who was sitting in that seat in the fall of

21  2012?

22    A.    In the fall of 2012, I believe it was Craig

23  Polkow was a board member, and Dale Batchelor, Dr.

24  Batchelor.

25    Q.    Craig, what was his last name?

1     A.     Polkow.

2     Q.     How do you spell that?

3     A.     P-O-L-K-O-W.

4     Q.     Okay.  And was Mr. Polkow the replacement

5  for Mr. Strauss?

6     A.     Yes.

7     Q.     Do you know when Mr. Strauss vacated his

8  seat?

9     A.     On or around July of 2012.  I don't recall.

10  I know it was in the summer.

11    Q.     And when you attended the board meeting,

12  was Mr. Polkow on the board at that time?

13    A.     It was Craig on board when I attended the

14  meeting.  If I could confirm that date.  I believe he

15  would have been, yes.

16    Q.     We'll look at some documents that may help

17  you with that a little bit later today.

18    A.     Okay.

19    Q.     When you attended the -- let me back up.

20           You've only attended one STOPNC board

21  meeting in 2012; is that right?

22    A.     I believe it was one.

23    Q.     And at that time you were not a member of

24  the STOPNC board; is that right?

25    A.     I -- I understood that there was an open

Page 80

1    A.    Yes.

2    Q.    Let's go back, if we could, please, to

3    Exhibit 215, which is your CV.

4    A.    Okay.

5    Q.    And let's go back to the time when you were

6    the chief executive officer of St. Thomas West

7    Hospital.  Who was your employer at that time?

8    A.    I worked for St. Thomas West.

9    Q.    Did you receive a paycheck from St. Thomas

10   West?

11   A.    You know, I had to think about that.  I

12   don't honestly recall.  It was electronic.  So I would

13   have to go back and look to see.  I believe it was St.

14   Thomas Hospital was the -- now, we went through a -- a

15   change in the provider of our paychecks.  So, you

16   know, I considered that I worked for St. Thomas West.

17   Q.    And at that time -- you may have answered

18   this earlier -- when you were CEO of St. Thomas

19   West -- and this is November 2010 through July 2013?

20   A.    Yes.

21   Q.    -- who was -- who did you directly report

22   to?

23   A.    I directly reported to Dr. Michael

24   Schatzlein.

25   Q.    What was his position in 2012?

1    Q.    Did you tell them you were Methodist?

2    A.    Yeah, I did.  I did.

3    Q.    Was Mr. Strauss the CFO of St. Thomas

4  Health?

5    A.    Yes.

6    Q.    Was he the CFO of -- Mr. Strauss -- when --

7  I'm sorry.  Let me do that again.

8          Was Mr. Strauss the CFO of St. Thomas

9  Health when he sat on the board of STOPNC?

10   A.    Yes.

11   Q.    And when Mr. Batchelor -- Dr. Batchelor sat

12 on the board of STOPNC, he was in a position with St.

13 Thomas Hospital?

14   A.    Yes.

15   Q.    What was his job?

16   A.    Chief medical officer.  He was the CMO.

17   Q.    So when Dr. Batchelor was on the board of

18 STOPNC, he was the chief medical officer of St. Thomas

19 Hospital?

20   A.    Yes.

21   Q.    And what was Mr. Polkow's position when he

22 sat on the board of STOPNC?

23   A.    He replaced Mr. Strauss as the CFO for St.

24 Thomas Health and so then took that board seat.

25   Q.    And you as CFO -- I'm sorry -- and you as

1          MR. SCHRAMEK:  I'm going to object to

2      the question and I'm going to instruct the

3      witness not to answer it because you left

4      out, "Subject to such limitations as are

5      otherwise set forth in the act, or this

6      agreement," which is misleading,

7      mischaracterizing and I think an abuse of

8      the process.

9      Q.     (By Mr. Chalos)  Are you going to refuse to

10 answer my question?

11     A.     I was instructed --

12          MR. SCHRAMEK:  You want to ask about

13      the entire sentence?  If she understood

14      that entire sentence, then she can answer

15      the question.

16     Q.     (By Mr. Chalos)  Forget about this

17 sentence.  Did you understand when you took over

18 the -- as a board member of STOPNC that STOPNC's

19 business and affairs shall be managed by and be under

20 the direction of its board of governors?

21     A.     I understood that the business and the

22 operations of the STOPNC were under a management

23 agreement and that the board had oversight of the --

24 of the financial affairs of the LLC.

25     Q.     Who told you that?

Page 155

1    systems level role?

2        A.      Yeah, we do have an executive director of

3    pharmacy at the system level now.

4        Q.      Is there a director of pharmacy for St.

5    Thomas West Hospital?

6        A.      Yes, I believe there is.

7        Q.      Who is that?

8        A.      Carmen Leffler.

9        Q.      Is that a man or a woman?

10       A.      A woman.

11       Q.      Is she -- she took over Mr. Kelvas's role?

12       A.      While I was there, she became kind of

13   interim.  It was entitled interim director, and I

14   think she then took that title in full.

15       Q.      Did Mr. Kelvas have anything to do with

16   STOPNC?

17       A.      No.

18       Q.      Did any of the St. Thomas Hospital

19   employees who were let go have any role other than Dr.

20   Batchelor with STOPNC?

21       A.      No.

22       Q.      What was Pat Stafonic's job?

23       A.      I believe Pat was over -- because there

24   was, you know -- like I said, we were consolidating

25   positions, and I think the last area that Pat was over

Page 286

1                           DISCLOSURE

2
            Pursuant to Article 10.B of the Rules
3     and Regulations of the Board of Court
      Reporting of the Judicial Council of
4     Georgia which states:  "Each court reporter
      shall tender a disclosure form at the time
5     of the taking of the deposition stating the
      arrangements made for the reporting
6     services of the certified court reporter,
      by the certified court reporter, the court
7     reporter's employer or the referral source
      for the deposition, with any party to the
8     litigation, counsel to the parties, or
      other entity.  Such form shall be attached
9     to the deposition transcript," I make the
      following disclosure:
10
            I am a Georgia Certified Court
11    Reporter.  I am here as a representative of
      Discovery Litigation Services, LLC.
12    Discovery Litigation Services, LLC was
      contacted to provide court reporting
13    services for the deposition.  Discovery
      Litigation Services, LLC will not be taking
14    this deposition under any contract that is
      prohibited by O.C.G.A. 9-11-28(c).
15
            Discovery Litigation Services, LLC
16    has no contract/agreement to provide
      reporting services with any party to the
17    case, any counsel in the case, or any
      reporter or reporting agency from whom a
18    referral might have been made to cover this
      deposition.
19
            Discovery Litigation Services, LLC
20    will charge its usual and customary rates
      to all parties in the case, and a financial
21    discount will not be given to any party to
      this litigation.
22

23
                             Blanche J. Dugas
24                           CCR No. B-2290

25

Page 287

1    STATE OF GEORGIA:

2    COUNTY OF FULTON:

3

4              I hereby certify that the foregoing

5         transcript was reported, as stated in the

6         caption, and the questions and answers

7         thereto were reduced to typewriting under

8         my direction; that the foregoing pages

9         represent a true, complete, and correct

10        transcript of the evidence given upon said

11        hearing, and I further certify that I am

12        not of kin or counsel to the parties in the

13        case; am not in the employ of counsel for

14        any of said parties; nor am I in any way

15        interested in the result of said case.

16

17

18

19

20             BLANCHE J. DUGAS, CCR-B-2290

21

22

23

24

25

Page 288

1                           CAPTION

2

3            The Deposition of DAWN RUDOLPH, taken in

4    the matter, on the date, and at the time and place set

5    out on the title page hereof.

6            It was requested that the deposition be

7    taken by the reporter and that same be reduced to

8    typewritten form.

9            It was agreed by and between counsel and

10   the parties that the Deponent will read and sign the

11   transcript of said deposition.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 290

```
1                    DEPOSITION ERRATA SHEET

2

3    DLS Assignment No.   21724

4    Case Caption:   In Re:  New England Compounding

5    Pharmacy, Inc. Products Liability Litigation

6

7    Witness:  DAWN RUDOLPH - 04/21/2015

8

9              DECLARATION UNDER PENALTY OF PERJURY

10   I declare under penalty of perjury that I have read

11   the entire transcript of my deposition taken in the

12   captioned matter or the same has been read to me, and

13   The same is true and accurate, save and except for

14   changes and/or corrections, if any, as indicated by me

15   on the DEPOSITION ERRATA SHEET hereof, with the

16   understanding that I offer these changes as if still

17   under oath.

18

19   Signed on the   21   day of

20   May       , 2015.

21

22

23   DAWN RUDOLPH

24

25
```

## DEPOSITION ERRATA SHEET

| Page and line | Change to | Reason for change |
|---|---|---|
| GLOBAL | "St. Thomas Health" should be "Saint Thomas Health" | Transcription error |
| GLOBAL | "St. Thomas Network" should be "Saint Thomas Network" | Transcription error |
| GLOBAL | "St. Thomas West" should be "Saint Thomas West" | Transcription error |
| GLOBAL | "Stafonic" should be "Stefarik" | Transcription error or misspoke |
| 23/17 | "months" should be "weeks" | Transcription error or misspoke |
| 27/1 | "HCA" should be "ACA" | Transcription error |
| 30/13 | "is" should be "are" | Transcription error or misspoke |
| 30/21 | "The" should be "Any" | Clarification |
| 32/18-19 | "under my responsibilities as an executive in the Saint Thomas Health ministry" should be after "If asked, I would say it was" | Clarification |
| 41/9 | Change "I believe so" to "I believe it is a contracted service." | Clarification |
| 50/22 | Change first sentence to "Yes, the Ethical and Religious Directives for Catholic Health Care Services." | Misspoke |
| 78/16 | Change to "As the CEO of St. Thomas Hospital, we did have an on-call arrangement with Howell Allen" | Transcription error or misspoke |
| 103/6 | Change "didn't" to "did" | Transcription error or misspoke |
| 127/14 | Change "St. Thomas" to "Saint Thomas Health" | Clarification |
| 130/13 | Change "when giving" to "given" | Transcription error |
| 131/5 | Change "no" to "not" | Transcription error or misspoke |
| 131/13 | financial interest from Saint Thomas Network | Clarification |
| 134/14 | Change "St. Thomas" to "Saint Thomas Network" | Clarification |
| 151/15 | Change "was" to "were" | Transcription error or misspoke |
| 158/22 | My understanding, yes, with a Saint Thomas Entity. | Clarification |
| 167/9 | "at" before 1808 | Transcription error or misspoke |
| 172/12 | Change "St. Thomas" to "Saint Thomas Health" | Clarification |
| 176/24 | "of" in between "treatment" and "the" | Transcription error or misspoke |
| 177/3 | Change "officer" to "office" | Transcription error |
| 179/12 | "a" between "considering" and "comprehensive" | Transcription error or misspoke |
| 182/9 | Change "HTHS" to "STHS" | Transcription error |
| 190/3 | Change "quarter" to "corridor" | Transcription error |

SIGNATURE: _Dawn Rudolph_                DATE: _5/21/15_

## DEPOSITION ERRATA SHEET

| 222/20 | Change "was" to "were" | Transcription error or misspoke |
|--------|------------------------|----------------------------------|
| 223/18 | "no, I don't, outside of Saint Thomas Health and St. Thomas Hospital" | Clarification |
| 239/12 | Change "Scrips" to "Scripts" | Transcription error |
| 241/17 | Add "Hospital" after "St. Thomas" | Clarification |
| 243/22 | Change "was" to "were" | Clarification |
| 244/7 | Change "was" to "were" | Clarification |
| 250/1 | Change "was" to "were" | Clarification |
| 254/4 | Add "Hospital" after "St. Thomas" | Clarification |
| 269/14 | Add "Hospital" after "St. Thomas" | Clarification |
| 280/3 | After "Yes" add, "two from Saint Thomas Network, two from Howell Allen" | Clarification |

SIGNATURE: _Dawn Rudolph_   DATE: _5/21/15_