Exhibit "O"

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

IN RE: NEW ENGLAND
COMPOUNDING PHARMACY,
INC. PRODUCTS LIABILITY    MDL No. 2419
LITIGATION
                           Master Dkt:
                           1:13-md-02419-RWZ

~~~~~~~~~~~~~~~~~~~~~
THIS DOCUMENT RELATES
TO:


All Actions


~~~~~~~~~~~~~~~~~~~~~~~~



30(b)(6) VIDEOTAPED DEPOSITION OF
CARMEN LEFFLER


9:08 a.m.
August 21, 2015


Suite 700, Roundabout Plaza
1600 Division Street
Nashville, Tennessee


Blanche J. Dugas, RPR, CCR No. B-2290

1                APPEARANCES OF COUNSEL

2

On Behalf of the Plaintiffs:
3        GEORGE NOLAN, Esquire
         Leader, Bulso & Nolan, PLC
4        Suite 1740
         414 Union Street
5        Nashville, Tennessee  37219
         (615) 780-4114
6        (615) 780-4122 (facsimile)
         gnolan@leaderbulso.com
7
         DANIEL L. CLAYTON
8        Kinnard, Clayton & Beveridge
         127 Woodmont Boulevard
9        Nashville, Tennessee  37205-2240
         (615) 297-1007
10       (615) 297-1505 (facsimile)
         dclayton@kcbattys.com
11
   On Behalf of St. Thomas Health, St. Thomas Network,
12 St. Thomas West Hospital f/k/a St. Thomas Hospital:
         YVONNE K. PUIG, Esquire
13       ERIC J. HOFFMAN, Esquire
         Norton, Rose, Fulbright
14       Suite 1100
         98 San Jacinto Boulevard
15       Austin, Texas 78701
         (512) 536-2450
16       (512) 536-4598 (facsimile)
         yvonne.puig@nortonrosefulbright.com
17       eric.hoffman@nortonrosefulbright.com

18       AMY D. HAMPTON, Esquire
         Bradley, Arant, Boult & Cummings, LLP
19       Suite 700, Roundabout Plaza
         1600 Division Street
20       Nashville, Tennessee  37203
         (615) 252-2379
21       (615) 252-6379 (facsimile)
         ahampton@babc.com

22

23

24

25

```
 1   On Behalf of Saint Thomas Outpatient Neurosurgical
     Center, LLC; Howell Allen, a Professional Corporation;
 2   John W. Culclasure, M.D.; Debra V. Schamberg, RN:
            CHRISTOPHER TARDIO, Esquire
 3          Gideon, Cooper & Essary, PLC
            Suite 1100
 4          315 Deaderick Street
            Nashville, Tennessee 37238
 5          (615) 254-0400
            (615) 254-0459 (facsimile)
 6          chris@gideoncooper.com

 7   On Behalf of Specialty Surgery Center - Crossville,
     PLLC; Kenneth R. Lister, M.D.; Kenneth R. Lister,
 8   M.D., PC:
            ASHLEY E. GENO, Esquire
 9          Brewer, Krause, Brooks, Chastain & Burrow, PLLC
            Suite 2600
10          611 Commerce Street
            Nashville, Tennessee  37203
11          (615) 256-8787
            (615) 256-8985 (facsimile)
12          ageno@bkblaw.com

13          ~~ Attorneys Appearing Via Video Stream ~~

14
     On Behalf of Advanced Pain & Anesthesia Consultants
15   PC, BKC Pain Specialists, and Cincinnati Pain
     Management Consultants, Inc.:
16          CAROLINE M. KELLY, Esquire
            Morrison Mahoney, LLP
17          250 Summer Street
            Boston, Massachusetts  02210
18          (617) 737-8885
            (617) 342-4802 (facsimile)
19          ckelly@morrisonmahoney.com

20   On Behalf of Tim I. Chowdhury, M.D.:
            BARTHOLOMEW T. FREEZE, Esquire
21          FREUND, FREEZE & ARNOLD
            Suite 800
22          65 E. State Street
            Columbus, Ohio 43215-4247
23          (614) 255-7567
            (614) 827-7303 (facsimile)
24          bfreeze@ffalaw.com

25
```

```
 1   On Behalf of Ocean State Pain Management, Inc. and
     Abdul Barakat, M.D.:
 2        THOMAS M. DOLAN, III, Esquire
          Capplis, Connors & Carroll, PC
 3        Suite 330
          18 Tremont Street
 4        Boston, Massachusetts  02108
          (617) 227-0722
 5        (617) 227-0772 (facsimile)
          tdolan@capplisconnors.com
 6
     On Behalf of a Defendant Party:
 7        JOSEPH C. KLAUSING, Esquire
          O'Bryan, Brown & Toner, PLLC
 8        1500 Starks Building
          455 South 4th Street
 9        Louisville, Kentucky  40202
          (502) 585-4700
10        klausingj@obtlaw.com

11   On Behalf of a Defendant Party:
          CALLAN STEIN, Esquire
12        Donoghue Barrett & Singal, PC
          Suite 1320
13        One Beacon Street
          Boston, Massachusetts  02108
14        (617) 720-5090
          (617) 720-5092 (facsimile)
15        cstein@dbslawfirm.com

16   Also Present:
     Timothy Awad, videographer
17

18

19

20

21

22

23

24

25
```

1  A.     Okay.  Basically 90 to 95 percent of our
2  medications that we purchase for St. Thomas West or at
3  that time St. Thomas Hospital come from our
4  wholesaler, that's McKesson.  The other five -- five
5  to ten percent come directly from -- we can buy
6  directly from a manufacturer or from another
7  wholesaler called Cardinal Specialty, which they're
8  items that are specially products that are usually the
9  higher priced items that usually the wholesaler does
10 not carry because of the price of specialty blood
11 products and things like that we buy from Cardinal,
12 and we buy some things direct from Hospira.  We buy
13 from PharMEDium.  So we buy differently, but majority
14 of what we buy are -- 90 to 95 percent of everything
15 we're able to buy from our wholesaler.
16 Q.     All of that stuff was from FDA regulated
17 drug manufacturers; is that true?
18 A.     Yes.
19 Q.     And -- and all of the purchases that were
20 made by St. Thomas Hospital were made under the
21 supervision of a licensed pharmacist; is that true?
22 A.     Yes.
23 Q.     And at any point in time did anyone with
24 the St. Thomas Outpatient Neurosurgical Center talk
25 with anyone in the hospital pharmacy department about

1   purchasing medicines from any compounding pharmacy or
2   NECC in particular?
3       A.      Not that I am aware of.
4       Q.      If -- if someone with the St. Thomas
5   Outpatient Neurosurgical Center had contacted you and
6   asked you for guidance about whether it was
7   appropriate to buy medicine in bulk from NECC without
8   using patient-specific prescriptions, would you have
9   approved that conduct?
10              MS. PUIG:  Object to form.
11              MR. TARDIO:  Object to the form.
12              MS. PUIG:  Go ahead.
13      Q.      (By Mr. Nolan)  You can go ahead and
14  answer.
15      A.      Okay.  So can I ask you whether you're
16  talking about before the incident or after the
17  incident?
18      Q.      If before the incident someone from St.
19  Thomas Outpatient Neurosurgical Center had contacted
20  you and told you that they intended to buy medicine
21  from NECC in bulk without patient-specific
22  prescriptions, would you have approved that conduct?
23              MS. PUIG:  Object to form.  Go ahead.
24              THE WITNESS:  Okay.  I would have had
25         to done -- I would have had to research it

```
 1   policies; is that true?
 2        A.    Correct.
 3        Q.    Have you ever evaluated a compounding
 4   pharmacy?
 5        A.    No.
 6        Q.    Have you ever visited one?
 7        A.    No.
 8        Q.    Do you know whether St. Thomas Hospital has
 9   ever evaluated a compounding pharmacy?
10        A.    St. Thomas Hospital?
11        Q.    Yeah.
12        A.    No.
13        Q.    Meaning you don't know?
14        A.    Not that I'm aware of.  Sorry.
15        Q.    So it has never -- St. Thomas Hospital, to
16   your knowledge, has never evaluated a compounding
17   pharmacy?
18        A.    Exactly.
19        Q.    If someone in the hospital pharmacy
20   department became aware that St. Thomas Outpatient
21   Neurosurgical Center was purchasing medicine from
22   NECC, would you have expected that person to notify
23   Mr. Kelvas, the pharmacy director?
24              MS. PUIG:  Object to form.  Go ahead
25        and answer.
```

```
 1              THE WITNESS:  Would I have expected
 2       someone to do that?
 3       Q.    (By Mr. Nolan)  Uh-huh (affirmative).
 4              MS. PUIG:  Same objection.  Answer.
 5       Go ahead.
 6              THE WITNESS:  I mean, honestly, I
 7       have not thought of that, to be quite
 8       honest with you, and I would say I'm just
 9       not really sure that that would be our
10       place to do that because we don't supply
11       pharmaceuticals to STOPNC.
12       Q.    (By Mr. Nolan)  As a licensed pharmacist
13  and someone who works at the hospital, does it concern
14  you to know now as we sit here today that St. Thomas
15  Outpatient Neurosurgical Center, which is located on
16  the 9th floor of one of the buildings on the St.
17  Thomas Hospital campus, was purchasing as many as 500
18  vials a month of MPA from New England Compounding
19  Center without patient-specific prescriptions?
20              MS. PUIG:  Object to form.
21              MR. TARDIO:  Object to the form.
22       Q.    (By Mr. Nolan)  Does that concern you?
23              MS. PUIG:  Same objection.
24              THE WITNESS:  I mean, I think that's
25       hard for me to answer in lieu of everything
```

1  context or some information or if I move topics and
2  you don't follow me, just tell me; okay?
3       A.      (Witness nods head affirmatively.)
4       Q.      One thing I wanted to confirm, and I think
5  you told me earlier -- told us earlier is you didn't
6  tell anyone at STOPNC about Marty Kelvas's instruction
7  to you and the staff not to buy from NECC; is that
8  true?
9       A.      That's correct.
10      Q.      And to your knowledge, Marty Kelvas did not
11 tell anyone at STOPNC about the instruction not to buy
12 from NECC or compounding pharmacy?
13      A.      I'm not personally aware of anything.
14      Q.      Okay.  You, as -- well, tell me or tell us
15 again, what was your formal title in 2012.
16      A.      Manager of operations.
17      Q.      As manager of operations you were not
18 responsible for purchasing medications for STOPNC;
19 right?
20      A.      That is correct.
21      Q.      In 2012; true?
22      A.      That is true.
23      Q.      Okay.  And your department wasn't
24 responsible for purchasing medications for STOPNC,
25 true, in 2012?

1    A.    Correct.
2    Q.    Do you have any recollection of any time
3  that anyone at STOPNC called you and asked you for
4  advice on purchasing medications?
5    A.    Correct.
6    Q.    Do you have any recollection of that?
7    A.    No.  I have no -- no.  I'm sorry.
8    Q.    That's okay.
9    A.    I have no recollection of anyone calling me
10  personally to ask that question.
11    Q.    Okay.  Would that have been an unusual
12  thing to occur, that somebody from an -- outside the
13  hospital would call you for an advice on buying?
14        MR. NOLAN:  Object to the form.
15    Q.    (By Mr. Tardio)  Did that ever happen?  I
16  mean, I know it didn't happen with STOPNC.  You don't
17  remember it happening with STOPNC.  Is that something
18  that would happen?
19    A.    That's what I'm saying.  I do not recall
20  anybody asking me.
21    Q.    Uh-huh (affirmative).
22    A.    Again, I don't have that recall.  And I
23  wouldn't see any reason why anybody would, but...
24    Q.    Was one of your job duties to be a resource
25  for joint ventures?

1                      DISCLOSURE

2

               Pursuant to Article 10.B of the Rules
3       and Regulations of the Board of Court
        Reporting of the Judicial Council of
4       Georgia which states:  "Each court reporter
        shall tender a disclosure form at the time
5       of the taking of the deposition stating the
        arrangements made for the reporting
6       services of the certified court reporter,
        by the certified court reporter, the court
7       reporter's employer or the referral source
        for the deposition, with any party to the
8       litigation, counsel to the parties, or
        other entity.  Such form shall be attached
9       to the deposition transcript," I make the
        following disclosure:
10
               I am a Georgia Certified Court
11      Reporter.  I am here as a representative of
        Discovery Litigation Services, LLC.
12      Discovery Litigation Services, LLC was
        contacted to provide court reporting
13      services for the deposition.  Discovery
        Litigation Services, LLC will not be taking
14      this deposition under any contract that is
        prohibited by O.C.G.A. 9-11-28(c).
15
               Discovery Litigation Services, LLC
16      has no contract/agreement to provide
        reporting services with any party to the
17      case, any counsel in the case, or any
        reporter or reporting agency from whom a
18      referral might have been made to cover this
        deposition.
19
               Discovery Litigation Services, LLC
20      will charge its usual and customary rates
        to all parties in the case, and a financial
21      discount will not be given to any party to
        this litigation.
22

23
                            Blanche J. Dugas
24                          CCR No. B-2290

25

```
 1   STATE OF GEORGIA:

 2   COUNTY OF FULTON:

 3

 4            I hereby certify that the foregoing

 5       transcript was reported, as stated in the

 6       caption, and the questions and answers

 7       thereto were reduced to typewriting under

 8       my direction; that the foregoing pages

 9       represent a true, complete, and correct

10       transcript of the evidence given upon said

11       hearing, and I further certify that I am

12       not of kin or counsel to the parties in the

13       case; am not in the employ of counsel for

14       any of said parties; nor am I in any way

15       interested in the result of said case.

16

17

18

19

20              BLANCHE J. DUGAS, CCR-B-2290

21

22

23

24

25
```

1                    CAPTION

2

3          The Deposition of CARMEN LEFFLER, taken in
4   the matter, on the date, and at the time and place set
5   out on the title page hereof.
6          It was requested that the deposition be
7   taken by the reporter and that same be reduced to
8   typewritten form.
9          It was agreed by and between counsel and
10  the parties that the Deponent will read and sign the
11  transcript of said deposition.
12
13
14
15
16
17
18
19
20
21
22
23
24
25

```
 1                        CERTIFICATE
 2    STATE OF GEORGIA
 3    COUNTY OF FULTON
 4             Before me, this day, personally appeared,
 5    CARMEN LEFFLER, who, being duly sworn, states that the
 6    foregoing transcript of her deposition, taken in the
 7    matter, on the date, and at the time and place set out
 8    on the title page hereof, constitutes a true and
 9    accurate transcript of said deposition.
10
11    _____
12    CARMEN LEFFLER
13
14             SUBSCRIBED and SWORN to before me this
15    _____day of_____, 20___ in the
16    jurisdiction aforesaid.
17
18    _____     _____
19    My Commission Expires    Notary Public
20
21    *If no changes need to be made on the following two
22    pages, place a check here ____, and return only this
23    signed page.*
24
25
```

# DEPOSITION ERRATA SHEET

| Page and line | Change to | Reason for change |
|---|---|---|
| GLOBAL | "St. Thomas Health" should be "Saint Thomas Health" | Transcription error |
| GLOBAL | "St. Thomas Network" should be "Saint Thomas Network" | Transcription error |
| GLOBAL | "St. Thomas West" should be "Saint Thomas West" | Transcription error |
| GLOBAL | "St. Thomas Entities" should be "Saint Thomas Entities" | Transcription error |
| 8/11 | Add "[Correction: witness recalls a prior deposition.]" | Misspoke |
| 10/15 | "compounding" should be "medications" | Misspoke |
| 21/7 | Add "I need" in between "I guess" and "a little bit" | Clarification |
| 21/8 | Insert quotation marks around "discussed it" | Clarification |
| 46/25 | Change "generalization" to "generalized" | Transcription error or misspoke |
| 57/8 | Change "thing" to "watch" | Misspoke |
| 57/10 | Insert "director" after "became" | Transcription error or misspoke |
| 61/6 | Change "vendors" to "vendor shows" | Misspoke |
| 85/14 | Remove "currently" | Misspoke |
| 85/24 | Remove "currently" | Misspoke |
| ~~95/3~~ | ~~Change "there's my names on a lot of vendors" to "many vendors have my name"~~ | ~~Clarification~~ |
| 100/13 | Change "Why" to "What" | Transcription error or misspoke |
| 106/25 | Change "lieu" to "light" | Transcription error or misspoke |
| 107/21 | Change "compounding" to "compounder" | Transcription error or misspoke |
| 108/5 | Change "stipulations" to "regulations" | Misspoke |

SIGNATURE: *Carmen Leffler*     DATE: 9-23-15

```
                                                              Page 144

 1                    DEPOSITION ERRATA SHEET

 2

 3    DLS Assignment No.  23347

 4    Case Caption:   In Re:  New England Compounding

 5                    Pharmacy, Inc. Products Liability

 6                    Litigation

 7

 8    Witness:  CARMEN LEFFLER - 08/21/2015

 9

10          DECLARATION UNDER PENALTY OF PERJURY

11    I declare under penalty of perjury that I have read

12    the entire transcript of my deposition taken in the

13    ~~captioned matter or the same has been read to me, and~~

14    The same is true and accurate, save and except for

15    changes and/or corrections, if any, as indicated by me

16    on the DEPOSITION ERRATA SHEET hereof, with the

17    understanding that I offer these changes as if still

18    under oath.

19

20    Signed on the  _23_  day of

21    _September_ , 20_15_.

22

23    _Carmen Leffler_____

24    CARMEN LEFFLER

25
```