```
 1                    UNITED STATES DISTRICT COURT
 2                    DISTRICT OF MASSACHUSETTS
 3

 4
      IN RE:  NEW ENGLAND COMPOUNDING   )  MDL NO. 13-02419-RWZ
 5    PHARMACY CASES LITIGATION         )
                                        )
 6                                      )
                                        )
 7                                      )
                                        )
 8                                      )
 9         BEFORE:  THE HONORABLE RYA W. ZOBEL AND
                    THE HONORABLE JENNIFER C. BOAL
10

11

12
                       MOTION HEARING
13                          AND
                    STATUS CONFERENCE
14

15

16
           John Joseph Moakley United States Courthouse
17                    Courtroom No. 12
                      One Courthouse Way
18                    Boston, MA 02210

19
                      March 10, 2016
20                      2:00 p.m.

21
           Catherine A. Handel, RPR-CM, CRR
22              Official Court Reporter
           John Joseph Moakley United States Courthouse
23            One Courthouse Way, Room 5205
                    Boston, MA 02210
24            E-mail: hhcatherine2@yahoo.com

25
```

1    APPEARANCES:

2

3    FOR THE PLAINTIFFS:

4        Hagens, Berman, Sobol, Shapiro LLP, by KRISTEN A. JOHNSON,
     ESQ., 55 Cambridge Parkway, Suite 301, Cambridge, Massachusetts
5    02142;

6        Janet, Jenner & Suggs, LLC, KIMBERLY A. DOUGHERTY, ESQ., 75
     Arlington Street, Suite 500, Boston, Massachusetts 02116;

7

8        Branstetter, Stranch & Jennings, PLLC, by J. GERARD STRANCH,
     ESQ., 227 Second Avenue North, Nashville, Tennessee 37201-1631;

9

10       Ellis & Rapacki LLP, by FREDRIC L. ELLIS, ESQ., 85 Merrimac
     Street, Suite 500, Boston, Massachusetts 02114;

11

12       Lieff Cabraser Heimann & Bernstein, LLP, by ANNIKA K.
     MARTIN, ESQ., 250 Hudson Street, 8th Floor, New York, New York
13   10013-1413;

14

15       Lieff Cabraser Heimann & Bernstein, LLP, by MARK P. CHALOS,
     ESQ., 150 Fourth Avenue North, Suite 1650, Nashville, Tennessee
16   37219;

17

18

19   FOR PAUL D. MOORE, IN HIS CAPACITY AS CHAPTER 11 TRUSTEE OF
     NECP, INC.:

20

21       Duane Morris LLP by MICHAEL R. GOTTFRIED, ESQ., 100 High
     Street, Suite 2400, Boston, Massachusetts 02110-1724;

22

23

24   (Appearances continued on the next page.)

25

```
1    APPEARANCES (Cont'd):

2

3     FOR THE DEFENDANTS:

4
          Gideon, Cooper & Essary, PLC, by CHRIS J. TARDIO, ESQ., 315
5    Deaderick Street, Suite 1100, Nashville, Tennessee 37238;

6
          Fulbright & Jaworski, LLP, by MARCY H. GREER, ESQ., and
7    ERIC J. HOFFMAN, ESQ., 98 San Jacinto Boulevard, Suite 1100,
     Austin, Texas 78701;
8
9          Pessin Katz Law, P.A., by GREGORY K. KIRBY, ESQ., 901
     Dulaney Valley Road, Suite 500, Towson, Maryland 21204;
10
11         Law Offices of Jay Blumberg, by CHRISTOPHER M. WOLK, ESQ.,
     158 Delaware Street, P.O. Box 68, Woodbury, New Jersey 08096;
12
13    FOR INTERESTED PARTY:

14
          State of Tennessee, Office of the Attorney General, by
15   STEPHANIE ASKEW BERGMEYER, ESQ., P.O. Box 20207, Nashville,
     Tennessee 37202-0207(appearing telephonically);
16

17

18

19

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S
 2         (The following proceedings were held in open court before
 3    the Honorable Rya W. Zobel, United States District Court Judge,
 4    and the Honorable Jennifer C. Boal, Magistrate Judge, United
 5    States District Court, District of Massachusetts, at the John J.
 6    Moakley United States Courthouse, One Courthouse Way, Boston,
 7    Massachusetts, on March 10, 2016.)
 8              THE COURT:  Please be seated and good afternoon.
 9              COURTROOM DEPUTY CLERK YORK:  Today is March 10,
10    2016.  We're on the record in the matter of NECC.  The case
11    number is 13-MD-2419.
12              JUDGE ZOBEL:  All right.  Can counsel on the
13    telephone hear us?
14              UNIDENTIFIED SPEAKER:  Yes, your Honor.
15              JUDGE ZOBEL:  Good.  Thank you.
16              All right.  Ms. Johnson, we go to your agenda, as
17    always.
18              MS. JOHNSON:  Good afternoon, your Honor.  Kristen
19    Johnson for the Plaintiffs' Steering Committee.
20              We have identified as letter (A) motions for which
21    argument is scheduled in the subsequent discovery hearing.
22    So, I think we can turn to (B).
23              Item 1, the status of the bankruptcy, Mr. Gottfried
24    will address.
25              MR. GOTTFRIED:  Good afternoon, your Honor.
```

1          I wanted to highlight a filing that we made, I think

2     a couple of days ago, providing notice to all of the parties

3     of the trustee's intention, subject to objection, and then the

4     Court disposing of an objection, if any, to destroy the

5     originals of the documents that have been scanned and will

6     continue to be preserved.  The facility is empty at this point

7     with the exception of those documents, and the next step is

8     either to move them to storage or shred them, and we would

9     prefer to save the estate the cost of storing and moving

10    documents which would be duplicative of the scanned documents.

11    So, I wanted to highlight that and indicate that under the

12    Court's modified preservation order, there was a 14-day period

13    to object if there are any objections.

14         JUDGE ZOBEL:  Was that notice given to the parties in

15    the criminal case?

16         MR. GOTTFRIED:  The only way that, you know, we have

17    to give notice is by -- we filed it in the MDL docket.  So, we

18    haven't done any additional notice to those parties.  To the

19    extent they are represented in the MDL, they would have

20    notice, but we haven't given any further notice.

21         JUDGE ZOBEL:  Well, that would certainly not include

22    the United States.

23         MR. GOTTFRIED:  Correct.  Though I will say, based on

24    the proceedings with respect to the modified preservation

25    order, they previously had assented, though I'm certainly

1    happy to reach out to them and make sure they're aware of this

2    notice.

3         JUDGE ZOBEL:  Are all of the defendants in the

4    criminal case parties in the MDL?

5         MR. GOTTFRIED:  I don't know the answer to that.  I

6    think not.  I don't know for sure.

7         JUDGE BOAL:  Mr. Gottfried, you, I believe, entered a

8    notice of appearance in the criminal case because there were

9    some disputes that touched on areas within your purview.

10   Would it be possible to file a notice in the criminal case as

11   well?

12        MR. GOTTFRIED:  If the ECF will allow us to, we

13   certainly would be happy to do that if that's the Court's

14   preference.

15        JUDGE ZOBEL:  Well, it just seems prudent to do that,

16   because it's not clear to me that the digitized version of

17   these documents is sufficient for the criminal case purposes.

18   Thank you.

19        MR. GOTTFRIED:  I will look into that and we will do

20   that.  Thank you, your Honor.

21        JUDGE ZOBEL:  Okay.  Ms. Johnson.

22        MS. JOHNSON:  That brings us to the second item,

23   which is the status of the Tennessee declaratory judgment

24   action.  Mr. Stranch will address that.

25        MR. STRANCH:  Your Honor, the update is there's --

1    nothing has changed since the last time we discussed it.

2    We're still waiting on the Court to rule.

3              JUDGE ZOBEL:  Okay.

4              MS. JOHNSON:  No. 3, the status of discovery.  The

5    Premier defendants have -- as the Court knows, have filed

6    notices of deposition by written question and Judge Boal has

7    issued an order addressing those.

8              There has been a motion to quash filed by Summit

9    Surgery Center on the basis that Summit did not purchase MPA

10   from NECC.

11             Based on the PSC's representations in the earlier

12   briefing, we believe there are other clinics who did not

13   purchase MPA who may have an interest in Summit's motion to

14   quash.  It is not clear to the PSC that other clinics have

15   received notice of the pending motion to quash or the

16   potential impact of an outcome on that motion to quash on the

17   pending depositions by written question.

18             JUDGE ZOBEL:  So, does anything need to be done to

19   notify the others?

20             MR. WOLK:  Well, your Honor -- is this on?  Can you

21   hear me, Judge?  This is Chris Wolk for the Premier

22   defendants.

23             The motion to quash, I believe, deals specifically

24   with issues that are specific to Summit themselves.  I don't

25   think that there's a need for the other clinics in the case to

1    be notified about a motion that doesn't necessarily pertain to

2    them.  If relief was to be granted based on Summit's motion,

3    it would apply to Summit.  It would be the responsibility of

4    the individual clinics themselves, if they felt it necessary,

5    to file a similar motion.  So far, some of the clinics have

6    indicated they may do that on their own, because they've

7    retained counsel and counsel has reached out to me to say that

8    they would do that.  Others have not and, still, other

9    depositions by written questions have been completed with no

10   motion practice at all.

11          So, at this point it would be Premier's position

12   that, in fact, the clinics do not need to be notified about

13   the motion to quash, and the reason for that, in addition to

14   what I've explained, is that it may suggest to them that they,

15   in fact, should do the same thing when, perhaps, there is no

16   basis to do that.  So, I don't want to muddy the waters here

17   on a process that's already proven to be a little bit

18   difficult logistically because of the location of some of

19   these clinics and just getting out the deposition by written

20   question themselves.  I wouldn't want to complicate that by

21   notifying them of something that isn't necessarily related to

22   them, especially when other clinics have expressed to us that

23   they're thinking about filing a motion.  They're well within

24   their right to do that, but may have not done that already.

25          MR. KIRBY:  Your Honor, if I may.  Greg Kirby on

1    behalf of the Box Hill defendants.

2         We also served Rule 31 deposition notices and

3    subpoenas on several clinics, and we received an email from

4    the Plaintiffs' Steering Committee suggesting that they wanted

5    to notify the entities that we noticed for deposition as well

6    under Rule 31 and let them know about this motion to quash

7    filed by an entity that has nothing to do with ours and, as

8    matter of fact, all of the deponents that we noticed, I think

9    -- that we served, save one, is scheduled -- have already been

10   scheduled and I think the majority have already even happened.

11   So, I just don't think it's appropriate to muddy the waters

12   and kind of obstruct validly, properly-served subpoenas.

13        JUDGE ZOBEL:  Okay.  Okay with you?

14        JUDGE BOAL:  Yes.  Obviously, there's no reason why

15   people can't tell other people about what's on the public

16   docket, but I'm not sure additional official notice needs to

17   be provided.

18        MS. JOHNSON:  Your Honor, I think one of the, perhaps

19   not obviously -- well, let me just say, I'm not clear that the

20   PSC has contact information for these clinics or for the

21   attorneys for these clinics.  I believe that's in the hands of

22   Premier and Box Hill.  So, I think that is one of the reasons

23   that we have not reached out to them to informally alert them

24   to the filing on the docket.

25        JUDGE ZOBEL:  So, yet another reason to leave things

1    as they are?

2          MS. JOHNSON:  Well, I would suggest, respectfully,

3    your Honor, it may be a reason to have Premier at least alert

4    them that there are proceedings that involve the question of

5    whether or not an entity purchased and if an entity didn't

6    purchase, there's at least an argument that they -- given

7    Judge Boal's thorough reasoned opinion, there may be a reason

8    that they ought not respond to the subpoena, but we're content

9    to do what the Court thinks best in the situation.

10          JUDGE ZOBEL:  I think we'll leave things where they

11   are.

12          MS. JOHNSON:  That brings us to Item -- well, Item B,

13   I suppose, we've addressed.  That's the Box Hill notice of the

14   deposition by written question.

15          Item C is really just by way of update.  There's been

16   an assented-to motion to extend the common discovery deadline

17   to June 1st in the Premier cases.

18          JUDGE BOAL:  So, I have two questions.  We had

19   Premier and Box Hill on different schedules.  They're now on

20   the same schedule.  So, is there any objection to Box Hill

21   being on the same schedule, based on the recently-filed

22   motion?

23          MR. KIRBY:  And let me just add -- I'm glad you

24   brought that up.  The plaintiffs already agreed to an

25   assented-to motion to extend our common issue fact discovery

1    deadline to June 1st as well.  I just have to draft it and

2    send it to them.

3         JUDGE ZOBEL:  Well, you don't need to draft it.  I'll

4    just include you in this decision.

5         MR. KIRBY:  Thank you.

6         JUDGE BOAL:  So, the other question that I had about

7    this, if I remember correctly, we had only scheduled out

8    Premier and Box Hill to a certain extent.  I don't think we

9    gave you deadlines for common expert discovery, et cetera.

10   So, what I would -- is that correct?

11        MR. WOLK:  That's correct, your Honor.  We don't need

12   to extend common issue --

13        JUDGE BOAL:  All right.  So, what I would ask is that

14   -- for you and the PSC to work up a schedule -- proposed

15   schedule, obviously, jointly if you can, and separately, if

16   necessary, and to file something within two weeks about the

17   rest of this schedule, and if it's disputed, we can take it up

18   at the next conference and if not, I'll endorse the schedule,

19   assuming it's reasonable.

20        MR. WOLK:  That's fine, your Honor.

21        MS. JOHNSON:  Would the Court be interested also in

22   extending out through a proposed Bellwether process?  Meaning,

23   we're happy to provide whatever schedule the Court would like.

24   I'm wondering how far out the Court would like us to play the

25   schedule.

```
1                JUDGE ZOBEL:  I think we'll come to that in a moment.

2                MS. JOHNSON:  Okay.  That brings us to 3(d), the

3      Court rulings update.  On the first item, the Court has

4      allowed the protective -- those qualified protective order.

5      The PSC is optimistic that this will help us to resolve

6      private liens which will hasten the sending out of checks.

7                On (d)ii the Court had also granted the emergency

8      motion to extend the common expert discovery deadline until

9      April 9th.

10               That brings us to 4, the status of --

11               MS. GREER:  Your Honor, if I may interrupt.  Marcy

12     Greer for the Saint Thomas Entities.

13               We had filed a proposed supplement to the agenda

14     asking that the next item that is to be presented be heard as

15     an oral argument.

16               JUDGE ZOBEL:  I think not.  We've had extensive

17     briefing.  In fact, here's all the briefing (indicating).  I

18     think that's enough.  Thank you.

19               Well, if we are ready for that, then let me tell you

20     what -- I have decided the order of what the Bellwether trials

21     should be, except I have now mucked up my papers.  We will

22     start with Wray, continue with Temple.  Then I think it's

23     McElwee or McElwee, I think --

24               MR. STRANCH:  McElwee.

25               JUDGE ZOBEL:  And Skelton, in that order, and I have
```

1    taken into account the nature of the impact on each of these

2    plaintiffs, any difficulties that might not be representative

3    of all of them.  For example, one of the plaintiffs also has

4    multiple sclerosis which would make it difficult to carry over

5    any result to other cases.  Some of them have some liability

6    issues, statute issues, and those we decided would be at the

7    end of the list after the four.  So, those are the four that

8    we're going forward with.

9            Now, the plaintiffs have suggested that they might be

10   ready as to some cases, not necessarily these, in June.  I

11   think that may be too optimistic and I am proposing that we

12   try one case in July, one in -- I'm assuming cases would take

13   maybe two weeks to try, not more than that.  If it's

14   substantially less, then maybe we'll think about it

15   differently, but I'm proposing one in July, one in August, one

16   September, one in October.

17           MR. HOFFMAN:  Your Honor, my name is Eric Hoffman for

18   the Saint Thomas Entities.  I'm speaking for Yvonne Puig and

19   Adam Schramek who are partners on this case.  I know that they

20   cannot do July due to unavoidable commitments.  So, July would

21   not work for the Saint Thomas Entities.

22           JUDGE ZOBEL:  Well, we may have to hear more detail

23   about that before we decide to move it --

24           MR. HOFFMAN:  Sure.  We would happy to file --

25           JUDGE ZOBEL:  -- all of July and we can do it

```
1   beginning or the end, but I would be loath to just give up the
2   entire month.
3           MR. HOFFMAN:  Sure.  Your Honor, if we may, may we
4   file a supplement explaining --
5           JUDGE ZOBEL:  Absolutely.
6           MR. HOFFMAN:  Thank you, your Honor.
7           JUDGE ZOBEL:  But you will have to work hard to
8   persuade me that July is off the list.
9           MR. HOFFMAN:  Thank you, your Honor.
10          JUDGE ZOBEL:  So, that takes care of...
11          MS. JOHNSON:  I believe that concludes 4(a), your
12  Honor.
13          JUDGE ZOBEL:  But I lost your agenda.  Here it is.
14          Okay.  Now 4(b).
15          MS. JOHNSON:  4(b), update on common expert
16  discovery.  Again, Mr. Stranch.
17          MR. STRANCH:  Your Honor, the update will be very
18  brief.  As you may recall, at the last status conference there
19  was a discussion about extending the deadline for common
20  experts briefly so that we could get every schedule --
21          THE COURT:  That was done.
22          MR. STRANCH:  That was done.  All the expert
23  depositions have now been scheduled, I think, except for one
24  because it had to be rescheduled because of an unavoidable
25  conflict with the expert.  Most of them have now been taken.
```

1   There are still more going on and we anticipate having them

2   all completed before the deadline of April 9 that the Court

3   set.

4           JUDGE ZOBEL:  Thank you.

5           MS. JOHNSON:  That brings us to 4(c), your Honor, the

6   Court rulings update.

7           MR. TARDIO:  Your Honor, can I ask a question that I

8   think fits in this discussion for --

9           JUDGE ZOBEL:  I'm sorry.  Would you identify

10  yourself, please.

11          MR. TARDIO:  Yes.  Chris Tardio for Saint Thomas

12  Out-Patient Neurosurgerical Center and various other Tennessee

13  defendants.

14          As I understand what the Court just said, we've got

15  four trial cases and the Court set out the sequence.  We are

16  -- the plaintiffs have disclosed case-specific experts and our

17  deadline to disclose our case-specific experts I think is

18  April 7th, and I wonder whether it makes any sense for us to

19  disclose case-specific experts in cases that are not in the

20  first four trial cases and I --

21          JUDGE ZOBEL:  Why do you think that that may be a

22  good idea?

23          MR. TARDIO:  Not to do so?  Because --

24          JUDGE ZOBEL:  Or to do so.

25          MR. TARDIO:  That's my suggestion, that maybe it

1    doesn't make any sense for us to engage case-specific experts

2    and disclose them and take the time and expense to do reports

3    in the, I think, three cases that are not in the first four

4    trial cases.  So, that would -- my suggestion to the Court and

5    to the PSC would be that we disclose case-specific experts

6    only in Wray, Temple, McElwee and Skelton for now.

7              JUDGE ZOBEL:  Mr. Stranch.

8              MR. STRANCH:  Yes, your Honor.  We think -- for the

9    PSC, we think it would make sense to go ahead and continue to

10   prep all the cases, because after these four cases go, there's

11   going to be other cases that are going to need to be tried.

12   We've disclosed all our case-specific experts, even for the

13   ones -- not these four.  And so, that should take --

14             JUDGE ZOBEL:  So, you're talking about three more?

15             MR. STRANCH:  Three more.  That's all it is.  And

16   that way, they're ready if those cases need to be tried or

17   not.  You know, if there was some concerted effort to try to

18   mediate and resolve this case, maybe it would make sense to

19   save some on that, but, you know, that's not really happening

20   right now, and if the Court wants an update on what is going

21   on with that, I would be happy to provide that.

22             MR. TARDIO:  How about this?  How about if the Court

23   is intent on agreeing with Mr. Stranch, that we need to

24   disclose in these, I think, three remaining cases, I would

25   suggest that we just don't take the depositions yet.  I don't

think there's any reason to take case-specific expert
depositions in the three cases that are not going to be in the
first trial set.

MR. STRANCH:  Yes.  Your Honor, one of these four
cases could resolve, you know, one of these cases could be,
you know, removed from trial due to settlement or other
reasons.  We need to have other cases ready to take their
place.  And so, we think they should continue going forward as
it is.  I mean, one of these plaintiffs might pass away.  It
might change the nature of the case.  And so, they might need
to be bumped and we need to have other cases that can step in
to fill those slots if that does happen, and we're not really
talking about a lot of additional work.  It's just three more
cases, and there's a lot of overlap in the experts as well,
your Honor.  And so, it's really not adding an additional
large amount of work to this.

JUDGE ZOBEL:  Are the experts -- the expert
depositions have not yet been taken or have they?

MR. TARDIO:  Not the case-specific expert
depositions.  Common expert depositions are --

JUDGE ZOBEL:  So, all we're talking about is case
specific.  And are the experts different from the four that
are now on the actual trial list?

MR. TARDIO:  Some will overlap.  Some will not.

JUDGE ZOBEL:  How many overlap?

1          MR. TARDIO:  I don't know, your Honor.

2          JUDGE ZOBEL:  It seems to me, at the very least, the

3     overlapping ones should cover everybody.

4          MR. TARDIO:  I understand.  And maybe it would be

5     best for us to talk --

6          JUDGE ZOBEL:  I think so.

7          MR. TARDIO:  -- and see if we can work out some

8     resolution where even if we could cut out a deposition or two,

9     it may help.

10          JUDGE ZOBEL:  Mr. Stranch is right that although

11     there is now a list, it's not cast in stone because we don't

12     know what will happen with respect to plaintiffs' lawyers, or

13     whatever.  So, I think it makes a certain amount of sense to

14     have all of them ready to go with minimal last-minute stuff.

15     So, talk to each other and see what you can work out and if

16     there's a problem, you'll let us know.

17          MR. TARDIO:  Thank you, your Honor.

18          MR. STRANCH:  Thank you, your Honor.

19          JUDGE ZOBEL:  Thank you.

20          Now, we were at Court's rulings update.

21          MS. JOHNSON:  Yes.  And just to quickly acknowledge,

22     your Honor, the Court since the last status conference has

23     granted the Ocean State motion to dismiss and also has entered

24     an order and opinion on the cross-motion for summary judgment

25     dealing with the Tennessee product liability issue.

1          And then, your Honor, that brings us to 4(d), status

2     of the entry of final judgment as to settling parties, and I

3     believe Ms. Ragosta on behalf of ARL had requested that that

4     be added to the agenda.

5          JUDGE ZOBEL:  I thought that was done.  Are we still

6     not -- we still don't have orders on parties that have

7     settled?

8          MS. JOHNSON:  We thought it had been done, your

9     Honor.  I'm not sure of the nature of Ms. Ragosta's concern on

10    that topic.

11         JUDGE ZOBEL:  I'm sorry.  Who is the person who is

12    speaking on this, who will speak on it?

13         MS. JOHNSON:  Ms. Ragosta, R-a-g-o-s-t-a.

14         THE COURT:  Is Mr. (sic) Ragosta here or on the line?

15    Here?  I'm sorry?

16         MS. JOHNSON:  She's on the phone.

17         JUDGE ZOBEL:  So, Mr. Ragosta, can you tell us what

18    the problem is?

19         MS. RAGOSTA:  Yes, your Honor.

20         JUDGE ZOBEL:  Oh, Ms. Ragosta.  Sorry.

21         MS. RAGOSTA:  That's okay.

22         From a review of the docket, the cases are still

23    active against ARL.  So, it didn't appear that they had been

24    -- final judgment had entered.  I didn't receive any notice of

25    final judgment entering either .

1          JUDGE ZOBEL:  Did we enter one judgment in all of

2    these cases or were separate judgments entered in each case?

3          MS. JOHNSON:  I think I understand that, your Honor.

4    The Court entered a final judgment.  We then went through a

5    process where the PSC provided a list to the Court of cases

6    that were to be dismissed over which final judgment should be

7    entered.

8          I'm not clear whether the Clerk has actually entered

9    judgment in whatever the ministerial fashion is in terms of

10   clicking the box on the computer screen such that the

11   electronic version of the docket shows that judgment has been

12   entered.

13         JUDGE ZOBEL:  The one judgment listed all the cases

14   separately?

15         MS. JOHNSON:  No, your Honor.

16         JUDGE ZOBEL:  Or was it in the MDL?

17         MS. JOHNSON:  It was in the MDL.

18         THE COURT:  So, what is missing is the individual --

19   judgment in the individual cases?

20         MS. JOHNSON:  Yes, your Honor.

21         JUDGE ZOBEL:  Okay.  Would you have a better handle

22   on the missing ones or would Ms. Ragosta?  I'm asking Ms.

23   Johnson, Ms. Ragosta.

24         MS. JOHNSON:  I think we do.  The PSC has provided to

25   the Court previously a list of those cases for which final

1  judgment should be entered.

2         JUDGE ZOBEL:  And that list obtains today?

3         MS. JOHNSON:  That list obtains today.

4         JUDGE ZOBEL:  So, it is now our job to go over that

5  list and make sure that the Clerk clicks all the necessary

6  buttons?

7         MS. JOHNSON:  Yes, your Honor.  And to the extent

8  there is anything further that we could provide to assist the

9  Clerk's Office in that, whether -- I don't know if it's a

10 workable Excel file or something like that would be helpful,

11 we're glad to do that.

12        JUDGE ZOBEL:  Well, have any of them been entered?  I

13 mean, has the Clerk taken that list and entered any of them?

14 None of them?

15        So, I think our job now is to enter them and once

16 that is done, if any are missing, you will let us know, and

17 Ms. Ragosta as well.  I'm sorry about that, but I will make

18 sure that the Clerk gets it done.

19        MS. JOHNSON:  Thank you, your Honor.

20        And without complicating things, I do want to point

21 out when the PSC provided that list, it provided a second list

22 that identified actions where some defendant was still

23 remaining.  So, final judgment would not be appropriate, but

24 we provided a list of actions in which all of the settling

25 defendants should be dismissed out.

```
1              It's unclear to me whether there is an action that
2      the Clerk would take in that situation because the cases are
3      still live, but just to explain to the Court there are two
4      lists out there.
5              JUDGE ZOBEL:  So, they're Rule 54-like motions?
6              MS. JOHNSON:  Correct.
7              JUDGE ZOBEL:  I think what I will do is ask Ms. Urso
8      or the Docket Clerk to work with counsel to make sure that we
9      do it right.
10             MS. JOHNSON:  And we will be happy to help in any way
11     we can, your Honor.
12             JUDGE ZOBEL:  Okay.
13             MS. JOHNSON:  That brings us to Item 5, the report
14     from the pro se liaison.
15             MS. MARTIN:  Good afternoon, your Honor.
16             As you recall, last time we discussed --
17             JUDGE ZOBEL:  You had no report the last time.
18             MS. MARTIN:  Well, no.  I had a little update on the
19     process with Judge Neiman to deal with the nine pro se's that
20     he denied their appeals.  And so, he instructed those pro se's
21     to contact me if they wanted my assistance in filing a motion
22     with the bankruptcy court to allow their late claims.
23             As of today, six of the nine have contacted me.  That
24     motion is due on March 25th.  So, we'll see if any of the
25     others contact me in that interim, and I will file a motion
```

| 1 | with the bankruptcy court by that date and, hopefully, their |

1  with the bankruptcy court by that date and, hopefully, their

2  claims will all be allowed and we can move forward.

3          JUDGE ZOBEL:  Thank you.

4          MS. JOHNSON:  That brings us to No. 6, the schedule

5  for future status conferences.

6          JUDGE ZOBEL:  Now, we have a date in April and a date

7  in May.  Do we need to set one for June?

8          MS. JOHNSON:  Yes, please, your Honor.

9          JUDGE ZOBEL:  Do you have the calendar, Steve?

10          COURTROOM DEPUTY CLERK YORK:  I do, your Honor.

11          (Discussion off the record at the Bench.)

12          JUDGE ZOBEL:  What date in June were you looking for,

13  Ms. Johnson?

14          MS. JOHNSON:  I would suggest either Thursday, the

15  16th, or Thursday, the 23rd.

16          JUDGE ZOBEL:  So, let's do the 23rd, since that

17  appears to be open on my calendar.  Is it okay for you?

18          JUDGE BOAL:  Yes, it's fine for me, but we have a

19  trial scheduled that morning.  So, I'll have to hear any

20  motions at three o'clock that day.

21          MR. STRANCH:  Your Honor, would you anticipate using

22  that date also as a final pretrial conference for the July

23  trial?

24          JUDGE ZOBEL:  I hadn't really thought about that.  I

25  don't know that we need all 40 lawyers on the telephone for

1  the pretrial.  We need only those who are actually going to be

2  involved in the trial.  So, we can set a separate date.  We

3  don't have to take that time.

4          MR. STRANCH:  Okay.

5          THE COURT:  I mean, maybe it makes sense to do it at

6  the same time, but I'm not sure.

7          MR. STRANCH:  Okay.

8          THE COURT:  It certainly involves a rather fewer

9  number of people than are here today.

10          MR. STRANCH:  That's correct.

11          JUDGE ZOBEL:  Okay.  I'll think about that.  Would it

12  be more convenient for counsel if we did it on this day?

13          MR. STRANCH:  It would probably be more convenient --

14          (Unidentified person speaking on the telephone.)

15          MR. STRANCH:  Yes, your Honor, it would probably be

16  more convenient for us to do it at the same time.

17          (Unidentified person speaking on the telephone.)

18          JUDGE ZOBEL:  I'm sorry.  Who is speaking?

19          MS. JOHNSON:  Could counsel on the telephone

20  please --

21          JUDGE ZOBEL:  It's very strange to have these

22  disembodied voices, where they come from.

23          Okay.  So, June 23rd, at 2:00, is the next meeting.

24          Now, if Judge Boal has to take part of the afternoon

25  for her part, then maybe what I should do is see what my

```
 1    schedule is in the morning -- I don't know at the moment --
 2    and maybe have the pretrial in the morning.
 3            MR. STRANCH:  That would be fine, your Honor, or we
 4    could do it the day before or the day after.  We can be
 5    flexible, but if we're all already going to be here, it would
 6    just make sense to go ahead and do it at the same time.
 7            JUDGE ZOBEL:  Okay.  So, pretrial in July cases on
 8    6/23 a.m. or 6/22.  Okay.  Thank you.
 9            MS. JOHNSON:  That brings us to Section C, your
10    Honor.  There is one fully-briefed motion.  However, oral
11    argument on that has been waived.  So, that is to be decided
12    on the papers, according to the parties' agreement.
13            JUDGE ZOBEL:  This is the Saint Thomas motion for
14    summary -- global motion for summary judgment, is that what
15    you're talking about?  So, that should be decided on papers?
16            MS. JOHNSON:  Well, it's their request for leave to
17    file that motion that should be decided on the papers.
18            MS. GREER:  Your Honor, that motion was granted
19    yesterday.
20            JUDGE ZOBEL:  The motion for leave to file was
21    allowed.  So, the only question is whether we need argument on
22    the motion itself, on the substantive motion.
23            MS. GREER:  Your Honor, may I address that?
24            JUDGE ZOBEL:  Yes.
25            MS. GREER:  We are going to get the motion on file as
```

1    quickly as possible.  We already have all the exhibits and the

2    motion, of course, is done.  The only question is that many of

3    those exhibits are under confidentiality under the protective

4    order, and we understood that we would have some sort of

5    protocol in place for determining what is submitted under seal

6    and what is not.  Obviously, the motion itself would not be

7    under seal, but a lot of the documents --

8         JUDGE ZOBEL:  I can give you a short answer on that,

9    which is that I wish counsel to get together and sort of

10   ignore the procedural order, the discovery order, protective

11   order, and decide what is actually necessary to be

12   confidential and not just because the lawyer said it's

13   confidential, but whether it is actually confidential, and

14   whatever is not actually confidential should be filed as part

15   of the public record and everything else, if there is

16   anything -- I hope nothing -- can be filed under seal with

17   redaction in the public papers.

18        MS. GREER:  Okay, your Honor.  We will get it on file

19   as quickly as we can.

20        JUDGE ZOBEL:  Thank you.

21        MS. JOHNSON:  That brings us then to the briefing in

22   progress section of the agenda, your Honor, and unless anyone

23   in the courtroom or on the phone feels otherwise, I don't

24   think there's anything to address in these motions today.

25        MR. WOLK:  Your Honor, just very briefly.  I just

1    wanted to bring up that I filed a notice of extension for ten

2    days more to respond to the Summit motion to quash.  I filed

3    that last night.  I'm just going to assume that the deadline

4    is --

5              JUDGE ZOBEL:  Which one is that?

6              MR. WOLK:  It's (b).

7              JUDGE ZOBEL:  No. 1(b)?

8              MR. WOLK:  Yes.  So, I'll just assume that the

9    deadline will now be ten days beyond because of the standing

10   order.

11             JUDGE BOAL:  Yes, I think that was the agreement --

12   the protocol that's been established.

13             MR. WOLK:  Very good.  Thank you.

14             JUDGE BOAL:  I had a question, unless Judge Zobel is

15   going to -- so, we have a schedule now, obviously, for the

16   Tennessee cases and then the New Jersey and Maryland cases,

17   and I know we said that we would put off a schedule for the

18   small-clinic cases.  Are there any other groups of cases for

19   which we should work on a schedule?

20             MS. JOHNSON:  That's a very good question, your

21   Honor.  I would suggest that the PSC go back and look at the

22   roster of remaining cases in the MDL, in part, after --

23   perhaps after the Clerk has entered these judgments so that we

24   have a better sense of what's really remaining, and perhaps we

25   could file a short -- I don't know -- two- or three-page

1    something with the Court to at least advise you as to our

2    position on what else may be appropriate for scheduling now.

3              JUDGE BOAL:  That sounds appropriate.

4              MS. JOHNSON:  Okay.

5              JUDGE ZOBEL:  Let me go back for a moment to the

6    global motion for summary judgment.  When will that be ripe

7    for hearing or decision?

8              MS. GREER:  I believe they get 21 days to respond.

9    So, it would be ripe for decision for the next hearing if we

10   can get it on file by the end of the week.  The only thing I

11   can't promise is just because of the confidentiality, but

12   we've already got the exhibits together.  They're marked,

13   ready to go.

14             JUDGE ZOBEL:  Is a hearing required on the motion?

15             MS. GREER:  We would like to have a hearing on the

16   motion, your Honor.

17             JUDGE ZOBEL:  So, you will try to get it done by the

18   April hearing or conference?

19             MS. GREER:  That would be our preference, at least.

20             JUDGE ZOBEL:  Okay.  If not, we would do it the

21   following month.

22             MS. GREER:  We're going to do everything in our power

23   so it will be ripe for that hearing.

24             JUDGE ZOBEL:  Thank you.

25             Is there -- now, you had nothing else and Ms. Johnson

```
 1   had nothing else.  Is there anything else that somebody else
 2   has?  Anybody on the telephone?
 3              (No response.)
 4              JUDGE ZOBEL:  I guess we're all done.  Thank you very
 5   much, as usual.
 6              MS. JOHNSON:  Thank you.
 7              COURTROOM DEPUTY CLERK YORK:  Court is in recess.
 8   All rise.
 9              JUDGE ZOBEL:  We are in recess.
10              (Recess taken.)
11              THE FOLLOWING TAKES PLACE BEFORE JUDGE BOAL:
12              COURTROOM DEPUTY CLERK YORK:  For counsel on the
13   phone, we're going to start the portion before Judge Boal.  I
14   just want to double-check that the AG from Tennessee is on the
15   line.  Can anyone hear me?
16              (No response.)
17              COURTROOM DEPUTY CLERK YORK:  Do we still have
18   counsel on the phone?
19              UNIDENTIFIED SPEAKER:  We can hear you.
20              COURTROOM DEPUTY CLERK YORK:  Okay.  And I believe...
21              JUDGE BOAL:  She may not be on the line because we
22   said we would start at three o'clock.  So, Mr. York is going
23   to try to get her on the phone.
24              (Discussion off the record.)
25              COURTROOM DEPUTY CLERK YORK:  Do we have Ms.
```

1   Bergmeyer joining us on the line yet?

2           Just so -- counsel on the phone, if you're not

3   speaking in the motion, can you just please put your phone on

4   mute and just listen so as not to disturb the conference.

5           (Discussion off the record.)

6           MS. BERGMEYER:  Hello.  This is Stephanie Bergmeyer

7   and I just joined the conference call.

8           COURTROOM DEPUTY CLERK YORK:  We'll get started

9   again.  Today is March 10th, 2016.  We're on the record in the

10  matter of NECC.  The case number is 13-MD-2419.  Will counsel

11  in the courtroom please identify yourselves for the record.

12          JUDGE BOAL:  Actually, I think just counsel who are

13  going to speak on the motion will be fine.

14          MR. CHALOS:  Mark Chalos for the plaintiffs.

15          MR. TARDIO:  Chris Tardio for the Tennessee clinic

16  defendants.

17          MS. BERGMEYER:  Stephanie Bergmeyer for the State of

18  Tennessee.

19          JUDGE BOAL:  All right.  So, it's the Tennessee

20  clinic defendants' motion.  I'll hear you first.

21          MR. TARDIO:  Thank you, your Honor.

22          And I realize this issue is one that can go about a

23  half dozen different ways.  So, I'll see if I can at least lay

24  out for the Court the Tennessee clinic defendants' position.

25          JUDGE BOAL:  It was very interesting in that sense.

1          MR. TARDIO:  It is interesting.  It's almost like a

2     law school exam question --

3          JUDGE BOAL:  Yes.

4          MR. TARDIO:  -- with all the issues, procedural and

5     otherwise, that come up, but basically Tennessee has a statute

6     that the legislature passed within the last few years that

7     changed the common law.  At common law, ex parte communication

8     with plaintiffs' treating providers was not allowed under the

9     *Givens* case and the *Alsip* case.  The legislature as part of

10    the Healthcare Liability Act -- or an amendment to the

11    Healthcare Liability Act passed Section 121(f), which reversed

12    the common law -- not necessarily reversed the common law, but

13    certainly changed the common law, and put in place a -- to use

14    the language of the statute, gave defendant healthcare

15    providers the right to seek permission to speak ex parte with

16    treating healthcare providers.

17         So, in state court, the process goes you file the

18    motion, you say who you want to talk to, and the court,

19    pursuant to statute, enters the order in most cases, with some

20    argument about terms.

21         We filed a similar motion.  Of course, we're in

22    federal court which raises different issues, but our position,

23    first and foremost, is that the statute is a substantive

24    provision that we submit requires this Court to apply the

25    state law, the state process, the state statute, 121(f), which

1    would allow us to have this order consistent with the

2    statutory provisions and requirements.

3           JUDGE BOAL:  If I remember reading your brief

4    correctly, you had said that Tennessee federal courts had

5    established that the law in question is substantive, but I

6    didn't see any case cites to that.

7           MR. TARDIO:  The Tennessee courts have ruled that

8    other parts of 121 are substantive.  The pre -- the Tennessee

9    federal courts have applied the pre -- all of 121 is the

10   Healthcare -- or all of 101 through 121 is the Healthcare

11   Liability Act and the federal courts have applied all those

12   provisions, with the exception of 121(f), except for the

13   *Lovelace* opinion that was attached as an exhibit to the

14   Tennessee AG's brief, and in *Lovelace* the Court did make a

15   determination that HIPAA -- I think, as I read *Lovelace*, the

16   court ruled that it's a procedural provision, but that HIPAA

17   doesn't preempt it.

18           So, again, this issue can go three or four different

19   ways.  First and foremost, we submit that it's a substantive

20   provision which requires the application of Tennessee state

21   law.  If the Court disagrees with that argument and believes

22   the provision is procedural, we submit, respectfully, that

23   121(f) is not contrary to HIPAA, not contrary to the Federal

24   Rules of Civil Procedure, and then under 121(f) or under Rule

25   26 -- Federal Rule of Civil Procedure 26 or under HIPAA, the

1    Court can enter an order that allows us to have access

2    informally to treating providers.

3          So, we in the brief lay out our position, which is

4    whichever road the Court goes down, we think the Court has

5    authority to enter an order such that we are asking.

6          One final note, the reason these interviews are

7    important to defenses:  We do not have without an order from

8    this Court access to these healthcare providers, who in

9    certain cases can provide very important testimony.  They're

10   not experts.  They're experts by virtue of their field.

11   They're not experts in the sense that they're Rule 26 experts

12   that treat --

13         JUDGE BOAL:  You're not suggesting you couldn't issue

14   a subpoena to them?

15         MR. TARDIO:  We could issue a subpoena to them.  The

16   problem is in -- we're going to be trying this case in Boston.

17   They're in Tennessee.  We walk in.  We take their deposition

18   without ever having talked to them and we're likely stuck with

19   that testimony if they're subpoenaed to testify at trial, and

20   it's a severe disadvantage, as with any witness, not knowing

21   what the witness is going to say before you walk into the

22   deposition, and it's particularly difficult in this situation

23   where one side will likely know what the witness is going to

24   say and one side will not.  So, that's why the interviews are

25   important to us and are important to the process.

```
 1              If we accept that the Federal Rules of Civil
 2     Procedure and the entirety of the rules are written such that
 3     in federal courts there's this mutuality of information, that
 4     each side has an even set of facts instead of information
 5     going into trial, we would respectfully ask the Court that
 6     even if the Court decides that the Court is going to apply the
 7     Federal Rules of Civil Procedure, that even under Rule 26
 8     we've demonstrated a good cause for such an order.  Thank you,
 9     your Honor.
10              JUDGE BOAL:  You had also argued under Rule 501.  My
11     understanding -- obviously, you would know better than I --
12     that Tennessee does not have a state physician/patient
13     privilege; is that correct?
14              MR. TARDIO:  There is no statutory privilege and the
15     case -- it depends on how strictly we construe the word
16     "privilege."  There's a covenant of confidentiality at common
17     law that does not allow a physician absent some court approval
18     to disclose confidential information.  So, whether that's a
19     privilege or not, it's not a statutory privilege.  It's a
20     common law covenant of confidentiality.
21              JUDGE BOAL:  Thank you.
22              MR. CHALOS:  Good afternoon, your Honor.  I want to
23     make a few points on behalf of the plaintiffs.
24              First, this is a procedural statute.  There is no
25     court in Tennessee that has found otherwise, that has found
```

1      that it's substantive.  The *Lovelace* court, which is the

2      Western District of Tennessee, did not address that issue, and

3      I went and looked at the briefs.  It was never raised.  So,

4      the plaintiffs there didn't make the argument that this was a

5      procedural statute, but it is, and your Honor need look no

6      further than the Tennessee courts to see that in the

7      *Dean-Hayslett* case, which we've cited, the court calls this a

8      pretrial investigatory procedure, and that's on Page 12 of the

9      *Dean-Hayslett* case.

10              In the *Alsip* case -- which, as an aside, is still

11     good law.  It is good substantive law in Tennessee that there

12     is an implied covenant of confidentiality between doctors and

13     patients, and that is substantive law that survives the

14     enactment of 121(f), and we've got, your Honor -- which we'll

15     get to in just a minute, but courts in Tennessee have

16     recognized that.  They've recognized that *Alsip* is still good

17     substantive law.

18              So, this is a procedural statute.  As such, in

19     federal court it is inapplicable.  Your Honor has the Federal

20     Rules of Civil Procedure.  Your Honor has HIPAA to guide your

21     Honor in this respect.  You need not even reference the

22     statute.

23              We do think it would be preempted by HIPAA, but I

24     don't think your Honor needs to get to that question, given

25     that it is a procedural statute and your Honor is not bound by

1    it.

2             JUDGE BOAL:  If Tennessee law applies, then don't the

3    defendants meet the criteria for the issuance of the

4    protective order?

5             MR. CHALOS:  Yes.

6             JUDGE BOAL:  And the defendants have relied on the

7    *Goldstein* case that was issued by Judge Zobel, and I don't --

8    unless I missed it, I don't believe that the brief -- your

9    brief had distinguished that case.  Why do you think that I

10   shouldn't rely on that?

11            MR. CHALOS:  That's the Massachusetts case?

12            JUDGE BOAL:  Yes.

13            MR. CHALOS:  Your Honor, I don't remember exactly the

14   holding in that case, but I know it was considering

15   Massachusetts law and not this unique sort of circumstance

16   that we're in here with this Tennessee procedural statute,

17   which --

18            JUDGE BOAL:  It's almost the reverse, but I think the

19   defendants are arguing that it's applicable for some of the

20   holdings.  In that case she was considering -- there was a

21   Massachusetts law prohibiting ex parte communication.

22            All right.  Anything from the Tennessee AG's Office?

23            MR. CHALOS:  I'm sorry.  May I be heard on one more

24   point?

25            JUDGE BOAL:  All right.  Tennessee AG's Office should

1    hold off.  Go ahead.

2         MR. CHALOS:  I think that case may have been pre-

3    HIPAA, if I remember right.  I'm not 100 percent certain about

4    that.

5         JUDGE BOAL:  1995.

6         MR. CHALOS:  Yes.  Okay.  I'm sorry, your Honor.

7         JUDGE BOAL:  All right.  Go ahead, Tennessee AG's

8    Office.

9         MS. BERGMEYER:  Yes, your Honor.  This is Stephanie

10   Bergmeyer, and I want to thank you for hearing us today.

11        We have thoroughly briefed the HIPAA preemption issue

12   and we certainly rely on that brief, but, quite simply, we

13   believe that the *Lovelace* decision in the Western District of

14   Tennessee was correct and should be followed by this Court,

15   and it very clearly outlines why HIPAA does not preempt 121(f)

16   and why 121(f) does contain protections for a plaintiff's

17   privacy, and we would submit that that should be followed in

18   the event your Honor does need to decide whether HIPAA

19   preempts the statute.

20        And, otherwise, your Honor, I'm here to answer any

21   questions you may have.

22        JUDGE BOAL:  I don't have any questions.  I have read

23   your brief and it answered any questions I might have from

24   your perspective.

25        Anything else, Mr. Tardio?

1          MR. TARDIO:  I would just clarify that *Goldstein* was

2     pre-HIPAA, but that the principle still applies, that it is

3     the flip of the situation we have here.  Massachusetts had a

4     state law, apparently, according to the order, that did not

5     allow ex parte communication, and the Court clearly held that

6     there was no contrary federal procedural rule, and the flip

7     would be true, that there's no reason that the flip would not

8     still hold true, setting aside HIPAA.

9          JUDGE BOAL:  Right.  So, my understanding is the PSC

10    says that it is a contrary rule.  So, that's why I'm trying to

11    square Judge Zobel's finding.  It's a different statute, but

12    it seems to be on the same subject matter.

13         MR. CHALOS:  Your Honor, it's our position that the

14    Tennessee statute is inapplicable in federal court.  So, the

15    question for your Honor is under the Federal Rules and under

16    federal policy that was enacted by Congress through HIPAA --

17    which absolutely protects private patient health information.

18    That's the heart of what we're concerned about here, is in an

19    ex parte communication there is no protection for the

20    patient's private protected health information, and the

21    Tennessee case -- the *Alsip* case I think is instructive on

22    this point in that it found -- the Tennessee Supreme Court

23    found as a matter of substantive Tennessee law, that it is an

24    unfair burden to place on doctors to say, Doctor, you have to

25    make a distinction in your mind what's relevant and

1    discoverable for the issues in the case versus what is

2    protected, health information that is irrelevant,

3    undiscoverable in that particular case.

4            Congress, through HIPAA, which postdated the

5    *Goldstein* case, expressed very clearly that the policy of the

6    Federal Government is to protect that information except in

7    very limited circumstances.  And so, applying federal policy,

8    applying the Federal Rules -- which, by the way, give them

9    every opportunity to get the medical records, which they've

10   already done, and to have depositions of these doctors.

11           Now, mind you, a good portion of these treating

12   doctors are employees of the defendants.  Many of these people

13   were treated at Saint Thomas Hospital.  When we walked into

14   those depositions, we don't know what they're going to say.

15   That's why we ask questions in depositions.

16           So, to the extent they're suggesting there's some

17   unfairness here, that they're not going to know ahead of time

18   what a witness is going to say in a deposition, that certainly

19   doesn't justify the imposition of the invasion of these

20   patients' privacy and the invasion on the confidential

21   relationship between the patient and their doctors.

22           JUDGE BOAL:  All right.  Thank you.  I will take it

23   under advisement.

24           MR. TARDIO:  Thank you, your Honor.

25           MS. JOHNSON:  Thank you, your Honor.

```
 1              COURTROOM DEPUTY CLERK YORK:  All rise.  Court is in

 2    recess.

 3              (Adjourned, 2:54 p.m.)

 4

 5

 6                    C E R T I F I C A T E

 7         I, Catherine A. Handel, Official Court Reporter of the

 8    United States District Court, do hereby certify that the

 9    foregoing transcript, from Page 1 to Page 40, constitutes to the

10    best of my skill and ability a true and accurate transcription of

11    my stenotype notes taken in the matter of Multidistrict

12    Litigation No. 13-02419-RWZ, In Re: New England Compounding

13    Pharmacy Cases Litigation.

14

15

16    March 23, 2016      /s/Catherine A. Handel
      Date                Catherine A. Handel, RPR-CM, CRR

17

18

19

20

21

22

23

24

25
```