# EXHIBIT F

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

MDL NO.: 2419
Master Dkt. 1:13-md-02419-RWZ

IN RE: NEW ENGLAND COMPOUNDING
PHARMACY, INC., PRODUCTS LIABILITY
LITIGATION

THIS DOCUMENT RELATES TO:

All Actions Naming Saint Thomas Outpatient
Neurosurgical Center

Videotaped Deposition of

DAVID S. JOSEPH, RPH, FIACP

Friday, February 19, 2016

9:04 a.m.

The Orlando Firm

2002 North Lois Avenue, Suite 510

Tampa, Florida   33624

Georgeanne Rodriguez, RPR

```
 1   APPEARANCES:

 2         On behalf of Plaintiffs:
           FREDERIC L. ELLIS, Esquire
 3         Ellis & Rapacki, LLP
           85 Merrimac Street, Suite 500
 4         Boston, Massachusetts  02144
           Telephone:  617.523.4800
 5         Facsimile:  617.523.6901
           rellis@ellisrapacki.com
 6
           BEN GASTEL, Esquire
 7         Branstetter Stranch & Jennings, PLLC
           223 Rosa L. Parks Avenue, Suite 200
 8         Nashville, Tennessee  37203
           Telephone:  615.254.88801
 9         Facsimile:  615.255.5419
           beng@bsjfirm.com
10
           On behalf of Saint Thomas Outpatient Neurosurgical
11             Center, LLC; Howell Allen, a Professional
               Corporation; John W. Culclasure, M.D.; and
12             Debra V. Schamberg, RN, Specialty Surgery
               Center:
13         C.J. GIDEON, JR., Esquire
           Gideon Cooper & Essary
14         315 Deaderick Street, Suite 1100
           Nashville, Tennessee  37238
15         Telephone:  615.254.0400
           Facsimile:  615.254.0459
16         cj@gideoncooper.com

17         On behalf of Specialty Surgery Center - Crossville,
               PLLC, Kenneth R. Lister, M.D., and Kenneth R.
18             Lister, M.D., PC:
           KENT E. KRAUSE, Esquire
19         Brewer Krause Brooks & Chastain, PLLC
           611 Commerce Street, Suite 2600
20         Nashville, Tennessee  37203
           Telephone:  615.630.7755
21         Facsimile:  615.256.8985
           kkrause@bkblaw.com
22

23

24

25
```

```
 1      On behalf of Saint Thomas Health, Saint Thomas
            Network and Saint Thomas West Hospital and the
 2          witness:
        ADAM T. SCHRAMEK, Esquire
 3      Norton Rose Fulbright US, LLP
        98 San Jacinto Boulevard, Suite 1100
 4      Austin, Texas   78701
        Telephone:  512.474.5201
 5      Facsimile:  512.536.4598
        adam.schramek@nortonrosefulbright.com
 6

 7   The following counsel appeared via video stream:

 8      On behalf of Premier Orthopaedic & Sports Medicine
            Associates of Southern New Jersey, LLC d/b/a
 9          Premier Orthopaedic & Sports Associates, LLC
            and Premier Orthopaedic Associates Surgical
10          Center, LLC:
        MELISSA BUTERBAUGH, Esquire
11      BLUMBERG & WOLK, LLC
        158 Delaware Street
12      Woodbury, New Jersey 08096
        Telephone: 856.848.7472
13      mbuterbaugh@blumberglawoffices.com

14      On behalf of Tim I. Chowdhury, M.D.:
        BARTHOLOMEW FREEZE, Esquire
15      Freund, Freeze & Arnold
        65 East State Street, Suite 800
16      Columbus, Ohio 43215-4247
        Telephone: 614.827.7300
17      bfreeze@ffalaw.com

18      On behalf of Box Hill Surgery Center, LLC, Ritu
            Bhambhani, M.D., and Ritu T. Bhambhani M.D.,
19          LLC:
        GREGORY K. KIRBY, Esquire
20      Pessin Katz Law, P.A.
        901 Dulaney Valley Road, Suite 500
21      Towson, Maryland 21204
        Telephone: 410.769.6143
22      gkirby@pklaw.com

23

24

25
```

```
 1        On behalf of Dr. Abdul Barakat, Ocean State Pain
             Management and Dr. O'Connell's Pain Care
 2           Center
          JESSICA L. CUMMINGS, Esquire
 3        Capplis, Connors & Carroll, PC
          18 Tremont Street, Suite 330
 4        Boston, Massachusetts 02108
          Telephone: 617.227.0722
 5        jcummings@ccclaw.org

 6

 7  ALSO PRESENT:

 8        Greg Waugh, Videographer.

 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 27

```
 1       A.    It was in the big -- the main cleanroom.
 2       Q.    Where was that done?
 3       A.    It is just adjacent to the -- to the isolator
 4   hood.
 5       Q.    Was that done on that -- was it done in the
 6   same place for the three contaminated lots, for the May
 7   lot, the June lot, and the August lot?  Was it always
 8   done in that same place?
 9       A.    I don't know specifically where each one was
10   done, but at least one of the lots were done at the time
11   in that hood.
12       Q.    Okay.  And this was next to the hood, you
13   said?
14       A.    It's adjacent to the hood.  It's typically
15   what you do in a sterile pharmacy when you are putting
16   ingredients together.
17       Q.    Okay.  Now, that video of the hood, that was
18   taken in December of 2012, correct?
19       A.    Correct.
20       Q.    And do you know if the location of that hood
21   had changed between May, June, and August of 2012 and
22   December of 2012?
23       A.    That's something that I would not have
24   information on.
25       Q.    And how many hoods were used to prepare -- was
```

```
 1   it only one hood that was used to prepare the three
 2   contaminated lots, the May lot, the June lot, and August
 3   lot of MPA?
 4        A.   That, I don't know specifically.
 5        Q.   Was there more than one hood?
 6        A.   There were three -- three glove boxes in that
 7   room, so --
 8        Q.   By glove boxes -- let's make sure we have the
 9   terminology.  You talked about hood.
10        A.   Okay.  So there's three glove boxes and three
11   powder hoods that are associated with those -- with
12   those hoods that generally are adjacent to them and are
13   used to transfer the mixture once it's -- once it's made
14   in the powder hood to go into the glove box.
15        Q.   Okay.  So there's potentially three different
16   hoods that were used to prepare these three contaminated
17   lots, correct?
18        A.   That should be noted on the log.  I didn't
19   really check it to see, but --
20        Q.   On the logged formula worksheet?
21        A.   Yes.
22        Q.   It tells you what hood it was prepared in?
23        A.   It's supposed to.  That's --
24        Q.   Does it?
25        A.   I'd have to take another look at it.
```

```
 1      Q.   Do you know which hood each lot was prepared
 2  in?
 3      A.   I do not.
 4      Q.   And then there was an email from Steve Higgins
 5  that had to do with air-conditioning, correct?
 6      A.   Yes.
 7      Q.   Okay.  So now we've gone through
 8  Mr. Schramek's original letter disclosing what you --
 9  documents you had reviewed.  We've gone through his
10  email yesterday of documents reviewed.
11           I need to know whether there's any other
12  documents that you've reviewed that we have not
13  discussed today.
14      A.   No.
15           MR. ELLIS:  Okay.  Let me introduce this as
16      the next exhibit, which will be 1157.
17           (Exhibit 1157 marked for identification.)
18  BY MR. ELLIS:
19      Q.   And this is Saint Thomas's objections and
20  responses to that deposition notice which asked you to
21  produce certain documents, which was Exhibit 1154.  Take
22  a look at this.
23           Have you seen this before?
24      A.   No, I have not.
25      Q.   Okay.
```

1  to make sure we're both on the same page here.
2          By the way, did Saint Thomas Neurological
3  Clinic get copies of those test results -- sterility
4  test results?
5      A.  Did they what?
6      Q.  Get copies of them.  Did they request copies
7  of the test results from the --
8      A.  I have no knowledge of that.
9      Q.  Now, after those two samples were taken from
10 the bulk, the bulk suspension was transferred from a
11 beaker -- it cooled after the autoclave.  It had to cool
12 down.
13     A.  Uh-huh.
14     Q.  And then it's transferred to a Nalgine
15 container, correct?
16     A.  Correct.
17     Q.  Was it one Nalgine container or more?
18     A.  My understanding, that it was -- at that
19 volume, it had to be at least two Nalgine containers.
20     Q.  Okay.  You've got 12.5 liters?
21     A.  Uh-huh.
22     Q.  Okay.  How big are these Nalgine containers
23 that they were stored in?
24     A.  They're anywhere from 500 to 1,000 mls.
25     Q.  But with NECC, the three lots, how big were

Page 266

1   the Nalgine containers?
2        A.   I don't know.
3        Q.   Do you know how many Nalgine containers they
4   were storing?
5        A.   I don't.
6        Q.   Okay.  During the transfer process from the
7   beaker to the Nalgine container, that's a manual process
8   correct?  Poured?
9        A.   Yeah, it's poured in.
10       Q.   Okay.  It's manual, correct?
11       A.   Yes.
12       Q.   The MPA could have been contaminated during
13  that step in the process, correct?
14       A.   Correct.
15       Q.   It's possible?
16       A.   Uh-huh.
17       Q.   Okay.  The Nalgine container itself, or the
18  Nalgine containers, because we know there's more than
19  one, we know how many, right?  One or more of them could
20  have been contaminated, the actual container, correct?
21       A.   If not properly sterilized.
22       Q.   Right.
23       A.   Right.
24       Q.   It's possible?
25       A.   Uh-huh.

```
                                                          Page 294

 1              REPORTER'S DEPOSITION CERTIFICATE

 2

 3   STATE OF FLORIDA         )

 4   COUNTY OF HILLSBOROUGH   )

 5           I, Georgeanne Rodriguez, Registered
     Professional Reporter, certify that I was authorized to
 6   and did stenographically report the deposition of
     DAVID S. JOSEPH, RPH, FIACP; that a review of the
 7   transcript was not requested; and that the transcript is
     a true and complete record of my stenographic notes.
 8
             I further certify that I am not a relative,
 9   employee, attorney, or counsel of any of the parties,
     nor am I a relative or employee of any of the parties'
10   attorney or counsel connected with the action, nor am I
     financially interested in the action.
11
             I further certify the original transcript will
12   be delivered to Branstetter, Stranch & Jennings,
     attorneys for Plaintiffs, for filing with the court or
13   its safekeeping.

14

15           The foregoing certification of this transcript
     does not apply to any reproduction of the same by any
16   means unless under the direct control and/or direction
     of the certifying reporter.
17

18           Dated this 1st day of March 2016.

19

20           _____
             Georgeanne Rodriguez, RPR
21

22

23

24

25
```