# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION ) ) ) ) ) ) | MDL No.: Dkt. No 1:13-md-2419 (RWZ) |
| This Document Relates to: ) ) | |
| *Tyree*, 1:13-cv-12479 (RWZ) ) ) | |

---

## TENNESSEE CLINIC DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS
## PURSUANT TO FED. RULE CIV. P. 37 AND FED. RULE CIV. P. 12(b)(6)

---

Saint Thomas Outpatient Neurosurgical Center, LLC; Howell Allen Clinic, A Professional Corporation; John Culclasure, MD; Debra Schamberg, RN, CNOR; and Vaughan Allen, MD ("Tennessee Clinic Defendants") move this Court, pursuant to Fed. R. Civ. P. 37 and Fed. R. Civ. P. 12(b)(6), to enter an Order dismissing this action, and to treat this dismissed action as one of the Plaintiff Steering Committee's ("PSC") bellwether strikes.

A series of unilateral decisions by the Plaintiffs justifies dismissal of this action. First, the Plaintiffs refused to respond to the moving Defendants' Interrogatories and Requests for Production. Second, the Plaintiffs failed to appear for their duly noticed depositions on January 29, 2016. Finally, this health care liability action was filed without the mandatory certificate of good faith, required by Tenn. Code Ann. § 29-26-122. Each justification for dismissal is discussed separately below.

## DISMISSAL PURSUANT TO FED. R. CIV. P. 37

Fed. R. Civ. P. 37(d)(1) authorizes a range of sanctions, including dismissing the action in whole, if "a party or a party's officer…fails, after being served with proper notice, to appear for that person's deposition" or if "a party, after being properly served with interrogatories under Rule 33 or a request for inspection under Rule 34, fails to serve its answers, objections or written response."[1] A party may not "remain completely silent" to a notice of deposition or discovery requests "even when he regards a notice to take his deposition or a set of interrogatories or requests to inspect as improper and objectionable."[2] Rather, a party must move for a protective order if he desires not to appear for a deposition, or not to respond to written discovery requests.[3]

A district court may dismiss an action for noncompliance with a discovery order.[4] Dismissal is appropriate when a party exhibits "willful disobedience of the court's order."[5] Notably, a party's failure to achieve the timeline that it recommends weighs heavily against that party when determining whether dismissal is warranted.[6] When a litigant proposes a compliance date, the court is entitled to expect the litigant to meet its self-imposed deadline.[7]

The PSC, which includes counsel for the Tyrees as a member, consistently advocates for strict deadlines imposed throughout this litigation. The persistent failure of the Tyree Plaintiffs to comply with the Court-ordered discovery deadlines demonstrates intentional disobedience of the Court's Order, which substantially prejudices the

---

[1] Fed. R. Civ. P. 37(d)(1).
[2] *See* Advisory Committee Notes to Fed. R. Civ. P. 37.
[3] *Id.*
[4] *Benitez-Garcia v. Gonzalez-Vega*, 468 F.3d 1, 4 (1st Cir. 2006).
[5] *Doe v. Briggs*, 945 F. Supp. 2d 210, 215 (D. Mass. 2013).
[6] *Id.*
[7] *Tower Ventures, Inc. v. City of Westfield*, 296 F.3d 43, 47 (1st Cir. 2002).

Defendants by delaying, or perhaps preventing, completion of the case-specific discovery in this complex litigation. Dismissal of this case is warranted.

## PLAINTIFFS' FAILURE TO COOPERATE IN DISCOVERY

The Tennessee Clinic Defendants served their First Set of Interrogatories and Requests for Production of Documents on Phillip and Maria Tyree on November 17, 2015.[8] The Plaintiffs' Responses were due on December 21, 2015. On December 22, 2015, at the initial, but not completed deposition of Philip Tyree, Plaintiffs served Phillip Tyree's Responses to the *Saint Thomas Entities*' First Set of Interrogatories and Requests for Production of Documents. Plaintiffs did *not* serve their Responses to the *Tennessee Clinic Defendants*' Requests. On January 19, 2016, after repeated failed attempts to obtain the Plaintiffs' Responses to the *Tennessee Clinic Defendants*' requests,[9] the Tennessee Clinic Defendants filed a Motion to Compel the Plaintiffs' Responses.[10] The Plaintiffs did not file a Response to the Defendants' motion to compel within fourteen (14) days as permitted by Local Rule 37.1. The Plaintiffs have *never* responded to the Defendants' discovery requests or the pending Motion to Compel.

The deposition of Phillip Tyree began on December 22, 2015, but was adjourned by agreement[11] after a significant, previously undisclosed,[12] discovery of material medical care. Mr. Tyree admitted to receiving six (6) injections of unspecified medications and other vague interventions in his lower lumbar spine at Interventional Pain Specialists in Bowling Green, Kentucky, the last occurring three (3) weeks before

---

[8] Attached as Exhibit A.
[9] Correspondence attached as Exhibit B.
[10] Doc. No. 12.
[11] Deposition of Phillip Tyree, 162:23-163:4. Pertinent excerpts from the deposition testimony are submitted as Exhibit C.
[12] Plaintiff Phillip Tyree served a supplemental Plaintiff Profile Form ("PPF") at his initial deposition on December 21, 2015. The supplemental PPF failed to disclose his additional, material medical care.

his deposition began on December 22, 2015.[13] The Defendants obtained the records from Interventional Pain Specialists in Bowling Green, Kentucky following adjournment of the deposition.

In truth, Mr. Tyree had been seen at Interventional Pain Specialists just seven (7) days before his deposition, on December 15, 2015, when a coccygeal nerve block, with sedation, was proposed, or performed. Mr. Tyree's first visit to Interventional Pain Specialists occurred on June 1, 2015, with subsequent visits, and interventions, on June 30, 2015, July 28, 2015, September 8, 2015, October 9, 2015, November 17, 2015, and December 15, 2015. At least two (2) of the visits included the injection of steroids into the spine in the same or adjacent areas at issue in this litigation.[14] This discovery, alone, warranted the completion of Mr. Tyree's deposition.

Completion of the deposition of Mr. Tyree, and the deposition of his wife, Plaintiff Maria Tyree, were noticed for January 29, 2016, the final date for completion of bellwether plaintiffs' depositions.[15] Counsel for the Tennessee Clinic Defendants e-mailed Plaintiffs' counsel on January 20, 2016, proposing January 29, 2016, as the date to complete the depositions of Mr. and Mrs. Tyree.[16] Plaintiffs' counsel never responded. The Notice, served on January 21, 2016, was met with silence. Two (2) e-mails to Plaintiffs' counsel followed to confirm that the Plaintiffs would attend the noticed deposition.[17] Finally, on January 27, 2016, Plaintiffs' counsel responded as follows:

> I just finished a 3 week trial. No way I can do 1/29..my apologies, but I have had limited access to emails. If someone left me a message on [this]

---

[13] Deposition of Phillip Tyree, 154:14-159:24. Included within Exhibit C.
[14] Copies of the Interventional Pain Specialist records are submitted as Exhibit D.
[15] Doc. No. 2596.
[16] Attached as Exhibit E.
[17] Attached as Exhibit F.

I never received it. I'm here all day – my cell is 404.805.0226. I am happy to quickly set a date and time that will work for all.[18]

Plaintiffs' counsel called counsel for the Defendants and proposed alternative dates to complete Plaintiffs' depositions. Counsel for the Tennessee Clinic Defendants followed up, and made clear that the Local Rules precluded further delay in the completion of the *Tyree* depositions:

> Mark: The depositions of your clients are duly noticed for Friday, January 29, 2016, in our offices. The notice was filed in the PACER system, and sent to you [with reminders] directly via e-mail. Today you informed us that you just completed a three (3) week trial, and you cannot present your clients for the depositions as noticed. I would personally prefer to accommodate you, but we cannot.
>
> The January 20, 2016 Order [Doc. 2596] sets a fixed date of January 29, 2016 for completion of plaintiff's depositions. Local Rule 26.1(a) of the District of Massachusetts specifies that the parties **may not** enter into stipulations extending the time for responding to discovery requests or otherwise modify discovery procedures ordered by the judicial officer. I will expect Mr. Tyree and his wife in our office for their depositions on Friday morning.[19]

The Plaintiffs did not file a motion for protective Order, nor did they file a motion seeking relief from the requirements of the Order[20] setting the current schedule for bellwether discovery. Instead, they simply failed to appear at the noticed deposition. The Plaintiffs' repeated noncompliance with this Court's Order warrants dismissal of this action pursuant to Fed. R. Civ. P. 37(d).[21]

## <u>FAILURE TO COMPLY WITH TENN. CODE ANN. § 29-26-122</u>

Separate and independent of the Plaintiffs' failure to cooperate in discovery, this action is subject to dismissal for the Plaintiffs' failure to comply with the certificate of

---

[18] Attached as Exhibit G.
[19] Attached as Exhibit H.
[20] Doc. No. 2596.
[21] *Goldman Antonetti, Ferraiuoli, Axtmayer, Hertell v. MedFit International*, 982 F.2d 686, 691-692 (1st Cir. 1993). *See also Damiani v. Rhode Island Hospital*, 704 F.2d 12, 15-17 (1st Cir. 1983).

good faith requirement set forth in Tenn. Code Ann. § 29-26-122.[22] A motion to dismiss for failure to state a claim is the proper method for challenging whether a plaintiff has complied with the Tennessee Health Care Liability Act's certificate of good faith requirement.[23] Where the Tennessee Health Care Liability Act applies to a complaint, the plaintiffs *must* comply with the pre-suit requirements.[24] This Court has already concluded in a "global" ruling that whole non-compliance with the Act's pre-suit requirements is fatal, and should result in dismissal of the complaint.[25]

The Plaintiffs attempt to exclude application of the Act from the allegations in their Complaint by stating that "neither this claim, nor any other claim or count asserted in this action, is meant to allege a claim arising under or otherwise covered by the Tennessee [Health Care Liability] Act."[26] This attempt is not successful. The October 8, 2015, decision of the Supreme Court of Tennessee in *Ellithorpe*[27] makes clear that a lawyer cannot limit application of the Tennessee Health Care Liability Act with clever, or even imprecise, drafting.

In *Ellithorpe*, the plaintiff brought an action purportedly for ordinary negligence against a health care provider for alleged injuries sustained related to the provision of health care.[28] The plaintiff did not comply with the Act's pre-suit requirements, including the filing of a certificate of good faith. The Tennessee Supreme Court affirmed the

---

[22] Tenn. Code Ann. § 29-26-122(a) provides that "[i]n any health care liability action in which expert testimony is required by § 29-26-115, the plaintiff or plaintiff's counsel shall file a certificate of good faith with the complaint. If the certificate is not filed with the complaint, the complaint shall be dismissed…."
[23] *Ellithorpe v. Weismark*, --- S.W.3d ----, 2015 WL 5853873 at *4 (Tenn. 2015).
[24] Judge Zobel's Memorandum Decision on the Tennessee Clinic Defendants' Global Motion to Dismiss, Doc. 1360 at 11.
[25] *Id.* at 23. *See also id.* at 24 (holding that case-specific inquiries into compliance with the Act's pre-suit requirements were to be resolved at a later point in this litigation).
[26] Complaint at ¶¶ 215-216.
[27] *Ellithorpe v. Weismark*, ---S.W.3d ----, 2015 WL 5853873 (Tenn. 2015).
[28] *Id.*

dismissal of *Ellithorpe* with prejudice, and held that "*all* civil actions alleging that a covered health care provider or providers have caused an injury related to the provision of, or failure to provide health care services [are] subject to the pre-suit notice and certificate of good faith requirements, regardless of any other claims, causes of action, or theories of liability alleged in the complaint."[29] The Tennessee Supreme Court determined this after reviewing the *Ellithorpe* complaint and deeming it "rife with allegations relating to [the defendant's] provision of health care services[.]"[30]

This Court's August 28, 2014, Memorandum Decision on the Tennessee Clinic Defendants' Global Motion to Dismiss cites to the plaintiffs' ordinary negligence claims against the Tennessee Clinic Defendants:

> 1.      Failure to appropriately investigate NECC prior to procuring drugs from the pharmacy;
>
> 2.      Failure to follow certain policies and procedures to ensure such drugs were safe; and
>
> 3.      Failure to exercise reasonable care or conduct due diligence to ensure that they were not injecting contaminated and dangerous drugs into their patients.[31]

Judge Zobel held that the plaintiffs' allegations of ordinary negligence "pertain to the Tennessee Clinic Defendants' provision of health care services…, fall within the purview of the THCLA, [and] will be evaluated under the THCLA."[32]

The Tyree Plaintiffs make the following allegations of ordinary negligence regarding the Tennessee Clinic Defendants:

---

[29] *Id.* at *7.
[30] *Id.*
[31] Judge Zobel's Memorandum Decision on the Tennessee Clinic Defendants' Global Motion to Dismiss, Doc. 1360 at 37-38.
[32] *Id.* at 38.

1.     Failure to undertake any appropriate due diligence to ascertain the safety and quality of NECC's products.[33]

2.     Failure to conduct appropriate due diligence or investigation into NECC before deciding to purchase and administer NECC compounded steroids to their patients.[34]

The Tyree Plaintiffs' allegations are precisely the type of ordinary negligence allegations that Judge Zobel found to be governed by the Tennessee Health Care Liability Act. Consistent with *Ellithorpe*, the Tyree Plaintiffs' allegations of ordinary negligence – regardless of the lawyers' attempt to plead around the requirements – are subject to the Act's pre-suit requirements. The Plaintiffs were required to file a certificate of good faith with the Complaint. Their non-compliance with that requirement is fatal to this action.

As stated in *Ellithorpe*, the Act applies to any claim for injury *related to* the delivery of health care services by any health care provider.[35] The Plaintiffs allege injuries sustained by Mr. Tyree related to the delivery of health care services at STOPNC.[36] The Act *clearly* applies to this action. Any suit falling within the Tennessee Health Care Liability Act must be accompanied by a certificate of good faith, filed with the complaint.[37] As recently as December 3, 2015, the Tennessee Court of Appeals affirmed the dismissal of an action for failure to file a certificate of good faith.[38] No certificate of good faith has *ever* been filed in this action. This action *must* be dismissed for the Plaintiffs' failure to comply with Tenn. Code Ann. § 29-26-122.

---

[33] Complaint at ¶ 120.
[34] *Id.* at ¶ 123.
[35] *Ellithorpe v. Weismark*, ---S.W.3d ----, 2015 WL 5853873 at *7 (Tenn. 2015).
[36] *See* Complaint at ¶¶ 152-158.
[37] Tenn. Code Ann. § 29-26-122.
[38] *McKinnie v. State*, 2015 WL 7825045 (Tenn. Ct. App. 2015).

## CONCLUSION

The Tennessee Clinic Defendants respectfully request this Court enter an Order dismissing this action pursuant to Fed. R. Civ. P. 37(d) and Fed. R. Civ. P. 12(b)(6). The Plaintiffs' repeated failures to comply with the Court's discovery order, by *never* serving discovery responses and failing to appear for their duly noticed deposition, warrant dismissal. Likewise, the Plaintiffs' failure to *ever* submit a certificate of good faith as required under Tenn. Code Ann. § 29-26-122 warrants dismissal of this action pursuant to Fed. R. Civ. P. 12(b)(6). The Tennessee Clinic Defendants respectfully request that the Plaintiffs be required, pursuant to Fed. Rule Civ. P. 37(d)(3), to pay all reasonable expenses, including attorney's fees, caused by their failure to cooperate in discovery.

## LOCAL RULE 37.1

Pursuant to LR 37.1, the Tennessee Clinic Defendants have made a good-faith effort to resolve this dispute, without success. On January 31, 2016, counsel for the Defendants asked Plaintiffs' counsel to agree to dismiss this case with prejudice.[39] Plaintiffs' counsel responded on February 1, 2016, stating that he would talk with his client.[40] Plaintiffs' counsel then called counsel for the Defendants on February 1, 2016, and stated that he would discuss this with his client and follow up with Defendants' counsel by February 3, 2016. On February 3, 2016, Plaintiffs' counsel notified Defendants' counsel that Mr. Tyree decided not to dismiss his case at this time.[41]

---

[39] Attached as Exhibit I.
[40] Attached as Exhibit J.
[41] Attached as Exhibit K.

Respectfully submitted,

**GIDEON, COOPER & ESSARY, PLC**


/s/ Chris J. Tardio
**C.J. Gideon, Jr.***
**Chris J. Tardio***
**Alan S. Bean****
**Matthew H. Cline***
315 Deaderick Street, Suite 1100
Nashville, TN 37238
Ph: (615) 254-0400
Fax: (515) 254-0459
chris@gideoncooper.com

***Attorneys for the Tennessee Clinic
Defendants***


* Admitted pursuant to MDL Order No. 1.
** Admitted *pro hac vice.*

10

Case 1:13-cv-12475-RWZ Document 18 Filed 02/03/16 Page 11 of 11

**CERTIFICATE OF SERVICE**

     I hereby certify that this document filed through the CM/ECF system will be served electronically to the registered participants identified on the Notice of Electronic Filing and copies will be e-mailed or mailed via regular U.S. mail to those participants identified as unregistered this 3rd day of February, 2016.

                              /s/ Chris J. Tardio             

# EXHIBIT A

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | MDL No. 2419 |
|  | Master Dkt. No. 1:13-md-2419- RWZ |
|  |  |
| This Document Relates To: |  |
| Tyree v. Ameridose, LLC et al 1:13-cv-12479 |  |

## THE TENNESSEE CLINIC DEFENDANTS' FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS TO PLAINTIFFS PHILLIP TYREE AND MARIA TYREE

Saint Thomas Outpatient Neurosurgical Center, LLC; Howell Allen Clinic, a Professional Corporation; John W. Culclasure, MD; Vaughan Allen, MD; and Debra V. Schamberg, RN, CNOR; (collectively "the Tennessee Clinic Defendants"), pursuant to Rules 26, 33, and 34 of the Federal Rules of Civil Procedure, hereby propound the following First Set of Interrogatories and Requests for Production of Documents upon Plaintiffs Phillip and Maria Tyree, to be answered in writing within fourteen (14) days of service.

You are under a duty to seasonably supplement your response with respect to any Interrogatory directly addressed to the identity and location of persons having knowledge of discoverable matters. You are under a duty to amend a prior response if you obtain information on the basis of which you know that the response was incorrect when made, or that the response, though correctly made, is no longer true, and the circumstances are such that a failure to amend the response is, in substance, a knowing concealment.

## DEFINITIONS

1.      As used in this document, the terms "person(s)" and "individual(s)" mean any natural individual in any capacity whatsoever or any entity or organization, including divisions, departments, and other units therein, and shall include, but not be limited to, a public or private corporation, partnership, joint venture, voluntary or unincorporated association, organization, proprietorship, trust, estate, governmental agency, commission, bureau, or department.

2.      As used in this document, the term "document" means any medium upon which intelligence or information can be recorded or retrieved, and includes without limitation, the original and each copy, regardless of origin and location, of any book, pamphlet, periodical, letter, memorandum (including any memorandum or report of a meeting or conversation), invoice, bill, order form, receipt, financial statement, accounting entry, diary, calendar, telex, telegram, cable, report, record, contract, agreement, study, hand-written note, draft, working paper, chart, paper, print, laboratory record, drawing or sketch, graph, index, lists, tape, photograph, microfilm, data sheet or data processing card, or any other written, recorded, transcribed, punched, taped, filmed, or graphic matter, however produced or reproduced, which is in your possession, custody, or control, or which was, but is no longer, in your possession, custody, or control.

3.      As used in this document, the terms "identification," "identify," or "identity," when used in reference to a natural individual, requires you to state his or her full name and residential and business address. Use of the term "document" in connection with the Interrogatories requires you to state the number of pages and the nature of the document,

its title, its date, the name or names of its authors, and recipients, and its present location and custodian.

4.    "You" and "your" refers to Phillip and Maria Tyree and each of their present and former agents, representatives, and employees, attorneys and accountants, and each person acting or purporting to act on their behalf.

5.    "Communication" means any oral or written utterance, notification, or statement of any nature whatsoever, by and to whomsoever made, including, but not limited to, correspondence, conversation, dialogue, discussions, interviews, consultants, and any other understanding between or among two or more persons.

## INSTRUCTIONS

1.    With respect to each Interrogatory, in addition to answering the question, you are to identify all documents that support, refer to, or evidence the subject matter of each Interrogatory and your answer thereto.

If any or all identified documents are no longer in your possession, custody, or control because of destruction, loss, or any other reason, then you must do the following with respect to each and every document:

A.    Describe the nature of the document;

B.    State the date of the document;

C.    Identify the persons who sent and received the original and the copy of the document;

D.    State in as much detail as possible the contents of the documents; and

E.    State the manner and date of disposition of the document.

3

If you contend that you are entitled to withhold from production any or all documents identified herein on the basis of attorney-client privilege, the work-product doctrine, or any other ground, then do the following with respect to each and every document:

     A.     Describe the nature of the document;

     B.     State the date of the document;

     C.     Identify the persons who sent and received the original and a copy of the document;

     D.     State the subject matter of the document; and

     E.     State the basis upon which you contend you are entitled to withhold the document from production.

2.     All documents produced should be organized and labeled to correspond to the specific Request in response to which they are being made available or should be produced as they are kept in the usual course of business.

3.     The terms "and," "or," and "and/or" should be construed either disjunctively or conjunctively so as to bring within the scope of these Interrogatories and Requests any information that might otherwise be construed as outside their scope.

4.     The term "any" should be construed to include the word "all" and "all" should be construed to include "any."

5.     The present tense should be construed to include the past tense, and the past tense should be construed to include the present tense.

6.     The singular should be construed to include the plural, and the plural should be construed to include the singular.

4

7.      The terms "he" and "his" should be construed to include the words "she" and "her" or "hers," respectively and vice versa.

8.      "Relating to," when referring to a document shall mean mentioning, describing, connected to or with, or discussing the stated subject matter.

## INTERROGATORIES

1.      State the full name, address and telephone number of each physician, nurse, or other healthcare provider who provided any treatment or care to Phillip Tyree and who is expected to offer opinions concerning:

      (a)      The standard of acceptable professional practice applicable to the alleged wrongful conduct in the case; and/or

      (b)      The cause of Phillip Tyree's alleged injuries.

**ANSWER:**

2.      Do you contend that the Tennessee Clinic Defendants, or any agent or employee of the Tennessee Clinic Defendants, has made any statement or admission regarding alleged negligence or with respect to any allegation in the Complaint? If the answer to this question is anything other than an unqualified "No," please describe in detail who made the statement, the contents of each statement or admission you contend was made, the date each statement was made, to whom it was made, and the circumstances surrounding each alleged statement or admission.

**ANSWER:**

3.      Have you been told by anyone, including but not limited to, any healthcare provider, that the Tennessee Clinic Defendants were negligent or otherwise departed from recognized standards of acceptable professional practice in their treatment of Phillip Tyree? If the answer to this Interrogatory is anything other than an unqualified "No," please identify each such person, the substance of the statements made, and when the statements were made.

**ANSWER:**

4.      From August 2012, until the present, did you or any member of your immediate family pay any portion of the premiums on health or medical insurance applicable to Phillip Tyree? If yes, please identify the insurance provider, the policy number, the person paying the premiums, and the amount of the monthly premium.

**ANSWER:**

5.      Before or since the filing of this lawsuit, has either Plaintiff ever been involved in any civil or criminal action, as a claimant, defendant or as a plaintiff? If so, state for each action:

      (a)      The date, place, and court in which each claim or action was filed;

      (b)      The name of the other party or parties involved in each claim or action;

6

(c)     The docket or claim number of each action;

(d)     The name of the attorney who represented you in each claim or action; and

(e)     A description of the nature and outcome of each claim or action *(e.g., arrest, divorce, workers' compensation, bankruptcy, personal injury, etc.).*

**ANSWER:**

6.      Please state whether either Plaintiff has ever been arrested. If the answer to this Interrogatory is anything other than an unqualified "No," please provide the date(s) of the arrest(s), the location(s) of the arrest(s) by state and county, the reason(s) for the arrest(s), and the booking number(s) for the arrest(s).

**ANSWER:**

7.      Aside from any treatment or therapy for mental or emotional health disclosed in the Plaintiff Profile Form, has either Plaintiff sought any other form of counseling or mental health treatment as a result of the alleged injuries which are the subject of the Complaint? If so, please state:

(a)     The name, address, and phone numbers of any individuals or entities from whom you received treatment;

7

    (b)     The date(s) of any treatment;

    (c)     the type of treatment received; and

    (d)     Whether the treatment is ongoing.

**ANSWER:**

8.     Identify the date of all media interviews (related to your claims and/or complications from the injection of preservative free methylprednisolone acetate) given by you or anyone on your behalf. In addition, state:

    (a)     The name of the interviewer;

    (b)     The employer of the interviewer or entity on whose behalf the interview was done;

    (c)     All individuals present for each interview;

    (d)     The individual that initially requested each interview; and

    (e)     The date of publication or broadcast for each interview.

**ANSWER:**

9.     Have you filed any complaints, formal or informal, with any local agencies, state agencies, federal agencies, bankruptcy court, or any other official body related to the claims made in the Complaint? If so, please identify when the complaint was

filed, to what agency or governing body, and the substance of the complaint. (This would include, but is not limited to, claims against NECC, NECC-related persons or entities, or any state or federal agencies, including a claim under the Federal Tort Claims Act.)

**ANSWER:**

10.  Please state the amount of money you have received from the Tort Trust established by the Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc. and the Tort Trust Agreement. If you have not yet received money from the Tort Trust, how much money do you anticipate receiving?

**ANSWER:**

11.  Do you contend that you suffered any impairment of conjugal relations, society, comfort, affection, or otherwise, as a result of any alleged injury to Phillip Tyree? If so, please set forth the nature of the impairment and give a detailed narrative of such impairment.

**ANSWER:**

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.      Please produce any and all documents related to any application for, or payment of, unemployment or disability benefits.

**RESPONSE:**

2.      Please produce any other documents you have identified or relied upon in providing answers to these discovery requests.

**RESPONSE:**

3.      Produce copies of all nonprivileged documents that reflect any claim(s) or complaints (formal or informal) made by you related to any of the claims of the Complaint. (This would include, but is not limited to, any claims against NECC, NECC-related persons or entities, or any state or federal agency.)

**RESPONSE:**

4.      Produce copies of all nonprivileged documents, correspondence, and communications by and between you, your counsel, and your representatives or agents, and:

      (a)     New England Compounding Center;

      (b)     Barry Cadden;

      (c)     Lisa Cadden;

(d)     Douglas Conigliaro;

(e)     Carla Conigliaro;

(f)     Glenn Chin;

(g)     Medical Sales Management;

(h)     John Notarianni;

(i)     Mario Giamei;

(j)     UniClean Clean Room Services;

(k)     Analytical Research Laboratories, Inc.;

(l)     United States Food and Drug Administration;

(m)     Massachusetts Board of Pharmacy;

(n)     Colorado Board of Pharmacy;

(o)     Tennessee Board of Pharmacy;

(p)     Tennessee Department of Health; and

(q)     Any additional parties that you believe are responsible, in whole or in part, for the Plaintiff's injuries.

**RESPONSE:**


5.     Produce a copy of the data contained in your Facebook profile archive from August 2012 to the present. The following steps will assist you in retrieving the archive:

    a.  Login to your account (if you have deactivated your account, you will need to re-activate it by logging in).

11

    i.  If you have forgotten your password, you can request that a new password be sent to your email address via a link on Facebook's homepage.

   b.  Once logged in, use the drop down arrow in the top right hand corner of the blue Facebook header. Click on "Settings."

   c.  Under the "General" settings, there is a link that reads "Download a copy of your Facebook data." Click on this link.

   d.  Click the "Start My Archive" link on the next page. You may have to reenter your password.

   e.  Facebook will send you an email with a link to your archive. Click on this link.

   f.  After clicking the link, click "Download Archive." This should download your archive to your computer.

   g.  You will then be able to print out and/or email the archive.

**RESPONSE:**

6.    Please produce all documents you received or submitted to collect compensation from the Tort Trust identified in Interrogatory #10, including, but not limited to: the National Compensation Program Claim Form, the Base Point Category and Adjustment Calculation Worksheet, the Frequently Asked Questions, the W-9 Form, the timely Proof of Claim or Personal Injury and Wrongful Death Claim

Information Form, any separate instructions for the above documents, and anything submitted in conjunction with the above documents.

**RESPONSE:**

Respectfully submitted,

**GIDEON, COOPER & ESSARY, PLC**

**C.J. Gideon, Jr.***
**Chris J. Tardio***
**Alan S. Bean****
**Matthew H. Cline***
315 Deaderick Street, Suite
Nashville, TN 37238
Ph: (615) 254-0400
Fax: (615) 254-0459
chris@gideoncooper.com

***Attorneys for the Tennessee Clinic
Defendants***

* Admitted pursuant to MDL Order No. 1.
** Admitted *pro hac vice*.

13

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this document was provided via U.S. Mail, postage prepaid, on the 16th day of November, 2015 to the following counsel:

| | |
|---|---|
| Michael R. Hugo<br>Law Office of Jon M. Adler<br>30 Newbury Street<br>3rd Flr.<br>Boston, MA 02116 | O. Mark Zamora<br>P.O. Box 660216<br>Atlanta, GA 30366 |
| Mark Chalos<br>Lieff, Cabraser, Heimann & Bernstein, LLP<br>150 Fourth Avenue North, Suite 1650<br>Nashville, TN 37219 | Yvonne Puig<br>Marcy H. Greer<br>Eric J. Hoffman<br>Fulbright & Jaworski, LLP<br>98 San Jacinto Blvd., Suite 1100<br>Austin, TX 78701 |

All other counsel will be served by virtue of these requests being uploaded to the discovery repository.


_____

**Chris J. Tardio**

14

## VERIFICATION

STATE OF TENNESSEE      )
                            )
COUNTY OF _____  )

      I, **PHILLIP TYREE**, after being duly sworn, hereby make oath that the foregoing answers to interrogatories are true to the best of my knowledge, information, and belief.

_____

**PHILLIP TYREE**

      Sworn to and subscribed before me this _____ day of _____, 2015.

_____

Notary Public

15

## VERIFICATION

STATE OF TENNESSEE     )
                               )
COUNTY OF _____  )

     I, **MARIA TYREE**, after being duly sworn, hereby make oath that the foregoing

answers to interrogatories are true to the best of my knowledge, information, and belief.


_____

**MARIA TYREE**


     Sworn to and subscribed before me this _____ day of _____, 2015.


_____

Notary Public

16

# EXHIBIT B

| | |
|---|---|
| **From:** | Matt H. Cline |
| **Sent:** | Monday, January 18, 2016 11:12 AM |
| **To:** | mark@markzamora.com |
| **Cc:** | Chris J. Tardio; Ginger F. Ward; C. J. Gideon |
| **Subject:** | RE: Tyree v. STOPNC (NECC case) |

Mark:

These discovery responses are now a month overdue, and we haven't received any word from you on when we can expect them. We intend to go ahead and file a motion to compel. If, by chance, the responses are in the mail on the way to us, please let me know.

Thanks.

Matt

Matthew H. Cline
Gideon, Cooper & Essary, PLC
UBS Tower, Suite 1100
315 Deaderick Street
Nashville, TN 37238
Phone: (615) 254-0400
Fax: (615) 254-0459
matt@gideoncooper.com

**From:** Matt H. Cline
**Sent:** Friday, January 08, 2016 3:37 PM
**To:** mark@markzamora.com
**Cc:** Chris J. Tardio; Ginger F. Ward
**Subject:** RE: Tyree v. STOPNC (NECC case)

Mark:

What is the status of these discovery responses?

Thanks.

Matt

Matthew H. Cline
Gideon, Cooper & Essary, PLC
UBS Tower, Suite 1100
315 Deaderick Street
Nashville, TN 37238
Phone: (615) 254-0400
Fax: (615) 254-0459
matt@gideoncooper.com

**From:** Matt H. Cline
**Sent:** Monday, January 04, 2016 12:10 PM
**To:** mark@markzamora.com

**Cc:** Chris J. Tardio; Ginger F. Ward
**Subject:** Re: Tyree v. STOPNC (NECC case)

Those were discovery requests from the Saint Thomas Entities. We served a separate set of discovery on behalf of our clients.

Matt

On Jan 4, 2016, at 12:06 PM, "mark@markzamora.com" <mark@markzamora.com> wrote:

> I believe that I handed them to counsel at the deposition.
>
> -------- Original Message --------
> Subject: Tyree v. STOPNC (NECC case)
> From: "Matt H. Cline" <matt@gideoncooper.com>
> Date: Thu, December 31, 2015 2:31 pm
> To: Mark Zamora <mark@markzamora.com>
> Cc: "Chris J. Tardio" <chris@gideoncooper.com>, "Ginger F. Ward"
> <ginger@gideoncooper.com>
>
> Mark:
>
> We served you with discovery requests in the *Tyree* case that, by my calendar, are about two weeks overdue. As you know, we're dealing with very tight discovery deadlines in these cases, at the insistence of the PSC. We cannot afford unnecessary delays of this nature. Please provide full and complete responses to our discovery by Wednesday, January 6. If for some reason you cannot do so, please explain why the responses are overdue, and tell us when we can expect them.
>
> Please feel free to call if you would like to discuss.
>
> Thanks.
>
> Matt
>
> Matthew H. Cline
> Gideon, Cooper & Essary, PLC
> UBS Tower, Suite 1100
> 315 Deaderick Street
> Nashville, TN 37238
> Phone: (615) 254-0400
> Fax: (615) 254-0459
> matt@gideoncooper.com

## Kaycee L. Weeter

| | |
|---|---|
| **From:** | Kaycee L. Weeter |
| **Sent:** | Tuesday, December 22, 2015 6:11 PM |
| **To:** | 'mark@markzamora.com' |
| **Cc:** | C. J. Gideon; 'Hampton, Amy'; Cindy Alexander; Matt H. Cline; Chris J. Tardio |
| **Subject:** | Tyree Discovery Responses |

Mark:

I reviewed Mr. Tyree's discovery responses that we received at his deposition today, and I have two points to address:

1. The responses received today are Mr. Tyree's responses to the St. Thomas Defendants' requests. We have yet to receive Mr. Tyree's responses to the Tennessee Clinic Defendants' requests, which were due on December 16, 2015. Please provide his responses to our requests as soon as possible, or we will file an appropriate motion to compel.

2. After reviewing Mr. Tyree's responses to the St. Thomas Defendants' requests, it is clear that the majority of his responses are both unresponsive and unclear. An example is his response to Interrogatory No. 15. Interrogatory No. 15 reads: "Please identify all social media (Facebook, Twitter, LinkedIn or similar sites) that you have used since January 1, 2012." After objecting on the grounds that the request is overly broad, vague, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, Mr. Tyree states that he has "an account." This response is vague and unresponsive to the St. Thomas Defendants' request. In responding to the Tennessee Clinic Defendants' requests, we ask that Mr. Tyree avoid the type of unclear and unresponsive answers that are found throughout his responses to the St. Thomas Defendants' requests.

Thank you in advance for your cooperation in addressing these issues. Please do not hesitate to contact us if you have any comments or concerns.

Best,

Kaycee Weeter

Kaycee L. Weeter, Esq.
Gideon, Cooper & Essary, PLC
Suite 1100
315 Deaderick St.
Nashville, TN 37238
Phone: 615.254.0400
Fax: 615.254.0459

NOTICE: The information in this message and any attachments are intended only for the personal and confidential use of the designated recipients. This message and any attachments may be an attorney-client communication or other legally privileged communication, and as such are privileged and confidential. If the reader of this message is not the intended recipient or an agent permitted to receive the message, you are hereby notified that you have received this message in error, and that any review or use of this message and any attachments is strictly prohibited. If you have received this message in error, please notify me immediately at any of the numbers or the e-mail shown above. Thank you.

1

# EXHIBIT C

Case 1:13-md-02419-RWZ Document 2798-3 Filed 04/13/16 Page 34 of 94
Case 1:13-cv-12475-RWZ Document 16-3 Filed 02/03/16 Page 2 of 9

NEW ENGLAND COMPOUNDING PHARMACY INC. PRODUCTS LIABILITY
VIDEOTAPED DEPOSITION OF PHILLIP TYREE on 12/22/2015

Page 154

```
 1          I'm sorry, but I thought that I was
 2      answering it.
 3  BY MR. GIDEON:
 4      Q.        Well, I am not fussing at you.
 5      A.        That's okay.
 6      Q.        But I am going to ask you a third
 7  and final time.
 8      A.        Okay.
 9      Q.        I want to know the things you
10  cannot do today that you were able to do on
11  August 16th, 2012.
12      A.        Well, myself I can do just most
13  anything I did, but I just don't do it as well.
14      Q.        All right.  Now, the next thing,
15  you said just a minute ago you have gotten some
16  additional shots.  Where did you get the shots
17  and who administered them to you?
18      A.        This last time I got them in
19  Bowling Green.
20      Q.        How recently?
21      A.        Not too long ago.
22      Q.        Epi --
23      A.        It's just -- yes, just a few weeks
24  ago.
25      Q.        Epidural steroid injections?
```



DISCOVERY
LITIGATION SERVICES
Court Reporting • Videography • Trial Presentations
Nationwide Coverage

100 Mayfair Royal
181 Fourteenth Street
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

Case 1:13-md-02419-RWZ Document 2708-3 Filed 04/13/16 Page 35 of 94
Case 1:13-cv-12475-RWZ Document 16-3 Filed 02/03/16 Page 3 of 9

NEW ENGLAND COMPOUNDING PHARMACY INC. PRODUCTS LIABILITY
VIDEOTAPED DEPOSITION OF PHILLIP TYREE on 12/22/2015                    Page 155

1        A.        No.

2        Q.        What kind?

3        A.        It's just shots.  It's just to help

4   my nerves.  They give me a shot and they burnt

5   the nerve a little to kind of get through the

6   pain.

7        Q.        Do you recall somebody talking to

8   you about a radiofrequency ablation?

9        A.        No, but I seen that in the doctor's

10  office.

11       Q.        Okay.  Tell me what kind of

12  treatment you got, then, that is a shot but also

13  burns the nerve.  I truly don't understand what

14  you are talking about.

15       A.        I don't understand it either.

16       Q.        Well, who is the doctor?

17       A.        It's a Filipino doctor and to

18  honestly tell you, I can't pronounce his name but

19  he done -- he done pretty good.

20       Q.        Well, is he at the Medical Center

21  of Bowling Green?

22       A.        It's Intervention Pain Specialists

23  of Bowling Green, I think is what it's called.

24       Q.        Interventional Pain Specialists?

25       A.        I think that that is the name of


DISCOVERY
LITIGATION SERVICES
Court Reporting • Videography • Trial Presentations
Nationwide Coverage

100 Mayfair Royal
181 Fourteenth Street
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

```
 1    it, yes.

 2               MR. GIDEON:  Mark, that has not

 3         been disclosed.

 4               THE WITNESS:  Because they did not

 5         know about it.

 6               MR. ZAMORA:  I am hearing it for

 7         the first time.

 8    BY MR. GIDEON:

 9         Q.       How many weeks ago was it?

10         A.       Just a few weeks ago.  Nobody asked

11    me so I did not tell nobody.

12         Q.       A few weeks to some persons is

13    three weeks, two weeks, a few weeks could be 15

14    weeks ago.  Give me more precision how long ago

15    it was.

16         A.       Just a few weeks ago.  If I had

17    where I could, I would get my paperwork and show

18    you, but I don't have it with me.

19         Q.       I'll ask you just one more time.

20         A.       Yes, sir.

21         Q.       Put a number on the few.  Is it ten

22    weeks or two weeks?

23         A.       I would say that it's three weeks

24    ago that I got my last one.

25         Q.       And how many of these previously
```



```
1    undisclosed shots have you gotten from

2    Interventional Specialists of Bowling Green?

3         A.        I got several.  I got six, I

4    think -- well, let me think here a minute.  I

5    went back to them after I had my back problem

6    and -- well, since I come back from the

7    Philippines and they looked at me.  But before I

8    went to the Philippines is when I had my shots.

9         Q.        Okay.

10        A.        All right.  I got two different --

11   two different times and I got like two, four,

12   six, I think that they said that it was L4-L5.

13        Q.        Did they do injections on both

14   sides of the spine?

15        A.        I believe so, yeah.

16        Q.        And is --

17        A.        No.  No.  Wait a minute.  Maybe

18   they did not, but I thought that they did.

19        Q.        Is it -- do you understand it to be

20   an electrical charge or do you think that there

21   is actually medicine being instilled through a

22   needle?

23        A.        They first gave me some kind of

24   medicine and said, did that help?  And I said it

25   did.  And then they had me to come back and they
```



DISCOVERY
LITIGATION SERVICES
Court Reporting • Videography • Trial Presentations
Nationwide Coverage

100 Mayfair Royal
181 Fourteenth Street
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

Case 1:13-md-02419-RWZ Document 2708-2 Filed 02/12/16 Page 38 of 94
Case 1:13-cv-12475-RWZ Document 16-3 Filed 02/03/16 Page 6 of 9

NEW ENGLAND COMPOUNDING PHARMACY INC. PRODUCTS LIABILITY
VIDEOTAPED DEPOSITION OF PHILLIP TYREE on 12/22/2015                    Page 158

```
 1    done something to the nerves.
 2         Q.        On any of these studies on any of
 3    these trips to this outfit, have they ever done
 4    what is called a nerve conduction study?
 5         A.        I don't know.
 6         Q.        Well, you would know if people put
 7    electrodes on your back or perhaps on your
 8    legs --
 9         A.        I don't remember them doing that,
10    no.
11         Q.        -- and spots --
12         A.        No, I don't remember them doing
13    that.  They never did.
14         Q.        Have the folks at the
15    Interventional Pain Specialists of Bowling Green
16    done any MRIs or CT scans of your spine?
17         A.        No.
18         Q.        Do you know if they're injecting
19    steroids?
20         A.        No, it's not -- I don't think it's
21    steroids.  I think that it's just some kind of a
22    pain -- I don't really know what the medicine is
23    they are injecting.
24         Q.        Do you recall them mentioning the
25    use of Marcaine or lidocaine?
```



100 Mayfair Royal
181 Fourteenth Street
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

Case 1:13-md-02419-RWZ Document 2708-3 Filed 02/12/16 Page 39 of 94
Case 1:13-cv-12475-RWZ Document 16-3 Filed 02/03/16 Page 78 of 9

NEW ENGLAND COMPOUNDING PHARMACY INC. PRODUCTS LIABILITY
VIDEOTAPED DEPOSITION OF PHILLIP TYREE on 12/22/2015                    Page 159

```
 1        A.        No, sir, I did tell them about my
 2   history, of course.
 3        Q.        And what did they say when you told
 4   them that you had received epidural steroid
 5   injections that might have included fungal
 6   contamination?  What did they say about that?
 7        A.        They just asked me if I was all
 8   right, if I remember right.  And I told them,
 9   yeah, so far as I know, I had not had a
10   recurrence of anything like that at all.
11        Q.        You filled out papers for the
12   people at the Interventional Pain Specialists of
13   Bowling Green, didn't you?
14        A.        I filled out a paper when I first
15   went in and it says did you ever have any --
16   these sicknesses, long lines of them, what I have
17   and did not have --
18        Q.        Right.
19        A.        -- I filled those out.
20        Q.        You also filled out a paper that
21   would have answered questions about how you were
22   doing then?
23        A.        Right.
24        Q.        Where you were having discomfort,
25   ability to sleep, all of those background
```



DISCOVERY
LITIGATION SERVICES
Court Reporting • Videography • Trial Presentations
Nationwide Coverage

100 Mayfair Royal
181 Fourteenth Street
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

```
 1        A.        I don't know.  And -- but I may
 2   have.  I went back sometime in that month, I
 3   believe.
 4        Q.        What month?
 5        A.        January, I thought.
 6        Q.        Okay.  So is it true, then, that
 7   when you went back to work in January of 2013,
 8   you have been back at work since then continuing
 9   to do the same job you were doing before you had
10   your first epidural steroid injection?
11        A.        Yeah, before I got this whatever
12   other -- but I thought when they got me off the
13   forklift and I came back down here, I stayed --
14   they wanted -- I thought that they wanted me to
15   take the voriconazole even longer.  I could be
16   wrong.  And I stayed off another several weeks, I
17   thought, but I may be wrong.
18        Q.        I don't think you are right.
19        A.        Okay.
20             MR. ZAMORA:  Let's wrap up some
21        questions and take a five-minute break after
22        you are done with this one, please.
23             MR. GIDEON:  I will tell you this,
24        now, Mark, with the absence of disclosure of
25        the interventional pain meds from wherever
```



DISCOVERY
LITIGATION SERVICES
Court Reporting • Videography • Trial Presentations
Nationwide Coverage

100 Mayfair Royal
181 Fourteenth Street
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

Case 1:13-md-02419-RWZ Document 2798-2 Filed 04/12/16 Page 41 of 94
Case 1:13-cv-12475-RWZ Document 16-3 Filed 02/03/16 Page 9 of 9

NEW ENGLAND COMPOUNDING PHARMACY INC. PRODUCTS LIABILITY
VIDEOTAPED DEPOSITION OF PHILLIP TYREE on 12/22/2015                    Page 163

```
1        it is in Bowling Green or where else, I am
2        going to adjourn his deposition but not
3        conclude it.
4                MR. ZAMORA:   Okay.
5                (Exhibit Number 832, St. Thomas
6        West Hospital History and Physical Record,
7        Bates stamp PTyree-STWH-MD-000016, was
8        marked for identification.)
9    BY MR. GIDEON:
10       Q.       Exhibit 832.   (Tendered.)
11                You recall that you had come back
12   and saw Dr. Latham but you would not be admitted
13   and spend the night, right?
14       A.       Yeah.
15       Q.       Okay.   This is a visit on
16   February 25th, 2013 and it says you returned
17   today for your regular clinic follow-up.   And it
18   said:   He was supposed to do an MRI scan but did
19   not.
20                Is there a reason you were not able
21   to get an MRI scan done in your home community?
22       A.       No, I don't know on that.
23       Q.       Regional Medical Center in Bowling
24   Green has MRI scanners, correct?
25       A.       Yeah.
```



# EXHIBIT D

# Chart

## Phillip Tyree

**DOB:** ▮▮▮▮▮▮▮▮

From 06/01/2015 to 12/15/2015

# Encounters

**Encounter 8** Date 12/15/2015
**Diagnosis** Coccydynia (724.79 | M53.3), Lumbar spondylolysis (738.4 | M43.06)

**Encounter 7** Date 11/17/2015
**Diagnosis** Unspecified Diagnosis, Lumbar spondylolysis (738.4 | M43.06), Lumbar neuritis (724.4 | M54.16)

**Encounter 6** Date 10/09/2015
**Diagnosis** Anesthesia, Lumbaosacral spondylosis/arthropathy/OA/lumbosacral facet arthropathy (721.3) (721.3 | M47.817)

**Encounter 5** Date 09/08/2015
**Diagnosis** Unspecified Diagnosis, Anesthesia, Lumbaosacral spondylosis/arthropathy/OA/lumbosacral facet arthropathy (721.3)

**Encounter 4** Date 07/28/2015
**Diagnosis** Anesthesia, Lumbaosacral spondylosis/arthropathy/OA/lumbosacral facet arthropathy (721.3)

**Encounter 3** Date 06/30/2015
**Diagnosis** Anesthesia, Lumbaosacral spondylosis/arthropathy/OA/lumbosacral facet arthropathy (721.3)

**Encounter 2** Date 06/01/2015
**Diagnosis** Lumbaosacral spondylosis/arthropathy/OA/lumbosacral facet arthropathy (721.3), Failed Back Syndrome, Lumb(722.83), Systemic Arthritis, Iatrogenic Fungal meningitis

**Encounter 1** Date 06/01/2015
**Diagnosis** Failed Back Syndrome, Lumb(722.83), Lumbaosacral spondylosis/arthropathy/OA/lumbosacral facet arthropathy (721.3)

**Phillip Tyree**
12/15/2015 10:25 AM
Location: Interventional Pain Specialists
Patient #: 130070
DOB:
Undefined / Language: English / Race: White
Male

History of Present Illness (Megan Kepley, APRN; 12/15/2015 11:12 AM)

The patient is a 63 year old male who presents with back pain. Note for "Back pain": Patient is a 63-year-old male who presents for a follow up evaluation today. Patient is s/p left and right RFA L4-S1 which he had in September and October from which he is still getting a great deal of relief. Patient states he started taking the gabapentin that was prescribed last month but developed testicular pain which went away when he stopped taking the gabapentin. He notes tailbone pain today and attributes this to riding on a forklift every day at work. He notes the seat of the forklift has a "hump" in the middle which significantly increases his pain. He also reports that he was sitting in a massage chair at the mall and "something in the seat rammed up and hit me in the butt". He reports he only has this pain when sitting. Patient states that he has a pain level of 3 on a scale of 0-10. Patient denies any other changes in his medical history or medication.

Problem List/Past Medical (Megan Kepley, APRN; 12/15/2015 11:16 AM)
**Arthritis**
**HTN**
**Heart Disease**
**Sleep Apnea**
**Depression**

Family History (Randy Alvey; 12/15/2015 10:25 AM)
**HTN.** Father.
**Cancer.** Father, Sister.
**Myocardial Infarction.** Father.
**Hepatitis.** Sister.
**Heart Disease.** Father, Maternal Uncle.

Social History (Randy Alvey; 12/15/2015 10:25 AM)
**Tobacco use.** Never smoker.
**No drug use**
**Alcohol use.** Moderate alcohol use.

Allergies (Randy Alvey; 12/15/2015 10:25 AM)
**Penicillins**

Medication History (Randy Alvey; 12/15/2015 10:26 AM)
CeleBREX (200MG Capsule, 1 capsule Oral two times daily) Active.
Atorvastatin Calcium (40MG Tablet, 1 tab Oral daily) Active.
Isosorbide Mononitrate (60MG Tablet ER, Oral) Active.
Isosorbide Mononitrate ER (60MG Tablet ER 24HR, 1 tab Oral daily) Active.
Losartan Potassium (100MG Tablet, 1 tab Oral bid) Active.
Metoprolol Succinate (50MG Tablet ER, 1 1/2 tab Oral bid) Active.
Nuvigil (250MG Tablet, 1 tab Oral daily) Active.
Medications Reconciled.

Diagnostic Studies History (Randy Alvey; 12/15/2015 10:25 AM)
**MRI.** 07/06/2012 IMPRESSIONS: L4-5: Bilateral Facet Hypertrophy left more so than right. There is a small osteophyte projecting into the thecal sac from the facet joint which significant narrows the left lateral recess. There is probable compression of the descending L5 nerve root. L5-S1: Bilateral Facet Hypertrophy. There is a mild broad based disc osteophyte complex with annular tear. The disc is eccentric to the left contributing to moderate bilateral neuroporaminal narrowing more so on the left than right. There is also narrowing of the left lateral recess without evidence of compression of the descending S1 nerve root.     Reviewed by pain physicians.
**Magnetic Resonance Imaging of Lumbar Spine.** 05/24/2013 IMPRESSION: No interval change.     Reviewed by pain physicians.

Past Surgical History (Randy Alvey; 12/15/2015 10:25 AM)
**Low Back Surgery**
**Colonoscopy**
**Hernia Surgries**

Other Problems (Megan Kepley, APRN; 12/15/2015 11:16 AM)
**Unspecified Diagnosis**
**Lumbar neuritis (724.4 | M54.16)**
**Lumbar spondylolysis (738.4 | M43.06)**
**Anesthesia (782.0 | R20.0)**
**Lumbaosacral spondylosis/arthropathy/OA/lumbosacral facet arthropathy (721.3) (721.3 | M47.817)**
**Failed Back Syndrome, Lumb(722.83)**

**General:** Present- Fall Risk: Low potential/minimal risk factors.
**Cardiovascular:** Present- Hypertension. **Note:** Heart Disease
**Psychiatric:** Present- Depression and Insomnia.
**All other systems negative**

Vitals (Randy Alvey; 12/15/2015 10:48 AM)
12/15/2015 10:25 AM
**Weight:** 254 lb **Height:** 71 in
**Body Surface Area:** 2.4 m² **Body Mass Index:** 35.43 kg/m²
**Pain Level:** 3/10
**Temp.:** 98.1° F **Pulse:** 71 (Regular) **Resp.:** 16 (Unlabored) **P.OX:** 95% (Room air)
**BP:** 132/85 (Sitting, Left Arm, Standard)

Physical Exam (Megan Kepley, APRN; 12/15/2015 11:15 AM)
The physical exam findings are as follows:

### General
**KASPER** - Run: no anomalies found. **Mental Status** - Alert. **General Appearance** - Cooperative and Well groomed. Not Sickly. **Orientation** - Oriented X3. **Build & Nutrition** - Well nourished and Well developed. **Posture** - Normal posture. **Gait** - Stiff. **Voice** - Normal.

### Neurologic
**Sensory:**
**Light Touch: Intact** - Globally.
**Vibration: Intact** - Globally.
**Proprioception - Bilateral** - Normal.
**Motor:**
**Bulk and Contour:** - Normal.
**Tone:** - Normal.
**Strength: 5/5 normal muscle strength** - Left Lower Extremity, Right Lower Extremity and Back extensors.
**Reflexes (Dermatomes): 2/2 Normal** - Left Achilles (L5-S2), Left Knee (L2-4), Right Achilles (L5-S2) and Right Knee (L2-4).

### Musculoskeletal
**Spine/Ribs/Pelvis**
**Periarticular Facet Joint Tenderness - Bilateral** - L4, L5 and S1.
**Lumbosacral Spine:**
**Inspection and Palpation: Tenderness & Tightness - Bilateral** - paralumbar muscle tenderness, paralumbar muscle tightness, L4, L5, mild, localized and medial low back. No Spinous Process Tenderness or paralumbar muscle spasticity.
Assessment of pain reveals the following findings: The pain is characterized as - ache, mild, pain accumulates with activity and pain increases with sustained postures. **Location** - pain refers medially to lower back. Causative Factors include - extending backwards, Prolonged standing and walking. The pain is relieved by - non-narcotic medications, rest and use of NSAIDs.
**Pelvic Region:**
**Inspection and Palpation: Tenderness** - moderate and localized. Note: tenderness to palpation over the coccyx **Swelling** - none.
Assessment of pain reveals the following findings:: The pain is characterized as - moderate and stabbing. **Location** - Note: over the coccyx Causative Factors include - sitting. The pain is relieved by - Note: standing

Assessment & Plan (Megan Kepley, APRN; 12/15/2015 11:20 AM)

Coccydynia (724.79 | M53.3)
Current Plans
  I  1006F-8P: Osteoarthritis symptoms and functional status not assessed, reason not otherwise specified.
  I  DOC CUR MEDS BY PROV (G8427)
  I  PAIN ASSESSMENT DOCUMENTED AS POSITIVE UTILIZING A STANDARDIZED TOOL AND A FOLLOW-UP PLAN IS DOCUMENTED (G8730)
  I  1007F: Use of anti-inflammatory or analgesic over-the-counter (OTC) medications for symptom relief assessed

Lumbar spondylolysis (738.4 | M43.06)

Note: Phillip presents as a follow up today. His axial back pain has improved but is still present however, his main concern today is coccyx pain. He rides a forklift at work and sits on a seat with a "hump" in the middle. He will be scheduled for a coccygeal nerve block, the procedure was explained and he would like to proceed.

Flow Sheets (Megan Kepley, APRN; 12/15/2015 11:24 AM)
**IPS Procedure Flow Sheet**
8
 **Date:** 12.15.15 **MD:** DO **Procedure:** f/u **Follow-up:** Coccygeal nerve block #1 with Dr. O with sedation



Signed electronically by Dele Ogunyemi, DO (12/15/2015 12:25 PM)

**Procedures**

**DOC CUR MEDS BY PROV (G8427)** Performed: 12/15/2015 (Ordered)
**PAIN ASSESSMENT DOCUMENTED AS POSITIVE UTILIZING A STANDARDIZED TOOL AND A FOLLOW-UP PLAN IS DOCUMENTED (G8730)** Performed: 12/15/2015 (Ordered)

General: Present- Fall Risk: low potential/minimal risk factors.
Cardiovascular: Case 3:19-cv-24679-RWZ Document 18-42 Filed 02/03/16 Page 3 of 33 94
Psychiatric: Present- Depression and Insomnia.
All other systems negative

Vitals (Randy Alvey; 11/17/2015 10:39 AM)
11/17/2015 10:25 AM
**Weight:** 254 lb **Height:** 71 in
**Body Surface Area:** 2.4 m² **Body Mass Index:** 35.43 kg/m²
**Pain Level:** 4/10
**Temp.:** 98.5° F **Pulse:** 68 (Regular) **Resp.:** 16 (Unlabored) **P.OX:** 97% (Room air)
**BP:** 132/82 (Sitting, Left Arm, Standard)


Physical Exam (Dele Ogunyemi, DO; 11/17/2015 11:47 AM)
The physical exam findings are as follows:

**General**
**Mental Status** - Alert. **General Appearance** - Well groomed. Not Sickly. **Orientation** - Oriented to time, Oriented to place and Oriented to person. **Last Procedure Performed** - RFA/Lumbar. **Amount of improvement** - 60 %. **Duration of improvement** - 35 Days. **Build & Nutrition** - Well nourished and Well developed. **Posture** - Normal posture. **Gait** - Normal.

**Neurologic**
**Sensory:**
**Light Touch: Intact** - Globally.
**Vibration: Intact** - Globally.
**Proprioception - Bilateral** - Normal.
**Motor:**
**Bulk and Contour:** - Normal.
**Tone:** - Normal.
**Strength: 5/5 normal muscle strength** - Left Lower Extremity, Right Lower Extremity and Back extensors.
**Reflexes (Dermatomes): 2/2 Normal** - Left Achilles (L5-S2), Left Knee (L2-4), Right Achilles (L5-S2) and Right Knee (L2-4).

**Musculoskeletal**
**Spine/Ribs/Pelvis**
**Periarticular Facet Joint Tenderness - Bilateral** - L4, L5 and S1.
**Lumbosacral Spine:**
**Inspection and Palpation: Tenderness & Tightness - Bilateral** - paralumbar muscle tenderness, paralumbar muscle tightness, L4, L5, 2+, mild, localized and medial low back. No paralumbar muscle spasticity or paralumbar muscle fullness.
Assessment of pain reveals the following findings: The pain is characterized as - ache, mild, pain accumulates with activity and pain increases with sustained postures. **Scale** - 4 /10. **Location** - pain refers medially to lower back. Causative Factors include - extending backwards, Prolonged standing and walking. The pain is relieved by - non-narcotic medications, rest and use of NSAIDs.

Assessment & Plan (Dele Ogunyemi, DO; 11/17/2015 4:34 PM)
Unspecified Diagnosis
Current Plans
I 1006F-8P: Osteoarthritis symptoms and functional status not assessed, reason not otherwise specified.
I DOC CUR MEDS BY PROV (G8427)
I PAIN ASSESSMENT DOCUMENTED AS POSITIVE UTILIZING A STANDARDIZED TOOL AND A FOLLOW-UP PLAN IS DOCUMENTED (G8730)
I 1007F: Use of anti-inflammatory or analgesic over-the-counter (OTC) medications for symptom relief assessed
I Instructed to keep follow-up appointment as scheduled

ASSESSMENT AND PLAN

1, Recently came back from the Phillipines on vacation

2, Pain is much better except for sustained activities

3, Start Gabapentin 300mg BID

4, Consider opiates at next visit if functionality is still compromised

Lumbar spondylolysis (738.4 | M43.06)

Lumbar neuritis (724.4 | M54.16)


Flow Sheets (Dele Ogunyemi, DO; 11/17/2015 11:45 AM)
**IPS Procedure Flow Sheet**
7
**Date:** 11.17.15 **MD:** EDR **Procedure:** f/u RFA L4-S1 left **% Improvement Since Last Procedure:** 60% sustained **Follow-up:** f/u one month for med refill and evaluation of medication


**Pain Management: Rx Flow Sheet**
3.
**Date:** 11.17.15 **Medication/Dosage:** gabapentin 300mg **# Given:** 60 **# Refills:** 0 **Comments:** rx given to pt



Signed electronically by Dele Ogunyemi, DO (11/17/2015 4:35 PM)

## Procedures

**DOC CUR MEDS BY PROV (G8427)** Performed: 11/17/2015 (Ordered)
**PAIN ASSESSMENT DOCUMENTED AS POSITIVE UTILIZING A STANDARDIZED TOOL AND A FOLLOW-UP PLAN IS DOCUMENTED (G8730)** Performed: 11/17/2015 (Ordered)

**Phillip Tyree**
10/9/2015 11:09 AM
Location: Interventional Pain Specialists
Patient #: 130070
DOB:
Undefined / Language: English / Race: White
Male

History of Present Illness (Taylor Thomas; 10/9/2015 11:19 AM)
    The patient is a 63 year old male who presents with back pain. Note for "Back pain": Mr Tyree is here s/p right RFA L4-S1 where she reports 50% sustained relief. Pain is rated 2/10 in lower back. RFA left L4-S1.

Problem List/Past Medical (Taylor Thomas; 10/9/2015 11:11 AM)
**Depression**
**Arthritis**
**HTN**
**Heart Disease**
**Sleep Apnea**

Family History (Taylor Thomas; 10/9/2015 11:10 AM)
**Heart Disease**. Father, Maternal Uncle.
**Hepatitis**. Sister.
**HTN**. Father.
**Cancer**. Father, Sister.
**Myocardial Infarction**. Father.

Social History (Taylor Thomas; 10/9/2015 11:10 AM)
**Tobacco use**. Never smoker.
**Alcohol use**. Moderate alcohol use.
**No drug use**

Allergies (Taylor Thomas; 10/9/2015 11:10 AM)
**Penicillins**

Medication History (Taylor Thomas; 10/9/2015 11:10 AM)
CeleBREX (200MG Capsule, 1 capsule Oral two times daily) Active.
Atorvastatin Calcium (40MG Tablet, 1 tab Oral daily) Active.
Isosorbide Mononitrate (60MG Tablet ER, Oral) Active.
Isosorbide Mononitrate ER (60MG Tablet ER 24HR, 1 tab Oral daily) Active.
Losartan Potassium (100MG Tablet, 1 tab Oral bid) Active.
Metoprolol Succinate (50MG Tablet ER, 1 1/2 tab Oral bid) Active.
Nuvigil (250MG Tablet, 1 tab Oral daily) Active.
Medications Reconciled.

Diagnostic Studies History (Taylor Thomas; 10/9/2015 11:10 AM)
**MRI**. 07/06/2012 IMPRESSIONS: L4-5: Bilateral Facet Hypertrophy left more so than right. There is a small osteophyte projecting into the thecal sac from the facet joint which significant narrows the left lateral recess. There is probable compression of the descending L5 nerve root. L5-S1: Bilateral Facet Hypertrophy. There is a mild broad based disc osteophyte complex with annular tear. The disc is eccentric to the left contributing to moderate bilateral neuroporaminal narrowing more so on the left than right. There is also narrowing of the left lateral recess without evidence of compression of the descending S1 nerve root.

Reviewed by pain physicians.
**Magnetic Resonance Imaging of Lumbar Spine**. 05/24/2013 IMPRESSION: No interval change.

Reviewed by pain physicians.

Past Surgical History (Taylor Thomas; 10/9/2015 11:10 AM)
**Low Back Surgery**
**Colonoscopy**
**Hernia Surgries**

Other Problems (Taylor Thomas; 10/9/2015 11:11 AM)
**Systemic Arthritis**
**Failed Back Syndrome, Lumb(722.83)**
**Iatrogenic Fungal meningitis**
**Lumbaosacral spondylosis/arthropathy/OA/lumbosacral facet arthropathy (721.3)**
**Anesthesia (782.0 | R20.0)**
**Unspecified Diagnosis**

Vitals (Taylor Thomas; 10/9/2015 11:19 AM)

**Weight:** 254 lb **Height:** 11:8-cv-02419-RWZ Document 2792-2 Filed 02/03/16 Page 15 of 33
**Body Surface Area:** 2.4 m² **Body Mass Index:** 35.43 kg/m²
**Pain Level:** 2/10
**Temp.:** 97.5° F **Pulse:** 68 (Regular) **Resp.:** 16 (Unlabored) **P.OX:** 97% (Room air)
**BP:** 119/78 (Sitting, Left Arm, Standard)
*Patient here for left RFA L4-S1. Patient allergic to pcn, dentures secured, no PM, not daibetic, NPO, no thinners, driver present.*

Physical Exam (Eduardo De Los Reyes, MD; 10/9/2015 11:33 AM)
The physical exam findings are as follows:

**General**
**Mental Status** - Alert. **General Appearance** - Well groomed. Not Sickly. **Orientation** - Oriented to time, Oriented to place and Oriented to person. **Build & Nutrition** - Well nourished and Well developed. **Posture** - Normal posture. **Gait** – Normal.

**Neurologic**
**Sensory:**
**Light Touch: Intact** - Globally.
**Vibration: Intact** - Globally.
**Proprioception - Bilateral** - Normal.
**Motor:**
**Bulk and Contour:** - Normal.
**Tone:** - Normal.
**Strength: 5/5 normal muscle strength** - Left Lower Extremity, Right Lower Extremity and Back extensors.
**Reflexes (Dermatomes): 2/2 Normal** - Left Achilles (L5-S2), Left Knee (L2-4), Right Achilles (L5-S2) and Right Knee (L2-4).

**Musculoskeletal**
**Spine/Ribs/Pelvis**
**Periarticular Facet Joint Tenderness - Bilateral** - L4, L5 and S1. **Functional Testing** - No Fabere's Test - Right or Fabere's Test - Left. **Lumbar Flexion** - 60 deg. **Lumbar Extension** - 25 deg. **Lumbar Right Rotation** - 30 deg. **Lumbar Left Rotation** - 30 deg. **Lumbar Right Lateral Flexion** - 25 deg. **Lumbar Left Lateral Flexion** - 25 deg. **Passive Straight Leg Raising Right** - 75 deg. **Passive Straight Leg Raising Left** - 75 deg.
**Lumbosacral Spine:**
**Inspection and Palpation: Tenderness & Tightness - Bilateral** - paralumbar muscle tenderness and paralumbar muscle tightness. No paralumbar muscle spasticity or paralumbar muscle fullness.

Assessment & Plan (Eduardo De Los Reyes, MD; 10/9/2015 11:34 AM)

Anesthesia (782.0 | R20.0)
Current Plans
  l  O2 Capnograph Tubing
  l  IV Anesthesia set
  l  Iv access-
  l  Anesthesia - IV sedation
  l  ELECTRODES, (E.G., APNEA MONITOR), PER PAIR (A4556)
  l  ANESTHESIA FOR PROCEDURE (01999)
  l  Follow up in 1 month or as needed

Lumbaosacral spondylosis/arthropathy/OA/lumbosacral facet arthropathy (721.3 | M47.817)
Current Plans
  l  DESTRUCTION OF LUMBAR NERVE BY INJECTION OF NEUROLYTIC AGENT INTO PARAVERTEBRAL FACET JOINT (64635)
  l  MONITORING DEVICE (A9279)
  l  GLOVES, STERILE, PER PAIR (Special Coverage Instructions Apply) (A4930)
  l  NEEDLES ONLY, STERILE, ANY SIZE, EACH (Not Valid for Medicare) (A4215)
  l  SURGICAL TRAYS (Special Coverage Instructions Apply. See MCM: 15030) (A4550)
  l  1006F-8P: Osteoarthritis symptoms and functional status not assessed, reason not otherwise specified.
  l  DOC CUR MEDS BY PROV (G8427)
  l  PAIN ASSESSMENT DOCUMENTED AS POSITIVE UTILIZING A STANDARDIZED TOOL AND A FOLLOW-UP PLAN IS DOCUMENTED (G8730)
  l  1007F: Use of anti-inflammatory or analgesic over-the-counter (OTC) medications for symptom relief assessed

Flow Sheets (Taylor Thomas; 10/9/2015 11:19 AM)
**IPS Procedure Flow Sheet**
6
 **Date:** 10/9/15 **MD:** EDR **Diagnosis:** Spondylosis **Procedure:** RFA L4-S1 left **% Improvement Since Last Procedure:** 50% sustained **Follow-up:** Follow up

 Signed electronically by Eduardo De Los Reyes, MD (10/9/2015 3:10 PM)

## Procedures

**DESTRUCTION OF LUMBAR NERVE BY INJECTION OF NEUROLYTIC AGENT INTO PARAVERTEBRAL FACET JOINT**
**(64635)** Performed: 10/09/2015 (Final, Reviewed)

Pre Procedure Assessment
- Procedure date: 10/9/2015 11:31 AM
- Consents Signed & Witnessed: Yes
- NPO after Midnight: Yes
- Allergies Verified: Yes
- I.V. Site: Prepped with alcohol, NS 500ml IV started for pt who will be sedated, Hand, Left
- *Please reference any prior date of service for this client*: Yes

Procedure Documentation
- Time In: 11:31 AM
- Physician: Eduardo De Los Reyes, MD
- CRNA: Stacie Weickel, CRNA
- Procedure Nurse: Jana Alvey
- Time Out Completed: Right Patient, Right Procedure, Right Side
- Does the patient have a Pacemaker and/or Defibrillator?: No
- EKG Monitored: Yes
- NIBP Monitored: Yes
- Grounding pad placement: Right, Flank
- ASA Classification: III
- Procedure: left RFA L4-S1
- Pre-Op Diagnosis: lumbar spondylosis
- Surgical Site Marked by Surgeon with C-ARM: Yes
- Surgical Area Prep: Chloraprep
- Body Position: Prone
- Type and dosage of sedative per CRNA: Propofol (100mg IV), Fentanyl (25mcg IV)
- IV Fluids Total: 200 cc

RFA Location #1
- Time: 11:41 AM
- Impedance Reading: 280 ohms
- Sensory response occurred at: 0 hz
  Note: pt sedated
- and: 0 volts
  Note: pt sedated
- Absence of motor response occurred at: 2 hz
- and: 2 volts
- After successful stimulation testing, radiofrequency neural ablation was carried out at: 80 deg C
- for: 90 sec

MD Note
- The risks and benefits of the procedure were discussed with the patient, and pt signed a consent form for the procedure.: Yes
- Percentage of pain relief that the patient experienced following MBB's #1: 75 %
- Days of pain relief following MBB's #1: 2
- Percentage of pain relief that the patient experienced following MBB's #2: 80 %
- Days of pain relief following MBB's #2: 2
- Based upon the temporary improvement noted by the patient, but also because of the return of pain following dissipation of local anesthetic effect, the decision was made to proceed with radiofrequency ablation: The patient tolerated the procedure well and was brought to the recovery area in stable condition.
- Does the patient have a Pacemaker and/or Defibrillator?: Yes
- The patient was placed in the prone position and the site to be injected was cleansed with: Betadine
- The area to be injected was prepped and draped in a sterile fashion: Yes
- Local anesthetic of Lidocaine 1% was infiltrated into the skin and subcutaneous tissue: in milliliters: 2
- Levels where insulated needles were brought down to the medial and superior aspects of the transverse process: L4/L5, L5/S1, Left
- Correct needle position was verified by using AP, oblique, and lateral fluoroscopic images: Yes
- With the needle at the cephalad margins of the transverse processes, stimulation was carried out for sensory testing. Sensory paresthesias were perceived in the lower back: N/A
- With the needle at the cephalad margins of the transverse processes, stimulation was carried out for motor testing. Absence of motor response was perceived in the upper back: Yes
- Upper extremity responses:  No sensory or motor responses were perceived in the lower extremity.
- With the needle at the cephalad margins of the transverse processes, stimulation was carried out for sensory testing. Sensory paresthesias were perceived in the lower back: N/A
- With the needle at the cephalad margins of the transverse processes, stimulation was carried out for motor testing. Absence of motor response was perceived in the lower back: Yes
- Lower extremity responses:  No sensory or motor responses were perceived in the lower extremity.
- The medication aliquot was evenly distributed among the areas of injection.:  (De los Reyes) DepoMedrol 80mg, 1ml; Marcaine 0.5%, 9ml
- Complications:  There were no apparent complications.
- The patient tolerated the procedure and was brought to the recovery area in stable condition.: Yes

- Time In: 11:47 AM
- Nurse: Kyla Childress
- Alert & Oriented: Yes
- Skin warm and dry: Yes
- Color pink: Yes
- Airway patent and ventilating deep and regular: Yes
- Moves all extremities x 4: Yes
- Denies weakness or numbness lower extremities: Yes
- Able to ambulate well: Yes
- Discharge instructions (oral and written) given to patient: Yes
- Patient verbalized understanding of discharge instructions: Yes
- Bandaid dry and intact: Yes
- Heplock discontinued: Yes
- Heplock site clear with no active bleeding: Yes
- Any Pain: No
- Medications: No
- Nurses Notes/Comments: B/P:120/76
  HR:65
  RR:18
  SPO2:96%RA
- Discharge Time: 12:09 PM

Into Recovery
- Activity: Able to move volentarily or on command 4 extremities
- Respirations: Able to deep breathe and cough freely 2
- Circulation: BP +/ - 20% preanesthesia level 2
- Oxygen Saturation: 92-100% 2
- Total Score: 10

Post Recovery
- Activity: Able to move volentarily or on command 4 extremities
- Respirations: Able to deep breathe and cough freely 2
- Circulation: BP +/ - 20% preanesthesia level 2
- Oxygen Saturation: 92-100% 2
- Total Score: 10

**MONITORING DEVICE (A9279)** Performed: 10/09/2015 (Ordered)

**GLOVES, STERILE, PER PAIR (Special Coverage Instructions Apply) (A4930)** Performed: 10/09/2015 (Ordered)

**NEEDLES ONLY, STERILE, ANY SIZE, EACH (Not Valid for Medicare) (A4215)** Performed: 10/09/2015 (Ordered)

**ELECTRODES, (E.G., APNEA MONITOR), PER PAIR (A4556)** Performed: 10/09/2015 (Ordered)

**SURGICAL TRAYS (Special Coverage Instructions Apply. See MCM: 15030) (A4550)** Performed: 10/09/2015 (Ordered)

**ANESTHESIA FOR PROCEDURE (01999)** Performed: 10/09/2015 (Ordered)

**DOC CUR MEDS BY PROV (G8427)** Performed: 10/09/2015 (Ordered)

**PAIN ASSESSMENT DOCUMENTED AS POSITIVE UTILIZING A STANDARDIZED TOOL AND A FOLLOW-UP PLAN IS DOCUMENTED (G8730)** Performed: 10/09/2015 (Ordered)

**Phillip Tyree**
9/8/2015 8:57 AM
Location: Interventional Pain Specialists
Patient #: 130070
DOB: 
Underined / Language: English / Race: White
Male

History of Present Illness (Jana Alvey; 9/8/2015 9:10 AM)

The patient is a 63 year old male who presents with back pain. Note for "Back pain": Mr Tyree presents today s/p B/L L$-S1 #2 where he reports a 50-60% sustained relief of his lower back and bilateral hip pain. His current pain level is 3/10. Pt is requesting an appetitie suppresant to decrease his weight. We will proceed with his right RFA L4-S1 today

Problem List/Past Medical (Jana Alvey; 9/8/2015 9:00 AM)

**Arthritis**
**Sleep Apnea**
**Heart Disease**
**HTN**
**Depression**

Family History (Jana Alvey; 9/8/2015 8:59 AM)

**Cancer.** Father, Sister.
**Myocardial Infarction.** Father.
**HTN.** Father.
**Hepatitis.** Sister.
**Heart Disease.** Father, Maternal Uncle.

Social History (Jana Alvey; 9/8/2015 8:59 AM)

**Alcohol use.** Moderate alcohol use.
**No drug use**
**Tobacco use.** Never smoker.

Allergies (Jana Alvey; 9/8/2015 8:59 AM)

**Penicillins**

Medication History (Jana Alvey; 9/8/2015 8:59 AM)

Medications Reconciled.
CeleBREX (200MG Capsule, 1 capsule Oral two times daily) Active.
Atorvastatin Calcium (40MG Tablet, 1 tab Oral daily) Active.
Isosorbide Mononitrate (60MG Tablet ER, Oral) Active.
Isosorbide Mononitrate ER (60MG Tablet ER 24HR, 1 tab Oral daily) Active.
Losartan Potassium (100MG Tablet, 1 tab Oral bid) Active.
Metoprolol Succinate (50MG Tablet ER, 1 1/2 tab Oral bid) Active.
Nuvigil (250MG Tablet, 1 tab Oral daily) Active.

Diagnostic Studies History (Jana Alvey; 9/8/2015 8:59 AM)

**MRI.** 07/06/2012 IMPRESSIONS: L4-5: Bilateral Facet Hypertrophy left more so than right. There is a small osteophyte projecting into the thecal sac from the facet joint which significant narrows the left lateral recess. There is probable compression of the descending L5 nerve root. L5-S1: Bilateral Facet Hypertrophy. There is a mild broad based disc osteophyte complex with annular tear. The disc is eccentric to the left contributing to moderate bilateral neuroporaminal narrowing more so on the left than right. There is also narrowing of the left lateral recess without evidence of compression of the descending S1 nerve root.

Reviewed by pain physicians.
**Magnetic Resonance Imaging of Lumbar Spine.** 05/24/2013 IMPRESSION: No interval change.

Reviewed by pain physicians.

Past Surgical History (Jana Alvey; 9/8/2015 8:59 AM)

**Colonoscopy**
**Low Back Surgery**
**Hernia Surgries**

Other Problems (Jana Alvey; 9/8/2015 9:00 AM)

**Iatrogenic Fungal meningitis**
**Failed Back Syndrome, Lumb(722.83)**
**Systemic Arthritis**
**Lumbaosacral spondylosis/arthropathy/OA/lumbosacral facet arthropathy (721.3)**
**Anesthesia (782.0 | R20.0)**

Vitals (Jana Alvey; 9/8/2015 9:11 AM)

**Weight:** 254 lb **Height:** 71 in (5' 11.0'') **BMI:** 35.43 kg/m²
**Body Surface Area:** 2.4 m² **Body Mass Index:** 35.43 kg/m²
**Pain Level:** 3/10
**Temp.:** 97.5° F (Oral) **Pulse:** 64 (Regular) **Resp.:** 18 **P.OX:** 98% (Room air)
**BP:** 123/82 (Sitting, Left Arm, Standard)
*Pt NPO after MN, did not take AM medications, secure dentures, no PM, not a diabetic, allergy to PCN, no thinners, has a driver, no change in health.*


Physical Exam (Eduardo De Los Reyes, MD; 9/8/2015 9:24 AM)
The physical exam findings are as follows:


**General**
**Mental Status** - Alert. **General Appearance** - Well groomed. Not Sickly. **Orientation** - Oriented to time, Oriented to place and Oriented to person. **Build & Nutrition** - Well nourished and Well developed. **Posture** - Normal posture. **Gait** - Normal.

**Neurologic**
**Sensory:**
**Light Touch: Intact** - Globally.
**Vibration: Intact** - Globally.
**Proprioception** - **Bilateral** - Normal.
**Motor:**
**Bulk and Contour:** - Normal.
**Tone:** - Normal.
**Strength: 5/5 normal muscle strength** - Left Lower Extremity, Right Lower Extremity and Back extensors.
**Reflexes (Dermatomes): 2/2 Normal** - Left Achilles (L5-S2), Left Knee (L2-4), Right Achilles (L5-S2) and Right Knee (L2-4).

**Musculoskeletal**
**Spine/Ribs/Pelvis**
**Periarticular Facet Joint Tenderness** - **Bilateral** - L4, L5 and S1. **Functional Testing** - No Fabere's Test - Right or Fabere's Test - Left.
**Lumbar Flexion** - 60 deg. **Lumbar Extension** - 25 deg. **Lumbar Right Rotation** - 30 deg. **Lumbar Left Rotation** - 30 deg. **Lumbar Right Lateral Flexion** - 25 deg. **Lumbar Left Lateral Flexion** - 25 deg. **Passive Straight Leg Raising Right** - 75 deg. **Passive Straight Leg Raising Left** - 75 deg.
**Lumbosacral Spine:**
**Inspection and Palpation: Tenderness & Tightness** - **Bilateral** - paralumbar muscle tenderness and paralumbar muscle tightness. No paralumbar muscle spasticity or paralumbar muscle fullness.

Assessment & Plan (Eduardo De Los Reyes, MD; 9/8/2015 9:24 AM)

Unspecified Diagnosis
Current Plans
   l 1006F-8P: Osteoarthritis symptoms and functional status not assessed, reason not otherwise specified.
   l DOC CUR MEDS BY PROV (G8427)
   l PAIN ASSESSMENT DOCUMENTED AS POSITIVE UTILIZING A STANDARDIZED TOOL AND A FOLLOW-UP PLAN IS DOCUMENTED (G8730)
   l 1007F: Use of anti-inflammatory or analgesic over-the-counter (OTC) medications for symptom relief assessed

Anesthesia (782.0 | R20.0)
Current Plans
   l O2 Capnograph Tubing
   l IV Anesthesia set
   l Iv access-
   l Anesthesia - IV sedation
   l ELECTRODES, (E.G., APNEA MONITOR), PER PAIR (A4556)
   l ANESTHESIA FOR PROCEDURE (01999)

Lumbaosacral spondylosis/arthropathy/OA/lumbosacral facet arthropathy (721.3)
Current Plans
   l DESTRUCTION OF LUMBAR NERVE BY INJECTION OF NEUROLYTIC AGENT INTO PARAVERTEBRAL FACET JOINT (64635)
   l FLUOROGUIDE FOR SPINE INJECT (77003)
   l MONITORING DEVICE (A9279)
   l GLOVES, STERILE, PER PAIR (Special Coverage Instructions Apply) (A4930)
   l NEEDLES ONLY, STERILE, ANY SIZE, EACH (Not Valid for Medicare) (A4215)
   l SYRINGE WITH NEEDLE, STERILE 5CC OR GREATER, EACH (Not Valid for Medicare) (A4209)
   l SURGICAL TRAYS (Special Coverage Instructions Apply. See MCM: 15030) (A4550)
   l Follow up in

Flow Sheets (Amanda Bullen; 9/8/2015 9:40 AM)
**IPS Procedure Flow Sheet**
5
   **Date:** 9/8/15 **MD:** edr **Diagnosis:** sppondylosis **Procedure:** RFA L4-S1 right **Follow-up:** RFA L4-S1 left

**Pain Management: Rx Flow Sheet**
2.
   **Date:** 9/8/15 **Medication/Dosage:** Tramadol 50mg 1 tab po Q8hrs **# Given:** 60 **# Refills:** 0 **Comments:** rx given to pt

Signed electronically by Eduardo De Los Reyes, MD (9/8/2015 11:07 AM)

---

**DESTRUCTION OF LUMBAR NERVE BY INJECTION OF NEUROLYTIC AGENT INTO PARAVERTEBRAL FACET JOINT**

**(64635)** Performed: 09/08/2015 (Final, Reviewed)

Pre Procedure Assessment
- Procedure date: 9/8/2015 9:27 AM
- Consents Signed & Witnessed: Yes
- NPO after Midnight: Yes
- Allergies Verified: Yes
- I.V. Site: Prepped with alcohol, NS 500ml IV started for pt who will be sedated, Hand, Left
- *Please reference any prior date of service for this client*: Yes

Procedure Documentation
- Time In: 9:28 AM
- Physician: Eduardo De Los Reyes, MD
- CRNA: Stacie Weickel, CRNA
- Procedure Nurse: Christina Oller
- Time Out Completed: Right Patient, Right Procedure, Right Side
- Does the patient have a Pacemaker and/or Defibrillator?: No
- EKG Monitored: Yes
- NIBP Monitored: Yes
- ASA Classification: III
- Procedure: RFA right L4-S1
- Pre-Op Diagnosis: spondylosis
- Surgical Site Marked by Surgeon with C-ARM: Yes
- Surgical Area Prep: Chloraprep
- Body Position: Prone
- Type and dosage of sedative per CRNA: Propofol (50mg), Fentanyl (100mcg)
- IV Fluids Total: 200 cc

RFA Location #1
- Time: 9:29 AM
- Level where insulated needles were brought down to the medial or superior aspects of the transverse process: Right, L4, L5, S1
- Impedance Reading: 325 ohms
- Sensory response occurred at: 0 hz
  Note: patient sedated
- and: 0 volts
- Absence of motor response occurred at: 2 hz
- and: 2 volts
- After successful stimulation testing, radiofrequency neural ablation was carried out at: 80 deg C
- for: 90 sec

MD Note
- The risks and benefits of the procedure were discussed with the patient, and pt signed a consent form for the procedure.: Yes
- Percentage of pain relief that the patient experienced following MBB's #1: 60 %
- Days of pain relief following MBB's #1: 2
- Percentage of pain relief that the patient experienced following MBB's #2: 50 %
- Days of pain relief following MBB's #2: 2
- Based upon the temporary improvement noted by the patient, but also because of the return of pain following dissipation of local anesthetic effect, the decision was made to proceed with radiofrequency ablation: The patient tolerated the procedure well and was brought to the recovery area in stable condition.
- Does the patient have a Pacemaker and/or Defibrillator?: No
- The patient was placed in the prone position and the site to be injected was cleansed with: Betadine
- The area to be injected was prepped and draped in a sterile fashion: Yes
- Local anesthetic of Lidocaine 1% was infiltrated into the skin and subcutaneous tissue: in milliliters: 2
- Levels where insulated needles were brought down to the medial and superior aspects of the transverse process: L4/L5, L5/S1, Right
- Correct needle position was verified by using AP, oblique, and lateral fluoroscopic images: Yes
- With the needle at the cephalad margins of the transverse processes, stimulation was carried out for sensory testing. Sensory paresthesias were perceived in the lower back: N/A
- With the needle at the cephalad margins of the transverse processes, stimulation was carried out for motor testing. Absence of motor response was perceived in the upper back: N/A
- Upper extremity responses: No sensory or motor responses were perceived in the lower extremity.
- With the needle at the cephalad margins of the transverse processes, stimulation was carried out for sensory testing. Sensory paresthesias were perceived in the lower back: N/A
- With the needle at the cephalad margins of the transverse processes, stimulation was carried out for motor testing. Absence of motor response was perceived in the lower back: Yes
- Lower extremity responses: No sensory or motor responses were perceived in the lower extremity.
- The medication aliquot was evenly distributed among the areas of injection.: (De los Reyes) DepoMedrol 80mg, 1ml; Marcaine 0.5%, 9ml
- Complications: There were no apparent complications.
- The patient tolerated the procedure and was brought to the recovery area in stable condition.: Yes

- Time In: 9:40 AM
- Nurse: Beki Cay Bolton, RN
- Alert & Oriented: Yes
- Skin warm and dry: Yes
- Color pink: Yes
- Airway patent and ventilating deep and regular: Yes
- Moves all extremities x 4: Yes
- Denies weakness or numbness lower extremities: Yes
- Able to ambulate well: Yes
- Discharge instructions (oral and written) given to patient: Yes
- Patient verbalized understanding of discharge instructions: Yes
- Bandaid dry and intact: Yes
- Heplock discontinued: Yes
- Heplock site clear with no active bleeding: Yes
- Any Pain: No
- Medications: No
- Nurses Notes/Comments: bp:120/72
  p:54
  02sat:96%RA
  rr:16

Into Recovery
  - Activity: Able to move volentarily or on command 4 extremities
  - Respirations: Able to deep breathe and cough freely 2
  - Circulation: BP +/- 20% preanesthesia level 2
  - Oxygen Saturation: 92-100% 2
  - Total Score: 10

Post Recovery
  - Activity: Able to move volentarily or on command 4 extremities
  - Respirations: Able to deep breathe and cough freely 2
  - Circulation: BP +/- 20% preanesthesia level 2
  - Oxygen Saturation: 92-100% 2
  - Total Score: 10

**DOC CUR MEDS BY PROV (G8427)** Performed: 09/08/2015 (Ordered)

**FLUOROGUIDE FOR SPINE INJECT (77003)** Performed: 09/08/2015 (Ordered)

**PAIN ASSESSMENT DOCUMENTED AS POSITIVE UTILIZING A STANDARDIZED TOOL AND A FOLLOW-UP PLAN IS DOCUMENTED (G8730)** Performed: 09/08/2015 (Ordered)

**MONITORING DEVICE (A9279)** Performed: 09/08/2015 (Ordered)

**GLOVES, STERILE, PER PAIR (Special Coverage Instructions Apply) (A4930)** Performed: 09/08/2015 (Ordered)

**ELECTRODES, (E.G., APNEA MONITOR), PER PAIR (A4556)** Performed: 09/08/2015 (Ordered)

**NEEDLES ONLY, STERILE, ANY SIZE, EACH (Not Valid for Medicare) (A4215)** Performed: 09/08/2015 (Ordered)

**ANESTHESIA FOR PROCEDURE (01999)** Performed: 09/08/2015 (Ordered)

**SYRINGE WITH NEEDLE, STERILE 5CC OR GREATER, EACH (Not Valid for Medicare) (A4209)** Performed: 09/08/2015 (Ordered)

**SURGICAL TRAYS (Special Coverage Instructions Apply. See MCM: 15030) (A4550)** Performed: 09/08/2015 (Ordered)

**Phillip Tyree**
7/28/2015 11:10 AM
Location: Interventional Pain Specialists
Patient #: 130070
DOB:
Undefined / Language: English / Race: White
Male

History of Present Illness (Taylor Thomas; 7/28/2015 11:29 AM)

The patient is a 63 year old male who presents with back pain. Note for "Back pain": Mr Tyree is here s/p LMBB #1 . Patient reports 50-60% sustained relief. Pain is rated 2/10 in lower back radiating down b/l hips. LMBB b/l L4-S1 #2 today.

Problem List/Past Medical (Taylor Thomas; 7/28/2015 11:13 AM)
**Heart Disease**
**HTN**
**Depression**
**Sleep Apnea**
**Arthritis**

Family History (Taylor Thomas; 7/28/2015 11:13 AM)
**HTN**. Father.
**Hepatitis**. Sister.
**Myocardial Infarction**. Father.
**Heart Disease**. Father, Maternal Uncle.
**Cancer**. Father, Sister.

Social History (Taylor Thomas; 7/28/2015 11:13 AM)
**Tobacco use**. Never smoker.
**Alcohol use**. Moderate alcohol use.
**No drug use**

Allergies (Taylor Thomas; 7/28/2015 11:13 AM)
**Penicillins**

Medication History (Taylor Thomas; 7/28/2015 11:13 AM)
CeleBREX (200MG Capsule, 1 capsule Oral two times daily) Active.
Atorvastatin Calcium (40MG Tablet, 1 tab Oral daily) Active.
Isosorbide Mononitrate (60MG Tablet ER, Oral) Active.
Isosorbide Mononitrate ER (60MG Tablet ER 24HR, 1 tab Oral daily) Active.
Losartan Potassium (100MG Tablet, 1 tab Oral bid) Active.
Metoprolol Succinate (50MG Tablet ER, 1 1/2 tab Oral bid) Active.
Nuvigil (250MG Tablet, 1 tab Oral daily) Active.
Medications Reconciled.

Diagnostic Studies History (Taylor Thomas; 7/28/2015 11:13 AM)

**MRI**. 07/06/2012 IMPRESSIONS: L4-5: Bilateral Facet Hypertrophy left more so than right. There is a small osteophyte projecting into the thecal sac from the facet joint which significant narrows the left lateral recess. There is probable compression of the descending L5 nerve root. L5-S1: Bilateral Facet Hypertrophy. There is a mild broad based disc osteophyte complex with annular tear. The disc is eccentric to the left contributing to moderate bilateral neuroporaminal narrowing more so on the left than right. There is also narrowing of the left lateral recess without evidence of compression of the descending S1 nerve root.

Reviewed by pain physicians.
**Magnetic Resonance Imaging of Lumbar Spine**. 05/24/2013 IMPRESSION: No interval change.

Reviewed by pain physicians.

Past Surgical History (Taylor Thomas; 7/28/2015 11:13 AM)
**Low Back Surgery**
**Colonoscopy**
**Hernia Surgries**

Other Problems (Taylor Thomas; 7/28/2015 11:13 AM)
**Systemic Arthritis**
**Failed Back Syndrome, Lumb(722.83)**
**Iatrogenic Fungal meningitis**
**Lumbaosacral spondylosis/arthropathy/OA/lumbosacral facet arthropathy (721.3)**
**Anesthesia (782.0 | R20.8)**

Vitals (Taylor Thomas; 7/28/2015 11:30 AM)

**Weight:** 254 lb **Height:** 71.3 cv **Body Surface Area:** 2.4 m² **Body Mass Index:** 35.43 kg/m²
**Pain Level:** 2/10
**Temp.:** 96.9° F **Pulse:** 57 (Regular) **Resp.:** 18 (Unlabored) **P.OX:** 97% (Room air)
**BP:** 111/75   (Sitting, Left Arm, Standard)
*Patient here for LMBB #2. Patient allergic to pcn, dentures secured, no PM, not diabetic, no blood thinners, driver present, NPO after midnight.*

Physical Exam (Eduardo De Los Reyes, MD; 7/28/2015 12:00 PM)
The physical exam findings are as follows:

**General**
**Mental Status** - Alert. **General Appearance** - Well groomed. Not Sickly. **Orientation** – Oriented to time, Oriented to place and Oriented to person. **Build & Nutrition** - Well nourished and Well developed. **Posture** - Normal posture. **Gait** - Normal.

**Neurologic**
**Sensory:**
**Light Touch: Intact** - Globally.
**Vibration: Intact** - Globally.
**Proprioception** - **Bilateral** - Normal.
**Motor:**
**Bulk and Contour:** - Normal.
**Tone:** - Normal.
**Strength: 5/5 normal muscle strength** - Left Lower Extremity, Right Lower Extremity and Back extensors.
**Reflexes (Dermatomes): 2/2 Normal** - Left Achilles (L5-S2), Left Knee (L2-4), Right Achilles (L5-S2) and Right Knee (L2-4).

**Musculoskeletal**
**Spine/Ribs/Pelvis**
**Periarticular Facet Joint Tenderness** - **Bilateral** - L4, L5 and S1. **Functional Testing** - No Fabere's Test - Right or Fabere's Test - Left. **Lumbar Flexion** - 60 deg. **Lumbar Extension** - 25 deg. **Lumbar Right Rotation** - 30 deg. **Lumbar Left Rotation** - 30 deg. **Lumbar Right Lateral Flexion** - 25 deg. **Lumbar Left Lateral Flexion** - 25 deg. **Passive Straight Leg Raising Right** - 75 deg. **Passive Straight Leg Raising Left** - 75 deg.
**Lumbosacral Spine:**
**Inspection and Palpation: Tenderness & Tightness** - **Bilateral** - paralumbar muscle tenderness and paralumbar muscle tightness. No paralumbar muscle spasticity or paralumbar muscle fullness.

Assessment & Plan (Eduardo De Los Reyes, MD; 7/28/2015 12:00 PM)

Anesthesia (782.0 | R20.8)
Current Plans
  I  O2 Capnograph Tubing
  I  IV Anesthesia set
  I  Iv access-
  I  Anesthesia – IV sedation
  I  ELECTRODES, (E.G., APNEA MONITOR), PER PAIR (A4556)
  I  ANESTHESIA FOR PROCEDURE (01999)

Lumbaosacral spondylosis/arthropathy/OA/lumbosacral facet arthropathy (721.3)
Current Plans
  I  INJ PARAVERT F JNT L/S 1 LEV (64493)
  I  INJ PARAVERT F JNT L/S 2 LEV (64494)
  I  INJ PARAVERT F JNT L/S 3 LEV (64495)
  I  FLUOROGUIDE FOR SPINE INJECT (77003)
  I  MONITORING FEATURE/DEVICE, STAND-ALONE OR INTEGRATED, ANY TYPE, INCLUDES ALL ACCESSORIES, COMPONENTS AND
     ELECTRONICS, NOT OTHERWISE CLASSIFIED (Not Valid for Medicare) (A9279)
  I  GLOVES, STERILE, PER PAIR (Special Coverage Instructions Apply) (A4930)
  I  SYRINGE WITH NEEDLE, STERILE 5CC OR GREATER, EACH (Not Valid for Medicare) (A4209)
  I  NEEDLES ONLY, STERILE, ANY SIZE, EACH (Not Valid for Medicare) (A4215)
  I  SURGICAL TRAYS (Special Coverage Instructions Apply. See MCM: 15030) (A4550)
  I  1006F-8P: Osteoarthritis symptoms and functional status not assessed, reason not otherwise specified.
  I  DOC CUR MEDS BY PROV (G8427)
  I  PAIN ASSESSMENT DOCUMENTED AS POSITIVE UTILIZING A STANDARDIZED TOOL AND A FOLLOW-UP PLAN IS DOCUMENTED (G8730)
  I  1007F: Use of anti-inflammatory or analgesic over-the-counter (OTC) medications for symptom relief assessed
  I  RFA recommended in 6 weeks

Flow Sheets (Taylor Thomas; 7/28/2015 11:28 AM)
**IPS Procedure Flow Sheet**
4
  **Date:** 7/28/15 **MD:** EDR **Diagnosis:** Spondylosis **Procedure:** LMBB b/l L4-S1 #2 **% Improvement Since Last Procedure:** 50-60% sustained **Follow-up:** RFA

Signed electronically by Eduardo De Los Reyes, MD (7/28/2015 1:27 PM)

## Procedures

**INJ PARAVERT F JNT L/S 1 LEV (64493)** Performed: 07/28/2015 (Final, Reviewed)

---

- Time In:  12:00 PM
- Procedure date:  7/28/2015 12:00 PM
- Consents Signed & Witnessed:  Yes
- NPO after Midnight:  Yes
- Allergies Verified:  Yes
- IV Site:  Prepped with Alcohol, NS 500ml IV started for pt who will be sedated, in Right Hand
- Procedure series #:  one
- *Please reference any prior date of service for this client*:  Yes

Procedure Documentation
- Time In:  12:04 PM
- Surgeon:  Eduardo De Los Reyes, MD
- CRNA:  Stacie Weickel, CRNA
- Procedure Nurse:  Derek Duvall, RN
- ASA Classification:  II
- Procedure:  b/l L4-S1 MBB's **#2**
- Pre-Op Diagnosis:  lumb spondylosis
- Time Out Completed:  Right Patient, Right Procedure, Right Side
- EKG Monitored:  Yes
- NIBP Monitored:  Yes
- Surgical site marked by Physician by using C-ARM:  Yes
- Surgical Area Prep:  Chloraprep
- Body Position:  Prone
- IV Fluids Total:  200 cc
- Type and dosage of sedative per CRNA:  Propofol (180mg)

Monitoring Documentation
- Vital Sign Documentatioin #1:  Consciousness Level B- arouses to stimuli (per anes record)

MD Note
- The risks and benefits of the procedure were discussed with the patient:  Yes
- Informed consent was given:  Yes
- Position of patient for procedure:  Prone
- The site to be injected was cleansed with:  Betadine
- The area to be injected was prepped and draped in a sterile fashion:  Yes
- Local anesthetic was infiltrated into the skin and subcutaneous tissue using:  Lidocaine 1%
- Facets which were identified under fluoroscopy:  L4/L5, L5/S1, Bilaterally
- The facet joints were accessed using a:  22 gauge, 3 1/2 inch
- Aspiration for blood or CSF:  Negative for blood or CSF
- Adequate arthrograms were obtained:  No
- Medication aliquot: 1-3ml instilled at each level:  10ml Solution Bupivicaine 0.5%/9ml and Depo-Medrol 80mg/1ml
- The patient tolerated the procedure and was brought to the recovery area in stable condition.:  Yes
- A Physician Procedure Note is warranted for an additional procedure.:  No

Post Procedure Recovery Documentation
- Time In:  12:15 PM
- Alert & Oriented:  Yes
- Skin warm and dry:  Yes
- Color pink:  Yes
- Airway patent and ventilating deep and regular:  Yes
- Moves all extremities x 4:  Yes
- Denies weakness or numbness in extremities x 4:  Yes
- Able to ambulate well:  Yes
- Discharge instructions (oral and written) given to patient:  Yes
- Patient verbalized understanding of discharge instructions:  Yes
- Bandaid dry and intact:  Yes
- IV discontinued intact:  Yes
- IV site clear with no active bleeding:  Yes
- Any Pain:  No
- Medications:  No
- Nurses Notes/Comments:  bp:113/91
  p:60
  02sat:97%RA
  rr:16
- Nurse:  Beki Cay Bolton, RN
- Discharge Time:  12:46 PM
- After any signs or symptoms of anaphylactic reaction were excluded, pt was treated for post Fentanyl injection itching with Tavist 2.68mg x 1 tab po.:  No

Into Recovery
- Activity:  Able to move volentarily or on command 4 extremities
- Respirations:  Able to deep breathe and cough freely 2
- Circulation:  BP +/- 20% preanesthesia level 2
- Oxygen Saturation:  92-100% 2
- Total Score:  10

Post Recovery
- Activity:  Able to move volentarily or on command 4 extremities
- Respirations:  Able to deep breathe and cough freely 2
- Circulation:  BP +/- 20% preanesthesia level 2
- Oxygen Saturation:  92-100% 2
- Total Score:  10

**INJ PARAVERT F JNT L/S 2 LEV (64494)** Performed: 07/28/2015 (Ordered)

**ELECTRODES, (E.G., APNEA MONITOR), PER PAIR (A4556)** Performed: 07/28/2015 (Ordered)

**MONITORING FEATURE/DEVICE, STAND-ALONE OR INTEGRATED, ANY TYPE, INCLUDES ALL ACCESSORIES, COMPONENTS AND ELECTRONICS, NOT OTHERWISE CLASSIFIED (Not Valid for Medicare) (A9279)** Performed: 07/28/2015 (Ordered)

**ANESTHESIA FOR PROCEDURE (01999)** Performed: 07/28/2015 (Ordered)

**GLOVES, STERILE, PER PAIR (Special Coverage Instructions Apply) (A4930)** Performed: 07/28/2015 (Ordered)

**SYRINGE WITH NEEDLE, STERILE 5CC OR GREATER, EACH (Not Valid for Medicare) (A4209)** Performed: 07/28/2015 (Ordered)

**NEEDLES ONLY, STERILE, ANY SIZE, EACH (Not Valid for Medicare) (A4215)** Performed: 07/28/2015 (Ordered)

**SURGICAL TRAYS (Special Coverage Instructions Apply. See MCM: 15030) (A4550)** Performed: 07/28/2015 (Ordered)

**DOC CUR MEDS BY PROV (G8427)** Performed: 07/28/2015 (Ordered)

**PAIN ASSESSMENT DOCUMENTED AS POSITIVE UTILIZING A STANDARDIZED TOOL AND A FOLLOW-UP PLAN IS DOCUMENTED (G8730)** Performed: 07/28/2015 (Ordered)

**Phillip Tyree**
6/30/2015 10:27 AM
Location: Interventional Pain Specialists
Patient #: 130070
DOB:
Undefined / Language: English / Race: White
Male

History of Present Illness (Taylor Thomas; 6/30/2015 10:52 AM)
    The patient is a 63 year old male who presents with back pain. Note for "Back pain": Mr Tyree is here for LMBBs L4-S1 b/l #1. Patient reports pain is 5/10 in lower back radiating to bilateral hips and down the front of b/l legs causing numbness.

Problem List/Past Medical (Taylor Thomas; 6/30/2015 10:31 AM)
**Sleep Apnea**
**Arthritis**
**Heart Disease**
**HTN**
**Depression**

Family History (Taylor Thomas; 6/30/2015 10:29 AM)
**Cancer**. Father, Sister.
**HTN**. Father.
**Hepatitis**. Sister.
**Myocardial Infarction**. Father.
**Heart Disease**. Father, Maternal Uncle.

Social History (Taylor Thomas; 6/30/2015 10:29 AM)
**No drug use**
**Tobacco use**. Never smoker.
**Alcohol use**. Moderate alcohol use.

Allergies (Taylor Thomas; 6/30/2015 10:29 AM)
**Penicillins**

Medication History (Taylor Thomas; 6/30/2015 10:29 AM)
CeleBREX (200MG Capsule, 1 capsule Oral two times daily) Active.
Atorvastatin Calcium (40MG Tablet, 1 tab Oral daily) Active.
Isosorbide Mononitrate (60MG Tablet ER, Oral) Active.
Isosorbide Mononitrate ER (60MG Tablet ER 24HR, 1 tab Oral daily) Active.
Losartan Potassium (100MG Tablet, 1 tab Oral bid) Active.
Metoprolol Succinate (50MG Tablet ER, 1 1/2 tab Oral bid) Active.
Nuvigil (250MG Tablet, 1 tab Oral daily) Active.
Medications Reconciled.

Diagnostic Studies History (Taylor Thomas; 6/30/2015 10:29 AM)
**MRI**. 07/06/2012 IMPRESSIONS: L4-5: Bilateral Facet Hypertrophy left more so than right. There is a small osteophyte projecting into the thecal sac from the facet joint which significant narrows the left lateral recess. There is probable compression of the descending L5 nerve root. L5-S1: Bilateral Facet Hypertrophy. There is a mild broad based disc osteophyte complex with annular tear. The disc is eccentric to the left contributing to moderate bilateral neuroporaminal narrowing more so on the left than right. There is also narrowing of the left lateral recess without evidence of compression of the descending S1 nerve root.

Reviewed by pain physicians.
**Magnetic Resonance Imaging of Lumbar Spine**. 05/24/2013 IMPRESSION: No interval change.

Reviewed by pain physicians.

Past Surgical History (Taylor Thomas; 6/30/2015 10:29 AM)
**Low Back Surgery**
**Colonoscopy**
**Hernia Surgries**

Other Problems (Taylor Thomas; 6/30/2015 10:31 AM)
**Failed Back Syndrome, Lumb(722.83)**
**Lumbaosacral spondylosis/arthropathy/OA/lumbosacral facet arthropathy (721.3)**
**Systemic Arthritis**

Vitals (Taylor Thomas; 6/30/2015 10:52 AM)

**Weight:** 254 lb **Weight:** 114 oz **Height:** 5'8" **Body Surface Area:** 2.4 m² **Body Mass Index:** 35.43 kg/m²
**Pain Level:** 5/10
**Temp.:** 97.5° F **Pulse:** 60 (Regular) **Resp.:** 18 (Unlabored) **P.OX:** 97% (Room air)
**BP:** 102/70 (Sitting, Left Arm, Standard)
*Pt allergic to pcn. Dentures removed, no PM, NPO after midnight, not diabetic, no blood thinners, driver present.*

Physical Exam (Eduardo De Los Reyes, MD; 6/30/2015 11:52 AM)
The physical exam findings are as follows:

**General**
**Mental Status** - Alert. **General Appearance** - Well groomed. Not Sickly. **Orientation** - Oriented to time, Oriented to place and Oriented to person. **Build & Nutrition** - Well nourished and Well developed. **Posture** - Normal posture. **Gait** - Normal.

**Neurologic**
**Sensory:**
**Light Touch: Intact** - Globally.
**Vibration: Intact** - Globally.
**Proprioception** - **Bilateral** - Normal.
**Motor:**
**Bulk and Contour:** - Normal.
**Tone:** - Normal.
**Strength: 5/5 normal muscle strength** - Left Lower Extremity, Right Lower Extremity and Back extensors.
**Reflexes (Dermatomes): 2/2 Normal** - Left Achilles (L5-S2), Left Knee (L2-4), Right Achilles (L5-S2) and Right Knee (L2-4).

**Musculoskeletal**
**Spine/Ribs/Pelvis**
**Periarticular Facet Joint Tenderness** - **Bilateral** - L4, L5 and S1. **Functional Testing** - No Fabere's Test - Right or Fabere's Test - Left. **Lumbar Flexion** - 60 deg. **Lumbar Extension** - 25 deg. **Lumbar Right Rotation** - 30 deg. **Lumbar Left Rotation** - 30 deg. **Lumbar Right Lateral Flexion** - 25 deg. **Lumbar Left Lateral Flexion** - 25 deg. **Passive Straight Leg Raising Right** - 75 deg. **Passive Straight Leg Raising Left** - 75 deg.
**Lumbosacral Spine:**
**Inspection and Palpation: Tenderness & Tightness** - **Bilateral** - paralumbar muscle tenderness and paralumbar muscle tightness. No paralumbar muscle spasticity or paralumbar muscle fullness.

Assessment & Plan (Eduardo De Los Reyes, MD; 6/30/2015 11:53 AM)

Anesthesia (782.0)
Current Plans
  l  O2 Capnograph Tubing
  l  IV Anesthesia set
  l  Iv access-
  l  Anesthesia - IV sedation
  l  ELECTRODES, (E.G., APNEA MONITOR), PER PAIR (A4556)
  l  ANESTHESIA FOR PROCEDURE (01999)

Lumbaosacral spondylosis/arthropathy/OA/lumbosacral facet arthropathy (721.3)
Current Plans
  l  INJ PARAVERT F JNT L/S 1 LEV (64493)
  l  INJ PARAVERT F JNT L/S 2 LEV (64494)
  l  INJ PARAVERT F JNT L/S 3 LEV (64495)
  l  FLUOROGUIDE FOR SPINE INJECT (77003)
  l  MONITORING FEATURE/DEVICE, STAND-ALONE OR INTEGRATED, ANY TYPE, INCLUDES ALL ACCESSORIES, COMPONENTS AND ELECTRONICS, NOT OTHERWISE CLASSIFIED (Not Valid for Medicare) (A9279)
  l  GLOVES, STERILE, PER PAIR (Special Coverage Instructions Apply) (A4930)
  l  SYRINGE WITH NEEDLE, STERILE 5CC OR GREATER, EACH (Not Valid for Medicare) (A4209)
  l  NEEDLES ONLY, STERILE, ANY SIZE, EACH (Not Valid for Medicare) (A4215)
  l  SURGICAL TRAYS (Special Coverage Instructions Apply. See MCM: 15030) (A4550)
  l  1006F-8P: Osteoarthritis symptoms and functional status not assessed, reason not otherwise specified.
  l  DOC CUR MEDS BY PROV (G8427)
  l  PAIN ASSESSMENT DOCUMENTED AS POSITIVE UTILIZING A STANDARDIZED TOOL AND A FOLLOW-UP PLAN IS DOCUMENTED (G8730)
  l  1007F: Use of anti-inflammatory or analgesic over-the-counter (OTC) medications for symptom relief assessed
  l

Flow Sheets (Taylor Thomas; 6/30/2015 10:28 AM)
**IPS Procedure Flow Sheet**
3
  **Date:** 6/30/15 **MD:** EDR **Diagnosis:** Spondylosis **Procedure:** LMBBs L4-S1 b/l #1 **Follow-up:** LMBBs #2

Signed electronically by Eduardo De Los Reyes, MD (6/30/2015 3:41 PM)

# Procedures

**INJ PARAVERT F JNT L/S 1 LEV (64493)** Performed: 06/30/2015 (Final, Reviewed)

Pre Procedure Assessment
- Time In: 11:30 AM
- Procedure date: 6/30/2015 11:30 AM
- Consents Signed & Witnessed: Yes
- NPO after Midnight: Yes
- Allergies Verified: Yes
- IV Site: Prepped with Alcohol, NS 500ml IV started for pt who will be sedated, in Right Hand
- Procedure series #: one
- *Please reference any prior date of service for this client*: Yes

Procedure Documentation
- Time In: 11:30 AM
- Surgeon: Eduardo De Los Reyes, MD
- CRNA: Stacie Weickel, CRNA
- Procedure Nurse: Monica Chaney
- Procedure: LMBB L4-S1 b/l #1
- Pre-Op Diagnosis: spondylosis
- Time Out Completed: Right Patient, Right Procedure, Right Side
- EKG Monitored: Yes
- NIBP Monitored: Yes
- Surgical site marked by Physician by using C-ARM: Yes
- Surgical Area Prep: Chloraprep
- Body Position: Prone
- IV Fluids Total: 200 cc
- Type and dosage of sedative per CRNA: Propofol (120mg)

MD Note
- The risks and benefits of the procedure were discussed with the patient: Yes
- Informed consent was given: Yes
- Position of patient for procedure: Prone
- The site to be injected was cleansed with: Betadine
- The area to be injected was prepped and draped in a sterile fashion: Yes
- Local anesthetic was infiltrated into the skin and subcutaneous tissue using: Lidocaine 1%
- Facets which were identified under fluoroscopy: L4/L5, L5/S1, Bilaterally
- The facet joints were accessed using a: 22 gauge, 3 1/2 inch
- Aspiration for blood or CSF: Negative for blood or CSF
- Adequate arthrograms were obtained: No
- Medication aliquot: 1-3ml instilled at each level: 10ml Solution Bupivicaine 0.5%/9ml and Depo-Medrol 80mg/1ml
- The patient tolerated the procedure and was brought to the recovery area in stable condition.: Yes
- A Physician Procedure Note is warranted for an additional procedure.: No

Post Procedure Recovery Documentation
- Time In: 11:55 AM
- Alert & Oriented: Yes
- Skin warm and dry: Yes
- Color pink: Yes
- Airway patent and ventilating deep and regular: Yes
- Moves all extremities x 4: Yes
- Denies weakness or numbness in extremities x 4: Yes
- Able to ambulate well: Yes
- Discharge instructions (oral and written) given to patient: Yes
- Patient verbalized understanding of discharge instructions: Yes
- Bandaid dry and intact: Yes
- IV discontinued intact: Yes
- IV site clear with no active bleeding: Yes
- Any Pain: No
- Medications: No
- Nurses Notes/Comments: B/P:99/67
  HR:59
  RR:15
  SPO2:95%
- Nurse: Belinda Kinser
- Discharge Time: 12:30 PM
- After any signs or symptoms of anaphylactic reaction were excluded, pt was treated for post Fentanyl injection itching with Tavist 2.68mg x 1 tab po.: No

Into Recovery
- Activity: Able to move volentarily or on command 4 extremities
- Respirations: Able to deep breathe and cough freely 2
- Circulation: BP +/- 20% preanesthesia level 2
- Oxygen Saturation: 92-100% 2
- Total Score: 10

Post Recovery
- Activity: Able to move volentarily or on command 4 extremities
- Respirations: Able to deep breathe and cough freely 2
- Circulation: BP +/- 20% preanesthesia level 2
- Oxygen Saturation: 92-100% 2
- Total Score: 10

**INJ PARAVERT F JNT L/S 2 LEV (64494)** Performed: 06/30/2015 (Ordered)

**INJ PARAVERT F JNT L/S 3 LEV (64495)** Performed: 06/30/2015 (Ordered)

**FLUOROGUIDE FOR SPINE INJECT (77003)** Performed: 06/30/2015 (Ordered)

**ELECTRODES, (E.G., APNEA MONITOR), PER PAIR (A4556)** Performed: 06/30/2015 (Ordered)

Case 1:13-cv-024?????? Document 27-4 Filed 02/03/16 Page 256 of 434

**MONITORING FEATURE/DEVICE, STAND-ALONE OR INTEGRATED, ANY TYPE, INCLUDES ALL ACCESSORIES, COMPONENTS AND ELECTRONICS, NOT OTHERWISE CLASSIFIED (Not Valid for Medicare) (A9279)** Performed: 06/30/2015 (Ordered)

**ANESTHESIA FOR PROCEDURE (01999)** Performed: 06/30/2015 (Ordered)

**GLOVES, STERILE, PER PAIR (Special Coverage Instructions Apply) (A4930)** Performed: 06/30/2015 (Ordered)

**SYRINGE WITH NEEDLE, STERILE 5CC OR GREATER, EACH (Not Valid for Medicare) (A4209)** Performed: 06/30/2015 (Ordered)

**NEEDLES ONLY, STERILE, ANY SIZE, EACH (Not Valid for Medicare) (A4215)** Performed: 06/30/2015 (Ordered)

**SURGICAL TRAYS (Special Coverage Instructions Apply. See MCM: 15030) (A4550)** Performed: 06/30/2015 (Ordered)

**DOC CUR MEDS BY PROV (G8427)** Performed: 06/30/2015 (Ordered)

**PAIN ASSESSMENT DOCUMENTED AS POSITIVE UTILIZING A STANDARDIZED TOOL AND A FOLLOW-UP PLAN IS DOCUMENTED (G8730)** Performed: 06/30/2015 (Ordered)

**Phillip Tyree**
6/1/2015 9:35 AM
Location: Interventional Pain Specialists
Patient #: 130070
DOB:
Undefined / Language: English / Race: White
Male

The patient is a 63 year old Male.

Physical Exam (Eduardo De Los Reyes, MD; 6/1/2015 10:28 AM)
The physical exam findings are as follows:
Note: Tenderness and mild swelling noted mostly in most joints as knees , shoulders, elbows and fingers and wrist

### General
**Mental Status** - Alert. **General Appearance** - Cooperative and Well groomed. Not in acute distress or Sickly. **Orientation** - Oriented to time, Oriented to place and Oriented to person. **Build & Nutrition** - Well nourished and Well developed. **Posture** - Normal posture. **Gait** - Normal. **Hydration** - Well hydrated.

### Eye
**Pupil - Bilateral** - Accommodating, Direct reaction to light normal and Equal.

### ENMT
#### Global Assessment
Upon examination of the ears, nose, mouth and throat - normal pinnae with no scars, masses or lesions, otoscopic exam reveals normal external auditory canals, with tympanic membranes clear and mobile, on external inspection of the nose, there are no scars, lesions or bony deformities, internal examination of the nose reveals midline septum and pink nasal mucosa with normal turbinates, examination of the oral cavity reveals normal lips, teeth, gums and oral mucosa and hard and soft palates, tongue, tonsils and posterior pharynx are moist and symmetric without lesions.

### Chest and Lung Exam
**Inspection: Shape** - Symmetric. **Movements** - Symmetrical. **Accessory muscles** - No use of accessory muscles in breathing.
**Percussion:**
**Quality and Intensity:** - Percussion normal.
**Palpation:** - Palpation normal.
**Auscultation:**
**Breath sounds:** - Normal.
**Adventitious sounds:** - No Adventitious sounds.

### Cardiovascular
**Inspection: Carotid artery - Bilateral** - Inspection Normal.
**Palpation/Percussion:** Examination by palpation and percussion reveals - No Thrills.
**Auscultation: Rhythm** - Regular. **Heart Sounds** - Normal heart sounds, S1 WNL and S2 WNL.
**Murmurs & Other Heart Sounds:** Auscultation of the heart reveals - No Murmurs.

### Abdomen
**Inspection:** Inspection of the abdomen reveals - No Hernias.
**Palpation/Percussion:** Palpation and Percussion of the abdomen reveal - Non Tender and No Palpable abdominal masses.
**Liver:** - Normal.
**Spleen:** - Normal.

### Peripheral Vascular
**Lower Extremity: Inspection - Bilateral** - No Varicose veins.
**Palpation: Edema - Bilateral** - No edema.

### Neurologic
**Cranial Nerves:** - Normal Bilaterally.
**Sensory:**
**Light Touch: Intact** - Globally.
**Vibration: Intact** - Globally.
**Proprioception - Bilateral** - Normal.
**Motor:**
**Bulk and Contour:** - Normal.
**Tone:** - Normal.
**Strength: 5/5 normal muscle strength** - All Muscles, Left Lower Extremity, Right Lower Extremity and Back extensors.
**Reflexes (Dermatomes): 2/2 Normal** - All, Left Achilles (L5-S2), Left Knee (L2-4), Right Achilles (L5-S2) and Right Knee (L2-4).

### Musculoskeletal
#### Global Assessment
**Right Upper Extremity** - normal strength and tone. **Left Upper Extremity** - normal strength and tone. **Right Lower Extremity** - normal strength and tone. **Left Lower Extremity** - normal strength and tone.
#### Spine/Ribs/Pelvis
**Periarticular Facet Joint Tenderness - Bilateral** - L5 and S1. **Functional Testing** - No Fabere's Test - Right or Fabere's Test - Left. **Lumbar Flexion** - 60 deg. **Lumbar Extension** - 25 deg. **Lumbar Right Rotation** - 30 deg. **Lumbar Left Rotation** - 30 deg. **Lumbar Right Lateral Flexion** - 25 deg. **Lumbar Left Lateral Flexion** - 25 deg. **Passive Straight Leg Raising Right** - 75 deg. **Passive Straight Leg Raising Left** - 75 deg.
**Lumbosacral Spine:**

Assessment & Plan (Eduardo De Los Reyes, MD; 6/1/2015 10:29 AM)
Lumbaosacral spondylosis/arthropathy/OA/lumbosacral facet arthropathy (721.3)
Current Plans
  I  Facet Block #1

Failed Back Syndrome, Lumb (722.83)

Systemic Arthritis

Iatrogenic Fungal meningitis


Flow Sheets (Eduardo De Los Reyes, MD; 6/1/2015 10:23 AM)
**IPS Procedure Flow Sheet**
1
  **Procedure:**  Initial Consult

  Signed electronically by Eduardo De Los Reyes, MD (6/2/2015 12:57 PM)

# History & Physical Report #1

**Phillip Tyree**
6/1/2015 8:22 AM
Location: Interventional Pain Specialists
Patient #: 130070
DOB: ████ 2
Underined / Language: English / Race: White
Male

History of Present Illness (Linda Cawthorn; 6/1/2015 10:26 AM)

    The patient is a 63 year old male who presents to the practice today for a transition into care. The patient is transitioning into care from another physician (Referred by Dr Diego Mastrouadi) .

Additional reason for visit:

Chronic lumbar back pain is described as the following:
    Note for "Chronic lumbar back pain": Mr. Phillip Tyree is a 63 year old gentlemen that is referred to us by Dr Mastrouadi for low back pain.
    Patient states his pain is across lower pain, and radiating down both legs lateral to the knees. He says he was diagnosed with Spinalmenygitis 2 1/2 years ago, and the medications taken for that seemed to make his arthritis worse. Mr Tyree describes the pain as cramping, tightness, pinching, and shooting. Patient also states that he has some numbness in legs. Mr. Tyree says that standing on concrete, black top and lifting makes the pain worse to the point of having nausea. Patient says taking a hot tub bath, or staying off feet seems to help the pain. Patient has had Physical therapy 8-10 sessions 3 years ago with TENNS Unit that didn't help with pain. Mr. Tyree states he is taking Celebrex for the pain and without it the pain is unbearable. Patient is not a Diabetic, he does not have a pacemaker or defribrillator.

Problem List/Past Medical (Linda Cawthorn; 6/1/2015 9:51 AM)
**Heart Disease**
**HTN**
**Sleep Apnea**
**Arthritis**
**Depression**

Family History (Linda Cawthorn; 6/1/2015 9:53 AM)
**Myocardial Infarction**. Father.
**Heart Disease**. Father, Maternal Uncle.
**HTN**. Father.
**Hepatitis**. Sister.
**Cancer**. Father, Sister.

Social History (Linda Cawthorn; 6/1/2015 9:54 AM)
**Tobacco use.** Never smoker.
**Alcohol use.** Moderate alcohol use.
**No drug use**

Allergies (Linda Cawthorn; 6/1/2015 9:55 AM)
**Penicillins**

Medication History (Linda Cawthorn; 6/1/2015 9:59 AM)
CeleBREX (200MG Capsule, 1 capsule Oral two times daily) Active.
Atorvastatin Calcium (40MG Tablet, 1 tab Oral daily) Active.
Isosorbide Mononitrate (60MG Tablet ER, Oral) Active.
Isosorbide Mononitrate ER (60MG Tablet ER 24HR, 1 tab Oral daily) Active.
Losartan Potassium (100MG Tablet, 1 tab Oral bid) Active.
Metoprolol Succinate (50MG Tablet ER, 1 1/2 tab Oral bid) Active.
Nuvigil (250MG Tablet, 1 tab Oral daily) Active.

Diagnostic Studies History (Linda Cawthorn; 6/1/2015 10:17 AM)
**Magnetic Resonance Imaging of Lumbar Spine**. 05/24/2013 IMPRESSION: No interval change.

Reviewed by pain physicians.
**MRI.** 07/06/2012 IMPRESSIONS: L4-5: Bilateral Facet Hypertrophy left more so than right. There is a small osteophyte projecting into the thecal sac from the facet joint which significant narrows the left lateral recess. There is probable compression of the descending L5 nerve root. L5-S1: Bilateral Facet Hypertrophy. There is a mild broad based disc osteophyte complex with annular tear. The disc is eccentric to the left contributing to moderate bilateral neuroporaminal narrowing more so on the left than right. There is also narrowing of the left lateral recess without evidence of compression of the descending S1 nerve root.

Reviewed by pain physicians.

Past Surgical History (Linda Cawthorn; 6/1/2015 10:04 AM)
**Low Back Surgery**
**Colonoscopy**
**Hernia Surgries**

Review of Systems (Linda Cawthorn; 6/1/2015 10:26 AM)
**General:** Present- Fair Risk: low potential/minimal risk factors.
**Cardiovascular:** Present- Hypertension. **Note:** Heart Disease
**Psychiatric:** Present- Depression and Insomnia.
**All other systems negative**

Vitals (Linda Cawthorn; 6/1/2015 10:26 AM)
6/1/2015 10:04 AM
**Weight:** 254 lb  **Height:** 71 in
**Body Surface Area:** 2.4 m²  **Body Mass Index:** 35.43 kg/m²
**Pain Level:** 6/10
**Temp.:** 97.9° F **Pulse:** 63 (Regular)  **Resp.:** 18 (Unlabored)  **P.OX:** 98% (Room air)
**BP:** 117/78    (Sitting, Left Arm, Standard)



Physical Exam (Eduardo De Los Reyes, MD; 6/1/2015 9:01 AM)
The physical exam findings are as follows:

**General**
**Mental Status** - Alert. **General Appearance** - Cooperative and Well groomed. Not in acute distress or Sickly. **Orientation** - Oriented to time, Oriented to place and Oriented to person. **Build & Nutrition** - Well nourished and Well developed. **Posture** - Normal posture. **Gait** - Normal. **Hydration** - Well hydrated.

**Eye**
**Pupil - Bilateral** - Accommodating, Direct reaction to light normal and Equal.

**ENMT**
**Global Assessment**
Upon examination of the ears, nose, mouth and throat - normal pinnae with no scars, masses or lesions, otoscopic exam reveals normal external auditory canals, with tympanic membranes clear and mobile, on external inspection of the nose, there are no scars, lesions or bony deformities, internal examination of the nose reveals midline septum and pink nasal mucosa with normal turbinates, examination of the oral cavity reveals normal lips, teeth, gums and oral mucosa and hard and soft palates, tongue, tonsils and posterior pharynx are moist and symmetric without lesions.

**Chest and Lung Exam**
**Inspection: Shape** - Symmetric. **Movements** - Symmetrical. **Accessory muscles** - No use of accessory muscles in breathing.
**Percussion:**
**Quality and Intensity:** - Percussion normal.
**Palpation:** - Palpation normal.
**Auscultation:**
**Breath sounds:** - Normal.
**Adventitious sounds:** - No Adventitious sounds.

**Cardiovascular**
**Inspection: Carotid artery - Bilateral** - Inspection Normal.
**Palpation/Percussion:** Examination by palpation and percussion reveals - No Thrills.
**Auscultation: Rhythm** - Regular. **Heart Sounds** - Normal heart sounds, S1 WNL and S2 WNL.
**Murmurs & Other Heart Sounds:** Auscultation of the heart reveals - No Murmurs.

**Abdomen**
**Inspection:** Inspection of the abdomen reveals - No Hernias.
**Palpation/Percussion:** Palpation and Percussion of the abdomen reveal - Non Tender and No Palpable abdominal masses.
**Liver:** - Normal.
**Spleen:** - Normal.

**Peripheral Vascular**
**Lower Extremity: Inspection - Bilateral** - No Varicose veins.
**Palpation: Edema - Bilateral** - No edema.

**Neurologic**
**Cranial Nerves:** - Normal Bilaterally.
**Sensory:**
**Light Touch: Intact** - Globally.
**Vibration: Intact** - Globally.
**Proprioception - Bilateral** - Normal.
**Motor:**
**Bulk and Contour:** - Normal.
**Tone:** - Normal.
**Strength: 5/5 normal muscle strength** - All Muscles, Left Lower Extremity, Right Lower Extremity and Back extensors.
**Reflexes (Dermatomes): 2/2 Normal** - All, Left Achilles (L5-S2), Left Knee (L2-4), Right Achilles (L5-S2) and Right Knee (L2-4).

**Musculoskeletal**
**Global Assessment**
**Right Upper Extremity** - normal strength and tone. **Left Upper Extremity** - normal strength and tone. **Right Lower Extremity** - normal strength and tone. **Left Lower Extremity** - normal strength and tone.
**Spine/Ribs/Pelvis**
**Periarticular Facet Joint Tenderness - Bilateral** - L4, L5 and S1. **Functional Testing** - No Fabere's Test - Right or Fabere's Test - Left. **Lumbar Flexion** - 60 deg. **Lumbar Extension** - 25 deg. **Lumbar Right Rotation** - 30 deg. **Lumbar Left Rotation** - 30 deg. **Lumbar Right Lateral Flexion** - 25 deg. **Lumbar Left Lateral Flexion** - 25 deg. **Passive Straight Leg Raising Right** - 75 deg. **Passive Straight Leg Raising Left** - 75 deg.
**Lumbosacral Spine:**
**Inspection and Palpation: Tenderness & Tightness - Bilateral** - paralumbar muscle tenderness and paralumbar muscle tightness. No paralumbar muscle spasticity or paralumbar muscle fullness.

Assessment & Plan (Linda Cawthorn; 6/1/2015 10:06 AM)

Failed Back Syndrome, Lumb (722.83)
Current Plans
 l P001 Specimen Validity (Non-Medicare) (80101)
 l P007 Immunoassay Screen (Non-Medicare) (81005)
 l D001 AMPH Confirmation (Non Medicare) (80326)
 l D003 BENZ Confirmation (Non Medicare) (80346)
 l D004 OPIO Confirmation (Non Medicare) (80361)
 l D006 ILCT & Others Confirmation (Non Medicare) (80102)
 l UDS Panels Tested: MTD, AMP, COC, THC, MDMA, OPI, BAR, BZO, TCA, OXY (In-House Lab)
 l 1006F-8P: Osteoarthritis symptoms and functional status not assessed, reason not otherwise specified.
 l DOC CUR MEDS BY PROV (G8427)
 l PAIN ASSESSMENT DOCUMENTED AS POSITIVE UTILIZING A STANDARDIZED TOOL AND A FOLLOW-UP PLAN IS DOCUMENTED (G8730)
 l 1007F: Use of anti-inflammatory or analgesic over-the-counter (OTC) medications for symptom relief assessed

Lumbaosacral spondylosis/arthropathy/OA/lumbosacral facet arthropathy (721.3)

Flow Sheets (Linda Cawthorn; 6/1/2015 10:23 AM)
**IPS Procedure Flow Sheet**
1
 **Date:** 6/1/15 **MD:** EDR **Diagnosis:** Lumbar Failed Back Syndrome, Lumbar Spondylosis, Systemic Arthritis, Iatrogenic **Follow-up:** Schedule for LMBB L4-S1 B/L, Tramadol # 45 prn
2
 **Diagnosis:** fungal Meningitis

**Pain Management: Rx Flow Sheet**
1.
 **Date:** 6/1/15 **Opiod Contract Signed?:** yes **UDS Obtained:** yes **Medication/Dosage:** Tramadol 50 mg bid prn **# Given:** #45 **# Refills:** 0 **Comments:** script given to pt

 Signed electronically by Eduardo De Los Reyes, MD (6/1/2015 1:36 PM)

# Laboratories

**P001 Specimen Validity (Non-Medicare) (80101)** Final, Not Reviewed (Collected: 06/01/2015)
Diagnosis: Failed Back Syndrome, Lumb (722.83)
Note: IPS DE LOS REYES

| Urine Creatinine | **142** mg/dl | (Normal Range: 20-300 mg/dl)   Result Note: |
| | | Result Annotation: |
| pH | **6.1** | (Normal Range: 4.5-9)   Result Note: |
| | | Result Annotation: |
| Specific Gravity | **1.019** | (Normal Range: 1.0010-1.0250)   Result Note: |
| | | Result Annotation: |
| Oxidants | **-4** mcg/mL | (Normal Range: 49.9 mcg/mL)   Result Note: |
| | | Result Annotation: |

**P007 Immunoassay Screen (Non-Medicare) (81005)** Final, Not Reviewed (Collected: 06/01/2015)
Diagnosis: Failed Back Syndrome, Lumb (722.83)
Note: IPS DE LOS REYES

| Amphetamine | **Negative** ng/mL   ng/mL)   Result Note: |
| | Result Annotation: |
| Barbiturates | **Negative** ng/mL   ng/mL)   Result Note: |
| | Result Annotation: |
| Benzodiazepines | **Negative** ng/mL   ng/mL)   Result Note: |
| | Result Annotation: |
| Buprenorphine | **Negative** ng/mL   ng/mL)   Result Note: |
| | Result Annotation: |
| Cocaine | **Negative** ng/mL   ng/mL)   Result Note: |
| | Result Annotation: |
| Cannabinoid | **Negative** ng/mL   ng/mL)   Result Note: |
| | Result Annotation: |
| Ethyl Glucuronide | **Negative** ng/mL   ng/mL)   Result Note: |
| | Result Annotation: |
| Fentanyl | **Negative** ng/mL   ng/mL)   Result Note: |
| | Result Annotation: |
| Methadone | **Negative** ng/mL   ng/mL)   Result Note: |
| | Result Annotation: |
| Opiates | **Negative** ng/mL   ng/mL)   Result Note: |
| | Result Annotation: |
| Oxycodone | **Negative** ng/mL   ng/mL)   Result Note: |
| | Result Annotation: |
| PCP | **Negative** ng/mL   ng/mL)   Result Note: |
| | Result Annotation: |
| Tramadol | **Negative** ng/mL   ng/mL)   Result Note: |
| | Result Annotation: |

**D001 AMPH Confirmation (Non Medicare) (80326)** Final, Not Reviewed (Collected: 06/01/2015)
Diagnosis: Failed Back Syndrome, Lumb (722.83)
Note: IPS DE LOS REYES

| Amphetamine | **Not Detected** ng/mL   (Normal Range: <100 ng/mL)   Result Note: |
| | Result Annotation: |
| Methamphetamine | **Not Detected** ng/mL   (Normal Range: <100 ng/mL)   Result Note: |
| | Result Annotation: |
| MDA | **Not Detected** ng/mL   (Normal Range: <100 ng/mL)   Result Note: |
| | Result Annotation: |
| MDMA | **Not Detected** ng/mL   (Normal Range: <100 ng/mL)   Result Note: |
| | Result Annotation: |
| MDEA | **Not Detected** ng/mL   (Normal Range: <100 ng/mL)   Result Note: |
| | Result Annotation: |

**D003 BENZ Confirmation (Non Medicare) (80346)** Final, Not Reviewed (Collected: 06/01/2015)
Diagnosis: Failed Back Syndrome, Lumb (722.83)
Note: IPS DE LOS REYES

| Alprazolam | **Not Detected** ng/mL | (Normal Range: <50 ng/mL) Result Annotation: | Result Note: |
| alpha-hydroxyalprazolam | **Not Detected** ng/mL | (Normal Range: <50 ng/mL) Result Annotation: | Result Note: |
| 7-AminoClonazepam | **Not Detected** ng/mL | (Normal Range: <50 ng/mL) Result Annotation: | Result Note: |
| Oxazepam | **Not Detected** ng/mL | (Normal Range: <50 ng/mL) Result Annotation: | Result Note: |
| Nordiazepam | **Not Detected** ng/mL | (Normal Range: <50 ng/mL) Result Annotation: | Result Note: |
| Lorazepam | **Not Detected** ng/mL | (Normal Range: <50 ng/mL) Result Annotation: | Result Note: |
| Temazepam | **Not Detected** ng/mL | (Normal Range: <50 ng/mL) Result Annotation: | Result Note: |
| Diazepam | **Not Detected** ng/mL | (Normal Range: <50 ng/mL) Result Annotation: | Result Note: |
| Clonazepam | **Not Detected** ng/mL | (Normal Range: <50 ng/mL) Result Annotation: | Result Note: |

**D004 OPIO Confirmation (Non Medicare) (80361)** Final, Not Reviewed (Collected: 06/01/2015)
Diagnosis: Failed Back Syndrome, Lumb (722.83)
Note: IPS DE LOS REYES

| Codeine | **Not Detected** ng/mL | (Normal Range: <100 ng/mL) Result Annotation: | Result Note: |
| Morphine | **Not Detected** ng/mL | (Normal Range: <100 ng/mL) Result Annotation: | Result Note: |
| Hydrocodone | **Not Detected** ng/mL | (Normal Range: <25 ng/mL) Result Annotation: | Result Note: |
| Hydromorphone | **Not Detected** ng/mL | (Normal Range: <25 ng/mL) Result Annotation: | Result Note: |
| Oxycodone | **Not Detected** ng/mL | (Normal Range: <25 ng/mL) Result Annotation: | Result Note: |
| Oxymorphone | **Not Detected** ng/mL | (Normal Range: <25 ng/mL) Result Annotation: | Result Note: |
| 6-MAM (Heroin) | **Not Detected** ng/mL | (Normal Range: <20 ng/mL) Result Annotation: | Result Note: |
| Buprenorphine | **Not Detected** ng/mL | (Normal Range: <25 ng/mL) Result Annotation: | Result Note: |
| Norbuprenorphine | **Not Detected** ng/mL | (Normal Range: <25 ng/mL) Result Annotation: | Result Note: |
| Normeperidine | **Not Detected** ng/mL | (Normal Range: <100 ng/mL) Result Annotation: | Result Note: |
| Meperidine | **Not Detected** ng/mL | (Normal Range: <100 ng/mL) Result Annotation: | Result Note: |
| Tapentadol | **Not Detected** ng/mL | (Normal Range: <100 ng/mL) Result Annotation: | Result Note: |

**D006 ILCT & Others Confirmation (Non Medicare) (80102)** Final, Not Reviewed (Collected: 06/01/2015)
Diagnosis: Failed Back Syndrome, Lumb (722.83)
Note: IPS DE LOS REYES

| Carisoprodol | **Not Detected** ng/mL | (Normal Range: <100 ng/mL) Result Annotation: | Result Note: |
| Meprobamate | **Not Detected** ng/mL | (Normal Range: <100 ng/mL) Result Annotation: | Result Note: |
| Methylphenidate | **Not Detected** ng/mL | (Normal Range: <100 ng/mL) Result Annotation: | Result Note: |

## Procedures

**DOC CUR MEDS BY PROV (G8427)** Performed: 06/01/2015 (Ordered)
**PAIN ASSESSMENT DOCUMENTED AS POSITIVE UTILIZING A STANDARDIZED TOOL AND A FOLLOW-UP PLAN IS DOCUMENTED (G8730)** Performed: 06/01/2015 (Ordered)



Phillip Tyree DOB ████

# EXHIBIT E

## Kaycee L. Weeter

| | |
|---|---|
| **From:** | Kaycee L. Weeter |
| **Sent:** | Wednesday, January 20, 2016 11:04 AM |
| **To:** | 'mark@markzamora.com' |
| **Cc:** | C. J. Gideon; Cindy Alexander; Ginger F. Ward; 'Hampton, Amy' |
| **Subject:** | Completion of Tyree Depositions |

Mark:

Judge Boal's Order today sets the deadline for completion of Plaintiffs' depositions for January 29, 2016. We need to complete Mr. Tyree's deposition and depose Mrs. Tyree by that date. The only date that works for us is next Friday, January 29. Please respond as soon as possible, and we will issue the notice.


Thanks,

Kaycee Weeter


Kaycee L. Weeter, Esq.
Gideon, Cooper & Essary, PLC
Suite 1100
315 Deaderick St.
Nashville, TN 37238
Phone: 615.254.0400
Fax: 615.254.0459

NOTICE: The information in this message and any attachments are intended only for the personal and confidential use of the designated recipients. This message and any attachments may be an attorney-client communication or other legally privileged communication, and as such are privileged and confidential. If the reader of this message is not the intended recipient or an agent permitted to receive the message, you are hereby notified that you have received this message in error, and that any review or use of this message and any attachments is strictly prohibited. If you have received this message in error, please notify me immediately at any of the numbers or the e-mail shown above. Thank you.

# EXHIBIT F

**Kaycee L. Weeter**

| | |
|---|---|
| **From:** | Kaycee L. Weeter |
| **Sent:** | Wednesday, January 27, 2016 9:45 AM |
| **To:** | 'mark@markzamora.com' |
| **Cc:** | C. J. Gideon; Chris J. Tardio; Matt H. Cline; 'Hampton, Amy'; 'eric.hoffman@nortonrosefulbright.com' |
| **Subject:** | Follow-Up on Tyree Deposition |
| **Attachments:** | Notice of Depos Tyree, Phillip & Maria 01.21.16 (klw) zip.pdf |

Mark:

I still have not heard from you with confirmation that Mr. and Mrs. Tyree will be in attendance at their depositions this Friday, January 29. I just called your office to address this, but was told that you are out of the office today. Please confirm by the end of the day today that your clients will be in attendance on Friday.


Thanks,

Kaycee Weeter


Kaycee L. Weeter, Esq.
Gideon, Cooper & Essary, PLC
Suite 1100
315 Deaderick St.
Nashville, TN 37238
Phone: 615.254.0400
Fax: 615.254.0459

**From:** Kaycee L. Weeter
**Sent:** Tuesday, January 26, 2016 8:44 AM
**To:** 'mark@markzamora.com'
**Cc:** C. J. Gideon; Chris J. Tardio; Matt H. Cline; 'Hampton, Amy'; 'eric.hoffman@nortonrosefulbright.com'
**Subject:** Tyree Deposition

Mark:

We filed the attached Notice of Deposition on Thursday, January 21. You were served with it via email. Please confirm by the close of business today that Mr. and Mrs. Tyree will be in attendance at their depositions this Friday.


Thanks,

Kaycee Weeter


Kaycee L. Weeter, Esq.
Gideon, Cooper & Essary, PLC
Suite 1100
315 Deaderick St.
Nashville, TN 37238
Phone: 615.254.0400
Fax: 615.254.0459

1

NOTICE: The information in this message and any attachments are intended only for the personal and confidential use of the designated recipients. This message and any attachments may be an attorney-client communication or other legally privileged communication, and as such are privileged and confidential. If the reader of this message is not the intended recipient or an agent permitted to receive the message, you are hereby notified that you have received this message in error, and that any review or use of this message and any attachments is strictly prohibited. If you have received this message in error, please notify me immediately at any of the numbers or the e-mail shown above. Thank you.

# EXHIBIT G

## Kaycee L. Weeter

| | |
|---|---|
| **From:** | mark@markzamora.com |
| **Sent:** | Wednesday, January 27, 2016 9:46 AM |
| **To:** | Kaycee L. Weeter |
| **Cc:** | C. J. Gideon; Chris J. Tardio; Matt H. Cline; Hampton, Amy; eric.hoffman@nortonrosefulbright.com |
| **Subject:** | RE: Follow-Up on Tyree Deposition |

I just finished a 3 week trial. No way I can do 1/29.. my apologies, but I have had limited access to emails. If someone left me a message on th is I never received it.

I'm here all day - my cell is 404.805.0226. I am happy to quickly set a date and time that will work for all.

Mark

-------- Original Message --------
Subject: Follow-Up on Tyree Deposition
From: "Kaycee L. Weeter" <kaycee@gideoncooper.com>
Date: Wed, January 27, 2016 10:44 am
To: "mark@markzamora.com" <mark@markzamora.com>
Cc: "C. J. Gideon" <cj@gideoncooper.com>, "Chris J. Tardio"
<chris@gideoncooper.com>, "Matt H. Cline" <matt@gideoncooper.com>,
"Hampton, Amy" <ahampton@babc.com>,
"eric.hoffman@nortonrosefulbright.com"
<eric.hoffman@nortonrosefulbright.com>

Mark:

I still have not heard from you with confirmation that Mr. and Mrs. Tyree will be in attendance at their depositions this Friday, January 29. I just called your office to address this, but was told that you are out of the office today. Please confirm by the end of the day today that your clients will be in attendance on Friday.


Thanks,

Kaycee Weeter


Kaycee L. Weeter, Esq.
Gideon, Cooper & Essary, PLC
Suite 1100
315 Deaderick St.
Nashville, TN 37238
Phone: 615.254.0400
Fax: 615.254.0459


**From:** Kaycee L. Weeter
**Sent:** Tuesday, January 26, 2016 8:44 AM
**To:** 'mark@markzamora.com'
**Cc:** C. J. Gideon; Chris J. Tardio; Matt H. Cline; 'Hampton, Amy'; 'eric.hoffman@nortonrosefulbright.com'
**Subject:** Tyree Deposition

Mark:

We filed the attached Notice of Deposition on Thursday, January 21. You were served with it via email. Please confirm by the close of business today that Mr. and Mrs. Tyree will be in attendance at their depositions this Friday.

Thanks,

Kaycee Weeter

Kaycee L. Weeter, Esq.
Gideon, Cooper & Essary, PLC
Suite 1100
315 Deaderick St.
Nashville, TN 37238
Phone: 615.254.0400
Fax: 615.254.0459

NOTICE: The information in this message and any attachments are intended only for the personal and confidential use of the designated recipients. This message and any attachments may be an attorney-client communication or other legally privileged communication, and as such are privileged and confidential. If the reader of this message is not the intended recipient or an agent permitted to receive the message, you are hereby notified that you have received this message in error, and that any review or use of this message and any attachments is strictly prohibited. If you have received this message in error, please notify me immediately at any of the numbers or the e-mail shown above. Thank you.



O. Mark Zamora, Esq.
Partner, Roger W. Orlando Firm Pc
Atlanta: 5 Concourse Pkway, Suite 2600, Atlanta, GA 30328
P: 404.373.1800 F:404.506.9223
Tampa: 2002 N. Lois Ave. #510 Tampa, FL 33607
P: 866.373.1800

# EXHIBIT H

**Kaycee L. Weeter**

| | |
|---|---|
| **From:** | C. J. Gideon |
| **Sent:** | Wednesday, January 27, 2016 11:28 AM |
| **To:** | Mark@markzamora.com; Puig, Yvonne K.; adam.schramek@nortonrosefulbright.com; ahampton@babc.com |
| **Cc:** | Cindy Alexander; Kaycee L. Weeter; Chris J. Tardio; Matt H. Cline; Matthew J. Nathanson |
| **Subject:** | Tyree v. Ameridose |

Mark:  The depositions of your clients are duly noticed for Friday, January 29, 2016, in our offices. The notice was filed in the PACER system, and sent to you [with reminders] directly via e-mail. Today you informed us that you just completed a three (3) week trial, and you cannot present your clients for the depositions as noticed.  I would personally prefer to accommodate you, but we cannot.

The January 20, 2016 Order [Doc. 2596] sets a fixed date of January 29, 2016 for completion of plaintiff's depositions. Local Rule 26.1(a) of the District of Massachusetts specifies that the parties **may not** enter into stipulations extending the time for responding to discovery requests or otherwise modify discovery procedures ordered by the judicial officer. I will expect Mr. Tyree and his wife in our office for their depositions on Friday morning.

C. J. Gideon, Jr.
Gideon, Cooper & Essary, PLC
315 Deaderick Street, Suite 1100
Nashville, TN.  37238
615-254-0400
615-254-0459 (Fax)

NOTICE: The information contained in this electronic mail message and any attachments are intended only for the personal and confidential use of the designated recipients. This message and any attachments may constitute an attorney-client communication, or other legally privileged communication, and as such is privileged and confidential. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this message in error, and that any review, dissemination, distribution or copying of this message and any attachments is strictly prohibited. If you have received this message in error, please notify me immediately by telephone and by electronic mail at any of the numbers or addresses shown above. Thank you.

# EXHIBIT I

## Kaycee L. Weeter

| | |
|---|---|
| **From:** | Kaycee L. Weeter |
| **Sent:** | Sunday, January 31, 2016 5:35 PM |
| **To:** | 'mark@markzamora.com' |
| **Cc:** | C. J. Gideon; Chris J. Tardio; Matt H. Cline; Matthew J. Nathanson |
| **Subject:** | Tyree v. Ameridose |

Mark:

We were prepared to depose Mr. and Mrs. Tyree at our offices on Friday, January 29. You and your clients did not appear for their noticed depositions. Mr. and Mrs. Tyree's responses to our Interrogatories and Requests for Production were due on December 21, 2015. We reached out to you numerous times to obtain those responses, but never received them. On January 19, 2016, we filed a Motion to Compel your clients' discovery responses. We still have never received any responses to our discovery requests. As you know, the deadlines in this litigation are very strict. Without completing case-specific discovery for *Tyree*, we are unable to move forward with the numerous other discovery deadlines. We ask that you agree to dismiss *Tyree v. Ameridose* with prejudice. Please let us know by the close of business on Monday, February 1, if you will or will not agree to this.


Thanks,

Kaycee Weeter


Kaycee L. Weeter, Esq.
Gideon, Cooper & Essary, PLC
Suite 1100
315 Deaderick St.
Nashville, TN 37238
Phone: 615.254.0400
Fax: 615.254.0459

NOTICE: The information in this message and any attachments are intended only for the personal and confidential use of the designated recipients. This message and any attachments may be an attorney-client communication or other legally privileged communication, and as such are privileged and confidential. If the reader of this message is not the intended recipient or an agent permitted to receive the message, you are hereby notified that you have received this message in error, and that any review or use of this message and any attachments is strictly prohibited. If you have received this message in error, please notify me immediately at any of the numbers or the e-mail shown above. Thank you.

# EXHIBIT J

**Kaycee L. Weeter**

| | |
|---|---|
| **From:** | mark@markzamora.com |
| **Sent:** | Monday, February 01, 2016 4:40 PM |
| **To:** | Kaycee L. Weeter |
| **Cc:** | C. J. Gideon; Chris J. Tardio; Matt H. Cline; Matthew J. Nathanson |
| **Subject:** | RE: Tyree v. Ameridose |

I plan to talk with my client.

First, we did not agree to depose my client on Friday January 29, 2016.

You sent me an email at 6:35 p.m on Sunday. I will respond to your request after I speak with my client, and let you know what stance we will take no later than 2/5/16.


-------- Original Message --------
Subject: Tyree v. Ameridose
From: "Kaycee L. Weeter" <kaycee@gideoncooper.com>
Date: Sun, January 31, 2016 6:35 pm
To: "mark@markzamora.com" <mark@markzamora.com>
Cc: "C. J. Gideon" <cj@gideoncooper.com>, "Chris J. Tardio"
<chris@gideoncooper.com>, "Matt H. Cline" <matt@gideoncooper.com>,
"Matthew J. Nathanson" <mnathanson@gideoncooper.com>

Mark:

We were prepared to depose Mr. and Mrs. Tyree at our offices on Friday, January 29. You and your clients did not appear for their noticed depositions. Mr. and Mrs. Tyree's responses to our Interrogatories and Requests for Production were due on December 21, 2015. We reached out to you numerous times to obtain those responses, but never received them. On January 19, 2016, we filed a Motion to Compel your clients' discovery responses. We still have never received any responses to our discovery requests. As you know, the deadlines in this litigation are very strict. Without completing case-specific discovery for *Tyree*, we are unable to move forward with the numerous other discovery deadlines. We ask that you agree to dismiss *Tyree v. Ameridose* <u>with prejudice</u>. Please let us know by the close of business on Monday, February 1, if you will or will not agree to this.


Thanks,

Kaycee Weeter


Kaycee L. Weeter, Esq.
Gideon, Cooper & Essary, PLC
Suite 1100
315 Deaderick St.
Nashville, TN 37238
Phone: 615.254.0400
Fax: 615.254.0459

NOTICE: The information in this message and any attachments are intended only for the personal and confidential use of the designated

1

recipients. This message and any attachments may be an attorney-client communication or other legally privileged communication, and as such are privileged and confidential. If the reader of this message is not the intended recipient or an agent permitted to receive the message, you are hereby notified that you have received this message in error, and that any review or use of this message and any attachments is strictly prohibited. If you have received this message in error, please notify me immediately at any of the numbers or the e-mail shown above. Thank you.



O. Mark Zamora, Esq.
Partner, Roger W. Orlando Firm Pc
Atlanta: 5 Concourse Pkway, Suite 2600, Atlanta, GA 30328
P: 404.373.1800 F:404.506.9223
Tampa:   2002 N. Lois Ave. #510 Tampa, FL 33607
P: 866.373.1800

**Kaycee L. Weeter**

| | |
|---|---|
| **From:** | mark@markzamora.com |
| **Sent:** | Monday, February 01, 2016 4:40 PM |
| **To:** | Kaycee L. Weeter |
| **Cc:** | C. J. Gideon; Chris J. Tardio; Matt H. Cline; Matthew J. Nathanson |
| **Subject:** | RE: Tyree v. Ameridose |

Also, I handed you the discovery response at the previously set deposition.


-------- Original Message --------
Subject: Tyree v. Ameridose
From: "Kaycee L. Weeter" <kaycee@gideoncooper.com>
Date: Sun, January 31, 2016 6:35 pm
To: "mark@markzamora.com" <mark@markzamora.com>
Cc: "C. J. Gideon" <cj@gideoncooper.com>, "Chris J. Tardio"
<chris@gideoncooper.com>, "Matt H. Cline" <matt@gideoncooper.com>,
"Matthew J. Nathanson" <mnathanson@gideoncooper.com>

Mark:

We were prepared to depose Mr. and Mrs. Tyree at our offices on Friday, January 29. You
and your clients did not appear for their noticed depositions. Mr. and Mrs. Tyree's responses
to our Interrogatories and Requests for Production were due on December 21, 2015. We
reached out to you numerous times to obtain those responses, but never received them. On
January 19, 2016, we filed a Motion to Compel your clients' discovery responses. We still
have never received any responses to our discovery requests. As you know, the deadlines in
this litigation are very strict. Without completing case-specific discovery for *Tyree*, we are
unable to move forward with the numerous other discovery deadlines. We ask that you agree
to dismiss *Tyree v. Ameridose* <u>with prejudice</u>. Please let us know by the close of business on
Monday, February 1, if you will or will not agree to this.


Thanks,

Kaycee Weeter



Kaycee L. Weeter, Esq.
Gideon, Cooper & Essary, PLC
Suite 1100
315 Deaderick St.
Nashville, TN 37238
Phone: 615.254.0400
Fax: 615.254.0459

NOTICE: The information in this message and any attachments are intended only for the personal and confidential use of the designated
recipients. This message and any attachments may be an attorney-client communication or other legally privileged communication, and as
such are privileged and confidential. If the reader of this message is not the intended recipient or an agent permitted to receive the message,
you are hereby notified that you have received this message in error, and that any review or use of this message and any attachments is
strictly prohibited. If you have received this message in error, please notify me immediately at any of the numbers or the e-mail shown
above. Thank you.



O. Mark Zamora, Esq.
Partner, Roger W. Orlando Firm Pc
Atlanta: 5 Concourse Pkway, Suite 2600, Atlanta, GA 30328
P: 404.373.1800 F:404.506.9223
Tampa:  2002 N. Lois Ave. #510 Tampa, FL 33607
P: 866.373.1800

# EXHIBIT K

THE ORLANDO FIRM PC
5 Concourse Parkway Suite 2600
Atlanta, GA 30328
T:  404.373.1800
F:  404.506.9223

mark@markzamora.com

February 3, 2016

By email
Kacie Weeter, Esquire
Gideon, Cooper
Suite 1100
315 Deadrick Street
Nashville, TN 37238

Re: Tyree adv. Ameridose

Dear

This adresses the pending matter. As we all know, Mr. Tyree's deposition was noticed for and held December 22, 2015. By agreement, the deposition was held at the offices of Branstetter Stranch. Gerard Stranch is obviously a member of the PSC. Mr. Tyree drove from his home in rural Kentucky for the deposition. Before the deposition began, I handed not only discovery responses, but additional documents that Mr. Tyree brought with him to the deposition that day.

During the more than five hour deposition, Mr. Gideon questioned Mr. Tyree about any medical care in the recent past. All counsel learned for the first time that he had been to a doctor in Bowling Green, Kentucky. I learned about it that very day. After taking a short recess, more questions were asked and the deposition was adjourned by agreement. Mr. Gideon asked that we expedite the production of this Kentucky medical professional. The attorneys worked amicably to address this issue, and we agreed that the deposition would be set on a mutually convenient date.

On January 13, 2016 I received the documents from this newly discovered medical provider and sent them that very day via email to counsel. I also let you know that I was not available, doing so via email.

On January 27, 2016 I emailed Mr.Gideon and you that the date unilaterally set for the continuation of the deposition of Mr. Tyree would not work. I then called and spoke with you. We had a cordial conversation. I said in no uncertain terms that I could not attend part two of my client's deposition in Nashville on January 29, 2016. I repeated, as you know, that my client works full time in Kentucky, and less than one week's notice for a day long deposition (again) would not work for him. I then gave you other dates for

the deposition continuation.

On Sunday, you emailed me and informed that you held the deposition at your offices, and that our client did not appear. You, C.J. and I all knew that neither I nor the client could possibly attend that day. You graciously gave me one day to take action you requested.

I emailed you and called you earlier in the week. You told me about the action your client had asked you to take. I then spoke with my client. He will not dismiss his case at this time.

This is not a case where someone simply did not "show up" for a deposition. Mr. Tyree has undergone hours of examination already. He made an accommodation to all concerned by driving from his home in another state to attend the first deposition, even though he was under no obligation to do so.

We are of course willing to proceed with the second part of the deposition. I had, candidly, expected better from your office. I have picked up the telephone twice to let you know my concerns. I was not afforded that same courtesy.

Very truly yours.