**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING ) <br> PHARMACY, INC. PRODUCTS LIABILITY ) <br> LITIGATION ) <br> ) <br> _____ )     MDL NO. 2419 <br> )     Dkt. No. 1:13-md-2419 (RWZ) <br> THIS DOCUMENT RELATES TO: ) <br> ) <br> Wray ) <br> Ziegler ) <br> Brock ) <br> _____ ) | |

**PLAINTIFFS CONSOLIDATED RESPONSE IN OPPOSITION TO NASHVILLE HEALTHCARE DEFENDANTS' MOTION TO STRIKE MATTHEW LEE AS CASE SPECIFIC EXPERT**

Plaintiffs Jane Wray, Adam Ziegler, and Denis Brock hereby file this Response in Opposition to the Nashville Healthcare Defendants' Motion to Strike Matthew Lee as a Case Specific Expert (Dkt. No. 2769, the "Motion").

The Motion incorrectly claims that the case-specific causation reports offered by Matthew Lee are common expert disclosures that are untimely. The Motion's fatal flaw stems from the Nashville Healthcare Defendants misunderstanding of the MDL process and the purpose of common and case specific experts. The Nashville Healthcare Defendants assume, without citation to any authority whatsoever, that common experts and case specific experts must be mutually exclusive. This is simply not consistent with the Court's orders on this issue, common practice, or basic reason. Moreover, even if Dr. Lee's disclosures were untimely (which they were not), Nashville Healthcare Defendants would suffer no significant prejudice - they will have ample opportunity to depose Doctor Lee pre-trial and will have an opportunity rebut his opinions with their own experts. The Motion must be denied.

### A. Dr. Matthew Lee's Case-Specific Causation Reports Are Not Common Expert Disclosures

As is customary in most mass tort MDLs, this Court phased discovery into a common phase and a case specific phase.[1] This Court defined a common issue as "an issue that pertains to all or a substantial number of cases in the [MDL]."[2] By contrast a case-specific issue is "an issue that pertains to a single case or a small number of cases."[3]

Dr. Matthew Lee's expert report offered in the individual matters of *Wray*, *Ziegler*, and *Brock* are specific causation opinions offered for those individual plaintiffs.[4] In offering the opinion that the Defendants' conduct caused the specific injuries suffered by those plaintiffs, Dr. Lee has set forth an opinion that "pertains to a single case or a small number of cases" as those terms are used in the Court's scheduling order.[5]

In detailing specifically how Defendants caused the injuries to these plaintiffs, Dr. Lee, by necessity given the nature of this MDL, identified specific reasons as to why Defendants' treatment of the individual plaintiffs fell below the standard of care required of them by the law.[6] These issues ostensibly also could apply to other cases in this MDL pending against the Nashville Healthcare Defendants and/or many of the other clinics and doctors with claims pending against them simply because that is the nature of MDL practice: cases are consolidated specifically for the reason that they arise out of a common action or practice that gives rise to some cognizable legal claim.

---

[1] *See e.g.*, Barbara J. Rothstein, et. al, A Model Mass Tort: The PPA Experience, 54 DRAKE L.REV. 621 (2006) (discussing several examples of courts utilizing common experts within the MDL mass tort context).
[2] Dkt. No. 1425, n1.
[3] *Id*.
[4] *See* Dkt. No. 2770-1, 2770-2, and 2770-3.
[5] Dkt. No. 1425, n1.
[6] *See* Dkt. No. 2770-1, 2770-2, and 2770-3.

Nevertheless, Dr. Lee's expert opinions in the three cases now in dispute remain case-specific reports for the simple reason that Dr. Lee is not offering the opinion that the actions of the Defendants could cause injury to an unspecified group of people (like the PSC's common experts previously disclosed during the common phase of expert discovery), but rather Dr. Lee is offering the case-specific opinion that Defendants' actions caused the injuries sustained by these three plaintiffs.[7] This narrow opinion is sufficient to differentiate Dr. Lee's case-specific reports from a common expert report that the PSC served during the common expert discovery phase.[8]

## B. MDL Courts Routinely Allow Case-Specific Causation Reports To Be Offered By Experts Not Disclosed In The Common Phase Of Expert Discovery

The Nashville Healthcare Defendants take issue with the timing of Dr. Lee's report and specifically claim that his report was due in December when the PSC disclosed common expert reports in the cases involving the Nashville Healthcare Defendants.[9] Despite MDL courts routinely bifurcating common and case-specific expert discovery, the Nashville Healthcare Defendants fail to cite to a single case in the history of MDL practice where a court excluded an expert report on the grounds Defendants assert here.[10] There lack of authority is unsurprising.

Courts routinely allow case-specific experts, especially on the issue of causation, to be offered by witnesses other than those proffered in the common phase. For example in the Accutane MDL, the Court held the following:

> So-called generic experts necessary to all the cases will likely include experts on general causation, warnings, labeling, and clinical trials and the challenges to such witnesses will likely include challenges to qualifications and methodology. Individual cases will also require expert testimony concerning specific

---

[7] *See* Dkt. No. 2770-1, 2770-2, and 2770-3.
[8] *Compare* Dkt. No. 2770-1, 2770-2, and 2770-3 *with* 2770-4 at Page 9-10
[9] Dkt. No. 2770 at 4-5.
[10] *See generally* Dkt. No. 2770, failing to cite a single case for authority in support of their position.

causation, *which may be offered by the same expert addressing general causation or a different witness*.[11]

In fact, in some cases, MDL courts routinely allow plaintiffs in individual cases to designate and call their own common experts well after the deadline set for the plaintiffs' steering committee to designate common experts. For example, in the Fen Phen MDL, the District Court overseeing that consolidated action ordered the following:

> The parties informed the court that they will soon submit the generic stipulated record for approval. Although plaintiffs may rely upon the [steering committee's] generic experts without making formal designations, they may designate additional generic experts not proffered by the [steering committee] in accordance with the deadlines applicable to their [individual case schedule].[12]

In other words, it is common in MDL practice to allow individual plaintiff attorneys to designate experts on case-specific issues and, at times, even call their own common experts not designated by the PSC. Given this history, it is not surprising that the Nashville Healthcare Defendants cannot find a single case supporting their untenable position.

C. **The Nashville Healthcare Defendants' Position Is Unworkable and Unfair**

Even assuming there was any merit whatsoever to the Nashville Healthcare Defendants' position (which there is not), their proposed relief would be unworkable and unfair. The purpose of common experts is often to provide generic expert opinions on general issues such as causation so that these experts' testimony can be used at multiple trials without the need for the expert himself appearing each time to provide the same opinions.[13] These generic opinions, however, do not generally substitute for the needed case-specific causation experts that link a

---

[11] *In re Accutane Prods. Liab. Litig.*, 2006 U.S. Dist. LEXIS 76477, *10 (M.D. Fla. Oct. 20, 2006) (emphasis added).
[12] *In re Diet Drugs Prods. Liab. Litig.*, 2001 U.S. Dist. LEXIS 5927, *12 (E.D. Pa. May 9, 2001)
[13] *See*, Eldon E. Fallon, et. al, Bellwether Trials in Multidistrict Litigation, 82 TUL. L. REV. 2323, 2338-40 (2008) (discussing trial packages within the context of bellwether trials in MDL cases).

common practice to a specific plaintiff injury. To believe the Nashville Healthcare Defendants, then, would require that these common experts be the only universe of individuals who could render case-specific causation reports. This would be unworkable in the event that all potential outstanding cases have to be tried as these common experts would face the need to spend a large portion (if not all) of their time in the foreseeable future, testifying at every trial.

Not only is the Defendant's position unworkable, it is unfair. As Defendants' would have it, the over 100 plaintiffs with cases pending against the Nashville Healthcare Defendants would be limited to causation experts disclosed by the PSC on December 16, 2015. Many plaintiffs have already identified case-specific causation experts and have likely already paid an expert to develop an initial case-specific causation report. To adopt the Nashville Healthcare Defendants' position would require the PSC's common expert witnesses to review all cases that go to trial to render case-specific causation reports, thereby requiring that these plaintiffs incur these case-specific causation expert expenses twice. That is simply unfair and unnecessary duplicative in a case of this nature.

As a result, the Nashville Healthcare Defendants' unprecedented position is simply unfair to plaintiff's counsel who have already worked up case-specific reports and would impose an unworkable time constraint on trials going forward. The Motion should be denied on this basis alone.

D. **The Plaintiffs Were Justified In The Timing of Dr. Lee's Disclosure And The Nashville Healthcare Defendants Suffer No Prejudice From The Timing Of The Disclosure Of Dr. Lee's Reports**

Even assuming the Nashville Healthcare Defendants are correct and that Dr. Lee's reports are untimely under the Court's Scheduling Orders, plaintiffs in these individual cases

should still be permitted to designate Dr. Lee because any failure to timely designate Dr. Lee was justified and any late designation would be harmless.

Federal Rule of Civil Procedure 26(a)(2)(A) provides that "a party must disclose to the other parties the identity of any witnesses it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed.R.Civ.P. 26(a)(2)(A). This disclosure must include a "written report - prepared and signed by the witness - if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fed.R.Civ.P. 26(a)(2)(B). These disclosures must be made "at the times and in the sequence that the court orders [ ][or] absent a stipulation or court order ... at least 90 days before the date set for trial[.]" Fed.R.Civ.P. 26(a)(2)(D)(I).

Federal Rule of Civil Procedure 37 states that [i]f a party fails to provide the information required by Rule 26, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial unless the failure was substantially justified or is harmless." Fed.R.Civ.P. 37(c)(1). Substantial justification is "justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request."[14] A failure to timely make the required disclosures is harmless when there is no prejudice to the party entitled to receive disclosure.[15]

Here, there is nothing in the Court's scheduling orders that suggests that an expert offering a case-specific causation opinion could be excluded simply by not being disclosed at the common expert phase of this litigation. As the authorities cited above suggest, these are not uncommon occurrences in complex MDL cases such as the one at bar. As a result, plaintiffs

---

[14] *Hewitt v. Liberty Mut. Group, Inc.*, 268 F.R.D. 681, 682. (M.D.Fla.2010); *see also Esposito v. Home Depot U.S.A., Inc.,* 590 F.3d 72, 77 (1st Cir. 2009).
[15] *Hewitt*. 268 F.R.D. at 683.

were substantially justified in thinking that Dr. Lee's disclosure at the case-specific stage was timely.

Additionally, the Nashville Healthcare Defendants fail to articulate any prejudice they have suffered as a result of the timing of the disclosure. They make the unfounded accusation that the timing was an "end run" around the Court's orders, but they make no attempt whatsoever to discuss how they have been harmed by disclosing Dr. Lee in these three cases under the case-specific deadlines set by the Court. The Nashville Healthcare Defendants had at least 30 days from the disclosure to identify their own rebuttal expert, and they have several months to vet his report and prepare for his deposition. Trial will certainly not be delayed based on the timing of the disclosure.

As a result, even assuming that Dr. Lee's reports should have been disclosed during the common phase of this litigation, plaintiffs should still be permitted to disclose him in accordance with the deadlines set forth in the Court's orders on case-specific discovery.[16]

## CONCLUSION

For the foregoing reasons, the Court should deny the Nashville Healthcare Defendants' Motion to Strike the Matthew Lee as a Case-Specific Expert.

---

[16] *Esposito* 590 F.3d at 77 (overturning district court decision to exclude expert testimony given that plaintiff's counsel had only missed one deadline and had moved relatively quickly for an extension of time to proffer expert report).

Dated April 12, 2016  Respectfully submitted,

**/s/ Benjamin A. Gastel**
J. Gerard Stranch, IV
Benjamin A. Gastel
Anthony A. Orlandi
BRANSTETTER, STRANCH &
JENNINGS, PLLC
223 Rosa L. Parks Ave., Suite 200
Nashville, TN 37203
Telephone:  615/254-8801
Facsimile:  615/255-5419
gerards@bsjfirm.com
beng@bsjfirm.com
aorlandi@bsjfirm.com
*Plaintiffs' Steering Committee*

## **CERTIFICATE OF SERVICE**

I, Benjamin A. Gastel, hereby certify that on April 12, 2016, I caused a copy of the foregoing document to be filed electronically via the Court's electronic filing system. Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system, and notice of these filings will be sent to these parties by operation of the Court's electronic filing system.

                                              **/s/ Benjamin A. Gastel**
                                              Benjamin A. Gastel