UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION )<br>)<br>)<br>)<br>) | MDL NO. 2419<br>Dkt. No. 1:13-md-2419 (RWZ) |
| THIS DOCUMENT RELATES TO: )<br>)<br>All Bellwether Cases )<br>)<br>) | |

**PLAINTIFFS' STEERING COMMITTEE'S RESPONSE IN OPPOSITION TO SAINT THOMAS ENTITIES MOTION TO STAY BELLWETHER TRIALS [Dkt. No. 2785]**

The Plaintiffs' Steering Committee files this Response in Opposition to the Saint Thomas Entities Motion to Stay Bellwether Trials (Dkt. No. 2785, the "Motion").

The Motion is yet another attempt by the Saint Thomas Entities to delay resolution of claims against them. Victims of this tragedy have waited almost four years for these claims to get to trial, and now months away from the first trial, the Saint Thomas Entities ask for an indefinite delay of these proceedings. The reasons should be familiar to this Court by now, as they have largely been argued before. Put simply, the Saint Thomas Entities believe these cases should not be rushed to trial (as if waiting four years for a trial is by any stretch of the imagination a rush) and that the criminal case should go forward first (an argument that this Court has already rejected) and that these cases should be tried elsewhere (again, an argument this Court has already rejected). The Motion should be denied, and Plaintiffs should soon get their day in court.

**I. The Court Having Already Ruled On Its Jurisdiction Under 28 U.S.C. § 157(b)(5) Should Be Able To Expeditiously Transfer Cases Following Remand**

The Saint Thomas Entities first assert that the Court's proposed process to transfer these cases back to their originating jurisdictions under 28 U.S.C. § 1407 and transferring them back

under 28 U.S.C. § 157(b)(5) would take too long[1] because, as the Saint Thomas Entities believe, resolving jurisdictional issues as to whether this Court has bankruptcy jurisdiction over these cases under § 157(b)(5) will require additional briefing and ruling.[2]

The Court's jurisdiction under § 157(b)(5) is settled. The Court has already addressed this issue no less than three times already and written 74 pages on its jurisdiction under § 157(b)(5).[3] There is no reason that the Court should reconsider or alter these previous rulings. To the extent that the Saint Thomas Entities want to have this Court rule on this issue for the fourth time, the Court, having become all too familiar with this issue already, can expedite briefing and expedite ruling with relative ease.[4]

Accordingly, this basis for staying the bellwether trials is without merit.

## II. There is No Justification To Try The Criminal Cases First

"A stay of [a] civil case to permit conclusion of a related criminal prosecution has been characterized as an extraordinary remedy."[5] "A defendant has no constitutional right to a stay in a civil suit simply because a parallel criminal proceeding is in the works."[6] "A movant must demonstrate a clear case of hardship to be entitled to a discretionary stay of a civil suit."[7]

---

[1] Dkt. No. 2309 at n.20.
[2] DKt. No. 2786 at page 6.
[3] Dkt. Nos. 170, 1131, and 2309.
[4] It should also be noted that any concern about the timing of the transfer method outlined in Dkt. No. 2309 could be obviated by the Defendants waiving *Lexecon*. Based on the Court's previous orders, it is clear the Court's intention is to try these cases in this jurisdiction, and the remand/transfer process envisioned by the Court is required only because of Defendant's refusal to waive *Lexecon*.
[5] *Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995) (internal quotations omitted).
[6] *Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 74 (1st Cir. Mass. 2004).
[7] *Id*.

"The decision to grant or deny such a stay involves competing interests."[8]  "Balancing these interests is a situation-specific task, and an inquiring court must take a careful look at the idiosyncratic circumstances of the case before it."[9]  The five factors that typically bear on the decision to stay civil litigation pending the resolution of a criminal proceeding do not counsel in favor of a stay here.  Those five factors are as follows: (i) the interests of the civil plaintiff in proceeding expeditiously with the civil litigation, including the avoidance of any prejudice to the plaintiff should a delay transpire; (ii) the hardship to the defendant, including the burden placed upon him should the cases go forward in tandem; (iii) the convenience of both the civil and criminal courts; (iv) the interests of third parties; and (v) the public interest."[10]

As explained in greater detail below, these factors weigh in favor of continuing the Court's current course.  Plaintiffs have a strong interest in trying these cases and, despite their contentions to the contrary, Defendants have the information they need to try these cases fairly and adequately on the record compiled.  Further delays to await the criminal prosecution are simply unnecessary and will prejudice Plaintiffs.

**1. Additionally Delays In Trial Are Unwarranted.**

"[A] plaintiff is entitled to a speedy discovery process. This is particularly true in the context of complex litigation which must proceed in an efficient manner."[11]  Plaintiffs are four years removed from the events giving rise to this litigation.  Memories are fading and literally hundreds of Plaintiffs are awaiting their day in court.  Moreover, as the PSC has already highlighted, many of the Plaintiffs in this case are elderly, many face other debilitating medical

---

[8] *Id*.
[9] *Id*.
[10] *Id*.  "To this list we add (vi) the good faith of the litigants (or the absence of it) and (vii) the status of the cases."  *Id*.
[11] *Digital Equipment Corp. v. Currie Enterprises*, 142 F.R.D. 8, 12 (D. Mass. 1991).

conditions, and at least one Plaintiff has already died awaiting the resolution of these cases. Further long delays are simply unnecessary and unwarranted.[12]

## 2. The Defendants Only Have A Limited Interest In Delaying Civil Trials

The Saint Thomas Entities fail to cite, and the PSC is unaware of, any instance where a defendant in a civil litigation successfully obtained a stay of a civil litigation due to the pendency of a criminal case against a defendant not named in the civil lawsuit. Case law involving stays of civil litigation due to a pending criminal matter typically involve some analysis to determine whether a criminal defendant's desire to invoke Fifth Amendment rights provides sufficient justification to forestall proceeding with a civil litigation.[13] When those Fifth Amendment concerns are not present, Courts routinely deny any attempt to stay civil litigation pending the outcome of a criminal proceeding.[14] Here, none of the defendants facing civil trials in the

---

[12] *Digital Equipment Corp.*, 142 F.R.D. 8 (denying motion to stay civil litigation where prejudice to plaintiffs outweighed burden imposed on defendants from criminal prosecution); *SEC v. K2 Unlimited, Inc.*, 15 F. Supp. 3d 158, 161 (D. Mass. 2014) (denying motion to stay because "[t]he allegations at the heart of the criminal indictment are, therefore, not encompassed by the claims for relief in the civil complaint. Therefore, this motion to stay does not involve civil and criminal cases in which the allegations are the same or substantially overlap.").

[13] *See e.g.*, *Microfinancial*, 385 F.3d at 78 ("The defendants' caterwauling about the onus of conducting a civil trial during the pendency of a federal grand jury investigation rings hollow. Although they focus this argument on the burden imposed on [defendant's] Fifth Amendment rights…"); *SEC v. Dresser Industries, Inc.*, 628 F.2d 1368, 1375-1376 (D.C. Cir. 1980) ("Other than where there is specific evidence of agency bad faith or malicious governmental tactics, the strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter. The noncriminal proceeding, if not deferred, might undermine the party's Fifth Amendment privilege against self-incrimination, expand rights of criminal discovery beyond the limits of Federal Rule of Criminal Procedure 16(b), expose the basis of the defense to the prosecution in advance of criminal trial, or otherwise prejudice the case.")

[14] *Compare Microfinancial*, 385 F.3d at 78 (denying stay when 5th Amendment concerns were not implicated); *SEC v. Caramadre,* 717 F. Supp. 2d 217 (D.R.I. 2010) (same); *SEC v. K2 Unlimited, Inc.*, 15 F. Supp. 3d at 161 (same); *Sterling Nat'l Bank v. A-1 Hotels Int'l, Inc.*, 175 F. Supp. 2d 573, 578 (S.D.N.Y. 2001) (same) *with In re Worldcom, Inc. Sec. Litig.*, No. 02 CIV. 3288 (DLC), 2002 WL 31729501, at *3 (S.D.N.Y. Dec. 5, 2002). (granting stay because "[a]

bellwether process have invoked the Fifth Amendment. None of the NECC insiders, criminally indicted individuals, or National Defendants remain a party to this litigation. Fifth Amendment concerns are simply not implicated by allowing this case to proceed to trial prior to the criminal case against NECC insiders. It appears no court has ever granted a civil litigant a stay of civil litigation because a criminal prosecution of a third party may impair the ability to obtain discovery from the criminal defendant. In other words, the Saint Thomas Entities' position is unsupported and unprecedented.

The Saint Thomas Entities claim that the criminal trial should move forward is necessary to "discovering the truth" but the examples used by the Saint Thomas Entities are unavailing and red herrings. For example, the Saint Thomas Entities disingenuously claim that the PSC is "defending [the] wrongdoers" by "defending NECC's use of a 15-minute autoclave cycle" (citing the deposition of Laura Thoma for this proposition)."[15] This is not what happened. Ms. Thoma claimed in her Rule 26 expert report that USP 797 *required* 20 minutes of autoclaving, but USP 797 contains no such *requirement* and simply states that the time to achieve sterilization through autoclaving is "*usually* 20 to 60 minutes." Rather than "defend" the wrongdoers, the PSC simply cross-examined Ms. Thoma on her understanding of one of the key documents in this litigation and demonstrated her understanding of that document was not consistent with her claims to be an expert on it.[16]

---

stay is one of several procedures available to the district court to balance the interests of the other parties in moving forward with the litigation against the interests of a defendant asserting Fifth Amendment rights who faces the choice of being prejudiced in the civil litigation if those rights are asserted or prejudiced in the criminal litigation if those rights are waived."); *Bridgeport Harbour Place I, LLC v. Ganim*, 269 F. Supp. 2d 6, 9 (D. Conn. 2002) ("While plaintiff does have a legitimate interest in 'the expeditious resolution' of its case, courts frequently allow other factors, such as a party's Fifth Amendment privilege…to trump a plaintiff's interest.").

[15] Dkt. No. 2786 at Pg. 12.
[16] Dkt. No. 2786-3.

The Saint Thomas Entities also disingenuously claim that PSC has done an "about-face" on the liability of the settling defendants and claim that this is driven "only by the fact that the settlements will not directly reduce the exposure of the remaining healthcare defendants."[17] This is simply false.[18] As the PSC made clear in the bankruptcy proceeding, the PSC reached settlements with the National Defendants in large part because of the difficulty in actually proving any wrongdoing by National Defendants led to the contamination at NECC.[19]

Given the merits, or lack thereof, of the Saint Thomas Entities' position, it is not surprising they have resorted to attacking the integrity of the PSC, but these attacks simply are not borne out by the facts. The reality is that the experts hired by the defendants felt they had sufficient information at the time to opine on the liability of NECC and the National Defendants, and none have submitted a sworn affidavit or other testimony demanding more information before they could opine on these issues. This is not surprising, NECC produced thousands of pages of information, these experts have had numerous conversations with people that worked in

---

[17] Dkt. No. 2786 at Pg. 10.

[18] The Motion contains other assertions that are simply factually false. For instance, the Saint Thomas Entities also incorrectly claim that payments have been made to the Tort Trust including payments to the "Tennessee plaintiffs." Dkt. No. 2786 at P. 10. Not surprising, the Saint Thomas Entities do not cite anything to support this assertion, and it is not clear how the Saint Thomas Entities or their counsel would have knowledge of such payments. The reality is, no payments have been made yet, as the PSC has made repeatedly clear at numerous status conferences. In any event, it's not clear how payments to victims from the Tort Trust in any way relate to whether the criminal prosecution should move forward first, and the Saint Thomas Entities have certainly not pointed to any case suggesting this should be a factor the Court considers.

[19] *In re New England Compounding Pharmacy, Inc.,*, Case No. 12-19882-HJB (Bankr. D. Mass), Dkt. No. 1228, Declaration of Fredric Ellis, at P. 6 ("I believe the prospects for recovery against ARL in litigation are far from certain. While I believe that ARL's negligence would be proven, the issue of causation is more difficult. An inability to prove causation would raise serious issues that may defeat liability entirely."); Dkt. No. 1231, Declaration of Thomas Sobol, Pg. 7 ("While the PSC had a basis for contesting UniFirst's defenses, there were serious questions about the ability to prove that UniFirst directly caused the fungal contamination in the batches of MPA.")

NECC's cleanrooms, and the defendants were able to obtain full discovery over the settling National Defendants.  The criminal trial will likely add nothing to this record, and any gains hardly outweighs the Plaintiffs' rights to an expeditious trial.[20]

In short, the Saint Thomas Entities only have a limited interest in seeing the criminal case go forward first, and certainly fail to cite to a single case similar to the one at bar ordering a stay of civil litigation in such a circumstance.  This factor weighs strongly in favor of moving forward with bellwether trials as planned.

   3. **Convenience of both the civil and criminal courts**

Here, the Court is in a unique position to evaluate this factor given that it is both the Court where the civil litigation trials will go forward and the criminal trials.  The Court knew the timing between the civil and criminal litigation when it first set the bellwether trial schedule, and the Saint Thomas Entities simply provide no basis for the Court to reconsider its position at this late hour.

   4. **The interests of third parties and the public interest weigh in favor the current bellwether trial plan**

The Saint Thomas Entities incorrectly claim that the Government may be prejudiced by the civil trials going first.  As the Court is well aware, the United States Attorney's office has intervened in this civil litigation.[21]  If that office believed the civil trials going forward could harm the criminal prosecution or public interest, the United States Attorney would be seeking the relief the Saint Thomas Entities are now requesting, but it has not.  Additionally, the Saint Thomas Entities offer no declaration or affidavit from any party or counsel to the criminal

---

[20] *Microfinancial*,, 385 F.3d at 78 ("Here, [plaintiff] had an obvious interest in proceeding expeditiously. The defendants had procrastinated throughout, and further delay quite likely would have caused prejudice…The passage of over three years, particularly in view of the large amount in controversy, suggests a need for some celerity.")
[21] Dkt. No. 2209 and 2354.

prosecution that believes this civil litigation proceeding to trial before the criminal proceeding would cause harm in that proceeding.  As a result, the Saint Thomas Entities claim of prejudice to the criminal prosecution in the event that civil trials are tried first simply rings hollow and is utterly without merit.

  5. **This is the Sixth Time The Saint Thomas Entities (or the Nashville Healthcare Defendants) Have Sought a Stay or Delay of These Proceedings**

The Saint Thomas Entities claim the request is made in good faith, and it may be, but it is hardly the first time the Defendants have requested a stay or delay in the Court's scheduling orders.  The Saint Thomas Entities (or their related Defendants) have requested a change or stay in this litigation no less than six times:

| Date | Dkt. No | Docket Text |
| --- | --- | --- |
| 9/26/2013 | 457 | MOTION for Reconsideration re [438] MDL ORDER NO. 7 - FURTHER CASE MANAGEMENT ORDER by Saint Thomas Health, Saint Thomas Network, Saint Thomas West Hospital.(Cicolini, Pietro) |
| 11/25/2013 | 595 | MOTION to Stay Discovery by Saint Thomas Health, Saint Thomas Network, Saint Thomas West Hospital.(Kelly, Sarah) (Entered: 11/25/2013) |
| 05/13/2015 | 1849 | MOTION to Continue Deadline for Common Issue Fact Discovery to September 14, 2015 by Saint Thomas Health, Saint Thomas Hospital West f/k/a Saint Thomas Hospital, Saint Thomas Network.(Kelly, Sarah) (Entered: 05/13/2015) |
| 09/14/2015 | 2245 | MOTION to Continue Common Issue Discovery on Proximate Causation to After Completion of Certain Depositions by Saint Thomas Health, Saint Thomas Hospital West f/k/a Saint Thomas Hospital, Saint Thomas Network.(Kelly, Sarah) (Entered: |

|  |  | 09/14/2015) |
|---|---|---|
| 12/15/2015 | 2510 | Emergency MOTION for Clarification re 2330 Order on Motion to Continue,, Order on Motion for Order, by Vaughan A. Allen, M.D., John Culclasure, Howell Allen Clinic, A Professional Corporation, Saint Thomas Outpatient Neurosurgical Center, LLC, Debra Schamberg.(Tardio, Chris) (Entered: 12/15/2015) |

Repeatedly throughout this litigation the Saint Thomas Entities have requested more time or a stay of discovery or other event.  It is not surprising that on the verge of trial they now seek an indefinite stay of that event.  But, the reality is, after four years of litigation, it is time to start trying these cases.

### III. The Plaintiffs Are Prepared To Meet The Court's Schedule.

The Saint Thomas Entities next claim that the Court's proposed trial schedule is overly ambitious and cannot be accomplished.  The PSC and individual Plaintiffs' counsel are prepared to devote the resources to accomplish this schedule, which is not out of the ordinary in mass-tort MDLs where court's routinely set bellwether trials back-to-back.[22]

### IV. The Court Should Not Reconsider Its Decision To Try Cases In Boston

The Motion closes with a veiled request for the Court to reconsider its earlier decision to try cases in Boston.[23]  However, all of the arguments put forth by the Saint Thomas Entities now were previously considered by the Court and rejected when it determined to try the initial bellwether cases in Boston in its thoughtful and thorough 26 page order from October 2015 of

---

[22] *See e.g.*, *In re General Motors LLC Ignition Switch Litigation*, Case No. 14-MD-2543 at Dkt. Nos. 422 (setting similar bellwether trial schedule as at issue here) (available at http://gmignitionmdl.com/wp-content/uploads/GM-order-25.pdf) and Dkt No. 1694 (same) (available at http://gmignitionmdl.com/wp-content/uploads/order-85.pdf).
[23] Dkt. No. 2786 at P. 19-20

last year.[24] Since then, nothing has changed for the Court to reconsider or change its approach and the PSC urges the Court to follow its previous order on this issue and continue on the path set forward last fall.[25]

## CONCLUSION

For the foregoing reasons, the Court should deny the Saint Thomas Entities' Motion and set firm trial dates for the first bellwether trials against the Nashville Healthcare Defendants with the first case being tried in July of 2016.

Dated April 18, 2016

Respectfully submitted:

**/s/ Benjamin A. Gastel**
J. Gerard Stranch, IV
Benjamin A. Gastel
Anthony A. Orlandi
BRANSTETTER, STRANCH &
JENNINGS, PLLC
223 Rosa L. Parks Ave., Suite 200
Nashville, TN 37203
Telephone:  615/254-8801
Facsimile:  615/255-5419
gerards@bsjfirm.com
beng@bsjfirm.com
aorlandi@bsjfirm.com
*Plaintiffs' Steering Committee*

---

[24] Dkt. No. 2309.
[25] *Id*.

## **CERTIFICATE OF SERVICE**

    I, J. Gerard Stranch, IV, hereby certify that on April 18, 2016, I caused a copy of the foregoing document to be filed electronically via the Court's electronic filing system. Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system, and notice of these filings will be sent to these parties by operation of the Court's electronic filing system.

                                               **/s/ Benjamin A. Gastel**
                                               Benjamin A. Gastel