**Condensed Transcript**

In the Matter Of:

NEW ENGLAND COMPOUNDING PHARMACY INC. PRODUCTS LIABILITY

## VIDEOTAPED DEPOSITION OF

## JAMES D. CATHEY

*March 09, 2016*



100 Mayfair Royal
181 Fourteenth Street
Atlanta, GA 30309
404.847.0999

```
 1                UNITED STATES DISTRICT COURT
 2                  DISTRICT OF MASSACHUSETTS
 3
 4
 5   IN RE:  NEW ENGLAND COMPOUNDING
 6   PHARMACY, INC. PRODUCTS LIABILITY
 7   LITIGATION
 8                          MDL No. 2419
 9                          Docket No. 1:13-md-2419 (RWZ)
10
11   THIS DOCUMENT RELATES TO:
12
13
14
15   ALL CASES
16
17
18                   VIDEOTAPED DEPOSITION
19                  BY WRITTEN QUESTIONS OF
20                     JAMES D. CATHEY
21                      March 9, 2016
22
23
24
25
```



DISCOVERY LITIGATION SERVICES
Court Reporting • Videography • Trial Presentations
Nationwide Coverage

100 Mayfair Royal
181 Fourteenth Street
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

NEW ENGLAND COMPOUNDING PHARMACY INC. PRODUCTS LIABILITY
VIDEOTAPED DEPOSITION OF JAMES D. CATHEY on 03/09/2016      Pages 2..5

### Page 2

```
 1   APPEARANCES:
 2      FOR THE EAST TENNESSEE CHILDREN'S HOSPITAL:
 3      BRUCE ANDERSON, ESQUIRE
        Vice President Legal Services
 4      General Counsel
        2018 Clinch Avenue
 5      Knoxville, Tennessee 37916-2301
 6
 7
 8                     INDEX
 9
                                              Page No.
10
11   Examination,                                  5
        Written questions by Premier
12
     Examination,                                 11
13      Written questions by 10 Key Defendants
```

### Page 3

```
                     EXHIBITS
                                                  Page
Exhibit 1------------------------------------------12
   Notes

Exhibit 2------------------------------------------17
   Sutton Article, "GMP & Compounding Pharmacies"
Exhibit 3------------------------------------------22
   Consent Order

Exhibit 4------------------------------------------23
   Warning Letter
Exhibit 5------------------------------------------27
   Sellers Article, "Pharmacy Compounding Primer for
Physicians"
Exhibit 6------------------------------------------28
   J. G. Whelan Article "Subpotency of a
   Compounded Budesonide for a Nebulization Product
   in a Patient w/ Poorly Controlled Asthma

Exhibit 7------------------------------------------29
   USP Gap Analysis Tool
```

### Page 4

STIPULATION

The video-taped deposition of James D. Cathey, called as a witness, taken pursuant to Rule 31, of the Federal Rules of Civil Procedure, and taken by agreement on the 8th day of March, 2016, at the offices of Children's Hospital, 2018 Clinch Avenue, Administrative Conference Room, Knoxville, Tennessee, before Verna Mansfield.

VIDEOGRAPHER: Okay. We are on the record. This is tape number one to the video deposition of Mr. Jim Cathey, taken in the matter of New England Compounding Pharmacies, Incorporated, product litigation -- product liability litigation, excuse me. This deposition is being held at the Children's Hospital in Knoxville, Tennessee. Today's date is March 9th, 2016, and the time on the camera is 10:01 a.m. My name is Eric Tracey; I'm the videographer. The court reporter is Mrs. Verna Maxwell (sic), and counsel will now identify themselves for the record.

MR. ANDERSON: Okay. This is Bruce Anderson and I am the vice-president for legal services and general counsel for East Tennessee Children's Hospital.

Before we begin, if it's okay, I'd like to make a comment on the record. We have received these questions in advance and Mr. Cathey has had a chance to review those. A lot of the questions ask him to read out loud articles and we see no purpose in doing that. We'll stipulate at the time that the article says whatever it says and then he can answer the

### Page 5

question related to that article, but to simply read these out loud seems to serve no purpose other than taking his time away from taking care of the kids here at the hospital. So I just want everybody to be aware of how we're going to handle that in advance.

EXAMINATION
BY WRITTEN QUESTIONS:

JAMES D. CATHEY,
Called as a witness, being first duly sworn was examined and testified as follows:

Q. Please state your name.
A. My name is James D. Cathey.
Q. Please provide your complete address and phone number with the area code.
A. My address is 2109 Woodmere Lane, Knoxville, Tennessee 37902. My phone number is 865-579-6355.
Q. Do you work at East Tennessee Children's Hospital?
A. Yes.
Q. What is your current position?
A. Pharmacy director.
Q. How long have you held that position?
A. Ten years.
Q. Please describe your job duties at East Tennessee Children's Hospital.



Discovery Litigation Services
Court Reporting • Videography • Trial Presentations
Nationwide Coverage

100 Mayfair Royal
181 Fourteenth Street
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

NEW ENGLAND COMPOUNDING PHARMACY INC. PRODUCTS LIABILITY
VIDEOTAPED DEPOSITION OF JAMES D. CATHEY on 03/09/2016                    Pages 6..9

### Page 6

1  A. I manage the pharmacy operations. I manage a staff of
2  roughly 62 people. We provide clinical services and
3  distributive drug services to the children of your hospital.
4  Q. Please provide a brief summary of your educational and
5  employment background, leading up to your present position at
6  East Tennessee Children's Hospital.
7  A. I graduated from the University of Tennessee College
8  of Pharmacy in 1972. I have been in positions in pharmacy since
9  that time that have included a teaching position at LeBonheur.
10 I started as a pharmacist at LeBonheur and as I finished my
11 time, 23 years at LeBonheur, I ended it not in pharmacy, I was
12 director of peri-operative services, but I spent -- out of 23
13 years, I spent roughly 20 of those years in pharmacy that took
14 me to assistant director.
15     I was also director of the outpatient pharmacy that we
16 opened. I have been pharmacy director at Bedford County General
17 Hospital for a year and a half. I have also been assistant
18 director of pharmacy at St. Jude Children's Research Hospital in
19 Memphis, Tennessee for five years, and then I have been here for
20 ten.
21     Probably the first year that I was out of school, from 1972
22 to '73 I worked for Super X Retail Drugs in Cookeville,
23 Tennessee.
24 Q. Please provide a general description of your facility.
25 A. We are a 152 bed hospital. We've got somewhere

### Page 7

1  roughly between 300 and 400 physicians that have attending
2  privileges here. We've got in the neighborhood of 20 to 22
3  clinical specialties that we provide for our patients. We are a
4  community children's hospital that serves the East Tennessee
5  region.
6  Q. By virtue of your role at East Tennessee Children's
7  Hospital, are you familiar with East Tennessee Children's
8  Hospital's medication purchasing practices?
9  A. I am.
10 Q. Please describe the basis for your familiarity with
11 East Tennessee Children's Hospital's medication purchasing
12 practices; example, is it from personal knowledge? Have you
13 spoken with persons at East Tennessee Children's Hospital or
14 reviewed documents?
15 A. As the pharmacist in charge for East Tennessee
16 Children's Hospital pharmacy, I'm directly responsible for
17 purchasing as part of my job description.
18 Q. For the years 2010 through 2012, did East Tennessee
19 Children's Hospital purchase medications offered for sale by
20 Medical Sales Management and/or New England Compounding Center
21 and made by the New England Compounding Center, hereinafter
22 referred to as "NECC"?
23 A. Yes.
24 Q. Please describe the timeframes that East Tennessee
25 Children's Hospital purchased medications from NECC and what

### Page 8

1  medications were purchased.
2  A. We purchased medications starting in August of 2010.
3  The last purchase order was placed on October 2nd of 2012.
4  These included eight drugs, and I don't have the list in front
5  of me, but they did include the Ciprofloxacin and Dexamethasone
6  ear drops. They included Lasix, they included other
7  single-entity injectable drugs, and one multi-dose vial of a
8  drop that was used by our ophthalmologist in his office
9  practice.
10 Q. Prior to purchasing medications from NECC, did a
11 representative of East Tennessee Children's Hospital perform an
12 in-person inspection of NECC's compounding facility?
13 A. No.
14 Q. Prior to purchasing medications from NECC, did East
15 Tennessee Children's Hospital conduct research into whether NECC
16 had recalled any medications made by NECC?
17 A. No.
18 Q. Prior to purchasing medications from NECC, did East
19 Tennessee Children's Hospital conduct research into whether NECC
20 had ever been named as a defendant in a products liability
21 lawsuit?
22 A. No.
23 Q. Prior to purchasing medications from NECC, did East
24 Tennessee Children's Hospital request information from the
25 Massachusetts Board of Registration in Pharmacy, the "Board"

### Page 9

1  about previous disciplinary actions taken by the Board against
2  NECC?
3  A. No.
4  Q. Prior to purchasing medications from NECC, did East
5  Tennessee Children's Hospital submit a Freedom of Information
6  Act request to the FDA for documentation of disciplinary actions
7  and/or warnings issued to NECC by the FDA?
8  A. No.
9  Q. Prior to purchasing medications from NECC, did East
10 Tennessee Children's Hospital search the FDA website for
11 information about NECC?
12 A. No.
13 Q. Prior to purchasing medications from NECC, did East
14 Tennessee Children's Hospital review transcripts from or
15 summaries of any U.S. Congressional hearings on compounding
16 pharmacies?
17 A. No.
18 Q. At the time of East Tennessee Children's Hospital's
19 purchases from NECC, did East Tennessee Children's Hospital have
20 a policy and/or procedure in place prohibiting purchases from
21 compounding pharmacies?
22 A. No.
23 Q. Please describe any representations Medical Sales
24 Management and/or NECC made to East Tennessee Children's
25 Hospital prior to East Tennessee Children's Hospital purchasing


DISCOVERY LITIGATION SERVICES
Court Reporting • Videography • Trial Presentations
Nationwide Coverage

100 Mayfair Royal
181 Fourteenth Street
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

NEW ENGLAND COMPOUNDING PHARMACY INC. PRODUCTS LIABILITY
VIDEOTAPED DEPOSITION OF JAMES D. CATHEY on 03/09/2016                    Pages 10..13

Page 10

1  medications from NECC.
2     A.  NECC negotiated contracts with a buying group that
3  represented many of the children's hospitals. That buying group
4  was called Child Health Corporation of America, and once they
5  were approved to provide those services, we entered into an
6  agreement with NECC, based on them being an approved vendor.
7     Q.  In deciding to purchase medications from NECC, did
8  East Tennessee Children's Hospital take into consideration any
9  representations from Medical Sales Management and/or NECC
10 regarding its ability to provide a consistent supply of safe
11 medications?
12    A.  This was one of the conditions that allowed them to
13 win the award with the Child Health Corporation of America,
14 because they gave evidence to our purchasing group that they
15 could provide the supply.
16    Q.  Prior to purchasing from NECC, did East Tennessee
17 Children's Hospital research compounding pharmacies in CDC
18 literature, USA TODAY, FDA literature, or on YouTube?
19    A.  No.
20    Q.  To the best of your knowledge, did any of East
21 Tennessee Children's Hospital's patients experience an injury as
22 a result of East Tennessee Children's Hospital's purchase, and
23 use, of medications from NECC which were administered to East
24 Tennessee Children's Hospital's patients?
25    A.  No.

Page 11

1     (The following questions are submitted by the plaintiff
2  steering committee.)
3     Q.  When did you receive the written deposition questions
4  that were served upon you?
5     A.  These deposition questions came to me a week ago this
6  past Monday.
7     Q.  As this is a deposition upon written questions, you
8  have been provided in advance with every question that will be
9  asked of you today, correct?
10    A.  Yes.
11    Q.  Is it correct that you had an opportunity to consult
12 with an attorney in drafting the answers of those written
13 questions?
14    A.  I reviewed what we would do, with Bruce Anderson, our
15 vice-president of legal services.
16    Q.  And an attorney assisted you in preparing answers to
17 the written questions, correct?
18    A.  He prepared me for this meeting.
19    Q.  What is the attorney's name?
20    A.  Bruce Anderson.
21    Q.  And you understand that one of the limitations of a
22 deposition upon written questions is that we do not know what
23 your answers will be when we drafted the questions that we
24 submitted?
25    A.  I understand.

Page 12

1     Q.  Did you or your attorney have any conversations or
2  other communications with any of the attorneys representing Box
3  Hill, Premier or Saint Thomas Outpatient Neurosurgical Center?
4     A.  I have not.
5     Q.  Did you or your attorney have any conversations or
6  other communications with any insurers of Box Hill, Premier, or
7  Saint Thomas Outpatient Neurosurgical Center?
8     A.  I have not.
9     Q.  Did you or your attorney have any conversations or
10 other communications with any person employed or associated with
11 Box Hill, Premier, or Saint Thomas Outpatient Neurosurgical
12 Center?
13    A.  I have not.
14    Q.  Do you have with you any written answers or written
15 notes to answer the written questions which were served upon
16 you?
17    A.  I've got one or two annotations on this document that
18 I can give you.
19    MR. ANDERSON:  And this document being the written
20 questions that were provided previously.
21    COURT REPORTER:  I need to mark that as Exhibit 1.
22    (The notes were marked as Exhibit No. 1.)
23    Q.  What documents did you review in preparing your
24 answers or notes to the written questions served upon you?
25    A.  I reviewed Exhibit 3, the deposition packet.

Page 13

1     Q.  Did anyone assist you in preparing these written
2  answers or notes?
3     A.  No.
4     Q.  If I understand it correctly, East Tennessee
5  Children's Hospital, which I will refer to as "ETCH," ordered
6  seven types of drugs from NECC, correct?
7     A.  We ordered eight.
8     Q.  What drugs did you purchase?
9     A.  I can provide that list. I don't have them here.
10    Q.  During what years did you purchase each one?
11    A.  From August of 2010 through September -- actually our
12 last purchase was October of 2012.
13    Q.  Is it correct that ETCH never purchased any
14 preservative-free --
15    A.  Methylprednisolone acetate.
16    Q.  -- methylprednisolone acetate, which I refer to as
17 "MPA" from NECC?
18    A.  Correct.
19    Q.  ETCH placed an order Ciprofloxacin/Dexamethasone
20 0.3%/0.1% Suspension, 1 ML dropper in September 2012, correct?
21    A.  Correct.
22    Q.  What is this drug used for?
23    A.  It is an ear drop that contains an antibiotic and a
24 steroid that is used after ENT, ear, nose and throat surgery, to
25 prevent infection and to reduce inflammation and swelling.


DISCOVERY LITIGATION SERVICES
Court Reporting • Videography • Trial Presentations
Nationwide Coverage

100 Mayfair Royal
181 Fourteenth Street
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com