UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


IN RE:  NEW ENGLAND COMPOUNDING    )  MDL NO. 13-02419-RWZ
PHARMACY CASES LITIGATION          )
                                   )
                                   )
                                   )
                                   )
                                   )
                                   )

       BEFORE:  THE HONORABLE RYA W. ZOBEL AND
                THE HONORABLE JENNIFER C. BOAL



**STATUS CONFERENCE**




John Joseph Moakley United States Courthouse
Courtroom No. 12
One Courthouse Way
Boston, MA 02210


April 14, 2016
2:00 p.m.



Catherine A. Handel, RPR-CM, CRR
Official Court Reporter
John Joseph Moakley United States Courthouse
One Courthouse Way, Room 5205
Boston, MA 02210
E-mail: hhcatherine2@yahoo.com

1      APPEARANCES:

2

3      For The Plaintiffs:

4           Hagens, Berman, Sobol, Shapiro LLP, by KRISTEN A. JOHNSON, ESQ., 55 Cambridge Parkway, Suite 301, Cambridge, Massachusetts 02142;

5

6           Janet, Jenner & Suggs, LLC, KIMBERLY A. DOUGHERTY, ESQ., 75 Arlington Street, Suite 500, Boston, Massachusetts 02116;

7           Crandall & Katt, by PATRICK THOMAS FENNELL, ESQ., 366 Elm Avenue, SW, Roanoke, Virginia 24016;

8

9           Branstetter, Stranch & Jennings, PLLC, by J. GERARD STRANCH, IV, ESQ., 227 Second Avenue North, Nashville, Tennessee 37201-1631;

10

11          Ellis & Rapacki LLP, by FREDRIC L. ELLIS, ESQ., 85 Merrimac Street, Suite 500, Boston, Massachusetts 02114;

12          Lieff Cabraser Heimann & Bernstein, LLP, by ANNIKA K. MARTIN, ESQ., 250 Hudson Street, 8th Floor, New York, New York 10013-1413;

13

14          Lieff Cabraser Heimann & Bernstein, LLP, by MARK P. CHALOS, ESQ., 150 Fourth Avenue North, Suite 1650, Nashville, Tennessee 37219;

15

16          Law Office of Peter G. Angelos, P.C., by PATRICIA J. KASPUTY, ESQ., 100 North Charles Street, 22nd Floor, Baltimore, Maryland 21201 (appearing telephonically).

17

18

19

20      FOR PAUL D. MOORE, IN HIS CAPACITY AS CHAPTER 11 TRUSTEE OF NECP, INC.:

21          Duane Morris LLP by MICHAEL R. GOTTFRIED, ESQ., 100 High Street, Suite 2400, Boston, Massachusetts 02110-1724;

22

23

24      (Appearances continued on the next page.)

25

```
 1        APPEARANCES (Cont'd):

 2

 3       FOR THE DEFENDANTS:

 4

 5            Fulbright & Jaworski, LLP, by MARCY H. GREER, ESQ., and
         ERIC J. HOFFMAN, ESQ., 98 San Jacinto Boulevard, Suite 1100,
 6       Austin, Texas 78701;

 7

 8            Gideon, Cooper & Essary, PLC by CHRIS J. TARDIO, ESQ., and
         C.J. GIDEON, JR., ESQ., 315 Deaderick Street, Suite 1100,
         Nashville, Tennessee 37238;
 9

10            Pessin Katz Law, P.A., by GREGORY K. KIRBY, ESQ., 901
         Dulaney Valley Road, Suite 500, Towson, Maryland 21204;
11

12            Law Offices of Jay Blumberg, by CHRISTOPHER M. WOLK, ESQ.,
         158 Delaware Street, P.O. Box 68, Woodbury, New Jersey 08096.
13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S

 2         (The following proceedings were held in open court before

 3   the Honorable Rya W. Zobel, United States District Court Judge,

 4   and the Honorable Jennifer C. Boal, Magistrate Judge, United

 5   States District Court, District of Massachusetts, at the John J.

 6   Moakley United States Courthouse, One Courthouse Way, Boston,

 7   Massachusetts, on April 14, 2016.)

 8              JUDGE ZOBEL:  Good afternoon.  Please be seated.

 9              COURTROOM DEPUTY CLERK URSO:  This is In Re:  New

10   England Compounding.  It's 2013-MD-2419.

11              JUDGE ZOBEL:  Good afternoon, all.  Thank you for

12   your, as always, good agenda.  And I guess the question I have

13   is, do we need to hear argument on both of these motions?

14              MS. JOHNSON:  The first motion, your Honor, plaintiff

15   is represented by Ms. Patty Kasputy, who is on the telephone.

16   She asked to appear by telephone.  Ms. Kasputy may have an

17   opinion.

18              JUDGE ZOBEL:  Who is appearing for Box Hill?

19              MR. KIRBY:  Your Honor, Greg Kirby on behalf of Box

20   Hill Surgery Center and related entities, and I would defer to

21   the Court --

22              JUDGE ZOBEL:  Hold it one second.  I need to...

23              (Pause.)

24              JUDGE ZOBEL:  Here it is.  You're Mr. Kirby?

25              MR. KIRBY:  I am, yes, still.
```

1          JUDGE ZOBEL:  Who else needs to be heard on this?

2          MS. JOHNSON:  Ms. Kasputy, who is on the telephone.

3          MS. KASPUTY:  Good afternoon, your Honor.  This is

4    Patty Kasputy.  I'm willing to submit on the briefs if the

5    defendants' counsel is also willing to do so.

6          JUDGE ZOBEL:  You have a chance to be gentle with me.

7          MR. KIRBY:  I'm sure you've read everything and

8    you're up to speed and you probably know everything there is

9    to know about the law in that aspect.  So, if that's what you

10   would like --

11         JUDGE ZOBEL:  If that's the basis for your not

12   arguing...

13         (Laughter.)

14         JUDGE ZOBEL:  So, are you prepared to waive argument

15   as well?  I mean, your briefs are very good, both of you.

16         MR. KIRBY:  Thank you.  I'm prepared to waive if

17   that's what the Court would prefer.

18         JUDGE ZOBEL:  Ms. Kasputy, do you as well?

19         MS. KASPUTY:  I am.  And thank you, your Honor.

20         JUDGE ZOBEL:  Thank you both, and I will take the

21   matter under advisement.

22         Now, we come to the next one, which is the

23   plaintiffs' motion for reconsideration of the order.  Mr.

24   Stranch, are you going to argue?

25         MR. STRANCH:  Mr. Chalos will be arguing this one,

```
1    your Honor.
2              JUDGE ZOBEL:  And you want to argue?
3              MR. CHALOS:  Your Honor, we would like to be heard
4    briefly on this.
5              JUDGE ZOBEL:  Who will argue on behalf of the
6    defendant?
7              MR. GIDEON:  C.J. Gideon on behalf of the Tennessee
8    Clinic Defendants, your Honor.
9              JUDGE ZOBEL:  Okay.  I'll hear you, briefly.
10             MR. CHALOS:  Okay.  Your Honor, we're in the
11   unenviable and always uncomfortable position of asking your
12   Honor to reconsider a ruling that you've already made, and I
13   don't intend to belabor the underlying issues about why we
14   think that --
15             JUDGE ZOBEL:  We're very hardened to criticism.
16             MR. CHALOS:  Right.  Well, we don't intend to belabor
17   the issue of why we think this order should be reconsidered
18   and why we think the results should be different, but we do.
19             The thrust of our argument is that we believe these
20   statutes can be read in harmony.  We believe they should be
21   read in harmony, and in the absence of definitive appellate
22   guidance, which I think is where we find ourselves on this
23   after hearing what everybody said about it, your Honor
24   initially was inclined to go our way and your Honor's order
25   from 2014, your Honor --
```

```
 1              JUDGE ZOBEL:  I've learned something since then.

 2              MR. CHALOS:  I'm sorry?

 3              JUDGE ZOBEL:  I've learned something since then.

 4              MR. CHALOS:  Fair enough.

 5              JUDGE ZOBEL:  I will learn something today, too.

 6              MR. CHALOS:  I hope so in this regard, but we do have

 7    an absence of definitive appellate guidance, I think, on this

 8    issue.  The defendants have said here that it's clear under

 9    Tennessee law which way it should come out.  They told the

10    District Court in Nashville that it's not so clear and that

11    the Tennessee Supreme Court should decide this certified

12    question, and it is a complicated question.  There are a

13    number of different principles at work here.  We have two

14    statutes that have been amended recently, relatively speaking.

15              JUDGE ZOBEL:  If we do this, we have no trials coming

16    up, right?

17              MR. CHALOS:  I'm sorry?

18              JUDGE ZOBEL:  There will be no trials because it will

19    totally upset the trial schedule.

20              MR. CHALOS:  If we do what?

21              JUDGE ZOBEL:  If you win on the reconsideration.

22              MR. CHALOS:  I don't think so.  And here's my

23    suggestion, your Honor:

24              I think there is a way forward that everyone -- you

25    know, both we and the defendants can believe they're correct
```

1    and your Honor need not make a decision at this point that is

2    irreparable, and our solution -- proposed solution is what we

3    put forth in our papers, which is your Honor can send both

4    claims to the jury.  It would be the addition of one or two

5    questions to the jury Verdict Form.  The proof would be

6    virtually identical.  We went -- we've lined out our proof as

7    we're preparing for trial and I think we would possibly add

8    one witness to address some of the unique issues under the --

9    whether the product was sold under the Medicare guidelines and

10   the paying -- the provisions that govern the paying for

11   Medicare and the insurance companies to the healthcare

12   provider, but, otherwise, it's basically exactly the same

13   proof, and if we're correct and the jury finds that there is a

14   sale of a product here and that the product was defective or

15   reasonably -- unreasonably dangerous, then we've got a jury

16   finding on it.

17          Conversely, if we don't send that claim to the jury

18   and the First Circuit or the Tennessee Supreme Court later

19   determines that -- that that is a viable claim, as we think it

20   is, we'd have to redo all the trials.  We'd have to redo

21   the --

22          JUDGE ZOBEL:  Why?

23          MR. CHALOS:  -- Bellwethers.

24          JUDGE ZOBEL:  If you win on one piece of it, you're

25   not going to redo it to win on the other piece, too, are you?

1   I mean, the damages would be the same regardless.

2           MR. CHALOS:  The damages would be the same, but

3   here's the scenario we want to avoid:

4           If we go to trial and we do not have both claims

5   submitted to the jury, there's no product claim, and it turns

6   out these statutes can be read in harmony, and that's what

7   either the First Circuit or the Tennessee Supreme Court

8   decides, and the damages would be calculated differently under

9   the Product Liability Act --

10          JUDGE ZOBEL:  Because it's a comparative negligence

11   issue.

12          MR. CHALOS:  It's a comparative negligence issue and

13   under the Product Liability Act, the -- there's strict

14   liability.  So, joint and several on the seller because

15   there's a bankruptcy.  The manufacturer is in bankruptcy under

16   that -- under that act.

17          JUDGE ZOBEL:  Okay.

18          MR. CHALOS:  So, you know, conversely, if we submit

19   it to the jury, the jury may find there is no product sale

20   here and we lose, and that's it.  It's a non-event.  The jury

21   might find that there is a sale product, in which case we

22   would have to elect our remedies, but either way, I assume,

23   however these trials come out, one side or the other will

24   appeal.

25          So, there will be an appellate court, either the

First Circuit or the Tennessee Supreme Court, through a

certified question, which is in the works in the District

Court in Tennessee.  One way or another, we are going to get

an appellate decision at some point, presumably, and the safer

course here, we suggest, is the no-harm course of submitting

it to the jury.  The jury may straighten it all out and may

never be an issue, but we want to give them the opportunity to

consider that claim, and that's the most prudent course and

that's the course we think that will conserve the resources of

the Court and the parties rather than put us in a position

where we may have to review all the Bellwethers to find out

whether the jury would find there's a product liability claim

here, assuming the appellate courts agree with us.

So, we would propose that your Honor need not decide

the substantive issue at this point and, rather, just add a

question or two on the jury Verdict Form.

JUDGE ZOBEL:  I should pretend --

MR. CHALOS:  I'm sorry?

JUDGE ZOBEL:  I should just pretend that it's there.

MR. CHALOS:  Well, not pretend.  Allow us to go to

the jury on competing theories of liability, which we've given

your Honor in our reply, you know, half a dozen or more cases

where there's a product liability claim and there are other

claims as well.

In fact, in your Honor's order, you cited the *Greene*

1    *vs. Brown & Williamson* case out the Western District of

2    Tennessee and that's exactly what happened.  There's a product

3    liability claim there and there's also a civil conspiracy and

4    a fraud claim that also was viable.

5         So, the fact that you have a product liability claim

6    and a negligence claim under a different theory go to the jury

7    is not -- doesn't require any pretending.  It's just under

8    Tennessee law it's permissible.  So, we think that's the more

9    prudent course here.

10         JUDGE ZOBEL:  Okay.  Mr. Gideon.

11         MR. GIDEON:  Yes, your Honor.

12         We characterize what Mr. Chalos asked you to do

13    differently.  We think he's asking you to take an uncharted

14    course.  I respectfully submit that he is incorrect in

15    suggesting that the provisions in the Tennessee Products

16    Liability Act can be reconciled with those in the Tennessee

17    Healthcare Liability Act.  If you will look at Pages 5 and 6

18    of our brief, you can see how they are completely

19    irreconcilable, as you held in your opinion.

20         In addition, the issue is not untouched by the

21    appellate courts in Tennessee.  Although they did not address

22    *Ellithorpe vs. Weismark*, in effect, they're asking you to

23    ignore it and act as if it hadn't been decided.  In October of

24    2015, our Supreme Court provided the guidance that said that

25    the Tennessee Healthcare Liability Act governs all claims

1    against a licensed healthcare provider related to the delivery

2    of healthcare services.

3         If there was any question about that following the

4    *Ellithorpe* decision, there's been another decision, February

5    10, 2016, which is entitled *Osunde vs. Delta Area Medical*

6    *Center*, 2016 WestLaw 537075.  In that case, just like Mr.

7    Chalos, the plaintiff's lawyer said the only injury in this

8    case comes from a radiology tech using a defective stool.  It

9    didn't have safety grids on it and wasn't even.  So, it

10   involved a product which ostensibly was sold to the plaintiff

11   by virtue of the aggregate charge.

12        The plaintiff's lawyer said I'm not making any

13   malpractice claims, any professional liability claims.  The

14   Court of Appeals in opinion February 10th, 2016, held it falls

15   within the scope of the Tennessee Healthcare Liability Act and

16   it provides the entire set of rules governing the claim.

17        So, we respectfully submit that you were right the

18   first time.  The *Osunde* case establishes that you are right

19   again today, and no matter what your skill is on the bench,

20   you could not adequately or accurately instruct a jury in a

21   case like this if you permitted them to proceed on the

22   products liability claims at the same time as the professional

23   liability claims.  They are absolutely inextricably and

24   totally at odds with each other, and that's what you held

25   originally.  That's what you should stand by.

1          JUDGE ZOBEL:  Okay.  I was just wondering about

2     instructing the jury.  The U.S. Attorney in this district

3     tends to bring lengthy indictments with many, many RICO

4     counts, conspiracy, substantive, relying on predicate offenses

5     that are state law offenses.  I don't how many different

6     offenses I've charged in one case, but it's not impossible.

7     One can do it.  I think the more difficult part is really how

8     you present the evidence when you have to.

9          MR. GIDEON:  But if -- for example, expert testimony

10    is not required in a products liability case.  Expert

11    testimony is, by law, required in a healthcare liability case

12    that deals with application on the standard of care.

13          If you gave a stripped-down instruction to the jury

14    to ask them to determine were the defendants at fault, like

15    they do in Kentucky, but charge them on products liability,

16    charge them on professional liability, we wouldn't know the

17    basis for the decision.  They would have to be instructed --

18          JUDGE ZOBEL:  No.  You would because they would have

19    to answer questions.

20          MR. GIDEON:  Oh, yes, but --

21          JUDGE ZOBEL:  And the questions would be parsed to

22    the different claims and defenses.

23          MR. GIDEON:  But, as you have previously held, the

24    substantive law of Tennessee governs this case.

25          JUDGE ZOBEL:  No, I'm not fighting with you about

1    that.  I was just trying to figure out whether, indeed, as a

2    practical matter, one can follow the plaintiffs' suggestion.

3             MR. GIDEON:  I think it would be impossible.  If you

4    look at Pages 5 and 6 of our brief of the differences between

5    the substantive law and giving your Honor credit for a number

6    of years on the bench, I don't think a jury could be

7    adequately instructed, given the huge differences in

8    substantive law between the two, the Products Liability Act

9    and the Healthcare Liability Act.  I don't think it could be

10   done without leaving a jury confused and in truly uncharted

11   territory.

12            JUDGE ZOBEL:  Okay.  Thank you.

13            MR. CHALOS:  And, your Honor, if I just may say one

14   other thing.

15            We submitted a proposed jury Verdict Form with our

16   reply brief to demonstrate how this can be parsed through with

17   the jury, and if your Honor would like, we're certainly happy

18   to take a first cut at some jury instructions, but we think --

19   we submitted to your Honor half dozen or more cases where

20   juries are instructed on negligence, which is what he's

21   talking about under the Healthcare Liability Act, and strict

22   liability.  It happens all the time and jurors tend to get it

23   right.

24            JUDGE ZOBEL:  Okay.  I will take the papers.

25            MR. GIDEON:  May I --

1          JUDGE ZOBEL:  Another chance?

2          MR. GIDEON:  May I have 30 seconds, please?

3          JUDGE ZOBEL:  Ten.

4          MR. GIDEON:  Thank you.  15?

5          All of the cases that were submitted to you, not one

6    of them dealt with the circumstances here of a claim against a

7    healthcare provider.  They rely on a whole series of cases

8    against auto manufacturers where the Tennessee Products

9    Liability Act contemplates strict liability and negligence and

10   warranty claims be tried together.  Not one of those deals

11   with the circumstances here where the Tennessee Healthcare

12   Liability Act of 2012 clearly applies.

13         JUDGE ZOBEL:  Okay.

14         MR. GIDEON:  Thank you.

15         JUDGE ZOBEL:  I will take the papers.

16         Now, we have another one, which is not part of this

17   paragraph, Tennessee Clinic Defendant's motion to dismiss

18   pursuant to Rule 37 and 12(b)(6).  Do I need to hear argument

19   on that?  It shows up, Ms. Johnson, I think on the last page

20   of the --

21         MR. GIDEON:  Are these case specific to the Tyree

22   case, your Honor?

23         JUDGE ZOBEL:  I think so.  It's No. 2798 on the

24   docket.  Yes, Tyree.

25         MR. GIDEON:  Yes.  I am perfectly comfortable with

1    the Court deciding that on the papers that have been

2    submitted.  We filed those into this.  They've been pending

3    for some time.  If you wish to hear argument on anything, I

4    will.

5              JUDGE ZOBEL:  I do not.  The only question for me is

6    whether Judge Boal or I will decide it.

7              MR. GIDEON:  But it is entirely ripe for the

8    collective Courts' decision.

9              JUDGE ZOBEL:  Okay.  Thank you.

10             Now, those are the only motions that I know about as

11   to which we were to hear or not hear argument today, correct?

12             MS. JOHNSON:  Yes, your Honor.

13             JUDGE ZOBEL:  So, now we go to the next part of your

14   agenda, which is (B), the report to the Court.

15             MS. JOHNSON:  Thank you, your Honor.

16             On Item No. 1, Mr. Gottfried will give us an update

17   on the status of the bankruptcy.

18             MR. GOTTFRIED:  Good afternoon, your Honors.

19             JUDGE ZOBEL:  Good afternoon.

20             MR. GOTTFRIED:  Two matters to report on:

21             The first one is with respect to the progress on

22   completing the various tasks under the settlement.  The post

23   confirmation officer has been working diligently with the

24   relevant parties to get the tax returns filed, which are the

25   condition precedent to obtaining refunds, which will

1    ultimately benefit the estate.  So, that work is ongoing.

2              JUDGE ZOBEL:  Tax returns for the defendants?

3              MR. GOTTFRIED:  Yes.  So, that's taking up a good

4    deal of --

5              (Noise coming from telephone speaker.)

6              JUDGE ZOBEL:  Anybody commenting or sneezing?

7              (No response.)

8              MR. GOTTFRIED:  The second thing I just wanted to

9    make the Court aware of is that I think we're getting to the

10   end of the late-filed proof -- proofs of claim.  Judge Boroff

11   allowed five today.  The post confirmation officer, again, has

12   been diligently working with the parties to get that process

13   completed.  Three parties were granted extensions by Judge

14   Boroff, and I think we're getting to the end of that process

15   as well.  Thank you.

16             JUDGE ZOBEL:  So, is there some sense now as to when

17   there might be distributions, at least initial distributions

18   from the trust fund?

19             MR. GOTTFRIED:  I would defer that question to the

20   PSC.

21             MR. ELLIS:  Your Honor, this is dependent on clearing

22   the liens and Medicare.  So, if we're able to reach a solution

23   -- and we have made significant progress with Medicare.  If we

24   are able to reach a solution in the next, say, two, three,

25   four weeks --

1          JUDGE ZOBEL:  Is Medicare making claims against the

2     trust fund?

3          MR. ELLIS:  Yes, they have Medicare secondary payor

4     statute claims.

5          JUDGE ZOBEL:  So, they, too, have to do it claimant

6     by claimant?

7          MR. ELLIS:  Well, we have to determine -- they have

8     to determine at least Medicare eligibility for each of the

9     claims before payments can be made.  That is actually in

10    process for the first 1200 claims.

11         JUDGE ZOBEL:  Well, did Medicare, in fact, pay for

12    some of the healthcare that the plaintiffs got?

13         MR. ELLIS:  Yes.  The average -- the median age of

14    the victims at the time of the outbreak was 64 years old.  So,

15    we have -- and a lot of the victims were on Social Security

16    Disability income.  So, Medicare did -- the rates are pretty

17    high and, yes, they covered a lot of medical costs.

18          So, if that can get resolved -- we've been talking to

19    them.  We've been talking to two law firms that represent

20    about 75 to 80 percent the private insurance companies.  If we

21    can get this resolved in the next two to three weeks, it is

22    conceivable that payments could possibly go out maybe the end

23    of June, early July.  If these negotiations fail, then each

24    lien, each Medicare claim is going to have to be resolved

25    individually and that will delay things.  So, that's where we

1 are right now.

2  MS. JOHNSON:  I should caveat for all the plaintiffs'

3 attorneys on the phone that that would be the first wave of

4 payments.  It would not be an entire payment and it would only

5 be payments for those whose claims have been fully approved as

6 of now.  So, it will be a staggered process over time with

7 multiple payments issued, particularly, as Mr. Gottfried

8 referred to, if and when there are tax refunds received, those

9 go into the pot.  That is potentially another payment down the

10 road.

11  JUDGE ZOBEL:  Thank you.

12  MR. GOTTFRIED:  Thank you, your Honor.

13  MS. JOHNSON:  That brings us to agenda Item No. 2,

14 status of the insurance declaratory judgment actions, which

15 Mr. Stranch will address.

16  MR. STRANCH:  Your Honor, there's been no change

17 since last time.  The question of what to certify to the

18 Tennessee Supreme Court is fully briefed and we're just

19 waiting the District Court's order.

20  MS. JOHNSON:  No. 3, status of discovery.  3(a) the

21 Premier defendants and the Box Hill defendants and the

22 plaintiffs -- the attorneys who represent plaintiffs in those

23 cases have submitted a proposed schedule.  It is one set of

24 deadlines that would apply to both Box Hill and Premier.  It

25 reflects the efforts of all of those various groups to come up

```
1    with something that they think is workable.
2              I did want to flag one -- it's not even a concern,
3    but just really something for the Court's consideration, which
4    is this:
5              Discovery in the Premier cases has been ongoing and
6    in Box Hill.  In the Premier cases, in particular, my firm
7    filed a stipulation of dismissal of one Premier case this
8    morning.  We did that with Mr. Kirby's assent and Mr. Wolk's
9    assent.  There may or may not be -- I don't know -- additional
10   dismissals in the Premier cases.  What I do know is that I
11   expect that we'll have a much better sense of what the
12   universe of Premier cases that would be proceeding to a trial
13   or pretrial deadline.  I think we'll know that much better
14   next month.
15             JUDGE ZOBEL:  What does it depend on?
16             MS. JOHNSON:  I think it depends on many of the
17   factors that educate our choice whether to proceed.  In part,
18   it depends on depositions that are upcoming, what happens
19   there, depends on experts and opinions, all the usual things,
20   your Honor.  There's no one issue here.  And, again, every
21   counsel always makes their own individual choice about whether
22   to proceed with particular cases, and in circumstances where
23   there has been partial settlements, some counsel want to
24   proceed and some clients, frankly, are happy with what they're
25   getting.  So, I think all of those factors weigh in to
```

```
 1    counsel's decision whether to move forward.
 2               And I don't mean to be sounding an alarm about it
 3    either.  As I was filing my dismissal this morning, I thought
 4    I would mention to the Court things may look different next
 5    month and that may require revisiting the schedule.
 6               JUDGE ZOBEL:  Why would we alarmed about cases going
 7    away?
 8               MS. JOHNSON:  Well, I would hope that you wouldn't.
 9               JUDGE BOAL:  How many Premier plaintiffs are there?
10               MS. JOHNSON:  The last time we looked at a census, I
11    think there were about 38 cases in the MDL, and I dismissed
12    one.  I believe there are at least a few others coming, but...
13               JUDGE BOAL:  So, I have the proposed schedule and I'm
14    thinking about it.
15               MS. JOHNSON:  Okay.  Thank you, your Honor.
16               JUDGE ZOBEL:  That takes care of both of (b), right?
17               MS. JOHNSON:  Yes, (b) has already been addressed.
18               That brings us to -- well, I should note, your Honor,
19    (b)i, which was Summit Surgery Center's motion to quash, has
20    been mooted by the subpoena, as some are being withdrawn.
21    (b)ii is just a note that Emory and Vanderbilt have both moved
22    to quash as well, and the defendants' opposition to that is
23    not yet due.  So, I don't think that's ripe for decision yet.
24               JUDGE BOAL:  So, I'm going to schedule those two for
25    oral argument on May 19th.
```

```
 1              MS. JOHNSON:  Thank you, your Honor.

 2              JUDGE ZOBEL:  Which two?

 3              (Discussion off the record at the Bench.)

 4              MS. JOHNSON:  On Item C, Box Hill defendants' notices

 5     of deposition by written question.  I don't know if Mr. Kirby

 6     would like to address...

 7              MR. KIRBY:  Frankly, I have no idea what that is.  I

 8     don't think we have any issues that we've dealt with at this

 9     point.  We didn't have any clinics who filed motions to quash.

10     So, we're good.

11              MS. JOHNSON:  And then that brings us to the Court

12     rulings update.  I think the only thing to note here is that

13     the deadline for common discovery as to Premier and Box Hill

14     has been extended to June.  The proposed schedule actually

15     suggests pushing that back into August, and that's something

16     that Judge Boal will consider, obviously.

17              The other issue is the deposition of David Kessler

18     will be -- we've resolved that?

19              (Discussion off the record.)

20              MS. JOHNSON:  The outstanding issue is to Kessler,

21     which I think we'll get to when we come to common expert

22     discovery.

23              JUDGE BOAL:  So, I think I had issued an order asking

24     whether or not you wanted oral argument and whether it could

25     wait until the May hearing.
```

1          MR. CHALOS:  Your Honor, that's not our motion.

2     We're opposing that motion.  We haven't yet filed our

3     opposition.

4          JUDGE BOAL:  Okay.

5          MR. GIDEON:  Yes, it can wait until May.  We are

6     willing to submit the matter to you on the papers with the

7     request being made under MDL Order 11, Subsection B, that we

8     have the right to submit a reply once the PSC does its

9     response to our motion.  If that were to be granted, we would

10    be perfectly happy with you deciding that on the papers.

11         JUDGE BOAL:  I don't think you need it to be granted,

12    right?  Under the MDL order, you can file a reply.

13         MR. GIDEON:  I don't think so, your Honor.  If you

14    look at MDL Order 11, since this is a non-dispositive

15    motion --

16         JUDGE BOAL:  Yes.

17         MR. GIDEON:  -- I think I either have to get their

18    permission or it has to be --

19         JUDGE BOAL:  So, it's granted.

20         MR. GIDEON:  Okay.  Thank you.

21         MS. JOHNSON:  Regrettably, your Honors, we just file

22    replies, even though we're not entitled to do that, and we've

23    done that too often, frankly, in this case.

24         MR. GIDEON:  And that was going to be one of the

25    points earlier about the motion to alter or amend that was

1    argued a few moments ago.  The PSC filed a reply without

2    complying with the order, but we'll let that pass.  I just

3    appreciate this one -- this opportunity.  Thank you.

4         MS. JOHNSON:  I think that brings us to No. 4, the

5    status of the litigation track.  The competing Bellwether

6    proposals were addressed last time.  I think that's just a

7    holdover from the last agenda, unfortunately, but --

8         JUDGE ZOBEL:  We had not actually set specific dates.

9    We set one trial in June, one July, one August, one September.

10   Should we set specific dates now?

11        MR. STRANCH:  Yes, your Honor.

12        JUDGE ZOBEL:  And you said, I think, that the trials

13   would take a week to a little over a week, right?

14        MR. GIDEON:  No.  No, your Honor.

15        JUDGE ZOBEL:  What did you say?

16        MR. GIDEON:  I wasn't here when that was argued, but

17   secondhand I was told that you were going to start the first

18   Bellwether case in July.

19        JUDGE ZOBEL:  Was it July?

20        MR. STRANCH:  That's correct, it's July.

21        JUDGE ZOBEL:  Okay.  So, July, but the length of the

22   trial would be about a week.

23        MR. CHALOS:  We think, your Honor, it probably will

24   take a little bit longer than that.  I think we can do our

25   case in probably, I'm guessing, three to four days, maybe

```
1    three days, but I don't know how long their case is going to
2    be.  I think we might need a little bit longer than a week.
3              JUDGE ZOBEL:  Okay.
4              MR. GIDEON:  Your Honor, will the trial schedule be
5    from 9:00 a.m. until 1:00 p.m.?
6              JUDGE ZOBEL:  Yes.
7              MR. GIDEON:  Five days per week?
8              JUDGE ZOBEL:  Yes.
9              MR. GIDEON:  Okay.  Well, with that in mind, I think
10   we will, likewise, take the same or a little bit longer in
11   terms of substantive time to present Tennessee Clinics' proof.
12   Will we go Monday through Friday?
13             JUDGE ZOBEL:  You know, my understanding from the
14   court reporters over the years is that the amount of
15   transcript we produce between 9:00 and 1:00 is more than the
16   amount of transcript produced starting at 10:00, stopping at
17   1:00, or whatever, and going until 4:00 after lunch, because
18   we have no interruptions from 9:00 to 1:00 except one recess.
19             MR. GIDEON:  Okay.
20             JUDGE ZOBEL:  So, I think the amount of trial time is
21   concentrated and, in fact, the trial doesn't take any longer
22   than if we were to sit all day.  That is, all day as we used
23   to do, 10:00 to whatever and then 2:00 to 4:00.
24             MR. GIDEON:  The reason I inquired about Monday
25   through Friday, I don't know if you will be taking criminal
```

1    pleas --

2           JUDGE ZOBEL:  No.  I do whatever I have to do in the

3    afternoon.

4           MR. GIDEON:  Okay.  So, we have the time from 9:00

5    until 1:00 --

6           JUDGE ZOBEL:  9:00 to 1:00 is your time.  The only

7    problem we sometimes have is traffic jams hold up the jury in

8    getting here on time.  The jurors, however, are very good

9    about starting on time, being here on time if counsel are here

10   on time.  It's really interesting how conscientious they are.

11          MR. GIDEON:  Okay.

12          MS. GREER:  Your Honor, Marcy Greer for the Saint

13   Thomas Entities.

14          We have filed a motion relating to the trial setting

15   asking for various relief based on the criminal trial setting,

16   the amount of work to be done, the remand issue, et cetera.

17   It has not been responded to yet because the time has not

18   passed, but we would ask the Court to take that into

19   consideration.

20          JUDGE ZOBEL:  Of course we will.  We take into

21   consideration everything you ask us to do.  We may say no, but

22   we take it into account.

23          So, I guess my job is to set some specific dates.

24   And would it be better if we do it at the beginning of July,

25   beginning of August or the last two weeks of the month?  Which

```
 1    is preferable?

 2             MR. CHALOS:  I think, your Honor, we'd prefer

 3    probably the later part of the months.

 4             JUDGE ZOBEL:  So, somewhere around the 15th of

 5    whatever month?

 6             MR. CHALOS:  That would be fine with us.

 7             JUDGE ZOBEL:  So, we'll look at that, and we'll send

 8    you a list of dates.

 9             MR. CHALOS:  Okay.

10             JUDGE ZOBEL:  Starting in July, not June.

11             MR. CHALOS:  Okay.  Thank you, your Honor.

12             MR. STRANCH:  Thank you, your Honor.

13             MR. GIDEON:  I ask the Court for one accommodation.

14    I am taking a daughter to law school in mid August.  So, I

15    would like to just not start that weekend that I move her into

16    law school.

17             JUDGE ZOBEL:  When are you going to law school with

18    your daughter?

19             MR. GIDEON:  August 15th and 16th, right in that

20    timeframe.  If we could start the following Monday.

21             JUDGE ZOBEL:  That takes us into Labor Day.

22             MR. GIDEON:  Yes.

23             JUDGE ZOBEL:  I think.  So, we'll need to -- you

24    know, we'll try to accommodate you.

25             MR. GIDEON:  Or perhaps begin beforehand and knock
```

1    off one day so I can get her to law school.

2             JUDGE ZOBEL:  How long -- I mean, what days will you

3    be gone at law school?

4             MR. GIDEON:  I will move her in and she'll probably

5    say, "Thank you, Dad," and --

6             JUDGE ZOBEL:  I'm sorry?

7             MR. GIDEON:  I'll move her in and I suspect she'll

8    say, "That's good enough.  Thank you, Dad."  So, it will

9    probably just require a day.

10            JUDGE ZOBEL:  August 15th is a Monday.  I think we

11   can probably do it because we have a full week of August 15th,

12   August 22nd, and a half a week of August 29th before Labor

13   Day.

14            MR. GIDEON:  So, we could start on Tuesday, the 16th,

15   something like that.

16            JUDGE ZOBEL:  We can do something like that.  The

17   problem is that we only get jurors on Mondays, the first day

18   of the week, and we all impanel whatever cases are going to go

19   to trial that week on that day.

20            So, maybe it's possible, even if you can't be here

21   that day, that someone can stand in for you for the

22   impaneling, and we wouldn't then get going until the next day.

23            MR. GIDEON:  Okay.  If there is a conflict, I will

24   let the Court know.

25            JUDGE ZOBEL:  Okay.

1          MR. GIDEON:  Thank you.

2          MS. GREER:  Your Honor, Marcy Greer again.

3          One of the grounds in our motion is the idea that the

4    cases may take longer than a month to try for each time and

5    the numbers and the days that --

6          JUDGE ZOBEL:  It won't.

7          MS. GREER:  Well, the days that you were given don't

8    include the Saint Thomas Entities' defense, which there're

9    going to be some issues that are different.  So, we need to

10   add on a little bit more time for the Saint Thomas defense.

11         JUDGE ZOBEL:  Okay.  What else?

12         MS. JOHNSON:  That brings us to 4(a) -- (b), 4(b),

13   update on common expert discovery.  The update, as I...

14         MR. STRANCH:  Your Honor, for the Tennessee

15   Bellwether cases, all of the common experts have been deposed.

16   There is one matter that's still outstanding, which is the

17   motion to compel Dr. Kessler to sit for a second deposition.

18   Other than that, the common portion of the expert discovery is

19   completed.

20         JUDGE ZOBEL:  Thank you.

21         MS. JOHNSON:  Item C, status of entry of final

22   judgment as to settling parties.

23         JUDGE ZOBEL:  Now, I know that there is this problem.

24   And I think Ms. Gioia has talked with you about this?

25         MS. JOHNSON:  Yes, your Honor.

1          JUDGE ZOBEL:  So, you're working it out?

2          MS. JOHNSON:  Yes.

3          JUDGE ZOBEL:  For some reason, we have a very

4    difficult system.

5          MS. JOHNSON:  Yes.  May I give just a brief report

6    for the other parties on that?

7          JUDGE ZOBEL:  Yes.

8          MS. JOHNSON:  So, I did speak with Ms. Gioia earlier

9    this week.  She informed me that she had been trying to find a

10   way to do this en mass or an efficient means rather than

11   having to go into each individual docket and, regrettably, it

12   appears that that is not possible.  And so, it will require a

13   tremendous amount of work on the Clerk's part to call up these

14   dockets and click the appropriate boxes and that is

15   unfortunate, but Ms. Gioia, as the Court knows, is aware of

16   this and is beginning this process and will be doing it as

17   time permits.

18         JUDGE ZOBEL:  That is the gist of the problem.  The

19   Court can't automatically close 400 cases.  We got to do it

20   one at a time.  Okay.  So much for computers and making life

21   easier.

22         MS. JOHNSON:  That brings us to the defendants'

23   notice of service of case-specific expert reports, and Mr.

24   Stranch wanted to be heard on the case-specific issues.

25         JUDGE ZOBEL:  I'm sorry.  Which number is this -- oh,

1    I see (d).

2          MR. STRANCH:  Your Honor, I wanted to let you know

3    that the defendants did serve their case-specific expert

4    reports.  We have an issue that we wanted to flag for you.

5    You may recall at the last conference, we discussed scheduling

6    and depositions of those cases that were the four that were

7    selected to go to trial, and then the three other Bellwethers

8    that were not selected for trial yet, we've worked out an

9    agreement on how we want to handle that partially.  What we

10   would like to do -- and you'll see a stipulation to this

11   effect shortly -- is extend the case-specific discovery

12   deadlines to the end of May.  It's currently the beginning of

13   May.  Extend that to the end for the four cases that will be

14   tried, and then for the three that are not currently set for

15   trial, we would like to extend those deadlines to July, and

16   then we're going to meet and confer and determine whether we

17   need to extend those further or whether we want to go ahead

18   and have those cases ready at this time, and we're working

19   together on that now and we'll get you something -- a

20   stipulation in writing on that shortly.

21          JUDGE BOAL:  And does that type of extension -- will

22   that require the moving of any other dates?

23          MR. STRANCH:  No, your Honor.  It will just be the

24   ones that deal with those specific issues.  It won't affect

25   any other dates in the case.

1          MS. GREER:  Well, actually, your Honor, it would move

2     the *Daubert* deadline.

3          JUDGE BOAL:  Which is now in May?

4          MS. GREER:  May 27th.

5          MR. STRANCH:  The common discovery *Daubert* deadline

6     is May 27th.  And so, that will remain the same, your Honor,

7     because common expert discovery is completed other than the

8     issue with Dr. Kessler.  So, it would not affect case-specific

9     issues related to that.

10          MR. GIDEON:  Well, I want to make sure, Judge Boal,

11     you understand that there's another matter that's not ripe yet

12     where we have taken the position that one of these case-

13     specific disclosures, a Matthew Lee --

14          JUDGE BOAL:  Yes.  I looked at the papers.  I'm

15     waiting for the other side's response, but I understand your

16     argument to be that someone who is designated as case-

17     specific is actually a common --

18          MR. GIDEON:  Right.

19          JUDGE BOAL:  -- and was disclosed late under that --

20          MR. GIDEON:  Correct.  And irrespective of how you

21     decide that -- if you decide it in our favor, then that common

22     expert's deposition has not been taken, but it will not need

23     to be taken.

24          JUDGE BOAL:  Got it.

25          MR. GIDEON:  The gulf is a little wider in terms of

1   what we should doing.  Judge Zobel just mentioned starting the

2   first trial the second two weeks of July.

3          We have proposed to the PSC that we complete the

4   case-specific discovery on the four cases the Court chose for

5   trial, and not do the case-specific discovery on the other

6   cases until we finish those.

7          It will be difficult to complete the case-specific

8   discovery in three other cases while we're here trying the

9   Wray case and then three others in sequence.  So, there is a

10  bit more of a gulf than Mr. Stranch has described.

11         JUDGE BOAL:  All right.  Thank you.

12         JUDGE ZOBEL:  Ms. Johnson.

13         MS. JOHNSON:  That brings us to the report from the

14  pro se liaison.  Ms. Martin will address that.

15         MS. MARTIN:  Good afternoon, your Honor.

16         So, last time I told you about -- that I filed a

17  motion on behalf of eight pro se claimants who had either

18  filed proofs of claim after the deadline or who had not filed

19  proofs of claim and that Judge Neiman had worked with me on

20  that motion and asked me to do so for those claimants that he

21  had denied their claims because of those untimely or -- well,

22  untimely-filed proofs of claim.

23         This morning Judge Boroff granted the motion to allow

24  those proofs of claim to be considered timely and also to

25  allow those who have not yet filed them to file them within 30

1     days of the order.  So, my office is already working on

2     preparing those for those three pro se claimants who have not

3     filed proofs of claim yet.  So, we'll definitely get those

4     filed for them well in advance of the 30-day limit and they

5     should be all set at that point.

6            Mr. Ellis has already sent the list of those eight

7     pro se claimants' names to the claims administrators for the

8     various elements.  So, they are aware that they have been

9     considered timely and those claims can go forward.

10           JUDGE ZOBEL:  Do you anticipate any more of those?

11           MS. MARTIN:  I don't, but, of course, if they do come

12    along, I will work with the judges to do the best we can for

13    them.

14           MR. ELLIS:  Your Honor, this is Mr. Ellis.

15           There is going to be one more.  Judge Neiman denied

16    another claim, but gave them 60 days to file a similar motion.

17    That claimant is represented by counsel.  So, I will work with

18    counsel and make sure that gets done.

19           JUDGE ZOBEL:  Thank you.

20           MS. JOHNSON:  And now the schedule for future status

21    conferences.  We do have conferences set in May and June.  The

22    Court had indicated last time that it was likely to set a

23    final pretrial conference for the first Bellwether trial to

24    coincide with the June date, but I don't believe we actually

25    calendared a date or a time for that.  So, if appropriate, we

```
1    would ask that the Court consider that.
2              JUDGE ZOBEL:  So, add pretrial conference for first
3    trial?
4              MS. JOHNSON:  Yes, your Honor.
5              JUDGE ZOBEL:  To the June 23rd date.
6              JUDGE BOAL:  I will just add, I've had a change in
7    schedule.  So, I am no longer available at 3 o'clock on that
8    day.  So --
9              JUDGE ZOBEL:  You can do your thing in the morning if
10   you can and I'll do this in the afternoon.
11             JUDGE BOAL:  I'm actually not going to be here the
12   whole day.
13             JUDGE ZOBEL:  So, I can do the pretrial in the
14   morning and this other thing in the afternoon.
15             JUDGE BOAL:  So, as we head into that, if there are
16   motions that need to be argued in June or you see that coming
17   up, it will be helpful to know whether or not you need oral
18   argument and if you do, I'll work with the parties to arrange
19   a date in June to conduct the oral argument.
20             MS. JOHNSON:  Thank you, your Honor.
21             JUDGE ZOBEL:  Now, in July are we going to have a
22   meeting, even though we also have a trial?
23             MS. JOHNSON:  I think we could certainly coordinate
24   the two, your Honor.  I would think a status conference could
25   be done following the trial one day, if -- well, if the
```

 1    lawyers are all here and present if the Court wishes.

 2            THE COURT:  Well, do we need it?

 3            MS. JOHNSON:  The real question in my mind, your

 4    Honor -- and perhaps we should address this next month.  It

 5    depends on what's going on with the Premier and with the Box

 6    Hill schedules.

 7            JUDGE BOAL:  Yes.  So, I was just going to say maybe

 8    I should schedule something.  I don't know if Judge Zobel

 9    needs to schedule something, but there may be discovery issues

10    with Premier and Box Hill and I can always cancel it.

11            MS. JOHNSON:  I think that's an excellent idea, your

12    Honor.

13            JUDGE ZOBEL:  So, I'll wait until next month for you

14    to tell me what you want done.

15            MS. JOHNSON:  Okay.

16            JUDGE BOAL:  So, are there particular weeks in July

17    that -- that's a tough time.  I mean, should I schedule it for

18    the afternoon during the trial, perhaps?

19            MS. JOHNSON:  I think that would be ideal, your

20    Honor, if that works for you.

21            JUDGE BOAL:  All right.  So, I'll wait until Judge

22    Zobel sets the trial and then I'll pick an afternoon.

23            MS. JOHNSON:  Excellent.  Thank you.

24            JUDGE BOAL:  Unless -- do the Premier or Box Hill

25    people have any conflicts during the last two weeks in July?

1    Because you won't be here for the trial.

2            MR. KIRBY:  This is Greg Kirby for Box Hill.

3            I probably will be out of town that last week of

4    July, the last full week of July.

5            JUDGE ZOBEL:  Out of this town or out of some other

6    town?

7            MR. KIRBY:  I'm sorry.  Out of this town or my

8    hometown.

9            JUDGE BOAL:  All right.  So, not the last week of

10   July for you?

11           MR. KIRBY:  Correct.

12           JUDGE ZOBEL:  So, that means that we should start the

13   trial on July 11th, not on the 18th?

14           JUDGE BOAL:  He's not involved in that.

15           JUDGE ZOBEL:  You're not involved in that.  Okay.

16           MR. WOLK:  I have no conflicts, Judge.

17           JUDGE BOAL:  All right.  So, I'll try and schedule it

18   for the third week in July and that, hopefully, will overlap

19   with the trial.

20           MR. KIRBY:  Thank you, your Honor.

21           MS. JOHNSON:  Thank you, your Honor.

22           That brings us to fully-briefed motions.  The Ocean

23   State's motion to dismiss the product liability claims,

24   counsel for that has requested that oral argument be heard at

25   the next status conference because they were not available

1    today.  And then turning to --

2           JUDGE ZOBEL:  I thought I had dealt with Dr. Barakat

3    several times before.

4           MS. JOHNSON:  You have --

5           JUDGE ZOBEL:  Is he still around?

6           MS. JOHNSON:  Yes, your Honor, I believe so, at least

7    in this individual case.  I have not looked at the papers

8    closely to tell you what the issues are that overlap or that

9    are different, but you certainly have dealt with him before.

10   We will put that motion for argument on the May calendar, with

11   the Court's approval, if you would like to hear it.

12          JUDGE ZOBEL:  Okay.  All right.

13          MS. JOHNSON:  In terms of briefing in progress,

14   you've heard reference to the motion to compel a second Dr.

15   Kessler deposition.  That briefing is not ripe yet, but will

16   be for next time around, yes, and I would expect Judge Boal to

17   hear that.

18          And, also, upcoming for the next time would be the

19   Nashville defendants' motion to strike Matthew Lee as a case-

20   specific expert, which we've also referred to earlier, but,

21   again, that will be ready for next time.

22          JUDGE ZOBEL:  Then we come to other motions.

23   Plaintiff Jones' motion for substitution of party, is that

24   something that we'll hear both?

25          MS. JOHNSON:  One second, your Honor, if I may.

```
 1              (Pause.)

 2              MS. JOHNSON:  This is just a motion to substitute a

 3     personal representative where the plaintiff is deceased.  I

 4     don't expect it to be opposed, but I haven't spoken to the

 5     defendants about it either.

 6              The time for an opposition has technically not yet

 7     run, your Honor.  So, perhaps we will wait until next time to

 8     address it, but I don't expect it to be opposed.

 9              JUDGE ZOBEL:  And the last one, a dispositive motion

10     on the claims for agency and direct liability.

11              MR. STRANCH:  Yes, your Honor.

12              THE COURT:  Do you want to respond to that?

13              MR. STRANCH:  It's due tomorrow.  We spoke with the

14     defendants and they've agreed to allow us to extend that

15     response until Wednesday and it will be ready for argument at

16     the May conference.

17              THE COURT:  So, you want to have argument on it?

18              MR. STRANCH:  If the Court wishes, we would be happy

19     to have argument on it.

20              JUDGE ZOBEL:  What do counsel wish?

21              MS. GREER:  We would like to have oral argument on

22     it, your Honor.  We'll be brief.

23              MR. STRANCH:  We'll be briefer.

24              JUDGE BOAL:  I believe at the last conference, I had

25     asked about other groups of plaintiffs for which we might not
```

```
 1   have a schedule.
 2           MS. JOHNSON:  Yes, your Honor, and we have been
 3   addressing that with various plaintiffs' counsel.  We were not
 4   -- I had intended to say something.  Thank for reminding me.
 5           We were not able to reach a consensus on that before
 6   the status conference, but as part of the discussions that are
 7   ongoing, we hope to have something for you before the next
 8   status conference.
 9           JUDGE BOAL:  Thank you.
10           JUDGE ZOBEL:  Is there anything else that we need to
11   discuss today, now that we've completed the agenda?
12           (No response.)
13           JUDGE ZOBEL:  Thank you all.
14           MS. JOHNSON:  Thank you, your Honor.
15           MR. TARDIO:  Thank you, your Honor.
16           MR. STRANCH:  Thank you, your Honor.
17           JUDGE ZOBEL:  Court is in recess.
18           (Adjourned, 2:47 p.m.)
19
20
21
22
23
24
25
```

```
 1                    C E R T I F I C A T E

 2           I, Catherine A. Handel, Official Court Reporter of the

 3   United States District Court, do hereby certify that the

 4   foregoing transcript, from Page 1 to Page 40, constitutes to the

 5   best of my skill and ability a true and accurate transcription of

 6   my stenotype notes taken in the matter of Multidistrict

 7   Litigation No. 13-02419-RWZ, In Re: New England Compounding

 8   Pharmacy Cases Litigation.

 9

10
     April 27, 2016        /s/Catherine A. Handel
11   Date                  Catherine A. Handel, RPR-CM, CRR

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```