UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION<br><br>_____<br><br>THIS DOCUMENT RELATES TO:<br><br>All Cases Naming Saint Thomas Outpatient Neurosurgical Center | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  MDL No. 2419<br>Dkt. No 1:13-md-2419 (RWZ) |

**STOPNC DEFENDANTS'**
**RESPONSE OPPOSING PLAINTIFFS' STEERING COMMITTEE'S**
**MOTION TO QUASH SUBPOENAS AND FOR PROTECTIVE ORDER [DKT. 2816]**

Saint Thomas Outpatient Neurosurgical Center, LLC ("STOPNC"); Howell Allen Clinic, a Professional Corporation; John Culclasure, MD; Debra Schamberg, RN, CNOR; and Vaughan Allen, MD ("STOPNC Defendants") oppose the Plaintiffs' Steering Committee's ("PSC") Motion to Quash Subpoenas and for Protective Order [Dkt. No. 2816].

The PSC lacks standing to quash the STOPNC Defendants' subpoenas because the PSC does not have a personal right or privilege in the information sought. Without standing, the PSC's substantive arguments for quashing the STOPNC Defendants' nonparty subpoenas are moot.

Regardless, the Defendants' subpoenas are substantively proper. First, the information sought by the subpoenas is relevant as information to be used to impeach Dr. Kessler. Second, the purportedly "personal and confidential" information sought by the subpoenas is discoverable and can be protected from further disclosure by the

Court's Third Amended Protective Order of Confidentiality.[1] Third, the STOPNC Defendants' inadvertent delayed notice did not prejudice the PSC. No legitimate grounds exist for quashing the STOPNC Defendants' subpoenas. The PSC's Motion should be denied.

## PROCEDURAL HISTORY

On March 4, 2016, the STOPNC Defendants deposed David A. Kessler, MD, the PSC's regulatory opinion witness. As explained in detail in the Tennessee Clinic Defendants' Motion to Compel Completion of the Deposition of Dr. Kessler,[2] Dr. Kessler was evasive and unresponsive to Defendants' counsel's questions throughout his seven (7) hour deposition. Notably, Dr. Kessler failed to provide answers to inquiries on the following subjects:

1) The date of expiration of his board certification in pediatrics;[3]

2) The extent, and dates of existence, of his staff privileges at University of California, San Francisco School of Medicine ("UCSF");[4] and

3) The date on which he received an offer of employment from Yale School of Medicine.[5]

On April 4, 2016, the STOPNC Defendants served non-party subpoenas on the American Board of Pediatrics, Yale School of Medicine, and UCSF. Due to an inadvertent oversight by counsel, the STOPNC Defendants served notice of service of the subpoenas on all parties on April 11, 2016.[6] Upon learning of their mistake,

---

[1] Dkt. No. 814.
[2] Dkt. No. 2763.
[3] Kessler Dep. Tr. 56:13-57:21. Relevant pages of Dr. Kessler's deposition transcript are attached as Exhibit 1.
[4] *Id.* at 58:6-60:14.
[5] *Id.* at 71:25-73:3.
[6] Dkt. No. 2794.

Defendants' counsel contacted all subpoena recipients to ensure efforts at collection of documents were halted. No documents have <u>ever</u> been produced in response to the Defendants' subpoenas.

## LAW AND ARGUMENT

## I.   The PSC Lacks Standing to Move to Quash the Subpoenas.

Fed. R. Civ. P. 26(c) directs that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending."[7] Fed. R. Civ. P. 26(c) does <u>not</u> grant a party vicarious standing to request a protective order on a nonparty's behalf.[8]   A party does not have standing to quash a subpoena served on a nonparty unless the party has a personal right or privilege with respect to the documents being sought.[9] Without standing, a party cannot make substantive challenges to a subpoena.[10]

The PSC does not have standing to quash the Defendants' subpoenas. The PSC has not asserted, nor could the PSC reasonably assert, any privilege with respect to the information sought from the three (3) nonparties. The PSC also does <u>not</u> have a personal right with respect to the documents sought. Dr. Kessler is retained by the PSC

---

[7] FED. R. CIV. P. 26(c)(1)(2015).

[8] *Frias Holding Co. v. Greenberg Traurig, LLP*, No. 2:11-CV-160-GMN-VCF, 2015 WL 4622591 *5 (D. Nev. Aug. 3, 2015).

[9] *See Liberty Media Holdings, LLC v. Swarm Sharing Hash File*, 821 F. Supp. 2d 444, 450 (D. Mass. 2011) (holding that the exception for claims of privilege did not apply because the movants did not, nor could they "viably assert," any claim of privilege relating to the requested information); *Enargy Power (Shenzhen) Co. Ltd. v. Xiaolong Wang,* No. 13-11348-DJC, 2014 WL 2048416 (D. Mass. May 16, 2014) ("[a] party has standing to quash a subpoena served on a nonparty if he or she has a personal right or privilege with respect to the requested information."); *Langford v. Chrysler Motors Corp.*, 513 F.2d 1121, 1126 (2d Cir. 1975) ("In the absence of a claim of privilege a party usually does not have standing to object to a subpoena directed to a non-party witness."); *U.S. v. Anderson*, No. 5:07-CR-00117-7-BR, 2010 WL 3077014 at *1 (E.D.N.C. Aug. 5, 2010) ("Ordinarily, a party does not have standing to challenge a subpoena issued to a nonparty unless the party claims some personal right or privilege in the information sought by the subpoena."); *Holland v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. 2:12-CV-1983-TLN-AC, 2013 WL 5934309 *3 (E.D. Cal. Nov. 1, 2013) (holding that "plaintiff may move to quash the subpoenas to the extent his personal rights or privileges are implicated.").

[10] *U.S. v. Anderson*, No. 5:07-CR-00117-7-BR, 2010 WL 3077014 at *1 (E.D.N.C. Aug. 5, 2010).

as an opinion witness. Dr. Kessler is *not* a party to this action. Any personal right that Dr. Kessler has does not grant the PSC standing to quash the subpoenas. Without standing, the PSC's substantive challenges to the subpoenas are moot. However, the Defendants dispense with the PSC's substantive challenges below.

## II.     The Requested Information is Relevant Potential Impeachment Evidence.

"A Rule 45 subpoena must fall within the scope of proper discovery under Fed. R. Civ. P. 26(b)(1)."[11] Fed. R. Civ. P. 26(b)(1) allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…."[12] Information within the scope of discovery "need not be admissible in evidence to be discoverable."[13] A request for discovery should be considered relevant if there is "*any* possibility that the information sought may be relevant to the subject matter of the action."[14] Inquiries concerning a witness's credibility are relevant, "even if the information sought is not directly related to the subject of the underlying litigation."[15] The Advisory Committee Notes to Fed. R. Civ. P. 26(b)(1) make clear that "information that could be used to impeach a witness, although not otherwise relevant to the claims or defenses, might be properly discoverable."[16]

The requested information is sought by the Defendants as potential impeachment evidence of Dr. Kessler. The case law is well-settled that information concerning a witness's credibility, that could be used to impeach the witness, is

---

[11] November 13, 2013, Order on Motions to Quash and Objections to Subpoenas, Dkt. No. 572.
[12] FED. R. CIV. P. 26(b)(1)(2015).
[13] *Id.*
[14] *Schuurman v. Town of N. Reading*, 139 F.R.D. 276, 277 (D. Mass. 1991).
[15] *Cabana v. Forcier*, 200 F.R.D. 9, 17 (D. Mass. 2001)(granting motion to compel plaintiff's expert witness to answer questions regarding her involvement in prior litigation or disciplinary proceedings, which was "likely to lead to evidence relevant both to [her] skill as a physician and her credibility").
[16] FED. R. CIV. P. 26(b)(1) advisory committee's note (2000); *See also* FED. R. CIV. P. 26(b)(1) advisory committee's note (2015)(providing that the 2015 amendments do not "foreclose[]" discovery of information that could be used to impeach a likely witness).

discoverable, even if the information is not directly related to the subject of the underlying litigation. During his deposition, Dr. Kessler was unable to answer questions about his prior employment, the information requested in the Defendants' subpoenas. The Defendants' requests are relevant, as they concern Dr. Kessler's credibility, and the requested information can be used to impeach Dr. Kessler through reference to his potentially inconsistent deposition testimony. The subpoenas fall within the scope of proper discovery under Fed. R. Civ. P. 26(b)(1). The PSC's motion should be denied.

### III.   **Any Personal Information is Designated Confidential by the Court's Protective Order.**

Fed. R. Civ. P. 45(d) protects the persons subject to a subpoena from any resulting undue burden or expense.[17] The Court's January 27, 2014, Third Amended Protective Order of Confidentiality (the "Protective Order") applies to: all actions in this MDL; documents produced pursuant to subpoenas served under Rule 45; and non-parties who provide "Discovery Materials" in response to Rule 45 subpoenas.[18] The Protective Order allows parties or persons producing Discovery Material, including non-parties, to designate as "Confidential Discovery Material" information the person believes is entitled to protection under the Protective Order.[19] Personnel records, and "personal information of a sensitive nature," *shall* be designated "Confidential Discovery Material."[20]

The PSC contends that the Defendants' requests are "unduly burdensome because they seek Dr. Kessler's protected personal information."[21] First, Fed. R. Civ. P.

---

[17] FED. R. CIV. P. 45(d)(2015)(emphasis added).
[18] Dkt. No. 814.
[19] *Id.* at 2.
[20] *Id.* at 2-3 (emphasis added).
[21] Dkt. No. 2816 at 5.

protects only the persons subject to a subpoena from undue burden. The American Board of Pediatrics, Yale School of Medicine, and UCSF are subject to the Defendants' subpoenas, *not* Dr. Kessler or the PSC. The PSC's claims of "undue burden" are misplaced.

Second, the Defendants disagree that the requested information is "protected personal information." However, even if the requested information is personal, the information is entitled to protection under the Court's Protective Order, by the designation of the materials as "Confidential Discovery Material." The PSC's objection to the subpoenas on the basis of undue burden is without merit.

## IV.    Quashing the Subpoenas on Rule 45 Procedural Grounds is Inappropriate under the Circumstances.

Courts refuse to quash subpoenas for lack of Rule 45 notice when the parties cannot demonstrate any prejudice suffered by lack of timely notice.[22] In fact, this Court refused to quash the PSC's subpoenas, issued without prior notice to other parties, because the Defendants could not show any prejudice, and production had not yet occurred.[23]

It is ironic that the PSC now moves to quash the Defendants' non-party subpoenas for the same mistake the PSC is guilty of making. On October 15, 2013, the PSC issued two (2) subpoenas to nonparty witnesses. On October 16, 2013, the PSC served the two (2) subpoenas on the nonparty witnesses. On November 1, 2013, more

---

[22] *See Steel Works Rebar Fabricators, LLC v. Alterra Am. Ins. Co.*, No. 11-24042-CIV, 2012 WL 1918704, at *2 (S.D. Fla. May 25, 2012) (refusing to quash subpoena for lack of notice to parties when party could not demonstrate any prejudice suffered by lack of timely notice); *Flagg v. City of Detroit*, No. 05-74253, 2008 WL 787039, at *1 (E.D. Mich. March 20, 2008) (refusing to quash subpoenas when no document production occurred prior to Defendants' opportunity to object to subpoenas); *In re Asbestos Prods. Liab. Litig.*, 256 F.R.D. 151, 158 (denying motion to quash subpoena because the Plaintiffs suffered no prejudice from the Defendants' delayed notice, and the delayed notice did not interfere with Plaintiffs' ability to object prior to the production of documents by the third party).

[23] November 13, 2013, Order on Motions to Quash and Objections to Subpoenas, Dkt. No. 572.

than two (2) weeks later, the PSC hand-delivered a box of nine (9) complaints to counsel for the STOPNC Defendants. In the box of complaints, the PSC folded in the two (2) subpoenas, with a brief reference to the subpoenas in the last sentence of their cover letter.[24]

Unlike the PSC, the STOPNC Defendants openly disclosed their mistake in the Notice filed on April 11, 2016.[25] When the STOPNC Defendants became aware of their mistake, they contacted all subpoena recipients to ensure efforts at document collection were halted, and promptly filed a notice explaining the error. No documents have been produced. The PSC has not suffered any prejudice by receiving delayed notice of the subpoenas.

The PSC's argument that the subpoenas do not direct production at a "specified time and place" is absurd, strained, and without legal authority. The PSC cites no case law to support its contention that allowing a third party to determine the place of production justifies quashing the subpoena. As the PSC is well-aware, documents produced pursuant to a subpoena *duces tecum* are almost universally produced by mailing the responsive documents to the requesting party.

The Defendants will promptly make any documents produced available to the PSC as required by MDL Order No. 6.[26] In the unlikely event the subpoena recipients opt to produce the custodian of records for deposition in lieu of producing documents, the STOPNC Defendants will work with the PSC to schedule the deposition at a

---

[24] *See* November 2013 Correspondence, attached as Exhibit 2.
[25] Dkt. No. 2794 (noting that "[t]he subpoenas were inadvertently served…before this Notice was filed. No documents have been produced, and each subpoena recipient has been instructed to not produce any documents until the parties to the lawsuit have been given reasonable time to object to the subpoenas. This Notice is filed in the main docket to ensure each party has notice of the subpoenas.").
[26] Dkt. No. 209.

mutually-convenient time and location. The PSC suffers no prejudice from this purported procedural defect, and quashing the subpoenas on this basis is simply inappropriate.

## CONCLUSION

The PSC does not have standing to challenge the Defendants' subpoenas, and the PSC's substantive challenges are without merit. The Defendants' subpoenas seek relevant information that will be protected under the Court's Protective Order. The Defendants' inadvertent delayed notice of the subpoenas did not prejudice the PSC, and no documents have been produced. The PSC's assertion that the subpoenas do not direct production at a "specified time and place" is absurd and without legal authority. The STOPNC Defendants' subpoenas are proper. The PSC's Motion to Quash and for Protective Order should be denied.

Respectfully submitted,

**GIDEON, COOPER & ESSARY, PLC**

/s/ Chris J. Tardio
**C.J. Gideon, Jr.***
**Chris J. Tardio***
**Alan S. Bean****
**Matthew H. Cline***
315 Deaderick Street, Suite
Nashville, TN 37238
Ph: (615) 254-0400
Fax: (615) 254-0459
chris@gideoncooper.com

***Attorneys for the Tennessee Clinic Defendants***

* Admitted pursuant to MDL Order No. 1.
** Admitted *pro hac vice*

8

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be served electronically to the registered participants identified on the Notice of Electronic Filing and copies will be e-mailed or mailed via regular U.S. mail to those participants identified as unregistered this 2nd day of May, 2016.

/s/ Chris J. Tardio
**Chris J. Tardio**