# EXHIBIT 11

## Excerpt from Deposition of James Gray, III, PharmD

```
              UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF MASSACHUSETTS


NEW ENGLAND COMPOUNDING) MDI NO. 2419
PHARMACY, INC., PRODUCTS ) Master Dkt.
LIABILITY LITIGATION,    ) 1:13-MD-02419-RWZ
                         )
THIS PERTAINS TO:        )
ALL ACTIONS              )




      VIDEOTAPED DEPOSITION OF JAMES GRAY, III
          TAKEN BY CHRIS J. TARDIO, ESQ.
          ON BEHALF OF THE DEFENDANTS
                 MARCH 11, 2016




           REPORTED BY SUSAN M. FIALA
         REGISTERED PROFESSIONAL REPORTER
           CERTIFIED SHORTHAND REPORTER
             CERTIFIED COURT REPORTER
```



100 Mayfair Royal
181 Fourteenth Street
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

```
 1            (Exhibit 1322-1 marked for
 2    identification.)
 3            MR. TARDIO:  So Exhibit 1322-1 is a
 4    copy of his report.
 5       Q.  (By Mr. Tardio) And I -- as I
 6    understand your opinion -- well, let me ask
 7    this.  Let me ask it more open ended.  Is it
 8    your opinion that it was a violation of the
 9    standard of care for STOPNC to buy from a
10    compounding pharmacy, period, or to buy -- or it
11    was a violation of the compounding -- or was it
12    a violation of the standard of care to buy from
13    NECC in particular?  Do you understand my
14    question?
15       A.  Yes.
16       Q.  Okay.
17       A.  I do understand your question.  The --
18    the problem was the purchase of product in bulk
19    without an individual patient prescription.
20       Q.  Uh-huh.
21       A.  A physician certainly has the right to
22    prescribe a compounded medication for his
23    patient.  If that compounded medication is not a
24    -- is -- is -- is a copy of an FDA approved
25    product --
```



```
 1       Q.  Uh-huh.
 2       A.  -- the physician has the -- still has
 3   the right to prescribe a compounded product on
 4   the basis that the product would have a specific
 5   advantage for his patient versus the FDA
 6   product, and -- and it's okay to do that.
 7       Q.  So can we agree in -- in a general
 8   sense it's not a violation of the standard of
 9   care in and of itself to purchase from a
10   compounding pharmacy, right?
11       A.  To pre -- to -- to -- on a
12   prescription, a prescription order for a
13   specific patient, it is not outside the standard
14   of care.  If it's an FDA commercial product
15   that's being compounded, the physician needs to
16   have a medical reason to do that.
17       Q.  So your -- your opinion is that so long
18   as the process is followed, the proper process,
19   it's not a violation in and of itself to buy
20   from a compounding pharmacy, right?
21       A.  Correct.  As long as the process is
22   followed and there's medical reason to do it,
23   yes.
24       Q.  Is there anything inherently unsafe
25   about buying from a compounding pharmacy
```

