UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) MDL No. 13-2419 ) Dkt. No 1:13-md-2419 (RWZ) ) |
| THIS DOCUMENT RELATES TO:<br><br>*Wray* (1:13-cv-12737); *Temple* (1:13-cv-01005); *McElwee* (1:13-cv-12625); *Parman* (1:13-cv-08999); *Skelton* (1:13-cv-00961); *Brock* (1:13-cv-01010); *Ziegler* (1:13-cv-12588) | ) ) ) ) ) ) ) ) |

### SAINT THOMAS ENTITIES' MOTION FOR LEAVE TO FILE MOTION FOR PARTIAL SUMMARY JUDGMENT ON CLAIMS FOR APPARENT AGENCY

Pursuant to the Court's April 25, 2016 Amended Scheduling Order (Docket #2827) ("April 25 Order"), the Saint Thomas Entities[1] file this Motion for Leave to File a *Motion for Partial Summary Judgment On Claims for Apparent Agency* as to the individual claimants in the bellwether pool ("Bellwether Plaintiffs"). The April 25 Order requires a movant to file a motion for leave "setting forth good cause for why a summary judgment motion should be allowed." April 25 Order at 4. The Saint Thomas Entities have good cause for requesting that the Court grant them leave to file a motion for partial summary judgment focused on an apparent agency theory that, if granted in whole or in part, will eliminate both evidence and argument that could prove confusing to the jury and streamline the issues for the bellwether trials.

---

[1] Saint Thomas West Hospital, formerly known as St. Thomas Hospital ("Hospital"), Saint Thomas Network ("Network"), and Saint Thomas Health ("Health") (collectively, the "Saint Thomas Entities").

1.      The Tennessee Plaintiffs' claims are among many in this MDL arising out of injections of steroids compounded by the New England Compounding Center ("NECC"). The Tennessee Plaintiffs include patients who received epidural steroid injections ("ESIs") of contaminated methylprednisolone acetate ("MPA") at the Saint Thomas Outpatient Neurosurgical Center ("STOPNC") and their respective family members. The Tennessee Plaintiffs claim that NECC compounded the MPA in unsanitary conditions, leading to contamination with microbial contaminants.[2]

2.      It is undisputed that the Saint Thomas Entities neither procured nor injected any of the Bellwether Plaintiffs with MPA compounded by NECC. The Bellwether Plaintiffs' liability theories against these Defendants are premised on imputing the liability of STOPNC and the other STOPNC Defendants[3] to the Saint Thomas Entities. The Bellwether Plaintiffs' alter ego theory was dismissed on the pleadings, *see* Memorandum of Decision (Docket #1360) at 50, and the remaining vicarious liability theories are based on allegations that STOPNC and its physicians and nurses were the actual or apparent agents of one or more of the Saint Thomas Entities.

3.      The Saint Thomas Entities have previously demonstrated, based on the undisputed facts, there is no basis for finding that the Saint Thomas Entities actually delegated any actual authority to the STOPNC Defendants with respect to patient treatment or the procurement of pharmaceutical products.[4] Apparent agency requires a consideration of the circumstances of the individual Plaintiffs, and so the Saint Thomas Entities reserved their right to seek summary adjudication of the apparent agency claims once the individual Bellwether Plaintiffs had been

---

[2] *E.g.,* Second Amended Master Complaint (Docket #1719) at ¶¶ 1-3.

[3] The STOPNC Defendants consist of STOPNC, Howell Allen Clinic, John Culclasure, M.D., Debra Schamberg, RN, CNOR, and Vaughan Allen, M.D.

[4] *See Saint Thomas Entities' Memorandum in Support of Global Motion for Partial Summary Judgment on Putative Claims for Actual Agency and Direct Liability* (Docket #2744).

deposed. *Id.* at 2, 10-11 & nn.4,7. Now that case-specific fact discovery as to the Bellwether Plaintiffs has been largely completed, the Saint Thomas Entities demonstrate that the remaining vicarious liability theory—apparent agency—likewise fails for lack of sufficient proof.

4. After taking multiple depositions of both corporate representatives and fact witnesses for the Saint Thomas Entities and the STOPNC Defendants, and now the Bellwether Plaintiffs themselves, these Plaintiffs have no evidence to support their assertion that the Saint Thomas Entities held out the STOPNC Defendants as the Saint Thomas Entities' agents with respect to any of the actions giving rise to the injuries claimed by the Bellwether Plaintiffs. In fact, **all** of the Bellwether Plaintiffs (except for Ms. Temple, who is deceased) testified that they were entirely unaware of "Saint Thomas Health" prior to their injections. And these same Plaintiffs admitted they had not heard of (or did not recall having heard of) "Saint Thomas Network" at the time. These Plaintiffs could not have believed—reasonably or otherwise—that STOPNC was Health's or Network's agent at the time they received ESIs from STOPNC, considering they were unaware of either company's existence at the time.

5. Independently, the apparent agency claims fail because the Bellwether Plaintiffs have no evidence that: (i) any of the Saint Thomas Entities held out the STOPNC Defendants to the public or to the Bellwether Plaintiffs as authorized to treat patients and procure pharmaceuticals on behalf of the Saint Thomas Entities; (ii) these plaintiffs had a good-faith belief that the STOPNC Defendants were agents of the Saint Thomas Entities as to those activities; or (iii) the Bellwether Plaintiffs relied on any such apparent authority to their detriment. The Bellwether Plaintiffs looked to their individual physicians, rather than the Saint Thomas Entities, to perform those services.

6. Specifically, the undisputed record establishes the following undisputed, material facts:

  a. There is no evidence that any employee of any of the Saint Thomas Entities knew that STOPNC was purchasing compounded products from NECC prior to the outbreak.

  b. All of the STOPNC patients were referred directly by Howell Allen Clinic doctors. There is no evidence that the Saint Thomas Entities had any interaction with or relationship to the Bellwether Plaintiffs at the time of their injections at STOPNC.

  c. There is no evidence that the Saint Thomas Entities own, much less control, the property where STOPNC administered the contaminated ESIs to the Bellwether Plaintiffs.

  d. There is no evidence that the Saint Thomas Entities advertised STOPNC in any media prior to the meningitis outbreak.

  e. Each Bellwether Plaintiff was referred to STOPNC by his or her Howell Allen physician.

  f. Each of the Bellwether Plaintiffs signed a consent form stating that he or she was aware that the treatment was provided by STOPNC and that the medical practice to which their physicians belonged, the Howell Allen Clinic, was a part owner of the outpatient center.

  g. STOPNC is located in a medical tower that is entirely separate from the Hospital and houses the offices of other clinics and physician practices with no affiliation with the Saint Thomas Entities.

  h. The signage of the medical tower clearly indicated to the Bellwether Plaintiffs that they were in a professional building, not a hospital, when they went to STOPNC.

  i. The entrance to STOPNC has the appearance of a doctor's office, and a large photograph of the Howell Allen Clinic doctors is hung on the wall near the entrance, visible to the patients who enter STOPNC.

  j. STOPNC was listed as a Howell Allen Clinic location on the Howell Allen Clinic website. Any plaintiff who looked up STOPNC on the Internet for directions would have found this website (as STOPNC did not have its own website) and reasonably associated STOPNC with the Howell Allen Clinic—not the Saint Thomas Entities.

7. Accordingly, the Bellwether Plaintiffs' vicarious liability claims against the Saint Thomas Entities based on apparent agency fail as a matter of law, and summary judgment should be granted.

4

8. Eliminating these unmeritorious and unsupported claims on the basis of the undisputed record will simplify the issues for trial and avoid needless risk of error in introducing to the jury irrelevant and potentially confusing evidence of claims that are not factually viable or as to parties who are indisputably not liable to the Bellwether Plaintiffs.

For these reasons, the Saint Thomas Entities request that the Court grant this motion for leave to file a partial summary judgment on Plaintiffs' apparent agency brought by the Bellwether Plaintiffs.

SAINT THOMAS WEST HOSPITAL, FORMERLY KNOWN AS ST. THOMAS HOSPITAL, SAINT THOMAS NETWORK, AND SAINT THOMAS HEALTH

By their attorneys,
*/s/ Sarah P. Kelly*
Sarah P. Kelly (BBO #664267)
skelly@nutter.com
NUTTER McCLENNEN & FISH LLP
Seaport West
155 Seaport Boulevard
Boston, Massachusetts 02210
(617) 439-2000
(617) 310-9461 (FAX)

Dated May 18, 2016

OF COUNSEL:

Yvonne K. Puig*
Texas State Bar No. 16385400
yvonne.puig@nortonrosefulbright.com
Adam T. Schramek*
Texas State Bar No. 24033045
adam.schramek@nortonrosefulbright.com
Eric J. Hoffman*
Texas State Bar No. 24074427
eric.hoffman@nortonrosefulbright.com

NORTON ROSE FULBRIGHT US LLP
98 San Jacinto Blvd. Suite 1100
Austin, Texas 78701
(512) 536-2450
(512) 536-4598 (FAX)

Marcy Hogan Greer*
State Bar No. 08417650
mgreer@adjtlaw.com

ALEXANDER DUBOSE JEFFERSON &
TOWNSEND LLP
515 Congress Avenue, Suite 2350
Austin, Texas 78701-3562
(512) 482-9300
(512) 482-9303 (FAX)

*Appearing *Pro Hac Vice*

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7.1(a)(2), I certify that counsel for the Saint Thomas Entities attempted to confer with counsel for the Plaintiffs' Steering Committee regarding relief requested on May 17, 2016, and they oppose this motion.

/s/ Sarah P. Kelly<br>
SARAH P. KELLY

## CERTIFICATE OF SERVICE

This certifies that a true and accurate copy of the foregoing was served on all parties of record through the Court's electronic filing system this 18th day of May, 2016.

*/s/ Sarah P. Kelly*
SARAH P. KELLY
