UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | MDL No. 2419<br>Master Dkt. 1:13-md-02419-RWZ |
| THIS DOCUMENT RELATES TO:<br><br>All Actions | |

**CORRECTED [PROPOSED] *RWZ* ORDER TO SHOW CAUSE
CONCERNING REMAND AND TRANSFER**

WHEREAS, in 2012, the CDC identified a large number cases of fungal meningitis and other infections associated with exposure to contaminated lots of methylprednisolone acetate compounded by the New England Compounding Pharmacy, Inc. d/b/a New England Compounding Center ("NECC") in Framingham, Massachusetts and purchased by dozens of pain clinics, hospitals, and doctors scattered throughout the country;

WHEREAS, according to the CDC's update of October 23, 2013, the outbreak of fungal meningitis and other infections have affected individuals in over 20 states and caused more than 64 deaths. Over 753 people have been diagnosed with meningitis, fungal infections and/or abscesses, and other injuries.[1] The United States Food and Drug Administration ("FDA") and CDC have confirmed the presence of fungus in unopened vials of NECC's methylprednisolone acetate ("MPA"). The FDA[2] and CDC[3] also identified bacteria and/or fungus present in lots of NECC preservative-free injectable betamethasone, preservative-free triamcinolone, and

---

[1] http://www.cdc.gov/hai/outbreaks/meningitis-map-large.html#casecount_table.

[2] http://www.fda.gov/downloads/AboutFDA/CentersOffices/OfficeofGlobalRegulatoryOperationsandPolicy/ORA/ORAElectronicReadingRoom/UCM325980.pdf.

[3] http://www.cdc.gov/hai/outbreaks/laboratory/index.html.

cardioplegia solution. No one disputes that the contaminated products that caused these injuries were made by NECC;

WHEREAS, victims filed hundreds of civil actions in state and federal district courts across the country, naming some combination of NECC, NECC's affiliated companies, NECC's owners, NECC's vendors, and healthcare clinics and providers that purchased and/or administered NECC products;

WHEREAS, these cases named four categories of defendants;

WHEREAS, the "Affiliated Defendants" included NECC; affiliated entities GDC, Medical Sales Management, and Ameridose;

WHEREAS, the "Insiders" included NECC's Owners/Shareholders (including Barry Cadden, Lisa Cadden, Greg Conigliaro, and Doug Conigliaro) and pharmacist Glenn Chin;

WHEREAS, the "National Defendants" were NECC's vendors, and would be liable to all victims if they were liable to any victims. They included UniFirst (the company that cleaned the NECC cleanroom), Victory (the company that installed and maintained the NECC cleanroom HVAC system), Liberty (the company that built the NECC cleanroom), and ARL (the company that conducted sterility testing on NECC's products);

WHEREAS, the "Clinic Defendants" or "Provider Defendants"[4] were hospitals, clinics, doctors, and pharmacists that purchased contaminated products from NECC and/or injected contaminated products into victims. These included Inspira, High Point, Insight, STOPNC, the St. Thomas entities, Specialty Surgery Center, Howell Allan Clinic, Premier, Box Hill, Advanced Pain & Anesthesia Consultants, Cincinnati Pain Management Consultants, OSMC Outpatient Surgery Center, Ambulatory Care Center, BKC Pain Specialists, Encino Outpatient

---

[4] The Court imports no specialized meaning to the phrase "healthcare provider" or "provider" as used herein.

Surgery Center, Ocean State Pain Management, Sunrise Hospital and Medical, Dallas Back Pain Management, Fullerton Orthopaedic Surgery Medical Group, Sequoia Surgery Center, Marion Pain Management, MAPS, Wellspring Pain Solutions Clinic, Dr. O'Connell's Pain Care Center, and PCA Pain Care;

WHEREAS, in December 2012, New England Compounding Pharmacy, Inc., filed for bankruptcy under Chapter 11;[5]

WHEREAS, on February 12, 2013, numerous civil cases filed in multiple federal jurisdictions naming NECC and others were consolidated by the Judicial Panel on Multidistrict Litigation and transferred to the District of Massachusetts.[6] On April 9, 2013, then-presiding Judge F. Dennis Saylor appointed two lawyers (Thomas M. Sobol and Kristen A. Johnson) as lead counsel and established the seven person Plaintiffs' Steering Committee;[7]

WHEREAS, the JPML transferred a total of 379 civil actions to this district;

WHEREAS, a number of civil actions have also been directly filed in this district or removed from Massachusetts Superior Court;

WHEREAS, on June 12, 2013, this Court asserted § 1334 related-to subject matter jurisdiction over "all federal cases against NECC and its affiliates, and all state-court cases against NECC and its affiliates, including cases where the claims are third-party claims for contribution or indemnity." The Court focused on the "substantial effect, on the bankruptcy

---

[5] Voluntary Petition for Chapter 11 Bakruptcy, *In re New England Compounding Pharmacy, Inc. (Debtor)*, 12-br-19882-HJB (Mass. Bankr. Dec. 21, 2012).

[6] Transfer Order, *In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*, No. 13-md-2419 (J.P.M.L. Feb. 12, 2013)(ECF No. 119).

[7] MDL Order No. 2, *In Re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*, No. 13-md-2419 (D. Mass. Apr. 9, 2013)(ECF No. 82).

estate," that tort claims and contribution or indemnity claims had making "it difficult or impossible to resolve the entire litigation in an equitable and efficient manner;"[8]

WHEREAS the Court declined to exercise jurisdiction over state-court cases that did not involve claims against NECC or its affiliates;

WHEREAS, on May 15, 2014, this Court reaffirmed its initial finding of related-to subject-matter jurisdiction underscoring the effect of tort claims on the bankruptcy estate;[9]

WHEREAS, on July 9, 2015, the Court ordered every party to a non-Massachusetts underlying action to execute either a *Lexecon* waiver consenting to trial in this district or a certification that the party will not waive its *Lexecon* rights;

WHEREAS, on July 31, 2015, the PSC filed a report to the Court regarding *Lexecon* elections, noting that only one defendant (Insight) waived *Lexecon*;[10]

WHEREAS, on May 20, 2015, the Chapter 11 Plan for New England Compounding Pharmacy, Inc. was confirmed by the Honorable Henry J. Boroff of the United States Bankruptcy Court for the District of Massachusetts;

WHEREAS, the Chapter 11 Plan became effective on June 4, 2015;[11]

WHEREAS, the Chapter 11 Plan for New England Compounding Pharmacy, Inc. resolved tort victims claims against NECC, the Affiliated Defendants, the Insiders, and the National Defendants;[12]

---

[8] Corrected Memorandum and Order on Trustee's Motion to Transfer Cases and Related Motions, *In Re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*, 13-md-2419-FDS (D. Mass. June 12, 2013) (ECF No. 176).

[9] Memorandum of Decision, *In Re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*, 13-md-2419-RWZ (D. Mass. May 15, 2014) (ECF No. 1131).

[10] Plaintiffs' Steering Committee's Report to the Court Regarding *Lexecon* Election Forms, *In Re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*, 13-md-2419-RWZ (D. Mass. July 31, 2015) (ECF No. 2128)

[11] Findings of Fact, Conclusions of Law and Order Confirming the Third Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc., *In Re New England Compounding Pharmacy, Inc. (Debtor)*, 12-BR-19882 (HJB), Dkt. No. 1355.

WHEREAS, the Chapter 11 Plan for New England Compounding Pharmacy, Inc. also resolved tort victims' claims against some clinic-related defendants (including High Point, Inspira, and Insight);[13]

WHEREAS the following contributions were made to the estate for the benefit for tort victims (after paying fees and expenses);

| National Settling Defendant | Expected Contribution |
|---|---|
| NECC Owners/Shareholder Settlement | $47,750,000 – 75,000,000[14] |
| PMIC/Maxum Settlement | $25,200,000 |
| Ameridose Settlement | $10,000,000 |
| GDC Settlement | $3,750,000 |
| ARL Settlement | $6,400,000 |
| Victory Settlement | $5,500,000 |
| UniFirst Settlement | $30,500,000 |
| Liberty Settlement | $1,000,000 |
| Total Amount: | $130,100,000 - $157,350,000 |

| Provider Defendant | Contribution |
|---|---|
| High Point Settlement | $3,500,000 |
| Inspira Settlement | $16,000,000 |
| Insight Settlement | $40,000,000 |
| Total Amount: | $59,500,000 |

WHEREAS, the Chapter 11 Plan resolved the indemnity and contribution claims against NECC;

WHEREAS, after the plan's effective date, this Court dismissed all claims in the MDL against defendants settling under the Chapter 11 Plan, including all cases against NECC, the Affiliated Defendants, the National Defendants, Insight, Inspira, and High Point;[15]

---

[12] Notice of Filing of Third Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc., *In Re New England Compounding Pharmacy, Inc. (Debtor)*, 12-BR-19882 (HJB), Dkt. No. 1352. These defendants were referred to as the "national defendants" in the MDL.

[13] Notice of Filing of Third Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc., *In Re New England Compounding Pharmacy, Inc. (Debtor)*, 12-BR-19882 (HJB), Dkt. No. 1352.

[14] The range anticipates tax refunds due to the insiders, some of which have now been paid into the estate.

[15] Order Dismissing Claims Against Settling Defendants, *In Re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*, 13-md-2419-RWZ (D. Mass. Aug. 25, 2015) (ECF No. 2193).

WHEREAS, the Clerk is in the process of entering final judgment in the more than 450 cases that were entirely resolved by the Chapter 11 Plan;

WHEREAS, discovery concerning NECC and the national defendants has concluded and those documents and materials obtained in discovery are available in a central online repository;[16]

WHEREAS, the PSC has committed to retaining copies of all discovery produced in the MDL for the benefit of parties continuing to litigate cases involving NECC for a reasonable amount of time (at least 4 years);

WHEREAS, cases against the STOPNC defendants and St. Thomas entities are being actively litigated, and the first bellwether trial had been set for August;

WHEREAS, cases against other Tennessee clinics (including Specialty Surgery Center and the Howell Allen Clinic, but excepting PCA Pain) are likewise being litigated pursuant to Court-ordered pretrial schedules;

WHEREAS, cases against the Premier defendants and Box Hill defendants are proceeding according to the discovery schedule set by the Court;[17]

WHEREAS, this Court entered a stay of discovery governing all other defendants (the "remaining clinic defendants"), all of whom have four or fewer cases naming them as defendants in the MDL;[18]

WHEREAS, during the May 19, 2016 status conference, this Court extended that stay until September 1, 2016;

---

[16] *See* MDL Order No. 6: Case Management Order, *In Re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*, 13-md-2419-RWZ (D. Mass. June 28, 2013) (ECF No. 209).

[17] *See* Amended Scheduling Order on Tennessee Actions (ECF No. 2827); Order Setting Discovery Deadlines in Premier and Box Hill Cases (ECF No. 2851).

[18] Electronic Order Granting Stay of Discovery, *In Re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*, 13-md-2419-RWZ (D. Mass. Jan. 4, 2016) (ECF No. 2254).

WHEREAS, the PSC has suggested that remand and/or transfer back to the federal district in which the case was originally filed is now appropriate for the remaining clinic defendants, unless counsel for the plaintiffs and/or the defendants in those cases object;

WHEREAS, the below chart reflects remaining cases against clinics in the MDL except the STOPNC defendants, St. Thomas entities, Premier defendants, and Box Hill defendants;

|    | Case. No (D. Mass.) | Caption | Clinic Defendant |
|----|---------------------|---------|------------------|
| 1  | 1:13-cv-13227 | *Kennedy v. Unifirst* | Advanced Pain & Anesthesia Consultants, PC |
| 2  | 1:13-cv-13228 | *Musselwhite v. Unifirst* | Advanced Pain & Anesthesia Consultants, PC |
| 3  | 1:14-cv-13676 | *Musselwhite v. Advanced Pain & Anesthesia Consultants* | Advanced Pain & Anesthesia Consultants, PC |
| 4  | 1:14-cv-13689 | *Kennedy v. Advanced Pain & Anesthesia Consultants* | Advanced Pain & Anesthesia Consultants, PC |
| 5  | 1:14-cv-10284 | *Brady v. Cincinnati Pain Management Consultants* | Cincinnati Pain Management Consultants, Inc. |
| 6  | 1:14-cv-11224 | *Pettit v. Cincinnati Pain Management Consultants* | Cincinnati Pain Management Consultants, Inc. |
| 7  | 1:14-cv-10432 | *Witt v. Cincinnati Pain Management Consultants* | Cincinnati Pain Management Consultants, Inc. |
| 8  | 1:14-cv-11856 | *Gibson v. Liberty Industries* | Cincinnati Pain Management Consultants, Inc. |
| 9  | 1:14-cv-13739 | *Hosea v. UniFirst* | OSMC Outpatient Surgery Center |
| 10 | 1:14-cv-14669 | *Hancock v. UniFirst* | OSMC Outpatient Surgery Center |
| 11 | 1:14-cv-13708 | *Patel v. OSMC* | OSMC Outpatient Surgery Center |
| 12 | 1:13-cv-12076 | *Allen v. Ameridose* | Ambulatory Care Center |
| 13 | 1:14-cv-14668 | *Griggs v. Unifirst* | Ambulatory Care Center |

| 14 | 1:14-cv-13027 | *Moore v. Unifirst* | Ambulatory Care Center |
|----|---------------|---------------------|------------------------|
| 15 | 1:13-cv-12657 | *Montee v. BKC Pain Specialists* | BKC Pain Specialists, LLC |
| 16 | 1:13-cv-12659 | *Cooper v. BKC Pain Specialists* | BKC Pain Specialists, LLC |
| 17 | 1:14-cv-12884 | *Wynstock v. Ameridose* | Encino Outpatient Surgery Center |
| 18 | 1:13-cv-12015 | *Younani v. NECC* | Encino Outpatient Surgery Center |
| 19 | 1:13-cv-10685 | *Hanson v. NECC* | Ocean State Pain Management |
| 20 | 1:13-cv-10943 | *Simas v. NECC* | Ocean State Pain Management |
| 21 | 1:14-cv-10362 | *Eldreth v. Sunrise Hospital* | Sunrise Hospital and Medical |
| 22 | 1:14-cv-10373 | *Henley v. UniFirst* | Dallas Back Pain Management |
| 23 | 1:14-cv-12789 | *Jeffries v. Ameridose* | Fullerton Orthopaedic Surgery Medical Group |
| 24 | 1:14-cv-12328 | *Tashima v. NECC* | Sequoia Surgery Center |
| 25 | 1:15-cv-11367 | *Gilliam v. Chowdhury* | Marion Pain Management |
| 26 | 1:13-cv-13209 | *Edwards v. Unifirst* | MAPS |
| 27 | 1:14-cv-13548 | *Birge v. Unifirst* | Wellspring Pain Solutions Clinic |
| 28 | 1:14-cv-10430 | *Daugherty v. PCA* | PCA Pain Care Center |
| 29 | Various | *New Jersey healthcare defendants not parties to the Inspira bankruptcy settlement* | Thomas F. Mitros, MD;<br>Kimberly Yvette Smith, MD, a/k/a Kimberley Yvette Smith-Martin;<br>Nitesh Bhagat, MD;<br>Richard C. Strauss, MD;<br>Regional Diagnostic Imaging LLC;<br>Premier Orthopaedics and Sports Medicine Associates of Southern New Jersey, LLC;<br>Premier Orthopaedics and Surigcal Center. |

8

WHEREAS, the Court sees no efficiencies to be gained by litigating cases against the clinics listed in the above chart in the MDL, given the small number of cases against each clinic, but wants to hear from counsel who may feel otherwise;

WHEREAS the Court intends to address these matters at the June 22, 2016 status conference;

**IT IS HEREBY ORDERED:**

1. Counsel for plaintiffs and defendants in the above list of cases shall have until June ~~16~~ 21, 2016 to show cause as to why their cases should not be remanded or transferred back to the district in which they were originally filed, as appropriate.

2. Any counsel of record in a case pending in the MDL that is not included in the above list of cases (with the exception of the defendants identified in ¶ 8 of this order) shall identify themselves to the PSC by emailing attorney Kristen Johnson (kristenj@hbsslaw.com) by June ~~14~~ 17, 2016.

3. Counsel for plaintiffs and defendants in the above list of cases, or who otherwise identify themselves pursuant to ¶ 2 to this order ("remaining case counsel"), who object to transfer or remand shall meet and confer with opposing counsel by June ~~14~~ 17, 2016 to try to reach a consensus as to whether the case should be remanded or transferred.

4. Remaining case counsel who object to remand and/or transfer shall file a memorandum of **no more than 3 pages** in the MDL docket by June ~~16~~ 21, 2016. The memorandum shall succinctly explain (1) what discovery, if any, of the remaining defendants

9

has been done to date, (2) what efficiencies will be gained by litigating pretrial matters in the MDL.[19]

5. Counsel for plaintiffs and defendants in cases against Premier shall meet and confer by June 17, 2016 and shall file by June 21, 2016 memorandums of **no more than 3 pages** informing the Court as to whether they wish to continue litigating in the MDL or would prefer to have the cases remanded or transferred, as appropriate. The Court encourages, but does not require, a single filing on behalf of the Premier plaintiffs and a single filing on behalf of the Premier defendants.

6. Counsel for plaintiffs and defendants in cases against Box Hill shall meet and confer by June 17, 2016 and shall file by June 21, 2016 memorandums of **no more than 3 pages** informing the Court as to whether they wish to continue litigating in the MDL or would prefer to have the cases remanded or transferred, as appropriate. The Court encourages, but does not require, a single filing on behalf of the Box Hill plaintiffs and a single filing on behalf of the Box Hill defendants.

7. The PSC shall facilitate this process. Counsel with questions shall contact Kristen Johnson, kristenj@hbsslaw.com, or (617) 482-3700.

8. This order does not apply to the STOPNC defendants, the St. Thomas entities, The Howell Allan Clinic, or Specialty Surgery Center. The Court finds that litigation against those clinics is sufficiently advanced that those cases should remain in the MDL and be litigated according to the existing schedules.

_____
Hon. Rya W. Zobel
United States District Judge

June 13, 2016

---

[19] Willingness to waive Lexecon will help the Court to understand the scope of the potential work left to be done in the MDL.